**Fill in this information to identify the case:**

United States Bankruptcy Court  for the:

_____ District of Delaware
(State)

Case number (*If known*): _____ Chapter ___7___

☐ Check if this is an
amended filing

Official Form 205

# Involuntary Petition Against a Non-Individual

12/15

Use this form to begin a bankruptcy case against a non-individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against an individual, use the *Involuntary Petition Against an Individual* (Official Form 105). Be as complete and accurate as possible. If more space is needed, attach any additional sheets to this form. On the top of any additional pages, write debtor's name and case number (if known).

**Part 1:**    **Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed**

| | |
|---|---|
| 1. **Chapter of the Bankruptcy Code** | Check one:<br><br>☒ Chapter 7<br>☐ Chapter 11 |

**Part 2:**    **Identify the Debtor**

2. **Debtor's name**

Park Place Development Primary, LLC

3. **Other names you know the debtor has used in the last 8 years**

Include any assumed names, trade names, or *doing business as* names.

4. **Debtor's federal Employer Identification Number (EIN)**

☒ Unknown

___ ___ – ___ ___ ___ ___ ___ ___ ___
EIN

5. **Debtor's address**

**Principal place of business**

31 West 27th St., 9th Floor
Number     Street

New York        NY    10001
City            State    ZIP Code

New York County
County

**Mailing address, if different**

Number     Street

P.O. Box

City            State    ZIP Code

**Location of principal assets, if different from principal place of business**

Number     Street

City            State    ZIP Code

Debtor    Park Place Development Primary, LLC _____    Case number (if known)_____
_____Name_____

| 6. | **Debtor's website** (URL) | _____ |

| 7. | **Type of debtor** | ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP)) |
| | | ☐ Partnership (excluding LLP) |
| | | ☐ Other type of debtor. Specify: _____ |

| 8. | **Type of debtor's business** | *Check one:* |
| | | ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A)) |
| | | ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B)) |
| | | ☐ Railroad (as defined in 11 U.S.C. § 101(44)) |
| | | ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A)) |
| | | ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6)) |
| | | ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3)) |
| | | ☒ None of the types of business listed. |
| | | ☐ Unknown type of business. |

| 9. | **To the best of your knowledge, are any bankruptcy cases pending by or against any partner or affiliate of this debtor?** | ☒ No |
| | | ☐ Yes. Debtor _____    Relationship _____ |
| | | District _____ Date filed _____    Case number, if known_____ |
| | | MM / DD / YYYY |
| | | Debtor _____    Relationship _____ |
| | | District _____ Date filed _____    Case number, if known_____ |
| | | MM / DD / YYYY |

**Part 3:    Report About the Case**

| 10. | **Venue** | *Check one:* |
| | | ☒ Over the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district. |
| | | ☐ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district. |

| 11. | **Allegations** | Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b). |
| | | The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a). |
| | | *At least one box must be checked:* |
| | | ☒ The debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount. |
| | | ☐ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or an agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession. |

| 12. | **Has there been a transfer of any claim against the debtor by or to any petitioner?** | ☒ No |
| | | ☐ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a). |

| Debtor | Park Place Development Primary, LLC | Case number (if known) _____ |
|---|---|---|
| | Name | |

| 13. **Each petitioner's claim** | Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|---|
| | Permasteelisa North America Corp. | Mechanic's Lien, Storage Claim, Third-Party Beneficiary Claim | $ See Schedule A |
| | Construction Realty Safety Group, Inc. | Mechanic's Lien; Third-Party Beneficiary Claim | $ See Schedule A |
| | Domani Inspection Services, Inc. | Contract Claim | $ See Schedule A |
| | | Total of petitioners' claims | $ See attached Schedule A for additional petitioning creditors and information on claims |

**If more space is needed to list petitioners, attach additional sheets. Write the alleged debtor's name and the case number, if known, at the top of each sheet. Following the format of this form, set out the information required in Parts 3 and 4 of the form for each additional petitioning creditor, the petitioner's claim, the petitioner's representative, and the petitioner's attorney. Include the statement under penalty of perjury set out in Part 4 of the form, followed by each additional petitioner's (or representative's) signature, along with the signature of the petitioner's attorney.**

| Part 4: | Request for Relief |
|---|---|

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

Petitioners request that an order for relief be entered against the debtor under the chapter of 11 U.S.C. specified in this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, attach a certified copy of the order of the court granting recognition.

I have examined the information in this document and have a reasonable belief that the information is true and correct.

| Petitioners or Petitioners' Representative | Attorneys |
|---|---|

**Name and mailing address of petitioner**

Permasteelisa North America Corp.
Name

123 Day Hill Road
Number     Street

Windsor                    CT            06825
City                       State         ZIP Code

**Name and mailing address of petitioner's representative, if any**

_____
Name

_____
Number     Street

_____
City          State          ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on     5/24/2021
                MM / DD / YYYY

✖ /s/ Thomas M. Gannon, General Counsel, Corporate Secretary
Signature of petitioner or representative, including representative's title

Daniel A. O'Brien
Printed name

Venable LLP
Firm name, if any

1201 N. Market St., Suite 1400
Number     Street

Wilmington                 DE            19801
City                       State         ZIP Code

Contact phone  302-298-3523     Email  daobrien@venable.com

Bar number     4897

State          DE

✖ /s/ Daniel A. O'Brien
Signature of attorney

Date signed     5/24/2021
                MM / DD / YYYY

Debtor  Park Place Development Primary, LLC
_____
Name

Case number (if known) _____

**Name and mailing address of petitioner**

Construction Realty Safety Group, Inc.
_____
Name

248 West 35th St., 8th Floor
_____
Number    Street

New York                    NY        10001
_____
City                        State      ZIP Code

**Name and mailing address of petitioner's representative, if any**

_____
Name

_____
Number    Street

_____
City                        State      ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    5/24/2021
            _____
            MM  / DD / YYYY

✖  /s/ Matthew Caruso, President
_____
Signature of petitioner or representative, including representative's title

Daniel A. O'Brien
_____
Printed name

Venable LLP
_____
Firm name, if any

1201 N. Market St., Suite 1400
_____
Number    Street

Wilmington                  DE        19801
_____
City                        State      ZIP Code

Contact phone   302-298-3523      Email  daobrien@venable.com

Bar number      4897
_____

State           DE
            _____

✖  /s/ Daniel A. O'Brien
_____
Signature of attorney

Date signed     5/24/2021
            _____
            MM  / DD / YYYY

**Name and mailing address of petitioner**

Trade Off Plus, LLC
_____
Name

248 West 35th St., 8th Floor
_____
Number    Street

New York                    NY        10001
_____
City                        State      ZIP Code

**Name and mailing address of petitioner's representative, if any**

_____
Name

_____
Number    Street

_____
City                        State      ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    5/24/2021
            _____
            MM  / DD / YYYY

✖  /s/ Matthew Caruso, President
_____
Signature of petitioner or representative, including representative's title

Daniel A. O'Brien
_____
Printed name

Venable LLP
_____
Firm name, if any

1201 N. Market St., Suite 1400
_____
Number    Street

Wilmington                  DE        19801
_____
City                        State      ZIP Code

Contact phone   302-298-3523      Email  daobrien@venable.com

Bar number      4897
_____

State           DE
            _____

✖  /s/ Daniel A. O'Brien
_____
Signature of attorney

Date signed     5/24/2021
            _____
            MM  / DD / YYYY

Debtor    Park Place Development Primary, LLC

Name

Case number (if known) _____

---

**Name and mailing address of petitioner**

Domani Inspection Services, Inc.

Name

248 West 35th St., 8th Floor

Number    Street

New York                              NY          10001

City                                  State       ZIP Code

**Name and mailing address of petitioner's representative, if any**

_____

Name

_____

Number    Street

_____

City                                  State       ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    5/24/2021

MM  / DD / YYYY

✖ /s/ Matthew Caruso, President

Signature of petitioner or representative, including representative's title

---

Daniel A. O'Brien

Printed name

Venable LLP

Firm name, if any

1201 N. Market St., Suite 1400

Number    Street

Wilmington                            DE          19801

City                                  State       ZIP Code

Contact phone    302-298-35223    Email  daobrien@venable.com

Bar number    4897

State            DE

✖ /s/ Daniel A. O'Brien

Signature of attorney

Date signed    5/24/2021

MM  / DD / YYYY

---

**Name and mailing address of petitioner**

S&E Bridge & Scaffold LLC

Name

700 Commercial Avenue

Number    Street

Carlstadt                             NJ          07072

City                                  State       ZIP Code

**Name and mailing address of petitioner's representative, if any**

_____

Name

_____

Number    Street

_____

City                                  State       ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    5/24/2021

MM  / DD / YYYY

✖ /s/ Thomas J. Garcia, Executive Vice President, Chief Financial Officer

Signature of petitioner or representative, including representative's title

---

Daniel A. O'Brien

Printed name

Venable LLP

Firm name, if any

1201 N. Market St., Suite 1400

Number    Street

Wilmington                            DE          19801

City                                  State       ZIP Code

Contact phone    302-298-3523    Email  daobrien@venable.com

Bar number    4897

State            DE

✖ /s/ Daniel A. O'Brien

Signature of attorney

Date signed    5/24/2021

MM  / DD / YYYY

---

Debtor    Park Place Development Primary, LLC          Case number (if known)_____
_____
Name

---

**Name and mailing address of petitioner**

Ismael Leyva Architect, P.C.
_____
Name

48 West 37th St.
_____
Number    Street

New York                          NY          10018
_____
City                              State       ZIP Code

**Name and mailing address of petitioner's representative, if any**

_____
Name

_____
Number    Street

_____
City                              State       ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    5/24/2021
_____
               MM  / DD / YYYY

✖  /s/ Ismael Leyva, Principal
_____
Signature of petitioner or representative, including representative's title

---

Daniel A. O'Brien
_____
Printed name

Venable LLP
_____
Firm name, if any

1201 N. Market St., Suite 1400
_____
Number    Street

Wilmington                        DE          19801
_____
City                              State       ZIP Code

Contact phone   302-298-35223    Email  daobrien@venable.com

Bar number      4897
_____

State           DE
                _____

✖  /s/ Daniel A. O'Brien
_____
Signature of attorney

Date signed     5/24/2021
                _____
                MM  / DD / YYYY

---

**Name and mailing address of petitioner**

_____
Name

_____
Number    Street

_____
City                              State       ZIP Code

**Name and mailing address of petitioner's representative, if any**

_____
Name

_____
Number    Street

_____
City                              State       ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on
_____
               MM  / DD / YYYY

✖
_____
Signature of petitioner or representative, including representative's title

---

_____
Printed name

_____
Firm name, if any

_____
Number    Street

_____
City                              State       ZIP Code

Contact phone _____ Email _____

Bar number      _____

State           _____

✖
_____
Signature of attorney

Date signed     _____
                MM  / DD / YYYY

---

Debtor:  Park Place Development Primary, LLC

## Schedule A – Petitioning Creditors

| **Name and Address of Petitioner** | **Nature of Claim** | **Amount of Claim** |
|---|---|---|
| Permasteelisa North America Corp.<br>123 Day Hill Road<br>Windsor, CT 06825<br>Attn: Thomas M. Gannon | Mechanic's Lien; Contract Claim for Storage Costs from and after December 24, 2019; Third-Party Beneficiary Claim | Secured – $8,858,534.80<br><br>Unsecured - $187,750.00<br><br>*See* Declaration of Thomas M. Gannon attached hereto as **Exhibit 1** |
| Construction Realty Safety Group Inc.<br>248 West 35th St., 8th Floor<br>New York, NY 10001<br>Attn: Mathew Caruso | Mechanic's Lien; Third-Party Beneficiary Claim | Secured - $39,390.00<br><br>*See* Declaration of Matthew Caruso attached hereto as **Exhibit 2** |
| Trade Off Plus, LLC<br>248 West 35th St., 8th Floor<br>New York, NY 10001<br>Attn: Mathew Caruso | Mechanic's Lien; Third-Party Beneficiary Claim | Secured - $240,146.25<br><br>*See* Declaration of Matthew Caruso attached hereto as **Exhibit 3** |
| Domani Inspection Services, Inc.<br>248 West 35th St., 8th Floor<br>New York, NY 10001<br>Attn: Mathew Caruso | Contract Claim | Unsecured - $47,884.64<br><br>*See* Declaration of Matthew Caruso attached hereto as **Exhibit 4** |

| S&E Bridge & Scaffold LLC<br>700 Commercial Avenue<br>Carlstadt, NJ 07072<br>Attn: Thomas J. Garcia | Mechanic's Lien; Third-Party Beneficiary Claim | Secured - $739,858.41<br><br>Unsecured - $16,750.00<br><br>*See* Declaration of Thomas J. Garcia attached hereto as **Exhibit 5** |
|---|---|---|
| Ismael Leyva Architect, P.C.<br>48 West 37th St.<br>New York, NY 10018<br>Attn: Ismael Leyva | Mechanic's Lien; Third-Party Beneficiary Claim; Contract Claim | Secured - $93,571.40<br><br>*See* Declaration of Ismael Leyva attached hereto as **Exhibit 6** |

# Exhibit 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Park Place Development Primary, LLC, | Case No. 21-_____ (___) |
| Alleged Debtor. | |

## DECLARATION OF THOMAS M. GANNON

I, Thomas M. Gannon, hereby declare as follows:

1.      I am the General Counsel and Corporate Secretary of Permasteelisa North America Corp. ("PNA"). I have served in this role since January 2017. In connection with my role as General Counsel I am familiar with PNA's businesses, including PNA's involvement in the Project (as defined herein) and its claims against alleged debtor Park Place Development Primary, LLC ("Park Place Primary") related thereto.

2.      I submit this declaration to provide background concerning PNA's claims against Park Place Primary.

3.      Except as otherwise indicated, the statements set forth in this declaration are based upon my personal knowledge, information learned from my review of relevant documents and court pleadings, or information supplied to me from other members of PNA's management or PNA's advisors. I am authorized to submit this declaration on behalf of PNA. If called to testify, I could and would testify competently to the matters set forth in this declaration.

(i)      **Background**

(a)      *The Project*

1

4.      Park Place Primary is the owner of record of the real property commonly known as 43 Park Place, located at 43 Park Place, New York, New York 10007, and as designated on the tax map of New York County as Block 126, Lot 8 ("Lot 8").

5.      Lot 8 is the real property on which an unfinished residential condominium construction project (the "Project", together with Lot 8, the "Property") is located. The Project is commonly described as "45 Park Place", even though construction of the Project occurred at the physical location of Lot 8.

6.      Gilbane Residential Construction LLC ("Gilbane"), a general contracting and construction management company, and Park Place Partners Development LLC ("Park Place Development"), an affiliate of Park Place Primary and prior owner of Lot 8 (as discussed *infra*), entered into a written Construction Management Agreement dated as of March 15, 2015 (the "CMA"), whereby Gilbane agreed to provide construction management services in connection with the Project.[1] The CMA was amended and assumed by Park Place Primary on April 28, 2016.

7.      PNA, as subcontractor, and Gilbane, as general contractor, entered into a Trade Contract Agreement dated as of September 30, 2016 (together with the amendments,exhibits, and related instruments and agreements thereto, collectively, the "TCA"), pursuant to which PNA undertook to furnish labor, services, materials and equipment for the design, manufacture and installation of the curtainwall system and certain other work for the Project.

8.      On or about December 6, 2019, Gilbane sent a letter to PNA stating, among other things, that the CMA had been terminated for convenience effective no later than

---

[1] Upon information and belief, Park Place Primary and Park Place Development are owned and/or controlled by the same beneficial interest holders, including Sharif El-Gamal, the lead owner and guarantor of the Project.

December 4, 2019, directing PNA to stop all work in connection with the Project, and requesting a "final invoice" from PNA.

9.     On or about December 6, 2019, Soho Properties Inc. ("Soho"), acting as representative of Park Place Development, also sent a letter to PNA stating, among other things, that the CMA had been terminated for convenience on December 4, 2019, and requesting a "final invoice" from PNA.

10.     On or about December 23, 2019, PNA sent Gilbane a letter that, among other things, terminated the TCA for cause, including but not limited to, Gilbane's failure to make timely payments in accordance with the TCA.

11.     On or about December 24, 2019, counsel for Park Place Primary sent Gilbane a letter (the "December 24 Letter"), copying counsel to PNA, directing Gilbane, as its agent, to "take appropriate action to immediately secure the [curtainwall and other materials] being stored at PNA's facility and move such Work to a storage facility to be selected by [Park Place Primary], at its cost." (Emphasis added). The curtainwall and other materials currently are being stored at a facility leased to PNA at 295 Ella Grasso Turnpike in Windsor Locks, Connecticut (collectively "the Curtainwall") and PNA continues to incur substantial (unpaid) costs for storage of the Curtainwall, as discussed in more detail below. Park Place Primary has not disputed any portion of the actual storage costs incurred by PNA, which costs PNA continues to incur to protect the approximately 36,000 square feet of Curtainwall (which represents about 1/3 of the total curtainwall to be installed in connection with the Project).

        **(b)     *The Project Financing***

12.     On or about April 26, 2016, Malayan Banking Berhad, New York Branch, as administrative agent for Malayan Banking Berhad, London Branch, Intesa Sanpaolo S.P.A.,

New York Branch, WARBA Bank K.S.C.P. and 45 Park Place Investments, LLC (collectively, the "Lenders") agreed to advanced money to Park Place Primary in the maximum aggregate principal amount of up to $174,000,000.00, consisting of (i) advances in the aggregate principal amount of up to $162,112,896.16, the proceeds of which were to be used to finance the Costs of Improvements (as such term is defined in the New York Lien Law) associated with the Project, pursuant to and evidenced by, among other things, the Building Facility Agreement dated April 26, 2016 (the "BFA"), and (ii) advances in the aggregate principal amount of up to $11,887,103.84, the proceeds of which were to be used to pay soft costs associated with the Project other than the Costs of Improvement, pursuant to and evidenced by, among other things, the Project Facility Agreement dated April 26, 2016 (the "PFA", together with the BFA, the "Facility").

13.    The Facility was purportedly structured to be Sharia Law compliant.

14.    On or prior to May 17, 2016, the Lenders filed an affidavit dated April 26, 2016, sworn to by Sharif El-Gamal on behalf of Park Place Primary, pursuant to section 22 (the "Section 22 Affidavit") of the New York Lien Law ("N.Y. Lien Law") with the Office of the Clerk for the County of New York (the "Clerk's Office").[2]

(c)    *The ZLDA*

15.    On or about May 17, 2016, Park Place Development, as the alleged owner of Lot 8, and Park Place Development, as the alleged owner of the neighboring premises located at 45-51 Park Place, New York, New York 10007 (Block 126, Lot 9) ("Lot 9"), executed that certain Zoning and Lot Development and Easement Agreement (the "ZLDA"), concerning Lot 8

---

[2] In brief summary, Section 22 of the NY Lien Law requires, among other things, that a lender that makes a loan for improvements on real property file an affidavit from the owner/borrower containing certain information, including the consideration paid or to be paid for the loan, all other expenses incurred or to be incurred in connection therewith, and the net sum available to the owner/borrower for the improvement.

and Lot 9. Park Place Primary did not sign the ZLDA and is not mentioned therein. Sharif El-Gamal signed the ZLDA on behalf of Park Place Development, as the only party to the agreement. However, the ZLDA was needed to, among other things, ensure that Park Place Primary had rights to use some of Lot 9 to provide sufficient floor (or "staging") area to construct the Project.

**(d)** ***The Foreclosure Action***

16.    On or about March 11, 2020, the Lenders initiated a foreclosure action against Park Place Primary, among others, including PNA, as a mechanic's lienholder (discussed *infra*), in the Supreme Court of the State of New York, County of New York (the "NY Supreme Court"), Index No. 850083/2020 (the "Foreclosure Action"), seeking to foreclose on the Property (and certain mortgages, liens and interests thereon, including Park Place Primary's alleged rights, benefits and easements, if any, under the ZLDA). An amended complaint was filed on July 14, 2020. The Foreclosure Action, including several dispositive motions, remains pending.[3]

17.    There are substantial disputes over the Lenders' actions in connection with the Facility and the validity, priority and extent of the Lenders' liens on the Property. Park Place Primary has filed a summons in the NY Supreme Court, Index No. 652366/2020, and a motion to dismiss in the Foreclosure Action, alleging, among other things, certain lender liability claims/defenses, including that the Lenders abrogated, ignored and breached their obligations under the BFA (and related loan documents) by, among other things, failing to fund draw requests and fabricating defaults. Park Place Primary also alleges that the Lenders failed to act

---

[3] The NY Supreme Court has indicated that it will take at least a year to adjudicate pending motions for summary judgment and to dismiss (which are not yet fully briefed) in the Foreclosure Action. Depending on the eventual disposition of such motions, it is entirely possible (and, indeed, likely) that subsequent discovery and trial in the Foreclosure Action will require extensive time thereafter—which puts any potential foreclosure auction and sale of the Property in the distant future, at best.

in conformance with the principles of Sharia Law, as required by the BFA (and related loan documents).

18.    A cursory review of the answers, counterclaims and motions filed in the Foreclosure Action by PNA and other mechanic's lienholders evidence further disputes with respect to the priority of the Lenders' purported liens on the Property. Specifically, PNA and other mechanic's lienholders allege, among other things, that the Section 22 Affidavit, sworn to by Sharif El-Gamal on behalf of Park Place Primary and filed by the Lenders in connection with the Facility, was materially false on and after the date of filing and/or failed to contain material information required by Section 22 (*i.e.*, the amount paid and to be paid for the loan, which information was clearly required to be included therein pursuant to the statute and as required by the Lenders as evidenced by Section 13.1(ee) and Exhibit G of the BFA).[4]

**(ii)        Claims Against Park Place Primary**

19.    During the period between September 30, 2016 and November 14, 2019, PNA performed labor and furnished material for use at the Property, consisting of assistance with the design and engineering of, and the manufacture, fabrication and installation of, curtainwall, panels, glazing, entryways and other work, having an agreed price and reasonable value of more than $23.6 million. The labor so performed, and material so furnished, by PNA were performed and furnished for the improvement of the Project.

---

[4] I have been advised that when a construction lender contributes funding to a construction project in New York, section 22 of N.Y. Lien Law applies to determine whether the lender's mortgage lien against the property has priority over any subsequently filed mechanic's liens. If a construction lender follows the statute and files the proper paperwork when the loan closes, and mechanics' lien claims are filed thereafter, the lender's lien will be senior to the lien claimants. However, if a lender knowingly files a building loan contract that materially misrepresents the net sum available to the borrower for the improvement or otherwise evidences a failure to comply with section 22 of N.Y. Lien Law (e.g., a failure of the affidavit to set forth amounts to be paid for the loan), such lender's mortgage is subordinated to subsequently filed mechanic's liens.

20.     On December 27, 2019, PNA caused to be filed and docketed in the Clerk's Office a verified Notice of Mechanic's Lien against the Property in the amount of $4,641,222.35 (the "Notice of Lien").

21.     On or about January 20, 2020, in response to Park Place Primary's request for final invoice, PNA delivered to Park Place Primary, by letter and email, its final, detailed invoice in the amount of $8,875,284.80.

22.     On February 19, 2020, PNA caused to be filed and docketed in the Clerk's Office a verified Corrected Notice of Mechanic's Lien against the Property in the amount of $8,875,284.80 (the "Corrected Notice of Lien"), which corrected the Notice of Lien.  Of this amount, approximately (i) $2.1 million had been approved for payout (as an "approved requisition") by Park Place Primary at the time of filing of the Corrected Notice of Lien, (ii) $1.143 million represented actual storage costs of $1,038,486.50 for the period August 2017 to December 21, 2019 and $105,000 represented estimated costs (at $17,250/month) from January 1, 2020 through June 30, 2020 for PNA to store and protect approximately 36,000 square feet of the Curtainwall that had been designed, engineered and manufactured for the Project,[5] and (iii) the remainder relates to various unanticipated costs of labor and materials furnished by PNA to the Property at the request of Park Place Primary that had yet to be approved for payment at the time the Project was shutdown.

23.     On or about February 21, 2020, PNA delivered by email and letter to Park Place Primary a corrected final invoice of $8,971,155.61.  Park Place Primary has not disputed any amounts in the Corrected Notice of Lien or final invoice.

---

[5] The Curtainwall was initially stored on property owned by a different third-party pursuant to purchase orders with PNA, but since November 2019 has been stored at the leased premises located at 295 Ella Grasso Turnpike in Windsor Locks, Connecticut.

7

### (a)    *Claim Against the Property*

24.    As set forth in the Corrected Notice of Lien, PNA, as a mechanic's lienholder, has a secured claim against the Property in an amount no less than $8,875,284.80. There have been no challenges by Park Place Primary to PNA's corrected mechanic's lien claim. I have been advised that because a "claim against the debtor" includes "claim against the property of the debtor" pursuant to section 102(2) of the Bankruptcy Code, which became applicable at the time the involuntary petition against Park Place Primary was filed, this claim is sufficient to qualify PNA as a petitioning creditor under section 303(b) of the Bankruptcy Code. Moreover, PNA hereby waives $16,750 of its secured claim. I have been advised that the unsecured claims held by the petitioning creditors exceed the statutory threshold required to commence an involuntary proceeding against Park Place Primary, but PNA has nonetheless decided to waive a portion of its secured claim in the event that such waiver is necessary to establish the eligibility requirements set forth in section 303(b).

### (b)    *Post-December 24, 2019 Storage Cost Claim*

25.    In the December 24 Letter, Park Place Primary instructed Gilbane, as its agent, to direct PNA to continue to store, and move if Park Place Primary so requested, the approximately 36,000 square feet of the Curtainwall, at the Owner's cost. Neither Park Place Primary nor Gilbane (nor any other agent of Park Place Primary) has requested PNA to move the Curtainwall to date, however. Meanwhile, PNA has incurred at least $276,000 in actual storage costs from and after December 24, 2019 (and continues to accrue such costs to date), a portion of which was estimated in its as-filed mechanic's lien claim, but PNA has not been paid for any of such costs.[6] I have been advised that PNA's claim for post-December 24, 2019 storage costs is a

---

[6] PNA detailed its actual costs for post-December 24, 2019 storage costs in an invoice to Park Place Primary dated May 17, 2021, which was first delivered by email to Park Place Primary on May 16, 2021.

8

direct claim against Park Place Primary. The actual aggregate amount of post-December 24, 2019 storage costs is $276,000, of which $105,000 are costs from January 1, 2020 through June 30, 2020 and were estimated and included in PNA's corrected mechanic's lien claim.[7]

(c)    ***Third-Party Beneficiary Claim***

26.    I have been advised that PNA has a third party-beneficiary claim directly against Park Place Primary arising from Park Place Primary's covenants to perform various actions required by the BFA. For example, section 13.1(e) of the BFA provides that if any mechanic's lien claim is filed or otherwise asserted against the Project or any funds are due to the General Contractor (Gilbane) or Major Subcontractors (including PNA), that Park Place Primary will discharge the same, by either payment or the posting of a bond in accordance with Section 19(4) of N.Y. Lien Law (as amended and in compliance with all other laws). Despite the amounts owed to and the mechanic's lien asserted by PNA (by way of the Notice of Lien and Corrected Notice of Lien), Park Place Primary has failed to pay the amounts owed to PNA or post a bond in accordance with N.Y. Lien Law, as required by the BFA. Further, section 13.1(ee) of the BFA provides that Park Place Primary shall receive all proceeds of "Transactions" (as defined in the BFA) as a trust fund in accordance with the provisions of the N.Y. Lien Law to be applied first to the payment of the Costs of Improvement before using any part of such Transaction proceeds for any other purpose. Finally, section 8.2 of the BFA requires use of loan proceeds to pay Budget (as defined in the BFA) line items, which almost certainly includes subcontractor's claims, including PNA's. The amount of this direct claim against Park Place Primary is no less $8,875,284.80.

---

[7] PNA reserves the right to assert an equitable lien on the Curtainwall and other material in its possession with respect to such amounts owed (other than any portion of its claim that it has waived).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: May _18_, 2021

_Thomas M. Gannon_

Thomas M. Gannon

# Exhibit 2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| Park Place Development Primary, LLC, | Case No. 21-_____(___) |
| Alleged Debtor. | |

## <u>DECLARATION OF MATTHEW CARUSO</u>

I, Matthew Caruso, hereby declare as follows:

1.      I am the owner and President of Construction Realty Safety Group Inc. (hereinafter "CR Safety").  I have served in this role since May 14, 2013, as such I am familiar with CR Safety's businesses, including CR Safety's involvement in the Project (as defined herein) and its claims against alleged debtor Park Place Development Primary, LLC (hereinafter "Park Place Primary") related thereto.

2.      I submit this declaration to provide background concerning CR Safety's claims against Park Place Primary.

3.      Except as otherwise indicated, the statements set forth in this declaration are based upon my personal knowledge, information learned from my review of relevant documents and court pleadings, or information supplied to me from other members of CR Safety's management and CR Safety's advisors.  If called to testify, I could and would testify competently to the matters set forth in this declaration.

**I.      Background.**

**a.  The Project**

4.      Park Place Primary is the owner of record of the real property commonly known as 43 Park Place, located at 43 Park Place, New York, New York 10007, and as designated on the tax

1

map of New York County as Block 126, Lot 8 ("Lot 8").

5.      Lot 8 is the real property on which an unfinished residential condominium construction project (the "Project", together with Lot 8, the "Property") is located.  The Project is commonly described as "45 Park Place," even though construction of the Project occurred at the physical location of Lot 8.

6.      Gilbane Residential Construction LLC ("Gilbane"), a general contracting and construction management company, and Park Place Partners Development LLC ("Park Place Development"), an affiliate of Park Place Primary and prior owner of Lot 8 (as discussed *infra*), entered into a written Construction Management Agreement dated as of March 15, 2015 (the "CMA"), whereby Gilbane agreed to provide construction management services in connection with the Project.[1]  The CMA was amended and assumed by Park Place Primary on April 28, 2016.

7.      CR Safety, as a subcontractor, and Gilbane, as the general contractor, entered into a Short Form Contract Agreement with Gilbane dated as of December 21, 2017, (together with all amendments, change orders, exhibits, thereto, the "Contract"), pursuant to which CR Safety undertook to furnish site safety management consulting services in connection with the Project.

**II.      The Project Financing**

8.      On or about April 26, 2016, Malayan Banking Berhad, New York Branch, as administrative agent for Malayan Banking Berhad, London Branch, Intesa Sanpaolo S.P.A., New York Branch, WARBA Bank K.S.C.P. and 45 Park Place Investments, LLC (collectively, the "Lenders") agreed to advance money to Park Place Primary in the maximum aggregate principal amount of up to $174,000,000.00, consisting of (i) advances in the aggregate principal amount of

---

[1] Upon information and belief, Park Place Primary and Park Place Development are owned and/or controlled by the same beneficial interest holders, including Sharif El-Gamal, the lead owner and guarantor of the Project.

up to $162,112,896.16, the proceeds of which were to be used to finance the Costs of Improvements (as such term is defined in the New York Lien Law) associated with the Project, pursuant to and evidenced by, among other things, the Building Facility Agreement dated April 26, 2016 (the "BFA"), and (ii) advances in the aggregate principal amount of up to $11,887,103.84, the proceeds of which were to be used to pay soft costs associated with the Project other than the Costs of Improvement, pursuant to and evidenced by, among other things, the Project Facility Agreement dated April 26, 2016 (the "PFA," together with the BFA, the "Facility").

9.      The Facility was purportedly structured to be Sharia Law compliant.

10.     On or prior to May 17, 2016, the Lenders filed an affidavit dated April 26, 2016, sworn to by Sharif El-Gamal on behalf of Park Place Primary, pursuant to section 22 (the "Section 22 Affidavit") of the New York Lien Law ("N.Y. Lien Law") with the Office of the Clerk for the County of New York (the "Clerk's Office").

11.     On or about May 17, 2016, Park Place Development, as the alleged owner of Lot 8, and Park Place Development, as the alleged owner of the neighboring premises located at 45-51 Park Place, New York, New York 10007 (Block 126, Lot 9) ("Lot 9"), executed that certain Zoning and Lot Development and Easement Agreement (the "ZLDA"), concerning Lot 8 and Lot 9. Park Place Primary did not sign the ZLDA and is not mentioned therein. Sharif El-Gamal signed the ZLDA on behalf of Park Place Development, as the only party to the agreement. However, the ZLDA was needed to, among other things, ensure that Park Place Primary had rights to use some of Lot 9 to provide sufficient floor (or "staging") area to construct the Project.

**III.    Mechanic's Lien Foreclosure Lawsuit**

12.     On or about March 11, 2020, the Lenders, initiated a foreclosure action against Park Place Primary, among others, including CR Safety, as a mechanic's lienholder (discussed *infra*),

3

in the Supreme Court of the State of New York, County of New York (hereinafter the "NY Supreme Court"), Index No. 850083/2020 (the "Foreclosure Action"), seeking to foreclose on the Property (and certain mortgages, liens and interests thereon, including Park Place Primary's alleged rights, benefits and easements, if any). An amended complaint was filed on July 14, 2020. The Foreclosure Action, including several dispositive motions, remains pending.[2]

13.     There are substantial disputes over the Lenders' actions in connection with the Facility and the validity, priority and extent of the Lenders' liens on the Property. Park Place Primary has filed a summons in the NY Supreme Court, Index No. 652366/2020, and a motion to dismiss the Foreclosure Action, alleging, among other things, certain lender liability claims/defenses, including that the Lenders abrogated, ignored and breached their obligations under the BFA (and related loan documents) by, among other things, failing to fund draw requests and fabricating defaults. Park Place Primary also alleges that the Lenders failed to act in conformance with the principles of Sharia Law, as required by the BFA (and related loan documents).

14.     Upon a cursory review of the answers, counterclaims and motions filed in the Foreclosure Action by CR Safety and other mechanic's lienholders evidence further disputes with respect to the priority of the Lenders' purported liens on the Property. Specifically, CR Safety and other mechanic's lienholders allege, among other things, that the Section 22 Affidavit, sworn to by Sharif El-Gamal on behalf of Park Place Primary and filed by the Lenders in connection with the Facility, was materially false on and after the date of filing and/or failed to contain material

---

[2] Upon information and belief, the NY Supreme Court has indicated that it will take at least a year to adjudicate pending motions for summary judgment and to dismiss (which are not yet fully briefed) in the Foreclosure Action. Depending on the eventual disposition of such motions, it is entirely possible (and, indeed, likely) that subsequent discovery and trial in the Foreclosure Action will require extensive time thereafter—which puts any potential foreclosure auction and sale of the Property in the distant future, at best.

information required by Section 22 (*i.e.*, the amount paid and to be paid for the loan, which information was clearly required to be included therein pursuant to the statute and as required by the Lenders as evidenced by Section 13.1(ee) and Exhibit G of the BFA.[3]

### IV.     Claims Against Park Place Primary

15.     During the period between November 1, 2017 and February 7, 2020, CR Safety performed site safety management consulting services at the Project, which consisted of Site Safety Plan drafting and daily on-site safety consulting services in accordance with applicable New York City Building Code requirements, having an agreed upon price and reasonable value of $700,001.25. The services so performed by CR Safety were performed and furnished for the improvement of the Project.

16.     On or about December 20, 2019, CR Safety caused to be filed and docketed in the Clerk's Office a verified Notice of Mechanic's Lien against the Property in the amount of $34,937.50 ("Lien 1").

17.     On or about February 7, 2020, CR Safety caused to be filed and docketed in the Clerk's Office a verified Notice of Mechanic's Lien against the Property in the amount of $4,452.50 ("Lien 2," together with Lien 1, the "Liens").

18.     As set forth in the Liens, CR Safety, as a mechanic's lienholder, has a secured claim against the Property in an amount no less than $39,390.00. There have been no challenges by Park Place Primary to CR Safety's mechanic's liens claims. I have been advised that the unsecured

---

[3] I have been advised that when a construction lender contributes funding to a construction project in New York, section 22 of N.Y. Lien Law applies to determine whether the lender's mortgage lien against the property has priority over any subsequently filed mechanic's liens. If a construction lender follows the statute and files the proper paperwork when the loan closes, and mechanics' lien claims are filed thereafter, the lender's lien will be senior to the lien claimants. However, if a lender knowingly files a building loan contract that materially misrepresents the net sum available to the borrower for the improvement or otherwise evidences a failure to comply with section 22 of N.Y. Lien Law (e.g., a failure of the affidavit to set forth amounts to be paid for the loan), such lender's mortgage is subordinated to subsequently filed mechanic's liens.

claims held by the petitioning creditors exceed the statutory threshold required to commence an involuntary proceeding against the Park Place Primary.

## V.    Third-Party Beneficiary Claim

19.    I have been advised that CR Safety has a third-party beneficiary claim directly against Park Place Primary arising from Park Place Primary's covenants to perform various actions required by the BFA. For example, Section 13.1.(e) of the BFA provides that if any mechanic's lien claim is filed or otherwise asserted against the Project or any funds are due to Gilbane, that Park Place Primary will discharge the same, by either payment or the posting of a bond in accordance with Section 19(4) of N.Y. Lien Law (as amended in compliance with all other laws). Despite the amounts owed to and the mechanic's lien asserted by CR Safety (by way of the Liens), Park Place Primary has failed to pay the amounts owed to CR Safety or post a bond in accordance with N.Y. Lien Law, as required by the BFA. Further Section 13.1(ee) of the BFA provides that Park Place Primary shall receive all proceeds of "transactions" (as defined in the BFA) as a trust fund in accordance with the provisions of the N.Y. Lien Law to be applied first to the payment of the Costs of Improvement before using any part of such Transaction proceeds for any other purpose. Finally, Section 8.2 of the BFA requires use of loan proceeds to pay Budget (as defined in the BFA) line items, which almost certainly include subcontractor claims, including CR Safety's. The amount of this direct claim against Park Place Primary is no less than $39,390.00.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: May 18, 2021

_____
Matthew Caruso

6

# Exhibit 3

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| Park Place Development Primary, LLC, | Case No. 21-_____(___) |
| Alleged Debtor. | |

## DECLARATION OF MATTHEW CARUSO

I, Matthew Caruso, hereby declare as follows:

1.      I am the owner and President of Trade Off Plus, LLC (hereinafter "Trade Off").  I have served in this role since September 15, 2020, as such I am familiar with Trade Off's businesses, including Trade Off's involvement in the Project (as defined herein) and its claims against alleged debtor Park Place Development Primary, LLC (hereinafter "Park Place Primary") related thereto.

2.      I submit this declaration to provide background concerning Trade Off's claims against Park Place Primary.

3.      Except as otherwise indicated, the statements set forth in this declaration are based upon my personal knowledge, information learned from my review of relevant documents and court pleadings, or information supplied to me from other members of Trade Off's management and Trade Off's advisors.  If called to testify, I could and would testify competently to the matters set forth in this declaration.

**I.      Background.**

**a.  The Project**

4.      Park Place Primary is the owner of record of the real property commonly known as 43 Park Place, located at 43 Park Place, New York, New York 10007, and as designated on the tax map of New York County as Block 126, Lot 8 ("Lot 8").

5.        Lot 8 is the real property on which an unfinished residential condominium construction project (the "Project", together with Lot 8, the "Property") is located.  The Project is commonly described as "45 Park Place," even though construction of the Project occurred at the physical location of Lot 8.

6.        Gilbane Residential Construction LLC ("Gilbane"), a general contracting and construction management company, and Park Place Partners Development LLC ("Park Place Development"), an affiliate of Park Place Primary and prior owner of Lot 8 (as discussed *infra*), entered into a written Construction Management Agreement dated as of March 15, 2015 (the "CMA"), whereby Gilbane agreed to provide construction management services in connection with the Project.[1]  The CMA was amended and assumed by Park Place Primary on April 28, 2016.

7.        Trade Off, as a subcontractor, and Gilbane, as the general contractor, entered into a Short Form Contract Agreement with Gilbane dated as of November 15, 2018, (together with all amendments, change orders, exhibits, thereto, the "Contract"), pursuant to which Trade Off undertook to furnish general construction labor services in connection with the Project.

**II.        The Project Financing**

8.        On or about April 26, 2016, Malayan Banking Berhad, New York Branch, as administrative agent for Malayan Banking Berhad, London Branch, Intesa Sanpaolo S.P.A., New York Branch, WARBA Bank K.S.C.P. and 45 Park Place Investments, LLC (collectively, the "Lenders") agreed to advance money to Park Place Primary in the maximum aggregate principal amount of up to $174,000,000.00, consisting of (i) advances in the aggregate principal amount of up to $162,112,896.16, the proceeds of which were to be used to finance the Costs of

---

[1] Upon information and belief, Park Place Primary and Park Place Development are owned and/or controlled by the same beneficial interest holders, including Sharif El-Gamal, the lead owner and guarantor of the Project.

Improvements (as such term is defined in the New York Lien Law) associated with the Project, pursuant to and evidenced by, among other things, the Building Facility Agreement dated April 26, 2016 (the "BFA"), and (ii) advances in the aggregate principal amount of up to $11,887,103.84, the proceeds of which were to be used to pay soft costs associated with the Project other than the Costs of Improvement, pursuant to and evidenced by, among other things, the Project Facility Agreement dated April 26, 2016 (the "PFA," together with the BFA, the "Facility").

9.      The Facility was purportedly structured to be Sharia Law compliant.

10.     On or prior to May 17, 2016, the Lenders filed an affidavit dated April 26, 2016, sworn to by Sharif El-Gamal on behalf of Park Place Primary, pursuant to section 22 (the "Section 22 Affidavit") of the New York Lien Law ("N.Y. Lien Law") with the Office of the Clerk for the County of New York (the "Clerk's Office").

11.     On or about May 17, 2016, Park Place Development, as the alleged owner of Lot 8, and Park Place Development, as the alleged owner of the neighboring premises located at 45-51 Park Place, New York, New York 10007 (Block 126, Lot 9) ("Lot 9"), executed that certain Zoning and Lot Development and Easement Agreement (the "ZLDA"), concerning Lot 8 and Lot 9. Park Place Primary did not sign the ZLDA and is not mentioned therein. Sharif El-Gamal signed the ZLDA on behalf of Park Place Development, as the only party to the agreement. However, the ZLDA was needed to, among other things, ensure that Park Place Primary had rights to use some of Lot 9 to provide sufficient floor (or "staging") area to construct the Project.

**III.    Mechanic's Lien Foreclosure Lawsuit**

12.     On or about March 11, 2020, the Lenders, initiated a foreclosure action against Park Place Primary, among others, including Trade Off, as a mechanic's lienholder (discussed *infra*), in the Supreme Court of the State of New York, County of New York (hereinafter the "NY

Supreme Court"), Index No. 850083/2020 (the "Foreclosure Action"), seeking to foreclose on the Property (and certain mortgages, liens and interests thereon, including Park Place Primary's alleged rights, benefits and easements, if any). An amended complaint was filed on July 14, 2020. The Foreclosure Action, including several dispositive motions, remains pending.[2]

13. There are substantial disputes over the Lenders' actions in connection with the Facility and the validity, priority and extent of the Lenders' liens on the Property. Park Place Primary has filed a summons in the NY Supreme Court, Index No. 652366/2020, and a motion to dismiss the Foreclosure Action, alleging, among other things, certain lender liability claims/defenses, including that the Lenders abrogated, ignored and breached their obligations under the BFA (and related loan documents) by, among other things, failing to fund draw requests and fabricating defaults. Park Place Primary also alleges that the Lenders failed to act in conformance with the principles of Sharia Law, as required by the BFA (and related loan documents).

14. Upon a cursory review of the answers, counterclaims and motions filed in the Foreclosure Action by Trade Off and other mechanic's lienholders evidence further disputes with respect to the priority of the Lenders' purported liens on the Property. Specifically, Trade Off and other mechanic's lienholders allege, among other things, that the Section 22 Affidavit, sworn to by Sharif El-Gamal on behalf of Park Place Primary and filed by the Lenders in connection with the Facility, was materially false on and after the date of filing and/or failed to contain material information required by Section 22 (*i.e.*, the amount paid and to be paid for the loan, which

---

[2] Upon information and belief, the NY Supreme Court has indicated that it will take at least a year to adjudicate pending motions for summary judgment and to dismiss (which are not yet fully briefed) in the Foreclosure Action. Depending on the eventual disposition of such motions, it is entirely possible (and, indeed, likely) that subsequent discovery and trial in the Foreclosure Action will require extensive time thereafter—which puts any potential foreclosure auction and sale of the Property in the distant future, at best.

information was clearly required to be included therein pursuant to the statute and as required by the Lenders as evidenced by Section 13.1(ee) and Exhibit G of the BFA.[3]

**IV.    Claims Against Park Place Primary**

15.    During the period between November 1, 2017 and February 7, 2020, Trade Off performed general construction labor services at the Project, which consisted of safety protection and carpentry work, having an agreed upon price and reasonable value of $700,001.25.  The services so performed by Trade Off were performed and furnished for the improvement of the Project.

16.    On or about December 20, 2019, Trade Off caused to be filed and docketed in the Clerk's Office a verified Notice of Mechanic's Lien against the Property in the amount of $240,146.25 ("Notice of Lien").

17.    As set forth in the Notice of Lien, Trade Off, as a mechanic's lienholder, has a secured claim against the Property in an amount no less than $240,146.25. There have been no challenges by Park Place Primary to Trade Off's mechanic's liens claims. I have been advised that the unsecured claims held by the petitioning creditors exceed the statutory threshold required to commence an involuntary proceeding against the Park Place Primary.

**V.    Third-Party Beneficiary Claim**

18.    I have been advised that Trade Off has a third-party beneficiary claim directly against Park Place Primary arising from Park Place Primary's covenants to perform various actions

---

[3] I have been advised that when a construction lender contributes funding to a construction project in New York, section 22 of N.Y. Lien Law applies to determine whether the lender's mortgage lien against the property has priority over any subsequently filed mechanic's liens.  If a construction lender follows the statute and files the proper paperwork when the loan closes, and mechanics' lien claims are filed thereafter, the lender's lien will be senior to the lien claimants.  However, if a lender knowingly files a building loan contract that materially misrepresents the net sum available to the borrower for the improvement or otherwise evidences a failure to comply with section 22 of N.Y. Lien Law (e.g., a failure of the affidavit to set forth amounts to be paid for the loan), such lender's mortgage is subordinated to subsequently filed mechanic's liens.

required by the BFA. For example, Section 13.1.(e) of the BFA provides that if any mechanic's lien claim is filed or otherwise asserted against the Project or any funds are due to Gilbane, that Park Place Primary will discharge the same, by either payment or the posting of a bond in accordance with Section 19(4) of N.Y. Lien Law (as amended in compliance with all other laws). Despite the amounts owed to and the mechanic's lien asserted by Trade Off (by way of the Liens), Park Place Primary has failed to pay the amounts owed to Trade Off or post a bond in accordance with N.Y. Lien Law, as required by the BFA. Further Section 13.1(ee) of the BFA provides that Park Place Primary shall receive all proceeds of "transactions" (as defined in the BFA) as a trust fund in accordance with the provisions of the N.Y. Lien Law to be applied first to the payment of the Costs of Improvement before using any part of such Transaction proceeds for any other purpose. Finally, Section 8.2 of the BFA requires use of loan proceeds to pay Budget (as defined in the BFA) line items, which almost certainly include subcontractor claims, including Trade Off's. The amount of this direct claim against Park Place Primary is no less than $240,146.25.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: May 18, 2021

Matthew Caruso

# Exhibit 4

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| Park Place Development Primary, LLC, | Case No. 21-_____(___) |
| Alleged Debtor. | |

<u>**DECLARATION OF MATTHEW CARUSO**</u>

I, Matthew Caruso, hereby declare as follows:

1.      I am the owner and President of Domani Inspection Services, Inc. (hereinafter "Domani").  I have served in this role since September 25, 2012, as such I am familiar with Domani's businesses, including Domani's involvement in the Project (as defined herein) and its claims against alleged debtor Park Place Development Primary, LLC (hereinafter "Park Place Primary") related thereto.

2.      I submit this declaration to provide background concerning Domani's claims against Park Place Primary.

3.      Except as otherwise indicated, the statements set forth in this declaration are based upon my personal knowledge, information learned from my review of relevant documents and court pleadings, or information supplied to me from other members of Domani's management and Domani's advisors.  If called to testify, I could and would testify competently to the matters set forth in this declaration.

**I.      Background.**

      **a.  The Project**

4.      Park Place Primary is the owner of record of the real property commonly known as 43 Park Place, located at 43 Park Place, New York, New York 10007, and as designated on the tax

map of New York County as Block 126, Lot 8 ("Lot 8").

5.      Lot 8 is the real property on which an unfinished residential condominium construction project (the "Project", together with Lot 8, the "Property") is located.  The Project is commonly described as "45 Park Place," even though construction of the Project occurred at the physical location of Lot 8.

6.      Domani, entered into a Professional Services Agreement with Park Place Partners Development LLC, dated as of December November 26, 2014, amended on April 26, 2016 to be with Park Place Development Primary LLC (together with all amendments, change orders, exhibits, thereto, the "Contract"), pursuant to which Domani undertook to furnish special inspection services in connection with the Project.

**II.      The Project Financing**

7.      On or about April 26, 2016, Malayan Banking Berhad, New York Branch, as administrative agent for Malayan Banking Berhad, London Branch, Intesa Sanpaolo S.P.A., New York Branch, WARBA Bank K.S.C.P. and 45 Park Place Investments, LLC (collectively, the "Lenders") agreed to advance money to Park Place Primary in the maximum aggregate principal amount of up to $174,000,000.00, consisting of (i) advances in the aggregate principal amount of up to $162,112,896.16, the proceeds of which were to be used to finance the Costs of Improvements (as such term is defined in the New York Lien Law) associated with the Project, pursuant to and evidenced by, among other things, the Building Facility Agreement dated April 26, 2016 (the "BFA"), and (ii) advances in the aggregate principal amount of up to $11,887,103.84, the proceeds of which were to be used to pay soft costs associated with the Project other than the Costs of Improvement, pursuant to and evidenced by, among other things, the Project Facility Agreement dated April 26, 2016 (the "PFA," together with the BFA, the "Facility").

2

8.       The Facility was purportedly structured to be Sharia Law compliant.

9.       On or prior to May 17, 2016, the Lenders filed an affidavit dated April 26, 2016, sworn to by Sharif El-Gamal on behalf of Park Place Primary, pursuant to section 22 (the "Section 22 Affidavit") of the New York Lien Law ("N.Y. Lien Law") with the Office of the Clerk for the County of New York (the "Clerk's Office").

10.      On or about May 17, 2016, Park Place Development, as the alleged owner of Lot 8, and Park Place Development, as the alleged owner of the neighboring premises located at 45-51 Park Place, New York, New York 10007 (Block 126, Lot 9) ("Lot 9"), executed that certain Zoning and Lot Development and Easement Agreement (the "ZLDA"), concerning Lot 8 and Lot 9.  Park Place Primary did not sign the ZLDA and is not mentioned therein.  Sharif El-Gamal signed the ZLDA on behalf of Park Place Development, as the only party to the agreement. However, the ZLDA was needed to, among other things, ensure that Park Place Primary had rights to use some of Lot 9 to provide sufficient floor (or "staging") area to construct the Project.

**III.     Breach of Contract Claim Against Park Place Primary**

11.      During the period between April 13, 2015 and November 4, 2017, Domani performed services at the Project, which consisted of special inspection services in accordance with applicable New York City Building Code requirements, having an agreed upon price and reasonable value of $366,446.76.  The services so performed by Domani were performed and furnished for the improvement of the Project.

12.      Park Place Primary only partially paid the agreed upon fees for Domani's services performed at the Project.

13.      As a result, Domani initiated a breach of contract action against Park Place Primary in NY Supreme Court, Index No. 652012/2019 (the "Breach of Contract Action") seeking payment

3

from Park Place Primary for Domani's unpaid fees in the amount of $47,884.64. The Breach of Contract Action is still currently pending.

14.    Accordingly, Domani, has an unsecured claim against the Park Place Primary in an amount no less than $47,884.64. There have been no challenges by Park Place Primary to Domani's claim. As such, I have been advised that the unsecured claims held by the petitioning creditors exceed the statutory threshold required to commence an involuntary proceeding against the Park Place Primary.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: May 18, 2021

_____
Matthew Caruso

# Exhibit 5

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 7 |
| Park Place Development Primary, LLC, | Case No. 21-_____ (___) |
| Alleged Debtor. | |

**DECLARATION OF THOMAS J. GARCIA**

I, Thomas J. Garcia, hereby declare as follows:

1.      I am the Executive Vice-President and Chief Financial Officer of S&E Bridge & Scaffold LLC ("S&E"); and, in that capacity, I have personal knowledge of S&E's business and financial affairs, including S&E's involvement in the Project (as defined herein) and S&E's claims against the alleged debtor, Park Place Development Primary, LLC ("Park Place Primary"), related thereto.

2.      I submit this declaration to provide background concerning S&E's claims against Park Place Primary.

3.      Except as otherwise indicated, the statements set forth in this declaration are based upon my personal knowledge, information learned from my review of relevant documents and court pleadings, or information supplied to me from other members of S&E's management or S&E's advisors.  I am authorized to submit this declaration on behalf of S&E.  If called to testify, I could and would testify competently to the matters set forth in this declaration.

1

(i)   **Background**

    (a)   ***The Project***

    4.    Park Place Primary is the owner of record of the real property commonly known as 43 Park Place, located at 43 Park Place, New York, New York 10007, and as designated on the tax map of New York County as Block 126, Lot 8 ("Lot 8").

    5.    Lot 8 is the real property on which an unfinished residential condominium construction project (the "Project", together with Lot 8, the "Property") is located.  The Project is commonly described as "45 Park Place", even though construction of the Project occurred at the physical location of Lot 8.

    6.    Gilbane Residential Construction LLC ("Gilbane"), a general contracting and construction management company, and Park Place Partners Development LLC ("Park Place Development"), an affiliate of Park Place Primary and prior owner of Lot 8 (as discussed *infra*), entered into a written Construction Management Agreement dated as of March 15, 2015 (the "CMA"), whereby Gilbane agreed to provide construction management services in connection with the Project.[1]  The CMA was amended and assumed by Park Place Primary on April 28, 2016.

    7.    S&E, as subcontractor, and Gilbane, as general contractor, entered into a Trade Contract Agreement dated as of July 6, 2016 (together with the amendments,exhibits, and related instruments and agreements thereto, collectively, the "TCA"), pursuant to which S&E undertook to furnish labor, services, materials and equipment for the installation and dismantling of a hoist, heavy duty platform, roof protection shed, gate, fence, overhead protector, scaffold, start tower and other items of material necessary for the work  at the Project.

---

[1] Upon information and belief, Park Place Primary and Park Place Development are owned and/or controlled by the same beneficial interest holders, including Sharif El-Gamal, the lead owner and guarantor of the Project.

8.     Thereafter, S&E performed all of its obligations on its part to be performed pursuant to the TCA, so that the sum of $2,199,000.00 became due and owing to S&E for the labor it performed and the materials it furnished to Gilbane for the Project.

9.     Gilbane breached the TCA by failing to pay S&E for all of the labor performed and materials and equipment furnished by S&E for the Project, leaving a balance due and owing to S&E from Gilbane of $409,118.41, no part of which has been paid, although duly demanded.

10.     Subsequently, S&E became aware that Gilbane had been terminated from the Project.  Nonetheless, S&E continued, and still continues up to the present, to perform all of its obligations under the TCA for the Project, and for which Park Place Primary is receiving the value and benefit.

11.     S&E has filed three separate mechanic's liens against the Project, one against the interests of Gilbane, as contractor; and Park Place Primary and Park Place Development, as fee owners, in the sum of $409,118.41; and, since Gilbane was terminated from the Project, two against the interests of Park Place Primary and Park Place Development, as both contractors and as fee owners, in the respective sums of $90,090.00 and $257,400.00.

**(b)     *The Project Financing***

12.     On or about April 26, 2016, Malayan Banking Berhad, New York Branch, as administrative agent for Malayan Banking Berhad, London Branch, Intesa Sanpaolo S.P.A., New York Branch, WARBA Bank K.S.C.P. and 45 Park Place Investments, LLC (collectively, the "Lenders") agreed to advanced money to Park Place Primary in the maximum aggregate principal amount of up to $174,000,000.00, consisting of (i) advances in the aggregate principal amount of up to $162,112,896.16, the proceeds of which were to be used to finance the Costs of

Improvements (as such term is defined in the New York Lien Law) associated with the Project, pursuant to and evidenced by, among other things, the Building Facility Agreement dated April 26, 2016 (the "BFA"), and (ii) advances in the aggregate principal amount of up to $11,887,103.84, the proceeds of which were to be used to pay soft costs associated with the Project other than the Costs of Improvement, pursuant to and evidenced by, among other things, the Project Facility Agreement dated April 26, 2016 (the "PFA", together with the BFA, the "Facility").

13.    The Facility was purportedly structured to be Sharia Law compliant.

14.    On or prior to May 17, 2016, the Lenders filed an affidavit dated April 26, 2016, sworn to by Sharif El-Gamal on behalf of Park Place Primary, pursuant to section 22 (the "Section 22 Affidavit") of the New York Lien Law ("N.Y. Lien Law") with the Office of the Clerk for the County of New York (the "Clerk's Office").[2]

(c)    *The ZLDA*

15.    On or about May 17, 2016, Park Place Development, as the alleged owner of Lot 8, and Park Place Development, as the alleged owner of the neighboring premises located at 45-51 Park Place, New York, New York 10007 (Block 126, Lot 9) ("Lot 9"), executed that certain Zoning and Lot Development and Easement Agreement (the "ZLDA"), concerning Lot 8 and Lot 9. Park Place Primary did not sign the ZLDA and is not mentioned therein. Sharif El-Gamal signed the ZLDA on behalf of Park Place Development, as the only party to the agreement. However, the ZLDA was needed to, among other things, ensure that Park Place Primary had rights to use some of Lot 9 to provide sufficient floor (or "staging") area to construct the Project.

---

[2] In brief summary, Section 22 of the NY Lien Law requires, among other things, that a lender that makes a loan for improvements on real property file an affidavit from the owner/borrower containing certain information, including the consideration paid or to be paid for the loan, all other expenses incurred or to be incurred in connection therewith, and the net sum available to the owner/borrower for the improvement.

    **(d)**    ***The Foreclosure Action***

16.    On or about March 11, 2020, the Lenders initiated a foreclosure action against Park Place Primary, among others, including S&E, as a mechanic's lienholder (discussed *infra*), in the Supreme Court of the State of New York, County of New York (the "<u>NY Supreme Court</u>"), Index No. 850083/2020 (the "<u>Foreclosure Action</u>"), seeking to foreclose on the Property (and certain mortgages, liens and interests thereon, including Park Place Primary's alleged rights, benefits and easements, if any, under the ZLDA). An amended complaint was filed on July 14, 2020. The Foreclosure Action, including several dispositive motions, remains pending.[3]

17.    There are substantial disputes over the Lenders' actions in connection with the Facility and the validity, priority and extent of the Lenders' liens on the Property. Park Place Primary has filed a summons in the NY Supreme Court, Index No. 652366/2020, and a motion to dismiss in the Foreclosure Action, alleging, among other things, certain lender liability claims/defenses, including that the Lenders abrogated, ignored and breached their obligations under the BFA (and related loan documents) by, among other things, failing to fund draw requests and fabricating defaults. Park Place Primary also alleges that the Lenders failed to act in conformance with the principles of Sharia Law, as required by the BFA (and related loan documents).

18.    A cursory review of the answers, counterclaims and motions filed in the Foreclosure Action by S&E and other mechanic's lienholders evidence further disputes with respect to the priority of the Lenders' purported liens on the Property. Specifically, S&E and other

---

[3] The NY Supreme Court has indicated that it will take at least a year to adjudicate pending motions for summary judgment and to dismiss (which are not yet fully briefed) in the Foreclosure Action. Depending on the eventual disposition of such motions, it is entirely possible (and, indeed, likely) that subsequent discovery and trial in the Foreclosure Action will require extensive time thereafter—which puts any potential foreclosure auction and sale of the Property in the distant future, at best.

mechanic's lienholders allege, among other things, that the Section 22 Affidavit, sworn to by Sharif El-Gamal on behalf of Park Place Primary and filed by the Lenders in connection with the Facility, was materially false on and after the date of filing and/or failed to contain material information required by Section 22 (*i.e.*, the amount paid and to be paid for the loan, which information was clearly required to be included therein pursuant to the statute and as required by the Lenders as evidenced by Section 13.1(ee) and Exhibit G of the BFA).[4]

### (ii)    Claims Against Park Place Primary

19.    During the period between September 19, 2017 and continuing to the present time, S&E performed and is performing labor and furnished and is furnishing material and equipment for use at the Property, consisting of the installation and dismantling of a hoist, heavy duty platform, roof protection shed, gate, fence, overhead protector, scaffold, start tower and other items of material necessary for the work  at the Project; having an agreed price and reasonable value of more than $2.5 million.  The labor so performed, and material and equipment so furnished by S&E were performed and furnished for the improvement of the Project.

20.    S&E has filed three separate mechanic's liens against the Project, one against the interests of Gilbane, as contractor; and Park Place Primary and Park Place Development, as fee owners, in the sum of $409,118.41; and, since Gilbane was terminated from the Project, two against the interests of Park Place Primary and Park Place Development, as both

---

[4] I have been advised that when a construction lender contributes funding to a construction project in New York, section 22 of N.Y. Lien Law applies to determine whether the lender's mortgage lien against the property has priority over any subsequently filed mechanic's liens.  If a construction lender follows the statute and files the proper paperwork when the loan closes, and mechanics' lien claims are filed thereafter, the lender's lien will be senior to the lien claimants.  However, if a lender knowingly files a building loan contract that materially misrepresents the net sum available to the borrower for the improvement or otherwise evidences a failure to comply with section 22 of N.Y. Lien Law (e.g., a failure of the affidavit to set forth amounts to be paid for the loan), such lender's mortgage is subordinated to subsequently filed mechanic's liens.

contractors and as fee owners, in the respective sums of $90,090.00 and $257,400.00 (the "Notices of Lien").

### (a)    *Claim Against the Property*

21.    As set forth in the Notices of Lien, S&E, as a mechanic's lienholder, has a secured claim against the Property in an amount no less than $756,608.41.  There have been no challenges by Park Place Primary, Park Place Development or Gilbane to S&E's Notices of Lien. I have been advised that because a "claim against the debtor" includes "claim against the property of the debtor" pursuant to section 102(2) of the Bankruptcy Code, which became applicable at the time the involuntary petition against Park Place Primary was filed, this claim is sufficient to qualify S&E as a petitioning creditor under section 303(b) of the Bankruptcy Code.  Moreover, S&E hereby waives $16,750 of its secured claim.  I have been advised that the unsecured claims held by the petitioning creditors exceed the statutory threshold required to commence an involuntary proceeding against Park Place Primary, but S&E has nonetheless decided to waive a portion of its secured claim in the event that such waiver is necessary to establish the eligibility requirements set forth in section 303(b).

### (b)    *Third-Party Beneficiary Claim*

22.    I have been advised that S&E has a third party-beneficiary claim directly against Park Place Primary arising from Park Place Primary's covenants to perform various actions required by the BFA.   For example, section 13.1(e) of the BFA provides that if any mechanic's lien claim is filed or otherwise asserted against the Project or any funds are due to the General Contractor (Gilbane) or Major Subcontractors (including S&E), that Park Place Primary will discharge the same, by either payment or the posting of a bond in accordance with Section 19(4) of N.Y. Lien Law (as amended and in compliance with all other laws).  Despite the amounts owed

to and the mechanic's lien asserted by S&E (by way of the Notices of Lien), Park Place Primary has failed to pay the amounts owed to S&E or post a bond in accordance with N.Y. Lien Law, as required by the BFA. Further, section 13.1(ee) of the BFA provides that Park Place Primary shall receive all proceeds of "Transactions" (as defined in the BFA) as a trust fund in accordance with the provisions of the N.Y. Lien Law to be applied first to the payment of the Costs of Improvement before using any part of such Transaction proceeds for any other purpose. Finally, section 8.2 of the BFA requires use of loan proceeds to pay Budget (as defined in the BFA) line items, which almost certainly includes subcontractor's claims, including S&E's. The amount of this direct claim against Park Place Primary is no less than $756,608.41.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: May 21, 2021

Thomas J. Garcia

8

# Exhibit 6

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Park Place Development Primary, LLC, | Case No. 21-____ (___) |
| Alleged Debtor. | |

## DECLARATION OF ISMAEL LEYVA

I, Ismael Leyva, hereby declare as follows:

1.    I am a principal of Ismael Leyva Architect, P.C. ("ILA"). I have served in this role since 1998. In connection with my role as a principal I am familiar with ILA's businesses, including *ILA*'s involvement in the Project (as defined herein) and its claims against alleged debtor Park Place Development Primary, LLC ("Park Place Primary") related thereto.

2.    I submit this declaration to provide background concerning ILA's claims against Park Place Primary.

3.    Except as otherwise indicated, the statements set forth in this declaration are based upon my personal knowledge, information learned from my review of relevant documents and court pleadings, or information supplied to me from other members of ILA's management or ILA's advisors. I am authorized to submit this declaration on behalf of ILA. If called to testify, I could and would testify competently to the matters set forth in this declaration.

(i)    **Background**

(a)    *The Project*

4.    Park Place Primary is the owner of record of the real property commonly known as 43 Park Place, located at 43 Park Place, New York, New York 10007, and as designated on the tax map of New York County as Block 126, Lot 8 ("Lot 8").

1

5.      Lot 8 is the real property on which an unfinished residential condominium construction project (the "Project", together with Lot 8, the "Property") is located. The Project is commonly described as "45 Park Place", even though construction of the Project occurred at the physical location of Lot 8.

6.      Soho Properties Inc. ("Soho"), an affiliate of and authorized agent of Park Place Primary, and ILA entered into a written agreement dated as of October 18, 2013 (the "Contract"), pursuant to which ILA undertook to furnish professional architectural services (collectively, the "Services") for the Project.

7.      From on and about April 13, 2013 through November 30, 2019 at the request of Soho on behalf and with the consent of the Park Place Primary, ILA provided the Services for the Project pursuant to the Contract, (collectively, the "Work"), at a total reasonable value including applicable sales tax in the sum of $2,106,425.00.

8.      ILA billed Soho and Park Place Primary for the Services and partial payments were made by Park Place Primary, however the payments were untimely and not for the full billed amounts.

9.      On or about December 1, 2019, after Soho and Park Place Primary had fallen approximately 8 months behind on payment of the sums due for the Services pursuant to the Contract and after ILA had served due notice and demand to cure upon Soho and Park Place Primary, ILA to ceased performance of any further of the Services relating to the Project.

**(b)     *The Project Financing***

10.     On or about April 26, 2016, Malayan Banking Berhad, New York Branch, as administrative agent for Malayan Banking Berhad, London Branch, Intesa Sanpaolo S.P.A., New York Branch, WARBA Bank K.S.C.P. and 45 Park Place Investments, LLC (collectively,

2

the "Lenders") agreed to advanced money to Park Place Primary in the maximum aggregate principal amount of up to $174,000,000.00, consisting of (i) advances in the aggregate principal amount of up to $162,112,896.16, the proceeds of which were to be used to finance the Costs of Improvements (as such term is defined in the New York Lien Law) associated with the Project, pursuant to and evidenced by, among other things, the Building Facility Agreement dated April 26, 2016 (the "BFA"), and (ii) advances in the aggregate principal amount of up to $11,887,103.84, the proceeds of which were to be used to pay soft costs associated with the Project other than the Costs of Improvement, pursuant to and evidenced by, among other things, the Project Facility Agreement dated April 26, 2016 (the "PFA", together with the BFA, the "Facility").

11.     The Facility was purportedly structured to be Sharia Law compliant.

12.     On or prior to May 17, 2016, the Lenders filed an affidavit dated April 26, 2016, sworn to by Sharif El-Gamal on behalf of Park Place Primary, pursuant to section 22 (the "Section 22 Affidavit") of the New York Lien Law ("N.Y. Lien Law") with the Office of the Clerk for the County of New York (the "Clerk's Office").[1]

**(c)    The ZLDA**

13.     On or about May 17, 2016, Park Place Development, as the alleged owner of Lot 8, and Park Place Development, as the alleged owner of the neighboring premises located at 45-51 Park Place, New York, New York 10007 (Block 126, Lot 9) ("Lot 9"), executed that certain Zoning and Lot Development and Easement Agreement (the "ZLDA"), concerning Lot 8 and Lot 9. Park Place Primary did not sign the ZLDA and is not mentioned therein. Sharif El-

---

[1] In brief summary, Section 22 of the NY Lien Law requires, among other things, that a lender that makes a loan for improvements on real property file an affidavit from the owner/borrower containing certain information, including the consideration paid or to be paid for the loan, all other expenses incurred or to be incurred in connection therewith, and the net sum available to the owner/borrower for the improvement.

Gamal signed the ZLDA on behalf of Park Place Development, as the only party to the agreement. However, the ZLDA was needed to, among other things, ensure that Park Place Primary had rights to use some of Lot 9 to provide sufficient floor (or "staging") area to construct the Project.

**(d)     *The Foreclosure Action***

14.     On or about March 11, 2020, the Lenders initiated a foreclosure action against Park Place Primary, among others, including *ILA*, as a mechanic's lienholder (discussed *infra*), in the Supreme Court of the State of New York, County of New York (the "NY Supreme Court"), Index No. 850083/2020 (the "Foreclosure Action"), seeking to foreclose on the Property (and certain mortgages, liens and interests thereon, including Park Place Primary's alleged rights, benefits and easements, if any, under the ZLDA). An amended complaint was filed on July 14, 2020. The Foreclosure Action, including several dispositive motions, remains pending.[2]

15.     There are substantial disputes over the Lenders' actions in connection with the Facility and the validity, priority and extent of the Lenders' liens on the Property. Park Place Primary has filed a summons in the NY Supreme Court, Index No. 652366/2020, and a motion to dismiss in the Foreclosure Action, alleging, among other things, certain lender liability claims/defenses, including that the Lenders abrogated, ignored and breached their obligations under the BFA (and related loan documents) by, among other things, failing to fund draw requests and fabricating defaults. Park Place Primary also alleges that the Lenders failed to act in conformance with the principles of Sharia Law, as required by the BFA (and related loan documents).

---

[2] The NY Supreme Court has indicated that it will take at least a year to adjudicate pending motions for summary judgment and to dismiss (which are not yet fully briefed) in the Foreclosure Action. Depending on the eventual disposition of such motions, it is entirely possible (and, indeed, likely) that subsequent discovery and trial in the Foreclosure Action will require extensive time thereafter—which puts any potential foreclosure auction and sale of the Property in the distant future, at best.

4

16.     A cursory review of the answers, counterclaims and motions filed in the Foreclosure Action by ILA and other mechanic's lienholders evidence further disputes with respect to the priority of the Lenders' purported liens on the Property. Specifically, ILA and other mechanic's lienholders allege, among other things, that the Section 22 Affidavit, sworn to by Sharif El-Gamal on behalf of Park Place Primary and filed by the Lenders in connection with the Facility, was materially false on and after the date of filing and/or failed to contain material information required by Section 22 (*i.e.*, the amount paid and to be paid for the loan, which information was clearly required to be included therein pursuant to the statute and as required by the Lenders as evidenced by Section 13.1(ee) and Exhibit G of the BFA).[3]

### (ii)    Claims Against Park Place Primary

17.     During the period between April 13, 2013 through November 30, 2019, ILA performed professional architectural services relating to the Property, having an agreed price and reasonable value of more than $2 million. The Services so performed by ILA pursuant to the Contract were performed and furnished for the improvement of the Project.

18.     On May 22, 2020, ILA caused to be filed and docketed in the Clerk's Office a verified Notice of Mechanic's Lien against the Property in the amount of $93,571.40 (the "Notice of Lien").

---

[3] I have been advised that when a construction lender contributes funding to a construction project in New York, section 22 of N.Y. Lien Law applies to determine whether the lender's mortgage lien against the property has priority over any subsequently filed mechanic's liens. If a construction lender follows the statute and files the proper paperwork when the loan closes, and mechanics' lien claims are filed thereafter, the lender's lien will be senior to the lien claimants. However, if a lender knowingly files a building loan contract that materially misrepresents the net sum available to the borrower for the improvement or otherwise evidences a failure to comply with section 22 of N.Y. Lien Law (e.g., a failure of the affidavit to set forth amounts to be paid for the loan), such lender's mortgage is subordinated to subsequently filed mechanic's liens.

19.    ILA delivered by invoices relating to the Services and a Notice of Lien to Park Place Primary detailing the amount due of $93,571.40. Park Place Primary has not disputed any amounts in the Notice of Lien or in ILA's invoices.

(a)    *Claim Against the Property*

20.    As set forth in the Notice of Lien, ILA, as a mechanic's lienholder, has a secured claim against the Property in an amount no less than $93,571.40.

21.    There have been no challenges by Park Place Primary to ILA's mechanic's lien claim. I have been advised that because a "claim against the debtor" includes "claim against the property of the debtor" pursuant to section 102(2) of the Bankruptcy Code, which became applicable at the time the involuntary petition against Park Place Primary was filed, this claim is sufficient to qualify ILA as a petitioning creditor under section 303(b) of the Bankruptcy Code. I have been advised that the unsecured claims held by the petitioning creditors exceed the statutory threshold required to commence an involuntary proceeding against Park Place Primary.

(b)    *Third-Party Beneficiary Claim*

22.    I have been advised that ILA also has a third party-beneficiary claim directly against Park Place Primary arising from Park Place Primary's covenants to perform various actions required by the BFA. For example, section 13.1(e) of the BFA provides that if any mechanic's lien claim is filed or otherwise asserted against the Project or any funds are due to Direct Contractors or Major Subcontractors (including ILA), that Park Place Primary will discharge the same, by either payment or the posting of a bond in accordance with Section 19(4) of N.Y. Lien Law (as amended and in compliance with all other laws). Despite the amounts owed to and the mechanic's lien asserted by ILA (by way of the Notice of Lien), Park Place

6

Primary has failed to pay the amounts owed to ILA or post a bond in accordance with N.Y. Lien Law, as required by the BFA. Further, section 13.1(ee) of the BFA provides that Park Place Primary shall receive all proceeds of "Transactions" (as defined in the BFA) as a trust fund in accordance with the provisions of the N.Y. Lien Law to be applied first to the payment of the Costs of Improvement before using any part of such Transaction proceeds for any other purpose. Finally, section 8.2 of the BFA requires use of loan proceeds to pay Budget (as defined in the BFA) line items, which almost certainly includes the claims of ILA pursuant to the Contract. The amount of this direct claim against Park Place Primary is no less $93,571.40.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: May 20th , 2021

_____
Ismael Leyva

7