# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>**PARK PLACE DEVELOPMENT PRIMARY, LLC**<br><br>**Alleged Debtor.** | **Chapter 7 (Involuntary)**<br><br>**Case No. 21-10849 (CSS)**<br><br>**Objection Deadline:**<br>**July 22, 2021 at 4:00 p.m. (ET)**<br>**Hearing Date:**<br>**August 18, 2021 at 11:00 a.m. (ET)** |

## MOTION FOR ENTRY OF AN ORDER DISMISSING THE INVOLUNTARY PETITION PURSUANT TO 11 U.S.C. 707(a) AND 305(a) OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. 362(d)(1), (2)[1]

---

[1] On July 6, 2021, the Alleged Debtor filed the *Motion of the Alleged Debtor Pursuant to Sections 303 and 305 of the Bankruptcy Code for Dismissal of, or Abstention from, the Involuntary Bankruptcy Petition* (the "AD Motion"). While the Lenders disagree with a number of the factual allegations in the AD Motion, the Lenders join in the Alleged Debtor's arguments for dismissal of the Involuntary Petition.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................2

JURISDICTION ........................................................................................................3

BACKGROUND .........................................................................................................4

    I.      Overview of the Property and the Project............................................. 4

    II.     The Facility Agreements.................................................................... 5

    III.    The Default under the Facility Agreements......................................... 5

    IV.    The New York State Court Foreclosure Action..................................... 6

    V.     State Court Appointed Receiver ......................................................... 7

    VI.    Motion for Summary Judgment........................................................... 8

RELIEF REQUESTED...............................................................................................9

BASIS FOR RELIEF..................................................................................................9

    I.      Creditors May File a Motion to Dismiss Pursuant to Sections 305(a) and 707(a) of the Bankruptcy Code................................................................ 9

    II.     This Case Should Be Dismissed with Prejudice For "Cause" Pursuant to Section 707(a) of the Bankruptcy Code Because the Involuntary Petition Was Not Filed in Good Faith ............................................................... 10

        A.    The Involuntary Petition Serves No Valid Bankruptcy Purpose ................... 10

        B.    The Involuntary Petition Was Filed in Bad Faith and Is Nothing More than a Litigation Tactic ................................................................. 13

    III.    The Court Should Abstain From Exercising Its Jurisdiction Over This Chapter 7 Case and Dismiss It Pursuant to Section 305(a) of the Bankruptcy Code ................................................................ 14

        A.    Factors 1-6: There is an Alternate Forum to Efficiently Achieve an Equitable Distribution of the Alleged Debtor's Single Asset ......................................... 15

i

B.      Factor 7: The Involuntary Petition was Filed for an Improper Purpose ......... 17

IV.      Dismissal of the Involuntary Petition Should Be With Prejudice to
         Pursuant to Section 349(a) ..................................................................................... 18

V.      The Court Should Grant Relief from the Automatic Stay ................................... 19

A.      The Involuntary Petition was Filed in Bad Faith and Is Cause for
        Stay Relief ......................................................................................................... 20

B.      There is Cause to Lift they Stay Because the Lenders Lack
        Adequate Protection .......................................................................................... 20

NOTICE ............................................................................................................................. 21

CONCLUSION .................................................................................................................. 22

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 801 S. Wells St. Ltd. Pshp.*, 192 B.R. 718 (Bankr. N.D. Ill. 1996) ................................ 15, 17

*In re Amc Investors, LLC*, 406 B.R. 478 (Bankr. D. Del. 2009).................................................... 15

*In re Bobroff*, 32 B.R. 930 (Bankr. E.D. Pa. 1983)........................................................................ 20

*In re Forever Green Ath. Fields, Inc.*, 500 B.R. 413 (Bankr. E.D. Pa. 2013) ...................... *passim*

*In re GVS Portfolio I B , LLC*, 2021 Bankr. LEXIS 1513 ..................................................... *passim*

*In re Jer/Jameson Mezz Borrower II, LLC*, 461 B.R. 293 (Bankr. D. Del. 2011)........................ 18

*In re Jr. Food Mart, Inc.*, 234 B.R. 420 (Bank. E.D. Ark. 1999) ................................................... 9

*In re Lippolis*, 228 B.R. 106 (E.D. Pa. 1998) .............................................................................. 20

*In re MacFarlane Webster Assocs.*, 121 B.R. 694 (Bankr. S.D.N.Y. 1990) ........................... 9, 10

*In re Navient Solutions, LLC*, 625 B.R. 801 (Bankr. S.D.N.Y. 2021)......................................... 15

*In re Newbury Operating LLC*, Bankr. S.D.N.Y. No. 20-12976-JLG, 2021 Bankr.
    LEXIS 773 (Mar. 25, 2021)................................................................................... 16, 17

*In re O'Neil Vill. Pers. Care Corp.*, 88 B.R. 76 (Bankr. W.D. Pa. 1988).................................... 12

*In re Reinhardt*, 27 B.R. 2 (Bankr. M.D. Pa. 1982)..................................................................... 20

*In re Silverman*, 230 B.R. 46 (Bankr. D. N.J. 1998)................................................................... 13

*In re Skyworks Ventures, Inc.*, 431 B.R. 573 (Bankr. D. N.J. 2010) ........................................... 13

*In re Systems Communications, Inc.*, 234 B.R. 145 (Bankr. M.D. Fla. 1999)............................. 10

*Lubow Machine Co. v. Bayshore Wire Prods. (In re Bayshore Wire Prods.)*,
    209 F.3d 100  (2d Cir. 2000)............................................................................... 13, 14

i

*Mother African Union Methodist Church v. Conference of AUFCMP Church (In re Conference of African Union First Colored Methodist Protestant Church)*, 184 B.R. 207 (Bankr. D. Del. 1995) ................................................................... 20

*NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108 (3d Cir. 2004). ............................................. 10

*Tamecki v. Frank (In re Tamecki)*, 229 F.3d 205 (3d Cir. 2000) ................................. 10

## Statutes

11 U.S.C. § 305(a) ................................................................................................. *passim*

11 U.S.C. § 349(a) ........................................................................................ 9, 18, 22

11 U.S.C. § 362(d)(1) ........................................................................................ *passim*

11 U.S.C. § 362(d)(2) ........................................................................................ *passim*

11 U.S.C. § 362(d)(3) .................................................................................................. 19

11 U.S.C. 707(a) .............................................................................................. *passim*

11 U.S.C. § 707(a)(3) .................................................................................................. 9

## Other Authorities

1 Collier on Bankruptcy ¶ 4.02 (2020) ................................................................... 20

2 Collier on Bankruptcy ¶ 303.20 (16th 2021) ...................................................... 9

DOCS_DE:235248.1 68700/001

Malayan Banking Berhad, New York Branch (the "<u>Administrative Agent</u>"), as Administrative Agent for Malayan Banking Berhad, London Branch, Intesa Sanpaolo S.P.A., New York Branch, Warba Bank K.S.C.P., and 45 Park Place Investments, LLC (collectively with the Administrative Agent, the "<u>Lenders</u>") hereby move (the "<u>Motion</u>") for entry of an order (the "<u>Order</u>"), substantially in the form attached hereto as **Exhibit A**, pursuant to sections 707(a), 305(a), 349(a), 362(d)(1) and 362(d)(2) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), (i) dismissing the involuntary petition (the "<u>Involuntary Petition</u>") [Docket No. 1] filed against Park Place Development Primary, LLC (the "<u>Alleged Debtor</u>") by Permasteelisa North America Corp. ("<u>PNA</u>"), Construction Realty Safety Group Inc. ("<u>CRS</u>"), Trade Off Plus, LLC ("<u>Trade Off Plus</u>"), Domani Inspection Services, Inc. ("<u>Domani</u>"), S&E Bridge & Scaffold LLC ("<u>S&E</u>"), and Ismael Leyva Architect, P.C. ("<u>Ismael</u>") (collectively, the "<u>Petitioning Creditors</u>") for cause and with prejudice pursuant to section 349(a) or, in the alternative, (ii) granting relief from the automatic stay.   In support of this Motion, the Lenders submit the accompanying Declarations of Matthew Parrott dated July 7, 2021, Ahmad Hamdi Bin Abdullah dated July 7, 2021, Justin Casson dated July 7, 2021 and the exhibits annexed thereto, and respectfully state as follows:

## PRELIMINARY STATEMENT

1.       While the procedural posture of these cases are unique, the facts are not: indeed this Court dismissed a case very similar to this case three weeks ago.[2]  The Alleged Debtor is a single purpose entity whose sole asset is a partially complete 43-story residential high-rise building that serves as collateral for secured loans issued by the Lenders with a principal balance that far exceeds the value of the Property.  Moreover, the Alleged Debtor has been in default on such loans for more than two years and a foreclosure action has been proceeding in state court for more than a year.  A receiver has been appointed to safeguard the Property and the only source of funding to preserve and protect the property has been protective advances made by the Lenders at the request of the receiver.  This Petition was filed by creditors – *who have been actively involved in foreclosure litigation* – on the eve of their response deadline for the Lenders' motion for summary judgment for the sole purpose of gaining a tactical advantage in litigation.  That is plainly an improper use of the bankruptcy process and this case should be dismissed.

2.       More specifically, on March 11, 2020, the Lenders commenced a commercial mortgage foreclosure action in the Supreme Court of the State of New York County of New York, and the state court immediately thereafter appointed a receiver to protect, preserve, and maintain the Property.  Between June 2020 and December 2020, the Petitioning Creditors filed answers with cross-claims and counterclaims, and on January 22, 2021, the Lenders moved for summary judgment.  On May 24, 2021, after actively litigating in the state court action for over a year, the

---

[2]      *In re GVS Portfolio I B , LLC,* Bankr. D. Del. No. 21-10690 (CSS), 2021 Bankr. LEXIS 1513 (June 4, 2021).

DOCS_DE:235248.1 68700/001

Petitioning Creditors commenced this involuntary chapter 7 case two days before their response was due to the Lenders' motion for summary judgment.

3.        The Petitioning Creditors are a group of disgruntled mechanic's lienors that are no doubt owed significant sums by the Alleged Debtor, and have engaged in a scorched earth litigation strategy to frustrate and delay the Lenders' efforts to foreclose on the Property.  If the Lenders are successful in the foreclosure action, the mechanics lienors' liens will be extinguished and their prospect for recovery is slim.  While that is unfortunate, it is the result of the relative priorities of the Lenders' liens and the mechanics lienors' liens and the value of the Property.

4.        The Involuntary Petition should be dismissed for three reasons: (1) the Involuntary Petition was filed in bad faith as a litigation tactic on the eve of the Petitioning Creditors' deadline to respond to the Lenders' Motion for Summary Judgment; (2) the Alleged Debtor does not have any cash or unencumbered assets to distribute to unsecured creditors or to pay professionals such as a chapter 7 trustee; and (3) the preservation of the Alleged Debtor's sole asset, a partially complete 43 story residential high rise, requires significant capital expenditures and the Alleged Debtor lacks any cash or assets to preserve the Property. For the same reasons, even if the Involuntary Petition is not dismissed, relief from stay should be granted to permit the Lenders to continue the foreclosure action.

## **JURISDICTION**

5.        This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3

DOCS_DE:235248.1 68700/001

6.       The statutory predicates for the relief sought herein are sections 707(a), 305(a), and 362(d)(1),(2) of the Bankruptcy Code and the related Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), including Bankruptcy Rules 1017, 2002, 4001 and 9014, and Local Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

## BACKGROUND

### I.       Overview of the Property and the Project

7.       The Alleged Debtor is the fee owner of real property located in New York County, commonly known as 43 Park Place, located at 43 Park Place, New York, New York 10007 (Block 126, Lot 8) (the "Property").  Parrot Decl., Ex. A.

8.       The Alleged Debtor is a single purpose entity that has no assets other than its interest in the Property and the Project (defined below).  Parrot Decl., Ex. A., § 3.1(gg) ("Each of Obligor and Sole Member is, and at all times during the term of the Facility shall remain, a Single Purpose Entity."); § 3.2 (listing requirements of Single Purpose Entity).

9.       The Alleged Debtor obtained financing from the Lenders to complete a 43 story mixed-use condominium tower that is to have approximately 111,933 saleable square feet of residential space containing fifty (50) residential condominium units, approximately 1,129 square feet containing retail condominium units, and 413 square feet of storage space containing approximately 19 storage units (the "Project").  Parrot Decl., Ex. A.

10.      The Project is not complete and is not generating any income.  Although the vertical construction of all 43 stories has been completed and the building has been topped out, the curtain

4

wall for the building has not been completed. Casson Decl., Ex. B. The estimated cost to complete construction of the project is approximately $83,772,202 million. Casson Decl., Ex. B.

11.     Pursuant to an appraisal obtained by the Lenders dated as of July 2, 2021, the Property is valued at approximately $87,900,000. Casson Decl., ¶ 11 & Ex. B.

## II.     The Facility Agreements

12.     The Alleged Debtor obtained financing from the Lenders in the maximum aggregate principal amount of up to $174,000,000.00, consisting of: (i) the Building Facility Agreement pursuant to which the Alleged Debtor borrowed up to a maximum principal amount of $162,112,896.16 (the "Building Facility") and (ii) the Project Facility Agreement pursuant to which the Alleged Debtor borrowed up to a maximum principal amount of $11,887,103.84 (the "Project Facility," and together with the Building Facility, the "Facility"). Parrott Decl., ¶ 4 & Exs. A, D. Both the Building Facility and Project Facility were evidenced by notes and secured by a duly recorded mortgage. Parrott Decl., ¶ 4 & Exs. B, C, E, F.

13.     As of June 1, 2021, the amount owed by Alleged Debtor has grown to $130,856,015.18 (the "Loan Balance"), which includes, among other things, the Protective Advances (defined below) and the costs and expenses associated with the state court action.[3] Abdullah Decl. ¶ 5 & Ex. A.

## III.     The Default under the Facility Agreements

14.     Section 5.3(a) of the Building Facility Agreement states that "the term of the Facility shall expire on the Termination Date, at which time the unpaid Deferred Sales Price and

---

[3]     *See* Building Facility Agreement 13.1(n).

all other sums due and payable under the Notes and the other Facility Documents, shall be paid in full." Parrott Decl., ¶ 4 & Ex. A. Pursuant to the Building Facility Agreement, the Termination Date was April 26, 2019. *Id.* Accordingly, on April 26, 2019 the Alleged Debtor was obligated to pay in full all sums due and payable under the notes and the other Facility Documents (the "Maturity Amount"). *Id.*

15.     The Alleged Debtor failed to repay the Maturity Amount on the Termination Date, which constituted an event of default under the Facility Agreement and mortgages. Parrott Decl. ¶ 5 & Ex. G. The Lenders provided notice of this event of default on or about April 29, 2019. *Id.* The mortgages further provide that the Administrative Agent shall be entitled to exercise its rights and remedies under the mortgages, specifically the Administrative Agent "shall have the right to foreclose this Mortgage" and compel an auction of the mortgaged property. Parrott Decl. ¶ 5 & Ex. C.

## IV.    The New York State Court Foreclosure Action

16.     On or about March 11, 2020, as a result of the Alleged Debtor's default under the governing Facility Documents, the Administrative Agent commenced an action[4] in New York State Court (the "State Court") bearing caption *Malayan Banking Berhad, et al v. Park Place Development Primary LLC, et al*, Index No. 850083/2020 (the "Mortgage Foreclosure Action"). Parrott Decl. ¶ 6 & Ex. H. The parties to the Mortgage Foreclosure Action includes the Alleged Debtor and all but one of the Petitioning Creditors. *Id.* That creditor – Domani – is not a named

---

[4]     The complaint was amended by the Lenders on July 14, 2020.

DOCS_DE:235248.1 68700/001

defendant in the Mortgage Foreclosure Action; however, it appears from the Involuntary Petition that Domani's owner also owns Trade Off Plus and CRS, two of the defendants named in the Mortgage Foreclosure Action.

17.     In the Mortgage Foreclosure Action, the Lenders seek to enforce the terms of the Facility Agreements and foreclose upon the mortgages executed in connection therewith following the Alleged Debtor's defaults under the Facility Agreements, and obtain other related relief. *Id*.

18.     The Petitioning Creditors have been actively participating in the Mortgage Foreclosure Action and have filed answers with cross-claims and counterclaims. Parrott Decl. ¶¶ 8-11 & Exs. J-M.

## V.     State Court Appointed Receiver

19.     On March 13, 2020, the Lenders moved for an Ex Parte Order Appointing a Temporary Receiver (the "Receiver") to protect the Property. Parrott Decl. ¶ 7 & Ex. I. The State Court found that there was sufficient evidence "to justify the appointment of a Temporary Receiver and that the appointment of a Temporary Receiver is necessary to ensure the mortgaged property and collateral is not lost or materially injured . . . ." *Id*.

20.     The State Court granted the Receivership Order appointing Scott E. Mollen, Esq. as Receiver. *Id*. The Receiver is tasked with protecting and preserving the value of the collateral under the Facility Agreements (i.e., the Mortgaged Property). *Id*.

21.     Given that the Alleged Debtor has no other assets and the Project is not generating any income in its current state, and despite requests from the Receiver and the Lenders that the Alleged Debtor make the payments, the Receiver has had to rely on protective advances from the Lenders. Abdullah Decl. ¶ 6 & Ex. B. Those protective advances have been used to pay for

7

insurance premiums at the Property, security for the Property, and to pay certain funds owed to the New York City taxing authorities to have the Property removed from the tax lien sale list.  *Id.*

22.      As of June 1, 2021, the Lenders have provided $1,076,863.05 in protective advances.  *Id.*  The Lenders anticipate needing to provide additional protective advances over the next six months in the amount of $689,359.81.  Abdullah  Decl. ¶ 6 & Ex. C.

## VI.      Motion for Summary Judgment

23.      On January 22, 2021, the Lenders moved for summary judgment (the "Summary Judgment Motion") against the various defendants that had answered the operative pleading (including the Alleged Debtor and the Petitioning Creditors).  Parrott Decl. ¶ 12 & Ex. N.  The Summary Judgment Motion expressly addressed the issue of the priority of the mechanic's liens, and addressed why those liens were subordinate to the mortgage.  *Id.*

24.      On March 5, 2021, pursuant to the State Court's direction, the parties submitted a proposed briefing schedule with respect to the various pending motions and certain anticipated motions.  Parrott Decl. ¶ 13 & Ex. O.  Counsel for the Petitioning Creditors agreed to and signed the proposed briefing schedule. On or about March 8, 2021, the State Court so-ordered the stipulated briefing schedule.  *Id.*

25.      The proposed briefing schedule fixed May 26, 2021 as the deadline for the Alleged Debtor and the Petitioning Creditors to respond to the Summary Judgment Motion and file any cross-motions.  *Id.*  Rather than respond to the Summary Judgment Motion, on May 24, 2021, the Petitioning Creditors filed this Involuntary Petition against the Alleged Debtor.

8

## RELIEF REQUESTED

26.     By this Motion, the Lenders seek entry of an order pursuant to sections 707(a) of the Bankruptcy Code dismissing the Involuntary Petition for cause and pursuant to section 305(a)(1) of the Bankruptcy Code because dismissal best serves the interests of the creditors and the Alleged Debtor.  The Lenders also respectfully requests that the dismissal be with prejudice pursuant to section 349(a) of the Bankruptcy Code because it is in the best interest of the Alleged Debtor and its creditors.  In the alternative, the Lenders seeks entry of an order granting relief from the automatic stay with respect to the Property pursuant to section 362(d)(1),(2) so as to permit the Lenders to exercise their state-law rights and remedies against the Alleged Debtor, including the right to complete the Mortgage Foreclosure Action.

## BASIS FOR RELIEF

**I.      Creditors May File a Motion to Dismiss Pursuant to Sections 305(a) and 707(a) of the Bankruptcy Code**

27.     While creditors may not contest the filing of an involuntary petition under section 303, courts have held that a creditor can file a motion to dismiss pursuant to sections 305(a) and 707(a).  *See In re Jr. Food Mart, Inc.*, 234 B.R. 420, 421 (Bankr. E.D. Ark. 1999)*; In re MacFarlane Webster Assocs.*, 121 B.R. 694, 696-697 (Bankr. S.D.N.Y. 1990); 2 Collier on Bankruptcy ¶ 303.20 (16th 2021) ("Although creditors cannot answer a petition directly, they are not precluded from other types of responses that could yield the same ultimate outcome, such as seeking dismissal of the involuntary petition under section 305, 707(a) or 1112(b).").  Further, unlike section 707(a)(3), the wording of sections 305(a) and 707(a) includes both voluntary and involuntary petitions.

9

*MacFarlane*, 121 B.R. at 696-67.  Thus, a creditor may file a motion to dismiss an involuntary petition.  *Id*

## II. This Case Should Be Dismissed with Prejudice For "Cause" Pursuant to Section 707(a) of the Bankruptcy Code Because the Involuntary Petition Was Not Filed in Good Faith

28.      Pursuant to section 707(a), "the court may dismiss a case under this chapter only after notice and a hearing and only for cause . . . ."  11 U.S.C. 707(a).  The Third Circuit has held that an involuntary chapter 7 petition can be dismissed for "cause" if the petition was not filed in good faith.  *See Tamecki v. Frank (In re Tamecki)*, 229 F.3d 205, 207 (3d Cir. 2000).  When evaluating a petitioning creditor's good faith, the Third Circuit considers the totality of the circumstances and will consider a range of factors, including whether the involuntary petition was filed for a valid bankruptcy purpose and whether the petition was filed to obtain a tactical litigation advantage.  *In re Forever Green Ath. Fields, Inc.*, 500 B.R. 413, 425-427 (Bankr. E.D. Pa. 2013).

### A. The Involuntary Petition Serves No Valid Bankruptcy Purpose

29.      For a petition to be filed in good faith, the Third Circuit has found that the petition must serve a valid bankruptcy purpose.  *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 129 (3d Cir. 2004).  The purpose of a chapter 7 case is to consolidate a debtor's assets to preserve value and fairly distribute that value to the debtor's creditors.  *Forever Green*, 500 B.R. at 425.  Thus, the involuntary chapter 7 petition must seek "to create or preserve some value that would otherwise be lost-not merely distributed to a different stakeholder-outside of bankruptcy."  *Id.*  If the Alleged Debtor has no assets that can be easily liquidated, then it may not be possible to meaningfully proceed under chapter 7.  *See In re Systems Communications, Inc.*, 234 B.R. 145, 148 (Bankr. M.D. Fla. 1999).

10

30.      The bankruptcy court's decision in *Forever Green* and this Court's decision in *GVS* are instructive.  In *Forever Green*, the petitioning creditors filed an involuntary chapter 7 petition against Forever Green.  500 B.R. at 416.  Forever Green filed a motion to dismiss arguing that it was filed for an improper purpose and in bad faith.  *Id.* at 418.  The bankruptcy court agreed and dismissed the petition.  *Id.* at 430.  After considering the totality of the circumstances, the court found that the alleged debtor did not have any assets to liquidate and that forcing the alleged debtor into bankruptcy would not preserve value or maximize distribution to Forever Green's creditors. *Id.* at 430.

31.      In *GVS*, the debtor filed a chapter 11 case on the eve of a foreclosure sale.  Lexis 1513, at \*11.  A creditor filed a motion to dismiss arguing that the case was not filed in good faith. *Id.* at \*12.  The creditor asserted that the filing served no valid bankruptcy purpose because the debtor was not capable of reorganizing and the case would not maximize the value of the debtor's estate.  *Id.* at \*16.  Further, the creditor argued that the only purpose of the filing was to stall the foreclosure of the property.  *Id.*  This Court agreed and dismissed the case, finding that the petition was a litigation tactic used to avoid the state foreclosure action and that the petition served no valid bankruptcy purpose.  *Id.* at \*21.

32.      Here, like in *Forever Green and GVS*, the Petitioning Creditor's purpose in filing the Involuntary Petition is not to preserve value that would otherwise be unavailable outside of bankruptcy.  Instead, the Involuntary Petition advances an improper goal: to obtain the benefit of the automatic stay to avoid responding to the Lender's Motion for Summary Judgment and further delay the state-law foreclosure process.

11

33.     The Alleged Debtor is a single purpose entity that has no assets other than its interest in the Property.  However, the Alleged Debtor has no interest in the Property because the Property is currently valued at $87,900,000·, and the Alleged Debtor owes not less than $130,856,015.18 to the Lenders under the Facility Agreements.  Accordingly, the Alleged Debtor has no assets "to marshal . . . in order to achieve a greater pro rata distribution among a debtor's various unsecured creditors than what would be otherwise available outside of bankruptcy."  *Id.* at 425.

34.     Additionally, the Alleged Debtor has been unable to provide the funds necessary to preserve the Property, and as a result, the Lenders have been burdened with protective advance payments in the approximate amount of 1,076,863.05.  The Lenders estimate that the protective advances required to preserve the Property over the next six months will be no less than $689,359.81.  The bankruptcy estate does not have the financial resources necessary to preserve the Property to the conclusion of a chapter 7 proceeding.  As the court in *Forever Green* explained, when forcing a debtor into bankruptcy does not maximize the distribution of assets, courts have dismissed the involuntary petition.  *See id.* at 430.

35.     Moreover, the typical protections provided by a bankruptcy filing to preserve the value of assets are unnecessary and duplicative.  *See e.g. In re O'Neil Vill. Pers. Care Corp.*, 88 B.R. 76, 80 (Bankr. W.D. Pa. 1988) (finding the need for a chapter 7 trustee duplicative when a state court appointed receiver was already in place).  The Receiver appointed in the State Court action was appointed with the power and authority to "preserve and conserve the Mortgaged Property, including without limitation taking any and all steps necessary to protect, preserve, and maintain" the various rights and entitlements associated with the Property."  Parrott Decl. ¶ 7 &

12

Ex. I.  The Receiver has been carrying out its responsibilities to preserve the Property since March 12, 2020.

**B.    The Involuntary Petition Was Filed in Bad Faith and Is Nothing More than a Litigation Tactic**

36.    Courts have found evidence of bad faith when the petitioning creditor was actively litigating in an alternative forum but filed an involuntary petition within weeks of an adverse decision.  *See generally In re Skyworks Ventures, Inc.*, 431 B.R. 573, 579 (Bankr. D. N.J. 2010); *see also In re Silverman*, 230 B.R. 46, 52 (Bankr. D. N.J. 1998).  Other courts have utilized an "improper purpose test" and have found a petition to be filed in bad faith when the petitioning creditor used the involuntary petition as a litigation tactic, "particularly when the petitioner could have advanced its own interests in a different forum."  *See Lubow Machine Co. v. Bayshore Wire Prods. (In re Bayshore Wire Prods.)*, 209 F.3d 100, 105 (2d Cir. 2000).  Further, as this Court noted in *GVS*, a case "is filed in bad faith if the petition is filed merely to obtain a tactical litigation advantage."  *In re GVS Portfolio I B , LLC*, 2021 Bankr. LEXIS 1513, at \*21 (internal citations and quotations omitted) (dismissing a chapter 11 case filed on the eve of a foreclosure sale).

37.    For example, in *Forever Green*, instead of filing a pleading by the response deadline in the state court action, the petitioning creditors filed the involuntary petition a week before their memorandum in opposition was due.  500 B.R. at 424.  The court found that the petitioner's use of the involuntary petition as "a tactical advantage in pending litigation" evidenced an improper use of the bankruptcy system.  *Id.* at 427.

38.    Here, the Petitioning Creditors filed the Involuntary Petition as a litigation tactic to escape the Lenders' Motion for Summary Judgment and relocate to what they hope will be a

13

friendlier forum.  As noted above, the Petitioning Creditors have been actively litigating in the

Foreclosure Action for more than a year and filed the Involuntary Petition two days before their

response was due on the Summary Judgment Motion.  Instead of litigating their disputes in the

State Court action as they have done for the last year, the Petitioning Creditors now seek an

alternative forum to resolve their disputed claims.  That is an improper use of the bankruptcy

system "particularly when the petitioner could have advanced its own interests in a different

forum." *See In re Bayshore Wire Prods.*, 209 F.3d at 105 (internal citations and quotations omitted).

39.    Further, any dispute as to the priority of liens would have to be resolved in the

bankruptcy court though an adversary proceeding that mirrors the action already set for resolution

in the State Court proceeding.  To proceed in bankruptcy and start anew with the very same

arguments would be duplicative, unnecessary, and a waste of judicial resources.

40.    Because the Involuntary Petition was not for a valid bankruptcy purpose and as a

litigation tactic, the Involuntary Petition was not filed in good faith and should be dismissed for

cause under section 707(a).

## III.    The Court Should Abstain From Exercising Its Jurisdiction Over This Chapter 7 Case and Dismiss It Pursuant to Section 305(a) of the Bankruptcy Code

41.    Pursuant to section 305(a) of the Code, "the court, after notice and hearing, may

dismiss a case under this title . . . at any time if — (1) the interest of the creditors and the debtor

would be better served by such dismissal or suspension."  11 U.S.C. 305(a).  Courts look to a

number of established criteria in determining whether abstention would "better serve" the interests

of the debtor and creditors. These factors include:

> (1) the economy and efficiency of administration; (2) whether another forum is
> available to protect the interests of both parties or there is already a pending

14

proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

*In re Amc Investors, LLC*, 406 B.R. 478, 488 (Bankr. D. Del. 2009) (citations omitted). When conducting an abstention analysis, courts group together factors 1-6 because each of those factors focus on the availability of an alternate forum to efficiently achieve an equitable distribution. *In re Navient Solutions, LLC*, 625 B.R. 801, 820 (Bankr. S.D.N.Y. 2021) (citations omitted); *see e.g. Amc Investors*, 406 B.R. at 487-89 (applying the relevant factors together for purposes of the abstention analysis).

### A.   Factors 1-6: There is an Alternate Forum to Efficiently Achieve an Equitable Distribution of the Alleged Debtor's Single Asset

42.       When considering whether abstention is appropriate and in the best interest of the Alleged Debtor and its creditors, courts consider "whether another forum is available to protect the interest of [the] parties or there is already a pending proceeding in state court." *In re 801 S. Wells St. Ltd. Pshp.*, 192 B.R. 718, 723-724 (Bankr. N.D. Ill. 1996). Courts have found that an alternative forum is sufficient when there is a pending action "that will equitably satisfy the creditors and not be unduly burdensome or prejudicial to the debtor, so that continuation of the bankruptcy proceeding will be duplicitous and uneconomical." *Navient Solutions, LLC*, 625 B.R. at 820 (internal quotations omitted). Further, courts have found that it is not necessary that the alternate forum be as "expeditious or result in as a favorable an outcome to the Petitioning Creditors" to be sufficient. *Id.* at 821.

15

43.     For example, in *Newbury Operating LLC*, the court found dismissal appropriate because of the following:

> First, this Court is not the most economical and efficient forum in which to resolve this dispute because, among other things, as discussed above, neither the Alleged Debtor, nor its three creditors need relief under the Bankruptcy Code. (Factor 1). The Debtor is not operating, has de minimis assets (if any) and does not qualify for a bankruptcy discharge. The creditors do not require the protection of the automatic stay. Moreover, the Landlord can get all the protection it needs in State Court, and that court is the most economical and efficient forum in which to resolve the Landlord's dispute with the Alleged Debtor.

44.     *In re Newbury Operating LLC*, Bankr. S.D.N.Y. No. 20-12976-JLG, 2021 Bankr. LEXIS 773, at *38-39 (Mar. 25, 2021).   Further, the court in *Newbury Operating* found the landlord's inability to show why it could not "obtain substantially the same relief in the State Court Action" as further support for abstention. *Id.* at *40.

45.     Here, like in *Newbury Operating*, the bankruptcy court is not "the most economical and efficient forum to resolve this dispute" because neither the Alleged Debtor nor the Petitioning Creditors "need relief under the Bankruptcy Code."  *Id.* at *38-39.  There is already a pending proceeding in State Court that will efficiently achieve an equitable distribution of the Alleged Debtor's single asset.  Over the last year, the Lenders and Petitioning Creditors have been actively litigating in the Mortgage Foreclosure Action in State Court.  As stated above and is relevant to the determination of abstention, the Petitioning Creditors have filed answers with cross-claims and counterclaims with respect to the Lenders' complaint in the Mortgage Foreclosure Action. Further, the Petitioning Creditors agreed to and signed the proposed briefing schedule for the Summary Judgment Motion, specifically agreeing to respond to the Summary Judgment Motion

16

by May 26, 2021.  Were it not for the filing of the Involuntary Petition, the case in State Court would be proceeding towards a resolution.  It would be a waste of resources to begin anew in another forum when the issues raised by the Petitioning Creditors are already being considered in the State Court action.  Thus, if an order for relief is granted, the "continuation of the bankruptcy proceeding will be duplicitous and uneconomical."  *In re 801 S. Wells St. Ltd. Pshp.*, 192 B.R. 718, 724 (Bankr. N.D. Ill. 1996) (internal quotations omitted).

46.      Further, like in *Newbury Operating LLC*, the Petitioning Creditors cannot demonstrate why they cannot obtain the same relief in the State Court action.  In fact, they have already filed their initial arguments with the State Court, and the Petitioning Creditors further stipulated to a briefing schedule that would efficiently resolve the disputed issues.  However, instead of taking advantage of the response period to make their arguments, the Petitioning Creditors sat idly by allowing months to pass before filing this Involuntary Petition.

47.      Additionally, the New York State Court is well-suited to resolve disputes as to liens and priority pursuant to New York lien law, so a federal proceeding is not necessary to reach a just and equitable solution.  Thus, the Petitioning Creditors can obtain the same relief requested here in that forum.

**B.      Factor 7: The Involuntary Petition was Filed for an Improper Purpose**

48.      As stated above and is again relevant to the abstention analysis, the Involuntary Petition was filed for an improper purpose.  *See supra* at II.A.¶¶ 29-34.  The Alleged Debtor has no equity in the Property and no other assets in which to derive value for its creditors.  Proceeding in bankruptcy will only diminish the value of the Alleged Debtor's single asset and will not lead to "a greater pro rata distribution among a debtor's various unsecured creditors than what would be

17

otherwise available outside of bankruptcy." *Forever Green*, 500 B.R. at 425. The Involuntary Petition was filed merely as a litigation tactic to avoid responding to the Summary Judgment Motion in the Mortgage Foreclosure Action.

49.     Thus, to the extent the Court does not dismiss the chapter 7 case pursuant to section 707(a), the Lenders submit that the Court should nonetheless abstain from exercising its jurisdiction over this chapter 7 case and dismiss it pursuant to section 305(a)(l) of the Bankruptcy Code.

## IV.     Dismissal of the Involuntary Petition Should Be With Prejudice to Pursuant to Section 349(a)

50.     Pursuant to section 349(a) of the Bankruptcy Code, "[u]nless the court, for cause, orders otherwise, the dismissal of a case under this title does not . . . prejudice the debtor with regard to the filing of a subsequent petition under this title . . . ." 11 U.S.C. § 349(a). Courts have found cause for dismissal with prejudice when a petition "was filed in bad faith and for no legitimate bankruptcy purpose." *In re Jer/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 304 (Bankr. D. Del. 2011).

51.     Here, the Court should dismiss the Involuntary Petition with prejudice to prevent the Alleged Debtor and its creditors from filing successive petitions in this or another jurisdiction and further preventing consideration of the Lenders' Summary Judgment Motion in the Mortgage Foreclosure Action.[5] The Mortgage Foreclosure Action has been pending for over a year, and

---

[5]     On June 4, 2021, this Court dismissed the *GVS* case for having been filed in bad faith *without* prejudice. On June 17, 2021, the debtor then filed a chapter 11 case in the Northern District of Texas further delaying the foreclosure sale in that case.

18

significant resources have been expended by the Lenders to preserve the value of the Alleged Debtor's only asset, the Property.  Further, as a single purpose entity with its only asset burdened by secure loans that exceed its value, the Alleged Debtor has no unencumbered assets to distribute to its creditors.  Thus, any additional attempts to stall the Mortgage Foreclosure Action will only decrease value as opposed to maximizing it for the benefit of creditors.

52.      Accordingly, the Lenders respectfully submit that the Court should order dismissal of the Involuntary Petition with prejudice and enjoin any further filings by the Alleged Debtor and the Petitioning Creditors to prevent any further harm to the Lenders and the Property.

## V.      The Court Should Grant Relief from the Automatic Stay[6]

53.      While we believe there is more than sufficient cause for dismissal of this case, in the event the Court is inclined to allow the case to continue, the Court should grant relief from the automatic stay.  Pursuant to section 362(1), the bankruptcy court "shall" grant relief from the automatic stay on request of a party in interest "for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ."  11 U.S.C. § 362(d)(l).  Further, pursuant to section 362(d)(2), the bankruptcy court must lift the stay of an act against property if "the debtor does not have an equity in such property" and the "property is not necessary to an effective reorganization."  11 U.S.C. § 362(d)(2).  However, in a chapter 7 case, the second prong of section

---

[6]      The Lenders submit that section 362(d)(3) is also applicable to this case.  *See e.g. Suntrust Bank v. Glob. One, L.L.C. (In re Glob. One, L.L.C)*, 411 B.R. 524, 528-29 (Bankr. S.D. Ga. 2009); *Riggs Bank, N.A. v. Planet 10, L.C. (In re Planet 10, L..C.)*, 213 B.R. 478, 480 (Bankr. E.D. Va. 1997).  Thus, the Court will be required to grant relief from the automatic stay "90 days after the entry of the order for relief" because the Alleged Debtor, with no cash from operations and no unencumbered assets, will be unable to make interest payments to the Lenders.  11 U.S.C. 362(d)(3).

362(d)(2) is not applicable.  *See* 1 Collier Lending Institutions & Bankruptcy Code ¶ 4.02 (2020) ("In a chapter 7 case, the two pronged test has only one prong, because no property is necessary to an effective reorganization in chapter 7. . . .").

### A.     The Involuntary Petition was Filed in Bad Faith and Is Cause for Stay Relief

54.     Courts have found that a case filed in bad faith is cause for relief from the automatic stay.  *Mother African Union Methodist Church v. Conference of AUFCMP Church (In re Conference of African Union First Colored Methodist Protestant Church)*, 184 B.R. 207, 218 (Bankr. D. Del. 1995); *see also In re Lippolis*, 228 B.R. 106, 112 (E.D. Pa. 1998).

55.     As shown above, the Petitioning Creditors filed the Involuntary Petition in bad faith two days before their response was due on the Summary Judgment Motion, and the Alleged Debtor has no equity in the Property.  *See supra* at II.B.¶¶ 35-39.  Accordingly, the Lenders respectfully submit that cause exists to lift the automatic stay to permit the Lenders to proceed with the Mortgage Foreclosure Action.

### B.     There is Cause to Lift they Stay Because the Lenders Lack Adequate Protection

56.     The automatic stay should be lifted because Lenders' interest in the Property is not adequately protected.  11 U.S.C. § 362(d)(1).  Courts have found that a debtor's "equity cushion" in the collateral may adequately protect a creditor's interest.  *In re Reinhardt*, 27 B.R. 2, 4 (Bankr. M.D. Pa. 1982).  Conversely, the lack of an equity cushion in the collateral is "sufficient for granting relief" from the automatic stay.  *See In re Bobroff*, 32 B.R. 930, 931 (Bankr. E.D. Pa. 1983).

57.     As noted throughout, pursuant to an appraisal obtained by the Lenders dated as of July 2, 2021, the Property is valued at approximately $87,900,000.  As of June 1, 2021, the Alleged

Debtor's Loan Balance has grown to $130,856,015.18, which does not include, among other things, the Protective Advances and the costs and expenses associated with the State Court action.  Thus, the Alleged Debtor does not have an equity cushion in the Property to protect the Lenders' interests.  Further, the Alleged Debtor has not made and has no funds to make any of the payments necessary to preserve and protect the Property such as insurance, taxes and security despite requests from the Receiver and the Lenders.  Given that the Alleged Debtor has no other assets and the Project is not generating any income in its current state, the Alleged Debtor cannot provide any form of adequate protection.  Accordingly, since the Lenders' interest in the Property is not adequately protected, the Lenders are entitled to relief from the automatic stay pursuant to section 362(d)(1).  Further, the Alleged Debtor's lack of equity in the Property also entitles the Lenders to relief from the automatic stay pursuant to section 362(d)(2).

## NOTICE

58.     Notice of this Motion has been provided to (a) counsel for the United States Trustee for the District of Delaware, (b) counsel for the Alleged Debtor, (c) counsel for the Petitioning Creditors, and (d) all parties who have filed appearances in the involuntary chapter 7 case.  The Lenders submit that no other or further notice is necessary under the circumstances.

*[Remainder of page intentionally left blank]*

DOCS_DE:235248.1 68700/001

## CONCLUSION

WHEREFORE, the Lenders respectfully request entry of an Order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 707(a), 305(a), 349(a), 362(d)(1) and 362(d)(2) of the Bankruptcy Code, (i) dismissing the Involuntary Petition for cause and with prejudice or, in the alternative, (ii) granting relief from the automatic stay.

Dated:  July 8, 2021  
Wilmington, Delaware

*/s/ Laura Davis Jones*

Laura Davis Jones, Esq. (DE Bar No. 2436)  
**PACHULSKI STANG ZIEHL & JONES LLP**  
919 North Market Street, 17th Floor  
P.O. Box 8705  
Wilmington, Delaware 19899-8705 (Courier 19801)  
Telephone:   (302) 652-4100  
Facsimile:    (302) 652-4400  
Email:          ljones@pszjlaw.com

**-and-**

Gary L. Kaplan, Esq. (*pro hac vice pending*)  
Matthew D. Parrott, Esq. (*pro hac vice pending*)  
Andrew M. Minear, Esq. (*pro hac vice pending*)  
**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**  
One New York Plaza  
New York, NY 10004  
Telephone:   (212) 859-8000  
Facsimile:    (212) 859-4000  
Email:          Gary.Kaplan@friedfrank.com  
                     Matthew.Parrott@friedfrank.com  
                     Andrew.Minear@friedfrank.com

*Counsel for Malayan Banking Berhad,*  
*New York Branch, as Administrative Agent for*  
*Malayan Banking Berhad, London Branch, Intesa*  
*Sanpaolo S.P.A., New York Branch, Warba Bank*  
*K.S.C.P., and 45 Park Place Investments, LLC*

22