# EXHIBIT C

Declaration of Matthew Parrott



**2016060700046011003E7F2B**

## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 33 |
|---|---|

| | | |
|---|---|---|
| Document ID: **2016060700646011** | Document Date: 05-17-2016 | Preparation Date: 06-08-2016 |

Document Type: MORTGAGE AND CONSOLIDATION
Document Page Count: 32

| PRESENTER: | RETURN TO: |
|---|---|
| KENSINGTON VANGUARD<br>39 WEST 37TH ST TITLE NO. 822371(S-NY-CR-KV)A<br>HOLD/ PICKUP SEARCH NY<br>NEW YORK, NY 10018<br>212-532-8686<br>chrisc@KVNATIONAL.COM | REED SMITH LLP<br>599 LEXINGTON AVENUE<br>ATTENTION: GERARD HEFNER<br>NEW YORK, NY 10022 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 126 | 8 | Entire Lot | 43 PARK PLACE |

**Property Type:** NON-RESIDENTIAL VACANT LAND

### CROSS REFERENCE DATA

CRFN: 2014000318521

### PARTIES

| MORTGAGOR: | MORTGAGEE: |
|---|---|
| PARK PLACE DEVELOPMENT PRIMARY LLC<br>C/O SOHO PROPERTIES, 31 WEST 27TH STREET, 9TH FLOOR<br>NEW YORK, NY 10001 | MALAYAN BANKING BERHAD, NEW YORK BRANCH<br>400 PARK AVENUE<br>NEW YORK, NY 10022 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 162,112,896.16 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 129,112,896.16 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 645,564.50 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 1,452,520.13 | | $ | 0.00 |
| Spec (Additional): | $ | 322,782.25 | | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| MTA: | $ | 387,338.70 | **OF THE CITY REGISTER OF THE** | | |
| NYCTA: | $ | 806,955.63 | **CITY OF NEW YORK** | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed       06-23-2016 12:36 | | |
| TOTAL: | $ | 3,615,161.21 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | 197.00 | **2016000211378** | | |
| Affidavit Fee: | $ | 8.00 | | | |

*Annette M Hill*

***City Register Official Signature***

EXECUTION VERSION

# CONSOLIDATED, AMENDED AND RESTATED BUILDING FACILITY MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS

by

## PARK PLACE DEVELOPMENT PRIMARY LLC
### (Mortgagor)

**to and for the benefit of**

## MALAYAN BANKING BERHAD, NEW YORK BRANCH, as Administrative Agent
### (Mortgagee)

Effective: As of ~~April 26, 2016~~ May 17, 2016

THIS INSTRUMENT AFFECTS REAL AND PERSONAL PROPERTY SITUATED IN THE CITY, COUNTY AND STATE OF NEW YORK, KNOWN AS LOT 8 IN BLOCK 126 ON THE TAX MAP OF THE CITY OF NEW YORK.

Subject to the terms herein, the maximum principal amount secured by this Consolidated, Amended and Restated Building Facility Mortgage, Security Agreement and Assignment of Leases and Rents is $162,112,896.16.

B-126
L-8

DOCUMENT PREPARED BY AND
WHEN RECORDED RETURN TO:

REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Attention: Gerard Hefner
Reference: 382348.20002

## CONSOLIDATED, AMENDED AND RESTATED BUILDING FACILITY MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS

THIS   CONSOLIDATED,   AMENDED   AND   RESTATED   BUILDING FACILITY MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS (this "**Mortgage**") is made as of the 26ᵗʰ day of April, 2016, by **PARK PLACE DEVELOPMENT PRIMARY LLC**, a Delaware limited liability company ("**Mortgagor**"), having an address at c/o Soho Properties, 31 West 27ᵗʰ Street, 9ᵗʰ Floor, New York, NY 10001, in favor of **MALAYAN BANKING BERHAD, NEW YORK BRANCH**, a bank organized under the laws of Malaysia ("**Mortgagee**"), its successors and permitted assigns, as administrative agent for the Building Facility Financiers (as such term is defined in the Building Facility Agreement), having an address at 400 Park Avenue, New York, New York 10022.  Unless otherwise indicated, all capitalized terms used herein shall have the meanings indicated in that certain Building Facility Agreement of even date herewith, executed by Mortgagor and Mortgagee (as the same amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Building Facility Agreement**").  The Building Facility is being made pursuant to the Building Facility Agreement, and is evidenced and/or secured by the Building Facility Documents, which include, but are not limited to, the Building Facility Agreement, the Consolidated, Amended and Restated Building Facility Note, and this Mortgage.

### WITNESSETH:

WHEREAS, Mortgagee is the holder of the indebtedness evidenced by those certain existing notes (collectively, the "**Original Note**") secured by the mortgage described on Schedule 1 attached hereto and made a part hereof, which are each now held by Lender (collectively, the "**Original Mortgage**") upon which there remains a total unpaid principal balance of **$33,000,000.00**;

WHEREAS, Mortgagor has requested that Mortgagee loan an additional amount of **$129,112,896.16** to Borrower increasing the total indebtedness to **$162,112,896.16** which indebtedness is evidenced by that certain Consolidated, Amended and Restated Note in the amount of **$162,112,896.16**, which Consolidated, Amended and Restated Building Facility Note supersedes the Original Note, and is secured by this Mortgage;

WHEREAS, Mortgagor and Mortgagee have agreed to modify, amend, and restate the terms and provisions of the Original Mortgage into a lien in the maximum original principal amount not to exceed **ONE HUNDRED SIXTY-TWO MILLION ONE HUNDRED TWELVE THOUSAND EIGHT HUNDRED NINETY-SIX AND 16/100 ($162,112,896.16)** encumbering the Property; accordingly, the Original Mortgages are hereby consolidated, amended, restated and replaced in their entirety by this Mortgage;

NOW, THEREFORE, in consideration of the foregoing recitals, which are incorporated into the operative provisions of this Mortgage by this reference, and FOR VALUABLE CONSIDERATION, INCLUDING THE OBLIGATIONS HEREIN RECITED AND THE TRUST HEREIN CREATED, THE RECEIPT AND SUFFICIENCY OF WHICH

1

ARE HEREBY ACKNOWLEDGED, MORTGAGOR HEREBY IRREVOCABLY MORTGAGES, GRANTS, BARGAINS, SELLS, CONVEYS, TRANSFERS, PLEDGES, SETS OVER AND ASSIGNS, AND GRANTS A SECURITY INTEREST, TO AND IN FAVOR OF MORTGAGEE, AS ADMINISTRATIVE AGENT FOR THE BUILDING FACILITY FINANCIERS, THEIR SUCCESSORS AND PERMITTED ASSIGNS, WITH POWER OF SALE, in all of Mortgagor's estate, right, title and interest in, to and under any and all of the following described property, whether now owned or hereafter acquired (collectively, the "**Property**", provided, however, the Property shall not include Units which have been released from the lien of the Building Facility Documents in accordance with the Building Facility Agreement):

Mortgage Consolidation. The Original Mortgage and the respective liens thereof are hereby combined, consolidated, amended and restated so that together they shall hereafter constitute in law but one mortgage, a single lien, covering the Property and securing the principal sum of **ONE HUNDRED SIXTY-TWO MILLION ONE HUNDRED TWELVE THOUSAND EIGHT HUNDRED NINETY-SIX AND 16/100 ($162,112,896.16)** together with interest thereon as provided in the Loan Documents and shall read as follows:

(A)    All that certain real property situated in the City, County and State of New York, more particularly described on Exhibit A attached hereto and incorporated herein by this reference, together with all of the easements, rights, privileges, franchises, development rights, air rights, tenements, hereditaments and appurtenances now or hereafter thereunto belonging or in any way appertaining and all of the estate, right, title, interest, claim and demand whatsoever of Mortgagor therein or thereto, either at law or in equity, in possession or in expectancy, now or hereafter acquired (collectively, the "**Land**");

(B)    All structures, buildings and improvements of every kind and description now or at any time hereafter located or placed on the Land (the "**Improvements**");

(C)    All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, tenements, hereditaments and appurtenances, reversions and remainders whatsoever, in any way belonging, relating or appertaining to the Property or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Mortgagor;

(D)    All furniture, furnishings, fixtures, goods, equipment, inventory or personal property owned by Mortgagor and now or hereafter located on, attached to or used in or about the Improvements ("**Fixtures**"), including, but not limited to, all machines, engines, boilers, dynamos, elevators, stokers, tanks, cabinets, awnings, screens, shades, blinds, carpets, draperies, lawn mowers, and all appliances, plumbing, heating, air conditioning, lighting, ventilating, refrigerating, disposal and incinerating equipment, and all fixtures and appurtenances thereto, and such other goods and chattels and personal property owned by Mortgagor as are now or hereafter used or furnished in operating the Improvements, or the activities conducted therein, and all building materials and equipment hereafter situated on or about the Land or Improvements, and all warranties and guaranties relating thereto, and all additions thereto and

2

substitutions and replacements therefor, exclusive of any of the foregoing Fixtures owned or leased by tenants of space in the Improvements ("**Tenants**");

(E)   All water, water courses, ditches, wells, reservoirs and drains and all water, ditch, well, reservoir and drainage rights and powers which are appurtenant to, located on, under or above or used in connection with the Land or the Improvements, or any part thereof, together (i) with all utilities, utility lines, utility commitments, utility capacity, capital recovery charges, impact fees and other fees paid in connection with same, (ii) reimbursements or other rights pertaining to utility or utility services provided to the Land and/or Improvements and (iii) the present or future use or availability of waste water capacity, or other utility facilities to the extent same pertain to or benefit the Land and/or Improvements, including, without limitation, all reservations of or commitments or letters covering any such use in the future, whether now existing or hereafter created or acquired;

(F)   All minerals, crops, timber, trees, shrubs, flowers and landscaping features now or hereafter located on, under or above the Land;

(G)   All cash funds, deposit accounts and other rights and evidence of rights to cash, now or hereafter created or held by Mortgagee pursuant to this Mortgage or any other of the Building Facility Documents, including, without limitation, all funds now or hereafter on deposit in any Reserve Account (the "**Accounts**");

(H)   All leases, licenses, tenancies, concessions and occupancy agreements pertaining to all or any portion of the Land or the Improvements now or hereafter entered into by Mortgagor (the "**Leases**") and all rents, royalties, issues, s, revenue, income, accounts receivable and other benefits (collectively, the "**Rents**") of the Land, the Improvements, or the fixtures or equipment, now or hereafter arising from the use or enjoyment of all or any portion thereof or from any Lease or other agreement pertaining thereto or arising from any of the Contracts (as hereinafter defined) or any of the General Intangibles (as hereinafter defined) and all cash, letters of credit, securities and other things of value (the "**Security Deposits**") to the extent lawfully assignable that secure performance by the Tenants, lessees or licensees, as applicable, of their obligations under any such Leases, or which may be available to Mortgagor or its designee to effect repairs or maintenance, whether said cash or other security is to be held until the expiration of the terms of said Leases or applied to one or more of the installments of rent coming due prior to the expiration of said terms;

(I)   All contracts and agreements now or hereafter entered into covering any part of the Land or the Improvements, including but not limited to, any and all construction contracts now or hereafter in effect with respect to the Property (collectively, the "**Contracts**"), and all revenue, income and other benefits thereof, including, without limitation, management agreements, service contracts, maintenance contracts, equipment leases, personal property leases and any contracts or documents relating to construction on any part of the Land or the Improvements (including plans, specifications, studies, drawings, surveys, tests, operating and other reports, bonds and governmental approvals) or to the management or operation of any part of the Land or the Improvements, in each case, to the extent assignable under law and pursuant to the terms of such Contracts;

3

(J)     All present and future monetary deposits given to any public or private utility with respect to utility services furnished to any part of the Land or the Improvements;

(K)     All present and future funds, accounts, instruments, accounts receivable, documents, causes of action, claims, general intangibles (including, without limitation, trademarks, trade names, service marks and symbols now or hereafter used in connection with any part of the Land or the Improvements, all names by which the Land or the Improvements may be operated or known, all rights to carry on business under such names, and all rights, interest and privileges which Mortgagor has or may have as developer or declarant under any covenants, restrictions or declarations now or hereafter relating to the Land or the Improvements) and all notes or chattel paper now or hereafter arising from or by virtue of any transactions related to the Land or the Improvements (collectively, the **"General Intangibles"**), in each case to the extent lawfully assignable;

(L)     All water taps, sewer taps, certificates of occupancy, permits, special permits, uses, licenses, franchises, certificates, consents, approvals and other rights and privileges now or hereafter obtained in connection with the Land or the Improvements and all present and future warranties and guaranties relating to the Improvements or to any equipment, fixtures, furniture, furnishings, personal property or components of any of the foregoing now or hereafter located or installed on the Land or the Improvements, in each case to the extent lawfully assignable;

(M)     All building materials, supplies and equipment now or hereafter placed on the Land or in the Improvements and all architectural renderings, models, drawings, plans, specifications, studies and data now or hereafter relating to the Land or the Improvements;

(N)     All right, title and interest of Mortgagor in any takaful plans/insurance policies or binders now or hereafter relating to the Property including any unearned contributions/premiums thereon;

(O)     All proceeds, products, substitutions and accessions (including claims and demands therefor) of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including, without limitation, proceeds of takaful/insurance and condemnation awards; and

(P)     All other or greater rights and interests of every nature in the Land or the Improvements and in the possession or use thereof and income therefrom, whether now owned or hereafter acquired by Mortgagor.

FOR THE PURPOSE OF SECURING:

(1)     The full and prompt payment and performance of all Obligations under the Building Facility Agreement including, without limitation, the Obligations evidenced by the Consolidated, Amended and Restated Building Facility Note;

(2)     The full and prompt payment and performance of all of the provisions, agreements, covenants and Obligations herein contained and contained in any other Building

4

Facility Documents, and the payment of all other sums therein covenanted to be paid, including, without limitation, any prepayment premiums or exit considerations;

(3)    Any and all future or additional advances (whether or not obligatory) made by Mortgagee pursuant to the terms of the Building Facility Agreement upon the occurrence and during the continuance of an Event of Default hereunder to protect or preserve the Property, or the lien or security interest created hereby on the Property, or for taxes, assessments or takaful contributions/insurance premiums as hereinafter provided or for performance of any of Mortgagor's Obligations hereunder or under the other Building Facility Documents or for any other purpose provided herein or in the other Building Facility Documents (whether or not the original Mortgagor remains the owner of the Property at the time of such advances), together with Agreed Profit thereon at the Default Profit Rate, to the extent applicable under the Building Facility Agreement; and

(4)    Any and all other indebtedness now owing or which may hereafter be owing by Mortgagor to Mortgagee under the Building Facility Documents, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, substitutions, replacements and extensions thereof.

(All of the sums referred to in Paragraphs (1) through (4) above are herein sometimes referred to as the "**Secured Obligations**".) Notwithstanding anything to the contrary, this Mortgage shall only secure Obligations under the Building Facility Agreement and shall not secure any Obligations under the Project Facility Agreement or relating to the Project Facility.

ANYTHING CONTAINED IN THIS MORTGAGE TO THE CONTRARY NOTWITHSTANDING, THE MAXIMUM AMOUNT OF OBLIGATIONS SECURED BY THIS MORTGAGE AT EXECUTION OR WHICH UNDER ANY CONTINGENCY MAY BECOME SECURED HEREBY AT ANY TIME HEREAFTER IS $162,112,896.16 (THE "PRINCIPAL CAP") PLUS AMOUNT THEREON AND AMOUNTS EXPENDED BY MORTGAGEE PURSUANT TO THE TERMS OF THE BUILDING FACILITY AGREEMENT AFTER A DECLARATION OF AN EVENT OF DEFAULT HEREUNDER TO MAINTAIN THE LIEN OF THIS MORTGAGE OR TO PROTECT THE PROPERTIES SECURED BY THIS MORTGAGE, INCLUDING, WITHOUT LIMITATION, AMOUNTS IN RESPECT OF TAKAFUL CONTRIBUTIONS/INSURANCE PREMIUMS, REAL ESTATE TAXES AND LITIGATION EXPENSES TO PROSECUTE OR DEFEND THE RIGHTS, REMEDIES AND LIEN OF THIS MORTGAGE OR TITLE TO THE PROPERTIES SECURED HEREBY (COLLECTIVELY, AND INCLUDING THE PRINCIPAL CAP, THE "**MAXIMUM AMOUNT**").

TO HAVE AND TO HOLD the above granted and described Property unto Mortgagee, its successors and assigns forever, for the purposes and uses herein set forth;

IN TRUST WITH THE POWER OF SALE, to secure the payment to Mortgagee and the Building Facility Financiers of the Secured Obligations, at the time, and in the manner provided in the Building Facility Documents;

5

PROVIDED, HOWEVER, that if the Obligations and the Agreed Profit and all other sums due or to become due under the Consolidated, Amended and Restated Building Facility Note, including, without limitation, any prepayment fees required pursuant to the terms of the Consolidated, Amended and Restated Building Facility Note, shall have been paid at the time and in the manner stipulated therein and all other sums payable hereunder and all other Secured Obligations shall have been paid and all other covenants contained in the Building Facility Documents shall have been performed, then, in such case, this Mortgage shall be satisfied and the estate, right, title and interest of Mortgagee in the Property shall cease, and upon payment to Mortgagee of all actual costs and actual expenses incurred for the preparation of the release hereinafter referenced and all actual recording costs if allowed by law, Mortgagee shall release this Mortgage and the lien hereof by proper instrument or, if requested by Mortgagor, assign this Mortgage pursuant to Section 3.28 hereof.

## ARTICLE 1

## COVENANTS OF MORTGAGOR

For the purpose of further securing the Secured Obligations and for the protection of the security of this Mortgage, for so long as the Secured Obligations or any part thereof remain unpaid, Mortgagor represents, warrants, covenants and agrees as follows:

1.1    Defense of Title.  If, while this Mortgage is in force, the title to the Property or the interest of Mortgagee therein shall be the subject, directly or indirectly, of any action at law or in equity, or be attacked directly or indirectly, or endangered, clouded or adversely affected in any material manner (other than by Permitted Exceptions), then subject to Mortgagor's contest rights set forth in the Building Facility Agreement, Mortgagor, at Mortgagor's expense, shall take all reasonably necessary and proper steps for the defense of said title or interest, including the employment of counsel reasonably approved by Mortgagee, the prosecution or defense of litigation, and the compromise or discharge of claims made against said title or interest. Notwithstanding the foregoing, after the occurrence and during the continuance of an Event of Default, Mortgagee may, without limiting or waiving any other rights or remedies of Mortgagee hereunder, take such steps with respect thereto as Mortgagee shall reasonably deem necessary or proper.  Any and all actual third-party costs and expenses incurred by Mortgagee in connection therewith, together with profit thereon at the rate chargeable for principal under the Default Profit Rate from the date incurred by Mortgagee until actually paid by Mortgagor, shall be immediately paid by Mortgagor within ten (10) days after demand and shall be secured by this Mortgage and by all of the other Building Facility Documents securing all or any part of the indebtedness evidenced by the Consolidated, Amended and Restated Building Facility Note.

1.2    Performance of Obligations.  Mortgagor shall pay when due the principal of and the profit on the Secured Obligations including all charges, fees and other sums required to be paid by Mortgagor as provided in the Building Facility Documents, and shall observe, perform and discharge all Obligations, and conditions, and comply with all prohibitions, covenants and agreements to be observed, performed or discharged by Mortgagor set forth in the Building Facility Documents in accordance with their respective terms.

6

1.3    Takaful/Insurance.  Mortgagor shall at all times keep the Improvements now existing or hereafter erected on the Land insured against all losses, hazards, casualties, liabilities and contingencies in compliance with Exhibit F of the Building Facility Agreement.

1.4    Payment of Taxes.  Mortgagor shall pay all taxes relating to the recordation of any and all instruments, including this Mortgage, which secures and/or evidences Mortgagor's interest herein.  In addition, Mortgagor shall pay or cause to be paid, except to the extent provision is actually made therefor pursuant to Section 1.5 of this Mortgage, all taxes and assessments which are or, if not timely paid, would become a lien on the Property or which are assessed against or imposed upon the Property, in each case in accordance with Section 13.1(h) of the Building Facility Agreement; provided however, that Mortgagor shall have the right to contest in good faith any such claim or demand in accordance with the Building Facility Agreement.

1.5    Payment of Taxes by Mortgagee.  So long as no Event of Default has occurred and is continuing, Building Facility Financiers shall advance such amounts as are necessary to pay real estate taxes (including special assessments) pursuant to Section 13.1(m) of the Building Facility Agreement; provided, however, Building Facility Financiers shall not be required to make any disbursements to the extent same is not provided for in the Budget.

1.6    Casualty and Condemnation.  Upon the occurrence of any casualty or the commencement of any condemnation proceedings, Mortgagor shall comply with the terms and conditions of Article 14 of the Building Facility Agreement.  Proceeds shall be held, disbursed and applied in accordance with the Building Facility Agreement.

1.7    Mechanics' Liens.  Mortgagor shall pay or cause to be paid when due all claims and demands of mechanics, materialmen, laborers and others for any work performed or materials delivered for the Land or the Improvements that are not Permitted Exceptions as and to the extent required by Sections 13.1(e)-(f) of the Building Facility Agreement; provided, however, that Mortgagor shall have the right to contest in good faith any such claim or demand, post of a bond in accordance with Lien Law Section 19(4), (as amended and in compliance with all other laws) with respect thereto, or procure affirmative title takaful/insurance with respect thereto, all in accordance with Sections 13.1(e)-(f) of the Building Facility Agreement.

1.8    Assignment of Leases and Rents.  As additional and collateral security for the payment of the Secured Obligations and cumulative of any and all rights and remedies herein provided for, Mortgagor hereby absolutely and presently assigns to Mortgagee all existing and future Leases, and all existing and future Rents, it being intended by Mortgagor that this assignment constitutes a present, absolute and unconditional assignment.  Mortgagor hereby grants to Mortgagee the sole, exclusive and immediate right, without taking possession of the Property, to demand, collect (by suit or otherwise), receive and give valid and sufficient receipts for any and all of said Rents, for which purpose Mortgagor does hereby irrevocably make, constitute and appoint Mortgagee its attorney-in-fact with full power to appoint substitutes or a trustee to accomplish such purpose (which power of attorney shall be irrevocable so long as any Secured Indebtedness is outstanding, shall be deemed to be coupled with an interest, shall survive the voluntary or involuntary dissolution of Mortgagor and shall not be affected by any disability or incapacity suffered by Mortgagor subsequent to the date hereof).  Mortgagee shall

7

be without liability for any loss which may arise from a failure or inability to collect Rents, proceeds or other payments, unless caused by Mortgagee's gross negligence or willful misconduct. Notwithstanding the foregoing or anything else contained herein to the contrary, unless an Event of Default exists and is continuing, Mortgagor shall have a revocable license to collect and receive the Rents when due and prepayments thereof for not more than one (1) month prior (except as otherwise permitted under the Building Facility Agreement) to due date thereof, which shall not be revoked prior to the occurrence of an Event of Default. During the continuance of an Event of Default, Mortgagor's license shall automatically terminate without notice to Mortgagor and Mortgagee may thereafter, without taking possession of the Property, collect the Rents itself or by an agent or receiver. To the extent that Mortgagor or anyone by or on behalf of Mortgagor collects or receives any Rents from and after the termination of such license, whether with the consent of Mortgagee or otherwise, all such Rents so collected shall be held in trust by Mortgagor for the sole and exclusive benefit of Mortgagee, and Mortgagor shall, within five (5) Business Days after receipt of any Rents, pay the same to Mortgagee to be applied by Mortgagee as hereinafter set forth. Neither the demand for or collection of Rents by Mortgagee, nor the exercise of Mortgagee's rights as assignee of the Leases, shall constitute any assumption by Mortgagee of any obligations under any Lease or other agreement relating thereto. Mortgagee is obligated to account only for such Rents as are actually collected or received by Mortgagee. Mortgagor irrevocably agrees and consents that the respective payers of the Rents shall, upon demand and notice from Mortgagee of an Event of Default hereunder, pay said Rents to Mortgagee without liability to determine the actual existence of any Event of Default claimed by Mortgagee. Mortgagor hereby waives any right, claim or demand which Mortgagor may now or hereafter have against any such payor by reason of such payment of Rents to Mortgagee, and any such payment shall discharge such payer's obligation to make such payment to Mortgagor. Neither the exercise by Mortgagee of any rights under this Section 1.8 nor the application of any Rents to the Secured Obligations pursuant to this Section 1.8 shall cure or be deemed a waiver of any default or Event of Default hereunder. The assignment of leases and of rents hereinabove granted shall continue in full force and effect during any period of foreclosure or redemption with respect to the Property.

Anything to the contrary set forth herein or elsewhere notwithstanding, (i) the provisions of the Building Facility Agreement shall control over any conflicting provisions of this Section 1.8, (ii) the provisions of the Building Facility Agreement which require that Rents shall be delivered or paid directly to a lockbox or similar cash control mechanism shall take priority over any conflicting provisions herein or elsewhere in the Building Facility Documents, (iii) the provisions of the Building Facility Agreement which specify the order of application of Rents shall take priority over any conflicting provisions in this Section 1.8 or elsewhere in the Building Facility Documents and (iv) to the extent of any conflict between the provisions of this Section 1.8 and any Assignment of Leases and Rents given by Mortgagor in favor of Mortgagee as may be of record from time to time and given to secure substantially the same indebtedness as secured hereby (an "**ALR**"), the terms of such ALR shall control.

1.9    Leases. Mortgagor shall comply with the terms and provisions of Section 13.3 of the Building Facility Agreement with respect to any Leases of the Property or any part thereof.

US_ACTIVE-7971501.15

1.10    <u>Alienation and Further Encumbrances</u>. The sale or other transfer of all or any part of the Property or of interests in Mortgagor or its constituents is restricted in accordance with Section 15.2 of the Building Facility Agreement.

1.11    <u>Payment of Utilities, Assessments, Charges, Etc</u>. Mortgagor shall pay when due all utility charges which are incurred by Mortgagor or which, if not timely paid, would become a lien against any portion of the Property (including without limitation any of the same for gas, electricity, water and sewer services furnished to the Land and/or the Improvements) and all other assessments or charges of a similar nature, or assessments due and payable pursuant to any restrictive covenants, whether public or private, affecting the Land and/or the Improvements or any portion thereof, in each case, in accordance with the Building Facility Agreement; provided however, that Mortgagor shall have the right to contest in good faith any such claim or demand in accordance with the Building Facility Agreement.

1.12    <u>Access Privileges and Inspections</u>. Mortgagee and the agents, representatives and employees of Mortgagee shall, subject to the rights of Tenants, have full and free access to the Land and the Improvements and any other location of Mortgagor where books and records concerning the Property are kept during normal business hours and upon reasonable prior written notice for the purposes of inspecting the Property and of examining, copying and making abstracts from the books and records of Mortgagor relating to the Property, so long as such access shall not materially interfere with the Construction or the conduct of Mortgagor's business, and provided Mortgagee and its agents, representatives and employees maintain the confidentiality of the content of such books and records. Upon request by Mortgagee, Mortgagor shall reasonably cooperate with and provide assistance to all such agents, representatives and employees of Mortgagee. Unless an Event of Default has occurred and is continuing, Mortgagee (i) shall provide advance written notice of at least five (5) Business Days prior to visiting or inspecting the Property or Mortgagor's offices, and (ii) shall not inspect the Property or Mortgagor's offices more frequently than once in any three (3) month period.

1.13    <u>Waste; Alteration of the Property</u>. Mortgagor shall not commit, suffer or permit any waste of the Property nor take any actions that can reasonably be expected to invalidate any takaful/insurance carried on the Property. Mortgagor shall maintain the Property in good condition and repair. Mortgagor shall not remove, demolish or materially alter any part of the Improvements without the prior written consent of Mortgagee, except as in accordance with the Plans and Specifications or as may be otherwise permitted in the Building Facility Agreement.

1.14    <u>Zoning, Compliance with Law and Covenants, Maintenance of Franchises, Use</u>. Without the prior written consent of Mortgagee or as otherwise provided in the Building Facility Agreement, Mortgagor shall (a) not seek, make, suffer, consent to or acquiesce in any change in the zoning or conditions of use of the Land or the Improvements; (b) perform all of its duties and obligations under the Zoning Agreements and shall keep all Zoning Agreements in full force and effect to the extent the failure to do so is reasonably likely to result in a Material Adverse Change; (c) otherwise comply with and make all payments required under the provisions of any covenants, conditions or restrictions affecting the Land or the Improvements in accordance with the Building Facility Agreement; (d) comply with all existing and future requirements of all governmental authorities having jurisdiction over the Property; (e) keep all licenses, permits, franchises, certificates of occupancy, consents, and other approvals necessary for the operation

9

of the Property in full force and effect; (f) build, construct, develop and operate the Property in accordance with the Building Facility Documents; and (g) if, under applicable zoning provisions, the use of all or any part of the Land or the Improvements is or becomes a nonconforming use, not cause or permit such use to be discontinued or abandoned without the prior written consent of Mortgagee in accordance with the Building Facility Agreement. Further, without Mortgagee's prior written consent or as otherwise provided in the Building Facility Agreement, Mortgagor shall not file or subject any part of the Land or the Improvements to any declaration of condominium or cooperative or convert any part of the Land or the Improvements to a condominium, cooperative or other form of multiple ownership and governance.

1.15    Financial Statements, Budgets, Books and Records.    Mortgagor shall keep accurate books and records of account of the Property and its own financial condition sufficient to permit the preparation of financial statements therefrom in accordance with the Building Facility Agreement.  Mortgagee and its duly authorized representatives shall have the right to examine, copy and audit Mortgagor's records and books of account at all reasonable times in accordance with the Building Facility Agreement.

1.16    Further Documentation.    Mortgagor shall, on the request of Mortgagee in its reasonable discretion and at the expense of Mortgagor, promptly correct any defect, error or omission which may be discovered in the contents of this Mortgage or in any of the other Building Facility Documents and promptly execute, acknowledge, deliver and record or file such further instruments (provided such instruments are in a form reasonably acceptable to Mortgagor and Mortgagee) and do such further acts as may be reasonably necessary, desirable or proper to carry out the purposes of this Mortgage and the other Building Facility Documents or as may be deemed advisable by Mortgagee in its reasonable discretion to protect, continue or preserve the liens and security interests hereunder including, without limitation, security instruments, financing statements and continuation statements.

1.17    Advances to Protect Security.  Upon the occurrence and during the continuance of an Event of Default hereunder, Mortgagee may, at its option, with or without notice to Mortgagor, make any appearances, disburse or advance any sums and take any actions as Mortgagee may deem reasonably necessary or desirable to protect Mortgagee's security or to protect this Mortgage or to remedy the failure of Mortgagor to perform its covenants and agreements hereunder.  No exercise of any such rights shall constitute or give rise to a waiver or cure of any default by Mortgagor.  Mortgagor agrees to pay within ten (10) days of written demand all expenses of Mortgagee incurred with respect to the foregoing (including, but not limited to, reasonable third-party fees and disbursements of counsel), together with any charges thereon at the Default Profit Rate from and after the date on which Mortgagee incurs such expenses until reimbursement thereof by Mortgagor.   Any such expenses so incurred by Mortgagee, together with any charges thereon as provided above, shall be additional Obligations of Mortgagor secured by this Mortgage and by all of the other Building Facility Documents securing all or any part of the indebtedness evidenced by the Building Facility Note.  The necessity for any such actions and of the amounts to be paid shall be determined by Mortgagee in its reasonable discretion.  Upon the occurrence of and during the continuance of an Event of Default, Mortgagee shall be empowered to enter and to authorize others to enter upon the Property or any part thereof for the purpose of remedying or responding to such Event of Default.  Mortgagee shall not be liable to Mortgagor or any person in possession holding under

10

Mortgagor by reason of such entry or such action, except in the case of the gross negligence or willful misconduct of Mortgagee or its agents, employees or contractors.  Mortgagor hereby acknowledges and agrees that the remedies set forth in this <u>Section 1.17</u> shall be exercisable by Mortgagee, and any actual payments made or reasonable third-party costs or expenses incurred by Mortgagee in connection therewith shall be secured hereby and shall be repaid by Mortgagor within ten (10) days after written demand therefor with any charges thereon at the Default Profit Rate, notwithstanding the fact that such remedies may be exercised and such payments and costs may be made and incurred by Mortgagee after the filing by Mortgagor of a voluntary case or the filing against Mortgagor of an involuntary case pursuant to the Bankruptcy Code, or after any similar action pursuant to any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable to Mortgagor, Mortgagee, any Guarantor, the Secured Obligations or any of the Building Facility Documents.  Mortgagor's Obligations under this Section shall survive payment in full of the Secured Obligations. This <u>Section 1.17</u> shall not be construed to require Mortgagee to incur any expenses, make any appearances or take any actions.

     1.18   <u>Security Interest</u>.  This Mortgage is also intended to encumber and create a security interest in, and Mortgagor hereby grants to Mortgagee a security interest in, the Accounts and all of Mortgagor's right, title and interest in, to and under any and all fixtures, chattels, accounts, equipment, inventory, contract rights, general intangibles and other personal property included within the Property, all renewals, replacements of any of the aforementioned items, or articles in substitution therefor or in addition thereto or the proceeds thereof (said property is hereinafter referred to collectively as the "**Collateral**"), whether or not the same shall be attached to the Land or the Improvements in any manner.  This grant of a security interest is in addition to and not in derogation of any other grant by Mortgagor to Mortgagee in the Collateral.  It is hereby agreed that to the extent permitted by law, all of the foregoing property is to be deemed and held to be a part of and affixed to the Land and the Improvements. Notwithstanding the foregoing, all of the foregoing property shall be owned by Mortgagor and no leasing or installment sales or other financing or title retention agreement in connection therewith shall be permitted without the prior written approval of Mortgagee, except as any of the foregoing are permitted under the Building Facility Documents.  Mortgagor shall with commercially reasonable diligence replace all of the Collateral subject to the lien or security interest of this Mortgage when worn out or obsolete with Collateral comparable to the worn out or obsolete Collateral when new and will not, without the prior written consent of Mortgagee (such consent not to be unreasonably conditioned, delayed or withheld), remove from the Land or the Improvements any of the Collateral subject to the lien or security interest of this Mortgage, except such as is replaced by an article of substantially equal suitability and value as above provided, owned by Mortgagor free and clear of any lien or security interest except that created by this Mortgage and the other Building Facility Documents and except, in all such cases, as otherwise expressly permitted by the terms of the Building Facility Agreement (including in connection with construction of the Project).  All of the Collateral shall be kept at the location of the Land except as otherwise permitted by the terms of the Building Facility Agreement. Mortgagor shall not use any of the Collateral in violation of any applicable statute, ordinance or takaful plan/insurance policy, in any case in violation of the terms of the Building Facility Agreement.

11

1.19   <u>Security Agreement</u>.  This Mortgage constitutes both a real property mortgage and a "security agreement" between Mortgagor and Mortgagee with respect to the Collateral in which Mortgagee is granted a security interest hereunder, and, cumulative of all other rights and remedies of Mortgagee hereunder, Mortgagee shall have all of the rights and remedies of a secured party under any applicable Uniform Commercial Code.  Mortgagor hereby authorizes Mortgagee to execute and deliver on demand and hereby irrevocably constitutes and appoints Mortgagee the attorney-in-fact of Mortgagor to execute and deliver on demand and, if appropriate, to file with the appropriate filing officer or office such financing statements, continuation statements or other instruments as Mortgagee may reasonably request or reasonably require in order to impose, perfect or continue the perfection of the lien or security interest created hereby.  Mortgagor agrees to furnish Mortgagee with notice of any permitted change in the name, identity, corporate structure, residence, or principal place of business or mailing address of Mortgagor within ten (10) days of the effective date of any such change.  If an Event of Default shall occur and be continuing, then Mortgagee's reasonable third-party expenses of retaking the Collateral and holding, preparing for sale, and selling the same (including, without limitation, Mortgagee's reasonable third-party attorneys' fees and legal expenses), together with any charges thereon at the Default Profit Rate from the date incurred by Mortgagee until actually paid by Mortgagor, shall be paid by Mortgagor on demand and shall be secured by this Mortgage and by all of the other Building Facility Documents securing all or any part of the Obligations evidenced by the Consolidated, Amended and Restated Building Facility Note.  Mortgagor agrees that if notice is required by law, then thirty (30) days' prior written notice of the time and place of any public sale of such property or of the time of or after which any private sale or any other intended disposition thereof is to be made is commercially reasonable and sufficient, provided that such notice is sent to Mortgagor, as the same is provided for the mailing of notices herein.  No such notice is necessary for any such property which is perishable, threatens to decline speedily in value or is of a type customarily sold on a recognized market.  Any sale of Collateral by Mortgagee shall be deemed to have been a public sale conducted in a commercially reasonable manner if held contemporaneously with the judicial or nonjudicial foreclosure sale of the Land and Improvements, conducted with such notice as is required by applicable law for such judicial or nonjudicial foreclosure.  Furthermore, to the extent permitted by law, in conjunction with, in addition to or in substitution for the rights and remedies available to Mortgagee pursuant to any applicable Uniform Commercial Code:

(a)   In the event of a foreclosure sale, the Property may, at the option of Mortgagee, be sold as a whole;

(b)   It shall not be necessary that Mortgagee take possession of the aforementioned Collateral, or any part thereof, prior to the time that any sale pursuant to the provisions of this Section 1.19 is conducted and it shall not be necessary that said Collateral, or any part thereof, be present at the location of such sale; and

(c)   Mortgagee may, in its reasonable discretion, appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Mortgagee, including the sending of notices and the conduct of the sale, but in the name and on behalf of Mortgagee.

1.20    Easements and Rights-of-Way.    Mortgagor shall not grant any easement or right-of-way with respect to all or any portion of the Land or the Improvements without the prior written consent of Mortgagee, which shall not be unreasonably withheld, conditioned or delayed, or as otherwise provided in the Building Facility Agreement.    The purchaser at any foreclosure sale hereunder may, at its discretion, disaffirm any easement or right-of-way granted in violation of any of the provisions of this Mortgage and may take immediate possession of the Property free from, and despite the terms of, such grant of easement or right-of-way.    If Mortgagee consents to the grant of an easement or right-of-way, Mortgagee agrees to grant such consent without charge to Mortgagor other than reasonable third-party expenses, including, without limitation, reasonable attorneys' fees, incurred by Mortgagee in the review of Mortgagor's request and, if applicable, in the preparation of documents relating to the subordination of this Mortgage to such easement or right-of-way.

1.21    Mortgagor's Waivers.    To the full extent permitted by law, Mortgagor agrees that Mortgagor shall not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any appraisement, valuation, stay, moratorium or extension, or any law now or hereafter in force providing for the reinstatement of the Secured Obligations prior to any sale of the Property to be made pursuant to any provisions contained herein or prior to the entering of any decree, judgment or order of any court of competent jurisdiction, or any right under any statute to redeem all or any part of the Property so sold.    To the full extent permitted by law, Mortgagor shall not have or assert any right under any statute or rule of law pertaining to the exemption of homestead or other exemption under any federal, state or local law now or hereafter in effect, the administration of estates of decedents or any other matters whatsoever to defeat, reduce or affect the right of Mortgagee under the terms of this Mortgage to a sale of the Property, for the collection of the Secured Obligations without any prior or different resort for collection, or the right of Mortgagee under the terms of this Mortgage to the payment of the Secured Obligations out of the proceeds of sale of the Property in preference to every other claimant whatever.    Mortgagor, for Mortgagor and Mortgagor's successors and assigns, and for any and all persons ever claiming any interest in the Property, to the full extent permitted by law, hereby knowingly, intentionally and voluntarily with and upon the advice of competent counsel waives, releases, relinquishes and forever forgoes:  (a) all rights of valuation, appraisement, stay of execution, reinstatement and notice of election or intention to mature or declare due the Secured Obligations (except such notices as are specifically provided for herein or in the other Building Facility Documents); (b) all right to a marshalling of the assets of Mortgagor, including the Property, to a sale in the inverse order of alienation, or to direct the order in which any of the Property shall be sold in the event of foreclosure of the liens and security interests hereby created and agrees that any court having jurisdiction to foreclose such liens and security interests may order the Property sold as an entirety; (c) all rights and periods of redemption provided under applicable law; and (d) all present and future statutes of limitations as a defense to any action to enforce the provisions of this Mortgage or to collect any of the Secured Obligations to the fullest extent permitted by law.

1.22    WAIVER OF JURY TRIAL.    EACH OF MORTGAGOR AND MORTGAGEE ACKNOWLEDGES THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED.    EACH OF MORTGAGOR AND MORTGAGEE, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF

13

US_ACTIVE-7971501.15

COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE CONSOLIDATED, AMENDED AND RESTATED BUILDING FACILITY NOTE, THIS MORTGAGE, ANY OF THE OTHER BUILDING FACILITY DOCUMENTS OR THE OBLIGATIONS EVIDENCED AND SECURED HEREBY OR ANY CONDUCT, ACT OR OMISSION IN CONNECTION WITH THE FOREGOING OF MORTGAGEE OR MORTGAGOR, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH MORTGAGEE OR MORTGAGOR, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

ARTICLE 2

REMEDIES

2.1     Remedies Available. If an Event of Default shall occur and be continuing, then Mortgagee shall have all rights and remedies available under law, at equity, and pursuant to the Building Facility Documents. Without limitation, this Mortgage shall be subject to foreclosure as provided by law, and Mortgagee may, at its option and by or through a trustee, nominee, assignee or otherwise, to the fullest extent permitted by law, exercise any or all of the following rights and remedies, either successively or concurrently, after the occurrence and during the continuance of an Event of Default:

(a)     Acceleration. Mortgagee shall have the right to accelerate the Maturity Date of the Consolidated, Amended and Restated Building Facility Note and declare the "**Principal Balance**" (defined hereby as meaning the then unpaid   Obligations on the Consolidated, Amended and Restated Building Facility Note), the accrued Agreed Profit and any other accrued but unpaid portion of the Secured Obligations to be immediately due and payable without any presentment, demand, protest, notice or action of any kind whatever (each of which is hereby expressly waived by Mortgagor), whereupon the same shall become immediately due and payable, time being of the essence in this Mortgage. Upon any such acceleration, payment of such accelerated amount shall constitute a prepayment of the Obligations of the Consolidated, Amended and Restated Building Facility Note and any applicable prepayment fee or consideration provided for in the Consolidated, Amended and Restated Building Facility Note shall then be immediately due and payable.

(b)     Entry on the Property. Mortgagee shall have the right to enter upon and take possession of all or any portion of the Property (which Mortgagee may do in person, by agent or by court-appointed receiver, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of its security), in its own name, without force or with such force as is permitted by law and without notice or process or with such notice or process as is required by law, unless such notice and process is waivable, in which case Mortgagor hereby waives such notice and process, and Mortgagee shall have the right to do any and all acts and perform any and all work which may be reasonably necessary in Mortgagee's reasonable judgment to complete any unfinished construction on the Land to the extent contemplated by and in accordance with the terms of the Performance and Completion

14

Guaranty, to preserve and/or enhance the value, marketability or rentability of the Property, to increase the income therefrom, to manage and operate the Property or to protect the security hereof. All sums expended by Mortgagee therefor, together with profit thereon at the Default Profit Rate, shall be due and payable to Mortgagee by Mortgagor within ten (10) days following written demand and shall be secured hereby and by all of the other Building Facility Documents securing all or any part of the Obligations evidenced by the Consolidated, Amended and Restated Building Facility Note. No such action by Mortgagee shall constitute a cure or a waiver of any default.

(c)    Collect Rents. Mortgagee shall have the right to sue for or otherwise collect the Rents, including those past due and unpaid, and to hold the same as additional security herefor, or to apply the same, less actual costs and actual expenses of operation and collection, including reasonable third-party attorney's fees, upon any Secured Obligation, in the order set forth in Section 2.2 below. Mortgagee may do any of the foregoing with or without taking possession of the Property.

(d)    Appointment of Receiver. Mortgagee shall have the right to make application, ex-parte, to a court of competent jurisdiction for appointment of a receiver for all or any part of the Property, as a matter of strict right and without notice to Mortgagor and without regard to the adequacy of the Property for the repayment of the Secured Obligations or the solvency of Mortgagor or any person or persons liable for the payment of the Secured Obligations. Mortgagor does hereby irrevocably consent to such appointment, waives any and all notices of and defenses to such appointment, and agrees not to oppose any application therefor by Mortgagee. Nothing herein shall deprive Mortgagee of any other right, remedy or privilege Mortgagee may now have under the law or in equity to have a receiver appointed. Further, the appointment of any such receiver, trustee or other appointee by virtue of any court order, statute or regulation shall not impair or in any manner prejudice the rights of Mortgagee to receive payment of the Rents pursuant to other terms and provisions of this Mortgage. Any such receiver shall have all of the usual powers and duties of receivers in similar cases, including, without limitation, the full power to hold, develop, rent, lease, manage, maintain, operate and otherwise use or permit the use of the Property upon such terms and conditions as said receiver may deem to be prudent and reasonable. Such receivership shall, at the option of Mortgagee, continue until full payment of all of the Secured Obligations or until title to the Property shall have passed by foreclosure sale under this Mortgage or deed in lieu of foreclosure.

(e)    Foreclosure. Mortgagee immediately shall have the right to foreclose this Mortgage or to specifically enforce its provisions or any of the Secured Obligations pursuant to the statutes in such case made and provided and sell the Property or cause the Property to be sold in accordance with the requirements and procedures provided by said statutes in a single parcel or in several parcels at the option of Mortgagee. In the event foreclosure proceedings are filed by Mortgagee, all expenses incident to such proceeding, including, but not limited to, reasonable third-party attorneys' fees and costs, shall be paid by Mortgagor and secured by this Mortgage and by all of the other Building Facility Documents securing all or any part of the Obligations evidenced by the Consolidated, Amended and Restated Building Facility Note. The Secured Obligations and all other Obligations secured by this Mortgage, including, without limitation, charges at the Default Profit Rate, any prepayment charge, fee or premium required to be paid under the Consolidated, Amended and Restated Building Facility Note in order to prepay

15

principal (to the extent permitted by applicable law), reasonable third-party attorneys' fees and any other amounts due and unpaid to Mortgagee under the Building Facility Documents, may be bid by Mortgagee in the event of a foreclosure sale hereunder. In the event of a judicial sale pursuant to a foreclosure decree, it is understood and agreed that Mortgagee or its assigns may become the purchaser of the Property or any part thereof.

    (f)    <u>Power of Sale</u>. Mortgagee shall have the right to exercise its power of sale in accordance with applicable law and may foreclose this Mortgage by advertisement pursuant to the statutes in such case made and provided, in addition to all other rights and remedies hereunder.

    (g)    <u>Other</u>. Mortgagee shall have the right to exercise any other right or remedy available hereunder, under any of the other Building Facility Documents, or at law or in equity.

    2.2    <u>Application of Proceeds</u>. To the fullest extent permitted by law and subject to the terms and provisions of the Building Facility Agreement, the proceeds of any sale under this Mortgage shall be applied to the extent funds are so available to the following items in such order as Mortgagee in its discretion may determine:

    (a)    To payment of the actual costs, actual expenses and fees of taking possession of the Property, and of holding, operating, maintaining, using, leasing, repairing, improving, marketing and selling the same and of otherwise enforcing Mortgagee's right and remedies hereunder and under the other Building Facility Documents, including, but not limited to, receivers' fees, court costs, reasonable third-party attorneys', accountants', appraisers', managers', trustee's and other professional fees, title charges and transfer taxes.

    (b)    To payment of all sums expended by Mortgagee under the terms of any of the Building Facility Documents and not yet repaid, together with Agreed Profit on such sums at the Default Profit Rate.

    (c)    To payment of the Secured Obligations and all other Obligations secured by this Mortgage, including, without limitation, charges at the Default Profit Rate and, to the extent permitted by applicable law, any prepayment fee, charge or premium required to be paid under the Consolidated, Amended and Restated Building Facility Note in order to prepay principal, in any order that Mortgagee chooses in its sole discretion.

    (d)    The remainder, if any, of such funds shall be disbursed to Mortgagor or to the person or persons legally entitled thereto.

    2.3    <u>Right and Authority of Receiver or Mortgagee in the Event of Default; Power of Attorney</u>. Upon the occurrence and during the continuance of an Event of Default hereunder, and entry upon the Property or appointment of a receiver in accordance herewith, and under such terms and conditions as may be prudent and reasonable under the circumstances in Mortgagee's or the receiver's reasonable discretion, all at Mortgagor's expense, Mortgagee or said receiver, or such other persons or entities as they shall hire, direct or engage, as the case may be, may, to the fullest extent permitted by law, do or permit one or more of the following, successively or concurrently: (a) enter upon and take possession and control of any and all of the Property;

16

(b) take and maintain possession of all documents, books, records, papers and accounts relating to the Property; (c) exclude Mortgagor and its agents, servants and employees wholly from the Property; (d) manage and operate the Property; (e) preserve and maintain the Property; (f) make repairs and alterations to the Property; (g) subject to the terms of the Building Facility Documents complete any construction or repair of the Improvements; (h) conduct a marketing or leasing program with respect to the Property, or employ a marketing or leasing agent or agents to do so, directed to the leasing or sale of the Property under such terms and conditions as Mortgagee may in its reasonable discretion deem appropriate; (i) employ such contractors, subcontractors, materialmen, architects, engineers, consultants, managers, brokers, marketing agents, or other employees, agents, independent contractors or professionals, as Mortgagee may in its reasonable discretion deem appropriate to implement and effectuate the rights and powers herein granted; (j) execute and deliver, in the name of Mortgagee as attorney-in-fact and agent of Mortgagor or in its own name as Mortgagee, such documents and instruments as are necessary or appropriate to consummate authorized transactions; (k) enter into such leases, whether of real or personal property, or tenancy agreements, under such terms and conditions as Mortgagee may in its reasonable discretion deem appropriate; (l) collect and receive the Rents from the Property; (m) eject Tenants or repossess personal property, as provided by law, for breaches of the conditions of their leases or other agreements; (n) sue for unpaid Rents, accounts, payments, income or proceeds in the name of Mortgagor or Mortgagee; (o) maintain actions in forcible entry and detainer, ejectment for possession and actions in distress for rent; (p) compromise or give acquittance for Rents, accounts, payments, income or proceeds that may become due; (q) delegate or assign any and all rights and powers given to Mortgagee by this Mortgage; and (r) do any acts which Mortgagee in its sole discretion deems appropriate or desirable to protect the security hereof and use such measures, legal or equitable, as Mortgagee may in its sole discretion deem appropriate or desirable to implement and effectuate the provisions of this Mortgage. This Mortgage shall constitute a direction to and full authority to any lessee, or other third party who has heretofore dealt or contracted or may hereafter deal or contract with Mortgagor or Mortgagee, at the request of Mortgagee, to pay all amounts owing under any lease, contract, concession, account, license or other agreement to Mortgagee without proof of the default relied upon. Any such lessee or third party is hereby irrevocably authorized to rely upon and comply with (and shall be fully protected by Mortgagor in so doing) any request, notice or demand by Mortgagee for the payment to Mortgagee of any Rents or other sums which may be or thereafter become due under its lease, contract, account, concession, license or other agreement, or for the performance of any undertakings under any such lease, account, contract, concession, license or other agreement, and shall have no right or duty to inquire whether any default under this Mortgage or under any of the other Building Facility Documents has actually occurred or is then existing. Mortgagor hereby constitutes and appoints Mortgagee, its assignees, successors, transferees and nominees, as Mortgagor's true and lawful attorney-in-fact and agent, with full power of substitution in the Property, in Mortgagor's name, place and stead, to do or permit any one or more of the foregoing described rights, remedies, powers and authorities, successively or concurrently, and said power of attorney shall be deemed a power coupled with an interest and irrevocable so long as any Secured Obligations are outstanding, exercisable upon the occurrence and during the continuance of an Event of Default. Any money advanced by Mortgagee in connection with any action taken under this Section 2.3, together with Agreed Profit thereon at the Default Profit Rate from the date of making such advancement by Mortgagee until actually paid by Mortgagor, shall be a demand Obligation owing by Mortgagor

17

to Mortgagee and shall be secured by this Mortgage and by every other instrument securing the Secured Obligations.

2.4    Notice to Account Debtors.    Mortgagee may, at any time after the occurrence and during the continuance of an Event of Default, notify the account debtors and obligors of any accounts, chattel paper, negotiable instruments or other evidences of indebtedness to Mortgagor included in the Property to pay Mortgagee directly. Mortgagor shall at any time or from time to time upon the request of Mortgagee provide to Mortgagee a current list of all such account debtors and obligors and their addresses.

2.5    Cumulative Remedies.    All remedies contained in this Mortgage are cumulative and Mortgagee shall also have all other remedies provided at law and in equity or in any other Building Facility Documents. Such remedies may be pursued separately, successively or concurrently at the sole subjective direction of Mortgagee and may be exercised in any order and as often as occasion therefor shall arise. No act of Mortgagee shall be construed as an election to proceed under any particular provisions of this Mortgage to the exclusion of any other provision of this Mortgage or as an election of remedies to the exclusion of any other remedy which may then or thereafter be available to Mortgagee. No delay or failure by Mortgagee to exercise any right or remedy under this Mortgage shall be construed to be a waiver of that right or remedy or of any default hereunder. Mortgagee may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

2.6    Payment of Expenses.    Mortgagor shall pay within ten (10) days after demand all of Mortgagee's expenses reasonably incurred in any efforts to enforce any terms of this Mortgage, whether or not any lawsuit is filed and whether or not foreclosure is commenced but not completed, including, but not limited to, reasonable third-party legal fees and disbursements, foreclosure costs and title charges, together with Agreed Profit thereon from and after the date which is ten (10) days after demand until actually paid by Mortgagor at the Default Profit Rate, and the same shall be secured by this Mortgage and by all of the other Building Facility Documents securing all or any part of the indebtedness evidenced by the Consolidated, Amended and Restated Building Facility Note. This provision is in addition to, and not in limitation of, all other provisions of the Building Facility Documents requiring Mortgagor to pay costs, expenses, and attorneys' fees and expenses incurred by Mortgagee.

ARTICLE 3

MISCELLANEOUS TERMS AND CONDITIONS

3.1    Time of Essence.    Time is of the essence with respect to all provisions of this Mortgage.

3.2    Release; Partial Release.    If and when Mortgagor has paid all of the Secured Obligations as the same becomes due and payable, then, and in such event only, subject to the terms of Section 3.28, all rights under this Mortgage shall terminate except for those provisions hereof which by their express terms survive, and the Property shall become wholly clear of the liens, security interests, conveyances and assignments evidenced hereby, which shall be released by Mortgagee in due form at Mortgagor's cost. In addition, subject to the terms and provisions

US_ACTIVE-7971501.15

of Section 5.5 of the Building Facility Agreement (which is hereby incorporated herein by this reference), in connection with the closing of title to a Unit pursuant to an Approved Sale Contract, the lien of this Mortgage shall be released solely with respect to the Unit sold without in any way impairing the lien priority of this Mortgage or improving the lien priority of any other lienholder. Mortgagor shall be responsible for the recordation of any such release or partial release and payment of any recordation costs associated therewith. Alternatively, upon Obligor's written request, Mortgagee will assign this Mortgage pursuant to the terms of Section 3.28 hereof.

3.3     Certain Rights of Mortgagee.   Without affecting Mortgagor's liability for the payment of any of the Secured Obligations, Mortgagee may from time to time: (a) release any person liable for the payment of the Secured Obligations without notice to Mortgagor; (b) extend the terms of payment of the Secured Obligations without notice to Mortgagor; (c) accept additional real or personal property of any kind as security or release any property securing the Secured Obligations; (d) consent in writing to the making of any subdivision map or plat thereof by Mortgagor; (e) join with Mortgagor in granting any easement therein; or (f) join with Mortgagor in any extension agreement of this Mortgage or any agreement subordinating the lien hereof.

3.4     Notices.   All notices under this Mortgage shall be given in accordance with Section 21.24 of the Building Facility Agreement.

3.5     Successors and Assigns.   The terms, provisions, indemnities, covenants and conditions hereof shall be binding upon Mortgagor and the successors and assigns of Mortgagor, including all successors in interest in and to all or any part of the Property, and shall inure to the benefit of Mortgagee, and its successors and permitted assigns and shall constitute covenants running with the land.

3.6     Severability.   A determination that any provision of this Mortgage is unenforceable or invalid shall not affect the enforceability or validity of any other provision.

3.7     General Interpretative Principles.   Within this Mortgage, words of any gender shall be held and construed to include any other gender, and words in the singular shall be held and construed to include the plural, and vice versa, unless the context otherwise requires.

3.8     Waiver; Discontinuance of Proceedings.   Mortgagee may waive any single default by Mortgagor hereunder without waiving any other prior or subsequent default, and may remedy any default by Mortgagor hereunder without waiving the default remedied. Neither the failure or delay by Mortgagee in exercising, any right, power or remedy upon any default by Mortgagor hereunder shall be construed as a waiver of such default or as a waiver of the right to exercise any such right, power or remedy at a later date. No single or partial exercise by Mortgagee of any right, power or remedy hereunder shall exhaust the same or shall preclude any other or further exercise thereof, and every such right, power or remedy hereunder may be exercised at any time and from time to time. No modification or waiver of any provision hereof nor consent to any departure by Mortgagor therefrom shall in any event be effective unless the same shall be in writing and signed by Mortgagee, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose given. No notice to nor demand on Mortgagor

US_ACTIVE-7971501.15

in any case shall of itself entitle Mortgagor to any other or further notice or demand in similar or other circumstances. Acceptance by Mortgagee of any payment in an amount less than the amount then due on any of the Secured Obligations shall be deemed an acceptance on account only and shall not in any way affect the existence of a default hereunder.

3.9     Section Headings. The captions and titles for the various articles, sections, subsections and other provisions of this Mortgage and in the Building Facility Documents are for convenience of reference only, are not to be considered a part hereof and shall not be used in interpreting any provision hereof, nor shall any of them limit or otherwise affect any of the terms hereof.

3.10     Governing Law. This Mortgage and the security interests (including in personal property) created hereunder shall be governed by the laws of the state in which the Property is located. In the event that any provision of this Mortgage or any other Building Facility Document conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the applicable Building Facility Document which can be given effect without the conflicting provisions, and to this end the provisions of this Mortgage and the other Building Facility Documents are declared to be severable.

3.11     Counting of Days. The term "days" when used herein shall mean calendar days. If any time period ends on a day other than a Business Day, the period shall be deemed to end on the next succeeding Business Day.

3.12     Unsecured Portion of Indebtedness. If any part of the Secured Obligations cannot be lawfully secured by this Mortgage or if any part of the Property cannot be lawfully subject to the lien and security interest hereof to the full extent of such indebtedness, then all payments made shall be applied on said Obligations first in discharge of that portion thereof which is unsecured by this Mortgage.

3.13     Event of Default. An "Event of Default" as defined in the Building Facility Agreement shall be an Event of Default hereunder.

3.14     Profit After Sale. In the event the Property or any part thereof shall be sold upon foreclosure as provided hereunder, to the extent permitted by law, the sum for which the same shall have been sold shall, for purposes of redemption (pursuant to the laws of the state in which the Property is located), bear Agreed Profit at the Default Profit Rate.

3.15     Construction of this Document. This document may be construed as a mortgage, security deed, deed of trust, chattel mortgage, conveyance, assignment, security agreement, pledge, financing statement, hypothecation or contract, or any one or more of the foregoing, in order to fully effectuate the liens and security interests created hereby and the purposes and agreements herein set forth.

3.16     No Merger. It is the desire and intention of the parties hereto that this Mortgage and the lien hereof do not merge in fee simple title to the Property.

3.17     Rights With Respect to Junior Encumbrances. Any person or entity purporting to have or to take a junior mortgage or other lien upon the Property or any interest therein shall be

20

subject to the rights of Mortgagee to amend, modify, increase, vary, alter or supplement this Mortgage, the Building Facility Agreement, the Consolidated, Amended and Restated Building Facility Note or any of the other Building Facility Documents and to extend the maturity date of the Secured Obligations and to increase the amount of the Secured Obligations and to waive or forebear from the exercise of any of its rights and remedies hereunder or under any of the other Building Facility Documents and to release any collateral or security for the Secured Obligations, in each and every case without obtaining the consent of the holder of such junior lien and without the lien or security interest of this Mortgage losing its priority over the rights of any such junior lien.

3.18   Mortgagee May File Proofs of Claim.   In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceedings affecting Mortgagor or the principals or general partners of Mortgagor, or their respective creditors or property, Mortgagee, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of Mortgagee allowed in such proceedings for the entire Secured Obligations at the date of the institution of such proceedings and for any additional amount which may become due and payable by Mortgagor hereunder after such date.

3.19   After-Acquired Property.   All property acquired by Mortgagor after the date of this Mortgage which by the terms of this Mortgage shall be subject to the lien and the security interest created hereby, shall immediately upon the acquisition thereof by Mortgagor and without further mortgage, conveyance or assignment become subject to the lien and security interest created by this Mortgage.

3.20   No Representation.   By accepting delivery of any item required to be observed, performed or fulfilled or to be given to Mortgagee pursuant to the Building Facility Documents, including, but not limited to, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or takaful plan/insurance policy, Mortgagee shall not be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, and such acceptance of delivery thereof shall not be or constitute any warranty, consent or affirmation with respect thereto by Mortgagee.

3.21   Counterparts.   This Mortgage may be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page.

3.22   Personal Liability.   Notwithstanding anything to the contrary contained in this Mortgage, the liability of Mortgagor for the Secured Obligations and for performance of the other agreements, covenants and Obligations contained herein and in the Building Facility Documents shall be limited as set forth in Section 21.21 of the Building Facility Agreement; provided, however that nothing shall herein be deemed a waiver of any right which Mortgagee may have under Sections 506(a), 506(b), 1111(b) or any other provisions of the U.S. Bankruptcy Code to file a claim for the full amount of the Secured Obligations or to require that the Property shall continue to secure all Obligations owing to Mortgagee in accordance with the Consolidated,

US_ACTIVE-7971501.15

Amended and Restated Building Facility Note, this Mortgage and the other Building Facility Documents.

3.23    Recording and Filing. Mortgagor will cause the Building Facility Documents and all amendments and supplements thereto and substitutions therefor to be recorded, filed, re-recorded and re-filed in such manner and in such places as Mortgagee shall reasonably request, and will pay on demand all such recording, filing, re-recording and re-filing taxes, fees and other charges. Mortgagor shall reimburse Mortgagee, or its servicing agent, for the costs incurred in obtaining a tax service company to verify the status of payment of taxes and assessments on the Property.

3.24    Entire Agreement and Modifications. This Mortgage and the other Building Facility Documents contain the entire agreements between the parties and supersede any prior agreements (oral or written), and may not be amended, revised, waived, discharged, released or terminated orally but only by a written instrument or instruments executed by the party against which enforcement of the amendment, revision, waiver, discharge, release or termination is asserted.

3.25    Application of Default Profit Rate Not a Waiver. Application of the Default Profit Rate shall not be deemed to constitute a waiver of any default or any rights or remedies of Mortgagee under this Mortgage, any other Building Facility Document or applicable legal requirements, or a consent to any extension of time for the payment or performance of any Obligation with respect to which the Default Profit Rate may be invoked.

3.26    Relationship of the Parties. The relationship between Mortgagor and Mortgagee is that of a Mortgagor and a Mortgagee only and neither of those parties is, nor shall it hold itself out to be, the agent, employee, joint venturer or partner of the other party.

3.27    Fixture Filing. Pursuant to the New York Uniform Commercial Code, as amended and recodified from time to time, this Mortgage shall be effective from the date of its recording as a financing statement filed as a fixture filing with respect to all goods constituting part of the Property which are or are to become fixtures. This Mortgage shall also be effective as a financing statement covering minerals or the like (including oil and gas) and is to be filed for record in the Real Estate Records of the county where the Property is situated. For this purpose, Mortgagor shall be deemed the "Debtor" and Mortgagee shall be deemed the "Secured Party" and the mailing addresses of Mortgagor and Mortgagee from which information concerning the security interests may be obtained are set forth in the first paragraph of this Mortgage. Some or all of the Collateral may be or become a fixture in which Mortgagee has a security interest under the security agreement set forth above (the "**Security Agreement**"), and the purpose of this section is to create a fixture filing under any applicable provisions of the New York Uniform Commercial Code, as amended or recodified from time to time. The rights, remedies and interests of Mortgagee under the Security Agreement and under the other provisions of this Mortgage are independent and cumulative, and there shall be no merger of any security interest created by the security agreement with any lien created under the other provisions of this Mortgage. Mortgagee may elect to exercise or enforce any of its rights, remedies, or interests under either or both the Security Agreement and the other provisions of this Mortgage as Mortgagee may from time to time deem appropriate.

3.28  <u>Assignment of Mortgage</u>. At the written request of Mortgagor, upon payment of the Obligations in full, Mortgagee hereby agrees to assign the Consolidated, Amended and Restated Building Facility Note and this Mortgage to such Persons as may be designated by Mortgagor. Mortgagor agrees to pay to Mortgagee any actual out of pocket legal costs and expenses incurred by Mortgagee in connection with the preparation and delivery of such assignment. In addition, upon the partial prepayment of the Obligations in accordance with Section 5.7 of the Building Facility Agreement, Mortgagee, shall, at the request of Mortgagor, sever this Mortgage and the Consolidated, Amended and Restated Building Facility Note such that (i) the portion of the Property which is being conveyed is encumbered by a severed mortgage in an amount equal to the applicable release price required under Section 5.7 of the Building Facility Agreement, (ii) the Obligations applicable to such portion of the Property is evidenced by a severed note in an amount equal to the applicable release price required under Section 5.7 of the Building Facility Agreement and (iii) Mortgagee shall assign such severed note and mortgage to such Persons as may be designated by Mortgagor. Mortgagee agrees to execute a form of assignment provided by Mortgagor to Mortgagee which shall (i) be acceptable to Mortgagee in its reasonable discretion, (ii) comply with applicable law, and (iii) contain no representations or warranties by Mortgagee, except Mortgagee shall warrant (A) as to the outstanding principal balance of the Consolidated, Amended and Restated Building Facility Note, (B) that the assignment has been duly authorized and (C) that Mortgagee has not encumbered or assigned the Consolidated, Amended and Restated Building Facility Note, this Mortgage or the other Building Facility Documents.

ARTICLE 4

**STATE SPECIFIC PROVISIONS FOR NEW YORK**

4.1  <u>Certain Matters Relating to Property Located in the State of New York</u>. With respect to the Property which is located in the State of New York, notwithstanding anything contained herein to the contrary:

(a)  Mortgagor represents that this Mortgage does encumber property principally improved or to be improved by one or more structures containing in the aggregate more than six (6) residential dwelling units.

(b)  Pursuant to Section 13 of the lien law of New York, Mortgagor shall receive the advances secured hereby and shall hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of any improvement and shall apply such advances first to the payment of the cost of any such improvements on the Property before using any part of the total of the same for any other purpose.

(c)  Mortgagee shall have all of the rights against lessees of the Property as set forth in Section 291(f) of the Real Property Law of New York.

(d)  The provisions of subsection 4 of Section 254 of the New York Real Property Law covering the takaful/insurance of buildings against loss by fire and the application of Takaful/Insurance Proceeds shall not apply to this Mortgage.

23

US_ACTIVE-7971501.15

(e)    With regards to the transfer or sale of the Property:

(i)    In the event of any sale or transfer of the Property, or any part thereof, including any sale or transfer by reason of foreclosure of this Mortgage or by deed in lieu of any such foreclosure, Mortgagor shall timely and duly complete, execute and deliver to Mortgagee all forms and supporting documentation required by any taxing authority to estimate and fix any tax payable by reason of such sale or transfer or recording of the deed evidencing such sale or transfer, including, without limitation, any New York State Real Estate Transfer Tax payable pursuant to Article 31 of the New York Tax Law (individually, a **"Transfer Tax"** and collectively, the **"Transfer Taxes"**).

(ii)    Mortgagor shall pay the Transfer Taxes that may hereafter become due and payable with respect to any sale or transfer of the Property described in this Section 4.1, and in default of such payment, Mortgagee may pay the same and the amount of such payment shall be added to the Obligations secured hereby and, unless incurred in connection with a foreclosure of this Mortgage or deed in lieu of such foreclosure, shall be secured by this Mortgage.

(iii)    Mortgagor hereby irrevocably constitutes and appoints Mortgagee as its attorney-in-fact, coupled with an interest, to prepare and deliver any questionnaire, statement, affidavit or tax return in connection with any Transfer Tax applicable to any foreclosure or deed in lieu of foreclosure described in this Section 4.1.

(iv)    Mortgagor shall indemnify and hold harmless Mortgagee against (A) any and all liability actually incurred by Mortgagee for the payment of any Transfer Tax with respect to any transfer of the Property by reason of foreclosure, and (B) any and all reasonable third-party expenses incurred by Mortgagee in connection therewith including, without limitation, penalties and reasonable attorneys' fees.

(v)    The Obligation to pay the Transfer Taxes and indemnify Mortgagee under this Section 4.1(c) is an Obligation of Mortgagor, and shall be binding upon and enforceable against the successors and assigns of Mortgagor with the same force and effect as though each of them had executed and delivered this Mortgage.

(vi)    In the event that Mortgagor fails or refuses to pay a tax payable by Mortgagor with respect to a sale or transfer by reason of a foreclosure of this Mortgage in accordance with this Section 4.1, the amount of the tax, any penalty applicable thereto and any other amount payable pursuant to Mortgagor's Obligation to indemnify Mortgagee under this Section 4.1 may, at the sole option of Mortgagee, be paid as an expense of the sale out of the proceeds of the mortgage foreclosure sale.

(vii)    The provisions of this Section shall survive any transfer and the delivery of the deed affecting such transfer. Nothing in this Section shall be deemed to grant to Mortgagor any greater rights to sell, assign or otherwise transfer the Property than are expressly provided in the Building Facility Agreement nor to deprive Mortgagee of any right to refuse to consent to any transaction referred to in the Building Facility Agreement.

(viii)    This Mortgage is intended to be, and shall operate as, the agreement described in Section 291-f of the Real Property Law of the State of New York and Mortgagee shall be entitled to the benefits afforded thereby. Mortgagor shall (a) deliver the written notices described in said Section 291-f to all present and future holders of any interest in any lease, by assignment or otherwise, including therein a direction that, in the event that any Mortgagor notifies such tenant of a default under this Mortgage, such tenant pay its rents and all other sums due under the relevant lease to Mortgagee, and (b) take such other action, as may now or hereafter be reasonably required to afford Mortgagee the full protections and benefits of said Section 291-f.

(f)    The clauses and covenants contained in this Mortgage that are construed by Section 254 of the New York Real Property Law shall be construed as provided in those sections. The additional clauses and covenants contained in this Mortgage shall afford rights supplemental to and not exclusive of the rights conferred by the clauses and covenants construed by Section 254 and shall not impair, modify, alter or defeat such rights, notwithstanding that such additional clauses and covenants may relate to the same subject matter or provide for different or additional rights in the same or similar contingencies as the clauses and covenants construed by Section 254. The right of Mortgagee arising under the clauses and covenants contained in this Mortgage shall be separate, distinct and cumulative and none of them shall be in exclusion of the others. No act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision, anything herein or otherwise to the contrary notwithstanding. In the event of any inconsistencies between the provisions of Section 254 and the provisions of this Mortgage, the provisions of this Mortgage shall prevail.

(g)    If an Event of Default exists and is continuing, Mortgagee may, at Mortgagee's election, either with or without entry or taking possession of the Property as provided herein or otherwise, personally or by its agents or attorneys, and without prejudice to the right to bring an action for foreclosure of this Mortgage sell the Property or any part thereof pursuant to any procedures provided by applicable law, including, without limitation, the procedures set forth in Article 14 of the New York Real Property Actions and Proceedings Law (and any amendments or substitute statutes in regard thereto), and all estate, right, title, interest, claim and demand therein, and right of redemption thereof, at one or more sales as an entity or in parcels, and at such time and place upon such terms and after such notice thereof as may be required or permitted by applicable law.

[SIGNATURE FOLLOWS ON NEXT PAGE]

25

IN WITNESS WHEREOF, Mortgagor, intending to be legally bound hereby, has duly executed this Mortgage as of the day and year first above written.

**MORTGAGOR**:

**PARK PLACE DEVELOPMENT PRIMARY LLC**, a Delaware limited liability company

By:_____

Name: Sherif El-Gamal

Title: President

[Signatures continue on the following page]

**ADMINISTRATIVE AGENT**:

**MALAYAN BANKING BERHAD, NEW YORK
BRANCH,** a corporation organized under the laws
of Malaysia

By:_____  26 APRIL 2016
    Name: Shahida Mohd Jaffar Sadiq Maricar
    Title: General Manager

## ACKNOWLEDGMENTS

STATE OF _New York_ }

}  ss

COUNTY OF _New York_ }

     On _April  26_, 2016, before me, _Chooi San Phon_, personally appeared _Shanil-E- Grawal_, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity(ies) upon behalf of which the person(s) acted, executed the instrument.

     Witness my hand and official seal.                         [SEAL]

PHON CHOOI SAN
Notary Public, State of New York
No. 01PH6117535
Qualified in New York County
Commission Expires October 25, 20 16

[SEAL]

## ACKNOWLEDGMENTS

STATE OF New York      }
                       } ss
COUNTY OF New York     }

On April 26, 2016, before me, JOYCE YEE , personally
appeared Shahida Motto Jaffar Sadiq Mavis personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity(ies) upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.                    [SEAL]

JOYCE YEE
Notary Public, State of New York
No. 31-4942014
Qualified in New York County
Commission Expires 09|12|2018

## SCHEDULE I

## ORIGINAL MORTGAGE

MORTGAGE made by PARK PLACE PARTNERS DEVELOPMENT LLC to 45-51 PARK PLACE LLC in the amount of $33,000,000 dated July 30, 2014, recorded September 25, 2014 at CRFN 2014000318521. (Mortgage Tax Paid: $924,000.00).
which above mortgage has been assigned by Assignment of mortgage to Malayan Banking Berhad, New York Branch dated 4/28/16 to be recorded simultaneously herewith.

## EXHIBIT A

### LEGAL DESCRIPTION

LOT 8

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of Park Place distant 114 feet 4 inches easterly from the corner formed by the intersection of the said northerly side of Park Place with the easterly side of West Broadway;

RUNNING THENCE northerly at right angles with the northerly side of Park Place 59 feet 11 and 3/8 inches to a point;

THENCE easterly at right angles with the last described course 31 feet 6 inches to a point;

THENCE northerly at right angles with the last described course 30 feet 2 and 5/8 inches to a point;

THENCE easterly at right angles with the last described course 63 feet 0 and 3/8 inches to a point;

THENCE southerly along a line forming an angle on its westerly side with the last described course of 89 degrees 46 minutes 17 seconds, 90 feet 2 inches to the northerly side of Park Place;

THENCE westerly along the northerly side of Park Place, 94 feet 2 inches to the point or place of BEGINNING.

TOGETHER with rights, benefits and easements contained in the Zoning Lot Development and Easement Agreement to be recorded.

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2016060700646011003SB1AA

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID: 2016060700646011**    Document Date: 05-17-2016        Preparation Date: 06-08-2016
Document Type: MORTGAGE AND CONSOLIDATION

---

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

  255 MORTGAGE TAX EXEMPT AFFIDAVIT                                5

8 22371

## AFFIDAVIT PURSUANT TO
## SECTION 255 OF THE TAX LAW
(Consolidated, Amended and Restated Building Facility Mortgage,
Security Agreement and Assignment of Leases and Rents)

STATE OF NEW YORK      )
                               ) ss.:
COUNTY OF NEW YORK   )

Sharif El-Gamal, being duly sworn, deposes and says:

1.      That I am an Authorized Representative of Park Place Development Primary LLC, a Delaware limited liability company ("**Mortgagor**"), the owner of the fee interest in certain premises commonly known as 43 Park Place in the City, County and State of New York, and more particularly described in Exhibit A attached hereto and made a part hereof (the "**Property**"). I am familiar with the facts and circumstances set forth herein.

2.      That 45-51 Park Place LLC, a Delaware limited liability company (the "**Mortgagee**"), is the owner and holder of the mortgage listed on Exhibit B attached hereto and incorporated herein by this reference (the "**Original Mortgage**"). All mortgage recording taxes due in connection with the Original Mortgage was paid at the time such Original Mortgage are recorded pursuant to Section 255 of the Tax Law, in the amounts of $924,000.00 as shown on Exhibit B.

3.      That, simultaneously herewith, the Mortgagor has executed in favor of the Malayan Banking Berhad, New York Branch, a bank organized under the laws of Malaysia ("**New Mortgagee**") a certain Consolidated, Amended and Restated Building Facility Mortgage, Security Agreement and Assignment of Leases and Rents ("**Amended Mortgage**") which secures indebtedness of $162,112,896.16, of which $129,112,896.16 is new indebtedness and $33,000,000.00 is the same principal indebtedness outstanding under and secured by the Original Mortgage. Mortgage tax in the amount of $3,615,161.21 is tendered herewith in connection with the new indebtedness secured by the Amended Mortgage.

WHEREFORE, your deponent respectfully requests that the Amended Mortgage be recorded and that the mortgage tax paid with respect to the Original Mortgage be deducted from the amount of mortgage tax payable on the Amended Mortgage pursuant to the provisions of Section 255 of Article 11 of the Tax Law of the State of New York.

Dated this 26th day of April , 2016

**PARK PLACE DEVELOPMENT PRIMARY LLC**, a Delaware limited liability company

By:_____
    Name: Sharif El-Gamal
    Title: President

# ACKNOWLEDGMENT

STATE OF ___New York___ }

} ss

COUNTY OF ___New York___ }


On ___April___, 2016, before me, ___Chooi San Phon___, personally
appeared ___Svant El-Gamal___, personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity(ies) upon behalf of which the person(s) acted, executed the instrument.


Witness my hand and official seal.                    [SEAL]

PHON CHOOI SAN
Notary Public, State of New York
No. 01PH6117535
Qualified in New York County
Commission Expires October 25, 2016

# EXHIBIT A

## Legal Description

LOT 8

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of Park Place distant 114 feet 4 inches easterly from the corner formed by the intersection of the said northerly side of Park Place with the easterly side of West Broadway;

RUNNING THENCE northerly at right angles with the northerly side of Park Place 59 feet 11 and 3/8 inches to a point;

THENCE easterly at right angles with the last described course 31 feet 6 inches to a point;

THENCE northerly at right angles with the last described course 30 feet 2 and 5/8 inches to a point;

THENCE easterly at right angles with the last described course 63 feet 0 and 3/8 inches to a point;

THENCE southerly along a line forming an angle on its westerly side with the last described course of 89 degrees 46 minutes 17 seconds, 90 feet 2 inches to the northerly side of Park Place;

THENCE westerly along the northerly side of Park Place, 94 feet 2 inches to the point or place of BEGINNING.

TOGETHER with rights, benefits and easements contained in the Zoning Lot Development and Easement Agreement to be recorded.

**EXHIBIT B**

**ORIGINAL MORTGAGE**

MORTGAGE made by PARK PLACE PARTNERS DEVELOPMENT LLC to 45-51 PARK PLACE LLC in the amount of $33,000,000 dated July 30, 2014, recorded September 25, 2014 at CRFN 2014000318521. (Mortgage Tax Paid: $924,000.00).

which above mortgage has been assigned by Assignment of mortgage to Malayan Banking Berhad, New York Branch dated 4/28/16 to be recorded simultaneously herewith

# EXHIBIT 81

## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2016060700646015001EDFDB

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 7 |
|---|---|

| | | |
|---|---|---|
| **Document ID: 2016060700646015** | Document Date: 06-08-2016 | Preparation Date: 06-08-2016 |
| Document Type: INITIAL UCC1 | | FIXTURE FILING |
| Document Page Count: 6 | | |

**PRESENTER:**
KENSINGTON VANGUARD
39 WEST 37TH ST TITLE NO. 822371(S-NY-CR-KV)A
HOLD/ PICKUP SEARCH NY
NEW YORK, NY 10018
212-532-8686
chrisc@KVNATIONAL.COM

**RETURN TO:**
REED SMITH LLP
599 LEXINGTON AVENUE
G. HEFNER
NEW YORK, NY 10022

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 126 | 8 | Entire Lot | 43 PARK PLACE |

**Property Type:** NON-RESIDENTIAL VACANT LAND

### CROSS REFERENCE DATA

CRFN_____ _or_ DocumentID_____ _or_ _____Year_____ Reel____ Page_____ _or_ File Number_____

### PARTIES

**DEBTOR:**
PARK PLACE DEVELOPMENT PRIMARY LLC
31 WEST 27TH STREET, 9TH FLOOR
NEW YORK, NY 10001

**SECURED PARTY:**
MALAYAN BANKING BERHAD, NEW YORK BRANCH
400 PARK AVENUE
NEW YORK, NY 10022

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 40.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed       06-23-2016 12:36
City Register File No.(CRFN):
**2016000211382**

_Annette M Hill_

***City Register Official Signature***

822371 ·14

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Reed Smith LLP
599 Lexington Avenue
New York, NY  10022
G. Hefner

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| **Park Place Development Primary LLC, a Delaware limited liability company** | | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| **31 West 27th Street, 9th Floor** | **New York** | **NY** | **10001** | | **USA** |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Individual Debtor's name; if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| **Malayan Banking Berhad, New York Branch** | | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| **400 Park Avenue** | **New York** | **NY** | **10022** | | **USA** |

4. COLLATERAL: This financing statement covers the following collateral:

**See Attached Schedule A and Schedule B**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | | | 6b. Check only if applicable and check only one box: | |
|---|---|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**Malayan-Soho-Building Facility-NY County**

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)      International Association of Commercial Administrators (IACA)

## UCC FINANCING STATEMENT **ADDENDUM**
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor did not fit, check here ☐

| | |
|---|---|
| **9a. ORGANIZATION'S NAME** | |
| **Park Place Development Primary LLC, a** | |
| **Delaware limited liability company** | |
| OR | **9b. INDIVIDUAL'S SURNAME** |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only <u>one</u> additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| | | | | |
|---|---|---|---|---|
| **10a. ORGANIZATION'S NAME** | | | | |
| OR  **10b. INDIVIDUAL'S SURNAME** | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| **10c. MAILING ADDRESS** | CITY | STATE | POSTAL CODE | COUNTRY |

**11.** ☐ **ADDITIONAL SECURED PARTY'S NAME**  or  ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only <u>one</u> name (11a or 11b)

| | | | |
|---|---|---|---|
| **11a. ORGANIZATION'S NAME** | | | |
| OR  **11b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| **11c. MAILING ADDRESS** | CITY | STATE  POSTAL CODE | COUNTRY |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**

| | |
|---|---|
| **13.** ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable) | **14.** This FINANCING STATEMENT:  ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing |
| **15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | **16.** Description of real estate:  **See Attached Schedule B**  B-126  L-8 |

**17. MISCELLANEOUS:**

International Association of Commercial Administrators (IACA)
FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

**SCHEDULE A**
COLLATERAL DESCRIPTION

All of Mortgagor's estate, right, title and interest in, to and under any and all of the following described property, whether now owned or hereafter acquired (collectively, the **"Property"**, provided, however, the Property shall not include Units which have been released from the lien of the Building Facility Documents in accordance with the Building Facility Agreement):

    (A)    All that certain real property situated in the City, County and State of New York, more particularly described on <u>Schedule B</u> attached hereto and incorporated herein by this reference, together with all of the easements, rights, privileges, franchises, development rights, air rights, tenements, hereditaments and appurtenances now or hereafter thereunto belonging or in any way appertaining and all of the estate, right, title, interest, claim and demand whatsoever of Mortgagor therein or thereto, either at law or in equity, in possession or in expectancy, now or hereafter acquired (collectively, the **"Land"**);

    (B)    All structures, buildings and improvements of every kind and description now or at any time hereafter located or placed on the Land (the **"Improvements"**);

    (C)    All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, tenements, hereditaments and appurtenances, reversions and remainders whatsoever, in any way belonging, relating or appertaining to the Property or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Mortgagor;

    (D)    All furniture, furnishings, fixtures, goods, equipment, inventory or personal property owned by Mortgagor and now or hereafter located on, attached to or used in or about the Improvements (**"Fixtures"**), including, but not limited to, all machines, engines, boilers, dynamos, elevators, stokers, tanks, cabinets, awnings, screens, shades, blinds, carpets, draperies, lawn mowers, and all appliances, plumbing, heating, air conditioning, lighting, ventilating, refrigerating, disposal and incinerating equipment, and all fixtures and appurtenances thereto, and such other goods and chattels and personal property owned by Mortgagor as are now or hereafter used or furnished in operating the Improvements, or the activities conducted therein, and all building materials and equipment hereafter situated on or about the Land or Improvements, and all warranties and guaranties relating thereto, and all additions thereto and substitutions and replacements therefor, exclusive of any of the foregoing Fixtures owned or leased by tenants of space in the Improvements (**"Tenants"**);

(E)    All water, water courses, ditches, wells, reservoirs and drains and all water, ditch, well, reservoir and drainage rights and powers which are appurtenant to, located on, under or above or used in connection with the Land or the Improvements, or any part thereof, together (i) with all utilities, utility lines, utility commitments, utility capacity, capital recovery charges, impact fees and other fees paid in connection with same, (ii) reimbursements or other rights pertaining to utility or utility services provided to the Land and/or Improvements and (iii) the present or future use or availability of waste water capacity, or other utility facilities to the extent same pertain to or benefit the Land and/or Improvements, including, without limitation, all reservations of or commitments or letters covering any such use in the future, whether now existing or hereafter created or acquired;

(F)    All minerals, crops, timber, trees, shrubs, flowers and landscaping features now or hereafter located on, under or above the Land;

(G)    All cash funds, deposit accounts and other rights and evidence of rights to cash, now or hereafter created or held by Mortgagee pursuant to this Mortgage or any other of the Building Facility Documents, including, without limitation, all funds now or hereafter on deposit in any Reserve Account (the "**Accounts**");

(H)    All leases, licenses, tenancies, concessions and occupancy agreements pertaining to all or any portion of the Land or the Improvements now or hereafter entered into by Mortgagor (the "**Leases**") and all rents, royalties, issues, s, revenue, income, accounts receivable and other benefits (collectively, the "**Rents**") of the Land, the Improvements, or the fixtures or equipment, now or hereafter arising from the use or enjoyment of all or any portion thereof or from any Lease or other agreement pertaining thereto or arising from any of the Contracts (as hereinafter defined) or any of the General Intangibles (as hereinafter defined) and all cash, letters of credit, securities and other things of value (the "**Security Deposits**") to the extent lawfully assignable that secure performance by the Tenants, lessees or licensees, as applicable, of their obligations under any such Leases, or which may be available to Mortgagor or its designee to effect repairs or maintenance, whether said cash or other security is to be held until the expiration of the terms of said Leases or applied to one or more of the installments of rent coming due prior to the expiration of said terms;

(I)    All contracts and agreements now or hereafter entered into covering any part of the Land or the Improvements, including but not limited to, any and all construction contracts now or hereafter in effect with respect to the Property (collectively, the "**Contracts**"), and all revenue, income and other benefits thereof, including, without limitation, management agreements, service contracts, maintenance contracts, equipment leases, personal property leases and any contracts or documents relating to construction on any part of the Land or the Improvements (including plans, specifications, studies, drawings, surveys, tests, operating and other reports, bonds and governmental approvals) or to the management or operation of any part of the Land or the Improvements, in each case, to the extent assignable under law and pursuant to the terms of such Contracts;

US_ACTIVE-124242702 1 04/27/2016 2:42 PM

(J)    All present and future monetary deposits given to any public or private utility with respect to utility services furnished to any part of the Land or the Improvements;

(K)    All present and future funds, accounts, instruments, accounts receivable, documents, causes of action, claims, general intangibles (including, without limitation, trademarks, trade names, service marks and symbols now or hereafter used in connection with any part of the Land or the Improvements, all names by which the Land or the Improvements may be operated or known, all rights to carry on business under such names, and all rights, interest and privileges which Mortgagor has or may have as developer or declarant under any covenants, restrictions or declarations now or hereafter relating to the Land or the Improvements) and all notes or chattel paper now or hereafter arising from or by virtue of any transactions related to the Land or the Improvements (collectively, the "**General Intangibles**"), in each case to the extent lawfully assignable;

(L)    All water taps, sewer taps, certificates of occupancy, permits, special permits, uses, licenses, franchises, certificates, consents, approvals and other rights and privileges now or hereafter obtained in connection with the Land or the Improvements and all present and future warranties and guaranties relating to the Improvements or to any equipment, fixtures, furniture, furnishings, personal property or components of any of the foregoing now or hereafter located or installed on the Land or the Improvements, in each case to the extent lawfully assignable;

(M)    All building materials, supplies and equipment now or hereafter placed on the Land or in the Improvements and all architectural renderings, models, drawings, plans, specifications, studies and data now or hereafter relating to the Land or the Improvements;

(N)    All right, title and interest of Mortgagor in any insurance policies or binders now or hereafter relating to the Property including any unearned premiums thereon;

(O)    All proceeds, products, substitutions and accessions (including claims and demands therefor) of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including, without limitation, proceeds of insurance and condemnation awards; and

All other or greater rights and interests of every nature in the Land or the Improvements and in the possession or use thereof and income therefrom, whether now owned or hereafter acquired by Mortgagor.

**EXHIBIT A**

**Legal Description**

LOT 8

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of Park Place distant 114 feet 4 inches easterly from the corner formed by the intersection of the said northerly side of Park Place with the easterly side of West Broadway;

RUNNING THENCE northerly at right angles with the northerly side of Park Place 59 feet 11 and 3/8 inches to a point;

THENCE easterly at right angles with the last described course 31 feet 6 inches to a point;

THENCE northerly at right angles with the last described course 30 feet 2 and 5/8 inches to a point;

THENCE easterly at right angles with the last described course 63 feet 0 and 3/8 inches to a point;

THENCE southerly along a line forming an angle on its westerly side with the last described course of 89 degrees 46 minutes 17 seconds, 90 feet 2 inches to the northerly side of Park Place;

THENCE westerly along the northerly side of Park Place, 94 feet 2 inches to the point or place of BEGINNING.

TOGETHER with rights, benefits and easements contained in the Zoning Lot Development and Easement Agreement to be recorded.