# EXHIBIT D

Declaration of Matthew Parrott

EXECUTION VERSION

**PROJECT FACILITY AGREEMENT**

in the amount of

**$11,887,103.84**

MADE BY AND AMONG

**MALAYAN BANKING BERHAD, NEW YORK BRANCH,**
as administrative agent,

**MALAYAN BANKING BERHAD, NEW YORK BRANCH**
and
**WARBA BANK K.S.C.P.,**
as co-lead arrangers and joint bookrunners,

**INTESA SANPAOLO S.P.A., NEW YORK BRANCH**,
as documentation agent,

**MALAYAN BANKING BERHAD, LONDON BRANCH,**
**INTESA SANPAOLO S.P.A., NEW YORK BRANCH,**
**WARBA BANK K.S.C.P.,**
**45 PARK PLACE INVESTMENTS, LLC**
and other financiers that are from time to time signatories hereto,
as financiers,

and

**PARK PLACE DEVELOPMENT PRIMARY LLC,**
as obligor,

|  |  |
|---|---|
| Project: | Block 126, Lot 8 |
| Effective: | as of April 26, 2016 |

US_ACTIVE-123852865

# TABLE OF CONTENTS

**Page**

ARTICLE 1 INCORPORATION OF RECITALS AND EXHIBITS ........................................ 2
    1.1   Incorporation of Recitals ............................................................................ 2
    1.2   Incorporation of Exhibits and Schedules .................................................... 2

ARTICLE 2 DEFINITIONS ........................................................................................... 2
    2.1   Defined Terms ........................................................................................... 2
    2.2   Commitment .............................................................................................. 2
    2.3   Other Definitional Provisions ..................................................................... 2

ARTICLE 3 OBLIGOR'S REPRESENTATIONS AND WARRANTIES ................................. 2

ARTICLE 4  REVOLVING PURCHASE FACILITY .......................................................... 3

ARTICLE 5 TERMS OF FACILITY AND DOCUMENTS ................................................... 3
    5.1   Agreement to Finance ................................................................................ 3
    5.2   Facility Documents .................................................................................... 4
    5.3   Intentionally Deleted .................................................................................. 5
    5.4   Term of the Facility ................................................................................... 5
    5.5   Partial Releases ........................................................................................ 5
    5.6   Application of Prepayments Pursuant to this 0 .............................................. 6
    5.7   Satisfaction or Assignment of Mortgage to Purchasers ................................. 6

ARTICLE 6 PROFIT, COMMITMENT FEE AND PRINCIPAL ........................................... 6

ARTICLE 7 FACILITY AND ADMINISTRATION EXPENSES AND ADVANCES AND
               SECURITY FOR SAME ............................................................................. 6
    7.1   Facility and Administration Expenses ......................................................... 6
    7.2   Administrative Fee ..................................................................................... 7
    7.3   Time of Payment of Fees ............................................................................ 7
    7.4   Expenses and Advances Secured by Facility Documents ............................... 7
    7.5   Disbursements in Excess of Amount of Note ................................................ 8
    7.6   Right to Make Advances or Disbursements to Cure Obligor's Defaults ........... 8

ARTICLE 8 BUDGET AND CONTINGENCY LINE ITEMS ................................................ 8
    8.1   Budget ...................................................................................................... 8
    8.2   Budget Line Items ..................................................................................... 8
    8.3   Contingency Line Item .............................................................................. 8

ARTICLE 9 SUFFICIENCY OF LOAN .......................................................................... 9
    9.1   Balancing .................................................................................................. 9
    9.2   Reallocation of Budget Line Items ............................................................ 10

i

US_ACTIVE-123852865

Page

ARTICLE 10 REQUIREMENTS PRECEDENT TO THE FIRST ADVANCE FOR
CONSTRUCTION...............................................................................10

ARTICLE 11 CONSTRUCTION PAYOUT REQUIREMENTS WITH RESPECT TO ALL
DISBURSEMENTS OF FACILITY PROCEEDS..............................11

ARTICLE 12 OBLIGOR'S OBLIGATIONS FOR THE FINAL ADVANCE OF FACILITY
PROCEEDS ..........................................................................................11

ARTICLE 13 OBLIGOR'S AGREEMENTS ................................................................11

ARTICLE 14 CASUALTY AND CONDEMNATION ..................................................11

ARTICLE 15 ASSIGNMENTS; FINANCIERS' RIGHT TO ASSIGN.........................11

ARTICLE 16 EVENTS OF DEFAULT ........................................................................12

ARTICLE 17 FINANCIER'S REMEDIES IN EVENT OF DEFAULT ........................12

ARTICLE 18 CONDOMINIUM PROVISIONS ...........................................................12

ARTICLE 19 CASH ACCOUNTS PLEDGE,  ASSIGNMENT AND SECURITY
AGREEMENT ......................................................................................12

ARTICLE 20 ADMINISTRATIVE AGENT ................................................................12

ARTICLE 21 GENERAL PROVISIONS ......................................................................12

ARTICLE 22 COOPERATION AMONGST THE PARTIES.......................................13

EXHIBITS

Exhibit A          Legal Description
Exhibit B          Commitment Amounts of Financiers

US_ACTIVE-123852865

# PROJECT FACILITY AGREEMENT

**THIS PROJECT FACILITY AGREEMENT** (as may be modified, amended, restated or supplemented from time to time, this "**Agreement**") is made as of April 26, 2016 (the "**Closing Date**"), by and among **MALAYAN BANKING BERHAD, NEW YORK BRANCH,** a corporation organized under the laws of Malaysia, having an address at 400 Park Avenue, New York, New York 10022, as administrative agent (together with any successors appointed pursuant to this Agreement, "**Administrative Agent**") **PARK PLACE DEVELOPMENT PRIMARY LLC**, a Delaware limited liability company, having a principal place of business at c/o Soho Properties, 31 West 27th Street, 9th Floor, New York, NY 10001 ("**Obligor**"), **MALAYAN BANKING BERHAD, LONDON BRANCH** and the financiers that are, from time to time, party hereto, together with their successors and permitted assigns, collectively, "**Project Facility Financiers**", and each a "**Project Facility Financier**").

## W I T N E S S E T H:

**WHEREAS,** Obligor is the owner and holder of a fee interest in certain real property and development rights more particularly described on <u>Exhibit A</u>, which exhibit is attached hereto and made a part hereof, commonly known as 43 Park Place, City of New York, County of New York, State of New York, (the "**Real Property**");

**WHEREAS,** Obligor proposes to construct on the Real Property a building, comprised of approximately 111,933 saleable square feet of residential space containing fifty (50) residential condominium units (collectively, the "**Residential Units**" and each, a "**Residential Unit**"), approximately 1,129 square feet containing retail condominium units (collectively, the "**Retail Units**" and each, a "**Retail Unit**"), and 413 square feet of storage space containing approximately 19 storage units (collectively, the "**Storage Units**" and each, a "**Storage Unit**");

**WHEREAS,** Obligor has requested that Financiers provide a project facility of up to ELEVEN MILLION EIGHT HUNDRED EIGHTY-SEVEN THOUSAND ONE HUNDRED THREE DOLLARS 84/100 ($11,887,103.84) (the "**Project Facility**") to finance certain costs associated with the "**Project**" (as such term is hereinafter defined) other than Costs of Improvements (as such term is hereinafter defined), which Project Facility is to be made and disbursed pursuant to this Agreement;

**WHEREAS,** Obligor has requested that Financiers provide a building facility of up to ONE HUNDRED SIXTY-TWO MILLION ONE HUNDRED TWELVE THOUSAND EIGHT HUNDRED NINETY-SIX DOLLARS AND 16/100 ($162,112,896.16) (the "**Building Facility**") to finance the Costs of Improvements, which Building Facility is to be made pursuant to that certain Building Facility Agreement, dated as of the Closing Date, by and among Administrative Agent, Building Facility Financiers and Obligor (as such term is hereinafter defined) which, from time to time, are parties thereto (as the same may be modified, amended or supplemented from time to time, the "**Building Facility Agreement**"); and

**WHEREAS,** Project Facility Financiers are willing to make the Project Facility on the terms and conditions set forth in this Agreement, the proceeds of which will be disbursed as more specifically set forth herein.

1

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements herein contained, the parties hereto agree as follows:

## ARTICLE 1

## INCORPORATION OF RECITALS AND EXHIBITS

1.1     <u>Incorporation of Recitals</u>. The foregoing preamble and recitals and all other preambles and recitals set forth herein and in the Project Mortgage are made a part of this Agreement.

1.2     <u>Incorporation of Exhibits and Schedules</u>. The Exhibits and Schedules attached hereto are incorporated herein and expressly made a part hereof by this reference.

## ARTICLE 2

## DEFINITIONS

2.1     <u>Defined Terms</u>. All terms utilized and not defined herein shall have the meaning ascribed to such term in the Building Facility Agreement.

2.2     <u>Commitment</u>.  The term "Commitment" as defined in the Building Facility Agreement refers to and incorporates Exhibit B, attached hereto and made a part hereof.

2.3     <u>Other Definitional Provisions</u>. All of the Exhibits attached to this Agreement are incorporated in and made a part of this Agreement, but in the event of any conflict or inconsistency between the provisions of this Agreement and the Exhibits, the provisions of this Agreement shall control. As used in this Agreement: (a) the word "including" is not limiting, (b) references to a law include any rule or regulation issued under the law and any amendment to the law, rule or regulation, (c) whenever the words "include", "includes", or "including" appear, they shall be deemed to be followed by the words "without limitation", (d) personal pronouns shall be deemed to include the other genders and the singular to include the plural, and (e) all Article and Section references shall, unless otherwise expressly stated, be deemed references to the Articles and Sections of this Agreement. Wherever a period of time is stated in this Agreement as commencing or ending on specified dates, unless otherwise specified, such period of time shall be deemed (i) inclusive of such stated commencement and ending dates, and (ii) to commence at 12:00 A.M. Eastern Time on such stated commencement date and to end at 11:59 P.M. Eastern Time on such stated ending date. The captions used in this Agreement are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this Agreement nor the intent of any provision hereof.

## ARTICLE 3

## OBLIGOR'S REPRESENTATIONS AND WARRANTIES

<u>Article 3</u> of the Building Facility Agreement and the terms and conditions thereof are hereby incorporated into this Agreement by reference, *mutatis mutandis,* with the same force and effect as if fully set forth herein.

2

ARTICLE 4

REVOLVING PURCHASE FACILITY

Article 4 of the Building Facility Agreement and the terms and conditions thereof are hereby incorporated into this Agreement by reference, *mutatis mutandis*, with the same force and effect as if fully set forth herein.

ARTICLE 5

TERMS OF FACILITY AND DOCUMENTS

5.1    Agreement to Finance.

(a)    Subject to the terms, provisions and conditions of this Agreement and the other Project Facility Documents, Financiers agree to provide a finance facility to Obligor for the purposes and subject to all of the terms, provisions and conditions contained in this Agreement. Each Financier severally (and not jointly and severally) agrees to fund its Percentage Interest of each disbursement of Project Facility proceeds up to the amount of its Commitment. No Financier shall be obligated to make a disbursement of Project Facility proceeds which another Financier has failed to fund or to finance Obligor more than the amount of its Commitment.

(b)    Financiers agree, upon Obligor's compliance with and satisfaction of all conditions precedent to the opening of the Project Facility and provided (i) the Facility is In Balance, and (ii) no Event of Default has occurred and is continuing hereunder, to open the Project Facility to reimburse Obligor for a portion of the costs incurred by Obligor in connection with the development of the Project and the Construction, to the extent provided for in the Project Facility Budget.

(c)    Subsequent to the First Transaction Date, Obligor shall be entitled to enter into successive Transactions in accordance with Article 10, Article 11 and Article 12 within fifteen (15) Business Days after compliance with all conditions precedent thereto, provided that (i) the Facility remains In Balance; (ii) Obligor has complied with all conditions precedent to Transaction  from time to time including the requirements of Article 10, Article 11 and Article 12; and (iii) no Event of Default has occurred and is continuing hereunder or under any other Facility Document. If at any time the Facility is not In Balance, Administrative Agent and Financiers shall not be required to make any disbursements from any Reserve Accounts or enter into any Increase Transaction under the Facility.

(d)    To the extent that Financiers or Administrative Agent may have acquiesced in Obligor's noncompliance with any conditions (construction or non-construction) precedent to any disbursement of Facility proceeds such acquiescence shall not constitute a waiver by Financiers or Administrative Agent unless otherwise provided in writing by Administrative Agent, and Financiers or Administrative Agent may at any time after such acquiescence require Obligor to comply with all such conditions with respect to future Draw Requests.

3

5.2    <u>Facility Documents</u>.  Obligor agrees that it will, on or before the Closing Date, unless provided otherwise for, execute and deliver or cause to be executed and delivered to Administrative Agent for the benefit of Financiers the following Facility Documents in form, substance and execution acceptable to Administrative Agent:

(a)    Project Facility Note;

(b)    Project Facility Mortgage;

(c)    Performance and Completion Guaranty;

(d)    Intentionally Deleted;

(e)    Non-Recourse Carveout Guaranty;

(f)    Omnibus Forms Agreement;

(g)    An assignment of Obligor's right, title and interest in all construction documents, including the General Contract, and all assignable permits, licenses, approvals and development rights, architectural and engineering documents, including all contracts with Design Professionals (including, without limitation, all architectural and engineering contracts), all Plans and Specifications and any studies, tests or design materials relating to the Project, performance bonds and letters of credit in favor of governmental entities with jurisdiction over the Project, all as the same as may be amended, supplemented, restated or otherwise modified from time to time, and in any miscellaneous contracts, including development, maintenance, development and/or construction management, leasing and service contracts, together with all consents of General Contractor all Major Subcontractors, the Required Design Professionals;

(h)    The following documents relating to the Condominium in accordance with this Agreement: (A) conditional assignments of Obligor's or the declarant's (if the declarant under the applicable Condominium Documents is other than Obligor) rights under the Condominium Documents, (B) to the extent not expressly prohibited by any Legal Requirements or the Condominium Documents, conditional resignations of the officers and members of the Board to the extent who have been appointed or elected by Obligor or any Affiliate of Obligor, and (C) to the fullest extent permitted by Applicable Law, irrevocable proxies in form and substance reasonably acceptable to Administrative Agent, executed in blank, enabling Administrative Agent in its sole discretion after the occurrence and during the continuance of an Event of Default to exercise the votes held by Obligor in any condominium association relating to the Project;

(i)    Such UCC financing statements as Administrative Agent's (or Financier's) counsel determines are advisable or necessary to perfect or notify third parties of the security interests intended to be created by the Project Facility Documents;

(j)    Upon formation of the Condominium, a Consent and Agreement of Escrow Agent, executed by Condominium Escrow Agent in favor of Administrative Agent, in the form attached to the Omnibus Forms Agreement, pursuant to which Condominium Escrow

4

Agent agrees to act in accordance with Administrative Agent's instructions with respect to disbursement of any funds being held by Condominium Escrow Agent under the Sale Contracts;

(k)    Such other papers, instructions, documents, instruments or certificates as Title Company may reasonably require for the issuance of the Title Policies;

(l)    Intentionally Deleted;

(m)    Intentionally Deleted;

(n)    All Facility Documents required to be delivered on the Closing Date in connection with the Project Facility;

(o)    Intentionally Deleted; and

(p)    Such other papers, instructions, documents, opinion, instruments or certificates as Administrative Agent (or Financiers) and its counsel may require, including such documents as Administrative Agent in its reasonable discretion deems necessary or appropriate to effectuate the terms and conditions of this Agreement and the Facility Documents, and to comply with the laws of the State of New York.

5.3    <u>Intentionally Deleted</u>.

5.4    <u>Term of the Facility</u>.    An extension of the Building Facility shall be deemed to be effectuate an extension of the Project Facility for the Extension Period.

5.5    <u>Partial Releases</u>.    (a) Administrative Agent shall, from time to time, release Units from the lien of the Mortgages (a "**Release**") upon satisfaction of the following conditions precedent: (a) Obligor shall have fully complied with the provisions of <u>Section 18.2(a)</u> and <u>Section 18.2(b)</u> of the Building Facility Agreement; (b) Administrative Agent shall have received not less than five (5) days' prior written notice of the proposed Release; (c) contemporaneously with such Release, there shall be a sale of a Unit pursuant to a Sale Contract or Option Agreement; (d) Administrative Agent, or its designee as set forth herein, shall have received all of the following with respect to each Unit which is the subject of a Release:

(i)    the Sale Contract or Option Agreement for such Unit, certified by Obligor to be a true and complete statement of the terms of sale with respect thereto;

(ii)    subject to <u>Section 5.5(d)(vi)</u> below, the Release Payment for such Unit shall be paid by bank or certified check or wire transfer at the Closing for application as set forth in <u>Section 5.6</u> of the Building Facility Agreement;

(iii)    subject to <u>Section 5.5(d)(vi)</u> below, payment of all actual out-of-pocket costs and expenses, including reasonable attorney's fees, incurred by Administrative Agent in connection with such Release;

(iv)    a copy of the temporary or permanent certificate of occupancy for the applicable Unit;

5

(v)      such other documents, certificates, or assurances as Administrative Agent may reasonably request, including, without limitation, affirmative insurance endorsement to the Title Policy and a copy of the closing statement with respect to the Unit which is the subject of the Release; and

(vi)      with respect to the items in <u>Section 5.5(ii)</u> and <u>Section 5.5(iii)</u> above, such items shall be delivered to Title Company at the time of the relevant Closing and shall be a condition to Title Company delivering the applicable release of lien for the subject Unit.

(b)      At Obligor's request, Administrative Agent shall release the Not for Profit Lot from the liens of the Mortgages without payment of any fee, other than Administrative Agent's reasonable counsel fees associated with the review and execution of the release documents.

5.6      <u>Application of Prepayments Pursuant to this Article 5</u>. On the first Profit Payment Date occurring subsequent to a Closing, Administrative Agent may apply any prepayments made to either the Building Facility or the Project Facility as it deems appropriate.

5.7      <u>Satisfaction or Assignment of Mortgage to Purchasers</u>. At Obligor's request, Administrative Agent shall sever a Mortgage and provide an assignment of mortgage to a Contract Vendee at the time of the Closing of a Unit pursuant to <u>Section 5.5</u> above.

ARTICLE 6

PROFIT, COMMITMENT FEE AND PRINCIPAL

<u>Article 6</u> of the Building Facility Agreement and the terms and conditions thereof are hereby incorporated into this Agreement by reference, *mutatis mutandis*, with the same force and effect as if fully set forth herein.

ARTICLE 7

FACILITY AND ADMINISTRATION EXPENSES AND
ADVANCES AND SECURITY FOR SAME

7.1      <u>Facility and Administration Expenses</u>. Obligor unconditionally agrees to pay all reasonable third-party expenses of Financiers and Administrative Agent in connection with (i) the preparation, negotiation and execution of this Agreement and of the other Facility (excluding the costs of Facility Servicers) Documents, the review of any underlying title documents, Leases, estoppel certificates, subordination, non-disturbance and attornment agreements, and any preparation of the closing binders, (ii) the disbursement and administration of the Facility, (iii) consultation regarding, review of and the enforcement of the terms of this Agreement and the other Facility Documents**,** and (iv) the enforcement of the terms of this Agreement and the other Facility Documents; (v) all third-party expenses of Administrative Agent in connection with Draw Requests and the administration of the Facility, together with all amounts payable pursuant to <u>Sections 7.2</u>, <u>7.3</u> and <u>13.1(n)</u> of the Building Facility Agreement (but subject to the limitations set forth therein) and any and all other fees owing to

6

Administrative Agent or to Financiers pursuant to the Building Facility Documents, and also including, without limiting the generality of the foregoing, all recording, filing and registration fees and charges, mortgage recording taxes, title takaful contributions/insurance premiums for the Title Policies and other reasonable charges of Title Company (including, without limitation, all charges, if any, incurred in connection with Date Down Endorsements), photocopying expenses, survey fees and charges for surveys obtained by Obligor prior to the First Transaction Date and at the completion of Construction, cost of certified copies of instruments, reasonable charges of Title Company or other escrowee for administering disbursements, all reasonable fees and disbursements of Financiers' Consultant, reasonable costs of the Environmental Report, reasonable fees of Appraiser for the Appraisals obtained pursuant to Section 13.1(ff) of the Building Facility Agreement and during the continuance of an Event of Default, reasonable takaful/insurance consultant's fees. Without limiting the foregoing, Obligor shall reimburse Administrative Agent and Financiers upon request for reasonable third-party costs associated with providing and administering the Facility, including all costs of: (i) monitoring construction, (ii) engineering services, (iii) reasonable costs of real estate tax services, and (iv) appraisal fees for any Appraisals obtained in accordance with the provisions of this Agreement. All of the foregoing expenses, charges, costs and fees shall be Obligor's obligation regardless of whether the Facility is disbursed in whole or in part including as set forth in Section 13.1(tt) of the Building Facility Agreement.

       7.2    Administrative Fee.  Obligor agrees to pay Administrative Agent, for its own account, an administrative fee (the "**Administrative Fee**") of $15,000 per month, payable on the First Transaction Date and on each Profit Payment Date thereafter until satisfaction of all outstanding and non-contingent Obligations. The Administrative Fee shall be earned when due and shall be non-refundable once paid. Notwithstanding the foregoing, if Obligor has paid the Administrative Fee pursuant to the Building Facility Agreement, no Administrative Fee shall be payable hereunder.

       7.3    Time of Payment of Fees.  Obligor shall pay all expenses and fees on the First Transaction Date and at such time or times thereafter as Administrative Agent may require upon not less than ten (10) Business Days' written notice. On the First Transaction Date, Administrative Agent may pay from the proceeds of the Facility all outstanding invoiced and reasonable Facility expenses required to be paid by Obligor pursuant to the Facility Documents, including Administrative Agent's and Financiers' attorneys' and Financiers' Consultant's fees and disbursements. Financiers are hereby authorized, without any specific request or direction by Obligor, to make advances from time to time in payment of or to reimburse Financiers and Administrative Agent for all Facility expenses and fees not paid in accordance with the terms hereof (whether or not at such time there may be any undisbursed amounts of the Facility allocated in the Budget to the items set forth in this Article 7), provided such disbursement does not cause the amount of the Facility allocated to the Costs of Improvements set forth in the Section 22 Lien Law Affidavit to be reduced and shall be otherwise in accordance with the Lien Law.  Notwithstanding the foregoing, fees payable pursuant to this Agreement shall not be duplicative of fees paid pursuant to the Building Facility Agreement.

       7.4    Expenses and Advances Secured by Facility Documents. Any and all advances or payments made by Administrative Agent or Financiers hereunder, from time to time, together with Financiers' Consultant's fees and all other Facility expenses shall, as and when

US_ACTIVE-123852865

advanced or incurred, constitute additional indebtedness evidenced by the Note and secured by the Project Facility Mortgage and the other Project Facility Documents, whether or not the aggregate of all indebtedness shall thereafter exceed the aggregate face amount of the Note.

7.5     Disbursements in Excess of Amount of Note.  In the event that any disbursement of Facility proceeds or payments made by Administrative Agent or any Financier pursuant to the terms of this Agreement, together with any other disbursements of the proceeds of the Facility made in accordance with this Agreement exceed the aggregate face amount of the Note, such additional disbursements shall constitute additional indebtedness evidenced by the Note and secured by the Project Facility Mortgage and the other Facility Documents.

7.6     Right to Make Advances or Disbursements to Cure Obligor's Defaults. In the event that Obligor fails to perform any of Obligor's covenants or agreements herein contained and such failure constitutes an Event of Default hereunder (except in the event of an emergency or other exigent circumstances), Administrative Agent or any Financier may (but shall not be required to) perform any of such covenants and agreements, and any reasonable amounts expended by Administrative Agent or any Financier in so doing shall constitute additional indebtedness evidenced by the Note and secured by the Project Facility Mortgages and the other Facility Documents.

ARTICLE 8

BUDGET AND CONTINGENCY LINE ITEMS

8.1     Budget.  As a condition precedent to the opening of the Facility, Obligor shall provide to Administrative Agent (a) the Building Facility Budget and (b) the Project Facility Budget. Each of the Building Facility Budget and the Project Facility Budget, taken together, shall specify the amount of cash equity invested or to be invested in the Project, which, in the aggregate, shall be not less than Obligor's Equity Contribution.  The Project Facility Budget shall include, the Project Facility Contingency Line Item described in Section 8.3 below. The initial Project Facility Budget as of the Closing Date is attached to the Obligor's Certificate. Subject to the terms hereof, all changes to the Project Facility Budget shall in all respects be subject to the prior reasonable written approval of Administrative Agent.

8.2     Budget Line Items.  Obligor agrees that all advances by Financiers shall be used only for the Budget Line Items for which such Project Facility proceeds were advanced. Subject to the terms hereof, Financiers shall not be obligated to make any Advance for any category of costs set forth as a Budget Line Item which is greater than the amount set forth for such category in the applicable Budget Line Item as may be modified pursuant to the Building Facility Agreement.

8.3     Contingency Line Item. The Building Facility Budget shall contain a Line Item for the Building Facility Contingency Line Item and the Project Facility Budget shall contain a Budget Line Item for the Project Facility Contingency Line Item, both of which represent amounts necessary to provide reasonable assurances to Administrative Agent that additional funds are available to be used as provided herein and in the Building Facility Agreement in the event additional costs, expenses and/or delays are incurred or additional costs

8

accrue on the Facility, or unanticipated events or problems occur in which case Obligor may relocate funds to the applicable Line Item pursuant to Article 8 hereof. No profit shall accrue upon the Project Facility Contingency Line Item until advancement thereof , whereupon such Advance shall be deemed to be an Advance of the proceeds of the Facility. Subject to Obligor's rights to reallocate the Project Facility Contingency Line Item pursuant to Article 8 hereof, Obligor agrees that it may be required to make a Project Facility Deficiency Deposit even if funds remain in the Project Facility Contingency Line Item. Under no circumstances shall any portion of any Building Facility Contingency Line Item be reallocated to the Project Facility or used for an item which does not constitute a Cost of Improvements. Obligor may reallocate excess amounts from the Project Facility Contingency Line Item (or any other Project Facility Budget Line Items) to the Building Facility so long as same is accompanied by any and all necessary affidavits, amendments and takaful/title insurance as reasonably required and approved by Administrative Agent, Title Company or Applicable Law. Notwithstanding anything to the contrary set forth in the Facility Documents, so long as no Event of Default exists, Obligor,  without consent of Administrative Agent, shall be permitted to reallocate (i) the Building Facility Contingency Line Item to other Building Facility Budget Line Items in an aggregate amount equal to the percentage of the completion of the items set forth in the Building Facility Budget to date times the original amount provided for in the Building Facility Budget Contingency Line Item and (ii) the Project Facility Contingency Line Item to the Building Facility Budget Line Items or other Project Facility Budget Line Items in an aggregate amount equal to the percentage of the completion of the items set forth in the Project Facility Budget to date times the original amount provided for in the Project Facility Budget Contingency Line Item.

ARTICLE 9

SUFFICIENCY OF FACILITY

9.1     Balancing.

(a)     Anything in this Agreement to the contrary notwithstanding, it is expressly understood and agreed that in Administrative Agent's reasonable discretion, the Project Facility shall at all times be In Balance, on an aggregate basis. The Project Facility shall be deemed to be "**In Balance**" in the aggregate only when the total of the undisbursed portion of the Project Facility plus any amounts in the Project Facility Deficiency and that portion of the Project Facility Line Item with respect to Costs set forth in the Project Facility Budget which does not exceed the then percentage of the Construction completed equals or exceeds the aggregate of (without duplication) all Costs set forth in the Project Facility Budget in all instances, related to the Improvements, not yet paid for in connection with the Project, including, without limitation taxes and insurance, as may reasonably be estimated and/or approved in writing by Administrative Agent from time to time.

(b)     Subject to allocation and reallocation rights pursuant to Article 8 and Section 9.2 below, Obligor agrees that if for any reason, in Administrative Agent's reasonable judgment, the Project Facility or any Project Facility Budget Line Item is not In Balance, Obligor shall, within ten (10) Business Days after written request by Administrative Agent, deposit the amount of any deficiency or a Letter of Credit with Administrative Agent

9

("**Project Facility Deficiency Deposit**"). So long as no Event of Default exists and is continuing, any Project Facility Deficiency Deposit shall be held by Administrative Agent in the Project Facility Deficiency Account. The amounts on deposit in the Project Facility Deficiency Account shall be disbursed in accordance with the provisions pertaining to advances herein, as applicable and shall first be exhausted before any further disbursement of Project Facility proceeds shall be made and Financiers shall not be obligated to make any advances if and for as long as the Project Facility is not In Balance. Profit costs above those amounts set forth in the Project Facility Budget, funded into the Project Facility Deficiency Account, shall be funded out-of-pocket by Obligor and/or Guarantor at such time as that item is not In Balance. Regardless of whether the Profit Allocation is or is not In Balance, Obligor shall apply all available leasing cash flow from the Project, if any, to pay profit on the Facility before requesting a draw of additional Project Facility proceeds. Financiers will have no obligation to make an Advance so long as the Facility is not In Balance on an aggregate basis.

9.2    Reallocation of Budget Line Items. Upon Administrative Agent's reasonable confirmation and in consultation with Financiers' Consultant that (a) all work relating to a particular Budget Line Item in the Project Facility Budget has been completed and fully paid for (or in the event all such work has not been completed and fully paid for, Administrative Agent has reviewed as applicable, any relevant documentation with respect to such Budget Line Item, including change orders with respect to such work, (b) with respect to any such work which has been completed, all lien releases applicable thereto have been received, and (c) the total cost of such work (or work to be completed as set forth in (a) above) was (or is reasonably expected to be) less than the amount allocated for the work in such Budget Line Item, Obligor shall be permitted to shift the savings achieved by Obligor in such Budget Line Item other than profit to another Project Facility Budget Line Item or Building Facility Line Item. Administrative Agent shall, in its reasonable discretion, at the request of Obligor, or as otherwise provided in Section 8.3, permit Obligor to allocate a portion of the Project Facility Budget Contingency Line Item to another Project Facility Budget Line Item or Building Facility Budget Line Item; *provided*, *however*, that in no event shall a reduction be made in the Budget Line Item in the Project Facility Budget for profit. The Budget may also be modified by Obligor pursuant to 12.1(c)(ii) of the Building Facility Agreement.

ARTICLE 10

REQUIREMENTS PRECEDENT
TO THE FIRST ADVANCE FOR CONSTRUCTION

Article 10 of the Building Facility Agreement and the terms and conditions thereof are hereby incorporated into this Agreement by reference, *mutatis* *mutandis*, with the same force and effect as if fully set forth herein.

US_ACTIVE-123852865

## ARTICLE 11

### CONSTRUCTION PAYOUT REQUIREMENTS WITH RESPECT TO
### ALL DISBURSEMENTS OF FACILITY PROCEEDS

Other than <u>Section 11.2</u> of the Building Facility Agreement, <u>Article 11</u> of the Building Facility Agreement and the terms and conditions thereof are hereby incorporated into this Agreement by reference, *mutatis mutandis*, with the same force and effect as if fully set forth herein.

## ARTICLE 12

### OBLIGOR'S OBLIGATIONS FOR THE
### FINAL ADVANCE OF FACILITY PROCEEDS

<u>Article 12</u> of the Building Facility Agreement and the terms and conditions thereof are hereby incorporated into this Agreement by reference, *mutatis mutandis*, with the same force and effect as if fully set forth herein.

## ARTICLE 13

### OBLIGOR'S AGREEMENTS

<u>Article 13</u> of the Building Facility Agreement and the terms and conditions thereof are hereby incorporated into this Agreement by reference, *mutatis mutandis*, with the same force and effect as if fully set forth herein.

## ARTICLE 14

### CASUALTY AND CONDEMNATION

<u>Article 14</u> of the Building Facility Agreement and the terms and conditions thereof are hereby incorporated into this Agreement by reference, *mutatis mutandis*, with the same force and effect as if fully set forth herein.

## ARTICLE 15

### ASSIGNMENTS; FINANCIERS' RIGHT TO ASSIGN

<u>Article 15</u> of the Building Facility Agreement and the terms and conditions thereof are hereby incorporated into this Agreement by reference, *mutatis mutandis*, with the same force and effect as if fully set forth herein.

US_ACTIVE-123852865

ARTICLE 16

EVENTS OF DEFAULT

Article 16 of the Building Facility Agreement and the terms and conditions thereof are hereby incorporated into this Agreement by reference, *mutatis mutandis*, with the same force and effect as if fully set forth herein.

ARTICLE 17

FINANCIER'S REMEDIES IN EVENT OF DEFAULT

Article 17 of the Building Facility Agreement and the terms and conditions thereof are hereby incorporated into this Agreement by reference, *mutatis mutandis*, with the same force and effect as if fully set forth herein.

ARTICLE 18

CONDOMINIUM PROVISIONS

Article 18 of the Building Facility Agreement and the terms and conditions thereof are hereby incorporated into this Agreement by reference, *mutatis mutandis*, with the same force and effect as if fully set forth herein.

ARTICLE 19

CASH ACCOUNTS PLEDGE,
ASSIGNMENT AND SECURITY AGREEMENT

Article 19 of the Building Facility Agreement and the terms and conditions thereof are hereby incorporated into this Agreement by reference, *mutatis mutandis*, with the same force and effect as if fully set forth herein.

ARTICLE 20

ADMINISTRATIVE AGENT

Article 20 of the Building Facility Agreement and the terms and conditions thereof are hereby incorporated into this Agreement by reference, *mutatis mutandis*, with the same force and effect as if fully set forth herein.

ARTICLE 21

GENERAL PROVISIONS

Article 21 of the Building Facility Agreement and the terms and conditions thereof are hereby incorporated into this Agreement by reference, *mutatis mutandis*, with the same force and effect as if fully set forth herein.

12

ARTICLE 22

COOPERATION AMONGST THE PARTIES

The parties hereto shall reasonably cooperate to give effect to all instances of incorporation by reference and "*mutatis mutandis*".

**[No Further Text on this Page; Signature Pages Follows]**

13

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed and delivered as of the day and year first above written.

**OBLIGOR:**

**PARK PLACE DEVELOPMENT PRIMARY LLC**, a Delaware limited liability company

By:_____

Name: Sharif El-Gamal
Title: President

[Signatures continue on following page]

**ADMINISTRATIVE AGENT:**

**MALAYAN BANKING BERHAD, NEW YORK BRANCH**, a corporation organized under the laws of Malaysia

By: _____    26 APRIL 2016
    Name: Shahida Mohd Jaffar Sadiq Maricar
    Title: General Manager

[Signatures continue on following page]

**FINANCIERS:**

**MALAYAN BANKING BERHAD, LONDON BRANCH**, a corporation organized under the laws of Malaysia

By: _____  April 26 2016

    Name: Kevin Koh
    Title: Regional Director

[Signatures continue on the following page]

**INTESA SANPAOLO S.P.A., NEW YORK BRANCH**, a banking institution incorporated and existing under the laws of the Republic of Italy

By: _____
    Name: Alessandro Vitale
    Title: First Vice President

By: _____
    Name: Riccardo Amoni
    Title: Vice President

[Signatures continue on the following page]

**WARBA BANK**, a corporation organized under the laws of the State of Kuwait

By: _____
    Name: Thuwain' AlThuma'ni
    Title: Executive manager

By: _____
    Name: Ha Kam mahmoud
    Title: senior manager

[Signatures continue on the following page]

1

**45 PARK PLACE INVESTMENTS, LLC**, a
Delaware limited liability company

By: _____

    Name: Marcello Liguori
    Title: Vice President

**EXHIBIT A**

**Legal Description**

LOT 8

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of Park Place distant 114 feet 4 inches easterly from the corner formed by the intersection of the said northerly side of Park Place with the easterly side of West Broadway;

RUNNING THENCE northerly at right angles with the northerly side of Park Place 59 feet 11 and 3/8 inches to a point;

THENCE easterly at right angles with the last described course 31 feet 6 inches to a point;

THENCE northerly at right angles with the last described course 30 feet 2 and 5/8 inches to a point;

THENCE easterly at right angles with the last described course 63 feet 0 and 3/8 inches to a point;

THENCE southerly along a line forming an angle on its westerly side with the last described course of 89 degrees 46 minutes 17 seconds, 90 feet 2 inches to the northerly side of Park Place;

THENCE westerly along the northerly side of Park Place, 94 feet 2 inches to the point or place of BEGINNING.

TOGETHER with rights, benefits and easements contained in the Zoning Lot Development and Easement Agreement to be recorded.

EXHIBIT B

COMMITMENT AMOUNTS OF FINANCIERS

| Financier | Commitment |
|---|---|
|  |  |
| Malayan Banking Berhad, London Branch | $5,670,285.17 |
|  |  |
| 45 Park Place Investments, LLC | $1,434,650.46 |
|  |  |
| Warba Bank K.S.C.P. | $3,074,250.99 |
|  |  |
| Intesa Sanpaolo, S.p.A. | 1,707,917.22 |

US_ACTIVE-123852865

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. |  |

**2016060700046014001E1FE6**

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 11 |
|---|---|---|
| **Document ID: 2016060700646014** | Document Date: 05-17-2016 | Preparation Date: 06-08-2016 |
| Document Type:  ASSIGNMENT OF LEASES AND RENTS | | |
| Document Page Count: 10 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| KENSINGTON VANGUARD<br>39 WEST 37TH ST TITLE NO. 822371(S-NY-CR-KV)A<br>HOLD/ PICKUP SEARCH NY<br>NEW YORK, NY 10018<br>212-532-8686<br>chrisc@KVNATIONAL.COM | REED SMITH LLP<br>599 LEXINGTON AVENUE<br>ATTENTION: JOSEPH A. SARCINELLA, ESQ.<br>NEW YORK, NY 10022 |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 126 | 8 | Entire Lot | 43 PARK PLACE |

**Property Type:** NON-RESIDENTIAL VACANT LAND

## CROSS REFERENCE DATA

**Document ID:**     2016060700646013

## PARTIES

| ASSIGNOR: | ASSIGNEE: |
|---|---|
| PARK PLACE DEVELOPMENT PRIMARY LLC<br>C/O SOHO PROPERTIES, 31 WEST 27TH STREET, 9TH FLOOR<br>NEW YORK, NY 10001 | MALAYAN BANKING BERHAD, NEW YORK BRANCH<br>400 PARK AVENUE<br>NEW YORK, NY 10022 |

## FEES AND TAXES

| **Mortgage** | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 11,887,103.84 | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | 255 | $ | 0.00 |
| TAXES:    County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 87.00 | | |
| Affidavit Fee: | $ | 8.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed          06-23-2016 12:36
City Register File No.(CRFN):
**2016000211381**

*Annette M. Hill*

*City Register Official Signature*

822 371

13

EXECUTION VERSION

# PARK PLACE DEVELOPMENT PRIMARY LLC
(Assignor)

to

# MALAYAN BANKING BERHAD, NEW YORK BRANCH
(Assignee)

## PROJECT FACILITY
## ASSIGNMENT OF LEASES AND RENTS

Effective: ~~April 26~~ May 17, 2016

Property Location:    Block 126, Tax Lot 8

DOCUMENT PREPARED BY AND
WHEN RECORDED RETURN TO:

REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Attention: Joseph A. Sarcinella, Esq.
Reference: 382348.20002

EXECUTION VERSION

**PROJECT FACILITY
ASSIGNMENT OF LEASES AND RENTS**

THIS PROJECT FACILITY ASSIGNMENT OF LEASES AND RENTS (this "**Assignment**") made as of April 26, 2016, by **PARK PLACE DEVELOPMENT PRIMARY LLC,** a Delaware limited liability company ("**Assignor**"), having an address at c/o Soho Properties, 31 West 27th Street, 9th Floor, New York, NY 10001 to **MALAYAN BANKING BERHAD, NEW YORK BRANCH,** a corporation organized under the laws of Malaysia ("**Assignee**"), its successors and permitted assigns, as administrative agent for the Project Facility Financiers (as such term is defined in the Project Facility Agreement), having an address at , having an address at 400 Park Avenue, New York, New York 10022. Unless otherwise indicated, all capitalized terms used herein shall have the meanings indicated in that certain Project Facility Agreement of even date herewith, among Assignor, as obligor, the Project Facility Financiers party thereto from time to time and Assignee, as administrative agent (as the same may be amended, modified and in effect from time to time, the "**Project Facility Agreement**"). If any term, condition or provision of the Project Facility Agreement shall be inconsistent with any term condition or provision of this Assignment, then the Project Facility Agreement shall control.

**W I T N E S S E T H :**

THAT Assignor for good and valuable consideration, receipt whereof is hereby acknowledged, hereby grants, transfers and absolutely and unconditionally assigns to Assignee the Assignor's entire lessor's interest in and to all current and future leases and other agreements affecting the use, enjoyment, or occupancy of all or any part of the parcel of land, more particularly described in Exhibit A annexed hereto and made a part hereof, together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (hereinafter collectively referred to as the "**Property**").

TOGETHER WITH any extensions or renewals of the same, this Assignment of other present and future leases and present and future agreements being effective without further or supplemental assignment;

The leases and other agreements described above are hereinafter collectively referred to as the "**Leases**";

TOGETHER WITH all accounts, deposits, rents, income, issues, revenues, receipts, takaful/insurance proceeds and profits arising from the Leases and renewals thereof and together with all rents, income, issues and profits (including, but not limited to, all oil and gas or other mineral royalties and bonuses) from the use, enjoyment and occupancy of the Property, or the lease, sublease, license, concession or other grant of right to use or occupy any portion thereof and vending machine proceeds (hereinafter collectively referred to as the "**Rents**").

THIS ASSIGNMENT is made in consideration of the Project Facility made by Assignee to Assignor pursuant to the Project Facility Agreement, and secures the obligations of

US_ACTIVE-123903059.5-382348-
20002

1

EXECUTION VERSION

Assignor under the Project Facility Documents, which include, but are not limited to, the Project Facility Agreement, the Project Facility Note and the Project Facility Mortgage.

ASSIGNOR WARRANTS that (A) none of the Rents have been assigned or otherwise pledged or hypothecated, except pursuant to security interests that have been entirely released or pursuant to the Project Facility Documents and (B) Assignor has full power and authority to execute and deliver this Assignment and the execution and delivery of this Assignment has been duly authorized and to Assignor's knowledge, does not conflict with or constitute a violation of any law, judicial order or other agreement affecting Assignor or the Property.

ASSIGNOR COVENANTS with Assignee that Assignor shall observe and perform all material obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to materially impair the value of the Leases as security for the Obligations and shall otherwise act in accordance with Section 13.3 of the Project Facility Agreement.

THIS ASSIGNMENT is made on the following terms, covenants and conditions:

**Present Assignment**. To the fullest extent permitted by applicable law, Assignor does hereby absolutely and unconditionally assign to Assignee Assignor's right, title and interest in all current and future Leases and Rents, it being intended by Assignor that this assignment constitutes a present, absolute and unconditional assignment and not an assignment for additional security only. Such assignment to Assignee shall not be construed to bind Assignee to the performance of any of the covenants, conditions, or provisions contained in any such Lease or otherwise to impose any obligation upon Assignee. Assignor agrees to execute and deliver to Assignee such additional instruments, in form and substance reasonably satisfactory to Assignee, as may hereinafter be reasonably requested by Assignee to further evidence and confirm said assignment. Nevertheless, subject to the terms of this paragraph, and notwithstanding anything the contrary contained herein, Assignee hereby grants to Assignor a revocable license to operate and manage the Property and to collect the Rents, which license shall not be revoked prior to the occurrence of an Event of Default. Assignor shall hold the Rents, or a portion thereof, sufficient discharge all sums then currently due and payable on the Obligations for use in the payment of such sums. Upon the occurrence and during the continuance of an Event of Default, the license granted to Assignor herein shall automatically be revoked by Assignee and Assignee shall immediately be entitled to receive and apply all Rents, whether or not Assignee enters upon and takes control of the Property. Assignee is hereby granted and assigned by Assignor the right, at option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected during any period which the license herein granted has been revoked may be applied toward payment of the Obligations in such priority and proportion as Assignee, in its discretion, shall deem proper. Anything to the contrary set forth herein or elsewhere notwithstanding, (i) the provisions of the Project Facility Agreement shall control over any conflicting provisions of this Section, (ii) the provisions of the Project Facility Agreement which require that Rents shall be delivered or paid directly to a lockbox or similar cash control mechanism shall take priority over any conflicting provisions herein or elsewhere in the Project Facility Documents, and (iii) the provisions of the Project Facility Agreement which specify the order of application of Rents, if any, shall take

EXECUTION VERSION

priority over any conflicting provisions in this Section or elsewhere in the Project Facility; provided, however, that such provisions regarding application of Rents shall not be deemed to conflict with any other provisions hereof granting to Assignee any further rights following an Event of Default.

**Remedies of Assignee.** Upon the occurrence of and during the continuance of an Event of Default, Assignee may, at its option, without waiving such Event of Default, without notice and without regard to the adequacy of the security for the Obligations, either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court, take possession of the Property and have, hold, manage, lease and operate the Property on such terms and for such period of time as Assignee may deem proper and either with or without taking possession of the Property in its own name, demand, sue for or otherwise collect and receive all Rents, including those past due and unpaid, with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem reasonably necessary to Assignee and may apply the Rents to the payment of the following in such order and proportion as Assignee in its sole discretion may determine, any law, custom or use to the contrary notwithstanding:  (a) all reasonable, third-party expenses of managing and securing the Property, including, without being limited thereto, the reasonable salaries, fees and wages of a managing agent and such other employees or agents as Assignee may deem reasonably necessary and all expenses of operating and maintaining the Property, including, without being limited thereto, all taxes, charges, claims, assessments, water charges, sewer rents and any other liens, and premiums for all takaful/insurance which Assignee may deem reasonably necessary, and the cost of all alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Property; and (b) the Obligations, together with all costs and reasonable attorneys' fees.  In addition to the rights which Assignee may have herein, upon the occurrence and during the continuance of an Event of Default, Assignee may require Assignor to vacate and surrender possession of the Property to Assignee or to such receiver and, in default thereof, Assignor may be evicted by summary proceedings or otherwise.  Additionally, Assignee shall have the right to establish a lock box for the deposit of all Rents and other receivables of Assignor relating to the Property.  For purposes of <u>Sections 1</u> and <u>2</u> hereof, Assignor grants to Assignee its irrevocable power of attorney, coupled with an interest, to take any and all of the aforementioned actions and any or all other actions designated by Assignee for the proper management and preservation of the Property.  The exercise by Assignee of the option granted it in this paragraph and the collection of the Rents and the application thereof as herein provided shall not be considered a waiver of any default by Assignor under the Project Facility Agreement, the Project Facility Note, the Project Facility Mortgage, the Leases, this Assignment or the other Project Facility Documents.

**No Liability of Assignee.**  Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Property after an Event of Default or from other act or omission of Assignee in managing the Property after an Event of Default except to extent of Assignee's gross negligence or willful misconduct.  Assignee shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or under or by reason of Assignment and Assignor shall, and hereby agrees, to indemnify Assignee for, and to hold Assignee harmless from, any and all liability, loss or damage which Assignee incurs under the Leases or under or by reason of this Assignment and from any and all claims and demands

EXECUTION VERSION

whatsoever, including the defense of any such claims or demands which are asserted against Assignee by reason of any alleged obligations and undertakings on its part to perform or any of the terms, covenants or agreements contained in the Leases (excluding liability, loss, damage or expense (i) due to Assignee's gross negligence or willful misconduct, or (ii) arising after transfer of the Property to Assignee or any third party pursuant to a foreclosure or deed in of foreclosure, which liability loss, damage or expense is not attributable to any condition or existing or occurring prior to such transfer). Should Assignee incur any such liability, the thereof, including reasonable third-party costs, expenses and reasonable attorneys' fees, shall be secured hereby and by the Project Facility Mortgage and the other Project Facility Documents Assignor shall reimburse Assignee therefor within ten (10) days of demand and upon the failure Assignor so to do Assignee may, at its option, declare all sums secured hereby, the Project Agreement, the Project Facility Note, the Project Facility Mortgage and the other Project Facility Documents immediately due and payable. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Assignee, nor for the carrying out of any of the terms and conditions of the Leases; nor shall it operate to make Assignee responsible or liable for any waste committed on the Property by the lessees or other parties, or for any dangerous or defective condition of the Property, including, without limitation, the presence of any Hazardous Materials, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any lessee, employee or stranger, in all cases except to the extent of Assignee's gross negligence or willful misconduct.

**Notice to Lessees.** Assignor hereby authorizes and directs the lessees named in the Leases or any other or future lessees or occupants of the Property, upon receipt from Assignee of written notice to the effect that the Assignee is then the holder of the Project Facility Note and that an Event of Default exists, to pay over to Assignee all Rents and to continue so to do until otherwise notified by Assignee.

**Other Security.** Assignee may take or release other security for the payment of the Obligations, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the reduction or satisfaction of the Obligations without prejudice to any of its rights under this Assignment.

**Other Remedies.** Nothing contained in this Assignment and no act done or omitted by Assignee pursuant to the power and rights granted to Assignee hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under the Project Facility Agreement, the Project Facility Note, the Project Facility Mortgage or the other Project Facility Documents and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms thereof. The right of Assignee to collect the Obligations and to enforce any other security therefor held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

**No Project Facility Mortgagee in Possession.** Nothing herein contained shall be construed as constituting Assignee a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Assignee or any designee or agent of Assignee. In the exercise of the powers herein granted Assignee, no liability shall be asserted or enforced against

Assignee, all such liability being expressly waived and released by Assignor, except to the extent of Assignee's gross negligence or willful misconduct.

**Conflict of Terms.** In case of any conflict between the terms of this Assignment and the terms of the Project Facility Agreement, the terms of the Project  Facility Agreement shall prevail.

**No Oral Change.** This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Assignor or Assignee, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

**Certain Definitions.** Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Assignor" shall mean Assignor and any subsequent owner or owners of the Property or any part thereof or any interest therein; the word "Assignee" shall mean Assignee and any subsequent holder of the Project Facility Note; and the word "Property" shall include the Property and any portion of the Property and any interest therein.    Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms; and the singular form of nouns and pronouns shall include the plural and vice versa.

**Non-Waiver.** The failure of Assignee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Assignment.  Assignor shall not be relieved of Assignor's obligations hereunder by reason of (i) failure of Assignee to comply with any request of Assignor or any other party to take any action to enforce any of the provisions hereof or of the Project Facility Mortgage, the Project Facility Note or the other Project Facility Documents, (ii) the release regardless of consideration, of any part of the Property less than the whole, or (iii) any agreement or stipulation by Assignee extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Project Facility Agreement, the Project Facility Note, the Project Facility or the other Project Facility Documents.  Assignee may resort for the payment of the Obligations to any other security held by Assignee in such order and manner as Assignee, in its discretion, may elect.  Assignee may take any action to recover the Obligations, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Assignee thereafter to enforce its rights under this Assignment.  The rights of Assignee under this Assignment shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others.  No act of Assignee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

**Inapplicable Provisions.** If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

**Duplicate Originals.** This Assignment may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

US_ACTIVE-123903059.5-382348-
20002

EXECUTION VERSION

**Governing Law.** This Assignment, and the security interests created hereunder, shall be governed by the laws of the state in which the Property is located. In the event that any provision of this Assignment conflicts with applicable law, such conflict shall not affect other provisions of this Assignment which can be given effect without the conflicting provisions, and to this end the provisions of this Assignment are declared to be severable.

**Termination of Assignment.** Upon payment in full of the Obligations this Assignment shall become and be void and of no effect.

**WAIVER OF JURY TRIAL. ASSIGNOR AND ASSIGNEE EACH HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS ASSIGNMENT, THE PROJECT FACILITY MORTGAGE OR THE OTHER PROJECT FACILITY DOCUMENTS OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY ASSIGNOR AND ASSIGNEE, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH PARTY IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY THE OTHER PARTY.**

**Personal Liability.** Notwithstanding anything to the contrary contained in this Assignment, the liability of Assignor for the Obligations and for performance of the other agreements, covenants and obligations contained herein and in the Project Facility Documents shall be limited as set forth in Section 21.21 of the Project Facility Agreement; provided, however that nothing shall herein be deemed a waiver of any right which Assignee may have under Sections 506(a), 506(b), 1111(b) or any other provisions of the U.S. Bankruptcy Code to file a claim for the full amount of the Obligations or to require that all collateral shall continue to secure all indebtedness owing to Assignee in accordance with the Project Facility Note, this Assignment and the other Project Facility Documents.

THIS ASSIGNMENT shall inure to the benefit of Assignee and any subsequent holder of the Project Facility Note and shall be binding upon Assignor, and each and every Assignor's heirs, executors, administrators, successors and assigns and any subsequent owner of the Property.

[SIGNATURES FOLLOW ON NEXT PAGE]

US_ACTIVE-123903059.5-382348-
20002

**IN WITNESS WHEREOF**, Assignor, intending to be legally bound hereby, has duly executed this Assignment as of the day and year first above written.

**ASSIGNOR**:

**PARK PLACE DEVELOPMENT PRIMARY LLC**, a Delaware limited liability company

By:_____
  Name: Sharif El-Gamal
  Title: President

# ACKNOWLEDGMENT

STATE OF __New York__ }
                                    } ss
COUNTY OF __New York__ }


On __April__ __26__, 2016, before me, __Chui San Phon__, personally
appeared __Sharif El- Gamal__, personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity(ies) upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.                                    [SEAL]

PHON CHOOI SAN
Notary Public, State of New York
No. 01PH6117535
Qualified in New York County
Commission Expires October 25, 20 16

**EXHIBIT A**

**Legal Description**

LOT 8

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of Park Place distant 114 feet 4 inches easterly from the corner formed by the intersection of the said northerly side of Park Place with the easterly side of West Broadway;

RUNNING THENCE northerly at right angles with the northerly side of Park Place 59 feet 11 and 3/8 inches to a point;

THENCE easterly at right angles with the last described course 31 feet 6 inches to a point;

THENCE northerly at right angles with the last described course 30 feet 2 and 5/8 inches to a point;

THENCE easterly at right angles with the last described course 63 feet 0 and 3/8 inches to a point;

THENCE southerly along a line forming an angle on its westerly side with the last described course of 89 degrees 46 minutes 17 seconds, 90 feet 2 inches to the northerly side of Park Place;

THENCE westerly along the northerly side of Park Place, 94 feet 2 inches to the point or place of BEGINNING.

TOGETHER with rights, benefits and easements contained in the Zoning Lot Development and Easement Agreement to be recorded.

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2016060700646014001SD167

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID: 2016060700646014**   Document Date: 05-17-2016   Preparation Date: 06-08-2016
Document Type: ASSIGNMENT OF LEASES AND RENTS

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT                     4

822371

**AFFIDAVIT UNDER SECTION 255 TAX LAW**
**ASSIGNMENT OF LEASES AND RENTS**
(Project Facility Agreement)


STATE OF NEW YORK     :
                                         : ss.:
COUNTY OF  NEW YORK :


     Sharif El-Gamal being duly sworn, deposes and says:

1. That he is the President of Park Place Development Primary LLC, a Delaware limited liability ("**Assignor**"), which is the owner of certain premises encumbered by the mortgage (the "**Mortgage**") described in EXHIBIT A attached hereto and made a part hereof, and is familiar with the facts set forth herein.

2. That Assignor executed and delivered a certain mortgage to Malayan Banking Berhad, New York Branch, a corporation organized under the laws of Malaysia ("**Assignee**"), which Mortgage was dated April 26, 2016, in the principal sum of $11,887,103.84 encumbering the Premises. Said mortgage is simultaneously offered herewith for recording in the Office of the City Register of the County of New York, and that the proper mortgage tax in the amount of $332,838.81 is being paid thereon.

3. That as additional collateral security for the payment of the indebtedness secured by the above mentioned Mortgage, Assignor executed and delivered to Assignee an Assignment of Leases and Rents dated April 26, 2016, which said Assignment of Leases and Rents is herewith offered for recording in the Office of the City Register of the County of New York.

4. That the Assignment of Leases and Rents submitted herewith for recording does not create or secure any new or further indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the said primary mortgage mentioned above.

WHEREFORE, deponent respectfully requests that such Assignment of Leases and Rents may be declared exempt from taxation pursuant to Section 255 of Article XI of the Tax Law of the State of New York.

Dated this 26th day of April , 2016

PARK PLACE DEVELOPMENT PRIMARY
LLC, a Delaware limited liability company


By:_____
    Name: Sherif El-Gamal
    Title: President

**ACKNOWLEDGMENT**

STATE OF ___New York___ }
                               } ss
COUNTY OF ___New York___ }

On ___April  26___, 2016, before me, ___Chooi San Phon___, personally
appeared ___Shant Er-kraiwal___, personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity(ies) upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.                    [SEAL]

_____

PHON CHOOI SAN
Notary Public, State of New York
No. 01PH6117535
Qualified in New York County
Commission Expires October 25, 20 16

## EXHIBIT A

### Legal Description

LOT 8

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of Park Place distant 114 feet 4 inches easterly from the corner formed by the intersection of the said northerly side of Park Place with the easterly side of West Broadway;

RUNNING THENCE northerly at right angles with the northerly side of Park Place 59 feet 11 and 3/8 inches to a point;

THENCE easterly at right angles with the last described course 31 feet 6 inches to a point;

THENCE northerly at right angles with the last described course 30 feet 2 and 5/8 inches to a point;

THENCE easterly at right angles with the last described course 63 feet 0 and 3/8 inches to a point;

THENCE southerly along a line forming an angle on its westerly side with the last described course of 89 degrees 46 minutes 17 seconds, 90 feet 2 inches to the northerly side of Park Place;

THENCE westerly along the northerly side of Park Place, 94 feet 2 inches to the point or place of BEGINNING.

TOGETHER with rights, benefits and easements contained in the Zoning Lot Development and Easement Agreement to be recorded.

| Key | Source | Index | Filed Date | Perfected Date | Block | Lot | Amount |
|-----|--------|-------|-----------|----------------|-------|-----|--------|
| 3100348049101 191218 | BL | 530 | 05/25/16 | | 126 | 8 | $99,999,999.99 |

**Debtor**    PARK PLACE DEVEOPMENT PRIMARY LLC 43 PARK PLACE NY NY 10007

**Creditor**    MALAYAN BANKING BERHAD 00000

| Key | Source | Index | Filed Date | Perfected Date | Block | Lot | Amount |
|-----|--------|-------|-----------|----------------|-------|-----|--------|
| 3100348049701 190315 | NL | 210 | 05/25/16 | | 126 | 8 | $99,999,999.99 |

**Debtor**    PARK PLACE DEVELOPMENT PRIMARY LLC 43 PARK PLACE NY NY 00000

**Creditor**    MAYLAYAN BANKING BERHAD 400 PARK AVE NY NY 10022

**Third Party**    PARK PLACE DEVELOPMENT PRIMARY LLC 00000

*9*

## NOTICE OF FINANCING
(Pursuant to Section 73 of the Lien Law)

1. Name and Address of person or financier making advances:

   **MAYLAYAN BANKING BERHAD,**
   **NEW YORK BRANCH**
   400 Park Avenue
   New York, New York 10022

2. Specify person to whom or on whose behalf advances are made and whether such person is owner, contractor or subcontractor:

   **PARK PLACE DEVELOPMENT PRIMARY LLC**
   c/o Soho Properties
   31 West 27th Street, 9th Floor
   New York, New York 10001

   ___X___ Owner _____Contractor _____Subcontractor

3. Description sufficient for identification of the improvement and of the real property involved or public improvement for which advances are made (if advances relate to one specific project or one specific public improvement):

   **CONSTRUCTION OF MIXED USE BUILDING**

4. If the Notice of Financing relates to several or undetermined projects or for public improvements, include a statement of each county wherein the real property is or may be situated:

   **N/A**

5. Address of property affected:

   **43 PARK PLACE, COUNTY OF NEW YORK, STATE OF NEW YORK,**
   **BLOCK: 126**
   **LOT: 8**

6. Date of any advance made on or before the date of filing for which this Notice of Financing is intended to be effective: May 17, 2016

7. Maximum balance of advances outstanding to be permitted by the Lender pursuant to this Notice of Financing: $174,000,000

Filed by:

Dated: May 17, 2016

**MALAYAN BANKING BERHAD, NEW YORK BRANCH,** a corporation organized under the laws of Malaysia

By: _____  26 APRIL 2016

Name: Shahida Mohd Jaffar Sadiq Maricar
Title: General Manager

# ACKNOWLEDGMENT

STATE OF _New York_ }
                          } ss
COUNTY OF _New York_ }

On _April 26_, 2016, before me, _Joyce Yee_, personally appeared _Shahid A Mohd Jaffar Shoiq Mai_ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity(ies) upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.                    [SEAL]

_____
                    JOYCE YEE
            Notary Public, State of New York
            No. 31-4942014
               Qualified in New York County
            Commission Expires _09/12/2018_

003864 N/2 270

FILED
COUNTY CLERK
N.Y. COUNTY

2016 MAY 25 AM 10: 21

New York County Clerk's Office
Paym 271023 05/25/2016 10:25a
Cashier MMGONZAL Register # 4

Tr.360474                           $30.00

Notice of Lending   --------------
--------311134
RM 109B NOTICE OF LENDING #3864

Total:                              $30.00

Check                               $30.00

DOCKETED BY