# EXHIBIT G

Declaration of Matthew Parrott



Malayan Banking Berhad
400 Park Avenue, 11th Floor
New York, NY 10022
Tel: (212) 303-1300
Fax: (212) 308-0109
www.maybank2u.com

April 29, 2019

**VIA EMAIL AND OVERNIGHT MAIL**
Park Place Development Primary LLC
Mr. Sharif El-Gamal
Chairman and CEO
Soho Properties Inc.
31 W 27th Street, 9th Floor
New York, NY 10001

45 Park Place Partners, LLC
c/o Soho Properties
31 West 27th Street, 9th Floor
New York, New York 10001
Attention: Sharif El-Gamal

Soho Properties General Partner LLC
c/o Soho Properties
31 West 27th Street, 9th Floor
New York, New York 10001
Attention: Sharif El-Gamal

Sharif El-Gamal
c/o Soho Properties
31 West 27th Street, 9th Floor
New York, New York 10001

**Re:** **(i) Notice of Event of Default for Obligor's Failure to Pay Upon Termination Date, (ii) Notice of Event of Default for Obligor's Failure to Deliver Sales Milestone Three Letter of Credit, (iii) Notice of Event of Default Regarding Execution of Amendments of Mezzanine Facility Documents and (iv) Reservation of Rights**

Dear Mr. El-Gamal,

Reference is hereby made to the following:

(i) the Building Facility Agreement, dated as of April 26, 2016, by and among Malayan Banking Berhad, New York Branch (the "**Administrative Agent**") for the financiers party thereto (collectively, the "**Financiers**"), the Financiers and Park Place Development Primary LLC, a Delaware limited liability company (the "**Obligor**") (the "**Building Facility Agreement**");

(ii) the Project Facility Agreement, dated as of April 26, 2016, by and among the Administrative Agent for the Financiers, the Financiers and the Obligor (the "**Project Facility Agreement**"; and together with the Building Facility Agreement, the "**Facility Agreements**");

(iii) the Notice of (i) Failure of Guarantors to Satisfy Financial Covenants, (ii) Request for Deficiency Deposit, (iii) Request for Updated Construction Schedule and (iv) Effect on Transactions, dated June 13, 2018, by the Administrative Agent to the Obligor and the Guarantors (as defined in the Facility Agreements) (the "**June 13, 2018 Administrative Agent Notice**");

(iv) the Notice, dated August 16, 2018, by the Administrative Agent to the Obligor (the "**August 16, 2018 Administrative Agent Notice**");

(v) the Amended and Restated Promissory Note, dated July 25, 2018, by Park Place Development Secondary LLC, a Delaware limited liability company ("**Sole Member**"), to Berni, an Exempt Corporation organized under the laws of the Cayman Islands (the "**Mezzanine Financier**") (the "**First Amended and Restated Mezzanine Note**");

(vi) the Second Amendment to the Murabaha Facility Agreement, dated as of July 25, 2018, by and between the Mezzanine Financier and the Sole Member (the "**Second Amendment to Mezzanine Facility Agreement**; and together with the First Amended and Restated Mezzanine Note, collectively, the "**Second Amendment Mezzanine Documents**");

(vii) the Second Amended and Restated Promissory Note, dated November 15, 2018, by Sole Member to the Mezzanine Financier (the "**Second Amended and Restated Mezzanine Note**");

(viii) the Third Amendment to the Murabaha Facility Agreement, dated as of November 15, 2018, by and between the Mezzanine Financier and the Sole Member (the "**Third Amendment to Mezzanine Facility Agreement**; and together with the Second Amended and Restated Mezzanine Note, collectively, the "**Third Amendment Mezzanine Documents**");

(ix) the Notice of Failure to Achieve Sales Milestone Three and Agreement Regarding Funding, dated December 21, 2018, by the Administrative Agent to the Obligor ("**December 21, 2018 Notice of Failure to Achieve Sales Milestone Three**");

(x) the Agreement for One Time Funding and Notice Regarding Other Matters, dated January 17, 2019, by and among the Administrative Agent, the Obligor and the Guarantors (the "**January 17, 2019 Agreement for One Time Funding**"); and

(xi) the Agreement for One Time Funding, dated April 26, 2019, by and among the Administrative Agent, the Obligor and the Guarantors (the "**April 26, 2019 Agreement for One Time Funding**").

Capitalized terms used in this (i) Notice of Event of Default for Obligor's Failure to Pay Upon Termination Date, (ii) Notice of Event of Default for Obligor's Failure to Deliver Sales Milestone Three Letter of Credit, (iii) Notice of Event of Default Regarding Execution of Amendments of Mezzanine Facility Documents and (iv) Reservation of Rights (this "**Notice**") and not defined herein shall have the meanings ascribed to such terms in the Facility Agreements.

### Notice of Event of Default for Obligor's Failure to Pay Upon Termination Date

As provided in Section 5.3(a) of the Building Facility Agreement, and as affirmed by the Obligor in the April 26, 2019 Agreement for One Time Funding, the term of that certain building facility in the maximum amount of One Hundred Sixty-Two Million One Hundred Twelve Thousand Eight Hundred Ninety-Six Dollars and 16/100 ($162,112,896.16) (the "**Building Facility**") and that certain project facility in the maximum amount of Eleven Million Eight Hundred Eight-Seven Thousand One Hundred

Three Dollars and 84/100 ($11,887,103.84) (the "**Project Facility**"; and together with the Building Facility, collectively, the "**Facility**") expired on the "Termination Date", which was April 26, 2019. On the Termination Date, the unpaid Deferred Sale Price and all other sums due and payable under the Notes and the other Facility Documents (collectively, the "**Outstanding Amount**") was required to be paid in full. Solely for reference, as of the date of this Notice, the Outstanding Amount is $108,391,832.03, and the Outstanding Amount will increase following the date of this Notice in accordance with the Facility Documents.

The Obligor failed to pay the Outstanding Amount on the Termination Date. Such failure constitutes an "Event of Default" under Section 16.1(a) of the Facility Agreements (the "**Failure to Pay Upon Termination Date Event of Default**") entitling the Financiers to exercise all of the Financiers' rights and remedies under the Facility Agreements and the other Facility Documents and under applicable law and in equity. Demand is hereby made for payment of the Outstanding Amount in full. Without limiting the immediately preceding sentence, in the April 26, 2019 Agreement for One Time Funding, the Obligor affirmed that such failure constituted an "Event of Default" under Section 16.1(a) of the Facility Agreements.

If the Outstanding Amount is not immediately paid and satisfied in full, then the Financiers may proceed with enforcement of the Financiers' rights and remedies under the Facility Documents, and otherwise in equity and at law (without further notice) including, without limitation, the commencement and prosecution of a foreclosure proceeding against the Project. In any event, as provided in Section 6.6 of the Facility Agreements, from and after the Termination Date, the Financiers shall be entitled to the payment of Agreed Profit at the Default Profit Rate until the Obligations are satisfied in full.

Since the Termination Date has occurred, and the Obligor has not repaid the Deferred Sale Price and the other portions of the Outstanding Amount, the Administrative Agent shall hereinafter issue Purchase Requests pursuant to the Facility Agreements on behalf of the Obligor in order to, among other things, provide for the accrual of Agreed Profit at the Default Profit Rate.

### Notice of Event of Default for Obligor's Failure to Deliver Sales Milestone Three Letter of Credit

As set forth in the December 21, 2018 Notice of Failure to Achieve Sales Milestone Three, the Administrative Agent determined that the Obligor failed to satisfy Sales Milestone Three as required under Section 3.7(a) of the Facility Agreements. Sales Milestone Three was not satisfied because the Obligor did not deliver fully executed Approved Sale Agreements representing an aggregate sale price of no less than one hundred twenty percent of the outstanding amount of the Facility on or before November 19, 2018.

The December 21, 2018 Notice of Failure to Achieve Sales Milestone Three constituted a notice of such failure to satisfy Sales Milestone Three. Accordingly, since the Obligor did not provide the Sales Milestone Three Letter of Credit to the Administrative Agent on or before March 21, 2019 in an amount equal to (i) the outstanding amount of the Facility multiplied by 1.20, less (ii) the aggregate sale price under Approved Sale Agreements, such failure constituted an "Event of Default" under Section 16.1(cc) of the Facility Agreements (the "**Sales Milestone Three Letter of Credit Event of Default**").

### Notice of Event of Default Regarding Third Amendment Mezzanine Documents

As described in the August 16, 2018 Administrative Notice, without obtaining the prior written consent of the Administrative Agent, on July 27, 2018, the Sole Member and the Mezzanine Financier agreed to increase the principal amount of the Mezzanine Facility to Seventy Six Million Four Hundred

Sixty Two Thousand Three Hundred Twenty Nine and No/100 Dollars ($76,462,329.00), (the "**Mezzanine Facility Increase**"). The Obligor has represented to the Financiers that the Mezzanine Facility Increase was evidenced by the Second Amendment Mezzanine Documents. The Mezzanine Facility Increase was prohibited pursuant to Section 13.1(u) of the Facility Agreements (the "**First Mezzanine Facility Increase Default**"). Since the First Mezzanine Facility Increase Default was not cured within the time period provided in Section 16.1(bb) of the Facility Agreements, the First Mezzanine Facility Increase became an "Event of Default" under the Facility Agreements (the "**First Mezzanine Facility Increase Event of Default**").

On Saturday, January 12, 2019, the Obligor provided the Administrative Agent with copies of the Third Amendment Mezzanine Documents. The Obligor had not obtained the written consent of the Financiers to the Third Amendment Mezzanine Documents prior to the execution thereof. Since the Third Amendment Mezzanine Documents continue to reflect the Mezzanine Facility Increase and the payment of a $150,000 extension fee, the execution of the Third Amendment Mezzanine Documents by the Sole Member was prohibited by Section 13.1(u) of the Facility Agreements (the "**Second Mezzanine Facility Increase Default**"). Since the Second Mezzanine Facility Increase Default was not cured within the time period provided in Section 16.1(bb) of the Facility Agreements, the Second Mezzanine Facility Increase Default became an "Event of Default" an additional "Event of Default" under the Facility Agreements (the "**Second Mezzanine Facility Increase Event of Default**").

Additionally, the Obligor has requested that the Financiers consent to an additional extension option for the Mezzanine Facility (the "**Second Mezzanine Extension Option**"). The initial request for the Second Extension Option was set forth in draft mezzanine amendment documents that included the terms set forth in the Third Amendment Mezzanine Documents. As a result, the Financiers request that Obligor provide final drafts of the documents that provide for the Second Mezzanine Extension Option for the Financiers' review. For the avoidance of doubt, the Financiers hereby advise the Obligor that the Second Mezzanine Extension Option requires the prior written consent of the Financiers. Neither this Notice, nor any other previous written or verbal communication constitutes the consent of the Financiers to the Second Mezzanine Extension Option or any other amendment to the documents evidencing the Mezzanine Facility.

### Reminder that Facility is Not In Balance

As set forth in the January 17, 2019 Agreement for One Time Funding, the Administrative Agent has determined that the Facility is not In Balance in the aggregate amount of $1,460,000 (the "**Aggregate Deficiency Amount**"). The Obligor represented, warranted and certified to the Financiers in the January 17, 2019 Agreement for One Time Funding that the Obligor delivered a check to the General Contractor on January 18, 2019 in the amount of $500,000 payable to the order of the General Contractor (the "**$500,000 Deficiency Payment**"). The $500,000 Deficiency Payment was intended to reduce the Aggregate Deficiency Amount by $500,000, so that the amount that by which the Facility is not In Balance would be equal to $960,000 as of January 18, 2019. The Obligor has not made any additional payments to the General Contractor or otherwise that would further reduce the Aggregate Deficiency Amount. In addition, the amount by which the Facility may not be In Balance may have increased following the payment of the $500,000 Deficiency Payment.

### Conclusion

The Financiers hereby notify the Obligor that the following Events of Default have occurred and are continuing: (i) the Failure to Pay Upon Termination Date Event of Default, (ii) the Sales Milestone Three Letter of Credit Event of Default, (iii) the First Mezzanine Facility Increase Event of Default, (iv) the Second Mezzanine Facility Increase Event of Default and (v) the failure of the Guarantors to jointly

have Liquidity of not less than $10,000,000 as described in the June 13, 2018 Administrative Agent Notice (the "**Liquidity Event of Default**"; and together with the First Mezzanine Facility Increase Event of Default and the Second Mezzanine Facility Increase Event of Default, collectively, the "**Existing Events of Default**").

### Reservation of Rights

The Financiers' acceptance of any payments due under the Facility Documents including, without limitation, Deferred Sale Price, Agreed Profit, Default Profit, late fees, attorneys' fees or other reimbursable expenses, should not be construed as, nor constitute, a waiver by the Financiers of any Event of Default, including, without limitation, the Existing Events of Default, other breaches or any of the Financiers' rights, claims or remedies, all of which are expressly reserved.

Nothing in this Notice shall be deemed or be construed (a) as a demand for payment of any sum in excess of the amounts that are lawfully owed to the Financers pursuant to the Facility Documents; (b) as an admission that any written notices are otherwise due under the Facility Documents; or (c) a waiver of any other Defaults or Events of Default that may exist under the Facility Documents.

This Notice is not intended to contain an exhaustive or complete listing of all Events of Default or Defaults, disputes or potential defaults or the Financiers' remedies that currently may exist with respect to the Facility Agreements, the Notes or the other Facility Documents. Nothing contained in this Notice is intended to limit, nor shall it be deemed to limit or in any way affect, any of the Financiers' claims, rights or remedies under the Facility Agreements, the Notes, the Performance and Completion Guaranty or any of the other Facility Documents, and nothing in this Notice shall in any way modify, change, impair, affect, diminish, or release any liability of the Obligor or the Guarantors or under or pursuant to the Facility Agreements, the Notes, the Performance and Completion Guaranty or any of the other Facility Documents or entitle the Obligor or the Guarantors to any other or further agreement or demand whatsoever. Nothing contained herein, nor any failure by the Financiers to exercise any of the Financiers' rights or remedies under the Facility Agreements, the Notes or any of the other Facility Documents, shall be deemed to constitute, nor is it intended to constitute, any waiver whatsoever of any: (i) Default or Event of Default that may exist under the Facility Agreements, the Notes, the Performance and Completion Guaranty or under any other Facility Document, including, without limitation, the Existing Events of Default; (ii) the right of the Financiers' to declare Defaults or Events of Default under the Facility Agreements, the Notes, the Performance and Completion Guaranty or any other Facility Documents, whether or not such defaults or Events of Default exist at this time; (iii) any term, provision, condition, covenant, or agreement contained in the Facility Agreements, the Performance and Completion Guaranty, the Notes or in any of the other Facility Documents; or (iv) rights or remedies of the Financiers under the Facility Agreements, the Notes, the Performance and Completion Guaranty or any of the other Facility Documents, at law or in equity or otherwise, or prejudice or preclude any other or further exercise of any such right or remedy by the Administrative Agent or the Financiers, all of which are hereby reserved.

(Signature on next page.)

Very truly yours,

**ADMINISTRATIVE AGENT:**
Malayan Bank Berhad, New York Branch

By: _____
Name:  Shahida Mohd Jaffar Sadiq Maricar
Title:  General Manager

cc: **VIA OVERNIGHT MAIL**
Goldberg Weprin Finkel Goldstein LLP
1501 Broadway
New York, New York 10036
Attention: Elizabeth Smith, Esq.

Duval Stachenfeld LLP
555 Madison Avenue
New York, New York 10022
Attention:  Timothy J. Pastore, Esq.
             Kirk Brett, Esq.

Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Attention: Daniel L. Brockett, Esq.

Berni
c/o Mohammed Ibrahim Al Subeaei and
Sons Investment Holding Company
Masic Building 203
Makkah Rd, Maathar District
P.O. Box 467
Riyadh 11411, Saudi Arabia
Attention: Amro Nahas

Baker & McKenzie LLP
300 E. Randolph, Suite 5000
Chicago, Illinois 60601
Attention: Mona Dajani