# EXHIBIT N

Declaration of Matthew Parrott

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MALAYAN BANKING BERHAD, NEW YORK
BRANCH, as Administrative Agent for MALAYAN
BANKING BERHAD, LONDON BRANCH, INTESA
SANPAOLO S.P.A., NEW YORK BRANCH, WARBA
BANK K.S.C.P., and 45 PARK PLACE INVESTMENTS,
LLC,

                                    Plaintiff,

                        - against -

PARK PLACE DEVELOPMENT PRIMARY LLC, PARK
PLACE PARTNERS DEVELOPMENT LLC, 45 PARK
PLACE PARTNERS, LLC, SOHO PROPERTIES
GENERAL PARTNER, LLC, SHARIF EL-GAMAL,
STATE OF NEW YORK CIVIL RECOVERIES
BUREAU, GILBANE RESIDENTIAL CONSTRUCTION
LLC, US CRANE & RIGGING LLC, CONSTRUCTION
REALTY SAFETY GROUP INC., TRADE OFF PLUS,
LLC, ALL-CITY METAL INC., PERMASTEELISA
NORTH AMERICA CORP., TRANSCONTINENTAL
STEEL CORP., ISMAEL LEYVA ARCHITECT, P.C.,
PERI FORMWORK SYSTEMS, INC., ULE GROUP
CORP. D/B/A UNITED LIGHTING ELECTRICAL
CORP., S&E BRIDGE & SCAFFOLD LLC, NEW YORK
CITY ENVIRONMENTAL CONTROL BOARD, NEW
YORK STATE DEPARTMENT OF TAXATION AND
FINANCE, and JOHN DOES 1-100, the last one hundred
names being fictitious and unknown to plaintiff, the
persons or parties intended being the tenants, occupants,
persons or corporations, if any, having or claiming an
interest in or lien upon the premises described in the
complaint,

                                    Defendants.

Mot. Seq. 004

Index No. 850083/2020

Assigned to Justice
Francis A. Kahn III
IAS Part 14M

PERMASTEELISA NORTH AMERICA CORP.

        Defendant and Cross-Claim/Counterclaim Plaintiff,

                        - against -

SOHO PROPERTIES INC.,

        Additional Defendant on Cross-Claims and
        Counterclaim.

Case 01-01139-AMC    Doc -14    Filed 07/08/21    Page 3 of 43

GILBANE RESIDENTIAL CONSTRUCTION LLC

Defendant and Cross-Claim/Counterclaim Plaintiff

- against -

THE PACE COMPANIES NEW YORK, INC., PEAK MECHANICAL SOLUTIONS, INC., MEN OF STEEL REBAR FABRICATORS, LLC, and GOTHAM DRYWALL, INC.

Additional Defendants on Cross-Claims.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
DEFAULT JUDGMENT, DISMISSAL OF COUNTERCLAIMS, SEVERANCE OF
CROSS-CLAIMS AND RELATED RELIEF**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 2

STATEMENT OF FACTS ....................................................................................... 5
    A.   The Terms of the Building Facility and the Project Facility ............................. 5
    B.   The Mortgages .................................................................................... 8
    C.   The Guaranties .................................................................................... 9
    D.   Borrower's Defaults under the Facility Documents ........................................ 9
    E.   The Commencement of the Foreclosure Action ......................................... 12

ARGUMENT ...................................................................................................... 13

I.     PLAINTIFF HAS DEMONSTRATED ITS ENTITLEMENT TO SUMMARY
JUDGMENT .................................................................................................... 13
    A.   Summary Judgment Standard ................................................................. 13
    B.   Plaintiff Has Established Its *Prima Facie* Case for Mortgage Foreclosure ..................... 14

II.    THE AFFIRMATIVE DEFENSES AND COUNTERCLAIMS ARE LEGALLY
INSUFFICIENT ................................................................................................. 16
    A.   The Affirmative Defenses Fail as a Matter of Law ..................................... 16
        1.   Plaintiff Has Pled a Basis for Its Relief ........................................ 17
        2.   Defendants Challenges under New York's Lien Law Fail ........................... 18
        3.   The Defense of Unclean Hands Fails ............................................ 21
        4.   Conclusory Assertions of Waiver, Estoppel and Release Fail ..................... 21
        5.   The Generic Allegations of Breach of Contract Are Insufficient ................... 23
        6.   Failure to Mitigate Damages Is Not an Available Defense ......................... 24
        7.   Men of Steel Does Not Have a Valid Lien Against the Property ................... 24
    B.   The Counterclaims Fail Because Plaintiff Complied with Lien Law Section 22 ........... 24

III.    THE NON-DEFAULTING LIENHOLDER DEFENDANTS' THIRD-PARTY
CLAIMS AND CROSS-CLAIMS SHOULD BE SEVERED .................................... 26

IV.    THE COURT SHOULD ENTER DEFAULT JUDGMENTS AGAINST THE
DEFAULTING DEFENDANTS AND APPOINT A REFEREE ................................. 27

V.   PERI AND THE JOHN DOE DEFENDANTS SHOULD BE DELETED FROM
THE CAPTION ................................................................................................. 29

VI.    COMPLETING DISCOVERY IS NOT A PREREQUISITE TO GRANTING SUMMARY JUDGMENT ................................................................................................... 29

CONCLUSION ................................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*170 W. Vill. Assocs. v. G & E Realty, Inc.*,
  56 A.D.3d 372 (1st Dep't 2008) ........................................................................17, 20, 22, 23

*1855 E. Tremont Corp. v. Collado Holdings LLC*,
  102 A.D.3d 567 (1st Dep't 2013) ...................................................................................14, 28

*2386 Creston Ave. Realty, LLC v. M-P-M Mgmt. Corp.*,
  58 A.D.3d 158 (1st Dep't 2008), *appeal denied*, 11 N.Y.3d 716 (2009) ...............................30

*Am. Sav. Bank FSB v. Imperato*,
  159 A.D.2d 444 (1st Dep't 1990) .........................................................................................13

*Andre v. Pomeroy*,
  35 N.Y.2d 361 (1974) ...........................................................................................................13

*Aurora Loan Servs., LLC v. Taylor*,
  25 N.Y.3d 355 (2015) ...........................................................................................................14

*Banco Popular N.A. v. 333-345 Green LLC*,
  No. 6781/10, 2012 N.Y. Misc. LEXIS 301 (Sup. Ct. Kings Cty. Jan. 17, 2012) ....................26

*Bank Leumi Tr. Co. of N.Y. v. Lightning Park, Inc.*,
  215 A.D.2d 246 (1st Dep't 1995) ....................................................................................14, 18

*Bank of Am., N.A. v. Oliver, LLC*,
  No. 602513/09, 2011 N.Y. Misc. LEXIS 1990 (Sup. Ct. N.Y. Cty. Apr. 27,
  2011) ....................................................................................................................................18

*Bank of Smithtown v. 264 W. 124 LLC*,
  105 A.D.3d 468 (1st Dep't 2013) ....................................................................................21, 22

*Bentivegna v. Meenan Oil Co.*,
  126 A.D.2d 506 (2d Dep't 1987) ..........................................................................................22

*Brown v. Danforth*,
  37 A.D. 321 (4th Dep't 1899) ...............................................................................................26

*Chem. Bank v. Broadway 55-56th St. Assocs.*,
  220 A.D.2d 308 (1st Dep't 1995) .........................................................................................14

*Chem. Bank v. PIC Motors Corp.*,
    58 N.Y.2d 1023 (1983) ........................................................................................30

*Chrysler Credit Corp. v. Dioguardi Jeep Eagle, Inc.*,
    192 A.D.2d 1066 (4th Dep't 1993) ......................................................................17

*Citidress II v. 207 Second Ave. Realty Corp.*,
    21 A.D.3d 774 (1st Dep't 2005) ...........................................................................15

*Coleman v. Norton*,
    289 A.D.2d 130 (1st Dep't 2001) .........................................................................17

*Dienst v. Paik Constr., Inc.*,
    139 A.D.3d 607 (1st Dep't 2016) .........................................................................18

*Doherty v. City of N.Y.*,
    16 A.D.3d 124 (1st Dep't 2005) ...........................................................................30

*Excel Cap. Grp. v. 225 Ross St. Realty, Inc.*,
    165 A.D.3d 1233 (2d Dep't 2018) ..................................................................14, 28

*Fremont Inv. & Loan v. Haley*,
    No. 135559/2007, 2009 N.Y. Misc. LEXIS 1466 (Sup. Ct. Queens Cty. June
    11, 2009) ...............................................................................................................23

*Friesch-Groningsche Hypotheekbank Realty Credit Corp. v. Ward Equities*,
    188 A.D.2d 397 (1st Dep't 1992) .........................................................................14

*Garrison Com. Funding IV REO LLC v. NMP-Grp. LLC*,
    No. 650087/2010, 2011 N.Y. Misc. LEXIS 485 (Sup. Ct. N.Y. Cty. Feb. 17,
    2011) .....................................................................................................................26

*Glenesk v. Guidance Realty Corp.*,
    36 A.D.2d 852 (2d Dep't 1971) ...........................................................................22

*ING Real Estate Fin. (USA) LLC v. Park Ave. Hotel Acquisition, LLC*,
    89 A.D.3d 506 (1st Dep't 2011) ...........................................................................16

*Jo Ann Homes at Bellmore, Inc. v. Dworetz*,
    25 N.Y.2d 112 (1969) ..........................................................................................21

*JP Morgan Chase Bank, N.A. v. Agnello*,
    62 A.D.3d 662 (2d Dep't 2009) ...........................................................................30

*JPMorgan Chase Bank NA v Mendoza*,
    No. 12885/2008, 2015 N.Y. Misc. LEXIS 3460 (Sup. Ct. Queens Cty. Sept.
    15, 2015) ...............................................................................................................28

*Kingman v. ZMoore Ltd.*,
 No. 652564/2016, 2018 N.Y. Misc. LEXIS 3590 (Sup. Ct. N.Y. Cty. Aug. 16,
 2018) ................................................................................................................21, 23

*Kirschenbaum v. Wells Fargo Bank, N.A.*,
 No. 151236/2019, 2019 N.Y. Misc. LEXIS 5247 (Sup. Ct. N.Y. Cty. Sept. 30,
 2019) ........................................................................................................................22

*Lombardi v. Pisari*,
 77 A.D.2d 646 (2d Dep't 1980) ...............................................................................14

*LPP Mortg., Ltd. v. Card Corp.*,
 17 A.D.3d 103 (1st Dep't 2005), *appeal denied*, 6 N.Y.3d 702 (2005) ...................15

*Mandarin Trading Ltd. v. Wildenstein*,
 16 N.Y.3d 173 (2011) ..............................................................................................23

*Manhattan Sav. Bank v. Kohen*,
 231 A.D.2d 499 (2d Dep't 1996), *appeal denied*, 91 N.Y.2d 802 (1997) ..............28

*Marine Midland Bank, N.A. v. Virginia Woods Ltd.*,
 201 A.D.2d 625 (2d Dep't 1994) .............................................................................24

*Mfrs. Hanover Tr. Co. v. Restivo*,
 169 A.D.2d 413 (1st Dep't 1991), *appeal dismissed*, 77 N.Y.2d 989 (1991) .........21

*N.Y.S. Mortg. Loan Enf't & Admin Corp. v. N. Town Phase II Houses, Inc.*,
 191 A.D.2d 151 (1st Dep't 1993) .............................................................................21

*Nationstar Mortg. LLC v. Accardo*,
 159 A.D.3d 662 (1st Dep't 2018), *appeal denied*, 32 N.Y.3d 1221 (2019) ...........17

*Pilewski v. Solymosy*,
 266 A.D.2d 83 (1st Dep't 1999) ...............................................................................24

*Red Tulip, LLC v. Neiva*,
 44 A.D.3d 204 (1st Dep't 2007), *appeal dismissed*, 10 N.Y.3d 741 (2008) ...........14

*Robbins v. Growney*,
 229 A.D.2d 356 (1st Dep't 1996) ..........................................................17, 21, 22, 23

*People ex rel Rosenquest v. Donnelly*,
 168 A.D. 500 (1st Dep't 1915) .................................................................................28

*Signature Bank v. 1775 E. 17th St., LLC*,
 No. 12299/10, 2011 N.Y. Misc. LEXIS 4286 (Sup. Ct. Kings Cty. Sept. 8,
 2011) ........................................................................................................................27

*Simmons First Nat'l Bank v. Mandracchia,*
　　248 A.D.2d 375 (2d Dep't 1998) .........................................................28

*State Bank of Albany v. Fioravanti,*
　　51 N.Y.2d 638 (1980) .........................................................13

*U.S. Bank N.A. v. McPherson,*
　　No. 30564/2010, 2012 N.Y. Misc. LEXIS 1994 (Sup. Ct. Queens Cty. Apr.
　　24, 2012) .........................................................24

*Wilmington Sav. Fund Soc'y, FSB v. Moran,*
　　175 A.D.3d 1196 (1st Dep't 2019) .........................................................17

**Statutes and Rules**

CPLR 213(4) .........................................................17

CPLR 603 .........................................................4, 26

CPLR 3013 .........................................................16

CPLR 3211 .........................................................16, 29

CPLR 3212 .........................................................13, 29

CPLR 3214(b) .........................................................29

CPLR 3215 .........................................................2, 4, 27, 28

CPLR 3217(b) .........................................................27

CPLR 6501 .........................................................29

Lien Law § 2(13) .........................................................18

Lien Law §13 .........................................................20, 25

Lien Law § 22 .........................................................*passim*

Lien Law § 44(5) .........................................................26

RPAPL 1321 .........................................................2, 28

RPAPL 1325 .........................................................2

UCC .........................................................16

Plaintiff Malayan Banking Berhad, New York Branch (the "Administrative Agent" or "Plaintiff"), as administrative agent for Malayan Banking Berhad, London Branch, Intesa Sanpaolo S.P.A., New York Branch, Warba Bank K.S.C.P., and 45 Park Place Investments, LLC (collectively, the "Financiers," collectively with the Administrative Agent, "Lender") pursuant to the Building Facility Agreement, dated as of April 26, 2016 (the "Building Facility Agreement"), and the Project Facility Agreement, dated as of April 26, 2016 (the "Project Facility Agreement," and collectively with the Building Facility Agreement, the "Facility Agreements"), respectfully submits this memorandum of law in support of its motion for an order, among other things: (a) severing and granting Plaintiff summary judgment against defendants Gilbane Residential Construction LLC ("Gilbane"), Permasteelisa North America Corp. ("PNA"), US Crane & Rigging LLC ("USCR"), Transcontinental Steel Corp. ("Transcontinental"), S&E Bridge & Scaffold LLC ("S&E"), Ismael Leyva Architect, P.C. ("Ismael"), Construction Realty Safety Group ("CRS"), and Trade Off Plus, LLC ("Trade Off Plus") (collectively, the "Non-Defaulting Lienholder Defendants"),[1]  as well as the State of New York Civil Recoveries Bureau;[2] (b) dismissing with prejudice the affirmative defenses asserted by the Non-Defaulting Lienholder Defendants; (c) dismissing with prejudice the counterclaims asserted by Gilbane, PNA, USCR, S&E, Ismael, CRS and Trade Off Plus; (d) dismissing with prejudice the counterclaims and

---

[1]     Park Place Partners Development LLC (the "Museum Owner") has filed a Motion to Dismiss the Complaint on the ground that it is not a necessary party (Mot. Seq. No. 2, Doc. No. 73) (the "Museum Owner Motion to Dismiss"). At the time of this Motion, the Museum Owner Motion to Dismiss is fully briefed, but has not yet been decided.  Given the pending motion to dismiss, Plaintiff does not seek summary judgment against Museum Owner, and reserves the right to seek summary judgment against as Museum Owner upon the filing of an answer.

[2]     The State of New York Civil Recoveries Bureau filed a notice of appearance and "waived service of all papers herein, except Amended Complaint, Notice of Sale, Referee's Report of Sale, Notice of Surplus Money Proceedings, and Notice of Application to Discontinue Action..."  Doc. No. 165.

1

affirmatives defenses asserted by Men of Steel Rebar Fabricators LLC ("Men of Steel"); (e)

entering default judgments, pursuant to CPLR 3215 and RPAPL 1321, against defendants Park

Place Development Primary LLC ("Borrower"), 45 Park Place Partners, LLC, Soho Properties

General Partner, LLC, Sharif El-Gamal, All-City Metal Inc., ULE Group Corp. d/b/a United

Lighting Electrical Corp., New York State Department of Taxation and Finance, New York City

Environmental Control Board (collectively, the "Defaulting Defendants"); and (f) for the

appointment of a referee pursuant to RPAPL 1321 and 1325 to compute the amounts due under

the notes and mortgages that are the subject of this foreclosure action, as well as certain ancillary

and related relief as specified in the Notice of Motion (hereinafter the "Motion").[3]

## PRELIMINARY STATEMENT

This commercial mortgage foreclosure action results from a failed construction

development project involving certain real property located in New York County, commonly

known as 43 Park Place, located at 43 Park Place, New York, New York 10007 (Block 126, Lot

8) (the "Property") and certain rights and benefits appurtenant thereto, including, but not limited

to, the "rights, benefits and easements contained in the Zoning Lot Development and Easement

Agreement" (together with the Property, the "Mortgaged Property").[4]   Borrower obtained

---

[3]      Such ancillary relief includes among other things, (g) severing the third-party claims and cross-claims asserted by the Non-Defaulting Lienholder Defendants and Men of Steel, (h) discontinuing without prejudice the claims and causes of action asserted by Plaintiff against Peri Formwork Systems, Inc. ("Peri") in the First Amended Verified Complaint, and (i) amending the caption of the action by directing that the names "JOHN DOES 1-100" be deleted therefrom.

[4]      References to "Parrott Aff." refer to the Affirmation of Regularity of Matthew D. Parrott, dated Jan. 22, 2021 ("Parrott Aff."). References to "Hamdi Aff." refer to the Affidavit of Ahmad Hamdi Bin Abdullah, sworn to on Jan. 20, 2021 ("Hamdi Aff."). All references to "Ex." are references to Exhibits attached to either the Parrott Aff. or the Hamdi Aff.; the Exhibits are numbered sequentially between the Parrott Aff. (Exhibits 1- 57) and the Hamdi Aff. (Exhibits 58 - 90). All references to "Doc. No." are references to NYSCEF document number for this case.

2

financing from the Lender to construct an approximately 43-story condominium development at the Property consisting of residential and retail components (the "Project"). The Mortgaged Property served as collateral for two separate loans: (i) the Building Facility Agreement pursuant to which the Borrower borrowed up to a maximum principal amount of $162,112,896.16 (the "Building Facility") and (ii) the Project Facility Agreement pursuant to which the Borrower borrowed up to a maximum principal amount of $11,887,103.84 (the "Project Facility," and together with the Building Facility, the "Facility").[5]

As more fully set forth below, Plaintiff is entitled to summary judgment permitting it to foreclose on the Mortgaged Property because it has submitted undisputed documentary proof demonstrating: (i) the existence of the Building Facility and the Project Facility; (ii) Plaintiff is the holder of the notes and mortgages for both the Building Facility and the Project Facility; and (iii) Borrower committed multiple defaults, including a maturity payment default, that entitle Plaintiff to foreclose on the Mortgaged Property. More fully, the maturity default occurred when Borrower failed to honor its obligation to repay the Facility in full on April 26, 2019. By letter dated April 29, 2019, the Administrative Agent placed Borrower on notice of the maturity default and demanded payment of the amounts outstanding at that date (the "April 2019 Notice of Default"). Despite having matured approximately a year and a half ago, Borrower has not made a single payment towards the outstanding amounts owed under either the Building Facility or the Project

---

Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Complaint (as defined hereinafter). All emphasis is added and citations are omitted unless otherwise noted.

[5] The Facility Agreements, Notes, Mortgages, and Guaranties (as each are defined hereinafter), as well as the other related documents that were executed in order to consummate the transactions between the Lender and the Borrower, are referred to herein as the "Facility Documents."

3

Facility.  This clear maturity default establishes Plaintiff's right to foreclosure in this case under both the Building Facility and the Project Facility.

Tellingly, despite having been served with process many months ago, Borrower defaulted on its obligation to file an answer to the operative complaint in this action, being the First Amended Verified Complaint (Doc. No. 119) (the "Complaint" or "FAVC").  Only certain mechanic's lienor defendants, the Non-Defaulting Lienholder Defendants, have appeared and asserted affirmative defenses.   The only purported affirmative defenses alleged are conclusory and boilerplate assertions that lack any factual support.  These purported affirmative defenses are insufficiently pleaded and do not create a genuine issue of material fact necessary to deny Plaintiff summary judgment.  Similarly deficient are attempts by those Non-Defaulting Lienholder Defendants to claim that their later filed liens should be deemed to be superior because Plaintiff did not comply with Lien Law filing requirements applicable to a "building loan contract."  Indeed, the irrefutable evidence establishes that the Building Facility Agreement was filed with the County Clerk's Office with the necessary Section 22 Lien Law affidavit prior to the recording of any of the mechanic's liens.

In addition, the cross-claims and third-party claims asserted by the Non-Defaulting Lienholder Defendants and Men of Steel should be severed pursuant to CPLR 603.  None of these claims affect the validity of the Facility Documents, and it is well-established that claims raised by mechanic's lienors that are not intertwined with foreclosure of the mortgage should be adjudicated in a separate action.

Plaintiff is also entitled to a default judgment under CPLR 3215 against the Defaulting Defendants. Plaintiff has established that all defendants were served and that the time to answer the Complaint has expired.  A defendant who fails to timely answer is deemed to have admitted

4

all factual allegations in the complaint, and because Plaintiff has established its prima facie case, it is entitled to a default judgment against the Defaulting Defendants. Moreover, Borrower should not be permitted to use its intentional and dilatory failure to timely file an answer as a tactic to seek to improperly delay the adjudication of this motion.

Plaintiff should be awarded summary judgment on its foreclosure claim, and a Referee appointed to compute the amount due to Plaintiff.

**STATEMENT OF FACTS**

**A.    The Terms of the Building Facility and the Project Facility**

The Borrower, the fee owner of the Property, obtained financing from the Lender in order to complete the Project. FAVC ¶ 2; Hamdi Aff. ¶ 3.[6]  The Project consists of approximately 111,933 saleable square feet of residential space containing fifty residential condominium units, approximately 1,129 square feet containing retail condominium units, and 413 square feet of storage space containing approximately 19 storage units. FAVC ¶ 2; Hamdi Aff. ¶ 3.

Borrower obtained financing from the Lender in the maximum aggregate principal amount of up to $174,000,000.00, consisting of: (i) the Building Facility in the aggregate principal amount of up to $162,112,896.16; and (ii) the Project Facility in the aggregate principal amount of up to $11,887,103.84. FAVC ¶ 39; *see also* Hamdi Aff. ¶¶ 4, 17; Ex. 58 (Building Facility Agreement), Ex. 71 (Project Facility Agreement). The Building Facility was made for the purpose of financing the "costs of improvements (as such term is defined in the Lien Law)," and the Project Facility

---

[6]    The Borrower took the fee interest in the Property from Museum Owner by way of the deed of assignment dated as of May 17, 2016, and recorded June 23, 2016 as CRFN 2016000211377 in the Office of the New York City Register, State of New York from the Museum Owner. FAVC ¶ 13; Ex. 1 (Doc. No. 120). The Museum Owner and Borrower are affiliated entities that are owned and operated by the same beneficial interest holders, including Defendant Sharif El-Gamal. *See* FAVC ¶¶ 20, 73; Ex. 1 (Doc. No. 120).

5

was made for the purposes of financing "soft costs associated with the Project other than the costs of improvements." FAVC ¶ 39, Hamdi Aff. ¶¶ 4, 17. The Building Facility Agreement, which included as an exhibit thereto an affidavit pursuant to Section 22 of the Lien Law of the State of New York (the "Lien Law Affidavit"), was filed with the New York County Clerk on or about May 25, 2016. Hamdi Aff. ¶¶ 7-8; Exs. 61 & 62. A notice of lending was also recorded on or about May 25, 2016. Hamdi Aff. ¶ 9; Ex. 63.

To evidence their indebtedness to the Lender under the Building Facility and the Project Facility, the Borrower duly executed and delivered to the Lender that certain Consolidated, Amended and Restated Building Facility Note dated as of April 26, 2016, in the principal amount of $162,112,896.16 (the "Building Facility Note"), and that certain Project Facility Note, dated as of April 26, 2016, in the principal amount of $11,887,103.84 (the "Project Facility Note", and together with the Building Facility Note, the "Notes"). FAVC ¶¶ 41, 54; Hamdi Aff. ¶¶ 10, 19; Exs. 64, 73.[7] The Administrative Agent is the lawful owner and holder of the Notes. FAVC ¶¶ 48, 61; Hamdi Aff. ¶¶ 12-16, 22-26. The Notes are payable to Plaintiff and are currently being held on Plaintiff's behalf. Hamdi Aff. ¶¶ 12-16, 22-26; Exs. 66-70, 76-80. As security for the payment of the Building Facility Note and the Project Facility Note, the Borrower executed and delivered to the Lender that certain Consolidated, Amended and Restated Building Facility Mortgage, Security Agreement and Assignment of Leases and Rents, by and between the Borrower (as Mortgagor) and the Lender (as Mortgagee) (the "Building Mortgage"), and that certain Project

---

[7] Both the Building Facility Note and the Project Facility Note were amended by the Building Facility Note Splitter and Modification Agreement dated as of April 26, 2016 and the Project Facility Note Splitter and Modification Agreement dated as of April 26, 2016, respectively, pursuant to which each of those notes were severed and modified into five separate notes (for *each of* the Building Facility and the Project Facility). *See* FAVC ¶¶ 42-47, 55-60; Exs. 65-70, 75-80.

6

FILED: NEW YORK COUNTY CLERK 01/22/2021 07:35 PM
NYSCEF DOC. NO. 371    Case 01-01139-AMC   Doc 14   Filed 07/08/21   Page 16 of 43

INDEX NO. 850083/2020
RECEIVED NYSCEF: 01/22/2021

Facility Mortgage, Security Agreement and Assignments of Leases and Rents, by and between the Borrower (as Mortgagor) and the Lender (as Mortgagee), respectively (the "Project Mortgage", and together with the Building Mortgage, the "Mortgages").  FAVC ¶¶ 49, 62; Hamdi Aff. ¶¶ 5, 18; Exs. 59 & 72.  The Building Mortgage was duly recorded in the Office of the City Register of the City of New York on the Automated City Register Information System ("ACRIS") as CRFN 2016000211378 on or about June 23, 2016.  FAVC ¶¶ 49-50; Hamdi Aff. ¶ 5; Ex. 59.  The Project Mortgage was duly recorded on ACRIS as CRFN 201600211380 on or about June 23, 2016.  Hamdi Aff. ¶ 18; Ex. 72.

The Facility Documents provide that the Borrower will repay to Financiers the principal amount extended under the Facility as evidenced by the Notes plus the Agreed Profit (*i.e.*, the Deferred Sale Price), and all other sums that become due and owing pursuant to the Facility Documents, at the time and place and in the manner specified in the Facility Documents.  FAVC ¶ 78.  More particularly, Section 5.3(a) of the Building Facility Agreement states that "the term of the Facility shall expire on the Termination Date, at which time the unpaid Deferred Sales Price and all other sums due and payable under the Notes and the other Facility Documents, shall be paid in full."  FAVC ¶¶ 84, 96; Ex. 58 §5.3(a), at 44.  The "Termination Date" is defined in Article 2.1 of the Building Facility Agreement to be the third anniversary of the Closing Date, which was April 26, 2019.  FAVC ¶ 97; Ex. 58, Preamble, § 2.1, at 22.[8]  Accordingly, on April 26, 2019 the Borrower was obligated to pay in full to the Lender the unpaid Deferred Sales Price and all other sums due and payable under the Notes and the other Facility Documents (the "Outstanding

---

[8]     The definitions contained in Article 2.1 of the Building Facility Agreement are incorporated by reference into the Project Facility Agreement.  FAVC ¶ 99; Ex. 71, Preamble, art. 2, at 2.

7

Amount"). FAVC ¶ 101; Hamdi Aff. ¶ 31. The Outstanding Amount under the Facility as of the Termination Date was $108,391,832.03. FAVC ¶ 101; Hamdi Aff. ¶ 33.

### B.    The Mortgages

The Mortgages provide that an Event of Default "as defined in the Building Facility Agreement shall be an Event of Default hereunder," and that during an Event of Default then Mortgagee (the Plaintiff) shall be entitled to exercise its rights and remedies under the Mortgages. FAVC ¶¶ 91, 92; Ex. 59 § 3.13, at 20; Ex. 72 § 3.13, at 19-20. The Mortgages specifically state the Plaintiff "shall have the right to foreclose this Mortgage" and compel an auction of the Mortgaged Property. FAVC ¶ 92; Ex. 59 § 2.1(e), at 15-16; Ex. 72 § 2.1(e), at 15. The Mortgages further provide that Borrower is liable for Plaintiff's costs and expenses in connection with an action by Plaintiff to foreclose, including but not limited to, reasonable third-party attorney's fees and costs. FAVC ¶ 93; Ex. 59 §§ 2.1 (e), at 15-16 & 2.6, at 18; Ex. 72 §§ 2.1(e), at 15 & 2.6, at 17-18. Furthermore, as security for the payment and performance of its obligation, Borrower granted Plaintiff a security interest in all of Borrower's personal property, including the books, records, and leases relating to the Mortgaged Property and all rents, income, profits and revenues resulting from it (the "Personal Property"). *See* Ex. 59 at 2-4, § 2.3, at 16-18; Ex. 72 at 1-4, § 2.3, at 16-17. Financing statements (Form UCC-1) covering the Personal Property was duly filed on or about June 8, 2016. *See* Exs. 81 & 82. Plaintiff also has a security interest in all of Borrower's rents and leases and all rights, titles and interest in all contracts and agreements to which Borrower is a party and all fixtures related to the Mortgaged Property. *See* Ex. 59 at 2-4, § 2.3, at 16-18; Ex. 72 at 1-4, § 2.3, at 16-17.

8

## C.     The Guaranties

As an inducement to the Lender entering into the Building Facility and the Project Facility, the Lender required that the Borrower arrange for certain guaranties of the Borrower's obligations for the benefit of the Financiers. Defendants 45 Park Place Partners LLC, Soho Properties General Partner, LLC, and Sharif El-Gamal (collectively, the "Guarantors") entered into: (i) that certain Performance and Completion Guaranty, dated as of April 26, 2016, made by and for the benefit of the Borrower for the benefit of Agent and the Financiers (the "Performance and Completion Guaranty"), and (ii) that certain Non-Recourse Carveout Guaranty, dated as of April 26, 2016, by the Guarantors in favor of the Borrower for the benefit of the Financiers (the "Non-Recourse Carveout Guaranty," and together with the Performance and Completion Guaranty, the "Guaranties"). FAVC ¶¶ 67-69; Ex. 1 (Doc. Nos. 142, 143). Pursuant to the Performance and Completion Guaranty, the Guarantors absolutely and unconditionally guaranteed, among other things, (i) the performance, completion, and payment of the Construction (as such term is defined in the Facility Agreement) and "to pay all costs of said Construction and all other costs associated therewith..."; (ii) the costs incurred in completing Construction following Administrative Agent taking possession of the Project; (iii) removing or discharging or insuring "any mechanics', materialmen's or other liens or chattel mortgages" as required in the Facility Documents; and (iv) "[t]he full and prompt payment of any Enforcement Costs...." Ex. 1 (Doc. No. 142 §§ 1.1(a)(i)-(iii), at 2 & 1.1(b), at 3).

## D.     Borrower's Defaults under the Facility Documents

In a clear and unmistakable default under the Building Facility and the Project Facility, the Borrower failed to pay the Outstanding Amount to the Lender on the Termination Date (the "Maturity Default"). FAVC ¶ 102; Hamdi Aff. ¶¶ 32-34. This Maturity Default was an Event of

9

Default under the terms of the Facility Agreements, entitling the Lender to take enforcement action as set out in the Facility Documents. FAVC ¶¶ 103, 104; Hamdi Aff. ¶ 34. The Maturity Default entitled the Administrative Agent to exercise all rights and remedies provided for under the Facility Documents and applicable law pursuant to the terms of the Notes and the Mortgages. FAVC ¶¶ 85-91; Ex. 58, art. 16, at 86-90; Ex. 71, art. 16, at 12; Ex. 64 at 1; Ex. 66 at 2; Ex. 67 at 2; Ex. 68 at 2; Ex. 69 at 2; Ex. 70 at 2; Ex. 73 at 1; Ex. 76 at 2; Ex. 77 at 2; Ex. 78 at 2; Ex. 79 at 2; Ex. 80 at 2; Ex. 59 § 3.13, at 20; Ex. 72 § 3.13, at 19. The Notes provide in the event of an Event of Default under the Facility Agreements, "all obligations outstanding hereunder … shall become immediately due and payable." FAVC ¶ 90; Ex. 64 at 1; Ex. 66 at 2; Ex. 67 at 2; Ex. 68 at 2; Ex. 69 at 2; Ex. 70 at 2; Ex. 73 at 1; Ex. 76 at 2; Ex. 77 at 2; Ex. 78 at 2; Ex. 79 at 2; Ex. 80 at 2.

On April 29, 2019, the Lender sent to the Borrower the April 2019 Notice of Default stating, among other things, that the Borrower's default in its obligation to the pay the Outstanding Amount on or before the Termination Date was an Event of Default under the Facility Agreements, and demanding payment of the then Outstanding Amount of $108,391,832.03. FAVC ¶ 105; Hamdi Aff. ¶¶ 33, 35; Ex. 83 at 3. To date, the Maturity Default has not been cured and no payment has been received from Borrower in the almost 21 months since the April 29 letter. Hamdi Aff. ¶ 36.

In addition to the Maturity Default, Borrower has committed several other Events of Default under the Facility Documents, each of which justified Plaintiff exercising its remedies. *See e.g.* FAVC ¶¶ 108-146; Hamdi Aff. ¶ 37.

*First*, as noticed in the April 2019 Notice of Default, Borrower defaulted in its obligation to provide to the Lender a letter of credit by March 21, 2019 following the Borrower's failure to achieve "Sales Milestone Three" (as that term is defined in the Building Facility Agreement) (the

10

"Sales Milestone Three Letter of Credit Default"). Hamdi Aff. ¶ 43; Ex. 83 at 3; FAVC ¶¶ 112, 116. Under the Facility Agreements, the Borrower was obligated to achieve "Sales Milestone Three," being the execution of Approved Sale Agreements (as that term is defined in the Building Facility Agreement) representing a specified aggregate sale price. FAVC ¶ 109; Hamdi Aff. ¶ 38. If Borrower failed to achieve Sales Milestone Three within the specified time, then Borrower was required to furnish to the Lender a letter of credit within ninety (90) days of notice of such failure. FAVC ¶ 112; Hamdi Aff. ¶ 38. In default of its obligations, Borrower failed to achieve Sales Milestone Three as required by the Facility Agreements, Lender provided notice of this failure in a December 2018 letter, and Borrower failed to furnish the required letter of credit within 90 days of the Lender's notice. Hamdi Aff. ¶¶ 40-41; Ex. 86 at 2; FAVC ¶¶ 113-118. Borrower's failure to provide the required letter of credit was an Event of Default under Section 16.1(cc) of the Facility Agreements. Hamdi Aff. ¶ 42; Ex. 58 § 16.1(cc), at 90; Ex. 71, art. 16, at 12; FAVC ¶¶ 117-118.

*Second*, as noticed in the April 2019 Notice of Default, the Borrower increased the mezzanine financing available to the sole member of the Borrower under a mezzanine *Murabaha* facility affiliated with the Project on two separate occasions without Lender's knowledge or consent. The Facility Agreements prohibited the Borrower from amending the obligations of the mezzanine borrower under the mezzanine facility without the Lender's prior written consent, but, without seeking or receiving Lender's consent, the mezzanine borrower and the mezzanine lender agreed to increase the amount of the mezzanine facility by $11,212,329.00, and then arranged for the payment of a $150,000 extension fee. Hamdi Aff. ¶ 45; Ex. 58 § 13.1(u), at 89; Ex. 71, art. 13, at 11; FAVC ¶¶ 122-129. Plaintiff provided notice of these defaults, but Borrower failed to cure these defaults within the allotted time, giving rise to further Events of Default under Section

11

16.1(bb) of the Facility Agreements.  Hamdi Aff. ¶¶ 47, 48; Ex. 83 at 3-4; Ex. 87 at 2; FAVC ¶¶ 130-135.

*Third*, as noticed in the April 2019 Notice of Default, the Guarantors failed to satisfy the financial covenants stipulated in the Guaranties.  Hamdi Aff. ¶¶ 49-51; Ex. 83 at 2, 4-5; Ex. 88 at 2-3; FAVC ¶¶ 136-140; Ex. 1 (Doc. No. 142 § 6.1, at 7-8; Doc. No. 143 § 7.1, at 10-11).  The Guarantors' failure to satisfy these financial covenants gave rise to Events of Default under Section 16.1(p) of the Facility Agreements after a failure of the Guarantors to cure the defect after fourteen business days' notice.  Hamdi Aff. ¶ 52; Ex. 58 § 16.1(p), at 88; Ex. 71, art. 16, at 12; FAVC ¶¶ 141-142.  Although the Lender had noticed the Guarantors' failure to abide by the financial covenants established in the guaranties in June 2018, the Guarantors failed to cure their defaults within fourteen business days.  Hamdi Aff. ¶ 51; Ex. 88 at 3; FAVC ¶¶ 143-145.

Additionally, following the foregoing defaults, Borrower committed additional defaults by causing the Project to ground to a halt, including by permitting construction work to be stopped and effectively abandoning the Project, and failing to take steps to remove certain mechanic's liens from the Mortgaged Property. Hamdi Aff. ¶¶ 53-63.

E.    **The Commencement of the Foreclosure Action**

As a result of Borrower's commission of multiple events of default under the governing Facility Documents and not making a payment towards the Outstanding Amount in the almost 11 months that had passed following the maturity date, Plaintiff commenced this action on or about March 11, 2020.  Parrott Aff. ¶ 3; Ex. 3.  Borrower was timely served with the commencement papers.  Parrott Aff. ¶ 13; Ex. 7.  On March 20, 2020, Borrower's attorney filed a letter with this Court.  Parrott Aff. ¶ 27; Doc. No. 56.  A First Amended Verified Complaint was filed on NYSCEF on July 14, 2020.  Parrott Aff. ¶ 4; Ex. 1.  Borrower was likewise served with the FAVC on July

12

14, 2020. Parrott Aff. ¶ 27; Ex. 21.  Seven months after it was originally served in this matter, to date Borrower has never responded to the Verified Complaint or the First Amended Verified Complaint and, as such, has defaulted in answering.[9]  Parrott Aff. ¶ 52.

## ARGUMENT

I.    **PLAINTIFF HAS DEMONSTRATED ITS ENTITLEMENT TO SUMMARY JUDGMENT**

A.    **Summary Judgment Standard**

A motion for summary judgment "shall be granted if, upon all the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party."  CPLR 3212(b); *see Andre v. Pomeroy*, 35 N.Y.2d 361, 364 (1974) ("[W]hen there is no genuine issue to be resolved at trial, the case should be summarily decided, and an unfounded reluctance to employ the remedy of [summary judgment] will only serve to swell the Trial Calendar...").  Therefore, "it is incumbent upon the [party opposing summary judgment] . . . to produce evidentiary proof in admissible form. . . sufficient to require a trial . . . mere conclusions, expressions of hope, unsubstantiated allegations or assertions are insufficient."  *State Bank of Albany v. Fioravanti*, 51 N.Y.2d 638, 647 (1980). The "presentation of a shadowy semblance of an issue is insufficient to defeat summary judgment." *Am. Sav. Bank FSB v. Imperato*, 159 A.D.2d 444, 444 (1st Dep't 1990) (affirming summary judgment order where mortgagor failed to raise any genuine, bona fide issue" as to default or

---

[9]    Borrower was timely served and has participated in various proceedings in this matter, including letters to the Court and appearing through counsel on at least one telephone call with the Court.  Parrott Aff. ¶¶ 13, 27-28, 37-38.  As such, it is evident that Borrower has intentionally defaulted on its obligation to timely file an answer herein. Any request by Borrower to file an answer at this late date should be denied as an improper tactical maneuver designed to take advantage of Borrower's intentional and dilatory decision to default in answering.

13

Case 01-01139-AMC    Doc -14    Filed 07/08/21    Page 23 of 43

defenses); *see also Friesch-Groningsche Hypotheekbank Realty Credit Corp. v. Ward Equities*, 188 A.D.2d 397, 398 (1st Dep't 1992). Thus, where an "answer [does] not assert [any] defense properly raising a question of fact relevant to the claim of default on the mortgage [it] therefore [is] insufficient as a matter of law to preclude the granting of summary judgment on the foreclosure action." *Lombardi v. Pisari*, 77 A.D.2d 646, 647 (2d Dep't 1980).

### B.    Plaintiff Has Established Its Prima Facie Case for Mortgage Foreclosure

In a mortgage foreclosure case, a plaintiff meets its *prima facie* burden by producing the mortgage and the unpaid note, and showing that there has been an uncured default. *See, e.g.*, *Aurora Loan Servs., LLC v. Taylor*, 25 N.Y.3d 355, 359-61 (2015); *Bank Leumi Tr. Co. of N.Y. v. Lightning Park, Inc.*, 215 A.D.2d 246, 247 (1st Dep't 1995). Once a plaintiff has established a prima facie case for foreclosure, the burden shifts to the defendants to come forward with admissible evidence of the existence of a question of fact. *See Red Tulip, LLC v. Neiva*, 44 A.D.3d 204, 209 (1st Dep't 2007), *appeal dismissed*, 10 N.Y.3d 741 (2008); *see also Chem. Bank v. Broadway 55-56th St. Assocs.*, 220 A.D.2d 308, 309 (1st Dep't 1995). Importantly, "a dispute as to the total amount of indebtedness does not preclude an award of summary judgment to the plaintiff on the issue of foreclosure, but is properly raised before the referee in computing the amount due." *Excel Cap. Grp. v. 225 Ross St. Realty, Inc.*, 165 A.D.3d 1233, 1235 (2d Dep't 2018); *see 1855 E. Tremont Corp. v. Collado Holdings LLC*, 102 A.D.3d 567, 568 (1st Dep't 2013) ("Since defendants 'challenge only the amount of the mortgage debt,' the proper procedure ... is an order of reference, to determine the 'amount due and owing to the plaintiff.'")

Plaintiff has established a prima facie case for a judgment of foreclosure. Plaintiff has established that it is the mortgagee under both the Building Facility and the Project Facility. Hamdi Aff. ¶¶ 4-5, 17-18; Exs. 58, 59, 71, 72; FAVC ¶¶ 40-66. Plaintiff has produced undisputed

14

evidence of the existence of the Facility, the Notes, and the Mortgages, and that it is the lawful holder thereof. Hamdi Aff. ¶¶ 4-28; Exs. 58-82; FAVC ¶¶ 40-66. Plaintiff has also established that Borrower defaulted under both the Building Facility and the Project Facility by failing to pay the Outstanding Amount due on the maturity date, being the "Termination Date" (as defined under the Facility Agreements) of April 26, 2019. Hamdi Aff. ¶¶ 31-35; Ex. 83 at 2-3; FAVC ¶¶ 96-104. Although the maturity date of the Facilities was in April 2019, Plaintiff has not received *any* payment towards the outstanding balance under the Building Facility or the Project Facility. Hamdi Aff. ¶ 36. These fundamental facts are not disputed, and Plaintiff is entitled to summary judgment on its foreclosure claim due to the undisputed maturity default. *See, e.g., Citidress II v. 207 Second Ave. Realty Corp.*, 21 A.D.3d 774, 776 (1st Dep't 2005) (holding that, on summary judgment, "[p]laintiff proved its prima facie entitlement to foreclosure by submitting unchallenged proof, on the summary judgment motion, of the mortgage and note as well as [defendant's] default in payment"); *LPP Mortg., Ltd. v. Card Corp.*, 17 A.D.3d 103, 104 (1st Dep't 2005), *appeal denied*, 6 N.Y.3d 702 (2005).

In addition to the maturity default, Borrower has committed several other Events of Default under the Facility Documents that justify Plaintiff's exercise of remedies, including foreclosure of the Mortgages at issue. Hamdi Aff. ¶ 37. *First*, Borrower failed to provide to the Lender a letter of credit within the required period of time following the Borrower's failure to achieve "Sales Milestone Three," which is an Event of Default under Section 16.1(cc) of the Facility Agreements. *See* Hamdi Aff. ¶¶ 38-43; FAVC ¶¶ 109-120. *Second*, Borrower increased the mezzanine financing available to the sole member of the Borrower without Lender's knowledge or consent in violation of Section 13.1(u) of the Facility Agreements, and failed to timely cure this default resulting in an event of default under Section 16.1(bb) of the Facility Agreements. *See* Hamdi Aff.

15

¶¶ 44-48; FAVC ¶¶ 121-135. *Third*, the Guarantors failed to satisfy the financial covenants stipulated in the Performance and Completion Guaranty and the Non-Recourse Carveout Guaranty, and failed to timely cure this default giving rise to further Events of Default under the Facility Agreements. *See* Hamdi Aff. ¶¶ 49-52; FAVC ¶¶ 136-146.

These uncontroverted facts demonstrate Plaintiff is fully entitled to exercise its remedies herein, including foreclosure on the Mortgages, recovery of its collateral under the UCC, including all rents and other personal property, and a deficiency judgment to the extent the Building Facility and Project Facility is not repaid in full with proceeds from the auction of the collateral.

## II. THE AFFIRMATIVE DEFENSES AND COUNTERCLAIMS ARE LEGALLY INSUFFICIENT

The affirmatives defenses and counterclaims pled by the Non-Defaulting Lienholder Defendants and Men of Steel lack legal merit, consist of nothing more than conclusory recitations, and fail based on the undisputed facts. *See* CPLR 3211(b); *ING Real Estate Fin. (USA) LLC v. Park Ave. Hotel Acquisition, LLC*, 89 A.D.3d 506, 506 (1st Dep't 2011) (affirming summary judgment where "defendant did not provide any evidentiary proof" in support of its affirmative defenses).

### A. The Affirmative Defenses Fail as a Matter of Law

All of the affirmative defenses asserted by the Non-Defaulting Lienholder Defendants and Men of Steel consist of boilerplate, one-sentence conclusory assertions and thus fail to meet even the most lenient pleading standards. An affirmative defense must be given reasonable notice of the bases for the defense. CPLR 3013 ("statements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences...intended to be proved and the material elements of each cause of action or defense."). The so-called "affirmative defenses"

16

allege no facts whatsoever to support their conclusory assertions and are therefore legally insufficient. *See 170 W. Vill. Assocs. v. G & E Realty, Inc.*, 56 A.D.3d 372, 372-73 (1st Dep't 2008) ("affirmative defenses, which pleaded conclusions of law without supporting facts, were properly stricken. . . ."); *Robbins v. Growney*, 229 A.D.2d 356, 357-58 (1st Dep't 1996).[10]

### 1.    Plaintiff Has Pled a Basis for Its Relief

The claim that Plaintiff has failed to state a cause of action is merely boilerplate and, therefore, should be dismissed.[11]  *See Coleman v. Norton*, 289 A.D.2d 130, 130 (1st Dep't 2001) (conclusory and unsubstantiated assertions are insufficient to defeat a motion for summary

---

[10]    Transcontinental's Verified Answer asserts a blunderbuss of twenty-six conclusory affirmative defenses, which are legally insufficient because, among other things, Transcontinental does not and cannot provide any specific factual allegations in support of those defenses. *See* Ex. 35 ¶¶ 1-26, at 9-10.  Moreover, the majority of the affirmative defenses are not relevant to a mortgage foreclosure action, but rather are defenses to claims of negligence or personal injury (none of which are asserted by Plaintiff).   Contrary to Transcontinental's assertions, it is well-settled law that a lender does not act improperly when it exercises its contractual rights against a borrower who has defaulted. *See Chrysler Credit Corp. v. Dioguardi Jeep Eagle, Inc.*, 192 A.D.2d 1066, 1067 (4th Dep't 1993) ("A financing institution does not act in bad faith when it exercises [a] contractual right. . . ."). Transcontinental claims that the action is barred by the applicable of the statute of limitation, (Ex. 35 ¶ 4, at 9), ignoring that there is no statute of limitation issue because a mortgage foreclosure action is subject to a six year statute of limitations. *See* CPLR 213(4). Transcontinental also mistakenly claims that Plaintiff lacks "legal capacity" (Ex. 35 ¶ 14, at 10); Plaintiff is authorized to do business in the State of New York and is also registered with and supervised by the New York State Department of Financial Services. *See* FAVC ¶ 7.  The remaining defenses raised by Transcontinental against Plaintiff, including that Plaintiff's conduct was "frivolous" (Ex. 35 ¶ 16, at 10), that the danger of loss of damages connected with the Complaint's allegations was "obvious and apparent," (*id*. ¶ 22, at 10) and that Plaintiff's claims are barred due to a failure to join a necessary party, equally fail for the reasons specified herein, (*id*. ¶ 24, at 10).

Ismael, CRS and Trade Off Plus also assert the affirmative defense of the statute of limitations. Ex. 36 ¶ 9, at 3; Ex. 37 ¶ 30, at 6. Ismael also repeats the affirmative defense that Plaintiff lacks "legal capacity," and presents a wholly unsupported allegation that Plaintiff lacks standing and is barred by the doctrine of accord and satisfaction. Ex. 36 ¶¶ 8 & 12, at 3. Each of these affirmative defenses similarly fail.  In particular, Ismael's purported "standing" defense fails because Plaintiff  has established it is the lawful holder of the Notes. *See* Hamdi Aff. ¶¶ 12-16, 22-26; Exs. 66-70, 76-80.  Plaintiff made a prima facie showing of its standing to enforce the Notes by attaching them to the Complaint. *See* Ex. 1 (Doc. Nos. 125-129, 135-139). *Wilmington Sav. Fund Soc'y, FSB v. Moran*, 175 A.D.3d 1196, 1196 (1st Dep't 2019) (holding attachment of the note to the complaint was sufficient to establish possession); *Nationstar Mortg. LLC v. Accardo*, 159 A.D.3d 662, 662 (1st Dep't 2018) ("Plaintiff established prima facie its standing to enforce the note...by attaching the note to the complaint."), *appeal denied*, 32 N.Y.3d 1221 (2019).

[11]    All of the Non-Defaulting Lienholder Defendants (other than S&E) and Men of Steel allege that Plaintiff has failed to state a cause of action.  *See* Parrott Aff. ¶¶ 40-44, 46-48, 64-65; Exs. 29-33, 35-37, 46-47.

17

judgment); *Bank Leumi Tr.*, 215 A.D.2d at 247. This defense should further be stricken because the Complaint contains detailed and undisputed factual allegations addressing every element of a prima facie entitlement to judgment of foreclosure. *See* FAVC ¶¶ 199-229.

2.    Defendants' Challenges under New York's Lien Law Fail

The conclusory assertions by each of the Non-Defaulting Lienholder Defendants and Men of Steel that their mechanic's liens are superior to the liens of the Building Facility and Project Facility (despite both the Building Facility and Project Facility being prior in time) because Plaintiff failed to comply with New York's Lien Law (the "Lien Law") are meritless.

With respect to the Project Facility, there was no obligation to comply with Lien Law Section 22 because that section applies only to "building loan contract[s]" as defined therein, and the Project Facility Agreement is not a "building loan contract." Lien Law § 22.[12] Unless the loan agreement (i) contains an express promise to use loan proceeds to pay for improvements and (ii) advances proceeds in prospective installments as construction in completed, the loan *is not a building loan contract. See, e.g.*, *Dienst v. Paik Constr., Inc.*, 139 A.D.3d 607, 607-08 (1st Dep't 2016) (a building loan mortgage is characterized by "(1) a requirement in the loan agreement that the mortgagor construct a building or improvement with the loan and (2) a disbursement of the loan in installments—as the construction progresses—rather than in one lump sum"); *Bank of Am., N.A. v. Oliver, LLC*, No. 602513/09, 2011 N.Y. Misc. LEXIS 1990, at *6-7 (Sup. Ct. N.Y. Cty.

---

[12]    The Lien Law defines a "building loan contract" as a "contract whereby a party thereto, in this chapter termed 'lender,' *in consideration of the express promise of an owner to make an improvement upon real property*, agrees to make advances to or for the account of such owner to be secured by a mortgage on such real property, whether such advances represent moneys to be loaned or represent moneys to be paid..." Lien Law § 2(13). The purpose of the Project Facility was to pay for Borrower's costs in connection with the Project "*other than*" the costs of improvements as defined in the Lien Law. *See* Hamdi Aff. ¶17; FAVC ¶ 39.

18

Apr. 27, 2011) (absent some "express promise to use the loaned funds to improve the premises," Section 22 does not apply).  Here, the Project Facility Agreement does not contain an express promise to use loan proceeds to pay for improvements.  Rather the Project Facility Agreement recites that:

> [Borrower] has requested that Financiers provide a project facility of up to Eleven Million Eight Hundred Eight-Seven Thousand One Hundred Three Dollars 84/100 ($11,887,103.84) (the "Project Facility") to finance certain costs associated with the Project (as such term is hereinafter defined) ***other than Costs of Improvements (as such term is hereinafter defined)***...

Ex. 71 at 1 (Recitals).[13]  Thus, the Project Facility is not a building loan contract and not subject to requirements of Lien Law Section 22.

Unlike the Project Facility Agreement, the Building Facility Agreement *is* a building loan contract under Lien Law, and thus it achieves priority over the later-filed mechanics because the requirements for Lien Law Section 22 were fully satisfied.[14]  It is undisputed that the Building Facility predates all of the mechanic's liens at issue in the case.  *See* Hamdi Aff. ¶¶ 4, 53; Ex. 58. The Building Facility was duly filed in the County Clerk's office—a fact that the Non-Defaulting Lienholder Defendants do not contest.  *See*, *e.g.*, Hamdi Aff. ¶¶ 7-8; Exs. 61-62.  The Non-Defaulting Lienholder Defendants also do not dispute that the filed Building Facility contained an affidavit, verified by Borrower's principal, setting forth the "consideration," "the other expenses,"

---

[13]     Cost of Improvements is defined to mean "'Costs of Improvements' as such term is defined in Paragraph 5 of Section 2 of Article 1 of the Lien Law."  Ex. 58 §1.1 at 7; Ex. 61 §1.1 at 7.

[14]     Section 22 of the Lien Law provides in relevant part that a building loan contract must "be in writing and duly acknowledged, and must contain a true statement under oath, verified by the borrower, showing the consideration paid, or to be paid, for the loan described therein, and showing all other expenses, if any, incurred, or to be incurred in connection therewith, and the net sum available to the borrower for the improvement…"

19

and "[t]he net sum available" to the borrower for the improvement. *See* Ex. 61 (pdf pp. 171-172).

Moreover, the Building Facility Agreement:

> contain[s] a covenant by the mortgagor that he will receive the advances secured thereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of improvement, and that he will apply the same first to the payment of the cost of improvement before using any part of the total of the same for any other purpose...

Lien Law §13(3); *see also*, Ex. 58 § 13.1(ee), at 78-79; Ex. 61 § 13.1(ee), at 78-79. Thus, the Building Facility Agreement meets the prerequisites of the Lien Law to be superior to the subsequently filed mechanic's liens.[15]

Moreover, certain of the Non-Defaulting Lienholder Defendants claim that the Building Facility Agreement does not comply with the Lien Law because the Lien Law Affidavit is false and that there were material modifications that were not recorded.[16] These allegations must fail because these affirmatives defenses are stated in conclusory, one-sentence statements. There is no factual information of any material non-disclosure or misinformation contained in the Lien Law Affidavit that is alleged to support these conclusory statements. There is no explanation of how these Non-Defaulting Lienholder Defendants believe the Lien Law Affidavit is false or what the unrecorded "material modifications" are. Given the conclusory assertions are totally bereft of factual support, these affirmative defenses fail as a matter of law. *170 W. Vill. Assocs.*, 56 A.D.3d

---

[15] As noted below, all disbursements under the Building Facility Agreement (and, for that matter, the Project Facility Agreement) occurred *prior* to the filing of any mechanic's liens at issue by the Non-Defaulting Lienholder Defendants. *See infra* Sec.II.B.

[16] Gilbane, PNA, and S&E asserted that the Lien Law Affidavit was false and that there were material modifications that were not recorded. *See* Exs. 29-32, 34.

20

at 372-73; *Robbins*, 229 A.D.2d at 358; *Kingman v. ZMoore Ltd.*, No. 652564/2016, 2018 N.Y. Misc. LEXIS 3590, at *27 (Sup. Ct. N.Y. Cty. Aug. 16, 2018) ("Affirmative defenses plead as conclusions of law that are not supported by any facts are legally insufficient.").

### 3.  The Defense of Unclean Hands Fails

The defense of "unclean hands," asserted by Men of Steel and each Non-Defaulting Lienholder Defendant other than S&E and Ismael, is generally not available in a mortgage foreclosure action. *Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112, 122, (1969) ("[t]he doctrine of 'unclean hands' [does not] prevent [] defendants from proceeding with the foreclosure."). Plaintiff's exercise of its contractual remedies cannot constitute an unconscionable action. *See Bank of Smithtown v. 264 W. 124 LLC*, 105 A.D.3d 468, 469 (1st Dep't 2013) ("plaintiff was under no obligation to modify ... and there is nothing immoral or unconscionable about its decision to proceed with foreclosure"). Moreover, no fraudulent statement, immoral or other culpable conduct on the part of the Plaintiff constituting "unclean hands" is alleged to have occurred.

### 4.  Conclusory Assertions of Waiver, Estoppel and Release Fail

The Non-Defaulting Lienholder Defendants' and Men of Steel's conclusory and unsupported assertions that Plaintiff's claims are barred by waiver, estoppel and release should be dismissed.[17] *Mfrs. Hanover Tr. Co. v. Restivo*, 169 A.D.2d 413, 414 (1st Dep't 1991) (summary

---

[17]  Each of the Non-Defaulting Lienholder Defendants other than PNA and S&E assert the affirmative defense of waiver. *See* Exs. 29-30, 33. Each of the Non-Defaulting Lienholder Defendants other than S&E assert the affirmative defense of estoppel. USCR, Ismael, CRS and Trade Off Plus each assert the affirmative defense of release. Men of Steel asserts the affirmative defenses of waiver, estoppel and release. *See generally,* Exs. 29-37, 46-47. Additionally, Ismael asserts the related affirmative defense of laches (Ex. 36 ¶10, at 2), which also fails because "laches is not available in a foreclosure action brought within the period of limitations." *N.Y.S. Mortg. Loan Enf't & Admin Corp. v. N. Town Phase II Houses, Inc.*, 191 A.D.2d 151, 152 (1st Dep't 1993).

21

judgment granted where affirmative defenses based only on conclusory statements), *appeal dismissed*, 77 N.Y.2d 989 (1991); *Bentivegna v. Meenan Oil Co.*, 126 A.D.2d 506, 508 (2d Dep't 1987) ("affirmative defenses ... [which] simply allege ... that the plaintiff's claim is . . . barred by 'waiver and estoppel' ... are 'totally bereft of factual data [and] are fatally deficient'"); *Glenesk v. Guidance Realty Corp.*, 36 A.D.2d 852, 853 (2d Dep't 1971) (affirmative defenses of waiver and estoppel "which merely plead conclusions of law without supporting facts are insufficient.").

In addition, the claims of waiver fail because the Non-Defaulting Lienholder Defendants have not and cannot explain how Plaintiff apparently waived its right to commence this foreclosure action. No other action was commenced by Plaintiff relating to the subject mortgages prior to the filing of this action. Moreover, the Non-Defaulting Lienholder Defendants lack the ability to assert a waiver of any provision under the Facility Documents because they are not third-party beneficiaries of those documents. Ex. 58 § 21.6, at 100-102; Ex. 71, art. 21, at 12. In any event, any waiver of the Plaintiff's rights and remedies must be in writing in order to be effective, and no such written waiver is alleged. *See* Ex. 59 § 3.8, at 19; Ex. 72 § 3.8, at 19. Similarly, there is no credible claim that Plaintiffs released the claims at issue in this litigation. *170 W. Vill. Assocs.*, 56 A.D.3d at 372-373; *Robbins*, 229 A.D.2d at 357-58; *Kirschenbaum v. Wells Fargo Bank, N.A.*, No. 151236/2019, 2019 N.Y. Misc. LEXIS 5247, at *11-12 (Sup. Ct. N.Y. Cty. Sept. 30, 2019) ("[t]he dismissal of an affirmative defense is warranted where only conclusions of law are pleaded without supporting facts.").

The Non-Defaulting Lienholder Defendants' affirmative defense of estoppel fails because they have not pled and cannot establish, as they must, that they changed their position in reliance on a promise made by Plaintiff. *Bank of Smithtown*, 105 A.D.3d at 469.

5.    <u>The Generic Allegations of Breach of Contract Are Insufficient</u>

The conclusory and unsubstantiated assertion that "Plaintiff's claims are barred by its own breach of contract [or] other culpable conduct" is insufficient to defeat summary judgment.  Ex. 39 ¶ 232, at 44.[18]  *170 W. Vill. Assocs.*, 56 A.D.3d at 372-73; *Robbins*, 229 A.D.2d at 358; *Kingman*, 2018 N.Y. Misc. LEXIS 3590, at *26-27.  Moreover, none of the Non-Defaulting Lienholder Defendants or Men of Steel are parties to the Facility Agreements, and the Facility Agreements specifically provide that, other than Borrower, "no other person or persons shall have any benefits, rights, or remedies under or by reason of this Agreement...."  Ex. 58 § 21.6, at 100-102; Ex. 71, art. 21, at 12.[19]  The Facility Agreements further provide that "[n]either Administrative Agent nor Financiers shall be deemed to be in privity of contract with any contractor or provider of services to the Project...."  Ex. 58 § 21.6, at 100-102; Ex. 71, art. 21, at 12.  Moreover, the affirmative defenses fail to identify any contractual obligation that was purportedly breached.  *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 181-82 (2011) (holding a party must specify the specific provision of the agreement that was allegedly breached).

The conclusory allegations regarding "culpable conduct" fail because "[t]he concept of apportioning culpable conduct is one related to tort"—not to a mortgage foreclosure action that rests on a breach of contract.  *Fremont Inv. & Loan v. Haley*, No. 135559/2007, 2009 N.Y. Misc. LEXIS 1466, at *16-17 (Sup. Ct. Queens Cty. June 11, 2009) (dismissing defendants' culpable conduct defense because a tort-based affirmative defense is unavailable in a mortgage foreclosure

---

[18]    Each of the Non-Defaulting Lienholder Defendants (other than PNA, Ismael, CRS and Trade Off Plus) and Men of Steel assert an affirmative defense of breach of contract.  *See* Exs. 29-30, 33-35, 46-47.

[19]    None of the Non-Defaulting Lienholder Defendants or Men of Steel assert that they were intended third-party beneficiaries of the Facility Documents.  *See* Exs. 29-37, 46-47.

23

action sounding in breach of contract) (citing *Pilewski v. Solymosy*, 266 A.D.2d 83, 85 (1st Dep't 1999) (concluding that defendant cannot transform a breach of contract action into one which sounds in tort "merely by invoking the language of tort....")).

### 6.  Failure to Mitigate Damages Is Not an Available Defense

The assertion that the foreclosure claim is barred by a failure to mitigate damages ignores that that defense is unavailable in a foreclosure action.[20]  *See Marine Midland Bank, N.A. v. Virginia Woods Ltd.*, 201 A.D.2d 625, 626 (2d Dep't 1994) ("[t]he bank had no duty to mitigate damages" in foreclosure action); *U.S. Bank N.A. v. McPherson,* No. 30564/2010, 2012 N.Y. Misc. LEXIS 1994, at *11-12 (Sup. Ct. Queens Cty. Apr. 24, 2012).

### 7.  Men of Steel Does Not Have a Valid Lien Against the Property

Men of Steel's various defenses fails for the independent reason that it did not actually record any mechanic's lien against the Property (Block 126, Lot 8).  The mechanic's lien filed by Men of Steel shows that its mechanic's lien is not recorded against the Property (Block 126, Lot 8), but rather the neighboring property (Block 126, ***Lot 9***).  Ex. 47 (Exhibit B, Doc. No. 200 ¶ 10, at 1) ("The property subject to the lien is in the Borough of Manhattan and County of New York, State of New York; is located at 45 Park Place; and has been assigned Borough 1, Block 126, Lot 9").  Given this fundamental defect, Men of Steel does not have a valid lien on the Property.

### B.  The Counterclaims Fail Because Plaintiff Complied with Lien Law Section 22

Each of the Non-Defaulting Lienholder Defendants included a cross-claim and counterclaim for mechanic's lien foreclosure, which should be dismissed against Plaintiff because

---

[20]  Gilbane, Transcontinental, CRS and Trade Off Plus assert the affirmative defense of failure to mitigate. *See* Exs. 29-30, 35, 37.

24

the liens of the Building Facility and Project Facility have priority over these subordinate mechanic's liens. As discussed above, all the necessary formalities under the Lien Law were followed with respect to the Building Facility.[21]

First, Lien Law § 13(1) provides that a mechanic's lien "shall have priority over a conveyance, mortgage, judgment or other claim against such property not recorded, docketed, or filed at the time of the filing of the notice of such lien. . . ." Lien Law § 13(1). The Building Facility Mortgage was duly recorded against the Property on May 25, 2016, over *three years* prior to the filing of any of the mechanic's liens. Hamdi Aff. ¶ 5; Ex. 59. Second, Lien Law § 13(2) stipulates that building loan "advances made before the filing of such notice of lien, shall have priority over the lien," provided that inter alia the building loan contract is filed as required by Lien Law § 22. Lien Law § 13(2). Here, all disbursements under the Building Facility were made *before* any of the lienor defendants filed their liens. Hamdi Aff. ¶¶ 29-30. Moreover there is no credible dispute that the building loan contract fulfils the requirements of Lien Law Section 22. *See supra* Sec.II.A.2. Third, Lien Law § 13(3) stipulates that every building loan mortgage shall contain a covenant by the mortgagor that he will:

> receive the advances secured thereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of improvement, and that he will apply the same first to the payment of the cost of improvement before using any part of the total of the same for any other purpose….

Lien Law § 13(3). The Building Facility Agreement contains this language in Section 13.1(ee), where Borrower covenanted that it shall "receive all Transaction proceeds, as a trust fund in

---

[21] The Project Facility is not a "building loan contract" and this is entitled to priority over all of the mechanic's liens because it was recorded before any mechanic's liens. *See supra* at Statement of Facts.A.

25

accordance with the provisions of the Lien Law to be applied first for the purpose of paying the Costs of Improvements, and will apply all such Transaction proceeds first to the payment of the Costs of Improvements before using any part of such Transaction proceeds for any other purpose." Ex. 58 § 13.1(ee), at 78.

There is no basis for Plaintiff to be included as a counterclaim defendant in connection with the mechanic's lien foreclosure claims because the Building Facility Mortgage and Project Facility Mortgage are superior to the liens filed by the Non-Defaulting Lienholder Defendants. *See* Lien Law § 44(5) (to name a mortgage holder in mechanic's lien action it must be recorded later in time than the mechanic's lien); *Brown v. Danforth*, 37 A.D. 321, 322–23 (4th Dep't 1899) ("[i]t is to be noticed that the only persons who can be made parties are those who are subsequent [e]ncumbrancers by mortgage and otherwise."). Thus, the mechanic's liens foreclosure counterclaims against Plaintiff should be dismissed.

## III.    THE NON-DEFAULTING LIENHOLDER DEFENDANTS' THIRD-PARTY CLAIMS AND CROSS-CLAIMS SHOULD BE SEVERED

Each of the Non-Defaulting Lienholder Defendants have asserted cross-claims against other co-defendants and some of those defendants have also sought to assert third-party claims, and those claims should be severed. Pursuant to CPLR 603, "[i]n furtherance of convenience or to avoid prejudice the court may order a severance of claims, or may order a separate trial of any claim, or of any separate issue." Courts have consistently severed third-party claims and cross-claims asserted in foreclosure actions where, as here, such claims do not contest the validity of the mortgage or the lender's right to foreclose. *See, e.g.*, *Garrison Com. Funding IV REO LLC v. NMP-Grp. LLC*, No. 650087/2010, 2011 N.Y. Misc. LEXIS 485, at *24-26 (Sup. Ct. N.Y. Cty. Feb. 17, 2011) (severing mechanic's lienor's cross-claims); *Banco Popular N.A. v. 333-345 Green*

26

*LLC*, No. 6781/10, 2012 N.Y. Misc. LEXIS 301, at *23-26 (Sup. Ct. Kings Cty. Jan. 17, 2012) (severing mechanic's lienor's cross-claim); *Signature Bank v. 1775 E. 17th St., LLC*, No. 12299/10, 2011 N.Y. Misc. LEXIS 4286, at *36-38 (Sup. Ct. Kings Cty. Sept. 8, 2011) (severing cross-claims against borrower).

The Non-Defaulting Lienholder Defendants' claims to foreclose upon the Borrower's fee interest and all claims seeking money damages from Borrower, Borrower's affiliates, or one of the contractors at the Project, must be severed because they do not bear upon Plaintiff's entitlement to summary judgment as against the Non-Defaulting Lienholder Defendants.[22]  These third-party claims and cross-claims do not affect Plaintiff's entitlement to foreclose on the Mortgages, as they do not contest the validity of the Mortgages or the existence of Borrower's defaults thereunder, they have no bearing on Plaintiff's entitlement to the relief sought, and they involve no overlapping legal or factual issues with Plaintiff's claims.

## IV. THE COURT SHOULD ENTER JUDGMENT UPON DEFAULT AGAINST THE DEFAULTING DEFENDANTS AND APPOINT A REFEREE TO COMPUTE

Default judgment should be entered against the Defaulting Defendants, the Borrower, the Guarantors, All-City Metal Inc., ULE Group Corp. d/b/a United Lighting Electrical Corp., New York State Department of Taxation and Finance, and the New York City Environmental Control Board.  CPLR 3215(a) provides that "[w]hen a defendant has failed to appear [or] plead...the plaintiff may seek a default judgment against him."  As detailed more fully in the accompanying affirmation of Matthew Parrott, the record shows that each of the Defaulting Defendants was

---

[22]    Additionally, the Court should order that the claims and causes of action asserted by Plaintiff against Peri in the First Amended Verified Complaint be discontinued without prejudice pursuant to CPLR 3217(b).  On September 25, 2020, Peri filed with the New York County Clerk a release of lien against the Mortgaged Property discharging the lien it had filed against the Mortgaged Property.  Parrott Aff. ¶51; Ex. 40.

27

validly served and that the time to both appear in this action and respond to the Complaint expired months ago. Parrott Aff. ¶¶ 13, 15-17, 23, 25-26, 27, 29, 33, 52-56; *see Manhattan Sav. Bank v. Kohen,* 231 A.D.2d 499, 500 (2d Dep't 1996) (affidavit of service attesting to service is *prima facie* evidence of proper service), *appeal denied*, 91 N.Y.2d 802 (1997).[23]

The failure of the Defaulting Defendants to respond to the Complaint, along with the fact that Plaintiff has a meritorious claim in this action, entitles Plaintiff to entry of a default judgment against the Defaulting Defendants. *See People ex rel Rosenquest v. Donnelly*, 168 A.D. 500, 500-02 (1st Dep't 1915) (plaintiff was entitled to have a judgment of foreclosure and sale entered when "[t]hree of the defendants appeared [in the mortgage foreclosure action], but none of them answered, so all the defendants were in default"); *JPMorgan Chase Bank NA v Mendoza*, No. 12885/2008, 2015 N.Y. Misc. LEXIS 3460, at *4-6 (Sup. Ct. Queens Cty. Sept. 15, 2015) (granting lender default judgment against borrower where the borrower had failed to answer the summons and complaint and had failed to provide a meritorious defense or an excuse for failing to answer); *see also Simmons First Nat'l Bank v. Mandracchia,* 248 A.D.2d 375, 376 (2d Dep't 1998) (affirming denial of the borrower's motion to vacate default judgment of foreclosure). Pursuant to CPLR 3215(a) and RPAPL 1321, Plaintiff is entitled to a judgment against the Defaulting Defendants for all of the relief requested in the Complaint, including, but not limited to a judgment of foreclosure and sale, as a matter of law.

Accordingly, the Court may compute the amount due or, in the alternative, direct a Referee to compute the amount due. *See, e.g.*, RPAPL 1321; *1855 E. Tremont Corp.*, 102 A.D.3d at 568; *Excel Cap. Grp.*, 165 A.D.3d at 1235.

---

[23]     Notice of this motion is being given to the Defaulting Defendants. *See* Parrott Aff. ¶ 57.

Case 01-01139-AMC    Doc -14    Filed 07/08/21    Page 38 of 43

## V. THE "JOHN DOE" DEFENDANTS SHOULD BE DELETED FROM THE CAPTION

The caption of this action should properly be amended to delete the names of the "John Doe" defendants.  To the extent any parties have acquired or recorded interests in the Property, or subordinate liens upon the Property, after the filing of the Notice of Pendency in this action, such parties are not indispensable parties and are bound by this foreclosure action.  *See* CPLR 6501 ("A person whose conveyance or incumbrance is recorded after the filing of the notice is bound by all proceedings taken in the action after such filing to the same extent as a party.").

Accordingly, the caption should be amended to delete therefrom the names of said "John Doe #1" through "John Doe #100," without prejudice to any of the proceedings heretofore had herein or to be had herein.

## VI. COMPLETING DISCOVERY IS NOT A PREREQUISITE TO GRANTING SUMMARY JUDGMENT

Gilbane purported to serve documents requests and a deposition notice on Plaintiff (the "Discovery Requests"), but they were invalid and not validly served because disclosure was automatically stayed at the time those Discovery Requests were served pursuant to CPLR 3214(b) due to Museum Owner's Motion to Dismiss pursuant to CPLR 3211.  Parrott Aff. ¶¶ 74-78.  The Museum Owner's Motion to Dismiss was filed May 22, 2020, and the Discovery Requests were served on Plaintiff on or about August 27, 2020.  *See* Parrott Aff. ¶ 36; Doc. No. 73.[24]  Gilbane's attempt to take discovery does not prevent the Court from granting summary judgment because it is well-settled that "[t]he mere fact that disclosure is incomplete does not preclude the grant of

---

[24]    This motion for summary judgment pursuant to CPLR 3212 also stays disclosure.  Parrott Aff. ¶ 79; *see* CPLR 3214(b).

29

summary judgment." *Doherty v. City of N.Y.*, 16 A.D.3d 124, 125 (1st Dep't 2005); *see also Chem. Bank v. PIC Motors Corp.*, 58 N.Y.2d 1023, 1026 (1983) ("that defendants had not completed discovery did not interdict the grant of summary judgment"). Indeed, "the mere hope that further discovery would yield evidence of a triable issue of fact is not a basis for denying summary judgment." *JP Morgan Chase Bank, N.A. v. Agnello*, 62 A.D.3d 662, 663-64 (2d Dep't 2009) (rejecting argument in mortgage foreclosure case that "motion for summary judgment should have been denied pending further discovery"); *see 2386 Creston Ave. Realty, LLC v. M-P-M Mgmt. Corp.*, 58 A.D.3d 158, 162 (1st Dep't 2008) ("claimed need for discovery unsupported by facts suggesting it might lead to relevant evidence, which amounts to 'mere hope,' is insufficient to forestall summary judgment"), *appeal denied*, 11 N.Y.3d 716 (2009). Discovery will not yield evidence of a triable issue of fact regarding the essential elements of the Plaintiff's foreclosure claim, each of which have been conclusively established by the Plaintiff: the existence of the Building Facility, the Project Facility, and the accompanying notes and mortgages for both the Building Facility and the Project Facility; the Borrower's defaults, and the ability of Plaintiff to foreclose on the Mortgaged Property upon those defaults.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff's Motion should be granted in its entirety and the Court should award such other and further relief as it deems just and necessary.

Dated:    New York, New York
          January 22, 2021

FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP

By: _____

          Matthew D. Parrott
          Justin J. Santolli
          Ben Paull
One New York Plaza
New York, New York 10004-1980
(212) 859-8000

m.parrott@friedfrank.com
justin.santolli@friedfrank.com
ben.paull@friedfrank.com

*Attorneys for Plaintiff Malayan Banking Berhad,
New York Branch, as Administrative Agent for
Malayan Banking Berhad, London Branch, Intesa
Sanpaolo S.P.A., New York Branch, Warba Bank
K.S.C.P., and 45 Park Place Investments, LLC*

31

22301444

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

MALAYAN BANKING BERHAD, NEW YORK
BRANCH, as Administrative Agent for MALAYAN
BANKING BERHAD, LONDON BRANCH, INTESA
SANPAOLO S.P.A., NEW YORK BRANCH, WARBA
BANK K.S.C.P., and 45 PARK PLACE INVESTMENTS,
LLC,

                              Plaintiff,

          — against —

PARK PLACE DEVELOPMENT PRIMARY LLC, PARK
PLACE PARTNERS DEVELOPMENT LLC, 45 PARK
PLACE PARTNERS, LLC, SOHO PROPERTIES
GENERAL PARTNER, LLC, SHARIF EL-GAMAL,
STATE OF NEW YORK CIVIL RECOVERIES
BUREAU, GILBANE RESIDENTIAL CONSTRUCTION
LLC, US CRANE & RIGGING LLC, CONSTRUCTION
REALTY SAFETY GROUP INC., TRADE OFF PLUS,
LLC, ALL-CITY METAL INC., PERMASTEELISA
NORTH AMERICA CORP., TRANSCONTINENTAL
STEEL CORP., ISMAEL LEYVA ARCHITECT, P.C.,
PERI FORMWORK SYSTEMS, INC., ULE GROUP
CORP. D/B/A UNITED LIGHTING ELECTRICAL
CORP., S&E BRIDGE & SCAFFOLD LLC, NEW YORK
CITY ENVIRONMENTAL CONTROL BOARD, NEW
YORK STATE DEPARTMENT OF TAXATION AND
FINANCE, and JOHN DOES 1-100, the last one hundred
names being fictitious and unknown to plaintiff, the
persons or parties intended being the tenants, occupants,
persons or corporations, if any, having or claiming an
interest in or lien upon the premises described in the
complaint,

                              Defendants.

---

PERMASTEELISA NORTH AMERICA CORP.,

          Defendant and Cross-Claim/Counterclaim Plaintiff,

          — against —

SOHO PROPERTIES INC.,

Additional Defendant on Cross-Claims and Counterclaim.

---

Mot. Seq. 004

**AFFIDAVIT OF SERVICE**

Index No. 850083/2020

Assigned to Justice
Francis A. Kahn III
IAS Part 14M

GILBANE RESIDENTIAL CONSTRUCTION LLC,

     Defendant and Cross-Claim/Counterclaim Plaintiff,

          — against —

THE PACE COMPANIES NEW YORK, INC., PEAK
MECHANICAL SOLUTIONS, INC., MEN OF STEEL
REBAR FABRICATORS, LLC, and GOTHAM
DRYWALL, INC.

     Additional Defendants on Cross-Claims.

---

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | ss.: |
| COUNTY OF NEW YORK | ) |

James Chael, being duly sworn, deposes and says:

1.    I am over 18 years of age, am not a party to this action and reside in New York County.

2.    On January 22, 2021, I served complete and accurate copies of the Notice of Motion (Mot. Seq. 004), the Affirmation of Regularity of Matthew D. Parrott dated January 22, 2021 with attached exhibits, the affidavit of Ahmad Hamdi Bin Abdullah sworn to on January 20, 2021 with attached exhibits, and the accompanying Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment, Default Judgment, Dismissal of Counterclaims, Severance of Cross-Claims and Related Relief dated January 22, 2021, in this action, upon:

    (1)    45 Park Place Partners, LLC, 31 West 27th Street, 9th Floor, New York, NY 10001;

    (2)    Soho Properties General Partner, LLC, 31 West 27th Street, 9th Floor, New York, NY 10001;

    (3)    Sharif El-Gamal, c/o 45 Park Place Partners, LLC, 31 West 27th Street, 9th Floor, New York, NY 10001;

    (4)    All-City Metal, Inc., 54-35 46th Street, Maspeth, NY 11378;

-2-

    (5)      ULE Group Corp. d/b/a United Lighting Electrical Corp., 60 Hoffman Ave., Hauppauge, NY 11788;

    (6)      New York City Environmental Control Board, 66 John Street, 10th Floor, New York, NY 10038; and

    (7)      New York State Department of Taxation and Finance, Office of Counsel, Building 9, W A Harriman Campus, Albany, NY 12227

by depositing same securely in a properly addressed wrapper into the custody of FedEx, an

overnight delivery service, for overnight delivery, prior to the latest time designated by that service

for overnight delivery.

_____
James Chael

Sworn to before me this
22nd day of January 2021

_____
Notary Public

**BRYANT TAYLOR**
Notary Public, State of New York
No. 01TA6123452
Qualified in New York County
Commission Expires March 7, 2021

-3-