## **EXHIBIT B**

**DEL GENIO DECLARATION**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>**TPC GROUP INC.**, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-10493<br><br>Joint Administration Requested |

**DECLARATION OF ROBERT A. DEL GENIO IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING REJECTION OF STEAM SALES CONTRACT WITH AIR LIQUIDE LARGE INDUSTRIES U.S. LP EFFECTIVE AS OF THE PETITION DATE**

I, Robert A. Del Genio, pursuant to section 1746 of title 28 of the United States Code, hereby declare that the following is true to the best of my knowledge, information, and belief:

**Background**

1. I am a Senior Managing Director for Corporate Finance and Restructuring at FTI Consulting, Inc. ("**FTI**"). On June 1, 2022 (the "**Petition Date**"), TPC Holdings Inc. ("**Holdings**") and certain of its direct and indirect subsidiaries (collectively with Holdings, the "**Debtors**") commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). Together, the Debtors are a leading producer, marketer, and value-added processor of intermediate and specialty chemicals, fuel derivatives, and petroleum byproducts.

2. FTI has been serving as the Debtors' financial advisor since November 1, 2021, which is an engagement I lead. By virtue of this engagement, I am knowledgeable about and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: TPC Group Inc. (3618); TPC Holdings, Inc. (7380); TPC Group LLC (8313); Texas Butylene Chemical Corporation (7440); Texas Olefins Domestic International Sales Corporation (4241); TPC Phoenix Fuels LLC (9133); Port Neches Fuels, LLC (1641); and TP Capital Corp. (6248). Each Debtor's corporate headquarters and mailing address is 500 Dallas St., Suite 2000, Houston, Texas 77042.

1

familiar with the Debtors' businesses and financial affairs. I submit this declaration (this "**Declaration**") in support of *Debtors' Motion for Entry of an Order Approving Rejection of Steam Sales Contract with Air Liquide Large Industries U.S. LP Effective as of the Petition Date* (the "**Motion**").[2]  I am authorized to submit this Declaration on behalf of the Debtors.

## Facts Relevant to Motion

3.  In connection with their contingency planning, the Debtors undertook an analysis of certain of their executory contracts, including the steam supply and sales agreement between TPC Group LLC ("**TPC**") and Air Liquide Large Industries U.S. LP ("**Air Liquide**"), dated January 1, 2010, as amended on October 1, 2011 and later on July 1, 2017, and as may be amended, modified, or supplemented from time to time (the "**Steam Sales Contract**").  Based on my review of the terms of the Steam Sales Contract and discussions with certain of the Debtors' officers and advisors, I believe that the Steam Sales Contract is unnecessary and burdensome to the Debtors' estates and should be rejected immediately.

4.  On January 1, 2010, Texas Petrochemicals LLC (the successor in interest to TPC) entered into the Steam Sales with Air Liquide.  Under the Steam Sales Agreement, Air Liquide agreed to sell and TPC agreed to buy all of TPC's requirements for steam that was not otherwise produced by TPC.  Specifically, under the Steam Sales Contract, TPC purchases steam supplied by Air Liquide, subject to a "Base Steam Requirement/BSR"—*i.e.,* TPC's base requirements for steam over and above the steam produced by TPC using boilers 8 and 9 at TPC's PNO Facility in Port Neches, Texas.  The Steam Sales Contract subjects TPC to a Minimum Steam Purchase Obligation of steam from Air Liquide's steam cogeneration facility in Port Neches, Texas.  The price for the steam purchased by TPC is calculated through a steam price formula provided in the

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Steam Sales Contract. The Steam Sales Contract also provides terms for the transportation of steam purchased to the PNO Facility from Air Liquide's Port Neches pipelines.

5. However, on November 27, 2019, an explosion occurred at TPC's plant in Port Neches, Texas, the recipient of steam under the Steam Sales Contract. Since that time, the chemical processing facility TPC was operating at the PNO Facility has been shut down and has been repurposed to function solely as a marine storage and shipping terminal. Since then, no steam has been generated at the PNO Facility's boilers and the Debtors no longer have a need or use for steam purchased from Air Liquide pursuant to the Steam Sales Contract. Notwithstanding the foregoing, the Debtors continue to incur costs due to the Steam Sales Contract, despite not receiving any material benefit.

6. Based on the foregoing, I believe that rejecting Steam Sales Contract is a sound exercise of the Debtors' business judgment and in the best interests of the Debtors' estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 1, 2022
    New York, New York

*/s/ Robert A. Del. Genio*
Robert A. Del Genio