**ORIGINAL**

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

FILED

2001 APR 12 PM 2: 34

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| W.R. GRACE & CO., et al., | ) | Case No. 01-01139 (JJF) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) | **Objection Deadline:  TBD** |
|  | ) | **Hearing Date:  TBD** |

## NOTICE OF MOTION

TO:    Parties in Interest

PLEASE TAKE NOTICE that Chase Manhattan Bank has today filed the attached

**Expedited Motion Pursuant to Local Bankruptcy Rule 9013-2(e), Bankruptcy Rule 9023 And
Bankruptcy Rule 8002(b)(2) For Reconsideration And Alteration or Amendment of The First
Day Order Granting Debtors Authority for the Provisional Payment of Prepetition Claims of
Domestic Essential Trade Creditors and to Pay or Honor Prepetition Obligations to Foreign
Vendors(the "Motion")** with the United States Bankruptcy Court for the District of Delaware (the
"Bankruptcy Court").

PLEASE TAKE FURTHER NOTICE that, pursuant to Local Bankruptcy Rule 9013-
2(e), Chase is seeking expedited consideration of the relief requested in the Motion.

RLF1-2295240-2

Dated: April 12, 2001
      Wilmington, Delaware

                                      Mark D. Collins (#2981)
                                      Deborah E. Spivack (#3220)
     RICHARDS, LAYTON & FINGER, P.A.
     One Rodney Square
     Wilmington, Delaware 19899
     (302) 658-6541

     - and -

     Stephen H. Case
     Nancy L. Lazar
     David D. Tawil
     Davis Polk & Wardwell
     450 Lexington Avenue
     New York, New York 10017
     Telephone: (212) 450-4000
     Telecopier: (212) 450-4800

     Co-Counsel for the Chase Manhattan Bank

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No. 01-01139 (JJF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | **Objection Deadline: TBD** |
| | ) | **Hearing Date: TBD** |

## EXPEDITED MOTION PURSUANT TO LOCAL BANKRUPTCY RULE 9013-2(E), BANKRUPTCY RULE 9023 AND BANKRUPTCY RULE 8002(B)(2) FOR RECONSIDERATION AND ALTERATION OR AMENDMENT OF THE FIRST DAY ORDER GRANTING DEBTORS AUTHORITY FOR THE PROVISIONAL PAYMENT OF PREPETITION CLAIMS OF DOMESTIC ESSENTIAL TRADE CREDITORS AND TO PAY OR HONOR PREPETITION OBLIGATIONS TO FOREIGN VENDORS

The Chase Manhattan Bank, as agent for a syndicate of prepetition lenders

to the above-captioned debtors and debtors in possession in these cases ("Chase"),[1]

hereby moves this Court for reconsideration and alteration or amendment, pursuant to

Local Rule of Bankruptcy Procedure 9013-2(e) and Rules 8002(b)(2) and 9023 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), of the First Day Order

Granting Debtors Authority for the Provisional Payment of Prepetition Claims of

Domestic Essential Trade Creditors and to Pay or Honor Prepetition Obligations to

Foreign Vendors,[2] dated April 2, 2001 (the "Vendor Order"). Since this motion is filed

---

[1] Chase, as agent, holds an unsecured claim in the approximate amount of $500,000,000 pursuant to that certain credit facility titled the 364-Day Credit Agreement by and among W.R. Grace & Co., W.R. Grace & Co. - Conn, Bank of America, National Trust and Savings Association, as documentation agent, Chase Manhattan, Inc. as administrative agent on behalf of a syndicate of lenders, and Chase Securities, Inc. as bank manager.

[2] Contrary to the title of the Vendor Order, as set forth in greater detail herein, the Court did not grant the Vendor Motion (defined below). Rather, in the Vendor Order the

pursuant to Bankruptcy Rule 9023, the right of all parties to appeal the Vendor Order

automatically runs from the entry of an order disposing of this motion. Fed.R. Bankr. P.

8002(b)(2). In support of this motion, Chase respectfully represents as follows:

1.      On April 2, 2001 (the "Petition Date"), the above-captioned

debtors and debtors in possession (the "Debtors") filed their voluntary petitions for relief

under chapter 11 of the United States Bankruptcy Code.

2.      On the Petition Date, the Debtors filed numerous first-day motions,

including the Motion of the Debtors for Authority to Provisionally Pay in the Ordinary

Course of Business Prepetition Claims of Domestic Essential Trade Creditors and to Pay

or Honor Prepetition Obligations to Foreign Vendors (the "Vendor Motion"). By the

Vendor Motion, the Debtors sought, inter alia, entry of an order under section 105(a) of

the Bankruptcy Code authorizing the provisional payment in the ordinary course of

business of certain prepetition claims up to an aggregate cap of $4,500,000 (the "Trade

Claims Cap") of domestic trade creditors deemed by the Debtors to be essential to their

ongoing operations (the "Essential Trade Vendors").[3] The relief was requested pursuant

to section 105 of the Bankruptcy Code and based on the "necessity of payment" doctrine,

a doctrine which permits payment of certain prepetition claims "where such payment is

essential to the continued operation of the debtor." In re Ionosphere Clubs, Inc., 98 B.R.

_____

Court expressly denied the Vendor Motion and granted authority that is far more expansive
than was ever even contemplated by the Vendor Motion.

[3] The Debtors also sought and obtained from the Bankruptcy Court an order (i)
authorizing, but not directing, the Debtors to pay or honor prepetition obligations to foreign
vendors; and (ii) authorizing and directing banks to honor, unless otherwise directed by the
Debtors, any and all checks drawn by the Debtors to pay prepetition obligations owing to
foreign vendors.

174, 176 (Bankr. S.D.N.Y. 1989). See also In re Just for Feet, Inc., 224 B.R. 821 (D.Del. 1999). The express intent of the Vendor Motion was to provide the Debtors with the ability to incentivize those vendors who are critical to the Debtors' ongoing business to continue to supply critical goods and services to the Debtors under customary trade terms.

3.  To satisfy this limited purpose, the Debtors state in the Vendor Motion that the relief requested was narrowly tailored to meet the unique business needs of the Debtors in a manner that was consistent with the Bankruptcy Code and applicable case law. For instance, according to the Debtors, the Trade Claims Cap was determined after careful analysis to be the minimum amount necessary to pay Essential Trade Vendors to continue the supply of critical goods and services. The Trade Claims Cap is a fraction (13%) of the amount owed for all accounts payable to all of the Debtors' vendors, who are owed collectively approximately $34,000,000. Moreover, in the Vendor Motion the Debtors carefully defined the criteria for determining which of their vendors were "Essential Vendors" and, therefore, entitled to the extraordinary treatment sought in the Vendor Motion.[4]

4.  At the first day hearing held in these cases on the Petition Date, the Debtors presented the Vendor Motion to the Court and sought entry of an order consistent

---

[4]Specifically, the Debtors stated that they would consider the following factors before considering paying the prepetition claims of any vendor: (i) whether the goods or services the creditor provides can be replaced, (b) whether failure to pay prepetition trade claims will require the Debtors to incur higher costs for goods or services postpetition, and (c) whether failure to pay prepetition trade claims will cause the Debtors to lose sales or further revenue or profits. The Vendor Motion further requested that if, after receiving the benefits of the relief requested in the Vendor Motion, any Essential Vendor refuses to honor its obligations to the Debtors, the Debtors would have the ability to deem any payments received by the Essential Vendor to be postpetition advances and to reinstate the prepetition claims of the Essential Vendor in full.

with the relief requested in the Vendor Motion. However, at the hearing, the Bankruptcy

Court determined that the Debtors should pay all trade creditors rather than allowing the

Debtors to "pick and choose" which vendors are essential to their continued operations.

See Transcript of April 2, 2001 (pp. 43-49), attached hereto as Exhibit A. The Court

thereafter entered the Vendor Order, attached hereto as Exhibit B, and granted the

Debtors blanket authority to pay all of their trade creditors in the aggregate amount of

$34,300,000, without regard to whether or not such vendors were essential to the Debtors'

businesses and, therefore, entitled to the extraordinary relief afforded to critical parties

under the doctrine of necessity. As a result, the Bankruptcy Court entered an order that

stretched far beyond the purpose or scope of the Vendor Motion. The Bankruptcy Court

unilaterally struck all of the protections built into the Vendor Motion that ensured that the

creditors of these estates would be protected by the fundamental provisions of the

Bankruptcy Code, including, without limitation, the absolute priority rule. The Vendor

Order allows the Debtors to pay in full every trade creditor of the estate ahead of other

types of unsecured creditors, including Chase.

5. Local Bankruptcy Rule 9013-2(e) provides the Bankruptcy Court with

broad authority to reconsider first day orders without shifting the burden to the Movant.[5]

---

[5]Local Bankruptcy Rule 9013-2(e) provides as follows:

Any party in interest may file a motion to reconsider any order entered pursuant to his Rule [applicable to first day motions] ... within thirty [30] days of the entry of such order unless otherwise ordered by the Court. Any such motion for reconsideration shall be given expedited consideration by the Court. The burden of proof with respect to the appropriateness of the order subject to the motion for reconsideration shall remain with the debtor notwithstanding the entry of such order.

Local Bankruptcy Rule 9013-2(e).

Bankruptcy Rule 9023 provides further authority for the relief requested herein. Chase

respectfully submits that the Bankruptcy Court's entry of the Vendor Order was an

inappropriate misuse of the Bankruptcy Court's authority that is not supported by the facts

or record of these cases, the Bankruptcy Code or applicable case law.  For all of these

reasons, Chase respectfully requests that the Court utilize its authority pursuant to Local

Bankruptcy Rule 9013-2(e) and Bankruptcy Rule 9023 to reconsider the Vendor Order

and enter an order vacating the Vendor Order and/or to alter or amend the Vendor Order.[6]

WHEREFORE, Chase respectfully requests that the Court enter an order,

substantially in the form attached hereto as Exhibit C, vacating, altering and amending the

Vendor Order and granting such other and further relief as is appropriate.

Dated:  April 12, 2001
        Wilmington, Delaware

Mark D. Collins (#2981)
Deborah E. Spivack (#3220)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
Wilmington, Delaware 19899
(302) 658-6541

- and -

Stephen H. Case
Nancy L. Lazar
David D. Tawil
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Telecopier:  (212) 450-4800
Co-Counsel for the Chase Manhattan Bank

---

[6] Chase reserves all rights to seek disgorgement of any payments made pursuant to the Vendor Order.  Chase submits that it has preserved these rights by demanding in writing and by phone that the Debtors stop immediately making all payments under the Vendor Order.

EXHIBIT A

131097                                    1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:                        )
                              )
W.R. GRACE & CO., et al.,     )   Case No.01-1139
                              )
            Debtors.          )


United States Federal Courthouse
Courtroom No. 2A
Second Floor
844 North Market Street
Wilmington, Delaware 19801

April 2, 2001
3:00 p.m.


BEFORE:   THE HONORABLE RANDALL J. NEWSOME
          United States Bankruptcy Judge


Transcript of Proceedings


WILCOX & FETZER, LTD.
1330 King Street - Wilmington, Delaware 19801
(302) 655-0477



**WILCOX & FETZER LTD.**
Registered Professional Reporters



RECEIVED

APR 0 5 2001

MARK D. COLLINS

1    reason was having nothing to do with disinterestedness,

2    we might come before the Court to examine that.  If we

3    just file it without that information --

4              THE COURT:  I'm not going to do that.  I've

5    never heard of it, and I am not willing to seal all those

6    retention applications.  They are to be filed as they

7    are.

8              MR. SPRAYREGEN:  Thank you, Your Honor.

9              Your Honor that gets us to item 25 which

10   are the motions of the debtor for authority to

11   provisionally pay in the ordinary course of business

12   certain prepetition claims of domestic essential trade

13   creditors and to pay or to honor certain obligations to

14   foreign vendors.  Your Honor, the foreign vendor

15   application is perhaps the simplest.  It asks for

16   authority to pay $135,000 in foreign claims.  We believe

17   that, if those claims are not paid, it's not clear that

18   they will be subject to Section 362, an automatic stay,

19   although we would assert on that to be the case.  The

20   extra territorial effect of that stay is open to some

21   question, and there is some risk that the debtors assets

22   in foreign jurisdictions and, in fact, non-debtor

23   affiliates of debtors' assets would become subject to

24   seizure as a result of those payments.  We submit the

1    amount is fairly de minimis also and, as a result, ask

2    for that authority to pay that amount of foreign claims.

3            With respect to the domestic claims, we are

4    asking for authority to pay a capped amount of up to

5    $4.5 million which is approximately one percent or really

6    less than one percent.

7            THE COURT:  What's the total amount of your

8    trade creditors at this point?

9            MR. SPRAYREGEN:  Total amount of overall

10   unsecured --

11           THE COURT:  Not unsecured debt.  That would

12   include the asbestos claimants as well.  I'm talking

13   about your trade debt.

14           MR. SPRAYREGEN:  I'm looking for

15   information not including asbestos claims.

16           THE COURT:  Not including the bank.  I

17   guess there are lines of credit that are not secured.

18           MR. SPRAYREGEN:  Unsecured claims that

19   total about $550 million in all.  So that's about one

20   percent.  Just general trade claims are about

21   $35 million, and the overall payables --

22           MS. JONES: How do I justify -- I'm sorry.

23   I didn't mean to interrupt.  Go ahead.  Overall payables

24   are what?

1          MR. SPRAYREGEN:  Not including the bank

2    debt is about $53 million.

3          Your Honor, what we are seeking and our

4    justification for this motion is --

5          THE COURT:  I understand the justification

6    for it.  And apparently this has been a package of first

7    day orders here.  But this is an extraordinary thing you

8    are asking me to do.  Essentially what you are asking me

9    to approve is for the debtor to pick and choose among its

10   prepetition creditors as to who is more equal than

11   others, who is it that they need more than they need

12   other creditors, who they may or may not pay because they

13   don't need them.  And that really completely violates the

14   whole spirit of not paying any of the prepetition

15   creditors until there's a plan and then treating all of

16   your prepetition unsecured creditors, unless they fall

17   within separate classifications that are appropriate,

18   treating them in an equal fashion.  You know, if it were

19   confirmation of plan time and you sought to pay some of

20   these people in full and pay others nothing, that would

21   never fly, and yet that's what you are asking me to do.

22   You are essentially asking me to approve giving the

23   debtor complete and total discretion to pay postpetition

24   preferences.

1    MR. SPRAYREGEN:  Your Honor, as a general

2    proposition, we are actually trying to do something a

3    little bit different.  It is accurate that we are seeking

4    to pay some what we believe is a minimal level of

5    prepetition claims, but there will be a severe price to

6    the general unsecured creditor whose claim was paid and

7    that would require the re-establishment of postpetition

8    credit in essentially the same amount as payment of the

9    claim and essentially a mechanism to reinflate the trade

10   credit.  So if, at a minimum, if somebody was owed a $100

11   and debtor received authority to pay that $100

12   prepetition claim, the debtor would also get a $100 of

13   trade credit from that creditor, so --

14           THE COURT:  I understand how this is going

15   to work.  So it's the same motion -- I heard this motion

16   this morning.  It's a different case.  And I don't think

17   that -- I don't understand why the debtor wants to do

18   this, and I'm not suggesting there's anything nefarious

19   about it, but I am suggesting that, if anybody challenges

20   it, I think it would get bounced so fast it would make

21   all of our heads spin.  I tell you what I did this

22   morning and this has not got to go out on notice anyway.

23   Hand it in.

24           MR. SPRAYREGEN:  Your Honor, this one we



1    would not ask to go out on notice.

2              THE COURT:  How can I do that before I even

3    have a creditors' committee?

4              MR. SPRAYREGEN:  Your Honor, I would submit

5    to the Court this type of motion, the most valuable time

6    for its use in employment, is actually during the next

7    couple of weeks or so.

8              THE COURT:  Let me tell you what I did this

9    morning.  I authorized the debtor to pay off its trade

10   creditors in full or none of them.  If you want to go out

11   and pay off all your trade creditors, I think that

12   probably -- that's much more justifiable than allowing

13   debtors to pick and choose which of their trade creditors

14   they want to pay because I can't justify that on the

15   basis that, well, some of them are important, maybe some

16   of them aren't, because I'm having a real big problem

17   with that.  I realize this is probably something that's

18   been pretty routinely done here.  Maybe it has.  Maybe it

19   hasn't.  But I'm having a real problem with it.

20             MR. SPRAYREGEN:  For the Court's

21   information, and not necessarily dispositive before the

22   Court, it has been entered in number of other cases.

23             THE COURT:  I'm sure it has.

24             MR. SPRAYREGEN:  In fact, there's an



**WILCOX & FETZER LTD.**
Registered Professional Reporters

opinion applying the necessity of payment doctrine.

THE COURT:  The necessity of payment doctrine, I am quite familiar with.  But that pretty much has to do with employees' prepetition wages.  I don't have a problem if they walk.  But you don't get to choose which employees you are going to pay.

MR. SPRAYREGEN:  Your Honor, at least in this district there's a published opinion by District Judge McKelvie in the Just For Feet case on the necessity of payment doctrine being applicable to this type of motion.

THE COURT:  Is it applicable in every single case?  What did Judge McKelvie find, that this was absolutely necessary in every case which seems to be pretty much the practice here?

MR. SPRAYREGEN:  Your Honor, I can, again, tell the Court that I don't believe it's necessary in every case, and Ms. Jones earlier mentioned the Ameriserve case, for example, we did not obtain that type of relief in what case.  I don't know.  I can't tell the Court that it's asked for in every single case.  It is asked for somewhat frequently.  It is more -- the focus many times seems to be on the amounts and the basis for the amounts being paid to certain general unsecured

1  creditors.

2         THE COURT:  Everybody who's in business

3  wants to pay their key creditors going forward.

4  Everybody -- I mean, that's just the way business

5  operates.  You haven't given me anything in terms of

6  proof or in terms of persuasive evidence that would give

7  me any indication that this case is any different than

8  any other case would be, which is we want to pay the

9  people we want to keep happy, and I can understand that.

10  But that's not the way Chapter 11 is supposed to work.

11         MR. SPRAYREGEN:  Your Honor, if I might,

12  while we are maybe turning to some other things, I can

13  confer with the client as to the Court's suggestion on

14  the 34.3 million.

15         THE COURT:  We will go on.  We'll see if we

16  can't make a little more headway.

17         MR. SPRAYREGEN:  Your Honor, item 26 is

18  debtor --

19         THE COURT:  Let's hold for a second.  I'm

20  looking at another order.

21             (Pause.)

22         THE COURT:  What dates do you want to fill

23  in on this order, Ms. Jones, that being the lease

24  rejection order?



EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

In re:                                    )    Chapter 11
                                          )
W. R. GRACE & CO., <u>et al.</u>,[1]         )    Case No. 01-01139 (___)
                                          )    (Jointly Administered)
                                          )
            Debtors.                      )

## ORDER GRANTING DEBTORS AUTHORITY FOR THE PROVISIONAL PAYMENT OF PREPETITION CLAIMS OF DOMESTIC ESSENTIAL TRADE CREDITORS AND TO PAY OR HONOR <u>PREPETITION OBLIGATIONS TO FOREIGN VENDORS</u>

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") seeking entry of an order granting (i) authority, but not

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2]  Capitalized terms not defined herein shall have the same meaning as in the Motion.

direction, to pay prepetition claims of domestic essential trade creditors, (ii) authority, but not

direction, to the Debtors to pay or honor prepetition obligations to foreign vendors and (iii) authority

and direction to banks to honor, unless otherwise directed by the Debtors, any and all checks drawn

by the Debtors to pay prepetition obligations to foreign vendors; and it appearing that the relief

requested is in the best interests of the Debtors' estates, their creditors and other parties in interest;

and sufficient notice of the motion having been given under the circumstances; and it appearing that

this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing

that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157; and after due deliberation and

cause appearing therefor; it is hereby

ORDERED that the Motion is ~~granted;~~ denied; but however it is and it is further

ORDERED that the Debtors are authorized, but not directed, in the reasonable

exercise of their business judgment, to pay the prepetition Trade Claims of ~~Essential~~ Trade Creditors

upon such terms and in the manner provided in this Order; and it is further

ORDERED that the Debtors payment of Trade Claims owed to ~~Essential~~ Trade

Creditors shall not exceed, in the aggregate, ~~$4,500,000~~ $34,300,000 unless otherwise ordered by the Court; and

it is further

~~ORDERED that after the date hereof, the Debtors shall determine who is an Essential~~

~~Trade Creditor by considering, among other things, (a) whether the goods or services the creditor~~

2

~~provides can be replaced, (b) whether failure to pay the creditor's prepetition Trade Claims will~~ require the Debtors to incur higher ~~costs~~ for goods or services ~~postpetition~~, and (c) whether failure to pay the creditor's ~~prepetition~~ Trade Claims will cause the Debtors ~~to lose sales or future revenue; and it is further~~

~~ORDERED that the Debtors shall maintain a matrix summarizing (a) the name of each Essential Trade Creditor paid on account of Trade Claims, (b) the amount paid each Essential Trade Creditor on account of Trade Claims, and (c) the goods or services provided by such Essential Trade Creditor, and that, upon request, the Debtors shall make such matrix available for review by the United States Trustee, and it is further~~

ORDERED that the Debtors shall be authorized, but not required, to undertake all appropriate efforts to cause ~~Essential~~ Trade Creditors to enter into an agreement with the Debtors substantially similar to Exhibit A to the Motion, including the following terms:

a.   The amount of such ~~Essential~~ Trade Creditor's estimated prepetition Trade Claims, accounting for any setoffs, other credits and discounts thereto, shall be as mutually determined in good faith by the Essential Trade Creditor and the Debtors (but such amount shall be used only for the purposes of this Order and shall not be deemed a claim allowed by the Court and the rights of all interested persons to object to such claim shall be fully preserved until further order of the Court);

b.   The normal and customary trade terms, practices and programs (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, normal product mix and availability and other applicable terms and programs) in effect between such ~~Essential~~ Trade Creditor and the Debtors on a historical basis for the period

3

immediately prior and up to the Petition Date or such other trade terms, practices and programs that are at least as favorable as those that were in effect during such time (the "Customary Trade Terms");

c.  The ~~Essential~~ Trade Creditor's agreement to provide goods and services to the Debtors based upon Customary Trade Terms or on such terms as the Debtors and the ~~Essential~~ Trade Creditor may otherwise agree, and the Debtors' agreement to pay in accordance with such terms;

d.  The ~~Essential~~ Trade Creditor's agreement not to file or otherwise assert against any or all of the Debtors, their estates or any other person or entity or any of their respective assets or property (real or personal) any lien (a "Lien") (regardless of the statute or other legal authority upon which such lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to the ~~Essential~~ Trade Creditor by the Debtors arising from agreements entered into prior to the Petition Date, and that, to the extent that the Essential Trade Creditor has previously obtained such a Lien, the Essential Trade Creditor shall immediately take all necessary action to remove that Lien.

e.  The ~~Essential~~ Trade Creditor's acknowledgment that it has reviewed the terms and provisions of this Order and consents to be bound hereby;

f.  The ~~Essential~~ Trade Creditor's agreement that it will not separately seek payment for reclamation claims outside of the terms of this Order unless the ~~Essential~~ Trade Creditor's participation in the trade payment program authorized by this Order is terminated; provided that such claims, if thereafter raised by the ~~Essential~~ Trade Creditor as permitted by this Order, shall be treated as though raised on the date of this Order; and

g.  The ~~Essential~~ Trade Creditor's agreement that it shall not require a lump sum payment upon confirmation of a plan in the chapter 11 cases of the Debtors on account of any administrative expense priority claim that it may assert, but instead that such claims will be paid in the ordinary course of business after confirmation of a plan under applicable Customary Trade Terms, if the plan provides for the ongoing operations of the Debtors.

An agreement executed between the Debtors and an ~~Essential~~ Trade Creditor as set forth in this

paragraph is referred to herein as a "Trade Agreement." The Order is intended to authorize, but shall

not require, the Debtors to enter into Trade Agreements, it being the express intention of this Court

4

that the Debtors shall enter into Trade Agreements only when the Debtors determine, in the exercise

of their reasonable business judgment, that it is appropriate to do so; and it is further

ORDERED that the check used to pay an Essential Trade Creditor or other

accompanying correspondence contain a legend in substantially the following form:

By accepting this check, the payee agrees to the terms of the Order of
the U.S. Bankruptcy Court for the District of Delaware, dated
_____, 2001, in the Company's chapter 11 case (Case No.
_____), entitled "Order Granting Debtors Authority for
Provisional Payment of Prepetition Claims of Essential Trade
Creditors and to Pay or Honor Prepetition Obligations to Foreign
Vendors" and submits to the jurisdiction of that Court for
enforcement thereof; and it is further

ORDERED that the Debtors shall be authorized, in their sole discretion, to make

prepetition payments to an Essential Trade Creditor in the absence of a Trade Agreement after the

Debtors have undertaken all appropriate efforts to cause such Essential Trade Creditor to execute

a Trade Agreement or provide goods and services based on Customary Trade Terms; and it is further

ORDERED that the Debtors may, in the exercise of their reasonable business

judgment, make the payments authorized in the preceding paragraphs on account of prepetition

Trade Claims of Essential Trade Creditors either (1) after goods are delivered or services are

rendered postpetition, or (2) up to one business day before requested delivery of the postpetition

goods, provided, however, that (a) the Debtors shall have issued purchase orders (or computer

equivalents thereof) and (b) the Essential Trade Creditor shall have confirmed shipment will occur

5

not later than the next business day after the aforementioned payment has been made and further

agrees that postpetition goods are being shipped in accordance with Customary Trade Terms, or on

such terms as the Debtors and the ~~Essential~~ Trade Creditor may otherwise agree, and, unless

otherwise waived by the Debtors, also agrees to the terms of this Order by executing an

acknowledgment form substantially similar to Exhibit B to the Motion; and it is further

~~ORDERED that the Debtors may, in their discretion, declare a Trade Agreement with~~

~~an~~ individual Essential Trade Creditor to have terminated, together with the other benefits to the

Essential Trade Creditor as contained in this Order, on the date the Debtors deliver notice to the

Essential Trade Creditor that the Essential Trade Creditor has not complied with the terms and

provisions of the Trade Agreement or has failed to continue to provide Customary Trade Terms (or

on such terms as the Debtors and the Essential Trade Creditor had otherwise agreed); provided,

however, that the Trade Agreement may be reinstated if:

      a.     Such determination is subsequently reversed by the Court for good cause shown that the determination was materially incorrect after notice and a hearing following a motion from the Essential Trade Creditor; or

      b.     The underlying default under the Trade Agreement was fully cured by the Essential Trade Creditor not later than five business days after the date when the initial default occurred; or

      ~~c.     The Debtors, in their discretion, reach an agreement with the Essential Trade Creditor; and it is further~~

6

ORDERED that all Trade Agreements shall be deemed to have terminated, together with the other benefits to Essential Trade Creditors as contained in this Order, upon entry of an Order converting this case to a case under chapter 7 of the Bankruptcy Code; and it is further

ORDERED that if a Trade Agreement is terminated as set forth in either of the two previous paragraphs, the Debtors may, in their discretion, declare that provisional payments made to the Essential Trade Creditor on account of prepetition Trade Claims be deemed to have been in payment of then outstanding postpetition Trade Claims without further order of the Court or action by any person or entity. An Essential Trade Creditor shall then immediately repay to the Debtors any payments made to it on account of its prepetition Trade Claims to the extent that prepetition Trade Claim payments exceed the postpetition Trade Claims then outstanding without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims, or otherwise, and upon any such recovery by the Debtors, the Trade Claim of such Essential Trade Creditor paid after the Petition Date shall be reinstated in the amount so recovered, it being the express intention of this Court to return the creditors to the status quo in effect as of the date of entry of this Order with respect to all prepetition claims if a Trade Agreement is terminated; and it is further

ORDERED that the Debtors are authorized, but not directed, to pay or honor prepetition and postpetition obligations to Foreign Vendors in the ordinary course of business; and it is further

7

 

ORDERED that the Debtors' payment of Foreign Claims owed to Foreign Vendors shall be paid in their entirety unless otherwise ordered by the Court; and it is further

ORDERED that Debtors are authorized to permit all prepetition checks issued by them to the Foreign Vendors to clear the Debtors' bank accounts; and it is further

ORDERED that the banks are to honor, unless otherwise directed by the Debtors, any and all checks drawn by the Debtors prior to the Petition Date to pay any of the prepetition obligations owing to the Foreign Vendors that have not cleared the banking system prior to the Petition Date and any and all checks drawn by the Debtors after the Petition Date to pay any prepetition claims of the Foreign Vendors; and it is further

ORDERED that the satisfaction of the Foreign Claims shall not be deemed to be an assumption or adoption of any agreements that relate to such operations; and it is further

ORDERED that the Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order; and it is further

ORDERED that the Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order.

Dated : _April 2_, 2001

_____
JUDGE

8

EXHIBIT C

## IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No. 01-01139 (JJF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | **Objection Deadline: TBD** |
| | ) | **Hearing Date: TBD** |

## ORDER GRANTING PURSUANT TO BANKRUPTCY RULE 9013-2(E), BANKRUPTCY RULE 9023 AND BANKRUPTCY RULE 8002(B)(2) RECONSIDERATION AND ALTERATION OR AMENDMENT OF THE FIRST DAY ORDER GRANTING DEBTORS AUTHORITY FOR THE PROVISIONAL PAYMENT OF PREPETITION  CLAIMS OF DOMESTIC ESSENTIAL TRADE CREDITORS AND TO PAY  OR HONOR <u>PREPETITION OBLIGATIONS TO FOREIGN VENDORS</u>

Upon consideration of the Expedited Motion (the "Reconsideration Motion")

of the Chase Manhattan Bank, as agent for a syndicate of pre-petition lenders in the above-

captioned cases ("Chase") Pursuant to Local Bankruptcy Rule 9013-2(e) and Rules 9023 and

8002(b)(2) of the Federal Rules of Bankruptcy Procedure for Reconsideration and Alteration

or Amendment of the First Day Order (the "Vendor Order") Granting Debtors Authority For

The Provisional Payment of Prepetition  Claims of Domestic Essential  Trade Creditors And

to Pay  or Honor Prepetition Obligations to Foreign Vendors; and for the reasons set forth

in the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §

1334 and 157; and due notice of the Reconsideration Motion having been given; and no

further or other notice being required; it is now therefore ORDERED:

1. The relief requested in the Reconsideration Motion is granted.

2. The Vendor Order is hereby vacated and is of no further force or effect.

RLF1-2294540-1

3.     All rights of Chase or any other party in interest to seek disgorgement of any and all payments made by the above-captioned debtors and debtors in possession are expressly preserved.

_____
Judge

## W. R. Grace 2002
## Proposed Order Service List
## Case No. 01-1139 (JJF)
## April 12, 2001

(Counsel to Debtors and Debtors in Possession)
Laura Davis Jones, Esq.
David Carickoff, Esq..
Pachulski, Stang, Ziehl, Young & Jones
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

(Counsel to Debtors and Debtors in Possession)
Hamid R. Rafatjoo, Esq.
Pachulski, Stang, Ziehl, Young & Jones
10100 Santa Monica Boulevard
Los Angeles, CA 90067-4100

(Local Counsel to DIP Lender)
Steven M. Yoder, Esq.
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899

(Local Counsel to Asbestos Claimants)
Matthew G. Zaleski, III, Esq.
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899

(Counsel to Debtor)
James H.M. Sprayregen, Esq.
James Kapp, III, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

(United States Trustee)
Mark Kenney, Esq.
Office of the United States Trustee
601 Walnut Street, Curtis Center,
Suite 950 West
Philadelphia, PA 19106

(Canadian counsel for Debtor)
Derrick Tay, Esq.
Meighen Demers
Suite 1100, Box 11, Merrill Lynch Canada Tower
Sun Life Center, 200 Kint Street West
Toronto, Ontario M5H 3T4
CANADA

(W. R. Grace & Co.)
David B. Seigel
W.R. Grace and Co.
7500 Grace Drive
Columbia, MD 21044

(Counsel to Sealed Air Corporation)
D. J. Baker, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

(Counsel to DIP Lender)
J. Douglas Bacon, Esq.
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL 60606

(Counsel to Asbestos Claimants)
Nancy Woth Davis, Esq.
Ness, Motley, Loadhold, Richardson & Poole
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465

Todd Meyer, Esq.
Kilpatrick Stockton
1100 Peachtree Street
Atlanta, GA 30309

(Top Twenty Creditor)
The Chase Manhattan Bank
c/o Lawrence Palumbo
270 Park Avenue
New York, NY 10017

(Top Twenty Creditor)
The Depository Trust Company
c/o Ming Shiang, VP
55 Water Street
New York, NY 10042

(Top Twenty Creditor)
The Depository Trust Company
c/o Daniel Chipko
P.O. Box 20
Bowling Green Station
New York, NY 10274

(Top Twenty Creditor)
Robins Kaplan Miller Ciresi
c/o Roman Siberfeld
2049 Century Park East #3700
Los Angeles, CA 90067

(Top Twenty Creditor)
Huntsman Corporation
P.O. Box 65888
Charlotte, NC 28265

(Top Twenty Creditor)
Zhagrus Environmental, Inc.
c/o Susan Rice
46 West Broadway, Suite 130
Salt Lake City, UT 84101

(Top Twenty Creditor)
DCP-Lohja Inc.
c/o William McBain
P.O. Box 2501
Carol Stream, IL 60132-2501

(Top Twenty Creditor)
PCS Nitrogen Fertilizer, L.P.
c/o John Hill
P.O. Box 71029
Chicago, IL 60694-1029

(Top Twenty Creditor)
Dupont Dow Elastomers
c/o Rick Thomas
21088 Network Place
Chicago, IL 60673-1210

(Top Twenty Creditor)
Cass Logistics Temporary
c/o Ann-Margaret Bushnell
900 Chelmsford Street
Lowell, MA 08510

(Top Twenty Creditor)
Union Carbide Corp
c/o Mia Skinner
P.O. Box 91136
Chicago, IL 60693-0001

(Top Twenty Creditor)
Southern Ionics, Inc.
c/o Milton Sunbeck Jr
P.O. Box 830800 Drawer 830
Birmingham, AL 35283-0800

(Top Twenty Creditor)
BASF
c/o Diane Murdock
P.O. Box 75908
Charlotte, NC 28275

(Top Twenty Creditor)
Risk Co.
c/o Lisa Clegg-Konen
P.O. Box 7061
Downers Grove, IL 60515

(Top Twenty Creditor)
Radian International
c/o Mary Harris
P.O. Box 844130
Dallas, TX 75284-4130

(Top Twenty Creditor)
Stone Packaging System
c/o Jim Wagner
21514 Network Place
Chicago, IL 60673-1215

(Top Twenty Creditor)
Valeron Strength Films
c/o Ron Luce
75 Remittance Dr, Suite 3068
Chicago, IL 60675

(Top Twenty Creditor)
Ingersoll-Rand Fluid Products
c/o Eric Solverson
P.O. Box 751229
Charlotte, NC 28275-1229

(Top Twenty Creditor)
Delta Chemicals
c/o John Besson
P.O. Box 73054
Baltimore, MD 21273-0054

Securities & Exchange Commission
15th & Pennsylvania Ave. N.W.
Washington, DC 20020

District Director
IRS
409 Silverside Road
Wilmington, DE 19809

Securities & Exchange Commission
Atlanta Regional Office Branch/Reorganization
3475 Lenox Road, NE, Suite 100
Atlanta, GA 30326-1232

Secretary of Treasurer
P.O. Box 7040
Dover, DE 19903

Secretary of State
Division of Corporations
Franchise Tax
P.O. Box 7040
Dover, DE 19903

James D. Freeman, Esquire
U.S. Department of Justice
Environmental Enforcement Section
999 18th Street
Suite 945-North Tower
Denver, Colorado 80202

Jon L. Heberling, Esquire
McGarvey, Heberling, Sullivan & McGarvey
PC
745 South Main Street
Kalispel, MT 59901

Patrick L. Hughes, Esquire
Haynes & Boone LLP
1000 Louisiana Street, Suite 4300
Houston, TX 77002-5012

David S. Heller, Esquire
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL 60606

Charles E. Boulbol, Esquire
26 Broadway, 17th Floor
New York, NY 10004

Ira S. Greene, Esquire
Squadron, Ellenoff, Plesent & Sheinfeld, LLP
551 Fifth Avenue
New York, NY 10176

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No. 01-01139 (JJF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

## AFFIDAVIT OF SERVICE

STATE OF DELAWARE    :
                        : SS.
NEW CASTLE COUNTY    :

        Ann Jerominski, RP, being duly sworn according to law, deposes and says that she is employed as a Registered Paralegal by the law firm of Richards, Layton & Finger, P.A., and that on the 12th day of April, 2001 she caused copies of the following to be served in the manner indicated on the parties on the attached list:

- *Expedited Motion Pursuant to Local Bankruptcy Rule 9013-2(e), Bankruptcy Rule 9023 and Bankruptcy Rule 8002(b)(2) for Reconsideration and Alteration or Amendment of the First Day Order Granting Debtors Authority for the Provisional Payment of Prepetition Claims of Domestic Essential Trade Creditors and to Pay or Honor Prepetition Obligations to Foreign Vendors*

Ann Jerominski, RP

SWORN TO AND SUBSCRIBED before me this 12th day of April, 2001.

Notary Public

NOTARIAL SEAL
LINDA M. ANDERSON
STATE OF DELAWARE
Date of Appointment: 6-30-98
My Commission Expires: June 30, 2002

RLF1-2295290-1

**W. R. Grace 2002**
**Service List**
**Case No. 01-1139 (JJF)**
**April 12, 2001**

**By Fax**

(Counsel to Debtors and Debtors in Possession)
Laura Davis Jones, Esq.
David Carickoff, Esq..
Pachulski, Stang, Ziehl, Young & Jones
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

(Counsel to Debtors and Debtors in Possession)
Hamid R. Rafatjoo, Esq.
Pachulski, Stang, Ziehl, Young & Jones
10100 Santa Monica Boulevard
Los Angeles, CA 90067-4100

(Local Counsel to DIP Lender)
Steven M. Yoder, Esq.
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899

(Local Counsel to Asbestos Claimants)
Matthew G. Zaleski, III, Esq.
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899

(Counsel to Debtor)
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

(United States Trustee)
Mark Kenney, Esq.
Office of the United States Trustee
601 Walnut Street, Curtis Center,
Suite 950 West
Philadelphia, PA 19106

(W. R. Grace & Co.)
David B. Seigel
W.R. Grace and Co.
7500 Grace Drive
Columbia, MD 21044

(Counsel to DIP Lender)
J. Douglas Bacon, Esq.
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL 60606

(Counsel to Asbestos Claimants)
Nancy Woth Davis, Esq.
Ness, Motley, Loadhold, Richardson & Poole
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465

Todd Meyer, Esq.
Kilpatrick Stockton
1100 Peachtree Street
Atlanta, GA 30309

**By Fed Ex/Express Mail**
(Canadian counsel for Debtor)
Derrick Tay, Esq.
Meighen Demers
Suite 1100, Box 11, Merrill Lynch Canada Tower
Sun Life Center, 200 Kint Street West
Toronto, Ontario M5H 3T4
CANADA

(Counsel to Sealed Air Corporation)
D. J. Baker, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

(Top Twenty Creditor)
The Chase Manhattan Bank
c/o Lawrence Palumbo
270 Park Avenue
New York, NY 10017

(Top Twenty Creditor)
The Depository Trust Company
c/o Ming Shiang, VP
55 Water Street
New York, NY 10042

(Top Twenty Creditor)
The Depository Trust Company
c/o Daniel Chipko
P.O. Box 20
Bowling Green Station
New York, NY 10274

(Top Twenty Creditor)
Robins Kaplan Miller Ciresi
c/o Roman Siberfeld
2049 Century Park East #3700
Los Angeles, CA 90067

(Top Twenty Creditor)
Huntsman Corporation
P.O. Box 65888
Charlotte, NC 28265

(Top Twenty Creditor)
Zhagrus Environmental, Inc.
c/o Susan Rice
46 West Broadway, Suite 130
Salt Lake City, UT 84101

(Top Twenty Creditor)
DCP-Lohja Inc.
c/o William McBain
P.O. Box 2501
Carol Stream, IL 60132-2501

(Top Twenty Creditor)
PCS Nitrogen Fertilizer, L.P.
c/o John Hill
P.O. Box 71029
Chicago, IL 60694-1029

(Top Twenty Creditor)
Dupont Dow Elastomers
c/o Rick Thomas
21088 Network Place
Chicago, IL 60673-1210

(Top Twenty Creditor)
Cass Logistics Temporary
c/o Ann-Margaret Bushnell
900 Chelmsford Street
Lowell, MA 08510

(Top Twenty Creditor)
Union Carbide Corp
c/o Mia Skinner
P.O. Box 91136
Chicago, IL 60693-0001

(Top Twenty Creditor)
Southern Ionics, Inc.
c/o Milton Sunbeck Jr
P.O. Box 830800 Drawer 830
Birmingham, AL 35283-0800

(Top Twenty Creditor)
BASF
c/o Diane Murdock
P.O. Box 75908
Charlotte, NC 28275

(Top Twenty Creditor)
Risk Co.
c/o Lisa Clegg-Konen
P.O. Box 7061
Downers Grove, IL 60515

(Top Twenty Creditor)
Radian International
c/o Mary Harris
P.O. Box 844130
Dallas, TX 75284-4130

(Top Twenty Creditor)
Stone Packaging System
c/o Jim Wagner
21514 Network Place
Chicago, IL 60673-1215

(Top Twenty Creditor)
Valeron Strength Films
c/o Ron Luce
75 Remittance Dr, Suite 3068
Chicago, IL 60675

(Top Twenty Creditor)
Ingersoll-Rand Fluid Products
c/o Eric Solverson
P.O. Box 751229
Charlotte, NC 28275-1229

(Top Twenty Creditor)
Delta Chemicals
c/o John Besson
P.O. Box 73054
Baltimore, MD 21273-0054

Securities & Exchange Commission
15th & Pennsylvania Ave. N.W.
Washington, DC 20020

District Director
IRS
409 Silverside Road
Wilmington, DE 19809

Securities & Exchange Commission
Atlanta Regional Office Branch/Reorganization
3475 Lenox Road, NE, Suite 100
Atlanta, GA 30326-1232

Secretary of Treasurer
P.O. Box 7040
Dover, DE 19903

Secretary of State
Division of Corporations
Franchise Tax
P.O. Box 7040
Dover, DE 19903

James D. Freeman, Esquire
U.S. Department of Justice
Environmental Enforcement Section
999 18th Street
Suite 945-North Tower
Denver, Colorado 80202

Jon L. Heberling, Esquire
McGarvey, Heberling, Sullivan & McGarvey
PC
745 South Main Street
Kalispel, MT 59901

Patrick L. Hughes, Esquire
Haynes & Boone LLP
1000 Louisiana Street, Suite 4300
Houston, TX 77002-5012

David S. Heller, Esquire
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL 60606

Charles E. Boulbol, Esquire
26 Broadway, 17th Floor
New York, NY 10004

Ira S. Greene, Esquire
Squadron, Ellenoff, Plesent & Sheinfeld, LLP
551 Fifth Avenue
New York, NY 10176