**ORIGINAL**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., et al., | ) | Case No. 01-01139 |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

**AFFIDAVIT OF ATTORNEY THOMAS M. SOBOL IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF PAUL PRICE,
INDIVIDUALLY AND AS PROPOSED CLASS REPRESENTATIVE IN *IN RE:
ZONOLITE ATTIC INSULATION PRODUCTS LIABILITY LITIGATION*, MDL 1376**

ATTORNEY THOMAS M. SOBOL states:

1.     I am an attorney for the plaintiffs in Price v. W.R. Grace & Co., No. CV 0071-M-

DWM in the District of Montana, one of the cases consolidated for pretrial purposes in MDL

1376. I have personal knowledge of the facts contained in this Affidavit, and am otherwise

competent to testify to those facts.

2.     The four federal cases consolidated for pretrial purposes in Multidistrict Litigation

("MDL") 1376 are Hunter v. W.R. Grace & Co. et al., C.A. No. 3:00-569 in the Southern District

of Illinois; Lindholm v. W.R. Grace & Co. et al., C.A. No. 1:00-10323 in the District of

Massachusetts; Goldstein et al. v. W.R. Grace & Co. et al., C.A. No. 1:00-10873 in the District

of Massachusetts; Price et al. v. W.R. Grace & Co. et al., C.A. No. 9:00-71 in the District of

Montana. A state court class action regarding Zonolite Attic Insulation is Barbanti v. W.R.

Grace & Co.-Conn. et al., No. 00-2-01756-6 in the Superior Court in the State of Washington.

3.     The Transfer Order in MDL 1376 was filed on December 7, 2000. A true and

accurate copy is attached hereto as Exhibit 1.

148A

certification discovery will most certainly be duplicative in the four actions seeking representation of virtually the same class of persons. Consolidation for pretrial purposes would conserve the resources of the parties, counsel, and the judiciary.

The potential for settlement of the Zonolite Attic Insulation litigation is also greater if the cases were consolidated for pretrial purposes. Based on their many years of experience in the asbestos products liability litigations, Grace Conn. and Grace Delaware anticipate that additional "copy-cat" suits will be filed by plaintiffs' attorneys throughout the country. Consolidation of the four presently pending suits, as well as later filed tag-along actions, would potentially enable defendants to negotiate with a single-designated group of lead counsel, rather than attempting to resolve the litigation on a piece-meal basis.

The complexity of the four Zonolite Attic Insulation cases also is more significant than the relatively small number of pending cases when the various causes of action alleged and claims for relief sought are considered. Each of the complaints asserts causes of action for fraud, negligence, and strict liability; each seeks relief in the form of class certification and compensatory and punitive damages. (The *Lindholm/Goldstein* amended complaint also asserts breach of warranty, nuisance and unjust enrichment claims; violations of the fifty states' various laws prohibiting deceptive trade practices; and RICO claims.) Moreover, each of the complaints seek the same unique and complex relief in the form of the establishment of various court-supervised and defendant-funded programs, including an identification program to verify suspected existence of Zonolite in buildings, a program to issue warnings and other information to building owners and others who work in them, a research and education trust, and a remediation and containment program.

Plaintiffs' pleading of overlapping national classes in each of the four Zonolite Attic Insulation cases strongly favors transfer of the cases to a single district for coordinated pretrial treatment to avoid inconsistent rulings on class certification. Moreover, in view of the complexity of the issues in each of the cases, consolidation will result in the conservation of resources in discovery and pretrial proceedings.

5

**II.     The Zonolite Attic Insulation Cases Allege Common Questions Of Fact Favoring Coordinated Pretrial Treatment.**

The complaints in each of the four Zonolite Attic Insulation cases allege numerous common questions of fact and law among the claims of the putative class members. While Grace Conn. and Grace Delaware will challenge the predominance of common issues in the context of certification of the putative classes, the Zonolite Attic Insulation complaints allege the following common questions of fact:[3]

   a. Whether Zonolite is dangerous (or not reasonably safe) (Lindholm/Goldstein amended complaint ¶ 56.a.; Price complaint ¶58.A; Hunter complaint ¶ 57.A.);

   b. Whether defendants provided adequate warnings in connection with Zonolite (Lindholm/Goldstein amended complaint ¶ 56.m.; Price complaint ¶ 58.B.; Hunter complaint ¶ 57.B.);

   c. Whether Zonolite constitutes a present threat to health and safety (Lindholm/Goldstein amended complaint ¶ 56.n.; Price complaint ¶ 58.C.; Hunter complaint ¶ 57.C.);

   d. Whether Zonolite installed in buildings constitutes a present threat to the health and safety in that owners and occupants will be exposed to dangerous levels of asbestos in the ordinary use and enjoyment of their properties (Lindholm/Goldstein amended complaint ¶ 56.n.; Price complaint ¶ 58.D.; Hunter complaint ¶ 57.D.);

   e. Whether defendants concealed from class members and others information about the hazards of exposure to tremolite asbestos and Zonolite Attic Insulation (Lindholm/Goldstein amended complaint ¶ 56.k.; Price complaint ¶ 58.F.; Hunter complaint ¶ 57.F.);

---

3 In considering the common question of fact issue, the Panel looks primarily to the pleadings. In re Petroleum Prods Antitrust Litig., 407 F. Supp. 249, 251 (JPML 1976).

    f.   Whether defendants' public statements, advertisements, and representations concerning Zonolite were untrue and published with scienter or negligently (Lindholm/Goldstein amended complaint ¶¶ 56.f & .g; Price complaint ¶¶ 58.G.&H.; Hunter complaint ¶¶ 57.G.&H.);

    g.   Whether class members have suffered harm to their property interests (Lindholm/Goldstein amended complaint ¶ 56.o.; Price complaint ¶ 58.K.; Hunter complaint ¶ 57.K.).

In addition to the foregoing common issues of fact alleged by the complaints, all of the complaints recite a common factual background including the following common factual allegations contained in each of the complaints: the alleged tremolite contamination of Zonolite Attic Insulation and defendants' alleged knowledge thereof; defendants' alleged knowledge of "secret tests" performed by a predecessor owner of the vermiculite mine on its workers; defendants' alleged "secret animal tests" on the association between tremolite asbestos and mesothelioma; defendants' alleged decision not to warn of the alleged health risks of Zonolite Attic Insulation; and defendants' alleged decision to withhold a drafted press release regarding the discontinuance of Zonolite Attic Insulation. (Lindholm/Goldstein amended complaint ¶¶ 14-21; Price complaint ¶¶ 19-48; Hunter complaint ¶¶ 16-49).

Products liability cases, in particular, present common issues of fact that the Panel has found appropriate for coordinated pretrial proceedings. For example, in In re Temporomandibular Joint (TMJ) Implants Products Liability Litigation, 844 F. Supp. 1553 (JPML 1994), the Panel transferred 173 actions for centralization under § 1407 after concluding that common factual questions arise in the products liability actions with respect to whether the TMJ implants are defective and unreasonably dangerous, whether the defendants failed adequately to test the implants and constituent materials or warn of possible risks to TMJ implant recipients, and whether the implant materials are prone to break down in the recipients' bodies. The Panel reached the same conclusion in a product liability action involving alleged misrepresentations regarding the composition of an over-the-counter medicine for dandruff. In

In re Skin-Cap Products Liability Litigation, Docket No. 1243, 1998 U.S. LEXIS 13253, at *3 (JPML Aug. 24, 1998), the Panel transferred four actions finding that they presented "complex common questions of fact concerning i) the composition of Skin-Cap (in particular whether it contained corticosteroids), and ii) whether defendants misrepresented and/or failed to disclose the presence of corticosteroids in Skin-Cap." Id.

As described above, the Zonolite Attic Insulation cases are, at base, product liability actions, which present the same or similar common factual questions with respect to the product Zonolite as the TMJ and Skin-Cap products liability litigation. Common issues regarding the alleged defects in Zonolite, its alleged dangerous condition, the alleged misrepresentations made in connection with the marketing of the product, the testing done and warnings made regarding Zonolite, and its alleged danger in-place are common issues of fact asserted in each of the class action complaints. Coordinated pretrial proceedings and discovery on these common issues of fact will further the goals of § 1407 of preventing inconsistent pretrial rulings and conserving the resources of the parties, their counsel, and the judiciary. The presence of some differing legal theories in each of the complaints does not militate against transfer. See In re IKON Office Solutions, Inc., Securities Litigation, Docket No. 1318, 1999 U.S. Dist. LEXIS 19077, at *2-3 (JPML Dec. 2, 1999) ("transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer. Nor is the presence of differing legal theories significant when the underlying actions still arise from a common factual core.").

## III.    Transfer To The District Of Massachusetts Will Be Convenient For The Parties And Witnesses.

A number of factors favor transfer of all cases to the United States District Court for the District of Massachusetts for the convenience of the majority of the named plaintiffs and the defendants. First, two of the four Zonolite Attic Insulation cases (including the first-filed case) are presently venued in the District of Massachusetts. Thus, the District of Massachusetts is the forum of choice for more plaintiffs than any other forum. See In re The Hartford Sales

8

Practices Litigation, Docket No. 1204, 1997 U.S. Dist. LEXIS 19671, at *3 (JPML Dec. 8, 1997) (two class actions transferred to District of Minnesota, site of first-filed action, choice of all defendants, and location of potential witnesses and documents); In re Lutheran Brotherhood Variable Insurance Products Co. Sales Practices Litigation, Docket No. 1309, 1999 U.S. Dist. LEXIS 20185, at *3 (JPML Dec. 22, 1999) (transferred to Minnesota where three of the four actions were pending and where documents and witnesses located); In re IKON Office Solutions, Inc., Securities Litigation, 1999 U.S. Dist. LEXIS 19077 at *4-5 (transferred to Eastern District of Pennsylvania where most actions were pending, discovery has proceeded, judge assigned has developed a familiarity with the issues, IKON's headquarters located, and likely location of significant number of documents and witnesses).

Second, Massachusetts is the location of a significant number of documents and witnesses in the Zonolite Attic Insulation cases. Cambridge, Massachusetts is the headquarters of the Grace Conn. Construction Products Division. Accordingly, many potential witnesses and approximately 950 boxes of original documents relating to the manufacture and sale of vermiculite products, including attic insulation, are located in Cambridge, Massachusetts. (See Rule 26 Initial Disclosure Statement of Defendants W.R. Grace & Co.-Conn. and W.R. Grace & Co. filed in the Lindholm/Goldstein action, attached as Exhibit E to the motion). Grace Conn. and Grace Delaware have preliminarily identified 9 witnesses located in Massachusetts in their initial disclosure filed in the Lindholm/Goldstein action. (Id.). In addition to the 950 boxes of documents located in Cambridge, Massachusetts, 400 boxes of original documents relating to the manufacture and sale of commercial asbestos-containing products are stored in a repository at Winthrop Square in Boston. An additional 54 boxes of documents that were formerly stored in Libby, Montana containing personnel records and documents regarding the operation of the Libby, Montana mine and mill are housed at Winthrop Square. (Id.). Thus, the majority of the defendants' documents are located in Massachusetts, the headquarters of the Construction Products Division and the location of numerous witnesses. The vast majority of the balance of Grace's original documents regarding the operation of its former mine and mill in Libby,

9

Montana, approximately 1000 boxes, including sales records for Libby vermiculite and other Zonolite products, are not stored in Montana. Rather, those documents are maintained by Grace's counsel in Denver and Boulder, Colorado. (See Grace Initial Disclosure).

These factors weigh heavily in the Panel's choice of transferee forum as they further the goals of convenience and efficiency in § 1407. See In re The Hartford Sales Practices Litigation, 1997 U.S. Dist. LEXIS 19671, at *3; In re Summit Technology, Inc., Securities Litigation, Docket No. 1195, 1997 U.S. Dist. LEXIS 15778, at *2-3 (JPML Oct. 9, 1997); In re Nuway Paper Machinery Contracts Litigation, Docket No. 1306, 1999 U.S. Dist. LEXIS 20179, at *2-3 (JPML Dec. 22, 1999); In re Computervision Corporation Securities Litigation, 814 F. Supp. 85, 86 (JPML 1993); In re Bromine Antitrust Litigation, Docket No. 1310, 1999 U.S. Dist. LEXIS 19204, at *2 (JPML Dec. 9, 1999).

The only connection of Montana to the Zonolite Attic Insulation cases is that Montana is the location of the former Libby, Montana mine and mill for the vermiculite used in the product. By contrast, Grace processed and distributed Zonolite Attic Insulation from two plants in Massachusetts and two plants in Illinois. Far more significant than either the location of the mine and mill or the location of particular plants is the location of witnesses and documents, and they are located in Massachusetts. Thus, in terms of convenience to the parties and witnesses in the discovery process, the overwhelming majority of factors favor the District of Massachusetts as the transferee district.

Moreover, because these cases purport to be nationwide class actions, seeking to represent building owners in all fifty states, the situs of the litigation is not critical so long as it is as convenient and centrally located as all other suggested forums. See In re Bankamerica Corp. Securities Litigation, Docket No. 1264, 1999 U.S. Dist. LEXIS 1494, at *4 (JPML Feb. 11, 1999); In re Methionine Antitrust Litigation, Docket No. 1311, 1999 U.S. Dist. LEXIS 19206, at *6 (JPML Dec. 8, 1999). In terms of ease of travel, Boston is more easily accessible than Missoula, Montana, or East St. Louis, Illinois.

10

## IV.   The Discovery And Case Management Status Of The Lindholm/Goldstein Action Favors Transfer To Judge Saris In The District Of Massachusetts.

The *Lindholm/Goldstein* case is the most advanced procedurally of the four Zonolite Attic Insulation cases. In *Lindholm/Goldstein*, unlike *Price* or *Hunter*, Grace Conn. and Grace Delaware have filed their Rule 26 Initial Disclosure Statement, as has the plaintiff. Discovery has commenced in *Lindholm/Goldstein,* with the plaintiff having served Grace Conn. and Grace Delaware with interrogatories, requests for production of documents, and a Rule 30(b)(6) deposition notice. Indeed, plaintiffs' counsel in *Lindholm/Goldstein* spent four days at Grace's documents depository in Boston in June 2000. By contrast, in *Hunter,* no discovery has been taken; and in *Price*, plaintiff's counsel, who are also plaintiff's counsel in the state court action in Washington, has not commenced any case specific discovery.

Judge Saris, to whom the consolidated *Lindholm* and *Goldstein* actions have been assigned, has held a scheduling conference in *Lindholm/Goldstein*, which was attended by one of the counsel representing the plaintiff in *Price*. The parties have submitted a Joint Statement and Proposed Pretrial Scheduling Order in *Lindholm/Goldstein*. Therefore, transfer of all four Zonolite Attic Insulation cases to Judge Saris, who has had the opportunity to gain some familiarity with the litigation, would promote the just and efficient conduct of the litigation. See In re IKON Office Solutions, Inc., Securities Litigation, 1999 U.S. Dist. LEXIS 19077 at *4-5; In re Computervision Corporation Securities Litigation, 814 F. Supp. at 86 (transferred to the District of Massachusetts where the actions venued there have already been consolidated before a judge who has entered a pretrial order establishing an orderly structure for the litigation); In re Capital Underwriters, Inc. Securities Litigation, 464 F. Supp. 955 (JPML 1979) (transfer to a judge who is "thoroughly familiar" with the litigation because more discovery and pretrial proceedings have proceeded than in the other pending actions).

11

## CONCLUSION

Transfer of the Zonolite Attic Insulation cases to the United States District Court for the District of Massachusetts for coordinated pretrial proceedings before Judge Saris will serve the dual goals of 28 U.S.C. § 1407 of promoting the just and efficient conduct of the purported national class actions and the convenience of the parties and witnesses. Accordingly, Grace Conn. and Grace Delaware respectfully request that the Zonolite Attic Insulation cases be transferred to the United States District Court for the District of Massachusetts.

Respectfully submitted,

Lawrence T. Hoyle, Jr.
Arlene Fickler
Lisa M. Salazar
R. David Walk, Jr.
Hoyle, Morris & Kerr LLP
1650 Market Street - Suite 4900
Philadelphia, PA 19103
(215) 981-5700

Dated: August 17, 2000

Attorneys for W.R. Grace & Company (a Delaware corporation) and W.R. Grace & Company-Conn. (a Connecticut corporation)

12



RECEIVED

SEP 1 4 2000

LIEFF, CABRASER, HEIMANN & BERNSTEIN

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## MDL DOCKET NO. 1376

## IN RE ZONOLITE ATTIC INSULATION LITIGATION

### Joinder of Sealed Air Corporation in Motion to Transfer to the District of Massachusetts for Coordinated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407

1.      On August 17, 2000 W.R. Grace & Co., and W.R. Grace & Co.-Conn. ("Grace") filed a "Motion to Transfer to the District of Massachusetts for Coordinated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407" (hereafter "Motion to Transfer").

2.      Sealed Air Corporation is named as a defendant in each of the four actions encompassed by the Motion to Transfer including:

      A.      <u>Jan Hunter, et al. v. W.R. Grace & Co., et al.,</u> Southern District of Illinois, Civil Action No. 00-569-GPM;

      B.      <u>Paul Price, et al. v. W.R. Grace & Co., et al.,</u> District of Montana, Missoula Division, Civil Action No. CV 0071-M-DWM;

      C.      <u>Edward M. Lindholm, et al. v. W.R. Grace & Co., et al.,</u> District of Massachusetts, Civil Action No. 00 CV 10323 (PBS) (Sealed Air Corporation named but not served); and

D.     Joel Goldstein, et al. v. W.R. Grace & Co., et al., District of Massachusetts, Civil Action No. 00-10873PBS (Sealed Air Corporation named but not served) (as noted in the Motion to Transfer, Goldstein has now been consolidated with Lindholm).

3.     Sealed Air Corporation is named as a defendant in Marco Barbanti v. W.R. Grace & Co.-Conn., et al., Eastern District of Washington, Civil Action No. CS-00-0311-EFS, but not Arvil Daily, et al. v. W.R. Grace & Co.-Conn., et al., Southern District of Illinois, both of which were brought to the Panel's attention as related cases in the "Notice of Pendency of Potential Tag-Along Actions" filed by Grace.

4.     Sealed Air Corporation hereby joins in the Motion to Transfer and, for the reasons stated therein, requests that these actions be transferred to the District of Massachusetts for coordinated pretrial proceedings.

Respectfully Submitted,

Sheila L. Birnbaum
Skadden, Arps, Slate, Meagher &
   Flom LLP
4 Times Square
New York, New York 10036-6522
(212) 735-2450

Dated:  September 11, 2000

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of September, 2000, I caused a

true and correct copy of the foregoing Joinder of Sealed Air Corporation in Motion

to Transfer to the District of Massachusetts for Coordinated Pretrial Proceedings

Pursuant to 28 U.S.C. § 1407 to be served by U.S. Mail postage pre-paid addressed

as follows:

> Jon L. Heberling
> Roger M. Sullivan
> Allan M. McGarvey
> McGARVEY, HEBERLING, SULLIVAN &
> McGARVEY, P.C.
> 745 South Main
> Kalispel, MT  59901
>
> Darrell W. Scott
> LUKINS & ANNIS, P.S.
> 1600 Washington Trust Financial Center
> 717 W. Sprague Ave.
> Spokane, WA  99201-0466
>
> Elizabeth J. Cabraser
> LIEFF, CABRASER, HEIMANN
> & BERNSTEIN, LLP
> Embarcadero Center West, 30th Floor
> 275 Battery Street
> San Francisco, CA  94111

Edward J. Westbrook
NESS MOTLEY LOADHOLT RICHARDSON
& POOLE
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

Steven J. Toll
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
999 Third Avenue, Suite 3600
Seattle, WA  98104

Richard S. Lewis
COHEN, MILSTEIN, HAUSFELD & TOLL
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C.  20005-3934

**Attorneys for Plaintiffs in**
**Price v. W.R. Grace & Co.**

Gary L. Graham
GARLINGTON, LOHN & ROBINSON, PLLP
199 W. Pine, P.O. Box 7909
Missoula, MT  59807-7909

**Attorneys for Defendants**
**W.R. Grace & Co. and**
**W.R. Grace & Co.-Conn. in**
**Price v. W.R. Grace & Co.**

Kenneth G. Gilman
David Pastor
Edward L. Manchur
GILMAN AND PASTOR, LLP
One Boston Place, 28th fl.
Boston, MA  02108

Mark S. Williams
BORRELLI, HUTTON & WILLIAMS, P.A.
(A Professional Corporation)
376 Trapelo Road
Belmont, MA  02478

**Attorneys for Plaintiffs in**
**<u>Lindholm v. W.R. Grace & Co.</u>**

Robert A. Murphy
CASNER & EDWARDS LLP
One Federal Street
Boston, MA  02110

**Attorneys for Defendants**
**W.R. Grace & Co. and**
**W.R. Grace & Co.-Conn.**
**in <u>Lindholm v. W.R. Grace & Co.</u>**

Mark C. Goldenberg
HOPKINS GOLDENBERG, P.C.
Elizabeth V. Heller
2132 Pontoon Road
Granite City, IL  62040

John J. Stoia
MILBERG WEISS BERSHAD
HYNES & LERACH LLP
600 West Broadway
1800 One America Plaza
San Diego, CA  92101-3356

Christopher A. Seeger
SEEGER WEISS LLP
One William Street
New York, NY  10004

**Attorneys for Plaintiffs in**
**<u>Hunter v. W.R. Grace & Company</u>**

James H. Ferrick III
Bryan Cave LLP
One Metropolitan Square
211 North Broadway
St. Louis, MO 63102-2750

**Attorneys for Defendants**
**W.R. Grace & Co. and**
**W.R. Grace & Co.-Conn. in**
**Hunter v. W.R. Grace & Co.**

Jon L. Heberling
Roger M. Sullivan
Allan M. McGarvey
McGARVEY, HEBERLING, SULLIVAN &
McGARVEY, P.C.
745 South Main
Kalispel, MT 59901

Darrell W. Scott
Michael G. Black
Mischelle R. Fulgham
Tonya R. Hanson
LUKINS & ANNIS, P.S.
1600 Washington Trust Financial Center
717 W. Sprague Ave.
Spokane, WA 99201-0466

Elizabeth J. Cabraser
Richard M. Heimann
Donald C. Arbitblit
Fabrice N. Vincent
LIEFF, CABRASER, HEIMANN
& BERNSTEIN, LLP
Embarcadero Center West, 30th Floor
275 Battery Street
San Francisco, CA 94111

Edward J. Westbrook
Robert M. Turkewitz
Edward B. Cottingham, Jr.
Frederick J. Jekel
Christy Gruenloh
NESS MOTLEY LOADHOLT RICHARDSON
& POOLE
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

Steven J. Toll
Tamara J. Driscoll
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
999 Third Avenue, Suite 3600
Seattle, WA  98104

Richard S. Lewis
COHEN, MILSTEIN, HAUSFELD & TOLL
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C.  20005-3934

**Attorneys for Plaintiffs in
Barbanti v. W.R. Grace & Company**

Thomas L. Boeder
V.L. Woolston
Leecia Welch
Mary P. Gaston
PERKINS COIE LLP
1201 Third Avenue
Suite 4800
Seattle, WA  98101

**Attorneys for Defendants
W.R. Grace & Co. and
W.R. Grace & Co.-Conn. in
Barbanti v. W.R. Grace & Co.**

Lou Aleksich, Jr., Clerk
United States District Court for the
  District of Montana, Missoula Division
Post Office Bldg.
P.O. Box 8537 (59807-8537)
Missoula, MT  59801

Norbert G. Jaworski, Clerk
United States District Court for the
  Southern District of Illinois
P.O. Box 249 (62202)
East St. Louis, IL  62201

Tony Anastas, Clerk
United States District Court for the
  District of Massachusetts
U.S. Courthouse
1 Courthouse Way
Boston, MA  02210

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

In re:                                    :
                                          :
ZONOLITE ATTIC INSULATION                 : MDL DOCKET NO. 1376
_____           :

**RESPONSE TO DEFENDANTS' MOTION TO TRANSFER TO THE DISTRICT OF
MASSACHUSETTS FOR COORDINATED PRETRIAL PROCEEDINGS PURSUANT
TO 28 U.S.C. §1407**

Kenneth G. Gilman, Esquire
David Pastor, Esquire
Edward L. Manchur, Esquire
Douglas M. Brooks, Esquire
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts 01906

Mark S. Williams, Esquire
Borrelli, Hutton & Williams, P.A.
(A Professional Corporation)
376 Trapelo Road
Belmont, Massachusetts 02478

**Attorneys for Individual and Representative
Plaintiffs, Edward M. Lindholm, Joel Goldstein
and John J. Szufnarowski**

COME NOW plaintiffs in the actions styled <u>Lindholm v. W.R. Grace & Company, et al.</u>, Civil Action No. 00-CV-10323 (D. Mass.) and <u>Goldstein, et al. v. W.R. Grace & Company, et al.</u>, Civil Action No. 00-CV-10873 (D. Mass.) ("Plaintiffs"), two of the actions subject to the Motion to Transfer,[1] and pursuant to J.P.M.D.L. Rule 9 respond to the numbered paragraphs of Defendants' Motion for Transfer to the District of Massachusetts for Coordinated Pretrial Proceedings ("Motion to Transfer").[2]

Plaintiffs respond to the numbered paragraphs in the Motion to Transfer, as follows:

1.     Plaintiffs admit paragraph 1.

2.     Plaintiffs admit paragraph 2.    Further responding, Plaintiffs state, upon information and belief, that the two state court cases referred to in footnote 1 of the Motion to Transfer have been removed by the Defendants to the U.S. District Courts for the Eastern District of Washington and the Southern District of Illinois, respectively.

3.     Plaintiffs admit that the Zonolite Attic Insulation cases referred to in Exhibit A to the Motion to Transfer were styled as class action complaints.

4.     Plaintiffs admit paragraph 4, except that the case originally filed in the Superior

---

[1]   The plaintiffs in these two actions have moved to consolidate their actions and have filed a first amended and consolidated complaint in the <u>Lindholm</u> action, Civil Action No. 00-CV-10323.  By order dated August 21, 2000, the Court (Saris, J.) granted this motion, consolidating these two actions.

[2]   The Motion to Transfer fails to comply with J.P.M.D.L. Rule 9(a) in that each averment contained therein is not limited, to the extent practicable, to a statement of a single factual averment.

Court for Spokane County, Washington, and removed to federal court,[3] was brought on behalf of a putative class of Washington residents only.

5.      Plaintiffs admit paragraph 5 and, in further explanation, state that the Lindholm/Goldstein amended complaint was brought on behalf of a class of "all other persons or entities who own or occupy real property located in the United States in which Zonolite has been installed." (Lindholm/Goldstein complaint, ¶51).

6.      Plaintiffs admit paragraph 6.

7.      Plaintiffs admit paragraph 7.

8.      Plaintiffs admit that the four Zonolite Attic Insulation cases allege numerous common questions of fact which warrant coordinated pretrial proceedings before a single district judge and, in further explanation, state that the Zonolite Attic Insulation cases present common issues of fact in addition to those listed in paragraph 8 and common issues of law.  To the extent that Defendants are asserting, in Paragraph 8, that common issues do not predominate in the context of class certification, Plaintiffs deny this allegation.   Plaintiffs have insufficient knowledge or information in order to admit or deny the remainder of Paragraph 8.

9.      Plaintiffs admit that the complaints recite a common factual background, but do not necessarily accept or adopt Defendants' characterization of the allegations and assert that the respective complaints speak for themselves.

10.     Plaintiffs admit paragraph 10 except to the extent that it implies that the classes represented in the Zonolite Attic Insulation cases exclude those persons who occupy, but do not own, buildings, and with the further exception that Plaintiffs do not accept Defendants'

---

[3] Barbanti v. W.R. Grace & Company, 2:00-CS-311 (E.D. Wa.).

characterization as to the complexity of these cases.

11.    Plaintiffs admit paragraph 11.

12.    Plaintiffs lack sufficient knowledge or information in order to admit or deny paragraph 12.

13.    Plaintiffs lack sufficient knowledge or information in order to admit or deny paragraph 13.

14.    Plaintiffs deny Paragraph 14.

15.    Plaintiffs deny defendants' characterization of the causes of action and prayers for relief asserted in the various complaints as incomplete and misleading and further assert that the complaints speak for themselves.

16.    Plaintiffs admit paragraph 16 and, in further explanation, state that the Lindholm/Goldstein action asserts causes of action for injunctive relief.

17.    Plaintiffs admit that each of the Zonolite Attic Insulation complaints seeks relief in the form of the establishment of various court-supervised and defendant-funded programs. Plaintiffs deny that the forms of relief sought in the complaints are unique or complex.

18.    Plaintiffs admit that two of the four Zonolite Attic Insulation cases are presently venued in the District of Massachusetts.    Plaintiffs admit that transfer of all cases for coordination before a single judge in the District of Massachusetts will be convenient for the defendants and the named plaintiffs in the Lindholm/Goldstein action.    Plaintiffs lack sufficient knowledge or information in order to admit or deny the remainder of paragraph 18.

19.    Plaintiffs admit paragraph 19.

20.    Plaintiffs do not have sufficient knowledge or information in order to admit or

deny whether 950 boxes of original documents relating to the manufacture and sale of vermiculite products are located in Cambridge, Massachusetts. Plaintiffs admit the remainder of paragraph 20 and, in further explanation, state that additional witnesses are likely to be located in Massachusetts, the headquarters of Grace's Construction Products Division during the years in which Zonolite Attic Insulation was sold.

21.     Plaintiffs admit paragraph 21.

22.     Plaintiffs admit that approximately 400 boxes of documents relating to the manufacture and sale of commercial asbestos-containing products are stored in a repository at Winthrop Square in Boston. Plaintiffs do not have sufficient knowledge or information in order to admit or deny the remainder of paragraph 22.

23.     Plaintiffs do not have sufficient knowledge or information in order to admit or deny paragraph 23.

24.     Plaintiffs do not have sufficient knowledge or information in order to admit or deny paragraph 24.

25.     Plaintiffs admit that in the Lindholm/Goldstein action, the parties have filed their Rule 26 Initial Disclosure Statements, and that Plaintiffs have served Grace Conn. and Grace Delaware with interrogatories, requests for production, and Rule 30(b)(6) deposition notices. Plaintiffs admit that they spent four days at Grace's document depository in Boston in June, 2000. Plaintiffs further state that they served Grace Conn. and Grace Delaware in the Lindholm/Goldstein action with requests for admission, that they spent three days at Grace's documents depository in Boston in July, 2000, and that additional discovery has taken place in the Lindholm/Goldstein action. Plaintiffs do not have sufficient information to admit or deny

the remainder of paragraph 25.

26.    Plaintiffs admit paragraph 26, and further state that a second status conference was

held on September 7, which was also attended by one of the Price counsel.

27.    Plaintiffs admit paragraph 27.

WHEREFORE, Plaintiffs respectfully request that this Panel grant Defendants' Motion

to Transfer, and transfer these Zonolite Attic Insulation cases to the District of Massachusetts

for coordinated pretrial proceedings.

DATED: September 8, 2000

Kenneth G. Gilman, Esquire
David Pastor, Esquire
Edward L. Manchur, Esquire
Douglas M. Brooks, Esquire
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone 781/231-7850

Mark S. Williams, Esq.
Borrelli, Hutton & Williams, P.A.
(A Professional Corporation)
376 Trapelo Road
Belmont, Massachusetts 02478

**Attorneys for Individual and Representative
Plaintiffs, Edward M. Lindholm, Joel Goldstein
and John J. Szufnarowski**

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

In re:           :
             :
ZONOLITE ATTIC INSULATION : MDL DOCKET NO. 1376
             :

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF RESPONSE TO DEFENDANTS'
MOTION TO TRANSFER TO THE DISTRICT OF MASSACHUSETTS FOR
COORDINATED PRETRIAL PROCEEDINGS
UNDER 28 U.S.C. §1407**

Kenneth G. Gilman, Esquire
David Pastor, Esquire
Edward L. Manchur, Esquire
Douglas M. Brooks, Esquire
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts 01906

Mark S. Williams, Esquire
Borrelli, Hutton & Williams, P.A.
(A Professional Corporation)
376 Trapelo Road
Belmont, Massachusetts 02478

**Attorneys for Individual and Representative
Plaintiffs, Edward M. Lindholm, Joel Goldstein
and John J. Szufnarowski**

## I. **INTRODUCTION**

The plaintiffs in the actions styled <u>Lindholm v. W.R. Grace & Company, et al.</u>, Civil Action No. 00-CV-10323 (D. Mass) and <u>Goldstein, et al. v. W.R. Grace & Company, et al.</u>, Civil Action No. 00-CV-10873 (D. Mass) ("<u>Lindholm/Goldstein</u>"), two of the actions subject to the Motion to Transfer,[1] file this Memorandum in Support of their Response to Defendants' Motion to Transfer to the District of Massachusetts for Coordinated Pretrial Proceedings ("Motion to Transfer").

For the reasons stated herein, transfer and consolidation or coordination of all existing actions, and all other subsequently-filed related cases, in the District of Massachusetts would serve the convenience of the parties and witnesses and promote the just and efficient conduct of these actions.

## II. **FACTUAL BACKGROUND**

From 1963 through at least 1984, W.R. Grace & Company and W.R. Grace & Company-Conn. (collectively "Grace") aggressively promoted and sold hundreds of millions of cubic feet of Zonolite Attic Insulation ("Zonolite") for use in homes and other buildings. Zonolite is an insulation product purportedly designed to be installed by a consumer. At the time of manufacture and sale of Zonolite to the public, Grace secretly possessed detailed technical information which indicated that Zonolite contained extremely hazardous tremolite asbestos, a virtually indestructible substance which consists of tiny needle-like fibers. Exposure to even low levels of tremolite asbestos causes potentially fatal diseases, including asbestosis,

---

[1] On July 25, 2000, plaintiffs moved to consolidate these actions, and filed a first amended and consolidated complaint. On August 21, 2000, the Court (Saris, J.) granted plaintiffs' motion to consolidate.

lung cancer, and mesothelioma. Human lungs are unable to remove a tremolite asbestos fiber that has speared itself into the lung tissue. As a result, affected lung areas become inflamed, heavily scarred and ultimately nonfunctional.

Persons who are exposed to tremolite asbestos continuously or even on a one-time exposure basis can develop lung disease and severe respiratory problems. There is no known safe level of exposure to asbestos. With knowledge of the hazardous and defective nature of Zonolite, Grace manufactured and sold Zonolite for use as insulation in homes and other buildings. Grace concealed the defective and hazardous nature of Zonolite, and publicly represented to consumers and government agencies that Zonolite was safe and posed no health hazard to consumers. In fact, Zonolite is defective, highly toxic, contains tremolite asbestos fibers and represents an unacceptable risk of continuing harm to owners and occupiers of homes and other buildings in which Zonolite is installed.

Zonolite is uniformly hazardous, and members of the proposed class remain unaware of substantial risks and dangers posed by the presence of Zonolite in their homes and other buildings. Class members remain unaware of important safeguards necessary to avoid future exposure to hazardous levels of asbestos contained in Zonolite. In order to protect themselves from the hazards of Zonolite, class members will need to restrict their use and enjoyment of their real property, while implementing appropriate operations and maintenance practices to protect their health and safety.

### III. PENDING ACTIONS

Based on the allegedly unlawful practices of the defendants, plaintiffs in Lindholm/Goldstein sued Grace and its affiliated corporations for its manufacture, marketing,

distribution and sale of Zonolite. The Lindholm/Goldstein action is brought on behalf of persons who own or occupy real estate in which Zonolite has been installed, and asserts claims for violations of federal law (civil RICO), breach of express and implied warranty, state deceptive trade practice laws and common law.

The Lindholm action was the first filed of those actions dealing with Zonolite (filed February 18, 2000). The Goldstein action was filed in the District of Massachusetts on May 8, 2000. The Lindholm and Goldstein actions were consolidated on August 21, 2000, and the consolidated action is pending in the District of Massachusetts and is assigned to the Honorable Patti B. Saris.

The Lindholm/Goldstein plaintiffs are aware of two other related class actions pending in federal court. The first action, Price, et al. v. W.R. Grace & Company, et al., Civil Action No. 0071-M-DWM (filed April 14, 2000), is pending in the District of Montana (Missoula Division), and is assigned to the Honorable Donald W. Molloy. The second action, Hunter v. W.R. Grace & Company, et al., Civil Action No. 00-569-GPM (filed July 19, 2000) is pending in the United States District Court for the Southern District of Illinois and is assigned to the Honorable G. Patrick Murphy.[2]

## A.   Common Defendants

All pending federal actions seek classwide declaratory and injunctive relief, including programs for identifying and verifying the presence of Zonolite in buildings, programs to provide warning and notice to building owners, a research and education trust and remediation,

---

[2] Additionally, plaintiffs have become aware that two other Zonolite class actions, originally filed in state courts, have been removed to federal court, one in the Eastern District of Washington and one in the Southern District of Illinois.

ZONOLITE-2\MDL-TRANS.MEM          4

abatement and containment programs, and compensatory damages. W.R. Grace & Company and W.R. Grace & Company-Conn. are named as defendants in all federal actions. Two affiliates of W.R. Grace & Company are also named as defendants in all of the pending actions.[3]

**B.    Common Factual and Legal Issues**

The factual and legal issues raised by the pending federal actions are virtually identical. The factual allegations in each of the actions contain similar attacks on Grace's conduct in connection with its manufacture, marketing and sale of Zonolite. All of the actions advance common law claims arising out of Grace's conduct. The First Consolidated and Amended Complaint in Lindholm/Goldstein also asserts federal civil RICO claims, as well as state statutory claims. All actions share common issues, including:

a.    Whether Zonolite is defective and not reasonably safe in its design and/or manufacture;

b.    Whether Grace failed to provide adequate warnings in connection with Zonolite;

c.    Whether Zonolite contains asbestos;

d.    Whether Zonolite installed in homes and other buildings constitutes a present threat to health and safety in that owners and occupants, engaged in their ordinary use and enjoyment of their properties, will be exposed to dangerous levels of asbestos;

e.    Whether Grace concealed from consumers and government agencies responsible for public health, material information concerning the health hazards associated

---

[3] They are W.R. Grace & Co., a/k/a GRACE, and Sealed Air Corporation.

with Zonolite;

f.      Whether Grace's public announcements, statements, or representations concerning
        Zonolite were untrue, deceptive, or misleading;

g.      Whether preliminary injunctive relief is warranted, including warnings to the
        public regarding Zonolite; and

h.      Whether the plaintiffs have suffered harm to their property interests in that the
        presence of Zonolite requires property owners and property occupants to restrict
        their use and quiet enjoyment of their property.

Given the similarities among the allegations and claims asserted in the
Lindholm/Goldstein, Price and Hunter actions, transfer and coordination or consolidation under
28 U.S.C. §1407 is in the best interests of the litigants as well as the federal judicial system.
Coordination at this early juncture in these proceedings will provide an opportunity to avoid
inconsistent rulings, duplication of effort and the unnecessary expenditure of time and money
in the litigation of common legal and factual issues.

## IV.  TRANSFER TO ONE DISTRICT FOR COORDINATED OR CONSOLIDATED
PRETRIAL PROCEEDINGS WILL PROMOTE §1407'S GOALS OF INSURING THE
JUST AND EFFICIENT CONDUCT OF THE ACTIONS, AND AVOIDING
INCONSISTENT OR CONFLICTING SUBSTANTIVE AND PROCEDURAL
DETERMINATIONS

28 U.S.C. §1407(a) provides, in relevant part:

> When civil actions involving one or more common questions of
> fact are pending in different districts, such actions may be
> transferred to any district for coordinated or consolidated pretrial
> proceedings. Such transfers shall be made by the judicial panel on
> multidistrict litigation authorized by this section upon its
> determination that transfers for such proceedings will be for the
> convenience of the parties and witnesses and will promote the just
> and efficient conduct of such actions.

The transfer of actions to a single forum under §1407 is appropriate where, as here, it will prevent duplication of discovery and eliminate the possibility of overlapping or inconsistent pleading and class action determinations by courts of coordinate jurisdictions. In re Litig. Arising from Termination of Retirement Plan for Employees of Fireman's Fund Ins. Co., 422 F. Supp. 287, 290 (J.P.M.L. 1976); In re LTV Corp. Sec. Litig., 470 F. Supp. 859, 862 (J.P.M.L. 1979); In re "Agent Orange" Prod. Liability Litig., 597 F. Supp. 740, 752 (E.D.N.Y. 1984), affirmed, 818 F.2d 145 (2nd Cir. 1987), cert. denied, 484 U.S. 1004 (1988), on remand, 689 F. Supp. 1250 (E.D.N.Y. 1988).

The litmus test of transferability and coordination under §1407 is the presence of common questions of fact. In re Fed. Election Campaign Act Litig., 511 F.Supp. 821, 823 (J.P.M.L. 1979). Common questions are presumed "where two or more complaints assert comparable allegations against similar or identical defendants based on similar transactions and events." In re Air West, Inc. Securities Litig., 384 F.Supp. 609, 611 (J.P.M.L. 1974). See also In re Cuisinart Food Processor Antitrust Litig., 506 F. Supp. 651,654-655 (J.P.M.L. 1981). Each of the actions proposed for transfer and coordination or consolidation allege similar violations of state law. All of the claims derive from the same conduct of the same defendants, i.e., the manufacture, marketing, mass distribution and sale of Zonolite.

Discovery with respect to the foregoing common questions of fact will entail, of necessity, both oral testimony and documentary evidence which will be identical in all of the cases. Moreover, transfer and coordination is particularly appropriate at this time because none of the courts has issued any rulings on common factual or legal issues. Thus, coordination and transfer will effectuate an obvious savings of time and resources, will not delay the proceedings

and will eliminate potential confusion among class members.

## V. THE NEED FOR TRANSFER AND COORDINATION IN
## THE CLASS ACTION CONTEXT

Of central concern is the potential for inefficiency, confusion and prejudice created by the pendency of several federal actions seeking classwide relief in at least two Districts, all effectively seeking judicial determination as to the definition, certification and notice to members of a plaintiff class. The Panel has consistently held that when the risk of overlapping or inconsistent class determinations exist, transfer of actions to a single district for coordinated or consolidated pretrial proceedings is necessary in order to eliminate the possibility of inconsistent pretrial rulings, especially concerning class issues. In re Bristol Bay Salmon Fishery Antitrust Litig., 424 F. Supp. 504, 506 (J.P.M.L. 1976); In re Litig. Arising from Termination of Retirement Plan for Employees of Fireman's Fund Ins. Co., 422 F.Supp. at 290 (J.P.M.L. 1976); In re Nat'l Airlines, Inc. Maternity Leave Practices and Flight Attendant Wt. Program Litigation, 399 F.Supp. 1405, 1407 (J.P.M.L. 1975); In re Roadway Express, Inc. Employment Practices Litig., 384 F.Supp. 612, 613 (J.P.M.L. 1974). This is true even when only two actions are involved. In re First Nat'l Bank Sec.Litig., 451 F.Supp.995, 997 (J.P.M.L. 1978).

Transfer for consolidation or coordination is a practical necessity because all of these actions seek class action status on behalf of the same class or substantially overlapping classes and, as a result, there is a significant potential for conflicting or inconsistent rulings on class certification issues. See In re Computervision Corporation Securities Litig., 814 F.Supp. 85, 86 (J.P.M.L. 1993) (transfer needed to prevent inconsistent pretrial rulings, especially with respect to class certification); In re Cement and Concrete Antitrust Litig., 437 F. Supp. 750, 752 (J.P.M.L. 1977) ("since duplicating or overlapping classes are sought in most of the actions,

transfer to a single district is desirable in order to avoid the possibility of inconsistent class determinations"); In re Sugar Industry Antitrust Litig., 395 F. Supp. 1271, 1273 (J.P.M.L. 1975)(noting "the Panel has consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exists"); In re Roadway Express, Inc. Employment Practices Litig., 384 F. Supp. 612, 613 (J.P.M.L. 1974)(the existence of and the need to eliminate the possibility of inconsistent class determinations presents a highly persuasive reason for favoring transfer under Section 1407); In re Republic National-Realty Equities Securities Litig.; 382 F. Supp. 1403, 1406 (J.P.M.L. 1974)(same).

## VI.
## FORUM SELECTION CRITERIA UNDER § 1407

The Panel has articulated the following criteria for transfer under §1407:

1.  Transfer best serves the convenience of the parties and witnesses and promotes the just and efficient conduct of the litigation;

2.  Analysis of the effective complaints reveals that they share common factual questions concerning intricate events and methods of operation, which are sufficiently complex to warrant transfer; and

3.  Placement of the affected actions under the control of a single judge insures that duplicative discovery of complex factual questions is prevented, and the possibility of conflicting pretrial rulings is eliminated.

See In re Gen. Tire & Rubber Co. Sec. Litig., 429 F. Supp. 1032, 1034 (J.P.M.L. 1977).

The answer to the threshold question of whether transfer and coordination will effectuate Section 1407's purposes seems clear. In this matter, the question of "where" to consolidate the

actions is equally clear.

Among the factors the Panel considers in determining where to consolidate pending actions are the following: convenience of the parties and witnesses; the relative progress which has been achieved in actions pending in various districts; the location of parties, witnesses and documents; the expertise of a particular court in the areas of law and procedures which govern the actions; and, when no clear-cut choice emerges from analysis of the foregoing, the preference of the majority of the parties. In re New Mexico Natural Gas Antitrust Litig., 482 F. Supp. 333, 337 (J.P.M.L. 1979).

A.    **Location of Parties, Witnesses and Documents**

The three individual and representative plaintiffs in the Lindholm/Goldstein action, are residents of Massachusetts. Grace's Construction Products Division, the business division which oversaw the distribution and sale of Zonolite throughout the United States, was at all relevant times, and is now, located in Cambridge, Massachusetts. Virtually all of the relevant documents that Grace might be expected to produce are located in Massachusetts,[4] and a majority of the witnesses likely to be noticed for deposition and called at trial reside in Massachusetts. On May 25, 2000, the Court in the Lindholm/Goldstein action adopted the parties' proposed pretrial scheduling order (the "Order"), and the parties have engaged in substantial discovery under that Order. Pursuant to the Order, Phase I discovery is scheduled to be completed on September 25, 2000.

---

[4] Commencing on June 27, 2000 and continuing for seven days, several of plaintiffs' counsel in the Lindholm/Goldstein action reviewed thousands of documents produced by Grace at its central document depository at One Winthrop Square, Boston, Massachusetts.

Selection of any single forum will undoubtedly create inconvenience to some parties. However, this may be properly ameliorated by the transferee judge, who is authorized to arrange for the conduct of depositions in other Districts. In re IBM Peripheral EDP Devices Antitrust Litig., 411 F. Supp. 791 (J.P.M.L. 1976). Moreover, the Honorable Patti B. Saris, to whom the Lindholm/Goldstein action has been assigned, has expressed an interest in consolidating all actions in one jurisdiction under her supervision.[5]

Given the circumstances, the most important factor in forum selection becomes this Panel's choice of a transferee judge and District willing and able to manage the litigation on an efficient and prioritized basis. Because of the efficient management thus far by Judge Saris and because Judge Saris has expressed an interest in presiding over these actions, the District of Massachusetts is the most suitable forum to consolidate the pending actions.

**B.    Advancement of Proceedings**

If the proceedings in a particular forum are significantly more advanced than elsewhere, that forum would appear to be the appropriate selection for transferee status. In re Litig. Arising From Termination of Retirement Plan for Employees of Firemen's Fund, 422 F. Supp. at 291 (New Jersey preferable to more centrally located District of Missouri, because the pretrial proceedings in the New Jersey action were more advanced than those in the Missouri action); In re Computervision Corporation Securities Litigation, 814 F. Supp. at 86 (Massachusetts

---

[5] At a May 25, 2000 status conference conducted in chambers, Judge Saris suggested to all counsel in the Lindholm action, as well as one of the plaintiffs' counsel in the Price action, that consolidation of the pending actions in Massachusetts would be desirable. Judge Saris indicated her willingness to preside over the consolidated actions, even suggesting that she would be willing to express this view to the Judge assigned to the Price action, the Honorable Donald W. Molloy.

preferable to New York where defendant was headquartered in Massachusetts, records pertaining to the wrongdoing were located there, and the Massachusetts actions had already been consolidated before a judge who had entered a pretrial order establishing an orderly structure for their prosecution).

In the case at hand, little or no discovery has been conducted in the Price and Hunter actions. On the other hand, the parties in the Lindholm/Goldstein action are governed by a scheduling order and formal discovery is well under way in that action. Plaintiffs in the Lindholm/Goldstein action have served interrogatories and requests for admission, have reviewed thousands of documents produced by Grace in Boston, Massachusetts, and have noticed the depositions of Grace personnel. Similarly, defendants have served document requests, interrogatories and requests for admission on the plaintiffs in the Lindholm/Grace action, and have commenced inspections of the plaintiffs' properties.

C.    **The District of Massachusetts Is An Appropriate Transferee District**

The Zonolite actions should be transferred to the District of Massachusetts where the procedurally advanced Lindholm/Goldstein action is now pending. The several thousand documents necessary to litigate this case, many of which have already reviewed by counsel in the Lindholm/Goldstein action, all are located in the Boston metropolitan area. The majority of witnesses, including many of the defendants' Construction Products Division employees and former employees, are located there.

Importantly, the Honorable Patti B. Saris, to whom the Lindholm/Goldstein action is assigned, unquestionably has the experience and expertise to handle this litigation, and has expressed an interest and willingness to preside over these actions.

## VII.

## CONCLUSION

For the foregoing reasons and in light of the substantial similarity of allegations regarding Grace's illegal conduct, the likelihood of extensive and overlapping discovery and the potential for conflicting pretrial rulings, including rulings related to class certification, this Panel should order that the Zonolite actions be transferred to the District of Massachusetts, for coordinated and/or consolidated pretrial proceedings in that District under 28 U.S.C. § 1407.

DATED: September 8, 2000

Kenneth G. Gilman, Esquire
David Pastor, Esquire
Edward L. Manchur, Esquire
Douglas M. Brooks, Esquire
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts 01906

Mark S. Williams, Esquire
Borrelli, Hutton & Williams, P.A.
(A Professional Corporation)
376 Trapelo Road
Belmont, Massachusetts 02478

**Attorneys for Individual and Representative Plaintiffs, Edward M. Lindholm, Joel Goldstein and John J. Szufnarowski**

BEFORE THE JUDICIAL PANEL ON

MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re: | ) | MDL Docket No. _____ |
| | ) | |
| ZONOLITE ATTIC INSULATION | ) | |
| LITIGATION | ) | |
| | ) | |
| _____ | ) | |

## MOTION FOR TRANSFER AND COORDINATION
## OR CONSOLIDATION UNDER 28 U.S.C. § 1407

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

[Additional Counsel Listed on Signature Page]

Attorneys for Individual and Representative
Plaintiffs Paul Price, John Prebil, and Margery
Prebil

Plaintiffs Paul Price, John Prebil and Margery Prebil respectfully move the Judicial Panel on Multidistrict Litigation to transfer all federal Zonolite Attic insulation cases to a single district for coordination or consolidation, pursuant to 28 U.S.C. § 1407 and the Panel's Rules of Procedure. Plaintiffs respectfully request transfer to one of the three courts with already pending Zonolite cases. There are presently three Zonolite attic insulation class action cases pending before three able federal judges in three different districts, and statutory considerations under Section 1407 support transfer to any of these three courts. Zonolite was manufactured in Montana and, as a result, there are strong reason in terms of convenience and center of gravity to favor the District of Montana, where class certification and preliminary injunction motions were recently filed before Judge Donald W. Molloy and where discovery is active. Similarly, Judge Patti B. Saris of the District of Massachusetts has taken an active approach to case management in the Zonolite class action before her and has raised the issue of coordination of the federal cases and cooperation with the state courts. The Southern District of Illinois has a relatively uncrowded docket and Judge G. Patrick Murphy would also handle the Zonolite class claims before him swiftly and efficiently.

In support of this Motion, Plaintiffs state as follows:

1.      This Motion involves three nationwide class action complaints, all of which seek asbestos notification, education and remediation programs necessary to project persons with Zonolite attic insulation from avoidable asbestos exposures. Plaintiffs contend that, once warned, class members can protect themselves and their families by, for example, keeping their children from playing in asbestos contaminated attics and by taking other appropriate precautions, especially with remodeling activities. All class members need and deserve to be warned of the hazards posed by invisible asbestos fibers in order to prevent its disturbance and resulting exposure.

2.      The three pending Zonolite class action cases are:  Price v. W.R. Grace & Co., Civil Action No. CV 00-71-M-DWM, pending in the District of Montana (Missoula Division), assigned to the Honorable Donald W. Molloy; Lindholm v. W.R. Grace & Co., Civil Action No. 00 CV 10323PBS, pending in the District of Massachusetts, assigned to the Honorable

MOTION FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407

Patti B. Saris; and Hunter v. W.R. Grace & Co., Civil Action No. 00-569-GPM, pending in the

Southern District of Illinois and assigned to the Honorable G. Patrick Murphy. Class certification

and preliminary injunction motions are pending in Price before Judge Molloy and discovery is

active. These are non-personal injury cases seeking equitable/injunctive relief and economic

damages.

3.       Zonolite is an attic insulation product manufactured by W.R. Grace &

Company ("Grace") and its predecessor, Zonolite Company. Zonolite is made of asbestos-

contaminated vermiculite with readily airborne forms of asbestos. Grace's Zonolite Attic

insulation was marketed as a safe and non-toxic "do-it-yourself" product by homeowners, mostly

in older homes that are in frequent in need of maintenance, repair and remodeling involving

rewiring, installation and replacement of fixtures and utilities in ceilings, attics, and walls, and

similar dust-creating activities.

4.       Homeowners are generally unaware of the presence of asbestos in Grace's

Zonolite Attic insulation and the dangers posed when this product is disturbed. See Exhibits 1

and 2 hereto. Exhibit 1 is a demonstrative exhibit from a November, 1960 Zonolite advertisement

from the Western News proclaiming the product to be "safe" and "non-irritating to the skin and

lungs." Exhibit 2 is a demonstrative exhibit of a photograph of a bag of Zonolite attic insulation

and a Zonolite booklet "Modern Miracle of Insulation," stating that there was "no need for mask,"

and that the product "contains no harmful chemicals." As a result, homeowners nationwide are

exposed to Grace's Zonolite Attic insulation during maintenance, repair, and remodeling, and

even during routine visits to their attics, without any knowledge of the hazard, or protection from

the exposures. Zonolite constitutes an immediate, present and ongoing threat to public health and

endangerment of property.

5.       Plaintiffs contend that immediate identification of homes containing

Zonolite, informative warnings to owners and residents of those homes, and a comprehensive

program to develop and implement specialized safety and remediation procedures, administered

under court supervision and at the defendants' expense, is a necessity. Such actions, if taken

promptly and comprehensively, will prevent disease and death, and avoid the necessity of filing

future personal injury and wrongful death lawsuits. Earlier this month, the United States Public
Health Services, Region VIII, requested the National Institute for Occupational Safety & Health
("NIOSH") to investigate Zonolite health and safety risks to workers and residents. Exhibit 3
hereto is a true and correct copy of an August 1, 2000 letter to NIOSH from Hugh S. Sloan,
Assistant Attorney General.

          6.      The Price and Hunter actions seek virtually identical class-wide relief on
behalf of persons nationwide who own and/or reside in homes insulated with Zonolite Attic
insulation, including: (1) interim and final orders establishing a Defendant-funded Court-
supervised program to identify homes and buildings containing Zonolite Attic insulation, together
with a testing program to verify the suspected existence of Zonolite in homes and other buildings;
(2) interim and final orders establishing a Defendant-funded Court-supervised notification
program that will issue timely and pertinent warnings and information to affected persons,
informing them that Zonolite Attic insulation contains dangerous asbestos, that property owners
and occupants should not engage in remodeling or other building activities that risk disturbance of
Zonolite, etc.; (3) a final order establishing a Defendant-funded Court-supervised health and
safety research and education trust to conduct pertinent research and disseminate relevant
findings, the mission of the trust to include development of a specialized safety procedures and
remediation techniques appropriate to Zonolite Attic insulation contamination; and (4) a final
order establishing a Defendant-funded Court-supervised remediation and containment program
and fund, which will provide to Class members (a) information and protocols for safe containment
of the asbestos hazards during anticipated activities of repair, remodeling, storage or other use of
attic space, venting ceiling fans, etc.; (b) training, equipment, funding, and other assistance
necessary to ensure a safe environment in homes and other buildings during and following repair,
maintenance, remodeling, and other activities which disturb Zonolite Attic insulation; and (c)
training, equipment, funding, and other assistance necessary to contain and control  asbestos
hazards from undisturbed Zonolite Attic insulation so as to ensure a safe environment in homes
and other buildings during normal anticipated use. Copies of the Complaints in these actions are
attached hereto as Exhibits "B" and "C."

7.     The Lindholm action similarly seeks equitable relief and damages for a class of homeowners nationwide whose residence contain Zonolite. A copy of the Complaint in this action is attached hereto as Exhibit "D."

8.     All three actions name as defendants W.R. Grace & Company and related entities. The Price case names W.R. Grace & Company (a Delaware corporation); W.R. Grace & Company-Conn (a Connecticut corporation); W.R. Grace & Co., a/k/a Grace, an association of business entities; and Sealed Air Corporation (a Delaware corporation). The Hunter complaint, which closely tracks the Price complaint, names the same defendants. The Lindholm complaint names W.R. Grace & Company and W.R. Grace & Company (Connecticut).

9.     While the class definition and the relief sought is slightly broader in Price and in Hunter than in Lindholm, each of these cases seeks the same or similar asbestos notification, education and remediation relief from the same defendants on behalf of nationwide classes of persons who have Zonolite Attic insulation in their residences.

10.    The actions arise out of the same alleged conduct and raise identical issues of fact and law. In each case, the Court will be asked to determine the following factual and legal issues against W.R. Grace & Company:

(a)    Whether Zonolite attic insulation mined, manufactured and sold by Grace is dangerous in design manufacture because it contains dangerous levels of readily airborne asbestos;

(b)    Whether Grace failed to provide adequate warnings in connection with Zonolite attic insulation;

(c)    Whether Zonolite attic insulation installed in homes constitutes a present threat to health and safety because owners and occupants, engaged in their ordinary use and enjoyment of their properties, will be exposed to dangerous levels of asbestos;

(d)    Whether owners and occupiers of properties in which Zonolite attic insulation are installed are unaware of, or unappreciative of, dangers posed by this product, unaware of safeguards that must be taken to avoid harmful exposure to asbestos, unaware of operations and maintenance practices appropriate to properties where Zonolite attic insulation is

installed, and unaware of the necessity to, and prudent means by which to, engage in such
activities as testing, remediation, removal or abatement;

(e)     Whether Grace intentionally concealed asbestos health hazards from
consumers and government agencies responsible for public health;

(f)     Whether Grace's public announcements, statements, or representation
concerning Zonolite attic insulation were untrue, deceptive, or misleading; and

(g)     Whether Grace's conduct with respect to Zonolite attic insulation warrants
a classwide award of punitive damages.

11.     Underlying these basic common questions are a common nucleus of
operative facts and law, supported by plaintiffs' factual allegations as well as Grace's own
documents, a single mass-produced, standardized product and a single course of conduct by a
single group of closely related corporate entities.

12.     Each complaint seeks equitable and injunctive relief, damages, and punitive
damages.

13.     The cases are in the relatively early stages of litigation. The <u>Lindholm</u>
action was filed on February 22, 2000 in the District of Massachusetts. The <u>Price</u> action was filed
on or about April 13, 2000 in the District of Montana and has a nationwide class certification and
a preliminary injunction motion pending. The <u>Hunter</u> action was filed on July 19, 2000 in the
Southern District of Illinois. No motions are pending.

14.     No substantive rulings on motions to dismiss, motions for summary
judgment, class certification or other pretrial matters have been made in any of these cases. Since
all cases are in the beginning stage of the litigation, no prejudice or inconvenience would result
from transfer, coordination and/or consolidation.

15.     Discovery conducted in the <u>Price</u>, <u>Hunter</u>, and <u>Lindholm</u> actions will be
essentially coextensive because the allegations and the parties are virtually identical.

16.     The undersigned are presently aware of three pending federal District Court
actions, the <u>Price</u>, <u>Hunter</u>, and <u>Lindholm</u> actions, and anticipate initiation of additional actions,
arising from similar alleged conduct and raising identical issues involving the same product and

the same conduct, inter alia, the defendants' duty to create a comprehensive, court-supervised asbestos notification, education and remediation program as described above.

17.     Two additional Zonolite class actions are also pending in state courts. Daily et al. v. W.R. Grace & Co. et al., is pending in the Circuit Court, Third Judicial Circuit, Madison County, Illinois, Case No. 00L656, and was filed on behalf of Illinois and Missouri homeowners with Zonolite insulation. Barbanti v. W.R. Grace & Co. et al., is pending in Spokane County Superior Court, Case No. 002011756-6, and was filed on behalf of Washington residents with Zonolite insulation.

18.     Plaintiff in the Hunter action has received notice of a proposed transfer of that action for property damage and equitable relief to the Eastern District of Pennsylvania, as a tag-along action to the pending MDL 875 asbestos personal injury actions. Plaintiffs oppose the consolidation of the above-described Zonolite actions with MDL 875, because there are disparate factual and legal questions: the Zonolite litigation involves only property damage claims, while asbestos personal injury and death actions claims are at issue in MDL Docket No. 875.

19.     Early transfer and coordination or consolidation of pretrial proceedings of the Zonolite attic insulation cases in a single district which can focus exclusively on the issues unique to Zonolite litigation: specifically, the urgent need for early warning to homeowners, and prompt remediation to prevent future injury, will promote the convenience of the parties and witnesses and the just and efficient conduct of the action. It will also avoid the potential for duplication of discovery and inconsistent rulings, particularly on class action issues and, on the part of the common defendants, exposure to multiple injunctive claims arising out of the same general course of conduct. The result will be a significant saving of time and expense, the

expedited, comprehensive and consistent implementation of early equitable relief, development of

a consistent law of the case and the fair and economical adjudication of the actions.

DATED: August 17, 2000                                    Respectively submitted,


By: _Elizabeth J. Cabraser_
         Elizabeth Cabraser   by →J.V.


Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

McGARVEY, HEBERLING,
SULLIVAN & McGARVEY
745 South Main
Kalispell, MT  59901
Telephone:  (406) 752-5566
Facsimile:  (406) 752-7124

NESS MOTLEY LOADHOLT
RICHARDSON & POOLE
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC  29465
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9440

LUKINS & ANNIS, P.S.
1600 Washington Trust Financial Center
717 W Sprague Ave.
Spokane, WA  99201-0466
Telephone: (509) 455-9555
Facsimile: (509) 747-2323

COHEN, MILSTEIN,
HAUSFELD & TOLL,  P.L.L.C.
999 Third Avenue, Suite 3600
Seattle, WA  98104
Telephone:  (206) 521-0080
Facsimile:  (206) 521-0166

COHEN, MILSTEIN
HAUSFELD & TOLL, P.L.L.C.
West Tower, Suite 500
1100 New York Avenue, N.W.
Washington, DC 20005-3964
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Attorneys for Individual and Representative
Plaintiffs Paul Price, John Prebil, and
Margery Prebil

# ZONOLITE NOW...

## Save on fuel, add comfort



**ZONOLITE**
Vermiculite
Insulating Fill
Easiest of all to install.
Just pour it, level it,
leave it!

**$1.45**
per bag
covers
17 sq. ft. 3" thick

## Just pour it, level it, leave it!

« V-8, Fo

---

## ZONOLITE INSULATING FILL



Zonolite Insulating Fill is used to insulate and sound-deaden side-walls and ceilings of all types of buildings. Zonolite Fill has one of the best insulation factors of any insulation on the market ("K" factor .28 B.t.u.).

Zonolite Insulating Fill comes in 4 cu. ft. bags which weigh about 23 lbs. No special installation equipment is needed. Zonolite Fill is poured from the bag, like popcorn. It flows readily around pipes, wiring, etc., to make a complete, uniform fill without tamping, cutting, or nailing.

Zonolite Insulating Fill is a non-conductor of electricity and can be safely installed over or around electrical wiring. It is rot-proof and does not permit tunneling or nesting by rodents. It does not attract vermin or termites. It is safe to handle because it is non-irritating to the skin and lungs.

## It is safe to handle because it is non-irritating to the skin and lungs.

EXHIBIT

EXHIBIT
32
Emergency Mance



> "No need for mask ...It pours...cleanly.
>
> . . . Contains no harmful chemicals."



IF YOU ARE BUILDING A HOUSE, don't take chances with just "insulation." Be sure of permanent, efficient performance. Select Zonolite, the material that fulfills all the requirements for good insulation.

If your present home is not insulated, don't shiver through another winter nor swelter through another summer. Let your present wasted fuel dollars pay for a complete Zonolite installation ... now!

Why not talk to your lumber dealer today? He'll be glad to tell you all about it.

*Permanent as the Earth Itself*



pounded. When insulation decomposes, absorbs moisture, becomes infested with vermin, or loses its insulating efficiency after it is installed, it may have to be removed and replaced. That means cleaning out all the old insulation, putting in new insulation, and repairing the walls or ceilings. It means a lot of trouble and expense.

The only way to be sure that this will not happen to you is to select an insulation of proved permanence. Select Zonolite Insulation. Through rigorous testing and extensive usage over many years, Zonolite has proved that it fulfills completely all of the following requirements for good insulation. No other known material can equal such a record.

1. **Dual Insulation Value** . . . Insulates both by its air cell construction and its glittering, reflective surfaces.
2. **Uniform Tamper-Proof Density** . . . Same density installed in the home as when it leaves the factory.
3. **Complete Fill** . . . Fills walls solidly leaving no voids. Does not "ball-up" on rough obstructions, nails, wires, or pipe. Cannot be "fluffed up."
4. **Light in Weight** . . . Zonolite adds only 1½ pounds per square foot of ceiling.
5. **Easy to Install** . . . No need for mask, gloves, or special equipment. It pours easily and cleanly. The average house can be insulated in just a few hours.
6. **Chemically Inert** . . . Contains no harmful chemicals. Will not corrode any material. Will not stain wall or plaster. Is practically moisture-proof.
7. **Fire-proof** . . . Not merely fire "resistant." It melts at about 2400° Fahrenheit.
8. **Vermin-proof** . . . Mice, rats, insect larvae, or termites will not attack it.
9. **Rot-proof** . . . Will not decompose nor give off odors. It is a 100% mineral material.
10. **Naturally Permanent** . . . The permanence of Zonolite is not dependent upon synthetic treatments. Its inherent permanence means efficient insulation for your home forever.



EXHIBIT
31
Emergency Notice

EXHIBIT 2



## United States Public Health Service
### Region VIII
1961 Stout Street Room 498
Denver, Colorado 80294-3538

August 1, 2000

Dr. Linda Rosenstock, Director
National Institute for Occupational
Safety & Health
Hubert H. Humphrey Building Room 715H
200 Independence Ave., S.W.
Washington, DC  20201

Dear Dr. Rosenstock,

I would like to bring to your attention a significant occupational and public health concern regarding the widespread dissemination of amphibole (actinolite-tremolite series) asbestos in Libby, Montana, and potentially in vermiculite and products used throughout the country.  As you may be aware, NIOSH researchers evaluated vermiculite miners, that were exposed to asbestos, in Libby, Montana in the early 1980's.  NIOSH investigators found significantly elevated risks of asbestos-related malignant and non-malignant respiratory disease among these workers.  Concurrently, Dr. Jim Lockey at the University of Cincinnati identified elevated pulmonary disease among workers with much lower asbestos exposures at a facility processing Libby vermiculite in Ohio.  These articles have been included for your information.

In November 1999, Libby became the focus of national attention when it was reported that a number of residents that did not work at the vermiculite mine or processing facilities were suffering from asbestos-related diseases.  Subsequently, researchers from the Environmental Protection Agency (EPA), Public Health Service (PHS) Region 8, and Agency for Toxic Substances and Disease Registry (ATSDR) began intensive environmental and public health investigations of the site.  Medical screening (e.g., chest x-rays, pulmonary function testing, questionnaires) is currently being conducted on 4200 former workers, family contacts, and others potentially at risk.  NIOSH researchers (Dr. Robert Castellan, Dr. Leslie Stayner, Dr. Pat Sullivan, Dr. Vince Castranova, Mr. Ken Wallingford, and Mr. Ralph Zumwalde) have also been providing intermittent technical assistance to these efforts.

EXHIBIT 3

One issue that has very recently come to our attention, is that end-product vermiculite insulation, and most likely other end-products, apparently contained appreciable quantities of asbestos, but were marketed, sold, and used throughout the country without adequate labeling or warnings and were commonly considered to be non-toxic (see enclosed information and video tape). Internal company documentation and recent testing of residential insulation materials, reportedly used in over one million homes, reveals that even minimal handling by workers or residents poses a substantial health risk (airborne exposures up to 150 times the current occupational standards (0.1 f/cc)).

Recent discussions between the aforementioned federal partners working at the Libby site identified the pressing need for increased NIOSH participation and response to occupational health issues of concern. Suggestions for NIOSH consideration include: 1) the need for further characterization of current worker exposures (e.g., construction/insulation workers, nursery workers) that occur when handling vermiculite end-products; 2) nationwide (i.e., "Hazard Alert") warning to workers of the potential dangers associated with these products; 3) possible epidemiologic or clinical investigations of appropriate groups that may currently or formally be at increased risk; and 4) a collaborative update of the original NIOSH Libby cohorts by NIOSH and ATSDR investigators to help understand the clinical progression of disease, morbidity, and mortality associated with this unique, and perhaps more toxic, form of asbestos. This information would be of great value, not only to those in Libby, but also for those at risk throughout the country.

If I can be of any further assistance to you in this matter please contact me at (303) 844-7660 or Dr. Aubrey Miller at (303) 844-7657.

Sincerely,

Hugh S. Sloan, D.S.W.
Assistant Surgeon General
Regional Health Administrator

Enclosures

cc:  Dr. Henry Falk, Associate Administrator, ATSDR
Mr. Max Dodson, Assistant Regional Administrator, USEPA Region 8
Regional Director, DHHS, Region VIII
Principal Deputy ASH, OPHS, DHHS

Table C.
## U.S. District Courts—Civil Cases Commenced, Terminated, and Pending During the 12-Month Periods Ending September 30, 1998 and 1999

| Circuit | Filings | | | Terminations | | | Pending | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1998 | 1999 | Percent Change | 1998 | 1999 | Percent Change | 1998¹ | 1999 | Percent Change |
| TOTAL | 256,787 | 260,271 | 1.4 | 262,301 | 272,526 | 3.9 | 262,573 | 250,318 | -4.7 |
| DC | 3,365 | 3,577 | 6.3 | 3,264 | 3,167 | -3.0 | 2,847 | 3,257 | 14.4 |
| 1ST | 7,150 | 6,927 | -3.1 | 6,760 | 7,211 | 6.7 | 8,012 | 7,728 | -3.6 |
| ME | 793 | 768 | -3.2 | 752 | 728 | -3.2 | 411 | 451 | 9.7 |
| MA | 3,263 | 3,352 | 2.7 | 3,113 | 3,479 | 11.0 | 3,766 | 3,639 | -3.4 |
| NH | 749 | 668 | -10.8 | 744 | 717 | -3.6 | 602 | 553 | -8.1 |
| RI | 689 | 624 | -9.4 | 609 | 680 | 11.7 | 704 | 648 | -8.0 |
| PR | 1,656 | 1,515 | -8.5 | 1,542 | 1,607 | 4.2 | 2,529 | 2,437 | -3.6 |
| 2ND | 24,891 | 29,443 | 18.3 | 25,460 | 25,257 | -0.8 | 29,619 | 33,805 | 14.1 |
| CT | 2,763 | 2,729 | -1.2 | 2,808 | 2,966 | 5.6 | 3,908 | 3,671 | -6.1 |
| NY,N | 2,114 | 2,118 | 0.2 | 2,044 | 2,158 | 5.6 | 3,028 | 2,988 | -1.3 |
| NY,E | 8,190 | 8,701 | 6.2 | 8,222 | 7,949 | -3.3 | 8,911 | 9,663 | 8.4 |
| NY,S | 9,870 | 13,773 | 39.5 | 10,144 | 10,199 | 0.5 | 11,387 | 14,961 | 31.4 |
| NY,W | 1,490 | 1,711 | 14.8 | 1,720 | 1,524 | -11.4 | 2,012 | 2,199 | 9.3 |
| VT | 464 | 411 | -11.4 | 522 | 461 | -11.7 | 373 | 323 | -13.4 |
| 3RD | 21,398 | 20,925 | -2.2 | 21,974 | 20,824 | -5.2 | 18,254 | 18,355 | 0.6 |
| DE | 793 | 961 | 21.2 | 661 | 778 | 17.7 | 892 | 1,075 | 20.5 |
| NJ | 6,292 | 6,387 | 1.5 | 6,603 | 6,285 | -4.8 | 5,409 | 5,511 | 1.9 |
| PA,E | 8,625 | 7,795 | -9.6 | 9,038 | 8,185 | -9.4 | 6,762 | 6,372 | -5.8 |
| PA,M | 2,173 | 2,368 | 9.0 | 2,088 | 2,263 | 8.4 | 1,663 | 1,768 | 6.3 |
| PA,W | 3,036 | 2,970 | -2.2 | 3,095 | 2,959 | -4.4 | 2,959 | 2,970 | 0.4 |
| VI | 479 | 444 | -7.3 | 489 | 354 | -27.6 | 569 | 659 | 15.8 |
| 4TH | 20,840 | 20,719 | -0.6 | 21,144 | 20,518 | -3.0 | 13,998 | 14,199 | 1.4 |
| MD | 4,619 | 4,044 | -12.5 | 4,603 | 4,373 | -5.0 | 3,102 | 2,773 | -10.6 |
| NC,E | 1,568 | 1,451 | -7.5 | 1,535 | 1,322 | -13.9 | 998 | 1,127 | 12.9 |
| NC,M | 1,229 | 1,123 | -8.6 | 1,293 | 1,080 | -16.5 | 858 | 901 | 5.0 |
| NC,W | 1,068 | 1,043 | -2.4 | 1,109 | 1,076 | -3.0 | 1,041 | 1,008 | -3.2 |
| SC | 4,142 | 4,354 | 5.1 | 4,373 | 4,063 | -7.1 | 3,078 | 3,369 | 9.5 |
| VA,E | 4,497 | 5,051 | 12.3 | 4,522 | 4,812 | 6.4 | 2,038 | 2,277 | 11.7 |
| VA,W | 1,780 | 1,797 | 1.0 | 1,898 | 1,839 | -3.1 | 1,272 | 1,230 | -3.3 |
| WV,N | 622 | 653 | 5.0 | 604 | 632 | 4.6 | 533 | 554 | 3.9 |
| WV,S | 1,315 | 1,203 | -8.5 | 1,207 | 1,321 | 9.4 | 1,078 | 960 | -11.0 |

EXHIBIT 4

## Table C. (September 30, 1999—Continued)

| Circuit | Filings | | | Terminations | | | Pending | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1998 | 1999 | Percent Change | 1998 | 1999 | Percent Change | 1998[1] | 1999 | Percent Change |
| **5TH** | **30,720** | **32,959** | **7.3** | **34,210** | **32,723** | **-4.4** | **34,649** | **34,885** | **0.7** |
| LA,E | 3,705 | 3,915 | 5.7 | 3,846 | 4,094 | 6.4 | 2,968 | 2,789 | -6.0 |
| LA,M | 1,113 | 1,166 | 4.8 | 2,913 | 1,076 | -63.1 | 8,763 | 8,853 | 1.0 |
| LA,W | 2,425 | 2,521 | 4.0 | 2,677 | 2,482 | -7.3 | 2,232 | 2,271 | 1.7 |
| MS,N | 1,182 | 1,174 | -0.7 | 1,236 | 1,196 | -3.2 | 1,058 | 1,036 | -2.1 |
| MS,S | 2,258 | 2,429 | 7.6 | 2,375 | 2,188 | -7.9 | 1,987 | 2,228 | 12.1 |
| TX,N | 5,611 | 5,676 | 1.2 | 5,726 | 5,704 | -0.4 | 3,925 | 3,897 | -0.7 |
| TX,E | 4,842 | 5,334 | 10.2 | 5,052 | 5,543 | 9.7 | 5,899 | 5,690 | -3.6 |
| TX,S | 6,409 | 7,485 | 16.8 | 6,850 | 7,228 | 5.5 | 5,501 | 5,758 | 4.7 |
| TX,W | 3,175 | 3,259 | 2.6 | 3,535 | 3,212 | -9.1 | 2,316 | 2,363 | 2.0 |
| **6TH** | **33,197** | **26,845** | **-19.1** | **32,682** | **26,148** | **-20.0** | **34,522** | **35,219** | **2.0** |
| KY,E | 2,350 | 2,258 | -3.9 | 2,564 | 2,311 | -9.9 | 1,903 | 1,850 | -2.8 |
| KY,W | 1,573 | 1,611 | 2.4 | 1,620 | 1,598 | -1.4 | 1,362 | 1,375 | 1.0 |
| MI,E | 9,829 | 6,569 | -33.2 | 6,142 | 6,228 | 1.4 | 18,781 | 19,122 | 1.8 |
| MI,W | 1,610 | 1,591 | -1.2 | 1,879 | 1,677 | -10.8 | 1,153 | 1,067 | -7.5 |
| OH,N | 9,721 | 6,833 | -29.7 | 12,084 | 5,909 | -51.1 | 3,346 | 4,270 | 27.6 |
| OH,S | 3,117 | 3,137 | 0.6 | 3,198 | 3,389 | 6.3 | 3,581 | 3,329 | -7.0 |
| TN,E | 1,841 | 1,758 | -4.5 | 2,052 | 1,941 | -5.4 | 1,922 | 1,739 | -9.5 |
| TN,M | 1,575 | 1,576 | 0.1 | 1,538 | 1,482 | -3.7 | 1,395 | 1,469 | 6.7 |
| TN,W | 1,581 | 1,512 | -4.4 | 1,615 | 1,613 | -0.1 | 1,079 | 978 | -9.4 |
| **7TH** | **18,269** | **19,066** | **4.4** | **18,733** | **19,077** | **1.8** | **15,184** | **15,173** | **-0.1** |
| IL,N | 8,878 | 9,491 | 6.9 | 8,816 | 9,446 | 7.1 | 7,556 | 7,601 | 0.6 |
| IL,C | 1,270 | 1,192 | -6.2 | 1,248 | 1,203 | -3.6 | 1,170 | 1,159 | -1.0 |
| IL,S | 1,341 | 1,335 | -0.5 | 1,524 | 1,305 | -14.4 | 1,119 | 1,149 | 2.7 |
| IN,N | 1,867 | 1,926 | 3.2 | 1,904 | 2,166 | 13.8 | 1,770 | 1,530 | -13.6 |
| IN,S | 2,608 | 2,808 | 7.7 | 2,950 | 2,657 | -9.9 | 2,119 | 2,270 | 7.1 |
| WI,E | 1,383 | 1,494 | 8.0 | 1,360 | 1,456 | 7.1 | 1,127 | 1,165 | 3.4 |
| WI,W | 922 | 820 | -11.1 | 931 | 844 | -9.4 | 323 | 299 | -7.4 |
| **8TH** | **14,936** | **13,783** | **-7.7** | **15,731** | **14,598** | **-7.2** | **13,191** | **12,376** | **-6.2** |
| AR,E | 2,248 | 2,382 | 6.0 | 2,436 | 2,389 | -1.9 | 2,125 | 2,118 | -0.3 |
| AR,W | 1,072 | 1,018 | -5.0 | 1,158 | 1,093 | -5.6 | 693 | 618 | -10.8 |
| IA,N | 597 | 637 | 6.7 | 639 | 640 | 0.2 | 598 | 595 | -0.5 |
| IA,S | 1,036 | 1,075 | 3.8 | 1,062 | 1,044 | -1.7 | 995 | 1,026 | 3.1 |
| MN | 3,001 | 2,138 | -28.8 | 2,764 | 2,454 | -11.2 | 2,476 | 2,160 | -12.8 |
| MO,E | 2,568 | 2,382 | -7.3 | 2,872 | 2,655 | -7.6 | 2,570 | 2,297 | -10.6 |
| MO,W | 2,563 | 2,398 | -6.4 | 2,919 | 2,578 | -11.7 | 2,162 | 1,982 | -8.3 |
| NE | 1,123 | 964 | -14.2 | 1,090 | 1,003 | -8.0 | 942 | 903 | -4.2 |
| ND | 284 | 331 | 16.5 | 329 | 312 | -5.2 | 234 | 253 | 8.1 |
| SD | 444 | 458 | 3.2 | 462 | 430 | -6.9 | 396 | 424 | 7.1 |

## Table C. (September 30, 1999—Continued)

| Circuit | Filings | | | Terminations | | | Pending | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1998 | 1999 | Percent Change | 1998 | 1999 | Percent Change | 1998[1] | 1999 | Percent Change |
| **9TH** | **39,010** | **43,777** | **12.2** | **38,812** | **39,615** | **2.1** | **34,298** | **38,460** | **12.1** |
| AK | 503 | 757 | 50.5 | 608 | 544 | -10.5 | 495 | 708 | 43.0 |
| AZ | 3,214 | 3,073 | -4.4 | 3,526 | 3,146 | -10.8 | 3,503 | 3,430 | -2.1 |
| CA.N | 6,234 | 6,800 | 9.1 | 6,171 | 6,569 | 6.4 | 5,060 | 5,291 | 4.6 |
| CA.E | 3,863 | 4,196 | 8.6 | 3,481 | 3,885 | 11.6 | 4,378 | 4,689 | 7.1 |
| CA.C | 11,721 | 15,061 | 28.5 | 10,800 | 11,710 | 8.4 | 9,139 | 12,490 | 36.7 |
| CA.S | 2,591 | 3,018 | 16.5 | 3,583 | 2,852 | -20.4 | 1,835 | 2,001 | 9.0 |
| HI | 1,075 | 918 | -14.6 | 1,108 | 1,147 | 3.5 | 1,472 | 1,243 | -15.6 |
| ID | 547 | 597 | 9.1 | 675 | 581 | -13.9 | 610 | 626 | 2.6 |
| MT | 660 | 661 | 0.2 | 686 | 696 | 1.5 | 763 | 728 | -4.6 |
| NV | 2,926 | 2,670 | -8.8 | 2,647 | 2,737 | 3.4 | 2,504 | 2,437 | -2.7 |
| OR | 2,201 | 2,366 | 7.5 | 2,220 | 2,255 | 1.6 | 1,890 | 2,001 | 5.9 |
| WA.E | 689 | 625 | -9.3 | 718 | 588 | -18.1 | 482 | 519 | 7.7 |
| WA.W | 2,631 | 2,853 | 8.4 | 2,457 | 2,742 | 11.6 | 2,043 | 2,154 | 5.4 |
| GUAM | 71 | 116 | 63.4 | 66 | 83 | 25.8 | 61 | 94 | 54.1 |
| NMI | 84 | 66 | -21.4 | 66 | 80 | 21.2 | 63 | 49 | -22.2 |
| **10TH** | **11,562** | **11,580** | **0.2** | **11,747** | **12,015** | **2.3** | **10,895** | **10,460** | **-4.0** |
| CO | 2,854 | 2,713 | -5.0 | 2,787 | 2,873 | 3.1 | 2,824 | 2,664 | -5.7 |
| KS | 1,812 | 1,891 | 4.4 | 1,944 | 1,884 | -3.1 | 1,636 | 1,643 | 0.4 |
| NM | 1,692 | 1,578 | -6.7 | 1,671 | 1,713 | 2.5 | 1,648 | 1,513 | -8.2 |
| OK.N | 1,049 | 1,118 | 6.6 | 1,146 | 1,162 | 1.4 | 1,011 | 967 | -4.4 |
| OK.E | 678 | 703 | 3.7 | 692 | 773 | 11.7 | 502 | 432 | -14.0 |
| OK.W | 1,992 | 2,051 | 3.0 | 2,063 | 2,047 | -0.8 | 1,366 | 1,370 | 0.3 |
| UT | 1,079 | 1,170 | 8.4 | 1,070 | 1,176 | 9.9 | 1,451 | 1,445 | -0.4 |
| WY | 406 | 356 | -12.3 | 374 | 387 | 3.5 | 457 | 426 | -6.8 |
| **11TH** | **31,449** | **30,670** | **-2.5** | **31,784** | **51,373** | **61.6** | **47,104** | **26,401** | **-44.0** |
| AL.N | 6,693 | 3,795 | -43.3 | 5,657 | 23,811 | 320.9 | 24,080 | 4,064 | -83.1 |
| AL.M | 1,505 | 1,533 | 1.9 | 1,510 | 1,496 | -0.9 | 1,436 | 1,473 | 2.6 |
| AL.S | 1,344 | 1,261 | -6.2 | 1,202 | 1,407 | 23.7 | 1,273 | 1,047 | -17.8 |
| FL.N | 1,608 | 1,627 | 1.2 | 1,734 | 1,684 | -2.9 | 1,478 | 1,421 | -3.9 |
| FL.M | 6,434 | 7,005 | 8.9 | 6,652 | 7,263 | 9.2 | 6,078 | 5,820 | -4.3 |
| FL.S | 6,754 | 6,936 | 2.7 | 7,448 | 7,166 | -3.8 | 5,894 | 5,664 | -3.9 |
| GA.N | 4,587 | 4,412 | -3.8 | 4,466 | 4,822 | 8.0 | 4,204 | 3,794 | -9.8 |
| GA.M | 1,249 | 1,406 | 12.6 | 1,712 | 1,417 | -17.2 | 1,590 | 1,579 | -0.7 |
| GA.S | 1,275 | 2,695 | 111.4 | 1,403 | 2,227 | 58.7 | 1,071 | 1,539 | 43.7 |

NOTE: PENDING CASES EXCLUDE ASBESTOS CASES TRANSFERRED TO PA.E UNDER ORDER 875 OF THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION.
[1] REVISED.

Table C-1.
## U.S. District Courts—Civil Cases Commenced, Terminated, and Pending During the 12-Month Period Ending September 30, 1999

| Circuit and District | Total Civil Cases | | | | U.S. Civil Cases | | | | Private Civil Cases | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Pending Sept. 30, 1998 | Commenced | Terminated | Pending Sept. 30, 1999 | Pending Sept. 30, 1998 | Commenced | Terminated | Pending Sept. 30, 1999 | Pending Sept. 30, 1998 | Commenced | Terminated | Pending Sept. 30, 1999 |
| TOTAL | 262,573 | 260,271 | 272,526 | 250,318 | 45,078 | 65,443 | 61,309 | 49,212 | 217,495 | 194,828 | 211,217 | 201,106 |
| DC | 2,847 | 3,577 | 3,167 | 3,257 | 1,618 | 2,066 | 1,861 | 1,823 | 1,229 | 1,511 | 1,306 | 1,434 |
| 1ST | 8,012 | 6,927 | 7,211 | 7,728 | 1,521 | 1,727 | 1,798 | 1,450 | 6,491 | 5,200 | 5,413 | 6,278 |
| ME | 411 | 768 | 728 | 451 | 89 | 178 | 175 | 92 | 322 | 590 | 553 | 359 |
| MA | 3,766 | 3,352 | 3,479 | 3,639 | 666 | 743 | 777 | 632 | 3,100 | 2,609 | 2,702 | 3,007 |
| NH | 602 | 668 | 717 | 553 | 78 | 149 | 145 | 82 | 524 | 519 | 572 | 471 |
| RI | 704 | 624 | 680 | 648 | 122 | 125 | 130 | 117 | 582 | 499 | 550 | 531 |
| PR | 2,529 | 1,515 | 1,607 | 2,437 | 566 | 532 | 571 | 527 | 1,963 | 983 | 1,036 | 1,910 |
| 2ND | 29,619 | 29,443 | 25,257 | 33,805 | 4,930 | 6,413 | 5,947 | 5,396 | 24,689 | 23,030 | 19,310 | 28,409 |
| CT | 3,908 | 2,729 | 2,966 | 3,671 | 453 | 434 | 486 | 401 | 3,455 | 2,295 | 2,460 | 3,270 |
| NY,N | 3,028 | 2,118 | 2,158 | 2,988 | 441 | 394 | 448 | 387 | 2,587 | 1,724 | 1,710 | 2,601 |
| NY,E | 8,911 | 8,701 | 7,949 | 9,663 | 2,266 | 3,595 | 3,138 | 2,723 | 6,645 | 5,106 | 4,811 | 6,940 |
| NY,S | 11,387 | 13,773 | 10,199 | 14,961 | 1,300 | 1,392 | 1,317 | 1,375 | 10,087 | 12,381 | 8,882 | 13,586 |
| NY,W | 2,012 | 1,711 | 1,524 | 2,199 | 381 | 455 | 424 | 412 | 1,631 | 1,256 | 1,100 | 1,787 |
| VT | 373 | 411 | 461 | 323 | 89 | 143 | 134 | 98 | 284 | 268 | 327 | 225 |
| 3RD | 18,254 | 20,925 | 20,824 | 18,355 | 2,833 | 3,629 | 3,599 | 2,863 | 15,421 | 17,296 | 17,225 | 15,492 |
| DE | 892 | 961 | 778 | 1,075 | 98 | 139 | 122 | 115 | 794 | 822 | 656 | 960 |
| NJ | 5,409 | 6,387 | 6,285 | 5,511 | 920 | 1,127 | 1,136 | 911 | 4,489 | 5,260 | 5,149 | 4,600 |
| PA,E | 6,762 | 7,795 | 8,185 | 6,372 | 801 | 902 | 900 | 803 | 5,961 | 6,893 | 7,285 | 5,569 |
| PA,M | 1,663 | 2,368 | 2,263 | 1,768 | 400 | 639 | 618 | 421 | 1,263 | 1,729 | 1,645 | 1,347 |
| PA,W | 2,959 | 2,970 | 2,959 | 2,970 | 530 | 766 | 772 | 524 | 2,429 | 2,204 | 2,187 | 2,446 |
| VI | 569 | 444 | 354 | 659 | 84 | 56 | 51 | 89 | 485 | 388 | 303 | 570 |
| 4TH | 13,998 | 20,719 | 20,518 | 14,199 | 4,103 | 5,448 | 5,422 | 4,129 | 9,895 | 15,271 | 15,096 | 10,070 |
| MD | 3,102 | 4,044 | 4,373 | 2,773 | 755 | 970 | 1,074 | 651 | 2,347 | 3,074 | 3,299 | 2,122 |
| NC,E | 998 | 1,451 | 1,322 | 1,127 | 327 | 514 | 459 | 382 | 671 | 937 | 863 | 745 |
| NC,M | 858 | 1,123 | 1,080 | 901 | 314 | 432 | 387 | 359 | 544 | 691 | 693 | 542 |
| NC,W | 1,041 | 1,043 | 1,076 | 1,008 | 315 | 286 | 322 | 279 | 726 | 757 | 754 | 729 |
| SC | 3,078 | 4,354 | 4,063 | 3,369 | 889 | 1,288 | 1,140 | 1,037 | 2,189 | 3,066 | 2,923 | 2,332 |
| VA,E | 2,038 | 5,051 | 4,812 | 2,277 | 335 | 704 | 668 | 371 | 1,703 | 4,347 | 4,144 | 1,906 |
| VA,W | 1,272 | 1,797 | 1,839 | 1,230 | 493 | 575 | 570 | 498 | 779 | 1,222 | 1,269 | 732 |
| WV,N | 533 | 653 | 632 | 554 | 177 | 225 | 231 | 171 | 356 | 428 | 401 | 383 |
| WV,S | 1,078 | 1,203 | 1,321 | 960 | 498 | 454 | 571 | 381 | 580 | 749 | 750 | 579 |

## Table C-1. (September 30, 1999—Continued)

| Circuit and District | Total Civil Cases | | | | U.S. Civil Cases | | | | Private Civil Cases | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Pending Sept. 30, 1998 | Commenced | Terminated | Pending Sept. 30, 1999 | Pending Sept. 30, 1998 | Commenced | Terminated | Pending Sept. 30, 1999 | Pending Sept. 30, 1998 | Commenced | Terminated | Pending Sept. 30, 1999 |
| **5TH** | 34,649 | 32,959 | 32,723 | 34,885 | 3,985 | 6,372 | 5,798 | 4,559 | 30,664 | 26,587 | 26,925 | 30,326 |
| LA,E | 2,968 | 3,915 | 4,094 | 2,789 | 273 | 545 | 516 | 302 | 2,695 | 3,370 | 3,578 | 2,487 |
| LA,M | 8,763 | 1,166 | 1,076 | 8,853 | 103 | 90 | 108 | 85 | 8,660 | 1,076 | 968 | 8,768 |
| LA,W | 2,232 | 2,521 | 2,482 | 2,271 | 448 | 612 | 615 | 445 | 1,784 | 1,909 | 1,867 | 1,826 |
| MS,N | 1,058 | 1,174 | 1,196 | 1,036 | 177 | 149 | 199 | 127 | 881 | 1,025 | 997 | 909 |
| MS,S | 1,987 | 2,429 | 2,188 | 2,228 | 279 | 436 | 379 | 336 | 1,708 | 1,993 | 1,809 | 1,892 |
| TX,N | 3,925 | 5,676 | 5,704 | 3,897 | 725 | 1,200 | 1,113 | 812 | 3,200 | 4,476 | 4,591 | 3,085 |
| TX,E | 5,899 | 5,334 | 5,543 | 5,690 | 435 | 380 | 429 | 386 | 5,464 | 4,954 | 5,114 | 5,304 |
| TX,S | 5,501 | 7,485 | 7,228 | 5,758 | 861 | 1,837 | 1,429 | 1,269 | 4,640 | 5,648 | 5,799 | 4,489 |
| TX,W | 2,316 | 3,259 | 3,212 | 2,363 | 684 | 1,123 | 1,010 | 797 | 1,632 | 2,136 | 2,202 | 1,566 |
| **6TH** | 34,522 | 26,845 | 26,148 | 35,219 | 4,901 | 8,696 | 8,273 | 5,324 | 29,621 | 18,149 | 17,875 | 29,895 |
| KY,E | 1,903 | 2,258 | 2,311 | 1,850 | 996 | 1,234 | 1,325 | 905 | 907 | 1,024 | 986 | 945 |
| KY,W | 1,362 | 1,611 | 1,598 | 1,375 | 313 | 381 | 396 | 298 | 1,049 | 1,230 | 1,202 | 1,077 |
| MI,E | 18,781 | 6,569 | 6,228 | 19,122 | 1,062 | 3,160 | 3,024 | 1,198 | 17,719 | 3,409 | 3,204 | 17,924 |
| MI,W | 1,153 | 1,591 | 1,677 | 1,067 | 218 | 425 | 378 | 265 | 935 | 1,166 | 1,299 | 802 |
| OH,N | 3,346 | 6,833 | 5,909 | 4,270 | 748 | 1,418 | 1,272 | 894 | 2,598 | 5,415 | 4,637 | 3,376 |
| OH,S | 3,581 | 3,137 | 3,389 | 3,329 | 674 | 923 | 723 | 874 | 2,907 | 2,214 | 2,666 | 2,455 |
| TN,E | 1,922 | 1,758 | 1,941 | 1,739 | 459 | 486 | 511 | 434 | 1,463 | 1,272 | 1,430 | 1,305 |
| TN,M | 1,395 | 1,576 | 1,482 | 1,489 | 254 | 292 | 260 | 286 | 1,141 | 1,284 | 1,222 | 1,203 |
| TN,W | 1,079 | 1,512 | 1,613 | 978 | 177 | 377 | 384 | 170 | 902 | 1,135 | 1,229 | 808 |
| **7TH** | 15,184 | 19,066 | 19,077 | 15,173 | 2,050 | 3,310 | 3,150 | 2,210 | 13,134 | 15,756 | 15,927 | 12,963 |
| IL,N | 7,556 | 9,491 | 9,446 | 7,601 | 790 | 1,062 | 1,000 | 852 | 6,766 | 8,429 | 8,446 | 6,749 |
| IL,C | 1,170 | 1,192 | 1,203 | 1,159 | 197 | 291 | 306 | 182 | 973 | 941 | 897 | 977 |
| IL,S | 1,119 | 1,335 | 1,305 | 1,149 | 253 | 394 | 358 | 289 | 866 | 941 | 947 | 860 |
| IN,N | 1,770 | 1,926 | 2,166 | 1,530 | 160 | 368 | 340 | 188 | 1,610 | 1,558 | 1,826 | 1,342 |
| IN,S | 2,119 | 2,808 | 2,657 | 2,270 | 371 | 614 | 553 | 432 | 1,748 | 2,194 | 2,104 | 1,838 |
| WI,E | 1,127 | 1,494 | 1,456 | 1,165 | 203 | 356 | 355 | 204 | 924 | 1,138 | 1,101 | 961 |
| WI,W | 323 | 820 | 844 | 299 | 76 | 225 | 238 | 63 | 247 | 595 | 606 | 236 |
| **8TH** | 13,191 | 13,783 | 14,598 | 12,376 | 3,042 | 4,016 | 4,271 | 2,787 | 10,149 | 9,767 | 10,327 | 9,589 |
| AR,E | 2,125 | 2,382 | 2,389 | 2,118 | 666 | 825 | 868 | 623 | 1,459 | 1,557 | 1,521 | 1,495 |
| AR,W | 693 | 1,018 | 1,093 | 618 | 232 | 409 | 427 | 214 | 461 | 609 | 666 | 404 |
| IA,N | 598 | 637 | 640 | 595 | 144 | 226 | 230 | 140 | 454 | 411 | 410 | 455 |
| IA,S | 995 | 1,075 | 1,044 | 1,026 | 218 | 355 | 316 | 257 | 777 | 720 | 728 | 769 |
| MN | 2,476 | 2,138 | 2,454 | 2,160 | 376 | 425 | 531 | 270 | 2,100 | 1,713 | 1,923 | 1,890 |
| MO,E | 2,570 | 2,382 | 2,655 | 2,297 | 439 | 536 | 604 | 371 | 2,131 | 1,846 | 2,051 | 1,926 |
| MO,W | 2,162 | 2,398 | 2,578 | 1,982 | 618 | 690 | 787 | 521 | 1,544 | 1,708 | 1,791 | 1,461 |
| NE | 942 | 964 | 1,003 | 903 | 155 | 236 | 236 | 155 | 787 | 728 | 767 | 748 |
| ND | 234 | 331 | 312 | 253 | 84 | 159 | 135 | 108 | 150 | 172 | 177 | 145 |
| SD | 396 | 458 | 430 | 424 | 110 | 155 | 137 | 128 | 286 | 303 | 293 | 296 |

## Table C-1. (September 30, 1999—Continued)

| Circuit and District | Total Civil Cases | | | | U.S. Civil Cases | | | | Private Civil Cases | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Pending Sept. 30, 1998 | Commenced | Terminated | Pending Sept. 30, 1999 | Pending Sept. 30, 1998 | Commenced | Terminated | Pending Sept. 30, 1999 | Pending Sept. 30, 1998 | Commenced | Terminated | Pending Sept. 30, 1999 |
| **9TH** | 34,298 | 43,777 | 39,615 | 38,460 | 7,120 | 12,766 | 9,842 | 10,044 | 27,178 | 31,011 | 29,773 | 28,416 |
| AK | 495 | 757 | 544 | 708 | 120 | 171 | 154 | 137 | 375 | 586 | 390 | 571 |
| AZ | 3,503 | 3,073 | 3,146 | 3,430 | 579 | 524 | 576 | 527 | 2,924 | 2,549 | 2,570 | 2,903 |
| CA,N | 5,060 | 6,800 | 6,569 | 5,291 | 911 | 2,094 | 1,972 | 1,033 | 4,149 | 4,706 | 4,597 | 4,258 |
| CA,E | 4,378 | 4,196 | 3,885 | 4,689 | 716 | 809 | 704 | 821 | 3,662 | 3,387 | 3,181 | 3,868 |
| CA,C | 9,139 | 15,061 | 11,710 | 12,490 | 2,640 | 5,593 | 3,209 | 5,024 | 6,499 | 9,468 | 8,501 | 7,466 |
| CA,S | 1,835 | 3,018 | 2,852 | 2,001 | 447 | 920 | 862 | 505 | 1,388 | 2,098 | 1,990 | 1,496 |
| HI | 1,472 | 918 | 1,147 | 1,243 | 135 | 164 | 162 | 137 | 1,337 | 754 | 985 | 1,106 |
| ID | 610 | 597 | 581 | 626 | 135 | 175 | 171 | 139 | 475 | 422 | 410 | 487 |
| MT | 763 | 661 | 696 | 728 | 191 | 179 | 202 | 168 | 572 | 482 | 494 | 560 |
| NV | 2,504 | 2,670 | 2,737 | 2,437 | 311 | 511 | 443 | 379 | 2,193 | 2,159 | 2,294 | 2,058 |
| OR | 1,890 | 2,366 | 2,255 | 2,001 | 411 | 651 | 606 | 456 | 1,479 | 1,715 | 1,649 | 1,545 |
| WA,E | 482 | 625 | 588 | 519 | 134 | 198 | 189 | 143 | 348 | 427 | 399 | 376 |
| WA,W | 2,043 | 2,853 | 2,742 | 2,154 | 363 | 661 | 513 | 511 | 1,680 | 2,192 | 2,229 | 1,643 |
| GUAM | 61 | 116 | 83 | 94 | 14 | 84 | 47 | 51 | 47 | 32 | 36 | 43 |
| NMI | 63 | 66 | 80 | 49 | 13 | 32 | 32 | 13 | 50 | 34 | 48 | 36 |
| **10TH** | 10,895 | 11,580 | 12,015 | 10,460 | 2,809 | 3,220 | 3,365 | 2,664 | 8,086 | 8,360 | 8,650 | 7,796 |
| CO | 2,824 | 2,713 | 2,873 | 2,664 | 667 | 562 | 662 | 567 | 2,157 | 2,151 | 2,211 | 2,097 |
| KS | 1,636 | 1,891 | 1,884 | 1,643 | 432 | 586 | 594 | 424 | 1,204 | 1,305 | 1,290 | 1,219 |
| NM | 1,648 | 1,578 | 1,713 | 1,513 | 459 | 485 | 510 | 434 | 1,189 | 1,093 | 1,203 | 1,079 |
| OK,N | 1,011 | 1,118 | 1,162 | 967 | 302 | 381 | 371 | 312 | 709 | 737 | 791 | 655 |
| OK,E | 502 | 703 | 773 | 432 | 191 | 244 | 299 | 136 | 311 | 459 | 474 | 296 |
| OK,W | 1,366 | 2,051 | 2,047 | 1,370 | 365 | 640 | 612 | 393 | 1,001 | 1,411 | 1,435 | 977 |
| UT | 1,451 | 1,170 | 1,176 | 1,445 | 303 | 235 | 238 | 300 | 1,148 | 935 | 938 | 1,145 |
| WY | 457 | 356 | 387 | 426 | 90 | 87 | 79 | 98 | 367 | 269 | 308 | 328 |
| **11TH** | 47,104 | 30,670 | 51,373 | 26,401 | 6,166 | 7,780 | 7,983 | 5,963 | 40,938 | 22,890 | 43,390 | 20,438 |
| AL,N | 24,080 | 3,795 | 23,811 | 4,064 | 594 | 741 | 813 | 522 | 23,486 | 3,054 | 22,998 | 3,542 |
| AL,M | 1,436 | 1,533 | 1,496 | 1,473 | 320 | 287 | 277 | 330 | 1,116 | 1,246 | 1,219 | 1,143 |
| AL,S | 1,273 | 1,261 | 1,487 | 1,047 | 381 | 337 | 430 | 288 | 892 | 924 | 1,057 | 759 |
| FL,N | 1,478 | 1,627 | 1,684 | 1,421 | 457 | 504 | 509 | 452 | 1,021 | 1,123 | 1,175 | 969 |
| FL,M | 6,078 | 7,005 | 7,263 | 5,820 | 1,627 | 2,276 | 2,188 | 1,715 | 4,451 | 4,729 | 5,075 | 4,105 |
| FL,S | 5,894 | 6,936 | 7,166 | 5,664 | 1,382 | 2,049 | 2,071 | 1,360 | 4,512 | 4,887 | 5,095 | 4,304 |
| GA,N | 4,204 | 4,412 | 4,822 | 3,794 | 841 | 943 | 1,024 | 760 | 3,363 | 3,469 | 3,798 | 3,034 |
| GA,M | 1,590 | 1,406 | 1,417 | 1,579 | 376 | 350 | 344 | 382 | 1,214 | 1,056 | 1,073 | 1,197 |
| GA,S | 1,071 | 2,695 | 2,227 | 1,539 | 188 | 293 | 327 | 154 | 883 | 2,402 | 1,900 | 1,385 |

NOTE: PENDING CASES EXCLUDE ASBESTOS CASES TRANSFERRED TO PA,E UNDER ORDER 875 OF THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION.