# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## MDL DOCKET NO. 1376

## IN RE ZONOLITE ATTIC INSULATION LITIGATION

### Reply Brief In Support Of Motion To Transfer To The District of Massachusetts For Coordinated Pretrial Proceedings Pursuant To 28 U.S.C. § 1407

W.R. Grace & Company (a Delaware corporation) ("Grace Delaware") and W.R. Grace & Company-Conn. (a Connecticut corporation) ("Grace Conn.") submit this reply brief in support of their motion to transfer the Zonolite Attic Insulation Cases in which movants are named as defendants to the United States District Court for the District of Massachusetts for coordinated pretrial proceedings before the Honorable Patti B. Saris. The parties to the four cases that were the subject of the motion all agree that coordinated pretrial proceedings are appropriate and that the cases should be transferred to a single district for such proceedings. The District of Massachusetts is the preferred location of the defendants and the *Lindholm/Goldstein* plaintiffs, whereas the plaintiffs in *Price* are neutral and the plaintiff in *Hunter* favors the

Southern District of Illinois. Consideration of the relevant factors demonstrates that the District of Massachusetts, in addition to being the preferred choice of district of more of the parties, is the logical choice: more documents and witnesses are located in the District of Massachusetts than in any other district; the relevant offices of defendant Grace Conn. are located there; the District of Massachusetts is the most convenient location for counsel, most of whom are located in the East Coast; and the District of Massachusetts has the lowest caseload per active judge of any of the three districts in question. The cases should be transferred to the District of Massachusetts.

## FACTUAL BACKGROUND[1]

Developments since Grace Delaware and Grace Conn. filed their motion to transfer have further demonstrated the need for coordinated pretrial proceedings and the propriety of transferring the case to the District of Massachusetts. After the motion to transfer was filed, the two state class actions referenced in the motion to transfer were removed to federal court. Grace Conn. and Grace Delaware promptly filed a Notice of Pendency of Potential Tag-Along Actions concerning these cases. Like the first four actions, these two new actions allege dangers from Zonolite Attic Insulation and seek to represent classes of owners and occupiers of real property in which Zonolite Attic Insulation has been installed. One of these actions, *Barbanti*, was subsequently remanded to state court. The other case, *Daily*, remains in the United States District Court for the Southern District of Illinois, although plaintiffs have moved to remand *Daily* to state court. The *Daily* litigation has not progressed very far to date – defendant Grace Conn. has not yet answered the complaint, and no discovery has been initiated.

The procedural developments in *Lindholm/Goldstein*, *Price*, and *Hunter* show that the same issues will be briefed and addressed in three different courts. In *Lindholm/Goldstein*, the parties are in the middle of discovery on class certification issues, with briefing on class

---

[1] In their memoranda, counsel for each of the plaintiffs have included gratuitous statements that set forth their views concerning the merits of the Zonolite Attic Insulation litigation and the conduct of the defendants. Grace Conn. and Grace Delaware disagree vigorously with these statements, but will not respond to them in this context, because the merits of the Zonolite Attic Insulation litigation and the conduct of the defendants are not at issue before this Panel.

2

certification to follow. In *Price*, the plaintiffs have filed a motion for class certification, and the parties have just begun discovery on class certification issues. Although proceedings have not yet begun on class certification issues in *Hunter* or *Daily*, they should begin in the near future, pursuant to Rule 23's directive to determine class certification "[a]s soon as practicable after the commencement of an action." Fed. R. Civ. P. 23(c)(1). Thus, the three federal district courts will soon be presented with overlapping class certification questions, which will give rise to the possibility of duplicative judicial effort and inconsistent rulings that coordinated proceedings would avoid.

## ARGUMENT

### I.      The Parties Agree That Coordinated Pretrial Proceedings Will Promote The Just And Efficient Conduct Of the Cases.

All parties to the four cases that were the subject of the original motion to transfer agree that transfer of the cases to a single judge for coordinated pretrial proceedings is necessary and appropriate. The plaintiffs in *Price* filed their own motion for transfer and coordination, which is being treated as a response to the motion filed by Grace Delaware and Grace Conn. The plaintiff in *Hunter* and the plaintiffs in *Lindholm/Goldstein* each filed a memorandum agreeing that the federal actions should be consolidated and transferred for pretrial proceedings. The unanimity of opinion among disparate parties and lawyers demonstrates that transfer and coordination are appropriate. The addition of a fifth case, *Daily*, to the pool of cases eligible for transfer makes the need for coordinated pretrial proceedings even more apparent.

3

II.     **The Location Of The Parties, Witnesses, And Documents, The Relative
         Status Of The Cases, And The Relative Caseloads Of The Three Courts All
         Favor Transfer To The District Of Massachusetts.**

         The relevant factors that the Panel considers in deciding where to transfer cases

favor transfer to the District of Massachusetts.

         A.      **Massachusetts is the most convenient location because the named
                 plaintiffs in two of the cases live in Massachusetts, more witnesses are
                 likely to be in Massachusetts than in any other state, the vast majority
                 of the relevant documents are located in Massachusetts, and most
                 counsel are closer to Massachusetts than any other court.**

         As was demonstrated in the motion to transfer, Massachusetts is where the named

plaintiffs[2] in two cases live and where most of the relevant evidence can be found. One can

anticipate that the primary witnesses plaintiffs will seek to depose will be current and former

employees of Grace Conn.'s Construction Products Division, which is located in Cambridge,

Massachusetts, and those witnesses are most likely to be located in Massachusetts. The

overwhelming majority of the relevant documents are located in Massachusetts, where Grace

Conn. maintains a central document repository it makes available to plaintiffs in asbestos

personal injury actions and where Grace Conn. has thousands of additional documents that may

be sought in discovery. The fact that Grace Conn.'s relevant offices are located in Massachusetts

weighs decidedly in favor of transfer to that district. See, e.g., In re Air Disaster near Brunswick,

Georgia, 794 F. Supp. 393, 394 (J.P.M.L. 1992); In re LTV Corp. Securities Lit., 470 F. Supp.

859, 862 (J.P.M.L. 1979); In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litigation, 424 F.

Supp. 504, 507 (J.P.M.L. 1976).

         Counsel in *Hunter* claims that Illinois has substantial connections to this case, but

those connections are inconsequential. That Grace processed and distributed Zonolite Attic

Insulation from plants in Illinois merits no weight, given that Grace had plants in Massachusetts

and 26 other states. Counsel makes no showing that any relevant witnesses or documents are

---

[2] The fact that plaintiff's counsel in *Price* and *Daily* elected to include multiple named plaintiffs is an artifice that
should not weigh in favor of transfer to their districts; the more relevant consideration is the number of parties from
different cases.

4

located in Illinois; the fact that some portion of Grace's relevant documents are currently located in Denver, which is 851.6 miles from East St. Louis and definitely *not* in the Midwest,[3] does not favor transferring the cases to Illinois, especially given that the great majority of the documents are located in Massachusetts. The boxes of documents in Colorado will be returned to Massachusetts within six to eight weeks and documents relevant to the class actions will be added to the existing central repository of documents.

*Hunter* counsel's fallback position, that Montana is more appropriate than Massachusetts because mining and milling occurred in Montana, does not withstand scrutiny. The focus of the plaintiffs' claims in these cases is not how vermiculite was mined and milled, but whether Zonolite Attic Insulation is hazardous and what information was or should have been communicated to consumers. The majority of the evidence relevant to those claims is more likely to be found in Massachusetts than Montana.

Finally, Massachusetts is a more convenient location for counsel than the other two courts. Counsel in *Hunter* argues that East St. Louis is centrally located and more convenient for the lawyers, but the New York City lawyers who present that argument to the Panel are closer to Boston than East St. Louis. No lawyers, except for local counsel in *Hunter* and counsel in *Daily*, are located anywhere near East St. Louis; the vast majority of the law firms involved are located or have offices either in Boston or in cities on the east coast that are within an hour of Boston by air. Transferring the case to East St. Louis would require almost every lawyer in the case to travel 1000 miles or more from his or her office to attend court proceedings. Such inconvenience for the benefit of the *Hunter* plaintiff would not serve the interests of all parties.

Counsel in *Hunter* cites three cases in which the Panel has mentioned the geographical centrality of a district as a factor, but in each of the three cases, considerations in

---

[3] See Webster's Ninth New Collegiate Dictionary 1482 (1989) (defining Midwest as "including area around Great Lakes & in upper Mississippi valley from Ohio & sometimes Ky. on the E to N. Dak., S. Dak., Nebr. & Kans. on the W.").

5

addition to the "central location" of the forum weighed in favor of the Panel's decision. In the TMJ Implants Product Liability litigation, the Panel deemed the District of Minnesota the appropriate forum because over 100 actions had been commenced in that district, the judge who was assigned the litigation had presided over "a number" of these cases and was familiar with legal issues raised by the litigation, and finally, Minnesota was a geographically central location. In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 844 F. Supp. 1553, 1554 (J.P.M.L. 1994). Similar concerns, more relevant than geography, drove the Panel's selection in the Factor VIII litigation: the panel selected the Northern District of Illinois because one defendant was located in Illinois and another operated a plant there, and because a Northern District of Illinois judge was familiar with the issues raised in the litigation. In re Factor VIII or IX Concentrate Blood Prods. Liab. Litig., 853 F. Supp. 454, 455 (J.P.M.L. 1993). The final case cited by the *Hunter* plaintiff relied on the factors that a defendant had its principal place of business and operations base in the chosen forum and that the aircraft flight at issue originated in that district; centrality was not the dominant factor. In re Air Disaster Near Brunswick, Georgia, 794 F. Supp. 1553, 1554 (J.P.M.L. 1992). The cases cited by the *Hunter* plaintiff all illustrate that the geographically central location of a potential district is not sufficient, standing alone and in the face of other factors favoring other locations, to justify transfer to that district.

### B.  The relative status of the cases favors transfer to Massachusetts.

Although all of the relevant cases are at an early enough stage to make transfer appropriate, the Massachusetts cases have had the most activity and the most judicial involvement. In *Lindholm/Goldstein*, the parties are in the midst of discovery on class certification issues: defendants have served plaintiffs with interrogatories, requests for admissions, and requests for documents; plaintiffs have served defendants with interrogatories, requests for admissions, and requests for documents; depositions have been noticed; the testing of plaintiffs' homes has begun; plaintiffs' counsel has spent seven days in Grace Conn.'s document repository; and witnesses have been identified for the class certification hearing. The court has held two status conferences and has, in the words of the *Price* plaintiffs, "taken an

6

active approach to case management . . . and has raised the issue of coordination of the federal cases and cooperation with state courts." Memorandum of *Price* Plaintiffs in Support of Transfer at 1.

By contrast, the other cases have not progressed as far or had as much judicial involvement. Answers have not yet been filed in *Hunter* or in *Daily*. In *Price*, the parties have started class certification discovery, but written requests were just recently served, and the court just recently held the first status conference in the case. Thus, the relative status of the cases favors transfer to Massachusetts.

### C.    Massachusetts has the lightest case load per active judge of any of the three districts.

Counsel for the plaintiff in *Hunter* offers statistics about the number of cases in each district to support the claim that the cases should be transferred to Illinois or Montana, but the statistics used, showing the raw number of cases per district, have little meaning, or else every multidistrict action would be transferred to District of Maine, the court with the fewest pending cases. The more relevant statistic is the number of pending cases per active judge in each of the three districts. See, e.g., In re Petroleum Products Antitrust Litigation, 419 F. Supp. 712, 719 (J.P.M.L. 1976) (transferring cases to district with "significantly lighter caseload per judge"). Those figures, presented in the following table, show that the District of Massachusetts has fewer pending cases per active judge than either the Southern District of Illinois or the District of Montana.

|  | Number of Cases Pending as of June 30, 2000 | Number of Active Judges | Number of Pending Cases Per Active Judge |
|---|---|---|---|
| United States District Court for the District of Massachusetts | 3701 | 14 | 264 |
| United States District Court for the Southern District of Illinois | 1202 | 4 | 300 |
| United States District Court for the District of Montana | 746 | 2 | 373 |

7

These statistics do not reveal the full extent of the problem in the District of Montana. That court has a backlog caused by the recent death and recent or imminent retirement of judges, and Ninth Circuit Chief Judge Proctor Hug Jr. has assigned visiting judges from other districts to reduce the backlog. See "Ninth Circuit Alarmed by State's Shortage," Montana Lawyer, August 2000, at 9 (reporting on letter from Chief Judge Hug that urged special consideration of a pending judicial nomination and discussed measures being taken by Chief Judge Hug to address the shortage); "Montana Judges Stepping Down," Montana Lawyer, August 2000, at 8 (referring to"[a] crisis looming for federal courts in Montana") (both articles attached hereto as Exhibit A).

Counsel for the *Hunter* plaintiff also relies on statistics concerning the time it takes these three courts to resolve cases, but again relies on the wrong statistics. Counsel stresses the time to trial in these courts, but the motion seeks transfer only for coordinated pretrial purposes; indeed, the transferee court may not transfer the case to itself for trial. See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). The time to trial is therefore not relevant to the pending motion and is not made relevant by the speculative possibility that Congress will enact a law to allow district judges to retain transferred cases for trial. The more relevant statistic, which the Panel has relied on in other cases, see, e.g., In re Petroleum Products Antitrust Litigation, 419 F. Supp. at 719, is the time it takes the respective districts to dispose of all actions. According to the chart in Exhibit 2 to the *Hunter* plaintiff's memorandum, the median time from filing to disposition is nine months in Massachusetts and the Southern District of Illinois and eleven months in Montana – statistics which do not favor the Southern District of Illinois and weigh against the District of Montana.

In sum, the relevant statistics for judicial case loads and time to disposition show that the District of Massachusetts would be able to handle the additional cases and dispose of them expeditiously. This factor, along with the convenience for the parties and witnesses and the relative status of the cases, strongly favors transferring the Zonolite Attic Insulation cases to the District of Massachusetts.

8

## CONCLUSION

For the foregoing reasons, as well as for the reasons stated in their initial memorandum, Grace Conn. and Grace Delaware respectfully request that the Zonolite Attic Insulation cases be transferred to the United States District Court for the District of Massachusetts.

Respectfully submitted,

Arlene Fickler
Lisa M. Salazar
R. David Walk, Jr.
Wendi S. Meltzer
Hoyle, Morris & Kerr LLP
1650 Market Street - Suite 4900
Philadelphia, PA 19103
(215) 981-5700

Dated: September 18, 2000

Attorneys for W.R. Grace & Company (a Delaware corporation) and W.R. Grace & Company-Conn. (a Connecticut corporation)

9

# THE MONTANA



August 2000
Volume 25, No. 11

THE STATE BAR OF MONTANA

# THE JUDICIARY'S LONG, HOT SUMMER



■ Suddenly, a critical shortage of judges in Montana, as death and retirement strike.

■ Montana Supreme court issues an emergency order to quell its out-of-control caseload.


And Scott Albers is still irritating the hell out of them.

Plus: Proposed amendments to State Bar of Montana by-laws

A crisis looming for federal courts in Montana

# Montana judges stepping down

*Federal-judge announcements,*
*one death, leave a critical*
*shortage; a district judge retires.*

A chief federal judge in Montana and a state district judge have announced their intentions to step down or take semi-retirement from their judgeships.

They are:

■ Chief U.S. District Judge Jack Shanstrom, who has announced his intention to take "senior status" — continuing to work as a federal judge but with a reduced caseload — in November 2001, and perhaps sooner.

■ U.S. District Judge Charles Lovell, who unexpectedly announced his move to a senior status in June, and whose replacement has already been nominated by President Clinton.

■ District Judge Maurice R. Colberg, of Montana's 13th Judicial District (Yellowstone County), who will retire on Nov. 30, after serving in the judgeship for 11 years.

Meanwhile, Senior U.S. District Judge Paul Hatfield of Great Falls died in July. (see story on Page 29).

THE STATE'S Judicial Nomination Commission is taking applications for Judge Colberg's replacement (see accompanying story), but the

## Applications being accepted for state district judge seat

The Judicial Nomination Commission is now accepting applications for state district judge in the Yellowstone County district being vacated by Judge Colberg. Applications will be accepted until Aug. 21, the Commission said.

The position of state district judge pays $77,439 a year; and that will be raised to $82,606 on July 1, 2001. An appointment would fill out the remaining two years of Judge Colberg's seat — to retain the seat an appointee will have to stand for election in the 2002 general election.

Those interested in applying may obtain an application form from Frank S. Stock, secretary of the Nomination Commission at P.O. Box 1001, Polson MT 59860 (phone: 406-883-2642) or Commission member L. Randall Bishop, P.O. Box 3353, Billings MT 56103 (phone: 406-245-7555).

Following the close of the application period, the public will have 30 days to comment on those seeking the appointment. The Commission will then meet this fall to interview the applicants. They will select from three to five candidates and forward the names to Gov. Marc Racicot for his selection. The appointment is subject to confirmation by the Montana Senate in the next Legislature.

main concern comes over the filling of the federal judgeships. The fear is that a delay in replacing Judge Lovell will put more work pressure on Judge Shanstrom and other federal judges in Montana — and the vacating of Judge Shanstrom's present status would only make matters worse.

Sen. Max Baucus, D-Mont., with support of his Republican Senate colleague from Montana, Conrad Burns, recommended to President Clinton in July that U.S. Magistrate Richard W. Anderson of Billings fill Judge Lovell's position. But winning approval of the Republican-controlled U.S. Senate won't be any easy task for a lame-duck president. If George W. Bush wins the presidential nomination, he may appoint someone else for Judge Lovell's seat.

Judge Anderson, 62, told the *Billings Gazette* that he would keep his current chambers in Billings if his nomination were confirmed, even though Judge Lovell was based in Helena. Judge Anderson said he would commute to Helena and Great Falls to hear cases.

Judge Anderson said that Montana is short of federal judges following Judge Lovell's retirement and the death of Judge Hatfield, who also had been a senior judge with a reduced workload. He told the *Gazette* that if the Lovell position remains vacant for long, things could start to pile up on the two sitting U.S. district judges for Montana, Judge Shanstrom in Billings and Donald Molloy in Missoula.

MEANWHILE, Judge Shanstrom, who was appointed to the federal bench in

# Ninth Circuit alarmed by state's shortage

Chief Judge Procter Hug Jr. of the U.S. Ninth Circuit Court of Appeals, which includes Montana, sent a letter in late July to Sen. Orrin Hatch, R-Utah, chairman of the Senate Judiciary Committe, urging special consideration of Judge Richard Anderson's nomination to fill the federal judgeship being vacated by Judge Charles Lovell of Helena.

"There are currently nearly 1,000 cases pending in the Montana (U.S.) District Court," Judge Hug was quoted in the *Billings Gazette* as writing in the letter. "The caseload is complicated by the large geographic area for which district judges are responsible," he wrote.

"Of particular concern is the substantial criminal calendar," Judge Hug wrote to Sen. Hatch. "As you know, the Speedy Trial Act established very strict deadlines for processing criminal cases."

Judge Hug said he has assigned visiting judges from other districts to help Montana and also designated Ninth Circuit Judge Sidney R. Thomas to hear cases from the U.S. District Court in addition to his appellate caseload, the *Gazette* said.

"However, these are temporary stopgap measures that cannot continue indefinitely," Judge Hug wrote.

The *Billings Gazette* also said that Judge Thomas, as chief of the Northern Administrative Unit of the Ninth Circuit Court, also sent a letter to Sen. Hatch.

"If the current vacancy is not timely filled, there is a great probability that Montana will have only one active district judge to serve an area greater than the combined states of New York, Pennsylvania, Maryland, Virginia and Delaware... The district has already been forced to request visiting judges on very short notice to avoid having criminal cases dismissed for failure to comply with the Speedy Trial Act."

Judge Thomas said that some of the 1,000 active cases in district have been pending for more than a decade, and that on average, 1,000 new cases are filed in Montana's federal courts each year.

1990, said he would take senior status earlier than November 2001 if he were eligible. He said he would officially inform the new president right after the election this November.

Judge Shanstrom has 36 years of judicial experience. He was a state district judge for 18 years before becoming federal magistrate in Billings for more than seven years. He is a graduate of the University of Montana Law School.

**STATE DISTRICT JUDGE COLBERG'S** retirement will leave a vacancy for a judge beginning Dec. 1, the Judicial Nomination Commission said.

In a letter to the Montana Supreme Court, Judge Colberg said he turned 55 in December and had been thinking about retiring for some time even though he has two years left in his term, according to a story in the *Billings Gazette*. He was appointed to the bench in late 1989 by Gov. Stan Stephens to fill a vacancy created when then-judge Diane Barz was named to the Montana Supreme Court, the *Gazette* reported. Justice Barz later resigned and is a judge again in the 13th District.

Judge Colberg is a 1960 graduate of the University of Montana Law School and was a law clerk for the Montana Supreme Court before returning to Billings, his home town, to enter private practice, the *Gazette* said. He was a partner in the firm of Sweeney, Colberg, Koessler & Doak before being appointed to the bench.  O

## PACE, from Page 6

is at the briefing stage and that it is necessary we eliminate this source of delay, commencing January 1, 2001, motions for extension of time to file briefs will no longer be routinely granted except in cases where the inability to timely file a brief is caused by the inability of the court reporter to timely transcribe the proceedings.

All motions for extension of time to file briefs must be supported by an affidavit demonstrating diligence and substantial need. All such motions must be filed at least seven (7) days before the expiration of the time prescribed for the filing of the brief. The affidavit in support must state: (1) when the brief is due; (2) when the brief was first due; (3) the length of the requested extension; (4) the reason the extension is necessary; (5) the movant's explanation establishing that the movant has exercised diligence and has substantial need for the extension and that the brief will be filed within the time requested; and (6) whether any other party separately represented objects to the request. A conclusory statement of justification being the "press of other business" will not constitute a showing of diligence and substantial need.

To this extent Rule 2 1(b), M.R.App.P., is modified accordingly.

5. **Non-cite and Memorandum Opinions.** We will attempt to dispose of more cases using non-cite and memorandum opinions. Furthermore, we will attempt to reduce the length of these types of opinions.  O

## CERTIFICATE OF SERVICE

The undersigned, counsel for W.R. Grace & Company and W.R. Grace &

Company-Conn., hereby certifies that the foregoing Reply Brief in Support of Motion to

Transfer to the District of Massachusetts for Coordinated Pretrial Proceedings Pursuant to 28

U.S.C. § 1407 was served on September 18, 2000, by United States Postal Service First Class

Mail, postage prepaid, on counsel on the attached service list, and on the following counsel in the

Tag-Along Actions:

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West, 30th Floor
275 Battery Street
San Francisco, CA 94111

Attorneys for plaintiffs in
Barbanti v. W.R. Grace & Company-Conn.

Sheila L. Birnbaum
Bert L. Wolff
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036

Attorneys for defendant
Sealed Air Corporation in
Barbanti v. W.R. Grace & Company-Conn.

Stephen M. Tillery, Esquire
Christine J. Moody, Esquire
CARR, KOREIN, TILLERY ET AL.
10 Executive Woods Court
Swansea, IL 62226

Attorneys for Plaintiffs in
Daily v. W.R. Grace & Co.-Conn.

R. David Walk, Jr.

JUDICIAL PANEL ON MULTIDISTRICT LITIGATION - PANEL ATTORNEY SERVICE LIST

September 01, 200

DOCKET: 1,376 - In re Zonolite Attic Insulation Products Liability Litigation
STATUS: Pending

Page: 1

TRANSFEREE INFORMATION
    Dist:
    Judge:

| ATTORNEY - FIRM | REPRESENTED PARTY(s) |
| --- | --- |
| Birnbaum, Sheila L.<br>Skadden, Arps, Slate, Meagher & Flom<br>Four Times Square<br>New York, NY  10036 | => Sealed Air Corp.* |
| Cabraser, Elizabeth J.<br>Lieff, Cabraser, Heimann & Bernstein, LLP<br>275 Battery Street<br>Suite 3000<br>San Francisco, CA  94111 | => Prebil, John*; Prebil, Margery*; Price, Paul* |
| Fickler, Arlene<br>Hoyle, Morris & Kerr, LLP<br>One Liberty Place<br>Suite 4900<br>1650 Market Street<br>Philadelphia, PA  19103 | => W.R. Grace & Co.*; W.R. Grace & Co.-Conn.* |
| Goldenberg, Mark C.<br>Hopkins Goldenberg, P.C.<br>2227 South State Route 157<br>Edwardsville, IL  62025 | => Hunter, Jan |
| Manchur, Edward L.<br>Gilman & Pastor, L.L.P.<br>Stonehill Corporate Center<br>999 Broadway<br>Suite 500<br>Saugus, MA  01906 | => Goldstein, Joel*; Lindholm, Edward M.*; Szufnarowski, John J.* |

NOTE: Please refer to the title page for complete report scope and key.
  *   Signifies that an appearance was made on behalf of the party by the representing attorney.
  #   Specified party was dismissed in some, but not all, of the actions in which it was named as a party.
NOTE: All dismissed parties (and counsel representing only dismissed parties) were suppressed.

```
*********************
***   TX REPORT   ***
*********************


TRANSMISSION OK

TX/RX NO                2042
CONNECTION TEL          301#0987#19782329668#
CONNECTION ID
ST. TIME                09/25 08:14
USAGE T                 06'14
PGS. SENT               16
RESULT                  OK
```

# LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
## ATTORNEYS AT LAW
### EMBARCADERO CENTER WEST
### 275 BATTERY STREET, 30TH FLOOR
### SAN FRANCISCO, CALIFORNIA  94111-3339
### TELEPHONE: (415) 956-1000
### FACSIMILE: (415) 956-1008

## FAX TRANSMITTAL
### CONTENTS PRIVILEGED AND CONFIDENTIAL

**DATE:**     September 22, 2000

**FAX NUMBERS**

**TO:**    Allan M. McGarvey, Jon L. Heberling and Roger Sullivan
MCGARVEY, HEBERLING, SULLIVAN & MCGARVEY, P.C.  ........ **(406) 752-7124**

Darrell W. Scott, Michael G. Black, Mischelle R. Fulgham and Tonya R. Hanson
LUKINS & ANNIS  ........................................  **(509) 747-2323**

Edward J. Westbrook, Robert M. Turkewitz, Edward B. Cottingham, Jr.,
Frederick J. Jekel and Christy Gruenloh
NESS MOTLEY, et al.  ....................................  **(843) 216-9440**

Steven J. Toll and Tamara J. Driscoll
COHEN, MILSTEIN, HAUSFELD & TOLL  ......................  **(206) 521-0166**

Richard S. Lewis
COHEN, MILSTEIN, HAUSFELD & TOLL  ......................  **(202) 408-4699**

Jan Schlichtmann  ......................................  **(978) 232-9668**

**CC:**    Elizabeth J. Cabraser, Fabrice Vincent, Lori E. Andrus and John Low-Beer

**FROM:**   Jasmine Feeney

**RE:**    Zonolite/Asbestos Litigation

**COMMENTS:**    **Please see attached.**

Number of Pages Including This Sheet: _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                )
IN RE:                          )
ZONOLITE ATTIC INSULATION  ) MDL No. 1376
PRODUCTS LIABILITY              )
LITIGATION                      )
                                )
```

## PRETRIAL CASE MANAGEMENT ORDER

February 9, 2001

Saris, U.S.D.J.

Pursuant to the December 7, 2000 Transfer Order of the
Judicial Panel on Multidistrict Litigation providing for the
transfer and coordination of the federal actions comprising In
re:  Zonolite Attic Insulation Products Liability Litigation, MDL
No. 1376, to this Court for the conduct of discovery and pretrial
proceedings under 28 U.S.C. § 1407, and as recommended by the
Manual for Complex Litigation, Third, §§ 21.1-21.23; 41.2, the
Court hereby ORDERS:

### 1.  Pretrial Consolidation

The cases transferred to the Court pursuant to 28 U.S.C.
§1407 by any current or subsequent order of the Judicial Panel on
Multidistrict Litigation in MDL No. 1376 and any other related
case filed in, removed to or transferred to this Court shall be
consolidated for pretrial purposes.  This Order does not
constitute a determination that these actions should be

consolidated for trial, nor does it have the effect of making any entity a party to an action in which it has not been joined and served in accordance with the Federal Rules of Civil Procedure.

### a. Master Docket and File

The clerk will maintain a master docket and case file under the style "In re Zonolite Attic Insulation Products Liability Litigation," MDL No. 1376. All orders, pleadings, motions, and other documents will, when filed and docketed in the master case file, be deemed filed and docketed in each individual case to the extent applicable.

### b. Captions; Separate Filing

Orders, pleadings, motions, and other documents will bear a caption similar to that of this Order. If generally applicable to all consolidated actions, they shall include in their caption the notation that they relate to "ALL ACTIONS" and be filed and docketed only in the master file. Documents intended to apply only to particular cases will indicate in their caption the District of Massachusetts case number of the case(s) to which they apply, and extra copies shall be provided to the clerk to facilitate filing and docketing both in the master case file and the specified case files.

### c.   **Pretrial Orders**

All proposed orders submitted to the Court shall be entitled "Pretrial Order No."

### 2.   **Rules of Procedure**

Except as otherwise provided herein or by further order of the Court, the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts shall govern all further procedural matters in the MDL 1376 actions with the following exception:

> Briefs filed in connection with  the class certification motions, dispositive motions, and Daubert motions may exceed the limitations set forth in Local Rule 7.1, provided that no such principal brief shall exceed 50 pages in length and no such reply brief shall exceed 25 pages in length.

### 3.   **Organization of Plaintiffs' Counsel**

Pending the outcome of the Grace defendants' motions to disqualify, Plaintiffs' Executive Committee shall be:

> Elizabeth J. Cabraser
> LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
> 275 Battery Street, 30th Floor
> San Francisco, CA  94111-3339
> Telephone:  (415) 956-1000
> Facsimile:  (415) 956-1008
>                     and
>
> 214 Union Wharf
> Boston, MA  02109-1216
> Telephone:  (617) 720-5000
> Facsimile:  (617) 720-5015
>
> David Pastor
> GILMAN AND PASTOR, LLP

Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA  01906
Telephone:  (781) 231-7850
Facsimile:  (781) 231-7840

John J. Stoia, Jr.
MILBERG, WEISS, BERSHAD, HYNES & LERACH, LLP
600 West Broadway
1800 One America Plaza
San Diego, CA  92101-5050
Telephone:  (619) 231-1058
Facsimile:  (619) 231-7423

Edward J. Westbrook
NESS MOTLEY LOADHOLT RICHARDSON & POOLE
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9440

   a.   Plaintiffs' Executive Committee shall be generally responsible for coordinating the activities of plaintiffs during pretrial proceedings and shall:

       i.   determine (after such consultation with co-counsel as may be appropriate) and present (in briefs, oral argument, or such other fashion as may be appropriate, personally or by a designee) to the Court and opposing parties the position of the plaintiffs on all matters arising during pretrial proceedings;

       ii.   coordinate the initiation and conduct of discovery on behalf of plaintiffs consistent with the requirements of Fed. R. Civ. P. 26(b)(1) and (2), and (g), including the preparation of joint interrogatories and requests for production of documents and the examination of witnesses in depositions;

       iii.   conduct settlement negotiations on behalf of plaintiffs, but not enter binding agreements except to the extent expressly authorized;

4

iv.   delegate specific tasks to other counsel in a manner to ensure that pretrial preparation for the plaintiffs is conducted effectively, efficiently, and economically;

v.   enter into stipulations, with opposing counsel, necessary for the conduct of the litigation;

vi.   prepare and distribute to the parties periodic status reports;

vii.   maintain adequate time and disbursement records covering services as Executive Committee members;

viii.   monitor the activities of co-counsel to ensure that schedules are met and unnecessary expenditures of time and funds are avoided; and

ix.   perform such other duties as may be incidental to proper coordination of plaintiffs' pretrial activities or authorized by further order of the Court.

b.   No discovery or other actions or work in this litigation shall be undertaken by plaintiffs except at the direction of, or with permission of, the Plaintiffs' Executive Committee.

c.   The Plaintiffs' Executive Committee, or one of the Plaintiffs' Counsel designated by Plaintiffs' Executive Committee shall:

i.   maintain and distribute to co-counsel and to Defendants' Counsel an up-to-date service list;

ii.   receive and, as appropriate, distribute to co-counsel orders from the Court and documents from opposing parties and counsel; and

iii.   maintain and make available to co-counsel at reasonable hours a complete file of all documents served by or upon each party except such documents as may be available at a document depository.

### 4.   **Class Action Certification Proceedings**

Each plaintiff who has filed a class action complaint and who intends to seek class certification shall file a motion for

class certification and class notice within seven days of receipt
of this order.  In the moving papers filed to date, the
plaintiffs moving for class certification in these proceedings
identified the named plaintiffs who seek to serve as class
representatives for the proposed class and the claims sought to
be certified by the putative class.  Defendants' opposition(s)
shall be filed on or before February 22, 2001. Plaintiffs shall
file their reply to defendants' opposition within 30 days after
the filing of defendants' opposition.  Defendants shall file
their sur-reply, if any, within 15 days after the filing of the
plaintiffs' reply. The Court shall hear the motion(s) for class
certification on April 25, 2001, at 2:00 p.m.  Plaintiffs who
have filed class action complaints in cases that are instituted
in, removed to, or transferred to this Court after the entry of
this Order shall file motions for class certification, including
the elements set forth above, within 45 days of their filing in
this court or transfer.  Defendants' opposition(s) to class
certification shall be filed within 30 days of the filing of
plaintiffs' motion(s). Plaintiffs shall file their reply to
defendants' opposition within 30 days after the filing of
defendants' opposition.  Defendants shall file their sur-reply,
if any, within 15 days after the filing of the plaintiffs' reply.

6

### 5.   **Amendments to the Complaints**

Defendants agreed that plaintiffs could amend their complaints, without any objection from Defendants or leave of Court, provided that any such amended complaints were filed prior to January 23, 2001.  In the absence of such amendment, no amendments to complaints shall be used for the class certification motion until after the Court has ruled on the plaintiffs' motion for class certification or the Court has granted leave for such purposes.

### 6.   **Motions to Disqualify**

Any party may supplement its filings with respect to the Grace defendants' pending motions to disqualify the firm of Lieff, Cabraser, Heimann & Bernstein, LLP in the Price case and to disqualify the firm of Milberg, Weiss, Hynes and Lerach, LLP in the Hunter case on or before January 30, 2001.  Any party may respond to such filing on or before February 15, 2001.  The Court shall hear these motions on April 25, 2001.

### 7.   **Dispositive Motions and Daubert Motions**

Any motions to dismiss, motions for summary judgment, motions for partial summary judgment, and Daubert motions (as well as oppositions, reply briefs and sur-reply briefs) shall be filed no later than the dates set forth in paragraph 14 below.

## 8.  **Privileges Preserved**

No communication among plaintiffs' counsel or among defendants' counsel shall be taken as a waiver of any privilege or protection.

## 9.  **Service of Documents**

### a.  **Orders**

A copy of each order will be provided to Plaintiffs' Executive Committee for distribution as appropriate to co-counsel.  (Service upon Ms. Cabraser shall be made to the Boston office, c/o Thomas M. Sobol).  Each Defendants' Counsel listed on Exhibit A shall be served with each order by the Court contemporaneous with service upon Plaintiffs' Executive Committee.

### b.  **Pleadings, Motions, and Other Documents**

Plaintiffs' Executive Committee will each be provided with copies of each pleading, motion, or other document filed by a party (service upon Ms. Cabraser shall be made to the Boston office, c/o Thomas M. Sobol); with service on Plaintiffs' Executive Committee constituting service on other attorneys and parties for whom Plaintiffs' Executive Committee is acting. Defendants' Counsel will each be provided with copies of all such documents.  Manner of service shall be by hand or by facsimile (with hard copy to follow) or by next day delivery.  For the

8

purpose of calculating the deadlines for responding to a
pleading, motion, or other document, service shall be deemed to
have been completed on the business day after the pleading,
motion, or other document has been delivered to a party's Boston
counsel by facsimile or other delivery.  Given the nationwide
dispersal of counsel for the parties and the obligation of
Plaintiffs' Executive Committee to circulate copies of documents
to the other attorneys and parties for whom it is acting, each
party is afforded three additional calendar days for responding
to any pleading or discovery beyond that authorized by the
Federal Rules of Civil Procedure or the local rules of the Court.

### 10.   **Admission of Counsel**

Attorneys admitted to practice and in good standing in any
United States District Court are admitted *pro hac vice* in this
litigation without the necessity of filing a motion.  Association
of local counsel is not required.  However, all attorneys are
required to read and follow the local rules.

### 11.   **Preservation of Evidence**

a.   During the pendency of this litigation and for thirty
(30) days after entry of the final order resolving the
litigation, all parties are restrained and enjoined from
altering, destroying or permitting the destruction of any
relevant Document or other item that relates in a reasonably

9

direct manner to the issues set forth in the pleadings in the MDL
1376 actions that is in the possession, custody or control of a
party, wherever such document is located.  "Document" is defined
to be synonymous in meaning and equal in scope to the usage of
that term in Fed. R. Civ. P. 34(a).  A non-identical copy is a
separate document within the meaning of this term.

  b.  Counsel are directed to confer to resolve questions as
to what documents are outside the scope of this Order or
otherwise need not be preserved and as to an earlier date for
permissible destruction of particular categories of documents.
If counsel are unable to agree, any party may apply to this Court
for clarification or relief from this Order.

  c.  Further, the plaintiffs shall not destroy, alter or
remove any Zonolite Attic Insulation in any of their properties
without first notifying the defendants of their intention to do
so and affording defendants a full and fair opportunity to
inspect and/or test the insulation subject to the proposed
destruction, alteration or removal, provided, however, that (i)
in the event of emergencies a plaintiff may take actions
reasonable under all the circumstances, but must also provide
notice to plaintiffs' counsel of those circumstances who, in
turn, must notify defendants and (ii) a full and fair opportunity
will be deemed to have been provided upon the earlier of (i)

inspection or (ii) after the expiration of six months from this
Order or a case has been transferred to this Court subsequent to
the Order.

### 12.  Discovery

a.  Discovery that has already been issued shall continue in
accordance with the Federal Rules of Civil Procedure.

b.  Mandatory disclosures pursuant to Fed. R. Civ. P.
26(a)(1)(B) shall be served by all parties by February 15, 2001.

c.  If any of the named plaintiffs moving for class
certification or proposed as class representatives in any of the
consolidated actions have not previously been deposed by
defendants or have not previously produced documents to
defendants or have not previously permitted inspections and
testing in their buildings, plaintiffs shall cooperate to produce
such plaintiffs for deposition and their documents for inspection
and copying, and permit defendants to inspect and perform testing
in their buildings no later than February 15, 2001.  All named
plaintiffs who have previously provided discovery shall
supplement their responses by February 15, 2001.

d.  Defendants shall produce the following documents and
things to the designee(s) of the Plaintiffs' Executive Committee
on or before May 18, 2001 (and on dates sooner when such
documents are available so as to effectuate  rolling production

11

from this date forward):  (i) all documents produced to the EPA in Denver; (ii) all compact disks containing scanned documents from Grace's expanding plant facilities produced to EPA in Denver, (iii) all documents responsive to outstanding document requests which are located  in Grace's Cambridge property not produced in the Boston repository, and (iv) all other documents that are responsive to any and all other document requests.

e.  Depositions of fact witnesses may commence forthwith and all non-expert discovery shall be completed by October 31, 2001.

f.  Disclosure of expert witnesses as required by Fed. R. Civ. Pro. 26(a)(2), accompanied by any and all written reports prepared by such expert witnesses in any of these consolidated actions, shall be made by each side as follows:  the plaintiffs shall make any such disclosures by August 1, 2001; the defendants shall make any such disclosures by September 14, 2001.

g.  At least two weeks prior to the deposition of any expert witness, the expert shall produce a complete copy of his or her file in any of these consolidated actions, and the party taking the deposition shall provide the expert with any documents which will be discussed at the deposition.

h.  Depositions of expert witnesses may be taken at any time after the service of the expert witnesses' disclosures, and all expert discovery shall be completed by January 5, 2002.

12

All supplemental information required under Fed. R. Civ. P. 26(e) shall be submitted by January 5, 2002.

i.   The parties shall use their best efforts to coordinate discovery taken in these consolidated cases with the discovery taken or to be taken in the state court Zonolite Attic Insulation cases to avoid the duplication of discovery.  Plaintiffs' counsel in these consolidated cases who also represent plaintiffs in state court cases shall double- (or multi-) caption all written discovery served on defendants and all depositions taken.  In addition, all depositions of persons whose testimony will likely be relevant both in these cases and in the related state court cases should ordinarily be cross-noticed for use in all such cases.

13.   **Later Filed Cases**

The terms of this Order, including pretrial consolidation, shall apply automatically to actions later instituted in, removed to, or transferred to this Court (including cases transferred for pretrial purposes under 28 U.S.C. § 1407).  The Clerk shall mail a copy of this Order to counsel for any party in such action that has not previously been a party to a suit in this consolidated litigation.  Objections to such consolidation or other terms of this order shall promptly be filed, with a copy served on Plaintiffs' Executive Committee and defendants' counsel.

14.  **Schedule**

Unless otherwise ordered, the following schedule shall apply to pretrial proceedings in the currently pending consolidated cases.

<u>Event</u>

| | |
|---|---|
| Plaintiffs may amend complaint(s) without leave of Court. | January 23, 2001 |
| Plaintiffs file and serve motion for class certification and class notice. | January 23, 2001 |
| Parties file a proposed, joint case management order No. 1 (and, to the extent necessary, competing language with respect to areas where disagreement remains.) | January 26, 2001 |
| Parties file summaries of their respective positions. | January 26, 2001 |
| Parties may supplement their filings on the pending motions to disqualify. | January 30, 2001 |
| Parties may respond to any January 30, 2001 supplemental filings on the pending motions to disqualify. | February 15, 2001 |
| Mandatory disclosures to be served by all parties. | February 15, 2001 |

14

| | |
|---|---|
| Deadline for document productions by and depositions of named proposed class representatives moving for class certification; as well as inspection and testing of their buildings. | February 15, 2001 |
| Defendants file and serve Defendants' opposition to Plaintiffs' motion for class certification and class notice. | February 22, 2001 |
| Last date by which amendments pursuant to Fed. R. Civ. P. 15(a) may be served. | March 16, 2001 |
| Plaintiffs file and serve reply, if any, to Defendants' opposition to motion for class certification and class notice. | No later than 30 days after filing of Defendants' opposition. |
| Defendants file and serve any sur-reply to motion for class certification and class notice. | No later than 15 days after filing of Plaintiffs' reply. |
| Hearing on Defendants' motions to disqualify. | April 25, 2001 |
| Hearing on Plaintiffs' motions for class certification and class notice. | April 25, 2001 |
| Deadline for Grace defendants to produce documents in accordance with paragraph 12(d) above. | May 18, 2001 |

| | |
|---|---|
| Disclosure of information about Plaintiffs' expert witnesses. | August 1, 2001 |
| Disclosure of information about Defendants' expert witnesses. | September 14, 2001 |
| Close of fact discovery. | October 31, 2001 |
| Close of expert discovery. | January 5, 2002 |
| Deadline for supplementation of discovery pursuant to Fed. R. Civ. P. (26(e). | January 5, 2002 |
| Parties to file and serve any motions for summary judgment pursuant to Fed. R. Civ. P. 56; parties to serve any motions in limine to preclude expert or other testimony on any grounds other than known. | January 31, 2002 |
| Parties file and serve oppositions to any motions for summary judgment, as well as any motions in limine to preclude expert or other testimony. | February 28, 2002 |
| Parties file and serve replies, if any, to oppositions to motions for summary judgment; as well as motions to preclude testimony. | March 15, 2002 |
| Parties file and serve sur-replies, if any, to oppositions to motions for summary judgment; as well as motions to preclude testimony. | March 30, 2002 |

| | |
|---|---|
| Hearing on pending motions for summary judgment and any motions in limine to exclude expert or other testimony or evidence. | April 5, 2002 |
| Final pretrial conference. | May 13, 2002 |
| Trial (the extent and scope of which will later be determined) commences. | June 5, 2002 |

**SO ORDERED**, this 9 day of February, 2001.

Patti B. Saris
United States District Judge

EXHIBIT A

**Counsel for Defendants W. R. Grace & Co. and W. R. Grace & Co. - Conn.**

Robert A. Murphy
Casner & Edwards
One Federal Street
Boston, MA   02110
Telephone:   617-426-5900
Facsimile:   617-426-8810


Arlene Fickler
Hoyle, Morris & Kerr LLP
One Liberty Place, Suite 4900
1650 Market Street
Philadelphia, PA   19103
Telephone:   215-981-5850
Facsimile:   215-981-5959


James Restivo
Reed Smith LLP
435 6th Avenue
Pittsburgh, PA   15219
Telephone:   412-288-3122
Facsimile:   412-288-3063

**Counsel for Sealed Air Corporation**

James R. Carroll
Skadden, Arps, Slate, Meagher & Flom, LLP
One Beacon Street
Boston, MA   02108
Telephone:   617-573-4800
Facsimile:   617-573-4822


Sheila Birnbaum
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, NY   10036
Telephone:   212-735-2450
Facsimile:   212-735-2000

## CERTIFICATE OF SERVICE

I, Thomas M. Sobol, hereby certify that on January 23, 2001, I caused to be served the following documents:

1.  Plaintiffs' Motion for Class Certification;

2.  Plaintiffs' Unopposed Motion for Leave to file Memorandum of Points and Authorities of Fifty Pages;

3.  Memorandum of Points and Authorities in Support of Motion for Class Certification and Notice;

4.  Declaration of Attorney Richard S. Lewis [and exhibits];

5.  Affidavit of Attorney Thomas M. Sobol [and exhibits];

6.  Cover Letter to Clerk of Court;

7.  Cover letter to the Honorable Patti B. Saris; and

8.  Certificate of Service.

upon all interested parties by serving a copy thereof upon counsel as follows:

### DEFENSE COUNSEL

a copy by hand upon counsel of record:

Robert A. Murphy
Casner & Edwards
One Federal Street
Boston, MA 02110

James R. Carroll
Skadden, Arps, Slate, Meagher & Flom, LLP
One Beacon Street
Boston, MA  02108

a copy by Federal Express overnight delivery upon counsel of record:

James S. Restivo, Jr.
Reed Smith, LLP
435 6th Avenue
Pittsburgh, PA  15219

Arlene Fickler
Hoyle, Morris & Kerr LLP
One Liberty Place, Suite 4900
1650 Market Street
Philadelphia, PA 19103

Sheila Birnbaum
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, NY  10036

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | MDL Docket No. 1376 |
| | ) | |
| ZONOLITE ATTIC INSULATION | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | |
| ——————————————— | ) | |
| PAUL PRICE, JOHN PREBIL and | ) | Civil Action No. CV 0071-M-DWM |
| MARGERY PREBIL, on behalf of | ) | |
| themselves and all others similarly situated, | ) | (Transferred from the District of Montana, Missoula Division) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| W.R. GRACE & COMPANY (a Delaware | ) | |
| corporation); W.R. GRACE & COMPANY- | ) | |
| CONN. (a Connecticut Corporation); W.R. | ) | |
| GRACE & CO., a/k/a GRACE, an association | ) | |
| of business entities; SEALED AIR | ) | |
| CORPORATION (a Delaware corporation), | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND NOTICE**

# TABLE OF CONTENTS

| | | | | Page |
|---|---|---|---|---|
| I. | | INTRODUCTION | | 1 |
| II. | | PROCEDURAL HISTORY | | 3 |
| III. | | STATEMENT OF FACTS | | 5 |
| | A. | Grace's Manufacturing and Marketing of Zonolite Attic Insulation Occurred with its Full Knowledge That it Contained Asbestos and Was Hazardous | | 5 |
| | B. | The Asbestos in Grace's Zonolite Attic Insulation Is an Ongoing Serious Health Hazard to Homeowners Who Conduct Routine Household Maintenance in Their Attics | | 9 |
| | C. | Without Effective Notice, Homeowners Are Ignorant of the Extreme Hazard from Disturbing the Zonolite Attic Insulation Product and Remain at Preventable Risk | | 14 |
| IV. | | ARGUMENT | | 16 |
| | A. | Applying A Washington Class Action Rule That Parallels F.R.C.P. 23, The Washington State Court Properly Certified A Statewide Class Seeking Identical Relief In The Companion Case, *Barbanti v. W.R. Grace* | | 16 |
| | B. | The Class Satisfies All of the Prerequisites of Rule 23(a) | | 18 |
| | | 1. | Joinder Is Impracticable and Common Questions of Law and Fact Are Shared Among the Class | 18 |
| | | 2. | The Claims of the Representative Plaintiffs Are Typical of the Other Class Member Claims | 19 |
| | | 3. | The Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class | 21 |
| | C. | Certification Of A Mandatory Class Is Appropriate Under Rule 23(b)(2) | | 23 |
| | | 1. | Public Policy Concerns Favor Rule 23(b)(2) Certification | 27 |
| | | 2. | Punitive Damages Claims May Properly be Certified on a Mandatory Basis Under 23(b)(2) and/or 23(b)(1)(B) | 28 |
| | | 3. | Where Claims for Damages Are Incidental to Claims for Equitable Relief, Courts Regularly Certify Both Sets of Claims Under 23(b)(2) | 31 |
| | D. | Certification Is Also Appropriate Under Rule 23(b)(3) | | 33 |
| | | 1. | Common Questions Predominate | 33 |
| | | 2. | A Class Action is the Superior Method for the Fair and Efficient Adjudication of this Controversy | 37 |
| | | 3. | The Case Is Manageable Under Montana or Massachusetts Law Or Under The Laws Of All Jurisdictions | 37 |
| | | | a. The Law of Montana Applies Because There is No Conflict | 38 |

3.   The Case Is Manageable Under Montana or Massachusetts Law Or Under The Laws Of All Jurisdictions ........................... 37

    a.   The Law of Montana Applies Because There is No Conflict ..... 38

    b.   There Are Few Material Significant Differences Among The Laws Of All States Which The Court Could Also Apply To The Controversy ...................................... 38

        (1)   Negligence ..................................... 39

        (2)   Strict Liability for Failure to Warn ................... 39

        (3)   Fraud ......................................... 40

        (4)   Punitive Damages ............................... 41

    c.   Assuming There is a Conflict, This Court Should Apply the Choice of Law Rules of Montana ......................... 42

        (1)   Montana Has The Most Significant Relationship ........ 44

        (2)   Massachusetts Also Has A Significant Relationship ...... 44

E.   Notice To the Class Will Protect Their Procedural Rights and Interests and Assure the Fair Conduct of the Action ................................... 46

F.   Certification of the Class of Homeowners and an Award of Injunctive Relief Does Not Give Rise to Any Conflict with a Regulatory Action .............. 48

   1.   The Doctrine of Primary Jurisdiction Is Inapplicable To Plaintiffs' Request For Class Certification and Notice ........................ 49

   2.   The Doctrine of Primary Jurisdiction Should Not Be Invoked Because The Relief Requested Does Not Conflict With Any Government Regulation .................................................. 49

V.   CONCLUSION .......................................................... 51

1

# TABLE OF AUTHORITIES

2
Page(s)

3  **CASES**

4  *Adair v. Sorenson,*
        134 F.R.D. 13 (D. Mass. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

5

*Affiliated Ute Citizens v. United States,*
6         406 U.S. 128 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   36

7  *Amato v. General Motors Corp.,*
        463 N.E.2d 625 (Ohio Ct. App. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   36

8

*Amchem Prods. v. Windsor,*
9         521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 16, 33, 35

10  *Anderson v. Aetna Casualty & Sur. Co.,*
         493 U.S. 959 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   32

11

*Andrews v. Bechtel Power Corp.,*
12        780 F.2d 124 (1st Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

13  *Arnold v. United Artists Theatre Circuit, Inc.,*
         158 F.R.D. 439 (N.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   32

14

*Avery v. HHS,*
15        762 F.2d 158 (1st Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   46, 50

16  *Ayers v. Jackson Tp.,*
         106 N.J. 557, 525 A. 2d 287 (N.J. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

17

*Baby Neal v. Casey,*
18        43 F.3d 48 (3rd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

19  *Barbanti v. W.R. Grace & Co.,*
         No. 00-2-01756-6 (Spokane Co. Sup. Ct. Nov. 28, 2000) . . . . . . . . . . . . . . . . . . . . . . . *passim*

20

*Barefield v. Chevron,*
21        1998 U.S. Dist. LEXIS 15816,
          12 Fed. R. Serv. 3d (Callaghan) 1232 (N.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . .   28, 32

22

*Barkman v. Wabash, Inc.,*
23        1988 WL 5039, No. 85 C 611 (N.D. Ill. Jan. 20, 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . .   47

24  *Barron v. Ford Motor Co. of Canada, Ltd.,*
         965 F.2d 195 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   38

25

*Barth v. Firestone Tire and Rubber Co.,*
26        661 F. Supp. 193 (N.D. Cal. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

27  *BMW of No. Am. v. Gore,*
         517 U.S. 559 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29, 41

28

*Bouley v. Cellucci,*
    107 F. Supp. 2d 61 (D. Mass. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Bushkin Associates, Inc. v. Raytheon Co.,*
    393 Mass. 622 473 N.E.2d 662 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Butkera v. Hudson River Sloop "Clearwater,"*
    300 N.J. Super. 550, 693 A.2d 520 (N.J. Super. Ct. App. 1997) . . . . . . . . . . . . . . . . . . . . . 44

*Cal-Almond Inc. v. Dept. of Agriculture,*
    67 F.3d 874 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Cannon v. Cherry Hill Toyota, Inc.,*
    184 F.R.D. 540 (D.N.J. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Central Wesleyan College v. W.R. Grace & Co.,*
    143 F.R.D. 628 (D.S.C. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Chabner v. United of Omaha Life Ins. Co.,*
    225 F.3d 1042 (9th Cir. Sept. 11, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
    *Federal Practice and Procedure,* § 1772 (2d ed. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Chevalier v. Baird Sav. Assoc.,*
    72 F.R.D. 140 (E.D. Pa. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Coburn v. 4-R Corp.,*
    77 F.R.D. 43 (E.D. Ky. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Cope v. Metropolitan Life Insurance,*
    82 Ohio St. 3d. 426, 696 N.E.2d 1001 (Ohio 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

*County of Suffolk v. Long Island Lighting Co.,*
    970 F.2d 1295 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Cullen v. Whitman Med. Corp.,*
    188 F.R.D. 226 (E.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Day v. NLO,*
    851 F. Supp. 869 (S.D. Ohio 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Dionne v. Bouley,*
    757 F.2d 1344 (1st Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Dore v. Kinnear,*
    79 Wash.2d 755, 489 P.2d 898 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Duhaime v. John Hancock,*
    177 F.R.D. 54 (D. Mass. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Dunn v. HOVIC,*
    1 F.3d 1371 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Eubanks Billington,*
    110 F.3d 87 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*First United Methodist Church of Hyattsville v. U.S. Gypsum Co.,*
    882 F.2d 862 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Fraser v. Major League Soccer, L.L.C.,*
    180 F.R.D. 178 (D. Mass. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 46, 47

*Friends for All Children, Inc. v. Lockheed Aircraft Corp.,*
    746 F.2d 816 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*FTC v. Intl'l Diamond Corp.,*
    1983-2 Trade Cas. (CCH) ¶ 65,725,
    1983 U.S. Dist. LEXIS 11862 (N.D. Cal. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Gantes v. Kason Corp.,*
    145 N.J. 478, 679 A.2d 106 (N.J. Sup. Ct., 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Garza v. Sporting Goods Properties, Inc.,*
    No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009 (W.D. Tex. 1996) . . . . . . . . . . . . . . 26

*General Tel. Co. v. Falcon,*
    457 U.S. 147, 102 S. Ct. 2364, 72 L.Ed.2d 740 (1982), *aff'd,*
    815 F.2d 317 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*German v. Federal Home Loan Mort. Corp.,*
    885 F. Supp. 537 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 25

*Grace v. Perception Technology Corp.,*
    128 F.R.D. 165 (D. Mass. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Green v. Evans,*
    156 Mich. App. 145, 401 N.W. 2d 250 (Mich. App. 1985) . . . . . . . . . . . . . . . . . . . . . . . . 41

*Griffin v. Burns,*
    570 F.2d 1065 (1st Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Guckenberger v. Boston Univ.,*
    957 F. Supp. 306 (D. Mass. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Hansen v. Mountain Fuel Supply Co.,*
    858 P.2d 970 (Utah 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Harashe v. Flintkote Co.,*
    848 S.W.2d 506 (Mo. Ct. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

*Harriss v. Pan American World Airways, Inc.,*
    74 F.R.D. 24 (N.D. Cal. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 47

*Heastie v. Community Bank,*
    125 F.R.D. 669 (N.D. Ill. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Hill v. Western Electric Co., Inc.,*
    672 F.2d 381 (4th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Howard v. Ford Motor Co.*,
   No. 763785-2 (Ca. Super. Ct. Alameda County) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Hoxworth v. Blinder Robinson and Co.*,
   980 F.2d 912 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

*Hunter v. McKenzie*,
   197 Cal. 176, 239 P. 1090 (Cal. 1925) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Hurley v. Federal Deposit Ins. Corp.*,
   719 F. Supp. 27 (D. Mass. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*In re A.H. Robins Co.*,
   880 F.2d 709 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*In re Agent Orange Prods. Liab. Litig.*,
   818 F.2d 145 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 29

*In re Agent Orange Product Liability Litigation*,
   475 F. Supp. 928 (E.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*In re Alert Income Partners Sec. Litig.*,
   MDL 915, No. 92-2-9150 (D. Colo. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*In re Asbestos School Litigation*,
   104 F.R.D. 422 (E.D. Pa. 1984)
   *aff'd* in relevant part . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 39, 49

*In re Badger Mtn. Irrigation Dist. Secs. Litig.*,
   143 F.R.D. 693 (W.D. Wash. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*In re Catfish Antitrust Litig.*,
   826 F. Supp. 1019 (N.D. Miss. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Complaint of Bankers Trust Co.*,
   752 F.2d 874 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*In re Copley Pharm., Inc., "Albuterol" Prod. Liability Litig.*,
   MDL 1013, 158 F.R.D. 485 (D. Wyo. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 39

*In re Diet Drugs Prod. Liab. Litig.; Brown*,
   MDL 1203, 2000 U.S. Dist. LEXIS 12275,
   2000 WL 1222042 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Diet Drugs Prod. Liab. Litig.; Jeffers*,
   MDL 1203, 1999 U.S. Dist. LEXIS 13228 (E.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . . . *passim*

*In re Estate of Ferdinand E. Marcos Human Rights Litig.*,
   910 F. Supp. 1460 (D. Haw. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*In re General Motors Corp.*,
   55 F.3d at 811 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 50

*In re GMC Pick-up Truck Fuel Tank Products Liability Litigation*,
   55 F.3d 768 (3rd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

1 | *In re Mary Collins,*
2000 U.S. App. LEXIS 30176 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

2

3 | *In re Pizza Time Theatre Securities Litigation,*
112 F.R.D. 15 (N.D. Cal. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45, 46

4 | *In re Prudential Ins. Co. America Sales Litig.,*
148 F.3d 283 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 33, 36

5

6 | *In re Real Estate I,*
1986 U.S. Dist. LEXIS 24435 (E.D. Pa.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

7 | *In re School Asbestos,*
789 F.2d 996 (3d. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

8

9 | *In re Sunrise Secur. Litig.,*
698 F. Supp. 1256 (E.D. Pa. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

10 | *In re Telectronics Pacing Systems Inc.,*
MDL 1057, 172 F.R.D. 271 (S.D. Ohio 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

11

12 | *In re The Exxon] Valdez,*
No. A89-0095-CV (HRH) (D. Alaska) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

13 | *In re "Agent Orange" Prods. Liab. Litig.,*
580 F. Supp. 690 (E.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

14

15 | *In re "Agent Orange" Prods. Liab. Litig.,*
100 F.R.D. 718 (E.D.N.Y. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 29

16 | *Ingersoll v. Klein,*
46 Ill. 2d 42, 262 N.E.2d 593 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

17

18 | *Jenkins v. Raymark Industries, Inc.,*
109 F.R.D. 269 (E.D. Tex. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29, 34

19 | *Kennecott Copper Corp. v. Costle,*
572 F.2d 1349 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

20

21 | *Klaxon Co. v. Stentor Electric Mfg. Co.,*
313 U.S. 487, 61 S. Ct. 1020 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

22 | *L.E.A.D. v. Exide Corp.,*
199 WL 124473*22 (E.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

23

24 | *Lerwill v. Inflight Motion Pictures, Inc.,*
582 F.2d 507 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

25 | *Linney v. Cellular Alaska Partnership,*
151 F.3d 1234 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

26

27 | *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.,*
100 F.R.D. 468 (D. Mass. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 37

28 | *Mace v. Van Ru Credit Corp.,*
109 F.3d 338 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*McDonnell Douglas Corp. v. U.S. District Court,*
    523 F.2d 1083 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

*Montgomery Environmental Coalition Citizens Coordinating Comm. v.*
    *Washington Suburban Sanitary Comm'n,*
    607 F.2d 378 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   50

*Morgan v. Woessner,*
    997 F.2d 1244 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   30

*Naef v. Masonite Corp.,*
    No. CV-94-4033 (Ala. Cir. Ct. Mobile County March 7, 1996) . . . . . . . . . . . . . . . . . . . . .   49

*Pacific Mut. Life Ins. Co. v. Haslip,*
    499 U.S. 1 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29, 41

*Pejepscot Indus. Park Inc. v. Maine Central R.R. Co.,*
    215 F.3d 195 (1st Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   50

*PHC, Inc. v. Pioneer Healthcare Inc.,*
    75 F.3d 75 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   49-51

*Phillips Petroleum v. Shutts,*
    472 U.S. 797 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   38

*Phillips v. GMC,*
    298 Mont. 438, 995 P.2d 1002 (Sup. Ct. Mont. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . .   42

*Potter v. Firestone,*
    6 Cal. 4th 965, 863 P.2d 795 (Cal. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

*Probe v. State Teacher's Retirement Sys.,*
    780 F.2d 776 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   31

*Prudential Ins. Co. of America v. U.S. Gypsum Co.,*
    711 F. Supp. 1244 (D.N.J. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   51

*Punnett v. United States,*
    602 F. Supp. 530 (E.D. Pa. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   50

*Quern v. Jordan,*
    440 U.S. 332 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   46

*Redland Soccer Club v. Department of the Army,*
    548 Pa. 178, 696 A.2d 137 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

*Rodriguez v. Carlson,*
    166 F.R.D. 465 (E.D. Wash. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18, 20, 33

*Roginsky v. Richardson-Merrell, Inc.,*
    378 F.2d 832 (2d Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   30, 31

*Simon v Philip Morris Inc.,*
    No. 99 CV 1988, 2000 U.S. Dist. LEXIS 16713
    (D.N.Y. Nov. 17, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   43, 45

*Smith v. Univ. of Wash. Law Sch.*,
    2 F. Supp. 2d 1324 (W.D. Wash. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*State, ex rel, Guste v. General Motors Corp.*,
    370 So. 2d 477 (La. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*TXO Prod. Corp. v. Alliance Resources Corp.*,
    509 U.S. 443 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30, 41

*United States v. Philadelphia National Bank*,
    374 U.S. 321 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Vadino v. American Home Products Corp.*,
    No. MID-L-425-98 (N.J. Superior Court 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Vassallo v. Baxter HealthCare Corp.*,
    696 N.E.2d 909 (Mass. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Von Colln v. County of Ventura*,
    189 F.R.D. 583 (C.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Walsh v. Ford Motor Co.*,
    130 F.R.D. 260 (D.D.C. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Waste Mgt. Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 35

*Wetzel v. Liberty Mut. Ins. Co.*,
    508 F.2d 239 (3d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Williams v. Caputo*,
    152 F.3d 1060 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Wilson v. Amoco Corp.*,
    989 F.Supp. 1159 (D. Wyo. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50, 51

*Yaffe v. Powers*,
    454 F.2d 1362 (1st Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 23

*Yslava v. Hughes Aircraft Co.*,
    845 F. Supp. 705 (D. Ariz. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Zacharjasz v. Lomas and Nettleton Co.*,
    1988 U.S. Dist. LEXIS 4957 (E.D. Pa. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**FEDERAL STATUTES**

16 C.F.R.
    §1304 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

16 C.F.R.
    §1305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

28 U.S.C.
    § 1407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

40 C.F.R.
    §763 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

42 U.S.C
    § 9604(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

EPA Final Rule and Notice on Asbestos-Containing Materials in Schools,
    52 Fed. Reg. 41856 (Oct.30,1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Notice of Enforcement Policy,
    51 Fed. Reg. 33910 (Sept. 24, 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 46

Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 27

Rule 23(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

Rule 23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

Rule 23(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

Rule 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 21

Rule 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 27

Rule 23(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 34

Rule 23(b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

Rule 23(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Rule 23(b)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Rule 23(b)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Rule 23(b)(3)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Rule 23(b)(3)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Rule 23(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

1   Rule 23(c)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   39

2   Rule 65(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 5

3

4   **STATE STATUTES**

5   Montana Code Annotated  T.27,
        Ch.1, Pt.7 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   38
6
    Montana Code Annotated T.30,
7       Ch.14, Pt.1 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   38

8   Montana Code Annotated § 27-1-221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   41

9   Washington Civil Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

10  Washington Civil Rule 23(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 5, 46-48

11  **TREATISES**

12  2 Frumer & Friedman,
        *Products Liability* § 2.02[1], pp. 12-22 - 12-24 (1998) . . . . . . . . . . . . . . . . . . . . . . . .   40
13
    3B *Moore's Federal Practice* ¶ 23.40 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20
14
    Charles C. Marvel,
15      *Strict Products Liability: Liability for Failure to Warn as*
        *Dependent on Defendant's Knowledge of Danger,*
16      § 2, 33 A.L.R.4th 368 (1981-1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   40

17  Herbert B. Newberg and Albert Conte,
        *Newberg on Class Actions* (3d ed. 1992 and 2000 Cum. Supp.)
18      § 3.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

19      § 4.20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   32

20      §§ 8-15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   46

21
    *Manual for Complex Litigation* § 30.211 (3rd ed. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . .   47
22
    *Restatement (Second) of Conflict of Laws* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   42
23
    *Restatement (Second) of Torts,*
24      §§ 551 and 550 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   40

25  **ARTICLES**

26
    33 A.L.R.4th 368, Strict Products Liability:
27      Liability for Failure to Warn as Dependent
        on Defendant's Knowledge of Danger,
28      § 2 (1981-1988); (Appendix B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   40

Debra J. Gross,
  *Mandatory Notice and Defendant Class Actions:*
  *Resolving the Paradox of Identity Between Plaintiffs and Defendants,*
    40 Emory L.J. 611, n. 167 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  47

Marjorie A.Silver,
  *Giving Notice: An Argument For Notification*
  *Of Putative Plaintiffs In Complex Litigation,*
    66 Wash. L. Rev. 775 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  47

1  **I.    INTRODUCTION**

2          This case involves the threat to public health posed by W. R. Grace's knowing

3  concealment of the extraordinary hazards of its asbestos-contaminated Zonolite Attic Insulation.

4  Over many years, Defendant W.R. Grace & Company and its related entities (collectively, "Grace")

5  mined asbestos-contaminated vermiculite in Montana, and processed and sold it nationwide as

6  Zonolite Attic Insulation.  Grace knew that the insulation contained asbestos and that by normal

7  handling asbestos fibers would become airborne, producing dangerously high exposures and

8  contamination.  As early as the 1950s, undisclosed corporate testing of Libby, Montana workers

9  revealed that they were suffering severe chronic and acute illness from exposure to the same

10  asbestos-contaminated materials.  In 1969, Grace's safety manager urged, to no avail, that the

11  company place warnings on its Zonolite Attic Insulation products.  Grace concealed these deadly

12  asbestos hazards from its workers, consumers, and public officials.  Grace never mentioned the

13  presence of asbestos in its Zonolite insulation packaging or products as it continued sales over many

14  years.  As a result, tens of thousands of persons now live in homes that, unbeknownst to them, are

15  contaminated with asbestos-containing Zonolite insulation.

16          Plaintiffs now seek class certification under Rule 23(b)(2), or alternatively under Rules 23

17  (b)(3) and (b)(1)(B), for all claims for injunctive and other equitable relief, as well as all claims for

18  punitive damages.  The proposed class consists of:

19              All persons who own or occupy real property in the United States in
               which Zonolite Attic Insulation has been installed, excluding residents
20              of the State of Washington in which a state-wide class has been
               certified (the "Proposed Class").
21

22          Class certification is necessary to fairly and efficiently resolve overwhelmingly

common questions of law and fact.  Central to the claim of every class member is proof that Zonolite
23
Attic Insulation contains asbestos which poses extraordinary health and contamination hazards.  This
24
proof is common to all class members and does not depend on the knowledge or conduct of any
25
plaintiff.  Even Grace's primary defense -- that Zonolite Attic Insulation does not contain hazardous
26
levels of asbestos -- presents issues common to all class members.  Also common to the class is
27
proof that Grace knew of the hazards yet consciously concealed them in order to maximize its own
28
profits.