UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re:                                           )          MDL Docket No. 1376
                                                 )
ZONOLITE ATTIC INSULATION                        )          The Honorable Patti B. Saris, Presiding
PRODUCTS LIABILITY LITIGATION                    )
                                                 )
_____ )
THIS DOCUMENT RELATES TO:  ALL  )
ACTIONS                                          )
_____ )

### DEFENDANT SEALED AIR CORPORATION'S
### JOINDER IN THE GRACE DEFENDANTS' BRIEF IN OPPOSITION
### TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND NOTICE

Defendant Sealed Air Corporation concurs with the reasons set forth in the Grace

Defendants' Brief In Opposition To Plaintiffs' Motion For Class Certification And Notice.

Dated: February 22, 2001                         Respectfully submitted,
       Boston, Massachusetts


                                                 James R. Carroll (BBO #554426)
Of Counsel:                                      Michael D. Blanchard (BBO #636860)
Sheila L. Birnbaum                               SKADDEN, ARPS, SLATE
Bert L. Wolff                                     MEAGHER & FLOM LLP
SKADDEN, ARPS, SLATE                             One Beacon Street
 MEAGHER & FLOM LLP                              Boston, MA  02108
Four Times Square                                (617) 573-4800
New York, NY 10036
(212) 735-3000
                                                 Counsel for Defendant
                                                 Sealed Air Corporation

#### Certificate of Service

I, James R. Carroll,  hereby certify that on February 22, 2001, I caused a true copy of the
foregoing Defendant Sealed Air Corporation's Joinder In The Grace Defendants' Brief In
Opposition To Plaintiffs' Motion For Class Certification And Notice to be served by facsimile
and first-class mail, postage prepaid, upon counsel of record for each other party as indicated on
the service list attached hereto.

Dated:  February 22, 2001
                                                 James R. Carroll

## SERVICE LIST

Robert A. Murphy
CASNER & EDWARDS
One Federal Street
Boston, MA 02110
Telephone: (617) 426-5900
Facsimile: (617) 426-8810

Elizabeth J. Cabraser c/oThomas M. Sobol
LIEFF, CABRASER, HEIMANN &
 BERNSTEIN, LLP
214 Union Wharf
Boston, MA 02109-1216
Telephone: (617) 720-5000
Facsimile: (617) 720-5015

Arlene Fickler
HOYLE, MORRIS & KERR LLP
One Liberty Place, Suite 4900
1650 Market Street
Philadelphia, PA 19103
Telephone: (215) 981-5850
Facsimilie: (215) 981-5959

David Pastor
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: (781) 231-7850
Facsimile: (781) 231-7840

James Restivo
REED SMITH LLP
435 6th Avenue
Pittsburgh, PA 15219
Telephone: (412) 288-3122
Facsimile: (412) 288-3063

John J. Stoia, Jr.
MILBERG, WEISS, BERSHAD,
 HYNES, & LERACH, LLP
600 West Broadway
1800 One American Plaza
San Diego, CA 92101-5050
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

Edward J. Westbrook
NESS MOTLEY LOADHOLT
 RICHARDSON & POOLE
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465
Telephone: (843) 216-9000
Facsimile: (843) 216-9440

FILED
IN CLERK'S OFFICE
MAR 26   4 39 PM '01
U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re:                    )

ZONOLITE ATTIC INSULATION   )
PRODUCTS LIABILITY LITIGATION )

                                 )

PAUL PRICE, JOHN PREBIL and   )
MARGERY PREBIL, on behalf of   )
themselves and all others similarly situated, )

        Plaintiffs,           )

        v.                     )

W. R. GRACE & COMPANY (a Delaware )
corporation); W.R. GRACE & COMPANY- )
CONN. (a Connecticut Corporation); W.R. )
GRACE & CO., a/k/a GRACE, an association )
of business entities; SEALED AIR )
CORPORATION (a Delaware corporation), )

        Defendants.        )

MDL Docket No. 1376

Civil Action No. CV 0071-M-DWM

(Transferred from the District of Montana,
Missoula Division)

**PLAINTIFFS' REPLY MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION AND NOTICE**

1

## TABLE OF CONTENTS

2
Page

3    I.    INTRODUCTION ........................................................ 1

4    II.   ARGUMENT

5          A.    The ATSDR Findings Strongly Support Class Treatment of Plaintiffs' Request
6                For Equitable Relief in the From of Asbestos Notification, Education And
7                Remediation ........................................................ 2

8          B.    Zonolite Is Unsafe ................................................... 4

9          C.    The Relief Sought By Plaintiffs Is Purely Equitable and Certification Is
10               Appropriate under Rule 23(b)(2) ...................................... 7

11         D.    Plaintiffs' Class Definition is Appropriately and Narrowly Defined, and the
12               Proposed Class is Reasonably Ascertainable ........................... 10

13         E.    The Named Plaintiffs Are Adequate Representatives of the Class .......... 12

14               1.    Plaintiffs Are Appropriately Involved in the Proceedings ............ 12
15

16         F.    Additional Arguments Advanced by Defendants Are Both Immaterial to Class
17               Certification and Lack Merit ......................................... 15

     III.  CONCLUSION ......................................................... 17
18
19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

Page(s)

3  **CASES**

4  *Adames v. Mitsubishi Bank. Ltd.,*
        133 F.R.D. 82 (E.D.N.Y. 1989) ........................................... 7, 10, 16
5

*Amchem Prods. v. Windsor,*
6        521 U.S. 591 (1997) ...................................................... 16

7  *Ayers v. Jackson Tp.,*
        525 A. 2d 287 (NJ 1987) .................................................. 8
8

*Barth v. Firestone Tire & Rubber Co.,*
9        673 F. Supp. 1466 (N.D. Cal. 1987) ....................................... 13

10  *Buycks-Roberson v. Citibank Fed. Sav. Bank,*
        162 F.R.D. 322 (N.D. Ill. 1995) .......................................... 10
11

*Central Wesleyan College v. W. R. Grace & Co.,*
12        6 F.3d 177 (4th Cir. 1993) ............................................... 9

13  *Eggleston v. Chicago Journeyman,*
        657 F.2d 890 (7th Cir. 1981) ............................................. 12
14

*Eisen v. Carlisle & Jacquelin,*
15        417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) .................... 14

16  *Elliott v. ITT Corp.,*
        150 F.R.D. 569 (N.D. Ill. 1992) ......................................... 10, 11
17

*Garza v. Sporting Goods Properties, Inc.,* No. SA-93-CA-1082,
18        1996 U.S. Dist. LEXIS 2009 (W.D. Tex. Feb. 6, 1996) ..................... 9

19  *General Tel. Co. v. Falcon,*
        457 U.S. 147, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) ................... 12
20

*Hill v. Western Electric Co., Inc.,*
21        672 F.2d 381 (4th Cir. 1982) ............................................ 12

22  *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods.*
        *Liab. Litig.; Brown v. American Home Products Corp.,*
23        MDL 1203, 2000 U.S. Dist. LEXIS 12275 (E.D. Pa. 2000) ................... 9

24  *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods.*
        *Liab. Litig.; Jeffers v. American Home Products Corp.,*
25        MDL 1203, 1999 U.S. Dist. LEXIS 13228 (E.D. Pa. Aug. 26, 1999) .......... 9

26  *In re New England Mut. Life Ins. Co. Sales Practices Litig.,*
        183 F.R.D. 33 (D. Mass. 1998) ........................................... 11
27

*In re School Asbestos Litig.,*
28        789 F.2d 996 (3d Cir. 1986) ............................................. 9

*Kent v. Sunamerica Life Ins. Co.*,
190 F.R.D. 271 (D. Mass. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mace v. Van Ru Credit Corp.*,
109 F.3d 338 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Microsoft Corp v. Manning*,
914 S.W.2d 602 (Tex. App. Texarkana 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Potter v. Firestone Tire & Rubber Co.*,
6 Cal. 4th 965, 863 P.2d 795 (Cal. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Pottinger v. Miami*,
720 F. Supp. 955 (S.D. Fla. 1989), *remanded on other grounds*,
40 F.3d 1155 (11th Cir. 1994), *opinion after remand*,
76 F.3d 1154 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rodriguez v. Carlson*,
166 F.R.D. 465 (E.D. Wash. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sullivan v. Chase Inv. Serv.*,
79 F.R.D. 246 (N.D. Cal. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*


**DOCUMENTS**

AHERA Regulation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Asbestos-Containing Materials In School Buildings: A Guidance Document . . . . . . . . . . . . . . . 16

Department of Health and Human Services, Agency for Toxic Substances and Disease Registry
("ATSDR"), February 22, 2001
*Preliminary Findings of Medical Testing of Individuals Potentially*
*Exposed to Asbestoform Minerals Associated with Vermiculite in*
*Libby, Montan: An Interim Report for Community Health Planning* . . . . . . . . . . . . . . . . . . 8

Guidance For Controlling Friable Asbestos-Containing Materials in Buildings . . . . . . . . . . . . . . 13

Revised Recommended Asbestos Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Workplace Exposure to Asbestos . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.      **INTRODUCTION**

Is it only ironic? On the same day that W. R. Grace opposes class certification in this case largely on the claim that its vermiculite products are safe, United States government agencies release preliminary findings of a comprehensive medical testing program designed to identify the health effects likely to be asbestos related due to residential or occupational exposure to Grace's vermiculite in Libby, Montana. The result: exposure to the same asbestos-contaminated vermiculite which comprises Zonolite Attic Insulation is likely to pose a substantial threat to public health.

The medical screening results, first reported on February 22, 2001 by the United States Agency for Toxic Substances and Disease Registry (ATSDR), indicate that, of the one thousand and seventy eight Libby community members whose screening test results are presently available, 30% already show clinical lung abnormalities. *Preliminary Findings of Medical Testing of Individuals Potentially Exposed to Asbestoform Minerals Associated with Vermiculite in Libby, Montan: An Interim Report for Community Health Planning* by the Department of Health and Human Services, Agency for Toxic Substances and Disease Registry ("ATSDR"), February 22, 2001, Exhibit 1 to Sobol Reply Declaration (hereinafter "Exhibit"). Notably, many of those in whom lung abnormalities were found lived in homes insulated with Zonolite insulation. *Id.* Specifically, 34 of the 1,078 tested residents reported that their potential exposure consisted of vermiculite insulation in their homes, and the chest x-rays of 14% of these insulation-only exposure participants showed scarring. *Id.*

The ATSDR findings strongly reinforce the need for class treatment of Plaintiffs' claims by highlighting the central issues common to the claims of all class members, namely the potential hazards of asbestos-contaminated Zonolite Attic Insulation and Grace's corollary responsibility to implement the asbestos notification, education and remediation program which plaintiffs seek in order to preserve class members' health and safety, and avoid needless injuries and deaths.

Even Grace's brief in opposition to class certification strongly supports the propriety of class treatment, since its mantra that "Zonolite is Safe" spotlights the central issue common to every material aspect of every class member's claim. Grace Brief at 2-10. In contrast, Plaintiffs

1  contend that Zonolite poses serious potential exposure and contamination hazards when disturbed,

2  and that the ATSDR results corroborate plaintiffs' contentions.  The ensuing single "Safe vs.

3  Hazardous controversy is ideally suited for unitary class treatment, the only vehicle which would

4  permit this court to fairly and efficiently resolve the dispute on behalf of the class and Grace.

5          Grace ignores all of the considerable flexibilities and efficiencies available among the

6  various available class certification provisions, 23(b)(2), 23(b)(1)(A) and (B), 23(b)(3) and

7  23(c)(4)(A) and refuses to acknowledge the propriety of class treatment of any claim or issue under

8  any circumstance.  Grace's obstinance reveals only its desire to escape potential liability for its own

9  shocking misconduct in intentionally concealing the asbestos hazards from the class.

10         Once this Court adjudicates the central issue of Zonolite's safety, then it will be able

11  to issue a class-wide ruling which will resolve the matter once and for all, either by holding Grace

12  responsible for the equitable asbestos notification, education and remediation program sought by

13  plaintiffs or, alternatively, by ruling for Grace against the class.  Either disposition fully justifies

14  class treatment of plaintiffs' equitable claims.

15

16    A.    **The ATSDR Findings Strongly Support Class Treatment of Plaintiffs' Request
           For Equitable Asbestos Notification, Education And Remediation.**

17         The ATSDR, an agency of the United States Department of Health and Human

18  Services (DHHS), recently completed a community-based medical testing program in Libby,

19  Montana developed in response to reports of illness among persons exposed to asbestos-

20  contaminated vermiculite in Libby, Montana. *See* Exhibit 1.  The medical testing program was

21  conducted by the ATSDR in cooperation with the DHHS Region VIII Office, the EPA, the Montana

22  Department of Health and Human Services and the Lincoln County Environmental Health

23  Department. *Id.* at 1.  The testing program involved over 6,000 participants, and was implemented

24  between July and November 2000. *Id.*

25         The ATSDR's "principal goal" was to identify the asbestos-related health effects of

26  participants exposed to asbestos from the Libby, Montana vermiculite mine and to refer them for

27  appropriate medical treatment.  Exhibit 1 at 1.  From July through November 2000, medical testing

28  was made available and provided to Grace workers; household contacts of the former workers; and

1  individuals who resided, worked, attended school, or participated in activities in the Libby area for

2  six months or more prior to December 31, 1990.  *Id.*  The actual medical testing consisted of a

3  verbally administered questionnaire, chest radiographs (x-rays) and simple spirometry testing to

4  measure lung function.  *Id.*

5          The questionnaire was administered to obtain health information as well as

6  demographic characteristics, residential history (including residence in homes with Zonolite Attic

7  Insulation), occupational history, behavior patterns and related issues.  *Id.*   The chest radiography

8  included two oblique views, to improve the test's sensitivity to detection of pleural abnormalities, as

9  well as a posterior-anterior view and the radiography equipment and procedures complied with

10 guidelines developed by NIOSH.  *Id.*  Radiographs were evaluated by the on-site radiologist and

11 three physicians nationally recognized as experts in asbestos-related conditions, as well as certified

12 "B-readers."[1]  *Id.* at 8.  Spirometry testing followed the guidelines of the American Thoracic Society

13 and was performed by a qualified technician and the test results were monitored to ensure the quality

14 of the results and validity of interpretations.  *Id.* at 9.

15          The medical testing program was designed to identify participants with asbestos-

16 caused abnormalities and to refer them for diagnosis and treatment.  According to the ATSDR, the

17 collected data, while not a formal epidemiologic study, nevertheless:

18          provides important information about the prevalence and degree of
            asbestos-related abnormalities among Libby residents, and about the
19          possible relationships between these abnormalities and each of the
            several exposure pathways evaluated.
20                                      .

21 *Id.* at 9.

22          The February 2001 report addresses the results of the 1,078 participants whose

23 medical screening results were already available, representing 18% of the total number of

24 participants, and a subsequent report(s) will be issued as the balance of results are obtained for the

25 remaining participants.  *Id.*  Of the 1,078 participants:

26          - 127 are former Grace workers
            - 34 had vermiculite insulation in their homes
27

28          [1]B-readers are physicians certified by NIOSH as qualified to interpret radiographs for
     environmental dust-related diseases.  ATSDR Report at 8.

1              - 558 had recreational contact with vermiculite
             - 177 had household contact with vermiculite

2

3              • 116 had work-related contact with vermiculite and
             • 53 had no known exposure to vermiculite.

4 *Id.* at Report Summary, p.1.   Of the 1,078 participants:

5              • 95% reported some contact with vermiculite
             • 30% of adults tested had scarring of the chest wall

6              seen by at least one physician on the chest x-ray and
             • 19% of adults tested had scarring seen by at least two

7              of the certified x-ray specialists

8 *Id.* at Report Summary, p. 2.  The number of people in each group who showed scarring was large:

9              • 14% of those who have vermiculite insulation in their
             homes;

10              • 37% of Grace workers;
             • 20% of household contacts;

11              • 18% of those reporting occupational vermiculite
             exposure;

12              • 14% of other participants;
             • 13% of those with recreational vermiculite contact.

13 *Id.* at Report Summary, p. 2.

14

15          In sum, the ATSDR's shocking lung injury statistics reveal a public health crisis

16 caused by asbestos-contaminated vermiculite and highlight plaintiffs' contention that the presence of

Vermiculite in Zonolite Attic Insulation constitutes contamination with unusually dangerous form of

17 asbestos, moreover this asbestos poses serious potential exposure and contamination hazards which

18 merit plaintiffs' requests for equitable notification, education and remediation relief which, as a

19 matter of fairness and practicality, can only be addressed on a class basis.

20        **B.**      **Zonolite Is Unsafe.**

21

22          Grace's contention that "Zonolite is Safe" is analogous to its recent contention in the

Montana EPA. litigation, when it opposed EPA access to the Libby mine on the grounds that Libby

23 asbestos contamination was not a demonstrated problem.  This absurd contention was soundly

24 rejected by United States Chief Judge Donald W. Molloy of the District of Montana, who stated that

25 the conclusion that there is a reasonable basis to believe that asbestos contamination is a problem in

26 Libby, "is as plain to see as the East Front of the Rockies."  Exhibit 4, *United States of America v.*

27 *W.R. Grace & Company, et al.*,  CV-00-167-M-DWM, Order granting United States' motion for

28 immediate EPA access, (D. Mont. March 9, 2001).  The same can be said here.

1    Indeed, Grace acknowledges that disturbance of Zonolite Attic Insulation can result in

2  exposure to airborne fibers.  However, Grace claims that asbestos must be inhaled in large quantities

3  and over lengthy periods of time before it can cause any risk of harm.  Of course, as Judge O'Connor

4  found in her ruling on plaintiffs' motion for preliminary injunctive relief, Grace's argument creates

5  an issue of fact for trial of the class claims.  Moreover, the United States Government and leading

6  medical-scientific organizations have taken the position that for asbestos-related cancers, such as

7  mesothelioma, there is no known safe level of exposure to asbestos.

8    For example, in 1976, the National Institute for Occupational Safety and Health

9  (NIOSH), an independent, unbiased governmental entity under the Public Health Service stated:

10    There are data that show that the lower the exposure, the lower the risk
   of developing cancer.  Excessive cancer risks have been demonstrated
11   at all fiber concentration studies to date.  Evaluation of all available
   human data provides no evidence for a threshold or for a "safe" level
12   of asbestos exposure.

13  Exhibit 5, Revised Recommended Asbestos Standard.

14    Similarly, the EPA has also taken the position that there is no safe level of exposure.

15  In the  March 1979 EPA guidance document entitled "Asbestos-Containing Materials In School

16  Buildings: A Guidance Document, " EPA stated:

17    **Is there a safe level of exposure?**

18    EPA and the scientific community believe that any exposure to
   asbestos involves some health risk.  No safe level of exposure (or
19   threshold exposure level) has been established.  Further, it is
   impossible at this time to confidently estimate the exact degree of risk
20   associated with low-level exposures.

21    **What is considered the best or safest approach to asbestos
   exposure?**

22
   Where possible, all exposure to asbestos should be eliminated or
23   controlled.

24  Exhibit 6, at 1.

25    Further, the United States Government has found through objective studies that

26  significant disease can occur as the result of short low level exposures to asbestos.  For example, in

27  its 1980 publication entitled, "Workplace Exposure to Asbestos," NIOSH stated:

28

1

2

3

4

> [T]he absence of a threshold is further indicated by the dramatic
> evidence of asbestos-related disease in members of asbestos-worker
> households and in persons living near asbestos-contaminated areas.
> These households and community contacts involved low-level and/or
> intermittent casual exposure to asbestos. Studies of duration of
> exposure suggest that even at very short exposure periods (1 day to 3
> months) significant disease can occur.

5    Exhibit 7, at 3.

6         This 1980 observation has now been dramatically corroborated by the 2001

7    Preliminary Findings health consequences of the Libby exposure. Grace also ignores the fact that

8    children and smokers living in homes with Zonolite Attic Insulation are at greater risk of disease. In

9    EPA's March 1983 guidance document entitled, "Guidance For Controlling Friable Asbestos-

10   Containing Materials in Buildings," EPA stated:

11        **Special Concerns:**

12

13

14

> Children and young adults who are exposed to asbestos have a greater
> chance than older people of developing certain asbestos-related
> diseases due to a longer remaining life span during which disease may
> develop. Also, smokers exposed to asbestos are at greater risk than
> nonsmokers with a similar level of exposure.

15   Exhibit 8, at 1-1.

16        While acknowledging that peak exposures to asbestos can occur in connection with

17   the disturbance of Zonolite Attic Insulation, Grace fails to disclose to the court the very serious

18   dangers posed by these peak exposures, and the fact that these dangers have been acknowledged by

19   the United States Government and by medical-scientific entities. For example, in the EPA's

20   proposed rules for friable asbestos-containing materials in schools, known as the AHERA

21   Regulation, EPA stated:

22

23

24

> The presence of unidentified friable asbestos-containing materials in
> school buildings increases significantly the likelihood that peak
> exposures to asbestos will occur. Since peak exposures in schools
> entail risks of serious injuries which may be reduced at extremely low
> costs, EPA finds that these exposures present an unreasonable risk and
> should be reduced accordingly.

25

26

27

28

> Peaks will occur during disturbances of friable material (either
> accidental or during repair or renovation operations) and during
> resuspension of previously released fibers by cleaning and
> maintenance operations (sweeping, dusting, vacuuming, etc.), or by
> general activities in the vicinity of fibers that have settled on floors and
> other surfaces.

1  Exhibit 9, at 61972-3.

2         Notably, while marketing and selling Zonolite Attic Insulation, W. R. Grace's top

3  leadership acknowledged the position being taken by experts in the field that there is no safe level of

4  asbestos exposure and that any exposure is potentially hazardous.  In an internal May 24, 1977 W. R.

5  Grace memorandum,  regarding "Tremolite in Vermiculite," marked "personal and confidential," a

6  top Grace official noted:

7              General public liability, stemming from the sale of consumer products,
             is a low-level risk with a very high potential liability if it develops.
8              While we have no evidence of any adverse affect of our products on
             consumers, neither can we offer convincing evidence that they are
9              absolutely safe.  Making such a  case is handicapped by the number of
             "experts" who claim that there is no safe level with the inference that
10             any exposure is potentially hazardous.  This leaves us open to liability
             without a good defense over a broad range of alleged hazards.  A
11             decision to label our consumer products would eliminate the risk of
             future liability, while exacerbating the risk of claims (mostly not
12             bonafide) from past use of the product.

13  Exhibit 10, at 17-18.

14         As it turned out, Grace's own foretelling of liability based on the fact that there is "no

15  safe level" of exposure and that "any exposure is potentially hazardous" turned out for Grace to be

16  true.   In fact, Grace has to date settled 25 to 100 asbestos-related bodily injury claims involving

17  exposure to asbestos-contaminated attic insulation.  Exhibit 11, August 10, 2000 letter from Grace's

18  counsel, James Restivo, to Robert M. Turkewitz.  This class action is intended to prevent further

19  needless asbestos contamination and bodily injury as a result of exposure to asbestos from Zonolite

20  by providing appropriate warnings that will allow occupants to minimize any future exposure and

21  arm them with the knowledge to protect themselves.

22       C.    **The Relief Sought By Plaintiffs Is Purely Equitable and Certification Is**
             **Appropriate under Rule 23(b)(2).**
23

24         Among a court's highest callings is its exercise of inherent and constitutionally

25  recognized equitable powers to issue preliminary and final injunctive relief, so as to preserve public

   health and safety.  If judicial experience with asbestos litigation has taught anything, it is that
26
   avoidance of human exposure to asbestos and avoidance of property contamination is preferable to
27
   protracted litigation which invariably follows in the aftermath of exposure and contamination.  As
28
   the Preliminary Findings demonstrate, vermiculite exposure leads to irreparable harm.  There is no

1  cure for asbestos. The facts of this case cry for immediate equitable relief, as opposed to

2  after-the-fact efforts to obtain a money judgment to compensate for the loss of a loved one or the

3  considerable financial damages that typically follow in the wake of unknowing contamination of

4  property with asbestos.

5          In this regard, Plaintiffs genuinely seek equitable relief alone: equitable asbestos

6  notification, education, and remediation. The notification component would serve to effectively

7  advise class members of dangers associated with Zonolite Attic Insulation, thus averting future

8  injury. The education component would serve to educate consumers as to actions they must take as

9  homeowners to avoid asbestos exposure and contamination of property and the remediation

10  component would ensure that appropriate operation, maintenance, and abatement activities, in fact,

11  take place, through creation of an equitable fund that facilitates such activities. Moreover, only a

12  court supervised equitable program will ensure that funds are reserved for asbestos remediation

13  activities.

14          Equity as implemented under the class action rules has evolved to embody three

15  distinct, and distinctly American principles: (1) efficiency and economy in judicial administration;

16  (2) universal access to civil justice; and (3) empowerment of small claimants to achieve redress from

17  corporate entities. Modern Rule 23 is the claim aggregation vehicle best situated to respond to the

18  pressing, equitable asbestos notification/education/remediation needs of the class and the proposed

19  equitable remedy presents a compelling basis for equity action, the avoidance of contamination,

20  serious injuries and death.

21          Plaintiffs genuinely insist upon such an equitable program, because such equitable

22  relief is far superior to the mere award or distribution of money damages and since only a court

23  ordered equitable fund ensures that notification, remediation, education and asbestos abatement

24  actually occur. This is a central distinction between equitable and at-law remedies, as recognized by

25  the California Supreme Court in its leading medical monitoring decision, *Potter v. Firestone Tire &*

26  *Rubber Co.*, 6 Cal. 4th 965, 863 P.2d 795, 825 (Cal. 1993):

27              Although conventional damage awards do not restrict plaintiffs in the
                use of money paid as compensatory damages, mass-exposure toxic tort
28              cases involve public interest not present in conventional tort litigation.

1

2

> The public health interest is served by a fund mechanism that
> encourages regular medical monitoring for victims of toxic exposure.

(Quoting *Ayers v. Jackson Tp.*, 525 A. 2d 287, 314 (NJ 1987).)

3

4   In contrast to a lump sum payment following money judgment, an equitable,

5   court-supervised fund will pay or reimburse class members, for the cost of testing and remediating

6   their houses and eliminates the option of spending the money for other purposes. The remedial fund

7   will also assure that asbestos remediation funds will be paid out only for remediation actually

8   administered, thus serving to limit the liability of defendants to expenses actually incurred.

9   Decisions of courts around the country, previously cited in Plaintiffs' motion in support of class

10  certification, recognize that the fact a defendant finances the equitable fund does not change the

11  equitable nature of the relief. The relief sought by Plaintiffs, therefore, is ideally suited for class

    treatment under Fed. R. Civ. P. 23(b)(2).

12

13  In the *School Asbestos* cases, previously cited in Plaintiffs' motion for class

14  certification, Rule 23(b)(3) damages claims were certified, instead of 23(b)(2) equitable claims, since

15  the class member school districts, unlike the class members in this action, were already advised by

16  the federal government of the asbestos hazards, and were already required by federal law to

17  remediate the asbestos contamination, distinguishing the appropriate relief from that sought here. *In*

18  *re School Asbestos Litig.*, 789 F.2d 996 (3d Cir. 1986); *Central Wesleyan College v. W. R. Grace &*

19  *Co.*, 6 F.3d 177 (4th Cir. 1993).

20  Class actions frequently seek and/or provide for warnings similar to those sought

21  here. *See Garza v. Sporting Goods Properties, Inc.*, No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS

22  2009 (W.D. Tex. Feb. 6, 1996) (approving class settlement including equitable relief in the form of

23  warnings and facilitation of replacement of defective rifle barrels). Similarly, in the Federal diet

24  drug litigation, plaintiffs successfully sought and obtained first litigation class certification and,

25  subsequently, settlement class certification of medical monitoring claims designed to protect and

26  preserve health and safety by warning class members of risks of the diet drugs and supplying the

27  medical testing required to uncover damage. *In re Diet Drugs (Phentermine, Fenfluramine,*

28  *Dexfenfluramine) Prods. Liab. Litig.*; *Jeffers v. American Home Products Corp.*, MDL 1203, 1999

    U.S. Dist. LEXIS 13228 (E.D. Pa. Aug. 26, 1999) (certifying multi-state medical monitoring

1  litigation class);*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.;*

2  *Brown v. American Home Products Corp.*, MDL 1203, 2000 U.S. Dist. LEXIS 12275 (E.D. Pa.

3  2000) (approving class action settlement for persons nationwide exposed to fenfluramine drugs).

4       Because the relief sought by Plaintiffs is equitable in character, Plaintiffs' motion

5  fulfills the requirements of Rule 23(b)(2).

6       **D.    Plaintiffs' Class Definition is Appropriately and Narrowly Defined, and the
            Proposed Class is Reasonably Ascertainable.**

7

8       The proposed class is objectively and narrowly defined and reasonably ascertainable.

9  Indeed, the class is reasonably limited to owners and occupiers of property with Zonolite Attic

10  insulation, and examination of the merits of any potential class members' claim is unnecessary in

11  order to determine whether that person is a member of the class.  Indeed, the current draft of class

12  notice proposed by the *Barbanti* plaintiffs well establishes the facility with which Zonolite Attic

13  Insulation is described and identified for purposes of establishing class membership.  Exhibit 3.

14       There is an identifiable class because class members can be ascertained by reference

15  to objective criteria (the presence of Zonolite attic insulation in their homes), and class membership

16  is not contingent on a prospective class member's state of mind, *See Elliott v. ITT Corp.*, 150 F.R.D.

17  569, 513 (N.D. Ill. 1992).  It would be difficult to imagine a class that is more objectively defined,

18  and it would not be possible to more narrowly circumscribe the class definition.

19       The proposed class here is more objectively and narrowly defined than others that

20  have been certified by various courts.  *E.g., Pottinger v. Miami*, 720 F. Supp. 955, 957 (S.D. Fla.

21  1989), *remanded on other grounds*, 40 F.3d 1155 (11th Cir. 1994), *opinion after remand*, 76 F.3d

22  1154 (11th Cir. 1996) (class defined as: homeless individuals who had been or expected to be

23  arrested for conduct essential to their daily lives); *Adames v. Mitsubishi Bank. Ltd.*, 133 F.R.D. 82,

24  89 (E.D.N.Y. 1989) (all non-oriental and non-Japanese employees who had reasonable

25  understanding or expectations of receiving promotion, transfer or job upgrade); *Buycks-Roberson v.*

26  *Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 328 (N.D. Ill. 1995) (applicants for mortgage loans whose

27  applications were denied, based on the fact that they were African-American or lived in

28  predominantly African-American neighborhoods).

1    Since this action seeks predominantly injunctive and declaratory relief, there is no

2 need to examine the particular circumstances of a potential class member's situation in order to

3 determine class membership.  All class members would be entitled to the same program of injunctive

4 relief sought by the named plaintiffs, though levels of remediation would ultimately vary according

5 to circumstance.  Even if certain steps need to be taken and certain evidence examined in order to

6 determine class membership, this would not preclude class certification.  *See, e.g., In re New*

7 *England Mut. Life Ins. Co. Sales Practices Litig.*, 183 F.R.D. 33, 43 (D. Mass. 1998); *Elliott v. ITT*

8 *Corp.*, 150 F.R.D. at 575.

9    Grace cites Judge Keeton's decision in *Kent v. Sunamerica Life Ins. Co.*, 190 F.R.D.

10 271 (D. Mass. 2000), in support of its arguments on the class definition.  However, Grace ignores

11 Judge Keeton's well-reasoned decision in *New England Mutual*, in which he summarily rejects the

12 same argument made by defendants here:

13    No need to deny class certification exists, however, simply because
     any particular plaintiff may have to offer additional proof at some
14    point in this MDL case, to assert class membership.  All class actions
     necessarily require the court to resort to some means of determining
15    who is entitled to membership in the class.  No basis exists in the
     record now before the court for concluding that, as defense asserts,
16    those determinations of membership for individual claimants will be
     so onerous as to necessitate numerous "mini-trials," one for each
17    potential class member.

18 *Id.*, 183 F.R.D. at 43.

19    The EPA has estimated that more than 70% of the vermiculite mined in the world

20 originated from the Libby mine.  Exhibit 3, "EPA New England Questions and Answers Regarding

21 Vermiculite Insulation."  Defendants' contention that some tiny fraction of class members' homes

22 may contain Zonolite Attic Insulation not produced from Libby vermiculite is irrelevant to class

23 certification and does not render the class definition overly broad.  Libby is responsible for the lion's

24 share of the world's vermiculite production, Grace has never demonstrated the use of material

25 amounts of asbestos-free vermiculite in its Zonolite insulation, and plaintiffs need not prove that

26

27

28

1 every single class member's Zonolite Attic Insulation came from Libby in order to have the class

2 certified as proposed.[2]

3         Similarly, defendants' assertion that the use of the word "occupiers" renders the class

4 definition overbroad or vague is incorrect. The use of this word serves an important purpose since

5 all persons occupying homes with Zonolite Attic Insulation, whether the own lease, rent or merely

6 reside them, are yet at risk, and need and deserve to be warned of the potential hazards in order to

7 take steps to protect themselves by avoiding needless exposures to the hazard.

8         The proposed class is appropriate for certification as defined.

9    **E.    The Named Plaintiffs Are Adequate Representatives of the Class.**

10         The purpose of the adequacy of the representation requirement is to ensure that the

11 class representative and his counsel will be diligent and capable in protecting the interest of class

12 members. *General Tel. Co. v. Falcon*, 457 U.S. 147, 157, 102 S. Ct. 2364, 2370-71, 72 L. Ed. 2d

13 740 (1982); *see also Hill v. Western Electric Co., Inc.*, 672 F.2d 381, 389, n.3 (4th Cir. 1982).  Class

14 Representatives Paul Price, John Prebil, and Margery Prebil, have already demonstrated their

15 diligence in representing the class by bringing the present action, promptly seeking preliminary

16 injunctive relief that runs to the benefit of class members, subjecting themselves to lengthy

17 depositions, answering numerous interrogatories and requests for production, and subjecting their

18 homes to days of testing by teams of defendants' experts.  Nonetheless, defendants question the

19 adequacy of class representation.

20    **1.    Plaintiffs Are Appropriately Involved in the Proceedings.**

21         Defendants' attack upon the adequacy of the representative plaintiffs should be

22 viewed skeptically, since Grace can be expected to always manufacture reasons to find any proposed

23 representative plaintiff inadequate to pursue class claims against it:

24         The burden of establishing class requirements rests on plaintiff, but it
          is often the defendant, preferring not to be successfully sued by
25         anyone, who supposedly undertakes to assist the court in determining

26
          [2]Additionally, Plaintiffs are in possession of evidence showing that the Zonolite Attic
27 Insulation on Mr. Lindholm's property does contain asbestos fibers and defendants' conclusory
   statements that Mr. Lindholm's property does not contain asbestos and contains non-Libby
28 vermiculite should not be given any weight by this Court on the pending Motion for Class
   Certification.

1    whether a putative class should be certified. <u>When it comes, for
instance, to determining whether 'the representative parties will fairly
2    and adequately protect the interest of the class,' or the plaintiffs'
ability to finance the litigation, it is a bit like permitting a fox,
3    although with a pious countenance, to take charge of the chicken
house.</u>

4
*Eggleston v. Chicago Journeyman*, 657 F.2d 890, 896 (7th Cir. 1981) (emphasis added; citation
5
omitted). Grace's attacks also fail on the merits. Each of the proposed representative Plaintiffs has
6
evinced steadfast resolve in enduring lengthy depositions and has articulated an unwavering
7
commitment to obtaining class wide relief:
8
9    I strongly support class certification in a form that will enable the
Court to implement the appropriate kinds of relief fulfilling the goals I
described in my deposition, including notification, warning and
10    education for homeowners, a program for safe removal or containment
of the contaminated insulation, and creation of a fund to defray the
11    costs thereof.

12    I am familiar with the latest screening results from Libby published by
the ATSDR. These indicate to me the need for accelerated
13    adjudication, and achievement of a resolution which will preserve the
health of and prevent further injury to and/or death of members of the
14    class.  Everyone in the class needs and desrves knowledge of the
asbestos hazard presented by attic insulation so that class members do
15    no allow their children to play in zonolite insulated attics, and do not
engage in remodeling, rewiring or ther activites with would disturb the
16    insulation and expose peope to dangerous asbestos dust.

17    Affidavit of John Prebil, 3/21/01, at 2.

18    I strongly support class certification of the equitable claims as the best
way of achieving the equitable asbestos notification, education and
19    remediation program we are seeking.

20    I am especially concerned that all members of the class receive
warnings and education which will prevent further exposures to
21    homeowners and their children.  Without sufficient warning and
education, people have no reason to avoid disturbing the insulation and
22    thereby cause dangerous exposures to asbestos dust.  As recently as a
few months ago I spoke with a man who was hauling vermiculite out
23    of his attic with five gallon buckets who was unaware of the hazards of
that activity.

24
Affidavit of Paul Price, 3/22/01, at p.2. See also deposition excerpts cited in Plaintiffs' opening
25
memorandum.
26
Grace's assertion of a statute of limitation defense to Paul Price's claims is
27
particularly implausible since Grace is contradictorily asserting, on the one hand, that Zonolite Attic
28
Insulation is safe and class members need take no action of any kind to protect themselves from it

1    and, while on the other hand, suggesting that Paul Price should have sued Grace over the product

2    many years ago. A California federal district court called such a contradictory situation a "Catch 22"

3    for plaintiffs. *Barth v. Firestone Tire & Rubber Co.*, 673 F. Supp. 1466, 1476 (N.D. Cal. 1987).

4    The plaintiff in *Barth* sought equitable medical monitoring to combat "an irreparable threat to his

5    health that can be mitigated only by the creation of a medical monitoring fund." 673 F. Supp. at

6    1476. The court agreed that the combination of a long latency period following toxic exposure and

7    the class members' lack of knowledge of exposure "effectively deprived them of any remedy under

8    the workers' compensation system," and, consequently, the court found it "disingenuous for the

9    defendant to argue that [the representative plaintiff's] knowledge should preclude him from bringing

10    this action." Id. at 1477. The court stated further:

11          the Court cannot preclude the putative class from seeking the relief it
                  desires on the ground that the named plaintiff already possesses the
12          knowledge that underlies the class remedy. . . . [t]he interests of the
                  class can only be protected by someone who possesses knowledge of
13          the alleged exposure. For the defendant to argue that as soon as one
                  receives that knowledge money damages become sufficient places the
14          plaintiff and the class in an untenable 'Catch 22' situation - - only a
                  person with knowledge can bring suit and only someone without
15          knowledge will have the necessary standing.

16    Id.

17          Class certification determinations are based solely on the allegations as set forth in the

18    complaint, which are accepted as true, and do not involve an inquiry into the merits of the plaintiffs'

19    claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78, 94 S. Ct. 2140, 2153, 40 L. Ed. 2d 732

20    (1974). "Plaintiffs need not even establish the existence of a cause of action in order to have a class

21    certified . . . ." *Rodriguez v. Carlson*, 166 F.R.D. 465, 474 (E.D. Wash. 1996). The considerable

22    merit of Plaintiffs' request for relief and the factual basis warranting that relief, therefore, may be

23    appropriately considered following a determination that those claims may be adjudicated on a

24    class-wide basis.

25

26

27

28

F.    **Additional Arguments Advanced by Defendants Are Both Immaterial to Class Certification and Lack Merit.**

In opposing class certification, defendants feign concern for the class[3/] and advance various positions going to the merits of the relief requested by Plaintiffs or the legal viability of those claims. Such attacks are not germane to the issue of class certification.

Shedding crocodile tears for the class members, Grace claims that plaintiff's reliance upon three simple theories of recovery; negligence, strict liability and fraud, impermissibly divests class members of the benefit of other potential theories of recovery. Grace Brief at 44-45. Grace thus argues both that Plaintiffs are too late to assert any claims at that they have asserted too few. To the contrary, the judicial goals of avoiding multiplicity of suits and litigation costs and expenses incident to such suits, are appropriately advanced by enabling narrowly tailored claims to proceed on a class basis, regardless of other potential claims. This viewpoint is in harmony with current class action jurisprudence.

A class representative need not assert every conceivable claim in order to be an adequate representative. A plaintiff pursuing a class action may, instead assert the class's most meritorious claims and need not assert all possible claims. In particular, claims which are not suited to class treatment, are appropriately excluded from a class complaint:

> The fact that counsel has not tried to press claims against [defendant]
> which they believe (and justifiably so) are unsuitable for class
> treatment does not make them inadequate. To the contrary, that is the
> proper course for them to take.

*Sullivan v. Chase* Inv. Serv., 79 F.R.D. 246, 258 (N.D. Cal. 1978); *see also Microsoft Corp v. Manning*, 914 S.W.2d 602, 610 (Tex. App. Texarkana 1995) (approving class counsel's decision to

---

[3/]Judge Molloy's recent order granting the EPA access to the Libby mine chides Grace for feigning concern for school kids to justify opposition to EPA remediation of commercial sites:

> Defendants foresee dire consequences for the playgrounds of tender
> young school children, defenseless against the vicissitudes of EPA
> discretion. Grace should have acknowledged this concern for the
> public long ago in the sordid history of asbestos and its harmful
> effects.

Exh. 4, 3/9/01 Order at 15 (citation omitted).

1  pursue "only certain fraud claims, while omitting other claims that could have been asserted by other

2  plaintiffs").

3        The relief Plaintiffs seek is a natural reflection of the predicament in which

4  Defendants have placed class members. Class-wide equitable relief to forestall future injury differs

5  radically from an individual personal injury claim for compensatory damages based on an existing

6  physical injury caused by exposure. In seeking to achieve equitable relief for the class and thereby

7  avert physical injury, while preserving class members' rights to pursue personal injury claims in the

8  future should they have the misfortune of contracting a disease, Plaintiffs serve the class members'

9  interests and thereby demonstrate the adequacy of their representation.

10       Exclusion of even existing claims from the class complaint that may be brought by an

11  individual class member is appropriate. After all, the omission of individual claims from a class

12  complaint does not constitute a dismissal, nor does it bar the individuals from asserting themselves.

13  As the court remarked in *Sullivan*:

14             What defendants have characterized as "splitting" causes of action is
               perfectly appropriate under Rule 23. It is not uncommon for
15             defendants to engage in a course of conduct which gives rise to a
               variety of claims, some amenable to class treatment, others not. Those
16             claims that are amenable should be prosecuted as class actions in order
               to realize the savings of resources of courts and parties that Rule 23 is
17             designed to facilitate.

18  *Sullivan*, 79 F.R.D. at 265.

19       It is well established that asserting certain claims on behalf of the class as a whole,

20  while reserving other claims for simultaneous or subsequent individual litigation, is proper and does

21  not estop litigation of other claims. *Microsoft Corp.*, 914 S.W.2d at 610. Indeed, Rule 23 itself

22  provides that "an action may be brought or maintained as a class action with respect to particular

23  issues." Fed. R. Civ. P. 23(c)(4)(A). The Complaint in this action properly centers on three simple

24  theories of recovery and equitable remedies which seek to avoid contamination, serious injury and

25  death. Of course, this action does not include claims for personal injury, and Grace's contention that

26  the Supreme Court's decision in *Amchem* somehow forestalls certification of the narrow equitable

27  class proposed there is absurd. *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). To the contrary,

28  *Amchem* endorses class certification of claims, like those in this action, meriting judicial attention

1 | but which cannot be economically litigated on an individual basis. *Id.* at 617 (*citing Mace v. Van Ru*
2 | *Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

3 | Finally, Defendants' attack upon purported differences among the states' laws of
4 | negligence, strict liability and fraud blindly disregards compelling similarities of law in the failure to
5 | warn context, similarities which are appropriately and fairly applied to this action where compelling
6 | evidence of Grace's nondisclosure of extraordinary asbestos hazards suffices to fairly adjudicate its
7 | potential liability in a single forum, under the laws of each and all of the states. The knowing
8 | suppression or concealment of a material fact by one with a duty to disclose is universally actionable;
9 | no state law condones such conduct. Plaintiffs will supply the Court with a specific trial plan once
10 | the Court indicates how it wishes to address class certification.

11 | **II.   CONCLUSION**

12 | This is an ideal case for class treatment, which is indispensable to fairly and
13 | efficiently resolve the central issues common to all claims, whether asbestos-contaminated Zonolite
14 | Attic Insulation poses a contamination and exposure hazard when disturbed, whether Grace is liable
15 | for failing to warn of the hazards and whether Plaintiffs are entitled to the asbestos notification,
16 | education and remediation program they contend to be necessary to preserve health and avoid
17 | needless contamination, injury and death.

1 | DATED: March 23, 2001

Respectfully submitted,

By: _____
     Elizabeth J. Cabraser,
     Plaintiffs' Executive Committee and as
     Proposed Class Counsel

Elizabeth J. Cabraser
Fabrice N. Vincent
John Low-Beer
LIEFF, CABRASER, HEIMANN
   & BERNSTEIN, LLP
Embarcadero Center West, 30th Floor
275 Battery Street
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

and

By: _____
     Thomas M. Sobol (BBO No. 471770)
     Proposed Class Counsel

Thomas M. Sobol
Jan R. Schlichtmann
LIEFF, CABRASER, HEIMANN
   & BERNSTEIN, LLP
214 Union Wharf
Boston, MA 02109-1216
Telephone: (617) 720-5000
Facsimile: (617) 720-5015

By: _____
     John G. Stoia, Jr.,
     Plaintiffs' Executive Committee and as
     Proposed Class Counsel

John J. Stoia, Jr.
Timothy G. Blood
Jobeth Halper
MILBERG WEISS BERSHAD HYNES & LERACH
LLP
600 West Broadway
1800 One America Plaza
San Diego, CA 92101-5050
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

By: _____

David Pastor,
Plaintiffs' Executive Committee and as
Proposed Class Counsel

David Pastor
Edward L. Manchur
John C. Martland
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: (781) 231-7850
Facsimile: (781) 231-7840

By: _____

Edward J. Westbrook,
Plaintiffs' Executive Committee and as
Proposed Class Counsel

Edward J. Westbrook
Robert M. Turkewitz
NESS MOTLEY LOADHOLT
  RICHARDSON & POOLE
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465
Telephone: (843) 216-9000
Facsimile: (843) 216-9440

By: _____

Darrell Scott,  As Proposed Class Counsel

Darrell Scott
Michael Black
LUKINS & ANNIS, P.S.
1600 Washington Trust Financial Cntr
717 W Sprague Ave.
Spokane, WA 99201-0466
Telephone: (509) 455-9555
Facsimile: (509) 747-2323

Attorneys for Plaintiffs Paul Price, John Prebil, and
Margery Prebil

By: _____
Richard Lewis, As Proposed Class Counsel

Richard Lewis
COHEN, MILSTEIN, HAUSFELD
  & TOLL, P.L.L.C.
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C. 20005-3934
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

and

Steve Toll
Tamara Driscoll
COHEN, MILSTEIN, HAUSFELD
  & TOLL, P.L.L.C.
999 Third Avenue, Suite 3600
Seattle, WA 98104
Telephone: (206) 521-0080
Facsimile: (206) 521-0166

Attorneys for Plaintiffs Paul Price, John Prebil, and
Margery Prebil

By: _____
Allan McGarvey, As Proposed Class Counsel

Allan McGarvey
McGARVEY, HEBERLING, SULLIVAN
  & McGARVEY, P.C.
745 South Main
Kalispell, MT 59901
Telephone: (406) 752-5566
Facsimile: (406) 752-7124

Attorneys for Plaintiffs Paul Price, John Prebil, and
Margery Prebil

On the Brief:

Christopher A. Seeger
SEEGER WEISS LLP
One William Street
New York, NY 10004
Telephone: (212) 584-0700
Facsimile: (212) 584-0799

Attorneys for Jan Hunter

1
Mark S. Williams
BORRELLI, HUTTON & WILLIAM, P.A.
2
376 Trapelo Road
Belmont, MA  02478
3

Attorneys for Edward Lindholm and John J.
4
Szufnarowski

5
William E. Hoese
KOHN, SWIFT & GRAF, P.C.
6
One South Broad Street, Suite 2100
Philadelphia, PA  19107-3389
7
Telephone:  (215) 238-1700
Facsimile:  (215) 238-1968
8

Attorneys for Edward Lindholm and John J.
9
Szufnarowski

10
Mark C. Goldenberg
HOPKINS & GOLDENBERG, P.C.
11
2132 Pontoon Road
Granite City, IL  62040
12
Telephone:  (618) 877-0088
Facsimile:  (618) 877-6230
13

Attorneys for Jan Hunter
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re:                                    )    MDL Docket No. 1376
                                          )
ZONOLITE ATTIC INSULATION                 )    The Honorable Patti B. Saris, Presiding
PRODUCTS LIABILITY LITIGATION             )
                                          )
                                          )
THIS DOCUMENT RELATES TO: ALL             )
ACTIONS                                   )
                                          )

## RULE 26 INITIAL DISCLOSURE STATEMENT
## OF DEFENDANTS W. R. GRACE & CO.-CONN. AND W. R. GRACE & CO.

Defendants W. R. Grace & Co.-Conn. (hereinafter "Grace") and W. R. Grace & Co., a
Delaware corporation (hereinafter "Grace Delaware"), hereby disclose the following pursuant to
Local Rules 26.1(B) and 26.2(A) of the United States District Court for the District of
Massachusetts.

1.      The following individuals are persons who are believed to have witnessed or
participated in the transactions or occurrences giving rise to the claims and defenses or are
otherwise known or believed to have substantial discoverable information about the claims or
defenses in this action.  Grace and Grace Delaware reserve the right to amend this list as
additional information becomes available.

1.    Mr. Wilfred G. Archambo
      26 Kittrell Street
      Springfield, MA  01101
      (413) 782-4210

      Mr. Archambo, a former Grace sales representative, may testify about the
      selling, marketing and distribution, as well as the composition and performance,
      of attic insulation.

2.    Bruce A. Blessington
      Bionostics Inc.
      2 Craig Road
      Acton, MA 01720
      (978) 263-3856

      Mr. Blessington, a former Grace employee, was at various times the Marketing
      Manager and the Manager for Zonolite Insulation Products.

3.    James Cintani
      35 Highland Drive
      Yardley, PA  19067
      (215) 493-4786

      Mr. Cintani, a former Grace employee, was a sales representative and Regional
      Manager.  He may testify about the selling, marketing and distribution, as well as
      the composition and performance, of attic insulation.

4.    William Culver
      1300 W. Boston St., #41
      Seattle, WA  98119
      (206) 284-3106

      Mr. Culver, a former Grace employee, was a Regional Manager.  He may testify
      about the selling, marketing and distribution, as well as composition and
      performance, of attic insulation.

5.    Heyman C. Duecker
      35 Robin Hill Road
      Chelmsford, MA  01824-3808
      (978) 256-5722

      Mr. Duecker, a former Grace employee, was at one time Vice President for
      Research at the Construction Products Division.  In that role, he supervised
      various research projects involving attic insulation.

2

6.    Frederick W. Eaton
      127 Authors Road
      Concord, MA  01742
      (978) 369-5676

      Mr. Eaton, a former Grace employee, was an engineer for the Construction
      Products Division.  He became the environmental coordinator for CPD.  He
      conducted many tests during the application and installation of attic insulation.

7.    Thomas Egan
      Floors & Fireproofing, Inc.
      114 E. Baltimore Ave., Suite 3
      Lansdowne, PA  19050
      (610) 284-4940

      Mr. Egan, a former Grace employee, was a Regional Manager.  He may testify
      about the selling, marketing and distribution, as well as composition and
      performance, of attic insulation.

8.    James Stanford Titus
      5 Knoll Drive
      Yardley, PA  19067

      Mr. Titus, a former Grace employee, was a sales representative and Regional
      Manager.  He may testify about the selling, marketing and distribution, as well as
      the composition and performance, of attic insulation.

9.    Harry Eschenbach
      12 Cougar Run
      Hilton Head, SC  29926-1952
      (843) 689-5509

      Mr. Eschenbach is a former director of Health, Safety and Toxicology for Grace.
      He may testify about health, safety and toxicological issues as well as about the
      vermiculite mining and milling operations of the Zonolite Company and W.R.
      Grace at Libby, Montana and Enoree, South Carolina, and about the exfoliation
      process at Zonolite and Grace expanding plants.

10.    O. Mario Favorito
       W. R. Grace & Co.
       62 Whittemore Avenue
       Cambridge, MA  02140
       (617) 876-1400

       Mr. Favorito was legal counsel to the Construction Products Division.

11.    Robert Frohlich
       552 Springs Road
       Bedford, MA  01730
       (781) 275-2362

       Mr. Frohlich, a former Grace employee, held various positions.  He was a sales
       representative and a district sales manager for a licensee of Grace.  He joined the
       Construction Products Division in the early 1970's as a product manager.

12.    Paul Keefe
       W. R. Grace & Co.
       62 Whittemore Avenue
       Cambridge, MA  02140
       (617) 876-1400

       Mr. Keefe was the Product Manager when Grace stopped manufacturing attic
       insulation.

13.    Robert H. Locke
       95 Spring Road
       Concord, MA  01742
       (978) 369-8549

       Mr. Locke, a former Grace employee, worked on issues involving tremolite.

14.    Allen Stringer
       W.R. Grace & Co.
       P.O. Box 695
       Libby, MT 59923
       (406) 293-3964

       Mr. Stringer, a Grace employee, may testify generally regarding the mining and
       milling process used in Libby and the history of the Libby vermiculite mine.

4

15.    Robert Upchurch
       23191 Farmington Road
       Farmington, MI 48336

       Mr. Upchurch, a former Grace employee, was a District Manager. He may testify about the selling, marketing and distribution, as well as composition and performance, of attic insulation.

16.    Rodney Vining
       6360 Pelican Bay Blvd., Apt. 201-C
       Naples, FL 34108
       (941) 566-8752

       Mr. Vining, a former Grace employee, may testify generally about Grace products and corporate history. He was President of the Construction Products Division.

17.    Robert Walsh
       P.O. Box 459
       Quechee, VT 05059
       (802) 295-1987

       Mr. Walsh, a former Grace employee, was at different times Executive Vice President and President of the Construction Products Division. He made the decision to stop selling attic insulation.

18.    Bruce R. Williams
       27 Nickerson Road
       Lexington, MA 02173
       (781) 862-4769

       Mr. Williams, a former Grace employee, became the Vice President of Building Products in the Construction Products Division.

19.    W. Reed Wright
       304 North Channel Drive
       Wrightsville Beach, NC 28480
       (910) 256-6223

       Mr. Wright, a former Grace employee, was Manager of Manufacturing. He had responsibility for the manufacturing of products of the Construction Products Division, including Zonolite Attic Insulation.

5

documents regarding the operation of the Libby, Montana mine and mill. By order of a Montana state court judge, 81 boxes of records have been returned to Libby, Montana for review by McGarvey, Heberling, Sullivan & McGarvey, one of the plaintiffs' attorneys in these cases. Copies of the contents of all but 12 of those 81 boxes are also available at the Winthrop Square repository.

## II. Headquarters of Grace's Construction Products Division, Cambridge, Massachusetts

Approximately 950 boxes of original documents relating to the manufacture and sale of vermiculite products, including but not limited to Attic Insulation.

## III. Documents Maintained by Holme, Roberts & Owen, LLP in Denver and/or Boulder, Colorado

Approximately 950 boxes of original documents regarding the operations of Grace's former mine and mill in Libby, Montana, including sales records for Libby vermiculite and other Zonolite products. Approximately 365 of these 950 boxes contain ledgers reflecting sales of Zonolite products and the balance relate to the Libby mine and mill.

## IV. Additional Documents

In addition to the documents described above, there may be potentially relevant documents which have not yet been reviewed by counsel for Grace and Grace Delaware. The majority of such documents would have been created after Grace's comprehensive review for asbestos-related documents in the mid 1980's. The most likely location for such documents is the headquarters of Grace's Construction Products Division in Cambridge, Massachusetts. Grace and Grace Delaware estimate that between 2 and 3 million pages of potentially responsive documents may be in Cambridge.

7

3.      Grace and Grace Delaware have not obtained any statement from the plaintiffs regarding the subject matter of the claims.  Of course, some plaintiffs have been deposed in these cases.

4.      Federal agencies, including the Environmental Protection Agency, the United States Consumer Products Safety Commission, the Federal Trade Commission and others corresponded with Grace-Conn. concerning vermiculite in the 1970's and 1980's.  More recently, the U.S. Environmental Protection Agency has been conducting an investigation regarding vermiculite operations at Libby, Montana, formerly owned and operated by Grace-Conn.

5.      The following is excerpted from Grace's most recent annual report.

> Grace previously purchased insurance policies with respect to its asbestos-related lawsuits and claims.
>
> . . .
>
> Grace has settled with and been paid by its primary insurance carriers with respect to both property damage and bodily injury cases and claims.  Grace has also settled with its excess insurance carriers that wrote policies available for property damage cases; those settlements involve amounts paid and to be paid to Grace.  In addition, Grace has settled with many excess insurance carriers that wrote policies available for bodily injury claims.  Grace is currently in litigation with certain remaining excess insurance carriers whose policies general represent layers of coverage Grace has not yet reached.  Such policies are believed by Grace to be available for asbestos-related bodily injury lawsuits.  Insurance coverage for asbestos-related liabilities has not been commercially available since 1985.
>
> . . .

8

In Grace's opinion, it is probable that recoveries from its insurance carriers . . ., along with other funds, will be available to satisfy the property damage and bodily injury cases and claims pending at December 31, 1999, as well as bodily injury claims expected to be filed in the future.

Dated: February 15, 2001

Respectfully submitted,
W. R. GRACE & CO.-CONN. and
W. R. GRACE & CO.
By their attorneys,

Robert A. Murphy, BBO #363700
CASNER & EDWARDS, LLP
One Federal Street
Boston, MA  02110
(617) 426-5900

James J. Restivo
Lawrence E. Flatley
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA  15219
(412) 288-3131

Arlene Fickler
Hoye, Morris & Kerr LLP
One Liberty Place, Suite 4900
1650 Market Street
Philadelphia, PA  19103
(215) 981-5850

52000.43/177814

## CERTIFICATE OF SERVICE

I, Robert A. Murphy, hereby certify that on February 15, 2001, I caused to be served copies of the following documents:

1. Rule 26 Initial Disclosure Statement of Defendants W. R. Grace & Co.-Conn. and W. R. Grace & Co.;

2. Certificate of Service; and

3. Courtesy Letter to Judge Saris

upon the following counsel by fax:

Elizabeth J. Cabraser, Esq.
c/o Thomas M. Sobol, Esq.
Leiff, Cabraser, Heimann & Bernstein, LLP
214 Union Wharf
Boston, MA  02109-1216

James R. Carroll, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
One Beacon Street
Boston, MA  02108

David Pastor, Esq.
Gilman and Pastor, LLP
999 Broadway
Saugus, MA  01906

and upon the following counsel by Federal Express overnight delivery:

Edward J. Westbrook, Esq.
Robert M. Turkewitz
Ness Motley Loadholt Richardson & Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

John J. Stoia, Jr., Esq.
Milberg Weiss Bershad Hynes & Lerach, LLP
600 West Broadway
1800 One America Plaza
San Diego, CA  92101-5050

John A. Cochrane, Esq.
Cochrane & Bresnahan, P.A.
24 East Fourth Street
St. Paul, MN 55101

Frederick P. Furth, Esq.
The Furth Firm
201 Sansome Street, Suite 1000
San Francisco, CA 94104

Stephen M. Tillery, Esq.
Carr, Korein, Tillery, Kunin, Montroy, Cates,
    Katz & Glass, LLC
10 Executive Woods Court
Swansea, IL 62226

Harvey N. Jones, Esq.
Sieben, Polk LaVerdiere, Jones & Hawn, P.C.
999 Westview Drive
Hastings, MN 55033

Sheila Birnbaum, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, NY 10036

Robert A. Murphy

52000.43/176349

2