## SCHEDULE "A"

### I.    DEFINITIONS

The following definitions shall apply to each of the document requests and are deemed to be incorporated in each of the requests:

1.    "Grace Defendants" means W.R. Grace & Company (a Delaware corporation) and W.R. Grace & Company-Conn. (a Connecticut company) (defined below).

2.    "Grace Companies" means the "Grace Defendants," their predecessors, subsidiaries and affiliates, including, but not limited to, Grace Speciality Chemical, Inc., W.R. Grace & Company (a New York corporation), Grace Holdings, Inc., the Zonolite Company, and "Cryovac," (defined below) and any of their directors, officers, agents (including attorneys, accountants, consultants, investment advisors or bankers), employees, representatives and any other person or entity purporting to act on their behalf.

3.    "Sealed Air" means defendant Sealed Air Corporation, its subsidiaries and affiliated entities and any of their directors, officers, agents (including attorneys, accountants, consultants, investment advisors or bankers), employees, representatives and any other person or entity purporting to act on their behalf.

4.    "Grace-Conn." means W.R. Grace & Company - Conn. (a Connecticut company) and shall include the Grace Companies' specialty chemical business as it existed after the "reorganization", and any of their directors, officers, agents (including attorneys, accountants, consultants, investment advisors or bankers), employees, representatives and any other person purporting to act on their behalf.

5.    "Cryovac" means the Grace Companies' packaging business as it existed before the "merger" (defined below), both when operated as a division of W.R. Grace & Co., a New York corporation, and subsequently as a subsidiary of W.R. Grace (a Delaware corporation), and its subsidiaries, affiliates, predecessors and successors and any of their directors, officers, agents (including attorneys, accountants, consultants, investment advisors or bankers), employees, representatives and any other person purporting to act on their behalf.

6.    "Grace Specialty Chemical's 1997 10-K" means Grace Specialty Chemical, Inc.'s Form 10-K filed with the United States Securities & Exchange Commission for the fiscal year ending December 31, 1997. (Relevant portions of which are attached as Ex. A.)

7.    "Grace's 1999 10-K" means W.R. Grace & Co.'s Form 10-K filed with the United States Securities & Exchange Commission for the fiscal year ending December 31, 1999. (Relevant portions of which are attached as Ex. B.)

8.    "Sealed Air's 1998 10-K" means Sealed Air's Form 10-K filed with the United States Securities & Exchange Commission for the fiscal year ending December 31, 1998. (Relevant portions of which are attached as Ex. C.)

9.    "Sealed Air's Proxy Statement" means Sealed Air's Joint Proxy Statement/Prospectus, dated February 1998. (Relevant portions of which are attached as Ex. D.)

10.    "Reorganization" means the transaction in which the Grace Companies' specialty chemical business was "separated from its packaging business, the packaging business was contributed to one group of wholly owned subsidiaries ("Cryovac") and the specialty chemicals business was contributed to another group of wholly owned subsidiaries ("Grace-Conn.")," as defined on page 1 of Sealed Air's 1998 10-K. (Ex. C.)

11.    "Recapitalization" refers to the "recapitalization" as defined on page 1 of Sealed Air's 1998 10-K. (Ex. C.)

12.    "Merger" refers to the merger between the Grace Companies' packaging business and Sealed Air as defined on page 1 of Sealed Air's 1998 10-K. (Ex. C.)

13.    "Document" or "Documents" shall be interpreted in the broadest possible sense and includes, without limitation, all written, recorded, printed, typed, transcribed, filmed, digitized, or graphic matter and all other tangible things and media upon which any handwriting, typing, printing, drawing, representation, electrostatic or other copy, sound or video recording, magnetic or electrical impulse, visual reproduction or communication is recorded, reproduced or represented, including each and any book, record, correspondence, report, memoranda, electronic mail ("e-mail"), voice mail, contract, table, tabulation, graph, chart, diagram, plan, schedule, appointment book, calendar,

diary, time sheet, report, study, analysis, draft, telegram, teletype or telecopy message, file, telephone log, telephone message, check, microfilm, microfiche, picture, photograph, printout, electronic data compilation, tape, diskette, drive, removable media, note, minutes or transcript of proceedings, including, but not limited to, minutes of meetings, or other communications of any type, including inter-office communications, questionnaires, surveys, charges, newspapers, booklets, circulars, work papers, bulletins, notices, instructions, resolutions, reports, records, papers, bills or invoices, books of account, financial statements, working papers, deeds, loan agreements, notes, ledgers, security agreements, financing statements, tax returns, checks, receipts, journals and data of every description and shall include each and any original produced or reproduced by any method, all non-identical copies (whether different from the original because of notes made in or attached to such copy, or otherwise), all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing.

14.    "All Documents" means every document within the custody, possession or control of you, your national, regional and local offices, and any of your attorneys, representatives, and employees, whether an original or copy (as defined above), known to you, and every such document or writing which you can locate or discover through reasonably diligent efforts.

15.    "Including" means "including, but not limited to," or "including, without limitation." Any examples which follow these phrases are set forth to clarify the request, definition or instruction, not to limit the request, definition or instruction.

16.    "And" means and/or.

17.    "Or" means and/or.

18.    "Refer," "referring," "discuss," "discussing," "concern," and "concerning" all mean documents which explicitly or implicitly, in whole or in part, compare, were received in conjunction with, or were generated as a result of the subject matter of the request, including all documents which reflect, record, specify, memorialize, relate, describe, consider, concern, constitute, embody, evaluate, analyze, review, report on, comment on, impinge upon or impact the subject matter of the

request.

## II.    REQUESTS FOR PRODUCTION

1.    All documents concerning due diligence performed with respect to the reorganization, recapitalization and merger.

2.    All documents relating to the engagement, disengagement, dismissal or change of independent auditors retained by the Grace Companies in connection with the reorganization, recapitalization and merger, including documents concerning the purpose or reason for any changes in the firms auditing the reorganization, recapitalization and merger.

3.    All documentation provided to or received from the Grace Companies' independent auditors concerning the reorganization, recapitalization and merger.

4.    All reports, letters or forms relating to any audit, consulting or tax engagement with the Grace Companies' independent auditors concerning the reorganization, recapitalization and merger.

5.    All documents reflecting meetings of the Grace Companies' audit committee or discussions with members of the Grace Companies' audit committee concerning the reorganization, recapitalization and merger.

6.    All documents relating to presentations and reports given to the Grace Companies' Board of Directors concerning the reorganization, recapitalization and merger.

7.    All documents sent to or received from consultants concerning the reorganization, recapitalization and merger.

8.    All reports or analyses generated concerning the reorganization, recapitalization and merger, whether by the Grace Companies or a third party.

9.    All documents discussing or concerning the reorganization, recapitalization and merger, including documents discussing the reasons or purpose of the reorganization, recapitalization and merger.

10.   All documents concerning set monetary limits on transactions that could occur without the approval of the Grace Defendants' board of directors.

11.    All documents discussing, analyzing or constituting the indemnification or liability of Sealed Air for any liabilities of the Grace Companies, including all indemnity agreements.

12.    All documents discussing, supporting or contradicting the following statement on page 10 of Sealed Air's 1998 10-K: "The Company may remain liable with respect to certain of such liabilities if New Grace fails to fulfill its indemnity obligation to the company." (Ex. C.)

13.    All documents (whether created before, after or during the reorganization, recapitalization and merger) discussing or analyzing Grace-Conn.'s viability or sufficiency of assets to satisfy liabilities and/or continue to conduct business after the reorganization.

14.    All documents (whether created before, after or during the reorganization, recapitalization and merger) discussing or analyzing Grace-Conn.'s viability or sufficiency of assets to satisfy liabilities and/or continue to conduct business after the reorganization, recapitalization and merger.

15.    All documents discussing or analyzing the sufficiency of Grace-Conn.'s assets to satisfy liabilities arising from the mining, manufacturing, fabricating, advertising, marketing, selling, distributing, transporting or installing of asbestos products.

16.    All documents discussing whether at the time of the reorganization. Grace-Conn. had sufficient assets to satisfy liabilities arising from the mining, manufacturing, fabricating, advertising, marketing, selling, distributing, transporting or installing of asbestos products.

17.    All documents supporting, discussing or contradicting the following statement on page 3 of Grace Specialty Chemical's 1997 10-K: "[a]t the date of this report ... New Grace has no assets." (Ex. A.)

18.    All documents comparing the value of assets transferred to Grace-Conn. during the reorganization with the value of assets transferred to Cryovac during the reorganization.

19.    All documents concerning the reorganization, including the reason or purpose for the reorganization.

20.    All documents comparing the value of assets transferred to Sealed Air from the Grace Companies as a result of the reorganization, recapitalization and merger with the market

value of those assets.

21. All documents comparing the value of assets transferred to Sealed Air from the Grace Companies with the value of these assets.

22. All documents concerning, analyzing or discussing the market value of Cryovac at the time of the reorganization.

23. All documents constituting, discussing or relating to reports or analyses of the value of Cryovac's "goodwill."

24. All documents pertaining to the 1998 loan of $1.2 billion taken out by Sealed Air and transferred to Grace-Conn., including the documents concerning the reason or purpose for the loan and transfer.

25. All documents discussing, relating to or analyzing the "fairness of the consideration" of the reorganization, recapitalization and merger as analyzed by Donaldson, Lufkin & Jenrette Securities Corporation and discussed on page 39 of Sealed Air's Proxy Statement. (Ex. D.)

26. All documents concerning, discussing and used in preparation of Sealed Air's Proxy Statement, including documents used in preparation of the section titled "Liabilities of New Grace, Fraudulent Transfer and Related Considerations."

27.    All documents discussing or relating to the section on page 40, n.18, of Sealed Air's 1998 10-K titled "Commitments and Contingencies" and the statement on page 41 of the same document titled "Contingent Liabilities Indemnified by New Grace." (Ex. C.)

28.    Each insurance policy which, for any time during the period 1963 through 2001, provided the Grace Companies with insurance coverage, whether primary, excess or reinsurance, for the Grace Companies' liability arising out of the reorganization, recapitalization and merger and arising out of the Grace Companies' mining, manufacturing, fabricating, advertising, marketing, selling, distributing, transporting or installing of Zonolite or other asbestos products.

29.    All documents which refer to or evidence the Grace Companies' risk retention, self-insurance or co-insurance at any time during the period of 1963 through 2001 for the Grace Companies' liability arising out of the reorganization, recapitalization and merger or arising out of the Grace Companies' mining, manufacturing, fabricating, advertising, marketing, selling, distributing, transporting or installing of Zonolite or other asbestos products.

30.    All documents related to any and all transactions that resulted in termination of coverage for the Grace Companies' liability arising out of the reorganization, recapitalization and merger or arising out of the Grace Companies' mining, manufacturing, fabricating, advertising, marketing, selling, distributing, transporting or installing of Zonolite or other asbestos products.

31.    All documents constituting or concerning any indemnity agreements, agreements to assume liability, agreements to assume the defense or joint defense agreements made by the Grace Companies, its insurers or any other entities relating to the reorganization, recapitalization and merger or arising out of the Grace Companies' mining, manufacturing, fabricating, advertising, marketing, selling, distributing, transporting or installing of Zonolite or other asbestos products.

32.    All documents upon which the Grace Companies relied in making the statement found on page F-10 of the Financial Supplement to Grace's 1999 10-K that "Grace has recorded an

accrual for all existing property damage cases for which sufficient information is available to from a reasonable estimate of such exposure" including all documents related to the estimate amount of such exposure. (Ex. B.)

33. All documents that discuss, concern or relate to the statement made on page F-12 of Grace's 1999 10-K that under certain divestiture agreements, "the Company has retained contingent obligations that could develop into situations where accruals for estimated costs of defense or loss would be recorded in a period subsequent to divestiture under generally accepted accounting principles," including all divestiture agreements. (Ex. B.)

34. All documents that form the basis for the Grace Companies' opinion, stated on page 10-13 of Grace's 1999 10-K, that it is probable that funds will be available to satisfy the asbestos-related claims pending and expected to be filed in the future. (Ex. B.)

35. All documents that form the basis for the statement on page 12 of Grace's 1999 10-K that the Grace Companies expects recoveries from insurance carriers of $371.4 million to be available to meet its asbestos-related liability. (Ex. B.)

36. All documents which refer, relate to or constitute contracts, settlements, releases, commutations or other agreements with the Grace Companies' primary or excess insurers which released any such insurer, in whole or in part, from its obligation or potential obligation to provide liability insurance coverage to the Grace Companies as identified in Request No. 28 above.

37. All documents which refer or relate to or constitute mitigation insurance or liability-sharing arrangements, including options to purchase such insurance or enter into such sharing arrangements, which may provide coverage, in whole or in part, for the Grace Companies' liability arising out of the reorganization, recapitalization or merger or arising out of the Grace Companies' mining, manufacturing, fabricating, advertising, marketing, selling distributing, transporting or installing Zonolite or other asbestos products.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re:                                          )
                                                )        MDL Docket No. 1376
ZONOLITE ATTIC INSULATION                       )
                                                )        The Honorable Patti B. Saris,
PRODUCTS LIABILITY LITIGATION                   )          Presiding
_____)
                                                )
THIS DOCUMENT RELATES TO:                       )
                                                )
ALL ACTIONS                                     )
_____)

### DEFENDANTS' FIRST SET OF MASTER REQUESTS FOR
### PRODUCTION OF DOCUMENTS DIRECTED TO PLAINTIFFS

Pursuant to Federal Rule of Civil Procedure 34 and Local Rule 34.1, request is made on

each plaintiff who has not previously responded to requests for production of documents in the

Zonolite Attic Insulation products liability litigation to produce the documents and other tangible

things described in each request made below, within thirty (30) days from the date of service of

these requests, at the offices of Casner & Edwards LLP, One Federal Street, Boston, MA 02110,

for inspection and copying during regular business hours at a mutually agreeable time.

THESE REQUESTS ARE CONTINUING IN NATURE PURSUANT TO FRCP 26(e), AND
DEFENDANTS DEMAND THAT ANY INFORMATION COMING INTO THE
POSSESSION OF THE PLAINTIFF OR PLAINTIFF'S COUNSEL THAT WOULD CHANGE
THE ANSWERS IN ANY WAY BE PROMPTLY FURNISHED TO DEFENDANTS'
COUNSEL, IN ANY EVENT NO LATER THAN THIRTY (30) DAYS AFTER RECEIPT OF
SUCH INFORMATION.

### INSTRUCTIONS

1. This First Set of Master Requests for Production of Documents Directed to Plaintiffs

shall be answered by each plaintiff who has not previously responded to requests for production

of documents in the Zonolite Attic Insulation products liability litigation.  These Requests shall

be deemed served on each plaintiff in any case later instituted in, removed to or transferred to

MDL 1376 (including cases transferred for pretrial purposes under 28 U.S.C. § 1407).

2. If you contend that the contents of any document requested to be produced for inspection and copying are protected from disclosure by virtue of a privilege, you shall, nevertheless, supply a description of the document in question which shall provide, with respect to each such writing as part of such description thereof: (1) Each privilege whereby you contend the contents of such writing are protected from disclosure; (2) Each and every fact upon which you rely to support your claim of privilege; (3) The type of writing (e.g., letter, memorandum, telegram, telefax, notes or memoranda of telephone conversations, etc.); (4) The date, author(s), recipient(s) and cc's of each such writing; and (5) The general subject matter of each such writing.

## DEFINITIONS

The definitions contained in Local Rule 26.5(c) are incorporated as though they are set forth fully herein. In addition, as used in these Requests for Production, the following terms have the following meanings:

1. The term "your building(s)" shall mean any and all buildings purchased, sold or owned by you or any entity in which you owned a majority or equivalent interest.

2. As used herein, the term "to abate" shall mean to remove, encapsulate, or enclose products that contain any amount of asbestos fiber, or to take any other action to reduce the alleged hazards from products that contain asbestos.

**REQUEST FOR PRODUCTION NO. 1.:**        All documents concerning Zonolite Attic Insulation or your exposure to Zonolite Attic Insulation.

**RESPONSE:**

2

**REQUEST FOR PRODUCTION NO. 2.:**       All documents concerning the purchase of

your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3.:**       All documents concerning any sale of your

building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4.:**       All documents concerning any due diligence

conducted in connection with the purchase or sale of your building(s), including, but not limited

to, any oral or written inquiries and responses, research, investigations, analyses, inspections,

engineering surveys, financial or environmental evaluations, or reports.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5.:**       All documents concerning title to your

building(s).

**RESPONSE:**

3

**REQUEST FOR PRODUCTION NO. 6.:**      All documents concerning any inspection of
your building(s) at or prior to the time of its purchase or sale.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7.:**      All reports of inspections made of your
building(s) at or prior to the time of its purchase or sale.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 8.:**      All documents concerning all repairs or
remediation undertaken as a result of inspections made in connection with the purchase or sale of
your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9.:**      All documents concerning testing or
inspection of your building(s) for the presence of asbestos, radon, lead, PCBs, or other
substances that have been alleged to be hazardous.

**RESPONSE:**

4

**REQUEST FOR PRODUCTION NO. 10.:**      All      documents,      including,      without limitation, all photographs, motion pictures, videotapes, slides, drawings, pictures, or other visual aids, which portray or pertain to the condition of the attic insulation in your building(s) at any time during or after installation or application.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11.:**      All documents concerning tenant leases for your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 12.:**      All  documents  concerning  warnings  or notices given to occupants of your building(s) regarding the presence of asbestos, radon, lead, PCBs, or other substances that have been alleged to be hazardous in your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13.:**      All    documents    concerning    warnings, notices, or instructions given to you or the occupants of your building(s) regarding the presence, disturbance, removal, containment, control, or abatement of Zonolite Attic Insulation in your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 14.:**      All documents concerning safety or health regulations or concerns related to your building(s), including but not limited to correspondence, literature, signs, or notices that were publicly posted, mailed, or otherwise distributed to the occupants of your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 15.:**      All documents concerning any efforts to inform, advise, warn, instruct, or otherwise communicate with your employees, tenants, or other persons using or occupying your building(s) regarding asbestos or its alleged hazards.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 16.:**     All documents concerning warnings or notices received by you regarding the presence of asbestos, radon, lead, PCBs, or other substances that have been alleged to be hazardous in your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17.:**     All documents or physical samples or materials which evidence, concerning the presence of products that contain any amount of asbestos fiber presently in your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 18.:**     All documents or physical samples or materials concerning the presence of products that contain any amount of asbestos fiber formerly in your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19.:**        All documents concerning any test or sample of air, bulk materials, dust, or fibers conducted in your building(s) or on material from your building(s), including, without limitation, the testing protocols employed in conducting and/or analyzing the results of such tests.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20.:**        All documents concerning each action you, or third parties on your behalf, have undertaken to assess or analyze the presence of products that contain any amount of asbestos fiber in your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 21.:**        All documents concerning the identity of all contractors who have performed work on your building(s).

**RESPONSE:**

8

**REQUEST FOR PRODUCTION NO. 22.:**     All documents concerning the identity of the manufacturer and the trade name of the attic insulation presently or formerly installed in your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 23.:**     All documents concerning the identification of Zonolite Attic Insulation installed in your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 24.:**     All documents concerning Zonolite Attic Insulation, including, but not limited to, advertisements, brochures, and promotional literature for Zonolite Attic Insulation, which you reviewed prior to your purchase of Zonolite Attic Insulation and/or prior to acquiring your building(s) in which Zonolite Attic Insulation had been installed.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 25.:**        All plans, blueprints, and specifications for

your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 26.:**        All documents concerning the purchase of

Zonolite Attic Insulation for installation in your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 27.:**        All documents concerning the installation of

Zonolite Attic Insulation in your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 28.:**        All documents concerning any specifications

given or made available by you, or anyone acting on your behalf, to the person(s) from whom the

attic insulation in your building(s) was purchased or by whom the attic insulation was installed in

your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 29.:**        All documents concerning any information you have obtained, either oral or written, about the alleged asbestos hazards of Zonolite Attic Insulation.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 30.:**        All documents concerning any information that has been prepared, transmitted, or communicated to others, either oral or written, about the alleged hazards of Zonolite Attic Insulation in your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 31.:**        All documents concerning any information you have obtained, either oral or written, concerning asbestos.

**RESPONSE:**

11

**REQUEST FOR PRODUCTION NO. 32.:**     All documents concerning any claim, allegation, report, complaint, or other source of information that any person has contracted, has claimed to have contracted, or may in the future contract any allegedly asbestos-related injury or disease by reason of that person's exposure to Zonolite Attic Insulation in your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 33.:**     All documents concerning medical examinations of your employees, tenants, or other persons using or occupying your building(s), including x-rays and pulmonary function tests, which relate to exposure to asbestos, or products or materials that contain any amount of asbestos fiber.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 34.:**     All documents concerning communications with any defendants at any time prior to the commencement of this action.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 35.:**    All documents concerning communications with your insurance carriers concerning the presence of products in your building(s) that contain any amount of asbestos fiber.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 36.:**    All insurance policies under which you have made a claim or may make a claim for any damages for which you seek recovery in this case and all applications, invoices, receipts, claims, reports, correspondence, or other communications made or received by you pursuant to or in connection with those insurance policies.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 37.:**    All documents concerning each action which you, or third parties on your behalf, have undertaken to contain, control, or abate the alleged hazard caused by the alleged presence of Zonolite Attic Insulation in your building(s), including documents related to the amount of money that you have expended with respect to each action.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 38.:**     All     documents     concerning     repair, maintenance, construction or renovation activities that can or have disturbed, displaced, impacted, dislodged, or otherwise affected the attic insulation installed in your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 39.:**     All documents concerning each future action which you expect to undertake, or which you expect third parties to undertake on your behalf, to contain, control or abate any alleged hazard caused by the alleged presence of Zonolite Attic Insulation in your building(s), including documents related to the amount of money which you expect to expend with respect to each action.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 40.:**     All documents concerning any citation or warning from the Environmental Protection Agency ("EPA") for any violation of the National Emissions Standards for Hazardous Pollutants ("NESHAPS"), 40 C.F.R. § 661.140 et seq., pertaining to asbestos in your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 41.:**    All documents concerning any citation or warning from any governmental entity for any violation of federal, state, or local regulations pertaining to asbestos other than NESHAPS concerning your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 42.:**    All documents concerning any demolition or renovation of your building(s) in which products that contain any amount of asbestos fiber had been installed or were believed to have been installed, including the bulk sampling of material disturbed during the demolition or renovation to ascertain the presence of asbestos and any communications with the EPA regarding the demolition or renovation.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 43.:**    All documents concerning communications with any local, state, or federal agency or governmental entity concerning the presence of asbestos in your building(s).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 44.:**     All documents reflecting the names and/or addresses of persons known or believed to be either members of the putative class or owners or occupants of homes in which Zonolite Attic Insulation has been installed.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 45.:**     All documents concerning any test or sample of air, bulk materials, dust, or fibers conducted in the home of any person other than plaintiff in which Zonolite Attic Insulation has been installed or on material from the home of any person other than plaintiff in which Zonolite Attic Insulation has been installed including, without limitation, the testing protocols employed in conducting and/or analyzing the results of such tests.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 46.:**    All documents concerning communications with persons known or believed to be members of the putative class or owners or occupants of homes in which Zonolite Attic Insulation has been installed.

**RESPONSE:**

Arlene Fickler
Lisa M. Salazar
Hoyle, Morris & Kerr LLP
One Liberty Place, Suite 4900
1650 Market Street
Philadelphia, PA 19103
(215) 981-5850

Robert A. Murphy
Casner & Edwards, LLP
One Federal Street
Boston, MA 02110
(617) 426-5900

James J. Restivo
Lawrence Flatley
Douglas Cameron
Reed Smith LLP
435 6th Avenue
Pittsburgh, PA 15219
(412) 288-3122

Attorneys for Defendants
W.R. Grace & Company, a Delaware Corporation,
and W.R. Grace & Company-Conn

Dated: March 13, 2001

17

## CERTIFICATE OF SERVICE

I, Lisa M. Salazar, hereby certify that on March 13, 2001, I caused to be served copies of the

foregoing Defendants' First Set Of Master Requests For Production Of Documents Directed

To Plaintiffs upon the following counsel by Federal Express overnight delivery:

Elizabeth J. Cabraser, Esq.
c/o Thomas M. Sobol, Esq.
Leiff, Cabraser, Heimann & Bernstein, LLP
214 Union Wharf
Boston, MA  02109-1216

James R. Carroll, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
One Beacon Street
Boston, MA  02108

David Pastor, Esq.
Gilman and Pastor, LLP
999 Broadway
Saugus, MA  01906

Edward J. Westbrook, Esq.
Ness Motley Loadholt Richardson & Poole
28 Bridgeside Blvd.
Mt. Pleasant, SC  29465

John J. Stoia, Jr., Esq.
Milberg Weiss Bershad Hynes & Lerach, LLP
600 West Broadway
1800 One America Plaza
San Diego, CA 92101-5050

Sheila Birnbaum, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, NY  10036

4.      The following documents were filed with the Judicial Panel on Multidistrict

Litigation in conjunction with consolidation of the cases in MDL 1376: W.R. Grace Motion to

Transfer to the District of Massachusetts for Coordinated Pretrial Proceedings Pursuant to 28

U.S.C. §1407; W.R. Grace Brief in Support of Motion to Transfer to the District of

Massachusetts for Coordinated Pretrial Proceedings Pursuant to 28 U.S.C. §1407 (including as

exhibits the Lindholm complaint, the Price complaint, the Hunter complaint, and the Rule 26

Initial Disclosure Statement of Defendants in Lindholm); Joinder of Sealed Air Corporation in

Motion to Transfer to the District of Massachusetts for Coordinated Pretrial Proceedings

Pursuant to 28 U.S.C. §1407;  Response of Plaintiffs Lindholm, Goldstein, and Szufnarowski to

Defendants' Motion to Transfer to the District Court of Massachusetts for Coordinated Pretrial

Proceedings Pursuant to 28 U.S.C. §1407 and Memorandum in Support; Motion of Plaintiffs

Price, Prebil, and Prebil for Transfer and Coordination or Consolidation under 28 U.S.C. §1407

and Memorandum in Support (including as exhibits the Lindholm complaint, the Price

complaint, the Hunter complaint); Memorandum in Response of Plaintiff Hunter to Defendants'

Motion to Transfer to District of Massachusetts for Coordinated Pretrial Proceedings and in

Support of a Transfer to Southern District of Illinois; and W.R. Grace Reply Brief in Support of

Motion to Transfer to the District of Massachusetts for Coordinated Pretrial Proceedings

Pursuant to 28 U.S.C. §1407.


5.      Attached hereto as Exhibit 2 are true and accurate copies of the following,

selected documents filed with the Judicial Panel on Multidistrict Litigation in conjunction with

consolidation of the cases in MDL 1376: W.R. Grace Motion to Transfer to the District of

Massachusetts for Coordinated Pretrial Proceedings Pursuant to 28 U.S.C. §1407; W.R. Grace

2

Brief in Support of Motion to Transfer to the District of Massachusetts for Coordinated Pretrial Proceedings Pursuant to 28 U.S.C. §1407; Joinder of Sealed Air Corporation in Motion to Transfer to the District of Massachusetts for Coordinated Pretrial Proceedings Pursuant to 28 U.S.C. §1407; Response of Plaintiffs Lindholm, Goldstein, and Szufnarowski to Defendants' Motion to Transfer to the District Court of Massachusetts for Coordinated Pretrial Proceedings Pursuant to 28 U.S.C. §1407 and Memorandum in Support; Motion of Plaintiffs Price, Prebil, and Prebil for Transfer and Coordination or Consolidation under 28 U.S.C. §1407 and Memorandum in Support; Memorandum in Response of Plaintiff Hunter to Defendants' Motion to Transfer to District of Massachusetts for Coordinated Pretrial Proceedings and in Support of a Transfer to Southern District of Illinois; and W.R. Grace Reply Brief in Support of Motion to Transfer to the District of Massachusetts for Coordinated Pretrial Proceedings Pursuant to 28 U.S.C. §1407.

6.    A Pretrial Case Management Order in MDL 1376 was filed on February 9, 2001. A true and accurate copy is attached hereto as Exhibit 3.

7.    The following documents were filed with the MDL court regarding the issue of class certification:  Price Plaintiffs' Motion for Class Certification, In re: Zonolite Attic Insulation Products Liability Litigation, MDL 1376, filed January 23, 2001 and Memorandum in Support of Price Plaintiffs' Motion for Class Certification, filed January 23, 2001 (including as exhibits a 51 Jurisdiction Summary of Negligence Standards, a 51 Jurisdiction Survey of Strict Liability Law, a 51 Jurisdiction Survey: Fraud by Nondisclosure (Restatement §551) and Fraudulent Concealment (Restatement §550), and a 51 Jurisdiction Survey of Punitive

3

Damages); Declaration of Attorney Richard S. Lewis, filed January 23, 2001 (with exhibits);

Affidavit of Thomas M. Sobol, filed January 23, 2001 (including as exhibits a Consolidated

Amended and Supplemental Class Action Complaint with Jury Demand; a Statement of Decision

in Howard v. Ford Motor Co., California Superior Court No. 763785-2; and a Notice of Class

Action Regarding Masonite Hardboard Siding in Naef v. Masonite Corp., Alabama Circuit Court

No. CV-94-4033); W.R. Grace Memorandum Concerning the Merits, filed January 29, 2001 with

Appendix of References (including Affidavit and Testimony of Richard J. Lee, Ph. D.,

Deposition of Ernest R. Crutcher, Declaration and Testimony of Dr. Morton Corn, Testimony of

William E. Hughson, M.D., and Affidavit of Dr. Bertram Price); Plaintiffs' Position Statement,

filed January 29, 2001; Grace Defendants' Brief in Opposition to Plaintiffs' Motion for Class

Certification and Notice (including Declaration of Robert A. Murphy and exhibits, and State Law

Variations Index), filed February 22, 2001; Defendant Sealed Air Corporation's Joinder in the

Grace Defendants' Brief in Opposition to Plaintiffs' Motion for Class Certification and Notice,

filed February 2, 2001; Plaintiffs' Reply Memorandum of Points and Authorities in Support of

Motion for Class Certification and Notice, filed March 26, 2001; Reply Declaration of Thomas

M. Sobol in Support of Motion for Class Certification and Notice, filed March 26, 2001

(including as exhibits a Department of Health and Human Services Preliminary Findings of

Medical Testing of Individuals Potentially Exposed to Asbestoform Minerals Associated with

Vermiculite in Libby Montana; a Draft Notice proposed by the Barbanti plaintiffs; EPA New

England Questions and Answers Regarding Vermiculite Insulation; the Order in United States v.

W.R. Grace & Co. et al., District of Montana No. CV-00-167-M-DWM granting EPA immediate

access to the Libby Montana mine; the National Institute for Occupational Safety and Health

("NIOSH") 1976 Revised Recommended Asbestos Standard; a March 1979 EPA Guidance

4

Document regarding asbestos-containing materials in schools; a 1980 NIOSH document
regarding workplace exposure to asbestos; a March 1983 EPA document regarding controlling
friable asbestos-containing materials in buildings; proposed EPA rules for friable asbestos-
containing materials in schools; a May 24, 1977 internal Grace memorandum regarding tremolite
in vermiculite; and an August 10, 2000 letter from Grace counsel to Robert M. Turkewitz);
Affidavit of John Prebil, filed March 26, 2001; and Affidavit of Paul Price, filed March 26, 2001.

8.    Attached hereto as Exhibit 4 are true and accurate copies of the following,
selected documents filed with the MDL court regarding the issue of class certification:  Price
Plaintiffs' Motion for Class Certification, In re: Zonolite Attic Insulation Products Liability
Litigation, MDL 1376, filed January 23, 2001 and Memorandum in Support of Price Plaintiffs'
Motion for Class Certification; W.R. Grace Memorandum Concerning the Merits, filed January
29, 2001 with Appendix of References; Plaintiffs' Position Statement, filed January 29, 2001;
Grace Defendants' Brief in Opposition to Plaintiffs' Motion for Class Certification and Notice,
filed February 22, 2001; Defendant Sealed Air Corporation's Joinder in the Grace Defendants'
Brief in Opposition to Plaintiffs' Motion for Class Certification and Notice, filed February 2,
2001; and Plaintiffs' Reply Memorandum of Points and Authorities in Support of Motion for
Class Certification and Notice, filed March 26, 2001

9.    The following discovery documents were filed with the MDL court:  Rule 26
Initial Disclosure Statement of Defendants W.R. Grace & Co.-Conn. and W.R. Grace & Co., In
re: Zonolite Attic Insulation Products Liability Litigation, MDL 1376, dated February 15, 2001;
Notice of Deposition of Defendant Sealed Air Corporation Pursuant to Federal Rule of Civil

5

Procedure 30(b)(6), dated February 21, 2001; Plaintiffs' First Request for Production of

Documents to Defendant Sealed Air Corporation, dated February 21, 2001; Plaintiffs' First Set

of Interrogatories to Defendant Sealed Air Corporation, dated February 21, 2001; Plaintiffs' First

Request for Production of Documents to Defendants W.R. Grace & Co.-Conn. and W.R. Grace

& Co., dated February 21, 2001; Notice of Deposition of Defendants W.R. Grace & Co.-Conn.

and W.R. Grace & Co. Pursuant to Federal Rule of Civil Procedure 30(b)(6), dated February 21,

2001; Plaintiffs' First Set of Interrogatories to Defendants W.R. Grace & Co.-Conn. and W.R.

Grace & Co., dated February 21, 2001; Notice of Deposition of Custodian of Defendants'

Records Pursuant to Fed. R. Civ. P. 30, dated March 9, 2001; Defendants' First Set of Master

Requests for Production of Documents Directed to Plaintiffs, dated March 13, 2001; Defendants'

First Set of Master Interrogatories Directed to Plaintiffs, dated March 13, 2001; Grace

Defendants' Motion for Protective Order and Request for Oral Argument, filed March 20, 2001;

Defendants' W.R. Grace & Co.-Conn. and W.R. Grace & Company's Memorandum of Law in

Support of their Motion for a Protective Order, filed March 20, 2001; Certification of Defendant

W.R. Grace & Co.-Conn.'s Responses to Plaintiff's First Set of Interrogatories, dated March 23,

2001; Defendant W.R. Grace & Co.-Conn.'s Responses to Plaintiff's First Request for

Production of Documents, dated March 26, 2001; Defendant W.R. Grace & Co.-Conn.'s

Responses to Plaintiff's First Set of Interrogatories, dated March 26, 2001; Plaintiffs' Emergency

Request for Hearing and Oral Argument on Defendants' Motion for a Protective Order, filed

March 28, 2001; Plaintiffs' Opposition to Defendants W.R. Grace & Co.-Conn.'s and W.R.

Grace & Company's Motion for a Protective Order, filed March 28, 2001; Declaration of

Timothy G. Blood in Support of Plaintiffs' Opposition to Defendants' W.R. Grace & Co.-

Conn.'s and W.R. Grace and Company's Motion for a Protective Order, filed March 28, 2001;

6

and Declaration of Hector Geribon in Support of Plaintiff's Opposition to Defendants' W.R.

Grace & Co.-Conn.'s and W.R. Grace & Company's Motion for a Protective Order, filed March

28, 2001 (including as exhibits a memorandum to F.E. Larkin from R.W. Samuels dated

September 12, 1985; Claudia H. Deutsch, *In $5 Billion Deal, Grace Will Sell Packaging*

*Business,* N.Y. Times, Aug. 15, 1977 at D1; Sabrina Jones, *Lawsuits Cloud Grace's Future; Past*

*Hounds High-Profile Chemical Firm*, Washington Post, March 8, 2001, at T05; Reuters,

*Company News: Grace Stock Plummets After Talk About Chapter 11*, N.Y. Times, Jan. 31, 2001,

at C4).

      10.    Attached as Exhibit 5 are true and accurate copies of the following, selected

discovery documents filed with the MDL court:  Rule 26 Initial Disclosure Statement of

Defendants W.R. Grace & Co.-Conn. and W.R. Grace & Co., dated February 15, 2001; Notice of

Deposition of Defendant Sealed Air Corporation Pursuant to Federal Rule of Civil Procedure

30(b)(6), dated February 21, 2001; Plaintiffs' First Request for Production of Documents to

Defendant Sealed Air Corporation, dated February 21, 2001; Plaintiffs' First Set of

Interrogatories to Defendant Sealed Air Corporation, dated February 21, 2001; Plaintiffs' First

Request for Production of Documents to Defendants W.R. Grace & Co.-Conn. and W.R. Grace

& Co., dated February 21, 2001; Notice of Deposition of Defendants W.R. Grace & Co.-Conn.

and W.R. Grace & Co. Pursuant to Federal Rule of Civil Procedure 30(b)(6), dated February 21,

2001; Plaintiffs' First Set of Interrogatories to Defendants W.R. Grace & Co.-Conn. and W.R.

Grace & Co., dated February 21, 2001; Notice of Deposition of Custodian of Defendants'

Records Pursuant to Fed. R. Civ. P. 30, dated March 9, 2001; Defendants' First Set of Master

Requests for Production of Documents Directed to Plaintiffs, dated March 13, 2001; Defendants'

First Set of Master Interrogatories Directed to Plaintiffs, dated March 13, 2001; Certification of

Defendant W.R. Grace & Co.-Conn.'s Responses to Plaintiff's First Set of Interrogatories, dated

March 23, 2001; Defendant W.R. Grace & Co.-Conn.'s Responses to Plaintiff's First Request for

Production of Documents, dated March 26, 2001; and Defendant W.R. Grace & Co.-Conn.'s

Responses to Plaintiff's First Set of Interrogatories, dated March 26, 2001.

FURTHER THE AFFIANT SAYETH NOT.

Thomas M. Sobol, Esq.

## CERTIFICATE OF SERVICE

I, William D. Sullivan, hereby certify that on April 25, 2001, I did serve the foregoing:

Affidavit of Attorney Thomas M. Sobol in Support of Motion for Relief from the Automatic Stay

upon the parties identified below via overnight delivery or hand delivery.

Laura Davis Jones, Esquire
Pachulski, Stang, Ziehl, Young & Jones
919 Market Street, Suite 1600
Wilmington, DE 19801
Fax: 302-652-4400

Scott L. Baena, Esquire
Bilzin,Sumberg,Dunn,Baena,Price&Axelrod
First Union Financial Center
200 South Biscayne Blvd, Suite 2500
Miami, FL 33131
Fax: 305-374-7593

James H.M. Sprayregen, Esquire
Kirkland & Ellis
200 East Randolph Drive
Chicago, Illinois 60601
Fax: 312-861-2200

Elihu Inselbuch, Esquire
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022
212-644-6755

Frank Perch, III, Esquire
Office of the United States Trustee
601 Walnut Street, Suite 950 West
Philadelphia, PA 19106
Fax: 302-573-6497

Lewis Kruger, Esquire
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982
212-806-6006

Under penalty of perjury, I declare that the foregoing is true and correct.

4/25/01
Date

William D. Sullivan

G:\Docs\CLIENT\220000\00001\misc\00075952.DOC

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

DEC - 7 2000

## DOCKET NO. 1376

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE ZONOLITE ATTIC INSULATION PRODUCTS LIABILITY LITIGATION

## BEFORE JOHN F. NANGLE, CHAIRMAN, LOUIS C. BECHTLE, JOHN F. KEENAN, WM. TERRELL HODGES, MOREY L. SEAR, BRUCE M. SELYA* AND JULIA SMITH GIBBONS, JUDGES OF THE PANEL

### TRANSFER ORDER

This litigation consists of the four actions listed on the attached Schedule A and pending in three districts as follows: two actions in the District of Massachusetts and one action each in the Southern District of Illinois and the District of Montana. Defendants W.R. Grace & Company-Conn and W.R. Grace & Co. (collectively, Grace) move the Panel, pursuant to 28 U.S.C. §1407, for centralization of the litigation in the District of Massachusetts. All responding parties agree on centralization but not necessarily on the suggested transferee district. Joining movants in favoring the District of Massachusetts are i) plaintiffs in the two Massachusetts actions, and ii) additional defendant Sealed Air Corporation. The Illinois plaintiff supports centralization in the Southern District of Illinois or, as a second choice, the District of Montana. The Montana plaintiffs express their amenability to selection of any of the three districts in which constituent actions are pending.

On the basis of the papers filed and the hearing held, the Panel finds that the actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the District of Massachusetts will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Each action is brought on behalf of a nationwide class and involves allegations of property damage caused by the presence of tremolite asbestos in Zonolite Attic Insulation marketed by Grace. Centralization under Section 1407 is thus necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with regard to class certification issues), and conserve the resources of the parties, their counsel and the judiciary.

Given the range of locations of parties and witnesses in this docket and the geographic dispersal of current and anticipated constituent actions, it is clear that a wide range of suitable transferee districts presents itself. In concluding that the District of Massachusetts is the appropriate forum for this docket, we note that i) the Massachusetts district is the preferred forum of all responding defendants and plaintiffs in two of the four actions; ii) as the situs of the headquarters of the Grace division which marketed the Zonolite insulation, the district is likely to be a source of substantial discovery of witnesses and documents; and iii) the district enjoys general caseload conditions that will permit the Panel to effect the Section 1407

---

*Judge Selya took no part in the decision of this matter.

assignment to a court with the present resources to devote the time to pretrial matters that this docket is likely to require.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the actions listed on the attached Schedule A and pending in districts other than the District of Massachusetts be, and the same hereby are, transferred to the District of Massachusetts and, with the consent of that court, assigned to the Honorable Patti B. Saris for coordinated or consolidated pretrial proceedings with the actions pending in that district and listed on Schedule A.

FOR THE PANEL:

John F. Nangle
Chairman

## Schedule A

### MDL-1376 -- In re Zonolite Attic Insulation Products Liability Litigation

#### Southern District of Illinois

*Jan Hunter v. W.R. Grace & Co., et al.*, C.A. No. 3:00-569

#### District of Massachusetts

*Edward M. Lindholm v. W.R. Grace & Co., et al.*, C.A. No. 1:00-10323
*Joel Goldstein, et al. v. W.R. Grace & Co., et al.*, C.A. No. 1:00-10873

#### District of Montana

*Paul Price, et al. v. W.R. Grace & Co., et al.*, C.A. No. 9:00-71

S. 17

RECEIVED

AUG 2 1 2000

LIEFF, CABRASER, HEIMANN & BERNSTEIN

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### MDL DOCKET NO. ___

### IN RE ZONOLITE ATTIC INSULATION LITIGATION

**Motion To Transfer To The District of Massachusetts
For Coordinated Pretrial Proceedings Pursuant To 28 U.S.C. § 1407**

W.R. Grace & Company (a Delaware corporation) ("Grace Delaware") and W.R.

Grace & Company-Conn. (a Connecticut corporation) ("Grace Conn.") move this panel for

transfer of Zonolite Attic Insulation Cases in which movants are named as defendants to the

United States District Court for the District of Massachusetts for coordinated pretrial proceedings

before the Honorable Patti B. Saris, and in support thereof aver as follows:

1.  Grace Delaware and Grace Conn. have recently been sued in four federal court

actions seeking damages and equitable relief arising from the presence of tremolite asbestos in

Zonolite Attic Insulation, allegedly sold by the defendants.  A schedule of the actions is attached

hereto as Exhibit A.

## Cases Pending in Different Districts

2.   The Zonolite Attic Insulation cases are pending in three different districts, two in the District of Massachusetts, one in the District of Montana, Missoula Division, and one in the Southern District of Illinois.[1]

3.   Each of the Zonolite Attic Insulation cases was filed as a class action complaint.

4.   While the class definitions alleged in the complaints vary slightly, the plaintiffs in each of the Zonolite Attic Insulation cases seeks to represent a nationwide class.

5.   The earliest-filed case, *Lindholm*, purports to be brought on behalf of a class of "all persons and entities in the United States who own residences or other buildings in which Zonolite Attic Insulation . . . was installed." (Lindholm/Goldstein amended complaint, ¶ 1) The *Lindholm* complaint was filed in the United States District Court for the District of Massachusetts on February 22, 2000; a substantially similar putative class action case, *Goldstein*, was filed on May 5, 2000, in the United States District Court for the District of Massachusetts. The two cases have now been consolidated, and a single amended complaint has been filed. A copy of the *Lindholm/Goldstein* amended complaint is attached hereto as Exhibit B.

6.   The next filed complaint, *Price*, alleges the following class definition: "All owners or occupiers of real property located in the United States in which Zonolite Attic Insulation has been installed." (Price complaint, ¶ 56). The *Price* complaint was filed in the United States

---

[1] The fifth action was filed on March 24, 2000, against the same defendants in the Superior Court, State of Washington, County of Spokane, alleging dangers from Zonolite Attic Insulation, and seeking to represent a class of owners and occupiers of real property in Washington in which Zonolite Attic Insulation has been installed. The sixth action was filed on August 2, 2000, against defendant W.R. Grace & Co.-Conn. in the Superior Court, State of Illinois, Madison County, alleging dangers from Zonolite Attic Insulation, and seeking to represent a class of owners and occupiers of real property in Illinois and Missouri in which Zonolite Attic Insulation has been installed.

District Court for the District of Montana, Missoula Division, on April 14, 2000. A copy of the *Price* complaint is attached hereto as Exhibit C.

7. The latest filed complaint, *Hunter*, seeks certification of a class of "[a]ll owners or occupiers of real property located in the United States in which Zonolite Attic Insulation has been installed." (Hunter complaint, ¶ 55) The *Hunter* complaint was filed on July 19, 2000, in the United States District Court for the Southern District of Illinois. A copy of the *Hunter* complaint is attached hereto as Exhibit D.

**Common Questions of Fact**

8. The four Zonolite Attic Insulation cases allege numerous common questions of fact, which warrant coordinated pretrial proceedings before a single district court judge. While Grace Conn. and Grace Delaware will challenge the predominance of common issues in the context of certification of the putative classes, the Zonolite Attic Insulation complaints allege the following common questions of fact:

      a. Whether Zonolite is dangerous (or not reasonably safe) (Lindholm/Goldstein amended complaint ¶ 56.a.; Price complaint ¶58.A.; Hunter complaint ¶ 57.A.);

      b. Whether defendants provided adequate warnings in connection with Zonolite (Lindholm/Goldstein amended complaint ¶ 56.m.; Price complaint ¶ 58.B.; Hunter complaint ¶ 57.B.);

      c. Whether Zonolite constitutes a present threat to health and safety (Lindholm/Goldstein amended complaint ¶ 56.n.; Price complaint ¶ 58.C.; Hunter complaint ¶ 57.C.);

      d. Whether Zonolite installed in buildings constitutes a present threat to the health and safety in that owners and occupants will be exposed to dangerous levels of

3

asbestos in the ordinary use and enjoyment of their properties

(Lindholm/Goldstein amended complaint ¶ 56.n.; Price complaint ¶ 58.D.; Hunter complaint ¶ 57.D.);

e.  Whether defendants concealed from class members and others information about the hazards of exposure to tremolite asbestos and Zonolite Attic Insulation (Lindholm/Goldstein amended complaint ¶ 56.k.; Price complaint ¶ 58.F.; Hunter complaint ¶ 57.F.);

f.  Whether defendants' public statements, advertisements, and representations concerning Zonolite were untrue and published with scienter or negligently (Lindholm/Goldstein amended complaint ¶¶ 56.f & .g; Price complaint ¶¶ 58.G.&H.; Hunter complaint ¶¶ 57.G.&H.);

g.  Whether class members have suffered harm to their property interests (Lindholm/Goldstein amended complaint ¶ 56.o.; Price complaint ¶ 58.K.; Hunter complaint ¶ 57.K.).

9.  In addition to the foregoing common issues of fact designated as such by the complaints, all of the complaints recite a common factual background including the following common factual allegations contained in each of the complaints:  the alleged tremolite asbestos contamination of Zonolite Attic Insulation and defendants' alleged knowledge thereof; defendants' alleged knowledge of "secret tests" performed by a predecessor owner of the vermiculite mine on its workers; defendants' alleged "secret animal tests" on the association between tremolite asbestos and mesothelioma; defendants' alleged decision not to warn of the alleged health risks of Zonolite Attic Insulation; and defendants' alleged decision to withhold a drafted press release regarding the discontinuance of Zonolite Attic Insulation.

4

(Lindholm/Goldstein  amended complaint ¶¶ 14-21; Price complaint ¶¶ 19-48; Hunter complaint ¶¶ 16-49).

## The Complexity of the Zonolite Attic Insulation Cases Warrant MDL Treatment Even Though There Are Not A Large Number of Cases At This Time

10. Although only four federal court Zonolite Attic Insulation cases are presently pending, these four cases purport to be nationwide class actions, brought on behalf of building owners with Zonolite Attic Insulation in all fifty states. Accordingly, the cases potentially are much more complex and larger in scope than individual federal court cases.

11. Moreover, the overlapping class definitions in the four national class actions present a risk of inconsistent adjudication on the issue of class certification, which could be avoided by consolidation and resolution of the issue of class certification by a single judge.

12. In addition, based on their many years of experience in the asbestos products liability litigation, Grace Conn. and Grace Delaware anticipate that many more "copy-cat" suits will be filed by plaintiffs' attorneys throughout the country.

13. The potential for settlement of the litigation is greater if the cases are consolidated for pretrial purposes.

14. The complexity of the Zonolite Attic Insulation cases is apparent from the causes of action asserted and the relief sought in the pending complaints.

15. Each of the complaints asserts causes of action for fraud, negligence, and strict liability; and each seeks relief in the form of class certification and compensatory and punitive damages.

16. In addition, the *Lindholm/Goldstein* amended complaint asserts breach of warranty, nuisance and unjust enrichment claims, violations of the fifty states' various laws prohibiting deceptive trade practices, and violations of the RICO, 18 U.S.C. § 1962.

5

17. Moreover, each of the complaints seek unique and complex relief in the form of the establishment of various court-supervised and defendant-funded programs including an identification program to verify the suspected presence of Zonolite in buildings, a program to issue warnings and other information to building owners and others who work in them, a research and education trust, and a remediation and containment program.

**Transfer to the District of Massachusetts Will Be Convenient for the Parties and Witnesses**

18. Two of the four Zonolite Attic Insulation cases are presently venued in the District of Massachusetts. Accordingly, transfer of all cases for coordination before a single judge in the District of Massachusetts will be convenient for at least half of the named plaintiffs and the defendants.

19. Moreover, because these cases purport to be nationwide class actions, seeking to represent building owners in all fifty states, the situs of the litigation is not critical.

20. Cambridge, Massachusetts is the headquarters of the Grace Conn. Construction Products Division. Accordingly, many potential witnesses and approximately 950 boxes of original documents relating to the manufacture and sale of vermiculite products, including attic insulation, are located in Cambridge, Massachusetts. (See Rule 26 Initial Disclosure Statement of Defendants W.R. Grace & Co.-Conn. and W.R. Grace & Co. filed in the Lindholm/Goldstein action, attached hereto as Exhibit E).

21. Grace-Conn. and Grace-Delaware have initially identified 9 witnesses located in Massachusetts in its initial disclosure filed in the *Lindholm/Goldstein* action. (Exhibit E).

22. In addition, the majority of the defendants' documents are located in Massachusetts. In addition to the 950 boxes of documents located in Cambridge, Massachusetts, 400 boxes of original documents relating to the manufacture and sale of commercial asbestos-containing

6

products are stored in a repository at Winthrop Square in Boston. An additional 54 boxes of documents that were formerly stored in Libby, Montana containing personnel records and documents regarding the operation of the Libby, Montana mine and mill are housed at Winthrop Square. (Id.).

23. The remainder of Grace's original documents regarding the operation of its former mine and mill in Libby, Montana, approximately 1000 boxes, including sales records for Libby vermiculite and other Zonolite products, are not stored in Montana. Rather, Grace's counsel in Denver and Boulder, Colorado maintains those documents. (See id.).

24. The only connection of Montana to the Zonolite Attic Insulation cases is that Montana is the location of the former Libby, Montana mine and mill for the vermiculite used in the product. By contrast, Grace processed and distributed Zonolite Attic Insulation from two plants in Massachusetts and two plants in Illinois.

## The Discovery and Case Management Status of the Lindholm/Goldstein Action Favors Transfer to the District of Massachusetts

25. The *Lindholm/Goldstein* case is the most advanced procedurally of the four Zonolite Attic Insulation cases. In *Lindholm/Goldstein*, unlike *Price* or *Hunter*, Grace Conn. and Grace Delaware have filed their Rule 26 Initial Disclosure Statement, as has the plaintiff. Discovery has commenced in *Lindholm/Goldstein*, but not in *Price* or *Hunter*. The plaintiff has served Grace Conn. and Grace Delaware with interrogatories, requests for production of documents, and a Rule 30(b)(6) deposition notice. Indeed, plaintiffs' counsel in *Lindholm/Goldstein* spent four days at Grace's documents depository in Boston in June 2000. By contrast, in *Hunter,* no discovery has been taken; and in *Price*, plaintiff's counsel, who are also plaintiff's counsel in the state court action in Washington, has not commenced any case specific discovery.

7

26. Judge Saris, to whom the consolidated *Lindholm* and *Goldstein* actions have been assigned, has held a scheduling conference in *Lindholm/Goldstein*, which was attended by one of plaintiffs' counsel in *Price*, and has scheduled a second conference in the consolidated cases for early September. The parties have submitted a Joint Statement and Proposed Pretrial Scheduling Order in *Lindholm/Goldstein.*

27. Therefore, transfer of all four Zonolite Attic Insulation cases to Judge Saris, who has had the opportunity to gain some familiarity with the litigation, would promote the just and efficient conduct of the litigation.

WHEREFORE, W.R. Grace & Company and W.R. Grace & Company-Conn. respectfully request that this Panel transfer the Zonolite Attic Insulation Cases to the United States District Court for the District of Massachusetts for coordinated pretrial proceedings before Judge Saris.

Respectfully submitted,

*Arlene Fickler*

Lawrence T. Hoyle, Jr.
Arlene Fickler
Lisa M. Salazar
R. David Walk, Jr.
Hoyle, Morris & Kerr LLP
1650 Market Street - Suite 4900
Philadelphia, PA 19103
(215) 981-5700

Dated: August 17, 2000

Attorneys for W.R. Grace & Company (a Delaware corporation) and W.R. Grace & Company-Conn. (a Connecticut corporation)

8

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August, 2000, I caused a true and correct

copy of the foregoing Motion to Transfer to the District of Massachusetts for Coordinated

Pretrial Proceedings Pursuant to 28 U.S.C. § 1407 and Brief and Exhibits in support thereof, to

be served by U.S. Mail postage pre-paid addressed as follows:

Jon L. Heberling
Roger M. Sullivan
Allan M. McGarvey
McGARVEY, HEBERLING, SULLIVAN &
McGARVEY, P.C.
745 South Main
Kalispell, MT  59901

Darrell W. Scott
LUKINS & ANNIS, P.S.
1600 Washington Trust Financial Center
717 W. Sprague Ave.
Spokane, WA  99201-0466

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West, 30th Floor
275 Battery Street
San Francisco, CA  94111

Edward J. Westbrook
NESS MOTLEY LOADHOLT RICHARDSON
& POOLE
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

Steven J. Toll
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
999 Third Avenue, Suite 3600
Seattle, WA  98104

Richard S. Lewis
COHEN, MILSTEIN, HAUSFELD & TOLL
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C. 20005-3934

Attorneys for plaintiff in
Price v. W.R. Grace & Co.


Sam E. Haddon
Steven C. Haddon
BOONE, KARLBERG & HADDON P.C.
300 Central Square
201 West Main
P.O. Box 9199
Missoula, MT 59807-9199

Sheila L. Birnbaum
Bert L. Wolff
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036

Attorneys for defendant
Sealed Air Corporation in
Price v. W.R. Grace & Co.


Gary L. Graham
GARLINGTON, LOHN & ROBINSON, PLLP
199 W. Pine, P.O. Box 7909
Missoula, MT 59807-7909

Attorneys for defendants
W.R. Grace & Co. and
W.R. Grace & Co.-Conn. in
Price v. W.R. Grace & Co.

Kenneth G. Gilman
David Pastor
Edward L. Manchur
GILMAN AND PASTOR, LLP
One Boston Place, 28th fl.
Boston, MA  02108

Attorneys for Individual and Representative
Plaintiff, Edward M. Lindholm, in
Lindholm v. W.R. Grace & Co.


Mark S. Williams
BORRELLI, HUTTON & WILLIAMS, P.A.
(A Professional Corporation)
376 Trapelo Road
Belmont, MA  02478

Attorneys for Individual and Representative
Plaintiffs, Joel Goldstein and John J. Szufnarowski,
in Lindholm v. W.R. Grace & Co.


Robert A. Murphy
CASNER & EDWARDS LLP
One Federal Street
Boston, MA 02110

Attorneys for defendants
W.R. Grace & Co. and
W.R. Grace & Co.-Conn.
in Lindholm v. W.R. Grace & Co.


Mark C. Goldenberg
HOPKINS GOLDENBERG, P.C.
Elizabeth V. Heller
2132 Pontoon Road
Granite City, IL  62040

John J. Stoia
MILBERG WEISS BERSHAD
 HYNES & LERACH LLP
600 West Broadway
1800 One America Plaza
San Diego, CA  92101-3356

Christopher A. Seeger
SEEGER WEISS LLP
One William Street
New York, New York  10004

Attorneys for Plaintiffs in
Hunter v. W.R. Grace & Company


Lou Aleksich, Jr., Clerk
United States District Court for the
 District of Montana, Missoula Division
Post Office Bldg.
P.O. Box 8537 (59807-8537)
Missoula, MT  59801

Norbert G. Jaworski, Clerk
United States District Court for the
 Southern District of Illinois
P.O. Box 249 (62202)
East St. Louis, IL  62201

Tony Anastas, Clerk
United States District Court for the
 District of Massachusetts
U.S. Courthouse
1 Courthouse Way
Boston, MA  02210

R. David Walk, Jr.

**RECEIVED**

AUG 2 1 2000

LIEFF, CABRASER, HEIMANN & BERNSTEIN

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### MDL DOCKET NO. ___

### IN RE ZONOLITE ATTIC INSULATION LITIGATION

### Brief In Support Of Motion To Transfer To The District of Massachusetts For Coordinated Pretrial Proceedings Pursuant To 28 U.S.C. § 1407

W.R. Grace & Company (a Delaware corporation) ("Grace Delaware") and W.R. Grace & Company-Conn. (a Connecticut corporation) ("Grace Conn.") submit this brief in support of their motion to transfer the Zonolite Attic Insulation Cases in which movants are named as defendants to the United States District Court for the District of Massachusetts for coordinated pretrial proceedings before the Honorable Patti B. Saris.

### FACTUAL BACKGROUND

Grace Delaware and Grace Conn. were recently sued in six putative class actions -- four in federal court and two in state court -- complaining of the presence of tremolite asbestos in Zonolite Attic Insulation allegedly mined, manufactured, and sold by the defendants. Zonolite

Attic Insulation is a vermiculite product that was utilized primarily in private residences as an insulating product. The vermiculite used in Zonolite from 1963 to 1984 was mined and milled by Grace Conn. at a vermiculite mine in Libby, Montana. Vermiculite is *not* a form of asbestos. It is a mineral that has been used for more than 75 years in numerous products. When vermiculite was mined in Libby, Montana, a small amount of asbestiform mineral known as tremolite was among the materials excavated with the vermiculite. Grace Conn. acted reasonably and diligently to remove that contaminant during processing of the vermiculite ore at Libby and during expansion of the vermiculite at expanding plants. Grace's efforts in this regard were so successful that Zonolite Attic Insulation does not meet the definition of an asbestos-containing product in various government regulations. See, e.g., 40 C.F.R. §§ 61.141 and 763.83. Nonetheless, in the wake of recent publicity concerning environmental remediation of the asbestos at Libby, six class action lawsuits have been filed against Grace Conn. and its parent Grace Delaware, asserting that Zonolite is a hazardous product warranting remediation.

Four of the actions were filed in federal district courts: two in the United States District Court for the District of Massachusetts, one in the United States District Court for the District of Montana, Missoula Division, and one in the United States District Court for the Southern District of Illinois.[1] Each of the named plaintiffs in the four actions seeks to represent a nearly identical national class of building owners and occupants. Because of the complexity of the matters and the potential for inconsistent pretrial rulings, especially on class certification, centralization of the actions and transfer of the cases to the District of Massachusetts under 28 U.S.C. § 1407 will promote the just and efficient conduct of the actions.

---

[1] The fifth action was filed on March 24, 2000, against the same defendants in the Superior Court, State of Washington, County of Spokane, alleging dangers from Zonolite Attic Insulation, and seeking to represent a class of owners and occupiers of real property in Washington in which Zonolite Attic Insulation has been installed. The sixth action was filed on August 2, 2000, against defendant W.R. Grace & Co.-Conn. in the Superior Court, State of Illinois, Madison County, alleging dangers from Zonolite Attic Insulation, and seeking to represent a class of owners and occupiers of real property in Illinois and Missouri in which Zonolite Attic Insulation has been installed.

2

## ARGUMENT

I.    **Coordinated Pretrial Proceedings In The Four National Class Actions Will Promote The Just And Efficient Conduct Of the Cases.**

While the class definitions alleged in the four complaints filed in federal court vary slightly, each of the Zonolite Attic Insulation cases purports to be brought on behalf of a nationwide class of persons owning or occupying property containing Zonolite Attic Insulation sold by Grace Conn. and/or Grace Delaware. The first case, *Lindholm*, was filed in the United States District Court for the District of Massachusetts on February 22, 2000, and was subsequently consolidated with a similar putative class action case, the *Goldstein* case, which was filed in the same District Court on May 5, 2000. The *Lindholm/Goldstein* complaint, as recently amended, alleges that it purports to be brought on behalf of a class of "all persons and entities in the United States who own residences or other buildings in which Zonolite Attic Insulation . . . was installed." (Lindholm/Goldstein amended complaint, ¶ 1).[2] The next filed complaint, *Price*, filed in the United States District Court for the District of Montana, Missoula Division, on April 14, 2000, asserts the following class definition: "All owners or occupiers of real property located in the United States in which Zonolite Attic Insulation has been installed." (Price complaint, ¶ 56). The latest filed complaint, *Hunter*, filed in the United States District Court for the Southern District of Illinois on July 19, 2000, seeks certification of a class of "[a]ll owners or occupiers of real property located in the United States in which Zonolite Attic Insulation has been installed." (Hunter complaint, ¶ 55).

Normally the pendency of only two or three related actions is viewed by the Panel as too minimal in number to warrant MDL treatment where the common questions involved are not sufficiently complex. See In re US Airways, Inc., Employment Practices Litigation, Docket No. 1302, 2000 U.S. Dist. LEXIS 1227, at *2 (JPML Feb. 4, 2000); In re North Star Steel Antitrust Litigation, Docket No. 1223, 1998 U.S. Dist. LEXIS 4491, at *2 (JPML April 3, 1998);

---

[2] Copies of the complaints filed in each action for which movants seek MDL treatment are exhibits to the motion accompanying this brief.

3

In re Boating Accident Near Cozumel, Mexico, On May 24, 1996, Docket No. 1294, 1999 U.S. Dist. LEXIS 15761, at *2 (JPML Oct. 5, 1999).

The Panel favors transfer, however, where the two or three cases present overlapping national class actions. That factor alone provides the level of complexity to the cases that has led the Panel to conclude that transfer is warranted to promote the just and efficient conduct of the actions. In re LifeUSA Holdings, Inc., Annuity Contracts Sales Practices Litigation (No. II), Docket No. 1273, 1999 U.S. Dist. LEXIS 4918, at *2 (JPML April 7, 1999) (two actions brought as class actions on behalf of overlapping classes of purchasers of annuities; "Centralization under Section 1407 will eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to class certification issues), and conserve the resources of the parties, their counsel and the judiciary."); In re Methionine Antitrust Litigation, Docket No. 1311, 1999 U.S. Dist. LEXIS 19206, at *4 (JPML Dec. 8, 1999) (five antitrust class actions transferred where plaintiffs in all actions seek to represent the same putative class of Methionine purchasers, although with slight variations in the class periods); In re The Northwestern Mutual Life Insurance Company Sales Practices Litigation, Docket No. 1213, 1998 U.S. Dist. LEXIS 5495, at *2 (JPML April 16, 1998) (two actions brought as class actions on behalf of overlapping nationwide classes of purchasers of Northwestern policies transferred to prevent inconsistent pretrial rulings, especially with respect to class certification issues); In re The Hartford Sales Practices Litigation, Docket No. 1204, 1997 U.S. Dist. LEXIS 19671, at *2 (JPML Dec. 8, 1997) (two actions brought as class actions on behalf of substantially the same class of purchasers of policies transferred to prevent inconsistent pretrial rulings, especially with respect to class certification issues).

The overlap among the putative national classes of owners and occupiers of buildings in which Zonolite has been installed warrants consolidation of the actions for pretrial purposes by the Panel. The potential for inconsistent rulings by the Massachusetts, Montana and Illinois federal courts on the significant question of class certification could be avoided by having a single judge in a single transferee district decide that question. Moreover, the class

4