## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

**ORIGINAL**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| W. R. GRACE & CO., <u>et al.</u>[1] | ) | **Case No. 01-01139 (JJF)** |
| | ) | |
| | ) | |
| Debtors. | ) | **Jointly Administered** |
| | | **Objection Deadline: May 21, 2001** |
| | | **at 4:00 p.m.** |
| | | **Hearing Date: To be determined.** |

### NOTICE OF MOTION OF OFFICIAL UNSECURED CREDITORS' COMMITTEE FOR RECONSIDERATION AND AMENDMENT OF THE FIRST DAY ORDER AUTHORIZING THE DEBTORS TO MAKE CERTAIN <u>PREPETITION EMPLOYEE PAYMENTS AND FUND CERTAIN TRUSTS</u>

The Official Committee of Unsecured Creditors (the "Committee") appointed in the Chapter 11 cases of W.R. Grace & Co. et al. ("Grace") and its sixty-one subsidiaries and affiliates have filed a **Motion of Official Unsecured Creditors' Committee for Reconsideration and Amendment of the First Day Order Authorizing the Debtors to Make Certain Prepetition Employee Payments and Fund Certain Trusts ("Motion").**

---

[1]     The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc.,  Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

You are required to file a response to the attached **Motion** on or before **May 21, 2001 at 4:00 p.m.**

At the same time, you must also serve a copy of the response upon Movant's undersigned attorneys.

**A HEARING ON THE MOTION WILL BE HELD BEFORE THE HONORABLE JOSEPH J. FARNAN, JR., ON A DATE TO BE DETERMINED.**

**IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE APPLICATION WITHOUT FURTHER NOTICE OR HEARING.**

Dated:  May 2, 2001

STROOCK & STROOCK & LAVAN LLP
Lewis Kruger, Esq.
Robert A. Raskin, Esq.
Arlene G. Krieger, Esq.
180 Maiden Lane
New York, New York  10038-4982
Telephone:    (212) 806-5400
Facsimile:    (212) 806-6006

- and –

Michael R. Lastowski, Esquire (DE I.D. No. 3892)
William S. Katchen, Esquire
DUANE, MORRIS & HECKSCHER, LLP
1100 N. Market Street, Suite 1200
Wilmington, DE 19801-1246
Telephone:    (302)-657-4942
Facsimile:    (302)-657-4901
Email:        mlastowski@duanemorris.com

Proposed Co-Counsel for the Official
Committee of Unsecured Creditors

WLM146094v1

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W. R. GRACE & CO., <u>et al.</u>**[1] | ) | **Case No. 01-01139 (JJF)** |
| | ) | |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |
| | | **Objection Deadline: May 21, 2001 at** |
| | | **4:00 p.m.** |
| | | **Hearing Date: To be determined.** |

## MOTION OF OFFICIAL UNSECURED CREDITORS' COMMITTEE FOR RECONSIDERATION AND AMENDMENT OF THE FIRST DAY ORDER AUTHORIZING THE DEBTORS TO MAKE CERTAIN PREPETITION EMPLOYEE PAYMENTS AND FUND CERTAIN TRUSTS

The Official Committee of Unsecured Creditors (the "Creditors' Committee") of the

above captioned debtors and debtors in possession (the "Debtors"), by its proposed counsel,[2]

---

[1]     The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA  Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

[2]     Stroock & Stroock & Lavan LLP ("Stroock") was selected as counsel to the Creditors' Committee at its organizational meeting on April 12, 2001.  Applications to this Court for approval of the retention of Stroock and Duane, Morris and Heckscher LLP, as local counsel to the Creditors' Committee, have or will be submitted to the Court.

hereby submits this motion for reconsideration and amendment (the "Reconsideration Motion")

of the Order: (a) Authorizing, But Not Requiring, the Debtors to Pay Certain Prepetition (i)

Wages, Salaries, Incentive Pay, Bonus Plans and other Compensation and Amounts Withheld

From Such Compensation, (ii) Employee Medical, Pension and Similar Benefits, (iii) Employee

Severance Pay, (iv) Workers' Compensation Benefits, (v) Amounts Relating to Retiree Health

Benefits and (vi) Reimbursable Employee Expenses, (b) Authorizing and Approving Certain Key

Employee Retention Programs, on an Interim Basis, and (c) Authorizing Applicable Banks and

Other Financial Institutions to Receive, Process, Honor and Pay All Checks Presented for

Payment and to Honor All Electronic Payment Requests Made By the Debtors Relating to the

Foregoing (the "Benefits Order") entered by the Court on April 2, 2001, the first day of the

Debtors' Chapter 11 cases (the "Petition Date"), pursuant to Local Bankruptcy Rule 9013-2(e),

Federal Rules of Civil Procedure 60(b) and Rule 9024 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), to the extent such Order authorized the Debtors to (i) pay

former or terminated employees, executives and directors nonqualified pension plan benefits,

and (ii) fund certain trusts with assets to pay nonqualified benefit plans.  In support hereof the

Creditors' Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.     The Benefits Order was issued and entered in response to the Debtors' motion

seeking such relief (the "Benefits Motion"), also submitted to the Court on the Petition Date.  By

the Benefits Motion, the Debtors sought authorization to continue to make a wide range of

prepetition and postpetition employee compensation and benefit-related payments to their

current, active employees ("Current Employees") in the ordinary course of business.  The

Benefits Motion also sought authorization for the Debtors to continue to make certain prepetition

-2-

payments to their former and retired directors, executives and employees and their beneficiaries (the "Former Employees") under various benefit programs, including five different nonqualified pension plans and arrangements ("Nonqualified Benefits") and to fund two "Rabbi Trusts" ("Rabbi Trusts") on the occurrence of a change of control with respect to the Debtors' stock. While the Creditors' Committee is not objecting to the authorization granted to pay prepetition salaries, wages, vacation and other such benefits to their Current Employees which may be considered customary, the Creditors' Committee objects to the authorization granted by the Court in the first day Benefits Order to pay Nonqualified Benefits to Former Employees and to fund the Rabbi Trusts which are not customary.

2.      As discussed more fully below, the Nonqualified Benefits for Former Employees, which the Debtors report aggregate to the amount of approximately $7.5 million for the 2001 calendar year alone[3], differ dramatically in character from the other obligations included in the category defined as Employee Obligations in the Benefits Motion, and are not entitled to priority claim treatment except for perhaps a de minimis amount which may fall within the ambit of Section 507(a)(4) of the Bankruptcy Code.[4]

3.      Further, the Creditors' Committee submits that the Debtors have not established that the continued payment of Nonqualified Benefits to Former Employees is critical to the Debtors' reorganization so as to warrant application of the "necessity of payment doctrine" to

---

[3]      While there may be some variation from year to year, it is likely that at least such amount will be payable annually in 2002, 2003 and in the foreseeable years going forward, as more Former Employees come into pay status.

[4]      Such priority claim status would only come about in the event now Former Employees were employed by the Debtors during the 180 day period prior to the Petition Date, and were terminated or retired just prior to the Petition Date. Any benefits earned by a now Former Employee under those circumstances could only be negligible in amount. In addition, neither Sections 507(a)(3) nor 1114(e) of the Bankruptcy Code are applicable to the Nonqualified Benefits. Therefore, such sections cannot provide support for the priority treatment of such Benefits to Former Employees ahead of general unsecured creditors.

-3-

justify the priority payment of what are merely general unsecured claims held by Former

Employees against the Debtors' estates. The Benefits Motion contains only conclusary

statements that performing their obligations under retirement programs is "essential to

maintaining" employee morale and that any disruption would call into question the Debtors'

commitment to their employees and retirees. The morale of Current Employees may justify the

payment of prepetition benefits to Current Employees who retire or are terminated after the

Petition Date, but it cannot justify payment of such prepetition benefits to Former Employees

outside of the Bankruptcy Code's priority scheme and ahead of general unsecured creditors.

4.      The Creditors' Committee was not organized on the Petition Date and, therefore,

did not have notice of the Benefits Motion and an opportunity to consider and then object to the

totality of the relief sought in such Motion before the Court's entry of the Benefits Order.

5.      Local Bankruptcy Rule 9013-2(e) provides the Creditors' Committee with a

thirty-day period from entry of an order granting relief sought in a first day motion to file a

motion seeking such order's reconsideration. See Local Rules, United States Bankruptcy Court

for the District of Delaware, Rule 9013-2(e). The Rule clearly contemplates that orders may be

entered by the Court on the first day of a chapter 11 case which, on review, may be found to have

been improvidently entered and require amendment. Such is the instant situation. In

reconsidering the Benefits Order, the Rule expressly provides that the Debtors retain the burden

of proof with respect to the appropriateness of the Order. See id.

## JURISDICTION

6.      This Court has jurisdiction over the Reconsideration Motion pursuant to 28

U.S.C. §§ 157 and 1334. By Order of the District Court (Robinson, C.J.) dated April 9, 2001,

-4-

the reference of these Chapter 11 cases was withdrawn from the Bankruptcy Court in its entirety

pursuant to 28 U.S.C.§ 157(a). The statutory predicates for the relief sought herein are Local

Rule 9013-2(e), Bankruptcy Rules 9024, and Federal Rule of Civil Procedure 60(b).

## BACKGROUND

7.      On the Petition Date, the Debtors filed voluntary petitions for reorganization

under chapter 11 of the Bankruptcy Code and have continued in the management and operation

of their businesses and property pursuant to §§ 1107 and 1108 of the Bankruptcy Code. Pursuant

to an order of the Court, the Debtors' Chapter 11 cases have been procedurally consolidated and

are being jointly administered.

8.      Along with their petitions for relief, the Debtors filed the Benefits Motion

requesting authorization to pay their Current Employees, Former Employees, independent

contractors and current directors, as applicable, in the Debtors' discretion, prepetition employee-

related obligations including (i) compensation consisting of, among others, wages, salaries,

incentive pay, bonuses, vacation, and holiday pay, and related amounts deducted therefrom for

taxes, contributions and payments to third parties, (ii) medical, life insurance, disability

insurance, pensions and other similar benefits, (iii) severance pay, (iv) workers' compensation

benefits, (v) retiree health and life insurance and "all other employee benefits that the Debtors

pay in the ordinary course" (see paragraph 6 of the Benefits Motion) (collectively defined in the

Benefits Motion as "Employee Obligations"), and (vi) reimbursable employee expenses. The

Benefits Order authorized all aspects of the relief sought in the Benefits Motion, with the

exception of that portion of the Benefits Motion seeking approval for five (5) identified

employee retention programs (the key employee retention programs) (see paragraphs 80-85 of

-5-

the Benefits Motion), which was only approved on an interim basis.[5]  As requested by the

Debtors, the Benefits Order authorizes but does not direct the Debtors to pay any of the

employee benefits the Debtors generally pay in the ordinary course of their business.

9.      On April 12, 2001, the United States Trustee formed the Creditors' Committee

consisting of the following members: J.P. Morgan Chase & Co., ABN AMRO Bank N.V., Bank

of America, N.A., The Bank of New York, as indenture trustee, Bankers Trust Company, as

indenture trustee, First Union National Bank, Sealed Air Corporation, Wachovia Bank N. A., and

Zhagrus Environmental Inc.

10.     The United States Trustee also appointed two separate official committees to

represent the interests of claimants asserting asbestos-related personal injury claims and

asbestos–related property damage claims against the Debtors (collectively, the "Asbestos Claim

Committees").

11.     Since the appointment of the Creditors' Committee, the Creditors' Committee

through its professionals has engaged the Debtors and their professionals in a number of

conversations and has obtained copies of the documentation governing the terms of the

Nonqualified Benefit programs which are the subject of this Reconsideration Motion, as well as

documentation governing the terms of certain of the Debtors' other employee benefit programs.

## DESCRIPTION OF THE NONQUALIFIED BENEFIT PLANS

12.     The Benefits Order authorizes the Debtors to make payments under five

nonqualified pension programs described in paragraphs 13 through 18, below, to Former

---

[5]      The Debtors have agreed to adjourn for a 30 day period the Creditors' Committee's time to object to the
portion of the Benefits Motion seeking final approval of the key employee retention programs.

-6-

Employees. The nonqualified pension benefits provided under the Debtors' plans and arrangements are not subject to the funding and trust requirements of the Employee Retirement Income Security Act of 1974, as amended. Thus, unlike benefits from qualified pension plans that are paid from separate funded trusts (which qualified pension payments are continuing and are not challenged by this Reconsideration Motion), nonqualified benefits are paid from the Debtors' current assets. It is essential to the tax deferral afforded to such vested nonqualified benefits that the benefits remain assets of the employer until distributed to a former employee. Thus, by their very nature, nonqualified benefits remain subject to the risk that the employer may become insolvent. It is also an essential feature of such programs that in the case of an employer's insolvency, the former employee would have the status of an unsecured creditor with a claim for the value of his or her unpaid benefits.

## Supplemental Executive Retirement Plan

13.     The Supplemental Executive Retirement Plan (the "SERP") provides excess benefits to approximately 250 inactive or retired employees whose pensions under the Debtors' qualified defined benefit plans  (i) are restricted by the limitations of the Internal Revenue Code of 1986, as amended ("IRC") or (ii) are impacted by the executive's voluntary decision to defer compensation during his or her employment. The SERP provides each covered executive with a payment equal to the difference between (A) the pension that would have been payable under the Debtors' qualified defined benefit pension plans (i) without consideration of the limitation on covered compensation for pension purposes under IRC section 401(a)(17) ($170,000 for 2001), (ii) without consideration of the limitation on defined benefit pensions under IRC section 415 ($140,000 for 2001) and (iii) with the inclusion of amounts of deferred compensation which are not includable in compensation for purposes of the calculation of pension payments under

-7-

qualified pension plans, and (B) the amount that the executive is actually entitled to receive under the provisions of the Debtors' qualified defined benefit pension plans. In the absence of an order of this Court vacating the authority granted to the Debtors in respect of these benefits under the Benefits Order, the Debtors estimate that they will distribute approximately $3.3 million in SERP payments in 2001 to Former Employees and approximately the same amount in each year going forward.

14.    The SERP, by definition, is a "top-hat" plan which covers only a select group of highly compensated or management employees. The Former Employees who currently receive payments under the SERP were among the most highly compensated of the Debtors' employees. Former Employees also receive substantial pensions from the Debtors' qualified pension plans or received a substantial lump sum distribution from the Debtors' qualified pension plans on their retirement.

**Voluntary Supplemental Pension Payments**

15.    Voluntary Supplemental Pension Payments ("VSPP") include amounts paid to approximately 110 Former Employees, which are in addition to pension payments from qualified pension plans and payments made under the SERP (described above). The Debtors have informed the Creditors' Committee that VSPP payments are made either pursuant to contractual arrangements with former employees or because the Debtors determined that the qualified and other nonqualified pension benefits for certain individuals were insufficient. The contractual arrangements vary from executive to executive. For example, a contractual obligation to provide an executive with an additional pension might have been entered into at the time of the executive's hiring in order to ameliorate the potential reduction to his or her ultimate pension which could result from termination of perhaps long service with a prior employer in order to

-8-

join Grace. It is likely that the largest VSPP payments are paid to former senior executives who earned the greatest compensation. In the absence of an order of the Court vacating the authority granted to the Debtors in respect of these payments under the Benefits Order, approximately $3.6 million in payments will be made this year alone to Former Employees. Of this amount, more than $2.8 million is payable to 17 former executives who receive annually between $36,000 and $876,000 each from the VSPP. Because the bulk of the VSPP obligations are pursuant to separate prepetition agreements, and because there may be one or more former senior executives not yet in current pay status, the magnitude of the VSPP payments to be made by the Debtors to Former Employees in subsequent years could be higher than those for 2001.

**The Retirement Plan for Outside Directors**

16.    The W. R. Grace & Co. Retirement Plan for Outside Directors (the "Outside Directors' Retirement Plan") provides payments of between $15,000 and $24,000 a year to each of 16 former directors of the Debtors and aggregates to approximately $350,000 annually. Payments to each former director continue for fifteen years.[6] The Creditors' Committee has been informed that there is no similar program in place for current directors.

**International Benefits Protection Plan**

17.    The International Benefits Protection Plan (the "IBPP") provides pension supplements to the pensions of two current and 16 former key executives who worked at least part of their careers outside of their home countries. The Debtors state these payments are intended to put those executives' retirement benefits on a par with benefits paid to counterparts who were employed continuously within a single country over the same period. In the absence

---

[6]    Approximately $2.3 million remains to be paid to the former directors covered by this Nonqualified Benefit program. See paragraph 33 of the Benefits Motion.

of an order of this Court vacating the authority granted to the Debtors in respect of this benefit program under the Benefits Order, it is expected that approximately $300,000 will be paid in IBPP payments for 2001.

**Columbian Pensions**

18.    The Columbian Pensions provide approximately $18,000 a year to seven Former Employees who reside in Columbia, South America.

## RELIEF REQUESTED

19.    Pursuant to Local Bankruptcy Rule 9013-2(e), the Creditors' Committee respectfully requests that the Court utilize its authority to reconsider the Benefits Order and enter an order amending it to the extent necessary to vacate the authority granted to the Debtors to continue to make payments of Nonqualified Benefits to Former Employees under each of the Debtors' five nonqualified pension plans: the SERP, the VSPP, the Outside Directors' Retirement Plan, the IBPP, and the Columbian Pensions, and to fund the Rabbi Trusts.

**Payments to Former Employees Are Not Entitled to**
**Priority Claim Status under Sections 507(a)(3) or 507(a)(4)**

20.    Claims for Nonqualified Benefits held by Former Employees are not entitled to priority claim status under the Bankruptcy Code. Section 507(a)(3) establishes a third priority claim for "wages, salaries and commissions . . . earned by an individual." 11 U S.C. § 507(a)(3). These are not the types of benefits being paid from the Nonqualified Benefit programs. Further, while Section 507(a)(4) of the Code grants priority to "claims for contributions to an employee benefit plan . . . arising from services rendered within 180 days before the date of the filing of the petition", only those Former Employees who worked for the Debtors during such period (i.e., after October 2, 2000) and were terminated or retired prior to the Petition Date could possibly be

-10-

entitled to a claim entitled to priority under this provision of the Code. Given that Nonqualified

Benefits are generally earned over the length of the employee's service, the Creditors'

Committee believes that the amount of such benefits entitled to priority under Section 507(a)(4)

would be negligible, at best. Further, based on the magnitude of the other benefit programs in

respect of Current and Former Employees that the Debtors are authorized to make payments

under, including the Debtors' retiree health and life insurance programs, and the magnitude of

the Nonqualified Benefits, it is apparent that the $4650 combined priority claim limitation per

employee under §§ 507(a)(3) and (a)(4) would be exceeded, leaving no priority claim amount

which could be utilized in respect of the payment of Nonqualified Benefits to Former

Employees.

## Payments To The Former Employees Are Not Justified
## By The Necessity Of Payment Doctrine

21.    While there may have been payments authorized by the Benefits Order which are

appropriately supported by the necessity of payment doctrine, the Creditors' Committee submits

that the doctrine does not and cannot support the payment of the Nonqualified Benefits to

Former Employees under the facts in these Chapter 11 cases. Because the Debtors are not

entitled to make prepetition payments to Former Employees under §§ 507(a)(3) or (a)(4), the

Debtors have no basis on which to request authorization for payment to these Former Employees

except under § 105 of the Bankruptcy Code and the "necessity of payment" doctrine. Section

105(a) of the Bankruptcy Code empowers the court to "[i]ssue any order, process or judgment

that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

Under § 105, a court may permit payment of prepetition obligations prior to confirmation of a

plan of reorganization and outside of the statutory priority schemes established by the

-11-

Bankruptcy Code, when such payment is essential to the continued operation of the debtor. <u>See,</u> <u>e.g.</u>, <u>In re Ionosphere Clubs, Inc.</u>, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989).

22.    The necessity of payment doctrine is not found in the Bankruptcy Code, but is rather a judicially-crafted exception to the Bankruptcy Code's priority scheme. <u>See</u> <u>In re Lehigh</u> <u>& New England Railway Co.</u>, 657 F.2d 570, 581 (3rd Cir. 1981).  As courts have articulated this doctrine, it is "[b]y definition . . . a rule of necessity and not one of convenience." <u>In re NVR</u> <u>L.P.</u>, 147 B.R. 126, 128 (Bankr. E.D. Va. 1992).  In this sense, as some courts have stated, payment must be "critical to the debtor's reorganization," <u>In re Financial News Network, Inc.</u>, 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991), "indispensably necessary" to the debtor's continued operation, <u>In re Boston and Maine Corp.</u>, 634 F.2d 1359, 1383 (1st Cir. 1980), or "necessary to avert a serious threat to the chapter 11 process." <u>In re Eagle-Picher Indus., Inc.</u>, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991).  Last, the payment must not only be in the best interest of the debtor, but also in the best interest of <u>its other creditors</u>. <u>See</u> <u>In re UNR Indus., Inc.</u>, 143 B.R. 506, 520 (Bankr. N.D. Ill 1992), <u>rev'd on other grounds</u>, <u>UNR Indus., Inc. v. Bloomington</u> <u>Factory Workers</u>, 173 B.R. 149 (N.D. Ill. 1994).

23.    In the Third Circuit, the necessity of payment doctrine was established by <u>In re</u> <u>Lehigh & New England Railway Co.</u>, 657 F.2d 570, 581 (3rd Cir. 1981).  In that case, the Court of Appeals for the Third Circuit held that payment of prepetition claims to creditors could be authorized by the Court under § 105 of the Bankruptcy Code if payment is "essential to the continued operation of the debtor," and especially when there is "the possibility that the creditor will employ an immediate economic sanction failing such payment." <u>Id.</u>; <u>see also</u> <u>In re</u> <u>Columbia Gas Sys., Inc.</u>, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (noting that in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business);

-12-

In re Penn Central Trans. Co., 458 F. Supp. 1234 (E.D. Pa. 1978), aff'd as modified on other

grounds, 596 F.2d 1102 (3d Cir. 1979) ("the necessity of payment doctrine, by its very nature,

depends for its applicability upon the economic realities of the market place, and the dominant or

subservient positions of the parties").  In short, the moving party must establish a "compelling

business justification" for the payment of the claim.  See In re NVR L.P., 147 B.R. 126, 128

(Bankr. E.D. Va. 1992).

**The Circumstances Of The Case Do Not Warrant Application**
**Of The Necessity Of Payment Doctrine Because The Former**
**Employees Are No Longer Employed By The Debtors**

24.      The facts of these Chapter 11 cases do not warrant application of the necessity of

payment doctrine to support payment of Nonqualified Benefits to the Former Employees. [7]  First,

these Former Employees are former employees and retirees, none of whom are essential to the

continued functioning or reorganization of the Debtors.  Generally, the necessity doctrine has

been used to permit payments only to current employees who are essential to the continued

functioning of the debtor or to key trade creditors whose supply of the debtor is critical to the

debtor's continuing in business.  See Just For Feet, Inc., 242 B.R, 821, 823-825 (D. Del. 1999)

(court granted debtor's motion to pay certain critical trade vendors under necessity doctrine

when vendors threatened to cease extension of credit to the debtors, thus rendering the debtor, a

retail chain, with no inventory); In re Gulf Air, Inc., 112 B.R. 152, 153-54 (Bankr. W.D. La.

1989) (court allowed payment to current employees under necessity doctrine, reasoning that

payments were necessary to maintain "going concern value" of debtor).  By contrast, in the

instant case, from the Debtors' point of view, these Former Employees no longer possess skills

---

[7]      Indeed, none of the orders cited to by the Debtors in the Benefits Motion, see Benefits Motion, ¶ 90, appear
to have authorized the applicable debtors to pay nonqualified benefits of the type and magnitude requested in these
cases to be paid by the Debtors to their former executives, directors, and employees.

-13-

or experience which could aid the Debtors in a successful reorganization; rather, they are persons who are, by definition, no longer essential to the Debtors' continuing functioning. Furthermore, these Former Employees present no threat of economic sanction to the Debtors' continued operation or reorganization of the kind described by the Court of Appeals in Lehigh, which would warrant payment to them. Thus, payment to the Former Employees in these cases would constitute an act of convenience, not necessity.

      25.     Second, the Debtors have asserted that an inability to honor their Employee Obligations would jeopardize "employee morale and loyalty . . . at a time when employee support is critical." Benefits Motion at ¶ 91. However, because the discontinuance would only apply to Former Employees, these concerns should be eliminated by the Debtors' continued performance under their benefits programs for Current Employees and assurances that all Current Employees will be paid the benefits to which they are entitled under the plans, whether earned or accrued before or after the Petition Date.

      26.     Last, in these cases, the only creditors who would benefit from payment outside of the statutory scheme are the Former Employees themselves. No benefit whatsoever would accrue to the entire body of creditors or to the reorganization proceeding by payment of claims to individuals who are no longer employees of the Debtors and who no longer render economically valuable services to the Debtors. Indeed, the continued payment of approximately $7.5 million of prepetition obligations each year can only drain the Debtors of resources, dilute the ultimate recovery of general unsecured creditors, or both.

-14-

**The Debtors Have Not Pled Sufficient Facts to Warrant**
**Application of the Necessity of Payment Doctrine**

27.    The Debtors have failed to meet their burden of showing that payment to these

Former Employees is necessary.  See, e.g., Just For Feet, Inc., 242 B.R, 821, 823-825 (D. Del.

1999) (denying certain claims for payments to employees because of debtor's failure to show

that payment was "critical [to the debtor's] survival in reorganization").  Similarly, the Debtors

have also failed to demonstrate any threat of economic duress from the affected parties.  See In

re Lehigh & New England Railway Co., 657 F.2d 570, 581 (3rd Cir. 1981) ("the sine qua non for

the application of the 'necessity of payment' doctrine is the possibility that the creditor will

employ an immediate economic sanction, failing such payment").

28.    As numerous courts have noted, the necessity of payment doctrine is a "narrow

exception" to the priority of payment scheme established by the Bankruptcy Code, see In re

NVR L.P., 147 B.R. 126, 127-28 (Bankr. E.D. Va. 1992), and should be narrowly construed.

See Matter of Holly's, Inc., 140 B.R. 643 (Bankr. W.D. Mich. 1992) ("This court strongly

believes that these recognized exceptions [such as the necessity of payment rule], whether

statutory or judge-made, are very limited").  Accordingly, as interpreted by the courts,

proponents of payment outside of the statutory priority scheme must bear a heavy burden to

show that payment is a "substantial necessity," see In re NVR L.P., 147 B.R. 126 (Bankr. E.D.

Va. 1992), and must "articulate a compelling business justification, other than mere appeasement

. . . for making the proposed payment."  Id. at 128.

29.    In the instant case, the Debtors have made an inadequate showing of jeopardy that

would justify paying Former Employees outside of the statutory priority scheme and ahead of

other general unsecured creditors.  The Debtors' bare allegation that "employee morale and

-15-

loyalty" will suffer because of non-payment to the Former Employees is speculative at best, absent a concrete showing that the morale of Current Employees will suffer and that this will negatively impact the Debtors' reorganization. Nor would there appear to be a basis for that assertion to be factually true, given that the Benefits Order authorizes the Debtors, among other matters, to make all payments of prepetition salaries, wages and other compensation-related benefits to Current Employees and permits the continued accrual of employee benefits for Current Employees under all of the Debtors' benefit programs, including the very same Nonqualifed Benefit plans.

30.    Furthermore, the Creditors' Committee disagrees with the Debtors that the payment of Nonqualified Benefits to Former Employees is essential to maintain the morale of Current Employees. First, the majority of Nonqualified Benefits to Former Employees are not paid to individuals who were rank and file employees, but rather to the highly compensated group only. The Debtors currently employ over 3,750 employees. Since at most 400 Former Employees receive any payments of Nonqualified Benefits, it is unlikely that the programs that provide Nonqualified Benefits to Former Employees are of any concern to the vast majority of the Debtors' employees. Second, our current request is that the Court reconsider the current payment of Nonqualified Benefits to Former Employees, and not the payment of benefits earned prepetition by Current Employees or the continued accrual of additional benefits by active employees under the Debtors' nonqualified plans and arrangements.

31.    The Creditors' Committee therefore submits that the Debtors have failed to articulate the "compelling business justification" necessary for payment of the Nonqualifed Benefits to Former Employees outside of the priority scheme mandated by the Bankruptcy Code.

-16-

The Debtors' allegations are insufficient to rise to the level of proof required by the necessity

doctrine as the courts have construed it.

### The Rabbi Trusts Should Not Be Funded
### During the Pendency of These Chapter 11 Cases

32.    The Creditors' Committee also requests that the Court reconsider the authority

given to the Debtors in the Benefits Order to "honor and perform" their obligations under the

Rabbi Trusts referred to in paragraph 34 of the Benefits Motion. A rabbi trust is a vehicle in

which an employer accumulates assets to support nonqualified retirement benefit plans. The key

characteristic of a rabbi trust is that the trust's assets remain subject to the claims of the

employer's general creditors in the event the employer becomes insolvent or files bankruptcy.

See McAllister v. Resolution Trust Corp., 201 F.3d 570, 576 (5th Cir. 2000); Goodman v.

Resolution Trust Corp., 7 F.3d 1123, 1127 (4th Cir. 1993). The Debtors have established three

Rabbi Trusts one of which is reportedly already funded with 110,984 shares of the Debtors'

stock.[8] The other two Rabbi Trusts are not currently funded, but would become funded by the

Debtors, in the absence of an order of this Court vacating such authority, in the event of a change

of control with respect to the stock of the Debtors. Upon information and belief, by the terms of

the applicable trust, the assets in the Rabbi Trusts are subject to the claims of all creditors upon a

bankruptcy filing. The Creditors' Committee therefore submits that it would be inequitable and

wasteful of the Debtors' resources to fund the Rabbi Trusts. Whether the Rabbi Trusts should be

funded for the period after the Debtors' presumed reorganization is an issue which the Court, the

---

[8]    The Creditors' Committee has not sought reconsideration of the Benefits Order with respect to this Rabbi Trust based on the Debtors' statements that the trust is already fully funded. The Committee reserves its rights to modify the Reconsideration Motion to the extent there could be additional funding to this Rabbi Trust.

-17-

Creditors' Committee and all parties could better address at a future date as part of the plan confirmation process.

33.    Finally, the Creditors' Committee reserves its rights to object at a later point in these cases to (i) the continuation of the retiree medical and life insurance plans, (ii) payment of severance, (iii) the extension of the Debtors' Change in Control Severance Plan beyond its December 31, 2001 termination date (see paragraph 66 of the Benefits Motion) and (iv) the past servicing (i.e., prepetition) portion of the minimum funding obligation to the Debtors' qualified pension plans for 2001 and subsequent years.

## NOTICE

34.    Notice of the Reconsideration Motion has been given to (i) the Debtors' counsel, (ii) counsel to the Asbestos-Claim Committees, (iii) the United States Trustee, (iv) counsel to Bank of America, in its capacity as DIP Lender in these cases, and (v) all parties who have requested notice pursuant to Rule 2002 of the Bankruptcy Rules.  The Creditors' Committee submits that such notice is adequate and proper.

35.    No prior motion for reconsideration of the Benefits Order has been made to this or any other court.

-18-

**WHEREFORE**, the Creditors' Committee respectfully requests that this Court (i) enter an order, substantially in the form of that annexed hereto, vacating the Benefits Order to the extent it authorizes the Debtors to make payments, in their discretion, of Nonqualified Benefits to Former Employees under the SERP, the VSPP, the Outside Directors' Retirement Plan, the IBPP and the Columbian Pensions and authorizes the Debtors to fund the Rabbi Trusts, and (ii) grant such other and further relief as is just and proper.


Dated:    Wilmington, Delaware
          May 2, 2001

Respectfully submitted:

STROOCK & STROOCK & LAVAN LLP
Lewis Kruger, Esq.
Robert A. Raskin, Esq.
Arlene G. Krieger, Esq.
180 Maiden Lane
New York, New York  10038-4982
Telephone:    (212) 806-5400
Facsimile:    (212) 806-6006

- and –

Michael R. Lastowski, Esquire (DE I.D. No. 3892)
William S. Katchen, Esquire
DUANE, MORRIS & HECKSCHER, LLP
1100 N. Market Street, Suite 1200
Wilmington, DE 19801-1246
Telephone:    (302)-657-4942
Facsimile:    (302)-657-4901
Email:        mlastowski@duanemorris.com


Proposed Co-Counsel for the Official
Committee of Unsecured Creditors

-19-

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| W. R. GRACE & CO., <u>et al.</u>[1] | ) | **Case No. 01-01139 (JJF)** |
| | ) | |
| | ) | |
| Debtors. | ) | **Jointly Administered** |
| | | **Objection Deadline: May 21, 2001 at** |
| | | **4:00 p.m.** |
| | | **Hearing Date: To be determined.** |

## ORDER GRANTING RECONSIDERATION AND AMENDMENT OF THE FIRST DAY ORDER AUTHORIZING THE DEBTORS TO MAKE CERTAIN PREPETITION <u>EMPLOYEE BENEFITS AND FUND CERTAIN TRUSTS</u>

Upon the motion (the "Reconsideration Motion") of the Official Committee of

Unsecured Creditors (the "Creditors' Committee") of the above-captioned debtors and debtors in

possession (the "Debtors") for reconsideration and amendment (the "Reconsideration Motion")

of the Order: (a) Authorizing, But Not Requiring, the Debtors to Pay Certain Prepetition (i)

---

[1]    The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA  Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

Wages, Salaries, Incentive Pay, Bonus Plans and other Compensation and Amounts Withheld

From Such Compensation, (ii) Employee Medical, Pension and Similar Benefits, (iii) Employee

Severance Pay, (iv) Workers' Compensation Benefits, (v) Amounts Relating to Retiree Health

Benefits and (vi) Reimbursable Employee Expenses, (b) Authorizing and Approving Certain Key

Employee Retention Programs, on an Interim Basis, and (c) Authorizing Applicable Banks and

Other Financial Institutions to Receive, Process, Honor and Pay All Checks Presented for

Payment and to Honor All Electronic Payment Requests Made By the Debtors Relating to the

Foregoing (the "Benefits Order"), pursuant to Local Rule 9013-2(e), Federal Rule of Bankruptcy

Procedure 9024 and Federal Rule of Civil Procedure 60(b), to the extent the Benefits Order

authorized the Debtors to (i) pay Nonqualified Benefits[2] to Former Employees and (ii) fund

certain Rabbi Trusts with assets to pay nonqualified benefit plans; and due notice of the

Reconsideration Motion having been given; and it appearing that the relief requested in the

Reconsideration Motion is in the best interests of the Debtors' estates, their creditors and other

parties in interests; and after due deliberation and sufficient cause appearing therefore; it is

hereby

     **ORDERED**, that the Reconsideration Motion be and it hereby is granted in its

entirety; and it is further

     **ORDERED,** that the relief granted by the Benefits Order be and it hereby is

vacated to the extent it authorized the Debtors to make payments of nonqualified benefits under

and in accordance with the Debtors' (i) Supplemental Executive Retirement Plan (the SERP),

(ii) Voluntary Supplemental Pension Payments (the VSPP), (iii) the W.R. Grace & Co.

Retirement Plan for Outside Directors (the Outside Directors Retirement Plan), (iv) the

---

[2]    Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Reconsideration Motion.

International Benefits Protection Plan (the IBPP), and (v) the Columbian Pensions (the Columbian Pensions); and it is further

**ORDERED**, that the relief granted by the Benefits Order be and it hereby is vacated to the extent it authorized the Debtors to fund the Rabbi Trusts; and it is further

**ORDERED**, that the Creditors' Committee's rights to object to (i) the continuation of the Debtors' retiree medical and life insurance plans, (ii) continued payments under the Debtors' employee severance plans, (iii) payments of the prepetition portion of the minimum funding obligation to the Debtors' qualified pension plans for 2001 and subsequent years, and (iv) any extension of the W. R. Grace & Co. Change in Control Severance Program beyond its current December 31, 2001 termination date, be and they hereby are preserved for the balance of the Debtors' Chapter 11 cases; and it is further

**ORDERED**, that the Debtors are authorized and directed to take all actions to implement and effectuate the terms of this Order.

Dated: _____ ___, 2001
        Wilmington, Delaware

                                        _____
                                        Honorable Joseph J. Farnan, Jr.

-3-

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W. R. GRACE & CO., et al.** | ) | **Case No. 01-01139 (JJF)** |
| | ) | |
| | ) | |
| Debtors. | ) | **Jointly Administered** |
| | | **Objection Deadline: May 21, 2001** |
| | | **at 4:00 p.m.** |
| | | **Hearing Date: To be determined.** |

### CERTIFICATE OF SERVICE OF THE MOTION OF OFFICIAL UNSECURED CREDITORS' COMMITTEE FOR RECONSIDERATION AND AMENDMENT OF THE FIRST DAY ORDER AUTHORIZING THE DEBTORS TO MAKE CERTAIN PREPETITION EMPLOYEE PAYMENTS AND FUND CERTAIN TRUSTS

I, John W. Weiss, certify that I am not less than 18 years of age, and that service of a

copy of the attached **Motion of Official Unsecured Creditors' Committee for**

**Reconsideration and Amendment of the First Day Order Authorizing the Debtors to Make**

**Certain Prepetition Employee Payments and Fund Certain Trusts** was made May 2, 2001,

upon:

> All of the parties indicated on the attached Service List by first
> class mail, postage prepaid, or as otherwise indicated.

Under penalty of perjury, I declare that the foregoing is true and correct.

| | |
|---|---|
| 5-2-01 | |
| ——————— | ——————————————— |
| Date | John W. Weiss |

-21-

**W.R. Grace Service List - 1103944**

Laura Davis Jones, Esq.
David Carickoff, Esq.
Counsel to the Debtors
Pachulski, Stang, Ziehl, Young & Jones
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
*BY HAND DELIVERY*

Hamid R. Rafatjoo, Esq.
Counsel to the Debtors
Pachulski, Stang, Ziehl, Young & Jones
10100 Santa Monica Boulevard
Los Angeles, CA 90067-4100

Steven M. Yoder, Esq.
Counsel to Bank of America
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
*BY HAND DELIVERY*

Matthew G. Zaleski, III, Esq.
Counsel to the Asbestos Committee
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
*BY HAND DELIVERY*

James Kapp, III. Esq.
Counsel to the Debtor
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Frank Perch III
Office of the United States Trustee
601 Walnut Street, Curtis Center,
Suite 950 West
Philadelphia, PA 19106

Derrick Tay, Esq.
Counsel to the Debtor
Meighen Demers
Suite 1100, Box 11, Merrill Lynch Canada Tower
Sun Life Center, 200 Kint Street West
Toronto, Ontario M5H3T4
CANADA

Mark Kenny, Esq.
Office of the United States Trustee
601 Walnut Street, Curtis Center,
Suite 950 West
Philadelphia, PA 19106

D.J. Baker, Esq.
Counsel to Sealed Air
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

David B. Sigel
W.R. Grace and Co.
7500 Grace Drive
Columbia, MD 21044

**W.R. Grace Service List - 1103944**

Nancy Worth Davis, Esq.
Counsel to Asbestos Committee
Ness, Motley, Loadhold, Richardson & Poole
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465

J. Douglas Bacon, Esq.
Counsel to DIP Lender
Latham & Watkins
Sears Tower, Suite 5800
Chicago, Il 60606

Securities & Exchange Commission
15th & Pennsylvania Avenue N.W.
Washington, D.C. 20020

Todd Meyer, Esq.
Kilpatric Stockton
1100 Peachtree Street
Atlanta, GA 30309

Securities & Exchange Commission
Atlanta Regional Office Branch/Reorganization
3475 Lenox Road, N.E., Suite 100
Atlanta, GA 30326-1232

District Director
IRS
409 Silverside Road
Wilmington, DE 19809
*BY HAND DELIVERY*

Secretary of State
Division of Corporations
Franchise Tax
P.O. Box 7040
Dover, DE 19903

Secretary of Treasurer
P.O. Box 7040
Dover, DE 19903

Jon L. Heberling, Esq.
McGarvey, Heberling, Sullivan & McGarvey PC
745 South Main Street
Kalispel, MT 59901

James H.M. Sprayregen, Esq.
Counsel to the Debtor
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Joseph F. Rice, Esq.
Counsel to the Asbestos Committee
Ness Motley Loadhold Richardson & Poole, P.A.
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465

Patrick L. Hughes, Esq.
Counsel to Asbestos Claimants
Haynes & Boone LLP
1000 Louisiana Street, Suite 4300
Houston, TX 77002-5012

Scott L. Baena, Esq.
Counsel to Committee of Property Damage Claimants
Bilzin Sumberg Dunn Baena Price & Axelrod LLP
First Union Financial Center
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131

Theodore Goldberg, Esq.
Mark C. Meyer, Esq.
Goldberg, Persky, Jennings & White, P.C.
1030 Fifth Avenue, Third Floor
Pittsburgh, PA 15219-6295

Mark Lanier, Esq.
Patrick N. Haines, Esq.
Counsel to Asbestos Claimants
Lanier Parker & Sullivan, P.C.
1331 Lamar Street, Suite 1550
Houston, TX 77010

Alan Rich, Esq.
Russell Budd, Esq.
Counsel to Asbestos Claimants
Baron & Budd, P.C.
The Centrum
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281

Mark D. Collins, Esq.
Counsel to Chase Manhattan Bank
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
*BY HAND DELIVERY*

Eric D. Schwartz, Esq.
Counsel to National Medical Care
Morris, Nichols, Arsht & Tunnell
1201 North Market Street, P.O. Box 1347
Wilmington, DE 19899-1347
*BY HAND DELIVERY*

Jay M. Sakalo, Esq.
Bilzin Sumberg Dunn Baena Price & Axelrod LLP
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Stephen H. Case, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Brad Rogers, Esq.
Pension Benefit Guaranty Corporation
1200 K Street, N.W.
Washington, D.C. 20005-4026

James D. Freeman, Esq.
Environment and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Ira S. Greene, Esq.
Counsel to Intercat, Inc.
Squadron, Ellenoff, Plesent & Sheinfeld, LLP
551 Fifth Avenue
New York, New York 10176

W.J. Winterstein, Jr.
Counsel to PPG Industries
Harvey, Pennington, Cabot, Griffith & Renneisen, Ltd.
11 Penn Center, 29th Floor
1835 Market Street
Philadelphia, Pennsylvania 19103

Josiah Rotenberg, Esq.
Lazard Fréres & Co LLC
30 Rockekeller Plaza, 60th Floor
New York, New York 10020

Lewis Kruger, Esq.
Counsel to the Unsecured Creditors' Committee
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038

Shelby A. Jordan, Esq.
Counsel to Garlock Inc.
Jordan, Hyden, Womble & Culbreth P.C.
Suite 900, Bank of America
500 North Shoreline
Corpus Christi, Texas 78471

Robert Raskin, Esq.
Counsel to the Unsecured Creditors' Committee
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038

Nancy T. Williams, Esq.
Counsel to Claimants
Brayton Purcell
222 Rush Landing Road
Novato, California 94945

Greta M. Brouphy, Esq.
Counsel to Babcock & Wilcox
Heller, Draper, Hayden, Patrick & Horn, L.L.C.
Suite 2500, Poydras Center
650 Poydras Street
New Orleans, Louisiana 70130-6103

**W.R. Grace Service List - 1103944**

James V. Sylvester, Esq.
Counsel to Intercat, Inc.
Fritz, Byrne & Head, L.L.P.
98 San Jacinto Boulevard, Suite 2000
Austin, Texas 79701-4286

Charles E. Boulbol, Esq.
Counsel to Trizechahn-Swig
26 Broadway-Seventeenth Floor
New York, New York 10004

Elihu Inselbuch, Esq.
Rita Tobin, Esq.
Counsel for Asbestos B.I. Committee
Caplin & Drysdale, Chartered
399 Park Avenue
New York, NY 10022

William P. Bowden, Esq.
Matthew G. Zaleski, III, Esq.
Counsel for Asbestos B.I. Committee
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
*BY HAND DELIVERY*

Adam G. Landis, Esq.
Counsel for Wachovia Bank, N.A.
Klett Rooney Lieber & Schorling, P.C.
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801
*BY HAND DELIVERY*

Peter Van N. Lockwood, Esq.
Julie W. Davis, Esq.
Trevor W. Swett, III, Esq.
Nathan D. Finch
Counsel for Asbestos B.I. Committee
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005

Bruce E. Jameson, Esq.
Counsel for Prickett, Jones & Elliott and McKool Smith
Prickett, Jones & Elliott
310 King Street
P.O. Box 1328
Wilmington, DE 19899
*BY HAND DELIVERY*

Todd C. Meyers, Esq.
Counsel for Wachovia Bank, N.A.
Kilpatrick Stockton, LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4530

Mary A. Coventry
Sealed Air Corporation
Park 80 East
Saddle Brook, NJ 07663

Lewis T. Le Clair, Esq.
Counsel for Prickett, Jones Elliott and McKool Smith
McKool Smith
300 Crescent Court, Suite 1500
Dallas, TX 75201

Mark S. Chehi, Esq.
Counsel for Sealed Air Corporation
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636
*BY HAND DELIVERY*

D.J. Baker, Esq.
Counsel for Sealed Air Corporation
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036-6522

Paul Haskell, Esq.
Counsel for Farallon Capital Management, L.L.C.
Richards Spears Kibbe & Orbe
One Chase Manhattan Plaza
New York, NY 10005

Meridee Moore
Kirsten Lynch
Farallon Capital Management, L.L.C.
One Maritime Plaza, Suite 1352
San Francisco, CA 94111

Bernice Conn
Counsel for Los Angeles Unified School District
Robins, Kaplan, Miller & Ciresi LLP
2049 Century Park East Suite 3700
LosAngeles, CA 90067

Steven J. Kherkher
Laurence G. Tien
Counsel for Numerous Asbestos Claimants
Williams Bailey Law Firm, LLP
8441 Gulf Freeway, Suite #600
Houston, Texas 77017

Jeffery C. Wisler, Esq.
Michelle McMahon, Esq
Counsel for Maryland Casualty Company
Connolly Bove Lodge & Hutz LLP
1220 Market Street, 10th Floor
P.O. Box 2201
Wilmington, DE 19899
*BY HAND DELIVERY*

Paul M. Baisier, Esq.
Counsel for BPU REYNOLDS, INC.,
Seyfarth Shaw
1545 Peechtree Street
Suite 700
Atlanta, Georgia 30309

John P. Dillman
Counsel for City of Houston Harris County
Linebarger Heard Goggan Blair
Graham Pena & Sampson, LLP
P.O. Box 3064
Houston, TX 772533064

Elizabeth S. Kardos, Esq.
Counsel for Herman's Sporting Goods
Gibbons, Del Deo, Dolan,
Griffinger & Vecchione
A Professional Corporation
One Riverfront Plaza
Newark, New Jersy 07102-5497

**W.R. Grace Service List - 1103944**

Thomas J. Noonan, Jr.
Herman's Sporting Goods in Liquidation, Inc.
c/o R&S Liquidation Company, Inc.
 Lyons Mall PMB # 530
Basking Ridge, New Jersy 07920-1928

Fedrick B. Rosner, Esq.
Counsel for Ingersoll-Rand Fluid Products
Walsh, Monzak and Monaco, P.A.
1201 N. Orange Street, Suite 400
Wilmington, DE 19801
*BY HAND DELIVERY*

Cindy Schultz
Ingersoll-Rand Fluid Products
One Aro Center
P.O. Box 151
Bryan, Ohio 43506

Keavin D. McDonald
Counsel for Numerous Asbestos Claimants
Wilshire Scott & Dyer, P.C.
One Houston Center
1221 McKinney, Suite 4550
Houston, Texas 77010

A. Jimenez
Contrarian Capital Management. LLC.
411 West Putnam Avenue, Suite 225
Greenwich, CT 06830

Steven R. Schlesinger, Esq.
Counsel for Jay Peak LLC.
Jaspan Schlesigner Hoffman LLP
300 Garden City Plaza
Garden City, NY 11530

Robert Jacobs
Marla Rosoff Eskin
Counsel to Various Asbestos Claimants
Jacobs & Crumplar, P.A.
2 East 7th Street
P.O. Box 1271
Wilmington, DE 19899
*BY HAND DELIVERY*

Francis A. Monaco Jr., Esquire
Counsel for Zhagrus Environmental, Inc
Walsh, Monzack and Monaco, P.A.
1201 N. Orange Street, Suite 400
P.O. Box 2031
Wilmington, Delaware 19899-2031
*BY HAND DELIVERY*

Michael R. Lastowski, Esquire
Duane, Morris & Heckscher LLP
1100 N. Market Street, Suite 1200
Wilmington, DE 19801-1246
*BY HAND DELIVERY*

Stroock & Stroock & Lavan LLP
Lewis Kruger, Esq.
Robert A. Raskin, Esq.
Arlene G. Krieger, Esq.
180 Maiden Lane
New York, NY 10038-4982