● **ORIGINAL** ●

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JJF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Objections due by:** |
| | ) | **June 18, 2001 at 4:00 p.m.** |
| | ) | **Hearing Date:** |
| | ) | **June 21, 2001 at a time t/b/d** |

## MOTION OF DEBTORS TO SHORTEN NOTICE PERIOD AND APPROVE FORM AND MANNER THEREOF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move (the "Motion") this Court for an order under Rules 2002 and 9006(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), providing that the notice period with respect to the attached **Motion of the Debtors for the Entry of an Order Approving the Settlement and Performance Agreement** (the "Settlement Motion") be shortened as set forth below. In support of this Motion, the Debtors respectfully represent as follows:

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

361

1.      Bankruptcy Rule 2002(a)(3) provides that all creditors of the Debtors receive at least <u>twenty days</u>' notice of a "the hearing on approval of a compromise or settlement of a controversy other than approval of an agreement pursuant to Rule 4001(d), unless the court for cause shown directs that notice not be sent." Fed. R. Bankr. Pro. 2002(a)(2).  Bankruptcy Rule 9006(c) provides that "when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced." Fed. R. Bank. Pro. 9006(c).  The Debtors submit that there is sufficient cause to justify limiting the notice period with respect to the Settlement Motion to seventeen (17) days.  It should be noted, however, that the Debtors have provided the respective official committees in these chapter 11 cases with a draft of the Settlement Motion on June 1, 2001.  Thus, the committees that represent the major creditor constituencies in these cases will have had at least twenty days' notice prior to the hearing on the Settlement Motion, as required by Bankruptcy Rule 2002(a)(3).

2.      The Settlement Motion seeks approval of a certain Settlement and Performance Agreement that the Debtors have determined in their business judgment to enter into, as it is in the best interests of their respective estates.  The Settlement and Performance Agreement (the "Settlement Agreement") resolves issues concerning a contract by and between W. R. Grace & Co. – Conn. ("Conn") and Zhagrus Environmental, Inc. ("Zhagrus") for the transportation and disposal of certain low-level radioactive waste material from property owned by Conn (the "Contract").  As of the commencement of these chapter 11 cases, Zhagrus had completed a substantial portion of the transportation and disposal of the waste, but Conn owed substantial sums to Zhagrus under the Contract.  As a result of commencing these chapter 11

cases, Conn has ceased paying Zhagrus for prepetition work under the Contract, and Zhagrus has ceased the transportation and disposal of waste from the plant.

3.    In connection with this cessation of work, Conn has incurred and continues to incur substantial costs associated with the pending completion of the clean up as well as the costs associated with the storage of radioactive waste currently awaiting transportation and disposal from Conn's property.  Additionally, Conn seeks to complete the clean up of its plant in an effort to avoid any requirement to fund a financial assurance mechanism that might otherwise be imposed by the State of Tennessee or the Environmental Protection Agency.  Accordingly, the Debtors believe that it is in the best interests of their estates to go forward with Settlement Motion on June 21, 2001.  As noted above, the committees in these chapter 11 cases have had notice of the Settlement Motion since June 1, 2001.  Therefore, the Debtors believe that the notice period requested herein is adequate and sufficient for entry of the proposed Order Approving the Debtor's Settlement and Performance Agreement.

4.    Finally, the Debtors request the Court's approval of the attached form of notice that sets forth a time period of fourteen (14) days (until June 18, 2001 at 4:00 p.m. Eastern Time) for filing objections to the Settlement Motion and a hearing date of June 21, 2001 at a time to be determined to consider approval of the Settlement Motion.  The Debtors submit that the form of notice is proper under 11 U.S.C. § 102 and Bankruptcy Rule 2002(m).

91100-001\DOCS_DE:23701.1

WHEREFORE, the Debtors respectfully request the entry of an order shortening the notice period for the hearing to approve the Settlement Motion as set forth above and approving the form of notice attached hereto.

Dated: June 4, 2001

KIRKLAND & ELLIS
James H.M. Sprayregen
James W. Kapp III
Samuel A. Schwartz
Roger J. Higgins
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

**and**

PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

Laura Davis Jones (Bar No. 2436)
Hamid R. Rafatjoo (CA Bar No. 181564)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and
Debtors in Possession

SO ORDERED this __7__
day of June, 2001

Honorable Joseph J. Farnan, Jr.
United States District Judge

91100-001\DOCS_DE:23701.1

-4-

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JJF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Objections due by:** |
| | ) | **June 18, 2001 at 4:00 p.m.** |
| | ) | **Hearing Date:** |
| | ) | **June 21, 2001 at a time t/b/d** |

**NOTICE OF MOTION OF THE DEBTORS FOR THE ENTRY OF AN
ORDER APPROVING THE SETTLEMENT AND PERFORMANCE AGREEMENT**

TO:    Parties required to receive notice pursuant to Del. Bankr. LR 2002-1.

On June 4, 2001, the above-captioned debtors and debtors in possession

(collectively, the "Debtors") filed the **Motion of the Debtors for the Entry of an Order**

**Approving the Settlement and Performance Agreement** (the "Motion") with the United States

Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware  19801

(the "Bankruptcy Court").  A true and correct copy of the Motion is attached hereto.

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

91100-001\DOCS_DE:23699.1

Objections and other responses to the relief requested in the Motion, if any, must be in writing and be filed with the Bankruptcy Court no later than 4:00 p.m. Eastern Time on June 18, 2001.

Objections or other responses to the Motion, if any, must also be served so that they are received not later than June 18, 2001 at 4:00 p.m. Eastern Time, by (i) co-counsel for the Debtors, James H.M. Sprayregen, Esquire, Kirkland & Ellis, 200 East Randolph Drive, Chicago, Illinois 60601 (fax number 312-861-2200), and Laura Davis Jones, Esquire, Pachulski, Stang, Ziehl, Young & Jones P.C., 919 North Market Street, Suite 1600, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801) (fax number 302-652-4400); (ii) the Office of the United States Trustee, Attn: Frank J. Perch, Esquire, 844 N. King Street, Wilmington, Delaware 19801 (fax number 302-573-6497); (iii) counsel to the Official Committee of Property Damage Claimants, Scott L. Baena, Esquire, Bilzin, Sumberg, Dunn, Baena, Price & Axelrod, First Union Financial Center, 200 South Biscayne Boulevard, Suite 2500, Miami, Florida 33131 (fax number 305-374-7593), and Michael B. Joseph, Esquire, Ferry & Joseph, P.A., 824 Market Street, Suite 904, P.O. Box 1351, Wilmington, Delaware 19899 (fax number 302-575-1714); (iv) counsel to the Official Committee of Personal Injury Claimants, Elihu Inselbuch, Esquire, Caplin & Drysdale, 399 Park Avenue, 36th Floor, New York, New York 10022 (fax number 212-644-6755), and Matthew G. Zaleski, III, Esquire, Ashby & Geddes, 222 Delaware Avenue, P.O. Box 1150, Wilmington, Delaware 19899 (fax number 302-654-2067); and (v) counsel to the Official Committee of Unsecured Creditors, Lewis Kruger, Esquire, Stroock & Stroock & Lavan, 180 Maiden Lane, New York, New York 10038-4982 (fax number 212-806-6006), and Michael R.

91100-001\DOCS_DE:23699.1

Lastowski, Esquire, Duane, Morris & Heckscher, LLP, 1100 N. Market Street, Suite 1200,

Wilmington, Delaware  19801-1246 (fax number 302-657-4901).

IF NO OBJECTIONS ARE TIMELY FILED AND SERVED IN

ACCORDANCE WITH THIS NOTICE, THE BANKRUPTCY COURT MAY GRANT THE

RELIEF DEMANDED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

A HEARING ON THE MOTION WILL BE HELD BEFORE THE

HONORABLE JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE, ON JUNE

21, 2001 AT A TIME TO BE DETERMINED AT THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE, 844 N. KING STREET, WILMINGTON,

DELAWARE  19801.  THE DEBTORS WILL NOTICE ANY OBJECTING PARTIES, THE

RESPECTIVE COMMITTEES, AND ANY PARTY WHO SO REQUESTS OF THE TIME OF

SUCH HEARING.

Dated: June 4, 2001                      KIRKLAND & ELLIS
                                         James H.M. Sprayregen
                                         James W. Kapp III
                                         Samuel A. Schwartz
                                         Roger J. Higgins
                                         200 East Randolph Drive
                                         Chicago, Illinois 60601
                                         (312) 861-2000

                                              and

                                         PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.


                                         _____
                                         Laura Davis Jones (Bar No. 2436)
                                         Hamid R. Rafatjoo (CA Bar No. 181564)
                                         David W. Carickhoff, Jr. (Bar No. 3715)
                                         919 North Market Street, 16th Floor
                                         P.O. Box 8705
                                         Wilmington, DE 19899-8705 (Courier 19801)
                                         Telephone: (302) 652-4100
                                         Facsimile:  (302) 652-4400

                                         Co-Counsel for the Debtors and
                                         Debtors in Possession

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JJF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Objections due by:** |
| | ) | **June 18, 2001 at 4:00 p.m.** |
| | ) | **Hearing Date:** |
| | ) | **June 21, 2001 at a time t/b/d** |

### MOTION OF THE DEBTOR FOR THE ENTRY OF AN ORDER APPROVING THE SETTLEMENT AND PERFORMANCE AGREEMENT

W. R. Grace & Co. - Conn., a debtor and debtor in possession in the above-captioned chapter 11 cases, by its undersigned counsel, respectfully moves this Court (the "Motion") for entry of an Order approving the attached Settlement and Performance Agreement pursuant to 11 U.S.C. §§ 105, 363 and 365, and in support thereof, states the following:

### Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this motion is proper under 28 U.S.C. § 1408.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

C:\WINDOWS\Temporary Internet Files\OLK5002\Motion.wpd

2.      The statutory predicates for this Motion are 11 U.S.C. §§ 105, 363, 365 and

502(g) and Rules 2002, 6004, 6006, and 9019 of the Federal Rules of Bankruptcy Procedure.

### Background

3.      On April 2, 2001 (the "Petition Date"), each of the above captioned debtors

and debtors in possession (collectively, the "Debtors") filed a voluntary petition for relief under

chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

4.      The Debtors engage in specialty chemicals and materials businesses, operating

on a worldwide basis, with their corporate headquarters located in Columbia, Maryland.   The

Debtors predominately operate through two business units - Davison Chemicals and Performance

Chemicals.   The Debtors' parent company, W. R. Grace & Co. ("Grace"), is a global holding

company that conducts substantially all of its business through a direct, wholly owned subsidiary

W. R. Grace & Co. - Conn. ("Grace-Conn" or the "Debtor").   Grace-Conn owns substantially all of

the assets, properties and rights of Grace in the United States and has 76 domestic subsidiaries and

affiliates, 60 of which are debtors and debtors in possession in the Chapter 11 Cases.

5.      The Chapter 11 Cases have been consolidated for administrative purposes

only and pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to

operate their businesses and manage their properties as debtors in possession.

6.      On April 12, 2001, the office of the United States Trustee appointed three

official committees in the Chapter 11 Cases as follows: (i) the committee of unsecured creditors (the

"Creditors' Committee"); (ii) the committee of asbestos personal injury claimants (the "Asbestos

Personal Injury Committee"); and (iii) the committee of asbestos property damage claimants (the

"Asbestos Property Damage Committee") (the Creditors' Committee, the Asbestos Personal Injury

Committee and the Asbestos Property Damage Committee shall collectively be referred to as the "<u>Committees</u>").

7.    On November 5, 1999, the Debtor and Zhagrus Environmental, Inc. ("<u>Zhagrus</u>") entered into a contract (the "<u>Contract</u>") for the transportation and disposal of certain low-level radioactive waste material from property owned by and known as the Grace Davison Chattanooga Plant located in Chattanooga, Tennessee (the "<u>Plant</u>").   In connection with the execution of the Contract and prior to the Petition Date, the Debtor was undergoing the process of completing the environmental cleanup of the Plant and Zhagrus was engaged in the transportation and disposal of the associated waste in accordance with the Contract.  At the time the Chapter 11 Cases were filed, Zhagrus had completed a substantial portion of the transportation and disposal, but the Debtor owed substantial sums to Zhagrus under the Contract.  Zhagrus asserts that the Debtor owes Zhagrus approximately $7.3 million for prepetition performance under the Contract.

8.    As a result of the filing of the Chapter 11 Cases, the Debtor ceased paying Zhagrus for prepetition work under the Contract, and Zhagrus ceased the transportation and disposal of waste from the Plant.  In connection with this cessation of work, the Debtor has incurred and continues to incur substantial costs associated with the pending completion of the cleanup as well as the costs associated with the storage of the radioactive waste currently awaiting transportation and disposal from the Plant.

9.    Further, the Debtor seeks to complete the cleanup of the Plant in an effort to avoid any requirement to fund a financial assurance mechanism that might otherwise be required by the State of Tennessee or the Environmental Protection Agency.  Zhagrus is uniquely able to complete the transportation and disposal of the waste in a timely and cost efficient manner.  Zhagrus

has on site the rail cars and equipment necessary to complete the transportation and disposal of the waste. Further, Zhagrus has the permits and licenses from various regulatory agencies necessary to perform such services.

10.     Therefore, the Debtor and Zhagrus desire to reject the Contract and enter into a new agreement which, in part, amends and restates the Contract to, among other things, (i) permit the Debtor to complete the cleanup of the Plant, (ii) permit Zhagrus to complete the removal of the radioactive waste from the Plant, (iii) clarify any ambiguities that otherwise may have existed under the Contract and (iv) allow Zhagrus pre- and post-petition claims.

### The Settlement and Performance Agreement

11.     As a result of good-faith, arms-length negotiations among the Debtor and Zhagrus, the parties have agreed to enter into that certain Settlement and Performance Agreement, substantially in the form of Exhibit A attached hereto (the "Settlement Agreement"). The Settlement Agreement provides for the full and complete settlement of all claims of both parties arising under the Contract as well as the terms of Zhagrus' completion of the transportation and disposal of the waste from the Plant. By this Motion, the Debtor seeks approval of the Settlement Agreement as well as the rejection of the Contract. The chart below summarizes the main transactions contemplated by the Settlement Agreement.

| Settlement Agreement Key Provisions | |
|---|---|
| **The Resolution of Zhagrus' Prepetition Claim** | • Zhagrus will be given an allowed prepetition unsecured claim in the amount of $6,850,000 in resolution of (i) each of Zhagrus' claims arising for its prepetition performance under the Contract and any related damages and (ii) each of the Debtor's claimed credits and offsets. |
| | • This amount shall not include the payment for either the shipment and disposal of 55 railcars of waste currently waiting disposal in Clive, Utah or the shipment and disposal of 122 railcars of waste currently awaiting transportation from the Plant. |

| The Rejection and Revision of the Contract | • In accordance with the terms of the Settlement Agreement, the Contract shall be rejected and replaced by the Settlement Agreement.<br><br>• The Settlement Agreement shall govern the terms and conditions of the parties postpetition relationship. |
|---|---|
| The Terms of the Settlement Agreement | • The parties agree that the cost of the completion of the transportation and disposal of the waste shall not exceed $2,987,929.<br><br>• Grace agrees to pay Zhagrus no later than 15 days after the receipt of each Zhagrus invoice. Interest will accrue on any delinquent payments beginning 30 days from the invoice date at the rate of 1.5% per month.<br><br>• Certain of the terms of the Contract have been incorporated into the Settlement Agreement as set forth in the Settlement Agreement. |

## Relief Requested

12.     By this Motion, the Debtor seeks (i) approval of the Settlement Agreement,

(ii) authority to consummate the transactions contemplated by the Settlement Agreement, including,

without limitation, the rejection of the Contract and the payment for Zhagrus's position performance

as set forth in the Settlement Agreement and (iii) the resolution of Zhagrus' prepetition general

unsecured claim.

## Statutory Authority

13.     This Court has statutory authority to authorize and approve the Settlement

Agreement. 11 U.S.C. §§ 105 and 363(b)(1). A settlement of claims and causes of action by a debtor

in possession constitutes a use of property of the estate. See Northview Motors, Inc. v. Chrysler

Motors Corp., No. 98-3387, 1999 U.S. App. LEXIS 13403, at *11 (3d Cir. June 18, 1999). If a

settlement is outside of the ordinary course of business of the debtor, it requires approval of the

bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. Id.

14.     Bankruptcy Rule 9019 provides that, after notice and a hearing, a court may

approve a proposed settlement or compromise. The decision whether to accept or reject a

compromise lies within the sound discretion of the court. In re Resorts Int'l, Inc., 145 B.R. 412, 451

(Bankr. D. N.J. 1990); In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (Bankr. E.D. Pa.

1986).

15.    In reviewing a motion for approval of a settlement, bankruptcy courts must

"assess and balance the value of the claim that is being compromised against the value to the estate

of the acceptance of the compromise proposal." In re Martin, 91 F.3d 389, 393 (3d Cir. 1996).  This

requires court consideration of the following criteria:  "(1) the probability of success in litigation,

(2) the likely difficulties in collection, (3) the complexity of the litigation involved, and the expense,

inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."

Id.

16.    Approval of the Settlement Agreement is in the best interest of the Debtor and

its estate.  In particular, authorizing the Debtor to enter into the Settlement Agreement avoids further

expenses and inherent delays associated with completing the cleanup of the Plant.  Execution of the

Settlement Agreement will also constitute a settlement between the Debtor and Zhagrus of the

Contract, Zhagrus' claims under the Contract and the terms of the post petition cleanup.  Pursuant

to the Settlement Agreement, Zhagrus is agreeing to compromise the amount of its claim under the

Contract, perform the post petition disposal at a cost which is less than that agreed to in the original

Contract and perform the post petition transportation for the very same cost as that agreed to in the

original Contract.

17.    The benefits the Debtor will receive under the Settlement Agreement – the

ability to dispose of the radioactive waste and complete the cleanup of the Plant as well as the

resolution of Zhagrus' prepetition claims – are in the paramount interests of the Debtor's bankruptcy estate and its creditors, and therefore justify this Court's approval.

18.     In particular, the Debtor currently is in possession of radioactive waste removed from the Plant which only needs transportation and disposal. This waste sits in 55 rented railcars awaiting transportation in Clive, Utah and an additional 122 railcars awaiting transportation at the Plant. The cost of these railcars to the Debtor is approximately $3,000 per day. In addition, the Debtor has contractors standing by to complete the related removal and cleanup tasks at a cost of $25,000 per day. These sums will continue to accrue until the cleanup and removal is completed and are an unnecessary burden to the Debtor and its estate because of the readiness of the waste for immediate transportation and disposal.

19.     Further, should the Debtor be unable to complete the removal and disposal of the radioactive waste from the Plant, the Debtor may face repercussions from both the State of Tennessee and the Environmental Protection Agency. Such an occurrence may result in the Debtor ultimately having to fund a more costly financial assurance mechanism for the removal and disposal of the waste from the Plant.

20.     With regard to consummating the Settlement Agreement, to the extent the Debtor requires authority under sections 363 and 365 of the Bankruptcy Code, including the rejection of the Contract, the Debtor, by this Motion, requests such authority. For the reasons set forth herein, the Debtor has demonstrated a business justification for the execution of the Settlement Agreement.

## Conclusion

21.    The proposed Settlement Agreement is fair and equitable and is in the paramount interests of the Debtor, its estate and its creditors.  The Debtor reasonably believes that the relief requested in this Motion will maximize recoveries for creditors of the estate.

## Notice

22.    Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to the Committees and (v) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

23.    No prior motion or application for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests that the Court (i) approve the Settlement Agreement, substantially in the form of Exhibit A attached hereto, and authorize the

Debtor to consummate the transactions contemplated thereby, including the rejection of the Contract

and allowance of certain claims of Zhagrus  and (ii) grant such other relief as may be just or proper.

Wilmington, Delaware
Dated: June 4, 2001

Respectfully submitted,

KIRKLAND & ELLIS
James H.M. Sprayregen
James W. Kapp III
Samuel A. Schwartz
Roger J. Higgins
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG & JONES PC


Laura Davis Jones (#2436)
David W. Carickhoff, Jr. (#(3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

# Exhibit A

## **The Settlement Agreement**

# SETTLEMENT AND PERFORMANCE AGREEMENT

This Settlement and Performance Agreement ("Agreement") is entered into by and between Grace Davison and W.R. Grace & Co. – Conn. a Delaware Corporation ("Grace") and Zhagrus Environmental, Inc. ("Zhagrus"), with respect to the following:

## RECITALS:

**WHEREAS,** Grace and Zhagrus (the "parties") entered into a contract dated November 5, 1999 and amendments thereto ("Contract") for the transportation and disposal of certain low-level radioactive waste material ("waste") from property known as the Grace Davison Chattanooga Plant located at Chattanooga, Tennessee ("Chattanooga Plant");

**WHEREAS,** certain of the measures required to be performed by Zhagrus and Grace under the Contract have been completed;

**WHEREAS,** Grace has been performing environmental remediation at the Chattanooga Plant, and continuing to do so will aid Grace in avoiding any requirement to fund a financial assurance mechanism that might otherwise be required by the state of Tennessee and/or the Environmental Protection Agency;

**WHEREAS,** Grace believes it is essential to complete the environmental cleanup of the Chattanooga Plant;

**WHEREAS,** Grace believes that Zhagrus is uniquely able to complete the transportation and disposal of the radioactive waste in a timely and cost effective manner from the Chattanooga Plant due to the need to obtain railcars, equipment, and necessary permits and licenses from various regulatory agencies;

**WHEREAS,** commencement of the work under this Agreement is urgent due to the fact

that Grace is incurring substantial expenses pending re-commencement and completion of the cleanup work under this Agreement;

WHEREAS, on or about April 2, 2001, Grace filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code ("Chapter 11 Petition"), which is pending in the United States Court for the District of Delaware, as Case No. 01-01139;

WHEREAS, notwithstanding its Chapter 11 Petition, Grace wishes to complete certain measures relating to the environmental cleanup of the Chattanooga Plant, as provided for in the Contract;

WHEREAS, certain disagreements between Zhagrus and Grace have arisen with respect to the Contract and the effect thereon of Grace's Chapter 11 Petition;

WHEREAS, Zhagrus asserts that Grace owes Zhagrus the sum of $7,276,543.10 for pre-petition performance (transportation and disposal services) and related damages;

WHEREAS, Grace asserts certain credits and offsets to the amounts claimed to be due and owing by Zhagrus, and Zhagrus asserts defenses to the claimed credits and offsets;

WHEREAS, Grace and Zhagrus, and each of them, desire to settle all of the disputes between them arising from the Contract through and including the date of this Agreement;

WHEREAS, this Agreement should not be construed and is not intended as an admission of liability by any party for any purposes;

NOW THEREFORE, in consideration of the respective representations, covenants, agreements, warranties and conditions herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Grace and Zhagrus, AGREE as follows:

2

1.    The Contract constitutes an executory contract that shall be rejected by Grace. Zhagrus shall not object to such rejection.

2.    In settlement of all claims of Zhagrus for amounts due Zhagrus for its pre-petition performance under the Contract and related damages, Zhagrus shall have an allowed unsecured claim in the sum of $6.85 million which amount shall not include payment for either: (a) the shipment and disposal of 55 railcars of waste that have been shipped from the Chattanooga Plant, and currently are located on a railroad siding awaiting disposal in Clive, Utah ("Clive Railcar Waste"); or (b) the shipment and disposal of 122 railcars of waste remaining at the Chattanooga Plant that Zhagrus will transport and dispose for Grace subsequent to the execution of this Agreement ("Chattanooga Waste") according to the terms set forth in this Agreement.

3.    Zhagrus will perform transportation and disposal services with respect to the Clive Railcar Waste and Chattanooga Waste, in accordance with the terms of this Agreement. This Agreement hereby incorporates by reference provisions of the Contract not inconsistent with this Agreement, except for Contract amendments by letters dated July 14, 2000 and March 16, 2001 which are not incorporated herein and the following specific terms and provisions of the Contract, which are specifically excluded from this Agreement: Paragraphs 1, 2, 3, 16(b)(6), 18, 27, 32, and 37. In addition, Schedule C is specifically excluded from this Agreement in its entirety. Attached hereto as Exhibit 1 is a copy of the Contract showing the provisions thereof specifically excluded from this Agreement:

4.    The following language shall be added to Paragraph 17, subsection (c)(i) of the Contract, after the word "Regulations" and specifically incorporated herein as so modified: "provided that Customer does not represent or warrant compliance with paragraph 16(b)(6), and shall not indemnify or otherwise be liable to Zhagrus for breach of paragraph 16(b)(6)."

3

5.  Notwithstanding any other provision of this Agreement, in the event of any inconsistency between this Agreement and any provision of the Contract, this Agreement shall prevail, whether or not such provision of the Contract is listed herein as expressly excluded.

6.  The following price and quantity provisions shall replace paragraph 18 of the Contract:

(a)  The cost of transportation and disposal of the Clive Railcar Waste and the Chattanooga Waste shall be invoiced by Zhagrus to Grace at a rate of $4.80 per cubic foot for disposal and $3.64 per cubic foot for transportation.  Any references or provisions in the Contract to Schedule A, for purposes of this Agreement, shall be deemed to refer or apply only to the Clive Railcar Waste and/or the Chattanooga Waste.  All references or provisions in the Contract to "Waste Material," waste material, or volumes of "Waste Material" or waste material to be disposed under the Contract shall be deemed to refer only to the Clive Railcar Waste and/or Chattanooga Waste.

(b)  The Clive Railcar Waste shall be deemed to consist of 110,020 cubic feet of waste material.

(c)  A total of 122 railcars of Chattanooga Waste shall be transported and disposed under the Contract.  For purposes of this paragraph, each railcar shall be deemed to consist of 2,000 cubic feet of waste, and shall in fact contain at least 2000 cubic feet of waste on average.  Accordingly, the 122 railcars minimum amount shall be deemed to consist of 244,000 cubic feet of waste material.

(d)  Zhagrus shall submit invoices to Grace weekly on Friday of each week for the work performed in the preceding week.

4

(e)  Based on the foregoing prices and quantities, Grace agrees to pay Zhagrus no later than 15 days after receipt of each Zhagrus invoice for the transportation and disposal of the Chattanooga Waste and the Clive Railcar Waste.  Interest will accrue on any delinquent amounts 30 days from the invoice date at one and one-half percent (1.5%) per month (but not to exceed the lawful applicable rate).  Said interest is payable at the time of the delinquent payment.  Grace's total payment to Zhagrus for the transport and disposal of the Clive Railcar Waste and the Chattanooga Waste shall not exceed $2,987,929.00, plus interest, if any, which shall constitute an allowed administrative expense under Section 503(b) of the Bankruptcy Code.

(f)  Zhagrus agrees to transport the Chattanooga Waste within 60 calendar days after shipments resume under this Agreement at a rate of approximately 4 railcars per shipping day.

(g)  If, during the period of time in which Zhagrus is shipping and disposing of either the Clive Railcar Waste or the Chattanooga Waste, Grace desires to ship and dispose of any quantity of additional waste material from the Chattanooga Plant, Zhagrus shall transport and dispose of such additional waste material on a per-railcar basis, subject to the per-unit volume prices, terms, and definitions set forth in this paragraph 6.  In the event that Zhagrus performs such transportation and disposal of such additional waste material from the Chattanooga Plant, Grace's payment limit, referenced in paragraph 6(e) above, shall be raised accordingly and Zhagrus' shipping performance commitment, referenced in paragraph 6(f), shall be increased accordingly.  Any additional waste must be shipped contemporaneously with the Chattanooga Waste so that there is no down time between shipments of additional waste and shipments of Chattanooga Waste.

7.  Subject only to paragraph 6(g) above, the amount of waste to be disposed under this Agreement shall be limited to the Clive Railcar Waste and the Chattanooga Waste described in paragraph 2 of this Agreement, and there shall be no commitment by Grace to dispose of any additional quantities of waste.  Further, there shall be no obligation by Zhagrus to dispose of additional quantities of waste.

8.  The work remaining to be performed under this Agreement involving the disposal of the Clive Railcar Waste and the Chattanooga Waste shall be commenced on or before the next Grace loading day after the entry of an Order of the United States Bankruptcy Court approving this Agreement.

9.  This Agreement is subject to approval by the United States District Court where Grace's Chapter 11 cases are pending, and execution of this Agreement by either party constitutes that party's agreement subject to the Court's approval and paragraph 12 hereof. Grace will prepare a draft motion for such Court's approval as soon as practicable after executing this Agreement and provide that draft to Zhagrus for comments which shall be submitted promptly.  Thereafter, Grace and Zhagrus shall promptly agree on a final motion to be submitted to the Court.

10.  The undersigned acknowledge that they have reviewed this Agreement with their respective counsel, including bankruptcy counsel.  The rule of construction that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

11.  This Agreement, together with the provisions of the Contract incorporated by reference under paragraph 3 of this Agreement, constitutes the entire agreement by and between the undersigned and supersedes any and all amendments to the Contract, agreements,

understandings, negotiations, or discussions, either oral or in writing, express or implied, concerning the subject matter herein between the parties to this Agreement.

12. In the event that this Agreement or any material provision hereof is found by the United States District Court to be invalid or unenforceable, unless otherwise agreed to in writing by all of the parties hereto, this Agreement shall terminate and be of no force or effect.

13. Any modification, amendment or alteration of this Agreement, or any of its terms, shall be in writing and signed by all parties to this Agreement.

14. Each of the parties agrees that it will promptly execute and deliver all such documents and instruments as may be necessary and appropriate to effectuate the terms of this Agreement. The parties agree that monetary damages would be inadequate to remedy a breach of this provision and that specific performance is an appropriate remedy for the breach of this Agreement.

15. Each individual whose signature appears below warrants that he or she possesses the full power, capacity and authority to execute this Agreement on behalf of the party indicated. Each such individual warrants that he or she has read the terms of this Agreement and had the opportunity to review this Agreement with his or her attorney prior to signing.

16. All representations, warranties and agreements set forth in this Agreement shall be deemed continuing and shall survive the execution date of this Agreement.

17. This Agreement may be executed in counterparts and, as so executed, shall constitute one agreement binding on all parties.

18. The undersigned shall each bear his, her or its own attorneys' fees and costs.

7

**IN WITNESS WHEREOF** the undersigned execute this Agreement effective

_May 24_____, 2001.

ATTEST:

W.R. Grace & Co. – Conn.

By: _____

Title: _Vice President_____

_____
Witness

Zhagrus Environmental, Inc.

By: _____

Title: _President_____

_____
Witness

# EXHIBIT 1

00-2590

# LENDING COPY

11/05/99

### ZHAGRUS ENVIRONMENTAL, INC.
### TREATMENT, TRANSPORTATION AND WASTE DISPOSAL AGREEMENT

**THIS AGREEMENT** made and entered into as of this 5th day of Nov._____, 1999, by and between ZHAGRUS ENVIRONMENTAL, INC., a Utah corporation, having its general offices at 46 West Broadway, Suite 125, Salt Lake City, Utah 84101 (hereinafter called "Zhagrus") and Grace Davison, W.R. Grace & Co.-Conn., having its general offices at 4000 N. Hawthorne Street, Chattanooga, TN 37406 (hereinafter called "Customer").

### RECITAL:

A. Customer owns certain property and premises commonly known as the Grace Davison Chattanooga Plant located at 4000 N. Hawthorne Street, Chattanooga, TN, 37406 (hereinafter called "the Site") and certain waste materials (hereinafter called "Waste Material") located at the Site and as identified in Schedule "A," attached hereto and made a part hereof. Customer desires that Zhagrus perform, or cause to be performed, certain work and services (hereinafter called "the Work", as more particularly described in attached Schedule "B," including the disposal of said Waste Material at that certain waste disposal facility at Clive, Utah (hereinafter called "the Facility") owned and operated by Envirocare of Utah, Inc. (hereinafter called "Envirocare"). The Facility has been duly licensed by the State of Utah and the United States Environmental Protection Agency for receipt and disposal of the Waste Material and for treatment of Waste Material, if any, identified in Schedule "A" as to be delivered for both treatment and disposal. Envirocare is under contract to Zhagrus for the treatment and disposal of the Waste Material.

B. Attached hereto, reviewed by Customer, and made a part hereof is Envirocare's Radioactive Materials License #UT2300249, with amendments, issued by the State of Utah, and which permits Envirocare to handle and dispose of the Waste Material. With regard to Waste Material identified in Schedule "A" to be delivered for both treatment and disposal, there is additionally attached hereto that certain statement of issuance of Mixed Waste Permit UTD982598894, with amendments, issued by the State of Utah, and which permits Envirocare to handle and treat such Waste Material. Said license and statement of issuance of Mixed Waste Permit are hereinafter collectively called "Envirocare's License."

C. Zhagrus is capable of performing and/or obtaining the performance of the Work and acknowledges the toxic nature and physical characteristics of the Waste Material, as described in Schedule "A," and is willing to provide or cause to be provided all of the Work, including disposal of the Waste Material and, where necessary, the treatment of the Waste Material for disposal, pursuant to all applicable governmental laws, rules and regulations (hereinafter collectively called the "Regulations") and this Agreement.

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements herein contained, Customer hereby engages Zhagrus to perform and provide and Zhagrus does hereby agree to so perform and provide the Work as described in this Agreement and upon the terms and conditions as herein set forth.



November 5, 1999

Distribution:
Original - Vault
Contracts Office File
L. Durbin

E. Laughlin

Page 1 of 14

00-2590

**4. WASTE MATERIAL.**

(a) The Waste Material with regard to which Zhagrus is to perform the Work is of the type and quantities set forth in Schedule "A."

(b) Zhagrus shall ship the Waste Material in rail cars for disposal only at the Facility. If Zhagrus discovers what it believes to be a material nonconformity in the Waste Material to be shipped, it will, as soon as reasonably possible after discovery, give to Customer a written notice of the characteristics, conditions and circumstances which Zhagrus believes constitutes such nonconformity.

(c) Zhagrus reserves the right to inspect shipments while en route to the Facility and may, at its own expense and without increasing the disposal volume billed to Customer, add commercial absorbents/desiccants in order to maintain compliance with Facility receipt requirements.

**5. TREATMENT.** This contract applies only to Waste Material described in Schedule "A" to be low-level radioactive waste for disposal; and as such, Mixed Waste Treatment is not contemplated herein.

**6. NONCONFORMING WASTE MATERIAL.**

(a) This Section 6 does not apply to Envirocare's free-standing liquids prohibition, nor to packaging, manifesting, or transportation requirements. Conformance with these requirements will be determined by Zhagrus at the Site prior to release of shipments. Should a shipment arrive at the Facility with a free-liquids, packaging, manifesting, or transportation nonconformance, Zhagrus will be responsible for expenses associated with managing such shipment and bringing it into compliance with the appropriate requirement.

(b) Waste Material shall be considered non-conforming if (i) it is not in accordance with the analyses, descriptions, specifications or limitations stated in Customer's approved waste description forms, as required pursuant Schedule "A," or (ii) it has constituents or components, not specifically identified in Customer's approved waste description forms, as required pursuant to Schedule "A."

(c) Upon discovering, or being notified by Envirocare, of any nonconformity, Zhagrus will give written notification to Customer. Zhagrus' contract with Envirocare provides that, in the event that Envirocare discovers any non-conforming situation as described in 6(b) above, Envirocare may, at its sole option, determine how to address the situation. Zhagrus' notice to Customer shall advise of which of the following options Envirocare has elected with regards to the nonconforming Waste Material and, except as limited or precluded by action or demand of governmental regulatory authority, said notification shall be given not less than five (5) working days prior to Envirocare implementing that option. Envirocare, at its sole option: (1) may perform treatment, of the nonconforming Waste Material so to allow disposal, if such Waste Material is treatable and Customer gives written consent to treatment, (2) may remove, or cause any nonconforming Waste Material to be removed, from The Facility, or (3) may perform other suitable management practices that are prudent considering the nature of the nonconforming Waste Material, the Regulations, and discussions with regulatory authority and/or Zhagrus and the Customer. If, within a reasonable time after demand, Zhagrus, on behalf of the Customer, fails or refuses to undertake and complete transporting of the Waste Material from The Facility, then Envirocare may cause the Waste Material to be returned to Customer. In the event that the Waste Material is nonconforming due to a condition identified by paragraph 6(b)(i) or (ii), Zhagrus, at its sole discretion, may charge Customer a Nonconforming Waste Fee. The fee will only include: (1) all direct costs incurred by Zhagrus, or associated with management of the nonconforming Waste Material, (2) Zhagrus' reasonable fees and expenses for any treatment or attempted treatment of the non-conforming Waste Material undertaken with Customer's written consent, (3) any fines and penalties levied against Zhagrus which are due to said non-conforming Waste Material, (4) all costs, expenses, fees or fines charged Zhagrus by Envirocare due to such nonconforming Waste Material, (5) all costs, expenses, and/or fees for or resulting from the receipt of the non-conforming Waste Material and the preparation for removal and/or removal of the non-conforming Waste Material, including analysis and handling of the same, and (6) all costs, expenses and fees in transporting and in preparing to transport the non-conforming Waste Material from The Facility. Such fee shall be paid by Customer without regard to whether transporting of the non-conforming Waste Material from The Facility is caused to be made by Zhagrus or by Customer. Zhagrus shall Invoice Customer for the nonconforming Waste Material in accordance with Paragraph 17. If Zhagrus arranges for return of the non-conforming Waste Material to Customer, the non-conforming Waste Material shall be transported to Customer by such reasonable means of transportation as Zhagrus shall select.

(d) Customer agrees to maintain all necessary licenses and permits and to promptly obtain approval of any necessary licenses and permits to receive all nonconforming Waste Material, as identified by this paragraph, at the Site. Customer may designate an alternate facility that is fully licensed and permitted to accept nonconforming Waste Material.

**7. PACKAGING.** As more particularly described in Schedule "B," Zhagrus shall be responsible for all packages and containers for shipment of Waste Material to the Facility and warrants their compliance with the Regulations, including 49 CFR regulations for radioactive material, and all rules, laws and ordinances which may be applicable to the safety, packaging, storage or transportation of such packages and containers.

**8. TRANSPORTATION AND DELIVERY.** Zhagrus shall transport and deliver the Waste Material or cause it to be transported and delivered to the Facility, in rail cars, in accordance with the Regulations.

November 5, 1999

Page 2 of 14

**9. CUSTOMER INITIAL CLASSIFICATION OF WASTE MATERIAL.** Customer shall supply Zhagrus with results of Customer's initial sampling, testing and classification, together with results of any testing, sampling and other classification of the Waste Material received by Customer from other persons and entities.

**10. ZHAGRUS PERSONNEL -TRAINING AND COMPLIANCE.** Zhagrus shall ensure that all of its personnel engaged in the performance of the Work are properly trained in the performance of their duties, the use of equipment entrusted to them in the performance of those duties, and applicable chain-of-custody procedures. Laboratories used by Zhagrus with regard to applicable testing and sampling shall have a documented Quality Assurance Program in compliance with United States Environmental Protection Agency Guidance Document QAMS-005/80 and shall perform their services regarding the Work in compliance therewith.

**11. QUALITY CONTROL OF THE WORK.** As more particularly described in Schedule "B," Zhagrus shall provide for an on-site inspector during the Work on the Site. On-site inspections shall be conducted to verify compliance with this Agreement and the Regulations, and shall be documented in Zhagrus files. Upon written request by Customer, results of these inspections shall be provided to Customer and such other persons and entities as Customer may reasonably require. Zhagrus shall review all aspects of the Work and any daily reports to verify that the Work is in compliance with this Agreement and shall promptly note and properly resolve any variances and discrepancies before accepting a rail car for shipment from the Site.

**12. PROTECTION OF AND ACCESS TO THE SITE.** Unless otherwise specified in Attachment "B," Customer shall be responsible for providing or causing to be provided protection of the Site from unauthorized entry. Customer shall provide Zhagrus with access to the premises as needed to perform the Work.

**13. SAFETY.** All Zhagrus personnel working at the Site shall meet and comply with all safety standards and requirements imposed by applicable federal, state and local laws and ordinances, as well as Site-specific safety programs monitored and administered by Customer. Zhagrus shall require that its subcontractors engaged in the performance of the Work at the Site require compliance with these safety standards and requirements by their personnel at the Site.

**14. LICENSES AND PERMITS.**

(a) To the extent that additional licenses or permits, not currently held by Customer, are required to perform the Work at the Site Customer shall obtain, or cause to be obtained, all local, state and Federal licenses and permits required from each governmental body having jurisdiction over the Site Work performed at the Site shall be in accordance with the licenses and permits held by Customer.

(b) To the extent that additional licenses or permits, not currently held by Zhagrus, are required to perform that portion of the Work requiring transportation of the Waste Material to the Facility, Zhagrus shall obtain, or cause to be obtained, all local, state and Federal licenses and permits required from each governmental body having jurisdiction over the transportation of the Waste Material to the Facility and shall perform the Work in compliance therewith.

(c) Zhagrus shall immediately notify Customer of any changes to Envirocare's License that affect the ability of Envirocare to receive and/or dispose of the Waste Material described in Schedule "A."

(d) Zhagrus shall immediately notify Customer of any violations of any of its permits or those of Envirocare relating to the transportation, handling and/or disposal of radioactive materials and Zhagrus' or Envirocare's proposed response thereto.

**15. COMPLIANCE WITH LAW.** Zhagrus shall comply with the Regulations and all applicable Federal, state and local laws, ordinances and requirements, including but not limited to, the provisions of the Fair Labor Standards Act of 1938, as amended, and shall require compliance by its subcontractors with the Regulations and all Federal, state and local laws, ordinances and requirements applicable to said subcontractors with regard to the Work and the Waste Material.

**16. REPRESENTATIONS AND WARRANTIES.**

(a) ZHAGRUS.

(1) Zhagrus acknowledges the toxic nature and physical characteristics of all of the Waste Material identified in Schedule "A," and represents and warrants that it is aware of and will comply with the environmental, health and safety requirements for safe handling of the Waste Material in connection with the performance of the Work.

(2) Zhagrus represents and warrants that it has informed its employees and subcontractors of the toxic nature and physical characteristics of the Waste Material identified in Schedule "A" and that it has trained its employees and subcontractors in the environmental, health and safety requirements for safe handling, transportation and disposal of the Waste Material.

(3) Zhagrus represents and warrants that it shall perform its services in compliance with this Agreement and the Regulations. This representation explicitly includes assignability to Customer of subcontractors as contemplated in paragraph 24 below.

(4) Zhagrus represents and warrants that it has all relevant and required skills for the performance of the Work and it is in a position to provide Customer with all required technical and other expert professional assistance specified in the Scope of Work.

November 5, 1999

(5) Zhagrus represents and warrants that the Work it performs hereunder will be in accordance with that degree of care and skill ordinarily exercised by members of the environmental remediation, transportation and disposal industries existing as of the date that such services are performed.

(b) CUSTOMER.

(1) Customer represents and warrants that it has title to the Site and the Waste Material on the Site and has authority to make this Agreement,

(2) Customer represents and warrants that it has no knowledge that the type, radioactive characteristics and quantities of Waste Material, as identified in Schedule "A," are not accurate in all material respects, and

(3) Customer represents and warrants that all Waste Material that is the subject of the Work, shall conform in every material respect to the description contained in Schedule "A," or as contained in an approved amendment to Schedule "A."

(4) Customer acknowledges the toxic nature and physical characteristics of all of the Waste Material identified in Schedule "A," and represents and warrants that it is aware of and will comply with the environmental, health and safety requirements for safe handling of the Waste Material in connection with the performance of the Work.

(5) Customer represents and warrants that it has informed its employees and subcontractors of the toxic nature and physical characteristics of the Waste Material identified in Schedule "A" and that it has trained its employees and subcontractors, excluding Zhagrus and its subcontractors, in the environmental, health and safety requirements for safe handling, transportation and disposal of the Waste Material.

(7) Customer represents and warrants that the Work it and/or its agents performs hereunder will be in accordance with that degree of care and skill ordinarily exercised by members of the environmental remediation industry existing as of the date that such services are performed.

### 17. INDEMNIFICATION.

(a) Zhagrus shall indemnify, defend and save harmless Customer, and Customer's officers, directors, employees, and agents, against any and all liability whatsoever, including all costs, expenses, and/or attorney's fees, which may accrue to or be sustained by the Customer, its officers, directors, employees, and agents, on account of any fine, claim, suit or action made or brought against Customer, its officers, directors, employees, and/or agents for:

(i) the failure of Zhagrus or its subcontractors to comply with the Regulations,

(ii) breach by Zhagrus or its subcontractors of any representation or warranty of Zhagrus contained in paragraph 16,

(iii) failure of Zhagrus or any of its subcontractors to perform any of the obligations required of it or them under this Agreement,

(iv) death of or injury to any person (including, but not limited to the employees of Zhagrus or any of its subcontractors), and for damages to or destruction of property (including the Work and all other existing property of Customer)arising in whole or part from any and all acts or omissions, whether negligent or otherwise, of Zhagrus, any of its subcontractors, the officers, agents or employees of either, or anyone for whose acts Zhagrus or its subcontractors may be liable, while engaged in the performance of the Work or while in or about the buildings or premises of Customer;

provided, however, that Customer shall have the right, without relieving Zhagrus of any obligations hereunder, to participate in the defense of any suit if Customer so elects.

(b) Zhagrus shall indemnify Customer and hold Customer harmless from any and all claims of Zhagrus' subcontractors and from claims for material, labor and services in connection with the performance of the Work. If such claims result in the subjection of the Work or any other assets of Customer to any lien, attachment or encumbrance, Zhagrus and Customer shall each promptly notify the other of all such claims of which it may have knowledge.

(c) Customer shall indemnify, defend and save harmless Zhagrus, and its officers, directors, employees, and agents, against any and all liability whatsoever, including all costs, expenses, and/or attorney's fees, which may accrue to or be sustained by Zhagrus, its officers, directors, employees, and agents, on account of any fine, claim, suit or action made or brought against Zhagrus, its officers, directors, employees, and/or agents for:

(i) the failure of Customer or its subcontractors to comply with the Regulations,

(ii) breach by Customer or its subcontractors of any representation or warranty of Customer contained in paragraph 16,

(iii) failure of Customer or any of its subcontractors to perform any of the obligations required of it or them under this Agreement,

(iv) death of or injury to any person (including, but not limited to the employees of Customer or any of its subcontractors), and for damages to or destruction of property (including the Work and all other existing property of Customer)arising in whole or part from any and all acts or omissions, whether negligent or otherwise, of Customer, any of its subcontractors, the

Page 4 of 14

November 5, 1999

officers, agents or employees of either, or anyone for whose acts Customer or its subcontractors may be liable, while engaged in the performance of the Work or while in or about the buildings or premises of Customer,

provided, however, that Zhagrus shall have the right, without relieving Customer of any obligations hereunder, to participate in the defense of any suit if Zhagrus so elects.

(d)  Neither party hereto shall be liable to the other for special, indirect or consequential damages, including, without limitation, loss of business or lost profits.



**19.  WASTE TREATMENT EVALUATION REVIEW.** This contract applies only to Waste Material described in Schedule "A" to be low-level radioactive waste for disposal; and as such, Mixed Waste Treatment is not contemplated herein.

**20.  TITLE TO WASTE MATERIAL.**

(a)  Upon Zhagrus accepting and taking possession at The Site of Waste Material not requiring treatment and conforming to the requirements of this Agreement, title, risk of loss, and all other incidents of ownership of that Waste Material shall thereupon transfer from Customer to Zhagrus. Customer shall, upon request by Zhagrus, sign and deliver to Zhagrus on an approved form, a bill of lading to all Waste Material accepted by Zhagrus for transport to The Facility. Customer shall have no right to recovery of any material contained in the Waste Material accepted by Zhagrus for transport to The Facility nor any credit for its potential value. Title to nonconforming Waste Material shall not transfer to Zhagrus and shall remain vested in Customer. Customer shall remain obligated in accordance with paragraph 6, with regard to removal from The Facility of nonconforming Waste Material.

(b)  Upon Envirocare accepting and taking possession at The Facility of Waste Material not requiring treatment and conforming to the requirements of this Agreement, title, risk of loss, and all other incidents of ownership of that Waste Material shall thereupon transfer from Zhagrus to Envirocare. Customer shall have no right to recovery of any material contained in the Waste Material accepted by Envirocare for disposal at The Facility nor any credit for its potential value. Title to nonconforming Waste Material shall not transfer to Envirocare and shall remain vested in Customer. Customer shall remain obligated in accordance with paragraph 6, with regard to removal from The Facility of nonconforming Waste Material.

**21.  LIABILITY COVERAGE.** Zhagrus shall maintain, at its expense, at least the following liability insurance coverage during the time that it is performing or providing for the performance of the Work under this Agreement.

|     | COVERAGE | LIMITS |
|-----|----------|--------|
| (a) | Workmen's Compensation | Statutory |
| (b) | Employer's Liability | $1,000,000 each occurrence |
| (c) | General Liability | $5,000,000 each claim |
|     | (Bodily Injury and | $5,000,000 aggregate limit |
|     | Property Damage) | |
| (d) | Automotive Liability | $1,000,000 combined single limit |
|     | (Bodily Injury and | |
|     | Property Damage) | |
| (e) | Contractor's Pollution Liability | $10,000,000 each occurrence |
|     | | $25,000,000 aggregate limit |

November 5, 1999

Page 5 of 14

FROM W.R. GRACE LEGAL SERVICES                (FRI) 4. 6'01 15:08/ST. 15:04/NO. 4261961?9

Such policies shall provide that they may not be cancelled or modified unless at least thirty (30) days' written notice shall have been given to Customer and shall name Customer as an additional insured. Zhagrus shall provide copies of such policies to Customer prior to beginning the Work.

**22. FORCE MAJEURE.**
a) The performance of this Agreement, except for the payment of money owing for work and services actually rendered hereunder, may be suspended by either party in the event of national defense requirements, any act of God, war, riot, fire, explosion, accident, flood, sabotage, an order, directive or request of an authorized governmental agency (including the Northwest or Southeast Interstate Compact Commission) that delivery, transportation, acceptance, treatment or disposal of the Waste Material be suspended or terminated, the lack of adequate fuel, power, any material noncompliance by the other party with the Regulations, governmental requirements, law, regulations, orders or actions, a breakage or failure of machinery or apparatus, any labor trouble, strike, lockout or injunction (provided that neither party shall be required to settle a labor dispute against its own best judgment), or any event beyond the reasonable control of such party, which event prevents the Work, any material part thereof or the transportation, delivery, acceptance, treatment or disposal of the Waste Material.

b) The performance of this Agreement, except for the payment of money owing for work and services actually rendered thereunder, may be suspended or terminated by either party in the event of unforeseen, and beyond the reasonable control of either party, increases in costs associated with performing respective portions of the Work; specifically, taxes, tariffs, or fees assessed or substantially increased subsequent to the execution of this Agreement. The party incurring such costs retains the option to absorb such costs at its discretion.

**23. INDEPENDENT CONTRACTOR.** Zhagrus and Customer are each separate entities. Neither of them, nor their employees or agents, shall be deemed to be employees or agents of the other.

**24. SUBCONTRACTORS.** Zhagrus shall not subcontract the Work or any part thereof without the prior written consent of Customer. Said consent will not be unreasonably withheld by Customer. Customer hereby consents to Zhagrus subcontracting with Envirocare and with CSX/Union Pacific. Any subcontract authorized hereunder shall contain a provision obligating the subcontractor to perform directly for Customer in the event this Agreement and/or the pertinent portion thereof is terminated and Customer should elect, at its sole option, to assume such subcontract. Zhagrus shall be responsible to Customer for all actions of all subcontractors on the job as to their workmanship, responsibility, observance of law, securing all permits and for whatever service Zhagrus may expect the subcontractor to render.

**25. WAIVER.** Any waiver by either party of the breach of any provision or condition of this Agreement shall not be construed or deemed to be a waiver of a subsequent breach of the same provision or condition, unless such waiver be expressed in writing and signed by the party to be bound.

**26. NOTICE.** Any notice, communication or statement required or permitted to be given hereunder shall be in writing and deemed to have been sufficiently given when delivered in person or by mail, postage prepaid, or by telefax machine, confirmed by mail, addressed as follows:

CUSTOMER:

W.R. Grace & Co.-Conn.
400 North Hawthorne Street
Chattanooga, TN 37406
Attention: Mr. Ed Laughlin

Telephone # (423) 697-8217
Telefax # (423) 624-2291

With a copy to:
Division Counsel--Grace Davison
W.R. Grace & Co.-Conn.
7500 Grace Drive
Columbia, Maryland 21044

Telephone # (410) 531-4000
Telefax # (410) 531-4783

ZHAGRUS:

Zhagrus Environmental, Inc.
46 West Broadway, Suite 240
Salt Lake City, Utah 84101
Attention: Mr. Al Rafati

Telephone # (801) 595-0299
Telefax # (801) 595-8805

or at such other address as a party shall hereafter, in writing, direct.



November 5, 1999

Page 6 of 14

FROM W. R. GRACE LEGAL SERVICE                    (FRI) 4. 5'01



**28. CONFIDENTIALITY.** The parties shall treat as confidential property and not disclose to others during or subsequent to the term of this Agreement, except as is necessary to perform this Agreement hereunder and then only on a confidential basis satisfactory to both parties, any information, including technical information, experience or data, regarding the other party's plans, programs, plans, processes, products, disposal costs, equipment, operations, customers and/or the specific confidential terms contained herein which may come within the knowledge of the parties, their officers or their employees in the performance of this Agreement without in each instance securing the prior written consent of the other party. Zhagrus shall also treat as confidential and shall not disclose to others, except as required by law, governmental rules, regulations and/or orders, information relating to the composition of the Waste Material, any treatment performed and/or the quantity of Waste Material delivered to it by Customer. Zhagrus may disclose to its agents and contractors information relating to the composition, type, treatment and quantity of the Waste Material as required to perform this Agreement, without written authorization from Customer, including but not limited to its general contractor, its laboratories and contractors performing special treatment services. Nothing herein, however, shall prevent either Zhagrus or Customer from disclosing to others or using in any manner information which either party can show:

(a) Has been published and become part of the public domain other than by acts, omissions, or fault of Zhagrus or Customer or their employees.

(b) Has been furnished or made known to Zhagrus or Customer by third parties other than those acting directly or indirectly for, or on behalf of, Zhagrus or Customer as a matter of legal right without restriction against disclosure.

(c) Was in the other party's possession prior to the disclosure thereof by Zhagrus or Customer to each other.

(d) Is supplied to a governmental agency pursuant to its request, but only after giving prior notice and opportunity to comment to the other party.

**29. SURVIVAL.** The representations, warranties, covenants, and agreements made herein shall survive expiration and/or termination of this Agreement.

**30. AMENDMENT/ASSIGNMENT.** This Agreement may be amended or assigned only by the written agreement of the parties.

**31. BINDING.** This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and permitted assigns.



**33. APPLICABLE LAW.** This Agreement is entered into in the County of Salt Lake, State of Utah and shall be governed and construed in accordance with the laws of the State of Utah.

**34. HEADINGS AND PARAGRAPH NUMBERS.** Headings and paragraph numbers have been inserted herein solely for convenience and reference and shall not be construed to affect the meanings, construction or effect of this Agreement.

**35. COUNTERPARTS.** This Agreement may be executed in any number of counterparts, each of which may be executed by less than all of the parties hereto, each of which shall be enforceable against the parties actually executing such counterparts, and all of which together shall constitute one instrument.

Page 7 of 14

November 5, 1999

FROM W. R. GRACE LEGAL SERVICES                    (FRI) 4. 6'01 15:08/ST. 15:04/NO. 4260951751 2

**36. SEVERABILITY.** In the event that any provision of this Agreement becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, the Agreement shall continue in full force and effect without the said provision, provided that no such severability shall be effective if it materially changes the economic benefit of this Agreement to any party.



IN WITNESS WHEREOF, Customer and Zhagrus have each caused this Agreement to be executed by its duly authorized representative(s) on this day and year set forth below, effective as of the date of the last signature.

ZHAGRUS ENVIRONMENTAL, INC.

By: _____

Title: **EVP**

Date signed: **11-5-99**

W. R. Grace & Co.-Conn.

By: _____

Title: **Vice President - EHS**

Date signed: **11/11/99**
                        (CUSTOMER)

| Contract Review Approval | | |
|---|---|---|
| Dept. | Date | Initial |
| Legal | 11/5/99 | |

**GUARANTY**

WHEREAS, in order to permit Zhagrus to proceed with the Work, Customer has required that Envirocare execute and deliver this Guaranty of performance of all obligations required under the foregoing Agreement;

NOW, THEREFORE, in consideration of the premises and to induce Customer to proceed with the Agreement, Envirocare agrees as follows:

1. Envirocare unconditionally and irrevocably guarantees to Customer (i) the full availability of disposal pricing and capacity commitments contained in the Agreement in accordance with the terms and conditions applicable to such pricing and capacity commitments in the Agreement, and (ii) the payment of all costs, expenses and charges (including court costs and reasonable attorneys' fees) paid or incurred by Customer in realizing upon or enforcing this Guaranty.

2. In any right of action which shall accrue to Customer by virtue of this Guaranty, Customer, at its election, may proceed against Envirocare with or without (i) joining Zhagrus in any such action, or (ii) commencing any action against or obtaining any judgment against Zhagrus.

IN WITNESS WHEREOF, Envirocare has executed and delivered this Guaranty as of the date set forth at the beginning of the Agreement.

Envirocare of Utah, Inc.

By: _____

Title: **SRVP**

Date: **11-5-99**

November 5, 1999

| Contract Review Approval | | |
|---|---|---|
| Dept. | Date | Initial |
| Legal | 11/5/99 | |

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JJF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## ORDER APPROVING THE DEBTOR'S
## SETTLEMENT AND PERFORMANCE AGREEMENT

Upon the motion (the "Motion")[2] of W. R. Grace & Co. - Conn., a debtor and debtor

in possession in the above-captioned chapter 11 cases (the "Debtor"), seeking the entry of an Order

approving the Debtor's Settlement Agreement, pursuant to 11 U.S.C. §§ 105, 363 and 365; it

appearing that the relief requested in the Motion is in the best interests of the Debtor's estate, its

creditors and other parties in interest; and it appearing that this proceeding is a core proceeding

pursuant to 28 U.S.C. § 157(b); and it appearing that venue of this proceeding and this Motion is

proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Motion having been given; and after due deliberation and cause appearing therefor; it is hereby

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Capitalized terms not defined herein have the meaning ascribed thereto in the Motion.

FOUND AND DETERMINED THAT the Debtor has articulated good and sufficient reasons for the proposed Settlement Agreement.[3]

NOW, THEREFORE, IT IS

ORDERED that the Motion is granted; and it is further

ORDERED that the Settlement Agreement is hereby approved; and it is further

ORDERED that Zhagrus shall have an allowed unsecured claim of $6,850,000 and upon completion of performance under the Settlement Agreement, an allowed administrative expense claim of $2,987,929 plus interest, if any; and it is further

ORDERED that in accordance with section 365 of the Bankruptcy Code, the Debtor is authorized to reject the Contract as of the Petition Date; and it is further

ORDERED that the Debtor is authorized to take whatever action as may be necessary to consummate the transactions contemplated by the Settlement Agreement, substantially in the form of Exhibit A attached to the Motion; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order; and it is further

ORDERED that this Order is effective immediately upon its entry.

Wilmington, Delaware
Dated: _____

                                        _____
Joseph J. Farnan, Jr.
United States District Judge

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052. Statements made by the Court from the bench at the hearing shall constitute additional conclusions of law and findings of fact as appropriate.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (RJN) |
| | ) | Jointly Administered |
| Debtors. | ) | |

## AFFIDAVIT OF SERVICE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | SS: |
| COUNTY OF NEW CASTLE | ) | |

Vanessa A. Preston, being duly sworn according to law, deposes and says that she

is employed by the law firm of Pachulski, Stang, Ziehl, Young & Jones P.C. and that on the 4th

day of June, 2001, she caused a copy of the following document(s) to be served upon the

attached service list in the manner indicated:

1.    **Motion of Debtors to Shorten Notice Period and Approve Form and Manner
      Thereof**


2.    **Notice of Motion of the Debtors for the Entry of an Order Approving the Settlement
      and Performance Agreement**

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

3.    **Motion of the Debtor for the Entry of an Order Approving the Settlement and Performance Agreement**

Dated:  June 4, 2001

Vanessa A. Preston

Sworn to and subscribed before
me this 4th day of June, 2001

Notary Public
My Commission Expires:    7/1/01

W. R. Grace 2002 Service List
Case No. 01-1139 (RJN)
Doc. No. 22588
June 4, 2001
14 – Hand Delivery
07 – Federal Express
95 – First Class Mail

(Counsel to Debtors and Debtors in
Possession)
Laura Davis Jones, Esquire
David Carickhoff, Esquire.
Pachulski, Stang, Ziehl, Young & Jones
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

(Counsel to Debtors and Debtors in
Possession)
Hamid R. Rafatjoo, Esquire
Pachulski, Stang, Ziehl, Young & Jones
10100 Santa Monica Boulevard, Suite 1100
Los Angeles, CA 90067-4100

*Hand Delivery*
(Copy Service)
Parcels, Inc.
Vito I. DiMaio
10th & King Streets
Wilmington, DE 19801

*Hand Delivery*
(Local Counsel to DIP Lender)
Steven M. Yoder, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899

*Hand Delivery*
(Local Counsel to Asbestos Claimants)
William P. Bowden, Esquire
Matthew G. Zaleski, III, Esquire
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899

*Hand Delivery*
William H. Sudell, Jr., Esquire
Eric D. Schwartz, Esquire
Morris, Nichols Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

*Hand Delivery*
(Counsel for The Chase Manhattan Bank)
Mark D. Collins, Esquire
Deborah E. Spivack, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

*Hand Delivery*
Jeffrey C. Wisler, Esquire
Michelle McMahon, Esquire
Connolly Bove Lodge & Hutz LLP
1220 Market Street, 10th Floor
Wilmington, DE 19899

*Hand Delivery*
(Counsel for Ingersoll-Rand Fluid Products)
Francis A. Monaco, Jr., Esquire
Walsh, Monzack and Monaco, P.A.
1201 N. Orange Street, Suite 400
P.O. Box 2031
Wilmington, DE 19801

*Hand Delivery*
(Counsel for Ingersoll-Rand Fluid Products)
Frederick B. Rosner, Esquire
Walsh, Monzack and Monaco, P.A.
1201 N. Orange Street, Suite 400
Wilmington, DE  19801

*Hand Delivery*
(Counsel for Property Damage Claimants)
Michael B. Joseph, Esquire
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE  19899

*Hand Delivery*
Bruce E. Jameson, Esquire
Prickett, Jones & Elliott
1310 King Street
P.O. Box 1328
Wilmington, DE  19899

*Hand Delivery*
Mark S. Chehi
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE  19899-0636

*Hand Delivery*
Joseph Grey, Esquire
Stevens & Lee
300 Delaware Avenue, Suite 800
Wilmington, DE  19801

*Hand Delivery*
(Counsel to Official Committee of
Unsecured Creditors)
Michael R. Lastowski, Esquire
Duane, Morris & Heckscher LLP
1100 North Market Street, Suite 1200
Wilmington, DE  19801-1246

*Hand Delivery*
Mary M. MaloneyHuss
Wolf, Block, Schorr and Solis-Cohen LLP
920 King Street, Suite 300
One Rodney Square
Wilmington, DE  19801

*Federal Express*
(Counsel to Debtor)
James H.M. Sprayregen, Esquire
James Kapp, III, Esquire
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL  60601

*Federal Express*
(United States Trustee)
Frank J. Perch, Esquire
Office of the United States Trustee
601 Walnut Street, Curtis Center,
Suite 950 West
Philadelphia, PA  19106

*Federal Express*
(Canadian counsel for Debtor)
Derrick Tay, Esquire
Meighen Demers
P.O. Box 8705, Box 11, Merrill Lynch
Canada Tower
Sun Life Center, 200 Kint Street West
Toronto, Ontario M5H 3T4
CANADA

*Federal Express*
(W. R. Grace & Co.)
David B. Siegel
W.R. Grace and Co.
7500 Grace Drive
Columbia, MD  21044

*Federal Express*
(Official Committee of Personal Injury
Claimants)
Elihu Inselbuch, Esquire
Rita Tobin, Esquire
Caplin & Drysdale, Chartered
399 Park Avenue, 36th Floor
New York, NY 10022

*Federal Express*
(Official Committee of Unsecured
Creditors)
Lewis Kruger, Esquire
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982

*Federal Express*
(Official Committee of Property Damage
Claimants)
Scott L. Baena, Esquire
Member
Bilzin Sumberg Dunn Baena Price &
Axelrod LLP
First Union Financial Center
200 South Biscayne Blvd, Suite 2500
Miami, FL 33131

*First Class Mail*
(Counsel to Sealed Air Corporation)
D. J. Baker, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

*First Class Mail*
(Counsel to DIP Lender)
J. Douglas Bacon, Esquire
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL 60606

*First Class Mail*
(Counsel to Asbestos Claimants)
Nancy Worth Davis, Esquire
Ness, Motley, Loadhold, Richardson &
Poole
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465

*First Class Mail*
Todd Meyer, Esquire
Kilpatrick Stockton
1100 Peachtree Street
Atlanta, GA 30309

*First Class Mail*
Securities & Exchange Commission
15th & Pennsylvania Ave. N.W.
Washington, DC 20020

*First Class Mail*
District Director
IRS
409 Silverside Road
Wilmington, DE 19809

*First Class Mail*
Securities & Exchange Commission
Atlanta Regional Office
Branch/Reorganization
3475 Lenox Road, NE, Suite 100
Atlanta, GA 30326-1232

*First Class Mail*
Secretary of Treasurer
P.O. Box 7040
Dover, DE 19903

*First Class Mail*
Secretary of State
Division of Corporations
Franchise Tax
P.O. Box 7040
Dover, DE 19903

*First Class Mail*
James D. Freeman, Esquire
U.S. Department of Justice
Environmental Enforcement Section
999 18th Street
Suite 945-North Tower
Denver, CO  80202

*First Class Mail*
Jon L. Heberling, Esquire
McGarvey, Heberling, Sullivan &
McGarvey PC
745 South Main Street
Kalispel, MT  59901

*First Class Mail*
Patrick L. Hughes, Esquire
Haynes & Boone LLP
1000 Louisiana Street, Suite 4300
Houston, TX  77002-5012

*First Class Mail*
David S. Heller, Esquire
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL  60606

*First Class Mail*
Charles E. Boulbol, Esquire
26 Broadway, 17th Floor
New York, NY  10004

*First Class Mail*
Ira S. Greene, Esquire
Squadron, Ellenoff, Plesent & Sheinfeld,
LLP
551 Fifth Avenue
New York, NY  10176

*First Class Mail*
James A. Sylvester, Esquire
Intercat, Inc.
104 Union Avenue
Manasquan, NJ  08736

*First Class Mail*
Steven J. Johnson, Esquire
Gibson, Dunn & Crutcher LLP
1530 Page Mill Road
Palo Alto, CA  94304-1125

*First Class Mail*
Charlotte Klenke, Esquire
Schneider National, Inc.
P.O. Box 2545
3101 S. Packerland
Green Bay, WI  54306

*First Class Mail*
David S. Rosenbloom, Esquire
Jeffrey E. Stone, Esquire
Lewis S. Rosenbloom, Esquire
McDermott, Will & Emery
227 West Monroe Street
Chicago, IL  60606-5096

*First Class Mail*
Brad Rogers, Esquire
Office of the General Counsel
Pension Benefit Guaranty Corp
1200 K. Street, N. W.
Washington, D.C.  20005-4026

*First Class Mail*
Pamela Zilly
Richard Shinder
David Blechman
Michael Alexander
The Blackstone Group
345 Park Avenue
New York, NY  10154

*First Class Mail*
Josiah Rotenberg
Lazard Freres & Co. LLC
30 Rockefeller Plaza, 60th
New York, NY  10020

*First Class Mail*
(Counsel for The Chase Manhattan)
Stephen H. Case, Esquire
Nancy L. Lazar, Esquire
David D. Tawil, Esquire
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

*First Class Mail*
Jan M. Hayden
William H. Patrick
Heller, Draper, Hayden, Patrick & Horn,
L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130-6103

*First Class Mail*
Joseph F. Rice
Ness, Motley, Loadholt, Richardson &
Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465

*First Class Mail*
Nancy Worth Davis
Ness, Motley, Loadholt, Richardson &
Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465

*First Class Mail*
(Counsel for Asbestos Claimants)
Steven T. Baron, Esquire
Member
Silber Pearlman, LLP
2711 North Haskell Avenue, 5th Floor, LLP
Dallas, TX 75204

*First Class Mail*
Bankruptcy Administration
IOS Capital, Inc.
1738 Bass Road
P.O. Box 13708
Macon, GA 31208-3708

*First Class Mail*
(Attorneys for PPG Industries, Inc.)
W.J. Winterstein, Jr., Esquire
John J. Winter, Esquire
William M. Aukamp, Esquire
Eleven Penn Center, 29th Floor
1835 Market Street
Philadelphia, PA 19103

*First Class Mail*
R. Scott Williams
PMG Capital Corp.
Four Falls Corporate Center
West Conshohocken, PA 19428-2961

*First Class Mail*
Alan R. Brayton, Esquire
Brayton & Purcell
222 Rush Landing Road
Novato, CA 94945

*First Class Mail*
Jonathan W. Young
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive, Suite 3000
Chicago, IL 60606-1229

*First Class Mail*
Russell W. Budd
Alan B. Rich
Baron & Budd, P.C.
3102 Oak Lawn Avenue, P.O. Box 8705
Dallas, TX 75219

*First Class Mail*
Shelby A. Jordan, Esquire
Nathaniel Peter Holzer. Esquire
Jordan, Hyden, Womble & Culbreth, P.C.
500 N. Shoreline Blvd., Suite 900
Corpus Christi, TX  78471

*First Class Mail*
Courtney M. Labson, Esquire
The Mills Corporation
Legal Department
1300 Wilson Boulevard, Suite 400
Arlington, VA  22209

*First Class Mail*
T. Kellan Grant
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive, Suite 3000
Chicago, IL  60606-1229

*First Class Mail*
Cindy Schultz
Ingersoll-Rand Fluid Products
One Aro Center
P.O. Box 151
Bryan, OH  43506

*First Class Mail*
Alan Kolod, Esquire
Moses & Singer LLP
1301 Avenue of the Americas
40th Floor
New York, NY  10019-6076

*First Class Mail*
Mr. Thomas Moskie
Bankers Trust Company
Four Albany Street
Fourth Floor
New York, NY  10006

*First Class Mail*
John P. Dillman, Esquire
Linebarger Heard Goggan Blair
Graham Peña & Sampson, LLP
P.O. Box 3064
Houston, TX  77253-3064

*First Class Mail*
Charles E. Gibson, III
Attorney at Law
620 North Street, Suite 100
Jackson, MS  39202

*First Class Mail*
Paul M. Baisier, Esquire
SEYFARTH SHAW
1545 Peachtree Street
Suite 700
Atlanta, Georgia  30309

*First Class Mail*
Kevin D. McDonald
Wilshire Scott & Dyer, P.C.
One Houston Center
1221 McKinney, Suite 4550
Houston, Texas  77010

*First Class Mail*
Christopher Beard, Esquire
Beard & Beard
306 N. Market Street
Frederick, MD  21701

*First Class Mail*
Bernice Conn, Esquire
Robins, Kaplan, Miller & Ciresi LLP
2049 Century Park East, Suite 3700
Los Angeles, CA  90067

*First Class Mail*
Steven R. Schlesinger, Esquire
Jaspan Schlesinger Hoffman LLP
300 Garden City Plaza
Garden City, NY  11530

*First Class Mail*
Steven J. Kherkher, Esquire
Laurence G. Tien, Esquire
Williams Bailey Law Firm, L.L.P.
8441 Gulf Freeway, Suite #600
Houston, Texas  77017

*First Class Mail*
Kimberly W. Osenbaugh
Preston Gates & Ellis LLP
701-5th Avenue
Suite 5000
Seattle, WA  98104-7078

*First Class Mail*
Lewis T. LeClair, Esquire
McKool Smith
300 Crescent Court, Suite 1500
Dallas, Texas  75201

*First Class Mail*
Delta Chemical Corporation
2601 Cannery Avenue
Baltimore, MD  21226-1595

*First Class Mail*
Steven T. Hoort, Esquire
Ropes & Gray
One International Place
Boston, Massachusetts  02110-2624

*First Class Mail*
Peter Van N. Lockwood, Esquire
Julie W. Davis, Esquire
Trevor W. Swett, III, Esquire
Nathan D. Finch, Esquire
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC  20005

*First Class Mail*
Peter A. Chapman
24 Perdicaris Place
Trenton, NJ  08618

*First Class Mail*
Paul M. Matheny
The Law Offices of Peter G. Angelos, P.C.
5905 Harford Rd.
Baltimore, MD  21214

*First Class Mail*
Michael J. Urbis
Jordan, Hyden, Womble & Culbreth, P.C.
2390 Central Blvd, Suite G
Brownsville, TX  78520

*First Class Mail*
Mary A. Coventry
Sealed Air Corporation
Park 80 East
Saddle Brook, New Jersey  07663

*First Class Mail*
Margery N. Reed, Esquire
Duane, Morris & Heckscher LLP
4200 One Liberty Place
Philadelphia, PA  19103-7396

*First Class Mail*
Attn: Meridee Moore and Kirsten Lynch
Farallon Capital Management, L.L.C.
One Maritime Plaza
Suite 1325
San Francisco, California  94111

*First Class Mail*
John M. Klamann
Klamann & Hubbard
7101 College Blvd., Suite 120
Overland Park, KS  66210

*First Class Mail*
Joseph T. Kremer, Esquire
Lipsiptz, Green, Fahringer, Roll, Salisbury
& Cambria, LLP
42 Delaware Avenue, Suite 300
Buffalo, NY  14202

*First Class Mail*
Paul D. Henderson, Esquire
Dies, Dies & Henderson
1009 W. Green Avenue
Orange, TX  77630

*First Class Mail*
Robert Jacobs, Esquire
Maria Rosoff Eskin
Jacobs & Crumplar, P.A.
2 East 7th Street
P.O. Box 1271
Wilmington, DE  19899

*First Class Mail*
Elizabeth S. Kardos, Esquire
Gibbons, Del Deo, Dolan Griffinger &
Vecchione, PC
One Riverfront Plaza
Newark, NJ  07102-5497

*First Class Mail*
Thomas J. Noonan, Jr.
c/o R& S Liquidation Company
5 Lyons Mall PMB #530
Basking Ridge, NJ  07920-1928

*First Class Mail*
)
Harry Lee, Esquire
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, DC  20036

*First Class Mail*
(Counsel for Public Service Electric and Gas
Company)
William E. Frese, Esquire
Attn:  Sheree L. Kelly, Esquire
80 Park Plaza, T5D
P.O. Box 570
Newark, NJ  07101

*First Class Mail*
(Counsel to Official Committee of
Unsecured Creditors)
William S. Katchen, Esquire
Duane, Morris & Heckscher LLP
1 Riverfront Plaza, 2nd Floor
Newark, NJ  07102

*First Class Mail*
(Tennessee Department of Environment and
Conservation – Superfund)
Paul G. Sumers, Esquire
TN Attorney General's Office, Bankr. Unit
P.O. Box 20207
Nashville, TN  37202-0207

*First Class Mail*
(Counsel for numerous asbestos claimants)
Damon J. Chargois, Esquire
Foster & Sear, L.L.P.
360 Place Office Park
1201 N. Watson Road, Suite 145
Arlington, TX  76006

*First Class Mail*
(Counsel for Berry & Berry)
C. Randall Bupp, Esquire
Plastiras & Terrizzi
24 Professional Center Parkway
Suite 150
San Rafael, CA  94903

*First Class Mail*
Anton Volovsek
Rt2 – Box 200 #42
Kamiah, Idah  83536-9229

*First Class Mail*
Peter S. Goodman, Esquire
Andrews & Kurth LLP
805 Third Avenue
New York, New York  10022

*First Class Mail*
Jonathan H. Alden, Esquire
Assistant General Counsel
3900 Commonwealth Boulevard, MS 35
Tallahassee, Floria 32399-3000

*First Class Mail*
Credit Lyonnais
1301 Avenue of the Americas
New York, New York 10019-0602

*First Class Mail*
State Library of Ohio
c/o Michelle T. Sutter
Revenue Recovery
101 E. Town Street, Second Floor
Columbus, OH 43215

*First Class Mail*
Rosa Dominy
Bankruptcy Administration
IOS Capital, Inc.
1738 Bass Road
P.O. Box 13708
Macon, GA 31208-3708

*First Class Mail*
Robert Jacobs, Esquire
Jacobs & Crumplar, P.A.
2 East 7th Street
P.O. Box 1271
Wilmington, DE 19899

*First Class Mail*
Greif Bros. Corp.
250 East Wilson Bridge Rd.
Suite 175
Worthington, OH 4308

*First Class Mail*
(Counsel for SAP America, Inc.)
Stephanie Nolan Deviney
Brown & Connery, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108

*First Class Mail*
Barbara M. Cook, County Solicitor
Katherine L. Taylor, Senior Assistant
County Solicitor
Howard County Office of Law
George Howard Building
3430 Courthouse Drive
Ellicott City, Maryland 21043

*First Class Mail*
Danice Sims
P.O. Box 66658
Baton Rouge, Louisiana 70896

*First Class Mail*
M. Diane Jasinski, Esquire
Michael D. Hess
Corporation Counsel of the City of New
York
100 Church Street, Room 6-127
New York, New York 10007

*First Class Mail*
Janet Napolitano
Robert R. Hall
Russell W. Savory
1275 West Washington Street
Phoenix, Arizona 85007-1278

*First Class Mail*
Russell W. Savory
Gotten, Wilson & Savory, PLLC
200 Jefferson Avenue, Suite 900
Memphis, Tennessee 38103

*First Class Mail*
Credit Manager
Belz Enterprises
100 Peabody Place, Suite 1400
Memphis, Tennessee 38103

*First Class Mail*
James P. Ruggeri
Scott A. Shail
Hogan & Harton L.L.P.
555 Thirteenth Street,.N.W.
Washington, D.C.  20004-1109

*First Class Mail*
Steven R. Bourne, Esquire
Nutter, McClennen & Fish, LLP
One International Place
Boston, MA  02110-2699

*First Class Mail*
Judy D. Thompson, Esquire
S. Andrew Jurs, Esquire
Poyner & Spruill, L.L.P.
100 North Tryon Street, Suite 4000
Charlotte, North Carolina  28202-4010

*First Class Mail*
Daniel H. Slate, Esquire
Hughes Hubbard & Reed LLP
350 South Grand Avenue
Los Angeles, CA  90071-3442

*First Class Mail*
Andrea L. Hazzard, Esquire
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY  10004-1482

*First Class Mail*
Mr. James A. Bane
KMCC 204029
P.O. Box 710
Keen Mountain, VA  24624

*First Class Mail*
Authur Stein, Esquire
1041 W. Lacey Road
P.O. Box 1070
Forked River, NJ  08731-6070

*First Class Mail*
Robert H. Rosenbaum, Esquire
M. Evan Meyers, Esquire
Meyers, Rodbell & Rosenbaum, P.A.
Berkshire Building
6801 Kenilworth Avenue, Suite 400
Riverdale, Maryland 20737-1385

*First Class Mail*
Maggie De La Rosa
Provost * Umphrey
Law Firm, L.L.P.
490 Park Street
Beaumont, Texas  77701

*First Class Mail*
Anne Marie P. Kelley, Esquire
Dilworth Paxson, LLP
LibertyView – Suite 700
457 Haddonfield Road
P.O. Box 2570
Cherry Hill, NJ  08034