**ORIGINAL**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-1139 (JJF) |
| | ) | |
| Debtors. | ) | Jointly-Administered |
| | ) | |
| | ) | **Objections due by: 6/29/01 @ 4:00 p.m.** |
| | ) | **Hearing Date: 7/19/01 @ 12:00 p.m.** |

## NOTICE OF MOTION

TO:   All Parties on the 2002 Service List

The Official Committee of Asbestos Property Damage Claimants and the Official Committee of Asbestos Personal Injury Claimants have filed the Joint Motion by the Official Committee of Asbestos Property Damage and Asbestos Personal Injury Claimants for Authority to Prosecute Fraudulent Transfer Claims.

You are required to file a response to the attached motion on or before **June 29, 2001, at 4:00 p.m.**

At the same time, you must also serve a copy of the response upon Movant's attorneys:

Michael B. Joseph, Esquire
Theodore J. Tacconelli, Esquire
Ferry & Joseph, P.A.
824 Market Street, Suite 094
Wilmington, Delaware 19801
(302) 575-1555

Scott L. Baena, Esquire
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod, LLP
2500 First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2336
(305) 374-7580

Elihu Inselbuch, Esquire
Caplin & Drysdale, Chartered
399 Park Avenue, 36th Floor
New York, NY 10022
(212) 319-7125

Matthew G. Zaleski, III, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 654-1888

Peter Van N. Lockwood, Esquire
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005
(202) 862-5000

HEARING ON THE MOTION WILL BE HELD ON **July 19, 2001, at 12:00 p.m.**

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF DEMANDED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

FERRY & JOSEPH, P.A.

_____
Theodore J. Tacconelli, Esq. (No.2678)
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
(302) 575-1555
Proposed Local Counsel for the Official
Committee of Asbestos Property Damage
Claimants

-and-

ABSHBY & GEDDES

_____
Matthew G. Zaleski, III, Esq. (No. 3557)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 654-1888
Proposed Local Counsel for the Official
Committee of Asbestos Personal Injury
Claimants

-and-

Bilzin, Sumberg, Dunn, Baena, Price
& Axelrod, LLP
Scott L. Baena, Esquire
2500 First Union Financial Center
200 South Biscayne Boulevard
Miami, FL 33131-2336
(305) 374-7580
Proposed Counsel for the Official
Committee of Asbestos Property Damage
Claimants

2

-and-

Caplin & Drysdale, Chartered
Elihu Inselbuch, Esquire
399 Park Avenue, 36th Floor
New York, NY 10022
(212) 319-7125
Proposed Counsel for the Official
Committee of Asbestos Personal Injury
Claimants

-and-

Caplin & Drysdale, Chartered
Peter Van N. Lockwood, Esquire
One Thomas Circle, N.W.
Washington, D.C. 20005
(202) 862-5000
Proposed Counsel for the Official
Committee of Asbestos Personal Injury
Claimants

Date: June 14, 2001

TJT/msj
F:\Meredith\TJT\WRGraceBankMBJ\NotMotJt.Mot.wpd

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 <br> ) <br> ) Case No. 01-01139 (JJF) <br> ) |
| W. R. GRACE & CO., et al., | ) (Jointly Administered) <br> ) |
| Debtors. | ) **Objections due by: 6/29/01 @ 4:00 p.m.** <br> ) **Hearing Date: 7/19/01 @ 12:00 p.m.** <br> ) <br> ) |

## JOINT MOTION BY THE OFFICIAL COMMITTEES OF ASBESTOS PROPERTY DAMAGE AND ASBESTOS PERSONAL INJURY CLAIMANTS FOR AUTHORITY TO PROSECUTE FRAUDULENT TRANSFER CLAIMS

Pursuant to 11 U.S.C. §§ 1103 and 1109, the Official Committee of Asbestos Property Damage Claimants (the "PD Committee") and the Official Committee of Asbestos Personal Injury Claimants (the "PI Committee"; the PI Committee and the PD Committee being collectively referred to as the "Asbestos Committees"), by and through their respective undersigned counsel, hereby file this joint motion for authority to prosecute certain avoidance claims on behalf of the Debtors' bankruptcy estates. In support of this Motion, the Asbestos Committees state as follows:

### PRELIMINARY STATEMENT

In 1996, and then again in 1998, the Debtors' corporate group engineered a series of exceedingly complex transactions which stripped W.R. Grace & Company of business segments of the company worth billions of dollars for the purpose of shielding those assets from asbestos liabilities. The Asbestos Committees maintain that these transfers were fraudulent in purpose and effect. The Debtors concede, as they must, that they are disabled from pursuing fraudulent

1

transfer claims arising out of these transactions. The only parties in interest qualified and eager to pursue these significant claims are those represented by the Asbestos Committees. Ample authority and justification exist for permitting the Asbestos Committees to do so for the benefit of the Debtors' estate and their creditors.

## BACKGROUND

1. On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code and the Court entered an order directing joint administration of the Debtors' estates.

2. On April 12, 2001, the United States Trustee formed three official creditors committees: the PD Committee, the PI Committee, and the Official Committee of Unsecured Creditors (the "Unsecured Creditors Committee").

3. On the Petition Date, the Debtors also filed a Verified Complaint for Declaratory and Injunctive Relief (the "Complaint for Injunction"), styled W.R. Grace & Co., et al. v. Margaret Chakarian, et al., Adversary Proceeding No. A-01-771, and a Motion for a Temporary Restraining Order and Preliminary Injunction Staying All Asbestos-Related and Fraudulent Transfer Claims Against Affiliated Entities (the "Motion"). In the Complaint for Injunction and the Motion, the Debtors sought, among other things, to enjoin prosecution of pending and future actions against certain non-debtor affiliates of the Debtors, including but not limited to Sealed Air Corporation ("Sealed Air") and Fresenius A.G. ("Fresenius"), based upon certain transactions that have been attacked as fraudulent conveyances (the "Fraudulent Transfer Claims").

4. By the Petition Date, significant civil litigation had been commenced in numerous courts alleging a scheme by Grace to defraud creditors of W.R. Grace and Company through the transfer of substantial assets to others for inadequate consideration. In this regard,

2

Fresenius and Sealed Air - - as well as certain of the Debtors - - are named as defendants in a nationwide class action on behalf of asbestos personal injury victims, filed in the Supreme Court of California, San Francisco County (the "Abner Action") wherein the plaintiffs seek relief based upon fraudulent transfers by and among the defendants. Certain Debtors and Sealed Air are also defendants in a certified state-wide class action in the Superior Court of Spokane County, Washington, on behalf of Zonolite Attic Insulation property damage victims, seeking relief, in part, based upon the Fraudulent Transfer Claims relating to the Sealed Air transfers (the "Barbanti Action"). Furthermore, on the Petition Date, a nationwide fraudulent transfer class action was commenced in the District Court of Massachusetts against Sealed Air, Fresenius, and others, on behalf of Zonolite Attic Insulation property damage victims, likewise asserting the Fraudulent Transfer Claims (the "Woodward Action"). The Debtors themselves claim that Sealed Air is a named defendant "in over 6,000 asbestos-related actions" and in eight class actions, one of which has been certified and all of which implicate the Fraudulent Transfer Claims.

5. On April 5, 2001, the Bankruptcy Court entered an Order Granting Temporary Restraining Order (the "TRO"), effectively staying all parties from filing any asbestos-related actions against certain non-debtor affiliated entities, including Sealed Air and Fresenius. Thereafter, on April 12, 2001, this Court entered an Order Extending the Temporary Restraining Order, which extended the TRO through and including April 24, 2001. At a status hearing held on April 18, 2001, the Court granted the Debtors a preliminary injunction further staying all parties from filing any asbestos-related actions against the non-debtor affiliates, including Sealed Air and Fresenius, through and including a hearing on the preliminary injunction.

6.   On May 3, 2001, the Court held a hearing on the Motion and entered an Order Granting Preliminary Injunction (the "Preliminary Injunction Order") staying, *inter alia,* pending actions concerning the Fraudulent Transfer Claims against Sealed Air, Fresenius, certain investment banks, insurance carriers and others. The Preliminary Injunction Order, however, did not stay future actions against Sealed Air and Fresenius or motions to transfer venue pending in the Abner and Woodward Actions.

7.   At the May 3, 2001 hearing, the Debtors asserted that, as a result of the advent of the Debtors' chapter 11 proceedings, the Fraudulent Transfer Claims belong to the Debtors' estates. However, upon questioning by the Court, counsel for the Debtors candidly - - and correctly - - admitted that "insofar as Grace is concerned, the debtor is concerned, given the positions that we've taken, Grace through its current counsel, would probably be disabled from pursuing . . ." the Fraudulent Transfer Claims. (Transcript, May 3, 2001, at 11).

8.   At the May 3, 2001 hearing, the Unsecured Creditors Committee supported the relief requested by the Debtors and further, urged that the prosecution of the Fraudulent Transfer Claims be indefinitely postponed until there has been a determination whether the Debtors are solvent and thus capable of paying all claims against the Debtors' estates in full without the need for any recovery from the Fraudulent Transfer Claims. (Transcript, May 3, 2001, at 28-29). That determination may take years to resolve and the attendant delay would only serve to increase the hazards of litigation of the Fraudulent Transfer Claims through the loss of evidence, faded memories of witnesses, and the like. Additionally, such delay might even generate new defenses to the Fraudulent Transfer Claims based on statutes of limitation or repose or any subsequent transfers of the same assets. Significantly, Sealed Air, a target of the Fraudulent Transfer

Claims, is a member of the Unsecured Creditors Committee. Although delay might well serve Sealed Air's interests as a defendant, lapse of time cannot possibly benefit the estates.

9. The Debtors have filed yet another Motion to Modify the Preliminary Injunction seeking, *inter alia,* preliminary injunctive relief against the commencement of future actions based upon the Fraudulent Transfer Claims. In connection with this latest motion, the Debtors assert that an additional forty-six lawsuits were "commenced" against Sealed Air in violation of the TRO "since the preliminary injunction was issued, and one additional asbestos-related action has been filed". (Debtors' Memorandum in Support of Their Motion to Modify the Preliminary Injunction, p.2). The motion is ambiguous as to whether these purported actions also implicate the Fraudulent Transfer Claims.

## THE FRAUDULENT TRANSFER CLAIMS

### A.    The 1996 Fresenius Transaction

10. In 1996, the operating assets of the Grace corporate group were owned by W.R. Grace & Company - - Conn. ("Grace I") through various divisions and direct and indirect subsidiaries. One of its most profitable subsidiaries was National Medical Care, Inc. ("NMC"), a health care business. In 1996, Grace I divested itself of NMC, thereby purporting to insulate NMC assets from the asbestos liability confronting Grace I. Grace I, however, did not receive adequate consideration for NMC, and the transfer appears tainted by intent to defraud asbestos creditors. The Asbestos Committees are informed that the transfer involved the following steps:

- Grace I transferred NMC to the ultimate parent of the Grace corporate group, a publicly-owned New York holding company known as W.R. Grace & Company ("Grace II"). The consideration for this transfer was $2.262 billion in cash borrowed by NMC, about half of which went to reduce Grace I's debt. The $2.262 billion consideration was much less that the value of $3.175 billion to $4.0 billion that the Grace group ascribed to NMC on a stand-alone basis in reports to shareholders.

- Grace II created a new Delaware subsidiary also named W.R. Grace & Company ("Grace III"), and then transferred the stock of Grace I to that new corporation. Grace I thus ceased to be a direct subsidiary of Grace II and became a direct subsidiary of Grace III.

- The stock of Grace III was spun off to the public shareholders of Grace II. This step ostensibly ended the formal affiliation between Grace III (with its subsidiary, Grace I) and Grace II (with its subsidiary, NMC).

- Grace II was renamed Fresenius National Medical Care Holding Company ("FMC Holding"). It then merged into a subsidiary of Fresenius, a German company operating a worldwide dialysis business. As part of the same plan, Fresenius contributed its U.S. subsidiary, Fresenius U.S.A., to FMC Holding.

11.    In sum, these complex maneuvers stripped NMC out of Grace I and turned Grace II, renamed as FMC Holding, into a subsidiary of Fresenius holding two subsidiaries, Fresenius U.S.A. and NMC. As a result, the public shareholders of Grace II received 44.8% of the combined NMC/Fresenius business, plus preferred stock of FMC Holding. In all, those shareholders received approximately $4.5 billion in value, yet the consideration paid to Grace I was only $2.262 billion.

### B.    The 1998 Sealed Air Transaction

12.    The Fresenius transaction left Grace I as a subsidiary of Grace III operating a flexible packaging business and a specialty chemicals business. In 1998, Grace disposed of the packaging business in a series of maneuvers evidently modeled on the Fresenius transaction. The Asbestos Committees are informed that the sequence of events was as follows:

- Grace III separated its packaging business and specialty chemicals business into separate subsidiaries, creating "Cryovac" as a new subsidiary to receive the packaging business. As a consideration for the packaging business, Grace I received $1.2 billion. That money was borrowed by the transferred business and was used to pay down the debt of Grace I.

- Grace III proceeded to spin off Grace I, which became the subsidiary of a new company known as Grace Specialty Chemicals. Grace Specialty Chemicals was later renamed as yet another iteration of W.R. Grace & Company ("Grace IV").

6

- Grace III then merged its Cryovac subsidiary with Sealed Air Corporation U.S., a subsidiary of the company then known as Sealed Air Corporation, producers of bubble wrap and other packaging. In connection with this merger, Grace III changed its own name to Sealed Air Corporation.

13.     In short, Grace I was divested of the packaging business and $1.2 billion in debt was removed from the books of Grace I and placed on the books of the packaging business as transferred. Public shareholders of Grace III, now known as Sealed Air Corporation, received 63% of the combined packaging/bubble wrap business.

## LEGAL ARGUMENT

14.     The Fraudulent Transfer Claims may well constitute the most substantial asset of the Debtors' estates. Given the disabling conflicts of the Debtors and the Unsecured Creditors Committee, the only logical conclusion is to empower the Asbestos Committees – whose constituencies represent the largest universe of claims against the Debtors' estates – to prosecute these important Fraudulent Transfer Claims for and on behalf of the estates.

15.     Ample authority supports the requested relief. Section 1103(c)(5) of the Bankruptcy Code provides that a committee appointed under § 1102 may "perform such other services as are in the interest of those represented." Additionally, §1109(b) of the Bankruptcy Code provides that a creditors committee "may raise and may appear and be heard on any issue in a case under this chapter." Accordingly, numerous courts have held that §§ 1103(c)(5) and 1109(b) imply a right of a creditors committee to initiate adversary proceedings on behalf of the estate. See Catwil Corp. v. Derf II (In re Catwil Corp.), 175 B.R. 362 (E.D. Cal. 1994) (citing Louisiana World Exposition v. Federal Inc. Co., 858 F.2d 233, 247-48 (5th Cir. 1988); In re STN Enters., 779 F.2d 901, 904 (2d Cir. 1985); In re Marin Motor Oil, Inc., 689 F.2d 445, 453 (3d Cir. 1982); In re First Capital Holdings Corp., 146 B.R. 7, 11 (Bankr. C.D. Cal. 1992); In re

7

Chemical Separations Corp., 32 B.R. 816, 819 (Bankr. E.D. Tenn. 1983); In re Wesco Products Co., 22 B.R. 107, 109 (Bankr. N.D.Ill. 1982)).

16. In In re Cybergenics Corp., 226 F.3d 237 (3rd Cir. 2000), the Third Circuit held (contrary to the Debtors' assertions here) that fraudulent transfer claims brought under § 544 of the Bankruptcy Code belong not to the debtor, but rather to its creditors. The Court explained, "courts have at times authorized individual creditors or creditors' committees to exercise avoidance powers under certain circumstances, particularly when the debtor in possession is unwilling to pursue a colorable claim that would benefit the bankruptcy estate." Id. at 240 n.3.

17. To date, the Debtors' principal efforts in respect of the Fraudulent Transfer Claims have been to safeguard their fraud by seeking injunctive relief to bring pending actions to a screeching halt. Yet, the Fraudulent Transfer Claims engender numerous complex issues, including the transfer of venue of pending litigations, applicable statutes of limitation, choice of law, and the assertion of state law and bankruptcy causes of action. These matters require prompt attention and decisive action to ensure that the full value of this substantial asset is realized for the benefit of the estate. The Debtors' admitted inability and unwillingness to prosecute the claims and the Unsecured Creditors Committee's curious "wait and see" approach, serve only to delay and thereby undermine the estates' interests. Justice and equity require that the Asbestos Committees be empowered to prosecute the Fraudulent Transfer Claims.

WHEREFORE, the Asbestos Committees pray that they be jointly authorized to prosecute and enforce all claims and actions arising out of the Sealed Air and Fresenius transactions as representatives of the Debtors' estates and for such other relief as the Court may deem just and appropriate.

Dated: Wilmington, Delaware
June 14, 2001

        BILZIN SUMBERG DUNN BAENA
         PRICE & AXELROD LLP
        Scott L. Baena (Fla. Bar No. 186445)
        2500 First Union Financial Center
        200 South Biscayne Boulevard
        Miami, Florida 33131-2336
        Telephone: (305) 374-7580

              -and-

        FERRY & JOSEPH, P.A.

        By: _____
        Michael B. Joseph (Del. Bar No. 392)
        Theodore J. Tacconelli (Del. Bar. No.2678)
        824 Market Street, Suite 904
        P.O. Box 1351
        Wilmington, Delaware 19899
        Telephone: (302) 575-1555

        Proposed Counsel for the Official Committee of
        Asbestos Property Damage Claimants

              -and-

        CAPLIN & DRYSDALE, CHARTERED
        Elihu Inselbuch
        399 Park Avenue, 36th FL
        New York, NY 10022
        Telephone: (212) 319-7125

              -and-


        CAPLIN & DRYSDALE, CHARTERED
        Peter Van N. Lockwood
        One Thomas Circle, N.W.
        Washington, DC 20005
        Telephone: (202) 862-5000

              -and-

ASHBY & GEDDES

By: /s/ M. G. Zaleski
Matthew G. Zaleski III (Del. Bar No. 3557)
222 Delaware Avenue, 17th FL
Wilmington, DE 19899
Telephone: (302) 654-1888

Proposed Counsel for the Official Committee of
Asbestos Personal Injury Claimants

10