## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| W. R. GRACE & CO., et al., | : | Case Nos.:  01-01139 (JJF) through |
| | : | 01-01200 (JJF) |
| Debtors. | : | Jointly Administered |

**NOTICE OF MOTION OF JEAN-PAUL BOLDUC, BRIAN J. SMITH, RICHARD N. SUKENIK AND PHILIP J. RYAN, III, FORMER EMPLOYEES OF DEBTOR W. R. GRACE & CO., FOR ENTRY OF AN ORDER AUTHORIZING AND REQUIRING THE DEBTORS TO PAY CERTAIN BENEFITS INCURRED BY OR ON BEHALF OF THE FORMER EMPLOYEES**

TO:  SEE ATTACHED
     2002 LIST

     Jean-Paul Bolduc, Brian J. Smith, Richard N. Sukenik and Philip J. Ryan, III, Former Employees of Debtor W. R. Grace & Co., have filed a Motion for Payment of Certain Benefits Incurred by or on Behalf of the Former Employees.

HEARING ON THE MOTION WILL BE HELD ON **Thursday, July 19, 2001 at 12:00 noon**.

     You are required to file a response (and supporting documentation required by Local Rule 4001-1(d)) to the attached motion at least five business days before the above hearing date.

     At the same time you must also serve a copy of the response upon movants' attorneys:

John C. Phillips, Jr., Esquire (#110)
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806

Wallace L. Timmeny, Esquire
Dechert
1775 Eye Street, N.W.
Washington, DC 20006-2401

Lawrence J. Zweifach, Esquire
Heller Ehrman White & McAuliffe LLP
885 Third Avenue
New York, NY 10022-4834

Gerald Walpin, Esquire
Rosenman & Colin, LLP
575 Madison Avenue
New York, NY 10022

Robert J. Jossen, Esquire
David S. Hoffner, Esquire
Swidler Berlin Shereff Friedman, LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174

484
534

The Hearing date specified above may be a preliminary hearing or may be consolidated with at the final hearing, as determined by the Court.

The Attorneys for the parties shall confer with respect to the issues raised by the motion in advance for the purpose of determining whether a consent judgment may be entered and/or for the purpose of stipulating to relevant facts such as value of the property, and the extend and validity of any security instrument.

PHILLIPS, GOLDMAN & SPENCE, P.A.

JOHN C. PHILLIPS, JR., ESQUIRE (#110)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
(302) 655-4210 (fax)
Attorney for Jean-Paul Bolduc, Brian J. Smith,
Richard N. Sukenik and Philip J. Ryan, III

Date:   June 19, 2001

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al.,[1] | ) | Case Nos.: 01-01139 (JJF) through 01-01200 (JJF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

## MOTION OF JEAN-PAUL BOLDUC, BRIAN J. SMITH, RICHARD N. SUKENIK AND PHILIP J. RYAN, III, FORMER EMPLOYEES OF DEBTOR W.R. GRACE & CO., FOR ENTRY OF AN ORDER AUTHORIZING AND REQUIRING THE DEBTORS TO PAY CERTAIN BENEFITS INCURRED BY OR ON BEHALF OF THE FORMER EMPLOYEES

Jean-Paul Bolduc, Brian J. Smith, Richard N. Sukenik and Philip J. Ryan, III

(collectively, the "Former Employees"), by their respective undersigned counsel, hereby move

---

[1]    The Debtors consist of the following 62 entities: W.R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon , Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

328464.7

this Court (the "Motion") for entry of an order: (a) authorizing and requiring the above-captioned debtors and debtors-in-possession (the "Debtors") to reimburse the Former Employees for certain prepetition legal expenses, and (b) directing the Debtors to reimburse the Former Employees for certain postpetition legal fees and disbursements that will be incurred during the pendency of the Debtors' Chapter 11 cases in the ordinary course of the Debtors' businesses.  In support of the Motion, the Former Employees respectfully state as follows:

## Jurisdiction

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 363(b) and 503(b) of title 11 of the United States Code, as amended (the "Bankruptcy Code").

3.      Because of the nature of the relief requested in this Motion, the Former Employees believe that no briefing is required.  There are no novel issues of law presented herein.  The Former Employees therefore waive their right to file a brief in support of the Motion pursuant to Rule 7.1.2(a) of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, incorporated by reference into the Local Bankruptcy Rules by Rule 1001-1(b).

328464.7

### Background

4.      On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Clerk of this Court. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      At certain times prior to the Petition Date, the Former Employees were either corporate officers and/or employees of W.R. Grace & Co. ("Grace"), one of the debtors herein. Jean-Paul Bolduc ("Bolduc") served as Grace's President and Chief Operating Officer from August 1990 to January 1993, at which time he became President and Chief Executive Officer, the positions in which he served until March 1995. Brian J. Smith ("Smith") served as Grace's Chief Financial Officer from July 1989 to July 1995. Richard N. Sukenik ("Sukenik") was employed as Grace's Controller from December 1991 to March 1996. Philip J. Ryan, III ("Ryan"), an assistant officer, was Assistant Controller, Financial Reporting, of Grace from August 1991 to January 1996, at which time he became a Vice President of Grace Container Products and Specialty Polymers (and, as of July, 1996, upon the integration of the Container Products business with the Cryovac packaging business, Vice President, Finance, Grace Packaging), and remained in such position until the Cryovac business was spun off from Grace and combined with Sealed Air Corporation.

6.      On April 11, 1996, the United States Securities and Exchange Commission (the "SEC" or the "Commission") issued a formal order of investigation (the "Formal Order") in In the Matter of W.R. Grace & Co., pursuant to which the SEC thereafter commenced an investigation (the "Investigation") into whether Grace, certain present and/or former officers,

328464.7                           - 3 -

directors, employees, affiliates, and other persons or entities, may have filed or caused to be filed periodic reports with the SEC containing false and misleading financial statements that misrepresented, among other things, Grace's revenues, earnings, and assets.

7.      In connection with the Investigation, each of the Former Employees retained separate legal counsel, which in light of the different positions and roles of each of these employees, appeared to be mandated by ethical requirements.[2]

8.      Pursuant to certain letter agreements, (the "Indemnification Letters"), Grace agreed to indemnify the Former Employees with respect to all legal fees and disbursements.[3]  The Indemnification Letters for Smith, Sukenik and Ryan provided, in pertinent part, that "Grace will pay the reasonable expenses, including attorneys' fees and disbursements incurred by [the Former Employees] in the defense of the [SEC] investigation through its final conclusion."  Copies of the Smith, Sukenik and Ryan Indemnification Letters are annexed hereto as Exhibit A.  A copy of Bolduc's Indemnification Letter and an excerpt relating to Bolduc's indemnification rights from Grace's filing with the SEC on Form 14A, dated May 10, 1995, are annexed hereto collectively as Exhibit B.

---

[2]    Mr. Bolduc is currently represented by Rosenman & Colin LLP; Mr. Smith by Dechert; Mr. Sukenik by Heller Ehrman White & McAuliffe LLP; and Mr. Ryan by Swidler Berlin Shereff Friedman, LLP.

[3]    Mr. Smith's indemnification letter is dated March 13, 1997; Mr. Sukenik's indemnification letter is dated March 12, 1997; and Mr. Ryan's indemnification letter is dated June 24, 1997.  Mr. Bolduc's indemnification letter, dated March 22, 1995, supplemented indemnification rights granted to Bolduc pursuant to his Resignation Arrangements, effective as of March 3, 1995 (as detailed in the excerpt from Grace's filing with the SEC on Form 14A, dated May 10, 1995 (annexed hereto as Exhibit B)).

9.      Indemnification obligations pursuant to the Indemnification Letters confirm the

broad indemnification rights granted the Former Employees pursuant to the Grace Amended and

Restated By-Laws (the "By-Laws") which provide:

> Each person who was or is made a party or is threatened to be
> made a party to or is involved in any action, suit, or proceeding,
> whether civil, criminal, administrative or investigative (hereinafter,
> a "proceeding"), by reason of the fact that he or she . . . is or was a
> director or officer of [Grace] or is or was serving at the request of
> the Corporation as a director [or] officer, . . . whether the basis of
> such proceeding is alleged action in an official capacity as a
> director, officer, employee or agent or in any other capacity while
> serving as a director, officer, employee or agent, shall be
> indemnified and held harmless by [Grace] to the fullest extent
> authorized by the General Corporation Law of the State of
> Delaware as the same exists or may hereafter be amended . . .
> against all expense, liability and loss (including attorneys' fees,
> judgments, fines, ERISA excise taxes or penalties and amounts
> paid or to be paid in settlement) reasonably incurred or suffered by
> such person in connection therewith, and such indemnification
> shall continues as to a person who has ceased to be a director,
> officer, employees or agent and shall inure to the benefit of his or
> her heirs . . . .

Amended and Restated By-Laws of W.R. Grace & Co. at Section 6.7 (annexed hereto as <u>Exhibit
C</u>).

10.      Grace, upon receipt of an itemized invoice from the various counsel for the

Former Employees, remitted payment directly to counsel to indemnify the Former Employees for

legal fees and disbursements incurred in connection with the Investigation.  It was the usual

practice for counsel for the Former Employees to submit invoices on a monthly basis to Grace's

then general counsel, Robert H. Beber (and, upon Mr. Beber's retirement as General Counsel, to

Mr. Beber in his capacity as a consultant to Grace) for payment and approval.

328464.7                                    - 5 -

11.     Pursuant to an Order Instituting Public Administrative and Cease-and-Desist Proceedings Pursuant to Section 21C of the Securities Exchange Act of 1934 and Rule 102(e) of the Commission's Rules of Practice, dated December 11, 1998 (the "Order Instituting Proceedings"), the SEC commenced an administrative proceeding against the Former Employees (the "Administrative Proceeding") alleging that, during the period 1991 through 1996, the Former Employees (except for Ryan, who is charged only with causing books and records violations) caused Grace to engage in fraudulent conduct by filing false and misleading periodic reports with the Commission, and making false statements in press releases and at analyst teleconferences, by allegedly using certain "excess" reserves maintained at Grace's subsidiary, National Medical Corporation ("NMC"), to manipulate Grace's income.

12.     Each of the Former Employees has denied all charges of wrongdoing.

13.     Simultaneously with the issuance of the Order Instituting Proceedings, the SEC filed a civil injunctive action against Grace in the United States District Court for the Southern District of Florida alleging violations of the federal securities laws by Grace based on allegations substantially identical to those asserted against the Former Employees.  In or about June 1999, the SEC dismissed with prejudice the federal court action in connection with the institution and settlement of an administrative proceeding against Grace.

14.     As of the date hereof, the Administrative Proceeding remains pending, and no hearing date has been scheduled.  In connection with preparation for, and participation in, a hearing, the Former Employees have incurred and will continue to incur legal expenses until a final adjudication of the Administrative Proceeding.

15.     If the Former Employees are denied their indemnification rights and are therefore unable to mount an adequate defense of the charges in the Administrative Proceeding, there is an increased likelihood of an adverse finding by the Commission against the Former Employees. Such an adverse finding would be detrimental to the Debtors as well because of the resulting negative publicity, and would penalize the individual Former Employees for conduct they performed as officers or assistant officers of, and on behalf of, Grace that was fully known to, inter alia, the Grace Audit Committee and Grace's independent auditors.

16.     As of the Petition Date, outstanding legal fees and disbursements of the Former Employees' retained counsel totaled approximately $81,072.45. Mr. Bolduc's prepetition unpaid legal fees are $4,164.87; Mr. Smith's are 6,216.24; Mr. Sukenik's are $36,555.25, and Mr. Ryan's are $34,136.09.

17.     By motion, dated April 2, 2001 (the "Employee Benefit Motion"), the Debtors sought entry of an order authorizing the Debtors to, inter alia, pay certain prepetition wages, salaries, incentive pay, bonus plans and other compensation and pay certain severance benefits to former employees. The Debtors sought authority to continue and to pay a wide range of benefits including, among other things, executive tax planning, tuition reimbursement, expense reimbursement on corporate credit cards, incentive bonuses, relocation expenses and key life insurance plans.

18.     On April 4, 2001, the Court entered an order approving the Employee Benefit Motion. The benefits accruing to the Former Employees pursuant to Grace's indemnification obligations were not specifically included in the Employee Benefit Motion but fall within the general scope of benefits and expenses covered by the Employee Benefit Motion.

328464.7

19.    By motion, dated April 2, 2001 (the "Ordinary Course Motion"), the Debtors

sought entry of an order (a) authorizing the Debtors to operate their businesses and (b)

implementing the automatic stay.  The Debtors sought authority to continue to operate in the

ordinary course to reassure third parties that the Debtors were so authorized.  In particular, the

Debtors requested that this Court authorize the entry of an order notifying parties in interest that

the Debtors "have the power to enter all transactions . . . that they could have entered into in the

ordinary course of business had there been no bankruptcy filing" and that "suppliers and other

parties may continue to engage in transactions with the Debtors in the ordinary course of business

in the same manner and upon the same terms and conditions as they did before the filing."

Ordinary Course Motion at ¶ 30.

20.    On April 4, 2001, the Court entered an order approving the Ordinary Course

Motion (the "Ordinary Course Order").  The Former Employees' indemnification rights were not

specifically included in the plain language of the Ordinary Course Order but clearly fall within the

general range of transactions contemplated by the motion.


### Payment of the Former Employees' Postpetition Legal Fees and Expenses

21.    At present, the Administrative Proceeding is stayed pending the determination by

the SEC of a certain interlocutory appeal filed by the Commission.  As a result, the Former

Employees are not currently incurring substantial legal fees.   However, a determination of the

appeal and a lifting of the stay may occur at any time thereby resulting in the scheduling of a

hearing that would require the Former Employees again to begin hearing preparations and incur

significant legal fees.  Notably, the Debtors' continued payment of the Former Employees' legal

328464.7                                          - 8 -

fees in connection with the Administrative Proceeding would have a <u>de minimus</u> impact on any distribution to creditors pursuant to a Confirmed Plan of Reorganization. In stark contrast, the denial of the Former Employees' indemnification rights would have a devastating financial impact on the Former Employees. Moreover, an adverse resolution of the Administrative Proceeding resulting from the Former Employees' inability to finance an adequate defense would also adversely impact the goodwill of the Debtors because of the resulting negative publicity.

22.     The Ordinary Course Order was intended to reassure all parties doing business with the Debtors that the Debtors are conducting their businesses and managing their properties as if the bankruptcy had not occurred. Pursuant to the Ordinary Course Order, the Debtors have the authority to "maintain all prepetition business relationships" and "enter into all transactions that they could have entered into" as if there had been no Chapter 11 case commenced. <u>Order (a) Authorizing Debtors to Operate Their Businesses and (b) Implementing the Automatic Stay</u> at p. 3. Clearly, the Former Employees' right to indemnification falls within the scope of the Ordinary Course Order.

23.     Accordingly, by this Motion, the Former Employees respectfully request that this Court compel the Debtors to honor the Indemnification Letters and the Former Employees' indemnification rights pursuant to the By-Laws postpetition in the ordinary course of the Debtors' businesses.

## **Relief Requested**

24.     By this Motion, the Former Employees request that this Court (i) authorize the Debtors to pay the prepetition legal fees and expenses of the Former Employees incurred in

connection with the Administrative Proceeding and any appeals and matters related thereto and (ii) direct the Debtors to continue to indemnify the Former Employees for legal fees and expenses incurred during the pendency of these Chapter 11 cases in the ordinary course of the Debtors' businesses.

### Payment of the Former Employees' Prepetition Legal Fees and Expenses

25.    Pursuant to sections 363(b)[4] and 105(a) of the Bankruptcy Code, the Debtors should be directed to pay the prepetition outstanding legal fees and expenses incurred by the Former Employees in connection with the Administrative Proceeding.  The Court's general equitable powers are codified in section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers the Court to " issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under this section, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtor's assets.  See e.g., In re Chinichian, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); Bird v. Crown Convenience (In re NWFX, Inc.), 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy . . . is that equitable principles govern."); See also In re Aurora Cord & Cable Co., 2 B.R. 342, 347 (Bankr. N.D. Ill. 1980) ("The Court has the duty of preserving and protecting whatever equities the debtor may have").  Indeed, the purpose of section 105(a) is to

---

[4]    Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.  11 U.S.C. § 363(b)(1).

ensure a bankruptcy court's power to take whatever action "is appropriate or necessary in aid of the exercise of [its] jurisdiction."  2 <u>Collier on Bankruptcy</u>, ¶ 105.1, at 105-5 (15th rev. ed. 1997). Moreover, a bankruptcy court's use of its equitable power pursuant to Bankruptcy Code section 105(a) to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." <u>In re Ionosphere Clubs, Inc.</u>, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing <u>In re Lehigh & New England Railway Co.</u>, 657 F.2d 570, 581 (3d Cir. 1981).

26.     Indeed, the Employee Benefit Motion granted the Debtors the authority to make post-petition payment of an extensive list of benefits that accrued to former employees prepetition, a number of which were in the nature of either severance or retirement benefits.  The indemnification rights of the Former Employees, while not explicitly delineated in the Employee Benefit Motion, are within the purview of that motion.  Indeed, the Former Employees accepted employment with the Debtors with an expectation that they would be fully indemnified for their activities on behalf of the company, an expectation that managerial employees commonly regard as an essential term and condition of employment.

27.     Accordingly, by this Motion, the Former Employees respectfully request that this Court utilize its equitable powers to honor the Indemnification Letters and the Former Employees' indemnification rights pursuant to the By-Laws and direct the Debtors to pay the prepetition legal fees and expenses of the Former Employees.

## Notice

28.     Notice of this Motion has been given to (a) counsel for the Debtors, (b) counsel to

the debtors-in-possession lender, (c) counsel to the three Official Committees appointed in these

cases, (d) the United States Trustee for this District and (e) all parties having filed a notice of

appearance and request for notice.

29.     The Former Employees believe that the benefits of any other and further notice of

this Motion would not warrant the time and corresponding expense involved in light of the fact

that there are thousands of creditors in this case.  In view of the nature of the relief requested, the

Former Employees respectfully request that any and all other and further notice of this Motion

other than that described above be dispensed with and waived.


## No Prior Request

30.     No prior motion for the relief requested herein has been made to this or any other

Court.

        **WHEREFORE**, the Former Employees respectfully request that the Court enter

an order, substantially in the form attached hereto, (a) authorizing and requiring the Debtors to

reimburse the Former Employees for legal expenses incurred prior to the Petition Date in the

defense of the Former Employees in the Administrative Proceeding, (b) directing the Debtors to

reimburse the Former Employees for all reasonable legal fees and expenses that will be incurred

in the defense of the Former Employees in the Administrative Proceeding and any appeals and

328464.7                                    - 12 -

matters related thereto during the pendency of the Debtors' Chapter 11 cases and (c) granting such

other and further relief as the Court deems appropriate.

Dated: New York, New York
       June ____, 2001

           **RESPECTFULLY SUBMITTED,**


           **PHILLIPS, GOLDMAN & SPENCE, P.A.**
           *Attorneys for Jean-Paul Bolduc, Brian J. Smith,*
           *Richard J. Sukenik and Philip J. Ryan, III*


BY: _____
           John C. Phillips, Jr.  (Bar # 110)
           1200 North Broom Street
           Wilmington, DE 19806
           (302)655-4200


           **ROSENMAN & COLIN, LLP**
           *Attorneys for Jean-Paul Bolduc*
           Gerald Walpin
           575 Madison Avenue
           New York, NY 10022
           (212) 940-8800

           **DECHERT**
           *Attorneys for Brian J. Smith*
           Wallace L. Timmeny
           1775 Eye Street, N.W.
           Washington D.C.  20006-2401
           (202) 261-3300

           **HELLER EHRMAN WHITE & MCAULIFFE LLP**
           *Attorneys for Richard J. Sukenik*
           Lawrence J. Zweifach
           885 Third Avenue
           New York, NY 10022-4834
           (212) 588-8850

**SWIDLER BERLIN SHEREFF FRIEDMAN, LLP**
*Attorneys for Philip J. Ryan, III*
Robert J. Jossen
David S. Hoffner
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 973-0111

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                              )    Chapter 11
                                    )
W.R. GRACE & CO., et al.,           )    Case Nos.: 01-01139 (JJF) through 01-01200 (JJF)
                                    )    Jointly Administered
                    Debtors.        )

## ORDER

Upon the motion (the "Motion") of Jean-Paul Bolduc, Brian J. Smith, Richard N. Sukenik and Philip J. Ryan, III (collectively, the "Former Employees") seeking the entry of an order: (a) authorizing and requiring the above-captioned debtors and debtors-in-possession (the "Debtors") to reimburse the Former Employees for certain prepetition legal expenses, and (b) directing the Debtors to reimburse the Former Employees for certain postpetition legal fees and disbursements that will be incurred during the pendency of the Debtors' Chapter 11 cases in the ordinary course of the Debtors' businesses, and adequate notice of the Motion having been given; and it appearing that no other notice need be given; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors are authorized and directed to pay each professional retained by the Former Employees for services rendered and expenses incurred on behalf of such Former Employee during the prepetition period within ten (10) days of the entry of this Order; and it is further

ORDERED that the Debtors will review statements and invoices of the Former Employees' retained professionals and determine their reasonableness in accordance with the prepetition practices; and it is further

332051.1

ORDERED that the Debtors are authorized and directed to pay the reasonable fees and expenses incurred by the professional retained by the Former Employees during the pendency of these Chapter 11 cases on a monthly basis or upon such other terms as are customary in the ordinary course of the Debtors' businesses.

Dated: _____, 2001


                                      _____

                                        United States District Judge

## CERTIFICATE OF SERVICE

I, John C. Phillips, Jr., Esquire, hereby certify that on June 19 , 2001, a copy of the

attached document was served upon the following via first class, postage prepaid mail.

SEE ATTACHED 2002 SERVICE LIST

_____
JOHN C. PHILLIPS, JR., ESQUIRE (#110)

328464.7

Laura Davis Jones, Esquire
David Carickhoff, Esquire.
Pachulski, Stang, Ziehl, Young & Jones
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

Hamid R. Rafatjoo, Esquire
Pachulski, Stang, Ziehl, Young & Jones
10100 Santa Monica Boulevard, Suite 1100
Los Angeles, CA 90067-4100

Parcels, Inc.
Vito I. DiMaio
10th & King Streets
Wilmington, DE  19801

(Local Counsel to DIP Lender)
Steven M. Yoder, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899

(Local Counsel to Asbestos Claimants)
William P. Bowden, Esquire
Matthew G. Zaleski, III, Esquire
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE  19899

William H. Sudell, Jr., Esquire
Eric D. Schwartz, Esquire
Morris, Nichols Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899

(Counsel for The Chase Manhattan Bank)
Mark D. Collins, Esquire
Deborah E. Spivack, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE  19899

Jeffrey C. Wisler, Esquire
Michelle McMahon, Esquire
Connolly Bove Lodge & Hutz LLP
1220 Market Street, 10th Floor
Wilmington, DE  19899

(Counsel for Ingersoll-Rand Fluid Products)
Francis A. Monaco, Jr., Esquire
Walsh, Monzack and Monaco, P.A.
1201 N. Orange Street, Suite 400
P.O. Box 2031
Wilmington, DE  19801

(Counsel for Ingersoll-Rand Fluid Products)
Frederick B. Rosner, Esquire
Walsh, Monzack and Monaco, P.A.
1201 N. Orange Street, Suite 400
Wilmington, DE  19801

(Counsel for Property Damage Claimants)
Michael B. Joseph, Esquire
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE  19899

Bruce E. Jameson, Esquire
Prickett, Jones & Elliott
1310 King Street
P.O. Box 1328
Wilmington, DE  19899

Mark S. Chehi
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE  19899-0636

Joseph Grey, Esquire
Stevens & Lee
300 Delaware Avenue, Suite 800
Wilmington, DE  19801

(Counsel to Official Committee of Unsecured Creditors)
Michael R. Lastowski, Esquire
Duane, Morris & Heckscher LLP
1100 North Market Street, Suite 1200
Wilmington, DE  19801-1246

Mary M. MaloneyHuss
Wolf, Block, Schorr and Solis-Cohen LLP
920 King Street, Suite 300
One Rodney Square
Wilmington, DE  19801

Selinda A. Melnik, Esquire
Smith, Katzenstein & Furlow LLP
800 Delaware Avenue
P.O. Box 410
Wilmington, DE  19899

(Counsel to Debtor)
James H.M. Sprayregen, Esquire
James Kapp, III, Esquire
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL  60601

(United States Trustee)
Frank J. Perch, Esquire
Office of the United States Trustee
601 Walnut Street, Curtis Center,
Suite 950 West
Philadelphia, PA  19106

(Canadian counsel for Debtor)
Derrick Tay, Esquire
Meighen Demers
P.O. Box 8705, Box 11, Merrill Lynch Canada Tower
Sun Life Center, 200 Kint Street West
Toronto, Ontario M5H 3T4
CANADA

(W. R. Grace & Co.)
David B. Siegel
W.R. Grace and Co.
7500 Grace Drive
Columbia, MD  21044

(Official Committee of Personal Injury Claimants)
Elihu Inselbuch, Esquire
Rita Tobin, Esquire
Caplin & Drysdale, Chartered
399 Park Avenue, 36th Floor
New York, NY  10022


(Official Committee of Unsecured Creditors)
Lewis Kruger, Esquire
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY  10038-4982

(Official Committee of Property Damage Claimants)
Scott L. Baena, Esquire
Member
Bilzin Sumberg Dunn Baena Price & Axelrod LLP
First Union Financial Center
200 South Biscayne Blvd, Suite 2500
Miami, FL  33131


(Counsel to Sealed Air Corporation)
D. J. Baker, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY  10036

(Counsel to DIP Lender)
J. Douglas Bacon, Esquire
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL  60606


(Counsel to Asbestos Claimants)
Nancy Worth Davis, Esquire
Ness, Motley, Loadhold, Richardson & Poole
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC  29465

Todd Meyer, Esquire
Kilpatrick Stockton
1100 Peachtree Street
Atlanta, GA  30309


Securities & Exchange Commission
15th & Pennsylvania Ave. N.W.
Washington, DC  20020

District Director
IRS
409 Silverside Road
Wilmington, DE  19809

Securities & Exchange Commission
Atlanta Regional Office Branch/Reorganization
3475 Lenox Road, NE, Suite 100
Atlanta, GA  30326-1232

Secretary of Treasurer
P.O. Box 7040
Dover, DE  19903

Secretary of State
Division of Corporations
Franchise Tax
P.O. Box 7040
Dover, DE  19903

James D. Freeman, Esquire
U.S. Department of Justice
Environmental Enforcement Section
999 18th Street
Suite 945-North Tower
Denver, CO  80202

Jon L. Heberling, Esquire
McGarvey, Heberling, Sullivan & McGarvey PC
745 South Main Street
Kalispel, MT  59901

Patrick L. Hughes, Esquire
Haynes & Boone LLP
1000 Louisiana Street, Suite 4300
Houston, TX  77002-5012

David S. Heller, Esquire
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL  60606

Charles E. Boulbol, Esquire
26 Broadway, 17th Floor
New York, NY  10004

Ira S. Greene, Esquire
Squadron, Ellenoff, Plesent & Sheinfeld, LLP
551 Fifth Avenue
New York, NY  10176

James A. Sylvester, Esquire
Intercat, Inc.
104 Union Avenue
Manasquan, NJ  08736

Steven J. Johnson, Esquire
Gibson, Dunn & Crutcher LLP
1530 Page Mill Road
Palo Alto, CA  94304-1125

Charlotte Klenke, Esquire
Schneider National, Inc.
P.O. Box 2545
3101 S. Packerland
Green Bay, WI  54306


David S. Rosenbloom, Esquire
Jeffrey E. Stone, Esquire
Lewis S. Rosenbloom, Esquire
McDermott, Will & Emery
227 West Monroe Street
Chicago, IL  60606-5096

Brad Rogers, Esquire
Office of the General Counsel
Pension Benefit Guaranty Corp
1200 K. Street, N. W.
Washington, D.C.  20005-4026


Pamela Zilly
Richard Shinder
David Blechman
Michael Alexander
The Blackstone Group
345 Park Avenue
New York, NY  10154

Josiah Rotenberg
Lazard Freres & Co. LLC
30 Rockefeller Plaza, 60th
New York, NY  10020


(Counsel for The Chase Manhattan)
Stephen H. Case, Esquire
Nancy L. Lazar, Esquire
David D. Tawil, Esquire
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY  10017

Jan M. Hayden
William H. Patrick
Heller, Draper, Hayden, Patrick & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA  70130-6103


Joseph F. Rice
Ness, Motley, Loadholt, Richardson & Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

Nancy Worth Davis
Ness, Motley, Loadholt, Richardson & Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

(Counsel for Asbestos Claimants)
Steven T. Baron, Esquire
Member
Silber Pearlman, LLP
2711 North Haskell Avenue, 5th Floor, LLP
Dallas, TX  75204

Bankruptcy Administration
IOS Capital, Inc.
1738 Bass Road
P.O. Box 13708
Macon, GA  31208-3708


(Attorneys for PPG Industries, Inc.)
W.J. Winterstein, Jr., Esquire
John J. Winter, Esquire
William M. Aukamp, Esquire
Eleven Penn Center, 29th Floor
1835 Market Street
Philadelphia, PA  19103

R. Scott Williams
PMG Capital Corp.
Four Falls Corporate Center
West Conshohocken, PA  19428-2961


Alan R. Brayton, Esquire
Brayton & Purcell
222 Rush Landing Road
Novato, CA  94945

Jonathan W. Young
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive, Suite 3000
Chicago, IL  60606-1229


Russell W. Budd
Alan B. Rich
Baron & Budd, P.C.
3102 Oak Lawn Avenue, P.O. Box 8705
Dallas, TX  75219

Shelby A. Jordan, Esquire
Nathaniel Peter Holzer. Esquire
Jordan, Hyden, Womble & Culbreth, P.C.
500 N. Shoreline Blvd., Suite 900
Corpus Christi, TX  78471


Courtney M. Labson, Esquire
The Mills Corporation
Legal Department
1300 Wilson Boulevard, Suite 400
Arlington, VA  22209

T. Kellan Grant
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive, Suite 3000
Chicago, IL  60606-1229

Cindy Schultz
Ingersoll-Rand Fluid Products
One Aro Center
P.O. Box 151
Bryan, OH  43506

Alan Kolod, Esquire
Moses & Singer LLP
1301 Avenue of the Americas
40th Floor
New York, NY  10019-6076

Mr. Thomas Moskie
Bankers Trust Company
Four Albany Street
Fourth Floor
New York, NY  10006

John P. Dillman, Esquire
Linebarger Heard Goggan Blair
Graham Peña & Sampson, LLP
P.O. Box 3064
Houston, TX  77253-3064

Charles E. Gibson, III
Attorney at Law
620 North Street, Suite 100
Jackson, MS  39202

Paul M. Baisier, Esquire
SEYFARTH SHAW
1545 Peachtree Street
Suite 700
Atlanta, Georgia  30309

Kevin D. McDonald
Wilshire Scott & Dyer, P.C.
One Houston Center
1221 McKinney, Suite 4550
Houston, Texas  77010

Christopher Beard, Esquire
Beard & Beard
306 N. Market Street
Frederick, MD  21701

Bernice Conn, Esquire
Robins, Kaplan, Miller & Ciresi LLP
2049 Century Park East, Suite 3700
Los Angeles, CA  90067

Steven R. Schlesinger, Esquire
Jaspan Schlesinger Hoffman LLP
300 Garden City Plaza
Garden City, NY  11530

Steven J. Kherkher, Esquire
Laurence G. Tien, Esquire
Williams Bailey Law Firm, L.L.P.
8441 Gulf Freeway, Suite #600
Houston, Texas  77017

Kimberly W. Osenbaugh
Preston Gates & Ellis LLP
701-5th Avenue
Suite 5000
Seattle, WA  98104-7078

Lewis T. LeClair, Esquire
McKool Smith
300 Crescent Court, Suite 1500
Dallas, Texas  75201

Delta Chemical Corporation
2601 Cannery Avenue
Baltimore, MD  21226-1595

Steven T. Hoort, Esquire
Ropes & Gray
One International Place
Boston, Massachusetts  02110-2624

Peter Van N. Lockwood, Esquire
Julie W. Davis, Esquire
Trevor W. Swett, III, Esquire
Nathan D. Finch, Esquire
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC  20005

Peter A. Chapman
24 Perdicaris Place
Trenton, NJ  08618

Paul M. Matheny
The Law Offices of Peter G. Angelos, P.C.
5905 Harford Rd.
Baltimore, MD  21214

Michael J. Urbis
Jordan, Hyden, Womble & Culbreth, P.C.
2390 Central Blvd, Suite G
Brownsville, TX  78520

Mary A. Coventry
Sealed Air Corporation
Park 80 East
Saddle Brook, New Jersey  07663

Margery N. Reed, Esquire
Duane, Morris & Heckscher LLP
4200 One Liberty Place
Philadelphia, PA  19103-7396

Attn: Meridee Moore and Kirsten Lynch
Farallon Capital Management, L.L.C.
One Maritime Plaza
Suite 1325
San Francisco, California  94111

John M. Klamann
Klamann & Hubbard
7101 College Blvd., Suite 120
Overland Park, KS  66210

Joseph T. Kremer, Esquire
Lipsiptz, Green, Fahringer, Roll, Salisbury & Cambria, L
42 Delaware Avenue, Suite 300
Buffalo, NY  14202

Paul D. Henderson, Esquire
Dies, Dies & Henderson
1009 W. Green Avenue
Orange, TX  77630

Robert Jacobs, Esquire
Maria Rosoff Eskin
Jacobs & Crumplar, P.A.
2 East 7th Street
P.O. Box 1271
Wilmington, DE  19899

Elizabeth S. Kardos, Esquire
Gibbons, Del Deo, Dolan Griffinger & Vecchione, PC
One Riverfront Plaza
Newark, NJ  07102-5497

Thomas J. Noonan, Jr.
c/o R& S Liquidation Company
5 Lyons Mall PMB #530
Basking Ridge, NJ  07920-1928

)
Harry Lee, Esquire
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, DC  20036

(Counsel for Public Service Electric and Gas Company)
William E. Frese, Esquire
Attn:  Sheree L. Kelly, Esquire
80 Park Plaza, T5D
P.O. Box 570
Newark, NJ  07101

(Counsel to Official Committee of Unsecured Creditors)
William S. Katchen, Esquire
Duane, Morris & Heckscher LLP
1 Riverfront Plaza, 2nd Floor
Newark, NJ  07102

(Tennessee Department of Environment and
Conservation – Superfund)
Paul G. Sumers, Esquire
TN Attorney General's Office, Bankr. Unit
P.O. Box 20207
Nashville, TN  37202-0207

(Counsel for numerous asbestos claimants)
Damon J. Chargois, Esquire
Foster & Sear, L.L.P.
360 Place Office Park
1201 N. Watson Road, Suite 145
Arlington, TX  76006

(Counsel for Berry & Berry)
C. Randall Bupp, Esquire
Plastiras & Terrizzi
24 Professional Center Parkway
Suite 150
San Rafael, CA  94903

Anton Volovsek
Rt2 – Box 200 #42
Kamiah, Idah  83536-9229

Peter S. Goodman, Esquire
Andrews & Kurth LLP
805 Third Avenue
New York, New York  10022

Jonathan H. Alden, Esquire
Assistant General Counsel
3900 Commonwealth Boulevard, MS 35
Tallahassee, Floria  32399-3000

Credit Lyonnais
1301 Avenue of the Americas
New York, New York  10019-0602

State Library of Ohio
c/o Michelle T. Sutter
Revenue Recovery
101 E. Town Street, Second Floor
Columbus, OH  43215

Rosa Dominy
Bankruptcy Administration
IOS Capital, Inc.
1738 Bass Road
P.O. Box 13708
Macon, GA  31208-3708

Robert Jacobs, Esquire
Jacobs & Crumplar, P.A.
2 East 7th Street
P.O. Box 1271
Wilmington, DE  19899

Greif Bros. Corp.
250 East Wilson Bridge Rd.
Suite 175
Worthington, OH  4308

(Counsel for SAP America, Inc.)
Stephanie Nolan Deviney
Brown & Connery, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ  08108

Barbara M. Cook, County Solicitor
Katherine L. Taylor, Senior Assistant County Solicitor
Howard County Office of Law
George Howard Building
3430 Courthouse Drive
Ellicott City, Maryland  21043

Danice Sims
P.O. Box 66658
Baton Rouge, Louisiana  70896

M. Diane Jasinski, Esquire
Michael D. Hess
Corporation Counsel of the City of New York
100 Church Street, Room 6-127
New York, New York  10007

Janet Napolitano
Robert R. Hall
Russell W. Savory
1275 West Washington Street
Phoenix, Arizona  85007-1278

Russell W. Savory
Gotten, Wilson & Savory, PLLC
200 Jefferson Avenue, Suite 900
Memphis, Tennessee  38103

Credit Manager
Belz Enterprises
100 Peabody Place, Suite 1400
Memphis, Tennessee  38103

James P. Ruggeri
Scott A. Shail
Hogan & Harton L.L.P.
555 Thirteenth Street,.N.W.
Washington, D.C.  20004-1109

Steven R. Bourne, Esquire
Nutter, McClennen & Fish, LLP
One International Place
Boston, MA  02110-2699

Judy D. Thompson, Esquire
S. Andrew Jurs, Esquire
Poyner & Spruill, L.L.P.
100 North Tryon Street, Suite 4000
Charlotte, North Carolina  28202-4010

Daniel H. Slate, Esquire
Hughes Hubbard & Reed LLP
350 South Grand Avenue
Los Angeles, CA  90071-3442

Andrea L. Hazzard, Esquire
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY  10004-1482

Mr. James A. Bane
KMCC 204029
P.O. Box 710
Keen Mountain, VA  24624

Authur Stein, Esquire
1041 W. Lacey Road
P.O. Box 1070
Forked River, NJ  08731-6070

Robert H. Rosenbaum, Esquire
M. Evan Meyers, Esquire
Meyers, Rodbell & Rosenbaum, P.A.
Berkshire Building
6801 Kenilworth Avenue, Suite 400
Riverdale, Maryland 20737-1385

Maggie De La Rosa
Provost * Umphrey
Law Firm, L.L.P.
490 Park Street
Beaumont, Texas  77701

Anne Marie P. Kelley, Esquire
Dilworth Paxson, LLP
LibertyView – Suite 700
457 Haddonfield Road
P.O. Box 2570
Cherry Hill, NJ  08034

Richard M. Meth, Esquire
Herrick, Feinstein LLP
2 Penn Plaza, 11th Floor
Newark, New Jersey  07105

Kevin James
Deputy Attorney General
1515 Clay Street, 20th Floor
Oakland, CA  94612-1413

Dorine Vork, Esquire
Stibbe, P.C.
350 Park Avenue
New York, New York  10022

Suexirda Prayaga
7365 MacLeod Lane
Ofallon, Missouri  63366

Bart Hartman
Treasurer – Tax Collector
Attn: Elizabeth Molina
1600 Pacific Highway, Room 162
San Diego, CA  92101

Shelley Bethea Gillette & Clark
3850 E. Baseline Road, Suite 125
Mesa, Arizona  85206

David Aelvoet, Esquire
Linebargerheard Goggan Blair
Graham Pena & Sampson LLP
1000 Tower Life Building
San Antonio, TX  78205

Robert Cimino, Esquire
Suffolk County Attorney
Attn: Diane Leonardo Beckmann, Asst. County
H. Lee Dennison Building
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, NY  11788-0099

David Balsley, Jr.
535 Smithfield Street, Suite 619
Pittsburg, PA  15222-2302

Robert T. Aulgur, Jr., Esquire
P.O. Box 617
Odessa, DE  19730
(Attorney for Toyota Motor Credit)

James S. Carr, Esquire
Christena A. Lambrianakos, Esquire
101 Park Avenue
New York, NY  10178
(Counsel for Delco Development Company)

Michael T. Kay, Esquire
Nancy Draves, Esquire
The Dow Chemical Company
2030 Dow Center
Midland, MI  48674
(

Anne Marie P. Kelley, Esquire
Dilworth Paxson, LLP
Liberty View – Suite 700
457 Haddonfield Road
Cherry Hill, New Jersey  08002


Ronald S. Beacher, Esquire
Pitney, Hardin, Kipp & Szuch LLP
711 Third Avenue, 20th Floor
New York, New York  10017-4014
(Attorneys for General Electric Capital Corporation)

Attn: Diane Stewart
Peoples First Community Bank
P.O. Box 59950
Panama City, Florida  32412-0950


Michael B. Willey, Esquire
Legal Services, 27th Floor
312 8th Avenue North
Nashville, Tennessee  37243
(Counsel for Commissioner of Revenue)

Jeffrey L. Glatzer, Esquire
Anderson, Kill & Olick, P.C.
1251 Avenue of the Americas
New York, New York  10020-1182


Thomas V. Askounis, Esquire
Askounis & Borst, P.C.
303 East Wacker Drive
Suite 1000
Chicago, IL  60601

Attn: Ted Weschler
Peninsula Capital Advisors, L.L.C.
404 East Main Street
Second Floor
Charlottesville, VA  22902


E. Katherine Wells, Esquire
South Carolina Department of Health and
Environmental Control
2600 Bull Street
Columbia, South Carolina  29201-1708

Jeffrey Kaufman, Esquire
Gerald F. Ellesdorfer, Esquire
Kaufman & Logan LLP
111 Pine Street, Suite 1300
San Francisco, CA  94111

Michael H. Pinkerson, Esquire
James M. Garner, Esquire
Sher Garner Cahill Richter Klein
    McAlister & Hilbert, L.L.C.
909 Poydras Street, Suite 2800
New Orleans, LA  70112

 Dechert

Catherine Botticelli
Direct Tel: 202.261.3368
catherine.botticelli@dechert.com

May 22, 2001

**VIA FEDERAL EXPRESS**

BOSTON

BRUSSELS

HARRISBURG

HARTFORD

LONDON

NEW YORK

NEWPORT BEACH

PARIS

PHILADELPHIA

PRINCETON

WASHINGTON

David S. Hoffner, Esq.
Swidler Berlin Shereff Friedman, LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174

Re:  W.R. Grace & Co., et al.

Dear David:

Enclosed is the indemnification letter for Brian J. Smith.  Please call me if you have any questions.

Sincerely,

Catherine Botticelli

Enclosure

cc:   Elise Scherr Frejka



EXHIBIT
A

Law Offices of Dechert Price & Rhoads

1775 Eye Street, NW • Washington, DC 20006-2401 • Tel: 202.261.3300 • Fax: 202.261.3333 • www.dechert.com

Robert H. Beber
Executive Vice President and
General Counsel

# GRACE

W. R. Grace & Co.
One Town Center Road
Boca Raton, FL 33486-1010

(407) 362-1959
Fax: (407) 362-1970

March 13, 1997

Confidential

Mr. Brian J. Smith
Executive Vice President & CFO
IMC Global Inc.
2100 Sanders Road
Northbrook, IL  60062

Dear Brian:

Re:    Indemnification

This will confirm that W. R. Grace & Co. ("Grace") will defend and indemnify you
in accordance with the provisions of Article VI of its by-laws in connection with
the pending Miami District Office of the SEC investigation.  I understand that the
law firm of Dechert Price & Rhoads has been retained to represent you in the
subject proceeding.

Pursuant to this agreement, Grace will pay the reasonable expenses, including
attorneys' fees, incurred by you or on your behalf in the defense of the
investigation through its final conclusion.  In the event that it is finally, judicially
determined pursuant to the provisions of the Delaware General Corporation Law
that you are not entitled to indemnification, you agree to repay the amounts
advanced by Grace on your behalf.

You shall, during the period in which Grace is providing you with a defense in
accordance with the provisions of this letter, fully cooperate in the defense of the
investigation.  Grace, in turn, will cooperate with you.

This undertaking by Grace does not constitute an acknowledgment or agreement
by Grace that your conduct was within or outside the scope of your duties as an
officer and/or director of Grace or that the conduct in the performance of your
duties was not wrongful.

-2-

No provision of this letter may be modified, waived or discharged unless such modification, waiver or discharge is agreed to in writing and signed by you and an authorized representative of Grace. The terms of this letter shall be governed by the laws of the State of Delaware. This agreement shall be in addition to and shall not modify or supersede any arrangements or undertakings that you may have with Grace relating to any other matter, including, without limitation, any arrangements or understanding concerning any other lawsuit or claim.

By signing the acknowledgment appearing at the end of this letter, you confirm that this letter is in accordance with your understanding of how you and Grace will proceed in connection with the defense of the investigation. Please sign and date the enclosed copy of this letter and have your signature witnessed as provided below, and return the fully signed copy of this letter to me. You should also keep a fully signed copy of this letter for your file. Please do not hesitate to contact either me or Bob Lamm if you have any questions or comments concerning this matter.

Sincerely,

Enclosure

cc:    R. B. Lamm
       R. S. Strange
       M. Wolinsky

AGREED AND ACCEPTED                WITNESS:

Brian J. Smith

Dated: 7/22/97                     Dated: 7/22/97



Robert H. Beber
Executive Vice President and
General Counsel

W. R. Grace & Co.
One Town Center Road
Boca Raton, FL 33486-1010

(561) 362-1959
Fax: (561) 362-1970

March 12, 1997

<u>Confidential</u>

Mr. Richard Sukenik
P. O. Box 81-1869
Boca Raton, FL  33481-4869

Dear Dick:

Re:     <u>Indemnification</u>

This will confirm that W. R. Grace & Co. ("Grace") will defend and indemnify you
in accordance with the provisions of Article VI of its by-laws in connection with
the pending Miami District Office of the SEC investigation.  I understand that the
law firm of Gordon Altman Butowsky Weitzen Shalov & Wein ("Gordon Altman
Butowsky") has been retained to represent you in the subject proceeding.

Pursuant to this agreement, Grace will pay promptly upon request the reasonable
expenses, including attorneys' fees, incurred by you or on your behalf in the
defense of the investigation through its final conclusion.  In this regard, we
understand that Gordon Altman Butowsky, subject to the approval of Grace, may
seek to retain a consultant to assist in your representation.  In the event that it
is finally, judicially determined pursuant to the provisions of the Delaware General
Corporation Law that you are not entitled to indemnification, you agree to repay
the amounts advanced by Grace on your behalf.

You shall, during the period in which Grace is providing you with a defense in
accordance with the provisions of this letter, fully cooperate in the defense of the
investigation.  Grace, in turn, will fully cooperate with you.

This undertaking by Grace does not constitute an acknowledgment or agreement
by Grace that your conduct was within or outside the scope of your duties as an
officer and/or director of Grace or that the conduct in the performance of your
duties was not wrongful.

-2-

No provision of this letter may be modified, waived or discharged unless such modification, waiver or discharge is agreed to in writing and signed by you and an authorized representative of Grace. The terms of this letter shall be governed by the laws of the State of Delaware. This agreement shall be in addition to and shall not modify or supersede any arrangements or undertakings that you may have with Grace relating to any other matter, including, without limitation, any arrangements or understanding concerning any other lawsuit or claim.

By signing the acknowledgment appearing at the end of this letter, you confirm that this letter is in accordance with your understanding of how you and Grace will proceed in connection with the defense of the investigation. Please sign and date the enclosed copy of this letter and have your signature witnessed as provided below, and return the fully signed copy of this letter to me. You should also keep a fully signed copy of this letter for your file. Please do not hesitate to contact either me or Bob Lamm if you have any questions or comments concerning this matter.

Sincerely,

Enclosure

cc:   R. B. Lamm
      R. S. Strange
      M. Wolinsky
      D. Butowsky

AGREED AND ACCEPTED                    WITNESS:

Richard Sukenik

Dated: as of 3/24/97                   Dated: as of 3/24/97

Robert H. Beber
Executive Vice President and
General Counsel

# GRACE

W. R. Grace & Co.
One Town Center Road
Boca Raton, FL 33486-1010

(561) 362-1959
Fax: (561) 362-1970

June 24, 1997

<u>Confidential</u>

Mr. Philip J. Ryan III
W. R. Grace & Co.
One Town Center Road
Boca Raton, FL  33486-1010

Dear Phil:

Re:    <u>Indemnification</u>

This will confirm that W. R. Grace & Co. ("Grace") will defend and indemnify you
in accordance with the provisions of Article VI of its by-laws in connection with
the pending Miami District Office of the SEC investigation.  I understand that the
law firms of Wachtell, Lipton, Rosen & Katz and Shereff, Friedman, Hoffmann &
Goodman, LLP have been retained to represent you in the subject proceeding.

Pursuant to this agreement, Grace will pay the reasonable expenses, including
attorneys' fees and disbursements, incurred by you or on your behalf in the
defense of the investigation through its final conclusion.  In the event that it is
finally, judicially determined pursuant to the provisions of the Delaware General
Corporation Law that you are not entitled to indemnification, you agree to repay
the amounts advanced by Grace to Shereff, Friedman on your behalf.

You shall, during the period in which Grace is providing you with a defense in
accordance with the provisions of this letter, fully cooperate in the defense of the
investigation.  Grace, in turn, will cooperate with you.

This undertaking by Grace does not constitute an acknowledgment or agreement
by Grace that your conduct was within or outside the scope of your duties as an
employee and/or officer of Grace or that the conduct in the performance of your
duties was not wrongful.

-2-

No provision of this letter may be modified, waived or discharged unless such modification, waiver or discharge is agreed to in writing and signed by you and an authorized representative of Grace.  The terms of this letter shall be governed by the laws of the State of Delaware.  This agreement shall be in addition to and shall not modify or supersede any arrangements or undertakings that you may have with Grace relating to any other matter, including, without limitation, any arrangements or understanding concerning any other lawsuit or claim.

By signing the acknowledgment appearing at the end of this letter, you confirm that this letter is in accordance with your understanding of how you and Grace will proceed in connection with the defense of the investigation.  Please sign and date the enclosed copy of this letter in the spaces provided below for those purposes, and return the fully signed copy of this letter to me.  You should also keep a fully signed copy of this letter for your file.  Please do not hesitate to contact either me or Bob Lamm if you have any questions or comments concerning this matter.

Sincerely,

Enclosure

cc:    R. B. Lamm
       R. S. Strange
       M. Wolinsky
       R. Jossen

AGREED AND ACCEPTED

Philip J. Ryan III

Dated:  9/8/97

-3-

WITNESS:

*Vicki A. Carra*

Dated: _9/8/97_

# ROSENMAN & COLIN

575 MADISON AVENUE, NEW YORK, NY 10022-2585

TELEPHONE (212) 940-8800
CABLE ROCOKAY NEWYORK
TELECOPIER (212) 940-8776
(212) 935-0679
TELEX 42757i ROSCOL (ITT)
971520 RCFLC NYK (w u )

SAMUEL I ROSENMAN (1896-1973)
RALPH F COLIN (1900-1985)

WASHINGTON OFFICE
1300 19TH STREET, N W
WASHINGTON, D C 20036
TELEPHONE (202) 463-7177

GERALD WALPIN
(212) 940-7100

March 22, 1995

Robert Beber, Esq.
General Counsel
W. R. Grace & Company
One Town Center Road
Boca Raton, Florida  33486-1010

Re:  __J. P. Bolduc__

Dear Mr. Beber:

I write as counsel to J. P. Bolduc to confirm, in detail, part of the understanding under the agreement dated March 7, 1995 between J. P. Bolduc and W. R. Grace & Company (the "Agreement").

This will confirm:

1.

2.  Despite his resignation from the Board of Directors, Mr. Bolduc will continue to receive the same rights of indemnification with respect to his service to the Company (and subject to the same limitations) as granted to the other members of the Board generally with respect to his service to the Company, as if he had remained a member of the Board, subject, of course, to the requirements of New York State law concerning indemnification of directors and officers.  In this regard, the Company confirms that, in connection with the lawsuit entitled Weiser v. Grace, et al. (and any other lawsuit that might be commenced against Mr. Bolduc due to his service as, and resignation from, his positions as officer, employee and director of the Company), Mr. Bolduc will receive indemnification for all legal expenses, costs and liabilities, if any, he incurs in defending.  Because it is recognized that Mr. Bolduc's current situation is different from other directors, precluding at this time one lawyer representing all directors including Mr. Bolduc, it is understood that Mr. Bolduc may choose individual counsel to defend him, and that the



EXHIBIT

B

Robert Beber, Esq.
March 22, 1995
Page 2


Company will pay all reasonable legal expenses incurred by Mr.
Bolduc in that defense on an ongoing monthly basis, subject only
to the provision of New York State law concerning repayment by an
indemnified officer or director for amounts thus advanced.

    Please signify that the above correctly reflects our
understanding by signing a copy of this letter on the line
indicated and returning it to me.

                              Very truly yours,

                              Gerald Walpin

GW:vb                         / Gerald Walpin


    AGREED:

    W. R. Grace & Co.


    By
        Robert Beber

made against him, but because he believed that he had lost the support of the Board and that his future effectiveness as Chief Executive Officer had been compromised. The negotiations resulted in agreements providing for Mr. Bolduc's resignation as President and Chief Executive Officer of the Company effective March 3, 1995, and Mr. Bolduc subsequently resigned as a director of the Company effective March 17, 1995 ("Bolduc Resignation Arrangements").

Pursuant to the Bolduc Resignation Arrangements, Mr. Bolduc's employment agreement with the Company was terminated, Mr. Bolduc received a lump sum payment of $5,062,208 in connection with the termination of his employment agreement and in lieu of monthly severance payments that would otherwise have been due thereunder, and the Company acquired from Mr. Bolduc 268,348 shares of the Company's Common Stock (including 101,148 shares subject to restrictions on resale and 5,725 shares not previously vested) for a purchase price of $12,075,860 (or $45 per share), less $4,900 repaid to the Company pursuant to Section 16 of the Securities Exchange Act of 1934, and less $400,000 in repayment of a loan made in 1987 to Mr. Bolduc by a subsidiary of the Company. The Bolduc Resignation Arrangements also provide for the payment to Mr. Bolduc of deferred compensation owed to Mr. Bolduc in the aggregate principal amount of $1,529,604, plus interest, in quarterly installments over a 10-year period commencing June 30, 1995, and for the payment of gross pension benefits to Mr. Bolduc until his death (and, if his wife shall survive him, to her until her death) of $848,585 per year commencing in April 1995, such pension benefits to be calculated as though Mr. Bolduc were retiring at age 62 (rather than at his actual age of 55 years and 7 months). Under the Bolduc Resignation Arrangements, Mr. Bolduc and his wife will continue to receive medical coverage under the Company's retiree medical plan (subject to payment by Mr. Bolduc of a portion of the premium on the same basis as other retirees) and continued coverage under the Company's "split-dollar" life insurance policy in the face amount of $4.5 million currently maintained for Mr. Bolduc by the Company (with annual premiums continuing to be shared by Mr. Bolduc and the Company in accordance with the terms of the policy at a cost to the Company of approximately $300,000 per year until 2008, at which time the Company will receive a full return of all premiums paid). In addition, Mr. Bolduc will continue to hold previously granted options covering 655,000 shares of the Company's Common Stock (including previously unexercisable options covering 290,000 shares that, pursuant to the Bolduc Resignation Arrangements, became exercisable immediately and at any time through March 31, 1998). In payment of his rights under the LTIP, Mr. Bolduc received a payment of $1,250,000. Mr. Bolduc's balance of approximately $620,000 under the Company's Salaried Employees Savings and Investment Plan will be paid to him in accordance with his election under the terms of that Plan. The Bolduc Resignation Arrangements also provide Mr. Bolduc with ownership of a car and certain office furniture previously provided to him by the Company for his use and provide that the Company will reimburse Mr. Bolduc for certain legal fees associated with his resignation and that Mr. Bolduc will be entitled to the benefit of certain rights of indemnification by the Company as provided in the Company's By-laws. Mr. Bolduc agreed, in the Bolduc Resignation Arrangements, not to engage in any business which is in substantial competition with the Company in any of the Company's current six core businesses until he reaches the age of 62. The Bolduc Resignation Arrangements provide that the Company would make no disclosure to any third person with respect to the circumstances of Mr. Bolduc's resignation other than pursuant to an agreed upon press release that stated that Mr. Bolduc's "decision to resign his position resulted from differences of style and philosophy with the Company's leadership," except as required by law or in certain other specified circumstances. In addition, Mr. Bolduc had the right, in certain circumstances, to have the Company state that no complaint of misconduct has ever been filed against Mr. Bolduc. In connection with Mr. Bolduc's resignation as a director, the Company confirmed to Mr. Bolduc that he will be entitled to indemnification by the Company to the full extent permitted by New York law with respect to his service as a director.

The agreements providing for the Bolduc Resignation Arrangements were filed



AMENDED AND RESTATED
BY-LAWS
OF
W. R. GRACE & CO.
INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE

ARTICLE I

OFFICES AND RECORDS

Section 1.1.  Delaware Office.  The principal office of the Corporation in the State of Delaware shall be located in Wilmington, Delaware, and the name and address of its registered agent is The Prentice-Hall Corporation System, Inc., 1013 Centre Road, Wilmington, Delaware.

Section 1.2.  Other Offices.  The Corporation may have such other offices, either within or without the State of Delaware, as the Board of Directors may designate or as the business of the Corporation may from time to time require.

Section 1.3.  Books and Records.  The books and records of the Corporation may be kept outside the State of Delaware at such place or places as may from time to time be designated by the Board of Directors.

ARTICLE II

STOCKHOLDERS

Section 2.1.  Annual Meeting.  The annual meeting of the stockholders of the Corporation shall be held annually (a) on the tenth day of May, or (b) if such day be a Saturday, Sunday or a holiday at the place where the meeting is to be held, on the last business day preceding or on the first business day after such tenth day of May, as may be fixed by the Board of Directors, or (c) on such other date as may be fixed by the Board of Directors.

Section 2.2.  Special Meeting.  Subject to the rights of the holders of any series of stock having a preference over the Common Stock of the Corporation as to dividends or upon liquidation ("Preferred Stock") with respect to such series of Preferred Stock, special meetings of the stockholders may be called only by the Chairman, by the President or by the Board of Directors pursuant to a resolution adopted by a majority of the total number of directors which the Corporation would have if there were no vacancies (the "Whole Board").

EXHIBIT

C

2

Section 2.3.   Place of Meeting.  The Chairman, the President or the Board of Directors, as the case may be, may designate the place of meeting for any annual meeting or for any special meeting of the stockholders called by the Chairman, the President or the Board of Directors.  If no designation is so made, the place of meeting shall be the principal office of the Corporation.

Section 2.4.   Notice of Meeting.  Written or printed notice, stating the place, date and time of the meeting and the purpose or purposes for which the meeting is called, shall be delivered by the Corporation not less than ten (10) days nor more than sixty (60) days before the date of the meeting, either personally or by mail, to each stockholder of record entitled to vote at such meeting.  If mailed, such notice shall be deemed to be delivered when deposited in the U.S. mail with postage thereon prepaid, addressed to the stockholder at his address as it appears on the stock transfer books of the Corporation.  Such further notice shall be given as may be required by law.  Only such business shall be conducted at a special meeting of stockholders as shall have been brought before the meeting pursuant to the Corporation's notice of meeting.  Meetings may be held without notice if all stockholders entitled to vote are present, or if notice is waived by those not present in accordance with Section 4.4 of these By-laws.  Any previously scheduled meeting of the stockholders may be postponed, and (unless the Certificate of Incorporation otherwise provides) any special meeting of the stockholders may be cancelled, by resolution of the Board of Directors upon public notice given prior to the date previously scheduled for such meeting of stockholders.

Section 2.5.   Quorum and Adjournment.  Except as otherwise provided by law or by the Certificate of Incorporation, the holders of a majority of the outstanding shares of the Corporation entitled to vote generally in the election of directors (the "Voting Stock"), represented in person or by proxy, shall constitute a quorum at a meeting of stockholders, except that when specified business is to be voted on by a class or series of stock voting as a class, the holders of a majority of the voting power of the shares of such class or series shall constitute a quorum of such class or series for the transaction of such business.  The Chairman of the meeting or a majority of the shares so represented may adjourn the meeting from time to time, whether or not there is a quorum.  No notice of the time and place of adjourned meetings need be given except as required by law.  The stockholders present at a duly called meeting at which a quorum is present may continue to transact business until adjournment, notwithstanding the withdrawal of enough stockholders to leave less than a quorum.

Section 2.6.   Proxies.  At all meetings of stockholders, a stockholder may vote by proxy executed in writing (or in any other manner permitted by law) by the stockholder, or by his duly authorized attorney-in-fact.

Section 2.7.   Notice of Stockholder Business and Nominations.   (A) Annual Meetings of Stockholders.  (1)  Nominations of persons for election to the Board of

- 2 -

MAY.30.2001 12:53PM  DECHERT                                          NO.9704   P. 4
JUL. 8. 1997  4:01PM  WACHTELL, PRICE&RHOADS                            NO.2549  P. 4
SENT BY:                    /- 8-9/ ;12:50PM ;        WACHTELL LIPTON-     CMC DCO 3SOTTIS 4

Case 01:01-cv-AMEI Doc 534   Filed 06/19/01   Page 48 of 63

3

Directors of the Corporation and the proposal or business to be considered by
the stockholders may be made at an annual meeting of stockholders (a) pursuant
to the Corporation's notice of meeting, (b) by or at the direction of the Board
of Directors or (c) by any stockholder of the Corporation who was a stockholder
of record at the time of giving of the notice provided for in this Section 2.7,
who is entitled to vote at the meeting and who complies with the notice
procedures set forth in this Section 2.7.

(2)   For nominations or other business to be properly brought before an
annual meeting by a stockholder pursuant to clause (c) of paragraph (A)(1) of
this Section 2.7, the stockholder must have given timely notice thereof in
writing to the Secretary of the Corporation, and such other business must
otherwise be a proper matter for stockholder action.  To be timely, a
stockholder's notice shall be delivered to the Secretary at the principal
executive offices of the Corporation not later than the close of business on
the 60th day nor earlier than the close of business on the 90th day prior to
the first anniversary of the preceding year's annual meeting; provided,
however, that in the event that the date of the annual meeting is more than 30
days before or more than 60 days after such anniversary date, notice by the
stockholder to be timely must be so delivered not earlier than the close of
business on the 90th day prior to such annual meeting and not later than the
close of business on the later of the 60th day prior to such annual meeting or
the 10th day following the day on which public announcement of the date of such
meeting is first made by the Corporation.  In no event shall the public
announcement of an adjournment of an annual meeting commence a new time period
for the giving of a stockholder's notice as described above.  Such
stockholder's notice shall set forth (a) as to each person whom the stockholder
proposes to nominate for election or re-election as a director all information
relating to such person that is required to be disclosed in solicitations of
proxies for election of directors in an election contest, or is otherwise
required, in each case pursuant to Regulation 14A under the Securities Exchange
Act of 1934, as amended (the "Exchange Act"), and rule 14a-11 thereunder
(including such person's written consent to being named in the proxy statement
as a nominee and to serving as a director if elected); (b) as to any other
business that the stockholder proposes to bring before the meeting, a brief
description of the business desired to be brought before the meeting, the
reasons for conducting such business at the meeting and any material interest
in such business of such stockholder and the beneficial owner, if any, on whose
behalf the proposal is made; and (c) as to the stockholder giving the notice
and the beneficial owner, if any, on whose behalf the nomination or proposal is
made (i) the name and address of such stockholder, as they appear on the
Corporation's books, and of such beneficial owner and (ii) the class and number
of shares of the Corporation which are owned beneficially and of record by such
stockholder and such beneficial owner.

(3)   Notwithstanding anything in the second sentence of paragraph (A)(2)
of this Section 2.7 to the contrary, in the event that the number of directors
to be elected to

the Board of Directors of the Corporation is increased and there is no public announcement by the Corporation naming all of the nominees for election as director or specifying the size of the increased Board of Directors at least 70 days prior to the first anniversary of the preceding year's annual meeting, a stockholder's notice required by this Section 2.7 shall also be considered timely, but only with respect to nominees for any new positions created by such increase. If it shall be delivered to the Secretary at the principal executive offices of the Corporation not later than the close of business on the 10th day following the day on which such public announcement is first made by the Corporation.

(B)  *Special Meetings of Stockholders.*  Only such business shall be conducted at a special meeting of stockholders as shall have been brought before the meeting pursuant to the Corporation's notice of meeting. Nominations of persons for election to the Board of Directors may be made at a special meeting of stockholders at which directors are to be elected pursuant to the Corporation's notice of meeting (a) by or at the direction of the Board of Directors or (b) provided that the Board of Directors has determined that directors shall be elected at such meeting, by any stockholder of the Corporation who is a stockholder of record at the time of giving of notice provided for in this Section 2.7, who shall be entitled to vote at the meeting and who complies with the notice procedures set forth in this Section 2.7. In the event the Corporation calls a special meeting of stockholders for the purpose of electing one or more directors to the Board of Directors, any such stockholder may nominate a person or persons (as the case may be), for election to such position(s) as specified in the Corporation's notice of meeting, if the stockholder's notice required by paragraph (A)(2) of this Section 2.7 shall be delivered to the Secretary at the principal executive offices of the Corporation not earlier than the close of business on the 90th day prior to such special meeting and not later than the close of business on the later of the 60th day prior to such special meeting or the 10th day following the day on which public announcement is first made of the date of the special meeting and of the nominees proposed by the Board of Directors to be elected at such meeting. In no event shall the public announcement of an adjournment of a special meeting commence a new time period for the giving of a stockholder's notice as described above.

(C)  *General.*  (1)  Only such persons who are nominated in accordance with the procedures set forth in this Section 2.7 shall be eligible to serve as directors and only such business shall be conducted at a meeting of stockholders as shall have been brought before the meeting in accordance with the procedures set forth in this Section 2.7. Except as otherwise provided by law, the Certificate of Incorporation or these By-laws, the chairman of the meeting shall have the power and duty to determine whether a nomination or any business proposed to be brought before the meeting was made or proposed, as the case may be, in accordance with the procedures set forth in this Section 2.7 and, if any proposed nomination or business

- 4 -

5

is not in compliance with this Section 2.7, to declare that such defective proposal or nomination shall be disregarded.

(2)  For purposes of this Section 2.7, "public announcement" shall mean disclosure in a press release reported by the Dow Jones News Service, Associated Press or a comparable national news service or in a document publicly filed by the Corporation with the Securities and Exchange Commission pursuant to Section 13, 14 or 15(d) of the Exchange Act.

(3)  Notwithstanding the foregoing provisions of this Section 2.7, a stockholder shall also comply with all applicable requirements of the Exchange Act and the rules and regulations thereunder with respect to the matters set forth in this by-law.  Nothing in this Section 2.7 shall be deemed to affect any rights (i) of stockholders to request inclusion of proposals in the Corporation's proxy statement pursuant to Rule 14a-8 under the Exchange Act or (ii) of the holders of any series of Preferred Stock to elect directors under specified circumstances.

Section 2.8.  Procedure for Election of Directors; Required vote. Election of directors at all meetings of the stockholders at which directors are to be elected shall be by ballot, and, subject to the rights of the holders of any series of Preferred Stock to elect directors under specified circumstances, a plurality of the votes cast thereat shall elect directors. Except as otherwise provided by law, the Certificate of Incorporation, or these By-laws, in all matters other than the election of directors, the affirmative vote of a majority of the shares present in person or represented by proxy at the meeting and entitled to vote on the matter shall be the act of the stockholders.

Section 2.9.  Inspectors of Elections; Opening and Closing the Polls. The Board of Directors by resolution shall appoint one or more inspectors, which inspector or inspectors may include individuals who serve the Corporation in other capacities, including, without limitation, as officers, employees, agents or representatives, to act at meetings of stockholders and make written reports thereof.  One or more persons may be designated as alternate inspectors to replace any inspector who fails to act.  If no inspector or alternate has been appointed to act or is able to act at a meeting of stockholders, the chairman of the meeting shall appoint one or more inspectors to act at the meeting. Each inspector, before discharging his or her duties, shall take and sign an oath faithfully to execute the duties of inspector with strict impartiality and according to the best of his or her ability.  The inspectors shall have the duties prescribed by law.

The chairman of the meeting shall fix and announce at the meeting the date and time of the opening and the closing of the polls for each matter upon which the stockholders will vote at a meeting.

- 5 -

6

## ARTICLE III

### BOARD OF DIRECTORS

Section 3.1.  General Powers.  The business and affairs of the Corporation
shall be managed under the direction of the Board of Directors.  In addition to
the powers and authorities by these By-laws expressly conferred upon them, the
Board of Directors may exercise all such powers of the Corporation and do all
such lawful acts and things as are not by statute or by the Certificate of
Incorporation or by these By-laws required to be exercised or done by the
stockholders.

Section 3.2.  Number, Tenure and Qualifications.  Subject to the rights of
the holders of any series of Preferred Stock to elect directors under specified
circumstances, the number of directors shall be fixed from time to time
exclusively pursuant to a resolution adopted by a majority of the whole Board.
The directors, other than those who may be elected by the holders of any series
of Preferred Stock under specified circumstances, shall be divided, with
respect to the time for which they severally hold office, into three classes,
as nearly equal in number as is reasonably possible, designated Class I, Class
II and Class III, with the initial term of office of the Class I directors to
expire at the 1997 annual meeting of stockholders, the initial term of office
of the Class II directors to expire at the 1998 annual meeting of stockholders
and the initial term of office of the Class III directors to expire at the 1999
annual meeting of stockholders, with each director to hold office until his or
her successor shall have been duly elected and qualified.  No person shall be
nominated for election as a director if such person will have attained the age
of 70 prior to the expiration of his or her term of office.  At each annual
meeting of stockholders, commencing with the 1997 annual meeting, directors
elected to succeed those directors whose terms then expire shall be elected for
a term of office to expire at the third succeeding annual meeting of
stockholders after their election, with each director to hold office until his
or her successor shall have been duly elected and qualified.

Section 3.3.  Regular Meetings.  A regular meeting of the Board of
Directors shall be held without other notice than this Section 3.3 immediately
after, and at the same place as, the Annual Meeting of Stockholders.  The Board
of Directors may fix the time and place for the holding of additional regular
meetings without notice.

Section 3.4.  Special Meetings.  Special meetings of the Board of
Directors shall be called at the request of the Chairman, the President or a
majority of the directors then in office.  The person or persons authorized to
call special meetings of the Board of Directors may fix the place and time of
such meetings.

Section 3.5.  Notice.  Notice of any special meeting or notice of a change
in the time or place of any regular meeting of the Board of Directors shall be
given to each

- 6 -

MAY. 30. 2001 12:54PM    DECHERT   SMITH    NO. 0704   P. 8
JUL. 8. 1997   Case 01-01139-AMC   Doc 534   Filed 06/19/01   Page 52 of 63
NO. 2549   P. 8

7

director at his or her business or residence in writing by hand delivery, first-class or overnight mail or courier service, telegram or facsimile transmission, or orally by telephone. If mailed by first-class mail, such notice shall be deemed adequately delivered when deposited in the U.S. mails so addressed, with postage thereon prepaid, at least five (5) days before such meeting. If by telegram, overnight mail or courier service, such notice shall be deemed adequately delivered when the telegram is delivered to the telegraph company or the notice is delivered to the overnight mail or courier service company at least twenty-four (24) hours before such meeting. If by facsimile transmission, such notice shall be deemed adequately delivered when the notice is transmitted at least twelve (12) hours before such meeting. If by telephone, the notice shall be communicated to the director or his or her representative or answering machine. If by telephone or by hand delivery, the notice shall be given at least twenty-four (24) hours prior to the time set for the meeting. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board of Directors need be specified in the notice of such meeting, except for amendments to these By-laws, as provided under Section 8.1. A meeting may be held at any time without notice if all the directors are present or if those not present waive notice of the meeting in accordance with Section 6.4 of these by-laws.

Section 3.6. Action by Consent of Board of Directors. Any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting if all members of the Board of Directors or committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board of Directors or committee.

Section 3.7. Conference Telephone Meetings. Members of the Board of Directors, or any committee thereof, may participate in a meeting of the Board of Directors or such committee by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at such meeting.

Section 3.8. Quorum. Subject to Section 3.9, a number of directors equal to at least a majority of the whole Board shall constitute a quorum for the transaction of business. If at any meeting of the Board of Directors there shall be less than a quorum present, a majority of the directors present may adjourn the meeting from time to time without further notice. The act of the majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors. The directors present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough directors to leave less than a quorum.

Section 3.9. Vacancies. Subject to applicable law and the rights of the holders of any series of Preferred Stock with respect to such series of Preferred Stock, and

- 7 -

unless the Board of Directors otherwise determines, vacancies resulting from death, resignation, retirement, disqualification, removal from office or other cause, and newly created directorships resulting from any increase in the authorized number of directors, may be filled only by the affirmative vote of a majority of the remaining directors, though less than a quorum of the Board of Directors, and directors so chosen shall hold office for a term expiring at the annual meeting of stockholders at which the term of office of the class to which they may have been elected expires and until such director's successor shall have been duly elected and qualified. No decrease in the number of authorized directors constituting the Whole Board shall shorten the term of any incumbent director.

Section 3.10. Committees. The Board of Directors may establish one or more committees. Each Committee shall consist of two or more directors of the Corporation designated by the Board of Directors. The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. Any such committee may to the extent permitted by law exercise such powers and shall have such responsibilities as shall be specified in the designating resolution. In the absence or disqualification of any member of such committee or committees, the member or members thereof present at any meeting and not disqualified from voting, whether or not constituting a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member. Each committee shall keep written minutes of its proceedings and shall report such proceedings to the Board of Directors when requested.

A majority of any committee may determine its action and fix the time and place of its meetings, unless the Board of Directors shall otherwise provide. Notice of such meetings shall be given to each member of the committee in the manner provided for in Section 3.5 of these By-laws. The Board of Directors shall have the power at any time to fill vacancies in, to change the membership of, or to dissolve any such committee. Nothing herein shall be deemed to prevent the Board of Directors from appointing one or more committees consisting in whole or in part of persons who are not directors of the Corporation; provided, however, that no such committee shall have or may exercise any authority of the Board of Directors.

The term of office of a committee member shall be as provided in the resolution of the Board designating him or her but shall not exceed his or her term as a director. If prior to the end of his term, a committee member should cease to be a director, he or she shall cease to be a committee member. Any member of a committee may resign at any time by giving written notice to the Board of Directors, the Chairman, the President or the Secretary. Such resignation shall take effect as provided in Section 6.6 of these By-laws in the case of resignations by directors. Any member of a committee may be removed from such committee, either with or without cause, at any

- 8 -

9

time, by resolution adopted by a majority of the whole Board. Any vacancy in a committee shall be filled by the Board of Directors in the manner prescribed by these By-Laws for the original designation of the members of such committee.

Section 3.11.  Committee on Officers' Compensation. Pursuant to Section 3.10 of these By-laws, the Board of Directors shall designate a committee to evaluate the performance of, and to recommend the appropriate level of compensation for, officers of the Corporation. Such committee shall have access to an advisor not otherwise serving the Corporation. Each member of such committee shall be an "independent director", as that term is defined in the following sentence. For purposes of this Section 3.11, an "independent director" shall mean a person who (a) has not been employed by the Corporation within the past five years; (b) is not, and is not affiliated with, a firm that is an advisor or consultant to the Corporation; (c) is not affiliated with any customer or supplier of the Corporation whose purchases from and/or sales to the Corporation exceed 3% of the sales and revenues of such customer or supplier for its most recently completed fiscal year; (d) has no personal services contract with the Corporation; (e) is not affiliated with a tax-exempt entity, not otherwise affiliated with the Corporation, that receives contributions from the Corporation that exceed 1% of such entity's gross contributions for its most recently completed fiscal year; and (f) is not a member of the "immediate family" (as defined in Item 404(a) of Securities and Exchange Commission Regulation S-K) of any person described in clauses (a) through (e).

Section 3.12.  Removal. Subject to the rights of the holders of any series of Preferred Stock with respect to such series of Preferred Stock, any director, or the entire Board of Directors, may be removed from office at any time by the shareholders, but only for cause.

Section 3.13.  Records. The Board of Directors shall cause to be kept a record containing the minutes of the proceedings of the meetings of the Board of Directors and of the stockholders, appropriate stock books and registers and such books of records and accounts as may be necessary for the proper conduct of the business of the Corporation.

ARTICLE IV

OFFICERS

Section 4.1.  Elected Officers. The elected officers of the Corporation shall be a Chairman, a President, a Secretary, a Treasurer, and such other officers (including, without limitation, a Chief Financial Officer) as the Board of Directors may deem proper from time to time. The Chairman shall be chosen from among the directors.

- 9 -

10

Each officer elected by the Board of Directors shall have such powers and duties as generally pertain to his or her respective office, subject to the specific provisions of this ARTICLE IV. Such officers shall also have such powers and duties as may be conferred from time to time by the Board of Directors. The Board of Directors may from time to time elect, or the Chairman or President may appoint, such assistant officers (including one or more Assistant Vice Presidents, Assistant Secretaries, Assistant Treasurers and Assistant Controllers) as may be necessary or desirable for the conduct of the business of the Corporation. Such assistant officers shall have such duties and shall hold their offices for such terms as shall be provided in these By-laws or as may be prescribed by the Board of Directors or by the Chairman or President, as the case may be.

Section 4.2. Election and Term of Office. The elected officers of the Corporation shall be elected annually by the Board of Directors at the regular meeting of the Board of Directors held after the annual meeting of the stockholders or at any other time as the Board of Directors may deem proper. Each officer shall hold office until his successor shall have been duly elected and shall have qualified or until his death or until he shall resign, but any officer may be removed from office at any time by the affirmative vote of a majority of the Whole Board or, except in the case of an officer elected by the Board of Directors, by the Chairman or President. Such removal shall be without prejudice to the contractual rights, if any, of the person so removed.

Section 4.3. Chairman. The Chairman shall preside at all meetings of the stockholders and of the Board of Directors and shall be the Chief Executive Officer of the Company. The Chairman shall be responsible for the general management of the affairs of the Corporation and shall perform all duties incidental to his office which may be required by law and all such other duties as are properly required of him by the Board of Directors. He shall make reports to the Board of Directors and the stockholders, and shall see that all orders and resolutions of the Board of Directors and of any committee thereof are carried into effect. The Chairman may also serve as President, if so elected by the Board of Directors.

Section 4.4. President. The President shall act in a general executive capacity and shall assist the Chairman in the administration and operation of the Corporation's business and the general supervision of its policies and affairs. In the absence of or the inability to act of the Chairman, the President shall perform all duties of the Chairman and preside at all meetings of stockholders and of the Board of Directors.

Section 4.5. Vice Presidents. Each Vice President shall have such powers and shall perform such duties as shall be assigned to him by the Board of Directors.

Section 4.6. Chief Financial Officer. The Chief Financial Officer (if any) shall be a Vice President and act in an executive financial capacity. He shall assist the

- 10 -

11

Chairman and the President in the general supervision of the Corporation's financial policies and affairs.

Section 4.7.  Treasurer.  The Treasurer shall exercise general supervision over the receipt, custody and disbursement of corporate funds.  The Treasurer shall cause the funds of the Corporation to be deposited in such banks as may be authorized by the Board of Directors, or in such banks as may be designated as depositaries in the manner provided by resolution of the Board of Directors.  He shall have such further powers and duties and shall be subject to such directions as may be granted or imposed upon him from time to time by the Board of Directors, the Chairman or the President.

Section 4.8.  Secretary.  The Secretary shall keep or cause to be kept in one or more books provided for that purpose, the minutes of all meetings of the Board of Directors, the committees of the Board of Directors and the stockholders; he shall see that all notices are duly given in accordance with the provisions of these By-laws and as required by law; he shall be custodian of the records and the seal of the Corporation (unless the seal of the Corporation on such stock certificates shall be a facsimile, as hereinafter provided) and affix all stock certificates of the Corporation and attest the seal to and attest the seal to all other documents to be executed on behalf of the Corporation under its seal; and he shall see that the books, reports, statements, certificates and other documents and records required by law to be kept and filed are properly kept and filed; and in general, he shall perform all the duties incident to the office of Secretary and such other duties as from time to time may be assigned to him by the Board of Directors, the Chairman or the President.

Section 4.9.  Controller.  The Controller shall have general control, charge and supervision of the accounts of the Corporation.  He shall see that proper accounts are maintained and that all accounts are properly credited from time to time.  He shall prepare or cause to be prepared the financial statements of the Corporation.

Section 4.10.  Removal.  Any officer elected by the Board of Directors may be removed by the affirmative vote of a majority of the Whole Board whenever, in their judgment, the best interests of the Corporation would be served thereby.  Any assistant officer appointed by the Chairman or the President may be removed by him whenever, in his judgment, the best interests of the Corporation would be served thereby.  No elected officer shall have any contractual rights against the Corporation for compensation by virtue of such election beyond the date of the election of his successor, his death, his resignation or his removal, whichever event shall first occur, except as otherwise provided in an employment contract or under an employee deferred compensation plan.

- 11 -

12

Section 4.11.  Vacancies.  A newly created elected office and a vacancy in any elected office because of death, resignation, or removal may be filled by the Board of Directors for the unexpired portion of the term at any meeting of the Board of Directors.

ARTICLE V

STOCK CERTIFICATES AND TRANSFERS

Section 5.1.  Stock Certificates and Transfers.  The interest of each stockholder of the Corporation shall be evidenced by certificates for shares of stock in such form as the appropriate officers of the Corporation may from time to time prescribe.  The shares of the stock of the Corporation shall be transferred on the books of the Corporation by the holder thereof in person or by his attorney, upon surrender for cancellation of certificates for at least the same number of shares, with an assignment and power of transfer endorsed thereon or attached thereto, duly executed, with such proof of the authenticity of the signature as the Corporation or its agents may reasonably require.

The certificates of stock shall be signed, countersigned and registered in such manner as the Board of Directors may by resolution prescribe, which resolution may permit all or any of the signatures on such certificates to be in facsimile.  In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate has ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if he were such officer, transfer agent or registrar at the date of issue.

Section 5.2.  Lost, Stolen or Destroyed Certificates.  No certificate for shares of stock in the Corporation shall be issued in place of any certificate alleged to have been lost, destroyed or stolen, except on production of such evidence of such loss, destruction or theft and on delivery to the Corporation of a bond of indemnity in such amount, upon such terms and secured by such surety, as the Board of Directors or any financial officer may in its or his discretion require.

ARTICLE VI

MISCELLANEOUS PROVISIONS

Section 6.1.  Fiscal Year.  The fiscal year of the Corporation shall begin on the first day of January and end on the thirty-first day of December of each year.

- 12 -

13

Section 6.2. Dividends. The Board of Directors may from time to time declare, and the Corporation may pay, dividends on its outstanding shares in the manner and upon the terms and conditions provided by law and the Certificate of Incorporation.

Section 6.3. Seal. The corporate seal shall have ascribed thereon the words "Corporate Seal", the year of incorporation and around the margin thereof the words "W. R. Grace & Co."

Section 6.4. Waiver of Notice. Whenever any notice is required to be given to any stockholder or director of the Corporation under the provisions of the General Corporation Law of the State of Delaware or these By-laws, a waiver thereof in writing, signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice. The attendance of any shareholder at a meeting in person or by proxy, without protesting at the beginning of the meeting the lack of notice of such meeting, shall constitute a waiver of notice of such shareholder. Neither the business to be transacted at, nor the purpose of, any annual or special meeting of the stockholders or the Board of Directors or committee thereof need be specified in any waiver of notice of such meeting.

Section 6.5. Audits. The accounts, books and records of the Corporation shall be audited upon the conclusion of each fiscal year by an independent certified public accountant selected by the Board of Directors, and it shall be the duty of the Board of Directors to cause such audit to be done annually.

Section 6.6. Resignations. Any director or any officer or assistant officer, whether elected or appointed, may resign at any time by giving written notice of such resignation to the Chairman, the President, or the Secretary, and such resignation shall be deemed to be effective as of the close of business on the date said notice is received by the Chairman, the President, or the Secretary, or at such later time as is specified therein. No formal action shall be required of the Board of Directors or the stockholders to make any such resignation effective.

Section 6.7. Indemnification and Insurance. (a) Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit, or proceeding, whether civil, criminal, administrative or investigative (hereinafter, a "proceeding"), by reason of the fact that he or she or a person of whom he or she is the legal representative is or was a director or officer of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans maintained or sponsored by the Corporation, whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent or in any other capacity while serving

- 13 -

MAY. 30. 2001 12:56PM PM DECHERT SMITH      NO.0704   P. 15. 15

JUL. 8. 1999 4:07PM      DECHERT, PRICE GERHOADS    WACHTELL LIPTON     NO. 2549   P. 15.

Case 01-01139-AMC   Doc 534    Filed 06/19/01    Page 59 of 63

14

as a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such Amendment permits the Corporation to provide broader indemnification rights than said law permitted the Corporation to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by such person in connection therewith, and such indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators; provided, however, that except as provided in paragraph (C) of this Section 6.7, the Corporation shall indemnify any such person seeking indemnification in connection with a proceeding (or part thereof) initiated by such person only if such proceeding (or part thereof) was authorized by the Board of Directors. The right to indemnification conferred in this Section 6.7 shall be a contract right and shall include the right to be paid by the Corporation the expenses incurred in defending any such proceeding in advance of its final disposition, such advances to be paid by the Corporation within 30 days after the receipt by the Corporation of a statement or statements from the claimant requesting such advance or advances from time to time; provided, however, that if the General Corporation Law of the State of Delaware requires, the payment of such expenses incurred by a director or officer in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such person while a director or officer, including, without limitation, service to an employee benefit plan) in advance of the final disposition of a proceeding, shall be made only upon delivery to the Corporation of an undertaking by or on behalf of such director or officer, to repay all amounts so advanced if it shall ultimately be determined that such director or officer is not entitled to be indemnified under this Section 6.7 or otherwise.

(B) To obtain indemnification under this Section 6.7, a claimant shall submit to the Corporation a written request, including therein or therewith such documentation and information as is reasonably available to the claimant and is reasonably necessary to determine whether and to what extent the claimant is entitled to indemnification. Upon written request by a claimant for indemnification pursuant to the first sentence of this paragraph (B), a determination, if required by applicable law, with respect to the claimant's entitlement thereto shall be made as follows: (1) if requested by the claimant, by Independent Counsel (as hereinafter defined), or (2) if no request is made by the claimant for a determination by Independent Counsel, (i) by the Board of Directors by a majority vote of a quorum consisting of Disinterested Directors (as hereinafter defined), or (ii) if a quorum of the Board of Directors consisting of Disinterested Directors is not obtainable or, even if obtainable, such quorum of Disinterested Directors so directs, by Independent Counsel in a written opinion to the Board of Directors, a copy of which shall be delivered to the claimant, or (iii) if a

14 -

15

quorum of Disinterested Directors so directs, by the stockholders of the
Corporation. In the event the determination of entitlement to indemnification
is to be made by Independent Counsel at the request of the claimant, the
Independent Counsel shall be selected by the Board of Directors unless there
shall have occurred within two years prior to the date of the commencement of
the action, suit or proceeding for which indemnification is claimed a "Change
of Control", as defined below, in which case the Independent Counsel shall be
selected by the claimant unless the claimant shall request that such selection
be made by the Board of Directors. If it is so determined that the claimant is
entitled to indemnification, payment to the claimant shall be made within 10
days after such determination.

(C)   If a claim under paragraph (A) of this Section 6.7 is not paid in
full by the Corporation within 30 days after a written claim pursuant to
paragraph (B) of this Section 6.7 has been received by the Corporation, the
claimant may at any time thereafter bring suit against the Corporation to
recover the unpaid amount of the claim and, if successful in whole or in part,
the claimant shall be entitled to be paid also the expense of prosecuting such
claim. It shall be a defense to any such action (other than an action brought
to enforce a claim for expenses incurred in defending any proceeding in advance
of its final disposition where the required undertaking, if any is required,
has been tendered to the Corporation) that the claimant has not met the
standard of conduct which makes it permissible under the General Corporation
Law of the State of Delaware for the Corporation to indemnify the claimant for
the amount claimed, but the burden of proving such defense shall be on the
Corporation. Neither the failure of the Corporation (including its Board or
Directors, Independent Counsel or stockholders) to have made a determination
prior to the commencement of such action that indemnification of the claimant
is proper in the circumstances because he or she has met the applicable
standard of conduct set forth in the General Corporation Law of the State of
Delaware, nor an actual determination by the Corporation (including its Board
of Directors, Independent Counsel or stockholders) that the claimant has not
met such applicable standard of conduct, shall be a defense to the action or
create a presumption that the claimant has not met the applicable standard of
conduct.

(D)   If a determination shall have been made pursuant to paragraph (B) or
this Section 6.7 that the claimant is entitled to indemnification, the
Corporation shall be bound by such determination in any judicial proceeding
commenced pursuant to paragraph (C) of this Section 6.7.

(E)   The Corporation shall be precluded from asserting in any judicial
proceeding commenced pursuant to paragraph (C) of this Section 6.7 that the
procedures and presumptions of this Section 6.7 are not valid, binding and
enforceable and shall stipulate in such proceeding that the Corporation is
bound by all the provisions of this Section 6.7.

- 15 -

16

(F)   The right to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this Section 6.7 shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the Certificate of Incorporation, these By-laws, agreement, vote of stockholders or Disinterested Directors or otherwise.  No repeal or modification of this Section 6.7 shall in any way diminish or adversely affect the rights of any director, officer, employee or agent of the Corporation hereunder in respect of any occurrence or matter arising prior to any such repeal or modification.

(G)   The Corporation may maintain insurance, at its expense, to protect itself and any director, officer, employee or agent of the Corporation or another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss, whether or not the Corporation would have the power to indemnify such person against such expense, liability or loss under the General Corporation Law of the State of Delaware.  To the extent that the Corporation maintains any policy or policies providing such insurance, each such director or officer, and each such agent or employee to which rights to indemnification have been granted as provided in paragraph (H) of this Section 6.7, shall be covered by such policy or policies in accordance with its or their terms to the maximum extent of the coverage thereunder for any such director, officer, employee or agent.

(H)   The Corporation may, to the extent authorized from time to time by the Board of Directors, grant rights to indemnification, and rights to be paid by the Corporation the expenses incurred in defending any proceeding in advance of its final disposition, to any employee or agent of the Corporation to the fullest extent of the provisions of this Section 6.7 with respect to the indemnification and advancement of expenses of directors and officers of the Corporation.

(I)   If any provision or provisions of this Section 6.7 shall be held to be invalid, illegal or unenforceable for any reason whatsoever: (1) the validity, legality and enforceability of the remaining provisions of this Section 6.7 (including, without limitation, each portion of any paragraph of this By-law containing any such provision held to be invalid, illegal or unenforceable, that is not itself held to be invalid, illegal or unenforceable) shall not in any way be affected or impaired thereby; and (2) to the fullest extent possible, the provisions of this Section 6.7 (including, without limitation, each such portion of any paragraph of this By-law containing any such provision held to be invalid, illegal or unenforceable) shall be construed so as to give effect to the intent manifested by the provision held invalid, illegal or unenforceable.

- 16 -

1)

(J) For purposes of this Section 6.7:

(1)  "Disinterested Director" means a director of the Corporation who is not and was not a party to the matter in respect of which indemnification is sought by the claimant.

(2)  "Independent Counsel" means a law firm, a member of a law firm, or an independent practitioner, that is experienced in matters of corporation law and shall include any person who, under the applicable standards of professional conduct then prevailing, would not have a conflict of interest in representing either the Corporation or the claimant in an action to determine the claimant's rights under this Section 6.7.

(3)  "Change of Control" has the meaning given such term in the Corporation's 1996 Stock Incentive Plan, as the same may be amended or superseded from time to time.

(K)  Any notice, request or other communication required or permitted to be given to the Corporation under this Section 6.7 shall be in writing and either delivered in person or sent by telecopy, telex, telegram, overnight mail or courier service, or certified or registered mail, postage prepaid, return receipt requested, to the Secretary of the Corporation and shall be effective only upon receipt by the Secretary.

## ARTICLE VII

## CONTRACTS, PROXIES, ETC.

Section 7.1.  Contracts.  Except as otherwise required by law, the Certificate of Incorporation or these By-laws, any contracts or other instruments may be executed and delivered in the name and on the behalf of the Corporation by such officer or officers of the Corporation as the Board of Directors may from time to time direct.  Such authority may be general or confined to specific instances as the Board may determine.  The Chairman, the President or any Vice President may execute bonds, contracts, deeds, leases and other instruments to be made or executed for or on behalf of the Corporation, subject to any restrictions imposed by the Board of Directors or the Chairman, the President or any Vice President of the Corporation may delegate contractual powers to others under his jurisdiction, it being understood, however, that any such delegation of power shall not relieve such officer of responsibility with respect to the exercise of such delegated power.

Section 7.2.  Proxies.  Unless otherwise provided by resolution adopted by the Board of Directors, the Chairman, the President or any Vice President may from time

- 37 -

6

18

to time appoint an attorney or attorneys or agent or agents of the Corporation, in the name and on behalf of the Corporation, to cast the votes which the Corporation may be entitled to cast as the holder of stock or other securities in any other corporation, any of whose stock or other securities may be held by the Corporation, at meetings of the holders of the stock or other securities of such other corporation, or to consent in writing, in the name of the Corporation as such holder, to any action by such other corporation, and may instruct the person or persons so appointed as to the manner of casting such votes or giving such consent, and may execute or cause to be executed in the name and on behalf of the Corporation and under its corporate seal or otherwise, all such written proxies or other instruments as he may deem necessary or proper in the premises.

## ARTICLE VIII

### AMENDMENTS

Section 8.1.  Amendments.  These By-laws may be altered, amended, or repealed at any meeting of the Board of Directors or of the stockholders, provided notice of the proposed change was given in the notice of the meeting and, in the case of a meeting of the Board of Directors, in a notice given not less than two days prior to the meeting; provided, however, that, in the case of amendments by stockholders, notwithstanding any other provisions of these By-laws or any provision of law which might otherwise permit a lesser vote or no vote, but in addition to any affirmative vote of the holders of any particular class or series of the capital stock of the Corporation required by law, the Certificate of Incorporation or these By-laws, the affirmative vote of the holders of at least 80 percent of the voting power of all of the then outstanding shares of the Voting Stock, voting together as a single class, shall be required to alter, amend or repeal any provision of these By-laws.

- 18 -