IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

**ORIGINAL**

2001 JUN 29 PM 2:58

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-1139 (JJF) |
| | ) | |
| Debtors. | ) | Jointly-Administered |
| | ) | |
| | ) | **Objections due by: 7/12/01 @ 4:00 p.m.** |
| | ) | **Hearing Date: 7/19/01 @ 12:00 p.m.** |

## NOTICE OF MOTION

TO:    All Parties on the 2002 Service List

The Official Committee of Asbestos Property Damage Claimants has filed the Motion of the Official Committee of Asbestos Property Damage Claimants For an Order Pursuant to 11 U.S.C. §§105(a) and 1103(c) Compelling Debtors to Identify, Retain, Collect, and Organize Relevant Documents and to Make All Such Documents Available in a Central Repository.

You are required to file a response to the attached motion on or before **July 12, 2001, at 4:00 p.m.**

At the same time, you must also serve a copy of the response upon Movant's attorneys:

| | |
|---|---|
| Michael B. Joseph, Esquire | Scott L. Baena, Esquire |
| Theodore J. Tacconelli, Esquire | Bilzin, Sumberg, Dunn, Baena, Price & Axelrod, LLP |
| Ferry & Joseph, P.A. | 2500 First Union Financial Center |
| 824 Market Street, Suite 094 | 200 South Biscayne Boulevard |
| Wilmington, Delaware 19801 | Miami, Florida 33131-2336 |
| (302) 575-1555 | (305) 374-7580 |

HEARING ON THE MOTION WILL BE HELD ON **July 19, 2001, at 12:00 p.m.**

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF DEMANDED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

FERRY & JOSEPH, P.A.

Theodore J. Tacconelli, Esq. (No.2678)
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
(302) 575-1555
Local Counsel for the Official Committee
of Asbestos Property Damage Claimants

-and-

Scott L. Baena, Esquire
Bilzin, Sumberg, Dunn, Baena, Price
& Axelrod, LLP
2500 First Union Financial Center
200 South Biscayne Boulevard
Miami, FL 33131-2336
(305) 374-7580
Counsel for the Official Committee
of Asbestos Property Damage Claimants

Date: June 29, 2001

TJT/msj
F:\Meredith\TJT\WRGraceBankMBJ\NotMotMotCompel.wpd

2

IN THE UNITED STATES BANKRUPTCY COURT

IN AND FOR THE DISTRICT OF DELAWARE

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE CO., et al., | ) | Case No. 01-1139 (JJF) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Hearing Date: July 19, 2001 @ 12:00 p.m.** |
| | ) | **Objections Due By: July 12, 2001 @ 4:00 p.m.** |

**MOTION OF THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105 (a) AND 1103 (c) COMPELLING DEBTORS TO IDENTIFY, RETAIN, COLLECT, AND ORGANIZE RELEVANT DOCUMENTS AND TO MAKE ALL SUCH DOCUMENTS AVAILABLE IN A CENTRAL REPOSITORY**

The Official Committee of Asbestos Property Damage Claimants, by and through its undersigned counsel, hereby moves this Honorable Court for the entry of an Order pursuant to Sections 105(a) and 1103(c) of the United States Bankruptcy Code ("Bankruptcy Code") Compelling the debtors to Identify, Retain, Collect, and Organize Relevant Documents and to Make All Such Documents Available in a Central Repository ("Motion"). In support of the Motion, the Official Committee of Asbestos Property Damage Claimants would respectfully show as follows:

## I. INTRODUCTION AND BACKGROUND

1.      On April 2, 2001, (the "Petition Date") the debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively the Chapter 11 Cases").

2.      The Chapter 11 Cases have been consolidated for administrative purposes only and the debtors continue to operate their businesses and manage their properties as debtors-in-possession.

1

3.      On April 12, 2001, the Office of the United States Trustee appointed the Official Committee of Asbestos Property Damage Claimants (the "PD Committee).  Thereafter, on May 11, 2001, the Office of the United States Trustee filed an Amended Notice of Appointment to add three additional members to the PD Committee.

4.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157 (B)(2).  The statutory predicate for the relief sought herein is Sections 105 (a) and 1103 (c) of the Bankruptcy Code.

## II.     THE NEED FOR RETENTION OF DOCUMENTS IN A CENTRAL REPOSITORY

5.      As potentially the largest creditor class in this Chapter 11 bankruptcy proceeding, the Asbestos Property Damage Claimants ("PD Claimants") have an especially significant interest in the gathering, preservation, and availability of all documents that are relevant to any and all issues arising in connection with the resolution of asbestos property damage claims.

6.      In this case W.R. Grace & Co.-Conn. ("WRG" or the "Debtors") has taken the position that it will attempt to "define and resolve" asbestos property damage claims against the Debtors in these Chapter 11 Cases.  Thus, it has become a matter of the utmost urgency that a plan be established by which all potentially relevant WRG documents would be retained, collected, and organized in a central repository. The PD Committee therefore recently contacted WRG to attempt to obtain WRG's agreement to suspend immediately the operation of all otherwise applicable records retention schedules and/or policies, and to gather and maintain all relevant documents in a central repository.  See letter from S. Baena (counsel for the PD Committee) to D. Bernick (counsel for WRG) (June 5, 2001), attached as **Exhibit A**.

2

### III.    THE PD COMMITTEE'S LIMITED REQUEST FOR SPECIFIC CATEGORIES OF RELEVANT DOCUMENTS

7.    The PD Committee has no intention of embarking upon a "fishing expedition" and no desire to cast a net over all of WRG's operations, regardless of relevance.  On the contrary, based on extensive experience in the asbestos property damage litigation and familiarity with the content of WRG's currently existing asbestos litigation document collection, the PD Committee has gone to great lengths to focus and refine its requests, and to identify the relevant documents and categories of documents sought with specificity.  The June 5, 2001 letter request was expressly limited to three general categories of documents:

(A)    those documents regularly requested in litigation by asbestos property damage claimants;

(B)    relevant documents not presently maintained as part of WRG's existing document collection; and

(C)    documents pertaining to the "fraudulent transfer transactions."

8.    These three categories of documents, and their relevance to the asbestos property damage claims in this Chapter 11 proceeding, are described and explained in more detail below.

### A.    Documents Regularly Requested in Litigation by Asbestos Property Damage Claimants

9.    From experience in representing public and private litigants in asbestos property damage litigation against WRG, the members of the PD Committee are familiar with the key issues concerning WRG's liability for asbestos-in-buildings claims. The PD Committee therefore requested that WRG take steps voluntarily to preserve and gather all categories of documents typically requested by plaintiffs in asbestos property damage litigation, including, but not limited to:

3

- Documents pertaining to product identification issues;[1]

- Documents pertaining to sales of products containing asbestos; [2]

- Documents pertaining to WRG's licensees and distributors, whether maintained by WRG or by the licensees/distributors themselves;[3]

- Medical and scientific articles and data concerning the hazards of asbestos or products containing asbestos, and other documents referencing or indicating WRG's knowledge of the hazards of asbestos or products containing asbestos;

- Documents pertaining to membership in trade associations and organizations (such as the Vermiculite Institute), and publications, meeting minutes, and notes concerning the same;

- Documents pertaining to research and testing of asbestos and material containing asbestos for any purpose, together with all backup data including original laboratory notebooks;[4]

---

[1]Such documents include, but are not limited to, all formulas, formula variations, and product formulation-related documents for all products containing asbestos, raw material ingredient specifications, research reports and backup data pertaining to product development and competitive testing, original laboratory notebooks, and reports and backup data pertaining to tests and analyses for purposes of product identification, whether performed by WRG's in-house laboratories (such as testing performed by WRG's in-house analytical chemist Dr. Julie Yang), or by outside laboratories (such as testing performed by Dr. Richard J. Lee).

[2]By way of example, such documents include orders, invoices, sales and shipment records, ledger books, salesmen's reports, reports of job-site visit, and other sales- and distribution-related documents that may identify purchasers, job sites, or building owners.

[3]These entities include, but are not limited to The California Zonolite Company; Vermiculite-Northwest, Inc.; Western Mineral Products Company; Vermiculite-Intermountain, Inc.; Robinson Insulation Company; Southwest Vermiculite Company; Vermiculite Northwest, Inc.; The Texas Vermiculite Company; Vermiculite Products, Inc. of Houston; The Tennessee Zonolite Company; The Ari-Zonolite Company; and Vermiculite of Hawaii, Inc. Relevant documents include, inter alia, product formulation-related records, sales and shipping records, production records, and records of regulatory compliance and asbestos-related surveys (including all bulk, air, and dust sampling) of the manufacturing facilities, plants, warehouses, and distribution centers of such licensees/distributors.

[4]This would include not only testing concerning the health effects of asbestos, but also testing concerning field performance, product safety, product use life, friability, fiber release, cracking, dusting, deterioration, and delamination, typically documented in reports of T&As ("Testing and Analysis"), RFTS ("Request for Technical Service"), RLPs ("Research Laboratory Problems"), and reports of outside laboratories and/or consultants (such as Dr. William E. Smith and others),

4

- Product specifications, product information bulletins, and advertisements for products containing asbestos;

- Communications with insurance companies concerning the potential health effects of asbestos and/or the hazards of asbestos and products containing asbestos;[5]

- Inquiries or complaints from users and consumers, building owners, or others concerning the asbestos content of WRG products and/or the potential health effects of asbestos, and responses to the same;

- Documents pertaining to workers compensation claims or lawsuits alleging asbestos-related disease from exposure to WRG's asbestos, products containing asbestos, tremolite asbestos-contaminated vermiculite, or vermiculite-based products;

- Documents pertaining to asbestos sampling, surveys, inspections, and abatement of products containing asbestos from buildings owned or operated by WRG;[6]

- Documents reflecting contacts with governmental bodies and regulatory agencies or lobbying efforts by WRG or any entity on behalf of WRG (such as the Safe Buildings Alliance ("SBA")) concerning asbestos or products containing asbestos;

- All annual reports, 10-K filings, and minutes of meetings of the board of directors; and

- Discovery responses and affidavits served or filed by WRG in asbestos-related litigation.

**B.    Relevant Documents Not Presently Maintained in WRG's Existing Document Collection**

10.    The PD Committee is aware that WRG presently maintains a collection of

---

[5]The request specifically named the Maryland Casualty Company, but was not limited to this company.

[6]WRG has mounted an intensive public relations campaign designed to persuade building owners that reports of the hazards of asbestos are overstated, and to dissuade them from removing WRG asbestos-containing products from their buildings. In light of the fact that WRG typically defends asbestos property damage claims by arguing that removal of asbestos-containing products from buildings is not necessary, or alternatively, that interim remedial measures short of removal are sufficient, evidence of WRG's decisions to remove such products from its own buildings and the reasons for these actions is particularly relevant.

documents for litigation purposes at its "Winthrop Square document repository" in Boston, Massachusetts. The fact that a limited collection already exists, however, does not satisfy the urgent need for the identification, gathering, and organization in a central repository of all documents potentially relevant to asbestos property damage claims. From experience in reviewing documents at Winthrop Square over the years in connection with various asbestos property damage lawsuits, members of the PD Committee and their counsel have learned that there are many categories of relevant documents that are not present at Winthrop Square.

11.     For example, large volumes of documents are retained at off-site storage locations (such as Iron Mountain, New Hampshire); at other locations within the WRG organization (such as the Cambridge, Massachusetts, laboratory and offices); and in the offices of WRG's in-house counsel and various national and counsel and local counsel. Additionally, WRG regularly withholds from production at Winthrop Square many hundreds of potentially relevant documents on the grounds that they were generated after 1975, or some other arbitrarily selected date.[7] Further, since the beginning of the asbestos property damage litigation in the early 1980s, WRG has continued to release limited groups of documents in particular cases by agreement or court order, but has never provided any assurance that these groups of documents previously withheld have been permanently

---

[7]Obviously, documents dated after 1975 (or any other arbitrarily selected date), may be highly relevant to key issues such as product identification, the existence of a hazard, WRG's continuing duty to test and warn, the reasonableness of building owners' abatement decisions and damages, and the range of litigation issues that go to punitive damages (such as WRG's efforts to conceal its own knowledge of the hazards of asbestos and products containing asbestos, and WRG's public relations campaigns and lobbying efforts to influence governmental regulations pertaining to asbestos and dissuade building owners from removing products containing asbestos from buildings). Indeed, many such documents (for example, documents pertaining to WRG's abatement of asbestos from its own buildings) would have been generated only after 1975 or later dates, and may bear dates as recent as 2001.

added to the Winthrop Square document repository as opposed to being produced on a one-time basis to individual plaintiffs only.

12.    Therefore, in its letter of June 5, 2001, the PD Committee requested that WRG immediately begin the process of identifying, gathering, and organizing all potentially relevant documents not presently contained within the collection at the Winthrop Square repository. Among others, this would include the following categories of potentially relevant documents, as expressly enumerated in the June 5 letter:

(1)    All documents presently maintained at Iron Mountain and any and all other off-site locations;

(2)    All documents presently maintained at WRG's Cambridge, Massachusetts, location, and any other location within the WRG organization;

(3)    All documents and files located in the offices of WRG's in-house counsel,[8] and in the offices of all of WRG's various national and local counsel nationwide;[9]

(4)    All documents pertaining to or concerning WRG's licensees and distributors;[10]

(5)    All documents pertaining to the SBA and any and all lobbying efforts by or on behalf of WRG;

(6)    All documents pertaining to the abatement of any products containing asbestos from any buildings owned or operated by WRG from the date of the first such abatement to the present, to be updated on an ongoing basis;[11]

---

[8]Including, but not limited to, Richard Finke.

[9]This includes, but is not limited to, the law firms of Popham, Haik, Schnobrich & Kaufman; Plunkett, Schwartz & Peterson; Andrews & Kurth; Anderson, Kill, Olick & Oshinsky; Mayor, Day, Caldwell & Keeton; Reed, Smith, Shaw & McClay; Cahill, Gordon & Reindel; Hoyle, Morris & Kerr; Perkins Coie; Casner & Edwards; Fleming, Zulack & Williamson; Ogletree, Deakins, Nash, Smoak & Stewart; Herrick and Smith; Goodwin, Proctor and Hoar; Herrick and Smith; and Hahn, Loeser and Parks.

[10]See examples of licensees, distributors, and categories of relevant documents, enumerated in footnote 3, supra.

[11]The Winthrop Square collection does include a series of "abatement binders," but for the most part these binders contain only minimal reference to selected abatement projects, and many

(7)     All documents pertaining to the issue of tremolite contamination of vermiculite deposits at WRG's Libby, Montana vermiculite mine;[12]

(8)     All documents previously withheld under claims of privilege, or pursuant to any other objection, which have been released to particular plaintiffs by agreement or court order;[13]

(9)     All documents produced in the State of Hawaii case which were not originally present at the Winthrop Square repository but which were ultimately made available in response to the plaintiff's demands, and which may or may not have been permanently added to the Winthrop Square collection;[14]

(10)    All reports received from experts or consultants engaged in the asbestos property damage litigation, as well as all statements or invoices rendered by such experts, and consultants

---

projects are represented only by the standard information form required to be provided to WRG's lawyers for approval prior to abatement. For the reasons previously discussed above in footnote 6, therefore, the PD Committee requested that WRG gather and make available the full range of abatement-related documents for all abatement projects carried out in buildings owned or operated by WRG, including but not limited to asbestos surveys, response action recommendations, internal memoranda, contracts, job reports, air sample clearance records, certificates of completion, payment records, and all related documents.

[12]This would include, but not be limited to, documents concerning testing to determine the tremolite content of raw vermiculite and vermiculite-based construction and other consumer products and/or tremolite fiber release (whether during mining or milling, manufacture, installation or other consumer use, or from in-place building products); WRG's efforts to reduce the tremolite content of its vermiculite and/or vermiculite-based products; and workers compensation claims or lawsuits alleging asbestos-related disease from exposure to WRG's tremolite-contaminated vermiculite or vermiculite-based products.

[13]This includes, but is not limited to, all documents judicially determined to be non-privileged in Cullen Center, Inc., et al. v. W.R. Grace & Co., et al., No. 90-011693 (Harris County, Tex.) the Cambridge laboratory notebooks produced subject to confidentiality in the State of Hawaii case, the "reclassified privileged documents" produced in the State of Hawaii case pursuant to stipulation between the parties, all post-1975 research documents produced in the State of Hawaii case pursuant to stipulations between the parties, and all laboratory backup data produced in the State of Hawaii case.

[14]Such documents include, but are not limited to, the 1951-1955 Zonolite Company research reports (Evanston, Illinois laboratory), the pre-1976 Cambridge laboratory research reports produced in loose folders, the WRG Cambridge laboratory notebooks, the index to the Dewey & Almy research reports; all "40 Million Series" boxes, and all boxes of documents concerning vermiculite-based products from any and all plants.

(whether to WRG, its counsel or others) and evidence of all payments made in respect thereof (whether by WRG, its counsel or others);[15]

(11)   All files and documents maintained by or in respect of J. Peter Grace, Bradley Dewey, and Otto Ambrose;[16]

(12)   Documents in any wise concerning individuals claiming to suffer asbestos-related disease or sickness from products in place including but not limited to Zonolite attic insulation or Monokote MK-3; and

(13)   Employment records of individuals involved in and knowledgeable concerning issues pertaining to asbestos, the hazards of asbestos, and the use of asbestos in WRG products;[17]

(14)   All existing document indices and document retrieval systems (including computerized document retrieval systems) maintained by WRG and/or its attorneys, which have previously been made available, if at all, only subject to confidentiality agreements; and

(15)   Detailed and updated privilege logs identifying every document which WRG intends to continue to withhold on grounds of any privilege or exemption from discovery.

## C.   Documents Pertaining to the "Fraudulent Transfer Transactions"

13.   Another category of documents not included in the Winthrop Square collection that

---

[15]Such experts include, but are not limited to, Charles Blake, Roger G. Morse, R.J. Lee, Ian Stewart, W. Bruce Hunter, Paul Brown, Charles Thornton, Daniel Cuoco, Thomas J. McClorey, Morton Corn, William N. Albrecht, Bertram Price, John E. Craighead, M.D., Ronald G. Crystal, M.D., Peter C. Elmes, M.D., Ian Alan Feingold, M.D., J. Bernard L. Gee, M.D., William E. Hughson, M.D., Hans Weill, M.D., Roger Greenway, Blaine F. Nye, John P. Walsh, Edward Gaensler, M.D., J.M.G. Davis, M.D., John M. McGinty, Thomas Cheatham, Gregory E. Bardnell, John Todhunter, Keith Wilson, M.D., Kenny S. Crump, Andrew Churg, M.D., J. Corbett McDonald, M.D., Janet Hughes, Anthony Seaton, M.D., Michael Molley, and S.D.K. Liddell,

[16]This would include, by way of example, employment records, correspondence, personal diaries, and notes or written reflections in any way referring to, relating to, or concerning asbestos liability, products containing asbestos, materials containing asbestos, asbestos claims (whether or not asserted), the Libby Mine, Vermiculite, Zonolite attic insulation, tremolite or Monokote.

[17]Individuals identified by name in the PD Committee's June 5, 2001 letter request included George Blackwood, R.A. Bleich, Ralph Bragg, Hugh L. Carey, Bradley Dewey, Hyman Duecker, Fred Eaton, Thomas Egan, Harry A. Eschenbach, O.M. Favorito, Thomas P. Feit, J. Peter Grace, John Hamilton, Peter Kostic, Earl Lovick, Robert Merther, Ken Millian, Walter R. Payment, Eugene Perrine, Arnold Rosenberg, Ray Rothfelder, R.E. Schneider, Robert W. Sterrett, Rodney Vining, Julie Yang. An additional list of individuals with relevant knowledge was enclosed with the letter.

is significant for purposes of this Chapter 11 bankruptcy proceeding includes those documents potentially relevant to the National Medical Care/Fresenius Transaction and the Sealed Air Transaction (collectively, the "Fraudulent Transfer Transactions") more particularly referred to and subject matter of the Chakarian adversary proceeding for declaratory and injunctive relief (the "Adversary"). The PD Committee requested WRG to gather, preserve and have available at a central repository all documents (whether in the possession of the Debtors, its agents, employees, counsel or its affiliates) relevant to any and all issues which may arise in connection with the Adversary, pending or threatened litigation concerning the Fraudulent Transfer Transactions (whether or not such litigation is stayed), and avoidance litigation that might be brought on behalf of WRG's estate (whether by the Debtors, a trustee or otherwise) in respect of the Fraudulent Transfer Transactions (collectively, the "Fraudulent Transfer Documents"). These documents, as enumerated in the June 5 letter request, include but are not limited to the following:

(1)    All corporate minutes, resolutions, narratives, releases, board materials, descriptions, presentations, analyses, executive summaries and other writings concerning the Fraudulent Transfer Transactions;

(2)    All correspondence, drafts, memoranda of understanding, agreements (whether or not executed) in any wise concerning the Fraudulent Transfer Transactions;

(3)    All evidence of the consummation of the Fraudulent Transfer Transactions including but not limited to all executed agreements, deeds, bills of sale, assignments or other transfer documents whensoever arising, as well as proof of consideration purportedly paid or received;

(4)    All documents and corporate records concerning the disposition of any consideration purportedly received by the Debtor or any of its predecessors, successors, assigns or affiliates;

(5)    All valuations, appraisals or expert opinions (including but not limited to fairness opinions) or reports rendered (even if thereafter withdrawn) in connection with the Fraudulent Transfer Transactions, as well as all drafts of such matter;

10

(6)    All approvals and consents, as well as all requests, solicitations, proxy material, applications for such approvals and consents, obtained or given in connection with the Fraudulent Transfer Transactions; and

(7)    Detailed privilege logs identifying every document which WRG intends to withhold on grounds of any privilege or exemption from discovery.

## IV.    THE DEBTOR'S NON-RESPONSIVE RESPONSE

14.    WRG's response to the PD Committee's letter request was disappointing. By letter dated June 12, 2001, a copy of which is attached as **Exhibit B**, Mr. Bernick forwarded a copy of a short "freeze directive," which was presumably intended to address the PD Committee's concerns that relevant documents be identified, preserved, and gathered.

15    The "freeze directive," with date and recipients apparently redacted, was nothing more than a mere statement (not an instruction or directive) to the effect that it is important to "remind" WRG employees not to destroy or discard certain documents. The documents that would presumably be the subject of this "reminder," should such a "reminder" be given, were described in ten (10) briefly worded phrases, apparently intended to summarize the 37 relevant categories of documents, illustrated by examples, which the PD Committee had listed and discussed in its June 5 letter request.

16.    The "freeze directive" provided no indication that any Grace employees had received or would receive any "reminder," much less any directive or instructions, to retain documents. It completely omitted important categories of information requested; it eliminated details designed to illustrate and clarify the scope of the requests; and it made no mention whatsoever of any instructions, plan, or intention to gather and organize relevant documents or to establish a central repository.

17.     By letter of June 15, 2001, a copy of which is attached as **Exhibit C**, Mr. Baena pointed out the deficiencies in WRG's response to the PD Committee's concerns.  He noted that there was no indication when, or to whom, the "freeze directive" had been sent, or if it had been sent at all.  He expressed concern that if the directive had been distributed only internally, it would not address the PD Committee's request for documents in the possession of third parties (such as law firms, former licensees and distributors, and others).  He observed that the extremely abbreviated descriptions of relevant documents contained in the "freeze directive" did not communicate the scope of the PD Committee's requests.  He pointed out that the "freeze directive" failed completely to address the PD Committee's urgent request that relevant documents be gathered and maintained in a central repository.

18.     In an effort to resolve these issues informally and cooperatively, and avoid the expenditures of time and resources that would be required to bring the matter before the Court, he requested that WRG provide assurances that it would endeavor to comply with the PD Committee's requests.  WRG provided no such assurances, and in fact did not respond in any way.

## V.     LEGAL AUTHORITY

19.     Section 105 (a) of the Bankruptcy Code provides that, "The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." Furthermore, Section 1103 (c) (2) allows the PD Committee to "investigate the acts, conduct, assets, liabilities and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or the formulation of a plan."

20.     Section 105 (a) is the basis for a broad exercise of equitable powers by a bankruptcy

court.  The equitable powers of the court should be exercised only where it is necessary or appropriate to implement the provisions of the Bankruptcy Code or where equity and substantial justice requires.  In re Dunckle Associates, Inc., 19 B.R. 481, 485 (Bankr. E.D. Pa 1982).  See also, Lemon v. Kurtzman, 411 U.S. 192 (1973), "In equity, as nowhere else, courts eschew rigid absolutes and look to the practical realities and necessities inescapably involved in reconciling competing interests.... Moreover, equitable remedies are a special blend of what is necessary, what is fair and what is workable."  Id. at 201.

21.     Simply put, the equitable relief requested in the Motion is necessary, fair and workable in this complex case and will allow the PD Committee to perform its duties and enforce its rights under the Bankruptcy Code.

22.     Furthermore, the gathering and preservation of relevant documents, and the establishment of a central document repository to make them available to claimants and their representatives, has been required in other complex cases.  For instance, in the case of In re San Juan DuPont Plaza Hotel Fire Litigation, 802 F. Supp. 624, 632 n.14 (D. P.R. 1992), a central repository was established for the collection and retention of documents.  Thus, the need for the establishment of a central repository for documents is not novel in complex cases.

## VI.     CONCLUSION

23.     The PD Committee's request that documents relevant to asbestos property damage claims in this bankruptcy proceeding be identified, preserved, gathered, and made available in a central repository was and is reasonable, and necessary to protect the rights of PD Claimants, potentially the largest creditor class in this Chapter 11 proceeding.  WRG's response to the PD Committee's request was evasive and inadequate, and despite continued efforts to secure cooperation

13

by WRG, the PD Committee has received no assurances that WRG has done or will do anything whatsoever to comply with its obligation to gather these relevant documents and make them available to its creditors.

24.    For all the foregoing reasons, the PD Committee respectfully requests that the debtors be compelled by this Court to Identify, Retain, Collect, and Organize Relevant Documents and to Make All Such Documents Available in a Central Repository and that the Court issue an order requiring the Debtors to identify, retain, and gather all documents requested by the PD Committee in its letter request of June 5, 2001, and to make all such documents available in a central repository for review and copying by Property Damage Claimants and their representatives.

WHEREFORE, the PD Committee respectfully requests that this Honorable Court grant the relief requested in the Motion and grant such other and further relief as is just and proper.

BILZIN, SUMBERG, DUNN,
BAENA, PRICE & AXELROD, LLP

Scott L. Baena, Esq.
(Fla. Bar. No. 186445)
2500 First Union Financial Center
200 South Biscayne Boulevard
Miami, FL 33131
(305) 374-7580
Counsel for the Official Committee
of Asbestos Property Damage Claimants

-and-

14

FERRY & JOSEPH, P.A.

Michael B. Joseph, Esq. (No. 392)
Theodore J. Tacconelli, Esq. (No. 2678)
Rick S. Miller, Esq. (No. 3418)
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
(302) 575-1555
Local Counsel for the Official
Committee of Asbestos Property
Damage Claimants

Dated June 29, 2001

Motion to Compel

15

# BILZIN SUMBERG DUNN BAENA PRICE & AXELROD LLP

A PARTNERSHIP OF PROFESSIONAL ASSOCIATIONS
2500 FIRST UNION FINANCIAL CENTER
200 SOUTH BISCAYNE BOULEVARD • MIAMI, FLORIDA 33131-2336
TELEPHONE: (305) 374-7580 • WWW.BILZIN.COM
FAX: (305) 374-7593 • BROWARD: (954) 356-0030

SCOTT L. BAENA, P.A.
DIRECT DIAL (305) 350-2403
E-MAIL sbaena@bilzin.com

June 5, 2001

**Via Facsimile**
David Bernick, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, Illinois 60601

Re:    W.R. Grace & Co., Inc.

Dear David:

In light of the Debtors' position that it will attempt to "define and resolve" asbestos property damage claims against W.R. Grace & Co.-Conn. ("WRG" or the "Debtor") in their chapter 11 cases, the Asbestos Property Damage Committee (the "PD Committee") considers it a matter of the utmost urgency that the parties agree upon a plan by which all potentially relevant WRG documents will be retained, collected, and organized in a central repository. In this regard, we expect that WRG will immediately suspend the operation of any and all otherwise applicable records retention schedules and/or policies, and maintain all documents unless and until the destruction of specified documents or groups of documents is expressly authorized by the Bankruptcy Court.

As potentially the largest creditor class, Asbestos Property Damage Claimants ("PD Claimants") have a significant interest in the gathering, preservation, and availability of all documents that are relevant to any and all issues arising in connection with the resolution of asbestos property damage claims, or which may be likely to lead to the discovery of admissible evidence. This includes <u>all</u> categories of documents typically requested by plaintiffs in asbestos property damage litigation, including but not limited to:

- All documents pertaining to product identification issues. This includes, but is not limited to, all formulas, formula variations, and product formulation-related documents for all products containing asbestos; raw material ingredient specifications, research reports and backup data pertaining to product development and competitive testing, original laboratory notebooks, and reports and backup data pertaining to tests and analyses for purposes of product identification, whether performed by WRG's in-house laboratories

BILZIN SUMBERG DUNN BAENA PRICE & AXELROD LLP

June 5, 2001
Page 2

(such as testing performed by Dr. Julie Yang), or by outside laboratories (such as testing performed by Dr. Richard J. Lee);

- All documents pertaining to sales of products containing asbestos, including orders, invoices, sales and shipment records, ledger books, salesmen's reports, and reports of job-site visits;

- All document pertaining to or concerning WRG's licensees and distributors (including but not limited to The California Zonolite Company; Vermiculite-Northwest, Inc.; Western Mineral Products Company; Vermiculite-Intermountain, Inc.; Robinson Insulation Company; Southwest Vermiculite Company; Vermiculite Northwest, Inc.; The Texas Vermiculite Company; Vermiculite Products, Inc. of Houston; The Tennessee Zonolite Company; The Ari-Zonolite Company; and Vermiculite of Hawaii, Inc.), whether maintained by WRG or by the licensees/distributors themselves. This includes but is not limited to product formulation-related records, sales and shipping records, production records, and records of regulatory compliance and asbestos-related surveys (including all bulk, air, and dust sampling) of the manufacturing facilities, plants, warehouses, and distribution centers of such licensees/distributors;

- All medical and scientific articles and data concerning the hazards of asbestos or products containing asbestos, and any and all other documents referencing or indicating WRG's knowledge of the hazards of asbestos or products containing asbestos;

- All documents pertaining to membership in trade associations and organizations (such as the Vermiculite Institute), and all publications, meeting minutes, and notes concerning the same;

- All documents pertaining to research and testing of asbestos and material containing asbestos for any purpose (including not only the health effects of asbestos, but also field performance, product safety, product use life, friability, fiber release, cracking, dusting, deterioration, and delamination, including reports of T&As ("Testing and Analysis"), RFTS ("Request for Technical Service"), RLPs ("Research Laboratory Problems"), and reports of outside laboratories and/or consultants (such as Dr. William E. Smith and others), together with all backup data including original laboratory notebooks;

- All product specifications, product information bulletins, and

BILZIN SUMBERG DUNN BAENA PRICE & AXELROD LLP

June 5, 2001
Page 3

advertisements for products containing asbestos;

- All communications with insurance companies, including but not limited to Maryland Casualty Company, concerning the potential health effects of asbestos and/or the hazards of asbestos and products containing asbestos;

- All inquiries or complaints from users and consumers, building owners, or others concerning the asbestos content of WRG products and/or the potential health effects of asbestos, and responses to the same;

- All documents pertaining to workers compensation claims or lawsuits alleging asbestos-related disease from exposure to WRG's asbestos, products containing asbestos, tremolite asbestos-contaminated vermiculite, or vermiculite-based products;

- All documents pertaining to asbestos sampling, surveys, inspections, and abatement of products containing asbestos from buildings owned or operated by WRG;

- All documents reflecting  contacts with governmental bodies and regulatory agencies or lobbying efforts by WRG or any entity on behalf of WRG (such as the Safe Buildings Alliance ("SBA")) concerning asbestos or products containing asbestos;

- All annual reports, 10-K filings, and minutes of meetings of the board of directors; and

- All discovery responses and affidavits served or filed by WRG in asbestos-related litigation.

The PD Committee is aware of the existence of WRG's Winthrop Square document repository in Boston and the circumstances (as described by WRG) surrounding its creation beginning in the mid-1980s.  The mere existence of this repository, however, does not satisfy our request for the identification, gathering, and organization in a central repository of all documents potentially relevant to the asbestos property damage litigation.

From experience in reviewing WRG documents over the years in connection with various asbestos property damage lawsuits, members of the PD Committee and their counsel have learned that all categories of relevant documents are not present at Winthrop Square.  Further, we are aware that large volumes of documents are

BILZIN SUMBERG DUNN BAENA PRICE & AXELROD LLP

June 5, 2001
Page 4

retained at off-site storage locations (such as Iron Mountain); at other locations within the WRG organization (such as the Cambridge, Massachusetts, laboratory and offices); and in the offices of WRG's in-house counsel and various national and counsel and local counsel. We are also aware that WRG regularly withholds from production many hundreds of potentially relevant documents on the grounds that they were generated after 1975, or some other arbitrarily selected date.[1] Additionally, we are aware that since the beginning of the asbestos property damage litigation in the early 1980s, WRG has continued to release limited groups of documents in particular cases by agreement or court order, and we have no indication or assurance that these groups of documents previously withheld have been permanently added to the Winthrop Square document repository as opposed to being produced on a one-time basis to individual plaintiffs only.

We therefore request that WRG immediately begin the process of identifying, gathering, and organizing all potentially relevant documents not presently contained within the collection at the Winthrop Square repository. Among others, this would include the following categories of potentially relevant documents:

(1)    All documents presently maintained at Iron Mountain and any and all other off-site locations;

(2)    All documents presently maintained at WRG's Cambridge, Massachusetts, location, and any other location within the WRG organization;

(3)    All documents and files located in the offices of WRG's in-house counsel (including but not limited to Richard Finke), and in the offices of all of WRG's various national and local counsel nationwide, including but not limited to Popham, Haik, Schnobrich & Kaufman; Plunkett, Schwartz & Peterson; Andrews & Kurth; Anderson, Kill, Olick & Oshinsky; Mayor, Day, Caldwell & Keeton; Reed, Smith, Shaw & McClay; Cahill, Gordon & Reindel; Hoyle, Morris & Kerr; Perkins Coie; Casner & Edwards; Fleming, Zulack & Williamson;

---

[1]Obviously, documents dated after 1975 (or any other arbitrarily selected date), may be highly relevant to key issues such as product identification, the existence of a hazard, WRG's continuing duty to test and warn, the reasonableness of building owners' abatement decisions and damages, and the range of litigation issues that go to punitive damages (such as WRG's efforts to conceal its own knowledge of the hazards of asbestos and products containing asbestos, and WRG's public relations campaigns and lobbying efforts to influence governmental regulations pertaining to asbestos and dissuade building owners from removing products containing asbestos from buildings). Indeed, many such documents (for example, documents pertaining to WRG's abatement of asbestos from its own buildings) would have been generated _only_ after 1975 or later dates, and may bear dates as recent as 2001.

BILZIN SUMBERG DUNN BAENA PRICE & AXELROD LLP

June 5, 2001
Page 5

Ogletree, Deakins, Nash, Smoak & Stewart; Herrick and Smith; Goodwin, Proctor and Hoar; Herrick and Smith; and Hahn, Loeser and Parks;

(4)    All documents pertaining to or concerning WRG's licensees and distributors (including but not limited to The California Zonolite Company; Vermiculite-Northwest, Inc.; Western Mineral Products Company; Vermiculite-Intermountain, Inc.; Robinson Insulation Company; Southwest Vermiculite Company; Vermiculite Northwest, Inc.; The Texas Vermiculite Company; Vermiculite Products, Inc. of Houston; The Tennessee Zonolite Company; The Ari-Zonolite Company; and Vermiculite of Hawaii, Inc.), whether maintained by WRG or by the licensees/distributors themselves, their successors, assigns, agents, and/or attorneys.    This includes, but is not limited to, product formulation-related records, sales and shipping records, production records, and records of regulatory compliance and asbestos-related surveys (including all bulk, air, and dust sampling) of the manufacturing facilities, plants, warehouses, and distribution centers of such licensees/distributors;

(4)    All documents pertaining to the SBA and any and all lobbying efforts by or on-behalf of WRG;

(5)    All documents pertaining to the abatement of any products containing asbestos from any buildings owned or operated by WRG from the date of the first such abatement to the present, to be updated on an ongoing basis;[2]

(6)    All documents pertaining to the issue of tremolite contamination of vermiculite deposits at WRG's Libby, Montana vermiculite mine; testing to determine the tremolite content of raw vermiculite and vermiculite-based construction and other consumer products and/or tremolite fiber release (whether during mining or milling, manufacture, installation or other consumer use, or from in-place building products); WRG's efforts to reduce the tremolite content of its vermiculite and/or vermiculite-based products; and workers compensation

------

[2]We are aware of the existence of a series of "abatement binders" at the Winthrop Square repository.    These binders, however, do not contain the totality of abatement-related documents customarily requested in discovery.    For the most part, these binders contain only a bare minimum reference to selected abatement projects, and many projects are represented only by the standard "Asbestos Action Notification Information" form required to be provided to WRG's in-house counsel for approval prior to abatement.    The PD Committee requests that WRG gather and make available the full range of abatement-related documents for all abatement projects carried out in buildings owned or operated by WRG, including but not limited to asbestos surveys, response action recommendations, internal memoranda, contracts, job reports, air sample clearance records, certificates of completion, payment records, and all related documents.

BILZIN SUMBERG DUNN BAENA PRICE & AXELROD LLP

June 5, 2001
Page 6

claims or lawsuits alleging asbestos-related disease from exposure to WRG's tremolite-contaminated vermiculite or vermiculite-based products;

(7)    All documents previously withheld under claims of privilege, or pursuant to any other objection, which have been released to particular plaintiffs by agreement or court order.  This includes, but is not limited to, all documents judicially determined to be non-privileged in Cullen Center, Inc., et al. v. W.R. Grace & Co., et al., No. 90-011693 (Harris County, Tex.), the Cambridge laboratory notebooks produced subject to confidentiality in the State of Hawaii case, the "reclassified privileged documents" produced in the State of Hawaii case pursuant to stipulation between the parties, all post-1975 research documents produced in the State of Hawaii case pursuant to stipulations between the parties and, all laboratory backup data produced in the State of Hawaii case;

(8)    All documents produced in the State of Hawaii case which were not originally present at the Winthrop Square repository but which were ultimately made available in response to the plaintiff's demands, and which may or may not have been permanently added to the Winthrop Square collection.  Such documents include, but are not limited to, the 1951-1955 Zonolite Company research reports (Evanston, Illinois laboratory), the pre-1976 Cambridge laboratory research reports produced in loose folders, the WRG Cambridge laboratory notebooks, the index to the Dewey & Almy research reports; all "40 Million Series" boxes, and all boxes of documents concerning vermiculite-based products from any and all plants;

(9)    All reports received from experts or consultants engaged in the asbestos property damage litigation, including but not limited to Charles Blake, Roger G. Morse, R.J. Lee, Ian Stewart, W. Bruce Hunter, Paul Brown, Charles Thornton, Daniel Cuoco, Thomas J. McClorey, Morton Corn, William N. Albrecht, Bertram Price, John E. Craighead, M.D., Ronald G. Crystal, M.D., Peter C. Elmes, M.D., Ian Alan Feingold, M.D., J. Bernard L. Gee, M.D., William E. Hughson, M.D., Hans Weill, M.D., Roger Greenway, Blaine F. Nye, John P. Walsh, Edward Gaensler, M.D., J.M.G. Davis, M.D., John M. McGinty, Thomas Cheatham, Gregory E. Bardnell, John Todhunter, Keith Wilson, M.D., Kenny S. Crump, Andrew Churg, M.D., J. Corbett McDonald, M.D., Janet Hughes, Anthony Seaton,  M.D., Michael Molley, and S.D.K. Liddell, as well as all statements or invoices rendered by such experts, and consultants (whether to WRG, its counsel or others) and evidence of all payments made in respect thereof (whether by WRG, its counsel or others);

(10)    All files and documents maintained by or in respect of J. Peter Grace, including but not limited to employment records, copies of correspondence written by or

BILZIN SUMBERG DUNN BAENA PRICE & AXELROD LLP

June 5, 2001
Page 7

to J. Peter Grace, personal diaries, notes or written reflections in any wise referring to, relating to, or concerning asbestos liability, products containing asbestos, materials containing asbestos, asbestos claims (whether or not asserted), the Libby Mine, Vermiculite, Zonolite attic insulation, tremolite or Monokote;

(11)    All files and documents maintained by or in respect of Bradley Dewey, including but not limited to employment records, copies of correspondence written by or to Bradley Dewey, personal diaries, notes or written reflections in any wise referring to, relating to, or concerning asbestos liability, products containing asbestos, materials containing asbestos, asbestos claims (whether or not asserted), the Libby Mine, Vermiculite, Zonolite attic insulation, tremolite or Monokote;

(12)    All files and documents maintained by or in respect of Otto Ambrose, including but not limited to employment records, copies of correspondence written by or to Otto Ambrose, personal diaries, notes or written reflections in any wise referring to, relating to, or concerning Otto Ambrose;

(13)    Documents in any wise concerning individuals claiming to suffer asbestos-related disease or sickness from products in place including but not limited to Zonolite attic insulation or Monokote MK-3; and

(14)    Employment records of the following persons:  George Blackwood, R.A. Bleich, Ralph Bragg, Hugh L. Carey, Bradley Dewey,  Hyman Duecker, Fred Eaton, Thomas Egan, Harry A. Eschenbach, O.M. Favorito, Thomas P. Feit, J. Peter Grace, John Hamilton, Peter Kostic, Earl Lovick, Robert Merther, Ken Millian, Walter R. Payment, Eugene Perrine, Arnold Rosenberg, Ray Rothfelder, R.E. Schneider, Robert W. Sterrett, Rodney Vining, Julie Yang.

(15)    All existing document indices and document retrieval systems (including computerized document retrieval systems) maintained by WRG and/or its attorneys, which have previously been made available, if at all, only subject to confidentiality agreements; and

(16)    Detailed and updated privilege logs identifying every document which WRG intends to continue to withhold on grounds of any privilege or exemption from discovery;

Additionally, the PD Committee requests that WRG likewise immediately begin the process of identifying, gathering, and organizing all potentially relevant documents concerning the National Medical Care/Fresenius Transaction and the Sealed Air

BILZIN SUMBERG DUNN BAENA PRICE & AXELROD LLP

June 5, 2001
Page 8

Transaction (collectively, the "Fraudulent Transfer Transactions") more particularly referred to and subject matter of the Chakarian adversary proceeding for declaratory and injunctive relief (the "Adversary"). Here too, we are seeking to gather, preserve and have available at a central repository all documents (whether in the possession of the Debtor, its agents, employees, counsel or its affiliates) relevant to any and all issues which may arise in connection with the Adversary, pending or threatened litigation concerning the Fraudulent Transfer Transactions (whether or not such litigation is stayed), and avoidance litigation that might be brought on behalf of WRG's estate (whether by the Debtor, a trustee or otherwise) in respect of the Fraudulent Transfer Transactions (collectively, the "Fraudulent Transfer Documents").

Without limiting any request, the Fraudulent Transfer Documents include but are not limited to the following:

(1)     All corporate minutes, resolutions, narratives, releases, board materials, descriptions, presentations, analyses, executive summaries and other writings concerning the Fraudulent Transfer Transactions;

(2)     All correspondence, drafts, memoranda of understanding, agreements (whether or not executed) in any wise concerning the Fraudulent Transfer Transactions;

(3)     All evidence of the consummation of the Fraudulent Transfer Transactions including but not limited to all executed agreements, deeds, bills of sale, assignments or other transfer documents whensoever arising, as well as proof of consideration purportedly paid or received;

(4)     All documents and corporate records concerning the disposition of any consideration purportedly received by the Debtor or any of its predecessors, successors, assigns or affiliates;

(5)     All valuations, appraisals or expert opinions (including but not limited to fairness opinions) or reports rendered (even if thereafter withdrawn) in connection with the Fraudulent Transfer Transactions, as well as all drafts of such matter;

(6)     All approvals and consents, as well as all requests, solicitations, proxy material, applications for such approvals and consents, obtained or given in connection with the Fraudulent Transfer Transactions; and

(7)     Detailed privilege logs identifying every document which WRG intends to withhold on grounds of any privilege or exemption from discovery.

BILZIN SUMBERG DUNN BAENA PRICE & AXELROD LLP

June 5, 2001
Page 9

We look forward to your prompt confirmation that all potentially relevant documents will be preserved and all otherwise applicable records retention schedules will be suspended, effective immediately. Please also confirm that WRG will immediately begin the process of identifying, gathering, and organizing all categories of documents potentially relevant to asbestos property damage claims, including but not limited to all categories of documents described above.

Naturally, we reserve the right to amend the foregoing informal request, as well as to take such further action as we may deem necessary should the Debtor fail or refuse to comply with this request.

Sincerely,

Scott L. Baena

SLB:mo
cc:     Peter Lockwood, Esq.

#312825v

## W.R. GRACE LIABILITY WITNESSES

Ahern, Stephen H.
Ahlers, R.H.
Alciatore, Jerome H.
Anderson, Anders
Anderson, Donna M.
Anderson, Rohn J.
Archambo, Wilfred G.
Armour, James T. (Canonie Environmental)
Arnold, R.S.
Asher, Robert L.
Ashworth, J.A.

Babb, Casper Roy
Bachelier, Frank
Baker, Joe
Baretta, Alfred Paul
Barrett, C.P.
Barron, Leslie A. (Vermiculite Institute)
Barter, Steve E.
Barwood, C.E.
Bauer, G.C.
Beauregard, R.R.
Behan, Jane
Benditz, Paul P.
Berentson, W.
Berhinig, Robert M.
Berman, R.L.
Berry, James A.
Bettacchi, R.J.
Beveridge, J.N.
Bicknell, Ralph J.
Bien, Walter J.
Bishop, Harold D.
Bishop, John H.
Bjorklund, T.A.
Blackwood, George W.
Blakley, Donald R.
Bleich, Raymond A.
Blessington, B.A.
Blitch, James Buchanan
Blubaugh, O.J.
Bonhach, George
Boone, Daniel J.

Bossier, Elijah D.
Boughton, Van T.
Bourke, W.J.
Bragg, Ralph J.
Branson, R.E.
Breslauer, C.S.
Bretherton, William M.
Brietzke, Carlon
Brown, Harry
Bryant, George Edward
Buckley, F.
Burke, William
Burnham, Ralph K.
Burns, Norman T.
Burruss, T.O.
Bushell, N.F.

Cahalane, John Paul
Cairns, J.M.
Cammarota, Wila Mae
Campbell, Douglas G.
Caneer, Jr., R.
Carey, Hugh L.
Carkener, Don
Carpenter, Glen
Carrothers, Timothy
Cass, Corine
Cautley, C.F.
Cavender, Frank
Chambers, Melvin E.
Chapin, Judson K.
Chaney, R.F.
Cheetham, Kenneth
Chenowith, Robert F.
Christopher, A.c.
Cintani, James
Cole, Roger Wayne
Combes, J.J.
Connor, Richard M.
Conry, C.E.
Cooper, Clark W.
Copulsky, William
Coquillette, R.M.
Corso, M.F.
Costello, Robert Andrew

Cotts, R.F.
Cox, E.
Cranker, K.r.
Crowe, Creighton
Culver, William V.

Dahly, E.H.
Daignault, Alexander T.
Dambros, A.W.
Daniel, John
Darling, T.E.
D'Errico, Arthur
Dean, Arthur
Dean, J.L.
deBastian, Robert O.
Debastiani, Robert (not sure is same as above)
Decker, F.L.
DeGraff, D.L.
Dembowski, A.E.
Deskin, Robert C.
Dewey, Jr., Bradley
DiBenedictis, Mario
Dietrick, T.E.
Dingler, William T.
Dix, Willaim E.
Dixon, C.W.
Dixon, R.H.
Dodson, Vance H.
Doyle, Carroll
Draper, Lee D.
Duecker, Heyman C.
Dugan, G.F.
Dunbar, Richard P.
Dunham, R.E.
Dutton, D.D.

Eaton, Frederick W.
Edmonson, H.A.
Egan, Thomas F.
Emerson, D.J.
Ericson, Robert C.
Eschenbach, Henry A.
Evans, Lloyd

Farrell, Philip P.
Favorito, O.M.
Feddeck, Richard A.
Feit, Thomas P.
Florence, Bob
Flowers, Jefferson S.
Flynn, D.J.
Fotsch, L. Paul
Fowler, Douglas P.
Frank, V.S.
Franz, L.O.
Frohlich, Robert T.
Fulmer, G.

Gaidis, J.M.
Gallagher, Dick
Gallagher, Paul J.
Garrison, William A.
Gebert, Floyd (Robinson Insulation)
Gehring, Duane
Geller, Lester E.
Getz, R.E.
Giardini, Andrea M.
Gibian, T.G.
Gilchrist, D.L.
Goldberg, Alfred
Goldy, W.N.
Grace, Joseph Peter
Grace, Lloyd F.
Graf, C.N.
Graham, Hugh G.
Gray, W.G.
Greer, J.H.
Grimm, Clayton T.
Groeber, Don E.
Guenther, Charles W.

Haight, Hal
Hall, Gerald E.
Hamilton, Alberta Jeanette
Hamilton, John S.
Hamilton, Thomas E.
Harrington, Timothy J.
Harrison, Keith W.
Hart, P.

Harter, Arhtur P.
Hartman, Richard G.
Hash, Lewis J.
Hearon, Thomas E.
Henderson, James B.
Hilkin, J.
Hines, Jr., J.G.
Hodges, Ronald
Hollis, Lawrence Peter
Holt, Jr., D.E.
Hooper, Robert
Huxley, John H.

Irvine, L.K.

Jackson, W.R.
Johnson, R.P.
Junker, Robert

Kallio, Olivia
Kazimer, R.M.
Keating, T.A.
Kelly, Joseph A.
Kelly, James M.
Kerr, E.D.
Kerr, S.K.
Kevorkian, George H.
Kingery, J.D.
Kraft, E.
Kraus, John W.
Korenberg, Paul E.
Kostic, Peter
Krauter, C.F.
Kujawa (or Kajawa), R.J.
Kulberg, R.A.

Lafferty, R.H.
Lagal, C.C.
Larson, D.L.
LaRue, Richard C.
Lim, Mary S.
Locke, Robert H.
Lord, S.J.
Lovick, Earl D.
Lowe, Cortland R.

Lyall, Jr., J.B.
Lyall, Thomas L.
Lyons, P.J.
Lyons, Richard

Mac Arthur, A.
Macklin, L.J.
Malter, Marty
Mangino, S.N.
Mann, Allan H.
Mariani, Ray
Martin, William
Mascetts, John A.
Matonis, Peter
McCarthy, Jeremiah
McComas, Albert
McDaniel, William Clifford
McDaniel, M.M.
McDougall, Judson N.
McEachern, J.
McKague, J.V.
McLeod, James R.
McMillan, Armand
McNally, Roth
Merther, Robert A.
Metcalf, Marjorie
Miller, E.C.
Miller, P.
Millian, Kenneth Y.
Mitchell, E.R.
Moll, Dale C.
Moody, Fred Raymond
Moore, E.E.
Monroe, Vern G.
Morgan, D.W.
Morris, R.I.
Morrison, R.W.
Morse, W.H.
Moss, Norman R.
Mueller, Donald
Murphy, Edward F. (Vermiculite Institute)
Murphy, James F.
Murphy, John F.
Murphy, Robert A.
Myers, J. B. (or could be Meyers)

Myrick, Gilbert
Myrick, O.D.

Navy, R.C.
Needler, Susan E.
Nelson, B.E.
Newman, David E.
Nicholson, D.B.
Nigh, Doyle D.
Nyvold, D.

Oas, Warren W.
O'Connell, R.E.
Odesky, Marvin J.
Oliverio, R.L.
Orenstein, G.S.
Ottinger, John C.
Owens, James T.

Park, L.E.
Parker, C.E.
Parker, M.E.
Payment, Walter R.
Peller, T.f.
Perrine, Eugene L.
Perry, George E.
Peters, Arthur M.
Philipsen, D.H.
Pickthall, Thomas Walter
Piersol, Harry
Poindexter, Gary
Pomarius, Cal
Porter, Kenneth
Powell, David G.
Powers, J.J.
Powling, Douglas J.
Pratt, C.A.
Prestegaard, P.
Prince, K.E.
Prouty, Dayton L.

Quayle, Mel

Ragan, Michael
Randall, Robert S.
Ray, R.L.
Reif, Paul B.
Reppert, Sibbley P.
Resch, J.
Rettew, Richard R.
Reyer, P.R.
Reynolds, R.W.
Ricci, Francis A.
Rice, R.g.
Riegner, Patrick F.
Riggleman, J.D.
Rinaldo, Peter M.
Robert, Andrew
Roberts, K.
Robinson, David P.
Robinson, J. Brooks
Robinson, J. M.
Rogers, Willaim K.
Rolllins, Alice B.
Rood, William A.
Rose, Kurt A.
Rosenberg, Arnold
Rosenblatt, Leonard
Rossi, E.F.
Rothermel, George M.
Rothfelder, Raymond
Rowe, James G.
Rowlson, C.R.
Ruble, Donald J.
Rupp, F.W.

Samuels, Robert W.
Sanchez, M.G.
Sather, L.W.
Schachter, J.H.
Schneider, Richard E.
Schultz, Robert L.
Schwartz, Gerold W.
Selenow, Richard V.
Serafin, F.G.
Sharp, S.B.
Shea, Jr., D.W.
Sheeran, Stephen J.

Sherlock, Jr., G.A.
Sherman, Morton
Shu, Larry
Siadat, Bahram
Sinacore, W.J.
Skardon, A.H.
Skiles, W.J.
Smith, A.P.
Smith, Brian J.
Smith, William E.
Smith, W.G.
Snowden, Wesley
Spade, G.E.
Speece, Robert T.
Spencer, Richard F.
Steiner, David H.
Sterrett, Robert W.
Stewert, Otis Floyd
Steinberg, Jules
Stewart, D.M.
Stewart, O.F.
Stierli, Bob
Stitch, Howard L.
Stockett, A.L.
Stover, J.E.
Strand, Philip R.
Stratten, Jr., G. Bruce
Straub, E.W.
Stringer, Alan R.
Stringfellow, Bobby
Sturgis, William B.
Sucetti, Glenn
Sweeney, F.M.

Taggart, W.L.
Taylor, G. Rhea
Templeton, Samuel Lee
Thom, Edlu J.
Thurman, John N.
Tierney, G.A.
Timmons, Joseph M.
Titus, James S.
Trayler, J.R.
Troup, Alexander

Upchurch, R.L.

Veltman, P.L.
Venard, C.J.
Venard, Lawrence J.
Vining, Rodney M.
Vinion, R.W.
Vliet, Edwin Van

Wagner, Richard
Walch, Mrs. M.J.
Walsh, John P.
Walsh, R.C.
Ward, B.
Warren, L.D.
Waxman, H.L.
Watkins, R.K.
Weaver, Jess A.
Webster, A.D.
Wendel, Carroll H.
Wertz, F.
Wesenberg, David
Westbrook, J.L.
Wexler, A.S.
White, H.A.
Whitlock, D.
Wiard, J.J.
Williams, Bruce R.
William, Dan H.
Wilson, J.
Wise, A.E.
Wood, Elwood S.
Wright, J.L.
Wright, W. Reed

Yang, Julie Chi-Sun
Yang, Wang-Hong Alex

Zanone, V.W.
Zartler, Richard A.
Zavon, Peter L.
Ziegler, Dr. George E.
Zimberg, Myrna
Zisson, James

08/12/2001 13:57 FAX 312 861 2200

# KIRKLAND & ELLIS

PARTNERSHIPS INCLUDING PROFESSIONAL CORPORATIONS

200 East Randolph Drive
Chicago, Illinois 60601

312 861-2000

Facsimile:
312 861-2200

David M. Bernick
To Call Writer Directly:
(312) 861-2248
David_Bernick@kirkland.com

June 12, 2001

**VIA FAX**

Scott L. Baena, P.A.
Bilzin Sumberg Dunn Baena Price & Axelrod
2500 First Union Financial Center
200 South Biscayne Blvd.
Miami, FL 33131-2338

Dear Scott:

I have received your letter of June 5 regarding document retention.

Attached is a copy of a freeze directive that has been issued at W.R. Grace. An additional directive was given to preserve personnel records for the individuals listed on page 7, paragraph 14 of your letter. This, of course, is not to say the documents requested in your letter (or covered by the directives) are, in fact, discoverable. That is an issue I expect we will address down the road.

Please call me if you have any questions.

Very truly yours,

David M. Bernick, P.C.

DMB:jll
Enclosure
cc:    Elihu Inselbuch, Esq.
       Lewis Kruger, Esq.
       David Siegel, Esq.

London              Los Angeles              New York              Washington, D.C.

Due to the pendency of court proceedings, it is important to remind all Grace employees to adhere strictly to Grace's document retention policies and practices. Specifically with reference to major pending litigation, no document of any kind is to be destroyed or discarded where that document refers or relates in any way to one or more of the following:

(1) asbestos;
(2) asbestos-containing products or materials;
(3) asbestos-related claims, complaints or lawsuits;
(4) vermiculite;
(5) vermiculite-containing products or materials;
(6) any licensee or distributor of any asbestos -containing product or vermiculite -containing product;
(7) trade associations or organisations;
(8) the National Medical Care/Fresenius transaction;
(9) the Cryovac/Sealed Air transaction; and
(10) indexes or logs of documents pertaining to any of the above.

The preservation of documents is required regardless of whether a document has been or will be microfilmed, scanned or otherwise recorded.

David B. Siegel
Senior Vice President
    General Counsel and
Chief Restructuring Officer

## BILZIN SUMBERG DUNN BAENA PRICE & AXELROD LLP

A PARTNERSHIP OF PROFESSIONAL ASSOCIATIONS
2500 FIRST UNION FINANCIAL CENTER
200 SOUTH BISCAYNE BOULEVARD • MIAMI, FLORIDA 33131-2336
TELEPHONE: (305) 374-7580 • WWW.BILZIN.COM
FAX: (305) 374-7593 • BROWARD: (954) 356-0030

SCOTT L. BAENA, P.A.
DIRECT DIAL (305) 350-2403
E-MAIL sbaena@bilzin.com

June 15, 2001

**Via Facsimile**
David Bernick, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, Illinois  60601

Re:    W.R. Grace & Co., Inc.

Dear David:

Many thanks for yours dated June 12, 2001, concerning the Property Damage Committee's document requests.

Unfortunately, your response and the attached directive are not responsive to our requests. Firstly, the attachment does not indicate when it was sent; how it was sent; or to whom it was sent.

I am presuming that if the so-called directive was sent at all, it was distributed internally and not to the company's professionals or other persons enumerated in our request who also have custody and control over documents.

Moreover, the short shrift by which David Siegel distilled our comprehensive request does not ensure that recipients of his "directive" will fully appreciate the scope of our request and thus, retain the documents we seek to preserve.

Secondly, your response simply ignores our urgent request that documents be moved to a central repository. Absent such a procedure, there is simply no way that you can ensure that the documents we have identified will be preserved and available for future inspection.

As you have undoubtedly observed, we spent considerable time and effort providing you with an explicit description of the documents we are interested in and the procedures we strongly believe ought be employed in respect of the retention of those documents. Candidly, your letter and the so-called "directive" trivialize our thoughtful requests. Accordingly, unless we immediately

BILZIN SUMBERG DUNN BAENA PRICE & AXELROD LLP

David Bernick, Esq.
June 15, 2001
Page 2

receive your written assurances that the company will endeavor to comply with each of our requests, we will have no choice but to bring this matter before Judge Farnan. While we think such an exercise is an unnecessary and wasteful use of our time and the estates' resources, rest assured, we will do so.

Kindly give this matter your prompt attention.

Sincerely yours,

Scott L. Baena

SLB:mo
cc:    PD Committee
       Elihu Inselbuch, Esq.
       Peter Lockwood, Esq.
       Lewis Kruger, Esq.
       Frank J. Perch, United States Trustee

IN THE UNITED STATES BANKRUPTCY COURT

IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE CO., et al., | ) | Case No. 01-1139 (JJF) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |

## ORDER

Upon the motion dated June 29, 2001 of the Official Committee of Asbestos Property

Damage Claimants, for entry of an order pursuant to 11 U.S.C. §§ 105 (a) and 1103 (c)

compelling Debtors to identify, retain, collect, and organize relevant documents and to make all

such documents available in a central repository (the "Motion"); and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157

and 1334; and it appearing that the relief requested in the Motion is necessary for the prompt and

efficient administration of these Chapter 11 cases and to protect the interests of creditors and

other parties in interest herein; and that notice of the Motion was fair and reasonable; and it

appearing that no other notice need be provided, and after due deliberation and sufficient cause

appearing therefore, it is

ORDERED, that pursuant to 11 U.S.C. § 105 (a) and 11 U.S.C. § 1103 (c), the debtors

shall immediately identify, retain, collect and organize the following documents and make them

available to the PD Committee in a central repository as follows:

1    Documents pertaining to product identification issues.  Such documents include,
     but are not limited to, all formulas, formula variations, and product formulation-
     related documents for all products containing asbestos, raw material ingredient
     specifications, research reports and back-up data pertaining to product
     development and competitive testing, original laboratory notebooks, and reports
     and back-up data pertaining to tests and analyses for purposes of product

identification, whether performed by WRG's in-house laboratories (such as testing performed by WRG's in-house analytical chemist Dr. Julie Yang) or by outside laboratories (such as testing performed by Dr. Richard J. Lee).

2    Documents pertaining to sales of products containing asbestos. Such documents include orders, invoices, sales and shipment records, ledger books, salesmen's reports, reports of job-site visit, and other sales-and-distribution-related documents that may identify purchasers, job sites, or building owners.

3    Documents pertaining to WRG's licensees and distributors, whether maintained by WRG or by the licensees/distributors themselves. These entities include, but are not limited to, The California Zonolite Company; Vermiculite-Northwest, Inc.; Western Mineral Products Company; Vermiculite-Intermountain, Inc.; Robinson Insulation Company; Southwest Vermiculite Company; Vermiculite Northwest, Inc.; The Texas Vermiculite Company; Vermiculite Products, Inc. of Houston; The Tennessee Zonolite Company; The Ari-Zonolite Company; and Vermiculite of Hawaii, Inc. Relevant documents include, inter alia, product formulation -related records, sales and shipping records, production records, and records of regulatory compliance and asbestos-related surveys (including all bulk, air, and dust sampling) of the manufacturing facilities, plants, warehouses, and distribution centers of such licenses/distributors.

4    Medical and scientific articles and data concerning the hazards of asbestos or products containing asbestos, and other documents referencing or indicating WRG's knowledge of the hazards of asbestos or products containing asbestos.

5    Documents pertaining to membership in trade associations and organizations (such as the Vermiculite Institute), and publications, meeting minutes, and notes concerning the same.

6    Documents pertaining to research and testing of asbestos and material containing asbestos for any purpose, together with all backup data including original laboratory notebooks, including not only testing concerning the health effects of asbestos, but also testing concerning field performance, product safety, product use life, friability, fiber release, cracking, dusting, deterioration, and delamination, typically documented in reports of T&As ("Testing and Analysis"), RFTS ("Request for Technical Service"), RLPs ("Research Laboratory Problems"), and reports of outside laboratories and/or consultants (such as Dr. William E. Smith and others).

7    Product specifications, product information bulletins, and advertisements for products containing asbestos.

2

8       Communications with insurance companies concerning the potential health effects
        of asbestos and/or the hazards of asbestos and products containing asbestos.
        Specifically, Maryland Casualty Company, but not limited to this company.

9       Inquiries or complaints from users and consumers, building owners, or others
        concerning the asbestos content of WRG products and/or the potential health
        effects of asbestos, and responses to the same.

10      Documents pertaining to workers compensation claims or lawsuits alleging
        asbestos-related disease from exposure to WRG's asbestos, products containing
        asbestos, tremolite asbestos-contaminated vermiculite, or vermiculite-based
        products.

11      Documents pertaining to asbestos sampling, surveys, inspections, and abatement
        of products containing asbestos from buildings owned or operated by WRG.

12      Documents reflecting  contacts with governmental bodies and regulatory agencies
        or lobbying efforts by WRG or any entity on behalf of WRG (such as the Safe
        Buildings Alliance ("SBA")) concerning asbestos or products containing asbestos.

13      All annual reports, 10-K filings, and minutes of meetings of the board of
        directors;

14      Discovery responses and affidavits served or filed by WRG in  asbestos-related
        litigation.

15      All documents presently maintained at Iron Mountain and any and all other off-
        site locations.

16      All documents presently maintained at WRG's Cambridge, Massachusetts,
        location, and any other location within the WRG organization.

17      All documents and files located in the offices of WRG's in-house counsel
        (including, but not limited to, Richard Finke) and in the offices of all of WRG's
        various national and local counsel nationwide. This includes, but is not limited to,
        the law firms of Popham, Haik, Schonbrich & Kaufman; Plunkett, Schwartz &
        Peterson; Andrews & Kurth; Anderson, Kill, Olick & Oshinsky; Mayor, Day,
        Caldwell & Keeton; Reed, Smith, Shaw & McClay; Cahill, Gordon & Reindel;
        Hoyle, Morris & Kerr; Perkins, Coie, Casner & Edwards; Fleming, Zulack &
        Williamson; Ogletree, Deakins, Nash, Smoak & Stewart; Herrick & Smith;
        Goodwin, Proctor & Hoar; Herrick and Smith; and Hahn, Loeser and Parks.

3

18    All documents pertaining to the SBA and any and all lobbying efforts by or on behalf of WRG.

19    All documents pertaining to the abatement of any products containing asbestos from any buildings owned or operated by WRG from the date of the first such abatement to the present, to be updated on an ongoing basis and make available the full range of abatement-related documents for all abatement projects carried out in buildings owned or operated by WRG, including, but not limited to, asbestos surveys, response action recommendations, internal memoranda, contracts, job reports, air sample clearance records, certificates of completion, payment records, and all related documents.

20    All documents pertaining to the issue of tremolite contamination of vermiculite deposits at WRG's Libby, Montana vermiculite mine.  This includes, without limitation, documents concerning testing to determine the tremolite content of raw vermiculite and vermiculite-based construction and other consumer products and/or tremolite fiber release (whether during mining or milling, manufacture, installation or other consumer use, or from in-place building products); WRG's efforts to reduce the tremolite content of its vermiculite and/or vermiculite-based products; and worker's compensation claims or lawsuits alleging asbestos-related disease from exposure to WRG's tremolite-contaminated vermiculite or vermiculite-based products.

21    All documents previously withheld under claims of privilege, or pursuant to any other objection, which have been released to particular plaintiffs by agreement or court order;[1]

22    All documents produced in the State of Hawaii case which were not originally present at the Winthrop Square repository but which were ultimately made available in response to the plaintiff's demands, and which may or may not have been permanently added to the Winthrop Square collection;[2]

_____

[1]This includes, but is not limited to, all documents judicially determined to be non-privileged in Cullen Center, Inc., et al. v. W.R. Grace & Co., et al., No. 90-011693 (Harris County, Tex.). the Cambridge laboratory notebooks produced subject to confidentiality in the State of Hawaii case  the "reclassified privileged documents" produced in the State of Hawaii case pursuant to stipulation between the parties, all post-1975 research documents produced in the State of Hawaii case pursuant to stipulations between the parties, and all laboratory backup data produced in the State of Hawaii case.

[2]Such documents include, but are not limited to, the 1951-1955 Zonolite Company research reports (Evanston, Illinois laboratory), the pre-1976 Cambridge laboratory research reports produced in loose folders, the WRG Cambridge laboratory notebooks, the index to the Dewey & Almy research reports; all "40 Million Series" boxes, and all boxes of documents concerning vermiculite-based products from any and all plants.

4

18    All documents pertaining to the SBA and any and all lobbying efforts by or on behalf of WRG.

19    All documents pertaining to the abatement of any products containing asbestos from any buildings owned or operated by WRG from the date of the first such abatement to the present, to be updated on an ongoing basis and make available the full range of abatement-related documents for all abatement projects carried out in buildings owned or operated by WRG, including, but not limited to, asbestos surveys, response action recommendations, internal memoranda, contracts, job reports, air sample clearance records, certificates of completion, payment records, and all related documents.

20    All documents pertaining to the issue of tremolite contamination of vermiculite deposits at WRG's Libby, Montana vermiculite mine. This includes, without limitation, documents concerning testing to determine the tremolite content of raw vermiculite and vermiculite-based construction and other consumer products and/or tremolite fiber release (whether during mining or milling, manufacture, installation or other consumer use, or from in-place building products); WRG's efforts to reduce the tremolite content of its vermiculite and/or vermiculite-based products; and worker's compensation claims or lawsuits alleging asbestos-related disease from exposure to WRG's tremolite-contaminated vermiculite or vermiculite-based products.

21    All documents previously withheld under claims of privilege, or pursuant to any other objection, which have been released to particular plaintiffs by agreement or court order;[1]

22    All documents produced in the State of Hawaii case which were not originally present at the Winthrop Square repository but which were ultimately made available in response to the plaintiff's demands, and which may or may not have been permanently added to the Winthrop Square collection;[2]

---

[1]This includes, but is not limited to, all documents judicially determined to be non-privileged in Cullen Center, Inc., et al. v. W.R. Grace & Co., et al., No. 90-011693 (Harris County, Tex.), the Cambridge laboratory notebooks produced subject to confidentiality in the State of Hawaii case, the "reclassified privileged documents" produced in the State of Hawaii case pursuant to stipulation between the parties, all post-1975 research documents produced in the State of Hawaii case pursuant to stipulations between the parties, and all laboratory backup data produced in the State of Hawaii case.

[2]Such documents include, but are not limited to, the 1951-1955 Zonolite Company research reports (Evanston, Illinois laboratory), the pre-1976 Cambridge laboratory research reports produced in loose folders, the WRG Cambridge laboratory notebooks, the index to the Dewey & Almy research reports; all "40 Million Series" boxes, and all boxes of documents concerning vermiculite-based products from any and all plants.

23    All reports received from experts or consultants engaged in the asbestos property damage litigation, as well as all statements or invoices rendered by such experts, and consultants (whether to WRG, its counsel or others) and evidence of all payments made in respect thereof (whether by WRG, its counsel or others);[3]

24    All files and documents maintained by or in respect of J. Peter Grace, Bradley Dewey, and Otto Ambrose. This would include, without limitation, employment records, correspondence, personal diaries, and notes or written reflections in any way referring to, relating to, or concerning asbestos liability, products containing asbestos, materials containing asbestos, asbestos claims (whether or not asserted), the Libby Mine, Vermiculite, Zonolite attic insulation, tremolite or Monokote.

25    Documents in any wise concerning individuals claiming to suffer asbestos-related disease or sickness from products in place including but not limited to Zonolite attic insulation or Monokote MK-3; and

26    Employment records of individuals involved in and knowledgeable concerning issues pertaining to asbestos, the hazards of asbestos, and the use of asbestos in WRG products;[4]

27    All existing document indices and document retrieval systems (including computerized document retrieval systems) maintained by WRG and/or its attorneys, which have previously been made available, if at all, only subject to confidentiality agreements; and

28    Detailed and updated privilege logs identifying every document which WRG intends to continue to withhold on grounds of any privilege or exemption from production.

29    All corporate minutes, resolutions, narratives, releases, board materials,

---

[3]Such experts include, but are not limited to, Charles Blake, Roger G. Morse, R.J. Lee, Ian Stewart, W. Bruce Hunter, Paul Brown, Charles Thornton, Daniel Cuoco, Thomas J. McClorey, Morton Corn, William N. Albrecht, Bertram Price, John E. Craighead, M.D., Ronald G. Crystal, M.D., Peter C. Elmes, M.D., Ian Alan Feingold, M.D., J. Bernard L. Gee, M.D., William E. Hughson, M.D., Hans Weill, M.D., Roger Greenway, Blaine F. Nye, John P. Walsh, Edward Gaensler, M.D., J.M.G. Davis, M.D., John M. McGinty, Thomas Cheatham, Gregory E. Bardnell, John Todhunter, Keith Wilson, M.D., Kenny S. Crump, Andrew Churg, M.D., J. Corbett McDonald, M.D., Janet Hughes, Anthony Seaton, M.D., Michael Molley, and S.D.K. Liddell,

[4] Including, without limitation, George Blackwood, R.A. Bleich, Ralph Bragg, Hugh L. Carey, Bradley Dewey, Hyman Duecker, Fred Eaton, Thomas Egan, Harry A. Eschenbach, O.M. Favorito, Thomas P. Feit, J. Peter Grace, John Hamilton, Peter Kostic, Earl Lovick, Robert Merther, Ken Millian, Walter R. Payment, Eugene Perrine, Arnold Rosenberg, Ray Rothfelder, R.E. Schneider, Robert W. Sterrett, Rodney Vining, Julie Yang and the individuals identified on the list of individuals with relevant knowledge enclosed with the PD Committee's June 5, 2001 letter.

descriptions, presentations, analyses, executive summaries and other writings concerning the Fraudulent Transfer Transactions;

30    All correspondence, drafts, memoranda of understanding, agreements (whether or not executed) in any wise concerning the Fraudulent Transfer Transactions;

31    All evidence of the consummation of the Fraudulent Transfer Transactions including but not limited to all executed agreements, deeds, bills of sale, assignments or other transfer documents whensoever arising, as well as proof of consideration purportedly paid or received;

32    All documents and corporate records concerning the disposition of any consideration purportedly received by the Debtor or any of its predecessors, successors, assigns or affiliates;

33    All valuations, appraisals or expert opinions (including but not limited to fairness opinions) or reports rendered (even if thereafter withdrawn) in connection with the Fraudulent Transfer Transactions, as well as all drafts of such matter;

34    All approvals and consents, as well as all requests, solicitations, proxy material, applications for such approvals and consents, obtained or given in connection with the Fraudulent Transfer Transactions; and

35    Detailed privilege logs identifying every document which WRG intends withhold on grounds of any privilege or exemption from deposit into the repository.

Dated: July _____, 2001
      Wilmington, Delaware

_____
United States District Court Judge

TJT/msj
F:\Meredith\TJT\WRGraceBankMBJ\OrderMototoCompelMSJ.wpd

6