**UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

**ORIGINAL**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **W.R. Grace & Co., et al.,** | ) | **Case No. 01-01139 (JJF)** |
| | ) | |
| | ) | **Jointly Administered** |
| Debtors. | ) | |
| | ) | Objections due by July 18, 2001 at 4:00 p.m. |
| | | Hearing date: To be scheduled, only if objections |
| | | are timely filed and served. |

## NOTICE OF APPLICATION

TO:    Office of the United States Trustee; Counsel to the Debtors; Counsel to the Official
Committee of Unsecured Creditors; Counsel to the Official Committee of Asbestos
Personal Injury Claimants; Counsel to the Official Committee of Asbestos Property
Damage Claimants; Official Committee of Equity Security Holders; and Counsel to the
Debtors-in-Possession Lenders (the "DIP Lenders").

FTI Policano & Manzo, Financial Advisors to the Official Committee of Unsecured
Creditors, in the above-captioned chapter 11 cases, has today filed the attached **Second Interim
Application of FTI Policano & Manzo, Financial Advisors to the Official Committee of
Unsecured Creditors, for Allowance of Compensation for Services Rendered and
Reimbursement of Expenses Incurred for the Period from May 1, 2001 Through May 31,
2001** (the "Application").

You are required to file with the United States Bankruptcy Court for the District of
Delaware, Marine Midland Plaza, 824 Market Street, 6th Floor, Wilmington, DE 19801, any
objection to the attached Application on or before July 18, 2001, at 4:00 p.m.

At the same time, you must also serve a copy of objections or responses, if any, upon the
following: (i) co-counsel for the Debtors, James H.M. Sprayregen, Esquire, Kirkland & Ellis, 200
East Randolph Drive, Chicago, Illinois 60601 (fax number 312-861-2200) and Laura Davis
Jones, Esquire, Pachulski, Stang, Ziehl, Young & Jones, P.C., 919 N. Market Street, Suite 1600,
P.O. Box 8705, Wilmington, DE 19899-8705 (fax number 302-652-4400); (ii) counsel to the
Official Committee of Unsecured Creditors, Attn: Lewis Kruger, Esquire, Stroock & Stroock &
Lavan LLP, 180 Maiden Lane, New York, NY 10038-4982 (fax number 212-806-6006), and
Michael R. Lastowski, Esquire, Duane, Morris & Heckscher LLP, 1100 North Market Street,
Suite 1200, Wilmington, Delaware 19801-1246 (fax number 302-657-4901); (iii) counsel to the
Official Committee of Asbestos Property Damage Claimants, Scott L. Baena, Esquire, Bilzin,
Sumberg, Dunn, Baena, Price & Axelrod, First Union Financial Center, 200 South Biscayne
Boulevard, Suite 2500, Miami, FL 33131 (fax number 305-374-7593), and Michael B. Joseph,

WLM\147511.1

Esquire, Ferry & Joseph, P.A., 824 Market Street, Suite 904, P.O. Box 1351, Wilmington, DE 19899 (fax number 302-575-1714); (iv) counsel to the Official Committee of Asbestos Personal Injury Claimants, Elihu Inselbuch, Esquire, Caplin & Drysdale, 399 Park Avenue, 36th Floor, New York, NY 10022 (fax number 212-644-6755), and Matthew G. Zaleski, III, Esquire, Ashby & Geddes, 222 Delaware Avenue, P.O. Box 1150, Wilmington, DE 19899 (fax number 302-654-2067); (v) counsel to the DIP Lenders, J. Douglas Bacon, Esquire, Latham & Watkins, Sears Tower, Suite 5800, Chicago, IL 60606 (fax number 312-993-9767), and Steven M. Yoder, Esquire, The Bayard Firm, 222 Delaware Avenue, Suite 900, P.O. Box 25130, Wilmington, DE 19899 (fax number 302-658-6395); (vi)the Office of the United States Trustee, Attn: Frank J. Perch, Esquire, 844 N. King Street, Wilmington, DE 19801 (fax number 302-573-6497); and (vii) Edwin N. Ordway, Jr., FTI Policano & Manzo, Park 80 West, Plaza I, Saddle Brook, NJ 07663 (fax number 201-843-8044).

A HEARING ON THE APPLICATION WILL BE HELD BEFORE THE HONORABLE JOSEPH J. FARNAN, ONLY IF OBJECTIONS ARE TIMELY FILED AND SERVED.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF DEMANDED BY THE APPLICATION WITHOUT FURTHER NOTICE OR HEARING.

Dated: June 29, 2001                    Respectfully submitted,

Michael R. Lastowski, Esquire (DE I.D. No. 3892)
DUANE, MORRIS & HECKSCHER, LLP
1100 North Market Street, Suite 1200
Wilmington, DE  19801
Telephone:  (302) 657-4900
Facsimile:  (302) 657-4901
E-mail:     mlastowski@duanemorris.com

- and -

Lewis Kruger, Esquire
STROOCK & STROOCK & LAVAN, LLP
180 Maiden Lane
New York, NY 10038-4982
Telephone:  (212) 806-5400
Facsimile:  (212) 806-6006

*Co-Counsel to the Official Committee
of Unsecured Creditors*

WLM\147511.1                    - 2 -

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------x

In re:                                          Chapter 11

W.R. GRACE & Co., et al.,                       Case No.  01-01139(JJF)
                                                (Jointly Administered)

                    Debtors

-------------------------x

SECOND INTERIM APPLICATION OF FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM MAY 1, 2001 THROUGH MAY 31, 2001)

Type of Application:  Interim ___X___     Final _____

Name of Applicant:                              FTI Policano & Manzo
Authorized to Provide Professional Services to:  The Official Committee of
                                                 Unsecured Creditors

Date of Order Authorizing Employment:           June 21, 2001

Compensation Sought:
        Application Date:      June 28, 2001
        Application Period:    May 1, 2001 through May 31, 2001


|  | Hours | Amount |
|---|---|---|
| Professional Fees (80%) | 339.3 | $83,265.20 |
| Expense Reimbursement (100%) | | 2,513.09 |
| **Total** | | **$85,778.29** |

Is this a first application?   Yes _____ No__X__

SECOND INTERIM APPLICATION OF FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM MAY 1, 2001 THROUGH MAY 31, 2001)

INDEX

APPLICATION FOR ALLOWANCE OF INTERIM
COMPENSATION AND REIMBURSEMENT OF EXPENSES

EXHIBIT A    Affidavit of Edwin N. Ordway, Jr.

EXHIBIT B    Summary of the services performed by FTI Policano & Manzo from May 1, 2001 through May 31, 2001

EXHIBIT C    Summary of fees by professional for the period May 1, 2001 through May 31, 2001

EXHIBIT D    Detailed descriptions of services rendered by professional for the period May 1, 2001 through May 31, 2001

EXHIBIT E    Summary of expenses incurred for the period May 1, 2001 through May 31, 2001

## APPLICATION FOR ALLOWANCE OF
## INTERIM COMPENSATION AND REIMBURSEMENT
## OF EXPENSES

### I.    Introduction

This is the second application for allowance of interim compensation and reimbursement of expenses ("Second Interim Application") made by FTI Policano & Manzo ("FTI P&M" or "Applicant"), as Financial Advisors to the Official Committee of Unsecured Creditors (the "Committee) of W.R. Grace & Co. et. al., (the "Company" or "Debtors") for the period May 1, 2001 through May 31, 2001 ("Second Interim Period").  In connection with this application, the Applicant submits as follows:

1. FTI P&M is a firm of financial advisors specializing in insolvency restructuring and related matters, and is an operating unit of FTI Consulting, Inc.

2. FTI P&M was retained by the Committee as Financial Advisors to the Committee pursuant to an approved by the Court dated June 21, 2001 (the "Employment Order").

3. On May 3, 2001, the Court entered an order establishing procedures for interim compensation and reimbursement of expenses for all professionals and committee members ("Interim Compensation Order").

4. The Interim Compensation Order requires each professional to submit monthly statements to various parties as stated in the Interim Compensation Order.  These monthly statements include a detailed schedule of the services rendered and the expenses incurred for the related period, and are submitted on or about the 28th day of every month. Following a 20 day period for notice and resolution of objections, the Interim Compensation Order requires the Debtors to promptly pay (i) 80% of undisputed professional fees; and (ii) 100% of the undisputed expenses detailed in the monthly statement.

5. During the Second Interim Period, FTI P&M submitted the following monthly statements to the parties in the Interim Compensation Order:

| Period | Fees | Expenses |
|---|---|---|
| 5/1-5/31/01 | $104,081.50 | $2,513.09 |

6. Through the date of this Second Interim Application, FTI P&M has not been paid for the professional fees rendered nor the expenses incurred that were included in the monthly statements for the Second Interim Period.

7. FTI P&M submits this Second Interim Application, pursuant to Section 330 and 331 of the United States Bankruptcy Code and Bankruptcy Rule 2016, for an interim

allowance for compensation for professional services rendered to the Debtors of $83,265.20, representing 80% of fees incurred, and for the reimbursement of expenses in connection therewith of $2,513.09 for the period May 1, 2001 through May 31, 2001. To date, Applicant has not been paid for the professional services rendered nor for reimbursement of expenses.

8. During the Second Interim Period, the Applicant rendered professional services required by the Debtors and their counsel aggregating a total of 339.3 hours in the discharge of its duties as financial advisor and bankruptcy consultant to the Committee.

9. The Applicant believes that the interim fees applied for herein for professional services rendered in performing accounting and advisory services for the Committee in this proceeding are fair and reasonable in view of the time spent, the extent of work performed, the nature of the Debtors' capitalization structure and financial condition, the Debtor's financial accounting resources and the results obtained. Applicant has attached to this Second Interim Application, as Exhibit D, a complete accounting of the time expended by professionals who worked on this matter during the Second Interim Period. The Applicant's work during this period has been categorized into six separate tasks, each of which is described in detail in Exhibit B. Additional task codes may be added in subsequent applications.

10.    Section II below briefly discusses the history of the Company prior to its filing, issues facing the Company during the Chapter 11 period, and the major tasks performed by the Applicant during the Second Interim Period.

## II.    Background

1.    On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.    Pursuant to an Application submitted to the Court on or about May 17, 2001, and by a Court order dated June 21, 2001, FTI P&M was retained as financial advisors for the Committee, nunc pro tunc to April 20, 2001. Since its retention, FTI P&M has continuously and vigorously pursued the Committee's interests in these cases.

3.    The Debtors have represented, among other things, that: (a) the Debtors engage in specialty chemicals and materials businesses, operating on a worldwide basis, with their corporate headquarters located in Columbia, Maryland; (b) The Debtors predominantly operate through two business units – Davison Chemicals and Performance Chemicals; (c) the Debtors' parent company, W.R. Grace & Co. ("Grace"), is a global holding company that conducts substantially all of its business through a direct, wholly

owned subsidiary, W.R. Grace & Co. – Conn. ("Grace-Conn"); (d) Grace-Conn owns substantially all of the assets, properties and rights of Grace in the United States and has 76 domestic subsidiaries and affiliates, 60 of which are Debtors and Debtors in possession in the Chapter 11 Cases.

     **4.**     The following summary is not intended to be a detailed description of the work performed as those day-to-day services and the time expended in performing such services as those are fully set forth in Exhibit D.  Rather, it is merely an attempt to highlight those areas in which services were rendered to the Committee during the Compensation Period, including (i) Analysis of information provided by the Debtor regarding critical vendors (ii) Analysis of information provided by the Debtor regarding compensation and retention issues (iii) Financial monitoring, (iv) Meetings and phone conferences with Debtors' management and counsel and with Committee counsel, and (v) Other Matters.

     5.     FTI P&M has played an important role in assisting the Creditors to understand and negotiate several substantial and complex issues, notably the assumption of employee executory contracts, the structuring of severance and retention bonuses to employees, and the identification of critical vendors.  These issues greatly impact the general unsecured creditors of the Debtors.

     6.     FTI P&M's role included the preparation and communication of various financial analyses requested by the Official Committee of Unsecured Creditors' professionals in order to assist their rapid understanding of the issues facing the Debtors.

     7.     For the Compensation Period, FTI P&M seeks compensation totaling $85,778.29, representing 80% of fees incurred and 100% of expenses incurred.  FTI P&M expended an aggregate of 339.3 hours, substantially all of which was expended by eight professionals.  The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.  A small staff was utilized to optimize efficiencies and avoid redundant efforts.  The staff of the Debtors has been utilized where practical and prudent.

     8.     In addition, FTI P&M incurred out-of-pocket expenses in connection with the rendition of the professional services described above in the sum of $2,513.09 for which FTI P&M respectfully requests reimbursement in full.  All expenses were billed at actual cost, exclusive of amortization of the cost of investment, equipment or capital outlay.  Internal charges for outgoing out-of-town facsimile transmissions were billed at $1.25 per page for domestic transmissions.  Photocopy charges were billed at actual cost for external copying and $.20 per page for internal copying.  FTI P&M believes that these charges reflect its actual out-of-pocket costs.

     9.     The disbursements and expenses have been incurred in accordance with FTI P&M's normal practice by charging clients for expenses clearly related to and required by particular matters.  Such expenses were often incurred to enable FTI P&M to devote time beyond normal office hours to matters which imposed extraordinary time

demands.  FTI P&M has endeavored to minimize these expenses to the fullest extent possible.

10.    FTI P&M's approach is to utilize senior, experienced personnel and to encourage the Debtors to provide the staff-level support and analysis to minimize total cost.  In addition, FTI P&M's per diem rates for professionals of comparable experience are 15% to 25% lower than its competitors, the "Big-Five" accounting firms and certain other nationally-recognized specialty firms.

11.    Because FTI P&M's core staff consisted of senior professionals who performed a vast amount of the work, time spent communicating internally and reviewing the work product of junior associates was kept to a minimum.  Additionally, because of the experience of FTI P&M's professionals, in many instances only one or two FTI P&M representatives attended meetings or performed specific functions.

12.    Edwin N. Ordway, Jr., Managing Director in charge of this case, directed the activities of the FTI P&M team, calling upon his more than ten years of experience in restructuring and insolvency matters, including more than 100 cases, many as large and complex, and some larger and more complex than this matter.

## III.    Summary of Fees and Expenses Incurred

13.    To the best of the Applicant's knowledge and belief, there has been no duplication of services between the Applicant and any other accountants or consultants to the bankruptcy estate.

14.    FTI P&M's travel time policy is for professional personnel to travel outside of business hours when possible.  Such time is not charged to a client unless productive work is performed during the travel period.  In this engagement, non-productive travel time is not being charged to the Debtor.

15.    In providing a reimbursable service such as copying or telephone, the Applicant does not make a profit on that service.  In charging for a particular service, FTI P&M does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay.  In seeking reimbursement for a service which the Applicant justifiably purchased or contracted for from a third party, FTI P&M requests reimbursement only for the amount billed to FTI P&M by such third party vendor and paid by FTI P&M to that vendor.

16.    FTI P&M's policy with respect to word processing and document preparation and handling services provided by FTI P&M employees is to bill clients by the hour for such time, but only if the employees' time is clearly and exclusively devoted to work performed for that particular client, as for the preparation, collation and binding of a report for a client.   Such services are billed to the Debtor at a rate commensurate with that which would be charged by a third party provider such as a temporaries agency.

17.     Annexed hereto as Exhibit B is a more comprehensive summary of the services performed by the Applicant during the Second Interim Period at the direction of the Debtor and its Counsel.

18.     Annexed hereto as Exhibit C is a summary of fees by professional and by task during the Second Interim Period.

19.     Annexed hereto as Exhibit D are detailed descriptions of the time spent by each professional during the Second Interim Period.

20.     Pursuant to Rule 2016, FTI P&M states that no compensation to be received in this proceeding will be shared with any person or entity outside of FTI Policano & Manzo and that no compensation has been paid or promised to the Applicant in connection with the compensation sought in this Application except as disclosed herein. No prior application has been made to this or any other Court for the relief requested herein for the Compensation Period, nor has any payment been received by FTI P&M on account of its accounting and financial advisory services rendered or on account of the out-of-pocket expenses incurred in connection therewith.

21.     As stated in the Affidavit of Edwin N. Ordway, Jr. annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

22.     The Debtors will give notice of the relief requested herein and of the relief requested by the other professionals in their respective applications for allowance of compensation by serving notice of this application upon all parties that have requested notice in these cases, and FTI P&M has personally served copies of the Application with exhibits to the Debtors and on the United States Trustee

23.     WHEREFORE, the Applicant respectfully requests that this Court enter an order:

    a.  approving the allowance of compensation for professional services rendered to the Committee during the period from May 1, 2001 through and including May 31, 2001 in the amount of $104,081.50;

    b.  approving the reimbursement of FTI P&M's out-of-pocket expenses incurred in connection with the rendering of such services during the period from May 1, 2001 through and including May 31, 2001 in the amount of $2,513.09; and

    c.  authorizing the Debtor to pay as interim compensation to FTI P&M 80% of the amount of the professional services rendered and 100% of the

expenses incurred by FTI P&M during the period from May 1, 2001 through and including May 31, 2001, subject to final payment of the full amount; and

d.  granting such other and further relief as this Court may deem just and proper.

Date: *June 29, 2001*

FTI Policano & Manzo

By

FTI Policano & Manzo
Park 80 West, Plaza I
Saddle Brook, NJ  07663
(201) 843-4900

*Edwin N. Ordway, Jr.*

EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| W.R. GRACE & CO., et al. | ) | **Case No. 01-01139 (JJF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

## AFFIDAVIT

| | |
|---|---|
| STATE OF NEW JERSEY | ) |
| | ) ss: |
| COUNTY OF BERGEN | ) |

EDWIN N. ORDWAY, JR., being duly sworn, deposes and says:

1.      I am a Managing Director of FTI Policano & Manzo, ("FTI P&M"), an operating unit of FTI Consulting, Inc. ("FTI"), and I am duly authorized to make this affidavit on behalf of FTI P&M.  FTI P&M provides financial consulting services for restructuring matters and has its principal office at Park 80 West Plaza I, Saddle Brook, New Jersey.  FTI P&M has provided financial consulting services to and has rendered professional services on behalf of the Official Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co., and sixty-one of its domestic subsidiaries and affiliates which are debtors and debtors-in-possession before this Court.

2.      This affidavit is submitted pursuant to Bankruptcy Rule 2016(a) in support of FTI P&M's second monthly application for an interim allowance of compensation and for the reimbursement of expenses for services rendered during the

period from May 1, 2001 through and including May 31, 2001 in the aggregate amount of
$86,553.29.

3.      All services for which compensation is requested by FTI P&M were
professional services performed for and on behalf of the Committee from May 1, 2001
through and including May 31, 2001 and not on behalf of any other person.

4.      In accordance with Title 18 U.S.C. Section 155, neither I nor any
employee of my firm has entered into any agreement, express or implied, with any other
party-in-interest for the purpose of fixing the amount of any of the fees or other
compensation to be allowed out of or paid from the Debtors' assets.

5.      In accordance with Section 504 of the Bankruptcy Code, no agreement
or understanding exists between me, my firm, or any employee thereof, on the one hand,
and any other person, on the other hand, for division of such compensation as my firm
may receive for services rendered in connection with these cases, nor will any division of
fees prohibited by Section 504 of the Bankruptcy Code be made by me or any employee
of my firm.

EDWIN N. ORDWAY, JR.

Sworn to before me this
28 day of June, 2001

Notary Public

**JEANINE LOSINO**
**Notary Public of New Jersey**
**My Commission Expires May 16, 2002**

Exhibit B

## SUMMARY OF THE SERVICES PERFORMED BY FTI POLICANO & MANZO DURING THE SECOND INTERIM PERIOD

**Task Code 1 - Preparation for and Participation at Creditors Committee Meetings or Conference Calls**  (22.0 Hours)

FTI P&M participated in two committee meetings during May:

1. May 1st:    Discussed critical vendor and compensation related issues.
2. May 22nd:  Attended meeting with Committee and Debtor to receive Debtors presentation on financial status and case status..

**Task Code 2 - Issues Related to Chapter 11 Operating Issues, Such As Critical Vendor Motions, Reclamation Claims, Executory Contracts and Similar Issues** (24.0 Hours)

FTI P&M analyzed, through review of supporting data provided by the Debtor and discussions with management, critical vendor issues, including necessity of payments, Debtor's revised proposal, limitations and similar issues.  Based on such work, we developed recommendations to the Committee.

**Task Code 3 - Employee Compensation Issues** (103.2 Hours)

FTI P&M reviewed and analyzed, through data supplied by the Debtor, the overall cost and participation levels of all benefit plans for both active and retired employees of the Company.  Analysis of such work was presented to the Committee to assist them in evaluating proposed First Day Orders pertaining to compensation matters.

**Task Code 4 - Analysis of Financial Data, Including Business Plan, Projections Forecasts, Cash Flow Forecasts and Historical Information**  (37.8 Hours)

FTI P&M requested and analyzed historical financial data for purposes of developing an understanding of issues that can affect future performance.

**Task Code 5- Monthly Statement, Retention and Fee Application Preparation** (39.6 Hours)

This category represents the time expended during the Second Interim Period in preparing FTI P&M's Retention Application and the First Application for Allowance of Interim Compensation and Reimbursement of Expenses.

**Task Code 6- Grace competitor profile analysis and analysis of other asbestos related Chapter 11 filings** (112.7 Hours)

FTI P&M prepared a financial and valuation profile of direct competitors and analyzed financial performance data from other companies with asbestos liabilities for the purpose of developing an understanding of issues relating to claim estimation, operating performance, and valuations.

**Exhibit C**
**Page 1 of 2**

W.R. GRACE & CO. ET. AL.
Summary of Fees by Professional
For the period May 1, 2001 through May 31, 2001

| | Total Hours April | Billing Rate | Amount |
|---|---|---|---|
| M. Policano | 4.7 | $525 | $ 2,467.50 |
| E. Ordway | 35.5 | $475 | 16,862.50 |
| S. Cunningham | 60.3 | $405 | 24,421.50 |
| J. Schwendeman | 5.0 | $325 | 1,625.00 |
| C. MacCallum | 155.5 | $295 | 45,872.50 |
| M. DiSalvio | 32.0 | $175 | 5,600.00 |
| B. Griffith | 11.5 | $175 | 2,012.50 |
| M. Hakoun | 34.8 | $150 | 5,220.00 |
| | 339.3 | | $104,081.50 |

**Exhibit C**
**Page 2 of 2**

W.R. GRACE & CO. ET. AL.
Summary of Fees by Professional
For the period May 1, 2001 through May 31, 2001

| TASK CODE | TASK | M. Policano | E. Ordway | S. Cunningham | J. Schwendman | C. MacCallum | M. Hakoun | M. DiSalvio | B. Griffith | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Meetings of Creditors | | 9.0 | 12.4 | | 0.6 | | | | 22.0 |
| 2 | Chapter 11 Operating Issues | 1.1 | 2.7 | 4.8 | | 15.4 | | | | 24.0 |
| 3 | Employee Compensation Issues | 3.6 | 10.1 | 33.4 | | 56.1 | | | | 103.2 |
| 4 | Business Analyses | | 4.0 | 4.9 | | 24.2 | | 3.4 | 1.3 | 37.8 |
| 5 | Fee Application Preparation | | 4.0 | 0.0 | | 35.6 | | | | 39.6 |
| 6 | Competitor Profile Analysis | | 5.7 | 4.8 | 5.0 | 23.6 | 34.8 | 28.6 | 10.2 | 112.7 |
| | TOTAL | 4.7 | 35.5 | 60.3 | 5.0 | 155.5 | 34.8 | 32.0 | 11.5 | 339.3 |

**Exhibit D**

W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Michael Policano
For the period May 1, 2001 through May 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 4-May | 2 | Reviewed bankruptcy documents, information request and work plan. | 1.1 |
| | 3 | Reviewed first day orders related to assumption of employee contracts. | 0.7 |
| 7-May | 3 | Reviewed analysis of employee-related motions in preparation for presentation to the unsecured committee. | 1.6 |
| 8-May | 3 | Analyzed information regarding proposed retention and severance arrangements. | 1.3 |
| | | **Total Hours - May** | 4.7 |



**Exhibit D**

## W.R. GRACE & CO. ET. AL.
### Professional Services Rendered by Edwin N. Ordway, Jr.
### For the period May 1, 2001 through May 31, 2001

| Date | Task Code | Description | Hours |
|------|------|-------------|-------|
| 1-May | 2 | Participated in committee conference call regarding compensation and critical vendor motion issues. critical vendor motion issues. | 1.3 |
| 2-May | 5 | Prepared court retention documents. | 1.5 |
| 3-May | 4 | Met with Committee chairperson to review scope of services and  work plan. | 1.3 |
| 4-May | 2 | Read and analyzed bankruptcy documents, including First Day orders. | 1.1 |
| 7-May | 4 | Based on analysis of Bankruptcy documents, revised/added to  detailed workplan. | 0.9 |
| 8-May | 3 | Analyzed information regarding proposed retention and severance arrangements. | 1.8 |
|  | 4 | Read and analyzed compensation data included in latest proxy. | 0.5 |
|  | 3 | Analzyed comparable Company data regarding senior management compensation. | 0.8 |
| 9-May | 3 | Read and analyzed Company documents regarding LTIP plan and employee contracts. | 1.0 |
| 10-May | 3 | Prepared/edited report regarding analysis of proposed retention and severance arrangements. | 1.8 |
|  | 3 | Called counsel to discuss compensation report draft and developed recommendations for the Committee. | 1.2 |
| 11-May | 2 | Read and analyzed counsel's memo regarding recent motions. | 0.3 |
| 16-May | 3 | Participated in conference call with counsel and chair to discuss executive compensation and retention issues. | 0.8 |
|  | 6 | Analyzed industry data regarding asbestos claims. | 1.4 |
| 17-May | 3 | Participated in conference call with counsel to discuss positions and issues to be shared with Debtor advisors during May 18 conference call. | 1.2 |
| 18-May | 3 | Participated in conference call with Debtor professionals and Committee counsel regarding compensation issues. | 1.5 |

|         |   |                                                                                                                                                                                                                                                                      |      |
|---------|---|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------|
|         | 6 | Read and analyzed analyst reports regarding asbestos-troubled companies.                                                                                                                                                                                              | 0.5  |
| 21-May  | 1 | Prepared for meeting with Committee, Debtors and Debtors' advisors, including: reviewed report regarding compensation issues and prepared notes for oral presentation to Committee; read and analyzed most recent financial statements; and summarized notes for meeting with Debtors to discuss work to be performed and timing. | 2.2  |
|         | 6 | Read and analyzed financial data regarding peer group companies.                                                                                                                                                                                                      | 2.6  |
| 22-May  | 4 | Met with Blackstone and Debtors' management to discuss work to be performed and timetable.                                                                                                                                                                             | 1.1  |
|         | 1 | Attended meeting with Committee and Debtors to receive Debtors presentation on financial status and case status.                                                                                                                                                      | 6.1  |
|         | 1 | Met with chair and counsel to discuss meeting and next steps.                                                                                                                                                                                                         | 0.4  |
| 23-May  | 1 | Called Committee member to discuss 5/22 meeting.                                                                                                                                                                                                                       | 0.3  |
|         | 4 | Called Debtors professionals to discuss work plan and information request list.                                                                                                                                                                                       | 0.2  |
| 24-May  | 5 | Prepared April fee application.                                                                                                                                                                                                                                        | 1.8  |
| 25-May  | 5 | Prepared fee application for April.                                                                                                                                                                                                                                    | 0.7  |
| 30-May  | 6 | Analyzed information regarding other asbestos cases and issues concerning claims estimation.                                                                                                                                                                           | 1.2  |

**Total Hours - May**                                                                                                                                                                                                                                                                   35.5

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
### Professional Services Rendered by Sean Cunningham
### For the period May 1, 2001 through May 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 1-May | 3 | Updated Chairman as to findings re: compensation issues. | 0.5 |
| | 2 | Participated in conference call with Committee re: employee motions and critical vendor motion. | 1.6 |
| | 2 | Reviewed vendor motion stipulation with counsel. | 0.5 |
| | 3 | Analyzed various employee compensation plans. | 1.5 |
| | 2 | Read and analyzed senior executive contracts. | 1.0 |
| 2-May | 3 | Compiled historical cost data related to employee benefit plans, begin analysis to compare proposal to severance /retention programs implemented in other Chapter 11 cases. | 2.5 |
| | 4 | Drafted project scope, workplan and information request list. | 2.0 |
| 3-May | 1 | Met with Tom Maher - Chairman of Unsecured Committee to review project scope and workplan. | 3.4 |
| 4-May | 2 | Reviewed motion to assume executory contracts. | 1.5 |
| 7-May | 3 | Prepared analysis of employee-related motions in preparation for presentation to the unsecured committee, including executory contract assumption, general retention plan, long term incentive plan, executive severance agreements. | 6.6 |
| | 3 | Discussed employee benefit  information received from Company with John Forgach- Senior Benfits Counsel to Company. | 1.2 |
| | 4 | Prepared information request for counsel. Discussed  information  received to date with counsel. | 1.3 |
| 8-May | 3 | Finalized analysis for creditors committee- re employee motions etc.; discussed benefit-related issues with  Company's Senior Benefits Counsel. | 7.5 |
| | 3 | Reviewed report  findings with E Ordway- Partner. | 0.9 |
| | 3 | Reviewed report findings with counsel. | 1.3 |
| 9-May | 3 | Updated report to reflect changes to Emploee Motions based on review with counsel. | 3.4 |
| | 3 | Reviewed Stock Option Plan presented by Company ( J. Forgash). | 1.6 |
| 10-May | 1 | Prepared for call with counsel re: compensation issues. | 1.2 |
| 15-May | 3 | Incorporated updated salary and contract information received from J.Forgash into draft report. | 2.0 |

| | | | |
|---|---|---|---|
| | 3 | Reviewed changes with counsel . | 1.0 |
| 16-May | 1 | Participated in conference call with counsel and committee chairman re: Employee Motions. | 0.8 |
| | 3 | Finalized edits to employee motion report to the Unsecured Committee. | 2.4 |
| 18-May | 1 | Participated in conference call with Debtor professionals and Committee counsel regarding compensation issues. | 1.5 |
| | 3 | Reviewed modifications to employee motions and prepared report for issuance. | 1.0 |
| 21-May | 6 | Researched Grace Competitors, other entities with Asbestos Liabilities | 3.0 |
| | 6 | Prepared preliminary valuation/recovery analysis. | 1.8 |
| 22-May | 4 | Met with Blackstone, Tarola re: Information requested and workplan. | 1.0 |
| | 1 | Attended meeting with Committee and Debtors to receive Debtors presentation on financial and case status. | 5.5 |
| 31-May | 4 | Particiapted in conference call with Blackstone re: Information request, schedule meeting. | 0.6 |
| | 2 | Updated counsel re: change of control language- Norris contract. | 0.2 |

**Total Hours - May**                                                          60.3

**Exhibit D**

### W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Jeffrey Schwendeman
For the period May 1, 2001 through May 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 16-May | 6 | Researched and analyzed recent increases in asbestos related litigation and potential impact on recorded reserves for Company and competitors. | 1.9 |
| 18-May | 6 | Read and analyzed Johns-Manville Trust agreement re: impact on Company and competitors' potential litigation settlements. | 1.3 |
| 23-May | 6 | Researched and analyzed current and near-term projected market for industrial construction materials. | 1.8 |
| **Total Hours - May** | | | **5.00** |

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
### Professional Services Rendered by Craig MacCallum
### For the period May 1, 2001 through May 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 1-May | 5 | Prepared engagement letter and motion to employ P&M. | 3.1 |
| | 2 | Collated information on compensation, incentive plans, retention agreements and severance agreements on ten senior executives. | 4.9 |
| 3-May | 2 | Read and analyzed executory employment agreements and change of control agreements for ten senior executives. | 4.3 |
| | 3 | Read and analyzed debtors' motion to pay prepetition wages, incentive pay and other compensation. | 5.7 |
| 4-May | 2 | Read and analyzed debtors' motion to assume executory employment contracts. | 4.2 |
| | 3 | Prepared questions and information request list to be submitted to Debtor in connection with review of employee motions and forwarded to counsel. | 4.8 |
| 7-May | 3 | Prepared presentation for Creditors' committee regarding employee motions and terms of executives' contracts. | 9.5 |
| | 3 | Revised questions and information request list to be submitted to Debtor in connection with review of employee motions and forwarded to counsel. | 1.5 |
| 8-May | 4 | Prepared information request list for submission to Debtor re: operating results, financial condition etc. | 1.1 |
| | 3 | Continued with preparation of presentation for Creditors' committee regarding employee motions and executives' contracts. | 2.1 |
| | 3 | Read and analyzed correspondence and schedules supporting general retention plan and litigation/tax department retention program. | 2.0 |
| | 2 | Compiled information on CEO's compensation, benefits and severance package for inclusion in the presentation. | 2.0 |
| | 3 | Analyzed and compiled data on stock incentive plans. | 1.8 |
| 9-May | 3 | Prepared analysis of Target Bonus Pool for Long Term Incentive Plan. | 2.0 |
| | 3 | Researched target & actual bonuses for 2000 & 2001 and prepared chart for inclusion in report. | 1.4 |
| | 3 | Continued with preparation of presentation for Creditors' committee regarding employee motions and executive contracts. | 6.8 |

| | | | |
|---|---|---|---|
| 10-May | 5 | Continued with preparation of motion to employ P&M and statement of qualifications. | 3.5 |
| | 4 | Read and analyzed analysts' reports regarding asbestos reserves at other companies. | 7.0 |
| 11-May | 5 | Completed preparation of engagement letter, motion to employ P&M, E. Ordway affidavit and statement of qualifications. | 8.0 |
| 14-May | 4 | Read and analyzed 10-K for Debtor, including analysis of asbestos matters, segment reporting, tax issues, working capital and capital structure. | 2.5 |
| | 4 | Analyzed and compared cash flow per certified financials with internal reports. | 2.0 |
| | 3 | Continued with preparation of presentation for Creditors' committee regarding employee motions and executives' contracts. | 4.5 |
| 15-May | 4 | Reviewed and revised information request list for submission to debtor | 1.2 |
| | 3 | Reviewed and revised presentation for Creditors' committee regarding employee motions and executives' contracts based on internal comments. | 4.8 |
| 16-May | 4 | Continued with review and revision of information request list for submission to Debtor pertaining to analysis of compensation issues. | 2.4 |
| | 4 | Continued with analysis of 10-K and 10-Q for Debtor, including analysis of asbestos matters, segment reporting, tax issues, working capital and capital structure. | 2.3 |
| 17-May | 4 | Read and analyzed 10-K and 10-Q for Debtor, and performed comparative review with other financial information on Debtor. | 2.2 |
| | 4 | Prepared a comparison and reconciliation of cash flow per 10-Q to internal reports on filing entities. | 2.5 |
| | 3 | Pweformed industry research regarding retention and severance arrangements in other bankruptcy cases. | 2.6 |
| | 4 | Completed revision of information request list pertaining to compensation matters for submission to Debtor, and forwarded to counsel. | 1.0 |
| 18-May | 5 | Compiled and prepared draft fee application for the period 4/21-4/30/01 | 1.8 |
| | 3 | Reviewed and revised presentation for Creditors' committee regarding employee motions and executives' contracts based on comments from committee chair and counsel. | 1.5 |
| | 1 | Prepared report for distribution to Creditors'committee. | 0.6 |
| | 3 | Participated in conference call with counsel regarding retention/severance report and information request list. | 1.5 |
| | 6 | Read and analyzed research information on competitors. | 2.4 |
| 21-May | 5 | Continued with preparation of first interim fee application for the period 4/21 4/30/01. | 1.0 |
| | 6 | Read and analyzed industry research reports on asbestos claims and asbestos-related bankruptcies. | 2.0 |

| | | | |
|---|---|---|---|
| | 3 | Reviewed and revised presentation for Creditors' committee regarding employee motions and executives' contracts based on comments from counsel. | 1.2 |
| | 3 | Prepared analysis of anticipated total LTIP payouts under various growth assumptions. | 2.4 |
| | 6 | Read and analyzed industry research reports on comparable companies. | 1.9 |
| | 6 | Read and analyzed informational brief on asbestos filed by debtor. | 1.5 |
| 22-May | 5 | Continued with preparation of first interim fee application for the period 4/21-4/30/01. | 1.6 |
| | 6 | Prepared outline of report to Creditors' committee on the background of asbestos claims and asbestos-related bankruptcies. | 1.9 |
| 23-May | 5 | Continued with preparation of first interim fee application for the period 4/21-4/30/01. | 4.3 |
| | 6 | Continued with preparation of report to Creditors' committee on the background of asbestos claims and asbestos-related bankruptcies. | 4.7 |
| 24-May | 5 | Continued with preparation of first interim fee application for the period 4/21-4/30/01. | 3.5 |
| | 6 | Continued with preparation of report to Creditors' committee on the background of asbestos claims and asbestos-related bankruptcies. | 5.0 |
| 25-May | 5 | Revised first interim fee application for the period 4/21-4/30/01 based on review comments. | 7.0 |
| 29-May | 5 | Called counsel to discuss first interim fee application for the period 4/21-4/30/00. | 0.5 |
| | 5 | Revised first interim fee application for the period 4/21-4/30/01 based on review comments. | 1.3 |
| | 6 | Read and analyzed industry research reports and public filings on comparable companies. | 3.2 |
| 30-May | 6 | Reviewed industry research reports on asbestos claims and asbestos-related bankruptcies. | 1.0 |

**Total Hours - May**                                                                    155.5



**Exhibit D**

## W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Matthew Hakoun
For the period May 1, 2001 through May 31, 2001

| Date | Task Code | Description | Hours |
|------|------|-------------|-------|
| 1-May | 6 | Collected Asbestos-related bankruptcy filings and research reports on selected comparable companies facing asbestos litigation. | 3.3 |
| 2-May | 6 | Researched and analyzed current news articles, and industry information and literature from other parties in interest related to aesbostos litigation. | 2.8 |
| 3-May | 6 | Researched available news and government reports regarding asbestos litigation and class action lawsuits. | 2.4 |
| 7-May | 6 | Accumulated current information related to asbestos litigation settlements and pending litigation. | 3.1 |
| 9-May | 6 | Read and analyzed publicly available news and government reports regarding asbestos litigation. | 3.2 |
| 9-May | 6 | Used the Bloomberg Professional system to perform searches based upon companies that were exposed to asbestos litigation. | 2.4 |
| 10-May | 6 | Researched and compared past and current competitors bankruptcy cases for relevant operating issues. | 2.6 |
| 17-May | 6 | Assembled and analyzed comparable company data in order to prepare a peer group analysis. | 4.1 |
| 18-May | 6 | Gathered and analyzed information on companies that are exposed to asbestos litigation and have not yet filed for bankruptcy. | 3.8 |
| 22-May | 6 | Researched and analyzed competitor companies for severance and retention plans for employment agreements and compensation agreement issues in accordance with restructuring arrangements. | 2.5 |
| 24-May | 6 | Collected motions and other information relating to industry and other Debtor in Possession Financing from other Chapter 11 cases. | 4.6 |

| | |
|---|---|
| **Total Hours - May** | **34.8** |

**Exhibit D**

W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Moira DiSalvio
For the period May 1, 2001 through May 31, 2001

| Date | Task Code | Description | Hours |
|---|---|---|---|
| 15-May | 6 | Researched and analyzed relevant articles, government documents, and other industry related information resources pertaining to asbestos liability and litigation. | 3.3 |
| 16-May | 6 | Researched and analyzed comparable companies with liability exposure in the asbestos related industries. | 3.8 |
| 17-May | 6 | Read, analyzed and summarized High-Yield Research documents related to Company industry. | 5.2 |
| 18-May | 6 | Researched current asbestos litigation cases and identified firms currently involved in such cases. | 2.8 |
| 21-May | 6 | Assembled and analyzed publicly filed documents of competitor companies regarding peer group analysis. | 2.5 |
| 22-May | 6 | Prepared peer group analysis of Company and other asbestos related companies. | 4.5 |
| 23-May | 6 | Researched and analyzed pertinent documents regarding the Johns Manville asbestos cases, Plan of Reorganization, and Formation of Trust. | 2.5 |
| 30-May | 4 | Prepared and assembled company information binders (3) to include company financial data, press releases, SEC documents, high-yield research reports, sections of competitors SEC documents relating to asbestos litigation, litigation information, news articles, and the Johns Manville Trust. | 3.4 |
| | 6 | Prepared summary of Manville Personal Injury Trust. | 1.6 |
| 31-May | 6 | Revised and finalized summary of the Manville Personal Injury Trust. | 2.4 |
| **Total Hours - May** | | | 32.0 |

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
### Professional Services Rendered by Brian Griffith
### For the period May 1, 2001 through May 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 21-May | 6 | Collected and assembled industry information on comparable companies. | 2.8 |
| | 6 | Prepared industry peer group comparison. | 2.3 |
| 29-May | 4 | Reviewed WR Grace 10K & 10Q, updated peer group analysis. | 1.3 |
| | 6 | Reviewed, analyzed and summarized John Manville Trust agreement including: purpose, assets to be transferred, assumption of liability, relevant powers of administration, relevant bylaws, investment limitations and termination of the trust. | 5.1 |
| | | **Total Hours - May** | **11.5** |

W.R. GRACE & CO. ET. AL.
Summary of Expenses by Type of Expense
For the period May 1, 2001 through May 31, 2001

| | | |
|---|---|---|
| Copies: | | |
| Internal | $ | 506.80 |
| External | | - |
| Telecommunications: | | |
| Toll Charges | | - |
| Facsimile | | 208.75 |
| Postage, Federal Express | | - |
| Travel Expenses: | | |
| Transportation, lodging, tolls and parking | | 410.04 |
| Meals | | - |
| Word Processing Services | | 1,087.50 |
| Document Preparation and Handling Services | | 300.00 |
| | | |
| Total Expenses | $ | 2,513.09 |

**Exhibit E**
**Page 2 of 2**

### W.R. GRACE & CO. ET. AL.
Detail of Expenses by Type of Expense
For the period May 1, 2001 through May 31, 2001

| | | | | | |
|---|---|---|---|---|---|
| Copies, Internal | Total for Month | 2,534 | pages @ $0.20/page: | | $    506.80 |
| | | | | | |
| Facsimile Charges: | | 167 | pages @ $1.25/page: | | 208.75 |
| | | | | | |
| Toll Charges: | S.Cunningham | Telephone calls | | 65.95 | |
| | M. Hakoun | Online research fees | | 40.00 | |
| | | Subtotal | | | 105.95 |
| | | | | | |
| Postage, Federal Express: | | | | | 10.24 |

Transportation, lodging, tolls and parking:

| | | | | |
|---|---|---|---|---|
| E. Ordway | 21-May | Parking, tolls, mileage | 26.55 | |
| | 22-May | Parking, tolls, mileage | 33.00 | |
| S.Cunningham | 9-May | Parking, tolls, mileage, taxi | 105.10 | |
| | 21-May | Parking, tolls, mileage, taxi | 66.60 | |
| | 22-May | Parking, tolls, mileage, taxi | 50.60 | |
| | | Subtotal | | 281.85 |
| | | | | |
| Meals: | 21-May | S.Cunningham | | 12.00 |

Word Processing Services:

| | | | |
|---|---|---|---|
| | 6-May | 6.00 | 450.00 |
| | 13-May | 3.00 | 225.00 |
| | 20-May | 0.30 | 22.50 |
| | 31-May | 5.20 | 390.00 |
| | Subtotal | | 1,087.50 |

Document Preparation and Handling Services:

| | | | |
|---|---|---|---|
| | 2-May | 1.0 hours @ $75/hour: | 75.00 |
| | 16-May | 0.5 | 37.50 |
| | 18-May | 1.0 | 75.00 |
| | 21-May | 1.0 | 75.00 |
| | 24-May | 0.5 hours @ $75/hour: | 37.50 |
| | Subtotal | | 300.00 |

| | |
|---|---|
| Total Expenses | $  2,513.09 |

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE


---------------------------x

In re:                                    Chapter 11

W.R. GRACE & Co., et al.,                 Case No.  01-01139(JJF)
                                          (Jointly Administered)


                    Debtors

---------------------------x


ORDER ALLOWING FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD MAY 1, 2001 THROUGH MAY 31, 2001)

Upon the Application, dated _____ (the "Application"), of FTI P&M, as

Financial Advisors to the Official Committee of Unsecured Creditors (the "Committee)

for Allowance of Interim Compensation in the amount of $83,265.20 for Actual and

Necessary Services Rendered and for Reimbursement of Actual and Necessary Expenses

Incurred in the amount of  $2,513.09 for the Period from May 1, 2001 through May 31,

2001 (the "Application Period"); the Court having reviewed the Application; and finding

that the Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 157 and

1334; and after notice and opportunity for a hearing to consider the Application; and

upon the record and after due deliberation thereon; and due and proper notice of the

Application having been given; and sufficient cause appearing therefor;

IT IS HEREBY ORDERED:

1.      The Application is GRANTED.

2.      FTI P&M is allowed interim compensation in the amount of

$83,265.20 for actual, reasonable and necessary professional services rendered on behalf

of the Committee during the Application Period, and reimbursement of $2,513.09 for

actual, reasonable and necessary expenses incurred during the Application Period.

3.      The Debtors shall pay to FTI P&M the amount of $85,778.29,

which is equal to the sum of FTI P&M's allowed compensation and expense

reimbursement out of the assets of their estates.


Dated:  Wilmington, Delaware

        _____ ____, 2001


                        _____
                        UNITED STATES BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **W.R. Grace & Co., et al.,** | ) | **Case No. 01-01139 (JJF)** |
| | ) | |
| | ) | **Jointly Administered** |
| Debtors. | ) | |
| | ) | Objections due by July 18, 2001 at 4:00 p.m. |
| | | Hearing date: To be scheduled, only if objections |
| | | are timely filed and served. |

## CERTIFICATE OF SERVICE

I, Shelley A. Hollinghead, certify that I am not less than 18 years of age, and that service of a copy of the attached **Notice of Application of Second Interim Application of FTI Policano & Manzo, Financial Advisors to the Official Committee of Unsecured Creditors, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred for the Period from May 1, 2001 Through May 31, 2001** was made June 29, 2001, upon:

> All of the parties indicated on the attached Service List by first class mail, postage prepaid, or as otherwise indicated.

Under penalty of perjury, I declare that the foregoing is true and correct.

_June 29, 2001_
Date

_Shelley A. Hollinghead_
Shelley A. Hollinghead

WLM\147511.1                        - 3 -

## W.R. GRACE FEE APPLICATION SERVICE LIST
Case No. 01-01139 (JJF)
Doc. No. Word147513v1

*Via Hand Delivery*
Laura Davis Jones, Esquire
David Carickhoff, Esquire.
Pachulski, Stang, Ziehl, Young & Jones
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
*Counsel to Debtors and Debtors in Possession*

*Via First Class Mail*
Hamid R. Rafatjoo, Esquire
Pachulski, Stang, Ziehl, Young & Jones
10100 Santa Monica Boulevard
Los Angeles, CA 90067-4100
*Counsel to Debtors and Debtors in Possession*

*Via Hand Delivery*
Steven M. Yoder, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
*Local Counsel to DIP Lender*

*Via Hand Delivery*
Michael R. Lastowski, Esquire
Duane, Morris & Heckscher LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
*Counsel to Official Committee of Unsecured Creditors*

*Via First Class Mail*
James H.M. Sprayregen, Esquire
James Kapp, III, Esquire
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601
*Counsel to Debtor*

*Via First Class Mail*
J. Douglas Bacon, Esquire
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL 60606
*Counsel to DIP Lender*

*Via Hand Delivery*
Michael B. Joseph, Esquire
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
*Counsel for Asbestos Property Damage Claimants*

*Via Hand Delivery*
William P. Bowden, Esquire
Matthew G. Zaleski, III, Esquire
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
*Local Counsel to Asbestos Property Damage Claimants*

*Via First Class Mail*
Frank J. Perch, Esquire
Office of the United States Trustee
601 Walnut Street, Curtis Center,
Suite 950 West
Philadelphia, PA 19106

*Via First Class Mail*
Lewis Kruger, Esquire
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982
*Official Committee of Unsecured Creditors*