## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------)
In re                                                 )    **Chapter 11**
                                                      )
**W. R. GRACE & CO., et al.,** [1]                    )    **Case No. 01-01139**
                                                      )    **(Jointly Administered)**
                                                      )
                        **Debtors.**                  )    **Hearing Date:  Only if Timely**
                                                      )          **Objections Are Made**
                                                      )    **Objection Deadline:**
                                                      )          **July 23, 2001 @ 4:00 p.m.**
-----------------------------------------------------)

## NOTICE OF APPLICATION

To:    (1) Office of the United States Trustee; (2) Counsel to the Official

Committee of Unsecured Creditors; (3) Counsel to the Official Committee of Asbestos

Personal Injury Claimants; (4) Counsel to the debtors and debtors-in-possession; and (5)

Counsel to the debtor-in-possession lenders (the "DIP Lenders").

Bilzin Sumberg Dunn Baena Price & Axelrod LLP, counsel to the Official

Committee of Asbestos Property Damage Claimants (the "PD Committee"), filed and

served the Application for Order Pursuant to Sections 1103(a) and 328(a) of the

Bankruptcy Code Authorizing the Retention and Employment of Conway, Del Genio,

---

[1] The Debtors consist of the following 62 entities: W. R Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace &  Co.-Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Ins., CB Biomedical, Inc. (f/k/a Circe    Biomedical,    Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Ins., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B 11 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe. Inc., Grace H-G Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Ins., MICA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Gries & Co., LLC, as Financial Advisor and Investment Banker to the Official Committee of Property Damage Claimants, nunc pro tunc to April 27, 2001 (the "Application") with the United States Bankruptcy Court for the District of Delaware.

You are required to file with the United States Bankruptcy Court for the District of Delaware, Marine Midland Plaza, 824 Market Street, 6th Floor, Wilmington, Delaware 19801, an objection to the attached Application on or before July 23, 2001 at 4:00 p.m.

At the same time, you must serve a copy of the objections or responses, if any, upon the following: (i) co-counsel for the Debtors, James H.M. Sprayregen, Esquire, Kirland & Ellis, 200 East Randolph Drive, Chicago, Illinois 60601 (fax number 312-861-2200), and Laura Davis Jones, Esquire, Pachulski, Stang, Ziehl, Young & Jones P.C., 919 North Market Street, Suite 1600, P. O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801) (fax number 302-652-4400); (ii) counsel to the Official Committee of Unsecured Creditors, Lewis Kruger, Esquire, Stroock & Stroock & Lavan, LLP, 180 Maiden Lane, New York, New York 10038-4982 (fax number 212-806-6006), and Michael R. Lastowski, Esquire, Duane, Morris & Heckscher, LLP, 1100 N. Market Street, Suite 1200, Wilmington, Delaware 19801-1246 (fax number 302-657-4901); (iii) counsel to the Official Committee of Asbestos Property Damage Claimants, Scott L. Baena, Esquire, Bilzin Sumberg Dunn Baena Price & Axelrod LLP, First Union Financial Center, 200 South Biscayne Boulevard, Suite 2500, Miami, Florida 33131 (fax number 305-374-7593), and Michael B. Joseph, Esquire, Ferry & Joseph, P.A., 824 Market Street, Suite 904, P. O. Box 1351, Wilmington, Delaware 19899 (fax number 302-575-1714); (iv) counsel to the Official Committee of Asbestos Personal Injury Claimants, Elihu

Inselbuch, Esquire, Caplin & Drysdale, 399 Park Avenue, 36th Floor, New York, New York 10022 (fax number 212-644-755), and Matthew G. Zaleski, III, Esquire, Campbell & Levine, LLC, 1201 N. Market Street, 15th Floor, Wilmington, Delaware 19801 (fax number 302-426-9947); (v) counsel to the DIP Lenders, J. Douglas Bacon, Esquire, Latham & Watkins, Sears Tower, Suite 5800, Chicago, Illinois 60606 (fax number 312-993-9767), and Steven M. Yoder, Esquire, The Bayard Firm, 222 Delaware Avenue, Suite 900, P. O. Box 25130, Wilmington, Delaware 19899 (fax number 302-658-6395) and (vi) the Office of the United States Trustee, Attn: Frank J. Perch, Esquire, 844 N. King Street, Wilmington, Delaware 19801 (fax number-302-573-6497).

A HEARING ON THE APPLICATION WILL BE HELD ONLY IF OBJECTIONS OR RESPONSES ARE FILED.

IF YOU FAIL TO RESPOND OR OBJECT IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE APPLICATION WITHOUT FURTHER NOTICE OR HEARING.

Dated: July 5, 2001

> Bilzin Sumberg Dunn Baena Price & Axelrod LLP
> Counsel of the Official Committee of Asbestos Property Damage Claimants
> 2500 First Union Financial Center
> 200 South Biscayne Boulevard
> Miami, Florida 33131-2336
> Telephone: (305) 374-7580
> Facsimile: (305) 374-7593
>
> By: _____
> Scott L. Baena (Admitted Pro Hac Vice)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------)
In re                                             )     Chapter 11
                                                  )
W. R. GRACE & CO., et al., [1]                    )     Case No. 01-01139
                                                  )     (Jointly Administered)
                                                  )
                              Debtors.            )     Hearing Date: Only if Timely
                                                  )         Objections Are Made
                                                  )     Objection Deadline:
                                                  )         July 23, 2001 @ 4:00 p.m.
--------------------------------------------------)
```

### APPLICATION FOR ORDER PURSUANT TO SECTIONS 1103(a) AND 328(a) OF THE BANKRUPTCY CODE AUTHORIZING THE RETENTION AND EMPLOYMENT OF CONWAY, DEL GENIO, GRIES & CO., LLC AS THE FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF PROPERTY DAMAGE CLAIMANTS, NUNC PRO TUNC TO APRIL 27, 2001

TO:  THE HONORABLE JOSEPH J. FARNAN, JR.,
     UNITED STATES DISTRICT COURT JUDGE:

The Official Committee of Property Damage Claimants (the "PD Committee") of

the above-captioned debtors and debtors in possession (the "Debtors" or the "Company"),

by and through this application (the "Application"), respectfully seek entry of an order

pursuant to sections 1103(a) and 328(a) of Title 11 of the United States Code, 11 U.S.C.

---

[1] The Debtors consist of the following 62 entities: W. R Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Ins., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Ins., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe. Inc., Grace H-G Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Ins., MICA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

§§ 101 et seq. (the "Bankruptcy Code"), and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the retention and employment of Conway, Del Genio, Gries & Co., LLC ("CDG") as financial advisor and investment banker to the PD Committee and for approval of CDG's proposed terms of employment, nunc pro tunc to April 27, 2001. In support of this Application, the PD Committee relies upon the Affidavit of Michael F. Gries (the "Affidavit"), attached hereto as Exhibit A, and represents as follows:

## INTRODUCTION

1.      On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). On the Petition Date, the Court entered an order of joint administration pursuant to Federal Rule of Bankruptcy Procedure 1015(b) providing for the joint administration of these cases and for their consolidation for procedural purposes only.  Pursuant to 11 U.S.C. §§ 1107(a) and 1108, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

2.      On April 12, 2001, the United States Trustee appointed the PD Committee. At a scheduled meeting on April 19, 2001, at which a majority of its members were present, the PD Committee selected CDG to provide financial advisory services to it during the pendency of the Chapter 11 Cases.

3.      This Court has jurisdiction over these cases pursuant to 28 U.S.C. §§ 157 and 1334 and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

4.        By this Application, the PD Committee respectfully requests that the Court

enter an order pursuant to sections 1103(a) and 328(a) of the Bankruptcy Code, and Rules

2014(a) and 2016 of the Bankruptcy Rules:

(a)        authorizing the retention and employment of CDG as its financial advisor

and investment banker for the purpose of providing financial advisory, investment

banking and other related services in connection with the Debtors' chapter 11

cases, all in accordance with the terms of the engagement letter (the "Engagement

Letter"), dated June 15, 2001, which is attached to the Affidavit as Exhibit I;

(b)        approving the proposed fee structure, including the indemnification

provisions, set forth in the Engagement Letter; and

(c)        granting such further and other relief as this Court deems just and proper.

5.        The PD Committee requests that such retention be nunc pro tunc to April

27, 2001, the date CDG commenced postpetition services for the Debtors.

## CDG'S QUALIFICATIONS

6.        CDG is a financial advisory firm, providing services focused on the

restructuring of under-performing companies, mergers and acquisitions, and valuation

services.  CDG is made up of over thirty professionals possessing experience in a wide

range of industries.  CDG is well-qualified to serve as the PD Committee's financial

advisors in that, among other things, its members have assisted and advised numerous

chapter 11 debtors and creditors in the development of plans of reorganization and are

experienced in analyzing and testifying regarding debt restructuring and related chapter 11

issues.  In particular, CDG's professionals have provided services to debtors and creditors

in numerous chapter 11 cases, including, inter alia, Ameriserve Food Distribution,

3

Bradlees Stores, Inc., Dow Corning, Inc., Converse, Inc., Factory Card Outlet Corp,

Golden Books Family Entertainment, Inc., Imperial Home Décor Group, Inc., Mariner

Post-Acute Network, Inc., Metallgesellschaft Corp., MicroAge, Inc., Revco D.S., Inc.,

Salant Corporation, Ventas, Inc. and Walter Industries, Inc.

## SERVICES TO BE PROVIDED BY CDG

7.      The PD Committee anticipates that CDG will render professional financial

advisory and related services for the PD Committee as needed throughout the course of

the Chapter 11 Cases, including:

(a)     Performing due diligence on Debtors, including evaluating financial and operating data, capital structure, operating trends and market conditions, and historical transactions;

(b)     Working with other professionals serving the Committee in investigating and evaluating possible avoidance claims that may be available to the estate;

(c)     Evaluating business plans and financial projections prepared by the Debtors, including any cash flow projections, long term or short term business plans;

(d)     Assessing proposals made by the Debtors or others;

(e)     Performing valuation analyses and review of capital structure issues, including debt capacity;

(f)     Evaluating the credit quality and valuation of various forms of distribution which might comprise creditor recoveries;

(g)     Assisting the PD Committee in negotiations with various parties;

(h)     Rendering expert testimony as required by the PD Committee; and

(i)     Such other financial advisory services as may be requested by the PD Committee from time to time.

## CDG'S COMPENSATION

8.     CDG has agreed to accept as compensation for its services in the Chapter 11 Cases such sums as may be allowed by this Court in accordance with law, based upon the services rendered, the results achieved, the difficulties encountered, the complexities involved, and other appropriate factors.

9.     As compensation for its services and in accordance with its normal billing practices, subject to allowance by this Court in accordance with applicable law, CDG has agreed to accept a monthly fee of $150,000 for the first twelve months of its engagement, after which the monthly fee shall be reduced to $100,000.

10.     In addition, also subject to allowance by this Court in accordance with applicable law, CDG shall bill the Debtors for reimbursement of all of its reasonable out-of-pocket expenses incurred in connection with CDG's employment.

11.     CDG also requests that this Application be granted nunc pro tunc to April 27, 2001 to allow CDG to be compensated for work it performed for the PD Committee from and after April 27, 2001, but prior to the submission of this Application or the order granting it.

12.     The Debtor will indemnify CDG and certain related persons in accordance with the indemnification provisions set forth in the Engagement Letter.  CDG believes that these provisions are customary and reasonable for financial advisory engagement and express the standard of liability set forth in section 1103(c) of the Bankruptcy Code. See In re PWS Holding Corp., 228 F.3d 224, 246-47 (3d Cir. 2000).

## APPROVAL OF THE TERMS OF
## CDG'S ENGAGEMENT PURSUANT
## TO SECTION 328(a) OF THE BANKUPTCY CODE

13.    The PD Committee requests approval of the terms of CDG's engagement,

including (i) the terms of the Engagement Letter and (ii) the indemnification provisions

contained therein, subject to the standard of review provided in section 328(a) of the

Bankruptcy Code. Section 328(a) of the Bankruptcy Code provides, in pertinent part, that

a committee "with the court's approval, may employ or authorize the employment of a

professional person under section ... 1103 ... on any reasonable terms and conditions of

employment, including a retainer, on an hourly basis, or on a contingent fee basis."  11

U.S.C. § 328(a).  As recognized by numerous courts, Congress intended in section 328(a)

to enable debtors and committees to retain professionals pursuant to specific fee

arrangements to be determined at the time of the court's approval of the retention, subject

to reversal only if the terms are found to be improvident in light of "developments not

capable of being anticipated at the time of the fixing of such terms and conditions." 11

U.S.C. § 328(a).  See In re Nat'l  Gypsum Co.,123 F.3d 861, 862-63 (5th Cir. 1997) ("If

the most competent professionals are to be available for complicated capital restructuring

and the development of successful corporate reorganization, they must know what they

will receive for their expertise and commitment.").

14.     The PD Committee believes that the fee structure and indemnification provisions set forth in the Engagement Letter are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The fee structure and indemnification provisions appropriately reflect (i) the nature of the services to be provided by CDG (ii) the fee structures and indemnification provisions typically utilized by CDG and other leading financial advisory and investment banking firms, which do not bill their clients on an hourly basis and generally are compensated on a transactional basis; (iii) CDG's substantial experience with respect to financial advisory and investment banking services; and (iv) the nature and scope of work to be performed by CDG in these chapter 11 cases.

15.     Subject to the foregoing, including the standards imposed by section 328(a) of the Bankruptcy Code, awards of compensation and expenses will be sought by CDG pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, and the rules and orders of this Court.

## DISCLOSURE CONCERNING CONFLICTS
## AND PREPETITION PAYMENTS

16.    CDG has informed the PD Committee that, except as described in the Affidavit, CDG (i) does not have or represent any interest materially adverse to the interests of the PD Committee, Debtors or their estates, creditors or equity interest holders, and (ii) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code. Moreover, the retention and employment of CDG are necessary and in the best interests of the PD Committee, the Debtors and their estates and creditors.

17.    As set forth in the Affidavit, CDG has not shared or agreed to share any of its compensation with any other person, other than a managing director, professional or employee of CDG as permitted by section 504 of the Bankruptcy Code.

## NOTICE

18.    Proper notice of this Application has been given and the PD Committee submits that no further notice be given.

## WAIVER OF MEMORANDUM OF LAW

19.    As there are no novel issues of law presented herein, the PD Committee waives its right to file a memorandum of law in support of the Application, pursuant to Rule 7.1.2(a) of the Local Rules, incorporated by reference into the Local Bankruptcy Rules by General Order #9D.

## PRIOR REQUEST FOR RELIEF

20.    No previous application for the relief sought in this Application has been

made to this or any other court.

WHEREFORE, the PD Committee respectfully requests that the Court enter an

order, substantially in the form attached hereto as Exhibit C pursuant to sections 1103(a)

and 328(a) of the Bankruptcy Code, and Rules 2014(a) and 2016 of the Bankruptcy Rules

(a) authorizing the retention and employment of CDG as its financial advisor and

investment banker pursuant to the terms of the Letter Agreement nunc pro tunc to April

27, 2001, (b) approving the proposed fee structure and indemnification provisions set forth

in the Engagement Letter as reasonable under section 328(a) of the Bankruptcy Code, and

(c) granting such further and other relief as this Court deems just and proper.

Dated: June 28, 2001

THE OFFICIAL COMMITTEE OF
PROPERTY DAMAGE CLAIMANTS

By: _____
Name: _Darrell Scott_
Title: _Co-Chair_
_Property Damage Committee_

**Exhibit A**

## IN.THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------- )
In re                                                          )      Chapter 11
                                                               )
W. R. GRACE & CO., et al., [1]                                 )      Case No.  01-01139
                                                               )      (Jointly Administered)
                                                               )
                                    Debtors.                   )
                                                               )
-------------------------------------------------------------- )
```

## AFFIDAVIT OF MICHAEL F. GRIES IN SUPPORT OF APPLICATION FOR ORDER PURSUANT TO SECTIONS 1103(a) AND 328(a) OF THE BANKRUPTCY CODE AUTHORIZING RETENTION AND EMPLOYMENT OF CONWAY, DEL GENIO, GRIES, & CO., LLP AS THE FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE <u>OFFICIAL COMMITTEE OF PROPERTY DAMAGE CLAIMANTS, NUNC PRO TUNC TO APRIL 27, 2001</u>

```
STATE OF NEW YORK        )
                         :        ss.:
COUNTY OF NEW YORK       )
```

Michael F. Gries, being duly sworn, deposes and says:

      1.     I am a member of the firm of Conway, Del Genio, Gries, & Co., LLP

("CDG" or the "Firm"), which maintains an office at 645 Fifth Avenue, New York, New

York 10022, telephone: (212) 813-1300; fax: (212) 813-0580.  I am authorized to execute

---

[1] The Debtors consist of the following 62 entities: W. R Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace &  Co.-Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Ins., CB Biomedical, Inc. (f/k/a Circe    Biomedical,    Inc.), CCHP, Inc., Coalgracc, Inc., Coalgracc II, Ins., Creative Food `N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B 11 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe. Inc., Grace H-G Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Squarc Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Ins., MICA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

this affidavit on behalf of the Firm.

2.    This affidavit is being submitted in support of the Application by the Official Committee of Property Damage Claimants of the above-captioned debtors and debtors in possession (the "Debtors" or the "Company") for an order authorizing he retention and employment of Conway, Del Genio, Gries & Co., LLC as financial advisor to the Official Committee of Property Damage Claimants (the "PD Committee"), <u>nunc pro tunc</u> to April 27, 2001.

3.    I have personal knowledge of the facts stated herein and, if called as a witness, could competently testify thereto.

4.    CDG is a financial advisory firm, providing services focused on the restructuring of under-performing companies, mergers and acquisitions, and valuation services through its members and professionals.   CDG is made up of over thirty professionals possessing experience in a wide range of industries. The members of the Firm have assisted and advised numerous chapter 11 debtors and creditors in the development of plans of reorganization and are experienced in analyzing and testifying regarding debt restructuring and related chapter 11 issues.   In particular, the Firm's professionals have provided services to debtors and other constituencies in numerous chapter 11 cases, including, <u>inter alia</u>: Ameriserve Food Distribution, Bradlees Stores, Inc., Dow Corning, Inc., Converse, Inc., Factory Card Outlet Corp, Golden Books Family Entertainment, Inc., Imperial Home Décor Group, Inc., Mariner Post-Acute Network, Inc., Metallgesellschaft Corp., MicroAge, Inc., Revco D.S., Inc., Salant Corporation, Ventas, Inc. and Walter Industries, Inc.

## TERMS OF CDG'S RETENTION

5.      CDG will render professional financial advisory and related services for the PD Committee as needed throughout the course of the Chapter 11 Cases, including:

      (a)      Performing due diligence on Debtors, including evaluating financial and operating data, capital structure, operating trends and market conditions, and historical transactions;

      (b)      Working with other professionals serving the PD Committee in investigating and evaluating possible avoidance claims that may be available to the estate;

      (c)      Evaluating business plans and financial projections prepared by the Debtors, including any cash flow projections, long term or short term business plans;

      (d)      Assessing proposals made by the Debtors or others;

      (e)      Performing valuation analyses and review of capital structure issues, including debt capacity;

      (f)      Evaluating the credit quality and valuation of various forms of distribution which might comprise creditor recoveries;

      (g)      Assisting the PD Committee in negotiations with various parties;

      (h)      Rendering expert testimony as required by the PD Committee; and

      (i)      Such other financial advisory services as may be requested by the PD Committee from time to time.

6.      As compensation for its services and in accordance with its normal billing practices, subject to allowance by this Court in accordance with applicable law, CDG has agreed to accept a monthly fee of $150,000 for the first twelve months of the engagement, after which the monthly fee shall be reduced to $100,000.

7.      In addition, subject to allowance by this Court in accordance with applicable law, CDG shall bill the Debtors monthly for reimbursement of all of its reasonable out-of-pocket expenses incurred in connection with CDG's employment.

8.      The Debtors shall indemnify CDG in accordance with the indemnification provisions set forth in the Engagement Letter attached hereto as Exhibit I (the Engagement Letter").  CDG is seeking retention under terms that it believes to be reasonable and customary for services to be performed and standard practice for the investment banking community.

9.      No promises have been received by CDG as to compensation in connection with these cases other than as outlined in the Engagement Letter and in accordance with the provisions of the Bankruptcy Code.  CDG has no agreement with any other entity to share any compensation received.

10.      The terms of CDG's employment and compensation as described in the Engagement Letter, are consistent with employment and compensation arrangements typically entered into by CDG when providing such financial advisory services, and are competitive with those arrangements entered into by other financial advisory and investment banking firms when rendering comparable services.

## DISCLOSURE CONCERNING CONFLICTS

11.    To the best of my knowledge, information and belief, insofar as I have

been able to ascertain after due inquiry, the members and professionals of CDG do not

have any connections with the Debtors, their creditors, any other parties in interest, their

respective attorneys or accountants, the United States Trustee, or any person employed in

the office of the United States Trustee, except as follows:

(a)    In unrelated matters, CDG has represented various groups of banks, financial institutions and investment funds, some of which may be lenders to or shareholders of the Debtors, including, but not limited to, Bank of America, Chase Manhattan Bank, Citibank, Credit Suisse First Boston, Hapoalim, JP Morgan, Citibank, ABN Amro Bank, and Credit Lyonnais, among others.  CDG will not provide professional services to such entities or persons in the future on matters related to the Chapter 11 Cases.

(b)    CDG's members or its professionals have in the past worked with and have mutual clients with certain law firms who represent parties-in-interest in these cases.  None of those engagements or relationships relates to these chapter 11 cases.  In particular, CDG has performed professional services in unrelated matters for other clients of Pachulski, Stang, Ziehl, Young & Jones, P.C, local counsel to the Debtors.

(c)    CDG has in the past performed financial advisory services for several companies of which Blackstone Group L.P. and its private equity funds were significant shareholders.

(d)    It is possible that certain employees of CDG hold interests in mutual funds or other investment vehicles that may own the Debtors' securities.

12.    In addition to the above relationships, given the large number of unsecured creditors and other parties in interest in the Chapter 11 Cases, there may be other unsecured creditors and parties in interest that have been served by CDG. While CDG may have provided, or may in the future provide, services to parties in interest in these cases, none of those relationships or matters has or will have any connection with the Chapter 11 Cases. CDG will file supplementary affidavits regarding this retention if additional relevant information is obtained.

13.    CDG is not and was never a creditor, an equity security holder or an insider of any of the Debtors.

14.    CDG is not and was not an investment banker for any outstanding security of any of the Debtors.

15.    CDG is not and was not, within three years before the Debtor's petition date, an investment banker for a security of the Debtors, or a financial advisor for such an investment banker in connection with the offer, sale or issuance of any security of any of the Debtors.

16.    CDG is not and was not, within two years before the Debtor's petition date, a director, officer or employee of any of the Debtors or of any investment banker for any security of any of the Debtors.

6

17.    Accordingly, to the best of my knowledge, information and belief, CDG is a "disinterested person" as such term is defined by 11 U.S.C. § 101(14).

18.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _19_ day of June, 2001, at New York, New York.

_Michael F. Gries_
Michael F. Gries

Sworn to and subscribed before me
this _19_ day of June, 2001

_Clare Nelson_
Notary Public
State of New York

CLARE NELSON
Notary Public, State of New York
No. 41-4650045
Qualified in Queens County
Certificate Filed in New York Co.
Commission Expires _2/28/2002_

**Exhibit I**

**C**
**D**   *Conway*
**G**   *Del Genio*
       *Gries & Co., LLC*

Olympic Tower  |  645 Fifth Avenue  |  New York, NY 10022  |  Tel: 212 813 1300  |  Fax: 212 813 0580  |  www.cdgco.com

June 15, 2001


Mr. Darrell W. Scott
Lukins & Akins, P.S.
1600 Washington Trust Financial Center
717 West Sprague Ave.
Spokane, WA  99201-0466


Dear Mr. Scott:

This letter confirms the engagement of Conway, Del Genio, Gries & Co., LLC ("CDG") by the W.R. Grace Property Damage Creditors' Committee (the "Committee") to perform financial advisory services with respect to the bankruptcy cases (the "Cases") of W.R. Grace and related entities (the "Debtors").

<u>Objectives, Scope and Approach</u>

Our objective for our assignment will be to perform such financial advisory and related services as may be needed by the Committee in connection with a formal reorganization of the Debtors pursuant to Chapter 11 of the Bankruptcy Code.  The scope of our engagement contemplates:

(a)    Performing due diligence on the Debtors, including evaluating financial data, capital structure, operating trends and market conditions, and historical transactions;

(b)    Working with other professionals serving the Committee in investigating and evaluating possible avoidance claims that may be available to the estate;

(c)    Evaluating business plans and financial projections prepared by the Debtors, including any cash flow projections, long term or short term business plans;

(d)    Assessing proposals made by the Debtors or others;

(e)    Performing valuation analyses and review of capital structure issues, including debt capacity;

(f)  Evaluating the credit quality and valuation of various forms of distribution which might comprise creditor recoveries;

(g)  Assisting the Property Damage Committee in negotiations with various parties;

(h)  Rendering expert testimony as required by the Committee; and

(i)  Such other financial advisory services as may be requested from time to time.

CDG will not be responsible for independently verifying the accuracy of any information provided to CDG by the Debtors or its agents (the "Information") and shall not be liable for inaccuracies in any Information provided to CDG by or at the direction of the Debtors.

<u>Staffing</u>

Our services will be led by Michael F. Gries, a senior member of CDG. Mr. Gries will be assisted by Gregory Boyer and Brian Fox, Managing Directors of CDG, and by other personnel possessing the requisite skills and experience necessary to achieve the objectives set forth above in the most expeditious and effective manner.

<u>Fees & Expenses</u>

For CDG's financial advisory services provided pursuant to this agreement, it is agreed that the Debtors shall pay on behalf of the Committee a monthly fee of $150,000 (the "Monthly Fee") for the first twelve months of the engagement of CDG after which the Monthly Fee shall be reduced to $100,000.

In addition to the foregoing, CDG will bill monthly in arrears for the reimbursement of all of its reasonable out-of-pocket expenses (including travel, telephone and facsimile, courier and copy expenses) incurred in connection with CDG's engagement hereunder.

This engagement may be terminated by either the Committee or CDG upon thirty days written notice.

The Company agrees to indemnify CDG in accordance with the "Other Matters" section below, which provisions are incorporated herein and made a part hereof and which shall survive the termination, expiration or suppression of this Agreement.

Other Matters

This section is part of and incorporated into the above agreement dated June 15, 2001 (the "Agreement")

a)    If CDG or any employee, agent, officer, director, attorney, shareholder or any person who controls CDG (any or all of the foregoing, hereinafter an "Indemnified Person") becomes involved in any capacity in any legal or administrative action, suit, proceeding, investigation or inquiry, regardless of the legal theory or the allegations made in connection therewith, directly or indirectly in connection with, arising out of, based upon, or in any way related to (i) the Agreement; (ii) the services that are subject of the Agreement; (iii) any document or information, whether verbal or written, referred to herein or supplied to CDG; (iv) the breach of the representations, warranties, or covenants by the Company given pursuant hereto; (v) CDG's involvement in the Cases or any part thereof; (vi) any filings made by or on behalf of any party with any governmental agency in connection with the Cases; (vii) the Cases; or (viii) proceedings by or on behalf of any creditors or equity holders of the Company, the Company will on demand, advance or pay promptly, on behalf of each Indemnified Person, reasonable attorney's fees and other expenses and disbursements (including, but not limited to, the cost of any investigation and related preparation) as they are incurred by the Indemnified Person.  The Company also indemnifies and holds harmless each Indemnified Person against any and all losses, claims, damages, liabilities, costs and expenses (including, but not limited to, attorney's fees, disbursements and court costs and costs of investigation and preparation ("Losses")) to which such Indemnified Person may become subject in connection with any such matter.

b)    If for any reason the foregoing indemnification is determined to be unavailable to any Indemnified Person or insufficient fully to indemnify any such person, then the Company will contribute to the amount paid or payable by such person as a result of any such Losses in such proportion as is appropriate to reflect (i) the relationship between CDG's fee on the one hand and the aggregate value of the Company on the other hand or (ii) if the allocation provided by clause (i) is not permitted by applicable law, not only such relative benefit but also the relative fault of the other participants in the Case, on the one hand, and CDG and the Indemnified Persons on the other hand, and any relevant equitable considerations in connection with the matters as to which such Losses relate.

c)    If any action or proceeding shall be brought or asserted against CDG or any other Indemnified Person in respect of which indemnity or contribution may be sought from the Company hereunder, CDG shall promptly notify the Company in writing, provided that failure to notify the Company shall not relieve it from any liability hereunder except to the extent of any material prejudice resulting therefrom.  The Company may, upon notice to CDG, assume the defense thereof, by retaining counsel reasonably satisfactory to CDG.  Any Indemnified Person shall have the right to employ separate counsel in any such action and to participate in the defense thereof, but the fees of such counsel shall be at the expense of the Indemnified Person (but not other reasonable defense or

investigation expenses incurred by or on behalf of CDG or any other Indemnified Person) unless (i) the Company has agreed to pay the reasonable fees and expenses of such counsel, (ii) the Company shall have failed to promptly assume the defense of such action or proceeding, or (iii) the named parties to such action or proceeding (including any impleaded parties) include both the Indemnified Person and the Company and the Indemnified Person reasonably believes that the joint representation of the Indemnified Person may result in a conflict of interest (in which case, if the Indemnified Person shall notify the Company in writing of the facts underlying the perceived conflict and that it elects to employ separate counsel at the expense of the Company, the Company shall not have the right to assume the defense of such action or proceeding on behalf of the Indemnified Person, provided the fees and expenses of such separate counsel are reasonable).

d)     The indemnification obligations hereunder shall not apply to any Losses that are judicially determined to have resulted from the gross negligence, fraud, lack of good faith, bad faith, willful misfeasance, or reckless disregard of the obligations or duties of CDG.   In the event of such judicial determination, the Company shall be entitled to recover from CDG the costs and expenses paid on behalf of any Indemnified Person pursuant to this indemnification obligation.

e)     The Company agrees that it will not settle, compromise, or discharge any suit, claim, litigation, threatened litigation or threatened claim arising out of, based upon, or in any way related to the case and to which CDG or any Indemnified Person is or may reasonably be expected to be a party, unless and until the Company has obtained a written agreement, approved by CDG which shall not be reasonably withheld, and executed by each party to such proposed settlement, compromise or discharge, releasing CDG and each Indemnified Person from any and all liability.   CDG agrees that it will not settle, compromise or discharge any such suit, litigation, threatened litigation or threatened claim without the prior written consent of the Company, which shall not be unreasonably withheld.

f)     The Company further agrees that neither CDG nor any other Indemnified Person shall have any liability, regardless of the legal theory advanced, to the Company or any other person or entity (including the Company's equity holders and creditors) related to or arising out of CDG's engagement, except for any liability for losses, claims, damages, liabilities, costs and expenses incurred by the Company which are judicially determined to have resulted from the gross negligence, fraud, lack of good faith, bad faith, willful misfeasance, or reckless disregard of the obligations or duties of CDG.

g)     The Company's obligations under this section shall be in addition to any liability that the Company or any other person may otherwise have to CDG or any Indemnified Person.   The foregoing provisions shall be enforceable by each Indemnified Person and such person's heirs, representatives and successors, and shall survive any termination of this Agreement or the completion of services hereunder.

If any portion of this agreement is held to be void, invalid, or otherwise unenforceable, in whole or part, the remaining portions of this agreement shall remain in effect.

This agreement shall be governed by the internal substantive laws and not the choice of law rules of the State of New York.  Any advice (written or oral) rendered by Conway, Del Genio, Gries & Co., LLC pursuant to this engagement may not be disclosed publicly without prior consent.

This engagement is important to us and we appreciate the opportunity to serve you.

Very truly yours,
Conway, Del Genio, Gries & Co., LLC

By _____
Michael F. Gries

Consented and Agreed to:

By    _____
      Darrell W. Scott, Designated Representative of Chairman of the Committee,
      Marco Barbanti

By    _____

Title _____

      W.R. Grace and related entities