# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re<br><br>THE WEINSTEIN COMPANY HOLDINGS LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-10601 (MFW)<br><br>(Jointly Administered)<br><br>Re D.I.s: 8, 190 and 191<br><br>**Hrg. Date: May 8, 2018 @ 11:30 a.m. (ET)**<br>**Obj. Deadline: Apr. 30, 2018 @ 4:00 p.m. (ET)** |

**HARVEY WEINSTEIN'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF ORDERS (I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) APPROVING STALKING HORSE BID PROTECTIONS, (C) SCHEDULING AUCTION FOR, AND HEARING TO APPROVE, SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (D) APPROVING FORM AND MANNER OF NOTICES OF SALE, AUCTION AND SALE HEARING, (E) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES AND (F) GRANTING RELATED RELIEF AND (II)(A) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (B) APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND <u>UNEXPIRED LEASES AND (C) GRANTING RELATED RELIEF</u>**

Harvey Weinstein, by and through his undersigned counsel, hereby objects (the "**Objection**") to the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially all of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief and (II)(A) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of*

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

{BAY:03270230v3}

*All Liens, Claims, Interests and Encumbrances, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [D.I. 8] (the "**Sale Motion**")[2] filed by the above-captioned debtors (the "**Debtors**") to the extent that the Sale proposed by the Sale Motion purports to sell assets which are the property of Mr. Weinstein and not the property of the Debtors or their estates and assume and assign contracts to which he or an entity owned by him is a counterparty.  In support of this Objection, Mr. Weinstein respectfully represents as follows:

## RELEVANT BACKGROUND

1. On March 21, 2018 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. Prior to the Petition Date, from the founding of the company until his purported termination in October 2017, Mr. Weinstein was TWC's co-founder and then-Co-Chairman.[3]  *See generally* D.I. 7 (First Day Dec.) at ¶¶ 7 and 31-36.

3. On the Petition Date, the Debtors filed the Sale Motion, by which the Debtors sought to establish certain bidding procedures and for approval of the Debtors' sale of substantially all of its assets to a stalking horse purchaser (the "**Stalking Horse Bidder**") or another Successful Bidder at a scheduled Auction.  On April, 6, 2018, the Court entered an order [D.I. 190] approving the bidding procedures, with certain modifications and setting the Auction for May 4, 2018 with the Bid Deadline on April 30, 2018.

4. In connection with the Sale Motion, on April 13, 2018, the Debtors filed the *Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases*

---

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Sale Motion.

[3] The validity of Mr. Weinstein's purported termination is the subject of a currently-pending arbitration captioned *Harvey Weinstein v. The Weinstein Company Holdings LLC, et al.*, Ref. No. 1425024989.

and Cure Amounts [D.I. 216] (the "**First Assignment Notice**"), on April 20, 2018, the Debtors filed the *Notice of Supplemental Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* [D.I. 282] (the "**Second Assignment Notice**"), and, on April 27, 2018, the Debtors filed the *Notice of Second Supplemental Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* [D.I. 482] (the "**Third Assignment Notice**"), each of which purports to list "Contracts and Leases may potentially be assumed and assigned as part of the Sale." First Assignment Notice, at ¶ 3.

5. Also on April 20, 2018, after multiple formal and informal requests were rebuked by the Debtors' counsel, Mr. Weinstein filed his *Motion For Entry of an Order Compelling Limited Discovery Under Rule 2004 of the Federal Rules of Bankruptcy Procedure* [D.I. 275] (the "**2004 Motion**"), by which he sought an order compelling the Debtors to provide Mr. Weinstein's e-mails and personal files or to grant him access to them, which the Debtors have continued to unjustifiably withhold. On April 27, the Debtors and the Official Committee of Unsecured Creditors each filed an objection to the 2004 Motion (D.I.s 477 and 478, respectively), continuing to use their bankruptcy cases to lock Mr. Weinstein out of files, documents, and correspondence he needs to defend himself from allegations and needs to (i) evaluate his claims against the Debtors and (ii) ensure that the Sale will not include any property that belongs to Mr. Weinstein and not the Debtors.

6. Of course, given his role as co-founder and former co-chairman of TWC, Mr. Weinstein has been closely and personally involved in the development of a number of projects with the Debtors. Indeed, upon information and belief, certain film and television show assets that the Debtors now plan to sell are in fact owned in whole or in part by Mr. Weinstein. Without access to his e-mails and personal papers and files from his time at TWC, however,

Mr. Weinstein is left completely in the dark in his ability to determine the extent to which the Sale proposed by the Sale Motion purports to sell assets which are the property of Mr. Weinstein and not the property of the Debtors or their estates.

7. Mr. Weinstein's efforts to determine whether the Debtors are attempting to sell assets which are his property was further exacerbated when, overnight between April 23, 2018 and April 24, 2018, the Debtors' counsel filed the Schedules of Assets and Liabilities and Statements of Financial Affairs for the various Debtors [D.I.s 303-410] (collectively, the "**Schedules and SOFAs**"). Given the large number of Debtors, the Schedules and SOFAs constitute over 100 documents and thousands of pages in the aggregate, review of which is made very difficult because the denial of access to his files makes the vague disclosures difficult to parse.

## OBJECTION

8. Because the Debtors have failed to meet their burden to prove that all property proposed to be sold is in fact owned by the Debtors, Mr. Weinstein objects to the Sale.

## ARGUMENT AND AUTHORITY

**A. The Debtors bear the burden of demonstrating ownership interests in the Assets they propose to sell.**

9. It is axiomatic that debtors cannot sell property that they do not own, thus, the court must first determine (as a threshold issue) whether the assets these Debtors propose to sell are even property of the estate at all. *See In re Whitehall Jewelers Holdings, Inc.*, No. 08-11261, 2008 WL 2951974, at *4 (Bankr. D. Del. July 28, 2008) ("Debtors are not permitted to sell the [assets] under section 363(f)(4) of the Bankruptcy Code without first demonstrating to this Court that the [assets] are property of the estate and commencing an adversary proceeding."); *accord In re Clark*, 266 B.R. 163, 172 (Bankr. 9th Cir. 2001) (recognizing that

the "threshold" question in approving any sale under 363 is whether the debtors actually own the property they seek to sell.). In determining this threshold issue and before the Debtors may proceed with the Sale, the Debtors, as the proponents of the Sale, have the burden of proof to demonstrate that the assets to be sold are property of the estate. *Whitehall Jewelers*, 2008 WL 2951974, at *6-7 ("[t]he Debtors' burden of proof in [proving the estate's interest in the assets] is a heavy one.") (citing *In re Summit Global Logistics, Inc.*, 2008 WL 819934, at *9 (Bankr. D.N.J. March 26, 2008)).

10. In this case, the Debtors are attempting to sell assets free and clear of any interest at the earliest stage of their bankruptcy cases and the Court should carefully scrutinize the Debtors heightened burden of proving the elements necessary for authorization, *i.e.*, that the debtor's estate has an interest in the assets to be sold,[4] because the timing and pace of the proposed sale could trample the rights of parties that are the actual owners of property the Debtors purport to sell.

11. Moreover, as discussed above and in greater detail in the 2004 Motion, the Debtors continue to deny Mr. Weinstein basic access to his personal information, in the form of e-mails and personal files and effects that are in the Debtors' possession, that would permit him to properly understand whether or not the Debtors' propose Sale includes property that belongs to Mr. Weinstein and not to the Debtors or their estates.

12. Given the large number of Debtors, the Schedules and SOFAs constitute over 100 documents and thousands of pages in the aggregate, and time at which they were filed leaves Mr. Weinstein and his professionals with less than a week to review this enormous

---

[4] To be sure, to the extent that there are disputed property interests, that dispute may only be resolved by commencement and resolution of an adversary proceeding. *See* Fed. R. Bank. Pro. 7001(2). Indeed, at least one party has already filed an adversary complaint alleging that the Debtors are attempting to sell property that does not belong to their estates. *See Hotel Mumbai Pty Ltd. v. The Weinstein Company Holdings, LLC, et al.*, Adv. Pro. No. 18-50397 (MFW).

universe of information. This task is made all the more impossible by the Debtors' refusal to permit Mr. Weinstein to access his personal e-mails and files that are in the Debtors possession.

13. In light of the Debtors' fiduciary duty to their estates to maximize the value received by the Sale, it is remarkable that they and their professionals have refused to engage with the founder of the company in an effort to determine what are and are not assets of the estate and how best to maximize the value of those assets.

14. It is not Mr. Weinstein's burden, however, to sift through these voluminous records to identify and establish his property rights. Instead, as discussed above, it is the Debtors' burden to prove that they actually own any assets they propose to sell. Nonetheless, over the last week, Mr. Weinstein and his professionals have spent dozens of hours reviewing the voluminous Schedules and SOFAs, as well as the Sale Motion, the exhibits thereto, the First Assignment Notice and the Second Assignment Notice in an effort to understand what property the Debtors are selling and whether they purport to sell assets, property rights or interests in assets that they don't own and which Mr. Weinstein does own.

15. Indeed, on line 944 of Exhibit 1 to the First Assignment Notice the Debtors have scheduled for "potential assignment" a contracted described as "FINDING NEVERLAND UK INVESTMENT EFFECTIVE DATE: 5/12/2017", with the "DEBTOR(S)" that are parties to the contract identified as "WEINSTEIN LIVE ENTERTAINMENT LLC/WEINSTEIN NEVERLAND LLC" and the "CONTRACT COUNTERPARTY" identified as "BURKLE, RON". D.I. 216, at Ex. 1. Neither "WEINSTEIN LIVE ENTERTAINMENT LLC" nor "WEINSTEIN NEVERLAND LLC" is a Debtor in the above-captioned bankruptcy cases and, upon information and belief, the Debtors have no interest in

"Finding Neverland."[5]  The Debtors clearly cannot assign a contract to which they are not a party and in which they have no interest.

16. Despite the fact that Mr. Weinstein's review of the Debtors' proposed Sale has been severely limited by their unwillingness to permit him access to his personal files and e-mails, it is clear that they are purporting to sell property that they do not own and that may instead belong to Mr. Weinstein.

17. Moreover, the Debtors have refused to provide Mr. Weinstein with an accounting for amounts owed to him which are related to theatre, production and movie rights which he owns (whether directly or through related entities) or for payments for which he deferred from prior years.

18. This Court should not permit the Sale to go forwards until it is clear that the Debtors have met that burden and demonstrated that they do not propose to sell any assets that are actually the property of Mr. Weinstein or any other party in interest.

**RESERVATION OF RIGHTS**

19. Mr. Weinstein reserves the right to amend this Objection or to make such other and further objections to the Sale Motion as may be appropriate, including, without limitation, in light of his continued review of the Schedules and SOFAs, the Stalking Horse APA, the First, Second and Third Assignment Notices, and following the disposition of the 2004 Motion and any relief granted thereunder.

---

[5] To the extent Mr. Weinstein is required to object to the "cure amount" of a contract to which the Debtor is not even a party and, therefore, cannot assume and assign, he hereby reserves all rights in connection with the cure amount scheduled in connection with this Contract and any other contract of Mr. Weinstein's that the Debtors purport to be "potentially assignable in the Sale."

## CONCLUSION

WHEREFORE, Mr. Weinstein respectfully requests that this Court sustain this Objection and deny the Sale to the extent the Debtors purport to be selling assets that are Mr. Weinstein's property and grant such other and further relief as it deems just and proper.

Dated: April 30, 2018
      Wilmington, Delaware

**BAYARD, P.A.**

*/s/ Scott D. Cousins*
Scott D. Cousins (No. 3079)
Justin R. Alberto (No. 5126)
Daniel N. Brogan (No. 5723)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
scousins@bayardlaw.com
jalberto@bayardlaw.com
dbrogan@bayardlaw.com

*Counsel for Harvey Weinstein*