## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE WEINSTEIN COMPANY<br>HOLDINGS LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Case No. 18-10601 (MFW) |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF IP MANAGEMENT, INC., PROCEEDING *PRO SE*, TO (i) DEBTORS' MOTION FOR ENTRY OF ORDERS (I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF SUBSTANTAILLY ALL OF THE DEBTORS' ASSETS, (B) APPROVING STALKING HORSE BIDDING PROTECTIONS, (C) SCHEDULING AUCTION FOR, AND HEARING TO APPROVE, SALE OF SUBSTATNIALLY ALL OF THE DEBTORS' ASSETS, (D) APPROVING FORM AND MANNER OF NOTICES OF SALE, AUCTION AND SALE HEARING, (E) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES AND (F) GRANTING RELATED RELIEF AND (II)(A) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMRANCES, (B) APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (C) GRANTING RELATED RELIEF; (ii) NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNTS; AND (iii) NOTICE OF SUPPLEMENTAL POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNTS**

Creditor IP Management, Inc. ("IP Management"), and its affiliate IPW, LLC ("IPW"), proceeding *pro se*, hereby object and reserve all of their rights and remedies (the "**Limited Objection**") to *(i) Motion for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially all of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief and (II)(A) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Approving Assumption and*

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://dm.epiq11.com/twc.

*Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Bk. D.I. 8] (the "**Sale Motion**"); (ii) *Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* [Bk. D.I. 216] (the "**Notice of Assumption**"); and (iii) *Notice of Supplemental Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* [Bk. D.I. 282] (the "**Supplemental Notice of Assumption**") (collectively, the "**Notices of Assumption**"). In support of this Limited Objection and Reservation of Rights, IP Management and IPW respectfully represent as follows:

I. **PARTIES, JURISDICTION, AND VENUE**

1. IP Management, proceeding *pro se*, is a limited liability company organized and existing under the laws of the State of California.

2. IPW is a limited liability company organized and existing under the laws of the State of California.

3. IP Management is informed and believes that Debtor The Weinstein Company ("**TWC**") is a limited liability company organized and existing under the laws of the State of Delaware. TWC filed this bankruptcy action pursuant to Chapter 11 of Title 11 of the United States Code on or about March 19, 2018.

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a).

5. This is a core proceeding as defined by 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(I).

6. Venue of this proceeding is properly in the District of Delaware pursuant to 28 U.S.C. § 1409(a).

II. **BACKGROUND**

A. **The *Piranha 3D* Producing Services Agreement**

7. On November 1, 2007, Plaintiff entered into a Producing Services Agreement (hereinafter "***Piranha 3D* Agreement**") for production of the feature motion picture *Piranha 3D* with TWC. A true and correct copy of the *Piranha 3D* Agreement is attached hereto as **Exhibit "A."** *The Supplemental Notice of Assumption identifies the Piranha 3D Agreement as Item 7920, "Producing Services Agreement." The Supplemental*

2

*Notice of Assumption incorrectly states that the Cure Amount of the* **Piranha 3D** *Agreement is $0.00.*

8. IP Management initiated TWC's valuable *Piranha* film franchise, by securing the underlying intellectual property rights via its affiliate IPW to the popular 1978 film *Piranha* required to produce and release *Piranha 3D*, and subsequent sequel films. IP Management also developed the *Piranha 3D* script with other co-producers. Without IP Management's contribution to *Piranha 3D*, including the requisite intellectual property rights it secured, *Piranha 3D* could not have been produced or distributed.

9. Pursuant to the *Piranha 3D* Agreement, TWC expressly agreed that in addition to IP Management's fixed compensation, IP Management would be entitled to Participation in the form of 2% of all "Adjusted Defined Receipts." Adjusted Defined Receipts are based on gross receipts collected in connection with the distribution of the film, including *inter alia* all receipts from (i) distribution of the picture by TWC or a subdistributor in theatres and on television; (ii) licenses for the theatrical distribution of the picture; and (iii) manufacture and distribution of all reproductions of the picture in any format. From Adjusted Defined Receipts, TWC may deduct certain specifically-defined, but limited, costs and expenses associated with distributing the picture, such as currency conversions, taxes, licenses, insurance, and residuals.

10. Because Adjusted Defined Receipts are based on ***gross receipts*** collected from various specified methods of distribution, TWC is not permitted to deduct any other costs, expenses, or fees from Adjusted Defined Receipts other than the narrow deductions expressly permitted under the *Piranha 3D* Agreement.

11. Under the *Piranha 3D* Agreement, it is TWC's obligation to account to IP Management and remit to IP Management all Participation owed to it. Significantly, TWC made express representations in the *Piranha 3D* Agreement that, if TWC did ***not*** send any accounting statements to IP Management for any accounting period(s) then that would affirmatively mean that IP Management was entitled to ***no*** Participation for those accounting periods.

12.     IP Management has fully performed all services required of it and otherwise fully satisfied all of its covenants and obligations under the *Piranha 3D* Agreement.

13.     IP Management is informed and believes that *Piranha 3D* was distributed by TWC beginning on or about August 20, 2010.

**B.     The *Piranha 3DD* Producing Services Agreement**

14.     Shortly after the release of *Piranha 3D*, IP Management and TWC began negotiating a Producing Services Agreement regarding the production and distribution of a sequel to *Piranha 3D*, entitled *Piranha 3DD* which they entered into on April 25, 2011 (the "***Piranha 3DD* Agreement**"). A true and correct copy of the *Piranha 3DD* Agreement is attached hereto as **Exhibit "B."** The *Piranha 3D* Agreement and the *Piranha 3DD* Agreement are herein referred to collectively as the "**Producing Services Agreements.**" *The Supplemental Notice of Assumption identifies the Piranha 3D Agreement as Item 7911, "Producing Services Agreement." The Supplemental Notice of Assumption states that the Cure Amount of the* **Piranha 3D** *Agreement is $45,752.00.*

14.     As with *Piranha 3D*, IP Management had secured the underlying intellectual property rights required to produce and release further sequel films such as *Piranha 3DD*.

15.     As they relate to this action, the material terms in the *Piranha 3DD* Agreement were substantially the same as those in the *Piranha 3D* Agreement. TWC again agreed that in addition to IP Management's fixed compensation, IP Management would be entitled to a Participation equal to 2% of all Adjusted Defined Receipts, using the same definition as under the *Piranha 3D* Agreement.

16.     Likewise, the *Piranha 3DD* Agreement obligated TWC to account to IP Management and remit to IP Management all Participation amounts owed to IP Management. TWC again made express representations in the *Piranha 3DD* Agreement that, if TWC did ***not*** send any accounting statements to IP Management during the accounting periods described in the *Piranha 3DD* Agreement, then that would affirmatively mean that IP Management was entitled to ***no*** Participation during those periods.

17. IP Management has fully performed all required services and satisfied all of its covenants and obligations under the *Piranha 3DD* Agreement.

18. IP Management is informed and believes that *Piranha 3DD* was distributed by TWC commencing on or about May 11, 2012.

### C. The *Piranha 3D* and *Piranha 3DD* Assignment Agreement

19. The *Piranha 3D* Agreement is expressly conditioned on the parties' entering into an assignment agreement in which IP Management's affiliate IPW assigned to TWC the rights to produce derivative works based on the original *Piranha* motion picture, including Piranha sequel and remake films, television productions and ancillary rights (the "***Piranha* Rights**"). On July 31, 2007, IPW entered into the requisite assignment agreement with TWC (the "Assignment Agreement"), assigning to TWC the *Piranha* Rights. A true and correct copy of the Assignment Agreement is attached hereto as **Exhibit "C."** The *Piranha* Rights were assigned to TWC by a joint venture of co-producers comprised of IP Management's affiliate IPW, as well as Chiller Films, LLC, Relativity Media, LLC, and Atmosphere Entertainment. ***The Supplemental Notice of Assumption identifies the Assignment Agreement as Items 7916, 7917, and 7921, "Assignment Agreement." The Supplemental Notice of Assumption states that the Cure Amount of the Assignment Agreement is $0.00.***

20. Under the Assignment Agreement, the assigned *Piranha* Rights include, in addition to the underlying remake and sequel rights to the original *Piranha* film, the rights to a screenplay developed by IPW which was subsequently used by TWC as the basis for *Piranha 3D*, and the underlying contracts conveying these rights, including:

1. Option/Purchase Agreement, dated as of March 30, 2005, by and among Chako Films, International and Chako Van Leeuwen on the one hand, and Piranha Pictures and Exception - Wild Bunch S.A., on the other hand, in connection with the motion picture entitled "Piranha".

2. Script Option/Purchase Agreement, dated as of May 24, 2005, by and among Piranha Pictures, LLC on the one hand, and Peter Goldfinger and Cheese Cutters, Inc. on the other hand, in connection with the motion picture project entitled "Piranha-Lake Havisu".

3. Writer's Agreement, dated as of May 25, 2005, by and among Piranha Pictures, LLC on the one hand, and Russell Productions, Inc. on the other hand, in connection with the untitled "Piranha" Remake Project.

4. Option Exercise Letter dated January 20, 2006 in connection with Piranha Pictures, LLC's purchase of rights to the motion picture project entitled "Piranha".

Assignment Agreement (Exhibit "C") at "Exhibit A."

21. Contracts 1 through 3 assigned by the Assignment Agreement are listed in the Supplemental Notice of Assumption as follows:

| 2819 | THE WEINSTEIN COMPANY LLC | CHAKO VAN LEEUWEN AND CHAKO FILMS INTERNATIONAL | OPTION/PURCHASE AGREEMENT DTD 3/30/2005 RE: OPTION/ASSIGNMENT AGREEMENT DTD 12/10/1997 EFFECTIEV DATE: 3/30/1995 | $0.00 |
|---|---|---|---|---|
| 2821 | THE WEINSTEIN COMPANY LLC | CHAKO VAN LEEUWEN/CHAKO FILMS INTERNATIONAL | OPTION/PURCHASE AGREEMENT – PIRANHA EFFECTIVE DATE: 3/30/2005 | $0.00 |
| 2874 | THE WEINSTEIN COMPANY LLC | CHEESE CUTTERS INC | SCRIPT OPTION/PURCHASE AGREEMENT DTD 5/24/2005 | $0.00 |
| 2987 | THE WEINSTEIN COMPANY LLC | CHUCK RUSSELL | LETTER AGREEMENT DTD 5/25/2005 | $0.00 |
| 12517 | THE WEINSTEIN COMPANY LLC | PIRANHA PICTURES LLC | SCRIPT OPTION/PURCHASE AGREEMENT EFFECTIVE DATE: 5/24/2005 | $0.00 |
| 12518 | THE WEINSTEIN COMPANY LLC | PIRANHA PICTURES LLC | SCRIPT OPTION/PURCHASE AGREEMENT DTD 5/24/2005 | $0.00 |

22. IP Management entered into the Assignment Agreement with TWC as consideration and as a condition precedent imposed by TWC for TWC to enter into its production services agreements with IP Management regarding the production and exploitation of *Piranha 3D* and any subsequent films exploiting the *Piranha* Rights assigned under the Assignment Agreement.

23. IP Management entered into the Assignment Agreement in reliance on TWC's assurances that TWC would perform its obligations to IP Management under any and all production services agreements for the production and exploitation of motion picture and other productions which exploited the *Piranha* Rights, including the Pictures. IP Management would clearly not have entered into the Assignment Agreement but for TWC's unconditional promises and assurances that it would perform under any such production

6

services agreements, including paying IP Management all Participation owed under such agreements.

24. As further discussed below, it is now very apparent that TWC never intended to perform its Participation obligations to IP Management under its Producing Services Agreements regarding the Pictures, and that the Assignment Agreement is therefore **void by reason of fraud in the inducement**.

25. The Assignment Agreement contains a New York choice of law clause and is therefore governed by New York law regarding, *inter alia*, fraud in the inducement.

26. On March 20, 2018, TWC filed the Sale Motion [Bk. D.I. 8.]. In the Sale Motion, TWC designated *Piranha 3D* and *Piranha 3DD* as assets to be sold pursuant to the Stalking Horse Agreement (as defined in the Sale Motion). *Id.* at 241. Thus, TWC has designated the Pictures as assets of the bankruptcy estate, even though the Assignment Agreement that purported to assign the underlying intellectual property rights necessary to produce and distribute such Pictures, and to exploit further productions based on the Pictures, are void.

### D. TWC's Accounting Statements for *Piranha 3D* and *Piranha 3DD*

27. Between 2011 and 2014, TWC issued accounting statements purporting to represent TWC's receipts and deductions and IP Management's Participation in connection with *Piranha 3D* and *Piranha 3DD*. As IP Management has recently discovered, TWC made systematic misrepresentations to Plaintiff in their accounting statements, egregiously under-reporting TWC's actual receipts from the Pictures and the Participation owed to Plaintiff.

28. However, TWC's accounting statements were drafted to appear facially reasonable and accurate, concealing TWC's pervasive misrepresentations and underreporting. In particular:

    (a) TWC issued an accounting statement for *Piranha 3D* dated December 31, 2011, representing that, *inter alia*, (i) receipts from U.S. theatrical distribution totaled $9,091,274; (ii) receipts from all forms of distribution totaled $30,938,461; and (iii) Adjusted Defined Receipts totaled $28,081,589. Based on these representations, TWC represented in its December 31, 2011 statement that,

after applying IP Management's fixed compensation as an advance against its Participation, IP Management was not yet owed any Participation.

 (b) On or about April 26, 2013, TWC emailed to IP Management an accounting statement for *Piranha 3D* dated December 31, 2012, representing that, *inter alia*, (i) receipts from U.S. theatrical distribution totaled $9,089,007; (ii) receipts from all forms of distribution totaled $34,631,316; and (iii) Adjusted Defined Receipts totaled $32,469,672. Based on these representations, TWC represented in its December 31, 2012 statement that, after deducting IP Management's fixed compensation as an advance, Plaintiff was owed $49,393 in Participation.

 (c) On or about April 1, 2014, TWC emailed to IP Management an accounting statement for *Piranha 3D* dated December 31, 2013, representing that, *inter alia*, (i) receipts from U.S. theatrical distribution totaled $9,089,008; (ii) receipts from all forms of distribution totaled $35,999,141; and (iii) Adjusted Defined Receipts totaled $33,190,206. Based on these representations, TWC represented in its December 31, 2013 statement that, after deducting IP Management's fixed compensation as advance and the Participation previously paid to IP Management, IP Management was owed $49,393 in Participation.

 (d) On or about April 1, 2014, TWC emailed to IP Management an accounting statement for *Piranha 3DD* dated December 31, 2013, representing that, *inter alia*, (i) receipts from U.S. theatrical distribution totaled $71,077; (ii) receipts from all forms of distribution totaled $8,624,180; and (iii) Adjusted Defined Receipts totaled $7,968,858. Based on these representations, TWC represented in its April 1, 2014 statement that, after deducting IP Management's fixed compensation as an advance, IP Management was owed an additional $21,377 in Participation.

29. Following TWC's April 1, 2014 accounting statements for *Piranha 3D* and *Piranha 3DD*, TWC did not render further accounting statements to IP Management or remit further Participation to IP Management in connection with either Picture. IP Management reasonably relied on the lack of any further accounting statement from TWC

from 2014 onward as a representation by TWC that *no further Participation was owed to IP Management*, pursuant to the express terms and representations governing TWC's accounting to Plaintiff under the *Piranha 3D* Agreement and the *Piranha 3DD* Agreement. IP Management did not believe and had no reason to believe that the information contained in TWC's accounting statements was untrue or inaccurate.

      **E.**    **IP Management's Discovery of TWC's Accounting Fraud and Fraudulent Concealment**

      30.    In or about October 2017, stories began to appear in the news media reporting that TWC was attempting to sell its film properties or the entire company, or that TWC was on the verge of bankruptcy. *See, e.g.*, N. Robehmed, "The Best Option for The Weinstein Company Could Be Bankruptcy," *Forbes.com* (Oct. 13, 2017), https://www.forbes.com/sites/natalierobehmed/2017/10/13/why-filing-for-bankruptcy-could-be-a-good-idea-for-the-weinstein-company/#54ab539d28ca; B. Lang, et al., "Weinstein Co. Feeling Pressure to Find a Buyer," *The Hollywood Reporter* (Nov. 17, 2017), http://variety.com/2017/film/news/weinstein-company-sale-harvey-weinstein-2-1202617666/. Other stories in the press reported that a profit participant had sued TWC for failure to account for or remit contingent compensation, and that the profit participant intended to file a motion in the district court to place funds allegedly owed by TWC into an escrow account. By way of example, on October 25, 2017, *The Hollywood Reporter* ran the headline, "The Weinstein Co.'s 'Precarious' Financial State Becomes Issue in Lawsuit." *See* https://www.hollywoodreporter.com/thr-esq/weinstein-cos-precarious-financial-state-becomes-issue-lawsuit-1051936.

      31.    Amidst such reporting, and solely as a precautionary measure, IP Management sent TWC a written request in November 2017 for up-to-date accounting statements for *Piranha 3D* and *Piranha 3DD*. IP Management considered this to be a fairly routine matter to ensure, in an abundance of caution, that no further Participation was owed to it under the *Piranha 3D* Agreement and the *Piranha 3DD* Agreement as previously and consistently represented by TWC.

9

32. Finally, on January 9, 2018 and March 13, 2018, TWC emailed IP Management updated accounting statement for *Piranha 3D* and *Piranha 3DD* respectively, each dated December 31, 2017.

33. The December 31, 2017 statements contained a bombshell revelation: TWC had been collecting millions of dollars in receipts for *Piranha 3D* and *Piranha 3DD* for the past *four years* without disclosing such receipts to IP Management. As a result, TWC had owed Participation to IP Management during the entire period since December 31, 2013 (the date of TWC's previous accounting statements for the Pictures) yet concealed such information and withheld IP Management's Participation for itself. According to the December 31, 2017 statements, TWC owed IP Management an outstanding and previously undisclosed $97,559 in Participation on *Piranha 3D* and $45,752 in Participation on *Piranha 3DD*. **Thus, by TWC's own recent admission, it willfully concealed from IP Management and owes it a minimum of $143,331.** Indeed, on April 23, 2018, TWC filed its *Global Notes Regarding Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* [Bk. D.I. 320] (the "**Schedules of Assets and Liabilities**"). The Schedule of Assets and Liabilities states that TWC has an outstanding debt to IP Management in the amount of $143,311.00. *Id.* at 3352, Item 3.278.

34. IP Management is recently informed and believes, however, that TWC has fraudulently concealed from IP Management TWC's true receipts from the Pictures, and owes IP Management an exponentially higher Participation, as further explained below.

35. Concerned that the long concealed $97,559 and $45,752 owed might be the tip of the iceberg, IP Management began in January 2018 to independently research the theatrical gross receipts generated by *Piranha 3D* and *Piranha 3DD*. IP Management discovered that, since the very first reporting periods, TWC had egregiously misrepresented the receipts it collected for both Pictures. By way of example, IP Management has discovered public reporting of domestic and foreign box office receipts for the Pictures. Based on generally accepted industry methods for projecting the domestic and foreign revenues generated from film distribution, the publicly reported box office receipts for the Pictures

indicate that TWC collected substantially greater revenue from the Pictures than it reported to IP Management, in order to deliberately underpay IP Management's Participation.

36. IP Management is thus informed and believes that, during the entire period that TWC received revenue from *Piranha 3D* and *Piranha 3DD*, TWC intentionally and systematically misrepresented to IP Management the financial data material to computing IP Management's Participation, including TWC's total receipts from the Pictures and the Adjusted Defined Receipts from which IP Management's Participation is computed.

37. Based on the foregoing, IP Management is informed and believes that **TWC entered into the Assignment Agreement, by which IP Management assigned to TWC the Piranha Rights, with the intent to defraud IP Management of its Participation in any pictures exploiting the Piranha Rights, including the Pictures.** Thus, TWC induced IP Management to assign the *Piranha* Rights to TWC through fraud. Because IP Management's assent to the Assignment Agreement was induced by TWC's fraud, the Assignment Agreement is void, and the *Piranha* Rights belong to IPW, not TWC.

### III. ARGUMENT

**A. IP Management Objects to the Assumption of the *Piranha 3D* Agreement and *Piranha 3DD* Agreement Pursuant to Section 365(b)(1).**

38. Section 365(b)(1) of the Bankruptcy Code provides:

If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . .

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11

11 U.S.C. § 365(b)(1).

39. The cure requirement, under Section 365(1)(A) of the Bankruptcy Code, "means that the contract . . . must be brought back into compliance with its terms." 3 Collier on Bankruptcy § 365.06[3]; *In re DBSI, Inc. et al.*, 405 B.R. 698, 704 (Bankr. D. Del. 2009) ("The purpose of this section is 'to restore the debtor-creditor relationship to pre-default conditions . . . .'") (quoting *In re U.S. Wireless Data, Inc.*, 547 B.R. 484, 489 (2d Cir. 2008)). Accordingly, the trustee or debtor-in-possession must pay any and all outstanding amounts due under the agreement, whether the debt was incurred pre- or post-petition, before the agreement can be assumed. *See in re Network Access Solutions Corp.*, 330 B.R. 67, 76 (Bankr. D. Del. 2005).

40. To date, TWC has admitted that it owes IP Management a minimum of $143,331 under the *Piranha 3D* Agreement and *Piranha 3DD* Agreement. *See* Schedule of Assets and Liabilities at 3352, Item 3.278. In addition, IP Management has recently discovered that TWC egregiously under-reported the Participation due under the *Piranha 3D* Agreement and *Piranha 3DD* Agreement. For this reason, the true amount that TWC owes IP Management in Participation under those Agreements is far greater than the $143,331 to which TWC has admitted, and must be ascertained through proof based on TWC's books and records.

41. Thus, to the extent TWC intends to assume and assign the *Piranha 3D* Agreement and/or *Piranha 3DD* Agreement, which IP Management opposes, the Court should deny such relief on the grounds that TWC has failed to adequately cure all defaults under such Agreements. Furthermore, a debtor cannot assume an agreement and re-write its terms, such as by eliminating the Participation obligations in the *Piranha 3D* Agreement and *Piranha 3DD* Agreement. Therefore, to the extent TWC intends to assume the Agreements in any modified form, the relief requested should be denied.

42. Further, TWC has not given IP Management any assurance that any assignee will satisfy its obligations under the *Piranha 3D* Agreement and *Piranha 3DD* Agreement. Courts "have turned to the Uniform Commercial Code for guidance" as to the application of the term "adequate assurance" as used in Section 365(b)(1). *In re DBSI, Inc. et*

*al.*, 405 B.R. at 708 ("The Uniform Commercial Code considers the adequacy of assurance to be based on commercial reasonableness; as such, courts have held that the term 'adequate assurance' was intended to be given a practical, pragmatic construction."). The courts have also considered the circumstances unique to each case. 3 Collier on Bankruptcy § 365.06[3][a]. On this basis, IP Management hereby objects to the lack of adequate assurance provided in the Notices of Assumption that an assignee will cure the full outstanding Participation owed to IP Management under the *Piranha 3D* Agreement and *Piranha 3DD* Agreement.

### B. IP Management Objects to the Cure Amounts for the *Piranha 3D* Agreement and *Piranha 3D* Agreement Represented in the Supplemental Notice of Assumption.

43. The Cure Amounts represented in the Supplemental Notice of Assumption for the *Piranha 3D* Agreement (Item 7920) and *Piranha 3DD* Agreement (Item 7911) are not correct. IP Management accordingly objects to any assumption of such Agreements without a cure of the actual amounts owed to IP Management under the Agreements.

44. As discussed above, TWC has admitted that it owes IP Management a minimum of $97,559 in Participation for *Piranha 3D* under the *Piranha 3D* Agreement. However, the cure amount listed for the *Piranha 3D* Agreement in the Supplemental Notice of Assumption is $0.00. In addition, based on the above facts, IP Management has discovered that TWC's default under the *Piranha 3D* Agreement is substantially higher than the minimum amount to which TWC has admitted. Therefore, IP Management objects to any assumption of the *Piranha 3D* Agreement for any cure amount less than the full Participation owed, which must be ascertained through proof based on TWC's books and records.

45. For the *Piranha 3DD* Agreement, the Supplemental Notice of Assumption states a cure amount of $45,752, the same amount of outstanding Participation that TWC revealed to IP Management in the December 31, 2017 accounting statement. However, based on the above facts, IP Management has discovered that TWC's default under the *Piranha 3DD* Agreement is substantially higher than the minimum amount to which TWC has admitted. Therefore, IP Management objects to any assumption of the *Piranha 3DD*

Agreement for any cure amount less than the full Participation owed, which must be ascertained through proof based on TWC's books and records.

### C. IP Management Objects to the Assumption of the Assignment Agreement Because the Assignment Agreement Is Void by Reason of Fraud in the Inducement.

46. Based on the fact discussed above, TWC induced IP Management and IPW to enter into the Assignment Agreement based on the promise and condition that TWC would perform its obligations under any production services agreement for exploiting the *Piranha* Rights. Without such promise and condition, IP Management and IPW would never have assigned the valuable *Piranha* Rights to TWC through the Assignment Agreement. IP Management has since discovered that TWC committed an accounting fraud since the very first reporting periods for the Pictures, systematically under-reporting its revenues from the Pictures in order to deprive IP Management of Participation.

47. Based on all of the above, IP Management is informed and believes that, at the time the parties entered into the Assignment Agreement, TWC never intended to fully perform under the Producing Services Agreements which constituted consideration for the Assignment Agreement and TWC's subsequent exploitation of the *Piranha* Rights, and specifically TWC never intended to pay IP Management anything even close to its full Participation owed by TWC for the *Piranha* Rights. Instead, TWC engaged in a concerted pattern of knowingly false promises, fraudulent misrepresentations and fraudulent accounting practices designed to seduce IP Management and IPW's consent to the Assignment Agreement, lull IP Management into a false sense of security regarding its Participation and TWC's participation statements, and to ultimately sharply reduce the amount of the Participation TWC was legally obligated to pay IP Management under its Producing Services Agreements.

48. IP Management and IPW are further informed and believe that TWC and its principal Harvey Weinstein have engaged in a closely similar pattern of concerted fraud in the inducement and fraudulent accounting practices as to many, if not most, of the profit

participants in TWC's motion pictures and television productions, whether they be talent (stars, screenwriters, directors, producers) or rightsholders.

49. The Assignment Agreement is governed by New York law. It is clearly established under New York law that "[a]n agreement entered into through fraud in the inducement is an example of a *'voidable'* contract." *Adams v. Souzzi*, 433 F.3d 220, 227 (2d Cir. 2005) (emphasis added).

50. Because the Assignment Agreement was entered into by fraud in the inducement, which fraud IP Management has only recently discovered, IP Management and IPW possess and hereby exercise the right to void the Assignment Agreement. Pursuant to this voidance of the Assignment Agreement, the assigned *Piranha* Rights are the property of IP Management's affiliate, IPW, and any other entities that controlled the Piranha Rights, respectively, prior to their purported transfer to TWC in the Assignment Agreement.

51. Therefore, IP Management objects to the inclusion of the Assignment Agreement in the Notice of Assumption, Items 7916, 7917, and 7921, because the Assignment Agreement is ***not an asset of TWC's bankruptcy estate*** and cannot be assumed or assigned by or assigned to a third party.

52. In addition, the *Piranha* Rights purportedly assigned by the Assignment Agreement induced by TWC's fraud, includes contracts that TWC identifies in the Supplemental Notice of Assumption at Items ***2819, 2821, 2874, 2987, 12517, and 12518***. Due to the voidance of the Assignment Agreement for fraud in the inducement, those contracts remain the property of IP Management's affiliate IPW and its partners named in the Assignment Agreement. Accordingly, these contracts (Items 2819, 2821, 2874, 2987, 12517, and 12518) are not part of TWC's bankruptcy estate and cannot be assumed by or assigned to a third party.

53. Further, to the extent the Notices of Assumption includes any agreement that purports to license or assign, in whole or in part, any of the rights or agreements purportedly assigned in the Assignment Agreement, IP Management objects to the assumption and assignment of such agreements as well. IP Management makes this objection on the ground that TWC lacks the title and authority to assign any of the rights or contracts

purported obtained by TWC via the Assignment Agreement, because such Assignment Agreement is void by reason of fraud in the inducement.

D. **IP Management Objects to Any Assumption or Assignment of Any Rights in the Pictures That Is Free and Clear of TWC's or Assignor's Obligations to IP Management.**

54. The Notices of Assumption also identify various agreements that relate to rights in the Pictures and/or the *Piranha* Rights. To the extent that such agreements provide for any obligations on behalf of IP Management with respect to the rights in the Pictures and/or the *Piranha* Rights, IP Management objects that any assumption or assignment of such agreements must include and preserve any such obligations owed to IP Management.

55. In particular, the Notice of Assumption includes the following agreements:

| 3832 | THE WEINSTEIN COMPANY LLC | IP MANAGEMENT F/S/O MARC TOBEROFF | SERVICES AGREEMENT EFFECTIVE DATE: 4/25/2011 | $0.00 |
|------|---------------------------|-----------------------------------|----------------------------------------------|-------|
| 3844 | THE WEINSTEIN COMPANY LLC | IPW, LLC F/S/O MARC TOBEROFF | SERVICES AGREEMENT EFFECTIVE DATE: 5/21/2007 | $0.00 |
| 8067 | THE WEINSTEIN COMPANY LLC / TWC DOMESTIC LLC | VIACOM MEDIA NETWORKS | NOTICE OF IRREVOCABLE ASSIGNMENT (PIRANHA 3DD) DTD 7/27/2012 RE: AMENDED & RESTATED PROGRAM LICENSE AGREMEENT DTD 12/8/2011 | $0.00 |

56. In addition, the Supplemental Notice of Assumption includes the following agreements:

| 1086 | THE WEINSTEIN COMPANY LLC | ATMOSPHERE ENTERTAINMENT | ASSIGNMENT AGREEMENT EFFECTIVE DATE: 7/31/2007 | $0.00 |
|------|---------------------------|--------------------------|------------------------------------------------|-------|
| 1087 | THE WEINSTEIN COMPANY LLC | ATMOSPHERE ENTERTAINMENT | ASSIGNMENT AGREEMENT DTD 7/31/2007 RE: LETTER AGREEMENT DTD 4/4/2007 | $0.00 |
| 1088 | THE WEINSTEIN COMPANY LLC | ATMOSPHERE ENTERTAINMENT | JOINT VENTURE AGREEMENT EFFECTIVE DATE: 1/15/2004 | $0.00 |
| 1089 | THE WEINSTEIN COMPANY LLC | ATMOSPHERE ENTERTAINMENT MM | PRODUCING SERVICES AGREEMENT EFFECTIVE DATE: 2/23/2011 | $0.00 |
| 1090 | THE WEINSTEIN COMPANY LLC | ATMOSPHERE ENTERTAINMENT MM INC F/S/O MARK CANTON | PRODUCING SERVICES AGREEMENT EFFECTIVE DATE: 2/23/2011 | $0.00 |
| 1092 | THE WEINSTEIN COMPANY LLC | ATMOSPHERE ENTERTAINMENT MM LLC | LOANOUT CONVERSATION AGREEMENT EFFECTIVE DATE: 3/31/2009 | $0.00 |

| 1093 | THE WEINSTEIN COMPANY LLC | ATMOSPHERE ENTERTAINMENT MM LLC | NOTICE OF IRREVOCABLE AUTHORITY EFFECTIVE DATE: 7/31/2007 | $0.00 |
|---|---|---|---|---|
| 1094 | THE WEINSTEIN COMPANY LLC | ATMOSPHERE ENTERTAINMENT MM LLC | PARTIAL RELEASE OF COPYRIGHT SECURITY INTEREST | $0.00 |
| 1095 | THE WEINSTEIN COMPANY LLC | ATMOSPHERE ENTERTAINMENT MM LLC | RE: "PIRANHA" – MARK CANTON PRODUCING SERVICES AGREEMENT EFFECTIVE DATE: 5/21/2007 | $0.00 |
| 1096 | THE WEINSTEIN COMPANY LLC | ATMOSPHERE ENTERTAINMENT MM LLC | RE: "PIRANHA" MARK CANTON PRODUCER AGREEMENT EFFECTIVE DATE: 3/31/2009 | $0.00 |
| 2799 | THE WEINSTEIN COMPANY LLC | CHAKO FILM | LETTER AGREEMENT DTD 4/22/1977 | $0.00 |
| 2800 | THE WEINSTEIN COMPANY LLC | CHAKO FILM COMPANY | ASSIGNMENT AGREEMENT EFFECTIVE DATE: 7/31/2007 | $0.00 |
| 2801 | THE WEINSTEIN COMPANY LLC | CHAKO FILM COMPANY | ASSIGNEMTN AGREEMENT DTD 7/31/2007 RE: OPTION PURCHASE AGREEMENT DTD 3/30/2005 | $0.00 |
| 2802 | THE WEINSTEIN COMPANY LLC | CHAKO FILM COMPANY | BROUWERSGRACHT AGREEMENT DTD 7/31/1981 | $0.00 |
| 2803 | THE WEINSTEIN COMPANY LLC | CHAKO FILM COMPANY | DISTRIBUTION AGREEMENT DTD 4/15/1977 | $0.00 |
| 2804 | THE WEINSTEIN COMPANY LLC | CHAKO FILM COMPANY | LETTER AGREEMENT DTD 2/8/1977 | $0.00 |
| 2805 | THE WEINSTEIN COMPANY LLC | CHAKO FILM COMPANY | LETTER AGREEMENT DTD 4/15/1977 | $0.00 |
| 2806 | THE WEINSTEIN COMPANY LLC | CHAKO FILM COMPANY | PURCHASE AGREEMENT DTD 3/1/1977 | $0.00 |
| 2807 | THE WEINSTEIN COMPANY LLC | CHAKO FILM INTERNATIONAL | CONSENT AND RATIFICATION AGREEMENT EFFECTIVE DATE: 7/31/2007 | $0.00 |
| 2808 | THE WEINSTEIN COMPANY LLC | CHAKO FILM INTERNATIONAL | OPTION/ASSIGNMENT AGREEMENT EFFECTIVE DATE: 12/10/1997 | $0.00 |
| 2809 | THE WEINSTEIN COMPANY LLC | CHAKO FILM INTERNATIONAL | OPTION/ASSIGNMENT AGREEMENT DTD 12/10/1997 | $0.00 |
| 2810 | THE WEINSTEIN COMPANY LLC | CHAKO FILM INTERNATIONAL INC | SHORT FORM ASSIGNMENT DTD 12/10/1997 | $0.00 |
| 2811 | THE WEINSTEIN COMPANY LLC | CHAKO FILM INTERNATIONAL INC | CHAKO ADDENDUM DTD 6/6/1995 | $0.00 |
| 2812 | THE WEINSTEIN COMPANY LLC | CHAKO FILM INTERNATIONAL INC | LETTER ADDENDUM DTD 6/6/1995 | $0.00 |
| 2813 | THE WEINSTEIN COMPANY LLC | CHAKO FILM INTERNATIONAL INC | PRODUCTION/FINANCING AGREEMENT EFFECTIVE DATE: 3/22/1995 | $0.00 |
| 2814 | THE WEINSTEIN COMPANY LLC | CHAKO FILM INTERNATIONAL INC | PRODUCTION/FINANCING AGREEMENT DTD 3/22/1995 | $0.00 |
| 2815 | THE WEINSTEIN COMPANY LLC | CHAKO FILM INTERNATIONAL | PAYMENT INFO DTD 1/20/2006 RE: OPTION/PURCHASE AGREEMENT DTD 3/30/2005 | $0.00 |
| 2816 | DIMENSION FILMS, A DIVISION OF THE WEINSTEIN COMPANY LLC | CHAKO FILMS INTERNATIONAL & CHAKO VAN LEEUWEN | ACKNOWLEDGMENT AND AMENDMENT AMENDS AGREEMENT DTD 3/30/2005 EFFECTIVE DATE: 1/14/2011 | $0.00 |

| 2817 | THE WEINSTEIN COMPANY LLC & DIMENSION FILMS | CHAKO FILMS INTERNATIONAL & CHAKO VAN LEEUWEN | PIRANHA PAYMENT EFFECTIVE DATE: 1/14/2011 | $0.00 |
|---|---|---|---|---|
| 2818 | THE WEINSTEIN COMPANY LLC | CHAKO FILMS INTERNATIONAL | ASSIGNMENT OF SEQUEL/REMAKES RIGHTS DTD 6/7/1995 RE: AGREEMENT DTD 3/22/1995 | $0.00 |
| 2820 | THE WEINSTEIN COMPANY LLC | CHAKO FILMS INTERNATIONAL / CHAKO VAN LEEUWEN | ACKNOWLEDGMENT AND AGREEMENT EFFECTIVE DATE: 3/30/2005 | $0.00 |
| 2822 | THE WEINSTEIN COMPANY LLC | CHAKO FILMS INTERNATIONAL / CHAKO VAN LEEUWEN | RE ACCEPTANCE OF CHECKS | $0.00 |
| 2875 | DIMENSION FILMS, A DIVISION OF THE WEINSTEIN COMPANY LLC | CHEESE CUTTERS INC F/S/O JOSH STOLBERG | AMENDMENT AND SETTLEMENT AND RELEASE AMENDS AGREEMENT DTD 5/24/2005 EFFECTIVE DATE: 4/21/2011 | $0.00 |
| 2914 | THE WEINSTEIN COMPANY LLC | CHILLER FILMS LLC | ASSIGNMENT AGREEMENT EFFECTIVE DATE: 7/31/2007 | $0.00 |
| 2915 | DIMENSION FILMS, A DIVISION OF THE WEINSTEIN COMPANY LLC | CHILLER FILMS LLC | ASSIGNMENT AGREEMENT DTD 7/31/2007 RE: LETTER AGREEMENT DTD 4/4/2007 | $0.00 |
| 2916 | THE WEINSTEIN COMPANY LLC | CHILLER FILMS LLC | JOINT VENTURE AGREEMENT EFFECTIVE DATE: 1/15/2004 | $0.00 |
| 2917 | THE WEINSTEIN COMPANY LLC | CHILLER FILMS, LLC | ASSIGNMENT AGREEMENT EFFECTIVE DATE: 7/31/2007 | $0.00 |
| 4379 | THE WEINSTEIN COMPANY LLC | DIMENSION FILMS | NOTICE OF IRREVOCABLE AUTHORITY EFFECTIVE DATE: 7/31/2007 | $0.00 |
| 4413 | THE WEINSTEIN COMPANY LLC | DIMENSION FILMS | ASSIGNMENT AGREEMENT EFFECTIVE DATE: 4/5/2007 | $0.00 |
| 4417 | THE WEINSTEIN COMPANY LLC | DIMENSION FILMS | CONFIRMATION OF THE TERMS OF THE AGREEMENT EFFECTIVE DATE: 4/6/2007 | $0.00 |
| 7918 | THE WEINSTEIN COMPANY LLC | IPW LLC | JOINT VENTURE AGREEMENT EFFECTIVE DATE: 1/15/2004 | $0.00 |
| 7919 | THE WEINSTEIN COMPANY LLC & DIMIENSION FILMS | IPW LLC | PIRANHA PAYMENT EFFECTIVE DATE: 1/14/2011 | $0.00 |
| 12513 | DIMENSION FILMS, A DIVISION OF THE WEINSTEIN COMPANY LLC | PIRANHA PICTURES LLC | ASSIGNMENT AGREEMENT DTD 7/31/2007 | $0.00 |
| 12514 | THE WEINSTEIN COMPANY LLC | PIRANHA PICTURES LLC | LETTER AGREEMENT DTD 5/25/2005 | $0.00 |
| 12515 | THE WEINSTEIN COMPANY LLC | PIRANHA PICTURES LLC | PAYMENT INFO DTD 1/20/2006 RE: OPTION/PURCHASE AGREEMENT DTD 3/30/2005 | $0.00 |
| 12516 | THE WEINSTEIN COMPANY LLC | PIRANHA PICTURES LLC | SCRIPT OPTION/PURCHASE AGREEMENT | $0.00 |

| | | | EFFECTIVE DATE: 5/2/2005 | |
|---|---|---|---|---|
| 12519 | THE WEINSTEIN COMPANY LLC | PIRANHA PICTURES LLC | STANDARD TERMS AND CONDITIONS DTD 5/25/2005 RE: AGREEMENT DTD 5/25/2005 | $0.00 |
| 12520 | THE WEINSTEIN COMPANY LLC | PIRANHA PICTURES LLC | WRITER'S AGREEMENT DTD 5/25/2005 | $0.00 |
| 12521 | THE WEINSTEIN COMPANY LLC | PIRANHA PICTURES, LLC | ASSIGNMENT AGREEMENT EFFECTIVE DATE: 7/31/2007 | $0.00 |
| 12522 | THE WEINSTEIN COMPANY LLC | PIRANHA PIX AND EXCEPTION-WILD BUNCH SA | OPTION/PURCHASE AGREEMENT DTD 3/30/2005 RE: OPTION/ASSIGNMENT AGREEMENT DTD 12/10/1997 EFFECTIVE DATE: 3/30/1995 | $0.00 |
| 13179 | THE WEINSTEIN COMPANY LLC | RELATIVITY MEDIA LLC | ASSIGNMENT AGREEMENT EFFECTIVE DATE: 7/31/2007 | $0.00 |
| 13180 | DIMENSION FILMS, A DIVISION OF THE WEINSTEIN COMPANY LLC | RELATIVITY MEDIA LLC | ASSIGNMENT AGREEMENT DTD 7/31/2007 RE: LETTER AGREEMENT DTD 4/4/2007 | $0.00 |
| 13188 | THE WEINSTEIN COMPANY LLC | RELATIVITY MEDIA LLC | JOINT VENTURE AGREEMENT EFFECTIVE DATE: 1/15/2004 | $0.00 |
| 13189 | THE WEINSTEIN COMPANY LLC | RELATIVITY MEDIA LLC | PARTICIPATION AGREEMENT EFFECTIVE DATE: 4/4/2007 | $0.00 |
| 13192 | THE WEINSTEIN COMPANY LLC | RELATIVITY MEDIA LLC | RE: "PIRANHA" EFFECTIVE DATE: 4/4/2007 | $0.00 |
| 13197 | THE WEINSTEIN COMPANY LLC | RELATIVITY MEDIA LLC | ASSIGNMENT AGREEMENT EFFECTIVE DATE: 7/31/2007 | $0.00 |
| 17105 | THE WEINSTEIN COMPANY LLC | WILD BUNCH S.A. | LETTER AGREEMENT DTD 4/6/2007 RE: ASSIGNMENT AGREEMENT DTD 7/31/2007 AND ASSIGNMENT AGREEMENT DTD 4/5/2007 | $0.00 |
| 17106 | THE WEINSTEIN COMPANY LLC | WILD BUNCH SA | ASSIGNMENT AGREEMENT EFFECTIVE DATE: 4/5/2007 | $0.00 |
| 17109 | WEINSTEIN GLOBAL FILM CORP. | WILD BUNCH SA | DEAL MEMO DTD 4/6/2007 RE: INTERNATIONAL DISTRIBUTION | $0.00 |
| 17111 | DIMIENSION FILMS OF THE WEINSTEIN COMPANY LLC / WEINSTEIN GLOBAL FILM CORP. | WILD BUNCH SA | LETTER AGREEMENT DTD 4/6/2007 RE: ASSIGNMENT AGREEMENT DTD 7/31/2007 AND ASSIGNMENT AGREEMENT DTD 4/5/2007 | $0.00 |
| 17115 | THE WEINSTEIN COMPANY LLC | WILD BUNCH, S.A. | RE: "PIRANHA" EFFECTIVE DATE: 4/6/2007 | $0.00 |

57. To the extent that the agreements identified in the Notices of Assumption, including without limitation the agreements identified above, include obligations owed to IP Management in connection with the Pictures or the *Piranha* Rights, IP Management objects to any assumption or assignment that would abrogate such obligations. Such obligations to IP

Management are ongoing and may not be abrogated or modified through assumption or assignment of the agreements. In particular, to the extent any agreement requires any party to pay Participation to IP Management in connection with the exploitation of the *Piranha* Rights, IP Management objects to any assumption or assignment that abrogates, reduces, or prejudices IP Management's right to such Participation.

### D.    Further Reservation of Rights.

58.    IP Management and its affiliate IPW reserve their rights to bring an Adversary Complaint or Administrative Claim(s) against TWC in this action pursuant to the grounds stated in this Limited Objection and/or any other grounds afforded by the Bankruptcy Code or other applicable law.

59.    IP Management and IPW hereby expressly further reserve their rights to amend this Limited Objection and to raise any other such Objection(s), at the hearing as to these Objection(s) or otherwise, and reserves all other rights and remedies afforded by the Bankruptcy Code or other applicable law.

Respectfully submitted,

Dated: April 30, 2018              IP MANAGEMENT, INC.

By: _____
Marc Toberoff
President, IP Management (proceeding *pro se*)
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Tel: (310) 246-3333
Fax: (310) 246-3101

IPW, LLC

By: _____
Marc Toberoff
Managing Member, IPW (proceeding *pro se*)
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Tel: (310) 246-3333
Fax: (310) 246-3101