ORIGINAL

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) |
| W. R. GRACE & CO., et al., | )    Chapter 11 |
| | ) |
| | )    Case No. 01-01139 (JJF) |
| Debtors. | )    (Jointly Administered) |
| | ) |

# DEBTORS' OPPOSITION TO THE JOINT MOTION BY THE ASBESTOS PROPERTY DAMAGE AND PERSONAL INJURY COMMITTEES FOR AUTHORITY TO PROSECUTE FRAUDULENT TRANSFER CLAIMS

Dated: July 11, 2001

KIRKLAND & ELLIS
David Bernick
James H.M. Sprayregen
Reed S. Oslan
Janet S. Baer
Scott A. McMillin
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

PACHULSKI, STANG, ZIEHL,
     YOUNG & JONES P.C.
Laura Davis Jones (#2436)
David W. Carickhoff, Jr. (#3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
(302) 652-4100

## **TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      This Court Should Maintain Control Over Who Evaluates The Fraudulent
Transfer Claims And Where Those Claims Are Brought . . . . . . . . . . . . . . . . . . 3

        A.     These Claims Belong To The Debtors' Estates, Not Any Claimant, And
Can Only Be Prosecuted On Behalf Of The Estates . . . . . . . . . . . . . . . . 3

        B.     No Committee Has Standing To Pursue These Claims Absent Court
Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        C.     Authorizing A Committee To Pursue A Claim On Behalf Of The Estate
Contemplates Judicial Supervision To Ensure That The Prosecution Of
The Claim Is In The Best Interests Of The Estates . . . . . . . . . . . . . . . . . 5

II.     The Unsecured Creditors Committee Should Be Selected To Evaluate The
Fraudulent Transfer Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.     The Asbestos Committees Should Not Be Allowed To Pursue The
Fraudulent Transfer Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.     The Unsecured Creditors' Committee Should Be Given Authority To
Evaluate The Fraudulent Transfer Claims . . . . . . . . . . . . . . . . . . . . . . . . 7

III.    Proposed Procedure For Evaluating Fraudulent Transfer Claims:  The Unsecured
Creditors' Committee Should Evaluate Whether The Claims Should Be Pursued,
And If So, Then The Claims Should Be Brought In Delaware . . . . . . . . . . . . . . 10

        A.     The Unsecured Creditors' Committee Should Evaluate the Fraudulent
Transfer Claims To Determine Whether They Are Worth Pursuing . . . . 10

        B.     If They Are Pursued, The Fraudulent Transfer Claims Should Be Pursued
In This Court Because They Are Inextricably Intertwined With Debtors'
Bankruptcy Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## **TABLE OF AUTHORITIES**

**Cases**

American Nat'l Bank v. MortgageAmerica Corp. (In re MortgageAmerica Corp.),
714 F.2d 1266, 1275 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Bank of America NT&SA v. Nickele, 1998 WL 181827 (E.D. Pa. Apr. 16, 1998) . . . . . . . . . . 11

Carlton v. Baww, Inc., 751 F.2d 781 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Catwil Corp. v. Derf II (In re Catwil Corp.), 175 B.R. 362 (E.D. Cal. 1994) . . . . . . . . . . . . . . 7

Citicorp Acceptance Company, Inc. v. Robison (In re Sweetwater),
884 F.2d 1323 (10th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Hansen v. Finn (In re Curry and Sorensen, Inc.), 57 B.R. 824 (9th Cir. BAP 1986) . . . . . . . . . . . 5

In re 1606 New Hampshire Ave. Associates, 85 B.R. 298 (Bankr. E.D. Pa. 1988) . . . . . . . . . . 11

In re America's Hobby Center, Inc., 223 B.R. 275 (Bankr. S.D.N.Y. 1998) . . . . . . . . . . . . . . . . 5

In re Babcock & Wilcox Co., No. 01-1467, slip op. (E.D. La. June 26, 2001) . . . . . . . . . . . . . 13

In re Chemical Separations Corp, 32 B.R. 816 (Bankr. E.D. Tenn 1983) . . . . . . . . . . . . . . . . . . 7

In re First Capital Holdings Corp., 146 B.R. 7 (Bankr. C.D. Cal. 1992) . . . . . . . . . . . . . . . . . . . 7

In re Haskell-Dawes, Inc., 188 B.R. 515 (Bankr. E.D. Pa. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Labrum & Doak, LLP, 227 B.R. 372 (Bankr. E.D. Pa. 1998) . . . . . . . . . . . . . . . . . . . . . . 9, 10

In re Marin Motor Oil, Inc., 689 F.2d 445 (3rd Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re McConnell, 122 B.R. 41 (Bankr. S.D. Tex. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

In re Nationwide Sports Distributors, Inc., 227 B.R. 455 (Bankr. E.D. Pa. 1998) . . . . . . . . . 8, 11

In re Spaulding Composites Co., Inc., 207 B.R. 899 (9th Cir. BAP 1997) . . . . . . . . . . . . . . . . . . 5

In re STN Enterprises, 779 F.2d 901 (2nd Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Valley Park, Inc., 217 B.R. 864 (Bankr. D. Mont. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In re Wesco Prods. Co., 22 B.R. 107 (Bankr. N.D. Ill. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Xonics Photochemical, Inc., 841 F.2d 198 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . 4

Louisiana World Exposition v. Federal Ins. Co., 858 F.2d 233 (5th Cir. 1988) . . . . . . . . . . . . . . 4

LTV Steel Co. v. Board of Education (In re Chateaugay Corp.),
      93 B.R. 26 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Official Comm. of Unsecured Creditors v. Bock
      (In re Walnut Equipment Leasing Co., Inc.),
      2000 WL 1456951 (Bankr. E.D. Pa., Sept. 22, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Official Committee of Unsecured Creditors v. Chinery (In re Cybergenics Corp.),
      226 F.3d 237 (3rd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 11

## INTRODUCTION

W. R. Grace & Co. ("Grace") announced early on in this case its view that any fraudulent conveyance challenge to the 1996 Fresenius or the 1998 Sealed Air transactions would have no merit:  Grace was solvent in 1996 and 1998 because asbestos injury claims were under control at the time and careful analysis showed that those claims could be resolved in the ordinary course.  As long as Grace's assets exceeded its liabilities, including any asbestos liabilities, during these time periods, Grace was solvent and no fraudulent conveyance claims can be maintained.  The dramatic spike of asbestos claims in 2000 was as unexpected as it was irrational and forced Grace to file these bankruptcy cases.

Under well-established law, Grace could have properly asserted that no further proceedings should take place with regard to any potential fraudulent transfer claims until Grace's own judgment that these claims were not worth pursuing was reviewed on the merits. See In re McConnell, 122 B.R. 41, 44 (Bankr. S.D. Tex. 1989) (denying creditor's motion to prosecute claim because "the Trustee made a reasoned, well thought out, legal and business judgment in deciding whether to assert and pursue these particular causes of action").  But Grace also recognized that, no matter how meritorious that judgment might be, it would always be characterized as biased and that the bias issue would unnecessarily prolong the process of deciding whether a fraudulent transfer claim should be pursued.  Grace therefore candidly acknowledged to the Court that someone else should assess whether a fraudulent conveyance claim was in the best interests of the estates.

The motion now prosecuted by the Property Damage and Personal Injury Committees (the "Asbestos Committees") does not show the same candor.  Both utterly fail to acknowledge the equally disabling bias that each committee has with respect to investigation of

1

fraudulent transfer claims. And that bias is obvious. The predicate for any fraudulent conveyance claim (and, therefore, the central focus of any investigation into whether such a claim should be brought) is proving that Grace was insolvent at the time of the transactions, *i.e.*, proving the existence of liabilities that exceed the company's assets. Both committees clearly have a bias in assessing the magnitude of Grace's asbestos liability because both committees were formed for the essential purpose of representing people who are asserting asbestos claims. In fact, the members of the Asbestos Committees themselves hold asbestos claims and would be required to assess the value of their own claims if the Asbestos Committees are charged with evaluating the fraudulent transfer claims.

It is not an overstatement to say that the very existence of both Asbestos Committees is due entirely to the contention that Grace has significant asbestos liability. Accordingly, there can be no reasonable expectation that either committee is disinterested in assessing the magnitude of Grace's potential asbestos liability (which directly affects the critical solvency analysis for fraudulent conveyance purposes), and whether a fraudulent conveyance claim is in the best interests of the estates.

It therefore falls to the Court to determine whether there is any alternative to the Asbestos Committees. In fact, an alternative is readily available. The Unsecured Creditors' Committee has no disabling conflict of interest or bias that would prevent it from independently evaluating the merits of the fraudulent transfer claims. Grace recommends that the Unsecured Creditors' Committee be appointed to proceed on behalf of the estates in determining whether any fraudulent transfer claim is worth pursuing. If such a claim is to be pursued, it should be pursued in this Court, as the claim is inextricably intertwined with the Debtors' bankruptcy cases.

## ARGUMENT

I.      **This Court Should Maintain Control Over Who Evaluates The Fraudulent Transfer Claims And Where Those Claims Are Brought.**

This Court should be actively involved in determining who should evaluate the fraudulent transfer claims, and if they are to be prosecuted, where those claims are brought.  The Court should evaluate the biases and interests of the various committees and reach an informed decision as to which committee should evaluate these claims.  The Court's involvement is critical to ensuring that the evaluation of these actions is done by the committee that can best determine whether the prosecution of these claims is in the estates' and creditors' best interests.

   A.      **These Claims Belong To The Debtors' Estates, Not Any Claimant, And Can Only Be Prosecuted On Behalf Of The Estates.**

Upon the commencement of a bankruptcy case, only the bankruptcy trustee or the debtor-in-possession has standing to assert avoidance actions.  See Official Committee of Unsecured Creditors v. Chinery (In re Cybergenics Corp.), 226 F.3d 237, 240 n.3 (3rd Cir. 2000) ("Only a trustee (or debtor in possession) is authorized to exercise the power to avoid certain transfers or obligations"); Carlton v. Baww, Inc., 751 F.2d 781, 785 (5th Cir. 1985) (bankruptcy caused the right to prosecute a fraudulent transfer action to vest with the bankruptcy trustee); American Nat'l Bank v. MortgageAmerica Corp. (In re MortgageAmerica Corp.), 714 F.2d 1266, 1275 (5th Cir. 1983) ("The 'strong arm' provision of the current Code, 11 U.S.C. § 544, allows the bankruptcy trustee to step into the shoes of a creditor for the purpose of asserting causes of action under state fraudulent conveyance acts for the benefit of all creditors, not just those who win a race to judgment."); Official Comm. of Unsecured Creditors v. Bock (In re Walnut Equipment Leasing Co., Inc.), 2000 WL 1456951, at *1 n.2 (Bankr. E.D. Pa., Sept. 22, 2000).

The rationale for this rule of law is clear:  the power to avoid fraudulent transfers should be exercised for the benefit of all of the estate, not to be enjoyed by individual creditors. See Cybergenics, 226 F.3d at 244 ("[E]mpowering the trustee or debtor in possession to avoid a transaction by pursuing an individual creditor's cause of action is a method of forcing that creditor to share its valuable right with other unsecured creditors."); Citicorp Acceptance Company, Inc. v. Robison (In re Sweetwater), 884 F.2d 1323, 1328-29 (10th Cir. 1989) ("All of the avoiding powers have the policy of fair treatment among creditors at their base. . . .  The theoretical underpinning of all of them remains the equal treatment among creditors by forcing those who have received an unfair advantage to disgorge the ill gotten gains." (citation omitted)).

Thus, the fraudulent transfer claims belong to the Debtors' estates, and can only be pursued if they are in the best interests of the estates.

**B.      No Committee Has Standing To Pursue These Claims Absent Court Approval.**

A creditors' committee has no standing to pursue a claim on behalf of the estate unless it first seeks permission from the Court and demonstrates to the Court that the Debtors have unjustifiably refused to prosecute the action and that the creditor has a colorable claim.  See Cybergenics, 226 F.3d at 240 n.3 (creditor may pursue fraudulent transfer claims only "when the debtor in possession is unwilling to pursue a colorable claim that would benefit the bankruptcy estate."); In re Xonics Photochemical, Inc., 841 F.2d 198, 203 (7th Cir. 1988) (creditor had no standing to pursue derivative suit where creditor did not request permission from the court or show that the debtor had shirked its responsibilities); Louisiana World Exposition v. Federal Ins. Co., 858 F.2d 233, 247 (5th Cir. 1988) (creditor must show that the debtor unjustifiably refused to prosecute the claim and that it received permission from the court to pursue the claim).

4

C.    **Authorizing A Committee To Pursue A Claim On Behalf Of The Estate Contemplates Judicial Supervision To Ensure That The Prosecution Of The Claim Is In The Best Interests Of The Estates.**

Once a court is asked to authorize a committee to evaluate and prosecute a claim on behalf of the estate, the court is called upon to supervise the litigation to ensure that prosecution of the claim is in the best interest of the estate.  The Ninth Circuit Bankruptcy Appellate Panel explained:  "This promotes the fair and orderly administration of the bankruptcy estate by providing judicial supervision over the litigation to be undertaken."  Hansen v. Finn (In re Curry and Sorensen, Inc.), 57 B.R. 824, 828 (9th Cir. BAP 1986).  Indeed, the court found that "judicial intervention is crucial, for resolution of the conflict between the creditor and the debtor-in-possession requires a balancing of the competing interests. . ."  Id.  Another court explained:

> [T]here is good and sufficient reason to hold that a creditors' committee does not have unfettered discretion to sue simply on its own say-so.  Prior approval of committee-commenced adversary proceedings is required because it "promotes the fair and orderly administration of the bankruptcy estate by providing judicial supervision over the litigation to be taken."

In re America's Hobby Center, Inc., 223 B.R. 275, 280 (Bankr. S.D.N.Y. 1998) (quoting In re Curry and Sorenson, Inc., 57 B.R. 824, 828 (9th Cir. BAP 1994)).  See also In re Spaulding Composites Co., Inc., 207 B.R. 899, 904 (9th Cir. BAP 1997) ("So long as the bankruptcy court exercises its judicial oversight and verifies that the litigation is indeed necessary and beneficial, allowing a creditors' committee to represent the estate presents no undue concerns."); In re Valley Park, Inc., 217 B.R. 864, 867 (Bankr. D. Mont. 1998) (same).

II.    **The Unsecured Creditors' Committee Should Be Selected To Evaluate The Fraudulent Transfer Claims.**

Here, judicial supervision is crucial to determine which committee can best represent the interests of the estates and the creditors in evaluating the fraudulent transfer claims.

5

The Court should not simply bend to the desires of the Asbestos Committees to pursue these claims, but must evaluate the biases and interests of the various committees to determine which committee has the ability to independently evaluate these claims and determine whether, when and how to prosecute these claims. As explained below, only the Unsecured Creditors' Committee is sufficiently disinterested to evaluate the fraudulent transfer claims.

### A.    The Asbestos Committees Should Not Be Allowed To Pursue The Fraudulent Transfer Claims.

The Asbestos Committees are inappropriate parties to evaluate the fraudulent transfer claims because they are biased and have a vested interest in the key factual predicates of the claims. This means that they cannot be counted on for an independent or unbiased evaluation of the merits of the claims.

The predicate for any fraudulent conveyance claim, and therefore the central focus of any investigation into whether such a claim should be brought, is the existence of liabilities that exceed the company's assets. Because proving that the Debtors were insolvent in 1996 and 1998 is a prerequisite to any fraudulent transfer claim, the magnitude of Debtors' asbestos liabilities at those times is a key factual predicate that will drive the fraudulent conveyance argument. Asbestos claimants (who are represented by the Asbestos Committees) would have to prove that there is a huge underlying asbestos liability – multiples of what Grace's management and advisors believed to be the case at the time – in order to prove that Grace was insolvent and that the Fresenius and Sealed Air transactions were fraudulent conveyances.

Both Asbestos Committees were formed for the purpose of representing people who are asserting asbestos claims, and therefore, by the very nature of their fiduciary duties to their constituents, they are committed to proving that the Debtors have a large underlying

asbestos liability. Indeed, the very existence of both committees is due entirely to the contention

that Grace has significant asbestos liability. Moreover, the members of the Asbestos Committees

themselves hold asbestos claims and would be required to assess the value of their own claims if

the Asbestos Committees are charged with evaluating the fraudulent transfer claims. Thus, there

can be no reasonable expectation that the Asbestos Committees are disinterested in assessing the

magnitude of Grace's potential asbestos liability or whether a fraudulent conveyance claim is in

the best interests of the estates. Consequently, they are disabled from pursuing these claims.

Interestingly, all of the cases cited by the Asbestos Committees for the proposition

that a creditors' committee has an implied right to initiate an adversary proceeding on behalf of

the debtor are cases in which the *unsecured creditors' committee* was given leave to prosecute

the claims. See, e.g., Catwil Corp. v. Derf II (In re Catwil Corp.), 175 B.R. 362 (E.D. Cal. 1994);

In re STN Enterprises, 779 F.2d 901, 904 (2nd Cir. 1985); In re Marin Motor Oil, Inc., 689 F.2d

445, 453 (3rd Cir. 1982); In re First Capital Holdings Corp., 146 B.R. 7, 11 (Bankr. C.D. Cal.

1992); In re Chemical Separations Corp, 32 B.R. 816, 819 (Bankr. E.D. Tenn 1983). This is

exactly what the Debtors believe should occur in this case – the Unsecured Creditors'

Committee, not the Asbestos Committees, should be granted authority to prosecute the fraudulent

transfer actions. Further, in none of those cases did the committee seeking leave to prosecute the

adversary proceeding suffer from a disabling bias that prevented it from prosecuting the

adversary proceeding in a fair and unbiased manner.

**B.     The Unsecured Creditors' Committee Should Be Given Authority To
         Evaluate The Fraudulent Transfer Claims.**

The Unsecured Creditors' Committee has no disabling conflict of interest or bias

that would prevent it from independently evaluating the merits of the fraudulent transfer claims.

7

In contrast to the Asbestos Committees, the Unsecured Creditors' Committee can take a fresh look at these claims and determine whether it would be in the best interests of the estates to prosecute the claims, and if so, when and how they should be prosecuted.

Indeed, the very purpose of the Unsecured Creditors' Committee is to defend the interests of the estates' creditors and to ensure that the assets of the estate are maximized for the benefit of those creditors. See In re Nationwide Sports Distributors, Inc., 227 B.R. 455, 463 (Bankr. E.D. Pa. 1998) ("the purpose of such [unsecured creditors] committees is to represent the interests of unsecured creditors and to strive to maximize the bankruptcy dividend paid to that class of creditors."); In re Haskell-Dawes, Inc., 188 B.R. 515, 519 (Bankr. E.D. Pa. 1995) (same). Thus, the Unsecured Creditors' Committee is in the best position to determine whether the prosecution of the fraudulent transfer claims is in the best interest of the creditors.

Moreover, the Unsecured Creditors' Committee has been appointed to represent all of the unsecured creditors, whereas the Asbestos Committees have only been appointed to represent very select groups of unsecured creditors. The purpose of a fraudulent transfer action is to recover assets for all creditors. These actions are not limited to recovering assets for asbestos claimants. Because the Unsecured Creditors' Committee has been authorized to represent all creditors, it is the appropriate committee to evaluate and, if necessary, pursue these claims. The Asbestos Committees simply represent one subset of these creditors, and therefore, may not adequately represent the interests of the creditors' group as a whole.

The Asbestos Committees' argument that the Unsecured Creditors' Committee suffers from a "disabling conflict" is without any basis. (See Asbestos Comm. Mot. ¶ 14) As an initial matter, the Asbestos Committees provide no explanation as to what this conflict is. The fact that Sealed Air, one of the defendants in the fraudulent transfer actions, is on the Unsecured

Creditors' Committee is no longer a conflict because Sealed Air has agreed to recuse itself if the Unsecured Creditors' Committee is authorized to evaluate the fraudulent transfer claims. In addition, the Asbestos Committees' contention that the Unsecured Creditors' Committee's "wait and see approach" should disqualify it from pursuing the fraudulent transfer actions is nonsensical and betrays their own bias. (Asbestos Comm. Mot. ¶ 17) To the contrary, the Unsecured Creditors' Committee's approach is the only one that makes sense. Rather than rushing blindly into the prosecution of these claims, the Unsecured Creditors' Committee wants to carefully review the facts and law underlying these claims to determine if they warrant prosecution, and if so, when and how they should be prosecuted. It is exactly this sort of careful analysis that the Asbestos Committees fear because it will likely show the baselessness of these claims. The Asbestos Committees want to be given carte blanche to prosecute whatever fraudulent transfer claims they see fit, wherever and however they desire, without any court oversight. That, however, is simply not in the best interests of the estates or the creditors. These claims need to be carefully evaluated by someone without a vested interest in the outcome, who can objectively determine whether the pursuit of these claims is in the best interests of the estates. In this case, the Unsecured Creditors' Committee is the only entity that can perform such a task.

The court in In re Labrum & Doak, LLP, 227 B.R. 372, 379-80 (Bankr. E.D. Pa. 1998), dismissed similar allegations as meritless. In that case, a plan of reorganization was submitted which provided that the unsecured creditors' committee would be empowered to prosecute claims that remained on behalf of the estate. Id. The committee of former partners of the debtor ("FP Committee") filed an objection, arguing that the FP Committee rather than the unsecured creditors' committee should be allowed to prosecute the claims because the unsecured

creditors' committee was likely to "go easy" on pursuing claims against individual creditors. The court rejected this argument, stating: "The UC Committee, as the official representative of such creditors, thus appears the archetypical appropriate party to maintain such actions." Id. at 380.

Ironically, in one of the cases cited by the Asbestos Committees in support of their argument, the court actually rejected the committee's motion for leave to prosecute the adversary proceeding because the committee had failed to demonstrate that the debtor would not diligently pursue the action: "the plaintiff has presented no reasonable argument or evidence as to why the debtor in possession would not pursue its action against the defendants as diligently as the Creditors' Committee would or could." In re Wesco Prods. Co., 22 B.R. 107, 109 (Bankr. N.D. Ill. 1982). Likewise here, the Asbestos Committees have presented no reasonable argument or evidence as to why the Unsecured Creditors' Committee could not pursue the fraudulent transfer actions as diligently as the Asbestos Committees would or could.

III. **Proposed Procedure For Evaluating Fraudulent Transfer Claims:  The Unsecured Creditors' Committee Should Evaluate Whether The Claims Should Be Pursued, And If So, Then The Claims Should Be Brought In Delaware.**

A. **The Unsecured Creditors' Committee Should Evaluate the Fraudulent Transfer Claims To Determine Whether They Are Worth Pursuing.**

The Court should authorize the Unsecured Creditors' Committee to evaluate the fraudulent transfer claims to determine whether they should be pursued. The Unsecured Creditors' Committee should take the time to review the Fresenius and Sealed Air transactions as well as the Debtors' documents to reach an informed decision as to whether the fraudulent transfer claims are meritorious and worth pursuing, i.e., whether the expected return from the lawsuit exceeds the costs to the estates of prosecuting the lawsuit. This Court must remain actively involved in the decision whether to prosecute these claims to ensure that any prosecution

of the claims is in the best interests of the estates and their creditors.  See Curry and Sorensen, 57

B.R. at 828; Spaulding Composites, 207 B.R. at 904.

> **B.**     **If They Are Pursued, The Fraudulent Transfer Claims Should Be Pursued In
> This Court Because They Are Inextricably Intertwined With Debtors'
> Bankruptcy Cases.**

Debtors believe that the fraudulent transfer claims, if they are to be pursued at all,

must proceed in Delaware.  Courts have generally recognized that claims that seek to recover

assets of the estate should proceed in the "home court," where the bankruptcy cases reside.  See,

e.g., Bank of America NT&SA v. Nickele, 1998 WL 181827, at *5 (E.D. Pa. Apr. 16, 1998) ("A

presumption has developed that civil proceedings should be tried in the "home" court, namely,

the court where the bankruptcy case itself is pending."); In re 1606 New Hampshire Ave.

Associates, 85 B.R. 298, 305 (Bankr. E.D. Pa. 1988) ("We are most reluctant to allow pieces to

be severed from a case, requiring litigation in several jurisdictions, rather than the desired goal of

'centering' administration of an entire case in one jurisdiction."); LTV Steel Co. v. Board of

Education (In re Chateaugay Corp.), 93 B.R. 26, 29 (S.D.N.Y. 1988) (court where bankruptcy is

"should be the forum to decide whether a property is the property of the estate.").

The fraudulent transfer lawsuits seek a declaration that the Sealed Air and

Fresenius transactions were fraudulent transfers and seek the return of those assets to Debtors'

estates.  Because these proceedings seek to recover assets of the estate, over which the Delaware

Court has exclusive jurisdiction, they should be tried in Delaware in order to allow the Delaware

Court to marshal all of the assets of the estate.

Maintaining these claims in the home court is particularly important here for

several reasons.  The first is the alleged magnitude of the claims.  The Asbestos Committees have

asserted that these claims may be the most significant asset of the estate.  While Debtors disagree

with that assessment, this demonstrates the importance of any such litigation remaining in this Court. The very fact that there is a dispute over the merits of these claims and whether they should be pursued demonstrates that it will be difficult, if not impossible, to reach a resolution with the Asbestos Committees about these claims until they are litigated.

Moreover, given the inter-relationship between the fraudulent conveyance claims and the asbestos liability issues, the claims are "interwoven" into the bankruptcy cases as a whole, as the Court recognized during the May 3rd hearing:

> What I would really like to see you do, and the purpose of me having you in is, you are probably going to be litigating in Delaware. And I have not made any decisions, but it's a bankruptcy case, they're interwoven.

(May 3, 2001 Hearing Transcript, at 82) The Debtors agree with the Court's assessment. Of critical importance to both Debtors' bankruptcy cases and the fraudulent transfer claims is the solvency of the Debtors. Rather than having two separate courts evaluating Debtors' solvency, it makes far more sense to have this Court, which must handle the solvency issues in the context of Debtors' bankruptcy anyway, also handle the fraudulent transfer claims.[1] Likewise, issues concerning the volume of asbestos claims as well as the merit of certain types and classes of claims will be common to both Debtors' bankruptcy cases and the fraudulent transfer claims.

In the Babcock & Wilcox bankruptcy, Judge Vance denied the creditors' committee's motion to withdraw the reference for similar fraudulent transfer claims due to the overlap of issues in the bankruptcy and fraudulent transfer actions:

---

[1] The solvency analysis performed in the context of Debtors' bankruptcy cases is the same type of analysis as will be performed in the context of the fraudulent conveyance claims, however, the time-frame will be different. For the fraudulent conveyance claims, the critical question is whether the Debtors were solvent *at the time the assets were conveyed* – 1996 and 1998 for the Fresenius and Sealed Air transactions.

> [T]he key issue in the fraudulent conveyance action, whether B&W was insolvent at the time of the transfers, involves valuing all of the then-asserted, as well as the future, asbestos personal injury claims. This same issue, *i.e.*, the estimated value of the asbestos claims, is critical to the reorganization proceeding, albeit as of a later date. Indeed, the method by which the claims are valued is one of the most contentious issues in the reorganization. . . . The Court further finds that the issues in the fraudulent conveyance action are integral to the restructuring of debtor-creditor relations.

In re Babcock & Wilcox Co., No. 01-1467, slip op. at pp. 17-18 (E.D. La. June 26, 2001)

(attached as Ex. A). Likewise here, because the issues in the fraudulent transfer actions are

interwoven with bankruptcy issues, the fraudulent transfer cases should remain in this Court. As

the Court stated on May 3rd:

> Unless there's some persuasive, convincing force or reason to send you around the world, you are probably here. And what you really ought to focus on is what you want decided and when you want to get to trial. It will make a lot more sense in the context of not only the litigation that's out there, but of the bankruptcy also.

(May 3, 2001 Hearing Transcript, at 82) No such persuasive showing to transfer venue has been

made. The fraudulent conveyance claims should stay here.

## CONCLUSION

For these reasons, the Unsecured Creditors' Committee should be given authority

to evaluate the fraudulent transfer claims, and, if they warrant prosecution, this Court should

direct the Unsecured Creditors' Committee to pursue those claims in Delaware as an adversary

proceeding in these bankruptcy cases.

Dated: July 11, 2001

     KIRKLAND & ELLIS
     David Bernick
     James H.M. Sprayregen
     Reed S. Oslan
     Janet Baer
     Scott A. McMillin
     200 East Randolph Drive
     Chicago, Illinois 60601
     (312) 861-2000

     and

     PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

     Laura Davis Jones (#2436)
     David W. Carickhoff, Jr. (#3715)
     919 North Market Street, 16th Floor
     P.O. Box 8705
     Wilmington, Delaware 19899-8705 (Courier 19801)
     (302) 652-4100

     Co-Counsel for the Debtors and Debtors in Possession

# EXHIBIT A

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JUN 26  AM 8: 37

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE THE BABCOCK & WILCOX
CO., ET AL.

CIVIL ACTION

NO: 01-1467

Bankruptcy Case
No. 00-10992 through
00-10995

Adversary Proceeding
No. 01-1155

SECTION: "R" (5)

### ORDER AND REASONS

Before the Court is the motion by the Asbestos Claimants Committee to withdraw the reference of a certain adversary proceeding pursuant to 28 U.S.C. § 157(d). For the following reasons, the motion is DENIED.

## I. BACKGROUND

This motion to withdraw the reference involves a fraudulent conveyance action by the Asbestos Claimants Committee challenging five transactions in which the Debtor (B&W) transferred assets to its parent Babcock & Wilcox Investment Company (BWICO) on or after July 1, 1998. In the first transfer, the Debtor

DATE OF ENTRY
JUN 2 6 2001

Fee_____
Process_____
X  Dkld_____
✓  CtRmDep_____
Doc.No._____

distributed to BWICO a non-interest bearing promissory note due to the Debtor from BWICO. In the second transfer, the Debtor distributed one hundred percent of the stock of its subsidiary Babcock & Wilcox Tracy Power, Inc. to BWICO. In the three remaining transfers, the Debtor distributed one hundred percent of the stock of three operating subsidiaries, McDermott Technology, Inc., Hudson Products Corporation, and BWX Technologies, Inc. to BWICO. The ACC claims that it first learned of these transfers in July of 2000. The ACC also asserts that although the effect of the transfers on the Debtor's financial statements was a reduction of Debtor's assets by approximately $622 million, the true value of the assets may be considerably greater.

On November 13, 2000, the ACC made a formal demand on the Debtor either to obtain a voluntary return of the assets to the Debtor's estate or to institute an adversary proceeding seeking such a retransfer. (*See* ACC's Mem. Supp. Mot. to Withdraw Reference Ex. A.) The Debtor promised to investigate the transfers and claimed that it was not necessary to file an adversary proceeding at that time. (*See id.*) The ACC responded on April 21, 2001 with a final demand upon the Debtor to institute legal action immediately with regard to the five transfers or the ACC would seek to bring the action on behalf of the Debtor's estate.

2

On April 30, 2001, B&W responded by instituting an adversary proceeding in bankruptcy court for the Eastern District of Louisiana against defendants, BWICO, BWX Technologies, Inc., Babcock & Wilcox Tracy Power, Inc., Hudson Products Corporation, and McDermott Technology, Inc. The proceeding was in the form of a declaratory judgment action seeking a declaration that Louisiana law applies to the case, a determination that the Debtor was solvent at the time of the 1998 transfers, and a determination that the transfers are not voidable. On May 14, 2001, the ACC asked the bankruptcy court for leave to intervene in the adversary proceeding and for authority to assert on behalf of the Debtor's estate an action to annul the allegedly fraudulent transfers and to return the transferred property to the Debtor's estate. The complaint in intervention included a jury demand. At the same time, the ACC moved to withdraw the reference on the proceeding to annul the transfers.

Before the motion to withdraw the reference could be heard in this Court, the bankruptcy court granted the ACC's motion to intervene to assert the revocatory claim, except that the Court directed the ACC to delete McDermott International as a defendant. The bankruptcy court did not explicitly rule that the ACC stood in the shoes of the Debtor in asserting this action, leaving some confusion as to the status of the ACC's revocatory action and the Debtor's declaratory action. The bankruptcy court

3

then established a very aggressive schedule to resolve the
choice-of-law issue and the issue of whether the debtor was
solvent at the time of transfers.  In the meantime, this Court
held a hearing on the motion to withdraw the reference.
Resolution of this motion boils down to whether the ACC is
entitled to a jury trial on the fraudulent conveyance claim.
Because, after careful study, the Court has determined that
Seventh Amendment jury trial rights are not implicated here, the
motion to withdraw the reference is denied.

## II. DISCUSSION

### A.   Withdrawal of the Reference

The standard for when a district court may withdraw the
reference from a bankruptcy court is outlined in Title 28, United
States Code, Section 157(d).  Section 157(d) provides for both
mandatory and permissive withdrawal:

> The district court may withdraw, in whole or in part, any
> case or proceeding referred [to the bankruptcy court], on
> its own motion or on timely motion of any party, for cause
> shown.  The district court shall, on timely motion of a
> party, so withdraw a proceeding if the court determines that
> resolution of the proceeding requires consideration of both
> Title 11 and other laws of the United States regulating
> organizations or other activities affecting interstate
> commerce.

28 U.S.C § 157(d).

Courts generally interpret this provision restrictively,
granting mandatory withdrawal of the reference when the claim and
defense entail material and substantial consideration of non-

4

Bankruptcy Code federal law. *See, e.g., Lifemark Hosps. of La.,*
*Inc. v. Liljeberg Enters., Inc.*, 161 B.R. 21, 24 (E.D. La. 1993)
(withdrawing reference when case necessarily involved a
determination of antitrust claims); *U.S. Gypsum Co. v. Nat'l*
*Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992) (withdrawing
reference when case necessarily involved a determination of
patent claims); *In re Johns-Manville Corp.*, 63 B.R. 600, 603
(S.D.N.Y. 1986) (withdrawing reference when case necessarily
involved a determination of Comprehensive Environmental Response
Compensation and Liability Act issues); *In re White Motor Corp.*,
42 B.R. 693, 704 (N.D. Ohio 1984) (no withdrawal of reference
based on speculation about issues under Employee Retirement
Income Security Act and Internal Revenue Code which may or may
not be germane to the core proceeding). The ACC does not seek
mandatory withdrawal. Rather, it seeks permissive withdrawal
under 28 U.S.C. Section 157(d) "for cause shown."

### 1. Permissive Withdrawal

The Fifth Circuit has held that in determining whether to
withdraw the reference for cause shown, district courts should
consider whether the matter at issue is a core or a non-core
proceeding. *See Holland America Ins. Co. v. Succession of*
*Shepherd J. Roy*, 777 F.2d 992, 999 (5th Cir. 1985). *See also In*
*re Babcock & Wilcox Co.*, 2000 WL 422372, *3 (E.D. La. April 17,
2000). Additionally, courts should consider whether the

5

proceedings involve a jury demand and whether withdrawal would further the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtor's and creditors' resources, and expediting the bankruptcy process. *See id.*

### a. Nature of Proceeding

There is no question that a fraudulent conveyance action is a core proceeding. Section 157(b)(2)(H) of the Bankruptcy Code specifically provides that core proceedings include "proceedings to determine, avoid or recover fraudulent conveyances." 28 U.S.C. § 157(b)(2)(H); *see Carlton v. Baww, Inc.*, 751 F.2d 781, 787-88 (5th Cir. 1985) (A proceeding ... to void a fraudulent conveyance clearly 'arises under Title 11'"). Therefore, the Court finds this matter to be a core proceeding.

### b. Demand for a Jury Trial

The ACC asserts that it is entitled to a jury trial under *Granfinanciera v. Nordberg*, 492 U.S. 33 (1989), in which the Supreme Court held that a person who has not submitted a claim against a bankruptcy estate has a jury trial right under the Seventh Amendment when he is sued by a bankruptcy trustee to recover a fraudulent monetary transfer. The ACC further asserts that the inability of the bankruptcy court to hold a jury trial is a ground for a district court to withdraw the reference from a bankruptcy court. *See* 1 COLLIER ON BANKRUPTCY § 3.04[1][b] (15th ed.

1992).   Debtor and defendants argue that the ACC is not entitled to a jury trial based on three contentions: (1) the ACC is not the proper party to assert the right to a trial by jury; (2) the claim brought by ACC is equitable in nature; and (3) the ACC has submitted its claim to the equity jurisdiction of the bankruptcy court thereby converting the action to an equitable proceeding.

### 1) The Posture of the ACC

First, Debtor argues that under bankruptcy law, the fraudulent conveyance claim belongs to the debtor-in-possession, which has the same powers as a bankruptcy trustee.  *See* 11 U.S.C. § 1107(a) ("a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter."); *In re CompuAdd Corp.*, 137 F.3d 800, 802-03 (5th Cir. 1998).  Section 544(b)(1) of the Bankruptcy Code grants the trustee power to avoid a transfer by the debtor that is voidable under applicable law:

> [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable under section 502(e) of this title.

11 U.S.C. § 544(b)(1).  Nevertheless, the Fifth Circuit has recognized that in appropriate cases, a creditors' committee has standing to file suit on behalf of a debtor-in-possession or a trustee.  Specifically, the Fifth Circuit has held that a

creditor has standing to bring suit in place of the debtor-in-possession when: (1) the claim in question is colorable; (2) the debtor unjustifiably refused to pursue it; and (3) the creditor obtains leave of the court prior to instituting suit. *See Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 247 (5th Cir. 1988);[1] *see also In re Mortgage America*, 831 F.2d 97, 98 (5th Cir. 1987) (creditors' committee may, in some circumstances, have right to initiate avoidance action).

Here, the parties dispute whether the bankruptcy court allowed the ACC to proceed on behalf of the estate in this action. Since the bankruptcy court allowed the ACC to file a complaint-in-intervention as the "plaintiff-intervener," and the complaint asserts a revocatory action, a claim that belongs to the estate, it would appear that the bankruptcy court intended to

---

[1] Defendants argue that the Supreme Court's recent decision in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S. Ct. 1942 (2000), does not bode well for the ACC's authority to assert a fraudulent conveyance claim on behalf of the debtor's estate and calls *Louisiana World Exposition* into question. The Court disagrees. *Hartford Underwriters* held that the Bankruptcy Code does not provide an administrative claimant an *independent* right to recover the costs of preserving collateral of the debtor's estate under 11 U.S.C. § 506(c). The Court found that the statute authorized only a trustee to recover such costs. The Court specifically noted that it did not address the validity of the practice of allowing other interested parties to act in the trustee's place when the trustee refuses to bring an action the Code authorizes only the trustee to bring. The Court said that *Hartford* was not analogous because there the petitioner did not ask the trustee to pursue payment and did not seek permission from the bankruptcy court to assert the action in the trustee's place. *See id.* at 13 n.5, 120 S. Ct. 1951 n.5.

8

allow the ACC to proceed in place of the debtor-in-possession.
In any event, the Court believes that the *Louisiana World
Exposition* factors are clearly satisfied in this case.  As pled,
the claim is colorable.  Further, in November 2000 and April
2001, counsel for the ACC demanded that the Debtor obtain the
return of the assets in issue or institute legal action to obtain
their recovery.  (*See* ACC's Mem. Supp. Mot. to Withdraw Reference
Exs. A & C).  In response, the Debtor did not file a revocatory
action to secure the return of the assets but instead filed the
opposite, an action seeking a declaration of the Debtor's
solvency and that the transfers were not voidable.  The Court
finds that the Debtor's action constitutes an unjustifiable
refusal to seek the relief demanded.  Further, the Court finds
Debtor's arguments that it used its business judgment in deciding
to proceed as it did totally unpersuasive.  The Debtor has no
incentive to avoid the transfers it made itself to its parent
company; nor is it interested in probing the issue of its
solvency in 1998.  Further, its argument that its declaratory
action is somehow better for the estate than a "full blown"
avoidance action falls flat.  The Court fails to see how the
ACC's revocatory claim would be any more time consuming or
costly, and, if successful, it would significantly enlarge the
estate.  Further, Debtors threat that its affiliates may cut off
financial support if the ACC sues to revoke the transfers is just

that. If the affiliates' continued support is predicated on the Debtor's protection of them in a friend-of-the-family suit, then this only highlights the reason that the creditors should bring the action. In addition, the Debtor fails to explain how the ACC's suit would harm its parent's relationship with the U.S. Navy, while its own declaratory action would not, unless it knows in advance that it will be declared to have been solvent in 1998. In any event, the debtor is duty bound to maximize the value of the estate, not to advance the separate business interests of its parent. Finally, debtor's argument that the transfers may not have any real value is undermined by the extent of the resistance to returning them.

In *Louisiana World Exposition*, the Fifth Circuit said that the test for unjustified refusal is whether "the interests of creditors were left unprotected." *Louisiana World Exposition*, 858 F.2d at 252 n.20. Since the debtor's suit was designed to thwart a revocatory claim rather than to assert one, and the cause of action could be worth $622 million or more to the estate, the Court finds the debtor's refusal to assert it unjustified. Accordingly, the ACC is entitled to assert a revocatory action on behalf of the debtor's estate, and the Court rejects debtor's assertion that the ACC is not entitled to assert whatever jury trial rights attach to this claim.

10

### 2) Legal v. Equitable Proceeding

The debtor's next contention is that regardless of who asserts the fraudulent conveyance claim, it is equitable in nature and not subject to a jury trial. In *Granfinanciera v. Nordberg*, 492 U.S. 33, 42, 109 S. Ct. 2782, 2790 (1989), the United States Supreme Court set out a three-part test to determine whether a party is entitled to a jury trial. First, courts must determine if the action is of the type that would have been brought at law in eighteenth century England before the merger of law and equity. *See id.* Next, courts examine the remedy sought and determine whether it is legal or equitable in nature. *See id.* The inquiry into the nature of the remedy is more important than the analysis of the nature of the claim. *Id.* If, on balance, these two factors indicate that a jury trial is called for under the Seventh Amendment, the court must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder. *See id.*

*Granfinanciera* dealt with a fraudulent conveyance claim involving transfers of specific and determinate amounts of money. *See id.* at 36, 109 S. Ct. 2786. The Court found that such an action would have been an action at law in eighteenth century England. *See id.* Notably, the Court distinguished actions to recover fraudulent transfers of tangible property from those to

11

recover intangible property:

> If the subject matter is a chattel, and is still in the
> grantee's possession, an action in trover or replevin would
> be the trustee's remedy; and if the fraudulent transfer was
> of cash, the trustee's action would be for money had and
> received.  Such actions at law are as available to the
> trustee today as they were in the English courts of long
> ago.  *If, on the other hand, the subject matter is land or
> an intangible, or the trustee needs equitable aid for an
> accounting or the like, he may invoke the equitable process,
> and that also is beyond dispute.*

*Id.* at 44, 109 S. Ct. at 2791. (citing 1 G. GLENN, FRAUDULENT

CONVEYANCES AND PREFERENCES § 98, pp. 183-184 (rev. ed. 1940))

(*emphasis added*).  Thus, whether an action for fraudulent

conveyance requires a jury trial depends upon the subject matter

of the action.  *See In re Term Industries, Inc.*, 181 B.R. 31, 32

(Bankr. S.D.N.Y. 1995).  An intangible is defined as "such

property as has no intrinsic and marketable value, but is merely

the representative or evidence of value, such as a certificate of

stock."  *Id.* at 33 (quoting BLACK'S LAW DICTIONARY (6th ed. 1991)).

In *In re Term Industries*, the court found that a creditors'

fraudulent conveyance action was equitable because "its subject

matter [was] shares of stock, an intangible."  *See id.* at 33; *see

also Bennett v. Genoa AG Center, Inc.*, 154 B.R. 126, 136 (Bankr.

N.D.N.Y. 1992) (no right to jury when relief sought was the

recission of foreclosure sale and reconveyance of property); *In

re Stocks*, 137 B.R. 516, 522 (Bankr. N.D. Fl. 1991) (action was

equitable when court was asked to determine whether forty percent

12

of the interest in plaintiff was property of the bankruptcy estate and to void the transfer of interest from plaintiff).

The ACC seeks to avoid the transfer of assets that are intangible in nature.  The assets at issue are the stock of B&W's former subsidiaries (BWX Technologies, Hudson Products Corporation, McDermott Technologies, Inc. and B&W Tracy Power) and a promissory note from BWICO.  Stock and notes are intangibles.  Hence, this is the type of fraudulent conveyance action that would have required a court of equity in eighteenth century England.

Further, the relief sought is equitable.  The ACC seeks an order returning intangible assets.  (*See* ACC's Mem. Supp. Mot. to Withdraw Reference Ex. A.)  In seeking to have the Court order BWICO to divest itself of the stock of the former B&W operating subsidiaries and of the note, the ACC seeks relief in the nature of recission and/or divestiture, both of which are equitable remedies.  *See United States v. DuPont de Nemours Co.*, 366 U.S. 316, 326, 81 S. Ct. 1243, 1250 (1961) ("Divestiture itself is an equitable remedy."); *Kline Hotel Partners v. Aircoa Equity Interests, Inc.*, 729 F. Supp. 740, 744 (D. Col. 1990) (*citing Pioneer Prop., Inc. v. Martin*, 776 F.2d 888, 892 (10th Cir. 1985); *Rachbach v. Cogswell*, 547 F.2d 502, 505 (10th Cir. 1976); *Royal Am. Managers, Inc. v. I.R.C. Holding Corp.*, 885 F.2d 1011,

13

1019 n.4 (2d Cir. 1989); *Arber v. Essex Wire Corp.*, 490 F.2d 414,

421 (6th Cir.), *cert. denied*, 419 U.S. 830, 95 S. Ct. 53 (1974);

*Dollar Sys., Inc. v. Avcar Leasing Sys. Inc.*, 890 F.2d 165 (9th

Cir. 1989)) (recognizing that rescission is equitable in nature

and no right to a jury attaches to such actions); *see also In re*

*Term Industries*, 181 B.R. at 33 (action seeking avoidance of

stock transfers; no jury trial).  Further, the ACC's request for

alternative monetary relief in an amount equal to the value of

the assets does not convert the claim to one in law.  *See*

*Resolution Trust Co. v. Pasquariello*, 16 F.3d 525, 528-30 (3d

Cir. 1994) (refusing mandamus on denial of jury trial when

plaintiffs sought to recover real property or, alternatively, the

value of the property); *see also Whitlock v. Hause*, 694 F.2d 861,

865 (1st Cir. 1982) (finding no jury trial right when trustee

sought to avoid conveyance and reconvey property or alternatively

to order debtor to pay damages).  Unlike *Granfinanciera*, this

case does not involve a determinate sum of money, and the ACC

concedes that it does not know the value of the intangible

assets.  As in *Whitlock v. Hause*, 694 F.2d 861 (1st Cir. 1982),

in which the First Circuit found no jury trial right, the ACC's

claim is for the assets themselves, and its request for their

monetary value would "take effect only if the earlier requested

equitable relief of reconveyance was unavailable."  *Whitlock*, 694

F.2d at 865.  The Court in *Whitlock* acknowledged that the Supreme

14

Court in *Dairy Queen v. Wood*, 369 U.S. 469, 82 S. Ct. 894 (1962),
rejected the view that "the right to trial by jury may be lost as
to legal issues where those issues are 'incidental' to equitable
issues." *Id.* at 866.  But the *Whitlock* court noted that the
*Dairy Queen* statement applied to a claim to which a jury trial
right traditionally applied and did not refer to mere alternative
prayers for relief arising from a wholly equitable framework.
*See id.*  Further, the Fifth Circuit has recognized that there may
be situations in which awards of monetary relief are equitable
remedies.  *See In re Jensen*, 946 F.2d 369, 372 (5th Cir. 1991).
Finally, in *Granfinanciera*, the Supreme Court stated that courts
were to determine whether "on balance" the nature of the claim
and the nature of the relief sought pointed to a jury trial.  On
balance, this Court finds that these factors do not indicate that
jury trial rights are implicated here.

### 3) Waiver of Jury Trial Right or Conversion of the Claim

Lastly, the debtor and defendants argue that even if the ACC
were entitled to a jury trial on the fraudulent transfer claim,
it submitted to the equitable jurisdiction of the bankruptcy
court by filing claims against the estate in the bankruptcy.[2]

---

[2] The debtor and defendants also argue that the ACC waived
its jury trial right by filing an intervention in the adversary
proceeding before the bankruptcy court, rather than filing a
lawsuit of its own in state court or in district court.  The

15

The Court finds that in the peculiar posture of this case, the ACC has submitted to the equity jurisdiction of the bankruptcy court and that the claim is integral to the restructuring of debtor-creditor relations.  The context of this case is totally different from *Granfinanciera*, on which the ACC relies.  *Granfinanciera* involved a fraudulent conveyance action by a bankruptcy trustee against a third party which had not asserted a claim against the debtor's estate.  At the time the action was brought, the debtor's plan of reorganization had already been approved by the bankruptcy court.  As part of the plan, the trustee was vested with authority to pursue causes of action for fraudulent conveyances.  The Court held that since the third parties had not filed claims against the estate, the trustee's fraudulent conveyance action did not arise "as part of the process of allowance and disallowance of claims," nor was it "integral to the restructuring of debtor-creditor relations." 492 U.S. at 58, 109 S. Ct. at 2799.  Indeed, the Court noted the adventitious relationship between the fraudulent conveyance action and the reorganization proceeding, pointing out that the suit had not been filed until well after the plan had been confirmed and "the debtor's assets and business had been

_____

Court finds this waiver argument unpersuasive.  The ACC simultaneously filed a motion to withdraw the reference on its complaint-in-intervention, which asserted a jury demand.  This conduct did not amount to a waiver.

liquidated." *Id.* at 60 n.15, 109 S. Ct. at 2800 n.15.  The bankruptcy process was essentially over and done with.

The claim at issue does not fall under the *Granfinanciera* paradigm.  This bankruptcy arises under a unique Bankruptcy Code provision that, upon confirmation of a plan, permits the Debtor to obtain an injunction channeling present and future asbestos claims to a trust and enjoining litigation of claims to be paid by the trust.  *See* 11 U.S.C. § 524(g).  The creditors who are asserting the fraudulent conveyance claim on behalf of the estate have filed thousands and will file thousands more asbestos-related claims against the Debtor's estate.  *Cf. Langenkamp v. Culp*, 498 U.S. 42 (1990) (no jury trial right when creditor against whom fraudulent conveyance claim is asserted has filed a claim against the estate).  Further, this dispute is not adventitious to the reorganization.  There is no confirmed plan of reorganization yet, and there likely will not be one until this issue is resolved.  Moreover, the real conflict in the fraudulent conveyance action is between the ACC and the debtor and its affiliates, and it essentially involves how much money will be available to fund the trust.  The debtor-in-possession does not want the assets in issue returned to the estate and subjected to the asbestos claims.  Unlike *Granfinanciera*, this issue is integral to the restructuring of debtor-creditor relations.  Furthermore, the key issue in the fraudulent

17

conveyance action, whether B&W was insolvent at the time of the transfers, involves valuing all of the then-asserted, as well as the future, asbestos personal injury claims. This same issue, *i.e.*, the estimated value of the asbestos claims, is critical to the reorganization proceeding, albeit as of a later date. Indeed, the method by which the claims are valued is one of the most contentious issues in the reorganization. This Court therefore finds that the ACC submitted itself to the equitable jurisdiction of the bankruptcy court because it represents claimants against the estate. The Court further finds that the issues in the fraudulent conveyance action are integral to the restructuring of debtor-creditor relations. The Court further finds that debtor's affiliates have submitted themselves to the equitable jurisdiction of the bankruptcy court because the bankruptcy court granted them the benefit of the automatic stay, and they may be entitled to benefit from an injunction against future asbestos litigation if a plan is confirmed.

Finally, *In re Jensen*, relied on by the ACC, is no obstacle to the Court's conclusion that a jury trial is not called for here. *Jensen* did not involve an ongoing reorganization but arose in the context of a confirmed and consummated plan of reorganization. The plan gave the debtor-in-possession authority to prosecute existing claims of the estate. The debtors sued third parties in state court on various tort theories. The Fifth

18

Circuit held that the debtors had a right to a jury trial on the state law claims. In that case, the debtor's claims were clearly adventitious to the reorganization, because a plan had already been confirmed and consummated. In contrast to the ACC's claim, the dispute was not between creditors and the debtor and its affiliates over how much money the creditors would get to divide up. It therefore was not integral to the restructuring of debtor-creditor relations. *Jensen* simply involved a suit on a prepetition tort claim against a third party who was not a creditor of the estate.

### 4) Other Factors

The Court finds that withdrawal of the reference would not further the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering economical use of debtor's resources and expediting the bankruptcy process. This fraudulent conveyance action is the stock-in-trade of the bankruptcy court, which is intimately familiar with issues involved in this complex bankruptcy. The bankruptcy court has put the case on a schedule to resolve the issue expeditiously. Withdrawal of the reference is simply not warranted here.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES ACC's motion to withdraw the reference from the bankruptcy court.

New Orleans, Louisiana, this 25 day of June, 2001.


SARAH S. VANCE
**UNITED STATES DISTRICT JUDGE**

20

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (RJN) |
| | ) | Jointly Administered |
| Debtors. | ) | |

## <u>AFFIDAVIT OF SERVICE</u>

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | )SS |
| COUNTY OF NEW CASTLE | ) |

      Patricia E. Cuniff, being duly sworn according to law, deposes and says that she is

employed by the law firm of Pachulski, Stang, Ziehl, Young & Jones P.C., co-counsel for the

Debtors, in the above-captioned action, and that on the 11th day of July, 2001 she caused a copy

of the following document(s) to be served upon the attached service list(s) in the manner

indicated:

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

1.    **Debtors' Opposition to the Joint Motion by the Asbestos Property Damage and Personal Injury Committees for Authority to Prosecute Fraudulent Transfer Claims.**

Dated: July 11, 2001

_Patricia E. Cuniff_

Patricia E. Cuniff

Sworn to and subscribed before
me this 11th day of July, 2001

_Rita Marie Olivere_

Notary Public
My Commission Expires:  _3-15-03_

W. R. Grace 2002 Service List
Case No. 01-1139 (RJN)
Doc. No. 22588
July 11, 2001
18 – Hand Delivery
07 – Overnight Delivery
131 – First Class Mail

(Counsel to Debtors and Debtors in
Possession)
Laura Davis Jones, Esquire
David Carickhoff, Esquire
Pachulski, Stang, Ziehl, Young & Jones
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

(Counsel to Debtors and Debtors in
Possession)
Hamid R. Rafatjoo, Esquire
Pachulski, Stang, Ziehl, Young & Jones
10100 Santa Monica Boulevard, Suite 1100
Los Angeles, CA 90067-4100

***Hand Delivery***
(Copy Service)
Parcels, Inc.
Vito I. DiMaio
10th & King Streets
Wilmington, DE  19801

***Hand Delivery***
(Local Counsel to DIP Lender)
Steven M. Yoder, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899

***Hand Delivery***
(Local Counsel to Asbestos Claimants)
Matthew G. Zaleski, III, Esquire
Campbell & Levine, LLC
1201 N. Market Street
Chase Manhatten Centre, 15th Floor
Wilmington, DE  19801

***Hand Delivery***
William H. Sudell, Jr., Esquire
Eric D. Schwartz, Esquire
Morris, Nichols Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899

***Hand Delivery***
(Counsel for The Chase Manhattan Bank)
Mark D. Collins, Esquire
Deborah E. Spivack, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE  19899

***Hand Delivery***
Jeffrey C. Wisler, Esquire
Michelle McMahon, Esquire
Connolly Bove Lodge & Hutz LLP
1220 Market Street, 10th Floor
Wilmington, DE  19899

***Hand Delivery***
(Counsel for Ingersoll-Rand Fluid Products)
Francis A. Monaco, Jr., Esquire
Walsh, Monzack and Monaco, P.A.
1201 N. Orange Street, Suite 400
P.O. Box 2031
Wilmington, DE  19801

***Hand Delivery***
(Counsel for Ingersoll-Rand Fluid Products)
Frederick B. Rosner, Esquire
Walsh, Monzack and Monaco, P.A.
1201 N. Orange Street, Suite 400
Wilmington, DE  19801

**Hand Delivery**
(Counsel for Property Damage Claimants)
Michael B. Joseph, Esquire
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE  19899

**Hand Delivery**
Bruce E. Jameson, Esquire
Prickett, Jones & Elliott
1310 King Street
P.O. Box 1328
Wilmington, DE  19899

**Hand Delivery**
Mark S. Chehi
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE  19899-0636

**Hand Delivery**
Joseph Grey, Esquire
Stevens & Lee
300 Delaware Avenue, Suite 800
Wilmington, DE  19801

**Hand Delivery**
(Counsel to Official Committee of
Unsecured Creditors)
Michael R. Lastowski, Esquire
Duane, Morris & Heckscher LLP
1100 North Market Street, Suite 1200
Wilmington, DE  19801-1246

**Hand Delivery**
Laurie Selber Silverstein, Esquire
Monica Leigh Loftin, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19899

**Hand Delivery**
Mary M. MaloneyHuss
Wolf, Block, Schorr and Solis-Cohen LLP
920 King Street, Suite 300
One Rodney Square
Wilmington, DE  19801

**Hand Delivery**
Selinda A. Melnik, Esquire
Smith, Katzenstein & Furlow LLP
800 Delaware Avenue
P.O. Box 410
Wilmington, DE  19899

**Hand Delivery**
Curtis Crowther, Esquire
(Counsel for Century Indemnity Company)
White and Williams LLP
824 North Market Street, Suite 902
P.O. Box 709
Wilmington, DE  19801

**Hand Delivery**
Klett Rooney Lieber & Schorling
(Counsel for Wachovia Bank, N.A.)
Adam G. Landis, Esquire
1000 West Street, Suite 1410
Wilmington, DE  19801

**Overnight Delivery**
(Counsel to Debtor)
James H.M. Sprayregen, Esquire
James Kapp, III, Esquire
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL  60601

**Overnight Delivery**
(United States Trustee)
Frank J. Perch, Esquire
Office of the United States Trustee
601 Walnut Street, Curtis Center,
Suite 950 West
Philadelphia, PA  19106

**Overnight Delivery**
(Canadian counsel for Debtor)
Derrick Tay, Esquire
Meighen Demers
Suite 1100, Box 11
Merrill Lynch Canada Tower
200 King Street West
Toronto
Ontario
Canada M5H 3T4

**Overnight Delivery**
(W. R. Grace & Co.)
David B. Siegel
W.R. Grace and Co.
7500 Grace Drive
Columbia, MD 21044

**Overnight Delivery**
(Official Committee of Personal Injury
Claimants)
Elihu Inselbuch, Esquire
Rita Tobin, Esquire
Caplin & Drysdale, Chartered
399 Park Avenue, 36th Floor
New York, NY 10022

**Overnight Delivery**
(Official Committee of Unsecured
Creditors)
Lewis Kruger, Esquire
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982

**Overnight Delivery**
(Official Committee of Property Damage
Claimants)
Scott L. Baena, Esquire
Member
Bilzin Sumberg Dunn Baena Price &
Axelrod LLP
First Union Financial Center
200 South Biscayne Blvd, Suite 2500
Miami, FL 33131

**First Class Mail**
(Counsel to Sealed Air Corporation)
D. J. Baker, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

**First Class Mail**
(Counsel to DIP Lender)
J. Douglas Bacon, Esquire
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL 60606

**First Class Mail**
(Counsel to Asbestos Claimants)
Nancy Worth Davis, Esquire
Ness, Motley, Loadhold, Richardson &
Poole
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465

**First Class Mail**
Todd Meyer, Esquire
Kilpatrick Stockton
1100 Peachtree Street
Atlanta, GA 30309

**First Class Mail**
Securities & Exchange Commission
15th & Pennsylvania Ave. N.W.
Washington, DC 20020

**First Class Mail**
District Director
IRS
409 Silverside Road
Wilmington, DE 19809

**First Class Mail**
Securities & Exchange Commission
Atlanta Regional Office
Branch/Reorganization
3475 Lenox Road, NE, Suite 100
Atlanta, GA 30326-1232

*First Class Mail*
Secretary of Treasurer
P.O. Box 7040
Dover, DE  19903

*First Class Mail*
Secretary of State
Division of Corporations
Franchise Tax
P.O. Box 7040
Dover, DE  19903

*First Class Mail*
James D. Freeman, Esquire
U.S. Department of Justice
Environmental Enforcement Section
999 18th Street
Suite 945-North Tower
Denver, CO  80202

*First Class Mail*
Jon L. Heberling, Esquire
McGarvey, Heberling, Sullivan &
McGarvey PC
745 South Main Street
Kalispel, MT  59901

*First Class Mail*
Patrick L. Hughes, Esquire
Haynes & Boone LLP
1000 Louisiana Street, Suite 4300
Houston, TX  77002-5012

*First Class Mail*
David S. Heller, Esquire
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL  60606

*First Class Mail*
Charles E. Boulbol, Esquire
26 Broadway, 17th Floor
New York, NY  10004

*First Class Mail*
Ira S. Greene, Esquire
Squadron, Ellenoff, Plesent & Sheinfeld,
LLP
551 Fifth Avenue
New York, NY  10176

*First Class Mail*
James A. Sylvester, Esquire
Intercat, Inc.
104 Union Avenue
Manasquan, NJ  08736

*First Class Mail*
Steven J. Johnson, Esquire
Gibson, Dunn & Crutcher LLP
1530 Page Mill Road
Palo Alto, CA  94304-1125

*First Class Mail*
Charlotte Klenke, Esquire
Schneider National, Inc.
P.O. Box 2545
3101 S. Packerland
Green Bay, WI  54306

*First Class Mail*
David S. Rosenbloom, Esquire
Jeffrey E. Stone, Esquire
Lewis S. Rosenbloom, Esquire
McDermott, Will & Emery
227 West Monroe Street
Chicago, IL  60606-5096

*First Class Mail*
Brad Rogers, Esquire
Office of the General Counsel
Pension Benefit Guaranty Corp
1200 K. Street, N. W.
Washington, D.C.  20005-4026

*First Class Mail*
Pamela Zilly
Richard Shinder
David Blechman
Michael Alexander
The Blackstone Group
345 Park Avenue
New York, NY  10154

*First Class Mail*
Josiah Rotenberg
Lazard Freres & Co. LLC
30 Rockefeller Plaza, 60th
New York, NY  10020

*First Class Mail*
(Counsel for The Chase Manhattan)
Stephen H. Case, Esquire
Nancy L. Lazar, Esquire
David D. Tawil, Esquire
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY  10017

*First Class Mail*
Jan M. Hayden
William H. Patrick
Heller, Draper, Hayden, Patrick & Horn,
L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA  70130-6103

*First Class Mail*
Joseph F. Rice
Ness, Motley, Loadholt, Richardson &
Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

*First Class Mail*
Nancy Worth Davis
Ness, Motley, Loadholt, Richardson &
Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

*First Class Mail*
(Counsel for Asbestos Claimants)
Steven T. Baron, Esquire
Member
Silber Pearlman, LLP
2711 North Haskell Avenue, 5th Floor, LLP
Dallas, TX  75204

*First Class Mail*
Bankruptcy Administration
IOS Capital, Inc.
1738 Bass Road
P.O. Box 13708
Macon, GA  31208-3708

*First Class Mail*
(Attorneys for PPG Industries, Inc.)
W.J. Winterstein, Jr., Esquire
John J. Winter, Esquire
William M. Aukamp, Esquire
Eleven Penn Center, 29th Floor
1835 Market Street
Philadelphia, PA  19103

*First Class Mail*
R. Scott Williams
PMG Capital Corp.
Four Falls Corporate Center
West Conshohocken, PA  19428-2961

*First Class Mail*
Alan R. Brayton, Esquire
Brayton & Purcell
222 Rush Landing Road
Novato, CA  94945

*First Class Mail*
Jonathan W. Young
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive, Suite 3000
Chicago, IL  60606-1229

*First Class Mail*
Russell W. Budd
Alan B. Rich
Baron & Budd, P.C.
3102 Oak Lawn Avenue, P.O. Box 8705
Dallas, TX  75219

*First Class Mail*
Shelby A. Jordan, Esquire
Nathaniel Peter Holzer. Esquire
Jordan, Hyden, Womble & Culbreth, P.C.
500 N. Shoreline Blvd., Suite 900
Corpus Christi, TX  78471

*First Class Mail*
Courtney M. Labson, Esquire
The Mills Corporation
Legal Department
1300 Wilson Boulevard, Suite 400
Arlington, VA  22209

*First Class Mail*
T. Kellan Grant
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive, Suite 3000
Chicago, IL  60606-1229

*First Class Mail*
Cindy Schultz
Ingersoll-Rand Fluid Products
One Aro Center
P.O. Box 151
Bryan, OH  43506

*First Class Mail*
Alan Kolod, Esquire
Moses & Singer LLP
1301 Avenue of the Americas
40th Floor
New York, NY  10019-6076

*First Class Mail*
Mr. Thomas Moskie
Bankers Trust Company
Four Albany Street
Fourth Floor
New York, NY  10006

*First Class Mail*
John P. Dillman, Esquire
Linebarger Heard Goggan Blair
Graham Peña & Sampson, LLP
P.O. Box 3064
Houston, TX  77253-3064

*First Class Mail*
Charles E. Gibson, III
Attorney at Law
620 North Street, Suite 100
Jackson, MS  39202

*First Class Mail*
Paul M. Baisier, Esquire
SEYFARTH SHAW
1545 Peachtree Street
Suite 700
Atlanta, Georgia  30309

*First Class Mail*
Kevin D. McDonald
Wilshire Scott & Dyer, P.C.
One Houston Center
1221 McKinney, Suite 4550
Houston, Texas  77010

*First Class Mail*
Christopher Beard, Esquire
Beard & Beard
306 N. Market Street
Frederick, MD  21701

*First Class Mail*
Bernice Conn, Esquire
Robins, Kaplan, Miller & Ciresi LLP
2049 Century Park East, Suite 3700
Los Angeles, CA  90067

*First Class Mail*
Steven R. Schlesinger, Esquire
Jaspan Schlesinger Hoffman LLP
300 Garden City Plaza
Garden City, NY  11530

*First Class Mail*
Steven J. Kherkher, Esquire
Laurence G. Tien, Esquire
Williams Bailey Law Firm, L.L.P.
8441 Gulf Freeway, Suite #600
Houston, Texas  77017

*First Class Mail*
Kimberly W. Osenbaugh
Preston Gates & Ellis LLP
701-5th Avenue
Suite 5000
Seattle, WA  98104-7078

*First Class Mail*
Lewis T. LeClair, Esquire
McKool Smith
300 Crescent Court, Suite 1500
Dallas, Texas  75201

*First Class Mail*
Delta Chemical Corporation
2601 Cannery Avenue
Baltimore, MD  21226-1595

*First Class Mail*
Steven T. Hoort, Esquire
Ropes & Gray
One International Place
Boston, Massachusetts  02110-2624

*First Class Mail*
Peter Van N. Lockwood, Esquire
Julie W. Davis, Esquire
Trevor W. Swett, III, Esquire
Nathan D. Finch, Esquire
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC  20005

*First Class Mail*
Peter A. Chapman
24 Perdicaris Place
Trenton, NJ  08618

*First Class Mail*
Paul M. Matheny
The Law Offices of Peter G. Angelos, P.C.
5905 Harford Rd.
Baltimore, MD  21214

*First Class Mail*
Michael J. Urbis
Jordan, Hyden, Womble & Culbreth, P.C.
2390 Central Blvd, Suite G
Brownsville, TX  78520

*First Class Mail*
Mary A. Coventry
Sealed Air Corporation
Park 80 East
Saddle Brook, New Jersey  07663

*First Class Mail*
Attn: Meridee Moore and Kirsten Lynch
Farallon Capital Management, L.L.C.
One Maritime Plaza
Suite 1325
San Francisco, California  94111

*First Class Mail*
John M. Klamann
Klamann & Hubbard
7101 College Blvd., Suite 120
Overland Park, KS  66210

*First Class Mail*
Joseph T. Kremer, Esquire
Lipsiptz, Green, Fahringer, Roll, Salisbury
& Cambria, LLP
42 Delaware Avenue, Suite 300
Buffalo, NY  14202

*First Class Mail*
Paul D. Henderson, Esquire
Dies, Dies & Henderson
1009 W. Green Avenue
Orange, TX  77630

*First Class Mail*
Robert Jacobs, Esquire
Maria Rosoff Eskin
Jacobs & Crumplar, P.A.
2 East 7th Street
P.O. Box 1271
Wilmington, DE  19899

*First Class Mail*
Elizabeth S. Kardos, Esquire
Gibbons, Del Deo, Dolan Griffinger &
Vecchione, PC
One Riverfront Plaza
Newark, NJ  07102-5497

*First Class Mail*
Thomas J. Noonan, Jr.
c/o R& S Liquidation Company
5 Lyons Mall PMB #530
Basking Ridge, NJ  07920-1928

*First Class Mail*
)
Harry Lee, Esquire
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, DC  20036

*First Class Mail*
(Counsel for Public Service Electric and Gas
Company)
William E. Frese, Esquire
Attn:  Sheree L. Kelly, Esquire
80 Park Plaza, T5D
P.O. Box 570
Newark, NJ  07101

*First Class Mail*
(Counsel to Official Committee of
Unsecured Creditors)
William S. Katchen, Esquire
Duane, Morris & Heckscher LLP
1 Riverfront Plaza, 2nd Floor
Newark, NJ  07102

*First Class Mail*
(Tennessee Department of Environment and
Conservation – Superfund)
Paul G. Sumers, Esquire
TN Attorney General's Office, Bankr. Unit
P.O. Box 20207
Nashville, TN  37202-0207

*First Class Mail*
(Counsel for numerous asbestos claimants)
Damon J. Chargois, Esquire
Foster & Sear, L.L.P.
360 Place Office Park
1201 N. Watson Road, Suite 145
Arlington, TX  76006

*First Class Mail*
(Counsel for Berry & Berry)
C. Randall Bupp, Esquire
Plastiras & Terrizzi
24 Professional Center Parkway
Suite 150
San Rafael, CA  94903

*First Class Mail*
Anton Volovsek
Rt2 – Box 200 #42
Kamiah, Idah  83536-9229

*First Class Mail*
Peter S. Goodman, Esquire
Andrews & Kurth LLP
805 Third Avenue
New York, New York  10022

*First Class Mail*
Jonathan H. Alden, Esquire
Assistant General Counsel
3900 Commonwealth Boulevard, MS 35
Tallahassee, Floria  32399-3000

*First Class Mail*
Credit Lyonnais
1301 Avenue of the Americas
New York, New York  10019-0602

*First Class Mail*
State Library of Ohio
c/o Michelle T. Sutter
Revenue Recovery
101 E. Town Street, Second Floor
Columbus, OH  43215

*First Class Mail*
Rosa Dominy
Bankruptcy Administration
IOS Capital, Inc.
1738 Bass Road
P.O. Box 13708
Macon, GA  31208-3708

*First Class Mail*
Robert Jacobs, Esquire
Jacobs & Crumplar, P.A.
2 East 7th Street
P.O. Box 1271
Wilmington, DE  19899

*First Class Mail*
Greif Bros. Corp.
250 East Wilson Bridge Rd.
Suite 175
Worthington, OH  43085-2323

*First Class Mail*
(Counsel for SAP America, Inc.)
Stephanie Nolan Deviney
Brown & Connery, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ  08108

*First Class Mail*
Barbara M. Cook, County Solicitor
Katherine L. Taylor, Senior Assistant
County Solicitor
Howard County Office of Law
George Howard Building
3430 Courthouse Drive
Ellicott City, Maryland  21043

*First Class Mail*
Danice Sims
P.O. Box 66658
Baton Rouge, Louisiana  70896

*First Class Mail*
M. Diane Jasinski, Esquire
Michael D. Hess
Corporation Counsel of the City of New
York
100 Church Street, Room 6-127
New York, New York  10007

*First Class Mail*
Janet Napolitano
Robert R. Hall
Russell W. Savory
1275 West Washington Street
Phoenix, Arizona  85007-1278

*First Class Mail*
Russell W. Savory
Gotten, Wilson & Savory, PLLC
200 Jefferson Avenue, Suite 900
Memphis, Tennessee  38103

*First Class Mail*
Credit Manager
Belz Enterprises
100 Peabody Place, Suite 1400
Memphis, Tennessee  38103

*First Class Mail*
James P. Ruggeri
Scott A. Shail
Hogan & Harton L.L.P.
555 Thirteenth Street,.N.W.
Washington, D.C.  20004-1109

*First Class Mail*
Steven R. Bourne, Esquire
Nutter, McClennen & Fish, LLP
One International Place
Boston, MA  02110-2699

*First Class Mail*
Judy D. Thompson, Esquire
S. Andrew Jurs, Esquire
Poyner & Spruill, L.L.P.
100 North Tryon Street, Suite 4000
Charlotte, North Carolina  28202-4010

*First Class Mail*
Daniel H. Slate, Esquire
Hughes Hubbard & Reed LLP
350 South Grand Avenue
Los Angeles, CA  90071-3442

*First Class Mail*
Andrea L. Hazzard, Esquire
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY  10004-1482

*First Class Mail*
Mr. James A. Bane
KMCC 204029
P.O. Box 710
Keen Mountain, VA  24624

*First Class Mail*
Authur Stein, Esquire
1041 W. Lacey Road
P.O. Box 1070
Forked River, NJ  08731-6070

*First Class Mail*
Robert H. Rosenbaum, Esquire
M. Evan Meyers, Esquire
Meyers, Rodbell & Rosenbaum, P.A.
Berkshire Building
6801 Kenilworth Avenue, Suite 400
Riverdale, Maryland 20737-1385

*First Class Mail*
Maggie De La Rosa
Provost * Umphrey
Law Firm, L.L.P.
490 Park Street
Beaumont, Texas  77701

*First Class Mail*
Anne Marie P. Kelley, Esquire
Dilworth Paxson, LLP
LibertyView – Suite 700
457 Haddonfield Road
P.O. Box 2570
Cherry Hill, NJ  08034

*First Class Mail*
Richard M. Meth, Esquire
Herrick, Feinstein LLP
2 Penn Plaza, 11th Floor
Newark, New Jersey  07105

*First Class Mail*
Kevin James
Deputy Attorney General
1515 Clay Street, 20th Floor
Oakland, CA  94612-1413

*First Class Mail*
Dorine Vork, Esquire
Stibbe, P.C.
350 Park Avenue
New York, New York  10022

*First Class Mail*
Suexirda Prayaga
7365 MacLeod Lane
Ofallon, Missouri  63366

*First Class Mail*
Bart Hartman
Treasurer – Tax Collector
Attn: Elizabeth Molina
1600 Pacific Highway, Room 162
San Diego, CA  92101

*First Class Mail*
Shelley Bethea Gillette & Clark
3850 E. Baseline Road, Suite 125
Mesa, Arizona  85206

*First Class Mail*
David Aelvoet, Esquire
Linebargerheard Goggan Blair
Graham Pena & Sampson LLP
1000 Tower Life Building
San Antonio, TX  78205

*First Class Mail*
Robert Cimino, Esquire
Suffolk County Attorney
Attn: Diane Leonardo Beckmann, Asst.
County
H. Lee Dennison Building
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, NY  11788-0099

*First Class Mail*
David Balsley, Jr.
535 Smithfield Street, Suite 619
Pittsburg, PA  15222-2302

*First Class Mail*
Robert T. Aulgur, Jr., Esquire
P.O. Box 617
Odessa, DE  19730
(Attorney for Toyota Motor Credit)

*First Class Mail*
James S. Carr, Esquire
Christena A. Lambrianakos, Esquire
101 Park Avenue
New York, NY  10178
(Counsel for Delco Development Company)

*First Class Mail*
Michael T. Kay, Esquire
Nancy Draves, Esquire
The Dow Chemical Company
2030 Dow Center
Midland, MI  48674
(Counsel for Dow Chemical Company,
Hampshire Chemical Corporation and Union
Carbide Corporation)

*First Class Mail*
Anne Marie P. Kelley, Esquire
Dilworth Paxson, LLP
Liberty View – Suite 700
457 Haddonfield Road
Cherry Hill, New Jersey  08002

*First Class Mail*
Ronald S. Beacher, Esquire
Pitney, Hardin, Kipp & Szuch LLP
711 Third Avenue, 20th Floor
New York, New York  10017-4014
(Attorneys for General Electric Capital
Corporation)

*First Class Mail*
Attn: Diane Stewart
Peoples First Community Bank
P.O. Box 59950
Panama City, Florida  32412-0950

*First Class Mail*
Michael B. Willey, Esquire
Legal Services, 27th Floor
312 8th Avenue North
Nashville, Tennessee  37243
(Counsel for Commissioner of Revenue)

*First Class Mail*
Jeffrey L. Glatzer, Esquire
Anderson, Kill & Olick, P.C.
1251 Avenue of the Americas
New York, New York  10020-1182

*First Class Mail*
Thomas V. Askounis, Esquire
Askounis & Borst, P.C.
303 East Wacker Drive
Suite 1000
Chicago, IL 60601

*First Class Mail*
Attn: Ted Weschler
Peninsula Capital Advisors, L.L.C.
404 East Main Street
Second Floor
Charlottesville, VA 22902

*First Class Mail*
E. Katherine Wells, Esquire
South Carolina Department of Health and
Environmental Control
2600 Bull Street
Columbia, South Carolina 29201-1708

*First Class Mail*
Jeffrey Kaufman, Esquire
Gerald F. Ellesdorfer, Esquire
Kaufman & Logan LLP
111 Pine Street, Suite 1300
San Francisco, CA 94111

*First Class Mail*
Michael H. Pinkerson, Esquire
James M. Garner, Esquire
Sher Garner Cahill Richter Klein McAlister
& Hilbert, L.L.C.
909 Poydras Street, Suite 2800
New Orleans, LA 70112

*First Class Mail*
William H. Johnson, Esquire
Norfolk Southern Corporation
Law Department
Three Commercial Place
Norfolk, VA 23510-9242

*First Class Mail*
Pillsbury Winthrop LLP
Lynn M. Ryan, Esquire
One Battery Park Plaza
New York, NY 10004-1490
(Counsel for Wells Fargo Bank Minnesota,
National Association)

*First Class Mail*
Pillsbury Winthrop LLP
Craig Barbarosh, Esquire
650 Town Center Drive, 7th Floor
Costa Mesa, CA 92626-7122
(Counsel for Wells Fargo Bank Minnesota,
National Association)

*First Class Mail*
Aldine Independent School District
Jonathan C. Hantke, Esquire
Pamela H. Walters, Esquire
14910 Aldine-Westfield Road
Houston, TX 77032

*First Class Mail*
DAP Products, Inc.
c/o Julien A. Hecht, Esquire
2400 Boston Street, Suite 200
Baltimore, MD 21224

*First Class Mail*
Hertz, Schram & Saretsky, P.C.
(Counsel for Rupple K. Perry)
Robert S. Hertzberg, Esquire
Michael I. Zousmer, Esquire
1760 South Telegraph Road, Suite 300
Bloomfield Hills, MI 48302-0183

*First Class Mail*
Steven B. Flancher, Esquire
Assistant Attorney General
Department of Attorney General
Revenue Division
First Floor Treasury Building
Lansing, MI 48992

*First Class Mail*
Wilentz, Goldman & Spitzer
(Counsel for Asbestos Claimants)
Deirdre Woulfe Pacheco, Esquire
90 Woodbridge Center Drive
P.O. Box 10
Woodbridge, NJ  07095

*First Class Mail*
Dechert Price & Rhoads
(Counsel for LaVantage Solutions)
Matthew A. Porter, Esquire
Bernard J. Bonn III, Esquire
Ten Post Office Square South
Boston, MA  02109

*First Class Mail*
Burt Barr Havins & O'Dea, L.L.P.
(Counsel for Occidental Permian, Ltd.)
John W. Havins, Esquire
1001 McKinney, Suite 500
Houston, TX  77002

*First Class Mail*
Mark Browning, Esquire
Assistant Attorney General
(Counsel for The Texas Comptroller of
Public Accounts)
c/o Sherri K. Simpson, Legal Assistant
Office of the Attorney General
Bankruptcy & Collections Division
P.O. Box 12548
Austin, TX  78711-2548

*First Class Mail*
Leonard P. Goldberger, Esquire
(Counsel for Century Indemnity Company)
White & Williams LLP
1800 One Liberty Place
Philadelphia, PA  19103-7395

*First Class Mail*
Kay d. Brock, Esquire
(Comptroller of Public Accounts
of the State of Texas)
Bankruptcy & Collections Division
P.O. Box 12548
Austin, TX  78711-2548

*First Class Mail*
Cynthia C. Hemme, Esquire
Senior Counsel
Nortel Networks, Inc.
4010 E. Chapel Hill-Nelson Hwy.
Research Triangle Park, NC  27709