1        IN THE UNITED STATES BANKRUPTCY COURT

2        IN AND FOR THE DISTRICT OF DELAWARE

3                          - - -

4    In re:                    :     Case No.
                               :
5    W.R. GRACE & CO., et al., :
                               :
6          Debtors.            :     01-01139 (JJF)

7                          - - -

8                    Wilmington, Delaware
                  Thursday, July 19, 2001
9                      12:30 p.m.

10                         - - -

11   BEFORE:  HONORABLE JOSEPH J. FARNAN, JR., U.S.D.C.J.

12   APPEARANCES:

13        DAVID W. CARICKHOFF, JR., ESQ.
          Pachulski, Stang, Ziehl, Young & Jones P.C.
14                -and-
          DAVID BERNICK, ESQ.,
15        JAY W. KAPP, III, ESQ., and
          SAMUEL A. SCHWARTZ, ESQ.
16        Kirkland & Ellis
          (Chicago, Illinois)

17                     Counsel for Debtors and
18                     Debtors in Possession

19        SUSAN A. LIST, ESQ., and
          SHERRY R. FALLON, ESQ.
20        Tybout Redfearn & Pell
                  -and-
21        HALEH R. JENKINS, ESQ.
          Prindle Decker & Amaro
22        (Long Beach, California)

23                     Counsel for Home Savings
                       Termite Control

24

25

1    APPEARANCES CONTINUED:

2            MICHAEL R. LASTOWSKI, ESQ.
             Duane, Morris & Heckscher
3                    -and-
             ARLENE G. KRIEGER, ESQ., and
4            KENNETH PASQUALE, ESQ.
             Stroock & Stroock & Lavan

5
                     Counsel for Unsecured Creditors' Committee
6
             MARK CHEHI, ESQ., and
7            HENRY WASSERSTEIN, ESQ.
             Skadden Arps Slate Meagher & Flom
8
                     Counsel for Sealed Air Corporation
9
             MATTHEW ZALESKI, ESQ.
10           Campbell & Levine
                     -and-
11           PETER LOCKWOOD, ESQ.
             Caplin & Drysdale
12
                     Counsel for Official Committee
13                   of Asbestos P.I. Claimants

14           STUART BROWN, ESQ.
             Buchanan Ingersoll
15
                     Counsel for Certain Objectors
16
             THEODORE TACCONELLI, ESQ.
17           Ferry & Joseph
                     -and-
18           SCOTT BAENA, ESQ., and
             BILZIN SUMBERG, ESQ.
19           Dunn Baena Price & Axelrod LLP

20                   Counsel for PD Committee

21           FRANK PERCH, ESQ.
             United States Trustee's Office
22
                     Counsel for U.S. Trustee
23
                          -  -  -
24

25

1        THE COURT:  Good afternoon.

2        MR. KAPP:  Good afternoon, Your Honor.  Jay Kapp

3   on behalf of the debtors.

4        We received word from chambers that contested

5   matters would not be heard today and would be continued until

6   August 2nd.  So therefore, we would request that Items 4

7   through 10 be considered today, as those items are either

8   uncontested or the objections have been resolved.

9        THE COURT:  All right.  Actually, what we are

10  doing now, because of the caseload, any item that is truly

11  contested and requires a hearing, we are scheduling them

12  specially, so we can allocate time and perform what the code

13  refers to as a trial.

14       So what we want to do is go through the

15  uncontested matters, and then basically have a status call on

16  the items listed as contested, and in each item find out

17  whether or not there will be witnesses required, the number

18  of witnesses.  Then we will set a date and allocate time so

19  that the matter can be properly heard.

20       MR. KAPP:  All right, Your Honor.

21       I am going to proceed from the amended notice of

22  agenda filed yesterday.  Do you have that agenda?

23       THE COURT:  Yes.  Docket Item 640.

24       MR. KAPP:  All right.  As the first three items

25  have been continued, I will start with Items 4 and 5 and

1  consider them together, if we may.  They are debtors'

2  applications to retain Holme Roberts and Nelson Mullins.

3  Those documents were filed with this Court, are matters of

4  public record, duly noticed and served.  No objections were

5  filed as to their June bar dates.  Therefore, if there are no

6  objections today, we would request that the Court approve

7  those applications.

8            THE COURT:  They will be approved.

9            MR. KAPP:  The next item is the debtors'

10  application to obtain Reed Smith as special asbestos products

11  liability defense counsel nunc pro tunc to the petition

12  date.  They were initially retained under the debtors'

13  ordinary course professional motion.  But they have exceeded

14  their cap.  So we request that they be retained from the

15  petition date to clear that up.

16            We are not aware of any objections.  If there are

17  no objections today, we ask that that application be

18  approved.

19            THE COURT:  That application will be approved.

20            MR. BAENA:  Scott Baena on behalf of the Official

21  Property Damage Committee.  We made inquiry of counsel

22  regarding this particular application.  I am not sure we

23  received a response.

24            MR. KAPP:  Your Honor, as we move along, we will

25  confer with Mr. Baena, and we can re-address this later in

1    this hearing.

2              THE COURT:  Sure.

3              MR. KAPP:  The next item on the agenda is the

4    motion by the Property Damage Committee to amend the debtors'

5    interim compensation order.  This motion has been withdrawn.

6              The debtors would like to make clear on the

7    record that nothing in the current order prevents any

8    individual committee member's counsel from filing fee

9    applications in these Chapter 11 cases, and those

10   applications will be reviewed in accordance with prevailing

11   case law of this district.

12             Next item is Item 8, debtors' motion to extend

13   the removal period until January 2, 2002.  One objection was

14   received by the Property Damage Committee.  That objection

15   has been resolved, and the order has been modified to provide

16   the relief granted in that order is without prejudice to the

17   relief sought in the Asbestos Committee's fraudulent transfer

18   motion, which is on today's agenda, Your Honor.

19             At this time, we respectfully request that this

20   Court grant the motion, if there are no objections.

21             THE COURT:  All right.  The application will be

22   granted.

23             MR. KAPP:  The next item is debtors' motion for a

24   procedure for settling de minimis claims.  There were three

25   objections filed.  All have been resolved.  In particular,

1   the order has been modified to reflect, one, the floor for de

2   minimis claims has been reduced from 100,000 to 50,000, two,

3   the period for certain parties to object has been extended

4   from 15 to 20 days, three, language has been added to clarify

5   the debtors' obligations with respect to certain insurance

6   policies.

7           If there are no other objections, we request the

8   Court approve this motion.

9           THE COURT:  All right.  The application will be

10  approved.

11          MR. KAPP:  Item 10 on the agenda is the debtors'

12  motion to retain Kinsella Communications as notice

13  consultants.  One objection was filed by the Property Damage

14  Committee.  We have resolved that objection.  The order has

15  been modified to reflect that in the event that a notice

16  program is approved by this Court different than that

17  advocated by the debtors, and such program provides for more

18  notice to be given, then the Property Damage Committee shall

19  have the right to re-address Kinsella's compensation

20  structure if they so desire.

21          If there are no other objections, we request that

22  this application be approved.

23          THE COURT:  Okay.  The application will be

24  granted.

25          MR. KAPP:  At this time, to address the remaining

1   items on the agenda, I will turn the podium over to my

2   colleague, Dave Bernick, if I may.

3          THE COURT:  Yes.  Thank you.

4          MR. BERNICK:  Good afternoon, Your Honor.

5          THE COURT:  Good afternoon.

6          MR. BERNICK:  Beginning with Item 11, I guess we

7   can go through each one of these.

8          THE COURT:  Yes.

9          MR. BERNICK:  This is a motion to create the

10  document repository, the associated request to preserve

11  documents.  Mr. Baena for the Property Damage Committee I am

12  sure will want to address it.  I believe it has been fully

13  briefed.  We would not anticipate calling any witnesses on

14  this motion, and therefore I think it can be resolved on

15  argument, and it ought to be relatively brief argument.

16         THE COURT:  All right.

17         MR. BAENA:  May it please the Court, on behalf of

18  the Property Damage Committee.  Yes, Your Honor, there will

19  be no witnesses.  There will be argument.  The argument is to

20  be presented by Mr. Dies, who is counsel to a number of our

21  committee.

22         THE COURT:  We will get a date at the end for

23  those that have argument only and we will allocate time for

24  those arguments.  So we will reserve this for a date for

25  argument.

1          Item No. 12.

2          MR. BERNICK:   Item 12 is a motion relating to

3    authority to prosecute the fraudulent transfer claims.

4    Again, it has already been fully briefed.  We would not

5    anticipate calling any witnesses at all.  Again, I think it

6    should be a relatively brief argument.

7          MR. BAENA:   I don't disagree that this should be

8    capable of being argued in a relatively brief period of time,

9    Your Honor.

10         THE COURT:  Okay.

11         MR. BERNICK:   Item 13, actually, is encompassed

12   by the procedure that we are going through now.  This is a

13   motion to continue the hearing from today on the matters

14   raised by Item 14.  Item 14 -- actually, there may be a

15   further item later.  We have our motion for -- I guess it's

16   actually not on this list -- we have our motion to enter a

17   case management order.  That was originally set for today.

18   By agreement, we have agreed to extend the time so that it

19   would be heard on the 2nd of August.

20         This is a motion that asks for a further

21   continuance by the Property Damage Committee to a later

22   date.  So, obviously, the fact that we are now involved in

23   the scheduling in a sense incorporates this matter, I would

24   like to address it for a moment, if I could, Your Honor.  But

25   I don't believe it will be necessary to have a further

1  separate hearing on this matter.  Maybe we can take this up

2  now as a scheduling matter, if that would be appropriate with

3  the Court.

4          THE COURT:  13 and 14, we are going to take that

5  up as a scheduling matter.

6          MR. BERNICK:  14 is a little bit different.  I

7  had misspoken.  That is true with respect to 13.  14, I

8  believe, already has been briefed in connection with the

9  motion to modify the preliminary injunction.

10          Remember, in connection with the motion to

11  modify, there was also an associated motion to lift stay.

12  Our feeling is that this matter is already briefed.  It is

13  already before the Court.  In fact, there is a further status

14  that I would like to give Your Honor on that matter.  But I

15  don't believe it is going to be necessary to have any further

16  argument on this item.

17          I think that the people who represent Home are

18  present here in Court today if they have a different view.

19          THE COURT:  Does anybody want to be heard on

20  Items 13 or 14?  We will take them in combination.

21          MS. LIST:  Good morning, Your Honor.  Afternoon,

22  actually.

23          Susan List on behalf of Home Saving Termite

24  Control.  With the Court's permission, I would like to

25  introduce and admit pro hac my co-counsel Haleh Jenkins.  Ms.

1  Jenkins is from the law firm of Prindle Decker & Amaro from

2  Long Beach, California.  She has been admitted and is a

3  member in good standing before the New York and California

4  Bars.  We submit it would be appropriate for her to appear on

5  Home Termite's behalf.

6          THE COURT:  Thank you.  Good afternoon.

7          MS. JENKINS:  I am sorry, I could not hear from

8  the back of the room exactly what you wanted me to address

9  with respect to Item No. 14.  It is our motion for relief

10  from the automatic stay so we can proceed with discovery

11  against Grace, the debtor.

12          THE COURT:  I think what counsel was saying is

13  that this matter is part and parcel of a prior application,

14  and basically, the papers support what has already been

15  presented.  If you had something additional to present, you

16  could do it at this time or we could schedule it specially

17  for an argument, along with Items 11 and 12, or you can

18  submit on the papers, then I will render a decision, which

19  has already partially been effected.

20          MS. JENKINS:  I agree that the issues germane to

21  the motion have been briefed.  However, the additional facts

22  are that the case has again been remanded to the state court

23  in California.  We are proceeding with that case.  And we

24  have a status conference scheduled in that action next week.

25  We previously had a trial date in December.  It is possible

1   Judge Fruin (phonetic) in the state court in California will

2   reinstate the trial date.

3          So the wheels of the trial in the California case

4   turn.

5          In terms of this Court allowing us to conduct

6   discovery against Grace or enjoin the entire action, my

7   clients are going to continue to be prejudiced in this case.

8   That is a new fact.

9          THE COURT:  As I understand it, that is what

10   counsel is saying.  Part and parcel of the consideration of

11   the injunction that is in place and any modification will

12   probably resolve your issue in short order.

13          MR. BERNICK:  I think that's right.  I would

14   underscores counsel's remarks.  The Smolker case is one of

15   two items that gives a little bit of pressure obviously on

16   the Court's deciding what to do with the motion to modify the

17   preliminary injunction.  The other item is, remember, one of

18   the modifications is to pick up future claims or additional

19   claims that are being filed.  Some of those claims have been

20   filed, and the date to answer is coming up for some of the

21   people who have been named in those cases.

22          So there are a couple pressure points that we

23   obviously were looking forward to the Court's decision.  One

24   good note along those lines is that the Court had a concern

25   with the language regarding the statute of limitations.  Your

1   Honor may remember that.  We have modified the proposed order

2   for preliminary injunction to pick up the proposal that was

3   made by the Property Damage Committee and the Bodily Injury

4   Committee on how to address that problem.  We simply put it

5   in the order.

6            That form of order was attached as an exhibit to

7   our supplemental brief that we filed with the Court.  We

8   filed a supplemental brief that covered a series of missing

9   items and we picked up that modification.  I have an

10  additional copy of that order, if Your Honor would like me to

11  hand it up now.  I think we have agreement from the other

12  committees that that change solves their concern as to the

13  statute of limitations issue.

14           THE COURT:  All right.  I was actually aware by

15  virtue of a telephone call from the bankruptcy Judge in

16  California of the decision.  She had called me and we had a

17  discussion.  She told me what she was going to do.  I told

18  her that I had this hearing scheduled, and once we got

19  through this hearing, that I probably would be rendering my

20  decision.

21           So I think we have all we need to know about

22  these items and we will be entering our decision.

23           MS. JENKINS:  Thank you, Your Honor.

24           THE COURT:  Thank you.

25           That resolves, essentially, for purposes of

1   today, 13 and 14.

2           MR. BERNICK:   That resolves 14.  We have to come

3   back to 13 because it pertains to a different underlying

4   motion.   13 is a motion to continue the hearing with respect

5   to our motion to establish the CMO.   That motion was

6   originally set for today as a contested matter.   We agreed to

7   move it until August 2nd.   This was a request to move it

8   still further.   I am sure Mr. Baena again would like to speak

9   to that.

10           If I could take a moment or two.

11           I am sure Your Honor is aware, at the very

12   beginning of the case we laid out what we thought was going

13   to happen to this case with regard to litigation, including

14   the bar date and the like.   Your Honor ordered us, I believe

15   on the 3rd of May, to submit a concrete case management

16   proposal with dates and the like that we could do litigation

17   if we had to.   We did that.   We submitted a letter to all of

18   the parties on the 11th of June, proposing a detailed case

19   management schedule.   We then moved on the 27th of June for a

20   case management order, a bar date, and claim forms.   That is

21   the matter that we would like very much to get heard.

22           There was concern expressed by both of the

23   committees, that is the Property Damage Committee and the

24   Bodily Injury Committee, about timing.   We agreed, because

25   Your Honor I believe has two hours available on August the

1    2nd, to move to August the 2nd this very, very critical

2    motion, because we thought that would provide adequate time,

3    recognizing that we are going to need -- we will need to call

4    one witness to testify in that case concerning the notice

5    program.  And we knew it was an important matter.  So we

6    proposed pushing it to August 2nd.

7              The Bodily Injury Committee agreed to that date,

8    that they were prepared to proceed.  The unsecured creditors

9    agreed to that date.  They were prepared to proceed.  The

10   only people who were not prepared to proceed on August 2nd

11   were the property damage people.  And they submitted a motion

12   for an extension of time.  That is Item 13.  They want more

13   time beyond August 2nd.  We opposed that and we opposed it

14   because we think it was more animated by tactical

15   considerations.  We thought they could proceed on August

16   2nd.  I have had a further discussion with Mr. Baena this

17   morning, who tells me he has an expert who needs to do work

18   in analyzing our notice program and our claim form.  And I

19   will take that at face value.

20             What we would propose doing is, because it is a

21   significant matter, let's get as much as we can done, if it

22   is consistent with Your Honor's expectations for August the

23   2nd, get as much as we can done with respect to our CMO

24   motion, the bar date, the claim forms, as we can on August

25   the 2nd, because it will be a significant matter.  And then,

1  if they have got an expert who needs to address matters that

2  are specific to their aspect of the notice program, or to

3  their particular claim form, and that has to be set on some

4  additional date after their expert is done, we can take that

5  up at the appropriate point in time.

6          But we are anxious to get a hold of your time on

7  August 2nd so that these matters can be resolved and we can

8  develop an overall schedule for the case.  And everybody else

9  was prepared to proceed on the 2nd.  That is what we would

10  advocate.

11          On the underlying motion, we would call one

12  witness.  I think they probably have witnesses as well, Your

13  Honor.

14          THE COURT:  So what they are suggesting is that

15  you get carved out for a later time to present your expert.

16          MR. BAENA:  May it please the Court, I don't

17  think it is that simple, respectfully, Your Honor.

18          First, let's understand what the debtors' case

19  management proposal entails.  It is an omnibus proposal that

20  takes us through the next two-plus years of this case by

21  date, by time, by function, and by party.  Amongst the things

22  that they wish to commence immediately are the establishment

23  of the bar date, the commencement of the notification

24  program.

25          And parenthetically I would mention, this is an

1   unusual case, Judge.  The asbestos claims in this case are

2   not like the asbestos claims that existed in the prior cases

3   that counsel contends they use as a template for the program

4   that they are proposing to the Court now.

5           So the notification program implicates numerous

6   claimants, claimants who some have estimated to be in the

7   hundreds of thousands who haven't even been identified yet.

8           From the notification phase, they wish to move on

9   to a date by which the proof of claim must be filed.  And

10  after the proof of claim is filed, they will then want to

11  move into a litigation exercise that entails the convening of

12  Daubert hearings to determine scientific evidence in respect

13  of asbestos claims.

14          They want to have an opportunity to decide

15  exclusively, without any limitations on them, what cases get

16  sent back to state court, on some basis that they haven't

17  described.  They also want to establish Bench trials,

18  litigation committees, and a myriad of other litigation-type

19  functions and activities, which will take the Court's

20  attention in this case all the way through 2003.

21          What we have said is, the starting point of the

22  motion, of course, is the establishment of the bar date.

23  When you establish that bar date is dependent upon a variety

24  of things.  The first is whether or not a bar date should

25  even be imposed.  And there is a difference of opinion about

1   that that needs to be fully briefed and discussed with the

2   Court, when ample time exists.

3        The second dynamic of a bar date, though, is the

4   date you set will necessarily be dependent upon the

5   notification program.  You can't reasonably set a bar date

6   that can't be achieved both in terms of the distribution of

7   wide notice and in terms of what claimants are expected to do

8   by the bar date until you have established those components

9   of the plan.

10       It is here that the Property Damage Committee is

11   a bit at a disadvantage.  First, you can tell from the

12   significant proposal put forward by the debtors on expert, a

13   notification program isn't something that is cobbled together

14   overnight.  It is certainly not cobbled together over a 30-

15   or 60-day period.  It requires some thoughtful analysis.  It

16   requires the retention of experts.  And it requires them to

17   do a great deal of survey work and analysis of the nature of

18   the claims, the claimants, and the geographical territories

19   that are affected by the notification program.

20       We have just identified an expert.  That expert

21   tells us that process will alone take four weeks, and that is

22   pushing it.

23       Secondly, the culmination of that notification

24   program is, as I said, the filing of a proof of claim.

25       The proof of claim forms that have been proposed

1  by the debtor are really not proof of claim forms at all.

2  Those proof of claim forms only seek one type of information,

3  and they don't even do that right.  They only seek to

4  determine whether the claims that would be asserted by

5  claimants who are capable of understanding the forms, and I

6  emphasize that, are time-barred.  That is all they seek.

7  They don't use the right criteria for the establishment of

8  the time bar.

9          And so there is a considerable amount of effort

10 that has to be employed once we profile the nature of the

11 claimants that will receive these forms, how we can put it

12 into a comprehendible fashion, how we can get it to them, how

13 can we be sure that they are able to fill them out and get

14 them back timely.

15         So you really can't pull the pin on this whole

16 process until we have established the rules of engagement

17 with regard to notification and proof of claim forms.

18         So we need more time.

19         I think it is also worth pointing out, Your

20 Honor, that despite the fact that debtors have had numerous

21 experiences, as have personal injury claimants, with these

22 issues in other cases that are identified by debtors, it is

23 remarkable and worth noting that those cases didn't engender

24 any significant property damage claims.  There were no

25 property damage committees.  And these issues were not fully

1   fleshed out in a thoughtful way in respect to property

2   damage.  It was inconsequential in those cases.

3          For the property damage claimants, this is the

4   first and only opportunity that we have had an opportunity to

5   see the evolution of this process and applied it next to

6   property damage claims.

7          Judge, we are asking for 30 days.  It is not an

8   enormous period of time.  The only objection that we have

9   received is from the debtor.  And the debtors' basic

10  objection, or basis for its objection is no objection at all,

11  because the case law makes it fundamentally clear that the

12  only basis for denying us this modest 30-day extension of

13  time in this circuit and according to the United States

14  Supreme Court is if that delay will somehow occasion harm or

15  prejudice to the other party that outweighs the

16  appropriateness of giving us that additional time.

17         The debtor fails altogether to mention or even

18  allude to any harm that might befall the debtor or any other

19  constituency in this case by giving us 30 more days to brief

20  the issues, which are of first impression for us, as well as

21  to provide this Court with more thoughtful work product from

22  our experts, from which the Court can make a fair comparison

23  of the materials that had been provided by the debtor.

24         There is simply no basis to argue about a 30-day

25  delay.  After all, Judge, in the final analysis, the

1    prejudice is felt by my constituencies and Mr. Lockwood's

2    constituency.  We are the ones waiting the extra 30 days to

3    get paid in this case.

4             The debtors' emergence from bankruptcy will not

5    be affected at all, either.  Indeed, it is worth noting that

6    the entire case management plan that is put forward by the

7    debtor is only a litigation exercise.  There is nothing in

8    that plan that, after you get past the bar date, has anything

9    to do with traditional reorganization exercises.

10            The fact that the Unsecured Creditors' Committee

11   hasn't objected to the case management timing or plan is of

12   no consequence at all.  Their claims aren't even implicated

13   by the schedule or the activities that the debtor describes

14   in its proposal.

15            Indeed, I don't even know what they are going to

16   be doing for the next three years in this case if we embark

17   upon the program that the debtor has envisioned for the

18   Court.

19            It is truly an issue that is unique, and affects

20   most directly asbestos claimants.  And these asbestos

21   claimants are saying, without, I think, any objection by the

22   other asbestos claimants, that we need more time.  We need 30

23   days.

24            Thank you, Judge.

25            MR. LOCKWOOD:  Your Honor, could I?

1          THE COURT:  Yes.

2          MR. LOCKWOOD:  Peter Lockwood for the Asbestos

3    Personal Injury Claimants Committee, Your Honor.

4          Two points.  First, while Mr. Bernick is correct

5    that we did not object to his proposal to move this hearing

6    from today to August the 2nd, I think I should, in fairness,

7    say that we felt we didn't have a whole lot of choice.  Your

8    Honor was out of town.  There was no chance that we could get

9    a motion on that would give us a decision.  We had a due date

10   on our papers under the original proposal of July the 13th.

11   The debtor agreed to extend that to July the 16th.  We could

12   not have lived with a July the 16th date for filing our

13   papers.

14          By agreeing to August the 2nd, it at least gave

15   us until July 25th.  I am not repudiating the agreement that

16   if we have to, we can get it done by July the 25th.  But I

17   will tell you, in all honesty, that I would sure like to have

18   more time to be able to get it done than the present schedule

19   would afford.

20          Secondly, I think Mr. Bernick's suggestion of, in

21   effect, bifurcating the hearing to sort of have some part of

22   it involving an expert occur at some later date makes no

23   sense.

24          The issues raised by the proof of claim bar date,

25   notice, and case management order, are, as you will see in

1    due course, and as Mr. Baena has adverted to, are all

2    interrelated here.

3              And we would strongly urge that --

4              THE COURT:  Do you think that in going forward

5    you want to be interrelated in the debtors' own view of this

6    case with the property claimants?

7              MR. LOCKWOOD:  Well, I don't know exactly what

8    you mean by interrelated in the debtors' view.

9              THE COURT:  Well, the debtor has put forth a view

10   of how the case ought to move.

11             MR. LOCKWOOD:  And that view consists of

12   litigating with my constituency and with Mr. Baena's

13   constituency over a two- or three-year period.

14             THE COURT:  My point is, do you anticipate tying

15   yourself to the property claimants?

16             MR. LOCKWOOD:  I anticipate the need that any

17   case management order that the Court decides in this case

18   will have to schedule the litigation -- whatever litigation

19   the Court determines to approve on the subject of property

20   damage claims and personal injury claims, and now we have

21   actually a new group of claims that aren't either, which are

22   the so-called medical monitoring claims, as to which an

23   objection and request for a continuance is also on file --

24             THE COURT:  I am just talking about the folks

25   that your group represents that have personal injury claims.

1    Are you satisfied to be tied throughout the litigation phase

2    of this reorganization to the property damage claimants on

3    time frames?

4              MR. LOCKWOOD:   I don't know what you mean by

5    tied.

6              THE COURT:   Suppose your course of claims could

7    be accelerated at a time pacing that is twice as fast as

8    property damage claimants.   You would reject that and tie

9    yourself to their timing?

10             MR. LOCKWOOD:   That is one of the reasons I would

11   like more time to discuss with the property damage people

12   what a case management order would say.

13             I would just make this observation, Your Honor.

14   The debtors are seeking a 524(g) order as part of this case.

15   In order to get a 524(g) order, which we concur would be

16   desirable for the debtor, as a recording entity, for the

17   committee's --

18             THE COURT:   I don't think my questions were that

19   tough.   Maybe they were, or maybe they were inartful.   Let me

20   try it again.

21             If you could get all of your claims to the Court

22   in 18 months -- I am just using numbers here -- and the

23   property claims were going to take 36 months, would you

24   choose to take 36 months and be tied in a procedural line

25   with the property claimants?

1          MR. LOCKWOOD:  Quite possibly, because we can't

2     reorganize this company until both sets of claims are

3     resolved either by agreement or by litigation.  That's why I

4     was referring to a 524(g).  You have to have a trust.  It's

5     got to pay all asbestos claims.  That includes one or more

6     trusts.

7          Actually, Mr. Baena and I, I think we would have

8     a common ground, we would prefer not to have a single trust.

9     But those trusts have to be set up to pay all of the

10    asbestos-related, personal injury and property damage

11    claims.  We can't have a bifurcated reorganization here.

12    There has got --

13         THE COURT:  I know.  But there is a lot of

14    creative ways -- I hear what you say, you have got a set of

15    thoughts.  So I am going to take the view from this day

16    forward that, with that view, you are satisfied moving along

17    in a litigation path that deals with all claims.

18         MR. LOCKWOOD:  I think, Your Honor, that the case

19    management in this case has to schedule the personal injury

20    and property damage litigations in such a way that the end

21    result --

22         THE COURT:  I don't think you have to.  But I

23    will accept your view because you represent the folks waiting

24    for the money.

25         MR. LOCKWOOD:  Well, so do the property damage

1    claimants in their view, Your Honor.

2         THE COURT:  There is a little difference between

3    a personal injury claimant and a property damage claimant,

4    don't you think?

5         MR. LOCKWOOD:  Your Honor, my people can't get

6    paid unless there is a confirmed plan of reorganization in

7    this case.  And that cannot happen until the property damage

8    claims are in some manner or another resolved.  So as far

9    as --

10        THE COURT:  I accept your representation.  I am

11   going to join you with the property claimants.

12        MR. LOCKWOOD:  I am a little nervous about what

13   you mean by "join me."

14        THE COURT:  It makes it easy.  Don't come back

15   and complain.  It makes it a real easy view and a dynamic for

16   decision from the beginning of the case.  It actually lifts a

17   lot of burden of consideration, in my view, from the Court

18   and to some extent from the estate.  I am not criticizing the

19   position.  I just want to be sure I understand it.

20        MR. LOCKWOOD:  Your Honor, we may conclude, to be

21   perfectly candid to the Court and other parties, we would

22   like to see the property damage litigation resolved before

23   the personal injury litigation, because right now, the

24   Zonolite class action alone says they are entitled to ten

25   billion dollars.

1      THE COURT:  All of a sudden, you have become an

2  artist.  That is what I was trying to find out.  I have your

3  view.  And I accept it.  We will move forward on that.  All

4  right.

5      MR. BERNICK:  Very briefly, Your Honor.

6      I think it is evident from what you have heard so

7  far that there are a lot of different views that are going to

8  be heard with the Court concerning this case management

9  order.  We tried to be comprehensive.  We tried to be

10  responsive to Your Honor's directive that we really set this

11  out.  We set it out at the outset of the case.  We have now

12  become very detailed.  We have a lot to talk about.

13      There are some shared views they obviously have

14  with regard to the feasibility of or desirability of a bar

15  date.  I can tell you that I have had that argument before,

16  including with Mr. Lockwood and his colleagues, in other

17  matters.  It is a very lively kind of discussion.

18      The point is, there is no reason why it can't

19  proceed.  We know what the arguments are.  Even with respect

20  to Mr. Baena's clients, they are submitting briefs saying do

21  a class notice for the Zonolite people, we know there should

22  be class certification.  They said that three different times

23  before.

24      The point is, if we go forward on the 2nd of

25  August, there will be very substantial matters that we can

1    take up in a very productive fashion.  I think we can get

2    through all the matters that pertain to the bodily injury

3    people.  I think we can take up the matters that they have

4    already briefed before the Court, not once, but twice, and we

5    can get through all of that.

6              Again, if Mr. Baena needs more time for a

7    particular expert, it may be that we have to have some more

8    time.  But at least we can get a substantial amount

9    accomplished on this vital issue, so that we can begin what

10   looks like it is going to be an arduous process.

11             Only one footnote, which is, how does it happen

12   that this very important committee in this case gets our

13   informational brief, sees exactly what it is that we are

14   going to do, bar date and all, knows about the prior cases,

15   and they don't even bother to retain an expert until we are

16   on the eve of a hearing on our motion to set a bar date?  I

17   don't think it is prompt.  I don't think it is diligent.

18             If we want to move this case along, people have

19   to start looking down the road.

20             All we are asking for today is to fully utilize

21   August 2 to take the matters up for the bodily injury people,

22   to take up the Zonolite arguments on class cert, and notice,

23   which have already been before the Court and they told the

24   Court at the outset of the case, all completely briefed over

25   in Boston.

1     Let's take those matters up.  If Your Honor

2 determines at the end of that hearing that this thing is all

3 so intertwined that we can't decide or do anything until we

4 hear from this last late-noticed expert, so be it.  But at

5 least we are behind a lot of the argument and a lot of the

6 contention, and I hope we will be all the more informed.

7     THE COURT:  What I am going to do is continue it

8 for the 30 days requested, and take the August 2nd date off,

9 and get with counsel to put it on for the beginning of

10 October, with some time allocated to hear the issues.  I

11 don't have that date right now.  But we will get it before

12 close of business tomorrow.  It will be sometime during the

13 week of October the 8th, toward the latter part of that

14 week.

15     MR. BERNICK:  Okay.

16     MR. BAENA:  Thank you, Judge.

17     MR. BERNICK:  Back on the agenda.  Item 15, I

18 believe, has been fully briefed, and we do not anticipate

19 calling any witnesses on that.

20     THE COURT:  Okay.  What we will do is -- you say

21 that can be done on submission.

22     MR. BERNICK:  From our point of view, yes.

23     MR. PASQUALE:  Your Honor, Ken Pasquale for the

24 Official Committee of Unsecured Creditors.  Submission is

25 fine.  We have put in our position.  We are content to rest

1  on the papers.

2          THE COURT:  It is now under advisement.

3          MR. LOCKWOOD:  I just noticed No. 15 is not a

4  motion by the debtor.  It is a motion by some former

5  employees.  I think they ought to have the opportunity -- as

6  far as my committee, we are prepared to submit it on the

7  papers, too.  But the plaintiff, if you will, hasn't been

8  heard from.  I don't know whether they are here.

9          THE COURT:  I asked did anybody want to be

10  heard.  If you are here and you want to be heard, step up.

11          MR. LOCKWOOD:  Submission on the papers is fine

12  with us, Your Honor.

13          THE COURT:  That is the best you can do.

14          All right.  Items 11 and 12, I propose we take up

15  the time that we had set aside on August 2nd from 1 to 3 and

16  I will allocate time for those arguments.

17          MR. BERNICK:  Correct, Your Honor.  The only

18  caveat I think we would have on this, we are prepared to

19  proceed in whatever fashion the Court believes is

20  appropriate.  But, in fact, both of those items are really

21  actually efforts by one of the committees to move forward on

22  a piecemeal basis with certain matters that are covered by

23  the case management schedule.

24          So, for example, one of them essentially is the

25  whole discovery program.  I don't know how we resolve this

1  whole discovery program when the whole purpose of case

2  management is to specify issues so that the discovery can be

3  tailored.

4         But if Your Honor wishes to hear it, we are going

5  to say that again on the 2nd...

6         THE COURT:  Again, it is on the agenda.  People

7  asked for a hearing.  If you don't want it on that date, tell

8  me.  I understand you are saying either way.

9         MR. BAENA:  Judge, we want it to be heard.  It is

10 not just a discovery issue.  It is a document retention and

11 preservation issue that is engendered by our motion.  That is

12 first and foremost on our mind.  We can argue about how we

13 get documents later.

14        THE COURT:  You want the 2nd?

15        MR. BAENA:  The only problem with the 2nd is Mr.

16 Dies has other professional commitments through the 10th.  If

17 the 2nd is the only date that will accommodate us, we will

18 make different arrangements for who is going to argue that.

19        THE COURT:  What would be convenient before we

20 get to the end of August?  Anything after the 10th?

21        MR. BAENA:  Anything after the 10th, Your Honor.

22        MR. BERNICK:  That is a perilous month, Your

23 Honor.  Nonrefundable tickets sprinkled throughout August.

24        THE COURT:  How about September 7th, so we get

25 you out of those nonrefundable ticket time frames?

1        MR. BAENA:  That is okay with Mr. Dies, Judge.

2        MR. BERNICK:  I have to confess, I did not bring

3   my calendar.  I think it is okay.

4        THE COURT:  We will tentatively set it for

5   September 7 at 1:00.  In the order I will allocate time for

6   each agenda item for argument.  Each side indicated it would

7   need a brief amount of time to make argument, 20, 30

8   minutes.

9        MR. BAENA:  30 minutes for our presentation, Your

10  Honor.

11       THE COURT:  We will set that in the order.

12       Okay.

13       MR. LOCKWOOD:  Your Honor, Item 12 is separate.

14  I don't think Mr. Baena was speaking to Item 12 just now.

15  That is the joint motion of the two committees to prosecute

16  the fraudulent conveyance case.  And I think that can go

17  forward on August the 2nd.  It doesn't involve Mr. Dies.  And

18  I anticipate it might take some time to resolve.

19       THE COURT:  Are there going to be witnesses?

20  See, when I went through this the first time, I asked the

21  questions, I expected to get the answers then.  Are there

22  going to be witnesses on Item 12?

23       MR. BAENA:  No, sir, no witnesses.

24       THE COURT:  All right.  So we have to set it for

25  a period of argument.

1      MR. BAENA:  That's correct.

2      THE COURT:  Like 11.  We will leave it on for the

3  7th.  We will do both at the same time.  And we will set them

4  beginning at 1:00 p.m., then allocate time for each agenda

5  the item.

6      MR. BAENA:  Thank you, Your Honor.

7      THE COURT:  Okay.  Is there anything further that

8  we should take up with this agenda?

9      MR. KAPP:  Your Honor, if I can just re-address

10  Item No. 6 on the agenda, the application to retain Reed

11  Smith.  We have now conferred with the Property Damage

12  Committee.  We believe their concerns have been resolved, and

13  we would once again request that this Court enter that

14  order.

15      MR. BAENA:  That is correct, Your Honor.

16      THE COURT:  All right.  We will enter that order

17  then.

18      MR. KAPP:  Your Honor, I have all the orders,

19  revised orders that have been approved.

20      THE COURT:  Pass them up to the clerk and we will

21  get them signed for you.

22      MR. KAPP:  Your Honor, if I may ask one more

23  question.  Right now we are treating the August 2nd hearing

24  also as an omnibus date, and there are some other items set

25  for that.

1          THE COURT:  You can continue to treat it as an

2   omnibus hearing date and we will be here.  We will keep it at

3   1:00 and follow the same procedure we did today.  Uncontested

4   matters will be submitted, and contested matters will be on

5   for scheduling or they can be addressed as they were today,

6   if the objections are withdrawn or whatever.

7          MR. KAPP:  Thank you, Your Honor.

8          THE COURT:  Anything further?

9          This hearing will be in recess and we will take

10   the folks in Armstrong.

11          (Court recessed at 1:15 p.m.)

12                        - - -

13   Reporter:  Kevin Maurer

14

15

16

17

18

19

20          I hereby certify that the foregoing is a true
            and accurate transcript from my stenographic
21          notes in the proceeding.

22

23          Official Court Reporter
            U. S. District Court

24

25