IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1], | ) | Case No. 01-01139 (JJF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Objection Deadline: August 20, 2001 at 4:00 p.m. |
| | ) | Hearing Date: To be scheduled, only if |
| | ) | objections are timely filed and served. |

**FIRST QUARTERLY INTERIM APPLICATION OF FTI POLICANO & MANZO FOR
COMPENSATION FOR SERVICES AND REIMBURSEMENT OF EXPENSES AS
FINANCIAL ADVISORS TO THE COMMITTEE OF UNSECURED CREDITORS OF
W. R. GRACE & CO., ET AL., FOR THE INTERIM PERIOD
FROM APRIL 20, 2001 THROUGH JUNE 30, 2001**

Pursuant to sections 327, 330 and 331 of title 11 of the United States Code (as amended,

the "Bankruptcy Code", Fed. R. Bankr. P. 2016, the Retention Order (as defined below), the

Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim

Compensation and Reimbursement of Professionals and Official Committee Members (the

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W.
R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon,
Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc.,
Creative Food >N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC
(f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a
Grace Cocoa Limited Partners I, Inc.), G C Management, Inc., (f/k/a Grace Cocoa Management, Inc.), GEC
Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities
Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary
Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe,
Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc.
(f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace
Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.
R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe
Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai
Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH,
Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings
Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA
Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental
Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin &
Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country
Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.



"Interim Compensation Order") and Del.Bankr.LR 2016-2, of FTI Policano & Manzo ("FTI

P&M"), Financial Advisors to the Official Committee of Unsecured Creditors (the "Committee)

of W.R. Grace & Co. and its sixty-one domestic subsidiaries and affiliates that are debtors and

debtors-in-possession (the "Debtors"), hereby applies for an order allowing it (i) compensation in

the amount of $196,005.50 for professional services rendered by FTI P&M as financial advisors

for the Committee and (ii) reimbursement for the actual and necessary expenses incurred by FTI

P&M in rendering such services in the amount of $7,094.17, (the "First Quarterly Fee

Application"), in each case for the interim quarterly period from April 20, 2001 through June 30,

2001 (the "Fee Period"). In support of this Application, FTI P&M respectfully states as follows:

## Background

1.     FTI P&M, an operating unit of FTI Consulting, Inc. ("FTI"), provides

financial consulting services for restructuring matters and has its principal office at Park 80 West

Plaza I, Saddle Brook, New Jersey. FTI P&M professionals have considerable expertise in

restructuring consulting, having participated in more than 500 cases, including some of the

largest bankruptcy proceedings and out-of-court restructurings in the country, as well as

numerous middle-market cases. In particular, FTI P&M has served as advisors in a number of

cases in the District of Delaware, including Camelot Music, Inc., Ernst Home Centers, Inc., APS,

Inc., Purina Mills, Inc. and US Office Products Co.

2.     This is the first quarterly application FTI P&M has filed with the Court for

allowance of compensation and reimbursement of expenses for services rendered to the

Committee. This application is submitted pursuant to the terms of the Administrative Order

Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement

of Expenses for Professionals and Official Committee Members, approved by the Court on May 3, 2001 (the "Administrative Fee Order").

3.    Other than as described below, FTI P&M has received no payment and no promises for payment from any other source for services rendered in connection with these cases. There is no agreement or understanding between FTI P&M and any other person (other than members of FTI P&M) for the sharing of compensation to be received for the services rendered in these cases.

4.    As stated in the Affidavit of Edwin N. Ordway, Jr., annexed hereto as Exhibit "A," all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

### Monthly Interim Fee Applications Covered Herein

5.    Pursuant to the procedures set forth in the Administrative Fee Order, professionals may apply for monthly compensation and reimbursement (each such application, a "Monthly Fee Application"), and the notice parties listed in the Administrative Fee Order may object to such request. If no notice party objects to a professional's Monthly Fee Application within twenty (20) days after the date of service of the Monthly Fee Application, the applicable professional may submit to the Court a certification of no objection whereupon the Debtors are authorized to pay interim compensation and reimbursement of 80% of the fees and 100% of the expenses requested.

6.    Furthermore, and also pursuant to the Administrative Fee Order, professionals are to file and serve upon the notice parties a quarterly request (a "Quarterly Fee Application") for interim Court approval and allowance of the Monthly Fee Applications filed during the quarter covered by that Quarterly Fee Application. If the Court grants the relief requested by the Quarterly Fee Application, the Debtors are authorized and directed to pay the

professional 100% of the fees and expenses requested in the Monthly Fee Applications covered

by that Quarterly Fee Application less any amounts previously paid in connection with the

Monthly Fee Applications.  Any payment made pursuant to the Monthly Fee Applications or a

Quarterly Fee Application is subject to final approval of all fees and expenses at a hearing on the

professional's final fee application.

      7.     This is the first Quarterly Fee Application for compensation for services

rendered that FTI P&M has filed with the Bankruptcy Court in connection with the

representation of the Committee in these chapter 11 cases.

      8.     FTI P&M has filed the following Monthly Fee Applications for interim

compensation during the Fee Period:

      a.     First application of FTI Policano & Manzo, financial advisor to the
Official Committee of Unsecured Creditors, for allowance of
compensation for service rendered and reimbursement of expenses
increased for the period from April 20 2001, through April 30, 2001, filed
June 29, 2001, (the "First Fee Application") attached hereto as <u>Exhibit A</u>.

      b.     Second application of FTI Policano & Manzo, financial advisor to the
Official Committee of Unsecured Creditors, for allowance of
compensation for service rendered and reimbursement of expenses
increased for the period from May 1, 2001, through May 31, 2001, filed
June 29, 2001, (the "Second Fee Application") attached hereto as <u>Exhibit
B</u>.

      c.     Third application of FTI Policano & Manzo, financial advisor to the
Official Committee of Unsecured Creditors, for allowance of
compensation for service rendered and reimbursement of expenses
increased for the period from June 1, 2001, through June 30, 2001, filed
July 30, 2001, (the "Third Fee Application") attached hereto as <u>Exhibit C</u>

      9.     FTI P&M has not filed any other Quarterly Fee Applications or Monthly

Fee Applications.  FTI P&M has not received payment from the Debtors in connection with the

Monthly Fee Applications filed to date.

10.     Since being retained by the Committee, FTI P&M has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the unsecured creditors of the Debtors' estates.  FTI P&M respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.  The detail for the Fee Period of the day-to-day services and the time expended in performing such services are fully set forth in each of the April to June Monthly Fee Applications attached hereto as Exhibits B through D.

### Relief Requested

11.     By this First Quarterly Fee Application, FTI P&M requests that the Court approve the interim allowance of compensation for professional services rendered and the reimbursement of actual and necessary expenses incurred by FTI P&M for the Fee Period, and as detailed in the April to June Monthly Applications, less any amounts previously paid to FTI P&M pursuant to the procedures set forth in the Administrative Fee Order.[2]  As stated above, the full scope of services provided and the related expenses incurred are fully described in the April to June Monthly Applications, which are attached hereto as Exhibits A through C.

### Disinterestedness

12.     As disclosed in the affidavit of Edwin N. Ordway, Jr., (the "Affidavit") FTI P&M does not hold or represent any interest adverse to the estates, and had been, at all

---

[2]     FTI P&M reserves the right to seek at a later date compensation for services rendered and reimbursement for expenses incurred during the April through June 2001 period that are not otherwise included in the relevant April to June Monthly Applications.

relevant times, a disinterested person as that term is defined in section 101(4) of the Bankruptcy Code as modified by section 1107 of the Bankruptcy Code.

13.     FTI P&M may have in the past represented, may currently represent, and likely in the future will represent parties-in-interest in connection with matters unrelated to the Debtors and the chapter 11 cases.  FTI P&M disclosed in its Retention Application its connections to parties-in-interest that it has been able to ascertain using its reasonable efforts. FTI P&M will provide supplemental Affidavits when necessary and when FTI P&M becomes aware of material new information.

WHEREFORE, FTI P&M respectfully requests that the Court enter an order, substantially in the form attached hereto

(a)     granting FTI P&M an allowance of (i) $196,005.50 as compensation for reasonable and necessary professional services rendered to the Committee and (ii) of $7,094.17 for reimbursement of actual and necessary costs and expenses incurred, for a total of $203,099.67, for the Fee period from April 20, 2001 through June 30, 2001;

(b)     authorizing and directing the Debtors to pay to FTI P&M the outstanding amount of such sums; and

(c)    granting such other and further relief as this Court may deem just and proper.


Date: ___7/27/01___

FTI Policano & Manzo

By _____

Edwin N. Ordway, Jr.
FTI Policano & Manzo
Park 80 West, Plaza I
Saddle Brook, NJ 07663
(201) 843-4900

**Exhibit A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| W.R. GRACE & CO., et al. | ) | Case No. 01-01139 (JJF) |
| | | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Objection Deadline: August 20, 2001 at 4:00 p.m.<br>Hearing Date: To be scheduled, only if objections<br>are timely filed and served. |

## AFFIDAVIT

STATE OF NEW JERSEY    )
                       ) ss:
COUNTY OF BERGEN       )


EDWIN N. ORDWAY, JR., being duly sworn, deposes and says:

1.  I am a Managing Director of FTI Policano & Manzo, ("FTI P&M"), an operating unit of FTI Consulting, Inc. ("FTI"), and I am duly authorized to make this affidavit on behalf of FTI P&M. FTI P&M provides financial consulting services for restructuring matters and has its principal office at Park 80 West Plaza I, Saddle Brook, New Jersey. FTI P&M has provided financial consulting services to and has rendered professional services on behalf of the Official Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co., and sixty-one of its domestic subsidiaries and affiliates which are debtors and debtors-in-possession before this Court.

2.  This affidavit is submitted pursuant to Bankruptcy Rule 2016(a) in support of FTI P&M's first quarterly interim application for compensation for services and for reimbursement of expenses for services rendered during the period from April 20, 2001 through and including June 30, 2001 in the aggregate amount of $203,099.67.

3.  All services for which compensation is requested by FTI P&M were professional services performed for and on behalf of the Committee from April 20, 2001 through and including June 30, 2001 and not on behalf of any other person.

4.  In accordance with Title 18 U.S.C. Section 155, neither I nor any employee of my firm has entered into any agreement, express or implied, with any other party-in-interest for the

purpose of fixing the amount of any of the fees or other compensation to be allowed out of or paid from the Debtors' assets.

5.  In accordance with Section 504 of the Bankruptcy Code, no agreement or understanding exists between me, my firm, or any employee thereof, on the one hand, and any other person, on the other hand, for division of such compensation as my firm may receive for services rendered in connection with these cases, nor will any division of fees prohibited by Section 504 of the Bankruptcy Code be made by me or any employee of my firm.

EDWIN N. ORDWAY, JR

Sworn to before me this
17th day of July, 2001

KATHIE JOZANOVIC
NOTARY PUBLIC OF NEW JERSEY
COMMISSION EXPIRES 09/11/05

Notary Public

**Exhibit B**

**Fee Application for the period**

**April 20 – April 30, 2001**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------x

In re:                                  Chapter 11

W.R. GRACE & Co., et al.,               Case No. 01-01139(JJF)
                                        (Jointly Administered)


                    Debtors

-------------------------x

## FIRST INTERIM APPLICATION OF FTI POLICANO & MANZO, FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED (FOR THE PERIOD FROM APRIL 20, 2001 THROUGH APRIL 30, 2001)

Type of Application: Interim ___X___    Final _____

Name of Applicant: FTI Policano & Manzo
Authorized to Provide Professional Services to:         The Official Committee of
                                                        Unsecured Creditors


Date of Order Authorizing Employment:                   June 21, 2001

Compensation Sought:
        Application Date:        June 28, 2001
        Application Period:      April 20, 2001 through April 30, 2001


|                                | Hours | Amount      |
|--------------------------------|-------|-------------|
| Professional Fees (80%)        | 41.4  | $12,806.40  |
| Expense Reimbursement (100%)   |       | 667.95      |
| Total                          |       | $13,474.35  |

Is this a first application?  Yes __X__  No ____

FIRST INTERIM APPLICATION OF FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM APRIL 20, 2001 THROUGH APRIL 30, 2001)

INDEX

APPLICATION FOR ALLOWANCE OF INTERIM
COMPENSATION AND REIMBURSEMENT OF EXPENSES

EXHIBIT A    Affidavit of Edwin N. Ordway, Jr.

EXHIBIT B    Summary of the services performed by FTI Policano & Manzo from April
20, 2001 through April 30, 2001

EXHIBIT C    Summary of fees by professional for the period April 20, 2001 through
April 30, 2001

EXHIBIT D    Detailed descriptions of services rendered by professional for the period
April 20, 2001 through April 30, 2001

EXHIBIT E    Summary of expenses incurred for the period April 20, 2001 through April
30, 2001

## APPLICATION FOR ALLOWANCE OF
## INTERIM COMPENSATION AND REIMBURSEMENT
## OF EXPENSES

### I.    Introduction

This is the first application for allowance of interim compensation and reimbursement of expenses ("First Interim Application") made by FTI Policano & Manzo ("FTI P&M" or "Applicant"), as Financial Advisors to the Official Committee of Unsecured Creditors (the "Committee") of W.R. Grace & Co. et. al., (the "Company" or "Debtors") for the period April 20, 2001 through April 30, 2001 ("First Interim Period"). In connection with this application, the Applicant submits as follows:

1. FTI P&M is a firm of financial advisors specializing in insolvency restructuring and related matters, and is an operating unit of FTI Consulting, Inc.

2. FTI P&M was retained by the Committee as Financial Advisors to the Committee pursuant to an approved by the Court dated June 21, 2001 (the "Employment Order").

3. On May 3, 2001, the Court entered an order establishing procedures for interim compensation and reimbursement of expenses for all professionals and committee members ("Interim Compensation Order").

4. The Interim Compensation Order requires each professional to submit monthly statements to various parties as stated in the Interim Compensation Order. These monthly statements include a detailed schedule of the services rendered and the expenses incurred for the related period, and are submitted on or about the 28th day of every month. Following a 20 day period for notice and resolution of objections, the Interim Compensation Order requires the Debtors to promptly pay (i) 80% of undisputed professional fees; and (ii) 100% of the undisputed expenses detailed in the monthly statement.

5. During the First Interim Period, FTI P&M submitted the following monthly statements to the parties in the Interim Compensation Order:

| Period | Fees | Expenses |
|---|---|---|
| 4/20-4/30/01 | $16,008.00 | $667.95 |

6. Through the date of this First Interim Application, FTI P&M has not been paid for the professional fees rendered nor the expenses incurred that were included in the monthly statements for the First Interim Period.

7. FTI P&M submits this First Interim Application, pursuant to Section 330 and 331 of the United States Bankruptcy Code and Bankruptcy Rule 2016, for an interim

allowance for compensation for professional services rendered to the Debtors of $12,806.40, representing 80% of fees incurred, and for the reimbursement of expenses in connection therewith of $667.95 for the period April 20, 2001 through April 30, 2001. To date, Applicant has not been paid for the professional services rendered nor for reimbursement of expenses.

8. During the First Interim Period, the Applicant rendered professional services required by the Debtors and their counsel aggregating a total of 41.4 hours in the discharge of its duties as financial advisor and bankruptcy consultant to the Committee.

9. The Applicant believes that the interim fees applied for herein for professional services rendered in performing accounting and advisory services for the Committee in this proceeding are fair and reasonable in view of the time spent, the extent of work performed, the nature of the Debtors' capitalization structure and financial condition, the Debtor's financial accounting resources and the results obtained. Applicant has attached to this First Interim Application, as Exhibit D, a complete accounting of the time expended by professionals who worked on this matter during the First Interim Period. Since this application only covers a ten-day period and the Applicant's initial activities were limited, the Applicant's work during this period has been categorized into only four separate tasks, each of which is described in detail in Exhibit B. Additional task codes will be added in subsequent applications.

10. Section II below briefly discusses the history of the Company prior to its filing, issues facing the Company during the Chapter 11 period, and the major tasks performed by the Applicant during the First Interim Period.

## II.    Background

1. On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. Pursuant to an Application submitted to the Court on or about May 17, 2001, and by a Court order dated June 21, 2001, FTI P&M was retained as financial advisors for the Committee, nunc pro tunc to April 20, 2001. Since its retention, FTI P&M has continuously and vigorously pursued the Committee's interests in these cases.

3. The Debtors have represented, among other things, that: (a) the Debtors engage in specialty chemicals and materials businesses, operating on a worldwide basis, with their corporate headquarters located in Columbia, Maryland; (b) The Debtors predominantly operate through two business units – Davison Chemicals and Performance Chemicals; (c) the Debtors' parent company, W.R. Grace & Co. ("Grace"), is a global holding company that conducts substantially all of its business through a direct, wholly

owned subsidiary, W.R. Grace & Co. – Conn. ("Grace-Conn"); (d) Grace-Conn owns substantially all of the assets, properties and rights of Grace in the United States and has 76 domestic subsidiaries and affiliates, 60 of which are Debtors and Debtors in possession in the Chapter 11 Cases.

4.    The following summary is not intended to be a detailed description of the work performed as those day-to-day services and the time expended in performing such services as those are fully set forth in Exhibit D.    Rather, it is merely an attempt to highlight those areas in which services were rendered to the Committee during the Compensation Period, including (i) Analysis of information provided by the Debtor regarding critical vendors (ii) Analysis of information provided by the Debtor regarding compensation and retention issues (iii) Financial monitoring, (iv) Meetings and phone conferences with Debtors' management and counsel and with Committee counsel, and (v) Other Matters.

5.    FTI P&M has played an important role in assisting the Creditors to understand and negotiate several substantial and complex issues, notably the assumption of employee executory contracts, the structuring of severance and retention bonuses to employees, and the identification of critical vendors.    These issues greatly impact the general unsecured creditors of the Debtors.

6.    FTI P&M's role included the preparation and communication of various financial analyses requested by the Official Committee of Unsecured Creditors' professionals in order to assist their rapid understanding of the issues facing the Debtors.

7.    For the Compensation Period, FTI P&M seeks compensation totaling $13,474.35, representing 80% of fees incurred and 100% of expenses incurred.    FTI P&M expended an aggregate of 48.6 hours, substantially all of which was expended by five professionals.    The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.    A small staff was utilized to optimize efficiencies and avoid redundant efforts.    The staff of the Debtors has been utilized where practical and prudent.

8.    In addition, FTI P&M incurred out-of-pocket expenses in connection with the rendition of the professional services described above in the sum of $667.95 for which FTI P&M respectfully requests reimbursement in full.    All expenses were billed at actual cost, exclusive of amortization of the cost of investment, equipment or capital outlay.    Internal charges for outgoing out-of-town facsimile transmissions were billed at $1.25 per page for domestic transmissions.    Photocopy charges were billed at actual cost for external copying and $.20 per page for internal copying.    FTI P&M believes that these charges reflect its actual out-of-pocket costs.

9.    The disbursements and expenses have been incurred in accordance with FTI P&M's normal practice by charging clients for expenses clearly related to and required by particular matters.    Such expenses were often incurred to enable FTI P&M to devote time beyond normal office hours to matters which imposed extraordinary time

demands. FTI P&M has endeavored to minimize these expenses to the fullest extent possible.

10.     FTI P&M's approach is to utilize senior, experienced personnel and to encourage the Debtors to provide the staff-level support and analysis to minimize total cost. In addition, FTI P&M's per diem rates for professionals of comparable experience are 15% to 25% lower than its competitors, the "Big-Five" accounting firms and certain other nationally-recognized specialty firms.

11.     Because FTI P&M's core staff consisted of senior professionals who performed a vast amount of the work, time spent communicating internally and reviewing the work product of junior associates was kept to a minimum. Additionally, because of the experience of FTI P&M's professionals, in many instances only one or two FTI P&M representatives attended meetings or performed specific functions.

12.     Edwin N. Ordway, Jr., Managing Director in charge of this case, directed the activities of the FTI P&M team, calling upon his more than ten years of experience in restructuring and insolvency matters, including more than 100 cases, many as large and complex, and some larger and more complex than this matter.

III.    **Summary of Fees and Expenses Incurred**

13.     To the best of the Applicant's knowledge and belief, there has been no duplication of services between the Applicant and any other accountants or consultants to the bankruptcy estate.

14.     FTI P&M's travel time policy is for professional personnel to travel outside of business hours when possible. Such time is not charged to a client unless productive work is performed during the travel period. In this engagement, non-productive travel time is not being charged to the Debtor.

15.     In providing a reimbursable service such as copying or telephone, the Applicant does not make a profit on that service. In charging for a particular service, FTI P&M does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay. In seeking reimbursement for a service which the Applicant justifiably purchased or contracted for from a third party, FTI P&M requests reimbursement only for the amount billed to FTI P&M by such third party vendor and paid by FTI P&M to that vendor.

16.     FTI P&M's policy with respect to word processing and document preparation and handling services provided by FTI P&M employees is to bill clients by the hour for such time, but only if the employees' time is clearly and exclusively devoted to work performed for that particular client, as for the preparation, collation and binding of a report for a client. Such services are billed to the Debtor at a rate commensurate with that which would be charged by a third party provider such as a temporaries agency.

17.     Annexed hereto as Exhibit B is a more comprehensive summary of the services performed by the Applicant during the Second Interim Period at the direction of the Debtor and its Counsel.

18.     Annexed hereto as Exhibit C is a summary of fees by professional and by task during the Second Interim Period.

19.     Annexed hereto as Exhibit D are detailed descriptions of the time spent by each professional during the Second Interim Period.

20.     Pursuant to Rule 2016, FTI P&M states that no compensation to be received in this proceeding will be shared with any person or entity outside of FTI Policano & Manzo and that no compensation has been paid or promised to the Applicant in connection with the compensation sought in this Application except as disclosed herein. No prior application has been made to this or any other Court for the relief requested herein for the Compensation Period, nor has any payment been received by FTI P&M on account of its accounting and financial advisory services rendered or on account of the out-of-pocket expenses incurred in connection therewith.

21.     As stated in the Affidavit of Edwin N. Ordway, Jr. annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

22.     The Debtors will give notice of the relief requested herein and of the relief requested by the other professionals in their respective applications for allowance of compensation by serving notice of this application upon all parties that have requested notice in these cases, and FTI P&M has personally served copies of the Application with exhibits to the Debtors and on the United States Trustee.

23.     WHEREFORE, the Applicant respectfully requests that this Court enter an order:

   a. approving the allowance of compensation for professional services rendered to the Committee during the period from April 20, 2001 through and including April 30, 2001 in the amount of $16,008.00;

   b. approving the reimbursement of FTI P&M's out-of-pocket expenses incurred in connection with the rendering of such services during the period from April 20, 2001 through and including April 30, 2001 in the amount of $667.95; and

   c. authorizing the Debtor to pay as interim compensation to FTI P&M 80% of the amount of the professional services rendered and 100% of the

expenses incurred by FTI P&M during the period from April 20, 2001 through and including April 30, 2001, subject to final payment of the full amount; and

d.  granting such other and further relief as this Court may deem just and proper.

Date: _____

FTI Policano & Manzo

By _____

FTI Policano & Manzo
Park 80 West, Plaza 1
Saddle Brook, NJ 07663
(201) 843-4900

Edwin N. Ordway, Jr

Exhibit A

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W.R. GRACE & CO., et al.** | ) | **Case No. 01-01139 (JJF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

## AFFIDAVIT

STATE OF NEW JERSEY  )
                                          ) ss:
COUNTY OF BERGEN   )


EDWIN N. ORDWAY, JR., being duly sworn, deposes and says:

      1.     I am a Managing Director of FTI Policano & Manzo, ("FTI P&M"), an

operating unit of FTI Consulting, Inc. ("FTI"), and I am duly authorized to make this

affidavit on behalf of FTI P&M.  FTI P&M provides financial consulting services for

restructuring matters and has its principal office at Park 80 West Plaza I, Saddle Brook,

New Jersey.  FTI P&M has provided financial consulting services to and has rendered

professional services on behalf of the Official Committee of Unsecured Creditors (the

"Committee") of W. R. Grace & Co., and sixty-one of its domestic subsidiaries and

affiliates which are debtors and debtors-in-possession before this Court.

      2.     This affidavit is submitted pursuant to Bankruptcy Rule 2016(a) in support

of FTI P&M's second monthly application for an interim allowance of compensation and

for the reimbursement of expenses for services rendered during the period from April 20, 2001 through and including April 30, 2001 in the aggregate amount of $13,474.35.

3.      All services for which compensation is requested by FTI P&M were professional services performed for and on behalf of the Committee from April 20, 2001 through and including April 30, 2001 and not on behalf of any other person.

4.      In accordance with Title 18 U.S.C. Section 155, neither I nor any employee of my firm has entered into any agreement, express or implied, with any other party-in-interest for the purpose of fixing the amount of any of the fees or other compensation to be allowed out of or paid from the Debtors' assets.

5.      In accordance with Section 504 of the Bankruptcy Code, no agreement or understanding exists between me, my firm, or any employee thereof, on the one hand, and any other person, on the other hand, for division of such compensation as my firm may receive for services rendered in connection with these cases, nor will any division of fees prohibited by Section 504 of the Bankruptcy Code be made by me or any employee of my firm.

EDWIN N. ORDWAY, JR.

Sworn to before me this
25 day of June, 2001


Notary Public

**JEANINE LOSINO**
Notary Public of New Jersey
My Commission Expires May 16, 2002

**Exhibit B**

## SUMMARY OF THE SERVICES PERFORMED BY FTI POLICANO & MANZO DURING THE FIRST INTERIM PERIOD

**Task Code 1 - Preparation for and Participation at Creditors Committee Meetings or Conference Calls** (9.4 Hours)

FTI P&M participated in two committee meetings during April:

1. April 20th: Discussed critical vendor and compensation related issues.
2. April 27th: Discussed recommendations regarding critical vendor motions.

**Task Code 2 - Issues Related to Chapter 11 Operating Issues, Such As Critical Vendor Motions, Reclamation Claims, Executory Contracts and Similar Issues** (13.2 Hours)

FTI P&M analyzed, through review of supporting data provided by the Debtor and discussions with management, critical vendor issues, including necessity of payments, Debtor's revised proposal, limitations and similar issues. Based on such work, we developed recommendations to the committee.

**Task Code 3 - Employee Compensation Issues** (11.7 Hours)

FTI P&M reviewed and analyzed, through data supplied by the Debtor, the overall cost and participation levels of all benefit plans for both active and retired employees of the Company. Analysis of such work was presented to the committee for purposes of evaluating and recommending continuation of Company employee wage and benefit arrangements.

**Task Code 4 - Analysis of Financial Data, Including Business Plan, Projections Forecasts, Cash Flow Forecasts and Historical Information** (7.1 Hours)

FTI P&M began analysis of financial historical data for purposes of developing an understanding of issues that can affect future performance.

**Exhibit C**
**Page 1 of 2**

### W.R. GRACE & CO. ET. AL.
Summary of Fees by Professional
For the period April 20, 2001 through April 30, 2001

| | Total Hours April | Billing Rate | Amount |
|---|---|---|---|
| M. Policano | 2.4 | $525 | $ 1,260.00 |
| E. Ordway | 9.3 | $475 | 4,417.50 |
| S. Cunningham | 16.9 | $405 | 6,844.50 |
| C. MacCallum | 10.8 | $295 | 3,186.00 |
| M. Hakoun | 2.0 | $150 | 300.00 |
| | 41.4 | | $ 16,008.00 |

Exhibit C
Page 2 of 2

W.R. GRACE & CO. ET. AL.
Hours by Task and Professional
For the period April 20, 2001 through April 30, 2001

| TASK CODE | TASK | M. Policano | E. Ordway | S. Cunningham | C. MacCallum | M. Hakoun | TOTAL |
|---|---|---|---|---|---|---|---|
| 1 | Meetings of Creditors | 2.4 | 4.6 | 2.4 | | | 9.4 |
| 2 | Chapter 11 Operating Issues | | 2.7 | 10.5 | | | 13.2 |
| 3 | Employee Compensation Issues | | 2.0 | 2.4 | 7.3 | | 11.7 |
| 4 | Business Analyses | | | 1.6 | 3.5 | 2.0 | 7.1 |
| | TOTAL | 2.4 | 9.3 | 16.9 | 10.8 | 2.0 | 41.4 |

**Exhibit D**

W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Michael Policano
For the period April 20, 2001 through April 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 20-Apr | 1 | Attended meeting with committee and counsel to discuss critical vendor motion and compensation issues; participated in conference call with Debtors' management and counsel regarding same issues. | 2.4 |
| | | Total hours - April | 2.4 |

Exhibit D

## W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Edwin N. Ordway, Jr.
For the period April 20, 2001 through April 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 20-Apr | 1 | Attended meeting with committee and counsel to discuss critical vendor motion and compensation issues; participated in conference call with Debtors' management and counsel regarding same issues. | 2.4 |
| 23-Apr | 2 | Read and analyzed information provided by Debtor regarding critical vendors. | 0.3 |
| | 2 | Participated in conference call with Debtors' management to discuss and analyze critical vendors and revised proposal therefor. | 1.1 |
| 26-Apr | 3 | Participated in conference call with committee counsel and Debtors' representatives regarding motions concerning compensation matters. | 2.0 |
| | 2 | Analyzed data regarding critical vendors including payments to date, amounts outstanding and credit terms. | 0.6 |
| | 2 | Conference call with counsel to discuss critical vendor retention issues. | 0.7 |
| 27-Apr | 1 | Prepared for conference call with committee and counsel to discuss critical vendors. | 0.5 |
| | 1 | Participated in conference call and presented findings regarding critical vendor analysis/discussion with Debtors. | 1.7 |

Total hours - April                                                                  9.3

Exhibit D

## W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Sean Cunningham
For the period April 20, 2001 through April 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 20-Apr | 1 | Attended meeting with committee and counsel to discuss critical vendor motion and compensation issues; participated in conference call with Debtors' management and counsel regarding same issues. | 2.4 |
| | 4 | Read and analyzed most recent publicly available financial reports and selected analysts' reports regarding asbestos cases. | 1.6 |
| 22-Apr | 2 | Reviewed Critical Vendor information in prepartion for conference call with JP Forehand- VP OPS and staff. | 1.5 |
| 23-Apr | 2 | Participated in conference call with Debtor management to discuss and analyze critical vendors and revised proposal therefor. | 1.6 |
| 25-Apr | 2 | Discussed revised critical vendor proposal with Debtor. | 0.7 |
| | 2 | Prepared analysis of changes in Company proposal from original submission. | 1.8 |
| 25-Apr | 2 | Discussed with Counsel proposed revisions to Critical Vendor Motion as requested by Debtor. | 0.7 |
| 26-Apr | 3 | Participated in conference call with Counsel and Company to discuss various employee motions and plans. | 2.4 |
| 26-Apr | 2 | Discussed Critical Vendor Motion issues with Counsel. | 0.7 |
| 27-Apr | 2 | Prepared analysis outlining revised Company proposal and prepetition balances due critical vendors. | 2.8 |
| 27-Apr | 2 | Reviewed and discussed draft of vendor data with Counsel. | 0.8 |
| | | Total hours - April | 16.9 |

**Exhibit D**

### W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Craig MacCallum
For the period April 20, 2001 through April 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 30-Apr | 3 | Reviewed Debtors' Motion to Pay Prepetition Wages. | 3.0 |
| | 3 | Read and analyzed employment agreements for six officers of Debtor. | 2.0 |
| | 3 | Performed comparative analysis of retention program motions for Armstrong and Owens Corning. | 2.3 |
| | 4 | Reviewed publicly available financial reports and selected analysts' reports on Debtor, competitors, and other companies facing asbestos litigation and in bankruptcy. | 3.5 |
| | | Total hours - April | 10.8 |

**Exhibit D**

W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Matthew Hakoun
For the period April 20, 2001 through April 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 30-Apr | 4 | Collected and assembled research materials on comparable public companies in bankruptcy facing asbestos litigation. | 2.0 |
| | | Total hours - April | 2.0 |

**Exhibit E**
**Page 1 of 2**

W.R. GRACE & CO. ET. AL.
Summary of Expenses by Type of Expense
For the period April 20, 2001 through April 30, 2001

| | | |
|---|---|---|
| Copies: | | |
| Internal | S | 44.20 |
| External | | - |
| Telecommunications: | | |
| Toll Charges | | - |
| Facsimile | | - |
| Postage, Federal Express | | - |
| Travel Expenses: | | |
| Transportation, lodging, tolls and parking | | 80.00 |
| Meals | | - |
| Computer Charges | | - |
| Word Processing | | 431.25 |
| Document Preparation and Handling Services | | 112.50 |
| | | |
| Total Expenses | S | 667.95 |

W.R. GRACE & CO. ET. AL.
Detail of Expenses by Type of Expense
For the period April 20, 2001 through April 30, 2001

| | | | | | |
|---|---|---|---|---|---|
| Copies, Internal | Total for Month | 221 | pages @ $0.20/page: | | $ 44.20 |

Transportation, lodging, tolls and parking:

| | | | | |
|---|---|---|---|---|
| E. Ordway | 20-Apr | Parking, meeting attendance | 40.00 | |
| S.Cunningham | 20-Apr | Parking, meeting attendance | 40.00 | |
| | | Subtotal | | 80.00 |

Word Processing Services:

| | | | |
|---|---|---|---|
| | 25-Apr | 0.50 | 37.50 |
| | 26-Apr | 0.25 | 18.75 |
| | 27-Apr | 0.50 | 37.50 |
| | 30-Apr | 4.50 | 337.50 |
| | | Subtotal | 431.25 |

Document Preparation and Handling Services:

| | | | |
|---|---|---|---|
| | 20-Apr | 1.0 hours @ $75/hour: | 75.00 |
| | 21-Apr | 0.5 hours @ $75/hour: | 37.50 |
| | | Subtotal | 112.50 |

| | | |
|---|---|---|
| Total Expenses | | $ 667.95 |

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

---------------------------x

In re:                                    Chapter 11

W.R. GRACE & Co., et al.,                 Case No.  01-01139(JJF)
                                          (Jointly Administered)

                    Debtors

---------------------------x

ORDER ALLOWING FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD APRIL 20, 2001 THROUGH APRIL 30, 2001)

Upon the Application, dated _____ (the "Application"), of FTI P&M, as

Financial Advisors to the Official Committee of Unsecured Creditors (the "Committee)

for Allowance of Interim Compensation in the amount of $12,806.40 for Actual and

Necessary Services Rendered and for Reimbursement of Actual and Necessary Expenses

Incurred in the amount of $667.95 for the Period from April 20, 2001 through April 30,

2001 (the "Application Period"); the Court having reviewed the Application; and finding

that the Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 157 and

1334; and after notice and opportunity for a hearing to consider the Application; and

upon the record and after due deliberation thereon; and due and proper notice of the

Application having been given; and sufficient cause appearing therefor;

IT IS HEREBY ORDERED:

1.       The Application is GRANTED.

2.       FTI P&M is allowed interim compensation in the amount of $12,806.40 for actual, reasonable and necessary professional services rendered on behalf of the Committee during the Application Period, and reimbursement of $667.95 for actual, reasonable and necessary expenses incurred during the Application Period.

3.       The Debtors shall pay to FTI P&M the amount of $13,474.35, which is equal to the sum of FTI P&M's allowed compensation and expense reimbursement out of the assets of their estates.


Dated:  Wilmington, Delaware

_____ _____, 2001


_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit C**

**Fee Application for the period**

**May 1 – May 31, 2001**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------x

In re:                                    Chapter 11

W.R. GRACE & Co., et al.,                 Case No. 01-01139(JJF)
                                          (Jointly Administered)


                    Debtors

-------------------------x


SECOND INTERIM APPLICATION OF FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM MAY 1, 2001 THROUGH MAY 31, 2001)

Type of Application: Interim ____X____    Final _____

Name of Applicant:                        FTI Policano & Manzo
Authorized to Provide Professional Services to:    The Official Committee of
                                          Unsecured Creditors


Date of Order Authorizing Employment:     June 21, 2001

Compensation Sought:
        Application Date:        June 28, 2001
        Application Period:      May 1, 2001 through May 31, 2001


|                                  | Hours  | Amount       |
|----------------------------------|--------|--------------|
| Professional Fees (80%)          | 339.3  | $83,265.20   |
| Expense Reimbursement (100%)     |        | 2,513.09     |
|                                  |        |              |
| Total                            |        | $85,778.29   |

Is this a first application? Yes ____  No_X_

SECOND INTERIM APPLICATION OF FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM MAY 1, 2001 THROUGH MAY 31, 2001)

INDEX

APPLICATION FOR ALLOWANCE OF INTERIM
COMPENSATION AND REIMBURSEMENT OF EXPENSES

EXHIBIT A    Affidavit of Edwin N. Ordway, Jr.

EXHIBIT B    Summary of the services performed by FTI Policano & Manzo from May 1, 2001 through May 31, 2001

EXHIBIT C    Summary of fees by professional for the period May 1, 2001 through May 31, 2001

EXHIBIT D    Detailed descriptions of services rendered by professional for the period May 1, 2001 through May 31, 2001

EXHIBIT E    Summary of expenses incurred for the period May 1, 2001 through May 31, 2001

## APPLICATION FOR ALLOWANCE OF
## INTERIM COMPENSATION AND REIMBURSEMENT
## OF EXPENSES

### I.    Introduction

This is the second application for allowance of interim compensation and reimbursement of expenses ("Second Interim Application") made by FTI Policano & Manzo ("FTI P&M" or "Applicant"), as Financial Advisors to the Official Committee of Unsecured Creditors (the "Committee) of W.R. Grace & Co. et. al., (the "Company" or "Debtors") for the period May 1, 2001 through May 31, 2001 ("Second Interim Period").  In connection with this application, the Applicant submits as follows:

1. FTI P&M is a firm of financial advisors specializing in insolvency restructuring and related matters, and is an operating unit of FTI Consulting, Inc.

2. FTI P&M was retained by the Committee as Financial Advisors to the Committee pursuant to an approved by the Court dated June 21, 2001 (the "Employment Order").

3. On May 3, 2001, the Court entered an order establishing procedures for interim compensation and reimbursement of expenses for all professionals and committee members ("Interim Compensation Order").

4. The Interim Compensation Order requires each professional to submit monthly statements to various parties as stated in the Interim Compensation Order.  These monthly statements include a detailed schedule of the services rendered and the expenses incurred for the related period, and are submitted on or about the 28th day of every month. Following a 20 day period for notice and resolution of objections, the Interim Compensation Order requires the Debtors to promptly pay (i) 80% of undisputed professional fees; and (ii) 100% of the undisputed expenses detailed in the monthly statement.

5. During the Second Interim Period, FTI P&M submitted the following monthly statements to the parties in the Interim Compensation Order:

| Period | Fees | Expenses |
|---|---|---|
| 5/1-5/31/01 | $104,081.50 | $2,513.09 |

6. Through the date of this Second Interim Application, FTI P&M has not been paid for the professional fees rendered nor the expenses incurred that were included in the monthly statements for the Second Interim Period.

7. FTI P&M submits this Second Interim Application, pursuant to Section 330 and 331 of the United States Bankruptcy Code and Bankruptcy Rule 2016, for an interim

allowance for compensation for professional services rendered to the Debtors of $83,265.20, representing 80% of fees incurred, and for the reimbursement of expenses in connection therewith of $2,513.09 for the period May 1, 2001 through May 31, 2001. To date, Applicant has not been paid for the professional services rendered nor for reimbursement of expenses.

8. During the Second Interim Period, the Applicant rendered professional services required by the Debtors and their counsel aggregating a total of 339.3 hours in the discharge of its duties as financial advisor and bankruptcy consultant to the Committee.

9. The Applicant believes that the interim fees applied for herein for professional services rendered in performing accounting and advisory services for the Committee in this proceeding are fair and reasonable in view of the time spent, the extent of work performed, the nature of the Debtors' capitalization structure and financial condition, the Debtor's financial accounting resources and the results obtained. Applicant has attached to this Second Interim Application, as Exhibit D, a complete accounting of the time expended by professionals who worked on this matter during the Second Interim Period. The Applicant's work during this period has been categorized into six separate tasks, each of which is described in detail in Exhibit B. Additional task codes may be added in subsequent applications.

10. Section II below briefly discusses the history of the Company prior to its filing, issues facing the Company during the Chapter 11 period, and the major tasks performed by the Applicant during the Second Interim Period.

## II.   Background

1. On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. Pursuant to an Application submitted to the Court on or about May 17, 2001, and by a Court order dated June 21, 2001, FTI P&M was retained as financial advisors for the Committee, nunc pro tunc to April 20, 2001. Since its retention, FTI P&M has continuously and vigorously pursued the Committee's interests in these cases.

3. The Debtors have represented, among other things, that: (a) the Debtors engage in specialty chemicals and materials businesses, operating on a worldwide basis, with their corporate headquarters located in Columbia, Maryland; (b) The Debtors predominantly operate through two business units – Davison Chemicals and Performance Chemicals; (c) the Debtors' parent company, W.R. Grace & Co. ("Grace"), is a global holding company that conducts substantially all of its business through a direct, wholly

owned subsidiary, W.R. Grace & Co. – Conn. ("Grace-Conn"); (d) Grace-Conn owns substantially all of the assets, properties and rights of Grace in the United States and has 76 domestic subsidiaries and affiliates, 60 of which are Debtors and Debtors in possession in the Chapter 11 Cases.

4.      The following summary is not intended to be a detailed description of the work performed as those day-to-day services and the time expended in performing such services as those are fully set forth in Exhibit D.  Rather, it is merely an attempt to highlight those areas in which services were rendered to the Committee during the Compensation Period, including (i) Analysis of information provided by the Debtor regarding critical vendors (ii) Analysis of information provided by the Debtor regarding compensation and retention issues (iii) Financial monitoring, (iv) Meetings and phone conferences with Debtors' management and counsel and with Committee counsel, and (v) Other Matters.

5.      FTI P&M has played an important role in assisting the Creditors to understand and negotiate several substantial and complex issues, notably the assumption of employee executory contracts, the structuring of severance and retention bonuses to employees, and the identification of critical vendors.  These issues greatly impact the general unsecured creditors of the Debtors.

6.      FTI P&M's role included the preparation and communication of various financial analyses requested by the Official Committee of Unsecured Creditors' professionals in order to assist their rapid understanding of the issues facing the Debtors.

7.      For the Compensation Period, FTI P&M seeks compensation totaling $85,778.29, representing 80% of fees incurred and 100% of expenses incurred.  FTI P&M expended an aggregate of 339.3 hours, substantially all of which was expended by eight professionals.  The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.  A small staff was utilized to optimize efficiencies and avoid redundant efforts.  The staff of the Debtors has been utilized where practical and prudent.

8.      In addition, FTI P&M incurred out-of-pocket expenses in connection with the rendition of the professional services described above in the sum of $2,513.09 for which FTI P&M respectfully requests reimbursement in full.  All expenses were billed at actual cost, exclusive of amortization of the cost of investment, equipment or capital outlay.  Internal charges for outgoing out-of-town facsimile transmissions were billed at $1.25 per page for domestic transmissions.  Photocopy charges were billed at actual cost for external copying and $.20 per page for internal copying.  FTI P&M believes that these charges reflect its actual out-of-pocket costs.

9.      The disbursements and expenses have been incurred in accordance with FTI P&M's normal practice by charging clients for expenses clearly related to and required by particular matters.  Such expenses were often incurred to enable FTI P&M to devote time beyond normal office hours to matters which imposed extraordinary time

demands. FTI P&M has endeavored to minimize these expenses to the fullest extent possible.

10. FTI P&M's approach is to utilize senior, experienced personnel and to encourage the Debtors to provide the staff-level support and analysis to minimize total cost. In addition, FTI P&M's per diem rates for professionals of comparable experience are 15% to 25% lower than its competitors, the "Big-Five" accounting firms and certain other nationally-recognized specialty firms.

11. Because FTI P&M's core staff consisted of senior professionals who performed a vast amount of the work, time spent communicating internally and reviewing the work product of junior associates was kept to a minimum. Additionally, because of the experience of FTI P&M's professionals, in many instances only one or two FTI P&M representatives attended meetings or performed specific functions.

12. Edwin N. Ordway, Jr., Managing Director in charge of this case, directed the activities of the FTI P&M team, calling upon his more than ten years of experience in restructuring and insolvency matters, including more than 100 cases, many as large and complex, and some larger and more complex than this matter.

III.    Summary of Fees and Expenses Incurred

13. To the best of the Applicant's knowledge and belief, there has been no duplication of services between the Applicant and any other accountants or consultants to the bankruptcy estate.

14. FTI P&M's travel time policy is for professional personnel to travel outside of business hours when possible. Such time is not charged to a client unless productive work is performed during the travel period. In this engagement, non-productive travel time is not being charged to the Debtor.

15. In providing a reimbursable service such as copying or telephone, the Applicant does not make a profit on that service. In charging for a particular service, FTI P&M does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay. In seeking reimbursement for a service which the Applicant justifiably purchased or contracted for from a third party, FTI P&M requests reimbursement only for the amount billed to FTI P&M by such third party vendor and paid by FTI P&M to that vendor.

16. FTI P&M's policy with respect to word processing and document preparation and handling services provided by FTI P&M employees is to bill clients by the hour for such time, but only if the employees' time is clearly and exclusively devoted to work performed for that particular client, as for the preparation, collation and binding of a report for a client. Such services are billed to the Debtor at a rate commensurate with that which would be charged by a third party provider such as a temporaries agency.

17.     Annexed hereto as Exhibit B is a more comprehensive summary of the services performed by the Applicant during the Second Interim Period at the direction of the Debtor and its Counsel.

18.     Annexed hereto as Exhibit C is a summary of fees by professional and by task during the Second Interim Period.

19.     Annexed hereto as Exhibit D are detailed descriptions of the time spent by each professional during the Second Interim Period.

20.     Pursuant to Rule 2016, FTI P&M states that no compensation to be received in this proceeding will be shared with any person or entity outside of FTI Policano & Manzo and that no compensation has been paid or promised to the Applicant in connection with the compensation sought in this Application except as disclosed herein. No prior application has been made to this or any other Court for the relief requested herein for the Compensation Period, nor has any payment been received by FTI P&M on account of its accounting and financial advisory services rendered or on account of the out-of-pocket expenses incurred in connection therewith.

21.     As stated in the Affidavit of Edwin N. Ordway, Jr. annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

22.     The Debtors will give notice of the relief requested herein and of the relief requested by the other professionals in their respective applications for allowance of compensation by serving notice of this application upon all parties that have requested notice in these cases, and FTI P&M has personally served copies of the Application with exhibits to the Debtors and on the United States Trustee

23.     WHEREFORE, the Applicant respectfully requests that this Court enter an order:

    a.  approving the allowance of compensation for professional services rendered to the Committee during the period from May 1, 2001 through and including May 31, 2001 in the amount of $104,081.50;

    b.  approving the reimbursement of FTI P&M's out-of-pocket expenses incurred in connection with the rendering of such services during the period from May 1, 2001 through and including May 31, 2001 in the amount of $2,513.09; and

    c.  authorizing the Debtor to pay as interim compensation to FTI P&M 80% of the amount of the professional services rendered and 100% of the

expenses incurred by FTI P&M during the period from May 1, 2001 through and including May 31, 2001, subject to final payment of the full amount; and

d.  granting such other and further relief as this Court may deem just and proper.

Date: _____

FTI Policano & Manzo

By _____

FTI Policano & Manzo
Park 80 West, Plaza 1
Saddle Brook, NJ  07663
(201) 843-4900

*Edwin N. Ordway, Jr.*

EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W.R. GRACE & CO., et al.** | ) | **Case No. 01-01139 (JJF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

## AFFIDAVIT

STATE OF NEW JERSEY  )
                     ) ss:
COUNTY OF BERGEN     )


EDWIN N. ORDWAY, JR., being duly sworn, deposes and says:

1.          I am a Managing Director of FTI Policano & Manzo, ("FTI P&M"), an operating unit of FTI Consulting, Inc. ("FTI"), and I am duly authorized to make this affidavit on behalf of FTI P&M. FTI P&M provides financial consulting services for restructuring matters and has its principal office at Park 80 West Plaza I, Saddle Brook, New Jersey. FTI P&M has provided financial consulting services to and has rendered professional services on behalf of the Official Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co., and sixty-one of its domestic subsidiaries and affiliates which are debtors and debtors-in-possession before this Court.

2.          This affidavit is submitted pursuant to Bankruptcy Rule 2016(a) in support of FTI P&M's second monthly application for an interim allowance of compensation and for the reimbursement of expenses for services rendered during the

period from May 1, 2001 through and including May 31, 2001 in the aggregate amount of $86,553.29.

3.      All services for which compensation is requested by FTI P&M were professional services performed for and on behalf of the Committee from May 1, 2001 through and including May 31, 2001 and not on behalf of any other person.

4.      In accordance with Title 18 U.S.C. Section 155, neither I nor any employee of my firm has entered into any agreement, express or implied, with any other party-in-interest for the purpose of fixing the amount of any of the fees or other compensation to be allowed out of or paid from the Debtors' assets.

5.      In accordance with Section 504 of the Bankruptcy Code, no agreement or understanding exists between me, my firm, or any employee thereof, on the one hand, and any other person, on the other hand, for division of such compensation as my firm may receive for services rendered in connection with these cases, nor will any division of fees prohibited by Section 504 of the Bankruptcy Code be made by me or any employee of my firm.

EDWIN N. ORDWAY, JR

Sworn to before me this
___ day of June, 2001

_____
Notary Public

**JEANINE LOSINO**
Notary Public of New Jersey
My Commission Expires May 16, 2002

**Exhibit B**

**SUMMARY OF THE SERVICES PERFORMED BY FTI POLICANO & MANZO
DURING THE SECOND INTERIM PERIOD**

**Task Code 1 - Preparation for and Participation at Creditors Committee Meetings
or Conference Calls** (22.0 Hours)

FTI P&M participated in two committee meetings during May:

1. May 1st:     Discussed critical vendor and compensation related issues.
2. May 22nd:   Attended meeting with Committee and Debtor to receive Debtors
               presentation on financial status and case status..

**Task Code 2 - Issues Related to Chapter 11 Operating Issues, Such As Critical
Vendor Motions, Reclamation Claims, Executory Contracts and Similar Issues**
(24.0 Hours)

FTI P&M analyzed, through review of supporting data provided by the Debtor and
discussions with management, critical vendor issues, including necessity of payments,
Debtor's revised proposal, limitations and similar issues.  Based on such work, we
developed recommendations to the Committee.

**Task Code 3 - Employee Compensation Issues** (103.2 Hours)

FTI P&M reviewed and analyzed, through data supplied by the Debtor, the overall cost
and participation levels of all benefit plans for both active and retired employees of the
Company.  Analysis of such work was presented to the Committee to assist them in
evaluating proposed First Day Orders pertaining to compensation matters.

**Task Code 4 - Analysis of Financial Data, Including Business Plan, Projections
Forecasts, Cash Flow Forecasts and Historical Information** (37.8 Hours)

FTI P&M requested and analyzed historical financial data for purposes of developing an
understanding of issues that can affect future performance.

**Task Code 5- Monthly Statement, Retention and Fee Application Preparation** (39.6 Hours)

This category represents the time expended during the Second Interim Period in preparing FTI P&M's Retention Application and the First Application for Allowance of Interim Compensation and Reimbursement of Expenses.

**Task Code 6- Grace competitor profile analysis and analysis of other asbestos related Chapter 11 filings** (112.7 Hours)

FTI P&M prepared a financial and valuation profile of direct competitors and analyzed financial performance data from other companies with asbestos liabilities for the purpose of developing an understanding of issues relating to claim estimation, operating performance, and valuations.

Exhibit C
Page 1 of 2

# W.R. GRACE & CO. ET. AL.
## Summary of Fees by Professional
### For the period May 1, 2001 through May 31, 2001

|  | Total Hours April | Billing Rate | Amount |
|---|---|---|---|
| M. Policano | 4.7 | $525 | S  2,467.50 |
| E. Ordway | 35.5 | $475 | 16,862.50 |
| S. Cunningham | 60.3 | $405 | 24,421.50 |
| J. Schwendeman | 5.0 | $325 | 1,625.00 |
| C. MacCallum | 155.5 | $295 | 45,872.50 |
| M. DiSalvio | 32.0 | $175 | 5,600.00 |
| B. Griffith | 11.5 | $175 | 2,012.50 |
| M. Hakoun | 34.8 | $150 | 5,220.00 |
|  | 339.3 |  | S 104,081.50 |

Exhibit C
Page 2 of 2

W.R. GRACE & CO. ET AL.
Summary of Fees by Professional
For the period May 1, 2001 through May 31, 2001

| TASK CODE | TASK | M. Policano | F. Ordway | S. Cunningham | J. Schwendeman | C. MacCallum | M. Hakoun | M. DiSabio | B. Griffith | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Meetings of Creditors | | 9.0 | 12.4 | | 0.6 | | | | 22.0 |
| 2 | Chapter 11 Operating Issues | 1.1 | 2.7 | 4.8 | | 15.4 | | | | 24.0 |
| 3 | Employee Compensation Issues | 3.6 | 10.1 | 33.4 | | 56.1 | | | | 103.2 |
| 4 | Business Analyses | | 4.0 | 4.9 | | 24.2 | | 3.4 | 1.3 | 37.8 |
| 5 | Fee Application Preparation | | 4.0 | 0.0 | | 35.6 | | | | 39.6 |
| 6 | Competitor Profile Analysis | | 5.7 | 4.8 | 5.0 | 23.6 | 34.8 | 28.6 | 10.2 | 112.7 |
| | TOTAL | 4.7 | 35.5 | 60.3 | 5.0 | 155.5 | 34.8 | 32.0 | 11.5 | 339.3 |

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Michael Policano
For the period May 1, 2001 through May 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 4-May | 2 | Reviewed bankruptcy documents, information request and work plan. | 1.1 |
|  | 3 | Reviewed first day orders related to assumption of employee contracts. | 0.7 |
| 7-May | 3 | Reviewed analysis of employee-related motions in preparation for presentation to the unsecured committee. | 1.6 |
| 8-May | 3 | Analyzed information regarding proposed retention and severance arrangements. | 1.3 |
|  |  | **Total Hours - May** | 4.7 |

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Edwin N. Ordway, Jr.
For the period May 1, 2001 through May 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 1-May | 2 | Participated in committee conference call regarding compensation and critical vendor motion issues. critical vendor motion issues. | 1.3 |
| 2-May | 5 | Prepared court retention documents. | 1.5 |
| 3-May | 4 | Met with Committee chairperson to review scope of services and work plan. | 1.3 |
| 4-May | 2 | Read and analyzed bankruptcy documents, including First Day orders. | 1.1 |
| 7-May | 4 | Based on analysis of Bankruptcy documents, revised/added to detailed workplan. | 0.9 |
| 8-May | 3 | Analyzed information regarding proposed retention and severance arrangements. | 1.8 |
| | 4 | Read and analyzed compensation data included in latest proxy. | 0.5 |
| | 3 | Analzyed comparable Company data regarding senior management compensation. | 0.8 |
| 9-May | 3 | Read and analyzed Company documents regarding LTIP plan and employee contracts. | 1.0 |
| 10-May | 3 | Prepared/edited report regarding analysis of proposed retention and severance arrangements. | 1.8 |
| | 3 | Called counsel to discuss compensation report draft and developed recommendations for the Committee. | 1.2 |
| 11-May | 2 | Read and analyzed counsel's memo regarding recent motions. | 0.3 |
| 16-May | 3 | Participated in conference call with counsel and chair to discuss executive compensation and retention issues. | 0.8 |
| | 6 | Analyzed industry data regarding asbestos claims. | 1.4 |
| 17-May | 3 | Participated in conference call with counsel to discuss positions and issues to be shared with Debtor advisors during May 18 conference call. | 1.2 |
| 18-May | 3 | Participated in conference call with Debtor professionals and Committee counsel regarding compensation issues. | 1.5 |

| | 6 | Read and analyzed analyst reports regarding asbestos-troubled companies. | 0.5 |
|---|---|---|---|
| 21-May | 1 | Prepared for meeting with Committee, Debtors and Debtors' advisors, including: reviewed report regarding compensation issues and prepared notes for oral presentation to Committee; read and analyzed most recent financial statements; and summarized notes for meeting with Debtors to discuss work to be performed and timing. | 2.2 |
| | 6 | Read and analyzed financial data regarding peer group companies. | 2.6 |
| 22-May | 4 | Met with Blackstone and Debtors' management to discuss work to be performed and timetable. | 1.1 |
| | 1 | Attended meeting with Committee and Debtors to receive Debtors presentation on financial status and case status. | 6.1 |
| | 1 | Met with chair and counsel to discuss meeting and next steps. | 0.4 |
| 23-May | 1 | Called Committee member to discuss 5/22 meeting. | 0.3 |
| | 4 | Called Debtors professionals to discuss work plan and information request list. | 0.2 |
| 24-May | 5 | Prepared April fee application. | 1.8 |
| 25-May | 5 | Prepared fee application for April. | 0.7 |
| 30-May | 6 | Analyzed information regarding other asbestos cases and issues concerning claims estimation. | 1.2 |

**Total Hours - May**                                                    35.5

Exhibit D

# W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Sean Cunningham
For the period May 1, 2001 through May 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 1-May | 3 | Updated Chairman as to findings re: compensation issues. | 0.5 |
| | 2 | Participated in conference call with Committee re: employee motions and critical vendor motion. | 1.6 |
| | 2 | Reviewed vendor motion stipulation with counsel. | 0.5 |
| | 3 | Analyzed various employee compensation plans. | 1.5 |
| | 2 | Read and analyzed senior executive contracts. | 1.0 |
| 2-May | 3 | Compiled historical cost data related to employee benefit plans, begin analysis to compare proposal to severance /retention programs implemented in other Chapter 11 cases. | 2.5 |
| | 4 | Drafted project scope, workplan and information request list. | 2.0 |
| 3-May | 1 | Met with Tom Maher - Chairman of Unsecured Committee to review project scope and workplan. | 3.4 |
| 4-May | 2 | Reviewed motion to assume executory contracts. | 1.5 |
| 7-May | 3 | Prepared analysis of employee-related motions in preparation for presentation to the unsecured committee, including executory contract assumption, general retention plan, long term incentive plan, executive severance agreements. | 6.6 |
| | 3 | Discussed employee benefit information received from Company with John Forgach- Senior Benfits Counsel to Company. | 1.2 |
| | 4 | Prepared information request for counsel. Discussed information received to date with counsel. | 1.3 |
| 8-May | 3 | Finalized analysis for creditors committee- re employee motions etc.; discussed benefit-related issues with Company's Senior Benefits Counsel. | 7.5 |
| | 3 | Reviewed report findings with E Ordway- Partner. | 0.9 |
| | 3 | Reviewed report findings with counsel. | 1.3 |
| 9-May | 3 | Updated report to reflect changes to Emploee Motions based on review with counsel. | 3.4 |
| | 3 | Reviewed Stock Option Plan presented by Company ( J. Forgash). | 1.6 |
| 10-May | 1 | Prepared for call with counsel re: compensation issues. | 1.2 |
| 15-May | 3 | Incorporated updated salary and contract information received from J.Forgash into draft report. | 2.0 |

| | | | |
|---|---|---|---|
| | 3 | Reviewed changes with counsel . | 1.0 |
| 16-May | 1 | Participated in conference call with counsel and committee chairman re: Employee Motions. | 0.8 |
| | 3 | Finalized edits to employee motion report to the Unsecured Committee. | 2.4 |
| 18-May | 1 | Participated in conference call with Debtor professionals and Committee counsel regarding compensation issues. | 1.5 |
| | 3 | Reviewed modifications to employee motions and prepared report for issuance. | 1.0 |
| 21-May | 6 | Researched Grace Competitors, other entities with Asbestos Liabilities | 3.0 |
| | 6 | Prepared preliminary valuation/recovery analysis. | 1.8 |
| 22-May | 4 | Met with Blackstone, Tarola re: Information requested and workplan. | 1.0 |
| | 1 | Attended meeting with Committee and Debtors to receive Debtors presentation on financial and case status. | 5.5 |
| 31-May | 4 | Particiapted in conference call with Blackstone re: Information request, schedule meeting. | 0.6 |
| | 2 | Updated counsel re: change of control language- Norris contract. | 0.2 |

**Total Hours - May**                                                                  60.3

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Jeffrey Schwendeman
For the period May 1, 2001 through May 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 16-May | 6 | Researched and analyzed recent increases in asbestos related litigation and potential impact on recorded reserves for Company and competitors. | 1.9 |
| 18-May | 6 | Read and analyzed Johns-Manville Trust agreement re: impact on Company and competitors' potential litigation settlements. | 1.3 |
| 23-May | 6 | Researched and analyzed current and near-term projected market for industrial construction materials. | 1.8 |
| **Total Hours - May** | | | 5.00 |

**Exhibit D**

W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Craig MacCallum
For the period May 1, 2001 through May 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 1-May | 5 | Prepared engagement letter and motion to employ P&M. | 3.1 |
|  | 2 | Collated information on compensation, incentive plans, retention agreements and severance agreements on ten senior executives. | 4.9 |
| 3-May | 2 | Read and analyzed executory employment agreements and change of control agreements for ten senior executives. | 4.3 |
|  | 3 | Read and analyzed debtors' motion to pay prepetition wages, incentive pay and other compensation. | 5.7 |
| 4-May | 2 | Read and analyzed debtors' motion to assume executory employment contracts. | 4.2 |
|  | 3 | Prepared questions and information request list to be submitted to Debtor in connection with review of employee motions and forwarded to counsel. | 4.8 |
| 7-May | 3 | Prepared presentation for Creditors' committee regarding employee motions and terms of executives' contracts. | 9.5 |
|  | 3 | Revised questions and information request list to be submitted to Debtor in connection with review of employee motions and forwarded to counsel. | 1.5 |
| 8-May | 4 | Prepared information request list for submission to Debtor re: operating results, financial condition etc. | 1.1 |
|  | 3 | Continued with preparation of presentation for Creditors' committee regarding employee motions and executives' contracts. | 2.1 |
|  | 3 | Read and analyzed correspondence and schedules supporting general retention plan and litigation/tax department retention program. | 2.0 |
|  | 2 | Compiled information on CEO's compensation, benefits and severance package for inclusion in the presentation. | 2.0 |
|  | 3 | Analyzed and compiled data on stock incentive plans. | 1.8 |
| 9-May | 3 | Prepared analysis of Target Bonus Pool for Long Term Incentive Plan. | 2.0 |
|  | 3 | Researched target & actual bonuses for 2000 & 2001 and prepared chart for inclusion in report. | 1.4 |
|  | 3 | Continued with preparation of presentation for Creditors' committee regarding employee motions and executive contracts. | 6.8 |

| 10-May | 5 | Continued with preparation of motion to employ P&M and statement of qualifications. | 3.5 |
| | 4 | Read and analyzed analysts' reports regarding asbestos reserves at other companies. | 7.0 |
| 11-May | 5 | Completed preparation of engagement letter, motion to employ P&M, E. Ordway affidavit and statement of qualifications. | 8.0 |
| 14-May | 4 | Read and analyzed 10-K for Debtor, including analysis of asbestos matters, segment reporting, tax issues, working capital and capital structure. | 2.5 |
| | 4 | Analyzed and compared cash flow per certified financials with internal reports. | 2.0 |
| | 3 | Continued with preparation of presentation for Creditors' committee regarding employee motions and executives' contracts. | 4.5 |
| 15-May | 4 | *Reviewed and revised information request list for submission to debtor* | 1.2 |
| | 3 | Reviewed and revised presentation for Creditors' committee regarding employee motions and executives' contracts based on internal comments. | 4.8 |
| 16-May | 4 | Continued with review and revision of information request list for submission to Debtor pertaining to analysis of compensation issues. | 2.4 |
| | 4 | Continued with analysis of 10-K and 10-Q for Debtor, including analysis of asbestos matters, segment reporting, tax issues, working capital and capital structure. | 2.3 |
| 17-May | 4 | Read and analyzed 10-K and 10-Q for Debtor, and performed comparative review with other financial information on Debtor. | 2.2 |
| | 4 | *Prepared a comparison and reconciliation of cash flow per 10-Q to internal reports on filing entities.* | 2.5 |
| | 3 | Pweformed industry research regarding retention and severance arrangements in other bankruptcy cases. | 2.6 |
| | 4 | Completed revision of information request list pertaining to compensation matters for submission to Debtor, and forwarded to counsel. | 1.0 |
| 18-May | 5 | Compiled and prepared draft fee application for the period 4/21-4/30/01 | 1.8 |
| | 3 | Reviewed and revised presentation for Creditors' committee regarding employee motions and executives' contracts *based on comments from committee chair and counsel.* | 1.5 |
| | 1 | Prepared report for distribution to Creditors'committee. | 0.6 |
| | 3 | Participated in conference call with counsel regarding retention/severance report and information request list. | 1.5 |
| | 6 | Read and analyzed research information on competitors. | 2.4 |
| 21-May | 5 | Continued with preparation of first interim fee application for the period 4/21 4/30/01. | 1.0 |
| | 6 | Read and analyzed industry research reports on asbestos claims and asbestos-related bankruptcies. | 2.0 |

| | | | |
|---|---|---|---|
| | 3 | Reviewed and revised presentation for Creditors' committee regarding employee motions and executives' contracts based on comments from counsel. | 1.2 |
| | 3 | Prepared analysis of anticipated total LTIP payouts under various growth assumptions. | 2.4 |
| | 6 | Read and analyzed industry research reports on comparable companies. | 1.9 |
| | 6 | Read and analyzed informational brief on asbestos filed by debtor. | 1.5 |
| 22-May | 5 | Continued with preparation of first interim fee application for the period 4/21-4/30/01. | 1.6 |
| | 6 | Prepared outline of report to Creditors' committee on the background of asbestos claims and asbestos-related bankruptcies. | 1.9 |
| 23-May | 5 | Continued with preparation of first interim fee application for the period 4/21-4/30/01. | 4.3 |
| | 6 | Continued with preparation of report to Creditors' committee on the background of asbestos claims and asbestos-related bankruptcies. | 4.7 |
| 24-May | 5 | Continued with preparation of first interim fee application for the period 4/21-4/30/01. | 3.5 |
| | 6 | Continued with preparation of report to Creditors' committee on the background of asbestos claims and asbestos-related bankruptcies. | 5.0 |
| 25-May | 5 | Revised first interim fee application for the period 4/21-4/30/01 based on review comments. | 7.0 |
| 29-May | 5 | Called counsel to discuss first interim fee application for the period 4/21-4/30/00. | 0.5 |
| | 5 | Revised first interim fee application for the period 4/21-4/30/01 based on review comments. | 1.3 |
| | 6 | Read and analyzed industry research reports and public filings on comparable companies. | 3.2 |
| 30-May | 6 | Reviewed industry research reports on asbestos claims and asbestos-related bankruptcies. | 1.0 |

**Total Hours - May**                                                                     155.5

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Matthew Hakoun
For the period May 1, 2001 through May 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 1-May | 6 | Collected Asbestos-related bankruptcy filings and research reports on selected comparable companies facing asbestos litigation. | 3.3 |
| 2-May | 6 | Researched and analyzed current news articles, and industry information and literature from other parties in interest related to aesbostos litigation. | 2.8 |
| 3-May | 6 | Researched available news and government reports regarding asbestos litigation and class action lawsuits. | 2.4 |
| 7-May | 6 | Accumulated current information related to asbestos litigation settlements and pending litigation. | 3.1 |
| 9-May | 6 | Read and analyzed publicly available news and government reports regarding asbestos litigation. | 3.2 |
| 9-May | 6 | Used the Bloomberg Professional system to perform searches based upon companies that were exposed to asbestos litigation. | 2.4 |
| 10-May | 6 | Researched and compared past and current competitors bankruptcy cases for relevant operating issues. | 2.6 |
| 17-May | 6 | Assembled and analyzed comparable company data in order to prepare a peer group analysis. | 4.1 |
| 18-May | 6 | Gathered and analyzed information on companies that are exposed to asbestos litigation and have not yet filed for bankruptcy. | 3.8 |
| 22-May | 6 | Researched and analyzed competitor companies for severance and retention plans for employment agreements and compensation agreement issues in accordance with restructuring arrangements. | 2.5 |
| 24-May | 6 | Collected motions and other information relating to industry and other Debtor in Possession Financing from other Chapter 11 cases. | 4.6 |

| | | |
|---|---|---|
| **Total Hours - May** | | **34.8** |

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Moira DiSalvio
For the period May 1, 2001 through May 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 15-May | 6 | Researched and analyzed relevant articles, government documents, and other industry related information resources pertaining to asbestos liability and litigation. | 3.3 |
| 16-May | 6 | Researched and analyzed comparable companies with liability exposure in the asbestos related industries. | 3.8 |
| 17-May | 6 | Read, analyzed and summarized High-Yield Research documents related to Company industry. | 5.2 |
| 18-May | 6 | Researched current asbestos litigation cases and identified firms currently involved in such cases. | 2.8 |
| 21-May | 6 | Assembled and analyzed publicly filed documents of competitor companies regarding peer group analysis. | 2.5 |
| 22-May | 6 | Prepared peer group analysis of Company and other asbestos related companies. | 4.5 |
| 23-May | 6 | Researched and analyzed pertinent documents regarding the Johns Manville asbestos cases, Plan of Reorganization, and Formation of Trust. | 2.5 |
| 30-May | 4 | Prepared and assembled company information binders (3) to include company financial data, press releases, SEC documents, high-yield research reports, sections of competitors SEC documents relating to asbestos litigation, litigation information, news articles, and the Johns Manville Trust. | 3.4 |
|  | 6 | Prepared summary of Manville Personal Injury Trust. | 1.6 |
| 31-May | 6 | Revised and finalized summary of the Manville Personal Injury Trust. | 2.4 |
|  |  | **Total Hours - May** | 32.0 |

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Brian Griffith
For the period May 1, 2001 through May 31, 2001

| Date | Task Code | Description | Hours |
|------|------|-------------|-------|
| 21-May | 6 | Collected and assembled industry information on comparable companies. | 2.8 |
| | 6 | Prepared industry peer group comparison. | 2.3 |
| 29-May | 4 | Reviewed WR Grace 10K & 10Q, updated peer group analysis. | 1.3 |
| | 6 | Reviewed, analyzed and summarized John Manville Trust agreement including: purpose, assets to be transferred, assumption of liability, relevant powers of administration, relevant bylaws, investment limitations and termination of the trust. | 5.1 |
| **Total Hours - May** | | | **11.5** |

**Exhibit E**
**Page 1 of 2**

## W.R. GRACE & CO. ET. AL.
### Summary of Expenses by Type of Expense
### For the period May 1, 2001 through May 31, 2001

| | | |
|---|---|---:|
| Copies: | | |
| Internal | $ | 506.80 |
| External | | - |
| Telecommunications: | | |
| Toll Charges | | - |
| Facsimile | | 208.75 |
| Postage, Federal Express | | - |
| Travel Expenses: | | |
| Transportation, lodging, tolls and parking | | 410.04 |
| Meals | | - |
| Word Processing Services | | 1,087.50 |
| Document Preparation and Handling Services | | 300.00 |
| | | |
| Total Expenses | $ | 2,513.09 |

## W.R. GRACE & CO. ET. AL.
Detail of Expenses by Type of Expense
For the period May 1, 2001 through May 31, 2001

| | | | | | |
|---|---|---|---|---|---|
| Copies, Internal | Total for Month | 2,534 | pages @ $0.20/page: | | $    506.80 |
| | | | | | |
| Facsimile Charges: | | 167 | pages @ $1.25/page: | | 208.75 |
| | | | | | |
| Toll Charges: | S.Cunningham | Telephone calls | | 65.95 | |
| | M. Hakoun | Online research fees | | 40.00 | |
| | | | Subtotal | | 105.95 |
| | | | | | |
| Postage, Federal Express: | | | | | 10.24 |
| | | | | | |
| Transportation, lodging, tolls and parking: | | | | | |
| E. Ordway | 21-May | Parking, tolls, mileage | | 26.55 | |
| | 22-May | Parking, tolls, mileage | | 33.00 | |
| S.Cunningham | 9-May | Parking, tolls, mileage, taxi | | 105.10 | |
| | 21-May | Parking, tolls, mileage, taxi | | 66.60 | |
| | 22-May | Parking, tolls, mileage, taxi | | 50.60 | |
| | | | Subtotal | | 281.85 |
| | | | | | |
| Meals: | 21-May | S.Cunningham | | | 12.00 |
| | | | | | |
| Word Processing Services: | | | | | |
| | 6-May | 6.00 | | 450.00 | |
| | 13-May | 3.00 | | 225.00 | |
| | 20-May | 0.30 | | 22.50 | |
| | 31-May | 5.20 | | 390.00 | |
| | | | Subtotal | | 1,087.50 |
| | | | | | |
| Document Preparation and Handling Services: | | | | | |
| | 2-May | 1.0 hours @ $75/hour: | | 75.00 | |
| | 16-May | 0.5 | | 37.50 | |
| | 18-May | 1.0 | | 75.00 | |
| | 21-May | 1.0 | | 75.00 | |
| | 24-May | 0.5 hours @ $75/hour: | | 37.50 | |
| | | | Subtotal | | 300.00 |
| | | | | | |
| | Total Expenses | | | | $  2,513.09 |

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

---------------------------x

In re:                                    Chapter 11

W.R. GRACE & Co., et al.,                 Case No. 01-01139(JJF)
                                          (Jointly Administered)

                    Debtors

---------------------------x

ORDER ALLOWING FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD MAY 1, 2001 THROUGH MAY 31, 2001)

Upon the Application, dated _____ (the "Application"), of FTI P&M, as

Financial Advisors to the Official Committee of Unsecured Creditors (the "Committee)

for Allowance of Interim Compensation in the amount of $83,265.20 for Actual and

Necessary Services Rendered and for Reimbursement of Actual and Necessary Expenses

Incurred in the amount of  $2,513.09 for the Period from May 1, 2001 through May 31,

2001 (the "Application Period"); the Court having reviewed the Application; and finding

that the Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 157 and

1334; and after notice and opportunity for a hearing to consider the Application; and

upon the record and after due deliberation thereon; and due and proper notice of the

Application having been given; and sufficient cause appearing therefor;

IT IS HEREBY ORDERED:

1.    The Application is GRANTED.

2.    FTI P&M is allowed interim compensation in the amount of $83,265.20 for actual, reasonable and necessary professional services rendered on behalf of the Committee during the Application Period, and reimbursement of $2,513.09 for actual, reasonable and necessary expenses incurred during the Application Period.

3.    The Debtors shall pay to FTI P&M the amount of $85,778.29, which is equal to the sum of FTI P&M's allowed compensation and expense reimbursement out of the assets of their estates.


Dated:  Wilmington, Delaware

_____, 2001



_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit D**

**Fee Application for the period**

**June 1 – June 30, 2001**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
--------------------------x
```
In re:                                    Chapter 11

W.R. GRACE & Co., et al.,                 Case No.  01-01139(JJF)
                                          (Jointly Administered)


                    Debtors

```
--------------------------x
```

## THIRD INTERIM APPLICATION OF FTI POLICANO & MANZO, FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED (FOR THE PERIOD FROM JUNE 1, 2001 THROUGH JUNE 30, 2001)

Type of Application: Interim ____X____    Final _____

Name of Applicant:                        FTI Policano & Manzo
Authorized to Provide Professional Services to:    The Official Committee of
                                          Unsecured Creditors

Date of Order Authorizing Employment:     June 21, 2001

Compensation Sought:
    Application Date:        July 30, 2001
    Application Period:      June 1, 2001 through June 30, 2001


|                                | Hours | Amount |
|--------------------------------|-------|--------|
| Professional Fees (80%)        | 236.3 | $60,732.80 |
| Expense Reimbursement (100%)   |       | 3,913.13 |
| Total                          |       | $64,645.93 |

Is this a first application?  Yes ____  No _X_

-1-

THIRD INTERIM APPLICATION OF FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM JUNE 1, 2001 THROUGH JUNE 30, 2001)

INDEX

APPLICATION FOR ALLOWANCE OF INTERIM
COMPENSATION AND REIMBURSEMENT OF EXPENSES

EXHIBIT A    Affidavit of Edwin N. Ordway, Jr.

EXHIBIT B    Summary of the services performed by FTI Policano & Manzo from June 1, 2001 through June 30, 2001

EXHIBIT C    Summary of fees by professional for the period June 1, 2001 through June 30, 2001

EXHIBIT D    Detailed descriptions of services rendered by professional for the period June 1, 2001 through June 30, 2001

EXHIBIT E    Summary of expenses incurred for the period June 1, 2001 through June 30, 2001

## APPLICATION FOR ALLOWANCE OF
## INTERIM COMPENSATION AND REIMBURSEMENT
## OF EXPENSES

### I.   Introduction

This is the third application for allowance of interim compensation and reimbursement of expenses ("Third Interim Application") made by FTI Policano & Manzo ("FTI P&M" or "Applicant"), as Financial Advisors to the Official Committee of Unsecured Creditors (the "Committee") of W.R. Grace & Co. et. al., (the "Company" or "Debtors") for the period June 1, 2001 through June 30, 2001 ("Third Interim Period"). In connection with this application, the Applicant submits as follows:

1. FTI P&M is a firm of financial advisors specializing in insolvency restructuring and related matters, and is an operating unit of FTI Consulting, Inc.

2. FTI P&M was retained by the Committee as Financial Advisors to the Committee pursuant to an approved by the Court dated June 21, 2001 (the "Employment Order").

3. On May 3, 2001, the Court entered an order establishing procedures for interim compensation and reimbursement of expenses for all professionals and committee members ("Interim Compensation Order").

4. The Interim Compensation Order requires each professional to submit monthly statements to various parties as stated in the Interim Compensation Order. These monthly statements include a detailed schedule of the services rendered and the expenses incurred for the related period, and are submitted on or about the 28th day of every month. Following a 20 day period for notice and resolution of objections, the Interim Compensation Order requires the Debtors to promptly pay (i) 80% of undisputed professional fees; and (ii) 100% of the undisputed expenses detailed in the monthly statement.

5. During the Third Interim Period, FTI P&M submitted the following monthly statements to the parties in the Interim Compensation Order:

| Period | Fees | Expenses |
|---|---|---|
| 6/1-6/30/01 | $75,916.00 | $3,913.13 |

6. Through the date of this Third Interim Application, FTI P&M has not been paid for the professional fees rendered nor the expenses incurred that were included in the monthly statements for the Third Interim Period.

7. FTI P&M submits this Third Interim Application, pursuant to Section 330 and 331 of the United States Bankruptcy Code and Bankruptcy Rule 2016, for an interim

allowance for compensation for professional services rendered to the Debtors of $60,732.80, representing 80% of fees incurred, and for the reimbursement of expenses in connection therewith of $3,913.13 for the period June 1, 2001 through June 30, 2001. To date, Applicant has not been paid for the professional services rendered nor for reimbursement of expenses.

8. During the Third Interim Period, the Applicant rendered professional services required by the Debtors and their counsel aggregating a total of 236.3 hours in the discharge of its duties as financial advisor and bankruptcy consultant to the Committee.

9. The Applicant believes that the interim fees applied for herein for professional services rendered in performing accounting and advisory services for the Committee in this proceeding are fair and reasonable in view of the time spent, the extent of work performed, the nature of the Debtors' capitalization structure and financial condition, the Debtor's financial accounting resources and the results obtained. Applicant has attached to this Third Interim Application, as Exhibit D, a complete accounting of the time expended by professionals who worked on this matter during the Third Interim Period. The Applicant's work during this period has been categorized into six separate tasks, each of which is described in detail in Exhibit B. Additional task codes may be added in subsequent applications.

10. Section II below briefly discusses the history of the Company prior to its filing, issues facing the Company during the Chapter 11 period, and the major tasks performed by the Applicant during the Third Interim Period.


II.     **Background**

1.     On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.     Pursuant to an Application submitted to the Court on or about May 17, 2001, and by a Court order dated June 21, 2001, FTI P&M was retained as financial advisors for the Committee, nunc pro tunc to April 20, 2001. Since its retention, FTI P&M has continuously and vigorously pursued the Committee's interests in these cases.

3.     The Debtors have represented, among other things, that: (a) the Debtors engage in specialty chemicals and materials businesses, operating on a worldwide basis, with their corporate headquarters located in Columbia, Maryland; (b) The Debtors predominantly operate through two business units – Davison Chemicals and Performance Chemicals; (c) the Debtors' parent company, W.R. Grace & Co. ("Grace"), is a global holding company that conducts substantially all of its business through a direct, wholly owned subsidiary, W.R. Grace & Co. – Conn. ("Grace-Conn"); (d) Grace-Conn owns

substantially all of the assets, properties and rights of Grace in the United States and has 76 domestic subsidiaries and affiliates, 60 of which are Debtors and Debtors in possession in the Chapter 11 Cases.

4.    The following summary is not intended to be a detailed description of the work performed as those day-to-day services and the time expended in performing such services as those are fully set forth in Exhibit D.  Rather, it is merely an attempt to highlight those areas in which services were rendered to the Committee during the Compensation Period, including (i) Analysis of information provided by the Debtor regarding a proposed acquisition (ii) Analysis of information provided by the Debtor regarding compensation and retention issues (iii) Financial monitoring, (iv) Meetings and phone conferences with Debtors' management and counsel and with Committee counsel, and (v) Other Matters.

5.    FTI P&M has played an important role in assisting the Creditors to understand and negotiate several substantial and complex issues, notably the assumption of employee executory contracts, the structuring of severance and retention bonuses to employees, and the impact of a proposed acquisition.  These issues greatly impact the general unsecured creditors of the Debtors.

6.    FTI P&M's role included the preparation and communication of various financial analyses requested by the Official Committee of Unsecured Creditors' professionals in order to assist their rapid understanding of the issues facing the Debtors.

7.    For the Compensation Period, FTI P&M seeks compensation totaling $64,645.93, representing 80% of fees incurred and 100% of expenses incurred.  FTI P&M expended an aggregate of 236.3 hours, substantially all of which was expended by four professionals.  The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.  A small staff was utilized to optimize efficiencies and avoid redundant efforts.  The staff of the Debtors or their advisors have been utilized where practical and prudent.

8.    In addition, FTI P&M incurred out-of-pocket expenses in connection with the rendition of the professional services described above in the sum of $3,913.13 for which FTI P&M respectfully requests reimbursement in full.  All expenses were billed at actual cost, exclusive of amortization of the cost of investment, equipment or capital outlay.  Internal charges for outgoing out-of-town facsimile transmissions were billed at $1.25 per page for domestic transmissions.  Photocopy charges were billed at actual cost for external copying and $.20 per page for internal copying.  FTI P&M believes that these charges reflect its actual out-of-pocket costs.

9.    The disbursements and expenses have been incurred in accordance with FTI P&M's normal practice by charging clients for expenses clearly related to and required by particular matters.  Such expenses were often incurred to enable FTI P&M to devote time beyond normal office hours to matters which imposed extraordinary time

demands. FTI P&M has endeavored to minimize these expenses to the fullest extent possible.

10.     FTI P&M's approach is to utilize senior, experienced personnel and to encourage the Debtors to provide the staff-level support and analysis to minimize total cost. In addition, FTI P&M's per diem rates for professionals of comparable experience are 15% to 25% lower than its competitors, the "Big-Five" accounting firms and certain other nationally-recognized specialty firms.

11.     Because FTI P&M's core staff consisted of senior professionals who performed a vast amount of the work, time spent communicating internally and reviewing the work product of junior associates was kept to a minimum. Additionally, because of the experience of FTI P&M's professionals, in many instances only one or two FTI P&M representatives attended meetings or performed specific functions.

12.     Edwin N. Ordway, Jr., Managing Director in charge of this case, directed the activities of the FTI P&M team, calling upon his more than ten years of experience in restructuring and insolvency matters, including more than 100 cases, many as large and complex, and some larger and more complex than this matter.

## III.   Summary of Fees and Expenses Incurred

13.     To the best of the Applicant's knowledge and belief, there has been no duplication of services between the Applicant and any other accountants or consultants to the bankruptcy estate.

14.     FTI P&M's travel time policy is for professional personnel to travel outside of business hours when possible. Such time is not charged to a client unless productive work is performed during the travel period. In this engagement, non-productive travel time is not being charged to the Debtor.

15.     In providing a reimbursable service such as copying or telephone, the Applicant does not make a profit on that service. In charging for a particular service, FTI P&M does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay. In seeking reimbursement for a service which the Applicant justifiably purchased or contracted for from a third party, FTI P&M requests reimbursement only for the amount billed to FTI P&M by such third party vendor and paid by FTI P&M to that vendor.

16.     FTI P&M's policy with respect to word processing and document preparation and handling services provided by FTI P&M employees is to bill clients by the hour for such time, but only if the employees' time is clearly and exclusively devoted to work performed for that particular client, such as for the preparation, collation and binding of a report for a client.   Such services are billed to the Debtor at a rate

commensurate with that which would be charged by a third party provider such as a temporaries agency.

17.    Annexed hereto as Exhibit B is a more comprehensive summary of the services performed by the Applicant during the Third Interim Period at the direction of the Committee and its Counsel.

18.    Annexed hereto as Exhibit C is a summary of fees by professional and by task during the Third Interim Period.

19.    Annexed hereto as Exhibit D are detailed descriptions of the time spent by each professional during the Third Interim Period.

20.    Pursuant to Rule 2016, FTI P&M states that no compensation to be received in this proceeding will be shared with any person or entity outside of FTI Policano & Manzo and that no compensation has been paid or promised to the Applicant in connection with the compensation sought in this Application except as disclosed herein. No prior application has been made to this or any other Court for the relief requested herein for the Compensation Period, nor has any payment been received by FTI P&M on account of its accounting and financial advisory services rendered or on account of the out-of-pocket expenses incurred in connection therewith.

21.    As stated in the Affidavit of Edwin N. Ordway, Jr. annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

22.    The Debtors will give notice of the relief requested herein and of the relief requested by the other professionals in their respective applications for allowance of compensation by serving notice of this application upon all parties that have requested notice in these cases, and FTI P&M has personally served copies of the Application with exhibits to the Debtors and on the United States Trustee.

23.    WHEREFORE, the Applicant respectfully requests that this Court enter an order:

a. approving the allowance of compensation for professional services rendered to the Committee during the period from June 1, 2001 through and including June 30, 2001 in the amount of $75,916.00;

b. approving the reimbursement of FTI P&M's out-of-pocket expenses incurred in connection with the rendering of such services during the period from June 1, 2001 through and including June 30, 2001 in the amount of $3,913.13; and

c.  authorizing the Debtor to pay as interim compensation to FTI P&M 80% of the amount of the professional services rendered and 100% of the expenses incurred by FTI P&M during the period from June 1, 2001 through and including June 30, 2001, subject to final payment of the full amount; and

d.  granting such other and further relief as this Court may deem just and proper.

Date: _____7/27/01_____

FTI Policano & Manzo

By _____
    Edwin N. Ordway, Jr.
FTI Policano & Manzo
Park 80 West, Plaza I
Saddle Brook, NJ  07663
(201) 843-4900

**EXHIBIT A**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **Chapter 11** |
| **W.R. GRACE & CO., et al.** | ) | **Case No. 01-01139 (JJF)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |

**AFFIDAVIT**

| | |
|---|---|
| STATE OF NEW JERSEY | ) |
| | ) ss: |
| COUNTY OF BERGEN | ) |

EDWIN N. ORDWAY, JR., being duly sworn, deposes and says:

1.        I am a Managing Director of FTI Policano & Manzo, ("FTI P&M"), an operating unit of FTI Consulting, Inc. ("FTI"), and I am duly authorized to make this affidavit on behalf of FTI P&M. FTI P&M provides financial consulting services for restructuring matters and has its principal office at Park 80 West Plaza I, Saddle Brook, New Jersey. FTI P&M has provided financial consulting services to and has rendered professional services on behalf of the Official Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co., and sixty-one of its domestic subsidiaries and affiliates which are debtors and debtors-in-possession before this Court.

2.        This affidavit is submitted pursuant to Bankruptcy Rule 2016(a) in support of FTI P&M's third monthly application for an interim allowance of compensation and for the reimbursement of expenses for services rendered during the

-1-

period from June 1, 2001 through and including June 30, 2001 in the aggregate amount of $64,645.93.

3.      All services for which compensation is requested by FTI P&M were professional services performed for and on behalf of the Committee from June 1, 2001 through and including June 30, 2001 and not on behalf of any other person.

4.      In accordance with Title 18 U.S.C. Section 155, neither I nor any employee of my firm has entered into any agreement, express or implied, with any other party-in-interest for the purpose of fixing the amount of any of the fees or other compensation to be allowed out of or paid from the Debtors' assets.

5.      In accordance with Section 504 of the Bankruptcy Code, no agreement or understanding exists between me, my firm, or any employee thereof, on the one hand, and any other person, on the other hand, for division of such compensation as my firm may receive for services rendered in connection with these cases, nor will any division of fees prohibited by Section 504 of the Bankruptcy Code be made by me or any employee of my firm.

EDWIN N. ORDWAY, JR

Sworn to before me this
27th day of July, 2001

Notary Public
KATHIE JOZANOVIC
NOTARY PUBLIC OF NEW JERSEY
COMMISSION EXPIRES 09/11/05

Exhibit B

**SUMMARY OF THE SERVICES PERFORMED BY FTI POLICANO & MANZO
DURING THE THIRD INTERIM PERIOD**

**Task Code 1 - Preparation for and Participation at Creditors Committee Meetings
or Conference Calls** (9.9 Hours)

FTI P&M participated in two committee conference calls during June:

1. June 6th:   Participated in call regarding compensation issues, including issues
   pertaining to the CEO's contract.
2. June 27th:   Participated in call regarding a proposed acquisition, recent
   motions, and the asbestos claimants' committee's fraudulent conveyance action.

**Task Code 2 - Issues Related to Chapter 11 Operating Issues, Such As Critical
Vendor Motions, Reclamation Claims, Executory Contracts and Similar Issues** (4.3
Hours)

Based on information provided by the Debtor and discussions with management, we
developed recommendations to the Committee with respect to various motions by the
Debtor and other parties at interest. In addition, FTI P&M analyzed, coordinated and
made recommendations with respect to the Debtor's request that Committee members
enter into confidentiality agreements.

**Task Code 3 - Employee Compensation Issues** (20.0 Hours)

FTI P&M reviewed and analyzed, through data supplied by the Debtor, the compensation
packages of key employees of the Company in comparison with similar companies.
Analysis of such work was presented to the Committee to assist them in evaluating
proposed First Day Orders pertaining to the assumption of executory employment
contracts.

**Task Code 4 - Analysis of Financial Data, Including Business Plan, Projections
Forecasts, Cash Flow Forecasts and Historical Information** (109.4 Hours)

FTI P&M met with senior management to discuss and analyze historical and current
operating performance by business segment. In connection therewith, FTI P&M also
requested and analyzed historical financial data for purposes of developing an
understanding of issues that can affect future performance. Additionally, FTI P&M

analyzed and evaluated a proposed corporate acquisition by a non-filing overseas subsidiary.

**Task Code 5- Monthly Statement, Retention and Fee Application Preparation (28.5 Hours)**

This category represents the time expended during the Third Interim Period in preparing FTI P&M's First and Second Applications for Allowance of Interim Compensation and Reimbursement of Expenses.

**Task Code 6- Grace competitor profile analysis and analysis of other asbestos related Chapter 11 filings (64.2 Hours)**

FTI P&M prepared a financial and valuation profile of direct competitors and analyzed financial performance data from other companies with asbestos liabilities for the purpose of developing an understanding of issues relating to claim estimation, operating performance, and valuations.

**Exhibit C**
**Page 1 of 2**

W.R. GRACE & CO. ET. AL.
Summary of Fees by Professional
For the period June 1, 2001 through June 30, 2001

| | Total Hours June | Billing Rate | Amount |
|---|---|---|---|
| E. Ordway | 23.6 | $475 | S 11,210.00 |
| S. Cunningham | 48.2 | $405 | 19,521.00 |
| J. Schwendeman | 3.5 | $325 | 1,137.50 |
| C. MacCallum | 112.5 | $295 | 33,187.50 |
| C. Whitney | 19.0 | $315 | 5,985.00 |
| M. DiSalvio | 18.0 | $175 | 3,150.00 |
| M. Hakoun | 11.5 | $150 | 1,725.00 |
| | 236.3 | | S 75,916.00 |

**Exhibit C**
**Page 2 of 2**

W.R. GRACE & CO. ET. AL.
Summary of Fees by Professional
For the period June 1, 2001 through June 30, 2001

| TASK CODE | TASK | E. Ordway | S. Cunningham | J. Schwendman | C. MacCallum | C. Whitney | M. Hakoun | M. DiSalvio | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Meetings of Creditors | 3.9 | 2.3 | 0.0 | 2.3 | 1.4 | 0.0 | 0.0 | 9.9 |
| 2 | Chapter 11 Operating Issues | 0.7 | 3.6 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 4.3 |
| 3 | Employee Compensation Issues | 0.9 | 1.6 | 0.0 | 17.5 | 0.0 | 0.0 | 0.0 | 20.0 |
| 4 | Business Analyses | 16.9 | 36.2 | 0.0 | 38.7 | 17.6 | 0.0 | 0.0 | 109.4 |
| 5 | Fee Application Preparation | 1.2 | 2.6 | 0.0 | 24.7 | 0.0 | 0.0 | 0.0 | 28.5 |
| 6 | Competitor Profile Analysis | 0.0 | 1.9 | 3.5 | 29.3 | 0.0 | 11.5 | 18.0 | 64.2 |
| | TOTAL | 23.6 | 48.2 | 3.5 | 112.5 | 19.0 | 11.5 | 18.0 | 236.3 |

**Exhibit D**

W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Edwin N. Ordway, Jr.
For the period June 1, 2001 through June 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 1-Jun | 3 | Called counsel to discuss change of control and Norris contract issues. | 0.2 |
| | 4 | Read and analyzed financial data included in monthly trustee report. | 0.7 |
| 4-Jun | 3 | Called counsel to discuss compensation and retention issues. | 0.2 |
| 5-Jun | 1 | Called counsel to discuss committee conference call and presentation to be made. | 0.2 |
| | 1 | Prepared for conference call with committee by reading analyses and preparing discussion outline. | 1.3 |
| 6-Jun | 3 | Participated in conference call with committee and counsel to discuss compensation issues. | 0.5 |
| 11-Jun | 2 | Read and analyzed counsels' memo regarding recent court motions. | 0.2 |
| 12-Jun | 2 | Called counsel to discuss confidentiality agreement. | 0.2 |
| 13-Jun | 2 | Discussed confidentiality agreement with counsel. | 0.2 |
| | 4 | Read and analyzed financial data (public data and information from April Bank meeting) and prepared notes/questions for 6/14 meeting with management. | 2.6 |
| 14-Jun | 4 | Met with management to discuss and review:<br>- Operating results by business segment<br>- Proposed acquisition in Europe<br>- Business planning process<br>- Information request list | 8.0 |
| | 4 | Read and analyzed material provided by management regarding operating performance. | 0.5 |
| | 4 | Read and analyzed May Trustee's report. | 0.6 |

| 15-Jun | 4 | Read and analyzed material provided by management regarding operating performance. | 0.4 |
|--------|---|---|-----|
| 20-Jun | 4 | Read and analyzed May Trustee report and noted items for inclusion in our monthly operating report. | 0.3 |
| 21-Jun | 4 | Read and analyzed data relevant to proposed acquisition. | 0.8 |
|        | 4 | Prepared outline of report to the committee regarding proposed acquisition. | 0.8 |
| 22-Jun | 2 | Called committee chair to discuss confidentiality issues. | 0.1 |
| 25-Jun | 4 | Prepared sections of report regarding proposed acquisition. | 1.5 |
| 26-Jun | 5 | Read and edited draft of fee applications. | 0.7 |
|        | 4 | Prepared section of report regarding proposed acquisition. | 0.7 |
| 27-Jun | 1 | Prepared for committee conference call. | 0.6 |
|        | 1 | Participated in committee conference call regarding proposed acquisition, recent motions, and asbestos committee's fraudulent conveyance action. | 1.8 |
|        | 5 | Read and edited fee applications. | 0.5 |

**Total Hours - June**                                                                   23.6

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
### Professional Services Rendered by Sean Cunningham
### For the period June 1, 2001 through June 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 4-Jun | 3 | Reviewed with counsel Debtors' response to unsecured committee's request related to change of control language contained in employment contracts. Provided input in regard to alternative change of control language. | 0.8 |
| 5-Jun | 3 | Reviewed and analyzed "Lockhart" contract provisions received from Debtor. | 0.5 |
| | 3 | Discussed LTIP plan calculations and related matters with management. | 0.3 |
| 6-Jun | 1 | Participated in conference call with committee and counsel to discuss compensation issues. | 0.5 |
| 7-Jun | 2 | Discussed confidentiality issues with counsel. | 0.3 |
| | 2 | Read and analyzed conponents of P. Norris contract. | 0.3 |
| 12-Jun | 2 | Discussed confidentiality requirements, information request update, and agenda for June 14 meeting with counsel and Blackstone personnel. | 1.5 |
| 13-Jun | 4 | Reviewed 10Q and various financial filings in preparation for June 14 meeting with management. | 2.0 |
| | 2 | Reviewed and resolved confidentiality issues with Kirkland & Ellis. | 0.5 |
| 14-Jun | 4 | Met with management to discuss and review: <br> - Operating results by business segment <br> - Proposed acquisition in Europe <br> - Business planning process <br> - Information request list | 8.0 |
| 15-Jun | 4 | Provided general update to counsel and committee chair on meeting. | 0.4 |
| | 4 | Reviewed information provided by Company | 0.4 |
| 19-Jun | 2 | Discussed and reviewed various vendor motions, primarily utility deposit requests, with counsel. | 0.7 |
| 20-Jun | 4 | Commenced detail review of financial model and related assumptions pertaining to Company acquisition of Project "Peter." | 5.5 |

| Date | | Description | Hours |
|---|---|---|---|
| 21-Jun | 4 | Prepared analysis and draft report for committee re: Project Peter. | 6.1 |
| | 4 | Participated in conference call with Blackstone Group and Grace operating personnel re: Project Peter. | 1.2 |
| 22-Jun | 4 | Updated draft report to committee in prepartion for meeting week of June 25 re: Project Peter. | 4.0 |
| | 6 | Reviewed various economic data and industry data specific to Project Peter. | 1.9 |
| | 4 | Reviewed information pertaining to asbestos claimants' committee issues re: fraudualent conveyance action. | 0.3 |
| | 2 | Discussed confidentiality issues with committee chair. | 0.3 |
| 26-Jun | 4 | Finalized draft report and  analysis of Project Peter acquistion. Distributed draft to counsel. | 1.3 |
| | 4 | Participated in phone calls and conference call with counsel and committee chair to discuss report findings relating to Project Peter. | 1.0 |
| 27-Jun | 1 | Participated in committee conference call regarding proposed acquisition, recent motions, and asbestos committee's fraudulent conveyance action. | 1.8 |
| | 5 | Prepared fee applications for the periods 4/20-4/30/01 and  5/1-5/31/01. | 2.6 |
| 28-Jun | 4 | Analyzed information received from Company related to historical financial performance, cash flow projections, etc. | 2.5 |
| | 4 | Analyzed May preliminary results received from the Company in preparation for conference call with CFO. | 1.1 |
| 29-Jun | 4 | Reviewed May results, prepared revised information checklist, participated in conference call with Blackstone personnel and Company CFO. | 2.4 |
| | | **Total Hours - June** | 48.2 |

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Jeffrey Schwendeman
For the period June 1, 2001 through June 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 11-Jun | 6 | Prepared analysis of litigation reserve provisions for Debtors and competitors. | 1.9 |
| 27-Jun | 6 | Analyzed recent peer group operating results and industry economic data. | 1.6 |
| | | **Total Hours - May** | 3.50 |

**Exhibit D**

# W.R. GRACE & CO. ET. AL.
## Professional Services Rendered by Craig MacCallum
### For the period June 1, 2001 through June 30, 2001

| Date | Task Code | Description | Hours |
|------|------|-------------|-------|
| 4-Jun | 3 | Prepared analysis of "LTIP" plan provisions and calculation of benefits. | 0.3 |
| | 6 | Reviewed industry research reports on asbestos claims and asbestos-related bankruptcies. | 1.3 |
| | 3 | Prepared schedule of key provisions of employee contracts. | 3.5 |
| | 3 | Prepared comparison of contract provisions for Grace CEO with the CEO of a similar manufacturing company. | 2.4 |
| 5-Jun | 6 | Continued with preparation of report to committee on the background of asbestos claims and asbestos-related bankruptcies. | 3.1 |
| | 3 | Continued with research for and preparation of comparison of contract provisions for Grace CEO with the CEO of a similar manufacturing company. | 5.5 |
| | 5 | Revised draft fee application for the period 4/21-4/30/01 based on counsel's comments. | 0.9 |
| 6-Jun | 3 | Completed preparation of CEO contract comparative analysis. Revised analysis based on review comments. | 5.8 |
| | 6 | Continued with preparation of report to committee on the background of asbestos claims and asbestos-related bankruptcies. | 1.4 |
| | 4 | Prepared cash flow, market valuation and enterprise value model. | 2.0 |
| | 1 | Participated in conference call with committee and counsel to discuss compensation issues and CEO contract. | 0.5 |
| 7-Jun | 6 | Reviewed analysts' reports and valuation methodologies for specialty chemical manufacturers and asbestos defendant companies. | 6.7 |
| | 4 | Continued with preparation of cash flow, market valuation and enterprise value model for Grace. | 2.8 |

| 8-Jun | 4 | Continued with preparation of cash flow, market valuation and enterprise value model for Grace. | 4.5 |
| 14-Jun | 5 | Prepared draft fee application for the period 5/1-5/31/01. | 4.0 |
| 18-Jun | 6 | Conducted background research on asbestos-related diseases, legal implications, bankruptcies, claims and claim settlement trusts. | 9.3 |
| 19-Jun | 6 | Continued with background research on asbestos-related diseases, legal implications, bankruptcies, claims and claim settlement trusts. | 6.0 |
| 20-Jun | 5 | Continued with preparation of draft fee application for the period 5/1-5/31/01. | 2.5 |
| | 4 | Commenced detail review of financial model and related assumptions pertaining to Company acquisition of Project "Peter." | 4.0 |
| | 4 | Spoke by phone with Blackstone Group personnel re: Project Peter. | 0.7 |
| | 4 | Prepared analysis and report to committee re: Project Peter. | 1.8 |
| 21-Jun | 4 | Continued preparation of Project Peter report to committee. | 3.5 |
| 22-Jun | 4 | Continued preparation of Project Peter report to committee. | 2.5 |
| | 6 | Reviewed various economic data and industry data specific to Project Peter. | 1.5 |
| 25-Jun | 4 | Completed preparation of Project Peter report to committee. | 6.5 |
| 26-Jun | 4 | Prepared additional text for Project Peter report based on review and forwarded to Committee chair and counsel. | 3.0 |
| | 4 | Spoke by phone with Blackstone Group personnel re: Project Peter. | 0.4 |
| | 5 | Continued with preparation of draft fee application for the period 5/1-5/31/01. | 2.6 |
| | 4 | Participated in phone calls and conference call with counsel and committee chair to discuss report findings relating to Project Peter. | 1.1 |
| | 4 | Finalized Project Peter report based on comments by committee chair and counsel and distributed to committee. | 1.4 |

| 27-Jun | 4 | Spoke by phone with Blackstone Group personnel re: cash balances in foreign entities and funding of Project Peter acquisition. | 0.7 |
|--------|---|------|------|
| | 5 | Finalized preparation of fee application for the period 5/1-5/31/01. | 10.5 |
| | 1 | Participated in committee conference call regarding proposed acquisition, recent motions, and asbestos committee's fraudulent conveyance action. | 1.8 |
| 28-Jun | 5 | Finalized preparation of fee application for the period 4/20-4/30/01. Revised fee applications based on review comments. Forwarded fee applications to counsel. | 4.2 |
| | 4 | Analyzed May preliminary results received from Company. | 2.3 |
| 29-Jun | 4 | Continued to analyze May preliminary results received from the Company. | 1.5 |

**Total Hours - June**      112.5

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
### Professional Services Rendered by Christy Whitney
### For the period June 1, 2001 through June 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 11-Jun | 4 | Reviewed publicly available financial reports and selected analysts' reports on Debtor. | 2.2 |
| 14-Jun | 4 | Met with management to discuss and review:<br>- Operating results by business segment<br>- Proposed acquisition in Europe<br>- Business planning process<br>- Information request list | 8.0 |
| 15-Jun | 4 | Provided general update to counsel and committee chair on meeting with Grace management. | 0.6 |
| | 4 | Reviewed financial information provided by Company at the meeting. | 0.8 |
| 27-Jun | 1 | Participated in committee conference call regarding proposed acquisition, recent motions, and asbestos committee's fraudulent conveyance action. | 1.4 |
| 29-Jun | 4 | Prepared draft agenda for proposed Grace headquarters site visit. | 1.3 |
| | 4 | Read and analyzed historical financial data in preparation for meeting with the Debtor, including data received from Debtor during May Committee meeting. | 4.7 |
| **Total Hours - June** | | | **19.0** |

**Exhibit D**

W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Matthew Hakoun
For the period June 1, 2001 through June 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 4-Jun | 6 | Identified comparable companies currently involved in asbestos litigation. | 1.0 |
| 6-Jun | 6 | Researched current news articles regarding asbestos litigation. | 1.1 |
| | 6 | Prepared a peer group analysis of related building supply companies. | 1.5 |
| 7-Jul | 6 | Refined peer group analysis based upon current market data for the building supply industry. | 2.4 |
| 20-Jun | 6 | Analyzed research reports and associations for asbestos litigation for the increase in asbestos exposure litigation over the past 12 months. | 2.5 |
| 25-Jun | 6 | Researched and analyzed additional chemical and construction company financial information. Updated existing peer group analysis. | 3.0 |
| | | **Total Hours - June** | 11.5 |

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Moira DiSalvio
For the period June 1, 2001 through June 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 4-Jun | 6 | Identified and analyzed comparable companies that declared bankruptcy prior to November 2000. | 1.5 |
| | 6 | Identified comparable companies with exposure to asbestos litigation. | 2.6 |
| 5-Jun | 6 | Identified and analyzed companies that filed Chapter 11 since November 2000 and identified those with exposure to asbestos litigation. | 3.4 |
| 7-Jun | 6 | Researched court documents and news articles regarding *Georgine vs. Amchem* and the *Ahern* litigation cases. Analyzed their effect on the pending asbestos cases and class action lawsuits. | 3.5 |
| 15-Jun | 6 | Research executive compensation for WR Grace and analyzed with regard to comparable corporations in similar circumstances. | 2.0 |
| 21-Jun | 6 | Begin research into the general economic outlook for Europe and forecasts for the next 5 years. | 0.5 |
| 22-Jun | 6 | Analyzed data relating to the economic outlook for Europe through 2006. | 1.8 |
| | 6 | Research and analyzed the specialty construction chemical market, in particular, additives to concrete, and sealants, and their effect on the construction industry. | 2.7 |
| **Total Hours - June** | | | **18.0** |

W.R. GRACE & CO. ET. AL.
Summary of Expenses by Type of Expense
For the period June 1, 2001 through June 30, 2001

| | | |
|---|---|---|
| Copies: | | |
| Internal | $ | 433.20 |
| External | | - |
| Telecommunications: | | |
| Toll Charges | | 74.63 |
| Facsimile | | 65.00 |
| Postage, Federal Express | | 149.33 |
| Travel Expenses: | | |
| Transportation, lodging, tolls and parking | | 2,033.39 |
| Meals | | 122.58 |
| Word Processing Services | | 810.00 |
| Document Preparation and Handling Services | | 225.00 |
| | | |
| Total Expenses | $ | 3,913.13 |

## W.R. GRACE & CO. ET. AL.
### Detail of Expenses by Type of Expense
### For the period June 1, 2001 through June 30, 2001

| | | | | | |
|---|---|---|---|---|---|
| Copies, Internal | Total for Month | 2,166 | pages @ $0.20/page: | $ | 433.20 |
| | | | | | |
| Facsimile Charges: | | 52 | pages @ $1.25/page: | | 65.00 |

**Toll Charges:**

| | | | | |
|---|---|---|---|---|
| | S.Cunningham | Telephone calls | 64.35 | |
| | C. Whitney | Telephone calls | 10.28 | |
| | | Subtotal | | 74.63 |

**Postage, Federal Express:**

| | | | |
|---|---|---|---|
| | 25-Jun | 10.24 | |
| | 15-Jun | 127.5 | |
| | 25-Jun | 11.59 | |
| | Subtotal | | 149.33 |

**Transportation, lodging, tolls and parking:**

| | | | | |
|---|---|---|---|---|
| E. Ordway | 31-May | Parking, tolls | 47.00 | |
| | 14-Jun | Lodging | 267.68 | |
| | 14-Jun | Parking | 54.46 | |
| S.Cunningham | 15-Jun | Airfare | 119.00 | |
| | 15-Jun | Auto rental | 98.82 | |
| | 14-Jun | Airfare | 310.75 | |
| C. MacCallum | 18-Jun | Lodging | 572.00 | |
| | 18-Jun | Parking, tolls | 58.00 | |
| C. Whitney | 14-Jun | Train fare | 238.00 | |
| | 14-Jun | Lodging | 267.68 | |
| | | Subtotal | | 2,033.39 |

**Meals:**

| | | | | |
|---|---|---|---|---|
| | 14-Jun | C. Whitney | 23.00 | |
| | 14-Jun | S.Cunningham | 10.00 | |
| | 17-Jun | C. MacCallum | 40.00 | |
| | 18-Jun | C. MacCallum | 49.58 | |
| | | Subtotal | | 122.58 |

**Word Processing Services:**

| | Hours | Rate | | |
|---|---|---|---|---|
| 6-Jun | 0.30 | $75.00 | 22.50 | |
| 15-Jun | 7.20 | $75.00 | 540.00 | |
| 22-Jun | 2.50 | $75.00 | 187.50 | |
| 29-Jun | 0.80 | $75.00 | 60.00 | |
| | | Subtotal | | 810.00 |

**Document Preparation and Handling Services:**

| | Hours | Rate | |
|---|---|---|---|
| 8-Jun | 3.00 | $75.00 | 225.00 |

| | |
|---|---|
| Total Expenses | $ 3,913.13 |

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

```
-------------------------x
```
In re:                                        Chapter 11

W.R. GRACE & Co., et al.,                     Case No.  01-01139(JJF)
                                              (Jointly Administered)


                      Debtors

```
-------------------------x
```


ORDER ALLOWING FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD JUNE 1, 2001 THROUGH JUNE 31, 2001)

Upon the Application, dated July 30, 2001 (the "Application"), of FTI P&M, as

Financial Advisors to the Official Committee of Unsecured Creditors (the "Committee")

for Allowance of Interim Compensation in the amount of $60,732.80 for Actual and

Necessary Services Rendered and for Reimbursement of Actual and Necessary Expenses

Incurred in the amount of $3,913.13 for the Period from June 1, 2001 through June 30,

2001 (the "Application Period"); the Court having reviewed the Application; and finding

that the Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 157 and

1334; and after notice and opportunity for a hearing to consider the Application; and

upon the record and after due deliberation thereon; and due and proper notice of the

Application having been given; and sufficient cause appearing therefore;

-1-

IT IS HEREBY ORDERED:

1.    The Application is GRANTED.

2.    FTI P&M is allowed interim compensation in the amount of $60,732.80 for actual, reasonable and necessary professional services rendered on behalf of the Committee during the Application Period, and reimbursement of $3,913.13 for actual, reasonable and necessary expenses incurred during the Application Period.

3.    The Debtors shall pay to FTI P&M the amount of $64,645.93, which is equal to the sum of FTI P&M's allowed compensation and expense reimbursement out of the assets of their estates.


Dated:  Wilmington, Delaware

_____, 2001


_____
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JJF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |
| | ) | |

**ORDER FOR COMPENSATION FOR SERVICES AND
REIMBURSEMENT OF EXPENSES FTI POLICANO & MANZO
AS FINANCIAL ADVISORS TO OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF W. R. GRACE & CO., ET AL., FOR THE INTERIM
PERIOD FROM APRIL 20, 2001 THROUGH JUNE 30, 2001**

Upon the application  (the "First Quarterly Fee Application")[2] of FTI Policano &

Manzo("FTI P&M") seeking the entry of an order allowing FTI P&M (i) compensation in the

amount of $196,005.50 for professional services rendered by FTI P&M as financial advisors to

the Committee and (ii) reimbursement for the actual and necessary expenses incurred by FTI

---

[1]     The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food >N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2]     Unless otherwise defined, capitalized terms used herein shall have the meaning ascribed to them in the First Quarterly Fee Application.

P&M in rendering such services in the amount of $7,094.17, in each case for the Fee Period from April 20, 2001, through June 30, 2001; and it appearing that the Court has jurisdiction to consider the First Quarterly Fee Application and the relief requested therein in accordance with 28 U.S.C. " 157 and 1334; and it appearing that this matter is a core proceeding within the meaning of 28 U.S.C. ' 157(b)(2); and it appearing that venue of this proceeding and this First Quarterly Fee Application is proper in this district pursuant to 28 U.S.C. " 1408 and 1409; and due and proper notice of the First Quarterly Fee Application having been given; and it appearing that the relief requested in the First Quarterly Fee Application is in the best interests of the Debtors and their estates and creditors; and after due deliberation and sufficient cause appearing therefore, it is hereby:

ORDERED that the First Quarterly Fee Application is granted in its entirety on an interim basis; and it is further

ORDERED that, for the Fee Period April 20, 2001, through June 30, 2001, an administrative allowance shall be made to FTI P&M in the sum of $196,005.50, as compensation for reasonable and necessary professional services rendered to the Debtors; and it is further

ORDERED that, for the Fee Period April 2, 2001, through June 30, 2001, an administrative allowance shall be made to FTI P&M in the sum of $7,094.17 for reimbursement of actual and necessary costs and expenses incurred; and it is further

ORDERED that the Debtors be authorized and directed to pay to FTI P&M the outstanding amount of such sums as described above less any amounts previously paid to FTI P&M pursuant to the April to June Monthly Fee Applications and the procedures set forth in the Administrative Fee Order; and it is further

ORDERED that FTI P&M has the right to seek at a later date compensation for services rendered and reimbursement for expenses incurred during the April through June 2001 period that are not otherwise included in the relevant April to June Monthly Applications; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order; and it is further

ORDERED that, notwithstanding the possible applicability of Fed. R. Bankr. P. 6004(g), 7062, 9014, or otherwise, the terms and conditions of this order shall be immediately effective and enforceable upon its entry.

Dated: Wilmington, Delaware
      _____, 2001

 

_____
Joseph J. Farnan, Jr.
United States District Court Judge

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| W.R. Grace & Co., et al., | ) | **Case No. 01-01139 (JJF)** |
| | ) | |
| | ) | **Jointly Administered** |
| Debtors. | ) | |
| | ) | Objections due by August 20, 2001 at 4:00 p.m. Hearing date: To be scheduled, only if objections are timely filed and served. |

## CERTIFICATE OF SERVICE

I, Shelley A. Hollinghead, certify that I am not less than 18 years of age, and that service of a copy of the attached **First Quarterly Interim Application of FTI Policano & Manzo, for Compensation for Services and Reimbursement of Expenses as Financial Advisors to the Official Committee of Unsecured Creditors of W.R. Grace & Co., et al., for the Interim Period from April 20, 2001 Through June 30, 2001** was made July 30, 2001, upon:

> All of the parties indicated on the attached Service List by first class mail, postage prepaid, or as otherwise indicated.

Under penalty of perjury, I declare that the foregoing is true and correct.

July 30, 2001
Date

Shelley A. Hollinghead

# W.R. GRACE FEE APPLICATION SERVICE LIST

Case No. 01-01139 (JJF)

Doc. No. Word147513v1

*Via Hand Delivery*
Laura Davis Jones, Esquire
David Carickhoff, Esquire.
Pachulski, Stang, Ziehl, Young & Jones
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
*Counsel to Debtors and Debtors in Possession*

*Via First Class Mail*
Hamid R. Rafatjoo, Esquire
Pachulski, Stang, Ziehl, Young & Jones
10100 Santa Monica Boulevard
Los Angeles, CA 90067-4100
*Counsel to Debtors and Debtors in Possession*

*Via Hand Delivery*
Steven M. Yoder, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
*Local Counsel to DIP Lender*

*Via Hand Delivery*
Michael R. Lastowski, Esquire
Duane, Morris & Heckscher LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
*Counsel to Official Committee of Unsecured Creditors*

*Via First Class Mail*
James H.M. Sprayregen, Esquire
James Kapp, III, Esquire
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601
*Counsel to Debtor*

*Via First Class Mail*
J. Douglas Bacon, Esquire
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL 60606
*Counsel to DIP Lender*

*Via Hand Delivery*
Michael B. Joseph, Esquire
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
*Counsel for Asbestos Property Damage Claimants*

*Via Hand Delivery*
William P. Bowden, Esquire
Matthew G. Zaleski, III, Esquire
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
*Local Counsel to Asbestos Property Damage Claimants*

*Via First Class Mail*
Frank J. Perch, Esquire
Office of the United States Trustee
601 Walnut Street, Curtis Center,
Suite 950 West
Philadelphia, PA 19106

*Via First Class Mail*
Lewis Kruger, Esquire
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982
*Official Committee of Unsecured Creditors*

*Via First Class Mail*
Elihu Inselbuch, Esquire
Rita Tobin, Esquire
Caplin & Drysdale, Chartered
399 Park Avenue, 36th Floor
New York, NY 10022
*Official Committee of Asbestos Personal Injury Claimants*

*Via First Class Mail*
William S. Katchen, Esquire
Duane, Morris & Heckscher LLP
1 Riverfront Plaza, 2nd Floor
Newark, NJ 07102
*Counsel to Official Committee of Unsecured Creditors*

*Via First Class Mail*
Dimensional Fund Advisors
Attn: Lawrence Spieth
10 S. Wacker Drive, #2275
Chicago, IL 60606
*Official Committee of Equity Security Holders*

*Via First Class Mail*
Simon Atlas
8314 Meadowlark Lane
Bethesda, MD 20817
*Official Committee of Equity Security Holders*

*Via First Class Mail*
Scott L. Baena, Esquire
Bilzin Sumberg Dunn Baena Price
 & Axelrod LLP
First Union Financial Center
200 South Biscayne Blvd, Suite 2500
Miami, FL 33131
*Official Committee of Asbestos Property Damage Claimants*

*Via First Class Mail*
Peninsula Partners, L.P.
Attn: Ted Weschler
404B East Main Street, 2nd Floor
Charlottesville, VA 22902
*Official Committee of Equity Security Holders*

*Via First Class Mail*
Angus W. Mercer
4500 Carmel Estates Road
Charlotte, NC 28226
*Official Committee of Equity Security Holders*

*Via First Class Mail*
Raymond E. Smiley
35415 Solon Road
Solon, OH 44139-2415
*Official Committee of Equity Security Holders*