IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------x

In re:                              Chapter 11

W.R. GRACE & Co., et al.,           Case No.  01-01139(JJF)
                                    (Jointly Administered)


            Debtors              Objection Deadline: August 20, 2001 at 4:00 p.m.
                                 Hearing Date: To be scheduled, only if objections are
                                 timely filed and served.

----------------------------x

THIRD INTERIM APPLICATION OF FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM JUNE 1, 2001 THROUGH JUNE 30, 2001)

Type of Application:  Interim __X__    Final _____

Name of Applicant:                          FTI Policano & Manzo
Authorized to Provide Professional Services to:    The Official Committee of
                                            Unsecured Creditors

Date of Order Authorizing Employment:       June 21, 2001

Compensation Sought:
          Application Date:       July 30, 2001
          Application Period:     June 1, 2001 through June 30, 2001


|                                | Hours | Amount      |
|--------------------------------|-------|-------------|
| Professional Fees (80%)        | 236.3 | $60,732.80  |
| Expense Reimbursement (100%)   |       | 3,913.13    |
| Total                          |       | $64,645.93  |

Is this a first application?  Yes _____  No _X_

THIRD INTERIM APPLICATION OF FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM JUNE 1, 2001 THROUGH JUNE 30, 2001)

## INDEX

### APPLICATION FOR ALLOWANCE OF INTERIM
COMPENSATION AND REIMBURSEMENT OF EXPENSES

EXHIBIT A   Affidavit of Edwin N. Ordway, Jr.

EXHIBIT B   Summary of the services performed by FTI Policano & Manzo from June
1, 2001 through June 30, 2001

EXHIBIT C   Summary of fees by professional for the period June 1, 2001 through June
30, 2001

EXHIBIT D   Detailed descriptions of services rendered by professional for the period
June 1, 2001 through June 30, 2001

EXHIBIT E   Summary of expenses incurred for the period June 1, 2001 through June
30, 2001

## APPLICATION FOR ALLOWANCE OF
## INTERIM COMPENSATION AND REIMBURSEMENT
## OF EXPENSES

### I.    Introduction

This is the third application for allowance of interim compensation and reimbursement of expenses ("Third Interim Application") made by FTI Policano & Manzo ("FTI P&M" or "Applicant"), as Financial Advisors to the Official Committee of Unsecured Creditors (the "Committee") of W.R. Grace & Co. et. al., (the "Company" or "Debtors") for the period June 1, 2001 through June 30, 2001 ("Third Interim Period"). In connection with this application, the Applicant submits as follows:

      1. FTI P&M is a firm of financial advisors specializing in insolvency restructuring and related matters, and is an operating unit of FTI Consulting, Inc.

      2. FTI P&M was retained by the Committee as Financial Advisors to the Committee pursuant to an approved by the Court dated June 21, 2001 (the "Employment Order").

      3. On May 3, 2001, the Court entered an order establishing procedures for interim compensation and reimbursement of expenses for all professionals and committee members ("Interim Compensation Order").

      4. The Interim Compensation Order requires each professional to submit monthly statements to various parties as stated in the Interim Compensation Order. These monthly statements include a detailed schedule of the services rendered and the expenses incurred for the related period, and are submitted on or about the 28th day of every month. Following a 20 day period for notice and resolution of objections, the Interim Compensation Order requires the Debtors to promptly pay (i) 80% of undisputed professional fees; and (ii) 100% of the undisputed expenses detailed in the monthly statement.

      5. During the Third Interim Period, FTI P&M submitted the following monthly statements to the parties in the Interim Compensation Order:

| Period | Fees | Expenses |
|--------|------|----------|
| 6/1-6/30/01 | $75,916.00 | $3,913.13 |

      6. Through the date of this Third Interim Application, FTI P&M has not been paid for the professional fees rendered nor the expenses incurred that were included in the monthly statements for the Third Interim Period.

      7. FTI P&M submits this Third Interim Application, pursuant to Section 330 and 331 of the United States Bankruptcy Code and Bankruptcy Rule 2016, for an interim

allowance for compensation for professional services rendered to the Debtors of $60,732.80, representing 80% of fees incurred, and for the reimbursement of expenses in connection therewith of $3,913.13 for the period June 1, 2001 through June 30, 2001. To date, Applicant has not been paid for the professional services rendered nor for reimbursement of expenses.

8.   During the Third Interim Period, the Applicant rendered professional services required by the Debtors and their counsel aggregating a total of 236.3 hours in the discharge of its duties as financial advisor and bankruptcy consultant to the Committee.

9.   The Applicant believes that the interim fees applied for herein for professional services rendered in performing accounting and advisory services for the Committee in this proceeding are fair and reasonable in view of the time spent, the extent of work performed, the nature of the Debtors' capitalization structure and financial condition, the Debtor's financial accounting resources and the results obtained. Applicant has attached to this Third Interim Application, as Exhibit D, a complete accounting of the time expended by professionals who worked on this matter during the Third Interim Period. The Applicant's work during this period has been categorized into six separate tasks, each of which is described in detail in Exhibit B. Additional task codes may be added in subsequent applications.

10.   Section II below briefly discusses the history of the Company prior to its filing, issues facing the Company during the Chapter 11 period, and the major tasks performed by the Applicant during the Third Interim Period.

## II.   Background

1.   On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.   Pursuant to an Application submitted to the Court on or about May 17, 2001, and by a Court order dated June 21, 2001, FTI P&M was retained as financial advisors for the Committee, nunc pro tunc to April 20, 2001. Since its retention, FTI P&M has continuously and vigorously pursued the Committee's interests in these cases.

3.   The Debtors have represented, among other things, that: (a) the Debtors engage in specialty chemicals and materials businesses, operating on a worldwide basis, with their corporate headquarters located in Columbia, Maryland; (b) The Debtors predominantly operate through two business units – Davison Chemicals and Performance Chemicals; (c) the Debtors' parent company, W.R. Grace & Co. ("Grace"), is a global holding company that conducts substantially all of its business through a direct, wholly owned subsidiary, W.R. Grace & Co. – Conn. ("Grace-Conn"); (d) Grace-Conn owns

-4-

substantially all of the assets, properties and rights of Grace in the United States and has 76 domestic subsidiaries and affiliates, 60 of which are Debtors and Debtors in possession in the Chapter 11 Cases.

**4.** The following summary is not intended to be a detailed description of the work performed as those day-to-day services and the time expended in performing such services as those are fully set forth in Exhibit D. Rather, it is merely an attempt to highlight those areas in which services were rendered to the Committee during the Compensation Period, including (i) Analysis of information provided by the Debtor regarding a proposed acquisition (ii) Analysis of information provided by the Debtor regarding compensation and retention issues (iii) Financial monitoring, (iv) Meetings and phone conferences with Debtors' management and counsel and with Committee counsel, and (v) Other Matters.

5. FTI P&M has played an important role in assisting the Creditors to understand and negotiate several substantial and complex issues, notably the assumption of employee executory contracts, the structuring of severance and retention bonuses to employees, and the impact of a proposed acquisition. These issues greatly impact the general unsecured creditors of the Debtors.

6. FTI P&M's role included the preparation and communication of various financial analyses requested by the Official Committee of Unsecured Creditors' professionals in order to assist their rapid understanding of the issues facing the Debtors.

7. For the Compensation Period, FTI P&M seeks compensation totaling $64,645.93, representing 80% of fees incurred and 100% of expenses incurred. FTI P&M expended an aggregate of 236.3 hours, substantially all of which was expended by four professionals. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task. A small staff was utilized to optimize efficiencies and avoid redundant efforts. The staff of the Debtors or their advisors have been utilized where practical and prudent.

8. In addition, FTI P&M incurred out-of-pocket expenses in connection with the rendition of the professional services described above in the sum of $3,913.13 for which FTI P&M respectfully requests reimbursement in full. All expenses were billed at actual cost, exclusive of amortization of the cost of investment, equipment or capital outlay. Internal charges for outgoing out-of-town facsimile transmissions were billed at $1.25 per page for domestic transmissions. Photocopy charges were billed at actual cost for external copying and $.20 per page for internal copying. FTI P&M believes that these charges reflect its actual out-of-pocket costs.

9. The disbursements and expenses have been incurred in accordance with FTI P&M's normal practice by charging clients for expenses clearly related to and required by particular matters. Such expenses were often incurred to enable FTI P&M to devote time beyond normal office hours to matters which imposed extraordinary time

-5-

demands. FTI P&M has endeavored to minimize these expenses to the fullest extent possible.

10. FTI P&M's approach is to utilize senior, experienced personnel and to encourage the Debtors to provide the staff-level support and analysis to minimize total cost. In addition, FTI P&M's per diem rates for professionals of comparable experience are 15% to 25% lower than its competitors, the "Big-Five" accounting firms and certain other nationally-recognized specialty firms.

11. Because FTI P&M's core staff consisted of senior professionals who performed a vast amount of the work, time spent communicating internally and reviewing the work product of junior associates was kept to a minimum. Additionally, because of the experience of FTI P&M's professionals, in many instances only one or two FTI P&M representatives attended meetings or performed specific functions.

12. Edwin N. Ordway, Jr., Managing Director in charge of this case, directed the activities of the FTI P&M team, calling upon his more than ten years of experience in restructuring and insolvency matters, including more than 100 cases, many as large and complex, and some larger and more complex than this matter.

## III.   Summary of Fees and Expenses Incurred

13. To the best of the Applicant's knowledge and belief, there has been no duplication of services between the Applicant and any other accountants or consultants to the bankruptcy estate.

14. FTI P&M's travel time policy is for professional personnel to travel outside of business hours when possible. Such time is not charged to a client unless productive work is performed during the travel period. In this engagement, non-productive travel time is not being charged to the Debtor.

15. In providing a reimbursable service such as copying or telephone, the Applicant does not make a profit on that service. In charging for a particular service, FTI P&M does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay. In seeking reimbursement for a service which the Applicant justifiably purchased or contracted for from a third party, FTI P&M requests reimbursement only for the amount billed to FTI P&M by such third party vendor and paid by FTI P&M to that vendor.

16. FTI P&M's policy with respect to word processing and document preparation and handling services provided by FTI P&M employees is to bill clients by the hour for such time, but only if the employees' time is clearly and exclusively devoted to work performed for that particular client, such as for the preparation, collation and binding of a report for a client. Such services are billed to the Debtor at a rate

commensurate with that which would be charged by a third party provider such as a temporaries agency.

17.       Annexed hereto as Exhibit B is a more comprehensive summary of the services performed by the Applicant during the Third Interim Period at the direction of the Committee and its Counsel.

18.       Annexed hereto as Exhibit C is a summary of fees by professional and by task during the Third Interim Period.

19.       Annexed hereto as Exhibit D are detailed descriptions of the time spent by each professional during the Third Interim Period.

20.       Pursuant to Rule 2016, FTI P&M states that no compensation to be received in this proceeding will be shared with any person or entity outside of FTI Policano & Manzo and that no compensation has been paid or promised to the Applicant in connection with the compensation sought in this Application except as disclosed herein. No prior application has been made to this or any other Court for the relief requested herein for the Compensation Period, nor has any payment been received by FTI P&M on account of its accounting and financial advisory services rendered or on account of the out-of-pocket expenses incurred in connection therewith.

21.       As stated in the Affidavit of Edwin N. Ordway, Jr. annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

22.       The Debtors will give notice of the relief requested herein and of the relief requested by the other professionals in their respective applications for allowance of compensation by serving notice of this application upon all parties that have requested notice in these cases, and FTI P&M has personally served copies of the Application with exhibits to the Debtors and on the United States Trustee.

23.       WHEREFORE, the Applicant respectfully requests that this Court enter an order:

   a. approving the allowance of compensation for professional services rendered to the Committee during the period from June 1, 2001 through and including June 30, 2001 in the amount of $75,916.00;

   b. approving the reimbursement of FTI P&M's out-of-pocket expenses incurred in connection with the rendering of such services during the period from June 1, 2001 through and including June 30, 2001 in the amount of $3,913.13; and

-7-

c. authorizing the Debtor to pay as interim compensation to FTI P&M 80% of the amount of the professional services rendered and 100% of the expenses incurred by FTI P&M during the period from June 1, 2001 through and including June 30, 2001, subject to final payment of the full amount; and

d. granting such other and further relief as this Court may deem just and proper.

Date: _7/27/01_

FTI Policano & Manzo

By _____

Edwin N. Ordway, Jr.
FTI Policano & Manzo
Park 80 West, Plaza I
Saddle Brook, NJ 07663
(201) 843-4900

**EXHIBIT A**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W.R. GRACE & CO., et al.** | ) | **Case No. 01-01139 (JJF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

## AFFIDAVIT

STATE OF NEW JERSEY   )
                           ) ss:
COUNTY OF BERGEN      )

EDWIN N. ORDWAY, JR., being duly sworn, deposes and says:

1.        I am a Managing Director of FTI Policano & Manzo, ("FTI P&M"), an operating unit of FTI Consulting, Inc. ("FTI"), and I am duly authorized to make this affidavit on behalf of FTI P&M. FTI P&M provides financial consulting services for restructuring matters and has its principal office at Park 80 West Plaza I, Saddle Brook, New Jersey. FTI P&M has provided financial consulting services to and has rendered professional services on behalf of the Official Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co., and sixty-one of its domestic subsidiaries and affiliates which are debtors and debtors-in-possession before this Court.

2.        This affidavit is submitted pursuant to Bankruptcy Rule 2016(a) in support of FTI P&M's third monthly application for an interim allowance of compensation and for the reimbursement of expenses for services rendered during the

-1-

period from June 1, 2001 through and including June 30, 2001 in the aggregate amount of $64,645.93.

3.      All services for which compensation is requested by FTI P&M were professional services performed for and on behalf of the Committee from June 1, 2001 through and including June 30, 2001 and not on behalf of any other person.

4.      In accordance with Title 18 U.S.C. Section 155, neither I nor any employee of my firm has entered into any agreement, express or implied, with any other party-in-interest for the purpose of fixing the amount of any of the fees or other compensation to be allowed out of or paid from the Debtors' assets.

5.      In accordance with Section 504 of the Bankruptcy Code, no agreement or understanding exists between me, my firm, or any employee thereof, on the one hand, and any other person, on the other hand, for division of such compensation as my firm may receive for services rendered in connection with these cases, nor will any division of fees prohibited by Section 504 of the Bankruptcy Code be made by me or any employee of my firm.

EDWIN N. ORDWAY, JR.

Sworn to before me this
27th day of July, 2001

Notary Public
KATHIE JOZANOVIC
NOTARY PUBLIC OF NEW JERSEY
COMMISSION EXPIRES 09/11/05

Exhibit B

## SUMMARY OF THE SERVICES PERFORMED BY FTI POLICANO & MANZO DURING THE THIRD INTERIM PERIOD

### Task Code 1 - Preparation for and Participation at Creditors Committee Meetings or Conference Calls  (9.9 Hours)

FTI P&M participated in two committee conference calls during June:

1. June 6th:    Participated in call regarding compensation issues, including issues pertaining to the CEO's contract.
2. June 27th:   Participated in call regarding a proposed acquisition, recent motions, and the asbestos claimants' committee's fraudulent conveyance action.

### Task Code 2 - Issues Related to Chapter 11 Operating Issues, Such As Critical Vendor Motions, Reclamation Claims, Executory Contracts and Similar Issues  (4.3 Hours)

Based on information provided by the Debtor and discussions with management, we developed recommendations to the Committee with respect to various motions by the Debtor and other parties at interest.  In addition, FTI P&M analyzed, coordinated and made recommendations with respect to the Debtor's request that Committee members enter into confidentiality agreements.

### Task Code 3 - Employee Compensation Issues (20.0 Hours)

FTI P&M reviewed and analyzed, through data supplied by the Debtor, the compensation packages of key employees of the Company in comparison with similar companies. Analysis of such work was presented to the Committee to assist them in evaluating proposed First Day Orders pertaining to the assumption of executory employment contracts.

### Task Code 4 - Analysis of Financial Data, Including Business Plan, Projections Forecasts, Cash Flow Forecasts and Historical Information  (109.4 Hours)

FTI P&M met with senior management to discuss and analyze historical and current operating performance by business segment.  In connection therewith, FTI P&M also requested and analyzed historical financial data for purposes of developing an understanding of issues that can affect future performance.  Additionally, FTI P&M

-1-

analyzed and evaluated a proposed corporate acquisition by a non-filing overseas subsidiary.

**Task Code 5- Monthly Statement, Retention and Fee Application Preparation** (28.5 Hours)

This category represents the time expended during the Third Interim Period in preparing FTI P&M's First and Second Applications for Allowance of Interim Compensation and Reimbursement of Expenses.

**Task Code 6- Grace competitor profile analysis and analysis of other asbestos related Chapter 11 filings** (64.2 Hours)

FTI P&M prepared a financial and valuation profile of direct competitors and analyzed financial performance data from other companies with asbestos liabilities for the purpose of developing an understanding of issues relating to claim estimation, operating performance, and valuations.

**Exhibit C**
**Page 1 of 2**

W.R. GRACE & CO. ET. AL.
Summary of Fees by Professional
For the period June 1, 2001 through June 30, 2001

|  | Total Hours<br>June | Billing<br>Rate | Amount |
|---|---|---|---|
| F. Ordway | 23.6 | $475 | $ 11,210.00 |
| S. Cunningham | 48.2 | $405 | 19,521.00 |
| J. Schwendeman | 3.5 | $325 | 1,137.50 |
| C. MacCallum | 112.5 | $295 | 33,187.50 |
| C. Whitney | 19.0 | $315 | 5,985.00 |
| M. DiSalvio | 18.0 | $175 | 3,150.00 |
| M. Hakoun | 11.5 | $150 | 1,725.00 |
|  | 236.3 |  | $ 75,916.00 |

Exhibit C
Page 2 of 2

## W.R. GRACE & CO. ET. AL.
### Summary of Fees by Professional
#### For the period June 1, 2001 through June 30, 2001

| TASK CODE | TASK | E. Ordway | S. Cunningham | J. Schwendman | C. MacCallum | C. Whitney | M. Hakoun | M. DiSalvio | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Meetings of Creditors | 3.9 | 2.3 | 0.0 | 2.3 | 1.4 | 0.0 | 0.0 | 9.9 |
| 2 | Chapter 11 Operating Issues | 0.7 | 3.6 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 4.3 |
| 3 | Employee Compensation Issues | 0.9 | 1.6 | 0.0 | 17.5 | 0.0 | 0.0 | 0.0 | 20.0 |
| 4 | Business Analyses | 16.9 | 36.2 | 0.0 | 38.7 | 17.6 | 0.0 | 0.0 | 109.4 |
| 5 | Fee Application Preparation | 1.2 | 2.6 | 0.0 | 24.7 | 0.0 | 0.0 | 0.0 | 28.5 |
| 6 | Competitor Profile Analysis | 0.0 | 1.9 | 3.5 | 29.3 | 0.0 | 11.5 | 18.0 | 64.2 |
| | TOTAL | 23.6 | 48.2 | 3.5 | 112.5 | 19.0 | 11.5 | 18.0 | 236.3 |

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
### Professional Services Rendered by Edwin N. Ordway, Jr.
### For the period June 1, 2001 through June 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 1-Jun | 3 | Called counsel to discuss change of control and Norris contract issues. | 0.2 |
| | 4 | Read and analyzed financial data included in monthly trustee report. | 0.7 |
| 4-Jun | 3 | Called counsel to discuss compensation and retention issues. | 0.2 |
| 5-Jun | 1 | Called counsel to discuss committee conference call and presentation to be made. | 0.2 |
| | 1 | Prepared for conference call with committee by reading analyses and preparing discussion outline. | 1.3 |
| 6-Jun | 3 | Participated in conference call with committee and counsel to discuss compensation issues. | 0.5 |
| 11-Jun | 2 | Read and analyzed counsels' memo regarding recent court motions. | 0.2 |
| 12-Jun | 2 | Called counsel to discuss confidentiality agreement. | 0.2 |
| 13-Jun | 2 | Discussed confidentiality agreement with counsel. | 0.2 |
| | 4 | Read and analyzed financial data (public data and information from April Bank meeting) and prepared notes/questions for 6/14 meeting with management. | 2.6 |
| 14-Jun | 4 | Met with management to discuss and review:<br>- Operating results by business segment<br>- Proposed acquisition in Europe<br>- Business planning process<br>- Information request list | 8.0 |
| | 4 | Read and analyzed material provided by management regarding operating performance. | 0.5 |
| | 4 | Read and analyzed May Trustee's report. | 0.6 |

| 15-Jun | 4 | Read and analyzed material provided by management regarding operating performance. | 0.4 |
| 20-Jun | 4 | Read and analyzed May Trustee report and noted items for inclusion in our monthly operating report. | 0.3 |
| 21-Jun | 4 | Read and analyzed data relevant to proposed acquisition. | 0.8 |
| | 4 | Prepared outline of report to the committee regarding proposed acquisition. | 0.8 |
| 22-Jun | 2 | Called committee chair to discuss confidentiality issues. | 0.1 |
| 25-Jun | 4 | Prepared sections of report regarding proposed acquisition. | 1.5 |
| 26-Jun | 5 | Read and edited draft of fee applications. | 0.7 |
| | 4 | Prepared section of report regarding proposed acquisition. | 0.7 |
| 27-Jun | 1 | Prepared for committee conference call. | 0.6 |
| | 1 | Participated in committee conference call regarding proposed acquisition, recent motions, and asbestos committee's fraudulent conveyance action. | 1.8 |
| | 5 | Read and edited fee applications. | 0.5 |

**Total Hours - June**                                                    23.6

## W.R. GRACE & CO. ET. AL.
### Professional Services Rendered by Sean Cunningham
#### For the period June 1, 2001 through June 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 4-Jun | 3 | Reviewed with counsel Debtors' response to unsecured committee's request related to change of control language contained in employment contracts. Provided input in regard to alternative change of control language. | 0.8 |
| 5-Jun | 3 | Reviewed and analyzed "Lockhart" contract provisions received from Debtor. | 0.5 |
| | 3 | Discussed LTIP plan calculations and related matters with management. | 0.3 |
| 6-Jun | 1 | Participated in conference call with committee and counsel to discuss compensation issues. | 0.5 |
| 7-Jun | 2 | Discussed confidentiality issues with counsel. | 0.3 |
| | 2 | Read and analyzed conponents of P. Norris contract. | 0.3 |
| 12-Jun | 2 | Discussed confidentiality requirements, information request update, and agenda for June 14 meeting with counsel and Blackstone personnel. | 1.5 |
| 13-Jun | 4 | Reviewed 10Q and various financial filings in preparation for June 14 meeting with management. | 2.0 |
| | 2 | Reviewed and resolved confidentiality issues with Kirkland & Ellis. | 0.5 |
| 14-Jun | 4 | Met with management to discuss and review:<br>- Operating results by business segment<br>- Proposed acquisition in Europe<br>- Business planning process<br>- Information request list | 8.0 |
| 15-Jun | 4 | Provided general update to counsel and committee chair on meeting. | 0.4 |
| | 4 | Reviewed information provided by Company | 0.4 |
| 19-Jun | 2 | Discussed and reviewed various vendor motions, primarily utility deposit requests, with counsel. | 0.7 |
| 20-Jun | 4 | Commenced detail review of financial model and related assumptions pertaining to Company acquisition of Project "Peter." | 5.5 |

| | | | |
|---|---|---|---|
| 21-Jun | 4 | Prepared analysis and draft report for committee re: Project Peter. | 6.1 |
| | 4 | Participated in conference call with Blackstone Group and Grace operating personnel re: Project Peter. | 1.2 |
| 22-Jun | 4 | Updated draft report to committee in prepartion for meeting week of June 25 re: Project Peter. | 4.0 |
| | 6 | Reviewed various economic data and industry data specific to Project Peter. | 1.9 |
| | 4 | Reviewed information pertaining to asbestos claimants' committee issues re: fraudualent conveyance action. | 0.3 |
| | 2 | Discussed confidentiality issues with committee chair. | 0.3 |
| 26-Jun | 4 | Finalized draft report and analysis of Project Peter acquistion. Distributed draft to counsel. | 1.3 |
| | 4 | Participated in phone calls and conference call with counsel and committee chair to discuss report findings relating to Project Peter. | 1.0 |
| 27-Jun | 1 | Participated in committee conference call regarding proposed acquisition, recent motions, and asbestos committee's fraudulent conveyance action. | 1.8 |
| | 5 | Prepared fee applications for the periods 4/20-4/30/01 and 5/1-5/31/01. | 2.6 |
| 28-Jun | 4 | Analyzed information received from Company related to historical financial performance, cash flow projections, etc. | 2.5 |
| | 4 | Analyzed May preliminary results received from the Company in preparation for conference call with CFO. | 1.1 |
| 29-Jun | 4 | Reviewed May results, prepared revised information checklist, participated in conference call with Blackstone personnel and Company CFO. | 2.4 |
| | | **Total Hours - June** | 48.2 |

## W.R. GRACE & CO. ET. AL.
### Professional Services Rendered by Jeffrey Schwendeman
### For the period June 1, 2001 through June 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 11-Jun | 6 | Prepared analysis of litigation reserve provisions for Debtors and competitors. | 1.9 |
| 27-Jun | 6 | Analyzed recent peer group operating results and industry economic data. | 1.6 |
| | | **Total Hours - May** | 3.50 |

# W.R. GRACE & CO. ET. AL.
## Professional Services Rendered by Craig MacCallum
### For the period June 1, 2001 through June 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 4-Jun | 3 | Prepared analysis of "LTIP" plan provisions and calculation of benefits. | 0.3 |
| | 6 | Reviewed industry research reports on asbestos claims and asbestos-related bankruptcies. | 1.3 |
| | 3 | Prepared schedule of key provisions of employee contracts. | 3.5 |
| | 3 | Prepared comparison of contract provisions for Grace CEO with the CEO of a similar manufacturing company. | 2.4 |
| 5-Jun | 6 | Continued with preparation of report to committee on the background of asbestos claims and asbestos-related bankruptcies. | 3.1 |
| | 3 | Continued with research for and preparation of comparison of contract provisions for Grace CEO with the CEO of a similar manufacturing company. | 5.5 |
| | 5 | Revised draft fee application for the period 4/21-4/30/01 based on counsel's comments. | 0.9 |
| 6-Jun | 3 | Completed preparation of CEO contract comparative analysis. Revised analysis based on review comments. | 5.8 |
| | 6 | Continued with preparation of report to committee on the background of asbestos claims and asbestos-related bankruptcies. | 1.4 |
| | 4 | Prepared cash flow, market valuation and enterprise value model. | 2.0 |
| | 1 | Participated in conference call with committee and counsel to discuss compensation issues and CEO contract. | 0.5 |
| 7-Jun | 6 | Reviewed analysts' reports and valuation methodologies for specialty chemical manufacturers and asbestos defendant companies. | 6.7 |
| | 4 | Continued with preparation of cash flow, market valuation and enterprise value model for Grace. | 2.8 |

| 8-Jun | 4 | Continued with preparation of cash flow, market valuation and enterprise value model for Grace. | 4.5 |
|---|---|---|---|
| 14-Jun | 5 | Prepared draft fee application for the period 5/1-5/31/01. | 4.0 |
| 18-Jun | 6 | Conducted background research on asbestos-related diseases, legal implications, bankruptcies, claims and claim settlement trusts. | 9.3 |
| 19-Jun | 6 | Continued with background research on asbestos-related diseases, legal implications, bankruptcies, claims and claim settlement trusts. | 6.0 |
| 20-Jun | 5 | Continued with preparation of draft fee application for the period 5/1-5/31/01. | 2.5 |
| | 4 | Commenced detail review of financial model and related assumptions pertaining to Company acquisition of Project "Peter." | 4.0 |
| | 4 | Spoke by phone with Blackstone Group personnel re: Project Peter. | 0.7 |
| | 4 | Prepared analysis and report to committee re: Project Peter. | 1.8 |
| 21-Jun | 4 | Continued preparation of Project Peter report to committee. | 3.5 |
| 22-Jun | 4 | Continued preparation of Project Peter report to committee. | 2.5 |
| | 6 | Reviewed various economic data and industry data specific to Project Peter. | 1.5 |
| 25-Jun | 4 | Completed preparation of Project Peter report to committee. | 6.5 |
| 26-Jun | 4 | Prepared additional text for Project Peter report based on review and forwarded to Committee chair and counsel. | 3.0 |
| | 4 | Spoke by phone with Blackstone Group personnel re: Project Peter. | 0.4 |
| | 5 | Continued with preparation of draft fee application for the period 5/1-5/31/01. | 2.6 |
| | 4 | Participated in phone calls and conference call with counsel and committee chair to discuss report findings relating to Project Peter. | 1.1 |
| | 4 | Finalized Project Peter report based on comments by committee chair and counsel and distributed to committee. | 1.4 |

| 27-Jun | 4 | Spoke by phone with Blackstone Group personnel re: cash balances in foreign entities and funding of Project Peter acquisition. | 0.7 |
|--------|---|---|-----|
| | 5 | Finalized preparation of fee application for the period 5/1-5/31/01. | 10.5 |
| | 1 | Participated in committee conference call regarding proposed acquisition, recent motions, and asbestos committee's fraudulent conveyance action. | 1.8 |
| 28-Jun | 5 | Finalized preparation of fee application for the period 4/20-4/30/01. Revised fee applications based on review comments. Forwarded fee applications to counsel. | 4.2 |
| | 4 | Analyzed May preliminary results received from Company. | 2.3 |
| 29-Jun | 4 | Continued to analyze May preliminary results received from the Company. | 1.5 |

**Total Hours - June**                                                    112.5

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
### Professional Services Rendered by Christy Whitney
### For the period June 1, 2001 through June 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 11-Jun | 4 | Reviewed publicly available financial reports and selected analysts' reports on Debtor. | 2.2 |
| 14-Jun | 4 | Met with management to discuss and review:<br>- Operating results by business segment<br>- Proposed acquisition in Europe<br>- Business planning process<br>- Information request list | 8.0 |
| 15-Jun | 4 | Provided general update to counsel and committee chair on meeting with Grace management. | 0.6 |
| | 4 | Reviewed financial information provided by Company at the meeting. | 0.8 |
| 27-Jun | 1 | Participated in committee conference call regarding proposed acquisition, recent motions, and asbestos committee's fraudulent conveyance action. | 1.4 |
| 29-Jun | 4 | Prepared draft agenda for proposed Grace headquarters site visit. | 1.3 |
| | 4 | Read and analyzed historical financial data in preparation for meeting with the Debtor, including data received from Debtor during May Committee meeting. | 4.7 |

**Total Hours - June**          19.0

## W.R. GRACE & CO. ET. AL.
### Professional Services Rendered by Matthew Hakoun
### For the period June 1, 2001 through June 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 4-Jun | 6 | Identified comparable companies currently involved in asbestos litigation. | 1.0 |
| 6-Jun | 6 | Researched current news articles regarding asbestos litigation. | 1.1 |
| | 6 | Prepared a peer group analysis of related building supply companies. | 1.5 |
| 7-Jul | 6 | Refined peer group analysis based upon current market data for the building supply industry. | 2.4 |
| 20-Jun | 6 | Analyzed research reports and associations for asbestos litigation for the increase in asbestos exposure litigation over the past 12 months. | 2.5 |
| 25-Jun | 6 | Researched and analyzed additional chemical and construction company financial information. Updated existing peer group analysis. | 3.0 |
| | | **Total Hours - June** | 11.5 |

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
### Professional Services Rendered by Moira DiSalvio
### For the period June 1, 2001 through June 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 4-Jun | 6 | Identified and analyzed comparable companies that declared bankruptcy prior to November 2000. | 1.5 |
| | 6 | Identified comparable companies with exposure to asbestos litigation. | 2.6 |
| 5-Jun | 6 | Identified and analyzed companies that filed Chapter 11 since November 2000 and identified those with exposure to asbestos litigation. | 3.4 |
| 7-Jun | 6 | Researched court documents and news articles regarding *Georgine vs. Amchem* and the *Ahern* litigation cases. Analyzed their effect on the pending asbestos cases and class action lawsuits. | 3.5 |
| 15-Jun | 6 | Research executive compensation for WR Grace and analyzed with regard to comparable corporations in similar circumstances. | 2.0 |
| 21-Jun | 6 | Begin research into the general economic outlook for Europe and forecasts for the next 5 years. | 0.5 |
| 22-Jun | 6 | Analyzed data relating to the economic outlook for Europe through 2006. | 1.8 |
| | 6 | Research and analyzed the specialty construction chemical market, in particular, additives to concrete, and sealants, and their effect on the construction industry. | 2.7 |
| | | **Total Hours - June** | 18.0 |

W.R. GRACE & CO. ET. AL.
Summary of Expenses by Type of Expense
For the period June 1, 2001 through June 30, 2001

| | | |
|---|---|---:|
| Copies: | | |
|     Internal | $ | 433.20 |
|     External | | - |
| Telecommunications: | | |
|     Toll Charges | | 74.63 |
|     Facsimile | | 65.00 |
| Postage, Federal Express | | 149.33 |
| Travel Expenses: | | |
|     Transportation, lodging, tolls and parking | | 2,033.39 |
|     Meals | | 122.58 |
| Word Processing Services | | 810.00 |
| Document Preparation and Handling Services | | 225.00 |
| | | |
| Total Expenses | $ | 3,913.13 |

## W.R. GRACE & CO. ET. AL.
### Detail of Expenses by Type of Expense
### For the period June 1, 2001 through June 30, 2001

| Copies, Internal | Total for Month | 2,166 | pages @ $0.20/page: | | $ | 433.20 |
|---|---|---|---|---|---|---|

| Facsimile Charges: | | 52 | pages @ $1.25/page: | | | 65.00 |
|---|---|---|---|---|---|---|

| Toll Charges: | S.Cunningham | Telephone calls | | 64.35 | |
|---|---|---|---|---|---|
| | C. Whitney | Telephone calls | | 10.28 | |
| | | | Subtotal | | 74.63 |

| Postage, Federal Express: | | 25-Jun | | 10.24 | |
|---|---|---|---|---|---|
| | | 15-Jun | | 127.5 | |
| | | 25-Jun | | 11.59 | |
| | | | Subtotal | | 149.33 |

Transportation, lodging, tolls and parking:

| E. Ordway | 31-May | Parking, tolls | | 47.00 | |
|---|---|---|---|---|---|
| | 14-Jun | Lodging | | 267.68 | |
| | 14-Jun | Parking | | 54.46 | |
| S.Cunningham | 15-Jun | Airfare | | 119.00 | |
| | 15-Jun | Auto rental | | 98.82 | |
| | 14-Jun | Airfare | | 310.75 | |
| C. MacCallum | 18-Jun | Lodging | | 572.00 | |
| | 18-Jun | Parking, tolls | | 58.00 | |
| C. Whitney | 14-Jun | Train fare | | 238.00 | |
| | 14-Jun | Lodging | | 267.68 | |
| | | | Subtotal | | 2,033.39 |

| Meals: | 14-Jun | C. Whitney | | 23.00 | |
|---|---|---|---|---|---|
| | 14-Jun | S.Cunningham | | 10.00 | |
| | 17-Jun | C. MacCallum | | 40.00 | |
| | 18-Jun | C. MacCallum | | 49.58 | |
| | | | Subtotal | | 122.58 |

| Word Processing Services: | | Hours | | Rate | | |
|---|---|---|---|---|---|---|
| | 6-Jun | 0.30 | | $75.00 | 22.50 | |
| | 15-Jun | 7.20 | | $75.00 | 540.00 | |
| | 22-Jun | 2.50 | | $75.00 | 187.50 | |
| | 29-Jun | 0.80 | | $75.00 | 60.00 | |
| | | | | Subtotal | | 810.00 |

| Document Preparation and Handling Services: | | Hours | | Rate | | |
|---|---|---|---|---|---|---|
| | 8-Jun | 3.00 | | $75.00 | | 225.00 |

| | Total Expenses | | | | $ 3,913.13 |
|---|---|---|---|---|---|

## IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF DELAWARE

---------------------------x

In re:                                    Chapter 11

W.R. GRACE & Co., et al.,                 Case No. 01-01139(JJF)
                                          (Jointly Administered)

                    Debtors

---------------------------x

### ORDER ALLOWING FTI POLICANO & MANZO, FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED (FOR THE PERIOD JUNE 1, 2001 THROUGH JUNE 31, 2001)

Upon the Application, dated July 30, 2001 (the "Application"), of FTI P&M, as

Financial Advisors to the Official Committee of Unsecured Creditors (the "Committee")

for Allowance of Interim Compensation in the amount of $60,732.80 for Actual and

Necessary Services Rendered and for Reimbursement of Actual and Necessary Expenses

Incurred in the amount of $3,913.13 for the Period from June 1, 2001 through June 30,

2001 (the "Application Period"); the Court having reviewed the Application; and finding

that the Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 157 and

1334; and after notice and opportunity for a hearing to consider the Application; and

upon the record and after due deliberation thereon; and due and proper notice of the

Application having been given; and sufficient cause appearing therefore;

-1-

IT IS HEREBY ORDERED:

1.    The Application is GRANTED.

2.    FTI P&M is allowed interim compensation in the amount of $60,732.80 for actual, reasonable and necessary professional services rendered on behalf of the Committee during the Application Period, and reimbursement of $3,913.13 for actual, reasonable and necessary expenses incurred during the Application Period.

3.    The Debtors shall pay to FTI P&M the amount of $64,645.93, which is equal to the sum of FTI P&M's allowed compensation and expense reimbursement out of the assets of their estates.


Dated:  Wilmington, Delaware

_____ ._____ _____, 2001


_____
UNITED STATES BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **W.R. Grace & Co., et al.,** | ) | **Case No. 01-01139 (JJF)** |
| | ) | |
| | ) | **Jointly Administered** |
| **Debtors.** | ) | |
| | ) | Objections due by August 20, 2001 at 4:00 p.m. |
| | | Hearing date: To be scheduled, only if objections |
| | | are timely filed and served. |

### CERTIFICATE OF SERVICE

I, Shelley A. Hollinghead, certify that I am not less than 18 years of age, and that service

of a copy of the attached **Third Interim Application of FTI Policano & Manzo, Financial**

**Advisors to the Official Committee of Unsecured Creditors, for Allowance of**

**Compensation for Services Rendered and Reimbursement of Expenses Incurred for the**

**Period from June 1, 2001 Through June 30, 2001** was made July 30, 2001, upon:

> All of the parties indicated on the attached Service List by first
> class mail, postage prepaid, or as otherwise indicated.

Under penalty of perjury, I declare that the foregoing is true and correct.

_July 30, 2001_
Date

_Shelley A. Hollinghead_
Shelley A. Hollinghead

**W.R. GRACE FEE APPLICATION SERVICE LIST**

Case No. 01-01139 (JJF)

Doc. No. Word147513v1

*Via Hand Delivery*
Laura Davis Jones, Esquire
David Carickhoff, Esquire.
Pachulski, Stang, Ziehl, Young & Jones
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
*Counsel to Debtors and Debtors in Possession*

*Via First Class Mail*
Hamid R. Rafatjoo, Esquire
Pachulski, Stang, Ziehl, Young & Jones
10100 Santa Monica Boulevard
Los Angeles, CA 90067-4100
*Counsel to Debtors and Debtors in Possession*

*Via Hand Delivery*
Steven M. Yoder, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
*Local Counsel to DIP Lender*

*Via Hand Delivery*
Michael R. Lastowski, Esquire
Duane, Morris & Heckscher LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
*Counsel to Official Committee of Unsecured Creditors*

*Via First Class Mail*
James H.M. Sprayregen, Esquire
James Kapp, III, Esquire
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601
*Counsel to Debtor*

*Via First Class Mail*
J. Douglas Bacon, Esquire
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL 60606
*Counsel to DIP Lender*

*Via Hand Delivery*
Michael B. Joseph, Esquire
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
*Counsel for Asbestos Property Damage Claimants*

*Via Hand Delivery*
William P. Bowden, Esquire
Matthew G. Zaleski, III, Esquire
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
*Local Counsel to Asbestos Property Damage Claimants*

*Via First Class Mail*
Frank J. Perch, Esquire
Office of the United States Trustee
601 Walnut Street, Curtis Center,
Suite 950 West
Philadelphia, PA 19106

*Via First Class Mail*
Lewis Kruger, Esquire
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982
*Official Committee of Unsecured Creditors*

*Via First Class Mail*
Elihu Inselbuch, Esquire
Rita Tobin, Esquire
Caplin & Drysdale, Chartered
399 Park Avenue, 36th Floor
New York, NY 10022
*Official Committee of Asbestos Personal Injury Claimants*

*Via First Class Mail*
William S. Katchen, Esquire
Duane, Morris & Heckscher LLP
1 Riverfront Plaza, 2nd Floor
Newark, NJ 07102
*Counsel to Official Committee of Unsecured Creditors*

*Via First Class Mail*
Dimensional Fund Advisors
Attn: Lawrence Spieth
10 S. Wacker Drive, #2275
Chicago, IL 60606
*Official Committee of Equity Security Holders*

*Via First Class Mail*
Simon Atlas
8314 Meadowlark Lane
Bethesda, MD 20817
*Official Committee of Equity Security Holders*

*Via First Class Mail*
Scott L. Baena, Esquire
Bilzin Sumberg Dunn Baena Price
 & Axelrod LLP
First Union Financial Center
200 South Biscayne Blvd, Suite 2500
Miami, FL 33131
*Official Committee of Asbestos Property Damage Claimants*

*Via First Class Mail*
Peninsula Partners, L.P.
Attn: Ted Weschler
404B East Main Street, 2nd Floor
Charlottesville, VA 22902
*Official Committee of Equity Security Holders*

*Via First Class Mail*
Angus W. Mercer
4500 Carmel Estates Road
Charlotte, NC 28226
*Official Committee of Equity Security Holders*

*Via First Class Mail*
Raymond E. Smiley
35415 Solon Road
Solon, OH 44139-2415
*Official Committee of Equity Security Holders*