IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*,[1] | ) | Case No. 01-01139 (JJF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Objection Deadline: September 14, 2001 at 4:00 p.m.**
**Hearing Date: September 20, 2001 at 10:00 a.m.**

## MOTION OF THE DEBTORS FOR AN ORDER MODIFYING THE AUTOMATIC STAY

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move (the "Motion") this Court for entry of an order under section 362(d) of title 11 of the United States Code (as amended, the "Bankruptcy Code") modifying the automatic stay to allow continuation of the Debtors' cross-claims in an environmental remediation action which is presently pending in the United States District Court for the District of New Jersey. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors consist of the following 62 entities: W.R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W.R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

**Jurisdiction**

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief requested herein is section 362(d) of the Bankruptcy Code.

**Background**

3. The Debtors engage in specialty chemicals and materials businesses, operating on a worldwide basis, with their corporate headquarters located in Columbia, Maryland. The Debtors predominantly operate through two business units: Davison Chemicals and Performance Chemicals. The Debtors' parent company, W. R. Grace & Co. ("Grace"), is a global holding company that conducts substantially all of its business through a direct, wholly owned subsidiary W. R. Grace & Co.-Conn. ("Grace-Conn"). Grace-Conn owns substantially all of the assets, properties and rights of Grace in the United States and has 76 domestic subsidiaries and affiliates.

4. On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). 60 of the 76 Grace-Conn domestic subsidiaries and affiliates are debtors and debtors in possession in the Chapter 11 Cases. The Chapter 11 Cases have been consolidated for administrative purposes only, and the Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On April 12, 2001, the office of the United States Trustee appointed three official committees in the Chapter 11 Cases as follows: (i) the committee of unsecured creditors (the "Creditors' Committee"); (ii) the committee of asbestos personal injury claimants (the "Asbestos Personal Injury Committee"); and (iii) the committee of asbestos property damage claimants (the "Asbestos Property Damage Committee"). On June 18, 2001, the office of the United States Trustee appointed the committee of equity security holders (the "Equity Committee"). The Creditor's Committee, the Asbestos Personal Injury Committee, the Asbestos Property Damage Committee and the Equity Committee shall collectively be referred to as the "Committees."

**The Environmental Remediation Action**

6. ECARG, Inc. ("ECARG"), a subsidiary of Grace and a Chapter 11 debtor, is the current owner of a 32-acre parcel of land on Route 440 in Jersey City, New Jersey (the "Site").

7. Honeywell International, Inc. ("Honeywell") and Honeywell's corporate predecessor, Mutual Chemical Company ("Mutual"), previously owned the Site. Mutual created chromium waste contamination on the Site during the late 19th century and early 20th century by using the Site as the burial ground for chromium chemical production wastes containing hexavalent chromium, a known carcinogen. Honeywell admits that it is the corporate successor to Mutual and, therefore, that it is liable for any and all responsibilities and liabilities of Mutual relating to or arising out of any contamination at or near the Site. Honeywell has failed to comply with directives issued by the New Jersey Department of Environmental Protection (the "NJDEP") requiring Honeywell to undertake various measures to address the chromium contamination at the Site.

8. In 1995, Interfaith Community Organization ("ICO"), a not-for-profit corporation, filed an action under the Resource Conservation Recovery Act ("RCRA") in the United States District Court, District of New Jersey, captioned as *Interfaith Community Organization, et. al. v. Honeywell International, Inc., Roned Realty of Jersey City, Inc., Roned Realty of Union City, Inc., W.R. Grace & Co., ECARG, Inc. and W.R. Grace, Ltd.*, Civil Action 95-2097 (DMC) (the "Environmental Remediation Action").

9. Because Honeywell has not removed the contamination it caused at the Site, and has not complied with various contractual obligations under a site access agreement with ECARG, ECARG, Grace, and W.R. Grace Ltd. (collectively, the "Defendant Debtors") have brought cross-claims against Honeywell to: (1) obtain injunctive relief requiring Honeywell to fully remediate all of the chromium contamination at the Site; and (2) recover all damages and costs that the Defendant Debtors incurred or will incur as a result of the chromium contamination.

10. The Defendant Debtors' damage claims in the Environmental Remediation Action include claims for: (1) monies expended for response, cleanup and removal costs in the amount of approximately $1,100,000; (2) monies expended for the demolition and removal of a 180,000 square foot retail building destroyed by heaving, taxes and utilities in the amount of approximately $3,332,000; (3) lost profits and lost opportunity in the amount of approximately $21,992,000; and (4) attorneys fees and litigation costs in the amount of approximately $2.5 million.

11. Fact and expert discovery for the Environmental Remediation Action is complete. The briefing of all summary judgment motions is complete and all such motions are pending before the

District Judge. The case is currently scheduled for a pre-trial conference in mid- September with trial to follow based upon the Court's schedule.

12.     The Debtors hereby move this Court to modify the automatic stay so that the Defendant Debtors may continue their cross-claims in the Environmental Remediation Action. A favorable resolution of the Defendant Debtors' cross-claims will benefit the bankruptcy estates by (a) allowing the Defendant Debtors to recover the substantial sums of money it has lost and expended as a result of the environmental contamination and heaving conditions at the Site; and (b) resulting in a prompt remedy of the environmental condition existing at the Site, which will allow the Defendant Debtors to use the Site in its most economically beneficial manner.

## **Argument**

13.     Modification of the automatic stay to allow the continuation of the Environmental Remediation Action is in the best interests of the bankruptcy estates. If the Defendant Debtors prevail, they could be awarded tens of millions of dollars in damages, to the benefit of the bankruptcy estates, and Honeywell will be compelled to remedy the Site, the contamination of which currently impedes the Defendant Debtors' productive use of the Site.

14.     The automatic stay is intended to benefit the debtor in a bankruptcy case and the bankruptcy estate. It is widely recognized that the automatic stay is one of the most fundamental protections provided to a debtor under the Bankruptcy Code. *Midatlantic Nat'l Bank v. New Jersey Dep't of Envt'l Protection*, 474 U.S. 494, 503 (1986); *In re University Medical Center*, 973 F.2d 1065, 1074 (3d Cir. 1992). The Third Circuit recognizes that the automatic stay "permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that

drove him into bankruptcy." *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting H.R. REP. NO. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6296–97)).

15. Section 362(d) of the Bankruptcy Code provides for circumstances under which the automatic stay may be lifted or modified. Section 362(d) of the Bankruptcy Code provides, in part, that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under [section 362(a) of the Bankruptcy Code], such as by terminating, annulling, modifying, or conditioning such stay –
> (1) for cause, including the lack of adequate protection of an interest in such property of such party in interest. . . .

11 U.S.C. § 362(d) (1994).

16. According to such language, a movant must demonstrate sufficient "cause" to justify the lifting or modification of the automatic stay. "Cause for lifting the stay has no clear definition and is determined on a case-by-case basis." *Int'l Bus. Machines v. Fernstrom Storage & Van* Co., 938 F.2d 731, 735 (7th Cir. 1991) (citing *Christensen v. Tuscon Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990)). Although the Bankruptcy Code does not define what constitutes cause sufficient to modify an automatic stay, "courts generally consider the policies underlying the automatic stay in addition to the competing interests of the [parties]." *In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993). Delaware courts specifically consider the following three factors in balancing the competing interests of the parties:

(1) the prejudice that would be suffered by the debtors or the bankruptcy estate should the stay be lifted;

(2) the balance of the hardships facing the parties; and

  (3) the probable success on the merits if the stay is lifted.

*In re Continental Airlines, Inc.*, 152 B.R. at 424 (citing *Int'l Bus. Machines*, 938 F.2d at 734-47); *see also In re Rexene Products*, 141 B.R. 574, 576 (adopting three-prong test and emphasizing policy of benefitting bankruptcy estate); *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 718 (D. Del. 1996) (same).

  17. Additionally, the legislative history of the Bankruptcy Code indicates that cause may be established by the "lack of any connection with or interference with the pending bankruptcy case." H.R. REP. NO. 95-595, at 343-44 (1977) *reprinted in* 1978 U.S. CODE CONG. & ADMIN. NEWS 5787, 6300.

  18. The Debtors can demonstrate sufficient "cause" necessary to modify the automatic stay with respect to the Environmental Remediation Action. First, modifying the automatic stay would result in no prejudice to the Debtors or the bankruptcy estate. Second, the balance of hardships supports modifying the automatic stay. Third, the Defendant Debtors are very likely to succeed on the merits. Fourth, modifying the automatic stay would not unduly interfere with the Chapter 11 Cases. Finally, modifying the automatic stay would be entirely consistent with, and would further, the policies underlying the automatic stay.

*No Prejudice Will Be Incurred by the Debtors or*
*Bankruptcy Estate If the Automatic Stay is Modified*

  19. Neither the Debtors nor the bankruptcy estate will be prejudiced if the automatic stay is modified to allow the completion of the Environmental Remediation Action. Rather, allowing the completion of the Environmental Remediation Action is likely to be very beneficial to the Debtors and the bankruptcy estate.

20. The benefits to the Debtors resulting from the modifying of the automatic stay will be numerous. First, it may aid in accelerating the removal of the chrome contamination at the Site, which currently poses risks and hazards to human health and the environment. Prompt removal of the contamination will not only be beneficial to the health of people working at or near the Site, but will also allow the Defendant Debtors to build useful buildings on the Site and otherwise make productive use of the Site. The contamination of the Site currently causes severe heaving and other structural problems in building foundations, making it impossible to erect structurally sound buildings on the Site. Furthermore, modifying the automatic stay will likely allow the Defendant Debtors to recover substantial funds from Honeywell that Debtors have lost as a result of the environmental contamination and heaving conditions existing at the Site.

21. The substantial sums of money the Defendant Debtors are likely to recover in their cross-claims against Honeywell will tremendously benefit the bankruptcy estate, and thus the Debtors as a whole.

22. If the automatic stay is modified to allow continuation of the Environmental Remediation Action, the Debtors' ability to administer their estates and the Chapter 11 Cases will not be greatly affected, nor will the Debtors incur substantial expenses in connection with the Environmental Remediation Action. Fact and expert discovery is completed. A trial is scheduled for the fall of this year. Motions for summary judgment are already pending before the court.

*The Balance of Hardships Between ICO and the Debtors Supports Modifying the Automatic Stay*

32

23.     Since neither ICO nor the Debtors will suffer a measurable hardship if the automatic stay is modified, this balancing prong of the test clearly supports modifying the automatic stay.

24.     Minimally increased litigation costs for the Debtors is hardly a measurable "hardship" for purposes of determining whether the automatic stay should be modified.  *See In re Continental Airlines, Inc.*, 152 B.R. at 425 ("[T]he minor hardship Continental will face in terms of minimally increased litigation expenses convinces the Court that the stay should be lifted.")  Moreover, as fact and expert discovery for the Environmental Remediation Action has been completed, the most costly part of the litigation has been completed.  Rather than creating any kind of a hardship, modifying the automatic stay will likely provide substantial benefits to the Debtors in the way of significant recovery of damages from Honeywell and eventual productive use of the Site.

25.     ICO initiated the Environmental Remediation Action, and as a result, ICO should be in full support of modifying the automatic stay.

### *The Defendant Debtors Are Likely to Succeed on the Merits*

26.     "[T]he third prong [of the 'cause' analysis] examines [the movant's] probability of success on the merits.  The required showing is very slight."  *In re Rexene Products, Co.*, 141 B.R. at 578 (citing *Peterson v. Cundy*, 116 B.R. 247, 250 (D.Colo. 1990)).

27.     The Defendant Debtors meet this slight standard, given their strongly supported cross-claims against Honeywell. Mutual disposed of all the chrome waste at the site; the Debtors disposed of none.  Honeywell has failed to comply with two directives from the NJDEP requiring Honeywell to address the chromium contamination at the Site.  Furthermore, Honeywell has admitted that it is

the corporate successor of Mutual and that it is therefore responsible for any and all liabilities of Mutual related to the chromium contamination at the Site. Based on these facts, the Defendant Debtors are very likely to prevail against Honeywell, which will result in the recovery of the money they have lost and expenses they have incurred resulting from the contamination of the Site.

*Modifying the Automatic Stay Would Not Interfere With the Chapter 11 Cases*

28. Many courts have acknowledged the legislative history of the Bankruptcy Code and determined that an important factor in establishing cause is the lack of interference with the pending bankruptcy case. *See In re Penn-Dixie Indus., Inc.*, 6 B.R. 832, 835-36 (Bankr. S.D.N.Y. 1980); *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984) "Actions which are only remotely related to the case under title 11 or which involve the rights of third parties often will be permitted to proceed in another forum." *In re Sonnax Indus, Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (quoting 2 COLLIER ON BANKRUPTCY ¶ 362.07(3), at 362-65).

29. The Environmental Remediation Action is not intertwined with and would not interfere with the Chapter 11 Cases. As stressed above, the slightly increased costs of litigation will not interfere with the Chapter 11 Cases. As fact discovery is completed, probably the most time-intensive part of the Environmental Remediation Action is over. If anything, the substantial sums of money that the Defendant Debtors will likely recover from Honeywell will provide income beneficial to the Chapter 11 Cases. Moreover, the Debtors' bankruptcy counsel will not be distracted from the administration of the Debtors' estates because separate counsel has been retained to pursue the Environmental Remediation Action.

*Modifying the Automatic Stay Is Consistent With*
*the General Policies Underlying the Automatic Stay*

30. As noted above, the policy behind the automatic stay is to benefit the debtor in a bankruptcy case and to work to the benefit of the bankruptcy estate. *In re University Medical Center*, 973 F.2d at 1074. Completely consistent with this policy, the automatic stay generally "only operates in actions where the [debtor] is in a *defensive* posture." *Boone v. Beacon Building Corp.*, 613 F. Supp. 1151, 1155 (D. N.J. 1985).

31. It follows that when a debtor makes a cross-claim, that is when a debtor takes an *offensive* posture, the automatic stay should not operate to impede such actions. In fact, numerous courts have rendered decisions furthering this policy, holding that within one action, claims against the debtor will be suspended by the automatic stay even though closely related claims asserted by the debtor, including cross-claims, may continue. *See Maritime Electric Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991) (*reh'g granted on grounds separate from automatic stay issue*). Thus, the policy underlying the automatic stay mandates that the automatic stay not impede cross-claims by the debtor which would "inure to the benefit of the bankruptcy estate." *In re Regal Constr. Co., Inc.*, 28 B.R. 413, 416 (D. Md. 1983) (quoting *Assoc. of St. Croix Condo. Owners v. St. Croix Hotel*, 682 F.2d 446, 448 (3d Cir. 1982)); *see also Trans Caribbean Lines, Inc. v. Tracor Marine, Inc.*, 49 B.R. 360, 362 (S.D. Fla. 1985) (holding automatic stay only stays proceeding against debtor and does not stay independent prosecution of cross claim by party in reorganization); *Boone v. Beacon Bldg. Corp.*, 613 F. Supp. 1151, 1155 (D.

N.J. 1985) (holding automatic stay provision operates only in actions where petitioner is in defensive posture, not where petitioner has made cross-claim, which is offensive posture).

32. To be completely consistent with these policies underlying the automatic stay, the automatic stay in the Chapter 11 Cases should be modified to allow the continuance of the Environmental Remediation Action in order to ensure that the automatic stay in no way interferes with the Defendant Debtors' strong cross-claims against Honeywell. Indeed, the Defendant Debtors' cross-claims are akin to an "offensive posture," which will only work to the benefit of the bankruptcy estate, and thus should not be impeded by the automatic stay. Grace's cross-claims against Honeywell are likely to result in the recovery of substantial sums of money, and will eventually result is allowing the Defendant Debtors to use the Site in a productive manner. Hence, modifying the automatic stay will further the policies behind the automatic stay by working to the benefit of the Debtors as a whole and "inur[ing] to the benefit of the bankruptcy estate." *In re Regal Constr. Co., Inc.*, 28 B.R. at 416.

## Conclusion

33. The requisite "cause" for modifying the automatic stay under section 362(d) of the Bankruptcy Code exists in this matter: (1) modifying the automatic stay will not prejudice, but will in fact benefit both the Debtors and their estates; (2) no measurable hardships will be created if the automatic stay is modified; (3) the Defendant Debtors are very likely to prevail on their cross-claims against Honeywell; and (4) modifying the automatic stay would not interfere with the Chapter 11 Cases. Modifying the automatic stay is consistent with, and will further, the policies underlying the automatic stay because it will benefit the Debtors and their estates, and will allow the Defendant

Debtors to proactively and justly recover from Honeywell. For the foregoing reasons, the automatic stay should be modified to allow all claims in the Environmental Remediation Action to proceed.

**WHEREFORE**, for the foregoing reasons, the Debtors respectfully request that this Motion be granted.

Dated:  August 24, 2001

        PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

        /s/ David W. Carickhoff, Jr.
        Laura Davis Jones (2436)
        David W. Carickhoff, Jr. (3715)
        919 North Market Street, 16th Floor
        P.O. Box 8705
        Wilmington, DE 19899-8705 (Courier 19801)
        (302) 652-4100

        Co-Counsel for the Debtors and Debtors in Possession