IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JJF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO ASSUME, SELL AND ASSIGN A PRIME LEASE AND THE ACCOMPANYING SUBLEASES**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") by and through their undersigned counsel, submit this Motion (the "Motion") for entry of an Order, pursuant to sections 105(a), 363(b) and 365(a) of chapter 11 of the United States Code (as amended, the "Bankruptcy Code"), authorizing the Debtors to assume, sell and assign that certain prime lease and the accompanying subleases as more fully set forth herein. In support of this Motion, the Debtors respectfully state as follows:

**Jurisdiction**

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

1.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The statutory bases for relief requested herein are sections 105(a), 363(b) and 365(a) of the Bankruptcy Code.

## Background

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.      In or about 1994, the Debtors divested one of their former subsidiaries and businesses known as Chomerics, Inc. ("Chomerics").  As a part of this divestment, the Debtors agreed to maintain possession of Chomerics' office headquarters.  Accordingly, W. R. Grace & Co.-Conn. ("Conn") entered into an assignment of lease and assumption agreement, dated September 30, 1994, through which Chomerics assigned its interest to Conn in that certain lease dated July 22, 1981, by and between Chomerics and American Property Investors XI ("American") for the premises commonly known as 78 Dragon Court, Woburn, Massachusetts (the "Dragon Court Lease"), a copy of which is attached hereto as Exhibit A.

5.      Upon taking possession of Chomerics' office space, the Debtors immediately subleased a portion of the premises to the acquiror of Chomerics (the "Initial Sublease")[2] and the

---

[2]  At the time of execution of the Initial Sublease the Debtors also executed that certain Foster Road Ramp License
(continued...)

2

remainder was used by the Debtors for office space.  The Debtors later determined, however, that the Dragon Court space was not suited for their needs and as a result, that portion of the premises initially used by the Debtors was ultimately sublet to two additional tenants in 1998 and 1999 (collectively, the "Secondary Subleases," the Initial Sublease and the Secondary Subleases shall be referred to as the "Subleases").

6.      Although the Debtors have sublet portions of the Dragon Court premises, the Debtors operate the property at a loss.  The rent paid by the Debtors under the Dragon Court Lease is greater than the rent received under the Subleases and as of the date hereof, the Debtors project that they will suffer a net operating loss of approximately $1,400,000 through the current term of the Dragon Court Lease, or January 31, 2005.  As a result, the Debtors proceeded to market the Dragon Court Lease as a means of mitigating these ongoing losses.

7.      The Debtors' marketing efforts included seeking potential purchasers through the use of a real estate broker.  The Debtors used the services of Spaulding & Slye, a national real estate services company, to market the Dragon Court Lease, but Spaulding & Slye was unable to locate any potential assignees.  The Debtors also offered to assign the Dragon Court Lease to American, the prime landlord, but American declined the Debtors' offer.  The Debtors ultimately

---

[2] (...continued)
Agreement (the "License Agreement") which provides Chomerics' successor with the right to use and maintain the Foster road ramp.  The Foster road ramp is necessary for the use and maintenance of the Initial Sublease premises.  The Debtors seek the Court's authority to assume and assign the License Agreement as set forth herein.

At the time of execution of the Dragon Court Lease, the Debtors, American and each of the counterparties to the Subleases entered into a certain Non-Disturbance, Attornment and Subordination Agreement (the "Non-Disturbance Agreement") which provides the Debtors and the counterparties to the Subleases with use and enjoyment of the Dragon Court premises.  Upon information and belief, the Debtors believe that the Non-Disturbance Agreement terminated in connection with the discharge of the underlying mortgage relating to the Dragon Court premises.  To the extent, however, the Non-Disturbance Agreement is still in effect, the Debtors seek the Court's authority to assume and assign the Non-Disturbance Agreement as set forth herein.

marketed the Dragon Court Lease and the Subleases through their own real estate contacts, which has culminated in the transaction contemplated herein.

        8.      Accordingly, on August 15, 2001, the Debtors, subject to Court approval, accepted an offer from Atlantic Boston Construction, Inc. ("ABC") to purchase the Dragon Court Lease and the Subleases for $1000, plus 50% of all net profits, if any, derived from rental proceeds of the Subleases and any future subleases under the Dragon Court Lease.  A copy of the ABC offer is attached hereto as Exhibit B.  ABC intends to continue subletting the Dragon Court Lease premises and not directly occupy any portion of it, thereby maximizing the opportunity to earn profits under the Subleases and any future subleases under the Dragon Court Lease.  Accordingly, the Debtors believe that it is in the best interests of their estates and creditors that the Dragon Court Lease and the Subleases are assumed, sold and assigned in accordance with this Motion.

**Relief Requested**

        9.      Pursuant to sections 363(b) and 365(a) of the Bankruptcy Code, the Debtors seek the Court's approval of the Debtors' assumption, sale and assignment of each of the Dragon Court Lease, the Subleases, the License Agreement and the Non-Disturbance Agreement pursuant to that certain Assignment and Assumption agreement attached hereto as Exhibit C.

**Basis for Relief**

        10.     The Debtors respectfully submit that the proposed sale satisfies the governing standards for such sale promulgated in the Third Circuit.  Under section 363(b) of the Bankruptcy Code, the debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  Courts within this Circuit interpreting section 363(b) of the Bankruptcy Code have held that transactions should be approved under section 363(b)

4

when they are supported by the sound business judgment of management.  <u>See</u> <u>In re Delaware &</u> <u>Hudson Ry. Co.</u>, 124 B.R. 169, 176 (D. Del. 1991) ; <u>In re Phoenix Steel Corp.</u>, 82 B.R. 334, 335-336 (Bankr. D. Del. 1987) (judicial approval of a section 363 sale requires a showing that the proposed sale is fair and equitable, that a good business reason exists for completing the sale and that the transaction was entered into in good faith).

11.    The "sound business judgment" test requires a debtor to establish the following four elements of proof:

C    that a sound business purpose justifies the sale outside the ordinary course of business;

C    that adequate and reasonable notice has been provided to interested parties;

C    that the debtor has obtained a fair and reasonable price; and

C    good faith.

<u>See</u> <u>In re Titusville Country Club</u>, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); <u>Phoenix Steel</u>, 82 B.R. at 335-336.  <u>See</u> <u>also</u> <u>Stephens Indus., Inc. v. McClung</u>, 789 F.2d 386, 390 (6th Cir. 1986); <u>In re Lionel Corp.</u>, 722 F.2d 1063, 1071 (2d Cir. 1983).  The proposed sale satisfies every prong of the above-articulated test.

<u>The Proposed Sale is Supported by Sound Business Judgment</u>

12.    Clear business reasons exist to justify the Debtors' sale of the Dragon Court Lease and the Subleases under section 363(b) of the Bankruptcy Code.  Neither the Dragon Court Lease nor the Subleases are essential to the Debtors' core business operations and neither coincides with the Debtors' restructuring efforts or ongoing business plan.  Because this property is operating at a net loss to the Debtors, the Debtors' management has determined in its business judgment that

5

the Dragon Court Lease and the Subleases should be sold for the best available price. In the Debtors' sound business judgment, ABC's offer is the best available price.

13.    The Debtors submit that the circumstances surrounding their efforts to sell the Dragon Court Lease and the Subleases warrant approval of the sale to ABC. The Debtors believe that it is highly unlikely that a renewed marketing process and the associated costs would yield a higher recovery than that offered by ABC. Such a process will merely delay the sale and cause the Debtors to incur further uncompensated carrying costs and associated risks.

The Debtors Will Provide Reasonable and Adequate Notice to Interested Parties

14.    In satisfaction of the requirements of Rule 2002 of the Bankruptcy Rules, the Debtors intend to serve copies of this Motion to all parties who have previously expressed an interest in acquiring the Dragon Court Lease or the Subleases.

The Proposed Sale Price is Fair and Reasonable

15.    The price offered by ABC represents a fair and reasonable purchase price for the Dragon Court Lease and the Subleases. Based on the information available, the Debtors have concluded that the purchase price is fair and reasonable and was the highest and best offer received.

The Sale Was Negotiated in Good Faith

16.    The sale of the Dragon Court Lease and the Subleases is the product of good faith, arm's-length negotiations between the Debtors and ABC. ABC is not an "insider" of any of the Debtors within the meaning of section 101(31) of the Bankruptcy Code, and is not controlled by, or acting on behalf of, any insider of any of the Debtors. See, e.g., In re After Six, Inc., 154 B.R. 876, 883 (Bankr. E.D. Pa. 1993) (good faith found where officers, directors and employees of debtor had

no apparent connection to purchasers).  The Debtors request a finding by this Court that ABC is a "good faith purchaser" under section 363(m) of the Bankruptcy Code.

17.    For all of the foregoing reasons, the Debtors respectfully request that the Court approve the sale of the Dragon Court Lease and the Subleases under section 363(b) of the Bankruptcy Code.

Request for Approval of Sale Free and Clear of Liens

18.    The Debtors request that the Court approve the sale of the leases free and clear of all liens, claims, encumbrances and interests which may be asserted against either the Dragon Court Lease or the Subleases (collectively, the "Encumbrances"), with all such Encumbrances attaching only to the proceeds of the sale.  The Debtors, however, are not aware of the existence of any Encumbrances against the Dragon Court Lease and the Subleases.

19.    The Debtors submit that the sale Dragon Court Lease and the Subleases meets each of the requirements of the "sound business judgment" test.  Accordingly, the Debtors believe that it is in the best interests of their estates and creditors that the Dragon Court Lease and the Subleases are assumed, sold and assigned in accordance with this Motion.

Request for Relief from Transfer Taxes

20.    Section 1146(c) of the Bankruptcy Code provides that the making or delivery of an instrument of transfer under a confirmed chapter 11 plan of reorganization may not be taxed under any law imposing a stamp or similar tax, if any.  Most courts have construed this provision to include transfers outside of, but in furtherance of effectuating, a chapter 11 plan.  See Director of Revenue, State of Delaware v. CCA Partnership, 70 B.R. 696 (Bankr. D. Del. 1987), aff'd 833 F.2d 304 (3d Cir, 1987); In re Jacoby-Bender, Inc., 40 B.R. 10 (Bankr. E.D.N.Y. 1984), aff'd 758 F.2d 840

(2d Cir, 1985); In re A.H. Robins Co., 88 B.R. 742 (E.D. Vir. 1988), aff'd 880 F.2d 694 (4th Cir.

1988).

      21.     The Debtors respectfully request a ruling of this Court that section 1146(c) of

the Bankruptcy Code applies to the sale hereunder.

### The Assumption and Assignment of the Dragon Court Lease,<br>the Subleases, the Licensee Agreement and the Non-Disturbance Agreement

      22.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession,

"subject to the court's approval, may assume or reject any executory contract or unexpired lease of

the debtor."  11 U.S.C. § 365(a).  It is well established that the decision to assume or reject an

executory contract or unexpired lease is a matter within the "business judgment" of the debtor.

NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984) (describing the business judgment test as

"traditional").  See also In re Taylor, 913 F.2d 102 (3d Cir. 1990); Sharon Steel Corp. v. Nat'l Fuel

Gas Distrib. Corp., 872 F.2d 36 (3d Cir. 1989).  Additionally, pursuant to section 365(b)(1)(A) of the

Bankruptcy Code "[i]f there has been a default in an executory contract or unexpired lease of the

debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such

contract or lease, the trustee cures, or provides adequate assurance that the trustee will promptly cure

such default."  11 U.S.C. 365 (b)(1)(A).

      23.     The Debtors have agreed to pay all cure amounts relating to the assumption

of the Dragon Court Lease, the Subleases, the License Agreement and the Non-Disturbance

Agreement. The Debtors estimate that the approximate cure amount associated with the assumption

of the Subleases is $108,270, however, the Debtors do not believe that any cure amounts are owing

relating to the assumption of the Dragon Court Lease, the License Agreement or the Non-Disturbance Agreement.[3]

24.    Accordingly, the Debtors submit that the assumption and assignment to ABC of the Dragon Court Lease, the Subleases, the License Agreement and the Non-Disturbance Agreement is in the best interest of the Debtors, their creditors and estates.  As described above, the assumption and assignment of the Dragon Court Lease and the Subleases immediately limits the losses that must be borne by the Debtors.  These losses are unwarranted and unnecessary, given that the Debtors do not need the use of the Dragon Court premises.

25.    Further, if the Court does not authorize the Debtors to assume and assign the Dragon Court Lease and the Subleases, the Debtors will likely reject the Dragon Court Lease and the Subleases.  Therefore, the proposed transaction also relieves the Debtors' estates of the potential rejection damages claims related to the ultimate rejection of the Dragon Court Lease and the Subleases.

### Modification of the Dragon Court Lease

26.    Section 365(f) of the Bankruptcy Code provides that ". . . notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign

---

[3]  One of the Subleases is a sublease between Conn and Zaiq Technologies, Inc., formerly known as ASIC Alliance Corporation, ("Zaiq") for space on the fourth floor of the Dragon Court Lease premises.  Immediately prior to the filing of the Chapter 11 Cases, Zaiq and Conn executed an amendment to such sublease, pursuant to which Zaiq agreed to sublease additional space in the building.  In connection with such amendment, Zaiq paid to Conn the amount of $34,023.17 (the "Deposit") as an additional security deposit.  Conn never delivered the sublease amendment and, consequently, such amendment did not become effective.  The Deposit was not returned to Zaiq and the Deposit is still in the Debtors' possession.  Upon the Court granting the relief requested in this Motion, the Debtors intend to return the Deposit to Zaiq.

such contract or lease." 11 U.S.C. § 365(f). In anticipation of the assumption, sale and assignment of the Dragon Court Lease, the Debtors request that the Court approve the assignment of the Dragon Court Lease over any anti-assignment provisions contained therein. In particular, the Debtors request that the Court excise each of the following terms of the Dragon Court Lease:

- C    Section 9 relating to the lessor's and mortgagee's right to consent to modifications or alterations of the lease premises;

- C    Section 17 relating to the lessor's and the mortgagee's right to consent to any assignments, subleases or successive assignments or subleases of the Dragon Court Lease; requiring a sublessee to attorn to the lessor; and the lessor's recapture rights; and

- C    Section 22 relating to the requirement to remove tenant alterations.

In addition, the Debtors request that the Court excise those provisions of the Non-Disturbance Agreement that require the mortgagee's consent to the cancellation, modification, assignment, renewal, extension, or amendment of the Dragon Court Lease or any other matters relating to the Dragon Court Lease. The Debtors submit that the foregoing alterations of the Dragon Court Lease are consistent with the case law in this Circuit. See In re Rickel Home Centers, Inc., 240 B.R. 826, 831-32 (Bankr. D. Del. 1998), *affirmed* 209 F.3d 291 (3d Cir. 2000) (the Bankruptcy Code generally favors the free assignability of contracts and leases as a means of maximizing a debtor's estate); see also In re Headquarters Dodge, Inc., 13 F.3d 674, 682 (3d Cir. 1994) (the Bankruptcy Code prevents contract terms from defeating a debtor's ability to realize the full value of its assets). The requested modifications are limited to changes that are necessary to permit the assignment of the Dragon Court Lease and the Subleases to ABC and to permit ABC to continue the current practice of subleasing available space in the premises. The Debtors directly benefit from the modification of the foregoing anti-assignment clauses because, as noted above, ABC has agreed to share 50% of the excess proceeds arising from future subleases under the Dragon Court Lease.

### Conclusion

27.    In sum, by permitting the Debtors to assume, sell and assign the Dragon Court Lease, the Subleases, the License Agreement and the Non-Disturbance Agreement, the Debtors will relieve their estates of a significant, long-term financial burden, thereby freeing additional moneys for the benefit of their estates and creditors.  As a result, the Debtors have determined, in the exercise of their business judgment, that the assumption, sale and assignment of the Dragon Court Lease, the Subleases, the License Agreement and the Non-Disturbance Agreement is in the best interests of the Debtors' creditors and estates.

### Notice

28.    Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee, (v) those parties that expressed an interest in the Dragon Court Lease and the Subleases, (vi) counterparties to the Dragon Court Lease and the Subleases, (vii) counsel to ABC and (viii) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

### No Prior Relief

29.    No previous application for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, (i) approving the assumption, sale and assignment of the Dragon Court Lease, the Subleases, the License Agreement and the Non-Disturbance Agreement, (ii) approving the modifications to the Dragon Court Lease and (iii) and granting such other and further relief as is just and proper.

Wilmington, Delaware
Dated: August __, 2001

Respectfully submitted,

KIRKLAND & ELLIS
James H.M. Sprayregen
James W. Kapp III
Samuel A. Schwartz
Roger J. Higgins
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

/s/Peter J. Duhig
Laura Davis Jones (Bar No. 2436)
Hamid R. Rafatjoo (California Bar No. 181564)
David W. Carickhoff, Jr. (Bar No. 3715)
Peter J. Duhig (Bar No. 4024)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

\\Pszy1_de\data\Documents\Grace\Debtors' Motion For Entry of An Order.wpd

**EXHIBIT A**

**<u>THE DRAGON COURT LEASE</u>**

**EXHIBIT B**

**THE ABC OFFER LETTER**

**EXHIBIT C**

**THE ASSUMPTION AND ASSIGNMENT AGREEMENT**