IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & CO., et al.,[1] | ) | Case No. 01-01139 (JJF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

## MOTION OF THE DEBTORS FOR AN ORDER
## MODIFIYING THE AUTOMATIC STAY

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move (the "Motion") the Court for entry of an order under section 362(d) of title 11 of the United States Code (as amended, the "Bankruptcy Code") modifying the automatic stay to allow continuation of a patent infringement action in the Federal Circuit. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors consist of the following 62 entities: W.R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W.R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief requested herein is section 362(d) of the Bankruptcy Code.

## Background

3. The Debtors engage in specialty chemicals and materials businesses, operating on a worldwide basis, with their corporate headquarters located in Columbia Maryland. The Debtors predominantly operate through two business units - Davison Chemicals and Performance Chemicals. The Debtors' parent company, W. R. Grace & Co. ("Grace"), is a global holding company that conducts substantially all of its business through a direct, wholly owned subsidiary W. R. Grace & Co. - Conn. ("Grace-Conn"). Grace-Conn owns substantially all of the assets, properties and rights of Grace in the United States and has 76 domestic subsidiaries and affiliates.

4. On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). Sixty of the 76 Grace-Conn domestic subsidiaries and affiliates are debtors and debtors in possession in the Chapter 11 Cases. The Chapter 11 Cases have been consolidated for administrative purposes only, and the Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On April 12, 2001, the office of the United States Trustee appointed three official committees in the Chapter 11 Cases as follows: (i) the committee of unsecured creditors (the

"Creditors' Committee"); (ii) the committee of asbestos personal injury claimants (the "Asbestos Personal Injury Committee"); and (iii) the committee of asbestos property damage claimants (the "Asbestos Property Damage Committee"). On June 18, 2001, the office of the United States Trustee appointed the committee of equity security holders (the "Equity Committee"). The Creditor's Committee, the Asbestos Personal Injury Committee, the Asbestos Property Damage Committee and the Equity Committee shall collectively be referred to as the "Committees."

### The Patent Action

6. Grace-Conn is the holder of certain U.S. patents which pertain to a plastic gasket composition containing an ascorbate oxygen scavenger (the "Compositions") used to form the plastic liner inside a bottle closure ("Crown"), such as a beer-bottle cap. These Compositions were developed, in part, because the quality of bottled beer decreases over time due to exposure to oxygen. In particular, the Compositions reduce the presence of oxygen that might otherwise diffuse through a bottle's liner, thereby providing optimal preservation of beer.

7. ZapatA is a major Crown manufacturer and supplier of metal Crowns to the beer industry. Certain of ZapatA's commercial Crowns incorporated an ascorbate oxygen scavenger. As a result thereof, it is Grace-Conn's position that ZapatA has been infringing upon Grace-Conn's patents concerning the Compositions.

8. On November 1, 1995, ZapatA filed an action against Grace-Conn in the Southern District of Florida, captioned as ZapatA v. W. R. Grace & Co. - Conn., S.D. Fla Case No. 95-2420-CIV (Middlebrooks) (the "Patent Action"). In particular, the Patent Action sought a declaration that Grace-Conn's Composition patents were invalid. Grace-Conn filed a counterclaim for patent infringement against ZapatA. Thus, although ZapatA was technically the plaintiff, the Patent Action

proceeded as a standard patent infringement action where Grace-Conn, as patentee, sought monetary damages and an injunction against ZapatA.

9. In December, 2000, a jury trial was held before District Judge Middlebrooks on the infringement and validity issues. After the close of the evidence and prior to submission of the case to the jury, the district court granted Grace-Conn's motion for judgment as a matter of law with respect to one of ZapatA's invalidity defenses and one of its non-infringement defenses.

10. After deliberation, the jury found ZapatA's products to be within the claims of the Grace-Conn patents. As instructed by the District Court, the jury also found that Grace-Conn incurred contingent damages in the amount of approximately $2.3 million, assuming Grace-Conn's patents were valid and infringed. The jury, however, found Grace-Conn's patents not to be infringed because it determined that such patents were invalid. On the basis of the single invalidity issue, the District Court entered judgement in ZapatA's favor on January 19, 2001.

## The Appeal

11. Grace-Conn filed a timely notice of appeal to the Court of Appeals for the Federal Circuit. In response, ZapatA filed a notice of cross-appeal on every claim or defense on which it failed to prevail, including matters dismissed prior to trial. Grace-Conn contends that ZapatA's notice was untimely and has filed a motion to dismiss ZapatA's cross-appeal. The Debtors' appellate brief, although prepared and final, was not filed with the Court of Appeals prior to the initiation of the Chapter 11 Cases. As a result thereof, the Debtors have substantially completed the majority of the work necessary to pursue the appeal of the Patent Action and all that remains is for the Debtors to reply to ZapatA's brief and to prepare for, and participate in, oral arguments.

12.  In response to Grace-Conn's initiation of this Chapter 11 Case, the Federal Circuit entered an order on May 7, 2001, staying Grace-Conn's appeal, including disposition of the motion to dismiss the cross-appeal, pending resolution of the Chapter 11 Cases. The order requires Grace-Conn to file a report on the status of the Chapter 11 Cases with the Federal Circuit every 60 days, beginning July 6, 2001.

13.  The Debtors hereby move the Court to modify the automatic stay so that the Debtors may continue their pursuit of the Patent Action to establish the validity of Grace-Conn's patents. Establishing the validity of the patents will benefit the bankruptcy estates by (a) maximizing the Debtors' market position as the provider of the Compositions by halting ongoing infringement of the patents; and (b) allowing the Debtors to be awarded damages for the infringement of such patents.

## Argument

14.  Modification of the automatic stay to allow the continuation of the Patent Action is in the best interests of the bankruptcy estates. If Grace-Conn prevails, it will be eligible to pursue the existing contingent award of approximately $2.3 million, supplemented by any further damages that accrued between the time of trial and the remand proceedings. Furthermore, a reversal of the validity issue will allow Grace-Conn to enjoin other third-parties from infringing upon the patents, thereby increasing revenues by minimizing infringement of the Composition patents. In addition, pursuit of the appeal will not require the Debtors to expend significant resources. In particular, the discovery and trial phases of the Patent Action are complete. The Debtors' appellate brief is ready to be filed. The appeal of the Patent Action should now only require the Debtor to reply to ZapatA's brief and to prepare for, and participate in, oral arguments. Moreover, there will be little, if any, diversion of the Debtor's key personnel from the administration of the Chapter 11 Cases since the remaining

aspects of the appellate process will primarily involve Grace-Conn's outside patent counsel. For the foregoing reasons, this Motion should be granted.

15. The automatic stay is one of the most fundamental protections provided to a Debtor under the Bankruptcy Code. *Midatlantic Nat'l Bank v. New Jersey Dep't. of Envt'l Protection*, 474 U.S. 494, 503 (1986). In particular, the Third Circuit has stated that the automatic stay "permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." *Borman v. Raymark Industries, Inc.*, 946 F2d 1031, 1036 (3d Cir 1991) (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6296–97).

16. Pursuant to section 362(d) of the Bankruptcy Code, the automatic stay may be lifted or modified under certain circumstances. In particular, section 362(d) of the Bankruptcy Code provides, in part, that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> > (1) for cause, including the lack of adequate protection of an interest in such property of such party in interest.

17. As a result, a movant must demonstrate sufficient cause to justify the lifting or modification of the automatic stay. Although the Bankruptcy Code does not define what constitutes cause, "courts generally consider the policies underlying the automatic stay [and] ... the competing interests of the [parties]." *In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D.Del. 1993). In particular, Delaware courts consider the following three factors in balancing the competing interests of the parties:

(1) the prejudice that would be suffered by the Debtors should the stay be lifted;

6

(2) the balance of the hardships facing the parties; and

(3) the probable success on the merits if the stay is lifted.

*Continental*, 152 B.R. at 424; see also *In re Rexene Products*, 141 B.R. 574, 576.

18. The Debtors can demonstrate sufficient "cause" necessary to modify the automatic stay with respect to the Patent Action.

### No Prejudice Incurred by the Debtors

19. The Debtors will not be prejudiced if the automatic stay is modified to allow the completion of the Patent Action. Courts have found that an important factor in establishing "cause" is the lack of interference with the pending bankruptcy case. *In re Penn-Dixie Industries, Inc.*, 6 B.R. 832, 835–36 (Bankr. S.D.N.Y. 1980); *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Ut. 1984).

20. If the automatic stay is modified to allow the completion of the Patent Action, the Debtors' ability to administer their estates and the Chapter 11 Cases will not be affected, nor will the Debtors incur substantial expenses in connection with the Patent Action. Since the Patent Action awaits appellate review, the financial burden of discovery and a full trial is not an issue. Indeed, the Debtors' counsel has already completed an appellate brief. Furthermore, the appellate process will not require the diversion of Debtors' key personnel as testimony and discovery is not necessary. Finally, the Debtors' bankruptcy counsel will not be distracted from the administration of the Debtors' estates because separate counsel has been retained to pursue the Patent Action.

21. Resuming the Patent Action provides the Debtors with an opportunity to solidify their position as the exclusive producer of the Compositions by significantly reducing patent infringement. As the exclusive producer, Grace-Conn can generate greater revenues from Composition sales.

Furthermore, reversing the District Court decision will provide the Debtors with approximately $2.3 million in damages. As a result thereof, value can be added to the bankruptcy estates.

### Balance of Hardships Weighs Significantly in Favor of the Debtors

22. ZapatA will also incur little hardship in completing the Patent Action. ZapatA initiated the Patent Action, litigated the matter at trial, and also filed a notice of cross-appeal. But for the automatic stay, ZapatA should have been well along in the process of filing an appellate brief in the Patent Action. Indeed, ZapatA has aggressively pursued the resolution of the Patent Action and it would be disingenuous for ZapatA to now argue that it would be impaired by the continuation of the Patent Action – litigation originally initiated by ZapatA itself.

### Debtors Will Succeed on the Merits

23. "[T]he third prong [of the 'cause' analysis] examines Movant's probability of success on the merits. The required showing is very slight." *Rexene*, 141 B.R. at 578.

24. The Debtors meet this showing. The District Court granted Grace-Conn's motion for judgment as a matter of law that the patents were infringed. Based on the evidence introduced at trial, Grace-Conn believes the jury's verdict was inconsistent and was the reflection of confusion as to the technicalities of ZapatA's "prior art" claims.

### Conclusion

25. The Debtors clearly demonstrate the requisite cause necessary to obtain a modification of the automatic stay with respect to the Patent Action. Since the Patent Action awaits appellate review, neither the Debtors nor ZapatA will incur any significant burden by completing the Patent Action, as both parties should be prepared to file appellate briefs and have already devoted significant resources toward the ultimate resolution of the Patent Action.

26. The Patent Action will not consume substantial assets of the Debtors since the trial and discovery are complete. Likewise, because of the advanced stage of the Patent Action, the Debtors' management will not have to devote significant attention to the Patent Action, and therefore, management's ability to administer these Chapter 11 Cases will not be jeopardized. Furthermore, the Patent Action provides the Debtors with the opportunity to add value to its bankruptcy estates for the benefit of the Debtors' creditors. For the foregoing reasons, the automatic stay should be modified to allow the Debtors to proceed with the Patent Action.

**WHEREFORE**, for the foregoing reasons, the Debtors respectfully request that this Motion be granted.

Wilmington, Delaware
Dated: August 30, 2001

Respectfully submitted,

KIRKLAND & ELLIS
James H.M. Sprayregen
James W. Kapp III
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

/s/ Laura Davis Jones

PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.
Laura Davis Jones
David W. Carickhoff, Jr.
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession