# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., et al.,[1] | Case No. 01-01139 JJF |
| Debtors. | Jointly Administered<br>**Objections due: September 14 , 2001 at 4:00 p.m.**<br>**Hearing: September 20, 2001 at 10:00 a.m.** |

## HONEYWELL INTERNATIONAL INC.'S MOTION FOR THE ENTRY OF AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)

Honeywell International, Inc. ("Honeywell"), by its undersigned counsel, hereby moves the Court for the entry of an Order granting Honeywell relief from the automatic stay

---

[1] The Debtors are the following entities: W.R. Grace & Co. (f/k/a Grace Specialty Chemicals Inc.), W.R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), ECARG, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, LB Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc. E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

pursuant to 11 U.S.C. § 362(d)(1) retroactive to April 2, 2001. In support of the Motion, Honeywell respectfully represents as follows:

## BACKGROUND

1.      On April 2, 2001 (the "Petition Date"), W.R. Grace & Co. ("W.R. Grace") and the above captioned affiliated debtors and debtors-in-possession (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.

2.      Pursuant to an Order of this Court entered on the Petition Date, the Debtors' bankruptcy cases are being jointly administered.

3.      Since the Petition Date, the Debtors have continued in the possession of their respective properties and the management of their respective businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

4.      No trustee or examiner has been appointed in these cases. On April 12, 2001, the Office of the United States Trustee appointed the Official Committee of Asbestos Bodily Injury Claimants (the "B.I. Committee"), the Official Committee of Asbestos Property Damage Claimants (the "P.D. Committee"), and the Official Committee of Unsecured Creditors (the "Unsecured Creditors' Committee").

5.      Honeywell is co-defendant with and cross-claimant against Debtors, W.R. Grace and ECARG, Ltd. ("ECARG"), and W.R. Grace, Ltd. ("Grace-England"), a nondebtor entity affiliated with W.R. Grace, in two related court proceedings pending in the United States District Court for the District of New Jersey.[2] These actions are entitled, Interfaith Community Org. v. Honeywell Int'l Inc., Case No. 95-2097 (DMC) (the "ICO" matter), and Hackensack

---

2    The actions at issue here were originally filed against AlliedSignal, Inc. On or about December 1, 1999, AlliedSignal Inc. changed its name to Honeywell International, Inc.

Riverkeeper, Inc. v. Honeywell Int'l Inc., Case No. 00-1451 (JAG) (the "Riverkeeper" matter). The ICO matter is currently pending before the Honorable Dennis M. Cavanaugh, U.S.D.J., and the Riverkeeper matter is before the Honorable Joseph A. Greenaway, Jr., U.S.D.J.  A motion to consolidate these two cases is currently pending.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicate for the relief requested herein is 11 U.S.C. § 362.

## THE RELIEF REQUESTED

7.     Honeywell requests that this Court enter an order granting relief from the automatic stay provisions under 11 U.S.C. § 362(a) retroactive to the Petition Date to permit the United States District Court for the District of New Jersey to adjudicate Honeywell's claims against the debtors, W.R. Grace & Co. and ECARG, Ltd., in the ICO and Riverkeeper actions. In particular, Honeywell requests that the Court grant it relief from the automatic stay for the purpose of continuing discovery and allowing Honeywell to proceed to establish the amount of its claims against the Debtors through the course of litigation.  The Debtors have continued to litigate their claims in the ICO and Riverkeeper matters post-petition.

8.     Honeywell agrees not to attempt to enforce any judgment obtained in the ICO or Riverkeeper actions by levying against the assets of the Debtors' bankruptcy estate during the course the Debtors' bankruptcy.  Payment of any judgment entered in favor of Honeywell would await the Bankruptcy Court's ruling on payment of claims.

## FACTUAL BACKGROUND

9.     The <u>ICO</u> and <u>Riverkeeper</u> actions both relate to environmental conditions at real property located west of Route 440 in Jersey City, New Jersey ("the Site"). Mutual Chemical Company of America ("Mutual") operated a facility adjoining the Site prior to 1954 and generated wastes containing chromium. Prior to 1954, Mutual transported wastes containing chromium to the Site. For liabilities of Mutual relating to environmental conditions at the Site, Honeywell is the corporate successor to Mutual.

10.     Debtors W.R. Grace and ECARG and non-debtor Grace-England (collectively, "the Grace Defendants"), and/or their predecessors-in-interest have leased, owned, and/or operated the Site since 1965 and first became involved in litigation involving environmental contamination at the Site in 1973. The Grace Defendants, through a former affiliate, purchased the Site in 1981.

11.     Honeywell is involved in addressing chrome ore processing residue ("COPR") at the Site. On or about June 17, 1993, Honeywell entered into an Administrative Consent Order ("ACO") with the New Jersey Department of Environmental Protection ("NJDEP") obligating it to investigate and remediate the Site, among other properties. Honeywell has committed $10 million to conduct remedial investigation feasibility studies ("RI/FS's") for properties addressed in the ACO with the NJDEP, including the Site at issue in the <u>ICO</u> and <u>Riverkeeper</u> cases. See <u>Interfaith Community Org. v. AlliedSignal, Inc.</u>, 928 F. Supp. 1339, 1344 (D.N.J. 1996). Honeywell has also committed $50 million (plus any monies remaining from the $10 million RI/FS fund) to remediate the properties addressed in the ACO and has agreed to implement the remedies in full, unless Honeywell disagrees with the appropriateness of the remedies selected, in which event Honeywell must still fund the remedies to the full amount of the remediation fund.

## STATUS OF THE <u>ICO</u> MATTER

12.     On or about May 3, 1995, an entity known as Interfaith Community Organization as well as five individuals brought a citizen's suit, the <u>ICO</u> matter, against several companies allegedly connected to the Site.  Plaintiffs filed an Amended Complaint against the Grace Defendants, Honeywell, and other third parties (the "Roned Defendants")[3] on August 2, 1995.  A copy of the <u>ICO</u> Complaint is attached to the Certification of Michael J. Caffrey, Esq. submitted herewith (the "Caffrey Cert.") as Exhibit "A".  It contained three claims: Count One, under § 7002(a) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), alleging that COPR at the Site may present an imminent and substantial endangerment to health or the environment requiring a statutory injunction.  Counts Two and Three seek further relief for violations under RCRA and the Clean Water Act.

13.     By Order dated December 7, 1995, the District Court dismissed Counts II and III of Plaintiffs' Complaint alleging permit violations under RCRA and the Clean Water Act leaving Plaintiff's § 7002(a) claim as the lone remaining claim.  <u>See</u> <u>Interfaith Community Org. v. AlliedSignal, Inc.</u>, 928 F. Supp. 1339, 1344 (D.N.J. 1996).  Plaintiffs' § 7002(a) claim seeks injunctive relief requiring the Grace Defendants, the Roned Defendants and Honeywell to perform the acts necessary to address the alleged imminent and substantial endangerment to health or the environment.  <u>Id.</u>

14.     On May 10, 1996, the Grace Defendants filed crossclaims against Honeywell seeking common law indemnification and contribution from Honeywell.  A copy of the Grace Defendants' Answer and Crossclaims in the <u>ICO</u> matter is attached to the Caffrey Cert. as Exhibit "B".  On January 2, 1997, the Grace Defendants filed Amended Crossclaims against Honeywell pursuant to §§ 107 and 113 of CERCLA, 42 U.S.C. §§ 9607, 9613 and various state

---

3   Non-debtors Roned Realty of Jersey City, Inc. or Roned Realty of Union City, Inc. are the owners and operators of a portion of the Site designated as lot 14D in Tax Block 1290A, Jersey City, New Jersey and are unrelated to the Grace Defendants.

statutory, common law and contractual claims. A copy of the Grace Defendants' Amended Crossclaims in the ICO matter is attached to the Caffrey Cert. as Exhibit "C".

15.     On January 29, 1997, the District Court stayed all discovery in the ICO action so that steps could be taken to investigate and remediate the Site pursuant to the ACO between Honeywell and the NJDEP. A copy of the Order Staying Discovery in the ICO matter is attached to the Caffrey Cert. as Exhibit "D". On August 19, 1999, the Grace Defendants moved to terminate the stay of discovery on the Grace Defendants' Crossclaims against Honeywell claiming that the claims could not be resolved without litigation. See Brief in Support of W.R. Grace's Motion to Lift Stay on Discovery dated August 19, 1999, pp. 1-2 (attached to the Caffrey Cert. as Exhibit "E"). On May 25, 2000, the Motion to Lift the Stay was denied as moot because a Scheduling Order was entered on that date permitting the ICO matter to go forward. A copy of the Order Denying Motion to Lift Stay on Discovery in the ICO matter is attached to the Caffrey Cert. as Exhibit "F". A copy of the Amended Scheduling Order in the ICO matter is attached to the Caffrey Cert. as Exhibit "G".

16.     On November 9, 1999, the Grace Defendants filed their Second Amended Crossclaims against Honeywell which added a claim pursuant to § 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B). A copy of the Grace Defendants' Second Amended Crossclaims in the ICO matter is attached to the Caffrey Cert. as Exhibit "H". The Grace Defendants' Third-Amended Crossclaims, which were filed on October 4, 2000, are currently pending against Honeywell. A copy of the Grace Defendants' Third Amended Crossclaims in the ICO matter is attached to the Caffrey Cert. as Exhibit "I". The Grace Defendants have continued to move forward with the prosecution of these crossclaims post-petition.

17.     On November 13, 2000, Honeywell filed and served its Answer and Affirmative Defenses to the Grace Defendants' Third Amended Crossclaims and asserted various crossclaims against the Grace Defendants. A copy of the Honeywell's Answer to the

Grace Defendants' Third Amended Crossclaims and Crossclaims in the ICO matter is attached to the Caffrey Cert. as Exhibit "J". On January 24, 2001, Honeywell filed Amended Crossclaims against the Grace Defendants and the Roned Defendants seeking declaratory relief and recovery of all costs and damages that Honeywell has incurred and will incur as a result of the defendants and their predecessors-in-interest handling, or arranging for the storage, transportation, treatment and/or disposal of wastes or hazardous substances containing chromium at or near the Site, as well as ownership and/or operation of the Site. A copy of the Honeywell's Amended Crossclaims in the ICO matter is attached to the Caffrey Cert. as Exhibit "K". The Grace Defendants filed their Answer to Honeywell's Amended Crossclaims on February 13, 2001. A copy of the Grace Defendants' Answer to Honeywell's Amended Crossclaims in the ICO matter is attached to the Caffrey Cert. as Exhibit "L".

18.    On July 16, 2001, the District Court granted Honeywell leave to amend its crossclaims against the Grace Defendants and the Roned Defendants to add a cause of action under RCRA § 7002(a), 42 U.S.C. § 6972(a). A copy of the Order Granting Honeywell Leave to Amend its Crossclaims in the ICO matter is attached to the Caffrey Cert. as Exhibit "M". As part of its Order, the District Court provided that no extensions of discovery or delays would be permitted in accordance with amendments to Honeywell's crossclaims. Id. On July 17, 2001, Honeywell filed its Second Amended Crossclaims against the Grace Defendants and the Roned Defendants adding the claim for recovery pursuant to RCRA § 7002(a). A copy of Honeywell's Second Amended Crossclaims in the ICO matter is attached to the Caffrey Cert. as Exhibit "N". The Grace Defendants filed their Answer to Honeywell's Second Amended Crossclaims on August 21, 2001. A copy of the Grace Defendants' Answer to Honeywell's Second Amended Crossclaims in the ICO matter is attached to the Caffrey Cert. as Exhibit "O".

19.    On April 2, 2001, W.R. Grace and ECARG filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Despite these filings, the Grace Defendants have continued to pursue their claims in the ICO matter. See Correspondence between the

Parties subsequent to April 2, 2001 (attached to the Caffrey Cert. as Exhibit "P"). In order to facilitate these actions, the Debtors filed an Application for Entry of an Order Authorizing the Retention and Employment of Wallace King Marraro & Branson PLLC ("WKMB") as Special Litigation and Environmental Counsel for the Debtors ("WKMB Retention Application") on June 4, 2001. According to the WKMB Retention Application, the ICO matter is one of the matters within WKMB's scope of proposed retention. See WKMB Retention Application, p. 4. Counsel for the Debtors certified that "[t]he Debtors allege that Honeywell is liable for the removal of chrome waste from the property and for over $ 25 million dollars in damages to Grace. WKMB expects to represent the Debtor post petition in this action and vigorously pursue the crossclaims to judgment." Certification of Christopher H. Marraro, Esq. in Support of the WKMB Retention Application, dated May 1, 2001, ¶ 5. Additionally, on August 24, 2001, W.R. Grace and ECARG filed a Motion for an Order Modifying the Automatic Stay in the ICO matter, returnable on September 20, 2001. The Debtors' Motion seeks to modify the stay "so that the Defendant Debtors may continue their cross-claims in the [ICO] matter." See Motion of Debtors for an Order Modifying the Automatic Stay, dated August 24, 2001, at ¶ 12.

20.    In accordance with these intentions, the Grace Defendants have participated in discovery in accordance with a scheduling order entered by the Honorable Dennis M. Cavanaugh on February 9, 2001. A copy of the Scheduling Order in the ICO matter is attached to the Caffrey Cert. as Exhibit "Q". To date, there has been an overwhelming amount of discovery produced including the production of more than 500,000 documents by various parties. See Caffrey Cert. at ¶ 30.

21.    Pursuant to the Scheduling Order, the period for factual discovery has closed and the parties have exchanged expert reports. Both sides have completed expert depositions in accordance with Judge Cavanaugh's amended scheduling order. A copy of the Amended Scheduling Order in the ICO matter, dated June 1, 2001, is attached to the Caffrey Cert. as Exhibit "R". The Grace Defendants have produced 12 experts on issues related to the

ICO matter and other parties have produced 13 additional experts. See Caffrey Cert. at ¶ 30. The parties have filed and responded to summary judgment motions. See W.R. Grace and Grace-England's Brief in Support of their Motion for Summary Judgment on All Claims Submitted by Honeywell, dated June 13, 2001 (attached to the Caffrey Cert. as Exhibit "S"). See Honeywell's Brief in Opposition to W.R. Grace and Grace-England's Motion for Summary Judgment on All Claims Submitted by Honeywell, dated July 10, 2001 (attached to the Caffrey Cert. as Exhibit "T").

22.     Honeywell has continued to pursue its claims with the assurances from the Debtors that it would consensually agree to grant stay relief to Honeywell. During a April 20, 2001 status conference on the ICO matter, counsel for the Grace Defendants represented that W.R. Grace and ECARG would be moving in the bankruptcy proceeding for relief from the automatic stay provision, 11 U.S.C. § 362, for claims asserted against the Grace Defendants in the ICO matter. See Caffrey Cert. at ¶ 32. Counsel for the Grace Defendants reiterated this position in correspondence dated June 14, 2001, indicating that the Grace Defendants would be filing a motion to lift the stay returnable August 2, 2001. See Christopher H. Marraro, Esq. Correspondence to David W. Field, Esq. (attached to the Caffrey Cert. as Exhibit "U"). The Grace Defendants informed Honeywell that they will be filing a motion returnable on September 20, 2001. See Christopher H. Marraro, Esq. Correspondence to David W. Field, Esq., dated July 11, 2001 (attached to the Caffrey Cert. as Exhibit "V"). However, the Motion eventually filed by the Debtors only applies to the Debtors' crossclaims in the ICO matter. Accordingly, Honeywell seeks relief from the automatic stay to permit it to liquidate its claims in the ICO matter.

## STATUS OF THE RIVERKEEPER MATTER

23.     On March 24, 2000, in partial response to Honeywell's Motion to Dismiss Count One of the Amended Complaint in the ICO matter due to the ICO Plaintiffs' lack of

standing,[4] Plaintiffs' counsel filed the Riverkeeper matter. A copy of the Complaint in the Riverkeeper matter is attached to the Caffrey Cert. as Exhibit "W". The three claims set forth in the Riverkeeper Complaint are identical to those asserted in the ICO Complaint and deal with environmental concerns at the Site. While the Riverkeeper matter was filed by a different set of plaintiffs, those Plaintiffs are represented by the same attorneys who filed the ICO matter.

24.   In lieu of filing an Answer to the Riverkeeper Complaint, Honeywell moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(7). See Brief in Support of Honeywell's Motion to Dismiss, dated May 16, 2000 (attached to the Caffrey Cert. as Exhibit "X"). The basis for Honeywell's motion was that the court had already dismissed the claims set forth in Counts II and III of the Riverkeeper Complaint in the ICO matter and that there was no reason why the legal standard that required dismissal of the claims in ICO should not require dismissal of the same claims in Riverkeeper. Additionally, Honeywell moved for dismissal because the Riverkeeper Plaintiffs failed to name the current property owner, ECARG, as a defendant when complete relief could not be accorded without ECARG's presence in the case.

25.   On March 28, 2001, District Judge Greenaway dismissed Counts II and III of the Riverkeeper Complaint and ordered that the Plaintiffs be allowed until June 1, 2001 to add ECARG as a defendant. A copy of the Order Dismissing Counts II and III of the Riverkeeper Complaint is attached to the Caffrey Cert. as Exhibit "Y". Subsequently, on May 31, 2001, the Plaintiffs filed an Amended Complaint in the Riverkeeper matter that named the Grace Defendants, Honeywell, and the Roned Defendants as defendants. A copy of the Amended Complaint in the Riverkeeper matter is attached to the Caffrey Cert. as Exhibit "Z". In their Amended Complaint, the Plaintiffs stated that they gave notice to W.R. Grace and ECARG of their claims under § 7002(a) of RCRA on February 28, 2001. See Exhibit Z, ¶ 18. The Plaintiffs

---

4   As of July 30, 2001, this motion is still pending as is the Plaintiffs' cross-motion for summary judgment on this claim.

also stated their intention to file proofs of claims against W.R. Grace and ECARG with the bankruptcy court for their claims in the Riverkeeper action. See Exhibit Z, ¶ 18.

26.    On June 15, 2001, Honeywell filed crossclaims against the Grace Defendants and the Roned Defendants in the Riverkeeper matter seeking recovery from the Grace Defendants and the Roned Defendants on the same grounds as in the ICO matter. A copy of Honeywell's Answer and Crossclaims in the Riverkeeper matter is attached to the Caffrey Cert. as Exhibit "AA".

27.    Due to various motions to dismiss, discovery in the Riverkeeper matter is in the early stages. A telephone status conference on the Riverkeeper matter is scheduled for September 13, 2001. See Caffrey Cert. at ¶ 31.

## RELATIONSHIP BETWEEN THE ICO AND THE RIVERKEEPER MATTERS

28.    As stated previously the ICO and Riverkeeper matters are intrinsically related. The facts in both lawsuits are based on the allegation that chromium contamination at the Site may present an imminent and substantial endangerment to human health and the environment. Riverkeeper is "[a]n almost identical action, alleging the same violations with the same defendants, with an almost identical complaint (except for the description of the plaintiff), involving identical issues of fact and law, and seeking the same relief..." See Memorandum in Support of ICO Plaintiffs' Motion to Consolidate, dated April 25, 2000, pp. 1-2 (attached to the Caffrey Cert. as Exhibit "BB"). As a result, the motions, briefing, and legal and factual disputes in the two cases are likely to be identical or at least extremely similar. Id.

29.    As discussed earlier, the crossclaims filed by Honeywell in the Riverkeeper matter are identical to those filed in the ICO matter.[5] Additionally, the Plaintiffs, Honeywell, the Grace Defendants and the Roned Defendants are all represented by the same law

---

[5]    Honeywell has asserted a RCRA claim in the ICO matter only.

firms in both matters. Over the past six years of litigation, the ICO court has entertained various motions, including discovery motions, hearings and conferences relating to the legal disputes in the ICO case that directly correspond to issues in Riverkeeper. The Riverkeeper Court recognized the close similarity of these actions when it dismissed Counts II and III of the Riverkeeper Complaint based on the prior determination by the ICO court. See Exhibit Y.

30.    On April 25, 2000, Plaintiffs in the ICO matter filed a Motion to Consolidate ICO and the Riverkeeper matters pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. See Exhibit BB. The motion to consolidate is still pending before the United States District Court for the District of New Jersey.

## ARGUMENT

31.    Honeywell is entitled to stay relief to liquidate its claims against the Debtors in the ICO and Riverkeeper matters. Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as a stay against "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case." The automatic stay is one of the most fundamental protections granted the debtor under the Bankruptcy Code. Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.), 141 B.R. 574, 576 (Bankr. D. Del. 1992).

32.    However, the stay is not meant to be indefinite or absolute, and in appropriate instances, relief may be granted. Wedgewood Inv. Fund, Ltd. v. Wedgewood Realty Group, Ltd. (In re Wedgewood Realty Group, Ltd.), 878 F.2d 693, 697 (3d Cir. 1989); Rexene, 141 B.R. at 576. The Bankruptcy Code provides that the bankruptcy court shall grant relief from the automatic stay "for cause." Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3d Cir.

1997); Save Power Ltd. v. Pursuit Athletic Footwear, Inc. (In re Pursuit Athletic Footwear, Inc.),

193 B.R. 713, 718 (Bankr. D. Del. 1996).  Section 362(d) of the Bankruptcy Code provides that:

> On request of a party in interest and after notice and a hearing, the
> court shall grant relief from the stay provided under subsection (a)
> of this section, such as by terminating, annulling, modifying, or
> conditioning such stay -
> (1) for cause, including the lack of adequate protection of an
> interest in property of such party in interest; ...

Section 362(d) is intended to balance the interests of the creditors and the debtor.  Nantucket

Investors II v. California Fed. Bank (In re Indian Palms Assocs., Ltd.), 61 F.3d 197, 206 (3d Cir.

1995).

     33.    There is no rigid test for determining whether sufficient cause exists to

modify an automatic stay.  American Airlines, Inc. v. Continental Airlines, Inc. (In re

Continental Airlines, Inc.), 152 B.R. 420, 424 (D. Del. 1993).  Section 362(d)(1) does not define

"cause," leaving courts to consider what constitutes "cause" based on the totality of the

circumstances on a case-by-case basis.  Wilson, 116 F.3d at 90; Trident Assocs. v. Metropolitan

Life Ins. Co. (In re Trident Assocs.), 52 F.3d 127 (6th Cir.), cert. denied 516 U.S. 869, 116 S. Ct.

188, 133 L. Ed. 2d 125 (1995); Int'l Bus. Machines v. Fernstrom Storage & Van Co. (In re

Fernstrom Storage & Van Co.), 938 F.2d 731, 735 (7th Cir. 1991) (citing In re Tuscon Estates,

Inc., 912 F.2d 1162, 1166 (9th Cir.1990)); Rexene, 141 B.R. at 576.

     34.    The existence of a more appropriate forum than the bankruptcy court for

litigation against a debtor can constitute "cause" for relief under Code § 362(d)(1).  Mother

African Union Methodist Church v. Conference of AUFCMP Church (In re Conference of

African Union First Colored Methodist Protestant Church), 184 B.R. 207, 218 (Bankr. D. Del.

1995).  See also In re Hohol, 141 B.R. 293 (M.D. Pa. 1992); In re Drexel Burnham Lambert

Group, Inc., 113 B.R. 830 (Bankr. S.D.N.Y. 1990); In re Makarewicz, 121 B.R. 262, 265 (Bankr.

S.D. Fla. 1990); Collier on Bankruptcy, § 362.07[3][a] (15th ed.) ("Use of the word 'cause'

suggests an intention that the bases for relief from the stay should be broader than merely lack of

adequate protection. ... Relief may also be granted when necessary to permit litigation to be concluded in another forum, particularly if the nonbankruptcy suit involves multiple parties or is ready for trial").

35.    The legislative history to section 362(d)(1) emphasizes the section's applicability to proceedings in another tribunal. "[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." S.Rep. No. 95-989 at 50 (1978), reprinted in 1978 U.S.C.C.A.N 5787, 5836; see H.R.Rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977) reprinted in 1978 U.S.C.C.A.N 5787, 6300 ("[A] desire to permit an action to proceed to completion in another tribunal may provide ... cause"); Wilson, 116 F.3d at 90; Rexene, 141 B.R. at 576; Drexel Burnham, 113 B.R. at 838 n.8.

36.    This theme is echoed in the equitable balancing test that the courts apply to determine if cause exists to lift the stay to allow pending litigation to proceed or continue in another forum. Rexene, 141 B.R. at 576. See, e.g., Fernstrom, 938 F.2d at 735; Peterson v. Cundy (In re Peterson), 116 B.R. 247, 249 (D. Colo. 1990). In balancing the competing interests of the debtor and the movant, courts consider three factors:

> (1)  Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;
> (2)  Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor;  and
> (3)  The probability of the creditor prevailing on the merits.

Pursuit, 193 B.R. at 718.  See also Fernstrom, 938 F.2d at 734-37; Continental Airlines, 152 B.R. at 424; Rexene, 141 B.R. at 576

37.    A court may also properly consider the factor of judicial economy in determining whether to grant relief from the automatic stay. "[O]ne of the primary purposes in

granting relief from the stay to permit claim liquidation is to economize judicial resources." Rexene, 141 B.R. at 577. See also Peterson, 116 B.R. at 250. Judicial economy dictates a prompt resolution in a single forum and with the same judge who was originally assigned to the case. Rexene, 141 B.R. at 577 ("'[T]his Court is of the opinion that to begin this litigation anew in this bankruptcy court would result in more of a hardship to the Movant and would certainly result in a waste of judicial resources.'" (quoting Murray Indus., Inc. v. Aristech Chem. Corp. (In re Murray Indus., Inc.), 121 B.R. 635, 637 (Bankr. M.D. Fla. 1990)).

38.     Generally, in the determination of "cause," § 362(g) is interpreted as placing an initial burden on the moving party to establish its *prima facie* case which must then be rebutted by the party opposing such relief. Pursuit, 193 B.R. at 718; Rexene, 141 B.R. at 577. Once the *prima facie* showing is made, the burden of proof shifts to the debtor on all other issues except the issue of "the debtor's equity in the property." Continental Airlines, 152 B.R. at 424.

39.     Relief from the automatic stay should be granted to Honeywell to proceed with the ICO and Riverkeeper matters so that environmental issues relating to the Site can be resolved. Because of the complexity of the litigation involved in the ICO and Riverkeeper matters and the enormous amount resources already expended in prosecuting and defending the claims at issue, Honeywell respectfully submits that cause exists to permit the matters to go forward in the United States District Court for the State of New Jersey. Further, the Debtors have continued to prosecute their claims against Honeywell in these matters.

40.     As debtors, W.R. Grace and ECARG have the authority to proceed with the prosecution of their counterclaims. Section 362 does not stay litigation brought by debtors that are under the protection of the bankruptcy courts. Rhone-Poulenc Surfactants & Specialties, L.P. v. Comm'r, 249 F.3d 175, 180 (3d Cir. 2001). "The statute does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate." Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991) (quoting Ass'n of St. Croix

Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3d Cir. 1982)). In situations involving multiple claims and parties, such as the ICO and Riverkeeper matters, all proceedings in a single case are not lumped together for purposes of automatic stay analysis and must be disaggregated so that particular claims, counterclaims, crossclaims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay. Maritime Elec., 959 F.2d at 1204-05.

41.    W.R. Grace and ECARG have chosen to exercise this authority and are obviously not concerned with the prospect of simultaneously pursuing their claims against Honeywell while proceeding with their reorganization. See Exhibits N, U & V; Certification of Christopher H. Marraro, Esq. in Support of the WKMB Retention Application, dated May 1, 2001, ¶ 5 ("WKMB expects to represent the Debtor post petition in this action and vigorously pursue the crossclaims to judgment"). Clearly, W.R. Grace and ECARG will not be prejudiced by the continuation of the claims against them in the ICO and Riverkeeper matters. See Continental Airlines, 152 B.R. at 424; Pursuit, 193 B.R. at 718-19. Counsel to W.R. Grace and ECARG tacitly consented to this position by providing assurances to Honeywell that W.R. Grace and ECARG would seek relief from the stay for the ICO matter. See Exhibits U & V. Thus, stay relief is appropriate. Furthermore, due to their representations and Honeywell's reliance thereon, W.R. Grace and ECARG are judicially and equitably estopped from opposing relief from the automatic stay. See Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3d Cir.), cert. denied, 488 U.S. 967, 109 S.Ct. 495, 102 L.E.2d 532 (1988).

42.    In Pursuit, the debtor, pre-petition, filed a complaint seeking contractual and tort damages and declaratory relief and the defendants filed counterclaims. Pursuit, 193 B.R. at 718. After the parties had engaged in substantial discovery, the debtor filed its bankruptcy petition and filed an adversary proceeding with allegations that are substantially identical to those alleged in the state court complaint on the first day of the case. Id. at 718-19. The state court defendants moved for relief from the stay to permit the state court action to go forward. Id.

Based on the filing of the adversary proceeding, the court determined that because the debtor was not concerned with the spectre of simultaneously pursuing its claims against the defendants while proceeding with its reorganization, the evidence was sufficient to conclude that no prejudice will result from the continuation of the state court action. Id. Similarly, W.R. Grace and ECARG's continuation of the ICO matter and retention of special litigation counsel shows that they are not daunted by the simultaneous pursuit of reorganization and claims against Honeywell.

43.    In fact, W.R. Grace and ECARG have previously argued that the ICO matter should go forward because W.R. Grace and ECARG were incurring significant costs, both in out-of-pocket expenses and lost opportunity, due to the failure to remediate the property. See Exhibit E at 4.

44.    Additionally, W.R. Grace and ECARG will not suffer prejudice if Riverkeeper matter is permitted to go forward because that matter is almost identical to ICO. The complaints and counterclaims in both matters allege the same violations involving identical issues of fact and law and seek the same relief. While there may be an increase in W.R. Grace and ECARG's litigation expenses due to the Riverkeeper matter, a limited increase in litigation expenses does not, by itself, justify denying relief from the automatic stay. See Continental Airlines, 152 B.R. at 425; Peterson, 116 B.R. at 250 (citing Davis v. Sheldon (In re Davis), 691 F.2d 176, 178 (3d Cir. 1982)); accord In re Todd Shipyards Corp., 92 B.R. 600, 603 (Bankr. D.N.J. 1988). The Debtors have retained special litigation counsel post-petition to handle the claim in the Riverkeeper matter. Furthermore, the District Court recognized the close relationship between the cases when the Court determined that the dismissal of claims in ICO mandated dismissal of the same claims in Riverkeeper. See Exhibit Y.

45.    As to the second factor of the test used to determine if cause exists to lift the stay, the balancing of the significant hardship that Honeywell will suffer in losing the benefit

of the time and resources it has invested in the <u>ICO</u> and <u>Riverkeeper</u> matters clearly outweighs the minor hardship that W.R. Grace and ECARG will face in terms of minimally increased litigation expenses. Honeywell has had to defend itself against the crossclaims of W.R. Grace and ECARG since 1996 and will continue to do so. The <u>ICO</u> matter is mature litigation and is before a court that is well-versed in its factual and legal underpinnings. To require Honeywell to begin anew in the Bankruptcy Court will place an enormous financial burden on it and will likely delay the conclusion of the litigation. Additionally, if relief from the stay is not granted, it will be more difficult for Honeywell to establish the amount of any offsets it has against W.R. Grace and ECARG for the expenses incurred in remediating the Site.

46.    Rather than have the claims of W.R. Grace and ECARG and Honeywell proceed in separate courts, a more equitable and expeditious course of action would be for them to be liquidated in the District Court. This would serve not only to protect the investment of Honeywell in the litigation but also protect against the needless waste of the Debtors' estate. It is clear that the Debtors have invested significant resources and legal fees in prosecuting the <u>ICO</u> matter to date. Common sense and fairness suggests that those investments would be best protected by allowing the <u>ICO</u> and <u>Riverkeeper</u> actions to proceed. <u>See</u> <u>Pursuit</u>, 193 B.R. at 719. To begin this litigation anew in this bankruptcy court would result in more of a hardship to Honeywell and would certainly result in a waste of judicial resources. <u>See</u> <u>Rexene</u>, 141 B.R. at 577. The importance of preserving the Court's resources is especially compelling in this matter when one takes the size and complexity of the Grace bankruptcy cases into account. In denying W.R. Grace's motion to transfer venue of another matter to this Court, the Bankruptcy Court for the Central District of California cautioned that:

> In light of the size and complexity of the Grace bankruptcy cases, the transfer of the Action to Delaware is unlikely to have any material impact on the administration of the Grace bankruptcy cases. To the extent that a transfer would have any impact whatsoever on the administration of these bankruptcy cases, it

could only be to further strain the limited resources of the
Delaware District Court handling these bankruptcy cases.

TIG Ins. Co. v. Smolker, No. LA 01--99911 XX, 2001 WL 800017, at *5 (Bankr. C.D. Cal. July
13, 2001).

47.    To liquidate all claims involving the Site in a single forum and with the
same judges who have been handling the cases will promote judicial efficiency. Rexene, 141
B.R. at 577. See also Continental Airlines, 152 B.R. at 425. In the ICO matter, the parties have
provided expert reports from no less than 25 experts and have exchanged over a half million
pages of discovery. See Caffrey Cert. at ¶ 30. The trial of these matters, involving complex
provisions of the federal and state environmental statutes, in the District Court already familiar
with the underlying facts will allow the Bankruptcy Court to focus its resources on it many duties
to be handled elsewhere. This is the outcome envisioned by Congress in enacting Section
362(d). See, S.Rep. No. 95-989, supra, at 50.

48.    In analyzing the third prong of the test one must determine whether
Honeywell has a slight possibility of prevailing on the merits of its claims against W.R. Grace
and ECARG. Even a slight probability of success on the merits may be sufficient to support
lifting an automatic stay in an appropriate case. Continental Airlines, 152 B.R. at 426. Rexene,
141 B.R. at 578 (stating that the required showing is very slight); Peterson, 116 B.R. at 250
(foregoing merits analysis entirely in a relief from stay motion merely to liquidate claim). "Only
strong defenses to state court proceedings can prevent a bankruptcy court from granting relief
from the stay in cases where, as here, we believe that the decision-making process should be
relegated to bodies other than this court." Fonseca v. Philadelphia Housing Authority (In re
Fonseca), 110 B.R. 191, 196 (Bankr. E.D. Pa. 1990). See also Rexene, 141 B.R. at 578.

49.    When one analyzes Honeywell's claims against W.R. Grace and ECARG,
it is clear that Honeywell has significantly more than a slight possibility of prevailing on the

merits of its claims. Honeywell has asserted crossclaims against W.R. Grace and ECARG under RCRA § 7002(a), 42 U.S.C. § 6972(a), CERCLA § 113, 42 U.S.C § 9613, the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq., the New Jersey Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-3, CERCLA's declaratory judgment provision, 42 U.S.C. § 9623(g)(2), New Jersey's Uniform Declaratory Judgment Law, N.J.S.A. 2A:16-50 et seq., and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

50.     The basis for these claims is the fact that W.R. Grace is the alter ego of both Daylin, Inc. (a former subsidiary and Site owner/operator) and ECARG (current Site owner/operator).  In ICO, the Grace Defendants (collectively W.R. Grace, ECARG and Grace-England) repeatedly represented to the Court that they acquired title to the Site in 1981, even though Daylin acquired title in 1981, confirming that W.R. Grace is alter ego of and successor-in-interest to Daylin.  The Grace Defendants also represented to the Court in ICO, through its pleadings, responses to discovery and in briefs in opposition to motions filed by Honeywell that there is no distinction between W.R. Grace and ECARG.  W.R. Grace has controlled all aspects relating to the Site since the Site was acquired under Daylin's name in 1981.  For example, W.R. Grace has paid all Site-costs, including taxes and other expenses.

51.     As the alter ego of the Site owners since 1981, W.R. Grace is a responsible party under CERCLA § 107(a).  W.R. Grace is also derivatively liable as the current owner of the Site, ECARG, is a mere shell whose only role is to hold title to the Site in W.R. Grace's attempt to avoid CERCLA § 107 liability for the Site.  During the relevant time period, 1986 to the present, W.R. Grace exercised total control over ECARG.  Honeywell has incurred significant response costs at the Site.  Accordingly, as a liable party under CERCLA § 107(a), W.R. Grace is liable in contribution to Honeywell under CERCLA § 113.  As the current title owner of the Site, ECARG is also a responsible party under CERCLA § 107(a) and liable to Honeywell under CERCLA § 113 for contribution.

52.    The Spill Act provides a private right of contribution for clean up costs against "persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance" N.J.S.A. 58:10-23.11f(a)(2).    Under the regulations which implement the Act, persons "in any way responsible" is defined to include, among others, "[a]ny person whose act ... results or has resulted in a discharge; each owner or operator ... of any facility, ... from which a discharge has occurred; any person who ... controls any hazardous substance which is discharged; [and] any person who has indirectly or directly caused a discharge ... or who has allowed a discharge to occur ...." N.J.A.C. 7:1E-1.6.    W.R. Grace is a person "in any way responsible" under the Spill Act because, as set forth above, it is the alter ego of Daylin and ECARG, owners of the Site from which a discharge has occurred. N.J.A.C. 7:1E-1.6.    Likewise, ECARG is a person "in any way responsible" under the Spill Act as owner of the Site.

53.    If the Court in ICO determines that the Site may present an imminent and substantial endangerment to health or the environment, then, as the current owners of the Site, both W.R. Grace and ECARG are liable under RCRA § 7002(a), ( 42 U.S.C. § 6972(a).  See United States v. Price, 523 F. Supp. 1055, 1071 (D.N.J. 1981) aff'd 68 F.2d 204 (3d Cir. 1982) (property owner who acquired the property after all dumping had ceased "may be responsible to stop the continued leaking of contaminants from the site").

54.    The Joint Tortfeasors Law (N.J.S.A. 2A:53A-3) allows a defendant to crossclaim against a codefendant for joint liability if both are found to be joint tortfeasors. Here, Honeywell has demonstrated that W.R. Grace and ECARG are tortfeasors under CERCLA § 113, RCRA § 7002 and the New Jersey Spill Act, and, therefore, are subject to New Jersey's contribution laws.

55.    Similarly, Honeywell's crossclaims under CERCLA's declaratory judgment provision (42 U.S.C. § 96123(g)(2)), New Jersey's Uniform Declaratory Judgment

Law (N.J.S.A. 2A:16-50 et seq.), and the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201, 2202) are well supported by the facts. The declaratory judgment laws should be given liberal interpretation. New Jersey Ass'n for Retarded Citizens v. Human Services, 89 N.J. 234, 241 (1982); Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp., 257 F.2d 485 (3d Cir. 1958). To sustain a declaratory judgment action, a party need only demonstrate an actual controversy or dispute between the parties has been raised by the pleadings, that both parties have a sufficient stake in the outcome of the proceedings, and that the claims are properly before the court. New Jersey Ass'n, 89 N.J. at 241; Bress v. L.F. Dommerich & Co., Inc., 94 N.J. Super. 282, 284 (App. Div. 1967) (stating that a concrete, contested issue is all that is necessary to sustain a declaratory judgment action). Honeywell has demonstrated a concrete, actual controversy between the parties and the claims are properly before this Court. Furthermore, Honeywell has overwhelmingly sustained its burden of proving its substantive CERCLA § 113, RCRA § 7002 and New Jersey Spill Act claims and therefore is entitled to declaratory judgment in its favor. Aralac v. Hat Corp., 166 F.2d 286 (3d Cir. 1948).

56.     Additionally, the slight showing necessary to support lifting an automatic stay is easily met when there has been a denial of defendants' motion for summary judgment in the underlying lawsuit. Rexene, 141 B.R. at 578. The only summary judgment motion attacking the validity of Honeywell's claims in the ICO matter is W.R. Grace and Grace-England's motion arguing that neither entity had any connection to the Site that would render them liable under Honeywell's crossclaims. See Exhibit S, p. 1. While this summary judgment motion is still pending before the District Court, an analysis of this motion shows that Honeywell has more than a slight possibility of prevailing on the merits of its claims. Additionally, ECARG's failure to move for summary judgment against any of Honeywell's claims arguably demonstrates a recognition by ECARG of a slight possibility of success by Honeywell.

57.     Also, the District Court in the ICO matter has granted Honeywell leave to amend its crossclaims to add a cause of action against RCRA § 7002(a). In granting such leave,

-22-

the court was required to find that the proposed amendment would not be "futile" because the proposed cause of action fails to state a claim on which relief can be granted. See Adams v. Gould, Inc., 739 F.2d 858, 864 (3d Cir. 1984). While not conclusive as to the ultimate success of Honeywell's crossclaims, the granting of leave to amend does establish that Honeywell has alleged facts sufficient to provide a basis for relief for its RCRA § 7002(a) crossclaim.

58.    After six years of litigation and an overwhelming amount of discovery, there is no reason to determine that there is less than a slight probability of success on the merits of Honeywell's claims. Honeywell respectfully submits that the Court should not remove the decision-making process on these claims at such a late stage in the litigation. For the reasons outlined above and in discussing the balance of the hardships, it must be concluded that Honeywell's probability of success is sufficient to support relief from the stay. See Continental Airlines, 152 B.R. at 426.

59.    Finally, the actions of W.R. Grace and ECARG justify a retroactive grant of relief from the stay. The inclusion of the word "annulling" in Bankruptcy Code Section 362(d) indicates a legislative intent to apply certain types of relief retroactively and validate proceedings that would otherwise be void ab initio. See Constitution Bank v. Tubbs, 68 F.3d 685, 692 n.6 (3d Cir. 1995); In re Siciliano, 13 F.3d 748, 750-51 (3d Cir. 1994). "A scenario which has been found particularly conclusive to stay annulment is when the debtor either encourages a creditor to proceed notwithstanding the stay or lies in wait for the outcome of an action by one of its creditors and only asserts its status as a bankruptcy debtor after an unsatisfactory outcome becomes known." In re Siciliano, 167 B.R. 999, 1008 (Bankr. E.D. Pa.) remanded from 13. F.3d 748 (3d Cir. 1994). In the ICO matter, the Grace Defendants have consistently encouraged Honeywell to proceed with the litigation of its claims with the promise of relief from the stay and Honeywell has continue to engage in discovery based on those representations. See Caffrey Cert. at ¶ 32. To void the actions of the District Court subsequent to the filing of W.R. Grace and ECARG's bankruptcy petition would force the repetition of those

legal proceedings and would waste the Court's resources and the Debtors' estate, as well as Honeywell's investment in the litigation. Retroactive relief from the stay will preserve the resources invested in the proceedings and will provide the most equitable means of resolving the ICO and Riverkeeper matters.

## CONCLUSION

60.     For the reasons set forth herein, Honeywell International Inc., respectfully requests that this Court enter an Order, substantially in the form submitted herewith, (i) granting relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) retroactive to the Petition Date; and (ii) granting such other and further relief that the Court deems just and equitable.

Respectfully submitted,

LOWENSTEIN SANDLER PC
Bruce Buechler, Esq.
65 Livingston Avenue
Roseland, NJ  07068
(973) 597-2500

-and-

WALSH, MONZACK & MONOCO, P.A.
Frederick Rosner (Bar No.3995)
1201 North Orange Street, Suite 400
P.O. Box 2031
Wilmington, DE  19899
(302) 656-8162

Dated:  August 31, 2001