# EXHIBIT A

BRUCE J. TERRIS  (BT 9359)
CAROLYN SMITH PRAVLIK (CSP 4481)
ERIC A. BILSKY  (EB 9363)
Terris, Pravlik & Wagner
1121 12th Street, N.W.
Washington, D.C.  20005-4632
(202) 682-2100

EDWARD LLOYD  (EL 2633)
15 Washington Street
Room 334
Newark, New Jersey
(201) 648-5695

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

INTERFAITH COMMUNITY ORGANIZATION          )
83 Wayne Street                            )
Jersey City, NJ 07302                      )
                                           )
LAWRENCE BAKER                             )
774 Grand Street                           )
Jersey City, New Jersey  07304             )
                                           )
MARTHA WEBB HERRING                        )
364 Randolph Avenue                        )
Jersey City, New Jersey  07304             )
                                           )
MARGARET WEBB                              )
8 Freedom Place                            )
Jersey City, New Jersey  07305             )
                                           )
REV. WINSTON CLARKE                        )
52 Cottonwood Street                       )
Jersey City, New Jersey  07305             )
                                           )
MARGARITA NAVAS                            )
45 Holly Street                            )
Jersey City, New Jersey  07305             )
                                           )
                        Plaintiffs,        )
                                           )
          v.                               )
                                           )
ALLIEDSIGNAL, INC.                         )
101 Columbia Road                          )
Morristown, New Jersey 07692               )

RONED REALTY OF JERSEY CITY, INC.                    )
RONED REALTY OF UNION CITY, INC.                     )
74 Route 17                                          )
Hasbrouck Heights, NJ  07604                         )
                                                     )
W.R. GRACE & CO.                                     )
One Town Center Road                                 )
Boca Raton, FL  33486                                )
                                                     )
ECARG, INC.                                          )
One Town Center Road                                 )
Boca Raton, FL  33486                                )
                                                     )
W.R. GRACE, LTD.                                     )
Northdale House                                      )
N. Circular Rd.                                      )
London NW10 4 UH                                     )
United Kingdom                                       )
                                                     )
_____)

## COMPLAINT

### INTRODUCTION

1.      This is a citizen's suit brought to clean up the Roosevelt Drive In site in Jersey

City, New Jersey, the dumping site of the hazardous waste, including hazardous chromium-

bearing waste, generated by the Chromate Plant on Route 440 and transported across the

street to the Roosevelt Drive In site.

2.      This citizen's suit is brought under Section 7002(a)(1)(A) of the Resource

Conservation and Recovery Act (hereafter "RCRA"), 42 U.S.C. 6972(a)(1), Section

7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(B), and Section 505 of the Federal Water

Pollution Control Act (hereafter "the Water Act"), 33 U.S.C. 1365, to remedy the storage

and/or disposal of hazardous waste, including hazardous chromium-bearing waste, by

defendants in violation of RCRA at a site known as the Roosevelt Drive In site in Jersey

City, New Jersey, and to remedy the discharge of pollutants to surface waters, namely the

2

Hackensack River, without permit authority, in violation of the Water Act.  To remedy defendants' violations, plaintiffs seek a declaratory judgment, injunctive relief, and civil penalties.  Plaintiffs also seek the award of costs, including attorneys' and expert witness's fees.

## DEFINITIONS

3.  "AlliedSignal" shall refer to defendant AlliedSignal, Inc. and its predecessors, including Mutual Chemical Company of America (hereafter "Mutual").

4.  "Chromate Plant" shall mean the chromate chemical production plant that was located on West Side Avenue and Route 440, in Jersey City, New Jersey, across Route 440 from the Roosevelt Drive In site.

5.  "Facility" shall refer to the Roosevelt Drive In site.

6.  "Grace Companies" shall refer jointly to defendant W.R. Grace & Company and its subsidiaries, defendant W.R. Grace, Ltd., and defendant Ecarg, Inc.

7.  "Roosevelt Drive In site" shall refer to the property designated as lots 14D, 14H, and 14J, Tax Block 1290A, Jersey City, Hudson County, New Jersey.  Lot 14D is owned by one of defendants, Roned Realty of Jersey City, Inc. or Roned Realty of Union City, Inc. and lots 14H and 14J are owned by defendant Ecarg, Inc.

8.  "Roned" shall refer jointly to defendant Roned Realty of Jersey City, Inc. and defendant Roned Realty of Union City, Inc.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction of claims brought under RCRA pursuant to Section 7002(a) of RCRA, 42 U.S.C. 6972(a).  This Court has subject matter jurisdiction of claims brought under the Water Act, pursuant to Section 505(a) of the Water Act, 33 U.S.C. 1365(a).

10.   On October 27, 1994, plaintiff Interfaith Community Organization (hereafter "ICO") gave notice to defendant AlliedSignal as follows:

a.   Pursuant to Section 7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(B), the hazardous waste, including chromium-bearing waste, stored and/or disposed of at the Roosevelt Drive In site constitutes an imminent and substantial endangerment to health and the environment in violation of Section 7002(a)(1)(B);

b.   Pursuant to Section 7002(b)(1) of RCRA, 42 U.S.C. 6972(b)(1), defendant AlliedSignal is storing and/or disposing of hazardous waste, including hazardous chromium-bearing waste, at the Roosevelt Drive In site without a permit in violation of Section 3005 of RCRA, 42 U.S.C. 6925; and

c.   Pursuant to Section 505(b) of the Water Act, 33 U.S.C. 1365(b), defendant AlliedSignal is discharging pollutants to the Hackensack River without a permit in violation of Sections 301(a) and 402 of the Water Act, 33 U.S.C. 1311(a), 1342.  A copy of this notice is attached as Appendix A.

11.   On December 9, 1994, plaintiff ICO gave notice to defendant Roned as follows:

a.   Pursuant to Section 7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(B), the hazardous waste, including chromium-bearing waste, stored and/or disposed of at the Roosevelt Drive In site constitutes an imminent and substantial endangerment to health and the environment in violation of Section 7002(a)(1)(B);

b.   Pursuant to Section 7002(b)(1) of RCRA, 42 U.S.C. 6972(b)(1), defendant Roned is storing and/or disposing of hazardous waste, including hazardous chromium-bearing waste, at the Roosevelt Drive In site without a permit in violation of Section 3005 of RCRA, 42 U.S.C. 6925; and

4

c. Pursuant to Section 505(b) of the Water Act, 33 U.S.C. 1365(b), defendant Roned is discharging pollutants to the Hackensack River without a permit in violation of Sections 301(a) and 402 of the Water Act, 33 U.S.C. 1311(a), 1342. A copy of this notice is attached as Appendix B.

12.    On December 15, 1994, plaintiff ICO gave notice to defendants the Grace Companies as follows:

a. Pursuant to Section 7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(B), the hazardous waste, including chromium-bearing waste, stored and/or disposed of at the Roosevelt Drive In site constitutes an imminent and substantial endangerment to health and the environment in violation of Section 7002(a)(1)(B);

b. Pursuant to Section 7002(b)(1) of RCRA, 42 U.S.C. 6972(b)(1), defendants the Grace Companies are storing and/or disposing of hazardous waste, including hazardous chromium-bearing waste, at the Roosevelt Drive In site without a permit in violation of Section 3005 of RCRA, 42 U.S.C. 6925; and

c. Pursuant to Section 505(b) of the Water Act, 33 U.S.C. 1365(b), defendants the Grace Companies are discharging pollutants to the Hackensack River without a permit in violation of Sections 301(a) and 402 of the Water Act, 33 U.S.C. 1311(a), 1342. A copy of this notice is attached as Appendix C.

13. More than 90 days have passed since notice was served that the storage and/or disposal of hazardous wastes at the Roosevelt Drive In site constitutes a substantial and imminent endangerment to health and the environment in violation of Section 7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(B), and, to the best of plaintiffs' knowledge, the United States Environmental Protection Agency (hereafter "EPA") has not commenced and is not diligently prosecuting any action under Section 7003 of RCRA, 42 U.S.C. 6973, or under

5

Section 106 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (hereafter "CERCLA"), 42 U.S.C. 9606; is not engaging in a removal action under Section 104 of CERCLA, 42 U.S.C. 9604; has not incurred costs to initiate a Remedial Investigation and Feasibility Study (hereafter "RI/FS") under Section 104 of CERCLA, 42 U.S.C. 9604, and is not diligently proceeding with a remedial action under CERCLA; and has not obtained a court order or issued an administrative order under Section 106 of CERCLA, 42 U.S.C. 9606, or under Section 7003 of RCRA, 42 U.S.C. 6973, pursuant to which a responsible party is diligently conducting a removal action, a RI/FS, or proceeding with a remedial action.

14.    More than 90 days have passed since notice was served that the storage and/or disposal of hazardous wastes at the Roosevelt Drive In site constitutes a substantial and imminent endangerment to health and the environment in violation of Section 7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(B), and, to the best of plaintiffs' knowledge, the State has not commenced and is not diligently prosecuting any action under Section 7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(B); is not actually engaging in a removal action under Section 104 of CERCLA, 42 U.S.C. 9604; has not incurred costs to initiate a RI/FS under Section 104 of CERCLA, 42 U.S.C. 9604, and is not diligently proceeding with a remedial action under CERCLA.

15.    More than 60 days have passed since notice was served that defendants are storing and/or disposing of hazardous waste at the Roosevelt Drive In site without a permit in violation of Section 3005 of RCRA, 42 U.S.C. 6925, and, to the best of plaintiffs' knowledge, neither EPA nor the State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with the permit requirements of RCRA.

16.    More than 60 days have passed since notice was served that defendants are discharging pollutants to the Hackensack River in violation of Section 301(a) and 402 of the Water Act, 33 U.S.C. 1311(a), 1342, and, to the best of plaintiffs' knowledge, neither EPA nor the State has commenced and is diligently prosecuting a civil or criminal judicial action to redress the violations.

17.    To the best of plaintiffs' knowledge, EPA has not commenced an administrative civil penalty action under Section 309(g)(6) of the Water Act, 33 U.S.C. 1319(g)(6), to penalize defendants for the unpermitted discharge of pollutants to the Hackensack River from the Roosevelt Drive In site.

18.    Venue is appropriate in the District of New Jersey, pursuant to Section 7002(a) of RCRA, 42 U.S.C. 6972(a), and Section 505(c)(1) of the Water Act, 33 U.S.C. 1365(c)(1), because the violations complained of occurred within this District.

## PARTIES

### Plaintiffs

19.    Plaintiff ICO sues on behalf of itself, its member churches, its individual member, and the members of its member churches.  ICO is a not-for-profit corporation organized under the laws of the State of New Jersey, with its principal place of business in Jersey City, New Jersey.  ICO's members are principally churches in Hudson County working collectively to engage church leaders in the public and political life of their communities and to improve the quality of life in Hudson County.  Nine religious denominations are represented in ICO's membership.  ICO is an affiliate of the Industrial Areas Foundation, a national network of church-based community organizations.  ICO is funded by dues from member churches and grants from the judicatories and other religious

bodies with which the churches are affiliated, as well as grants from private foundations. ICO was founded in 1987.

20.     ICO's interest in Hudson County's chromium problem arose from two sources. The first was the discovery in 1988 and 1989 that the property of several members of ICO's member churches was contaminated with chromium. Since that time, dozens of members of ICO member churches in various Jersey City neighborhoods have found that they are directly and adversely affected by chromium -- some have shown elevated chromium levels in their urine and some have chromium in and under their homes.

21.     The second source of ICO's interest in Hudson County's chromium problem was through its effort to create affordable housing. In 1989 and 1990, ICO engaged in an ultimately unsuccessful campaign to construct 600 units of single-family affordable homes in Jersey City. Despite ICO's success in raising a substantial pool of low-cost financing for construction, this effort did not succeed because no large tracts of land were available in Jersey City that were not contaminated with chromium.

22.     Since 1989, ICO has been actively engaged in efforts to solve Hudson County's chromium problem, including efforts to conduct a public health assessment of the effects of chromium exposure on Hudson County residents, the successful effort to get chromium waste excavated and removed from Metro Field in Jersey City, and a pending lawsuit seeking the clean up of Liberty State Park.

23.     Members of ICO's member churches reside and work in the vicinity of the Roosevelt Drive In site, frequently drive by the site, which is located on Route 440, a major city street, and shop at stores on and adjacent to the site. Furthermore, if the Roosevelt Drive In site were remediated and put to its most probable use as a retail store or some

8

other light commercial use, members of ICO and its member churches would seek work at the commercial establishment and/or shop at the retail store.

24.     The hazardous waste contamination of the Roosevelt Drive In site and the quality of the waters of the Hackensack River directly affect the health, economic, recreational, aesthetic and environmental interests of the members of ICO and its member churches.  Defendants' violations have adversely affected, are adversely affecting, and will continue adversely to affect, the health, economic, recreational, aesthetic and environmental interests of the members of ICO and its member churches.

25.     The Monumental Baptist Church is a member church of the ICO.

26.     Lawrence Baker is currently a member of the Monumental Baptist Church and has been a member for two years.  Mr. Baker lives within two miles of the Roosevelt Drive In site.  From the summer of 1991 through the middle of 1993, Mr. Baker worked as a security guard at the Old Dominion Trucking Company property adjoining the Roosevelt Drive In site.  While working there, Mr. Baker would observe a greenish/yellowish ooze appearing at the back of the Roosevelt Drive In site property after a rain fall.  For most of the time Mr. Baker worked at Old Dominion, the terrain at the Roosevelt Drive In site consisted of bare dirt, dead grass, scattered concrete, and the vacant Valley Fair building. From March 1973 through May 1990, Mr. Baker worked for the Jersey City Department of Public Works, located approximately 1/2 mile from the Roosevelt Drive In site.  Mr. Baker is currently employed by the Jersey City Parking Authority.  His current employment requires him to go to the Jersey City Incinerator Authority gas pumps once or twice a month to fill up the car he uses for work.  The gas pumps are located on a property adjacent to the Roosevelt Drive In site.

9

27.    The hazardous waste contamination at the Roosevelt Drive In site has adversely affected Mr. Baker's health by imposing on him the health risks associated with exposure to chromium-bearing waste and has adversely affected Mr. Baker's aesthetic and environmental interests by creating an abandoned lot that is a blight on the neighborhood.

28.    Martha Webb Herring is currently a member of the Monumental Baptist Church and has been a member for 35 years. Mrs. Herring lives less than 1/4 mile from the Roosevelt Drive In site. From approximately October through January or February 1970, Mrs. Herring worked as a cashier at the Valley Fair store on the Roosevelt Drive In site. Mrs. Herring shopped at the Valley Fair store regularly during the approximately 10 years it was open from 1970 through 1980. During the period she worked and shopped at the Valley Fair store, there were areas of bare dirt on the lot in which the store was located. During this period, she frequently noticed dust in the store. Mrs. Herring currently shops for groceries two to three times a week at the Pathmark store located about a city block away from the Roosevelt Drive In site on the same side of Route 440.

29.    The hazardous waste contamination at the Roosevelt Drive In site has adversely affected Mrs. Herring's health by imposing on her the health risks associated with exposure to chromium-bearing waste and has adversely affected Mrs. Herring's aesthetic and environmental interests by creating an abandoned lot that is a blight on the neighborhood.

30.    Margaret Webb is currently a member of the Monumental Baptist Church and has been a member for 38 years. Ms. Webb lives in and owns a house approximately 1/4 mile from the Roosevelt Drive In site. From approximately October through January or February 1970, Ms. Webb worked at the Valley Fair store on the Roosevelt Drive In site. Ms. Webb shopped at the Valley Fair store regularly during the approximately 10 years it

10

was open from 1970 through 1980. During the period she worked and shopped at the Valley Fair store, there were areas of bare dirt on the lot in which the store was located. During this period, she frequently noticed dust in the store. Ms. Webb currently shops for groceries two to three times a week at the Pathmark store located about a city block away from the Roosevelt Drive In site on the same side of Route 440. Ms. Webb has had a chronic cough and breathing problems for the last eight to ten years. She is afraid these problems may be associated with her exposure to chromium-bearing waste.

31.   The hazardous waste contamination at the Roosevelt Drive In site has adversely affected Ms. Webb's health by imposing on her the health risks associated with exposure to chromium-bearing waste and has adversely affected Ms. Webb's aesthetic and environmental interests by creating an abandoned lot that is a blight on the neighborhood. The hazardous waste contamination at the Roosevelt Drive In site adversely affects the economic value of Ms. Webb's home.

32.   Reverend Winston Clarke is an individual member of ICO. Rev. Clarke lives in and owns a condominium in the Society Hill development less than 1/4 mile from the Roosevelt Drive In site. Rev. Clarke shops daily for groceries at the Pathmark store located about a city block away from the Roosevelt Drive In site on the same side of Route 440.

33.   The hazardous waste contamination at the Roosevelt Drive In site has adversely affected Rev. Clarke's health by imposing on him the health risks associated with exposure to chromium-bearing waste and has adversely affected Rev. Clarke's aesthetic and environmental interests by creating an abandoned lot that is a blight on the neighborhood. The hazardous waste contamination at the Roosevelt Drive In site adversely affects the economic value of Rev. Clarke's home.

34.    Margarita Navas lives in and owns a condominium in the Society Hill development less than 1/4 mile from the Roosevelt Drive In site. Mrs. Navas moved to her current residence in August 1991. She was diagnosed with sarcoidosis in April 1992. Sarcoidosis is a rare progressive disease that eventually affects all the organs of the body. Mrs. Navas' symptoms include severe chest and back pain, pain in her joints, and difficulty breathing. Because of Mrs. Navas' illness, she was forced to stop working. It is believed that sarcoidosis may be caused by substances in the environment. Mrs. Navas is concerned that her disease may be caused by the presence of chromium-bearing waste near her home, including chromium-bearing waste from the Roosevelt Drive In site.

35.    Mrs. Navas shops four to five times a week at the stores at the Pathmark shopping center located about a city block away from the Roosevelt Drive In site on the same side of Route 440 as the site.

36.    Mrs. Navas is in the sixth month of pregnancy. Mrs. Navas is concerned about the health risks to her baby posed by the presence of chromium-bearing waste near her home, including chromium-bearing waste from the Roosevelt Drive In site.

37.    The hazardous waste contamination at the Roosevelt Drive In site has adversely affected Mrs. Navas' health by virtue of its being a likely cause of her sarcoidosis and by imposing on her, her husband, and her baby the other health risks associated with exposure to chromium-bearing waste and has adversely affected Mrs. Navas' aesthetic and environmental interests by creating an abandoned lot that is a blight on the neighborhood. The hazardous waste contamination at the Roosevelt Drive In site adversely affects the economic value of Mrs. Navas' home.

## Defendants

38.    Mutual owned and operated the Chromate Plant until Mutual was acquired by AlliedSignal.  On or about August 12, 1954, Allied Chemical and Dye Corporation acquired all the stock of Mutual.  In December 1954, Mutual, then a subsidiary of AlliedSignal, sold the Roosevelt Drive In site to Amy Joy Realty Corporation for the construction of an outdoor theater.  On or about February 23, 1955, Allied Chemical and Dye Corporation filed an application for a Certificate of Dissolution of Mutual.  On or about February 28, 1955, the New Jersey Secretary of State issued a Certificate of Dissolution of Mutual.  On or about March 1, 1955, Allied Chemical and Dye Corporation and the trustees on dissolution of Mutual executed a merger agreement.  In this agreement, Allied Chemical and Dye Corporation agree to pay, perform, or otherwise discharge, all obligations of Mutual and agree to exonerate, indemnify, and save harmless Mutual against all liability.  Defendant AlliedSignal is a corporation organized under the laws of the State of Delaware with its principal place of business in Morristown, New Jersey.  After the merger, Mutual became the Mutual Chemical Division of the Allied Chemical and Dye Corporation and continued its chromate chemical manufacturing operations at its plant in Baltimore, Maryland.  On or about April 28, 1958, Allied Chemical and Dye Corporation changed its name to Allied Chemical Corporation.  On or about April 27, 1981, Allied Chemical Corporation changed its name to Allied Corporation.  In 1985, Allied Corporation and the Signal Companies, Inc. combined to form AlliedSignal.

39.    AlliedSignal is directly responsible and liable for the debts and liabilities of Allied Corporation, Allied Chemical Corporation, and Allied Chemical Corporation. AlliedSignal is the successor by acquisition and merger of Mutual and is therefore directly or

vicariously liable for the liabilities of Mutual. The two companies shall hereafter be referred to jointly as "AlliedSignal."

40.     On or about December 30, 1954, AlliedSignal sold the site on which the Chromate Plant was located. Defendant AlliedSignal's Chromate Plant was the generator of the chromium-bearing waste present at the Roosevelt Drive In site and, by virtue of the interim remediation work and ongoing remediation studies it has and is conducting at the site, AlliedSignal is also the operator of the site.

41.     Defendant W.R. Grace & Co. is a corporation organized under the laws of the State of Connecticut, with its principal place of business in Boca Raton, Florida. Defendant W.R. Grace, Ltd. is a direct subsidiary of W.R. Grace & Co, with a registered office in London, England. Defendant Ecarg, Inc. is a corporation organized under the laws of the State of New Jersey, with its principal place of business in Boca Raton, Florida, and is a subsidiary of W.R. Grace & Co.

42.     Defendants W.R. Grace & Co. and W.R. Grace, Ltd. were the sole stockholders of Grace Retail Corporation, which acquired two parcels constituting the largest portion of the Roosevelt Drive In site and designated as Lots 14H and 14J in Tax Block 1290A, Jersey City, Hudson County, New Jersey, in June 1981.

43.     In November 1986, the Channel Acquisition Company acquired Grace Retail Corporation from defendant W.R. Grace & Co. Pursuant to a letter agreement, Grace Retail Corporation was supposed to distribute some of its assets, including lots 14H and 14J and the buildings thereon, to defendants W.R. Grace & Co. and W.R. Grace, Ltd. Due to an oversight, this transfer never occurred. Nevertheless, defendants W.R. Grace & Co. and W.R. Grace, Ltd. were unaware that the transfer did not occur and acted as the owners and operators of the parcels until October 14, 1994.

14

44.    On October 14, 1994, the then owner of lots 14H and 14J, Channel Home Centers, Inc., conveyed lots 14H and 14J to Ecarg, Inc. From November 1986 until October 1994, defendants W.R. Grace & Co. and W.R. Grace, Ltd. acted as owners and operators of that portion of the Roosevelt Drive In site designated as lots 14H and 14J. From October 14, 1994, until the present, defendant Ecarg, Inc. has been the owner and operator of that portion of the Roosevelt Drive In site designated as lots 14H and 14J.

45.  Defendants Roned Realty of Jersey City, Inc. and Roned Realty of Union City, Inc. are corporations organized under the laws of the State of New Jersey with their principal place of business in Hasbrouck Heights, New Jersey. A company referred to in the records of the Jersey City Assessor's office as Roned Realty Corp. owns the portion of the Roosevelt Drive In site designated as lot 14D in Tax Block 1290A, Jersey City, Hudson County, New Jersey. Plaintiffs believe that, after a reasonable opportunity for discovery, the evidence will show that either defendant Roned Realty of Jersey City, Inc. or defendant Roned Realty of Union City, Inc. is the owner and operator of lot 14D.

**FACTS**

I
**WASTE FROM THE CHROMATE PLANT**

46.    The Chromate Plant extracted chromium from chromium ores to produce chromate chemicals. The process generated waste that is referred to herein as chromium-bearing waste. AlliedSignal has estimated that the Chromate Plant produced 969,500 tons of chromium-bearing waste, containing between three to seven percent total chromium. AlliedSignal transported chromium-bearing waste from the Chromate Plant through a pipeline over Route 440 onto the Roosevelt Drive In site. In addition to chromium-bearing waste, AlliedSignal dumped unknown amounts of other refuse from the Chromate Plant at

**15**

the Roosevelt Drive In site.  Approximately one third of the chromium in the chromium-bearing waste deposited at the Roosevelt Drive In site is hexavalent chromium.  By December 5, 1953, waste at the Roosevelt Drive In site was in a pile covering an area of approximately 10 acres and measuring from 10 to 30 feet high.  Between 1952 and 1954, AlliedSignal sold chromium-bearing waste from the Roosevelt Drive-In site to be used as fill.  In 1954, AlliedSignal graded the remaining chromium-bearing waste at the Roosevelt Drive In site in preparation for selling the site.

II

## THE DISCHARGE OF POLLUTANTS TO SURFACE WATER FROM THE ROOSEVELT DRIVE IN SITE

47.    There are drainage swales at the northern and southern edges of the Roosevelt Drive In site leading to the Hackensack River.  At high tide, backwater from the Hackensack River enters the drainage swales.  Pollutants, including chromium, are discharged from these drainage swales at the Roosevelt Drive In site to the Hackensack River.

III

## THE RISK TO HUMAN HEALTH AND THE ENVIRONMENT OF CHROMIUM-BEARING WASTE

48.    The chromium-bearing waste contaminating the Roosevelt Drive In site consists chiefly of two valence states of chromium, hexavalent and trivalent chromium.

49.    Chromium is a carcinogen.  Chromium in surface soil may be blown into the air and then inhaled.  Inhalation of hexavalent chromium causes lung cancer.  There is no safe level of exposure to hexavalent chromium by inhalation.  Inhalation of hexavalent chromium can cause irritation to the nose, ranging in severity from a running nose to having ulcers and holes in the nasal septum.  It may also cause asthma.

16

50.    Skin contact with hexavalent chromium in large quantities causes irritant dermatitis that burns the skin and leaves ulcers and scars. In smaller quantities, hexavalent chromium causes allergic contact dermatitis, with symptoms such as severe redness and swelling of the skin.

51.    Ingestion of large amounts of hexavalent chromium may cause stomach upsets, ulcers, convulsions, kidney and liver damage, and even death.

52.    While less toxic, trivalent chromium may in large enough quantities cause some of the same health problems caused by hexavalent chromium.

53.    Chromium is toxic to plant, animal life, and aquatic life. The contamination at the Roosevelt Drive In site adversely affects plant and animal life exposed to those sites. The discharge of chromium into the Hackensack River, through stormwater runoff and leaching into groundwater, adversely affects aquatic life.

IV

## ALLIEDSIGNAL'S KNOWLEDGE OF THE RISK OF HARM TO HUMAN HEALTH AND THE ENVIRONMENT POSED BY ITS CHROMIUM-BEARING WASTE

54.    The first case report of respiratory cancer associated with employment in chromium-compound-related industries appeared in 1890. By 1932, over 250 chrome poisoning cases were pending concerning the Chromate Plant. At the latest, AlliedSignal knew or should have known by 1937 of the risk posed by the waste produced at the Chromate Plant. In an April 12, 1937, letter, AlliedSignal admitted the waste from the Chromate Plant contained chromic oxides including calcium chromate. Calcium chromate is recognized as one of the most carcinogenic chromium compounds.

55.    In an internal memorandum dated May 14, 1937, AlliedSignal admitted that its chromium-bearing waste contains compounds "ordinarily poisonous to plant growth."

17

56.   In 1948 the results of a study initiated by the chromate manufacturing industry that showed a significant association between chromium exposure and respiratory cancer were published. AlliedSignal employees were included in a health study conducted by the United States Public Health Service that concluded in a report in 1953 that employees exposed to chromate chemicals had suffered from nasal perforations, skin ulcers, and lung cancer. The report setting forth the results of the study was sent to AlliedSignal.

57.   The Industrial Hygiene Foundation of America, Inc. studied workers at the Chromate Plant from December 31, 1947, to July 1, 1954. It informed AlliedSignal in a 1957 report on the health risks from chromate chemical exposure including "penetrating ulcers" (a risk recognized "for over a hundred years"), perforations of the nasal septum, allergic dermatitis, and lung cancer.

58.   In a September 21, 1976, Patent (No. 3,981,965) for a method of suppressing water pollution from chromate chemical production waste, AlliedSignal stated that bleeding of wetted chromium compounds is objectionable because "chromium compounds are toxic and constitute a serious pollutant." Furthermore, some chromium compounds "have sufficient solubility to pollute the environment by such bleeding long after they have been discarded." When "stockpiles are exposed to the elements and wetted by rain, these [chromium] salts are gradually leached from the residue over long periods of time to pollute the ground water."

59.   As a consequence of investigating the waste from its Baltimore, Maryland, facility, AlliedSignal knew by 1979 that the waste produced by its chromate chemical production process contained toxic trivalent and hexavalent chromium compounds.

60.    In 1983, AlliedSignal informed the New Jersey Department of Environmental Protection that the Roosevelt Drive In site was contaminated with chromium-bearing waste used as fill.

V

## ALLIEDSIGNAL'S FAILURE TO CLEAN UP THE ROOSEVELT DRIVE IN SITE

61.    Despite its continuous knowledge of the presence of chromium-bearing waste at the Roosevelt Drive In and its knowledge of the risks posed by that waste, AlliedSignal did not take any action to clean up the site until 1989 when it completed an Interim Remedial Measure, regrading the site and placing a polyvinyl chloride cover over exposed portions.

62.    In 1991 and 1992, an AlliedSignal contractor installed a new wooden bulkhead at the site. In February 1993, when the polyvinyl chloride cover was damaged by high winds, AlliedSignal installed a new cover.

63.    On June 17, 1993, AlliedSignal entered into an Administrative Consent Order (hereafter the "ACO") with the State of New Jersey. The ACO requires AlliedSignal to conduct a remedial investigation and feasibility study for 18 sites, including the Roosevelt Drive In site. The ACO requires AlliedSignal to spend a sum of money equal to $50 million, plus the difference between $10 million and any lower amount that AlliedSignal spends on the RI/FS studies (hereafter referred to as "the remediation fund"), for remediating the sites subject to the order. If the remediation cost for all the sites exceeds the remediation fund, the ACO specifies that AlliedSignal may refuse to fund remediation for any site to the extent that it will put the total remediation cost in excess of the remediation fund, if AlliedSignal disagrees with the remedial action proposed by the State.

19

64. AlliedSignal has not committed itself specifically to remediate the Roosevelt Drive In site.

65. Despite the interim remedial action and the ACO described above, chromium-bearing waste continues to be present in the environment at the Roosevelt Drive In site and continues to be released into the environment.

### VI

### THE GRACE COMPANIES' FAILURE TO CLEAN UP THE PORTION OF THE ROOSEVELT DRIVE IN SITE THAT THEY OWN

66. In 1983, sampling and analysis were conducted at the Roosevelt Drive In site by a contractor hired by the Grace Companies. The Grace Companies have taken no action to clean up the portion of the site that they own.

67. Despite the Grace Companies' continuous knowledge since at least 1983 of the presence of chromium-bearing waste at the Roosevelt Drive-In site, chromium-bearing waste continues to be present in the environment at the site and continues to be released into the environment.

### VII

### RONED'S FAILURE TO CLEAN UP THE PORTION OF THE ROOSEVELT DRIVE IN SITE THAT IT OWNS

68. In 1987 and 1988, Roned completed an Interim Remedial Action at its property, placing a one foot soil cover and asphalt cover over parts of the site. Roned has taken no action to clean up the portion of the Roosevelt Drive In Site that it owns.

69. Despite Roned's continuous knowledge since at least 1987 of the presence of chromium-bearing waste at the lot 14D portion of the Roosevelt Drive-In site, chromium-bearing waste continues to be present in the environment at the site and continues to be released into the environment.

## CLAIMS

### First Claim

### (Substantial and Imminent Endangerment)

70.    Section 7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(B), provides that any person may commence a civil action against any person, including a past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

71.    Defendant AlliedSignal is a past owner of the Roosevelt Drive In site and has contributed to the past and present handling, storage, transportation, and disposal of solid and hazardous waste at the site.  Defendant Grace Companies are a past and present owner of the Roosevelt Drive In site and have contributed to the past and present handling, storage, and disposal of solid and hazardous waste at the site.  Defendant Roned is a past and present owner of the Roosevelt Drive In site and has contributed to the past and present handling, storage, and disposal of solid and hazardous waste at the site.

72.    The hazardous waste, including chromium-bearing waste, at the Roosevelt Drive In site, may present an imminent and substantial endangerment to health or the environment.

73.    Defendants have violated Section 7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(B), because the hazardous waste contamination at the Roosevelt Drive In site may present a substantial and imminent endangerment to the health or the environment.

21

## Second Claim

### (Storage and/or Disposal of Hazardous Waste without a Permit)

74.    Section 7002(a)(1)(A) of RCRA, 42 U.S.C. 6972(a)(1)(A), provides that any person may commence a civil action against any person who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order effective pursuant to RCRA.

75.    Section 3005 of RCRA, 42 U.S.C. 6925, provides that owning or operating a facility by the treatment, storage, or disposal of hazardous waste is prohibited except in accordance with a permit issued pursuant to Section 3005.

76.    Defendant AlliedSignal has operated the facility at the Roosevelt Drive In site by virtue of its supervision of Interim Remedial Measures there from 1989 to the present. Defendant Grace Companies own and operate the portion of the site consisting of lots 14H and 14J. Defendant Roned owns and operates the portion of the site consisting of lot 14D.

77.    Defendants have stored and/or disposed of, and continue to store and/or dispose of, hazardous waste, including hazardous chromium-bearing waste, at the Roosevelt Drive In site. Defendants do not possess a permit pursuant to Section 3005 of RCRA, 42 U.S.C. 6925, to store and/or dispose of hazardous waste at the Roosevelt Drive In site.

78.    Defendants have violated Sections 3005 and 7002(a)(1)(A) of RCRA, 42 U.S.C. 6925, 6972(a)(1)(A), by storing and/or disposing of hazardous waste at the Roosevelt Drive In site without a permit.

22

## Third Claim

### (Discharge of Pollutants into the Waters of the United States
without a Permit)

79.    Sections 505(a) and 505(f)(6) of the Water Act, 33 U.S.C. 1365(a) and

1365(f)(6), authorize citizens to enforce "an effluent standard or limitation," including effluent

standards, limitations, permits, and permit conditions set forth in Sections 301 and 402 of

the Water Act, 33 U.S.C. 1311 and 1342.

80.    Section 301(a) of the Water Act, 33 U.S.C. 1311(a), prohibits the discharge of

pollutants from a point source into navigable waters of the United States, unless in

compliance with enumerated sections of the Water Act.  Section 301(a) prohibits, inter alia,

such discharges in violation of, or not authorized by, the terms and conditions of an NPDES

permit issued pursuant to Section 402 of the Water Act, 33 U.S.C. 1342.  Section 402(k)

provides that compliance with the terms and conditions of a permit issued pursuant to that

section shall be deemed compliance with, inter alia, Section 301 of the Water Act.

81.    Defendant AlliedSignal has operated the facility at the Roosevelt Drive In site

by in virtue of its supervision of Interim Remedial Measures there from 1989 to the present.

Defendant Grace Companies own and operate the portion of the site consisting of lots 14H

and 14J.  Defendant Roned owns and operates the portion of the site consisting of lot 14D.

82.    The surface water runoff and other water discharged from the Roosevelt Drive

In site into the Hackensack River is contaminated with pollutants, including toxic chromium-

bearing waste.  Defendants do not possess a National Pollutant Discharge Elimination

System (hereafter "NPDES") permit or a New Jersey Pollutant Discharge Elimination System

(hereafter "NJPDES") permit, issued pursuant to Section 1342 of the Water Act, 33 U.S.C.

1342, authorizing discharges of pollutants from the Roosevelt Drive In site.

83.    Defendants have violated Sections 301(a) and 402 of the Water Act,, 33 U.S.C. 1311(a), 1342, by discharging hazardous waste into the Hackensack River without a permit.

### RELIEF

Wherefore, plaintiffs respectfully request this Court to grant the following relief:

A.    Issue a declaratory judgment that defendants have violated, and continue to be in violation of, Sections 3005, 7002(a)(1)(A), and 7002(a)(1)(B) of RCRA, 42 U.S.C. 6925, 6972(a)(1)(A), 6972(a)(1)(B), and Sections 301(a), and 402 of the Water Act, 33 U.S.C. 1311, 1342;

B.    Enjoin defendants to remove and properly to dispose of the hazardous waste they have stored and/or disposed of at the Roosevelt Drive In site and the hazardous waste which has migrated from the Roosevelt Drive In site to adjoining properties and permanently to remediate the Roosevelt Drive In site and adjacent properties affected by the hazardous waste stored and/or disposed of at the site;

C.    Enjoin defendants to cease all discharges of pollutants from point sources at the Roosevelt Drive In site that are not in compliance with a NPDES or NJPDES permit;

D.    Order defendants to pay appropriate civil penalties for the storage and/or disposal of hazardous waste at the Roosevelt Drive In site without permit authority pursuant to Section 7002(a) of RCRA, 42 U.S.C. 6972(a);

E.    Order defendants to pay appropriate civil penalties for the discharge of pollutants to the Hackensack River without permit authority pursuant to Section 505(a) of the Water Act, 33 U.S.C. 1365;

F.     Enjoin defendants to undertake a long-term public health screening process to evaluate the health impacts of exposure to chromium waste as to each individual who may have suffered prolonged or repeated exposure to the waste at the site;

G.     Order such other injunctive relief as the Court deems appropriate, including restitution and mitigation;

H.     Award plaintiffs their costs, including reasonable attorneys' and expert witness' fees, as authorized by Section 7002(e) of RCRA, 42 U.S.C. 6972(e), and Section 505(d) of the Water Act, 33 U.S.C. 1365(d); and

I.     Award such other relief as this Court deems appropriate.

Respectfully submitted,

BRUCE J. TERRIS  (BT 9359)
CAROLYN SMITH PRAVLIK  (CSP 4481)
ERIC A. BILSKY  (EB 9363)
Terris, Pravlik & Wagner
1121 12th Street, N.W.
Washington, D.C.  20005-4632
(202) 682-2100

EDWARD LLOYD  (EL 2633)
15 Washington Street
Room 334
Newark, New Jersey
(201) 648-5695

May 3, 1995

25