# EXHIBIT E

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTERFAITH COMMUNITY ORGANIZATION, et al. | : |
| | : Civil Action No. 95-2097 (JAG) |
| Plaintiffs, | : |
| -vs- | : |
| ALLIEDSIGNAL, INC., et al. | : |
| Defendants. | : |

## BRIEF IN SUPPORT OF W.R. GRACE'S MOTION TO LIFT STAY ON DISCOVERY AND FOR A SCHEDULING CONFERENCE

John M. Agnello (JMA 0338)
CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN
6 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Christopher H. Marraro
William F. Hughes
WALLACE KING MARRARO &
BRANSON, PLLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
(202) 204-1000

Attorneys for Defendants/Cross-claimants
W. R. Grace & Co., ECARG, Inc., and W.R.
Grace & Co., Ltd.

Date for Argument: September 13, 1999

Defendants/cross-claimants W.R. Grace & Co.-Conn., W.R. Grace & Co., Ltd., and ECARG, Inc. (collectively, "Grace"), submit this memorandum in support of their motion to lift the stay of discovery on Grace's cross-claims against defendant AlliedSignal, Inc. ("Allied"), and for a scheduling conference. For the reasons stated herein, that motion should be granted.

## Background

Grace is the owner of property located at 425 Route 440, Jersey City, New Jersey, Lots 14H and 14J, Block 1290A on the Jersey City tax map (the "Site"), which is at issue in this litigation. (Declaration of Akos L. Nagy at ¶ 2 (hereinafter, "Nagy Decl., Exh. 1".) After being named as a defendant in this action as the current property owner, Grace filed an amended complaint asserting various cross-claims against Allied arising out of chromium contamination that was caused at the Site by Allied and/or its predecessors-in-interest, and sought damages from Allied under various federal, state and common-law theories of recovery. (Amended Complaint dated January 2, 1997.) (Exh. 1 to the Declaration of William F. Hughes (hereinafter "Hughes Decl.").

In late 1996, defendant Allied filed a motion with the Court seeking to stay all discovery in this action, including discovery on Grace's cross-claims. At the time, Grace supported Allied's request that discovery be stayed, premised on Allied's pledge to cooperate with the New Jersey Department of Environmental Protection ("NJDEP") in conducting a full remediation of the chromium contamination that it caused at the Site pursuant to an Administrative Consent Order ("ACO"). Grace understood that Allied would take appropriate measures to investigate and remediate the site expeditiously, and thus believed at the time that its claims against Allied may not have to be litigated. See, e.g., letter from Robert G. Rose to the Court dated October 21,

1996 (Exh. 2 to Hughes Decl.). In response, the Court entered an Order staying discovery in this action on January 29, 1997. (Exh. 3 to Hughes Decl.)

### ICO's Pending Motion

On March 26, 1999, plaintiff Interfaith Community Organization ("ICO") filed a motion with the Court alleging that Allied had not conducted various investigative activities at the Site and had failed to provide plaintiffs with information Allied was required to make available under the terms of the Court's January 29, 1997 Order. In its reply brief, ICO further alleged that Allied had not provided plaintiffs with certain data, reports and other documentation regarding the investigation that was required under the Stay Order. In response to ICO's motion, Allied agreed that "[t]he stay on discovery should be lifted and discovery should proceed under the applicable Federal Rules of Civil Procedure." (Letter from James Stewart to the Court dated August 2, 1999.) (Exh. 4 to Hughes Decl.).

### Grace's RCRA Claim Against Allied

Grace concurs with ICO and Allied that discovery should now resume because Grace no longer believes that it will be able to resolve its claims against Allied without litigation. Like ICO, Grace has significant concerns that Allied's investigation and remediation work at the Site does not appear to be going forward at a reasonable pace and that Allied is not taking the appropriate steps to address the contamination. Accordingly, on July 28, 1999, Grace sent Allied a notice letter pursuant to the Section 7002(a)(1)(b) of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(B) ("RCRA"), indicating Grace's intent to bring an action seeking an injunction requiring Allied to remediate the environmental contamination at the Site and to obtain any other relief available to Grace under RCRA, state statutes and the common law. *See*

letter from C. Marraro to L. Bossidy dated July 28, 1999 (Exh. 5 to Hughes Decl.). Following the expiration of a required ninety-day statutory waiting period from the time Grace provided Allied with notice of its intent to sue, Grace will seek to amend its cross-claims in this action to add its claim under RCRA.

Grace's concerns regarding the environmental conditions at the Site, and its proposed action under RCRA, stem from the fact that Allied does not appear to be cooperating with NJDEP towards remediation of the Site, but rather appears to be intentionally dragging out the Remedial Investigation (RI) process in order to delay the ultimate extensive remediation of the Site that it is required to conduct. Allied's lack of progress is illustrated by the fact that, despite more than six years of "investigation," it has still not sufficiently characterized the vertical and horizontal extent of contamination at the Site – a necessary step for actual remediation to begin. Additionally, it appears that Allied has failed to take any action to address the significant chromium contamination in the groundwater at the Site.

NJDEP shares Grace's concern with the pace of progress at the Site. Allied has continued to resist NJDEP efforts to move toward remediation of the Site by repeatedly raising the same objections to NJDEP directives, using a disagreement on cleanup criteria as an excuse to fail to commence cleanup:

> [T]he initial Allied position was that it could not proceed without cleanup criteria and the related framework and procedures for determining such criteria either on a generic or site-specific basis. Efforts at cooperative development over a period of years did not result in mutual agreement on how to proceed. ... Allied has taken issue with the presented approach in a number of forums. Subsequently, [NJDEP] has evaluated the provided Allied input and determined it to be inappropriate as presented. Allied was notified of this both verbally and in writing. *Allied in its December 22, 199[8] correspondence continues to raise essentially these same issues.* The intent of [NJDEP] in providing the Summary and associated

3

information was to allow progress to be made. *It was not [NJDEP's] intent to create another point of contention resulting in further delay.*

(Letter from F. Faranca, NJDEP to J. Wong, Allied, March 1, 1999, p. 5; emphasis added.) (Exh. 6 to Hughes Decl.).

Grace is incurring significant costs, both in out-of-pocket expenses and in lost opportunity, due to Allied's failure to remediate the property. Grace has owned the Site for more than 18 years. (Nagy Decl. at ¶ 2.) Because of the chromium contamination at the Site, Grace has been unable to use or develop the Site, and will be unable to do so until a permanent remedy is undertaken. (*Id.* at ¶ 3.) Moreover, the Site, for all practical purposes, cannot be sold in its current contaminated state. (*Id.* at ¶ 4.) Despite being unable to use the Site for any constructive purpose or sell it, Grace is required to pay property taxes of more than $60,000 each year. (*Id.* at ¶ 5.) Grace also incurs approximately $10,000 in management and supervisory expenses relating to the Site each year. (*Id.* at ¶ 5). Thus, until Allied takes steps to alleviate the chromium contamination at the Site, Grace will continue to incur substantial costs on the Site without being able to use it, sell it or develop it. (*Id.* at ¶ 6.)

Finally, Grace must pursue its cross-claims because Allied has not performed appropriate investigative work at the Site. Allied apparently is conducting its remedial investigation under the premise that Grace will agree to a deed restriction limiting the use of the Site to industrial, rather than residential, purposes. (Under the applicable New Jersey cleanup statute, N.J. P.L 1993, c. 139 § 36 (C. 58:10B-13), a property may be remediated to less stringent "industrial" standards only if the property owner consents to an appropriate deed restriction limiting the property to non-residential uses.) Grace, however, recently informed Allied and NJDEP that it

4

was unwilling to agree to such a deed restriction and that it expects Allied to remediate the Site to residential standards. (Letter from C. Marraro to F. Faranca dated August 16, 1999 (Hughes Decl. Exh. 7)). Accordingly, Grace must pursue its claims against Allied in order to assure that an appropriate investigation and cleanup takes place.

Discovery in this action has now been stayed for 2 ½ years, and this matter is no closer to resolution than it was when the stay order was entered. This is an appropriate time to lift the stay and allow discovery, and this action, to go forward.

## ARGUMENT

### A.   The Court Should Lift The Stay Of Discovery on All Claims.

In its response to ICO's motion to enforce this Court's January 29, 1997 Order, Allied agreed that "[t]he stay on discovery should be lifted and discovery should proceed under the applicable Federal Rules of Civil Procedure." (Exh. 4 to Hughes Decl.). Grace concurs that, in light of the lack of progress in remediation at the site and Grace's soon-to-be-filed RCRA claim, it is appropriate that the stay on discovery be lifted and the parties be permitted to prosecute their claims. Grace's optimism that its claims against Allied could be resolved without the intervention of this Court unfortunately has turned out to be unfounded.

Because ICO and Allied have agreed that the stay order should be lifted and that discovery between them should go forward, it makes sense for all discovery to proceed now, including discovery on Grace's claims against Allied. Upon expiration of the statutorily-required ninety day waiting period, Grace will seek permission from the Court to amend its complaint against Allied to add a claim under RCRA. The claim will allege that Allied and/or its predecessors-in-interest contributed to the handling, storage, treatment, transportation and/or

disposal of chromium-bearing wastes and other solid and/or hazardous wastes at the Site, which now present an imminent and substantial endangerment to human health or the environment. Specifically, sampling conducted at the Site has revealed high levels of chromium contamination in the soil and a serious groundwater problem. Hundreds of thousands of tons of chromium wastes remain buried on the Site today. (Letter from C. Marraro to L. Bossidy dated July 28, 1999 (Exh. 5 to Hughes Decl.).)

Grace anticipates that much of the discovery on its claims, including its RCRA claim, will be similar, if not identical, to the discovery that ICO and Allied will be taking with respect to ICO's claims against Allied, particularly in light of the fact that Grace's RCRA claim is very similar to that asserted by ICO. Rather than having discovery proceed in piecemeal fashion on the various parties' claims, it makes sense to allow all parties to take discovery contemporaneously to eliminate repetitive depositions, interrogatories and document productions. Moreover, given the seriousness of these allegations, and Grace's belief that the conditions at the Site may present an imminent endangerment to human health or the environment, discovery should resume immediately so that appropriate measures may be taken to address the risks posed by the contamination at the Site.

B.     **A Scheduling Conference Will Provide for Orderly and Efficient Discovery by the Parties.**

Grace further proposes that the Court set a date for a conference at which the Court and the parties can discuss and set a schedule for the orderly progress of discovery, pleading and trial in this action. Grace proposes that, at the conference, the parties should address the scheduling of the amendment of Grace's complaint to add its RCRA count, the filing of responsive

pleadings by Allied to Grace's claims, a period for document and written discovery, depositions, preparation and submission of expert reports, expert depositions, deadlines for dispositive motions, and a trial date.

## Conclusion

For all the foregoing reasons, the Court's January 29, 1997 Stay Order should be lifted, discovery on all claims should proceed, and the Court should order that a scheduling conference take place.

Respectfully submitted,

Dated: August 19, 1999

By: _____
John M. Agnello (JMA 0338)
CARELLA, BYRNE, BAIN, GILFILLAN,
  CECCHI, STEWART & OLSTEIN
6 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Christopher H. Marraro
William F. Hughes
WALLACE KING MARRARO
 & BRANSON, PLLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
(202) 204-1000

Attorneys for Defendants/Cross-claimants
W. R. Grace & Co, ECARG, Inc., W.R. Grace &
Co., Ltd.,