# EXHIBIT H

John M. Agnello (JMA0338)
CARELLA, BYRNE, BAIN, GILFILLAN,
  CECCHI, STEWART & OLSTEIN
6 Becker Farm Road
Roseland, N.J. 07068
(973) 994-1700

Christopher H. Marraro
Richard E. Wallace Jr.
William F. Hughes
WALLACE KING MARRARO & BRANSON PLLC
1050 Thomas Jefferson Street, NW
Washington, D.C. 20007
(202) 204-1000

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **INTERFAITH COMMUNITY ORGANIZATION, ET AL.,** | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) **Civil Action No. 95-2097** **Honorable J.A. Greenaway, Jr.** |
| **ALLIEDSIGNAL, INC., ET AL,** | ) ) ) |
| Defendants. | ) ) |

## SECOND AMENDED CROSS-CLAIMS

Defendants/Cross-Claimants W.R. Grace & Co., W.R. Grace, Ltd. and ECARG, Inc.

("Grace") bring these Second Amended Cross-Claims against defendant AlliedSignal, Inc.

("Allied"), alleging as follows:

### NATURE OF ACTION

1.      Grace lodges these Cross-Claims against Allied seeking injunctive relief and

recovery of all costs and damages that Grace has incurred and will incur as a result of chromium

contamination that Allied and/or its predecessors-in-interest caused at a property owned by

Grace on Route 440 in Jersey City, New Jersey ("the Site").  In Count I, Grace seeks an

injunction pursuant to Section 7002(a)(1)(B) the Resource Conservation and Recovery Act

("RCRA"), 42 U.S.C. § 6972(a)(1)(B), requiring Allied to conduct an expedited cleanup of all of

the chromium contamination at the Site.  In Counts II, III, IV, V, VI and VII, Grace seeks

recovery from Allied pursuant to sections 107 and 113 of the Comprehensive Environmental

Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607 and 9613, Section

23.11.f.2 of the New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. § 58:10-

23.11.f.2, and New Jersey common law, of all costs and damages Grace has incurred and will

incur as a result of the chromium contamination at the Site.  In Count VIII, Grace seeks specific

performance and damages as a consequence of Allied's breaches of a License Agreement that

Allied entered into with Grace regarding the Site.  In Counts IX and X, Grace seeks

indemnification and contribution from Allied under New Jersey law for any damages or costs

that may be assessed against Grace in this action.  In Count XI, Grace seeks a declaratory ruling

that Allied is liable under CERCLA, the Spill Act and common law for all costs and damages

that Grace will incur in the future as a result of the chromium contamination at the Site.

### JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction over Grace's RCRA claim in Count I

pursuant to 42 U.S.C. § 6972(a)(1) and 28 U.S.C. § 1331.  Grace gave notice of its intent to file

its RCRA claim to the Administrator of the United States Environmental Protection Agency, the

New Jersey Department of Environmental Protection ("NJDEP") and Allied more than ninety

(90) days prior to the date Grace filed these Second Amended Cross-Claims.

3.      The Court has subject matter jurisdiction over Grace's CERCLA claims in Counts

II and III pursuant to 42 U.S.C. §§ 9607 and 9613, and 28 U.S.C. § 1331.

4.     The Court has subject matter jurisdiction over Grace's Spill Act claim in Count

IV and Grace's common law and contractual claims set forth in Counts IV, V, VI, VII, VIII, IX

and X pursuant to 28 U.S.C. § 1332.  Additionally, this Court has supplemental jurisdiction over

Counts IV, V, VI, VII, VIII, IX and X pursuant to 28 U.S.C. § 1367 because each of these claims

arises out of the same set of operative facts, and thus forms part of the same case or controversy,

as Grace's RCRA claim in Count I and its CERCLA claims in Count II and III.

5.     The Court may issue a declaratory judgment under Count XI concerning the rights

and liabilities of the parties pursuant to 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 9613(g)(2).

6.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and 42

U.S.C. §§ 9613(b) and 6972(a)(1) because the Site is located within this Judicial District, the

releases and/or threatened releases of hazardous substances have occurred and/or threaten to

occur within this Judicial District, and the imminent and substantial endangerment to health or

the environment at issue in this action has occurred and/or may occur within this Judicial

District.

## PARTIES

7.     Cross-Claimant W.R. Grace & Co. is a Delaware corporation.  Cross-Claimant

W.R. Grace, Ltd. is a foreign corporation.  Cross-Claimant ECARG, Inc. is a New Jersey

corporation.  ECARG, Inc. is the current owner of the Site.  (In these Cross-Claims, W.R. Grace

& Co., W.R. Grace, Ltd. and ECARG, Inc. are referred to collectively as "Grace".)

8.     Defendant AlliedSignal, Inc. is a Delaware corporation.  At various relevant

times, AlliedSignal, Inc. operated under the names Allied Chemical and Dye Corporation, Allied

Chemical Corporation, and Allied Corporation.  AlliedSignal, Inc. is responsible for all debts,

liabilities and obligations of Allied Chemical and Dye Corporation, Allied Chemical

3

Corporation, and Allied Corporation. (In these Cross-Claims, defendant AlliedSignal, Inc.,

Allied Chemical and Dye Corporation, Allied Chemical Corporation, and Allied Corporation are

referred to collectively as "Allied.")

9.       Allied is the successor-in-interest to, and is responsible for all debts, liabilities and

obligations of, Mutual Chemical Company of New Jersey and Mutual Chemical Company of

America (collectively, "Mutual"). In or about August 1954, Allied acquired all the stock of

Mutual, merged with Mutual, and operated Mutual as a wholly-owned subsidiary called Mutual

Chemical Division of the Allied Chemical and Dye Corporation. In or about February 1955,

Allied dissolved Mutual, acquired all of its assets, and continued to operate Mutual's chromate

chemical production business in an uninterrupted fashion. In connection with Allied's

dissolution of Mutual, Allied expressly assumed all liabilities and obligations of Mutual relating

to the Site.

## THE SITE

10.      The Site is a 32.2 acre parcel located on Route 440 in Jersey City, New Jersey. It

is identified as Lots 14H and 14J, Block 1290-A on the Jersey City municipal tax map.

11.      Mutual owned and operated the Site for sixty (60) years from approximately 1895

to 1954. During this 60 year period, Mutual also owned and operated a chromate chemical

production plant ("the Jersey City Plant") located at the intersection of Route 440 and West Side

Avenue in Jersey City. In these operations, Mutual generated various chromium chemical

production wastes ("Chromium Waste") containing chromium and chromium compounds

including, but not limited, to trivalent chromium and hexavalent chromium.

12.      During the 60 year period in which it owned and operated the Site, Mutual

disposed of hundreds of thousands of tons of its Chromium Waste into the environment at and

near the Site and the Jersey City Plant. Upon information and belief, Mutual transported
Chromium Waste to the Site through one or more aboveground pipelines and conveyors that ran
from the Jersey City Plant to the Site, as well as by other means.

      13.    As a result of Mutual's disposal of Chromium Waste at the Site and Jersey City
Plant, there is extensive environmental contamination in the soil, surface water, groundwater and
sediments at and near the Site ("Chromium Contamination"). Chromium Contamination
continues to be released and discharged into the environment, including releases and discharges
to the groundwater beneath the Site and the adjacent Hackensack River. Upon information and
belief, Chromium Contamination also continues to be discharged and released into the
groundwater at and near the Site as a result of Allied's disposal of Chromium Waste at the Jersey
City Plant.

      14.    Chromium Waste poses substantial risks and hazards to human health and the
environment. Mutual knew, or should have known, of these substantial risks and hazards at the
time it disposed of Chromium Waste at the Site and Jersey City Plant.

      15.    Upon information and belief, neither Allied nor Mutual ever warned any
subsequent purchaser of the Site, including Amy Joy Realty Corporation and Grace, of the
presence of Chromium Waste or Chromium Contamination at the Site or of the risks or hazards
posed by the Chromium Waste or Chromium Contamination at the Site.

## ALLIED HAS FAILED
## TO CONDUCT A CLEANUP

      16.    In or around 1983, the NJDEP discovered the Chromium Contamination at the
Site and identified Allied as a responsible party.

17.     On or about December 2, 1988, the NJDEP issued a directive to Allied requiring it to undertake various Interim Remedial Measures to address the Chromium Contamination at the Site.

18.     On or about April 4, 1991, the NJDEP issued another directive to Allied naming Allied as the party that was responsible for the Chromium Contamination at the Site, assessing a civil penalty, and requiring Allied to fund a Remedial Investigation/ Feasibility Study of the Chromium Contamination at the Site. In the 1991 Directive, NJDEP determined that uncontrolled discharges of Chromium Waste were occurring at and from the Site, that the risk of human exposure to Chromium Waste at the Site was ongoing, and that the chromium compounds contained in the Chromium Waste at the Site are toxic to humans and include demonstrated human carcinogens. NJDEP also found that in as early as 1937, Allied knew or should have known of the presence of chromium and chromium compounds in the Chromium Waste it was disposing at the Site as well as the deleterious health effects of Chromium Waste.

19.     On or about June 17, 1993, Allied entered into an Administrative Consent Order ("ACO") with the NJDEP regarding the Site. The ACO required Allied to pay a civil penalty and conduct an investigation and feasibility study of the Chromium Contamination at the Site.

20.     To date, Allied has failed to complete the site investigation and other work required by the ACO, and has failed to remediate any of the Chromium Waste or Chromium Contamination at the Site. Instead, Allied has pursued a strategy designed to avoid having to conduct any cleanup of the Site.

21.     Grace has incurred and will continue to incur substantial costs and damages as a result of Allied's disposal of Chromium Waste at the Site and Jersey City Plant. The damages Grace has suffered include, but are not limited to, damages stemming from Grace's inability to

6

use or develop the Site for any beneficial purpose due to heaving and structural problems caused by the Chromium Waste and Chromium Contamination at the Site.  Additionally, Grace has incurred response costs and has been required to pay taxes and other overhead costs while maintaining the Site during the period in which Allied has delayed, protracted, and stalled the NJDEP-mandated cleanup.  Grace will continue to suffer these costs and damages and other costs and damages until Allied removes all Chromium Waste from the Site.

**COUNT I**
**(INJUNCTIVE RELIEF UNDER RCRA)**

22.    Grace repeats and realleges each and every allegation contained in paragraphs 1 through 21 as if fully set forth herein.

23.    Section § 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), provides that any person may commence a civil action for injunctive relief against any person who has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

24.    Allied and its predecessor Mutual are  "persons" within the meaning of RCRA § 1004(15), 42 U.S.C. § 6903(15).

25.    The Chromium Wastes that Mutual generated and disposed of at the Site are "solid wastes" and/or "hazardous wastes" within the meaning of RCRA §§ 1004(5) and (27), 42 U.S.C. §§ 6903(5) and (27).

26.    By disposing of Chromium Waste at and near the Site, Mutual contributed to the past or present handling, storage, treatment, transportation, or disposal of solid wastes and/or hazardous wastes at and near the Site.

7

27.   The Chromium Waste and Chromium Contamination at and near the Site may present an imminent and substantial endangerment to health or the environment.

28.   Allied is legally responsible for all liabilities and obligations of Mutual, including all of Mutual's liabilities and obligations relating to the Site.

WHEREFORE, Grace demands judgment pursuant to RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) for:

(i)      injunctive relief requiring Allied to abate the imminent and substantial endangerment to health or the environment by conducting an expedited cleanup of all of the Chromium Waste and Chromium Contamination at the Site;

(ii)     an order requiring Allied to reimburse Grace for all attorneys' fees and costs that it incurs in connection with this action;

(iii)    interest; and

(iv)     such other relief as the Court may deem appropriate and just.

## COUNT II
## (COST RECOVERY UNDER CERCLA § 107)

29.   Grace repeats and realleges each and every allegation contained in paragraphs 1 through 28 as if fully set forth herein.

30.   Pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a), a person falling under one of the categories of potentially responsible persons set forth in CERCLA §§ 107(a)(1)-(a)(4), 42 U.S.C. §§ 9607(a)(1)-(a)(4), is strictly and jointly and severally liable for all necessary costs of response incurred by any other person consistent with the National Contingency Plan ("NCP") at a facility where there have been releases or threatened releases of hazardous substances.

8

31.    Pursuant to CERCLA § 107(a)(2), 42 U.S.C. § 9607(a)(2), any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of is strictly liable for all response costs that are incurred by any other person at the facility.

32.    Pursuant to CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3), any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, is strictly liable for all response costs that are incurred by any other person at the facility.

33.    Pursuant to CERCLA § 107(a)(4), 42 U.S.C. § 9607(a)(4), any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, is strictly liable for all response costs that are incurred by any other person at the facility.

34.    Allied and its predecessor Mutual are "persons" as defined in CERCLA § 101(21), 42 U.S.C. § 9601(21).

·  35.    The Site is a "facility" as defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

36.    Chromium Waste is a "hazardous substance" as defined in CERCLA § 101(14), 42 U.S.C. § 9601(14).

37.    There have been "releases" and/or threatened "releases" of Chromium Waste and other hazardous substances at and/or from the Site within the meaning of CERCLA §§ 101(14) and (22), 42 U.S.C. §§ 9601(14) and (22).

38.    Grace has incurred, and will incur, costs of response at the Site consistent with the NCP as a result of releases and/or threatened releases of Chromium Waste and/or other hazardous substances at the Site.

39.    Mutual owned and/or operated the Site at the time Chromium Waste and/or other hazardous substances were disposed of at the Site, causing Allied and Mutual to be strictly liable pursuant to CERCLA § 107(a)(2), 42 U.S.C. § 9607(a)(2), for all costs of response that Grace has incurred and will incur at the Site.

40.    Mutual by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of Chromium Wastes and other hazardous substances that were owned or possessed by Mutual or other parties or entities at the Site, causing Allied and Mutual to be strictly liable pursuant to CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3), for all costs of response that Grace has incurred and will incur at the Site.

41.    Mutual accepted Chromium Waste and other hazardous substances for transport to the Site and selected the Site as a facility for the disposal or treatment of Chromium and other hazardous substances, causing Allied and Mutual to be strictly liable pursuant to CERCLA § 107(a)(4), 42 U.S.C. § 9607(a)(4), for all costs of response that Grace has incurred and will incur at the Site.

42.    Grace has not discharged or released, and is not in any way responsible for any of the discharges or releases, of Chromium Waste at or near the Site.

43.    Grace is not liable under CERCLA § 107(a), 42 U.S.C. § 9607(a), for any costs of response that have been incurred or will be incurred at the Site.

44.    Allied is legally responsible for all liabilities and obligations of Mutual, including all of Mutual's liabilities and obligations relating to the Site.

WHEREFORE, Grace demands judgment for an award from Allied pursuant to CERCLA §§ 107(a)(2), 107(a)(3) and 107(a)(4), 42 U.S.C. §§ 9607(a)(2), 9607(a)(3) and 9607(a)(4) for:

(i)    all past costs of response that Grace has incurred in connection with the releases or threatened releases of Chromium Waste and/or other hazardous substances at the Site;

(ii)    all future costs of response that Grace will incur in connection with the releases or threatened releases of Chromium Waste and/or other hazardous substances at the Site;

(iii)    attorneys' fees and costs;

(iv)    interest, and

(v)    such other relief as the Court may deem appropriate and just.

## COUNT III
## (CONTRIBUTION UNDER CERCLA § 113)

45.    Grace repeats and realleges each and every allegation contained in paragraphs 1 through 44 as if fully set forth herein.

46.    Pursuant to CERCLA § 113(f), 42 U.S.C. § 9613(f), any person may seek contribution from any other person who is liable or potentially liable under CERCLA § 107(a), 42 U.S.C. § 9607(a), for costs of response that are incurred in connection with a release or threatened release of a hazardous substance at a facility.

47.    Pursuant to CERCLA §§ 107(a)(2), 107(a)(3) and 107(a)(4), 42 U.S.C. §§ 9607(a)(2), 9607(a)(3) and 9607(a)(4), Allied is a person that is liable or potentially liable for the costs of response that Grace has incurred and will incur at the Site.

48.    Grace has not discharged or released, and is not in any way responsible for any of the discharges or releases of, any Chromium Waste at or near the Site.

11

49.     Grace has incurred, and will continue to incur, costs of response that are consistent with the NCP in connection with releases and/or threatened releases of Chromium Waste and/or other hazardous substances at the Site.

50.     Grace's equitable share of such costs is zero. All of the costs of response that Grace has incurred and will incur at the Site are therefore in excess of Grace's equitable share of such costs.

WHEREFORE, Grace demands judgment for an award of contribution from Allied pursuant to CERCLA § 113(f), 42 U.S.C. § 9613(f), for:

(i)     all past costs of response that Grace has incurred in connection with the releases or threatened releases of Chromium Waste and other hazardous substances at the Site;

(ii)    all future costs of response that Grace will incur in connection with the releases or threatened releases of Chromium Waste and other hazardous substances at the Site;

(iii)   attorneys' fees and costs;

(iv)    interest; and

(v)     such other relief as the Court may deem appropriate and just.

### COUNT IV
### (CONTRIBUTION UNDER THE N.J. SPILL ACT)

51.     Grace repeats and realleges each and every allegation contained in paragraphs 1 through 50 as if fully set forth herein.

52.     The Spill Act provides that "[a]ny person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable... for all cleanup and removal costs no matter by whom incurred." N.J.S.A. § 58:10-23.11.g.c.1.

12

53.    The Spill Act also provides that "[w]henever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance."  N.J.S.A. § 58:10-23.11.f.2.

54.    Allied and its predecessor Mutual are "persons" as defined in N.J.S.A. § 58:10-23.11b and N.J.A.C. § 7:1E-1.6.

55.    Allied is legally responsible for all liabilities and obligations of Mutual, including all of Mutual's liabilities and obligations relating to the Site.

56.    Chromium is a "hazardous substance" as defined in N.J.S.A § 58:10-23.11b and N.J.A.C. § 7:1E-1.7 and § 7:1E-10, Appx. A.

57.    The Site is a "facility" within the meaning of N.J.A.C. § 7:1E-1.6.

58.    Chromium Waste and its constituents have been "discharged" into the soil, surface water, and groundwater at and near the Site.

59.    As a result of its disposal of Chromium Waste at and near the Site, Allied is "[a]ny person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance" within the meaning of N.J.S.A. § 58:10-23.11g.c.1 and N.J.S.A. § 58:10-23.11f.2.

60.    Grace has not discharged, and is not in any way responsible for any of the discharges of, any Chromium Waste at or near the Site.

61.    Grace has incurred and will incur costs consistent with the NCP in the clean up and removal of discharges of Chromium Waste and other hazardous substance that Allied discharged or otherwise is responsible for at and near the Site.

13

62.     Grace's equitable share of such costs is zero.  All of the costs of response that Grace has incurred and will incur at the Site are therefore in excess of Grace's equitable share of such costs.

WHEREFORE, Grace demands judgment for an award of contribution from Allied pursuant to N.J.S.A. § 58:10-23.11.f.2 for:

(i)      all past costs that Grace has incurred in connection with the Chromium Contamination at the Site;

(ii)     all future costs that Grace will incur in connection with the Chromium Contamination at the Site;

(iii)    attorneys' fees and costs;

(iv)    interest; and

(v)     such other relief as the Court may deem appropriate and just.

### COUNT V
### (COMMON LAW STRICT LIABILITY)

63.     Grace repeats and realleges each and every allegation contained in paragraphs 1 through 62 as if fully set forth herein.

64.     The Chromium Wastes that Mutual disposed of at the Site pose a high degree of risk to human health and the environment.  Chromium Wastes are classified as hazardous substances under CERCLA and the Spill Act, and solid wastes and/or hazardous wastes under RCRA.  Hexavalent chromium, which is a component of Allied's Chromium Waste, has been classified as a human carcinogen by the United States Environmental Protection Agency and other governmental agencies.

14

65.     The dangers associated with Chromium Waste greatly outweigh its usefulness, if any, and even the exercise of utmost care will not eliminate the extraordinary harms and risks that it poses.

66.     Mutual and Allied have been aware since at least the 1930's of the presence of chromium in its Chromium Wastes and the significant risks and hazards that Chromium Wastes pose to human health and the environment.

67.     Despite the abnormally dangerous nature of its Chromium Waste, and Mutual's knowledge of its substantial risks and hazards, Mutual disposed of hundreds of thousands of tons of Chromium Waste into the environment at and near the Site between approximately 1895 and 1954. During this time period, Mutual also disposed of Chromium Wastes at and near the Jersey City Plant.

68.     Allied is legally responsible for all liabilities and obligations of Mutual, including all of Mutual's liabilities and obligations relating to the Site.

69.     Under New Jersey common law, persons such as Allied and Mutual that engage in an abnormally dangerous activity are strictly liable for all costs and damages that are incurred or suffered as a result of such activity.

70.     Mutual's disposal of Chromium Waste at the Site and Jersey City Plant, and Allied's continuing failure to remediate the Chromium Contamination at and near the Site, constitute abnormally dangerous activities for which Allied is strictly liable. As a result of these activities, the soil, surface water, sediments and groundwater at and near the Site continue to be contaminated with Chromium Waste. Chromium Wastes and their constituents continue to be discharged and released onto and beneath the Site.

15

71.    The Chromium Contamination at the Site has caused Grace to suffer irreparable harm.

72.    Grace has been, and will continue to be, damaged as a result of Allied's and Mutual's abnormally dangerous activities at the Site and Jersey City Plant. As a direct and proximate result of Allied's and Mutual's abnormally dangerous activities, Grace has lost and will continue to lose all beneficial use of the Site and has incurred, and will continue to incur, taxes and other costs in maintaining the Site during the period in which the Site has been and continues to be contaminated. The Chromium Contamination and presence of Chromium Wastes at and near the Site also have substantially diminished the value of the Site.

73.    Grace never disposed of any Chromium Wastes or caused any of the Chromium Contamination at or near the Site. Grace purchased the Site unaware of the risks and harms of the Chromium Wastes or Chromium Contamination at or near the Site.

74.    The Chromium Contamination at and near the Site results from a condition that can be physically removed or legally abated. Grace is entitled to recover all monetary damages it has sustained to date, plus damages that will be incurred during the period when the Site is being remediated. Grace is also entitled to an award of the entire cost required to remediate the Site completely or, at Grace's option, an injunctive order compelling Allied to remediate the Site completely and without further delay.

WHEREFORE, Grace demands judgment against Allied for:

(i)    all past costs of response that Grace has incurred in connection with the Chromium Contamination at the Site;

(ii)    all future costs of response that Grace will incur in connection with the Chromium Contamination at the Site;

16

(iii)    all costs required to remediate the Site completely;

(iv)    an injunctive order compelling Allied to remediate the Site completely without further delay;

(v)    interest;

(vi)    attorneys' fees and costs; and

(vii)    such other relief as the Court may deem appropriate and just.

## COUNT VI
## (COMMON LAW NUISANCE)

75.    Grace repeats and realleges each and every allegation contained in paragraphs 1 through 74 as if fully set forth herein.

76.    Through their disposal of Chromium Wastes at and near the Site and Jersey City Plant, Allied and Mutual created and negligently permitted to remain on the Site and Jersey City Plant a defective and artificial condition that involves unreasonable risks of harm to human health and the environment.

77.    As a proximate result of the artificial condition created and negligently maintained by Allied and Mutual, the soil, surface water, sediments and groundwater at and near the Site continue to be contaminated with Chromium Wastes. These Chromium Wastes and their constituents continue to be discharged and released onto and beneath the Site.

78.    As the current owner, Grace has a legitimate possessory right in the Site.

79.    As a direct and proximate result of the artificial condition created and negligently maintained by Allied and Mutual, the Site is contaminated and damaged, thereby significantly interfering with Grace's possessory right.

17

80.    Grace has suffered damages and will continue to suffer damages as a result of the nuisance created and maintained by Allied and Mutual at and near the Site.

81.    Grace has lost and will continue to lose all beneficial use of the Site and has incurred, and will continue to incur, taxes and other costs and damages in maintaining the Site during the prolonged investigation and remediation of the Chromium Contamination that was caused by Allied.

82.    The Chromium Contamination and presence of Chromium Waste at and near the Site have substantially diminished the value of the Site, thereby damaging Grace.

83.    As a direct and proximate result of the nuisance Allied and Mutual have created, the soil, surface water, groundwater and sediments at and near the Site remain contaminated and damaged, thereby significantly interfering with Grace's use and enjoyment of the Site and its private possessory right, and also interfering with a right common to the public.

84.    Allied and Mutual have created a private and/or public nuisance at and near the Site that Allied is strictly liable to abate and that subjects Allied to strict liability for damages.

85.    Under New Jersey common law, persons such as Allied and Mutual that have created a public and/or private nuisance are strictly liable for all costs and damages that are incurred or suffered as a result of such nuisance.

86.    Grace is entitled to recover all monetary damages incurred to date, plus damages that will be incurred during the period when the Site is being remediated.

87.    Grace is also entitled to an award of the entire cost required to remediate the Site completely or, at Grace's option, an injunctive order compelling Allied to remediate the Site completely and without further delay.

88.     The Chromium Contamination at and near the Site results from a condition that can be physically removed or legally abated.

89.     The Chromium Contamination at the Site has caused Grace to suffer irreparable harm.

WHEREFORE, Grace demands judgment against Allied for:

(i)     all past costs of response that Grace has incurred in connection with the Chromium Contamination at the Site;

(ii)    all future costs of response that Grace will incur in connection with the Chromium Contamination at the Site;

(iii)   all costs required to remediate the Site completely;

(iv)    an injunctive order compelling Allied to remediate the Site completely without further delay;

(v)     interest;

(vi)    attorneys' fees and costs; and

(vii)   such other relief as the Court may deem appropriate and just.

## COUNT VII
## (COMMON LAW NEGLIGENCE)

90.     Grace repeats and realleges each and every allegation contained in paragraphs 1 through 89 as if fully set forth herein.

91.     Allied breached a duty of care to Grace by causing Chromium Contamination at the Site.

92.     Allied also breached a duty of care to Grace by failing to investigate, remediate and otherwise respond to the Contamination properly.

19

93.    Allied has been negligent in its response to the Contamination in many respects, including, but not limited to the following:  Allied has failed to undertake any removal to date; Allied has failed and refused to develop and implement a reasonable corrective action plan; Allied has delayed, protracted, stalled, and hampered the investigation into the causes of the Contamination and the remedial actions required; Allied has asserted unfounded denials of responsibility for the Contamination and the duty to remediate, and has made unfounded assertions of the causes of damages attributable to the Contamination, including unfounded statements about the toxicity of the Chromium Waste and unfounded statements about the reasons for instability in the soils at the Site.

94.    Grace has suffered damages, and will continue to suffer damages, as a result of Allied's and Mutual's breaches of their duty of care.

95.    Grace has lost and will continue to lose all beneficial use of the Site and has incurred, and will continue to incur, taxes and other costs in maintaining the Site during the prolonged investigation and remediation of the Chromium Contamination that was caused by Allied and Mutual.

96.    The Chromium Contamination and presence of Chromium Waste at and near the Site have substantially diminished the value of the Site.

97.    The Chromium Contamination at the Site has caused Grace to suffer irreparable harm.

WHEREFORE, Grace demands judgment against Allied for:

(i)    all past costs of response that Grace has incurred in connection with the Chromium Contamination at the Site;

20

(ii)     all future costs of response that Grace will incur in connection with the

Chromium Contamination at the Site;

(iii)    all costs required to remediate the Site completely;

(iv)     an injunctive order compelling Allied to remediate the Site completely

without further delay;

(v)      interest;

(vi)     attorneys' fees and costs; and

(vii)    such other relief as the Court may deem appropriate and just.

## COUNT VIII
## (BREACH OF LICENSE AGREEMENT)

98.     Grace repeats and realleges each and every allegation contained in paragraphs 1

through 97 as if fully set forth herein.

99.     In June 1997, ECARG and Allied entered into a License Agreement relating to

the Site.

100.    In paragraph 4.1 of the License Agreement, Allied agreed to provide ECARG on

a continuing basis with all documents and written communications between: (a) Allied or its

agents and contractors; and (b) DEP or any other federal, state or local governmental agency,

body, board or department whatsoever ("Governmental Agency"), concerning the Site, including

without limitation any RI/FS work plan, sampling plan or cleanup plan (or their equivalents)

submitted to and/or approved by DEP or any other Governmental Agency, and all amendments,

additions and revisions thereto, and all financial assurance required by or provided to DEP, all

required federal, state and local permits, licenses, certificates, manifests and approvals obtained

with regard to Allied's activities at the Site, and all correspondence, studies, reports and data relating to the environmental quality of, or matters concerning, the Site.

101.    In paragraph 4.3 of the License Agreement, Allied agreed to provide ECARG on a continuing basis with seventy-two (72) hours advance oral notice of all meetings relevant to the Site to be held between Allied and DEP or any other Governmental Agency.

102.    In paragraph 4.4 of the License Agreement, Allied agreed to provide ECARG on a continuing basis with copies of all investigative, sampling or cleanup proposals or reports concerning either activity to be performed at the Site or reporting on activity which has been performed at the Site at least seven (7) days prior to the time such proposals or reports are submitted to DEP or any other Governmental Agency.

103.    In paragraph 6 of the License Agreement, Allied indemnified Grace for, *inter alia,* any and all losses, damages, costs and expenses, including without limitation attorneys' fees and costs, arising from, out of or incident to any breach by Allied of the License Agreement.

104.    Allied has substantially and materially breached, and continues to substantially and materially breach the License Agreement by failing to comply with its obligations under paragraphs 4.1, 4.3 and 4.4 of the License Agreement.

105.    Grace has incurred losses, damages, costs and expenses, including attorneys' fees and costs, arising from, out of or incident to Allied's continuing breaches of the License Agreement.

WHEREFORE, Grace demands a judgment from Allied awarding Grace:

(i)    damages;

(ii)    an order requiring Allied to specifically perform its obligations under the License Agreement;

22

(iii)    interest and costs; and

(iv)    such other relief as the Court may deem appropriate and just.

## COUNT IX
## (COMMON LAW INDEMNIFICATION)

106.    Grace repeats and realleges each and every allegation contained in paragraphs 1 through 105 as if fully set forth herein.

107.    While Grace denies any liability for the Chromium Waste or Chromium Contamination at and near the Site, to the extent that Grace may be found liable to plaintiffs for any costs or damages in this action, such liability would be imputed, vicarious, secondary, and the sole responsibility of Allied, whose liability is primary and direct.

WHEREFORE, Grace demands judgment against Allied for:

(i)    full, total and complete indemnification for any amounts for which Grace is found to be liable to plaintiffs in this action;

(ii)    attorneys' fees and costs; and

(iii)    such other relief as the Court may deem appropriate and just.

## COUNT X
## (CONTRIBUTION UNDER NEW JERSEY LAW)

108.    Grace repeats and realleges each and every allegation contained in paragraphs 1 through 107 as if fully set forth herein.

109.    While Grace denies any liability for the Chromium Waste or Chromium Contamination at and near the Site, to the extent that Grace may be found liable to plaintiffs for any costs or damages in this action, such liability would be imputed, vicarious, secondary, and the sole responsibility of Allied, whose liability is primary and direct.

23

WHEREFORE, Grace demands judgment against Allied for:

(i)     statutory contribution pursuant to the statutory contribution laws of New Jersey;

(ii)    attorneys' fees and costs; and

(iii)   such other relief as the Court may deem appropriate and just.

## COUNT XI
## (DECLARATORY JUDGMENT)

110.   Grace repeats and realleges each and every allegation contained in paragraphs 1 through 109 as if fully set forth herein.

111.   An actual controversy currently exists between Grace and Allied with regard to Allied's liability under RCRA, CERCLA, the Spill Act, and New Jersey common law for the costs and damages that Grace has incurred, and will incur, in connection with the Chromium Contamination at the Site.

112.   Grace will continue to incur substantial costs and damages as a result of the Chromium Contamination that Allied caused at and near the Site.

113.   A declaratory judgment defining Allied's liability to Grace for these future costs and damages will prevent the need for multiple law suits in the future and provide a final resolution of this dispute between the parties.

WHEREFORE, Grace demands judgment against Allied pursuant to 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 9613(g)(2), and the Uniform Declaratory Judgments Law, N.J.S.A. § 2A:16-50 *et seq*:

(i)    declaring that Allied is liable to Grace for all of the costs and damages that

Grace will incur in the future in connection with the Chromium Wastes and Chromium

Contamination at the Site:

(ii)    awarding Grace its attorneys' fees and costs;

(iii)    awarding Grace interest; and

(iv)    awarding Grace such other relief that the Court may deem appropriate and

just.

Respectfully submitted,

Dated: November 9, 1999

Christopher H. Marraro
Richard E. Wallace, Jr.
William F. Hughes
WALLACE KING MARRARO & BRANSON
PLLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
(202) 204-1000

John M. Agnello
CARELLA, BYRNE, BAIN, GILFILLAN,
  CECCHI, STEWART & OLSTEIN
6 Becker Farm Road
Roseland, N.J. 07068
(973) 994-1700

Attorneys for Defendants/Cross-Claimants W.R.
Grace & Co., W.R. Grace, Ltd., and ECARG, Inc.

## CERTIFICATE OF SERVICE

I certify that on November 9, 1999, I caused a true and correct copy of the foregoing

Second Amended Cross-Claims to be served by facsimile and first-class mail on the following

counsel of record:

| FIRM | ATTORNEY(S) FOR | TELEPHONE | FACSIMILE |
|---|---|---|---|
| Michael D. Lichtenstein, Esq. Franklin W. Boenning, Esq. James Stewart, Esq. Lowenstein, Sandler, Kohl, Fisher & Boylan 65 Livingston Avenue Roseland, NJ 07068 | Defendant, AlliedSignal, Inc. | (973) 597-2522 | (973) 597-2523 |
| Carolyn Smith Pravlick, Esq. Danielle C. Fidler, Esq. Terris, Pravlick & Millan, LLP 1121 Twelfth Street, NW Washington, DC 20005 | Plaintiff, Interfaith | (202) 682-2100 | (202) 289-6795 |
| Edward Lloyd, Esq. 15 Washington Street Room 334 Newark, NJ 07102 | Plaintiff, Interfaith | (973) 353-5695 | (973) 353-5537 (973) 353-1249 |
| Timothy S. Haley, Esq. 13 Brookside Avenue Caldwell, NJ 07006 | Defendant, Roned Realty | (973) 228-9644 | (973) 228-5683 |
| Christopher H. Marraro, Esq. William Hughes, Esq. Wallace King Marraro & Branson, PLLC 1050 Thomas Jefferson St., NW Washington, DC 20007 | Defendants, W. R. Grace & Co., ECARG, Inc. W. R. Grace, Ltd. | (202) 204-1000 | (202) 204-1001 |

JOHN M. AGNELLO

Dated:  November 9, 1999

26