# EXHIBIT I

John M. Agnello (JMA0338)
CARELLA, BYRNE, BAIN, GILFILLAN,
  CECCHI, STEWART & OLSTEIN
6 Becker Farm Road
Roseland, N.J. 07068
(973) 994-1700

Christopher H. Marraro
Richard E. Wallace Jr.
William F. Hughes
WALLACE KING MARRARO & BRANSON PLLC
1050 Thomas Jefferson Street, NW
Washington, D.C. 20007
(202) 204-1000

**RECEIVED**

OCT 0 4 2000

AT 8:30_____M
WILLIAM T. WALSH
CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| INTERFAITH COMMUNITY ORGANIZATION, ET AL., | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 95-2097 (JAG) |
| HONEYWELL INTERNATIONAL INC., ET AL, | ) |
| Defendants. | ) |

## THIRD AMENDED CROSS-CLAIMS

Defendants/Cross-Claimants W.R. Grace & Co., W.R. Grace, Ltd. and ECARG, Inc.

("Grace") bring these Third Amended Cross-Claims against defendant Honeywell International

Inc. ("Honeywell"), alleging as follows:

## NATURE OF ACTION

1.      Grace lodges these Cross-Claims against Honeywell seeking injunctive relief and

recovery of all costs and damages that Grace has incurred and will incur as a result of chromium

contamination that Honeywell and/or its predecessors-in-interest caused at a property owned by

Grace on Route 440 in Jersey City, New Jersey ("the Site").    In Count I, Grace seeks an injunction pursuant to Section 7002(a)(1)(B) the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), requiring Honeywell to conduct an expedited cleanup of all of the chromium contamination at the Site.  In Counts II, III, IV, V, VI and VII, Grace seeks recovery from Honeywell pursuant to sections 107 and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607 and 9613, Section 23.11.f.2 of the New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. § 58:10-23.11.f.2, and New Jersey common law, of all costs and damages Grace has incurred and will incur as a result of the chromium contamination at the Site.  In Counts VIII and IX, Grace seeks specific performance and damages as a consequence of Honeywell's breaches of a License Agreement that Honeywell entered into with Grace regarding the Site.  In Counts X and XI, Grace seeks indemnification and contribution from Honeywell under New Jersey law for any damages or costs that may be assessed against Grace in this action.  In Count XII, Grace seeks a declaratory ruling that Honeywell is liable under CERCLA, the Spill Act and common law for all costs and damages that Grace will incur in the future as a result of the chromium contamination at the Site.

## JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction over Grace's RCRA claim in Count I pursuant to 42 U.S.C. § 6972(a)(1) and 28 U.S.C. § 1331.  Grace gave notice of its intent to file its RCRA claim to the Administrator of the United States Environmental Protection Agency, the New Jersey Department of Environmental Protection ("NJDEP") and Honeywell more than ninety (90) days prior to the date Grace filed its Second Amended Cross-Claims.

3.    The Court has subject matter jurisdiction over Grace's CERCLA claims in Counts II and III pursuant to 42 U.S.C. §§ 9607 and 9613, and 28 U.S.C. § 1331.

4.    The Court has subject matter jurisdiction over Grace's Spill Act claim in Count IV and Grace's common law and contractual claims set forth in Counts IV, V, VI, VII, VIII, IX, X and XI pursuant to 28 U.S.C. § 1332. Additionally, this Court has supplemental jurisdiction over Counts IV, V, VI, VII, VIII, IX, X and XI pursuant to 28 U.S.C. § 1367 because each of these claims arises out of the same set of operative facts, and thus forms part of the same case or controversy, as Grace's RCRA claim in Count I and its CERCLA claims in Count II and III.

5.    The Court may issue a declaratory judgment under Count XII concerning the rights and liabilities of the parties pursuant to 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 9613(g)(2).

6.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. §§ 9613(b) and 6972(a)(1) because the Site is located within this Judicial District, the releases and/or threatened releases of hazardous substances have occurred and/or threaten to occur within this Judicial District, and the imminent and substantial endangerment to health or the environment at issue in this action has occurred and/or may occur within this Judicial District.

## PARTIES

7.    Cross-Claimant W.R. Grace & Co. is a Delaware corporation. Cross-Claimant W.R. Grace, Ltd. is a foreign corporation. Cross-Claimant ECARG, Inc. is a New Jersey corporation. ECARG, Inc. is the current owner of the Site. (In these Cross-Claims, W.R. Grace & Co., W.R. Grace, Ltd. and ECARG, Inc. are referred to collectively as "Grace".)

8.     Defendant Honeywell is a Delaware corporation. At various relevant times, Honeywell operated under the names AlliedSignal, Inc., Allied Chemical and Dye Corporation, Allied Chemical Corporation, and Allied Corporation. Honeywell is responsible for all debts, liabilities and obligations of AlliedSignal, Inc., Allied Chemical and Dye Corporation, Allied Chemical Corporation, and Allied Corporation. (In these Cross-Claims, Honeywell, AlliedSignal, Inc., Allied Chemical and Dye Corporation, Allied Chemical Corporation, and Allied Corporation are referred to collectively as "Honeywell.")

9.     Honeywell is the successor-in-interest to, and is responsible for all debts, liabilities and obligations of, Mutual Chemical Company of New Jersey and Mutual Chemical Company of America (collectively, "Mutual"). In or about August 1954, Honeywell acquired all the stock of Mutual, merged with Mutual, and operated Mutual as a wholly-owned subsidiary called Mutual Chemical Division of the Allied Chemical and Dye Corporation. In or about February 1955, Honeywell dissolved Mutual, acquired all of its assets, and continued to operate Mutual's chromate chemical production business in an uninterrupted fashion. In connection with Honeywell's dissolution of Mutual, Honeywell expressly assumed all liabilities and obligations of Mutual relating to the Site.

## THE SITE

10.     The Site is a 32.2 acre parcel located on Route 440 in Jersey City, New Jersey. It is identified as Lots 14H and 14J, Block 1290-A on the Jersey City municipal tax map.

11.     Honeywell's predecessor, Mutual, owned and operated the Site for sixty (60) years from approximately 1895 to 1954. During this 60 year period, Mutual also owned and operated a chromate chemical production plant ("the Jersey City Plant") located at the intersection of Route 440 and West Side Avenue in Jersey City. In these operations, Mutual generated various

4

chromium chemical production wastes ("Chromium Waste") containing chromium and chromium compounds including, but not limited to, trivalent chromium and hexavalent chromium.

12.    During the 60 year period in which it owned and operated the Site, Mutual disposed of hundreds of thousands of tons of its Chromium Waste into the environment at and near the Site and the Jersey City Plant.  Upon information and belief, Mutual transported Chromium Waste to the Site through one or more aboveground pipelines and conveyors that ran from the Jersey City Plant to the Site, as well as by other means.

13.    As a result of Mutual's disposal of Chromium Waste at the Site and Jersey City Plant, there is extensive environmental contamination in the soil, surface water, groundwater and sediments at and near the Site ("Chromium Contamination").  Chromium Contamination continues to be released and discharged into the environment, including releases and discharges to the groundwater beneath the Site and the adjacent Hackensack River.  Upon information and belief, Chromium Contamination also continues to be discharged and released into the groundwater at and near the Site as a result of Honeywell's disposal of Chromium Waste at the Jersey City Plant and/or other areas in the vicinity of the Site.

14.    Chromium Waste poses substantial risks and hazards to human health and the environment.  Mutual knew, or should have known, of these substantial risks and hazards at the time it disposed of Chromium Waste at and near the Site and Jersey City Plant.

15.    Upon information and belief, neither Honeywell nor Mutual ever warned any subsequent purchaser of the Site, including Amy Joy Realty Corporation and Grace, of the presence of Chromium Waste or Chromium Contamination at the Site or of the risks or hazards posed by the Chromium Waste or Chromium Contamination at the Site.

5

## HONEYWELL HAS FAILED
## TO CONDUCT A CLEANUP

16.     In or around 1983, the NJDEP discovered the Chromium Contamination at the Site and identified Honeywell as a responsible party.

17.     On or about December 2, 1988, the NJDEP issued a directive to Honeywell requiring it to undertake various Interim Remedial Measures to address the Chromium Contamination at the Site.

18.     On or about April 4, 1991, the NJDEP issued another directive to Honeywell naming Honeywell as the party that was responsible for the Chromium Contamination at the Site, assessing a civil penalty, and requiring Honeywell to fund a Remedial Investigation/ Feasibility Study of the Chromium Contamination at the Site. In the 1991 Directive, NJDEP determined that uncontrolled discharges of Chromium Waste were occurring at and from the Site, that the risk of human exposure to Chromium Waste at the Site was ongoing, and that the chromium compounds contained in the Chromium Waste at the Site are toxic to humans and include demonstrated human carcinogens. NJDEP also found that in as early as 1937, Honeywell knew or should have known of the presence of chromium and chromium compounds in the Chromium Waste it was disposing at the Site as well as the deleterious health effects of Chromium Waste.

19.     On or about June 17, 1993, Honeywell entered into an Administrative Consent Order ("ACO") with the NJDEP regarding the Site. The ACO required Honeywell to pay a civil penalty and conduct an investigation and feasibility study of the Chromium Contamination at the Site.

20.     To date, Honeywell has failed to complete the site investigation and other work required by the ACO, and has failed to remediate any of the Chromium Waste or Chromium

6

Contamination at the Site. Instead, Honeywell has pursued a strategy designed to avoid having to conduct any cleanup of the Site.

21.    Grace has incurred and will continue to incur substantial costs and damages as a result of the disposal of Chromium Waste at and near the Site and Jersey City Plant by Honeywell's predecessor, Mutual. The damages Grace has suffered include, but are not limited to, damages stemming from Grace's inability to use or develop the Site for any beneficial purpose due to heaving and structural problems caused by the Chromium Waste and Chromium Contamination at the Site. Additionally, Grace has incurred response costs and has been required to pay taxes and other overhead costs while maintaining the Site during the period in which Honeywell has delayed, protracted, and stalled the NJDEP-mandated cleanup. Grace has also incurred costs in connection with the removal and off-site disposal of certain chromium wastes from the Site. Grace will continue to suffer these costs and damages and other costs and damages until Honeywell removes all Chromium Waste from the Site.

## COUNT I
## (INJUNCTIVE RELIEF UNDER RCRA)

.22.    Grace repeats and realleges each and every allegation contained in paragraphs 1 through 21 as if fully set forth herein.

23.    Section § 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), provides that any person may commence a civil action for injunctive relief against any person who has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

24.    Honeywell and its predecessor Mutual are "persons" within the meaning of RCRA § 1004(15), 42 U.S.C. § 6903(15).

7

25.    The Chromium Wastes that Mutual generated and disposed of at the Site are "solid wastes" and/or "hazardous wastes" within the meaning of RCRA §§ 1004(5) and (27), 42 U.S.C. §§ 6903(5) and (27).

26.    By disposing of Chromium Waste at and near the Site, Mutual contributed to the past or present handling, storage, treatment, transportation, or disposal of solid wastes and/or hazardous wastes at and near the Site.

27.    The Chromium Waste and Chromium Contamination at and near the Site may present an imminent and substantial endangerment to health or the environment.

28.    Honeywell is legally responsible for all liabilities and obligations of Mutual, including all of Mutual's liabilities and obligations relating to the Site.

WHEREFORE, Grace demands judgment pursuant to RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) for:

(i)    injunctive relief requiring Honeywell to abate the imminent and substantial endangerment to health or the environment by conducting an expedited cleanup of all of the Chromium Waste and Chromium Contamination at and near the Site;

(ii)    an order requiring Honeywell to reimburse Grace for all attorneys' fees and costs that it incurs in connection with this action;

(iii)    interest; and

(iv)    such other relief as the Court may deem appropriate and just.

## COUNT II
## (COST RECOVERY UNDER CERCLA § 107)

29.    Grace repeats and realleges each and every allegation contained in paragraphs 1 through 28 as if fully set forth herein.

8

30.     Pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a), a person falling under one of the categories of potentially responsible persons set forth in CERCLA §§ 107(a)(1)-(a)(4), 42 U.S.C. §§ 9607(a)(1)-(a)(4), is strictly and jointly and severally liable for all necessary costs of response incurred by any other person consistent with the National Contingency Plan ("NCP") at a facility where there have been releases or threatened releases of hazardous substances.

31.     Pursuant to CERCLA § 107(a)(2), 42 U.S.C. § 9607(a)(2), any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of is strictly liable for all response costs that are incurred by any other person at the facility.

32.     Pursuant to CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3), any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, is strictly liable for all response costs that are incurred by any other person at the facility.

33.     Pursuant to CERCLA § 107(a)(4), 42 U.S.C. § 9607(a)(4), any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, is strictly liable for all response costs that are incurred by any other person at the facility.

34.     Honeywell and its predecessor Mutual are "persons" as defined in CERCLA § 101(21), 42 U.S.C. § 9601(21).

35.     The Site is a "facility" as defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

9

36.   Chromium Waste is a "hazardous substance" as defined in CERCLA § 101(14), 42 U.S.C. § 9601(14).

37.   There have been "releases" and/or threatened "releases" of Chromium Waste and other hazardous substances at and/or from the Site within the meaning of CERCLA §§ 101(14) and (22), 42 U.S.C. §§ 9601(14) and (22).

38.   Grace has incurred, and will incur, costs of response at the Site consistent with the NCP as a result of releases and/or threatened releases of Chromium Waste and/or other hazardous substances at the Site.

39.   Honeywell's predecessor, Mutual, owned and/or operated the Site at the time Chromium Waste and/or other hazardous substances were disposed of at the Site, causing Honeywell and Mutual to be strictly liable pursuant to CERCLA § 107(a)(2), 42 U.S.C. § 9607(a)(2), for all costs of response that Grace has incurred and will incur at the Site.

40.   Mutual by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of Chromium Wastes and other hazardous substances that were owned or possessed by Mutual or other parties or entities at the Site, causing Honeywell and Mutual to be strictly liable pursuant to CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3), for all costs of response that Grace has incurred and will incur at the Site.

41.   Mutual accepted Chromium Waste and other hazardous substances for transport to the Site and selected the Site as a facility for the disposal or treatment of Chromium and other hazardous substances, causing Honeywell and Mutual to be strictly liable pursuant to CERCLA § 107(a)(4), 42 U.S.C. § 9607(a)(4), for all costs of response that Grace has incurred and will incur at the Site.

10

42.    Grace has not discharged or released, and is not in any way responsible for any of the discharges or releases, of Chromium Waste at or near the Site.

43.    Grace is not liable under CERCLA § 107(a), 42 U.S.C. § 9607(a), for any costs of response that have been incurred or will be incurred at the Site because Grace is an innocent purchaser and also is not liable within the meaning of CERCLA §§ 107(b)(3) and/or 101(35)(A), 42 U.S.C. §§ 9607(b)(3) and/or 9601(35)(A).

44.    Honeywell is legally responsible for all liabilities and obligations of Mutual, including all of Mutual's liabilities and obligations relating to the Site.

WHEREFORE, Grace demands judgment for an award from Honeywell pursuant to CERCLA §§ 107(a)(2), 107(a)(3) and 107(a)(4), 42 U.S.C. §§ 9607(a)(2), 9607(a)(3) and 9607(a)(4) for:

(i)    all past costs of response that Grace has incurred in connection with the releases or threatened releases of Chromium Waste and/or other hazardous substances at the Site;

(ii)    all future costs of response that Grace will incur in connection with the releases or threatened releases of Chromium Waste and/or other hazardous substances at the Site;

(iii)    attorneys' fees and costs;

(iv)    interest; and

(v)    such other relief as the Court may deem appropriate and just.

## COUNT III
## (CONTRIBUTION UNDER CERCLA § 113)

45.    Grace repeats and realleges each and every allegation contained in paragraphs 1 through 44 as if fully set forth herein.

46.     Pursuant to CERCLA § 113(f), 42 U.S.C. § 9613(f), any person may seek contribution from any other person who is liable or potentially liable under CERCLA § 107(a), 42 U.S.C. § 9607(a), for costs of response that are incurred in connection with a release or threatened release of a hazardous substance at a facility.

47.     Pursuant to CERCLA §§ 107(a)(2), 107(a)(3) and 107(a)(4), 42 U.S.C. §§ 9607(a)(2), 9607(a)(3) and 9607(a)(4), Honeywell is a person that is liable or potentially liable for the costs of response that Grace has incurred and will incur at the Site.

48.     Grace has not discharged or released, and is not in any way responsible for any of the discharges or releases of, any Chromium Waste at or near the Site.

49.     Grace has incurred, and will continue to incur, costs of response that are consistent with the NCP in connection with releases and/or threatened releases of Chromium Waste and/or other hazardous substances at the Site.

50.     Grace's equitable share of such costs is zero. All of the costs of response that Grace has incurred and will incur at the Site are therefore in excess of Grace's equitable share of such costs.

WHEREFORE, Grace demands judgment for an award of contribution from Honeywell pursuant to CERCLA § 113(f), 42 U.S.C. § 9613(f), for:

(i)     all past costs of response that Grace has incurred in connection with the releases or threatened releases of Chromium Waste and other hazardous substances at the Site;

(ii)     all future costs of response that Grace will incur in connection with the releases or threatened releases of Chromium Waste and other hazardous substances at the Site;

(iii)     attorneys' fees and costs;

(iv)     interest; and

12

(v)    such other relief as the Court may deem appropriate and just.

## COUNT IV
## (CONTRIBUTION UNDER THE N.J. SPILL ACT)

51.    Grace repeats and realleges each and every allegation contained in paragraphs 1 through 50 as if fully set forth herein.

52.    The Spill Act provides that "[a]ny person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable... for all cleanup and removal costs no matter by whom incurred." N.J.S.A. § 58:10-23.11.g.c.1.

53.    The Spill Act also provides that "[w]henever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance." N.J.S.A. § 58:10-23.11.f.2.

54.    Honeywell and its predecessor Mutual are "persons" as defined in N.J.S.A. § 58:10-23.11b and N.J.A.C. § 7:1E-1.6.

55.    Honeywell is legally responsible for all liabilities and obligations of Mutual, including all of Mutual's liabilities and obligations relating to the Site.

56.    Chromium is a "hazardous substance" as defined in N.J.S.A § 58:10-23.11b and N.J.A.C. § 7:1E-1.7 and § 7:1E-10, Appx. A.

57.    The Site is a "facility" within the meaning of N.J.A.C. § 7:1E-1.6.

58.    Chromium Waste and its constituents have been "discharged" into the soil, surface water, and groundwater at and near the Site.

13

59.    As a result of the disposal of Chromium Waste at and near the Site, Honeywell is "[a]ny person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance" within the meaning of N.J.S.A. § 58:10-23.11g.c.1 and N.J.S.A § 58:10-23.11f.2.

60.    Grace has not discharged, and is not in any way responsible for any of the discharges of, any Chromium Waste at or near the Site.

61.    Grace has incurred and will incur "Cleanup and Removal costs" consistent with the NCP in the clean up and removal of discharges of Chromium Waste and other hazardous substance that Honeywell and/or its predecessor Mutual discharged or otherwise is responsible for at and near the Site. Grace received written approval from DEP for all such costs, as well as for all investigative, removal and remedial activities that it conducted at the Site.

62.    Grace's equitable share of its Cleanup and Removal costs at the Site is zero. All of the costs that Grace has incurred and will incur at the Site are therefore in excess of Grace's equitable share of such costs.

WHEREFORE, Grace demands judgment for an award of contribution from Honeywell pursuant to N.J.S.A. § 58:10-23.11.f.2 for:

(i)    all past costs that Grace has incurred in connection with the Chromium Contamination at the Site;

(ii)    all future costs that Grace will incur in connection with the Chromium Contamination at the Site;

(iii)    attorneys' fees and costs;

(iv)    interest; and

(v)    such other relief as the Court may deem appropriate and just.

14

## COUNT V
## (COMMON LAW STRICT LIABILITY)

63.    Grace repeats and realleges each and every allegation contained in paragraphs 1 through 62 as if fully set forth herein.

64.    The Chromium Wastes that Honeywell's predecessor Mutual disposed of at the Site pose a high degree of risk to human health and the environment.  Chromium Wastes are classified as hazardous substances under CERCLA and the Spill Act, and solid wastes and/or hazardous wastes under RCRA.  Hexavalent chromium, which is a component of Chromium Waste, has been classified as a human carcinogen by the United States Environmental Protection Agency and other governmental agencies.

65.    The dangers associated with Chromium Waste greatly outweigh its usefulness, if any, and even the exercise of utmost care will not eliminate the extraordinary harms and risks that it poses.

66.    Mutual, and Honeywell have been aware since at least the 1930's of the presence of chromium in its Chromium Wastes and the significant risks and hazards that Chromium Wastes pose to human health and the environment.

67.    Despite the abnormally dangerous nature of its Chromium Waste, and Mutual's knowledge of its substantial risks and hazards, Mutual disposed of hundreds of thousands of tons of Chromium Waste into the environment at and near the Site between approximately 1895 and 1954.  During this time period, Mutual also disposed of Chromium Wastes at and near the Jersey City Plant.

68.    Honeywell is legally responsible for all liabilities and obligations of Mutual, including all of Mutual's liabilities and obligations relating to the Site.

69.    Under New Jersey common law, persons such as Honeywell and Mutual that engage in an abnormally dangerous activity are strictly liable for all costs and damages that are incurred or suffered as a result of such activity.

70.    Mutual's disposal of Chromium Waste at the Site and Jersey City Plant, and Honeywell's continuing failure to remediate the Chromium Contamination at and near the Site, constitute abnormally dangerous activities for which Honeywell is strictly liable. As a result of these activities, the soil, surface water, sediments and groundwater at and near the Site continue to be contaminated with Chromium Waste. Chromium Wastes and their constituents continue to be discharged and released onto and beneath the Site.

71.    The Chromium Contamination at the Site has caused Grace to suffer irreparable harm.

72.    The risks posed by Mutual's disposal of Chromium Wastes at and near the Site could not have been eliminated through the exercise of due care. Moreover, the disposal of Chromium Wastes at and near the Site was not a matter of common usage.

73.    Grace has been, and will continue to be, damaged as a result of Honeywell's and Mutual's abnormally dangerous activities at the Site and Jersey City Plant. As a direct and proximate result of Honeywell's and Mutual's abnormally dangerous activities, Grace has lost and will continue to lose all beneficial use of the Site and has incurred, and will continue to incur, taxes and other costs in maintaining the Site during the period in which the Site has been and continues to be contaminated. The Chromium Contamination and presence of Chromium Wastes at and near the Site also have substantially diminished the value of the Site.

74.     Grace never disposed of any Chromium Wastes or caused any of the Chromium Contamination at or near the Site.  Grace purchased the Site unaware of the risks and harms of the Chromium Wastes or Chromium Contamination at or near the Site.

75.     Mutual's and Honeywell's activities constitute a continuing tort because the Chromium Contamination at and near the Site results from a condition that can be physically removed or legally abated.  Grace is entitled to recover all monetary damages it has sustained to date, plus damages that will be incurred during the period when the Site is being remediated. Grace is also entitled to an award of the entire cost required to remediate the Site completely or, at Grace's option, an injunctive order compelling Honeywell to remediate the Site completely and without further delay.

WHEREFORE, Grace demands judgment against Honeywell for:

(i)     all past costs of response that Grace has incurred in connection with the Chromium Contamination at the Site;

(ii)    all future costs of response that Grace will incur in connection with the Chromium Contamination at the Site;

(iii)   all costs required to remediate the Site completely;

(iv)    all damages Grace has incurred and will incur in connection with the Site;

(v)     an injunctive order compelling Honeywell to remediate the Site completely without further delay;

(vi)    interest;

(vii)   attorneys' fees and costs; and

(viii)  such other relief as the Court may deem appropriate and just.

17

## COUNT VI
## (COMMON LAW NUISANCE)

76.     Grace repeats and realleges each and every allegation contained in paragraphs 1 through 75 as if fully set forth herein.

77.     Through their disposal of Chromium Wastes at and near the Site and Jersey City Plant, Honeywell and Mutual created and negligently permitted to remain on the Site and neighboring properties including the Jersey City Plant a defective and artificial condition that involves unreasonable risks of harm to human health and the environment.

78.     As a proximate result of the artificial condition created and negligently maintained by Honeywell and Mutual, the soil, surface water, sediments and groundwater at and near the Site continue to be contaminated with Chromium Wastes. These Chromium Wastes and their constituents continue to be discharged and released onto and beneath the Site.

79.     As the current owner, Grace has a legitimate possessory right in the Site.

80.     As a direct and proximate result of the artificial condition created and negligently maintained by Honeywell and Mutual, the Site is contaminated and damaged, thereby significantly interfering with Grace's possessory right.

81.     Grace has suffered damages and will continue to suffer damages as a result of the nuisance created and maintained by Honeywell and Mutual at  the Site and neighboring properties such as the Jersey City Plant.

82.     Grace has lost and will continue to lose all beneficial use of the Site and has incurred, and will continue to incur, taxes and other costs and damages in maintaining the Site during the prolonged investigation and remediation of the Chromium Contamination that was caused by Honeywell.

83.     The Chromium Contamination and presence of Chromium Waste at and near the Site and neighboring properties have substantially diminished the value of the Site, thereby damaging Grace.

84.     As a direct and proximate result of the nuisance Honeywell and Mutual have created, the soil, surface water, groundwater and sediments at and near the Site and neighboring properties remain contaminated and damaged, thereby significantly interfering with Grace's use and enjoyment of the Site and its private possessory right, and also interfering with a right common to the public.

85.     Honeywell and Mutual have created a private and/or public nuisance at and near the Site that Honeywell is strictly liable to abate and that subjects Honeywell to strict liability for damages.

86.     Under New Jersey common law, persons such as Honeywell and Mutual that have created a public and/or private nuisance are strictly liable for all costs and damages that are incurred or suffered as a result of such nuisance.

87.     Grace is entitled to recover all monetary damages incurred to date, plus damages that will be incurred during the period when the Site is being remediated.

88.     Grace is also entitled to an award of the entire cost required to remediate the Site completely or, at Grace's option, an injunctive order compelling Honeywell to remediate the Site completely and without further delay.

89.     Mutual's and Honeywell's activities constitute a continuing tort because the Chromium Contamination at and near the Site and neighboring properties results from a condition that can be physically removed or legally abated.

19

90.    The Chromium Contamination at and near the Site and neighboring properties has caused Grace to suffer irreparable harm.

WHEREFORE, Grace demands judgment against Honeywell for:

(i)    all past costs of response that Grace has incurred in connection with the Chromium Contamination at and near the Site;

(ii)    all future costs of response that Grace will incur in connection with the Chromium Contamination at and near the Site;

(iii)    all costs required to remediate the Site completely;

(iv)    all damages Grace has incurred and will incur in connection with the Site;

(v)    an injunctive order compelling Honeywell to remediate the Site completely without further delay;

(vi)    interest;

(vii)    attorneys' fees and costs; and

(viii)    such other relief as the Court may deem appropriate and just.

## COUNT VII
## (COMMON LAW NEGLIGENCE)

91.    Grace repeats and realleges each and every allegation contained in paragraphs 1 through 90 as if fully set forth herein.

92.    Honeywell and Mutual breached a duty of care to Grace by causing Chromium Contamination at the Site.

93.    Honeywell also breached a duty of care to Grace by failing to investigate, remediate and otherwise respond to the Contamination properly.

94.    Honeywell has been negligent in its response to the Contamination in many respects, including, but not limited to the following:  Honeywell has failed to undertake any removal to date; Honeywell has failed and refused to develop and implement a reasonable remediation plan; Honeywell has delayed, protracted, stalled, and hampered the investigation into the causes of the Contamination and the remedial actions required; Honeywell has asserted unfounded denials of responsibility for the Contamination and the duty to remediate, and has made unfounded assertions of the causes of damages attributable to the Contamination, including unfounded statements about the toxicity of the Chromium Waste and unfounded statements about the reasons for instability in the soils at the Site.

95.    Grace has suffered damages, and will continue to suffer damages, as a result of Honeywell's and Mutual's breaches of their duty of care.

96.    Grace has lost and will continue to lose all beneficial use of the Site and has incurred, and will continue to incur, taxes and other costs in maintaining the Site during the prolonged investigation and remediation of the Chromium Contamination that was caused by Honeywell and Mutual.

97.    The Chromium Contamination and presence of Chromium Waste at and near the Site have substantially diminished the value of the Site.

98.    The Chromium Contamination at the Site has caused Grace to suffer irreparable harm.

WHEREFORE, Grace demands judgment against Honeywell for:

(i)    all past costs of response that Grace has incurred in connection with the Chromium Contamination at the Site;

(ii)    all future costs of response that Grace will incur in connection with the Chromium Contamination at the Site;

(iii)    all costs required to remediate the Site completely;

(iv)    all damages Grace has incurred and will incur in connection with the Site;

(v)    an injunctive order compelling Honeywell to remediate the Site completely without further delay;

(vi)    interest;

(vii)    attorneys' fees and costs; and

(viii)    such other relief as the Court may deem appropriate and just.

## COUNT VIII
## (BREACH OF LICENSE AGREEMENT)

99.    Grace repeats and realleges each and every allegation contained in paragraphs 1 through 98 as if fully set forth herein.

100.    In June 1997, ECARG and Mutual entered into a License Agreement relating to the Site.

101.    In paragraph 4.1 of the License Agreement, Honeywell agreed to provide ECARG on a continuing basis with all documents and written communications between: (a) Honeywell or its agents and contractors; and (b) DEP or any other federal, state or local governmental agency, body, board or department whatsoever ("Governmental Agency"), concerning the Site, including without limitation any RI/FS work plan, sampling plan or cleanup plan (or their equivalents) submitted to and/or approved by DEP or any other Governmental Agency, and all amendments, additions and revisions thereto, and all financial assurance required by or provided to DEP, all required federal, state and local permits, licenses, certificates, manifests and approvals obtained

22

with regard to Honeywell's activities at the Site, and all correspondence, studies, reports and data relating to the environmental quality of, or matters concerning, the Site.

102.    In paragraph 4.3 of the License Agreement, Honeywell agreed to provide ECARG on a continuing basis with seventy-two (72) hours advance oral notice of all meetings relevant to the Site to be held between Honeywell and DEP or any other Governmental Agency.

103.    In paragraph 4.4 of the License Agreement, Honeywell agreed to provide ECARG on a continuing basis with copies of all investigative, sampling or cleanup proposals or reports concerning either activity to be performed at the Site or reporting on activity which has been performed at the Site at least seven (7) days prior to the time such proposals or reports are submitted to DEP or any other Governmental Agency.

104.    In paragraph 4.7 of the License Agreement, Honeywell agreed to, among other things, fully and completely comply with all applicable laws, rules and regulations in connection with its exercise of any of the rights granted under the License Agreement, including but not limited to Honeywell's performance of any remedial investigation at or near the Site and any other action taken by Honeywell in connection with or incidental to any administrative consent order, directive or other order relating to the Site.

105.    In paragraph 5.1 of the License Agreement, Honeywell agreed to, among other things, perform and supervise all work at the Site in a professional manner, and to plan, schedule and conduct all sampling, investigations, cleanups and other work at the Site in an expeditious and effective manner so as to ensure that the economic utility of the Site would not be diminished or disturbed in any material respect.

106.    In paragraph 5.2 of the License Agreement, Honeywell agreed to repair and restore any intentional or unintentional damage that occurred at the Site as part of any work that Honeywell or its contractors conducted at the Site.

107.    In paragraph 6 of the License Agreement, Honeywell indemnified Grace for, *inter alia*, any and all losses, damages, costs and expenses, including without limitation attorneys' fees and costs, arising from, out of or incident to any breach by Honeywell of the License Agreement.

108.    Honeywell has substantially and materially breached, and continues to substantially and materially breach the License Agreement by failing to comply with its obligations under paragraphs 4.1, 4.3, 4.4, 4.7, 5.1 and/or other paragraphs of the License Agreement.  Honeywell's breaches of the License Agreement include, but are not limited to:  (a) Honeywell's continuing failure to provide Grace with all documents and communications between Honeywell and any other person, entity or agency relating to the Site; (b) Honeywell's continuing failure to provide seventy-two hours advance oral notice of all meetings relevant to the Site to be held between Honeywell and DEP or any other governmental agency; (c) Honeywell's continuing efforts to silence or prevent Grace's participation in meetings and discussions with DEP on matters directly relevant to the Site; (d) Honeywell's continuing failure to provide Grace with copies of all investigative, sampling or cleanup proposals or reports relating to the Site at least seven days prior to their submittal to DEP or any other governmental agency; (e) Honeywell's continuing failure to fully and completely comply with all applicable laws, rules and regulations in connection with its performance of remedial investigation activities at and near the Site (e.g., Honeywell's failure to submit a remedial investigation report in compliance with all applicable requirements of New Jersey law); (f) Honeywell's failure to perform effective interim remedial measures at the Site to prevent the ongoing discharges of

24

chromium materials that are occurring into the Hackensack River; and (g) Honeywell's failure to conduct a full and expeditious cleanup of the Site, which has caused the economic utility of the Site to be diminished and disturbed in various material respects. Honeywell's failures to perform its obligations under paragraphs 4.1, 4.3, 4.4, 4.7, 5.1and/or other paragraphs of the License Agreement each constitute a separate, material breach of the License Agreement.

109.    Grace has incurred and will incur losses, damages, costs and expenses, including attorneys' fees and costs, arising from, out of or incident to Honeywell's material breaches of the License Agreement.

WHEREFORE, Grace demands a judgment from Honeywell awarding Grace:

(i)      past and future damages;

(ii)     an order requiring Honeywell to specifically perform all of its obligations under the License Agreement;

(iii)    interest and costs; and

(v)      such other relief as the Court may deem appropriate and just.

## COUNT IX
## (ANTICIPATORY BREACH OF LICENSE AGREEMENT)

110.    Grace repeats and realleges each and every allegation contained in paragraphs 1 through 109 as if fully set forth herein.

111.    In paragraph 5.2 of the License Agreement, Honeywell agreed to repair and restore any intentional or unintentional damage that occurred at the Site as part of any work that Honeywell or its contractors conducted at the Site.

112.    Honeywell has breached its obligation in paragraph 5.2 of the License Agreement by informing Grace that Honeywell has no intention of replacing the chromium waste that it removes from the Site with clean fill material when it conducts a cleanup, thereby destroying the

25

Site's economic utility.  Honeywell's statement that it will not perform its obligations under paragraph 5.2 is definite and unconditional.  Honeywell's failure to perform its obligations under paragraph 5.2 is a material breach of the License Agreement.

113.    Grace has incurred and will incur losses, damages, costs and expenses, including attorneys' fees and costs, arising from, out of or incident to Honeywell's failure to perform its obligations under paragraph 5.2 of the License Agreement.

114.    In paragraph 6 of the License Agreement, Honeywell indemnified Grace for, *inter alia*, any and all losses, damages, costs and expenses, including without limitation attorneys' fees and costs, arising from, out of or incident to any breach by Honeywell of paragraph 5.2 or any other provision of the License Agreement.

.  WHEREFORE, Grace demands a judgment from Honeywell awarding Grace:

(i)      all past and future damages;

(ii)     an order requiring Honeywell to specifically perform all of its obligations under paragraph 5.2 of the License Agreement, including but not limited to its obligation to promptly and completely replace any and all chromium material that is removed from the Site with clean fill material in the course of any remediation that it conducted;

(iii)    interest and costs; and

(iv)     such other relief as the Court may deem appropriate and just.

## COUNT X
## (COMMON LAW INDEMNIFICATION)

115.    Grace repeats and realleges each and every allegation contained in paragraphs 1 through 114 as if fully set forth herein.

26

116.    While Grace denies any liability for the Chromium Waste or Chromium Contamination at and near the Site, to the extent that Grace may be found liable to plaintiffs for any costs or damages in this action, such liability would be imputed, vicarious, secondary, and the sole responsibility of Honeywell, whose liability is primary and direct.

117.    Because Honeywell's predecessors dumped nearly a million tons of chromium waste at and near the Site with full knowledge of the substantial health and environmental hazards that would result, and failed to warn Grace or other subsequent purchasers or users of any of these hazards, there is a "special relationship" and ample "special circumstances" warranting a claim for indemnity.

WHEREFORE, Grace demands judgment against Honeywell for:

(i)      full, total and complete indemnification for any amounts for which Grace is found to be liable to plaintiffs in this action;

(ii)     attorneys' fees and costs; and

(iii)    such other relief as the Court may deem appropriate and just.

## COUNT XI
## (CONTRIBUTION UNDER NEW JERSEY LAW)

118.    Grace repeats and realleges each and every allegation contained in paragraphs 1 through 117 as if fully set forth herein.

119.    While Grace denies any liability for the Chromium Waste or Chromium Contamination at and near the Site, to the extent that Grace may be found liable to plaintiffs as a joint tort-feasor for any costs or damages in this action, such liability would be imputed, vicarious, secondary, and the sole responsibility of its joint tort-feasor Honeywell, whose liability is primary and direct.

27

WHEREFORE, Grace demands judgment against Honeywell for:

      (i)      statutory contribution pursuant to the statutory contribution laws of New Jersey;

      (ii)      attorneys' fees and costs; and

      (iii)      such other relief as the Court may deem appropriate and just.

## COUNT XII
## (DECLARATORY JUDGMENT)

120.    Grace repeats and realleges each and every allegation contained in paragraphs 1 through 119 as if fully set forth herein.

121.    An actual controversy currently exists between Grace and Honeywell with regard to Honeywell's liability under RCRA, CERCLA, the Spill Act, and New Jersey common law for the costs and damages that Grace has incurred, and will incur, in connection with the Chromium Contamination at the Site.

122.    Grace will continue to incur substantial costs and damages as a result of the Chromium Contamination that Honeywell and its predecessors caused at and near the Site.

123.    A declaratory judgment defining Honeywell's liability to Grace for these future costs and damages will prevent the need for multiple law suits in the future and provide a final resolution of this dispute between the parties.

WHEREFORE, Grace demands judgment against Honeywell pursuant to 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 9613(g)(2), and the Uniform Declaratory Judgments Law, N.J.S.A. § 2A:16-50 *et seq*:

(i)    declaring that Honeywell is liable to Grace for all of the costs and damages that Grace will incur in the future in connection with the Chromium Wastes and Chromium Contamination at the Site;

(ii)    awarding Grace its attorneys' fees and costs;

(iii)    awarding Grace interest; and

(iv)    awarding Grace such other relief that the Court may deem appropriate and just.

Respectfully submitted,

Dated: October 4, 2000

John M. Agnello
CARELLA, BYRNE, BAIN, GILFILLAN,
  CECCHI, STEWART & OLSTEIN
6 Becker Farm Road
Roseland, N.J. 07068
(973) 994-1700

Christopher H. Marraro
Richard E. Wallace, Jr.
William F. Hughes
WALLACE KING MARRARO & BRANSON PLLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
(202) 204-1000

Attorneys for Defendants/Cross-Claimants W.R.
Grace & Co., W.R. Grace, Ltd., and ECARG, Inc.

29