# EXHIBIT X

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HACKENSACK RIVERKEEPER, INC., ET AL.<br><br>Plaintiffs,<br><br>v.<br><br>HONEYWELL INTERNATIONAL INC., ET AL.<br><br>Defendants. | Civil Action No. 00-1451 (JAG) |

---

### BRIEF OF DEFENDANT HONEYWELL INTERNATIONAL INC. IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO RULES 12(b)(6) AND 12(b)(7)

---

LOWENSTEIN SANDLER PC
Attorneys at Law
65 Livingston Avenue
Roseland, NJ 07068-1791
(973) 597-2500
Attorneys for Honeywell International Inc.

Of Counsel:
David W. Field, Esq. (DWF2775)
James Stewart, Esq. (JS6329)

On the Brief:
Michael J. Caffrey (MJC3483)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES...................................................................................................ii

PRELIMINARY STATEMENT..........................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY........................................2

LEGAL ARGUMENT.........................................................................................................5

I.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO
      JOIN A NECESSARY PARTY.................................................................................5

II.   COUNTS II AND III SHOULD BE DISMISSED FOR FAILURE
      TO STATE A CLAIM UPON WHICH RELIEF CAN BE
      GRANTED.................................................................................................................7

      A.    The Relevant Standard..............................................................................7

      B.    Count II Should Be Dismissed Because No RCRA Permit Is
            Required....................................................................................................8

      C.    Count III Should Be Dismissed Because No Clean Water Act
            Permit Is Required...................................................................................11

            1.    WPCA Does Not Apply To Pre-Enactment
                  Discharges..................................................................................11

            2.    Honeywell Is Not An Operator Of The Site Under
                  The WPCA.................................................................................12

            3.    This Court Does Not Have Subject Matter
                  Jurisdiction Over The Federal Clean Water Act
                  Claim Because New Jersey Is Already Diligently
                  Prosecuting An Action Under Comparable State Law.................13

III.  PLAINTIFFS' DUPLICATIVE COMPLAINT SHOULD BE
      DISMISSED IN THE INTERESTS OF JUDICIAL ECONOMY.........................15

CONCLUSION.................................................................................................................17

# TABLE OF AUTHORITIES

Cases

Page

ACME Printing Ink Co. v. Menard, Inc., 870 F. Supp. 1465 (E.D. Wis. 1994) ............................9

Appalachian Power Co. v. Train, 545 F.2d 1351 (4th Cir. 1976) ................................13

Arkansas Wildlife Federation v. ICI Americas, Inc., 29 F.3d 376 (8th Cir. 1994) .......................14

Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149 (9th Cir. 1989) ........................................9

Associated Dry Goods Corporation v. Towers Financial Corporation, 920 F.2d 1121
    (2d Cir. 1990) .................................................................................................................6

Bermingham v. Sony Corp. of Am., Inc., 820 F. Supp. 834 (D.N.J. 1992), aff'd, 37
    F.3d 1485 (3d Cir. 1994) .................................................................................................7

Carol J. Walton v. Eaton Corporation, 563 F.2d 66 (3d Cir. 1977) ...............................................15

Chartrand v. Chrysler Corp., 785 F. Supp. 666 (E.D. Mich. 1992)..................................................9

Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S.
    837 (1984)......................................................................................................................10

Conley v. Gibson, 355 U.S. 41 (1957) .................................................................................................7

Connecticut Coastal Fishermen Ass'n. v. Remington Arms Co., 989 F.2d 1305
    (2d Cir. 1993) ..................................................................................................................9

In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig., 7 F.3d 357 (3d Cir.
    1993), cert. denied, 510 U.S. 1178, 114 S. Ct. 1219, 127 L. Ed. 2d 565
    (1994)................................................................................................................................8

Dykes v. Southeastern Penn. Transp. Auth., 68 F.3d 1564 (3d Cir. 1995) ....................................8

Dynatech Corporation v. Frigitronics, Inc., 318 F. Supp. 851 (D.Conn. 1970) .............................6

Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc., 484 U.S. 49 (1987) ..................9, 15

Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977) ....................5

Interfaith Community Organization v. AlliedSignal, Inc., 928 F. Supp. 1339 (D.N.J.
    1996) ......................................................................................................................... passim

Jones v. Inmont Corp., 584 F. Supp. 1425 (S.D. Ohio 1984)..........................................................9

Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250 (3d Cir. 1994) ...............................7

McClellan Ecological Seepage Situation v. Cheney, 763 F. Supp. 431 (E.D. Cal.
   1989), remanded on other grounds, 47 F.3d 325 (9th Cir. 1995) .......................................9

Natural Resources Defense Council, Inc. v. Chemical Mfrs. Ass'n, 470 U.S. 116
   (1985)...............................................................................................................................10

New Jersey Department of Envtl. Protection v. Arky's Auto Sales, 224 N.J. Super.
   200 (App. Div. 1988) .........................................................................................................11

New Jersey Dept. of Envtl. Protection v. I.T. Baker Co., 234 N.J. Super. 234 (Ch.
   Div. 1989), aff'd, 246 N.J. Super. 224 (App. Div. 1991) .............................................11, 12

North & South Rivers Watershed Ass'n v. Scituate, 949 F.2d 552 (1st Cir. 1991).....................14

O'Leary v. Moyer's Landfill, Inc., 523 F. Supp. 642 (E.D. Pa. 1981)............................................13

Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192 (3d Cir.
   1993), cert. denied, 114 S. Ct. 687 (1994) .........................................................................8

Poling v. K. Hovnanian Enterprises, 2000 WL 688485 12 (D.N.J.)...............................................5

Public Interest Group of New Jersey, Inc. v. GAF Corp., 770 F. Supp. 943
   (D.N.J. 1991) .....................................................................................................................15

Public Interest Research Group, Inc. v. Elf Atochem of N. Am., Inc., 817 F. Supp.
   1164 (D.N.J. 1993) ............................................................................................................14

Renz v. Schreiber, 832 F. Supp. 766 (D.N.J. 1993) .......................................................................3

Sierra Club v. Colorado Refining Co., 852 F. Supp. 1476 (D.Colo. 1994)...................................14

Southeastern Pennsylvania Transportation Authority v. Commonwealth, 1999 WL
   639946 6 (E.D.Pa.) .............................................................................................................5

Stanley v. Darlington County School District, 84 F.3d 707 (4th Cir. 1996)...................................6

Steel Valley Authority v. Union Switch and Signal Division, 809 F.2d 1006
   (3d Cir. 1987) .....................................................................................................................6

Sutcliffe Storage & Warehouse Co. United States, 162 F.2d 849 (1st Cir. 1947) .......................16

U.S. v. Rohm & Haas Co., 2 F.3d 1265 (3d Cir. 1993)................................................................9

United States v. CDMG Realty Co., 875 F. Supp. 1077 (D.N.J. 1995), vacated on
    other grounds, 96 F.3d 706 (3d Cir. 1996) ........................................................................11

United States v. Earth Sciences, Inc., 599 F.2d 368 (10th Cir. 1979) .........................................13

United States v. M.C.C. of Florida, 772 F.2d 1501 (11th Cir. 1985), vacated on
    other grounds, 481 U.S. 1034 (1987) ...............................................................................13

United States v. The Haytian Republic, 154 U.S. 118, 14 S. Ct. 992, 38 L. Ed. 930
    (1894)..................................................................................................................................15

Window Glass Cutters League of America v. American St. Gobain Corporation, 428
    F.2d 353 (3d Cir. 1970) ......................................................................................................6

## Statutes

N.J.S.A. § 58:10A-1, et seq. ......................................................................................................11

33 U.S.C. § 1251.........................................................................................................................11

33 U.S.C. §1319(g)(6) ...........................................................................................................13, 14

33 U.S.C. § 1342........................................................................................................................11

33 U.S.C. §§1365..........................................................................................................................2

42 U.S.C. §6925(a) .......................................................................................................................9

42 U.S.C. §6972(a)(1)(B)...........................................................................................................2, 8

## Rules and Regulations

45 Fed. Reg. 12,747 (Feb. 26, 1980)..............................................................................10

45 Fed. Reg. 33,068 (May 19, 1980)..............................................................................10

47 Fed. Reg. 17331 (1982)..............................................................................................13

53 Fed. Reg. 31,149 (August 17, 1980) ......................................................................9, 10

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 1, 2,
5, 7,
3

Fed. R. Civ. P. 12(b)(7) ................................................................................................................ 1, 2,
5, 7

Fed. R. Civ. P. 19 ........................................................................................................................... 5, 6
7

Rule 19 ............................................................................................................................................ 5, 7

Rule 19(a) ........................................................................................................................................ 5, 6

## Miscellaneous

2 Moore's Federal Practice, § 12.35 ............................................................................................. 5

WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1604, at 64
(2d ed. 1986) ...................................................................................................................... 6

## PRELIMINARY STATEMENT

Defendant Honeywell International Inc. ("Honeywell") submits this brief in support of its motion to dismiss plaintiffs Hackensack Riverkeeper, Inc. and William Sheehan's (hereinafter "Plaintiffs") Complaint. The three-count Complaint alleges that chromium contaminated residue was disposed at the Roosevelt Drive-In Site (hereinafter the "Site") prior to 1954 and seeks the imposition of penalties and the issuance of an injunction against Honeywell[1] and several other defendants.

Substantially the same three-count complaint was filed against Honeywell in 1995 by a different set of plaintiffs represented by the same attorneys who filed this Complaint. See Interfaith Community Organization v. AlliedSignal, Inc., 928 F. Supp. 1339 (D.N.J. 1996) ("ICO"). In ICO, Judge Lechner dismissed Counts II and III of the ICO complaint for failure to state a claim for which relief can be granted. For the reasons set forth in ICO and the other legal arguments set forth in this Brief, Counts II and III of the Complaint should likewise be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.

Furthermore, even though Plaintiffs ask this Court to issue an order concerning the Site, Plaintiffs have failed to name the current property owner, ECARG, Inc. ("ECARG"), as a defendant. ECARG is a necessary party with an interest in the outcome of this case. Complete relief cannot be accorded without ECARG's presence in the case. Accordingly, Plaintiffs' entire Complaint should be dismissed under Fed. R. Civ. P. 12(b)(7) for failure to join a necessary party.

This Complaint, attempting in effect to relitigate all issues originally raised in ICO, should be viewed skeptically. The Complaint was filed only after Honeywell moved to dismiss the ICO action because those plaintiffs there lacked standing. Honeywell, therefore, views this action as a last minute attempt to preserve the claims asserted in ICO by finding new plaintiffs.

---

[1] On or about December 1, 1999, AlliedSignal Inc. changed its name to Honeywell International Inc.

There is no reason why the legal standard that required dismissal of Counts II and III in ICO should not require dismissal of Counts II and III in this action.

In fact, this situation, in which the same counsel in ICO and this action are attempting to relitigate the same claims, including claims already dismissed, illustrates why these two cases should not be allowed to proceed simultaneously. Accordingly, for the reasons set forth below, and to avoid duplication and relitigation of numerous issues, this Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

This lawsuit was commenced by the filing of a Complaint in this Court on March 27, 2000. In lieu of filing an Answer, Honeywell moves to dismiss under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(7).

Plaintiffs' Complaint contains three counts. Count I, under 42 U.S.C. §6972(a)(1)(B) of the Resource Conservation and Recovery Act ("RCRA"), alleges that hazardous waste at the Site may present an imminent and substantial endangerment to health or the environment. Complaint at ¶¶ 60-63. Count II, under 42 U.S.C. §6972(a)(1)(A) of RCRA, alleges that a RCRA permit is required for Honeywell's supervision of Interim Remedial Measures at the Site. Complaint at ¶¶ 64-68. Count III, under 33 U.S.C. §§1365(a) and 1365(f)(6) of the Clean Water Act, asserts that a Clean Water Act permit is required for Honeywell's supervision of Interim Remedial Measures at the Site. Complaint at ¶¶ 69-73. In addition to other requests for relief, Plaintiffs request the Court to order Honeywell to remove and dispose of the hazardous waste allegedly existing at, or emanating from, the Site. Complaint at ¶ B.

This is the second time that a complaint has been filed against Honeywell with these same three counts concerning this Site. On August 1, 1995, Interfaith Community Organization and several individual plaintiffs filed substantially the same complaint against Honeywell, the Roned Realty defendants, W.R. Grace & Co., W.R. Grace, Ltd. and ECARG, Inc. See Interfaith Community Organ. V. AlliedSignal, Inc., 928 F. Supp. 1339 ("ICO"). The

ICO complaint, as in this Complaint, purported to be a citizen suit by "private attorneys' general" to enforce the laws of the United States. Both actions address the same legal claims. In ICO, this Court dismissed Counts II and III for failure to state a claim upon which relief can be granted. Id. Plaintiffs' attorneys also represent the ICO plaintiffs.

The facts on which these Counts are based, and which are assumed to be true for purposes of this motion, are as follows. Until 1954, Mutual Chemical Company of America ("Mutual") owned and operated a chromate production facility immediately to the west of what is now Route 440 in Jersey City, New Jersey. Complaint at ¶¶ 33; see also ICO, 928 F. Supp. at 1342. As part of its operations, Mutual deposited chromate process residue on property located immediately east of Route 440, now designated as Block 1290A, Lots 14D, 14H and 14J on the Tax Map of Jersey City (collectively, the "Roosevelt Drive-In Site" or the "Site"). Complaint at ¶¶ 4, 6 and 37; see also ICO, 928 F. Supp. at 1343.

In 1954, Mutual sold Lots 14D, 14H and 14J for use as a drive-in movie theater. Complaint at ¶ 33; see also ICO, 928 F. Supp. at 1342. Lot 14D is currently owned by either defendant Roned Realty of Jersey City, Inc. and/or defendant Roned Realty of Union City, Inc. Complaint at ¶ 6; see also ICO, 928 F. Supp. at 1343. Lots 14H and 14J are currently owned by ECARG. Complaint at ¶ 6; see also ICO, 928 F. Supp. at 1343.

The Complaint alleges no industrial activity at the Roosevelt Drive-In Site by Honeywell. Rather, the Complaint alleges that Honeywell is a current operator of the Site by virtue of the Interim Remedial Measures ("IRMs") and ongoing remediation studies that Honeywell is required to perform at the Site. Complaint at ¶¶ 35 and 71; see also ICO, 928 F. Supp. at 1343. Honeywell performed an IRM at the site pursuant to a December 1988 Directive issued by NJDEP under the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11, et seq. (the "Spill Act"). See Declaration of Michael J. Caffrey (hereinafter "Caffrey Declaration"), Exhibit A (attached is a copy of the New Jersey Department of Environmental Protection's 1988 Spill Act Directive); see also ICO, 928 F. Supp. at 1343. The Directive ordered Honeywell to undertake "interim remedial actions" at several sites where Mutual's waste

had allegedly been deposited, including the Roosevelt Drive-In Site. Id. The Directive provided that Honeywell "shall" submit an interim remedial work plan, and, upon receipt of Departmental approval, "immediately" commence implementation of interim remedial measures designed to prevent the discharge of chromium and its compounds into the environment. Id. NJDEP's Directive also required Honeywell to conduct periodic monitoring and maintenance of the IRMs. Id.

Pursuant to the NJDEP Directive, Honeywell conducted an IRM at the Site by regrading a portion of the Site and placing a polyvinyl chloride ("PVC") cover over that portion. See Complaint at ¶ 53; see also ICO, 928 F. Supp. at 1343. Thereafter, as part of the IRM and under NJDEP supervision, Honeywell installed a new bulkhead over the existing bulkhead along the Hackensack River. See Complaint at ¶ 54; see also ICO, 928 F. Supp. at 1343-44. When the initial synthetic cover at the Site was damaged by high winds, Honeywell repaired and reinforced that cover. See Complaint at ¶ 54; see also ICO, 928 F. Supp. at 1344.

In 1993, Honeywell entered into an Administrative Consent Order ("ACO") with NJDEP to investigate and remediate the Roosevelt Drive-In Site, among others. Complaint at ¶ 55; see also Caffrey Declaration, Exhibit B (attached is a copy of the June 17, 1993 ACO); ICO, 928 F. Supp. at 1344. The ACO establishes a process for conducting remedial investigation feasibility studies (RI/FS's) at each site and selecting an appropriate remedial action. Complaint at ¶ 55; see also ICO, 928 F. Supp. at 1344. Honeywell has committed $10 million to conduct RI/FS's for sites addressed in the ACO, including the Roosevelt Drive-In Site. Complaint at ¶ 55; see also ICO, 928 F. Supp. at 1344. Honeywell also has committed $50 million (plus any monies remaining from the $10 million RI/FS fund) to remediate sites addressed in the ACO, including the Roosevelt Drive-In Site. Complaint at ¶ 55; see also ICO, 928 F. Supp. at 1344. In addition, even if the selected remedies exceed amounts in the remediation fund, Honeywell has also agreed to implement the remedies in full, unless Honeywell disagrees with the appropriateness of the remedies selected, in which event Honeywell must still fund the remedies to the full amount of the remediation fund. ICO, 928 F. Supp. at 1344.

-4-

## LEGAL ARGUMENT

### I.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO JOIN A NECESSARY PARTY

Rule 12(b)(7) of the Federal Rules of Civil Procedure provides that a Complaint must be dismissed when it "fail[s] to join a party under Rule 19." See Poling v. K. Hovnanian Enterprises, 2000 WL 688485 *12 (D.N.J.) (granting motion to dismiss for plaintiff's failure to name co-trustees of trust as necessary defendants); see also 2 Moore's Federal Practice, § 12.35 ("when a person needed for just adjudication (as set forth in Rule 19) has not been included in an action, a party may move for dismissal under 12(b)(7)"). The party moving under Rule 12(b)(7) has the burden of showing that the absent person should be joined under Rule 19. Id.

Under Rule 19(a) ("persons to be joined if feasible"), a party is necessary "if (1) in the person's absence complete relief cannot be accorded among those already parties; or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." The Supreme Court has defined necessary parties as "persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it." Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977) (quoting Shields v. Barrow, 17 How. 130, 139, 15 L.Ed. 158 (1855) and citing Notes of Advisory Committee on 1966 Amendment to Rule 19). Thus, "a necessary party is one whose rights or interests are directly affected by the subject matter of the litigation." Southeastern Pennsylvania Transportation Authority v. Commonwealth, 1999 WL 639946 *6 (E.D.Pa.).

Courts have held that where the property owner has not been joined and the relief sought involves activities at real property, the property owner is a necessary party under Rule 19(a). See e.g., Steel Valley Authority v. Union Switch and Signal Division, 809 F.2d 1006, 1014 (3d Cir. 1987) (property owner held necessary party because complete relief, in the form of an injunction to preserve a plant in operable condition, could not be accorded without joining the property owner); Associated Dry Goods Corporation v. Towers Financial Corporation, 920 F.2d 1121, 1124 (2d Cir. 1990) (a property owner was held to be a necessary party, because the owner's consent to the relief sought, increase in the electrical capacity of the office building, was required.)

"Once it has been decided that a person whose joinder is feasible should be brought into the action, the claimant should be given a reasonable opportunity to add that person. If he fails to join him, the court should order the joinder itself or it may direct the action to be dismissed for noncompliance with the original order." 7 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1604, at 64 (2d ed. 1986); see also Stanley v. Darlington County School District, 84 F.3d 707, 714 (4th Cir. 1996) (plaintiff given choice of adding party or suffering dismissal of the complaint) (citations omitted); Window Glass Cutters League of America v. American St. Gobain Corporation, 428 F.2d. 353, 355 (3d Cir. 1970) (dismissal upheld after plaintiff refused to join necessary party); Dynatech Corporation v. Frigitronics, Inc., 318 F. Supp. 851, 854 (D.Conn. 1970) (complaint ordered dismissed within sixty days unless plaintiff joins necessary party).

ECARG, the owner of the Site, was not named as a defendant in the Complaint even though the Complaint concerns alleged contamination at and emanating from the Site, and the Complaint requests this Court to order Honeywell to perform certain activities at the Site, i.e., remediate chromate production wastes at the Site. Clearly, as the Site owner, ECARG has an interest in the outcome of this litigation, and ECARG's ability to protect its interest will be impaired by its absence from this case. ECARG is a necessary party under Fed. R. Civ. P. 19(a)(2).

Furthermore, if Plaintiffs were successful in this action, the Court may order Honeywell to perform certain acts on ECARG's property, which would require ECARG's consent. Absent ECARG being named as a party to this litigation, this Court would not have the ability to order ECARG to consent to Honeywell's implementation of any future Court Order. ECARG is also a necessary party under Fed. R. Civ. P. 19(a)(1) because complete relief can not be accorded absent ECARG's participation in this case.

Honeywell notes that ECARG is a defendant in the ICO action, which, as set forth above, addresses the exact same issues. Obviously, Plaintiffs here made a deliberate, tactical decision not to name ECARG. Their conscious decision, however, is fatal to their claim and by choosing willingly not to join ECARG, Plaintiffs have eliminated a necessary party from the action. Accordingly, under Fed. R. Civ. P. 12(b)(7), Plaintiffs' entire Complaint should be dismissed for failure to join a party under Rule 19.

## II.    COUNTS II AND III SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Counts II and III are the same two permit claims that Judge Lechner dismissed for failure to state a claim upon which relief can be granted. ICO, 928 F. Supp. at 1350,1353.

### A.    The Relevant Standard.

Fed. R. Civ. P. 12(b)(6) provides that a Complaint must be dismissed when it "fail[s] to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the court must take all the well pleaded allegations of the complaint as true. Conley v. Gibson, 355 U.S. 41, 45-46 (1957), and all reasonable inferences that can be drawn in a light most favorable to plaintiffs. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Bermingham v. Sony Corp. of Am., Inc., 820 F. Supp. 834, 846 (D.N.J. 1992), aff'd, 37 F.3d 1485 (3d Cir. 1994). Legal conclusions, however, made in the guise of factual allegations are not given the presumption of truthfulness. Bermingham, 820 F. Supp. at 846 (citing cases).

Attached to the Caffrey Declaration are the 1988 Directive, Exhibit A, and the 1993 ACO, Exhibit B. While these documents are not attached to the Complaint, they are nonetheless properly before the Court on Honeywell's Rule 12(b)(6) motion to dismiss. "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on those documents." ICO, 928 F. Supp. 1345, citing Dykes v. Southeastern Penn. Transp. Auth., 68 F.3d 1564, 1567, n.3 (3d Cir. 1995); In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig., 7 F.3d 357, 368, n.9 (3d Cir. 1993), cert. denied, 510 U.S. 1178, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 114 S.Ct. 687 (1994). Such documents can be those "specifically referred to in the Complaint or other public records on which the claim is based, such as letter decisions of public agencies." Id. citing Pension Benefit, 998 F.2d at 1197. In addition, "a court can refer to such documents on which the Complaint is based without converting a 12(b)(6) motion into one for summary judgment because 'reference to the full texts is necessary to place the defendants' [actions] cited by plaintiffs in their . . . Complaint into the proper context." Id., quoting Renz v. Schreiber, 832 F. Supp. 766, 771 (D.N.J. 1993).

Here, plaintiffs specifically refer and quote excerpted portions of the 1993 ACO in their Complaint. Complaint at ¶ 63. Thus, consideration of the ACO on this motion is proper. Moreover, plaintiffs rely significantly in their Complaint on the IRMs that Allied performed pursuant to the 1988 Directive. See Complaint at ¶¶ 61-62. Thus, consideration of the IRM Directive on this motion is appropriate, particularly as the 1988 Directive puts Honeywell's IRM conduct into the proper context.

## B.    Count II Should Be Dismissed Because No RCRA Permit Is Required.

Section 6972(a)(1)(A) of RCRA, under which Count II is pled, provides that any person may commence a civil action "against any person . . . who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition or order which has become

effective pursuant to this chapter" (emphasis added). This clear statutory language applies only to current violations of RCRA. See ICO, 928 F. Supp. at 1350 (this Court held that "[t]his citizen suit provision does not apply to treatment, storage or disposal of hazardous wastes that occurred prior to 19 November 1980"); Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc., 484 U.S. 49, 64 (1987) (stating that Section 6972(a)(1)(A) of RCRA "authorizes only prospective relief"); Connecticut Coastal Fishermen Ass'n. v. Remington Arms Co., 989 F.2d 1305, 1315 (2d Cir. 1993) (holding that past disposal of lead shot in the Long Island sound created no current violation supporting a citizen suit under Section 6972(a)(1)(A) of RCRA).

        Plaintiffs' Complaint demonstrates that no chromate waste has been disposed of at the Site since 1954, when the site was sold for development as an outdoor movie theater. Complaint at ¶ 38. Moreover, RCRA was enacted in 1976, and its permit requirements did not go into effect until November 19, 1980. 42 U.S.C. §6925(a); 53 Fed. Reg. 31,149 (August 17, 1980). Because all disposal of chromate waste at the Site ceased over two decades before RCRA's effective date, the Site is not a RCRA facility for which a RCRA permit is required. See U.S. v. Rohm & Haas Co., 2 F.3d 1265, 1269 (3d Cir. 1993) (RCRA's's prospective permitting program applies only to "active" facilities and to facilities that closed after November 19, 1980); ACME Printing Ink Co. v. Menard, Inc., 870 F. Supp. 1465, 1476-78 (E.D. Wis. 1994) (Section 9272(a)(1)(A) citizen suit provision does not apply to inactive hazardous waste site); Chartrand v. Chrysler Corp., 785 F. Supp. 666, 670 (E.D. Mich. 1992) (where waste was sent to site before the effective date of RCRA, plaintiffs failed to state a claim under section 6972(a)(1)(A) of RCRA); McClellan Ecological Seepage Situation v. Cheney, 763 F. Supp. 431, 433-34 (E.D. Cal. 1989), remanded on other grounds, 47 F.3d 325 (9th Cir. 1995) (RCRA permit not required for waste pits where no waste had been deposited after RCRA's effective date); Jones v. Inmont Corp., 584 F. Supp. 1425, 1431 (S.D. Ohio 1984) (disposal activities that allegedly occurred in 1973 and 1974 could not support citizen suit under section 6972(a)(1)(A) of RCRA); Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1158-59 (9th Cir. 1989) (section 6972(a)(1)(A)

does not impose retroactive liability and does not apply to facilities at which disposal ceased in the 1970s).

Plaintiffs seek to circumvent this limitation on RCRA's permitting provisions alleging that, "by virtue of its supervision of Interim Remedial Measures" at the [Site] from 1989 to the present, Honeywell "continue[s] to store and/or dispose" of hazardous waste without a permit. Complaint at ¶¶ 66-67. However, Honeywell's alleged supervision of the IRMs, as a matter of law, constitutes neither "storage" nor "disposal" of hazardous waste for which a permit is required. ICO, 928 F. Supp. At 1350.

EPA has consistently taken the position that RCRA permits are not required for inactive hazardous waste disposal sites that stopped accepting hazardous waste before RCRA was enacted. See 53 Fed. Reg. 31,149 (Aug. 17, 1988) ("only facilities where hazardous waste is intentionally placed into land or water after November 19, 1980 require a RCRA disposal permit"); 45 Fed. Reg. 33,068 (May 19, 1980) ("[t]he Agency's intent is not to regulate under subtitle C portions of facilities closed before the effective date of the regulations"); 45 Fed. Reg. 12,747 (Feb. 26, 1980) ("RCRA subtitle C Regulations do not cover . . . abandoned sites"). Pursuant to the EPA's own interpretation of RCRA, the Site is not a facility for which a RCRA permit is required. That interpretation is entitled to substantial deference and cannot be disturbed unless contrary to the statute or irrational. See Natural Resources Defense Council, Inc. v. Chemical Mfrs. Ass'n, 470 U.S. 116, 125 (1985); Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44 (1984); see also McClellan Ecological Seepage Situation v. Cheney, supra, 763 F. Supp. at 434 (holding that RCRA permit was not required where only activity at inactive waste pit after November 19, 1980 was remedial in nature). This Court determined that "[t]he EPA approach to RCRA permits for facilities closed prior to 19 November 1980 is reasonable" and dismissed Count II of the ICO complaint. ICO, 928 F. Supp. 1339.

Accordingly, based on this Court's prior rulings and well established caselaw, Count II of the Complaint should be dismissed.

C.    Count III Should Be Dismissed Because No Clean Water Act
Permit Is Required.

Similarly, there is no legal support for plaintiffs' allegation in Count III that
Honeywell must obtain a Clean Water Act permit to supervise interim remedial measures at the
Site. The permit in question here would be authorized and issued by the NJDEP as a New Jersey
Pollutant Discharge Elimination System ("NJPDES") Permit. Under the Federal Water Pollution
Control Act, 33 U.S.C. § 1251, et seq. the federal National Pollutant Discharge Elimination
System ("NPDES") permit program can be delegated to the states. 33 U.S.C. § 1342. EPA
delegated the permit program to New Jersey in 1982. New Jersey's program is, in many ways,
more stringent that the federal program. See Water Pollution Control Act ("WPCA"), N.J.S.A.
§ 58:10A-1, et seq.

1.    WPCA Does Not Apply To Pre-Enactment Discharges.

Plaintiffs' claim is not that the disposal of the chromate waste through 1954
requires a permit. Nor could it be, for such actions predated the permit obligation by decades,
and cannot form the basis for a current permit obligation. Cf. New Jersey Department of Envtl.
Protection v. Arky's Auto Sales, 224 N.J. Super. 200, 207 (App. Div. 1988) (continuing
contamination from an old spill is not a present discharge).

Count III must be dismissed because it fails to allege an actionable "discharge" as
defined under the NJDPES program since the alleged discharge is derived from continued
leaching from pre-1954 disposal of chromium-bearing waste at the Site. ICO, 928 F. Supp. at
1353, citing New Jersey Dept. of Envtl. Protection v. J.T. Baker Co., 234 N.J.Super. 234, 246
(Ch. Div. 1989), aff'd 246 N.J. Super. 224 (App. Div. 1991); United States v. CDMG Realty Co.,
875 F. Supp. 1077, 1087-88 (D.N.J. 1995), vacated on other grounds, 96 F.3d 706 (3d Cir. 1996)
("'discharge' under New Jersey WPCA does not include the mere continued leaching or escaping
of contaminants into water").

The facts in Baker are substantially the same as the facts alleged in Plaintiffs'
Complaint. NJDEP had sought to fine a chemical manufacturer under the New Jersey WPCA for

-11-

certain pre-enactment discharges of hazardous substances into the soil and groundwater underlying and surrounding Baker's facility "which [were] and [are] discharging into the Delaware River." 234 N.J.Super at 239. The court held that as a matter of law, "a discharge under the [New Jersey] WPCA is . . . a new release from a contained area." Id. Conversely, the Baker court noted that the "continued leaching, contamination, flowing out and issuing of pre-enactment discharges from the soil into the waters of this State" is not a discharge under the New Jersey WPCA." Id. Likewise, here the alleged discharge is from the continued leaching, contamination and flowing out and issuing of pre-1954 disposal of chromium bearing waste.

Accordingly, based on this Court's prior ruling and other state and federal court decisions, Count III should be dismissed for failure to state a claim for which relief can be granted.

2.    Honeywell Is Not An Operator Of The Site Under The WPCA.

The allegations in the Complaint show that Honeywell is complying with its obligations under the 1988 Directive and the 1993 ACO. They do not show sufficient presence or control over the facility to make Honeywell an operator required to obtain a discharge permit. Plaintiffs concede Honeywell has no ownership interest in the Site. Complaint at ¶ 6. They make no allegation that Honeywell's IRMs caused a discharge or contributed further contamination to any pre-existing discharge. Nor do they allege that Honeywell manages the Site, has the ability to control or conduct business activities at the Site or otherwise operates any commercial or business activities at the Site. The absence of such allegations shows that Honeywell is not an operator at the Site. See N.J.A.C. 7:14A-1.2 (definition of "operating entity" and "operator" under New Jersey's Water Pollution Control Act permitting provisions is "any person who . . . has primary management and operational decision-making authority over any part of a facility").

Caselaw indicates that much greater activity after the effective date of the CWA's permit obligation is required to make one an operator who must obtain a permit. The requisite

activities typically include depositing pollutants in a new area. <u>United States v. M.C.C. of Florida</u>, 772 F.2d 1501, 1505-06 (11th Cir. 1985) (tugs redepositing dirt from bottom of water body onto beds of water grass are point sources discharging dirt), <u>vacated on other grounds</u>, 481 U.S. 1034 (1987); <u>see also United States v. Earth Sciences, Inc.</u>, 599 F.2d 368, 374 (10th Cir. 1979); <u>Appalachian Power Co. v. Train</u>, 545 F.2d 1351, 1372 (4th Cir. 1976); <u>O'Leary v. Moyer's Landfill, Inc.</u>, 523 F. Supp. 642, 655 (E.D. Pa. 1981).

Honeywell conducted no such activities, nor is it alleged to have conducted such activities, at the Site. The 1988 Directive required Honeywell to implement and monitor "interim remedial measures" to "prevent the discharge of chromium and its compounds." Directive at ¶ 31(a). These activities were remedial in nature. Had Honeywell ignored the Directive and the Directive's finding of a discharge of chromium, it would have no permit obligation. Honeywell should not be subject to a permit obligation when it acted to comply with the Directive and did not otherwise act to cause or contribute to a discharge through its IRM activity. No court has ever held that supervision of an IRM pursuant to a Spill Act Directive under NJDEP oversight requires a Clean Water Act permit. This Court should not do so. Indeed, such a holding would discourage companies that neither own nor operate facilities from participating in remediation.

3. **This Court Does Not Have Subject Matter Jurisdiction Over The Federal Clean Water Act Claim Because New Jersey Is Already Diligently Prosecuting An Action Under Comparable State Law.**

The Federal Clean Water Act precludes citizens' suits when the state has commenced and is diligently prosecuting an action under a state law comparable to the FWPCA. 33 U.S.C. §1319(g)(6). In the present case, New Jersey, through the NJDEP, entered into an Administrative Consent Order with Honeywell pursuant to, *inter alia*, the WPCA. N.J.S.A. 58:10A-1 et seq. See ACO, ¶ 1. Not only is the WPCA comparable to the Clean Water Act, it mirrors the federal law and is the state statute which provides for the issuance of water permits pursuant to the federal delegation of the permitting authority program. See 47 Fed. Reg. 17331

(1982) (EPA delegated responsibility to the NJDEP to administer the NPDES program in New Jersey.)

Accordingly, the only issues are whether the existence of an ACO constitutes an action "commenced" and "diligently prosecuted" under a comparable state statute. The Eighth Circuit addressed these precise issues and held that an Arkansas Consent Administrate Order: (1) constitutes "commencement" of an action for purposes of 33 U.S.C. §1319(g)(6); and (2) that the state "diligently prosecuted" the action. Arkansas Wildlife Federation v. ICI Americas, Inc., 29 F.3d 376 (8th Cir. 1994); see also North & South Rivers Watershed Ass'n v. Scituate, 949 F.2d 552, 557 (1st Cir. 1991) (upholding dismissal of CWA citizen suit seeking civil penalties and declaratory and injunctive relief based on the state's "substantial, considered, and ongoing response" to alleged violations); Sierra Club v. Colorado Refining Co., 852 F. Supp. 1476 (D.Colo. 1994). Moreover, this court interpreting the WPCA has also, in dicta, stated that an Administrative Order and Penalty Assessment constitutes the "commencement" of an action for 33 U.S.C. §1319(g)(6) purposes. Public Interest Research Group, Inc. v. Elf Atochem of N. Am., Inc., 817 F. Supp. 1164, 1172-73 (D.N.J. 1993). Accordingly, as a matter of law, the signed ACO constitutes "commencement" of an action by the State of New Jersey.

The State of New Jersey is also "diligently prosecuting" this action. In the first instance, there is not a single allegation that the NJDEP is performing its functions deficiently in this case. Moreover, the Amended Complaint does not allege that the NJDEP has been slow or negligent in overseeing Honeywell's remedial efforts. In ICI Americas, responding to plaintiff's contentions that Arkansas delayed cleanup and did not issue appropriate fines, the Eighth Circuit reasoned that states should be given wide discretion where, such as here, they are acting in the public interest. Id. at 381.

Here, NJDEP is overseeing the remediation and has considered and rejected the very permitting issues that Count III raises. Plaintiffs in ICO directly asked NJDEP to issue a permit to Honeywell for alleged surface water discharges at the Site and NJDEP responded that none was required. See Caffrey Declaration, Exhibit C (attached is a copy of NJDEP's October

28, 1999 letter). Having lost that issue with he NJDEP, Plaintiffs' counsel are, in effect, asking this Court to interfere with and overrule NJDEP's decision, by using this Complaint as a means to present the issue.[2]

The United States Supreme Court has recognized that Congress intended citizen suits brought pursuant to the Clean Water Act play an "interstitial," rather than a "potentially intrusive" role; and that such suits should be allowed only when the federal, state, and local agencies fail to exercise their enforcement responsibility. Gwaltney of Smithfield v. Chesapeake Bay Found., 484 U.S. 49, 60-61 (1987). In this case, there is no allegation that NJDEP is not diligently enforcing the remediation pursuant to the ACO. Rather, the undisputed facts demonstrate that Honeywell is performing remedial efforts pursuant to NJDEP enforcement and oversight. For these reasons, this Court does not have subject matter jurisdiction of Count III under the Clean Water Act.

## III.   PLAINTIFFS' DUPLICATIVE COMPLAINT SHOULD BE DISMISSED IN THE INTERESTS OF JUDICIAL ECONOMY.

Courts have long held that, in the interest of judicial economy, duplicative claims, such as here, may be dismissed without prejudice or stayed pending the outcome of the original action. A plaintiffs "has no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." Carol J. Walton v. Eaton Corporation, 563 F.2d 66, 70 (3d Cir. 1977) citing United States v. The Haytian Republic, 154 U.S. 118, 123-124, 14 S.Ct. 992, 993, 38 L.Ed. 930 (1894) (other citations omitted). "There is no reason why a court should be bothered or a litigant harassed with duplicating

---

2    The facts alleged in Plaintiffs' Complaint are substantially different than the facts in Public Interest Group of New Jersey, Inc. v. GAF Corp., 770 F. Supp. 943, 951 (D.N.J. 1991), wherein this Court held that an ACO was not comparable to a federal enforcement action because there was no public notice or opportunity for comment. Here, however, Plaintiffs' counsel had an opportunity to comment on permit and other Clean Water Act issues relating to the Site and NJDEP has rejected their comments.

lawsuits on the same docket." Sutcliffe Storage & Warehouse Co. United States, 162 F.2d 849, 851 (1st Cir. 1947) (applying the doctrine against splitting claims, and holding that the government can not bring separate actions for rent due under different time periods against the same defendant for the same realty.)

As citizen suit plaintiffs, the Plaintiffs here and the ICO plaintiffs are effectively the same plaintiff, enforcing the same statute, seeking the same relief, against the same defendant. As a result, in the interests of judicial economy, the Complaint here should be dismissed, Count I without prejudice and Counts II and III with prejudice.

## CONCLUSION

For the reasons stated herein, plaintiffs' Complaint fails to state a claim upon which relief may be granted. Plaintiffs' efforts to collaterally attack ongoing remedial activities at the Site should be rejected, and the complaint should be dismissed.

Respectfully submitted,

**LOWENSTEIN SANDLER** PC
Attorneys for Defendant
Attorneys for Honeywell International Inc.

By: _James Stewart_
    James Stewart (JS6329)

Dated: June 16, 2000