# EXHIBIT Z

EDWARD LLOYD (EL 2633)
416 Clark Street
South Orange. New Jersey 07079
(973) 353-5695

BRUCE J. TERRIS (BT 9359)
CAROLYN SMITH PRAVLIK (CSP 4481)
Terris. Pravlik & Millian. LLP
1121 12th Street. N.W.
Washington. D.C. 20005-4632
(202) 682-2100

Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HACKENSACK RIVERKEEPER, INC.<br>1000 River Road - T090C<br>Teaneck. New Jersey 07666 | )<br>)<br>)<br>) |
| WILLIAM SHEEHAN<br>323 Centre Avenue<br>Secaucus. New Jersey 07094<br>Plaintiffs. | )<br>)<br>)<br>) HON.   JOSEPH   A.<br>)GREENAWAY, JR. |
| v. | )<br>) Civil No. 00-1451 |
| HONEYWELL INTERNATIONAL. INC.(formerly<br>known as AlliedSignal, Inc.)<br>101 Columbia Road<br>Morristown. New Jersey 07692 | )<br>)<br>)<br>)<br>) |
| RONED REALTY OF JERSEY CITY. INC.<br>3 Horizon Rd. Apt. 1020<br>Fort Lee. New Jersey 07024 | )<br>)<br>)<br>) |
| RONED REALTY OF UNION CITY. INC.<br>74 Route 17<br>Hasbrouck Heights. New Jersey  07604 | )<br>)<br>)<br>) |
| W.R. GRACE. LTD.<br>Northdale House<br>N. Circular Rd.<br>London NW10 4 UH<br>United Kingdom | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## AMENDED COMPLAINT

## INTRODUCTION

1.      This is a citizen's suit brought to clean up the Roosevelt Drive In site in Jersey City, New Jersey, the dumping site of the hazardous waste, including hazardous chromium-bearing waste, generated by the Chromate Plant on Route 440 and transported across the street to the Roosevelt Drive In site.

2.      This citizen's suit is brought under Section 7002(a)(1)(A) of the Resource Conservation and Recovery Act (hereafter "RCRA"), 42 U.S.C. 6972(a)(1), Section 7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(B), and Section 505 of the Federal Water Pollution Control Act (hereafter "the Water Act"), 33 U.S.C. 1365, to remedy the storage and/or disposal of hazardous waste, including hazardous chromium-bearing waste, by defendants in violation of RCRA at a site known as the Roosevelt Drive In site in Jersey City, New Jersey, and to remedy the discharge of pollutants to surface waters, namely the Hackensack River, without a permit, in violation of the Water Act.  To remedy defendants' violations, plaintiffs seek a declaratory judgment, injunctive relief, and civil penalties.  Plaintiffs also seek the award of costs, including attorneys' and expert witnesses fees.

## DEFINITIONS

3.      "Honeywell" shall refer to defendant Honeywell International, Inc. and its predecessors, including AlliedSignal, Inc. (hereafter "AlliedSignal") and Mutual Chemical Company of America (hereafter "Mutual").

4.      "Chromate Plant" shall mean the chromate chemical production plant that was located on West Side Avenue and Route 440, in Jersey City, New Jersey, across Route 440 from the Roosevelt Drive In site.

2

5.    "Facility" shall refer to the Roosevelt Drive In site.

6.    "Grace Companies" shall refer jointly to W.R. Grace & Company and its subsidiaries, defendant W.R. Grace, Ltd., and ECARG, Inc.

7.    "Roosevelt Drive In site" shall refer to the property designated as lots 14D, 14H, and 14J, Tax Block 1290.A, Jersey City, Hudson County, New Jersey. Lot 14D is owned by one of defendants, Roned Realty of Jersey City, Inc. or Roned Realty of Union City, Inc. Lots 14H and 14J are owned by ECARG, Inc.

8.    "Roned" shall refer jointly to defendant Roned Realty of Jersey City, Inc. and defendant Roned Realty of Union City, Inc.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction of claims brought under RCRA pursuant to Section 7002(a) of RCRA, 42 U.S.C. 6972(a). This Court has subject matter jurisdiction of claims brought under the Water Act, pursuant to Section 505(a) of the Water Act, 33 U.S.C. 1365(a).

10.    On December 20, 1999, plaintiffs Hackensack Riverkeeper, Inc. and William Sheehan gave notice to defendant Honeywell as follows:

11.    Pursuant to Section 7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(B), the hazardous waste, including chromium-bearing waste, stored and/or disposed of at the Roosevelt Drive In site constitutes an imminent and substantial endangerment to health and the environment in violation of Section 7002(a)(1)(B);

12.    Pursuant to Section 7002(b)(1) of RCRA, 42 U.S.C. 6972(b)(1), defendant Honeywell is storing and/or disposing of hazardous waste, including hazardous chromium-bearing waste, at the Roosevelt Drive In site without a permit in violation of Section 3005 of RCRA, 42 U.S.C. 6925; and

13.    Pursuant to Section 505(b) of the Water Act, 33 U.S.C. 1365(b), defendant Honeywell is discharging pollutants to the Hackensack River without a permit in violation of Sections 301(a) and 402 of the Water Act, 33 U.S.C. 1311(a), 1342. A copy of this notice is attached as Appendix A.

14.    On December 20, 1999, plaintiffs Hackensack Riverkeeper, Inc. and William Sheehan gave notice to defendant Roned as follows:

15.    Pursuant to Section 7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(B), the hazardous waste, including chromium-bearing waste, stored and/or disposed of at the Roosevelt Drive In site constitutes an imminent and substantial endangerment to health and the environment in violation of Section 7002(a)(1)(B):

16.    Pursuant to Section 7002(b)(1) of RCRA, 42 U.S.C. 6972(b)(1), defendant Roned is storing and/or disposing of hazardous waste, including hazardous chromium-bearing waste, at the Roosevelt Drive In site without a permit in violation of Section 3005 of RCRA, 42 U.S.C. 6925; and

17.    Pursuant to Section 505(b) of the Water Act, 33 U.S.C. 1365(b), defendant Roned is discharging pollutants to the Hackensack River without a permit in violation of Sections 301(a) and 402 of the Water Act, 33 U.S.C. 1311(a), 1342. A copy of this notice is attached as Appendix A.

18.    On February 28, 2001, plaintiffs Hackensack Riverkeeper, Inc. and William Sheehan gave notice to the W.R. Grace, Ltd. as follows[1]:

19.    Pursuant to Section 7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(B), the hazardous waste, including chromium-bearing waste, stored and/or disposed of at the Roosevelt Drive In site

---

[1] Plaintiffs also gave notice to W.R. Grace & Co. and ECARG, Inc. on the same day. W.R. Grace & Co. and ECARG, Inc. filed for bankruptcy on or about March 30, 2001, which stays the commencement of any actions against those companies. Plaintiffs intend to file proofs of claim with the bankruptcy court for their claims related to this action.

constitutes an imminent and substantial endangerment to health and the environment in violation of Section 7002(a)(1)(B):

20.    Pursuant to Section 7002(b)(1) of RCRA, 42 U.S.C. 6972(b)(1), the Grace Companies are storing and/or disposing of hazardous waste, including hazardous chromium-bearing waste, at the Roosevelt Drive In site without a permit in violation of Section 3005 of RCRA, 42 U.S.C. 6925; and

21.    Pursuant to Section 505(b) of the Water Act, 33 U.S.C. 1365(b), the Grace Companies are discharging pollutants to the Hackensack River without a permit in violation of Sections 301(a) and 402 of the Water Act, 33 U.S.C. 1311(a), 1342. A copy of this notice is attached as Appendix B.

22.    More than 90 days have passed since notice was served that the storage and/or disposal of hazardous wastes at the Roosevelt Drive In site constitutes a substantial and imminent endangerment to health and the environment in violation of Section 7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(B), and, to the best of plaintiffs' knowledge, the United States Environmental Protection Agency (hereafter "EPA") has not commenced and is not diligently prosecuting any action under Section 7003 of RCRA, 42 U.S.C. 6973, or under Section 106 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (hereafter "CERCLA"), 42 U.S.C. 9606; is not engaging in a removal action under Section 104 of CERCLA, 42 U.S.C. 9604; has not incurred costs to initiate a Remedial Investigation and Feasibility Study (hereafter "RI/FS") under Section 104 of CERCLA, 42 U.S.C. 9604, and is not diligently proceeding with a remedial action under CERCLA; and has not obtained a court order or issued an administrative order under Section 106 of CERCLA, 42 U.S.C. 9606, or under Section 7003 of RCRA, 42 U.S.C. 6973.

pursuant to which a responsible party is diligently conducting a removal action, a RI/FS, or proceeding with a remedial action.

23.     More than 90 days have passed since notice was served that the storage and/or disposal of hazardous wastes at the Roosevelt Drive In site constitutes a substantial and imminent endangerment to health and the environment in violation of Section 7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(B), and, to the best of plaintiffs' knowledge, the State has not commenced and is not diligently prosecuting any action under Section 7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(B); is not actually engaging in a removal action under Section 104 of CERCLA, 42 U.S.C. 9604; and has not incurred costs to initiate a RI/FS under Section 104 of CERCLA, 42 U.S.C. 9604, and is not diligently proceeding with a remedial action under CERCLA.

24.     More than 60 days have passed since notice was served that defendants are storing and/or disposing of hazardous waste at the Roosevelt Drive In site without a permit in violation of Section 3005 of RCRA, 42 U.S.C. 6925, and, to the best of plaintiffs' knowledge, neither EPA nor the State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with the permit requirements of RCRA.

25.     More than 60 days have passed since notice was served that defendants are discharging pollutants to the Hackensack River in violation of Section 301(a) and 402 of the Water Act, 33 U.S.C. 1311(a), 1342, and, to the best of plaintiffs' knowledge, neither EPA nor the State has commenced and is diligently prosecuting a civil or criminal judicial action to redress the violations.

26.     To the best of plaintiffs' knowledge, EPA has not commenced an administrative civil penalty action under Section 309(g)(6) of the Water Act, 33 U.S.C. 1319(g)(6), to penalize defendants for the unpermitted discharge of pollutants to the Hackensack River from the Roosevelt Drive In site.

6

27.    Venue is appropriate in the District of New Jersey, pursuant to Section 7002(a) of RCRA, 42 U.S.C. 6972(a), and Section 505(c)(1) of the Water Act, 33 U.S.C. 1365(c)(1), because the violations complained of occurred within this District.

## PARTIES

### Plaintiffs

28.    Plaintiff Hackensack Riverkeeper, Inc. sues on behalf of itself, its officers, directors, advisers, trustees, and employees. Hackensack Riverkeeper, Inc. is a not-for-profit public interest corporation organized under the laws of the State of New Jersey, with its principal place of business in Teaneck, New Jersey. Founded in 1997, Hackensack Riverkeeper, Inc. is a member of the Water Keeper's Alliance, an international organization of watershed advocates who work together to guarantee attainment of the "fishable and swimable" goals of the Water Act.

29.    Hackensack Riverkeeper, Inc.'s purpose is to protect, preserve, and restore the Hackensack River and its living resources and to increase public awareness of the lower Hackensack River watershed as a vital natural and recreational resource. In an effort to achieve this goal, Hackensack Riverkeeper, Inc. works in partnership with educators to develop curricula, materials, and programs to educate the public relating to this purpose.

30.    Hackensack Riverkeeper, Inc. operates the Eco-Cruise, Eco-Walk, and the Hackensack Riverkeeper Canoe Project programs. Eco-Cruises are boat tours of the Hackensack River and Meadowlands. Eco-Walks are guided field trips to unique habitat areas within the Hackensack River watershed. The Hackensack Riverkeeper Canoe Project is a recreational canoe rental facility, which also hosts various canoeing events and competitions. Hackensack Riverkeeper, Inc.'s funding depends, in large part, on donations resulting from the Eco-Cruise, Eco-Walk, and Hackensack Riverkeeper Canoe Project programs.

31.    The Eco-Cruise, Eco-Walk, and Hackensack Riverkeeper Canoe Project programs attract visitors who are taught about the Hackensack River. This directly increases public awareness of the lower Hackensack River watershed as a vital natural and recreational resource. The success of these programs depends on the physical, aesthetic, recreational, biological, and chemical health, viability, and safety of the river. When the River is harmed by pollution, including chromium pollution, fewer people are interested in visiting the River. Consequently, Hackensack Riverkeeper, Inc. obtains less revenues.

32.    The hazardous waste contamination of the Roosevelt Drive In site and its impact on the quality of the waters of the Hackensack River directly affect the economic interests of Hackensack Riverkeeper, Inc., its officers, directors, advisers, trustees, and employees. Defendants' acts and omissions have adversely affected, are adversely affecting, and will continue adversely to affect, the economic interests of Hackensack Riverkeeper, Inc., its officers, directors, advisers, trustees, and employees.

33.    Plaintiff William Sheehan is a salaried employee of Hackensack Riverkeeper, Inc. The success of the Hackensack Riverkeeper program depends on the physical, aesthetic, recreational, biological, and chemical health, viability, and safety of the river. If the program is unsuccessful, Hackensack Riverkeeper, Inc. is likely to have severe financial problems. Mr. Sheehan therefore has a financial stake in the physical, aesthetic, recreational, biological, and chemical health, viability, and safety of the Hackensack River.

34.    Mr. Sheehan has been a recreational user of the Hackensack River for most of his life. As a child, Mr. Sheehan visited the River for recreational purposes, including nature walks along the river. His recreational and financial uses of the River have increased to include boating, fishing, and birdwatching. For at least the last two years, continuing to date, Mr. Sheehan has visited

8

the Hackensack River in a personal capacity on an almost-daily basis. His regular activities on the River include boating, fishing, and bird-watching.

35.    William Sheehan frequently notices murky water, riverbank discharges, and foul odors while navigating the Hackensack River. If the water were not impacted by discharges and foul odors, Mr. Sheehan would dive and swim in the River.

36.    In 1992, the New Jersey Department of Health banned the eating of Bluefish, Striped Bass, White Perch, Blue-clawed Crabs, and various other Hackensack River species due to pollution, including heavy metal contamination. Chromium, such as that discharged from the Roosevelt Drive In Site, is a heavy metal. If it were not for this ban, and his concern about health risks associated with the River and chromium contamination, Mr. Sheehan would continue to eat these species and to enjoy greater use of the Hackensack River.

37.    The hazardous waste contamination of the Roosevelt Drive In site and its impact on the quality of the waters of the Hackensack River affect the health, economic, recreational, aesthetic and environmental interests of Mr. Sheehan. Defendants' violations have adversely affected, are adversely affecting, and will continue adversely to affect, the health, economic, recreational, aesthetic and environmental interests of Mr. Sheehan.

### Defendants

38.    Mutual owned and operated the Chromate Plant until Mutual was acquired by AlliedSignal. On or about August 12, 1954, Allied Chemical and Dye Corporation acquired all the stock of Mutual. In December 1954, Mutual, then a subsidiary of AlliedSignal, sold the Roosevelt Drive In site to Amy Joy Realty Corporation for the construction of an outdoor theater. On or about February 23, 1955, Allied Chemical and Dye Corporation filed an application for a Certificate of Dissolution of Mutual. On or about February 28, 1955, the New Jersey Secretary of State issued a

Certificate of Dissolution of Mutual. On or about March 1, 1955, Allied Chemical and Dye Corporation and the trustees on dissolution of Mutual executed a merger agreement. In this agreement, Allied Chemical and Dye Corporation agreed to pay, perform, or otherwise discharge, all obligations of Mutual and agree to exonerate, indemnify, and save harmless Mutual against all liability. After the merger, Mutual became the Mutual Chemical Division of the Allied Chemical and Dye Corporation and continued its chromate chemical manufacturing operations at its plant in Baltimore, Maryland. On or about April 28, 1958, Allied Chemical and Dye Corporation changed its name to Allied Chemical Corporation. On or about April 27, 1981, Allied Chemical Corporation changed its name to Allied Corporation. In 1985, Allied Corporation and the Signal Companies, Inc. combined to form AlliedSignal, Inc. On or about December 1, 1999, pursuant to an Agreement and Plan of merger dated June 4, 1999, AlliedSignal, Inc. merged with Honeywell, Inc. to form Honeywell International, Inc.

39.    Honeywell International, Inc. is directly responsible and liable for the debts and liabilities of AlliedSignal, Inc., Allied Corporation, and Allied Chemical Corporation. Honeywell International, Inc. is the successor by acquisition and merger of AlliedSignal and Mutual and is therefore directly or vicariously liable for the liabilities of AlliedSignal, Inc., Allied Corporation, Allied Chemical Corporation and Mutual. The five companies shall hereafter be referred to jointly as "Honeywell."

40.    On or about December 30, 1954, Honeywell sold the site on which the Chromate Plant was located. Defendant Honeywell's Chromate Plant was the generator of the chromium-bearing waste present at the Roosevelt Drive In site and, by virtue of the interim remediation work and ongoing remediation studies it has performed and is conducting at the site, Honeywell is also the operator of the site.

41.    W.R. Grace & Co. is a corporation organized under the laws of the State of Connecticut, with its principal place of business in Boca Raton, Florida. Defendant W.R. Grace, Ltd. is a direct subsidiary of W.R. Grace & Co. with a registered office in London, England. Ecarg, Inc. is a corporation organized under the laws of the State of New Jersey, with its principal place of business in Boca Raton, Florida, and is a subsidiary of W.R. Grace & Co.

42.    W.R. Grace & Co. and defendant W.R. Grace, Ltd. were the sole stockholders of Grace Retail Corporation, which acquired two parcels constituting the largest portion of the Roosevelt Drive In site and designated as Lots 14H and 14J in Tax Block 1290A, Jersey City, Hudson County, New Jersey, in June 1981.

43.    In November 1986, the Channel Acquisition Company acquired Grace Retail Corporation from W.R. Grace & Co. Pursuant to a letter agreement, Grace Retail Corporation was supposed to distribute some of its assets, including lots 14H and 14J and the buildings thereon, to W.R. Grace & Co. and defendant W.R. Grace, Ltd. Due to an oversight, this transfer never occurred. Nevertheless, W.R. Grace & Co. and defendant W.R. Grace, Ltd. were unaware that the transfer did not occur and acted as the owners and operators of the parcels until October 14, 1994.

44.    On October 14, 1994, the then owner of lots 14H and 14J, Channel Home Centers, Inc., conveyed lots 14H and 14J to Ecarg, Inc. From November 1986 until October 1994, W.R. Grace & Co. and defendant W.R. Grace, Ltd. acted as owners and operators of that portion of the Roosevelt Drive In site designated as lots 14H and 14J. From October 14, 1994, until the present, Ecarg, Inc. has been the owner and operator of that portion of the Roosevelt Drive In site designated as lots 14H and 14J.

45.    Defendants Roned Realty of Jersey City, Inc. and Roned Realty of Union City, Inc. are corporations organized under the laws of the State of New Jersey with their principal place of

business in Hasbrouck Heights, New Jersey. A company referred to in the records of the Jersey City Assessor's office as Roned Realty Corp. owns the portion of the Roosevelt Drive In site designated as lot 14D in Tax Block 1290A, Jersey City, Hudson County, New Jersey. Plaintiffs believe that, after a reasonable opportunity for discovery, the evidence will show that either defendant Roned Realty of Jersey City, Inc. or defendant Roned Realty of Union City, Inc. is the owner and operator of lot 14D.

## FACTS

### I

## WASTE FROM THE CHROMATE PLANT

46.    The Chromate Plant extracted chromium from chromium ores to produce chromate chemicals. The process generated waste that is referred to herein as chromium-bearing waste. Honeywell has estimated that the Chromate Plant produced 969,500 tons of chromium-bearing waste, containing between three to seven percent total chromium. Honeywell transported chromium-bearing waste from the Chromate Plant through a pipeline over Route 440 onto the Roosevelt Drive In site. In addition to chromium-bearing waste, Honeywell dumped unknown amounts of other refuse from the Chromate Plant at the Roosevelt Drive In site. Approximately one third of the chromium in the chromium-bearing waste deposited at the Roosevelt Drive In site is hexavalent chromium. By December 5, 1953, waste at the Roosevelt Drive In site was in a pile covering an area of approximately 10 acres and measuring from 10 to 30 feet high. Between 1952 and 1954, Honeywell sold chromium-bearing waste from the Roosevelt Drive-In site to be used as fill. In 1954, Honeywell graded the remaining chromium-bearing waste at the Roosevelt Drive In site in preparation for selling the site.

### II

12

## THE DISCHARGE OF POLLUTANTS TO SURFACE WATER FROM
## THE ROOSEVELT DRIVE IN SITE

47.     Approximately halfway down the length of the Roosevelt Drive In site, along both the northern and southern perimeters respectively, lies a contoured man-made drainage channel. These drainage channels have been lined with a layer of polyvinyl chloride, a layer of another geotextile, and gravel. On the northern perimeter, the mouth of a large pipe connects to the top of this channel. These channels serve as a conduit, carrying pollutants, including chromium-polluted water, from the site, into outfall boxes at the River's edge, where the pollutants are then discharged into the Hackensack River. The drainage channels collect storm water and carry this polluted run-off into the River. In addition, at high tide, backwater from the River enters the drainage channels, and pollutants are carried back into the River through these channels. Pollutants, including chromium, are discharged from these drainage channels at the Roosevelt Drive In site into the River.

48.     Groundwater flow at the Roosevelt Drive In site moves from east to west, from Route 440 to the Hackensack River. Pollutants consisting of the hazardous substances in the soil at the site leach into the groundwater. This polluted water is then discharged from the site into the River.

### III

## THE RISK TO HUMAN HEALTH AND THE ENVIRONMENT OF
## CHROMIUM-BEARING WASTE

49.     The chromium-bearing waste contaminating the Roosevelt Drive In site consists chiefly of two valence states of chromium, hexavalent and trivalent chromium.

50.     Chromium is a carcinogen. Chromium in surface soil may be blown into the air and then inhaled. Inhalation of hexavalent chromium causes lung cancer. There is no safe level of exposure to hexavalent chromium by inhalation. Inhalation of hexavalent chromium can cause

13

irritation to the nose, ranging in severity from a running nose to having ulcers and holes in the nasal septum. It may also cause asthma.

51.    Skin contact with hexavalent chromium in large quantities causes irritant dermatitis that burns the skin and leaves ulcers and scars. In smaller quantities, hexavalent chromium causes allergic contact dermatitis, with symptoms such as severe redness and swelling of the skin.

52.    Ingestion of large amounts of hexavalent chromium may cause stomach upsets, ulcers, convulsions, kidney and liver damage, and even death.

53.    While less toxic, trivalent chromium may in large enough quantities cause some of the same health problems caused by hexavalent chromium.

54.    Chromium is toxic to plant, animal life, and aquatic life. The contamination at the Roosevelt Drive In site adversely affects plant and animal life exposed to those sites. The discharge of chromium into the Hackensack River, through storm water runoff and discharges into the Hackensack River, adversely affects aquatic life.

## IV

## HONEYWELL'S KNOWLEDGE OF THE RISK OF HARM TO HUMAN HEALTH AND THE ENVIRONMENT POSED BY ITS CHROMIUM-BEARING WASTE

55.    The first case report of respiratory cancer associated with employment in chromium-compound-related industries appeared in 1890. By 1932, over 250 chrome poisoning cases were pending concerning the Chromate Plant. At the latest, Honeywell knew or should have known by 1937 of the risk posed by the waste produced at the Chromate Plant. In an April 12, 1937, letter, Honeywell admitted the waste from the Chromate Plant contained chromic oxides, including calcium chromate. Calcium chromate is recognized as one of the most carcinogenic chromium compounds.

56.    In an internal memorandum dated May 14, 1937, Honeywell admitted that its chromium-bearing waste contains compounds "ordinarily poisonous to plant growth."

57.    In 1948, the results of a study initiated by the chromate manufacturing industry that showed a significant association between chromium exposure and respiratory cancer were published. Honeywell employees were included in a health study conducted by the United States Public Health Service that concluded in a report in 1953 that employees exposed to chromate chemicals had suffered from nasal perforations, skin ulcers, and lung cancer. The report setting forth the results of the study was sent to Honeywell.

58.    The Industrial Hygiene Foundation of America, Inc. studied workers at the Chromate Plant from December 31, 1947, to July 1, 1954. It informed Honeywell in a 1957 report on the health risks from chromate chemical exposure, including "penetrating ulcers" (a risk recognized "for over a hundred years"), perforations of the nasal septum, allergic dermatitis, and lung cancer.

59.    In a September 21, 1976, Patent (No. 3,981,965) for a method of suppressing water pollution from chromate chemical production waste, Honeywell stated that bleeding of wetted chromium compounds is objectionable because "chromium compounds are toxic and constitute a serious pollutant." Furthermore, some chromium compounds "have sufficient solubility to pollute the environment by such bleeding long after they have been discarded." When "stockpiles are exposed to the elements and wetted by rain, these [chromium] salts are gradually leached from the residue over long periods of time to pollute the ground water."

60.    As a consequence of investigating the waste from its Baltimore, Maryland, facility, Honeywell knew by 1979 that the waste produced by its chromate chemical production process contained toxic trivalent and hexavalent chromium compounds.

61.    In 1983, Honeywell informed the New Jersey Department of Environmental Protection that the Roosevelt Drive In site was contaminated with chromium-bearing waste used as fill.

15

V

## HONEYWELL'S FAILURE TO CLEAN UP THE ROOSEVELT DRIVE IN SITE

62.    Despite its continuous knowledge of the presence of chromium-bearing waste at the Roosevelt Drive In and its knowledge of the risks posed by that waste. Honeywell did not take any action to clean up the site until 1989 when it completed an Interim Remedial Measure, which consisted of regrading the site and placing a polyvinyl chloride cover over exposed portions.

63.    In 1991 and 1992, a Honeywell contractor installed a new wooden bulkhead at the site. In February 1993, when the polyvinyl chloride cover was damaged by high winds, Honeywell installed a new cover.

64.    On June 17, 1993, Honeywell entered into an Administrative Consent Order (hereafter the "ACO") with the State of New Jersey. The ACO requires Honeywell to conduct a remedial investigation and feasibility study for 18 sites, including the Roosevelt Drive In site. The ACO requires Honeywell to spend a sum of money equal to $50 million, plus the difference between $10 million and any lower amount that Honeywell spends on the RI/FS studies (hereafter referred to as "the remediation fund"), for remediating the sites subject to the order. If the remediation cost for all the sites exceeds the remediation fund, the ACO specifies that Honeywell may refuse to fund remediation for any site to the extent that it will put the total remediation cost in excess of the remediation fund, if Honeywell disagrees with the remedial action proposed by the State.

65.    Honeywell has not committed itself specifically to remediate the Roosevelt Drive In site.

66.    Despite the interim remedial action and the ACO described above, chromium-bearing waste continues to be present in the environment at the Roosevelt Drive In site and continues to be released into the environment.

## VI

## THE GRACE COMPANIES' FAILURE TO CLEAN UP THE PORTION OF THE ROOSEVELT DRIVE IN SITE THAT THEY OWN

67.     In 1983, sampling and analysis were conducted at the Roosevelt Drive In site by a contractor hired by the Grace Companies. The Grace Companies have taken no action to clean up the portion of the site that they own.

68.     Despite the Grace Companies' continuous knowledge since at least 1983 of the presence of chromium-bearing waste at the Roosevelt Drive-In site, chromium-bearing waste continues to be present in the environment at the site and continues to be released into the environment.

## VII

## RONED'S FAILURE TO CLEAN UP THE PORTION OF THE ROOSEVELT DRIVE IN SITE WHICH IT OWNS

69.     In 1987 and 1988, Roned completed an Interim Remedial Action at its property, placing a one foot soil cover and asphalt cover over parts of the site. Roned has taken no action to clean up the portion of the Roosevelt Drive In Site which it owns.

70.     Despite Roned's continuous knowledge since at least 1987 of the presence of chromium-bearing waste at the lot 14D portion of the Roosevelt Drive-In site, chromium-bearing waste continues to be present in the environment at the site and continues to be released into the environment.

## CLAIMS

### First Claim

### (Imminent and Substantial Endangerment)

71.     Section 7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(B), provides that any person may commence a civil action against any person, including a past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

72.     Defendant Honeywell is a past owner of the Roosevelt Drive In site and has contributed to the past and present handling, storage, transportation, and disposal of solid and hazardous waste at the site. Defendant W.R. Grace Ltd. is a past owner of the Roosevelt Drive In site and has contributed to the past and present handling, storage, and disposal of solid and hazardous waste at the site. Defendant Roned is a past and present owner of the Roosevelt Drive In site and has contributed to the past and present handling, storage, and disposal of solid and hazardous waste at the site.

73.     The hazardous waste, including chromium-bearing waste, at the Roosevelt Drive In site, may present an imminent and substantial endangerment to health or the environment.

74.     Defendants have violated Section 7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(B), because the hazardous waste contamination at the Roosevelt Drive In site may present an imminent and substantial endangerment to the health or the environment.

## Second Claim

### (Storage and/or Disposal of Hazardous Waste without a Permit)

75.     Section 7002(a)(1)(A) of RCRA, 42 U.S.C. 6972(a)(1)(A), provides that any person may commence a civil action against any person who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order effective pursuant to RCRA.

76.     Section 3005 of RCRA, 42 U.S.C. 6925, provides that owning or operating a facility for the treatment, storage, or disposal of hazardous waste is prohibited except in accordance with a permit issued pursuant to Section 3005.

77.     Defendant Honeywell has operated the facility at the Roosevelt Drive In site by virtue of its supervision of Interim Remedial Measures there from 1989 to the present. Defendant W.R. Grace Ltd. owned and operated the portion of the site consisting of lots 14H and 14J. Defendant Roned owns and operates the portion of the site consisting of lot 14D.

78.     Defendants have stored and/or disposed of, and continue to store and/or dispose of, hazardous waste, including hazardous chromium-bearing waste, at the Roosevelt Drive In site. Defendants do not possess a permit pursuant to Section 3005 of RCRA, 42 U.S.C. 6925, to store and/or dispose of hazardous waste at the Roosevelt Drive In site.

79.     Defendants have violated Sections 3005 and 7002(a)(1)(A) of RCRA, 42 U.S.C. 6925, 6972(a)(1)(A), by storing and/or disposing of hazardous waste at the Roosevelt Drive In site without a permit.

## Third Claim

### (Discharge of Pollutants into the Waters
### of the United States without a Permit)

80.     Sections 505(a) and 505(f)(6) of the Water Act, 33 U.S.C. 1365(a) and 1365(f)(6), authorize citizens to enforce "an effluent standard or limitation," including effluent standards,

19

limitations, permits, and permit conditions set forth in Sections 301 and 402 of the Water Act, 33 U.S.C. 1311 and 1342.

81.    Section 301(a) of the Water Act, 33 U.S.C. 1311(a), prohibits the discharge of pollutants from a point source into navigable waters of the United States, unless in compliance with enumerated sections of the Water Act.  Section 301(a) prohibits, inter alia, such discharges in violation of, or not authorized by, the terms and conditions of an NPDES permit issued pursuant to Section 402 of the Water Act, 33 U.S.C. 1342.  Section 402(k) provides that compliance with the terms and conditions of a permit issued pursuant to that section shall be deemed compliance with, inter alia, Section 301 of the Water Act.

82.    Defendant Honeywell has operated the facility at the Roosevelt Drive In site by virtue of its supervision of Interim Remedial Measures there from 1989 to the present.  Defendant Roned owns and operates the portion of the site consisting of lot 14D.

83.    The storm water runoff, surface water runoff, and other water discharged from the Roosevelt Drive In site into the Hackensack River is contaminated with pollutants, including toxic chromium-bearing waste.  Defendants do not possess a National Pollutant Discharge Elimination System (hereafter "NPDES") permit or a New Jersey Pollutant Discharge Elimination System (hereafter "NJPDES") permit, issued pursuant to Section 402 of the Water Act, 33 U.S.C. 1342, authorizing discharges of pollutants from the Roosevelt Drive In site.

84.    Defendants have violated Sections 301(a) and 402 of the Water Act, 33 U.S.C. 1311(a), 1342, by discharging pollutants into the Hackensack River without a permit.

## RELIEF

Wherefore, plaintiffs respectfully request this Court to grant the following relief:

A.     Issue a declaratory judgment that defendants have violated, and continue to be in violation of, Sections 3005, 7002(a)(1)(A), and 7002(a)(1)(B) of RCRA, 42 U.S.C. 6925, 6972(a)(1)(A), 6972(a)(1)(B), and Sections 301(a) and 402 of the Water Act, 33 U.S.C. 1311(a), 1342;

B.     Enjoin defendants to remove and properly to dispose of the hazardous waste they have stored and/or disposed of at the Roosevelt Drive In site and the hazardous waste which has migrated from the Roosevelt Drive In site to adjoining properties and permanently to remediate the Roosevelt Drive In site and adjacent properties affected by the hazardous waste stored and/or disposed of at the site;

C.     Enjoin defendants Honeywell and Roned to cease all discharges of pollutants from point sources at the Roosevelt Drive In site that are not in compliance with an NPDES or NJPDES permit;

D.     Order defendants to pay appropriate civil penalties for the storage and/or disposal of hazardous waste at the Roosevelt Drive In site without a permit pursuant to Section 7002(a) of RCRA, 42 U.S.C. 6972(a);

E.     Order defendants Honeywell and Roned to pay appropriate civil penalties for the discharge of pollutants to the Hackensack River without a permit pursuant to Sections 309(d) and 505(a) of the Water Act, 33 U.S.C. 1319(d), 1365;

F.     Enjoin defendants to undertake a long-term public health screening process to evaluate the health impacts of exposure to chromium waste as to each individual who may have suffered prolonged or repeated exposure to the waste at the site;

G.    Order such other injunctive relief as the Court deems appropriate, including restitution and mitigation;

H.    Award plaintiffs their costs, including reasonable attorneys' and expert witness' fees, as authorized by Section 7002(e) of RCRA, 42 U.S.C. 6972(e), and Section 505(d) of the Water Act, 33 U.S.C. 1365(d); and

I.    Award such other relief as this Court deems appropriate.

Respectfully submitted,

BRUCE J. TERRIS  (BT 9359)
CAROLYN SMITH PRAVLIK  (CSP 4481)
Terris, Pravlik & Millian, LLP
1121 12th Street, N.W.
Washington, D.C.  20005-4632
(202) 682-2100

EDWARD LLOYD  (EL 2633)
416 Clark Street
South Orange, New Jersey 07079
(973) 353-5695

May 31, 2001

22

$A$

## TERRIS, PRAVLIK & MILLIAN, LLP

BRUCE J. TERRIS
CAROLYN SMITH PRAVLIK
KATHLEEN L. MILLIAN

1121 12TH STREET, N.W.
WASHINGTON, D.C. 20005-4632
(202) 682-2100
TerrisPravlikMillian@compuserve.com
FAX 202-289-6795

SARAH A. ADAMS
DANIELLE C. FIDLER
DANIEL L. ROSENBERG
DEMIAN A. SCHANE
LAUREL K. O'SULLIVAN*

MONICA WAGNER
LYNN E. CUNNINGHAM
DAVID G. BOOKBINDER
Of Counsel

*Not admitted D.C. Bar

December 20, 1999

CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Carol M. Browner, Administrator
U.S. Environmental Protection Agency, A-100
401 M Street, S.W.
Washington, D.C. 20460

Robert Shinn, Jr., Commissioner
New Jersey Department of Environmental Protection
401 East State Street
Trenton, N.J. 08625

Lawrence A. Bossidy
Chief Executive Officer
AlliedSignal, Inc.
101 Columbia Road
Morristown, N.J. 07962

Emil Walerko
Project Leader
AlliedSignal, Inc.
101 Columbia Road
Morristown, N.J. 07962

Roned Realty of Union, Inc.
c/o Burton R. Sax
74 Route 17
Hasbrouck Heights, N.J. 07604

EXHIBIT # 1
M # 1

Ms. Browner, Mr. Shinn, Mr. Bossidy, Mr. Walerko,
Mr. Sax, Mr. Navlen, and Mr. Rubenstein
December 20, 1999
Page 2

Roned Realty of Jersey City, Inc.
c/o Edward Navlen
3 Horizon Rd. Apt. 1020
Fort Lee, N.J. 07024

Roned Realty, L.P.
c/o Steven Rubenstein
39 Avenue C
Bayonne, N.J. 07002

Dear Ms. Browner, Mr. Shinn, Mr. Bossidy, Mr. Walerko, Mr. Sax, Mr. Navlen, and Mr. Rubenstein:

  This letter is being written on behalf of Hackensack Riverkeeper, Inc., 1000 River Road - T090C, Teaneck, New Jersey 07666 ((201) 692-8449) and William Sheehan, 323 Centre Ave. Secaucus, New Jersey 07094.

  Section 505(b) of the Federal Water Pollution Control Act (hereafter the "Act"), 33 U.S.C. 1365(b), requires that 60 days prior to the filing of a citizen's suit in federal district court under Section 505(a)(1) of the Act, notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the State in which the alleged violations occur of the citizen's intent to bring suit for the alleged violations.

  Section 7002(b)(1) of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. 6972(b)(1), requires that 60 days prior to the filing of a citizen suit in federal district court under Section 7002(a)(1)(A) of the Act, 42 U.S.C. 6972(a)(1)(A), the alleged violator, the Administrator of the U.S. Environmental Protection Agency, and the State in which the alleged violation occurred must be given notice of the citizen's intent to bring suit for the alleged violations, except that, in the case of an action respecting a violation of subchapter III of RCRA, an action may be brought immediately after notification.

  Section 7002(b)(2) of RCRA, 42 U.S.C. 6972(b)(2), requires that 90 days prior to the filing of a citizen suit in federal district court under Section 7002(a)(1)(B) of the Act, 42 U.S.C. 6972(a)(1)(B), any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste that may present an imminent and substantial endangerment to health or the environment, the Administrator of the U.S. Environmental Protection Agency, and the State in which the alleged endangerment occurred must be given notice of the citizen's intent to bring suit for the alleged violations, except that, in the case of an action respecting a violation of subchapter III of RCRA, an action may be brought immediately after notification.

Ms. Browner, Mr. Shinn, Mr. Bossidy, Mr. Walerko,
Mr. Sax, Mr. Navlen, and Mr. Rubenstein
December 20, 1999
Page 3

The property known as the Roosevelt Drive-In Site is located on Route 440 in
Jersey City, Hudson County, New Jersey, Tax Block 1290A, Lots 14H, 14J, and 14D.
Prior to 1955, over a million tons of chromium operation waste products were disposed of
at Lots 14D, 14H, and 14J. Chromium wastes from the Roosevelt Drive-In Site have
caused and continue to cause significant pollution of the Hackensack River via surface
and groundwater discharges from the Roosevelt Drive-In Site and continue to pose a
threat to human health and/or the environment. Hackensack Riverkeeper and William
Sheehan believe that Lot 14D is owned and operated by Roned Realty of Jersey City, Inc.
("Roned Realty"). Hackensack Riverkeeper and William Sheehan believe that
AlliedSignal, Inc. is involved in the operation of the Roosevelt Drive-In facility by virtue
of having conducted interim remediation work at the facility and that AlliedSignal, Inc.
and/or its predecessors-in-interest are past or present generators, transporters, owners
and/or operators of the Roosevelt Drive-In Site. Hackensack Riverkeeper and William
Sheehan believe that Roned Realty and AlliedSignal, Inc. have contributed or are
contributing to the past or present handling, storage, treatment, transportation, or
disposal of solid and hazardous wastes which may present an imminent and substantial
endangerment to human health and the environment.

Hackensack Riverkeeper and William Sheehan hereby place you on notice that
they intend to bring suit to abate the following violations of the Clean Water Act and
RCRA:

1.      Pursuant to Section 505(b) of the Act, 33 U.S.C. 1365(b), Hackensack
Riverkeeper and William Sheehan place you on notice that they believe that Roned
Realty and AlliedSignal, Inc. have violated and continue to violate Sections 301 and 402
of the Clean Water Act, 33 U.S.C. 1311, 1342, because they have violated and continue to
violate "an effluent standard or limitation" as defined by Section 505(f) of the Act, 33
U.S.C. 1365(f), by failing to obtain a National Pollutant Discharge Elimination System
("NPDES") permit when an NPDES permit is required because they have discharged
pollutants from the Roosevelt Drive-In Site to the Hackensack River without possessing a
National Pollutant Discharge System permit or a New Jersey Pollutant Discharge
Elimination System permit for such discharges.

The discharge of pollutants to the waters of the United States is prohibited except
in accordance with the provisions of the Clean Water Act. 33 U.S.C. 1311(a). Section
402 of the Act empowers EPA or the state to issue an NPDES permit authorizing the
discharge of pollutants from point sources into navigable waters. 33 U.S.C. 1342. A
"point source" is defined as "any discernable, confined, and discrete conveyance,
including but not limited to any * * * ditch, channel, tunnel, conduit * * * from which
pollutants are or may be discharged." 33 U.S.C. 1362(14). In addition, Section 402(p) of
the Act requires permits for "discharges composed entirely of stormwater," where those
discharges are "associated with industrial activity." 33 U.S.C. 1342(p). Such discharges

Ms. Browner, Mr. Shinn, Mr. Bossidy, Mr. Walerko,
Mr. Sax, Mr. Navlen, and Mr. Rubenstein
December 20, 1999
Page 4

include "areas where industrial activity [including metal industries] has taken place in the
past and significant materials remain and are exposed to storm water" as well as
"[l]andfills, land application sites, and open dumps that receive or have received any
industrial wastes[.]" 40 C.F.R. 122.26(14). Our review of records regarding discharge of
stormwater from the manmade drainage swales at the Roosevelt Drive-In Site indicates a
significant level of hexavalent chromium is being discharged directly into the
Hackensack River. For example, on August 1, 1997, samples taken from the northern
drainage swale indicated a discharge of 1340 ug/l of hexavalent chromium; on January 7,
1998, samples from the northern swale contained 1840 ug/l of hexavalent chromium; the
most recent sample from the north swale, taken on August 26-27, 1999, indicated a
hexavalent chromium level of 520 ug/l. Based on these discharges, such discharges are
likely to continue in the future.

The Roosevelt Drive-In Site is a point source which needs an NPDES permit
because it is the site of former industrial activities from which pollutants are discharged
to waters of the United States. Since no NPDES permit has been obtained for the
Roosevelt Drive-In Site, Roned Realty and AlliedSignal, Inc. are in violation of the
Clean Water Act. Each day that the NPDES permit is not obtained constitutes a new
violation of the Act.

Hackensack Riverkeeper and William Sheehan further place you on notice,
pursuant to Section 505(b) of the Act, 33 U.S.C. 1365(b), that they believe that the
Roosevelt Drive-In Site is in violation of Sections 301 and 402 of the Act because it has
violated and continues to violate "an effluent standard or limitation" as defined by
Section 505(f) of the Act, 33 U.S.C. 1365(f), by allowing the unpermitted discharge of
highly contaminated chromate waste into groundwater immediately connected to the
Hackensack River.

2.      Pursuant to Section 7002(b)(1) of RCRA, 42 U.S.C. 6972(b), Hackensack
Riverkeeper and William Sheehan place you on notice that they believe that Roned
Realty and AlliedSignal, Inc. have been and continue to be in violation of Section 3005 of
RCRA, 42 U.S.C. 6925, by storing and/or disposing of material containing hazardous
waste at the Roosevelt Drive-In Site without possessing a permit authorizing the storage
and/or disposal of hazardous waste.

3.      Pursuant to Section 7002(b)(2) of RCRA, 42 U.S.C. 6972(b)(2),
Hackensack Riverkeeper and William Sheehan place you on notice that they believe that
Roned Realty and AlliedSignal, Inc. have contributed or are contributing to the past or
present handling, storage, treatment, transportation, and/or disposal of solid or hazardous
wastes at the Roosevelt Drive-In Site that may present an imminent and substantial
endangerment to health or the environment.

Ms. Browner, Mr. Shinn, Mr. Bossidy, Mr. Walerko,
Mr. Sax, Mr. Navlen, and Mr. Rubenstein
December 20, 1999
Page 5

    Hackensack Riverkeeper and William Sheehan intend, at the close of the 90-day notice period under 42 U.S.C. 6972(b)(2) or shortly thereafter, to file a citizen suit against Roned Realty and AlliedSignal, Inc. under Section 505(a)(1) of the Clean Water Act, 33 U.S.C. 1365(a)(1) and Sections 7002(a)(1)(A) and 7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(A) and 6972(a)(1)(B), for all violations of the Clean Water Act and or RCRA, including discharge violations other than those described above and for all violations that occur after your receipt of this letter. We do not believe that it is necessary to provide you with further notice before pursuing legal action for these additional violations. Hackensack Riverkeeper and William Sheehan intend to seek all available relief under the Clean Water Act and RCRA, including declaratory and injunctive relief and civil penalties.

    If you are interested in attempting to settle this matter, we encourage you to contact us as soon as possible.

Sincerely,

Danielle C. Fidler
Counsel for Hackensack Riverkeeper, Inc. and
William Sheehan

cc:   Jeanne M. Fox
     Regional Administrator
     EPA Region II
     290 Broadway
     New York, N.Y. 10007-1866

     The Corporation Trust Co.
     Registered Agent for AlliedSignal, Inc.
     820 Bear Tavern Road
     West Trenton, N.J. 08628

     Timothy S. Haley, Esq.
     13 Brookside Avenue
     Caldwell, NJ 07006

     James Stewart, Esq.
     Lowenstein, Sandler, Kohl, Fisher & Boylan
     65 Livingston Avenue
     Roseland, NJ 07068-1791

$\beta$

## TERRIS, PRAVLIK & MILLIAN, LLP

BRUCE J. TERRIS
CAROLYN SMITH PRAVLIK
KATHLEEN L. MILLIAN

1121 12TH STREET, N.W.
WASHINGTON, D.C. 20005-4632
(202) 682-2100
FAX 202-289-6795
tpminfo@tpmlaw.com

SARAH A. ADAMS
DEMIAN A. SCHANE
KEVIN O. LESKE
AMY K. KENDALL
STEVEN J. GERMAN*

MONICA WAGNER
LYNN E. CUNNINGHAM
ANTONIA M. BOOKBINDER
Of Counsel

*Not admitted D.C. Bar

February 28, 2001

CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Christine Todd Whitman, Administrator
U.S. Environmental Protection Agency, A-100
401 M Street, S.W.
Washington, D.C. 20460

Robert Shinn, Jr., Commissioner
New Jersey Department of Environmental Protection
401 East State Street
Trenton, N.J. 08625

David Cleary, Esq.
Senior Environmental Counsel
W.R. Grace & Co.
One Town Center Road
Boca Raton, FL 33486

Christopher Marraro, Esq.
Wallace, King, Marraro & Branson
1050 Thomas Jefferson Street, NW
Washington, DC 20071

John Agnello, Esq.
Carella, Byrne, Bain, Gilfillan, Cecchi, Steward & Olstein
6 Becker Farm Road
Roseland, N.J. 07066

Dear Ms. Whitman, Mr. Shinn, Mr. Cleary, Mr. Marraro, and Mr. Agnello:

This letter is being written on behalf of Hackensack Riverkeeper, Inc., 1000 River Road - T090C, Teaneck, New Jersey 07666 ((201) 692-8449) and William Sheehan, 323 Centre Ave. Secaucus, New Jersey 07094.

Ms. Whitman. Mr. Shinn. Mr. Cleary. Mr. Marraro. and Mr. Agnello
February 28. 2001
Page 2

Section 505(b) of the Federal Water Pollution Control Act (hereafter the "Act"), 33 U.S.C. 1365(b), requires that 60 days prior to the filing of a citizen's suit in federal district court under Section 505(a)(1) of the Act. notice must be given to the alleged violator. the U.S. Environmental Protection Agency. and the State in which the alleged violations occur of the citizen's intent to bring suit for the alleged violations.

Section 7002(b)(1) of the Resource Conservation and Recovery Act (RCRA). 42 U.S.C. 6972(b)(1). requires that 60 days prior to the filing of a citizen suit in federal district court under Section 7002(a)(1)(A) of the Act. 42 U.S.C. 6972(a)(1)(A). the alleged violator. the Administrator of the U.S. Environmental Protection Agency. and the State in which the alleged violation occurred must be given notice of the citizen's intent to bring suit for the alleged violations. except that. in the case of an action respecting a violation of subchapter III of RCRA. an action may be brought immediately after notification.

Section 7002(b)(2) of RCRA. 42 U.S.C. 6972(b)(2). requires that 90 days prior to the filing of a citizen suit in federal district court under Section 7002(a)(1)(B) of the Act. 42 U.S.C. 6972(a)(1)(B). any person alleged to have contributed or to be contributing to the past or present handling. storage. treatment. transportation. or disposal of any solid or hazardous waste that may present an imminent and substantial endangerment to health or the environment. the Administrator of the U.S. Environmental Protection Agency, and the State in which the alleged endangerment occurred must be given notice of the citizen's intent to bring suit for the alleged violations. except that. in the case of an action respecting a violation of subchapter III of RCRA. an action may be brought immediately after notification.

The property known as the Roosevelt Drive-In Site is located on Route 440 in Jersey City. Hudson County. New Jersey. Tax Block 1290A. Lots 14H. 14J. and 14D.  Prior to 1955. over a million tons of chromium operation waste products were disposed of at Lots 14D. 14H. and 14J.  Chromium wastes from the Roosevelt Drive-In Site have caused and continue to cause significant pollution of the Hackensack River via surface and groundwater discharges from the Roosevelt Drive-In Site and continue to pose a threat to human health and/or the environment. Hackensack Riverkeeper and  William Sheehan believe that Lots 14H and 14 J are owned and operated by W.R. Grace & Co.. and its subsidiaries Grace. Ltd. and Ecarg. Inc. ("Grace"). Hackensack Riverkeeper and  William Sheehan believe that Lot 14D is owned and operated by Roned Realty of Jersey City. Inc. ("Roned Realty").  Hackensack Riverkeeper and William Sheehan believe that Honeywell International. Inc. ("Honeywell") is involved in the operation of the Roosevelt Drive-In facility by virtue of having conducted interim remediation work at the facility and that Honeywell and/or its predecessors-in-interest are past or present generators. transporters. owners and/or operators of the Roosevelt Drive-In Site.  Hackensack Riverkeeper and William Sheehan believe that Honeywell. Grace and Roned Realty have contributed or are contributing to the past or present handling. storage. treatment. transportation. or disposal of

Ms. Whitman, Mr. Shinn, Mr. Cleary, Mr. Marraro, and Mr. Agnello
February 28, 2001
Page 3

solid and hazardous wastes which may present an imminent and substantial endangerment to human health and the environment.

Hackensack Riverkeeper and William Sheehan hereby place you on notice that they intend to bring suit to abate the following violations of the Clean Water Act and RCRA:

1.      Pursuant to Section 505(b) of the Act, 33 U.S.C. 1365(b), Hackensack Riverkeeper and William Sheehan place you on notice that they believe that Honeywell, Grace, and Roned Realty have violated and continue to violate Sections 301 and 402 of the Clean Water Act, 33 U.S.C. 1311, 1342, because they have violated and continue to violate "an effluent standard or limitation" as defined by Section 505(f) of the Act, 33 U.S.C. 1365(f), by failing to obtain a National Pollutant Discharge Elimination System ("NPDES") permit when an NPDES permit is required because they have discharged pollutants from the Roosevelt Drive-In Site to the Hackensack River without possessing a National Pollutant Discharge System permit or a New Jersey Pollutant Discharge Elimination System permit for such discharges.

The discharge of pollutants to the waters of the United States is prohibited except in accordance with the provisions of the Clean Water Act, 33 U.S.C. 1311(a). Section 402 of the Act empowers EPA or the state to issue an NPDES permit authorizing the discharge of pollutants from point sources into navigable waters. 33 U.S.C. 1342. A "point source" is defined as "any discernable, confined, and discrete conveyance, including but not limited to any * * * ditch, channel, tunnel, conduit * * * from which pollutants are or may be discharged." 33 U.S.C. 1362(14). In addition, Section 402(p) of the Act requires permits for "discharges composed entirely of stormwater," where those discharges are "associated with industrial activity." 33 U.S.C. 1342(p). Such discharges include "areas where industrial activity [including metal industries] has taken place in the past and significant materials remain and are exposed to storm water" as well as "[l]andfills, land application sites, and open dumps that receive or have received any industrial wastes[.]" 40 C.F.R. 122.26(14). Our review of records regarding discharge of stormwater from the manmade drainage swales at the Roosevelt Drive-In Site indicates a significant level of hexavalent chromium is being discharged directly into the Hackensack River. For example, on August 1, 1997, samples taken from the northern drainage swale indicated a discharge of 1340 ug/l of hexavalent chromium; on January 7, 1998, samples from the northern swale contained 1840 ug/l of hexavalent chromium; samples from the north swale, taken on August 26-27, 1999, indicated a hexavalent chromium level of 520 ug/l. Based on these discharges, such discharges are likely to continue in the future.

The Roosevelt Drive-In Site is a point source which needs an NPDES permit because it is the site of former industrial activities from which pollutants are discharged to waters of the United States. Since no NPDES permit has been obtained for the Roosevelt Drive-In Site, Honeywell, Grace, and Roned Realty are in violation of the Clean Water Act. Each day that the NPDES permit is not obtained constitutes a new violation of the Act.

Ms. Whitman, Mr. Shinn, Mr. Cleary, Mr. Marraro, and Mr. Agnello
February 28, 2001
Page 4

Hackensack Riverkeeper and William Sheehan further place you on notice, pursuant to Section 505(b) of the Act, 33 U.S.C. 1365(b), that they believe that the Roosevelt Drive-In Site is in violation of Sections 301 and 402 of the Act because it has violated and continues to violate "an effluent standard or limitation" as defined by Section 505(f) of the Act, 33 U.S.C. 1365(f), by allowing the unpermitted discharge of highly contaminated chromate waste into groundwater immediately connected to the Hackensack River.

2.      Pursuant to Section 7002(b)(1) of RCRA, 42 U.S.C. 6972(b), Hackensack Riverkeeper and William Sheehan place you on notice that they believe that Honeywell, Grace, and Roned Realty have been and continue to be in violation of Section 3005 of RCRA, 42 U.S.C. 6925, by storing and/or disposing of material containing hazardous waste at the Roosevelt Drive-In Site without possessing a permit authorizing the storage and/or disposal of hazardous waste.

3.      Pursuant to Section 7002(b)(2) of RCRA, 42 U.S.C. 6972(b)(2), Hackensack Riverkeeper and William Sheehan place you on notice that they believe that Honeywell, Grace, and Roned Realty have contributed or are contributing to the past or present handling, storage, treatment, transportation, and/or disposal of solid or hazardous wastes at the Roosevelt Drive-In Site that may present an imminent and substantial endangerment to health or the environment.

Hackensack Riverkeeper and William Sheehan intend, at the close of the 90-day notice period under 42 U.S.C. 6972(b)(2) or shortly thereafter, to add Grace as a defendant in the pending action of *Hackensack Riverkeeper v. Honeywell International, Inc.*, 00-1257 D.N.J. (JAG) which was commenced in March, 2000, against Honeywell and Roned Realty under Section 505(a)(1) of the Clean Water Act, 33 U.S.C. 1365(a)(1) and Sections 7002(a)(1)(A) and 7002(a)(1)(B) of RCRA, 42 U.S.C. 6972(a)(1)(A) and 6972(a)(1)(B), for all violations of the Clean Water Act and or RCRA, including discharge violations other than those described above and for all violations that occur after your receipt of this letter. We do not believe that it is necessary to provide you with further notice before pursuing legal action for these additional violations. Hackensack Riverkeeper and William Sheehan intend to seek all available relief under the Clean Water Act and RCRA, including declaratory and injunctive relief and civil penalties.

Ms. Whitman, Mr. Shinn, Mr. Cleary, Mr. Marraro, and Mr. Agnello
February 28, 2001
Page 5


If you are interested in attempting to settle this matter, we encourage you to contact us as soon as possible.

Sincerely,

Steven J. German*
Counsel for Hackensack Riverkeeper, Inc. and
William Sheehan

* Admitted only in New York and New Jersey
Supervision by Bruce J. Terris,
a member of the D.C. Bar

\cc:    Jeanne M. Fox
        Regional Administrator
        EPA Region II
        290 Broadway
        New York, N.Y. 10007-1866