# Exhibit C

**Blackline of Final Proposed Order to October 1 Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|   |   |   |
|---|---|---|
| In re: | : | Chapter 11 |
|   | : |   |
| GIBSON BRANDS, INC., *et al.*, | : | Case No. 18-11025 (CSS) |
|   | : |   |
| Debtors.[1] | : | Jointly Administered |
|   | : |   |
|   | : | **Relates to Docket Nos. 726, 728, 742,** |
|   | x | **774, 822, 830, 831, 835, 842, 843,** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -     **844, 845, 846, 849, 850**

---

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE DEBTORS' FIFTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

The above captioned debtors and debtors in possession (collectively, the "Debtors"),

having:[2]

a. commenced, on May 1, 2018 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b. continued to operate and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c. filed, on June 20, 2018, the *Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 301]; the *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 302]; and the *Debtors' Motion for Entry of an Order (A) Approving the Disclosure Statement, (B) Approving the Solicitation Procedures, (C) Approving the Form of Ballots and Notices in Connection Therewith, (D) Establishing the Plan Confirmation Schedule, and (E) Granting Related Relief* [Docket No. 303];

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Gibson Brands, Inc. (4520); Cakewalk, Inc. (2455); Consolidated Musical Instruments, LLC (4695); Gibson Café & Gallery, LLC (0434); Gibson International Sales LLC (1754); Gibson Pro Audio Corp. (3042); Neat Audio Acquisition Corp. (3784); Gibson Innovations USA, Inc. (4620); Gibson Holdings, Inc. (8455); Baldwin Piano, Inc. (0371); Wurlitzer Corp. (0031); and Gibson Europe B.V. (Foreign).  The Debtors' corporate headquarters is located at 309 Plus Park Blvd., Nashville, TN 37217.

[2] All capitalized terms used but otherwise not defined in these findings of fact, conclusions of law, and order (collectively, this "Confirmation Order") shall have the meanings set forth in the Plan (as defined herein).  The rules of interpretation set forth in Article I.A. of the Plan shall apply to this Confirmation Order.

d.  filed, on July 12, 2018, the *Debtors' First Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 424]; and the *Disclosure Statement for Debtors' First Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 426];

e.  filed, on July 24, 2018, the *Debtors' Second Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 482]; and  the *Disclosure Statement for Debtors' Second Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 484];

f.  filed, on August 1, 2018, the *Debtors' Third Amended Joint Chapter 11 Plan of Reorganization* [Docket Nos. 516, 565]; and the *Disclosure Statement for Debtors' Third Amended Joint Chapter 11 Plan of Reorganization* [Docket Nos. 518, 566];

g.  caused the Solicitation Packages and Confirmation Hearing Notice (as defined in the Disclosure Statement Order) and the deadline for objecting to Confirmation of the Plan to be distributed on August 8, 2018, in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service of Solicitation Materials* [Docket No. 588] (the "August 8 Solicitation Affidavit");

h.  caused the Confirmation Hearing Notice to be published on August 10, 2018, in the national edition of the *New York Times,* as evidenced by the *Affidavit of Publication* [Docket No. 578] (the "Publication Affidavit");

i.  filed, on September 6, 2018, the *Debtors' Motion for Entry of an Order (I) Approving Disclosure Statement Addendum, (II) Approving Amended Solicitation Procedures Solely With Respect to Class 6 and Class 8, and (III) Granting Other Related Relief* [Docket No. 724]; the *Addendum to Disclosure Statement for Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization* [Docket Nos. 724-3, 777]; that certain Plan Modification Agreement dated September 6, 2018 [Docket No. 724-4]; *Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization* [Docket Nos. 724-4, 726] (the "Fourth Amended Plan");

j.  caused the Amended Solicitation Packages and notice of the Amended Solicitation Procedures (each as defined in the Amended Solicitation Procedures Order) and the extended deadline for objecting to Confirmation of the Plan to be distributed on September 15, 2018, in accordance with the Bankruptcy Code, the Bankruptcy Rules, and Amended Solicitation Procedures Order, as evidenced by, among other things, the *Supplemental Affidavit of Service of Solicitation Materials* [Docket No. 814] and the *Corrected Supplemental Affidavit of Service of Solicitation Materials* [Docket No. ~~847~~854] (collectively with the August 8 Solicitation Affidavit and the Publication Affidavit, the "Solicitation Affidavits");

k.  filed, on September 24, 2018, the *Notice of Filing of Plan Supplement for the Debtors' Fourth Amended Joint Plan of Reorganization* [Docket No. 812] (as may be further amended and supplemented from time to time, the "Plan Supplement");

l.  filed, on October 1, 2018, the *Debtors' Fifth Amended Joint Plan of Reorganization* [Docket No. 842] (as may be further amended from time to time, the "Plan");

#50316796 v1

m.  filed, on October 1, 2018, the *Declaration of Brian Fox in Support of Confirmation of the Debtors' Fifth Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 846] (the "Fox Declaration"); the *Declaration of Alan J. Carr in Support of Confirmation of Debtors' Fifth Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 845] (the "Carr Declaration"); *Declaration of Jeffrey Finger in Support of Confirmation of Debtors' Fifth Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 844] (the "Finger Declaration") (collectively, the "Confirmation Declarations"); and *Declaration of James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 849] (the "Daloia Declaration" or the "Voting Report"), and each of the foregoing declarants having been made available for cross-examination at the Confirmation Hearing and each of the foregoing declarations having been admitted into evidence;

n.  filed, on October 1, 2018, the *Debtors' Memorandum of Law in Support of an Order Confirming the Debtors' Fifth Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 850] (the "Confirmation Brief").

This Court having:

a.  entered, on August 2, 2018, the *Order (A) Approving The Disclosure Statement, (B) Approving the Solicitation Procedures, (C) Approving the Form of Ballots and Notices in Connection Therewith, (D) Establishing the Plan Confirmation Schedule, and (E) Granting Related Relief* [Docket No. 533] (the "Disclosure Statement Order");

b.  entered, on September 13, 2018, the *Order (I) Approving Disclosure Statement Addendum, (II) Approving Amended Solicitation Procedures Solely With Respect to Class 6 and Class 8, and (III) Granting Other Related Relief* [Docket No. 767] (the "Amended Solicitation Procedures Order" and together the Disclosure Statement Order, "Solicitation Procedures Orders");

c.  set October 2, 2018, at 1:00 p.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

d.  reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Plan Supplement, the Confirmation Declarations, the Voting Report, the Confirmation Hearing Notice, the Solicitation Affidavits, the Ballots, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights;

e.  held the Confirmation Hearing;

f.  heard the statements and arguments made by counsel in respect of Confirmation;

g.  considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding Confirmation, and having admitted the same into evidence at the Confirmation Hearing;

#50316796 v1

h.  overruled any and all objections to the Plan and to Confirmation and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein; and

i.  taken judicial notice of all pleadings and other documents filed, all orders, entered, and all evidence and arguments presented in the Chapter 11 Cases.

NOW, THEREFORE, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation has been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and all evidence presented at the Confirmation Hearing establish just cause for the relief granted herein, and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact and conclusions of law and Orders:

## I.  **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

IT IS HEREBY DETERMINED FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

A.  **Findings of Fact and Conclusions of Law.**

1.  The findings of fact and the conclusions of law set forth and incorporated in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

B.  **Jurisdiction and Venue.**

2.  The Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court*

#50316796 v1

*for the District of Delaware,* dated February 29, 2012.  The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  Venue in the Court was proper as of the Petition Date and remains proper under 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).

**C.      Eligibility for Relief.**

3.      The Debtors were on the Petition Date and continue to be entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

**D.      Commencement and Joint Administration of the Chapter 11 Cases.**

4.      On the Petition Date, the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On May 2, 2018, the Court entered an order [Docket No. 60] authorizing the joint administration and procedural consolidation of these Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

**E.      Committee Appointment**

5.      On May 9, 2018, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code, which Committee consists of (a) TKL Products Corp., (b) Grover Musical Products, Inc., (c) EDC, Inc., (d) Advance Plating, Inc., (e) Philips, (f) Guoguang Electronic Co., Ltd., and (g) Tronical GmbH.

#50316796.v1

**F.**    **Bankruptcy Rule 3016.**

6.    The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).

**G.**    **Judicial Notice.**

7.    The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the clerk of the Court, including, without limitation, all pleadings and other documents filed and orders entered thereon. The Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of the Chapter 11 Cases.

**H.**    **Plan Supplement.**

8.    The documents identified in the Plan Supplement were filed as required and notice of such documents was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Plan, the Solicitation Procedures Orders, the Bankruptcy Code, and the Bankruptcy Rules. The Plan Documents, including the Plan Supplement, and the documents related thereto, are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan, the Debtors reserve the right to alter, amend, update, or modify such documents in accordance with the terms of the Restructuring Support Agreement, the Plan, this Confirmation Order, the Bankruptcy Code, and the Bankruptcy Rules.

**I.**    **Solicitation Procedures Orders.**

9.    On August 2, 2018 and September 13, 2018, respectively, the Court entered the Solicitation Procedures Orders, which, among other things: (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the

Bankruptcy Code and Bankruptcy Rule 3017; (b) approved procedures for the solicitation and tabulation of votes on the Plan (the "Solicitation Procedures"); (c) approved the Solicitation Packages (defined below); (d) set the deadline to vote to accept or reject the Plan (the "Voting Deadline") as September 14, 2018 at 5:00 p.m. (prevailing Eastern Time) for Holders of Claims in all Classes other than Class 6 and Class 8, and September 27, 2018 at 5:00 p.m. (prevailing Eastern Time) for Holders of Claims in Class 6 and Class 8; (e) set September 27, 2018 at 5:00 p.m. (prevailing Eastern Time) as the deadline for objecting to the Plan (the "Plan Objection Deadline"); and (f) set October 2, 2018, at 1:00 p.m. (prevailing Eastern Time) as the date and time for the Confirmation Hearing. The period during which the Debtors solicited acceptances to the Plan is a reasonable and adequate period of time for creditors to have made an informed decision to accept or reject the Plan.

## J.     Solicitation and Notice.

10.     The Plan, Disclosure Statement, Solicitation Procedures Orders, notice of the Confirmation Hearing, and an appropriate ballot (collectively, the "Ballots") for voting on the Plan or a notice of non-voting status (in substantially the forms approved pursuant to the Solicitation Procedures Orders) and additional materials detailed in the Solicitation Procedures Orders (collectively, the "Solicitation Packages") were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Orders to each Holder of a Claim or Equity Interest. The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith, and was in compliance with sections 1125, 1126, and all other applicable sections of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, and all other applicable rules, laws, and regulations. As evidenced by the Solicitation Affidavits, all parties required to be given notice of the Confirmation Hearing

#50316796 v1

(including the deadline for filing and serving objections to Confirmation) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  No other or further notice is required.

**K.    Voting Report.**

11.    Prior to the Confirmation Hearing, the Debtors filed the Voting Report.  As set forth in the Voting Report, the procedures used to tabulate the Ballots were fair and conducted in accordance with the Solicitation Procedures Orders, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations.

12.    As set forth in the Plan, Holders of Claims in Classes 5, 6, 7 and 8 (collectively, the "Voting Classes") for each of the Debtors were eligible to vote on the Plan pursuant to the Solicitation Procedures.  In addition, Holders of Claims or Equity Interests in Classes 1, 2, 3, 4 and 11 are Unimpaired and conclusively presumed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan.  Holders of Claims in Class 9 either are Unimpaired, in which case they are conclusively presumed to accept the Plan, or Impaired, in which case they are deemed to reject the Plan, and therefore, are not entitled to vote to accept or reject the Plan. Holders of Equity Interests in Classes 10 and 12 (together with holders of Claims in Class 9, to the extent Impaired under the Plan, the "Deemed Rejecting Classes") are Impaired under the Plan, are entitled to no recovery under the Plan, and are therefore deemed to have rejected the Plan.

13.    As evidenced by the Voting Report, each of the four Voting Classes voted to accept the Plan for each Debtor.

**L.    Burden of Proof.**

14.    The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance

#50316796.v1

of the evidence, which is the applicable evidentiary standard for Confirmation.  Further, the Debtors have proven the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code, to the extent applicable, by clear and convincing evidence.

**M.    Background Facts**

15.    Based upon the Confirmation Declarations, the facts set forth therein with respect to: (i) the Debtors' corporate structure, assets and liabilities; (ii) the events leading to the commencement of the Chapter 11 Cases; (iii) the actions taken during the Chapter 11 Cases; (iv) the negotiations that occurred and the settlements reached that provided the foundation of the Plan; (v) the Debtors' projections, liquidation analysis, valuation and the allocation of that value among the Classes under the Plan; (vi) the classification of Claims and Equity Interests, their treatment under the Plan, the solicitation of votes and the results thereof; and (vii) the transactions contemplated to implement the Plan, including the New Exit ABL Facility, the proposed new officers and directors of the Reorganized Debtors (as disclosed in the Plan Supplement), the Amended Organizational Documents for the Reorganized Debtors (as disclosed in the Plan Supplement), and the payment of fees and expenses incident to the Chapter 11 Cases (including in connection with the New Exit ABL Facility), are uncontroverted, are incorporated herein by reference and establish the factual predicates supporting confirmation of the Plan.

**N.    Plan Settlements.**

16.        Based upon the Confirmation Declarations, the Global Settlement incorporated into the Plan avoids costly, lengthy, and uncertain litigation over many complex issues, including (i) valuation and allocation of value, (ii) the allowance of GSO's and Philips' claims against the Debtors' Estates, and (iii) the claims against GSO and the Specified Persons that are being settled.  The Debtors' and their Estates' likelihood of success on each of these issues was not certain and their consensual resolution pursuant to the Global Settlement will

#50316796.v1

provide a significantly superior outcome to the Debtors and their stakeholders in the form of greater and more certain recoveries for creditors, without the cost and delay of complex, difficult, and protracted litigation.

17.     Moreover, by settling with GSO in a manner that allows them to recover Profits Interests in Class 7 on account of GSO's claims against Gibson Holdings but with GSO not asserting <u>any</u> claim in Class 6, GSO's recovery in Class 7 is not dilutive to creditors (other than the Holders of the Prepetition Secured Notes who are the only other creditors in Class 7 and are party to the Global Settlement).  Similarly, the Prepetition Secured Noteholders' agreement not to seek a distribution in Class 6 increases recoveries for all Class 6 creditors.

18.     In addition, by resolving the threatened litigation that was preserved under the Third Amended Plan as against certain of the Debtors' directors, the Reorganized Debtors will benefit from not having the indemnity costs, insurance premium increases and distraction associated with such claims.

## O.     <u>MODIFICATIONS TO THE PLAN</u>

### 1.     **Plan Modifications.**

19.     The Plan contains certain modifications as compared to the Fourth Amended Plan (the "<u>Plan Modifications</u>").  Except as provided for by law, contract, or prior order of this Court, none of the modifications made since the commencement of solicitation adversely affects the treatment of any Claim or Equity Interest under the Plan.  The filing with the Court of the Plan as modified by the Plan Modifications constitutes due and sufficient notice thereof.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, none of these modifications require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code (especially in light of previously provided disclosures), nor do they require that Holders of Claims be afforded an

#50316796.v1

opportunity to change previously cast acceptances or rejections of the Plan. The Plan as modified and attached hereto shall constitute the Plan submitted for Confirmation by the Court.

**2. Presumed Acceptance of Plan as Modified.**

20. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Equity Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are presumed to have accepted the Plan as modified by the Plan Modifications. No Holder of a Claim or Equity Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

**P. Compliance with the Bankruptcy Code (11 U.S.C. §§ 1125 and 1127).**

21. The Debtors have complied with section 1125 with respect to the Disclosure Statement and the Plan. The requirements of section 1127 of the Bankruptcy Code have been satisfied.

**Q. Good Faith, Best Interests, Fair and Equitable.**

22. The Restructuring Transactions under the Plan enable the Debtors to emerge from chapter 11 with new owners, a deleveraged balance sheet, and cash and liquidity to operate. The Plan was proposed in good faith and the consummation of the Plan is in the best interests of all stakeholders and is fair and equitable.

## II. CONFIRMATION

**A. Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129).**

23. The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code.

**1. Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

24. As required by section 1129(a)(1) of the Bankruptcy Code, the Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123.

-11-

### (i)    Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).

25.    The classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code.  Article III of the Plan designates Classes of Claims and Equity Interests, other than Administrative Expense Claims, DIP Facility Claims, and Priority Tax Claims, which, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be designated.  As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class.  Valid reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan.  The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

### (ii)    Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2), 1123(a)(3) and 1123(b)(1)).

26.    Article III of the Plan specifies that Claims and Equity Interests in Classes 1, 2, 3, 4 and 11 are Unimpaired.  Article III of the Plan also specifies the treatment of each Impaired Class under the Plan, which are Classes 5, 6, 7, 8, 10 and 12.  The Plan, therefore, satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code and the impairment or unimpairment of Claims and Equity Interests under the Plan is permitted under section 1123(b)(1) of the Bankruptcy Code.  Holders of Claims in Class 9 are deemed to accept or deemed to reject the Plan depending on whether such Claims are reinstated or canceled and released without any distribution on account of such Claims.

### (iii)    No Discrimination (11 U.S.C. § 1123(a)(4)).

27.    Article III of the Plan provides the same treatment for each Claim or Equity Interest within a particular Class unless the Holder of a particular Claim or Equity Interest has

#50316796.v1

agreed to a less favorable treatment with respect to such Claim or Equity Interest.  The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### (iv)    Implementation of the Plan (11 U.S.C. § 1123(a)(5)).

28.    The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the Plan's implementation, including, without limitation:  (a) the good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan; (b) the cancellation of all agreements, instruments, Securities and other documents evidencing any Claim or Equity Interest and any rights of any Holder in respect thereof (except to the extent set forth in the Plan); (c) consummation of the Restructuring Transactions, including generally allowing for all corporate action necessary to effectuate the Restructuring Transactions; (d) funding distributions under the Plan through Cash on hand, proceeds of the New Exit ABL Facility, and issuance of the Profits Interests, New Common Stock and the New Warrants; (e) entry into, and the incurrence of new indebtedness under, the New Exit ABL Facility, including payment of the Deposit as defined in and required under the Commitment Letter dated October [1], 2018 with respect to the New Exit ABL Facility (the "ABL Deposit") immediately upon the Court's approval of the Plan; (f) vesting of assets in the Reorganized Debtors; (g) exemption from transfer taxes pursuant to section 1146 of the Bankruptcy Code; and (h) the appointment and selection of officers and directors of the Reorganized Debtors.  The Plan, therefore, satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

### (v)    Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).

29.    Article V.N. of the Plan provides that the Amended Organizational Documents will prohibit the issuance of non-voting equity securities, and the Amended Organizational Documents filed with the Plan Supplement include such prohibition (other than Gibson Europe

#50316796.v1

B.V., which is not a U.S. corporation and is subject to Dutch law). The Plan, therefore, satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

### (vi)   Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).

30.   Article V.O. of the Plan describes the manner of selection of directors and officers of the Reorganized Debtors.   Such provisions are entirely consistent with the interests of creditors, equity security holders, and public policy.   Exhibit D of the Plan Supplement provides the disclosures regarding directors and officers.   The Plan, therefore, satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

### (vii)   Discretionary Contents of the Plan (11 U.S.C. § 1123(b)).

31.   The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.   The Plan, therefore, satisfies the requirements of section 1123(b) of the Bankruptcy Code.

### (a)   Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).[3]

32.   Article VI of the Plan governs the assumption or rejection of the Debtors' Executory Contracts and Unexpired Leases that were not previously assumed or rejected pursuant to an order of the Court.

33.   As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure amounts, all Executory Contracts and Unexpired Leases of the Debtors that the Debtors have identified on the *Notice of Potential Assumption of Executory Contracts and Unexpired Leases and Cure Amounts* [Docket No. 701], the *Second Amended Notice of Potential Assumption of Executory Contracts and Unexpired Leases and Cure Amounts* [Docket No. 793], and the *Third Amended Notice of Potential Assumption of Executory Contracts and Unexpired*

---

[3] Section 1123(b)(1) of the Bankruptcy Code is addressed in Section II.A.1II.A.1(iii) above.

#50316796.v1

*Leases and Cure Amounts* [Docket No. 803], will be deemed assumed in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts (including employment agreements) and Unexpired Leases that (a) have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto, (b) have been previously assumed or rejected by order of the Bankruptcy Court, (c) are the subject of a separate motion Filed by the Debtors under section 365 of the Bankruptcy Code before the Confirmation Date for assumption or rejection, (d) are identified on the Rejected Executory Contract/Unexpired Lease List [Docket No. 812-8]; or (e) are the subject of a Cure Objection [Docket Nos. 728, 774, 822].

34.    Entry of this Confirmation Order by the Court shall constitute an order approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts and Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective Date.

35.    To the extent a Cure Objection was not resolved consensually prior to the Confirmation Hearing, the Debtors or the Reorganized Debtors, as the case may be, shall schedule a hearing to determine the Cure amount within 60 days following the Confirmation Hearing, or such other date as may be agreed to with the counterparty or ordered by the Bankruptcy Court.   Within ten (10) days following the Bankruptcy Court's entry of an Order determining any Cure amounts for such Executory Contract or Unexpired Lease, the Debtors or the Reorganized Debtors, as the case may be, may elect to reject such Executory Contract or Unexpired Lease by filing with the Bankruptcy Court a notice of such rejection (a "Rejection Notice") and such rejection shall be effective as of the date the Rejection Notice is filed.   For the avoidance of doubt, if a Rejection Notice is not filed within such ten (10) day period, such

#50316796.v1

Executory Contract or Unexpired Lease shall be deemed to have been assumed as of the expiration of such period and the Cure amount shall be paid within ten (10) days thereafter.  In the event the Debtors or the Reorganized Debtors, as the case may be, and the counterparty consensually resolve a Cure Objection (or fail to do so) prior to the Court's determination of such Cure Objection, the Debtors or the Reorganized Debtors, as the case may be, shall be permitted to, as applicable, either  (i) assume the Executory Contract or Unexpired Lease by filing a notice of such assumption (which notice shall be in form and substance reasonably acceptable to the counterparty), in which case the assumption shall be effective as of the date such notice is filed and the Cure amount shall be paid within ten (10) days following such date; or (ii) reject the Executory Contract or Unexpired Lease by filing a Rejection Notice, in which case such rejection shall be effective as of the date the Rejection Notice is filed.

**(b)      Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)).**

36.      **Compromise and Settlement**.  Pursuant to Bankruptcy Rule 9019 (as applicable) and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed Claim or Equity Interest.  The entry of this Confirmation Order shall constitute the Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Equity Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019 (as applicable), without any further

-16-

notice to or action, order, or approval of the Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against the Debtors and their Estates and Causes of Action against other Entities.

37.     **Debtor Release**.  Each of the Released Parties has made a substantial contribution to the Plan and to the Debtors' reorganization, and the Debtor Release is an essential component of the Plan.  Each of the Voting Classes voted to accept the Plan, as set forth in the Voting Report.  Accordingly, and for the reasons set forth herein and in the Confirmation Brief, the Debtor Release is: (1) a reasonable exercise of the Debtors' business judgment; (2) in exchange for the good and valuable consideration provided by the Released Parties; (3) a good faith settlement and compromise of the Claims released by Article X.B of the Plan; (4) in the best interests of the Debtors and all Holders of Claims and Equity Interests; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Debtors asserting any claim or Cause of Action released pursuant to the Debtor Release.

38.     **Releases by Holders of Claims and Equity Interests** (**the "<u>Third Party Release</u>"**).  Each of the Released Parties has made a substantial contribution to the Plan and to the Debtors' reorganization and the Third Party Release is an essential component of the Plan. Each of the Voting Classes voted to accept the Plan as set forth in the Voting Report.  In addition, the Third Party Release is consensual in that all parties to be bound by the Third Party Release were given due and adequate notice of the Third Party Release and sufficient opportunity and instruction to elect to opt out of the Third Party Release.  Accordingly, for the reasons set forth herein and in the Confirmation Brief, the Third Party Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by Article X.C of the Plan; (3) in the

#50316796 v1

best interests of the Debtors and all Holders of Claims and Equity Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity granting a Third Party Release from asserting any claim or Cause of Action released pursuant to the Third Party Release. For the reasons set forth on the record of the Confirmation Hearing, including the Court's ruling reflected on pages 60 through 67 of the transcript of the Confirmation Hearing attached hereto as **Exhibit B**, the Third Party Release in Article X.C of the Plan is approved.

39.    **Exculpation**.    The exculpation provided by Article X.E of the Plan ("Exculpation") for the benefit of the Exculpated Parties is appropriately tailored to the circumstances of these Chapter 11 Cases.    The Exculpated Parties have participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes to accept or reject the Plan and the distribution of the Securities pursuant to the Plan.

40.    **Injunction**.    The injunction provisions set forth in Article X.G of the Plan (the "Injunction") are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third Party Release, and the Exculpation provisions in the Plan.    Such injunction provisions are appropriately tailored to achieve those purposes. Accordingly, the Injunction is approved.

41.    **Subordinated Claims**.    The allowance, classification, and treatment of all Allowed Claims and Equity Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.    In accordance with the provisions of the

#50316796.v1

Plan and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date the Reorganized Debtors may (1) compromise and settle (directly or through the Distribution Agent) Claims against the Reorganized Debtors (subject to Article VIII.D.2 of the Plan) and (2) compromise and settle Causes of Action against other Entities that were not released or waived under the Plan.

42.    **Preservation of Rights of Action**.  The provisions set forth in Article X.F of the Plan regarding the preservation of Causes of Action in the Plan are appropriate and are in the best interests of the Debtors, their respective Estates, and holders of Claims and Equity Interests.

### (c)    Other Appropriate Provisions (11 U.S.C. § 1123(b)(6)).

The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (A) distributions to Holders of Claims and Interests, (B) allowance of certain Claims, (C) indemnification obligations, (D) releases by the Debtors of certain parties, (E) releases by certain third parties, (F) exculpations of certain parties, and (G) retention of Court jurisdiction, thereby satisfying the requirements of section 1123(b)(6).

### 2.    The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

43.    The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

44.    As set forth in greater detail in the Voting Report, votes to accept or reject the Plan were solicited by the Debtors and their agents after the Court approved the Disclosure

#50316796.v1

Statement pursuant to section 1125(a) of the Bankruptcy Code and entered the Solicitation Procedures Orders.

45.    As set forth in greater detail in the Voting Report, the Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Solicitation Procedures Orders, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provisions set forth in Article X.E of the Plan.

46.    The Debtors and their agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made thereunder, so long as such distributions are made consistent with and pursuant to the Plan.

   **3.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).**

47.    The Debtors have proposed the Plan in good faith and not by any means forbidden by law.   The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to reorganize and emerge from bankruptcy with healthy, deleveraged balance sheets and sufficient liquidity to operate.   The Plan, and the transactions incorporated therein are the result of intense arm's length negotiations and settlement discussions and have been proposed in good faith and for a proper purpose.   In determining that the Plan satisfies section 1129(a)(3), the Court has examined the totality of the circumstances surrounding

#50316796 v1

the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its Confirmation. Pursuant to Bankruptcy Rule 3020(b)(2) and in the absence of objections to the Plan on the grounds that the Plan does not satisfy section 1129(a)(3) of the Bankruptcy Code, the Court hereby rules that the Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

**4.      Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

48.      Payments made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Court as reasonable.  The Plan, therefore, satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

**5.      Directors, Officers, and Insiders (11. U.S.C. § 1129(a)(5)).**

49.      The Reorganized Debtors' initial directors and officers, to the extent known, have been disclosed at or prior to the Confirmation Hearing and, to the extent not known, will be determined in accordance with the Amended Organizational Documents.  The proposed officers and directors for the Reorganized Debtors are qualified, and their appointment to, or continuance in, such roles is consistent with the interests of Holders of Claims and Equity Interests and with public policy.   Accordingly, the Plan, in conjunction with the Plan Supplement, satisfies the requirements of section 1129(a)(5).

**6.      No Rate Changes (11 U.S.C. § 1129(a)(6)).**

50.      The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

#50316796.v1

### 7.      Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).

51.      Each Holder of an Impaired Claim or Impaired Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.   The Liquidation Analysis (as defined in the Disclosure Statement), and the other evidence related thereto, as supplemented by any evidence proffered or adduced at or prior to the Confirmation Hearing, are persuasive and credible.   The methodology used and assumptions made in the Liquidation Analysis, as supplemented by any evidence proffered or adduced at or prior to the Confirmation Hearing, are reasonable.   The Plan, therefore, satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

### 8.      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).

52.      Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan.   Classes 1, 2, 3, 4 and 11 are Unimpaired Classes of Claims or Equity Interests, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.   Classes 5, 6, 7 and 8 are the Impaired Classes entitled to vote on the Plan, each of which voted to accept the Plan.   Classes 10 and 12 are Impaired Classes that will not receive or retain any property under the Plan; such classes are not entitled to vote on the Plan, and thus are deemed to reject the Plan (as defined above, the "Deemed Rejecting Classes").   Class 9 is a Class of Intercompany Claims, which Intercompany Claims are either (a) cancelled, and thus Impaired and deemed to reject the Plan or (b) reinstated, and thus Unimpaired and presumed to have accepted the Plan.

#50316796 v1

9.      **Deemed Rejecting Classes (11 U.S.C. § 1129(b)).**

53.     Because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code.  Thus, although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes, as described further below.

10.     **Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9)).**

54.     The treatment of Administrative Expense Claims, DIP Facility Claims, and Priority Tax Claims as set forth in Article II of the Plan is in accordance with the requirements of section 1129(a)(9) of the Bankruptcy Code.  The Plan, therefore, satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

11.     **Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

55.     As set forth in the Voting Report, all Voting Classes are Impaired and each Voting Class has voted to accept the Plan by the requisite number and amount of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code) at each Debtor.  The Plan, therefore, satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

12.     **Feasibility of the Plan (11 U.S.C. § 1129(a)(11)).**

56.     Based upon the evidence proffered or adduced at or prior to the Confirmation Hearing, and in the Fox Declaration, Confirmation Brief, and financial projections attached to the Fox Declaration, the Plan is feasible and Confirmation is not likely to be followed by the

#50316796 v1

Reorganized Debtors liquidating or requiring further financial reorganization. The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**13.     Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)).**

57.     Article XIII.C of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a). The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**14.     Retiree Benefits (11 U.S.C. § 1129(a)(13)).**

58.     Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits (as defined in section 1114 of the Bankruptcy Code) at levels established pursuant to section 1114 of the Bankruptcy Code. The Debtors have not obligated themselves to provide retiree benefits as the term is defined in section 1114 of the Bankruptcy Code and therefore the requirements under section 1129(a)(13) of the Bankruptcy Code are inapplicable.

**15.     Non-applicability of Certain Sections (11 U.S.C. §§ 1129(a)(14), (15), and (16)).**

59.     The Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations. Therefore, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

**16.     Confirmation of Plan Over Nonacceptance of Impaired Classes (11 U.S.C. § 1129(b)).**

60.     The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because: (x) each Voting Class voted to accept the Plan; (y) the Plan satisfies all requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8); and (z) the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes. First, there is no

#50316796.v1

Class of equal priority receiving more favorable treatment than the Deemed Rejecting Classes. Second, there is no Class of Claims or Equity Interests junior to the Deemed Rejecting Classes that will receive or retain any property under the Plan on account of such Claims or Equity Interests.  To the extent Class 9 Intercompany Claims are reinstated, such treatment is provided for administrative convenience and efficiency, and not on account of such Claims, and will not alter the treatment provided for any other Holder of any Claim or Equity Interest.  The Plan, therefore, satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

      **17.**      **Only One Plan (11 U.S.C. § 1129(c)).**

61.      Other than the Plan (including previous versions thereof), no other plan has been filed for the Debtors in the Chapter 11 Cases.  The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

      **18.**      **Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

62.      The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act, 15 U.S.C. § 77e.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

      **19.**      **Not a Small Business Case (11 U.S.C. § 1129(e)).**

63.      These Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**B.**      **Satisfaction of Confirmation Requirements.**

64.      Based upon the foregoing, the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

#50316796.v1

**C.      Good Faith Solicitation (11 U.S.C. § 1125(e)).**

65.     Based on the record in the Chapter 11 Cases, the Exculpated Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the Plan, including, but not limited to, any action or inaction in connection with their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provisions set forth in Article X.E of the Plan on the terms set forth therein.

**D.      New Exit ABL Facility.**

66.     Based on evidence adduced at the Confirmation Hearing, including the Finger Declaration and the Confirmation Brief, the proposed terms and conditions of the New Exit ABL Facility are fair and reasonable.  The New Exit ABL Facility and the proceeds from it are essential elements of the Plan and the Debtors' ability to emerge from chapter 11, and entry into and consummation of the transactions contemplated by the New Exit ABL Facility and related documents, including execution of the New Exit ABL Facility Documents and payment of the ABL Deposit immediately upon the Bankruptcy Court's approval of the Plan,  are in the best interests of the Debtors, the Estates, and Holders of Claims and Equity Interests and are approved in all respects.  The Debtors have exercised reasonable business judgment consistent with their fiduciary duties in connection with the New Exit ABL Facility and the proposed terms and conditions thereunder have been negotiated in good faith and at arm's-length by the parties thereto, and without intent to hinder, delay, or defraud any creditor of the Debtors, and each party thereto may rely upon the provisions of this Confirmation Order in closing and performance under the New Exit ABL Facility.  The proposed terms and conditions of the New

#50316796.v1

Exit ABL Facility, and the financial accommodations extended thereunder, are fair and reasonable, do not conflict with applicable law, and are supported by reasonably equivalent value and fair consideration, and are approved.  The Debtors have provided sufficient and adequate notice of the New Exit ABL Facility to all parties in interest in the Chapter 11 Cases.

E.      **New Common Stock.**

67.      The issuance and distribution of the New Common Stock is an essential element of the Plan and the Debtors' ability to emerge from chapter 11, and is in the best interests of the Debtors, the Estates, and Holders of Claims and Equity Interests and is approved in all respects.

F.      **Profits Interests**

68.      The Profits Interests being provided to Holders of Allowed Claims in Class 6 and 7 are on account of their Allowed Claims.  The terms and conditions of the Profits Interests, including the administration thereof by the Reorganized Debtors, are fair and reasonable, and the issuance and distribution of the Profits Interests is approved in all respects.

G.      **D&O Tail.**

69.      The Debtors have provided for the funding of the D&O Tail Policy as required under the Plan.

H.      **Plan Value**

70.      The enterprise value of the Debtors and the Plan Value set forth in the Finger Declaration support the treatment of Claims and Equity Interests under the Plan.

I.      **Plan Implementation.**

71.      Article V of the Plan details the means for implementation of the Plan.  These actions to be taken to implement the Plan have been adequately disclosed, are necessary to implement the Plan and provide for the treatment of the Allowed Claims, are fair and reasonable, and are in the best interests of the Debtors' Estates.

#50316796.v1

**J.**    **Conditions to Effective Date.**

72.    Entry of this Confirmation Order shall satisfy the applicable condition to the Effective Date as set forth in Article IX.B of the Plan; *provided* that this Confirmation Order shall not have been stayed, modified, or vacated on appeal.  The conditions precedent to the Effective Date set forth in Article IX.B of the Plan may be waived only in accordance with Article IX.C of the Plan, and without any formal action other than proceeding to confirm the Plan.

### III. ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, JUDGED, AND DECREED THAT:**

**A.**    **Findings of Fact and Conclusions of Law.**

73.    The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

**B.**    **Confirmation.**

74.    The Plan, attached hereto as **Exhibit A**, including all exhibits thereto and the Plan Supplement, is approved in its entirety and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan and the Debtors' entry into the agreements comprising the Plan Documents and related documents and the performance thereunder, including, without limitation, the New Exit ABL Facility, the New Warrants, the New Common Stock Agreement, the Amended Organizational Documents, the funding of the Distribution Account and the Professional Fee Reserve and the issuance of the New Common Stock and the Profits Interests and the administration of the same are hereby approved and authorized.  The Debtors and the

-28-

Reorganized Debtors are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, and other agreements or documents created in connection with the Plan, including entry into the Plan Documents.  The terms of the Plan, the Plan Documents (including the Plan Supplement) and all exhibits thereto, shall be effective and binding as of the Effective Date.  ~~The~~

75.    Notwithstanding anything herein to the contrary, the Bankruptcy Court has not been asked to approve, nor is it authorizing, approving or directing the execution of the Management Employment and Consulting Agreements, which agreements are not obligations of the Debtors' Estates, provided further, however, nothing herein shall alter the conditions precedent to consummation of the Plan in Article IX.B of the Plan.

## C.    **Objections.**

~~75~~76.    All objections to Confirmation of the Plan have been withdrawn, waived, or otherwise resolved by the Debtors prior to entry of this Confirmation Order.  To the extent that any objections (including any reservations of rights contained therein) to Confirmation of the Plan (other than the payment or amount of the cure amounts with respect to any assumed Executory Contract or Unexpired Lease) have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, are not cured by the relief granted herein, or otherwise resolved as stated by the Debtors on the record of the Confirmation Hearing, all such objections are overruled on the merits.

## D.    **References to and Omissions of Plan Provisions.**

~~76~~77.    References in this Confirmation Order to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish

#50316796.v1

or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference, and that the Plan Supplement and all exhibits and schedules thereto, and all other agreements, instruments or other documents filed in connection with the Plan, and/or executed or to be executed in connection with the transactions contemplated by the Plan and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications are approved in their entirety.

**E.      Headings.**

77~~78~~.  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

**F.      Classifications.**

78~~79~~.  The terms of the Plan shall govern the classification of Claims and Equity Interests for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the holders of Claims in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Equity Interests under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim or Equity Interest as representing the actual classification of such Claim or Equity Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

**G.      General Settlement of Claims and Equity Interests.**

79~~80~~.  As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 (as applicable), and in consideration for the classification, distributions, releases, and other benefits

-30-

provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of Claims and Equity Interests and controversies resolved pursuant to the Plan.  Distributions made to Holders of Allowed Claims in any Class are intended to be, and shall be, final.

8081.   The transactions contemplated by the Global Settlement as detailed in the Plan Modification Agreement and incorporated into the Plan are fair and reasonable, meet the standard for approval of compromises under Bankruptcy Rule 9019 and are approved in their entirety.

### H.    Approval of Restructuring Transactions.

8182.   This Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

### I.    New Exit ABL Facility and Approval of New Exit ABL Facility Documents.

8283.   Confirmation of the Plan shall be deemed to constitute approval of the New Exit ABL Facility and the New Exit ABL Facility Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, including payment of the ABL Deposit immediately upon Bankruptcy Court approval of the Plan, and authorization of the Reorganized Debtors to enter into and execute the New Exit ABL Facility Documents and such other documents as may be required to effectuate the treatment afforded by the New Exit ABL Facility.  If the Debtors enter into the New Exit ABL Facility on the Effective Date, then, on the Effective Date, all of the Liens and security interests to be granted in accordance with the New

-31-

Exit ABL Facility Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New Exit ABL Facility Documents, (c) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be expressly permitted under the New Exit ABL Facility Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.

**J.**    **Issuance of New Common Stock, New Warrants, Profits Interests and Related Documentation.**

83.84.    As set forth in Article V.I.1 of the Plan, from and after the Effective Date, Reorganized Gibson shall be authorized to and shall issue the New Common Stock to certain Holders of Allowed Claims, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.  All Holders of Claims that receive New Common Stock under the Plan, and any Person receiving any rights exercisable into New Common Stock, in the form of the New Warrants, or pursuant to the Management Incentive Plan, or otherwise, and all transferees of such Persons (including transferees of transferees) shall be deemed to have executed the New Common Stock Agreement and shall by bound thereby without any further action by the Debtors or any other party (regardless of whether any such Person actually executes the New Common Stock Agreement).  Confirmation of the Plan shall be deemed to constitute approval of the New Common Stock Agreement, and the New Common Stock Agreement shall be deemed to be valid, binding, and enforceable in accordance with its terms.

#50316796.v1

8485.   The New Common Stock in Reorganized Gibson issued pursuant to the Plan in exchange for the DIP Facility Claims, the DIP Backstop Premium, the Exit Premium, and the Allowed Class 5 Prepetition Secured Notes Claim, shall be exempt from any registration requirements under any securities laws to the fullest extent permitted by section 4(a)(2) of the Securities Act and Rule 506 of Regulation D promulgated thereunder and by section 1145 of the Bankruptcy Code.

8586.   The Profits Interests issued pursuant to the Plan in exchange for Allowed Class 6 Claims and Allowed Class 7 ITLA Guaranty Claims shall be exempt from any registration requirements under any securities laws to the fullest extent permitted by section 4(a)(2) of the Securities Act and Rule 506 of Regulation D promulgated thereunder and by Section 1145 of the Bankruptcy Code.

8687.   The New Common Stock, New Warrants and Profits Interests issued to officers, employees and consultants of the Reorganized Debtors pursuant to the Management Employment and Consulting Agreements and the Management Incentive Plan shall be exempt from any registration requirements under any applicable securities laws to the fullest extent permitted by section 4(a)(2) of the Securities Act and Rule 506 of Regulation D and/or Rule 701 promulgated thereunder.

8788.   Without limiting the effects of section 3(a)(9) and section 4(a)(2) of the Securities Act, Rules 506 and 701 under the Securities Act, and section 1145 of the Bankruptcy Code, all financing documents, agreements, and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plan, including the New Exit ABL Facility Documents, the New Common Stock, Profits Interests and any other agreement or document related to or entered into in connection with any of the foregoing, shall become

-33-

effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity (other than as expressly required by such applicable agreement).

~~88~~89.   The New Common Stock shall constitute a single class of Equity Securities in Reorganized Gibson and, other than as contemplated by the DIP Facility, DIP Backstop Premium, the Exit Premium, the Management Employee and Consulting Agreements, and the Management Incentive Plan, there shall exist no other Equity Securities, warrants, options, or other agreements to acquire any equity interest in Reorganized Gibson as of the Effective Date. From and after the Effective Date, after giving effect to the transactions contemplated hereby, the authorized capital stock or other equity securities of Reorganized Gibson will be that number of shares of New Common Stock as may be designated in the Amended Organizational Documents.

~~89~~90.   In addition, under section 1145 of the Bankruptcy Code, the New Common Stock shall be freely tradeable by the recipients thereof, subject to (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act; (b) compliance with rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (c) the restrictions, if any, on the transferability of such securities and instruments, including those set forth in the Amended Organizational Documents; (d) the New Common Stock Agreement, and (e) applicable regulatory approval, if any.

~~90~~91.   In connection with the distribution of New Common Stock, New Warrants, and Profits Interests, the Reorganized Debtors shall take all actions reasonably necessary to comply with applicable U.S. federal, state, local and non-U.S. tax withholding obligations, including,

#50316796.v1

when applicable, withholding from distributions a portion necessary, or requiring Holders of such securities to contribute the Cash necessary, to satisfy tax withholding obligations including income, social security and Medicare taxes, and Reorganized Gibson shall pay such withheld taxes to the appropriate Governmental Unit.

**K.**     **Amended Organizational Documents.**

9192.  Confirmation of the Plan shall be deemed to constitute approval of the Amended Organizational Documents.  The Amended Organizational Documents shall amend or succeed the certificates or articles of incorporation, by-laws and other organizational documents of the Debtors that are Reorganized Debtors to satisfy the provisions of the Plan and the Bankruptcy Code, and shall (i) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code; (ii) authorize the issuance of New Common Stock in an amount not less than the amount necessary to permit the distributions thereof required or contemplated by the Plan; and (iii) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate the Plan and the transactions contemplated herein.  After the Effective Date, the Reorganized Debtors may amend and restate their certificates or articles of incorporation and by-laws, and other applicable organizational documents, as permitted by applicable law and the New Common Stock Agreement.  To the extent required under the Plan or applicable non-bankruptcy law, the Reorganized Debtors are authorized to file their respective Amended Organizational Documents with the applicable Secretaries of State or other applicable authorities in their respective states, provinces or countries of incorporation or formation in accordance with the corporate laws of the respective states, provinces or countries of incorporation or formation.

#50316796.v1

**L.**    **Exemption from Certain Transfer Taxes and Recording Fees.**

9293.  To the extent permitted by applicable law, pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States, and this Confirmation Order shall direct the appropriate federal, state or local governmental officials or agents or taxing authority to forgo the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Stamp or Similar Tax or governmental assessment. Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of and the distributions to be made under the Plan, including the New Exit ABL Facility Documents, as applicable; (ii) the issuance of the New Common Stock and the New Warrants; (iii) the maintenance or creation of security or any Lien as contemplated by the New Exit ABL Facility Documents, as applicable; (iv) assignments executed in connection with any transaction occurring under the Plan; and (v) the Church Street Sale.

**M.**    **Directors and Officers of the Reorganized Debtors.**

9394.  The New Board will initially consist of directors and officers who have been identified in the Plan Supplement to the extent known, and such directors and officers shall be deemed elected or appointed, as applicable, and authorized to serve as directors and officers of each of the Reorganized Debtors pursuant to the terms of the applicable Amended Organizational Documents of such Reorganized Debtor.  Such appointment and designation is hereby approved and ratified as being in the best interests of the Debtors and creditors and consistent with public policy, and such directors and officers hereby are deemed elected and appointed, as applicable, to serve in their respective capacities as of the Effective Date without

further action of the Bankruptcy Court, the Reorganized Debtors, or their Equity Security holders.

9495.    Except to the extent that a member of the board of directors of a Debtor continues to serve as a director of such Reorganized Debtor on the Effective Date, the members of the board of directors of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtors on or after the Effective Date and each such director will be deemed to have resigned or shall otherwise cease to be a director of the applicable Debtor on the Effective Date.

**N.**    **Directors and Officers Insurance Policies.**

9596.    Upon the Effective Date, the Reorganized Debtors shall have in full force and effect D&O Liability Insurance Policies for current and former directors and officers of the Debtors and the Non-Debtor Subsidiaries materially consistent with the Debtors' D&O Liability Insurance Policies as in effect immediately prior to the Petition Date.  To the extent, and as permitted by applicable law, as required to implement the preceding sentence, the Reorganized Debtors will assume all of the D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code in effect as of immediately prior to the Petition Date.  Unless previously effectuated by separate order entered by the Bankruptcy Court, entry of this Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan will not impair or otherwise modify any rights of the Reorganized Debtors or current and former directors and officers of the Debtors and the Non-Debtor Subsidiaries (including the Supporting Principals) under the D&O Liability Insurance Policies.

9697.    Further, on or as soon as practicable before the Effective Date, the Debtors shall purchase tail coverage for all current and former directors and officers (including the Supporting

-37-

Principals) with a term of six (6) years from the Effective Date, which tail coverage shall be materially consistent with the D&O Liability Insurance Policies prior to the Petition Date (the "Tail Policy") and satisfactory to the Supporting Principals.

9798.   The Reorganized Debtors shall maintain the D&O Liability Insurance Policies (including the Tail Policy) for all current and former directors and officers of the Debtors and the Non-Debtor Subsidiaries in accordance with its terms to the maximum extent of the coverage available for the indemnitees under such policies.  Upon receipt of a notice of a claim or proceeding with respect to which coverage under the Tail Policy D&O Liability Insurance Policies could apply, the Reorganized Debtors shall give prompt notice of such claim or the commencement of such proceeding to the insurer(s) in accordance with the procedures set forth in the applicable policies.

## O.    **Corporate Action.**

9899.   Upon the Effective Date, each of the Debtors and the Reorganized Debtors, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan and the Global Settlement thereunder, including: (i) the distribution of the Securities to be issued pursuant hereto in the name of and on behalf of the Reorganized Debtors; (ii) the execution and implementation of the Restructuring Transactions pursuant to the Plan Documents; (iii) the issuance and administration of the Profits Interests; (iv) the funding of the Distribution Account and the Professional Fee Reserve Account; (v) the execution and Filing of the Amended Organizational Documents; (vi) the transfer of the assets of, and the liquidation of, the Excluded Debtor Subsidiaries; and (vii) the change of the corporate name of Debtor Cakewalk, Inc. to Guitar Liquidation Corporation or any similar name, the filing of all necessary corporate

#50316796 v1

documents to implement the same, and the appointment of Debtor Cakewalk, Inc. as the Distribution Agent for Allowed Administrative Claims, and Class 6, 7 and 8 Allowed Claims, and in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the Security holders, officers or directors of the Debtors or the Reorganized Debtors or the Non-Debtor Subsidiaries, as applicable, or by any other Person (except for those expressly required pursuant to the Plan or the Restructuring Support Agreement).

99100.  Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the stockholders, directors, managers or members of any Debtor will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the Security holders, directors, managers or members of such Debtors, or the need for any approvals, authorizations, actions or consents of any Person (except as expressly required pursuant to the Restructuring Support Agreement).

1001.  All matters provided for in the Plan involving the legal or corporate structure of each Debtor, Reorganized Debtor, Excluded Debtor Subsidiary, Non-Debtor Subsidiary, or Excluded Non-Debtor Subsidiary (other than the GI Entities that are represented by a GI Representative), as applicable, and any legal or corporate action required by each Debtor, Reorganized Debtor, Excluded Debtor Subsidiary, Non-Debtor Subsidiary or Excluded Non-Debtor Subsidiary (other than the GI Entities that are represented by a GI Representative), as applicable, in connection with the Plan, will be deemed to have occurred and will be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court,

#50316796.v1

act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the Security holders, officers or directors of each Debtor, Reorganized Debtor, Excluded Debtor Subsidiary, Non-Debtor Subsidiary, or Excluded Non-Debtor Subsidiary, as applicable, or by any other Person (except as expressly required pursuant to the Restructuring Support Agreement).   On the Effective Date, the appropriate officers of each Debtor, Reorganized Debtor, Excluded Debtor Subsidiary, Non-Debtor Subsidiary, and Excluded Non-Debtor Subsidiary, as applicable, are authorized to issue, execute, deliver, and consummate the transactions contemplated by the contracts, agreements, documents, guarantees, pledges, consents, Securities, certificates, resolutions and instruments contemplated by or described in the Plan in the name of and on behalf of each Debtor, Reorganized Debtor, Excluded Debtor Subsidiary, Non-Debtor Subsidiary, and Excluded Non-Debtor Subsidiary, as applicable, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person (except as expressly required pursuant to the Restructuring Support Agreement).   The secretary and any assistant secretary, or other authorized person, of each Debtor, Reorganized Debtor, Excluded Debtor Subsidiary, Non-Debtor Subsidiary, and Excluded Non-Debtor Subsidiary, as applicable, will be authorized to certify or attest to any of the foregoing actions.

**P.** **Effectuating Documents; Further Transactions.**

10~~1~~2.   On and after the Effective Date, the Reorganized Debtors, and the officers and members of the New Board are authorized to and may issue, execute, deliver, file or record such contracts, Securities, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan, and the Securities issued pursuant to the Plan.

-40-

**Q.**    **Professional Fee Reserve Account.**

10~~2~~3.  On the Effective Date, the Debtors will establish the Professional Fee Reserve Account and fund into the Professional Fee Reserve Account Cash equal to the Professional Fee Claim Reserve Amount for the benefit of the Professionals.  The Professional Fee Reserve Account shall only be available to satisfy the Allowed Professional Fee Claims.  The DIP Agent, the DIP Lenders, the Prepetition Indenture Trustee, the Prepetition Secured Noteholders, the Prepetition ABL/Term Loan Agent and the Prepetition ABL/Term Loan Lenders: (i) shall not preclude the use of the Debtors' Cash to fund the Professional Fee Reserve Account in the amount of the Professional Fee Claim Reserve Amount, (ii) shall not foreclose on the Professional Fee Reserve Account, (iii) shall subordinate their security interests, Liens, and Claims (including any superpriority Claim) in the Professional Fee Reserve Account to the payment of the Allowed Professional Fee Claims, (iv) shall only have a security interest, Lien and superpriority Claim upon and to, and the right of enforcement against, such remaining amount in the Professional Fee Reserve Account after payment of the Allowed Professional Fees, and (v) waive, and shall have no right to seek, disgorgement with respect to the payment of any Allowed Professional Fees; *provided*, *however*, that the Reorganized Debtors shall have a reversionary interest in the excess, if any, of the amount of the Professional Fee Reserve Account over the aggregate Allowed Professional Fee Claims of the Professionals.

10~~3~~4.  The Professional Fee Reserve Amount shall not be considered property of the Estates of the Debtors or the Reorganized Debtors.

**R.**    **Treatment of Executory Contracts and Unexpired Leases.**

10~~4~~5.  The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article VI of the Plan (including the procedures regarding the resolution of

any and all disputes concerning the assumption of such Executory Contracts and Unexpired Leases) are hereby approved in their entirety.

**S.    Contracts and Leases Entered Into After the Petition Date.**

10~~5~~6.   Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) that have not been rejected as of the Confirmation Date will survive, subject to the occurrence of the Effective Date and the provisions of the Plan governing the assumption of Executory Contracts and Unexpired Leases.

**T.    Reservation of Rights.**

10~~6~~7.   Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, nor the Debtors' delivery of a notice of proposed assumption and proposed cure amount to applicable contract and lease counterparties, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.

**U.    Workers' Compensation Programs.**

10~~7~~8.   Except as otherwise provided in the Plan, as of the Effective Date, the Reorganized Debtors will continue to honor their obligations under:  (i) all applicable workers' compensation laws in states in which the Reorganized Debtors operate; and (ii) the Reorganized Debtors' written contracts, agreements, agreements of indemnity, self-insured workers' compensation bonds, and any other policies, programs, and plans regarding or relating to workers' compensation and workers' compensation insurance.    All such contracts and

-42-

agreements are treated as Executory Contracts under the Plan and on the Effective Date will be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan will not impair or otherwise modify any rights of the Reorganized Debtors under any such contracts, agreements, policies, programs or plans regarding or relating to workers' compensation or workers' compensation insurance.

**V.**     **Distributions Under the Plan.**

10~~8~~9.   The procedures governing distributions contained in Article VII of the Plan shall be, and hereby are, approved in their entirety.

**W.**     **Procedures for Resolving Disputed, Contingent, and Unliquidated Claims.**

~~109~~110.       The procedures for resolving disputed, contingent, and unliquidated claims, which procedures are contained in Article VIII of the Plan, shall be, and hereby are, approved in their entirety.

**X.**     **Conditions to Effective Date.**

11~~0~~1.   The Plan shall not become effective unless and until the conditions set forth in Article IX.B of the Plan have been satisfied or waived pursuant to Article IX.C of the Plan.  If the Confirmation or Consummation of the Plan does not occur prior to termination of the Restructuring Support Agreement on October 31, 2018 at 11:59 p.m. (ET), the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will: (a) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders or any other Person or Entity; (c) constitute an allowance of any Claim or Equity Interest; or (d) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders or any other Person or Entity in any respect.

#50316796.v1

**Y.**    **The Discharge, Releases, Injunction, Exculpation, and Related Provisions Under the Plan.**

11~~1~~2.    The release, exculpation, discharge, injunction, and related provisions set forth in Article X of the Plan shall be, and hereby are, approved and authorized in their entirety, including, but not limited to:

      a.    **Releases by the Debtors**.  The Debtor Release provisions set forth in Article X.B of the Plan are hereby approved and incorporated herein by reference.

      b.    **Third Party Releases**.  The Third Party Release provisions set forth in Article X.C of the Plan are hereby approved and incorporated herein by reference.

      c.    **Discharge of Claims**.  The discharge provisions set forth in Article X.D. of the Plan are hereby approved and incorporated herein by reference.

      d.    **Exculpation**.  The Exculpation provisions set forth in Article X.E of the Plan are hereby approved and incorporated herein by reference.

      e.    **Injunction**.  The Injunction provisions set forth in Article IX.G of the Plan are hereby approved and incorporated herein by reference.

      f.    **Liens**.  The release of liens provisions set forth in Article V.M of the Plan are hereby approved and incorporated herein by reference.

**Z.**    **Setoffs and Recoupment.**

11~~2~~3.    The Debtors and the Reorganized Debtors, as applicable, or such entity's designee (including the Distribution Agent) may, but shall not be required to, to the extent permitted under applicable law, setoff against any Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights and Causes of Action of any nature that the Debtors and Reorganized Debtors may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; *provided, however*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claims,

-44-

rights and Causes of Action that the Debtors or the Reorganized Debtors possess against such Holder.

## AA.    **Retention of Jurisdiction.**

1134.   Upon the Effective Date this Court shall retain jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and the Plan as legally permissible, as set forth in Article XII of the Plan.

## BB.    **Effect of Confirmation on Modifications.**

1145.   Entry of this Confirmation Order shall be deemed approval of all modifications or amendments to the Plan since the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a determination that such modifications do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

## CC.    **Immediate Binding Effect.**

1156.   Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims and Equity Interests (irrespective of whether Holders of such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases.  Entry of this Confirmation Order shall constitute a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rule 3020(e) and 7062.

#50316796 v1

**DD.**    **Additional Documents.**

11~~6~~7.   Pursuant to Article XIII.I of the Plan, on or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, and such documents shall be included in the Plan Documents.  The Debtors and all Holders of Allowed Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**EE.**    **Payment of Statutory Fees.**

11~~7~~8.   All outstanding fees payable pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date.  All such fees payable after the Effective Date shall be paid prior to the closing of the Chapter 11 Cases when due or as soon thereafter as reasonably practicable.

**FF.**    **Notice of Entry of Confirmation Order, Occurrence of Effective Date and Related Bar Dates.**

11~~8~~9.   The *Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) Related Bar Dates*, substantially in the form attached hereto as **Exhibit ~~B~~C** (the "Notice of Effective Date") is hereby approved.   Except as otherwise provided in Article II.A of the Plan or the Claims Bar Date Order, and except with respect to Administrative Expense Claims that are Professional Fee Claims, DIP Claims, or the ABL Deposit, requests for payment of Allowed Administrative Expense Claims must be Filed and served on the Reorganized Debtors **no later than thirty (30) days after the Effective Date** or such other date as approved by order of the Court, pursuant to the procedures specified in the Notice of Effective Date; *provided*, that the Administrative Expense Claims Bar Date does not apply to Administrative Expense Claims (i) arising in the ordinary course of business or (ii) for self-insured health care expenses.

-46-

**GG.**    **Reservation of Rights.**

~~119~~120.          The Plan shall have no force or effect unless and until the Court enters this Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

**HH.**    **Successors and Assigns.**

12~~0~~1.    Except as may otherwise be provided in the Plan, the rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries or guardian, if any, of each Entity.

**II.**    **Governing Law.**

12~~1~~2.    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; provided that corporate governance matters relating to Debtors or Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

-47-

**JJ.**    **Nonseverability of Plan Provisions Upon Confirmation.**

122~~3~~.    This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (x) valid and enforceable pursuant to its terms; (y) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (z) nonseverable and mutually dependent.

**KK.**    **Plan Supplement.**

123~~4~~.    The Plan Documents, including the documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Debtors and the Reorganized Debtors, are authorized when they are finalized, executed, and delivered.  Without further order or authorization of this Court, the Debtors, Reorganized Debtors, and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Documents, including the documents contained in or referenced in the Plan Supplement, and any amendments, modifications, and supplements thereto, that are consistent with the Plan.  Execution versions of the documents comprising or contemplated by the Plan Documents, including the documents contained in or referenced in the Plan Supplement, and any amendments, modifications, and supplements thereto, shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all mortgages, Liens, deeds of trust, pledges, and security interests purported to be created thereby.

-48-

**LL.**     **Return of Adequate Assurance Deposit.**

124~~5~~.   On the Effective Date, all funds in the Utility Deposit Account (as defined in the Utilities Order) established by the Debtors pursuant to the *Final Order Pursuant to 11 U.S.C. §§ 150(a) and 366 (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment, (II) Establishing Procedures for Resolving Objections by Utility Companies, and (III) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Utility Service* [Docket No. 158] (the "Utilities Order") shall be returned to the Debtors and vest in the Reorganized Debtors free and clear of any liens, claims, or interests.

**MM.**     **Dissolution of the Committee.**

125~~6~~.   On the Effective Date, the Committee and any other statutory committee formed in connection with the Chapter 11 Cases shall dissolve automatically and all members thereof shall be released and discharged from all rights, duties and responsibilities arising from, or related to, the Chapter 11 Cases, *provided, however*, that the Committee's Professionals may prosecute any remaining interim and/or final applications for payment of Professional Fee Claims.

126~~7~~.   On the Effective Date the Creditors' Oversight Committee shall be formed pursuant to Article XIII.B of the Plan, which Creditors' Oversight Committee shall have the consultation and approval rights and provided for under the Plan, *provided, however*, the Creditors' Oversight Committee shall bear its own costs and expenses and none of the Debtors, the Estates, or the Reorganized Debtors shall have any liability for the fees and expenses of the Creditors' Oversight Committee.

**NN.**     **Governmental Approvals Not Required.**

127~~8~~.   Except as otherwise specifically provided herein, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any

-49-

state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

**OO.** **Plan and Confirmation Order Mutually Dependent.**

12~~8~~9.  This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) nonseverable and mutually dependent.

**PP.** **Reversal.**

~~129~~130.        If any of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by a subsequent order of the Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such order by the Debtors, including without limitation the payment of any Administrative Expense Claims or Allowed Claims or the execution and implementation of the New Exit Facility Documents, including the payment of the ABL Deposit provided for therein.  Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such acts or obligations incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the Effective Date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, all documents relating to the Plan, and any amendments or modifications to any of the foregoing.

#50316796.v1

**QQ.   Confirmation Order Supersedes.**

130~~1~~.   It is hereby ordered that this Confirmation Order shall supersede any Bankruptcy Court order issued prior to the Confirmation Date that expressly conflicts with this Confirmation Order.

**RR.   Recording.**

13~~1~~2.   The Debtors and the Reorganized Debtors hereby are authorized to deliver a notice or short form of this Confirmation Order, with the Plan attached (in a form complying with any applicable non-bankruptcy rules or regulations), to any state or local recording officer, and such officer must accept for filing such documents or instruments without charging any stamp tax, recording tax, personal property transfer tax, mortgage, or other similar tax.   Such notice (a) shall have the effect of an order of this Court and (b) shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers.   The Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

**SS.   Term of Injunctions or Stays.**

13~~2~~3.   Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date.   All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

**TT.   Documents, Mortgages, and Instruments.**

13~~3~~4.   Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or

#50316796 v1

appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and this Confirmation Order.

**UU.**   **Authorization to Consummate.**

13~~4~~5.   The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to the satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in Article IX.B of the Plan.

**VV.**   **Substantial Consummation.**

13~~5~~6.   On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**WW.**   **Closing of Chapter 11 Case**

13~~6~~7.   ~~Prior to the Effective Date, the Debtors shall file a motion seeking entry of an order closing as of the Effective Date each of the Debtors' Chapter 11 Cases other than the case of In re Cakewalk, Inc. (Case No. 18-11028 (CSS)).~~ From and after the Effective Date, Debtor Cakewalk, Inc. shall be entitled to change its name to Guitar Liquidation Corporation or any similar name and the caption of its Chapter 11 Case shall be adjusted accordingly upon the filing of notice of such corporate name change on the Bankruptcy Court's docket. The Reorganized Debtors~~,~~ shall be entitled to prosecute claims and defenses and appoint Cakewalk, Inc. as the Distribution Agent to make distributions, and attend to other wind-down affairs on behalf of each of the other prior Debtors~~as if such Debtors' estates continued to exist solely for that purpose~~. The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case of Cakewalk, Inc.

#50316796.v1

**XX.    Effectiveness of All Actions.**

1378.    All actions authorized to be taken pursuant to the Plan and the Plan Supplement shall be effective on, prior to, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of the Court, or further action by the respective officers, directors, managers, members, or stockholders of the Debtors or Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

1389.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and the New Exit ABL Facility, and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Documents, the Plan Supplement, the Disclosure Statement, the New Exit ABL Facility Documents, and any documents, instruments, Securities, or agreements, entered into in connection therewith, and any amendments or modifications thereto.

**YY.    Conflicts Between This Confirmation Order and the Plan.**

139140.    In the event of an inconsistency between the express terms of the Plan and the Disclosure Statement, the Plan Supplement and any other instrument or document created or executed pursuant to the Plan, the express terms of the Plan shall control.  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided, however,* that if there is determined to be any inconsistency between any provision of the Plan and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of

-53-

this Confirmation Order shall govern, and any such provisions of this Confirmation Order shall be deemed a modification of the Plan.

**ZZ.**   **Waiver of Stay.**

140~~0~~1.   For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

**AAA.**   **Final Order.**

141~~1~~2.   This Confirmation Order is a Final Order which shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.   In the absence of any Person obtaining a stay pending appeal, the Debtors are authorized to consummate the Plan.

**BBB.**   **U.S. Department of Justice Provision**

142~~2~~3.   Notwithstanding any provision to the contrary in the Plan, this Order or any other Plan Document:   As to the United States, nothing in the Plan Documents shall: (1) discharge any debt described in Section 1141(d)(6) of the Bankruptcy Code; (2) affect the rights of the United States to assert setoff and recoupment and such rights are expressly preserved; (3) require the United States to File an Administrative Expense Claim in order to receive payment for any liability described in Section 503(b)(1)(B) and (C) as provided in Section 503(b)(1)(D) of the Bankruptcy Code, if such liability exists; (4) affect or impair the exercise of the United States' police and regulatory powers against the Debtors, the Reorganized Debtors or any non-Debtor; (5) except to the extent provided in Section 1125(e) of the Bankruptcy Code, release, enjoin or discharge any non-Debtor from any claim, liability, suit or cause of action of the United States nor shall anything in the Plan Documents enjoin the United States from bringing any claim, suit, cause of action or other proceeding against any non-Debtor for any liability whatsoever; or (6) be

-54-

construed as a compromise or settlement of any claim, liability, suit, cause of action or interest of the United States. Administrative Expense claims of the United States shall accrue interest and penalties as provided by non-bankruptcy law until paid in full. To the extent the Priority Tax Claims of the United States (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code), if any, are not paid in full in cash on the Effective Date, then such Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate and method set by applicable non-bankruptcy law and shall be paid in accordance with Section 1129(a)(9) of the Bankruptcy Code. Moreover, nothing in the Plan Documents shall effect a release, discharge or otherwise preclude any claim whatsoever against any Debtor or any of the Debtors' Estates by or on behalf of the United States for any tax liability arising a) out of pre-petition or post-petition tax periods for which a required return has not been filed or b) as a result of a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period, provided, however, any such claims shall be subject to applicable law. Further, nothing in the Plan Documents shall enjoin the United States from amending any claim against any Debtor or any of the Debtors' Estates with respect to any tax liability a) arising out of pre-petition or post-petition tax periods for which a required tax return has not been filed or b) from a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period. Any tax liability arising a) out of pre-petition or post-petition tax periods for which a required return has not been filed or b) as a result of a pending audit or audit which may be performed with respect to any pre-petition or post-petition tax period shall be paid in accordance with 1129(a)(9)(A) and (C) of the Bankruptcy Code to the extent such tax liabilities are otherwise entitled to the priorities under section 507 of the Bankruptcy Code referenced in 1129(a)(9)(A) and (C) of the Bankruptcy Code. Without limiting the foregoing but for the

-55-

avoidance of doubt: (i) nothing contained in the Plan Documents shall be deemed to determine the tax liability of any person or entity, including, but not limited to, the Debtors and the Reorganized Debtors, nor shall the Plan Documents be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of the Plan, nor shall anything in the Plan Documents be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under Section 505 of the Bankruptcy Code; and (ii) nothing shall affect or impair any rights or causes of action that the United States has or may have against any surety under any customs bond pursuant to applicable non-bankruptcy law, nor shall anything in the Plan Documents preclude or prohibit the ability of the United States to make demand on, be paid by, or otherwise pursue any surety that is jointly and severally liable for any debt owed to the United States.  Nothing in the Plan Documents or this Order shall abridge any rights of the United States under Bankruptcy Rule 3003.

Dated:  October __, 2018
Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
CHIEF UNITED STATES BANKRUPTCY JUDGE

#50316796.v1

# Exhibit A

## Plan

## Exhibit B

## Confirmation Hearing Transcript Excerpt

#50358851 v1

**Exhibit C**

**Notice of Effective Date**

=

#50358851 v1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                              :  Chapter 11
In re:                                        :
                                              :  Case No. 18-11025 (CSS)
GIBSON BRANDS, INC., et al.,                  :
                                              :  Jointly Administered
          Debtors.¹                           :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

## NOTICE OF (I) ENTRY OF CONFIRMATION ORDER, (II) OCCURRENCE OF EFFECTIVE DATE, AND (III) RELATED BAR DATES

**PLEASE TAKE NOTICE THAT** on October [•], 2018, the United States Bankruptcy Court for the District of Delaware (the "Court") confirmed the *Debtors' Fifth Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 842] (the "Plan"), which was attached as <u>Exhibit A</u> to the *Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Fifth Amended Joint Chapter 11 Plan of Reorganization* [Docket No. [•]] (the "Confirmation Order").[2]

**PLEASE TAKE FURTHER NOTICE THAT** the Effective Date, as defined in the Plan, occurred on **[_____], 2018**.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to Article VI.D of the Plan, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or the Confirmation Order, if any, must be Filed in the manner set forth in the Claims Bar Date Order, (a) with respect to Executory Contracts and Unexpired Leases identified in the Rejected Executory Contract/Unexpired Lease List [Docket No. 812-8], **by no later than _____, 2018** (which is 30 days after the Effective Date); or (b) with respect to Executory Contracts and Unexpired Leases that are the subject of a Rejection Notice, within thirty (30) days after the date on which such Rejection Notice was served on the counterparty.  Any Entity that is required to File a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so may be forever barred, estopped and enjoined from asserting such Claim, and such Claim may not be enforceable, against the Debtors, the Reorganized Debtors or the Estates, and the Debtors, the Reorganized Debtors and their Estates and property may be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Gibson Brands, Inc. (4520); Cakewalk, Inc. (2455); Consolidated Musical Instruments, LLC (4695); Gibson Café & Gallery, LLC (0434); Gibson International Sales LLC (1754); Gibson Pro Audio Corp. (3042); Neat Audio Acquisition Corp. (3784); Gibson Innovations USA, Inc. (4620); Gibson Holdings, Inc. (8455); Baldwin Piano, Inc. (0371); and Wurlitzer Corp. (0031); and Gibson Europe B.V. (Foreign).  The Debtors' corporate headquarters is located at 309 Plus Park Blvd., Nashville, TN 37217.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Confirmation Order.

#50316796.v1

otherwise provided in the Plan. All such Claims will, as of the Effective Date, be subject to the permanent injunction set forth in Article X.G of the Plan. All Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as General Unsecured Claims, subject to any applicable limitation or defense under the Bankruptcy Code and applicable law.

**PLEASE TAKE FURTHER NOTICE THAT** except as otherwise provided in Article II.A of the Plan or the Claims Bar Date Order, and except with respect to Administrative Expense Claims that are Professional Fee Claims, DIP Claims, or the ABL Deposit, requests for payment of Allowed Administrative Expense Claims must be Filed and served on the Reorganized Debtors **by no later than _____, 2018** (which is 30 days after the Effective Date); *provided*, that the Administrative Expense Claims Bar Date does not apply to Professional Fee Claims or Administrative Expense Claims (i) arising in the ordinary course of business or (ii) for self-insured health care expenses.

**PLEASE TAKE FURTHER NOTICE THAT** Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must File, **by no later than _____, 2018** (which is 30 days after the Effective Date), and serve on the Debtors, the Reorganized Debtors, the U.S. Trustee, and counsel to the Ad Hoc Committee of Secured Notes, an application for final allowance of such Professional Fee Claim; and *provided* that the Reorganized Debtors will pay Professionals in the ordinary course of business, for any work performed after the Effective Date, including those fees and expenses incurred by Professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to or order of the Bankruptcy Court in full in Cash; and *provided further*, that any professional that may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professionals Order.

**PLEASE TAKE FURTHER NOTICE THAT** the Plan and its provisions, including the release, exculpation and injunction provisions, are binding on the Debtors, the Reorganized Debtors, any Holder of a Claim or Equity Interest and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is Impaired under the Plan, and whether or not such Holder or Entity voted to accept the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Plan, the Confirmation Order, and other documents and materials filed in the Chapter 11 Cases are available free of charge on the website maintained by Prime Clerk, the Debtors' claims and noticing agent, at https://cases.primeclerk.com/gibson or by contacting Prime Clerk via email at gibsoninfo@primeclerk.com, by phone at (844) 240-1258 or, if calling from outside the United States or Canada, at (929) 477-8085.

[*Remainder of page intentionally left blank*]

Dated: _____, 2018
      Wilmington, Delaware

                PEPPER HAMILTON LLP

                _____

                David M. Fournier (DE 2812)
                Marcy J. McLaughlin (DE 6184)
                Hercules Plaza, Suite 5100
                1313 Market Street
                P.O. Box 1709
                Wilmington, Delaware 19899-1709
                Telephone: (302) 777-6500
                Email: fournierd@pepperlaw.com
                       mclaughlinm@pepperlaw.com

                - and -

                GOODWIN PROCTER LLP
                Michael H. Goldstein (admitted *pro hac vice*)
                Gregory W. Fox (admitted *pro hac vice*)
                Barry Z. Bazian (admitted *pro hac vice*)
                The New York Times Building
                620 Eighth Avenue
                New York, NY 10018-1405
                Tel: (212) 813-8800
                Email: mgoldstein@goodwinlaw.com
                       gfox@goodwinlaw.com
                       bbazian@goodwinlaw.com

                *Counsel for Debtors and Debtors in Possession*

#50316796 v1

| Summary report: Litéra® Change-Pro TDC 10.0.0.42 Document comparison done on 10/3/2018 4:19:18 PM | |
|---|---|
| **Style name:** PH Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://PHDMS/ACTIVE/50316796/1 | |
| **Description:** Gibson - Confirmation Order As Filed 10-1 | |
| **Modified DMS:** iw://PHDMS/ACTIVE/50358851/1 | |
| **Description:** Gibson - Confirmation Order-96751510-v16 FINAL 10-3-18 | |
| **Changes:** | |
| Add | 87 |
| Delete | 87 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 174 |