IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| W.R. GRACE & CO., <u>et al.</u>, | ) ) ) | Case No: 01-01139 (JJF) |
| | ) | Jointly Administered |
| Debtors. | ) ) ) | |

### AFFIDAVIT OF TODD B. HILSEE ON BAR DATE NOTICE PLAN

1. I am the President of Hilsoft Notifications, a company that specializes in designing, developing, analyzing, and implementing legal notification plans. I have served as a qualified notice expert in bankruptcy and class action notice programs. I have been responsible for notice programs involving all aspects of notice design and dissemination.

2. My experience has been particularly focused on ensuring the overall effectiveness of legal notification efforts by statistically quantifying and documenting the exposure to notice among potential claimant audiences, analyzing qualitative and other measures of notice plan adequacy, including notice content and design, and implementing the dissemination of notices.

3. I have been qualified as an expert in the area of the adequacy of legal notification programs including, but not limited to, each of the following cases and courts:

*In re The Babcock & Wilcox Co.*, et al., Case No 00-1-992 (Bankr. E.D. La.); *In re Dow Corning Corporation*, No. 95-20512-11-AJS (Bankr. E.D. Mich.); *Barbanti v. W.R. Grace & Co., et al.*, Case No. 00201756-6 "Zonolite Litigation" (Sup. Ct. Wa.); *In re Holocaust Victim Assets Litigation*, No. CV-96-4849, "Swiss Banks" (E.D.N.Y.); *In re Domestic Air Transportation Antitrust Litigation*, MDL 861 (N.D. Ga.); *Andrews/Harper v. MCI*, No. CV 191-175,"900 Number" (S.D. Ga.); *Cox v. Shell Oil*, No. 18, 844, "Polybutylene Pipe Litigation" (Chanc. Ct. Tenn.); *Spitzfaden v. Dow Corning*, No. 92-2589 "Breast Implant Litigation" (Civ. Dist. Ct., La.); *Snider v. State Farm*, No. 97-L-114 "Auto Parts Litigation" (Cir. Ct. Ill.); *In re Synthroid Marketing Litigation*, No. 97-C-6017, MDL 1182 (N.D. Ill.), *St. John v. American Home Products*, No. 97-2-06368, "Fen/Phen Litigation" (Sup. Ct. Wa.), *Williams v. Weyerhaeuser*, No. CV-995787 (Sup. Ct. Cal.), and many others.

4. My experience includes more than 95 significant cases on which I have consulted, designed, analyzed, and/or implemented court-approved notice plans. These have included providing notice in 44 countries and 33 languages.

5. I have specific experience analyzing Bar Date notice programs and I have given expert testimony on the adequacy of such programs in notifying potential claimants:

a. In the *Babcock & Wilcox* bankruptcy, the Debtor asked me to study the audiences of those affected, and to design and implement a Bar Date notice program to alert

those with current asbestos injuries of the need to file claims prior to the Bar Date. The Court approved my notices and notification plan finding the plan reasonable and adequate. The public notice program included a variety of notices each written and designed to focus on and communicate with persons holding the different key claim types present in that case, primarily asbestos personal injuries and also nuclear radiation claims[1]. Direct mailings to known customers and others types of claim holders were found adequate to notify other claimants. The notice program out-delivered its primary audience coverage objectives, and at the same time saved the estate an additional $480,000 resulting in a total expenditure of $3.8 million necessary for the multi-national notice program. The notice plan provided for television and print publication notice in the U.S. reaching 94% of claimants, television and print notice in Canada reaching 90% of claimants, and extensive print notice in the United Kingdom and the Philippines, plus numerous other targeted activities to subsets of claimants.

b. In the *Dow Corning* bankruptcy, I analyzed the effectiveness of the Debtor's proposed notice program in reaching implant recipients on behalf of the Tort Claimants Committee. Subsequently, I designed an alternate paid media program

---

[1] The main Babcock & Wilcox notices were boldly headlined: "**If you currently suffer from asbestos-related injury and you worked around commercial boilers, you must act now to preserve your rights.**" Separate notices in different media were boldly headlined: "**If you are or were a resident of Apollo, PA or Parks Township, PA, you must act now to preserve your rights relating to nuclear contamination or radiation claims.**"

that delivered a Bar Date notice to breast and other implant recipients in the U.S. and certain countries around the world. I also wrote and designed the notices for the various targets in that case. Different notices were written and designed to target the different key claim types, since breast implant recipients were different people than those who have other types implants. My paid media notice program and the notices themselves were adopted into the notice plan that was approved by Judge Arthur J. Spector, and subsequently implemented. As a result, 28 million additional adults, including 12 million additional women and 9 million additional older adults, were exposed to the notice relative to the Debtor's proposed plan. These enhancements did not cost the estate any additional money. I then monitored and analyzed the effectiveness of the implementation of the notice plan in reaching the estate's targets as called for under the Plan to ensure there were no audience exposure shortfalls.

c. I have analyzed the Bar Date notice program and submitted an expert affidavit in connection with *In re: Texaco Inc., Texaco Capital Inc., and Texaco Capital N.V.*, Consolidated Case No's 87 B 20142 (HS), 87 B 20143 (HS), 87 B 20144 (HS), (Bankr. S.D.N.Y.). Pursuant to my analysis, in my opinion, the Texaco Bar Date notice was not reasonably certain to inform those affected because it did not

adequately reach persons who have since brought environmental damage claims against Texaco, and which were sought to be barred.

6.  I have also been involved in the issues pertinent to the W.R. Grace Bankruptcy in the course of my work on the Zonolite Attic Insulation issues in the *Barbanti* case. In that case, I was asked by Plaintiffs' counsel to design notices and plans that would be undertaken at the Court's discretion under two different circumstances: 1) develop a plan under the assumption that the Court had ordered a preliminary injunction and that a health and safety warning to Washington state residents was necessary (Ultimately, the Court determined that an "emergency" was not demonstrated that would justify the issuance of the warning notice prior to a trial on the merits.); and, 2) after the Court indicated it would certify a "mandatory" non-opt-out class, develop a notice plan to communicate to homeowners with Zonolite of the pendency of the lawsuit. The Court indicated that the form and design of my recommended notice, including focused headline and photograph, would be appropriate. However, neither of these situations involved the type of due process issues with a substantial forfeiture of rights to recover if a notice were not adequately communicated to those affected, as is the case with non-discretionary litigation notifications, and especially a bar date in a bankruptcy. In other words, if they chose to take no action pursuant to seeing a *Barbanti* discretionary notice, they would not lose their right to recover for any damages to which they may or may not be entitled.

7.  My notice plans and scientific study as to the audience coverage thereof have been approved by U.S. Courts, and have withstood appellate challenges, i.e., *Spitzfaden v. Dow Corning*, No. 92-2589 ("Breast Implant" class action before the Louisiana Civil District Court, Parish of Orleans; notice program unsuccessfully appealed to the Louisiana Supreme Court) and *Snider v. State Farm*, No. 97-L-114 ("Aftermarket Auto Parts" litigation before the Illinois Circuit Court, First Judicial Circuit, Williamson County, IL; notice program unsuccessfully appealed to the Illinois Supreme Court). Ultimately in *Snider*, the United States Supreme Court denied certiorari in a petition that sought review on issues including the notice issues. I was also the first notice expert recognized by a Canadian Court, where before the Ontario Superior Court of Justice, I designed a notice plan in the national Canadian diet drug class proceedings, *Wilson v. Servier*, No. 98-CV-158832. Mr. Justice Cummings noted: "Mr. Hilsee's credentials and expertise are impressive. The defendants accepted him as an expert witness. Mr. Hilsee provided evidence through an extensive report by way of affidavit, upon which he had been cross-examined. His report meets the criteria for admissibility as expert evidence. R. v. Lavalle, (1990) 1 S.C.R. 852."

8.  In the course of my extensive notice experience, I initiated the use of net audience coverage data and analysis in connection with large-scale litigation notices, and this type of analysis is now commonly utilized by other experts and relied upon by Courts.

Courts have cited the merits of my expert testimony based on my quantitative and qualitative evaluation of the adequacy and effectiveness of notice plans, including the reported decision in *Domestic Air*, 141 F.R.D. 534, 548 (N.D. Ga. 1992), and many others.

a. In *Domestic Air* Judge Marvin Shoob noted, "The Court finds Mr. Hilsee's testimony to be credible. Mr. Hilsee's experience is in the advertising industry. It is his job to determine the best way to reach the most people. Mr. Hilsee answered all questions in a forthright and clear manner. Mr. Hilsee performed additional research prior to the evidentiary hearing in response to certain questions that were put to him by defendants at his deposition. . . .The Court believes that Mr. Hilsee further enhanced his credibility when he deferred responding to the defendant's deposition questions at a time when he did not have the responsive data available and instead utilized the research facilities normally used in his industry to provide the requested information."

b. Judge Sarah S. Vance, in her August 25, 2000 order in *In re The Babcock & Wilcox Co.*, noted in approving my notice program, "Furthermore, the Committee has not rebutted the affidavit of Todd Hilsee, President of Hilsoft Notifications, that the (debtor's notice) plan's reach and frequency methodology is consistent with other asbestos-related notice programs, mass tort bankruptcies, and other significant notice programs...After reviewing debtor's Notice Plan, and the objections raised

to it, the Court finds that the plan is reasonably calculated to apprise unknown claimants of their rights and meets the due process requirements set forth in Mullane.... Accordingly, the Notice Plan is approved."

c. A description of my extensive notification experiences, numerous other Judicial comments on my work, and my publications on the subject of the adequacy and design of class action notice efforts appear in my current C.V., which is attached as **Exhibit 1.**

9. In *In re W.R. Grace* I have been asked by the Property Damage Committee to study the Debtor's Bar Date notice proposal including the form and method of dissemination proposed, to study the potential property damage claimant audiences and the background of these claims issues, and at this stage to provide observations on the effectiveness of the Debtor's notice proposal in reaching Property Damage claimants, including Zonolite and traditional Property Damage claimants, with notice of a Bar Date.

## SUMMARY OF OBSERVATIONS

10. Upon completing a detailed study of the Debtor's notice proposal I have made the following observations:

a. The Debtor's notice proposal does not address communications issues inherent in the design and content of the notice; rather it only discusses the method - how and

where – for notices to be disseminated.  <u>Both</u> form and method are determinants of the adequacy of notice.

b. Without discussion and rationale, the Debtor's notice proposal includes a "catch-all" notice that is not focused on any one group of people, and which must reach a widely divergent set of persons who hold different key claim types.

c. The Debtor's notice proposal does not address or provide data regarding the issues of whether the Property Damage ("PD") claimants are unwary or wary, and how in a claims process <u>before</u> a bar date, he/she could become wary in order to know whether to come forward and file a claim.  This presents enormous communications and procedural challenges and creates substantial concerns about the timing of a bar date.

d. For Property Damage claimants, especially Zonolite homeowners, there is a "catch-22" that may not be overcome with any effective Bar Date notice.  Would the homeowner who has been taught not to touch or disturb asbestos[2], and who has no idea what type of insulation he/she has, take note of any notice, be willing to go into the attic or break into a wall and potentially breathe or be exposed to asbestos on the off chance that they may be able to file a claim?  Is a claims process within a claims process required such that would allow a homeowner to avail him/herself of

---

[2] In fact the EPA warns homeowners in its booklet <u>Asbestos in Your Home</u>, "**THE BEST THING TO DO WITH ASBESTOS MATERIAL IN GOOD CONDITION IS TO LEAVE IT ALONE!**"  This message has been relayed to the public in many news articles.

an inspection service just to determine whether filing a claim is warranted? How long would such a process take? How would this be paid for? Would the reasonable homeowner take any action at all?

e. The Debtor's proposed form of notice itself will serve as a device to limit claimant understanding, notice exposure, and therefore participation.

f. The Debtor's notice proposal is ineffective in reaching owners of commercial and other non-residential buildings who may be just as unwary as Zonolite homeowners. In other asbestos bankruptcies, many PD claimants would know that they have done business with the debtor, i.e., they know they have a Babcock & Wilcox boiler on site. Here, there is a wide array of affected PD claimants who have Grace insulation and other products unbeknownst to them, i.e., owners of commercial buildings, government buildings, hospitals, airports, churches, apartments, hotels, auditoriums, etc. Many of these PD claimants are likely not known to Grace and cannot be notified by mail. Likewise they may not have specified the installation of Grace products in their building, and therefore may not know they have claims against Grace. As a result, it is unreasonable to think that these claimants could be effectively reached with notices not written directly to them explaining how they could have a claim and on what basis.

g.  The need or requirement to notify many of the unwary segments of traditional PD claimants is not discussed in the Debtor's notice proposal, including whether there is a need to reach schools in Canada, and if so explain the types of claims they may have, whether U.S. schools need to be notified extensively or not owing to potentially unresolved claims and "hidden" claims they may have like masonry fill. Nor does the notice plan address how unwary owners of residential and other structures can be notified and reached about claims such as "textures," which to the unwary owner may appear like a typical ceiling treatment seen in numerous buildings.

h.  Irrespective of the notice "message," the Debtor's notice proposal does not provide effective notice activity outside of the domestic U.S. despite the apparent bar sought on all such claims. Canadian media efforts are limited when compared to that of the U.S. Canadian television activity is not even recommended or discussed and there is no notice in other countries, yet the cost of notice is dramatically higher than plans that have delivered these protections to claimants and Debtors. Canadian audience coverage is not discussed, and in fact about half of Canadians won't see a notice. In the U.S. territories and possessions, the plan even falls short of adequate notice based on communication guidance articulated on April 16, 2001, by the 3rd Circuit Court of Appeals in *In re: Orthopedic Bone Screw Products*

*Liability Litigation, Alexander Sambolin*, 3rd Cir., No. 99-2054, when it made numerous comments about deficient notice resulting in a late filed claim. At its simplest level the Opinion dealt with small notices in Puerto Rico. The Debtor's proposal here calls for 5" x 6" notices in Puerto Rico. When I shrank the Debtor's proposed notice to that size, I could hardly read much of the type, even in English. The length of the text will increase substantially when translated to Spanish. It would be virtually unintelligible to the proposed plan's main target of Men 65 years and older. In *In re: Orthopedic Bone Screws* at 19, the 3rd Circuit found, "*…it is incongruous, in the unique circumstances of this case, to find Sambolin culpable for his failure to note a small advertisement run once on page 50 of a newspaper he does not receive.\*…(footnote 11) \*Because notice issues of this type are recurring in the district courts, we would be remiss if we did not express our concerns about the notice program …*" Also, according to the PD Committee there may be substantial claims in far-flung places such as the Pacific Rim and other locations and these are not addressed with notice.

i. If the Court determines that PD claimants must be communicated with, and must file individual claims before a Bar Date, issues must be resolved involving the current status of awareness among these PD claimants, especially homeowners who

may have Zonolite in their attic and walls[3], the geography of claims to be covered, and whether a notice can make them aware. Only then can a method of dissemination be determined that most effectively and efficiently communicates the information and the process for determining whether there is a need to file a claim.

j.  Because of all the unresolved problems with respect to the notice message and content, I have not reached a conclusion as to whether effective notice can be provided such that would be adequate by the communications standards underlying due process requirements, but I am certain that if notice must be given, the Debtor's notice proposal is not the best one for the reasons above and which I will detail further.

k.  The Debtor's notice proposal, irrespective of its shortcomings of the content of the notice messages and the unresolved issues therein, requires $5 million. In so doing it delivers no real "reach" enhancement over far cheaper plans, with at least $1 million accruing to no benefit, has narrow geographic coverage, assigns other monies to purchasing advertising at nearly double the market rates, and employs inflated reach calculations. If the Court requires a Bar Date and a public notice program of some type, these can be detailed in an alternate submission.

---

[3] In connection with *Barbanti*, a Washington Statewide Survey of 427 people 85% said they had never heard of a particular brand of Vermiculite Attic Insulation called Zonolite Attic Insulation.

11. The significance of these observations are supported by the communications guidance underlying significant case law on due process, as well as generally accepted communication principles.

**COMMUNICATIONS GUIDANCE FROM RELEVANT CASE LAW**

12. The notice expert must understand and interpret relevant case law, not for comprehension of legal issues as lawyers must concern themselves, rather for understanding how principles of effective communications are involved in many relevant decisions relating to due process and notice and how these principles guide the adequacy of notice. There are numerous observations that I have made about the Debtor's notice proposal that do not seem to be in sync with these lessons:

a. **The Debtor's Proposed Notice Is Not Reasonably Certain To Inform Those Affected**. "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 315 (1950). "...notice must be such as is reasonably calculated to reach interested parties." *Id.* at 318. "As Mullane made clear, the Due Process Clause...does require a reasonable effort to give notice." *Small v. United States of America*, 136 F. 3d 1334, 1336 (C.A.D.C., 1998). "The

statutory command for notice embodies a basic principle of justice – that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights." *New York v. N.Y., N.H., & H.R. Co.*, 344 U.S. 293, 297 (1953). "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914).

    i)    The Debtor's proposed notice program spends $5 million on "umbrella" notices written as a catch-all for many different groups with no common link, and thereby effectively informing nobody. Accordingly, the notice program is a mere gesture disguised as effective by its high cost and many publications.

    ii)    One desirous of actually informing the homeowner with Zonolite PD claims would target notices to them, written and designed especially for them.

    iii)    One desirous of actually informing other PD claimants here would target notices to them, written and designed especially for them.

    iv)    It is reasonable to write and design different notices focused on people with distinctly different key claim types.

    v)    It is reasonable, by any communications standard, to increase the Zonolite homeowners opportunity to be heard (filing a claim), from what is

now near zero to some natural rate of participation, by redesigning the notices that will appear in media vehicles so that these currently unaware people can determine whether they are affected and decide to take part or be forever barred.

vi) The Debtor's Notice and Plan, by their design and content, dramatically reduce currently unaware people's opportunities to be heard. The Debtor's proposed notice does not adequately communicate information about the products that they may have been exposed to, or what the key products look like that they may have in their homes and buildings. Accordingly, readers are not likely to know this information, and whether they are affected. Unless notice can properly alert them that they may be affected, they can't properly decide whether to file a claim.

b. **<u>The Debtor's Proposed Notice Is Not Focused On, And Is Not Designed To Attract The Attention Of The People Who Are Claimants</u>**. "The chance of actual notice is further reduced when, as here, the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention." *Mullane* at 315. "…while the state might authorize constructive service on corporations, 'the methods adopted should be reasonably calculated to bring notice home to some of the officers or agents of

the corporation, and thus secure an opportunity for being heard.'" *Wuchter v. Pizzutti*, 276 U.S. 13, 23 (1928).

    i)      The 1947 publication notice that the Mullane Court criticized was headlined broadly. It invited "The People of the State of New York" to read the notice, and provided a laundry listing of trust fund accounts. Here, the Debtor's Notice does not even direct itself to "people," instead, it attempts to broadly reach "All Claims against W.R. Grace" and provides a laundry listing of claim types and debtor companies in an uninviting and uninformative fashion.

    ii)      Because the Debtor's Notice Plan and Notice speaks to "claims types," not people, it does not adequately inform claimants how and why they may be affected and therefore does not provide the reasonable opportunity to be heard that the notice expert seeks to provide.

c.      **<u>Notice Form And Content Are Important, Yet The Debtor Proposes Notices That Are Not Clear And Focused And The Plan Does Not Discuss The Notices Themselves.</u>** "…ordinarily the bar date in a bankruptcy case should be prominently announced and accompanied by <u>explanation of its significance</u>." (emphasis added) *Pioneer Inv. v. Brunswick Associates Ltd. Partnership*, 113 S. Ct. 1489, 1499-1500 (Sup. Ct. Tenn., 1993). "Notice of the bar date must be

communicated to present asbestos claimant so that they would have a full and fair opportunity to file proofs of claim." *In re Eagle-Picher Industries, Inc.*, 137 B.R. 679, 682 (Bankr. S.D. Ohio, 1992) "Debtors therefore are directed to prepare a specific detailed program of notice by publication, including identification of media, with an explanation of why such media are to be utilized..." *Id.* "In general due process requires that reasonable notice is that which is reasonably calculated to reach all interested parties, reasonably conveys all of the required information, and permits a reasonable amount of time for response." *In re Robintech*, 863 F.2d 393, 396 (5th Cir. 1987) "The determination of whether a reasonable person would have discovered the information depends on various factors. The quality and quantity of the information or publicity is one factor." *O'Connor v. Boeing North American, Inc.*, 92 F. Supp. 2d 1026, 1043:

> i) The Debtor's proposed notice cannot explain the significance of a Bar Date nor provide a full and fair opportunity. The unaware people who are affected by it cannot be reasonably informed by a mention of the word "Zonolite" and one sentence describing it. Likewise, they have no knowledge that the prominent date has anything to do with them or the fact that they may have to take steps to determine whether they are affected by a final date that will foreclose their rights forever.

ii) There are no focused messages targeted to the people with key claim types, therefore there are no messages prominently announcing the program to them.

iii) An explanation of why media are utilized must include more than demographic information on the audiences as would be contained in a pure media plan, and as the Debtor's Notice Plan solely does. A complete notice plan must explain factors that relate the ability of certain media to present the necessary messages and how they are appropriate for such required messages, as well as how the notice design and content of the notices are effective in informing the targets through these particular media. A thorough review of these factors here can only lead one to the conclusion that message design and content must be focused and targeted to the audiences of the selected media, and be executed in a fashion appropriate for each medium and message.

iv) The Debtor's proposed television notices to Zonolite homeowners are not focused on Zonolite, and do not utilize visual images to explain that the homeowner may be affected, or what Zonolite looks like, even though he/she may have no idea they have it. The sight, sound and moving pictures