IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., <u>et al.</u>,[1] | ) | Case No. 01-1139 (JJF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**Objection Deadline: October 10, 2001**
**Hearing Date: TBD if necessary (negative notice)**

## DEBTORS' APPLICATION FOR THE ENTRY OF AN ORDER APPROVING AND AUTHORIZING THE RETENTION OF RUST CONSULTING, INC. AS THE OFFICIAL CLAIMS HANDLING AGENT

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), by and through their undersigned attorneys, hereby apply (the "<u>Application</u>") for the entry for an order approving and authorizing the retention of Rust Consulting, Inc. ("<u>Rust</u>") as the Debtors' official claims handling agent pursuant to sections 327(a) and 328 of title 11 of the United States Code (as amended, the "<u>Bankruptcy Code</u>") for the recordation and maintenance of proofs of claim.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

**Jurisdiction**

1.  This Court has jurisdiction over this Application under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.  The statutory bases for the relief requested herein are sections 327(a) and 328 of the Bankruptcy Code.

**Background**

3.  On April 2, 2001, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.  These Chapter 11 Cases were prompted by the mass of asbestos lawsuits and claims asserted against the Debtors, coupled with recent increases in settlement demands. Currently, the Debtors have tens of thousands of asbestos personal injury lawsuits and claims pending against their estates.

5.  Accordingly, the Debtors have designed a broad notification program calculated to notify both known and unknown claimants of the bar date deadline for filing a proof of claim in the Chapter 11 Cases based on asbestos related claims as well as other potential claims. The hearing on the Debtors' Motion for Entry of An Order Establishing A Bar Date; Approving the Proof of Claim Forms; and Approving the Form and Manner of Notice (the "Bar Date Motion") was initially scheduled for the week of October 8, 2001, in this Court. This hearing has been continued at the Court's request.

6.  The Debtors anticipate the number of proof of claim forms filed in these Chapter 11 Cases will be in the tens of thousands. Additionally, the Debtors have submitted three proofs of claim forms designed to compile information regarding the claimant's exposure to asbestos, existence of co-obligors and the nature and extent of claimant's injuries or illness. Therefore, considering the significant volume of claims and claim information expected in the Chapter 11 Cases, the retention of Rust is necessary for the efficient administration and management of the proof of claim forms.

### Relief Requested

7.  Pursuant to sections 327(a) and 328 of the Bankruptcy Code and in the interest of judicial economy and the efficient administration of the Debtors' estates, the Debtors request that the Court appoint a claims handling agent (the "Claims Handling Agent") to process the anticipated large volume of proofs of claim which will be filed in these Chapter 11 Cases.

8.  In connection with the claims administration process set forth in the Bar Date Motion, the Claims Handling Agent will be responsible for processing substantially more information than simply recording the claimant's name and asserted claim amount. Rust has the necessary experience to properly coordinate and supervise the processing of a large volume of proofs of claim in these Chapter 11 Cases and ease the related burden such a high number of claims would place on the Clerk of the Court. The Debtors submit that the appointment of Rust as the Claims Handling Agent (i) will help assure the orderly administration of the Debtors' estates and (ii) is consistent with the practices employed in other complex cases. See In re Armstrong World Industries, Inc., Case No. 00-4471 (JJF) (Bankr. D. Del. 2000); In re Celotex Corp., Case No. 90-10016-8BI (M.D. Fla Tampa Div. 1996)

(claims agent appointed to process asbestos claims and notices); see also In re Babcock & Wilcox, Case No. 00-10992 (Bankr. E. La. 1999) (JRB) (same).

### Claims Administration Procedure

9. The proposed activities of the Claims Handling Agent as an agent of the Court will include, but are not limited to, the following:[2]

   (a) Receipt of proof of claim forms mailed directly to the Claims Handling Agent's controlled P. O. Box;

   (b) Periodic collection of proof of claim forms filed with this Court;

   (c) Date stamp each proof of claim form with date received by the Claims Handling Agent;

   (d) Assign a unique claim number to each proof of claim form received for tracking purposes;

   (e) Storage of all original filed proofs of claim; and

   (f) Generate a claims register containing a numeric listing of filed proof of claim forms including claimant name, address, dollar amount and claims status information.

10. The proposed activities of the Claims Handling Agent as an agent of the Debtors will include, but are not limited to, the following:

---

[2] The tasks and duties of the Claims Handling Agent may be modified or amended depending upon the relief granted by the Court with respect to the Bar Date Motion, including, without limitation, services for providing notice to potential claimants and processing proof of claim forms.

(a) Providing direct notice and mailing proof of claim packets to all known claimants and entities;

(b) Responsibility for providing proof of claim packets to all known claimant requests for information received through the Debtors' 800 number telephone information services;

(c) Analysis and capture of data included in the proof of claim form through computer scanning and imputing methods;

(d) Transfer data and images to all parties-in-interest;

(e) Data storage; and

(f) Other such activities that may arise during the approval and implementation of the bar date notification procedure.

11. In its capacity as Claims Handling Agent, Rust shall be an agent of the Clerk of the Court to provide the services indicated herein. It is recognized that Rust is not employed by the United States of America ("United States") and shall not seek any compensation from the United States. It is also recognized that Rust is appointed in these Chapter 11 Cases for the purpose of acting as the Claims Handling Agent and is not an official representative of the United States and is not acting on behalf of the United States. The United States will not be liable for any omission or action of Rust. Rust shall not misrepresent this fact to the public.

12. Rust shall undertake any other actions and procedures that may be reasonably required in connection with the administration and organization of proofs of claim in the Chapter 11 Cases.

**Qualifications of Rust**

13. The Debtors interviewed and investigated several firms to act as the Claims Handling Agent. After consideration of such firms' qualifications and experience, the Debtors ultimately

decided that Rust possesses the necessary qualifications and experience to handle the processing of the proofs of claims that are anticipated in the Chapter 11 Cases. The Debtors' contact at Rust is Mr. Jeffrey D. Dahl, Senior Vice President, at 201 South Lyndale, Faribault, MN 55021.

14. Rust has more than ten (10) years of claims administration experience and has acted as the claims administrator in over 125 class action cases. See Rust Consulting's class action case experience, attached as Exhibit A hereto.

15. Most notably, Rust was the official claims agent in the Celotex Corporation bankruptcy and is currently the claims agent in the Babcock and Wilcox bankruptcy. See In re The Celotex Corporation, Case No. 90-10016-8BI (M.D. Fla., Tampa Div. 1996); and In re Babcock & Wilcox, Case No. 00-10992 (Bankr. E. La. 1999) (JRB). For example, in the Celotex bankruptcy, Rust administered a program that included producing and mailing more than 472,000 bar date notice packages to potential class members and processing more than 323,000 of those packages that were returned. Rust also developed and managed a customized database to track the request for claim forms and to log the claim information. Rust provided a telephone support number handling more than 82,500 callers by answering questions, providing case status and assistance in filing claim forms.

### Statement of Disinterestedness

16. To the best of the Debtor's knowledge, information and belief, Rust does not represent any interest adverse to the Debtors or their estates with respect to the services to be performed by Rust described herein. See the Affidavit of Rust Consulting, Inc., attached as Exhibit B hereto. Rust qualifies as a disinterested person pursuant to section 101(14) of the Bankruptcy Code and as required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code.

### Approval of Rust's Compensation

17.     Attached as <u>Exhibit C</u> hereto is the compensation agreement between the Debtors and Rust (the "<u>Claims Services Agreement</u>").  The cost of Rust's services will be adjusted up or down, based upon the number of claims actually received by the Debtors.  The Debtors believe that the fees to be charged by Rust are well within the range of reasonableness considering the services to be rendered in such a large and complex case.  Furthermore, the Debtors request authorization to compensate Rust for services rendered, without further Order of this Court, upon the submission of monthly invoices by Rust to the Debtors summarizing, in reasonable detail, the services for which compensation is sought.

18.     Therefore, for the reasons set forth herein, the Debtors request that the Court approve the retention of Rust as the Claims Handling Agent in these Chapter 11 Cases.

### **Notice**

19.     Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee and (v) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing the Debtors' retention of Rust to act as the Claims Handling Agent and (ii) granting such other relief as the Court deems just and proper.

Dated: September 21, 2001

        KIRKLAND & ELLIS
        James H.M. Sprayregen
        James W. Kapp III
        Samuel A. Schwartz
        Roger J. Higgins
        200 East Randolph Drive
        Chicago, Illinois 60601
        (312) 861-2000

        <u>and</u>

        PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

        <u>/s/ David W. Carickhoff, Jr.</u>
        Laura Davis Jones (#2436)
        David W. Carickhoff, Jr. (#3715)
        919 North Market Street, 16th Floor
        P.O. Box 8705
        Wilmington, Delaware 19899-8705 (Courier 19801)
        (302) 652-4100

        Co-Counsel for the Debtors and Debtors in Possession