UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Case No. 01-1139 (JJF) |
| | ) | Chapter 11 |
| W.R. GRACE & CO., et al.,[1] | ) | |
| | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**THIRD INTERIM APPLICATION OF BILZIN SUMBERG DUNN
BAENA PRICE & AXELROD LLP FOR COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS
COUNSEL TO THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE
CLAIMANTS FOR THE PERIOD FROM JULY 1, 2001 THROUGH AUGUST 31, 2001**

Pursuant to 11 U.S.C. §§ 330 and 331, Rule 2016 of the Federal Rules of Bankruptcy Procedure, and this Court's May 3, 2001 Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members (the "Administrative Order"), the law firm of Bilzin Sumberg Dunn Baena Price & Axelrod LLP (the "Applicant") hereby submits this third interim application (the "Application") as counsel to the Official Committee of Asbestos Property Damage Claimants (the "PD Committee").  In support hereof, the Applicant respectfully represents as follows:

---

[1] The Debtors consist of the following 62 entities: W. R Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., AI Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Ins., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgracc, Inc., Coalgracc II, Ins., Creative Food `N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace AB Inc., Grace A-B 11 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe. Inc., Grace H-G Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Squarc Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Ins., MICA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

527493

## I.   BACKGROUND

1. On April 2, 2001 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

2. On April 2, 2001, the Court entered its Order directing the joint administration of the Debtors' chapter 11 cases (the "Consolidated Cases").

3. On April 12, 2001, the Office of the United States Trustee appointed the PD Committee in this case consisting of Mr. Marco Barbanti, Princeton University, Pacific Freeholds and Prudential Insurance Company. The PD Committee held its organizational meeting on that day and selected Mr. Marco Barbanti to serve as its Chairman. Thereafter, the PD Committee was expanded to include Paul Price, Anderson Memorial Hospital and the Catholic Archdiocese of New Orleans. The PD Committee subsequently elected Mr. Dan Speights, representative of Anderson Memorial Hospital, as Co-Chairman of the PD Committee.

4. The PD Committee represents the interests of the asbestos property damage claimants in the Consolidated Cases.

5. At the PD Committee's initial meeting held on April 12, 2001, at which all original PD Committee members were present, the PD Committee chose to retain the Applicant, by and through Scott L. Baena, Esq., as its counsel to represent it in all matters during the pendency of the Consolidated Cases.

6. By application, dated May 22, 2001, the Applicant sought Court approval for its retention as counsel to the PD Committee <u>nunc pro tunc</u> to April 9, 2001. No objections were filed and a certificate of no objection was filed with the Court.

7.      By order dated June 21, 2001 (the "Retention Order"), the Court authorized the PD Committee to retain the Applicant nunc pro tunc to April 9, 2001, pursuant to 11 U.S.C. §§ 1103 and 328, on a general retainer basis, to represent the PD Committee in the Consolidated Cases. The Retention Order conditioned the Applicant's compensation on approval by this Court.

## II.    RELIEF REQUESTED

8.      Accordingly, the Applicant submits this Application, pursuant to Sections 328, 330, 331 and 503(b) of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Administrative Order, and in accordance with U.S. Department of Justice, Executive Office for United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. §330 (the "Guidelines"). The Applicant requests an interim award of legal fees and reimbursement of expenses incurred by the Applicant as counsel to the PD Committee for the two-month period from July 1, 2001, through August 31, 2001 (the "Application Period"), in the amount of (i) $247,980.00, for services rendered during the Application Period; and (ii) $176,063.29, as reimbursement for the actual and necessary expenses incurred by the Applicant as counsel to the PD Committee during the Application Period as well as the fees of certain experts engaged by the PD Committee pursuant to the Court's June 22, 2001 Order Authorizing the Retention of Experts.

9.      This request is the Applicant's third interim application to the Court for compensation and reimbursement of expenses. The Applicant filed its first interim application with the Court on July 2, 2001, and its second interim application with the Court on August 6, 2001. No understanding exists between the Applicant and any other person for a sharing of the

compensation sought by this Application, except among the members and regular associates of the Applicant.

10. In accordance with the Guidelines, the following exhibits are annexed to this application:

<u>Exhibit A</u> – Applicant's billing statement, which includes detail description of services rendered by professionals for each category, summary of fees for each category and summary of costs for each category.

<u>Exhibit B</u> – Certification of Scott L. Baena.

11. The Applicant has expended a total of 1,036.55 hours during the Application Period in rendering necessary and substantially beneficial legal services to the PD Committee. Exhibit A includes a daily description of the services rendered and the hours expended by the various attorneys and paralegals of the Applicant who performed services in the Consolidated Cases. The Applicant has prepared Exhibit A based on contemporaneous daily time records maintained by the Applicant's attorneys and paralegals who rendered services in the Consolidated Cases. In compliance with the Guidelines, the daily descriptions of the services rendered by the Applicant are categorized by activity code.

12. The Applicant has only applied for reimbursement of actual and necessary out-of-pocket disbursements in accordance with § 330(a)(2) of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Guidelines. The expenses listed on the Summary of Expenses were actual and necessary expenses incurred by the Applicant in connection with its service to the PD Committee. The Applicant would typically bill all such expenses to its non-bankruptcy clients.

13. The Applicant charges $.15 per page for in-house photocopying services and $.50 per page for out-going facsimile transmissions. The Applicant does not charge for incoming

4

facsimiles and with respect to computerized research services, Applicant charges the actual cost incurred with any outside vendor.

### III.    SUMMARY OF SERVICES RENDERED

**A.    Case Administration**

This matter covers the attention given to routine motions and pleadings, and preparation of responses thereto, the preparation of summaries and analyses of such papers for the PD Committee, and meetings with the Debtors or their professionals.

The Applicant's focus on the administration of the Consolidated Cases during the Application Period continued to permit the PD Committee to remain fully informed about all on-going matters pending in the Consolidated Cases.  The Applicant carefully reviewed, summarized, and provided advice and recommendations to the PD Committee, with respect to the Debtors' motion for entry of an order granting administrative priority status to valid reclamation claims, the Debtors' motion to extend the exclusive filing period, and the Debtors' motion to assume, sell and assign a prime real estate lease.  Further, the Applicant carefully reviewed the Debtors' response to the PD Committee's motion compelling the Debtors to establish a central document depository.

In addition, the Applicant continued to negotiate with the Debtors' counsel the terms of a proposed confidentiality agreement between the PD Committee, the Applicant and the Debtors. The Applicant reviewed and provided comments on the proposed agreement to the Debtors' counsel.  During the course of the negotiations, the Applicant had numerous conversations with Debtors' counsel regarding the terms of such agreement, and provided constructive comments and suggestions to such agreement.  The Applicant also discussed the terms and conditions of the proposed agreement with the PD Committee's financial advisors.

**B.**     **<u>Debtors' Business Operations</u>**

This matter covers the attention given to review and analysis of the Debtors' statement of affairs, schedules of assets and liabilities, monthly reports of operations and their Securities and Exchange Commission filings.

During the Application Period, the Applicant expended time reviewing the Debtors' SEC filings in connection with, among other things, preparing its response to the Debtors' case management proposal. The Applicant discussed the contents of certain of the SEC filings with the PD Committee's financial advisors.

**C.**     **<u>Property Damage Claimants Committee</u>**

This matter covers formation, membership, and by-law issues of the PD Committee. It also covers attendance at PD Committee meetings, preparation of materials for and presentations thereon to the PD Committee, and the preparation of minutes of the meetings.

During the Application Period, the Applicant convened weekly telephonic meetings of the PD Committee. In addition, the Applicant convened one in-person meeting of the PD Committee. The Applicant prepared detailed agendas for each meeting, reviewed pending matters and issues in preparation therefore, and counseled the members in formulating a position on such matters and positions. Further, subsequent to each meeting the Applicant drafted, and circulated for review prior to adoption, drafts of minutes of the PD Committee meetings.

Throughout its representation of the PD Committee, the Applicant has aggressively and attentively represented the interests of the PD Committee. Assuming the role of liaison, the Applicant has continued to maintain continuous communications with the Debtors' counsel and PD Committee members and, at times, counsel to the personal injury claimants committee and counsel to the unsecured creditors' committee. The Applicant timely and professionally relayed

information to PD Committee members through in-person meetings, telephone conference calls, e-mail and correspondence.

**D.     Retention of Professionals**

This matter covers the retention of professionals by the PD Committee or the Debtors, including interviews, discussions, motions and objections.

During the Application Period, at the PD Committee's direction, the Applicant assisted the PD Committee in finalizing the retention papers of its financial advisor, Conway Del Genio Gries & Co., LLC ("CDG"). The Applicant facilitated the PD Committee's engagement of CDG through the negotiation of the terms of retention of such professional.

Subsequently, after filing the retention papers for CDG, the Applicant responded to numerous phone calls and emails from counsel to the unsecured creditors committee and the Debtors regarding the terms of retention of CDG. The final terms of CDG's retention were not resolved prior to the end of the Application Period; however, as of the date of the filing of this Application, the terms of CDG's retention have been agreed to by the unsecured creditors' committee and the Debtors.

In addition, the Applicant finalized the retention papers of the PD Committee's claim expert.

The Applicant also advised the PD Committee regarding the Debtors' motion to employ Latham & Watkins, as an "ordinary course professional." The Applicant conducted an inquiry of the Debtors as to the scope of Latham's employment and received a satisfactory response, therefore, eliminating the need to file an objection to Latham's employment.

Further, the Applicant reviewed the application for retention of Casner & Edwards, as special counsel to the Debtors, and advised the PD Committee in respect thereof.

**E.**   **Asset Dispositions**

This matter covers work performed in connection with Section 363 sales or ordinary course dispositions.

During the Application Period, the Applicant attempted to reach an agreement with the Debtors' counsel regarding the Debtors' motion to establish omnibus sale and/or abandonment procedures. The Applicant and the Debtors did not come to a resolution prior to the deadline to file an objection and thus, the Applicant filed an objection on behalf of the PD Committee. Ultimately, after further negotiations with the Debtors, and upon discussion with the other committees, the PD Committee and the Debtors reached a consensual agreement on the sale and/or abandonment procedures which assuaged the PD Committee's articulated concerns.

**F.**   **Court Appearances**

This matter covers preparation for, and attendance at, omnibus court hearings and status conferences.

During the Application Period, the Applicant attended and actively participated in the hearing held on July 19, 2001.

**G.**   **Fee Applications**

This matter covers time expended preparing fee applications for the Applicant, the applications for reimbursement of expenses of PD Committee members or professionals, and reviewing, and objecting if necessary, to fee applications of others.

During the Application Period, the Applicant expended time preparing, drafting and filing its second interim fee application and related application for reimbursement of expenses of PD Committee members. In addition, the Applicant prepared, drafted and filed its quarterly fee application.

**H.     Travel**

This matter covers travel time of the Applicant.

During the Application Period, the Applicant traveled to Wilmington, Delaware to attend hearings in July. In addition, the Applicant traveled to Atlanta, Georgia to attend a specially set PD Committee meeting. In accordance with Local Rule 2016-2(d)(viii), all such time is being billed at fifty percent (50%) of regular hourly rates, to the extent work was not being performed en route.

**I.     Fraudulent Transfer Litigation**

This matter covers the analysis of the fraudulent transfer claims, motions to prosecute and hearings thereon. It also covers selection of professionals for this litigation, consultation with the PD Committee, the Personal Injury Committee, and special counsel to prosecute the claims.

During the Application Period, the Applicant had numerous conversations with its committee members and counsel to the Personal Injury Committee regarding retention of professionals in connection with prosecuting the fraudulent transfer actions. At the direction of the PD Committee, the Applicant spent substantial amounts of time identifying and interviewing prospective candidates for special counsel to prosecute the fraudulent transfer actions.

The Applicant also spent time carefully reviewing the responses and objections filed in opposition to its seeking authority to prosecute the fraudulent transfer claims and preparing for argument thereon.

**J.     Litigation Consulting**

This matter covers the analysis of litigation claims, other than the fraudulent transfer claims, including strategic motions contemplated or conceptualized by the PD Committee.

During the Application Period, the Applicant thoroughly analyzed the Debtors' motion to modify the preliminary injunction against future litigations against non-debtor affiliates. At the direction of the PD Committee -- which, as argued in Court, was principally concerned about preserving any enjoined claims for the benefit of the estates -- the Applicant researched the decisional law governing the issues and thereafter filed its response to the Debtors' motion.

Most importantly, as is evident by the substantial and thoughtful Response and Objection filed by the Applicant on behalf of the PD Committee, the Applicant spent time analyzing, critiquing and developing the PD Committee's response to the Debtors' motion to establish case management procedures, establish a bar date, approve proof of claims forms, and approve a notification program. The Applicant's work included researching the decisional and procedural law governing and strategic thinking on the multitude of issues contained within the Debtors' motion, including the necessity for a bar date, the unprecedented proposed proof of claim forms, and the unprecedented proposed litigation procedures. Moreover, the Applicant met and conferred with numerous of the experts engaged by the PD Committee to analyze the Debtors' proposals, as well as to formulate counter-proposals.

As more fully set out in the PD Committee's Response and Objection, the Debtors' case management motion attempted to cut a path never before taken in a bankruptcy case. Accordingly, the Applicant faced the demanding tasks of cogently arguing against the Debtors' plan and advancing a more sensible and legally supportable alternative. The Applicant submits that its Response and Objection accomplished these tasks.

In addition, the Applicant expended time analyzing procedural and substantive issues and standards presented by various strategic actions conceptualized or contemplated by the PD Committee. Further, the Applicant prepared various drafts of strategic motions to facilitate actions being considered by the PD Committee.

## IV.    INDEXING OF TASKS BY ACTIVITY CODES

As set forth on Exhibit A to this Application, the Applicant has organized its time records by activity codes in accordance with the Guidelines. Accordingly, each of the time entries of the attorneys and paralegals of the Applicant has been indexed into the following categories, which the Applicant ordinarily uses in categorizing its time. The Applicant did not incur time in a number of these categories.

| | |
|---|---|
| **15537.** | **Case Administration** |
| **15538.** | **Debtors' Business Operations** |
| **15539.** | **Property Damage Claimants Committee** |
| **15540.** | **Retention of Professionals** |
| **15541.** | **Asset Dispositions** |
| **15542.** | **DIP Financing** |
| **15543.** | **Fee Applications** |
| **15544.** | **Court Appearances** |
| **15545.** | **Claims Administration/Operations** |
| **15546.** | **Travel** |
| **15547.** | **Fraudulent Transfer Litigation** |
| **15548.** | **Executory Contracts/ Unexpired Leases** |
| **15563.** | **Litigation Consulting** |
| **15564.** | **Relief from Stay** |

## V.    EVALUATION OF SERVICES RENDERED: FIRST COLONIAL CONSIDERATIONS

This Application presents the nature and extent of the professional services the Applicant rendered in connection with its representation of the PD Committee for which the Applicant seeks compensation. The recitals set forth in the daily diaries attached hereto constitute only a summary of the time spent. A mere reading of the time summary annexed hereto cannot completely reflect the full range of services the Applicant rendered and the complexity of the issues and the pressures of time and performance which have been placed on the Applicant in connection with the case.

American Benefit Life Ins. Co. v. Baddock (In re First Colonial Corp.), 544 F.2d 1291 (5th Cir.), cert. denied, 431 U.S. 904 (1977), enumerates twelve factors a bankruptcy court should evaluate in awarding fees; these standards have been adopted by most courts. See also Grant v.

Case No. 01-1139 (JJF)

George Schuman Tire & Battery Company, 908 F.2d 874 (11th Cir. 1990); 2 Collier on Bankruptcy & 330.05[2][a] at 330-33 through 330-37 (L. King 15th ed. 1991); See also Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).  The twelve factors are:

1. The time and labor required;

2. The novelty and difficulty of the questions presented;

3. The skill required to perform the legal services properly;

4. The preclusion from other employment by the attorney due to acceptance of the case;

5. The customary fee for similar work in the community;

6. Whether the fee is fixed or contingent;

7. The time limitations imposed by the client or circumstances;

8. The amount involved and results obtained;

9. The experience, reputation and ability of the attorneys;

10. The undesirability of the case;

11. The nature and length of the professional relationship with the client; and

12. Awards in similar cases.

First Colonial, 544 F.2d at 1298-99.

Based on the standards set forth in section 330 of the Bankruptcy Code and First Colonial, the Applicant believes that the fair and reasonable value of its services rendered during the period covered by this Application is the total amount of $247,980.00, plus expenses of $176,063.29.

**A.    Time, Nature and Extent of Services Rendered and Results Obtained**

The foregoing summary, together with Exhibit A attached hereto, details the time, nature and extent of the professional services the Applicant rendered for the benefit of the PD Committee during the period covered by this application.  The total number of hours expended, 1,036.55,

12

reveals the extensive time devoted to this matter by the Applicant on a vast spectrum of legal issues which have arisen in this case during the period covered by this Application.

B.     **Novelty and Difficulty of Questions Presented**

The issues which have arisen in this case during the period encompassed by this Application demanded a high level of skill and perseverance of the Applicant. The Applicant spent considerable time preparing for all of the hearings associated therewith, as well as reviewing or drafting related pleadings and documentation.

C.     **Skill Requisite to Perform Services Properly**

In rendering services to the PD Committee, the Applicant demonstrated substantial legal skill and expertise in the areas of bankruptcy, commercial and secured transactions and litigation. In addition, the Applicant has drawn upon and utilized the vast experience of attorneys in other areas of its firm.

D.     **Preclusion from Other Employment by Attorney Due to Acceptance of Case**

The Applicant's representation in this case did not preclude it from accepting other employment, although it has required certain attorneys to dedicate significant amounts of their time to these cases.

E.     **Customary Fee**

The hourly rates of the Applicant as set forth in Exhibit A reflect the hourly rates the Applicant bills to its clients in other bankruptcy and commercial cases in which client payment is made on a frequent, periodic basis. Other courts outside of this district, in other bankruptcy matters in which the Applicant has been involved, have approved these rates. The Applicant's hourly rates are derived from a careful and thorough analysis of its internal costs, fees charged by other attorneys in the same practice and geographic areas and the experience of the Applicant's attorneys and paraprofessionals.

**F.     Whether Fee is Fixed or Contingent**

The Applicant's compensation in this matter is subject to approval of the Court and therefore contingent. The Court should consider this factor, which militates in favor of a fee in the amount requested. The amount requested is consistent with the fee which the Applicant would charge its clients in other non-contingent, bankruptcy and commercial cases.

**G.     Time Limitations Imposed by Client or Other Circumstances**

The circumstances of this case occasionally imposed serious time constraints on the Applicant due to the necessity for rapid resolution of significant issues.

**H.     Experience, Reputation and Ability of Attorneys.**

The Applicant is an established law firm, and its members and associates working on this case are experienced in matters of this kind.

**I.     "Undesirability" of Case**

This case is not undesirable. The Applicant is privileged to have the opportunity to represent the PD Committee and appear before the Court in this proceeding.

**J.     Nature and Length of Professional Relationship with Client**

The Applicant had no prior relationships with any member of the PD Committee, nor did the Applicant represent any member of the PD Committee in any matter.

**K.     Awards in Similar Cases**

The amount requested by the Applicant is reasonable in terms of awards in cases of similar magnitude and complexity. The compensation which the Applicant requests comports with the mandate of the Bankruptcy Code, which directs that services be evaluated in light of comparable services performed in non-bankruptcy cases in the community. The fee requested by the Applicant, $247,980.00, reflects an average hourly rate of $239.24, for 1,036.55, hours of service. Considering the complexity of the issues addressed during the periods covered by this application, this rate is

14

Case No. 01-1139 (JJF)

entirely appropriate. The costs which the Applicant seeks reimbursement for were necessarily incurred as a result of this engagement. Such costs are not, therefore, implicit in the Applicant's hourly rates.

WHEREFORE, the Applicant respectfully requests the Court to enter an order (i) awarding the Applicant the sum of $247,980.00, as interim compensation for services rendered, and $176,063.29, as interim reimbursement for actual and necessary expenses incurred during the course of the Applicant's representation of the PD Committee during the Application period; (ii) authorizing and directing the Debtor to pay the Applicant the sum of $198,384.00 representing 80% of the total fees and $176,063.29 in costs sought by the Applicant herein; and (iii) granting such other and further relief as the Court deems appropriate.

Dated: September 24, 2001

**BILZIN SUMBERG DUNN BAENA PRICE & AXELROD LLP**
Counsel to the Official Committee of Asbestos Property Damage Claimants
2500 First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2385
Telephone: (305) 374-7580
Facsimile: (305) 374-7593


By: /s/ Scott L. Baena
  Scott L. Baena (Admitted Pro Hac Vice)

15

**EXHIBIT B**

**CERTIFICATION**

1.  I have been designated by **Bilzin Sumberg Dunn Baena Price & Axelrod LLP** (the "Applicant") as the professional with responsibility in this case for compliance with Del.Bankr.LR 2016-2(f).

2.  I have read the Applicant's application for compensation and reimbursement of expenses (the "Application"). The Application complies with the Del.Bankr.LR 2016-2(f).

The fees and expenses sought are billed at rates and in accordance with practices customarily employed by the Applicant and generally accepted by the Applicant's clients.

3.  In seeking reimbursement for the expenditures described on Exhibit A, the Applicant is seeking reimbursement only for the actual expenditure and has not marked up the actual cost to provide a profit or to recover the amortized cost of investment in staff time or equipment or capital outlay (except to the extent that the Applicant has elected to charge for in-house photocopies and outgoing facsimile transmissions at the maximum rates permitted by Del.Bankr.LR 2016-2(e)).

4.  In seeking reimbursement for any service provided by the third party, the Applicant is seeking reimbursement only for the amount actually paid by the Applicant to the third party.

Case No. 01-1139 (JJF)

I HEREBY CERTIFY that the foregoing is true and correct.

Dated: September 24, 2001

                                              **BILZIN SUMBERG DUNN BAENA PRICE & AXELROD LLP**
                                              Counsel to the Official Committee of Asbestos Property Damage Claimamts
                                              2500 First Union Financial Center
                                              200 South Biscayne Boulevard
                                              Miami, Florida 33131-2385
                                              Telephone: (305) 374-7580
                                              Facsimile: (305) 374-7593


                                              By:__/s/ Scott L. Baena_____
                                                  Scott L. Baena (Admitted Pro Hac Vice)