IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:

W.R. Grace & Co., et al.,

          Debtors.

Chapter 11

Case No. 01-01139(JJF)

Jointly Administered

**FIFTH APPLICATION OF STROOCK & STROOCK & LAVAN LLP FOR
COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT
OF EXPENSES AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR THE PERIOD FROM AUGUST 1, 2001 THROUGH AUGUST 31, 2001**

| | |
|---|---|
| Name of Applicant | Stroock & Stroock & Lavan LLP |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | April 12, 2001 |
| Period for which compensation and reimbursement is sought | August 1, 2001 – August 31, 2001 |
| Amount of Compensation sought as actual, reasonable and necessary: | $53,873.50 |
| Amount of Expense Reimbursement sought as actual reasonable and necessary: | $3,069.88 |

This is an: ☒ interim ☐ final application

The total time expended for fee application preparation is approximately 37.5 hours and the corresponding compensation requested is approximately $16,295.50.[1]

This is the fifth application filed

---

[1] This is Stroock's Fifth Fee Application. Time expended for the preparation of this Fee Application will be reflected in the next Fee Application.

Local Form 102 (Fee Application/Attachment A, pg. 1)

SSL-DOCS1 1115023v5

Attachment A

Monthly Interim Fee Applications

|  |  | Requested | | Approved for Payment | |
| --- | --- | --- | --- | --- | --- |
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| May 30, 2001 | 4/12/01-4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111.943.00 | $6,884.73 |
| July 30, 2001 | 6/1/01 – 6/30/01 | $91,019.00 | 10,458.14 | $72,815.20 | 10,458.14 |
| August 31, 2001 | 7/1/01-7/31/01 | $92,308.00 | 5,144.37 | $73,846.40 | 5,144.37 |

Quarterly Fee Applications

|  |  | Requested | | Approved | |
| --- | --- | --- | --- | --- | --- |
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| July 30, 2001 | 4/12/01-6/30/01 | $369,873.75 | $19,318..00 | As of the date of this Application the hearing to approve compensation has not been determined | |

Local Form 102 (Fee Application/Attachment A, pg. 1)

SSL-DOCS1 1115023v5

W R GRACE & CO.
ATTACHMENT B
THROUGH AUGUST 31, 2001

| Summary of Hours | Hours | Rate | Amount | No. of Years in Position |
|---|---|---|---|---|
| **Partners** | | | | |
| Kruger, Lewis | 0.6 | 650 | 390.00 | 31 |
| Pasquale, Kenneth | 4.7 | 475 | 2,232.50 | 3 |
| Raskin, Robert | 11.2 | 550 | 6,160.00 | 8 |
| **Associates** | | | | |
| Krieger, Arlene | 89.5 | 438 | 38,037.00 | 8 |
| Taruschio Anna | 11.9 | 245 | 2,915.50 | 1 |
| **Paraprofessionals** | | | | |
| Defreitas, Vaughn | 7.0 | 100 | 700.00 | 13 |
| Serrette, Rosemarie | 19.8 | 150 | 2,970.00 | 13 |
| **Total** | **146.0** | | **53,873.50** | |

Blended Rate    $369.00

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| W. R. GRACE & CO., et al.[1] ) | Case No. 01-01139 (JJF) |
| ) | |
| Debtors. ) | Jointly Administered |

**FIFTH FEE APPLICATION BY STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., ET AL., FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM AUGUST 1, 2001 THROUGH AUGUST 31, 2001**

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the "Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

SSL-DOCS1 1146997v1

accordance with the Administrative Fee Order (defined below) for a fifth interim allowance of compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents as follows:

## I.  INTRODUCTION

1. By this application, Stroock seeks (i) an interim allowance of compensation for the professional services rendered by Stroock as counsel for the Committee for the period from August 1, 2001 through August 31, 2001 (the "Fifth Monthly Period") in the aggregate amount of $53,873.50, representing 119.2 hours of professional services and 26.8 hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Stroock during the Fifth Monthly Period in connection with the rendition of such professional services and paraprofessional services in the aggregate amount of $3,069.88.

2. Venue of this proceeding and this application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

## II.  BACKGROUND

3. On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code and have continued in the management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the Bankruptcy Code. Pursuant to an order of the Court, the Debtors' Chapter 11 cases have been procedurally consolidated and are being jointly administered.

4. The Debtors operate a world-wide specialty chemicals and materials business and employ approximately 3860 full and part-time employees. On a consolidated basis, for the fiscal

year 2000, Grace reported a net loss of $89.7 million[2] from $1.59 billion in net revenues. The Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor subsidiaries and affiliates.

5. On April 12, 2001, the United States Trustee formed the Committee. During the first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter 11 cases. The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP ("DM&H") as its local Delaware counsel.

6. The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims and asbestos-related property damage claims against the Debtors (collectively, the "Asbestos Claim Committees"). On June 18, 2001, the United States Trustee appointed an official committee to represent the interests of equity security holders of the Debtors.

7. By application dated May 1, 2001, Stroock sought Court approval for its retention as counsel to the Committee nunc pro tunc to April 12, 2001. The Court signed an order approving Stroock's retention as counsel to the Committee on May 30, 2001.

8. This is the fifth application Stroock has filed with the Court for an allowance of compensation and reimbursement of expenses for services rendered to the Committee. This application is submitted pursuant to the terms of the Administrative Order Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for

---

[2] The Debtors' pleadings further report that this net loss results in part from a $294.0 million asbestos-related charge to earning recorded in the forth quarter of 2000.

3

Professionals and Official Committee Members, approved by the Court on May 3, 2001 (the "Administrative Fee Order").

9. In accordance with the procedures established by the Administrative Fee Order, Stroock has received payment from the Debtors in the aggregate amount of $314,817.50 representing 80% of the fees and 100% of the expenses sought in the first, second and third monthly applications covering the period from April 12, 2001 through June 30, 2001. Other than those payments, applicant has received no payment and no promises for payment from any source for services rendered in connection with these cases. There is no agreement or understanding between the Applicant and any other person (other than members of Stroock) for the sharing of compensation to be received for the services rendered in these cases.

10. As stated in the Affidavit of Lewis Kruger, Esq. annexed hereto as Exhibit "A," all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

### III. SUMMARY OF SERVICES RENDERED

11. Since being retained by the Committee, Stroock has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the unsecured creditors of the Debtors' estates. The variety and complexity of these cases and the need to act or respond on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by personnel from several legal disciplines, on an as-needed basis, including in certain instances, working into the evening and on weekends.

12. Stroock maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the Committee. Such time records were made contemporaneously with the rendition of services by the person rendering

4

such services and in the ordinary course of Stroock's practice, and are presented in compliance with Delaware Local Rule 2016-2(d) amended effective as of February 1, 2001. A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Fifth Monthly Period is annexed hereto as Exhibit "B". In addition, Exhibit "C" hereto contains a summary of the hours expended by each of the attorneys and paraprofessionals during the Fifth Monthly Period, their normal hourly rates, and the value of their services.

13. Stroock also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are also available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit "D". Also included within Exhibit "D" is an itemization of each expense incurred within each category.

14. Stroock respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

15. The following summary of the services rendered during the Fifth Monthly Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit "B". Rather, it is merely an attempt to highlight certain of these areas in which services were rendered to the Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

(i)   Case Administration/General – Category 0002

16.   During the Fifth Monthly Period, Stroock continued to closely monitor the items on the Court's docket for these cases to ensure that the Committee was fully informed about all pending matters and that Stroock would be ready to timely respond on behalf of the Committee, as might be applicable, and continued to engage Debtors' counsel on an on-going basis with respect to pending matters, including the status of the Debtors' request to extend their exclusive periods.

17.   Stroock has expended 13.9 hours on this category for a fee of $5,355.50.

(ii)   Fee Application/Monthly Billing Reports -- Category 0003

18.   During the Fifth Monthly Period, Stroock prepared its Fourth Fee Application including a narrative section summarizing the services rendered during that period by Stroock and compiled and attached expense schedules. In addition, Stroock expended time preparing a second application seeking reimbursement for expenses incurred by members of the Committee, and revised forms of notices of such applications.

19.   Stroock has expended 38.8 hours on this category for a fee of $9,870.50.

(iii)   Review of Other Professionals Fee Applications – Category 0004

20.   During the Fifth Monthly Period, Stroock revised a summary schedule of pending compensation applications and reviewed certain of the underlying monthly and interim fee applications themselves. Stroock has expended 9.3 hours on this category for a fee of $3,239.00.

(iv)   Asbestos Litigation – Category 0005

21.   The Debtors state that their Chapter 11 filings were precipitated by a substantial and unexpected increase in the number of asbestos cases filed against the Debtors, as well as the recent commencement of cases asserting new theories of asbestos-related liability against them.

SSL-DOCS1 1146997v1

Given the fundamental importance of the asbestos claims-related matters to these cases, Stroock attorneys continued, during the Fifth Monthly Period, to thoroughly review the various pleadings filed both by and against the Debtors in these Chapter 11 cases, including those which may impact on the conduct of related asbestos actions against non-debtor third parties, and those which may impact upon the process for, and determination of, the amount and validity of asbestos-related claims against the Debtors' estates.

22.  More specifically, during the Fifth Monthly Period, Stroock continued its review of the extensive motion, memorandum of law and related exhibits previously filed by the Debtors seeking entry of a case management order providing for the establishment of a proposed schedule and process to determine the validity of asbestos claims against the Debtors' estates, and entry of an order providing for the establishment of a bar date and approving special proof of claim and notice procedures to be utilized in these cases. Stroock prepared a memorandum identifying its concerns with the Debtors' proposed bar date notice and related documentation and proposing modifications to be made to such documentation to satisfy such concerns.

23.  In addition, during the Fifth Monthly Period, Stroock reviewed and provided further comment in respect of a memorandum for the Committee on asbestos liabilities prepared by FTI P&M. Stroock has expended 37.5 hours on this category for a fee of $16,295.50.

(v)   **Retention of Professionals - Category 0006**

24.  During the Fifth Monthly Period, Stroock reviewed the terms of the proposed retentions by the Debtors of the Casner & Edwards firm, and by the equity committee of Kramer Levin, and discussed with counsel for Conway Del Genio Gries & Co. LLC ("Conway"), Conway's agreement to modify the terms of its proposed employment as financial advisors to the

asbestos property damage committee in a manner which would satisfy the concerns raised by the Committee in its objection to the terms of such professional's retention.

25. Stroock has expended 4.8 hours on this category for a fee of $1,776.50.

(vi) **Creditors Committee Meetings/Conferences - Category 0007**

26. During the Fifth Monthly Period, Stroock communicated with the members of the full Committee through numerous memoranda and telephone conversations. In order to keep the Committee fully informed of all of the pending matters in these cases, and thus enable the Committee to take informed positions on issues, Stroock thoroughly reviewed and summarized each of the motions filed by the Debtors and other parties in interest in these cases, raised issues the Committee should be aware of, and made recommendations to the Committee concerning appropriate actions to be taken with regard to the motions, communicated with members of the Committee regarding the positions to be taken, engaged counsel for the Debtors, and other parties and movants, as applicable, with the Committee's concerns, and negotiated whenever and to the extent possible a consensual resolution of outstanding issues.

27. Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues which have already arisen in these cases and to monitor closely the Debtors' management of these estates.

28. In addition during this Fifth Monthly Period, Stroock expended considerable time discussing with FTIP&M and negotiating with the Debtors the provisions of an amendment to the Confidentiality Agreement previously executed by FTIP&M in these cases.

29. Stroock has expended 30.4 hours on this category for a fee of $12,855.50.

SSL-DOCS1 1146997v1

(vii) **Court Hearings - Category 0008**

30. There was one omnibus hearing before the Court during the Fifth Monthly Period during which the Court was scheduled to hear argument on various matters, including the Debtors' motion to establish procedures for the sale or abandonment of assets of less than $5.0 million in value, and First Union Commercial Corporation's motion to compel the Debtors' assumption of the parties equipment lease. Stroock prepared for and attended the hearing before the Court.

31. Stroock has expended 4.4 hours on this category for a fee of $2,307.50.

(viii) **Executory Contracts/License Agreements – Category 0011**

32. During the Fifth Monthly Period, Stroock reviewed and then provided comment to the proposed form of stipulation between First Union Commercial Corporation and the Debtors to be submitted to the Court at the August 2, 2001 hearing, whereby the Debtors were agreeing to assume the parties equipment lease. Stroock has expended .6 hours on this category for a fee of $255.00.

(ix) **Claims Analysis/Claims Objection Process – Category 0015**

33. During the Fifth Monthly Period, Stroock reviewed correspondence forwarded by the Debtors in respect of the pending chapter 11 case of Intercat, Inc, in which W.R. Grace-Conn holds an unsecured claim in an amount in excess of $22.0 million. In addition, during this period, Stroock reviewed certain of the Debtors' schedules and otherwise responded to the inquiry from a creditor. Stroock has expended 2.4 hours on this category for a fee of $470.00.

(x) **Sales of Assets – Category 0020**

34. During the prior monthly period, Stroock completed its review of the Debtors' motion seeking to establish omnibus procedures allowing them to sell or abandon assets that the

SSL-DOCS1 1146997v1

Debtors deemed *de minimis*, engaged the Debtors in discussions regarding the Committee's concerns regarding the procedures sought to be established by the motion, and requested additional information. The Committee eventually reached an agreement with the Debtors regarding modifications that would be made to the proposed procedures. During the Fifth Monthly Period, Stroock reviewed the form of order circulated by the Debtors and communicated comments to the Debtors on the proposed form of order.

35.  Stroock has expended 2.6 hours on this category for a fee of $1,130.00.

## IV. FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

36.  The factors to be considered in awarding attorneys fees have been enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547 F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts. Stroock respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

(A)  <u>The Time and Labor Required</u>.  The professional services rendered by Stroock on behalf of the Committee have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the complex issues encountered by the Committee with skill and dispatch. Occasionally, Stroock has been required to perform these services under significant time constraints requiring work late into the evening and on weekends. The services rendered by Stroock were performed efficiently, effectively and economically.

(B)  <u>The Novelty and Difficulty of Questions</u>.  Novel and complex issues have already arisen in the course of these Chapter 11 cases, and it can be anticipated that other such issues will be encountered. In this case, as in many others in

10

which the firm is involved, Stroock's effective advocacy and creative approach have helped clarify and resolve such issues and will continue to prove beneficial.

(C) <u>The Skill Requisite to Perform the Legal Services Properly</u>. Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the resolution of issues, are and will continue to contribute to the maximization of the distributions to the Debtors' unsecured creditors.

(D) <u>The Preclusion of Other Employment by Applicant Due to Acceptance of the Case</u>. Due to the size of Stroock's insolvency department, Stroock's representation of the Committee has not precluded its acceptance of new clients. However, the volume of the matters needing attention on a continuing basis has required several of the attorneys to commit significant portions of their time to these cases.

(E) <u>The Customary Fee</u>. The fee sought herein is based upon Stroock's normal hourly rates for services of this kind. Stroock respectfully submits that the fee sought herein is not unusual given the magnitude and complexity of these cases and the time expended in attending to the representation of the Committee, and is commensurate with fees Stroock has been awarded in other cases, as well as with fees charged by other attorneys of comparable experience.

(F) <u>Whether the Fee is Fixed or Contingent</u>. Pursuant to §§ 330 and 331 of the Bankruptcy Code, all fees sought by professionals employed under § 1103 of

SSL-DOCS1 1146997v1

the Code are contingent pending final approval by this Court, and are subject to adjustment dependent upon the services rendered and the results obtained.

(G)   Time Limitations Imposed by Client or Other Circumstances. As already indicated, Stroock has been required to attend to the various issues arising in these cases. Occasionally, Stroock has had to perform those services under significant time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

(H)   The Amount Involved and Results Obtained. Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

(I)   The Experience, Reputation and Ability of the Attorneys. Stroock has one of the largest and most sophisticated insolvency practices in the nation and has played a major role in numerous cases of national import including: Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation, Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The Charter Company, Federated Department Stores, G. Heileman Brewing Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc., Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation, Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc., Planet Hollywood International and Anchor Glass Container Corporation. Stroock's experience enables it to perform the services described herein competently and expeditiously. In addition to its expertise in the

SSL-DOCS1 1146997v1

area of corporate reorganization, Stroock has already frequently called upon the expertise of its partners and associates in the litigation and ERISA areas to perform the wide ranging scope of the legal work necessitated by these cases.

(J)     The "Undesirability" of the Case. These cases are not undesirable, but as already indicated, have required a significant commitment of time from several of the attorneys assigned hereto.

(K)     Nature and Length of Professional Relationship. As described above, Stroock has been actively rendering services on behalf of the Committee as necessary and appropriate from April 12, 2001 through to the present.

## V.     ALLOWANCE OF COMPENSATION

37.     The professional services rendered by Stroock required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole and the Debtors' estates.

38.     With respect to the level of compensation, § 330 of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person (including attorneys for a creditors' committee): "Reasonable compensation for actual necessary services rendered by [such] . . . professional person. 11 U.S.C. § 330. Section 330 further states that the court should take into consideration, inter alia, the nature, extent, and value of services performed, as well as the cost of comparable services other than in a case under this title. Id. The clear Congressional intent and policy expressed in this statute is to provide for adequate

SSL-DOCS1 1146997v1

compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

39. The total time spent by Stroock attorneys and paraprofessionals during the Fifth Monthly Period was 146. hours. Such services have a fair market value of $53,873.50. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

40. As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit "C" are summaries of the hours expended by the attorneys and paraprofessionals during the Fifth Monthly Period, their normal hourly rates, and the value of their services.

41. In addition, Stroock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $3,069.88 for which Stroock respectfully requests reimbursement in full.

42. The disbursements and expenses have been incurred in accordance with Stroock's normal practice of charging clients for expenses clearly related to and required by particular matters. Such expenses were often incurred to enable Stroock to devote time beyond normal office hours to matters, which imposed extraordinary time demands. Stroock has endeavored to minimize these expenses to the fullest extent possible.

43. Stroock's billing rates do not include charges for photocopying, telephone and telecopier toll charges, computerized research, travel expenses, "working meals", secretarial overtime, postage and certain other office services, because the needs of each client for such services differ. Stroock believes that it is fairest to charge each client only for the services

actually used in performing services for it. Stroock has endeavored to minimize these expenses to the fullest extent possible.

44. Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions. Stroock does not charge for incoming facsimiles.

45. No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

46. Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

47. No prior application has been made in this or in any other Court for the relief requested herein for the Fifth Monthly Period.

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order:

(a) the allowance of compensation for professional services rendered to the Committee during the period from August 1, 2001 through and including August 31, 2001 in the amount of $53,873.50;

(b) the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from August 1, 2001 through and including August 31, 2001 in the amount of $3,069.88; and

(c) authorizing and directing the Debtor to pay as interim compensation to Stroock 80% of the amount of the professional services rendered and 100% of the

SSL-DOCS1 1146997v1

expenses incurred by Stroock during the period from August 1, 2001 through and including August 31, 2001, subject to final payment of the full amount; and

(d)  granting such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
September 28, 2001

STROOCK & STROOCK & LAVAN LLP

/S/
Lewis Kruger (LK4512)
A Member of the Firm
180 Maiden Lane
New York, New York 10038-4982
(212) 806-5400

Co-Counsel for the Official Committee of
Unsecured Creditors of W. R. Grace & Co., et al.