**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| W.R. Grace & Co. | ) Case No. 01-01139-JJF |
| | ) Chapter 11 |
| | ) |
| Debtor, | ) |

**MOTION OF W.R. GRACE & CO.
FOR ORDER FIXING TIME BY WHICH DEBTOR MUST
ASSUME OR REJECT UNEXPIRED LEASES; OR, IN THE
ALTERNATIVE, FOR RELIEF FROM THE §362 AUTOMATIC STAY**

COMES NOW, Toyota Motor Credit Corporation ("Toyota") by and through its undersigned counsel, Robert T. Aulgur, Jr., Esquire, and files its Motion for Order Fixing Time By Which Debtor Must Assume or Reject Unexpired Leases, Or, In The Alternative, For Relief From §362 Automatic Stay. In support of its motion, Toyota states as follows:

**INTRODUCTION**

1. Toyota is in the motor vehicle manufacturing and leasing business.

2. A Voluntary Petition was filed under Chapter 11 of the Bankruptcy Code on April 2, 2001.

3. Prior to the Debtor's Chapter 11 filing, the Debtor and Toyota entered into certain lease agreements (the "Leases"), whereby Toyota leased certain equipment ("Forklifts") to the Debtor as set forth below:

a. Account No. 2/3 08663-001-0001/0002, two used Toyota Forklifts Model 42-6FGU25, Serial Nos. 66976 and 67014 and as part of Addendum to the Lease, two Hyster Model S50XL, Serial Nos. C187V05592P and C187V05607P. ("Lease 1" attached hereto as Exhibit "A".)

b. Account No. 2/3 08663-002-0001, used Toyota Forklift Model 42-6FGCU25, Serial No. 64972 and as part of Addendum to the Lease, Datsun Model CPF02A25V, Serial No. CPF02001855. ("Lease 2" attached hereto as Exhibit "B".)

c. Account No. 2/3 08663-003-0001, Toyota Forklift Model 42-6FGCU030, Serial No. 60938 and as part of Addendum to the Lease, Hyster Model S60XL, Serial No. A187V0427776. ("Lease 3" attached hereto as Exhibit "C".)

d. Account No. 1/1 09804-001-0001, Forklift Model 42-6FGCU30, Serial No. 60243. ("Lease 4" attached hereto as Exhibit "D".)

e. Account No. 1/1 07506-003-0001/0002, two Forklifts Model 7FDU25, Serial Nos. 60347 and 60351. ("Lease5" attached hereto as Exhibit "E".)

4. The Leases require monthly payments to Toyota as rent for the Forklifts and other equipment (hereinafter "Forklifts").  As of September 20, 2001, the rental for the seven total Forklifts is in default in the five specified accounts:

   a. Account No. 2/3 08663-001-0001/0002- Default Date July 11, 2001; Monthly payment $949.76; postpetition arrears $2,849.28 together with $179.20 late charges and prepetition arrears $1,039.36 inclusive of $89.60 late charges.

   b. Account No. 2/3 08663-002-0001- Default Date July 11, 2001; Monthly payment $515.16; postpetition arrears $1,545.48 together with $97.20 late charges and prepetition arrears $563.76 inclusive of late charges $48.60.

   c. Account No. 2/3 08663-003-0001-Default Date July 11, 2001; Monthly payment $434.60; postpetition arrears $1,303.80 together with $61.36 late charges and prepetition arrears $516.60 inclusive of late charges $82.00.

   d. Account No. 1/1 09804-001-0001-Default Date July 26, 2001, Monthly payment $458.59, and postpetition arrears $917.18 together with $87.38 late charges

    and prepetition arrears $1,244.83 inclusive of late charges $786.24.

  e. Account No. 1/1 07506-003-0001/0002- Default Date July 7, 2001; Monthly payment $437.63 per unit, total monthly payment $875.26; postpetition arrears $2,625.78 together with $206.40 late charges and prepetition arrears $891.78 inclusive of late charges $41.30.

5. Leases 1 and 2 provide that at the maturity of the Lease, the equipment shall be returned to Toyota in safe operating condition.  Under Leases 3 through 5 the Debtor has an option to purchase the Equipment. (See Leases and Addendum to certain leases attached hereto as Exhibits "A" through "E").  The Leases also require the Debtor to maintain insurance on the Equipment and provide Toyota with evidence of said insurance.

6. Leases 1-3 and 5 are full service maintenance agreements which require the Debtor to make the equipment available for inspection and servicing by Toyota until return of the equipment to Toyota at the expiration of the Lease term.  Toyota has been unable to inspect and service the Equipment since the bankruptcy petition was filed. Toyota seeks proof of ongoing maintenance, location and contact information for periodic inspection purposes.

7. Lease 4 requires the Debtor to perform, at its own cost and expense, all maintenance, service and repair of the Forklift according to Toyota's manual for maintenance and operation, and further requires that until return of the Forklift to Toyota at the expiration of the Lease term or purchase of the Forklift under the purchase option, the Debtor shall maintain the Forklifts in good operating order, repair, and appearance.

## BASIS FOR THE REQUESTED RELIEF

8. Pursuant to §365 (d)(2) of the Bankruptcy Code, "the trustee" {or debtor-in-possession} may assume or reject ...an unexpired lease of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such ... lease may order the trustee to determine within a specified period time whether to assume or reject such ... lease" 11 *U.S.C* §365 (d)(2) and §1107.

9. By this Motion, Toyota requests that this Court enter an Order requiring the Debtor to decide by not later than November 5, 2001 whether it will assume or reject the Leases, (ii) communicate that decision to Toyota in such a manner that Toyota receives actual notice of the substance of the Debtor's decision not later than the end of Toyota's business hours on the same day, (iii) promptly file with

this Court a motion for approval of its decision, and schedule that motion for a hearing before this Court at the next regularly scheduled omnibus hearing.

10. §365 (d)(2) of the Bankruptcy Code provides that a debtor-in-possession can assume or reject an unexpired lease of personal property at any time before the confirmation of a plan. 11 *U.S.C.* §365 (d)(2). However, bankruptcy courts, on request of any party to such a lease, may order the debtor-in-possession to determine within a specified period of time whether to assume or reject such lease within a reasonable time, which depends upon the facts and circumstances of the particular case. See, *In re Mayer Pollock Steel Corp.*, 157 B.R. 952 (Bank E.D.Pa 1993).

11. It is appropriate for the Debtor to make a determination as to whether it will assume or reject the Equipment Leases by November 5, 2001 because Toyota will suffer economic harm that cannot be safeguarded and the potential injury to Toyota outweighs Debtor's interests in utilizing the Forklifts. Forklifts are maintenance sensitive. If regular maintenance is not performed in accordance with Toyota's schedule of hourly usage and daily and monthly maintenance, the Forklifts quickly depreciate in real value and are subject to ruin. Since the Debtor's Chapter 11 filing on April 2, 2001 Toyota has been unable

to inspect and service the Forklifts as provided in the Leases (see paragraph 6.2A in Exhibits "A"-"C" and "E" and paragraph 6.2B in Exhibit "D"). Such inspection and servicing is necessary to keep the Forklifts in good operating condition and preserve the Forklifts' value during the Lease. Therefore, Toyota's interest in the Forklifts is not adequately protected. Any interest the Debtor has in utilizing the Forklifts cannot outweigh the potential injury to Toyota if the Debtor is permitted to delay its decision to assume or reject the Forklifts' Lease.

12.  When there has been a default in an executory contract or unexpired lease, the trustee (or debtor in possession) may not assume it until the trustee:  (1) cures or provides adequate assurance that it will promptly cure the default; (2) compensates or provides adequate assurance of prompt future compensation for actual pecuniary loss resulting from the default; and (3) provides adequate assurance of future performance under the contract or lease.  11 *U.S.C.* §365(b)(1)(A)(B)(C).  "Once the trustee satisfies these requirements it may assume the contract or lease, but it must do so in its entirety."  *In re Rickel Home Centers, Inc.*, 209 F.3rd 291, 298 (3rd Cir. 2000).  Prepetition arrears in this case are $5,286.65

collectively, inclusive of interest. The debtor in this case has made no effort to cure the prepetition arrears or propose a prompt cure or provide adequate assurance of future performance.

13. In the alternative, § 362(d) of the Bankruptcy Code provides, in part, that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-
>
> > (1) For cause, including lack of adequate protection of an interest in property of such party in interest; or
> >
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if –
> >
> > > (A) the debtor does not have an equity in
> > > such property; and
> > > (B) such property is not necessary to an
> > > effective reorganization

14. Toyota submits that it is entitled to relief under subsection (1) of § 362(d) because the Debtor has failed to provide adequate protection of Toyota's ownership interest in the Equipment by failing to keep current with post-petition payments, by failing to provide proof of

continuing insurance, and by failing to provide proof of ongoing maintenance.  Further, Toyota is entitled to relief under subsection (2) because Debtor has no equity interest in the leased Equipment and the Equipment is not necessary to an effective reorganization.  Adequate protection in the context of relief from the automatic stay is a flexible concept which requires a court to make decisions on a case-by-case basis after full consideration of the characteristics of each proceeding. *In re Tudor Motor Lodge Assoc., Ltd. Partnership*, 102 B.R. 936, 954 (Bkrtcy. D. N.J. 1989).  "If a debtor asserts certain means of adequate protection and fails to support these means with competent evidence, the bankruptcy court may permissibly lift the stay without further explanation of any viable alternatives."  *Id.*  No competent proof of adequate protection has been proffered by the debtor and relief from stay is appropriate.

CONCLUSION

WHEREFORE, for the foregoing reasons, Toyota respectfully requests that this Honorable Court enter an Order compelling the Debtor to determine not later than November 5, 2001 whether it will assume or reject the Leases, immediately communicate that decision to Toyota, promptly file a Motion with this Court for approval of that decision, schedule the Motion for the next regularly scheduled omnibus hearing and grant such other relief as is just and proper including prompt cure of prepetition arrears of $5,286.65, cure of postpetition arrears, proof of insurance and proof of ongoing maintenance.

In the alternative, Toyota requests an Order relieving it from the Automatic Stay pursuant to 11 *U.S.C.* *§*362 (d)(1) and (2) because Debtor has failed to stay current with post-petition payments, has failed to provide Movant with adequate protection, has failed to provide evidence of continuing insurance, failed to provide proof of ongoing maintenance, location and contact information, and because Debtor has no equity in the leased Equipment and it is not necessary to an effective reorganization.

Toyota also seeks attorney's fees and costs due to the necessity of having to file the within Motion in accordance with the Lease Agreements which provide for attorney's fees and other expenses incurred in the event of a default in the enforcement of the terms of the Leases.

                        WHITTINGTON & AULGUR

                        /s/Kristi J. Doughty
                        Robert T. Aulgur, Jr. (No. 165)
                        Kristi J. Doughty (No. 3826)
                        P.O. Box 617
                        Odessa, DE 19730
                        (302)-378-1661
                        Attorney for Toyota Motor Credit Corporation

Dated: October 16, 2001