EXHIBIT "A"

the totals shown above have been calculated on the basis of information supplied by LESSEE and data developed by LESSOR

# TRANSFER OF LEASE AGREEMENT

te: _____                    Account Number: 2/3 08663-001-0001-0002

ansferor(s): (Name and Address)                Transferee(s): (Name and Address)

NDOPCO INC DBA CROSFIELD CATALYSTS              WR GRACE & CO., -CONN
4099 W 71st ST                                  4099 W 71st St
CHICAGO IL 60629                                CHICAGO IL 60629

                                                County: _____

ansferor proposes to transfer all of Transferor's rights, interests, and obligations in the following described Motor Vehicle Lease
ease") and the vehicle covered, to the above named Transferee(s) by entering into this agreement. Transferor requests Toyota
otor Credit Corporation's consent to this transfer under the terms and conditions set forth below.

| | | | | | |
|---|---|---|---|---|---|
| (2)USED TOYOTA | 42-6FGCU25 | | | 66975 , 67014 | ___ Personal, family or household<br>XX Business, commercial or agricultural |

| | | | | | |
|---|---|---|---|---|---|
| 60 Payments<br>@ $ 896.00 +tax<br>XXX.XXX / Month due on<br>the 11th of each month. | 38 | 5/11/00 | 3/11/02 | | 22 Payments<br>@ $ 896.00 +tax<br>XX.XX.XXX / Month due on<br>the 11th of each month. |

Transferee agrees to assume all rights, interests, and obligations of the Transferor as detailed in the above described Lease, and to
honor the requirements set forth in the Lease. Transferee acknowledges acceptance of any and all obligations for payment of excess
wear and tear, and/or excess mileage charges assessed on the vehicle at lease maturity, regardless of when the excess wear and
ear and/or excess mileage was incurred. Transferee acknowledges having read the Lease. Transferee has been given a completely
illed in copy of the Lease and a copy of this Transfer of Lease Agreement. Transferee acknowledges that any vehicle service
agreement, extended warranty or mechanical breakdown protection contract under the Lease may not be assignable to Transferee.

| TRANSFEREE (Signature)    WR GRACE & CO., -CONN    [signature] | Date 1 Jun 00 |
|---|---|

Transferor guarantees the prompt and unconditional payment and performance of all Transferee's obligations under this agreement
and agrees that in the event of a default in any of the obligations, to pay upon demand the full amount remaining unpaid together
with a reasonable attorney's fee (if permitted by law) if placed with an attorney for collection. The transfer of the Lease and the
property covered thereby shall not be considered a 'sublease' by the Transferor.

| TRANSFEROR (Signature)  INDOPCO INC DBA CROSFIELD CATALSTS  [signature] | Date June 22, 2000 |
|---|---|

| Acknowledgment of Dealer | Consent of Toyota Motor Credit Corporation |
|---|---|
| Dealer hereby acknowledges this Transfer of Lease Agreement upon the terms and conditions contained herein. | Toyota Motor Credit Corporation hereby consents to this Transfer of Agreement upon the terms and conditions contained herein. |
| | Toyota Motor Credit Corporation |
| Dealer (Signature) | Date | By: M.C. Jones | Date 7-13-00 |

TMCC 6029 03/97



## TRANSFER OF LEASE AGREEMENT

Date: _____

Account Number: 2/3 08663-002-0001

Transferor(s): (Name and Address)

INDOPCO INC DBA CROSFIELD CATALYSTS
4099 W 71st St
CHICAGO IL 60629

Transferee(s): (Name and Address)

WR GRACE & CO., -CONN
4099 W 71st St
CHICAGO IL 60629

County: _____

Transferor proposes to transfer all of Transferor's rights, interests, and obligations in the following described Motor Vehicle Lease ("Lease") and the vehicle covered, to the above named Transferee(s) by entering into this agreement. Transferor requests Toyota Motor Credit Corporation's consent to this transfer under the terms and conditions set forth below.

| YEAR AND MAKE | MODEL | BODY STYLE | NUMBER OF CYLINDERS | VEHICLE IDENTIFICATION NUMBER | PRIMARY USE: |
|---|---|---|---|---|---|
| (1) USED TOYOTA | 42-6FGCU25 | | | 64972 | ___ Personal, family or household<br>XX Business, commercial or agricultural |

| ORIGINAL MONTHLY PAYMENT SCHEDULE | NUMBER OF PAYMENTS PAID TO DATE | DATE OF NEXT SCHEDULED PAYMENT | MATURITY DATE | REMAINING MONTHLY PAYMENT SCHEDULE |
|---|---|---|---|---|
| 60 Payments<br>486.00 + tax<br>@ $ XXXXXXXX / Month due on<br>the 11th of each month. | 36 | 5/11/00 | 5/11/02 | 24 Payments<br>486.00 +tax<br>@ $XXXXXXXX / Month due on<br>the 11th of each month. |

Transferee agrees to assume all rights, interests, and obligations of the Transferor as detailed in the above described Lease, and to honor the requirements set forth in the Lease. Transferee acknowledges acceptance of any and all obligations for payment of excess wear and tear, and/or excess mileage charges assessed on the vehicle at lease maturity, regardless of when the excess wear and tear and/or excess mileage was incurred. Transferee acknowledges having read the Lease. Transferee has been given a completely filled in copy of the Lease and a copy of this Transfer of Lease Agreement. Transferee acknowledges that any vehicle service agreement, extended warranty or mechanical breakdown protection contract under the Lease may not be assignable to Transferee.

| TRANSFEREE (Signature) | | Date |
|---|---|---|
| WR GRACE & CO., -CONN | *[signature]* | 1 Jun 00 |

Transferor guarantees the prompt and unconditional payment and performance of all Transferee's obligations under this agreement and agrees that in the event of a default in any of the obligations, to pay upon demand the full amount remaining unpaid together with a reasonable attorney's fee (if permitted by law) if placed with an attorney for collection. The transfer of the Lease and the property covered thereby shall not be considered a 'sublease' by the Transferor.

| TRANSFEROR (Signature) | | Date |
|---|---|---|
| INDOPCO INC DBA CROSFIELD CATALYSTS | *[signature]* | June 22, 2000 |

| Acknowledgment of Dealer | Consent of Toyota Motor Credit Corporation |
|---|---|
| Dealer hereby acknowledges this Transfer of Lease Agreement upon the terms and conditions contained herein. | Toyota Motor Credit Corporation hereby consents to this Transfer of Agreement upon the terms and conditions contained herein. |

| Dealer (Signature) | | Date | Toyota Motor Credit Corporation | | |
|---|---|---|---|---|---|
| | | | By: *[signature]* | | Date 7-13-00 |

TMCC 6029 03/97



# TOYOTA MOTOR CREDIT CORPORATION

LEASE NO. _____ (TMCC USE)

## LEASE AGREEMENT
### (EQUIPMENT)

LEASE DATE: _____

**LESSEE - NAME AND ADDRESS OF PRINCIPAL OFFICE:**

_____

_____

_____

☐ Individual    ☐ Partnership    ☒ Corporation    ☐ Other

**ADDRESS OF LOCATION OF EQUIPMENT:**

_____

**DEALER / LESSOR - NAME AND BUSINESS ADDRESS:**

_____

_____

_____

Insurance Company or Agent: _____

Address: _____    Phone No. ( ) _____

This Agreement ☒ is    ☐ is not a FULL SERVICE MAINTENANCE AGREEMENT.

The following Exhibits, if any, are attached hereto and incorporated herein by this reference:

Exhibit "A" _____    Exhibit "B" _____

## 1. LEASE OF EQUIPMENT.

Subject to the terms and conditions of this Lease Agreement ("Agreement"), LESSOR hereby rents to LESSEE and LESSEE hereby rents from LESSOR, the following material handling vehicles complete with all additions, attachments and accessories and all other material handling vehicles described on a Notice of Delivery ("Notice of Delivery") executed by LESSOR and LESSEE from time to time in the form of Supplement No.1 attached hereto and incorporated herein by this reference (collectively referred to as the "Equipment"):

| ITEM NO. | QUANTITY | DESCRIPTION / SERIAL NO. | MONTHLY RENTAL PER ITEM | INITIAL TERM | SECURITY DEPOSIT | HOURLY OVERTIME RATE PER ITEM |
|---|---|---|---|---|---|---|
| 1 | ONE (1) | NEW TOYOTA #L-5FGU25; 10th Fwd, 42" Forks, LPG Sideshifter; _____ | $450.00** | 50 mos. | N/A | $1.55** |

*plus freight and applicable taxes.
**overtime charge to offset additional maintenance exposure due to excessive hourly usage.

All Equipment rented hereunder is rented f.o.b., at LESSOR's address set forth above and will be used by LESSEE in LESSEE's operation at the address set forth above and as described in a Survey Report executed by LESSOR and LESSEE (the "Survey Report"). LESSEE shall not remove any of the Equipment to any other place without LESSOR's prior written consent.

Where battery powered Equipment is rented, any additional batteries and chargers other than those provided above and included in the monthly rental per item shall be rented at the additional sole cost and expense of LESSEE.

The rentals shown above have been calculated on the basis of information supplied by LESSEE and data developed by LESSOR as set forth in the Survey Report.

If an hourly overtime rate is shown above, the hourly overtime rate will apply to each hour of use of any Equipment in excess of _____ hours in any calendar quarter as determined by the hour meter or other mechanical device used to record hours of use supplied with the Equipment ("hour meter"). Readings of the hour meter will be taken and billed by LESSOR quarterly. If any hour meter on any Equipment fails to function, thereby rendering an hour meter reading unavailable for such Equipment, the hours of use will be ascertained by computing the average number of hours per month that the Equipment was used during the previous 3 months of recorded usage (or in case such previous period of recorded use shall be less than 3 months, then during such lesser period) and multiplying the monthly average so computed by the number of months, or fractions thereof, during which said hour meter for such Equipment shall have failed to function. LESSEE agrees to pay said overtime rental charges within 10 days from the date of LESSOR'S invoice for such charges.

## 2. TERM AND RENEWAL.

2.1 The original term of rental of the Equipment will commence with the delivery thereof and, unless sooner terminated as provided herein, will continue for the number of months set forth above under "Initial Term" (the "Initial Term").

2.2 The Initial Term will be extended automatically from month to month after the expiration thereof unless either of the parties gives notice to the other of an intention to terminate such rental at least 60 days prior to the expiration of the Initial Term, or at least 10 days prior to the expiration of any extended term.

until the rented Equipment is put into proper operating condition. The substituted Equipment will be as nearly practicable of the same capacity and general specifications as the rented Equipment; provided, that LESSOR will not be required to provide specialized attachments or accessories, or to make special alterations to the substituted Equipment. Such substituted Equipment will, while in the service of LESSEE, be subject to the terms and conditions and the payment of rentals and charges provided in this Agreement.

6.4A Obligations of LESSEE - LESSEE, at its own cost and expense, will be responsible for the normal needs required for the Equipment in its daily operation, including: (i) the making of a routine check of each unit at the beginning of each shift; (ii) supplying all necessary fuel (gasoline, electric current or L. P. Gas), replacement oil and water; (iii) where applicable, checking the oil level in the crankcase and water in the cooling system daily and checking the air pressure of pneumatic tires weekly; (iv) where battery-powered Equipment is rented, maintaining the proper level of water in the batteries, and

## 3. RENT.

LESSEE will pay the monthly rental stated in Article 1 with respect to each item of Equipment commencing on the day of delivery and continuing on the same day of the month of each successive month thereafter during the Initial Term, as extended pursuant to Section 2.2 above, until the Equipment is returned to LESSOR. All rent and other sums payable to LESSOR will be paid to Toyota Motor Credit Corporation at the address set forth below its signature or at such other address as Toyota Motor Credit Corporation may in writing direct from time to time.

the same day of the month of each successive month thereafter during the Initial Term, as extended pursuant to Article 2.2. When the Equipment is returned as provided in Article 2.2, any other sums payable to LESSOR will be paid to Toyota Motor Credit Corporation at the address set forth below its signature or at such other address as Toyota Motor Credit Corporation may in writing direct from time to time.

## 4.   DELIVERY.

When Equipment is delivered to LESSEE, LESSOR will prepare and deliver to LESSEE a Notice of Delivery which will set forth separately for each item the following information: item number, a description of the Equipment, serial number and a delivery date. Although LESSOR will try to deliver the Equipment by the delivery date requested, TIME OF DELIVERY IS NOT OF THE ESSENCE AND LESSOR ASSUMES NO LIABILITY FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR FAILURE TO MAKE DELIVERY ON SUCH DATE. LESSEE or LESSEE'S authorized representative will execute such Notice of Delivery and return it to LESSOR.

## 5.   RETURN OF EQUIPMENT.

5.1   LESSEE will return all of the Equipment at the expiration or earlier termination of the lease term, freight prepaid to a point designated by LESSOR. The designated point will be in no event farther than LESSOR'S place of business. The Equipment will be returned in safe operating condition.

5.2   For the purpose of this Article the phrase "safe operating condition" will mean that the Equipment loaded to its rated capacity: (i) has no missing or broken components or accessories; (ii) starts under its own power and idles; (iii) does not leak oil, water, fuel, or any other fluids; (iv) moves through its normal speed ranges in both forward and reverse; (v) steers normally right and left in both forward and reverse; (vi) is able to stop by means of service brakes in a safe distance in both forward and reverse; (vii) lifts, lowers, and tilts normally and without hydraulic oil leaks; and (viii) its attachments, if so equipped, perform all of their required functions. In addition, to be in safe operating condition Equipment will have: (i) serviceable tires, with some remaining tread and without chunking or flat spots; and (ii) operational horn, parking brake and lights.

5.3   If all of the Equipment is not returned in safe operating condition, LESSOR will bill LESSEE for the amount of LESSOR'S then normal charge to its customers for any repairs necessary to place the Equipment in safe operating condition, regardless of whether LESSOR actually performs such repairs, and LESSEE will pay such bill within 30 days after its receipt thereof.

## 6.   MAINTENANCE, CARE AND INSPECTION.

6.1   LESSEE will keep the Equipment in a covered area when not in use. LESSEE will cause the Equipment to be operated only by competent, fully-trained-in-use employees of LESSEE. LESSEE will also assure that the Equipment is operated with driver's overhead guard and load backrest extension installed. LESSEE agrees to operate the Equipment within its rated capacity and not to alter or modify the Equipment.

If this Agreement is a FULL SERVICE MAINTENANCE AGREEMENT, the following provisions will also apply:

6.2A Obligations of LESSOR - Subject to the performance by LESSEE of its obligations with respect to the Equipment, LESSOR will service and maintain the Equipment in proper working condition. LESSOR agrees to make the Equipment available for servicing by representatives of LESSOR at reasonable times during LESSOR'S business hours. LESSEE will provide, without charge to LESSOR, a suitable area within LESSEE'S premises in order that LESSOR'S agents or employees may service each unit of Equipment and perform such repairs as can reasonably be made without removing the Equipment from LESSEE'S premises. The space will be well lighted, heated and ventilated. Where the number and type of Equipment warrants, LESSEE will provide an adequate, protected storage area and facilities, without charge, in order that LESSOR may maintain an inventory of supplies or parts required in the servicing of the Equipment.

6.3A If any item of Equipment is out of service for needed repairs, due to normal use, LESSOR will promptly after notice by LESSEE arrange to repair such Equipment. If LESSOR deems it impracticable to promptly repair any such item of disabled Equipment, LESSOR will temporarily substitute similar Equipment in good operating condition

each unit at the beginning of each shift; (ii) the making of a routine check of each item at the beginning of each shift; (ii) supplying all necessary fuel (gasoline, electric current or L. P. Gas), replacement oil and water; (iii) where applicable, checking the oil level in the crankcase and water in the cooling system daily and checking the air pressure of pneumatic tires weekly; (iv) where battery-powered Equipment is rented, maintaining the proper level of water in the batteries, and installing devices necessary to effectuate such recharging; and (v) where L. P. Gas Equipment is rented, furnishing and storing L. P. Gas fuel and cylinders and changing such cylinders as required.

If this Agreement is NOT A FULL SERVICE MAINTENANCE AGREEMENT, the following provisions will apply:

6.2B LESSOR will inspect the Equipment periodically during the lease term. LESSOR will furnish to LESSEE a report after each such inspection on the condition of each unit of Equipment and any repair work that may be required.

6.3B LESSEE agrees to perform, at its own cost and expense, according to LESSOR'S manuals for maintenance and operation, all Equipment maintenance, service and repair (including both labor and materials) including, but not limited to:

a. Daily maintenance such as (i) the making of a routine check of each item at the beginning of each shift; (ii) supplying all necessary fuel (gasoline, electric current or L. P. Gas), replacement oil and water; (iii) where applicable, checking the oil level in the crankcase and water in the cooling system daily and checking the air pressure of pneumatic tires weekly; (iv) where battery-powered Equipment is rented, maintaining the proper level of water in the batteries, and installing devices necessary to effectuate such recharging; and (v) where L. P. Gas Equipment is rented, furnishing and storing the L. P. Gas fuel and cylinders and changing such cylinders as required.

b. Preventive maintenance service (per lubrication charts in manual).

c. Repairing, overhauling or adjusting of drive line, drive axle, uprights, steering gear, steering axle, hydraulic system brakes, power steering components, chains; and on gas-powered Equipment, the engine, engine accessories, belts, clutch and transmissions; and on battery-powered Equipment, the electric drive and pump motors, and all other routine repair work required to keep the Equipment in good operating condition.

d. Repairing, overhauling or adjusting of battery and charging Equipment, where battery-powered Equipment is rented.

e. Replacing or repairing of tires.

f. Repairs that may be required as determined by LESSOR during its periodic inspection and report to LESSEE.

6.4B LESSEE will, at its own expense during the term hereof and until the return of the Equipment at the expiration of the lease term, maintain the Equipment in good operating order, repair, and appearance and, in effecting maintenance and repairs, will have such work performed only by qualified persons who are satisfactory to LESSOR. If LESSOR, during any inspection, determines that LESSEE has failed to perform its obligations as set forth above with respect to any item of Equipment, LESSOR will give LESSEE written notice thereof. Unless LESSEE performs such obligations within 30 days from the date of such notice, LESSOR will have the right, but not the obligation, to terminate the lease on such Equipment and/or to perform the maintenance, service and repair required to be performed by LESSEE under this Agreement. If LESSOR performs such maintenance, service or repair, LESSEE will pay LESSOR an amount equal to LESSOR'S then normal charge to its customers for similar services, such payment to be made within thirty (30) days after LESSEE receives LESSOR'S invoice with respect thereto.

## 7.   TAXES.

LESSEE will be responsible for and pay when billed by LESSOR any and all taxes, fees, or assessments, however designated, levied, or based, relating to the Equipment or the lease thereof, or the transfer, use, possession or operation of the Equipment, or any combination of the foregoing; including but not limited to personal property taxes, gross receipts taxes, privilege taxes, excise taxes, license taxes, and sales and use taxes, together with any penalties, fines or interest thereon, and excluding only franchise taxes and taxes measured by the net income of the LESSOR. When personal property taxes are not billed on an item basis by the respective governmental authority, LESSOR will determine the appropriate tax liabilities attributable to the leased Equipment on a reasonable basis. LESSEE will give immediate notice to LESSOR of any

attachment, tax notices ... authorities concerning
taxes, fees, or assessments referred to ł

8. **LIABILITY OF LESSEE.**

LESSEE assumes all risks and liability arising from LESSEE's possession, use and operation of the Equipment from the moment of delivery to LESSEE to the moment of return to LESSOR. Unless directly caused by LESSOR'S sole negligence, LESSEE agrees to indemnify and hold LESSOR harmless from any and all of the following whether the same be actual or alleged: all loss, damage, claims, suits, taxes, liens, penalties, fines, liability and expense (including attorneys' fees) arising in any manner as a result of the breach by LESSEE, any agent, employee or servant of LESSEE, any assignee of LESSEE and any other person using or in possession of the Equipment, of any term of this Agreement, or relating directly or indirectly to the possession, use and operation of the Equipment including, but not limited to injuries or death to persons or damages to or destruction of property, claims and liens for storage, labor and materials and all loss of and damage to the Equipment. Should LESSOR assign any of its rights or delegate any of its obligations under this Agreement, LESSEE agrees that LESSOR, LESSOR'S assignee and the officers, directors, stockholders, employees, agents and representatives of LESSOR'S assignee, will be entitled to the indemnity provided hereunder.

9. **INSURANCE.**

LESSEE will provide and pay for all-risk insurance against physical loss or damage to the Equipment in an amount satisfactory to LESSOR. LESSEE will also provide and pay for public bodily injury and property damage liability insurance against loss caused by or arising from LESSEE'S possession, use or operation of the Equipment. The minimum limits for such liability insurance shall be not less than One Million Dollars combined single limit. LESSEE will furnish LESSOR with certificates of insurance evidencing such coverages and designating both LESSOR and its assigns as additional insureds and loss payees under the policy. Such certificates shall provide for 30 days' prior written notice by registered mail to LESSOR of any cancellation or change reducing coverage. The insurance so provided will be effective during the period from the moment of delivery of each item of Equipment under lease to LESSEE until the moment of return receipt by LESSOR. LESSOR reserves the right, but not the obligation, upon failure of LESSEE to furnish such certificates of insurance or upon receipt of a notice of cancellation or change reducing coverage to make such arrangements for insurance as LESSOR believes necessary. LESSEE will pay for the cost of such insurance upon demand.

10. **THEFT OR DESTRUCTION.**

If any of the Equipment is stolen or disappears or is damaged to the extent that it is impossible to place it back into the same condition as when received (ordinary wear and tear excepted) ("Casualty Occurrence"), LESSEE agrees to reimburse LESSOR immediately for the loss of the Equipment by paying LESSOR an amount equal to the then unpaid balance of aggregate rental for such Equipment plus the estimated fair market value at expiration of the lease. Upon receipt of such payment, LESSOR will assign title to the Equipment to LESSEE and LESSEE'S obligations to pay rent shall cease upon such assignment and this Agreement will terminate.

11. **OWNERSHIP.**

It is expressly understood and agreed that this Agreement is a lease only and LESSEE does not acquire title to any of the Equipment. LESSEE will not cause or allow any liens or mortgages of any kind whatsoever to be placed on the Equipment. LESSEE agrees that it will not take any position on any tax returns or other filings with any taxing authority which is inconsistent with the status of this Agreement as a lease or LESSOR'S status as the owner of the Equipment for income tax purposes. LESSEE will not make any improvements other than ordinary maintenance and repairs to the Equipment without the prior written approval of LESSOR.

12. **DEFAULT.**

Any one or more of the following shall constitute an Event of Default:

12.1 Default by LESSEE in the payment of any installment of rent or any other amount payable to LESSOR hereunder, if such default shall continue for a period of 10 days after the date such payment is due;

12.2 Default by LESSEE in the performance of any other provision of this Agreement, if such default shall continue for a period of 10 days after written notice of such default is given by LESSOR to LESSEE;

12.3 Institution of a proceeding in reorganization, bankruptcy or insolvency by or against LESSEE or its property in any court, which proceeding is not dismissed within a period of 30 days; or,

12.4 LESSEE (i) admits in writing its inability to pay its debts as they become due, (ii) files a petition in bankruptcy or a petition to take advantage of any insolvency act, (iii) makes an assignment for the benefit of creditors, (iv) consents to the appointment of a receiver of itself or of the whole or any substantial part of its property, (v) seeks reorganization or arrangement under the Federal Bankruptcy ...

... not operate as a waiver of any other right o ... y. The failure of LESSOR to exercise or a delay by LESSOR in exercising any right or remedy will not operate as a waiver of such right or any other right.

14. **LATE CHARGE.**

If a payment due hereunder is received by LESSOR more than 10 days after its scheduled due date, LESSOR shall pay a late charge equal to 5% of the unpaid amount of the late payment, but only once for each such late payment.

15. **WARRANTY SERVICE.**

LESSOR will deliver to LESSEE the factory limited warranty for the Equipment to enable LESSEE to obtain customary warranty service furnished on the Equipment. Other than delivering said factory warranty, there are no representations, promises, statements or warranties, express or implied, unless endorsed hereon in writing, and, THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL LESSOR BE RESPONSIBLE FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM THE EQUIPMENT OR LESSEE'S USE THEREOF.

16. **ASSIGNMENT.**

16.1 LESSEE will not assign, mortgage or encumber this Agreement or any Equipment leased hereunder, nor sublet or suffer or permit the Equipment to be used by others without the prior written consent of LESSOR. As to any assignment consented to by LESSOR (i) the term of such assignment will not extend beyond the final day of the term of this Agreement and (ii) the rights of the assignee will be expressly subject and subordinate to all of the terms of this Agreement. It is expressly recognized and acknowledged that LESSEE will remain liable as a principal hereunder and will be bound by and subject to all the terms and conditions hereof notwithstanding any express consent by LESSOR to any such assignment.

16.2 LESSOR will have the right to assign any or all its rights and obligations of LESSOR at any time without the consent of LESSEE and LESSEE agrees to recognize any such assignment and waives notice thereof. LESSOR intends to assign this agreement to Toyota Motor Credit Corporation.

17. **SECURITY DEPOSIT.**

LESSOR may use the Security Deposit to pay all amounts due under this Agreement. If LESSEE performs all of the obligations required to be performed by LESSEE under this Agreement, the Security Deposit will be returned to LESSEE at the end of the term of this Agreement.

18. **REPRESENTATIONS AND WARRANTIES.**

18.1 LESSEE represents and warrants to LESSOR that the information relayed to LESSOR for inclusion in the Survey Report is a true and accurate statement of the facts and circumstances of the anticipated use of the Equipment.

18.2 LESSEE represents and warrants to LESSOR that the Equipment shall only be used in a LESSEE'S trade or business and that in no event for other than a lawful purpose and in compliance with all laws. LESSEE agrees to maintain in unobliterated condition any identification numbers, labels, tags and other markings used to identify the Equipment as LESSOR'S property. LESSEE will comply with all laws and regulations relating to the possession, use and maintenance of the Equipment.

19. **NOTICES.**

All notices pursuant to this Agreement shall be in writing and shall be deemed made when mailed by registered or certified mail, return receipt requested, to LESSEE or LESSOR at their respective addresses set forth on the reverse side of this Agreement or at such other address furnished by either party to the other.

20. **GOVERNING LAW.**

This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of California and contains the entire agreement of the parties.

21. **FURTHER ASSURANCES.**

From time to time each party will execute and deliver such further instruments and will take such other action as any other party reasonably may request in order to discharge and perform their respective obligations and agreements hereunder.

22. **DELAYS.**

LESSOR will not incur any liability to LESSEE for any obligations, if prevented by wars, fires, strikes or other labor disputes, accidents, acts of God, governmental regulations or interference, shortages of labor or materials, delays in transportation, non-availability of same from the man...

12.4 LESSEE (i) admits in writing its inability to pay its debts as they become due, (ii) makes a general assignment for the benefit of creditors, (iii) consents to the appointment of a receiver of itself or of the whole or any substantial part of its property, (iv) seeks reorganization or arrangement under the Federal Bankruptcy Laws;

12.5 Any material misrepresentation of fact, circumstance or warranty by LESSEE.

## 13. REMEDIES.

13.1 If an Event of Default occurs, LESSOR MAY, at its option, exercise any one or more of the following remedies:

a. Proceed by appropriate court action or actions, either at law or in equity, to enforce performance by LESSEE of the applicable covenants and terms of this Agreement or to recover damages for the breach of such covenants and terms;

b. By notice in writing to LESSEE, terminate this Agreement as to all or any of the Equipment rented hereunder, whereupon all right and interest of LESSEE to or in the use of said Equipment will cease. In such event, LESSEE will deliver the Equipment to the place specified in Article 5.1 hereof, or such other place as may be designated by LESSEE, without relieving LESSEE of its other obligations under this Agreement. LESSOR may, directly or by its agents, enter upon the premises of LESSEE without demand or notice, or other premises where any of the said Equipment may be or is reasonably believed to be without demand or notice, and take possession thereof;

c. Sell any of the Equipment at public or private sale, as LESSOR may determine, free and clear of any rights of LESSEE and without any duty to account to LESSEE with respect to such sale or for the proceeds thereof; or

d. Hold, keep idle or lease to others any of the Equipment, as LESSOR in its sole discretion may determine, free and clear of any rights of LESSEE and without any duty to account to LESSEE with respect to such action or for any proceeds with respect thereto.

13.2 In an Event of Default LESSOR shall have the right to retain all prior rental payments and any security deposit made hereunder, and to recover from LESSEE any and all amounts including rents which, under the terms of this Agreement may be then due and be unpaid hereunder as compensation for the use of said Equipment, plus a reasonable sum for attorney's fees and such expenses as shall be expended or incurred in the seizure of said Equipment or in the enforcement of any right hereunder.

13.3 The remedies provided by this Agreement in favor of LESSOR will not be deemed exclusive, but will be cumulative and will be in addition to all other remedies in LESSOR'S favor existing at law or in equity. LESSEE hereby waives any and all rights of setoff. The exercise of

... and agreements hereunder.

## 22. DELAYS.

LESSOR will not incur any liability to LESSEE for any obligations, if prevented by wars, fires, strikes or other labor disputes, accidents, acts of God, governmental regulations or interference, shortages of labor or materials, delays in transportation, non-availability of same from the manufacturer, or other causes beyond LESSOR'S control. IN NO EVENT WILL LESSOR BE LIABLE FOR SPECIAL OR CONSEQUENTIAL DAMAGES.

## 23. SEVERABILITY AND WAIVER.

Any provision of this Agreement prohibited by applicable law will be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof. The failure of either party to require strict performance of any provision will not diminish that party's right thereafter to require strict performance of any provision.

## 24. PRIOR AGREEMENT.

This Agreement shall not be effective until reviewed and accepted by Toyota Motor Credit Corporation. LESSEE shall not take delivery of the Equipment until such time.

## 25. SUCCESSORS AND ASSIGNS.

This Agreement shall be binding on, and will inure to the benefit of, the parties hereto and their respective permitted successors and assigns.

## 26. DEPRECIATION.

If, as to any Equipment, under any circumstances and for any reason whatsoever (and regardless of whether such Equipment is public utility property as defined in the Internal Revenue Code), LESSOR shall lose, or shall not have the right to claim, or there shall be disallowed or recaptured (collectively, a "Loss") any portion of the claimed depreciation deductions for such Equipment, based on the capitalized cost thereof, LESSEE agrees to pay LESSOR upon demand, an amount which will be equal to the sum of an amount which, in the reasonable opinion of LESSOR, shall cause LESSOR'S net yield to equal the net yield that LESSOR would have received if LESSOR had not suffered the Loss with respect to claimed depreciation deductions and the amount of any interest, addition to tax, and/or penalty which may be assessed by any taxing authority in connection with the Loss of the depreciation deductions.

## 27. SURVIVAL OF COVENANTS, REPRESENTATIONS AND WARRANTIES.

The covenants, representations, warranties and indemnities of LESSEE set forth in this Agreement shall survive the termination of this Agreement.

## 28. AMENDMENTS OR MODIFICATIONS.

Any amendment or modification to this Agreement must be in writing and signed by all parties.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed as of the day and year first above written.

LESSEE: INDOPCO, INC. DBA Crosfield Catalysts

By: _Gland Hoeppner_

Title: _Purchasing Manager_

**Assignment of Lease Agreement:**

The authorized signature of the LESSOR below has the effect of:

1. Accepting the terms and conditions of this Agreement; and
2. Assigning to Toyota Motor Credit Corporation all of LESSOR'S right, title and interest in and to the leased Equipment and this Agreement, including all amounts to become due under it.

**Acceptance of Assignment of Lease Agreement:**

TOYOTA MOTOR CREDIT CORPORATION

By: _____

Title: __CB__

Address: 1515 West 190th Street, P.O. Box 2958
Torrance, California 90509-2958

LESSOR: _FIRST ACCESS_

By: _CR Wilson_

Title: _TREAS_

EXHIBIT "A"

## ADDENDUM TO LEASE AGREEMENT

This Addendum to Lease Agreement is incorporated into and made a part of that certain Lease Agreement (Equipment) dated as of February 28, 1997 (the "Lease"), by and between **INDOPCO, INC., DBA Crosfield Catalysts** as LESSEE ("Lessee"), and FIRST ACCESS as Dealer/LESSOR ("Lessor").  The following provisions are added to the terms of the Lease:

<u>1.0</u>
The rental rates in this Agreement are predicated on the LESSEE assuming all responsibility for tire and light replacement and repairs.  If tire and light replacement or repair is needed during the term of the Agreement, they will be furnished by the LESSOR at the cost and expense of the LESSEE.

In WITNESS WHEREOF, the undersigned have executed this Addendum to Lease as of the date first set forth in the Lease.

LESSEE:
INDOPCO, INC., DBA Crosfield Catalysts

LESSOR:
FIRST ACCESS

By: _____

By: _____

Title: _____

Title: _____

BV/INDOPCO2.EXA

EXHIBIT "B"

## ADDENDUM TO LEASE AGREEMENT

This Addendum to Lease Agreement is incorporated into and made a part of that certain Lease Agreement (Equipment) dated as of February 28, 1997 (the "Lease"), by and between INDOPCO, INC., DBA Crosfield Catalysts as Lessee ("Lessee"), and First Access as Dealer/Lessor ("Lessor"). The following provisions are added to the terms of the Lease:

As further consideration for this Rental Agreement, and in addition to the rental charges set forth in Paragraph 1, LESSEE agrees to assign, convey and transfer to LESSOR all its right, title and interest in and to the following described property, complete with all accessories and equipment thereunto appertaining, which said property LESSEE represents and warrants to be free and clear of all liens and encumbrances:

| MANUFACTURER | MODEL | SERIAL NUMBER |
|---|---|---|
| Datsun | CPF02A25V | CPF02001855 |

LESSEE agrees to deliver the above property to LESSOR on or before the date of delivery of the equipment covered by this Rental Agreement and to execute such documents as LESSOR may deem necessary to accomplish the abovementioned conveyance and transfer.

IN WITNESS WHEREOF, the undersigned have executed this Addendum to Lease as of the date first set forth in the Lease.

LESSEE:                                LESSOR:

INDOPCO, INC.
DBA Crosfield Catalysts                FIRST ACCESS

By: _____         By: _____

Title: _____         Title: _____

BV/INDOPCO2.EXB

EXHIBIT "C"

# TOYOTA MOTOR CREDIT CORPORATION

**TOYOTA MOTOR CREDIT CORPORATION**

LEASE NO. _____

PURCHASE ORDER NO. C997096 **LEASE AGREEMENT** (EQUIPMENT)

(TMCC USE)

LEASE DATE: 4/6/99

| LESSEE - NAME AND ADDRESS OF PRINCIPAL OFFICE: | DEALER / LESSOR - NAME AND BUSINESS ADDRESS: |
|---|---|
| INDOPCO INC. DBA CROSFIELD CATALYSTS | FIRST ACCESS |
| 4099 W. 71ST STREET | 6400 W. 73RD STREET |
| CHICAGO, IL 60629 | BEDFORD PARK, IL 60638 |
| ☐ Individual ☐ Partnership ☒ Corporation ☐ Other | |
| ADDRESS OF LOCATION OF EQUIPMENT: | RECEIVED JUN 08 1999 EQUIPMENT LEASE AND FINANCE |
| SAME AS ABOVE | |

RECEIVED JUL 21 1999

Insurance Company or Agent: _____ WILLIS COROON

Address: _____ 7 HANOVER SQUARE, NEW YORK, NY 10004-2594    Phone No. (212) 344-8888

This Agreement ☒ is ☐ is not a FULL SERVICE MAINTENANCE AGREEMENT.

The following Exhibits, if any, are attached hereto and incorporated herein by this reference:
Exhibit "A" ____ MAINTENANCE PROVISION ____   Exhibit "B" ____ TRADE-IN PROVISION

**1.  LEASE OF EQUIPMENT.**      Exhibit "C" ____ PURCHASE OPTION

Subject to the terms and conditions of this Lease Agreement ("Agreement"), LESSOR hereby rents to LESSEE and LESSEE hereby rents from LESSOR, the following material handling vehicles complete with all additions, attachments and accessories and all other material handling vehicles described on a Notice of Delivery ("Notice of Delivery") executed by LESSOR and LESSEE from time to time in the form of Supplement No.1 attached hereto and incorporated herein by this reference (collectively referred to as the "Equipment"):

| ITEM NO. | QUANTITY | DESCRIPTION / SERIAL NO. | MONTHLY RENTAL PER ITEM | INITIAL TERM | SECURITY DEPOSIT | HOURLY OVERTIME RATE PER ITEM |
|---|---|---|---|---|---|---|
| 1 | ONE (1) | NEW TOYOTA 42-6FGCU30, 171" FSV, 42" FORKS, LPG, SIDESHIFTER, SERIAL NO. 60938 | $324.00 PLUS FREIGHT AND APPLICABLE TAXES | 60 MOS. | N/A | |
| 2 | ONE (1) | MAINTENANCE | $86.00 | | | $1.59 |
| | | Overtime charge to offset additional maintenance exposure due to excessive hourly usage. | | | | |

All Equipment rented hereunder is rented f.o.b. at LESSOR's address set forth above and will be used by LESSEE in LESSEE's operation at the address set forth above and as described in a Survey Report executed by LESSOR and LESSEE (the "Survey Report"). LESSEE shall not remove any of the Equipment to any other place without LESSOR's prior written consent.

Where battery powered Equipment is rented, any additional batteries and chargers other than those provided above and included in the monthly rental per item shall be rented at the additional sole cost and expense of LESSEE.

The rentals shown above have been calculated on the basis of information supplied by LESSEE and data developed by LESSOR as set forth in the Survey Report.

If an hourly overtime rate is shown above, the hourly overtime rate will apply to each hour of use of any Equipment in excess of __500__ hours in any calendar YEAR**quarter** as determined by the hour meter or other mechanical device used to record hours of use supplied with the Equipment ("hour meter"). Readings of the hour meter will be taken and billed by LESSOR ~~quarterly~~. If any hour meter on any Equipment fails to function, thereby rendering an hour meter reading unavailable for such Equipment, the hours of use will be ascertained by computing the average number of hours per month that the Equipment was used during the previous 3 months of recorded usage (or in case such previous period of recorded use shall be less than 3 months, then during such lesser period) and multiplying the monthly average so computed by the number of months, or fractions thereof, during which said hour meter on such Equipment shall have failed to function. LESSEE agrees to pay said overtime rental charges within 10 days from the date of LESSOR'S invoice for such charges.

**\*\*ANNUALLY**

**2.  TERM AND RENEWAL.**

2.1  The original term of rental of the Equipment will commence with the delivery thereof and, unless sooner terminated as provided herein, will continue for the number of months set forth above under "Initial Term" (the "Initial Term").

2.2  The Initial Term will be extended automatically from month to month after the expiration thereof unless either of the parties gives notice to the other of an intention to terminate such rental at least 60 days prior to the expiration of the Initial Term, or at least 10 days prior to the expiration of any extended term.

**3.  RENT.**

LESSEE will pay the monthly rental stated in Article 1 with respect to each item of Equipment commencing on the day of delivery and continuing on the same day of the month of each successive month thereafter during

until the rented Equipment is put into proper operating condition. The substituted Equipment will be as nearly practicable of the same capacity and general specifications as the rented Equipment; provided, that LESSOR will not be required to provide specialized attachments or accessories, or to make special alterations to the substituted Equipment. Such substituted Equipment will, while in the service of LESSEE, be subject to the terms and conditions and the payment of rentals and charges in this Agreement.

6.4A  Obligations of LESSEE - LESSEE, at its own cost and expense, will be responsible for the normal needs required for the Equipment in its daily operation, including; (i) the making of a routine check of each unit at the beginning of each shift; (ii) supplying all necessary

(the initial term, as extended pursuant to Section 2.2 above, until the Equipment is returned to LESSOR, all rent and other sums payable to LESSOR will be paid to LESSOR at such address as may be set forth below its signature or at such ... address as Toyota Motor Credit Corporation may in writing direct from time to time.

4. **DELIVERY.**
When Equipment is delivered to LESSEE, LESSOR will prepare and deliver to LESSEE a Notice of Delivery which will set forth separately for each item the following information: item number, a description of the Equipment, serial number and a delivery date. Although LESSOR will try to deliver the Equipment by the delivery date requested, TIME OF DELIVERY IS *NOT* OF THE ESSENCE AND LESSOR ASSUMES NO LIABILITY FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR FAILURE TO MAKE DELIVERY ON SUCH DATE. LESSEE or LESSEE'S authorized representative will execute such Notice of Delivery and return it to LESSOR.

5. **RETURN OF EQUIPMENT.**
5.1 LESSEE will return all of the Equipment at the expiration or earlier termination of the lease term, freight prepaid to a point designated by LESSOR. The designated point will be in no event farther than LESSOR'S place of business. The Equipment will be returned in safe operating condition.

5.2 For the purpose of this Article the phrase "safe operating condition" will mean that the Equipment loaded to its rated capacity: (i) has no missing or broken components or accessories; (ii) starts under its own power and idles; (iii) does not leak oil, water, fuel, or any other fluids; (iv) moves through its normal speed ranges in both forward and reverse; (v) steers normally right and left in both forward and reverse; (vi) is able to stop by means of service brakes in a safe distance in both forward and reverse; (vii) lifts, lowers, and tilts normally and without hydraulic oil leaks; and (viii) its attachments, if so equipped, perform all of their required functions. In addition, to be in safe operating condition Equipment will have: (i) serviceable tires, with some remaining tread and without chunking or flat spots; and (ii) operational horn, parking brake and lights.

5.3 If all of the Equipment is not returned in safe operating condition, LESSOR will bill LESSEE for the amount of LESSOR'S then normal charge to its customers for any repairs necessary to place the Equipment in safe operating condition, regardless of whether LESSOR actually performs such repairs, and LESSEE will pay such bill within 30 days after its receipt thereof.

6. **MAINTENANCE, CARE AND INSPECTION.**
6.1 LESSEE will keep the Equipment in a covered area when not in use. LESSEE will cause the Equipment to be operated only by competent, fully-trained-in-use employees of LESSEE. LESSEE will also assure that the Equipment is operated with driver's overhead guard and load backrest extension installed. LESSEE agrees to operate the Equipment within its rated capacity and not to alter or modify the Equipment.

If this Agreement is a FULL SERVICE MAINTENANCE AGREEMENT, the following provisions will also apply:

6.2A Obligations of LESSOR - Subject to the performance by LESSEE of its obligations with respect to the Equipment, LESSOR will service and maintain the Equipment in proper working condition. LESSEE agrees to make the Equipment available for servicing by representatives of LESSOR at reasonable times during LESSOR'S business hours. LESSEE will provide, without charge to LESSOR, a suitable area within LESSEE'S premises in order that LESSOR'S agents or employees may service each unit of Equipment and perform such repairs as can reasonably be made without removing the Equipment from LESSEE'S premises. The space will be well lighted, heated and ventilated. Where the number and type of Equipment warrants, LESSEE will provide an adequate, protected storage area and facilities, without charge, in order that LESSOR may maintain an inventory of supplies or parts required in the servicing of the Equipment.

6.3A If any item of Equipment is out of service for needed repairs, due to normal use, LESSOR will promptly after notice by LESSEE arrange to repair such Equipment. If LESSOR deems it impracticable to promptly repair any such item of disabled Equipment, LESSOR will temporarily substitute similar Equipment in good operating condition

fuel (gasoline, electric current or L. P. Gas), replacement oil and water; (iii) where applicable, checking the oil level in the crankcase and water in the cooling system daily and checking the air pressure of pneum... ..s weekly; (iv) where battery-powered Equipment is rented, maintaining the proper level of water in the batteries, and installing devices necessary to effectuate such recharging; and (v) where L. P. Gas Equipment is rented, furnishing and storing L. P. Gas fuel and cylinders and changing such cylinders as required.

If this Agreement is NOT A FULL SERVICE MAINTENANCE AGREEMENT, the following provisions will apply:

6.2B LESSOR will inspect the Equipment periodically during the lease term. LESSOR will furnish to LESSEE a report after each such inspection on the condition of each unit of Equipment and any repair work that may be required.

6.3B LESSEE agrees to perform, at its own cost and expense, according to LESSOR'S manuals for maintenance and operation, all Equipment maintenance, service and repair (including both labor and materials) including, but not limited to:
a. Daily maintenance such as (i) the making of a routine check of each item at the beginning of each shift; (ii) supplying all necessary fuel (gasoline, electric current or L. P. Gas), replacement oil and water; (iii) where applicable, checking the oil level in the crankcase and water in the cooling system daily and checking the air pressure of pneumatic tires weekly; (iv) where battery-powered Equipment is rented, maintaining the proper level of water in the batteries, and installing devices necessary to effectuate such recharging; and (v) where L. P. Gas Equipment is rented, furnishing and storing the L. P. Gas fuel and cylinders and changing such cylinders as required.
b. Preventive maintenance service (per lubrication charts in manual).
c. Repairing, overhauling or adjusting of drive line, drive axle, up-rights, steering gear, steering axle, hydraulic system brakes, power steering components, chains; and on gas-powered Equipment, the engine, engine accessories, belts, clutch and transmissions; and on battery-powered Equipment, the electric drive and pump motors, and all other routine repair work required to keep the Equipment in good operating condition.
d. Repairing, overhauling or adjusting of battery and charging Equipment, where battery-powered Equipment is rented.
e. Replacing or repairing of tires.
f. Repairs that may be required as determined by LESSOR during its periodic inspection and report to LESSOR.

6.4B LESSEE will, at its own expense during the term hereof and until the return of the Equipment at the expiration of the lease term, maintain the Equipment in good operating order, repair, and appearance and, in effecting maintenance and repairs, will have such work performed only by qualified persons who are satisfactory to LESSOR. If LESSOR, during any inspection, determines that LESSEE has failed to perform its obligations as set forth above with respect to any item of Equipment, LESSOR will give LESSEE written notice thereof. Unless LESSEE performs such obligations within 30 days from the date of such notice, LESSOR will have the right, but not the obligation, to terminate the lease on such Equipment and/or to perform the maintenance, service and repair required to be performed by LESSEE under this Agreement. If LESSOR performs such maintenance, service or repair, LESSEE will pay LESSOR an amount equal to LESSOR'S then normal charge to its customers for similar services, such payment to be made within thirty (30) days after LESSEE receives LESSOR'S invoice with respect thereto.

7. **TAXES.**
LESSEE will be responsible for and pay when billed by LESSOR any and all taxes, fees, or assessments, however designated, levied, or based, relating to the Equipment or the lease thereof, or the transfer, use, possession or operation of the Equipment, or any combination of the foregoing; including but not limited to personal property taxes, gross receipts taxes, privilege taxes, excise taxes, license taxes, and sales and use taxes, together with any penalties, fines or interest thereon, and excluding only franchise taxes and taxes measured by the net income of the LESSOR. When personal property taxes are not billed on an item basis by the respective governmental authority, LESSOR will determine the appropriate tax liabilities attributable to the leased Equipment on a reasonable basis. LESSEE will give immediate notice to LESSOR of any

# ADDITIONAL TERMS AND CONDITIONS

attachment, tax notice, or inquiries from taxing authorities concerning taxes, fees, or assessments referred to herein.

## 8. LIABILITY OF LESSEE.

LESSEE assumes all risks and liability arising from LESSEE's possession, use and operation of the Equipment from the moment of delivery to LESSEE to the moment of return to LESSOR. Unless directly caused by LESSOR'S sole negligence, LESSEE agrees to indemnify and hold LESSOR harmless from any and all of the following whether the same be actual or alleged: all loss, damage, claims, suits, taxes, liens, penalties, fines, liability and expense (including attorneys' fees) arising in any manner as a result of the breach by LESSEE, any agent, employee or servant of LESSEE, any assignee of LESSEE and any other person using or in possession of the Equipment, of any term of this Agreement, or relating directly or indirectly to the possession, use and operation of the Equipment including, but not limited to injuries or death to persons or damages to or destruction of property, claims and liens for storage, labor and materials and all loss of and damage to the Equipment. Should LESSOR assign any of its rights or delegate any of its obligations under this Agreement, LESSEE agrees that LESSOR, LESSOR'S assignee and the officers, directors, stockholders, employees, agents and representatives of LESSOR'S assignee, will be entitled to the indemnity provided hereunder.

## 9. INSURANCE.

LESSEE will provide and pay for all-risk insurance against physical loss or damage to the Equipment in an amount satisfactory to LESSOR. LESSEE will also provide and pay for public bodily injury and property damage liability insurance against loss caused by or arising from LESSEE'S possession, use or operation of the Equipment. The minimum limits for such liability insurance shall be not less than One Million Dollars combined single limit. LESSEE will furnish LESSOR with certificates of insurance evidencing such coverages and designating both LESSOR and its assigns as additional insureds and loss payees under the policy. Such certificates shall provide for 30 days' prior written notice by registered mail to LESSOR of any cancellation or change reducing coverage. The insurance so provided will be effective during the period from the moment of delivery of each item of Equipment under lease to LESSEE until the moment of return receipt by LESSOR. LESSOR reserves the right, but not the obligation, upon failure of LESSEE to furnish such certificates of insurance or upon receipt of a notice of cancellation or change reducing coverage to make such arrangements for insurance as LESSOR believes necessary. LESSEE will pay for the cost of such insurance upon demand.

## 10. THEFT OR DESTRUCTION.

If any of the Equipment is stolen or disappears or is damaged to the extent that it is impossible to place it back into the same condition as when received (ordinary wear and tear excepted) ("Casualty Occurrence"), LESSEE agrees to reimburse LESSOR immediately for the loss of the Equipment by paying LESSOR an amount equal to the then unpaid balance of aggregate rental for such Equipment plus the estimated fair market value at expiration of the lease. Upon receipt of such payment, LESSOR will assign title to the Equipment to LESSEE and LESSEE'S obligations to pay rent shall cease upon such assignment and this Agreement will terminate.

## 11. OWNERSHIP.

It is expressly understood and agreed that this Agreement is a lease only and LESSEE does not acquire title to any of the Equipment. LESSEE will not cause or allow any liens or mortgages of any kind whatsoever to be placed on the Equipment. LESSEE agrees that it will not take any position on any tax returns or other filings with any taxing authority which is inconsistent with the status of this Agreement as a lease or LESSOR'S status as the owner of the Equipment for income tax purposes. LESSEE will not make any improvements other than ordinary maintenance and repairs to the Equipment without the prior written approval of LESSOR.

## 12. DEFAULT.

Any one or more of the following shall constitute an Event of Default:

12.1 Default by LESSEE in the payment of any installment of rent or any other amount payable to LESSOR hereunder, if such default shall continue for a period of 10 days after the date such payment is due;

12.2 Default by LESSEE in the performance of any other provision of this Agreement, if such default shall continue for a period of 10 days after written notice of such default is given by LESSOR to LESSEE;

12.3 Institution of a proceeding in reorganization, bankruptcy or insolvency by or against LESSEE or its property in any court, which proceeding is not dismissed within a period of 30 days; or,

12.4 LESSEE (i) admits in writing its liability to pay its debts as they

any right or remedy available to LESSOR will operate as a waiver of any other right or remedy. The failure of LESSOR to exercise or a delay by LESSOR in exercising any right or remedy will not operate as a waiver of such right or any other right.

## 14. LATE CHARGE.

If a payment due hereunder is received by LESSOR more than 10 days after its scheduled due date, LESSEE shall pay a late charge equal to 5% of the unpaid amount of the late payment, but only once for each such late payment.

## 15. WARRANTY SERVICE.

LESSOR will deliver to LESSEE the factory limited warranty for the Equipment to enable LESSEE to obtain customary warranty service furnished on the Equipment. Other than delivering said factory warranty, there are no representations, promises, statements or warranties, express or implied, unless endorsed hereon in writing, and THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL LESSOR BE RESPONSIBLE FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM THE EQUIPMENT OR LESSEE'S USE THEREOF.

## 16. ASSIGNMENT.

16.1 LESSEE will not assign, mortgage or encumber this Agreement or any Equipment leased hereunder, nor sublet or suffer or permit the Equipment to be used by others without the prior written consent of LESSOR. As to any assignment consented to by LESSOR (i) the term of such assignment will not extend beyond the final day of the term of this Agreement and (ii) the rights of the assignee will be expressly subject and subordinate to all of the terms of this Agreement. It is expressly recognized and acknowledged that LESSEE will remain liable as a principal hereunder and will be bound by and subject to all the terms and conditions hereof notwithstanding any express consent by LESSOR to any such assignment.

16.2 LESSOR will have the right to assign any or all its rights and obligations of LESSOR at any time without the consent of LESSEE and LESSEE agrees to recognize any such assignment and waives notice thereof. LESSOR intends to assign this agreement to Toyota Motor Credit Corporation.

## 17. SECURITY DEPOSIT.

LESSOR may use the Security Deposit to pay all amounts due under this Agreement. If LESSEE performs all of the obligations required to be performed by LESSEE under this Agreement, the Security Deposit will be returned to LESSEE at the end of the term of this Agreement.

## 18. REPRESENTATIONS AND WARRANTIES.

18.1 LESSEE represents and warrants to LESSOR that the information relayed to LESSOR for inclusion in the Survey Report is a true and accurate statement of the facts and circumstances of the anticipated use of the Equipment.

18.2 LESSEE represents and warrants to LESSOR that the Equipment shall only be used in a LESSEE'S trade or business and that in no event for other than a lawful purpose and in compliance with all laws. LESSEE agrees to maintain in unobliterated condition any identification numbers, labels, tags and other markings used to identify the Equipment as LESSOR'S property. LESSEE will comply with all laws and regulations relating to the possession, use and maintenance of the Equipment.

## 19. NOTICES.

All notices pursuant to this Agreement shall be in writing and shall be deemed made when mailed by registered or certified mail, return receipt requested, to LESSEE or LESSOR at their respective addresses set forth on the reverse side of this Agreement or at such other address furnished by either party to the other.

## 20. GOVERNING LAW.

This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of California and contains the entire agreement of the parties.

## 21. FURTHER ASSURANCES.

From time to time each party will execute and deliver such further instruments and will take such other action as any other party reasonably may request in order to discharge and perform their respective obligations and agreements hereunder.

become due, (ii) files a petition in ba... uptcy or a petition to take advantage of any insolvency act, (iii) makes an assignment for the benefit of creditors, (iv) consents to the appointment of a receiver of itself or of the whole or any substantial part of its property, (v) seeks reorganization or arrangement under the Federal Bankruptcy Laws;

12.5 Any material misrepresentation of fact, circumstance or warranty by LESSEE.

## 13. REMEDIES.

13.1 If an Event of Default occurs, LESSOR MAY, at its option, exercise any one or more of the following remedies:

a. Proceed by appropriate court action or actions, either at law or in equity, to enforce performance by LESSEE of the applicable covenants and terms of this Agreement or to recover damages for the breach of such covenants and terms;

b. By notice in writing to LESSEE, terminate this Agreement as to all or any of the Equipment rented hereunder, whereupon all right and interest of LESSEE to or in the use of said Equipment will cease. In such event, LESSEE will deliver the Equipment to the place specified in Article 5.1 hereof, or such other place as may be designated by LESSOR, without relieving LESSEE of its other obligations under this Agreement. LESSOR may, directly or by its agents, enter upon the premises of LESSEE without demand or notice, or other premises where any of the said Equipment may be or is reasonably believed to be without demand or notice, and take possession thereof;

c. Sell any of the Equipment at public or private sale, as LESSOR may determine, free and clear of any rights of LESSEE and without any duty to account to LESSEE with respect to such sale or for the proceeds thereof; or

d. Hold, keep idle or lease to others any of the Equipment, as LESSOR in its sole discretion may determine, free and clear of any rights of LESSEE and without any duty to account to LESSEE with respect to such action or for any proceeds with respect thereto.

13.2 In an Event of Default LESSOR shall have the right to retain all prior rental payments and any security deposit made hereunder, and to recover from LESSEE any and all amounts including rents which, under the terms of this Agreement may be then due and be unpaid hereunder as compensation for the use of said Equipment, plus a reasonable sum for attorney's fees and such expenses as shall be expended or incurred in the seizure of said Equipment or in the enforcement of any of its rights.

13.3 The remedies provided by this Agreement in favor of LESSOR will not be deemed exclusive, but will be cumulative and will be in addition to all other remedies in LESSOR'S favor existing at law or in equity. LESSEE hereby waives any and all rights of setoff. The exercise of

## 22. DELAYS.

LESSOR will not incur any liability to LESSEE for any obligations, if prevented by wars, fires, strikes or other labor disputes, accidents, acts of God, governmental regulations or interference, shortages of labor or materials, delays in transportation, non-availability of same from the manufacturer, or other causes beyond LESSOR'S control. IN NO EVENT WILL LESSOR BE LIABLE FOR SPECIAL OR CONSEQUENTIAL DAMAGES.

## 23. SEVERABILITY AND WAIVER.

Any provision of this Agreement prohibited by applicable law will be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof. The failure of either party to require strict performance of any provision will not diminish that party's right thereafter to require strict performance of any provision.

## 24. PRIOR APPROVAL.

This Agreement shall not be effective until reviewed and accepted by Toyota Motor Credit Corporation. LESSEE shall not take delivery of the Equipment until such time.

## 25. SUCCESSORS AND ASSIGNS.

This Agreement shall be binding on, and will inure to the benefit of, the parties hereto and their respective permitted successors and assigns.

## 26. DEPRECIATION.

If, as to any Equipment, under any circumstances and for any reason whatsoever (and regardless of whether such Equipment is public utility property as defined in the Internal Revenue Code), LESSOR shall lose, or shall not have the right to claim, or there shall be disallowed or recaptured (collectively, a "Loss") any portion of the claimed depreciation deductions for such Equipment, based on the capitalized cost thereof, LESSEE agrees to pay LESSOR upon demand, an amount which will be equal to the sum of an amount which, in the reasonable opinion of LESSOR, shall cause LESSOR'S net yield to equal the net yield that LESSOR would have received if LESSOR had not suffered the Loss with respect to claimed depreciation deductions and the amount of any interest, addition to tax, and/or penalty which may be assessed by any taxing authority in connection with the Loss of the depreciation deductions.

## 27. SURVIVAL OF COVENANTS, REPRESENTATIONS AND WARRANTIES.

The covenants, representations, warranties and indemnities of LESSEE set forth in this Agreement shall survive the termination of this Agreement.

## 28. AMENDMENTS OR MODIFICATIONS.

Any amendment or modification to this Agreement must be in writing and signed by all parties.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed as of the day and year first above written.

LESSEE: INDUPCO INC. D&A CROSFIELD CATALYSTS

By: _____

Title: _____

**Assignment of Lease Agreement:**

The authorized signature of the LESSOR below has the effect of:

1. Accepting the terms and conditions of this Agreement; and

2. Assigning to Toyota Motor Credit Corporation all of LESSOR'S right, title and interest in and to the leased Equipment and this Agreement, including all amounts to become due under it.

LESSOR: FIRST ACCESS

By: _____

Title: _____

**Acceptance of Assignment of Lease Agreement:**

**TOYOTA MOTOR CREDIT CORPORATION**

By: _____

Title: _____

Address: 1515 West 190th Street, P.O. Box 2958
Torrance, California 90509-2958

EXHIBIT "A"

## ADDENDUM TO LEASE AGREEMENT

This addendum to Lease Agreement is incorporated into and made a part of that certain Lease Agreement (Equipment) dated as of April 6, 1999 (the "Lease"), by and between **INDOPCO INC. DBA CROSFIELD CATALYSTS** as LESSEE ("Lessee"), and **FIRST ACCESS** as Dealer/LESSOR ("Lessor"). The following provisions are added to the terms of the Lease:

**1.0**

The rental rates in this Agreement are predicated on the LESSEE assuming all responsibility for tire and light replacement and repairs. If tire and light replacement or repair is needed during the term of the Agreement, they will be furnished by the LESSOR at the cost and expense of the LESSEE.

In WITNESS WHEREOF, the undersigned have executed this Addendum to Lease as of the date first set forth in the Lease.

**LESSEE**                                                **LESSOR**

**INDOPCO INC. DBA CROSFIELD CATALYSTS**       **First Access**

By: _____                      By: _____

Title: _____                    Title: _TREAS._____

File: BV 999622 EXA

EXHIBIT "B"

## ADDENDUM TO LEASE AGREEMENT

This addendum to Lease Agreement is incorporated into and made a part of that certain Lease Agreement (Equipment) dated as of April 6, 1999 (the "Lease"), by and between **INDOPCO INC. DBA CROSFIELD CATALYSTS** as LESSEE ("Lessee"), and **FIRST ACCESS** as Dealer/LESSOR ("Lessor").  The following provisions are added to the terms of the Lease:

As further consideration for this Rental Agreement, and in addition to the rental charges set forth in Paragraph 1, LESSEE agrees to assign, convey and transfer to LESSOR all its right, title and interest in and to the following described property, complete with all accessories and equipment thereunto appertaining, which said property LESSEE represents and warrants to be free and clear of all liens and encumbrances:

| MANUFACTURER | MODEL | SERIAL NUMBER |
|---|---|---|
| Hyster | S60XL | A187V042776 |

LESSEE agrees to deliver the above property to LESSOR on or before the date of delivery of the equipment covered by this Rental Agreement and to execute such documents as LESSOR may deem necessary to accomplish the above-mentioned conveyance and transfer.

In WITNESS WHEREOF, the undersigned have executed this Addendum to Lease as of the date first set forth in the Lease.

**LESSEE**                                      **LESSOR**

**INDOPCO INC. DBA CROSFIELD CATALYSTS**        **First Access**

By: _____                  By: _____

Title: _____                 Title: _____TREAS._____

File: BV 999622 EXB

EXHIBIT "C"

## ADDENDUM TO LEASE AGREEMENT

This addendum to Lease Agreement is incorporated into and made a part of that certain Lease Agreement (Equipment) dated as of April 6, 1999 (the "Lease"), by and between **INDOPCO INC. DBA CROSFIELD CATALYSTS** as LESSEE ("Lessee"), and **FIRST ACCESS** as Dealer/LESSOR ("Lessor"). The following provisions are added to the terms of the Lease:

29.    **OPTION TO PURCHASE**
Lessor hereby grants to Lessee the option (the "Option") to purchase the Equipment described in the Lease upon termination of the Lease subject to the terms and conditions set forth herein. The Option shall be exercised, if at all, by written notice to Lessor on or before the date that is 60 days prior to the expiration date of the term of the Lease. If Lessee is in material default under any of the terms, covenants and conditions of the Lease at the time that Lessee exercises the Option or any time thereafter, Lessor shall have, in addition to all of Lessor's rights and remedies provided in the Lease, the right to terminate the Option. In the event Lessee exercises the Option within the time period set forth above, Lessee shall deliver to Lessor, upon termination of the Lease and payment in full of all rents and obligations due under the Lease, the amount of SEVEN THOUSAND THREE HUNDRED TWENTY-EIGHT AND NO/100'S Dollars ($7,328.00) for each unit of Equipment purchased by Lessee hereunder, plus applicable sales or use tax. Lessor shall execute and deliver to Lessee all documents necessary to effect transfer of ownership of the Equipment upon such payment by Lessee. **LESSOR MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE CONDITION OF THE EQUIPMENT AS OF THE TERMINATION DATE OF THE LEASE AND LESSEE SHALL PURCHASE THE EQUIPMENT IN ITS "AS-IS" WHERE-IS" CONDITION.** In the event Lessee does not elect to exercise the Option, the Equipment shall be returned to Lessor upon termination of the Lease pursuant to the terms of the Lease.

30.    **USE OF EQUIPMENT**
Lessee hereby warrants and represents that Lessee is not leasing the Equipment for personal, family, household or agricultural purposes.

In WITNESS WHEREOF, the undersigned have executed this Addendum to Lease as of the date first set forth in the Lease.

LESSEE                                                          LESSOR

**INDOPCO INC. DBA CROSFIELD CATALYSTS**          **FIRST ACCESS**

By: _David L. Deerninger_                                By: _K Wilson_

Title: _Purchasing Manager_                              Title: _TREAS._

File: BV 999622 OPT29 EXC

EXHIBIT "D"

JUL 16 2001 10:39 F      C COMML FINANCE    310 9657401 T      5629         P.02/10

# TOYOTA MOTOR CREDIT CORPORATION

LEASE NO. _____
(TMCC USE)

## LEASE AGREEMENT
(EQUIPMENT)

LEASE DATE: _____

| LESSEE - NAME AND ADDRESS OF PRINCIPAL OFFICE: | DEALER / LESSOR - NAME AND BUSINESS ADDRESS: |
|---|---|

LESSEE - NAME AND ADDRESS OF PRINCIPAL OFFICE:

DEALER / LESSOR - NAME AND BUSINESS ADDRESS:

☐ Individual  ☐ Partnership  ☐ Corporation  ☐ Other

ADDRESS OF LOCATION OF EQUIPMENT:

Insurance Company or Agent: _____

Address: _____                                Phone No. (___) ___-__

This Agreement ☐ is  ☑ is not a **FULL SERVICE MAINTENANCE AGREEMENT**.

The following Exhibits, if any, are attached hereto and incorporated herein by this reference:

Exhibit "A" _____                    Exhibit "B" _____

## 1. LEASE OF EQUIPMENT.

Subject to the terms and conditions of this Lease Agreement ("Agreement"), LESSOR hereby rents to LESSEE and LESSEE hereby rents from LESSOR, the following material handling vehicles complete with all additions, attachments and accessories and all other material handling vehicles described on a Notice of Delivery ("Notice of Delivery") executed by LESSOR and LESSEE from time to time in the form of Supplement No.1 attached hereto and incorporated herein by this reference (collectively referred to as the "Equipment"):

| ITEM NO. | QUANTITY | DESCRIPTION / SERIAL NO. | MONTHLY RENTAL PER ITEM | INITIAL TERM | SECURITY DEPOSIT | HOURLY OVERTIME RATE PER ITEM |
|---|---|---|---|---|---|---|
| 1 | ONE NEW TOYOTA M/N 42-6FGCU30 S/N 60243 | 455.75 + TAX IF APPLICABLE | 60 MOS. | N/A | N/A |

All Equipment rented hereunder is rented f.o.b. at LESSOR's address set forth above and will be used by LESSEE in LESSEE's operation at the address set forth above and as described in a Survey Report executed by LESSOR and LESSEE (the "Survey Report"). LESSEE shall not remove any of the Equipment to any other place without LESSOR's prior written consent.

Where battery powered Equipment is rented, any additional batteries and chargers other than those provided above and included in the monthly rental per item shall be rented at the additional sole cost and expense of LESSEE.

The rentals shown above have been calculated on the basis of information supplied by LESSEE and data developed by LESSOR as set forth in the Survey Report.

If an hourly overtime rate is shown above, the hourly overtime rate will apply to each hour of use of any Equipment in excess of _____ hours in any calendar quarter as determined by the hour meter or other mechanical device used to record hours of use supplied with the Equipment ("hour meter"). Readings of the hour meter will be taken and billed by LESSOR quarterly. If any hour meter on any Equipment fails to function, thereby rendering an hour meter reading unavailable for such Equipment, the hours of use will be ascertained by computing the average number of hours per month that the Equipment was used during the previous 3 months of recorded usage (or in case such previous period of recorded use shall be less than 3 months, then during such lesser period) and multiplying the monthly average so computed by the number of months, or fractions thereof, during which said hour meter for such Equipment shall have failed to function. LESSEE agrees to pay said overtime rental charges within 10 days from the date of LESSOR'S invoice for such charges.

## 2. TERM AND RENEWAL.

2.1 The original term of rental of the Equipment will commence with the delivery thereof and, unless sooner terminated as provided herein, will continue for the number of months set forth above under "Initial Term" (the "Initial Term").

2.2 The Initial Term will be extended automatically from month to month after the expiration thereof unless either of the parties gives notice to the other of an intention to terminate such rental at least 60 days prior to the expiration of the Initial Term, or at least 10 days prior to the expiration of any extended term.

## 3. RENT.

LESSEE will pay the monthly rental stated in Article 1 with respect to each item of Equipment commencing on the day of delivery and continuing on the same day of the month of each successive month thereafter during the Initial Term, as extended pursuant to Section 2.2 above, until the Equipment is returned to LESSOR. All rent and other sums payable to LESSOR will be paid to Toyota Motor Credit Corporation at the address set forth below its signature or at such other address as Toyota Motor Credit Corporation may in writing direct from time to time.

until the rented Equipment is put into proper operating condition. The substituted Equipment will be as nearly practicable of the same capacity and general specifications as the rented Equipment; provided, that LESSOR will not be required to provide specialized attachments or accessories, or to make special alterations to the substituted Equipment. Such substituted Equipment will, while in the service of LESSEE, be subject to the terms and conditions and the payment of rentals and charges provided in this Agreement.

6.4A Obligations of LESSEE - LESSEE, at its own cost and expense, will be responsible for the normal needs required for the Equipment in its daily operation, including: (i) the making of a routine check of each unit at the beginning of each shift; (ii) supplying all necessary fuel (gasoline, electric current or L. P. Gas), replacement oil and water; (iii) where applicable, checking the oil level in the crankcase and water in the cooling system daily and checking the air pressure of pneumatic tires weekly; (iv) where battery-powered Equipment is rented, maintaining the proper level of water in the batteries, and

item of Equipment commencing on the day of delivery and continuing on the same day of the month of each successive month thereafter during the Initial Term, as extended pursuant to Section 2.2 above, until the Equipment is returned to LESSOR. All rent and other sums payable to LESSOR will be paid to Toyota Motor Credit Corporation at the address set forth below its signature or at such other address as Toyota Motor Credit Corporation may in writing direct from time to time.

**4.    DELIVERY.**

When Equipment is delivered to LESSEE, LESSOR will prepare and deliver to LESSEE a Notice of Delivery which will set forth separately for each item the following information: item number, a description of the Equipment, serial number and a delivery date. Although LESSOR will try to deliver the Equipment by the delivery date requested, TIME OF DELIVERY IS NOT OF THE ESSENCE AND LESSOR ASSUMES NO LIABILITY FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR FAILURE TO MAKE DELIVERY ON SUCH DATE. LESSEE or LESSEE'S authorized representative will execute such Notice of Delivery and return it to LESSOR.

**5.    RETURN OF EQUIPMENT.**

5.1    LESSEE will return all of the Equipment at the expiration or earlier termination of the lease term, freight prepaid to a point designated by LESSOR. The designated point will be in no event farther than LESSOR'S place of business. The Equipment will be returned in safe operating condition.

5.2    For the purpose of this Article the phrase "safe operating condition" will mean that the Equipment loaded to its rated capacity: (i) has no missing or broken components or accessories; (ii) starts under its own power and idles; (iii) does not leak oil, water, fuel, or any other fluids; (iv) moves through its normal speed ranges in both forward and reverse; (v) steers normally right and left in both forward and reverse; (vi) is able to stop by means of service brakes in a safe distance in both forward and reverse; (vii) lifts, lowers, and tilts normally and without hydraulic oil leaks; and (viii) its attachments, if so equipped, perform all of their required functions. In addition, to be in safe operating condition Equipment will have: (i) serviceable tires, with some remaining tread and without chunking or flat spots; and (ii) operational horn, parking brake and lights.

5.3    If all of the Equipment is not returned in safe operating condition, LESSOR will bill LESSEE for the amount of LESSOR'S then normal charge to its customers for any repairs necessary to place the Equipment in safe operating condition, regardless of whether LESSOR actually performs such repairs, and LESSEE will pay such bill within 30 days after its receipt thereof.

**6.    MAINTENANCE, CARE AND INSPECTION.**

6.1    LESSEE will keep the Equipment in a covered area when not in use. LESSEE will cause the Equipment to be operated only by competent, fully-trained-in-use employees of LESSEE. LESSEE will also assure that the Equipment is operated with driver's overhead guard and load backrest extension installed. LESSEE agrees to operate the Equipment within its rated capacity and not to alter or modify the Equipment.

If this Agreement is a **FULL SERVICE MAINTENANCE AGREEMENT**, the following provisions will also apply:

6.2A    Obligations of LESSOR - Subject to the performance by LESSEE of its obligations with respect to the Equipment, LESSOR will service and maintain the Equipment in proper working condition. LESSEE agrees to make the Equipment available for servicing by representatives of LESSOR at reasonable times during LESSOR'S business hours. LESSEE will provide, without charge to LESSOR, a suitable area within LESSEE'S premises in order that LESSOR'S agents or employees may service each unit of Equipment and perform such repairs as can reasonably be made without removing the Equipment from LESSEE'S premises. The space will be well lighted, heated and ventilated. Where the number and type of Equipment warrants, LESSEE will provide an adequate, protected storage area and facilities, without charge. In order that LESSOR may maintain an inventory of supplies or parts required in the servicing of the Equipment.

6.3A    If any item of Equipment is out of service for needed repairs, due to normal use, LESSOR will promptly after notice by LESSEE arrange to repair such Equipment. If LESSOR deems it impracticable to promptly repair any such item of disabled Equipment, LESSOR will temporarily substitute similar Equipment in good operating condition

its daily operation, including: (i) the making of a routine check of each unit at the beginning of each shift; (ii) supplying all necessary fuel (gasoline, electric current or L. P. Gas), replacement oil and water; (iii) where applicable, checking the oil level in the crankcase and water in the cooling system daily and checking the air pressure of pneumatic tires weekly; (iv) where battery-powered Equipment is rented, maintaining the proper level of water in the batteries, and installing devices necessary to effectuate such recharging; and (v) where L. P. Gas Equipment is rented, furnishing and storing L. P. Gas fuel and cylinders and changing such cylinders as required.

If this Agreement is **NOT A FULL SERVICE MAINTENANCE AGREEMENT**, the following provisions will apply:

6.2B    LESSOR will inspect the Equipment periodically during the lease term. LESSOR will furnish to LESSEE a report after each such inspection on the condition of each unit of Equipment and any repair work that may be required.

6.3B    LESSEE agrees to perform, at its own cost and expense, according to LESSOR'S manuals for maintenance and operation, all Equipment maintenance, service and repair (including both labor and materials) including, but not limited to:

a. Daily maintenance such as (i) the making of a routine check of each item at the beginning of each shift; (ii) supplying all necessary fuel (gasoline, electric current or L. P. Gas), replacement oil and water; (iii) where applicable, checking the oil level in the crankcase and water in the cooling system daily and checking the air pressure of pneumatic tires weekly; (iv) where battery-powered Equipment is rented, maintaining the proper level of water in the batteries, and installing devices necessary to effectuate such recharging; and (v) where L. P. Gas Equipment is rented, furnishing and storing the L. P. Gas fuel and cylinders and changing such cylinders as required.

b. Preventive maintenance service (per lubrication charts in manual).

c. Repairing, overhauling or adjusting of drive line, drive axle, uprights, steering gear, steering axle, hydraulic system brakes, power steering components, chains; and on gas-powered Equipment, the engine, engine accessories, belts, clutch and transmissions; and on battery-powered Equipment, the electric drive and pump motors, and all other routine repair work required to keep the Equipment in good operating condition.

d. Repairing, overhauling or adjusting of battery and charging Equipment, where battery-powered Equipment is rented.

e. Replacing or repairing of tires.

f. Repairs that may be required as determined by LESSOR during its periodic inspection and report to LESSEE.

6.4B    LESSEE will, at its own expense during the term hereof and until the return of the Equipment at the expiration of the lease term, maintain the Equipment in good operating order, repair, and appearance and, in effecting maintenance and repairs, will have such work performed only by qualified persons who are satisfactory to LESSOR. If LESSOR, during any inspection, determines that LESSEE has failed to perform its obligations as set forth above with respect to any item of Equipment, LESSOR will give LESSEE written notice thereof. Unless LESSEE performs such obligations within 30 days from the date of such notice, LESSOR will have the right, but not the obligation, to terminate the lease on such Equipment and/or to perform the maintenance, service and repair required to be performed by LESSEE under this Agreement. If LESSOR performs such maintenance, service or repair, LESSEE will pay LESSOR an amount equal to LESSOR'S then normal charge to its customers for similar services, such payment to be made within thirty (30) days after LESSEE receives LESSOR'S invoice with respect thereto.

**7.    TAXES.**

LESSEE will be responsible for and pay when billed by LESSOR any and all taxes, fees, or assessments, however designated, levied, or based, relating to the Equipment or the lease thereof, or the transfer, use, possession or operation of the Equipment, or any combination of the foregoing; including but not limited to personal property taxes, gross receipts taxes, privilege taxes, excise taxes, license taxes, and sales and use taxes, together with any penalties, fines or interest thereon, and excluding only franchise taxes and taxes measured by the net income of the LESSOR. When personal property taxes are not billed on an item basis by the respective governmental authority, LESSOR will determine the appropriate tax liabilities attributable to the leased Equipment on a reasonable basis. LESSEE will give immediate notice to LESSOR of any

# ADDITIONAL TERMS AND CONDITIONS

attachment, tax notice, or inquiries from taxing authorities concerning taxes, fees, or assessments referred to herein.

## 8. LIABILITY OF LESSEE.

LESSEE assumes all risks and liability arising from LESSEE's possession, use and operation of the Equipment from the moment of delivery to LESSOR to the moment of return to LESSOR. Unless directly caused by LESSOR's sole negligence, LESSEE agrees to indemnify and hold LESSOR harmless from any and all of the following whether the same be actual or alleged: all loss, damage, claims, suits, taxes, liens, penalties, fines, liability and expense (including attorneys' fees) arising in any manner as a result of the breach by LESSEE, any agent, employee or servant of LESSEE, any assignee of LESSEE and any other person using or in possession of the Equipment, of any term of this Agreement, or relating directly or indirectly to the possession, use and operation of the Equipment including, but not limited to injuries or death to persons or damages to or destruction of property, claims and liens for storage, labor and materials and all loss of and damage to the Equipment. Should LESSOR assign any of its rights or delegate any of its obligations under this Agreement, LESSEE agrees that LESSOR, LESSOR'S assignee and the officers, directors, stockholders, employees, agents and representatives of LESSOR'S assignee, will be entitled to the indemnity provided hereunder.

## 9. INSURANCE.

LESSEE will provide and pay for all-risk insurance against physical loss or damage to the Equipment in an amount satisfactory to LESSOR. LESSEE will also provide and pay for public bodily injury and property damage liability insurance against loss caused by or arising from LESSEE's possession, use or operation of the Equipment. The minimum limits for such liability insurance shall be not less than One Million Dollars combined single limit. LESSEE will furnish LESSOR with certificates of insurance evidencing such coverages and designating both LESSOR and its assigns as additional insureds and loss payees under the policy. Such certificates shall provide for 30 days' prior written notice by registered mail to LESSOR of any cancellation or change reducing coverage. The insurance so provided will be effective during the period from the moment of delivery of each item of Equipment under lease to LESSEE until the moment of return receipt by LESSOR. LESSOR reserves the right, but not the obligation, upon failure of LESSEE to furnish such certificates of insurance or upon receipt of a notice of cancellation or change reducing coverage to make such arrangements for insurance as LESSOR believes necessary. LESSEE will pay for the cost of such insurance upon demand.

## 10. THEFT OR DESTRUCTION.

If any of the Equipment is stolen or disappears or is damaged to the extent that it is impossible to place it back into the same condition as when received (ordinary wear and tear excepted) ("Casualty Occurrence"), LESSEE agrees to reimburse LESSOR immediately for the loss of the Equipment by paying LESSOR an amount equal to the then unpaid balance of aggregate rental for such Equipment plus the estimated fair market value at expiration of the lease. Upon receipt of such payment, LESSOR will assign title to the Equipment to LESSEE and LESSEE's obligations to pay rent shall cease upon such assignment and this Agreement will terminate.

## 11. OWNERSHIP.

It is expressly understood and agreed that this Agreement is a lease only and LESSEE does not acquire title to any of the Equipment. LESSEE will not cause or allow any liens or mortgages of any kind whatsoever to be placed on the Equipment. LESSEE agrees that it will not take any position on any tax returns or other filings with any taxing authority which is inconsistent with the status of this Agreement as a lease or LESSOR'S status as the owner of the Equipment for income tax purposes. LESSEE will not make any improvements other than ordinary maintenance and repairs to the Equipment without the prior written approval of LESSOR.

## 12. DEFAULT.

Any one or more of the following shall constitute an Event of Default:
12.1 Default by LESSEE in the payment of any installment of rent or any other amount payable to LESSOR hereunder, if such default shall continue for a period of 10 days after the date such payment is due;
12.2 Default by LESSEE in the performance of any other provision of this Agreement, if such default shall continue for a period of 10 days after written notice of such default is given by LESSOR to LESSEE;
12.3 Institution of a proceeding in reorganization, bankruptcy or insolvency by or against LESSEE or its property in any court, which proceeding is not dismissed within a period of 30 days; or,
12.4 LESSEE (i) admits in writing its inability to pay its debts as they become due, (ii) files a petition in bankruptcy or a petition to take advantage of any insolvency act, (iii) makes an assignment for the benefit of creditors, (iv) consents to the appointment of a receiver of itself or of the whole or any substantial part of its property, (v) seeks reorganization or arrangement under the federal ?

any right or remedy available to LESSOR will not operate as a waiver of any other right or remedy. The failure of LESSOR to exercise or a delay by LESSOR in exercising any right or remedy will not operate as a waiver of such right or any other right.

## 14. LATE CHARGE.

If a payment due hereunder is received by LESSOR more than 10 days after its scheduled due date, LESSEE shall pay a late charge equal to 5% of the unpaid amount of the late payment, but only once for each such late payment.

## 15. WARRANTY SERVICE.

LESSOR will deliver to LESSEE the factory limited warranty for the Equipment to enable LESSEE to obtain customary warranty service furnished on the Equipment. Other than delivering said factory warranty, there are no representations, promises, statements or warranties, express or implied, unless endorsed hereon in writing, and **THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL LESSOR BE RESPONSIBLE FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM THE EQUIPMENT OR LESSEE'S USE THEREOF.**

## 16. ASSIGNMENT.

16.1 LESSEE will not assign, mortgage or encumber this Agreement or any Equipment leased hereunder, nor sublet or suffer or permit the Equipment to be used by others without the prior written consent of LESSOR. As to any assignment consented to by LESSOR (i) the term of such assignment will not extend beyond the final day of the term of this Agreement and (ii) the rights of the assignee will be expressly subject and subordinate to all of the terms of this Agreement. It is expressly recognized and acknowledged that LESSEE will remain liable as a principal hereunder and will be bound by and subject to all the terms and conditions hereof notwithstanding any express consent by LESSOR to any such assignment.
16.2 LESSOR will have the right to assign any or all its rights and obligations of LESSOR at any time without the consent of LESSEE and LESSEE agrees to recognize any such assignment and waives notice thereof. LESSOR intends to assign this agreement to Toyota Motor Credit Corporation.

## 17. SECURITY DEPOSIT.

LESSOR may use the Security Deposit to pay all amounts due under this Agreement. If LESSEE performs all of the obligations required to be performed by LESSEE under this Agreement, the Security Deposit will be returned to LESSEE at the end of the term of this Agreement.

## 18. REPRESENTATIONS AND WARRANTIES.

18.1 LESSEE represents and warrants to LESSOR that the information relayed to LESSOR for inclusion in the Survey Report is a true and accurate statement of the facts and circumstances of the anticipated use of the Equipment.
18.2 LESSEE represents and warrants to LESSOR that the Equipment shall only be used in a LESSEE'S trade or business and that in no event for other than a lawful purpose and in compliance with all laws. LESSEE agrees to maintain in unobliterated condition any identification numbers, labels, tags and other markings used to identify the Equipment as LESSOR'S property. LESSEE will comply with all laws and regulations relating to the possession, use and maintenance of the Equipment.

## 19. NOTICES.

All notices pursuant to this Agreement shall be in writing and shall be deemed made when mailed by registered or certified mail, return receipt requested, to LESSEE or LESSOR at their respective addresses set forth on the reverse side of this Agreement or at such other address furnished by either party to the other.

## 20. GOVERNING LAW.

This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of California and contains the entire agreement of the parties.

## 21. FURTHER ASSURANCES.

From time to time each party will execute and deliver such further instruments and will take such other action as any other party reasonably may request in order to discharge and perform their respective obligations and agreements hereunder.

## 22. DELAYS.

LESSOR will not incur any liability to LESSEE for any obligations, if prevented by wars, fires, strikes or other labor disputes, accidents, acts of God, governmental regulations or interference, shortages of labor or ?

vency by or against LESSEE of its property in any court, which proceeding is not dismissed within a period of 30 days; or,

12.4 LESSEE (i) admits in writing its inability to pay its debts as they become due, (ii) files a petition in bankruptcy or a petition to take advantage of any insolvency act, (iii) makes an assignment for the benefit of creditors, (iv) consents to the appointment of a receiver of itself or of the whole or any substantial part of its property, (v) seeks reorganization or arrangement under the Federal Bankruptcy Laws;

12.5 Any material misrepresentation of fact, circumstance or warranty by LESSEE.

### 13. REMEDIES.

13.1 If an Event of Default occurs, LESSOR MAY, at its option, exercise any one or more of the following remedies:

a. Proceed by appropriate court action or actions, either at law or in equity, to enforce performance by LESSEE of the applicable covenants and terms of this Agreement or to recover damages for the breach of such covenants and terms;

b. By notice in writing to LESSEE, terminate this Agreement as to all or any of the Equipment rented hereunder, whereupon all right and interest of LESSEE to or in the use of said Equipment will cease. In such event, LESSEE will deliver the Equipment to the place specified in Article 5.1 hereof, or such other place as may be designated by LESSOR, without relieving LESSEE of its other obligations under this Agreement. LESSOR may, directly or by its agents, enter upon the premises of LESSEE without demand or notice, or other premises where any of the said Equipment may be or is reasonably believed to be without demand or notice, and take possession thereof;

c. Sell any of the Equipment at public or private sale, as LESSOR may determine, free and clear of any rights of LESSEE and without any duty to account to LESSEE with respect to such sale or for the proceeds thereof; or

d. Hold, keep idle or lease to others any of the Equipment, as LESSOR in its sole discretion may determine, free and clear of any rights of LESSEE and without any duty to account to LESSEE with respect to such action or for any proceeds with respect thereto.

13.2 In an Event of Default LESSOR shall have the right to retain all prior rental payments and any security deposit made hereunder, and to recover from LESSEE any and all amounts including rents which, under the terms of this Agreement may be then due and be unpaid hereunder as compensation for the use of said Equipment, plus a reasonable sum for attorney's fees and such expenses as shall be expended or incurred in the seizure of said Equipment or in the enforcement of any right hereunder.

13.3 The remedies provided by this Agreement in favor of LESSOR will not be deemed exclusive, but will be cumulative and will be in addition to all other remedies in LESSOR'S favor existing at law or in equity. LESSEE hereby waives any and all rights of setoff. The exercise of

may request in order to discharge and perform their respective obligations and agreements hereunder.

### 22. DELAYS.
LESSOR will not incur any liability to LESSEE for any obligations, if prevented by wars, fires, strikes or other labor disputes, accidents, acts of God, governmental regulations or interference, shortages of labor or materials, delays in transportation, non-availability of same from the manufacturer, or other causes beyond LESSOR'S control. IN NO EVENT WILL LESSOR BE LIABLE FOR SPECIAL OR CONSEQUENTIAL DAMAGES.

### 23. SEVERABILITY AND WAIVER.
Any provision of this Agreement prohibited by applicable law will be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof. The failure of either party to require strict performance of any provision will not diminish that party's right thereafter to require strict performance of any provision.

### 24. PRIOR APPROVAL.
This Agreement shall not be effective until reviewed and accepted by Toyota Motor Credit Corporation. LESSEE shall not take delivery of the Equipment until such time.

### 25. SUCCESSORS AND ASSIGNS.
This Agreement shall be binding on, and will inure to the benefit of, the parties hereto and their respective permitted successors and assigns.

### 26. DEPRECIATION.
If, as to any Equipment, under any circumstances and for any reason whatsoever (and regardless of whether such Equipment is public utility property as defined in the Internal Revenue Code), LESSOR shall lose, or shall not have the right to claim, or there shall be disallowed or recaptured (collectively, a "Loss") any portion of the claimed depreciation deductions for such Equipment, based on the capitalized cost thereof, LESSEE agrees to pay LESSOR upon demand, an amount which will be equal to the sum of an amount which, in the reasonable opinion of LESSOR, shall cause LESSOR'S net yield to equal the net yield that LESSOR would have received if LESSOR had not suffered the Loss with respect to claimed depreciation deductions and the amount of any interest, addition to tax, and/or penalty which may be assessed by any taxing authority in connection with the Loss of the depreciation deductions.

### 27. SURVIVAL OF COVENANTS, REPRESENTATIONS AND WARRANTIES.
The covenants, representations, warranties and indemnities of LESSEE set forth in this Agreement shall survive the termination of this Agreement.

### 28. AMENDMENTS OR MODIFICATIONS.
Any amendment or modification to this Agreement must be in writing and signed by all parties.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed as of the day and year first above written.

LESSEE: GRACE, W.R. & CO (INC)

By: _____

Title: Operation Coordinator S/R

**Assignment of Lease Agreement:**

The authorized signature of the LESSOR below has the effect of:

1. Accepting the terms and conditions of this Agreement; and
2. Assigning to Toyota Motor Credit Corporation all of LESSOR'S right, title and interest in and to the leased Equipment and this Agreement, including all amounts to become due under it.

Acceptance of Assignment of Lease Agreement:

TOYOTA MOTOR CREDIT CORPORATION

By: _____

Title: _____

Address: 1515 West 190th Street, P.O. Box 2958
Torrance, California 90509-2958

LESSOR: SOUTHEAST INDUSTRIAL EQUIPMENT

By: S. H.

Title: PRESIDENT

89-TMC-290                                          TMCC 15000 R 5/89



# ADDENDUM TO LEASE AGREEMENT

This Addendum to Lease Agreement is incorporated into and made a part of that certain Lease Agreement (Equipment) dated as of _____8/26/97_____ by and between ___GRACE, W.R. & CO. (INC.)___, 199____ (the "Lease"), and ___SOUTHEAST INDUSTRIAL EQUIPMENT___ as Lessee ("Lessee"), as Dealer/Lessor ("Lessor").

The following provisions are added to the terms of the Lease:

29.    OPTION TO PURCHASE.

Lessor hereby grants to Lessee the option (the "Option") to purchase the Equipment described in the Lease upon termination of the Lease, subject to the terms and conditions set forth herein. The Option shall be exercised, if at all, by written notice to Lessor on or before the date that is 60 days prior to the expiration date of the term of the Lease. If Lessee is in default under any of the terms, covenants and conditions of the Lease at the time that Lessee exercises the Option or any time thereafter, Lessor shall have, in addition to all of Lessor's rights and remedies provided in the Lease, the right to terminate the Option. In the event Lessee exercises the Option within the time period set forth above, Lessee shall deliver to Lessor, upon termination of the Lease and payment in full of all rents and obligations due under the Lease, the amount of ___ONE DOLLAR & NO/100___ Dollars ($_1.00_____ ) for each unit of Equipment purchased by Lessee hereunder, plus applicable sales or use tax. Lessor shall execute and deliver to Lessee all documents necessary to effect transfer of ownership of the Equipment upon such payment by Lessee. **LESSOR MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE CONDITION OF THE EQUIPMENT AS OF THE TERMINATION DATE OF THE LEASE AND LESSEE SHALL PURCHASE THE EQUIPMENT IN ITS "AS-IS" "WHERE-IS" CONDITION.** In the event Lessee does not elect to exercise the Option, the Equipment shall be returned to Lessor upon termination of the Lease pursuant to the terms of the Lease.

30.    USE OF EQUIPMENT.

Lessee hereby warrants and represents that Lessee is not leasing the Equipment for personal, family, household or agricultural purposes.

In WITNESS WHEREOF, the undersigned have executed this Addendum to Lease Agreement as of the date first set forth in the Lease.

Lessee                                          Lessor

___GRACE, W.R. & CO. (INC.)___          ___SOUTHEAST INDUSTRIAL EQUIPMENT___

By: _____                By: _____

Title: _____  5/R        Title: ___PRESIDENT___

ACKNOWLEDGED AND AGREED:
TOYOTA MOTOR CREDIT CORPORATION

By: _____

Title: _____

TMCC 16199 03/93

EXHIBIT "E"



**TOYOTA MOTOR CREDIT CORPORATION**

LEASE NO. _____

**COMMERCIAL LEASE AGREEMENT**
**(EQUIPMENT)**

LEASE DATE: _____

| LESSEE NAME AND ADDRESS OF PRINCIPAL OFFICE | LESSOR NAME AND ADDRESS |
|---|---|
| ☐ Sole Proprietor  ☐ Partnership  ☐ Corporation  ☐ Other | |

ADDRESS OF LOCATION OF EQUIPMENT:

INSURANCE COMPANY OR AGENT _____

This Agreement ☐ is ☒ is not a **FULL SERVICE MAINTENANCE AGREEMENT**.

The following Exhibits, if any, are attached hereto and incorporated herein by this reference:

Exhibit "A" _____

Exhibit "B" _____

## 1. LEASE OF EQUIPMENT.

Subject to the terms and conditions of this Commercial Lease Agreement ("Agreement"), Lessor hereby rents to Lessee and Lessee hereby rents from Lessor, the following material handling vehicle(s) complete with all additions, attachments and accessories and all other material handling vehicle(s) described on a Notice of Delivery ("Notice of Delivery") executed by Lessor and Lessee from time to time in the form of Supplement(s) attached hereto and incorporated herein by this reference (collectively referred to as the "Equipment"):

| # OF UNITS | MAKE | MODEL | MONTHLY RENTAL PER UNIT (PLUS APPLICABLE TAXES) | INITIAL TERM | SECURITY DEPOSIT | HOURLY OVERTIME RATE PER UNIT |
|---|---|---|---|---|---|---|
| | | | | | | |

| SERIAL NUMBERS |
|---|
| |

| ATTACHMENTS |
|---|
| |

All Equipment rented hereunder is rented f.o.b. at Lessor's address set forth above and will be used by Lessee in Lessee's operation at the address set forth above and as described in a Survey Report executed by Lessor and Lessee (the "Survey Report"). Lessee shall not remove any of the Equipment to any other place without Lessor's prior written consent.

Where battery powered Equipment is rented, any additional batteries and chargers other than those provided above and included in the monthly rental per item shall be rented at the additional sole cost and expense of Lessee.

If an hourly overtime rate is shown above, the hourly overtime rate will apply to each hour of use of any Equipment in excess of _____ hours in any calendar quarter as determined by the hour meter or other mechanical device used to record hours of use supplied with the Equipment ("hour meter"). Readings of the hour meter will be taken and billed by Lessor quarterly. If any hour meter on any Equipment fails to function, thereby rendering an hour meter reading unavailable for such Equipment, the hours of use will be ascertained by computing the average number of hours per month that the Equipment was used during the previous 3 months of recorded usage (or in case such previous period of recorded use shall be less than 3 months, then during such lesser period) and multiplying the monthly average as computed by the number of months, or fractions thereof, during which said hour meter for such Equipment shall have failed to function. Lessee agrees to pay said overtime rental charges within 10 days from the date of Lessor's invoice for such charges.

The monthly rentals and estimated annual running hours have been calculated on the basis of information supplied by Lessee and data developed by Lessor as set forth in the Survey Report.

## 2. TERM AND RENEWAL.

2.1 The original term of rental of the Equipment will commence with the delivery thereof and, unless sooner terminated as provided herein, will continue for the number of months set forth above under "Initial Term" (the "Initial Term").

2.2 The Initial Term will be extended automatically from month to month after the expiration thereof unless either of the parties gives notice to the other of an intention to terminate such rental at least 60 days prior to the expiration of the Initial Term, or at least 10 days prior to the expiration of any extended term.

## 3. RENT.

LESSEE will pay the Monthly Rental Per Unit stated in Article 1 with respect to each item of Equipment commencing on the day of delivery and continuing on the same day of the month of each successive month thereafter during the Initial Term, as extended pursuant to Section 2.2 above, until the Equipment is returned to LESSOR. All rent and other sums payable to LESSOR will be paid to Toyota Motor Credit Corporation at the address set forth below its signature or at such other address as Toyota Motor Credit Corporation may provide in writing.

## 4. DELIVERY.

When Equipment is delivered to LESSEE, LESSOR will prepare and deliv-

substituted Equipment will be as nearly practicable of the same capacity and general specifications as the rented Equipment; provided, that LESSOR will not be required to provide specialized attachments or accessories, or to make special alterations to the substituted Equipment. Such substituted Equipment will, while in the service of LESSEE, be subject to the terms and conditions and the payment of rentals and charges provided in this Agreement.

6.4A LESSEE, at its own cost and expense, will be responsible for the normal needs required for the Equipment in its daily operation, including; (i) the making of a routine check of each unit at the beginning of each shift; (ii) supplying all necessary fuel (gasoline, electric current or L. P. gas), replacement oil and water; (iii) where applicable, checking the oil level in the crankcase and water in the cooling system daily and checking the air pressure of pneumatic tires weekly; (iv) where battery-powered Equipment is rented, maintaining the proper level of water in the batteries, and installing devices necessary to effectuate such recharging; and (v) where L. P. gas Equipment is rented furnishing and storing L. P. gas fuel and cylinders and changing such cylinders as required.

If this Agreement is **NOT A FULL SERVICE MAINTENANCE AGREE-MENT**, the following provisions will apply.

after during the initial Term, as extended pursuant to Section 2.2 above, until the Equipment is returned to LESSOR. All rent and other sums payable to LESSOR will be paid to Toyota Motor Credit Corporation at the address set forth below its signature or at such other address as Toyota Motor Credit Corporation may provide in writing.

## 4.   DELIVERY.

When Equipment is delivered to LESSEE, LESSOR will prepare and deliver to LESSEE a Notice of Delivery which will set forth separately for each item the following information: number of units, a description of the Equipment, serial number(s) and delivery date. Although LESSOR will try to deliver the Equipment by the delivery date requested, TIME OF DELIVERY IS *NOT* OF THE ESSENCE AND LESSOR ASSUMES NO LIABILITY FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR FAILURE TO MAKE DELIVERY ON SUCH DATE. LESSEE or LESSEE'S authorized representative will execute such Notice of Delivery and return it to LESSOR.

## 5.   RETURN OF EQUIPMENT.

5.1   LESSEE will return all of the Equipment at the expiration or earlier termination of the lease term, freight prepaid to a point designated by LESSOR. The designated point will be in no event farther than LESSOR'S place of business. The Equipment will be returned in safe operating condition.

5.2   For the purposes of this Article the phrase "safe operating condition" means that the Equipment loaded to its rated capacity: (i) has no missing or broken components or accessories; (ii) starts under its own power and idles; (iii) does not leak oil, water, fuel, or any other fluids; (iv) moves through its normal speed ranges in both forward and reverse; (v) steers normally right and left in both forward and reverse; (vi) is able to stop by means of service brakes in a safe distance in both forward and reverse; (vii) lifts, lowers, and tilts normally and without hydraulic oil leaks; and (viii) its attachments, if so equipped, perform all of their required functions. In addition, to be in safe operating condition, Equipment will have: (a) serviceable tires with some remaining tread and without chunking or flat spots; and (b) operational horn, parking brake and lights.

5.3   If all of the Equipment is not returned in safe operating condition, LESSOR will bill LESSEE for the amount of LESSOR'S then normal charge to its customers for any repairs necessary to place the Equipment in safe operating condition, regardless of whether LESSOR actually performs such repairs, and LESSEE will pay such bill within 30 days after its receipt thereof.

## 6.   MAINTENANCE, CARE AND INSPECTION.

6.1   LESSEE will keep the Equipment in a covered area when not in use. LESSEE will cause the Equipment to be operated only by competent, fully-trained-in-use employees of LESSEE. LESSEE will also assure that the Equipment is operated with driver's overhead guard and load backrest extension installed. LESSEE agrees to operate the Equipment within its rated capacity and not to alter or modify the Equipment.

If this Agreement is a FULL SERVICE MAINTENANCE AGREEMENT, the following provisions will also apply:

6.2A   Subject to the performance by LESSEE of its obligations with respect to the Equipment, LESSOR will service and maintain the Equipment in proper working condition. LESSEE agrees to make the Equipment available for servicing by representatives of LESSOR at reasonable times during LESSEE'S business hours. LESSEE will provide, without charge to LESSOR, a suitable area within LESSEE'S premises in order that LESSOR'S agents or employees may service each unit of Equipment and perform such repairs as can reasonably be made without removing the Equipment from LESSEE'S premise. The space will be well lighted, heated and ventilated. Where the number and type of Equipment warrants, LESSEE will provide an adequate, protected storage area and facilities, without charge, in order that LESSOR may maintain an inventory of supplies or parts required in the servicing of the Equipment.

6.3A   If any item of Equipment is out of service for needed repairs, due to normal use, LESSOR will promptly, after notice by LESSEE, arrange to repair such Equipment. If LESSOR deems it impracticable to promptly repair any such item of disabled Equipment, LESSOR will temporarily substitute similar Equipment in good operating condition until the rented Equipment is put into proper operating condition. The

ly; (iv) where battery-powered Equipment is rented, maintaining the proper level of water in the batteries, and installing devices necessary to effectuate such recharging; and (v) where L. P. gas equipment is rented, furnishing and storing L. P. gas fuel and cylinders and changing such cylinders as required.

If this Agreement is **NOT A FULL SERVICE MAINTENANCE AGREEMENT**, the following provisions will apply:

6.2B   LESSEE will inspect the Equipment periodically during the lease term. LESSOR will furnish to LESSEE a report after each such inspection on the condition of each unit of Equipment and any repair work that may be required.

6.3B   LESSEE agrees to perform, at its own cost and expense, according to LESSOR'S manuals for maintenance and operation, all Equipment maintenance, service and repair (including both labor and materials) including, but not limited to:

(i)   Daily maintenance such as (i) the making of a routine check of each item at the beginning of each shift; (ii) supplying all necessary fuel (gasoline, electric current or L. P. gas), replacement oil and water; (iii) where applicable, checking the oil level in the crankcase and water in the cooling system daily and checking the air pressure of pneumatic tires weekly; (iv) where battery-powered Equipment is rented, maintaining the proper level of water in the batteries, and installing devices necessary to effectuate such recharging; and (v) where L. P. gas equipment is rented, furnishing and storing the L. P. gas fuel and cylinders and changing such cylinders as required.

(ii)   Preventive maintenance service (per lubrication charts in manual).

(iii)   Repairing, overhauling or adjusting of drive line, drive axle, uprights, steering gear, steering axle, hydraulic system brakes, power steering components, chains; and on gas-powered Equipment, the engine, engine accessories, belts, clutch and transmissions; and on battery-powered Equipment, the electric drive and pump motors, and all other routine repair work required to keep the Equipment in good operating condition.

(iv)   Repairing, overhauling or adjusting of battery and charging Equipment, where battery-powered Equipment is rented.

(v)   Replacing or repairing of tires.

(vi)   Repairs that may be required as determined by LESSOR during its periodic inspection and report to LESSEE.

6.4B   LESSEE will, at its own expense and until the return of the Equipment at the expiration of the lease term, maintain the Equipment in good operating order, repair, and appearance and, in effecting maintenance and repairs, will have such work performed only by qualified persons who are satisfactory to LESSOR. If LESSOR, during any inspection determines that LESSEE has failed to perform its obligations as set forth above with respect to any item of Equipment, LESSOR will give LESSEE written notice thereof. Unless LESSEE performs such obligations within 30 days from the date of such notice, LESSOR will have the right, but not the obligation, to terminate the Lease and/or to perform the maintenance, service and repair required to be performed by LESSEE under this Agreement. If LESSOR performs such maintenance, service or repair, LESSEE will pay LESSOR an amount equal to LESSOR'S then normal charge to its customers for similar services such payment to be made within thirty (30) days after LESSEE receives LESSOR'S invoice with respect thereto.

## 7.   TAXES.

LESSEE will be responsible for and pay when billed by LESSOR any and all taxes, fees, or assessments, however designated, levied, or based relating to the transfer, use, possession or operation of the Equipment including but not limited to personal property taxes, gross receipts taxes, privilege taxes, excise taxes, license taxes, and sales and use taxes together with any penalties, times or interest thereon, and excluding only franchise taxes and taxes measured by the net income of the LESSOR. When personal property taxes are not billed on an item basis by the respective governmental authority, LESSOR will determine the appropriate tax liabilities attributable to the leased Equipment on a reasonable basis. LESSEE will give immediate notice to LESSOR of any attachment, tax notice, or inquiries from taxing authorities concerning the Equipment.

# ADDITIONAL TERMS AND CONDITIONS

8. **LIABILITY OF LESSEE.**
LESSEE assumes all risks and liabilities arising from LESSEE'S possession, use and operation of the Equipment from the moment of delivery to LESSEE to the moment of return to LESSOR. Unless directly caused by LESSOR'S sole negligence, LESSEE agrees to indemnify and hold LESSOR, its officers, directors, stockholders, employees, agents and representatives harmless from any and all of the following whether the same be actual or alleged: all loss, damage, claims, suits, taxes, liens, penalties, fines, liability and expense (including attorneys' fees) arising in any manner as a result of the breach by LESSEE, any agent, employee or servant of LESSEE, any assignee of LESSEE and any other person using or in possession of the Equipment, of any term of this Agreement, or relating directly or indirectly to the possession, use and operation of the Equipment including, but not limited to injuries or death to persons or damages to or destruction of property, claims and liens for storage, labor and materials and all loss of and damage to the Equipment. Should LESSOR assign any of its rights or delegate any of its obligations under this Agreement, LESSEE agrees that LESSOR, LESSOR'S assignee and the officers, directors, stockholders, employees, agents and representatives of LESSOR'S assignee, will be entitled to the indemnity provided hereunder.

9. **INSURANCE.**
LESSEE will provide and pay for an all-risk insurance insuring against physical loss or damage to the Equipment in an amount satisfactory to LESSOR. LESSEE will also provide and pay for public bodily injury and property damage liability insurance against loss caused by or arising from LESSEE'S possession, use or operation of the Equipment. The minimum limits for such liability insurance shall be not less than One Million Dollars combined single limit. LESSEE will furnish LESSOR with certificates of insurance evidencing such coverages and designating both LESSOR and its assigns as additional insureds and loss payees under the policy. Such certificates shall provide for 30 days prior written notice by registered mail to LESSOR of any cancellation or change reducing coverage. The insurance so provided will be effective during the period from the moment of delivery of each item of Equipment under lease to LESSEE until the moment of return receipt by LESSOR. LESSOR reserves the right, but not the obligation, upon failure of LESSEE to furnish such certificates of insurance or upon receipt of a notice of cancellation or change reducing coverage to make such arrangements for insurance as LESSOR believes necessary. LESSEE will pay for the cost of such insurance upon demand.

10. **THEFT OR DESTRUCTION.**
If any of the Equipment is stolen or disappears or is damaged to the extent that it is impossible to place it back into the same condition as when received (ordinary wear and tear excepted) ("Casualty Occurrence"), LESSEE agrees to reimburse LESSOR immediately for the loss of the Equipment by paying LESSOR an amount equal to the then unpaid balance of aggregate rental for such Equipment plus the estimated fair market value at the expiration of the Lease. Fair market value is the value of the Equipment obtained in an arms length transaction between an informed and willing buyer and seller, valued at its highest and best use and not valued at a forced sale or liquidation value, without deduction for the costs of removal of Equipment from its current location at expiration of the Lease. Upon receipt of such payment, LESSOR will assign title of the Equipment to LESSEE and LESSEE'S obligations to pay rent shall cease upon such assignment and this Agreement will terminate.

11. **OWNERSHIP.**
It is expressly understood and agreed that this Agreement is a lease only and LESSEE does not acquire title to any of the Equipment. LESSEE will not cause or allow any liens or mortgages of any kind whatsoever to be placed on the Equipment. LESSEE agrees that it will not take any position on any tax returns or other filings with any taxing authority which is inconsistent with the status of this Agreement as a lease or LESSOR'S status as the owner of the Equipment for income tax purposes. LESSEE will not make any improvements other than ordinary maintenance and repairs to the Equipment without the prior written approval of LESSOR. LESSEE authorizes LESSOR to take any actions reasonably necessary to perfect LESSOR'S interest in the Equipment, including, but not limited to the filing of any financing statements, or other documents, with or without LESSEE'S signature. If LESSEE'S signature is required, LESSEE hereby appoints LESSOR as its attorney-in-fact to execute any such documents or financing statements. In the event that LESSOR prepares and files such financing statements, LESSEE agrees to pay LESSOR a fee of $50, plus actual filing costs.

12. **DEFAULT.**
Any one or more of the following shall constitute an Event of Default:
12.1  Failure by LESSEE to make any payment when it is due, if such default shall continue for a period of 10 days after the date such payment is due;
12.2  Default by LESSEE in the performance of any other provision of this Agreement, if such default shall continue for a period of 10 days after

13.3  The remedies provided by this Agreement in favor of LESSOR will not be deemed exclusive, but will be cumulative and will be in addition to all other remedies in LESSOR'S favor existing at law or in equity. LESSEE hereby waives any and all rights of setoff. The exercise of any right or remedy available to LESSOR will not operate as a waiver of any other right or remedy. The failure of LESSOR to exercise or a delay by LESSOR in exercising any right or remedy will not operate as a waiver of such right or any other right.

14. **COLLECTION COSTS.**
If LESSEE breaches any term or condition of this Agreement or otherwise defaults, LESSEE agrees to pay all of LESSOR'S expenses incurred in exercising any of LESSOR'S rights under this Agreement, including but not limited to, expenses for repossession, transportation, storage, collection, and legal costs, including reasonable attorney's fees paid to an attorney who is not a salaried employee, not to exceed the amount permitted by applicable law.

15. **LATE CHARGE.**
If a payment due hereunder is received by LESSOR more than 10 days after its scheduled due date, LESSEE shall pay a late charge equal to 5% of the unpaid amount of the late payment or maximum allowed by law, whichever is less, but only once for each such late payment.

16. **WARRANTY SERVICE.**
LESSOR will deliver to LESSEE the factory limited warranty for the Equipment to enable LESSEE to obtain customary warranty service furnished on the Equipment. Other than delivering said factory warranty, there are no representations, promises, statements or warranties, express or implied, unless endorsed hereon in writing, and **THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL LESSOR BE LIABLE FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM THE EQUIPMENT OR LESSEE'S USE THEREOF.**

17. **ASSIGNMENT.**
17.1  LESSEE will not assign, mortgage or encumber this Agreement or any Equipment leased hereunder, nor sublet or suffer or permit the Equipment to be used by others without the prior written consent of LESSOR which consent shall not be unreasonably withheld. As to any assignment consented to by LESSOR (i) the term of such assignment will not extend beyond the final day of the term of this Agreement and (ii) the rights of the assignee will be expressly subject to all of the terms of this Agreement. LESSEE understands and agrees that it will remain liable as a principal hereunder and will be bound by all the terms and conditions of this Agreement notwithstanding any express consent by LESSOR to any such assignment.
17.2  LESSOR will have the right to assign any or all of its rights and obligations at any time without notice to LESSEE and without LESSEE'S consent. LESSEE acknowledges that LESSOR will promptly assign this Agreement to Toyota Motor Credit Corporation.

18. **SECURITY DEPOSIT.**
LESSOR may use the Security Deposit to pay all amounts due under this Agreement. If LESSEE performs all of its obligations under this Agreement, the Security Deposit will be returned to LESSEE at the expiration or termination of this Agreement. No interest, increase or profits will be paid to the LESSEE on the Security Deposit.

19. **REPRESENTATIONS AND WARRANTIES.**
19.1  LESSEE represents and warrants that any financial information or other information provided to LESSOR is true and accurate, and any information provided to LESSOR for inclusion in the Survey Report is a true and accurate statement of LESSEE'S anticipated use of the Equipment.
19.2  LESSEE represents and warrants to LESSOR that the Equipment shall only be used in a LESSEE'S trade or business and in compliance with all federal, state and local laws and regulations. LESSEE agrees to maintain in good and legible condition any identification numbers, labels, tags and other markings used to identify the Equipment as LESSOR'S property.

20. **NOTICES.**
All notices or demands pursuant to this Agreement shall be in writing, and deemed made when sent by regular United States mail, registered or certified mail, return receipt requested, or other overnight or express delivery, or electronically with confirmation of receipt to the sender, to the address set herein or such other address as advised of in writing.

21. **GOVERNING LAW.**

12. DEFAULT.

Any one or more of the following shall constitute an Event of Default:

12.1 Failure by LESSEE to make any payment when it is due, if such default shall continue for a period of 10 days after the date such payment is due;

12.2 Default by LESSEE in the performance of any other provision of this Agreement, if such default shall continue for a period of 10 days after written notice of such default is given by LESSOR to LESSEE;

12.3 Institution of a proceeding in reorganization, bankruptcy or insolvency by or against LESSEE or its property in any court, which proceeding is not dismissed within a period of 30 days; or.

12.4 LESSEE (i) is unable to pay its debts as they become due, (ii) makes an assignment for the benefit of creditors, (iii) consents to the appointment of a receiver of itself or of the whole or any substantial part of its property;

12.5 Any material misrepresentation of fact, circumstance or breach of any warranty or covenant by LESSEE.

13. REMEDIES.

13.1 If an Event of Default occurs, LESSOR may, at its option, exercise any one or more of the following remedies:

a. Proceed by appropriate court action or actions, either at law or in equity, to enforce performance by LESSEE of the applicable covenants and terms of this Agreement or to recover damages for the breach of such covenants and terms;

b. By notice in writing to LESSEE, terminate this Agreement as to all or any of the Equipment, whereupon all right and interest of LESSEE to or in the use of said Equipment will cease. In such event, LESSEE will deliver the Equipment specified in Article 5.1, or such other place as may be designated by LESSOR, without relieving LESSEE of its other obligations under this Agreement. LESSOR may, directly or by its agents, peacefully enter upon the premises of LESSEE without demand or notice, or other premises where any of the said Equipment may be or is reasonably believed to be without demand or notice, and take possession thereof;

c. Sell any of the Equipment at public or private sale, as LESSOR may determine, free and clear of any rights of LESSEE and without any duty to account to LESSEE with respect to such sale or for the proceeds thereof; or

d. Hold, keep idle or lease to others any of the Equipment, as LESSOR in its sole discretion may determine, free and clear of any rights of LESSEE and without any duty to account to LESSEE with respect to such action or for any proceeds with respect thereto.

13.2 In an Event of Default, LESSOR shall have the right to immediately terminate this Agreement and accelerate all payments, charges and other amounts due. LESSEE agrees that it will pay any expenses including reasonable attorneys fees incurred by LESSOR in the repossession or seizure of the Equipment or in the enforcement of any right hereunder.

Agreement shall be in writing, and deemed made when sent by regular United States mail, registered or certified mail, return receipt requested, or other overnight or express delivery, or electronically with confirmation of receipt to the sender, to the address set herein or such other address as advised of in writing.

21. GOVERNING LAW.

This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the state of the LESSOR's place of business.

22. FURTHER ASSURANCES.

From time to time each party will execute and deliver such further instruments and will take such other action as any party reasonably may request in order to discharge and perform their respective obligations and agreements hereunder.

23. DELAYS.

LESSOR will not incur any liability to LESSEE for any obligations, if prevented by wars, fires, strikes or other labor disputes, accidents, acts of God, governmental regulations or interference, shortages of labor or materials, delays in transportation, non-availability of same from the manufacturer, or other causes beyond LESSOR's control. IN NO EVENT SHALL LESSOR BE LIABLE FOR SPECIAL OR CONSEQUENTIAL DAMAGES.

24. SEVERABILITY AND WAIVER.

Any provision of this Agreement prohibited by applicable law will be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof. The failure of either party to require strict performance of any provision will not diminish that party's right thereafter to require strict performance of any operation.

25. PRIOR APPROVAL.

This Agreement shall not be effective until reviewed and accepted by Toyota Motor Credit Corporation. LESSEE shall not take delivery of the Equipment until such time.

26. SUCCESSORS AND ASSIGNS.

This Agreement shall be binding on, and will inure to the benefit of, the parties hereto and their respective permitted successors and assigns.

27. SURVIVAL OF COVENANTS, REPRESENTATIONS AND WARRANTIES.

The covenants, representations, warranties and indemnities of LESSEE set forth in this Agreement shall survive the termination of this Agreement.

28. AMENDMENTS OR MODIFICATIONS.

This Agreement constitutes the entire agreement of the parties. No modification or amendment shall be effective unless made in writing and signed by both parties.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed as of the day and year first above written.

LESSEE: Grace WR & Co dba Grace Davison

By: _Larry O. Fill_

Title: PLANT MANAGER    Date: 2/27/01

**Assignment of Lease Agreement:**

The authorized signature of the LESSOR below has the effect of:

1. Accepting the terms and conditions of this Agreement; and

2. Assigning to Toyota Motor Credit Corporation all of Lessor's right, title and interest in and to the leased Equipment and this Agreement, including all amounts to become due under it.

Acceptance of Assignment of Lease Agreement:

TOYOTA MOTOR CREDIT CORPORATION

By: _____

Title: _____

Address: P.O. Box 3457
Torrance, California 90510

LESSOR: Toyota Forklifts of Augusta .

By: _Sonsia Carson_

Title: Br. Mgr.    Date: 2/27/01

15000 12/99