UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JJF) |
| | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Objections Due By: October 29, 2001 @ 4:00 p.m.** |
| | ) | **Hearing Date: November 5, 2001 @ 2:00 p.m.** |

### JOINT APPLICATION BY THE OFFICIAL COMMITTEES OF ASBESTOS PROPERTY DAMAGE AND ASBESTOS PERSONAL INJURY CLAIMANTS FOR APPROVAL OF EMPLOYMENT OF COZEN O'CONNOR AND McKOOL SMITH AS CO-SPECIAL COUNSEL TO THE ASBESTOS COMMITTEES

The Official Committee of Asbestos Property Damage Claimants (the "PD Committee") and the Official Committee of Asbestos Personal Injury Claimants (the "PI Committee"; the PD Committee and the PI Committee being collectively referred to as the "Asbestos Committees"), by and through their undersigned chairs, move this Court for approval of the employment of the law firms of Cozen O'Connor and McKool Smith (collectively, the "Law Firms"), as co-special counsel to prosecute the Fraudulent Transfer Claims (as hereinafter defined), pursuant to 11 U.S.C. §§ 328 and 1103, Federal

---

[1] The Debtors consist of the following 62 entities: W. R Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Ins., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgracc, Inc., Coalgracc II, Ins., Creative Food `N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc., G C Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B 11 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe. Inc., Grace HG Inc., Grace HG II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Squarc Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Ins., MICA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

\74817\15537\ # 527611 v 1
10/17/01 12:55 PM

Rule of Bankruptcy Procedure 2014 and Local Rule 2014-1. The following grounds support this Application:

1.    On April 2, 2001 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

2.    On April 2, 2001, the Court entered its Order directing the joint administration of the Debtors' chapter 11 cases (the "Consolidated Cases").

3.    On April 12, 2001, the Office of the United States Trustee appointed each of the Asbestos Committees in these cases.

4.    On June 14, 2001, the Asbestos Committees filed the Joint Motion by the Official Committees of Asbestos Property Damage and Asbestos Personal Injury Claimants for Authority to Prosecute Fraudulent Transfer Claims (the "Fraudulent Transfer Motion").

5.    On July 11, 2001, the Debtors and the Official Committee of Unsecured Creditors filed their respective Opposition to the Fraudulent Transfer Motion. The Debtors argue that the Asbestos Committees have a bias in assessing the magnitude of the Debtors' asbestos liability because "both committees were formed for the essential purpose of representing people who are asserting asbestos claims." The Official Committee of Unsecured Creditors argue that whether the Fraudulent Transfer Claims should be prosecuted needs to be investigated prior to bringing an action. Thus, they argue that the Asbestos Committees are conflicted from performing the necessary investigation because the

Asbestos Committees have already taken the position that the Fraudulent Transfer Claims should be prosecuted.

6. Responses to the Fraudulent Transfer Motion were also filed on July 11, 2001, by Sealed Air, Inc. and National Medical Care, Inc., the principal targets of the Fraudulent Transfer Claims. Sealed Air and National Medical Care both argue in their respective Responses that the prosecution, if any, of the Fraudulent Transfer Claims, should take place in this Court.

7. On August 2, 2001, this Court postponed the hearing on the Fraudulent Transfer Motion until September 7, 2001. On September 7, 2001, this Court further postponed the hearing on the Fraudulent Transfer Motion until further notice.

8. The Asbestos Committees have availed themselves of the postponement to interview numerous law firms with pre-eminent abilities to serve as special counsel to handle the prosecution of the Fraudulent Transfer Claims. As the Debtors admit in their Response to the Fraudulent Transfer Motion, "someone else [other than the Debtors] should assess whether a fraudulent conveyance claim was in the best interests of the estates."

9. The selection process employed by the Asbestos Committees entailed: (a) in-depth discussions with all candidates to determine the levels of their expertise and resources; and (b) a thorough review by all candidates of their former and current clients to ensure disinterestedness, and no representations of interests adverse to the Debtors' estates or conflicts of interest.

10. Based upon this thorough and thoughtful selection process, the Asbestos Committees jointly concluded that the interests of the estates would be best advanced and protected by the retention

of both Cozen O'Connor and McKool Smith to serve as special counsels in respect of the Fraudulent Transfer Claims.

11.  Firstly, the Asbestos Committees have determined that the Law Firms' respective litigation and insolvency groups have extensive experience with investigating, analyzing, and prosecuting fraudulent transfer actions. Indeed, McKool Smith serves as plaintiff's counsel in <u>Abner, et al. v. W.R. Grace & Co., et al.</u>, currently pending in the United States Bankruptcy Court for the District of Delaware (transfer order from the United States Bankruptcy Court for the Northern District of California-San Francisco Division, Adversary Case No. 01-3070 TC) following removal from California state court, which cogently frames the Fraudulent Transfer Claims. Thus, that Law Firm is also intimately familiar with the applicable operative facts and legal theories. Likewise, Cozen O'Connor has considerable experience in reorganization cases before this Court and others, in complex litigation cases in this District and others, and is eminently well-qualified to act as special counsel. Thus, the Asbestos Committees believe that the Law Firms possess expertise in the areas of law relevant to the Fraudulent Transfer Claims.

12.  Secondly, as set forth in the attached Affidavits, neither of the Law Firms holds or represents any interest adverse to the Debtors' estates or has a conflict of interest with existing or former clients. Moreover, to the best of the knowledge of the Asbestos Committees, the Law Firms are "disinterested" (as such term is defined in 11 U.S.C. § 101(14)) and have no connection with the Debtors, their creditors or any other party in interest, including their respective attorneys or accountants, the United States Trustee, or any person employed in the office of the United States Trustee, except as specifically set forth in the attached Affidavits.

13. Finally, the Law Firms have agreed to accept this engagement on a pure contingent fee arrangement. Such agreement is remarkable for at least two reasons. First, a contingent fee arrangement ought assuage any concern that the prosecution of the Fraudulent Transfer Claims will drain the resources of the Debtors' estates. Second, the willingness of the Law Firms to accept the engagement on a contingent fee basis --- after each of the Law Firms made an independent examination and analysis of the underlying transactions and the resulting Fraudulent Transfer Claims --- is testimony to the merits of the Claims. Assuredly, the contemplated litigation of the Fraudulent Transfer Claims will be lively, enormously time consuming and promises to engender a substantial investment of resources by the Law Firms.

14. The professional services for which the Asbestos Committees desire to employ Law Firms include, without limitation, the following:

(i) analysis, investigation and prosecution (including representation in any ensuing appeals) of the Fraudulent Transfer Claims; and

(ii) performing such other legal services as may be required and as are deemed to be in the best interests of the Asbestos Committees and their constituencies which they represent.

15. Subject to the approval of this Court, 11 U.S.C. § 328, and Federal Rule of Bankruptcy Procedure 2016, the Law Firms are willing to undertake this representation on a contingency fee basis as follows: (a) ten percent (10%) of all amounts recovered (the "Recovery") up to $1 billion; plus (b) eleven percent (11%) of the Recovery between $1 billion and $2 billion; plus (c) twelve percent (12%) of the Recovery in excess of $2 billion. The term "Recovery" refers to a sum of money equal in amount to the full fair market value of all relief obtained or received by the Debtors' Estates as a proximate result of the Claims, including, but not limited to, money, guaranteed payments,

tangible or intangible property, business interests, compensatory damages, exemplary damages, attorney's fees, prejudgment interest, and/or post judgment interest (whether through trial, judgment or settlement of the Claims). The term "Recovery" includes the fair market value of any relief obtained or received, including all amounts of money or property that are to be received by the Debtors' Estates over any period of time. In the event of a resolution acceptable to the Asbestos Committees and the Debtors' Estates that includes multiple issues in the bankruptcy proceeding, including issues unrelated to the Claims, the amount of the Recovery shall be determined by agreement of the Committees and the Firms, subject to approval of this Court, or by this Court in the absence of agreement. The Law Firms have agreed amongst themselves to the manner in which they will share such fees.

16. The Asbestos Committees propose that the Law Firms file with this Court applications for the allowance of reimbursement of expenses in accordance with the Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, dated May 3, 2001, and that their applications for the allowance of compensation be made in accordance with applicable bankruptcy laws, procedures and rules, as well as any applicable provisions of further Orders of this Court.

17. It is policy of each of the Law Firms to charge its clients in all areas of practice for all expenses incurred in connection with the client's case, other than general and routine overhead expenses. The expenses charged to clients include, among other things, telecopier, toll and other charges, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, expenses for "working meals," computerized research, messengers, couriers, postage, witness fees and other fees related to trials and hearings, transcription

costs, and non-ordinary overhead expenses.  The Law Firms have agreed to charge the estates for these expenses in a manner and at rates consistent with the charges generally made to their other clients.

WHEREFORE, the Asbestos Committees respectfully move the Court to consider this Application and thereupon enter an Order approving the employment of Cozen O'Connor and McKool Smith as co-special counsel for the purposes stated herein, pursuant to 11 U.S.C. §§ 328 and 1103, Federal Rule of Bankruptcy Procedure 2014 and Local Rule 2014-1.

Dated: October 17, 2001

    BILZIN SUMBERG DUNN BAENA
      PRICE & AXELROD LLP
    2500 First Union Financial Center
    200 South Biscayne Boulevard
    Miami, Florida  33131-2336
    Telephone:  (305) 374-7580

    Scott L. Baena (Admitted Pro Hac Vice)

            -and-

    FERRY & JOSEPH, P.A.
    824 Market Street, Suite 904
    P.O. Box 1351
    Wilmington, Delaware  19899
    Telephone:  (302) 575-1555

    By: /s/ Theodore J. Tacconelli
        Michael B. Joseph
        (Del. Bar No. 392)
        Theodore J. Tacconelli
        (Del. Bar No. 2678)

    CO-COUNSEL FOR THE OFFICIAL

Case No. 01-1139 (JJF)

COMMITTEE OF ASBESTOS PROPERTY
DAMAGE CLAIMANTS

-and-

CAMPBELL & LEVINE, LLC
1201 N. Market Street, 15th Floor
Wilmington, DE 19801
(302) 426-1900

By: /s/Matthew G. Zaleski, III
　　　Matthew G. Zaleski, III
　　　(Delaware Bar No. 3557)

-and-

CAPLIN & DRYSDALE, CHARTERED
399 Park Avenue. 36th Floor
New York, NY 10022
(212) 319-7125

Elihu Inselbuch (Admitted Pro Hac Vice)

-and-

CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W.
Washington, D.C. 20005
(202) 862-5088

Peter Van N. Lockwood (Admitted Pro Hac Vice)

CO-COUNSEL FOR THE OFFICIAL
COMMITTEE OF ASBESTOS PERSONAL
INJURY CLAIMANTS

- 8 -

- 9 -