IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JJF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**Hearing Date: January 3, 2002 at 9:30 a.m., if necessary**
**Objection Deadline: November 15, 2001 at 4:00 p.m.**

## MOTION OF THE DEBTORS FOR THE ENTRY OF AN ORDER APPROVING THE EXECUTION OF A CONSENT DECREE WITH THE EPA

W. R. Grace & Co. - Conn. and Kootenai Development Company, debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), by and through their undersigned counsel, respectfully move this Court (the "Motion") for the entry of an Order approving the Debtors' execution of and compliance with the attached Consent Decree pursuant to section 363 of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Fed. R. Bankr. P. 9019, and in support thereof, state the following:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this motion is proper under 28 U.S.C. § 1408.

2.      The statutory predicates for this Motion are sections 105 and 363 of the Bankruptcy Code and Rule 9019 the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

3.      On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.      Prior to the filing of these Chapter 11 Cases and from the years 1963 through 1990, the Debtors mined, milled and processed vermiculite from a mine ten miles north of Libby, Montana (the "Libby Mine").  Grace purchased the Libby Mine and related assets from the Zonolite Company in 1963. Vermiculite is a mineral that expands into popcorn-like, low density pieces when heated.  This expanded - or exfoliated - vermiculite is light-weight, fire-resistant and serves as a good insulator.  Vermiculite is itself an inert mineral that is non-asbestos and has no known toxic properties.  When mined, the vermiculite ore in the Libby Mine deposit, however, contained a

secondary mineral - fibrous asbestiform tremolite.[2]  Grace mined the ore and then milled it into a concentrate through a crushing, screening, washing, and flotation separation process.

5.      Prior to Grace's purchase of Zonolite (and before the hazards of asbestos were fully known), asbestiform tremolite dust levels in the air at the Libby Mine were high.  After acquiring the mine and learning of the working conditions there, Grace implemented a series of major steps over time that reduced asbestiform tremolite exposures to the lowest feasible levels. Grace also started a medical program to educate employees about the hazards of asbestiform tremolite and to monitor their exposure levels and health.  Even through vermiculite contained only trace levels of naturally occurring asbestos impurities and the Debtors ceased operation of the Libby Mine in 1990, the Debtors' operations at this site have been the source of ongoing litigation over the health hazards associated with asbestos exposure.  Also, as a result of the long historical operations of the Libby Mine, there have been incidents of various health related problems among some Libby residents.

6.      Among the litigation which has occurred as a result of the Libby Mine operations, a Complaint ("Complaint") was filed on September 14, 2000 by the United States of America, on behalf of the EPA, against the Debtors pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (as amended, "CERCLA").  The Complaint sought immediate, unimpeded entry and access for the EPA to portions of the Debtors' real property located in and near Libby, Montana for the purpose of investigation of the Libby Mine site and disposal of materials from other properties.  On March 9, 2001, the United States District Court for the District of Montana, Missoula Division (the "Montana Court"), entered an Order in favor of the

---

[2]  Fibrous asbestiform tremolite impurities in vermiculite are atypical and not characteristic of most vermiculite deposits.  Most vermiculite deposits do not contain impurities.

EPA, granting the EPA the access it requested in the Complaint. As a result thereof, the EPA contends that it is entitled to the relief requested in the Complaint as well as $6,407,500 in fines and penalties due to the Debtors' alleged failure to comply with the requests made in the Complaint.[3]

7.    Shortly after the Montana Court entered its ruling on the Complaint, the Debtors filed these Chapter 11 Cases. During the ensuing time, the Debtors and the EPA have been negotiating, in good faith, to implement the relief granted by the Montana Court. In connection with such negotiations, attached hereto as <u>Exhibit A</u> is a certain Consent Decree (the "<u>Consent Decree</u>") which sets forth the agreement reached by the parties. Therefore, through this Motion, the Debtors seek authority to enter into the Consent Decree and comply with the terms thereunder.

## The Consent Decree

8.    As a result of good-faith, arms-length negotiations among the Debtors and the EPA, the parties have agreed to enter into the Consent Decree. The Consent Decree provides for a unique Supplemental Environmental Project to be funded by the Debtors through the establishment of a Health Care Project for medical care of the residents of the Libby Montana area. This Health Care Project will be established in lieu of the payment of various fines and penalties to the EPA by the Debtors. The chart below summarizes the terms and conditions contemplated by the Consent Decree.[4]

---

[3]  The EPA's calculation of fines and penalties is based upon the 233 days between Debtors' alleged denial of access to Debtors' property located in and near Libby, Montana, and the Montana Court's ruling on the Complaint. The 233 days are then multiplied against the maximum daily penalty rate allowed under CERCLA of $27,500.

[4]  The chart herein is only a summary of the terms of the Consent Decree. For a more detailed review of the terms of the Debtors' resolution with the EPA, please see the attached Consent Decree.

4

| Key Consent Decree Provisions | | |
|---|---|---|
| **The Resolution of the Complaint** | ! | The performance by the Debtors of all of their obligations under the Consent Decree shall fully satisfy, release and discharge all of the Debtors' civil liability for the violations alleged in the Complaint. |
| | ! | Compliance with the Consent Decree does not relieve the Debtors of any potential liabilities for costs, damages or criminal acts associated with the area in and around Libby, Montana. |
| | ! | The Debtors agree to waive any claim that the access sought and awarded to the EPA pursuant to the Complaint constitutes a taking of property for which compensation is due. |
| | ! | The EPA shall be deemed to have an allowed prepetition general unsecured claim against the Debtors' estates in the amount of $71,000. |
| **The Terms of the Consent Decree** | ! | The Debtors agree to establish a Supplemental Environmental Project ("SEP") to provide medical care for asbestos-related illnesses not covered by the Debtors' current Libby, Montana medical program.  Qualified individuals for the SEP shall include those with medical conditions set forth in the Debtors' medical program. |
| | ! | The Debtors will provide $2,750,000 to fund the SEP (the "SEP Funds") through a not-for-profit corporation incorporated, or to be incorporated, in the State of Montana (as defined in the Consent Decree, the Health Care Project or "HCP").  The Debtors' responsibilities to the SEP shall be limited to providing the SEP Funds, incorporating the HCP and providing certain oversight support.  The Debtors oversight support shall be limited to auditing the HCP's cash disbursements on a quarterly basis to ensure that its expenditures are limited to matters allowed under the Consent Decree. The HCP shall be responsible for the proper and lawful management of the SEP Funds. |
| | ! | The Debtors shall draft the corporate documents necessary to create the HCP in a manner appropriate to administer the SEP Funds, including a detailed description of corporate responsibilities, the duties of the HCP's board of trustees, as well as the Debtors' oversight responsibilities.  The Debtors are also responsible for soliciting nominees for the HCP's board of trustees and submitting such names to the EPA. |
| | ! | The Debtors shall submit a quarterly report to the EPA on or before the 30th day of January, April, July and October for the previous calender quarter for so long as the Consent Decree is in effect.  The quarterly report shall include an overview of the HCP's expenditures in the previous quarter, a certification that the HCP's expenditures were allowed under the Consent Decree and a statement indicating the remaining balance of the SEP Funds. |
| | ! | Within 30 days of the date that the SEP Funds are exhausted, the Debtors shall submit a completion report to the EPA containing a certification that the HCP has been fully implemented in accordance with the Consent Decree. |

| | |
|---|---|
| | **!** The Debtors shall notify EPA in writing of the occurrence, or expected occurrence, of an event Debtors claim to be a force majeure event as soon as practicable, but in any event within ten (10) days of when Debtors first know of the event or should have known, and the Debtors shall take all measures necessary to prevent or minimize the delay associated with such event. |
| | **!** In the event of a dispute, the Consent Decree contains certain resolution provisions as follows: |
| | i.  The parties shall submit to informal negotiations for a period of 30 days; |
| | ii. If the parties cannot resolve the dispute through informal negotiations, the position of the EPA shall be considered binding, unless, within 10 days after the conclusion of the informal negotiation period, the Debtors invoke the formal dispute resolution procedures by serving the EPA with a written statement of position (the "Statement of Position"); |
| | iii. If the EPA does not concur with the Debtors' Statement of Position, the EPA shall notify the Debtors in writing, setting forth the basis for its decision.  The decision of the EPA shall control, unless, within 15 days of receipt of the EPA's written determination, the Debtors file a notice of judicial appeal with the Montana Court setting forth the description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree; and |
| | iv. The Debtors shall bear the burden of demonstrating that the EPA's position is an incorrect interpretation of the Consent Decree. |

## Relief Requested

9.      By this Motion, the Debtors seek the entry of an order (i) approving the Debtors' execution of the Consent Decree, (ii) granting the Debtors the authority to consummate the transactions contemplated by the Consent Decree, including the payment of $2,750,000 to the SEP upon entry of the Consent Decree by the Montana Court and (iii) allowing of the EPA's $71,000 prepetition general unsecured claim.

**Statutory Authority**

10.    This Court has statutory authority to authorize and approve the Debtors' entry into the Consent Decree. 11 U.S.C. §§ 105 and 363(b)(1).  A settlement of claims and causes of action by a debtor in possession constitutes a use of property of the estate.  See Northview Motors, Inc. v. Chrysler Motors Corp., No. 98-3387, 1999 U.S. App. LEXIS 13403, at *11 (3d Cir. 1999).  If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. Id.

11.    Bankruptcy Rule 9019 provides that, after notice and a hearing, a court may approve a proposed settlement or compromise.  The decision whether to accept or reject a compromise lies within the sound discretion of the court. In re Resorts Int'l, Inc., 145 B.R. 412, 451 (Bankr. D. N.J. 1990); In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (Bankr. E.D. Pa. 1986).

12.    In reviewing a motion for approval of a settlement, bankruptcy courts must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." In re Martin, 91 F.3d 389, 393 (3d Cir. 1996).  This requires court consideration of the following criteria:  "(1) the probability of success in litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id.

13.    Approval of the Consent Decree is in the best interests of the Debtors and their estates and serves a public interest.  First, the EPA has already succeeded with its litigation in the Montana Court, including obtaining a claim against the Debtors' estates.  Approval of the Debtors'

entry into the Consent Decree will satisfy the relief requested in the Complaint without forcing protracted and expensive litigation in this Court by the EPA to enforce the Montana Court's ruling and collect its claim. In addition, compliance with the Consent Decree will eliminate a claim against the Debtors' estates, which could be allowed in the amount of $6,407,500, for the payment of only $2,750,000. This constitutes a 42% dividend on the EPA's current claim, as allowed under the Montana Court's ruling. In addition, the $2,750,000 to be paid by the Debtors in funding the SEP will be tax deductible whereas civil penalties are not normally tax deductible. Therefore, resolving this matter through the execution of the Consent Decree will serve as a settlement between the Debtors and the EPA with respect to the Complaint and the EPA's claim and is in the best interests of the Debtors and their estates.

14.     Second, allowing the Debtors to establish the HCP will help determine whether many of the residents in Libby, Montana are ill from the effects of the vermiculite mining operations and whether those same individuals may have claims against the Debtors' estates. Establishing the HCP will also have the indirect effect of determining whether such illnesses can be treated and resolved now through the HCP. Resolving these claims now will in turn potentially eliminate certain individual claims against the Debtors' estates and expedite the ultimate resolution of these Chapter 11 Cases.

15.     Finally, funding the SEP now versus paying the EPA's substantially larger claim later is clearly in the public interest. Absent the SEP, the EPA's substantial claim will not be paid by the Debtors for, perhaps, several years. Further, when otherwise paid, the funds would simply be paid into the government's general coffers. However, by funding the SEP now and establishing the HCP, the Debtors can immediately aid in the medical examination and treatment of

8

those affected by the vermiculite mining operations.  Indeed, the HCP may help save and/or prolong the lives of those living in Libby, Montana by providing them with greater health care.  The increased health care will in turn improve the standard of living of the Libby, Montana residents.  Clearly, this serves the public interest.

16.    With regard to consummating the Consent Decree, to the extent the Debtors require authority under section 363 of the Bankruptcy Code, the Debtors, by this Motion, request such authority.

## Conclusion

17.    The proposed Consent Decree is fair and equitable and is in the paramount interests of the Debtors, their estates and their creditors.  The consummation of the relief granted in the Consent Decree is also in the public interest.  In addition, the Debtors reasonably believe that the relief requested in this Motion will aid in the expeditious resolution of these Chapter 11 Cases. Accordingly, the Debtors have demonstrated a sound business justification and public interest for the execution and consummation of the Consent Decree.

## Notice

18.    Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to each of the official committees appointed in these Chapter 11 Cases and (v) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

9

## No Prior Request

19.      No prior motion or application for the relief requested herein has been made

to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order (i)

approving the Debtors execution of the Consent Decree attached as Exhibit A hereto, (ii) authorizing

the Debtors to consummate the transactions contemplated thereby, including the allowance of the

claim of the EPA, and (iii) granting such other relief as may be just or proper.


Dated: October 25, 2001

KIRKLAND & ELLIS
James H.M. Sprayregen
James W. Kapp III
Janet S. Baer
Samuel A. Schwartz
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.


/s/ David W. Carickhoff, Jr.
Laura Davis Jones (#2436)
David W. Carickhoff, Jr. (3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

10