# Exhibit A

## The Consent Decree

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civ. No. 00-167-M-DWM |
| Plaintiff, | ) | |
| vs. | ) | |
| W.R. GRACE & COMPANY and | ) | **CONSENT DECREE** |
| KOOTENAI DEVELOPMENT | ) | |
| CORPORATION, | ) | |
| Defendants. | ) | |

## I. BACKGROUND

WHEREAS, on September 14, 2000, the United States of America, on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint (the "Complaint") against Defendants W.R. Grace & Company and Kootenai Development Corporation ("Defendants") pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9601 et seq., seeking immediate, unimpeded entry and access to portions of the Libby Asbestos Site owned and/or controlled by Defendants in and near Libby, Montana, and civil penalties for failure to provide requested access;

WHEREAS, on March 9, 2001, this Court issued an Order granting the United States the requested access, thereby resolving the injunctive allegations set forth in the Complaint;

WHEREAS, Defendants and other related entities filed petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware on April 2, 2001 and have been operating as debtors-in-possession since that time;

WHEREAS, by their respective undersigned representatives, the Parties, having agreed that settlement of this matter has been negotiated by the parties in good faith and that this Consent Decree is fair, reasonable, consistent with applicable law and in the public interest, and

that entry of this Consent Decree without further litigation is the most appropriate means of resolving this matter;

THEREFORE, with the consent of the Parties to this Consent Decree, it is ORDERED, ADJUDGED, AND DECREED:

## II. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355; Sections 104(e) and 113(b) of CERCLA, 42 U.S.C. §§ 9604(e) and 9613(b); and over the parties to this action. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1395, and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b).

2.      Solely for the purposes of this Consent Decree and the underlying Complaint, Defendants waive all objections and defenses that they may have to the jurisdiction of the Court or to venue in this District. Defendants and Grace shall not challenge this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

3.      Upon approval of this Consent Decree by this Court and approval of Debtors' entry into this Consent Decree by the Delaware Court, this Consent Decree shall apply to and be binding upon the Parties and their successors and assigns. In any action to enforce the terms of this Consent Decree, Defendants or Grace shall not raise as a defense the failure of their officers, directors, agents, servants, contractors, or employees to take any actions necessary to comply with the provisions hereof. Subject to the Delaware Court's approval of Debtors' entry into this Consent Decree, this Consent Decree shall also be binding on any subsequently appointed trustee, custodian or receiver and shall survive any conversion or dismissal of the Bankruptcy Case.

4.      No change in ownership of the Site or any portion thereof shall in any way alter Defendants' or Grace's obligations or rights under this Consent Decree; nor shall any change in corporate status or ownership affect Defendants or Grace's obligations or rights under this Consent Decree.

## IV. DEFINITIONS

5.    Unless otherwise expressly stated, the terms used in this Consent Decree that are defined in CERCLA, or in regulations promulgated under CERCLA, shall have the meanings set forth in such definitions.

6.    Whenever the terms listed below are used in this Consent Decree or in any appendix attached hereto, the following definitions shall apply:

"Alternative Care" shall mean that care provided in an extended care facility or a skilled nursing facility as described in W.R. Grace's Libby Medical Plan.

"ATSDR" shall mean the Agency for Toxic Substances and Disease Registry.

"Attorneys' Fees" shall mean, as to the United States, the costs incurred by the Department of Justice in reviewing, investigating, and litigating this case, and as to Defendants, the cost incurred by Defendants' outside counsel in reviewing, investigating, and litigating this case.

"Bankruptcy Case" shall mean those bankruptcy cases presently pending in the Delaware Court captioned In re W.R. Grace & Co., et al., Case No. 01-01139 (JJF)(D. Del.).

"CERCLA" means the Comprehensive Environmental Response, Conservation and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675.

"Consent Decree" or "Decree" shall mean this Consent Decree and all appendices attached hereto. In the event of conflict between this Consent Decree and any appendix, the Consent Decree controls.

"Coverage" shall mean the provision of the following medical benefits: 1) For those individuals meeting the terms of eligibility for screening under ATSDR's 2000-2001 health screening program in Libby, Montana, the payment of the costs associated with an annual screening for asbestos-related disease which results in Negative Findings; 2) For those individuals meeting the terms of eligibility for screening under ATSDR's 2000-2001 health screening program in Libby, Montana, payment of the costs associated with an annual screening for asbestos-related disease which results in Equivocal Findings and the costs of any further medical testing prescribed by a qualified doctor which results in Negative Findings; 3) For those

-3-

1 people who are Eligible Individuals with Qualifying Medical Conditions under W.R. Grace's

2 Libby Medical Program, the payment of a subsidy, based on income, for costs associated with

3 Alternative Care beyond that provided under W.R. Grace's Libby Medical Program; and 4) the

4 provision of any other medical service, as approved by the board of trustees, to Eligible

5 Individuals with Qualifying Medical Conditions that does not overlap those services provided for

6 by W.R. Grace's Libby Medical Program.

7      "Day" shall mean a calendar day unless expressly stated to be a Working Day. "Working

8 Day" shall mean a day other than a Saturday, Sunday or federal or state holiday. In computing

9 any period of time under this Consent Decree, where the last day would fall on a Saturday,

10 Sunday or federal or state holiday, the period will run until the close of business of the next

11 Working Day.

12      "Debtors" shall mean the debtors in the Bankruptcy Case.

13      "Delaware Court" shall mean the United States District Court for the District of Delaware

14 where the Bankruptcy Case is currently pending.

15      "Defendants" shall mean W.R. Grace & Company (W.R. Grace & Co., a Delaware

16 corporation) and Kootenai Development Corporation.

17      "Eligible Individual" shall mean an individual who worked in the Libby Mine or Mill, or

18 was the spouse or legal dependent of someone at the time he or she worked in the Libby Mine or

19 Mill, or lived or worked within a 20-mile radius of the Libby Mine or Mill for at least six (6)

20 months at any time before January 1, 2000, and who meets the other criteria described in W.R.

21 Grace's Libby Medical Program.

22      "EPA" shall mean the United States Environmental Protection Agency and any successor

23 departments or agencies of the United States.

24      "Equivocal Findings" shall mean results of medical testing which do not conclusively

25 show a Qualifying Medical Condition, but which lead a qualified physician to determine that

26 further medical testing is necessary.

27      "Establishment Costs" shall mean those costs incurred in preparation of corporate and

28 contractual documents as required by Paragraph 14 and those costs associated with solicitation

-4-

1  for board members pursuant to Paragraph 17.

2          "Grace" shall mean W.R. Grace & Co.-Conn.

3          "Health Care Project" or "HCP" shall mean the non-profit Montana corporation formed

4  to undertake the SEP set forth in Section VI of this Consent Decree.

5          "KDC" shall mean Defendant Kootenai Development Corporation.

6          "Negative Findings" shall mean results of medical testing which conclusively show that

7  an Eligible Individual does not have a Qualifying Medical Condition.

8          "Oversight Costs" shall mean those costs incurred by Grace in ensuring that the SEP

9  Funds are spent on medical services falling within the definition of "Coverage," as required by

10  Paragraph 10.

11          "Paragraph" shall mean a portion of this Consent Decree identified by an arabic number.

12          "Parties" shall mean the parties to this Consent Decree: the United States, W.R. Grace &

13  Company, Grace, and Kootenai Development Corporation.

14          "Plaintiff" shall mean the United States.

15          "Qualifying Medical Conditions" shall mean those medical conditions defined as

16  Qualifying Medical Conditions within W.R. Grace's Libby Medical Program.

17          "Section" shall mean a portion of this Consent Decree identified by a roman numeral.

18          "SEP Funds" shall mean the $2,750,000 placed into an escrow account by Grace pursuant

19  to Section VI of this Consent Decree.

20          "Site" shall mean the Libby Asbestos Site, located near the town of Libby, Montana.  The

21  Site is identified with EPA identification number BC.

22          "Supplemental Environmental Project" or "SEP" shall mean an environmentally

23  beneficial project not otherwise required by law, as described in the Final EPA Supplemental

24  Environmental Projects Policy, 63 Fed. Reg. 24,796 (1998).

25          "United States" shall mean the United States of America and its departments and

26  agencies, including the EPA.

27          "W.R. Grace's Libby Medical Program" shall mean the plan entitled "GRACE, Libby

28  Medical Program as of April 3, 2000, revision 004."

## V.  CIVIL PENALTY/ALLOWED CLAIM

7.      Upon this Court's approval of this Consent Decree and the Delaware Court's approval of Debtors' entry into this Consent Decree, Plaintiff shall be deemed to have an allowed general unsecured claim against Grace and KDC in the amount of $71,000 in the Bankruptcy Case as a civil penalty.  Plaintiff's Proof of Claim in the Delaware Court shall include a general unsecured claim in this amount.  Subject to the Delaware Court's approval of Debtors' entry into this Consent Decree, EPA's allowed general unsecured claim in the amount of $71,000 described herein shall receive the same treatment, without discrimination, as other holders of allowed general unsecured claims and shall not be subordinated.  Any payments to the United States on this allowed claim shall be made in the same manner and at the same time as payments being made on any other allowed unsecured claims in the Bankruptcy Case.

8.      Civil penalties paid pursuant to this Consent Decree shall not be deductible for purposes of Federal or State taxes.

## VI.  SUPPLEMENTAL ENVIRONMENTAL PROJECT

### A.      Supplemental Environmental Project Description

9.      Grace will implement a SEP, as described in this Section VI, in which it will form a Montana non-profit corporation (referred to herein as the "Health Care Project" or "HCP") and provide $2,750,000 in funding to the HCP to establish and administer a program to pay for medical care for asbestos-related illnesses not covered by W.R. Grace's Libby Medical Program, and related administrative expenses.  Specifically, the HCP will use the SEP Funds to pay for Coverage, as defined in this Consent Decree, and related administrative expenses.

10.      Grace's responsibilities related to the SEP shall be limited to (a) providing the SEP Funds and any other establishment or oversight support specifically required in this Consent Decree, (b) forming the HCP (including soliciting trustee nominations), consistent with this Consent Decree and applicable state or federal law, (c) enforcing the terms of the contract between Grace and HCP, and (d) auditing the HCP's cash disbursements for the SEP on a quarterly basis to ensure that the HCP's expenditures are for Coverage or other expenditures allowed under this Consent Decree, provided that Grace shall not be responsible for auditing any

other aspect of the operation of the HCP, including, but not limited to, issues involving the actual amounts paid or reimbursed by the HCP for Coverage. This SEP is not intended to create any responsibilities or liabilities for Grace beyond the responsibilities specifically enumerated herein.

11.     The HCP shall assume and retain the responsibilities and liabilities regarding the implementation of the SEP and the expenditure of SEP Funds including, but not limited to, (a) investing the SEP Funds, (b) establishing and implementing standards and procedures for the distribution of the SEP Funds, (c) establishing and implementing standards and procedures for the appointment or election of additional or replacement members of the board of trustees, (d) satisfying all applicable legal and tax filing requirements, (e) paying any applicable taxes, and (f) purchasing and retaining appropriate directors' and officers' liability insurance (and a crime bond) from a third-party insurer, which shall provide at least $2 million of coverage for any event that may be a crime or a breach of any fiduciary duty involving the SEP and the proper and lawful management of the SEP Funds. The HCP will, at its sole discretion, set priorities for expenditures among the four categories of Coverage specified in Section IV, determine the eligibility of specific individuals for such Coverage, and establish the appropriate amount to be paid or reimbursed for such Coverage.

12.     If, at any time, the HCP materially breaches its obligations to Grace set forth in the contract executed pursuant to Paragraph 15, Grace will, in consultation with EPA, enforce the contract. If Grace believes the HCP is unable to perform its obligations under the contract and, after consultation EPA agrees, the HCP shall (pursuant to the terms of the contract) place the remaining SEP Funds in an escrow account and EPA and Grace shall develop and implement an alternate SEP. In no event shall Grace be liable for any acts or omissions of the HCP during a period in which required insurance policies have been allowed to lapse.

**B.      HCP Formation and Funding Requirements**

13.     Not later than thirty (30) days after entry of this Consent Decree, Grace shall place $2,750,000 in an interest bearing escrow account at a Bank (to be mutually agreed upon by the Parties not later than fifteen (15) days after entry of this Consent Decree) to be used to fund the

-7-

1    SEP described in this Section. The escrow agreement shall provide that the SEP Funds.

2    including any accrued interest. will be transferred to the HCP after the HCP selects a program

3    manager for the project.

4         14.    Not later than thirty (30) days after entry of this Consent Decree. Grace shall

5    submit to EPA for review and approval drafts of necessary corporate documents to create the

6    HCP to administer expenditures of the Funds for Coverage as defined in this Consent Decree.

7    Not later than thirty (30) days after such approval. Grace shall file all necessary papers to create

8    the HCP.

9         15.    Not later than sixty (60) days after entry of this Consent Decree, Grace shall

10   submit to EPA for review and approval a draft contract between Grace and the HCP that shall

11   detail corporate responsibilities. duties of the HCP's board of trustees. and Grace's oversight

12   responsibilities. That contract shall be consistent with the responsibilities of Grace and the HCP

13   set forth in Paragraphs 10 and 11. and shall require the HCP to meet the program administration

14   deadlines set forth in Paragraph 16. Not later than ninety (90) days after EPA approval of the

15   draft contract. Grace shall submit to EPA an executed contract with HCP in substantially the

16   same form as the EPA-approved draft contract, except as modified by the agreement of EPA,

17   Grace. and HCP.

18        16.    The contract between Grace and the HCP shall contain the following program

19   administration deadlines: (a) the HCP's board of trustees to select a program administrator within

20   sixty (60) days after execution of the contract; (b) the board of trustees to approve a medical plan

21   to implement the Coverage within one hundred twenty (120) days after execution of the contract;

22   and (c) implementation of the medical plan within one hundred and fifty (150) days after

23   execution of the contract.

24        17.    Not later than ninety (90) days after entry of this Consent Decree. Grace shall

25   submit to EPA the names of nominees for board of trustees positions. such nominations having

26   been solicited by advertisements in local newspapers. The United States will notify Grace of

27   board of trustee selections within thirty (30) days of receipt of the nominations.

28

18.    If Grace terminates W.R. Grace's Libby Medical Program, the board of trustees, at its sole discretion, can expand the coverage of the medical plan beyond the categories set forth in Section IV's definition of "Coverage."

19.    Grace's total expenditure for the SEP shall be limited to the sum of: (a) the $2.75 million payment referenced in Paragraph 9; (b) Establishment Costs over $25,000; and (c) any Oversight Costs up to $10,000 per year. Establishment Costs up to $25,000 and Oversight Costs over $10,000 per year shall be paid by, or reimbursed by, the HCP out of the SEP Funds.

## C.    Use of Existing Non-Profit Corporation to Implement the SEP

20.    Not later than ten (10) days after entry of this Consent Decree, the Parties may agree, in writing, that an existing non-profit corporation shall implement the SEP instead of the new non-profit corporation that would otherwise be created for this purpose. In this event, Grace would be under no obligation (a) to form a Montana corporation as otherwise required in Paragraphs 9 and 14 or (b) to submit names of nominees for board of trustees positions as otherwise required in Paragraph 14. If an existing non-profit corporation is selected under the authority of this Paragraph, that organization shall have the role ascribed to the HCP in this Section, including the responsibilities and liabilities set forth in Paragraph 11. Moreover, Grace shall have the same funding, contractual and auditing responsibilities towards the existing non-profit corporation that they would otherwise have had toward the HCP in Paragraph 10. The draft and final contracts between Grace and the existing non-profit corporation must be submitted to EPA on the same dates that Grace's contract with the HCP would have been submitted under Paragraph 15, and must contain program administration deadlines that would have been required under Paragraph 16.

## D.    General Supplemental Environmental Project Provisions

21.    By signing this Consent Decree, Defendants and Grace certify that they are not required, and have no liability, under any federal, state or local law or regulation or pursuant to any agreements or orders of any court, to perform or develop the SEP identified in Section VI of this Consent Decree. Defendants and Grace further certify that they have not received, and will

not in the future seek or receive, credit as a SEP or other penalty offset in any other enforcement action for the SEP identified in Section VI of this Consent Decree.

22.    Grace shall submit a Quarterly Report to EPA on or before the 30th of January, April, July, and October for the previous calendar quarter while this Consent Decree is in effect. The Quarterly Report shall include an overview of the HCP's expenditures in the previous quarter (including the types of coverage provided in the quarter and the amount spent for that coverage), a certification that the HCP's expenditures were for Coverage or other expenditures allowed under the Consent Decree. and a statement indicating the remaining balance available to be spent.

23.    Grace shall submit a SEP Completion Report to EPA within thirty (30) days of the date the SEP Funds are exhausted. The SEP Completion Report shall contain a certification that the project has been fully implemented pursuant to the provisions of this Consent Decree.

24.    The deadlines established in this Section may be modified with the mutual written consent of the Parties.

25.    Any written public statement made by Defendants or Grace or their representatives regarding or otherwise referencing the SEP undertaken pursuant to this Section of the Consent Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action brought by the United States." In any oral public statement publicizing the SEP or the results of the SEP within one year from the date of entry of this Consent Decree. Defendants or Grace shall state in a prominent manner that the SEP is being undertaken, or was undertaken. as part of the settlement of an enforcement action.

## VII. FORCE MAJEURE

26.    Defendants or Grace shall notify EPA in writing of the occurrence, or expected occurrence, of an event Defendants or Grace claim to be a force majeure event as soon as practicable, but in any event within ten (10) days of when Defendants or Grace first knew of the event. or should have known of the event by the exercise of due diligence. In this notice. Defendants or Grace shall specifically reference this provision of the Consent Decree and describe the anticipated length of the delay. the cause or causes of the delay. the measures taken

-10-

or to be taken by Defendants or Grace to prevent or minimize the delay, and the schedule by which those measures will be implemented. Defendants and Grace shall adopt all reasonable measures to avoid and minimize such delays

27.     Failure by Defendants or Grace to comply with the above notice requirements shall constitute a waiver of their right to assert force majeure. Notification of any delay, in and of itself, shall not extend the time allowed for meeting any requirement.

28.     If EPA agrees that the violation has been or will be caused solely by circumstances beyond the control of, or any entity controlled by, Defendants or Grace, including their contractors, and that they could not have foreseen and prevented such delay by the exercise of due diligence, EPA shall extend in writing the time for compliance with the particular requirement(s) affected by the force majeure event by a period not exceeding the length of the delay actually caused by such circumstances. Such an extension does not alter the schedule for any other part of this Consent Decree, except that EPA shall extend the time for performance of other tasks under this Consent Decree that EPA determines will necessarily be delayed as a result of the force majeure.

29.     If EPA does not agree with a claim of force majeure, the Defendants or Grace may invoke the Dispute Resolution procedures of this Consent Decree. If the Court determines that the violation has been or will be caused solely by circumstances beyond the control of Defendants or Grace or any entity controlled by Defendants or Grace, including their contractors, and that Defendants or Grace could not have foreseen and prevented such delay by the exercise of due diligence, Defendants and Grace shall be excused as to that violation and delay, but only for the delay actually caused by such circumstances.

30.     Defendants and Grace shall have the burden of demonstrating that the violation has been or will be caused solely by circumstances beyond the control of Defendants or Grace or any entity controlled by them, including their contractors, that the duration of the delay caused by such circumstances is or was warranted solely by reason of such circumstances, and that they could not have foreseen and prevented such delay by the exercise of due diligence. Defendants and Grace also shall bear the burden of proving the duration and extent of any delay attributable

-11-

to such circumstances. Absent written approval by the United States. an extension of one compliance date based on a particular event shall not of itself result in an extension of a subsequent compliance date or dates.

31.    Unanticipated or increased costs or expenses associated with the performance of Defendants' or Grace's obligations under this Consent Decree shall not constitute circumstances beyond their control. or serve as a basis for an extension of time under this Section.

## VIII. DISPUTE RESOLUTION

32.    Unless otherwise expressly provided for in this Consent Decree, Defendants and Grace shall have the right to dispute any decision of EPA under this Consent Decree. and the provisions of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the provisions in this Section shall not apply to actions by the United States to enforce obligations of Defendants or Grace that have not been disputed in accordance with this Section.

33.    Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed thirty (30) days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when Defendants or Grace send a written Notice of Dispute to the United States. Defendants or Grace must send the Notice of Dispute to the United States within fifteen (15) days of the decision of EPA that it seeks to dispute.

34.    In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph. then the position advanced by EPA shall be considered binding unless. within ten (10) days after the conclusion of the informal negotiation period. Defendants or Grace invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute. including, but not limited to. any factual data. analysis or opinion supporting that position. any supporting documentation relied upon by Defendants or Grace. and any actions which Defendants or Grace consider necessary to resolve the dispute.

35.     An administrative record of the dispute shall be maintained by EPA. The administrative record shall include the Statement of Position and all of the information provided by Defendants or Grace pursuant to the preceding Paragraph, as well as any other documents relied upon by EPA in making its final decision pursuant to the next Paragraph. Where appropriate, EPA shall allow submission of supplemental statements of position, data, reports, or affidavits, by the parties to the dispute.

36.     If EPA concurs with the position of Defendants or Grace, EPA shall provide them with written notice of such concurrence. If EPA does not concur with their position, EPA shall notify them in writing, setting forth the basis of its decision. The decision of EPA shall control unless, within fifteen (15) days of receipt of EPA's written determination, Defendants or Grace files a notice of judicial appeal with this Court which shall set forth a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to the notice of judicial appeal.

37.     In any such judicial appeal, Defendants or Grace shall have the burden of demonstrating that the United States' position is an incorrect interpretation of the Consent Decree. The Court shall base its determination pursuant to this Paragraph on the administrative record. The Court may grant relief, or may, upon motion of either party or on its own motion, remand the dispute for further consideration by EPA, including supplementation of the administrative record as appropriate.

## IX. PUBLIC ACCESS TO INFORMATION

38.     All information and documents Defendants or Grace submit to EPA pursuant to this Consent Decree shall be subject to public inspection, unless Defendants or Grace identify and support a claim for confidential business information in accordance with 40 C.F.R. Part 2, and rules adopted thereto.

39.     If no claim of confidentiality accompanies documents or information when they are submitted to EPA, the public may be given access to such documents or information without further notice in accordance with 40 C.F.R. Part 2, Subpart B.

# X. NOTICE

40.    Unless otherwise provided herein, notifications to or communications with EPA, or the Department of Justice, shall be deemed submitted on the date they are postmarked and sent either by overnight receipt mail service or by certified or registered mail, return receipt requested.

41.    Unless this Consent Decree states otherwise, all notices, submissions, or communications in connection with this Consent Decree shall be addressed as follows:

As to the EPA:

> Matthew Cohn
> Enforcement Attorney
> U.S. Environmental Protection Agency
> Region VII
> 999 18th Street
> Denver, Colorado 80202-2405

As to the Department of Justice:

> Chief, Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611
> Ben Franklin Station
> Washington, D.C. 20044-7611
> (Reference: DOJ Case No. 90-11-2-07106/1)

As to Defendants and Grace:

> William M. Corcoran
> Vice President Regulatory Affairs
> W.R. Grace & Co.
> 7500 Grace Drive
> Columbia, Maryland 21044

> Robert A. Emmett
> Senior Environmental Counsel
> W.R. Grace & Co.
> 7500 Grace Drive
> Columbia, Maryland 21044

42.    The Quarterly Reports required by Paragraph 22, the Completion Report required by Paragraph 23, and the certification required by Paragraph 52 shall be certified by a responsible corporate official, and accompanied by the following certification:

> I certify that the information contained in or accompanying this submission is true, accurate and complete. This certification is based on my personal preparation, review, or analysis of the submission, and/or supervision of persons who, acting on my direct

-14-

instructions, made the verification that the submitted information is true, accurate and complete.

## XI. GENERAL PROVISIONS

43.    Complete performance by Defendants and Grace of all of their obligations under this Consent Decree shall fully satisfy, release and discharge all civil liability of the Defendants and Grace for the violations alleged in the Complaint in this action through the date of lodging of the Consent Decree. However, nothing in the Consent Decree is intended, nor shall be construed, to operate in any way to resolve any other liability of Defendants or Grace, including but not limited to:

a.    Liability for costs incurred in responding to releases or threats of releases of hazardous substances at the Libby Asbestos Site, including enforcement costs EPA has incurred in obtaining access at the Libby Asbestos Site other than Attorneys' Fees;

b.    Liability for damages to natural resources; and

c.    Any criminal liability.

44.    Each Party shall bear its own Attorneys' Fees incurred in this action. Defendants and Grace waive the right to assert that any enforcement costs EPA has incurred for which reimbursement is sought in United States v. W.R. Grace & Company, et al., Civil Action No. 01-72-M-DWM (D. Mont.) are in fact costs that could or should have been sought or recovered as part of the instant case. Defendants and Grace reserve any other arguments they may have regarding the recoverability of EPA enforcement costs.

45.    This Consent Decree does not limit or affect the rights of Defendants or Grace or the United States as against any third parties.

46.    Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Decree.

47.    Defendants and Grace agree to waive any claim that the access sought and awarded to the United States in this action constitutes a taking of property for which compensation is due, including any claims alleging such a taking under the Tucker Act, 28 U.S.C. § 1491, or the United States Constitution.

48.     Any modification of this Consent Decree must be in writing and approved by the Court. Any such written modification must be agreed to and signed by all Parties to this Consent Decree.

49.     The provisions of this Consent Decree are not severable. The Parties' consent hereto is conditioned upon the entry of the Consent Decree in its entirety without modification, addition, or deletion except as agreed to by all Parties in writing.

50.     The Parties stipulate that this Consent Decree is entered into for purposes of settlement only and neither the fact that a party has entered into this Consent Decree, nor any of the facts stipulated herein, may be used in this or any other proceeding except to enforce the terms hereof by the parties to this agreement.

## XII. DOCUMENT RETENTION

51.     Defendants and Grace agree that they shall preserve, during the pendency of this Consent Decree and for a minimum of three (3) years after its termination, at least one legible copy of all records and documents, including computer tapes, in the possession, custody, or control of its divisions, employees, agents, accountants, contractors, and attorneys, that relate to the performance of their obligations under this Consent Decree, including, but not limited to, documents embodying or relating to the results of any sampling, tests, or other data or information generated or acquired by them, or on their behalf.

## XIII. RETENTION OF JURISDICTION

52.     This Court shall retain jurisdiction to modify or enforce the terms of this Consent Decree or to take any action necessary or appropriate for its construction or execution.

## XIV. TERMINATION

53.     This Consent Decree shall terminate after Defendants and Grace have completed all actions required of them in the Consent Decree. At such time, Defendants and Grace shall certify to EPA that they have completed their obligations under the Consent Decree, including the performance of the SEP required in Section VI. If EPA agrees, the United States, Defendants, and Grace shall jointly petition the Court to terminate the Consent Decree. If EPA does not agree, the United States shall provide Defendants and Grace with written notification

stating the reasons why this Consent Decree should not be terminated. Upon receipt of such notification, any party may submit the issue for Dispute Resolution pursuant to Section VII of this Consent Decree. This Consent Decree shall survive confirmation of Debtors' plan of reorganization in the Bankruptcy Court, unless it has been terminated pursuant to this Paragraph prior to such confirmation.

## XV. JUDICIAL APPROVAL AND OPPORTUNITY FOR PUBLIC COMMENT

54.    Debtors' entry into the settlement reflected in this Consent Decree shall be subject to the Delaware Court's approval pursuant to 11 U.S.C. §§ 105, 363 and 502 and Bankruptcy Rules 2002, 6004 and 9019. Debtors shall seek the Delaware Court's approval for Debtors' entry into this Consent Decree as soon as practicable and shall present such evidence and legal argument as is reasonably necessary to obtain such approval.

55.    This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days to enable the United States to seek public notice and comment in accordance with Department of Justice policy and the provisions of 28 C.F.R. § 50.7 and to enable the Parties to seek the Delaware Court's approval of Debtors' entry into this Consent Decree. The United States reserves the right to withdraw or withhold its consent if the comments received disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper or inadequate. As early as practicable after the United States reviews the public comments and the Delaware Court has issued its decision on Debtors' request for approval of their entry into the Consent Decree, the United States will inform this Court (a) whether any public comments indicate to the United States that the Consent Decree is inappropriate, improper or inadequate and (b) whether the Delaware Court has approved Debtors' entry into this Consent Decree. If the United States does not exercise its right under this Paragraph to withdraw or withhold its consent to the Consent Decree and the Delaware Court approves Debtors' entry into this Consent Decree this Court may in its discretion enter the Consent Decree. This Consent Decree shall become effective upon entry by this Court.

56.    If for any reason the Delaware Court should decline to approve Debtors' entry into this Consent Decree in the form presented or this Court should decline to approve this Consent

-17-

Decree in the form presented, this agreement is void and the terms of the agreement may not be used as evidence in any litigation between or among any of the Parties in this action.

57.     Upon the Delaware Court's approval of Debtors' entry into this Consent Decree, Defendants and Grace consent to the entry of this Consent Decree by this Court without further notice. Defendants and Grace further agree not to oppose entry of this Decree by this Court or to challenge any provision of this Decree, unless the United States has notified them in writing that the United States can no longer support entry of the Consent Decree based on facts or considerations which indicate that this Consent Decree is inappropriate, improper or inadequate.

## XVI. SIGNATORIES

58.     The signatories for the Parties each certify that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such party to this Decree.


SO ORDERED THIS ___ DAY OF _____, 2001.



_____
United States District Judge

-18-

1  Through their undersigned representatives, the Parties agree and consent to entry of the foregoing
2  Consent Decree in United States of America v. W.R. Grace & Company and Kootenai Development
   Corporation:

3

4  FOR PLAINTIFF UNITED STATES OF AMERICA:

5                                                      Date: 10/24/01

6  ROBERT D. BROOK
7  Assistant Section Chief
   Environmental Enforcement Section
   United States Department of Justice
8

9                                                      Date: 10/22/01

10  JAMES D. FREEMAN
    Trial Attorney
11  United States Department of Justice
    Environmental Enforcement Section
12  999 18th Street, Suite 945NT
    Denver, Colorado 80202
13  (303) 312-7376

14
    WILLIAM W. MERCER
15  United States Attorney
    District of Montana
16

17                                                     Date: 10-22-01

18  By:
    VICTORIA FRANCIS
19  Assistant United States Attorney
    District of Montana
20  2929 Third Avenue North, Suite 400
    Billings, Montana 59101
21  (406) 657-6101

22

23

24

25

26

27

28

                              -19-

Through their undersigned representatives, the Parties agree and consent to entry of the foregoing Consent Decree in <u>United States of America v. W.R. Grace & Company and Kootenai Development Corporation</u>:


_____                    Date: _10 / 12 / 01_
CAROL RUSHIN
Assistant Regional Administrator, ECEJ
U.S. Environmental Protection Agency
Region VIII
999 18th Street
Denver, Colorado 80202-2405


_____                    Date: _10 / 11 / 01_
MATTHEW COHN
ANDREA MADIGAN
Enforcement Attorneys
U.S. Environmental Protection Agency
Region VIII
999 18th Street
Denver, Colorado 80202-2405

Through their undersigned representatives, and entry into the foregoing by the Defendants and Grace subject to the approval of the Delaware Court, the Parties agree and consent to entry of the foregoing Consent Decree in United States of America v. W.R. Grace & Company and Kootenai Development Corporation:

Date: _10/18/02_

WILLIAM M. CORCORAN
Vice President
W.R. Grace & Co.
7500 Grace Drive
Columbia, Maryland 21044

Date: _10/18/02_

WILLIAM M. CORCORAN
Vice President
W.R. Grace & Co.-Conn.
7500 Grace Drive
Columbia, Maryland 21044

-21-

Through their undersigned representatives, and entry into the foregoing by the Defendants subject to the approval of the Delaware Court, the Parties agree and consent to entry of the foregoing Consent Decree in <u>United States of America v. W.R. Grace & Company and Kootenai Development Corporation</u>:

Date: OCT 19 2001

ALAN R. STRINGER
President
Kootenai Development Corporation
P.O. Box 695
Libby, Montana 59923

-22-