(iii) Workers compensation insurance as required by applicable Florida law (or employer's liability insurance with respect to any employee not covered by workers' compensation with minimum limits of One Hundred Thousand Dollars ($100,000) per accident with respect to any employee not covered by workers' compensation); and

(iv) Professional liability insurance (including coverage for the Scope of Services to be performed under this Agreement) with minimum limits of $500,000.00 per claim and $500,000.00 per annual aggregate for protection from negligent acts, errors and omissions of Consultant from or in connection with the performance of Consultant's services hereunder.

b. All such insurance required in Paragraph a. shall be with companies and on forms acceptable to Owner, shall name Owner, Owner's Representative, their parent companies, and the related, affiliated and subsidiary companies of each and the officers, directors, agents, employees and assigns of each as additional insureds (except for such insurance provided under Paragraph a (iii) and (iv), and shall provide that the coverage thereunder may not be reduced or canceled unless thirty (30) days' prior written notice thereof is furnished to Owner. Certificates of insurance (and copies of all policies, if required by the Owner) shall be furnished to the Owner. In the event of any cancellation or reduction of coverage, the Consultant shall obtain substitute coverage as required hereunder, without any lapse of coverage to Owner whatsoever.

c. Consultant shall defend (if required by Owner), indemnify and hold Owner, their parent company, the subsidiary, related and affiliated companies of each, and the officers, directors, agents, employees and assigns of each, harmless from and against any and all claims, demands, suits, judgments, damages to persons or property, injuries, losses, or expenses of any nature whatsoever (including attorneys' fees) arising directly or indirectly from or out of: any negligent act or omission of Consultant, its Subconsultants, and their officers, directors, agents or employees, any failure of Consultant to perform its services hereunder in accordance with generally accepted professional standards, any material breach of Consultant's representations as set forth in this Agreement or any other failure of Consultant to comply with the obligations on its part to be performed hereunder. The provisions of this paragraph shall survive the expiration or sooner termination of this Agreement.

9. Representations. Consultant hereby represents to Owner:

a. that it has the experience and skill to perform the services required to be performed by it hereunder;

b. that it shall provide and employ in connection with the performance of such services personnel qualified and experienced in their profession; it being understood that the Owner may at any time require the Consultant to remove, and the Consultant shall forthwith remove, any person employed in connection with the performance of the services for any reason whatsoever;

c. that it shall design to and comply with all applicable federal, state, and local laws and codes, including, without limitation, all professional registration and licensing requirements (both corporate and individual for all required basic disciplines) in effect during the term of this Agreement, and shall, if requested by Owner, provide certification of compliance with all registration and licensing requirements;

d. that it shall perform said services in accordance with generally accepted professional standards, in the most expeditious and economical manner, and to the extent consistent with the best interests of Owner;

e. that it is adequately financed to meet any financial obligations it may be required to incur hereunder; and

WDW-1
000993

f.  that the designs, plans, drawings, specifications or other work product of Consultant shall not call for the use of nor infringe any patent, trademark, service mark, copyright or other proprietary interest claimed or held by any person or business entity absent prior written consent from Owner.

10.  **Determination of Disputes**.  Any dispute, difference, claim or counterclaim between Owner and Consultant arising out of or in connection with this Agreement which cannot be amicably resolved by the parties shall be submitted to the Circuit Court in and for Orange County, Florida (or if the Circuit Court shall not have jurisdiction over the subject matter thereof, then to such other court sitting in said county and having subject matter jurisdiction) for trial and determination by the court sitting without jury.  Said parties hereby consent to the jurisdiction of such court and to the service of process outside the State of Florida pursuant to the requirements of such court in any matter so to be submitted to it, and they expressly waive the right to a jury trial.

11.  **Suspension or Termination**.  Anything herein to the contrary notwithstanding, Owner shall, in its sole discretion and with or without cause, have the right to suspend or terminate this Agreement upon three (3) days' prior written notice to Consultant.  In the event of suspension or termination, Owner's sole obligation and liability to Consultant shall be to pay to Consultant any amounts for services performed and Reimbursable Expenses incurred (to the extent Reimbursable Expenses are allowed Under Article 4), through the date of termination, and for which Owner has not reimbursed Consultant on any previously submitted invoice, in accordance with the terms of Article 4. Unless the Owner authorizes the Consultant to the contrary, Consultant shall not perform any services and shall not be entitled to receive payment from Owner on account of any such services performed during the period of suspension.  Upon receipt of notice from Owner that the suspension has been cancelled, Consultant shall perform its remaining services in accordance with the terms of this Agreement and Consultant shall be entitled to a time extension equal to the period of suspension.

12.  **Assignment**.  This Agreement is for the personal services of Consultant and may not be assigned by Consultant in any fashion, whether by operation of law, or by conveyance of any type, including without limitation, transfer of stock in Consultant, without the prior written consent of Owner, which consent Owner may withhold in its sole discretion.  Owner may assign all or any portion of this Agreement at any time without Consultant's consent. Upon such assignment, and provided the Assignee shall, in writing, assume Owner's obligations under this Agreement, Owner shall be automatically released and discharged from any and all of its obligations under this Agreement, and Consultant shall thenceforth look solely to the Assignee for performance of Owner's obligations hereunder.

13.  **Notice**.

a.  Notices required or permitted to be given hereunder shall be in writing, may be delivered personally or by mail, facsimile, cable, or courier service, and shall be deemed given when received by the addressee.  Notices shall be addressed as follows:

    If to Owner:        Walt Disney World Co.
                        P. O. Box 10000
                        Lake Buena Vista, FL 32830-1000
                        Attention:   Lee Greenwood
                                     Manager, Contract Services

    If to Consultant:   A/R/C Associates, Incorporated
                        601 N. Fern Creek Ave. Su. 100
                        Orlando, FL 32803-4899

or to such other address as either party may direct by notice given to the other as hereinabove provided.

b.  Notwithstanding the foregoing, any notice sent to the last designated address of the party to whom a notice may be or is required to be delivered hereunder shall not be deemed ineffective if actual delivery

cannot be made due to a change of address of the party to whom the notice is directed or the failure or refusal of such party to accept delivery of the notice.

14. <u>Promotion</u>. Consultant shall acquire no right under this Agreement to use, and shall not use, the name of the Owner, the name "Disney" (either alone or in conjunction with or as a part of any other word or name) or any fanciful characters or designs of The Walt Disney Company or any of its related, affiliated or subsidiary companies: in any of its advertising, (video, stills, film, etc.), publicity, or promotion; to express or imply any endorsement by Owner of its services; or in any other manner whatsoever (whether or not similar to the uses hereinabove specifically prohibited).

15. <u>Subconsultants/Separate Consultants</u>. If the Consultant desires to employ Subconsultants in connection with the performance of its services hereunder:

a. Any proposed Subconsultants shall be submitted to Owner for approval prior to Consultant entering into a Subconsultant Agreement. Such approval by the Owner shall not be unreasonably withheld. The Owner shall not be liable to the Consultant in any manner arising out of the Owner's objection to a proposed Subconsultant.

b. Consultant shall coordinate the services and work product of any Subconsultants, and remain fully responsible for the professional quality, technical accuracy and the coordination of all designs, drawings, specifications, and other services furnished by Consultant or its Subconsultants, and Consultant shall review and approve any designs, drawings, specifications, shop drawings, submittals, or other services produced or furnished by an Subconsultants prior to submittal to the Owner. Consultant shall correct or revise any of its errors or deficiencies in the designs, drawings, specifications or other services produced pursuant to this Agreement and shall provide Owner with such corrected or revised designs, drawings, or specifications incorporating such corrections or revisions at its sole cost and expense.

c. Any Subconsultant Agreement shall reflect the terms of this Agreement and require the Subconsultant to the extent of the services to be performed by the Subconsultant, to assume toward the Consultant all the obligations which Consultant by this Agreement assumes towards the Owner, it being understood that nothing herein shall in any way relieve Consultant from any of its duties under this Agreement.

d. Consultant shall cooperate at all times with Owner, and cooperate and coordinate with, and incorporate the work product of, any Separate Consultant, in any fashion appropriate or necessary to facilitate the design and construction of the Project within the Project Construction Budget and Schedule. In the event Owner so elects and upon written mutual consent (which consent shall not be unreasonably withheld), as evidenced by an amendment to this Agreement, Consultant shall accept an assignment of any agreement or contract Owner may have with any Separate Consultant, by which Consultant shall assume any and all obligations of Owner and shall be fully responsible for any such Separate Consultant as a Subconsultant.

16. <u>Key Employees</u>. Owner has relied upon and hired Consultant because of the involvement of certain individuals employed by Consultant identified on Exhibit D attached hereto and incorporated herein by reference, and Consultant agrees that the persons (Key Employees) listed on Exhibit D shall be assigned to the Project. Consultant shall not remove any Key Employee from the Project absent prior written consent of Owner for any reason other than termination of employment.

17. <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the law of the State of Florida, to the exclusion of Florida rules of conflicts of laws.

18. <u>Miscellaneous Provisions</u>.

a. If this Agreement contains any provisions construed to be unenforceable or unlawful by a court of competent jurisdiction, the same shall be deemed modified to conform to applicable law, or if this would

cause an illogical or unreasonable result, such provision shall be stricken from this Agreement without affecting the binding force and effect of the Agreement or any of its other provisions.

b. Respecting the subject matter hereof, this Agreement contains the entire agreement of the parties and their representatives and agents, and incorporates all prior discussions or understandings, whether oral or written. No change, modification or amendment, nor any representation, promise or condition, nor any waiver, to this Agreement shall be binding unless in writing and signed by a duly authorized representative of the party to be charged.

c. Any failure by Owner to require strict compliance with any provision of this Agreement shall not be construed as a waiver of such provision, and Owner may subsequently require strict compliance at any time, notwithstanding any prior failure to do so.

d. The acceptance of final payment under this Agreement, or the acceptance of final payment upon early termination hereof, shall constitute a full and complete release of Owner by Consultant from any and all claims, demands and causes of action whatsoever which Consultant may have against Owner in any way related to the subject matter of this Agreement. Neither the Owner's review, approval or acceptance of, nor payment for, any of the services required under this Agreement shall be construed to operate as a waiver of any rights under this Agreement or of any cause of action arising out of the performance of this Agreement, and Consultant shall be and remain liable to Owner for all damages to Owner caused by Consultant's performance of any of the services furnished pursuant to this Agreement.

e. It is understood and agreed that Consultant is acting as an independent contractor in the performance of its services hereunder, and nothing herein contained shall be deemed to create an agency relationship between Owner and Consultant.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed and effective as of the day and year first above written.

CONSULTANT

**A/R/C ASSOCIATES, INCORPORATED**

Authorized Signature _____    Date June 11, 1999

Print Name  Joseph J. Williams

Title  Corporate Secretary-Treasurer

OWNER

WALT DISNEY WORLD CO.

Authorized Signature _____    Date 6/13/99

Print Name  David L. Ellis

Title  Principal Services Representative

WDW-1
000996

| EXHIBIT A |
| :---: |
| SCOPE OF SERVICES |
| AGREEMENT NO. 99DE-1313 |

Consultant shall provide professional construction observation and quality control services in support of the ongoing roof replacement at Disney's Grand Floridian Resort And Spa. Consultant shall provide regular site visits to the project on a weekly basis to observe the work of the roofing contractor and ensure their work is in conformance with the Contract Documents.

In the event services performed by the roofing contractor are not in conformance with the Contract Documents, Consultant shall assist Owner in evaluating the cause of non-conformance and assist in determining the best course of action.

When non-conforming conditions are encountered and revised or alternate details are required, Consultant shall provide professional drafting services to document the solution developed by the Consultant.

| END OF EXHIBIT A |
| :---: |

WDW-1
000997

EXHIBIT B
SCHEDULE
AGREEMENT NO. 99DE-1313

The Consultant shall commence the services on May 2, 1999, and shall complete all services on or before December 31, 2000, in accordance with the Scope of Services.



**END OF EXHIBIT B**

WDW-1
000998

**EXHIBIT C**
**PROJECT CONSTRUCTION BUDGET**
**AGREEMENT NO. 99DE-1313**

N/A

**END OF EXHIBIT C**

**EXHIBIT D**
**KEY EMPLOYEES**
**AGREEMENT NO. 99DE-1313**

Joseph Williams

**END OF EXHIBIT D**

| EXHIBIT E |
|---|
| SCHEDULE OF RATES |
| AGREEMENT NO. 99DE-1313 |

The Consultant shall be compensated for the actual services provided at the following hourly rates. The rates below include all labor costs, direct and indirect, and overhead, profit and all other costs of Consultant whatsoever, except those Reimbursable Expenses expressly allowed under this Agreement.

Principal, Joseph Williams, $100.00 per hour

Quality Assurance Technician $55.00 per hour

Drafting Services $50.00 per hour

**END OF EXHIBIT E**

WDW-1
001001

WDW-1
001002