# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
- - :
In re: :

   W.R. GRACE & CO., ET AL., : Case No. 01-1139 (JJF)
                                           : Chapter 11
                            Debtors. :
                                             : (Jointly Administered)
- - - - - - - - - - - - - - - - - - - -- - - - - - - - - - - - - - - - x
- - -

SUMMARY OF FIRST INTERIM APPLICATION OF CONWAY, DEL GENIO, GRIES & CO, LLC ("CDG") FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED AS FINANCIAL ADVISOR FOR THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS FOR THE PERIOD FROM APRIL 27, 2001 THROUGH SEPTEMBER 30, 2001.

| | |
|---|---|
| Name of Applicant: | Conway, Del Genio, Gries & Co., LLC |
| Authorized to Provide Professional Services to: | The Official Committee of Asbestos Property Damage Claimants |
| Date of Retention: | Retention order entered on October 22, 2001, Nunc Pro Tunc, to April 27, 2001 |
| Period for which compensation and reimbursement are sought: | April 27, 2001 through September 30, 2001 |
| Amount of compensation requested: | $620,000.00 |
| Amount of expense reimbursement requested: | $14,376.21 |

This is a first interim application.

| Date Filed | Period Covered | Requested Compensation | Requested Expenses | Approved Compensation | Approved Expenses |
|---|---|---|---|---|---|
| October 26, 2001 | April 27, 2001 through September 30, 2001 | $620,000 | $14,376.21 | NA | NA |

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
- -                                                     :
                                                        :
In re:                                                  :

W.R. GRACE & CO., ET AL.,                               :        Case No. 01-1139 (JJF)
                                                        :        Chapter 11
                                   Debtors.             :
                                                        :        (Jointly Administered)
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - -

FIRST INTERIM APPLICATION OF CONWAY, DEL GENIO, GRIES & CO, LLC FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED AS FINANCIAL ADVISOR FOR THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS FOR THE PERIOD FROM APRIL 27, 2001 THROUGH SEPTEMBER 30, 2001.

TO THE HONORABLE JOSEPH J. FARNIN, JR.,
UNITED STATES BANKRUPTCY JUDGE:

Conway, Del Genio, Gries & Co., LLC ("CDG") files this first application (the "Application") for interim allowance of compensation for financial advisory services provided to the Official Committee of Asbestos Property Damage Claimants of W.R Grace & Co., et al. (collectively, the "PD Committee") commencing April 27, 2001 (the "Commencement Date") through and including September 30, 2001 (the "Compensation Period") and reimbursement of its actual and necessary expenses incurred during the Compensation Period, and respectfully represents:

Introduction

1.      Pursuant to the Order of the Court dated October 22, 2001, (the "Retention Order"), CDG was retained as financial advisor to the PD Committee to perform services set forth in our affidavit dated June 15, 2001.

2.      By this Application, CDG requests an interim allowance for professional services rendered during the Compensation Period and reimbursement for actual and necessary expenses incurred during the Compensation Period.  CDG is a financial advisory firm specializing in reorganization and restructuring of troubled companies.  CDG's senior professionals have extensive experience with the reorganization and restructuring of troubled companies.

Background

3.      On April 2, 2001 (the "Filing Date"), the above-captioned debtors (the "Debtors") filed with this Court a voluntary  petition for relief under Chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors operated its business and managed its properties as debtors in possession.

4.      On April 2, 2001, the Court entered its Order directing the joint administration of the Debtors' chapter 11 cases (the "Consolidated Cases").

5.      On April 12, 2001, the Office of the United States Trustee appointed the PD Committee in this case consisting of Mr. Marco Barbanti, Princeton University, Pacific Freeholds and Prudential Insurance Company.  The PD Committee held its organizational meeting on that day and selected Mr. Marco Barbanti to serve as its Chairman.  Thereafter, the PD Committee was expanded to include Paul Price, Anderson Memorial Hospital and the Catholic Archdiocese of New Orleans.  The PD Committee subsequently elected Mr. Dan Speights, representative of Anderson Memorial Hospital, as Co-Chairman of the PD Committee.

6.      The PD Committee represents the interests of the asbestos property damage claimants in the Consolidated Cases.

7.    On April 27, 2001, the PD Committee chose to retain CDG as its financial advisor.  By application, dated July 6, 2001, the Applicant sought Court approval for its retention as financial advisor to the PD Committee nunc pro tunc to April 27, 2001.  After submission of the Application, an objection was filed by the Official Committee of Unsecured Creditors, and the Debtors raised certain issues regarding the application, but did not file an objection.  CDG had discussions and negotiations with the Debtors, the US Trustee and representatives of the Unsecured Creditors Committee.  Negotiations were held with each party, potential settlement terms with each individual party presented to the other parties, with any additional modifications proposed by the other parties being presented to the initial party for review and comment.  After numerous discussions and significant passage of time, the modified terms and conditions under which CDG was retained were ultimately agreed to, resulting in a delay in obtaining approval of CDG's retention.

8.    Pursuant to the Retention Order, the Court authorized the PD Committee to retain CDG as financial advisor at a rate of $150,000.00 per month for the first twelve months and $100,000.00 per month thereafter, plus reimbursement of actual and necessary expenses nunc pro tunc to April 27, 2001, pursuant to Sections 1103(a) and 328(a) of title 11 of the United States Code.  The Retention Order conditioned the Applicant's compensation on approval by this Court.

9.    CDG requests a first interim allowance of $620,000.00 as compensation for professional services rendered during the Compensation Period. CDG also requests an allowance of $14,376.21 as reimbursement for actual and necessary expenses CDG incurred during the Compensation Period. CDG, in its normal course of business, bills its clients a flat monthly fee and does not charge by the hour.  Thus, CDG does not normally keep time records.  However, for the benefit of the Court, CDG is recording its hourly time and has provided summaries of the time spent by professionals during the Compensation Period, attached hereto as Exhibit A. CDG has provided supporting detail of the expenses incurred, attached hereto as Exhibit B.

10.    CDG was retained as of April 27, 2001 and began providing services to the Committee as of April 27, 2001.  Under terms agreed upon between CDG and the Committee, CDG would not begin billing the Committee for services provided until May 27, 2001. CDG did, however,

commence working for the Committee on April 27, 2001 and during that month CDG focused on gaining an understanding of the Debtors and their business and general case issues including participation on several PD Committee conference calls, attendance at a PD Committee meeting in Dallas, and preparation of an initial review of the Debtors.  While CDG does not begin billing for its services until May 27, 2001, as a result of the time spent and services provided between April 27, 2001 and May 27, 2001, CDG is requesting expense reimbursement for services provided between April 27, 2001 and May 27, 2001.

11.    There is no agreement or understanding between CDG and any other person, other than members, associates and employees of CDG, for the sharing of compensation received or to be received for services rendered in connection with these proceedings.

12.    CDG has not entered into any agreement, express or implied, with any party in interest, including the PD Committee, the Debtors, other creditors, or any representative of any of them, or with any attorney for such party in interest, for the purpose of fixing the fees or other compensation to be paid to CDG for services rendered in connection herewith, from the assets of the Debtors.

<u>Services Provided</u>

13.    During the Compensation Period, CDG provided the PD Committee with experience and expertise in dealing with matters relating to the Debtors' businesses and historical operating trends, the Debtors' business plan, industry trends, proposed acquisitions by the Debtors, the Debtors' employee retention and incentive plans, trends for asbestos litigation and corresponding insurance coverage as well as a number of other items described below. CDG also assisted the PD Committee in beginning its ongoing investigation of asset divestitures which occurred prior to the Chapter 11 filing.  CDG actively participated in meetings and conference calls with the PD Committee and provided the PD Committee members with observations, advice and guidance on various matters and issues.  CDG also responded to numerous questions and information requests from the PD Committee by investigating and reporting CDG's findings back to the PD Committee. As a result, CDG's most highly skilled professionals devoted significant time and effort to perform properly and

expeditiously the required professional services. The services rendered by CDG during the Compensation Period:

### Category 1 – Review and Analysis of Debtors' Business and Operations

Services performed in this project area during the Compensation Period relate primarily to reviewing and analyzing public filings to understand background information regarding the Debtor.  CDG examined public filings and informational briefs prepared by the Debtors, going back a number of years in an effort to develop a comprehensive understanding of the Debtors' businesses and trends.

Specifically, CDG reviewed the various operating units, reviewing each unit's core business, historical operating trends, identified growing and declining areas in Grace's businesses and provided a preliminary view on the valuation of Grace.   CDG also assessed the Debtors' future earnings potential by division, reviewing industry trends and potential impact on the Debtors' businesses.  CDG evaluated the operating and financial drivers which caused the Debtors to seek Chapter 11 protection including trends in cash flow earnings, capital investment requirements, cash disbursements for non-operating liabilities, available liquidity through existing financing arrangements and anticipated future trends for each of these items.   CDG also reviewed the Debtors' historical acquisition strategy and trends and evaluated the impact of these acquisitions on operating growth and earning.  The information and insight developed was utilized in preparing several detailed reports to the PD Committee.

### Category 2 – Analyzed, reviewed and monitored the Debtors' financial results and other relevant information

Services performed in this project area during the Compensation Period relate primarily to CDG's detailed review of monthly operating statements provided by the Debtors.  CDG analyzed the Debtors' results, evaluating performance relative to historical trends and evaluating the Debtors' ability to achieve projected results for the year.  CDG kept the PD Committee apprised of current operating results and any identified issues.

**Category 3 - Meetings and conference calls with the Debtors' management and financial advisor**

Services performed in this project area during the Compensation Period relate primarily to CDG's attendance at several meetings with the Debtors' management including a general business review meeting and Management's presentation of the Debtors' four-year business plan. In addition, CDG had conference calls with the Debtors' to discuss proposed acquisitions and retention/incentive programs and CDG had numerous conversations with the Debtors' financial advisor concerning Debtors' proposals, confidentiality agreement, meetings with Management, information requests, upcoming case issues, etc.

**Category 4 – Review of Asbestos Related Litigation and Risk Management and Effects on Liquidity**

Services performed in this project area during the Compensation Period relate primarily to CDG's analysis and subsequent presentation to the PD committee regarding Grace's historical asbestos claims. In addition, CDG assessed the liquidity of the Debtors at filing, the capital drain caused by asbestos related litigation, the benefit of risk management programs and the level of free cash flow generated by the operating units.

CDG reviewed and analyzed the asbestos related expense and cash flow expenditures prior to the Debtors filing for both Personal Injury and Property Damage litigation. CDG also analyzed the Debtors' insurance and risk management programs based upon publicly available information and historical trends and quantified the actual cash impact of the litigation after considering risk management programs. CDG evaluated the change in trends in asbestos related litigation based upon cases filed and information provided by both the Debtors and other companies with asbestos related litigation. CDG also reviewed the Debtors' public statements and characterization of asbestos related litigation prior to the Chapter 11 filing.

**Category 5 - Meetings and discussions with the Committee and/or its Counsel**

Services performed in this project area during the Compensation Period relate primarily to CDG's active participation on weekly PD Committee conference calls and attendance of three out-of-town PD Committee meetings.  Also included are calls with Counsel related to various case issues including the proposed DIP facility, and other issues that arose.

**Category 6 – Review of Acquisitions Proposed by the Debtors**

Services performed in this project area during the Compensation Period relate primarily to CDG's review and analysis of two acquisitions which were proposed by the Debtors. CDG met with the Debtors' Management to gain an understanding of the proposed transactions including strategic reasons for pursuing the transaction, financial merits of the transactions and all other relevant detail.  CDG reviewed the Debtors' projection models and participated on conference calls with Debtor's Management concerning the proposed acquisitions.   CDG prepared and presented a comprehensive report on each of the transactions to the PD Committee.  CDG provided to the PD Committee an overview of the acquisitions, merits/issues of the  acquisitions and actively participated in the Committee's review of the proposed acquisitions.

**Category 7 – Reviewed Debtors' Employee Retention and Incentive Plans**

Services performed in this project area during the Compensation Period relate primarily to CDG's review of the Debtors' key employee retention plans, incentive compensation plans, and management contracts.  CDG and the Committee's counsel had numerous conversations concerning such Plans and CDG participated in a conference call with the Debtors' Management to gain additional insight as well as to challenge Management as to the rationale of the various programs.  CDG prepared a report to the PD Committee outlining the terms of the Debtors' Retention and Incentive Plans and actively participated on a conference call with the PD Committee to discuss the merits/issues of the Debtors' proposed retention and incentive plans.

**Category 8 – Investigation of Asset Divestitures**

Services performed in this project area during the Compensation Period relate primarily to CDG's assisting the Committee in its ongoing investigation and understanding of asset divestitures which occurred prior to the Debtors' Chapter 11 filing. CDG identified all significant asset divestitures that occurred in the past several years, quantifying the total consideration received and identifying what the proceeds from the transaction were used for. CDG is investigating several transactions and began developing a detailed presentation which will assist the PD Committee in understanding the nature of certain transactions and the value of assets divested and value of consideration received.

**Category 9 - Planning, preparation and organization**

This category includes a variety of tasks including but not limited to preparing workplans, preparing for various meetings, and other various services.

**Category 10 - Fee application and statements**

This category includes time spent preparing the first fee application and time statements which are attached as exhibits hereto in accordance with the requirements of this Court.

**Category 11 - Other**

Any amount of time CDG spent on activities for the PD Committee, which fall outside of all other categories.

14.    CDG submits that the foregoing services were necessary to the successful and prompt administration of the Consolidated Cases, necessary and beneficial to the PD Committee at the time at which such services were rendered, and were performed without unnecessary duplication of effort or expense.

15.    Annexed hereto as Exhibit A is a schedule setting forth the summarized time by professional of services provided to the PD Committee during the Compensation Period. Annexed hereto as Exhibit B is a schedule setting forth the actual and necessary expenses that CDG incurred

during the Compensation Period. To the best of knowledge, information and belief, all entries in Exhibits A & B comply with the requirements set forth in Order No. 32.  To the best of knowledge, information and belief, this Application complies with section 330 of title 11 of the United States Code, the Federal Rules of Bankruptcy Procedure, the Guidelines adopted by the Executive Office for the United States Trustee for Reviewing Applications for Compensation and Reimbursement of Expenses, Order No. 32 and the Administrative Order.

WHEREFORE CDG respectfully requests (i) interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $620,000.00 and reimbursement for actual and necessary expenses CDG incurred during the Compensation Period in the amount of $14,376.21; (ii) that the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to CDG's right to seek such further compensation for the full value of services performed; (iii) that the Debtors' be directed to pay eighty percent (80%) such amount to CDG forthwith, and (iv) that the Court grant CDG such other and further relief as is just.

Dated:  New York, New York
        October 26, 2001

                                   Conway, Del Genio, Gries & Co., LLC


                                   By:      /s/ Michael F. Gries
                                        Michael F. Gries