IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 01-01139 (JJF) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' OPPOSITION TO THE JOINT APPLICATION BY THE ASBESTOS PROPERTY DAMAGE AND PERSONAL INJURY COMMITTEES FOR APPROVAL OF LAW FIRMS TO PROSECUTE THE FRAUDULENT TRANSFER CLAIMS**

Dated: October 29, 2001

| | |
|---|---|
| KIRKLAND & ELLIS | PACHULSKI, STANG, ZIEHL, |
| David Bernick | YOUNG & JONES PC |
| James H.M. Sprayregen | Laura Davis Jones (#2436) |
| Reed S. Oslan | David Carickhoff (#3715) |
| Janet S. Baer | 919 North Market Street, 16th Floor |
| Scott A. McMillin | P.O. Box 8705 |
| 200 East Randolph Drive | Wilmington, Delaware 19899-8705 |
| Chicago, Illinois 60601 | (Courier 19801) |
| (312) 861-2000 | (302) 652-4100 |

# TABLE OF CONTENTS

I.   Introduction .................................................... 1

II.  Background ..................................................... 2

III. Despite Having No Authority To Investigate Fraudulent Conveyance Claims, The Asbestos Committees Are Now Spending The Estates' Money To Interview Special Counsel To Pursue Those Claims ........................................... 3

IV.  The Asbestos Committees Have Now Proposed Hiring Special Counsel That – If Possible – Are Even Less Disinterested In The Action Than The Asbestos Committees Themselves ..................................... 3

V.   The Unsecured Creditors Committee Should Be Appointed To Investigate Whether To Pursue Fraudulent Conveyance Claims ............................ 5

VI.  The Estates Should Not Be Forced To Pay The Asbestos Committees For This Frivolous Attempt To Appoint Special Counsel ..................................... 5

VII. Conclusion ..................................................... 6

# TABLE OF AUTHORITIES

**Cases**

In re Nationwide Sports Distributors, Inc., 227 B.R. 455 (Bankr. E.D. Pa. 1998) . . . . . . . . . . . . 5

In re Xonics Photochemical, Inc., 841 F.2d 198 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . 2

Louisiana World Exposition v. Federal Ins. Co., 858 F.2d 233 (5th Cir. 1988) . . . . . . . . . . . . . . 2

Official Committee of Unsecured Creditors v. Chinery (In re Cybergenics Corp.),
    226 F.3d 237 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.   **Introduction**

By their motion, the Asbestos Committees finally concede that these Committees cannot objectively investigate potential fraudulent conveyance claims: "The Asbestos Committees have availed themselves of the postponement to interview numerous law firms with pre-eminent abilities to serve as special counsel to handle the prosecution of the Fraudulent Transfer Claims. As the Debtors admit in their Response to the Fraudulent Transfer Motion, 'someone else [other than the Debtors] should assess whether a fraudulent conveyance claim was in the best interests of the estates.'" (Asb. Cmte Motion at ¶ 8) Ignoring the fact that the Unsecured Creditors Committee is already constituted expressly to investigate issues like this, however, the Asbestos Committees instead asks leave to hire two additional law firms to pursue these claims. Neither of the firms suggested by the Asbestos Committees is objective or disinterested and, unlike the Unsecured Creditors Committee, each seeks to take hundreds of millions of dollars in contingency fees away from the estates in the (unlikely) event these claims prove successful. The Debtors object to this motion.

In support of this objection, the Debtors further state as follows and specifically request: (1) that the Asbestos Committees' motion to appoint Cozen O'Connor and McKool Smith as Special Counsel to pursue fraudulent transfer claims be denied; (2) that, as requested in the Debtors' previous papers submitted on July 11, 2001, the Unsecured Creditors' Committee should be selected to evaluate potential fraudulent transfer claims on behalf of the estates; and (3) that the Asbestos Committees should be denied recovery of any fees or costs incurred in their unauthorized evaluation and selection process for Special Counsel as well as any fees and costs they incurred in bringing this frivolous motion.

1

## II. <u>Background</u>

The Debtors believe that potential fraudulent transfer claims related to the Fresenius and Sealed Air transactions are without merit and that pursuing these claims would be a waste of the estates' assets. As previously briefed, however, the Debtors recognize that because W.R. Grace has already acknowledged that such fraudulent transfer claims are without merit, a separate entity – such as the Unsecured Creditors Committee – should be appointed to make an independent determination of whether these claims should be pursued. Only if the Unsecured Creditors Committee both (1) seeks permission from the Court, and (2) demonstrates that the Debtors have unjustifiably refused to prosecute a colorable claim, can that committee then pursue a fraudulent conveyance claim on behalf of the estates. See <u>Official Committee of Unsecured Creditors v. Chinery</u> (In re Cybergenics Corp.), 226 F.3d 237 at 240 n.3 (3d Cir. 2000); <u>In re Xonics Photochemical, Inc.</u>, 841 F.2d 198, 203 (7th Cir. 1988); <u>Louisiana World Exposition v. Federal Ins. Co.</u>, 858 F.2d 233, 247 (5th Cir. 1988).

Anxious to pursue a fraudulent conveyance action, the Asbestos Committees moved for authority to <u>prosecute</u> -- not merely investigate -- those claims on June 14, 2001. The Asbestos Committees' June 14 motion drew objections not only from the Debtors, Sealed Air and Fresenius, but also from the Unsecured Creditors Committee. In their objections to the Asbestos Committees' June 14 motion, the Debtors argued among other things that (1) the Asbestos Committees could not make an objective determination as to whether or not to pursue fraudulent conveyance claims because of their inherent interest in the asbestos claims that lie at the heart of a fraudulent conveyance suit, and (2) that the Unsecured Creditors Committee was

therefore in a better position to assess fairly whether or not to pursue fraudulent conveyance claims. There has still been no hearing on the June 14 motion and accompanying objections.

### III. Despite Having No Authority To Investigate Fraudulent Conveyance Claims, The Asbestos Committees Are Now Spending The Estates' Money To Interview Special Counsel To Pursue Those Claims

Ignoring the fact that this Court has given them no authority to investigate fraudulent conveyance claims, the Asbestos Committees now boast that they have used the time while the Court's decision is pending to interview additional counsel to pursue those claims. (Asb. Cmte Motion at ¶¶ 8-10, describing the "in-depth" efforts and "thorough review" undertaken on this issue by the Committees since the "postponement" of the hearing on the June 14 motion). "Based upon this thorough and thoughtful selection process, the Asbestos Committees jointly concluded that the interests of the estates would be best advanced and protected by the retention of both Cozen O'Connor and McKool Smith to serve as special counsels in respect of the Fraudulent Transfer Claims." (Id. at ¶ 10)  Apparently, the Asbestos Committees now believe that they are in a better position than this Court is to rule on the pending issue of who is best positioned to pursue these claims -- and they are presumably attempting to use the estates' money to fund their unauthorized analysis.

### IV. The Asbestos Committees Have Now Proposed Hiring Special Counsel That – If Possible – Are Even Less Disinterested In The Action Than The Asbestos Committees Themselves

In looking to hire Special Counsel to pursue the fraudulent conveyance claims, the Asbestos Committees necessarily concede that they are too personally interested in the action to investigate the claims themselves. (E.g. Asb. Cmte. Motion at ¶ 8) Yet rather than defer to the already constituted Unsecured Creditors Committee to pursue these claims, the Asbestos

3

Committees now seek to hire Special Counsel that -- if possible -- are even less disinterested in this matter than the Asbestos Committees themselves. Remarkably, the Asbestos Committees now seek to appoint as independent Special Counsel the very same law firm, McKool Smith, that has already sued the Debtors in the <u>Abner</u> fraudulent transfer action filed in California and recently transferred to this Court. How can the Asbestos Committees possibly represent to this Court that the McKool Smith law firm can independently review the facts and fairly determine whether the fraudulent transfer claims are worth pursuing, when this very same law firm already sued the Debtors more than a year ago over these same exact (and meritless) Fresenius and Sealed Air fraudulent conveyance allegations?[1]

      The Asbestos Committees' assertion that the contingent fee arrangement they have negotiated would be beneficial to Debtors' estates is likewise disingenuous. If, as the Debtors argue, the fraudulent transfer claims have no merit, then an independent committee like the Unsecured Creditors Committee should be able to reach this conclusion with a minimum of time and effort (and expense). In any event, the Debtors must expend funds on the early analysis of fraudulent transfer claims even if outside contingency counsel pursue the claims. (See Asb. Cmte at ¶ 17, spelling out expenses of contingency fee counsel including photocopying, travel, transcription costs, etc.)

---

[1] Neither is Cozen O'Connor disinterested. As reflected in the Cozen O'Connor Disclosure, "Cozen O'Connor serves as Casualty Defense counsel for AIG Technical Services, Inc. (approximately 88 cases), Chubb Insurance Company (one case) and American Manufacturers Mutual Insurance Company (one case) in which W.R. Grace is a co-defendants with the Insurance Companies' Insured." (Asb. Cmte Motion at Ex. A, ¶ 1) Surely the Asbestos Committees cannot credibly suggest that this Court should appoint Cozen O'Connor to sue the Debtors at the same time the Debtors are intertwined with that firm in the joint defense of nearly 100 cases.

4

If, on the other hand, as the Asbestos Committees (and McKool Smith) claim, the fraudulent transfer claims are meritorious, then the Special Counsel being proposed stand to retain hundreds of millions of dollars in contingency fees – dollars that would otherwise go to the estates if the already constituted Unsecured Creditors Committee pursued the claim. Surely the estates cannot benefit from the Asbestos Committees' heads-we-win, tails-you-lose proposal. While the Debtors do not believe that the fraudulent conveyance allegations have any merit, they would at least concede that if any money is recovered through such a suit it should go to the estates and the creditors rather than a specially appointed outside counsel.

## V.    The Unsecured Creditors Committee Should Be Appointed To Investigate Whether To Pursue Fraudulent Conveyance Claims

The Asbestos Committees do not -- and cannot -- provide any valid reason why two additional law firms should now be appointed as Special Counsel to do a job that the Unsecured Creditors Committee was already created to do. As set forth in the Debtors' original July 11 objection to the Asbestos Committees' June 14 motion, the very purpose of the Unsecured Creditors Committee is to defend the interests of the estates' creditors and to ensure that the assets of the estates are maximized for the benefit of those creditors. See In re Nationwide Sports Distributors, Inc., 227 B.R. 455, 463 (Bankr. E.D. Pa. 1998). The Unsecured Creditors Committee has no disabling conflict of interest or bias that would prevent it from independently evaluating the merits of the fraudulent transfer claims. Unlike the Asbestos Committees and McKool Smith, the Unsecured Creditors Committee can take a fresh look at these claims and determine whether it would be in the best interests of the estates to prosecute these claims and, if so, when and how they should be prosecuted.

5

## VI. The Estates Should Not Be Forced To Pay The Asbestos Committees For This Frivolous Attempt To Appoint Special Counsel

Finally, the Asbestos Committees should be barred from receiving reimbursement for any of the time or expenses involved in their unauthorized "thorough and thoughtful selection process" because they have not been authorized by the Court to evaluate or pursue any potential fraudulent transfer claims. The Asbestos Committees engaged in these activities without any Court approval, and indeed, in the face of direct objections from both the Debtors and the Unsecured Creditors Committee over the Asbestos Committees' pending June 14 motion. Moreover, as explained above, the actions of the Asbestos Committees were clearly not in the best interests of Debtors' estates or their creditors, and the estates should not be forced to subsidize such actions.

## VII. Conclusion

For the reasons stated above, the Debtors respectfully request: (1) that the Asbestos Committees' Motion to appoint Cozen O'Connor and McKool Smith as Special Counsel to pursue fraudulent transfer claims be denied; (2) that, as requested in the Debtors' previous papers submitted on July 11, 2001, the Unsecured Creditors' Committee should be selected to evaluate potential fraudulent transfer claims on behalf of the estates; and (3) that the Asbestos Committees should be denied recovery of any fees or costs incurred in their unauthorized evaluation and selection process for Special Counsel as well as any fees and costs they incurred in bringing this frivolous motion.

Dated: October 29, 2001

        KIRKLAND & ELLIS
        David Bernick
        James H.M. Sprayregen
        Reed S. Oslan
        Janet Baer
        Scott A. McMillin
        200 East Randolph Drive
        Chicago, Illinois 60601
        (312) 861-2000

        and

        PACHULSKI, STANG, ZIEHL, YOUNG & JONES PC

        _____
        Laura Davis Jones (Bar No. 2436)
        David Carickhoff (Bar No. 3715)
        Peter J. Duhig (Bar No. 4024)
        919 North Market Street, 16th Floor
        P.O. Box 8705
        Wilmington, Delaware 19899-8705 (Courier 19801)
        (302) 652-4100

        Co-Counsel for the Debtors and Debtors in Possession