# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No. 01-1139 (JJF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

### AFFIDAVIT OF TERESA K.D. CURRIER IN SUPPORT OF APPLICATION FOR AN ORDER PURSUANT TO SECTION 1103(a) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION *NUNC PRO TUNC* OF KLETT ROONEY LIEBER & SCHORLING, A PROFESSIONAL CORPORATION, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF EQUITY HOLDERS

STATE OF DELAWARE      )
                                            ) SS
COUNTY OF NEW CASTLE  )

TERESA K.D. CURRIER, being duly sworn, does depose and say as follows:

1. I am a shareholder of the firm of Klett Rooney Lieber & Schorling ("Klett Rooney"), and I am duly authorized to make this Affidavit on behalf of Klett Rooney. I submit this Affidavit in accordance with Section 1103(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in connection with the application (the "Application") of the Official Committee of Equity Holders (the "Committee") for an order authorizing the Committee to retain and employ Klett Rooney as co-counsel.

2. I am admitted to practice before all state and federal courts in the State of Delaware, all state courts in the Commonwealth of Pennsylvania, the United States District Court for the Eastern District of Pennsylvania, and the Third Circuit Court of Appeals.

3. I understand that the Committee has retained Kramer Levin Naftalis & Frankel LLP

KRLSWIL:24207.1

("Kramer Levin") as its primary counsel in this Chapter 11 case, and has selected Klett Rooney as its Delaware co-counsel. Klett Rooney and Kramer Levin have discussed staffing and division of responsibilities in connection with representing the Committee in this case and will make every effort to avoid or minimize duplication of services. The coordination of efforts among the firms will enhance the progress and efficient administration of the Committee's duties in this case.

4. Unless otherwise defined, capitalized terms and phrases not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

## Background

5. On April 2, 2001 (the "Petition Date"), the Debtors filed with this Court their respective voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").

6. The Debtors continue in possession of their respective properties and are operating and managing their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

7. The Committee was appointed by the United States Trustee (the "UST") on June 18, 2001.

## Disclosures

8. Klett Rooney is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code because Klett Rooney, its shareholders, associates and employees (a) are not creditors, equity security holders, or insiders of the Debtors; and (b) are not and were not, within two years before the Petition Date, a director, officer or employee of the Debtors. While Klett

Rooney has certain relationships with certain creditors of the Debtors, other parties in interest, and other professionals in connection with unrelated matters, it has not represented any such party in connection with matters relating to the Debtors, except as disclosed herein.

9. Klett Rooney is not a creditor of any of the Debtors.

10. Klett Rooney has in the past represented, currently represents, and may in the future represent entities that are claimants or interest holders of the Debtors in matters totally unrelated to the Debtors' Chapter 11 case. Klett Rooney employs approximately 150 attorneys and has a large and diversified practice that includes representation of many financial institutions, commercial entities, corporations and individuals, some of whom may be creditors or parties in interest in the Debtors' pending Chapter 11 case.

## Klett Rooney Disclosure Procedures

11. In connection with Klett Rooney's proposed retention in this case and in preparing this Affidavit, I have followed a set of procedures developed by Klett Rooney to ensure compliance under these circumstances with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any order of this Court (the "Klett Rooney Disclosure Procedures").

12. Under the Klett Rooney Disclosure Procedures, I submitted for review the names of significant parties in interest in these cases that were known to me after inquiry (all such entities, collectively, the "Potential Parties").

13. I make this Affidavit based in material part on that list, as well as Klett Rooney's business records, including its conflict database, and the responses to conflict checks circulated throughout Klett Rooney (generally, the "Klett Rooney Conflict Identification System"). Klett

Rooney maintains and updates the Klett Rooney Conflict Identification System in the ordinary course of its business, and it is the regular practice of the firm to make and maintain such records.

14. The Klett Rooney Conflict Identification System was created to include: (a) every matter for which the firm is now or has been engaged; (b) the entity by which the firm is now or has been engaged; (c) the identity of related parties; (d) the identity of adverse parties; and (e) the responsible attorney in the firm who handles that matter.

15. Under Klett Rooney's policy, no new matter may be accepted or opened without the individual attorney completing and submitting to the Klett Rooney Conflict Identification System all information necessary to check each matter for conflicts, including the identity of the prospective client, the matter and all adverse, potentially adverse and related parties. Accordingly, the Klett Rooney Conflict Identification System is updated for every new matter undertaken by Klett Rooney. Of course, the Klett Rooney Conflict Identification System relies upon the completeness of the information submitted by individual attorneys in any new matter.

16. Following submission of the list of Potential Parties, a list was created by Klett Rooney's Accounting Department of all potential matches or "hits" between the Potential Parties and the names already included in the Klett Rooney Conflict Identification System. At the same time, the names of the Potential Parties were sent out firm-wide by email to all attorneys for their individual review and response.

17. I then reviewed the hit list and any email responses to determine any true matches, discarding obvious name mismatches, and created a subset of the list of Potential Parties for disclosure to the Court in this Affidavit.

18. Where it was determined that Klett Rooney had an existing relationship with a Potential Party, Klett Rooney attorneys discussed the nature of the representations of, respectively, the Debtors, the Committee, and the Potential Party, and in all cases ascertained that Klett Rooney did not represent a Potential Party in connection with the Debtors or the Committee. In certain cases, Klett Rooney also determined the percentage of firm revenues represented by each creditor or other party in interest and/or their affiliates with which Klett Rooney has had a client relationship. These disclosures are set forth herein below.

19. Except as set forth below, Klett Rooney does not have any connection with the Debtors, the Committee, any creditor or party-in-interest, or their respective attorneys and accountants, the United States Trustee or any person employed in the office of the United States Trustee.

20. Klett Rooney does not represent, has not represented, and will not represent any entity, other than the Committee, in matters related to this Chapter 11 case.

### Connections with Potential Parties

21. To the extent that the search conducted by Klett Rooney indicated that Klett Rooney has or had a relationship with any Potential Parties, the identities of such parties are set forth on Schedule 1 hereto. For certain of these clients, a brief description of the type of work performed by Klett Rooney is also set forth on Schedule 1. Klett Rooney does not now and will not in the future represent any of these parties in connection with the Debtors' bankruptcy cases. Certain additional disclosures regarding connections with other Potential Parties are set forth below.

### Personnel Connections With Potential Parties

22. Klett Rooney employs Brian E. Farnan, Esquire ("Brian Farnan") in its Philadelphia office. Brian Farnan is not in the Bankruptcy Practice Group, and will not be involved in Klett Rooney's representation of the Committee in any way. Klett Rooney will erect an Ethical Screen to prevent Brian Farnan from having any contact with Klett Rooney's proposed representation of the Committee, as described herein.

23. Klett Rooney employs Mary F. Caloway, Esquire ("Caloway") as a shareholder in its Wilmington office, and Caloway is a member of the Bankruptcy Practice Group. Caloway was employed by Klett Rooney from March 2000 until November 2000, at which time she left Klett Rooney and joined the firm of Pachulski Stang Ziehl Young & Jones ("Pachulski"). Caloway was employed by Pachulski from November 2000 until July 2001, at which time she rejoined Klett Rooney. While Caloway was employed by Pachulski the firm filed this bankruptcy proceedings and served as Delaware bankruptcy counsel to the Debtors. However, Caloway had no direct involvement with the matter, did not work on the matter and provided no advice or representation in connection with Pachulski's representation of the Debtors. Further, Caloway will not be involved in Klett Rooney's proposed representation of the Committee. Klett Rooney will erect an Ethical Screen to prevent Caloway from having any contact with Klett Rooney's proposed representation of the Committee, as described herein.

### Representation of Wachovia Bank in this proceeding

24. Adam Landis, Esquire ("Landis") is a shareholder in Klett Rooney's Wilmington office, and a member of Klett Rooney's Bankruptcy Practice Group. From approximately April

2001 until late June, 2001, Landis and Klett Rooney acted as Delaware counsel to Wachovia Bank ("Wachovia"), an unsecured creditor of the Debtors and a member of the Official Committee of Unsecured Creditors (the "Unsecured Creditors' Committee") in this bankruptcy proceeding. By the end of June, 2001, Wachovia determined that it no longer required the services of Delaware counsel in this proceeding, and Wachovia and Landis mutually agreed to terminate Klett Rooney's representation of Wachovia, in order to allow Klett Rooney to represent other parties in this bankruptcy proceeding.[1] Klett Rooney will erect an Ethical Screen to prevent Landis from having any contact with Klett Rooney's proposed representation of the Committee, as described herein.

### Representation of Entergy Services, Inc. in this Proceeding

25.     Following Klett Rooney's termination of its representation of Wachovia, in July 2001 Klett Rooney began representing Entergy Services, Inc. ("Entergy"), a utility of the Debtors, in this proceeding. Eric Schnabel, Esquire ("Schnabel"), an associate in Klett Rooney's Wilmington office and a member of the Bankruptcy Practice Group, handled this representation together with James Joseph, Esquire ("Joseph"), an associate in Klett Rooney's Pittsburgh office and also a member of the Bankruptcy Practice Group. Schnabel and Joseph assisted Entergy in working out adequate assurance issues in this proceeding, and thereafter completed and terminated the representation of

---

[1]     Because Wachovia is a member of the Unsecured Creditors' Committee, its counsel received and reviewed certain confidential information and communications from time to time. When Klett Rooney terminated its representation of Wachovia, Landis advised the Committee that he would destroy all communications and materials received in the course of his representation of Wachovia in his and Klett Rooney's possession. Landis subsequently did so. When I was asked by Kramer Levin to serve as Delaware counsel to the Committee, I contacted Lewis Kruger, Esquire, counsel to the Unsecured Creditors' Committee, described the above facts, and asked him to voice his concerns, if any, regarding Klett Rooney serving as Committee counsel. He raised no concerns with the retention proposed herein.

Entergy with Entergy's consent and agreement. Klett Rooney will erect an Ethical Screen to prevent Schnabel and Joseph from having any contact with Klett Rooney's proposed representation of the Committee, as described herein.

### Representation of Wilmington Center LLC in unrelated real estate matters

26. Klett Rooney represents Wilmington Center LLC ("Wilmington Center"), an institutional landlord, in real estate matters generally within the state of Delaware. In August 2001 Richard Forsten, Esquire ("Forsten") of Klett Rooney's Wilmington office represented Wilmington Center in connection with an ordinary course lease agreement that W.R. Grace executed with Wilmington Center. During his representation of Wilmington Center, Forsten did not enter an appearance in the bankruptcy proceeding or otherwise become involved in this proceeding. Upon final execution of the lease agreement, Forsten and Klett Rooney concluded this representation of Wilmington Center. Klett Rooney will erect an Ethical Screen to prevent Forsten from having any contact with Klett Rooney's proposed representation of the Committee, as described herein.

### Handling of Asbestos-related litigation

27. Klett Rooney represents certain plaintiffs in asbestos-related litigation, in which W.R. Grace may be a related party, as more specifically described on Schedule 1 attached hereto. Current matters are handled by Rick Cobb, Esquire ("Cobb"), an associate in Klett Rooney's Wilmington office and a member of the Bankruptcy Practice Group. Additionally, Nick Gimbel, Esquire ("Gimbel"), a Klett Rooney shareholder in the Philadelphia office and a member of the Litigation Practice Group, handled certain asbestos-related litigation in his prior employment before joining Klett Rooney. Klett Rooney will erect an Ethical Screen to prevent Cobb and Gimbel from having

any contact with Klett Rooney's proposed representation of the Committee, as described herein.

28. Neither I, nor Klett Rooney, nor any shareholder, counsel or associate thereof, as far as I have been able to ascertain, holds or represents any interest adverse to the Debtors, the Debtors' estates, or the Committee in the matters for which Klett Rooney is proposed to be retained. Accordingly, I believe that Klett Rooney is a "disinterested person" as defined in Bankruptcy Code Section 101(14) of the Bankruptcy Code.

29. Neither I, nor Klett Rooney, nor any shareholder, counsel or associate thereof, as far as I have been able to ascertain, holds or represents any interest adverse to the Debtors, the Debtors' estates, or the Committee in the matters for which Klett Rooney is proposed to be retained. Accordingly, I believe that Klett Rooney is a "disinterested person" as defined in Bankruptcy Code Section 101(14) of the Bankruptcy Code.

30. The Debtors have numerous relationships and creditors. Consequently, although every reasonable effort has been made to discover and eliminate the possibility of conflict, including the efforts outlined above, Klett Rooney is unable to state with absolute certainty whether one of its clients or an affiliated entity holds a claim or otherwise is a party in interest in this Chapter 11 case. To the extent that any information disclosed herein requires supplementation, amendment or modification upon Klett Rooney's completion of further analysis or as additional information becomes available to it, a supplemental affidavit will be submitted to the Court.

31. The proposed retention of Klett Rooney is not prohibited by or improper under Rule 5002 of the Bankruptcy Rules.

32. Based upon the foregoing, I believe that Klett Rooney and the professionals it

employs are qualified to represent the Committee in the matters for which Klett Rooney is proposed to be retained.

### Compensation

33. Subject to this Court's approval, Klett Rooney will charge for its legal services on an hourly basis in accordance with its standard hourly rates in effect on the date services are rendered. The primary Klett Rooney attorneys who will be representing the Committee and their corresponding rates, are as follows: Teresa K.D. Currier, shareholder, at $395 per hour; and Kathleen P. Makowski, associate, at $190 per hour. These rates may increase from time to time in accordance with Klett Rooney's established billing practices and procedures, and other Klett Rooney shareholders and associates will be involved in the Debtors' cases as required. Klett Rooney will maintain detailed, contemporaneous records of time and any actual and necessary expenses incurred in connection with the rendering of legal services described above by category and nature of the service rendered, consistent with the Bankruptcy Code, Bankruptcy Rules, Local Rules and United States Trustee's Guidelines.

34. Klett Rooney intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court and any other orders entered in these cases.

35. No promises have been received by Klett Rooney, or any shareholder or associate thereof, as to payment or compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code. Neither Klett Rooney nor any of its attorneys has entered into an agreement or understanding to share compensation with respect to the representation of the

Debtor as described in Rule 2016 of the Bankruptcy Rules.

36. Klett Rooney has agreed to accept as compensation such sums as may be allowed by the Court based upon the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estates, the reasonableness of the time spent in relation to the results achieved, and the complexity, importance and nature of the problems, issues, or tasks addressed in these cases.

_____
Teresa K.D. Currier

SWORN TO AND SUBSCRIBED before
me this 31st day of October, 2001

_____
Notary Public



KRLSWIL:24207.1

11

## SCHEDULE 1

## KLETT ROONEY CONNECTIONS WITH POTENTIAL PARTIES

### Previous Representations

Wachovia Bank
Entergy Services Inc.
Wilmington Center L.L.C.

| Other parties in interest | Firm relationship in unrelated matters |
|---|---|
| Bank of America | Current client in unrelated matters |
| First Union Bank | Former client in unrelated matters |
| Chase Manhattan Bank | Current client in unrelated matters |
| Citibank N.A. | Current client in unrelated matters |
| BNP Paribas | Current client in unrelated matters |
| CNA Insurance Company | Current client in unrelated matters |
| HSBC | Current client in unrelated matters |

| Asbestos claimants | Firm relationship in unrelated matters |
|---|---|
| Mallinckrodt Inc. | Current client in asbestos litigation related to Grace |
| National Refractories & Mineral Corp. | Current client in asbestos litigation related to Grace |
| Kaiser Aluminum & Chemical | Current client in asbestos litigation related to Grace |

KRLSWIL:24207.1