IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X | |
| In re: | : Chapter 11 |
| | Case No. 01-01139 (JJF) |
| W. R. GRACE & CO., *et al.* | : |
| Debtors. | Jointly Administered |
| | : |
| | |
| | . Hearing Date: To Be Scheduled |
| | : **Objection Deadline: November 5, 2001 at 4:00 p.m.** |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X **Related to Docket No. 1019** |

**RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO
THE SUPPLEMENTAL APPLICATION FILED
BY THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY
CLAIMANTS FOR AUTHORIZATION TO EMPLOY ELIZABETH WARREN AS
SPECIAL BANKRUPTCY CONSULTANT TO
CAPLIN & DRYSDALE, CHARTERED, NUNC PRO TUNC
TO AUGUST 1, 2001 (DOCKET NO. 1019)**

TO THE HONORABLE JOSEPH J. FARNAN JR.,
UNITED STATES DISTRICT COURT JUDGE:

The Official Committee of Unsecured Creditors (the "Creditors' Committee"), by its counsel, hereby submits this Response to the Supplemental Application filed by the Official Committee of Asbestos Personal Injury Claimants (the "PI Committee") seeking authorization to employ, nunc pro tunc to August 1, 2001, Elizabeth Warren, an attorney and professor, as special bankruptcy consultant to Caplin & Drysdale, Chartered the firm retained in these cases as national counsel for the PI Committee (the "Supplemental Application"), and respectfully represents as follows:

**JURISDICATION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding and this response is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

2. On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been procedurally consolidated for administrative purposes only and are being jointly administered. Pursuant to an order of the Court, the Debtors are continuing to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. On April 12, 2001, the United States Trustee appointed the Creditors' Committee. On that same date, the United States Trustee also appointed two other official committees to represent the interests of asbestos claimants in these chapter 11 cases; one being the PI Committee and the other a committee to represent the interests of asbestos-related property damage claimants. In addition, on June 18, 2001, the United States Trustee appointed an official committee to represent the interests of equity security holders of the Debtors.

4. By order of this Court dated June 13, 2001, this Court authorized the PI Committee to employ the firm of Caplin & Drysdale, Chartered ("Caplin & Drysdale") as National Counsel for the PI Committee. The PI Committee's application to employ Caplin & Drysdale was accompanied and supported by the affidavit of Elihu Inselbuch (the "Inselbuch Affidavit"), a member of the firm. In his affidavit, Mr. Inselbuch represented that Caplin & Drysdale were "experienced in insolvency and corporate reorganization and in complex corporate and litigated matters…" See the Inselbuch Affidavit at 2.

5. Mr. Inselbuch subsequently filed with this Court a Supplemental Affidavit dated September 10, 2001, which disclosed that on or about August 21, 2001, Caplin & Drysdale had engaged Elizabeth Warren, an attorney and professor of law at Harvard Law School, as a Special Bankruptcy Consultant to Caplin & Drysdale, to work with the firm in connection with

its representation of the PI Committee in these chapter 11 cases, as well as in other bankruptcy cases in which Caplin & Drysdale represents committees on behalf of asbestos personal injury claimants.  The Supplemental Inselbuch Affidavit further disclosed that Professor Warren would not be a member or associate of Caplin & Drysdale, or maintain an "of counsel" relationship to Caplin & Drysdale.  Professor Warren would maintain her own time records in accordance with the Administrative Fee Order previously entered by the Court, and would seek to be compensated not by submitting her own monthly and interim fee applications, but by incorporating her time entries into the Caplin & Drysdale fee applications.

6. In mid October 2001, the Debtors filed a statement with the Court raising questions as to the reasons for Professor Warren's participation in these cases, and certain issues in connection with the proposed manner in which she was proposed to be retained.

7. Perhaps in an effort to address some of the concerns raised by the Debtors, the PI Committee filed the Supplemental Application, which was accompanied by an affidavit from Professor Warren pursuant to Bankruptcy Rule 2014 (the "Warren Affidavit").  Upon information and belief, a similar retention application has been filed in each of the other pending asbestos-related chapter 11 cases in which Caplin & Drysdale represents the committee of asbestos personal injury claimants.

**RESPONSE**

8. While the Supplemental Application and the Warren Affidavit (collectively, the "Retention Pleadings") provide more information with respect to the proposed employment than did the Supplemental Inselbuch Affidavit, the Retention Pleadings still raise several issues and concerns that the Creditors' Committee believes should be addressed and/or

clarified prior to this Court authorizing Professor Warren's employment in these chapter 11 cases.

9.  First, the Retention Pleadings fail to adequately set forth the necessity for Professor Warren's employment. Pursuant to Bankruptcy Rule 2014, a retention application must state, among other items, (i) "the specific facts showing the necessity for the employment", (ii) "the reasons for the selection [and] the professional services to be rendered", and (iii) "any proposed arrangement for compensation." Fed. R. Bankr. P. 2014(a). The Supplemental Application merely states that Professor Warren will provide "advice and guidance" to the PI Committee through Caplin & Drysdale and will generally "focus her efforts" in assisting Caplin & Drysdale "with respect to the Plan of Reorganization process" in this and the other pending asbestos cases in which Caplin & Drysdale is engaged. Supplemental Application at 3. In addition, the Supplemental Application states that it is anticipated that Professor Warren will provide "very limited services" and that generally her billable hours "will not exceed ten hours per month and usually will be significantly less." Supplemental Application at 3. Based on these limited disclosures, the Creditors' Committee is unclear as to exactly what services Professor Warren will be providing and whether her employment is even necessary at all. The Supplemental Application fails to delineate precisely what services Professor Warren is going to provide on top of those services already being provided by Caplin & Drysdale, a law firm with ample experience in asbestos-related chapter 11 cases, including plan of reorganization issues. Although the PI Committee does not "anticipate" that Professor Warren will bill a lot of time, her retention will nevertheless result in the incurrence of additional costs which, based on the limited descriptions in the Supplemental Application, do not appear to be warranted or justified.

10. Second, the Creditors' Committee has concerns regarding whether Professor Warren is truly "disinterested" within the meaning of section 101(14) of the Bankruptcy Code. While the Supplemental Application states that Professor Warren is disinterested and neither holds nor represents any interest adverse to the Debtors or the Debtors' estates, Professor Warren's own verified statement merely states that "[as] far as I have been able to ascertain, I have no connection with the Debtors, their creditors, the United State Trustee or any other party, or their respective attorneys or accountants". Warren Affidavit at 2. Unlike most other professionals retained in these cases, including Caplin & Drysdale, Professor Warren has not disclosed the nature or extent of the conflict search she performed to determine whether in fact she is "disinterested". Indeed, the Creditors' Committee has concerns regarding Professor Warren's affiliation with and employment by Harvard Law School and whether Harvard Law School and/or its affiliates (collectively "Harvard") may have connections with the Debtors, their creditors or other parties in interests in these cases, including, in particular, whether Harvard is an asbestos-related property damage claimant. The Creditors' Committee believes that full disclosure of these matters is appropriate and required by Bankruptcy Rule 2014(a).

11. Third, although Professor Warren indicates that she will maintain detailed, contemporaneous time records which time entries will then be incorporated into Caplin & Drysdale's fee applications, the Creditors' Committee has some serious concerns about how Professor Warren intends to accurately account for and allocate her time to these chapter 11 cases. The Retention Pleadings disclose that Professor Warren will be giving Caplin & Drysdale advice and guidance in connection with not only these cases, but also in connection with the seven other asbestos-related chapter 11 cases in which Caplin & Drysdale is counsel to committees representing asbestos personal injury claimants. This raises the issue of whether

Professor Warren will keep case specific time records where the particular services being rendered may be relevant to more than one or all of the asbestos cases.  For example, in the event that Professor Warren spends one hour working on a "plan/trust concept" or other similar topic that has applicability to all of the asbestos cases, such hour should be properly allocated among all of the asbestos cases rather than billing one hour's time in each of the cases.  The Creditors' Committee seeks assurances from Caplin & Drysdale, as well as Professor Warren, that Professor Warren's time will be properly allocated amongst the various estates.  The Creditors' Committee, of course, reserves all of its rights to object to the fee applications of Caplin & Drysdale to the extent that the Creditors' Committee has concerns about the services for which Professor Warren is seeking compensation and about whether her time has been allocated in a proper case specific manner.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

**WHEREFORE**, in light of the foregoing concerns, the Creditors' Committee respectfully requests that the Court schedule a hearing on the merits of the Supplemental Application so that the PI Committee and its counsel can properly address the Creditors' Committee's concerns and a proper determination on the merits can then be made.

Dated: Wilmington, Delaware
November 5, 2001

**Respectfully submitted:**

**STROOCK & STROOCK & LAVAN LLP**
Lewis Kruger, Esq.
Kenneth Pasquale, Esq.
Robert A. Raskin, Esq.
Members of the Firm
180 Maiden Lane
New York, NY 10038-4982
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

-and-

**DUANE, MORRIS & HECKSCHER LLP**

/s/ Michael R. Lastowski
Michael R. Lastowski (DE I.D. No. 3892)
William S. Katchen
1100 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
Email:     mlastowski@duanemorris.com

Co-Counsel for the Official Committee of Unsecured Creditors