**EXHIBIT "B"**

**SUMMARY OF PRINCIPAL SERVICES RENDERED FOR THE PERIOD**
<u>JULY 1, 2001 THROUGH SEPTEMBER 30, 2001</u>

1.      Case Administration – 15537 – 166.2 hours ($42,126.50)

This matter covers the attention given to routine motions and pleadings, and preparation of responses thereto, the preparation of summaries and analyses of such papers for the PD Committee, and meetings with the Debtors and/or their professionals.

The Applicant carefully reviewed, summarized, and provided advice and recommendations to the PD Committee, with respect to the Debtors' motion for entry of an order granting administrative priority status to valid reclamation claims, the Debtors' motion to extend the exclusive filing period, the Debtors' motions to assume, sell and assign a prime real estate lease and the "Dragon Court" Lease, the Debtors' stipulations and agreements with AON Consulting and First Union Commercial Corporation. The Applicant also carefully reviewed the Debtors' response to the PD Committee's motion compelling the Debtors to establish a central document depository. Further, the Applicant carefully reviewed, summarized and provided advice and recommendations to the PD Committee, with respect to the Honeywell/ECARG motion to modify the automatic stay and the Debtors' response thereto and Exxon Mobil's motion for summary judgment and memorandum of law in support thereof.

In addition, the Applicant continued to negotiate with the Debtors' counsel the terms of a proposed confidentiality agreement between the PD Committee, the Applicant and the Debtors. The Applicant reviewed and provided comments on the proposed agreement to the Debtors' counsel. During the course of the negotiations, the Applicant had numerous conversations with Debtors' counsel regarding the terms of such

agreement, and provided constructive comments and suggestions to such agreement. The Applicant also discussed the terms and conditions of the proposed agreement with the PD Committee's financial advisors.

2.      Debtors' Business Operations – 15538 - 7.4 hours ($1,765.00)

This matter covers the attention given to review and analysis of the Debtors' statement of affairs, schedules of assets and liabilities, monthly reports of operations and their Securities and Exchange Commission filings.

During the Application Period, the Applicant expended time reviewing the Debtors' SEC filings in connection with, among other things, preparing its response to the Debtors' case management proposal. The Applicant discussed the contents of certain of the SEC filings with the PD Committee's financial advisors.

3.      DIP Financing – 15542 – .8 hours ($180.00)

This matter covers the negotiation, preparation and review of the debtor-in-possession financing documents and terms thereof and matters related thereto.

4.      Creditors Committee – 15539 – 94.1 hours ($27,251.50)

This matter covers formation, membership, and by-law issues of the PD Committee. It also covers attendance at PD Committee meetings, preparation of materials for and presentations thereon to the PD Committee, and the preparation of minutes of the meetings.

During the Application Period, the Applicant convened weekly telephonic meetings of the PD Committee. In addition, the Applicant convened one in-person meeting of the PD Committee. The Applicant prepared detailed agendas for each meeting, reviewed pending matters and issues in preparation therefore, and counseled the

members in formulating a position on such matters and positions. Further, subsequent to each meeting the Applicant drafted, and circulated for review prior to adoption, drafts of minutes of the PD Committee meetings.

5.  Retention of Professionals – 15540 – 30.7 hours ($7,493.00)

This matter covers the retention of professionals by the PD Committee or the Debtors, including interviews, discussions, motions and objections.

During the Application Period, at the PD Committee's direction, the Applicant assisted the PD Committee in finalizing the retention papers of its financial advisor, Conway Del Genio Gries & Co., LLC ("CDG"). The Applicant facilitated the PD Committee's engagement of CDG through the negotiation of the terms of retention of such professional.

Subsequently, after filing the retention papers for CDG, the Applicant responded to numerous phone calls and emails from counsel to the unsecured creditors committee and the Debtors regarding the terms of retention of CDG. The final terms of CDG's retention were not resolved prior to the end of the Application Period; however, as of the date of the filing of this Application, the terms of CDG's retention have been agreed to by the unsecured creditors' committee and the Debtors.

In addition, the Applicant finalized the retention papers of the PD Committee's claim expert.

The Applicant also advised the PD Committee regarding the Debtors' motion to employ Latham & Watkins, as an "ordinary course professional." The Applicant conducted an inquiry of the Debtors as to the scope of Latham's employment and

received a satisfactory response, therefore, eliminating the need to file an objection to Latham's employment.

Further, the Applicant reviewed the application for retention of Casner & Edwards, as special counsel to the Debtors, and advised the PD Committee in respect thereof.

At the direction of the PD Committee, the Applicant began drafting the joint application of the PD Committee and the Personal Injury Committee to employ the law firms of Cozen O'Connor and McKool Smith as special counsel to prosecute the fraudulent transfer actions, which application was subsequently filed after the Application Period.

The Applicant also advised the PD Committee regarding the Debtors' motion to employ Rust Consulting as Claims Agent.

6. Court Appearances – 15544 – 1.8 hours ($765.00)

This matter covers preparation for, and attendance at, omnibus court hearings and status conferences.

During the Application Period, the Applicant attended and actively participated in the hearing held on July 19, 2001.

7. Asset Dispositions – 15541 – 14.2 hours ($3,195.00)

This matter covers work performed in connection with Section 363 sales or ordinary course dispositions.

During the Application Period, the Applicant attempted to reach an agreement with the Debtors' counsel regarding the Debtors' motion to establish omnibus sale and/or abandonment procedures. The Applicant and the Debtors did not come to a resolution

prior to the deadline to file an objection and thus, the Applicant filed an objection on behalf of the PD Committee. Ultimately, after further negotiations with the Debtors, and upon discussion with the other committees, the PD Committee and the Debtors reached a consensual agreement on the sale and/or abandonment procedures which assuaged the PD Committee's articulated concerns.

8.  Fee Applications – 15543 – 144.4 hours ($23,010.50)

This matter covers time expended preparing fee applications for the Applicant, the applications for reimbursement of expenses of PD Committee members or professionals, and reviewing, and objecting if necessary, to fee applications of others.

During the Application Period, the Applicant expended time preparing, drafting and filing its second and third interim fee application and related application for reimbursement of expenses of PD Committee members. In addition, the Applicant prepared, drafted and filed its quarterly fee application.

9.  Travel – 15546 – 25.3 hours ($7,535.00)

This matter covers travel time of the Applicant.

During the Application Period, the Applicant traveled to Wilmington, Delaware to attend hearings in July. In addition, the Applicant traveled to Atlanta, Georgia to attend a specially set PD Committee meeting. In accordance with Local Rule 2016-2(d)(viii), all such time is being billed at fifty percent (50%) of regular hourly rates, to the extent work was not being performed en route.

10. Fraudulent Transfer Litigation – 15547 – 28.3 hours ($9,592.50)

This matter covers the analysis of the fraudulent transfer claims, motions to prosecute and hearings thereon. It also covers selection of professionals for this

litigation, consultation with the PD Committee, the Personal Injury Committee, and special counsel to prosecute the claims.

During the Application Period, the Applicant had numerous conversations with its committee members and counsel to the Personal Injury Committee regarding retention of professionals in connection with prosecuting the fraudulent transfer actions. At the direction of the PD Committee, the Applicant spent time identifying and interviewing prospective candidates for special counsel to prosecute the fraudulent transfer actions, and drafting the joint application to retain such special counsel.

The Applicant also spent time carefully reviewing the responses and objections filed in opposition to its seeking authority to prosecute the fraudulent transfer claims and preparing for argument thereon.

11.    Litigation Consulting – 15563 – 714.75 hours ($177,873.00)

This matter covers the analysis of litigation claims, other than the fraudulent transfer claims, including strategic motions contemplated or conceptualized by the PD Committee.

During the Application Period, the Applicant thoroughly analyzed the Debtors' motion to modify the preliminary injunction against future litigations against non-debtor affiliates. At the direction of the PD Committee -- which, as argued in Court, was principally concerned about preserving any enjoined claims for the benefit of the estates -- the Applicant researched the decisional law governing the issues and thereafter filed its response to the Debtors' motion.

Most importantly, as is evident by the substantial and thoughtful Response and Objection filed by the Applicant on behalf of the PD Committee, the Applicant spent

time analyzing, critiquing and developing the PD Committee's response to the Debtors' motion to establish case management procedures, establish a bar date, approve proof of claims forms, and approve a notification program. The Applicant's work included researching the decisional and procedural law governing and strategic thinking on the multitude of issues contained within the Debtors' motion, including the necessity for a bar date, the unprecedented proposed proof of claim forms, and the unprecedented proposed litigation procedures. Moreover, the Applicant met and conferred with numerous of the experts engaged by the PD Committee to analyze the Debtors' proposals, as well as to formulate counter-proposals.

As more fully set out in the PD Committee's Response and Objection, the Debtors' case management motion attempted to cut a path never before taken in a bankruptcy case. Accordingly, the Applicant faced the demanding tasks of cogently arguing against the Debtors' plan and advancing a more sensible and legally supportable alternative. The Applicant submits that its Response and Objection accomplished these tasks.

In addition, the Applicant expended time analyzing procedural and substantive issues and standards presented by various strategic actions conceptualized or contemplated by the PD Committee. Further, the Applicant prepared various drafts of strategic motions to facilitate actions being considered by the PD Committee.