**EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JJF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

### Affidavit of Katherine Kinsella

I, Katherine Kinsella, being first duly sworn, on oath, state as follows:

1.   I am an adult and competent to make this affidavit. I make this affidavit based on my own personal knowledge and belief.

2.   I am the President of Kinsella Communications, Ltd., a nationally recognized advertising and communications firm specializing in the design, preparation and implementation of legal notification programs in class action and bankruptcy cases. I have developed and consulted on some of the largest and most complex national notification programs in the country including media-based notification programs in cases involving consumer fraud, asbestos, breast implants, tobacco, infant formula, polybutylene plumbing, home siding products, antitrust, securities, and Holocaust restitution claims. I have designed, implemented or consulted on over 100 class actions, parens patriae actions, and bankruptcies including, among others:

>   Antitrust
>   *In re Nasdaq Market-Makers Antitrust Litigation*, No. M21-68 (RWS), 94 Civ. 3996 (RWS), M. D. L. No. 1203 (securities)
>
>   *Raz v. Archer Daniels Midland Co., Inc.*, No. 96-CV-009729 (Wis. Cir. Ct. Milwaukee County) (citric acid)
>
>   *Carlson v. Abbott Laboratories*, No. 94-CV-002608 (Wis. Cir. Ct. Milwaukee County) (infant formula)

1

*In re Motorsports Merchandise Antitrust Litigation*, No. 1:97-CV-2314-TWT (N.D.Ga) (merchandise)

*Big Valley Milling, Inc. v. Archer Daniels Midland Co.*, No. 65-C2-96-000215 (Minn. Dist. Ct., Renville County) (lysine)

*In re Toys "R" Us Antitrust Litigation*, M.D.L. No. 1211, Master File No. CV-97-5750 (E.D.N.Y.) (toys and other products)

*Copper Antitrust Litigation*, M.D.L. Docket No. 1303 (W.D. Wis.) (physical copper)

*State of Florida v. Nine West Group, Inc.*, Civil Action No. 00 CIV 1707 (BDP) (S.D.N.Y) (shoes)

Consumer

*Bonilla v. Trebol Motors Corporation*, No. 92-1795 (D.P.R.) (automobiles)

*Burch v. American Home Products Corp.*, No. 97-C-204 (1-11) (W.Va. Cir. Ct., Brooke County) (Fen Phen)

*Woosley v. State of California*, No. CA 000499 (Cal. Super. Ct. Los Angeles County) (automobiles)

Discrimination

*In re Holocaust Victim Assets Litigation*, No. CV 96-4849 (ERK)(MDG) (Consolidated with CV-5161 and CV 97-461) (Holocaust)

*McNeil v. American General Life and Accident Insurance Co.*, No. 8-99-1157 (M.D. Tenn.) (insurance)

*Nealy v. Woodmen of the World Life Insurance Co.*, No. 3:93 CV-536 BN (S.D. Miss.) (insurance)

Mass Tort

*Engle v. RJ Reynolds Tobacco Co.*, No. 94-08273 CA 20 (Fla. Cir. Ct., Dade County) (tobacco injury)

*Backstrom v. The Methodist Hospital*, No. H.-94-1877 (S.D. Tex.) (TMJ injury)

Pension Benefits

*Forbush, Rhodes v. J. C. Penney Company, Inc. Pension*, Nos. 3:90-2719-X and 3:92-0109-X (N.D. Tex.)

*Collins v. Pension Benefit Guarantee Corp.*, No. 88-3406 and *Page v. Pension Benefit Guarantee Corp.*, No. 89-2997 (D.C. 1996)

Product Liability

*Cox v. Shell Oil Co.*, No. 18,844 (Ch. Ct., Obion Co., Tn.) (polybutylene pipe)

*Naef v. Masonite Corp.*, No.CV-94-4033) (Ala. Cir. Ct. Mobile County) (hardboard siding product)

*In re: Louisiana Pacific Corp. Inner Seal OSB Trade Practices Litigation*, MDL No. 1114, C 95-3178 VRW (N.D. Dist. Cal.) (oriented strand board)

*Cosby v. Masonite Corp.*, No. CV-97-3408 (Ala. Cir. Ct. Mobile County) (siding product) and *Quin v. Masonite Corp.*, No. CV-97-3313 (Ala. Cir. Ct. Mobile County) (roofing product)

*Ruff v. Parex, Inc.*, No. 96-CvS 0059 (N.C. Super. Ct. Hanover County) (EIFS)

*Garza v. Sporting Goods Properties, Inc.*, No. SA 93-CA-1082 (W.D. Tex.) (gun ammunition)

*Richison v. Weyerhaeuser Company Limited*, No. 05532 (Cal. Super. Ct., San Joaquin County) (roofing product)

3

*Shah v. Re-Con Building Products, Inc.*, No. C99-02919 (Cal. Super. Ct., Contra Costa County) (roofing product)

*Hart v. Central Sprinkler Corp.*, No. BC17627 (Cal. Super. Ct., Los Angeles County) (sprinklers) and *County of Santa Clara v. Central Sprinkler Corp.*, No. CV 17710119 (Cal. Super. Ct., Santa Clara County) (sprinklers)

Bankruptcies with Mass Tort or Consumer Claimants

*In re Dow Corning*, No. 95-20512 (Bankr. E.D. Mich.) (breast implant)
*In re U.S. Brass Corp.*, No.94-40823S (Bankr. E.D. Tex.) (polybutylene)

3. In particular, I have designed and implemented notice in the following asbestos bankruptcies and class actions:

*In re: Johns-Manville Corp.*, 68 B.R. 618, 626 (Bankr. S.D.N.Y)
*Ahearn v. Fibreboard Corporation*, C.A. No. 6:93cv526 (E.D. Tex), and *Continental Casualty Co. v. Rudd*, C.A. No. 6:94cv458 (E.D.Tex)
*Georgine v. Amchem, Inc. et al.*, C.A. No. 93-CV-0215 (E.D.Pa.)
*In re Raytech Corp.*, No. 5-89-00293 (Bankr. D. Conn.)
*In re The Celotex Corp.*, Consolidated Case Nos: 90-10016-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.)

4. Several courts have commented favorably on the notice programs I have designed and implemented to reach asbestos claimants. In *Ahearn v. Fibreboard Corp.*, No. 6:93 cv 526 (E.D. Tx) and *Continental Casualty Co. v. Rudd*, No. 6:94cv458 (E.D.Tx), Chief Judge Robert M. Parker stated: "I have reviewed the plan of dissemination, and I have compared them to my knowledge at least of similar cases, the notices that Judge Weinstein has worked with [in the *Agent Orange* litigation] and Judge Pointer [in the *Silicon Gel Breast Implant Litigation*], and it appears to be clearly superior." Similarly, in *In re Celotex Corp.*, Nos. 90-10061-8B1 and 90-10017-8B1 (Bankr. M.D.Fla.), the Hon. Thomas E. Baynes, Jr. stated: "the record should also reflect the Court's appreciation to Ms. Kinsella for all the work she's done, not only in pure noticing, but ensuring that what noticing we did was done correctly and professionally."

5. I have reviewed the Response and Memorandum of the Official Committee of Asbestos Property Damage Claimants in Opposition to Debtors' Motion for Entry of Case Management Order, Establishment of a Bar Date, Approval of the Proof of Claim Forms and Approval of the Notice Plan (the "PD Committee's Objection"), the Affidavit of Todd B. Hilsee on Bar Date Notice Plan (the "Hilsee Affidavit"), the Opposition of the Official of Asbestos Personal Injury Claimants to Debtors' Motion for Entry of Case Management Order, Establishments of a Bar Date, Approval of the Proof of Claim Forms and Approval of Notice Plan (the "PI Committee's Objection"), Zonolite Plaintiffs' Objection to Debtors' Motion For Entry of Case Management Order, Establishment of Bar Date, Approval of Proof of Claim Forms and Approval of Notice Program (the "Zonolite Plaintiff's Objection") and Medical Monitoring Claimants' Objection To Debtor's Motion for Entry of Case Management Order (the "Medical Monitoring Claimants' Objection.").

6. As a result of the various Objections and the Hilsee Affidavit, I have been asked by the Debtors to revise my Notice Plan filed in conjunction with the Debtors' Motion for Entry of Case Management Order, Motion to Establish Bar Date, Motion to Approve Claims Forms and Motion to Approve Notice Plan (the "Debtors' Bar Date Motion") to address some of the issues raised by the various parties and Mr. Hilsee with respect to the Notice Plan. Attached hereto is my Revised Notice Plan.

7. Among the objections raised by the PD Committee and Mr Hilsee with respect to the Notice Plan, were several objections concerning the design and content of the short form and related trade notices. Specifically, the PD Committee and Mr. Hilsee objected to the headline of my draft notices as too broad and not specific enough to get the attention of claimants. There is no standard for using headlines in legal notice nor specific requirements for the types of headlines to be used. In fact, - by far the great majority of the bar date and class action notices do not contain an attention getting headline at all. Such notices traditionally contain the legal caption of the case. However,

5

at the request of the Debtors, I have revised the short form and trade notices to contain a headline, which I believe is more consistent with the type of headline that has been requested by the PD Committee. The revised short form and trade notices are attached to the Revised Notice Plan as Exhibits 9 and 13.

8. The PD Committee and Mr. Hilsee objected to the fact that the notices were directed at claims rather than claimants. There is no rule or requirement that notices be directed at claimants rather than claims. I routinely prepare notices with various types of headlines. However, at the request of the Debtors, I have revised the notices so that they are now directed at claimants rather than claims.

9. The PD Committee and Mr. Hilsee object to the draft notices as being confusing in that they address several type of claims and claimants. In analyzing the demographics of all claimant groups, I determined that there are two primary demographic targets that include the vast majority of all claimants. Because of the nature of the demographic targets and their consumption of overlapping media, I constructed a plan that effectively reaches these groups without the necessity of separate media campaigns to reach the claimant groups individually. In addition, the content of the revised notices clearly stipulates types of claimant and claims using subheads, product descriptions, and simple language to avoid any confusion. In order to address the PD Committee's concerns about the confusion that a combined notice may cause, the Debtors requested that I revise the notices. The notices have been redesigned to more fully describe the different types of Grace products, which may be the subject of claims and the different type of claims that a claimant may hold.

10. The PD Committee objects to the notices as failing to contain information that both educates and warns unwary claimants. The notices are designed to provide notice of the bar date, consistent with the requirements of due process set forth in the body of case law that has developed in this field. I am not aware of any requirements that

such notice need to either educate or warn. The notices simply need to notify potential claimants of the bar date, the implications of failing to file a claim by the bar date and describe the claims that are being barred. The notices attached to the Notice Plan and the Revised Notice Plan contains the information required to comply with due process requirements.

11. The PD Committee asserts that the bar date notices do not "communicate all the required information". The purpose of a summary bar date notice is to provide sufficient information that enables claimants to undertake an inquiry as whether or not they are affected by the bankruptcy and need to take an action to further educate themselves with respect to filing a claim.

12. The PD Committee indicates that they believe that the TV spot is "unintelligible" and lacks visuals. First, with respect to visuals, the objection is incorrect. The description of the TV spot indicates that "visual treatment [is] to be determined." It was always the Debtors' intention to have visuals including Zonolite and non-Zonolite products. In the absence of a fully produced 30-second TV spot, it is impossible to assert that the spot is unintelligible. The purpose of the TV spot is to alert viewers to the bar date, provide basic product information and direct viewers to a toll-free number and web site for more information. While the TV spot originally drafted served this purpose, the TV spot has been revised along the same lines as the summary bar date notice.

13. Further, the TV spot is fully consistent with television spots I produced in *In re Johns-Manville Corporation, Ahearn v. Fibreboard, Georgine v. Amchem, In re Celotex Corporation and Carey Canada, Inc., Cox v. Shell Corporation, State of Alaska v. Mylan Laboratories, Inc., Cosby v. Masonite Corp.* and *Quin v. Masonite Corp., Engle v. R. J. Reynolds Tobacco, McNeil v. American General Life and Accident Insurance Co.,* and *In re Dow Corning*. These television spots resulted in millions of telephones calls to toll-free numbers placed by viewers seeking further information. If required, storyboards

of the TV spot can be provided to the Court, as appropriate, to more specifically illustrate the TV spot.

14. With respect to Zonolite claimants, the PD Committee objects to the limited description of Zonolite contained within the notices. I have revised the notices to contain a more detailed description of Zonolite. The language that I have used to describe Zonolite is essentially the language the parties agreed to use for the *Barbanti* class action notice. I have also revised the notices to contain a picture of the vermiculite used in Zonolite, which is its most identifiable characteristic. This picture, along with the description, gives potential claimants adequate information to determine whether they have the Zonolite product in their homes. I have not included a picture of the Zonolite Attic Insulation bag in the notices as suggested by Mr. Hilsee. Zonolite Attic Insulation was sold from the 1920s or 1930s to 1984. During that time period, the bag changed a number of times. In addition, only individuals who actually installed the insulation would have seen the bag. Given that the insulation was installed over a 64-year period, it can be argued that a large percentage of current homeowners with Zonolite did not install the product themselves. As a result, it would be of no value to picture a Zonolite bag and it would also be confusing.

15. The PD Committee suggests that with respect to non-Zonolite products, the notices should target more than just commercial building owners. The Debtors records show that the great majority of the PD Claims and PI Claims filed against the Debtors have been for damages resulting from MK-3, which was installed and found primarily in commercial buildings. However, non-Zonolite claims have also related to residential and public buildings including schools. Thus, the notices have been revised to clarify types of buildings, which may give rise to an asbestos property damage claim.

16.  The PD Committee suggests that the notices are not properly directed at schools. While I have directed the notices to owners and operators of public buildings, which would therefore included schools, I understand the great majority of public and private schools have already settled any claims they have against Grace with respect to "asbestos containing products" in two national class actions that were filed and settled, namely *In re Asbestos School Litigation,* No. 83-0268 (E.D. Pa) *and Central Wesleyan College v. W. R. Grace, et al. 2:84-1860-8 (D.S.C.),* as well as other actions filed by school districts. Although these claimants are adequately reached in the Notice Plan, as a result, further notice to such claimants is actually unnecessary as they have already settled their claims against Grace.

17.  The Notice Plan has been thoughtfully structured to reach all potential claimants and provide those claimants with a reasonable opportunity to file their claims by the bar date. The Committee's objections to the reach of the Notice Plan are minimal and tied closely with the Committee's objections to the content of the notices. In fact, it is difficult to criticize the reach of the Notice Plan against the target audiences since these reaches are among the highest achieved in class action and bankruptcy notice programs historically. To the extent that the Committee had specific issues with respect to the reach of the Notice Plan, those issues have been addressed.

18.  The Committee suggests that the costs of the Notice Plan are excessive. The Committee, however, does not articulate which portions of the Notice Plan are excessively costly. The costs of the Notice Plan have been estimated based on certain discounts that I have previously negotiated from various publications. I anticipate additional costs savings and discounts may be available when I actually purchase certain media.

19.     In addition, with respect to costs, the Notice Plan is based on achieving a high reach of two primary target demographics – Men 65 of age and older ("Men 65+") and Adult 35 years of age an older ("Adults 35+"). The Notice Plan is estimated to reach 96.5% of the target demographic group for PI Claims (Men 65+) and 95.4% of the target demographic group for PD Claims and Zonolite Claims (Adults 35+). I constructed the Notice Plan to provide comprehensive reach of both target demographics, not just the demographic which includes PI Claimants. Although the PD Committee states that the plan "delivers no real 'reach' enhancement over far cheaper plans" that statement is contradicted by the above cited reach delivery against the two separate targets. In addition, the $1 million spent in the plan, which the Committee claims is "accruing to no benefit," reflects media selected to reach very specific claimant groups based on geographic considerations and diversity of claim type as outlined in the plan. This is a complex plan, and unlike plans that seek a high reach of one major target demographic with lesser reach of other target demographics, its size and cost reflect what is required to deliver high reaches of both targets. Finally, it is consistent in cost, when factoring in current media costs, with other notice programs I designed and implemented directed to asbestos claimants. All these plans have been approved by other courts and implemented with excellent and verifiable results.

20.     The Committee and Mr. Hilsee indicate that they believe that the reach calculations contained within the Notice Plan are inflated. The reach calculations have been compiled using data from Media Mark Research and Nielsen Media Research, two nationally accredited media and marketing research firms. These firms are the leading sources of such information in the advertising industry. The combined reach estimates for print and television advertising are calculated with a Telmar software product that is used widely throughout the advertising industry to calculate estimates of this type. It is possible that different software programs may provide estimates that are slightly higher or lower but the variance is minimal. In fact, my staff recalculated the reaches using two other software programs and found a variance in reach of no more than .03 to .06 percent.

21.     The Committee objects to the Notice Plan as failing to adequately provide the necessary notice to Zonolite claimants in Canada. In response, I have prepared a short form notice for Canada, a TV spot for Canada and have revised the Notice Plan to include publication of the short form notice in Canada and broadcast of the TV spot in Canada.

22.     The Notice Plan for non-Zonolite claimants in Canada is adequate. I understand that no property damage claims have been filed against the Debtors by Canadian claimants since the issuance of the favorable ruling in *Privest Properties, et al. v. The Foundation Company of Canada et al., C884875* wherein the Supreme Court of British Columbia found, among other things, that Grace's MK-3 product was not an inherently dangerous product.

23.     With respect to personal injury claimants in Canada, I understand that the Canadian workers compensation system provides claimants the appropriate redress for their injuries. The Notice Plan structured for Canada, therefore, is not directed to PI Claimants.

24.     The Notice Plan for the Pacific Rim has not been adjusted. I understand from my discussions with the Debtors that they are not aware of sales of asbestos containing products outside of the United States and Canada. I further understand the Debtors' records contain information suggesting that for a period of time in the 1970s and early 1980s Grace sold some vermiculite products to various parties in the Persian Gulf region and Asia. Grace has told me that these sales constituted no more than about 1% of its sales of vermiculite products. Further, Grace's records suggest that the workers installing Grace's vermiculite products for these projects were from around the world. As a result, there is no possible way for Grace to provide notice to such potential claimants.

25. With respect to the ads sized to be used in Puerto Rico, I inadvertently cited the wrong size. All ads will be appropriately sized after translation and will adhere to the same readability standards I employ for the other bar date notices used in the plan.

26. The Medical Monitoring Claimants are simply wrong in their broad allegation that the Notice Plan fails to address their claims. First, the Notice Plan, at pp. 16 clearly provides that the Bar Date Notice Package will be mailed to all residents of Libby, Montana, in addition, the Notice will be published in the Libby, Montana newspaper *The Missoulia Independent*, in *Parade & USA Weekend* carried in seven different local newspapers in Montana as well as relevant trade and consumer publications. The notices specifically describe the claimants to whom the bar date applies to include holders of claims "caused by asbestos in products manufactured by Grace or from vermiculite mined, milled or processed by Grace." The notices also clearly provide that the bar date applies to ANY claims against Grace. Thus, the Medical Monitoring Claimants have been amply provided for in the Notice Plan.

27. The Committee's expert, Todd Hilsee, criticizes the Notice Plan for many reasons that have no basis in law. The Notice Plan describes a comprehensive plan, that provides the court with a clear understanding of how Grace's products relate to specific claimant groups, the methods used to determine the demographics of claimants, the basis for selecting media vehicles and attaches detailed exhibits and actual notices. There is no requirement that a Notice Plan describe the *rationale* behind the content of the notices, especially in circumstances where the notices are attached. What is most vital to consider in this matter, is the content of the draft notices and the information with respect to the media selected and reach calculated.

28. As outlined in detail above and as the Court and parties can readily see in reviewing the amended notices, the Committee's concerns regarding the content of the notices have been addressed. Likewise, in reviewing the Revised Notice Plan, adjustments have been made to address the Committee's reach concerns in Canada.

29. The Notice Plan, as amended, provides potential claimants with adequate information with respect to the bar date and the claims being barred. It informs potential claimants of the effect of not filing a claim by the bar date and will be sent to all known claimants and published in appropriate media so as to adequately reach unknown claimants. The Notice Plan, as revised, is consistent with the many notice plans I have submitted in Chapter 11 Bankruptcy cases, complies with due process and should be sustained.

October 29, 2001                                    Katherine Kinsella

                                                    /s/ Katherine Kinsella

Signed and Sworn before me
this 29 day of October, 2001.

_____
Notary Public

My Commission Expires
July 14, 2004