IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JJF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**DEBTORS' MOTION FOR THE ENTRY OF AN ORDER CLARIFYING
THE ORDER AUTHORIZING THE DEBTORS TO HONOR CERTAIN
PREPETITION OBLIGATIONS TO CUSTOMERS AND LICENSORS
AND TO OTHERWISE CONTINUE IN THE ORDINARY
COURSE OF BUSINESS CUSTOMER PROGRAMS AND PRACTICES**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned attorneys, hereby move (the "Motion") the Court for entry of an order clarifying the Order Authorizing the Debtors to Honor Certain Prepetition Obligations to Customers and Licensors and to Otherwise Continue in the Ordinary Course of Business Customer Programs and Practices (the "Customer Practices Order").[2] In support of this Motion, the Debtors state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Capitalized terms not defined herein have those meanings ascribed to them in the Customer Practices Motion (as defined herein).

## Jurisdiction

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. The statutory bases for the relief requested herein are sections 105(a), 363(c), 1107(a) and 1108 of title 11 of the United States Code (as amended, the "Bankruptcy Code").

## Background

3. On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4. On the Petition Date, the Court entered the Customer Practices Order which authorized the Debtors, pursuant to sections 105(a), 363(c), 1107(a) and 1108 of the Bankruptcy Code, to perform certain prepetition obligations relating to the Debtors' Customer Practices, including, without limitation, practices pertaining to discounts, rebates, warranties and performance guarantees. In essence, the Debtors received authority to continue those Customer Practices that they believe are beneficial and cost-effective to their businesses.

5. After its entry, it became apparent that the Customer Practices Order may not address an additional customer program which, although not specifically enumerated in the Customer Practices Order, falls within the spirit and intent of such order. In particular, prior to the Petition Date, the Debtors issued a significant number of coupons offering discounts on certain of the Debtors' fireproofing and acoustical plaster products (the "Coupons"). The Coupons are currently outstanding in the marketplace.

6. The Coupons arise from two settlement agreements executed by the Debtors and other defendant manufacturers of asbestos containing materials, in resolution of two class action lawsuits filed by (i) all elementary and secondary public school districts and non-profit private schools in the United States and (ii) all public and private colleges and universities in the United States. The lawsuits alleged, inter alia, that certain of the Debtors' asbestos - containing fireproofing and acoustical products were hazardous. The complaints in these actions sought compensatory and punitive damages, as well as injunctive relief, for allegations that the Debtors should bear the costs of inspection, testing, identification, analysis, repair, removal and replacement of asbestos-containing products used in school buildings. The Debtors denied any liability for the claims asserted in the complaints and Debtors' liability was never determined. After extensive negotiations among the parties, however, the Debtors were able to resolve the lawsuits pursuant to the settlement agreements which were executed in or about 1995 and 2000, respectively.

7. In connection with the 1995 class action settlement, all of the settling parties paid in the aggregate approximately $57,500,000 in cash, plus discounts, credits and rebates not to exceed $154,200,000. The Debtors executed a confidentiality agreement in connection with the 1995 class action settlement which prohibits the Debtors from disclosing the amount of cash consideration they specifically paid pursuant to such agreement as one of the settling parties. With respect to the 2000 class action settlement, as of April, 2000, upon information and belief, a settlement fund of $53 million in cash and $26.4 million in Coupons had been created, but several defendants had not yet settled with the plaintiffs. The Debtors paid approximately $25 million in cash to the class of claimants embodied in the 2000 class action settlement and agreed to issue up to approximately $25 million in Coupons redeemable by class members over the next ten years. The holders of each Coupon are entitled to a discount of $2.50 per 50 lb. bag of certain of the Debtors'

fireproofing and acoustical plaster products. Honoring the Coupons will not preclude the Debtors from making a profit on the products sold.

### Relief Requested

8. Although honoring the Coupons unquestionably falls within the spirit of the Customer Practices Order, the Customer Practices Order does not specifically authorize the Debtors to honor the Coupons. Accordingly, the Debtors have filed this Motion, in an abundance of caution, requesting that the Court make clear that the Customer Practices Order authorizes the Debtors to honor the Coupons.

### Basis for Relief

9. The Coupons are exactly the sort of Customer Program envisioned by the Customer Practices Order and it is a Customer Practice which the Debtors absolutely want to continue to honor and maintain during these Chapter 11 Cases. Specifically, the Debtors were granted the authority to continue the Customer Practices pursuant to sections 105(a), 363(c), 1107(a) and 1108 of the Bankruptcy Code because they have been successful business strategies in the past, responsible for generating valuable goodwill, repeat business and net revenue increases.[3] Indeed, maintaining the Customer Practices throughout the Chapter 11 Cases is essential to the continued vitality of the Debtors' businesses, and ultimately to the Debtors' prospects for a successful reorganization. The Debtors' goodwill and ongoing business relationships may erode if their customers (i) perceive that the Debtors are unable to fulfill the prepetition promises they have made through the Customer Practices and (ii) choose to meet their needs through the Debtors' competitors.

---

[3] The Debtors reasons in support of entry of the Customer Practices Order are set forth in more detail in the Debtors' Motion for Entry of an Order Authorizing the Debtors to Honor Certain Prepetition Obligations to Customers and Licensors and to Otherwise Continue in the Ordinary Course of Business Customer Programs and Practices (the "Customer Practices Motion") dated April 2, 2001.

4

10. The Debtors are involved in an extremely competitive industry and the Debtors have attempted to distinguish themselves by maintaining high levels of customer service and satisfaction. In furtherance thereof, the Debtors have from time to time adopted certain practices and policies and provided their customers with certain services aimed at enhancing consumer satisfaction. The issuance of the Coupons is just such an instance. Failure to honor the Coupons would likely hinder customer satisfaction and send an erroneous message to the Debtors' customers that the Debtors' commitment to providing such prepetition services has waivered. Such a message would undeniably turn customers away from the Debtors' products and in this case, reduce the Debtors' product sales. Clearly, any loss of sales is not in the best interests of the Debtors, their estates or creditors.

11. Therefore, the Debtors believe that it is in the best interests of their estates and creditors that the Customer Practices Order is clarified to make explicit that the Debtors are authorized to honor the Coupons in the ordinary course and as the Debtors see fit in their business judgment.

### Notice

12. Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee and (v) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, (i) authorizing the Debtors to honor the Coupons in the ordinary course and in the Debtors' business judgement and (ii) granting such other relief as the Court deems just and proper.

Wilmington, Delaware
Dated: November 12, 2001

Respectfully submitted,

KIRKLAND & ELLIS
James H.M. Sprayregen
James W. Kapp III
Samuel A. Schwartz
Roger J. Higgins
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

_____
Laura Davis Jones (Bar No. 2436)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession