# EXHIBIT 1

# SETTLEMENT AGREEMENT

# SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (this "**Settlement Agreement**") is made and entered into as of May 31, 2018, by and among Stephen S. Gray, the Liquidating Trustee appointed in the Bankruptcy Cases (as defined below) (the "**Liquidating Trustee**"), as Trustee of the FIAC Liquidating Trust (the "**Liquidating Trust**"), Robert P. Liscouski ("**Mr. Liscouski**"), Michael Turmelle ("**Mr. Turmelle**") and James Simon, Jr. ("**Mr. Simon**") (each a "**Party**," and collectively, the "**Parties**").

## RECITALS

**WHEREAS**, on October 10, 2016, FIAC Corp. (f/k/a IMX Acquisition Corp.) and certain related entities (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of the title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), jointly administered under Case No. 16-12238 (BLS) (collectively, the "**Bankruptcy Cases**");

**WHEREAS**, on August 3, 2017, the Bankruptcy Court entered the *Findings of Fact, Conclusions of Law, and Order Under Section 1129 of the Bankruptcy Code and Rule 3020 of the Bankruptcy Rules Confirming the First Amended Joint Plan Pursuant to Chapter 11 of the Bankruptcy Code* [ECF No. 917] the ("**Confirmation Order**") confirming the *First Amended Joint Plan Pursuant to Chapter 11 of the Bankruptcy Code* (as confirmed, the "**Plan**") [ECF No. 802] and all capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Plan;

**WHEREAS**, on August 11, 2017, the Debtors provided notice that the Plan went effective on that day [ECF No. 932], the Liquidating Trust was established and the Liquidating Trustee was appointed;

**WHEREAS**, Mr. Liscouski was employed as the President of Secure Point Technologies, Inc. (f/k/a Implant Sciences Corporation) ("**Secure Point**"), a public company and one of the Debtors, pursuant to that certain Employment Agreement between Mr. Liscouski and Secure Point, dated December 15, 2015 (the "**Employment Agreement**");

**WHEREAS**, Mr. Liscouski and Implant Sciences Corporation entered into that certain Agreement, dated October 7, 2016 (the "**Liquidation Agreement**"), pursuant to which Mr. Liscouski has asserted a claim of $300,000.00 against the Debtors;

**WHEREAS**, On July 1, 2015, Mr. Simon was elected to, and Mr. Liscouski and Mr. Turmelle were reelected to, the board of directors (the "**Board**") of Secure Point and remained members of the Board (each a "**Board Member**" and together the "**Board Members**") until August 11, 2017;

**WHEREAS**, on or about December 19, 2016, Mr. Liscouski filed four (4) proofs of claim in the Bankruptcy Cases, numbered Claim Nos. 115, 116, 117, 118, against FIAC Corp. (f/k/a IMX Acquisition Corp.), Secure Point, FCAC Corp. (f/k/a C Acquisition Corp.), and FASIC Corp. (f/k/a Accurel Systems International Corporation), respectively; and on or about

August 2, 2017, Mr. Liscouski filed one (1) proof of claim in the Bankruptcy Cases, numbered Claim No. 207 (collectively, the "**Liscouski Proofs of Claim**");

**WHEREAS**, on or about August 2, 2017, Mr. Simon filed one (1) proof of claim in the Bankruptcy Cases, numbered Claim No. 206 (the "**Simon Proof of Claim**");

**WHEREAS**, on or about November 27, 2016, Mr. Turmelle filed one (1) proof of claim in the Bankruptcy Cases, numbered Claim No. 40, against Secure Point; on or about May 16, 2017, Mr. Turmelle filed one (1) proof of claim in the Bankruptcy Cases, numbered Claim No. 194, against Secure Point; and on August 2, 2017 Mr. Turmelle filed one (1) proof of claim in the Bankruptcy Cases, numbered Claim No. 205 (collectively, the "**Turmelle Proofs of Claim**" and together with the Liscouski Proofs of Claim and the Simon Proof of Claim, the "**Proofs of Claim**");

**WHEREAS**, each of the Liscouski Proofs of Claim asserts claims arising under: (i) the Employment Agreement; (ii) that certain Implant Sciences Corporation Amended and Restated Change of Control Payment Plan (the "**Change in Control Plan**"); and (iii) the charter and bylaws of Secure Point (the "**Corporate Governance Documents**");

**WHEREAS**, Claim No. 194 of the Turmelle Proofs of Claim asserts a claim arising under (i) the Change in Control Plan, and (ii) the Corporate Governance Documents;

**WHEREAS**, the Simon Proof of Claim asserts a claim arising under (i) the Change in Control Plan, and (ii) the Corporate Governance Documents;

**WHEREAS**, on or about August 2, 2017, the Board Members filed *The Board Members' Motion To Approve Administrative Expenses And For Allowance Of Claims* [ECF No. 912] (the "**Board Motion**") in the Bankruptcy Cases, in which: (1) Mr. Liscouski asserts the following claims: (i) an administrative expense claim for $245,488 on account of the Change in Control Plan; (ii) an administrative expense claim for $92,465.75 on account of a fiscal year 2017 bonus; (iii) an administrative expense claim for $300,000 on account of a separation payment under the Employment Agreement; (iv) an administrative expense claim for $300,000 on account of a termination payment under the Employment Agreement; (v) an administrative expense claim for an unliquidated amount on account of health care, dental and life insurance benefits owed under the Employment Agreement; (vi) an administrative expense claim for $49,492.52 on account of vacation pay under the Employment Agreement; (vii) an administrative priority claim for $12,850 on account of a fiscal year 2016 bonus; (viii) a general unsecured claim for $137,150 on account of a fiscal year 2016 bonus; (ix) an administrative expense claim for $300,000 on account of the Liquidation Agreement; and (x) a general unsecured claim for $13,727.91 on account of pre-petition expenses and board fees (together, with the Liscouski Proofs of Claim, the "**Liscouski Claims**"); (2) Mr. Turmelle asserts the following claims: (i) an administrative expense claim for $142,806 on account of the Change in Control Plan; and (ii) a general unsecured claim for $6,903.61 on account of pre-petition expenses and board fees (together, with the Turmelle Proofs of Claim, the "**Turmelle Claims**"); and (3) Mr. Simon asserts the following claims: (i) an administrative expense claim for $11,157 on account of the Change in Control Plan; and (ii) a general unsecured claim for $8,407.03 on account of pre-petition expenses and

board fees (together, with the Simon Proof of Claim, the "**Simon Claims**" and together with the Liscouski Claims and the Turmelle Claims, the "**Board Member Claims**"); and

**WHEREAS**, Claim Nos. 205, 206, and 207 of the Proofs of Claim restate the claims asserted in the Board Motion;

**WHEREAS**, the Board Members also assert that they are entitled to certain expense reimbursement claims and indemnification rights and claims arising under one or more of the Corporate Governance Documents, the Employment Agreement and the Change in Control Plan (together, the "**Indemnity Liability Provisions**");

**WHEREAS**, Zapata Industries SAS ("**Zapata**") commenced an action against Mr. Liscouski in New York Supreme Court [Index No. 154276/2017], which action was removed on June 7, 2017 to the United States District Court for the Southern District of New York, [C.A. No. 17-04282] (the "**New York Action**");

**WHEREAS**, on or about September 8, 2017, the Liquidating Trustee and Zapata entered into a Settlement Agreement and Release (the "**Zapata / Estate Settlement**");

**WHEREAS**, Mr. Liscouski objected to the Zapata / Estate Settlement on September 22, 2017 [ECF No. 984];

**WHEREAS**, Mr. Liscouski thereafter was apprised of additional allegations regarding the Zapata / Estate Settlement and raised questions and concerns as to whether the person who executed the Zapata / Estate Settlement (the "**Zapata Representative**") was duly authorized to do so, and such person has represented to the Liquidating Trustee (including to induce the Liquidating Trustee to issue funds to a designated deposit account) that he was so duly authorized;

**WHEREAS**, Mr. Liscouski engaged the law firm of King and Spalding LLP ("**K&S LLP**") for his defense of the New York Action;

**WHEREAS**, the Board Members also engaged K&S LLP and Chipman Brown Cicero & Cole, LLP ("**CBCC LLP**") to advise and represent them in connection with the Bankruptcy Case, including with respect to the Plan and Disclosure Statement, litigation they allege was threatened by the Equity Committee, their claims against the Debtors and their estate, and the Board Motion;

**WHEREAS**, beginning on September 8, 2017, K&S LLP submitted the following redacted invoices totaling $84,298.76 — Invoice No. 10130140, Invoice No. 10134627, Invoice No. 10139286, and Invoice No. 10146703, which invoices, they allege, describe work performed solely relating to the New York Action — to Mr. Liscouski for payment and the Liquidating Trustee for reimbursement pursuant to Secure Point's indemnification obligations owed to Mr. Liscouski (the "**Zapata Related Invoices**"), which Zapata Related Invoices were re-sent to the Liquidating Trustee (with all or most time entries redacted) on December 21, 2017;

**WHEREAS**, K&S LLP has submitted invoices totaling $419,014.20 to the Board Members for payment for work in connection with the Bankruptcy Case, including but not

3

limited to Invoice No. 10134625, Invoice No. 10139290, Invoice No. 10146688, Invoice No. 10150948, Invoice No. 10158353, Invoice No. 10164095, Invoice No. 10170704, Invoice No. 10176007, Invoice No. 10182782, and Invoice No. 10188446 (together with any invoice other than the Zapata K&S LLP Invoices and the July 27 K&S LLP Invoice (defined below), including those referenced in this recital, the "**Non-Zapata K&S LLP Invoices**"), which Non-Zapata K&S LLP Invoices remain unpaid and certain of which were sent (with certain time entries redacted) to the Liquidating Trustee for reimbursement pursuant to the Indemnity Liability Provisions;

**WHEREAS**, on or about July 27, 2017, K&S LLP submitted to the Debtors Invoice No. 10130139, for work on behalf of the Board Members in connection with the Bankruptcy Case, for payment in the amount of $56,560.00 ("**July 27 K&S LLP Invoice**"), and the Debtors remitted $56,560.00 to K&S LLP on account of the July 27 K&S LLP Invoice (the "**K&S LLP Payment**");

**WHEREAS**, CBCC LLP has submitted invoices totaling $40,920.85 to the Board Members for payment for work related to the Bankruptcy Case, including but not limited to Invoice No. 5589, Invoice No. 5682, Invoice No. 5889, Invoice No. 5998, Invoice No. 6149, Invoice No. 6528, Invoice No. 6542 and Invoice No. 6543 (the "**CBCC Invoices**" and together with the Non-Zapata K&S LLP Invoices, the "**Disputed Invoices**"), which Disputed Invoices remain unpaid and certain of which were sent (with certain time entries redacted) to the Liquidating Trustee for reimbursement pursuant to the Indemnity Liability Provisions;

**WHEREAS**, on December 6, 2017, the Liquidating Trustee responded and objected to certain aspects of the Board Member Claims [ECF Nos. 1042, 1043] (the "**Trustee Objection**");

**WHEREAS**, the Liquidating Trustee has also expressed concerns and raised objections to certain aspects of the Disputed Invoices and the K&S LLP Payment, and denied the Debtors' estate's responsibility for certain aspects of the Disputed Invoices and the K&S LLP Payment pursuant to the Indemnity Liability Provisions;

**WHEREAS**, on December 20, 2017, the Board Members filed a reply to the Trustee Objection [ECF No. 1049] (the "**Board Reply**");

**WHEREAS**, the Bankruptcy Court held a hearing on the merits of the Board Motion on April 23, 2018 and May 2, 2018; and

**WHEREAS**, the Parties have agreed to resolve the Board Motion, the Trustee Objection, the Board Reply, the Board Member Claims, the Zapata Related Invoices, the Disputed Invoices and certain other matters on the terms set forth herein.

**NOW, THEREFORE**, for good cause and valuable consideration, the receipt of which is hereby acknowledged, the Parties, intending to be legally bound hereby, do hereby agree to the following:

4.

1. <u>Effective Date & Approval Order</u>.

    (a) Except as expressly set forth herein, this Agreement shall not become effective and the Parties' obligations hereunder shall not arise until the Approval Order (as defined herein) becomes a final, non-appealable order (the "**Effective Date**"); *provided, however*, the Liquidating Trustee's obligations under Sections 1(b) and 7 below shall be effective upon execution of this Settlement Agreement.

    (b) Within five (5) business days of the execution of this Agreement by all Parties, the Trustee shall file with the Bankruptcy Court the form of order attached hereto as **Exhibit A** approving this Agreement ("**Approval Order**").

    (c) If the Approval Order does not become a final order on or before July 31, 2018, (a) the Agreement shall be deemed null and void; (b) none of the Parties to the Agreement shall be deemed to have waived any right or to have settled any controversy between the Parties that existed before the execution of the Agreement; (c) each of the Parties shall be restored to their respective *status quo ante* positions immediately before execution of this Agreement; (d) neither this Agreement nor any exhibit, document, or instrument delivered hereunder, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Agreement, shall be (i) deemed to be or construed as an admission by any party herein of any act, matter, proposition, or merit or lack of merit of any claim or defense, or (ii) referred to or used in any manner or for any purpose in any subsequent proceeding or in any other action in any court or in any other proceeding; and (e) all negotiations, proceedings, and statements made in connection with the negotiation of this Agreement (i) shall be without prejudice to any person or party herein, (ii) shall not be deemed as or construed to be an admission by any party herein of any act, matter, proposition, or merit or lack of merit of any claim or defense, and (iii) shall not be offered in evidence in this or any other action or proceeding, except in connection with the enforcement of the terms of this Agreement.

2. <u>Resolution of the Board Member Claims and Zapata K&S Invoices</u>.

    (a) In full and final satisfaction of all Board Member Claims, there shall be: (i) Allowed, as Administrative Expense Claims against the substantively consolidated Debtors' estate, Claims for the Board Members in the collective total amount of $630,500.00 (to be allocated among the Board Members in their sole discretion after the Effective Date) (the "**Board Members Allowed Claim**"); (ii) Allowed, as an Administrative Expense Claim against the substantively consolidated Debtors' estate, a Claim in favor of Mr. Liscouski and, to the extent applicable, any other Board Member, in the aggregate compromised amount of $84,298.76 on account

5

of the Zapata Related Invoices (the "**Resolved Zapata Related Fees**"); and (iii) Allowed, as an Administrative Expense Claim against the substantively consolidated Debtors' estate, a Claim in favor of the Board Members, in the aggregate compromised amount of $315,701.24 on account of the Disputed Invoices and the fees and expenses of K&S LLP and CBCC LLP incurred by the Board Members through the Effective Date of this Settlement Agreement (the "**Resolved Disputed Fees**", together with the Board Members Allowed Claim and the Resolved Zapata Related Fees, the "**Allowed Claims**"). For the sake of clarity, the Allowed Claims total in the aggregate $1,030,500.00 (the "**Settlement Payments**"). Effective upon receipt of the Settlement Payments, the Board Motion shall be deemed withdrawn with prejudice and the Board Member Claims shall be deemed satisfied in full.

(b) The Liquidating Trustee shall make distributions to the Board Members on account of their ownership of shares in the Debtors, including their pro rata distribution withheld from any prior distributions made by the Liquidating Trustee to shareholders (the "**Withheld Distribution Payments**"), in accordance with the distribution procedures set forth in the Plan and the Litigation Trust Agreement.

(c) Within two (2) business days of the Effective Date, the Liquidating Trustee shall remit to the Board Members payment in full on account of the Allowed Claims and the Withheld Distribution Payments by wire to:

SunTrust Bank
25 Park Place
Atlanta, GA 30303
ABA: 061 000 104
SWIFT: SNTRUS3A
USD Account: 8800312921
Ref: Israel Dahan – 26005.183001
Account Name: King & Spalding LLP ESCROW

3. <u>Released Causes of Action</u>. As used in this Settlement Agreement, the term "**Released Causes of Action**" means any and all claims (including, but not limited to any "claim" as defined in Section 101(5) of the Bankruptcy Code), demands, rights, suits, remedies, indebtedness, agreements, promises, causes of action, obligations, damages or liabilities of any nature whatsoever, in law, in equity or otherwise, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, suspected or claimed, that a Party ever had, claimed to have, now has, may have, claims to have or may claim to have in the future against the other Party (and, in the case of the Board Members, also against the Debtors' estate or the Liquidating Trust), with respect to, or directly or indirectly relating to the Debtors, the Change in Control Plan, the Employment Agreement, the Liquidation Agreement, the Corporate Governance Documents, the Indemnity Liability Provisions, the Bankruptcy Cases, or the Board Member Claims; *provided, however*, the Released Causes of Action shall not include the Board Members' rights to access the proceeds of, or coverage under, any director and officer liability insurance

6

policy (the "**D&O Policies**") on account of the Board Members' claims for indemnification and expense reimbursement under the Indemnity Liability Provisions with respect to any claims or causes of action by any party other than the Liquidating Trustee or his successors and assigns brought or asserted against (or otherwise involving) one or more of the Board Members; *provided further* that the Released Causes of Action shall not include the Board Members' rights to distribution from the Debtors' estate on account of the Board Members' ownership of shares of the Debtors (if any) ("**Shareholder Distributions**").

4. <u>Releases by the Board Members</u>. Effective on the Effective Date, the Board Members, each for himself and his respective representatives, successors and assigns, each: (i) conclusively, absolutely, unconditionally, irrevocably and forever remise, acquit, waive, release and discharge the Debtors' estate and the Liquidating Trust and its current, former and future estates, trustee, officers, directors, members, stockholders, beneficiaries, agents, advisors, principals, representatives, employees, assigns, insurers, predecessors and successors in interest (including, for the avoidance of doubt, the Liquidating Trustee), from any and all Released Causes of Action; and (ii) covenant and agree never to institute or cause to be instituted, directly or indirectly, any suit, investigation, inquiry, or other form of action or proceeding of any kind or nature whatsoever against or involving the Liquidating Trust or its officers, beneficiaries, agents, advisors, principals, representatives, employees, assigns, predecessors and successors in interest (including, for the avoidance of doubt, the Liquidating Trustee) based upon or relating in any way to the Released Causes of Action; provided, however, nothing in this Section 4 shall prohibit the Board Members from accessing the proceeds of, or coverage under, the D&O Policies but, for the avoidance of doubt, the Board Members acknowledge and agree that the Liquidating Trustee shall have no obligation to assist the Board Members in the pursuit of any claims to the proceeds of, or coverage under the D&O Policies. The Board Members each hereby agree not to file any further proofs of claim or administrative priority claims in the Bankruptcy Cases relating to the Released Causes of Action; provided, however, to the extent required to access the proceeds of, or coverage under, the D&O Policies, the Board Members shall be permitted to serve on the Liquidating Trustee and the Estate any notice, demand or request for indemnity, reimbursement or coverage under the Indemnity Liability Provisions. Nothing in this Section 4 shall in any way effect or impair the Board Members' rights to file papers in the Bankruptcy Court (x) to enforce the terms of this Settlement Agreement, or (y) in connection with any claim, or action taken, against the Board Members by any third party, including Zapata; provided, however, and notwithstanding anything herein to the contrary, (A) such papers may not include a request or demand that the Liquidating Trustee make any payments whatsoever to any person (other than the Settlement Payments and the Shareholder Distributions), and (B) regardless of any such papers or demand, the Board Members hereby waive any recourse to or right to any cash or other assets of the Liquidating Trust or the Debtors' estate or the Trustee other than their rights to payment under the D&O Policies, whatever they may be.

5. <u>Releases by the Liquidating Trust</u>. Effective on the Effective Date, the Liquidating Trust, for itself and its agents, representatives, predecessors, successors in interest and assigns (including, for the avoidance of doubt, the Liquidating Trustee, the Debtors and their estate) hereby: (i) conclusively, absolutely, unconditionally, irrevocably and forever remises, acquits, waives, releases and discharges the Board Members and their respective heirs and assigns from any and all Released Causes of Action; and (ii) covenants and agrees never to institute or cause to be instituted, directly or indirectly, any suit, investigation, inquiry, or other

form of action or proceeding of any kind or nature whatsoever based upon or relating in any way to the Released Causes of Action.

6. *Agreement as to Liquidating Trust Reserves*. Upon the Effective Date, the Board Members agree to not object to any or all decisions that may be made by the Liquidating Trustee as to any or all Reserves established pursuant to the Plan, including the SAP Claims Reserve.

7. *Representations and Warranties*. Each Party (severally and not jointly) represents and warrants to the other Parties, only as to itself and not as to each of the others, that the following statements are true and correct as of the date hereof with respect to such Party:

   (a) *Power, Authority and Authorization.* Such Party has the requisite power and corporate, limited liability company, limited partnership or similar authority to enter into this Settlement Agreement and perform all of the obligations under this Settlement Agreement, and the execution, delivery and performance of this Settlement Agreement by such Party has been duly authorized by any necessary corporate, limited liability company, limited partnership or similar action on the part of such Party, and the person executing this Settlement Agreement on behalf of such Party is duly authorized to do so and thereby bind that Party.

   (b) *No Conflicts.* The execution, delivery and performance of this Settlement Agreement by such Party does not and shall not: (i) violate any provision of law, rule, or regulation applicable to it or its organizational documents; or (ii) conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any material contractual obligations to which it is a party or under its organizational documents.

   (c) *Binding Obligation.* This Settlement Agreement is a legally valid and binding obligation of such Party, enforceable against it in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium, or other similar laws, both foreign and domestic, relating to or limiting creditors' rights generally or by equitable principles relating to enforceability.

8. *Choice of Law and Jurisdiction.* This Settlement Agreement shall be governed by and construed under and in accordance with the laws of the State of Delaware, without regard to the conflicts of laws principles thereof. EACH OF THE PARTIES HEREBY IRREVOCABLY WAIVES ITS RIGHTS TO A JURY TRIAL FOR ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS SETTLEMENT AGREEMENT.

9. *Successors and Assigns.* This Settlement Agreement shall be binding upon and inure solely for the benefit of the Parties hereto and their respective heirs, affiliates, assigns and successors.

10. *Binding Effect.* The Parties' respective rights, obligations, remedies and protections provided for in this Settlement Agreement shall survive the conversion, dismissal or closing of the Bankruptcy Cases, and the terms and provisions of this Settlement Agreement

8

shall continue in full force and effect notwithstanding the entry of any order affecting the foregoing.

11. <u>No Admission; Miscellaneous</u>. The Parties understand and agree that any Claim, Cause of Action or defense that any Party may have against another is disputed, and that the Parties are entering into this Settlement Agreement for the purpose of settling such disputes by compromise to avoid further litigation. Neither the execution nor delivery of this Settlement Agreement shall constitute an admission of any wrongdoing or liability whatsoever on the part of any of the Parties.

12. <u>Further Assurances</u>. The Parties hereby agree promptly to execute and deliver any and all such further instruments and documents and to take all such further actions as may be reasonably required by the other Parties to effectuate the terms and conditions of this Settlement Agreement, including to effectuate disbursement of funds from the SAP Claims Reserve and the Indemnification Reserve; *provided, however*, that any such further assurances shall in no event require any Party to make any payment to any person for any purpose (other than the Settlement Payments and the Shareholder Distributions). All parties reserve their rights to duly and truthfully respond to legal process and any such response to legal process will not constitute a breach of this Settlement Agreement.

13. <u>Construction</u>. No Party shall be deemed the drafter of this Settlement Agreement. The headings herein are solely for the convenience of the Parties and do not form a substantive part of this Settlement Agreement. If any term or other provision of this Settlement Agreement is finally held by the Bankruptcy Court or appellate court of competent jurisdiction to be invalid, illegal or incapable of being enforced by any rule of law or public policy: (i) said term or other provision shall be enforced to the maximum extent allowed and/or construed in order to effect the intent of the Parties as closely as possible; and (ii) all other conditions and provisions of this Settlement Agreement not otherwise affected shall nevertheless remain in full force and effect.

14. <u>Entire Agreement</u>. This Settlement Agreement constitutes the entire agreement and understanding among the Parties with respect to the settlement of the dispute settled hereby, sets forth all terms and conditions of this Settlement Agreement, and cancels and supersedes any and all prior agreements, representations and/or understandings, whether written or oral, among the Parties relating to the subject matter of this Settlement Agreement. Further, neither this Settlement Agreement nor any terms hereof may be amended, changed, waived or discharged unless such amendment, change, waiver or discharge is in a writing signed by the Party against whom enforcement is sought.

15. <u>Representation by Counsel</u>. The Parties acknowledge the benefit of professional advice rendered by legal counsel of their own selection prior to entering into this Settlement Agreement. The Parties further acknowledge that they have had a sufficient opportunity to discuss and review this Settlement Agreement with their attorneys and fully understand and agree to the terms set forth herein.

16. <u>Costs</u>. Other than as set forth in this Settlement Agreement, each of the Parties shall bear their own costs and expenses in connection with this matter.

17.     <u>Counterparts</u>. This Settlement Agreement may be executed in counterparts. Each counterpart shall be deemed an original. All counterparts shall constitute a single agreement. A facsimile or electronic .PDF file of a signed copy of the Settlement Agreement shall serve as an original executed copy for all purposes.

18.     <u>Specific Performance</u>. It is understood and agreed by the Parties that money damages would not be a sufficient remedy for any breach of this Settlement Agreement by any Party and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as its sole and exclusive remedy of any such breach, including, without limitation, an order of the Bankruptcy Court or another court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder.

*[The rest of this page was left intentionally blank]*

IN WITNESS WHEREOF, the Parties hereto have signed this Settlement Agreement as of the date written above.

_____
Stephen S. Gray, solely in his capacity as the Liquidating Trustee of the FIAC Liquidating Trust, and not personally

_____
Robert P. Liscouski

_____
Michael Turmelle

_____
James Simon, Jr.

11

IN WITNESS WHEREOF, the Parties hereto have signed this Settlement Agreement as of the date written above.

_____
Stephen S. Gray, solely in his capacity as the Liquidating Trustee of the FIAC Liquidating Trust, and not personally

_____
Robert P. Liscouski

_____
Michael Turmelle

_____
James Simon, Jr.

IN WITNESS WHEREOF, the Parties hereto have signed this Settlement Agreement as of the date written above.

_____
Stephen S. Gray, solely in his capacity as the Liquidating Trustee of the FIAC Liquidating Trust, and not personally


_____
Robert P. Liscouski

_____
Michael Tarmelle


_____
James Simon, Jr.

11

IN WITNESS WHEREOF, the Parties hereto have signed this Settlement Agreement as of the date written above.

_____
Stephen S. Gray, solely in his capacity as the Liquidating Trustee of the FIAC Liquidating Trust, and not personally

_____
Robert P. Liscouski

_____
Michael Turmelle

_____/s/ James Simon Jr._____
James Simon, Jr.

11

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FIAC Corp., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16-12238 (BLS)<br><br>Jointly Administered<br><br>**Related to Doc. No. 912** |

## ORDER APPROVING THE SETTLEMENT AGREEMENT BETWEEN THE LIQUIDATING TRSUTEE AND THE BOARD MEMBERS

Upon the Trustee's certification of counsel, dated [May [●], 2018], and the form of Order attached thereto (the "Certification of Counsel"),[2] and pursuant to applicable sections of the Bankruptcy Code;

**IT IS HEREBY ORDERED THAT:**

1. The Settlement Agreement annexed hereto as **Exhibit 1** is hereby APPROVED.

2. Upon the occurrence of the Effective Date (as defined in the Settlement Agreement) and the payment of the monies due under the Settlement Agreement, Claim Nos. 40, 115, 116, 117, 118, 194, 205 206, and 207 shall be deemed satisfied in full and expunged from the claims register in the Chapter 11 Cases.

3. Upon receipt of payment of the Settlement Payments (as defined in the Settlement Agreement), the Board Motion shall be deemed withdrawn with prejudice.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: FIAC Corp. (f/k/a IMX Acquisition Corp.) (9838); Secure Point Technologies, Inc. (f/k/a Implant Sciences Corporation) (7126); FCAC Corp. (f/k/a C Acquisition Corp.) (8021); FASIC Corp. (f/k/a Accurel Systems International Corporation) (3856).

[2] Any and all terms not defined herein shall have the meaning ascribed to them in the Certification of Counsel.

06/01/2018

4. The Trustee and its claim agent is hereby authorized to revise the claims registry in these Cases or take any other action necessary to implement the relief set forth in the Order.

5. This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

Dated: _____, 2018

                                                                 Honorable Brendan L. Shannon
                                                                 United States Bankruptcy Judge