UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: W.R. GRACE & CO., et al.,<br><br>DEBTORS. | ) CHAPTER 11<br>)<br>) Case No. 01-01139<br>)<br>) (Jointly Administered)<br>)<br>)<br>) |
| ANDY DORRINGTON; SUSAN B. GRENFELL; GAYLA R. CODY; MARVIN SATHER; MARK MACINTOSH; and CHRIS LADERA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>W.R. GRACE & COMPANY (a Delaware corporation); W.R. GRACE & COMPANY-CONN (a Connecticut corporation); W.R. GRACE & CO., a/k/a GRACE, an association of business entities; and SEALED AIR CORPORATION (a Delaware corporation),<br><br>Defendants. | )<br>)<br>)<br>) Adversary Case No. 01-_____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CLASS ACTION COMPLAINT
## FOR  MEDICAL MONITORING INJUNCTION AND EQUITABLE RELIEF

### I.     INTRODUCTION

1.1     Plaintiffs bring this class action adversary complaint to establish debtor, W.R.

Grace & Company's and related debtor entities' ("Grace's") liability to class members for a

comprehensive long-term medical surveillance program that provides needed diagnostic

monitoring to ensure the early detection and treatment of deadly diseases caused by defendants' mining, processing, and marketing of tremolite-contaminated vermiculite, originating from Zonolite Mountain, near Libby, Montana.

1.2     The public health necessity for such programmatic relief, and class members' burden of obtaining such diagnostic care, arises from class members' involuntary, unknowing, and chronic exposures to a highly unusual form of non-commercial asbestos, naturally contaminating vermiculite ore originating from Libby, Montana.  Grace knowingly exposed class members to potentially harmful levels of tremolite asbestos, and other forms of actinolite asbestos, by initiating, and profiting from, a chain of activities, including:  1.) a half-century of mining and milling of tremolite-contaminated vermiculite in Libby, Montana;  2.) transporting and processing of tremolite-contaminated Libby vermiculite at dozens of vermiculite expansion plants located throughout the United States; and 3.) chronically exposing, and continuing to expose, members of the building trades to airborne asbestos through their activities in installing or removing Grace loose-fill vermiculite insulation in millions of residences and buildings throughout the United States.

1.3     These mining, milling, manufacturing, marketing, and installation/removal activities, involving exposure to asbestos-contaminated loose-fill Libby vermiculite, correspond to three exposed class communities:  1.) current and former residents of Libby, Montana, who suffered environmental exposures due to defendants' mining and processing activities in that community; 2.) expansion plant workers, who were exposed to elevated indoor asbestos levels during their processing and packaging of Libby vermiculite into marketable loose-fill insulation

products, as well as their families, who were exposed through transporting of asbestos fibers into homes on clothing and other personal items; and 3.) former and current members of the building and construction trades engaged in the business installing and/or removing of loose-fill vermiculite insulation products manufactured by defendants.

1.4    This action seeks Court-ordered injunctive and equitable relief establishing a Grace-funded medical monitoring program that provides needed long-term medical diagnostic services to class members, thereby mitigating and averting personal injury through early detection and treatment of diseases caused by defendants' vermiculite insulation products.  This action does not advance claims for, or seek recovery of monetary damages for those who have suffered the misfortune of having been diagnosed with asbestos disease.

## II.    PARTIES

2.1    Plaintiff Andy Dorrington is a current and lifelong resident of Libby, Montana, who was chronically exposed to airborne asbestos originating from defendants' vermiculite facilities in Libby, Montana.  Because of this exposure, Andy Dorrington, like other current residents of Libby, Montana, has incurred a reasonable medical necessity to undergo long-term medical surveillance to ensure early detection of, and treatment for, asbestos-induced disease.

2.2    Plaintiff Susan B. Grenfell is a current and longtime resident of Libby, Montana, who was chronically exposed to airborne asbestos through defendants' contamination of her childhood home and the Libby environment generally.  Due to this exposure, Susan Grenfell, like other current residents of Libby, Montana, has incurred a reasonable medical necessity to undergo long-term medical surveillance to ensure early detection of, and treatment for, asbestos-induced disease.

2.3     Plaintiff Gayla R. Cody is a current resident of Selah, Washington, and previous longtime resident of Libby, Montana.  Gayla Cody was exposed to airborne asbestos through defendants' contamination of her childhood home and the Libby environment generally.  Gayla Cody, like other former residents of Libby, Montana, has incurred a reasonable medical necessity to undergo periodic medical diagnostic testing to ensure early detection of, and treatment for, asbestos-induced disease, including asbestosis, lung cancer, and mesothelioma.

2.4     Plaintiff Marvin Sather is a current resident of Spokane, Washington, and previous longtime resident of Libby, Montana.  Marvin Sather was chronically exposed to asbestos through defendants' contamination of his childhood home and the Libby environment generally.  Marvin Sather, like other former residents of Libby, Montana, has incurred a reasonable medical necessity to undergo long-term medical monitoring to ensure early detection of, and treatment for, asbestos-induced disease.

2.5     Plaintiff Mark MacIntosh is a resident of Spokane, Washington, and former worker at Vermiculite Northwest, a Libby vermiculite expanding and packaging facility located in Spokane, Washington.  In that capacity, Mark MacIntosh suffered chronic exposure to dangerous levels of airborne asbestos caused by defendants' Libby vermiculite material.  Because of this exposure, Mark MacIntosh, like other vermiculite plant workers, has incurred a reasonable medical necessity to undergo periodic medical diagnostic testing to ensure early detection of, and treatment for, asbestos-induced disease, including asbestosis, lung cancer and mesothelioma.

2.6     Plaintiff Chris Ladera is a resident of Seattle, Washington.  Chris Ladera is employed by EnviroAire of Seattle, Washington, and has been the President and owner of that

company for the past two years.  EnviroAire has been engaged in business for the past twelve years, which business includes removal of Libby vermiculite insulation from buildings and homes.  Chris Ladera and his fellow employees at EnviroAire have suffered chronic exposure to airborne tremolite caused by defendants' loose-fill vermiculite insulation products, manufactured from vermiculite originating from Libby, Montana.  Because of this exposure, Chris Ladera and tradesmen like him have incurred a reasonable medical necessity to undergo long-term medical monitoring to ensure early detection of, and treatment for, asbestos-induced disease, including asbestosis, lung cancer and mesothelioma.

2.7    Defendant W.R. Grace & Company (Delaware) has its principal place of business in Columbia, Maryland, and is incorporated in the State of Delaware.  It is a successor corporation which is liable for the actions of predecessor companies, including W.R. Grace & Co.-Conn., W.R. Grace & Co., a New York corporation, Grace Holding, Inc., Montana Vermiculite Company, and Zonolite Company with respect to the claims and allegations of this Complaint.

2.8    Defendant W.R. Grace & Company (Connecticut) has its principal place of business in Columbia, Maryland, and is incorporated in the State of Connecticut.  At all times relevant to this Complaint, W.R. Grace & Company's (Connecticut) business has included the mining and processing of vermiculite within the state of Montana.  W.R. Grace & Company (Delaware) and W.R. Grace & Company (Connecticut), and the association of business entities doing business under the name W.R. Grace & Co. and/or GRACE are hereinafter jointly referred to as "the Grace Defendants."

2.9     W.R. Grace & Co., also known as GRACE, is an association of corporations, conglomerates, holding companies, and other business entities and persons transacting business under the common name "W.R. Grace & Co." and/or "GRACE."  The associated persons so conducting business include Grace Holding, Inc., a Delaware corporation, W.R. Grace and Co., a New York corporation, W.R. Grace & Co., a Delaware corporation, W.R. Grace and Co.-Conn., a Connecticut corporation, and other corporations, subsidiaries and business entities.

2.10     Defendant Sealed Air Corporation, whose former corporate name is W.R. Grace & Co., is a Delaware corporation and is the successor to the liabilities of W.R. Grace & Co.  Its principal place of business is in Saddle Back, New Jersey.  In 1998, W.R. Grace & Co. essentially transferred two-thirds of its assets by combining with a smaller entity named Sealed Air and renaming the new entity Sealed Air Corporation.  The creation of Sealed Air Corporation was done solely in an attempt to fraudulently shield the major assets of W.R. Grace & Co. from expected asbestos claims and claimants.

### III.     <u>JURISDICTION AND VENUE</u>

3.1     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1334.

3.2     This Court has personal jurisdiction over each of the parties.

3.3     There is complete diversity of citizenship between the named Plaintiffs and the Defendants.

3.4     The amount in controversy exceeds $75,000.00, exclusive of interest and costs, as to the claims of each Plaintiff and each member of the proposed Class.  Class members have an undivided interest in obtaining programmatic injunctive/equitable relief, including

implementation of a medical monitoring program to ensure the early detection and treatment of asbestos disease.

## IV.    THE CLASS

4.1    Plaintiffs seek certification pursuant to Bankruptcy Rule 7023, and through incorporation, Fed.R.Civ.P. 23(b)(3) or in the alternative Fed.R.Civ.P. 23(b)(2) or 23(b)(1), on behalf of a Class composed of three constituencies:

> (1)    all past and present residents of Lincoln County, Montana, who have resided in that county for a total period of six months or more, dating from January 1, 1930, to the present (the "Resident Subclass");
>
> (2)    all employees, and members of their households, who worked for a period of six months or more at a vermiculite processing plant which processed, during his or her period of employment, vermiculite originating from Libby, Montana. ("Vermiculite Plant Worker Subclass");
>
> (3)    all individuals, and members of their households, who are or have been engaged for a total period of six months or more, in the business of installing or moving loose-fill insulation products manufactured from vermiculite originating from Libby, Montana. ("Construction Trades Subclass").
>
> (4)    Excluded from the class are individuals who have filed claims against any defendant for personal injury from exposure to vermiculite.

## V.    FACTUAL ALLEGATIONS

5.1    Defendant W.R. Grace & Company, W.R. Grace & Company-Conn. and GRACE and their predecessor in interest, Zonolite Company, were nationwide manufacturers of loose-fill insulation made from vermiculite originating from Libby, Montana.

5.2     Grace and its predecessor mined, operated, processed, milled, expanded, and sold vermiculate and loose-fill vermiculite insulation products from the 1930's until the mid-1980's.

5.3     The vermiculite deposit mined by Grace at Libby, Montana, is unique in that the vermiculite is laced with fibrous tremolite, an extraordinarily dangerous form of asbestos.  Libby vermiculite averages approximately ten to twenty percent (10%-20%) asbestos.

5.4     Respirable asbestos fibers, including tremolite, are microscopic, invisible to the naked eye, and virtually indestructible.  Once airborne, asbestos fibers remain airborne for extended periods of time and constitute a continuing source of exposure.  Further, once such fibers contaminate an area, they are readily re-entrained into the air, upon slight disturbance, constituting a sinister reoccurring source of exposure.

5.5     Tremolite, and other forms of asbestos, are known human carcinogens.  Inhalation of asbestos fibers can lead to mesothelioma, a diffuse cancer which spreads over the lung lining surface (pleura), lung cancer, asbestosis, and other diseases which are serious, progressive, and often fatal.

5.6     Early detection and treatment of asbestos diseases is critical.  Well-established medical diagnostic practices, such as specialized chest x-rays, pulmonary function tests, and CT scanning, permit early detection and treatment of asbestos disease.

5.7     Disturbingly, the latency period between exposure and contraction of asbestos disease may range from twenty to forty years or more.   Exposed individuals, therefore, incur a need for long-term medical surveillance.

5.8    Defendants' operations at the Libby vermiculite mine have caused the release and transport of hazardous tremolite asbestos fibers into the surrounding community, to workers and family members at expanding, packaging, and other vermiculite processing plants nationwide, and to installers of loose-fill insulation products containing Libby vermiculite.

5.9    In the course of its activities in Libby, Grace acquired extensive actual knowledge of the substantial hazards to which class members were being exposed.

5.10    In 1963, Grace bought the Zonolite company and assumed all debts and all liabilities of the Zonolite company.  Well before 1963, Zonolite officials had learned that the vermiculite at Libby was contaminated with tremolite asbestos and that Libby vermiculite workers were suffering asbestos disease as a result of their exposure to vermiculite.

5.11    The Montana State Board of Health inspected the Libby vermiculite mine on a frequent basis in the 1950's and 1960's, finding serious asbestos health hazards at the Grace facility.  In 1956, the Montana State Board of Health informed Libby officials that the asbestos contaminant at Libby "is of considerable toxicity."  In 1963, the Montana State Board of Health reported to Zonolite that the airborne dust generated at the Libby facility contained 40% asbestos and represented "a serious dust concentration."

5.12    In January 1968, Grace conferred with Johns-Manville to share ideas on how to deal with the asbestos dangers caused by its activities.  Mindful that thirty-two of its Libby employees already showed abnormal chest x-rays, Grace hoped to "be able to keep them on the job until they retire, thus precluding the high cost of total disability."

5.13     In January 1968, Grace discussed internally the need to minimize dust exposure to its workers, and stated, "If we minimize their exposure to a dust level not exceeding 5 mppcf chances are we may be able to keep them on the job until they retire, thus precluding the high cost of total disability."  Grace was aware of the view of the Industrial Hygiene Foundation "that any exposure to asbestos dust is hazardous" with many doctors supporting the view "that there is a definite relationship between asbestos dust and certain types of cancer."  Grace was also aware that asbestos exposure recommendations should be used only as guides and "should not be regarded as fine lines between safe and dangerous concentrations."

5.14     A Grace in-house study in 1969 showed a lung disease rate of 92% in Libby workers with over 20 years at the mine.  Grace did not disclose this study to the public or the medical community.

5.15     An in-house Grace study performed prior to 1977 showed ex-workers had a five times higher rate of lung cancer than normal.  Grace did not disclose this study to the public or the medical community.

5.16     Grace managers deceived workers about the hazards of asbestos at the Libby facility, telling them they could "eat a ton of it" without harm, and that it was not harmful, just nuisance dust.

5.17     Dangerous airborne asbestos levels, critically, were not confined to indoor plant or even onsite plant activities in Libby, Montana, but constituted a chronic source of airborne asbestos exposure to those who happened to reside in the Libby community.

5.18    In correspondence with its insurance carrier regarding a Libby employee suffering from asbestos disease, Grace reported that dust was being exhausted from the Libby mill and permeating outside areas.

5.19    In 1965, Grace internally conceded that "the City of Libby has an air pollution problem" contributed to by the "operation of the expanding plant which is downtown."  The Grace manager at Libby stated that on many days the air in downtown Libby was at the maximum limit for asbestos dust.  In a January 1965, review of a decade of reports on the Libby operation, Grace's Libby manager concluded, "I can only say that it presents a very sorry record."

5.20    By 1968, Grace knew that its Libby vermiculite expanding plant was contributing approximately seven to nine tons of tremolite-containing dust into the air breathed by residents of the Libby community.

5.21    Grace was cognizant of its general public liability arising from such airborne exposures, remarking in 1967 that asbestos disease may be contracted "at any point a dust condition may exist."  A year later Grace managers circulated an article from the New Yorker on asbestos which reviewed medical articles on asbestos disease in communities and homes from transport of asbestos dust home on clothes.

5.22    In 1978, a local Libby doctor proposed to Grace a health study on Grace Libby workers and their families.  Grace refused.  The local doctor, Lincoln County's Health Officer at the time, persisted in his request and a Grace official observed "he is going to blow the whistle."

5.23    Following public revelations of asbestos exposures in Libby, Montana, caused by defendants' vermiculite activities, in July through November of 2000,  the Agency for Toxic

Substances and Disease Registry conducted the largest ever environmental health study,

involving voluntary medical testing of former Grace workers in Libby, household contacts of

such former workers, and residents of Libby, Montana.  Preliminary results from that study

showed that thirty percent of the participants had pleural abnormalities.  Among former Grace

workers, thirty-seven percent had pleural abnormalities such as lung scarring.  Twenty percent of

household contacts of such workers also had such pleural abnormalities, while pleural

abnormalities were discovered in fourteen percent of those who resided in the Libby area and

who had no known direct contact with vermiculite.  The Environmental Protection Agency

toxicologist evaluating conditions in Libby remarked, "The findings in Libby have shaken our

understanding of asbestos toxicity.  It is astounding that exposure to the general public in Libby

has resulted in such a high rate of lung abnormalities."

  5.24 As a preemptive public relations strategy to blunt efforts to hold Grace

accountable for continued medical monitoring of exposed Libby residents, on January 19, 2000,

Grace, for the first time, partially acknowledged the health risks to present and future residents of

the Libby area and announced the creation of what Grace stylized as a $250,000 medical

monitoring program to screen residents of Libby for disease.  Because of restriction in eligibility,

benefits provided, and financial resources committed to that effort, Grace's medical monitoring

is incapable of providing sufficient long-term medical monitoring to all members of the proposed

class.  Subsequent voluntary modifications of that program and anticipate improvements

extracted from Grace by public agencies, leave that program, nonetheless, substantially

insufficient to provide needed long-term medical monitoring service to all members of the class.

5.25    As a result of defendants' ongoing, active, and fraudulent concealment of the dangerous, harmful, and damaging nature of their mining and processing conduct and activities, that is, contamination with and exposure to tremolite asbestos, plaintiffs and the class members were not and could not reasonably have been apprised and informed of the material facts and predicates of the claims asserted herein outside of the applicable limitation periods.  Grace's intentional and continuing concealment and suppression of the foregoing information and additional information, as yet unknown to plaintiffs and the class members, prevented plaintiffs from learning and acting on their claims and rights.

5.26    Exposure to harmful airborne asbestos from Libby vermiculite is not confined to present and former residents of Libby, Montana.  Grace was aware that its dissemination of Libby vermiculite throughout the United States, whether as vermiculite ore requiring further processing in regional expansion facilities, or as a finished loose-fill insulation product to be handled by members of the building trades, posed substantial risk of chronic exposure to potentially harmful levels of airborne asbestos.

5.27    In March, 1969, Grace's Safety Administrator reported to Grace officials of an article discussing the danger to "the bystander who unknowingly breathes in the poisonous [asbestos] dust" from construction jobs that could result in mesothelioma.  In light of this information and, in particular, the "disturbing factor in mesothelioma" and "the rather indirect exposure a number of its victims had," the Safety Administrator recommended to Grace:

> I think it would be well at this time, with the advice of counsel, to consider applying a warning or precautionary label or statement on all containers of products containing vermiculite.  This may aid our defense in cases of product liability claims.

5.28    Grace ignored this recommendation and put no warning label of any sort on its vermiculite-based products for years and at no time supplied warnings adequate to alert those exposed to their loose-fill vermiculite products.  In this regard, in a 1977 "Zonolite Profitability Impact" analysis, Grace projected  "10-50% reduction in sales volume that would result from a requirement to label our products as containing asbestos."

5.29    In July 1969, an important and confidential "vermiculite report" was prepared and submitted to Peter Grace, Chairman and President of the Board of Directors of W.R. Grace, which detailed the seriousness of and geographical scope of the hazards of tremolite asbestos contained in Libby vermiculite.  The report advised Grace's highest corporate officer that tremolite remained in the vermiculite concentrate when shipped from Libby and that the "tremolite asbestos is a definite health hazard at both the Libby operation and at the expanding plants using the ore."

5.30    In a follow up comprehensive 1971 review of Grace's expansion plant operations nationwide, following some twenty notices of pollution control violations associated with those plants, including the Vermiculite Northwest plant at which plaintiff  Mark MacIntosh worked, a Grace pollution control engineer aptly stated Grace's policy: "improved particulate emission controls will not normally be considered until a citation is issued by local authorities." Describing the expansion plant's implementation of this strategy to resist overall compliance, the official noted:

> They plan to tackle them singly, as they are forced to comply, and buy as much time as possible. Since enforcement of laws varies widely from state to state, this approach makes some sense and appears to be working.

5.31    A 1979 internal Grace memo noted the question was "raised as to whether there was any plan to notify past employees of the hazards they were exposed to during their time of employment with us."  Grace answered there was no such program.

5.32    Libby vermiculite expanded at various expansion facilities across the United States was ultimately marketed as loose-fill attic or masonry insulation.  Individuals engaged in installing or removing Grace's loose-fill insulation products, were, and continue to be, exposed to harmful levels of airborne asbestos.

5.33    In a 1977 report prepared by Grace following extensive internal testing of products using Libby vermiculite, Grace acknowledged in a section captioned "Harm to Customer,"  that "[t]he highest level of exposure is for Attic Insulation and Masonry Insulation. The high concentrations of upwards of 15 f/ml [fibers per milliliter] (15 minute maximum) for Attic Insulation . . . were observed. . . ."  Grace's report concludes, "[a] decision to label our consumer products would eliminate the risk of future liability, while exacerbating the risk of claims . . . from past use of the product."

5.34    In a 1977 press release which Grace chose never to issue, Grace conceded that it was "sufficiently concerned about the entire issue of asbestos and associated health hazards to discontinue this product [Zonolite Attic Insulation]."  Grace, in fact, aggressively marketed that product for another seven years.

5.35    In 1985, one year after Grace began discontinuance of its loose-fill vermiculite attic insulation product, Grace performed a risk assessment of workers exposed to asbestos from

vermiculite products nationwide, estimating that 30,000 lung cancers would result from such exposures.

## VI.    CLASS ACTION ALLEGATIONS

6.1     Plaintiffs bring this adversary proceeding as a class action seeking equitable, injunctive, and declaratory relief pursuant to Bankruptcy Rule 7023 and Fed.R.Civ.P. 23(b)(3), or in the alternative Fed.R.Civ.P. 23(b)(2) or 23(b)(1), on behalf of the plaintiff class above-defined in subsection IV of this Complaint.

6.2     Named plaintiffs are members of the class they seek to represent.  Members of the class, numbering in the many thousands, are so numerous that their individual joinder as plaintiffs is impracticable.

6.3     This action presents fundamental questions of law and fact common to the claims of each class member, including but not limited to:

6.3.1    Whether defendants have negligently exposed present and former residents of Libby, Montana, to a proven hazardous substance, resulting in a substantial risk of contracting serious latent diseases, including asbestosis, lung cancer, and mesothelioma.

6.3.2    Whether effective and proven medical monitoring procedures exist, different from regularly expected care, that would permit the early detection and treatment of such latent diseases in present and former residents of Libby, Montana.

6.3.3    Whether present and former residents of Libby, Montana, have a reasonable necessity to obtain medical diagnostic care that provides such procedures.

6.3.4    Whether the current medical monitoring services offered by Grace to certain Libby residents are adequate.

6.3.5    Whether defendants have negligently exposed workers at vermiculite expansion plants, and their families, to a proven hazardous substance, resulting in a substantial risk of contracting potentially serious latent diseases, including asbestosis, lung cancer, and mesothelioma.

6.3.6    Whether effective and proven medical monitoring procedures, different from regularly expected care, would permit the early detection and treatment of such latent diseases in vermiculite plant workers and their families.

6.3.7    Whether workers at vermiculite expansion plants, and members of their households, have incurred a reasonable necessity to obtain medical diagnostic care which provides such procedures.

6.3.8    Whether defendants have negligently exposed members of the construction trades to a proven hazardous substance, resulting in a substantial risk of contracting potentially serious latent diseases, including asbestosis, lung cancer, and mesothelioma.

6.3.9    Whether effective and proven medical monitoring procedures, different from regularly expected care, would permit the early detection and treatment of such latent diseases in building trade workers.

6.3.10  Whether building trade workers who installed Grace loose-fill vermiculite products have incurred a reasonable necessity to obtain medical diagnostic care that provides such procedures.

6.4      The claims of the named plaintiffs are typical of the claims of the class in that the named plaintiffs and the members of the class were chronically exposed to tremolite-

contaminated vermiculite originating from Libby, Montana, resulting in the need for medical screening for those exposed.

6.5     Plaintiffs seek injunctive, equitable, and declaratory relief in the form of a Court-ordered, independently supervised, defendant-funded medical monitoring program suited to plaintiffs' long-term need for specialized medical diagnostic care to ensure early detection and treatment of tremolite asbestos-induced disease.

6.6     Class certification is appropriate under Fed. R. Civ. P 23(b)(3) because common issues predominate over individual issues and because a class-based adversary proceeding concerning class members' claims for medical monitoring relief is superior to other available methods for fairly and efficiently adjudicating those claims.

6.7     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because defendants have acted, and refused to act, on grounds generally applicable to each class, making appropriate preliminary and final injunctive and declaratory relief appropriate.

6.8     Class certification is appropriate under Fed. R. Civ. P. 23(b)(1) because, *inter alia*, the prosecution of separate actions by individual members of the class would create a risk of incompatible standards of conduct for defendants and inconsistent or varying adjudications for all parties.

6.9     Plaintiffs will fairly and adequately represent and protect the interests of the members of the class.  Plaintiffs have retained counsel competent and experienced in complex class actions and products liability litigation.

## VII.    <u>FIRST CAUSE OF ACTION</u>
### (Medical Monitoring)

7.1     Defendants have negligently exposed class members to a proven hazardous substance resulting in a substantial risk of contracting serious latent diseases, including lung cancer, asbestosis, and mesothelioma.

7.2     Effective and proven medical monitoring procedures, different from regularly expected care, exist to permit the early detection and treatment of such latent diseases.  As a proximate result of defendants' negligence, class members have incurred a reasonable necessity to obtain long-term medical diagnostic care which provides such procedures.

7.3     Early detection and diagnosis of latent diseases caused by asbestos exposure has demonstrated clinical value.

## VIII.   SECOND CAUSE OF ACTION
### (Negligence)

8.1     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein and further allege as follows:

8.2     Defendants owed plaintiffs and the class a duty to act with reasonable care so as not to jeopardize the class members' health, welfare, and right to a clean and healthful environment.

8.3     Defendants breached their duty of care by:

1.      failing to prudently operate and maintain its vermiculite mining and processing facilities in and around Libby, Montana;

2.      failing to prudently remediate asbestos contamination in and around Libby, Montana;

3.      negligently transporting and disseminating asbestos-contaminated vermiculite to processing plants throughout the United States;

4.      negligently manufacturing and distributing, and negligently licensing the manufacture and distribution of, unreasonably dangerous loose-fill vermiculite insulation products;

5.      failing to adequately or timely warn members of the Resident Subclass of the existence of and hazards of tremolite contamination in and around Libby, Montana;

6.      failing to adequately or timely warn members of the Vermiculite Plant Worker Subclass of the existence and hazards of tremolite contamination in vermiculite originating from Libby, Montana;

7.      failing to adequately or timely warn members of the Construction Trades Subclass of the existence of or hazards of tremolite contamination in loose-fill vermiculite insulation products manufactured by defendants;

8.      failing to warn class members of the health hazards of tremolite asbestos exposure and the need for medical monitoring.

8.4     As a direct, proximate, and legal result of the foregoing acts, or failures to act, plaintiffs and the class have incurred a reasonable necessity to obtain long-term medical diagnostic care to ensure the early detection and treatment of latent diseases caused by exposure to asbestos-contaminated vermiculite originating from Libby, Montana.

## IX.     THIRD CAUSE OF ACTION
### (Private And Public Nuisance Allegations)

9.1     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein and further allege as follows:

9.2     At relevant times, plaintiffs and members of the class have had proprietary interests in certain real and personal property.

9.3     Defendants' misconduct constitutes a nuisance in that it has exposed, and continues to expose, plaintiffs and the class to tremolite asbestos contamination, which is potentially injurious to the health and offensive to the senses of plaintiffs and the class, and specially interfered with, unlawfully obstructed, and disturbed their comfortable enjoyment of the right to a clean and healthful environment.

9.4     As a direct, proximate, and legal result of defendants' conduct, plaintiffs and the class have incurred a reasonable necessity to obtain long-term medical diagnostic care to ensure the early detection and treatment of latent diseases caused by exposure to asbestos-contaminated vermiculite originating from Libby, Montana.

## X.     FOURTH CAUSE OF ACTION
### (Trespass)

10.1     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein and further allege as follows:

10.2     Defendants committed trespass by knowingly causing dust and minerals to invade the property of the plaintiffs and the Resident Subclass.

10.3     Defendants' trespassing dust and minerals were contaminated with asbestos and asbestos-contaminated vermiculite.

10.4     As a direct, proximate, and legal result of defendants' trespass, the plaintiffs and the class members have incurred a reasonable necessity to obtain long-term medical diagnostic care to ensure the early detection and treatment of latent diseases caused by exposure to asbestos and asbestos-contaminated vermiculite.

## XI.   FIFTH CAUSE OF ACTION
### (Negligent Trespass)

11.1     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein and further allege as follows:

11.2     Defendants negligently trespassed by negligently causing dust and minerals to invade the property of the plaintiffs and the Resident Subclass and thereby causing harm.

11.3     Defendants' trespassing dust and minerals were contaminated with asbestos and asbestos-contaminated vermiculite.

11.4     As a direct, proximate, and legal result of defendants' negligence, the plaintiffs and the Resident Subclass encountered continuing injurious exposures and the risk of injury, and have incurred a reasonable necessity to obtain long-term medical diagnostic care to ensure the early detection and treatment of latent diseases caused by exposure to asbestos-contaminated vermiculite originating from Libby, Montana.

## XII.   SIXTH CAUSE OF ACTION
### (Strict Liability)

12.1     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein and further allege as follows:

12.2    Grace manufactured, distributed, sold, and licensed the manufacture, distribution, and sale of asbestos-contaminated loose-fill vermiculite insulation products.

12.3    Grace's loose-fill vermiculite insulation products were defective and unreasonably dangerous in that, when these products left the hands of the manufacturer and/or suppliers, the foreseeable risks and dangers of the product exceeded its benefits.

12.4    Grace's loose-fill vermiculite insulation products were defective and unreasonably dangerous due to inadequate warnings and/or failure to warn.  At all times relevant, Grace knew, or should have known, that its products carried unreasonable risks of causing disease in persons exposed to those products.  Grace failed to adequately or timely issue warnings with respect to the dangers posed by its products.

12.5    As a direct, proximate, and legal result of conduct and failure to act alleged in this subsection, plaintiffs and the class have incurred a reasonable necessity to obtain long-term medical diagnostic care to ensure the early detection and treatment of latent diseases caused by exposure to asbestos-contaminated vermiculite originating from Libby, Montana.

## XIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed class, pray for an order, decree and judgment against Defendants, jointly and separately, including:

1.    An order certifying this adversary proceeding as a class, appointing named plaintiffs as representatives of the class, and appointing undersigned counsel as class counsel.

2.    An order and decree establishing, through creation or modification of existing Grace programs,  an independently supervised, defendant-funded medical monitoring program, under the continuing jurisdiction of the Court or designee of the Court, that:

a.      Provides to class members appropriate and needed long-term medical diagnostic testing to ensure the early detection and treatment of diseases associated with asbestos exposure, including asbestosis, lung cancer, and mesothelioma.

b.      Implements a long-term class member identification, education, and notification program that ensures that all class members are identified, advised of the necessity and importance of obtaining periodic diagnostic testing and advised of the availability of defendant-funded services which provide such care.

c.      Maintains a registry for all relevant health data pertinent to exposure to Libby tremolite-contaminated vermiculite and disseminates such medical data (excluding personal identifiers) so as to advance medical research into improved methods for diagnosis and treatment of diseases induced by tremolite exposure.

3.      An award of attorneys' fees and costs, including costs of class notice.

4.      Such other legal or equitable relief as this Court may deem just and appropriate.

## XIV.   JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: November 20, 2001

Elizabeth J. Cabraser
Richard M. Heimann
Donald C. Arbitblit
Fabrice N. Vincent
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West, 30th Floor
275 Battery Street
San Francisco, CA  94111

Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008


And


Thomas Sobol
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
214 Union Wharf
Boston, MA  02109-1216
Telephone:  (617) 720-5000
Facsimile:  (617) 720-5015


Edward J. Westbrook
Robert M. Turkewitz
Edward B. Cottingham, Jr.
NESS MOTLEY LOADHOLT RICHARDSON &
POOLE
151 Meeting Street, Suite 600
P.O. Box 1137
Charleston, SC  29402
Telephone:  (803) 720-9000
Facsimile:  (803) 577-7513


Darrell W. Scott
LUKINS & ANNIS, P.S.
1600 Washington Trust Financial Center
717 W Sprague Ave.
Spokane, WA  99201-0466
Telephone: (509) 455-9555
Facsimile: (509) 747-2323


Jon L. Heberling
Roger M. Sullivan
Allan M. McGarvey
McGARVEY, HEBERLING, SULLIVAN &
McGARVEY
745 South Main
Kalispell, MT  59901
Telephone:  (406) 752-5566

Facsimile:  (406) 752-7124


By:  <u>/s/ William D. Sullivan</u>
     William D. Sullivan (No. 2820)
     Elzufon Austin Reardon Tarlov & Mondell
     300 Delaware Avenue
     Suite 1700
     P.O. Box 1630
     Wilmington, DE  19899-1630
     Telephone:  (302) 428-3181
     Facsimile:  (302) 428-3180

Attorneys for Individual and Representative
Plaintiffs