## Exhibit C

**Fee Application for the period**

**August 1 – August 31, 2001**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------x

In re:                                          Chapter 11

W.R. GRACE & Co., et al.,                       Case No. 01-01139(JJF)
                                                (Jointly Administered)


                    Debtors

---------------------------x

FIFTH INTERIM APPLICATION OF FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM AUGUST 1, 2001 THROUGH AUGUST 31, 2001)

Type of Application:  Interim ___ X___     Final _____

Name of Applicant:                              FTI Policano & Manzo

Authorized to Provide Professional Services to:  The Official Committee of
                                                Unsecured Creditors

Date of Order Authorizing Employment:           June 21, 2001

Compensation Sought:
        Application Date:         September 28, 2001
        Application Period:       August 1, 2001 through August 31, 2001


|                                | Hours | Amount      |
|--------------------------------|-------|-------------|
| Professional Fees (80%)        | 212.9 | $56,340.00  |
| Expense Reimbursement (100%)   |       | 1,092.45    |
| Total                          |       | $57,432.45  |

Is this a first application?  Yes ____  No _X_

FIFTH INTERIM APPLICATION OF FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM AUGUST 1, 2001 THROUGH AUGUST 31, 2001)

INDEX

APPLICATION FOR ALLOWANCE OF INTERIM
COMPENSATION AND REIMBURSEMENT OF EXPENSES

EXHIBIT A    Affidavit of Edwin N. Ordway, Jr.

EXHIBIT B    Summary of the services performed by FTI Policano & Manzo from
August 1, 2001 through August 31, 2001

EXHIBIT C    Summary of fees by professional for the period August 1, 2001 through
August 31, 2001

EXHIBIT D    Detailed descriptions of services rendered by professional for the period
August 1, 2001 through August 31, 2001

EXHIBIT E    Summary of expenses incurred for the period August 1, 2001 through
August 31, 2001

# APPLICATION FOR ALLOWANCE OF
# INTERIM COMPENSATION AND REIMBURSEMENT
# OF EXPENSES

## I.   Introduction

This is the fifth application for allowance of interim compensation and reimbursement of expenses ("Fifth Interim Application") made by FTI Policano & Manzo ("FTI P&M" or "Applicant"), as Financial Advisors to the Official Committee of Unsecured Creditors (the "Committee") of W.R. Grace & Co. et. al., (the "Company" or "Debtors") for the period August 1, 2001 through August 31, 2001 ("Fifth Interim Period"). In connection with this application, the Applicant submits as follows:

1. FTI P&M is a firm of financial advisors specializing in insolvency restructuring and related matters, and is an operating unit of FTI Consulting, Inc.

2. FTI P&M was retained by the Committee as Financial Advisors to the Committee pursuant to an order approved by the Court dated June 21, 2001 (the "Employment Order").

3. On May 3, 2001, the Court entered an order establishing procedures for interim compensation and reimbursement of expenses for all professionals and committee members ("Interim Compensation Order").

4. The Interim Compensation Order requires each professional to submit monthly statements to various parties as stated in the Interim Compensation Order. These monthly statements include a detailed schedule of the services rendered and the expenses incurred for the related period, and are submitted on or about the 28th day of every month. Following a 20 day period for notice and resolution of objections, the Interim Compensation Order requires the Debtors to promptly pay (i) 80% of undisputed professional fees; and (ii) 100% of the undisputed expenses detailed in the monthly statement.

5. During the Fifth Interim Period, FTI P&M submitted the following monthly statements to the parties in the Interim Compensation Order:

| Period | Fees | Expenses |
|--------|------|----------|
| 7/1-7/31/01 | $70,425.00 | $1,092.45 |

6. Through the date of this Fifth Interim Application, FTI P&M has not been paid for the professional fees rendered nor for the expenses incurred that were included in the monthly statements for the Fifth Interim Period.

7. FTI P&M submits this Fifth Interim Application, pursuant to Section 330 and 331 of the United States Bankruptcy Code and Bankruptcy Rule 2016, for an interim

allowance for compensation for professional services rendered to the Debtors of $56,340.00, representing 80% of fees incurred, and for the reimbursement of expenses in connection therewith of $1,092.45 for the period August 1, 2001 through August 31, 2001. To date, Applicant has not been paid for the professional services rendered nor for reimbursement of expenses.

8. During the Fifth Interim Period, the Applicant rendered professional services aggregating a total of 212.9 hours in the discharge of its duties as financial advisor and bankruptcy consultant to the Committee.

9. The Applicant believes that the interim fees applied for herein for professional services rendered in performing accounting and advisory services for the Committee in this proceeding are fair and reasonable in view of the time spent, the extent of work performed, the nature of the Debtors' capitalization structure and financial condition, the Debtor's financial accounting resources and the results obtained. Applicant has attached to this Fifth Interim Application, as Exhibit D, a complete accounting of the time expended by professionals who worked on this matter during the Fifth Interim Period. The Applicant's work during this period has been categorized into six separate tasks, each of which is described in detail in Exhibit B. Additional task codes may be added in subsequent applications.

10. Section II below briefly discusses the history of the Company prior to its filing, issues facing the Company during the Chapter 11 period, and the major tasks performed by the Applicant during the Fifth Interim Period.

## II.    Background

1. On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. Pursuant to an Application submitted to the Court on or about May 17, 2001, and by a Court order dated June 21, 2001, FTI P&M was retained as financial advisors for the Committee, nunc pro tunc to April 20, 2001. Since its retention, FTI P&M has continuously and vigorously pursued the Committee's interests in these cases.

3. The Debtors have represented, among other things, that: (a) the Debtors engage in specialty chemicals and materials businesses, operating on a worldwide basis, with their corporate headquarters located in Columbia, Maryland; (b) The Debtors predominantly operate through two business units – Davison Chemicals and Performance Chemicals; (c) the Debtors' parent company, W.R. Grace & Co. ("Grace"), is a global holding company that conducts substantially all of its business through a direct, wholly owned subsidiary, W.R. Grace & Co. – Conn. ("Grace-Conn"); (d) Grace-Conn owns

substantially all of the assets, properties and rights of Grace in the United States and has 76 domestic subsidiaries and affiliates, 60 of which are Debtors and Debtors in possession in the Chapter 11 Cases.

4.      The following summary is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit D. Rather, it is merely an attempt to highlight those areas in which services were rendered to the Committee during the Compensation Period, including (i) Financial monitoring and comparison of performance with prior periods (ii) Analysis of information relating to competitors and to other companies facing substantial asbestos litigation (iii) Analysis of creditors' possible outcomes upon the Debtors' emergence from Chapter 11 (iv) Meetings and phone conferences with Debtors' management and counsel and with Committee counsel, and (v) Other Matters.

5.      FTI P&M's role included the preparation and communication of various financial analyses requested by the Official Committee of Unsecured Creditors' professionals in order to assist their rapid understanding of the issues facing the Debtors.

6.      For the Compensation Period, FTI P&M seeks compensation totaling $57,432.45, representing 80% of fees incurred and 100% of expenses incurred. FTI P&M expended an aggregate of 212.9 hours, substantially all of which was expended by four professionals. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task. A small staff was utilized to optimize efficiencies and avoid redundant efforts. The staff of the Debtors or their advisors have been utilized where practical and prudent.

7.      In addition, FTI P&M incurred out-of-pocket expenses in connection with the rendition of the professional services described above in the sum of $1,092.45 for which FTI P&M respectfully requests reimbursement in full. All expenses were billed at actual cost, exclusive of amortization of the cost of investment, equipment or capital outlay. Internal charges for outgoing out-of-town facsimile transmissions were billed at $1.25 per page for domestic transmissions. Photocopy charges were billed at actual cost for external copying and $.20 per page for internal copying. FTI P&M believes that these charges reflect its actual out-of-pocket costs.

8.      The disbursements and expenses have been incurred in accordance with FTI P&M's normal practice of charging clients for expenses clearly related to and required by particular matters. Such expenses were often incurred to enable FTI P&M to devote time beyond normal office hours to matters which imposed extraordinary time demands. FTI P&M has endeavored to minimize these expenses to the fullest extent possible.

9.      FTI P&M's approach is to utilize senior, experienced personnel and to encourage the Debtors to provide the staff-level support and analysis to minimize total cost. In addition, FTI P&M's per diem rates for professionals of comparable experience

are 15% to 25% lower than its competitors, the "Big-Five" accounting firms and certain other nationally-recognized specialty firms.

10.     Because FTI P&M's core staff consisted of senior professionals who performed a vast amount of the work, time spent communicating internally and reviewing the work product of junior associates was kept to a minimum. Additionally, because of the experience of FTI P&M's professionals, in many instances only one or two FTI P&M representatives attended meetings or conference calls or performed specific functions.

11.     Edwin N. Ordway, Jr., Managing Director in charge of this case, directed the activities of the FTI P&M team, calling upon his more than ten years of experience in restructuring and insolvency matters, including more than 100 cases, many as large and complex, and some larger and more complex than this matter.

## III.     Summary of Fees and Expenses Incurred

12.     To the best of the Applicant's knowledge and belief, there has been no duplication of services between the Applicant and any other accountants or consultants to the bankruptcy estate.

13.     FTI P&M's travel time policy is for professional personnel to travel outside of business hours when possible. Such time is not charged to a client unless productive work is performed during the travel period. In this engagement, non-productive travel time is not being charged to the Debtor.

14.     In providing a reimbursable service such as copying or telephone, the Applicant does not make a profit on that service. In charging for a particular service, FTI P&M does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay. In seeking reimbursement for a service which the Applicant justifiably purchased or contracted for from a third party, FTI P&M requests reimbursement only for the amount billed to FTI P&M by such third party vendor and paid by FTI P&M to that vendor.

15.     FTI P&M's policy with respect to word processing and document preparation and handling services provided by FTI P&M employees is to bill clients by the hour for such time, but only if the employees' time is clearly and exclusively devoted to work performed for that particular client, such as for the preparation, collation and binding of a report for a client. Such services are billed to the Debtor at a rate commensurate with that which would be charged by a third party provider such as a temporaries agency.

16.     Annexed hereto as Exhibit B is a more comprehensive summary of the services performed by the Applicant during the Fifth Interim Period at the direction of the Committee and its Counsel.

17.     Annexed hereto as Exhibit C is a summary of fees by professional and by task during the Fifth Interim Period.

18.     Annexed hereto as Exhibit D are detailed descriptions of the time spent by each professional during the Fifth Interim Period.

19.     Pursuant to Rule 2016, FTI P&M states that no compensation to be received in this proceeding will be shared with any person or entity outside of FTI Policano & Manzo and that no compensation has been paid or promised to the Applicant in connection with the compensation sought in this Application except as disclosed herein. No prior application has been made to this or any other Court for the relief requested herein for the Compensation Period, nor has any payment been received by FTI P&M on account of its accounting and financial advisory services rendered or on account of the out-of-pocket expenses incurred in connection therewith.

20.     As stated in the Affidavit of Edwin N. Ordway, Jr. annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

21.     The Debtors will give notice of the relief requested herein and of the relief requested by the other professionals in their respective applications for allowance of compensation by serving notice of this application upon all parties that have requested notice in these cases, and FTI P&M has personally served copies of the Application with exhibits to the Debtors and on the United States Trustee.

22.     WHEREFORE, the Applicant respectfully requests that this Court enter an order:

    a.  approving the allowance of compensation for professional services rendered to the Committee during the period from August 1, 2001 through and including August 31, 2001 in the amount of $70,425.00;

    b.  approving the reimbursement of FTI P&M's out-of-pocket expenses incurred in connection with the rendering of such services during the period from August 1, 2001 through and including August 31, 2001 in the amount of $1,092.45; and

c.  authorizing the Debtor to pay as interim compensation to FTI P&M 80% of the amount of the professional services rendered and 100% of the expenses incurred by FTI P&M during the period from August 1, 2001 through and including August 31, 2001, subject to final payment of the full amount; and

d.  granting such other and further relief as this Court may deem just and proper.

Date:  9/27/01

FTI Policano & Manzo

By Edwin N. Ordway, Jr.

FTI Policano & Manzo
Park 80 West, Plaza I
Saddle Brook, NJ  07663
(201) 843-4900

EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W.R. GRACE & CO., et al.** | ) | **Case No. 01-01139 (JJF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

## AFFIDAVIT

STATE OF NEW JERSEY )
                         ) ss:
COUNTY OF BERGEN    )

EDWIN N. ORDWAY, JR., being duly sworn, deposes and says:

1.        I am a Managing Director of FTI Policano & Manzo, ("FTI P&M"), an operating unit of FTI Consulting, Inc. ("FTI"), and I am duly authorized to make this affidavit on behalf of FTI P&M. FTI P&M provides financial consulting services for restructuring matters and has its principal office at Park 80 West Plaza I, Saddle Brook, New Jersey. FTI P&M has provided financial consulting services to and has rendered professional services on behalf of the Official Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co., and sixty-one of its domestic subsidiaries and affiliates which are debtors and debtors-in-possession before this Court.

2.        This affidavit is submitted pursuant to Bankruptcy Rule 2016(a) in support of FTI P&M's fifth monthly application for an interim allowance of compensation and for the reimbursement of expenses for services rendered during the

-1-

period from August 1, 2001 through and including August 31, 2001 in the aggregate amount of $57,432.45.

3.        All services for which compensation is requested by FTI P&M were professional services performed for and on behalf of the Committee from August 1, 2001 through and including August 31, 2001 and not on behalf of any other person.

4.        In accordance with Title 18 U.S.C. Section 155, neither I nor any employee of my firm has entered into any agreement, express or implied, with any other party-in-interest for the purpose of fixing the amount of any of the fees or other compensation to be allowed out of or paid from the Debtors' assets.

5.        In accordance with Section 504 of the Bankruptcy Code, no agreement or understanding exists between me, my firm, or any employee thereof, on the one hand, and any other person, on the other hand, for division of such compensation as my firm may receive for services rendered in connection with these cases, nor will any division of fees prohibited by Section 504 of the Bankruptcy Code be made by me or any employee of my firm.

_____
EDWIN N. ORDWAY, JR.

Sworn to before me this
21st day of September, 2001

_____
Notary Public

**PATRICIA E. FOOSE**
**NOTARY PUBLIC OF NEW JERSEY**
**MY COMMISSION EXPIRES AUG. 6, 2006**

Exhibit B

## SUMMARY OF THE SERVICES PERFORMED BY FTI POLICANO & MANZO DURING THE FIFTH INTERIM PERIOD

### Task Code 1 - Preparation for and Participation at Creditors Committee Meetings or Conference Calls

No Creditors Committee meetings or conference calls took place during the Fifth Interim Period.

### Task Code 2 - Issues Related to Chapter 11 Operating Issues, Such As Critical Vendor Motions, Reclamation Claims, Executory Contracts and Similar Issues (10.8 Hours)

We discussed with and provided our advice to counsel regarding the proposed objection of the Creditors Committee to the joint motion of asbestos property damage claimants and asbestos personal injury claimants to prosecute fraudulent conveyance claims and to the Debtors' motion regarding reclamation claims. FTI P&M also had negotiations with counsel and Debtors' professionals and management regarding confidentiality arrangements relating to FTI P&M's engagement (this was at the Debtors' request).

### Task Code 3 – Preparation of Monitoring and Operating Results Reports (62.1 Hours)

During this period, we prepared a monitoring report and supporting schedules for the Creditors Committee covering the month, quarter and year-to-date ended June 30, 2001, including narratives on the individual business segments, product lines and market conditions, and also including comparisons with prior periods and competitors' performance.

### Task Code 4 - Analysis of Financial Data, Including Business Plan, Projections, Forecasts, Cash Flow Forecasts and Historical Information (91.2 Hours)

FTI P&M obtained, analyzed and discussed with Debtor management and professionals historical and current operating results by business segment, and prepared numerous analyses of key performance indicators for each business segment. FTI P&M monitored, analyzed and forecasted the Debtors' cash position and working capital needs. Additionally during this period, FTI P&M performed a preliminary analysis of a proposed corporate acquisition by an unfiled European subsidiary.

**Task Code 5- Monthly Statement, Retention and Fee Application Preparation** (10.9 Hours)

This category represents the time expended during the Fifth Interim Period in preparing FTI P&M's Fourth Interim Application for Allowance of Compensation and Reimbursement of Expenses.

**Task Code 6- Grace competitor profile analysis and analysis of other asbestos related Chapter 11 filings** (38.0 Hours)

FTI P&M prepared a financial and valuation profile of direct competitors as a baseline for a valuation of the Debtor. Additionally, we prepared a profile and analyses for the Committee on the background of asbestos claims, the Debtor's potential asbestos liability and ability to fund, and the history and outcomes of other asbestos-related bankruptcies.

Exhibit C
Page 2 of 2

W.R. GRACE & CO. ET AL.
Summary of Fees by Professional
For the period August 1, 2001 through August 31, 2001

| TASK CODE | TASK | E. Ordway | S. Cunningham | J. Schwendeman | C. MacCallum | C. Whitney | M. Hakoun | M. DiSalvio | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Meetings of Creditors | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| 2 | Chapter 11 Operating Issues | 4.4 | 3.7 | 0.0 | 1.7 | 1.0 | 0.0 | 0.0 | 10.8 |
| 3 | Operating Results Report Preparation | 11.2 | 20.9 | 0.0 | 8.4 | 21.6 | 0.0 | 0.0 | 62.1 |
| 4 | Business Analyses | 0.0 | 16.1 | 0.0 | 46.7 | 28.4 | 0.0 | 0.0 | 91.2 |
| 5 | Fee Application Preparation | 1.8 | 0.0 | 0.0 | 8.1 | 1.0 | 0.0 | 0.0 | 10.9 |
| 6 | Competitor Profile Analysis | 0.0 | 1.4 | 4.0 | 23.6 | 0.0 | 8.5 | 0.5 | 38.0 |
| | TOTAL | 17.4 | 42.0 | 4.0 | 88.5 | 52.0 | 8.5 | 0.5 | 212.9 |

**Exhibit D**

W.R. GRACE & CO. ET. AL.

Professional Services Rendered by Edwin N. Ordway, Jr.

For the period August 1, 2001 through August 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 6-Aug | 2 | Discussed confidentiality issues with Blackstone. | 0.3 |
| 7-Aug | 2 | Participated in conference call with counsel to review confidentiality concerns. | 0.7 |
| 10-Aug | 2 | Discussed confidentiality agreement draft with counsel. | 0.2 |
| | 2 | Prepared updated work plan. | 0.4 |
| 14-Aug | 2 | Reviewed revised draft of confidentiality agreement and discussed with counsel. | 0.4 |
| | 2 | Read and analyzed motion regarding reclamation claims. | 0.4 |
| | 2 | Read and analyzed exclusivity motion and fraudulent conveyance motion. | 0.5 |
| 15-Aug | 2 | Read and analyzed recent motions. | 0.3 |
| 16-Aug | 3 | Prepared report to Committee regarding June year-to-date operating performance. | 1.9 |
| 17-Aug | 3 | Prepared report to Committee regarding June year-to-date operating performance. | 3.9 |
| 20-Aug | 5 | Prepared fee application. | 0.7 |
| | 3 | Continued to prepare and edit June operating performance report. | 2.1 |
| 21-Aug | 2 | Read revised draft of confidentiality agreement and discussed with counsel. | 0.3 |
| | 3 | Continued preparation of June monitoring report. | 3.3 |
| | 5 | Prepared fee application. | 0.7 |
| 23-Aug | 2 | Prepared revised work plan for near-term projects; discussed same with Chairman. | 0.9 |

| | | |
|---|---|---|
| 5 | Prepared fee application. | 0.4 |
| | **Total Hours - August** | 17.4 |

**Exhibit D**

W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Sean Cunningham
For the period August 1, 2001 through August 31, 2001

| Date | Task Code | Description | Hours |
|------|------|-------------|-------|
| 6-Aug | 4 | Analyzed and prepared various analyses comparing the results of operations for the period ended June 2001 to budget and prior years. | 2.5 |
| | 2 | Documented concerns of W.R Grace management and Blackstone pertaining to confidentiality issues raised at the July 26-27 meeting. | 1.5 |
| | 2 | Discussed confidentiality issues with Blackstone. | 0.5 |
| 7-Aug | 4 | Prepared various financial analyses of the Company's results of operations for June 2001. | 2.8 |
| | 2 | Participated in conference call with counsel to review confidentiality concerns. | 0.8 |
| 8-Aug | 3 | Prepared analysis of results of operation for inclusion in update report to Unsecured Creditors Committee. | 3.0 |
| | 4 | Prepared and reviewed questions and open items in preparation for conference call with Grace management on August 9. | 1.5 |
| 9-Aug | 4 | Participated in conference call with Grace management and Blackstone re: June results. | 1.0 |
| | 3 | Prepared analysis of results of operation for inclusion in update report to Unsecured Creditors Committee. | 4.0 |
| 10-Aug | 4 | Requested additional data from W.R. Grace re: cash flow results. | 1.0 |
| | 2 | Reviewed proposed confidentiality agreement received from Grace and discussed with counsel. | 0.5 |
| 13-Aug | 3 | Prepared report to Unsecured Creditors Committee re: June Quarter and YTD financial results. | 6.6 |
| 15-Aug | 3 | Reviewed draft report to Unsecured Creditors Committee. Prepared analysis of cash flow results versus DIP forecast for the period ended 6/30/01. | 4.8 |
| 22-Aug | 2 | Reviewed draft response re: confidentiality agreement. | 0.4 |

|        |   |                                                                                                                                                                                                                                                          |     |
|--------|---|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-----|
|        | 4 | Reviewed Project CHI acquisition document received from Company.                                                                                                                                                                                          | 1.3 |
| 23-Aug | 6 | Prepared analysis of valuations for various industry comparables.                                                                                                                                                                                         | 1.4 |
|        | 4 | Reviewed and prepared analysis of acquisition target, Project CHI.                                                                                                                                                                                        | 3.0 |
| 27-Aug | 4 | Reviewed and analyzed results of operation as reported in 10 Q filing for the period ended June 30. Prepared reconciliation between public filing and internal information included in second quarter update report to the Unsecured Creditors Committee. | 3.0 |
| 29-Aug | 3 | Finalized report to Unsecured Creditors Committee re: second quarter results. Reviewed report findings with committee counsel and agent.                                                                                                                 | 2.5 |
|        |   | **Total Hours - August**                                                                                                                                                                                                                                 | 42.0 |

**Exhibit D**

W.R. GRACE & CO. ET. AL.

Professional Services Rendered by Jeffrey Schwendeman

For the period August 1, 2001 through August 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 1-Aug | 6 | Analysis of recent news and analysts' research reports relating to the asbestos industry. | 1.1 |
| 9-Aug | 6 | Analyzed recent peer group operating results and industry economic data. | 0.7 |
| 22-Aug | 6 | Analyzed economic and peer group projections of Company industry segments re: intermediate and long-term industry growth assumptions for business planning purposes. | 2.2 |
|  |  | **Total Hours - August** | 4.0 |

## W.R. GRACE & CO. ET. AL.
### Professional Services Rendered by Craig MacCallum
For the period August 1, 2001 through August 31, 2001

| Date | Task Code | Description | Hours |
|---|---|---|---|
| 1-Aug | 6 | Researched and prepared comparative table of enterprise values and EBITDA multiples for Grace and selected comparable companies | 4.8 |
| | 4 | Continued with preparation of analyses of asbestos claims and liability for inclusion in the asbestos report | 4.7 |
| 2-Aug | 4 | Researched and prepared sensitivity analysis of lenders' recovery with respect to major parameters. | 3.9 |
| | 6 | Completed comparative table of enterprise values and EBITDA multiples for Grace and selected comparable companies | 2.3 |
| | 4 | Completed preparation of analyses of asbestos claims and liability for inclusion in the asbestos report | 3.3 |
| 3-Aug | 4 | Prepared analysis of Debtor's coverage ratio at varying amounts of asbestos claims liability | 2.2 |
| | 4 | Prepared supporting schedule of comparative quarterly operating results for inclusion in June report. | 3.5 |
| | 4 | Prepared analysis of lenders' potential recoveries under various scenarios of total asbestos liability, length of bankruptcy, and discount rate. | 2.3 |
| 6-Aug | 6 | Researched status and outcomes of bankruptcy filings by asbestos defendants. | 6.5 |
| | 2 | Reviewed and edited memo on confidentiality issues. | 0.5 |
| | 3 | Reviewed and edited June report outline and prepared supporting schedules. | 2.5 |
| 9-Aug | 3 | Prepared and edited supporting schedules for June report. | 2.0 |
| 10-Aug | 6 | Prepared narrative and tables regarding Grace asbestos claim filing rates, possible structure on emergence, and the experience of other asbestos defendant reorganizations. | 6.0 |
| | 4 | Reviewed annual report, 10-Q, internal operating reports and market research data with respect to Performance Chemicals division. | 1.0 |

| | | | |
|---|---|---|---|
| | 3 | Began preparation of narrative on Performance Chemicals for inclusion in June report. | 1.5 |
| 12-Aug | 3 | Completed preparation of narrative on Performance Chemicals for inclusion in June report. | 1.5 |
| 13-Aug | 4 | Revised and modified narrative of Grace current status with respect to asbestos claims based on internal review and comments. | 1.8 |
| | 2 | Provided counsel with final form of confidentiality agreement and amendments. | 0.3 |
| | 5 | Began compilation of data for draft fee application for the period 7/1-7/31/01. | 2.2 |
| 14-Aug | 2 | Participated in conference call with counsel regarding second amendment to confidentiality agreement. | 0.3 |
| | 2 | Reviewed DIP agreement for reclamation claim provisions. | 0.6 |
| | 5 | Began preparation of draft fee application for the period 7/1-7/31/01. | 1.0 |
| | 4 | Edited narrative of current status of asbestos claims based on internal review and comments. | 0.7 |
| 15-Aug | 5 | Began preparation of supporting schedules for draft fee application for the period 7/1-7/31/01. | 1.1 |
| | 4 | Discussed Grace asbestos claims liability narrative with counsel. | 0.6 |
| 16-Aug | 4 | Edited Grace asbestos claims liability narrative based on comments by counsel. | 1.8 |
| | 3 | Read and reviewed P&M June report. | 0.9 |
| 17-Aug | 6 | Completed Grace asbestos claims liability narrative and analyses, and incorporated in report to committee on the background of asbestos liabilities. | 2.0 |
| | 5 | Continued with preparation of fee application for the period 7/1-7/31/01. | 1.2 |
| 20-Aug | 6 | Finalized supporting schedules for draft fee application for the period 7/1-7/31/01. | 2.0 |
| 21-Aug | 4 | Reviewed and analyzed 10-Q for the Debtor for the quarter ended 6/30/01. | 1.5 |
| 22-Aug | 5 | Finalized preparation of fee application for the period 4/20-4/30/01. | 1.0 |
| | 4 | Continued with review 10-Q for the Debtor for the quarter ended 6/30/01. | 2.0 |
| 23-Aug | 5 | Revised fee application based on review comments. Forwarded fee application to counsel. | 1.6 |
| | 4 | Began analysis of Statement of Financial Affairs court filings and supporting schedules for Debtor and all filing subsidiaries. | 7.4 |

| | | | |
|---|---|---|---|
| 24-Aug | 4 | Continued with analysis of Statement of Financial Affairs court filings and supporting schedules for Debtor and all filing subsidiaries. | 10.0 |

**Total Hours - August**                                          88.5

**Exhibit D**

W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Christy Whitney
For the period August 1, 2001 through August 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 7-Aug | 4 | Summarized key issues from July 26 and July 27 on-site meetings held at the Company. | 2.7 |
| | 4 | Prepared comparative analysis of quarter and year-to-date operating performance and drafted observations for inclusion in the June Report. | 1.3 |
| | 4 | Prepared a comparative balance sheet (June 30 and December 31) and drafted observations. | 2.2 |
| | 4 | Prepared a comparative analysis of June YTD sales by division and region and drafted observations. | 2.3 |
| | 4 | Prepared summary of key working capital statistics, by division (inventory, A/R and A/P turns). | 0.5 |
| 8-Aug | 4 | Prepared June YTD Sales and EBITDA "bridge" analysis by division, and drafted observations for inclusion in the June report. | 7.2 |
| | 4 | Prepared a comparative analysis of other income detail and drafted observations for inclusion in the June report. | 1.8 |
| 9-Aug | 4 | Reviewed analysis of June performance to prepare for discussion with the Company. | 0.6 |
| | 4 | Participated in conference call with the Company and Blackstone to discuss June performance questions submitted to the Company on August 3. | 1.5 |
| | 4 | Prepared a comparative June year-to-date analysis of the consolidated statement of cash flows. | 2.3 |
| | 3 | Drafted June report. | 2.6 |
| 10-Aug | 3 | Drafted Davison Chemicals division overview for inclusion in the June report. | 5.5 |
| | 5 | Prepared fee application. | 1.0 |
| 13-Aug | 3 | Reviewed and edited June monitoring report. | 2.0 |

| | | | |
|---|---|---|---|
| 14-Aug | 4 | Reviewed schedules of changes in working capital accounts for filed and non-filed entities prepared by the Company. | 1.5 |
| | 4 | Participated in conference call with management to discuss schedule of working capital changes. | 0.5 |
| | 3 | Updated June report to reflect discussion with management. | 3.0 |
| 15-Aug | 3 | Made revisions to June report. | 0.5 |
| 17-Aug | 4 | Compared June financial report to second quarter 10-Q. | 0.7 |
| | 4 | Review of second quarter 10Q. | 2.3 |
| 21-Aug | 3 | Update June report to incorporate sections prepared byu colleagues. | 8.0 |
| 22-Aug | 4 | Reviewed report on "Project Chi." | 1.0 |
| 28-Aug | 2 | Processed distribution of final June report to the Committee. | 1.0 |
| | | **Total Hours - August** | 52.0 |

Exhibit D

# W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Matthew Hakoun
For the period August 1, 2001 through August 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 21-Aug | 6 | Updated analysis of litigation reserve provisions for Company and Competitors. | 1.5 |
| 23-Aug | 6 | Gathered information on identified comparable companies and began to build a template to create a trailing-twelve-months statement to provide the most recent financial information. | 2.0 |
| 28-Aug | 6 | Continued working on the trailing-twelve-months-statement template and began compiling information on a revised industry peer group. | 1.5 |
| 29-Aug | 6 | Continued working on the trailing-twelve-months template and inputted financial information from the trailing four quarters for the peer group. | 1.5 |
| 30-Aug | 6 | Gathered W.R. Grace public information from the Delaware   District Bankruptcy Court and began compiling a database of  Statements of Financial Affiars for subsidiary companies. | 2.0 |
| | | **Total Hours - August** | 8.5 |

**Exhibit D**

W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Moira DiSalvio
For the period August 1, 2001 through August 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 31-Aug | 6 | Identified the projected monthly Consumer Price Index (CPI) trends in preparation for analysis of Company five-year strategic plan. | 0.5 |
| | | **Total Hours - August** | 0.5 |

## W.R. GRACE & CO. ET. AL.
Summary of Expenses by Type of Expense
For the period August 1, 2001 through August 31, 2001

| | | |
|---|---|---:|
| Copies: | | |
| Internal | $ | 102.60 |
| External | | - |
| Telecommunications: | | |
| Toll Charges | | 24.72 |
| Facsimile Charges | | 7.50 |
| Postage, Federal Express | | 29.67 |
| Travel Expenses: | | |
| Transportation, lodging, tolls and parking | | 519.34 |
| Meals | | - |
| Outside Services | | 251.12 |
| Word Processing Services | | 82.50 |
| Document Preparation and Handling Services | | 75.00 |
| Total Expenses | $ | 1,092.45 |

W.R. GRACE & CO. ET. AL.
Detail of Expenses by Type of Expense
For the period August 1, 2001 through August 31, 2001

| Copies, Internal | Total for Month | 513 | pages @ $0.20/page: | | | $ | 102.60 |
|---|---|---|---|---|---|---|---|

| Facsimile Charges: | | 6 | pages @ $1.25/page: | | | | 7.50 |
|---|---|---|---|---|---|---|---|

| Toll Charges: | S. Cunningham | Telephone calls | | 23.03 | | |
|---|---|---|---|---|---|---|
| | C. Whitney | Telephone calls | | 1.69 | | |
| | | | Subtotal | | 24.72 | |

| Postage, Federal Express: | | 24-Aug | Airborne | | 29.67 |
|---|---|---|---|---|---|

Transportation, lodging, tolls and parking:

| C. Whitney | 13-Aug | Auto Rental | | 358.46 | |
|---|---|---|---|---|---|
| | 24-Aug | Auto Rental | | 160.88 | |
| | | Subtotal | | | 519.34 |

| Meals: | | | | - |
|---|---|---|---|---|

Outside Services Out-of-Pocket:

| | 12-Aug | Virtual Docket LLC | | 45.00 | |
|---|---|---|---|---|---|
| | 24-Aug | Duane Morris - legal fees | | 164.75 | |
| | 31-Aug | Dow Jones | | 41.37 | |
| | | Subtotal | | | 251.12 |

| Word Processing Services: | Hours | | Rate | | |
|---|---|---|---|---|---|
| | 0.10 | | $75.00 | 7.50 | |
| | 1.00 | | $75.00 | 75.00 | |
| | | Subtotal | | | 82.50 |

| Document Preparation and Handling Services: | Hours | | Rate | | |
|---|---|---|---|---|---|
| | 0.50 | | $75.00 | 37.50 | |
| | 0.50 | | $75.00 | 37.50 | |
| | | Subtotal | | | 75.00 |

| | Total Expenses | | | | $ | 1,092.45 |
|---|---|---|---|---|---|---|

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

---------------------------x

In re:                                                    Chapter 11

W.R. GRACE & Co., et al.,                      Case No. 01-01139(JJF)
                                                          (Jointly Administered)

                                    Debtors

---------------------------x

ORDER ALLOWING FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD AUGUST 1, 2001 THROUGH AUGUST 31, 2001)

Upon the Application, dated September 28, 2001 (the "Application"), of FTI

P&M, as Financial Advisors to the Official Committee of Unsecured Creditors (the

"Committee") for Allowance of Interim Compensation in the amount of $56,340.00 for

Actual and Necessary Services Rendered and for Reimbursement of Actual and

Necessary Expenses Incurred in the amount of $1,092.45 for the Period from August 1,

2001 through August 31, 2001 (the "Application Period"); the Court having reviewed the

Application; and finding that the Court has jurisdiction over this matter pursuant to 28

U.S.C. Sections 157 and 1334; and after notice and opportunity for a hearing to consider

the Application; and upon the record and after due deliberation thereon; and due and

proper notice of the Application having been given; and sufficient cause appearing

therefore;

IT IS HEREBY ORDERED:

1.      The Application is GRANTED.

2.      FTI P&M is allowed interim compensation in the amount of $56,340.00 for actual, reasonable and necessary professional services rendered on behalf of the Committee during the Application Period, and reimbursement of $1,092.45 for actual, reasonable and necessary expenses incurred during the Application Period.

3.      The Debtors shall pay to FTI P&M the amount of $57,432.45, which is equal to the sum of FTI P&M's allowed interim compensation and expense reimbursement out of the assets of their estates.

Dated: Wilmington, Delaware

_____ _____, 2001

_____

UNITED STATES BANKRUPTCY JUDGE