Exhibit D

Fee Application for the period

September 1 – September 30, 2001

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

--------------------------------x

In re:                                    Chapter 11

W.R. GRACE & Co., et al.,                 Case No.  01-01139(JJF)
                                          (Jointly Administered)


                        Debtors

--------------------------------x

SIXTH INTERIM APPLICATION OF FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM SEPTEMBER 1, 2001 THROUGH SEPTEMBER 30, 2001)

Type of Application: Interim ___X___     Final _____

Name of Applicant:                            FTI Policano & Manzo

Authorized to Provide Professional Services to:    The Official Committee of
                                                   Unsecured Creditors

Date of Order Authorizing Employment:         June 21, 2001

Compensation Sought:
        Application Date:        October 30, 2001
        Application Period:   September 1, 2001 through September 30, 2001


| | Hours | Amount |
|---|---|---|
| Professional Fees (80%) | 297.1 | $83,853.20 |
| Expense Reimbursement (100%) | | 3,028.40 |
| Total | | $86,881.60 |

Is this a first application?  Yes ____  No _X_

-1-

SIXTH INTERIM APPLICATION OF FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM SEPTEMBER 1, 2001 THROUGH SEPTEMBER 30, 2001)

INDEX

APPLICATION FOR ALLOWANCE OF INTERIM
COMPENSATION AND REIMBURSEMENT OF EXPENSES

EXHIBIT A    Affidavit of Edwin N. Ordway, Jr.

EXHIBIT B    Summary of the services performed by FTI Policano & Manzo from
September 1, 2001 through September 30, 2001

EXHIBIT C    Summary of fees by professional for the period September 1, 2001
through September 30, 2001

EXHIBIT D    Detailed descriptions of services rendered by professional for the period
September 1, 2001 through September 30, 2001

EXHIBIT E    Summary of expenses incurred for the period September 1, 2001 through
September 30, 2001

## APPLICATION FOR ALLOWANCE OF
## INTERIM COMPENSATION AND REIMBURSEMENT
## OF EXPENSES

### I.    Introduction

This is the Sixth application for allowance of interim compensation and reimbursement of expenses ("Sixth Interim Application") made by FTI Policano & Manzo ("FTI P&M" or "Applicant"), as Financial Advisors to the Official Committee of Unsecured Creditors (the "Committee") of W.R. Grace & Co. et. al., (the "Company" or "Debtors") for the period September 1, 2001 through September 30, 2001 ("Sixth Interim Period"). In connection with this application, the Applicant submits as follows:

1. FTI P&M is a firm of financial advisors specializing in insolvency restructuring and related matters, and is an operating unit of FTI Consulting, Inc.

2. FTI P&M was retained by the Committee as Financial Advisors to the Committee pursuant to an order approved by the Court dated June 21, 2001 (the "Employment Order").

3. On May 3, 2001, the Court entered an order establishing procedures for interim compensation and reimbursement of expenses for all professionals and committee members ("Interim Compensation Order").

4. The Interim Compensation Order requires each professional to submit monthly statements to various parties as stated in the Interim Compensation Order. These monthly statements include a detailed schedule of the services rendered and the expenses incurred for the related period, and are submitted on or about the 28th day of every month. Following a 20 day period for notice and resolution of objections, the Interim Compensation Order requires the Debtors to promptly pay (i) 80% of undisputed professional fees; and (ii) 100% of the undisputed expenses detailed in the monthly statement.

5. During the Sixth Interim Period, FTI P&M submitted the following monthly statements to the parties in the Interim Compensation Order:

| Period | Fees | Expenses |
|---|---|---|
| 9/1-9/30/01 | $104,816.50 | $3,028.40 |

6. Through the date of this Sixth Interim Application, FTI P&M has not been paid for the professional fees rendered nor for the expenses incurred that were included in the monthly statements for the Sixth Interim Period.

7. FTI P&M submits this Sixth Interim Application, pursuant to Section 330 and 331 of the United States Bankruptcy Code and Bankruptcy Rule 2016, for an interim

allowance for compensation for professional services rendered to the Debtors of $83,853.20, representing 80% of fees incurred, and for the reimbursement of expenses in connection therewith of $3,028.40 for the period September 1, 2001 through September 30, 2001. To date, Applicant has not been paid for the professional services rendered nor for reimbursement of expenses.

8. During the Sixth Interim Period, the Applicant rendered professional services aggregating a total of 297.1 hours in the discharge of its duties as financial advisor and bankruptcy consultant to the Committee.

9. The Applicant believes that the interim fees applied for herein for professional services rendered in performing accounting and advisory services for the Committee in this proceeding are fair and reasonable in view of the time spent, the extent of work performed, the nature of the Debtors' capitalization structure and financial condition, the Debtor's financial accounting resources and the results obtained. Applicant has attached to this Sixth Interim Application, as Exhibit D, a complete accounting of the time expended by professionals who worked on this matter during the Sixth Interim Period. The Applicant's work during this period has been categorized into six separate tasks, each of which is described in detail in Exhibit B. Additional task codes may be added in subsequent applications.

10. Section II below briefly discusses the history of the Company prior to its filing, issues facing the Company during the Chapter 11 period, and the major tasks performed by the Applicant during the Sixth Interim Period.

## II.    Background

1.    On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.    Pursuant to an Application submitted to the Court on or about May 17, 2001, and by a Court order dated June 21, 2001, FTI P&M was retained as financial advisors for the Committee, nunc pro tunc to April 20, 2001. Since its retention, FTI P&M has continuously and vigorously pursued the Committee's interests in these cases.

3.    The Debtors have represented, among other things, that: (a) the Debtors engage in specialty chemicals and materials businesses, operating on a worldwide basis, with their corporate headquarters located in Columbia, Maryland; (b) The Debtors predominantly operate through two business units – Davison Chemicals and Performance Chemicals; (c) the Debtors' parent company, W.R. Grace & Co. ("Grace"), is a global holding company that conducts substantially all of its business through a direct, wholly owned subsidiary, W.R. Grace & Co. – Conn. ("Grace-Conn"); (d) Grace-Conn owns

substantially all of the assets, properties and rights of Grace in the United States and has 76 domestic subsidiaries and affiliates, 60 of which are Debtors and Debtors in possession in the Chapter 11 Cases.

4.     The following summary is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit D.  Rather, it is merely an attempt to highlight those areas in which services were rendered to the Committee during the Compensation Period, including (i) Financial monitoring and comparison of performance with prior periods (ii) Analysis of the five-year business plan prepared by the Debtors (iii) Analysis of information provided by the Debtor regarding a proposed acquisition (iv) Meetings and phone conferences with Debtors' management and counsel and with Committee counsel, and (v) Other Matters.

5.     FTI P&M's role included the preparation and communication of various financial analyses requested by the Official Committee of Unsecured Creditors' professionals in order to assist their rapid understanding of the issues facing the Debtors.

6.     For the Compensation Period, FTI P&M seeks compensation totaling $86,881.60, representing 80% of fees incurred and 100% of expenses incurred.  FTI P&M expended an aggregate of 297.1 hours, substantially all of which was expended by four professionals.  The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.  A small staff was utilized to optimize efficiencies and avoid redundant efforts.  The staff of the Debtors or their advisors have been utilized where practical and prudent.

7.     In addition, FTI P&M incurred out-of-pocket expenses in connection with the rendition of the professional services described above in the sum of $3,028.40 for which FTI P&M respectfully requests reimbursement in full.  All expenses were billed at actual cost, exclusive of amortization of the cost of investment, equipment or capital outlay.  Internal charges for outgoing out-of-town facsimile transmissions were billed at $1.25 per page for domestic transmissions.  Photocopy charges were billed at actual cost for external copying and $.20 per page for internal copying.  FTI P&M believes that these charges reflect its actual out-of-pocket costs.

8.     The disbursements and expenses have been incurred in accordance with FTI P&M's normal practice of charging clients for expenses clearly related to and required by particular matters.  Such expenses were often incurred to enable FTI P&M to devote time beyond normal office hours to matters which imposed extraordinary time demands.  FTI P&M has endeavored to minimize these expenses to the fullest extent possible.

9.     FTI P&M's approach is to utilize senior, experienced personnel and to encourage the Debtors to provide the staff-level support and analysis to minimize total cost.  In addition, FTI P&M's per diem rates for professionals of comparable experience

are 15% to 25% lower than its competitors, the "Big-Five" accounting firms and certain other nationally-recognized specialty firms.

10.     Because FTI P&M's core staff consisted of senior professionals who performed a vast amount of the work, time spent communicating internally and reviewing the work product of junior associates was kept to a minimum. Additionally, because of the experience of FTI P&M's professionals, in many instances only one or two FTI P&M representatives attended meetings or conference calls or performed specific functions.

11.     Edwin N. Ordway, Jr., Managing Director in charge of this case, directed the activities of the FTI P&M team, calling upon his more than ten years of experience in restructuring and insolvency matters, including more than 100 cases, many as large and complex, and some larger and more complex than this matter.

## III.    Summary of Fees and Expenses Incurred

12.     To the best of the Applicant's knowledge and belief, there has been no duplication of services between the Applicant and any other accountants or consultants to the bankruptcy estate.

13.     FTI P&M's travel time policy is for professional personnel to travel outside of business hours when possible. Such time is not charged to a client unless productive work is performed during the travel period. In this engagement, non-productive travel time is not being charged to the Debtor.

14.     In providing a reimbursable service such as copying or telephone, the Applicant does not make a profit on that service. In charging for a particular service, FTI P&M does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay. In seeking reimbursement for a service which the Applicant justifiably purchased or contracted for from a third party, FTI P&M requests reimbursement only for the amount billed to FTI P&M by such third party vendor and paid by FTI P&M to that vendor.

15.     FTI P&M's policy with respect to word processing and document preparation and handling services provided by FTI P&M employees is to bill clients by the hour for such time, but only if the employees' time is clearly and exclusively devoted to work performed for that particular client, such as for the preparation, collation and binding of a report for a client. Such services are billed to the Debtor at a rate commensurate with that which would be charged by a third party provider such as a temporaries agency.

16.     Annexed hereto as Exhibit B is a more comprehensive summary of the services performed by the Applicant during the Sixth Interim Period at the direction of the Committee and its Counsel.

17.    Annexed hereto as Exhibit C is a summary of fees by professional and by task during the Sixth Interim Period.

18.    Annexed hereto as Exhibit D are detailed descriptions of the time spent by each professional during the Sixth Interim Period.

19.    Pursuant to Rule 2016, FTI P&M states that no compensation to be received in this proceeding will be shared with any person or entity outside of FTI Policano & Manzo and that no compensation has been paid or promised to the Applicant in connection with the compensation sought in this Application except as disclosed herein. No prior application has been made to this or any other Court for the relief requested herein for the Compensation Period, nor has any payment been received by FTI P&M on account of its accounting and financial advisory services rendered or on account of the out-of-pocket expenses incurred in connection therewith.

20.    As stated in the Affidavit of Edwin N. Ordway, Jr. annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

21.    The Debtors will give notice of the relief requested herein and of the relief requested by the other professionals in their respective applications for allowance of compensation by serving notice of this application upon all parties that have requested notice in these cases, and FTI P&M has personally served copies of the Application with exhibits to the Debtors and on the United States Trustee.

22.    WHEREFORE, the Applicant respectfully requests that this Court enter an order:

    a.  approving the allowance of compensation for professional services rendered to the Committee during the period from September 1, 2001 through and including September 30, 2001 in the amount of $104,816.50;

    b.  approving the reimbursement of FTI P&M's out-of-pocket expenses incurred in connection with the rendering of such services during the period from September 1, 2001 through and including September 30, 2001 in the amount of $3,028.40; and

c.   authorizing the Debtor to pay as interim compensation to FTI P&M 80% of the amount of the professional services rendered and 100% of the expenses incurred by FTI P&M during the period from September 1, 2001 through and including September 30, 2001, subject to final payment of the full amount; and

d.   granting such other and further relief as this Court may deem just and proper.

Date: _Oct 26, 2001_

FTI Policano & Manzo

By _____
        Edwin N. Ordway, Jr.
FTI Policano & Manzo
Park 80 West, Plaza I
Saddle Brook, NJ  07663
(201) 843-4900

EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **Chapter 11** |
| **W.R. GRACE & CO., et al.** | ) | **Case No. 01-01139 (JJF)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |

## AFFIDAVIT

STATE OF NEW JERSEY  )
                     ) ss:
COUNTY OF BERGEN     )

EDWIN N. ORDWAY, JR., being duly sworn, deposes and says:

1.       I am a Managing Director of FTI Policano & Manzo, ("FTI P&M"), an operating unit of FTI Consulting, Inc. ("FTI"), and I am duly authorized to make this affidavit on behalf of FTI P&M.  FTI P&M provides financial consulting services for restructuring matters and has its principal office at Park 80 West Plaza I, Saddle Brook, New Jersey.  FTI P&M has provided financial consulting services to and has rendered professional services on behalf of the Official Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co., and sixty-one of its domestic subsidiaries and affiliates which are debtors and debtors-in-possession before this Court.

2.       This affidavit is submitted pursuant to Bankruptcy Rule 2016(a) in support of FTI P&M's sixth monthly application for an interim allowance of compensation and for the reimbursement of expenses for services rendered during the

period from September 1, 2001 through and including September 30, 2001 in the aggregate amount of $86,881.60.

3.    All services for which compensation is requested by FTI P&M were professional services performed for and on behalf of the Committee from September 1, 2001 through and including September 30, 2001 and not on behalf of any other person.

4.    In accordance with Title 18 U.S.C. Section 155, neither I nor any employee of my firm has entered into any agreement, express or implied, with any other party-in-interest for the purpose of fixing the amount of any of the fees or other compensation to be allowed out of or paid from the Debtors' assets.

5.    In accordance with Section 504 of the Bankruptcy Code, no agreement or understanding exists between me, my firm, or any employee thereof, on the one hand, and any other person, on the other hand, for division of such compensation as my firm may receive for services rendered in connection with these cases, nor will any division of fees prohibited by Section 504 of the Bankruptcy Code be made by me or any employee of my firm.

EDWIN N. ORDWAY, JR.

Sworn to before me this
_26th_ day of October, 2001

_Patricia E. Foose_
Notary Public

PATRICIA E. FOOSE
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES AUG. 6, 2006

-2-

Exhibit B

## SUMMARY OF THE SERVICES PERFORMED BY FTI POLICANO & MANZO DURING THE SIXTH INTERIM PERIOD

**Task Code 1 - Preparation for and Participation at Meetings with the Chairman and Other Core Professionals and/or Creditors Committee Meetings or Conference Calls** (5.0 Hours)

We met with the Committee chairman and counsel to discuss our observations and findings regarding the five-year business plan.

**Task Code 2 - Issues Related to Chapter 11 Operating Issues, Such As Critical Vendor Motions, Reclamation Claims, Executory Contracts and Similar Issues** (0.6 Hours)

During the Sixth Interim Period, the confidentiality arrangements relating to FTI P&M's engagement, undertaken at the Debtors' request, were finalized.

**Task Code 3 – Preparation of Monitoring and Operating Results Reports** (40.0 Hours)

During this period, we prepared a number of reports and supporting schedules for the Creditors Committee, notably analyses of creditors' potential recovery levels under multiple hypothetical scenarios, so-called "legacy liabilities" acquired in prior acquisitions and divestitures, and the distribution of creditors' claims among the filing entities.

**Task Code 4 - Analysis of Financial Data, Including Business Plan, Projections, Forecasts, Cash Flow Forecasts and Historical Information** (139.9 Hours)

FTI P&M obtained, analyzed and discussed with Debtor management and professionals historical and current operating results by business segment, and prepared numerous analyses of key performance indicators for each business segment. FTI P&M monitored, analyzed and forecasted the Debtors' cash position and debt capacity. FTI P&M's activities in reviewing the Debtors' five-year business plan and preparing a report ttereon are included in this category.

**Task Code 5- Monthly Statement, Retention and Fee Application Preparation** (15.8 Hours)

This category represents the time expended during the Sixth Interim Period in preparing FTI P&M's Fifth Interim Application for Allowance of Compensation and Reimbursement of Expenses.

**Task Code 6- Grace competitor profile analysis and analysis of other asbestos related Chapter 11 filings** (59.0 Hours)

FTI P&M prepared a financial and valuation profile of direct competitors as a baseline for a valuation of the Debtor. Additionally, we prepared an analysis of asbestos claims trusts that have been formed pursuant to asbestos defendants' plans of reorganization.

**Task Code 7- Analysis and Evaluation of Proposed Corporate Acquisitions by the Debtor and Their Non-Filing Affiliates** (36.8 Hours)

During this period, we commenced preparation of a report and supporting schedules and an evaluation of a proposed corporate acquisition by a non-filing overseas subsidiary.

Exhibit C
Page 1 of 2

W.R. GRACE & CO. ET. AL.
Summary of Fees by Professional
For the period September 1, 2001 through September 30, 2001

| | Total Hours September | Billing Rate | Amount |
|---|---|---|---|
| E. Ordway | 34.4 | $475 | $ 16,340.00 |
| S. Cunningham | 111.6 | $405 | 45,198.00 |
| J. Schwendeman | 2.0 | $325 | 650.00 |
| C. MacCallum | 104.3 | $295 | 30,768.50 |
| C. Whitney | 30.0 | $315 | 9,450.00 |
| B. Griffith | 7.6 | $175 | 1,330.00 |
| M. Hakoun | 7.2 | $150 | 1,080.00 |
| | 297.1 | | $ 104,816.50 |

Exhibit C
Page 2 of 2

## W.R. GRACE & CO. ET. AL.
### Summary of Fees by Professional
For the period September 1, 2001 through September 30, 2001

| TASK CODE | TASK | E. Ordway | S. Cunningham | J. Schwendman | C. MacCallum | C. Whitney | M. Haskun | B. Griffith | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Meetings of Creditors | 2.5 | 2.5 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 5.0 |
| 2 | Chapter 11 Operating Issues | 0.0 | 0.6 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.6 |
| 3 | Operating Results Report Preparation | 2.8 | 2.1 | 0.0 | 34.1 | 0.0 | 0.0 | 1.0 | 40.0 |
| 4 | Business Analyses | 23.5 | 78.9 | 0.0 | 6.5 | 29.6 | 1.4 | 0.0 | 139.9 |
| 5 | Fee Application Preparation | 0.0 | 0.0 | 0.0 | 15.4 | 0.4 | 0.0 | 0.0 | 15.8 |
| 6 | Competitor Profile Analysis | 2.9 | 12.7 | 2.0 | 29.0 | 0.0 | 5.8 | 6.6 | 59.0 |
| 7 | Evaluation of Potential Acquisitions | 2.7 | 14.8 | 0.0 | 19.3 | 0.0 | 0.0 | 0.0 | 36.8 |
| | TOTAL | 34.4 | 111.6 | 2.0 | 104.3 | 30.0 | 7.2 | 7.6 | 297.1 |

Exhibit D

## W.R. GRACE & CO. ET. AL.
### Professional Services Rendered by Edwin N. Ordway, Jr.
### For the period September 1, 2001 through September 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 4-Sep | 4 | Read Debtor's 5-year business plan. | 0.3 |
| 5-Sep | 4 | Read and analyzed business plan and prepared list of questions to discuss at meeting with management. | 3.9 |
| 6-Sep | 4 | Read and analyzed business plan and prepared for meeting with management. | 1.8 |
| | 4 | Met with management to discuss 5-year business plan. | 5.2 |
| 7-Sep | 4 | Conference call with counsel to discuss status of work and meeting with management. | 0.6 |
| | 4 | Reviewed information received and developed list for additional support for the business plan. | 0.3 |
| | 4 | Read additional information received from management regarding business | 0.7 |
| 12-Sep | 3 | Read and analyzed monthly operating report. | 1.1 |
| | 6 | Updated valuation analyses based on new information. | 2.4 |
| | 4 | Continued to read and analyze 5-year business plan and began drafting report to committee. | 1.9 |
| 13-Sep | 7 | Read and analyzed data applicable to proposed acquisition. | 1.1 |
| 14-Sep | 3 | Read and edited draft of report for Committee on 5-year plan. | 1.2 |
| | 7 | Prepared analyses for use in report to the Committee regarding proposed acquisition. | 0.5 |
| 17-Sep | 4 | Prepared valuation analyses based on more current entity information and various sensitivities regarding Debtor's projections. | 1.8 |
| 19-Sep | 4 | Continued preparation of 5-year business plan report. | 0.6 |

| | | | |
|---|---|---|---|
| 21-Sep | 4 | Continued preparation of 5-year business plan report. | 2.6 |
| 24-Sep | 6 | Read data applicable to competitors. | 0.5 |
| | 4 | Continued preparation of 5-year business plan report and developed sensitivity analysis. | 1.8 |
| 25-Sep | 3 | Reviewed claims analysis. | 0.5 |
| | 1 | Met with Committee counsel and Chairman to review our preliminary analysis regarding 5-year business plan and hypothetical valuations. | 2.5 |
| 26-Sep | 4 | Read monthly operating report. | 0.4 |
| 27-Sep | 7 | Prepared analysis of acquisition proposal. | 1.1 |
| | 4 | Continued preparation of report on 5-year business plan. | 1.6 |
| | | **Total Hours - September** | 34.4 |

Exhibit D

## W.R. GRACE & CO. ET. AL.
### Professional Services Rendered by Sean Cunningham
### For the period September 1, 2001 through September 30, 2001

| Date | Task Code | Description | Hours |
|---|---|---|---|
| 4-Sep | 4 | Analyzed and reviewed five-year business plan in preparation for presentation by senior management. | 8.2 |
| 5-Sep | 6 | Compiled competitor enterprise valuation data based on recently released and historical financial data for inclusion in various valuation analyses. | 3.0 |
| | 4 | Analyzed and reviewed five-year business plan in preparation for presentation by senior management. | 4.0 |
| | 2 | Discussed final revisions to confidentiality amendment with Committee Counsel. | 0.6 |
| 6-Sep | 4 | Participated in presentation by Grace senior management regarding five-year business plan to financial advisors for the unsecured and other creditors' committees. | 7.5 |
| 7-Sep | 4 | Prepared open information request list and follow-up questions and analysis regarding five-year business plan. | 2.7 |
| | 4 | Updated counsel as to information received at management presentation. | 0.6 |
| 11-Sep | 4 | Analyzed underlying assumptions included in five year business plan. | 2.2 |
| | 4 | Analyzed FY 2001 latest projection versus DIP Forecast. | 1.2 |
| 12-Sep | 4 | Analyzed underlying economic assuptions for each WR Grace operating business unit. Prepared analyis of historical sales earnings trends for each business unit. | 7.2 |
| 13-Sep | 4 | Prepared analysis of five-year business plan, and prepared follow-up inforation request list for Blackstone. | 7.3 |
| 14-Sep | 4 | Prepared analysis and reviewed assumptions incorporated in five-year business plan. | 7.5 |
| 17-Sep | 4 | Prepared various consolidated information and product line data related to information contained in five-year business plan. | 5.8 |
| 18-Sep | 6 | Prepared and completed comparable valuation "enterprise analysis " reviewing results of 8 industry comparables. | 6.4 |

| | | | |
|---|---|---|---|
| 19-Sep | 4 | Prepared draft report for counsel and committee members outlining findings regarding the five-year business plan. | 7.3 |
| 20-Sep | 4 | Prepared draft report for counsel and committee members outlining findings regarding the five-year business plan. | 7.6 |
| 21-Sep | 4 | Continued with preparation of draft report for counsel and committee members outlining findings regarding the five-year business plan. | 3.5 |
| 24-Sep | 4 | Finalized draft of report to counsel and committee regarding five-year business plan. | 5.8 |
| | 4 | Prepared agenda for meeting with committee chairman and counsel. | 0.5 |
| 25-Sep | 3 | Updated analysis of filed entities and where specific claims are recorded. | 1.6 |
| | 6 | Reviewed analysis of Johns Manville plan of reorganization and similar asbestos trust arrangements. | 3.3 |
| | 1 | Reviewed results of analysis of five-year business plan with committee counsel and chairman. | 2.5 |
| 26-Sep | 7 | Reviewed and analyzed financial data and information received from Grace related to acquisition target Project "CHI." | 6.5 |
| | 3 | Discussed status of open information request and potential agenda for proposed meeting with Company to review "Legacy Reserve" items. | 0.5 |
| 27-Sep | 7 | Prepared draft analysis and report to unsecured committee related to "Project CHI" acquisition. | 6.5 |
| 28-Sep | 7 | Continued with preparation of draft analysis and report to unsecured committee related to "Project CHI" acquisition. | 1.8 |
| | | **Total Hours - September** | 111.6 |

Exhibit D

## W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Jeffrey Schwendeman
For the period September 1, 2001 through September 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 7-Sep | 6 | Prepared analysis of US national economic indicator growth forecasts for comparison to Company financial plan growth assumptions. | 1.1 |
| 10-Sep | 6 | Prepared analysis of US national economic indicator growth forecasts for comparison to Company financial plan growth assumptions. | 0.9 |
| | | **Total Hours - September** | 2.0 |

Exhibit D

## W.R. GRACE & CO. ET. AL.
### Professional Services Rendered by Craig MacCallum
#### For the period September 1, 2001 through September 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 3-Sep | 4 | Analyzed and reviewed five-year business plan. | 3.5 |
| 11-Sep | 3 | Reviewed and analyzed Statement of Financial Affairs court filings and supporting schedules for Debtor and all filing subsidiaries. | 1.5 |
| 13-Sep | 3 | Reviewed and analyzed Statement of Financial Affairs court filings and supporting schedules for Debtor and all filing subsidiaries. | 8.5 |
| 14-Sep | 3 | Reviewed and analyzed Statement of Financial Affairs court filings and supporting schedules for Debtor and all filing subsidiaries. | 9.0 |
| 17-Sep | 3 | Reviewed and analyzed Statement of Financial Affairs court filings and supporting schedules for Debtor and all filing subsidiaries. | 8.0 |
| | 4 | Reviewed draft P&M analysis of five-year business plan and underlying assumptions. | 1.3 |
| 18-Sep | 6 | Prepared hypothetical creditors' recovery analysis for inclusion in report on five-year business plan. | 7.0 |
| | 6 | Prepared analysis of valuation multiples for industry comparables. | 3.0 |
| 19-Sep | 3 | Prepared report on findings regarding Debtors' Statements of Financial Affairs and supporting schedules. | 3.5 |
| | 6 | Prepared slides on comparables, valuation multiples and recovery analysis for inclusion in report on five-year business plan. | 6.5 |
| 20-Sep | 3 | Prepared schedules in support of report on Debtors' Statements of Financial Affairs and supporting schedules. | 2.0 |
| | 6 | Prepared valuation multiples analysis and writeup. | 4.3 |
| | 6 | Prepared hypothetical creditors' recovery writeup for inclusion in report on five-year business plan. | 2.7 |
| 21-Sep | 4 | Prepared schedules for inclusion in report on five-year business plan. | 0.7 |
| | 5 | Began preparation of fee application for the period 8/1-8/31/01. | 7.8 |

| 24-Sep | 3 | Prepared report on findings regarding Debtors' Statements of Financial Affairs and supporting schedules. | 1.6 |
|--------|---|---|---|
| | 6 | Prepared analyis of Johns Manville plan of reorganization and similar asbestos trust arrangements. | 2.2 |
| | 5 | Continued with preparation of fee application for the period 8/1-8/31/01. | 3.5 |
| | 7 | Reviewed Project CHI acquisition document received from Company. | 1.2 |
| | 4 | Reviewed draft P&M analysis of five-year business plan and underlying assumptions. | 1.0 |
| 25-Sep | 7 | Reviewed and prepared analysis of acquisition of Project CHI. | 3.1 |
| | 5 | Continued with preparation of fee application for the period 8/1-8/31/01. | 3.6 |
| | 6 | Continued with preparation of analysis of Johns Manville plan of reorganization and similar asbestos trust arrangements. | 3.3 |
| 26-Sep | 7 | Prepared draft analysis and report regarding Project CHI acquisition. | 9.0 |
| 27-Sep | 7 | Continued with preparation of draft analysis and report regarding Project CHI acquisition. | 3.5 |
| | 5 | Finalized fee application for the period 8/1-8/31/01. | 0.5 |
| 28-Sep | 7 | Continued with preparation of draft analysis and report regarding Project CHI acquisition. | 2.5 |
| | | **Total Hours - September** | 104.3 |

**Exhibit D**

### W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Christy Whitney
For the period September 1, 2001 through September 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 6-Sep | 4 | Analyzed and reviewed five-year business plan in preparation for presentation by senior management | 0.5 |
| | 4 | Participated in presentation by Grace senior management group to financial advisors for the unsecured and other creditors' committees. | 5.5 |
| 12-Sep | 4 | Discussed issues to be addressed in report on five-year business plan with S. Cunningham | 0.2 |
| 14-Sep | 4 | Prepared draft of P&M analysis of five-year business plan and underlying assumptions. | 1.8 |
| 18-Sep | 4 | Prepared income statement and cash flow comparison for 2002 through 2005. | 4.5 |
| 19-Sep | 4 | Prepared debt capacity analysis. | 3.6 |
| | 4 | Prepared Revenue and EBITDA sensitivity analysis for 2002 through 2005. | 2.4 |
| 20-Sep | 4 | Drafted divisional risks and opportunities section of the report on the five-year business plan. | 5.5 |
| | 4 | Edited the report on the five-year business plan, incorporating new sections and changes prepared colleagues. | 2.5 |
| 21-Sep | 5 | Prepared supporting schedule for fee application. | 0.4 |
| | 4 | Incorporated comments from E. Ordway into the report on the five-year business plan. | 1.6 |
| 25-Sep | 4 | Finalized five-year business plan report for distribution to the Committee. | 1.5 |
| | | **Total Hours - September** | **30.0** |

## W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Matthew Hakoun
For the period September 1, 2001 through September 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 4-Sep | 4 | Continued work on compiling and organizing Debtors' filed Statements of Financial Affairs and suporrting schedules. | 1.4 |
| 5-Sep | 6 | Updated industry economic data and reviewed recent news articles. | 0.6 |
| 5-Sep | 6 | Searched recent bankruptcy filings of competitor companies for severance and retention documents. | 1.0 |
| 12-Sep | 6 | Researched and identified cement additives that are used as catalysts in the construction industry and identified companies that utilize them. | 2.0 |
| 13-Sep | 6 | Collected current analyst and industry information from parties in interest related to cement and or catalyst additives. | 2.2 |
| | | **Total Hours - September** | 7.2 |

Exhibit D

## W.R. GRACE & CO. ET. AL.
### Professional Services Rendered by Brian Griffith
#### For the period September 1, 2001 through September 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 7-Sep | 6 | Compiled industry and macro-economic forecast information for Debtor's product lines. | 3.5 |
| 10-Sep | 6 | Continued to research economic forecast information regarding petroleum refining and silicate mining industries. | 2.1 |
| 12-Sep | 6 | Completed report on forecast economic conditions affecting Debtor and reviewed with colleagues. | 1.0 |
| 14-Sep | 3 | Researched open item in compilation of Debtors' Statements of Financial Affairs. | 1.0 |
| | | **Total Hours - September** | 7.6 |

W.R. GRACE & CO. ET. AL.

Summary of Expenses by Type of Expense

For the period September 1, 2001 through September 30, 2001

| | | |
|---|---|---:|
| Copies: | | |
| Internal | $ | 425.80 |
| External | | - |
| Telecommunications: | | |
| Toll Charges | | - |
| Facsimile Charges | | 12.50 |
| Postage, Federal Express | | 29.85 |
| Travel Expenses: | | |
| Transportation, lodging, tolls and parking | | 459.11 |
| Meals | | 31.14 |
| Outside Services | | - |
| Word Processing Services | | 870.00 |
| Document Preparation and Handling Services | | 1,200.00 |
| Total Expenses | $ | 3,028.40 |

W.R. GRACE & CO. ET. AL.
Detail of Expenses by Type of Expense
For the period September 1, 2001 through September 30, 2001

| Copies, Internal | Total for Month | 2,129 | pages @ $0.20/page: | | $ | 425.80 | (a) |
|---|---|---|---|---|---|---|---|
| Facsimile Charges: | | 10 | pages @ $1.25/page: | | | 12.50 | |
| Postage, Federal Express: | | 26-Sep | Airborne | | | 29.85 | |

Transportation, lodging, tolls and parking:

| C. Whitney | 28-Sep | Auto Rental | | 411.91 | |
|---|---|---|---|---|---|
| S. Cunningham | 25-Sep | Parking, mileage, tolls | | 47.20 | |
| | | | Subtotal | | 459.11 |

| Meals: | S. Cunningham | 25-Sep | Lunch | | 31.14 |
|---|---|---|---|---|---|

Word Processing Services:

| | Hours | Rate | | |
|---|---|---|---|---|
| 7-Sep | 1.10 | $75.00 | 82.50 | |
| 14-Sep | 8.10 | $75.00 | 607.50 | |
| 28-Sep | 2.40 | $75.00 | 180.00 | |
| | Subtotal | | | 870.00 |

Document Preparation and Handling Services:

| | Hours | Rate | | |
|---|---|---|---|---|
| 7-Sep | 2.00 | $75.00 | 150.00 | |
| 14-Sep | 9.50 | $75.00 | 712.50 | |
| 21-Sep | 1.00 | $75.00 | 75.00 | |
| 28-Sep | 3.50 | $75.00 | 262.50 | |
| | Subtotal | | | 1,200.00 |

| Total Expenses | | | | $ 3,028.40 |
|---|---|---|---|---|

(a)  Reproduction includes copying of Company's 150-page business plan for distribution to the
Committee and the reproduction of several P&M-prepared reports.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

```
---------------------------x
```
In re:                                    Chapter 11

W.R. GRACE & Co., et al.,                 Case No.  01-01139(JJF)
                                          (Jointly Administered)


                        Debtors

```
---------------------------x
```


ORDER ALLOWING FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD SEPTEMBER 1, 2001 THROUGH SEPTEMBER 30, 2001)

Upon the Application, dated September 28, 2001 (the "Application"), of FTI

P&M, as Financial Advisors to the Official Committee of Unsecured Creditors (the

"Committee") for Allowance of Interim Compensation in the amount of $83,853.20 for

Actual and Necessary Services Rendered and for Reimbursement of Actual and

Necessary Expenses Incurred in the amount of  $3,028.40 for the Period from September

1, 2001 through September 30, 2001 (the "Application Period"); the Court having

reviewed the Application; and finding that the Court has jurisdiction over this matter

pursuant to 28 U.S.C. Sections 157 and 1334; and after notice and opportunity for a

hearing to consider the Application; and upon the record and after due deliberation

thereon; and due and proper notice of the Application having been given; and sufficient

cause appearing therefore;

-1-

IT IS HEREBY ORDERED:

1.      The Application is GRANTED.

2.      FTI P&M is allowed interim compensation in the amount of $83,853.20 for actual, reasonable and necessary professional services rendered on behalf of the Committee during the Application Period, and reimbursement of $3,028.40 for actual, reasonable and necessary expenses incurred during the Application Period.

3.      The Debtors shall pay to FTI P&M the amount of $86,881.60, which is equal to the sum of FTI P&M's allowed interim compensation and expense reimbursement out of the assets of their estates.


Dated:  Wilmington, Delaware

        _____, 2001


                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE