# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                         Chapter 11

**W.R. Grace & Co., et al.**                   Case No. 01-01139 (JJF)

         Debtors.                 Jointly Administered

## SEVENTH APPLICATION OF STROOCK & STROOCK & LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM OCTOBER 1, 2001 THROUGH OCTOBER 31, 2001

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **October 1, 2001 – October 31, 2001** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$101,069.00** |
| Amount of Expense Reimbursement sought as actual reasonable and necessary: | **$3,562.09** |

This is an: ☒ interim ☐ final application

The total time expended for fee application preparation is approximately 20.6 hours and the corresponding compensation requested is approximately $4,875.00.[1]

This is the seventh application filed

---

[1] This is Stroock's Seventh Fee Application. Time expended for the preparation of this Fee Application will be reflected in the next Fee Application.

**Local Form 102 (Fee Application/Attachment A, pg. 1)**

## Attachment A

### Monthly Interim Fee Applications

| | | Requested | | Approved for Payment | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| May 30, 2001 | 4/12/01-4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111.943.00 | $6,884.73 |
| July 30, 2001 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| August 31, 2001 | 7/1/01-7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |

### Quarterly Fee Applications

| | | Requested | | Approved | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| July 30, 2001 | 4/12/01-6/30/01 | $369,873.75 | $19,318.00 | As of the date of this Application the hearing to approve compensation has not been determined | |
| Nov. 1, 2001 | 7/01/01 – 09/30/01 | $204,923.50 | $15,105.57 | As of the date of this Application the hearing to approve compensation has not been determined | |

.

**Local Form 102 (Fee Application/Attachment A, pg. 1)**

| W R GRACE & COMPANY | | | | |
|---|---|---|---|---|
| ATTACHMENT B | | | | |
| THROUGH OCTOBER 31, 2001 | | | | |
| Summary of Hours | Hours | Rate | Amount | # of Yrs. |
| PARTNERS | | | | in Position |
| Greenberg, Mayer | 22.7 | 500 | 11,350.00 | 2 |
| Kruger, Lewis | 3.3 | 650 | 2,145.00 | 36 |
| Levy, Mark | 12.2 | 615 | 7,503.00 | 27 |
| Pasquale, Kenneth | 16.2 | 475 | 7,695.00 | 2 |
| Raskin, Robert | 12.8 | 550 | 7,040.00 | 8 |
| Speiser, Mark | 0.3 | 575 | 172.50 | 14 |
| | | | | |
| ASSOCIATES | | | | |
| Berg, Madelaine | 2.9 | 415 | 1,203.50 | 21 |
| Brandes, Ronnie H. | 16.2 | 185 | 2,997.00 | 1 |
| Eichler, Mark | 7.0 | 350 | 2,450.00 | 3 |
| Krieger, Arlene | 105.2 | 425 | 44,710.00 | 17 |
| Sasson, Moshe | 19.3 | 360 | 6,948.00 | 7 |
| | | | | |
| PARAPROFESSIONALS | | | | |
| Defreitas, Vaughn | 24.2 | 100 | 2,420.00 | 10 |
| Gomelskaya, Irina | 10.5 | 150 | 1,575.00 | 1 |
| Mohamed, David | 0.7 | 100 | 70.00 | 6 |
| Serrette, Rosemarie | 18.6 | 150 | 2,790.00 | 13 |
| | | | | |
| Total | 272.1 | | $ 101,069.00 | |
| | | | | |
| Blended Rate | | 371.4 | | |

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) |  |
|  | ) | **Chapter 11** |
| **W. R. GRACE & CO., et al.**[1] | ) | **Case No. 01-01139 (JJF)** |
|  | ) |  |
| **Debtors.** | ) | **Jointly Administered** |

### SEVENTH FEE APPLICATION BY STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., ET AL., FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM OCTOBER 1, 2001 THROUGH OCTOBER 31, 2001

Strook & Stroock & Lavan LLP ("Strook" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

accordance with the Administrative Fee Order (defined below) for a seventh interim allowance

of compensation for services rendered and for reimbursement of expenses incurred in connection

therewith, respectfully represents as follows:

## I.    INTRODUCTION

1.    By this application, Stroock seeks (i) an interim allowance of compensation for

the professional services rendered by Stroock as counsel for the Committee for the period from

October 1, 2001 through October 31, 2001 (the "Seventh Monthly Period") in the aggregate

amount of $101,069.00, representing 218.1 hours of professional services and 54.0 hours of

paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by

Stroock during the Seventh Monthly Period in connection with the rendition of such professional

services and paraprofessional services in the aggregate amount of $3,562.09.

2.    Venue of this proceeding and this application is proper in this district pursuant to

28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C.

§§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

## II.    BACKGROUND

3.    On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary

petitions for reorganization under chapter 11 of the Bankruptcy Code and have continued in the

management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the

Bankruptcy Code.  Pursuant to an order of the Court, the Debtors' Chapter 11 cases have been

procedurally consolidated and are being jointly administered.

4.    The Debtors operate a world-wide specialty chemicals and materials business and

employ approximately 3860 full and part-time employees.  On a consolidated basis, for the fiscal

2

year 2000, Grace reported a net loss of $89.7 million[2] from $1.59 billion in net revenues. The Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor subsidiaries and affiliates.

5.     On April 12, 2001, the United States Trustee formed the Committee. During the first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter 11 cases. The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP ("DM&H") as its local Delaware counsel.

6.     The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims and asbestos-related property damage claims against the Debtors (collectively, the "Asbestos Claim Committees"). On June 18, 2001, the United States Trustee appointed an official committee to represent the interests of equity security holders of the Debtors.

7.     By application dated May 1, 2001, Stroock sought Court approval for its retention as counsel to the Committee nunc pro tunc to April 12, 2001. The Court signed an order approving Stroock's retention as counsel to the Committee on May 30, 2001.

8.     This is the seventh application Stroock has filed with the Court for an allowance of compensation and reimbursement of expenses for services rendered to the Committee. This application is submitted pursuant to the terms of the Administrative Order Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for

---

[2]     The Debtors' pleadings further report that this net loss results in part from a $294.0 million asbestos-related charge to earning recorded in the forth quarter of 2000.

3

Professionals and Official Committee Members, approved by the Court on May 3, 2001 (the "Administrative Fee Order").

9.    In accordance with the procedures established by the Administrative Fee Order, Stroock has received payment from the Debtors in the aggregate amount of $440,376.45 representing 80% of the fees and 100% of the expenses sought in each of the first five monthly applications covering the period from April 12, 2001 through August 31, 2001. Other than those payments, applicant has received no payment and no promises for payment from any source for services rendered in connection with these cases. There is no agreement or understanding between the Applicant and any other person (other than members of Stroock) for the sharing of compensation to be received for the services rendered in these cases.

10.    As stated in the Affidavit of Lewis Kruger, Esq. annexed hereto as Exhibit "A," all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

### III.    SUMMARY OF SERVICES RENDERED

11.    Since being retained by the Committee, Stroock has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the unsecured creditors of the Debtors' estates. The variety and complexity of these cases and the need to act or respond on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by personnel from several legal disciplines, on an as-needed basis, including in certain instances, working into the evening and on weekends.

12.    Stroock maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the Committee. Such time records were made contemporaneously with the rendition of services by the person rendering

4

such services and in the ordinary course of Stroock's practice, and are presented in compliance with Delaware Local Rule 2016-2(d) amended effective as of February 1, 2001. A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Seventh Monthly Period is annexed hereto as Exhibit "B". In addition, Exhibit "C" hereto contains a summary of the hours expended by each of the attorneys and paraprofessionals during the Seventh Monthly Period, their normal hourly rates, and the value of their services.

13.    Stroock also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are also available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit "D". Also included within Exhibit "D" is an itemization of each expense incurred within each category.

14.    Stroock respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

15.    The following summary of the services rendered during the Seventh Monthly Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit "B". Rather, it is merely an attempt to highlight certain of these areas in which services were rendered to the Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

5

### (i)    Case Administration/General – Category 0002

16.    During the Seventh Monthly Period, Stroock continued to closely monitor the items on the Court's docket for these cases to ensure that the Committee was fully informed about all pending matters and that Stroock would be ready to timely respond on behalf of the Committee, as might be applicable, continued to engage Debtors' counsel on an on-going basis with respect to pending matters and information requests, prepared revised critical date calendars and responded to creditor inquiries.

17.    Stroock has expended 49.4 hours on this category for a fee of $10,970.00.

### (ii)    Fee Application/Monthly Billing Reports -- Category 0003

18.    During the Seventh Monthly Period, Stroock prepared its Sixth Fee Application including a narrative section summarizing the services rendered during that period by Stroock and complied and attached expense schedules, and prepared its second quarterly interim application which was filed with the Court.

19.    Stroock has expended 20.6 hours on this category for a fee of $4,875.00.

### (iii)    Review of Other Professionals Fee Applications – Category 0004

20.    During the Seventh Monthly Period, Stroock reviewed recently filed fee applications including those involving the Reed Smith and Kramer Levin law firms, and those involving financial advisors The Blackstone Group and Conaway DelGenio & Gries, and the objection filed by the United States Trustee to the Bilzin Sumberg applications. Stroock has expended 7.3 hours on this category for a fee of $2,552.50.

### (iv)    Asbestos Litigation – Category 0005

21.    The Debtors state that their Chapter 11 filings were precipitated by a substantial and unexpected increase in the number of asbestos cases filed against the Debtors, as well as the

6

recent commencement of cases asserting new theories of asbestos-related liability against them. Given the fundamental importance of the asbestos claims-related matters to these cases, Stroock attorneys continued, during the Seventh Monthly Period, to thoroughly review the various pleadings filed in these Chapter 11 cases, including those which may impact on the conduct of related asbestos actions against non-debtor third parties, and those which may impact upon the process for, and determination of, the amount and validity of asbestos-related claims against the Debtors' estates.

22.     As reported in prior monthly fee applications, Stroock reviewed the extensive motion, memorandum of law and related exhibits previously filed by the Debtors seeking entry of (i) a case management order providing for the establishment of a proposed schedule and process to determine the validity of asbestos claims against the Debtors' estates, and (ii) an order providing for the establishment of a bar date and approving special proof of claim and notice procedures to be utilized in these cases, and Stroock prepared and filed a response on behalf of the Committee to the Debtors' case management/bar date pleadings, reviewed those responses already filed by each of the Asbestos Claim Committees and continued to engage the Debtors in discussions over modifying the original form of the bar date documentation to address the Committee's concerns.

23.     During the Seventh Monthly Period, Stroock continued to review the Asbestos Claim Committee's extensive response in opposition to the Debtors' case management/bar date pleadings, reviewed the equity committee's response in support of the Debtors' pleadings and discussed other related issues.  Stroock has expended 8.1 hours on this category for a fee of $3,992.50.

### (v)     Retention of Professionals - Category 0006

7

24.     During the Seventh Monthly Period, two retention applications were filed which raised issues requiring consideration and response by the Committee. The Asbestos Claim Committees filed a joint motion seeking to retain two law firms as special counsel in connection with their proposed prosecution of certain fraudulent transfer claims on behalf of the estates. The second application filed by the Asbestos PI Committee itself sought to retain Professor Elizabeth Warren as special bankruptcy consultant to Caplin & Drysdale, the firm retained at the outset by the PI Committee to represent it. The PI Committee's application followed the disclosure by Caplin & Drysdale that Ms. Warren had become a consultant to their firm.

25.     Stroock reviewed the applications and, in the case of the proposed retention of Ms. Warren, the supplemental affidavit filed by Elihu Inselbuch and the Debtors' response to the Inselbuch Affidavit, prepared memoranda thereon for the Committee, reviewed the legal and factual issues raised thereby and, prior to the close of the Seventh Monthly Period prepared and filed an objection on behalf of the Committee to the Asbestos Claim Committees' special counsel retention motion.

26.     Stroock has expended 37.3 hours on this category for a fee of $15,023.00

### (vi)    Creditors Committee Meetings/Conferences - Category 0007

27.     During the Seventh Monthly Period, Stroock communicated with the members of the full Committee through numerous memoranda and telephone conversations. In order to keep the Committee fully informed of all of the pending matters in these cases, and thus enable the Committee to take informed positions on issues, Stroock thoroughly reviewed and summarized each of the motions filed by the Debtors and other parties in interest in these cases, raised issues the Committee should be aware of, and made recommendations to the Committee concerning appropriate actions to be taken with regard to the motions, communicated with members of the

8

Committee regarding the positions to be taken, engaged counsel for the Debtors, and other parties and movants, as applicable, with the Committee's questions and concerns, and negotiated whenever and to the extent possible consensual resolutions of outstanding issues and acceptable forms of proposed orders.

28.    Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues which have already arisen in these cases and to monitor closely the Debtors' management of these estates.

29.    In addition during the Seventh Monthly Period, Stroock and the Committee interviewed and then selected an expert to assist the Committee with respect to various asbestos-related issues in these cases.  Stroock has expended 37.3 hours on this category for a fee of $16,057.50.

**(vii)    Financial Reports & Analysis – Category 0009**

30.    During the Seventh Monthly Period, Stroock reviewed analyses prepared by FTIP&M of the Debtors' five year business plan and of Grace's proposed acquisition of an overseas company, and reviewed the Debtors' August 2001 financial report and discussed the same with FTIP&M.  Stroock expended 7.1 hours on this category for a fee of $3,017.50.

**(viii)    Analysis of Pre-Petition Transactions – Category 0013**

9

31.     During the Seventh Monthly Period, Stroock reviewed publicly available historical financial and business information for the Debtors. Stroock has expended 28.1 hours on this category for a fee of $11,845.00.

### (ix)   Tax Issues – Category 0018

32.     At the outset of the Seventh Monthly Period, representatives of Stroock and FTIP&M met and prepared a comprehensive tax information request, which was thereafter forwarded to the Debtors. During the Period, Stroock reviewed the tax-related information received from the Debtors, and engaged the Debtors and FTIP&M further with respect to the requested information. In addition, during the Seventh Monthly Period, Stroock reviewed legislation pending in the United States Congress which would, if enacted, amend certain provisions of the Internal Revenue Code ("IRC") to provide some tax relief to companies with asbestos-related claims, reviewed the IRC provisions related to the pending legislation and prepared a memorandum discussing the substance and status of the legislation.

33.     Also, during the latter part of the Seventh Monthly Period, the Debtors filed a motion seeking authority to enter into a consent decree with the Environmental Protection Agency, which would settle pending litigation involving property in Libby, Montana (the "Libby Access Action") and obligate the Debtors to currently make a $2.75 million cash payment (the "SEP payment").

34.     Amongst the reasons given by the Debtors in support of the settlement was that the SEP payment would be tax deductible. In connection with analyzing the proposed settlement for the Committee, Stroock began to review IRC provisions and case law relevant to the deductibility of the proposed payment. Stroock has expended 65.8 hours on this category for a fee of $27,935.00.

10

(x)    **Environmental Issues – Category 0024**

35.    During the Seventh Monthly Period, Stroock reviewed the Debtors' motion

seeking authorization to settle the Libby Access Action, prepared a memorandum discussing the

motion, engaged Debtors' counsel to obtain additional information to evaluate the settlement and

began to assess the relevant legal issues. Stroock has expended 11.1 hours on this category for a

fee of $4,801.00.

## IV.    FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

36.    The factors to be considered in awarding attorneys fees have been enumerated in

In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547

F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts. Stroock

respectfully submits that a consideration of these factors should result in this Court's allowance

of the full compensation sought.

> (A)    The Time and Labor Required.  The professional services rendered by
> Stroock on behalf of the Committee have required the expenditure of substantial
> time and effort, as well as a high degree of professional competence and
> expertise, in order to deal with the complex issues encountered by the Committee
> with skill and dispatch.  Occasionally, Stroock has been required to perform these
> services under significant time constraints requiring work late into the evening
> and on weekends.  The services rendered by Stroock were performed efficiently,
> effectively and economically.

> (B)    The Novelty and Difficulty of Questions.  Novel and complex issues have
> already arisen in the course of these Chapter 11 cases, and it can be anticipated
> that other such issues will be encountered.  In this case, as in many others in

11

which the firm is involved, Stroock's effective advocacy and creative approach have helped clarify and resolve such issues and will continue to prove beneficial.

(C)     The Skill Requisite to Perform the Legal Services Properly.  Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the resolution of issues, are and will continue to contribute to the maximization of the distributions to the Debtors' unsecured creditors.

(D)     The Preclusion of Other Employment by Applicant Due to Acceptance of the Case.  Due to the size of Stroock's insolvency department, Stroock's representation of the Committee has not precluded its acceptance of new clients. However, the volume of the matters needing attention on a continuing basis has required several of the attorneys to commit significant portions of their time to these cases.

(E)     The Customary Fee.  The fee sought herein is based upon Stroock's normal hourly rates for services of this kind.  Stroock respectfully submits that the fee sought herein is not unusual given the magnitude and complexity of these cases and the time expended in attending to the representation of the Committee, and is commensurate with fees Stroock has been awarded in other cases, as well as with fees charged by other attorneys of comparable experience.

(F)     Whether the Fee is Fixed or Contingent.  Pursuant to §§ 330 and 331 of the Bankruptcy Code, all fees sought by professionals employed under § 1103 of

12

the Code are contingent pending final approval by this Court, and are subject to adjustment dependent upon the services rendered and the results obtained.

(G)     Time Limitations Imposed by Client or Other Circumstances.  As already indicated, Stroock has been required to attend to the various issues arising in these cases.  Occasionally, Stroock has had to perform those services under significant time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

(H)     The Amount Involved and Results Obtained.  Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

(I)     The Experience, Reputation and Ability of the Attorneys.  Stroock has one of the largest and most sophisticated insolvency practices in the nation and has played a major role in numerous cases of national import including: Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation, Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The Charter Company, Federated Department Stores, G. Heileman Brewing Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc., Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation, Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc., Planet Hollywood International and Anchor Glass Container Corporation.  Stroock's experience enables it to perform the services described herein competently and expeditiously.  In addition to its expertise in the

13

area of corporate reorganization, Stroock has already frequently called upon the expertise of its partners and associates in the litigation and ERISA areas to perform the wide ranging scope of the legal work necessitated by these cases, and is now utilizing the expertise of its partners and associates in the tax and environmental law areas.

(J)     The "Undesirability" of the Case.  These cases are not undesirable, but as already indicated, have required a significant commitment of time from several of the attorneys assigned hereto.

(K)     Nature and Length of Professional Relationship.  As described above, Stroock has been actively rendering services on behalf of the Committee as necessary and appropriate from April 12, 2001 through to the present.

### V.    ALLOWANCE OF COMPENSATION

37.    The professional services rendered by Stroock required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort.  It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole and the Debtors' estates.

38.    With respect to the level of compensation, § 330 of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person (including attorneys for a creditors' committee): "Reasonable compensation for actual necessary services rendered by [such] . . . professional person. 11 U.S.C. § 330. Section 330 further states that the court should take into consideration, inter alia, the nature, extent, and value of services

14

performed, as well as the cost of comparable services other than in a case under this title. Id.
The clear Congressional intent and policy expressed in this statute is to provide for adequate
compensation in order to continue to attract qualified and competent bankruptcy practitioners to
bankruptcy cases.

39.     The total time spent by Stroock attorneys and paraprofessionals during the
Seventh Monthly Period was 272.1 hours. Such services have a fair market value of
$101,069.00. The work involved, and thus the time expended, was carefully assigned in light of
the experience and expertise required for a particular task.

40.     As shown by this Application and supporting documents, Applicant spent its time
economically and without unnecessary duplication of time. Attached hereto as Exhibit "C" are
summaries of the hours expended by the attorneys and paraprofessionals during the Seventh
Monthly Period, their normal hourly rates, and the value of their services.

41.     In addition, Stroock incurred actual out-of-pocket expenses in connection with the
rendition of the professional services to the Committee in the sum of $3,562.09 for which
Stroock respectfully requests reimbursement in full.

42.     The disbursements and expenses have been incurred in accordance with Stroock's
normal practice of charging clients for expenses clearly related to and required by particular
matters. Such expenses were often incurred to enable Stroock to devote time beyond normal
office hours to matters, which imposed extraordinary time demands. Stroock has endeavored to
minimize these expenses to the fullest extent possible.

43.     Stroock's billing rates do not include charges for photocopying, telephone and
telecopier toll charges, computerized research, travel expenses, "working meals", secretarial
overtime, postage and certain other office services, because the needs of each client for such

15

services differ. Stroock believes that it is fairest to charge each client only for the services actually used in performing services for it. Stroock has endeavored to minimize these expenses to the fullest extent possible.

44.     Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions. Stroock does not charge for incoming facsimiles.

45.     No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

46.     Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

47.     No prior application has been made in this or in any other Court for the relief requested herein for the Seventh Monthly Period.

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order:

(a)     the allowance of compensation for professional services rendered to the Committee during the period from October 1, 2001 through and including October 31, 2001 in the amount of $101,069.00;

(b)     the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from October 1, 2001 through and including October 31, 2001 in the amount of $3,562.09; and

16

(c)     authorizing and directing the Debtors to pay as interim compensation to Stroock

80% of the amount of the professional services rendered and 100% of the

expenses incurred by Stroock during the period from October 1, 2001 through and

including October 31, 2001, subject to final payment of the full amount; and

(d)     granting such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
        November 20, 2001

                                STROOCK & STROOCK & LAVAN LLP

                                _Lewis Kruger_

                                Lewis Kruger (LK4512)
                                A Member of the Firm
                                180 Maiden Lane
                                New York, New York 10038-4982
                                (212) 806-5400

                                Co-Counsel for the Official Committee of
                                Unsecured Creditors of W. R. Grace & Co., et al.

17