## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | **Chapter 11** |
| | : | |
| **W.R. GRACE & CO., et al.,** | : | **Case No. 01-01139 (JJF)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |
| | : | |
| | : | |

FIFTH APPLICATION OF THE BLACKSTONE GROUP
L.P. AS FINANCIAL ADVISOR TO THE DEBTORS AND
DEBTORS IN POSSESSION FOR ALLOWANCE OF
COMPENSATION FOR ACTUAL AND NECESSARY SERVICES
RENDERED AND FOR REIMBURSEMENT OF ALL
ACTUAL AND NECESSARY EXPENSES INCURRED
(FOR THE PERIOD OCTOBER 1, 2001 THROUGH OCTOBER 31, 2001)

### SUMMARY SHEET

Name of Applicant:                    THE BLACKSTONE GROUP L.P.

Authorized to Provide
Professional Services to:            Debtors

Date of Retention Order:           June 22, 2001, effective April 2, 2001

Period for which
Compensation and
reimbursement is sought:          October 1, 2001 – October 31, 2001

| Amount of compensation sought as actual, reasonable and necessary: | Total | Less Holdback (@20%) |
|---|---|---|
| | $175,000.00 | $35,000.00 |

Amount of reimbursement of
expenses sought as actual,
reasonable and necessary:         $5,042.39

This is a  _x_  monthly  __ interim     ____ final application

Summary Table:

| Fee Application, Filing Date | Total Fees Requested | Amount of Holdback (20%) | Net Fees Requested | Total Expenses Requested | Objection Received/Deadline |
|---|---|---|---|---|---|
| First 4/2/2001 - 4/30/2001, 7/30/2001 | $169,166.67 | $33,833.33 | $135,333.33 | $0 | None |
| First 5/1/2001 - 5/31/2001, 7/30/2001 | $175,000.00 | $35,000.00 | $140,000.00 | $984.00 | None |
| First 6/1/2001 – 6/30/2001, 7/30/2001 | $175,000.00 | $35,000.00 | $140,000.00 | $6,679.95 | None |
| Second 7/1/2001 – 7/31/2001, 8/27/2001 | $175,000.00 | $35,000.00 | $140,000.00 | $3,504.53 | None |
| Third 8/1/2001 – 08/31/2001, 10/15/2001 | $175,000.00 | $35,000.00 | $140,000.00 | $16,124.84 | None |
| Fourth 9/1/2001 – 09/30/2001 | $175,000.00 | $35,000.00 | $140,000.00 | $11,846.09 | None |
| Fifth 10/1/2001 – 10/31/2001, | $175,000.00 | $35,000.00 | $140,000.00 | $5,042.39 | |
| **TOTAL** | $1,219,166.67 | $243,833.33 | $975,333.33 | $44,181.80 | |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | **Chapter 11** |
| | : | |
| **W.R. GRACE & CO., et al.,** | : | **Case No. 01-01139 (JJF)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |
| | : | |
| | : | |

FIFTH APPLICATION OF THE BLACKSTONE GROUP
L.P. AS FINANCIAL ADVISOR TO THE DEBTORS AND
DEBTORS IN POSSESSION FOR ALLOWANCE OF
COMPENSATION FOR ACTUAL AND NECESSARY SERVICES
RENDERED AND FOR REIMBURSEMENT OF ALL
ACTUAL AND NECESSARY EXPENSES INCURRED
(FOR THE PERIOD OCTOBER 1, 2001 THROUGH OCTOBER 31, 2001)

## I. Background

The Blackstone Group L.P. ("Blackstone") respectfully represents as follows:

1.      Blackstone is financial advisor to the above-captioned debtors and debtors in possession (collectively, the "Debtors").

2.      On April 2, 2001 (the "Petition Date"), the Debtors filed a voluntary petition for reorganization under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On April 2, 2001, the Debtors applied to the Court for an order authorizing them to retain Blackstone pursuant to an engagement agreement dated February 15, 2001 (the "Engagement Agreement") as their financial advisor, effective as of the Petition Date.

4.      On June 22, 2001, the Court entered an order (the "Retention Order") authorizing the Debtors to employ Blackstone as their financial advisor effective as of the Petition Date pursuant to the terms of the Engagement Agreement.

5.      Pursuant to the Order Under 11 U.S.C. §§ 105 (a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members ("Procedures"), Blackstone submits this fifth application (the "Fifth Application") for the monthly period October 1, 2001 through October 31, 2001 (the "Fifth Application Period").

6.      Blackstone submits this Fifth Application (i) for allowance of reasonable compensation for actual and necessary professional services by it as financial advisor to the Debtors in these cases for the Fifth Application Period, and (ii) for reimbursement of actual and necessary expenses incurred in representing the Debtors during that same period. This Fifth Application is made pursuant to the provisions of sections 330 and 331 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure, the Retention Order and Delaware Bankruptcy Local Rule 2016-2.

7.      Professional services and expenses for which compensation and reimbursement are sought were rendered and expended on behalf of the Debtors pursuant to chapter 11 of the Bankruptcy Code. Blackstone believes it is appropriate that it be compensated for the time spent and be reimbursed for the expenses incurred in connection with these matters.

8.      For the Fifth Application Period, Blackstone has provided professional services to the Debtors and incurred fees for such services totaling $175,000.00. This represents Blackstone's monthly fee of $175,000.00 for the period October 1, 2001 through October 31,

2001. For the Fifth Application Period, Blackstone has incurred actual and necessary expenses in connection therewith totaling $5,042.39. With respect to these specific amounts, Blackstone has received no payments as of the date of the Fifth Application.

9.    As was set out in the Application of the Debtors for Entry of an Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a), 2016 and 5002 Authorizing the Employment and Retention of the Blackstone Group L.P. as Financial Advisor to the Debtors and Debtors in Possession (the "Retention Application"), Blackstone provided advisory services to the Debtors prior to the Petition Date. Specifically, Blackstone served as financial advisor to the Debtors since February 2001.

## II.  The Blackstone Engagement

10.    On April 2, 2001, the Debtors applied to the Court for an order authorizing them to retain Blackstone pursuant to the Engagement Agreement as their financial advisor effective as of April 2, 2001, the petition date (the "Effective Date"). Specifically, Blackstone was retained as Financial Advisor to provide the following professional services:

> (a) Assist in the evaluation of the Debtors' businesses and prospects;
>
> (b) Assist in the development of the Debtors' long-term business plan;
>
> (c) Analyze the Debtors' financial liquidity and financing requirements;
>
> (d) Assist in the estimation of asbestos claims including the preparation of an estimation model for payments and costs and the analyses of payment and funding scenarios;
>
> (e) Evaluate the Debtors' debt capacity and alternative capital structures;
>
> (f) Develop valuation, debt capacity and recovery analyses in connection with developing and negotiating a potential Restructuring;

(g) Analyze various restructuring scenarios and the potential impact of these scenarios on the value of the Debtor and the recoveries of stakeholders impacted by the Restructuring;

(h) Develop a negotiating strategy and assist in negotiations with the Debtors' creditors and other interested parties with respect to a potential Restructuring;

(i) Value securities offered by the Debtor in connection with a Restructuring;

(j) Make presentations to the Debtors' Board of Directors, creditor groups or other interested parties, as appropriate;

(k) Provide expert witness testimony, as requested; and,

(l) Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring, as requested and mutually agreed.

11.    Pursuant to the Engagement Agreement, the Debtors agreed to pay Blackstone the following fees in consideration for services to be rendered:

(a) A monthly advisory fee (the "Monthly Fee") in the amount of $175,000, with the first payment of such Monthly Fee payable upon the effective date and additional installments of such Monthly Fee payable in advance on monthly anniversaries of the effective date; and

(b) A $5,000,000 Restructuring Fee paid upon consummation of a Restructuring (as defined in the Engagement Agreement).

Furthermore, pursuant to the Engagement Agreement, the Debtors agreed to reimburse Blackstone for the reasonable and documented out-of-pocket expenses incurred by Blackstone in rendering the services to be provided under the Engagement Agreement.

12.    For financial advisory services provided to the Debtors during the Fifth Application Period, Blackstone respectfully requests (a) approval of $180,042.39 consisting of (i) monthly fees in the amount of $175,000.00 and (ii) reimbursement of out-of-pocket expenses in the amount of $5,042.39; and (b) authorization for the Debtors to pay Blackstone's approved fees and expenses in the amount of $145,042.39 consisting of (i) monthly fees in the net amount

of $140,000.00, representing total monthly fees of $175,000.00, less a 20% holdback pursuant to the interim compensation procedures, and (ii) out-of-pocket expenses referred to in (a) above.

### III.  The Blackstone Team

13.     The financial services set forth above were performed primarily by Pamela Zilly – Senior Managing Director; Richard Shinder – Vice President; David Blechman – Associate; and Michael Alexander – Analyst:

> (a) <u>Pamela Zilly</u>:  Pamela Zilly is a Senior Managing Director of Blackstone. Prior to joining Blackstone Ms. Zilly was a Vice President of Chemical Bank where she divided her time between the Mergers and Acquisitions Group and the Restructuring and Reorganization Group.  Since joining Blackstone, Ms. Zilly has provided services to debtors and creditors in both formal and informal restructuring engagements.

> (b) <u>Richard Shinder</u>: Richard Shinder is a Vice President of Blackstone. Prior to joining Blackstone Mr. Shinder was a Vice Presdent at Lehman Brothers in its Leveraged Finance group.  He has worked on a number of debtor and creditor restructuring engagements since joining Blackstone in 2000.

> (c) <u>David Blechman</u>: David Blechman is an Associate of Blackstone.  Mr. Blechman joined Blackstone in 2000 after receiving his M.B.A. with honors from Columbia Business School.

> (d) <u>Michael Alexander</u>: Michael Alexander is an Analyst of Blackstone.  Mr. Alexander joined Blackstone in July 1999 after graduating from the McIntire School of Commerce at the University of Virginia.

### IV.  Summary – Fifth Monthly Fee Application

14.     The major services provided by Blackstone during this compensation period have included: (i) assisting with negotiating confidentiality agreements with advisors to the Official Unsecured Creditors' Committee, the Asbestos Property Damages Committee and the Equity Committee; (ii) assisting with the performance of due diligence by these advisors; (iii) assisting the Debtors in the presentation of a business plan; (iv) providing quantitative and qualitative

analysis in support of the Debtors' planned acquisitions; (v) assisting the Debtors with structuring retention and incentive compensation plans in the Chapter 11 proceedings; (vi) analyzing the Debtors' legacy liabilities; (vii) assisting in the development of the Debtors' restructuring model; and (viii) providing general consultation and other bankruptcy and business advice.

15.    Blackstone respectfully submits that the compensation requested for the Fifth Application Period for services rendered by Blackstone to the Debtors is fully justified and reasonable based upon (a) the time and labor required during the proceedings, (b) the complexity of the issues presented, (c) the skills necessary to perform the financial advisory services properly, (d) the preclusion of other employment, (e) the customary fees charged to clients in non-bankruptcy situations for similar services rendered, (f) time constraints required by the exigencies of the case, and (g) the experience, reputation and ability of the professionals rendering services.

16.    Blackstone respectfully submits that the services it has rendered to the Debtors have been necessary and in the best interests of the Debtors and the estate and have furthered the goals of all parties in interest.  Blackstone respectfully submits that under all of the criteria normally examined in Chapter 11 reorganization cases, the compensation requested by Blackstone is reasonable in light of the work performed by Blackstone to date in these cases.

17.    The amount of the fees and expenses sought in this Fifth Application and Blackstone's billing processes are consistent with market practices in a bankruptcy context. Blackstone has never billed its clients based on the number of hours expended by its professionals.  Accordingly, Blackstone does not have hourly rates for its professionals, and Blackstone's professionals generally do not maintain detailed time records of the work

performed for clients. In the Debtors' case, however, Blackstone has recorded time records in one-half hour increments. Time records of the approximately 300.50 hours expended by Blackstone professionals in providing financial advisory and investment banking services to the Debtors during the Fifth Application Period are provided in Exhibit A by professional.

18.     Blackstone respectfully requests allowance of its out-of-pocket expenses incurred during the Fifth Application Period in connection with its performance of services for the Debtors in the aggregate amount of $5,042.39. Due to the lag in receiving invoices from certain third-party service firms, Blackstone is unable, at this time, to account for all expenses incurred during the Fifth Application Period. Ensuing compensation periods will include certain out-of-pocket expenses incurred in the Fifth Application Period but not included in the Fifth Application for relief. Details of the expenses incurred during the Fifth Application Period are provided in Exhibit B. Blackstone's charges for expenses to the Debtors are determined in the same manner as for clients in non-bankruptcy matters. Out-of-pocket expenses incurred by Blackstone are charged to a client if the expenses are incurred for the client or are otherwise necessary in connection with services rendered for such particular client. Blackstone does not factor general overhead expenses into any disbursements charged to its clients in connection with Chapter 11 cases. Blackstone has followed its general internal policies with respect to out-of-pocket expenses billed to the Debtors as set forth below, with any exceptions specifically explained.

> (a) Blackstone's general policy permits its employees to bill lunch or dinner meals to a client if the employee is required to provide services to the client during such meal-time due to extreme time constraints. Blackstone employees are permitted to order meals in the office if the Blackstone employee is required to work after 8:00 p.m. Blackstone has voluntarily capped meal expenses at $20.00 per meal.

(b) Messengers, couriers, or overnight delivery are used by Blackstone to deliver hard copy documents relating to the client matter which require receipt on an expedited basis; otherwise, Blackstone uses the regular postal system. Any charges for either messengers, couriers, or overnight delivery are billed to a client at cost.

(c) The outside financial research category consists of charges from outside services which supply, for a fee, financial documents to Blackstone. Financial research services generally consist of the retrieval of financial documents from regulatory agencies.

(d) Blackstone bills photocopying charges at the rate of $0.15 per page.

(e) With respect to local travel, Blackstone's general policy enables employees to travel by private car service or taxi to and from meetings while rendering services to a client on a client related matter, for which the client is charged. This policy is based on Blackstone's determination that travel by private car service or taxi is the most efficient use of a professional's time. Blackstone employees are not permitted to charge personal commuting expenses to a client unless, for safety reasons, the employee is traveling after 9:00 p.m. and has been required to work late as a result of the time exigencies of that client's matters.

(f) Blackstone bills its clients for time spent by its employees on its word processing system. The word processing system automatically allocates time to a client based upon the operator's "log-in" by a client matter number. Clients are charged at the personnel cost of $70.00 per hour for the actual amount of time spent by the operator while rendering word processing services to the client; however, when word processing services are being used after normal business hours, the client is not billed for both an overtime charge and a word processing charge.

(g) Blackstone bills outgoing facsimile charges at a rate of $1.00 per page. Blackstone does not bill incoming facsimile charges.

19.    Blackstone respectfully submits that the expenses for which it seeks allowance during the Fifth Application Period are necessary and reasonable both in scope and amount.

20.    No prior application for the relief requested herein has been made.

21.    All services for which compensation is requested by Blackstone were performed for and on behalf of the Debtors and not on behalf of any other person or stakeholder.

22.    No agreement or understanding exists between Blackstone and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with these proceedings.

23.    Blackstone respectfully represents that its Fifth Application is in keeping with similar applications for the payment of administrative expenses in other cases.

Dated: New York, New York
       November 28, 2001

THE BLACKSTONE GROUP L.P.
Financial Advisor to
W.R. Grace & Co.

By:_____

Richard Shinder
Vice President
345 Park Avenue
New York, NY 10154
(212) 583-5000
(212) 583-5707 (fax)