# Harvard Law School

# Faculty Manual
# 2001-2002



Edited by Alan Ray, Assistant Dean for Academic Affairs

# ATTACHMENT A
## Guidelines for Reporting Outside Activities of Full-Time Faculty Members

As Adopted 11/1/91

# HARVARD LAW SCHOOL

Guidelines for Reporting
Outside Activities
of Full-Time Faculty Members

### Introduction

Many activities of faculty members on behalf of other persons or institutions — including those done for pay, whether modest or generous — benefit academia generally, as well as the government, the legal profession, and portions of society. No sensible person argues that such activities are undesirable per se. More important, from the point of view of the university that contracts for the faculty members' services as full-time employees, such outside activities may also benefit their teaching and scholarship and thus help them indirectly to fulfill their obligations to the university.

Consequently, the Harvard Law School's long-standing substantive rule about outside activities does not prohibit them. Rather, it limits them to twenty percent of one's total professional effort. This limit reflects a judgment that there is an optimum amount of outside activities: none or too few could result in a professor not doing his best for Harvard, and too much might result in excessive diversion from the core tasks of teaching, scholarship, and direct institutional service at Harvard. Of necessity, any rule specifying a limit will be somewhat arbitrary, and may require exceptions to be made in particular circumstances.

Similarly, the reporting requirements about outside activities do not embody a judgment that such activities are not worthwhile. They are simply intended to help implement the Harvard Corporation's comprehensive request that outside activities be reported and monitored, and that substantive rules limiting such activities be enforced.

The relationship between the School's substantive rule and these reporting requirements is not a perfect mapping. The substantive limit is cast in very broad terms — "20% of [one's] total professional effort" — that transcend a 9-to-5 conception of the professor's role and attempt to capture the spirit behind the basic principle of a "predominant" commitment to teaching, scholarship, and service to the School. By contrast, the reporting guidelines focus on sharply defined time periods and attempt to set up a system that is practically administrable at modest cost. Since both regimes do apply, faculty members should avoid attributing conclusive significance to what appears on reports. Though we hope it will not happen often, it is conceivable that a professor could honestly file a report showing only 15% of the days in the reporting period being devoted to outside activities, yet be in contravention of the letter and spirit of the substantive rule. Consequently, conscience and self-policing are still important and expected. And on the other hand, a professor could file a report showing more than 20% of her days devoted to outside activities as defined for reporting purposes, yet be quite within the spirit of the substantive rule.

### The Reporting Requirement

Each year, around June 1, the Dean will send each member of the full-time faculty (that is, professors and assistant professors) an outside activities report form, a copy of which is attached. Each such faculty member is required to fill in and return the form by June 15.

As Adopted 11/1/91

The form includes various subcategories of outside activities, which should be separately filled in. An important reason for requiring subcategorization is that it may lead to the collection of textured information that will assist the deans and faculty in evaluating and perhaps refining the substantive rule.

All faculty members are free — and are encouraged — to supplement the form with explanatory material. In appropriate cases, further information may be requested.

### The Definition of Outside Activities

Conceptually, outside activities are those that fall outside the domain of a faculty member's core responsibilities to the Law School: teaching, scholarship, and participation in the affairs of the School, as by advising students, commenting on the work of colleagues, serving on committees, attending School events, and the like. Frequently, but not inevitably, outside activities are activities that are done off site. Usually they are activities of a professional or quasi-professional nature.

To formulate a definition that is precise and complete but also sensible would be extremely difficult. For any reporting system to work well, faculty members must develop an intuition of underlying policies and exercise good faith judgment about their application. Nevertheless, it is clear that the Corporation intends "outside activities" to be broadly and comprehensively defined for reporting purposes, and the following guidelines reflect that objective. At the same time, it should be noted that, in assessing whether the substantive limit on outside activities has been exceeded, one may have to make allowances for the particular nature of the outside activity.

Here, then, are some principles governing what counts as an outside activity for reporting purposes:

1. *Litigation and related activities.* All work done on particular cases or in advising particular clients about actual or prospective litigation, mediation, or arbitration counts as outside activity — even if the cause is most noble and in the public interest and even if one is paid nothing. This activity counts equally when the client is the government, a charity, a highly deserving person or entity, or a prosperous business. Participation in litigation by clinical professors, when they also supervise students doing work for academic credit in that same litigation as part of a Harvard Law School clinical program, is not an outside activity.

One issue of interpretation concerns work that has specifically identifiable multiple functions. For example, some of one's work in writing a brief on issue X for client Y may become or lead to a book or article that clearly counts as scholarship. The same section of a brief might also be used with little or no change in classroom teaching. Nevertheless, in such cases the reporting faculty member should classify all the time spent researching and writing the brief as time spent on an outside activity. As stated above, all legal work involving the advising or representation of others (including the government) is outside activity, whether compensated or not. Though application of this rule to work with multiple functions is somewhat arbitrary, it does minimize the temptation to over-classify the outside as inside, and it may avoid difficult questions of causation.

2. *Advising, consulting, counseling.* Advising private persons and public bodies counts as an outside activity. Admittedly, this rule will lead to some dichotomies that seem imperfectly related to achieving the School's ultimate purposes. Thus, for example,

As Adopted 11/1/91

advising a congressional committee on proposed legislation would count as an outside activity even though writing an article recommending the same statutory change would not. To some extent this difference reflects a valid concern about the availability of faculty in Cambridge.

3. <u>Lectures and conferences.</u> In accordance with the Corporation's request, these activities are specifically included as outside activities. Therefore, delivering a lecture or participating at a conference or seminar at another institution, or attending an ALI meeting, must be counted as outside activities. (One should also count the related travel time, as described elsewhere in these rules.) However, preparing for such lectures, conferences, and seminars can easily fall into traditional categories of scholarship. If so, the preparation should not be reported.

4. <u>Commissioned research.</u> Research commissioned by an outside person, such as the ALI, should be reported. Nevertheless, such activities seem especially likely to fall under the general principle that some activities classified as outside activities for reporting purposes may be regarded in appropriate cases as satisfying a professor's core scholarly obligations. In such cases, the commissioned research might not be counted — or might not be counted heavily — in determining whether the professor has exceeded the limit on outside activities.

Reporting Period and Counting Rules

1. The annual reporting period begins the day after Labor Day and ends on Commencement. It excludes the two-week break at Christmas, the one week Spring break, and holidays officially recognized by the School in the calendar appearing in the course catalog.

2. With respect to the annual reporting period, as just defined, faculty members should report all outside activities occurring during regular business hours, that is, between 9 AM and 5 PM on Mondays through Fridays. Thus, travelling five hours on Thursday evening, attending a Friday-Sunday conference, and returning Sunday night would count as one day of outside activity.

3. The reporting form calls for reporting of outside activities in terms of "days" spent on them. In doing this, faculty members should keep in mind the decision to use the concept of the 8-hour business day for reporting purposes. Thus, two mid-morning hours spent in one's office on outside work should count as 1/4 of a "day." On the other hand, a calendar day spent consulting in Washington is only "one day" even if 16 hours were spent with the client.

4. Travel time should be reported as an outside activity to the extent that it occurs during the business day when travel (1) would not have been undertaken in the absence of an outside activity or (2) is compensated by an outside party in connection with outside work, even though the travel might also have occurred for other reasons.

Related Principles

<u>Interpretation of guidelines.</u> A faculty member who faces difficulties in interpreting and applying the guidelines should feel free to discuss them with the dean, who will undertake to resolve them. Another alternative is for the faculty member to make the best resolution he or she can, and to include an explanatory statement with the filed report. If

As Adopted 11/1/91

circumstances warrant, an ad hoc committee may be appointed to deal with interpretive and investigative issues. From time to time, these processes may result in "letter rulings" that (with names removed) are sent to the whole faculty, or to revisions of the guidelines.

*Confidentiality.* The annual reports of outside activities will be regarded as confidential and will not be disclosed without the consent of the reporting faculty member except as necessary to compile statistical aggregations or to assist the Dean, the President, the Corporation, or their designees in working out appropriate standards or in reviewing the extent of outside activities by a particular professor.

*Non-reporting.* Reporting is a serious obligation of each faculty member. Those who fail to report after reminders should understand that they are subject to the usual sanctions attending failure to carry out a formal faculty responsibility.

*Transitional rule.* For the academic year 1991-92, the first year to be affected by these guidelines, the reporting period will begin on January 1, 1992.

*July 4, 1997*

The following statement from the Dean is issued in accordance with notable interpretations since the adoption of the Guidelines for Reporting Outside Activities of Full-Time Faculty Members:

Application to Semesters of Sabbatical Leave and Unpaid Leave

If and only if a professor is completely free from teaching because of a properly approved semester or year of sabbatical leave or unpaid leave, then the Outside Activities rules and reporting requirements do not apply to the semester or year during which he or she is on such leave. This is not true of semesters on research status; reporting requirements do apply. If the number of credits of sabbatical leave or unpaid leave for a given semester are less than five, then the Outside Activities rules and reporting requirements do apply.

\* \* \* \*

# Harvard Law School

# Faculty Manual
# 2001-2002



Edited by Alan Ray, Assistant Dean for Academic Affairs

## K. Special Law School Events

Each year there are scheduled a number of events, most of which faculty members should expect to attend. These include the annual meetings of the Law School Visiting Committee, the Harvard Law School Fund, the Harvard Law School Association, and the two major class reunions, one in the fall and one in the spring. In addition, there are a number of events for students (including first-year section parties and LL.M. orientation parties at the beginning of the year and the social events for degree candidates scheduled during Commencement Week), and for staff and faculty (for example, the holiday party just before the winter recess).

It is important that faculty members accept invitations to attend occasional out-of-town events sponsored by local Alumni Associations.

From time to time, faculty members, especially program directors, invite heads of state and other dignitaries to attend special Law School events. Faculty members desiring to do so are asked to contact the University Marshal's Office (5-5727), and abide by the University's "Guidelines for Harvard Invitations to Foreign Heads of State, Heads of Government, Cabinet Ministers, and High American Officials and Leaders." A copy of the "Guidelines" is available online at www.marshal.harvard.edu/.

## L. Absence from Cambridge

By vote of the President and Fellows, any instructor desiring to be absent during term time for a period of more than one week must have the permission of the Dean. In view of the fact that the School's program with respect to research status requires that those in that status be in residence, the vote of the President and Fellows applies to them as well as to faculty members who are teaching. The Dean would like to have a brief note from those seeking such permission.

## M. Outside Activities

The following substantive principles relate to outside activities:

(1) Outside activities should not interfere with faculty members' predominant commitment to teaching and scholarship, their availability to students and colleagues, and their responsibility to participate in the affairs of the School.

(2) Faculty members should not devote more than 20% of their total professional effort to work beyond teaching, scholarship, and responsibilities to the School. There are obviously very difficult questions of definition here and, in the absence of detailed guidelines, the usefulness of this principle depends upon individuals' being rather rigorous with themselves in applying it.

(3) Faculty members should not be partners in law firms or be held out as "of counsel." They should not have offices outside the Law School. Nor should they have relationships with businesses or other organizations that could impose demands in conflict with their responsibilities to the School.

(4) All professors, assistant professors, adjunct professors, visiting professors, and lecturers who are full-time employees of Harvard must supply an annual written report of their outside activities to the Dean. For details, see "Guidelines for Reporting Outside Activities of Full-Time Faculty Members," included in this Faculty Manual as Attachment A.

Faculty members who engage in outside work should satisfy themselves that they are not engaged in the practice of law if they have not been admitted to the appropriate bar. In addition, given the increasing risk of claims of malpractice, faculty members may wish to seek information about malpractice insurance, which is available at reasonable rates for part-time practitioners. Professor Andrew Kaufman has agreed to consult with any faculty member who has questions in these areas.

## N. Conflict of Commitments

### 1. Introduction

Law School faculty members have increasingly sought to engage in teaching, research, or consulting during the academic year at educational institutions or organizations other than Harvard University. Often, though not always, this teaching, research or consulting has occurred while faculty are on unpaid leave from the School, or on a leave funded by restricted funds, or on reduced salary. Such arrangements are not by right and all of them, and others, are strictly governed by the rules of the University devoted to eliminating conflict of commitments.

### 2. University Policy

All forms of extracurricular teaching, research, and consulting are governed by the University's "Statement on Outside Activities of Holders of Academic Appointments," included in this Faculty Manual as Attachment B, and available online at www.provost.harvard.edu/reports/outside_activities.html. Faculty members are asked to read and be familiar with the provisions of the "Statement."

Consistent with the "Statement," persons holding full-time academic appointments at Harvard may not teach, research, or consult for *any* non-Harvard educational institution or organization, including but not limited to other law schools and universities during the academic year, *without first receiving the Dean's express approval, followed by the approval of the Corporation*. The "Statement" applies to teaching or research regardless of whether or