# EXHIBIT "D"

## INSTRUCTIONS FOR COMPLETION OF
## NGC ASBESTOS PROPERTY DAMAGE CLAIM FORM
## <u>CATEGORY 1, 2, and 3</u>

### <u>Introduction</u>

On March 9, 1993, a Plan of Reorganization ("Plan") of National Gypsum Company and Aancor Holdings, Inc. (together "Debtor") was confirmed by the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. The Plan, which became effective July 1, 1993, established the NGC Asbestos Disease and Property Damage Settlement Trust (the "Trust") which is responsible for the liquidation, evaluation, payment, and disposition of Asbestos Disease and Asbestos Property Damage Claims pursuant to the NGC Asbestos Disease and Property Damage Claims Resolution Procedures set forth in the Plan (the "NGCA Procedures"). Pursuant to the NGCA Procedures, all Asbestos Property Damage Claims ("PD Claims") must be submitted on the standardized NGC Property Damage Claims Facility (the "PD Facility") Claim Form ("PD Claim Form") on or before July 1, 1994. The postmark date shall be considered the submission date.

These Instructions and the directions on the PD Claim Form are intended to provide sufficient guidance to enable Claimants and/or Claimant Representatives to complete the required PD Claim Form. The staff of the PD Facility is available to answer questions about these Instructions or the directions on the PD Claim Form. The PD Facility staff may be reached by calling 1-800-807-3734 or 214-226-0023.

**Completed PD Claim Forms must be mailed (i.e. postmarked) to the PD Facility on or before July 1, 1994, at the following address:**

> NGC Property Damage Claims Facility
> P. O. Box 495249
> Garland, TX 75049-5249

Use of alternate express or delivery services such as Federal Express, UPS, or Airborne is acceptable. The date documented by the service as the <u>pick-up date</u> will be used as the "<u>postmark</u>" <u>date</u>. The following address should be used for submission of PD Claims via the alternate delivery service:

> NGC Property Damage Claims Facility
> 310 East Interstate 30
> Suite 270
> Garland, TX 75043

There are two different PD Claim Forms that will be used for the submission of claims. **The PD Claim Form that accompanies this set of Instructions is to be used for the submission of Category 1, 2, or 3 Claims. There is a different PD Claim Form for Category 4 Claims that is clearly marked on each page as Category 4.** If the wrong PD Claim Form has been included with these instructions or the claim has been categorized incorrectly, please write or call the PD Claims Facility. Corrected PD Claim Forms and Instructions, if needed, will be furnished.

### Definitions

**Definitions used in these Instructions are those included in Sections III.A.1. through 45 of the NGCA Procedures.** A copy of the NGCA Procedures is included with these Instructions.

Consistent with the following additional definitions (Plan, Article I) which are used in these Instructions and on the PD Claim Forms:

> *"Asbestos Property Damage Claim"* means any Claim against, or any debt, obligation, or liability of, either of the Debtors or their respective Affiliates or subsidiaries (other than Austin or any Austin Subsidiaries), and their present or former employees (including, without limitation, all thereof in the nature of or sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty) for, relating to, or arising by reason of, directly or indirectly, property damage (including, without limitation, diminution in the value thereof) or environmental damage or economic loss related thereto caused or allegedly caused, directly or indirectly, in whole or in part by the presence of asbestos or asbestos-containing products in buildings and arising or allegedly arising, directly or indirectly, from acts or omissions of either of the Debtors or their respective Affiliates or subsidiaries (other than Austin or any Austin Subsidiary) (or another person, firm, corporation, or other entity for or with which either of the Debtors or their respective Affiliates or subsidiaries [other than Austin or any Austin Subsidiary], is or may be liable, including, without limitation, any Claim [including any Contribution Claim], debt, obligation, or liability for compensatory damages [including, without limitation, proximate, consequential, general, and special damages], punitive damages, reimbursement, indemnity, warranty, contribution, and subrogation; *provided, however,* that Asbestos Property Damage Claims do not include Asbestos Disease Claims or NGC Environmental Claims).

> *"Asbestos Property Damage Claims Resolution Facility"*, herein referred to as the PD Claims Facility, means the dispute and claims resolution facility to be implemented on the Effective Date, or as soon thereafter as practicable, for the purpose of liquidating and resolving all Asbestos Property Damage Claims in accordance with the terms and conditions of this Plan and the NGC Asbestos Settlement Fund Documents, which claims resolution facility shall substantially comply with, and conform to, the PD Claims Resolution Guidelines.

## General Instructions

### Terminology

The terminology used in the PD Claim Form and in these Instructions is as defined in the NGCA Procedures. Section III of the NGCA Procedures establishes the process for resolving PD Claims (the "PD Procedures"). All references to sections in the PD Claim Form or these Instructions are references to sections in the NGCA Procedures (i.e. Section III.A.I.) which is the controlling authority.

### Claim Form

The PD Claim Form for Category 1, 2, and 3 Claims has multiple sections. Each has a distinct role in gathering the data needed to make a final determination as to the Allowed Costs of any particular claim. The sections are:

| Section or Index | Section or Index Title | Required for Category... | Information Provided By... |
|---|---|---|---|
| Section A. | Building Identification | All | Building |
| Section B | Installation/Product Location | 1a, 2, & 3 | Installation of NGC ACM |
| Section C | Product Identification | 3* | NGC Product |
| Index C | Product Identification Index | 3* | NGC Product |
| Section D | Cost Documentation | 1a, 2, & 3 | Abatement Project |
| Section E | Claim Summary | 1a, 2, & 3 | Installation of NGC ACM |
| Section F | Future Cost Documentation | 1a & 2 | Installation of NGC ACM |
| Section G | Certification | All | Claim** |

\* Product Identification for Category 1a was judicially established.
\* Product Identification for Category 2 was required to be submitted on or before June 30, 1993.
\*\* Each Claim represents one installation of NGC ACM.

3

**Each installation of NGC ACM must be filed as a separate Claim.** As of March 1, 1994, the trigger for insurance coverage for reimbursement of PD Claims is the installation of ACM based on the ruling of the U. S. District Court in the Southern District of New York in *Stonewall v. National Gypsum, et al*. The ruling is presently on appeal before the United States Second Circuit Court of Appeals. It is required that all Claims include installation information.

**If more than one NGC Asbestos Containing Product ("NGC Product")were installed concurrently in the same building, it is considered to be a single installation and should be filed as a single Claim.** Each NGC Asbestos Product must be identified, its location in the building specified, and abatement cost information supplied for purposes of filing a Claim.

**Abatement costs must be specifically identified with and allocated to a particular installation of NGC ACM to support a Claim.** Abatement projects may extend to more than one installation of ACM or a single installation of NGC ACM may be abated in more than one identifiable project. It is required that abatement costs be apportioned accurately to the applicable installations abated since the basis for a Claim is a single installation.

**A completed Section A must accompany each Claim (installation).** Section A may be substantially repetitive if a building contained more than one installation of NGC ACM. However, each PD Claim will have a different Claim Number.

**Section B actually identifies installation and product information and, therefore, defines a PD Claim.** Each separate installation period of NGC ACM is a Claim. There will be only one Section B per claim unless more than two NGC ACM Products were installed concurrently. In Section B, the Claimant reports the location, within the building, and the square footage of NGC ACM for each NGC Product installed during the identified installation period.

**Section C and Index C are required for Category 3 Claimants to provide evidence of Product Identification of NGC ACM.** Category 1a, 1b, and 2 Claimants are not required to complete Section C. (See footnotes to table on Page 3).

**A separate Section D-1 & D-2 with Supporting Worksheets must be submitted for each Abatement Project whose costs are part of the Claim.** (Abatement Project is defined in the detailed instructions for Section D). There may be more than one Abatement Project per Claim. The information requested is important in meeting the standard of "providing payment for the cost-effective, reasonable methods of Abatement of NGC ACM." (Section II.). A sample Supporting Worksheet is provided as a part of these Instructions.

**Section E is a recap of the Cost Documentation provided in all Section D's.** Since Abatement includes the removal, enclosure, encapsulation, or repair of ACM (Section III.A.1.), a Claim may include costs for Abatement of the same ACM more than once. As a part of the reasonableness standard, per square foot costs will be examined for each type of Abatement. Section E sets forth the amount of the total Claim.

**Section F provides additional information needed to determine Future Estimated Allowed Costs for Category 1a and 2 Claims.** This information will be used by the Trust to determine Future Estimated Allowed Costs. (Section III.D.3.a.).

**Section G is the Certification of the Claimant or the authorized Claimant Representative for each Claim filed.**

**Each Claim has a unique, three-part Claim Number.** The first set of three numbers of the Claim Number is the Claimant Number. The second set of four numbers is the Claimant's Building Number. The third set of three numbers is a unique serial number that should always begin with 001 for the first installation of NGC ACM in the building for which this PD Claim is being filed. If a Claimant's Building has, for example, three separate installations of NGC ACM in different years and under different construction contracts; then the Claimant has three PD claims and the last set of three numbers in the Claim Number would be -001 for the first PD Claim, -002 for the second PD Claim, and - 003 for the third PD Claim. Claim Forms are pre-numbered.

**Detailed Instructions for each Section of the PD Claim Form are provided in a later section of these Instructions.**

Information in the PD Facility database will be pre-printed on the PD Claim Form for each PD Claim to the extent that it is available. Please check the pre-printed information for accuracy, making changes as necessary.

<u>**Submitted Claim Forms and Documentation**</u>

Each PD Claim filed must include all sections of the PD Claim Form and the supporting documentation that is required for the applicable claim category. Please do not rely upon or make reference to other PD Claim Forms or supporting documentation that is a part of a different PD Claim. If a particular supporting document supports more than one PD Claim, attach a copy and properly index that document for each applicable PD Claim.

All PD Claim Forms and supporting documentation must be readable. If any Section of a PD Claim Form or supporting documentation is illegible, resubmission will be required and there may be a delay in the processing of the PD Claim.

## Communications with the PD Claims Facility

Claimants or Claimant Representatives are encourage to communicate directly with the PD Facility staff regarding the submission of PD Claim Forms and supporting documentation. The PD Claims Facility is staffed from 7:00 a.m. to 6:00 p.m.(Central Time) Monday through Friday. The toll-free number is 800-807-3734. Written requests may be mailed to:

> NGC Property Damage Claims Facility
> P. O. Box 495249
> Garland, TX 75049-5249

or transmitted via facsimile (214/226-7021).

The staff of the PD Claims Facility is not permitted to change the NGCA Procedures nor the requirements of the PD Claim Form or these Instructions. If appropriate, questions requiring interpretation of the NGCA Procedures may be forwarded to the Managing Trustee of the NGC Settlement Trust by the PD Claims Facility staff.

## PD Claim Form--Section A
## Building Identification

### Category of Claim

For each PD Claim, the Claimant must make an election as to the proper qualifying category under which the PD Claim will be evaluated. Qualification is subject to the criteria contained in the NGCA Procedures and summarized below. The elected Category must be designated in the space provided in the upper right portion of Section A.

The following is a summary of the Claim Categories:

### Category 1a

The Texas School Class Action (the "Class Action Judgment") is the only group of PD Claims in Category 1a. No Product Identification ("PID") is required, but the amount of the PD Claim must be proven as required by the NGAC Procedures. Allowed Costs shall equal all Past Allowed Costs and all Future Actual and Future Estimated Allowed Costs.

### Category 1b

The National Schools Class Action and the National Universities Class Action (collectively the "Liquidated Class Actions") may elect to be Category 1b Claims. Each Liquidated Class Action, after certification of the class and upon motion of the certified class representative, (i) may elect to have the amount of its Claim fixed at an agreed settlement amount of $30 million for the federal schools class and $20.5 million for the universities class, or (ii) may opt to be treated as Category 2, 3, or 4 Claims. Once the class representative has made the election on behalf of the entire class to be a Category 1b Claimant no class member may have an individual PD Claim.

### Category 2

Category 2 is composed of Claimants who are classified as Determination Date PID Claimants because they filed Product Identification ("PID") (as required by Section III.D.1.c.) by June 30, 1993 and either meet threshold levels of Abatement (as required by Section III. A.19.) or are a private or public elementary or secondary school in the United States. For Category 2 Claimants, Allowed Costs shall equal all Past Allowed Costs and all Future Actual and Future Estimated Allowed Costs.

Category 3

Claimants who do not file PID by June 30, 1993, but who do file PID on or before July 1, 1994 with the PD Claim Form, specifically Section C and Index C, may qualify as a Category 3 Claimant. Category 3 is subdivided, based on the definition of Allowed Costs, as follows:

> Category 3a   Allowed Costs equals Past Allowed Costs (actual costs incurred prior to March 9, 1993)
>
> Category 3b   Allowed Costs equals Future Actual Allowed Costs (actual costs incurred on or after March 9, 1993)

Category 4

Massive Claimants (Class Actions, Group Claimants, and States) may elect to share in the Category 4 Fund which may range from $6.75 million to $10 million based on the subsequent valuation of the Trust's assets as of December 31, 1995. Payable Claims for Category 4 Claimants shall equal a prorata share of the Category 4 Fund based on Compensable Claims calculated at $.15 per square foot of Principal ACM. Category 4 Payable Claims may be further reduced pro-rated by the application of the Reduction Formula if Payable Claims in Categories 1, 2, and 3(a) are not able to be paid in full. Massive Claimants must make a formal election applicable to all Buildings within its Class, Group, or State, as applicable, which are not otherwise properly included within, or remain as part of, a Class Action Claim. (Section III.B.1.b.).

For Category 4 PD Claims, no PID is required and the Principal ACM is not required to have been abated. However, the Principal ACM cannot have been identified as being the product of a specific producer other than NGC.

**1. Name and Street Address of the Building**

Identify the Name and Street Address of the Building for which this PD Claim is being filed.

**2. Building Code**

In the box provided, enter one of the twenty-two Building Codes listed on the Claim Form which best describes the usage for which the Building was constructed. Use "Other" only if the building does not fit one of the specific choices, and describe the appropriate usage.

## 3.  Claimant Representative Information

Provide all of the information requested in the box provided.  All correspondence regarding this PD Claim will be directed to the Claimant Representative.  The Claimant Representative must be authorized to act on behalf of the Claimant.  The Claimant Representative may be an attorney, engineer, architect, other consultant, employee of the owner or operator of the Building, or the owner or operator of the Building.  The Claimant Representative will be the person presumed to have filed the PD Claim on behalf of the Claimant.

## 4.  Claimant Information

Provide all of the information requested in the box provided.  The Claimant may be the owner, operator, or certified class representative for the Building. (Section III.A.12.)  The Claimant shall be the person or entity on whose behalf the PD Claim is being filed and on behalf of whom the payment of the PD Claim will be made.

## PD Claim Form—Section B
## Installation/Product Location

### 1. Building Name

For identification purposes, this Building Name must be the same as provided in 1. of Section A.

### 2. Original Construction Period

Include the calendar year(s) in which the original construction of the Building occurred. This may or may not be the Installation Period of the NGC ACM.

### 3. Installation Period for this Claim

Include the calendar year(s) in which the Installation of the NGC ACM occurred for which this PD Claim is filed.

### 4. NGC Product Name(s)

List the name(s) of NGC Product installed in this Building during the Installation Period in 3. above. Space is provided to report two NGC Products. If more than two NGC Products were installed concurrently, use additional Section B's as necessary. Normally concurrent installations would be under the auspices of a single contract or project.

The NGC Product Name(s) must be confirmed by the PID previously submitted by Category 2 Determination Date PID Claimants or PID submitted as Section C and Index C with this PD Claim by Category 3 Claimants.

### 5. NGC Product Function(s)

Specify the usage of the named NGC Product(s), e.g. fireproofing, acoustical plaster, etc.

### 6. Locations within this Building where NGC ACM was Installed

If necessary, divide the NGC ACM areas which are a part of the Installation for which this PD Claim is being filed into no more than four areas in which the construction, installation of NGC ACM, abatement of NGC ACM, or usage is similar. List the types of rooms, by usage or other designation without regard to which floor of the Building, that are grouped under Locations 1-4. For example, in a school the locations might be grouped as follows:

| Location 1 | Location 2 | Location 3 | Location 4 |
|---|---|---|---|
| Classrooms, | Gym, Auditorium, | Halls, Restrooms, | Kitchen, |
| Offices, | Band Hall, | Foyers, | Vocational Shops, |
| Library, | Choir Room | Dressing Rooms | Mechanical Rooms, |
| Conference Rooms, | | | Concession Stands |
| Records Storage | | | |

For all of the rooms or areas included in each Location listed in 6. above, indicate which NGC Product is used for each type of Installation Surface using the Product Numbers assigned in Question 4 of this Section B. Also, calculate the square footage of <u>NGC Product</u> that has been applied to each Installation Surface, not the square footage of the floor space.

## 7. Supporting Citations from Documentation Index

List the Document Number (C-####) of PID Documents that supports the existence of the NGC Product in each of the Locations (1-4). For Category 2 Claims, use citations from the Documentation Index filed by June 30, 1993, as a part of the Category 2 Product Identification Claim Form. For Category 3 Claims, use citations from Index C of this PD Claim Form. (For explanation of Document Numbers, see Instructions for PD Claim Form - Index C).

## PD Claim Form--Section C
## Product Identification

**Only Category 3 Claimants are required to complete Section C and Index C as a part of the filing of this PD Claim.** Category 3 Claimants are required to produce Reasonable Evidence that the ACM that is the subject of this PD Claim is NGC ACM. The requirements are enumerated in Section III.D.1.b.-c.

PID was judicially established for Category 1a PD Claims. PID is not required for Category 1b PD Claims because prior to the Petition Date NGC's liability was established by reason of written settlement agreements. PID was required by June 30, 1993 for Category 2 PD Claims.

### A.  Product Name

The product name should be one of the NGC trade names such as Sprayolite, Fireshield, Gold Bond Acoustical Plaster, etc. If two or more NGC Products were installed concurrently in the Installation that is the subject of this PD Claim, complete a separate Section C and Index C for each NGC Product(s). The NGC Product(s) reported in Section C should be identical to the NGC Products listed in Section B.

### B.  Product Function

The function should be either acoustical plaster or fire proofing or in some cases other ACM Surface Treatments. The intended use or function of the ACM must be adequately described. This is a repeat of information provided in Section B.

### C.  Classification of Evidence of NGC ACM

Reasonable Evidence must be submitted that the ACM that is the subject of this PD Claim is NGC ACM. The NGCA Procedures provide that PID may be established by any of the following methods of proof:

> Classification (i)
> Constituent analysis of representative bulk sample(s) showing that the ACM that is the subject of the claim is NGC ACM;

> Classification (ii)
> A sworn affidavit of an individual with personal knowledge that NGC ACM was used in the building for which the claim is made, setting forth the individual's conclusion that NGC is the designer, manufacturer, supplier, or distributor of the ACM and the factual basis for that conclusion, provided the Trust has the right to confirm the accuracy of the affidavit by constituent analysis or other verification available to the satisfaction of the Trustees at the cost of the Claimant; or

Classification (iii)

Documentation evidencing that NGC ACM was used in the building for which the claim is made, including, without limitation, sales invoices; purchase orders; architectural specifications and records; bid documents; contracts and subcontracts; change orders; material approvals; maintenance, repair, and renovation records; complaints to contractors; installation records; advertisements; insurance claims; supplier records; documents from discovery in lawsuits; and NGC records. For this purpose, a specification without some additional substantiating proof that NGC ACM was used shall not sustain a PD Claim.

The appropriate box(s) should be marked to indicate the method(s) of evidence used to prove NGC PID. A brief description of the PID Classification Documents, particularly if Classification (iii) is used, must be provided. All supporting documentation must be submitted with this PD Claim Form and identified in Index C with a Document Number. Mark the supporting documentation with the corresponding Document Number.

## D. Describe PID Evidence if Other than Above Classifications

The Claimant should describe the Reasonable Evidence of PID attached to the Claim Form if such proof is different from the methods of included in C above.

## E. Evidence of ACM

The NGCA Procedures provide that the PD Claim Form require copies of all existing bulk sample analysis results and/or records thereof evidencing that the material for which a PD Claim is made contained asbestos. The bulk sample analysis technique must be polarized light microscopy or other generally acceptable method, including those acceptable to the United States Environmental Protection Agency. A minimum of one sample from each Homogeneous Area for which Abatement Costs are claimed must have been analyzed. If the classification of PID evidence submitted is constituent analysis which identifies the bulk sample as being NGC ACM, then no further proof the material is ACM will be required.

## F. Proof of Quantity of NGC ACM

The NGCA Procedures require proof of the quantity of ACM that is claimed to be NGC ACM. Such evidence of proof of quantity of ACM must be submitted with each PD Claim Form. If the PID proof submitted is constituent analysis, then the quantity of ACM in total square footage for each Homogeneous Area must be established by Reasonable Evidence. If the PID proof submitted consists of an affidavit(s) or other documentation, the quantity of ACM in total square footage for the area claimed to be NGC ACM must be proven by Reasonable Evidence. For example, Reasonable Evidence of quantity may be established by a qualified consultant's report provided that the proof

submitted for quantity of NGC ACM corresponds to the same area(s) claimed to be NGC ACM in the PID proof which is submitted.

### G. Constituent Analysis

The NGCA Procedures require that if constituent analysis is the method of PID proof submitted, then the analysis must consist of one or more representative bulk samples. Each ACM bulk sample must be shown to be representative of a Homogeneous Area as defined in the NGCA Procedures. A report of a qualified person who removed the sample(s) and considered them representative of the area(s) of NGC ACM being claimed is evidence that the bulk sample of ACM is representative of a Homogeneous Area. Reasonable proof must be offered that the ACM bulk sample reports and/or constituent analysis results submitted came from the ACM that is claimed to be NGC ACM. This can be shown by attaching applicable chain of custody documentation for the samples.

### H. Pre-Existing Claimant

Pre-Existing Claimant status is relevant if the Trustees determine that a PD Claim may be factually time barred under the Statutes of Limitation of the applicable jurisdiction as defined in the NGCA Procedures. If Pre-Existing Claimant status is asserted, answer "Yes" and submit supporting documentation that is appropriately marked and included in Index C. As an example of appropriate supporting documentation, if the Claimant had an active lawsuit against NGC pending prior to the Petition Date, attach a copy of the summons and complaint and proof of service, as well as a certification that the case was not dismissed prior to the filing of the Petition by NGC.

### I. Certification That Claim Not Barred

The Plan and the NGCA Procedures require the Trust to disallow any PD Claim which is factually time barred under the statute of limitations of the applicable jurisdiction. The applicable provisions state that there is a presumption the PD Claim is not time barred if a lawsuit had been filed and not dismissed on the basis of its being time barred. However, the Trustees may find a PD Claim is time barred under certain conditions. As an aid to the Trustees, an attorney, on behalf of the Claimant, should provide an affidavit which identifies the applicable statute of limitations or similar applicable law and briefly outlines why the PD Claim is not time barred. This representation will aid the Trust in the expeditious processing of a PD Claim. The Trustees reserve the right to assert that a PD Claim is barred due to the applicable statute of limitations or repose or late filed proof of claim in the bankruptcy case.

Complete the block of information regarding the attorney certifying that this PD Claim is not time barred due to the Statute of Limitations or Repose. Disclose the Applicable Jurisdiction and attach the affidavit described above.

## PD Claim Form--Index C
## Product Identification Index

### Document Number

Each supporting PID document for this PD Claim should be numbered with both the Claim Number (See General Instructions, page 5) and a sequential Document Number beginning with C-01. List the documents sequentially by Document Number on the Product Identification Index--Index C.

### "Type" Code

This code indicates the type of supporting document attached and listed. Examples include a *constituent analysis report* or *consultant's report*. A list of "type codes" is appended to these Instructions as Attachment A.

### "To Support" Code

This code indicates the part of this PD Claim the particular document is supporting. A document may be supporting more than one requirement of the PD Claim Form. For example, a *constituent analysis report* may be used to satisfy the PID criterion as well as proof that the material is, or was, ACM. A *consultant's report* may be used to prove that the constituent analysis sample(s) was representative by identifying or describing the Homogeneous Areas which correspond to the same area(s) of ACM for which NGC PID is offered, as well as proof of the quantity of the NGC ACM (i.e., square footage calculated). A *material approval form* may be used to prove the PID as well as to give an estimate of the installation date. A list of "to support" codes is appended to these Instructions as Attachment B.

### Author or Originator

Most documents have as an author an individual with an institutional or organizational affiliation. For example, a *consultant's report* may have the name of the person who conducted the inspection as well as the company for which he or she works. An *invoice* may not have a person's name, but will have the name of the invoicing company. In the case of documents which do not have an individual as an author, only the organization or some other description need be included in the organization column. However, in a case where an *advertisement* is submitted as proof of PID because NGC advertised that Sprayolite was used in the *ABCD School* and the PD Claim is for the *ABCD School*, the "person' would be NGC and the organization should be used to indicate the name of the magazine. In the case of *discovery* taken in a lawsuit, the column for person should be used to describe briefly the document and the organization column should be used to state the lawsuit or suits in which it was obtained.

If the documentation utilized to prove the PID is a specification, additional proof must be included to demonstrate that the specification was approved, or accepted, or some other evidence proving that materials manufactured by NGC were actually installed.

## Date

List the date the document was released or published.

## PD Claim Form—Section D
## Cost Documentation

**A separate Section D (Sections D-1 and D-2), each with supporting Cost Documentation Worksheets, must be completed for each Abatement Project that is a part of this PD Claim.** Since Actual Costs for a PD Claim may consist of costs related to more than one Abatement Project, it is important to provide clear and concise information on a Project-By-Project basis to enable the PD Claims Facility staff to fully understand the Actual Costs reported in this PD Claim.

*"Abatement Project"* means Abatement activities resulting in Abatement Costs under the broader or more extensive of (i) a single Scope of Work, (ii) a set of specifications, (iii) a contract or series of related contracts, (iv) an in-house work order(s), or (v) a purchase order(s).

17

## PD Claim Form--Section D-1
### Cost Documentation

**The objective of Section D-1 is to provide an index for all documents related to the Actual Costs of a single Abatement Project which is a component of this PD Claim.** More than one Section D-1 form may be used for a single Abatement Project if needed to list all relevant documents.

### A. Document Number

Each supporting document for this Abatement Project should be numbered with both the Claim Number (See General Instructions, page 5) and a sequential Document Number. For the first Abatement Project for this PD Claim, the Document Number should begin with D-101; for the second Abatement Project of this PD Claim, a second D-2 form should be used and the Document Number should begin with D-201; and so on. This number system will allow the PD Claims Facility staff to more easily evaluate cost documents on an Abatement Project basis. List these sequential numbers on the Cost Documentation--Section D-1 form(s).

### B. Description of Document

Generally the best Description of the document will be its title and perhaps some other distinguishing characteristic if there is more than one document that will be similarly described. The date of the document might be another easily identifiable distinguishing characteristic.

### C. "Type" Code(s)

This code indicates the type of supporting Cost Documentation attached and listed. Although there may be other types of Cost Documents in addition to those which are listed on the face of the Section D-1 form and given code numbers, most should fit within these types of Cost Documents. Claimants may use asterisk(s) to footnote differing or additional codes for Cost Documentation if needed.

### D. Location(s)

Enter the Location(s) (1, 2, 3, or 4) of Abatement of NGC ACM that is reported for this Abatement Project corresponding to the Location(s) of NGC ACM listed in Section B. NOTE: Not all Location(s) listed in Section B will necessarily be a part of each Abatement Project nor will each Location(s) listed in Section B necessarily have been a part of a particular Abatement Project.

## E. Net Claim Amount $$$

Enter the **unduplicated dollar amount, net of deductions for costs not allowed under the Procedures,** attributable to a specific document as it relates to this Abatement Project. There may be more than one document which supports a specific expenditure related to this Abatement Project. Every pertinent supporting document should be listed, but the costs related to a specific contract or work order should be listed only once, preferably with the document evidencing payment. This is what is meant by "unduplicated dollar amount." The clearest presentation of costs would be to group documents in the order in which they were issued, contracts signed, and payments made. For example, an Abatement Project may have one Scope of Work which details the division of responsibilities into two outside contracts and work to be performed by in-house personnel. The documents should be arranged so that the Scope of Work is the first document listed, followed by one of the outside contracts and the corresponding Proof of Payment Documents. The second outside contract and corresponding Proof of Payment Documents would follow with the in-house documentation comprising the final grouping of cost documents.

Deductions for costs not allowed under the Procedures should be clearly presented on the accompanying Cost Documentation Worksheet. Payments to PD Claimants are based on Allowed Costs (Section III.A.4.). Costs for surveys or operations and maintenance are specifically excluded from Allowed Costs, but a survey (or inspection) specifically for the design of the Abatement Project would be included. Eligible Abatement Costs (Section III.A.2.) under the Procedures are to be included as Allowed Costs. An extensive listing of examples of Abatement Costs are set forth in the definition of Abatement Costs. Costs of replacement of ACM with a non-asbestos material if the Abatement is part of a demolition project are not included in the definition of Abatement Costs. Also excluded from Abatement Costs and Allowed Costs are costs associated with Renovation activities which are "undertaken at least in principal part for reasons not related to asbestos management, control or Abatement."

## Total Amount of Net Claim Costs

Enter the total amount of unduplicated Abatement Costs, net of deductions for costs not allowed under the Procedures, as a total of costs being claimed for this Abatement Project.

## PD Claim Form--Section D-2
## Cost Documentation

**Section D-2 must accompany each Section D-1 to summarize each Abatement Project that is a part of this PD Claim.** Section D-2 also provides an outline of the Cost Documentation Worksheet that must accompany each Section D-1 and D-2 to support the calculation of Abatement Costs. A Cost Documentation Worksheet is particularly important when in-house personnel are used to implement an Abatement Project and to clearly present the deductions taken for costs not allowed under the Procedures.

### 1. Year(s) of this Abatement Project

Include all years in which Abatement work under this project took place. For example, if a Renovation project took two years to complete, but all of the Abatement portion of the project was completed in a single year; list only the year in which the Abatement was performed.

### 2. Scope of Work Performed

Briefly summarize the work performed in this Abatement Project. The description should include the following types of information:

    a. Indicate the type(s) of Abatement performed (encapsulation, enclosure, or removal),

    b. Whether or not the ACM was replaced,

    c. The size of the project (the entire building, a wing of the building, or part of a large multi-building project), or

    d. Whether or not this Abatement Project is a part of a Renovation project.

### 3. Location of Abatement Work

List the Locations (1, 2, 3, or 4 from Section B) in the Building where this Abatement Project was performed.

### 4. Summary of this Abatement Project--NGC ACM Only

The table provided requests summary information from the Cost Documentation Worksheet for this Abatement Project. A PD Claim may have one or more Abatement Projects contributing to the costs being reported by the Claimant as Allowed Costs. **These costs are limited to the costs of Abatement of NGC ACM.**

Since a PD Claim may include costs for the encapsulation or enclosure of NGC ACM that is later removed, it is important to present and summarize the information in a way that can be readily understood by members of the PD Claims Facility staff. The staff will be entering the quantity and total cost of each Abatement Project into the facility's

database categorized by the type of Abatement being claimed as an Allowed Cost. The term "untreated" means that the NGC ACM has not been encapsulated nor enclosed prior to its removal.

## 5. Cost Documentation Worksheet Requirements

The goal of the Cost Documentation Worksheet is to provide a method for the Claimant to communicate to the PD Claims Facility staff the detailed information that supports Section D-1 and D-2. So that the staff can better understand how the various documents fit together to demonstrate the entire Abatement Project as a Claim, the following information should be provided on a Worksheet which details each contract or work order under which this Abatement Project was implemented:

5a. Name of Contractor
   If the Abatement work was performed with in-house personnel, so state.

5b. Cost Document Numbers
   Provide the Document Numbers from Section D-1 for this Abatement Project which relate to this contract or work that is performed by in-house personnel.

5c. Itemization of Costs
   List and describe all costs of this contract. Include the calculation of the proration or exclusion of costs related to the Abatement of non-NGC ACM and Costs not allowed under the NGCA Procedures. If a single contract or purchase order covered Abatement in more than one Building or in multiple Installations in a single Building or related to Renovations, surveys, maintenance and operation costs or other disallowed expenses; provide documentation to support the proration of Allowed Costs to this PD Claim. Documentation might include statements or affidavits from the contractor, architect, or other professional involved in the Abatement Project.

5d. Net Claim Amount for the Contract
   The total cost of this contract which the Claimant believes should be an Allowed Cost under the NGCA Procedures. These costs are summarized in the table in Section D-2 where the costs of all contracts that are a part of this Abatement Project are aggregated.

5e. Additional Information
   As shown on the Sample Cost Documentation Worksheets, this would include Date of Work and Scope of Work.

5f.  Linkage of Abatement Costs and Location of NGC ACM
     The Claimant is required to link the documented Abatement Costs for this
     Abatement Project to the Locations of NGC ACM for which documentation
     has been provided.

Sample Cost Documentation Worksheets are included as Attachment C to these
Instructions to assist the Claimant in organizing the information in a form that will be
easily understood by the PD Claims Facility staff.

**PD Claim Form--Section E**
**Claim Summary**

**The Claim Summary (Section E) is the aggregation of the Abatement Project Costs reported on one or more Cost Documentation Summaries (Section D-2) for this PD Claim.** The Claim Summary is the calculation of all Abatement quantity and cost for a particular installation of NGC ACM. The Cost Document Summary(ies) is the calculation of all Abatement quantity and cost for a particular Abatement Project. The Claim Summary is the actual PD Claim amount being filed for a particular installation of NGC ACM.

**The Claim Summary requires the aggregation of Abatement data by:**

**A. Total Quantity**
    The form asks for the Total Quantity in square feet of NGC ACM. It is <u>not</u> asking for the square footage of floor space.

**B. Locations**
    List the location numbers, where appropriate, for the various categories of Abatement Activity. Use the location numbers assigned in Section B.

**C. Past Actual Cost**
    List the aggregated Incurred Costs prior to March 9, 1993, where appropriate, for the various categories of Abatement Activity.

**D. Future Actual Cost**
    List the aggregated Incurred Costs after March 9, 1993 where appropriate for the various categories of Abatement Activity.

**The Claim Summary also requires the separate reporting of Abatement by:**

**1. Enclosed--Later Removed**
    This is limited to information for NGC ACM that was originally enclosed <u>and</u> then subsequently removed. The applicable cost for this line is only the cost of enclosure.

**2. Encapsulated--Later Removed**
    This is limited to information for NGC ACM that was originally encapsulated <u>and</u> then subsequently removed. The applicable cost for this line is only the cost of encapsulation.

**3. Total ACM Removed**
    This is the information for <u>all</u> NGC ACM from this particular installation that was removed. <u>This line includes previously enclosed and encapsulated NGC ACM as well as untreated NGC ACM that has been removed.</u>

Please calculate the **Allowed Cost Per Square Foot of Total ACM Removed.**

### 4. Enclosed--Remaining
This line asks for information regarding NGC ACM that has been enclosed but has <u>not</u> been removed. The applicable cost for this line is the cost of enclosure.

### 5. Encapsulated--Remaining
This line asks for information regarding NGC ACM that has been encapsulated but has <u>not</u> been removed. The applicable cost for this line is the cost of encapsulation.

### 6. Unabated--Remaining
This line asks for information regarding NGC ACM that has <u>not</u> been abated and remains in the Building. This line asks only for square footage of the NGC ACM and the Location.

### 7. Total To Be Removed--Remaining
This line asks only for the total square footage of remaining NGC ACM. This line, together with lines 4, 5, and 6, will be used for the calculation of Future Estimated Allowed Costs for those Claimants qualifying for such payments.

Please calculate the **Total Allowed Costs** for Column C and D by adding lines 1-5 in each column.

## PD Claim Form--Section F
### Future Cost Documentation

The Trustees, with the advice and concurrence of the PD TAC, have developed the twelve questions in Section F to obtain the information necessary to implement the model which will determine Future Estimated Allowed Costs for future Abatement of remaining NGC ACM. These costs are applicable for Claimants in Categories 1a and 2. All other PD Claims are based on Past Actual Costs or Future Actual Costs, as aggregated in Section E, or Pre-Petition Settlements (Category 1b). All questions must be answered even if the answer is zero (0). The clarity of the supporting documentation is important if the PD Claims Facility staff is to be able to understand the special circumstances involved in the future estimated Abatement Costs. The model will not be able to predict the exact cost of future abatement projects. It is designed as a rational and fair method of determining prospectively what those costs might be for purposes of distributing PD Claim Funds.

## PD Claim Form--Section G
### Certification

The Procedures require that each submitted PD Claim Form include executed certification. (Section III.D.1.a.) The individual authorized to submit the PD Claim Form on behalf of the Claimant is required to sign the Certification Form on the "By:" line and complete the remainder of the requested information.

# ATTACHMENT A

## "TYPE" CODES

| <u>Code</u> | <u>Document</u> |
|---|---|
| AFF | Affidavit |
| CRP | Consultant Report |
| CAR | Constituent Analysis Report |
| BSR | Bulk Sample Report |
| PUA | Purchase Orders |
| INV | Invoices or Bills |
| ASP | Architectural Specification |
| BID | Bid Documents |
| CON | Contract or Sub-Contract |
| CHO | Change Order |
| ADS | Advertisements |
| COM | Complaint to Contractor |
| NGD | National Gypsum Document or Record |
| INS | Insurance Claim |
| DEL | Delivery Ticket |
| VOU | Purchase of Delivery Voucher |
| DDC | Lawsuit Discovery Documents |
| APP | Abatement or Installation Contractor's Application for Payment |
| BLP | Blueprints or Floor Plans |
| SUR | Survey Reports |
| IHR | Industrial Hygienist Report |
| OTH | Other |

# ATTACHMENT B

## "TO SUPPORT" CODES

| Code | Document |
|------|----------|
| PID | Product Identification Evidence |
| IND | Installation Date |
| ACM | Material contains more than 1 % asbestos |
| HMA | Material is a single Homogeneous Area |
| REP | Sample(s) used for constituent analysis is/are representative |
| QUA | Quantity of ACM abated or remaining (Section VII) |
| LOC | Locations of ACM abated or remaining |

## ATTACHMENT C

## NGC PD CLAIM FORM WORKSHEET
## BREAKDOWN OF CONTRACT COSTS FOR ALLOWED NGC ACM

The following five pages are samples of actual supporting Cost Documentation Worksheets. These Worksheets provide sufficient information for the PD Claims Facility staff to understand the costs being claimed, net of deductions for costs not allowed under the Procedures.

Page 1 of Roosevelt Elementary shows an encapsulation job which was performed in-house by school personnel. The costs for this work were tracked by the school district. However, during the summer of 1983, the school district encapsulated acoustical plaster in both Roosevelt Elementary and Travis Junior High and the cost were not kept separately. Therefore, a breakdown between the two (2) schools was necessary.

Page 2 of Roosevelt Elementary shows a removal job in 5 classrooms performed during the Christmas break in 1983. Records of the contract removal cost are not available. However, the school district personnel installed the replacement ceiling and the cost for this replacement are included.

Page 3 of Roosevelt Elementary shows a removal job in the kitchen performed in July 1991. The removal contract included work other than the ceiling material and the contract cost was broken down on the basis of square footage. The replacement ceiling was installed by school district personnel. The school district personnel cost was tracked separately for this project. However, the material invoices were for materials for both this job and another job. As indicated, the material costs were broken down by Reese Fondren who is the asbestos coordinator for the school district.

Pages 1 and 2 of Galveston County Courthouse show the costs for all of the different contracts issued in conjunction with one (1) abatement job. The removal contractor cost was broken down in a document called a Construction Claim which was prepared by Galveston County personnel as a routine part of their job. The consultant contract included preparation of specifications and the inspection of both the Courthouse and the Courthouse Annex. The consultant cost was broken down on the basis of square footage.

# CALHOUN COUNTY ISD
# ROOSEVELT ELEMENTARY

ENCAPSULATION:

DATE OF WORK: June 18, 1983

SCOPE OF WORK: Encapsulate NGC ACM applied to ceilings at Roosevelt Elementary
and Travis Junior High Schools (Halls, Cafeteria, Rest Rooms)

CONTRACTOR:    Work was done in-house by school personnel

LABOR:

| | |
|---|---|
| Supervisor | $ 3,263.16 |
| 8 man crew | 23,040.00 |
| Total Labor for Encapsulation | $26,303.16 |

Note:  There was a total of 28,746 sq ft encapsulated in the 2 schools.  Roosevelt
Elementary has 21,306 sq ft or 74.12 % of the total.

| | |
|---|---|
| Prorated In-House labor | $ 19,495.90 |

MATERIALS:

| | |
|---|---|
| Sherwin Williams - Inv. #36459 | $ 1,148.03 |
| Sherwin Williams - Inv. #36475 | 2,725.72 |
| Sherwin Williams - Inv. #40113 | 306.72 |
| Total Materials for Encapsulation | $ 4,180.47 |

Note:  There was a total of 28,746 sq ft encapsulated in the 2 schools.  Roosevelt
Elementary has 21,306 sq ft or 74.12 % of the total.

| | |
|---|---|
| Prorated material cost | $ 3,098.56 |

2

ABATEMENT:

DATE OF WORK:   December 31, 1983

SCOPE OF WORK:   Remove NGC ACM from 5 classrooms (112,113,114,212,213)

CONTRACTOR:
        Total Contract Amount

CONSULTANT:
        Total Contract Amount

AIR MONITORING
        Total Contract Amount

SCOPE OF WORK:   Install suspended ceiling after removal of NGC ACM material.

CONTRACTOR:       Work was done in-house by school personnel.

| | |
|---|---|
| Labor | |
| 4 man crew - 5 classrooms | $ 2,880.00 |
| Total Labor | $ 2,880.00 |
| Material | $ 2,500.00 |
| Suspended ceiling components | $2,500.00 |
| Total Material | $2,500.00 |
| Total Expense for Replacement Ceiling | $5,380.00 |

Total replacement ceiling cost                    $ 5,380.00

ABATEMENT:

DATE OF WORK:   July 26, 1991

SCOPE OF WORK:   Remove NGC ACM - Kitchen

CONTRACTOR:   J & J Insulation and Acoustics, Inc.

      P.O. # 8610 dated 5/26/91
      Inv # 069107 dated 6/27/91          $ 7,150.00
      Ck # 14151 dated 7/26/91 - $ 81,760.00
         (includes Inv # 069107)

           Total applicable removal cost      $ 4,770.00

NOTE: Breakdown per letter dated 8/14/91 from J & J Insulation. The ceiling material represented 67 % of the abatement costs. The consultant cost is prorated on this same percentage.

CONSULTANT:         Greenleaf Labs, Inc.

      Inv # GL91050703,001 dated 7/3/91     $ 2,750.00
      P.O. # 8461 dated 7/16/91
      Ck # 14168 dated 7/26/91  -  $ 13,050.00

           Prorated consultant cost        $ 1,842.50

MISC. EXPENSE:   In-House

      Remove Equipment - Pay Journal     $ 573.84
      Install Suspended Ceiling - Labor     692.80
      Reinstall Equipment - Pay Journal     642.20

      Total Labor Expense          $ 1,908.84

      Austin Acoustical Materials, Inc.
      Inv # 39450 dated 6/28/91        $ 886.98
      Inv # 39463 dated 7/1/91         85.92
      P.O. # 8469 dated 7/17/91

Total Material Expense         $972.88

Prorated ceiling material expense     $ 623.30

NOTE: All replacement ceiling material was not used at Roosevelt Elementary. Reese Fondren prorated the material invoices.

           Total In-House Expense      $ 2,532.14

4

# GALVESTON COUNTY
# COUNTY COURTHOUSE

ENCAPSULATION:

DATE OF WORK:   None

ABATEMENT:

DATE OF WORK:   September 30, 1988

SCOPE OF WORK:   Remove NGC ACM in Tax Office area on 1st floor, 1,169 sq ft
and in Room 210 on 2nd floor, 879 sq ft

REMOVAL CONTRACTOR:        Certified Abatement Systems, Inc.
    Payments to contractor

    Claim # 102392 - dated 9/7/88                    $ 32,728.80
    Ck # 101691 - dated 9/12/88

    Total payments to contractor

NOTE:The County Engineering Department prepared a breakdown of the removal cost in
a document called a Construction Claim. The costs below are from this document
and are applicable to the removal of the ceiling material.

    Costs applicable to ceiling removal

    Tax Office - 1st floor            $16,387.20
    Data Processing - 2nd floor        12,000.00

    Total cost applicable to ceiling   $28,387.20
    removal
        Total removal contractor cost              $28,387.20

GENERAL CONTRACTOR:  Rourke Plastering Company, Inc.
    Payments to General Contractor

    Inv. # 1831 - dated 9/12/88       $4,982.00
    Ck # 102248 -dated 9/26/88

    Total Payments to General
    Contractor cost                   $4,982.00

    Total general contractor cost              $4,982.00

NOTE:Invoice # 1831 from the general contractor was for the re-insulation and
installation of suspended ceilings in the 1st floor Tax Office.

5

HVAC CONTRACTOR:  Moore-Climatic, Inc.

> Payments to HVAC Contractor
> Inv. - dated 8/22/88                         $ 516.00
> Ck # 101133 - dated 8/29/88
>
> Inv. # 2109 - dated 12/17/88               2,850.00
> Ck # 105361 - dated 11/25/88 .

Total Payments to HVAC Contractor         $ 3,366.00

> Total HVAC contractor cost                        $755.00

NOTE:The proration of the HVAC Contractor expenses are from a Memo dated December 22, 1988.
The memo is from Tom Kessler to the County Judge and Commissioners Court.

ELECTRICAL CONTRACTOR:  Galatex Electric
> Inv. # 20975 - dated 9/27/88           $3,420.00
> Claim # 103846/2 - dated 8/28/88
> Ck # 102925 - dated 10/10/88
>
> Total cost for electrical contractor     $ 3,420.00
>
> Total electrical contract                        $ 3,420.00

CONSULTANT:       McClelland Management Services, Inc.
> Payments to Consultant
> Inv. # 1154-01 - dated 6/21/88          $5,674.23
> Ck # 98292 - dated 7/18/88

NOTE:This invoice was for the inspection and preparation of specifications for both the Courthouse and
Annex. The Courthouse removal was $ 32,728.80 of a total cost of $88.813.80. This represents
36.85 % of the cost.

Cost applicable to the Courthouse removal
> Inv. # 1154-01 - $5,674.23 - 47.56 % $2,698.66
> Inv. # 1154-03 - dated 10/31/88         7,691.22
> Inv. # 1154-04 dated 10/31/88              556.00
> Ck # 105071 dated 11/21/88
>
> Total Payments to Consultant      $ 10,945.88
>
> Total consultant cost                        $ 9,493.87

NOTE:The courthouse removal included acoustical plaster and ceiling tile. The acoustical plaster
was 86.73 % of the total contract cost. The consultant cost is prorated using this
percentage.