# EXHIBIT 4

THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE CO., *et al.*, | ) | Case No. 01-01139 (27) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## DEBTORS' CONSOLIDATED REPLY IN SUPPORT OF THEIR MOTION FOR ENTRY OF CASE MANAGEMENT ORDER, ESTABLISHMENT OF A BAR DATE, APPROVAL OF THE CLAIM FORMS AND APPROVAL OF THE NOTICE PROGRAM

Dated: November 9, 2001

KIRKLAND & ELLIS
David M. Bernick
James H.M. Sprayregen
Andrew R. Running
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000
(312) 861-2200 (fax)

PACHULSKI, STANG, ZIEHL, YOUNG
& JONES P.C.
Laura Davis Jones
David Carickhoff
Hamid Rafatjoo
919 North Market Street, 16th Floor
Wilmington, Delaware 19801
(302) 652-4100
(302) 652-4400 (fax)

Co-Counsel for the Debtors and
Debtors in Possession

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................... v

SUMMARY .................................................................. 1

ARGUMENT ................................................................ 7

I.  THERE IS NO SERIOUS DISPUTE THAT THE ASBESTOS CLAIMS
    AGAINST GRACE SPUN OUT OF CONTROL BEFORE THIS CASE WAS
    FILED. .................................................................. 7

    A.   There Is No Explanation — Grounded Either In Medicine Or In
         Grace's Liability — For The Recent Spike In Claims Against
         Grace. ............................................................. 8

    B.   Grace's Analysis Of The 1997 And 2000 Claims Further Confirms
         The Need For Litigation To Define Grace's Liability. ................... 11

         1.   The Vast Majority Of The Claims Provide No Evidence Of
              Impairment. ................................................... 12

         2.   Most Claims Fail To Establish Exposure To Grace's
              Products. ..................................................... 13

II. ESTIMATION CANNOT DEFINE GRACE'S LEGAL LIABILITY AND WILL
    IMPEDE RATHER THAN ADVANCE THIS CASE. ........................... 17

    A.   Estimation Based On Historical Settlements Can Never Address
         Legal Liability, And It Will Perpetuate The Problems This Case
         Must Resolve. ..................................................... 17

    B.   Estimation Without Litigation Is Futile: Estimation Cannot Be
         Used To Cramdown On Equity Where Liability Is Contested. ............. 20

    C.   The Committees Misinterpret § 524(g) Of The Bankruptcy Code. .......... 22

    D.   The PI Committee's Promise To Expedite This Case Is Less Than
         Forthright. ....................................................... 23

TABLE OF CONTENTS (Continued)

Page

III.   THE LITIGATION PROTOCOL PROPOSED BY GRACE IS FOCUSED.
       LEGALLY SOUND AND MANAGEABLE. ............................... 26

   A.   ZAI: The PD Committee's Effort To Create A Whole New Area
        Of Liability Rests And Falls On Common Issues. ........................ 26

        1.   *Daubert* Proceedings Should Be Used To Determine
             Whether There Is Reliable Scientific Evidence
             Demonstrating that ZAI Poses An Unreasonable Risk. .............. 28

        2.   A Finding Under *Daubert* That Claimants Lack Reliable
             Scientific Evidence Demonstrating ZAI Risk Would Be
             Dispositive Of ZAI Property Claims. ........................... 29

             a.   Product Defect ....................................... 29

             b.   Causation .......................................... 31

             c.   Economic Loss ....................................... 31

        3.   Grace Has Proposed A Straightforward Litigation Protocol
             For ZAI Claims. ............................................ 32

   B.   MK-3 Property Damage Claims:  Again There Are Threshold
        Liability Issues. ................................................ 34

        1.   The Statute Of Limitations .................................... 35

        2.   Product Defect, Causation And Economic Loss ................... 37

        3.   Grace Has Proposed A Straightforward Litigation Protocol
             For MK-3 Property Damage Claims. ............................ 38

   C.   Personal Injury Claims:  Many Claims Fail To Meet Basic Legal
        Requirements. ................................................. 39

        1.   Certain Legal Requirements Are Suitable For Adjudication
             On A Common Basis. ........................................ 39

             a.   Product Identification And Product Exposure ............... 39

             b.   Exposure Sufficient To Cause Disease ..................... 41

**TABLE OF CONTENTS** (Continued)

Page

    c.    Lack Of Compensable Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

    d.    Claims Supported By Unreliable Diagnostic Data Cannot
        Survive *Daubert* Scrutiny . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

    2.    Grace Has Proposed A Straightforward Litigation Protocol
        For Personal Injury Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

IV.    THE OBJECTIONS TO THE LITIGATION PROTOCOL
    MISCHARACTERIZE PRIOR ASBESTOS BANKRUPTCY CASES AND
    MISSTATE GRACE'S POSITIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

    A.    The Issues Here Are Not Too Individual For Common Resolution,
        And Grace Has Never Argued To The Contrary. . . . . . . . . . . . . . . . . . . . . . . . 56

    B.    The Proposed Protocol Is Neither Unprecedented Nor
        Impermissibly Novel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

    C.    The PI Committee's Argument That Each Claimant Is Entitled To
        His Own Counsel Misses The Mark. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

    1.    Grace's Proposal Does Not Preclude Participation By
        Counsel For Claimants Who Are Not On The Committee. . . . . . . . . . . 62

    2.    Proceedings In Babcock & Wilcox Confirm That The
        Committee Approach Works. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

    D.    Debtors Do Not Oppose Appointment Of A Futures
        Representative. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

V.    THE PROPOSED NOTICE PLAN COMPLIES WITH DUE PROCESS AND IS
    REASONABLE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

    A.    The Objections To The Plan Wrongly Presume That The Notice
        Should Educate And Warn. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

    B.    Concerns With Respect To The Specific Content Of The Bar Date
        Notices Have Been Addressed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

    C.    The Notice Plan Effectively Reaches Potential Claimants. . . . . . . . . . . . . . . . . 70

# TABLE OF CONTENTS (Continued)

Page

VI.   THE PROPOSED PROOF OF CLAIM FORMS ARE NECESSARY AND
      APPROPRIATE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

      A.    The Personal Injury Claim Form Asks For Necessary Information
            And Is Not Unreasonably Burdensome. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

            1.    Prior Cases Provide Ample Support For Grace's Tailored
                  Requests. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

            2.    The Requests For Medical Information Are Reasonable. . . . . . . . . . . . . 79

            3.    The Requests For Exposure Information Here Are
                  Necessary And Are Not Unreasonably Burdensome. . . . . . . . . . . . . . . . 80

      B.    The Property Damage And ZAI Proof Of Claim Forms Are
            Appropriate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81

      C.    The Non-Asbestos Proof Of Claim Form, Definitions And
            Instructions Have Been Modified Slightly. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83

## TABLE OF AUTHORITIES

Page(s)

### Cases

*ACandS, Inc. v. Abate,*
    710 A.2d 944 (Md. Ct. Spec. 1998), *cert. denied,* 713 A.2d 979 (1998) . . . . . . . . . . . . 46

*Acuna v. Brown & Root, Inc.,* 200 F.3d 335 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

*Adams-Arapahoe Sch. Dist. v. GAF Corp.,*
    959 F.2d 868 (10th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Allen v. Pennsylvania Eng'g Corp.,*
    102 F.3d 194 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Amendola v. Kansas City Southern Railway Co.,*
    699 F.Supp. 1401 (W.D. Mo. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Barbanti v. W.R. Grace & Co.-Conn.,*
    No. 00201756-6 (Spokane Cty., Wash. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 66-68

*Barrett v. Atlantic Richfield Co.,*
    95 F.3d 375 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Belton v. Fibreboard Corp.,*
    724 F.2d 500 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Bernier v. Raymark Industries, Inc.,*
    516 A.2d 534 (Me. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Burns v. Jaquays Mining Corp.,*
    752 P.2d 28 (Ariz. App. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 48

*Carlough v. Amchem Products,*
    158 F.R.D. 314 (E.D. Pa. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68, 70

*Central Wesleyan College v. W. R. Grace,* 2:84-1860-8 (D.S.C.) . . . . . . . . . . . . . . . . . . . . . 68, 81

*Cimino v. Raymark Indus.. Inc.,*
    151 F.3d 297 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 57-59

*Cinnaminson Township Bd. of Educ. v. National Gypsum Co.,*
    Civ. No. 80-1842 (AET), 1989 WL 5820 (D.N.J. Jan. 25, 1989) . . . . . . . . . . . . . . . . . . 30

## TABLE OF AUTHORITIES (Continued)

Page(s)

*In re Air Crash Disaster at Florida Everglades on December 29, 1972,*
    549 F.2d 1006 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*In re Allegheny Int'l, Inc.,*
    954 F.2d 167 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*In re Amdura Corp.,*
    170 B.R. 445 (D. Colo. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65, 66

*In re Asbestos Litigation,*
    No. 87-09-24, 1994 WL 721763 (Del. Super. June 14, 1994),
    *rev'd on other grounds,* 670 A.2d 1339 (Del. Super. Ct. 1995) . . . . . . . . . . . . . . . . . . . . 46

*In re Asbestos School Litigation,*
    No. 83-0268 (E.D. Pa) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

*In re Bendectin Litig.,*
    857 F.2d 290 (6th Cir.1988), *cert. denied,* 488 U.S. 1006 (1989) . . . . . . . . . . . . . . . . . . 34

*In re Beverly Hills Supper Club Fire Litig.,*
    695 F.2d 207 (6th Cir. 1982), *cert. denied,* 461 U.S. 929 (1983) . . . . . . . . . . . . . . . . . . 34

*In re Bonham,*
    251 B.R. 113 (Bankr. D. Alaska 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*In re Canvas Specialty, Inc.,*
    No. LA 00-33180, 2001 WL 336463 (Bankr. C.D. Cal. Mar. 28, 2001) . . . . . . . . . . . . . 33

*In re Consumers Realty & Dev. Co.,*
    238 B.R. 418 (8th Cir. B.A.P. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*In re Diet Drugs (Phentermine, Fenfluramine, Dexenfluramine) Prods. Liab. Litig.,*
    1999 WL 387322 (E.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

*In re Domestic Air Transportation Antitrust Litigation,*
    141 F.R.D. 534 (N.D. Ga. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70, 73

*In re Dow Corning Corp.,*
    194 B.R. 121 (Bankr.E.D.Mich. 1996),
    *rev'd on other grounds,* 212 B.R. 258 (Bankr.E.D.Mich. 1997) . . . . . . . . . . . . . . . . . . . 62

## TABLE OF AUTHORITIES (Continued)

Page(s)

*In re Dow Corning Corp.*,
215 B.R. 526 (Bankr. E.D.Mich.1997) ........................................ 19

*In re Dow Corning Corp.*,
237 B.R. 364 (Bankr. E.D. Mich. 1999) ...................................... 33

*In re Dow Corning Corp.*,
250 B.R. 298 (Bankr. E.D. Mich 2000) ...................................... 18

*In re Dow Corning*, 211 B.R. 545 (Bankr. E.D. Mich. 1997) ............ 18, 21, 24, 34, 59, 60

*In re Federal-Mogul Global Inc.*,
Case No. 01-10578 (Bankr. D. Del. Oct. 1, 2001) ........................... 29, 61

*In re Fibreboard Corp.*,
893 F.2d 706 (5th Cir. 1990) .............................................. 34, 58

*In re Food Lion, Inc.*,
1998 WL 322682 (4th Cir. 1998) ........................................... 75

*In re Harrison*,
987 F.2d 677 (10th Cir. 1993) ............................................. 32

*In re Hawaii Federal Asbestos Cases*,
734 F.Supp. 1563 (D. Haw. 1990) ......................................... 46

*In re Husting Land & Dev., Inc.*,
255 B.R. 772 (Bankr. D. Utah 2000) ....................................... 33

*In re Japanese Elec. Prods. Antitrust Litig.*,
723 F.2d 238 (3d Cir. 1983). *rev'd on other grounds sub nom.*
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
471 U.S. 1002 (1985) ..................................................... 18

*In re Keene Corp.*,
188 B.R. 903 (Bankr. S.D. N.Y. (1995) ..................................... 65

*In re Latex Gloves Prods. Liab. Litig.*,
MDL Docket No. 1148 (E.D. Pa.) ......................................... 75

*In re Love Canal Actions*,
547 N.Y.S.2d 174, 177 (N.Y. Super. 1989) ................................. 76

## TABLE OF AUTHORITIES (Continued)

Page(s)

*In re Minnesota Personal Injury Asbestos Cases,*
481 N.W.2d 24 (Minn. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

*In re New York City Asbestos Litig.,*
142 F.R.D. 60 (E.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

*In re Nissan Motor Corp. Antitrust Litig.,*
552 F.2d 1088 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67, 69

*In re Orthopedic Bone Screw Prod. Liab. Litig.,*
1995 WL 925678 (E.D. Pa. Feb. 1, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

*In re Orthopedic Bone Screw Prods. Liab. Litig.,*
1997 WL 704702 (E.D. Pa. Aug. 22, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

*In re Paoli R.R. Yard PCB Litig.,*
113 F.3d 444 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*In re Paoli R.R. Yard PCB Litigation,*
35 F.3d 717 (3d Cir.1994),
*cert. denied sub nom General Elec. Co. v. Ingram,*
513 U.S. 1190 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*In re Penn Central Transp. Co.,*
771 F.2d 762 (3d Cir. 1985), *cert. denied,* 474 U.S. 1033 (1985) . . . . . . . . . . . . . . . . . . 66

*In re The Babcock & Wilcox Co.,* Case No. 00-0558 (E.D. La.),
Aug. 25, 2000 Order and Reasons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 77

*In re The Babcock & Wilcox Co.,* Case No. 00-0558 (E.D. La.),
September 21, 2001 Order and Reasons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re The Babcock & Wilcox Co.,* No. 00-10992 (Bankr. E.D. La. Feb. 22, 2000) . . . . . . . . 18, 19

*In re The Babcock & Wilcox Co.,* No. CIV. A. 00-0558, 2000 WL 422372,
at *4 (E.D. La. Apr. 17, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re USG Corp.,*
Case No. 01-2094 (Bankr. D. Del. June 25, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

*Johnson v. Celotex Corp.,*
899 F.2d 1281 (2d Cir. 1990), *cert. denied,* 498 U.S. 920 (1990) . . . . . . . . . . . . . . . . . . 59

TABLE OF AUTHORITIES (Continued)

Page(s)

*Lore v. Lone Pine Corp.,*
No. L-33606-85 (N.J. Super. Ct. 1986) ................................... 75, 76

*Magistrini v. One Hour Martinizing Dry Cleaning,*
109 F. Supp. 2d 306 (D. N.J. 2000) ....................................... 31

*Marshall v. Celotex Corp.,*
651 F. Supp. 389 (E.D. Mich. 1987) ...................................... 39

*Martinez v. City of San Antonio,* 40 S.W.3d 587 (Tex. Ct. App. 2001) .................... 76

*Metropolitan St. Louis Equal Housing Opp'y Council v. Gordon Gundaker Real Estate Co.,*
130 F.Supp.2d 1074, 1082-83 (E.D. Mo. 2001) ............................. 49

*Metro-North Commuter Railroad Co. v. Buckley,*
521 U.S. 424 (1997) ..................................................... 47

*Mitchell v. Gencorp.,*
165 F.3d 778 (10th Cir. 1999) ........................................... 42

*Moore v. Ashland Chemical Co.,*
151 F.3d 269 (5th Cir. 1998) *(en banc), cert. denied,* 526 U.S. 1064 (1999) ......... 42

*Mullane v. Central Hanover Bank & Trust Co.,*
339 U.S. 306 (1950) ..................................................... 65, 70

*New Jersey Turnpike Authority v. PPG Indus., Inc.,*
16 F.Supp.2d 460 (D.N.J. 1998) ......................................... 18

*Outlaw v. Keene Corp.,*
No. 88-9490 1990 U.S. Dist. LEXIS 1245, at *3-4 (E.D. Pa. Feb. 5, 1990) ......... 40

*Owens-Corning Fiberglass Corp. v. James,*
646 So.2d 669 (Ala. 1994) ............................................... 59

*Owens-Corning v. Bauman,*
726 A.2d 745 (Md. App.), *cert. denied,* 731 A.2d 970 (1999) .................... 46

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.,*
998 F.2d 1224 (3d Cir.), *cert. denied sub nom.,*
*Moyer Packing Co. v. Petruzzi's IGA Supermarket, Inc.,*
510 U.S. 994 (1993) ..................................................... 18

## TABLE OF AUTHORITIES (Continued)

Page(s)

*PGH Int'l v. Gabor Shoes AG (In re PGH Int'l.),*
   222 B.R. 401 (Bankr. D. Conn. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,*
   507 U.S. 380 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

*Privest Properties, et al. v. The Foundation Company of Canada et al., C884875* . . . . . . . . . . 71

*Prudential Insurance Co. of America v. United States Gypsum Co.,*
   146 F. Supp. 2d 643 (D.N.J. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37

*Raymark Indus., Inc. v. Stempel,*
   No. 88-1014-K, 1990 WL 72588, * 7 (D. Kan. May 30, 1990) . . . . . . . . . . . . . . . . . . . . 51

*Richardson-Merrell, Inc. v. Koller,*
   472 U.S. 424 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

*Richison et al. v. American Cemwood Corp. et al.,*
   No. 5532 (Sup. Ct. San Joaquin Cty, CA. May 26, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 66

*Schweitzer v. Consolidated Rail Corp.,*
   758 F.2d 936 (3d Cir. 1985), *cert. denied,* 474 U.S. 864, 106 St. 183 (1985) . . . . . . 47, 48

*Simmons v. Pacor, Inc.,*
   674 A.2d 232 (Pa. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Sterling v. Velsicol Chem. Corp.,*
   855 F.2d 1188 (6th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

*Taylor v. Owens-Corning Fiberglas Corp.,*
   666 A.2d 681 (Pa. Super. Ct. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Thompson v. Johns-Manville Sales Corp.,*
   714 F.2d 581 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Vancouver Women's Health Collective Society v. Robbins Company, Inc.,*
   820 F 2d 1359 (4th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

*Vigiolto v. Johns-Manville Corp.,*
   643 F. Supp. 1454 (W.D. Penn. 1986), *aff'd,* 826 F.2d 1058 (3d Cir. 1987) . . . . . . . . . 39

## TABLE OF AUTHORITIES (Continued)

Page(s)

*Weinberger v. Kendrick,*
698 F. 2d 61 (2d Cir. 1982) .................................................. 67

*Wright v. Eagle-Picher Indus., Inc.,*
565 A.2d 377 (Md. 1989) ................................................... 47

*Wright v. Willamette Indus., Inc.,*
91 F.3d 1105 (8th Cir. 1996) ............................................... 42

### Statutes and Rules

11 U.S.C. § 1102(a)(1) ..................................................... 62

11 U.S.C. § 1129(b) ....................................................... 20

11 U.S.C. § 524(g) ................................................ 3, 17, 22, 23

40 C.F.R. § 61.141 ........................................................ 26

40 C.F.R. § 763.83 ........................................................ 26

Bankruptcy Reform Act of 1994,
Pub. L. No. 103-394, § 111(b), 108 Stat. 4107 (1994) ........................ 22

Cal. Code Civ. Pro. § 338 .................................................. 36

D.C. Code Ann. § 12-301 ................................................... 36

FED. R. CIV. P. 11(b)(3) .................................................... 76

Federal Rule of Evidence 408 ............................................... 17

Federal Rule of Evidence 706 ......................................... 3, 52, 54

N.Y. C.P.L.R. § 214-c ...................................................... 36

## TABLE OF AUTHORITIES (Continued)

Page(s)

### Other Authorities

*4 Collier on Bankruptcy*, § 524.07[2], at 524-44, 524-45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*7 Collier on Bankruptcy* ¶ 1129.04[4][a] at 1129-89 to 1129-90
    (15th ed. Revised, 1999) (citing  H.R. Rep. 595, 95th Cong. 1st Sess. 414 (1977) . . . . 21

*9 Collier on Bankruptcy* ¶ 3001.09[2] at 3001–26 (15th ed. revised) . . . . . . . . . . . . . . . . . . . . 32

9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2384 (1995) . . . . . . . . . . . . . . . 60

Frank Macchiarola,
    *The Manville Personal Injury Settlement Trust: Lessons for the Future,*
    17 Cardozo L. Rev. 583 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

James A. Henderson, Jr. & Aaron D. Twerski,
    *Closing the American Products Liability Frontier,*
    66 N.Y.U. L. Rev. 1263 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

PROSSER & KEETON ON TORTS § 103, at 713 (5th ed. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

PROSSER & KEETON ON TORTS § 30, at 165 (5th ed. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

RESTATEMENT (THIRD) OF TORTS, *Prod. Liab.* § 2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## SUMMARY

The only vision the tort committees offer for this case is an "estimation" that statistically extrapolates from the very mass claiming process that forced Grace into bankruptcy in the first place.[1] Their approach would replace the adjudication of Grace's legal liability with a presumption of liability based on prior settlements, thereby abandoning the rules of procedure and evidence that are at the heart of civil jurisprudence and that the Bankruptcy Code specifically adopted for resolving disputed liability in Chapter 11. The result the claimants seek is obvious: a Chapter 11 proceeding that protects the *status quo* and does nothing to define Grace's actual liability. By contrast, Grace's proposed Case Management Order calls for the application of bread-and-butter federal procedure to resolve core issues that lie at the heart of disputed claims – and are responsible for the mushrooming crisis in asbestos litigation. There is no credible alternative to the CMO.

The Debtors are mindful of the length of this reply brief, but we have tried to be comprehensive in responding to the Court's request for a proposal and want now to respond to all significant issues. Here is the roadmap for the brief:

[1] Committees that have filed briefs are: (1) Response and Memorandum of the Official Committee of Asbestos Property Damage Claimants in Opposition to Debtor's Motion for Entry of Case Management Order, Establishment of a Bar Date, Approval of the Proof of Claim Forms and Approval of the Notice Program; Exhibits A - E ("PD Cmte. Brf."); (2) Opposition of the Official Committee of Asbestos Personal Injury Claimants to Debtors' Motion for Entry of Case Management Order, Establishment of a Bar Date, Approval of the Proof of Claim Forms and Approval of Notice Program; Exhibits A (1 -4) and B - F ("PI Cmte. Brf."); (3) Zonolite Plaintiffs' Objection to Debtors' Motion for Entry of Case Management Order, Establishment of Bar Date, Approval of Proof of Claim Forms and Approval of Notice Program (Docket No. 536): Motion to Extend the Time to Object or Respond to Such Motions: Joinder in Motion for Continuance by Official Committee of Asbestos Property Damage Claimants; Independent Motion to Continue the Hearing on Debtors' Motion; and Request for Consideration and Briefing Regarding Class Treatment; and (4) Medical Monitoring Claimants' Objection to Debtors' Motion for Entry of Case Management Order, Establishment of Bar Date, Approval of Proof of Claim Forms and Approval of Notice Program (Docket No. 536): Joinder in the Motions for Continuance and Motion for Continuance; and Request for Consideration and Briefing Regarding Class Treatment.

Part I brings the Court up to date on the historical predicate for this case – the absence of any legal or medical explanation for the surge of asbestos claims against Grace. The tort committees utterly fail to provide such an explanation, and instead purport to account for the claims spike as a PR phenomenon brought about by media coverage of the controversy surrounding the Libby mine. Even if true, this is no legal/medical justification for the claims. But the Libby explanation is, in any event, belied both by the fact that the new wave of claims is not unique to Grace and by Grace's claims data. A recent analysis of that data shows:

- More than 30% of the year 2000 claims present so little information that a medical condition cannot even be determined.

- Less than 6% of claims involved actual malignancy.

- Only 3.3% of non-malignant claims contain diagnostic data showing even mild impairment.

- Half of the claims reflect no exposure information at all.

- Only 12% of the claims were filed by workers in the construction industry, which Grace supplied.

Part II deals with the tort committees' Trojan horse: estimation. Billed as a would be time-saver, the estimation advocated by the committees has been adopted by agreement in many cases as a tool for predicting the cost (and thereby determining the feasibility) of executing consensual plans. But here it is proferred for a different, truly remarkable purpose – as a **_substitute_** for the determination of actual legal liability. Specifically:

- **Rules of liability are discarded.** The proposed estimation throws the rules of evidence out the door (in particular, the bedrock prohibition against inferring liability from settlement) and discards wholesale the core bankruptcy process of claim objection and disallowance.

- **Resolution of this case will be impeded not advanced.** The lure of expediting the resolution of this case by leapfrogging liability and proceeding directly to a cramdown on equity is illusory because a dispute over liability cannot be swept

under the rug via cramdown – claimants cannot simply vote to pay themselves more than what their claims are worth.

- **Section 524(g) is not preclusive.** Section 524(g) is a new option for obtaining complete closure for asbestos bankruptcies. but it does not. as the Committees suggest, strip the Debtor of its liability defenses.

More generally, the tort committees never address the contentious nature of estimation or the fact that, until liability is resolved, estimation simply puts the cart before the horse.

Parts III and IV turn from estimation to the CMO proposal now before the Court. Part III describes in more detail the common issues that provide a path through the proliferation of claims against Grace in recent years. In each of the three major areas of litigation against Grace, the issues are amenable to a straightforward case management protocol. To the extent that scientific issues need to be scrutinized under *Daubert* or on the merits. a panel of experts can be appointed by the Court under Fed. R. Evid. 706, as was done in the breast implant litigation. In a nutshell, the issues to be addressed are as follows:

- **ZAI Litigation.** The Property Damage Committee's mission to find yet new liability for attic insulation containing trace amounts of asbestos turns on whether there is any reliable science establishing that the insulation poses an unreasonable risk. Absent supporting science that meets *Daubert* requirements. there is no claim. The outcome of preliminary injunction litigation in Washington State last year concerning this insulation is instructive here -- even setting aside *Daubert* (because the case was prosecuted in state court), the science presented by the *Barbanti* claimants was insufficient to show a likelihood of success on the merits, and the injunction was denied.

- **Property Claims for Spray-on Insulation.** Common issues also have emerged from the substantial record of traditional property damage litigation concerning commercial spray-on insulation (Monokote-3). While the issues of risk to commercial building occupants and notice to their owners have been litigated repetitively in these cases. mature science and well-established constructive notice should now enable the Court to decide the issues of product defect and the statute of limitations generically.

- **Bodily Injury.** The most pressing need for common issue litigation obviously arises from the onslaught of personal injury claims. The candidate issues are just as

obvious:  1) Product identification:  Claim volume has grown against many companies because all claims are put improperly to every company regardless of whether there is any evidence of exposure to a particular company's product; 2) Causation: Exposure to one fiber is not enough to get a claim past *Daubert* Rather, claimants must demonstrate the sufficiency of dose from Grace products to cause disease; and 3) Diagnosis of injury: Injury has been an essential element of tort liability since the beginning of common law, and *Daubert* can be used to assure that there is reliable medical support for a claim of injury.

Against the backdrop of these proposed common issues, Part IV addresses each of

the four specific objections made to the CMO. It demonstrates that:

- **Precedents Support the Proposed CMO.** Finally, the Committees' declaration that the procedures needed here to define Grace's liability are "unprecedented" is an effort to preserve a *status quo* that is strategically advantageous to claimants but fundamentally wrong. The effort fails because the CMO does no more than call for application of the Federal Rules of Civil Procedure and Evidence. While the parties in old-style bankruptcies agreed to forego litigation, leaving liability undefined (*Manville, UNR, Eagle Picher*), this is not "precedent" that precludes following the rules. Indeed, those same bankruptcies have now become precedent *supporting* the approach proposed here: the trusts formed without a meaningful definition of the debtor's liability have been swamped with claims and forced to cut payouts to deserving claimants. And there is more precedent. Beginning with *Dow Corning* (breast implants) and extending to *Babcock & Wilcox* (asbestos), more recent cases have focused on determining liability as a threshold matter. Very recent filings by *Federal Mogul* and *USG* in this Court reflect an intention to follow the same path.

- **Grace's Historical Objection to Class Litigation Is Irrelevant.**  This section responds to and disposes of the "gotcha" contention that Grace's prior opposition to class certification somehow dooms its current proposal for common issue litigation. Rule 23 is not the only vehicle for common issue litigation. Class actions should not be pursued if common issues do not predominate over individual issues, and they do not predominate here. But common issues always can be decided under Rule 42 in order to streamline litigation.

- **No Extrapolation Is Necessary.**  By the same token, turning to another objection, common issue litigation does not require the extrapolation found constitutionally deficient by the Fifth Circuit in *Cimino*.  The problem in *Cimino* was the use of extrapolation to find liability to individual claimants, not the litigation of issues that were common to begin with.

- **The Right to Counsel Is Not Jeopardized.**  The further complaint that the right to separate counsel means that each claim must be litigated separately also fails – the

Court easily can protect both the right to counsel and the need to avoid repetitive litigation of the same issues.

Parts V and VI turn to the tools of common issue litigation in Chapter 11, *i.e.*, the bar date, notice and claim forms. These procedures are unique to Chapter 11 and, when deployed in connection with Rules 56 and 42, create a simple and effective vehicle for litigating common issues once and decisively. The objections made to the adequacy of the proposed multi-million dollar notice program and the burden associated with the claim form raise implementation questions only, not problems that can or should cast any doubt upon the wisdom of the CMO's central purpose. And those implementation issues have been addressed as well:

- **The Notice Program.** The notice program has been carefully reviewed and revised to accommodate all specific concerns raised by the PD Committee. The Committee's broader contention that the notice should educate and warn the public regarding the claims against ZAI is wrong as a matter of law. Giving notice does not require addressing the merit of the claims being made.

- **The Claim Forms.** The claim form is the key to the common issue litigation because it provides the factual nexus between the common issues, on the one hand, and each particular claimant, on the other. Each element of the proposed forms relates directly to a common issue. Absent use of such forms, aggregated litigation could not proceed – which is precisely why the bodily injury claimants attack the forms so assiduously. Not only have similar forms been used both in and outside of Chapter 11, but the most that the PI Committee can say is that three hours is too much to ask of a claimant in the prosecution of his claim at this stage of the case (but not, interestingly, too much to ask when the claim is to be paid). Three hours would not be unduly burdensome even in an individual case, but the burden argument is simply frivolous when the only alternative is case-by-case litigation of thousands of claims. Moreover, the form seeks the kind of information that a responsible attorney should have in hand before filing a lawsuit asserting a company is liable.

In the end, the Debtors have carefully laid out the only path for this case if Chapter 11 is to provide any real solution to Grace's asbestos liability problem. It is a path that brings to bear the basic rules of evidence and procedure that are adopted in the Code. No extension of the law is necessary, and none is advocated. The only real response from the Committees is to argue for

abrogation of the entire concept of legal liability in service of their fervent desire to have this case governed, as the Debtor was governed before this case was filed, by the conventions of a one-sided settlement process that has devastated company after company, that deploys the threat of repetitive trials in the most permissive jurisdictions in the United States, and that now has come back to haunt even the bankruptcy trusts by sapping their ability to pay fair compensation to the small minority of claimants who actually have sustained an injury.

In light of the passage of time and certain refinements to the litigation protocols, a revised proposed Case Management Order is being filed herewith.

## ARGUMENT

## I.   THERE IS NO SERIOUS DISPUTE THAT THE ASBESTOS CLAIMS AGAINST GRACE SPUN OUT OF CONTROL BEFORE THIS CASE WAS FILED.

As we have previously advised the Court, Grace's bankruptcy[2] was necessitated by a dramatic reversal in the trend of asbestos claim filings against the company.  Claims that had been declining for years suddenly skyrocketed in 2000, overwhelming Grace's ability to resolve them through the tort system:



Asbestos Bodily Injury Claims

This surge in claims starkly demonstrated the irrationality of the privatized claims process that evolved over the years, and it left Grace with no choice but to break the pattern of history and file bankruptcy.  In their sole attempt to explain away the recent claims spike, the Property Damage (PD) and Personal Injury (PI) Committees offer no theory that has anything to do with Grace's actual liability.  And the explanation that *is* proffered is contradicted by both the recent surge in claims against other companies and analysis of Grace's own unique claims history.

---

[2] "Grace" and "Debtors" are used interchangeably herein.  "Debtors" is defined at footnote 1 of Debtors' Motion for Entry of Case Management Order. Establishment of a Bar Date. Approval of the Proof of Claim Forms and Approval of the Notice Program.

A.     **There Is No Explanation — Grounded Either In Medicine Or In Grace's
Liability — For The Recent Spike In Claims Against Grace.**

As detailed in Grace's initial memorandum, actual asbestos-related malignant disease
rates are declining in response to the regulatory curtailment of significant asbestos exposures in the
early 1970s.[3] The death rates for mesothelioma, the disease with the longest latency period, have
been declining since 1992.[4] Leading medical researchers similarly have described asbestosis as a
"disappearing disease."[5] A published study of asbestos-exposed workers reported that "we have not
seen a single case of significant asbestosis with first exposure during the past 30 yr."[6] Perhaps for
these reasons, the PI Committee does not even attempt to justify the recent spike in claims against
Grace based on an actual increase in disease caused by Grace's products.

Moreover, only a small number of plaintiffs' law firms were responsible for the surge
in claims against Grace in 1999-2000, belying the notion that disease rates drive the increase.
Seventeen law firms filed 22,550 more claims in 2000 than they had filed in 1999, and were
therefore responsible for almost the entire 22,726 increase in total claims filed against Grace:

---

[3]  *See generally* Neoplastic Asbestos-Induced Disease, Pathology of Occupational Lung Disease (A.
Churg & F. Green, ed., 2nd, 1998) at 339 ("progressive lowering of standards for permitted occupational
exposure to asbestos has markedly decreased the incidence and severity of asbestosis"). *See also* R. Doll &
J. Peto, *Asbestos: Effects on Health of Exposure to Asbestos* at 2 ("With reduction in the amount of exposure,
the development of incapacitating fibrosis slows down and the reaction becomes so slight and its spread so
slow that no person with otherwise healthy lungs would develop significant disability before reaching an age
when he was likely to die of other causes.").

[4]  SEER data from the National Cancer Institute available at www-seer.ims.nci.nih.gov.

[5]  K. Browne, *Asbestos-Related Disorders*, Occupational Lung Disorders, 3rd, 411-504, 420 (1994).

[6]  Gaensler, Jederlinic & Churg, *Idiopathic Pulmonary Fibrosis in Asbestos-exposed Workers*, American
Review of Respiratory Disease 144(3): 689-696, 695 (1991) (emph. added).

-8-

| Law Firm | 1999 Claims | 2000 Claims | Increase |
|---|---|---|---|
| Peirce Raymond Osterhout | 143 | 3,579 | 3,436 |
| Kelley & Ferraro L.L.P. | 563 | 3,755 | 3,192 |
| David Lipman, P.A. | 511 | 2,908 | 2,397 |
| Larry Norris | 44 | 2,346 | 2,302 |
| Tayllor & Cire | 3 | 2,132 | 2,129 |
| Law Firm of Crymes Pittman | 0 | 1,169 | 1,169 |
| Barrett Law Offices | 0 | 1,054 | 1,054 |
| Hissey Kientz & Herron | 26 | 962 | 936 |
| Wallace & Graham P.A. | 317 | 1,150 | 833 |
| Law Offices of Peter Nicholl | 0 | 813 | 813 |
| Duke Law Firm | 42 | 820 | 778 |
| LeBlanc & Waddell | 0 | 707 | 707 |
| Odom & Elliott | 180 | 810 | 630 |
| Climaco Climaco Lefkowitz | 353 | 977 | 624 |
| Varas & Morgan | 435 | 1,018 | 583 |
| Cascino Vaughan Law Offices | 252 | 808 | 556 |
| Robins Cloud Greenwood & Lubel | 156 | 567 | 411 |
| 17 FIRM TOTALS: | 3,025 | 25,575 | |
| TOTALS FOR ALL FIRMS: | 25,466 | 48,192 | 22,726 |
| TOTAL 2000 INCREASE FOR 17 FIRMS: | | | 22,550 |

Thus, while the rest of the plaintiffs' bar was filing claims against Grace in 2000 at about the same rate as in 1999, these 17 firms somehow generated 22,550 more claims than they had in 1999, raising their collective annual share of the claims against Grace from 11.8% to more than 53%. The committees offer no explanation for how such a small number of firms were able to generate such a significant surge of claims.

Instead, the PI Committee's expert Mark Peterson (a lawyer and psychologist) attributes Grace's claims spike to unfavorable publicity last year about Grace's Libby, Montana mine. (Peterson Aff. ¶ 23) Even if it were true that Libby publicity had a nationwide impact on the filing of claims against Grace, this would illustrate the problem Grace faces. The issues concerning asbestos exposure at Libby pertain to only a small group of claimants. Libby is a small town, with a population of 2,500. The cumulative total of Libby personal injury claims is 232, a small fraction (.07 %) of the 328,000 claims asserted nationally. If Libby publicity is causing a surge of claims nationally, those claims are being filed for the wrong reasons.

Further, the "Libby" theory for the broad upsurge in claims is unsupported by citation to any evidence and is contrary to the facts.

*First*, the plaintiff law firms that are responsible for bringing these cases already had filed over 260,000 personal injury claims against Grace before 2000. They did not need to be inspired by "adverse publicity" before filing additional claims.

*Second*, attributing the recent claims spike to adverse Libby publicity would blink away the glaring fact that other asbestos defendants experienced similar surges in claims in 2000. For example, the rate at which new claims have been filed against the Manville Trust has nearly doubled in each of the last two years. The following chart, included in the First Quarter 2001 Manville Trust Report, shows this dramatic surge in new claims filings through May of this year:[*]

---

[*] *See also* First Quarter 2001 Manville Trust Financial Report, available at www.mantrust.org. and *Mealey's Litigation Report: Asbestos*, August 3, 2001, at 13-14.