**9**

BEFORE THE JUDICIAL PANEL ON

MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re: | ) | MDL Docket No. _____ |
| | ) | |
| ZONOLITE ATTIC INSULATION | ) | |
| LITIGATION | ) | |
| | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF TRANSFER AND
COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407**

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
 BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

[Additional Counsel Listed on Signature Page]

Attorneys for Individual and Representative
Plaintiffs Paul Price, John Prebil, and Margery
Prebil

TABLE OF CONTENTS

Page

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   PENDING ACTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       A.    Common Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       B.    Coordinated Equitable Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       C.    Common Factual and Legal Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  TRANSFER TO ONE DISTRICT FOR COORDINATED OR CONSOLIDATED
      PRETRIAL PROCEEDINGS WILL PROMOTE § 1407'S GOALS OF
      INSURING THE JUST AND EFFICIENT CONDUCT OF THE ACTIONS, AND
      AVOIDING INCONSISTENT OR CONFLICTING SUBSTANTIVE AND
      PROCEDURAL DETERMINATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.   THE NEED FOR TRANSFER AND COORDINATION IN THE CLASS
      ACTION CONTEXT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.    THE NECESSITY OF A CONSOLIDATED PROPERTY DAMAGE MDL,
      SEPARATE FROM THE ASBESTOS PERSONAL INJURY CASES
      CONSOLIDATED AS MDL NO. 825 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

VI.   FORUM SELECTION CRITERIA UNDER § 1407 . . . . . . . . . . . . . . . . . . . . . . . . . 7

       A.    Location Of Parties, Witnesses And Documents . . . . . . . . . . . . . . . . . . . . . 8

       B.    Advancement Of Proceedings And Judicial Efficiency . . . . . . . . . . . . . . . . . . 9

VII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

## CASES

In re "Agent Orange" Prod. Liability Litig.
    597 F. Supp. 740 (E.D.N.Y. 1984), affirmed,
    818 F.2d 145 (2d Cir. 1987), cert. denied,
    484 U.S. 1004 (1988), on remand, 689 F. Supp. 1250
    (E.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In re Bristol Bay, Salmon Fishery Antitrust Litig.
    424 F. Supp. 504 (J.P.M.L. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Exterior Siding and Aluminum Coil Litig.
    538 F. Supp. 45 (D.C. Minn. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In re Fed. Election Campaign Act Litig.
    511 F. Supp. 821 (J.P.M.L. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In re First Nat'l Bank, etc.
    451 F. Supp. 995 (J.P.M.L. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Gen. Tire & Rubber Co. Sec. Litig.
    429 F. Supp. 1032 (J.P.M.L. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re IBM Peripheral EDP Devices Antitrust Litig.
    411 F. Supp. 791 (J.P.M.L. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Litig. Arising from Termination of Retirement Plan
for Employees of Fireman's Fund Ins. Co.
    422 F. Supp. 287 (J.P.M.L. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

In re LTV Corp. Sec. Litig.
    470 F.Supp. 859 (J.P.M.L. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In re Nat'l Airlines, Inc., etc.
    399 F. Supp. 1405 (J.P.M.L. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re New Mexico Natural Gas Antitrust Litig.
    482 F. Supp. 333 (J.P.M.L. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re New York City Mun. Sec. Litig.,
    572 F.2d 49 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

In re Roadway Express, Inc. Employment Practices Litig.
    384 F. Supp. 612 (J.P.M.L. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

MEMORANDUM IN SUPPORT OF TRANSFER AND COORDINATION UNDER 28 U.S.C. § 1407

## FEDERAL STATUTES

28 U.S.C. § 1407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 5, 7, 8, 10

## TREATISES

Manual for Complex Litigation, Third (Federal Judicial Center 1995)
        § 31.13, pp. 251-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

MEMORANDUM IN SUPPORT OF TRANSFER AND COORDINATION UNDER 28 U.S.C. § 1407

# I.
## INTRODUCTION

Plaintiffs Paul Price, John Prebil and Margery Prebil respectfully move the Judicial Panel on Multidistrict Litigation to transfer all federal Zonolite attic insulation cases to a single district for coordination or consolidation, pursuant to 28 U.S.C. § 1407 and the Panel's Rules of Procedure. Plaintiffs request transfer to one of the three courts with already pending Zonolite cases. There are presently three Zonolite attic insulation class action cases pending before three able federal judges in three different districts, and statutory considerations under Section 1407 support transfer to any of these three courts. Zonolite was manufactured in Montana and, as a result, there are strong reason in terms of convenience and center of gravity to favor the District of Montana, where class certification and preliminary injunction motions were recently filed before Judge Donald W. Molloy and where discovery is active. Similarly, Judge Patti B. Saris of the district of Massachusetts has taken an active approach to case management in the Zonolite class action before her and has raised the issue of coordination of the federal cases and cooperation with state courts. The Southern District of Illinois has a relatively uncrowded docket and Judge G. Patrick Murphy could also handle the Zonolite class claims before him swiftly and efficiently.

The Zonolite actions involve an attic insulation product, manufactured by W. R. Grace & Company ("Grace") and its predecessor, Zonolite Company. Zonolite is made of asbestos-contaminated vermiculite that contains readily airborne asbestos. Grace's Zonolite Attic insulation was installed as a safe and non-toxic "do-it-yourself" product by homeowners, mostly in older homes that are in frequent in need of maintenance, repair and remodeling involving rewiring, installation and replacement of fixtures and utilities in ceilings, attics, and walls, and similar dust-creating activities. See Exhibits 1 and 2 to the accompanying Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407 (Exhibit 1 is a demonstrative exhibit from a November, 1960 Zonolite advertisement from the Western News proclaiming the product to be "safe" and "non-irritating to the skin and lungs." Exhibit 2 is a demonstrative exhibit of a photograph of a bag of Zonolite attic insulation and a Zonolite booklet "Modern Miracle of Insulation," stating that there was "no need for mask," and that the product "contains no harmful chemicals.")

Homeowners are generally unaware of the presence of asbestos in Grace's Zonolite Attic insulation and the dangers posed when this product is disturbed. As a result, homeowners nationwide are regularly exposed to Grace's Zonolite Attic insulation during maintenance, repair, and remodeling, and even during routine visits to their attics, without their having any knowledge of the hazard, or protection from the exposures. Zonolite therefore constitutes an immediate, present and ongoing threat to public health and endangerment of property. Earlier this month, the United States Public Health Services, Region VIII, requested the National Institute for Occupational Safety & Health ("NIOSH") to investigate Zonolite health and safety risks to workers and residents. Motion, Exhibit 3, (August 1, 2000 letter to NIOSH from Hugh S. Sloan, Assistant Attorney General).

Plaintiffs contend that, once warned, class members can protect themselves and their families by, for example, keeping their children from playing in asbestos contaminated attics and by taking other appropriate precautions, especially with remodeling activities. Immediate identification of homes containing Zonolite, informative warnings to owners and residents of those homes, and a comprehensive program to develop and implement specialized safety and remediation procedures, administered under court supervision and at the defendants' expense, is a necessity. Such actions, if taken promptly and comprehensively, will prevent disease and death, and avoid the necessity of filing future personal injury and wrongful death lawsuits.

The three nationwide class actions already on file, and the many anticipated additional lawsuits prompt this motion for transfer under 28 U.S.C. § 1407. Actions are pending in the District of Montana, the District of Massachusetts, and the Southern District of Illinois. These actions arise from the identical course of conduct involving common defendants, and common questions of fact and law arising out of allegations that Zonolite exposure causes life-threatening cancers and lung diseases. They seek virtually identical primary relief in the form of equitable asbestos education, notification and remediation programs.

## II.
## PENDING ACTIONS

Lindholm v. W.R. Grace & Co., Civil Action No. 00 CV 10323PBS, is now pending in the District of Massachusetts, where it was filed on February 22, 2000, and is assigned to the Honorable Patti B. Saris. Price v. W.R. Grace & Co. (Price), Civil Action No. CV 00-71-M-DWM, is now pending in the District of Montana (Missoula Division), where it was filed on or about April 13, 2000 and is assigned to the Honorable Donald W. Molloy. Hunter v. W.R. Grace & Co. (Hunter), Civil Action No. 00-569-GPM, is now pending in the Southern District of Illinois, where it was filed on July 19, 2000, and assigned to the Honorable G. Patrick Murphy. There may be other pending federal actions, of which the moving plaintiffs are unaware. We will bring these to the Panel's attention as we learn of them.

### A.    Common Defendants

All three pending federal actions are brought against the same closely related entities centering around W.R. Grace & Co ("Grace"), with the exception that the Lindholm action does not name defendant Sealed Air Corporation, a Grace-associated entity.

### B.    Coordinated Equitable Relief

Price and Hunter seek virtually identical class-wide injunctive relief on behalf of persons nationwide who own and/or reside in homes insulated with Zonolite Attic insulation as follows:

a.    interim and final orders establishing a Defendant-funded Court-supervised program to identify homes and buildings containing Zonolite Attic insulation, together with a testing program to verify the suspected existence of Zonolite in homes and other buildings;

b.    interim and final orders establishing a Defendant-funded Court-supervised notification program that will issue timely and pertinent warnings and information to those in danger, informing them that Zonolite Attic insulation contains toxic asbestos, that property owners and occupants should not engage in remodeling or other building activities that risk disturbance of Zonolite, etc.;

c.    a final order establishing a Defendant-funded Court-supervised health and safety research and education trust to conduct pertinent research and disseminate relevant

findings, the mission of the trust to include development of specialized safety procedures and remediation techniques appropriate to Zonolite Attic insulation contamination; and

        d.     a final order establishing a Defendant-funded Court-supervised remediation and containment program and fund, which will provide Class members with (1) information and protocols for safe containment of the asbestos hazards during anticipated activities of repair, remodeling, storage or other use of attic space, venting ceiling fans, etc.; and (2) training, equipment, funding, and other assistance necessary to ensure a safe environment in homes and other buildings by containment during ordinary use, as well as during and following repair, maintenance, remodeling, and other activities which disturb Zonolite Attic insulation.

        Likewise, the <u>Lindholm</u> action seeks equitable relief and damages for a class of homeowners nationwide whose residences contain Zonolite.

    C.    <u>Common Factual and Legal Issues</u>

        The legal and factual issues raised by the three pending actions are the same. All three actions seek similar relief for a nationwide classes of persons homeowners and residents who live with Zonolite attic insulation. Similarly, each of the three action raise the following factual and legal issues against Grace:

        (a)    Whether Zonolite attic insulation mined, manufactured and sold by Grace is dangerous in its design and/or manufacture in that it contains dangerous levels of readily airborne asbestos which Grace has never warned about;

        (b)    Whether owners and occupiers of properties in which Zonolite attic insulation are installed are unaware of dangers posed by this product and unaware of safeguards that must be taken to avoid harmful exposure to asbestos;

        (c)    Whether Grace intentionally concealed asbestos health hazards from consumers and government agencies responsible for public health;

        (d)    Whether Grace's public announcements, statements, or representation concerning Zonolite attic insulation were untrue, deceptive, or misleading; and

        (e)    Whether Grace's conduct with respect to Zonolite attic insulation warrants a classwide award of punitive damages.

MEMORANDUM IN SUPPORT OF TRANSFER AND COORDINATION UNDER 28 U.S.C. § 1407

Given the similarity among these actions, transfer and coordination or consolidation under 28 U.S.C. § 1407 is in the best interests of the litigants as well as the federal judicial system.  Coordination at this early juncture in these proceedings will provide an opportunity to avoid inconsistent injunctive rulings, duplication of effort and the unnecessary expenditure of time and money in the litigation of common legal and factual issues.

### III.
### TRANSFER TO ONE DISTRICT FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS WILL PROMOTE § 1407'S GOALS OF INSURING THE JUST AND EFFICIENT CONDUCT OF THE ACTIONS, AND AVOIDING INCONSISTENT OR CONFLICTING SUBSTANTIVE AND PROCEDURAL DETERMINATIONS

The purpose of 28 U.S.C. § 1407 is to provide centralized management, under a single court's supervision, of pretrial proceedings of litigation arising in various districts to insure the just, efficient and consistent conduct and adjudication of such actions.  In re New York City Mun. Sec. Litig., 572 F.2d 49, 50 (2d Cir. 1978).

The transfer of actions to a single forum under § 1407 is appropriate where, as here, it will prevent duplication of discovery, and, most importantly in the instant case, it will eliminate the possibility of overlapping or inconsistent pleading and class action determinations by courts of coordinate jurisdiction.  In re Litig. Arising from Termination of Retirement Plan for Employees of Fireman's Fund Ins. Co., 422 F. Supp. 287, 290 (J.P.M.L. 1976); In re LTV Corp. Sec. Litig., 470 F.Supp. 859, 862 (J.P.M.L. 1979); In re Exterior Siding and Aluminum Coil Litig., 538 F. Supp. 45, 47 (D.C. Minn. 1982); In re "Agent Orange" Prod. Liability Litig., 597 F. Supp. 740, 752 (E.D.N.Y. 1984), affirmed, 818 F.2d 145 (2d Cir. 1987), cert. denied, 484 U.S. 1004 (1988), on remand, 689 F. Supp. 1250 (E.D.N.Y. 1988).

The litmus test of transferability and coordination under § 1407 is the presence of common questions of fact.  In re Fed. Election Campaign Act Litig., 511 F. Supp. 821, 823 (J.P.M.L. 1979).  All actions arising from the presence of Zonolite will raise common questions of fact as outlined above.  As noted hereinabove, such transfer and coordination is particularly appropriate at this time because formal discovery has not advanced materially in any of the actions, and because none of the courts has, as yet, issued any rulings on the common factual or

MEMORANDUM IN SUPPORT OF TRANSFER AND COORDINATION UNDER 28 U.S.C. § 1407

legal issues involved. Thus, coordination and transfer will effectuate an obvious savings of time and resources, will not delay the proceedings and will eliminate potential confusion among class members.

## IV.
## THE NEED FOR TRANSFER AND
## COORDINATION IN THE CLASS ACTION CONTEXT

Of central concern to Plaintiffs is the potential for disruption, confusion and prejudice created by the pendency of three (and possibly more) class actions seeking nationwide relief in at least three districts, all effectively seeking judicial determination as to the definition, certification and notice to members of the same or essentially the same Plaintiff Class. The Judicial Panel has consistently held that when the risk of overlapping or inconsistent class determinations exists, transfer of actions to a single district for coordinated or consolidated pretrial proceedings is necessary in order to eliminate the possibility of inconsistent pretrial rulings, especially concerning class issues. In re Bristol Bay, Salmon Fishery Antitrust Litig., 424 F. Supp. 504, 506 (J.P.M.L. 1976); In re Litig. Arising from Termination of Retirement Plan for Employees of Fireman's Fund Ins. Co., 422 F. Supp. at 290 (J.P.M.L. 1976); In re Nat'l Airlines, Inc., etc., 399 F. Supp. 1405, 1407 (J.P.M.L. 1975); In re Roadway Express, Inc. Employment Practices Litig., 384 F. Supp. 612, 613 (J.P.M.L. 1974). This is true even when only two actions are involved. In re First Nat'l Bank, etc., 451 F. Supp. 995, 997 (J.P.M.L. 1978).

All three of these actions seek relief for nationwide classes of persons who have Zonolite attic insulation in their homes. Assignment of these actions to the same judge would "surely [be] the most efficient way to resolve the questions of proper class representation and the effect of each of these actions on the other." In re Litig. Arising from Termination, supra, 422 F. Supp. at 290.

## V.
## THE NECESSITY OF A CONSOLIDATED PROPERTY DAMAGE MDL,
## SEPARATE FROM THE ASBESTOS
## PERSONAL INJURY CASES CONSOLIDATED AS MDL NO. 825

Plaintiff in the Hunter action has received notice of a proposed transfer to the Eastern District of Pennsylvania, as a tag-along action to the personal injury asbestos MDL

MEMORANDUM IN SUPPORT OF TRANSFER AND COORDINATION UNDER 28 U.S.C. § 1407

actions now pending in the Eastern District of Pennsylvania, under Docket No. 875. Plaintiffs in the <u>Price</u> and <u>Hunter</u> actions oppose consolidation and transfer of the Zonolite property damage cases with MDL 875 because the Zonolite cases involve property damages exclusively, and expressly exclude personal injury claims which are the essence of MDL 875.

Property damage claims have never been included in MDL 875 and, indeed, the Panel previously specifically declined to consolidate the various school asbestos actions with MDL 875. <u>See</u> <u>In re Asbestos Products Liability Litigation (No. VI)</u>, 771 F. Supp. 415 (JPML 1991) (ordering centralization of personal injury and wrongful death actions only). The Zonolite actions expressly involve claims for property damage and for equitable relief in the form of emergency asbestos notification, education and remediation. The narrow and urgent issues implicated by these property warning claims would be most swiftly, fairly and efficiently addressed in their own consolidated proceeding, the need for which is intensified by the United States public health agencies own Libby Vermiculite specific health and safety warning investigations.

## VI.
## FORUM SELECTION CRITERIA UNDER § 1407

The Judicial Panel on Multidistrict Litigation has held that transfer should occur when the following criteria under § 1407 are met:

1. Transfer best serves the convenience of the parties and witnesses and promotes the just and efficient conduct of the litigation;

2. Analysis of the effective complaints reveals that they share common factual questions concerning intricate events and methods of operation, which are sufficiently complex to warrant transfer; and

3. Placement of the affected actions under the control of a single judge insures that duplicative discovery of complex factual questions is prevented, and the possibility of conflicting pretrial rulings is eliminated.

<u>See</u> <u>In re Gen. Tire & Rubber Co. Sec. Litig.</u>, 429 F. Supp. 1032, 1034 (J.P.M.L. 1977).

The answer to the threshold question of <u>whether</u> transfer and coordination will effectuate Section 1407's purposes seems clear; the answer to the question of "where?" is less obvious. The Judicial Panel has used various criteria to determine the most appropriate forum.

Among the factors the Panel considers are the convenience of the parties and witnesses, the relative progress which has been achieved in actions pending in various districts, the respective caseloads of the proposed transferee courts, the location of parties, witnesses and documents, the expertise of a particular court in the areas of law and procedures which govern the actions and, when no clear-cut choice emerges from analysis of the foregoing, and the preference of the majority of the parties.  In re New Mexico Natural Gas Antitrust Litig., 482 F. Supp. 333, 337 (J.P.M.L. 1979).

A.     **Location Of Parties, Witnesses And Documents**

The individual and representative plaintiffs in the Price Action are located in Montana.  The individual and representative plaintiff in the Hunter Action is located in Illinois. The individual and representative plaintiff in the Lindholm Action is located in Massachusetts. The Grace entities are incorporated in Delaware and Connecticut, but many of the tortious activities alleged here took place in Montana, where Grace mined and processed the vermiculite used in the Zonolite insulation product that is the subject of these proceedings.  The Panel can expect that other cases may be filed in other judicial districts nationwide.

Selection of any single forum will undoubtedly create inconvenience to some parties  However, this may be properly ameliorated by the transferee judge, who is authorized to arrange for the conduct of depositions in other districts.  In re IBM Peripheral EDP Devices Antitrust Litig., 411 F. Supp. 791 (J.P.M.L. 1976).  Moreover, the practice of establishing and maintaining central document depositories, recommended by the Manual for Complex Litigation, Third (Federal Judicial Center 1995), § 31.13, pp. 251-6, and the ease with which documents may now be shipped cross-country overnight, scanned, stored, retrieved and analyzed by computer, renders the present physical location of the documents far less determinative a factor than it was when 28 U.S.C. § 1407 was enacted.  In short, regardless of their potential volume, these documents are portable and may be ordered transferred, stored, and made accessible to all in a convenient location in any of the three district courts with existing cases.

**B.**     **Advancement Of Proceedings And Judicial Efficiency**

If the proceedings in a particular forum are significantly more advanced than elsewhere, such forum would appear to be the appropriate selection for transferee status. In the case at hand, all actions are in their early stages, although class certification and preliminary injunction motions were filed in Price, and are now pending in the district of Montana, where discovery is also active. As of the date of the filing of this Petition, formal discovery and initial disclosures have not materially advanced in either Hunter or Lindholm.

Selection of a district with sufficient resources to swiftly adjudicate the Zonolite actions merits consideration of the docket activities of the three districts with pending Zonolite actions. According to the Federal Judicial Center, there were 3,639 pending civil actions in 1999 in the District of Massachusetts, 1,149 in actions pending in 1999 in the Southern District of Illinois and 728 actions pending in 1999 in the District of Montana. See Motion, Exhibit 4, Federal Judicial Center's report on U.S. District Courts - Civil Cases Commenced, Terminated, and Pending During the 12-Month Periods Ending September 30, 1998 and 1999.

Wherever the cases are sent, the transferee court will be called upon the coordinate with related contemporaneously pending state court actions, a common feature of today's mass tort actions. Manual for Complex Litigation, Third, supra, § 31.31, pp. 256-60. Two additional Zonolite class actions are already pending in state courts. Daily et al. v. W.R. Grace & Co. et al., is pending in the Circuit Court, Third Judicial Circuit, Madison County, Illinois, Case No. 00L656, and was filed on behalf of Illinois and Missouri homeowners with Zonolite insulation. Barbanti v. W.R. Grace & Co. et al., is pending in Spokane County Superior Court, Case No. 002011756-6, and was filed on behalf of Washington residents with Zonolite insulation. The Illinois action is pending within the Southern District of Illinois, while the Spokane, Washington action is pending within close geographic proximity to the District of Montana, additional reasons to choose among these districts as the appropriate transferee court.

## VII.
## <u>CONCLUSION</u>

For the foregoing reasons, and for those stated in the accompanying <u>Motion</u>, Plaintiffs respectfully request that the <u>Price</u>, <u>Hunter</u>, and <u>Lindholm</u> actions be transferred and coordinated and/or consolidated before one of the three districts with existing Zonolite cases, under 28 U.S.C. § 1407, and that all related individual or class actions be transferred thereto as "tag along actions."

DATED: August 17, 2000

Respectfully submitted,

By: _Elizabeth J. Cabraser_
  Elizabeth J. Cabraser  by ℲⅤ.

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN
  & BERNSTEIN, LLP
Embarcadero Center West, 30th Floor
275 Battery Street
San Francisco, CA  94111
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

LUKINS & ANNIS, P.S.
1600 Washington Trust Financial Cntr
717 W Sprague Ave.
Spokane, WA  99201-0466
Telephone: (509) 455-9555
Facsimile: (509) 747-2323

NESS MOTLEY LOADHOLT
  RICHARDSON & POOLE
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9440

COHEN, MILSTEIN, HAUSFELD
  & TOLL, P.L.L.C.
999 Third Avenue, Suite 3600
Seattle, WA  98104
Telephone:  (206) 521-0080
Facsimile:  (206) 521-0166

COHEN, MILSTEIN, HAUSFELD
   & TOLL, P.L.L.C.
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C. 20005-3934
Telephone:  (202) 408-4600
Facsimile: (202) 408-4699

McGARVEY, HEBERLING, SULLIVAN
   & McGARVEY, P.C.
745 South Main
Kalispell, MT  59901
Telephone:  (406) 752-5566
Facsimile:  (406) 752-7124

Attorneys for Plaintiffs

MEMORANDUM IN SUPPORT OF TRANSFER AND COORDINATION UNDER 28 U.S.C. § 1407

**10**

BEFORE THE JUDICIAL PANEL ON

MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re: | ) | MDL Docket No. _____ |
| | ) | |
| ZONOLITE ATTIC INSULATION | ) | |
| LITIGATION | ) | |
| | ) | |
| _____ | ) | |

## SCHEDULE OF ACTIONS INCLUDED FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

[Additional Counsel Listed on Signature Page]

Attorneys for Individual and Representative
Plaintiffs Paul Price, John Prebil, and Margery
Prebil

## DISTRICT OF MONTANA, MISSOULA DIVISION

Paul Price, John Prebil, and Margery Prebil, on behalf of themselves, and the class of similarly situated persons (persons nationwide with Zonolite Attic Insulation) v. W.R. Grace & Company (a Delaware corporation); W.R. Grace & Company-Conn (a Connecticut corporation); W.R. Grace & Co., a/k/a Grace, an association of business entities; and Sealed Air Corporation (a Delaware corporation)

Civil Action No. CV 00-71-M-DWM; The Honorable Donald W. Molloy

A true and correct copy of the Price complaint is attached hereto as Exhibit A.

## DISTRICT OF MASSACHUSETTS

Edward P. Lindholm, on behalf of himself and all others similarly situated (persons nationwide with Zonolite Attic Insulation) v. W.R. Grace & Company, Connecticut; W.R. Grace & Company

Civil Action No. 00-CV-10323; The Honorable Patti B. Saris

A true and correct copy of the Lindholm complaint is attached hereto as Exhibit B.

## SOUTHERN DISTRICT OF ILLINOIS

Ian Hunter, individually and on behalf of all others similarly situated (persons nationwide with Zonolite Attic Insulation) v. W.R. Grace & Company, Connecticut; W.R. Grace & Company

Civil Action No. 00-569-GPM; The Honorable G. Patrick Murphy

A true and correct copy of the Hunter complaint is attached hereto as Exhibit C.

DATED. August 17, 2000

Respectfully submitted,

By: _Elizabeth J. Cabraser_ by D.V.
Elizabeth J. Cabraser

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN
 & BERNSTEIN, LLP
Embarcadero Center West, 30th Floor
275 Battery Street
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

LUKINS & ANNIS, P.S.
1600 Washington Trust Financial Cntr
717 W Sprague Ave.
Spokane, WA 99201-0466
Telephone: (509) 455-9555
Facsimile: (509) 747-2323

042 ZON

NESS MOTLEY LOADHOLT
    RICHARDSON & POOLE
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9440

COHEN, MILSTEIN, HAUSFELD
    & TOLL, P.L.L.C.
999 Third Avenue, Suite 3600
Seattle, WA  98104
Telephone:  (206) 521-0080
Facsimile:  (206) 521-0166

COHEN, MILSTEIN, HAUSFELD
    & TOLL, P.L.L.C.
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C. 20005-3934
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699

McGARVEY, HEBERLING.
SULLIVAN
    & McGARVEY, P.C.
745 South Main
Kalispell, MT  59901
Telephone:  (406) 752-5566
Facsimile:  (406) 752-7124

Attorneys for Individual and
Representative Plaintiffs Paul Price, John
Prebil, and Margery Prebil

**11**

S. 17

**RECEIVED**

AUG 2 1 2000

LIEFF, CABRASER, HEIMANN & BERNSTEIN

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

MDL DOCKET NO. ___

## IN RE ZONOLITE ATTIC INSULATION LITIGATION

**Motion To Transfer To The District of Massachusetts
For Coordinated Pretrial Proceedings Pursuant To 28 U.S.C. § 1407**

W.R. Grace & Company (a Delaware corporation) ("Grace Delaware") and W.R.

Grace & Company-Conn. (a Connecticut corporation) ("Grace Conn.") move this panel for

transfer of Zonolite Attic Insulation Cases in which movants are named as defendants to the

United States District Court for the District of Massachusetts for coordinated pretrial proceedings

before the Honorable Patti B. Saris, and in support thereof aver as follows:

1.   Grace Delaware and Grace Conn. have recently been sued in four federal court

actions seeking damages and equitable relief arising from the presence of tremolite asbestos in

Zonolite Attic Insulation, allegedly sold by the defendants.  A schedule of the actions is attached

hereto as Exhibit A.

**Cases Pending in Different Districts**

2.   The Zonolite Attic Insulation cases are pending in three different districts, two in the

District of Massachusetts, one in the District of Montana, Missoula Division, and one in the

Southern District of Illinois.[1]

3.   Each of the Zonolite Attic Insulation cases was filed as a class action complaint.

4.   While the class definitions alleged in the complaints vary slightly, the plaintiffs in

each of the Zonolite Attic Insulation cases seeks to represent a nationwide class.

5.   The earliest-filed case, *Lindholm,* purports to be brought on behalf of a class of "all

persons and entities in the United States who own residences or other buildings in which

Zonolite Attic Insulation . . . was installed."  (Lindholm/Goldstein amended complaint, ¶ 1)  The

*Lindholm* complaint was filed in the United States District Court for the District of

Massachusetts on February 22, 2000; a substantially similar putative class action case, *Goldstein,*

was filed on May 5, 2000, in the United States District Court for the District of Massachusetts.

The two cases have now been consolidated, and a single amended complaint has been filed.  A

copy of the *Lindholm/Goldstein* amended complaint is attached hereto as Exhibit B.

6.   The next filed complaint, *Price,* alleges the following class definition: "All owners or

occupiers of real property located in the United States in which Zonolite Attic Insulation has

been installed."  (Price complaint, ¶ 56).  The *Price* complaint was filed in the United States

---

[1] The fifth action was filed on March 24, 2000, against the same defendants in the Superior Court, State of
Washington, County of Spokane, alleging dangers from Zonolite Attic Insulation, and seeking to represent a class of
owners and occupiers of real property in Washington in which Zonolite Attic Insulation has been installed.  The
sixth action was filed on August 2, 2000, against defendant W.R. Grace & Co.-Conn. in the Superior Court, State of
Illinois, Madison County, alleging dangers from Zonolite Attic Insulation, and seeking to represent a class of owners
and occupiers of real property in Illinois and Missouri in which Zonolite Attic Insulation has been installed.

District Court for the District of Montana, Missoula Division, on April 14, 2000. A copy of the *Price* complaint is attached hereto as Exhibit C.

7. The latest filed complaint, *Hunter*, seeks certification of a class of "[a]ll owners or occupiers of real property located in the United States in which Zonolite Attic Insulation has been installed." (Hunter complaint, ¶ 55) The *Hunter* complaint was filed on July 19, 2000, in the United States District Court for the Southern District of Illinois. A copy of the *Hunter* complaint is attached hereto as Exhibit D.

**Common Questions of Fact**

8. The four Zonolite Attic Insulation cases allege numerous common questions of fact, which warrant coordinated pretrial proceedings before a single district court judge. While Grace Conn. and Grace Delaware will challenge the predominance of common issues in the context of certification of the putative classes, the Zonolite Attic Insulation complaints allege the following common questions of fact:

    a.   Whether Zonolite is dangerous (or not reasonably safe) (Lindholm/Goldstein amended complaint ¶ 56.a.; Price complaint ¶58.A.; Hunter complaint ¶ 57.A.);

    b.   Whether defendants provided adequate warnings in connection with Zonolite (Lindholm/Goldstein amended complaint ¶ 56.m.; Price complaint ¶ 58.B.; Hunter complaint ¶ 57.B.);

    c.   Whether Zonolite constitutes a present threat to health and safety (Lindholm/Goldstein amended complaint ¶ 56.n.; Price complaint ¶ 58.C.; Hunter complaint ¶ 57.C.);

    d.   Whether Zonolite installed in buildings constitutes a present threat to the health and safety in that owners and occupants will be exposed to dangerous levels of

3

asbestos in the ordinary use and enjoyment of their properties (Lindholm/Goldstein amended complaint ¶ 56.n.; Price complaint ¶ 58.D.; Hunter complaint ¶ 57.D.);

e.   Whether defendants concealed from class members and others information about the hazards of exposure to tremolite asbestos and Zonolite Attic Insulation (Lindholm/Goldstein amended complaint ¶ 56.k.; Price complaint ¶ 58.F.; Hunter complaint ¶ 57.F.);

f.   Whether defendants' public statements, advertisements, and representations concerning Zonolite were untrue and published with scienter or negligently (Lindholm/Goldstein amended complaint ¶¶ 56.f & .g; Price complaint ¶¶ 58.G.&H.; Hunter complaint ¶¶ 57.G.&H.);

g.   Whether class members have suffered harm to their property interests (Lindholm/Goldstein amended complaint ¶ 56.o.; Price complaint ¶ 58.K.; Hunter complaint ¶ 57.K.).

9.   In addition to the foregoing common issues of fact designated as such by the complaints, all of the complaints recite a common factual background including the following common factual allegations contained in each of the complaints: the alleged tremolite asbestos contamination of Zonolite Attic Insulation and defendants' alleged knowledge thereof; defendants' alleged knowledge of "secret tests" performed by a predecessor owner of the vermiculite mine on its workers; defendants' alleged "secret animal tests" on the association between tremolite asbestos and mesothelioma; defendants' alleged decision not to warn of the alleged health risks of Zonolite Attic Insulation; and defendants' alleged decision to withhold a drafted press release regarding the discontinuance of Zonolite Attic Insulation.

4

(Lindholm/Goldstein amended complaint ¶¶ 14-21; Price complaint ¶¶ 19-48; Hunter complaint ¶¶ 16-49).

### The Complexity of the Zonolite Attic Insulation Cases Warrant MDL Treatment Even Though There Are Not A Large Number of Cases At This Time

10. Although only four federal court Zonolite Attic Insulation cases are presently pending, these four cases purport to be nationwide class actions, brought on behalf of building owners with Zonolite Attic Insulation in all fifty states. Accordingly, the cases potentially are much more complex and larger in scope than individual federal court cases.

11. Moreover, the overlapping class definitions in the four national class actions present a risk of inconsistent adjudication on the issue of class certification, which could be avoided by consolidation and resolution of the issue of class certification by a single judge.

12. In addition, based on their many years of experience in the asbestos products liability litigation, Grace Conn. and Grace Delaware anticipate that many more "copy-cat" suits will be filed by plaintiffs' attorneys throughout the country.

13. The potential for settlement of the litigation is greater if the cases are consolidated for pretrial purposes.

14. The complexity of the Zonolite Attic Insulation cases is apparent from the causes of action asserted and the relief sought in the pending complaints.

15. Each of the complaints asserts causes of action for fraud, negligence, and strict liability; and each seeks relief in the form of class certification and compensatory and punitive damages.

16. In addition, the *Lindholm/Goldstein* amended complaint asserts breach of warranty, nuisance and unjust enrichment claims, violations of the fifty states' various laws prohibiting deceptive trade practices, and violations of the RICO, 18 U.S.C. § 1962.

5

17. Moreover, each of the complaints seek unique and complex relief in the form of the establishment of various court-supervised and defendant-funded programs including an identification program to verify the suspected presence of Zonolite in buildings, a program to issue warnings and other information to building owners and others who work in them, a research and education trust, and a remediation and containment program.

**Transfer to the District of Massachusetts Will Be Convenient for the Parties and Witnesses**

18. Two of the four Zonolite Attic Insulation cases are presently venued in the District of Massachusetts. Accordingly, transfer of all cases for coordination before a single judge in the District of Massachusetts will be convenient for at least half of the named plaintiffs and the defendants.

19. Moreover, because these cases purport to be nationwide class actions, seeking to represent building owners in all fifty states, the situs of the litigation is not critical.

20. Cambridge, Massachusetts is the headquarters of the Grace Conn. Construction Products Division. Accordingly, many potential witnesses and approximately 950 boxes of original documents relating to the manufacture and sale of vermiculite products, including attic insulation, are located in Cambridge, Massachusetts. (See Rule 26 Initial Disclosure Statement of Defendants W.R. Grace & Co.-Conn. and W.R. Grace & Co. filed in the Lindholm/Goldstein action, attached hereto as Exhibit E).

21. Grace-Conn. and Grace-Delaware have initially identified 9 witnesses located in Massachusetts in its initial disclosure filed in the *Lindholm/Goldstein* action. (Exhibit E).

22. In addition, the majority of the defendants' documents are located in Massachusetts. In addition to the 950 boxes of documents located in Cambridge, Massachusetts, 400 boxes of original documents relating to the manufacture and sale of commercial asbestos-containing

6

products are stored in a repository at Winthrop Square in Boston. An additional 54 boxes of documents that were formerly stored in Libby, Montana containing personnel records and documents regarding the operation of the Libby, Montana mine and mill are housed at Winthrop Square. (Id.).

23. The remainder of Grace's original documents regarding the operation of its former mine and mill in Libby, Montana, approximately 1000 boxes, including sales records for Libby vermiculite and other Zonolite products, are not stored in Montana. Rather, Grace's counsel in Denver and Boulder, Colorado maintains those documents. (See id.).

24. The only connection of Montana to the Zonolite Attic Insulation cases is that Montana is the location of the former Libby, Montana mine and mill for the vermiculite used in the product. By contrast, Grace processed and distributed Zonolite Attic Insulation from two plants in Massachusetts and two plants in Illinois.

**The Discovery and Case Management Status of the Lindholm/Goldstein Action Favors Transfer to the District of Massachusetts**

25. The *Lindholm/Goldstein* case is the most advanced procedurally of the four Zonolite Attic Insulation cases. In *Lindholm/Goldstein*, unlike *Price* or *Hunter*, Grace Conn. and Grace Delaware have filed their Rule 26 Initial Disclosure Statement, as has the plaintiff. Discovery has commenced in *Lindholm/Goldstein*, but not in *Price* or *Hunter*. The plaintiff has served Grace Conn. and Grace Delaware with interrogatories, requests for production of documents, and a Rule 30(b)(6) deposition notice. Indeed, plaintiffs' counsel in *Lindholm/Goldstein* spent four days at Grace's documents depository in Boston in June 2000. By contrast, in *Hunter,* no discovery has been taken; and in *Price*, plaintiff's counsel, who are also plaintiff's counsel in the state court action in Washington, has not commenced any case specific discovery.

26. Judge Saris, to whom the consolidated *Lindholm* and *Goldstein* actions have been assigned, has held a scheduling conference in *Lindholm/Goldstein*, which was attended by one of plaintiffs' counsel in *Price*, and has scheduled a second conference in the consolidated cases for early September. The parties have submitted a Joint Statement and Proposed Pretrial Scheduling Order in *Lindholm/Goldstein*.

27. Therefore, transfer of all four Zonolite Attic Insulation cases to Judge Saris, who has had the opportunity to gain some familiarity with the litigation, would promote the just and efficient conduct of the litigation.

WHEREFORE, W.R. Grace & Company and W.R. Grace & Company-Conn. respectfully request that this Panel transfer the Zonolite Attic Insulation Cases to the United States District Court for the District of Massachusetts for coordinated pretrial proceedings before Judge Saris.

Respectfully submitted,

Lawrence T. Hoyle, Jr.
Arlene Fickler
Lisa M. Salazar
R. David Walk, Jr.
Hoyle, Morris & Kerr LLP
1650 Market Street - Suite 4900
Philadelphia, PA  19103
(215) 981-5700

Dated:  August 17, 2000

Attorneys for W.R. Grace & Company (a Delaware corporation) and W.R. Grace & Company-Conn. (a Connecticut corporation)

8

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August, 2000, I caused a true and correct copy of the foregoing Motion to Transfer to the District of Massachusetts for Coordinated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407 and Brief and Exhibits in support thereof, to be served by U.S. Mail postage pre-paid addressed as follows:

Jon L. Heberling
Roger M. Sullivan
Allan M. McGarvey
McGARVEY, HEBERLING, SULLIVAN &
McGARVEY, P.C.
745 South Main
Kalispell, MT  59901

Darrell W. Scott
LUKINS & ANNIS, P.S.
1600 Washington Trust Financial Center
717 W. Sprague Ave.
Spokane, WA  99201-0466

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West, 30th Floor
275 Battery Street
San Francisco, CA  94111

Edward J. Westbrook
NESS MOTLEY LOADHOLT RICHARDSON
& POOLE
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

Steven J. Toll
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
999 Third Avenue, Suite 3600
Seattle, WA  98104

Richard S. Lewis
COHEN, MILSTEIN, HAUSFELD & TOLL
1100 New York Ave., N.W.
West Tower, Suite 500
Washington,  D.C.  20005-3934

Attorneys for plaintiff in
Price v. W.R. Grace & Co.


Sam E. Haddon
Steven C. Haddon
BOONE, KARLBERG & HADDON P.C.
300 Central Square
201 West Main
P.O. Box 9199
Missoula, MT  59807-9199

Sheila L. Birnbaum
Bert L. Wolff
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY  10036

Attorneys for defendant
Sealed Air Corporation in
Price v. W.R. Grace & Co.


Gary L. Graham
GARLINGTON, LOHN & ROBINSON, PLLP
199 W. Pine, P.O. Box 7909
Missoula, MT  59807-7909

Attorneys for defendants
W.R. Grace & Co. and
W.R. Grace & Co.-Conn. in
Price v. W.R. Grace & Co.

Kenneth G. Gilman
David Pastor
Edward L. Manchur
GILMAN AND PASTOR, LLP
One Boston Place, 28th fl.
Boston, MA  02108

Attorneys for Individual and Representative
Plaintiff, Edward M. Lindholm, in
Lindholm v. W.R. Grace & Co.


Mark S. Williams
BORRELLI, HUTTON & WILLIAMS, P.A.
(A Professional Corporation)
376 Trapelo Road
Belmont, MA  02478

Attorneys for Individual and Representative
Plaintiffs, Joel Goldstein and John J. Szufnarowski,
in Lindholm v. W.R. Grace & Co.


Robert A. Murphy
CASNER & EDWARDS LLP
One Federal Street
Boston, MA 02110

Attorneys for defendants
W.R. Grace & Co. and
W.R. Grace & Co.-Conn.
in Lindholm v. W.R. Grace & Co.


Mark C. Goldenberg
HOPKINS GOLDENBERG, P.C.
Elizabeth V. Heller
2132 Pontoon Road
Granite City, IL  62040

John J. Stoia
MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
600 West Broadway
1800 One America Plaza
San Diego, CA  92101-3356

Christopher A. Seeger
SEEGER WEISS LLP
One William Street
New York, New York  10004

Attorneys for Plaintiffs in
Hunter v. W.R. Grace & Company


Lou Aleksich, Jr., Clerk
United States District Court for the
  District of Montana, Missoula Division
Post Office Bldg.
P.O. Box 8537 (59807-8537)
Missoula, MT  59801

Norbert G. Jaworski, Clerk
United States District Court for the
  Southern District of Illinois
P.O. Box 249 (62202)
East St. Louis, IL  62201

Tony Anastas, Clerk
United States District Court for the
  District of Massachusetts
U.S. Courthouse
1 Courthouse Way
Boston, MA  02210


R. David Walk, Jr.

**12**

**RECEIVED**

AUG 2 1 2000

LIEFF, CABRASER, HEIMANN & BERNSTEIN

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

_____

MDL DOCKET NO. ___

_____

IN RE ZONOLITE ATTIC INSULATION LITIGATION

_____

**Brief In Support Of Motion To Transfer To The District of Massachusetts
For Coordinated Pretrial Proceedings Pursuant To 28 U.S.C. § 1407**

W.R. Grace & Company (a Delaware corporation) ("Grace Delaware") and W.R. Grace & Company-Conn. (a Connecticut corporation) ("Grace Conn.") submit this brief in support of their motion to transfer the Zonolite Attic Insulation Cases in which movants are named as defendants to the United States District Court for the District of Massachusetts for coordinated pretrial proceedings before the Honorable Patti B. Saris.

## FACTUAL BACKGROUND

Grace Delaware and Grace Conn. were recently sued in six putative class actions -- four in federal court and two in state court -- complaining of the presence of tremolite asbestos in Zonolite Attic Insulation allegedly mined, manufactured, and sold by the defendants. Zonolite

Attic Insulation is a vermiculite product that was utilized primarily in private residences as an insulating product. The vermiculite used in Zonolite from 1963 to 1984 was mined and milled by Grace Conn. at a vermiculite mine in Libby, Montana. Vermiculite is *not* a form of asbestos. It is a mineral that has been used for more than 75 years in numerous products. When vermiculite was mined in Libby, Montana, a small amount of asbestiform mineral known as tremolite was among the materials excavated with the vermiculite. Grace Conn. acted reasonably and diligently to remove that contaminant during processing of the vermiculite ore at Libby and during expansion of the vermiculite at expanding plants. Grace's efforts in this regard were so successful that Zonolite Attic Insulation does not meet the definition of an asbestos-containing product in various government regulations. See, e.g., 40 C.F.R. §§ 61.141 and 763.83. Nonetheless, in the wake of recent publicity concerning environmental remediation of the asbestos at Libby, six class action lawsuits have been filed against Grace Conn. and its parent Grace Delaware, asserting that Zonolite is a hazardous product warranting remediation.

Four of the actions were filed in federal district courts: two in the United States District Court for the District of Massachusetts, one in the United States District Court for the District of Montana, Missoula Division, and one in the United States District Court for the Southern District of Illinois.[1] Each of the named plaintiffs in the four actions seeks to represent a nearly identical national class of building owners and occupants. Because of the complexity of the matters and the potential for inconsistent pretrial rulings, especially on class certification, centralization of the actions and transfer of the cases to the District of Massachusetts under 28 U.S.C. § 1407 will promote the just and efficient conduct of the actions.

---

[1] The fifth action was filed on March 24, 2000, against the same defendants in the Superior Court, State of Washington, County of Spokane, alleging dangers from Zonolite Attic Insulation, and seeking to represent a class of owners and occupiers of real property in Washington in which Zonolite Attic Insulation has been installed. The sixth action was filed on August 2, 2000, against defendant W.R. Grace & Co.-Conn. in the Superior Court, State of Illinois, Madison County, alleging dangers from Zonolite Attic Insulation, and seeking to represent a class of owners and occupiers of real property in Illinois and Missouri in which Zonolite Attic Insulation has been installed.

**ARGUMENT**

I.    **Coordinated Pretrial Proceedings In The Four National Class Actions Will Promote The Just And Efficient Conduct Of the Cases.**

While the class definitions alleged in the four complaints filed in federal court vary slightly, each of the Zonolite Attic Insulation cases purports to be brought on behalf of a nationwide class of persons owning or occupying property containing Zonolite Attic Insulation sold by Grace Conn. and/or Grace Delaware. The first case, *Lindholm*, was filed in the United States District Court for the District of Massachusetts on February 22, 2000, and was subsequently consolidated with a similar putative class action case, the *Goldstein* case, which was filed in the same District Court on May 5, 2000. The *Lindholm/Goldstein* complaint, as recently amended, alleges that it purports to be brought on behalf of a class of "all persons and entities in the United States who own residences or other buildings in which Zonolite Attic Insulation . . . was installed." (Lindholm/Goldstein amended complaint, ¶ 1).[2] The next filed complaint, *Price*, filed in the United States District Court for the District of Montana, Missoula Division, on April 14, 2000, asserts the following class definition: "All owners or occupiers of real property located in the United States in which Zonolite Attic Insulation has been installed." (Price complaint, ¶ 56). The latest filed complaint, *Hunter*, filed in the United States District Court for the Southern District of Illinois on July 19, 2000, seeks certification of a class of "[a]ll owners or occupiers of real property located in the United States in which Zonolite Attic Insulation has been installed." (Hunter complaint, ¶ 55).

Normally the pendency of only two or three related actions is viewed by the Panel as too minimal in number to warrant MDL treatment where the common questions involved are not sufficiently complex. See In re US Airways, Inc., Employment Practices Litigation, Docket No. 1302, 2000 U.S. Dist. LEXIS 1227, at *2 (JPML Feb. 4, 2000); In re North Star Steel Antitrust Litigation, Docket No. 1223, 1998 U.S. Dist. LEXIS 4491, at *2 (JPML April 3, 1998);

_____

[2] Copies of the complaints filed in each action for which movants seek MDL treatment are exhibits to the motion accompanying this brief.

In re Boating Accident Near Cozumel, Mexico, On May 24, 1996, Docket No. 1294, 1999 U.S. Dist. LEXIS 15761, at *2 (JPML Oct. 5, 1999).

        The Panel favors transfer, however, where the two or three cases present overlapping national class actions. That factor alone provides the level of complexity to the cases that has led the Panel to conclude that transfer is warranted to promote the just and efficient conduct of the actions. In re LifeUSA Holdings, Inc., Annuity Contracts Sales Practices Litigation (No. II), Docket No. 1273, 1999 U.S. Dist. LEXIS 4918, at *2 (JPML April 7, 1999) (two actions brought as class actions on behalf of overlapping classes of purchasers of annuities; "Centralization under Section 1407 will eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to class certification issues), and conserve the resources of the parties, their counsel and the judiciary."); In re Methionine Antitrust Litigation, Docket No. 1311, 1999 U.S. Dist. LEXIS 19206, at *4 (JPML Dec. 8, 1999) (five antitrust class actions transferred where plaintiffs in all actions seek to represent the same putative class of Methionine purchasers, although with slight variations in the class periods); In re The Northwestern Mutual Life Insurance Company Sales Practices Litigation, Docket No. 1213, 1998 U.S. Dist. LEXIS 5495, at *2 (JPML April 16, 1998) (two actions brought as class actions on behalf of overlapping nationwide classes of purchasers of Northwestern policies transferred to prevent inconsistent pretrial rulings, especially with respect to class certification issues); In re The Hartford Sales Practices Litigation, Docket No. 1204, 1997 U.S. Dist. LEXIS 19671, at *2 (JPML Dec. 8, 1997) (two actions brought as class actions on behalf of substantially the same class of purchasers of policies transferred to prevent inconsistent pretrial rulings, especially with respect to class certification issues).

        The overlap among the putative national classes of owners and occupiers of buildings in which Zonolite has been installed warrants consolidation of the actions for pretrial purposes by the Panel. The potential for inconsistent rulings by the Massachusetts, Montana and Illinois federal courts on the significant question of class certification could be avoided by having a single judge in a single transferee district decide that question. Moreover, the class

certification discovery will most certainly be duplicative in the four actions seeking representation of virtually the same class of persons. Consolidation for pretrial purposes would conserve the resources of the parties, counsel, and the judiciary.

The potential for settlement of the Zonolite Attic Insulation litigation is also greater if the cases were consolidated for pretrial purposes. Based on their many years of experience in the asbestos products liability litigations, Grace Conn. and Grace Delaware anticipate that additional "copy-cat" suits will be filed by plaintiffs' attorneys throughout the country. Consolidation of the four presently pending suits, as well as later filed tag-along actions, would potentially enable defendants to negotiate with a single-designated group of lead counsel, rather than attempting to resolve the litigation on a piece-meal basis.

The complexity of the four Zonolite Attic Insulation cases also is more significant than the relatively small number of pending cases when the various causes of action alleged and claims for relief sought are considered. Each of the complaints asserts causes of action for fraud, negligence, and strict liability; each seeks relief in the form of class certification and compensatory and punitive damages. (The *Lindholm/Goldstein* amended complaint also asserts breach of warranty, nuisance and unjust enrichment claims; violations of the fifty states' various laws prohibiting deceptive trade practices; and RICO claims.) Moreover, each of the complaints seek the same unique and complex relief in the form of the establishment of various court-supervised and defendant-funded programs, including an identification program to verify suspected existence of Zonolite in buildings, a program to issue warnings and other information to building owners and others who work in them, a research and education trust, and a remediation and containment program.

Plaintiffs' pleading of overlapping national classes in each of the four Zonolite Attic Insulation cases strongly favors transfer of the cases to a single district for coordinated pretrial treatment to avoid inconsistent rulings on class certification. Moreover, in view of the complexity of the issues in each of the cases, consolidation will result in the conservation of resources in discovery and pretrial proceedings.

5

## II.    The Zonolite Attic Insulation Cases Allege Common Questions Of Fact Favoring Coordinated Pretrial Treatment.

The complaints in each of the four Zonolite Attic Insulation cases allege numerous common questions of fact and law among the claims of the putative class members. While Grace Conn. and Grace Delaware will challenge the predominance of common issues in the context of certification of the putative classes, the Zonolite Attic Insulation complaints allege the following common questions of fact:[3]

    a.  Whether Zonolite is dangerous (or not reasonably safe) (Lindholm/Goldstein amended complaint ¶ 56.a.; Price complaint ¶58.A; Hunter complaint ¶ 57.A.);

    b.  Whether defendants provided adequate warnings in connection with Zonolite (Lindholm/Goldstein amended complaint ¶ 56.m.; Price complaint ¶ 58.B.; Hunter complaint ¶ 57.B.);

    c.  Whether Zonolite constitutes a present threat to health and safety (Lindholm/Goldstein amended complaint ¶ 56.n.; Price complaint ¶ 58.C.; Hunter complaint ¶ 57.C.);

    d.  Whether Zonolite installed in buildings constitutes a present threat to the health and safety in that owners and occupants will be exposed to dangerous levels of asbestos in the ordinary use and enjoyment of their properties (Lindholm/Goldstein amended complaint ¶ 56.n.; Price complaint ¶ 58.D.; Hunter complaint ¶ 57.D.);

    e.  Whether defendants concealed from class members and others information about the hazards of exposure to tremolite asbestos and Zonolite Attic Insulation (Lindholm/Goldstein amended complaint ¶ 56.k.; Price complaint ¶ 58.F.; Hunter complaint ¶ 57.F.);

---

3 In considering the common question of fact issue, the Panel looks primarily to the pleadings. In re Petroleum Prods Antitrust Litig., 407 F. Supp. 249, 251 (JPML 1976).

f.   Whether defendants' public statements, advertisements, and representations
concerning Zonolite were untrue and published with scienter or negligently
(Lindholm/Goldstein amended complaint ¶¶ 56.f & .g; Price complaint ¶¶
58.G.&H.; Hunter complaint ¶¶ 57.G.&H.);

g.   Whether class members have suffered harm to their property interests
(Lindholm/Goldstein amended complaint ¶ 56.o.; Price complaint ¶ 58.K.; Hunter
complaint ¶ 57.K.).

In addition to the foregoing common issues of fact alleged by the complaints, all
of the complaints recite a common factual background including the following common factual
allegations contained in each of the complaints: the alleged tremolite contamination of Zonolite
Attic Insulation and defendants' alleged knowledge thereof; defendants' alleged knowledge of
"secret tests" performed by a predecessor owner of the vermiculite mine on its workers;
defendants' alleged "secret animal tests" on the association between tremolite asbestos and
mesothelioma; defendants' alleged decision not to warn of the alleged health risks of Zonolite
Attic Insulation; and defendants' alleged decision to withhold a drafted press release regarding
the discontinuance of Zonolite Attic Insulation. (Lindholm/Goldstein amended complaint ¶¶ 14-
21; Price complaint ¶¶ 19-48; Hunter complaint ¶¶ 16-49).

Products liability cases, in particular, present common issues of fact that the Panel
has found appropriate for coordinated pretrial proceedings. For example, in In re
Temporomandibular Joint (TMJ) Implants Products Liability Litigation, 844 F. Supp. 1553
(JPML 1994), the Panel transferred 173 actions for centralization under § 1407 after concluding
that common factual questions arise in the products liability actions with respect to whether the
TMJ implants are defective and unreasonably dangerous, whether the defendants failed
adequately to test the implants and constituent materials or warn of possible risks to TMJ implant
recipients, and whether the implant materials are prone to break down in the recipients' bodies.
The Panel reached the same conclusion in a product liability action involving alleged
misrepresentations regarding the composition of an over-the-counter medicine for dandruff. In

7

<u>In re Skin-Cap Products Liability Litigation</u>, Docket No. 1243, 1998 U.S. LEXIS 13253, at *3 (JPML Aug. 24, 1998), the Panel transferred four actions finding that they presented "complex common questions of fact concerning i) the composition of Skin-Cap (in particular whether it contained corticosteroids), and ii) whether defendants misrepresented and/or failed to disclose the presence of corticosteroids in Skin-Cap." <u>Id</u>.

   As described above, the Zonolite Attic Insulation cases are, at base, product liability actions, which present the same or similar common factual questions with respect to the product Zonolite as the TMJ and Skin-Cap products liability litigation. Common issues regarding the alleged defects in Zonolite, its alleged dangerous condition, the alleged misrepresentations made in connection with the marketing of the product, the testing done and warnings made regarding Zonolite, and its alleged danger in-place are common issues of fact asserted in each of the class action complaints. Coordinated pretrial proceedings and discovery on these common issues of fact will further the goals of § 1407 of preventing inconsistent pretrial rulings and conserving the resources of the parties, their counsel, and the judiciary. The presence of some differing legal theories in each of the complaints does not militate against transfer. <u>See In re IKON Office Solutions, Inc., Securities Litigation</u>, Docket No. 1318, 1999 U.S. Dist. LEXIS 19077, at *2-3 (JPML Dec. 2, 1999) ("transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer. Nor is the presence of differing legal theories significant when the underlying actions still arise from a common factual core.").

### III. Transfer To The District Of Massachusetts Will Be Convenient For The Parties And Witnesses.

   A number of factors favor transfer of all cases to the United States District Court for the District of Massachusetts for the convenience of the majority of the named plaintiffs and the defendants. First, two of the four Zonolite Attic Insulation cases (including the first-filed case) are presently venued in the District of Massachusetts. Thus, the District of Massachusetts is the forum of choice for more plaintiffs than any other forum. <u>See In re The Hartford Sales</u>

Practices Litigation, Docket No. 1204, 1997 U.S. Dist. LEXIS 19671, at *3 (JPML Dec. 8, 1997) (two class actions transferred to District of Minnesota, site of first-filed action, choice of all defendants, and location of potential witnesses and documents); In re Lutheran Brotherhood Variable Insurance Products Co. Sales Practices Litigation, Docket No. 1309, 1999 U.S. Dist. LEXIS 20185, at *3 (JPML Dec. 22, 1999) (transferred to Minnesota where three of the four actions were pending and where documents and witnesses located); In re IKON Office Solutions, Inc., Securities Litigation, 1999 U.S. Dist. LEXIS 19077 at *4-5 (transferred to Eastern District of Pennsylvania where most actions were pending, discovery has proceeded, judge assigned has developed a familiarity with the issues, IKON's headquarters located, and likely location of significant number of documents and witnesses).

Second, Massachusetts is the location of a significant number of documents and witnesses in the Zonolite Attic Insulation cases. Cambridge, Massachusetts is the headquarters of the Grace Conn. Construction Products Division. Accordingly, many potential witnesses and approximately 950 boxes of original documents relating to the manufacture and sale of vermiculite products, including attic insulation, are located in Cambridge, Massachusetts. (See Rule 26 Initial Disclosure Statement of Defendants W.R. Grace & Co.-Conn. and W.R. Grace & Co. filed in the Lindholm/Goldstein action, attached as Exhibit E to the motion). Grace Conn. and Grace Delaware have preliminarily identified 9 witnesses located in Massachusetts in their initial disclosure filed in the Lindholm/Goldstein action. (Id.). In addition to the 950 boxes of documents located in Cambridge, Massachusetts, 400 boxes of original documents relating to the manufacture and sale of commercial asbestos-containing products are stored in a repository at Winthrop Square in Boston. An additional 54 boxes of documents that were formerly stored in Libby, Montana containing personnel records and documents regarding the operation of the Libby, Montana mine and mill are housed at Winthrop Square. (Id.). Thus, the majority of the defendants' documents are located in Massachusetts, the headquarters of the Construction Products Division and the location of numerous witnesses. The vast majority of the balance of Grace's original documents regarding the operation of its former mine and mill in Libby,

9

Montana, approximately 1000 boxes, including sales records for Libby vermiculite and other
Zonolite products, are not stored in Montana. Rather, those documents are maintained by
Grace's counsel in Denver and Boulder, Colorado. (See Grace Initial Disclosure).

These factors weigh heavily in the Panel's choice of transferee forum as they
further the goals of convenience and efficiency in § 1407. See In re The Hartford Sales Practices
Litigation, 1997 U.S. Dist. LEXIS 19671, at *3; In re Summit Technology, Inc., Securities
Litigation, Docket No. 1195, 1997 U.S. Dist. LEXIS 15778, at *2-3 (JPML Oct. 9, 1997); In re
Nuway Paper Machinery Contracts Litigation, Docket No. 1306, 1999 U.S. Dist. LEXIS 20179,
at *2-3 (JPML Dec. 22, 1999); In re Computervision Corporation Securities Litigation, 814 F.
Supp. 85, 86 (JPML 1993); In re Bromine Antitrust Litigation, Docket No. 1310, 1999 U.S. Dist.
LEXIS 19204, at *2 (JPML Dec. 9, 1999).

The only connection of Montana to the Zonolite Attic Insulation cases is that
Montana is the location of the former Libby, Montana mine and mill for the vermiculite used in
the product. By contrast, Grace processed and distributed Zonolite Attic Insulation from two
plants in Massachusetts and two plants in Illinois. Far more significant than either the location
of the mine and mill or the location of particular plants is the location of witnesses and
documents, and they are located in Massachusetts. Thus, in terms of convenience to the parties
and witnesses in the discovery process, the overwhelming majority of factors favor the District
of Massachusetts as the transferee district.

Moreover, because these cases purport to be nationwide class actions, seeking to
represent building owners in all fifty states, the situs of the litigation is not critical so long as it is
as convenient and centrally located as all other suggested forums. See In re Bankamerica Corp.
Securities Litigation, Docket No. 1264, 1999 U.S. Dist. LEXIS 1494, at *4 (JPML Feb. 11,
1999); In re Methionine Antitrust Litigation, Docket No. 1311, 1999 U.S. Dist. LEXIS 19206, at
*6 (JPML Dec. 8, 1999). In terms of ease of travel, Boston is more easily accessible than
Missoula, Montana, or East St. Louis, Illinois.

**IV.    The Discovery And Case Management Status Of The Lindholm/Goldstein Action Favors Transfer To Judge Saris In The District Of Massachusetts.**

The *Lindholm/Goldstein* case is the most advanced procedurally of the four Zonolite Attic Insulation cases.  In *Lindholm/Goldstein*, unlike *Price* or *Hunter*, Grace Conn. and Grace Delaware have filed their Rule 26 Initial Disclosure Statement, as has the plaintiff. Discovery has commenced in *Lindholm/Goldstein,* with the plaintiff having served Grace Conn. and Grace Delaware with interrogatories, requests for production of documents, and a Rule 30(b)(6) deposition notice.  Indeed, plaintiffs' counsel in *Lindholm/Goldstein* spent four days at Grace's documents depository in Boston in June 2000.  By contrast, in *Hunter,* no discovery has been taken; and in *Price*, plaintiff's counsel, who are also plaintiff's counsel in the state court action in Washington, has not commenced any case specific discovery.

Judge Saris, to whom the consolidated *Lindholm* and *Goldstein* actions have been assigned, has held a scheduling conference in *Lindholm/Goldstein*, which was attended by one of the counsel representing the plaintiff in *Price*.  The parties have submitted a Joint Statement and Proposed Pretrial Scheduling Order in *Lindholm/Goldstein*.  Therefore, transfer of all four Zonolite Attic Insulation cases to Judge Saris, who has had the opportunity to gain some familiarity with the litigation, would promote the just and efficient conduct of the litigation.  See In re IKON Office Solutions, Inc., Securities Litigation, 1999 U.S. Dist. LEXIS 19077 at *4-5; In re Computervision Corporation Securities Litigation, 814 F. Supp. at 86 (transferred to the District of Massachusetts where the actions venued there have already been consolidated before a judge who has entered a pretrial order establishing an orderly structure for the litigation); In re Capital Underwriters, Inc. Securities Litigation, 464 F. Supp. 955 (JPML 1979) (transfer to a judge who is "thoroughly familiar" with the litigation because more discovery and pretrial proceedings have proceeded than in the other pending actions).

## CONCLUSION

Transfer of the Zonolite Attic Insulation cases to the United States District Court for the District of Massachusetts for coordinated pretrial proceedings before Judge Saris will serve the dual goals of 28 U.S.C. § 1407 of promoting the just and efficient conduct of the purported national class actions and the convenience of the parties and witnesses. Accordingly, Grace Conn. and Grace Delaware respectfully request that the Zonolite Attic Insulation cases be transferred to the United States District Court for the District of Massachusetts.

Respectfully submitted,

Lawrence T. Hoyle, Jr.
Arlene Fickler
Lisa M. Salazar
R. David Walk, Jr.
Hoyle, Morris & Kerr LLP
1650 Market Street - Suite 4900
Philadelphia, PA  19103
(215) 981-5700

Dated:  August 17, 2000

Attorneys for W.R. Grace & Company (a Delaware corporation) and W.R. Grace & Company-Conn. (a Connecticut corporation)



RECEIVED

AUG 2 1 2000

LIEFF, CABRASER, HEIMANN & BERNSTEIN

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### MDL DOCKET NO. ___

### IN RE ZONOLITE ATTIC INSULATION LITIGATION

**Exhibits in Support Of Motion To Transfer To The District of Massachusetts For Coordinated Pretrial Proceedings Pursuant To 28 U.S.C. § 1407**

Lawrence T. Hoyle, Jr.
Arlene Fickler
R. David Walk, Jr.
Hoyle, Morris & Kerr LLP
1650 Market Street - Suite 4900
Philadelphia, PA  19103
(215) 981-5700

Attorneys for W.R. Grace & Company (a Delaware corporation) and W.R. Grace & Company-Conn. (a Connecticut corporation)

**13**

O97|
L-1067

RECEIVED

SEP 1 4 2000

LIEFF, CABRASER, HEIMANN & BERNSTEIN

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

---

**MDL DOCKET NO. 1376**

---

**IN RE ZONOLITE ATTIC INSULATION LITIGATION**

---

**Joinder of Sealed Air Corporation in Motion to Transfer to the
District of Massachusetts for Coordinated Pretrial Proceedings
Pursuant to 28 U.S.C. § 1407**

1.    On August 17, 2000 W.R. Grace & Co., and W.R. Grace & Co.-Conn. ("Grace") filed
a "Motion to Transfer to the District of Massachusetts for Coordinated Pretrial Proceedings Pursuant
to 28 U.S.C. § 1407" (hereafter "Motion to Transfer").

2.    Sealed Air Corporation is named as a defendant in each of the four actions
encompassed by the Motion to Transfer including:

    A.    <u>Jan Hunter, et al. v. W.R. Grace & Co., et al.</u>, Southern District of Illinois,
          Civil Action No. 00-569-GPM;

    B.    <u>Paul Price, et al. v. W.R. Grace & Co., et al.</u>, District of Montana, Missoula
          Division, Civil Action No. CV 0071-M-DWM;

    C.    <u>Edward M. Lindholm, et al. v. W.R. Grace & Co., et al.</u>, District of
          Massachusetts, Civil Action No. 00 CV 10323 (PBS) (Sealed Air Corpora-
          tion named but not served); and

D. <u>Joel Goldstein, et al. v. W.R. Grace & Co., et al.</u>, District of Massachusetts, Civil Action No. 00-10873PBS (Sealed Air Corporation named but not served) (as noted in the Motion to Transfer, <u>Goldstein</u> has now been consolidated with <u>Lindholm</u>).

3.      Sealed Air Corporation is named as a defendant in <u>Marco Barbanti v. W.R. Grace & Co.-Conn., et al.</u>, Eastern District of Washington, Civil Action No. CS-00-0311-EFS, but not <u>Arvil Daily, et al. v. W.R. Grace & Co.-Conn., et al.</u>, Southern District of Illinois, both of which were brought to the Panel's attention as related cases in the "Notice of Pendency of Potential Tag-Along Actions" filed by Grace.

4.      Sealed Air Corporation hereby joins in the Motion to Transfer and, for the reasons stated therein, requests that these actions be transferred to the District of Massachusetts for coordinated pretrial proceedings.

Respectfully Submitted,

Sheila L. Birnbaum
Skadden, Arps, Slate, Meagher &
    Flom LLP
4 Times Square
New York, New York 10036-6522
(212) 735-2450

Dated: September 11, 2000

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of September, 2000, I caused a true and correct copy of the foregoing Joinder of Sealed Air Corporation in Motion to Transfer to the District of Massachusetts for Coordinated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407 to be served by U.S. Mail postage pre-paid addressed as follows:

> Jon L. Heberling
> Roger M. Sullivan
> Allan M. McGarvey
> McGARVEY, HEBERLING, SULLIVAN &
> McGARVEY, P.C.
> 745 South Main
> Kalispel, MT  59901
>
> Darrell W. Scott
> LUKINS & ANNIS, P.S.
> 1600 Washington Trust Financial Center
> 717 W. Sprague Ave.
> Spokane, WA  99201-0466
>
> Elizabeth J. Cabraser
> LIEFF, CABRASER, HEIMANN
> & BERNSTEIN, LLP
> Embarcadero Center West, 30th Floor
> 275 Battery Street
> San Francisco, CA  94111

Edward J. Westbrook
NESS MOTLEY LOADHOLT RICHARDSON
& POOLE
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

Steven J. Toll
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
999 Third Avenue, Suite 3600
Seattle, WA  98104

Richard S. Lewis
COHEN, MILSTEIN, HAUSFELD & TOLL
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C.  20005-3934

**Attorneys for Plaintiffs in**
**Price v. W.R. Grace & Co.**

Gary L. Graham
GARLINGTON, LOHN & ROBINSON, PLLP
199 W. Pine, P.O. Box 7909
Missoula, MT  59807-7909

**Attorneys for Defendants**
**W.R. Grace & Co. and**
**W.R. Grace & Co.-Conn. in**
**Price v. W.R. Grace & Co.**

Kenneth G. Gilman
David Pastor
Edward L. Manchur
GILMAN AND PASTOR, LLP
One Boston Place, 28th fl.
Boston, MA  02108

Mark S. Williams
BORRELLI, HUTTON & WILLIAMS, P.A.
(A Professional Corporation)
376 Trapelo Road
Belmont, MA  02478

**Attorneys for Plaintiffs in**
**Lindholm v. W.R. Grace & Co.**

Robert A. Murphy
CASNER & EDWARDS LLP
One Federal Street
Boston, MA  02110

**Attorneys for Defendants**
**W.R. Grace & Co. and**
**W.R. Grace & Co.-Conn.**
**in Lindholm v. W.R. Grace & Co.**

Mark C. Goldenberg
HOPKINS GOLDENBERG, P.C.
Elizabeth V. Heller
2132 Pontoon Road
Granite City, IL  62040

John J. Stoia
MILBERG WEISS BERSHAD
HYNES & LERACH LLP
600 West Broadway
1800 One America Plaza
San Diego, CA  92101-3356

Christopher A. Seeger
SEEGER WEISS LLP
One William Street
New York, NY  10004

**Attorneys for Plaintiffs in**
**Hunter v. W.R. Grace & Company**

James H. Ferrick III
Bryan Cave LLP
One Metropolitan Square
211 North Broadway
St. Louis, MO  63102-2750

**Attorneys for Defendants
W.R. Grace & Co. and
W.R. Grace & Co.-Conn. in
<u>Hunter v. W.R. Grace & Co.</u>**

Jon L. Heberling
Roger M. Sullivan
Allan M. McGarvey
McGARVEY, HEBERLING, SULLIVAN &
McGARVEY, P.C.
745 South Main
Kalispel, MT  59901

Darrell W. Scott
Michael G. Black
Mischelle R. Fulgham
Tonya R. Hanson
LUKINS & ANNIS, P.S.
1600 Washington Trust Financial Center
717 W. Sprague Ave.
Spokane, WA  99201-0466

Elizabeth J. Cabraser
Richard M. Heimann
Donald C. Arbitblit
Fabrice N. Vincent
LIEFF, CABRASER, HEIMANN
& BERNSTEIN, LLP
Embarcadero Center West, 30th Floor
275 Battery Street
San Francisco, CA  94111

Edward J. Westbrook
Robert M. Turkewitz
Edward B. Cottingham, Jr.
Frederick J. Jekel
Christy Gruenloh
NESS MOTLEY LOADHOLT RICHARDSON
& POOLE
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465

Steven J. Toll
Tamara J. Driscoll
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
999 Third Avenue, Suite 3600
Seattle, WA  98104

Richard S. Lewis
COHEN, MILSTEIN, HAUSFELD & TOLL
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C.  20005-3934

**Attorneys for Plaintiffs in**
**Barbanti v. W.R. Grace & Company**

Thomas L. Boeder
V.L. Woolston
Leecia Welch
Mary P. Gaston
PERKINS COIE LLP
1201 Third Avenue
Suite 4800
Seattle, WA  98101

**Attorneys for Defendants**
**W.R. Grace & Co. and**
**W.R. Grace & Co.-Conn. in**
**Barbanti v. W.R. Grace & Co.**

Lou Aleksich, Jr., Clerk
United States District Court for the
  District of Montana, Missoula Division
Post Office Bldg.
P.O. Box 8537 (59807-8537)
Missoula, MT  59801

Norbert G. Jaworski, Clerk
United States District Court for the
  Southern District of Illinois
P.O. Box 249 (62202)
East St. Louis, IL  62201

Tony Anastas, Clerk
United States District Court for the
  District of Massachusetts
U.S. Courthouse
1 Courthouse Way
Boston, MA  02210

**14**

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## MDL DOCKET NO. 1376

## IN RE ZONOLITE ATTIC INSULATION LITIGATION

### Reply Brief In Support Of Motion To Transfer To The District of Massachusetts For Coordinated Pretrial Proceedings Pursuant To 28 U.S.C. § 1407

W.R. Grace & Company (a Delaware corporation) ("Grace Delaware") and W.R. Grace & Company-Conn. (a Connecticut corporation) ("Grace Conn.") submit this reply brief in support of their motion to transfer the Zonolite Attic Insulation Cases in which movants are named as defendants to the United States District Court for the District of Massachusetts for coordinated pretrial proceedings before the Honorable Patti B. Saris. The parties to the four cases that were the subject of the motion all agree that coordinated pretrial proceedings are appropriate and that the cases should be transferred to a single district for such proceedings. The District of Massachusetts is the preferred location of the defendants and the *Lindholm/Goldstein* plaintiffs, whereas the plaintiffs in *Price* are neutral and the plaintiff in *Hunter* favors the

Southern District of Illinois.  Consideration of the relevant factors demonstrates that the District of Massachusetts, in addition to being the preferred choice of district of more of the parties, is the logical choice: more documents and witnesses are located in the District of Massachusetts than in any other district; the relevant offices of defendant Grace Conn. are located there; the District of Massachusetts is the most convenient location for counsel, most of whom are located in the East Coast; and the District of Massachusetts has the lowest caseload per active judge of any of the three districts in question.  The cases should be transferred to the District of Massachusetts.

## FACTUAL BACKGROUND[1]

Developments since Grace Delaware and Grace Conn. filed their motion to transfer have further demonstrated the need for coordinated pretrial proceedings and the propriety of transferring the case to the District of Massachusetts.  After the motion to transfer was filed, the two state class actions referenced in the motion to transfer were removed to federal court.  Grace Conn. and Grace Delaware promptly filed a Notice of Pendency of Potential Tag-Along Actions concerning these cases.  Like the first four actions, these two new actions allege dangers from Zonolite Attic Insulation and seek to represent classes of owners and occupiers of real property in which Zonolite Attic Insulation has been installed.  One of these actions, *Barbanti*, was subsequently remanded to state court.  The other case, *Daily*, remains in the United States District Court for the Southern District of Illinois, although plaintiffs have moved to remand *Daily* to state court.  The *Daily* litigation has not progressed very far to date – defendant Grace Conn. has not yet answered the complaint, and no discovery has been initiated.

The procedural developments in *Lindholm/Goldstein*, *Price*, and *Hunter* show that the same issues will be briefed and addressed in three different courts.  In *Lindholm/Goldstein*, the parties are in the middle of discovery on class certification issues, with briefing on class

---

[1] In their memoranda, counsel for each of the plaintiffs have included gratuitous statements that set forth their views concerning the merits of the Zonolite Attic Insulation litigation and the conduct of the defendants.  Grace Conn. and Grace Delaware disagree vigorously with these statements, but will not respond to them in this context, because the merits of the Zonolite Attic Insulation litigation and the conduct of the defendants are not at issue before this Panel.

active approach to case management . . . and has raised the issue of coordination of the federal cases and cooperation with state courts." Memorandum of *Price* Plaintiffs in Support of Transfer at 1.

By contrast, the other cases have not progressed as far or had as much judicial involvement. Answers have not yet been filed in *Hunter* or in *Daily*. In *Price*, the parties have started class certification discovery, but written requests were just recently served, and the court just recently held the first status conference in the case. Thus, the relative status of the cases favors transfer to Massachusetts.

> **C.    Massachusetts has the lightest case load per active judge of any of the three districts.**

Counsel for the plaintiff in *Hunter* offers statistics about the number of cases in each district to support the claim that the cases should be transferred to Illinois or Montana, but the statistics used, showing the raw number of cases per district, have little meaning, or else every multidistrict action would be transferred to District of Maine, the court with the fewest pending cases. The more relevant statistic is the number of pending cases per active judge in each of the three districts. See, e.g., In re Petroleum Products Antitrust Litigation, 419 F. Supp. 712, 719 (J.P.M.L. 1976) (transferring cases to district with "significantly lighter caseload per judge"). Those figures, presented in the following table, show that the District of Massachusetts has fewer pending cases per active judge than either the Southern District of Illinois or the District of Montana.

|  | Number of Cases Pending as of June 30, 2000 | Number of Active Judges | Number of Pending Cases Per Active Judge |
|---|---|---|---|
| United States District Court for the District of Massachusetts | 3701 | 14 | 264 |
| United States District Court for the Southern District of Illinois | 1202 | 4 | 300 |
| United States District Court for the District of Montana | 746 | 2 | 373 |

These statistics do not reveal the full extent of the problem in the District of Montana. That court has a backlog caused by the recent death and recent or imminent retirement of judges, and Ninth Circuit Chief Judge Proctor Hug Jr. has assigned visiting judges from other districts to reduce the backlog. See "Ninth Circuit Alarmed by State's Shortage," Montana Lawyer, August 2000, at 9 (reporting on letter from Chief Judge Hug that urged special consideration of a pending judicial nomination and discussed measures being taken by Chief Judge Hug to address the shortage); "Montana Judges Stepping Down," Montana Lawyer, August 2000, at 8 (referring to"[a] crisis looming for federal courts in Montana") (both articles attached hereto as Exhibit A).

      Counsel for the *Hunter* plaintiff also relies on statistics concerning the time it takes these three courts to resolve cases, but again relies on the wrong statistics. Counsel stresses the time to trial in these courts, but the motion seeks transfer only for coordinated pretrial purposes; indeed, the transferee court may not transfer the case to itself for trial. See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). The time to trial is therefore not relevant to the pending motion and is not made relevant by the speculative possibility that Congress will enact a law to allow district judges to retain transferred cases for trial. The more relevant statistic, which the Panel has relied on in other cases, see, e.g., In re Petroleum Products Antitrust Litigation, 419 F. Supp. at 719, is the time it takes the respective districts to dispose of all actions. According to the chart in Exhibit 2 to the *Hunter* plaintiff's memorandum, the median time from filing to disposition is nine months in Massachusetts and the Southern District of Illinois and eleven months in Montana – statistics which do not favor the Southern District of Illinois and weigh against the District of Montana.

      In sum, the relevant statistics for judicial case loads and time to disposition show that the District of Massachusetts would be able to handle the additional cases and dispose of them expeditiously. This factor, along with the convenience for the parties and witnesses and the relative status of the cases, strongly favors transferring the Zonolite Attic Insulation cases to the District of Massachusetts.

## CONCLUSION

For the foregoing reasons, as well as for the reasons stated in their initial memorandum, Grace Conn. and Grace Delaware respectfully request that the Zonolite Attic Insulation cases be transferred to the United States District Court for the District of Massachusetts.

Respectfully submitted,

Arlene Fickler
Lisa M. Salazar
R. David Walk, Jr.
Wendi S. Meltzer
Hoyle, Morris & Kerr LLP
1650 Market Street - Suite 4900
Philadelphia, PA  19103
(215) 981-5700

Dated:  September 18, 2000          Attorneys for W.R. Grace & Company (a Delaware corporation) and W.R. Grace & Company-Conn. (a Connecticut corporation)

9



# THE MONTANA

August 2000
Volume 25, No. 11

*Lawyer*

THE STATE BAR OF MONTANA

# THE JUDICIARY'S LONG, HOT SUMMER



■ Suddenly, a critical shortage of judges in Montana, as death and retirement strike.

■ Montana Supreme court issues an emergency order to quell its out-of-control caseload.



And Scott Albers is still irritating the hell out of them.

**Plus: Proposed amendments to State Bar of Montana by-laws**

A crisis looming for federal courts in Montana

# Montana judges stepping down

*Federal-judge announcements, one death, leave a critical shortage; a district judge retires.*

A chief federal judge in Montana and a state district judge have announced their intentions to step down or take semi-retirement from their judgeships.

They are:

■ Chief U.S. District Judge Jack Shanstrom, who has announced his intention to take "senior status" — continuing to work as a federal judge but with a reduced caseload — in November 2001, and perhaps sooner.

■ U.S. District Judge Charles Lovell, who unexpectedly announced his move to a senior status in June, and whose replacement has already been nominated by President Clinton.

■ District Judge Maurice R. Colberg, of Montana's 13th Judicial District (Yellowstone County), who will retire on Nov. 30, after serving in the judgeship for 11 years.

Meanwhile, Senior U.S. District Judge Paul Hatfield of Great Falls died in July. (see story on Page 29).

THE STATE'S Judicial Nomination Commission is taking applications for Judge Colberg's replacement (see accompanying story), but the main concern comes over the filling of the federal judgeships. The fear is that a delay in replacing Judge Lovell will put more work pressure on Judge Shanstrom and other federal judges in Montana — and the vacating of Judge Shanstrom's present status would only make matters worse.

Sen. Max Baucus, D-Mont., with support of his Republican Senate colleague from Montana, Conrad Burns, recommended to President Clinton in July that U.S. Magistrate Richard W. Anderson of Billings fill Judge Lovell's position. But winning approval of the Republican-controlled U.S. Senate won't be any easy task for a lame-duck president. If George W. Bush wins the presidential nomination, he may appoint someone else for Judge Lovell's seat.

Judge Anderson, 62, told the *Billings Gazette* that he would keep his current chambers in Billings if his nomination were confirmed, even though Judge Lovell was based in Helena. Judge Anderson said he would commute to Helena and Great Falls to hear cases.

Judge Anderson said that Montana is short of federal judges following Judge Lovell's retirement and the death of Judge Hatfield, who also had been a senior judge with a reduced workload. He told the *Gazette* that if the Lovell position remains vacant for long, things could start to pile up on the two sitting U.S. district judges for Montana, Judge Shanstrom in Billings and Donald Molloy in Missoula.

MEANWHILE, Judge Shanstrom, who was appointed to the federal bench in

## Applications being accepted for state district judge seat

The Judicial Nomination Commission is now accepting applications for state district judge in the Yellowstone County district being vacated by Judge Colberg. Applications will be accepted until Aug. 21, the Commission said.

The position of state district judge pays $77,439 a year, and that will be raised to $82,606 on July 1, 2001. An appointment would fill out the remaining two years of Judge Colberg's seat — to retain the seat an appointee will have to stand for election in the 2002 general election.

Those interested in applying may obtain an application form from Frank S. Stock, secretary of the Nomination Commission at P.O. Box 1001, Polson MT 59860 (phone: 406-883-2642) or Commission member L. Randall Bishop, P.O. Box 3353, Billings MT 56103 (phone: 406-245-7555).

Following the close of the application period, the public will have 30 days to comment on those seeking the appointment. The Commission will then meet this fall to interview the applicants. They will select from three to five candidates and forward the names to Gov. Marc Racicot for his selection. The appointment is subject to confirmation by the Montana Senate in the next Legislature.

# Ninth Circuit alarmed by state's shortage

Chief Judge Procter Hug Jr. of the U.S. Ninth Circuit Court of Appeals, which includes Montana, sent a letter in late July to Sen. Orrin Hatch, R-Utah, chairman of the Senate Judiciary Committe, urging special consideration of Judge Richard Anderson's nomination to fill the federal judgeship being vacated by Judge Charles Lovell of Helena.

"There are currently nearly 1,000 cases pending in the Montana (U.S.) District Court," Judge Hug was quoted in the *Billings Gazette* as writing in the letter. "The caseload is complicated by the large geographic area for which district judges are responsible," he wrote.

"Of particular concern is the substantial criminal calendar," Judge Hug wrote to Sen. Hatch. "As you know, the Speedy Trial Act established very strict deadlines for processing criminal cases."

Judge Hug said he has assigned visiting judges from other districts to help Montana and also designated Ninth Circuit Judge Sidney R. Thomas to hear cases from the U.S. District Court in addition to his appellate caseload, the *Gazette* said.

"However, these are temporary stopgap measures that cannot continue indefinitely," Judge Hug wrote.

The *Billings Gazette* also said that Judge Thomas, as chief of the Northern Administrative Unit of the Ninth Circuit Court, also sent a letter to Sen. Hatch.

"If the current vacancy is not timely filled, there is a great probability that Montana will have only one active district judge to serve an area greater than the combined states of New York, Pennsylvania, Maryland, Virginia and Delaware... The district has already been forced to request visiting judges on very short notice to avoid having criminal cases dismissed for failure to comply with the Speedy Trial Act."

Judge Thomas said that some of the 1,000 active cases in district have been pending for more than a decade, and that on average, 1,000 new cases are filed in Montana's federal courts each year.

1990, said he would take senior status earlier than November 2001 if he were eligible. He said he would officially inform the new president right after the election this November.

Judge Shanstrom has 36 years of judicial experience. He was a state district judge for 18 years before becoming federal magistrate in Billings for more than seven years. He is a graduate of the University of Montana Law School.

**STATE DISTRICT JUDGE COLBERG'S** retirement will leave a vacancy for a judge beginning Dec. 1, the Judicial Nomination Commission said.

In a letter to the Montana Supreme Court, Judge Colberg said he turned 55 in December and had been thinking about retiring for some time even though he has two years left in his term, according to a story in the *Billings Gazette*. He was appointed to the bench in late 1989 by Gov. Stan Stephens to fill a vacancy created when then-judge Diane Barz was named to the Montana Supreme Court, the *Gazette* reported. Justice Barz later resigned and is a judge again in the 13th District.

Judge Colberg is a 1960 graduate of the University of Montana Law School and was a law clerk for the Montana Supreme Court before returning to Billings, his home town, to enter private practice, the *Gazette* said. He was a partner in the firm of Sweeney, Colberg, Koessler & Doak before being appointed to the bench. ❍

---

*PACE, from Page 6*

is at the briefing stage and that it is necessary we eliminate this source of delay, commencing January 1, 2001, motions for extension of time to file briefs will no longer be routinely granted except in cases where the inability to timely file a brief is caused by the inability of the court reporter to timely transcribe the proceedings.

All motions for extension of time to file briefs must be supported by an affidavit demonstrating diligence and substantial need. All such motions must be filed at least seven (7) days before the expiration of the time prescribed for the filing of the brief. The affidavit in support must state: (1) when the brief is due; (2) when the brief was first due; (3) the length of the requested extension; (4) the reason the extension is necessary; (5) the movant's explanation establishing that the movant has exercised diligence and has substantial need for the extension and that the brief will be filed within the time requested; and (6) whether any other party separately represented objects to the request. A conclusory statement of justification being the "press of other business" will not constitute a showing of diligence and substantial need.

To this extent Rule 21(b), M.R.App.P., is modified accordingly.

**5. Non-cite and Memorandum Opinions.** We will attempt to dispose of more cases using non-cite and memorandum opinions. Furthermore, we will attempt to reduce the length of these types of opinions. ❍

## CERTIFICATE OF SERVICE

The undersigned, counsel for W.R. Grace & Company and W.R. Grace & Company-Conn., hereby certifies that the foregoing Reply Brief in Support of Motion to Transfer to the District of Massachusetts for Coordinated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407 was served on September 18, 2000, by United States Postal Service First Class Mail, postage prepaid, on counsel on the attached service list, and on the following counsel in the Tag-Along Actions:

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West, 30th Floor
275 Battery Street
San Francisco, CA  94111

Attorneys for plaintiffs in
Barbanti v. W.R. Grace & Company-Conn.

Sheila L. Birnbaum
Bert L. Wolff
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY  10036

Attorneys for defendant
Sealed Air Corporation in
Barbanti v. W.R. Grace & Company-Conn.

Stephen M. Tillery, Esquire
Christine J. Moody, Esquire
CARR, KOREIN, TILLERY ET AL.
10 Executive Woods Court
Swansea, IL  62226

Attorneys for Plaintiffs in
Daily v. W.R. Grace & Co.-Conn.

R. David Walk, Jr.

JUDICIAL PANEL ON MULTIDISTRICT LITIGATION - PANEL ATTORNEY SERVICE LIST

DOCKET: 1,376 - In re Zonolite Attic Insulation Products Liability Litigation
STATUS: Pending

September 01, 200

Page: 1

TRANSFEREE INFORMATION
  Dist:
  Judge:

| ATTORNEY - FIRM | REPRESENTED PARTY(s) |
|---|---|
| Birnbaum, Sheila L.<br>Skadden, Arps, Slate, Meagher & Flom<br>Four Times Square<br>New York, NY  10036 | => Sealed Air Corp.* |
| Cabraser, Elizabeth J.<br>Lieff, Cabraser, Heimann & Bernstein, LLP<br>275 Battery Street<br>Suite 3000<br>San Francisco, CA  94111 | => Prebil, John*; Prebil, Margery*; Price, Paul* |
| Fickler, Arlene<br>Hoyle, Morris & Kerr, LLP<br>One Liberty Place<br>Suite 4900<br>1650 Market Street<br>Philadelphia, PA  19103 | => W.R. Grace & Co.*; W.R. Grace & Co.-Conn.* |
| Goldenberg, Mark C.<br>Hopkins Goldenberg, P.C.<br>2227 South State Route 157<br>Edwardsville, IL  62025 | => Hunter, Jan |
| Manchur, Edward L.<br>Gilman & Pastor, L.L.P.<br>Stonehill Corporate Center<br>999 Broadway<br>Suite 500<br>Saugus, MA  01906 | => Goldstein, Joel*; Lindholm, Edward M.*; Szufnarowski, John J.* |

NOTE: Please refer to the title page for complete report scope and key.
  *   Signifies that an appearance was made on behalf of the party by the representing attorney.
  #   Specified party was dismissed in some, but not all, of the actions in which it was named as a party.
  NOTE: All dismissed parties (and counsel representing only dismissed parties) were suppressed.

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO            2042
CONNECTION TEL        301#0987#19782329668#
CONNECTION ID
ST. TIME           09/25 08:14
USAGE T            06'14
PGS. SENT            16
RESULT             OK
```

# LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
## ATTORNEYS AT LAW
### EMBARCADERO CENTER WEST
### 275 BATTERY STREET, 30TH FLOOR
### SAN FRANCISCO, CALIFORNIA  94111-3339
### TELEPHONE:  (415) 956-1000
### FACSIMILE:  (415) 956-1008

# FAX TRANSMITTAL
## CONTENTS PRIVILEGED AND CONFIDENTIAL

**DATE:**       September 22, 2000

**TO:**                                                                  **FAX NUMBERS**

Allan M. McGarvey, Jon L. Heberling and Roger Sullivan
MCGARVEY, HEBERLING, SULLIVAN & MCGARVEY, P.C. . . . . . . . . **(406) 752-7124**

Darrell W. Scott, Michael G. Black, Mischelle R. Fulgham and Tonya R. Hanson
LUKINS & ANNIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **(509) 747-2323**

Edward J. Westbrook, Robert M. Turkewitz, Edward B. Cottingham, Jr.,
Frederick J. Jekel and Christy Gruenloh
NESS MOTLEY, et al. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **(843) 216-9440**

Steven J. Toll and Tamara J. Driscoll
COHEN, MILSTEIN, HAUSFELD & TOLL . . . . . . . . . . . . . . . . . . . . **(206) 521-0166**

Richard S. Lewis
COHEN, MILSTEIN, HAUSFELD & TOLL . . . . . . . . . . . . . . . . . . . . **(202) 408-4699**

Jan Schlichtmann . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **(978) 232-9668**

**CC:**         Elizabeth J. Cabraser, Fabrice Vincent, Lori E. Andrus and John Low-Beer

**FROM:**       Jasmine Feeney

**RE:**         Zonolite/Asbestos Litigation

**COMMENTS:**       **Please see attached.**

Number of Pages Including This Sheet: _____

**15**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
IN RE:                          )
ZONOLITE ATTIC INSULATION       ) MDL No. 1376
PRODUCTS LIABILITY              )
LITIGATION                      )
_____)
```

**PRETRIAL CASE MANAGEMENT ORDER**

February 9, 2001

Saris, U.S.D.J.

Pursuant to the December 7, 2000 Transfer Order of the

Judicial Panel on Multidistrict Litigation providing for the

transfer and coordination of the federal actions comprising <u>In</u>

<u>re:  Zonolite Attic Insulation Products Liability Litigation</u>, MDL

No. 1376, to this Court for the conduct of discovery and pretrial

proceedings under 28 U.S.C. § 1407, and as recommended by the

*Manual for Complex Litigation, Third,* §§ 21.1-21.23; 41.2, the

Court hereby ORDERS:

1.  **Pretrial Consolidation**

The cases transferred to the Court pursuant to 28 U.S.C.

§1407 by any current or subsequent order of the Judicial Panel on

Multidistrict Litigation in MDL No. 1376 and any other related

case filed in, removed to or transferred to this Court shall be

consolidated for pretrial purposes.  This Order does not

constitute a determination that these actions should be

consolidated for trial, nor does it have the effect of making any entity a party to an action in which it has not been joined and served in accordance with the Federal Rules of Civil Procedure.

### a.   **Master Docket and File**

The clerk will maintain a master docket and case file under the style "In re Zonolite Attic Insulation Products Liability Litigation," MDL No. 1376.  All orders, pleadings, motions, and other documents will, when filed and docketed in the master case file, be deemed filed and docketed in each individual case to the extent applicable.

### b.   **Captions; Separate Filing**

Orders, pleadings, motions, and other documents will bear a caption similar to that of this Order.  If generally applicable to all consolidated actions, they shall include in their caption the notation that they relate to "ALL ACTIONS" and be filed and docketed only in the master file.  Documents intended to apply only to particular cases will indicate in their caption the District of Massachusetts case number of the case(s) to which they apply, and extra copies shall be provided to the clerk to facilitate filing and docketing both in the master case file and the specified case files.

### c.  **Pretrial Orders**

All proposed orders submitted to the Court shall be entitled "Pretrial Order No."

### 2.  **Rules of Procedure**

Except as otherwise provided herein or by further order of the Court, the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts shall govern all further procedural matters in the MDL 1376 actions with the following exception:

> Briefs filed in connection with  the class certification motions, dispositive motions, and Daubert motions may exceed the limitations set forth in Local Rule 7.1, provided that no such principal brief shall exceed 50 pages in length and no such reply brief shall exceed 25 pages in length.

### 3.  **Organization of Plaintiffs' Counsel**

Pending the outcome of the Grace defendants' motions to disqualify, Plaintiffs' Executive Committee shall be:

> Elizabeth J. Cabraser
> LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
> 275 Battery Street, 30th Floor
> San Francisco, CA  94111-3339
> Telephone:  (415) 956-1000
> Facsimile:  (415) 956-1008
> and
>
> 214 Union Wharf
> Boston, MA  02109-1216
> Telephone:  (617) 720-5000
> Facsimile:  (617) 720-5015
>
> David Pastor
> GILMAN AND PASTOR, LLP

3

Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA  01906
Telephone:  (781) 231-7850
Facsimile:  (781) 231-7840

John J. Stoia, Jr.
MILBERG, WEISS, BERSHAD, HYNES & LERACH, LLP
600 West Broadway
1800 One America Plaza
San Diego, CA  92101-5050
Telephone:  (619) 231-1058
Facsimile:  (619) 231-7423

Edward J. Westbrook
NESS MOTLEY LOADHOLT RICHARDSON & POOLE
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9440

        a.  Plaintiffs' Executive Committee shall be generally
responsible for coordinating the activities of plaintiffs during
pretrial proceedings and shall:

                i.  determine (after such consultation with co-
counsel as may be appropriate) and present (in briefs, oral
argument, or such other fashion as may be appropriate, personally
or by a designee) to the Court and opposing parties the position
of the plaintiffs on all matters arising during pretrial
proceedings;

                ii.  coordinate the initiation and conduct of
discovery on behalf of plaintiffs consistent with the
requirements of Fed. R. Civ. P. 26(b)(1) and (2), and (g),
including the preparation of joint interrogatories and requests
for production of documents and the examination of witnesses in
depositions;

                iii.  conduct settlement negotiations on behalf of
plaintiffs, but not enter binding agreements except to the extent
expressly authorized;

ıv.  delegate specific tasks to other counsel in a manner to ensure that pretrial preparation for the plaintiffs is conducted effectively, efficiently, and economically;

v.  enter into stipulations, with opposing counsel, necessary for the conduct of the litigation;

vi.  prepare and distribute to the parties periodic status reports;

vii.  maintain adequate time and disbursement records covering services as Executive Committee members;

viii.  monitor the activities of co-counsel to ensure that schedules are met and unnecessary expenditures of time and funds are avoided; and

ix.  perform such other duties as may be incidental to proper coordination of plaintiffs' pretrial activities or authorized by further order of the Court.

b.  No discovery or other actions or work in this litigation shall be undertaken by plaintiffs except at the direction of, or with permission of, the Plaintiffs' Executive Committee.

c.  The Plaintiffs' Executive Committee, or one of the Plaintiffs' Counsel designated by Plaintiffs' Executive Committee shall:

i.  maintain and distribute to co-counsel and to Defendants' Counsel an up-to-date service list;

ii.  receive and, as appropriate, distribute to co-counsel orders from the Court and documents from opposing parties and counsel; and

iii.  maintain and make available to co-counsel at reasonable hours a complete file of all documents served by or upon each party except such documents as may be available at a document depository.

## 4.  **Class Action Certification Proceedings**

Each plaintiff who has filed a class action complaint and

who intends to seek class certification shall file a motion for

class certification and class notice within seven days of receipt
of this order.  In the moving papers filed to date, the
plaintiffs moving for class certification in these proceedings
identified the named plaintiffs who seek to serve as class
representatives for the proposed class and the claims sought to
be certified by the putative class.  Defendants' opposition(s)
shall be filed on or before February 22, 2001. Plaintiffs shall
file their reply to defendants' opposition within 30 days after
the filing of defendants' opposition.  Defendants shall file
their sur-reply, if any, within 15 days after the filing of the
plaintiffs' reply. The Court shall hear the motion(s) for class
certification on April 25, 2001, at 2:00 p.m.  Plaintiffs who
have filed class action complaints in cases that are instituted
in, removed to, or transferred to this Court after the entry of
this Order shall file motions for class certification, including
the elements set forth above, within 45 days of their filing in
this court or transfer.  Defendants' opposition(s) to class
certification shall be filed within 30 days of the filing of
plaintiffs' motion(s). Plaintiffs shall file their reply to
defendants' opposition within 30 days after the filing of
defendants' opposition.  Defendants shall file their sur-reply,
if any, within 15 days after the filing of the plaintiffs' reply.

## 5. __Amendments to the Complaints__

Defendants agreed that plaintiffs could amend their complaints, without any objection from Defendants or leave of Court, provided that any such amended complaints were filed prior to January 23, 2001. In the absence of such amendment, no amendments to complaints shall be used for the class certification motion until after the Court has ruled on the plaintiffs' motion for class certification or the Court has granted leave for such purposes.

## 6. __Motions to Disqualify__

Any party may supplement its filings with respect to the Grace defendants' pending motions to disqualify the firm of Lieff, Cabraser, Heimann & Bernstein, LLP in the __Price__ case and to disqualify the firm of Milberg, Weiss, Hynes and Lerach, LLP in the __Hunter__ case on or before January 30, 2001. Any party may respond to such filing on or before February 15, 2001. The Court shall hear these motions on April 25, 2001.

## 7. __Dispositive Motions and Daubert Motions__

Any motions to dismiss, motions for summary judgment, motions for partial summary judgment, and Daubert motions (as well as oppositions, reply briefs and sur-reply briefs) shall be filed no later than the dates set forth in paragraph 14 below.

8. **Privileges Preserved**

No communication among plaintiffs' counsel or among defendants' counsel shall be taken as a waiver of any privilege or protection.

9. **Service of Documents**

a. **Orders**

A copy of each order will be provided to Plaintiffs' Executive Committee for distribution as appropriate to co-counsel.  (Service upon Ms. Cabraser shall be made to the Boston office, c/o Thomas M. Sobol).  Each Defendants' Counsel listed on Exhibit A shall be served with each order by the Court contemporaneous with service upon Plaintiffs' Executive Committee.

b. **Pleadings, Motions, and Other Documents**

Plaintiffs' Executive Committee will each be provided with copies of each pleading, motion, or other document filed by a party (service upon Ms. Cabraser shall be made to the Boston office, c/o Thomas M. Sobol); with service on Plaintiffs' Executive Committee constituting service on other attorneys and parties for whom Plaintiffs' Executive Committee is acting. Defendants' Counsel will each be provided with copies of all such documents.  Manner of service shall be by hand or by facsimile (with hard copy to follow) or by next day delivery.  For the

purpose of calculating the deadlines for responding to a
pleading, motion, or other document, service shall be deemed to
have been completed on the business day after the pleading,
motion, or other document has been delivered to a party's Boston
counsel by facsimile or other delivery.  Given the nationwide
dispersal of counsel for the parties and the obligation of
Plaintiffs' Executive Committee to circulate copies of documents
to the other attorneys and parties for whom it is acting, each
party is afforded three additional calendar days for responding
to any pleading or discovery beyond that authorized by the
Federal Rules of Civil Procedure or the local rules of the Court.

### 10.  **Admission of Counsel**

Attorneys admitted to practice and in good standing in any
United States District Court are admitted *pro hac vice* in this
litigation without the necessity of filing a motion.  Association
of local counsel is not required.  However, all attorneys are
required to read and follow the local rules.

### 11.  **Preservation of Evidence**

a.  During the pendency of this litigation and for thirty
(30) days after entry of the final order resolving the
litigation, all parties are restrained and enjoined from
altering, destroying or permitting the destruction of any
relevant Document or other item that relates in a reasonably

9

direct manner to the issues set forth in the pleadings in the MDL 1376 actions that is in the possession, custody or control of a party, wherever such document is located.  "Document" is defined to be synonymous in meaning and equal in scope to the usage of that term in Fed. R. Civ. P. 34(a).  A non-identical copy is a separate document within the meaning of this term.

b.  Counsel are directed to confer to resolve questions as to what documents are outside the scope of this Order or otherwise need not be preserved and as to an earlier date for permissible destruction of particular categories of documents. If counsel are unable to agree, any party may apply to this Court for clarification or relief from this Order.

c.  Further, the plaintiffs shall not destroy, alter or remove any Zonolite Attic Insulation in any of their properties without first notifying the defendants of their intention to do so and affording defendants a full and fair opportunity to inspect and/or test the insulation subject to the proposed destruction, alteration or removal, provided, however, that (i) in the event of emergencies a plaintiff may take actions reasonable under all the circumstances, but must also provide notice to plaintiffs' counsel of those circumstances who, in turn, must notify defendants and (ii) a full and fair opportunity will be deemed to have been provided upon the earlier of (i)

inspection or (ii) after the expiration of six months from this Order or a case has been transferred to this Court subsequent to the Order.

**12. Discovery**

a. Discovery that has already been issued shall continue in accordance with the Federal Rules of Civil Procedure.

b. Mandatory disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(B) shall be served by all parties by February 15, 2001.

c. If any of the named plaintiffs moving for class certification or proposed as class representatives in any of the consolidated actions have not previously been deposed by defendants or have not previously produced documents to defendants or have not previously permitted inspections and testing in their buildings, plaintiffs shall cooperate to produce such plaintiffs for deposition and their documents for inspection and copying, and permit defendants to inspect and perform testing in their buildings no later than February 15, 2001. All named plaintiffs who have previously provided discovery shall supplement their responses by February 15, 2001.

d. Defendants shall produce the following documents and things to the designee(s) of the Plaintiffs' Executive Committee on or before May 18, 2001 (and on dates sooner when such documents are available so as to effectuate rolling production

from this date forward):  (i) all documents produced to the EPA in Denver; (ii) all compact disks containing scanned documents from Grace's expanding plant facilities produced to EPA in Denver, (iii) all documents responsive to outstanding document requests which are located  in Grace's Cambridge property not produced in the Boston repository, and (iv) all other documents that are responsive to any and all other document requests.

e.  Depositions of fact witnesses may commence forthwith and all non-expert discovery shall be completed by October 31, 2001.

f.  Disclosure of expert witnesses as required by Fed. R. Civ. Pro. 26(a)(2), accompanied by any and all written reports prepared by such expert witnesses in any of these consolidated actions, shall be made by each side as follows:  the plaintiffs shall make any such disclosures by August 1, 2001; the defendants shall make any such disclosures by September 14, 2001.

g.  At least two weeks prior to the deposition of any expert witness, the expert shall produce a complete copy of his or her file in any of these consolidated actions, and the party taking the deposition shall provide the expert with any documents which will be discussed at the deposition.

h.  Depositions of expert witnesses may be taken at any time after the service of the expert witnesses' disclosures, and all expert discovery shall be completed by January 5, 2002.

All supplemental information required under Fed. R. Civ. P. 26(e) shall be submitted by January 5, 2002.

i.   The parties shall use their best efforts to coordinate discovery taken in these consolidated cases with the discovery taken or to be taken in the state court Zonolite Attic Insulation cases to avoid the duplication of discovery.  Plaintiffs' counsel in these consolidated cases who also represent plaintiffs in state court cases shall double- (or multi-) caption all written discovery served on defendants and all depositions taken.   In addition, all depositions of persons whose testimony will likely be relevant both in these cases and in the related state court cases should ordinarily be cross-noticed for use in all such cases.

13.   **Later Filed Cases**

The terms of this Order, including pretrial consolidation, shall apply automatically to actions later instituted in, removed to, or transferred to this Court (including cases transferred for pretrial purposes under 28 U.S.C. § 1407).  The Clerk shall mail a copy of this Order to counsel for any party in such action that has not previously been a party to a suit in this consolidated litigation.  Objections to such consolidation or other terms of this order shall promptly be filed, with a copy served on Plaintiffs' Executive Committee and defendants' counsel.

14. **Schedule**

Unless otherwise ordered, the following schedule shall apply to pretrial proceedings in the currently pending consolidated cases.

<u>Event</u>

| | |
|---|---|
| Plaintiffs may amend complaint(s) without leave of Court. | January 23, 2001 |
| Plaintiffs file and serve motion for class certification and class notice. | January 23, 2001 |
| Parties file a proposed, joint case management order No. 1 (and, to the extent necessary, competing language with respect to areas where disagreement remains.) | January 26, 2001 |
| Parties file summaries of their respective positions. | January 26, 2001 |
| Parties may supplement their filings on the pending motions to disqualify. | January 30, 2001 |
| Parties may respond to any January 30, 2001 supplemental filings on the pending motions to disqualify. | February 15, 2001 |
| Mandatory disclosures to be served by all parties. | February 15, 2001 |

14

| | |
|---|---|
| Deadline for document productions by and depositions of named proposed class representatives moving for class certification; as well as inspection and testing of their buildings. | February 15, 2001 |
| Defendants file and serve Defendants' opposition to Plaintiffs' motion for class certification and class notice. | February 22, 2001 |
| Last date by which amendments pursuant to Fed. R. Civ. P. 15(a) may be served. | March 16, 2001 |
| Plaintiffs file and serve reply, if any, to Defendants' opposition to motion for class certification and class notice. | No later than 30 days after filing of Defendants' opposition. |
| Defendants file and serve any sur-reply to motion for class certification and class notice. | No later than 15 days after filing of Plaintiffs' reply. |
| Hearing on Defendants' motions to disqualify. | April 25, 2001 |
| Hearing on Plaintiffs' motions for class certification and class notice. | April 25, 2001 |
| Deadline for Grace defendants to produce documents in accordance with paragraph 12(d) above. | May 18, 2001 |

| | |
|---|---|
| Disclosure of information about Plaintiffs' expert witnesses. | August 1, 2001 |
| Disclosure of information about Defendants' expert witnesses. | September 14, 2001 |
| Close of fact discovery. | October 31, 2001 |
| Close of expert discovery. | January 5, 2002 |
| Deadline for supplementation of discovery pursuant to Fed. R. Civ. P. (26(e). | January 5, 2002 |
| Parties to file and serve any motions for summary judgment pursuant to Fed. R. Civ. P. 56; parties to serve any motions in limine to preclude expert or other testimony on any grounds other than known. | January 31, 2002 |
| Parties file and serve oppositions to any motions for summary judgment, as well as any motions in limine to preclude expert or other testimony. | February 28, 2002 |
| Parties file and serve replies, if any, to oppositions to motions for summary judgment; as well as motions to preclude testimony. | March 15, 2002 |
| Parties file and serve sur-replies, if any, to oppositions to motions for summary judgment; as well as motions to preclude testimony. | March 30, 2002 |

Hearing on pending motions        April 5,
for summary judgment and          2002
any motions in limine to
exclude expert or other
testimony or evidence.

Final pretrial conference.        May 13,
                                  2002

Trial (the extent and scope       June 5,
of which will later be            2002
determined) commences.

   **SO ORDERED**, this 9 day of February, 2001.


                              Patti B. Saris
                              United States District Judge

EXHIBIT A

**Counsel for Defendants W. R. Grace & Co. and W. R. Grace & Co. - Conn.**

Robert A. Murphy
Casner & Edwards
One Federal Street
Boston, MA   02110
Telephone:   617-426-5900
Facsimile:   617-426-8810


Arlene Fickler
Hoyle, Morris & Kerr LLP
One Liberty Place, Suite 4900
1650 Market Street
Philadelphia, PA   19103
Telephone:   215-981-5850
Facsimile:   215-981-5959


James Restivo
Reed Smith LLP
435 6th Avenue
Pittsburgh, PA   15219
Telephone:   412-288-3122
Facsimile:   412-288-3063


**Counsel for Sealed Air Corporation**

James R. Carroll
Skadden, Arps, Slate, Meagher & Flom, LLP
One Beacon Street
Boston, MA   02108
Telephone:   617-573-4800
Facsimile:   617-573-4822


Sheila Birnbaum
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, NY   10036
Telephone:   212-735-2450
Facsimile:   212-735-2000