**16**

**FILE COPY**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | MDL Docket No. 1376 |
| ZONOLITE ATTIC INSULATION PRODUCTS LIABILITY LITIGATION | ) ) ) ) | |
| _____ | ) | |
| PAUL PRICE, JOHN PREBIL and MARGERY PREBIL, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. CV-0071-M-DWM (Transferred from the District of Montana, Missoula Division) |
| W.R. GRACE & COMPANY (a Delaware corporation); W.R. GRACE & COMPANY CONN. (a Connecticut Corporation); W.R. GRACE & CO., a/k/a GRACE, an association of business entities; SEALED AIR CORPORATION (a Delaware corporation), | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

The plaintiffs in *Price, et al. v. W.R. Grace & Company, et al.*, C.A. No. CV 0071-M-DWM (transferred from the District of Montana, Missoula Division)(the "*Price Action*") move this Court to enter an order certifying the following class:

> All persons who own or occupy real property in the United States in which Zonolite Attic Insulation has been installed, excluding residents of the State of Washington in which a state-wide class has been certified (the "Proposed Class").

The Proposed Class satisfies the requirements of Fed. R. Civ. P. 23(a) and 23(b)(2), and/or 23(b)(3), 23(b)(1)(A) and 23(b)(1)(B) for the reasons set forth in the supporting memorandum of law. Plaintiffs in the other actions join in the instant motion for class certification.[1/]

By this motion, plaintiffs seek the appointment of Paul Price, John Prebil and Margery Prebil as class representatives and, as class counsel, the appointment of *Price* counsel and each of the members of the Plaintiffs' Executive Committee. (The Plaintiffs' Executive

---

[1/] Those actions are: Lindholm and Szufnarowski v. W.R. Grace & Company, et al., C.A. No. 00 CV 10323 (PBS) (D. Mass.); Hunter v. W.R. Grace & Company, et al., C.A. No. 00-569-GPM (transferred from S.D. Ill.).

1   Committee was proposed to this Court on January 4, 2001; endorsement of proposed Case

2   Management Order No. 1 will constitute formal appointment of that committee).

3         This motion is supported by the accompanying Memorandum of Points and

4   Authorities in Support of Motion for Class Certification and Notice, the Affidavits of Thomas M.

5   Sobol and Richard Lewis (with Exhibits), and all pleadings and documents already filed in this

6   action.

7       WHEREFORE, Plaintiffs respectfully request that this Court issue an order:

8         1.    Certifying the Proposed Class;

9         2.    Appointing Mr. Price and Mr. and Mrs. Prebil as class representatives;

10        3.    Appointing *Price Action* counsel and the members of the Plaintiffs'

11  Executive Committee as class counsel; and

12        4.    Directing that notice be provided to members of the class.

13        **CERTIFICATION UNDER LOCAL RULE 7.1 (A)(2)**

14      Undersigned counsel certify that they have conferred with counsel for the defendants and

15  have attempted in good faith to resolve or narrow the issues raised by this motion.

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
MDL No. 1376

1  DATED:  January 23, 2001

Respectfully submitted,

By: _____

Elizabeth J. Cabraser,
Plaintiffs' Executive Committee and as
Proposed Class Counsel

Elizabeth J. Cabraser
Fabrice N. Vincent
John Low-Beer
LIEFF, CABRASER, HEIMANN
   & BERNSTEIN, LLP
Embarcadero Center West, 30th Floor
275 Battery Street
San Francisco, CA  94111
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

and

By: _____

Thomas M. Sobol (BBO No. 471770)
Proposed Class Counsel

Thomas M. Sobol (BBO No. 471770)
Jan R. Schlichtmann
LIEFF, CABRASER, HEIMANN
   & BERNSTEIN, LLP
214 Union Wharf
Boston, MA  02109-1216
Telephone:  (617) 720-5000
Facsimile:  (617) 720-5015

By: _____

John G. Stoia, Jr.,
Plaintiffs' Executive Committee and as
Proposed Class Counsel

John J. Stoia, Jr.
Timothy G. Blood
Jobeth Halper
MILBERG WEISS BERSHAD HYNES & LERACH
LLP
600 West Broadway
1800 One America Plaza
San Diego, CA  92101-5050
Telephone:  (619) 231-1058
Facsimile:  (619) 231-7423

1

By: _David Pastor_
     David Pastor,
2      Plaintiffs' Executive Committee and as
     Proposed Class Counsel

3

4 David Pastor
Edward L. Manchur
John C. Martland
5 GILMAN AND PASTOR, LLP
Stonehill Corporate Center
6 999 Broadway, Suite 500
Saugus, MA  01906
7 Telephone:  (781) 231-7850
Facsimile:  (781) 231-7840

8

9 By: _Edward J. Westbrook_
     Edward J. Westbrook,
10      Plaintiffs' Executive Committee and as
     Proposed Class Counsel

11

12 Edward J. Westbrook
Robert M. Turkewitz
13 NESS MOTLEY LOADHOLT
   RICHARDSON & POOLE
14 28 Bridgeside Blvd.
P.O. Box 1792
15 Mt. Pleasant, SC  29465
Telephone:  (843) 216-9000
16 Facsimile:  (843) 216-9440

17

By: _Darrell Scott_  As Proposed Class Counsel
18      Darrell Scott,  As Proposed Class Counsel

19 Darrell Scott
Michael Black
20 LUKINS & ANNIS, P.S.
1600 Washington Trust Financial Cntr
21 717 W Sprague Ave.
Spokane, WA  99201-0466
22 Telephone: (509) 455-9555
Facsimile: (509) 747-2323

23

24 Attorneys for Plaintiffs Paul Price, John Prebil, and
Margery Prebil

25

26

27

28

By: _Rich Lewis (TNS)_
Richard Lewis, As Proposed Class Counsel

Richard Lewis
COHEN, MILSTEIN, HAUSFELD
    & TOLL, P.L.L.C.
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C. 20005-3934
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

and

Steve Toll
Tamara Driscoll
COHEN, MILSTEIN, HAUSFELD
    & TOLL, P.L.L.C.
999 Third Avenue, Suite 3600
Seattle, WA 98104
Telephone: (206) 521-0080
Facsimile: (206) 521-0166

Attorneys for Plaintiffs Paul Price, John Prebil, and
Margery Prebil

By: _Allan McCary (TNS)_
Allan McGarvey,  As Proposed Class Counsel

Allan McGarvey
McGARVEY, HEBERLING, SULLIVAN
    & McGARVEY, P.C.
745 South Main
Kalispell, MT 59901
Telephone: (406) 752-5566
Facsimile: (406) 752-7124

Attorneys for Plaintiffs Paul Price, John Prebil, and
Margery Prebil

On the Motion:

Christopher A. Seeger
SEEGER WEISS LLP
One William Street
New York, NY 10004
Telephone: (212) 584-0700
Facsimile: (212) 584-0799

Attorneys for Jan Hunter

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mark S. Williams
BORRELLI, HUTTON & WILLIAM, P.A.
376 Trapelo Road
Belmont, MA  02478

Attorneys for Edward Lindholm and John J.
Szufnarowski

William E. Hoese
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107-3389
Telephone:  (215) 238-1700
Facsimile:  (215) 238-1968

Attorneys for Edward Lindholm and John J.
Szufnarowski

Mark C. Goldenberg
HOPKINS & GOLDENBERG, P.C.
2132 Pontoon Road
Granite City, IL  62040
Telephone:  (618) 877-0088
Facsimile:  (618) 877-6230

Attorneys for Jan Hunter

**FILE COPY**

1

2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| 3 | In re: ) | MDL Docket No. 1376 |
| 4 | ZONOLITE ATTIC INSULATION )<br>PRODUCTS LIABILITY LITIGATION ) | |
| 5 | _____ ) | |
| 6 | PAUL PRICE, JOHN PREBIL and ) | |
| 7 | MARGERY PREBIL, on behalf of )<br>themselves and all others similarly situated, ) | |
| 8 | Plaintiffs, ) | Civil Action No. CV-0071-M-DWM<br>(Transferred from the District of |
| 9 | W.R. GRACE & COMPANY (a Delaware ) | Montana, Missoula Division) |
| 10 | corporation); W.R. GRACE & COMPANY )<br>CONN. (a Connecticut Corporation); W.R. ) | |
| 11 | GRACE & CO., a/k/a GRACE, an )<br>association of business entities; SEALED ) | |
| 12 | AIR CORPORATION (a Delaware )<br>corporation), ) | |
| 13 | Defendants. )<br>_____ ) | |

14

15

16

17

### PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

The plaintiffs in *Price, et al. v. W.R. Grace & Company, et al.*, C.A. No. CV 0071-

M-DWM (transferred from the District of Montana, Missoula Division)(the *"Price Action"*) move

this Court to enter an order certifying the following class:

18

19

20

> All persons who own or occupy real property in the United States in
> which Zonolite Attic Insulation has been installed, excluding
> residents of the State of Washington in which a state-wide class has
> been certified (the "Proposed Class").

21

22

23

The Proposed Class satisfies the requirements of Fed. R. Civ. P. 23(a) and 23(b)(2), and/or

23(b)(3), 23(b)(1)(A) and 23(b)(1)(B) for the reasons set forth in the supporting memorandum of

law. Plaintiffs in the other actions join in the instant motion for class certification.[1]

24

25

26

By this motion, plaintiffs seek the appointment of Paul Price, John Prebil and

Margery Prebil as class representatives and, as class counsel, the appointment of *Price* counsel and

each of the members of the Plaintiffs' Executive Committee. (The Plaintiffs' Executive

27

28

---

[1] Those actions are: <u>Lindholm and Szufnarowski v. W.R. Grace & Company, et al.</u>, C.A.
No. 00 CV 10323 (PBS) (D. Mass.); <u>Hunter v. W.R. Grace & Company, et al.</u>, C.A. No. 00-569-
GPM (transferred from S.D. Ill.).

1  Committee was proposed to this Court on January 4, 2001; endorsement of proposed Case

2  Management Order No. 1 will constitute formal appointment of that committee).

3       This motion is supported by the accompanying Memorandum of Points and

4  Authorities in Support of Motion for Class Certification and Notice, the Affidavits of Thomas M.

5  Sobol and Richard Lewis (with Exhibits), and all pleadings and documents already filed in this

6  action.

7       WHEREFORE, Plaintiffs respectfully request that this Court issue an order:

8          1.     Certifying the Proposed Class;

9          2.     Appointing Mr. Price and Mr. and Mrs. Prebil as class representatives;

10         3.     Appointing *Price Action* counsel and the members of the Plaintiffs'

11 Executive Committee as class counsel; and

12         4.     Directing that notice be provided to members of the class.

13      **CERTIFICATION UNDER LOCAL RULE 7.1 (A)(2)**

14      Undersigned counsel certify that they have conferred with counsel for the defendants and

15 have attempted in good faith to resolve or narrow the issues raised by this motion.

16

17

18

19

20

21

22

23

24

25

26

27

28

1  DATED:   January 23, 2001

Respectfully submitted,

2

3  By:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
            Elizabeth J. Cabraser,
4          Plaintiffs' Executive Committee and as
            Proposed Class Counsel

5  Elizabeth J. Cabraser
   Fabrice N. Vincent
6  John Low-Beer
   LIEFF, CABRASER, HEIMANN
7    & BERNSTEIN, LLP
   Embarcadero Center West, 30th Floor
8  275 Battery Street
   San Francisco, CA  94111
9  Telephone:  (415) 956-1000
   Facsimile:  (415) 956-1008

10

11  and

12  By:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
            Thomas M. Sobol (BBO No. 471770)
13          Proposed Class Counsel

14  Thomas M. Sobol (BBO No. 471770)
   Jan R. Schlichtmann
15  LIEFF, CABRASER, HEIMANN
     & BERNSTEIN, LLP
16  214 Union Wharf
   Boston, MA  02109-1216
17  Telephone:  (617) 720-5000
   Facsimile:  (617) 720-5015

18

19  By:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
            John G. Stoia, Jr.,
20          Plaintiffs' Executive Committee and as
            Proposed Class Counsel

21

22  John J. Stoia, Jr.
   Timothy G. Blood
23  Jobeth Halper
   MILBERG WEISS BERSHAD HYNES & LERACH
24  LLP
   600 West Broadway
25  1800 One America Plaza
   San Diego, CA  92101-5050
26  Telephone:  (619) 231-1058
   Facsimile:  (619) 231-7423

27

28

134 zon

By: _____
David Pastor,
Plaintiffs' Executive Committee and as
Proposed Class Counsel

David Pastor
Edward L. Manchur
John C. Martland
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: (781) 231-7850
Facsimile: (781) 231-7840


By: _____
Edward J. Westbrook,
Plaintiffs' Executive Committee and as
Proposed Class Counsel

Edward J. Westbrook
Robert M. Turkewitz
NESS MOTLEY LOADHOLT
  RICHARDSON & POOLE
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465
Telephone: (843) 216-9000
Facsimile: (843) 216-9440


By: _____
Darrell Scott,  As Proposed Class Counsel

Darrell Scott
Michael Black
LUKINS & ANNIS, P.S.
1600 Washington Trust Financial Cntr
717 W Sprague Ave.
Spokane, WA 99201-0466
Telephone: (509) 455-9555
Facsimile: (509) 747-2323

Attorneys for Plaintiffs Paul Price, John Prebil, and
Margery Prebil

By: _Rich Lewis (ns)_
_____
Richard Lewis, As Proposed Class Counsel

Richard Lewis
COHEN, MILSTEIN, HAUSFELD
 & TOLL, P.L.L.C.
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C. 20005-3934
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

and

Steve Toll
Tamara Driscoll
COHEN, MILSTEIN, HAUSFELD
 & TOLL, P.L.L.C.
999 Third Avenue, Suite 3600
Seattle, WA 98104
Telephone: (206) 521-0080
Facsimile: (206) 521-0166

Attorneys for Plaintiffs Paul Price, John Prebil, and
Margery Prebil

By: _Allan McGarvey (ns)_
_____
Allan McGarvey, As Proposed Class Counsel

Allan McGarvey
McGARVEY, HEBERLING, SULLIVAN
 & McGARVEY, P.C.
745 South Main
Kalispell, MT 59901
Telephone: (406) 752-5566
Facsimile: (406) 752-7124

Attorneys for Plaintiffs Paul Price, John Prebil, and
Margery Prebil

On the Motion:

Christopher A. Seeger
SEEGER WEISS LLP
One William Street
New York, NY 10004
Telephone: (212) 584-0700
Facsimile: (212) 584-0799

Attorneys for Jan Hunter

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mark S. Williams
BORRELLI, HUTTON & WILLIAM, P.A.
376 Trapelo Road
Belmont, MA  02478

Attorneys for Edward Lindholm and John J.
Szufnarowski

William E. Hoese
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107-3389
Telephone:  (215) 238-1700
Facsimile:  (215) 238-1968

Attorneys for Edward Lindholm and John J.
Szufnarowski

Mark C. Goldenberg
HOPKINS & GOLDENBERG, P.C.
2132 Pontoon Road
Granite City, IL  62040
Telephone:  (618) 877-0088
Facsimile:  (618) 877-6230

Attorneys for Jan Hunter

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | MDL Docket No. 1376 |
| | ) | |
| ZONOLITE ATTIC INSULATION | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| PAUL PRICE, JOHN PREBIL and | ) | |
| MARGERY PREBIL, on behalf of | ) | |
| themselves and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. CV-0071-M-DWM |
| | ) | (Transferred from the District of |
| W.R. GRACE & COMPANY (a Delaware | ) | Montana, Missoula Division) |
| corporation); W.R. GRACE & COMPANY | ) | |
| CONN. (a Connecticut Corporation); W.R. | ) | |
| GRACE & CO., a/k/a GRACE, an | ) | |
| association of business entities; SEALED | ) | |
| AIR CORPORATION (a Delaware | ) | |
| corporation), | ) | |
| Defendants. | ) | |
| _____ | ) | |

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

The plaintiffs in *Price, et al. v. W.R. Grace & Company, et al.*, C.A. No. CV 0071-M-DWM (transferred from the District of Montana, Missoula Division)(the "*Price Action*") move this Court to enter an order certifying the following class:

> All persons who own or occupy real property in the United States in which Zonolite Attic Insulation has been installed, excluding residents of the State of Washington in which a state-wide class has been certified (the "Proposed Class").

The Proposed Class satisfies the requirements of Fed. Civ. P. 23(a) and 23(b)(2), and/or 23(b)(3), 23(b)(1)(A) and 23(b)(1)(B) for the reasons set forth in the supporting memorandum of law. Plaintiffs in the other actions join in the instant motion for class certification.[1]

By this motion, plaintiffs seek the appointment of Paul Price, John Prebil and Margery Prebil as class representatives and, as class counsel, the appointment of *Price* counsel and each of the members of the Plaintiffs' Executive Committee. (The Plaintiffs' Executive

---

[1] Those actions are: Lindholm and Szufnarowski v. W.R. Grace & Company, et al., C.A. No. 00 CV 10323 (PBS) (D. Mass.); Hunter v. W.R. Grace & Company, et al., C.A. No. 00-569-GPM (transferred from S.D. Ill.).

1  Committee was proposed to this Court on January 4, 2001; endorsement of proposed Case

2  Management Order No. 1 will constitute formal appointment of that committee).

3        This motion is supported by the accompanying Memorandum of Points and

4  Authorities in Support of Motion for Class Certification and Notice, the Affidavits of Thomas M.

5  Sobol and Richard Lewis (with Exhibits), and all pleadings and documents already filed in this

6  action.

7      WHEREFORE, Plaintiffs respectfully request that this Court issue an order:

8        1.    Certifying the Proposed Class;

9        2.    Appointing Mr. Price and Mr. and Mrs. Prebil as class representatives;

10        3.    Appointing *Price Action* counsel and the members of the Plaintiffs'

11  Executive Committee as class counsel; and

12        4.    Directing that notice be provided to members of the class.

13        **CERTIFICATION UNDER LOCAL RULE 7.1 (A)(2)**

14      Undersigned counsel certify that they have conferred with counsel for the defendants and

15  have attempted in good faith to resolve or narrow the issues raised by this motion.

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
MDL No. 1376

1   DATED:   January 23, 2001                 Respectfully submitted,

2                                             By: _____

3                                                  Elizabeth J. Cabraser,
                                                   Plaintiffs' Executive Committee and as
4                                                  Proposed Class Counsel

5                                             Elizabeth J. Cabraser
                                              Fabrice N. Vincent
6                                             John Low-Beer
                                              LIEFF, CABRASER, HEIMANN
7                                                & BERNSTEIN, LLP
                                              Embarcadero Center West, 30th Floor
8                                             275 Battery Street
                                              San Francisco, CA  94111
9                                             Telephone:  (415) 956-1000
                                              Facsimile:  (415) 956-1008
10

11                                            and

12                                            By: _____

13                                                 Thomas M. Sobol (BBO No. 471770)
                                                   Proposed Class Counsel
14                                            Thomas M. Sobol (BBO No. 471770)
                                              Jan R. Schlichtmann
15                                            LIEFF, CABRASER, HEIMANN
                                                 & BERNSTEIN, LLP
16                                            214 Union Wharf
                                              Boston, MA  02109-1216
17                                            Telephone:  (617) 720-5000
                                              Facsimile:  (617) 720-5015
18

19                                            By: _____

20                                                 John G. Stoia, Jr.,
                                                   Plaintiffs' Executive Committee and as
21                                                 Proposed Class Counsel

22                                            John J. Stoia, Jr.
                                              Timothy G. Blood
23                                            Jobeth Halper
                                              MILBERG WEISS BERSHAD HYNES & LERACH
24                                            LLP
                                              600 West Broadway
25                                            1800 One America Plaza
                                              San Diego, CA  92101-5050
26                                            Telephone:  (619) 231-1058
                                              Facsimile:  (619) 231-7423
27

28

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
MDL No. 1376                                                           –3–

                                                                      134 zon

By: _David Pastor (ThS)_
     David Pastor,
     Plaintiffs' Executive Committee and as
     Proposed Class Counsel

David Pastor
Edward L. Manchur
John C. Martland
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA  01906
Telephone:  (781) 231-7850
Facsimile:  (781) 231-7840


By: _Edward J. Westbrook (ThS)_
     Edward J. Westbrook,
     Plaintiffs' Executive Committee and as
     Proposed Class Counsel

Edward J. Westbrook
Robert M. Turkewitz
NESS MOTLEY LOADHOLT
   RICHARDSON & POOLE
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC  29465
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9440


By: _Darrell Scott (ThS)_
     Darrell Scott,  As Proposed Class Counsel

Darrell Scott
Michael Black
LUKINS & ANNIS, P.S.
1600 Washington Trust Financial Cntr
717 W Sprague Ave.
Spokane, WA  99201-0466
Telephone: (509) 455-9555
Facsimile: (509) 747-2323

Attorneys for Plaintiffs Paul Price, John Prebil, and
Margery Prebil

By: _____
Richard Lewis, As Proposed Class Counsel

Richard Lewis
COHEN, MILSTEIN, HAUSFELD
   & TOLL, P.L.L.C.
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C. 20005-3934
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699

and

Steve Toll
Tamara Driscoll
COHEN, MILSTEIN, HAUSFELD
   & TOLL, P.L.L.C.
999 Third Avenue, Suite 3600
Seattle, WA  98104
Telephone:  (206) 521-0080
Facsimile:  (206) 521-0166

Attorneys for Plaintiffs Paul Price, John Prebil, and
Margery Prebil

By: _____
Allan McGarvey,  As Proposed Class Counsel

Allan McGarvey
McGARVEY, HEBERLING, SULLIVAN
   & McGARVEY, P.C.
745 South Main
Kalispell, MT  59901
Telephone:  (406) 752-5566
Facsimile:  (406) 752-7124

Attorneys for Plaintiffs Paul Price, John Prebil, and
Margery Prebil


On the Motion:

Christopher A. Seeger
SEEGER WEISS LLP
One William Street
New York, NY  10004
Telephone:  (212) 584-0700
Facsimile:  (212) 584-0799

Attorneys for Jan Hunter

1

Mark S. Williams
BORRELLI, HUTTON & WILLIAM, P.A.

2

376 Trapelo Road
Belmont, MA  02478

3

4

Attorneys for Edward Lindholm and John J.
Szufnarowski

5

William E. Hoese
KOHN, SWIFT & GRAF, P.C.

6

One South Broad Street, Suite 2100
Philadelphia, PA  19107-3389

7

Telephone:  (215) 238-1700
Facsimile:  (215) 238-1968

8

9

Attorneys for Edward Lindholm and John J.
Szufnarowski

10

Mark C. Goldenberg
HOPKINS & GOLDENBERG, P.C.

11

2132 Pontoon Road
Granite City, IL  62040

12

Telephone:  (618) 877-0088
Facsimile:  (618) 877-6230

13

14

Attorneys for Jan Hunter

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, Thomas M. Sobol, hereby certify that on January 23, 2001, I caused to be served the following documents:

1. Plaintiffs' Motion for Class Certification;

2. Plaintiffs' Unopposed Motion for Leave to file Memorandum of Points and Authorities of Fifty Pages;

3. Memorandum of Points and Authorities in Support of Motion for Class Certification and Notice;

4. Declaration of Attorney Richard S. Lewis [and exhibits];

5. Affidavit of Attorney Thomas M. Sobol [and exhibits];

6. Cover Letter to Clerk of Court;

7. Cover letter to the Honorable Patti B. Saris; and

8. Certificate of Service.

upon all interested parties by serving a copy thereof upon counsel as follows:

### DEFENSE COUNSEL

a copy by hand upon counsel of record:

Robert A. Murphy
Casner & Edwards
One Federal Street
Boston, MA 02110

James R. Carroll
Skadden, Arps, Slate, Meagher & Flom, LLP
One Beacon Street
Boston, MA  02108

a copy by Federal Express overnight delivery
upon counsel of record:

James S. Restivo, Jr.
Reed Smith, LLP
435 6th Avenue
Pittsburgh, PA  15219

Arlene Fickler
Hoyle, Morris & Kerr LLP
One Liberty Place, Suite 4900
1650 Market Street
Philadelphia, PA 19103

Sheila Birnbaum
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, NY  10036

**17**

**FILE COPY**

1

2

3  UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

4

5

6  In re:                                                    )          MDL Docket No. 1376
)
7  ZONOLITE ATTIC INSULATION                )
PRODUCTS LIABILITY LITIGATION           )
8  _____ )
)
9  PAUL PRICE, JOHN PREBIL and                )          Civil Action No. CV 0071-M-DWM
MARGERY PREBIL, on behalf of                 )
10 themselves and all others similarly situated,   )          (Transferred from the District of Montana,
)          Missoula Division)
11                              Plaintiffs,                )
)
12                   v.                                         )
)
13 W.R. GRACE & COMPANY (a Delaware     )
corporation); W.R. GRACE & COMPANY-   )
14 CONN. (a Connecticut Corporation); W.R.    )
GRACE & CO., a/k/a GRACE, an association )
15 of business entities; SEALED AIR                 )
CORPORATION (a Delaware corporation),    )
16                                                                  )
)
17                              Defendants.             )

18

19  **MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND NOTICE**

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

                                                                                    **Page**
I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.     PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
III.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.   Grace's Manufacturing and Marketing of Zonolite Attic Insulation Occurred
        with its Full Knowledge That it Contained Asbestos and Was Hazardous . . . . . . . . 5

    B.   The Asbestos in Grace's Zonolite Attic Insulation Is an Ongoing Serious
        Health Hazard to Homeowners Who Conduct Routine Household
        Maintenance in Their Attics . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    C.   Without Effective Notice, Homeowners Are Ignorant of the Extreme Hazard
        from Disturbing the Zonolite Attic Insulation Product and Remain at
        Preventable Risk . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
IV.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    A.   Applying A Washington Class Action Rule That Parallels F.R.C.P. 23, The
        Washington State Court Properly Certified A Statewide Class Seeking
        Identical Relief In The Companion Case, *Barbanti v. W.R. Grace* . . . . . . . . . . . . 16

    B.   The Class Satisfies All of the Prerequisites of Rule 23(a) . . . . . . . . . . . . . . . . . . . 18

        1.   Joinder Is Impracticable and Common Questions of Law and Fact Are
            Shared Among the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        2.   The Claims of the Representative Plaintiffs Are Typical of the Other
            Class Member Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        3.   The Representative Plaintiffs Will Fairly and Adequately Protect the
            Interests of the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    C.   Certification Of A Mandatory Class Is Appropriate Under Rule 23(b)(2) . . . . . . . 23

        1.   Public Policy Concerns Favor Rule 23(b)(2) Certification . . . . . . . . . . . . . 27

        2.   Punitive Damages Claims May Properly be Certified on a Mandatory
            Basis Under 23(b)(2) and/or 23(b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . 28

        3.   Where Claims for Damages Are Incidental to Claims for Equitable
            Relief, Courts Regularly Certify Both Sets of Claims Under 23(b)(2) . . . . 31

    D.   Certification Is Also Appropriate Under Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . 33

        1.   Common Questions Predominate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

        2.   A Class Action is the Superior Method for the Fair and Efficient
            Adjudication of this Controversy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

        3.   The Case Is Manageable Under Montana or Massachusetts Law Or
            Under The Laws Of All Jurisdictions . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

            a.   The Law of Montana Applies Because There is No Conflict . . . . . 38

3.    The Case Is Manageable Under Montana or Massachusetts Law Or Under The Laws Of All Jurisdictions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

    a.    The Law of Montana Applies Because There is No Conflict . . . . . 38

    b.    There Are Few Material Significant Differences Among The Laws Of All States Which The Court Could Also Apply To The Controversy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

        (1)    Negligence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

        (2)    Strict Liability for Failure to Warn . . . . . . . . . . . . . . . . . . 39

        (3)    Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

        (4)    Punitive Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

    c.    Assuming There is a Conflict, This Court Should Apply the Choice of Law Rules of Montana . . . . . . . . . . . . . . . . . . . . . . . . . 42

        (1)    Montana Has The Most Significant Relationship . . . . . . . . 44

        (2)    Massachusetts Also Has A Significant Relationship . . . . . . 44

E.    Notice To the Class  Will Protect Their Procedural Rights and Interests and Assure the Fair Conduct of the Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

F.    Certification of the Class of Homeowners and an Award of Injunctive Relief Does Not Give Rise to Any Conflict with a Regulatory Action . . . . . . . . . . . . . . . 48

    1.    The Doctrine of Primary Jurisdiction Is Inapplicable To Plaintiffs' Request For Class Certification and Notice . . . . . . . . . . . . . . . . . . . . . . . . . 49

    2.    The Doctrine of Primary Jurisdiction Should Not Be Invoked Because The Relief Requested Does Not Conflict With Any Government Regulation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Adair v. Sorenson,*
   134 F.R.D. 13 (D. Mass. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Affiliated Ute Citizens v. United States,*
   406 U.S. 128 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Amato v. General Motors Corp.,*
   463 N.E.2d 625 (Ohio Ct. App. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Amchem Prods. v. Windsor,*
   521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16, 33, 35

*Anderson v. Aetna Casualty & Sur. Co.,*
   493 U.S. 959 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Andrews v. Bechtel Power Corp.,*
   780 F.2d 124 (1st Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Arnold v. United Artists Theatre Circuit, Inc.,*
   158 F.R.D. 439 (N.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Avery v. HHS,*
   762 F.2d 158 (1st Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46, 50

*Ayers v. Jackson Tp.,*
   106 N.J. 557, 525 A. 2d 287 (N.J. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Baby Neal v. Casey,*
   43 F.3d 48 (3rd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Barbanti v. W.R. Grace & Co.,*
   No. 00-2-01756-6 (Spokane Co. Sup. Ct. Nov. 28, 2000) . . . . . . . . . . . . . . . . . . . . . *passim*

*Barefield v. Chevron,*
   1998 U.S. Dist. LEXIS 15816,
   12 Fed. R. Serv. 3d (Callaghan) 1232 (N.D. Cal. 1988) . . . . . . . . . . . . . . . . . . 28, 32

*Barkman v. Wabash, Inc.,*
   1988 WL 5039, No. 85 C 611 (N.D. Ill. Jan. 20, 1988) . . . . . . . . . . . . . . . . . . . . . . 47

*Barron v. Ford Motor Co. of Canada, Ltd.,*
   965 F.2d 195 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Barth v. Firestone Tire and Rubber Co.,*
   661 F. Supp. 193 (N.D. Cal. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*BMW of No. Am. v. Gore,*
   517 U.S. 559 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 41

*Bouley v. Cellucci,*
    107 F. Supp. 2d 61 (D. Mass. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Bushkin Associates, Inc. v. Raytheon Co.,*
    393 Mass. 622 473 N.E.2d 662 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Butkera v. Hudson River Sloop "Clearwater,"*
    300 N.J. Super. 550, 693 A.2d 520 (N.J. Super. Ct. App. 1997) . . . . . . . . . . . . . . . . . 44

*Cal-Almond Inc. v. Dept. of Agriculture,*
    67 F.3d 874 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Cannon v. Cherry Hill Toyota, Inc.,*
    184 F.R.D. 540 (D.N.J. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Central Wesleyan College v. W.R. Grace & Co.,*
    143 F.R.D. 628 (D.S.C. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Chabner v. United of Omaha Life Ins. Co.,*
    225 F.3d 1042 (9th Cir. Sept. 11, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
    *Federal Practice and Procedure,* § 1772 (2d ed. 1986) . . . . . . . . . . . . . . . . . . . . . . 24

*Chevalier v. Baird Sav. Assoc.,*
    72 F.R.D. 140 (E.D. Pa. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Coburn v. 4-R Corp.,*
    77 F.R.D. 43 (E.D. Ky. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Cope v. Metropolitan Life Insurance,*
    82 Ohio St. 3d. 426, 696 N.E.2d 1001 (Ohio 1998) . . . . . . . . . . . . . . . . . . . . . 35, 36

*County of Suffolk v. Long Island Lighting Co.,*
    970 F.2d 1295 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Cullen v. Whitman Med. Corp.,*
    188 F.R.D. 226 (E.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Day v. NLO,*
    851 F. Supp. 869 (S.D. Ohio 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Dionne v. Bouley,*
    757 F.2d 1344 (1st Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Dore v. Kinnear,*
    79 Wash.2d 755, 489 P.2d 898 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Duhaime v. John Hancock,*
    177 F.R.D. 54 (D. Mass. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Dunn v. HOVIC,*
    1 F.3d 1371 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Eubanks Billington,*
    110 F.3d 87 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

1  *First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*,
      882 F.2d 862 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

2

3  *Fraser v. Major League Soccer, L.L.C.*,
      180 F.R.D. 178 (D. Mass. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 46, 47

4  *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*,
      746 F.2d 816 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

5

6  *FTC v. Int'l Diamond Corp.*,
      1983-2 Trade Cas. (CCH) ¶ 65,725,
      1983 U.S. Dist. LEXIS 11862 (N.D. Cal. 1983) . . . . . . . . . . . . . . . . . . . . . . . 36

7

8  *Gantes v. Kason Corp.*,
      145 N.J. 478, 679 A.2d 106 (N.J. Sup. Ct., 1996) . . . . . . . . . . . . . . . . . . . . . . 44

9  *Garza v. Sporting Goods Properties, Inc.*,
      No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009 (W.D. Tex. 1996) . . . . . . . . . . . . . 26

10

11  *General Tel. Co. v. Falcon*,
      457 U.S. 147, 102 S. Ct. 2364, 72 L.Ed.2d 740 (1982), *aff'd*,
      815 F.2d 317 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

12

13  *German v. Federal Home Loan Mort. Corp.*,
      885 F. Supp. 537 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 25

14  *Grace v. Perception Technology Corp.*,
      128 F.R.D. 165 (D. Mass. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

15

16  *Green v. Evans*,
      156 Mich. App. 145, 401 N.W. 2d 250 (Mich. App. 1985) . . . . . . . . . . . . . . . . . . . 41

17  *Griffin v. Burns*,
      570 F.2d 1065 (1st Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

18

19  *Guckenberger v. Boston Univ.*,
      957 F. Supp. 306 (D. Mass. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

20  *Hanlon v. Chrysler Corp.*,
      150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

21

22  *Hansen v. Mountain Fuel Supply Co.*,
      858 P.2d 970 (Utah 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

23  *Harashe v. Flintkote Co.*,
      848 S.W.2d 506 (Mo. Ct. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

24

25  *Harriss v. Pan American World Airways, Inc.*,
      74 F.R.D. 24 (N.D. Cal. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 47

26  *Heastie v. Community Bank*,
      125 F.R.D. 669 (N.D. Ill. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

27

28  *Hill v. Western Electric Co., Inc.*,
      672 F.2d 381 (4th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

1 | *Howard v. Ford Motor Co.*,
    No. 763785-2 (Ca. Super. Ct. Alameda County) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

2

3 | *Hoxworth v. Blinder Robinson and Co.*,
    980 F.2d 912 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

4 | *Hunter v. McKenzie*,
    197 Cal. 176, 239 P. 1090 (Cal. 1925) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

5

6 | *Hurley v. Federal Deposit Ins. Corp.*,
    719 F. Supp. 27 (D. Mass. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

7 | *In re A.H. Robins Co.*,
    880 F.2d 709 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

8

9 | *In re Agent Orange Prods. Liab. Litig.*,
    818 F.2d 145 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 29

10 | *In re Agent Orange Product Liability Litigation*,
     475 F. Supp. 928 (E.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

11

12 | *In re Alert Income Partners Sec. Litig.*,
     MDL 915, No. 92-2-9150 (D. Colo. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

13 | *In re Asbestos School Litigation*,
     104 F.R.D. 422 (E.D. Pa. 1984)

14 | *aff'd* in relevant part . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 39, 49

15 | *In re Badger Mtn. Irrigation Dist. Secs. Litig.*,
     143 F.R.D. 693 (W.D. Wash. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

16

17 | *In re Catfish Antitrust Litig.*,
     826 F. Supp. 1019 (N.D. Miss. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

18 | *In re Complaint of Bankers Trust Co.*,
     752 F.2d 874 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

19

20 | *In re Copley Pharm., Inc., "Albuterol" Prod. Liability Litig.*,
     MDL 1013, 158 F.R.D. 485 (D. Wyo. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 39

21 | *In re Diet Drugs Prod. Liab. Litig.; Brown*,
     MDL 1203, 2000 U.S. Dist. LEXIS 12275,

22 | 2000 WL 1222042 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

23 | *In re Diet Drugs Prod. Liab. Litig.; Jeffers*,
     MDL 1203, 1999 U.S. Dist. LEXIS 13228 (E.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . *passim*

24

25 | *In re Estate of Ferdinand E. Marcos Human Rights Litig.*,
     910 F. Supp. 1460 (D. Haw. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

26 | *In re General Motors Corp.*,
     55 F.3d at 811 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 50

27

28 | *In re GMC Pick-up Truck Fuel Tank Products Liability Litigation*,
     55 F.3d 768 (3rd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Mary Collins,*
    2000 U.S. App. LEXIS 30176 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*In re Pizza Time Theatre Securities Litigation,*
    112 F.R.D. 15 (N.D. Cal. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45, 46

*In re Prudential Ins. Co. America Sales Litig.,*
    148 F.3d 283 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 33, 36

*In re Real Estate I,*
    1986 U.S. Dist. LEXIS 24435 (E.D. Pa.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*In re School Asbestos,*
    789 F.2d 996 (3d. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*In re Sunrise Secur. Litig.,*
    698 F. Supp. 1256 (E.D. Pa. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*In re Telectronics Pacing Systems Inc.,*
    MDL 1057, 172 F.R.D. 271 (S.D. Ohio 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*In re The Exxon] Valdez,*
    No. A89-0095-CV (HRH) (D. Alaska) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*In re "Agent Orange" Prods. Liab. Litig.,*
    580 F. Supp. 690 (E.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*In re "Agent Orange" Prods. Liab. Litig.,*
    100 F.R.D. 718 (E.D.N.Y. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 29

*Ingersoll v. Klein,*
    46 Ill. 2d 42, 262 N.E.2d 593 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Jenkins v. Raymark Industries, Inc.,*
    109 F.R.D. 269 (E.D. Tex. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29, 34

*Kennecott Copper Corp. v. Costle,*
    572 F.2d 1349 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Klaxon Co. v. Stentor Electric Mfg. Co.,*
    313 U.S. 487, 61 S. Ct. 1020 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*L.E.A.D. v. Exide Corp.,*
    199 WL 124473*22 (E.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Lerwill v. Inflight Motion Pictures, Inc.,*
    582 F.2d 507 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Linney v. Cellular Alaska Partnership,*
    151 F.3d 1234 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.,*
    100 F.R.D. 468 (D. Mass. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 37

*Mace v. Van Ru Credit Corp.,*
    109 F.3d 338 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*McDonnell Douglas Corp. v. U.S. District Court,*
    523 F.2d 1083 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Montgomery Environmental Coalition Citizens Coordinating Comm. v.*
    *Washington Suburban Sanitary Comm'n,*
    607 F.2d 378 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Morgan v. Woessner,*
    997 F.2d 1244 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Naef v. Masonite Corp.,*
    No. CV-94-4033 (Ala. Cir. Ct. Mobile County March 7, 1996) . . . . . . . . . . . . . . . 49

*Pacific Mut. Life Ins. Co. v. Haslip,*
    499 U.S. 1 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 41

*Pejepscot Indus. Park Inc. v. Maine Central R.R. Co.,*
    215 F.3d 195 (1st Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*PHC, Inc. v. Pioneer Healthcare Inc.,*
    75 F.3d 75 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49-51

*Phillips Petroleum v. Shutts,*
    472 U.S. 797 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Phillips v. GMC,*
    298 Mont. 438, 995 P.2d 1002 (Sup. Ct. Mont. 2000) . . . . . . . . . . . . . . . . . . 42

*Potter v. Firestone,*
    6 Cal. 4th 965, 863 P.2d 795 (Cal. 1993) . . . . . . . . . . . . . . . . . . . . . . . . 24

*Probe v. State Teacher's Retirement Sys.,*
    780 F.2d 776 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Prudential Ins. Co. of America v. U.S. Gypsum Co.,*
    711 F. Supp. 1244 (D.N.J. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Punnett v. United States,*
    602 F. Supp. 530 (E.D. Pa. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Quern v. Jordan,*
    440 U.S. 332 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Redland Soccer Club v. Department of the Army,*
    548 Pa. 178, 696 A.2d 137 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Rodriguez v. Carlson,*
    166 F.R.D. 465 (E.D. Wash. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 18, 20, 33

*Roginsky v. Richardson-Merrell, Inc.,*
    378 F.2d 832 (2d Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Simon v Philip Morris Inc.,*
    No. 99 CV 1988, 2000 U.S. Dist. LEXIS 16713
    (D.N.Y. Nov. 17, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 45

1

*Smith v. Univ. of Wash. Law Sch.,*
    2 F. Supp. 2d 1324 (W.D. Wash. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

2

*State, ex rel, Guste v. General Motors Corp.,*
    370 So. 2d 477 (La. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

3

*TXO Prod. Corp. v. Alliance Resources Corp.,*
    509 U.S. 443 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30, 41

4

5

*United States v. Philadelphia National Bank,*
    374 U.S. 321 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

6

*Vadino v. American Home Products Corp.,*
    No. MID-L-425-98 (N.J. Superior Court 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

7

8

*Valentino v. Carter-Wallace, Inc.,*
    97 F.3d 1227 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

9

*Vassallo v. Baxter HealthCare Corp.,*
    696 N.E.2d 909 (Mass. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

10

11

*Von Colln v. County of Ventura,*
    189 F.R.D. 583 (C.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

12

*Walsh v. Ford Motor Co.,*
    130 F.R.D. 260 (D.D.C. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

13

14

*Waste Mgt. Holdings, Inc. v. Mowbray,*
    208 F.3d 288 (1st Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 35

15

*Wetzel v. Liberty Mut. Ins. Co.,*
    508 F.2d 239 (3d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

16

17

*Williams v. Caputo,*
    152 F.3d 1060 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

18

*Wilson v. Amoco Corp.,*
    989 F.Supp. 1159 (D. Wyo. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50, 51

19

20

*Yaffe v. Powers,*
    454 F.2d 1362 (1st Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 23

21

*Yslava v. Hughes Aircraft Co.,*
    845 F. Supp. 705 (D. Ariz. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

22

23

*Zacharjasz v. Lomas and Nettleton Co.,*
    1988 U.S. Dist. LEXIS 4957 (E.D. Pa. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

24

25

26

27

28

1

**FEDERAL STATUTES**

2

16 C.F.R.
§1304 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

3

16 C.F.R.
§1305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

4

5

28 U.S.C.
§ 1407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

6

40 C.F.R.
§763 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

7

8

42 U.S.C
§ 9604(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

9

EPA Final Rule and Notice on Asbestos-Containing Materials in Schools,
52 Fed. Reg. 41856 (Oct.30,1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

10

Notice of Enforcement Policy,
51 Fed. Reg. 33910 (Sept. 24, 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

11

12

**FEDERAL RULES OF CIVIL PROCEDURE**

13

Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 46

14

Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 27

15

Rule 23(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

16

Rule 23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

17

Rule 23(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

18

Rule 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 21

19

Rule 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 27

20

Rule 23(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 34

21

Rule 23(b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

22

Rule 23(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

23

Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

24

Rule 23(b)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

25

Rule 23(b)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

26

Rule 23(b)(3)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

27

Rule 23(b)(3)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

28

Rule 23(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

1  Rule 23(c)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

2  Rule 65(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

3

4  **<u>STATE STATUTES</u>**

5  Montana Code Annotated  T.27,
        Ch.1, Pt.7 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
6
   Montana Code Annotated T.30,
7        Ch.14, Pt.1 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

8  Montana Code Annotated § 27-1-221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

9  Washington Civil Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

10 Washington Civil Rule 23(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 46-48

11 **<u>TREATISES</u>**

12 2 Frumer & Friedman,
        *Products Liability* § 2.02[1], pp. 12-22 - 12-24 (1998) . . . . . . . . . . . . . . . . . . . . . . . . 40
13
   3B *Moore's Federal Practice* ¶ 23.40 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
14
   Charles C. Marvel,
15       *Strict Products Liability: Liability for Failure to Warn as*
         *Dependent on Defendant's Knowledge of Danger,*
16       § 2, 33 A.L.R.4th 368 (1981-1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

17 Herbert B. Newberg and Albert Conte,
        *Newberg on Class Actions* (3d ed. 1992 and 2000 Cum. Supp.)
18       § 3.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

19       § 4.20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

20       §§ 8-15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

21
   *Manual for Complex Litigation* § 30.211 (3rd ed. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 47
22
   *Restatement (Second) of Conflict of Laws* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
23
   *Restatement (Second) of Torts*,
24       §§ 551 and 550 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

25 **<u>ARTICLES</u>**

26
   33 A.L.R.4th 368, Strict Products Liability:
27       Liability for Failure to Warn as Dependent
         on Defendant's Knowledge of Danger,
28            § 2 (1981-1988); (Appendix B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Debra J. Gross,
    *Mandatory Notice and Defendant Class Actions:*
    *Resolving the Paradox of Identity Between Plaintiffs and Defendants,*
    40 Emory L.J. 611, n. 167 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Marjorie A.Silver,
    *Giving Notice: An Argument For Notification*
    *Of Putative Plaintiffs In Complex Litigation,*
        66 Wash. L. Rev. 775 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    **INTRODUCTION**

This case involves the threat to public health posed by W. R. Grace's knowing concealment of the extraordinary hazards of its asbestos-contaminated Zonolite Attic Insulation. Over many years, Defendant W.R. Grace & Company and its related entities (collectively, "Grace") mined asbestos-contaminated vermiculite in Montana, and processed and sold it nationwide as Zonolite Attic Insulation.  Grace knew that the insulation contained asbestos and that by normal handling asbestos fibers would become airborne, producing dangerously high exposures and contamination.  As early as the 1950s, undisclosed corporate testing of Libby, Montana workers revealed that they were suffering severe chronic and acute illness from exposure to the same asbestos-contaminated materials.  In 1969, Grace's safety manager urged, to no avail, that the company place warnings on its Zonolite Attic Insulation products.  Grace concealed these deadly asbestos hazards from its workers, consumers, and public officials.  Grace never mentioned the presence of asbestos in its Zonolite insulation packaging or products as it continued sales over many years.  As a result, tens of thousands of persons now live in homes that, unbeknownst to them, are contaminated with asbestos-containing Zonolite insulation.

Plaintiffs now seek class certification under Rule 23(b)(2), or alternatively under Rules 23 (b)(3) and (b)(1)(B), for all claims for injunctive and other equitable relief, as well as all claims for punitive damages.  The proposed class consists of:

> All persons who own or occupy real property in the United States in which Zonolite Attic Insulation has been installed, excluding residents of the State of Washington in which a state-wide class has been certified (the "Proposed Class").

Class certification is necessary to fairly and efficiently resolve overwhelmingly common questions of law and fact.  Central to the claim of every class member is proof that Zonolite Attic Insulation contains asbestos which poses extraordinary health and contamination hazards.  This proof is common to all class members and does not depend on the knowledge or conduct of any plaintiff.  Even Grace's primary defense -- that Zonolite Attic Insulation does not contain hazardous levels of asbestos -- presents issues common to all class members.  Also common to the class is proof that Grace knew of the hazards yet consciously concealed them in order to maximize its own profits.

1    Class certification under Fed. R. Civ. P. 23(b)(2) is the best and most practicable

2    means of fairly adjudicating the central issue pervading this case — whether or not Zonolite Attic

3    Insulation poses hazards which merit equitable relief of asbestos notification, education and

4    remediation. The Honorable Kathleen O'Connor's recent decision certifying a state-wide class of

5    Washington residents pursuing identical relief shows the suitability of class treatment in this action.

6    *Barbanti v. W.R. Grace & Co.*, No. 00-2-01756-6 (Spokane Co. Sup. Ct. Nov. 28, 2000). Here, the

7    *Price* plaintiffs meet the same requirements for a mandatory, non-opt out injunctive relief class.

8    Class certification of claims for equitable relief -- relief in the form of asbestos

9    notification, education and remediation -- seeks to create a procedural mediation by which to

10   preserve class members' health and to prevent serious avoidable injuries and death caused by

11   asbestos exposure. Whether the requested relief is necessary, and what precise form the health and

12   safety warnings and remediation programs should take, also present common issues of fact spanning

13   the proposed class. The class-wide determination of these issues on the merits at trial will fairly and

14   efficiently dispose of the equitable claims of thousands of people living in homes with asbestos

15   contaminated Zonolite Attic Insulation.

16   The highest and best use of judicial resources in this case is the class-wide exercise of

17   equitable power to prevent human suffering and avoidable property contamination, rather than

18   after-the-fact money judgments which seek to compensate for avoidably injured or lost family

19   members. Further, a major benefit of the class action device available in this case is its provision of

20   procedures to ensure vindication of "the rights of groups of people who individually would be

21   without effective strength to bring their opponents into court at all." *Amchem Prods. v. Windsor*,

22   521 U.S. 591, 617, 117 S. Ct. 2231, 2246, 138 L. Ed. 2d 689 (1997) (quoting *Mace v. Van Ru Credit*

23   *Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). That benefit applies here.[1]

24

25

---

26   [1]Only an equitable remedy will ensure that available remediation funds are reserved for actual asbestos remediation-related purposes. Although this Court could alternatively certify an opt-out class seeking monetary damages under Rule 23(b)(3) alongside the Rule 23(b)(2) class, the

27   incidental damages at issue here are properly included in the proposed Rule 23(b)(2) class. Absent class certification, class members will be stripped of any practicable means of seeking

28   recourse from Grace's extraordinary wrongdoing and will remain vulnerable to dangerous (and otherwise avoidable) future asbestos exposures.

1    Class certification of all claims for punitive damages serves similarly sensible

2  procedural and jurisprudential goals. A common issue for all proposed class members is whether

3  Grace's conduct with respect Zonolite Attic Insulation warrants punitive damages. Resolution of

4  punitive damages liability and exposure on a mandatory class-wide basis also achieves finality for

5  defendants and potential distributive justice for plaintiffs, goals that cannot likely be accomplished

6  by seriatum litigation.

7    Zonolite Attic Insolation presents a serious threat to the health of all persons who own

8  or occupy property that contain this asbestos product. Class certification is the appropriate

9  procedural mechanism by which to adjudicate all claims for injunctive and other equitable relief,

10  and for punitive damages.

11  **II.    PROCEDURAL HISTORY**

12    This litigation consists of four constituent nationwide class actions and several

13  additional potential tag-along actions centralized in this Court by order of the United States Judicial

14  Panel on Multidistrict Litigation. The Judicial Panel found that the Zonolite actions involve

15  common questions of fact because each involves allegations of property damage caused by the

16  presence of tremolite asbestos in Zonolite Attic Insulation marketed by Grace. Two similar state-

17  wide class actions are also pending in Washington and Minnesota. Counsel in all cases before this

18  Court join in the *Price* plaintiffs' pending motion for class certification.

19    Motions for nationwide class certification and class notice have been filed and briefed

20  by all of the parties in *Price v. W. R. Grace & Co.*, No. CV 0071-M-DWM, the constituent action

21  transferred from the District of Montana. The *Price* Plaintiffs' class action complaint was filed in

22  the District of Montana on April 14, 2000 on behalf of a proposed nationwide class of all owners or

23  occupiers of real property with Zonolite Attic Insulation. All defendants subsequently appeared.

24  Motions for class certification and class notice/preliminary injunction were filed by the *Price*

25  Plaintiffs on or about July 25, 2000. Defendants opposed the motions on October 23, 2000 and the

26  *Price* plaintiffs' reply papers were filed on or about November 3, 2000. Over two dozen depositions,

27  of the parties and their experts, have already taken place in *Price* and/or in *Barbanti*, the Washington

28  state court action which shares discovery with *Price*, and the parties' experts have performed testing

1   of the *Price* and *Barbanti* Plaintiffs' homes.  The *Price* court did not conduct oral argument and did

2   not issue a ruling on the plaintiffs' class certification motions prior to MDL transfer.

3          In the companion case pending in Washington state court, *Barbanti v. W.R. Grace &*

4   *Co.*, Case No. 00 2 01756-6 (Spokane Co.), the Honorable Kathleen O'Connor has certified a

5   state-wide class, under Washington's equivalent to Fed. R. Civ. P. 23(b)(2),[2] by memorandum

6   decision dated November 28, 2000, which was entered by Order of December 19, 2000.  *See*

7   *Barbanti* Order Granting Plaintiff's Motion for Class Certification Pursuant to CR23(b)(2),

8   (December 19, 2000).  *See* Lewis Declaration Exhibit (hereinafter "Exhibit") 1.  In pertinent part,

9   Judge O'Connor found that "Plaintiffs focus on a common course of conduct by the Defendants

10  towards all potential class members; i.e., a pattern of alleged misrepresentation in advertising, failure

11  to warn, etc. . . .")  Memorandum Decision [Class] Motion #1 (November 28, 2000) at p. 3

12  (Exhibit 2).  In addition, the Washington Court found the *Barbanti* litigation to serve the salutory

13  purposes of class action litigation in achieving judicial economy and finality for the parties.  *Id.* at

14  pp. 5-6.  ("The purpose of class action litigation is to allow individuals, who have common causes of

15  action, to pool their resources and pursue legal relief which would otherwise be unavailable due to

16  the cost of litigation and the individual amount of damages involved.  It is also a benefit to both

17  Plaintiffs and Defendants that putative class members litigate the class issues in one proceeding to

18  avoid inconsistent adjudication.")[3]

19         Judge O'Connor then addressed notice.  After a multi-day evidentiary hearing Judge

20  O'Connor ordered that a "neutral" class notice, including information from governmental public

21  health agencies, should issue pursuant to Washington Civil Rule 23(d)(2), which is analogous to the

22  federal rule, and denied plaintiffs' request for "emergency" notice relief under Rule 65(a), finding

23  that there were factual issues in dispute.  Memorandum Opinion [Notice] Motion No. 2 at pp. 2-4

24  (December 19, 2000) (Exhibit 3); Order Denying Plaintiffs' Motion for Preliminary Injunction and

25

26

27  [2]Washington State's CR 23(b)(2) is identical to Fed. R. Civ. P. 23(b)(2) and Washington courts are guided by federal authority in applying Rule 23.  *Dore v. Kinnear*, 79 Wash.2d 755, 787, 489 P.2d 898, 916 (1971).

28  [3]Defendants filed a Notice for Discretionary Review on January 17, 2001.

Emergency Notice to Class Members (Exhibit 4) (to be supplied when available). In support of this ruling, the *Barbanti* court found that "notice to potential class members of the existence of this litigation is appropriate even though not required when a class is certified under Civil Rule CR23(b)(2)." Memorandum Opinion [Notice] Motion No. 2 at p. 2 (Exhibit 3). The *Barbanti* court has requested proposed Rule 23(d)(2) forms of notice from the parties. The Plaintiffs' proposed forms of notice is attached as Exhibit 5; the Defendants' proposed notice will be supplied when available. The *Barbanti* court will review each form of notice, and approve a notice.

In addition to finding that a Rule 23(d)(2) notice should issue in *Barbanti*, Judge O'Connor also rejected defendants' argument based on the doctrine of primary jurisdiction. In her class certification opinion, the Court noted the following:

> Finally, defendants rightly point out that asbestos is heavily regulated by federal agencies and Zonolite is under review by the EPA. Arguably, the resources of a federal regulatory agency are greater than a state superior court and this court has considered that fact. However, federal regulation does not preclude class litigation or preempt the court's ability to take jurisdiction.

Memorandum Decision (Motion #1) at p. 6 (attached as Exhibit 2).

In support of plaintiffs' request to this MDL Court for nationwide notice (excluding the State of Washington and any other statewide certified class), plaintiffs now rely exclusively on the authority of Fed. R. Civ. P. 23, and Rule 23(d)(2) in particular; and hereby withdraw the *Price* argument for the "emergency" notice under Rule 65(a). This approach is consistent with the class certification and order authorizing a neutral notice in *Barbanti*, as well as this Court's schedule for prompt consideration of class certification, including the notice issue.

## III.    STATEMENT OF FACTS

This motion is brought by the *Price* plaintiffs on behalf of a class comprised of all owners or occupiers of real property located throughout the United States in which Zonolite Attic Insulation has been installed, excluding residents of the State of Washington where a state-wide class seeking identical relief has been certified. Defendants are the manufacturers of Zonolite attic insulation or their alter egos or agents. The claims asserted in this action against Grace include negligence, deceit, fraudulent concealment, fraud and strict liability. Plaintiffs seek equitable relief in the form of a defendant-funded asbestos notification, education and remediation program.

**A.   Grace's Manufacturing and Marketing of Zonolite Attic Insulation Occurred with its Full Knowledge That it Contained Asbestos and Was Hazardous.**

For many decades, W.R. Grace & Company ("Grace") and its predecessor, Zonolite Company, mined, milled and processed vermiculite in Libby, Montana. Vermiculite, a form of mica, makes a satisfactory insulating material when exfoliated (heated and expanded) in a furnace. Prior to the mid-1980s, Grace was the leading producer of vermiculite-based insulation products in the United States. Grace manufactured and sold over three thousand tons of vermiculite each year including sales of over eighty-eight thousand bags of Zonolite attic insulation each month. *See* 1978 Performance Report of W.R. Grace's U.S. Zonolite operations (April 3, 1975) [sic] (Exhibit 6) and R.J. Bettacchi Monthly Report Memo (October 7, 1983) (Exhibit 7).

Zonolite Attic Insulation was one of Grace's vermiculite-based products sold nationwide. The vermiculite used in Grace's products, including Zonolite Attic Insulation, contained asbestos. The raw vermiculite used in Grace's product contained up to 21% asbestos. Letter from Wake to Byers (September 12, 1956) (Exhibit 8). Despite its recognition of the hazards of asbestos, Grace never completely removed the asbestos from its finished vermiculite-based products, including Zonolite Attic Insulation. Grace's testing showed that its finished vermiculite products contained asbestos in amounts up to and exceeding 5% by weight. Memo from Yang to Wood (April 19, 1977) (Exhibit 9).

Moreover, weight is not a precise measure of risk presented by residential exposure to asbestos. The asbestos fibers in tremolite are so small that millions of them are present in a tiny portion of an asbestos product, yet they are barely detectable by weight. In *Harashe v. Flintkote Co.*, 848 S.W.2d 506 (Mo. Ct. App. 1993), expert testimony established that 600 billion tremolite fibers would constitute approximately the volume of the cap of a fountain pen. *Harashe*, 848 S.W.2d at 508. In *Harashe*, the jury found that plaintiff's fatal mesothelioma disease was caused by Zonolite Attic Insulation. The appellate court upheld that verdict. Though potentially lethal to the lungs, asbestos fibers are invisible to the naked eye and can only be identified through the use of microscopic equipment used by highly trained professionals. Memo from Wood on Tremolite in Vermiculite at 9 (May 24, 1977) (hereinafter "Wood Memo") (Exhibit 10).

1    Grace's Zonolite Attic Insulation was marketed and used as a "do-it-yourself" product

2   to be installed by homeowners immediately following construction or during remodeling. Most of

3   this material was installed in homes before 1985. It is common for older homes to be in need of

4   maintenance, repair and remodeling involving rewiring, installation and replacement of fixtures and

5   utilities in ceilings, attics, and walls, and similar dust-creating and dust-disturbing activities. *See*

6   U.S. Census Bureau data compilations (Exhibits 11, 12 and 13). The Zonolite Attic Insulation

7   product itself is a granular substance that was poured out of large bags into spaces between the roof

8   and the ceiling. The granules are small, about the size of a pencil eraser. After years in the attic, the

9   product may darken and lose some structure and become more dust-like or sand-like.

10    The facts described herein show that homeowners, members of the class, are

11   generally unaware of asbestos in Grace's Zonolite Attic Insulation and the dangers posed when this

12   product is disturbed. As a result, homeowners nationwide are unwittingly disturbing Grace's

13   Zonolite Attic Insulation during maintenance, repair, and remodeling and are at risk of causing

14   dangerous asbestos exposures and contamination without any knowledge of the hazard and the need

15   for precautions in order to minimize exposure and contamination.

16    As contrasted with class members' lack of knowledge of the Zonolite Attic Insulation

17   hazards, Grace and Grace's predecessor, the Zonolite Company, have been aware of the serious

18   health hazards associated with asbestos in their vermiculite since the 1950s. Montana State Board of

19   Health Report on Industrial Hygiene Study of the Zonolite Company (August 8-9, 1956) (Exhibit

20   14) and Dr. Cairns letter to Bleich (July 20, 1959) (Exhibit 15).

21    In the 1960s, recognition of the asbestos hazard in Libby vermiculite was confirmed

22   repeatedly, as demonstrated in documents from Grace's predecessor the Zonolite Company, the

23   Montana State Board of Health, and Grace itself. *See* Grace letter from Lovick (June 14, 1961)

24   (Exhibit 16); Chicago Daily News Article (October 6, 1964) (Exhibit 17); Montana Board of Health

25   letter to Bleich (May 11, 1964) (Exhibit 18) and Lovick Memo (December 23, 1969) with Study and

26   Graph (Exhibit 19) (showing 90% of Zonolite/Libby employees suffered lung disease). Grace's

27   safety manager knew in the late 1960s that Grace's vermiculite-based products were contaminated

28   with asbestos which occurred in the vermiculite ore. Accordingly, he advised:

> I think it well at this time, with the advice of counsel, to consider
> applying a warning or precautionary label or statement on all
> containers of products containing vermiculite. This may aid our
> defense in cases of product liability claims.

Memo to Kostic from Dugan (March 31, 1969) (Exhibit 20). This was not done.

In 1977, in an exhaustive report done by Grace with the benefit of extensive product testing and consultation with its own legal counsel, including the corporate legal division, Grace found that former Libby employees were suffering a "risk of lung cancer . . . five times the national average." The report went on to state in a section entitled "Harm to Customers," that "[t]he highest level of exposure is for Attic Insulation and Masonry Insulation. The high concentrations of upwards of 15 fibers per milliliter ["f/ml"] (15 minute maximum) for attic insulation . . . were observed . . . ." In a telling conclusion to its exhaustive report, Grace stated that "a decision to label our consumer products would eliminate the risk of future liability, while exacerbating the risk of claims . . . from past use of the product." "Wood Memo" at 1909, 1919 and 1924 (Exhibit 10).

In the 1970s, Grace documented the dangerous level of airborne asbestos that resulted from pouring attic insulation and seriously considered discontinuing the production and sale of vermiculite products due to these hazards. "Wood Memo" at 1917 (Exhibit 10), Memo from Brown to Locke (March 11, 1976) (Exhibit 21). Nevertheless, Grace continued to sell Zonolite Attic Insulation until 1984, without warning consumers about the asbestos and the cancer hazard associated with this product. As clearly noted in its exhaustive 1977 analysis, Grace's decision not to provide such an asbestos warning was motivated by its concern that warnings would increase the risk of claims, and thus reduce the profitability of Zonolite Attic Insulation. "Wood Memo" at 1921 (Exhibit 10) and Junker Deposition at 84 (October 23, 1991) (Exhibit 22).

In 1985, one year after Grace discontinued the production and sale of Zonolite Attic Insulation, Grace performed a risk assessment of workers exposed to asbestos from vermiculite products nationwide and estimated that 30,000 lung cancers would result from such exposures. Walsh Memo (November 1, 1985) (Exhibit 23). The lethal effect of exposure to this asbestos compound was unequivocally known to Grace as a result of its own health data on its workers and its own product testing data. Although armed with sufficient knowledge of the asbestos hazard from Zonolite Attic Insulation as early as the 1960s, Grace did not issue an asbestos warning to consumers

1  then, or at any subsequent point from 1960 until today, as it acquired more and more compelling

2  information identifying this hazard.  Instead, the company decided to forego asbestos warnings and

3  take their chances in defending themselves against lawsuits brought by persons injured by this

4  product.

5        **B.**      **The Asbestos in Grace's Zonolite Attic Insulation Is An Ongoing Serious Health**

6                  **Hazard to Homeowners Who Conduct Routine Household Maintenance in Their**
                **Attics.**

7        The disturbance of readily airborne asbestos as a result of home maintenance, repair,

8  and remodeling is a severe health hazard to persons conducting maintenance and to members of the

9  household where such work is done.  This hazard is amplified as a public health threat given the

10  widespread use of Zonolite Asbestos Insulation and because routine homeowner renovation is so

11  prevalent.  Nationwide thousands of homes with  Zonolite Attic Insulation undergo renovation each

12  year.

13        These facts recently compelled the U.S. Environmental Protection Agency ("EPA"),

14  to issue an advisory describing the vermiculite attic insulation problem and the precautionary steps

15  for a homeowner to take. The advisory first describes the problem as follows:

16             If disturbed, asbestos fibers in vermiculite insulation may get into the
           air.  These fibers can be inhaled and become trapped in the lungs

17             where they may cause diseases such as asbestosis, lung cancer, and
           mesothelioma.  These diseases can develop many years after exposure

18             to asbestos.

19  *Asbestos in Vermiculite Insulation*, U.S. EPA Office of Pollution Prevention and Toxics at 1

20  (December 29, 2000) (Exhibit 24).[4/]

21        The EPA advisory details the considerable precautionary procedures to be instituted if

22  disturbance of the insulation does occur, including the use of accredited asbestos removal

23  professionals to perform product identification, risk assessment, product removal and contamination

24  "clearance" testing – skills and tasks well beyond the know-how of a layperson class member.  For

25  example, the advisory recommends:

26

27  _____

28      [4/]This description of the health risk is confirmed by the expert opinion of Dr. Henry A.
Anderson, a medical doctor/epidemiologist with two decades of experience with asbestos research.
*See* Affidavit of Henry A. Anderson, M.D. (July 20, 2000), ¶ 7 (Exhibit 25).

1   
2           If you are planning to remodel or replace vermiculite insulation, have
            it tested first.

3   •       EPA recommends using a trained and accredited professional to
            conduct the tests.  If you decide to remove the vermiculite home
            insulation, use accredited, licensed asbestos removal professionals.
4           Use of a "negative pressure enclosure" technique will prevent fibers
            and dust from escaping from the attic into the rest of the home.  **Do
5           not attempt to do this yourself.**  You could spread asbestos fibers
            throughout your home, putting you and your family at risk of inhaling
6           asbestos fibers.

7   •       After the vermiculite insulation is removed, you may want to consider having
            air monitoring tests done in your attic and throughout the living areas of your
8           home.  This is to ensure that the concentration of asbestos fibers in the home
            is low or not present.

9
*Id.* at 2-3 (emphasis in original).[5]
10

11          The public health threat is manifest.  Even though Grace marketed Zonolite Attic

12  Insulation as a "do-it-yourself" home improvement product without warnings, **the assessment,**

13  **remediation and control of the hazard is absolutely not a "do-it-yourself" endeavor**, and can

14  only be safely and effectively accomplished by adequately informed professional asbestos abatement

15  personnel.[6]

16          Three central liability issues -- the risks of Zonolite Attic Insulation, the necessity to

17  avoid disturbance, and the need for professional assistance to address the problem -- are confirmed

18  _____

19          [5]These procedures are consistent with recognized practices to prevent hazardous exposures to
    asbestos in schools and other buildings.  *See* "Guidance for Controlling Asbestos-Containing
20  Materials in Buildings," U.S. EPA (1985) (known as the "Purple Book") ("However, when ACM
    [asbestos-containing material] is damaged or disturbed – for example, by maintenance or repairs
21  conducted without proper controls – asbestos fibers are released.  These fibers can create a potential
    hazard for building occupants.") (Exhibit 26);  "Managing Asbestos in Place," U.S. EPA (1990)
22  (known as the "Green Book") (["A]sbestos materials can become hazardous when, due to damage,
    disturbance, or deterioration over time, they release fibers into building air.  Under these conditions,
23  when ACM is damaged or disturbed – for example, by maintenance repairs conducted without
    proper controls – elevated airborne asbestos concentrations can create a potential hazard for workers
24  and other building occupants.  As this guide will explain in some detail, in-place management does
    not mean "do nothing."  It means having a program to ensure that the day-to-day management of the
25  building is carried out in a manner that minimizes release of asbestos fibers into the air. . . .")
    (Exhibit 27) Affidavit of Donald J. Hurst (May 25, 2000), President of Fulcrum Environmental
26  Consulting at ¶ 21-24 (identifying the need for safety precautions to minimize exposure and stressing
    need for use of specifically trained professionals) (Exhibit 28).

27          [6]*Asbestos in Vermiculite Insulation*, US EPA Office of Pollution Prevention and Toxics at 3
    (December 29, 2000) (Exhibit 24 at 3).  Other similar public health advisories were issued by EPA
28  Region I, Region X, and the Centers for Disease Control ("CDC"), Agency for Toxic Substances
    Disease Registry (ASTDR").  *See also* Exhibits 29, 30, and 31.

1    by a review of Grace's own documents, the asbestos abatement literature and specific field testing

2    performed by professional environmental consultants in this litigation.

3    Scientific testing simulating home maintenance, repair and remodeling recently

4    performed by both Materials Analytical Services and Fulcrum Environmental Consulting,

5    environmental consultants in this litigation,[2] demonstrate dangerous levels of airborne asbestos

6    during routine household remodeling.  Testing in the Spokane, Washington home of Susan and Rand

7    Hatch demonstrated that the demolition of walls, drilling of holes in a ceiling, shoveling and

8    vacuuming of attic insulation, emptying the vacuumed material into bags, and the sweeping of the

9    dust resulted in airborne asbestos levels ranging from .31 to 5.6 fibers per cubic centimeter ("f/cc")

10   when analyzed by phase contrast microscopy.  (Exhibit 28 at Exhibit B).  In addition, dust found on

11   horizontal surfaces in the vicinity of the renovation was found to contain actinolite-tremolite

12   asbestos.  *Id.*

13   Similarly, in the Spokane, Washington home owned by Marco Barbanti, it was

14   determined that simply scooping the vermiculite using a tin dust pan and pouring it into a bag

15   resulted in airborne asbestos concentrations ranging from 6.96 to 12.48 structures per cubic

16   centimeter ("str/cc").  *See* Affidavit of Richard Hatfield (July 18, 2000) at ¶ 16 (Exhibit 32).  The

17   dust below the vermiculite contained approximately 47 million structures per square foot of asbestos.

18   *Id.*

19   These measurements exceed current Occupational Safety and Health Administration

20   ("OSHA") and Environmental Protection Agency ("EPA") standards and are clearly unsafe for

21   homeowners and their families.  *See* Affs. of Anderson at ¶ 7 (Exhibit 25), Hatfield at ¶ 19-21

22   (Exhibit 32), and Hurst at ¶ 14 (Exhibit 28).  *See also* EPA Report to Congress of

23   Asbestos-Containing Materials in Public Buildings (February 1988) at p. 5. (Exhibit 33) and OSHA

24   Fed. Reg., Vol. 59, No. 153 (August 10 1994) at p. 40978 (Exhibit 34).  The OSHA permissible

25   exposure limit has continued to be reduced over the years, and is currently 0.1 fibers per cubic

26   centimeter ("f/cc").  OSHA has stated that it expects worker exposure at this level will result in

27   _____

28   [2]Mr. Hurst is a certified environmental consultant and the President of Fulcrum
     Environmental Consulting, Inc.; Mr. Hatfield is a certified environmental consultant and the Senior
     Asbestos Consultant at Materials Analytical Services.

1  significant risk (1994 OSHA Reg. 59 CFR at 40967).  Further, the OSHA regulation prohibits

2  workers from being exposed to airborne asbestos concentrations exceeding 1.0 f/cc for a period

3  exceeding 30 minutes.  (Exhibit 34)  The EPA clearance level of 0.01 f/cc represents the airborne

4  asbestos concentration below which a public building can be reoccupied following removal of

5  asbestos.  This standard involves aggressive testing in which dust on all surfaces is made airborne

6  using a leaf blower.  EPA Final Rule and Notice on Asbestos-Containing Materials in Schools, 52

7  Fed. Reg. 41856 (Oct.30,1987) (Exhibit 34.1).  The design of EPA clearance testing recognizes

8  settled dust can be resuspended  and cause an exposure hazard and recognizes the hazards  associated

9  with asbestos dust on surfaces.

10          In addition, Grace's own historical testing also has shown that use or disturbance of

11  its finished vermiculite-based products results in dangerously high airborne concentrations of

12  asbestos.  In 1976, Grace conducted testing of its vermiculite attic fill insulation and determined that

13  "attic fill tested in excess of the 5 fibre level generally and in excess of the 10 fibre ceiling in some

14  instances."  Grace concluded that "this necessitates a binder development program or other

15  remedy."[8]  Also in 1976, Grace conducted simulated testing involving the pouring of Zonolite Attic

16  Insulation and analyzed the air samples by a transmission electron microscope.  All ten samples

17  analyzed exceeded 4.5 f/cc.  Memo to  Hamilton (July 11, 1977) (Exhibit 35).  In March 1980, Grace

18  conducted additional testing of its Zonolite Attic Insulation and found that use of this product

19  resulted in fiber levels of 0.971-2.597 f/cc, Letter from Wood to Ray (April 1, 1980) (Exhibit 36).

20  Grace's Construction Products Division concluded internally that these results were of concern.

21  Memo to McCord from Eaton (March 25, 1980) (Exhibit 37).

22          All of the measurements of asbestos released from Zonolite Attic Insulation described

23  above, both contemporary and historical, field testing and laboratory testing, show that disturbance

24  of Zonolite Attic Insulation presents a significant risk of health and property damage.

25          As explained by Dr. Henry A. Anderson, M.D., a medical doctor and public health

26  official with extensive clinical and research experience with asbestos disease, exposure to asbestos

27

28  [8]A "binder" program refers to the asbestos dust control concept of binding the asbestos fibers
together to the product so the fibers cannot so easily be separated from the product and cause
exposures.

1  can and does cause cancer and other lung disease. *See* Anderson Aff.,¶ 4-7 (Exhibit 25).

2  Furthermore, medical research has established that asbestos is highly carcinogenic and there is no

3  known safe level of exposure to asbestos. *Id.* NIOSH Pamphlet (April 1980) at p. 3 (Exhibit 38),

4  EPA Study (February 1988) at p. 5 (Exhibit 33) and EPA Guidance Document ((March 1979) at

5  Part I, p. 1 (Exhibit 39). The release of asbestos particles in confined spaces such as attics where

6  persons lack proper protective equipment, such as air supplied respirators, will result in peak

7  episodic exposures to asbestos.[2/] *See* Affs. of Anderson at ¶ 7 (Exhibit 25), Hatfield at ¶ 23

8  (Exhibit 28), ¶21-24. As explained by Dr. Anderson, based on the epidemiology and toxicology of

9  asbestos, even non-occupational low-level exposures to asbestos can cause mesothelioma and other

10  asbestos-associated diseases. *See* Anderson Aff., at ¶¶ 4, 7 (Exhibit 25).

11        Documented dangers are posed by residential exposure to Zonolite Attic Insulation.

12  In *Harashe*, 848 S.W.2d at 507-508, a case where the plaintiff sued successfully for

13  asbestos-induced cancer, the plaintiff sustained a limited number of exposures to dust from the

14  Zonolite Attic Insulation – during installation, and during subsequent inspections of vents in the

15  attic. In affirming the plaintiff's verdict against Grace, the court described plaintiff's exposures as

16  follows:

17      Plaintiff used the insulation to insulate his attic by pouring the product between the
joists of his ceiling. Because of the layout and confined space of the attic, he was
18  required to place his face quite close to the insulation as it was being poured into the
spaces between the joists. He testified that the insulation created heavy amounts of
19  dust. Insulating the attic took approximately one day. Thereafter the plaintiff would
go to the attic twice a year to check on a vent located there. On those occasions the
20  attic was quite dusty. Several years after the attic work plaintiff bought additional
Zonolite to insulate between walls. Again in installing this insulation plaintiff came
21  into contact with heavy clouds of dust. In 1975 plaintiff utilized Zonolite to do
additional insulating in the roof of a new addition and again functioned in quite dusty
22  conditions in close proximity to the insulating product. The 1975 exposure would be
on the very edge of the latency period of the plaintiff's expert and outside the latency
23  period of the defendant's expert. From the testimony of the plaintiff we believe that a
jury could find that the plaintiff sustained at least two heavy exposures to dust from
24  the Zonolite.

25  ────────────────────

26     [2/]EPA Proposed Identification and Notification (September 17, 1980) (Exhibit 40) and EPA
Guidance document (March 1983) at 1-1 (Exhibit 41). Notably, EPA has declared that "since peak
27  exposures to asbestos in schools entail risks of serious injuries . . . EPA finds that these exposures
present an unreasonable risk and should be reduced accordingly." *Id.* at 61972-73. EPA has noted
28  that while peak concentrations may be high for brief periods, time-waited averages calculated for an
eight-hour period, are often deceptively low. EPA Airborne Asbestos Assessment Updated (June
1986) at 72 (Exhibit 42).

1  *Id.*

2     Historical testing done by Grace and recent testing done in homes with Zonolite Attic

3  Insulation by certified environmental consultants demonstrate that disturbances of Zonolite Attic

4  Insulation are causing and will continue to cause hazardous exposures.  These dangerous exposures

5  will go on unless homeowners are properly notified.

6    **C.** **Without Effective Notice, Homeowners Are Ignorant of the Extreme Hazard**
    **from Disturbing the Zonolite Attic Insulation Product and Remain at**
7      **Preventable Risk.**

8     Grace's Zonolite Attic Insulation was sold to homeowners as a "do-it-yourself"

9  product.  Remarkably, in product literature and on its Zonolite bags, Grace affirmatively represented

10  to homeowners that Zonolite Attic Insulation "pours easily and cleanly," does not require "mask

11  gloves or special equipment," and "[c]ontains no harmful chemicals."  Zonolite brochure and bag

12  (Exhibit 43).  Further, Grace depicted in its literature and on its bags a person pouring the material

13  without any safety precautions whatsoever, including no mention of respiratory protection, noting the

14  material was "non-irritating to the lungs," and an appropriate activity for "family fun."  Exhibit 44.[10]

15  *See also*, Zonolite advertisement (November 1960) and brochure (1950) and other undated

16  advertisements (Exhibit 44).  Grace has never corrected this dangerously misleading information,[11]

17

---

18    [10]With Grace's Zonolite Attic Insulation, an examination of construction records, such as Grace's product literature, would not disclose the presence of asbestos, Further, a visual inspection of
19  the insulation (without specific knowledge of the physical characteristics of Zonolite Attic Insulation) would not disclose the presence of asbestos since asbestos fibers are invisible to the
20  naked eye.

21    [11]This misinformation and deceit continues and is compounded by Grace's ongoing public statements. For example, Grace's website encourages homeowners to feel safe when working with
22  and around Zonolite attic insulation:

23  Grace took steps to remove fibrous tremolite from the vermiculite used in Zonolite® Attic Insulation . . .

24

25  &bull; Asbestos fibers in the attic space during installation were at a level well below what was then considered a permissible lifetime occupation exposure.

26  &bull; Air sampling indicated no asbestos fibers were detected in the attic within six hours after installation.

27

28  Based on these results, Grace concluded that no unreasonable risk of injury was posed to a homeowner installer.

                       (continued...)

1  nor has Grace warned homeowners that Zonolite Attic Insulation contains toxic levels of asbestos.

2  As a result of Grace's failure to warn and affirmative misstatements of fact, many thousands of

3  homeowners remain ignorant of the dangers to which they and their families may be exposed.

4          Class member John Holbrook's experience illustrates this point. John Holbrook and

5  his family have over the years engaged in typical homeowner renovation activities, and use their attic

6  area for storage. Because the Holbrooks were not advised or warned that Zonolite Attic Insulation

7  contained asbestos, they conducted their work and accessed their attic storage area without taking

8  important safety precautions. Aff. of John Holbrook (July 21, 2000) (Exhibit 45). Now the

9  Holbrooks face an uncertain future risk to their health, are uncertain what home repairs they can or

10  cannot make, and are concerned that living spaces in the home are contaminated. The circumstances

11  of the Holbrook family illustrates that routine homeowner renovation activities taking place in

12  homes threaten public health and safety and present dangers that could be mitigated through an

13  appropriate nationwide notification program to homeowners,[12] who are at risk due to no fault of their

14  own.

15          In addition to the demonstration of anecdotal information documenting lack of

16  homeowner knowledge as to the Zonolite Attic Insulation problem and how to deal with it,

17  plaintiffs' counsel commissioned a statistical marketing research survey in the State of Washington

18  to assess the level of homeowner awareness or lack thereof of the problem. The survey, which was

19  admitted into evidence in the *Barbanti* hearing, was conducted by a professional marketing

20  consultant and determined that approximately 90 % of homeowners surveyed were not aware of the

21  problem or how to deal with it.[13] Needless to say, one cannot take appropriate safety precautions or

22

23          [11](...continued)
   http://www.grace.com/html/libby/libby.html.

24

25          [12]For similar illustrations, *see* Affs. of Rand Hatch (July 20, 2000) (Exhibit 46), Ralph Busch (July 20, 2000) (Exhibit 47) and Brendan King (July 19, 2000) (Exhibit 48) (homeowners who were unwittingly exposed to airborne asbestos while engaged in typical home renovation activities).

26

27          [13]Washington State Survey Summary Report (October 2000) at 6 (Exhibit 49). It should be noted that Washington homeowners have been exposed to more media coverage of the problem than other markets due to the presence of Grace vermiculite expanding plants in the state and the

28  occurrence of an extensive series of articles in the *Seattle Post Intelligencer*. The *Intelligencer* has

                                                                              (continued...)

1  hire properly trained safety personnel (as the EPA recommends) if one is unaware of the presence of

2  Zonolite Attic Insulation in the home or its risks.

3        In sum, the members of the class face a common risk in the form of asbestos

4  exposures and property contamination resulting from uncontrolled disturbance of Zonolite Attic

5  Insulation, and are in need of a common solution – accurate hazard information on risk assessment

6  and hazard abatement.

7  **IV.    ARGUMENT**

8        In considering whether to certify this case as a class action, the Court must first

9  determine that the numerosity, commonality, typicality and adequacy prerequisites of Rule 23(a) are

10 satisfied. Fed. R. Civ. P. 23(a)(1)-(4). *See Amchem*, 521 U.S. at 613. If the requirements of Rule

11 23(a) are met, the Court must then decide whether one or more of the three criteria set forth in Rule

12 23(b) are satisfied. *Amchem*, 521 U.S. at 614.

13       This case is ideally suited for class treatment. If plaintiffs prevail on liability, the

14 entire class will benefit from a uniform asbestos notification, education and remediation program.

15 Class treatment of such claims is routine. *See, e.g., In re School Asbestos*, 789 F.2d 996, 1008-11

16 (3d. Cir. 1986) (defective asbestos-containing building products); *In re "Agent Orange" Prods.*

17 *Liab. Litig.*, 100 F.R.D. 718, 724 (E.D.N.Y. 1983). Where a defendant has caused injury through its

18 manufacture, distribution, and fraudulent marketing of a dangerous product, a class action enables

19 common proof of the dangerous nature of the product and of the defendant's wrongful conduct.

20     A.    **Applying A Washington Class Action Rule That Parallels F.R.C.P. 23, The
             Washington State Court Properly Certified A Statewide Class Seeking Identical**

21           **Relief In The Companion Case, *Barbanti v. W.R. Grace.***

22           This Court will, of course, make its own independent analysis of the class

23 certification issues. However, a review of the *Barbanti* court's reasoning is instructive. *Barbanti v.*

24 *W.R. Grace & Co.* No. 00-2-01756-6 (Sup. Ct. Nov. 28, 2000).

25

26 _____

27       [13]/(...continued)
         played a lead role nationally in coverage of the Grace vermiculite issue. Thus, there is every reason
28 to expect that homeowner awareness of the problem will be greater in Washington State than around
         the country.

1       The *Barbanti* court, applying state rules that track Fed.R.Civ.P.23, first found that

2   plaintiffs met the four requirements of Rule 23(a):  (1) numerosity; (2) commonality of questions of

3   law or fact; (3) typicality of the claims of class representatives; and (4) adequacy of representation of

4   the class's interests. The *Barbanti* court held that defendants had not challenged plaintiffs' estimate

5   that Zonolite Attic Insulation was installed in 900,000 homes nationwide, which establishes

6   numerosity.  The court further found that the commonality requirement was met by "[p]laintiffs'

7   focus on a common course of conduct by the defendants towards all potential class members," and

8   by the fact that "plaintiffs seek equitable relief for the class as a whole in the areas of warnings,

9   education, and remediation, not individual relief." *Id.* at 3.  As to typicality, the court held that

10  where "'the same unlawful conduct . . . affects both the named plaintiff and the rest of the putative

11  class,'" the typicality requirement is usually satisfied, "'despite disparities in individual factual

12  scenarios.'" *Id.* at 4 (*quoting Cullen v. Whitman Med. Corp.*, 188 F.R.D. 226, 230 (E.D. Pa. 1999)).

13      The *Barbanti* court also rejected Grace's arguments, that the class representative was

14  inadequate because of "claim splitting." The *Barbanti* court correctly held: "In a class action, the

15  concept of 'claim splitting' is less of a concern than it would be in an individual action.  It can be

16  more efficient to manage some issues in a class action setting, i.e. liability issues, and this will not

17  preclude individual litigation of other claims, i.e. personal injury claims." *Id.*  The *Barbanti* court

18  also rejected Grace's other boilerplate arguments regarding the adequacy of the class representative.

19  *Id.*

20      Turning to the question of whether the relief sought was properly characterized as

21  injunctive as opposed to monetary, the *Barbanti* court held that the notification program, the

22  development of safety procedures and remediation techniques, and prospective remediation were

23  primarily injunctive in character.

24      Given the lengthy proceedings and evidentiary record that led to a detailed analysis of

25  identical issues in *Barbanti*, plaintiffs submit that the *Barbanti* decision is highly instructive to the

26  analysis of issues before this Court.

27

28

**B.**    <u>The Class Satisfies All of the Prerequisites of Rule 23(a).</u>

1.    <u>Joinder Is Impracticable and Common Questions of Law and Fact Are Shared Among the Class.</u>

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is difficult or impracticable. Here, defendants do not dispute that the proposed class comprises thousands of people, and is sufficiently numerous to make joinder impracticable.

Rule 23(a)(2) requires that there be "questions of law or fact common to the members of the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is to be construed liberally: "'[T]hose courts that have focused on Rule 23(a)(2) have given it a permissive application so that common questions have been found to exist in a wide range of contexts.' The Rule does not require all questions of law and fact to be common." *Rodriguez v. Carlson*, 166 F.R.D. 465, 472 (E.D. Wash. 1996) (citations omitted). The commonality requirement is satisfied if the named plaintiffs share even one question of fact or law with the grievances of the prospective class. *See e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1020 (9th Cir. 1998); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972); Herbert B. Newberg and Albert Conte, *Newberg on Class Actions* § 3.10 at 3-50 (3d ed. 1992); *In re "Agent Orange Prods. Liab. Litig.,"* 818 F.2d 145, 167 (2d Cir. 1987).

Courts analyzing class certification of product liability claims routinely find the commonality requirement satisfied because those cases tend to the focus on the product and the defendant's conduct in designing, manufacturing or distributing that product. *See, e.g.*, *Hanlon*, 150 F.3d at 1020-21 (noting that the product defect class before it presented none of the individualized issues attendant to personal injury cases); *In re School Asbestos*, 789 F.2d at 1009 (finding common factual issues under claims for negligence and strict liability in asbestos product liability action); *In re Copley Pharmaceutical, Inc., "Albuterol" Prod. Liability Litig.*, MDL 1013, 158 F.R.D. 485, 489 (D. Wyo. 1994) (common questions regarding liability existed in contaminated drug case).

Here, the commonality requirement is more than satisfied. The common questions of fact and law include:

(a)    Whether Zonolite Attic Insulation mined, manufactured and sold by Grace is dangerous due to dangerous levels of readily airborne asbestos;

(b)    Whether Grace failed to provide adequate warnings in connection with Zonolite Attic Insulation;

1     (c)     Whether Zonolite Attic Insulation constitutes a present threat to health and
safety;

2
      (d)     Whether Grace intentionally concealed asbestos health hazards from
3     consumers and government agencies responsible for public health;

4     (e)     Whether Grace's public announcements, statements, or representation
concerning Zonolite Attic Insulation were untrue, deceptive, or misleading; and

5
      (f)     Whether Grace's conduct with respect to Zonolite Attic Insulation warrants
6     classwide equitable relief and punitive damages.

7           See Complaint, ¶ 58.

8           At bottom, this case involves a single mass-produced, standardized product and a

9     single course of conduct over many years, i.e., that Grace engaged in a common fraudulent scheme

10    by manufacturing, warranting, advertising, and selling asbestos-contaminated attic insulation that it

11    knew to be hazardous to thousands, while intentionally concealing the asbestos contamination.

12    Complaint, ¶ 1.  All persons in the class face similar health risks, and all deserve to be warned and to

13    have the benefit of a remediation program.  Commonality exists.

14          **2.     The Claims of the Representative Plaintiffs Are Typical of the Other
            Class Member Claims.**

15
           Rule 23(a)(3) requires that the claims or defenses of the representative parties be
16
      "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  A plaintiff's claims will be
17
      deemed typical if "they are reasonably co-extensive with those of absent class members." *Hanlon*,
18
      150 F.3d at 1020.  "Factual differences will not render a claim atypical if the claim arises from the
19
      same event or practice or course of conduct that gives rise to the claims of the class members, and if
20
      it is based on the same legal theory." *Hoxworth v. Blinder Robinson and Co.*, 980 F.2d 912, 923 (3d
21
      Cir. 1992) (internal quotations, citations omitted); *Rodriguez*, 166 F.R.D. at 472 (same).  "When it is
22
      alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the
23
      class sought to be represented, the typicality requirement is usually satisfied, irrespective of varying
24
      fact patterns which underlie individual claims.  Typicality turns on the defendant's actions toward
25
      the plaintiff class, not particularized defenses against individual class members." *Smith v. Univ. of*
26
      *Wash. Law Sch.*, 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998) (internal quotations, citations
27
      omitted); *Cullen*, 188 F.R.D. at 230 (citing *Baby Neal v. Casey*, 43 F.3d 48, 58 (3rd Cir. 1994))
28
      (same); *German v. Federal Home Loan Mort. Corp.*, 885 F. Supp. 537, 554 (S.D.N.Y. 1995)

1   (typicality test does not involve an examination of the specific facts from which the named plaintiffs'

2   claim arose, but rather an examination of the nature of his claim).

3          This is all the more true where, as here, an action seeks injunctive relief under

4   Rule 23(b)(2).  Then, there is no requirement "'that the district court look into the particular

5   circumstances of each member of the class.' . . . Actions under Rule 23(b)(2) may be more

6   rough-hewn than those in which the court is asked to award damages." *Griffin v. Burns*, 570 F.2d

7   1065, 1074 (1st Cir. 1978) (citing 3B *Moore's Federal Practice* ¶ 23.40 (1977)).

8          Plaintiffs' claim arises out of the present health threat created by a decades-long,

9   company-wide practice of marketing a dangerously contaminated product, knowing that it contained

10  dangerous levels of asbestos while concealing product hazards from consumers and public health

11  officials.  As in *Prudential*,

12          [T]he named plaintiffs here have not relied on allegations that they
        were singled out and defrauded by [defendant].  They have instead
13          alleged that they suffered harm as a result of the same company-wide
        conduct that injured the absentee class members.  The various forms
14          which their injuries may take do not negate a finding of typicality,
        provided the cause of those injuries is some common wrong.  In this
15          instance, the alleged common scheme provides an appropriate basis for
        a finding of typicality.  Since all members of the class would need to
16          demonstrate the existence of this scheme, their interests are
        sufficiently aligned that the class representatives can be expected to
17          adequately pursue the interests of the absentee class members.

18  *In re Prudential Ins. Co. America Sales Litig.*, 148 F.3d 283, 312 (3d Cir. 1998) (internal quotations

19  and citations omitted).

20          The claims of the representative plaintiffs in this action are typical of the class as a

21  whole.  They all own and/or reside in homes or other structures with Zonolite Attic Insulation.  No

22  class representative has interests adverse to those of the class as a whole.  Representative and class

23  members alike have been injured as a result of the installation of Zonolite Attic Insulation.  The

24  representative plaintiffs' and class members' claims arise from the same events and course of

25  conduct, and are based on the same legal theories.  Plaintiffs, like other class members, are burdened

26  with substantial future operation, maintenance, and abatement needs due to the presence of this

27  asbestos-contaminated product in their homes.

28

1    Thus, plaintiffs' claim "arises from the same event or practice or course of conduct

2  that gives rise to the claims of the class members and . . . is based on the same legal." *Hoxworth v.*

3  *Blinder*, 980 F.2d at 923.  The typicality requirement is satisfied.

4    **3.    The Representative Plaintiffs Will Fairly and Adequately Protect the**
      **Interests of the Class.**

5    Rule 23(a)(4) states that the representative plaintiff must "fairly and adequately

6  protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This criterion ensures that the class

7  representative and class counsel will be diligent and capable in protecting the interest of class

8  members.  *General Tel. Co. v. Falcon*, 457 U.S. 147, 157, 102 S. Ct. 2364, 2370-71, 72 L.Ed.2d 740

9  (1982), *aff'd*, 815 F.2d 317 (5th Cir. 1987); *see also Hill v. Western Electric Co., Inc.*, 672 F.2d 381,

10  389, n.3 (4th Cir. 1982).  To determine whether the criterion is met, courts look at two factors:  (1)

11  whether the named plaintiffs' counsel is competent to represent the class; and (2) whether there

12  exists any conflict of interest between the named plaintiffs and the rest of the class.  *Hanlon*, 150

13  F.3d at 1020; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).  When

14  there is no evidence of any conflict between the class representatives and the class, this Court may

15  presume that there is no such conflict.  *Harriss v. Pan American World Airways, Inc.*, 74 F.R.D. 24

16  (N.D. Cal. 1977).

17    Class representatives Price, Prebil and Prebil, have demonstrated their willingness

18  and diligence in representing the class by bringing the present action, promptly seeking preliminary

19  injunctive relief that runs to the benefit of class members, subjecting themselves to lengthy

20  depositions, answering numerous interrogatories and requests for production, and subjecting their

21  homes to days of testing by teams of defendants' experts.  Each of the proposed representative

22  plaintiffs has articulated their commitment to obtaining classwide relief:

23        I basically have three objectives; three goals.  One, to make sure
24        there's notification to all homeowners of the dangers of Zonolite, to set
         up a fund to defray the problems with Zonolite and to cure them.
25        Number two, establish protocol for the safety of those who will work
         with Zonolite in the future.  Three, to establish a fund to cover the
26        expenses involved with anyone working around Zonolite in the future.

27  John Prebil Depo., 31:22-32:04 (Deposition excerpts attached to the Vincent Decl.).

28        [I]t's my understanding, to represent ourselves in a class as well as we
         can, to make sure that homeowners are notified, if they have Zonolite

1   in their homes, of the dangers of Zonolite, to set up a safety protocol
2   for anyone entering a Zonolite area, and to set up a fund to cover all
    expenses for anyone having to work in a Zonolite area.

3   Margery Prebil Depo., 16:9-16.

4   [P]ossibly we could get a fund or something set up here so when
    people have a problem with their Zonolite situation, whether it be
5   advertising or maybe a loss of property value or going in for
    remodeling, that they could draw from it.
6
    Paul Price Depo., 32:7-12.
7
        There are no legitimate objections to the level of plaintiffs' concern for the class.
8
    Further, the proper emphasis in this prong of the inquiry is on the integrity and effectiveness of class
9
    counsel. *Adair v. Sorenson*, 134 F.R.D. 13, 18 (D. Mass. 1991) (guideline for adequacy of
10
    representation is "that counsel chosen by the representative parties is qualified, experienced and able
11
    to vigorously conduct the proposed litigation") (*quoting Andrews v. Bechtel Power Corp.*, 780 F.2d
12
    124, 130 (1st Cir. 1985)); *Chevalier v. Baird Sav. Assoc.*, 72 F.R.D. 140, 146 (E.D. Pa. 1976)
13
    (certifying a class even though the named plaintiffs had "a very sketchy view" of the litigation and
14
    class counsel proceeded in the case "without significant restraints from the named plaintiffs"); *In re*
15
    *Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1037 (N.D. Miss. 1993) (noting that requiring leadership
16
    by class representatives rather than class counsel in sophisticated litigation would reduce the class
17
    action device to "an impotent tool").
18
        Plaintiffs' proposed class counsel consist of the MDL 1376 Plaintiffs' Executive
19
    Committee members and *Price* counsel, a group with extensive experience litigating complex
20
    actions, including class actions, asbestos claims and consumer cases. Counsel possess the resources
21
    and the will to actively and vigorously prosecute this case.
22
        Rule 23(a)(4) adequacy is also demonstrated by the remedy sought here. Class-wide
23
    equitable relief to forestall future injury differs radically from an individual personal injury claim for
24
    compensatory damages for physical injury caused by exposure. In requesting equitable relief for the
25
    class to avert future physical injury, while at the same time preserving class members' rights to
26
    pursue personal injury claims in the future should they have the misfortune of contracting a disease,
27
    plaintiffs serve the class members' interests.
28
        The Rule 23(a)(4) adequacy requirement is satisfied.