IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et.al.*, | ) | Case No. 01-01139 (JJF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | **Ref Docket No. 1106** |

**OPPOSITION OF THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS TO DEBTORS' MOTION FOR LEAVE TO FILE OMNIBUS REPLY TO VARIOUS OBJECTIONS TO THE DEBTORS' MOTION FOR ENTRY OF CASE MANAGEMENT ORDER, ESTABLISHMENT OF A BAR DATE, APPROVAL OF THE <u>PROOF OF CLAIM FORMS AND APPROVAL OF THE NOTICE PROGRAM</u>**

CAPLIN & DRYSDALE, CHARTERED
399 Park Avenue, 36th Floor
New York, NY 10022
(212) 319-7125

One Thomas Circle, N.W.
Washington, D.C. 20005
(202) 862-5088

CAMPBELL & LEVINE, LLC
Chase Manhattan Centre
1201 N. Market Street
15th Floor
Wilmington, DE 19801
(302) 426-1900

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

DISCUSSION ..................................................................................................................... 2

I.      DEBTORS SAVED THEIR CORE ARGUMENTS FOR THE REPLY ............... 2

      A.     Debtors' Proposed "Litigation Protocol" Appears Nowhere
           In Their Opening Brief ............................................................................ 2

      B.     Debtors' Analysis of "500 Randomly-Selected" Claim Files, Their
           Challenge to Basic Estimation Procedures Under the Code, and Their
           Lengthy Discussion of the Grounds for Their Proposed Omnibus
           Summary Judgment Motions Also Belonged -- if Anywhere -- in
           Their Opening Brief ............................................................................... 5

      C.     Under the Local Rules of This District, This Court Should Refuse to
           Consider the Arguments Debtors Saved for Their Reply Brief ................. 7

II.     HAD THESE ARGUMENTS BEEN PROPERLY RAISED IN DEBTORS'
      OPENING BRIEFS, THE GOVERNING LAW COULD NOT HAVE
      SUSTAINED THEM ..................................................................................... 8

      A.     Debtors "Protocol" Dramatically Ignores Controlling Provisions of
           the Bankruptcy Code and Rules ............................................................. 8

           1.     Proofs of Claim Are *Prima Facie* Evidence of Valid Claims,
                 Which Must Be Allowed Unless Debtors Object With Specific
                 Rebuttal Evidence ......................................................................... 11

                 a.     Omnibus Lists of "Similarly Situated" Claims Are Not
                        Sufficient To Initiate Contested Proceedings ................... 12

                 b.     Debtors' Exemplar Objection Procedure Would
                        Violate Collateral Estoppel Principles and Claimants'
                        Due Process Rights .......................................................... 14

                 c.     Debtors on Summary Judgment Bear the Initial Burden
                        of Showing an Absence of Disputed Material Fact That
                        They Cannot Shift to Claimants under the Guise of
                        "Show Cause" Proceedings .............................................. 15

2.     The Bankruptcy Rules Allow Claimants Full Discovery In Contested Proceedings on the Validity of Their Claims ............... 15

3.     The Bankruptcy Code Expressly Affords Personal Injury Claimants the Right to Jury Trials on Their Claims ..................... 18

B.     Debtors' Argument That Estimation Will Impede This Case Was Not Advanced Before, and Contradicts the Position Taken in Their "Informational Brief" ............................................................................... 20

1.     The Notion That Debtors Can Contest Liability Is a Complete Strawman -- If Liability Is Contested, It Must Be Done Pursuant to the Statutory Provisions for Discovery and Jury Trials ................................................................................................... 21

2.     Debtors Misapply Fed. R. Evid. 408 ............................................. 22

3.     Debtors' "Cramdown" Argument Would Render § 502(c)(1) Superfluous ..................................................................................... 24

C.     Debtors' Discussion of "the Basic Legal Requirements" of Personal Injury Claims Has No Business Appearing For the First Time in Their Proffered Reply and, in Any Event, Is Rife With Error .................. 25

1.     Product Identification Requires Claim-by-Claim Discovery and, Where Facts Are Disputed, Trial ........................................... 26

2.     Omnibus Resolution of Proximate Cause Is a Legal and Practical ............................................................................................ 28

3.     Debtors' Suggestion That Pleural Plaques, Pleural Thickening, and Asymptomatic Asbestosis Are Universally Not Compensable In The Tort System Is Wrong .......................... 29

4.     Debtors Seriously Misapply *Daubert* In Seeking to Exclude Testimony on the Basis of Experts' Conclusions .......................... 32

CONCLUSION ..................................................................................................... 37

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*ACandS, Inc. v. Aetna Casualty and Surety Co.,* 764 F.2d 968 (3d Cir. 1985) ...........................27

*A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) ...............................................18, 20

*Ackles v. A.H. Robins Co., Inc. (In re A.H. Robins Co., Inc.),*
    59 B.R. 99 (Bankr. E.D. Va. 1986).................................................................................16

*Bank of Bellwood v. Stoecker (In re Stoecker*), 143 B.R. 879 (Bankr. N.D. Ill. 1992) ..................9

*Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159 (10th Cir. 1998) ........................................................7

*Belton v. Fibreboard Corp.*, 724 F.2d 500 (5th Cir. 1984)...........................................................23

*Bonnette v. Conoco, Inc.*, No. 01-0297, 2001 WL 1047546 (La. Ct. App. Sept. 12, 2001)..........31

*Borel v. Fiberboard Paper Prods. Corp.*, 493 F.2d 1076 (5th Cir. 1973)....................................27

*Bowerman v. United Illuminating,* 1998 WL 910271 (Conn.Super. Dec. 15, 1998) ..............30, 31

*Broadmount Capital Corp. v. Summa Med. Corp.*, 972 F.2d 1183 (10th Cir. 1992) ...................23

*Bryson v. Pillsbury Co.*, 573 N.W.2d 718 (Minn. Ct. App. 1998) ...............................................30

*Capps v. Eggers*, 782 F.2d 1341 (5th Cir. 1986) .........................................................................10

*Cella v. Togum Constructeur Ensembleier en Industrie Aliemtaire,*
    173 F.3d 909 (3rd Cir. 1999) .........................................................................................20

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...........................................................................15

*Cimino v. Raymark Indus., Inc.*, 151 F.3d 297 (5th Cir. 1998) .......................................20, 28, 29

*City of New York v. New York, N.H. & H.R. Co.*, 344 U.S 293 (1953) ........................................17

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992).....................................36

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993)............................... 6, 32-36

*DeLuca v. Merrell Dow Pharmaceuticals, Inc.,* 911 F.2d 941 (3d Cir. 1990) ............................33

*Eagle-Picher v. Liberty Mutual,* 829 F.2d 227 (1st Cir. 1987)....................................................35

*Federal Ins. Co. v. Signtactics, Inc.,* 1998 WL 175882 (D. Del. March 26, 1998)........................7

*Gardner v. State of New Jersey*, 329 U.S. 565 (1947)....................................................11

*Granfinanciera v. Nordberg*, 492 U.S. 33 (1989).........................................................18

*Grogan v. Garner*, 498 U.S. 279 (1991)..................................................................14

*Heckler v. Chaney*, 470 U.S. 821 (1985) ................................................................25

*Hubbard v. United States*, 514 U.S. 695 (1995) ....................................................10, 19

*In re Allegheny Int'l. Inc.*, 954 F.2d 167 (3d Cir. 1992) .........................................11, 16

*In re Asbestos Litigation,* No. 87-09-24, 1994 WL 721763 (Del. Super. June 14, 1994) .............31

*In re Dow Corning Corp.,* 211 B.R. 545 (Bankr. E. D. Mich. 1997) .............................22, 25, 29

*In re Dresser*, 135 F. 495, 498-99 (2d Cir. 1905)......................................................12

*In re Eagle-Picher Indus., Inc.*, 189 B.R. 681 (Bankr. S.D. Ohio 1995).................................24

*In re Equipment Servs., Ltd.*, 36 B.R. 241 (Bankr. D. Alaska 1983).....................................12

*In re Johns-Manville*, 26 B.R. 919 (S.D.N.Y. 1983) ...................................................20

*In re Myrland*, 209 B.R. 524 (W.D. Wash. 1997) ......................................................12

*In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717 (3d Cir. 1994) ("*Paoli II*") .................... 32-34

*In re Pinnacle Brands, Inc.*, 259 B.R. 46 (Bankr. D. Del 2001)....................................11

*In re Sabre Shipping Corp.*, 299 F. Supp. 97 (S.D.N.Y. 1969) .......................................11

*In re UNR Indus., Inc.*, 45 B.R. 322 (N.D. Ill. 1984)...........................................18, 19

*Internal Revenue Service v. Taylor (In re Taylor)*, 132 F.3d 256 (5th Cir. 1998)........................11

*Johnson v Manhattan Ry. Co.*, 289 U.S. 479 (1933) ...................................................20

*Jones v. United Parcel Service*, 214 F.3d 402 (3d Cir. 2000) ........................................15

*Jordan v. Bellinger,* 2000 WL 1456297, (D. Del. Sept. 21, 2000)....................................7

*Juniper Dev. Group v. Kahn (In re Hemingway Transport Inc.*),

93 F.2d 915 (1st Cir. 1993) ...................................................................................11

*Kaiu v. Raymark Indus., Inc. (In re Hawaii Fed. Asbestos Cases)*,
60 F.2d 806 (9th Cir. 1992) ..........................................................................26

*Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802 (3d Cir. 1997) ...............................35

*Kumho Tire Co., LTD. v. Carmichael,* 526 U.S. 137 (1999) .........................................32

*Lockwood v. AC&S, Inc.*, 744 P.2d 605 (Wash. 1987) ................................................26

*Louderback v. Orkin Exterminating Co., Inc.,* 26 F. Supp. 2d 1298 (D. Kan. 1998) ....................35

*Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035 (9th Cir. 2000) .........12

*Mancari v. A.C.&S., Inc.,* 670 A.2d 1339 (Sup. Ct. Del. 1995) ...................................31

*Matter of Walker*, 216 B.R. 275 (D. Neb. 1997) .......................................................12

*Mauro v. Owens-Corning Fiberglas Corp.,* 225 N.J. Super.196, 542 A.2d 16
N.J. Super. App. 1988) ..................................................................................30

*Metro-North Commuter R.R. Co. v. Buckley,* 521 U.S. 424 (1997) ................................31

*Miller v. American President Lines, Ltd.,* 989 F.2d 1450 (6th Cir. 1993) .........................27

*Paoli R.R. Yard PCB Litigation v. Monsanto Co.* ("*Paoli I"*), 916 F.2d 829 (3d Cir. 1990) ........33

*Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979) ...........................................14

*Provenz v. Miller*, 102 F.3d 1478 (9th Cir. 1996) ......................................................7

*Raymark Indus., Inc. v. Stemple,* 1990 WL 72588 (D. Kan. May 30, 1990) .......................34

*Richoux v. Armstrong Cork Corp.*, 777 F.2d 296 (5th Cir. 1985) ..................................26

*Roehling v. National Gypsum Co. Gold Bond Bldg. Prods.*, 786 F.2d 1225 (4th Cir. 1986) ........27

*Ruff v. Partner's Liquidating Trust*, No. 00 C 7337, 2001 WL 687466,
(N.D. Ill. June 19, 2001) ................................................................................7

*Spaur v. Owens-Corning Fiberglas Corp.*, 510 N.W.2d 854 (Iowa 1994) ...........................26

*Toma Steel Supply, Inc. v. GHR Energy Corp. (In re Transamerican Natural Gas Corp.)*,
978 F.2d 1409 (5th Cir. 1992) .........................................................................16

*U.S. v. Downing,* 753 F.2d 1224 (3d Cir. 1985) ......................................................................32

*United States v. Kolstad (In re Kolstad)*, 928 F.2d 171 (5th Cir. 1991)........................................9

*Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131 (5th Cir. 1992)................................14

*Verbryke v. Owens-Corning Fiberglas Corp.,* 84 Ohio App.3d 388,
    616 N.E.2d 1162 (Ct. App. 1992)......................................................................................30

*Viero v. Bufano,* 925 F. Supp. 1374 (N.D. Ill. 1996) ......................................................................7

*Vomhof v. United States*, 207 B.R. 191 (D. Minn. 1997) ..............................................................12

*Weitzman v. Eagle-Picher Indus. (In re New York City Asbestos Litig.),*
    542 N.Y.S.2d 118 (N.Y. Sup. Ct. 1989) ..........................................................................26

*Whitney v. Dresser*, 200 U.S. 532 (1906) ......................................................................................12

*Witkowski v. Welch*, 173 F.3d 192 (3d Cir. 1999) ........................................................................14

## STATUTES AND RULES

11 U.S.C. § 502................................................................................6, 11, 19, 21, 23, 24

11 U.S.C. § 1129(b) .........................................................................................24, 25

28 U.S.C. § 157(b)(5) ......................................................................................18, 19

28 U.S.C. § 1411...............................................................................18, 19, 29, 30

FED. R. BANKR. P. 3001......................................................................................9, 11

FED. R. BANKR. P. 7056..........................................................................................15

FED. R. BANKR. P. 9014........................................................................16, 17, 19, 22, 28

FED. R. EVID. 404(b)...............................................................................................24

FED. R. EVID. 408 ............................................................................................22-24

Local Rule 7.1.3(c)(2)................................................................................................7

## OTHER AUTHORITIES

2 WEINSTEIN, FEDERAL EVIDENCE § 408.08[5] (2nd ed. 1997)...........................................23, 24

9 COLLIER ON BANKRUPTCY ¶ 3007.01[1] (15th ed. 2000) ...........................................16

10 COLLIER ON BANKRUPTCY ¶ 9014.05.....................................................................................16

23 WRIGHT AND GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5306 (1980) ........................22

Chesebro, Kenneth J., *Taking Daubert's "Focus" Seriously:  The Methodology/Conclusion Distinction*, 15 CARDOZO L. REV. 1747 (1994) ...........................................................................34

Silver, Charles, *Comparing Class Actions and Consolidations,* 10 Rev. Litig. 495 (1991)..........20

Weill, H., *Diagnosis of Asbestos-Related Disease,* 91 CHEST 802 (1987)....................................35

## INTRODUCTION

Local Rule 7.1.3(c)(2) unambiguously provides:  "The party filing the opening brief *shall not reserve material for the reply brief which should have been included in a full and fair opening brief.*"  Here, Debtors waited until page 54 of their 83-page Proffered Reply to set forth *for the first time* the terms of the "litigation protocol" that their Motion for Entry of Case Management Order, Entry of Case Management Order, Establishment of a Bar Date, Approval of the Proof of Claim Forms and Approval of the Notice Program ("Bar Date Motion") nominally seeks.  Such blatant sandbagging is precisely what Rule 7.1.3(c)(2) precludes.  Accordingly, the Official Committee of Asbestos Personal Injury Claimants (the "Committee") respectfully submits that Debtors' instant Motion for Leave to File Omnibus Reply should be denied and the Debtors' Proffered Reply consequently stricken.

## DISCUSSION

I.    **DEBTORS SAVED THEIR CORE ARGUMENTS FOR THE REPLY**

    A.    **Debtors' Proposed "Litigation Protocol" Appears Nowhere In Their Opening Brief.**

        In a recently-filed document entitled "Status Report of W.R. Grace and Proposal of Priorities for Litigation in This Court" ("Debtors' Status Report"), Debtors represent that "in late June," they "propos[ed] a comprehensive Case Management Order which set out a roadmap for the litigation that is critical to this case." (Debtors' Status Report at 1.)  That "roadmap" barely resembles the "protocol" they describe in their Proffered Reply.  Debtors filed their "comprehensive reply on November 10, 2001," over a month after the Oppositions were filed, and only 11 days before a scheduled hearing on their proposal. (*Id.*)  Thus, barely two weeks before the seminal hearing on their proposal and long *after* the Committee's opportunity for response had expired, Debtors reveal the very proposal that is the purported subject of their opening papers.  Not only is this maneuver untenable under the Rules of this Court, it misleads.  Debtors go so far in their most recent papers as to assert that, as of the November 21, 2001 hearing, "there are no loose ends." (*Id.* at 8.)  But if Debtors' Proffered Reply is accepted at face value, everything said up to this point regarding Debtors' "propos[ed] a comprehensive Case Management Order which set out a roadmap for the litigation that is critical to this case" is wasted breath. (*Id.* at 1.)  Not one word of argument regarding Debtors' "protocol" for the management of asbestos personal injury claims has had a chance to make it into this record.

        In their opening brief, Debtors outline a proposal for an "Asbestos Personal Injury Track" which contains the following elements:

- an ***audit*** by Debtors of the "completeness and reliability" of submitted personal injury claims, followed by Debtors' objections and ***motions to disallow "incomplete"***

*claims*, a 30-day period for oppositions, a 15-day period for replies, and a ***hearing and ruling on the motions to disallow***;

- ***omnibus objections and motions for summary judgment*** regarding remaining claims;

- a "***six-month period*** during which any ***discovery*** related to its summary judgment motions could take place," the filing of claimants' response, and Debtors' reply;

- a ***hearing on summary judgment motions***; and

- Fed. R. Civ. P. 42 ***trials*** on any "remaining issues."

(Debtors' Memorandum in Support of Motion for Entry of Case Management Order, Motion to Establish Bar Date, Motion to Approve Claim Forms, and Motion to Approve Notice Program ("Debtors' Mem.") at 22-24, 48-49; *see also* Motion at 9-10.)  Accordingly, this is the proposal to which the Committee objected, point by point, in its Opposition.

Now, in their Proffered Reply, Debtors outline a completely different proposal -- one for a "litigation protocol for personal injury claims" -- which, in contrast, has the following elements:

- Debtors' filing of "***exemplar objections and summary judgment motions*** to each category of disputed claims";

- ***30-day period for claimants' responses, with no "wide-scale discovery"*** because "the Proof of Claim form requires provision of most of the information needed";

- the commencement of ***"Rule 706 expert work,"*** including "*Daubert* proceedings regarding the reliability of scientific evidence to support personal injury claims";

- a ***ruling on Debtors' "exemplar objections/motions"***;

- filing of "***omnibus objections and summary judgment motions*** for all similarly situated claims"; and

- ***30-day period for claimants "to file a response showing cause why the Court's exemplar rulings do not govern their situation."***

(Debtors' Consolidated Reply in Support of Their Motion for Entry of Case Management Order, Establishment of a Bar Date, Approval of the Claim Forms and Approval of the Notice Program ("Proffered Reply") at 54-55 (emphasis added)).

The Proffered Reply is thus the first place in which Debtors alert the Court and the parties to the key elements of their novel "protocol" -- elements that have grave substantive implications for claimants. First, having apparently dropped the idea of an "audit" and motions to disallow for "incompleteness and reliability," Debtors' Proffered Reply injects into these proceedings the brand-new notion of "exemplar" objections/summary judgment motions. Instead of the six-month discovery period proposed in their initial pleading, Debtors now suggest that the Proof of Claim form alone constitutes claimants' "discovery," and propose a mere 30 days for responding to the "exemplar" objections/motions. Following a ruling on the so-called "exemplar" objections/summary judgment motions, Debtors would now have the Court engage in something they call "Rule 706 expert work" that, again, was not discussed in their opening brief. Debtors then return to their original notion of filing "omnibus objections and summary judgment motions," but would now have these motions seek to bar claims that are "similarly situated" to the "exemplar" claims on which the Court would have, under their proposal, already ruled. Finally -- and this is the real wolf in sheep's clothing -- without *any* discovery, those claimants identified in "omnibus" objections would have a scant 30 days under Debtors' Proffered Reply to "show cause" why the Court's exemplar rulings do not forever preclude their claims.

Simply put, the Committee should have had a fair chance to set forth in its Opposition the numerous reasons why this "protocol" is unlawful.

>    B.    **Debtors' Analysis of "500 Randomly-Selected" Claim Files, Their Challenge to Basic Estimation Procedures Under the Code, and Their Lengthy Discussion of the Grounds for Their Proposed Omnibus Summary Judgment Motions Belonged -- if Anywhere -- in Their Opening Brief.**

In a transparent attempt to engender bias against asbestos personal injury claimants, Debtors also devote five full pages of their Proffered Reply to a self-serving discussion of an "analysis of 500 randomly-selected claim fails from [Grace's] 1997 and 2000 filings" that went unmentioned in their opening brief. (Proffered Reply at 11.) Even if this analysis had been disclosed in Debtors' initial brief, without access to the claims files, the supplemental information Debtors reportedly obtained from the Manville Trust and the Center for Claims Resolution, and discovery regarding Debtors' "random selection" process, the Committee is completely disabled from fashioning a meaningful response. This is significant. Debtors represent that this closely-held data "confirms that the vast majority of 1997 claims were invalid or of doubtful validity, and that valid year 2000 claims are even more scarce." (*Id.* at 12.) But they do not attach a single bit of evidence to support this extraordinary conclusion. Given the impropriety of the apparent purpose of this discussion -- to dash claimant credibility before these proceedings even begin -- the fact that it was sprung on the Committee as the last word in this round of briefing is particularly egregious. It should be stricken from the record.[1]

---

[1]    Debtors' expression of outrage that "the tort committees utterly fail to provide . . . an explanation" for the alleged "surge of asbestos claims against Grace" has no place in these proceedings. (Proffered Reply at 2.) There is no principle of law or equity that imposes on the Committee an obligation to engage in petty, defensive sidebars about Grace's complaints about the tort system. Similarly, Debtors' repeated personal attacks on "[t]he major plaintiff law firms" is unprofessional, and should be sharply discouraged. (*See id.* at 78.)

Debtors also consume nine pages of their Proffered Reply by arguing that "estimation . . . will impede rather than advance this case." (Proffered Reply at 17.) This discussion includes an obscure subsection which claims that "a cramdown on equity is barred as a matter of law where liability remains an issue." (*Id.* at 20.) Although Debtors suggest that all of this responds to a Committee argument that "estimation can supplant litigation," the pages of the Committee's brief cited by Debtor say no such thing. (*Id.* (citing Opposition at 9, 16, 18)). Indeed, the Committee simply seeks to apply the letter of the Bankruptcy Code and Rules, much like Debtors do in their so-called "Informational Brief," which stated in no uncertain terms that "[e]stimation for purposes of determining the feasibility of a proposed plan of reorganization under Chapter 11 may be necessary where the adjudication of thousands of individual claims 'would unduly delay the administration of Grace's reorganization.'" (W.R. Grace's Informational Brief ("Info. Brief") at 66 (citing 11 U.S.C. § 502(c)(1)). In light of Debtors' threshold acceptance of hornbook law on estimation, the Committee's Opposition did not anticipate -- or, of course, respond to -- the detailed challenges to the Code's estimation procedures that are included in Debtors' Proffered Reply.

Lastly, although Debtors' opening papers did outline the grounds for their proposed summary judgment motions, (Debtors' Mem. at 15-18), their discussion of "common issue litigation" in the Proffered Reply is over four times as long, and includes technical arguments regarding "ILO" tests, "PFTs" and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), as well as a heretofore-unmentioned proposal for "use of independent, court-appointed experts under Rule 706," (Proffered Reply at 52). Because these issues, again, were not raised by the Committee in its Opposition, they belonged in Debtors' opening papers -- not their

Proffered Reply.  Debtors' strategic placement improperly forestalled any response by the Committee as a matter of course.

        **C.**      **Under the Local Rules of This District, This Court Should Refuse to Consider the Arguments Debtors Saved for Their Reply Brief.**

Debtors' failure to show their hand in the opening brief as mandated by Local Rule 7.1.3(c)(2) is an undue attempt to impose an unprecedented agenda on this Court without affording personal injury claimants a basic opportunity to respond.  It violates any conceivable concept of fairness, and should not be tolerated under the law of this District.

The District Court for the District of Delaware has recognized that Local Rule 7.1.3(c)(2) forbids "a situation where one party misled the other by holding back arguments until the reply brief." *Federal Ins. Co. v. Signtactics, Inc.,* 1998 WL 175882, at *1 (D. Del. March 26, 1998); *see also Jordan v. Bellinger,* 2000 WL 1456297, at *1 n.1 (D. Del. Sept. 21, 2000) (refusing to consider argument raised for the first time in the reply brief).

Likewise, other courts have flatly disregarded any evidence or argument raised for the first time in a reply brief, *see, e.g., Viero v. Bufano,* 925 F. Supp. 1374, 1380 (N.D. Ill. 1996); *Ruff v. Partner's Liquidating Trust*, No. 00 C 7337, 2001 WL 687466, at *2 n.3 (N.D. Ill. June 19, 2001), or held that, at the very least, the other side must have an opportunity to respond, *see, e.g., Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164-65 (10th Cir. 1998) (citing *CIA Petrolera Caribe, Inc. v. Arco Caribbean, Inc.,* 754 F.2d 404, 410 (1st Cir. 1985)); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (quoting *Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990)).

Such foul play warrants equally serious consequences here.  Debtors' new arguments should not be considered or, at a minimum, the other parties should be allowed a fair opportunity to respond and counsel directed not to engage in such surprise tactics in the future.

II.    **HAD THESE ARGUMENTS BEEN PROPERLY RAISED IN DEBTORS'
       OPENING BRIEFS, THE GOVERNING LAW COULD NOT HAVE
       SUSTAINED THEM**

   A.    **Debtors "Protocol" Dramatically Ignores Controlling Provisions of
         the Bankruptcy Code and Rules**

Debtors' rhetoric in the face of the settled standards governing proofs of claim and

objections under the Bankruptcy Code, Rules, and extensive case law is simply astonishing.

While failing to providing *any* honest discussion of the governing law, Debtors accuse the

*Committee* of "abandoning the rules of procedure and evidence that are at the heart of civil

jurisprudence and that the Bankruptcy Code specifically adopted for resolving disputed liability

in Chapter 11."  (Proffered Reply at 1.)  They claim, "[b]y contrast," that "Grace's proposed Case

Management Order calls for the application of bread-and-butter federal procedure" and "basic

rules . . . that are adopted in the Code."  (*Id.* at 1, 5.; *see id.* at 60 ("Grace's protocol is comprised

of litigation procedures taken right out of the rules."))   According to Debtors, "[n]o extension of

the law is necessary, and none is advocated."  (*Id.* at 1, 5.)  Nothing could be further from the

truth.

Glaringly absent from Debtors' Proffered Reply is any citation to numerous bedrock tenets of bankruptcy law that their newly-minted "protocol" plainly violates.[2] ***First,*** while Debtors would file objections to cherry-picked "exemplar" claims to *ipso facto* disallow thousands of others, the law is clear that all claims filed in accordance with the Bankruptcy Rules *must be allowed* unless *Debtors* object with sufficient evidence to rebut the *prima facie* validity of *each* proof of claim.  ***Second,*** while Debtors would bind claimants to the information on their proofs of claim and make no allowance for reasonable discovery, the law is clear that if Debtors meet their initial burden of rebuttal with respect to any claim the claimant is entitled to *full discovery* pursuant to the Federal Rules of Civil Procedure (as adopted by the Bankruptcy Rules) in a contested proceeding on the validity of the claim.  ***Third,*** while Debtors would require claimants -- listed by the thousands in their "omnibus objections" -- to show cause within 30 days why their claims should not be disallowed, the law is clear that due process entitles each

---

[2]     As set forth in the Committee's Opposition, Debtors' initial proposal that claims be disallowed for "incompleteness" upon an audit by Debtors also cannot withstand legal scrutiny. (Opposition of the Official Committee of Asbestos Personal Injury Claimants to Debtors' Motion for Entry of Case Management Order, Establishment of a Bar Date, Approval of the Proof of Claim Forms and Approval of Notice Program ("Opposition") at 37-39.)  Debtors make no attempt to reply to the Committee's arguments on this issue, and the "protocol" outlined in the Proffered Reply does not include the "audit."  In any event, "[t]here is *no* authority for the proposition that the failure to attach documents to a proof of claim requires the bankruptcy court to disallow the claim on that basis."  *Bank of Bellwood v. Stoecker (In re Stoecker)*, 143 B.R. 879, 883 (Bankr. N.D. Ill. 1992) (citing *In re Steele*, 1992 WL 122756, at *5 (D. Kan. 1992), *vacated in part*, 5 F.3d 1022 (7th Cir. 1993)) (emphasis added).  Rather, amendments to proofs of claim are "*liberally permitted* to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim."  *United States v. Kolstad (In re Kolstad)*, 928 F.2d 171, 175 (5th Cir. 1991) (quotation omitted) (emphasis added); *see also In re Stoecker*, 143 B.R. at 883 ("[T]he proper procedure for the bankruptcy court is not to disallow the claim if the claimant fails to strictly adhere to the rule [FED. BANKR. R. 3001]; it should merely . . . give the claimant an opportunity to amend or prove its claim.").

claimant to reasonable notice and a hearing on contested facts which, for personal injury or wrongful death tort claims, means *individual jury trials* under the Bankruptcy Code.

Debtors make no attempt to grapple with any of this black letter law in their back-door attempt to revolutionize the handling of asbestos personal injury claims in bankruptcy.  But it cannot be ignored.  *See Hubbard v. United States*, 514 U.S. 695, 711 (1995) ("Stare decisis is a basic self-governing principle within the Judicial Branch, which is entrusted with the sensitive and difficult task of fashioning and preserving a jurisprudential system that is not based upon an arbitrary discretion.") (quotations omitted); *cf. Capps v. Eggers*, 782 F.2d 1341, 1343 (5th Cir. 1986) (granting motion for sanctions where appeal was taken "in the face of clear, unambiguous, dispositive holdings by this and other appellate courts").  Indeed, as Debtors' silence on the applicable law indicates, the only lawful means of implementing Debtors' unprecedented "protocol" is by Act of Congress.

Notably, Debtors urge adoption of their scheme as "the *only* path for this case." (Proffered Reply at 5; emphasis added.)  But as far back as their Informational Brief Debtors observed that, as an alternative to "traditional litigation procedures," "criteria for the *settlement* of claims can be determined as part of litigation over a proposed plan of reorganization" under the Code.  (Info. Brief at 65; emphasis in original.)  They continued:  "That is to say, Grace could incorporate proposed criteria for the settlement of claims.  If claimants object to that feature of the plan, the District Court could resolve that objection and either approve or disapprove such provisions."  (*Id.*)  Now Debtors reject even the "traditional litigation procedures" set forth in the Code in favor of a unheard-of"protocol" that appeared nowhere in prior papers.  They should not be allowed to subtly shift their position on such crucial issues brief-by-brief.

1.      **Proofs of Claim Are *Prima Facie* Evidence of Valid Claims, Which Must Be Allowed Unless Debtors Object With Specific Rebuttal Evidence.**

The numerous legal flaws in Debtors' protocol are revealed, ***first***, with the fundamental principle that proofs of claim filed in accordance with the Bankruptcy Rules, *see* FED. BANKR. R. 3001,[3] are *prima facie* evidence of the validity and amount of the claims, which *must be allowed* unless Debtors file an objection under FED. BANKR. R. 3007 that meets their burden of producing enough contrary *evidence* to overcome the *prima facie* effect of the claim, *see* 11 U.S.C. § 502(a); FED. BANKR. R. 3001(f); *Gardner v. State of New Jersey*, 329 U.S. 565, 573 (1947); *In re Allegheny Int'l. Inc.*, 954 F.2d 167, 173 (3d Cir. 1992); *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 50 (Bankr. D. Del 2001). More particularly, the burden of going forward shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim, *see Allegheny*, 954 F. 2d at 173, that is, the objection must be supported by "substantial evidence," *Juniper Dev. Group v. Kahn (In re Hemingway Transport Inc.*), 993 F.2d 915, 925 (1st Cir. 1993). If Debtors fail to meet this burden, "the debt is considered allowed." *Internal Revenue Serv. v. Taylor (In re Taylor)*, 132 F.3d 256, 261 (5th Cir. 1998); *see also In re Pinnacle Brands*, 259 B.R. at 50. And even "if substantial evidence is introduced in opposition, [t]he sworn proof of claim does not disappear from the case; like a deposition of the claimant, it is still entitled to some weight as a sworn statement with respect to the matters asserted therein." *In re Sabre Shipping Corp.*, 299 F. Supp. 97, 99 (S.D.N.Y. 1969).

---

[3]      That Rule simply requires "a written statement setting forth a creditor's claim" that "conform[s] substantially to the appropriate Official Form." FED. BANKR. R. 3001(a). Although the Rule requires that proofs of claim "be executed by the creditor or the creditor's authorized agent" (with two exceptions), as explained above, amendments to cure such a defect are liberally permitted. *Id*. 3001(b).

a.      **Omnibus Lists of "Similarly Situated" Claims Are Not Sufficient To Initiate Contested Proceedings.**

Accordingly, a threshold question arises as to whether Debtors can rebut the *prima facie* evidence of the validity and amount of thousands of claims by "omnibus objections" to "similarly situated claims." (Proffered Reply at 55.) The answer is quite obviously no. The Supreme Court made clear nearly a century ago that parties cannot defeat proofs of claim -- or even require claimants to produce further evidence -- by mere formal objection. *Whitney v. Dresser*, 200 U.S. 532, 535 (1906). Following *Whitney*, courts have repeatedly overruled objections and allowed claims based on proofs of claim alone where debtors produced no specific evidence in rebuttal. *See, e.g., Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1040-41 (9th Cir. 2000) (affirming ruling that debtor "failed to bear his burden of coming forward with *facts* sufficient to rebut the allegations in the claims and truncating the burden-shifting analysis at that juncture") (emphasis added); *In re Dresser*, 135 F. 495, 498-99 (2d Cir. 1905) ("mere filing of an objection" without evidence found insufficient to rebut claim where, under alternative scenario, "[a]ny vindictive or contumacious creditor can, by filing objections, compel creditors to come from distant states and even from foreign countries to testify in support of their claims before a word of testimony impeaching their validity has been adduced"); *Matter of Walker*, 216 B.R. 275, 277 (D. Neb. 1997) (debtor's general allegations in objection to proof of claim were not supported by credible evidence); *In re Myrland*, 209 B.R. 524, 526 (W.D. Wash. 1997) (tax protestor's objection to IRS proof of claim overruled where no evidence supported legal principles argued); *Vomhof v. United States*, 207 B.R. 191, 192 (D. Minn. 1997) (objection overruled where debtors offered "legal exhortations" but not "'substantial evidence' sufficient to rebut the IRS claim"); *In re Equipment Servs., Ltd.*, 36 B.R. 241, 244-45 (Bankr. D.

Alaska 1983) (debtor failed to present sufficient evidence to meet its burden of overcoming presumption of validity of claim).

Here, Debtors intend to submit "factual and legal arguments" with respect to "exemplar objections" only (on grounds of "product information, dose, and compensable injury"). (Proffered Reply at 54.)  Debtors further propose that, after 30 days for "exemplar" claimants to file responses -- a period that does *not* afford discovery "[b]ecause the Proof of Claim form requires provision of most of the information needed" -- the Court would rule on the *merits* of these select claims.  (*Id.*)  This is wrong.  At the objection stage, the Court will have to decide whether Debtors' evidence meets *their* burden of rebutting the *prima facie* validity of the exemplar claims, thereby triggering contested proceedings on those particular claims.  If Debtors succeed, the "exemplar" claimants would then be entitled to full discovery and, where there are contested facts, jury trials on the validity of their claims.  *See infra* Part II.A.3 - II.A.4.

As for the thousands of "non-exemplar" claims, Debtors propose to file "omnibus," en masse objections -- leaving it to "similarly situated" claimants to "show cause" why their claims should not be disallowed.  (*See* Proffered Reply at 54.)  This, again, is all wrong.  An "omnibus" objection that consists of nothing but an assertion that the claim is similar to a disallowed exemplar claim is not evidence which can rebut the *prima facie* effect of the proofs of claim, let alone automatically impose on claimants the burden of showing cause why their claims should not be disallowed completely.  Claims intended for back-of-the-hand disposal by "omnibus objection" under Debtors' protocol must instead be *allowed* as a matter of law.

b.      **Debtors' Exemplar Objection Procedure Would Violate Collateral Estoppel Principles and Claimants' Due Process Rights.**

In addition, Debtors' exemplar objection procedure would violate the principles of collateral estoppel, which "apply in bankruptcy proceedings under the current Bankruptcy Code." *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). Collateral estoppel ensures that, before an individual can be bound by the results of a court's prior ruling or precluded from litigating an issue resolved in a prior proceeding, he must have been a party or in privity with a party to the earlier proceeding. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n.7 (1979). "It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." *Id.*; *see also Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1136 (5th Cir. 1992) ("the due process clause of the United States Constitution protects the right to a full and fair hearing on an issue, and therefore collateral estoppel cannot be applied against a party as to issues not fully and fairly litigated"); *Witkowski v. Welch*, 173 F.3d 192 (3d Cir. 1999) (there is no "full and fair hearing" where procedures fall below the minimum requirement for due process).

Here, Debtors propose to preclude claimants who lacked any real opportunity to participate in the exemplar claims litigation (because they would not even know that their claims were at stake) from litigating the merits of their settled claims if they fall within fact patterns similar to those of the exemplar claims. Apart from the impracticalities of expecting thousands of claimants to leap into the exemplar claims litigation if they hope to weigh in on what could be a decision on the merits of *their* claims, such a proposal violates claimants' due process rights and is directly contrary to the protections afforded litigants under established collateral estoppel doctrines.

> **c.   Debtors on Summary Judgment Bear the Initial Burden of Showing an Absence of Disputed Material Fact That They Cannot Shift to Claimants under the Guise of "Show Cause" Proceedings.**

Nor can the Debtors impermissibly shift the burden onto claimants to "show cause" why they should not be bound by a prior ruling granting summary judgment in Debtors' favor on a "similarly-situated" exemplar claim.  In order to obtain summary judgment on the validity of a given claim, the initial burden always remains on the moving party (in this case, Debtors) to show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. BANKR. P. 7056 (incorporating FED. R. CIV. P. 56(c)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jones v. United Parcel Service*, 214 F.3d 402, 405 (3d Cir. 2000).  Thus, even if the requisite discovery were properly afforded claimants, and assuming *arguendo* that omnibus summary judgment across thousands of claims were feasible (which, as explained below, it is not), Debtors cannot as a matter of law shift their initial burden onto claimants by requiring them to "show cause" why a prior summary judgment ruling is not binding on their claims.

> **2.   The Bankruptcy Rules Allow Claimants Full Discovery in Contested Proceedings on the Validity of Their Claims.**

***Second,*** Debtors' about-face on claimants' entitlement to discovery is insupportable.  In their opening papers, they freely admit that claimants are entitled to full discovery on the validity of their claims.  (*See* Debtors' Mem. at 49 (proposing "six-month period during which any discovery related to its submitted summary judgment motions could take place."))  Now, however, Debtors cavalierly suggest that they can get summary judgment based on the proof of claim forms alone.  (*See* Proffered Reply at 55.)  Bankruptcy law requires that Debtors be held to the position taken in their opening brief.

Under settled law, if Debtors' objection meets its burden of controverting the proof of claim, a "contested matter" governed by Bankruptcy Rule 9014 begins.  9 COLLIER ON BANKRUPTCY ¶ 3007.01[1] (15th ed. 2000); *Toma Steel Supply, Inc. v. GHR Energy Corp. (In re Transamerican Natural Gas Corp.)*, 978 F.2d 1409, 1416 (5th Cir. 1992).  Although the burden of proof shifts to the claimant at this point to prove the validity of the claim by a preponderance of the evidence, *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 174 (3d Cir. 1992), "a claim objection under Rule 3007 assumes a contest and the concomitant requirements of due process," 9 COLLIER ON BANKRUPTCY ¶ 3007.01[1].

Accordingly, Rule 9014 mandates that "reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought," and that numerous provisions of the Bankruptcy Rules of Civil Procedure "shall apply," including *full discovery* under Rule 7026 (the equivalent of FED. R. CIV. P. 26), and Rules 7028-7037 (the equivalent of FED. R. CIV. P. 28-37).  FED. BANKR. R. 9014.  Debtors, however, fail to cite the Rule.  A prominent treatise summarizes the rights provided claimants under Rule 9014:

> [T]he fundamental requisites of due process must be afforded to all parties in a dispute whether that dispute is classified as an adversary proceeding or a contested matter.  That is why Rule 9014 . . . incorporates the Part VII procedures on misjoinder, nonjoinder and substitution of parties, discovery, depositions, interrogatories, perpetuation of testimony, protection of documents, requests for admissions, sanctions for discovery abuses, dismissals, consolidation and separate trials, findings, judgments, default, summary judgment, seizure, execution, and process on behalf of non-parties for application in those contested matters governed by the Rule.

10 COLLIER ON BANKRUPTCY ¶ 9014.05 (footnote omitted).  Courts facing multiple tort claimants in Chapter 11 bankruptcies have thus not even blinked at the allowance of discovery for estimation and liquidation of such claims.  *See*, *e.g.*, *Ackles v. A.H. Robins Co., Inc. (In re A.H. Robins Co., Inc.)*, 59 B.R. 99, 106 (Bankr. E.D. Va. 1986).

Obviously, the state of the governing law is a far cry from Debtors' proposal that the thousands of claimants swept within omnibus objections be given 30 days to "file a response [that] show[s] cause why the Court's exemplar rulings do not govern their situation."  (Proffered Reply at 25.)[4]  How any claimant would have a fair chance of meeting Debtors' undefined "show cause" standard is unfathomable, particularly as their "protocol" makes *no provision* for discovery.  Debtors cannot just do away with Rule 9014 and the panoply of fact-finding tools it authorizes.

Moreover, it is preposterous to expect that claimants' attorneys can competently defend against Debtors' omnibus objections on less than 30 days' notice.  Particularly when Debtors' opening "brief" would consist of only a list of "similarly situated" claims, Debtors' plan would place lawyers in the impossible position of having to divine the grounds for Debtors' specific objection to their clients' claims as well as fashioning effective responses in under a month.  In addition to ensuring claimants a hearing on their claims, due process principles, of course, require much more by way of notice.  *See City of New York v. New York, N.H. & H.R. Co.*, 344 U.S 293, 297 (1953) ("'[e]ven creditors who have knowledge of a reorganization have a right to assume that the statutory "reasonable notice" will be given them before their claims are forever barred'").

---

[4]     Debtors' attempt to bootstrap the filing of "omnibus" objections to settled proofs of claims in the *Babcock & Wilcox* ("B&W") bankruptcy fails for two reasons.  (*See* Proffered Reply at 55.)  Because the B&W procedure was intended to resolve whether the parties had *settled* certain claims, many of the issues for omnibus resolution are relatively ministerial in nature and do not call for the adjudication of claimants' substantive rights under State tort law.  Moreover, in B&W, if the court rules that a given claim was not settled before B&W filed for bankruptcy, the claimant has the right to re-file his claim as an "unsettled" claim within 45 days.  In any event, overall, Debtors' citation of the B&W case as "precedent" is improper.  (Proffered Reply at 60.)  In particular, the fact that Debtors' counsel has made similar proposals for dealing with unsettled claims on B&W's behalf is hardly an endorsement of their protocol here.  The B&W court has not yet ruled on the subject.

### 3. The Bankruptcy Code Expressly Affords Personal Injury Claimants the Right to Jury Trials on Their Claims.

*Third,* the Bankruptcy Code unmistakably preserves for personal injury and wrongful death claimants the trials by jury they would otherwise enjoy under State law.  28 U.S.C. § 1411(a) ("title 11 do[es] not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim"); *Granfinanciera v. Nordberg*, 492 U.S. 33, 42 n.3 (1989) (discussing § 1411); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1012 (4th Cir. 1986) (observing that tort claimants in bankruptcy are "entitled to their jury trials"); *see also* 28 U.S.C. § 157(b)(5) (providing that "[t]he district court shall order that personal injury and wrongful death claims shall be tried in the district court in which the bankruptcy is pending, or in the district court in the district in which the claim arose"); *In re UNR Indus., Inc.*, 45 B.R. 322, 325 (N.D. Ill. 1984) (observing that "§ 157(b)(5) and § 1411(a) were enacted as parts of a single scheme to protect the right to jury trial"). Personal injury claimants are entitled to jury trials in State court under the Seventh Amendment to the United States Constitution, and the Code goes so far as to expressly enshrine that right in bankruptcy.

Ironically, Debtors argue that, in bankruptcy, "[l]iability must be proven the old-fashioned way:  by evidence on each element of a cause of action."  (Proffered Reply at 17.)  The Committee wholeheartedly agrees.  But a determination of liability under the Code does not mean a newfangled exemplar/omnibus objection/summary judgment/show cause procedure which pretends that the Bankruptcy Code and the Constitution do not exist.  Debtors do not even mention § 1411, let alone attempt to distinguish it.

Indeed, Debtors' "protocol" violates the most fundamental tenets of due process by failing to provide for *any* sort of hearing on the thousands of claims that Debtors intend to get rid of by

omnibus objection.  (*See* Proffered Reply at 55.)  The Code and Rules, by contrast, provide for a hearing in *four* separate places.  Rule 9014 mandates that "opportunity for hearing shall be afforded the party against whom relief is sought" in contested matters; 11 U.S.C. § 502(b) provides for "notice and a hearing" on objections to proofs of claim; section 1411 directs that such hearings take the form of jury trials; and 28 U.S.C. § 157(b)(5) states that such trial shall take place in specified district courts.  *Cf. In re UNR Indus., Inc.*, 45 B.R. at 325 (rejecting argument in bankruptcy case involving 17,000 asbestos claims that district courts can conduct "'summary hearing'" in lieu of full-blown trial, as debtor "points to no statute or rule that either authorizes this departure from normal practice or explains what procedures constitute a 'summary hearing'").

Page after page of the Proffered Reply is devoted to bemoaning "the irrationality of the privatized claims process" which purportedly "left Grace with no choice but to . . . file bankruptcy."  (Proffered Reply at 7.)  But all the complaining in the world about the State tort system cannot repeal the Seventh Amendment or an Act of Congress.  *See generally Hubbard v. United States*, 514 U.S. 695, 711-12 (1995) ("Respect for precedent is strongest in the area of statutory construction, where Congress is free to change this Court's interpretation of its

legislation.") (quotation omitted).  Claimants get their jury trials under Seventh Amendment *and*

under the Code.[5]

> **B.      Debtors' Argument That Estimation Will Impede This Case Was Not Advanced Before, and Contradicts the Position Taken in Their "Informational Brief."**

Debtors throw one more curve ball in their Proffered Reply:  they attempt to write

estimation out of the Bankruptcy Code.  In their Informational Brief, Debtors argued that

"estimation for purposes of determining the feasibility of a proposed plan . . . may be necessary;"

cited case law indicating that estimation "'is essential prior to the hearing on confirmation of a

plan, in order for the court to evaluate the feasibility of the plan without delaying the

confirmation process;'" and touted an estimation's ability to "set[] a fixed outer limit on the

amount to be provided for contingent tort claims."  (Info. Brief at 66 (*quoting In re MacDonald*,

---

[5]      Debtors briefly abandon their exemplar ruling/show cause procedure in favor of consolidated trials under Rule 42 of the Federal Rules of Civil Procedure in their attempt to distinguish *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297 (5th Cir. 1998).  *See infra* Part II.C.2. Consolidated trials, however, are not the vehicle for omnibus resolution of thousands of claims that Debtors would suggest.  Consolidation "does not merge suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another."  *Johnson v Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933); *see also Cella v. Togum Constructeur Ensembleier en Industrie Aliemtaire*, 173 F.3d 909, 912-13 (3d Cir. 1999).  Unlike class actions, in a consolidation, "subordinate parties are free to supplement a lead party's presentation on common issues and to address any unique issues their cases may raise."  Charles Silver, *Comparing Class Actions and Consolidations,* 10 REV. LITIG. 495, 499 (1991).  As a result, "there are certain things judges cannot properly do in consolidations without parties' consent." *Id.* at 516.  For example, judges cannot prevent parties from addressing individual issues their cases raise, and they cannot apply aspects of judgments in test cases to other cases.  *See id.*  In other words, consolidating the asbestos claims in this case would do nothing more than result in a single trial in which every plaintiff's attorney would be free to supplement the presentation on any issue, and to address any unique issue relating to his or her client's case.  And claimants -- Debtors' claims to the contrary notwithstanding -- are entitled to their own counsel.  *See A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d at 1015 ("[I]t seems clear under the Rules that the Committee is not authorized to represent the individual interests of any claimant, as distinguished from the general interests of all claimants.") (citing *In re Johns-Manville*, 26 B.R. 919, 926 (S.D.N.Y. 1983)).  Clearly, consolidation would not serve to "avoid[] unnecessary costs or delay" as Rule 42 contemplates.

128 B.R. 161, 164 (Bankr. W.D. Tex. 1991)).  Now, in their Proffered Reply, Debtors abandon

those settled principles and argue against an estimation.  Over and over they construct a

strawman around "the central issue [of] whether the Debtors have actual legal liability under the

federal rules and substantive law."  (Proffered Reply at 17.)  They argue that, because they are

"contesting liability," this Court somehow *cannot* proceed with estimation at this juncture.  As is

evident by the three-page discussion of the basic law on estimation contained in Debtors'

"Informational Brief," however, estimation of unliquidated, contingent claims is not the pariah

that Debtors now depict.  (*See* Info. Brief at 65-68.)

> 1.      **The Notion That Debtors Can Contest Liability Is a Complete Strawman -- If Liability Is Contested, It Must Be Done Pursuant to the Statutory Provisions for Discovery and Jury Trials.**

To begin with, as *Debtors themselves* admit in their Informational Brief, the Code

mandates that "[t]here *shall* be estimated for purpose of allowance under this section any

contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would

unduly delay the administration of this case."  11 U.S.C. § 502(c)(1) (emphasis added); (Info.

Brief at 66.)  The statute does *not* mandate "the fixing or liquidation" of claims that would

otherwise be estimated in the event that Debtors "contest liability."  The very opposite, of course,

is true.  If liquidation of claims under the Code would "unduly delay the case," the claims *must*

*be estimated.*

Moreover, Debtors' suggestion that estimation should be denied "because liability is disputed" is nonsensical.  (Proffered Reply at 21.)[6]  In Debtors' own words, their "basic right to seek disallowance of claims" hinges on "the Code's adoption of ordinary litigation procedures for that process."  (*Id.* at 18.)  There is no authority for the proposition that "contesting liability" should take the form of exemplar/omnibus objection/summary judgment/show cause procedures. If Debtors wish to contest liability, the Code and Rules *already provide the mechanism for doing so:* they can object with evidence, engage in full discovery under Bankruptcy Rule 9014, and put claimants' evidence to the test before juries.  Aside from lobbying Congress, Debtors have no choice but to deal with the Code as it exists, including its four distinct provisions directing that liability for personal injury claims be determined by jury trials.

### 2.    Debtors Misapply FED. R. EVID. 408.

Debtors also argue that Federal Rule of Evidence 408 precludes estimation based on past settlement values.  (Proffered Reply at 17.)  Debtors completely misread the Rule.  Rule 408 renders inadmissible at trial evidence of offers to settle "a claim which was disputed as to validity or amount" and evidence of the acceptance of offers to settle that claim, where such evidence is proffered "to prove liability for or invalidity of *the claim or its amount*."  FED. R. EVID. 408 (emphasis added).  In other words, Rule 408 only applies to the use of evidence of compromise "to prove the validity or invalidity of the claim that was the subject of the compromise."  23 WRIGHT AND GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5306 (1980).

---

[6]    Debtors' assertion that the judge in *In re Dow Corning Corp.,* 211 B.R. 545 (Bankr. E. D. Mich. 1997), denied both sides' estimation motions "because liability was disputed" is grossly misleading.  (*See* Proffered Reply at 21.)  The court only mentioned that "liability has been disputed" in the background section of the opinion; the debtors' strategy had no substantive bearing on the court's holding.  211 B.R. at 554.

If, on the other hand, "the settlement negotiations and terms explain and are part of another dispute, they must often be admitted if the trier of fact is to understand the case." 2 WEINSTEIN, FEDERAL EVIDENCE § 408.08[5] (2d ed. 1997).  In this insolvency proceeding, information about the number of past tort claims and the cost of past tort settlements is essential to estimating those numbers and costs in the future, and that evidence is unquestionably admissible under Rule 408.  *See Broadmount Capital Corp. v. Summa Med. Corp.*, 972 F.2d 1183, 1194 (10th Cir. 1992) (evidence from prior settlement discussions admissible because "related to an entirely different claim" from the claim that was the subject of the negotiations).[7]

There is another fatal flaw in Debtors' argument:  it proves too much.  Even Debtors still admit that the Court has the authority to estimate these claims -- though they argue that it can happen only after the claims are fully liquidated.  (*See* Proffered Reply at 18.)  Obviously, with respect to *present* claims, this argument makes no sense as, once the claims are liquidated, there will be nothing left to estimate.  To the extent that Debtors assign a more limited role for § 502(c)(1) -- estimation of *future* claims -- it bears emphasis that Debtors affirmatively "do *not* seek a Bar Date [or] proof of claim form [for] future claims."  (Bar Date Motion at 3.)  And they make no attempt to distinguish the two for purposes of justifying their competing views.

Presumably, Debtors would not dispute that an estimation of liability -- whether for present or future claims -- must be extrapolated from something.  Indeed, in their Informational Brief, Debtors expressly suggested that the Court assign values to categories of claims and project future claims from that valuation.  (Info. Brief at 68.)  A plaintiff in a tort case against a

---

[7]    Debtors' citation of *Belton v. Fibreboard Corp.*, 724 F.2d 500, 505 (5th Cir. 1984), in this connection is genuinely puzzling, since the case, far from excluding evidence of settlements by co-defendants, approved its admission "for the purpose of explaining why those defendants were not in court."  (*See* Proffered Reply at 18 n.12.)

particular defendant, however, can no more establish liability in the case on trial by evidence of earlier *verdicts* won by other plaintiffs against that defendant than the plaintiff could use evidence of attempts to settle the case being tried. *See* FED. R. EVID. 404(b). Acceptance of Debtors' position would thus render estimation impossible as a matter of law.

The Court, charged with the task of estimating Grace's future tort liabilities can -- entirely consistently with Rule 408 -- look at both settlements by Grace and verdicts against Grace and other asbestos defendants as part of the basis for its determination. Considering those settlements and verdicts is essential "to understand the case." WEINSTEIN § 408.08[5]. For this reason, looking to prior settlements is an accepted method for doing estimations in bankruptcy cases. *See, e.g., In re Eagle-Picher Indus., Inc.*, 189 B.R. 681, 691 (Bankr. S.D. Ohio 1995) (performing estimation of asbestos claims based on settlement values for claims close to the bankruptcy petition date).

### 3.    Debtors' "Cramdown" Argument Would Render § 502(c)(1) Superfluous.

Similarly, Debtors' suggestion that estimation conflicts with 11 U.S.C. § 1129(b) widely misses the mark. Debtors essentially argue that the Court cannot perform an estimation because, in order to do so, a "cramdown" would be required. And according to Debtors, the requirement that a cramdown be "fair and equitable" is *per se* violated if the Court runs the risk of overcompensating the asbestos claimants by doing an estimation before it has ascertained Debtors' actual liability toward them.

Under Debtors' logic, estimation would run up against § 1129 in every bankruptcy, whether "liability was contested" or not. Yet Debtors fail to cite a single case in which the

argument was even raised.[8]  This is unsurprising.  Because it is a prediction of the value of a

claim, an estimation, by definition, always runs the risk of overestimating (or underestimating)

the "actual" value of unliquidated claims.  No reasonable interpretation of the Bankruptcy Code

would hold that because of this risk, estimation "discriminate[s] unfairly" and can never be "fair

and equitable" to the debtor.  11 U.S.C. § 1129(b)(1).  Such an interpretation would effectively

render the Code's estimation provisions for unliquidated claims superfluous.  It is a well-settled

principle of statutory construction that sections of a statute should be read to give effect to every

clause.  *See Heckler v. Chaney*, 470 U.S. 821, 829 (1985).

> **C.**    **Debtors' Discussion of "the Basic Legal Requirements" of Personal Injury Claims Has No Business Appearing for the First Time in Their Proffered Reply and, in Any Event, Is Rife With Error.**

After hinting of the grounds they envision for omnibus summary judgment in a few

sparse pages of their opening papers, (*see* Debtors' Mem. at 15-18), Debtors finally come out

with the details of the "basic legal requirements" that they claim are missing across thousands of

claims, (Proffered Reply at 39-61.)  The notion that no genuine issues of material fact could

conceivably exist with respect to Debtors' "threshold" issues arising in *thousands* of different

claims based on *thousands* of different exposures at *thousands* of different job sites is patent

nonsense.

---

[8]     Debtors rely heavily on *In re Dow Corning,* 211 B.R. 545 (Bankr. E.D. Mich. 1997), to support their arguments against an estimation.  (*See* Proffered Reply at 23-24.)  Notably, however, the *Dow Corning* debtors (who were represented by the same law firm representing Debtors in this case) did not oppose an estimation.  They sought one, unsuccessfully.  *See In re Dow Corning,* 211 B.R. at 554, 563.

1.      **Product Identification Requires Claim-by-Claim Discovery
and, Where Facts Are Disputed, Trial.**

Debtors first argue that their one-sided "sampling of 1997 and 2000 claims shows that
few claimants worked in industries and occupations in which they could even have been exposed
to Grace asbestos products," and that omnibus summary judgment on such claims is therefore
warranted.  (Proffered Reply at 39.)  The very idea, however, that Debtors can obtain summary
judgment on the grounds that claimants who worked in particular occupations could not as a
matter of law have been exposed to asbestos is simply absurd.  It also ignores State law reflecting
liberal standards for getting to a jury on this issue.  In any event, at a minimum, there can be little
question that a substantial amount of claimant-by-claimant discovery must inform this issue
before it is ripe for summary judgment and, inevitably, decided by juries.

Product identification is largely a question of fact.  *Weitzman v. Eagle-Picher Indus. (In
re New York City Asbestos Litig.)*, 542 N.Y.S.2d 118, 122 (N.Y. Sup. Ct. 1989); *see also Spaur
v. Owens-Corning Fiberglas Corp.*, 510 N.W.2d 854, 859 (Iowa 1994) ("Whether evidence of
exposure to a particular defendant's product will be legally sufficient to permit a finding of
substantial factor causation is fact-specific to each case.").  Therefore, a claimant seeking
recovery from an asbestos manufacturer need not present direct evidence of product
identification; circumstantial evidence from which a reasonable jury could infer exposure and
causation is sufficient to survive summary judgment.  *Richoux v. Armstrong Cork Corp.*, 777
F.2d 296, 297 (5th Cir. 1985).

More specifically, to identify material to which they were exposed, plaintiffs need only
present some evidence that a defendant's products were present at the worksite, *Kaiu v. Raymark
Indus., Inc. (In re Hawaii Fed. Asbestos Cases)*, 960 F.2d 806, 817 (9th Cir. 1992), and in this
regard, testimony of co-workers is sufficient, *see Lockwood v. AC&S, Inc.*, 744 P.2d 605, 612

(Wash. 1987). *See also Roehling v. National Gypsum Co. Gold Bond Bldg. Prods.*, 786 F.2d 1225, 1229 (4th Cir. 1986) (finding that circumstantial evidence that plaintiff "was in the same vicinity as witnesses who can identify the products causing the asbestos dust that all people in that area . . . inhaled" was enough to allow a jury to infer liability). Indeed, in a seminal decision, the Fifth Circuit imposed liability even when it was "*impossible,* as a practical matter, to determine with absolute certainty which particular exposure to asbestos resulted in injury . . . ." *Borel v. Fiberboard Paper Prods. Corp.*, 493 F.2d 1076, 1094 (5th Cir. 1973) (emphasis added). Other Circuits have similarly held that mere exposure to unknown quantities of asbestos dust is sufficient to raise a supportable inference of causation. *See Miller v. American President Lines, Ltd.,* 989 F.2d 1450, 1464-65 (6th Cir. 1993); *Roehling,* 786 F.2d at 1228. *Cf. ACandS, Inc. v. Aetna Casualty and Surety Co.,* 764 F.2d 968, 974 (3d Cir. 1985) (noting that "under principles of tort law, [a defendant] can be held fully liable for a personal injury plaintiff's damages caused in part by [the defendant's] asbestos during a particular period, even though plaintiff's damages may also have been caused, in part, at other times.").

Accordingly, it is clear that, at least in some states, product identification can be shown through circumstantial evidence -- even if that evidence *does not definitively link asbestos-related injury to Grace products.* In any event, individualized discovery on this claim-specific issue is plainly necessary. Debtors' answer to this inevitability is to resort to pointless allegations of "witness coaching" and "shifting testimony." (Proffered Reply at 40.) The fact remains, however, that such testimony *is* evidence and juries decide whom to believe when questions of fact exist.

Debtors' approach of seeking to obtain summary judgment on product identification without affording a claimant discovery on the point is particularly unfair and flies in the face of

Bankruptcy Rules designed to protect a claimant's due process rights.  Under Debtors' approach,

the claimant's proof of claim form would amount to his proof at trial and the claimant's failure to

remember a Grace product at his work site would spell doom for his claim.  In the tort system, as

noted above, a plaintiff could prove product identification through many sources other than his

own memory, such as through the defendant's sales records or the testimony of co-workers.

Bankruptcy Rules 9014 and 7026, 7028-37 are designed to allow a claimant the same

opportunity for discovery as he would have in an ordinary federal case.  Debtors cannot simply

ignore these rules and obtain summary judgment based on the claim form standing alone.

### 2.    Omnibus Resolution of Proximate Cause Is a Legal and Practical Impossibility.

Debtors next argue that the "sample claims noted above" demonstrate a "lack of evidence

of dose and exposure sufficient to cause harm."  (Proffered Reply at 41.)  This omnibus summary

judgment category, once again, goes nowhere.

To begin with, Debtors' attempt to meaningfully distinguish *Cimino v. Raymark Indus.,

Inc.*, 151 F.3d 297 (5th Cir. 1998), readily fails.  (*See* Proffered Reply at 58-59).  In that case, the

Fifth Circuit held that "under [State] substantive law causation of plaintiffs injury by defendant's

product and plaintiff's resultant damages must be determined *as to 'individuals, not groups,'*" and

that "we are aware of no appellate decision approving such a group, rather than individual,

determination of cause in a damage suit for personal injuries to individuals at widely different

times and places."  *Id.* at 313, 316 (quoting *In re Fibreboard,* 893 F.2d 706, 712 (5th Cir. 1990)

(emphasis added)).  Debtors' response is to suggest that *Cimino* stands "only for the proposition

that . . . *individual* causation is an essential element of liability and cannot be proven *by the

plaintiff* through *extrapolation."* (Proffered Reply at 58; emphasis in original.)  This is a

distinction without a difference.  If causation cannot be proven by a plaintiff through

extrapolation, it cannot be disproven as a matter of law by a debtor-defendant through

extrapolation.  And to bluntly assert that "Grace has proposed no such sampling and

'extrapolation'" is to word-smith in the worst way.  (*Id.* at 59.)  Debtors' proposal of forcing

unsuspecting claimants to "show cause" why "exemplar" rulings do not govern their situation is

precisely the kind of extrapolation that *Cimino* forbids under the Seventh Amendment -- or even

worse, as it does not even afford claimants routine discovery, let alone respect their "absolute

right to have their claims liquidated by a jury trial."  *In re Dow Corning Corp.,* 211 B.R. 545,

556 (E.D. Mich. 1997) (citing 28 U.S.C. § 1411).[9]

> **3.     Debtors' Suggestion That Pleural Plaques, Pleural Thickening, and Asymptomatic Asbestosis Are Not Compensable in the Tort System Is Wrong.**

Debtors also plan to seek omnibus summary judgment on the grounds that "pleural

plaques, asymptomatic asbestosis or any other subclinical condition are not compensable" as a

matter of State law, going into detailed argument that should have appeared in their opening

brief.  (Proffered Reply at 48.)  Specifically, Debtors assert that "the majority of courts that have

considered this issue have found that pleural plaques and asymptomatic pleural thickening do not

cause injury, harm or detriment," yet they cite cases from only six -- out of fifty -- States.  (*See*

*id.* at 46.)  This fact alone is telling.

---

[9]     The Committee wishes to note that Debtors' use of *Dow Corning* to justify their exemplar ruling/show cause proposal in light of *Cimino* is misplaced.  There, the court ordered a *general* causation *trial* on the question of whether the debtor's silicone gel caused disease.  *See* 211 B.R. at 589-91.  There is no similar general causation question looming here:  even Debtors cannot dispute that asbestos causes disease.  Indeed, the only known cause of asbestosis and mesothelioma is exposure to asbestos.  As for the specific causation question of whether "the claimant himself was in fact exposed," that determination cannot be made on a global basis, as *Cimino* held.  (Proffered Reply at 42.)

Putting aside for the moment the question of whether the various medical sources cited by Debtors can be deemed authoritative -- a determination that can be made only after extensive expert discovery -- Debtors fail to acknowledge that the majority of courts have *not* considered this issue, while many of those that have addressed it have determined that such claims are actionable.  *See, e.g., Verbryke v. Owens-Corning Fiberglas Corp.,* 84 Ohio App.3d 388, 395, 616 N.E.2d 1162, 1167 (Ct. App. 1992) (rejecting reading of Restatement of Torts that would hold physical changes or alterations such a pleural plaques insufficient to constitute a legally compensable claim); *Mauro v. Owens-Corning Fiberglas Corp.,* 542 A.2d 16, 24 (N.J. Super. App. 1988) (holding that plaintiff suffering from pleural thickening as result of long-term exposure to defendants' asbestos was entitled to present emotional distress claim to jury), *aff'd,* 561 A.2d 257 (1989).

Moreover, in a number of such jurisdictions, the issue of *whether a compensable claim has been stated* may be left to a jury.  *See, e.g., Bowerman v. United Illuminating,* 1998 WL 910271, at *5 (Conn. Super. Ct. 1998) (jury must decide whether lung scarring and implantation of asbestos fibers in lungs is compensable); *Bryson v. Pillsbury Co.,* 573 N.W.2d 718, 721 (Minn. Ct. App. 1998) (trier of fact should determine whether asymptomatic chromosome damage is compensable).  It would thus be beyond the powers of a bankruptcy court to decide as a matter of law whether a claim brought in such jurisdictions is even actionable.  *See* 28 U.S.C. § 1411.  In order for the Court to resolve claims brought in those jurisdictions that permit a jury

trial on this issue, hundreds if not thousands of jury trials would be required.[10]  *See Bowerman,*
1998 WL 910271 at *5.

Moreover, the "exposure only" cases cited by Debtor, including *Metro-North Commuter*
*R.R. Co. v. Buckley,* 521 U.S. 424, 432 (1997), can easily be distinguished from those in which
plaintiffs have incurred pleural plaques or thickening or been determined after an x-ray
examination to have contracted asbestosis.  (*See* Proffered Reply at 47.)  In the "exposure only"
actions, the plaintiffs did not allege that they had contracted an asbestos-related illness, but only
that they had been exposed to the defendants' asbestos.  *See Metro-North Commuter R.R. Co.,*
521 U.S. at 432.  Plaintiffs alleging pleural disease and asymptomatic asbestosis, on the other
hand, are routinely awarded judgments.

Finally, this discussion leaves aside entirely the fact that in some states exposure to
asbestos standing alone is sufficient to state a claim for compensable injury and consequent
damages for fear of cancer and the like.  In Louisiana, for example, "inhaling one fiber of
asbestos is an actionable harm or injury" which supports a damage award for fear of cancer and
increased risk of developing an asbestos-related disease.  *Bonnette v. Conoco, Inc.,* No. 01-0297,
2001 WL 1047546, at *3 (La. Ct. App. Sept. 12, 2001).  Thus, for claims governed by Louisiana

---

[10]      Debtors cite *In re Asbestos Litig.,* No. 87-09-24, 1994 WL 721763 at *3 (Del. Super.
June 14, 1994), for the principle that a change in the lining of the lung does not constitute an
impairment, claiming that this decision was reversed "on other grounds."  (Proffered Reply at
46.)  Debtors fail to mention that the decision was reversed on the ground that the trial record
supporting appellants' claim of pleural thickening was sufficient to create a triable issue of fact as
to whether such pleural thickening had caused the plaintiff's shortness of breath.  *Mancari v.*
*A.C.&S., Inc.,* 670 A.2d 1339, 1339 (Sup. Ct. Del. 1995).  On appeal, the Delaware Supreme
Court stated that if the appellants had prevailed on this issue, they would "have established the
present physical injury required to support their fear of cancer claims."  670 A.2d at 1339.  In
other words, even a minor change in the lung lining, when accompanied by subjective symptoms
of lung distress, was actionable.  *Id.*  Moreover, the determination of whether the plaintiffs
symptoms had been caused by asbestos-related injury was left to a jury.  *Id.*

law, anyone who ever breathed one fiber of asbestos from a Grace asbestos-containing product has a current claim against Debtors for increased risk of developing an asbestos-related disease or for fear of cancer, even if the plaintiff was exposed to very small amounts of asbestos and the possibility of acquiring the disease is remote.

> **4.    Debtors Seriously Misapply *Daubert* In Seeking to Exclude Testimony on the Basis of Experts' Conclusions.**

On the issues of proximate cause and legally cognizable injury, Debtors go on to propose for the first time that the Court engage in *Daubert* proceedings to tee up summary judgment motions on (1) "all claims where the occupational activity that involved exposure to Grace products has not been proven (through evidence meeting *Daubert* standards) sufficient to cause the claimed disease," (Proffered Reply at 42); (2) all claims for which a chest radiograph does not demonstrate an ILO score of 1/1 or higher, (*id.* at 51); and (3) all claims for which pulmonary function tests (PFTs) were not "properly conducted," (*id.* at 53-54). Debtors' proposed use of *Daubert* is both legally erroneous and totally impractical.

First the basics. *Daubert* provides that an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is *relevant* and *reliable.  Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993); *see also Kumho Tire Co., LTD. v. Carmichael,* 526 U.S. 137, 141, 147 (1999); *In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717, 742 (3d Cir. 1994) ("*Paoli II*"); *U.S. v. Downing,* 753 F.2d 1224, 1237 (3d Cir. 1985). Under *Daubert's* reliability prong, expert opinion need only be based on "good grounds." *Daubert,* 509 U.S. at 590; *see also Paoli II,* 35 F.3d at 744 ("The grounds for an expert's opinion merely have to be good, they do not have to be perfect. The judge might think that there are good grounds for an expert's conclusion even if the judge thinks that there are better grounds for some alternative conclusion . . . ."). This means that the opinion is based on the methods and

procedures of science.  *See Daubert,* 509 U.S. at 590; *Paoli II,* 35 F.3d at 744.  The reliability

inquiry is a flexible one, designed merely to serve as a threshold query for admissible evidence.

*See Daubert,* 509 U.S. at 594; *see also Paoli II,* 35 F.3d at 744 ("The reliability requirement

must not be used as a tool by which the court excludes all questionably reliable evidence.")  And

the court "must err on the side of admission rather than exclusion."  *Paoli R.R. Yard PCB*

*Litigation v. Monsanto Co.* ("*Paoli I"),* 916 F.2d 829, 857 (3d Cir. 1990); *see also DeLuca v.*

*Merrell Dow Pharmaceuticals, Inc.,* 911 F.2d 941, 956 (3d Cir. 1990) (stating that the Federal

Rules of Evidence "embody a strong and undeniable preference for admitting any evidence

having some potential for assisting the trier of fact and for dealing with the risk of error through

the adversary process").

Debtors essentially argue that *Daubert* hearings can result in the permanent disallowance

of thousands of claims on the merits.  More particularly, they appear to assert that the Court

should conduct *Daubert* proceedings to determine the admissibility of claimants' expert

testimony on the subjects of causation and injury.  While it is unclear whether Debtors'

"protocol" would allow claimants their individual experts (versus envisioning some abstract joint

expert), Debtors' position seems to be that this Court could exclude as a matter of law all

testimony that a plaintiff suffered an asbestos-related injury by exposure to asbestos that was

below some sort of "established level" or "requisite dose" for purposes of causing disease in

humans.  (*See* Proffered Reply at 42.)  Specifically, they assert that *Daubert* prohibits the

admission of testimony that relies upon ILO scores below a minimum reading of 1/1 that is

reproduced multiple times, or testimony that credits PFT tests that were not "conducted

properly."  (*See* Proffered Reply at 51, 54.)

As an initial matter, Debtors' representation that *Daubert* requires that "[t]he methodology . . . must be reproducible" is a fantasy. (*Id.* at 49.) *Daubert* requires relevance and reliability -- not that an expert's methodology be perfectly reproducible.

Critically, *Daubert* also specifically prohibits what Debtors are trying to do here: exclude experts on the basis of their conclusions versus their methodologies. *Daubert,* 509 U.S. at 590 ("The focus, of course, must be *solely* on principles and methodology, not on the conclusions that they generate.") (emphasis added); *Paoli II,* 35 F.3d at 746 n. 15 ("The methodology/conclusion distinction remains of some import . . . to the extent that there will be cases in which a party argues that an expert's testimony is unreliable because the conclusions of an expert's study are different from those of other experts. In such cases, there is no basis for holding the expert's testimony inadmissible."); Kenneth J. Chesebro, *Taking Daubert's "Focus" Seriously: The Methodology/Conclusion Distinction*, 15 CARDOZO L. REV. 1747, 1748 (1994) ("[I]t is completely inappropriate for either the proponent of scientific testimony or her opponent to advance Rule 702 admissibility arguments that depend on the ultimate conclusion reached by an expert."). Hence, Debtors cannot use *Daubert* to disqualify experts who draw conclusions based on ILO and PFT readings that Debtors do not like.

On the question of injury, Debtors also misconstrue the techniques used to diagnose asbestos-related disease by advocating that individuals with ILO scores of 1/0 have no claim. (Proffered Reply at 51-52.) Chest x-rays are not outcome-determinative of asbestos-related injury. Rather, as the court explained in *Raymark Indus., Inc. v. Stemple,* 1990 WL 72588 (D. Kan. May 30, 1990), chest x-rays have "recognized value" in making a diagnosis of asbestos-related illnesses, but are *not necessary* for making such a determination. *Raymark,* 1990 WL 72588 at *7 (citing American Thoracic Society (ATS), *The Diagnosis of Nonmalignant Diseases*

*Related to Asbestos,* 134 AM. REV. RESP. DIS., 363, 367 (1986)).  The *necessary* criteria for the

clinical diagnosis of disease related to asbestos without a direct examination of the lung tissue,

rather, are (i) a reliable history of exposure; and (ii) an appropriate time interval between

exposure and detection.  *Id.*

Moreover, while Debtors classify ILO readings of 1/0 as representing only "suspect"

disease, (Proffered Reply at 51-52), as the First Circuit explained in *Eagle-Picher v. Liberty*

*Mutual,* 829 F.2d 227, 236 n.14 (1st Cir. 1987), an ILO reading of 1/0 "means that the reader

considers the x-ray to be slightly abnormal," and only suggests that "it *may* warrant consideration

as possibly normal." (emphasis in original).  Such evidence therefore regularly goes to juries.  In

addition, the ILO scale itself is merely a shorthand method for describing what a doctor sees on a

chest x-ray; it never is the sole basis of a diagnosis of asbestos.

Finally, as even Debtors admit, (*see* Proffered Reply at 52 n.37), renowned experts in

asbestos-related disease have used readings of 1/0 as diagnostic of asbestosis for purposes of

their studies.  *See* H. Weill, *Diagnosis of Asbestos-Related Disease,* 91 CHEST 802, 803 (1987).

Expert testimony that examines the significance of ILO scores and other methods of diagnosing

asbestos-related illnesses is thus exactly the type of admissible evidence that *Daubert* suggests

safeguarding with conventional devices -- such as vigorous cross-examination, presentation of

contrary evidence, and careful instruction on the burden of proof.  *See Daubert* 509 U.S. at 596.

As for Debtors' proposal that *Daubert* be used specifically to disallow claims on lack-of-

causation grounds, it is important to note that courts have permitted expert testimony in toxic/tort

chemical exposure cases -- even where the expert did not know the plaintiff's level of exposure.

*See Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802, 808-09 (3d Cir. 1997); *Louderback v.*

*Orkin Exterminating Co., Inc.,* 26 F. Supp. 2d 1298, 1306 (D. Kan. 1998).  Thus, in *Louderback,*

the court noted that the failure to consider a plaintiff's level of exposure does not necessarily make an expert's testimony unreliable, particularly where scientific evidence of the toxic effects of the harmful chemical is recognized by the scientific community in peer-reviewed and published articles. *Id.* Here, by comparison, the Court could take judicial notice of the toxic effects of asbestos.

Lastly, the impracticalities of Debtors' *Daubert* proposal are fatal. Debtors suggest that the Court appoint a Rule 706 expert panel to "ensur[e] the accuracy of ILO readings of asbestos personal injury claimants" and "review existing tests to determine whether they were conducted properly." (Proffered Reply at 52, 54.) In other words, Debtors would have the Court empanel a team of experts to sit and review tens of thousands of individual ILO and PFT readings in the name of simplifying these proceedings and applying *Daubert.* Rule 706, however, is not a means of deputizing a court-selected panel of experts to replace the trier of fact (here, the jury) in deciding which party's expert testimony should prevail. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 714 (2d Cir. 1992) (upholding district court's use of Rule 706 court-appointed expert because in pertinent part the judge, and not the expert, remained the trier of fact).

## CONCLUSION

If the facts and law were as the Debtors say on *any* of these points, surely in the past decades Debtors would have won these issues on summary judgment and vastly limited their overall asbestos liability.  But they never did.  Now -- in a Reply brief -- Debtors ask this Court *for the first time* to adopt procedures that fly in the face of the Bankruptcy Rules and due process and prevent any fair test of the validity of any of the claims.  Only in a total absence of due process could Debtors hope to avoid their overwhelming liabilities by such a proposal.

Even if Debtors' proposal were lawful, it is foolhardy to believe that their plan would be more efficient than proceeding with estimation as mandated by the Code.  Not only does the "protocol" invite extensive discovery and trials, it does nothing to address the bulk of liability Grace faces:  future claims.

Accordingly, the Committee respectfully submits that Debtors' motion should be denied and their Proffered Reply stricken in light of Debtors' failure to raise their core arguments in their opening papers, that this collateral back-and-forth about a "protocol" that is unsupportable as a matter of law should be halted, and that the matter should proceed to estimation.

CAMPBELL & LEVINE, LLC

/s/Matthew G. Zaleski, III
Matthew G. Zaleski, III (I.D. No. 3557)
Chase Manhattan Centre
1201 N. Market Street, 15th Floor
Wilmington, DE 19801
(302) 426-1900

-and-

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
399 Park Avenue, 36th Floor
New York, NY 10022
(212) 319-7125

-and-

CAPLIN & DRYSDALE, CHARTERED
Peter Van N. Lockwood
Julie W. Davis
Kimberly N. Brown
One Thomas Circle, N.W.
Washington, D.C. 20005
(202) 862-5088

National Counsel for the Official Committee
of Asbestos Personal Injury Claimants

Dated:  December 19, 2001