**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------- x
In re:                                : Chapter 11
                                       Case No. 01-01139 (JKF)
W. R. GRACE & CO., *et al.*          :
                    Debtors.          Jointly Administered
                                      :

                                      : Hearing Date: January 3, 2002 at 9:30am
------------------------------------- x

**OPPOSITION OF THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS TO THE ZONOLITE CLAIMANTS'**
**MOTION TO DISMISS THE BANKRUPTCY CASE (DOCKET #1140)**

The Official Committee of Unsecured Creditors (the "Creditors Committee"), by its undersigned counsel, submits this Opposition to the Zonolite Claimants' Motion to Dismiss the Bankruptcy Case, dated November 15, 2001 (the "Motion"), and respectfully represents as follows:

**INTRODUCTION**

1. The most telling aspect of the Motion filed by the Zonolite Attic Insulation Claimants (the "ZAI Claimants") seeking to dismiss these bankruptcy cases is that it is brought by a single group of claimants, not by the Official Committee of Property Damage Claimants (the "PD Committee"), on which a representative for these claimants sits. The Motion, filed eight months after these cases were commenced and after the ZAI Claimants have made various attempts to press their claims within the bankruptcy cases, is a disingenuous attempt to advance the ZAI Claimants' own litigation position and maintain it as a class action. As explained below, the Motion lacks any basis in fact and law and it should be denied.

2. By their Motion, the ZAI Claimants ignore the facts and the applicable law and argue that these bankruptcy cases were filed in bad faith. They argue that W.R. Grace is a "financially healthy company" and, relying almost exclusively on a single, inapposite case, that

these bankruptcy cases were filed "seeking to improperly use bankruptcy simply to rapidly conclude litigation it faced." Motion at 1. Although the Debtors have repeatedly acknowledged in their various submissions to the Court that they filed for bankruptcy protection to resolve the huge volume of asbestos claims asserted against them, that fact does not render this a bad faith filing, as the ZAI Claimants apparently believe. Indeed, it is impossible to conclude on this record, in which it is undisputed that the Debtors are overwhelmed by present and future asbestos claims, that these bankruptcy cases were improperly filed. Simply put, Congress sanctioned asbestos-related bankruptcies for companies like Grace by adopting 11 U.S.C. § 524(g). If Congress did not wish to make bankruptcy an available option to resolve asbestos liabilities, there would have been no need to amend the Code to provide for a trust and an injunction specifically for that purpose.

        3.      The ZAI Claimants propose that Grace should manage the onslaught of asbestos liability claims as business as usual. That would be economically and judicially inefficient and makes no sense. The movants do not dispute the information previously presented by Grace as to the sheer volume of the asbestos claims, pending and expected, against the Debtors. In fact, one would be hard pressed to hear most personal injury asbestos creditors state that the volume of claims is somehow "manageable" by these Debtors outside of the bankruptcy process.

        4.      What we have here is a group of claimants looking to press their particular claims against the Debtors in the manner that they desire, without the constraints provided by the bankruptcy process. And, while all creditors, including those represented by the Committee, would prefer to have their claims paid in full, today, all creditors will need to seek that result through the bankruptcy process. The ZAI Claimants' attempts to do otherwise should be denied.

WLM\153484.1: SSL-DOCS2 70037445v4

# ARGUMENT

## THE ZAI CLAIMANTS MOTION TO DISMISS SHOULD BE DENIED BECAUSE THESE BANKRUPTCY CASES WERE NOT FILED IN BAD FAITH

5.      The ZAI Claimants argue that Grace is a "financially healthy company" that filed its bankruptcy case "in bad faith" and is "seeking to improperly use bankruptcy simply to rapidly conclude litigation it faced." Motion at 1. They argue so in order to try to squeeze these bankruptcy cases into the narrow holding of In re SGL Carbon Corp., 200 F.3d 154 (3rd Cir. 1999). As explained below, however, there are no relevant similarities between the situation in SGL Carbon and those here; SGL Carbon is inapposite.

6.      SGL Carbon was a manufacturer of graphite electrodes used in steel production. In 1997, as a result of a United States Department of Justice investigation of alleged price-fixing, SGL Carbon was faced with a class action antitrust suit consisting of all United States purchasers of graphite electrodes between 1992 and 1997. Despite the pendency of the antitrust claims, SGL Carbon was neither insolvent nor faced any immediate financial difficulty. Indeed, SGL AG (SGL Carbon's parent) chairman Robert Koehler confirmed that SGL Carbon was financially healthy during a conference a call with securities analysts: "usually Chapter 11 is used as protection against serious insolvency or credit problems, which is not the case [with SGL's Carbon's petition.]" 200 F.3d at 158. A review of SGL Carbon's assets and liabilities at the time of filing confirmed SGL Carbon's financial strength: it had unencumbered assets worth $400 million and $276 million in fixed and non-disputed liabilities (90% of which was owed to SGL AG or guaranteed by SGL AG). SGL AG maintained a reserve of $240 million in connection with the civil and criminal aspects of the antitrust issues, and SGL Carbon estimated on its books that the antitrust claims could be liquidated for $54 million. Id. at 163.

7.	The creditors committee of SGL Carbon filed a motion to dismiss the bankruptcy, arguing that the filing was a litigation tactic intended to frustrate the antitrust claims. After a hearing, the district court presiding over the bankruptcy case denied the motion. The Court of Appeals for the Third Circuit reversed, holding that the antitrust claims did not present a threat to SGL Carbon's continued successful operations, and that bankruptcy protection was unnecessary until such time, if ever, as a judgment against it became imminent. Id. at 159, 163.

8.	However, the Third Circuit explicitly noted that "[i]t is well established that a debtor need not be insolvent before filing for bankruptcy protection." Id. at 163. Significantly, the SGL Carbon court distinguished asbestos bankruptcy cases from the matter before it. In particular, citing to In re Johns-Manville, 36 B.R. 727 (Bankr. S.D.N.Y. 1984), the SGL Carbon court stated:

> In Johns-Manville, the debtor was facing significant financial difficulties. A growing wave of asbestos-related claims forced the debtor to either book a $1.9 billion reserve thereby triggering potential default on a $450 million debt which, in turn, could have forced partial liquidation, or file a Chapter 11 petition. Large judgments had already been entered against Johns-Manville and the prospect loomed of tens of thousands of asbestos health related suits over the course of 20-30 years.

Id. at 164 (citations omitted). The Third Circuit observed that while asbestos plaintiffs had recovered nearly $4 million in punitive damages from Johns-Manville prior to the filing, the litigation against SCG Carbon was in its "nascent stages;" that while Johns-Manville faced some 16,000 asbestos lawsuits with a "staggering" number more to follow over the next 20-30 years, SGL Carbon faced a finite number of suits; and that although certain creditors sought to dismiss the Johns-Manville case, they did so after sixteen months, in response to a collapse of negotiations, as compared to the committee in SGL Carbon which moved promptly and not for purposes of "strategic motivations." Id. at 169.

-4-

9. The Third Circuit also distinguished <u>SGL Carbon</u> from other mass tort debtors which properly sought bankruptcy protection:

> A large number of pending or potential claims also contributed to two other mass tort related bankruptcy petitions.  The 1985 bankruptcy petition of the A.H. Robins Company came only after "the Company had settled 9,238 claims for approximately $530,000,000" and "still faced over five thousand pending cases in <u>In re A.H. Robins</u>, 89 B.R.555, 557 (Bankr.E.D.Va. 1988).  Similarly, at the time it filed for bankruptcy Dow Corning Corporation faced 440,000 potential claimants which had resulted in the filing of more than "19,000 individual silicone-gel breast implant lawsuits and at least 45 putative silicone-gel breast implant class actions." <u>In re Dow Corning Corp.</u>, 211 B.R. 545, 553 (Bankr.E.D.Mich. 1997).

<u>Id</u>. at 164, fn 15.  These massive number of claims were not present in <u>SGL Carbon</u>.

10. The <u>SGL Carbon</u> case is a truly extraordinary case, largely limited to its facts, as demonstrated by the case of <u>In re RBGSC Investment Corp.</u>, 253 B.R. 352 (E.D.Pa. 2000).  In <u>RBGSC</u>, a lawsuit was filed by certain joint-venturers against RBGSC and the joint-venturers obtained a preliminary injunction enjoining RBGSC from taking certain actions.  In response, RBGSC sought Chapter 11 bankruptcy protection.  In the bankruptcy court, the joint-venturers sought to dismiss the bankruptcy case and, relying upon <u>SGL Carbon</u>, argued that the commencement of the bankruptcy case "was an improper litigation tactic designed to avoid the impact of the state court's orders." <u>Id</u>. at 360.  After a hearing, the bankruptcy court denied the motion to dismiss, holding that the debtor had "grounds for filing other than its intention to avoid certain state court rulings" and that "neither the U.S. Trustee nor creditors other than [the joint-venturers] support the conclusion that dismissal would be in the best interests of creditors." <u>Id.</u> at 361.

11. On appeal to the district court, the joint-venturers argued that the Chapter 11 filing was solely a litigation tactic and that RBGSC was in fact solvent at the time of the

-5-

filing. The district court rejected these arguments, holding that the mere fact that the bankruptcy filing gave the Chapter 11 debtor an advantage in state court litigation was insufficient to demonstrate debtor's lack of "good faith" in filing for bankruptcy relief:

> a party's good faith in filing is made on the totality of the circumstances, with any number of factors at play in the decision of whether good faith indeed existed. On this standard, the mere claim that the bankruptcy gave the debtor an advantage in the state court litigation, even if true, cannot serve as grounds for reversing the Bankruptcy Court's decision that good faith existed.

In re RBGSC, 253 B.R. at 367. The district court also rejected the argument that RBGSC's solvency demonstrated its bad faith, holding that, "a party need not be insolvent to file Chapter

Id. at 361; accord, SGL Carbon, 200 F.3d at 163 ("It is well established that a debtor need not be insolvent before filing for bankruptcy protection. It also is clear that the drafters of the Bankruptcy Code understood the need for early access to bankruptcy relief to allow a debtor to rehabilitate its business before it is faced with a hopeless situation.")(citations omitted).

12. The facts of these cases are a far cry from SGL Carbon. The ZAI Claimants' suggestion that Grace's filing was "merely a litigation tactic" -- as was the case in SGL Carbon -- is simply preposterous. Unlike SGL Carbon, which faced a mere handful of claims, Grace is currently facing tens of thousands of asbestos-related claims (as was Johns-Manville at the time of its filing), and, prior to the filing, the number of claims against Grace was increasing at an alarming rate. While, historically, Grace was able to manage its substantial volume of asbestos-related litigation, the number of claims filed in the immediate months prior to bankruptcy rose dramatically as other companies (a number of which were Grace's codefendants in asbestos litigation) also filed for bankruptcy protection. Unlike SGL Carbon, which could manage a handful of antitrust claims outside of bankruptcy, but very much like

Johns-Manville, Grace cannot be forced to manage and defend tens of thousands of claims without sustaining significant damage to its business.

13. Totally unlike SGL Carbon, which had reserves that far exceeded its worst-case litigation exposure, Grace's public filing for the period ending just prior to the Chapter 11 filings reflects reserves of approximately $1.0 billion for their asbestos-related liability which (assuming that reserve is intended to cover the Zonolite claims), might not even cover the liability to the ZAI Claimants, let alone the outstanding tens of thousands of personal injury claims and other property damages claims pending and expected to be filed against the Debtors.[1] The ZAI Claimants previously submitted briefs to this Court asserting that "many thousands, or even millions, of homeowners/residents now living in homes with current asbestos contamination of which they are entirely ignorant." ZAI Claimants' Objection to Debtors' Motion for Entry of Case Management Order, dated July 13, 2001, at pages at 14-15. In that pleading, the ZAI Claimants estimated that the cost of asbestos removal from each of these homes would cost between $1,000 and $10,000. Id. at page 8. Thus, according to the ZAI Claimants' own numbers, even if there were only one million homes that required removal at a cost of $1,000/home, the liability would exceed $1 billion. Of course, a worst case scenario, according to the ZAI Claimants' estimation, could result in liability to these claimants alone in excess of $10 billion. When one then considers the sheer and undisputed volume of personal injury asbestos claims, plus other property damage claims, pending and expected to be filed against the Debtors, the lack of merit in the ZAI Claimants' position becomes apparent.

---

[1] Grace's 10Q for the period ended March 31, 2001 states that Grace was a defendant in over 65,000 asbestos-related lawsuits, of which 17 asserted property damage claims, including those in respect of Zonolite attic fill insulation, and the remaining lawsuits consisted of nearly 130,000 claims for personal injury.

WLM\153484.1: SSL-DOCS2 70037445v4

14.     Moreover, in SGL Carbon, the motion to dismiss was brought by the official committee of unsecured creditors, representing the interest of all creditors in that case. In contrast, the present motion, like the motion in RBGSC, is brought by a single creditor group with its own litigation agenda and "strategic motivations."  Here, to the contrary, the Creditors Committee, on behalf of all the unsecured creditors (other than asbestos claimants), opposes the motion to dismiss.  Moreover, the PD Committee on which a ZAI Claimants' representative sits did not file this motion.  Indeed, far from taking the position that Grace is still a "healthy" company, the PD Committee has sought authority to prosecute certain fraudulent transfer claims arising from its 1996 and 1998 corporate restructurings, predicated on the fact that the debtor was insolvent then as a result of its asbestos liabilities.  See, Joint Motion By the Official Committees of Asbestos Property Damage and Asbestos Personal Injury Claimants For Authority to Prosecute Fraudulent Transfer Claims dated June 14, 2001.

15.     The timing of the Motion also demonstrates that the ZAI Claimants are using the motion as a litigation tactic to advance their interests against the Debtors.  The bankruptcy case was filed on April 2, 2001.  For nearly eight months the ZAI Claimants sought to promote their agenda in these cases, by, for example, opposing the Debtors' motions for a preliminary injunction and for a case management order, respectively, and seeking instead to have its litigation proceed before the Judicial Panel on Multidistrict Litigation, where the ZAI Claimants' cases were pending prior to the Chapter 11 filings.  During all that time, the ZAI Claimants did not seek dismissal of the bankruptcy case.  Cf.  SGL Carbon Corp., 200 F.3d 154 and In re  RBGSC Investment Corp., 253 B.R. 352 (motions to dismiss both made within one month of filing).  Although no court has yet decided any of these motions, the ZAI Claimants apparently have little faith in their previously stated positions.  They therefore have now switched tracks, eight months after these cases were filed, to seek to dismiss the bankruptcy case

-8-

based upon information all of which was publicly available at the time of Grace's Chapter 11 filings.[2]

16.     The <u>SCG Carbon</u> court correctly distinguished asbestos and mass tort bankruptcy cases from the matter before it.  Not only is the scope of the possible liability enormous in the asbestos context, but significantly, Congress has expressed its intention that Chapter 11 is an appropriate option for companies, like Grace, facing massive asbestos liabilities.  In adopting section 524(g) of the Bankruptcy Code, Congress enacted a procedure, modeled after the Johns-Manville case, premised in the formation of a trust established to compensate future claimants, and the issuance of an injunction barring asbestos claimants form suing the debtor.  <u>See</u> 11 U.S.C. § 524(g).  The legislative history to that section explains the genesis of the trust mechanism as applied in <u>Johns-Manville</u> and stated, in pertinent part:

> The procedure is modeled on the trust/injunction in the Johns-Manville case, which pioneered the approach a decade ago in response to the flood of asbestos lawsuits it was facing … In 1982, when Johns-Manville filed for bankruptcy, it had been named in 12,500 lawsuits, and epidemiologists estimated that 50,000 to 100,000 more could be expected, with a potential liability totaling $2 billion… <u>The asbestos/injunction mechanism established in the bill is available for use by any asbestos company facing a similarly overwhelming liability</u>.

H.R. Rep. No. 103-835 at 40-41 (emphasis added).

---

[2]     In fact, the ZAI Claimants have recently filed yet another pleading within these bankruptcy cases through their attorneys, this time an adversary proceeding, which purports to be a nationwide class action on behalf of "thousands of property owners in the United States and its territories whose properties contain Zonolite Attic Insulation," which seeks a combination of the relief sought in the Motion and the relief sought by the ZAI Claimants in opposition to the Case Management Order.  Class Action Complaint Seeking Zonolite Attic Insulation Relief dated November 16, 2001.  The request for judgment in the adversary proceeding asks this Court to "conduct appropriate proceedings in connection with [the ZAI Claimants motion to dismiss the bankruptcy case] and thereafter enter an order granting the motion and dismissing the Debtors' bankruptcy petition with prejudice;" and, in the alternative, seeks, among other relief, certification of the nationwide class and a notice program consistent with the ZAI Claimants' position previously submitted opposition to the Case Management Order.

17. The fact that Congress amended the Bankruptcy Code to specifically provide a mechanism enabling the Debtors to obtain relief from asbestos liability completely undercuts the ZAI Claimants' argument that there is something improper about Grace, faced with escalating and endless asbestos claims, seeking such protection in Chapter 11 proceedings.

**WHEREFORE**, for all of the reasons set forth above, the Creditors Committee respectfully requests that this Court deny the Motion and grant such other and further relief as is just and proper.

Dated: Wilmington, Delaware
December 21, 2001

Respectfully submitted:

**STROOCK & STROOCK & LAVAN LLP**
Lewis Kruger
Kenneth Pasquale
(Members of the Firm)
180 Maiden Lane
New York, New York  10038-4982
Tel:   (212) 806-5400
Fax:   (212) 806-6006

and

**DUANE, MORRIS & HECKSCHER LLP**

/s/ Michael R. Lastowski_____
Michael R. Lastowski (DE I.D. No. 4051)
William S. Katchen
1100 North Market Street, Suite 1200
Wilmington, Delaware 19801
Tel:   (302) 657-4900
Fax:   (302) 657-4901
Email: mlastowski@duanemorris.com

*Co-Counsel for the Official Committee*
*of Unsecured Creditors*