1

1                    IN THE UNITED STATES BANKRUPTCY COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                             - - -

4    W.R. GRACE & CO., et al.,          :  CHAPTER 11
                          Debtors       :  Case No. 01-01139 (JJF)
5                                        :  Jointly Administered

6                             - - -

7                                        Wilmington, Delaware
                                         Monday, November 5, 2001
8                                        4:33 o'clock, p.m.

9                             - - -

10   BEFORE:   HONORABLE RODERICK R. McKELVIE, U.S.D.C.J.

11                            - - -

12   APPEARANCES:

13              PACHULSKI, STANG, ZIEHL, YOUNG & JONES
                BY:  DAVID W. CARICKHOFF, JR., ESQ.
14
                        -and-
15
                KIRKLAND & ELLIS
16              BY:  JAMES W. KAPP, III, ESQ. and
                     SAMUEL A. SCHWARTZ, ESQ.
17                   (Chicago, Illinois)

18              Counsel for Debtors

19
                PHILLIPS, GOLDMAN & SPENCE, P.A.
20              BY:  JOHN C. PHILLIPS, JR., ESQ.

21              Counsel for Former Officers, P/3

22

23

24                              Valerie J. Gunning
                                Official Court Reporter
25



1    APPEARANCES (Continued):

2            CAMPBELL & LEVINE
         BY:  MATTHEW ZALESKI, ESQ.
3
              -and-
4
         CAPLIN & DRYSDALE
5        BY:  PETER LOCKWOOD, ESQ.
              (Washington, D.C.)
6
              -and-
7
         BILZIN & SUNBERG,
8        SCOTT L. BAENA, ESQ.

9            Counsel for Official Committee of Asbestos
             Property Damage Claimants
10

11
             STROOCK AND STROOCK AND LAVAN
12       BY:  KENNETH PASQUALE, ESQ.
              (New York, New York)
13
             Counsel for Committe of Unsecured Creditors
14
                    - - -
15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

(Proceedings commenced in the courtroom beginning at 4:33 p.m)

THE COURT:  Good afternoon, everybody.

Jack?

MR. PHILLIPS:  Your Honor, Jack Phillips on behalf of four former plaintiffs -- excuse me -- four former officers and directors, the plaintiffs in this case.

This is the time set for the motion of those four former officers and directors for indemnification, your Honor.

We filed our motion.  There has been a response by the Committee for the asbestos personal injury claimants, a response by the Unsecured Creditors Committee, and a response by counsel for the debtors.

THE COURT:  All right.

MR. PHILLIPS:  Your Honor, this is a pretty straightforward matter, in my opinion.  These are former officers, directors and agents of the debtor, but it goes down to, I mean, Ryan is nothing more than a mid-level person.  He was the assistant comptroller.  All four of these people claim to have indemnification rights under the

1    by-laws, the by-law of the debtor corporation.

2              The by-law is cited to your Honor in papers.

3    All four of these people have, in addition to that,

4    contractual letters of indemnification from the

5    corporation.  And but for the fact that an appeal was

6    taken of these SEC proceedings, this matter probably would

7    have been over and done with and these people would have been

8    paid and indemnified, but the appeal put everything on hold

9    and this filing has occurred.

10             But the fact is, your Honor, this is nothing more

11   than a strategic filing.  The intent of this filing by this

12   debtor is to create a trust mechanism for paying asbestos

13   claims.  I don't think it's a great secret.  At the end of

14   the day, all the creditors are going to get 100 cents on the

15   dollar.  At the end of the day, the asbestos plaintiffs are

16   going to get paid under the trust in accordance with the

17   trust provision.  Providing the identification requested by

18   these four individuals will not adversely affect either of

19   those two groups of people.

20             The corporation itself was subject to this

21   investigation.  The corporation itself took care of itself.

22   The corporation has depleted the only insurance policy that

23   would have been available to these people.  So now when we go

24   ask for our insurance coverage, they say the policy is -- has

25   been used up.

1          And I suggest to your Honor that this is a

2     matter of equity that this Court has jurisdiction over.

3     These four -- well, at least three of these four people will

4     not be able to afford to defend themselves without this

5     indemnification.

6          These people are caught in a situation where the

7     accounting method at issue was reviewed and approved by the

8     Corporations Audit Committee and by the corporations outside

9     auditors.  It was not an issue until the SEC changed its

10    rules.

11          And although these are serious allegations, they

12    are nothing more than allegations.  These are not allegations

13    that have generated any shareholder derivative actions.  It

14    is -- whenever this conduct was, it did not hurt the

15    corporation.  It did not take money out of the corporation's

16    pocket.

17          Now, there's an argument to be made here, your

18    Honor, that the first-day motions, the employee benefit

19    motion, and perhaps thereafter the ordinary course motion

20    could allow this Court to order these indemnification

21    payments.  Certainly, the Court's equitable power under

22    Section 105 would allow the Court to grant this motion, and I

23    suggest to your Honor that equity demands that this Court do

24    so.

25          I would also suggest, your Honor, that not doing

1   so would be detrimental to the estate.   It would certainly

2   have negative publicity at a very sensitive time in this

3   debtors' reorganization process.   But much more importantly,

4   I don't think it is -- I don't think there's any doubt, your

5   Honor, that this would cause debtors' current officers,

6   directors and managers serious concern at a time when it is

7   already difficult for a debtor to retain those people due to

8   the bankruptcy filing.

9           It would be detrimental to their morale and the

10  debtors' ability to retain these people.   Thus, I think it

11  could be construed as a matter of necessity that the Court do

12  this in order to protect that morale and the retention

13  efforts.   And I would suggest to your Honor that the Debtors

14  Committee -- excuse me -- the debtors actually support this

15  motion and, as a consequence, I believe the Court should

16  grant this motion.

17          THE COURT:   All right.   Who else wants to speak

18  today?

19          MR. PASQUALE:   Good afternoon, your Honor.   Ken

20  Pasquale for the Official Committee of Unsecured Creditors.

21          I think we'd agree that this is a straightforward

22  matter.   However, it's straightforward because the law that

23  governs this motion compels the result, which is that the

24  motion should be denied.

25          The by-laws and the letter indemnification

1  agreements were all entered into prepetition.  The acts that

2  are involved are all prepetition.  None of the former

3  employees were employed at any time near the petition date,

4  and certainly not post-petition.

5          These are prepetition, general unsecured claims.

6  And we've cited the cases in our pleading to the Court in

7  this circuit that provide that indemnification requests like

8  this are prepetition claims, not entitled to any priority

9  treatment, which is exactly what's being asked for here:

10  Priority treatment.

11          Nor is this a matter where Section 105 and the

12  equities should be applied.

13          The cases in this circuit, the Lehigh case that

14  we've cited, under the necessity doctrine, payment has to be

15  necessary to facilitate the continued operation of the

16  debtor.  We don't have any of that here.  This is not the

17  type of situation where we have a trade, a vital trade

18  creditor, for example, that can impose what's -- an economic

19  sanction upon the debtor.  These are former employees looking

20  for indemnification payments.

21          There is a heavy burden upon the movants in the

22  situation, in any event.  And I think looking at the papers

23  and what has been presented today, the movants haven't met

24  that burden.  We hear words, but they certainly can't meet

25  the burden of an economic impact upon the debtors

1    post-petition in the reorganization process.

2         Finally, let me just say, with respect to the

3    first-day orders, the debtors, in their own submission to

4    this Court on this motion, have admitted that, first, the

5    ordinary course motion was denied, so there's no relief to be

6    gained there.

7         With respect to the employee benefits motion, the

8    debtors admit that that motion was not intended to cover

9    these former employees and these requests for

10   indemnification.

11        And, indeed, the Committee objected to the

12   employee benefit motion with respect to payments to former

13   employees, and certainly had that motion pertained to these

14   former employees, we would have objected there as well.

15        But I think the most important factor there is

16   that the debtors say, and they admit that it was not their

17   intention to cover these employees by those motions.  And,

18   certainly, the orders that were entered are totally silent

19   as to it.

20        Finally, with respect to the debtors' papers

21   to this Court on this motion, the debtors say, Well, it's

22   okay with us because we have the money.  Well, I think all of

23   the creditors in my constituency, the banks and the trade,

24   they'd love to get paid now, too.  But that's not what the

25   bankruptcy laws provide.  And this is no different.  There's

1    simply no legal justification to grant this motion.

2              Finally, with respect to the impact that this

3    could have on the debtors, it has been seven months since the

4    debtors filed the petition.  I think by now, the employees,

5    current employees, especially in light of the first-day

6    orders, they now have more of an understanding of what this

7    process will mean to them.

8              And, frankly, denying this motion will have no

9    impact, it seems to me, to any of those employees.  We're

10   talking about four people in the scope of the larger

11   first-day orders that were entered by the Court to protect

12   employees.

13             So we submit that the motion should be denied.

14             THE COURT:  All right.

15             MR. PASQUALE:  Thank you.

16             THE COURT:  Anyone else?

17             MR. LOCKWOOD:  Good evening, your Honor.  No.  It

18   is still afternoon.  Peter Lockwood from Caplin Drysdale for

19   the Asbestos Claimants Committee.

20             I would just like to respond to a couple of

21   points made by counsel for the movants here.  The -- with all

22   due respect, the assertion that this is sort of a trivial

23   exercise because there's not a lot of money and this is just

24   a strategic filing and we're going to put money in a trust,

25   everything is going to be paid off a hundred cents on the

1    dollar that was made at the beginning of the argument there,

2    there's an expression I believe called his mouth to God's

3    ear.

4              I think, suffice it to say that while it is

5    devoutly to be hoped that that might be the outcome here,

6    there is certainly nothing in the record to date that

7    would support the substantial likelihood of such an outcome,

8    and I would submit that this Court could not possibly,

9    absent the creation of some sort of record on the point,

10   simply take counsel's naked assertion that such a result was

11   likely to be forthcoming as a basis for granting a motion of

12   this sort.

13             And, indeed, I think the absence of a record is

14   of some significance here, because there are a number of

15   other assertions that have been made here that conceivably,

16   had they been the subject of evidence, the Court might be

17   entitled to take them into consideration.

18             For example, the assertion that there would be

19   negative publicity to the company that would be in some sense

20   meaningful is just an assertion.   There's no showing of

21   that.   The papers do indicate that the corporation, as we

22   pointed out in our opposition, was, in fact, sued because of

23   the acts of the -- with which the SEC also charged the

24   individual plaintiffs here.   The corporation settled that

25   case many years ago.

1    We don't -- they assert that their acts didn't

2    cause any harm to the corporation.  It didn't cost it any

3    money.  Well, we don't have the record of whose

4    responsibility it was or what the terms of the settlement

5    were or how much legal fees the corporation had to pay in

6    order to arrive at the settlement that it did, but, again,

7    the notion that we could just toss out hear the proposition

8    that, Oh, gee, the corporation never got heard, and that's

9    another reason why equity should suggest that these amounts

10   should be paid.

11   As Mr. Pasquale pointed out, these are

12   indisputedly prepetition claims that are at issue here, and

13   the only bankruptcy principle that would, or there may be two

14   bankruptcy principles that might, under a proper showing,

15   take prepetitions and allow them to be -- prepetition

16   obligations and allow them to be paid post-petition.

17   One is the necessity doctrine, which Mr. Pasquale

18   averted to.  The necessity doctrine, because it allows a

19   debtor to prefer certain types of prepetition claims over all

20   other types of prepetition claims, by paying them currently,

21   is a very, very narrowly limited doctrine, and it is

22   predicated on the proposition that the relationships between

23   the debtor and the creditors whose claims are being paid are

24   so important to the continued financial success of the debtor

25   during the reorganization process post-petition, that it is

1   in the interests of the debtor and all of its existing

2   creditors that those claims be paid so that those

3   relationships can be preserved.

4           There is no relationship between this debtor

5   and these creditors to preserve, and the doctrine of

6   necessity is accordingly wholly inapplicable under these

7   circumstances.

8           The only other suggestion of any kind of

9   continuing impact on the debtor is the supposition that

10  somehow or another, because these former officers have

11  indemnity claims that might not get paid, that would make the

12  current officers afraid that if they had indemnity claims in

13  the future, they might not get paid.

14          Well, among other things, there would certainly

15  be at least the substantial possibility that if there were

16  actions that could successfully be asserted against present

17  management post-petition, that those actions would not be

18  prepetition claims, if indemnification was sought.  Even if

19  you could argue that the right to indemnify was a prepetition

20  origin, because it was based, say, on the by-laws that

21  existed prepetition, the fact would remain that the current

22  officers could, in fact, come in here and make an argument

23  under the doctrine of necessity that they were necessary to

24  the corporate reorganization and that their being unable to

25  defend themselves would somehow or another hurt this

1   corporation as it exists today in this reorganization and in

2   its present business, an argument which is wholly

3   inapplicable and unavailable to former officers.

4           So there's just no -- there's no equity and no

5   legal basis for the Court to do here what these debtors --

6   what these movants would ask it to do.

7           Their final resort is, Gee, Judge, we're really

8   going to be in tough shape financially if we don't get

9   indemnified.

10          I will accept counsel's naked assertion of that

11  as truthful.  But the fact is that I represent a lot of

12  people, some of whom are dying from mesothelioma, or lung

13  cancer, and they're not going to get paid anything on their

14  prepetition obligations while this case is going on.  And for

15  the life of me, I would have a tough time explaining to them

16  and their families why their needs are any less entitled to

17  special attention from this Court than the financial needs of

18  somebody whose prepetition conduct has gotten it embroiled in

19  litigation with the SEC, litigation which, I might add,

20  presumably they could have settled just like the company did

21  many years ago, and this would not be before us today.

22          Thank you, your Honor.

23          THE COURT:  Anybody else?

24          MR. KAPP:  Good afternoon, your Honor.  James

25  Kapp on behalf of the debtors.

1    I thought I might say a few words. I've heard a

2    lot of talk about what the debtors had to say, so I thought

3    I'd stand up and repeat some of this.

4    Two points, your Honor:  One, the debtors don't

5    dispute that they have this obligation, and also if required

6    to do so today, we do have current assets to satisfy those

7    obligations currently.

8    We do believe, however, that as of today, we do

9    not have the authority to make those payments without

10    authority from this Court.

11    As was said, the ordinary course motion was

12    denied.  That order, we should not rely on that order.

13    As to the wage motion, it does not -- was never

14    intent and does not expressly include what's being sought

15    today.

16    Really, it's a matter of timing, and, obviously,

17    the debtors are very concerned about morale of their current

18    employees.  If there was a demonstration that this sort of

19    thing would impact morale of current employees and led

20    current employees to believe that their indemnification

21    rights may, for some reason, be threatened by what goes on

22    here today, we would be inclined to support this motion.

23    Thank you.

24    THE COURT:  Okay.

25    MR. PHILLIPS:  Your Honor, just briefly, as I

1    said, I think the debtor does, in fact, support this motion.

2    The debtor acknowledges its obligation under the contract and

3    the by-laws, and with regard to Mr. Lockwood's statement,

4    this petition was only filed in 2001.

5         There is a lot of time left on statute of

6    limitations for things that preceded that.  That it could, in

7    fact, be prepetition claims as he would have you believe.

8    That would, indeed, impact current management, current

9    officers, who are entitled to indemnification.

10        This Court, as it does in every filing, always

11   hears from debtors' counsel how it is important to employ and

12   retain executives, how difficult that is.  It often asks for

13   special compensation packages.

14        I would suggest to you, your Honor, that a

15   showing of necessity has been made.  It is important to this

16   debtor, as debtors' counsel has just acknowledged, that it is

17   able to retain its executives, that that would be

18   jeopardized, and there is a financial or economic impact, all

19   of the retention efforts to date would be wasted.

20        This is something that I am sure the Court is

21   aware is significant to officers and directors.  They're very

22   mindful of the fact that they could be named as individual

23   defendants in matters that, for which they would rely, as

24   these four people relied in good faith on their right to

25   indemnification.

1    And it would impact this debtor.  It would impact

2  their ability to retain these executives, and that would

3  obviously have economic impact on this debtor.

4    And beyond a doubt, this Court has economic --

5  excuse me -- has equitable power to grant the relief

6  requested, and I would request that you exercise that power

7  and do so.

8    THE COURT:  All right.  Having heard

9  the arguments, I've decided I'm going to deny the motion.

10    I don't think the application falls within the

11  narrowness doctrine, and I don't see why these employees

12  should be treated differently than other creditors, but I do

13  hope that the statement is correct, that all the unsecured

14  creditors will get paid a hundred cents on the dollar, and

15  that these employees will get paid on their indemnification

16  claim as promptly as they can be paid.

17    All right.  Is there anything else to take care

18  of?

19    MR. PHILLIPS:  Nothing, your Honor.

20    THE COURT:  Good.  Court is in recess.

21    (Court recessed at 4:55 p.m.)

22    - - -

23

24

25



I hereby certify that the foregoing is a true
and accurate transcript from my stenographic
notes in the proceeding.

Valerie J. Gunnip
Official Court Reporter
U.S. District Court