IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------x

In re:                                          Chapter 11

W.R. GRACE & Co., et al.,                       Case No.  01-01139(JJF)
                                                (Jointly Administered)


                    Debtors

---------------------------x

EIGHTH INTERIM APPLICATION OF FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM NOVEMBER 1, 2001 THROUGH NOVEMBER 30, 2001)

Type of Application:  Interim ____X____      Final _____

Name of Applicant:                              FTI Policano & Manzo

Authorized to Provide Professional Services to:  The Official Committee of
                                                Unsecured Creditors

Date of Order Authorizing Employment:           June 21, 2001

Compensation Sought:
          Application Date:     December 28, 2001
          Application Period:   November 1, 2001 through November 30, 2001


|                                  | Hours | Amount      |
|----------------------------------|-------|-------------|
| Professional Fees (80%)          | 155.1 | $40,038.80  |
| Expense Reimbursement (100%)     |       | 1,864.72    |
|                                  |       |             |
| Total                            |       | $41,903.52  |

Is this a first application?  Yes ____  No _X_

-1-

EIGHTH INTERIM APPLICATION OF FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM NOVEMBER 1, 2001 THROUGH NOVEMBER 30, 2001)

INDEX

APPLICATION FOR ALLOWANCE OF INTERIM
COMPENSATION AND REIMBURSEMENT OF EXPENSES

EXHIBIT A    Affidavit of Edwin N. Ordway, Jr.

EXHIBIT B    Summary of the services performed by FTI Policano & Manzo from
             November 1, 2001 through November 30, 2001

EXHIBIT C    Summary of fees by professional for the period November 1, 2001 through
             November 30, 2001

EXHIBIT D    Detailed descriptions of services rendered by professional for the period
             November 1, 2001 through November 30, 2001

EXHIBIT E    Summary of expenses incurred for the period November 1, 2001 through
             November 30, 2001

**APPLICATION FOR ALLOWANCE OF
INTERIM COMPENSATION AND REIMBURSEMENT
OF EXPENSES**

## I.    Introduction

This is the eighth application for allowance of interim compensation and reimbursement of expenses ("Eighth Interim Application") made by FTI Policano & Manzo ("FTI P&M" or "Applicant"), as Financial Advisors to the Official Committee of Unsecured Creditors (the "Committee") of W.R. Grace & Co. et. al., (the "Company" or "Debtors") for the period November 1, 2001 through November 30, 2001 ("Eighth Interim Period").   In connection with this application, the Applicant submits as follows:

1. FTI P&M is a firm of financial advisors specializing in insolvency restructuring and related matters, and is an operating unit of FTI Consulting, Inc.

2. FTI P&M was retained by the Committee as Financial Advisors to the Committee pursuant to an order approved by the Court dated June 21, 2001 (the "Employment Order").

3. On May 3, 2001, the Court entered an order establishing procedures for interim compensation and reimbursement of expenses for all professionals and committee members ("Interim Compensation Order").

4. The Interim Compensation Order requires each professional to submit monthly statements to various parties as stated in the Interim Compensation Order.   These monthly statements include a detailed schedule of the services rendered and the expenses incurred for the related period, and are submitted on or about the 28th day of every month. Following a 20 day period for notice and resolution of objections, the Interim Compensation Order requires the Debtors to promptly pay (i) 80% of undisputed professional fees; and (ii) 100% of the undisputed expenses detailed in the monthly statement.

5. During the Eighth Interim Period, FTI P&M submitted the following monthly statements to the parties in the Interim Compensation Order:

| Period | Fees | Expenses |
|---|---|---|
| 10/1-10/31/01 | $50,048.50 | $1,864.72 |

6. Through the date of this Eighth Interim Application, FTI P&M has not been paid for the professional fees rendered nor for the expenses incurred that were included in the monthly statements for the Eighth Interim Period.

7. FTI P&M submits this Eighth Interim Application, pursuant to Section 330 and 331 of the United States Bankruptcy Code and Bankruptcy Rule 2016, for an interim

allowance for compensation for professional services rendered to the Debtors of $40,038.80, representing 80% of fees incurred, and for the reimbursement of expenses in connection therewith of $1,864.72 for the period November 1, 2001 through November 30, 2001. To date, Applicant has not been paid for the professional services rendered nor for reimbursement of expenses applicable to November.

8. During the Eighth Interim Period, the Applicant rendered professional services aggregating a total of 155.1 hours in the discharge of its duties as financial advisor and bankruptcy consultant to the Committee.

9. The Applicant believes that the interim fees applied for herein for professional services rendered in performing accounting and advisory services for the Committee in this proceeding are fair and reasonable in view of the time spent, the extent of work performed, the nature of the Debtors' capitalization structure and financial condition, the Debtors' financial accounting resources and the results obtained. Applicant has attached to this Eighth Interim Application, as Exhibit D, a complete accounting of the time expended by professionals who worked on this matter during the Eighth Interim Period. The Applicant's work during this period has been categorized into seven separate tasks, each of which is described in detail in Exhibit B. Additional task codes may be added in subsequent applications.

10. Section II below briefly discusses the history of the Company prior to its filing, issues facing the Company during the Chapter 11 period, and the major tasks performed by the Applicant during the Eighth Interim Period.

## II.   Background

1. On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. Pursuant to an Application submitted to the Court on or about May 17, 2001, and by a Court order dated June 21, 2001, FTI P&M was retained as financial advisors for the Committee, nunc pro tunc to April 20, 2001. Since its retention, FTI P&M has continuously and vigorously pursued the Committee's interests in these cases.

3. The Debtors have represented, among other things, that: (a) the Debtors engage in specialty chemicals and materials businesses, operating on a worldwide basis, with their corporate headquarters located in Columbia, Maryland; (b) The Debtors predominantly operate through two business units – Davison Chemicals and Performance Chemicals; (c) the Debtors' parent company, W.R. Grace & Co. ("Grace"), is a global holding company that conducts substantially all of its business through a direct, wholly owned subsidiary, W.R. Grace & Co. – Conn. ("Grace-Conn"); (d) Grace-Conn owns

substantially all of the assets, properties and rights of Grace in the United States and has 76 domestic subsidiaries and affiliates, 60 of which are Debtors and Debtors-in-Possession in the Chapter 11 Cases.

4.    The following summary is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit D. Rather, it is merely an attempt to highlight those areas in which services were rendered to the Committee during the Compensation Period, including (i) Financial monitoring and comparison of performance with prior periods (ii) Preparation of a report to the Committee on the Debtors' third quarter operating results (iii) Preparation of a report relating to the analysis of reserves (iv) Meetings and phone conferences with Debtors' management and counsel and with Committee counsel, and (v) Other Matters.

5.    FTI P&M's role included the preparation and communication of various financial analyses requested by the Official Committee of Unsecured Creditors' professionals in order to assist their rapid understanding of the issues facing the Debtors.

6.    For the Compensation Period, FTI P&M seeks compensation totaling $41,903.52, representing 80% of fees incurred and 100% of expenses incurred. FTI P&M expended an aggregate of 155.1 hours, substantially all of which was expended by four professionals. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task. A small staff was utilized to optimize efficiencies and avoid redundant efforts. The staff of the Debtors or their advisors have been utilized where practical and prudent.

7.    In addition, FTI P&M incurred out-of-pocket expenses in connection with the rendition of the professional services described above in the sum of $1,864.72 for which FTI P&M respectfully requests reimbursement in full. All expenses were billed at actual cost, exclusive of amortization of the cost of investment, equipment or capital outlay. Internal charges for outgoing out-of-town facsimile transmissions were billed at $1.25 per page for domestic transmissions. Photocopy charges were billed at actual cost for external copying and $.20 per page for internal copying. FTI P&M believes that these charges reflect its actual out-of-pocket costs.

8.    The disbursements and expenses have been incurred in accordance with FTI P&M's normal practice of charging clients for expenses clearly related to and required by particular matters. Such expenses were often incurred to enable FTI P&M to devote time beyond normal office hours to matters which imposed extraordinary time demands. FTI P&M has endeavored to minimize these expenses to the fullest extent possible.

9.    FTI P&M's approach is to utilize senior, experienced personnel and to encourage the Debtors to provide the staff-level support and analysis to minimize total cost. In addition, FTI P&M's per diem rates for professionals of comparable experience

are 15% to 25% lower than its competitors, the "Big-Five" accounting firms and certain other nationally-recognized specialty firms.

10.     Because FTI P&M's core staff consisted of senior professionals who performed a vast amount of the work, time spent communicating internally and reviewing the work product of junior associates was kept to a minimum. Additionally, because of the experience of FTI P&M's professionals, in many instances only one or two FTI P&M representatives attended meetings or conference calls or performed specific functions.

11.     Edwin N. Ordway, Jr., Managing Director in charge of this case, directed the activities of the FTI P&M team, calling upon his more than ten years of experience in restructuring and insolvency matters, including more than 100 cases, many as large and complex, and some larger and more complex than this matter.

## III.    Summary of Fees and Expenses Incurred

12.     To the best of the Applicant's knowledge and belief, there has been no duplication of services between the Applicant and any other accountants or consultants to the bankruptcy estate.

13.     FTI P&M's travel time policy is for professional personnel to travel outside of business hours when possible. Such time is not charged to a client unless productive work is performed during the travel period. In this engagement, non-productive travel time is not being charged to the Debtor.

14.     In providing a reimbursable service such as copying or telephone, the Applicant does not make a profit on that service. In charging for a particular service, FTI P&M does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay. In seeking reimbursement for a service which the Applicant justifiably purchased or contracted for from a third party, FTI P&M requests reimbursement only for the amount billed to FTI P&M by such third party vendor and paid by FTI P&M to that vendor.

15.     FTI P&M's policy with respect to word processing and document preparation and handling services provided by FTI P&M employees is to bill clients by the hour for such time, but only if the employees' time is clearly and exclusively devoted to work performed for that particular client, such as for the preparation, collation and binding of a report for a client. Such services are billed to the Debtor at a rate commensurate with that which would be charged by a third party provider such as a temporaries agency.

16.     Annexed hereto as Exhibit B is a more comprehensive summary of the services performed by the Applicant during the Eighth Interim Period at the direction of the Committee and its Counsel.

17.    Annexed hereto as Exhibit C is a summary of fees by professional and by task during the Eighth Interim Period.

18.    Annexed hereto as Exhibit D are detailed descriptions of the time spent by each professional during the Eighth Interim Period.

19.    Pursuant to Rule 2016, FTI P&M states that no compensation to be received in this proceeding will be shared with any person or entity outside of FTI P&M and that no compensation has been paid or promised to the Applicant in connection with the compensation sought in this Application except as disclosed herein. No prior application has been made to this or any other Court for the relief requested herein for the Compensation Period, nor has any payment been received by FTI P&M on account of its accounting and financial advisory services rendered or on account of the out-of-pocket expenses incurred in connection therewith.

20.    As stated in the Affidavit of Edwin N. Ordway, Jr. annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

21.    The Debtors will give notice of the relief requested herein and of the relief requested by the other professionals in their respective applications for allowance of compensation by serving notice of this application upon all parties that have requested notice in these cases, and FTI P&M has personally served copies of the Application with exhibits to the Debtors and on the United States Trustee.

22.    WHEREFORE, the Applicant respectfully requests that this Court enter an order:

    a. approving the allowance of compensation for professional services rendered to the Committee during the period from November 1, 2001 through and including November 30, 2001 in the amount of $50,048.50;

    b. approving the reimbursement of FTI P&M's out-of-pocket expenses incurred in connection with the rendering of such services during the period from November 1, 2001 through and including November 30, 2001 in the amount of $1,864.72; and

-7-

    c.  authorizing the Debtor to pay as interim compensation to FTI P&M 80% of the amount of the professional services rendered and 100% of the expenses incurred by FTI P&M during the period from November 1, 2001 through and including November 30, 2001, subject to final payment of the full amount; and

    d.  granting such other and further relief as this Court may deem just and proper.

Date: _Dec. 28 2001_

                                            FTI Policano & Manzo

                                            By

                                                Edwin N. Ordway, Jr.
                                        FTI Policano & Manzo
                                        Park 80 West, Plaza I
                                        Saddle Brook, NJ  07663
                                        (201) 843-4900

EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W.R. GRACE & CO., et al.** | ) | **Case No. 01-01139 (JJF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

## AFFIDAVIT

STATE OF NEW JERSEY  )
                      ) ss:
COUNTY OF BERGEN      )

EDWIN N. ORDWAY, JR., being duly sworn, deposes and says:

1.        I am a Managing Director of FTI Policano & Manzo, ("FTI P&M"), an operating unit of FTI Consulting, Inc. ("FTI"), and I am duly authorized to make this affidavit on behalf of FTI P&M.  FTI P&M provides financial consulting services for restructuring matters and has its principal office at Park 80 West Plaza I, Saddle Brook, New Jersey.  FTI P&M has provided financial consulting services to and has rendered professional services on behalf of the Official Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co., and sixty-one of its domestic subsidiaries and affiliates which are debtors and debtors-in-possession before this Court.

2.        This affidavit is submitted pursuant to Bankruptcy Rule 2016(a) in support of FTI P&M's Eighth monthly application for an interim allowance of compensation and for the reimbursement of expenses for services rendered during the

period from November 1, 2001 through and including November 30, 2001 in the aggregate amount of $41,903.52.

3.      All services for which compensation is requested by FTI P&M were professional services performed for and on behalf of the Committee from November 1, 2001 through and including November 30, 2001 and not on behalf of any other person.

4.      In accordance with Title 18 U.S.C. Section 155, neither I nor any employee of my firm has entered into any agreement, express or implied, with any other party-in-interest for the purpose of fixing the amount of any of the fees or other compensation to be allowed out of or paid from the Debtors' assets.

5.      In accordance with Section 504 of the Bankruptcy Code, no agreement or understanding exists between me, my firm, or any employee thereof, on the one hand, and any other person, on the other hand, for division of such compensation as my firm may receive for services rendered in connection with these cases, nor will any division of fees prohibited by Section 504 of the Bankruptcy Code be made by me or any employee of my firm.

                                                    _____
                                                    EDWIN N. ORDWAY, JR.

Sworn to before me this
27th day of December, 2001

_____
Notary Public

⌐      PATRICIA E. FOOSE
     NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES AUG. 6, 2008

-2-

Exhibit B

**SUMMARY OF THE SERVICES PERFORMED BY FTI POLICANO & MANZO
DURING THE EIGHTH INTERIM PERIOD**

**Task Code 1 – Preparation for and Participation at Meetings with the Chairman
and Case Professionals and/or Creditors Committee Meetings or Conference Calls**
(8.3 Hours)

We presented an overview of our observations on operating results for the third quarter in
a conference call with the Committee.  Additionally, P&M had phone conversations with
individual Committee members to discuss and review our observations.

**Task Code 2 – Issues Related to Chapter 11 Operating Issues, Such As Critical
Vendor Motions, Reclamation Claims, Executory Contracts and Similar Issues** (7.1
Hours)

During the Eighth Interim Period. we discussed with and provided our advice to counsel
regarding various motions, including the motion to dismiss the Chapter 11 case that was
brought by the asbestos property damage claimants' committee.

**Task Code 3 – Preparation of Monitoring and Operating Results Reports** (52.5
Hours)

During this period, we began the preparation of a report on the Debtors' third quarter
operating results, and prepared numerous supporting schedules for inclusion in the report.

**Task Code 4 – Analysis of Financial Data, Including Business Plan, Projections,
Forecasts, Cash Flow Forecasts and Historical Information** (64.8  Hours)

FTI P&M obtained, analyzed and discussed with Debtor management and professionals
historical and current operating results by business segment, and prepared numerous
analyses of key performance indicators for each business segment.  FTI P&M monitored,
analyzed and forecasted the Debtors' cash position and debt capacity.  FTI P&M held
several phone conversations with Debtors' management and financial advisors to discuss
third quarter operating results and various other business matters.

**Task Code 5 – Monthly Statement, Retention and Fee Application Preparation** (18.0 Hours)

This category represents the time expended during the Eighth Interim Period in preparing FTI P&M's Seventh Interim Application for Allowance of Compensation and Reimbursement of Expenses.

**Task Code 6 – Grace competitor profile analysis and analysis of other asbestos related Chapter 11 filings** (4.4 Hours)

FTI P&M monitored economic and industrial peer group projections and industry and trade reports relating to current asbestos litigation.

**Task Code 7 – Analysis and Evaluation of Proposed Corporate Acquisitions by the Debtor and Their Non-Filing Affiliates**

No activity took place in this category during the Eighth Interim Period.

**Exhibit C**
**Page 1 of 2**

### W.R. GRACE & CO. ET. AL.
Summary of Fees by Professional
For the period November 1, 2001 through November 30, 2001

| | Total Hours November | Billing Rate | Amount |
|---|---|---|---|
| E. Ordway | 3.2 | $475 | $ 1,520.00 |
| S. Cunningham | 27.4 | $405 | 11,097.00 |
| J. Schwendeman | 3.0 | $325 | 975.00 |
| C. MacCallum | 90.8 | $295 | 26,786.00 |
| C. Whitney | 30.7 | $315 | 9,670.50 |
| | 155.1 | | $ 50,048.50 |

Exhibit C
Page 2 of 2

W.R. GRACE & CO. ET. AL.
Summary of Fees by Professional
For the period November 1, 2001 through November 30, 2001

| TASK CODE | TASK | E. Ordway | S. Cunningham | J. Schwendeman | C. MacCallum | C. Whitney | TOTAL |
|---|---|---|---|---|---|---|---|
| 1 | Meetings of Creditors | 0.9 | 1.5 | 0.0 | 4.9 | 1.0 | 8.3 |
| 2 | Chapter 11 Operating Issues | 0.7 | 6.4 | 0.0 | 0.0 | 0.0 | 7.1 |
| 3 | Operating Results Report Preparation | 0.9 | 5.4 | 0.0 | 31.5 | 14.7 | 52.5 |
| 4 | Business Analyses | 0.0 | 12.7 | 0.0 | 38.1 | 14.0 | 64.8 |
| 5 | Fee Application Preparation | 0.7 | 0.0 | 0.0 | 16.3 | 1.0 | 18.0 |
| 6 | Competitor Profile Analysis | 0.0 | 1.4 | 3.0 | 0.0 | 0.0 | 4.4 |
| 7 | Evaluation of Potential Acquisitions | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| | TOTAL | 3.2 | 27.4 | 3.0 | 90.8 | 30.7 | 155.1 |

**Exhibit D**

## W.R. GRACE & CO. ET. AL.

Professional Services Rendered by Edwin N. Ordway, Jr.

For the period November 1, 2001 through November 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 15-Nov | 2 | Read and analyzed recent court motions pertaining to Zonolite claimants and Libby, MT settlement proposal. | 0.7 |
| 19-Nov | 3 | Analyzed September financial data and summarized key issues for further analysis and investigation. | 0.9 |
| 27-Nov | 1 | Participated in conference call with unsecured committee. | 0.9 |
| | 5 | Prepared fee application. | 0.7 |
| | | **Total Hours - November** | 3.2 |

**Exhibit D**

W.R. GRACE & CO. ET. AL.

Professional Services Rendered by Sean Cunningham

For the period November 1, 2001 through November 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 1-Nov | 6 | Reviewed proposed tax relief legislation re: asbestos related claims. | 1.0 |
|  | 6 | Reviewed Fresenius analyst's update. | 0.4 |
| 8-Nov | 4 | Reviewed September financial reporting package in preparation for Nov. 9 call with Grace management. | 4.4 |
| 9-Nov | 4 | Discussed with P&M staff issues raised on management call pertaining to Libby, MT-related reserves and Q3 charges related to EPA settlement. | 1.3 |
| 15-Nov | 2 | Reviewed Zonolite claimants' motion to dismiss Grace bankruptcy case. | 3.9 |
|  | 2 | Discussed Zonolite claimants' motion with counsel. | 2.5 |
| 16-Nov | 4 | Reviewed Company 10-Q filing for the period ended September 30. | 1.3 |
| 19-Nov | 4 | Reviewed list of questions pertaining to September financial performance. Requested additional data and certain analyses. | 4.5 |
| 20-Nov | 4 | Participated in conference call with management to review September issues and questions. | 1.3 |
|  | 3 | Prepared information for quarterly financial update to unsecured committee. | 1.1 |
| 26-Nov | 1 | Prepared discussion document in preparation for conference call update with unsecured committee. | 0.3 |
|  | 1 | Provided workplan update to committee. | 0.3 |
| 27-Nov | 1 | Participated in conference call with unsecured committee and counsel. | 0.9 |
| 29-Nov | 3 | Prepared analysis of September financial performance compared to prior year for inclusion in quarterly update to unsecured committee. | 1.0 |
| 30-Nov | 3 | Prepared analysis of September financial performance compared to prior year for inclusion in quarterly update to unsecured committee. | 3.3 |
|  |  | **Total Hours - November** | 27.4 |

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Jeffrey Schwendeman
For the period November 1, 2001 through November 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 11-Nov | 6 | Analyzed recent news and industry trade reports relating to recent asbestos litigation negotiations. | 1.3 |
| | 6 | Analyzed economic and peer group projections of Company industry segments re: intermediate and long-term industry growth assumptions. | 1.7 |
| | | **Total Hours - November** | 3.0 |

**Exhibit D**

## W.R. GRACE & CO. ET. AL.

Professional Services Rendered by Craig MacCallum

For the period November 1, 2001 through November 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 7-Nov | 4 | Performed analysis of Debtors' third quarter operating results. | 1.5 |
| 8-Nov | 4 | Prepared list of questions pertaining to third quarter financial report prepared by the Company. | 1.5 |
| | 4 | Performed analysis of Debtors' third quarter operating results. | 3.0 |
| 9-Nov | 4 | Reviewed Debtors' third quarter operating results and question lists in preparation for conference call with Debtor management. | 2.2 |
| | 4 | Participated in conference call with Debtor management to discuss third quarter performance. | 0.8 |
| | 5 | Reviewed status of outstanding fee applications and court filings relating to billings. | 0.8 |
| 12-Nov | 3 | Prepared schedules for inclusion in third quarter financial update to unsecured committee. | 3.0 |
| 13-Nov | 4 | Prepared analytical file of comparative monthly, quarterly and year-to-date data from Debtors' financial package. | 3.0 |
| 14-Nov | 4 | Prepared list of questions pertaining to September financial performance. Forwarded to Company in advance of conference call with management. | 4.5 |
| | 4 | Prepared analytical file of comparative monthly, quarterly and year-to-date data from Debtor's financial package. | 2.0 |
| 15-Nov | 5 | Prepared fee application for the period 10/1-10/31/01. | 2.1 |
| | 4 | Read and analyzed documentation relating to EPA Libby, MT lawsuit. | 2.3 |
| | 4 | Prepared analytical file of comparative monthly, quarterly and year-to-date data from Debtors' financial package. | 1.1 |
| 16-Nov | 4 | Reviewed Debtors' third quarter 10-Q filing. | 1.8 |
| | 4 | Prepared analytical file of comparative monthly, quarterly and year-to-date data from Debtors' financial package. | 4.2 |

| | | | |
|---|---|---|---|
| 19-Nov | 4 | Discussed list of questions pertaining to September financial performance with S. Cunningham. Followed up on open items. | 2.3 |
| | 4 | Prepared analytical file of comparative monthly, quarterly and year-to-date data from Debtors' financial package. | 3.7 |
| 20-Nov | 4 | Reviewed third quarter financial results and questions pertaining to September financial performance in preparation for conference call. | 1.6 |
| | 4 | Participated in conference call with management to review September issues and questions. | 1.4 |
| | 4 | Prepared reference notes following conference call. | 0.5 |
| | 3 | Prepared schedules for inclusion in third quarter financial update. | 6.5 |
| | 5 | Continued with preparation of fee application and supporting schedules for the period 10/1-10/31/01. | 4.5 |
| 21-Nov | 3 | Prepared schedules for inclusion in third quarter financial update. | 3.5 |
| | 1 | Prepared discussion document in preparation for conference call update with unsecured committee. | 2.0 |
| | 3 | Continued with drafting of third quarter financial update to unsecured committee and preparation of supporting schedules. | 2.5 |
| 26-Nov | 5 | Continued with preparation of fee application and supporting schedules for the period 10/1-10/31/01. | 3.5 |
| | 3 | Continued with drafting of third quarter financial update to unsecured committee and preparation of supporting schedules. | 6.5 |
| 27-Nov | 1 | Collected and prepared financial information for inclusion in discussion document for conference call update with unsecured committee. | 1.5 |
| | 1 | Edited discussion document in preparation for conference call update with unsecured committee. | 0.5 |
| | 1 | Participated in conference call with unsecured committee and counsel. | 0.9 |
| | 5 | Continued with preparation of fee application and supporting schedules for the period 10/1-10/31/01. | 2.1 |
| | 3 | Continued with drafting of third quarter financial update to unsecured committee and preparation of supporting schedules. | 4.0 |
| 28-Nov | 3 | Continued with drafting of third quarter financial update to unsecured committee and preparation of supporting schedules. | 4.8 |
| | 3 | Coordinated distribution of copies of Debtors' monthly operating reports to committee members. | 0.7 |

| 5 | Completed preparation of fee application and supporting schedules for the period 10/1-10/31/01 and forwarded to counsel. | 2.5 |
| 4 | Reviewed Debtors' listing of outstanding state and local tax assessments. | 0.7 |
| 5 | Discussed status of fee application issues with Delaware counsel's and Stroock & Stroock paralegals. | 0.8 |
| | **Total Hours - November** | 90.8 |

**Exhibit D**

# W.R. GRACE & CO. ET. AL.
## Professional Services Rendered by Christy Whitney
### For the period November 1, 2001 through November 30, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 7-Nov | 4 | Prepared summary of tax information received from the Company. | 2.5 |
| | 4 | Participated in phone call with counsel to discuss tax information summary. | 0.5 |
| 8-Nov | 4 | Performed analysis of 3rd quarter performance. | 3.2 |
| 9-Nov | 4 | Prepared list of questions pertaining to 3rd quarter performance and the 3rd quarter financial report prepared by the Company. | 2.0 |
| | 4 | Participated in conference call with Debtor management to discuss 3rd quarter performance. | 0.5 |
| 13-Nov | 5 | Prepared data for October fee application. | 1.0 |
| 14-Nov | 4 | Updated 3rd quarter follow-up questions and review of final list for distribution to the Company. | 1.5 |
| 19-Nov | 4 | Reviewed legacy liability presentation prepared by the Debtor. | 2.0 |
| | 3 | Prepared legacy liability write-up for 3rd quarter Bank Group update. | 6.0 |
| 20-Nov | 4 | Participated in conference call with Debtor management to discuss list of 3rd quarter follow-up questions. | 1.5 |
| | 4 | Reviewed and distributed memo to Blackstone regarding status of information requests. | 0.3 |
| 21-Nov | 3 | Prepared legacy liability write-up for 3rd quarter Bank Group update. | 4.2 |
| 27-Nov | 1 | Reviewed data to prepare for unsecured committee conference call. | 0.1 |
| | 1 | Participated in unsecured committee conference call. | 0.9 |
| 29-Nov | 3 | Prepared legacy liability write-up for 3rd quarter Bank Group update. | 2.5 |
| 30-Nov | 3 | Prepared legacy liability write-up for 3rd quarter Bank Group update. | 2.0 |
| | | **Total Hours - November** | 30.7 |

**Exhibit E**
**Page 1 of 2**

## W.R. GRACE & CO. ET. AL.
Summary of Expenses by Type of Expense
For the period November 1, 2001 through November 30, 2001

| | | |
|---|---|---:|
| Copies: | | |
| Internal | $ | 1,286.20 |
| External | | - |
| Telecommunications: | | |
| Toll Charges | | - |
| Facsimile Charges | | 3.75 |
| Postage, Federal Express | | 253.27 |
| Travel Expenses: | | |
| Transportation, lodging, tolls and parking | | 119.00 |
| Meals | | - |
| Outside Services | | - |
| Word Processing Services | | 52.50 |
| Document Preparation and Handling Services | | 150.00 |
| Total Expenses | $ | 1,864.72 |

## W.R. GRACE & CO. ET. AL.
### Detail of Expenses by Type of Expense
For the period November 1, 2001 through November 30, 2001

Copies, Internal   Total for Month   6,431   pages @ $0.20/page:   $   1,286.20

Facsimile Charges:   3   pages @ $1.25/page:   3.75

Toll Charges:   -

Postage, Federal Express:   29-Nov   Airborne   253.27

Transportation, lodging, tolls and parking:
S. Cunningham   10-Oct   Train fare   119.00

Meals:   -

| Word Processing Services: | Hours | | Rate | | |
|---|---|---|---|---|---|
| 18-Nov | 0.20 | | $75.00 | 15.00 | |
| 25-Nov | 0.20 | | $75.00 | 15.00 | |
| 30-Nov | 0.30 | | $75.00 | 22.50 | |
| | | Subtotal | | | 52.50 |

| Document Preparation and Handling Services: | Hours | | Rate | | |
|---|---|---|---|---|---|
| 11-Nov | 1.00 | | $75.00 | 75.00 | |
| 18-Nov | 0.50 | | $75.00 | 37.50 | |
| 29-Nov | 0.50 | | $75.00 | 37.50 | |
| | | Subtotal | | | 150.00 |

Total Expenses   $   1,864.72