## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                          Chapter 11

**W.R. Grace & Co., et al.**                    Case No. 01-01139 (JKF)

                  Debtors.                      Jointly Administered

**EIGHTH APPLICATION OF STROOCK & STROOCK & LAVAN LLP
FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
FROM NOVEMBER 1, 2001 THROUGH NOVEMBER 30, 2001**

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **November 1, 2001 – November 30, 2001** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$136,368.50** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$8,847.34 (of which $5,431.10 relates to the Committee's Asbestos issues expert)** |

This is an: ☒ interim ☐ final application

The total time expended for fee application preparation is approximately 13.50 hours and the corresponding compensation requested is approximately $4,307.50.[1]

This is the eighth application filed

---

[1] This is Stroock's Eighth Fee Application. Time expended for the preparation of this Fee Application will be reflected in the next Fee Application.

**Local Form 102 (Fee Application/Attachment A, pg. 1)**

**Attachment A**

**Monthly Interim Fee Applications**

| | | Requested | | Approved for Payment | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| May 30, 2001 | 4/12/01-4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 | 5/1/01 -- 5/31/01 | $139,928.75 | $6,884.73 | $111.943.00 | $6,884.73 |
| July 30, 2001 | 6/1/01 -- 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| August 31, 2001 | 7/1/01-7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 | 9/1/01 -- 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 | 10/1/01 -- 10/31/01 | $101,069.00 | $5,562.09 | $80,855.20 | $4,449.67 |

**Quarterly Fee Applications**

| | | Requested | | Approved | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| July 30, 2001 | 4/12/01-6/30/01 | $369,873.75 | $19,318.00 | As of the date of this Application the hearing to approve compensation has not been determined | |
| Nov. 1, 2001 | 7/01/01 -- 09/30/01 | $204,923.50 | $15,105.57 | As of the date of this Application the hearing to approve compensation has not been determined | |

**Local Form 102 (Fee Application/Attachment A, pg. 1)**

| Summary of Hours | Hours | Rate | Amount | # of Yrs. in Position |
|---|---|---|---|---|
| **W R GRACE & COMPANY** | | | | |
| **ATTACHMENT B** | | | | |
| **THROUGH NOVEMBER 30, 2001** | | | | |
| **PARTNERS** | | | | |
| Greenberg, Mayer | 23.9 | 500 | 11,950.00 | **2** |
| Kruger, Lewis | 10.7 | 650 | 6,955.00 | **36** |
| Levy, Mark | 12.0 | 615 | 7,380.00 | **27** |
| Pasquale, Kenneth | 53.6 | 475 | 25,460.00 | **2** |
| Raskin, Robert | 26.4 | 550 | 14,520.00 | **8** |
| | | | | |
| **ASSOCIATES** | | | | |
| Berg, Madelaine | 10.2 | 415 | 4,233.00 | **21** |
| Brandes, Ronnie H. | 30.3 | 185 | 5,605.50 | **1** |
| Eichler, Mark | 0.5 | 350 | 175.00 | **3** |
| Krieger, Arlene | 129.5 | 425 | 55,037.50 | **17** |
| Sasson, Moshe | 16.0 | 360 | 5,760.00 | **7** |
| | | | | |
| **PARAPROFESSIONALS** | | | | |
| Defreitas, Vaughn | 32.3 | 100 | 3,230.00 | **10** |
| Mohamed, David | 0.3 | 100 | 30.00 | **6** |
| Serrette, Rosemarie | 11.2 | 150 | 1,680.00 | **13** |
| | | | | |
| **Total** | **356.9** | | **$ 142,016.00** | |
| | | | | |
| **Less 50% Travel Time** | | | (5,647.50) | |
| | | | | |
| **Total Billed** | | | **$ 136,368.50** | |
| | | | | |
| **Blended Rate** | | **397.9** | | |

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | **Chapter 11** |
| W. R. GRACE & CO., <u>et al.</u>[1] ) | **Case No. 01-01139 (JKF)** |
| ) | |
| Debtors. ) | **Jointly Administered** |

**EIGHTH FEE APPLICATION BY STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., <u>ET AL.</u>, FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING <u>THE PERIOD FROM NOVEMBER 1, 2001 THROUGH NOVEMBER 30, 2001</u>**

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

accordance with the Administrative Fee Order (defined below) for an eighth interim allowance

of compensation for services rendered and for reimbursement of expenses incurred in connection

therewith, respectfully represents as follows:

## I.    INTRODUCTION

1.    By this application, Stroock seeks (i) an interim allowance of compensation for

the professional services rendered by Stroock as counsel for the Committee for the period from

November 1, 2001 through November 30, 2001 (the "Eighth Monthly Period") in the aggregate

amount of $136,368.50, representing 313.10 hours of professional services and 43.8 hours of

paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by

Stroock during the Eighth Monthly Period in connection with the rendition of such professional

services and paraprofessional services in the aggregate amount of $3,416.24 as well as the fees

and expenses of the asbestos issues expert employed by the Committee pursuant to the Court's

June 22, 2001 Order Authorizing the Retention of Experts in the aggregate amount of $5,431.10.

2.    Venue of this proceeding and this application is proper in this district pursuant to

28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C.

§§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

## II.    BACKGROUND

3.    On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary

petitions for reorganization under chapter 11 of the Bankruptcy Code and have continued in the

management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the

Bankruptcy Code.  Pursuant to an order of the Court, the Debtors' Chapter 11 cases have been

procedurally consolidated and are being jointly administered.

4.    The Debtors operate a world-wide specialty chemicals and materials business and

employ approximately 3860 full and part-time employees.  On a consolidated basis, for the fiscal

2

year 2000, Grace reported a net loss of $89.7 million[2] from $1.59 billion in net revenues.  The

Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales

are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor

subsidiaries and affiliates.

5.      On April 12, 2001, the United States Trustee formed the Committee.  During the

first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its

counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter

11 cases.  The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP

("DM&H") as its local Delaware counsel.

6.      The United States Trustee also appointed two separate official committees to

represent the interests of claimants asserting asbestos-related personal injury claims and

asbestos-related property damage claims against the Debtors (collectively, the "Asbestos Claim

Committees").  On June 18, 2001, the United States Trustee appointed an official committee to

represent the interests of equity security holders of the Debtors.

7.      By application dated May 1, 2001, Stroock sought Court approval for its retention

as counsel to the Committee nunc pro tunc to April 12, 2001.  The Court signed an order

approving Stroock's retention as counsel to the Committee on May 30, 2001.

8.      This is the eighth monthly application Stroock has filed with the Court for an

allowance of compensation and reimbursement of expenses for services rendered to the

Committee.  This application is submitted pursuant to the terms of the Administrative Order

Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement

---

[2]    The Debtors' pleadings further report that this net loss results in part from a $294.0 million asbestos-related
charge to earning recorded in the forth quarter of 2000.

3

of Expenses for Professionals and Official Committee Members, approved by the Court on May

3, 2001 (the "Administrative Fee Order").

9.      In accordance with the procedures established by the Administrative Fee Order,

Stroock has received payment from the Debtors in the aggregate amount of $494,171.37

representing 80% of the fees and 100% of the expenses sought in each of the first six monthly

applications covering the period from April 12, 2001 through September 30, 2001.  Other than

those payments, applicant has received no payment and no promises for payment from any

source for services rendered in connection with these cases.  There is no agreement or

understanding between the Applicant and any other person (other than members of Stroock) for

the sharing of compensation to be received for the services rendered in these cases.

10.      As stated in the Affidavit of Lewis Kruger, Esq. annexed hereto as Exhibit "A,"

all of the services for which interim compensation is sought herein were rendered for and on

behalf of the Committee solely in connection with these cases.

### III.    SUMMARY OF SERVICES RENDERED

11.      Since being retained by the Committee, Stroock has rendered professional

services to the Committee as requested and as necessary and appropriate in furtherance of the

interests of the unsecured creditors of the Debtors' estates.  The variety and complexity of these

cases and the need to act or respond on an expedited basis in furtherance of the Committee's

needs have required the expenditure of substantial time by personnel from several legal

disciplines, on an as-needed basis, including in certain instances, working into the evening and

on weekends.

12.      Stroock maintains written records of the time expended by attorneys and

paraprofessionals in the rendition of their professional services to the Committee.  Such time

records were made contemporaneously with the rendition of services by the person rendering

4

such services and in the ordinary course of Stroock's practice, and are presented in compliance with Delaware Local Rule 2016-2(d) amended effective as of February 1, 2001. A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Eighth Monthly Period is annexed hereto as Exhibit "B". In addition, Exhibit "C" hereto contains a summary of the hours expended by each of the attorneys and paraprofessionals during the Eighth Monthly Period, their normal hourly rates, and the value of their services.

13.     Stroock also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are also available for inspection. A schedule of the categories of expenses and amounts for which payment is requested is annexed hereto as Exhibit "D". Also included within Exhibit "D" is an itemization of each expense incurred within each category.

14.     Stroock respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

15.     The following summary of the services rendered during the Eighth Monthly Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit "B". Rather, it is merely an attempt to highlight certain of these areas in which services were rendered to the Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

5

### (i)    Case Administration/General – Category 0002

16.    During the Eighth Monthly Period, Stroock continued to closely monitor the items

on the Court's docket for these cases to ensure that the Committee was fully informed about all

pending matters and that Stroock would be ready to timely respond on behalf of the Committee,

as might be applicable, continued to engage Debtors' counsel on an on-going basis with respect

to pending matters and information requests, prepared revised critical date calendars, reviewed

the agenda letters issued in respect of the hearings scheduled before Judge Farnan this period,

and responded to creditor inquiries.

17.    In addition, during the latter portion of this compensation period, Stroock was

informed that these Chapter 11 Cases were being reassigned to Judge Alfred Wolin.  Stroock

thereafter prepared memoranda to the Committee informing it of the reassignment of these cases

and other relevant information then known to it.  Stroock has expended 53.6 hours on this

category for a fee of $12,332.50.

### (ii)    Fee Application/Monthly Billing Reports -- Category 0003

18.    During the Eighth Monthly Period, Stroock prepared its Seventh Fee Application

including a narrative section summarizing the services rendered during that period by Stroock

and compiled and attached expense schedules all of which were filed with the Court.

19.    Stroock has expended 13.5 hours on this category for a fee of $4,307.50.

### (iii)    Asbestos Litigation – Category 0005

20.    The Debtors state that their Chapter 11 filings were precipitated by a substantial

and unexpected increase in the number of asbestos cases filed against the Debtors, as well as the

recent commencement of cases asserting new theories of asbestos-related liability against them.

Given the fundamental importance of the asbestos claims-related matters to these cases, Stroock

6

attorneys continued, during the Eighth Monthly Period, to thoroughly review the various

pleadings filed in these Chapter 11 cases, including those which may impact on the conduct of

related asbestos actions against non-debtor third parties, and those which may impact upon the

process for, and determination of, the amount and validity of asbestos-related claims against the

Debtors' estates.

21.    As reported in prior monthly fee applications, Stroock reviewed the extensive

motion, memorandum of law and related exhibits previously filed by the Debtors seeking entry

of (i) a case management order providing for the establishment of a proposed schedule and

process to determine the validity of asbestos claims against the Debtors' estates, and (ii) an order

providing for the establishment of a bar date and approving special proof of claim and notice

procedures to be utilized in these cases, and Stroock prepared and filed a response on behalf of

the Committee to the Debtors' case management/bar date pleadings, reviewed the responses filed

by each of the Asbestos Claim Committees and the equity committee and continued to engage

the Debtors in discussions over modifying the original form of the bar date documentation to

address the Committee's concerns.

22.    During the Eighth Monthly Period, Stroock reviewed the Debtors' extensive

omnibus reply brief in response to the pleadings filed by the Asbestos Claim Committees and

other asbestos claimants in opposition to the Debtors' proposed case management/bar date

process, the amended forms of bar date documentation annexed thereto, prepared for and

attended the depositions of the notice experts for the Debtors and the Asbestos PD Committee,

respectively, who were expected to testify at the scheduled case management/bar date process

hearing scheduled before the Court, and informed the Debtors of the Committee's continuing

concerns with the amended bar date documentation.

7

23.    In addition, during the Eighth Monthly Period, Stroock began to review the

motion to dismiss the Chapter 11 Cases filed by the Zonolite Attic Insulation Claimants, case law

relevant to the motion, and formulate the Committee's response to the motion. Stroock has

expended 72.2 hours on this category for a fee of $31,950.50.

### (iv)    Retention of Professionals - Category 0006

24.    As reported in the prior monthly application, the Asbestos Claim Committees

filed a joint motion seeking to retain two law firms as special counsel in connection with their

proposed prosecution of certain fraudulent transfer claims on behalf of the estates, and the

Asbestos PI Committee filed an application seeking to retain Professor Elizabeth Warren as

special bankruptcy consultant to Caplin & Drysdale, the firm retained at the outset by the PI

Committee to represent it.  The Asbestos PI Committee's Application followed the disclosure by

Caplin & Drysdale that Ms. Warren had become a consultant to their firm.  Both of these

retention applications required consideration and response by the Committee.

25.    Stroock reviewed the applications and, in the case of the proposed retention of

Ms. Warren, the supplemental affidavit filed by Elihu Inselbuch and the Debtors' response to the

Inselbuch Affidavit, prepared memoranda thereon for the Committee, reviewed the legal and

factual issues raised thereby and, prior to the close of the prior monthly period prepared and filed

an objection on behalf of the Committee to the Asbestos Claim Committees' special counsel

retention motion.

26.    During the Eighth Monthly Period, Stroock completed preparation of an objection

on behalf of the Committee to the Asbestos PI Committee's application to retain Ms. Warren,

and reviewed the objections filed by the US Trustee and the Debtors to the proposed retention.

In addition, Stroock reviewed and prepared memoranda for the Committee in respect of the

8

applications seeking to retain the Klett Rooney firm as local counsel for the equity committee and the Steptoe & Johnson firm as special tax litigation counsel for the Debtors. Stroock has expended 9.5 hours on this category for a fee of $4,245.00.

### (v)   Creditors Committee Meetings/Conferences - Category 0007

27.    During the Eighth Monthly Period, Stroock communicated with the members of the full Committee through numerous memoranda and telephone conversations including a teleconference meeting. In order to keep the Committee fully informed of all of the pending matters in these cases, and thus enable the Committee to take informed positions on issues, Stroock thoroughly reviewed and summarized each of the motions filed by the Debtors and other parties in interest in these cases, raised issues the Committee should be aware of, and made recommendations to the Committee concerning appropriate actions to be taken with regard to the motions, communicated with members of the Committee regarding the positions to be taken, engaged counsel for the Debtors, and other parties and movants, as applicable, with the Committee's questions and concerns, and negotiated whenever and to the extent possible consensual resolutions of outstanding issues and acceptable forms of proposed orders.

28.    Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues which have already arisen in these cases and to monitor closely the Debtors' management of these estates.

29.    Stroock has expended 15.7 hours on this category for a fee of $6,647.50.

### (vi)   Court Hearings – Category 0008

30.    The Court was scheduled to hold two hearings during the Eighth Monthly Period; the first to hear argument on, among other matters, the pending joint motions by the Asbestos

9

Claim Committees for authority to prosecute fraudulent transfer litigation and retain special

counsel in connection therewith, and the objections filed thereto by the Committee and the

Debtors, and the second to hear argument on the Debtors' pending case management/bar date

process and supporting and opposing positions taken by various parties in these Chapter 11

Cases.

31.     Stroock reviewed the relevant pleadings and deposition transcripts in preparation

for the hearings, which, in each instance, were cancelled just prior to the commencement of the

hearings.  Stroock expended 23.6 hours on this category for a fee of $11,785.00.

### (vii)    Analysis of Pre-Petition Transactions – Category 0013

32.     During the Eighth Monthly Period, Stroock reviewed certain documentation

relating to W.R. Grace's 1996 transaction with Fresenius National Medical and the 1998

transaction with Sealed Air Corporation.  Stroock has expended 9.3 hours on this category for a

fee of $3,952.50.

### (viii)    Tax Issues – Category 0018

33.     As reported in prior applications, representatives of Stroock and FTI P&M met

and prepared a comprehensive tax information request, which was thereafter forwarded to the

Debtors.  Stroock had received certain of the tax-information requested, and with respect to such

items Stroock reviewed the information, and engaged the Debtors and FTI P&M further with

respect to the requested information.  During the Eighth Monthly Period, Stroock continued to

review the tax-information which was received, continued to engage the Debtors in discussion to

obtain clarification of certain of the materials received and obtain the as yet not forwarded tax

information.

34.     In addition, during the Eighth Monthly Period, Stroock completed preparation of a memorandum to the Committee discussing the substance and status of legislation pending in the United States Congress which would, if enacted, amend certain provisions of the Internal Revenue Code ("IRC") to provide some tax relief to companies with asbestos-related claims. Also during this period, Stroock completed its review of IRC provisions and case law relevant to analyzing the deductibility of a $2.75 million cash payment (the "SEP Payment") the Debtors would be obligated to make in connection with the Debtors entry into a consent decree with the Environmental Protection Agency settling pending litigation involving property in Libby, Montana (the "Libby Access Action"). As reported in the prior monthly application, one of the reasons set forth by the Debtors in their motion seeking authority for the proposed settlement was that the SEP Payment would be tax deductible.

35.     Further, during the Eighth Monthly Period, a motion was filed by the United States of America seeking to have the automatic stay lifted so that it could proceed to prosecute a $21.8 million counterclaim filed on behalf the Internal Revenue Service against CCHP, Inc., one of the Debtors, currently pending in the US Court of Claims. In order to be able to apprise the Committee with respect to the legal and factual issues in respect of the CCHP litigation, as well as advise the Committee with respect to the lift stay motion, Stroock discussed the motion and the underlying tax litigation with the Debtors and counsel for the Department of Justice, obtained and then reviewed pleadings and other documentation related to the Debtors and the USA's position in respect of the litigation, reviewed legal issues raised thereby and began to prepare a comprehensive memorandum for the Committee discussing the factual and legal issues underlying the CCHP litigation and the lift stay motion. Stroock has expended 91.1 hours on this category for a fee of $35,605.50.

11

### (ix) **Environmental Issues – Category 0024**

36.      During the Eighth Monthly Period, Stroock continued its review of the Debtors'

motion seeking authorization to settle the Libby Access Action, prepared a comprehensive

memorandum for the Committee discussing the motion and the terms of the Consent Decree,

engaged Debtors' counsel to obtain additional information to evaluate the settlement and

continued to assess the relevant legal issues.

37.      In addition, during the Eighth Monthly Period, Stroock obtained and reviewed

information from the Debtors with respect to the pending cost recovery action commenced by the

USA on behalf of the EPA with respect to property in Libby, Montana, and began to review case

law with respect to the treatment of environmental claims in bankruptcy.  Stroock has expended

47.7 hours on this category for a fee of $19,895.00.

### (x) **Travel – Category 0025**

**38.**      As already reported, the Court had scheduled two hearings in Delaware during the

Eighth Monthly Period.  Stroock traveled to Delaware for those hearings.  Stroock has expended

20.7 hours on this category for a fee of $11,295.00.  Pursuant to the Administrative Fee Order,

the Applicant is requesting compensation in the amount of $5,647.50 representing fifty percent

(50%) of the total amount billed.

## IV.      **FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES**

39.      The factors to be considered in awarding attorneys fees have been enumerated in

In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547

F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts.  Stroock

respectfully submits that a consideration of these factors should result in this Court's allowance

of the full compensation sought.

12

(A)    <u>The Time and Labor Required</u>.  The professional services rendered by Stroock on behalf of the Committee have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the complex issues encountered by the Committee with skill and dispatch.  Occasionally, Stroock has been required to perform these services under significant time constraints requiring work late into the evening and on weekends.  The services rendered by Stroock were performed efficiently, effectively and economically.

(B)    <u>The Novelty and Difficulty of Questions</u>.  Novel and complex issues have already arisen in the course of these Chapter 11 cases, and it can be anticipated that other such issues will be encountered.  In this case, as in many others in which the firm is involved, Stroock's effective advocacy and creative approach have helped clarify and resolve such issues and will continue to prove beneficial.

(C)    <u>The Skill Requisite to Perform the Legal Services Properly</u>.  Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the resolution of issues, are and will continue to contribute to the maximization of the distributions to the Debtors' unsecured creditors.

(D)    <u>The Preclusion of Other Employment by Applicant Due to Acceptance of the Case</u>.  Due to the size of Stroock's insolvency department, Stroock's representation of the Committee has not precluded its acceptance of new clients.  However, the volume of the matters needing attention on a continuing basis has

13

required several of the attorneys to commit significant portions of their time to these cases.

(E)     The Customary Fee. The fee sought herein is based upon Stroock's normal hourly rates for services of this kind. Stroock respectfully submits that the fee sought herein is not unusual given the magnitude and complexity of these cases and the time expended in attending to the representation of the Committee, and is commensurate with fees Stroock has been awarded in other cases, as well as with fees charged by other attorneys of comparable experience.

(F)     Whether the Fee is Fixed or Contingent. Pursuant to §§ 330 and 331 of the Bankruptcy Code, all fees sought by professionals employed under § 1103 of the Code are contingent pending final approval by this Court, and are subject to adjustment dependent upon the services rendered and the results obtained.

(G)     Time Limitations Imposed by Client or Other Circumstances. As already indicated, Stroock has been required to attend to the various issues arising in these cases. Occasionally, Stroock has had to perform those services under significant time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

(H)     The Amount Involved and Results Obtained. Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

(I)     The Experience, Reputation and Ability of the Attorneys. Stroock has one of the largest and most sophisticated insolvency practices in the nation and has

14

played a major role in numerous cases of national import including: Acme
Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel Company, Gulf
States Steel, Inc. of Alabama, The LTV Corporation, Wheeling-Pittsburgh Steel
Corporation, Allis-Chalmers Corporation, The Charter Company, Federated
Department Stores, G. Heileman Brewing Company, Inc., Burlington Motor
Holdings, Inc., Metallurg, Inc., Forstmann & Company, Inc., Barneys, Inc.,
Fruehauf Trailer Corporation, Levitz Furniture Incorporated, The Columbia Gas
System, Inc., JWP, Inc., Planet Hollywood International and Anchor Glass
Container Corporation. Stroock's experience enables it to perform the services
described herein competently and expeditiously. In addition to its expertise in the
area of corporate reorganization, Stroock has already frequently called upon the
expertise of its partners and associates in the litigation and ERISA areas to
perform the wide ranging scope of the legal work necessitated by these cases, and
is now utilizing the expertise of its partners and associates in the tax and
environmental law areas.

(J)      The "Undesirability" of the Case. These cases are not undesirable, but as
already indicated, have required a significant commitment of time from several of
the attorneys assigned hereto.

(K)      Nature and Length of Professional Relationship. As described above,
Stroock has been actively rendering services on behalf of the Committee as
necessary and appropriate from April 12, 2001 through to the present.

## V.    ALLOWANCE OF COMPENSATION

40.     The professional services rendered by Stroock required a high degree of
professional competence and expertise so that the numerous issues requiring evaluation and

15

determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole and the Debtors' estates.

41.     With respect to the level of compensation, § 330 of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person (including attorneys for a creditors' committee): "Reasonable compensation for actual necessary services rendered by [such] . . . professional person. 11 U.S.C. § 330. Section 330 further states that the court should take into consideration, inter alia, the nature, extent, and value of services performed, as well as the cost of comparable services other than in a case under this title. Id. The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

42.     The total time spent by Stroock attorneys and paraprofessionals during the Eighth Monthly Period was 356.9 hours. Such services have a fair market value of $142,016.00[3]. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

43.     As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit "C" are summaries of the hours expended by the attorneys and paraprofessionals during the Eighth Monthly Period, their normal hourly rates, and the value of their services.

---

[3] Pursuant to Delaware Local Rules 2016, Stroock has reduced its total compensation amount by $5,647.50 representing 50% of the total amount of Travel time billed at its normal hourly rate.

16

44.    In addition, Stroock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $3,416.24 for which Stroock respectfully requests reimbursement in full.

45.    The disbursements and expenses have been incurred in accordance with Stroock's normal practice of charging clients for expenses clearly related to and required by particular matters. Such expenses were often incurred to enable Stroock to devote time beyond normal office hours to matters, which imposed extraordinary time demands. Stroock has endeavored to minimize these expenses to the fullest extent possible.

46.    Stroock's billing rates do not include charges for photocopying, telephone and telecopier toll charges, computerized research, travel expenses, "working meals", secretarial overtime, postage and certain other office services, because the needs of each client for such services differ. Stroock believes that it is fairest to charge each client only for the services actually used in performing services for it. Stroock has endeavored to minimize these expenses to the fullest extent possible.

47.    Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions. Stroock does not charge for incoming facsimiles.

48.    Further, in accordance with the Court's June 22, 2001 Order Authorizing the Retention of Experts, this application seeks payment for the fees and expenses of the asbestos issues expert engaged by the Committee, for the months of October 2001 and November 2001 in the aggregate amount of $5,431.10. No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

17

49.     Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

50.     No prior application has been made in this or in any other Court for the relief requested herein for the Eighth Monthly Period.

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order and the Court's June 22, 2001 Order Authorizing the Retention of Experts:

(a)     the allowance of compensation for professional services rendered to the Committee during the period from November 1, 2001 through and including November 30, 2001 in the amount of $136,368.50;

(b)     the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from November 1, 2001 through and including November 30, 2001 in the amount of $3,416.24;

(c)     the payment of the fees and expenses of the asbestos issues expert employed by the Committee in the aggregate amount of $5,431.10;

18

(d)    authorizing and directing the Debtors to pay as interim compensation to Stroock

80% of the amount of the professional services rendered by Stroock and 100% of

the expenses sought by Stroock in this Application subject to final payment of the

full amount; and

(e)    granting such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
        January 4, 2002                    STROOCK & STROOCK & LAVAN LLP

                                           _Lewis Kruger_____
                                           Lewis Kruger (LK4512)
                                           A Member of the Firm
                                           180 Maiden Lane
                                           New York, New York 10038-4982
                                           (212) 806-5400

                                           Co-Counsel for the Official Committee of
                                           Unsecured Creditors of W. R. Grace & Co., et al.

19