IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO., et al.,**[1] | ) | **Case No. 01-1139 (JKF)** |
| | ) | |
| **Debtors.** | ) | **(Jointly Administered)** |
| | ) | |
| **W. R. GRACE & CO.-CONN.** | ) | **Adversary Proceeding** |
| | ) | |
| | ) | **Adv. Pro. No. 02-____ (JKF)** |
| **Plaintiff,** | ) | |
| **v** | ) | |
| | ) | |
| **NATIONAL UNION FIRE INSURANCE** | ) | |
| **COMPANY OF PITTSBURGH, PA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiff W. R. Grace & Co. - Conn., as debtor and debtor in possession in the above-

captioned chapter 11 case (the "Plaintiff" or "Grace"), by its undersigned attorneys, alleges for its

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

complaint, upon knowledge as to its own acts and upon information and belief as to all other matters,

as follows:

## INTRODUCTION

1.      This is an adversary proceeding brought pursuant to Fed. R. Bankr. P. 7001(7) and

(9) and Fed. R. Bankr. P. 7065, for a judgment:

(i)     enjoining the National Union Fire Insurance Company of Pittsburgh, PA. ("Defendant") as issuer of two surety bonds, from paying to the law firm of Reaud, Morgan & Quinn, Inc. ("RMQ"), the January 15, 2002 Installment payment described in the Confidential Settlement Agreement For Texas Cases entered into between Plaintiff and RMQ (the "Texas Protocol"); and

(ii)    declaring that Defendant and Plaintiff do not have obligations to pay the January 15, 2002 installment described in the Texas Protocol (the "January 15, 2002 Installment") to RMQ; and

(iii)   declaring that if Defendant does pay to RMQ the January 15, 2002 installment, described in the Texas Protocol, such payment did not result from Plaintiff's obligation under the Texas Protocol, and Defendant cannot draw upon (a) the letter of credit obtained by Plaintiff as partial collateral for the indemnity obligations of Plaintiff with respect to the Bonds in excess of its contractual amount (the "Letter of Credit"); or (b) any other unrelated letter of credit obtained by Plaintiff or its affiliates under the Texas Protocol; and

(iv)    declaring that the contractual amount of the Letter of Credit is $5,639,830; and

(v)     enjoining Defendant from drawing upon (i) the Letter of Credit in excess of its contractual amount, or (ii) any other letter of credit obtained by Plaintiff or its affiliates for the benefit of Defendant and used by Defendant to pay, or obtain reimbursement for payment of the January 15, 2002 installment under the Texas Protocol.

## THE PARTIES

2.      Plaintiff is a debtor and debtor in possession in this adversary proceeding. Plaintiff

is a corporation existing under the laws of Connecticut, with its headquarters located in the State of

Maryland.

3.      Defendant is, upon information and belief, a corporation existing under the laws of the State of Pennsylvania, with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

5.      This adversary proceeding has been brought in accordance with Fed. R. Bankr. P. 7001(7) and (9) and Fed. R. Bankr. P. 7065.

6.      Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. § 1409.

7.      This matter is a core proceeding pursuant to 28 U. S.C. § 157(b)(2).

## FACTUAL ALLEGATION

8.      On April 2, 2001, Plaintiff filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").  Most prepetition asbestos claims brought against Grace were resolved through settlement, rather than litigation.

9.      In an effort to alleviate the financial burdens associated with litigating asbestos claims, counsel for Grace would often negotiate settlement procedures with plaintiffs' counsel.  In the course of their negotiations, Grace and plaintiffs' counsel generally would agree, *not* to actual settlements of particular claims, but to so-called "protocols" for resolving the particular law firm's claims.

10.     On or about September 21, 2000, RMQ and Grace negotiated the Texas Protocol (a copy of which is attached as Ex. A to Hughes Aff.).  On or about August 25, 2000, RMQ, Environmental Litigation Group, P.C. ("ELG") and Grace negotiated the terms of a document

entitled a "Confidential Settlement Agreement for Alabama Cases," (the "Alabama Protocol", a copy

of which is attached as Ex. B to Hughes Aff.). Although styled as "settlement agreements," the plain

language of the Protocols show that they were merely non-binding frameworks in which RMQ (and,

in the case of the Alabama Protocol, ELG) and Grace agreed to work together to try to resolve

asbestos claims – in other words: agreements to agree. The Protocols specify that, if certain

conditions are met, Grace will pay settlement installments to RMQ or ELG in periodic

"installments."

11.    In particular, the Protocols provided frameworks in which to resolve the asbestos

claims of certain "eligible" RMQ and ELG clients. (Texas Protocol at 2, ¶3; Alabama Protocol at

2, ¶3). According to the Texas Protocol, for example, a claimant is "eligible" – though not required

– to participate:

> "(i) who, as of May 19, 2000, is a plaintiff in a pending lawsuit in any
> court (state or federal) in any jurisdiction wherein any claim is being
> asserted against W. R. Grace for monetary damages for any asbestos
> -related disease, injury or death; (ii) who is represented by RMQ; (iii)
> who is not already a party to or otherwise subject to a prior settlement
> with W. R. Grace; and (iv) whose case against W. R. Grace had not
> been tried to verdict as of May 19, 2000." (Id.)[2]

12.    The terms of the Protocols make clear that Grace is not obliged to pay any RMQ or

ELG claimant (or RMQ or ELG on behalf of any claimant) unless and until Grace receives at least

the following documentation (referred to as "Qualifying Materials") from eligible claimants:

> "(i) competent medical evidence that the Settling Plaintiff . . . has or
> had an asbestos-related disease or injury . . .; (ii) a standard release
> prepared by RMQ and executed by the Settling Plaintiff . . .; [and
> (iii)] "Exposure Evidence" in the form of . . . a work history sheet for

---

[2] The Alabama Protocol outlines similar criteria, except that the claimant must be represented by both RMQ and ELG.

each Settling Plaintiff showing that such plaintiff worked for some period of time at . . . plants at which W. R. Grace agrees that its asbestos-containing products were used" (Texas Protocol at 4-5, ¶6)[3]

13.     RMQ has not submitted sufficient Qualifying Materials from eligible claimants, however, to trigger the January 15, 2002 payment obligation on the part of Grace under the Texas Protocol. (*See* Hughes Aff. ¶ 13). The Texas Protocol provides that "[t]he settlement installments . . .shall be payable on the designated payment dates *only if* RMQ has submitted Qualifying Materials to W.R. Grace no later than 60 days prior to such payment date from Settling Plaintiffs whose settlement amount equals or exceeds the amount of installment due on such payment date." (Texas Protocol at 5, ¶7, emph. added). The January 15, 2002 installment amount is $3,470,280. (*Id.* at 3-4, ¶ 5). RMQ has not fulfilled this condition. In fact, Grace has specifically communicated to RMQ the deficiencies in its submissions. (*See* 1/18/01 letter from J. Hughes to G. Morgan, attached as Ex. C to Hughes Aff.). In particular, thousands of the submitted claimants were not "eligible" because they "were subject to a prior settlement with W.R. Grace." (*See id.*; *see also* Texas Protocol at 2, ¶3). Consequently, under contract law, Grace is not obligated to pay RMQ clients the January 15, 2002 installment payment described in the Texas Protocol.

14.     Pursuant to the terms of the two Protocols, Grace caused National Union to issue two surety bonds numbered ESD7311060 and ESD7311061 (collectively, the "Bonds") as security for certain of the installment payments under the protocol by Grace to RMQ and ELG claimants under the Protocols. (*See* Bonds, attached as Ex. D to Hughes Aff.). Grace's obligations to indemnify National Union for any payments made under the Bonds were partially collateralized by the Letter of Credit issued by Bank of America, N.A. for the benefit of National Union (see letter of credit,

---

[3]  *See also* Alabama Protocol at 4-5, ¶6.

attached as Ex. E to Hughes Aff.), which is currently in the amount of approximately $5.6 million. Although National Union issued two separate bonds to cover the Texas and Alabama Protocols, both bonds were partially collateralized by only *the* Letter of Credit. By the nature of the surety relationship, Defendant is jointly and severally liable with Plaintiff as principal obligor and not required to make any payments as to which Plaintiff is not legally obliged.

15. In a letter agreement dated October 13, 2000, between Grace and National Union, the parties agreed that the collateral for the Bonds would be maintained at 20% of National Union's outstanding liability at any given time. (*See* 10/13/00 letter from R. Tarola to National Union, attached as Ex. F to Hughes Aff.). Accordingly, Grace notified National Union on January 18, 2001 and again on January 31, 2001, that the Letter of Credit securing the payment of the Bonds should be reduced from approximately $10.4 million to approximately $5.6 million, as National Union's then (and current) liability had been reduced to approximately $28.2 million (from approximately $52.2 million) after the January 15, 2001 installment of $24 million was paid by the Plaintiff in accordance with the Protocols. (*See* 1/18/01 and 1/31/01 letters from M. Hunter to A. Stillwell attached as Ex. G to Hughes Aff). As of the date hereof, National Union has not executed the amendment to the Letter of Credit reducing its principal amount. Although National Union has refused to execute the amendment, Grace believes that a reduction of the principal amount of the collateral has occurred automatically by the terms of the October 13, 2000 letter agreement and that National Union has no right to draw more than the approximately $5.6 million amount under the Letter of Credit.

16. Moreover, National Union has stated to Grace that, in the event the Letter of Credit issued specifically as security for the Bonds is insufficient to satisfy National Union's exposure

under the Bonds, National Union may draw upon certain other unrelated letters of credit issued by

Grace's lenders for the benefit of National Union in unrelated matters.

## COUNT I
## DECLARATION REGARDING PLAINTIFF'S AND DEFENDANT'S OBLIGATIONS UNDER THE TEXAS PROTOCOL

17.    Plaintiff repeats and realleges paragraphs 1 through 16 as if fully set forth herein.

18.    Because RMQ had not submitted and sufficient Qualifying Materials for eligible

claimants pursuant to the terms of the Texas Protocol, neither Defendant nor Plaintiff has any

obligation to pay RMQ the January 15, 2002 Installment described in the Texas Protocol.

19.    If Defendant were to pay RMQ the January 15, 2002 Installment, such payment did

not result from Grace's obligation under the Texas Protocol, and Defendant cannot draw upon the

Letter of Credit.

## COUNT II
## DECLARATION REGARDING THE CONTRACTUAL AMOUNT OF THE LETTER OF CREDIT AND THE VALIDITY OF OTHER LETTERS OF CREDIT

20.    Plaintiff repeats and realleges paragraphs 1 through 19 as if fully set forth herein.

21.    Under the clear and express terms of the October 13, 2000 letter agreement between

Plaintiff and Defendant, the contractual amount of the Letter of Credit is $5,639,830 and not

$10,439,830.  If Defendant pays to RMQ or ELG the January 15, 2002 Installment under either the

Texas or Alabama Protocol, Defendant may not draw upon the Letter of Credit in excess of

$5,639,830.

22.    Defendant's rights to reimbursement under the Bonds is limited to the Letter of

Credit.   Therefore, Defendant cannot draw upon any other unrelated letters of credit for

reimbursement if its payment to either RMQ or ELG under the Bonds.

## COUNT III
## TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION, 11 U.S.C. § 105(a)

23.    Plaintiff repeats and realleges paragraphs 1 through 22 as if fully set forth herein.

24.    If Defendant National Union pays to RMQ the January 15, 2002 Installment described in the Texas Protocol, Plaintiff will suffer irreparable harm.

25.    National Union's payment to RMQ will set in motion a series of events which would be virtually impossible to "undo", and would irreparably harm Grace.  In particular, if National Union pays RMQ under the Texas Protocol, National Union can – and presumably will – draw upon the Letter of Credit to secure its payment under the surety bonds.

26.    National Union can draw on the Letter of Credit without first seeking authority from Grace.  Thus, absent injunctive relief, Grace will have no recourse to pre-emptively stop National Union from drawing on those funds.  If National Union draws on any of the letters of credit, it is unlikely that Grace would ever be able to recoup such funds, as to do so would require the impractical and costly unwinding of a series of transactions.

27.    In particular, National Union would have to agree to, and affirmatively seek to have RMQ refund the payments that National Union had made to RMQ.  Even if National Union would agree to take such action, the hurdles barring success would be nearly insurmountable, as RMQ may have already dispersed the funds to thousands of individual asbestos claimants throughout the country.

28.    Plaintiff asserts that: (i) it is likely to succeed on the merits of its claim at the final hearing; (ii) as a result of Defendant's potential conduct, Plaintiff will suffer irreparable harm and its ability to successfully reorganize under the Bankruptcy Code in this Chapter 11 Case will be

threatened; (iii) Defendant will not suffer any harm if the relief sought by Plaintiff is granted; and

(iv) the public interest favors granting the requested relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the entry of an order:

a.    enjoining the Defendant from paying to RMQ the January 15, 2002 Installment described in the Texas Protocol; and

b.    declaring that Defendant and Plaintiff do not have any obligations to pay to RMQ the January 15, 2002 Installment described in the Texas Protocol; and

c.    declaring that if Defendant does pay to RMQ the January 15, 2002 Installment, such payment did not result from Plaintiff's obligation under the Texas Protocol, and Defendant cannot draw upon the Letter of Credit in excess of its contractual amount (or any other letter of credit issued on the Defendant's behalf), to pay the January 15, 2002 Installment; and

d.    declaring that the contractual amount of the Letter of Credit is $5,639,830; and

e.    declaring that Defendant cannot draw upon any unrelated letter of credit for the reimbursement of its payment to RMQ or ELG in accordance with the Bonds; and

f.    enjoining Defendant from drawing upon any unrelated letters of credit issued by Plaintiff's lenders to recover funds used to pay the January 15, 2002 Installments described in the Texas and Alabama Protocols; and

g.      awarding Plaintiff such other and further relief as the Court deems just and equitable.

Dated: January 17, 2002

KIRKLAND & ELLIS
David M. Bernick
James H.M. Sprayregen
James W. Kapp III
Janet S. Baer
Samuel A. Schwartz
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000


and

PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

_____
Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-1139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

| | | |
|---|---|---|
| W. R. GRACE & CO.- CONN. | ) | Adversary Proceeding |
| | ) | |
| | ) | Adv. Pro. No. 00-____ (JKF) |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA, | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFICATION

STATE OF FLORIDA          )

COUNTY OF PALM BEACH)

I, Jay Hughes, being duly sworn, depose and say that I am the Senior Litigation

Counsel of W. R. Grace & Co.-Conn., and that I have read the Complaint filed in the above-

referenced matter, dated January 17, 2002, that I know the contents thereof, and that said Complaint

is true to the best of my knowledge, except as to matters stated therein to be alleged on information

and belief, and as to those matters, I am informed and believe that they are true.

_____
Jay Hughes

SWORN AND SUBSCRIBED before me this _17_ day of January, 2002   Personally Known

_____
Notary Public

My Commission Expires: __11/11/02__



Valerie Perez
My Commission CC767501
Expires November 11, 2002