EXHIBIT "A"

Document #: 8529

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>W.R. GRACE & CO., et al.,<br><br>Debtor. | Chapter 11<br><br>Case No.: 01-1139 through 01-1200 (JJF)<br>(Jointly Administered)<br><br>DECLARATION OF ROBERT NASINKA IN SUPPORT OF MOTION TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASES FOR POST-PETITION PAYMENTS OR OTHER RELIEF |

I, ROBERT NASINKA, declare as follows:

1. I am employed by General Electric Capital Corporation, ("GE CAPITAL"), as a Portfolio Collections Specialist. I make this declaration based upon my personal knowledge, except as to matters stated herein on my information and belief, and as to those matters, I believe my information to be true and correct. If called as a witness, I could and would competently testify to the matters contained herein.

2. As a Litigation Specialist, I oversee the monitoring of a Lease where: (a) the lessee is in default under the terms of the leases; and (b) the lessee has filed a petition for relief under the Bankruptcy Code.

3. Based upon my review of documents under my supervision and control, I know of my own knowledge that pre-petition, W.R. Grace & Co. (the "Debtor") entered into certain Lease Agreements with Eastern Lift Truck ("Eastern") as follows:

   (a) Lease Agreement dated June 26, 2000 between Eastern as Lessor and Debtor. Lease 1 required 36 monthly rentals of $644.16 commencing February 1, 2001.

4.     Lease Agreement dated January 29, 1998 ("Lease 2") between Yale Industrial Trucks-Maryland, Inc. ("Yale") as Lessor and Debtor as Lessee. Lease 2 required 60 monthly rentals of $537.60 commencing February 1, 1998.

5.     GE Capital owns 100% of stock in Eastern and Yale and received an assignment of Lease 1, Lease 2.

6.     On April 2, 2001, W.R. Grace & Co. filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware and an Order for Relief was entered on that date.

7.     Copies of Lease 1 and Lease 2 are annexed hereto as Exhibits 1 and 2 (collectively the "Leases") respectively, and are incorporated by reference.

8.     GE Capital has not received the post-petition rental payments due under the Leases from the Debtors. The total monthly rental under the Leases is $1,151.09 per month. The within Chapter 11 Petition was filed on April 2, 2001. Post-Petition there is due and owing for Lease 1 the sum of $644.16 for the rental payments due for the month of December, 2001. Post-Petition there is due and owing for Lease 2 the sum of $1,612.80 for the rental payments due for the months of October, November and December, 2001.

9.     The fair market value of the equipment subject to the Leases is $17,700.00

10.    The total amount due under the Leases is $31,357.97.

11.    I am informed and believe and thereon allege that the Debtor is using the equipment and vehicles subject to the Leases in the operation of its business.

I declare under the penalty of perjury that the foregoing is true and correct and that this declaration was executed on December 12, 2001 at Danbury, Connecticut.

ROBERT NASINKA

Sworn to before me on the
12, day of December, 2001

Melissa M. Weiss
Notary Public

MELISSA M. WEISS
NOTARY PUBLIC
MY COMMISSION EXPIRES DEC. 31, 2005




D00VAVT

Lease No. 0013678 46                        Lease Date: JUNE 26, 2000

| Lessor: Eastern Lift Truck Co., Inc.<br>Address: 2211 Sulphur Spring Road<br>Baltimore, MD 21227<br>Tel. No. | Lessee: W. R. Grace & Co.<br>Address: 7500 Grace Drive<br>Columbia, MD 21044<br>Tel. No. |
|---|---|

## TERMS AND CONDITIONS

**I. LEASING:**

(a) Subject to the terms and conditions set forth below, Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, the equipment ("Equipment") described in any schedule hereto ("Schedule"). Terms defined in a Schedule and not otherwise defined herein shall have the meanings ascribed to them in such Schedule.

(b) The obligation of Lessor to purchase Equipment from the manufacturer or supplier thereof ("Supplier") and to lease the same to Lessee under any Schedule shall be subject to receipt by Lessor, prior to the Lease Commencement Date (with respect to such Equipment), of each of the following documents in form and substance satisfactory to Lessor: (i) a Schedule relating to the Equipment then to be leased hereunder, (ii) evidence of insurance which complies with the requirements of Section VIII, and (iii) such other documents as Lessor may reasonably request. As a further condition to such obligations of Lessor, Lessee shall, upon delivery of such Equipment execute and deliver to Lessor a Certificate of Acceptance (which can be either, at Lessor's discretion, incorporated into the applicable Schedule or in a separate form acceptable to the Lessor) covering such Equipment, and deliver to Lessor a document which passes title to such Equipment (in form and substance satisfactory to Lessor). Lessor hereby appoints Lessee its agent for inspection and acceptance of the Equipment from the Supplier. Upon execution by Lessee of any Certificate of Acceptance, the Equipment described thereon shall be deemed to have been delivered to, and irrevocably accepted by, Lessee for lease hereunder.

**II. TERM, RENT AND PAYMENT:**

(a) The rent payable hereunder and Lessee's right to use the Equipment shall commence on the date of execution by Lessee of the Certificate of Acceptance for such Equipment ("**Lease Commencement Date**"). The term of this Agreement shall be the period specified in the applicable Schedule. If any term is extended, the word "term" shall be deemed to refer to all extended terms, and all provisions of this Agreement shall apply during any extended terms, except as may be otherwise specifically provided in writing.

(b) Rent shall be paid to Lessor at its address stated above, except as otherwise directed by Lessor. For the period from and including the Lease Commencement Date to the first day of the month following the Lease Commencement Date ("**Basic Term Commencement Date**"), Lessee shall pay as rent ( "**Interim Rent**") for the Equipment, a pro-rata portion of the Basic Term Rent for any such interim period. Interim Rent shall be due on Basic Term Commencement Date. Commencing on the Basic Term Commencement Date and on the same day of each month thereafter during the Basic Term, Lessee shall pay as rent the Basic Term Rent. If one or more Advance Rentals are payable, such Advance Rental shall be (i) set forth on the applicable Schedule, (ii) due upon acceptance by Lessor of such Schedule, and (iii) when received by Lessor, applied to the first rent payment and the balance, if any, to the final rental payment(s) under such Schedule. In no event shall any Advance Rental or any other rent payments be refunded to Lessee. If rent is not paid within ten days of its due date, Lessee agrees to pay a late charge of five cents (5¢) per dollar on, and in addition to, the amount of such rent but not exceeding the lawful maximum, if any.

(c) For any Schedule, Lessee hereby acknowledges that the Basic Term Rent has been calculated on the assumption that each unit of Equipment will be operated annually during the term of the Schedule for the number of hours listed as the Annual Operating Hours listed on said Schedule, and that the condition of the Equipment upon return to the Lessor, pursuant to Section IX of this Agreement, shall comply with such assumption. In the event that it should be determined that the actual number of operating hours for any unit of Equipment exceeds the applicable Annual Operating Hours, Lessee may, at Lessor's option, be required to pay upon demand, in addition to any other amounts due under the applicable Schedule: (i) an excess usage charge which shall be determined by Lessor based on the applicable rental rates currently in effect at that time; plus (ii) any and all repair costs which are deemed necessary by Lessor, in its sole reasonable discretion, which are related to such excess usage.

**III. TAXES:** Except as provided in Section XIII(b), Lessee shall have no liability for taxes imposed by the United States of America or any State or political subdivision thereof which are on or measured by the net income of Lessor. Lessee shall report (to the extent that it is legally permissible) and pay promptly all other taxes, fees and assessments due, imposed, assessed or levied against any Equipment (or the purchase, ownership, delivery, leasing, possession, use or operation thereof), this Agreement (or any rentals or receipts hereunder), any Schedule, Lessor or Lessee by any foreign, federal, state or local government or taxing authority during or related to the term of this Agreement, including, without limitation, all license and registration fees, and all sales, use, personal property, excise, gross receipts, franchise, stamp or other taxes, imposts, duties and charges, together with any penalties, fines or interest thereon (all hereinafter called "**Taxes**"). Lessee shall (i) reimburse Lessor upon receipt of written request for reimbursement for any Taxes charged to or assessed against Lessor, (ii) on request of Lessor, submit to Lessor written evidence of Lessee's payment of Taxes, (iii) on all reports or returns show the ownership of the Equipment by Lessor, and (iv) send a copy thereof to Lessor. TO THE EXTENT ALLOWED BY APPLICABLE LAW AND UNLESS AND UNTIL LESSOR NOTIFIES LESSEE IN WRITING TO THE CONTRARY, LESSOR WILL FILE ALL PERSONAL PROPERTY TAX RETURNS COVERING THE EQUIPMENT AND WILL PAY THE PERSONAL PROPERTY TAXES LEVIED OR ASSESSED THEREON. LESSEE, UPON RECEIPT OF INVOICE, WILL PROMPTLY PAY TO LESSOR, AS SUPPLEMENTAL RENT, AN AMOUNT EQUAL TO THE PROPERTY TAXES SO PAID BY LESSOR. IF APPLICABLE LAW REQUIRES THAT THE LESSEE FILE PERSONAL PROPERTY TAX RETURNS, LESSEE SHALL DO SO AND PAY ANY APPLICABLE TAXES AND PROVIDE LESSOR WITH COPIES OF ALL SUCH PERSONAL PROPERTY TAX RETURNS, TOGETHER WITH EVIDENCE OF PAYMENT THEREFOR, NOT LATER THAN FIFTEEN DAYS FOLLOWING SUCH PAYMENT.

**IV. REPORTS:**

(a) Lessee will notify Lessor in writing, within ten days after any tax or other lien shall attach to any Equipment, of the full particulars thereof and of the location of such Equipment on the date of such notification.

(b) Lessee will permit Lessor to inspect any Equipment during normal business hours.

(c) Lessee will keep the Equipment at the Equipment Location (specified in the applicable Schedule) and will promptly notify Lessor prior to any relocation of Equipment. Upon the written request of Lessor, Lessee will notify Lessor forthwith in writing of the location of any Equipment as of the date of such notification.

(d) Lessee will promptly and fully report to Lessor in writing if any Equipment is lost or damaged (where the estimated repair costs would exceed 10% of its then fair market value), or is otherwise involved in an accident causing personal injury or property damage.

**V. DELIVERY, USE AND OPERATION:**

(a) All Equipment shall be shipped directly from the Supplier to Lessee.

(b) Lessee agrees that the Equipment will be used by Lessee solely in the conduct of its business and in a manner complying with all applicable federal, state, and local laws and regulations.

(c) LESSEE SHALL NOT, WITHOUT LESSOR'S PRIOR WRITTEN CONSENT, ASSIGN, MORTGAGE, SUBLET OR HYPOTHECATE ANY EQUIPMENT, OR THE INTEREST OF LESSEE HEREUNDER, NOR SHALL LESSEE REMOVE ANY EQUIPMENT FROM THE CONTINENTAL UNITED STATES.

(d) Lessee will keep the Equipment free and clear of all liens and encumbrances other than those which result from acts of Lessor.

**VI.   SERVICE; REPAIRS; MAINTENANCE; USE; ALTERATIONS:** Lessee, at its sole expense, shall keep all Equipment in good repair, condition and working order in accordance with manufacturer's recommendations and furnish all labor, parts, and supplies required therefor. Lessee's obligations hereunder shall not be abrogated irregardless of any third-party maintenance contracts covering the Equipment. Lessee agrees to maintain accurate and complete records of all repairs and maintenance to the Equipment and allow Lessor to inspect such records at any time during business hours of Lessee. Any modifications or additions to the Equipment required by any governmental edict shall be promptly made by Lessee at its own expense. Without the prior written consent of Lessor, Lessee shall not make any alterations, additions or improvements to the Equipment which are permanent or which detract from its economic value or functional utility, except as may be required pursuant to the preceding sentence of this Section VI. All additions and improvements to the Equipment shall belong to and immediately become the property of Lessor and shall be returned to Lessor with the Equipment upon the expiration or earlier termination of this Agreement unless Lessor notifies Lessee to restore such Equipment to its original state.

**VII.   LOSS, DAMAGE AND STIPULATED LOSS VALUE:** Lessee hereby assumes and shall bear the entire risk of any loss, theft, damage to, or destruction of, any unit of Equipment from any cause whatsoever. Lessee shall promptly and fully notify Lessor in writing if any unit of Equipment shall be or become worn out, lost, stolen, destroyed, irreparably damaged in the reasonable determination of Lessee, or permanently rendered unfit for use from any cause whatsoever (each such occurrence being hereinafter called a "Casualty Occurrence"). On the Rent Payment next succeeding a Casualty Occurrence (the "Payment Date"), Lessee shall pay Lessor the sum of (a) the Stipulated Loss Value of such unit calculated as of the Rent Payment Date next preceding such Casualty Occurrence; and (b) all Rent and other amounts which are due or accrued hereunder on or as of the Payment Date. Stipulated Loss Value as used herein shall be the sum of (i) all Rent due and accrued as of the Payment Date; plus (ii) the remaining Rent payable during the Term, present valued from each Rent Payment Date to the Payment Date using a simple interest rate equal to four percent (4 %); plus (iii) the estimated Fair Market Value (as that term is defined in the proceeding sentence) of the Equipment at the end of the term of the applicable Schedule. Fair Market Value shall be determined by Lessor at the time that the Stipulated Loss Value for the Equipment is calculated. For the purposes of this Agreement, the term "Fair Market Value" shall mean the price which a willing buyer (who is neither a lessee in possession nor a used equipment dealer) would pay for the Equipment in an arm's-length transaction to a willing seller under no compulsion to sell; provided, however, that in such determination: (i) the Equipment shall be assumed to be in the condition in which it is required to be maintained and returned under this Agreement; (ii) in the case of any installed Equipment, that Equipment shall be valued on an installed basis; and (iii) costs of removal from current location shall not be a deduction from such valuation. If Lessor and Lessee are unable to agree on the Fair Market Value at least 45 days before lease expiration, Lessor shall appoint an independent appraiser (reasonably acceptable to Lessee) to determine Fair Market Value, and that determination shall be final, binding and conclusive. Lessee shall bear all costs associated with any such appraisal. Upon payment of all sums due hereunder, the Term of this Lease as to the unit of Equipment which has suffered the Casualty Occurrence shall terminate, and Lessor shall be entitled to retain possession of such unit.

**VIII.   INSURANCE:** Lessee agrees, at its own expense, to keep all Equipment insured for such amounts and against such hazards as Lessor may require, including, but not limited to, insurance for damage to, or loss of, such Equipment and liability coverage for personal injuries, death or property damage. Public liability insurance shall be in the amounts set forth in the Schedule and Casualty and Property Damage shall be in an amount equal to the higher of the Stipulated Loss Value or the full replacement cost of the Equipment. All insurance policies shall name Lessor as additional insured and with a loss payable clause in favor of Lessor, as its interest may appear, irrespective of any breach of warranty or other act or omission of Lessee. All such policies shall be with companies, and on terms, satisfactory to Lessor. Lessee agrees to deliver to Lessor evidence of insurance satisfactory to Lessor. No insurance shall be subject to any co-insurance clause. Lessee hereby appoints Lessor as Lessee's attorney-in-fact to make proof of loss and claim for insurance, and to make adjustments with insurers and to receive payment of and execute or endorse all documents, checks or drafts in connection with payments made as a result of such insurance policies. Any expense of Lessor in adjusting or collecting insurance shall be borne by Lessee. Said policies shall provide that the insurance may not be altered or cancelled by the insurer until after thirty (30) days written notice to Lessor. Lessor may, at its option, apply proceeds of insurance, in whole or in part, to (i) repair or replace Equipment or any portion thereof, or (ii) satisfy any obligation of Lessee to Lessor hereunder.

**IX.   RETURN OF EQUIPMENT:**

(a) Upon any expiration or termination of this Agreement or any Schedule, Lessee shall promptly, at its own cost and expense: (i) perform any testing and repairs required to place the affected units of Equipment in the same condition and appearance as when received by Lessee (reasonable wear and tear excepted) and in good working order for their originally intended purpose; (ii) have the Equipment inspected by an authorized dealer (or other authorized agent) for the Equipment; and (iii) return such units to a location within the continental United States that is mutually acceptable to both Lessor and Lessee. Lessee agrees to pay for all damages to Equipment, as evidenced by the Return Inspection Report, other than that attributable to ordinary wear and tear from usage in accordance with the terms of this Agreement.

(b) For any Equipment which is a lift truck, in addition to the conditions set forth in IX(a) above, at the end of the term, the Equipment will be returned with frame and major components (including, without limitation, all forks, overhead guards, load backrests and sheet metal) structurally sound, without breaks, cracks or excessive rust and corrosion. Drive motors, engines, hydraulic systems, and transmissions will operate properly at fully rated loads in all gear ranges, both forward and reverse. Smoking engines deemed excessive by the Inspector must be repaired prior to return. Water, oil and hydraulic leaks shall not be in excess of one drop per minute. Mechanical drive train will be in good condition and operate quietly without vibrations. Service and parking brakes must be able to stop Equipment within a safe distance, both forward and reverse. Steering will operate normally stop-to-stop without excessive play in linkage, or axle components such as king pins. Tires will not exhibit chunking and will have at least 40% of the original thickness remaining. All cabs, lights and other accessories will be in good operating condition and appearance. All components will have been recently serviced following manufacturer's operating and maintenance procedures. Equipment will be complete with all components, accessories, attachments, parts and pieces as when originally delivered.

(c) Until Lessee has fully complied with the requirements of Section IX (a) above, Lessee's rent payment obligation and all other obligations under this Agreement shall continue from month to month notwithstanding any expiration or termination of the lease term. Lessor may terminate such continued leasehold interest upon ten (10) days notice to Lessee.

**X.   DEFAULT:**

(a) Lessor may in writing declare this Agreement in default if: Lessee breaches its obligation to pay rent or any other sum when due and fails to cure the breach within ten (10) days; Lessee breaches any of its insurance obligations under Section VIII; Lessee breaches any of its other obligations and fails to cure that breach within thirty (30) days after written notice thereof; any representation or warranty made by Lessee in connection with this Agreement shall be false or misleading in any material respect; Lessee becomes insolvent or ceases to do business as a going concern; any Equipment is illegally used; or a petition is filed by or against Lessee under any bankruptcy or insolvency laws. Such declaration shall apply to all Schedules except as specifically excepted by Lessor.

(b) After default, at the request of Lessor, Lessee shall comply with the provisions of Section IX (a). Lessee hereby authorizes Lessor to enter, with or without legal process, any premises where any Equipment is believed to be and take possession thereof. Lessee shall, without further demand, forthwith pay to Lessor (i) as liquidated damages for loss of a bargain and not as a penalty, the Stipulated Loss Value of the Equipment (calculated as of the rental next preceding the declaration of default), and (ii) all rentals and other sums then due hereunder. Lessor may, but shall not be required to, sell Equipment at private or public sale, in bulk or in parcels, with or without notice, and without having the Equipment present at the place of sale; or Lessor may, but shall not be required to, lease, otherwise dispose of or keep idle all or part of the Equipment; and Lessor may use Lessee's premises for any or all of the foregoing without liability for rent, costs, damages or otherwise. The proceeds of sale, lease or other disposition, if any, shall be applied in the following order of priorities: (1) to pay all of Lessor's costs, charges and expenses incurred in taking, removing, holding, repairing and selling, leasing or otherwise disposing of Equipment; then, (2) to the

extent not previously paid by Lessee, to pay Lessor all sums due from Lessee hereunder; then (3) to reimburse to Lessee any sums previously paid by Lessee as liquidated damages; and (4) any surplus shall be retained by Lessor. Lessee shall pay any deficiency in (1) and (2) forthwith.

(c) The foregoing remedies are cumulative, and any or all thereof may be exercised in lieu of or in addition to each other or any remedies at law, in equity, or under statute. Lessee waives notice of sale or other disposition (and the time and place thereof), and the manner and place of any advertising. Lessee shall pay, in addition to any and all amounts due hereunder, any and all costs or expenses incurred by Lessor related to any default hereunder, including but not limited to reasonable attorney's fees. Waiver of any default shall not be a waiver of any other or subsequent default.

(d) Any default under the terms of this or any other agreement between Lessor and Lessee may be declared by Lessor a default under this and any such other agreement.

XI. ASSIGNMENT: Lessor may assign this Agreement or any Schedule. Lessee hereby waives and agrees not to assert against any such assignee any defense, set-off, recoupment claim or counterclaim which Lessee has or may at any time have against Lessor for any reason whatsoever.

XII. NET LEASE; NO SET-OFF, ETC: This Agreement is a net lease. Lessee's obligation to pay rent and other amounts due hereunder shall be absolute and unconditional. Lessee shall not be entitled to any abatement or reductions of, or set-offs against, said rent or other amounts, including, without limitation, those arising or allegedly arising out of claims (present or future, alleged or actual, and including claims arising out of strict tort or negligence of Lessor) of Lessee against Lessor under this Agreement or otherwise. Nor shall this Agreement terminate or the obligations of Lessee be affected by reason of any defect in or damage to, or loss of possession, use or destruction of, any Equipment from whatsoever cause. It is the intention of the parties that rents and other amounts due hereunder shall continue to be payable in all events in the manner and at the times set forth herein unless the obligation to do so shall have been terminated pursuant to the express terms hereof.

XIII. INDEMNIFICATION:

(a) Lessee hereby agrees to indemnify, save and keep harmless Lessor, its agents, employees, successors and assigns from and against any and all losses, damages, penalties, injuries, claims, actions and suits, including legal expenses, of whatsoever kind and nature, in contract or tort, except to the extent the losses, damages, penalties, injuries, claims, actions, suits or expenses result solely from Lessor's gross negligence or willful misconduct. This indemnity shall include, but not be limited to, Lessor's strict liability in tort, arising out of (i) the selection, manufacture, purchase, acceptance or rejection of Equipment, the ownership of Equipment during the term of this Agreement, and the delivery, lease, possession, maintenance, uses, condition, return or operation of Equipment (including, without limitation, latent and other defects, whether or not discoverable by Lessor or Lessee and any claim for patent, trademark or copyright infringement) or (ii) the condition of Equipment sold or disposed of after use by Lessee, any sublessee or employees of Lessee. Lessee shall, upon request, defend any actions based on, or arising out of, any of the foregoing.

(b) [SUBPARAGRAPHS (b) (c) AND (d) OF THIS SECTION XIII DO NOT APPLY TO ANY SCHEDULE DESIGNATED TO BE A LEASE/PURCHASE; OTHERWISE THESE SUBPARAGRAPHS SHALL BE IN FULL FORCE AND EFFECT.] Lessee hereby acknowledges that the periodic Rent payments herein have been calculated on the assumption (which, as between Lessor and Lessee, is mutual) that the statutory maximum corporate federal income tax rate ("Tax Rate"), exclusive of any minimum tax, for calendar year taxpayers shall be as set forth in Section C of the applicable Schedule.

(c) Lessee hereby represents, warrants and covenants that (i) on the Lease Commencement Date, the Equipment will qualify for all of the items of deduction and credit specified in Section C of the Schedule ("Tax Benefits") in the hands of Lessor (all references to Lessor in this Section XIII include Lessor and the consolidated taxpayer group of which Lessor is a member), and (ii) at no time during the Term of this Lease will Lessee take or omit to take, nor will it permit any sublessee or assignee to take or omit to take, any action (whether or not such act or omission is otherwise permitted by Lessor or the terms of this Lease), which will result in the disqualification of any Equipment for, or recapture of, all or any portion of such Tax Benefits.

(d) If, solely as a result of any amendment, change or modification of any law, including, without limitation, any modification of, or amendment or addition to the Internal Revenue Code of 1986 ("Code"), the Tax Rate is higher than the Tax Rate assumption (as noted on the applicable Schedule) such that Lessor's after tax economic yields and cash flows are negatively impacted (such yields and cash flows being hereinafter referred to as "Net Economic Return"; such increase in Tax Rate, hereinafter the "TRI") or if, as a result of a breach of any representation, warranty or covenant of the Lessee contained in this Lease (i) tax counsel of Lessor shall determine that Lessor is not entitled to claim on its Federal income tax return all or any portion of the Tax Benefits with respect to any Equipment; (ii) any of the Tax Benefits claimed on the Federal income tax return of Lessor are disallowed or adjusted by the Internal Revenue Service; or (iii) any of the Tax Benefits are recomputed or recaptured (any such determination, disallowance, adjustment, recomputation, or recapture hereinafter called a "Loss"), then Lessee shall pay to Lessor, as an indemnity and as additional Rent, such amount as shall, in the reasonable opinion of Lessor, cause Lessor's Net Economic Return, computed on the same assumptions (including, but not limited to, the original Tax Rate assumption), as were utilized by Lessor in originally evaluating the transaction to equal the Net Economic Return that would have been realized by Lessor if such Loss or TRI had not occurred. Such amount shall be payable upon demand accompanied by a statement describing in reasonable detail such TRI or Loss and the computation of the amount of the indemnity.

(e) All of Lessor's rights, privileges and indemnities contained in this Section XIII shall survive the expiration or other termination of this Lease or the Term hereof as it relates to any item of Equipment and the rights, privileges and indemnities contained herein are expressly made for the benefit of, and shall be enforceable by, Lessor, its successors and assigns.

XIV. DISCLAIMER: LESSEE ACKNOWLEDGES THAT IT HAS SELECTED THE EQUIPMENT WITHOUT ANY ASSISTANCE FROM LESSOR, ITS AGENTS OR EMPLOYEES. LESSOR DOES NOT MAKE, HAS NOT MADE, NOR SHALL BE DEEMED TO MAKE OR HAVE MADE, ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO THE EQUIPMENT LEASED HEREUNDER OR ANY COMPONENT THEREOF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY AS TO DESIGN, COMPLIANCE WITH SPECIFICATIONS, QUALITY OF MATERIALS OR WORKMANSHIP, MERCHANTABILITY, FITNESS FOR ANY PURPOSE, USE OR OPERATION, SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT, OR TITLE. All such risks, as between Lessor and Lessee, are to be borne by Lessee. Without limiting the foregoing, Lessor shall have no responsibility or liability to Lessee or any other person with respect to any of the following, regardless of any negligence of Lessor (i) any liability, loss or damage caused or alleged to be caused directly or indirectly by any Equipment, any inadequacy thereof, any deficiency or defect (latent or otherwise) therein, or any other circumstance in connection therewith; (ii) the use, operation or performance of any Equipment or any risks relating thereto; (iii) any interruption of service, loss of business or anticipated profits or consequential damages; or (iv) the delivery, operation, servicing, maintenance, repair, improvement or replacement of any Equipment. If, and so long as, no default exists under this Lease, Lessee shall be, and hereby is, authorized during the term of this Lease to assert and enforce, at Lessee's sole cost and expense, from time to time, in the name of and for the account of Lessor and/or Lessee, as their interests may appear, whatever claims and rights Lessor may have against any Supplier of the Equipment.

XV. REPRESENTATIONS AND WARRANTIES OF LESSEE: Lessee hereby represents and warrants to Lessor that on the date hereof and on the date of execution of each Schedule:

(a) Lessee has adequate power and capacity to enter into, and perform under, this Agreement and all related documents (together, the "Documents") and is duly qualified to do business wherever necessary to carry on its present business and operations, including the jurisdiction(s) where the Equipment is or is to be located.

(b) The Documents have been duly authorized, executed and delivered by Lessee and constitute valid, legal and binding agreements, enforceable in accordance with their terms, except to the extent that the enforcement of remedies therein provided may be limited under applicable bankruptcy and insolvency laws.

(c) No approval, consent or withholding of objections is required from any governmental authority or instrumentality with respect to the entry into or performance by Lessee of the Documents except such as have already been obtained.

(d) The entry into and performance by Lessee of the Documents will not: (i) violate any judgment, order, law or regulation applicable to Lessee or any provision of Lessee's Certificate of Incorporation or By-Laws; or (ii) result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon any Equipment pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument (other than this Agreement) to which Lessee is a party.

(e) There are no suits or proceedings pending or threatened in court or before any commission, board or other administrative agency against or

affecting Lessee, which will have a material adverse effect on the ability of Lessee to fulfill its obligations under this Agreement.

(f) The Equipment accepted under any Certificate of Acceptance is and will remain tangible personal property.

(g) Lessee is and will be at all times validly existing and in good standing under the laws of the State of its incorporation (specified in the first sentence of this Agreement).

(h) The Equipment will at all times be used for commercial or business purposes.

**XVI. RENEWAL OF LEASE TERM:** If an event of default has not occurred and is not continuing hereunder, Lessee, by giving Lessor not less than ninety (90) days' written notice prior to the expiration of the Basic Term of any Schedule, may elect to renew any such Schedule with reference to all, but not less than all, of the Equipment leased thereunder for the period(s) and for the renewal rental(s) (payable in advance) as may be determined by Lessor in its sole discretion. Renewal rental shall be based upon the Fair Market Rental Value of the Equipment at Schedule expiration. Fair Market Rental Value shall be determined in the same manner as Fair Market Value pursuant to Section VII above.

**XVII. MISCELLANEOUS:**

(a) Unless and until Lessee exercises its rights under Section XVI above, nothing herein contained shall give or convey to Lessee any right, title or interest in and to any Equipment except as a lessee. Any cancellation or termination by Lessor, pursuant to the provision of this Agreement, any Schedule, supplement or amendment hereto, or the lease of any Equipment hereunder, shall not release Lessee from any then outstanding obligations to Lessor hereunder. All Equipment shall at all times remain personal property of Lessor regardless of the degree of its annexation to any real property and shall not by reason of any installation in, or affixation to, real or personal property become a part thereof.

(b) Time is of the essence of this Agreement. Lessor's failure at any time to require strict performance by Lessee of any of the provisions hereof shall not waive or diminish Lessor's right thereafter to demand strict compliance therewith. Lessee agrees, upon Lessor's request, to execute any instrument necessary or expedient for filing, recording or perfecting the interest of Lessor. All notices required to be given hereunder shall be deemed adequately given if sent by registered or certified mail to the addressee at its address stated herein, or at such other place as such addressee may have designated in writing. This Agreement and any Schedule and Annexes thereto constitute the entire agreement of the parties with respect to the subject matter hereof. NO VARIATION OR MODIFICATION OF THIS AGREEMENT OR ANY WAIVER OF ANY OF ITS PROVISIONS OR CONDITIONS, SHALL BE VALID UNLESS IN WRITING AND SIGNED BY AN AUTHORIZED REPRESENTATIVE OF THE PARTIES HERETO.

(c) THE PARTIES TO THIS AGREEMENT HEREBY UNCONDITIONALLY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS AGREEMENT, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN THEM. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(d) In case of a failure of Lessee to comply with any provision of this Agreement, Lessor shall have the right, but shall not be obligated to, effect such compliance, in whole or in part; and all moneys spent and expenses and obligations incurred or assumed by Lessor in effecting such compliance shall constitute additional rent due to Lessor within five days after the date Lessor sends notice to Lessee requesting payment. Lessor's effecting such compliance shall not be a waiver of Lessee's default.

(e) Any rent or other amount not paid to Lessor when due hereunder shall bear interest, both before and after any judgment or termination hereof, at the lesser of eighteen percent per annum or the maximum rate allowed by law. Any provisions in this Agreement and any Schedule which are in conflict with any statute, law or applicable rule shall be deemed omitted, modified or altered to conform thereto.

**XVIII. POWER OF ATTORNEY:** LESSEE HEREBY IRREVOCABLY CONSTITUTES AND APPOINTS LESSOR OR ITS ASSIGNEE, AS ITS AGENT AND ATTORNEY IN FACT TO EXECUTE AND FILE ON LESSEES BEHALF ANY UCC FINANCING STATEMENTS (OR THEIR EQUIVALENT), INCLUDING AMENDMENTS THERETO, WHICH LESSOR OR SUCH ASSIGNEE (AS THE CASE MAY BE) DEEMS ADVISABLE IN ITS DISCRETION TO SECURE THE INTERESTS OF LESSOR OR SUCH ASSIGNEE (AS THE CASE MAY BE) AND LESSEE FURTHER AUTHORIZES LESSOR OR SUCH ASSIGNEE (AS THE CASE MAY BE) TO FILE SAME WITH OR WITHOUT LESSEES SIGNATURE APPEARING THEREON.

**THIS AGREEMENT SHALL NOT BE EFFECTIVE UNLESS AND UNTIL EXECUTED BY LESSOR.**

| LESSOR: | LESSEE: |
|---|---|
| Eastern Lift Truck Co., Inc. | W. R. Grace & Co. |
| By: *Robert Cobel Jr.* | By: *Arthur L Wheeler* |
| Title: *Branch Manager* | Title: *Senior Buyer* |
| | Federal Tax Id Number: *135114230* |




D00VAVN

## Dealer Checklist - Lease Agreement

Date: <u>June 28, 2000</u>

**DEALER:** Eastern Lift Truck Co., Inc.

Re: Lease Agreement between:

    Lessee: W. R. Grace & Co.
    Lessor: Eastern Lift Truck Co., Inc.

RECEIVED FEB 2 2 2001

\* **IMPORTANT:** Changes or modifications to Documents will delay funding if not prior approved by NMHG.

<u>All documents and items listed below are required for this transaction:</u>

(Dealer Use)
Completion

- ☑ Lease Agreement
- ☑ Equipment Schedule
- ☑ Certificate of Acceptance. **PLEASE LIST SERIAL NUMBER(S)**
- ☑ Invoice for Advance Rent $613.49 + Use Tax $30.67 in the amount of $ 644.16 ✓    *Take Out of proceeds*
      Made payable to: NMHG Financial Services, Inc.
- ☑ Your invoice in the amount of $ 20,580.00
      <u>If advance payment is not included, we will **DEDUCT** the advance payment from the invoice.</u>
- ☑ Request for Insurance and Billing Information
- ☑ Assignment without Recourse
- ☑ Sales Tax Acknowledgment.
- ☐ Copy of customer's purchase order (for billing purposes)

*Please return documents and this form to :*

Paula Moron
NMHG Financial Services, Inc.
44 Old Ridgebury Road
Danbury, CT 06810
888-338-2487

 

# EQUIPMENT SCHEDULE/PURCHASE OPTION
## TO LEASE AGREEMENT DATED AS OF <u>JUNE 26, 2000</u>

SCHEDULE NO. 4117656-001                    DATED THIS 1-24-01

| Lessor & Mailing Address: | Lessee & Mailing Address: |
|---|---|
| Eastern Lift Truck Co., Inc. | W. R. Grace & Co. |
| 2211 Sulphur Spring Road | 7500 Grace Drive |
| Baltimore, MD 21227 | Columbia, MD 21044 |

Capitalized terms not defined herein shall have the meanings assigned to them in the Lease Agreement identified above ("Agreement"; said Agreement and this Schedule being collectively referred to as "Lease").

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect. This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

**ALL TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS SCHEDULE ARE A PART HEREOF AND ARE BINDING UPON THE PARTIES HERETO.**

**IN WITNESS WHEREOF,** Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives as of the date first above written.

LESSOR:                                      LESSEE:
Eastern Lift Truck Co., Inc.                 W. R. Grace & Co.
By: Robert Koehler                           By: Arthur L Wheeler
Name: Robert Koehler                         Name: ARTHUR L. Wheeler
Title: Branch Manager                        Title: Senior Buyer

A. **Equipment**
Pursuant to the terms of the Lease, Lessor agrees to acquire and lease to Lessee the Equipment listed below:

| Qty | Make | Serial No. | Model | Description (include all attachments) |
|---|---|---|---|---|
| 1 | Yale | A875B1006460X | GLP050RGNUAE078 | New Forklift |

Equipment immediately listed above is located at: 5500 Chemical Road, Baltimore, Baltimore City County, MD 21226

Supplier: <u>Eastern Lift Truck Co., Inc.</u>

B. **Financial Terms**

| 1. Advance Rent (if any): $613.49 | 2. Basic Term Rent: $613.49 |
|---|---|
| 3. Basic Term (No. of Months): <u>36</u> | 4. Public Liability Insurance: Minimum $<u>200M/500M</u> total Liability per occurrence. |

C. **Tax Benefits**
Schedule Type/Tax Benefits
    Lessor does not retain Tax Benefits

D. **Purchase Option**
    **Purchase Option Price:   $ 1.00**
For the purposes of this Schedule only, so long as no default exists hereunder and the lease has not been earlier terminated, Lessee may at lease expiration, upon at least 90 days prior written notice to Lessor, purchase all (but not less than all) of the Equipment leased pursuant to this Schedule on an AS IS BASIS for cash equal to the Purchase Option Price indicated above (plus applicable sales taxes). If the Purchase Option Price is Fair Market Value, Lessee shall be deemed to have waived this option unless it provides Lessor with written notice of its irrevocable election to exercise the same within 15 days after Fair Market Value is determined (by agreement or appraisal).

E. **Assignment**

FOR VALUE RECEIVED, THE UNDERSIGNED LESSOR HEREBY SELLS, TRANSFERS AND ASSIGNS TO NMHG FINANCIAL SERVICES, INC. ("ASSIGNEE"), ITS SUCCESSORS AND ASSIGNS, ALL OF ASSIGNOR'S RIGHT, TITLE AND INTEREST IN AND TO THIS LEASE AND ALL RELATED GUARANTIES, DOCUMENTS AND OTHER INSTRUMENTS RELATED THERETO (COLLECTIVELY, THE "ACCOUNT DOCUMENTS"), AND ALL EQUIPMENT, COLLATERAL AND OTHER PROPERTY DESCRIBED THEREIN (COLLECTIVELY, THE "ACCOUNT PROPERTY"), AND ALL RIGHTS AND REMEDIES THEREUNDER PURSUANT TO THE TERMS OF THE ASSIGNMENT BY DEALER DATED JUNE 26, 2000 AND HEREBY REAFFIRMS ALL OF THE REPRESENTATIONS AND WARRANTIES SET FORTH THEREIN WITH RESPECT TO THE ACCOUNT DOCUMENTS AND THE ACCOUNT PROPERTY. BY ITS SIGNATURE BELOW, THE LESSEE HEREBY ACKNOWLEDGES SAID ASSIGNMENT AND CONSENTS THERETO.





# EQUIPMENT LEASE AGREEMENT

Dated as of January 29, 1998

4023414-001

Name/Address of Lessor

Yale Industrial Trucks-Maryland, Inc.
2211 Sulphur Spring Road
Baltimore, MD 21227

Name/Address of Lessee

W.R. Grace & Co.
5600 Chemical Road
Baltimore, MD 21226

RECEIVED MAR 02 1998 By

Lessees State of Incorporation (if applicable): ____

| Quantity | Equipment Leased - Description: Make/Model/Serial No./Attachments | Primary Equipment Location (if different from above) | |
|---|---|---|---|
| 1 | New Yale Forklift ERP040 with battery & charger  S/N B807N01503U | Address Street City County | Same  Baltimore City    State ____ |

| Lease Term No. of Mos. | Number of Payments | Monthly Rental Payments | | | Purchase Option |
|---|---|---|---|---|---|
| | | Rent + | Use Tax = | Monthly Payment | |
| 60 | 60 @ | 512.00 + | 25.60 = | 537.60 | $ 1.00 |
| | @ | + | = | | |

Additional Provisions:

## TERMS AND CONDITIONS OF THIS LEASE

**I. LEASING:** Lessor does hereby lease to Lessee, subject to the terms and conditions hereinafter set forth, the equipment described above and/or in Exhibit A attached hereto and incorporated herein (collectively, the Equipment).

**II. TERM, RENT AND PAYMENT:**
(a) The rent payable hereunder and Lessees right to use the Equipment shall commence on the date of execution by Lessee of the Certificate of Acceptance (Annex A to this Lease) for such Equipment (Lease Commencement Date). The term of this Agreement shall be for the number of months specified above.
(b) Payments of rent shall be in the amount(s) set forth above commencing on the Lease Commencement Date (except that when the Lease Commencement Date is on or after the twentieth day of any calendar month, then the first rent payment shall be due on the first day of the next succeeding calendar month). Subsequent rental payments will be due on the same day of each month thereafter for the number of months remaining in the Lease Term. Lessee agrees to pay Lessor, in advance, rent at the address stated above or at such other address as Lessor may specify.
(c) If any rental is not paid within ten (10) days after the due date, Lessee agrees to pay, to the extent permitted by law, a late charge of five percent (5%) of the amount of the past due rent.

**III. TAXES:** Lessee shall have no liability for taxes imposed by the United States of America or any State or political subdivision thereof which are on or measured by the net income of Lessor. Lessee shall report (to the extent that it is legally permissible) and pay promptly all other taxes, fees and assessments due, imposed, assessed or levied against any Equipment (or the purchase, ownership, delivery, leasing, possession, use or operation thereof), this Agreement (or any rentals or receipts hereunder), any Schedule, Lessor or Lessee by any foreign, federal, state or local government or taxing authority during or related to the term of this Agreement, including, without limitation, all license and registration fees, and all sales, use, personal property, excise, gross receipts, franchise, stamp or other taxes, imposts, duties and charges, together with any penalties, fines or interest thereon (all hereinafter called "Taxes"). Lessee shall (i) reimburse Lessor upon receipt of written request for reimbursement for any Taxes charged to or assessed against Lessor, (ii) on request of Lessor, submit to Lessor written evidence of Lessee's payment of Taxes, (iii) on all reports or returns show the ownership of the Equipment by Lessor, and (iv) send a copy thereof to Lessor. Lessee understands and agrees that the amount of Use Tax specified above may be adjusted for any change in the rate of such Tax.

### IV. DELIVERY, USE AND OPERATION:

(a) The Equipment shall be shipped directly to the Lessee. The Lessee agrees to accept such shipment and the parties agree that their rights and obligations under this Lease shall not be affected by any delay in shipment caused by circumstances beyond Lessors control, including, but not limited to, acts of God, fire, flood, war, governmental regulations, accidents or labor trouble. Lessee further agrees that Lessor shall not be liable for any loss, or damage by reason of delay in shipment caused by any of the foregoing circumstances.

(b) Lessee agrees to: (i) use the Equipment solely in the conduct of its business; (ii) keep the Equipment at the Primary Equipment Location and not remove all or any part of the Equipment therefrom without the Lessors prior written consent; (iii) if at any time requested to do so by Lessor, affix in a prominent position; plates, tags, or other identifying labels showing the interest therein of lessor.

(c) Lessor shall have the right to inspect and examine any and all units of Equipment during normal business hours.

### V. SERVICE.

Lessee shall, at its sole expense, maintain each unit of Equipment in good working order, repair, condition and appearance, normal wear and tear excepted. All additions, repairs, parts, supplies, accessories, equipment, and devices furnished, attached or affixed to any unit shall become the property of Lessor. Any alternations or modifications with respect to the Equipment that may, at any time during the term of this Lease, be required to comply with any applicable law or any governmental rule or regulation shall be made at the expense of Lessee. No other alternation or modification shall be made without the prior written consent of Lessor.

### VI. LOSS OR DAMAGE:

(a) Lessee hereby assumes and shall bear the entire risk of any loss, theft, damage to, or destruction of, any unit of Equipment from any cause whatsoever.

(b) In the event that any unit of Equipment shall become worn out, lost, stolen, destroyed, irreparably damaged in the reasonable determination of Lessee, or permanently rendered unfit for use from any cause whatsoever (such occurrences being hereinafter called Casualty Occurrences), Lessee shall promptly and fully notify Lessor in writing with respect thereto. On the rental payment date next succeeding a Casualty Occurrence (the Payment Date), Lessee shall pay Lessor the Outstanding Balance for such unit which shall be equal to the sum of the present value (discounted at the rate of six percent (6%) per annum) of both (a) all rentals due or to become due during the remaining term of the Lease with respect to such unit and (b) the Purchase Option amount with respect to such unit, if any, as set forth above. Upon the payment of the Outstanding Balance with respect to such unit, the rental for such unit shall cease to accrue as of the date of such payment, the term of this Lease as to such unit shall terminate and Lessee shall be entitled to retain possession of such unit, subject to any rights of the insurer thereof. If any sums due hereunder shall exceed the amounts allowed by applicable law, the sum due hereunder shall be deemed to equal the amount allowed under applicable law.

### VII. INSURANCE:

Lessee, at its sole expense, shall procure and maintain (a) insurance against all risks of physical loss or damage, including theft to the Equipment, for the higher of the full replacement value thereof or the sum of the unpaid Monthly Rental Payments hereunder, plus the applicable Purchase Option amount (if any), and (b) comprehensive public liability insurance in an amount requested by Lessor against claims arising out of, or accruing during, the term of this Lease for bodily injury, death and/or property damage arising out of the use, ownership, possession, operation or condition of the Equipment, together with any other insurance as may be required by law or reasonably required by Lessor. All insurance for physical loss of or damage to the Equipment shall be payable to Lessor. Lessor shall be named as an additional insured with respect to all liability insurance. All insurance shall not be subject to any co-insurance clause and shall be in such form and issued by such insurers as are satisfactory to Lessor. The Lessee shall furnish to Lessor certified copies or certificates of the policies of such insurance on or prior to the Lease Commencement Date. In the event of any renewal or replacement of any such insurance, certified copies or certificates of the new policies shall be furnished to Lessor by Lessee no less than fifteen (15) days prior to the expiration or cancellation of the old policy. Each insurer shall agree by endorsement upon the policy or policies issued by it that (a) it will give Lessor not less than thirty (30) days written notice before such policy or policies are canceled or materially altered, and (b) coverage as to the interest of any named additional insured or loss payee, other than the Lessee, shall not be invalidated by any action, inactions, breach of warranty or conditions or negligence of the Lessee with respect to such policy or policies.

### VIII. DEFAULT:

(a) Lessor may in writing declare this Lease in default if: Lessee breaches its obligation to pay rent when due and fails to cure said breach within ten (10) days; Lessee breaches any of its obligations under Section VII of this Lease; Lessee breaches any of its other obligations under this Lease or any related document and fails to cure that breach within thirty (30) days after written notice thereof; Lessee becomes insolvent or ceases to do business as a going concern; the Equipment or any part thereof is abused, seized, illegally used or misused; Lessee makes an assignment for the benefit of creditors; a petition in bankruptcy is filed by or against Lessee under any bankruptcy or insolvency laws; or, property of Lessee is attached or a receiver is appointed for Lessee or any of Lessees property.

(b) Lessee hereby authorizes Lessor, at any time after declaration of Lessees default, to enter, with or without legal process, any premises where any Equipment may be and take possession thereof. Lessee shall, upon demand, forthwith pay to Lessor all amounts then due hereunder and, as liquidated damages for loss of bargain and not as a penalty, an amount equal to the Outstanding Balance calculated in the manner set forth in Section VI above. Interest shall accrue on any and all amounts due under this subsection at the rate of eighteen percent (18%) per annum or the maximum rate allowed by law. After default, at the request of Lessor, Lessee shall comply with the provisions of Section XI of this Lease. In accordance with applicable law, Lessor may, but shall not be required to, sell the Equipment, at private or public sale, in bulk or in parcels without having the Equipment present at the place of sale, and Lessor may bid and purchase; or Lessor may, but shall not be required to, release or otherwise dispose of all or a part of the Equipment. The proceeds of sale, lease or other disposition, if any, shall be applied in the following order of priorities: (1) to pay all of Lessor's costs, charges and expenses incurred in taking, removing, holding, repairing and selling, leasing or otherwise disposing of Equipment; then, (2) to the extent not previously paid by Lessee, to pay Lessor all sums due from Lessee hereunder; then (3) to reimburse to Lessee any sums previously paid by Lessee as liquidated damages; and (4) any surplus shall be remitted to Lessee. Lessee shall pay any deficiency in (1) and (2) forthwith.

(c) In case of failure of Lessee to comply with any provision of this Lease, Lessor shall have the right, but shall not be obligated, to effect such compliance in whole or in part and all monies spent by, and expense of, Lessor shall be paid by Lessee forthwith and, if not so paid, shall bear interest at the rate of eighteen percent (18%) per annum or the maximum rate allowed by law. Lessors effecting such compliance shall not be a waiver of the Lessees default. All such monies spent by, and expense of, Lessor and any other obligation assumed or incurred by Lessor in effecting such compliance, shall constitute additional rent payable to Lessor with the next rental payment.

(d) All remedies herein are cumulative and any or all thereof may be exercised in lieu of, or in addition to, each other or any other remedies at law, in equity, or under statute. Lessee waives notice of sale or other disposition ( and the time and place thereof) and place of any advertising. If, after default, this Lease is placed in the hands of an attorney for collection of unpaid rent or enforcement of any other right or remedy of Lessor, Lessee shall pay any and all costs or expenses arising therefrom, including without limitation attorneys fees. Waiver of any default shall not be a waiver of any other or subsequent default.

**IX. ASSIGNMENT:**
(a) WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR, LESSEE SHALL NOT SUBLET, ASSIGN, TRANSFER, PLEDGE OR HYPOTHECATE THIS LEASE, ANY EQUIPMENT OR ANY INTEREST IN THIS LEASE OR IN AND TO THE EQUIPMENT OR PERMIT ITS RIGHTS UNDER THIS LEASE TO BE SUBJECT TO ANY LIEN, CHARGE, OR ENCUMBRANCE OF ANY NATURE.

(b) All rights of lessor hereunder may be assigned or otherwise transferred and when so assigned or transferred, they shall be free of any counterclaim, offset, defense or cross-complaints against such assignee. Lessee reserving such remedies hereunder solely against the Lessor. In the event Lessor assigns this Lease or the rent due or to become due hereunder or any other interest herein, no breach or default by Lessor hereunder or pursuant to any other agreement between Lessor and Lessee, should there be one, shall excuse performance by Lessee of any provision hereto. In the event of such default or breach by Lessor, Lessee shall pursue any rights on account thereof solely against Lessor. No such assignee shall be obligated to perform any duty, covenant or condition required to be performed by Lessor hereunder.

**X. PURCHASE OPTION:** So long as event of default has not occurred and is not continuing hereunder, Lessee, by giving Lessor not less than ninety (90) days written notice prior to the expiration date of the Lease Term, may elect to purchase all, but not less than all, of the Equipment for a Purchase Price equal to the sum of the Purchase Option amount (as stated above), plus any applicable sales tax with respect thereto. If Lessee elects to exercise said Purchase Option, the Purchase Option shall be exercised with respect to the Equipment on the day immediately following the date of expiration of the Lease Term, and by the delivery at such time by Lessee to Lessor of payment, in cash or by certified check, of the Purchase Price. Upon payment of such amount, Lessor shall, upon request of Lessee, execute and deliver to Lessee a bill of sale for the Equipment, on an AS IS WHERE IS and WITH ALL FAULTS basis, without representation or warranties of any kind whatsoever. If Lessee does not elect to exercise said Purchase Option, Lessee shall promptly return the Equipment to Lessor as provided in Section XI herein.

**XI. RETURN OF EQUIPMENT:** At the expiration of the Lease Term, in the event that Lessee has elected not to exercise its Purchase Option, Lessee shall, at its own cost and expense, promptly return the Equipment to the Lessor at any address specified by Lessor within the continental United States, in the same condition as received reasonable wear and tear and normal depreciation excepted. Until Lessee has fully complied with the requirements of this Section, Lessee's rental payment obligation and all other obligations under this Lease shall continue from month to month notwithstanding any expiration or termination of the Lease Term. Lessor may terminate such continued leasehold interest upon ten (10) days notice to Lessee.

**XII. NET LEASE; NO SET-OFF:** This Lease is a net lease. Lessee's obligation to pay rent and other amounts due hereunder shall be absolute and unconditional. Lessee shall not be entitled to any abatement or reductions of, or set-offs against, said rent or other amounts, including, without limitation, those arising or allegedly arising out of claims (present or future, alleged or actual, and including claims arising out of strict tort or negligence of Lessor) of Lessee against Lessor under this Lease or otherwise. Nor shall this Agreement terminate or the obligations of Lessee be affected by reason of any defect in or damage to, or loss of possession, use or destruction of, any Equipment from whatsoever cause. It is the intention of the parties that rents and other amounts due hereunder shall continue to be payable in all events in the manner and at the times set forth herein unless the obligation to do so shall have been terminated pursuant to the express terms hereof.

**XIII. INDEMNIFICATION:** Lessee hereby agrees to indemnify, save and keep harmless Lessor, its agents, employees, successors and assigns from and against any and all losses, damages, penalties, injuries, claims, actions and suits, including legal expenses, of whatsoever kind and nature, in contract or tort, whether caused by the active or passive negligence of Lessor or otherwise, and including, but not limited to, Lessor's strict liability in tort, arising out of (i) the selection, manufacture, purchase, acceptance or rejection of Equipment, the ownership of Equipment during the term of this Agreement, and the delivery, lease, possession, maintenance, uses, condition, return or operation of Equipment (including, without limitation, latent and other defects, whether or not discoverable by Lessor or Lessee and any claim for patent, trademark or copyright infringement or environmental damage) or (ii) the condition of Equipment sold or disposed of after use by Lessee, any sublessee or employees of Lessee. Lessee shall, upon request, defend any actions based on, or arising out of, any of the foregoing. The indemnities and assumption of liability herein provided for shall continue in full force and effect notwithstanding the termination of this Lease, whether by expiration of time, by operation of law or otherwise.

**XIV. DISCLAIMER:**
(a) LESSEE ACKNOWLEDGES THAT IT HAS SELECTED THE EQUIPMENT WITHOUT ANY ASSISTANCE FROM LESSOR, ITS AGENTS OR EMPLOYEES. LESSOR DOES NOT MAKE, HAS NOT MADE, NOR SHALL BE DEEMED TO MAKE OR HAVE MADE, ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO THE EQUIPMENT LEASED HEREUNDER OR ANY COMPONENT THEREOF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY AS TO DESIGN, COMPLIANCE WITH SPECIFICATIONS, QUALITY OF MATERIALS OR WORKMANSHIP, MERCHANTABILITY, FITNESS FOR ANY PURPOSE, USE OR OPERATION, SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT, OR TITLE. All such risks, as between Lessor and Lessee, are to be borne by Lessee. Without limiting the foregoing, Lessor shall have no responsibility or liability to Lessee or any other person with respect to any of the following, regardless of any negligence of Lessor (i) any liability, loss or damage caused or alleged to be caused directly or indirectly by any Equipment, any inadequacy thereof, any deficiency or defect (latent or otherwise) therein, or any other circumstance in connection therewith; (ii) the use, operation or performance of any Equipment or any risks relating thereto; (iii) any interruption of service, loss of business or anticipated profits or consequential damages; or (iv) the delivery, operation, servicing, maintenance, repair, improvement or replacement of any Equipment. If, and so long as, no default exists under this Lease, Lessee shall be, and hereby is, authorized during the term of this Lease to assert and enforce, at Lessee's sole cost and expense, from time to time, in the name of and for the account of Lessor and/or Lessee, as their interests may appear, whatever claims and rights Lessor may have against any Supplier of the Equipment.

(b) LESSOR MAKES NO REPRESENTATION OR WARRANTY AS TO THE STATUS OF THIS LEASE FOR TAX, ACCOUNTING OR OTHER PURPOSES.

**XV. REPRESENTATIONS AND WARRANTIES OF LESSEE:** Lessee hereby represents and warrants to Lessor that on the date hereof:

(a) Lessee has adequate power and capacity to enter into, and perform under, this Lease and is duly qualified to do business wherever necessary to carry on its present business and operations, including the jurisdiction(s) where the Equipment is or is to be located.

(b) The Lease has been duly authorized, executed and delivered by Lessee and constitutes a valid, legal and binding agreement, enforceable in accordance with its terms, except to the extent that the enforcement of remedies herein provided may be limited under applicable bankruptcy and insolvency laws.

(c) No approval, consent or withholding of objections is required from any governmental authority or instrumentality with respect to the entry into or performance by Lessee of the Lease except such as have already been obtained.

(d) The entry into and performance by Lessee of the Lease will not: (i) violate any judgment, order, law or regulation applicable to Lessee or any provision of Lessee's Certificate of Incorporation or By-Laws (if applicable); or (ii) result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon any Equipment pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument (other than this Lease) to which Lessee is a party.

(e) There are no suits or proceedings pending or threatened in court or before any commission, board or other administrative agency against or affecting Lessee, which will have a material adverse effect on the ability of Lessee to fulfill its obligations under this Lease.

(f) The Equipment shall at all times remain personal property of Lessor regardless of the degree of its annexation to any real property and shall not by reason of any installation in, or affixation to, real or personal property, become a part thereof.

(h) If Lessee is a corporation, Lessee is and will be at all times validly existing and in good standing under the laws of the State of its incorporation ( as specified on the first page of this Lease).

(i) The Equipment will at all times be used for commercial or business purposes.

**XVI. MISCELLANEOUS:**

(a) Nothing herein contained shall give or convey to Lessee any right, title, or interest in and to any Equipment leased hereunder except as a Lessee. Lessee will at all times protect and defend, at its own cost and expense, the title of Lessor from and against all claims, liens and legal processes of creditors of Lessee.

(b) Time is of the essence of this Lease. Lessors failure at any time to require strict performance by Lessee of any of the terms and provisions hereof shall not waive or diminish Lessors right to demand strict compliance therewith.

(c) Lessee agrees to execute any instrument necessary for filing, recording or perfecting the interest of Lessor in the Equipment. For the sole purpose of resolving any problem of conflict of laws with respect to the filing or recording hereof, it is declared and agreed that this Lease shall be deemed effective when the Equipment is delivered and fully installed at the address specified herein and that questions of filing or recording shall be determined by the law of such place.

(d) All notices required to be given hereunder shall be deemed adequately given if sent by registered or certified mail to the addressee at its address stated herein, or at such other place as such addressee may have designated in writing.

(e) LESSEE HEREBY UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS LEASE, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN LESSEE AND LESSOR RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN LESSEE AND LESSOR. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS LEASE, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION, THIS LEASE MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(f) This Lease and any Exhibits or Annexes hereto constitute the entire agreement of the parties with respect to the subject matter hereof. NO VARIATION OR MODIFICATION OF THIS LEASE AND NO WAIVER OF ANY OF ITS PROVISIONS OR CONDITIONS SHALL BE VALID UNLESS IN WRITING AND SIGNED BY LESSOR AND LESSEE.

(g) Any provision contained herein which may be invalid under applicable law, or any governmental rule or regulation, shall be deemed omitted, modified or altered to conform thereto.

(h) For income tax purposes, the parties hereto agree that it is their mutual intention that Lessee shall be considered the owner of the Equipment. Accordingly, Lessor agrees (i) to treat Lessee as the owner of the Equipment on its federal income tax return, (ii) not to take actions or positions inconsistent with such treatment on or with respect to its federal income tax return, and (iii) not to claim any tax benefits available to an owner of the Equipment on or with respect to its federal income tax return. The foregoing undertakings by Lessor shall not be violated by Lessor's taking a tax position inconsistent with the foregoing sentence to the extent such position is required by law or is taken through inadvertence so long as such inadvertent tax position is reversed by Lessor promptly upon its discovery. Lessor shall in no event be liable to Lessee if Lessee fails to secure any of the tax benefits available to the owner of the Equipment.

THIS LEASE SHALL NOT BE EFFECTIVE UNLESS AND UNTIL EXECUTED BY LESSOR.          4073414-001

LESSOR:
Yale Industrial Trucks-Maryland, Inc.

By: _____

Title: Vice President

Witness: _____

LESSEE:
W.R. Grace & Co.

By: _____

Title: Manager, Facilities

Witness: _____

Lessee Federal Tax ID #: 13-5114230D1

Purchase Order #: TQ1009