IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: February 13, 2002 at 4:00 p.m.**
**Hearing Date: February 25, 2002 at 8:00 a.m.**

## MOTION FOR THE ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO ACQUIRE THE BUSINESS AND SUBSTANTIALLY ALL OF THE ASSETS OF ADDIMENT INCORPORATED

The above-captioned debtors and debtors in possession (collectively, the

"Debtors") hereby submit this motion (the "Motion") for the entry of an order granting

the Debtors authority to acquire the business and substantially all of the assets of

Addiment Incorporated. In support of this Motion, the Debtors respectfully state as

follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

3.      On April 2, 2001, the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

4.      These Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

## Summary of Operations

5.      The Debtors engage in specialty chemicals and materials businesses, operating on a worldwide basis.  The Debtors predominately operate through two business units – Davison Chemicals and Performance Chemicals.

91100-001\DOCS_DE:38967. 1

6.    The Debtors' Specialty Construction Chemicals division ("SCC")

of its Performance Chemicals unit produces and sells concrete and masonry admixtures

and cement additives on a worldwide basis, primarily to the nonresidential construction

industry.  For over 50 years, the Debtors have pioneered the science of cement and

concrete technologies and have developed a line of admixtures to enhance the production

and quality of masonry products.  SCC's masonry admixtures improve the water

resistance, freeze-thaw durability and other qualities of masonry wall systems, concrete

blocks and pavers.  The admixtures also improve production efficiencies for masonry

product manufacturers.[3]

7.    The Debtors have experienced significant annual revenue growth

with their masonry admixture sales in North America over the past 5 years.  In fact,

masonry admixtures has been the fastest growing segment of SCC's business, particularly

due to the popularity of new block products such as segmental retaining walls and pavers.

SCC's strategy for future growth in North America looks to new product introductions

and enhancements and to acquisitions for further penetration into such fast-growing

markets.

8.    Addiment Incorporated ("Addiment"), a wholly-owned subsidiary

of Lehigh Portland Cement Company ("Lehigh"), provides a compelling masonry

admixture acquisition opportunity for the Debtors.  Addiment is a small, but significant

---

[3]  Pavers are cement blocks used to pave driveways, walkways and similar surfaces.

91100-001\DOCS_DE:38967. 1

3

manufacturer of masonry admixtures in the United States that began manufacturing in the 1980's. Over the last five years, Addiment has had an average annual revenue growth rate of 16%, and in 2001, its net revenues were approximately $6.1 million. In addition, nearly 50% of Addiment's sales are to the paver segment, which the Debtors anticipate will grow at a 10% annual average growth rate over the next 5 years. Addiment's greatest market penetration is in the southern United States, where the use of architectural concrete is concentrated in this country.

9.      The Debtors propose to enter into an asset purchase agreement to acquire the masonry admixture business of Addiment (the company's only business) and substantially all of Addiment's assets upon this Court's approval of the Motion. Specifically, the Debtors intend to purchase the formulations, technology, know-how, equipment, customer lists, trade accounts receivable, inventories, trademarks and goodwill of Addiment. Once acquired, these assets will be relocated to the Debtors' Milwaukee, Wisconsin plant, and offers of employment will be made to certain of Addiment's current employees. Addiment, however, will retain all severance and employee benefit liabilities to its employees. Further, the Debtors will not acquire any real estate in the transaction or assume any employee benefit plans or indebtedness.

10.      The purchase price for the acquisition is $6.5 million in cash, which would be paid at closing, subject to any adjustments. For example, there will be a post-closing adjustment for receivables and inventory, which are currently valued at $1.2

million and $500,000 respectively, as of June 30, 2001. Thus, if the value of Addiment's inventory or receivables has decreased as of the closing of the transaction, the purchase price will be credited accordingly, and conversely, if the value increased, the purchase price will be increased accordingly.

11.    It is expected that no pre-closing liabilities or obligations of Addiment will be assumed by the Debtors, and that Lehigh and Addiment would indemnify the Debtors for pre-closing liabilities, including those relating to any potential environmental issues. The Debtors will not conduct any activities in any former Addiment facilities.

## Relief Requested

12.    By this Motion, the Debtors seek authority to acquire the business and substantially all of the assets of Addiment for a purchase price of $6.5 million on substantially the same terms as set forth in this Motion.

## Basis For Relief

13.    Section 363 of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In this Circuit, the Court should approve a debtor's use of assets outside the ordinary course of business if the debtor can demonstrate a sound business justification for the proposed transaction. See e.g., In re Martin, 91 F.3d 389, 396 (3d Cir. 1996) (*citing* In re Schipper, 933 F.2d 513, 515 (7th

Cir. 1991)); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); In

re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991).

14.    Once the debtor articulates a valid business justification, "[t]he

business judgment rule 'is a presumption that in making a business decision the directors

of a corporation acted on an informed basis, in good faith and in the honest belief that the

action was in the best interests of the company.'" In re Integrated Resources, Inc., 147

B.R. 650, 656 (S.D. N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del.

1985)).  The business judgment rule has significance in chapter 11 cases as it shields a

debtor's management from judicial second-guessing.  See id; Committee of Asbestos-

Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.),

60 B.R. 612, 615-16 (Bankr. S.D. N.Y. 1986) ("[T]he Code favors the continued

operation of a business by a debtor and a presumption of reasonableness attaches to a

debtor's management decisions").

15.    Courts have applied four factors in determining the existence of a

sound business justification: (i) whether a sound business reason exists for the proposed

transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the

transaction has been proposed and negotiated in good faith; and (iv) whether adequate

and reasonable notice is provided.  See In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir.

1983) (setting forth the "sound business purpose" test); Abbotts Dairies, 788 F.2d at 145-

47 (implicitly adopting the articulated business justification test of the Lionel standard

and adding the "good faith" requirement); Delaware & Hudson, 124 B.R. at 176

(adopting Lionel in this district). The Debtor's proposed purchase of Addiment's assets

meet each of these requirements.

   16. Sound Business Reasons. Several sound business reasons exist for

the proposed acquisition of Addiment's business and assets by the Debtors. First, the

acquisition fits well with the Debtors' existing masonry business and provides immediate

sales growth (and sales growth potential) in the fast-growing paver segment. Indeed,

SCC's sales into the paver segment will more than double immediately after the closing,

and the Debtors will be able to enhance that growth in several segments of the masonry

admixture sector through the synergies provided by the Debtors' manufacturing,

technical service and research and development capabilities. In particular, SCC's U.S.

masonry sales force is comprised of more than 50 people, which the Debtors anticipate

will be a key element of, and critical advantage with, the Addiment acquisition.

   17. Fair and Reasonable Consideration. The proposed purchase price

is economically attractive to the Debtors. Addiment's technology, know-how and

already strong sales, combined with the Debtors' profitable operations, will allow the

Debtors' revenues, profits and market share to grow. Moreover, the Debtors expect that

the acquisition will be cash accretive to the Debtors' estates within the first year

following the closing of the transaction, thereby increasing the value of their estates for

the benefit of all stakeholders. The Debtors expect that the acquisition will triple the pre-

91100-001\DOCS_DE:38967. 1

tax earnings of Addiment's business in 2003 through a combination of sales synergies and consolidation of overheads. The $6.5 million purchase price is reasonable and fair consideration for the Addiment masonry admixture business, whether viewed as a multiple of sales or earnings. The Debtors expect additional sales (beyond the combined sales of the stand-alone companies) of $1.7 million per year within 2 years by leveraging the combined strengths of products and customer relationships of the companies, and they anticipate immediate cost savings of $1.0 million per year through the consolidation of overhead. Accordingly, the Debtors believe that the purchase price is fair and reasonable considering the economic benefit to the Debtors' Estates.

18.     Good Faith.  The Debtors and Addiment have negotiated the proposed sale/purchase of Addiment's assets at arm's-length and in good faith. The Debtors also believe that the terms of the proposed transaction are fair to the Debtors.

19.     Adequate and Sufficient Notice.  In satisfaction of the requirements of rule 2002 of the Bankruptcy Rules, the Debtors intend to serve copies of this Motion to all parties as provided herein.

## Summary

20.     The Debtors have years of experience in developing, manufacturing and selling masonry admixtures, and have over 50 years' experience in the research and development of cement and concrete technologies. The Debtors will leverage their extensive R&D, technical service, manufacturing expertise and large sales

force across the line of Addiment's products, and will provide their state-of-the-art technology to the fast-growing paver segment.

21.     Moreover, the Debtors have a long history of successful "bolt-on" acquisitions of this type.  Since December, 1999, the Debtors and their non-debtor subsidiaries and affiliates have completed numerous "bolt-on" acquisitions of various business sizes.  These types of acquisitions are, and will continue to be, integral to the Debtors' growth strategy, and give the Debtors access to technologies and markets that they could not develop internally.

22.     In light of the foregoing, the Debtors have determined in their business judgment that the acquisition of Addiment is fair and reasonable.  The Debtors believe that the proposed purchase is in the best interest of their estates, grounded in sound business judgement and satisfies the "sound business judgment" test for the use of assets outside the ordinary course of business under Section 363(b) of the Bankruptcy Code.

**Notice**

23.     Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee, (v) counsel for Addiment, and (vi) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P.

91100-001\DOCS_DE:38967. 1

2002.  In light of the nature of the relief requested, the Debtors submit that no further

notice is required.

## **No Prior Request**

24.    No prior Application for the relief requested herein has been made

to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an

Order: (i) authorizing the Debtors to acquire the business and substantially all of the

assets of Addiment for a purchase price of $6.5 million and on substantially the same

terms as set forth in this Motion; and (ii) granting such other relief as the Court deems

just and proper.

Dated:  January 25, 2002

        KIRKLAND & ELLIS
        James H.M. Sprayregen
        James W. Kapp III
        Samuel A. Schwartz
        Roger J. Higgins
        200 East Randolph Drive
        Chicago, Illinois 60601
        (312) 861-2000

        and

        PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

        Laura Davis Jones (#2436)
        Hamid R. Rafatjoo (California Bar No. 181564)
        David W. Carickhoff, Jr. (#3715)
        919 North Market Street, 16th Floor
        P.O. Box 8705
        Wilmington, Delaware 19899-8705 (Courier 19801)
        (302) 652-4100

        Co-Counsel for the Debtors and Debtors in Possession