IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., [1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Hearing Date: Only if Timely Objections Are Made** |
| | ) | **Objection Deadline: February 18, 2002 at 4:00 p.m.** |

**APPLICATION FOR AN ORDER PURSUANT
TO SECTIONS 1103(a) AND 328(a) OF THE BANKRUPTCY
CODE AND FED. R. BANKR. P. 2014 AND 2016 AUTHORIZING
THE RETENTION AND EMPLOYMENT OF HAMILTON, RABINOVITZ, &
ALSCHULER, INC. AS CONSULTANTS TO THE OFFICIAL
COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS,
<u>NUNC PRO TUNC TO MAY 2, 2001</u>**

TO:    THE HONORABLE JUDITH K. FITZGERALD,
       UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Asbestos Property Damage Claimants (the "PD Committee") of the above-captioned debtors and debtors in possession (the "Debtors"), by and through this application (the "Application"), respectfully seek entry of an order pursuant to sections 1103 (a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et</u> <u>seq</u>. (the "Bankruptcy

---

[1] The Debtors consist of the following 62 entities: W. R Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Ins., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgracc, Inc., Coalgracc II, Ins., Creative Food `N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace AB Inc., Grace AB 11 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe. Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Squarc Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Ins., MICA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Code"), and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the retention and employment of Hamilton, Rabinovitz, & Alschuler, Inc. ("HRA") as consultants to the PD Committee and for approval of HRA's proposed terms of employment, nunc pro tunc to May 2, 2001. In support of this Application, the PD Committee relies upon the Affidavit of Francine F. Rabinovitz (the "Affidavit"), attached hereto as Exhibit A, and represents as follows.

## INTRODUCTION

1.  On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). On the Petition Date, the Court entered an order of joint administration pursuant to Federal Rule of Bankruptcy Procedure 1015(b) providing for the joint administration of these cases and for their consolidation for procedural purposes only. Pursuant to 11 U.S.C. §§ 1107(a) and 1108, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

2.  On April 12, 2001, the United States Trustee appointed the PD Committee. At a scheduled meeting on May 2, 2001, at which a majority of its members were present, the PD Committee selected HRA to provide consulting services to it during the pendency of the Chapter 11 Cases.

3.  This Court has jurisdiction over these cases pursuant to 28 U.S.C. §§ 157 and 1334 and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  On June 4, 2001, the Debtors filed the Motion of the Debtors for the Entry of an Order Authorizing the Retention of Experts (the "Experts Retention Motion") wherein the Debtors sought an order approving the retention by the Debtors (and any official committee

appointed in the Chapter 11 Cases) of certain experts (the "Experts"), without requiring the submission of separate retention applications for such experts, arguing, among other things, that the Experts were not "professional persons" under 11 U.S.C. § 327. The types of Experts identified in the Experts Retention Motion include experts engaged to assist with the litigation of threshold tort liability issues and with proceedings concerning the allowance/disallowance, estimation and liquidation of claims.

5. On or about June 19, 2001, the PD Committee filed the only objection to the Experts Retention Motion, arguing, among other things, that because the Experts would facilitate the reorganization of the Debtors, the Experts were indeed "professional persons" under 11 U.S.C. § 327. See In re First Merchants Acceptance Corp., 1997 WL 873551, *2-3 (D. Del. 1997). Thus, the PD Committee objected to the retention of Experts by the Debtors, the PD Committee or any other officially committee appointed in the Chapter 11 Cases without filing retention applications with this Court.

6. On June 22, 2001, the Court denied the PD Committee's objection and entered the order approving the Experts Retention Motion. Thereafter, in accordance with such order and the Court's May 3, 2001 administrative order approving interim compensation and reimbursements of expenses for professionals in the Chapter 11 Cases (the "Administrative Fee Order"), counsel to the PD Committee has included the fees and costs of HRA as a line item on its monthly and quarterly interim fee applications.

7. Recently, however, the office of the United States Trustee has informally voiced concerns to counsel to the PD Committee -- similar to those raised by the PD Committee in its objection -- about the propriety of the Debtors and any official committee in the Chapter 11 Cases retaining Experts without filing retention applications and disclosing the Experts to the Court and other parties in interest.

8.  Accordingly, at this juncture, the PD Committee has concluded that it is in the best interest of the estates to disclose and formally retain HRA as an Expert.

## RELIEF REQUESTED

9.  By this Application, the PD Committee respectfully requests that the Court enter an order pursuant to sections 1103(a) and 328(a) of the Bankruptcy Code, and Rules 2014(a) and 2016 of the Bankruptcy Rules authorizing the retention and employment of HRA as its consultants in connection with the Chapter 11 Cases, and granting such further and other relief as this Court deems just and proper.

10. The PD Committee requests that such retention be <u>nunc</u> <u>pro</u> <u>tunc</u> to May 2, 2001, the date HRA commenced postpetition services for the PD Committee.

## HRA'S QUALIFICATIONS

11. HRA is a consulting firm, providing analytical services focused on the estimation of claims and the development of claims procedures with regard to payments and assets of a claims resolution trust. HRA is well-qualified to serve as the PD Committee's consultant in that, among other things, its members have assisted and advised numerous chapter 11 debtors and creditors in the estimation of the value and number of claims in other "mass-tort" reorganizations. In particular, HRA's members have provided services to debtors and creditors in numerous chapter 11 and complex "mass tort" cases, including, <u>In re Celotex Corp., et al.</u>, <u>In re A.H. Robins Co., Inc.</u>, and <u>In re Silicone Gel Breast Implant Products Liability Litigation</u>.

## SERVICES TO BE PROVIDED BY HRA

12. The PD Committee anticipates that HRA will render consulting services for the PD Committee as needed throughout the course of the Chapter 11 Cases, including:

(a) Estimation of the number and value of present and future asbestos claims;

(b)     Development of claims procedures to be used in the development of financial models of payments and assets of an asbestos settlement trust;

(c)     Analyzing and responding to issues relating to the setting of a bar date regarding the filing of property damage claims;

(d)     Assessing proposals made by the Debtors or other parties, including, without limitation, proposals from other creditors' committees;

(e)     Assisting the PD Committee in negotiations with various parties;

(f)     Rendering expert testimony as required by the PD Committee; and

(g)     Such other advisory services as may be requested by the PD Committee from time to time.

## HRA'S COMPENSATION

13.     HRA has agreed to accept as compensation for its services in this case such sums as may be allowed by this Court in accordance with law, based upon the services rendered, the results achieved, the difficulties encountered, the complexities involved, and other appropriate factors.

14.     HRA has agreed to be compensated for its services on an hourly basis, in accordance with its normal billing practices, subject to allowance by this Court in accordance with the Administrative Fee Order and other applicable law. The current hourly rates HRA charges are:

| **Position** | **Charge Per Hour*** |
|---|---|
| Senior Partners | $375 |
| Junior Partners | $325 |
| Principals | $275 |

| Directors | $200 |
|---|---|
| Managers | $175 |
| Senior Analysts | $150 |
| Analysts | $100 |
| Research Associates | $75 |
|  | *Depositions, arbitration hearing or trial testimony hours are billed at time and one-half |

15. In addition, also subject to allowance by this Court in accordance with the Administrative Fee Order and other applicable law, HRA shall bill the Debtors for reimbursement of all of its reasonable out-of-pocket expenses incurred in connection with HRA's employment.

16. HRA also requests that this Application be granted <u>nunc pro tunc</u> to May 2, 2001 to allow HRA to be compensated for work it performed for the PD Committee from and after May 2, 2001, but prior to the submission of this Application or the order granting it.

**APPROVAL OF THE TERMS OF
HRA'S ENGAGEMENT PURSUANT
TO SECTION 328(a) OF THE BANKUPTCY CODE**

17. The PD Committee requests approval of the terms of HRA's engagement, subject to the standard of review provided in section 328(a) of the Bankruptcy Code. Section 328(a) of the Bankruptcy Code provides, in part, that a committee "with the court's approval, may employ or authorize the employment of a professional person under section . . . 1103 . . . on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a). As recognized by numerous courts, Congress

intended in section 328(a) to enable debtors and committees to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). See <u>In re Nat'l Gypsum Co</u>.,123 F.3d 861, 862-63 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.").

18. The PD Committee believes that the fee structure is reasonable and should be approved under section 328(a) of the Bankruptcy Code. The fee structure appropriately reflects (i) the nature of the services to be provided by HRA, and (ii) the fee structure is typically utilized by HRA and other leading consultants. In sum, the PD Committee believes that the fee structure is reasonable in light of (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) HRA's substantial experience with respect to identifying and estimating the amount of asbestos property damage claims, and (d) the nature and scope of work to be performed by HRA in the Chapter 11 Cases.

19. Subject to the foregoing, including the standards imposed by section 328(a) of the Bankruptcy Code, awards of compensation and expenses will be sought by HRA pursuant to

sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Administrative Fee Order, and the rules and orders of this Court.

### DISCLOSURE CONCERNING CONFLICTS AND PREPETITION PAYMENTS

20. HRA has informed the PD Committee that, except as described in the Affidavit, HRA (i) does not have or represent any interest materially adverse to the interests of the Debtors or their estates, creditors or equity interest holders, and (ii) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code. Moreover, the retention and employment of HRA is necessary and in the best interests of the PD Committee, the Debtors and their estates and creditors.

21. As set forth in the Affidavit, HRA has not shared or agreed to share any of its compensation with any other person, other than a managing director, professional or employee of HRA, as permitted by section 504 of the Bankruptcy Code.

### NOTICE

22. Proper notice of this Application has been given and the PD Committee submits that no further notice be given.

**Case No 01-01139**

## WAIVER OF MEMORANDUM OF LAW

23.     As there are no novel issues of law presented herein, the PD Committee waives its right to file a memorandum of law in support of the Application, pursuant to Rule 7.1.2(a) of the Local Rules, incorporated by reference into the Local Bankruptcy Rules by General Order #9D.

## PRIOR REQUEST FOR RELIEF

24.     No previous application for the relief sought in this Application has been made to this or any other court.

WHEREFORE, the PD Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit "C" pursuant to sections 1103(a) and 328(a) of the Bankruptcy Code, and Rules 2014(a) and 2016 of the Bankruptcy Rules (a) authorizing the retention and employment of HRA as its consultant pursuant to the terms outlined in this Application _nunc pro tunc_ to May 2, 2001, (b) approving the proposed fee structure as reasonable under section 328(a) of the Bankruptcy Code, and (c) granting such further and other relief as this Court deems just and proper.

Dated:  January 29, 2002

                                       THE OFFICIAL COMMITTEE OF ASBESTOS
                                       PROPERTY DAMAGE CLAIMANTS

                                       By: /s/ Darrell Scott                                    .
                                           Darrell Scott, as designee of Mr. Marco
                                           Barbanti, Co-Chairman

                                       By: /s/ Daniel Speights                                 .
                                           Daniel Speights, as designee of
                                           Anderson Memorial Hospital,
                                           Co-Chairman