IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**DEBTORS' SECOND QUARTERLY REPORT OF SETTLEMENTS FROM OCTOBER 1, 2001 THROUGH DECEMBER 31, 2001 IN ACCORDANCE WITH THAT CERTAIN AMENDED ORDER AUTHORIZING AND APPROVING AN OMNIBUS PROCEDURE FOR SETTLING CERTAIN CLAIMS AND CAUSES OF ACTION BROUGHT BY OR AGAINST THE DEBTORS IN A JUDICIAL, ADMINISTRATIVE, ARBITRAL OR OTHER ACTION OR PROCEEDING**

PLEASE TAKE NOTICE that pursuant to that certain Amended Order (the "Order") Authorizing and Approving an Omnibus Procedure for Settling Certain Claims and Causes of Action Brought by or Against the Debtors in a Judicial, Administrative, Arbitral or Other Action or Proceeding dated July 31, 2001, the chart attached hereto as Exhibit A lists: the settlements made by the Debtors from the period of October 1, 2001, through December 31, 2001 (the "Settlement

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Period"), including the names and addresses of the settling parties, the types and amounts of the settlements and the nature of the settlements, including the amount of any monetary payments received by the Debtors.

PLEASE TAKE FURTHER NOTICE that in accordance with the Order, the Debtors provided the Negative Notice Parties (as defined in the Order) with twenty days prior written notice of the settlements listed on Part I of Exhibit A attached hereto. The deadline to object to such settlements has passed and as of the date hereof, no such objections have been received by the Debtors.

PLEASE TAKE FURTHER NOTICE that the Debtors may have settled claims or causes of action during the Settlement Period which inadvertently were not listed on Exhibit A attached hereto. Such settlements will be disclosed in future reports filed with the Court.

Dated: January 31, 2002

KIRKLAND & ELLIS
James H.M. Sprayregen
James W. Kapp III
Samuel A. Schwartz
Roger J. Higgins
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

_/s/ David W. Carickhoff Jr._
Laura Davis Jones (#2436)
David W. Carickhoff, Jr. (#3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

**W. R. Grace & Co., et al.**
**District of Delaware, Bankruptcy Case No. 01-1139**
**Report on *De Minimis* Settlements as of December 31, 2001**

**Part I – Settlements with a value of less than $1,000,000, but greater than $50,000**

| Debtor: | Settling Party: | Description of Settlement: |
|---|---|---|
| W. R. Grace & Co.-Conn. ("Grace") | Privest Properties Ltd. ("Privest") c/o Miller Thomson LLP 1000–840 Howe Street Vancouver, British Columbia V6Z2M1 Canada | In September of 1987, Privest filed suit against Grace alleging that its property, the Spencer Building in Vancouver, British Columbia, had been contaminated by the presence of Grace's Monokote 3 ("MK-3") sprayed fireproofing product. The plaintiffs alleged that MK-3 contained asbestos such that the Spencer Building had been contaminated, thereby increasing the risk that occupants of, and workers at, the building could contact asbestos-related diseases. The ensuing trial took approximately 182 days of court time between January 20, 1992 and January 10, 1994, including more than 6,000 pages of written argument and 22 days of oral argument. On September 26, 1995, the British Columbia Supreme Court found that (i) MK-3 was not an inherently dangerous product and did not expose occupants and workers to an increased risk of contracting any asbestos-related diseases and (ii) any asbestos fibers that were released into the atmosphere of the building by MK-3 did not cause damage to the property. Accordingly, the Court found that there was no negligence, no breach of a duty of care or a duty to warn and no misrepresentation on the part of Grace. The judgment was affirmed by the British Columbia Court of Appeal and subsequently the Supreme Court of Canada denied the Plaintiffs' application for leave to appeal.<br><br>Under the law of British Columbia, the prevailing party to a lawsuit is entitled to its reasonable court costs incurred as a result of such litigation. Court costs in British Columbia are calculated by means of tariffs which contain ranges of amounts for various items. The court then has considerable discretion in determining the particular tariff amounts, as well as the amounts properly claimable for disbursements incurred by the prevailing party (for example, expenses such as expert reports). Ordinary court costs are not intended to provide full indemnity to a prevailing party for the legal fees it has paid.<br><br>The court costs claimed by Grace for the Privest litigation totalled approximately $945,000 U.S. In resolution of the costs, Privest agreed to pay $693,000 U.S. (the "Settlement Amount"), is payable to Grace, less approximately $18,900 U.S., the amount of the prepetition fees owing to Lawson Lundell, Grace's Canadian attorneys in Vancouver, British Columbia. (Under the law of British Columbia, Lawson Lundell has a solicitor's lien claim against the Settlement Amount.)<br><br>If Privest's settlement proposal had not been accepted by Grace and there had not been a suitable resolution of the matter, Grace would have been required under the law of British Columbia to prove its claim in the courts in which the case had proceeded (the B.C. Supreme Court, the B.C. Court of Appeal and the Supreme Court of Canada). Due to the significant expense of such litigation and the uncertainty of the outcome (given the |

| | | |
|---|---|---|
| | | large role played by the exercise of the court's discretion), Lawson Lundell recommended that Grace accept the Settlement Amount. Upon the advice of its Canadian counsel, Grace believes that the settlement proposal is fair and reasonable, and has accepted such proposal. |
| Grace | Capsules Zapata Auscan, Inc. ("Zapata") 2699 South Bayshore Drive Coconut Grove, Florida | Grace is the holder of certain patents in the United States, Canada and certain other foreign countries, which pertain to a plastic gasket composition containing an ascorbate oxygen scavenger (the "Compositions") used to form the plastic liner inside a bottle closure ("Crown"), such as a beer-bottle cap. These Compositions were developed, in part, because the quality of bottled beer decreases over time due to exposure to oxygen. In particular, the Compositions reduce the presence of oxygen that might otherwise diffuse through a bottle's liner, thereby providing the optimal preservation of beer. Zapata is a major Crown manufacturer and supplier of metal Crowns to the beer industry. Certain of Zapata's commercial Crowns incorporated an ascorbate oxygen scavenger. As a result thereof, it is Grace's position that Zapata has been infringing upon Grace's Composition patents.

On November 1, 1995, Zapata filed an action against Grace in the Southern District of Florida (the "Florida Court"), captioned as Zapata v. W. R. Grace & Co. - Conn., S.D. Fla Case No. 95-2420-CIV (Middlebrooks) (the "Patent Action"). In particular, the Patent Action sought a declaration that Grace's Composition patents were invalid. Grace filed a counterclaim for patent infringement against Zapata. Thus, although Zapata was technically the plaintiff, the Patent Action proceeded as a standard patent infringement action where Grace, as patentee, sought monetary damages and an injunction against Zapata.

In December, 2000, a jury trial was held before District Judge Middlebrooks on the infringement and validity issues. After the close of the evidence and prior to submission of the case to the jury, the district court granted Grace's motion for judgment as a matter of law with respect to one of Zapata's invalidity defenses and one of its non-infringement defenses.

After deliberation, the jury found Zapata's products to be within the claims of the Grace patents. As instructed by the District Court, the jury also found that Grace incurred contingent damages in the amount of approximately $2.3 million, assuming Grace's patents were valid and infringed. The jury, however, found Grace's patents not to be infringed because it determined that such patents were invalid. On the basis of the single invalidity issue, the District Court entered judgment in Zapata's favor on January 19, 2001. Grace filed a timely notice of appeal to the Court of Appeals for the Federal Circuit and such appeal is currently pending. Grace has also been granted relief from the automatic stay in the above-captioned matter to pursue the Patent Action.

After the filing of the Patent Action, Grace learned that Zapata was also selling Compositions in Canada. Accordingly, Grace filed suit against Zapata in Canada alleging that Zapata had infringed on Grace's patents. In March of 2001, Zapata informed Grace that it was withdrawing from the Canadian market and selling its assets there. Settlement discussions were ongoing, but due to the Florida Court's finding that Grace's patents were invalid, Zapata initially refused Grace any sums related to its patent infringement damages. Upon |

| | |
|---|---|
| | further negotiation, however, Zapata agreed to pay Grace approximately $195,000 U.S. for its costs and damages, which sums were paid by Zapata and received by Grace in late September, 2001. Considering (i) the uncertainty of success of the Canadian litigation (which was not subject to the automatic stay of section 362 of the Bankruptcy Code), (ii) the estimated costs of pursuing the patent infringement litigation and the related cost of time incurred by Grace's management, (iii) the relatively small amount of damages of approximately $250,000 to $350,000 U.S. Grace estimated to be recoverable if it was successful in such litigation, (iv) Zapata's agreement to consent to a judgment (a) declaring Grace's patents valid and infringed and (b) permanently enjoining Zapata from infringing on Grace's patents, the Debtors determined that the terms of the Canadian settlement with Zapata were fair and reasonable. Accordingly, the Debtors accepted the settlement payment from Zapata. |
| Protein Genetics, Inc. ("PGI") 1825 Infinity Road DeForest, Wisconsin  53532 | Grace owns 10,000 shares of Series B Preferred Stock of PGI, a biotech company based in Wisconsin. The Preferred Stock was originally issued to Grace in 1994 in connection with Grace's divestment of its American Breeders Service ("ABS") and Caribbean fertilizer business to PGI. The Series B Preferred Stock is junior in dividends, redemption and liquidation distributions to senior notes and Series A and C Preferred Stock held by PGI's senior lenders. After paying Grace scheduled dividends on a semi-annual basis through 1997, PGI, due to financial difficulties, has not paid any dividends to Grace on the Series B Preferred Stock since February of 1998. Accordingly, dividends and interest have been accruing at the default rates of 15% and 17%, respectively, on the $1 million par value of the Series B Preferred Stock. Grace is currently owed approximately $475,000 in unpaid dividends and interest penalties at the default rate of potentially $438,970. Grace recently asserted that the entire amount is due and payable to Grace under PGI's Amended Certificate of Incorporation as a result of PGI's divestment of the ABS business in December, 1999.<br><br>Negotiations have recently concluded between PGI and its senior lenders to retire all of PGI's senior notes from the proceeds of the sale of certain real estate owned by PGI, while retaining enough cash in the business to operate one more year.  According to PGI management, the company hopes to secure venture capital financing in 2002.  After protracted negotiations, PGI has agreed to immediately pay Grace $200,000 in cash in settlement of Grace's claims for accrued dividends and interest.  In addition, PGI has agreed that the $1 million in Series B Preferred Stock held by Grace, will be converted to Series C Preferred Stock, thus elevating it to pari passu treatment with the Series A and other Series C Preferred Stock.<br><br>Given PGI's precarious financial position, Grace believes that acceptance of $200,000 in cash immediately in full and complete settlement of the outstanding dividends and interest and the positive conversion of the Series B Preferred Stock held by Grace on a going forward basis is in Grace's best interest.  Given PGI's present financial condition, $200,000 is the maximum amount of cash PGI can pay on the unpaid dividends. If litigation were pursued, it would likely be costly given the complicated and tortured financial history of PGI.  In addition, Grace would expect PGI to mount a substantial defense with respect to Grace's entitlement to default and penalty interest.  Further, the ultimate financial survival of PGI is still in grave doubt.  Thus, Grace believes the settlement reached with PGI outlined herein is a fair and reasonable settlement of its claims |
| W. R. Grace & Co.- Conn. ("Grace") | |

| against PGI. |
|---|
| |

**Part II** – **The Debtors did not enter into any settlements with a value of $50,000 or less.**