**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| *In re* | : | |
| | : | Chapter 11 |
| W.R. GRACE & CO., *et al.* | : | |
| | : | Case Number 01-1139 (JKF) |
| Debtors | : | |
| | : | (Jointly Administered) |

Hearing Date: February 25, 2002 at 8:00 a.m.
Objection Deadline: January 30, 2002 at 4:00 p.m.

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' APPLICATION FOR ORDER (i) APPROVING THE PAYMENT OF PROFESSIONAL FEES AND EXPENSES AND (ii) AUTHORIZING THE EMPLOYMENT AND RETENTION OF PRICEWATERHOUSECOOPERS LLP AS INDEPENDENT ACCOUNTANTS AND AUDITORS TO THE DEBTORS (Docket No.      )**

In support of his Objection to the Application of the Debtors for Entry of an Order (i) Approving the Payment of Professional Fees and Expenses and (ii) Authorizing the Employment and Retention of PricewaterhouseCoopers LLP as Independent Accountants and Auditors to the Debtors (the "Application"), Donald F. Walton, the Acting United States Trustee (UST) for Region 3, by undersigned counsel, avers:

**INTRODUCTION**

1. This Court has jurisdiction to hear the above-captioned Objection.

2. Pursuant to 28 U.S.C. § 586 , the UST is charged with the administrative oversight of cases commenced pursuant to Title 11, United States Code.

3. Pursuant to 11 U.S.C. § 307, the UST has standing to be heard with regard to the above-captioned Objection.

4. On or about January 10, 2002, Debtor filed the Application, seeking (i) authority to pay PricewaterhouseCoopers LLC ("PwC") for certain fees and expenses incurred from

inception of the case to date and (ii) retention of PwC as accountants and auditors for the Debtors going forward.

## **OVERVIEW OF ISSUES RAISED BY THE APPLICATION**

5.      This case was commenced nearly ten months ago, on April 2, 2001. It appears from the Application that PwC has been rendering services since the inception of the case (and, indeed, before). Nevertheless, this is the first document filed in the case seeking any approval of PwC's acting as Debtors' accountant.

6.      The Application admits PwC has a conflict. *See* Application at ¶ 6, Affidavit at ¶¶ 4-6. Thus, PwC has admitted that it does not meet the standard of "disinterested person" for purposes of sections 101(14) and 327 of the Code.

7.      PwC had knowledge of the conflict since before the commencement of the case. *See* Affidavit at ¶¶ 4-6. Nevertheless, PwC did not disclose the conflict for nearly ten months.

8.      PwC rendered services while they had a conflict, and therefore were not retained and could not have been retained. Nevertheless, they ask to be paid anyway.

9.      PwC does not dispute that the conflict still exists. Nevertheless, they ask to be allowed to continue working.

10.      PwC is asking the Court to overlook their conflict on the basis that (i) they can get paid anyway under section 503(b)(3) or 503(b)(1) of the Bankruptcy Code, and (ii) they are not professionals with respect to the work they propose to do going forward. Both of these positions are wholly contrary to the plain language of the Code and to settled law in this Circuit and elsewhere. PwC's arguments are not supported by any pertinent authority and border on the frivolous.

## PwC IS NOT ENTITLED TO COMPENSATION UNDER § 503(B)

11. Section 503(b)(3)(D) of the Code permits "a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title" to seek an award of compensation for making a "substantial contribution" in a case under chapter 11. The applicant seeking an allowance for administrative expenses has the burden to establish entitlement to such an award under 11 U.S.C. § 503(b). *Lebron v Mechem Financial Corp.,* 27 F.3d 937 (3d Cir. 1994); *In re Buckhead America Corp.,* 161 B.R. 11 (Bankr. D.Del. 1993).

12. PwC is the <u>debtors'</u> accountant and auditor. It is not a creditor,[1] indenture trustee, equity security holder or an unofficial committee of creditors or equity holders. Therefore, PwC facially fails the basic test for eligibility to seek compensation under section 503(b)(3)(D). *Goodman v. Phillip R. Curtis Enterprises Inc.,* 809 F.2d 228, 231 n.4 (4th Cir. 1987) (attorney representing debtor not entitled to seek compensation under section 503(b)(3)).

13. PwC argues that they are entitled to be paid either under §503(b)(3)(D) for making a "substantial contribution" or under section 503(b)(1)(A) as an administrative expense for the ordinary and necessary expenses of preserving the estate. PwC cites no authority supporting the proposition that a professional rendering services to the debtor who is ineligible to be retained under section 327, and in fact is not so retained, can be compensated under either §503(b)(1) or §503(b)(3) instead.

---

[1]  Nothing in the Application indicates that PwC is a creditor, i.e. that it has an unpaid prepetition claim. If PwC is in fact a creditor, that is yet another disqualifying fact they have not disclosed. *See United States Trustee v. Price Waterhouse*, 19 F.3d 138 (3d Cir. 1994).

14.     PwC's argument is directly contrary to controlling Third Circuit authority.  In *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99 (3d Cir. 1988), a broker who negotiated an aircraft lease for the debtor was denied employment under section 327(a).  The broker nevertheless sought approval of his compensation under section 503(b)(1)(A).  The court held that section 503(b)(2), authorizing payment of compensation awarded under section 330 to <u>retained</u> professionals, was the exclusive means of awarding administrative expenses to professional persons, and the broker "cannot rely on section 503(b)(1)(A) as a way of circumventing section 327 (a). . . . If [the broker] were able to be compensated under section 503(b)(1)(A), it would render section 327(a) nugatory and would contravene Congress' intent in providing for prior approval."  844 F.2d at 109.

15.     Courts in numerous other circuits have ruled squarely against the proposition advanced by PwC, often in similar factual circumstances:

<u>Second Circuit</u>

The Court of Appeals for the Second Circuit rendered a decision essentially identical to *F/S Airlease,* on similar facts, in *In re Keren Limited Partnership,* 198 F.3d 86 (2d Cir. 1999). In *In re Wake*, 222 B.R. 35 (Bankr.W.D.N.Y. 1998), debtor's accountant sought to be compensated for preparing tax returns.  The accountant was a creditor and therefore was not and could not be retained.  Rejecting his administrative expense claim, the court held that to allow the accountant to be paid under section 503(b)(1) when he was not and could not have been employed under §327(a) "would allow that professional person to be rewarded and compensated for failing to comply with the specific requirements of this Court."  222 B.R. at 39.

Fifth Circuit

In *In re Office Products of America*, 136 B.R. 675 (W.D.Tex. 1992), an investment banker whose retention was disapproved sought to be paid anyway, arguing alternatively that it was a party to an executory contract that was assumed, that it should be paid under section 503(b)(1)(A), that the trustee was equitably estopped from denying employment, that promissory estoppel applied, or that the investment banker should be compensated under principles of quantum meruit. The court rejected each of the investment banker's arguments, noting that "[t]here is simply no room in the statutory scheme for the sort of exception [the investment banker] here proposes." 136 B.R. at 687.

Sixth Circuit

In *In re Middleton Arms*, 934 F.2d 723 (6th Cir. 1991), debtors sought to retain a real estate broker who was a creditor and an insider and therefore, by debtors' admission, was not disinterested. Debtors sought to retain and compensate the broker under sections 105(a) and/or 1107(b) of the Code. Noting that "[s]ection 105(a) cannot be used to circumvent the clear directive of section 327(a)," the court denied the retention notwithstanding the debtors' argument that it would be in the best interests of the estate to be able to use the non-disinterested professional.

Seventh Circuit

In *In re Singson*, 41 F.3d 316 (7th Cir. 1994), the court of appeals, affirming the district court and the bankruptcy court, held that an attorney's application for nunc pro tunc retention was properly denied, and further held as a result that the attorney could not seek compensation

5

under section 503. "Nothing in §503 permits a law firm to recover fees for work that the bankruptcy judge has concluded is noncompensable." 41 F.3d at 320, citing *Airlease*.

Tenth Circuit

In *In re Albrecht*, 233 F.3d 1259, 1261 (10th Cir. 2000), the court denied appointment of the Chapter 11 trustee's proposed counsel and further held that the bankruptcy court properly refused to award fees to the law firm under section 503(b)(1)(A) "as an equitable remedy." Similarly, in *In re Stoico Restaurant Group, Inc.*, 2002 WL 75661 (Bankr.D.Kan. Jan. 11, 2002) the court declined to award compensation under section 503(b)(3)(D) to a law firm whose employment was disapproved on grounds of lack of disinterestedness. The court held that the Tenth Circuit's reasoning in *Albrecht* as to section 503(b)(1)(A) applied with equal force to §503(b)(3)(D), also observing that {t]he court has no discretion to award the fees when, as is the case, a professional has not been employed." 2001 WL 75661 at *6.

Eleventh Circuit

In *In re Concrete Products, Inc.*, 208 B.R. 1000 (Bankr.S.D.Ga. 1996), the court cited *Airlease*, *Office Products* and other cases in concluding that a professional not eligible for retention under section 327 could not obtain substitute compensation under section 503(b), or as <u>quantum meruit</u>, or otherwise. The court held that to hold otherwise "would make the language of Sections [sic] 503(b)(2) superfluous. . . . A court should not circumvent the limitations placed on retention of professionals by compensating a disqualified professional under Section 503(b)(1)(A)." 208 B.R. at 1010.

16. PwC has advanced no basis on which this Court should ignore the overwhelming weight of authority against its request for compensation under section 503(b)(1)(A) or 503(b)(3)(D).

**PwC IS A PROFESSIONAL WHOSE RETENTION IS REQUIRED UNDER §327(a)**

17. PwC contends that it has ceased providing any "bankruptcy or business recovery services" to the Debtors, and that it may be employed to provide auditing services, tax services, and "additional general business consulting and other related accounting and support deemed appropriate and necessary by the Debtors" without the necessity of filing a retention application or otherwise complying with section 327(a) (such as by being disinterested), on the basis that PwC is not a "professional person" under section 327(a) for the purpose of such services.

18. Section 327(a) of the Code provides that the trustee (and thus the debtor in possession), "with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, . . . to represent or assist the trustee in carrying out the trustee's duties under this title." Thus, under the plain language of the statute, the question of the meaning of the term "professional persons" only arises with respect to persons "other" than attorneys, appraisers, accountants and auctioneers. The Code does not give the court any discretion to determine that the debtor's accountant does not fall within section 327(a).

19. Indeed, PwC does not cite a single case in which any court has held that the debtor's tax accountant and/or auditor is not a professional within the meaning of section 327(a). Debtor's citation to *In re That's Entertainment Group*, 168 B.R. 226 (N.D.Cal. 1994) is inapposite. In that case, the court held that an accounting firm acting as an expert witness in an intellectual property action was not required to be retained under section 327(a). The decision is

in line with the generally accepted principle that expert witnesses in collateral litigation are not section 327(a) professionals. Nothing in the case even suggests that its reasoning would apply to a situation where an accounting firm is acting as an accountant. PwC is not acting as an expert witness here.

20.     Even if it is necessary to delve into the question of who is a "professional person," PwC's argument fails. PwC notes correctly that in this District, Judge Farnan set forth a multi-factor test in *In re First Merchants Acceptance Corp.*, 1997 WL 873551 (D.Del. 1997) (a case that did not involve an accountant), and that no one factor is dispositive. Nevertheless, PwC's argument is based on only one factor, i.e. that the services are "ordinary course."

21.     PwC's argument is inconsistent with its own proposed scope of services in that PwC proposed to perform reorganization related tax analysis and advising. *See* Application at ¶ 24(b)(ii).

22.     More generally, PwC's assertion that auditing, SEC reporting and tax planning do not have a central role in the reorganization is specious. Debtors' financial statements, SEC reports and tax returns must accurately report and characterize events that are taking place in the case that would not take place outside of bankruptcy. PwC cannot do this work as if the Chapter 11 case did not exist. Additionally, Debtors' financial statements are the necessary starting point of the reorganization analysis and will be key in determining reorganization-related valuation issues such as what value is appropriately allocated to the asbestos claims for purposes of section 524(g).

23.     Furthermore, PwC's argument is based on a false premise as a matter of law. Under 28 U.S.C. §959(b), a debtor in possession "shall manage and operate the property in his

possession . . . according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do, if in possession thereof." Apparently Congress optimistically presumed it would go without saying that the debtor in possession in a federal proceeding would remain bound by applicable federal law. In any event, there is no dispute that the debtor in possession must operate in accordance with law. *E.g.*, *In re Quanta Resources Corp.*, 739 F.2d 912 (3d Cir. 1984), *aff'd sub nom. Midlantic National Bank v. New Jersey Department of Environmental* Protection, 474 U.S. 494 (1986); *In re Al Copeland Enterprises, Inc.*, 991 F.2d 233 (5th Cir. 1993). The trustee (here, a debtor in possession acting as the trustee) is required to file tax returns. The trustee is required to comply with the securities laws. Therefore, the services PwC proposes to render are services essential to "assist the trustee in carrying out the trustee's duties under this title" and thus are without a doubt within the scope of section 327(a).

24.     PwC cannot cite a case in which any court paused for even a moment over whether the debtor's accountants and auditors are professionals. PwC's position is contrary to the holding of the court in *In re Bicoastal Corp.*, 149 B.R. 216 (Bankr.M.D.Fla. 1993). The court held that an accountant who was employed by the debtor to manage and administer the assets of the debtor's pension plan was a professional person whose employment under section 327 was required. The court specifically rejected the argument that the accountant was acting in the "ordinary course" and thus could be compensated without notice or a hearing under section 363(c)(1).

25.     It is particularly telling that there have been numerous reported cases in which an accountant or auditor was disqualified or ineligible, and lost every dollar of its fees, and in none

of those cases is there any discussion of the accountant being entitled to render "ordinary course" services and be paid for same. The most obvious example of such a case is one in which PwC's predecessor Price Waterhouse was involved, *United States Trustee v. Price Waterhouse*, 19 F.3d 138 (3d Cir. 1994). Price Waterhouse's services therein included auditing. Similarly, *see In re Andover Togs, Inc.*, 2001 WL 262605 (S.D.N.Y. March 15, 2001) (Deloitte & Touche's retention denied over strenuous argument they should be allowed to complete pending audit); *In re LKM Industries, Inc.,* 252 B.R. 589 (Bankr.D.Mass. 2000) (denying application to employ accountant); *In re Eastern Charter Tours*, 167 B.R. 995 (Bankr.M.D.Ga. 1994) (denying application to employ accountant); *In re Siliconix, Inc.*, 135 B.R. 378 (N.D. Cal. 1991) (denying application to employ Deloitte & Touche as accountant); *In re Wake, supra* (denying compensation to accountant who prepared tax returns).

26.   PwC's argument is disingenuous in light of the position it has taken in many other cases in this District, where it has filed retention applications under section 327(a) to perform services for the debtor that included tax and/or accounting services. *E.g.*, *In re FFC Holding Inc.*, No. 01-2399 (SLR)(auditing and tax services); *In re US Office Products Co.*, No. 01-646 (PJW) (auditing and tax advisory services);[2] *In re Converse, Inc.*, No. 01-223 (SLR) (tax advice and employee benefit plans); *In re Midland Food Services LLC*, No. 00-4036 (MFW) (auditing and tax services); *In re Owens Corning*, No. 00-3837 (JKF) (tax consulting and employee benefit

---

[2]   In *US Office Products*, a disinterestedness issue arose which led to a litigated retention objection by the UST. The Court's decision resulted in a partial disqualification of PwC. Notably, PwC did not make the argument in *US Office Products* that they are making now, to carve the auditing and ordinary course services out of the engagement and thus out of the objection.

plans); *In re Stone & Webster*, No. 00-2142 (RRM) (application filed April 2, 2001 to expand scope of PwC's retention to include tax preparation, advice and consulting).

27. PwC has utterly failed to advance any basis on which the Court could determine that it is not subject to the strictures of section 327(a) for any and all of the work it has done or proposes to do for the Debtors.

## PwC'S EQUITABLE ARGUMENTS ARE IRRELEVANT

28. PwC argues that it should be compensated because its services were valuable and necessary for the estate and that it should be retained, notwithstanding its statutory ineligibility, due to its "extensive experience representing the Debtors . . . for nearly 100 years" and to "avoid the strategic business interruption and the duplicative costs associated with obtaining substitute professionals to replace PwC." Application, ¶¶ 14-15.

29. The same arguments were made strenuously by PwC's predecessor to the Third Circuit in *United States Trustee v. Price Waterhouse, supra*. The Third Circuit rejected these arguments in their entirety – including the plea, similar to that made here, that "it would be extraordinarily expensive and take a substantial length of time [for a new accounting firm] to become familiar with the Debtor's needs" and "the failure to appoint Price Waterhouse would jeopardize any hope the Debtor has of presenting a business plan demonstrating that the Debtor has any chance at reorganization." 19 F.3d at 140.

30. The Third Circuit's decision is controlling and binding authority here. Moreover, the Third Circuit's holding is consistent with those of many other courts. *See In re Middleton Arms, supra*, 934 F.2d at 725 ("section 327 prevents individual bankruptcy courts from having to make determinations as to the best interests of the debtors in these situations"); *In re Andover*

*Togs, supra*, 2001 WL 262605 at *3 (finding no discretion exists to approve retention although the court "recognizes the inefficiency that will result if Deloitte cannot be retained"); *In re Office Products of America, supra*, 136 B.R. at 698, quoting *In re Providence Television*, 113 B.R. 446, 451 (Bankr.N.D. Ill. 1990) ("The fact that such services may have been beneficial or valuable to the estate and performed in good faith is immaterial, as is any hardship to the unauthorized professional").

31. Any alleged emergency is of the parties' own making. It appears that instead of recognizing the disabling conflict and bringing the issue to the attention of the Court and the UST promptly, and instead of taking appropriate steps and/or making contingency plans to assure a smooth transition to a successor firm, PwC and the Debtors have instead delayed their filing so as to increase the potential adverse consequences of denying retention and thus seek to leverage the Court into disregarding the Code.[3]

32. The implication of Debtors'/PwC's argument is that it is simply unthinkable that Debtors might be required to engage new accountants if PwC cannot or chooses not to eliminate their conflict. In fact, a change of auditors is not an unusual or infrequent event. Indeed, a quick search of published reports on wire services available on Westlaw revealed thirteen such announcements in January 2002 alone, some of them involving PwC.[4] Moreover, in light of

---

[3] To the extent the equitable arguments are not dismissed as a matter of law, PwC's arguments raise numerous factual issues, for example but not limited to what steps PwC took to eliminate the conflict, when PwC determined that the conflict would not or could not go away, and what steps, if any, PwC or the Debtors undertook to arrange for an orderly transition to a new accountant in light of PwC's ineligibility. The UST reserves his rights to conduct discovery on this and all other factual issues raised by the Application.

[4] *See* 1/29/02 FEDFILE 09:03:00 (PVF Capital Corp.); 1/28/02 DJNS 12:43:00 (Medi-Hut Co.); 1/24/02 DJNS 11:11:00 (SWS Group Inc., PwC hired to replace KPMG); 1/24/02 FEDFILE 09:21:00

recent events involving another case in another district and another accounting firm, some are proposing that public companies should be required to change auditors periodically as a matter of course.   Arthur M. Louis, *The Enron Collapse/Why Auditors Weren't Likely to Blow Whistle*, <u>San Francisco Chronicle</u>, January 19, 2002, at B1 (discussing proposal of Burton Malkiel, professor of economics at Princeton University).

32. In any event, the Court possesses tools to protect Debtors and the estates from the economic costs of retaining new accountants.  Simply put, disallowance of PwC's fees, which is compelled here, should more than cover the "getting up to speed" costs.

## REQUEST FOR DISGORGEMENT

32. To the extent PwC has been paid anything for postpetition services, the UST requests based on the above-cited overwhelming authority that PwC be ordered to disgorge such payments.  The Application does indicate at ¶ 26 that PwC was paid a $250,000 retainer.  That is property of the estate and must be disgorged.

---

(TS&B Holdings Inc.); 1/24/02 FEDFILE 09:02:00 (Microwave Transmission Systems Inc.); 1/22/02 PR Newswire 09:30:00 (Worldwide Technologies, Inc.); 1/18/02 FEDFILE 08:57:00 (Conceptus Inc., PwC replacing Ernst & Young); 1/17/02 FEDFILE 08:50:00 (Misonix Inc.); 1/16/02 FEDFILE 10:07:00 (Med Gen Inc.); 1/15/02 DJNS 19:30:00 (Scient Inc., KPMG replacing PwC); 1/15/02 FEDFILE 08:56:00 (H.E.R.C. Products Inc.); 1/9/02 DJNS 11:12:00 (Moyco Technologies Inc.); 1/7/02 FEDFILE 13:24:00 (Nutek Inc.).  *See also* 1/29/02 Dow Jones Bus. News 04:01:00 (Delta Air Lines considering whether to drop Arthur Andersen as auditor); 1/28/02 FEDFILE 15:49:00 (Keystone Automotive Industries, Inc. announces withdrawal of its decision to replace Ernst & Young with Arthur Andersen).

**CONCLUSION**

WHEREFORE the UST requests that this Court issue an order denying the Application, compelling disgorgement, and/or granting such other relief that this Court deems appropriate.

        Respectfully submitted,

        **DONALD F. WALTON**
        **ACTING UNITED STATES TRUSTEE**

Dated: January 30, 2002   BY:  /s/ Frank J. Perch, III
        Frank J. Perch III, Esquire
        Trial Attorney
        J. Caleb Boggs Federal Building
        844 King Street, Suite 2313, Lockbox 35
        Wilmington, DE 19801
        (302) 573-6491
        (302) 573-6497 (Fax)