EXHIBIT "B"

**SUMMARY OF PRINCIPAL SERVICES RENDERED FOR THE PERIOD**
<u>OCTOBER 1, 2001 THROUGH DECEMBER 31, 2001</u>

1.      Case Administration – 15537 – 96.3 hours ($19,467.50)

This matter covers the attention given to routine motions and pleadings, and preparation of responses thereto, the preparation of summaries and analyses of such papers for the PD Committee, and meetings with the Debtors or their professionals.

The Applicant's focus on the administration of the Consolidated Cases during the Application Period continued to permit the PD Committee to remain fully informed about all on-going matters pending in the Consolidated Cases. During the Application Period, the Applicant maintained constant communication with the PD Committee's local counsel and counsel to the Debtors, the PI Committee and the Commercial Committee with respect to the transfer of the Consolidated Cases from Judge Farnan to Judge Wolin and the subsequent referral to Judge Fitzgerald. As the transfer of the Consolidated Cases was unfolding, the Applicant continually discussed the status of the cases and the ramifications of the transfer with the members of the PD Committee. Upon carefully reviewing the various orders transferring the Consolidated Cases to Judge Wolin and the correspondence from Judge Fitzgerald to the counsels in the Consolidated Cases requesting "status" memoranda, the Applicant drafted a status letter and circulated same to the PD Committee for review and comment, and thereafter submitted same to Judge Fitzgerald.

In addition to preparing the PD Committee's response to Judge Fitzgerald, the Applicant reviewed and analyzed the responses of the other constituencies in the Consolidated Cases, including the Debtors, the PI Committee and various insurance companies, and counseled the PD Committee with respect to their responses

In addition, during the Application Period, the Applicant carefully reviewed, summarized, and provided advice and recommendations to the PD Committee, with respect to the Debtors' motion to enter into a consent decree with the Environmental Protection Agency. Further, the Applicant carefully reviewed, summarized and provided advice and recommendations to the PD Committee, with respect to Caterpillar's motion to compel payment or, in the alternative, for relief from automatic stay, and the separate motions for relief from the automatic stay filed by Toyota Motor Credit Company and the Internal Revenue Service.

In addition, during the Application Period, the Applicant carefully reviewed, summarized, and provided advice and recommendations to the PD Committee, with respect to the Debtors' position as a creditor in the <u>Intercat</u> bankruptcy.

The Applicant also negotiated with the Debtors' counsel the terms of a confidentiality provision to be included in the bylaws of the PD Committee.  The Applicant reviewed and provided comments on the proposed language to the Debtors' counsel.  During the course of the negotiations, the Applicant had numerous conversations with Debtors' counsel regarding the terms of such language, and provided constructive comments and suggestions to such language. Ultimately, the Applicant, the Debtors, and the PD Committee reached an agreement with respect to the terms of the confidentiality provision.

2. Debtors' Business Operations – 15538 - 6.2 hours ($1,425.00)

This matter covers the attention given to review and analysis of the Debtors' statement of affairs, schedules of assets and liabilities, monthly reports of operations and their Securities and Exchange Commission filings.

During the Application Period, the Applicant expended time reviewing and provided advice to the PD Committee with respect to the Debtors' proposed acquisition referred to by the

Debtors as Project CHI, the Debtors' quarterly report of settlements for the period July 31, 2001 through August 30, 2001, and the Debtors' report of "deminimus" settlements. In addition, the Applicant carefully reviewed the Debtors 10-Q Securities Exchange Commission filing for the period ended September 30, 2001, as well as the Debtors' operating reports for the month of September. The Applicant expended time reviewing and provided advice to the PD Committee with respect to an analysis of the Debtors' debt structure performed by the PD Committee's financial advisors, Conway, Del Genio, Gries & Co., LLC.

3.      Creditors Committee – 15539 – 28.2 hours ($8,555.00)

This matter covers formation, membership, and by-law issues of the PD Committee. It also covers attendance at PD Committee meetings, preparation of materials for and presentations thereon to the PD Committee, and the preparation of minutes of the meetings.

During the Application Period, the Applicant convened weekly telephonic meetings of the PD Committee. The Applicant prepared detailed agendas for each meeting, reviewed pending matters and issues in preparation therefor, and counseled the members in formulating a position on such matters and positions. Further, subsequent to the meetings the Applicant drafted, and circulated for review prior to adoption, drafts of minutes of the PD Committee meetings.

Throughout its representation of the PD Committee, the Applicant has aggressively and attentively represented the interests of the PD Committee. Assuming the role of liaison, the Applicant has continued to maintain continuous communications with the Debtors' counsel and PD Committee members and, at times, counsel to the personal injury claimants committee and counsel to the unsecured creditors' committee. The Applicant timely and professionally relayed

information to PD Committee members through in-person meetings, telephone conference calls, e-mail and correspondence.

4.    Retention of Professionals – 15540 – 20.6 hours ($4,802.50)

This matter covers the retention of professionals by the PD Committee or the Debtors, including interviews, discussions, motions and objections.

During the Application Period, the Applicant reviewed, analyzed and provided advice to the PD Committee with respect to the Debtors' application to retain Steptoe & Johnson, as well as the objections of the United States Trustee and the Debtors to the retention of Professor Elizabeth Warren by the PI Committee.

Based upon discussions with the United States Trustee's office, at the PD Committee's direction, the Applicant finalized applications for the retention of W.D. Hilton, Jr. and Hamilton Rabinovitz & Alschuler, as experts to the PD Committee. The applications for retention of these experts were filed with this Court subsequent to the Application Period.

5.    Court Appearances – 15544 – 20.1 hours ($7,412.50)

This matter covers preparation for and attendance at omnibus court hearings and status conferences.

During the Application Period, the Applicant prepared for, and attended the omnibus hearing held on November 5, 2001 during which Judge Farnan set the hearing date on the Debtors' case management motion for November 21, 2001. In addition, the Applicant attended the omnibus hearing held in Armstrong World Industries, Inc. -- immediately after the November 5th hearing in these cases -- in order to observe Judge Farnan's treatment of similar pending issues. Further, by telephone, the Applicant attended the status conference hearing regarding the

motion of former employees seeking to require the Debtors to pay the legal expenses of their defense of certain director and officer actions.

During the Application Period, the Applicant prepared for, attended and actively participated in the status conference held by Judge Wolin on December 20, 2001 in Newark, New Jersey. In addition, the Applicant attended the status conferences held in Armstrong World Industries, Inc., Owens-Corning Fiber, USG Corp. and Federal-Mogul -- immediately preceding and succeeding the status conference in thee Consolidated Cases -- in order to observe Judge Wolin's treatment of similar pending issues.

6. Fee Applications – 15543 – 77.2 hours ($12,852.50)

This matter covers time expended preparing fee applications for the Applicant, the applications for reimbursement of expenses of PD Committee members or professionals, and reviewing, and objecting if necessary, to fee applications of others.

During the Application Period, the Applicant expended time preparing, drafting and filing its fourth, fifth and sixth interim fee applications, and third quarterly fee application, and the related application for reimbursement of expenses of PD Committee members.

The Applicant also reviewed and analyzed the numerous fee applications filed by the Debtors and their special counsels, the Personal Injury Committee, and the Official Committee of Unsecured Creditors.

In addition, at the request of Judge Fitzgerald, the Applicant reviewed and analyzed the proposed amended administrative fee order circulated by the Debtors.

The Applicant also assisted the PD Committee's financial advisors, CDG, with finalizing their fee application.

7. Claims Administration - 15545 - .4 hours ($90.00)

This matter covers all time expended in connection with the review and analysis of claims against the estates and objections to claims.

During the Application Period, the Applicant reviewed and analyzed the Claims Notice from the Debtors relating to the Debtors' "deminimus" claims settlements.

8.  Travel – 15546 – 66.2 hours ($23,505.00)

The Applicant traveled to Wilmington, Delaware to attend the omnibus hearing on November 5, 2001. In addition, the Applicant traveled to Wilmington, Delaware to attend the hearing on the Debtors' case management motion on November 21, 2001, that was postponed by order of the Court on the morning of the hearing. Further, the Applicant traveled to Philadelphia, Pennsylvania to take the deposition of the Debtors' notification expert and to defend the deposition of the PD Committee's notification expert prior to the hearing on the Debtors' case management motions. Lastly, the Applicant traveled to Newark, New Jersey to attend the status conference on December 20, 2001. In accordance with Local Rule 2016-2(d)(viii), all such time is being billed at fifty percent (50%) of regular hourly rates, to the extent work was not being performed en route.

9.  Fraudulent Transfer Litigation – 15547 – 5.9 hours ($1,867.50)

This matter covers the analysis of the fraudulent transfer claims, motions to prosecute and hearings thereon. It also covers selection of professionals for this litigation, consultation with the PD Committee, the Personal Injury Committee, and special counsel to prosecute the claims.

During the Application Period, the Applicant reviewed, analyzed and discussed the contents of a draft report prepared by the PD Committee's financial advisor, CDG, regarding the Sealed Air transactions. Also, the Applicant had several conversations with proposed counsel to prosecute the fraudulent transfer actions regarding the status of the motion for leave to prosecute such actions.

10.    Litigation Consulting – 15563 – 512.1 hours ($147,250.50)

This matter covers the analysis of litigation claims, other than the fraudulent transfer claims, including strategic motions contemplated or conceptualized by the PD Committee.

During the Application Period, the Applicant met with counsel to the Debtors and counsel to the PI Committee in Philadelphia to discuss case management issues engendered by the Debtors' motion to establish case management procedures, setting of a bar date, and approval of a notice program and proof of claims forms.

Further, the Applicant spent substantial amounts of time preparing for the scheduled hearing on the Debtors' highly contentious case management motions, which as stated above, was postponed by Judge Farnan. Prior to the postponement, the Applicant synthesized the PD Committee's legal arguments and strategies in response to the Debtors' case management motions. To streamline that task, the Applicant met and conferred with numerous of the experts engaged by the PD Committee to analyze the Debtors' proposals, as well as to formulate counter-proposals.

In addition, only nine days prior to the scheduled hearing, the Applicant was served with the Debtors' eighty-four (84) page consolidated reply brief, revised notification plan and revised proof of claims forms in response to the PD Committee's and PI Committee's objection to the Debtors' case management motions. Accordingly, the Applicant faced the demanding task of comprehending the multitude of novel responses advanced by the Debtors, as well as developing cogent rebuttal arguments to the Debtors' responses. The Applicant was also forced to review the revised notification plan and the revised proof of claim forms and to confer with its experts under extreme time constraints to discuss the contents thereof. Also, during this same brief period between receiving the consolidated reply brief and the date of the hearing, the Applicant took the deposition of the Debtors' notification expert and defended the deposition of the PD Committee's expert. Up to the hour preceding the scheduled hearing, when word reached the Applicant that Judge Farnan had cancelled the case management hearing, the Applicant was thoroughly engaged in preparing for the hearing with the PD Committee's experts.

During the Application Period, at the direction of the PD Committee, the Applicant drafted a position paper as to the PD Committee's view of case management issues in light of the transfer of the Consolidated cases to Judge Wolin and the subsequent referral to Judge Fitzgerald. At the direction of the PD Committee, the position paper has not yet been filed with the Court.