IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------x

In re:                                          Chapter 11

W.R. GRACE & Co., et al.,                       Case No.  01-01139 (JKF)
                                                (Jointly Administered)


          Debtor


NINTH INTERIM APPLICATION OF FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM DECEMBER 1, 2001 THROUGH DECEMBER 31, 2001)

| | |
|---|---|
| Name of Applicant: | FTI Policano & Manzo |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors |
| Date of Retention: | June 21, 2001 |
| Period for which compensation and reimbursement is sought: | December 1, 2001 through December 31, 2001 |
| Amount of Compensation sought as actual, reasonable and necessary (80% of $53,986.50): | $43,189.20 |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary (100%): | $ 1,005.29 |

This is an: __X__ interim _____ final application

The total time expended for fee application preparation is approximately 18.8 hours and
corresponding compensation requested is approximately $5,710.00.

This is not the first application filed.  Disclosure for prior periods is as follows:

-1-

NINTH INTERIM APPLICATION OF FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM DECEMBER 1, 2001 THROUGH DECEMBER 31, 2001)

| Date Filed (on or about) | Period Covered | Requested | | Approved | |
|---|---|---|---|---|---|
| | | Fees (100%) | Expenses (100%) | Fees | Expenses |
| June 28, 2001 | April 20, 2001 through April 30, 2001 | $16,008.00 | $667.95 | $12,806.40 (80% of requested fees) | $667.95 |
| June 28, 2001 | May 1, 2001 through May 31, 2001 | $104,081.50 | $2,513.09 | $83,265.20 (80% of requested fees) | $2,513.09 |
| July 28, 2001 | June 1, 2001 through June 30, 2001 | $75,916.00 | $3,913.13 | $60,732.80 (80% of requested fees) | $3,913.13 |
| August 28, 2001 | July 1, 2001 through July 31,2001 | $71,989.50 | $3,871.54 | $57,591.60 (80% of requested fees) | $3,871.14 |
| September 28, 2001 | August 1, 2001 through August 31, 2001 | $70,425.00 | $1,092.45 | $56,340.00 (80% of requested fees) | $1,092.45 |
| October 30, 2001 | September 1, 2001 through September 30, 2001 | $104,816.50 | $3,028.40 | $83,853.20 (80% of requested fees) | $3,028.40 |
| November 29, 2001 | October 1, 2001 through October 31, 2001 | $42, 643.00 | $ 3,670.86 | $34,114.40 (80% of requested fees) | $3,670.86 |
| December 28, 2001 | November 1, 2001 through November 30, 2001 | $50,048.50 | $1,864.72 | $40,038.80 (80% of requested fees) | $1,864.72 |

NINTH INTERIM APPLICATION OF FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM DECEMBER 1, 2001 THROUGH DECEMBER 31, 2001)

## ATTACHMENT B
## TO FEE APPLICATION

| Name of Professional Person | Hourly Billing Rate (including changes) | Total Billed Hours | Total Compensation |
|---|---|---|---|
| E. Ordway | $475 | 19.2 | $9,120.00 |
| S. Cunningham | $405 | 21.5 | $8,707.50 |
| J. Schwendeman | $325 | 6.0 | $1,950.00 |
| C. MacCallum | $295 | 55.7 | $16,431.50 |
| C. Whitney | $315 | 34.0 | $10,710.00 |
| T. Horton | $275 | 25.7 | $7,067.50 |
| Grand Total: | | 162.1 | $53,986.50 |
| Blended Rate: | $333 | | |

## COMPENSATION BY PROJECT CATEGORY

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Meetings of Creditors | 6.4 | $2,481.00 |
| Chapter 11 Operating Issues | 2.5 | $1,187.50 |
| Operating Results Report Preparation | 80.6 | $28,487.00 |
| Business Analyses | 47.8 | $14,171.00 |
| Fee Application Preparation | 18.8 | $5,710.00 |
| Competitor Profile Analysis | 6.0 | $1,950.00 |
| Evaluation of Potential Acquisitions | 0.0 | $0.00 |

## EXPENSE SUMMARY

| Expense Category | Total Expenses |
|---|---|
| Copies, Internal | $310.60 |
| Toll Charges | $1.72 |
| Facsimile Charges | $106.25 |
| Postage, Express Delivery | $20.48 |
| Transportation, Lodging, Tolls and Parking | $236.24 |
| Word Processing Services | $105.00 |
| Document Preparation and Handling Services | $225.00 |

NINTH INTERIM APPLICATION OF FTI POLICANO & MANZO,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM DECEMBER 1, 2001 THROUGH DECEMBER 31, 2001)

INDEX

APPLICATION FOR ALLOWANCE OF INTERIM
COMPENSATION AND REIMBURSEMENT OF EXPENSES

EXHIBIT A    Affidavit of Edwin N. Ordway, Jr.

EXHIBIT B    Summary of the services performed by FTI Policano & Manzo from
December 1, 2001 through December 31, 2001

EXHIBIT C    Summary of fees by professional for the period December 1, 2001 through
December 31, 2001

EXHIBIT D    Detailed descriptions of services rendered by professional for the period
December 1, 2001 through December 31, 2001

EXHIBIT E    Summary of expenses incurred for the period December 1, 2001 through
December 31, 2001

## APPLICATION FOR ALLOWANCE OF
## INTERIM COMPENSATION AND REIMBURSEMENT
## OF EXPENSES

### I.    Introduction

This is the ninth application for allowance of interim compensation and reimbursement of expenses ("Ninth Interim Application") made by FTI Policano & Manzo ("FTI P&M" or "Applicant"), as Financial Advisors to the Official Committee of Unsecured Creditors (the "Committee") of W.R. Grace & Co. et. al., (the "Company" or "Debtors") for the period December 1, 2001 through December 31, 2001 ("Ninth Interim Period").   In connection with this application, the Applicant submits as follows:

1. FTI P&M is a firm of financial advisors specializing in insolvency restructuring and related matters, and is an operating unit of FTI Consulting, Inc.

2. FTI P&M was retained by the Committee as Financial Advisors to the Committee pursuant to an order approved by the Court dated June 21, 2001 (the "Employment Order").

3. On May 3, 2001, the Court entered an order establishing procedures for interim compensation and reimbursement of expenses for all professionals and committee members ("Interim Compensation Order").

4. The Interim Compensation Order requires each professional to submit monthly statements to various parties as stated in the Interim Compensation Order.   These monthly statements include a detailed schedule of the services rendered and the expenses incurred for the related period, and are submitted on or about the 28th day of every month. Following a 20 day period for notice and resolution of objections, the Interim Compensation Order requires the Debtors to promptly pay (i) 80% of undisputed professional fees; and (ii) 100% of the undisputed expenses detailed in the monthly statement.

5. During the Ninth Interim Period, FTI P&M submitted the following monthly statements to the parties in the Interim Compensation Order:

| Period | Fees | Expenses |
|---|---|---|
| 12/1-12/31/01 | $53,986.50 | $1,005.29 |

6. Through the date of this Ninth Interim Application, FTI P&M has not been paid for the professional fees rendered nor for the expenses incurred that were included in the monthly statements for the Ninth Interim Period.

7. FTI P&M submits this Ninth Interim Application, pursuant to Section 330 and 331 of the United States Bankruptcy Code and Bankruptcy Rule 2016, for an interim

allowance for compensation for professional services rendered to the Debtors of $43,189.20, representing 80% of fees incurred, and for the reimbursement of expenses in connection therewith of $1,005.29 for the period December 1, 2001 through December 31, 2001. To date, Applicant has not been paid for the professional services rendered nor for reimbursement of expenses applicable to December.

8. During the Ninth Interim Period, the Applicant rendered professional services aggregating a total of 162.1 hours in the discharge of its duties as financial advisor and bankruptcy consultant to the Committee.

9. The Applicant believes that the interim fees applied for herein for professional services rendered in performing accounting and advisory services for the Committee in this proceeding are fair and reasonable in view of the time spent, the extent of work performed, the nature of the Debtors' capitalization structure and financial condition, the Debtors' financial accounting resources and the results obtained. Applicant has attached to this Ninth Interim Application, as Exhibit D, a complete accounting of the time expended by professionals who worked on this matter during the Ninth Interim Period. The Applicant's work during this period has been categorized into seven separate tasks, each of which is described in detail in Exhibit B. Additional task codes may be added in subsequent applications.

10. Section II below briefly discusses the history of the Company prior to its filing, issues facing the Company during the Chapter 11 period, and the major tasks performed by the Applicant during the Ninth Interim Period.

## II.    Background

1. On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. Pursuant to an Application submitted to the Court on or about May 17, 2001, and by a Court order dated June 21, 2001, FTI P&M was retained as financial advisors for the Committee, nunc pro tunc to April 20, 2001. Since its retention, FTI P&M has continuously and vigorously pursued the Committee's interests in these cases.

3. The Debtors have represented, among other things, that: (a) the Debtors engage in specialty chemicals and materials businesses, operating on a worldwide basis, with their corporate headquarters located in Columbia, Maryland; (b) The Debtors predominantly operate through two business units -- Davison Chemicals and Performance Chemicals; (c) the Debtors' parent company, W.R. Grace & Co. ("Grace"), is a global holding company that conducts substantially all of its business through a direct, wholly owned subsidiary, W.R. Grace & Co. – Conn. ("Grace-Conn"); (d) Grace-Conn owns

substantially all of the assets, properties and rights of Grace in the United States and has 76 domestic subsidiaries and affiliates, 60 of which are Debtors and Debtors-in-Possession in the Chapter 11 Cases.

4.      The following summary is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit D. Rather, it is merely an attempt to highlight those areas in which services were rendered to the Committee during the Compensation Period, including (i) Financial monitoring and comparison of performance with prior periods and budgets (ii) Preparation of a report to the Committee on the Debtors' third quarter operating results (iii) Preparation of a report relating to the analysis of reserves (iv) Meetings and phone conferences with Debtors' management and counsel and with Committee counsel, and (v) Other Matters.

5.      FTI P&M's role included the preparation and communication of various financial analyses requested by the Official Committee of Unsecured Creditors' professionals in order to assist their rapid understanding of the issues facing the Debtors.

6.      For the Compensation Period, FTI P&M seeks compensation totaling $44,194.49, representing 80% of fees incurred and 100% of expenses incurred. FTI P&M expended an aggregate of 162.1 hours, substantially all of which was expended by five professionals. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task. A small staff was utilized to optimize efficiencies and avoid redundant efforts. The staff of the Debtors or their advisors have been utilized where practical and prudent.

7.      In addition, FTI P&M incurred out-of-pocket expenses in connection with the rendition of the professional services described above in the sum of $1,005.29 for which FTI P&M respectfully requests reimbursement in full. All expenses were billed at actual cost, exclusive of amortization of the cost of investment, equipment or capital outlay. Internal charges for outgoing out-of-town facsimile transmissions were billed at $1.25 per page for domestic transmissions. Photocopy charges were billed at actual cost for external copying and $.20 per page for internal copying. FTI P&M believes that these charges reflect its actual out-of-pocket costs.

8.      The disbursements and expenses have been incurred in accordance with FTI P&M's normal practice of charging clients for expenses clearly related to and required by particular matters. Such expenses were often incurred to enable FTI P&M to devote time beyond normal office hours to matters which imposed extraordinary time demands. FTI P&M has endeavored to minimize these expenses to the fullest extent possible.

9.      FTI P&M's approach is to utilize senior, experienced personnel and to encourage the Debtors to provide the staff-level support and analysis to minimize total cost. In addition, FTI P&M's per diem rates for professionals of comparable experience

are 15% to 25% lower than its competitors, the "Big-Five" accounting firms and certain other nationally-recognized specialty firms.

10.     Because FTI P&M's core staff consisted of senior professionals who performed a vast amount of the work, time spent communicating internally and reviewing the work product of junior associates was kept to a minimum. Additionally, because of the experience of FTI P&M's professionals, in many instances only one or two FTI P&M representatives attended meetings or conference calls or performed specific functions.

11.     Edwin N. Ordway, Jr., Managing Director in charge of this case, directed the activities of the FTI P&M team, calling upon his more than ten years of experience in restructuring and insolvency matters, including more than 100 cases, many as large and complex, and some larger and more complex than this matter.

## III.     Summary of Fees and Expenses Incurred

12.     To the best of the Applicant's knowledge and belief, there has been no duplication of services between the Applicant and any other accountants or consultants to the bankruptcy estate.

13.     FTI P&M's travel time policy is for professional personnel to travel outside of business hours when possible. Such time is not charged to a client unless productive work is performed during the travel period. In this engagement, non-productive travel time is not being charged to the Debtor.

14.     In providing a reimbursable service such as copying or telephone, the Applicant does not make a profit on that service. In charging for a particular service, FTI P&M does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay. In seeking reimbursement for a service which the Applicant justifiably purchased or contracted for from a third party, FTI P&M requests reimbursement only for the amount billed to FTI P&M by such third party vendor and paid by FTI P&M to that vendor.

15.     FTI P&M's policy with respect to word processing and document preparation and handling services provided by FTI P&M employees is to bill clients by the hour for such time, but only if the employees' time is clearly and exclusively devoted to work performed for that particular client, such as for the preparation, collation and binding of a report for a client. Such services are billed to the Debtor at a rate commensurate with that which would be charged by a third party provider such as a temporaries agency.

16.     Annexed hereto as Exhibit B is a more comprehensive summary of the services performed by the Applicant during the Ninth Interim Period at the direction of the Committee and its Counsel.

17.     Annexed hereto as Exhibit C is a summary of fees by professional and by task during the Ninth Interim Period.

18.     Annexed hereto as Exhibit D are detailed descriptions of the time spent by each professional during the Ninth Interim Period.

19.     Pursuant to Rule 2016, FTI P&M states that no compensation to be received in this proceeding will be shared with any person or entity outside of FTI P&M and that no compensation has been paid or promised to the Applicant in connection with the compensation sought in this Application except as disclosed herein. No prior application has been made to this or any other Court for the relief requested herein for the Compensation Period, nor has any payment been received by FTI P&M on account of its accounting and financial advisory services rendered or on account of the out-of-pocket expenses incurred in connection therewith.

20.     As stated in the Affidavit of Edwin N. Ordway, Jr. annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

21.     The Debtors will give notice of the relief requested herein and of the relief requested by the other professionals in their respective applications for allowance of compensation by serving notice of this application upon all parties that have requested notice in these cases, and FTI P&M has personally served copies of the Application with exhibits to the Debtors and on the United States Trustee.

22.     WHEREFORE, the Applicant respectfully requests that this Court enter an order:

    a.  approving the allowance of compensation for professional services rendered to the Committee during the period from December 1, 2001 through and including December 31, 2001 in the amount of $53,986.50;

    b.  approving the reimbursement of FTI P&M's out-of-pocket expenses incurred in connection with the rendering of such services during the period from December 1, 2001 through and including December 31, 2001 in the amount of $1,005.29; and

c.  authorizing the Debtor to pay as interim compensation to FTI P&M 80% of the amount of the professional services rendered and 100% of the expenses incurred by FTI P&M during the period from December 1, 2001 through and including December 31, 2001, subject to final payment of the full amount; and

d.  granting such other and further relief as this Court may deem just and proper.

Date: _Jan 31 2002_

FTI Policano & Manzo

By _____
      Edwin N. Ordway, Jr.
FTI Policano & Manzo
Park 80 West, Plaza I
Saddle Brook, NJ  07663
(201) 843-4900

EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W.R. GRACE & CO., et al.** | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

## AFFIDAVIT

STATE OF NEW JERSEY  )
                     ) ss:
COUNTY OF BERGEN     )


EDWIN N. ORDWAY, JR., being duly sworn, deposes and says:

1.       I am a Managing Director of FTI Policano & Manzo, ("FTI P&M"), an operating unit of FTI Consulting, Inc. ("FTI"), and I am duly authorized to make this affidavit on behalf of FTI P&M.  FTI P&M provides financial consulting services for restructuring matters and has its principal office at Park 80 West Plaza I, Saddle Brook, New Jersey.  FTI P&M has provided financial consulting services to and has rendered professional services on behalf of the Official Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co., and sixty-one of its domestic subsidiaries and affiliates which are debtors and debtors-in-possession before this Court.

2.       This affidavit is submitted pursuant to Bankruptcy Rule 2016(a) in support of FTI P&M's Ninth monthly application for an interim allowance of compensation and for the reimbursement of expenses for services rendered during the

period from December 1, 2001 through and including December 31, 2001 in the aggregate amount of $44,194.49.

3.      All services for which compensation is requested by FTI P&M were professional services performed for and on behalf of the Committee from December 1, 2001 through and including December 31, 2001 and not on behalf of any other person.

4.      In accordance with Title 18 U.S.C. Section 155, neither I nor any employee of my firm has entered into any agreement, express or implied, with any other party-in-interest for the purpose of fixing the amount of any of the fees or other compensation to be allowed out of or paid from the Debtors' assets.

5.      In accordance with Section 504 of the Bankruptcy Code, no agreement or understanding exists between me, my firm, or any employee thereof, on the one hand, and any other person, on the other hand, for division of such compensation as my firm may receive for services rendered in connection with these cases, nor will any division of fees prohibited by Section 504 of the Bankruptcy Code be made by me or any employee of my firm.

EDWIN N. ORDWAY, JR.

Sworn to before me this
31ˢᵗ day of January, 2002

Notary Public

PATRICIA E. FOOSE
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES AUG. 6, 2006

2

Exhibit B

**SUMMARY OF THE SERVICES PERFORMED BY FTI POLICANO & MANZO**
**DURING THE NINTH INTERIM PERIOD**


**Task Code 1 – Preparation for and Participation at Meetings with the Chairman and Case Professionals and/or Creditors Committee Meetings or Conference Calls** (6.4 Hours)

During the Ninth Interim Period, we participated in conference calls with the Committee, counsel, and other Committee professionals regarding asbestos claims, tax issues, and third quarter results. Additionally, P&M had phone conversations with individual Committee members to discuss and review our third quarter report.

**Task Code 2 – Issues Related to Chapter 11 Operating Issues, Such As Critical Vendor Motions, Reclamation Claims, Executory Contracts and Similar Issues** (2.5 Hours)

During the Ninth Interim Period we read and analyzed various motions, including motions concerning fraudulent conveyance.

**Task Code 3 – Preparation of Monitoring and Operating Results Reports** (80.6 Hours)

During this period, we prepared and issued our report on the Debtors' third quarter operating results, and prepared numerous supporting schedules for inclusion in the report.

**Task Code 4 – Analysis of Financial Data, Including Business Plan, Projections, Forecasts, Cash Flow Forecasts and Historical Information** (47.8 Hours)

FTI P&M obtained, analyzed and discussed with Debtor management and professionals information relating to tax issues, divested business liabilities and asbestos claim reserves. FTI P&M prepared a financial model based on Debtors' five-year business plan. FTI P&M held several phone conversations with Debtors' management and financial advisors to discuss and analyze these and various other business matters.

**Task Code 5 – Monthly Statement, Retention and Fee Application Preparation** (18.8 Hours)

This category represents the time expended during the Ninth Interim Period in preparing FTI P&M's Eighth Interim Application for Allowance of Compensation and Reimbursement of Expenses.

**Task Code 6 – Grace competitor profile analysis and analysis of other asbestos related Chapter 11 filings** (6.0 Hours)

FTI P&M monitored economic and industrial peer group projections and industry and trade reports relating to current asbestos litigation.

**Task Code 7 – Analysis and Evaluation of Proposed Corporate Acquisitions by the Debtor and Their Non-Filing Affiliates**

No activity took place in this category during the Ninth Interim Period.

**Exhibit C**
**Page 1 of 3**

## W.R. GRACE & CO. ET. AL.
Summary of Fees by Professional
For the period December 1, 2001 through December 31, 2001

| | Total Hours November | Billing Rate | Amount |
|---|---|---|---|
| E. Ordway | 19.2 | $475 | $ 9,120.00 |
| S. Cunningham | 21.5 | $405 | 8,707.50 |
| J. Schwendeman | 6.0 | $325 | 1,950.00 |
| C. MacCallum | 55.7 | $295 | 16,431.50 |
| C. Whitney | 34.0 | $315 | 10,710.00 |
| T. Horton | 25.7 | $275 | 7,067.50 |
| | 162.1 | | $ 53,986.50 |

Exhibit C
Page 2 of 3

W.R. GRACE & CO. ET. AL.
Summary of Fees by Professional
For the period December 1, 2001 through December 31, 2001

| TASK CODE | TASK | E. Ordway | S. Cunningham | J. Schwendeman | C. MacCallum | C. Whitney | T. Horton | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 1 | Meetings of Creditors | $ 142.50 | $ 1,984.50 | $ - | $ 354.00 | $ - | $ - | $ 2,481.00 |
| 2 | Chapter 11 Operating Issues | 1,187.50 | - | - | - | - | - | 1,187.50 |
| 3 | Operating Results Report Preparation | 7,030.00 | 5,670.00 | - | 7,817.50 | 7,969.50 | - | 28,487.00 |
| 4 | Business Analyses | 380.00 | 1,053.00 | - | 3,245.00 | 2,425.50 | 7,067.50 | 14,171.00 |
| 5 | Fee Application Preparation | 380.00 | - | - | 5,015.00 | 315.00 | - | 5,710.00 |
| 6 | Competitor Profile Analysis | - | - | 1,950.00 | - | - | - | 1,950.00 |
| 7 | Evaluation of Potential Acquisitions | - | - | - | - | - | - | - |
| | TOTAL | $ 9,120.00 | $ 8,707.50 | $ 1,950.00 | $ 16,431.50 | $ 10,710.00 | $ 7,067.50 | $ 53,986.50 |

Exhibit C
Page 3 of 3

W.R. GRACE & CO. ET. AL.
Summary of Fees by Professional
For the period December 1, 2001 through December 31, 2001

| TASK CODE | TASK | E. Ordway | S. Cunningham | J. Schwendeman | C. MacCallum | C. Whitney | T. Horton | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 1 | Meetings of Creditors | 0.3 | 4.9 | 0.0 | 1.2 | 0.0 | 0.0 | 6.4 |
| 2 | Chapter 11 Operating Issues | 2.5 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 2.5 |
| 3 | Operating Results Report Preparation | 14.8 | 14.0 | 0.0 | 26.5 | 25.3 | 0.0 | 80.6 |
| 4 | Business Analyses | 0.8 | 2.6 | 0.0 | 11.0 | 7.7 | 25.7 | 47.8 |
| 5 | Fee Application Preparation | 0.8 | 0.0 | 0.0 | 17.0 | 1.0 | 0.0 | 18.8 |
| 6 | Competitor Profile Analysis | 0.0 | 0.0 | 6.0 | 0.0 | 0.0 | 0.0 | 6.0 |
| 7 | Evaluation of Potential Acquisitions | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| | TOTAL | 19.2 | 21.5 | 6.0 | 55.7 | 34.0 | 25.7 | 162.1 |

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Edwin N. Ordway, Jr.
For the period December 1, 2001 through December 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 4-Dec | 3 | Read and analyzed detailed monthly operating report and compared to plan. | 1.4 |
| 6-Dec | 3 | Reviewed and edited monitoring report and prepared sections addresssing liquidity. | 4.7 |
| 7-Dec | 3 | Read and analyzed data applicable to tax issues and prepared/modified sections of the report dealing with same. | 3.1 |
| 10-Dec | 3 | Continued to prepare/edit monitoring report section dealing with legacy liabilities. | 2.9 |
| 11-Dec | 3 | Finalized monitoring report commentary; EPA claims/liabilities. | 2.7 |
| 12-Dec | 2 | Read recent motions regarding fraudulent conveyance issues. | 0.6 |
| 14-Dec | 1 | Conference call with committee member to discuss case status. | 0.3 |
| | 2 | Read and analyzed most current Trustee's report. | 0.5 |
| 17-Dec | 5 | Prepared fee application. | 0.3 |
| 18-Dec | 2 | Read and analyzed various motions. | 1.4 |
| | 5 | Prepared fee application. | 0.5 |
| 19-Dec | 4 | Began development of projection computer model. | 0.8 |
| | | **Total Hours - December** | **19.2** |

**Exhibit D**

### W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Sean Cunningham
For the period December 1, 2001 through December 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 5-Dec | 3 | Prepared variance analysis of September Quarter and YTD performance compared to prior year. | 3.3 |
| 7-Dec | 3 | Prepared variance analysis of September Quarter and YTD performance compared to prior year. | 1.2 |
| 8-Dec | 3 | Prepared variance analysis of September Quarter and YTD performance compared to prior year. | 5.3 |
| 10-Dec | 3 | Edited and reviewed final draft of third quarter update report. | 2.2 |
| 11-Dec | 3 | Reviewed third quarter update report with counsel and committee chairman. | 0.8 |
| 12-Dec | 3 | Prepared final edits and comments, and issued third quarter update report. | 1.2 |
| 13-Dec | 1 | Participated in conference call with tax counsel to review historical tax information received. | 2.8 |
| 14-Dec | 4 | Reviewed information received regarding taxes and legacy items. | 2.6 |
| 17-Dec | 1 | Participated in conference call with asbestos consultant and unsecured creditors' committee. | 1.3 |
| 19-Dec | 1 | Discussed contents of third quarter report with various committee members. | 0.8 |
| | | **Total Hours - December** | 21.5 |

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Jeffrey Schwendeman
For the period December 1, 2001 through December 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 4-Dec | 6 | Prepared an analysis of current US national economic indicator growth forecasts impacting Company. | 0.9 |
| 6-Dec | 6 | Read and analyzed recent news and industry trade reports relating to recent asbestos litigation negotiations for Company and competitors. | 0.8 |
| 11-Dec | 6 | Read and analyzed recent economic and industry trade reports relating to near-term industrial construction forecasts. | 0.9 |
| 17-Dec | 6 | Analyzed economic and peer group projections of construction industry segments re: intermediate and long-term industry growth assumptions. | 2.1 |
| 27-Dec | 6 | Read and analyzed recent news and industry trade reports relating to recent asbestos litigation negotiations for Company and competitors. | 1.3 |
| | | **Total Hours - December** | 6.0 |

**Exhibit D**

W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Craig MacCallum
For the period December 1, 2001 through December 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 3-Dec | 1 | Researched and responded to inquiry from counsel regarding bank claims. | 1.2 |
| | 3 | Continued with preparation of third quarter financial update to unsecured committee and preparation of supporting schedules. | 1.5 |
| 4-Dec | 3 | Continued with preparation of third quarter financial update to unsecured committee and preparation of supporting schedules. | 6.5 |
| | 4 | Reviewed Debtors' analysis of tax liabilities. | 1.5 |
| 5-Dec | 3 | Continued with preparation of third quarter financial update to unsecured committee and preparation of supporting schedules. | 1.5 |
| | 3 | Analyzed third quarter financial data and compared it to budget and prior year. | 2.5 |
| 6-Dec | 3 | Prepared third quarter financial update to unsecured committee and supporting schedules. | 8.0 |
| | 4 | Prepared analysis of tax issues. | 1.5 |
| 7-Dec | 3 | Edited third quarter financial update to unsecured committee. | 5.5 |
| 13-Dec | 3 | Coordinated distribution of copies of Debtors' monthly operating reports to committee members. | 1.0 |
| | 4 | Prepared analysis of outstanding tax assessments. | 1.5 |
| 14-Dec | 5 | Prepared fee application and supporting schedules for the period 11/1-11/30/01. | 1.5 |
| 17-Dec | 5 | Continued with preparation of fee application and supporting schedules for the period 11/1-11/30/01. | 2.0 |
| 19-Dec | 5 | Continued with preparation of fee application and supporting schedules for the period 11/1-11/30/01. | 4.0 |
| 20-Dec | 5 | Continued with preparation of fee application and supporting schedules for the period 11/1-11/30/01. | 8.0 |
| 27-Dec | 5 | Completed preparation of fee application and supporting schedules for the period 11/1-11/30/01 and forwarded to counsel. | 1.5 |
| | 4 | Prepared analysis of tax issues and reserves. | 4.5 |

| 31-Dec | 4 | Prepared analysis of tax issues and reserves. | 2.0 |
| | | **Total Hours - December** | 55.7 |

**Exhibit D**

# W.R. GRACE & CO. ET. AL.
## Professional Services Rendered by Christy Whitney
### For the period December 1, 2001 through December 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 4-Dec | 3 | Prepared analysis of sales by major division for inclusion in monitoring report. | 0.5 |
| 5-Dec | 3 | Reviewed initial draft of third quarter report. | 3.5 |
| 6-Dec | 3 | Prepared tables and analysis included in the third quarter report. | 3.0 |
| 7-Dec | 3 | Updated divisional revenue and EBIT variance schedules included in the third quarter report. | 3.0 |
| 10-Dec | 3 | Analyzed third quarter financial data and prepared monitoring report. | 8.8 |
| 12-Dec | 4 | Catalogued tax information received and prepared status update of tax information request. | 3.3 |
|  | 3 | Updated third quarter report to include revisions and edits per E. Ordway. | 5.0 |
| 13-Dec | 4 | Held phone conversation with counsel to prepare for afternoon meeting with the Debtors' management to discuss tax issues. | 0.5 |
|  | 4 | Participated in phone conversation with counsel and Debtors' management to discuss outstanding items included on the tax information request and related tax issues. | 0.8 |
| 14-Dec | 3 | Held phone conversation with counsel regarding third quarter report and updated report to reflect counsel's comments. | 1.5 |
| 17-Dec | 5 | Prepared Fee Application. | 1.0 |
|  | 4 | Catalogued additional tax information received. | 1.8 |
| 19-Dec | 4 | Held phone conversation with asbestos consultant to discuss asbestos claim analysis; forwarded background materials. | 1.3 |
|  |  | **Total Hours - December** | 34.0 |

**Exhibit D**

## W.R. GRACE & CO. ET. AL.
Professional Services Rendered by Theodore Horton
For the period December 1, 2001 through December 31, 2001

| Date | Task Code | Description | Hours |
|------|-----------|-------------|-------|
| 10-Dec | 4 | Researched and prepared a financial model integrating the Company's five-year business plan and relevant assumptions. | 10.0 |
| 11-Dec | 4 | Continued preparation of the financial model based on the Company's five-year business plan. | 9.0 |
| 13-Dec | 4 | Continued preparation of the financial model based on the Company's five-year business plan. | 4.7 |
| 14-Dec | 4 | Completed and reviewed the five-year financial model, incorporating the Company's assumptions relative to the 2001-2005 business plan. | 2.0 |
| **Total Hours - December** | | | 25.7 |

**Exhibit E**
**Page 1 of 2**

W.R. GRACE & CO. ET. AL.
Summary of Expenses by Type of Expense
For the period December 1, 2001 through December 31, 2001

| | | |
|---|---|---:|
| Copies: | | |
| Internal | $ | 310.60 |
| External | | - |
| Telecommunications: | | |
| Toll Charges | | 1.72 |
| Facsimile Charges | | 106.25 |
| Postage, Federal Express | | 20.48 |
| Travel Expenses: | | |
| Transportation, lodging, tolls and parking | | 236.24 |
| Meals | | - |
| Outside Services | | - |
| Word Processing Services | | 105.00 |
| Document Preparation and Handling Services | | 225.00 |
| Total Expenses | $ | 1,005.29 |

### W.R. GRACE & CO. ET. AL.
Detail of Expenses by Type of Expense
For the period December 1, 2001 through December 31, 2001

| | | | | | | |
|---|---|---|---|---|---|---|
| Copies, Internal | Total for Month | 1,553 | pages @ $0.20/page: | | $ | 310.60 |
| Facsimile Charges: | | 85 | pages @ $1.25/page: | | | 106.25 |
| Toll Charges: | | 31-Dec | | | | 1.72 |
| | | | | | 1.72 | |
| Postage, Federal Express: | | 19-Dec | Airborne | | | 20.48 |
| Transportation, lodging, tolls and parking: | | | | | | |
| C. Whitney | 11-Dec | Car Rental | | | 201.74 | |
| | 11-Dec | Tolls | | | 12.00 | |
| | 11-Dec | Parking | | | 22.50 | |
| | | | Subtotal | | | 236.24 |
| Meals: | | | | | | - |

| Word Processing Services: | Hours | | Rate | | | |
|---|---|---|---|---|---|---|
| | 9-Dec | 0.90 | | $75.00 | 67.50 | |
| | 23-Dec | 0.20 | | $75.00 | 15.00 | |
| | 31-Dec | 0.30 | | $75.00 | 22.50 | |
| | | | Subtotal | | | 105.00 |

| Document Preparation and Handling Services: | Hours | | Rate | | | |
|---|---|---|---|---|---|---|
| | 16-Dec | 2.00 | | $75.00 | 150.00 | |
| | 23-Dec | 1.00 | | $75.00 | 75.00 | |
| | | | Subtotal | | | 225.00 |

| | | | | | |
|---|---|---|---|---|---|
| | Total Expenses | | | $ | 1,005.29 |