FILED

2002 FEB -5 P 2: [ ]

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                    .   Case No. 01-1139(JHW)
                      .   Chapter 11

W.R. GRACE, et al.,       .

                      .   Bankruptcy Courtroom No. 2
                      .   824 Market Street
            Debtors.   .   Wilmington, Delaware 19801
                      .

                      .   January 29, 2002
. . . . . . . . . . . . . . . ..   1:14 P.M.

TRANSCRIPT OF OMNIBUS HEARING
BEFORE HONORABLE JUDITH H. WIZMUR
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors:            Kirkland & Ellis
                   By:   DAVID M. BERNICK, ESQ.
                         JAMES W. KAPP, III, ESQ.
                   200 East Randolph Drive
                   Chicago, Illinois 60601

                   Pachulski Stang Ziehl Young & Jones
                   By:   DAVID CARICKHOFF, JR., ESQ.
                   919 North Market Street, 16th Floor
                   Post Office Box 8705
                   Wilmington, Delaware 19899-8705

For Exxon Mobil:       Greenberg Traurig, LLP
                   By:   WILLIAM E. CHIPMAN, ESQ.
                   The Brandywine Building
                   1000 West Street, Suite 1540
                   Wilmington, Delaware 19801

Audio Operator:        Rachel Bello

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

---

**TRANSCRIPTS PLUS**
**435 Riverview Circle**
**New Hope, Pennsylvania 18938**
e-mail courttranscripts@aol.com

**215-862-1115 (FAX) 215-862-6639**

Appearances:
(Continued)

| | |
|---|---|
| For the Official Committee of Unsecured Creditors: | Duane Morris & Heckscher, LLP<br>By:  MICHAEL R. LASTOWSKI, ESQ.<br>111 North Market Street, Suite 1200<br>Wilmington, Delaware 19801 |
| | Stroock Stroock & Lavan, LLP<br>By:  ARLENE G. KRIEGER, ESQ. |
| For Robert H. Locke: | Smith Katzenstein & Furlow, LLP<br>By:  KATHLEEN M. MILLER, ESQ.<br>800 Delaware Avenue<br>P.O. Box 410<br>Wilmington, Delaware 19899 |
| The Trustee: | U.S. Trustee's Office<br>By:  FRANK J. PERCH, III, ESQ.<br>844 King Street<br>Wilmington, Delaware 19899 |
| For Asbestos P.I. Claimants: | Campbell & Levine<br>By:  MATTHEW ZALESKI, ESQ.<br>1201 Market Street, 15th Floor<br>Wilmington, Delaware 19801 |
| For Asbestos P.D. Claimants: | Ferry & Joseph, PA<br>By:  THEODORE TACCONELLI, ESQ.<br>824 North Market Street, No. 904<br>Wilmington, Delaware 19899 |
| | Bilzin Sumberg<br>By:  SCOTT BAENA, ESQ.<br>ROBERT TURNER, ESQ. |
| For Zonolite Claimants: | Lieff Cabraser<br>By:  THOMAS SOBOL, ESQ. |
| For Ace: | White and Williams<br>By:  LINDA M. CARMICHAEL, ESQ.<br>824 North Market Street, Suite 902<br>P.O. Box 709<br>Wilmington, Delaware 19899-0709 |

Appearances:
(Continued)

| | |
|---|---|
| For Sealed Air<br>Corporation: | Skadden, Arps, Slate, Meagher & Flom<br>By:  HENRY WASSERSTEIN, ESQ.<br>One Rodney Square, P.O. Box 636<br>Wilmington, Delaware 19899-0636 |
| For NMC & Fresenius<br>Medical Care: | McDermott, Will & Emery<br>By:  DAVID ROSENBLOOM, ESQ. |
| For the Equity<br>Committee: | Klett Rooney<br>By:  JEFF WAXMAN, ESQ. |
| For Chase: | Richards Layton & Finger, PA<br>By:  PATRICK LEASHAN, ESQ.<br>One Rodney Square, P.O. Box 551<br>Wilmington, Delaware 19899 |

## INDEX

| | | Page |
|---|---|---|
| Item 1, | Complaint for declaratory judgment | 70 |
| Item 2, | Motion of Caterpillar to compel debtors to comply with 11 U.S.C. 365(d)(10) | 70 |
| Item 3, | Motion for entry of an order pursuant to Section 365(a) | 70 |
| Item 4, | Motion for order fixing time by which debtor must assume or reject unexpired leases | 5,7,70 |
| Item 5, | Application of the debtors for the entry of an order authorizing the retention and employed of Steptoe & Johnson | 70 |
| Item 6, | Motion of debtors for an order pursuant to Fed. R. Bankr. P. 9006(b) | 70 |
| Item 7, | Denominated status and scheduling conf. | 8,15,21 |
| Item 8, | Motion to dismiss | 21,47 |
| Item 9, | Medical monitoring | 21,52 |
| Item 10, | Class action adversary complaint | 20,52,57 |
| Item 11, | Defendant, Exxon Mobil's motion for summary judgment | 71 |
| Item 12, | Debtor's motion to modify the preliminary injunction | 71,89 |
| Item 13, | Plaintiff's motion for preliminary injunction and temporary restraining order | 100 |

1          THE COURT:  This is the matter of W.R. Grace.

2  Bankruptcy Number 01-1139.  There is an agenda that can be

3  followed this morning.  I see there was an amended notice of

4  agenda that was apparently filed on Friday.  I believe all it

5  does is deletes the one -- the final matter as to which I've

6  deemed -- I'm told that there is a standstill agreement in

7  effect.  Good afternoon.  Mr. Bernick?

8          MR. BERNICK:  Yes.  Good afternoon, Your Honor.

9  That's correct. And I think that, obviously, the -- the

10  contested matters begin at Page 7 and I think that the only

11  thing prior to then is really a housekeeping matter that

12  relates that Item Number 4, which is an uncontested matter, and

13  I think that we have a -- a stipulation to tender up to the

14  Court that resolves that uncontested matter, if I can approach

15  the Court?

16          THE COURT:  All right.  Thank you.

17          MR. BERNICK:  Beyond that the -- the next category is

18  called --

19          THE COURT:  Wait, Mr. Bernick.

20          MR. BERNICK:  I'm sorry.  Sure.

21          THE COURT:  Is this order different from the one that

22  was attached to the agenda binder, because I signed that one

23  yesterday?

24          MR. KAPP:  Your Honor, James Kapp.  Yes it is.  This

25  is a great stipulation.

1          THE COURT:  How am I supposed to know that you're

2 going to give me something that's different from what's in the

3 agenda binders if you don't tell me that?  This -- it does the

4 debtor anticipate resolving it, but I didn't receive a

5 stipulation.  Do you want me to wait to enter orders until the

6 hearing?

7          MR. BERNICK:  We apologize, Your Honor.  We'll make

8 sure --

9          THE COURT:  No, I'm just want to make sure that I'm

10 on the same page as everybody else.  I assume when I didn't get

11 it and there were no responses that it was an appropriate order

12 -- to enter the order.  I just want to make sure I'm not

13 creating some confusion on the record.

14          MR. CARICKHOFF:  Your Honor, if -- I guess for future

15 reference what we would propose that if we do submit a

16 certificate of no objection that Your Honor would then go ahead

17 and -- and enter that order.  With respect to this we did not

18 file any formal objections, but we had some information

19 comments with Toyota and that that's why Your Honor does not

20 see any responses on the agenda, but we did work through our

21 issues through the stipulation.

22          THE COURT:  Okay.  What does the stipulation do that

23 the ordering order didn't do?

24          MR. CARICKOFF:  Your Honor, I'd have to refer to the

25 stipulation.

26          MR. KAPP:  Your Honor, it merely sets forth the cure

1  amount.  We were assuming the lease and paying the cure amount

2  of approximately $3,700.

3                    (Pause)

4          MR. CARICKHOFF:  I apologize for any confusion, Your

5  Honor.

6          THE COURT:  No, it's just that -- you -- you folks

7  have been dealing in a different fashion then I have.  That's

8  all and I want to make sure we're on the same page going

9  forward that that's all.  So, it's not -- it's not a big deal,

10  it's just that I don't want to create some confusion in the

11  record.  So, I'd still like an answer to my question.  Do you

12  want me only to enter orders, if I think they're appropriate,

13  when I get certificates of no objection?

14          MR. CARICKHOFF:  Yes.

15          THE COURT:  If I don't have a CNO I should wait until

16  the hearing?

17          MR. CARICKHOFF:  Yes, Your Honor.

18          UNIDENTIFIED SPEAKER:  Right.  Right.

19          MR. CARICKHOFF:  Thank you.

20          THE COURT:  All right.  That's fine.  Now, I did also

21  enter orders on two other uncontested matters, and I have

22  copies for you.  So, let me do this one.  I guess what I will

23  try to do if the other hasn't been docketed yet with respect to

24  Agenda Item 4 then I'll have this one docketed in it's place.

25  If it has been docketed then I'll have this one docketed as a

1 revised order. So, Mr. Bernick, let me give you back, please,
2 a copy of the stipulation you just gave me and those orders.
3 There was a -- I modified the order with respect to Steptoe
4 because Steptoe's supplemental affidavit that was filed after
5 the certificate of no objection indicated that it had been paid
6 pursuant to the May 3rd, I believe, order that authorized the
7 debtor to pay professionals in the ordinary course. I want it
8 clear that as of the effective date of this order that order
9 does not apply to Steptoe -- their file fee petitions and I've
10 made this order nun pro tunc to July 1st, which seems to me,
11 according to their affidavit the first time they provided post-
12 petition services. I know, according to that supplemental
13 affidavit they were paid 50,000 pursuant to the other order.
14 I'm suggesting here that it be applied toward their fee
15 petition when they file it and get allowed fee. So, I don't
16 expect them to pay it back, but I also don't expect that there
17 are going to be any other payments under that May 3rd order.
18 They're to comply with the administrative order governing the
19 fees. That's the change, and that's reason for the change in
20 that order.

21             Okay. Mr. Bernick?

22             MR. BERNICK: The items beginning with 7, which are
23 the denominated status and scheduling conferences, Your Honor,
24 I'm sure will appreciate are simply a series of matters that
25 were pending in this case prior to the time that we first met

1   with Judge Wolin and because of what Judge Wolin said on our --
2   on our first meeting with him that is that all pending motions
3   were withdrawn.  These are simply listed.  We don't know who is
4   going to deal with these matters.

5           THE COURT:  I do.

6           MR. BERNICK:  Okay.  That's why they're there is --
7   is just to have a list for the Court.  I don't know if Your
8   Honor wants to take that up at the present time.

9           THE COURT:  Yes -- yes, I do as a matter of fact.

10          MR. BERNICK:  Okay.

11          THE COURT:  Let me tell you we -- Judge Newsome and
12  Judge Newsome and Judge Wolin and I met last week.  We have
13  entered a division of responsibilities and, in general terms,
14  it will be as follows.  The -- all personal injury asbestos
15  related matters, including issues concerning proofs of claim
16  and bar dates will be addressed by Judge Wolin.  All property
17  issues, including the Zonolite matters, and anything else that
18  arises that has a property aspect will be dealt with by me.
19  Judge Wolin will take the fraudulent transfer action that has
20  not yet been filed, but that will be filed, apparently, by some
21  committee when it's filed.  That will be assigned to Judge
22  Wolin because it appears that it will need an estimation of
23  asbestos personal injury liabilities or some determination as
24  to what they were back at the times that the transfers
25  allegedly took place in '96 and '98, I believe were the years.

1  And because that process will probably be employed throughout
2  the W.R. Grace case it only makes sense that the same judge
3  here goes out.  So, Judge Wolin will take that.  To that end,
4  he has informed me that that case is going to trial.  It hasn't
5  been filed yet.  It's going to trial on September 30th.

6          The -- so let me facilitate something.  I did have
7  the opportunity to do some independent research.  I am
8  convinced that the Asbestos Creditor's Committee does have
9  standing to pursue that action, and so I'm prepared to enter an
10  order at this point that says that it can be filed by the
11  Asbestos Committee and if the other committees choose to join
12  they can join with the Asbestos Committee if they like.  You
13  can address those issues with Judge Wolin.  He wants you to
14  contact him forthwith about dates for filing the adversary.  My
15  expectation is that you're going to be informed that there will
16  be a time limit for filing that adversary that will probably be
17  on or about May 1st, and it will be going to trial September
18  30th.  He has put it on his calendar.  That's what I know about
19  the fraudulent transfer action.

20          MR. BAENA:  May it please the Court, Scott Baena on
21  behalf of the Asbestos --

22          THE COURT:  I'm sorry, I can't hear you.

23          MR. BAENA:  Scott Baena on behalf of the Asbestos
24  Property Damage Committee.

25          THE COURT:  Yes.

1        MR. BAENA:  When you referred to the Asbestos

2 Committee did you mean plural, Your Honor, because we both

3 sought to prosecute those claims?

4        THE COURT:  I think, at this point in time, all of

5 the committees have standing.  I mean, I have had a chance to

6 take a look at this issue and it seems to me they all do.  The

7 Asbestos Personal Injury Committee, however, is the one that

8 brought -- that sought the motion.  The Property Damage

9 Committee joined, or do I have it backwards?

10       MR. BAENA:  No.  Backwards.

11       THE COURT:  Backwards.  Okay.  I think you all have

12 standing to do it from the cases that are out there.  So, I

13 think  you should address with Judge Wolin how you choose to

14 commence it.  What I am convinced is, he's not going to pay a

15 host of professionals to commence this action.  So, folks,

16 decide who's going to be lead counsel.  If you need some

17 assistance from one other -- a firm, maybe you'll get it.  But,

18 there aren't going to be three professionals paid to act as

19 lead counsel in this action.  It's going to be one case and one

20 professional.  You folks can decide, I believe, who -- how and

21 who ought to be lead, and if it's the Property Damage Committee

22 that's fine.  I -- I don't think it makes much difference from

23 the point of view of who.  But it will not be that all three

24 committees are going to get counsel fees for bringing this

25 action.  That won't happen.

12

1           MR. BAENA:   Your Honor set in motion a process --

2           THE COURT:   Yes.

3           MR. BAENA:   -- when we last spoke about this.   And
4    the debtor advised us today that they were about to commence to
5    provide information that we were going to use to make a report
6    to Your Honor.

7           THE COURT:   Yes.

8           MR. BAENA:   Are we suspending that process now?

9           THE COURT:   No.   That process is still in effect
10   unless and until Judge Wolin changes it.   I told him that I had
11   given you until April to do this information document
12   production.   I told him that I had deferred the ruling on the
13   committee's request for special counsel to pursue that action
14   pending a decision as to whether it's even going to go forward
15   after you see the document production.   I still have hopes that
16   maybe the issues will get resolved short of litigation, but
17   whether that's the case or not I -- I think you're going to be
18   under some deadlines to commence some actions.   So, that's my
19   -- that's my best reading of the situation.   I'm going to send
20   to Judge Wolin the motion for appointment of special counsel.
21   If he's handling these issues he ought to decide that matter.
22   I don't see any reason for me to decide when he's going to
23   handle the action.   But I do think you should be looking
24   carefully at who's going to prosecute it because I don't think
25   it's going to be a situation where there will be three separate

1 attorneys for three separate committees who are likely to be
2 engaged actively in that litigation.

3          MR. BAENA:   Of course, we weren't seeking that.
4          THE COURT:   No.

5          MR. BAENA:   Judge, when -- when you -- this is all a
6 little bit different and a little bit new for all of us.   When
7 you say to contact Judge Wolin what does that mean in this
8 context?

9          THE COURT:   That was the instruction that I was given
10 to tell you to contact Judge Wolin's chambers immediately.

11          MR. BAENA:   Contact his chambers.

12          MR. BERNICK:   In fact, Judge Wolin has encouraged
13 people to make contact with his chambers on administrative
14 matters.   It might be helpful if we contacted him together
15 since we all are dealing with the same slate.

16          THE COURT:   I think that would be advisable.

17          MR. BERNICK:   Your Honor, one further follow-up
18 point, we're happy to continue with the process until -- unless
19 and until Judge Wolin tells us otherwise in providing
20 information.   But, consistent with Your Honor's remarks that
21 there ought to be one lead counsel, I'm assuming that that is a
22 matter that we should now -- or that they should now be raising
23 with Judge Wolin, and that is who is going to be lead counsel -
24 -

25          THE COURT:   I am transferring that motion -- the

1  motion to appoint special counsel to Judge Wolin.  I will be
2  entering an order that will transfer that motion.  So, I think
3  you can raise them in that context.  I'm speculating with
4  respect to the issue about the fact that it will, in all
5  probability, be one lead counsel, not three or four.

6          MR. BERNICK:  The only question that I have is that
7  if we're going to start to provide this information I can
8  easily envision the busy bees for three different law firms at
9  this point pouring over a very substantial amount of
10  information.  We're making certain documents available by
11  simply furnishing copies.  Other documents are going to be made
12  available at a location, and they're fairly voluminous, and I
13  guess what I would propose is that we, maybe, ask the Court,
14  that is Judge Wolin, to expedite consideration of the motion to
15  appoint special counsel and that until that's done we -- we
16  suspend the process of producing all this information just so
17  that we don't have three different firms doing that.

18          THE COURT:  No.  You will not be suspending the
19  process.  If anything, your time frames are going to be
20  shortened, not -- not lengthened, but shortened.  I think you
21  should contact Judge Wolin's chambers immediately, and I
22  believe you should get the document production started sooner
23  rather than later.

24          MR. BERNICK:  Okay.  We're prepared to do it.  We're
25  just -- you know, we're just mindful of the cost of keeping

 1 three different firms going.  Is there anything else that we
 2 should be talking about in connection with the fraudulent
 3 conveyance matter, because there were some other -- I wanted to
 4 have some -- I had some follow-up questions on what particular
 5 matters fell on what side of the line that Your Honor just drew
 6 and what we should be doing by way of scheduling further
 7 proceedings concerning the property claims in particular.

 8         THE COURT:  Okay.  I'm -- I don't think I know enough
 9 about what it is that's coming up to answer that.

10         MR. BERNICK:  Okay.  Let me -- let me give a little
11 bit of background.  The -- the Item Number 7, which was our
12 motion for entry of a case management order.

13         THE COURT:  Oh, that one I can address.  Okay.  I
14 will be hearing all matters related to Item 7, except the
15 request to set a bar date on asbestos personal injury matters.
16 So, I'm going to direct the debtor to excise out of the pending
17 motion --

18         MR. BERNICK:  Yes.

19         THE COURT:  -- that specific, i.e. the motion to set
20 the bar date on asbestos matters, and as soon as it is re-filed
21 I will send it to Judge Wolin, but I would like it re-filed so
22 that he can consider that motion.

23         MR. BERNICK:  That is the motion that pertains to the
24 --

25         THE COURT:  Asbestos personal injury claim.

1          MR. BERNICK:  -- personal injury.

2          THE COURT:  Yes.

3          MR. BERNICK:  With respect to the balance of the --
4     the motion for case management order --

5          THE COURT:  Yes.

6          MR. BERNICK:  -- including the bar date encompassed
7     everything, not only the personal injury, obviously, but also
8     the -- the traditional property claims --

9          THE COURT:  I will be hearing all of those.  We can
10    do it today or we can do it at your next hearing.  I am
11    prepared.  I've read it all.  I've read it all for the last
12    hearing.  I'm prepared to deal with any and every issue in that
13    matter.  If you want to do it today, fine.  If you want to do
14    it at the next hearing, fine.

15         MR. BERNICK:  Okay.

16         MR. ZALESKI:  Your Honor, for the record, Matthew
17    Zaleski, Campbell and Levine on behalf of the Asbestos Personal
18    Injury Claimants.  When Your Honor spoke you said the asbestos
19    personal injury issues and the bar date, the case management
20    portion of that motion goes well beyond simply establishing a
21    bar date.  If I understood correctly that entire package as it
22    relates to personal injury claims goes to Judge Wolin.

23         THE COURT:  Well, I'm not sure what other parts of it
24    are in there with respect to the case management.

25         MR. ZALESKI:  The debtor has still --

1    MR. BERNICK: Well, there are a variety of other

2 matters. They're on consequent on the bar date. Basically,

3 the proposal that we made with regard to personal injury claims

4 is that there would be a bar date, that there would be special

5 claim forms and a notice program that's associated with that,

6 and then following the bar date, when the claims come in, that

7 there be a consolidated Rule 42 proceeding to resolve issues of

8 liability. I'm assuming that with the bar date all --

9 subsequent proceedings relating to the bodily injury claims

10 would be part of this now separate motion that we would file

11 before Judge Wolin.

12    THE COURT: Yes. Absolutely. I'm sorry. In my

13 mind that's all related to the bar date because nothing happens

14 under that scenario until you get a bar date. So, whether

15 there will be a bar date, and when it will be and how the claim

16 forms will be addressed and what -- anything to do with the

17 asbestos personal injury will be transferred to Judge Wolin.

18    MR. ZALESKI: Thank you.

19    THE COURT: I simply want an excise from the current

20 motion and filed by way of separate motion so I have a discrete

21 proceeding to transfer to Judge Wolin.

22    MR. BERNICK: Okay. There are a couple other matters

23 that are -- fall into the same category that are probably, I

24 guess, worth going through unless -- unless they are

25 permanently withdrawn. There has been a motion to dismiss the

1  case as a whole that was filed not by any of the committees,

2  but by the Zonolite --

3          THE COURT:  That's in front of me.

4          MR. BERNICK:  That's in front of you?

5          THE COURT:  Yes.  All of the Zonolite matters --

6  anything that deals with the bankruptcy, anything that deals

7  with traditional bankruptcy issues, ongoing case management or

8  business issues, anything other than asbestos personal injury,

9  right now, stays with me.  If parties ask for a particular

10  matter to be withdrawn the reference to be withdrawn then,

11  we'll deal with that as they come up.

12          MR. BERNICK:  Okay.  I'm assuming the same -- we have

13  a -- this is a complaint for class action plaintiffs asking for

14  medical monitoring.

15          THE COURT:  Yes.

16          MR. BERNICK:  Your Honor, I think, had some comments

17  about medical monitoring the last time, and the potential

18  overlap between that and the appointment of the futures

19  representative, but again, in terms of who has it, there's a

20  complaint and then a motion to strike the adversary complaint

21  as being improperly brought under the rules.

22          THE COURT:  Okay.  With respect to the futures

23  representative, right now, that's staying with me.

24          MR. BERNICK:  Okay.

25          THE COURT:  With respect to the medical monitoring,

1  quite frankly, when we met I forgot about that motion, so I
2  didn't raise it with Judge Wolin.  It seems to me that it may
3  be more appropriate, if it's related to asbestos personal
4  injury it would go with him, or is that related to the
5  insulation issues?  I --

6        MR. BERNICK:  No, the -- the complaint for medical
7  monitoring is -- is actually -- there are three -- there are
8  three -- and there's -- there's a related motion for class
9  certification.  There are three classes.  There are people who
10 lived in or around Libby (phonetic).  There are people who
11 worked at the expansion plants.  Remember that the ore gets
12 taken out of the ground.  It then gets refined and then a
13 byproduct of that process then goes over to an expansion plant
14 where through heating it pops into the final form of
15 vermiculite that's actually sold.  So, you have the mining
16 operation, a certain amount of refining and then you have the
17 expansion plant, which -- and there were a variety of expansion
18 plants in different parts of the country.  So, you have three
19 different groups.  You have people in Libby, you have people
20 who worked at the expansion plants, and then the final group
21 are people who are defined as being those who engaged in the
22 occupation of installing these Zonolite Attic Insulation over a
23 set period of time.  I think it's for a period of, at least,
24 six months.  So, these are people who are kind of trades people
25 or installers with respect to the final product.  All three of

1  those classes are picked up in medical monitoring.  Obviously,
2  there's -- you know, there's a -- there's a personal injury
3  side of it but, basically, there is no allegation of actual
4  personal injury.  These are medical monitoring claims, and they
5  are fairly closely tied in with the mining and attic insulation
6  side of the case.  They're not cases that deal, for example,
7  with monocote (phonetic) fire proofing and the like.

8        THE COURT:  Why don't we do this, because my
9  recollection of reading the pleadings is, in my mind, these
10 were all tied together with the Zonolite issues, and I think
11 that's why I didn't break them out separately --

12       MR. BERNICK:  Right.

13       THE COURT:  -- in my discussions with Judge Wolin.  I
14 think for now, let's assume I'm going to be dealing with that
15 -- that issue.  Let's put on the next agenda and I will double
16 check with him in the interim to make sure that that's his
17 expectation.  If he thinks that it's related to asbestos
18 personal injury then he should take it and -- and I will so
19 recommend.  Otherwise, if he thinks it's related to the class
20 certification issues, in one form or another, concerning the
21 Zonolite matters, or has some closer connection to those then
22 it should stay with me.  Let me double check on that issue.

23       MR. BERNICK:  Item 10 is another class action
24 adversary complaint.  This now brought on behalf of people who
25 live in homes or residential structures that have the attic

1 fill insulation and there's a motion for class certification
2 that's associated with that as well.

3          THE COURT:  That's on the property damage?
4          MR. BERNICK:  Yes, on the property damage.
5          THE COURT:  That stays with me.

6          MR. BERNICK:  Okay.  Now, with respect to -- I think
7 we talked about the timing of Item 7, which was the case
8 management order, and that's either today or at the next
9 hearing as I understood the Court.  We then, with Item 8, that
10 stays here, that's the motion to dismiss.  Nine is -- is a
11 double check, and then 10 stays here.  What would Your Honor
12 like to do by way of scheduling hearings on Items 8 and 10,
13 that is the motion to dismiss the case, and the motion for
14 class certification of the property claims?  Bear in mind that
15 with respect to the motion for class certification on the
16 property claims it is our -- it is our view the debt's very
17 much tied in with the question of the bar date, that we believe
18 that once there's a bar date and the claims come in there's no
19 need to have class certifications of them.  The debtor's point
20 of view, the two are very much tied with one another.

21          THE COURT:  Well, the class certification issues, as
22 I understand it are all property damage issues.

23          MR. BERNICK:  That's correct.

24          THE COURT:  Right.  So tied in with the bar date on
25 the property --

1        MR. BERNICK:  On the property side.

2        THE COURT:  Okay.  That's fine.  I just want to make
3  sure we're talking about the same thing.

4        MR. BERNICK:  Sure.

5        THE COURT:  As I said earlier, I'm happy -- I am
6  prepared to address any or all of these matters today, but I
7  realize that you didn't know who was going to handle them, and
8  if you're not prepared to address me today, we'll put them on
9  the next calendar.  But either today or on our next omnibus
10  hearing all pending matters that I'm hearing I want heard so
11  that I can get this case on track and moving, and I have no
12  preference as to which.

13        MR. BERNICK:  Okay.

14        THE COURT:  I've read all the pleadings.  I've read
15  the briefs.  I've read a lot of the cases that have been cited.
16  I'm ready to go if you're ready to go.

17        MR. BERNICK:  Okay.

18        THE COURT:  If you're not then we'll do it next
19  month, I'll still be ready to go.

20        MR. SOBOL:  Can I make a suggestion, Your Honor?

21        THE COURT:  I'm sorry.

22        MR. SOBOL:  My name is -- my name is Tom Sobol, S-O-
23  B-O-L of Lieff Cabraser on behalf of the Zonolite claimants.

24        THE COURT:  Yes, sir.

25        MR. SOBOL:  My suggestion simply would be that we

1  schedule all the motions for hearing at the next time.  I would
2  be mindful though that I think that the debtor still has to
3  have the opportunity to respond in writing to the motion to
4  dismiss, as well as to the motions for class certification.
5  That ought not be terribly burdensome, however, because the
6  class certification issue has already been full briefed as to
7  Zonolite before the NBO Court, at least, and I don't think that
8  the medical monitoring class certification presents additional
9  insurmountable hurdles.  I would simply like the opportunity to
10 be able to file a reply within some very short period of time
11 to be able to see what it is that the debtor has to say on
12 those issues and schedule it for a hearing as soon as we can.

13        THE COURT:  All right.  Well, let's work out a
14 schedule.  Mr. Bernick, do you want them all pushed off?

15        MR. BERNICK:  What I was going to get to is the fact
16 that we had not had the opportunity to submit briefs, I
17 believe, really on -- on any of these.  I believe that we were
18 prepared to submit a brief with, really, in a matter of a very
19 short period of time on the motion to dismiss.  That can easily
20 be set for the next time.  With respect to the motions for
21 class certification, it -- can we certainly get a brief on file
22 and that's not an insignificant undertaking, but it's -- it's
23 doable.  The only real caveat there is  whether we would need
24 some discovery of the class representatives in particular and
25 -- and I'll alert the Court to the fact that there are not

1  insignificant issues -- predicate factual issues about the
2  nature of the class definitions, and who these people are
3  really representing.  And I don't know if that is really going
4  to be possible within the period of time between now and the
5  next hearing.

6          What I would propose is the that the next hearing we
7  take up the motion to dismiss the case and we take up the case
8  management order.  And -- because I think that those are either
9  fully briefed or they're -- they're going to be -- they can be
10 briefed in a very short period of time, and that we defer into
11 the hearing after that the motions for class certification when
12 Your Honor can rule.  And if -- if we do need discovery we can
13 make a request for that discovery.  I don't know if there will
14 be an objection to it.  I don't know that we'll make the
15 request either.  But we can certainly take that matter up and
16 have the matter fully submitted to the Court in time for the
17 hearing after next.

18         THE COURT:  Well, with respect to the motions for
19 class certifications the debtor taking a position other than
20 what you articulated earlier, which is they're essentially not
21 needed because the bankruptcy claims process will -- will
22 suffice to do the same thing?

23         MR. BERNICK:  We think that that is absolutely the
24 threshold on dispositive matter, but we don't know wherein Your
25 Honor's interests lie with regard to the merits of the

1  certification itself.  Because, even assuming that the Court
2  was willing to take up a Rule 23 motion notwithstanding the bar
3  date and the Chapter 11 process, you know, there are issues on
4  the merits under Rule 23 itself.  These are particularly the
5  medical monitoring class, but also the property class.  It's
6  very unusual classes and we certainly would want to brief the
7  merits under Rule 23.  If Your Honor wants to take up, as a
8  threshold matter, the question of whether we should even go
9  down this road, given the fact that we're in bankruptcy and
10  we're asking for a bar date.  I suppose we could take that up
11  at the next time.  We don't need -- certainly don't need
12  discovery for that purpose.

13         THE COURT:  Well, with respect to the request for
14  class certification may I just ask the question and see if I
15  can get you folks taking about this in a, perhaps, non-
16  litigious format.  There is some precedent for the -- for the
17  debtor's position that the bankruptcy and the claims process
18  obviate the need for class certification.  There is also some
19  authority, although, not particularly generalized, I think, for
20  the proposition that class proofs of claim may be appropriate
21  where you can identify appropriate class.  Is there some reason
22  why we need to go through the class certification process if,
23  instead, we could work out the mechanism by which a class proof
24  of claim could be filed with respect to those Zonolite claims?
25         MR. SOBOL:  Well, if the -- if the latter pertained

1  -- if there really a way to file a class proof of claim then
2  the answer is, yes, we'd be able to obviate those issues.  The
3  question, and you're right to point out that it has been
4  litigious so far, is that the parties are at very different
5  points of view.  I want to say from the class point of view
6  what we see is an effort to try to vulcanize it, roll the
7  claims into just those individuals who, nowadays, happen to
8  know whether or not they have Zonolite Attic Insulation, which
9  obviously is a much smaller portion then the overall
10 population.  And our response to date has been well then we
11 would have to go by way of class process.

12         If, however, a class proof of claim on behalf of the
13 a defined class were able to be lodged, and when we were able
14 to, in some way, bind that class to a trial on the merits of
15 the issue, if that's the road we go down to, which is to
16 liquidate rather than estimate the claims, then that's fine.
17 Again, what we would be doing is we'd be approaching the class
18 wide basis, rather than otherwise.

19         THE COURT:  Well, what I want clear about with
20 respect to the class that has already been certified, is there
21 actually a class representative who alleges to have sustained
22 some damage already?

23         UNIDENTIFIED SPEAKER:  Yes.

24         THE COURT:  I mean, is there a -- there is a--

25         MR. SOBOL:  Yes.

1      THE COURT:  -- proof of claim that's possible on
2  behalf of someone with an actual damage?

3      MR. SOBOL:  Yes.  For the State of Washington there
4  are the class rep or class reps. they are who are in a position
5  to be able to do that and would intend to do that.

6      MR. BERNICK:  The -- the difficulty, Your Honor --
7      MR. SOBOL:  But, obviously, there's the rest of the
8  country which the Zonolite Attic Insulation case seeks to --
9  from the MDL court seeks to get a class certified.

10      THE COURT:  Okay.

11      MR. BERNICK:  The difficulty, Your Honor, is -- is,
12  you know, from the -- actually, I'm not -- I'm not sure to what
13  extent the impact has been apparent in the briefs.  But there's
14  a threshold issue about whether class certifications are even
15  available in the context of Chapter 11.  The Seventh Circuit
16  addressed that issue and <u>American Reserve</u> has not yet been
17  addressed by the Third Circuit.

18      But even if you follow <u>American Reserve</u>, <u>American</u>
19  <u>Reserve</u> takes up the issue of class certification after there
20  is already a class proof of claim on file.  So, that you can
21  logically say that we go forward, have a bar date and have the
22  proofs of claim filed and then take up the question of whether
23  if there is a class proof of claim it ought to be certified at
24  that time.  The difficulty that you run into -- and then we
25  would be into the full merits about whether it's really

1 necessary, and if so, what's the size of the class.  The
2 difficulty is, really, that at the end of the day if the
3 question is going to be, does the class proof of claim
4 alleviate the need for people to come in and file claims by the
5 time of the bar date, that is that if -- if there's going to be
6 a class proof of claim then what really is the point of having
7 the bar date to begin with.  Because, effectively, if the class
8 is certified then -- then everybody comes in and is there.  You
9 know, the further complication of then opt out.-- you certify a
10 class under B3.  There's the right opt out.  We have serious
11 doubts about whether you can do anything under B2.  Even under
12 B3, however, you then have opt outs.  Well, who are the opt
13 outs and do they have to have filed their proofs of claim by
14 the time of the bar date.

15      THE COURT:  Well, that' the difficulty with all class
16 concept in a bankruptcy.

17      MR. BERNICK:  Right.

18      THE COURT:  The fact tat you may have to provide for
19 an opt out.  But, of course, there have been Chapter 11's that
20 have gotten around that issue by, essentially, binding people
21 with -- as of the date -- as of the bar date unfixed claims.  I
22 hate to use the word contingent, because I don't know if
23 they're really contingent.  But, they're unknown at the time.
24 That's why you get futures reps in the personal injury side.
25 That's probably why property damage committees exist to take a

1 look at what happens up to the date of plan conformation, and
2 then you try to figure out what happens going forward.  So, I
3 think Chapter 11 deals with all of these issues.  It just
4 doesn't deal with it in the same way Rule 23 does.

5          MR. BERNICK:  Right.  But the concrete issue then
6 becomes, from the point of view -- Your Honor asked the issue
7 about timing.

8          THE COURT:  Yes.

9          MR. BERNICK:  And -- and we would believe that the
10 appropriate procedure is, in fact, to set a bar date, to have
11 everybody who was going to file a claim come ahead and file the
12 claim.  If, at that time, they want to move for class
13 certification in some fashion, that is the time to do it under
14 <u>American Reserve</u>, and we can, certainly, deal with it at that
15 point in time.  The key thing, however, is that as we go
16 through the bar date process there ought to be a notice program
17 and there ought to be the expectation that, in fact, people do
18 -- I believe they have claims do, in fact, file the claims.
19 That is of the essence from -- from our point of view, and the
20 only way we really think that the rules for prosecuting claims
21 in the bankruptcy can be satisfied.  People have got to file
22 their claims by the bar date.  At that point in time, if they
23 want to come in and move for class certification we can
24 certainly deal with that motion at that time as it was dealt
25 with in <u>American Reserve</u>.

1      MR. SOBOL:   May I make a suggestion, Your Honor?   In

2  terms of trying to address?   In terms of trying to address the

3  issues of the CMO and the -- the proposed class certifications

4  and the motion to dismiss, that this Court take up all those

5  issues other than the class representatives, you know, the

6  particular issues with respect to Rule 23, whether or not the

7  particular class reps are representative and -- and whether or

8  not they're committed to the litigation, and that kind of thing

9  because what I think you'll find when we get into the weaves of

10 this argument is that even trying to go through the normal

11 process of a bar date here for Zonolite, and in particular,

12 addresses the merits of the underlying Zonolite litigation,

13 which is what kind of notice would one send out.   Would one

14 send out --

15      THE COURT:   I don't think that goes to the merits.

16 That simply goes to whether or not, (a) a notice is required to

17 provide people who haven't yet come forward to assert claims

18 that, in fact, they may have some liability.   That's number

19 one.   And, number two, what type of notice, if it is

20 appropriate, should be given.   And then we deal with the issue

21 of what happens if nobody files any claims.

22      MR. SOBOL:   Sure.

23      MR. BERNICK:   Right.

24      MR. SOBOL:   I guess what -- what I meant to say was -

25 - was this then.   Trying to figure out what kind of notice

1  should go out to whom, and that kind of thing is a heated
2  issue, at least as to the litigants today.  Why?  Because the
3  plaintiffs take the position that it should warn of dangers and
4  serious dangers are potential dangers because that's what's
5  going to motivate somebody that comes forward and files a
6  claim.  The debtor, however, takes the position that's not the
7  appropriate kind of information and that's the kind of
8  litigation, frankly, that we undertook elsewhere.  So, again,
9  what I'm simply suggesting is when trying to address issues
10 like this the question then -- I think that you'll find at some
11 point that it might be helpful to have some kind of better
12 handle over what the underlying science issues are in a class
13 wide basis before you to truncate and terminate forever the
14 rights of -- of many hundreds of thousands of homeowners.

15         THE COURT:  Well, it seems to me that if we fix the
16 bar date we can deal, at some point, with who should -- who
17 should get it.  If it turns out that the bar date was
18 inappropriate for one reason or another, I hate to rely on the
19 fact that I sit as a court of equity, but I sit as a court of
20 equity, and I can fix that issue.  That's the one thing I can
21 do.  I can change bar dates.  I can add the bar dates.  I can
22 modify bar dates if needed for a cause.  So, if it turns out
23 that whatever decision I make is inappropriate or has -- was
24 improvident because of information that comes to me later, I
25 can always take a look at the issue of bar dates.  I can always

1 take a look at the issue of proofs of claims and objections to
2 claims. The code gives me that specific authority and I'll
3 exercise it if I need to. So, my view is we ought to get this
4 case on a track to start getting some of the claims filed. If
5 we need to go through class -- that is the class certification
6 motions we will. If we don't, let's at least get the bar date
7 and the notice issues fixed and then figure out what to do with
8 the class down the road.

9       MR. BAENA: May it please the court. Your Honor, we
10 -- the Property Damage Committee did weigh in on these issues.
11 You probably read our brief as well. And -- and from my
12 perspective being somewhat removed except as counsel to the
13 property damage claimants, generally. There is a systemic
14 problem with all of this, and that is if you set a bar date and
15 you start a notice program you need to understand who the bar
16 date applies to and who you're giving notice to, and we spent a
17 awful lot of time before the cases were reassigned getting
18 ready for a hearing before then Judge Farnan on those very
19 issues. And so, if we were coming next time and debate
20 notification, for example -- the notification program, I don't
21 think there's a dispute that the notification programs that
22 might be authorized by -- by the Court are very different if,
23 on the one hand a Zonolite claimants are affected by the
24 notification program, and on the other hand they aren't.
25 There's -- there's a wide range of expense that's attended to

1  that, which has got some people's attention as well.

2          So, it -- I struggle not being a class action lawyer,
3  just being a bankruptcy lawyer.  I struggle with the notion of
4  how do you start the process as a bankruptcy process and then
5  go back to Rule 23 practice and then come back to bankruptcy.
6  It -- it seems to me that the process is determined up front,
7  the issue of whether or not a class proof of claim is going to
8  be applicable.  It reduces the arguments about the proof claim
9  form itself, quite frankly.  It reduces the arguments or -- or,
10 at least, frames the arguments about the notification of the
11 program.

12         The problem we had when we filed our brief was that
13 we didn't understand how the Court could authorize a class
14 proof of claim if there wasn't a class action that had been
15 certified, or at least a class within a class action that had
16 been certified.  So, you know, where you start this process, I
17 think, portends where you end up.

18         THE COURT:  Now, I think the beauty of Chapter 11 is
19 that it is somewhat flexible and it can be -- it can be
20 utilized in ways that, perhaps, some other forms of litigation
21 and functioning of the states can.  And it seems to me that
22 although there isn't, necessarily, a fixed body of law that
23 discusses this concept of class proof of claim that it's --
24 it's not going to be rocket science to figure out who it is who
25 might be subject to filing a class proof of claim.  If you can

1 identify the proponents for purposes of class certification you
2 can certainly identify the proponents for filing a class proof
3 of claim.  They're going to be the same proponents.  The
4 question is, how do you get the notice out, who are they going
5 to be, and who's going to represent them.  Those are the
6 issues.

7           MR. BAENA:  I agree.  I agree.  But before we launch,
8 for example, a five or a six million dollar notification
9 program and then came back to argue whether the fact that there
10 were a few people responding with proofs of claim, because it
11 was an ineffective program, which would presumably be the
12 argument that that were the case on this side of the table.

13           THE COURT:  Well, nobody --

14           MR. BAENA:  Or argue that there are no claims.

15           THE COURT:  Nobody's programs, as they have been
16 submitted, are going to be deemed to be ineffective notice by
17 anybody.  If you don't cover the world with these programs at
18 either from the debtor's side or from the committee side, as
19 they've been proposed I would be very surprised.

20           MR. BERNICK:  I'd make a proposal that, Your Honor,
21 it seems to me that there are a lot of things that are kind of,
22 you know, milling around here and that maybe -- and, I think,
23 what Your Honor is focused on is sequence.  You know, what --
24 what we have to do and when we have to do it.  And -- and,
25 certainly, the motion for a case management order, which has to

 1  be established from a bar date, I think, is the first order of
 2  business because, as I understand Your Honor, we ought to be
 3  focused on getting the bar dates so we can get the claims to
 4  come in.  And we would be prepared to take that up, and I'm
 5  assuming the other side would be prepared to take that up at
 6  the next hearing.

 7            THE COURT:  Why don't we do this, with respect to the
 8  case management order I think but for the Zonolite issue the
 9  rest of the case management order doesn't appear to be as hotly
10  contested.  You've a little things that, I guess, people may
11  want you to tweak here and there.  But it doesn't look like
12  it's going to be that much of an issue.  Why don't we start
13  with the case management order and see how far we go.  Perhaps
14  we can, at least, get bar dates for everything other than the
15  asbestos personal injury that I'm not deciding.  And, maybe
16  even other than the Zonolite, if we have to couple that issue
17  with this class issue after the next hearing.  But let's start
18  with the -- the case management order.

19            UNIDENTIFIED SPEAKER:  That would include
20  notification, is that right?

21            THE COURT:  Yes.

22            MR. BERNICK:  But that's the -- that's the difficulty
23  is that once you get into the notice, the notice is very much
24  tied into the question of what you are giving notice of.  What
25  I was going to propose is that we do all of that.  That is that

1  we have the case management order on all -- at bar date issues,
2  on all matters but personal injury.  If, at that time, it is
3  really the contention of the -- of the Zonolite attic fill
4  claimants, who filed the motion for class certification that
5  they are entitled to get an up front determination prior to the
6  bar date that this is going to be a class action, but to make
7  that argument I think that there is absolutely no basis.  901-4
8  will -- 901-4 says you have to have a contested matter before
9  these Federal Rules of Civil Procedure even apply.  Even
10  American Reserve didn't say that you can take up class
11  certification before you had the proofs of claim on file.  They
12  have filed complaints that are purported adversary complaints
13  in order to solve that problem.  They filed adversary
14  complaints so that they can create a contested matter.  They're
15  not proper adversary complaints.  We have motions to dismiss
16  those adversary complaints.  So, next time we can focus on the
17  bar dates, and if they want to make the pitch that you need to
18  resolve Rule 23 before the bar date can be established, let
19  them make that pitch.  If Your Honor rules for them, then we're
20  going to have to put the matter over again, and have Rule 23
21  proceedings.  If Your Honor rules against them then the bar
22  date goes ahead.  We get the claims come in and we have Rule 23
23  at a later date.  But that way they're not prejudiced, because
24  if they believe that the notice program cannot be approved
25  without taking up Rule 23, they can make that pitch next time

1  and we'll respond to it next time.

2        THE COURT:  Okay.  I think the issue for the notice

3  that I'm -- maybe this is an undercurrent.  Maybe I'm missing

4  something, but it -- it doesn't seem -- well, let me put it

5  affirmatively.  There is a dispute as to how much the debtor

6  has to advise entities that may not yet have claims, or may not

7  know that they  have claims, or may never have claims about the

8  potential that there is --

9        MR. BERNICK:  Right.

10        THE COURT:    That seems to be one issue.  And,

11  obviously, it's going to have to be addressed in some form.

12        MR. BERNICK:  Yes.

13        THE COURT:  But once we get past -- that is, the

14  specifics of the notice program don't seem to be hotly

15  contested.  You do have issues about some things that you want

16  added or don't want added, but who's going to get the notice to

17  the extent that even if a class were certified you're still

18  going to go through the same kind of publication notice,

19  because you don't know who all the claimants are in that class.

20  So, I don't think the issue of how the notice goes out, or who

21  would be entitled to get it, or who it could bind will differ,

22  whether we look at proofs of claim, class proof of claims, or

23  class certification under Rule 23.  The content of the notice

24  may change, but not the whos and the whats and the hows and

25  what is effective and proper in terms of the distribution of

1  that notice.  So, I think there are issues that we can get to
2  whether or not there is the class certification determination
3  now, or whether it's two months from now.  I think we can get
4  to, pretty much, everything that's in the case management
5  order.  I may not be able to get to the content with respect to
6  the Zonolite plaintiffs, but let's, at least, take a stab at it
7  and see how far we get.

8          MR. BAENA:  If I may?  I have no -- no issue with
9  that, Your Honor.  What I'm -- I guess the bottom point from
10 the Zonolite Attic Insulation in plaintiff's preview is this,
11 if we know we're going to be in the position to file a proof
12 class of claim, and speaking from that narrow band of
13 claimants, the Zonolite Attic Insulation claim, I frankly don't
14 care an awful lot about what it says because we're going to
15 have a representative who can file the class proof of claim.
16 If, on the other hand, that is an issue as to whether we'll be
17 able to do that, and whether there is an issue as to whether we
18 can do a class -- a class certification, then that raised, from
19 our point of view, not only the content of what is said in the
20 notice, but the frequency by which the notices gets sent out,
21 how many times it would be sent out through -- and all the many
22 other issues because, frankly, we would not see then the
23 question to be a ordinary bar date type notice question,
24 because the first one has to educate the population regarding
25 the problems the people can know.

1    So, the bottom line of my point ends up being if we
2  know that we're going to be able to use the class process to be
3  able to bind the litigant, if you will, then our issues with
4  the notice will be far smaller.

5    THE COURT:  Well, if you want to give me a
6  supplemental, limited to not more then ten page each brief on
7  this issue of using the class proof of claim, so that I can
8  consider it in conjunction with the notice, I'll be happy to
9  take a look at that.  I -- I don't have a view of -- in terms
10  of an opinion about this one way or the other.  It just seems
11  to me that as a practical point of view this may be an
12  effective work around, but who would be entitled to participate
13  by way of that class proof of claim process, at the moment, I
14  don't have a clue.  I truly don't have a clue.

15    MR. BERNICK:  But that's -- that's why, again, you
16  have the bar days.  You find who -- who, in fact, the claimants
17  are.

18    THE COURT:  Well, I -- I think that's -- I mean,
19  there is some precedent for the fact that you send a notice
20  out, you get the proofs of the claim and then if you're
21  inundated with thousands of claims in a particular way and it
22  looks like you need a class certification, then you can file a
23  class proof of claim to deal with those issues.

24    MR. BERNICK:  Correct.

25    THE COURT:  I agree, and for voting purposes that may

1 even make some sense to -- to your representative clients down
2 the road.  I know that's way down the road.  But, nonetheless,
3 it's something that may -- may impact your decision as to
4 whether it's a good idea or not.  If you want to submit a brief
5 on that subject, I'll -- I'll be happy to see it.  In terms of
6 the timing of when we go forward, I think we should deal with
7 the case management order first.  If I can get through the
8 Zonolite notice provisions, I will.  If I have to couple it
9 with the hearing on the class certification motions, I'll just
10 simply defer that portion of it.  But, I would certainly like
11 to get, at least, the rest of these bar dates set so that we
12 can start getting claims in and start getting some litigation
13 going to clean the case up.

14            MR. BAENA:  I don't wish to debate the substance --
15            THE COURT:  Great.

16            MR. BAENA:  Just -- just offer up some views about
17 timing.  We've taken several depositions in connection with the
18 notification issues.  I think it's fair to say without leaving
19 myself without any room for deniability that the principle
20 contentions about the notification program center around
21 Zonolite.  And, the -- the nature of the -- the notice that's
22 given, as well as the manner in which that notice is provided
23 to the Court.

24            THE COURT:  Right.
25            MR. BAENA:  There are two experts involved.  We've

1 | had one that's been retained and they have one that's been
2 | retained.  I'm not so sure that those issues are manageable
3 | with everything else on the same calendar, if we're just
4 | talking about a couple of hours in the afternoon.

5 | THE COURT:  Well, look, I've read the expert reports
6 | that have been submitted.  Am I going to hear anything
7 | different from the witnesses?  Because if I'm going to hear
8 | something different -- if I'm not going to hear anything
9 | different, then why don't we offer those reports up by way of a
10 | declaration as their case in chief.  Offer them for cross-
11 | examination if we need them for cross, and let's move on with
12 | this.  I mean, any expert -- saw this isn't going to change his
13 | mind on the stand over what his report says.

14 | MR. BAENA:  Our expert, in an effort to save money
15 | didn't do a supplemental report after their expert did.  And,
16 | as a result, you don't have before you the expert -- the
17 | current expert report or a report of -- from our side.

18 | THE COURT:  After the debtor offered to revise the
19 | notice in conjunction with your experts, is that what it is?  I
20 | mean, is that what I'm getting to, their opinion about what I'm
21 | going to rule on a notice issue?  I don't need an expert to
22 | tell me what I'm going to rule on a notice issue.

23 | MR. BAENA:  It's a far more complicated issue then --
24 | I perceive --

25 | THE COURT:  Gentlemen, it's not that complex.

1        MR. BAENA:   Judge, I know you may --

2        THE COURT:   It's a straight bankruptcy issue.   We
3  rule on notices all the time, and it's not going to take the
4  rest of my life to do it.

5        MR. BAENA:   I would -- I hope not, because that means
6  I'll be stuck with you in that mess, and I don't wish to be
7  either.   I just suggest, Your Honor, there is a lot on the case
8  management proposal.   There are a lot of pieces to it.   On the
9  -- on the property damage side there's two pieces to every
10  part.   There's Zonolite and there's traditional property
11  damage.   We have to bring witnesses in.   Whether or not you
12  choose to listen to them is your prerogative, of course.

13        THE COURT:   Do not bring witness on a motion's day.
14  I've already announced on this record several times.   I am not
15  paying your witnesses to come on a motion's day.   I do not hear
16  testimony on a motion's day.

17        MR. BAENA:   Well, it may be --

18        THE COURT:   If you need testimony we'll specially
19  schedule it.   Do not bring witnesses.

20        MR. BAENA:   Respectfully, then, Judge, maybe we ought
21  to specially set this because I think there is testimony about
22  the --

23        THE COURT:   No, first we're going to get through the
24  issues that I can get through without any witnesses.   That's
25  what I said.   I'm ready to go today, folks.   I -- some of these

1  issues are not contested.  I'm prepared to make rulings and
2  give you some orders so we can start getting some things going.
3  The issues that are contested, if I do need witnesses, I'll
4  specially schedule, but we're going to go through the
5  provisions of the case management order line by line as
6  attorneys and judge in this courtroom, figuring out what's
7  contested and what isn't, and then I'll set a hearing when I
8  find out whether there's a real contest that I think I need
9  witnesses for.

10        MR. BAENA:  That's perfect, Judge.  That's the
11 perfect process.  We can subscribe to that.

12        MR. BERNICK:  The -- the brief that Your Honor would
13 like to see is on the question of whether the -- the proposal
14 of Rule 23 treatment affects the notice requirement, or --

15        THE COURT:  Oh, no.  I think the only issue, really,
16 is whether or not use of the class notice process, and I'm
17 specifically talking about only the Zonolite --

18        MR. BERNICK:  Right.

19        THE COURT:  -- people right now.  Not everybody.  I'm
20 not allowing the trade and the filing class notice.  Don't ask.
21 But on this Zonolite issue it seems to me that the issue of
22 whether or not a class proof of claim can be filed may obviate
23 some of the issues.  I don't think it will obviate all, but it
24 may obviate some of the issues that will come up in the class
25 certification side.

1          MR. BERNICK:   In the class certification side?

2          THE COURT:   Of the motions to certify classes that
3  are pending that I have deal with.

4          MR. BERNICK:   Well, now -- now I'm -- I'm a little
5  confused.   The -- they have a motion to certify a class.

6          THE COURT:   Yes.

7          MR. BERNICK:   We're going to take up next time the
8  bar date and notice program, and -- and I understand what Your
9  Honor has said about that.   Now, the brief that you would want
10  I had thought was a brief in connection with that hearing
11  process, or is this a different -- is this a brief that kind of
12  is a further down the road?

13          THE COURT:   No, I don't want briefs unless you want
14  -- you have something you want me to read.

15          MR. BERNICK:   Yes.

16          THE COURT:   I'm read out in this case.

17          MR. BERNICK:   Yeah, I -- I get that drift.

18          THE COURT:   What I am suggesting is, if there is
19  going to be an issue about whether a class notice process is
20  (a) appropriate or, (b) the time at which to consider it, and
21  you want to submit some points that give me a clue about what
22  your position is going to be, and if the debtor is going to
23  tell me that you're going to oppose a class notice, then I'd
24  like to know that you're going to oppose a class notice and
25  why.   If you're going to tell me that you won't depose a class

1  notice if there isn't a class action certified somewhere, and
2  we'll have to work out the provisions of it later, as to the
3  appropriate timing and who is to be included in that class, I'd
4  simply like to know what your position is.  So, I'm giving you
5  an opportunity to -- to set it out.  If it's premature, then
6  don't --

7           MR. BERNICK:  Yeah, that's -- that's really -- that's
8  really -- in a sense, that's really what it is.  We think there
9  ought to be a notice for a bar date.  We believe it would
10 satisfy the same standard as you have for a notice for a class,
11 but if you have a quote, class notice, the purpose of that
12 class notice would be to invite people to exercises their
13 rights to opt out or not.  And before you have that kind of
14 class notice, obviously, you'd have to have a class
15 certification hearing on the merits of whether it satisfied a
16 Rule 23.  So -- and that is a matter which we are proposing be
17 deferred until after the bar date is set and the claims come
18 in.  And, basically, our position is that let's take care of
19 that business.  If they want to then move for class
20 certification under Rule 23, given the circumstances that they
21 are under American Reserve, which requires that there be a
22 claim first, they can do that.  If Your Honor grants that
23 motion they can then send out a class notice and find out who's
24 going to opt out.  But the idea of opting out of a class is
25 different from determining who are the claimants who are going

1  to step forward and prosecute their claims, from our point of
2  view.

3      THE COURT:  Well, yes.  I mean, determining who the
4  appropriate representatives are, and whether they're
5  representative is different from who may be -- who the actual
6  participants are in the class.  I mean --

7      MR. BERNICK:  See our -- from our point of view, step
8  one is just to find out who is going to make a claim, whether
9  that claim is going to be prosecuted as a class claim or not.

10     THE COURT:  Right.  This is what I think we need to
11 do.  At the next hearing we will take up the issue of the case
12 management order.  We will get as far as we can go.

13     MR. BERNICK:  Okay.

14     THE COURT:  If I need an evidentiary hearing I should
15 know that by the end of that day and I'll give you time to
16 bring in your witnesses and we'll set out what the issues are
17 going to be and what the witnesses are going to testify to in
18 global terms.  So, that's what we'll start with, the case
19 management order.

20     MR. BERNICK:  Fine.

21     THE COURT:  I'm happy to deal with the motion to
22 dismiss the case at the next hearing as well.  I think that's
23 fine.  It's been sitting there a long time.  It probably should
24 be addressed. Probably we're not going to get any further then
25 that, plus whatever other assorted motions you need to be

1  filing in the meantime.

2       Since the debtor needs time to respond to the motion
3  to dismiss or --

4            MR. BERNICK:  Yes.

5            THE COURT:  Yes.  And  you need time to comply to the
6  response.

7            UNIDENTIFIED SPEAKER:  Yes, ma'am.

8            THE COURT:  Let me give you dates for doing that now.
9  Okay.  What's the agenda item number on the motion to dismiss
10 the complaint?

11           MR. BERNICK:  That -- that is Number 8 on Page 6.

12           THE COURT:  All right.  Is anyone planning to join
13 that motion to dismiss who hasn't yet joined the motion to
14 dismiss?

15           MR. BAENA:  May we have an opportunity to discuss
16 that with our committee, Your Honor?  It's a matter that's been
17 discussed by our committee without going any further.  We
18 haven't -- we haven't reached a decision.

19           THE COURT:  When's your committee meeting?

20           MR. BAENA:  We meet every Thursday.

21           MR. ZALESKI:  Your Honor, some of its been discussed
22 and the committee has not taken a position, but we can get
23 together in time to satisfy whatever deadline you set.

24           THE COURT:  All right.  This is the order.  Mr.
25 Bernick, will somebody form your staff prepare this order to

1  submit them?

2            MR. BERNICK:  Yes.

3            THE COURT:  Okay.  And, generally speaking, if I just
4  assume I'm getting them within a week, is that sufficient?

5            MR. BERNICK:  That's fine.

6            THE COURT:  I can alert my staff that I'll get the
7  orders within a week.

8            MR. BERNICK:  That's fine.

9            THE COURT:  Okay.  Okay.  Any joinders to the motion
10 to dismiss the case must be filed not later -- when I say filed
11 I always include service in that context, filed and served not
12 later than February the 4th -- I do not want additional briefs
13 from anybody unless you've got a point to make that hasn't
14 already been briefed.  I'm going to impose a brief -- a page
15 limitation for all briefs going forward from now on.  I will
16 take them issue by issue because I don't know what I'm getting,
17 but I'm not going to keep reading the same thing 25 times.  If
18 I don't get it the first time, in all probability, I'm not
19 going to get it the second and third, so it doesn't help to
20 repeat the same thing to me.  So, I'm going to impose a page
21 limit.  As a result, folks, whoever files the first brief,
22 please read it carefully because you'll be wasting your pages
23 if you repeat something they've said and I have to read it
24 again, because the page limitation will apply.

25            Do not submit a brief if all you're doing is joining

1 | in the motion without something else to say.  If you have
2 | something additional to say, say it, but don't repeat anything
3 | that's already in there.  Just tell me that you join in
4 | argument whatever it is, and I'll understand what that means.
5 | Ten pages, period.  No brief in -- with respect to a joinder to
6 | the motion may exceed ten pages.  How much time do you need to
7 | respond to the motion?

8 | MR. BERNICK:  Well, let's see, they -- I'm sorry,
9 | Your Honor, what is the date of the of the next --

10 | THE COURT:  February 4th -- oh, the next hearing is
11 | February the 25th.

12 | MR. BERNICK:  So, you'll want that -- you'll -- well,
13 | we can file fairly promptly after that.  When would you like to
14 | have the brief submitted by?

15 | THE COURT:  Well, I need time for a reply, so if I
16 | give you until -- I need the replies by, at least -- my order
17 | says I need them by the 15th, and these circumstances, so that
18 | we can get things moving, I -- I will waive that requirement,
19 | but I need them, at least, by the 20th to reply.  So, they'll
20 | need, at least, say from the 15th on.  Can you file your
21 | response and brief by February 15?

22 | MR. BERNICK:  Yes, ma'am.

23 | MS. KRIEGER:  Your Honor, Arlene Krieger from Strook,
24 | Strook and Lavan.  We represent the Unsecured Creditors
25 | Committee.  Just so that Your Honor is aware the amended agenda

 1 notices is deficient.  The committee had already filed an
 2 opposition to that motion to dismiss back in December.
 3           THE COURT:  Okay.
 4           MS. KRIEGER:  So, I wanted the Court to be aware of
 5 that.
 6           THE COURT:  You filed an opposition?
 7           MS. KRIEGER:  That's correct.
 8           THE COURT:  Yes, I've seen it.  Maybe the agenda
 9 letter just isn't there.  Okay.
10           MR. ZALESKI:  Your Honor, so it's clear, if the --
11 the Asbestos Personal Injury Committee actually decides to
12 oppose the motion we would then be using that deadline as well
13 concerning the debtors, the 15th?
14           THE COURT:  Yes.  Anyone who wants to file a brief in
15 opposition or -- or a response in opposition has the same
16 schedule as the debtors.  I'm just trying to make sure that I
17 get all the people who want to join it in before you have to
18 respond to it first.  Okay.  The debtor and any other parties
19 may respond in opposition to the motion with a brief -- the
20 debtor's brief may be not more than 25 pages -- everybody else
21 is limited to ten -- by February 15th.  Replies with briefs,
22 limited to ten pages are due by February 20.  I would like you
23 to e-mail copies of these to me, please, in Pittsburgh so I
24 make sure that I -- I get them timely.  The address is
25 JKF@pawb.usacourts.gov.  Please do not send me anything other

1 | than your office -- either your joinder and your briefs, or
2 | your oppositions and your briefs.  I will not read anything
3 | other than that.  If I see it, I'll simply delete it.  So,
4 | don't bother sending it to me, please.

5 |         I can accept this in either Word or Word Perfect
6 | format at that e-mail box.  Can we do PDF in that e-mail box?
7 |         THE CLERK:  Word or Word Perfect would be easier to
8 | download.

9 |         THE COURT:  Okay.  Can you -- can you forward the --
10 | by e-mail the -- either  -- the document in either Word or Word
11 | Perfect as opposed to PDF if you can?  Okay.  That would be
12 | helpful.  Thank you.

13 |         MR. BAENA:  Your Honor, could you just repeat that?
14 |         THE COURT:  Yes.
15 |         MR. BAENA:  J -- JKF@pawb?
16 |         THE COURT:  Yes, Pennsylvania Western
17 | Bankruptcy.uscourts.gov.

18 |         MR. BAENA:  Thank you.
19 |         THE COURT:  All right.  What else on the motion to
20 | dismiss?  Okay.  Argument then is on February 25th at eight
21 | o'clock -- eight a.m. to seven p.m. gets to be a long day.
22 | Okay.  All right.  Next, Mr. Bernick?
23 |         MR. BERNICK:  Okay.  Now, I think that brings us to
24 | -- you've covered seven and eight.  Seven was the case
25 | management order.  Eight, the motion to dismiss.  Nine were the

1  class action complaints with two different motions for class
2  certification, and then with respect to the -- the medical
3  monitoring -- I'm sorry. I guess it was with respect to Item
4  10, which was the property -- ZAI property class action, we
5  moved to dismiss the class action as improper adversary
6  complaint. I guess what I would propose is that both of those
7  items, that is Items 9 and 10, including any motions, as well
8  as briefs in response to those class actions complaints and
9  motions be simply deferred until the next hearing, and then we
10  can take up the question of where to go with those at that
11  time.

12         THE COURT:  Okay. Let me look for a minute at Item 9
13  again.

14                          (Pause)

15         MR. BERNICK:  It's a medical monitoring class action.

16         THE COURT:  Okay. Item 9 I definitely would like
17  deferred until -- until February 25th, at which time I will
18  report who is going to handle Item 9.

19         UNIDENTIFIED SPEAKER:  Right.

20         THE COURT:  Are the pleadings closed with respect to
21  Item 9?

22         MR. BERNICK:  No.

23         THE COURT:  What has to be done?

24         MR. BERNICK:  Well, I believe counsel here has got an
25  issue about serving the summons -- or issuing the summons in

1 connection with the complaint and then we would -- we will have
2 a motion -- it's issue we will have a motion to dismiss as
3 being an improper adversary proceeding, and then there is the
4 related motion for class certification that they've filed and,
5 obviously, we would also want the opportunity to respond to
6 that.

7          THE COURT:  Okay.  So, the summons hasn't even been
8 issued on this complaint?

9          MR. SULLIVAN:  That's correct, Your Honor.  Bill
10 Sullivan, Delaware counsel for the Zonolite plaintiffs.  When
11 we filed this, Judge Farnin chose not to issue a summons
12 because he was transferring the case.  My office then contacted
13 your office and was told to wait until a status conference.
14 So, I have copies of the summons.  I just want to clear it with
15 you as to how you would like to do it to set a pretrial date
16 and a summons response time.

17          THE COURT:  Why don't I give you that -- those dates
18 now so that, at least, we can get that on track, and if it
19 turns out that Judge Wolin's going to hear it, the only
20 difference would be the pretrial conference date, because we
21 need to get the summons and the pleadings closed no matter who
22 hears it.  So, why don't we get that process in place.  How
23 soon can you make service?

24          MR. SULLIVAN:  We -- we can make service immediately.
25          THE COURT:  You haven't gotten the sealed summons

1 back, is that what you're waiting for?

2          MR. SULLIVAN:  Yes.  And I have additional copies --

3          THE COURT:  Now, through the -- through Farnan.  Was

4 this adversary commenced before -- it wasn't electronically

5 filed?

6          MR. SULLIVAN:  It was electronically filed, but Judge

7 Farnan required that he set the dates and he -- he did not

8 permit us to issue the summons without him signing off on it,

9 so --

10          THE COURT:  Okay.  Well, I would permit you to issue

11 the summons.  Let me give you the dates.

12          MR. SULLIVAN:  Okay.

13          THE COURT:  Okay.  I need -- you have -- I cannot

14 waive the 30 day response requirement.  That -- that's

15 mandatory.  So, my issue is, if -- I have to have the answers

16 in at 30 days after service.  That's why I'm asking the

17 question, when can you make service of the complaint and

18 summons?

19          MR. SULLIVAN:  Well, if Mr. Bernick can accept

20 service today we can do it today or tomorrow.

21          MR. BERNICK:  I don't have any problem with that.

22          THE COURT:  All right.  Then let me say service is --

23 just in case there's an issue.  Let's say service is going to

24 be by Friday, February 1st.  That means that responses would be

25 due March 4th.  Let assume that since Mr. Bernick has given me

1  a heads up that his responsive pleading is going to be a motion
2  to dismiss, how much time do you need to answer that motion to
3  dismiss?

4          MR. SOBOL:  Your Honor, I think we'll just need a
5  couple of weeks.  I'm trying to -- I don't know what your date
6  is in March for the --

7          THE COURT:  It's early.  It's -- actually, I don't
8  have you written in in March.  I must have forgotten.  It's
9  either the 18th or the 19th.

10         THE CLERK:  The 18th, Your Honor.

11         THE COURT:  18th at ten o'clock.

12         MR. SOBOL:  I would suggest then -- I'm trying to
13 figure out Mr. Bernick anticipating that he might want to file
14 a reply -- just put a date in between there.  I mean, I pretty
15 much know what the issue is going to be.  So, you know, once we
16 get the response.  If I just have at least five days or, you
17 know, seven days and then he has time for a reply.  Whatever
18 dates are convenient for the Court.

19         THE COURT:  All right.  How about if I give you until
20 March 11th -- that's only a week.  Here's the choice.  I can
21 put this in in April.  I don't know how much of a rush there is
22 to get to this issue.

23         MR. SOBOL:  Fine.

24         THE COURT:  That's the question.

25         MR. SOBOL:  That's easier then.  I was anticipating

1 you'd want to do it in March.  If we're planning it for April
2 then, you know, if we could just have 20 days or something like
3 that.

4          THE COURT:  I think that may make more sense and then
5 all of you have a chance to -- to talk about this to.  I expect
6 that once I get the pleadings closed you folks are going to
7 meet and talk and see whether or not you can resolve any of
8 these issues.  I -- in fact, I do more then expect it, I order
9 it.  I want you to confer to see, at least, whether you can
10 eliminate some of the issues.  I'm hoping that we're going to
11 get this case on a conciliatory framework.  So, everything I do
12 is designed to get you to the point where, hopefully, we're
13 going to get a consensual plan going sooner rather than later.
14 I understand there will be issues about which you can't agree.
15 But they don't have to be everything in the case.  So, let's
16 see if we can get this case going on a conciliatory framework.

17          All right.  You want 20 days, that's March 25th.
18 And, Mr. Bernick, how much time would you like to reply?

19          MR. BERNICK:  Seven days.

20          THE COURT:  April 1st.  Argument on April 22nd at ten
21 a.m., unless the matter is transferred to Judge Wolin and --
22 but you're known between now and then.

23          THE COURT:  Okay.  That deals with nine?

24          MR. BERNICK:  That's correct.

25          MR. SULLIVAN:  Thank you, Your Honor.

1    THE COURT:  All right.  What about ten?

2    MR. BERNICK:  Ten is the other class action
3  complaint, that's the Zonolite Attic Insulation class action
4  complaint, and there we have moved to dismiss.  I don't believe
5  that there's been a reply to that, but that would be -- be very
6  -- very likely that the case was transferred pretty shortly
7  after we moved to dismiss.

8    THE COURT:  Okay.  So your briefs are completed on
9  the motion to dismiss?

10    MR. BERNICK:  On the motion to dismiss.  We haven't
11  -- with respect to nine and ten we haven't yet talked about
12  the related motions for class certification, which are also
13  encompassed by nine and ten.

14    THE COURT:  Right.

15    MR. SOBOL:  Well, on your motion -- if I understand
16  Grace filed a motion to dismiss the complaint, Number 10.
17  There hasn't been any response filed --

18    THE COURT:  Right.

19    MR. SOBOL:  -- because it was withdrawn.  So, we need
20  to set a timing for that.

21    THE COURT:  That's what I'm about to do.

22    MR. SOBOL:  Right.  It just seems to me -- I'm happy
23  to do it earlier, but because the issues are precisely, or very
24  close to the same as to the medical monitoring case and as to
25  the -- the ZIA case that has been brought as Number 10, but the

1  hearing date, at least, probably should be the same rather than

2  trying to argue one earlier then the other.

3          THE COURT:  Okay.  Well, I'm happy if they're both in

4  front of me to keep then on the same date.

5          MR. SOBOL:  Right.

6          THE COURT:  I just don't know whether nine is going

7  to be in front of Judge Wolin.  I'm sure ten is going to be in

8  front of me.

9          MR. SOBOL:  Right.

10         THE COURT:  I'll -- I'll keep them together for you

11 just in case I have them.

12         MR. SOBOL:  That's my only suggestion, otherwise,

13 any, you know, briefing schedule that you want to set forth I'm

14 comfortable with.  But, again, Mr. Bernick, at the outset of

15 this, had made a suggestion which I actually agreed about which

16 is, because we're doing the CMO --

17         THE COURT:  See it happens already.

18         MR. SOBOL:  How about that.  Because we are moving

19 forward with the CMO issues in February anyway, there's going

20 to be a motion to dismiss the complaint in February to defer,

21 at least, and not be trying to tee up this issue for February

22 also.  It seems to me to make sense the earliest we'll want to

23 address the issue of the dismissal motion vis-a-vis the

24 complaint on Zonolite Number 10 would be some time in March.

25         THE COURT:  Well, why don't we just keep the same

1  dates?

2           MR. BERNICK:  Well, that's -- that's fine.  What I
3  was going to suggest, actually, is that it might make sense if
4  we do this, in fact, in March and the reason for that is that
5  if Your Honor rules on the motion to dismiss the adversary on
6  Item 10 that will give us a pretty good indication of what
7  you're going to do with regard to Item 9, even though it's on -
8  - it's on a slower time table.  The motion to dismiss is
9  predicated upon the same argument, which is that it's an
10 improper adversary and that you have to proceed by way of
11 making claims under the code.  Adversary proceedings are only
12 for enumerated types of litigation and this isn't it.  So, I
13 think, probably that what you would rule on ten would have a
14 pretty good bearing on -- on nine, and might actually save us
15 some briefing time and some argument time.  But that's up to
16 the Court.

17          THE COURT:  I -- I don't have a preference.  Whatever
18 works for you folks is okay with me.  I have to address them
19 whether I do them together or separately it doesn't matter.
20 Would you prefer to put it in March as a result of --

21          MR. SOBOL:  I am not indifferent -- but I don't know
22 why that word just came to me, but I am indifferent as to
23 whether we do it in March or April.

24          THE COURT:  The -- the thing -- I don't know how many
25 motions are pending.  March --

1          MR. SOBOL:  If I may, Your Honor?  One thing we might
2  do is if we can't get to everything on the CMO like we talked
3  about you're going to -- I think you might be looking to your
4  March date to address that.

5          THE COURT:  Well, that's what I was going to suggest.
6  I'm not sure how much time there's going to be in March because
7  I've only reserved three hours for each of these -- these
8  hearings --

9          MR. SOBOL:  Right.

10         THE COURT:  And so -- and February is shorter because
11  we're already starting at eight because I had a full calendar
12  to put this in.

13         MR. SOBOL:  Sure.  Well, then we can do it in April.
14  That's -- that's fair.

15         THE COURT:  I think -- I just think for scheduling
16  purposes it may make more sense.  However, do you have to
17  separate brief the issues?  Can the briefs be consolidated?

18         MR. SOBOL:  Sure.

19         MR. BERNICK:  At which case right now our reply --
20  our response -- I guess you could work with the 25th -- March
21  25th as the date for the claimants response to our motion --

22         THE COURT:  Right.

23         MR. BERNICK:  -- which the identical date.  And then
24  April the 1st for our reply.

25         THE COURT:  That's right.  Those are the same dates

1 that I said early.

2        MR. SOBOL:  That's fine, Your Honor.  And if Mr.

3 Bernick wanted to supplement his response or a place to brief

4 vis-a-vis the medical monitoring because it only addresses his

5 response -- his motion to dismiss only addresses one of the two

6 cases.  You might want to, in some way, change his brief and

7 file it on the 4th --

8        THE COURT:  Well --

9        MR. SOBOL:  -- leave it what it is.

10        THE COURT:  He'll have to, at least, respond to the

11 adversary summons by way of filing the motion to dismiss on

12 that due date.  If he wants to incorporate the brief add a few

13 facts or whatever that may be typical only to the new adversary

14 he can certainly do that.

15        MR. SOBOL:  Right.

16        THE COURT:  Or if there's a new theory or whatever.

17 I mean, I -- I think I'll keep the brief and schedule the same

18 as what I --

19        MR. SOBOL:  Right.

20        THE COURT:  Okay.

21        MR. BERNICK:  And we've already -- again, we've

22 already filed the motion with respect to Item 10.

23        THE COURT:  Yes.

24        MR. BERNICK:  So -- so what's really there is their

25 response, which, again would be the 25th in our reply.

62

1          THE COURT:  Right.

2          MR. KAPP:  Your Honor, with respect to nine and ten

3 would you like us to tee up a scheduling order?

4          THE COURT:  I think for all of these things, yes.  If

5 I'm expecting an order that it -- because of the wide variety

6 of people who needed it would probably be a good idea to get a

7 written order on the docket.

8          MR. KAPP:  Not a problem.

9          MR. BERNICK:  Now, with respect to nine and ten,

10 there also are the related motions for class certification and

11 I am assuming, based upon our prior dialog that Your Honor

12 would defer the hearing on those matters until after we've gone

13 at least through the next hearing.  What I would propose is

14 that we simply deferred trying to set a schedule on those

15 motions until the conclusion of our hearing in February when, I

16 think, Your Honor will have a better sense of what's happening

17 on the case management order.

18          THE COURT:  I'm sorry, Mr. Bernick, I lost the

19 beginning of that, on nine and ten?

20          MR. BERNICK:  Yeah.  I'm sorry.  Items 9 and 10 not

21 only include the complaints --

22          THE COURT:  Yes.

23          MR. BERNICK:  -- and, therefore, the responses to the

24 complaints, but they also include the motions for class

25 certification --

1           THE COURT:   Yes.

2           MR. BERNICK:   -- that were filed in connection with
3   each one of those complaints.  We have not yet responded to the
4   motions for class certification.  What I was going to propose
5   was that a scheduling -- whatever we're going to do with that,
6   we simply ought to hold for consideration after we get through
7   the case management hearing next time and Your Honor has a
8   better feel for how the -- how that process is going.

9           THE COURT:   I think that's fine because I really do
10  want you folks to talk about this issue of class certification
11  and the possibility of class proof of claim.  I think that it
12  may -- as I said early, it won't eliminate all issues, but it
13  may get you where you need to be in a less litigious format.
14  So, I would like you to spend some time seeing if you can't
15  work out some perimeters whereby, perhaps, the class proof of
16  claim process could be utilized.  I don't know the specifics
17  yet.  I'm not prepared to address the specifics.  But just the
18  concept, I think, may have some validity in this case if we can
19  work out how it's going to get noticed and who is going to be
20  in that class.

21          From the creditors point of view I think it gives you
22  better joinder.  I'm not sure you have to have a opt out on a
23  class proof of claim.

24          MR. SOBOL:   That's how we argued it, Judge.  And in
25  that respect, Your Honor, we -- we don't wish to file joinders

64

1    and replies and all that, but we sure would like to be able to,
2    none the less, argue at these hearings our position in respect
3    to the class process.  Will we be precluded from doing so if we
4    don't inundate you with paper?

5              THE COURT:  No.

6              MR. SOBOL:  Or will we be rewarded?

7              MR. BERNICK:  There's still, I think, maybe a
8    disconnect, and I'll apologize if I'm the one who's being
9    obtuse but when Your Honor says a class proof of claim -- I
10   understand what a class proof of claim is.  The question is
11   what impact its given in connection with the bar date and in
12   connection with the subsequent litigation process. Obviously
13   people have filed class proofs of claim.  I don't even know if
14   that it requires the permission of the court to file a class
15   proof claim.  The question is whether it's then recognized as
16   being a class under Rule 23.  So, in fact, in <u>American Reserve</u>
17   the issue of whether Rule 23 could be used was taken up
18   subsequent to the actual tender of class proof of claim.   The
19   -- the big issue is, do claimants all have to file claims and
20   then the case proceed as a Rule 23 class action.   That's the
21   big issue.  What particular claim form is used?   Maybe
22   something that we could work out in the sense of something
23   that's designed to tee up that issue.  But if Your Honor's
24   going to consider class certification in the sense, how are
25   these claims all managed -- however they're filed, how are they

1 going to be managed.  Then that really is the merits of the
2 Rule 23 certification issue, and the impact of American Reserve
3 in Chapter 11 process.

4        THE COURT:  Look, I have a feeling that if you come
5 to some agreement about the content of the notice and will it
6 involve some compromise by all of you?   Yes, of course it
7 will.  The debtor will have to agree to provide some notice to
8 the potential Zonolite plaintiffs of the fact that there might
9 be a claim out there.  The Zonolite claimants are going to have
10 to act according to whatever the notice provides, which may be
11 that they've got to file a proof claim, or they've got to
12 contact an attorney to discuss whether or not what's in their
13 attic is Zonolite and to see whether they have a potential
14 claim.  I think if you can get past the content issue, the
15 issue of filing the class proof of claim, as opposed to a class
16 certification will probably be less problematic, because if you
17 get the notices out and you get some claims in then, at least,
18 you'll know you've got at least representatives of -- of a
19 class that could, potentially serve -- if you need a -- a class
20 representative for a class proof of claim.  I'm not even sure
21 you really do.  But, let's assume you do.  You'd at least have
22 some known entities who could serve as the representatives for
23 that class.  If need be you could probably ask the U.S.
24 Trustee's Office if there is some need to either add those
25 people to the property damage committee, or do some kind of a

1  committee.  I'm loathed to add another committee, but I think
2  the Zonolite claimants, to the extent that they're there,
3  already have a representative.

4          MR. BERNICK:  Then the issue that becomes is the --
5  by virtue of the class proof of claim does that then enable
6  people who did file claims to proceed and enjoy the benefits of
7  those who have prosecuted the class claim.  That's the big --
8  that's our big issue.

9          THE COURT:  And that's something that I think you
10 bargained for in the context of a plan.  You're charting new
11 waters.  You know, if you can all come to some agreement about
12 who is -- is an appropriate creditor to be paid somehow, and I
13 know the debtor says maybe you're going to try something other
14 than a 524(g) trust, but in my head in asbestos cases is given
15 the thinking of trust.  So, not by way of making findings,
16 simply by way of articulating a point.  Let's assume there is a
17 trust.  All of the constituents against that trust are going to
18 be bargaining for who is going to get what distributable share.
19 That will be the issue from the creditor's side.  So, the
20 Zonolite plaintiffs, to the extent that they have a claim filed
21 will be a current claimant.  And they'll go through the trust
22 the same way, maybe not at the same level, but at the same
23 everybody else will go through the trust.  To the extent that
24 they've got a future claim they'll probably go through the
25 trust the same way the future asbestos personal injury

1  claimants will go through the trust.  Or the debtor will be
2  filing motions to disallow the claim because they're
3  contingent, unliquidated, non-existent whatever.  Whatever the
4  debtor's theories will be.  And there will be litigation that
5  will determine who is entitled to participate and who isn't.
6  It's a bankruptcy issue, folks.  I mean, this is what we do all
7  the time.  I don't think it's going to be rocket science.

8          Now, defining the injury, that's a different matter.
9  But in terms of what happens once the injury is known, it's
10  just a bankruptcy issue.  I don't -- I think -- I don't think
11  it should be as complex as the papers would seem to indicate
12  that it is.

13          MR. BERNICK:  Yeah.  I think that the -- I think that
14  the -- again, the issue then becomes whether the -- let's get
15  down to brass tacks, there is speculation about how many people
16  may have Zonolite Attic Insurance in their homes.

17          THE COURT:  Sure.

18          MR. BERNICK:  So, they say the -- they say that there
19  are million homes or 15 million homes or something.  We don't
20  think it's that high, but in any event, we say, whoever's got a
21  claimant got to show up by the time of the bar date to
22  prosecute claim.  It's one thing if you say with respect to
23  those people who show up they should be able to prosecute their
24  claims through a class.

25          THE COURT:  Right.

1   MR. BERNICK: And that's -- we can talk about whether
2   that's good, bad or indifferent and whether it meets the rules.
3   It's another thing entirely to say that if a class proof of
4   claim is filed it then sweeps into the bankruptcy process.
5   Anyone else who might be out there who did not file by the bar
6   date, such that as the class perceived it is now the full
7   extent of all people who have this material in their homes.

8   THE COURT: Then maybe you have two class proofs of
9   claims, one for people who are known current -- or who have
10  current claimants and who's identity is known, and one for
11  future claimants who aren't known. And then if you got an
12  objection to one class and not the other you raise it. There
13  are lots of ways to structure it if in turn -- if you decide to
14  do it. That would probably make a whole lot more sense from
15  bankruptcy purposes then trying to certify a class and having
16  that litigation go on outside this court.

17  MR. SOBOL: We agree with you totally, Judge. That
18  -- that's our vision. That's what we wrote. Maybe we weren't
19  articulate -- certainly as articulate as you were. That's our
20  vision of how this should be handled. It is a bankruptcy
21  process, not a litigation process. There are numerous
22  inconsistencies in the approach that -- that we should use,
23  including the formation, yet, after all the proofs of claim are
24  filed of the litigation committees as though they were class
25  actions. You know, to -- to handle over arching issues. But

Case 01-01139-AMC   Doc 1650   Filed 02/05/02   Page 69 of 119

69

1 -- but we simply -- we ought to be forced into a room to try to
2 simply this.  We're prepared to do that.

3 THE COURT:  You are worse then --

4 MR. SOBOL:  We're taking great steps, Judge.  We're
5 -- at this point we're all willing to be in the same courtroom
6 and that's -- that's a foundation for us to be willing to go
7 into a room out of court.

8 THE COURT:  Well, willing or not I hold the key and
9 it's going to disappear until you folks have a go at each other
10 for a little while.  You need to talk.  You need -- you need to
11 get some perimeters laid out.  And in some senses I recognize
12 that it's going to be easier to be litigating in two courts,
13 and in other senses it's going to be very difficult for you.
14 It's going to make your bargaining, I think more difficult then
15 it might otherwise if it's necessary because of the personal
16 injury aspects of this.  But, nonetheless, it's going to make
17 it a little more difficult.  You should be -- and if there's
18 anything either on or off the record that I or any of my
19 colleagues at your choosing can help in that process, I will
20 volunteer them.  I have a colleague who is a very good
21 settlement judge.  So, if you get to the point where her
22 services are necessary I will call in a personal favor and ask
23 her to come and help if that's need be.

24 MR. BERNICK:  I think that's it on the -- on the
25 category that dealt with scheduling matters.

1    THE COURT:  Okay.  I want to go through the agenda
2  and make sure I've taken care of everything.  All right.  On --
3  Item Number 1 was continued to February 22nd.  Item Number 2 is
4  continued until February 22nd.

5    UNIDENTIFIED SPEAKER:  February 25th, Judge.

6    THE COURT:  I'm sorry.  Yes, thank you.  February
7  25th.

8    (Pause)

9    THE COURT:  Item Number 3 is continued until February
10  25th.  Item Number 4, that's the issue that I have to deal
11  with.  I do not believe that the order that I handed you that
12  vacated the stay that was attached to your pleadings has been
13  docketed, Mr. Bernick, so, as I said earlier, I will have the
14  other one docketed as a revised order if the one I gave you has
15  been.  But before you make any service of that order, would you
16  please double check the docket.  I do not think it has been,
17  and if it has not the only order that will be entered is the
18  one that I signed in court today, not the one that's dated
19  yesterday, January 28th.

20    Item Number 5 I've already gone over with you.  I
21  signed the order as modified.  Item Number 20 -- I'm sorry, 6,
22  I signed the order that was attached to the motion, and we have
23  addressed the rest of the agenda, correct?

24    MR. BERNICK:  Right.  You addressed -- addressed the
25  agenda up through the point of where we actually have the

1 | contested matters.

2 | THE COURT: All right.

3 | MR. BERNICK: There were -- there were, I think, two
4 | remaining contested matters. The former Item -- Item 13 has
5 | been put over, so we have to remaining contested matters.
6 | They're both carried over from last time. One is Item 11,
7 | which is a motion for summary judgment by Exxon Mobil relating
8 | to the adversary proceeding that was commenced in support of
9 | the debtor's motion for preliminary injunction, and then Item
10 | 12 is the last remaining item concerning the motion for a
11 | preliminary injunction, and that pertains to a case involving a
12 | Mr. Locke. I think those are scheduled to be argued today, and
13 | so I -- I guess I'll sit down if -- if counsel for Exxon Mobil
14 | is here to argue Item 11.

15 | THE COURT: All right. All right. We'll address
16 | first then Item 11, and this is Exxon Mobil's motion for
17 | summary judgment. Good afternoon.

18 | MR. CHIPMAN: Good afternoon, Your Honor. William
19 | Chipman, for the record, of Greenberg Traurig, L.L.P. on behalf
20 | of Exxon Mobil, defendant in the adversary proceeding, Number
21 | A01771. I take it Your Honor has read all of the papers --

22 | THE COURT: I have.

23 | MR. CHIPMAN: -- so I'm not going to repeat, I guess,
24 | what's in there to save some time. I will go through a brief
25 | argument, if that's okay with Your Honor, and go from there and

Case 01-01139-AMC   Doc 1650   Filed 02/05/02   Page 72 of 119

1 see if Your Honor has any questions, if that pleases the Court?
2         THE COURT:   Sure.

3         MR. CHIPMAN:   Your Honor, Exxon Mobil is requesting
4 that the -- is requesting summary judgment dismissing the
5 claims asserted in the -- the adversary proceeding in their
6 entirety.   What the debtors are attempting to do here is to
7 extend the automatic stay to a third party action that does not
8 involve the debtors, nor does it -- nor does it involve the
9 property of their estates.

10        The debtors cases were filed in April of 2001, nearly
11 ten months ago.   Most of the third party action sought to be
12 stayed in the complaint involve asbestos claims asserted
13 against the debtors or their officers and directors that were a
14 stated cause of the debtor's bankruptcy petition.   The present
15 motion is not directed to the asbestos claims, or to any action
16 in which the debtors are involved, or in which their assets are
17 at risk.   Rather, the debtors request to enjoin an Oklahoma
18 State Court action between Exxon Mobil and non-debtor, non-
19 affiliate Sampson Hydrocarbons Company, which I will refer to
20 as Sampson from now on, concerning a contract which the debtors
21 are not parties to.   Exxon commenced the Oklahoma action
22 against Sampson in 1997.   Exxon's claim against Sampson in the
23 Oklahoma action is primarily based upon an indemnity provision
24 in the agreement under which Exxon acquired its rights to
25 produce oil and gas at the Cushing Field (phonetic).   After

1  four years of litigation, discovery and motion practice the
2  Oklahoma action was set for trial in February of 2002, next
3  month.

4          Counsel in the Sampson litigation -- the Oklahoma
5  action has informed me that the -- the trial court there has
6  now pushed -- for the Court's information pushed the trial to
7  September, 2002. So, regardless of Your Honor's decision today
8  the trial has been moved for another eight months for a total
9  stay, in effect, of 18 months no matter what.

10         The -- the debtors, to date, in this litigation --
11 it's my understanding that the debtors have only identified one
12 potential witness in four years of litigation for the Oklahoma
13 action and has only actively involved one Grace employee during
14 this period occasionally. So just by not being parties to the
15 Oklahoma action during four years of litigation despite the
16 debtors not being necessary parties to the Oklahoma action,
17 despite their assets and reorganization not being at risk in
18 the Oklahoma action, despite Sampson's liability to Exxon being
19 fixed, or at least, limited to 1.8 million dollars, despite the
20 lack of any broad reaching implications for W.R. Grace, this is
21 a very discreet issue. It's not like a -- a product liability
22 issue that could be applied to on a number of cases, or
23 defective product type determination. This is a discreet
24 issue. Despite Exxon Mobil's lake of standing to assert any
25 claim for the Sampson liability against the debtors in these

1  cases, or against the debtor's estate, Exxon is not a party in
2  interest in this case.  They don't have an ability to file a
3  proof of claim.  Despite the risk of no collateral estoppel res
4  adjudicata there's -- there's no identity of issues here.
5  There's different subject matter, different parties.  The
6  debtors will still have any defenses to indemnification due to
7  Sampson regardless of whether the Oklahoma action proceeds or
8  not.  Despite the existence of independent -- of an independent
9  liability of Sampson primary to -- to Exxon, Exxon has to go to
10 against Sampson directly and they are the primary independent
11 source of liability.  And despite the need -- everyone here is
12 talking about moving this case forward, despite the need to
13 resolve the issue this need  -- this needs to be resolved,
14 first, between Exxon and Sampson before it can even be
15 considered by the debtors.  In other words, Sampson -- if
16 Sampson is ultimately held to be liable to Exxon and pays Exxon
17 then Sampson would have a claim against the debtor's estate and
18 they would follow the normal course.  Despite the fact that if
19 Sampson is held not be liable in the Oklahoma action the
20 indemnity of Sampson by Grace will disappear.  Despite this
21 Court not having jurisdiction to resolve the Oklahoma action
22 and, respectfully, if Your Honor has a way to do that, I'd like
23 to hear it, but in our view this Court does not have
24 jurisdiction to resolve the issue between Exxon and Sampson.
25 So, the Court's going to need two proceedings anyway, a

1 proceeding to liquidate and that's, actually, not even a

2 liquidation.  It's just to determine whether Sampson is liable

3 to Exxon or not.  The dollar amounts have already been set

4 pretty  much.  There's going to be -- need to be two

5 proceedings anyway.  Thus, there's -- there's no savings of

6 judicial economy by allowing the estate to remain in place

7 anyway.  Despite all these factors --

8         THE COURT:  Well, didn't the debtor say that the

9 debtor had assumed the defense of Sampson in this case?

10        MR. CHIPMAN:  It was -- it was a voluntary assumption

11 of the defense under a separate indemnification agreement

12 between the debtors and Sampson.  It has nothing to do with

13 this other -- our agreement -- our indemnification with

14 Sampson.  The debtors -- arguable, it's a pre-petition

15 executory contract or a pre-petition indemnification agreement

16 the debtors could -- could reject.

17        THE COURT:  Okay.

18        MR. CHIPMAN:  Despite all these things the debtors

19 contend that they're entitled to stay the Oklahoma action for

20 an indefinite period of time.  And if Your Honor is -- keep in

21 mind that this has been stayed for 18 months.  It's -- it's

22 preventing Exxon from collecting what they believe their due

23 from Sampson, a viable entity.  They're going to be stayed for

24 18 months from the date of the petition date until it hits

25 trial, anyway, in September of 2002.  The debtors still contend

1  they're entitled to -- to stay the Oklahoma action for an
2  indefinite period and we just think that's just unfair to Exxon
3  who is not a party in interest in this case, and this -- this
4  stay should be lifted.

5         Regardless of whether the debtors concerns are
6  correct, their concerns do not provide a basis for this Court
7  to exercise the extraordinary injunctive power unauthorized by
8  the Bankruptcy Code.  The Bankruptcy Code limits the scope of
9  the automatic stay to the debtors and its property and does not
10 extend to non-debtors and their property.  I think both parties
11 can see that only on certain rare and unusual circumstances has
12 the scope of the stay been extended to non-debtors where the
13 debtor is the real party defendant and will be unconditionally
14 bound by the outcome of third -- third party action.  In this
15 case there is no -- the debtors cannot argue they're
16 unconditionally bound.  They still have their defenses to the
17 indemnification agreement that runs from W.R. Grace to Sampson
18 Hydrocarbons, to which Exxon's not a party and until recently
19 didn't even get a copy of.

20        The Oklahoma action doesn't even approach the unusual
21 circumstances required for this Court to exercise extraordinary
22 injunctive powers.  For these reasons the amended complaint
23 fails to assert a valid claim for relief against Exxon and
24 should be dismissed.

25        And, again, alternatively, if Your Honor is inclined

1 to extend the stay Exxon Mobil -- Mobil requests some limited

2 duration.  Exxon spent a lot of time and money on this, and

3 they just want to proceed against Sampson, and we don't think

4 that the injunction should last forever, nor do we think that

5 we should have to come back in front of the Court and re-brief

6 these issues at a future date, spend more money.  We believe

7 the debtors had their breathing spell -- or will have their

8 breathing spell in the near term, and if Your Honor gives me a

9 minute I'll just see if I have anything else in my notes.

10                          (Pause)

11          MR. CHIPMAN:  Your Honor, I believe that's in for my

12 argument.  I can address any questions you have, and I reserve

13 the right to come back up here.

14          THE COURT:  Okay.  I don't have any questions.  Thank

15 you.

16          MR. CHIPMAN:  All right.  Thank you.

17          THE COURT:  Mr. Bernick?

18          MR. BERNICK:  Your Honor, in order to expedite this,

19 if I could tender up to the Court, I tried to put together a

20 little -- a little diagram of who is who, because sometimes

21 it's hard to keep track of the parties.

22          THE COURT:  Thank you.

23          MR. BERNICK:  But I think it's -- makes the matter

24 pretty simple to -- to see.  Grace Petroleum Corporation, GPC,

25 was the company that originally had the exploration leases at

1 Cushing Field, and allegedly is the entity that caused the
2 contamination that's given rise to the underlying claims
3 against Exxon.  In 1985 GPC sold those exploration rights to
4 Exxon and gave Exxon an indemnity, that's why the little I-N-D
5 is there.

6       The next step is that in a separate transaction that
7 took place subsequently two things happened.  GPC was sold to
8 Sampson, and at the same time, Grace Energy Corporation, which
9 is a debtor in this case stepped into GPC's shoes by agreeing
10 to indemnify GP -- agree to indemnify GPC for claims including
11 these kinds of claims.  So that after those transactions are
12 all done Sampson now has the business, GEC, which is a debtor,
13 Grace Energy Corp. is responsible for the same indemnity that
14 runs to Exxon.  What does Exxon do?  Exxon files suit pursuant
15 to that same original indemnity.  Their suit is based upon the
16 same original indemnity that GPC gave.  But instead of naming
17 GPC they named the successor to GPC, Sampson.  That's why that
18 arrow goes through that same indemnity but then deviates down
19 to Sampson.

20       What does that -- what does that mean?  Well, what it
21 means is that Exxon is suing on the old GPC indemnity, the one
22 that was assumed by the debtor, GEC, but they're suing Sampson,
23 who is -- who is the successor.  It has nothing else to do with
24 the underlying liability other than they're successors.  A
25 classic case where the party being sued has derivative

1  liability.   The primary liability is that old indemnity.
2  There's no question but that a stay and injunction can issue
3  from this Court against an action against a non-debtor where
4  that action is, in effect, against the debtor.   That's the
5  McCartney decision that came out of the Third Circuit.   There's
6  no issue but that contractual indemnity can satisfy that
7  requirement where the debtor has got a contractual indemnity
8  that is covered -- that covers the third party litigation that
9  can satisfy the standard as articulated by McCartney.

10        As I understand the briefs, there are really three
11  points that Exxon is making here.   Point 1 is that the debtors
12  indemnity, that is GEC's indemnity -- the indemnity on which
13  GEC has responsibility is a separate document from the original
14  Cushing Field indemnity.   There are two different documents.
15  And that is an irrelevant contention.   The -- the indemnity
16  that runs to the debtor is always going to be separate.   The
17  question is whether it covers the third party action.   It's
18  always going to be separate document.   The question is whether
19  it covers the third party action.

20        Point Number 2, they say is that Sampson has
21  independent liability and they cite a couple cases that deal
22  with facts where the third party -- the non-debtor has
23  independent liability.   The problem here is that there is no
24  independent liability.   The basis for the lawsuit is that old
25  indemnity that ran to GPC and that GEC has now stepped into.

1  Sampson has no independent liability.  It's whole liability is
2  derivative of what it is that GPC did, including issuing the
3  indemnity to -- to Exxon.  The very basis of the lawsuit tells
4  that there's no independent liability that is at issue here.
5  Sampson's liability is that of a successor.  It is completely
6  derivative of a liability that the debtor has now assumed.

7          The third point that they make is that the indemnity
8  has not been shown to be absolute.  Grace does not know what
9  the silver bullet defense is, and that's why we have, in fact,
10 assumed the defense of the case.  But even if there are issues
11 concerning the application of the indemnity it doesn't change
12 the analysis at all.  And -- and this was exactly the issue
13 that was taken up in the -- in the American Film case, American
14 Film Technologies.  It was decided by Judge Walsh in this
15 court.  It was cited with approval in the McCartney decision
16 itself.  And what -- and what American Film points out is that
17 the fact that there may be issues concerning the application of
18 the indemnity does not alleviate the risk to the debtor of the
19 collateral litigation.  You don't allow the collateral
20 litigation to proceed to judgment and then try to figure out
21 whether there's a way to get out of the indemnity.  Because the
22 indemnity is there, it's real and it's substantial if it
23 arguably applies to that third party litigation, you stop the
24 third party litigation from going forward so as not to put the
25 debtor at risk, and I could read you -- it's really right on

1  point out of <u>American Film</u> exactly to that proposition where
2  the Court cites the <u>Sudberry</u> (phonetic) decision and says that
3  -- says that the debtor has the obligation to treat as the
4  obligation to regard it's indemnity obligations is very real
5  and that supports the -- the issuance of relief to protect the
6  debtor against third party ligation.  So this is a case that
7  falls squarely within the purview of the <u>McCartney</u> decision.
8  The distinctions that Exxon has tried to draw are not
9  distinctions that go to the heart of the tests that are set
10 forth in <u>McCartney</u>.  Is there any urgency to this matter?  This
11 is, basically, a collection matter that's being brought by one
12 of the most solvent companies in the United States.  There's no
13 collateral damage that's going to be done to Exxon.  This is a
14 matter that should be taken up at the conclusion of the case.

15          MR. CHIPMAN:  If I may respond, Your Honor?  First
16 I'd like to respond to this little chart that was handed to you
17 a few minutes -- moments ago by co-counsel.  There's nothing in
18 the GPC stock purchase agreement that provides Exxon any direct
19 right to seek indemnity from the debtors.  They're separate
20 agreements.  Rather, the indemnity obligation set forth in the
21 original Cushing Field purchase and sale agreement survive and
22 were assumed by Sampson when it purchased the stock of GPC from
23 debtor, Grace Energy Corporation.  These are not derivative
24 rights.  These rights were transferred in total to -- to the
25 new entity, okay?  And there's a case on that, <u>Duke Energy</u>

1  <u>Field Services, L.L.C. v. National Union Fire Insurance</u>
2  <u>Company</u>, 2001 Westlaw 1317025.  When one business entity is
3  acquired in its entirety by another in the absence of specific
4  terms to the contrary, both the liabilities and the assets of
5  the acquired company --

6       THE COURT:  You're going way too fast for me to
7  understand anything you're saying.

8       MR. CHIPMAN:  I'm sorry, Your Honor.  I'm sorry.
9  When one business entity is acquired in its entirety by another
10 in the absence of specific terms to the contrary, both the
11 liabilities and the assets of the acquired company are
12 transferred to the purchaser.  It is for this very reason that
13 Exxon may enforce its indemnity rights in full against Sampson
14 without impact upon or filing a proof of claim in the debtors
15 bankruptcy.  And that Sampson is liable to Exxon regardless of
16 whether the debtors are ultimately required to fulfill their
17 indemnity obligations to Sampson in this Chapter 11 case.
18 Stated simply, Sampson's indemnity obligations to Exxon are
19 independent of the debtors indemnity obligations to Sampson.
20 They are not derivative.  They were transferred in full.

21      When -- when Sampson -- when Grace this entity to
22 Sampson there was a separate indemnity agreement.  That wasn't
23 in place when the initial deal took place between Exxon and
24 W.R. Grace.  That's a separate agreement and that's where
25 they're trying to say that these rights are derivative.  They

1 are not. This is a separate legal entity. Sampson's a solvent
2 entity -- entity that can pay these debts and then can assert a
3 claim against the debtor's bankruptcy case, and Exxon should
4 not be tied up in this -- in this bankruptcy case. They are
5 not a party in interest.

6          Now, getting back to some of the cases cited by the
7 debtors. I'll start with McCartney. A lot of these cases can
8 be easily distinguished from the case at bar. The McCartney
9 court approved an extension to the automatic stay to a third
10 party action, where the action required the debtors necessary
11 participation and any judgment entered in an action would have
12 operated as a judgment or finding against the debtor. In this
13 case that's not happening. For years the debtors have not been
14 a necessary participant in this case. There is no collateral
15 estoppel res adjudicata issues in this case. They are not a
16 necessary party. The -- the issues are different. The parties
17 are different. In that case the debtor was a guarantor of a
18 loan that would have had to have been required to be joined in
19 any deficiency action. In other words, the action could not go
20 forward without joining the debtors. The third party also had
21 no assets interest -- so really the claim was against the
22 debtors. It was trying to get through someone with no assets
23 to the debtor.

24          Under the guarantee the debtor would have been
25 automatically liable to satisfy to the plaintiff/lender any

1  deficiency judgment claim asserted against the non-
2  debtor/borrower.  Given the debtors' necessary participation --
3  and its automatic liability for a deficiency judgment.  The
4  Court concluded that an extension of the stay was warranted.
5  The debtor would have been a real party defendant in a
6  deficiency judgment action by the lender against the borrower.

7        Here, interestingly, as in Washborn and Camp
8  (phonetic), which is the cited in our brief, Sampson's
9  liability to Exxon arises out of separate and distinct
10 contractual obligation to which the debtors are not parties.
11 Exxon seeks indemnity from Sampson under their separate
12 purchase and sale agreement for amounts Exxon paid in
13 connection with the -- with landowner claims.  Under that
14 separate agreement GPC now owned Sampson, not the debtors,
15 agreed to indemnify Exxon for damages incurred due to
16 environment reliability related to Cushing Field.  This
17 agreement is distinct from the agreement under which the
18 debtors conditionally agreed to indemnify Sampson for certain
19 liabilities.  And I'll -- it is conditional.  It's not an
20 absolute.  And whether or not the debtors may ultimately
21 indemnify Sampson for Exxon's claims against Sampson -- Sampson
22 is a matter strictly between Sampson and the debtors.

23       Sampson's liability under its agreement with Exxon
24 is, therefore, independent of any potential claim Sampson may
25 have against the debtors under the separate GPC stock purchase

1  agreement.  In short, because Sampson's obligations to Exxon
2  are independent of the general unsecured obligations the
3  debtors may ultimately owe Sampson, and the debtor's bankruptcy
4  extension of the automatic stay to the Oklahoma action would be
5  contrary to the law.  Indeed, Sampson's obligations are
6  independent and, therefore, there's no risk that a judgment in
7  the Oklahoma action would operate as a judgment finding against
8  the debtors directly, indirectly or indirectly through the
9  doctrines of collateral estoppel res adjudicata, which is what
10 a lot of these cases hang their hat on, and in this -- in the
11 Third Circuit -- in the Packwar (phonetic) case the Court --
12 the Third Circuit said that affirmative found that since the
13 debtor -- the debtor was not a party to the other action it
14 could not be bound by res adjudicata or collateral estoppel,
15 and I have a whole list of cites on that point.

16        Turning to, I believe, it was the American Film
17 Technologies case.  The reason Judge Walsh extended the
18 automatic stay in that case was mainly because of two things.
19 The indemnification issue, obviously, but there was a huge
20 collateral estoppel issue in that case.  There was an identity
21 of subject matter, identity of issues, and identity of parties,
22 all of which you do not have here.  The action was brought,
23 initially, against the debtor, and then they tried to sever the
24 third parties away from the debtor.

25        Here, this litigation has been going on for four

1  years.   The debtors have never been name.   They have taken a
2  very limited role in this case.  All they've basically done is,
3  I think, as far as I'm advised has been paying for counsel for
4  Sampson.   They sued -- in the <u>American Film Technologies</u> case
5  the plaintiff sued 28 former and current directors and
6  officers.   This is not a director and officer case.   This is a
7  different case.   And the indemnity there arose out of the --
8  the Delaware general corporation law.   It was a statutory based
9  indemnification.

10         Interestingly, in this case, the judge said that the
11 real party in interest was the debtors, and that's part of the
12 reason for the stay.   Here, Sampson is the real party in
13 interest.   They're a viable entity.   They can pay the claim.
14 It's a small claim in -- in relation to the case.   The debtors
15 are not the real defendant here.   We are not -- they have never
16 sought, even before there was any inkling of bankruptcy to go
17 after the debtor's estate or their assets.   The entire
18 litigation, which is ready for trial, other than some discovery
19 of -- of expert witnesses has been always against Sampson, has
20 never been against the debtors.

21         Interestingly, also in the case at Page -- I think
22 the last page, Judge Walsh says, I make one final observation,
23 the automatic stay is not a permanent bar.   I know that this
24 case is now over a year old and that a plan and disclosure
25 statement has recently been filed.   It seems to me that this

1 chapter case may be approaching the point where AFT's

2 liability, if any, arising out of the -- the causes of action

3 should be determined.

4           Eventually this matter has got to be decided.

5 Sampson, at this point, can only assert an unliquidated claim

6 subject to 502(e), objections, unless this claim is liquidated.

7 If Sampson ultimately owes money to Exxon and pays that money,

8 then that claim will be liquidated, and then they can file a

9 proof of claim with the debtors estate and that issue will be

10 resolved and won't have to be resolved in this court.  It's

11 already ready for trial in Oklahoma.  This -- this case should

12 be allowed to proceed, or at least proceed in the foreseeable

13 future.  The debtors have had their breathing spell.  They have

14 not taken an active role in this litigation, other than to play

15 counsel, and I believe, and the debtors can correct me if I'm

16 wrong, but I believe that Sampson has, upon the filing of the

17 bankruptcy by Grace has entered -- has had their own counsel

18 enter their appearance in this case and can be brought up to

19 speed pretty quickly.  Or the debtors could just stop paying

20 for the law firm that -- that Sampson has retained, and Sampson

21 can start paying that law firm.  It's just matter of -- of

22 determining liability under indemnification whether or not

23 Exxon is owed the money or not.  It's -- the amount is not in

24 question.  This is not a case where the liability could be 20

25 million dollars and disrupt the bankruptcy proceeding.  This --

1  the claims are limited to 1.8 million dollars.  The liability

2  amount is fixed.  It's just a matter of who owes who what under

3  these indemnification agreements.  And, again, Your Honor, we

4  do not have standing in this case to file a proof of claim.

5  This claim needs to be litigated.  It's unfair to indefinitely

6  enjoin Exxon from pursuing a non-debtor third party.  Thank

7  you, Your Honor.

8          THE COURT:  Mr. Bernick?

9          MR. BERNICK:  I just -- just very briefly.  McCartney

10  is an indemnity case.  We didn't hear a word that said that

11  this indemnity isn't good and wouldn't be triggered if there's

12  an adverse judgment in the collateral litigation.  Therefore,

13  it falls squarely within McCartney.  It's not a question of

14  collateral estoppel.  It's a question of contractual indemnity.

15  That's exactly what McCartney is all about.  There's no reason

16  why Exxon should be further or first in line by comparison to

17  all the other hundreds or tens of thousands of claimants that

18  we have in this case, all whom believe that they have claims

19  and are anxious to get them liquidated.  This is squarely

20  within McCartney.

21          THE COURT:  Okay.  Anyone from any of the committees

22  choose to enter this fight?  No, okay.  I'll take the matter

23  under advisement.  Do you need to submit anything further as

24  the result of either of your arguments?

25          MR. CHIPMAN:  I don't believe so, Your Honor.

1          MR. BERNICK:  No.

2          THE COURT:  All right.

3          MR. CHIPMAN:  Thank you, Your Honor.

4          MR. BERNICK:  The last item on the agenda is Number
5   -- I think it's Number 12.  It relates to the Locke case.  And
6   I think in this instance there's not a motion for summary
7   judgment, so it's probably still our motion for preliminary
8   injunction.  So, I guess I'll -- I'll go first on the matter.
9   I'm sure the Court's familiar, having read the -- having read
10  the briefs, but I'll -- and I'll try to be brief.

11         This is another indemnity case, but then it has some
12  plus factors beyond the indemnity.  A case arises out of the
13  1998 restructuring of certain Grace business.  It was brought
14  by a former employee against a current employee of Grace and
15  also against Grace itself.  The individual defendant is Robert
16  Bettacchi.  He's senior vice president of both Grace and Grace
17  Connecticut, and he is president of the Performance Chemicals
18  Division.  He was in charge of the restructuring.  So, the case
19  is brought against him as an individual.  The allegation of the
20  case is discrimination.  So, we have a lawsuit against the
21  company, a lawsuit against the individual at the company who
22  was in charge of the restructuring and the claim of
23  discrimination.

24         Our view Your Honor, what we submitted to the Court,
25  is this is a classic director and officers indemnity case.  Mr.

1  Bettacchi is an officer of all the different entities that I
2  listed.  It falls, therefore, right within the mold of the
3  Robbins case.  Remember Robbins was a case where collateral
4  litigation against officers and directors was enjoined and
5  stayed.  Robbins was cited with approval by the McCartney court
6  Third Circuit decision and, basically, has followed the
7  analysis of Robbins.

8          In this particular case the bylaws of Grace call for
9  indemnity to the full extent permitted by Delaware law.  Grace,
10 therefore, has defended the lawsuit on behalf of Mr. Bettacchi
11 since the lawsuit was filed.  Like Exxon, Mr. Locke says that
12 they may -- there may be defenses to the indemnity.  Maybe the
13 conduct wasn't in good faith.  Maybe it wasn't in the best
14 interest of the company.  Again, the American Film analysis is
15 -- American Film analysis controls.  You don't let the -- allow
16 the litigation to proceed to judgment and then just figure out
17 whether -- whether, gee, is there some way that Grace can get
18 out of these indemnity obligations.  Rather, the appropriate
19 course is that the indemnity obligations appear to apply.  The
20 debtor has the appropriate concern and obligation to live up to
21 those indemnities, to assume control over the defense of the
22 case, and then the case ought to be -- ought to be stayed under
23 the rules set forth in McCartney.

24         But this is not just a classic indemnity case.
25 There's more then just the indemnity.  It is also a collateral

1 estoppel case.   Remember Grace also is a defendant.   The case
2 against Grace presently has been stayed.   But we're to go
3 forward against Mr. Bettacchi and the finding will be made
4 against Mr. Bettacchi.   Mr. Bettacchi acted as an agent of
5 Grace, and to that extent Grace has got a collateral estoppel
6 risk for any outcome of this case.

7          There's a third factor beyond the indemnity, beyond
8 the collateral estoppel.   There's also the question of impact
9 on the reorganization.   Under the Robbins case, and this
10 principle, again, was cited with approval by the Third Circuit
11 in McCartney.   The Court has the power to enjoin and stay
12 collateral litigation, but has an adverse impact on the
13 progress of a Chapter 11 case.   What's that impact here?   Mr.
14 Bettacchi is one of the top seven managers of Grace -- the
15 Grace debtors at the present time.   He's part of the key
16 leadership management team.   Fifty percent of Grace's revenues
17 at the present time come from businesses that are run by Mr.
18 Bettacchi.   So, this is a man who is absolutely critical to the
19 ongoing business operations of -- of Grace which, as everybody
20 knows, are then going to be key to the ultimate reorganization
21 of Grace.

22          Even beyond that, he is a key witness with regard to
23 Zonolite Attic Insulation.   He ran the business -- the
24 construction business that Zonolite Attic Insulation was a part
25 of for many years.   And he's, therefore, going to be a witness

1  with respect to this case.  And as the litigation unfolds in
2  this Chapter 11 we're going to be calling on Mr. Bettacchi.

3          So for all three reasons, that is the existing
4  indemnity.  Again, considering the impact of _American Film_, the
5  collateral estoppel risk, also was described, actually, by
6  American Film and then, finally, the criticality of Mr.
7  Bettacchi to the ongoing business of Grace and ultimate Grace
8  reorganization, we would ask that the preliminary injunction be
9  extended to include the case brought by Mr. Locke.

10         THE COURT:  All right.  Ms. Miller?

11         MS. MILLER:  Good afternoon, Your Honor.  Kathleen
12 Miller on behalf of Mr. Locke.  Now the debtors, since filing
13 this motion in June, have been trying to fix their case against
14 Mr. Locke and they still are deficient.  They filed it in June
15 and had not filed an adversary proceeding, didn't have the
16 procedure right.  Had made conclusory statements about
17 responsibilities to indemnify, didn't give any support for
18 that.  After oral argument then they submit they bylaws as
19 supplemental information.  Then we had arguments in front of
20 Your Honor on January 3rd, and now they submit the affidavit of
21 Mr. --

22         MR. BERNICK:  Shelnitz.

23         MS. MILLER:  Thank you.  Shelnitz.  It's still
24 deficient.  When -- on the -- director.  This is -- the _Robbins_
25 case, as I understand it, the issue was that if the litigation

1  went forward it would decrease the insurance pool, thereby
2  having an effect on the estate.  Mr. Bettacchi, under
3  Massachusetts law, is independently liable for his actions if
4  he's found to be liable.  The statute is independent.  It is
5  not -- so, therefore, he would personally responsible for the
6  -- the judgment against him.

7       THE COURT:  Well, yes, except that the debtor has an
8  absolute indemnity and judgment against him is a judgment
9  against the debtor --

10       MS. MILLER:  It's not --

11       THE COURT:  -- even though he's responsibility for
12  paying it himself.

13       MS. MILLER:  It's not absolute indemnity.  It's not
14  -- the McCartney case was where the individual had -- had a
15  guarantee of a loan.  That's clear.  If the corporation doesn't
16  pay -- it had no money, there were no assets, the other guy's
17  got to pay.  It's clear.  It's absolute.  That's not the case
18  here.

19       The bylaws are not absolute indemnity.  There --
20  there are certain prerequisites under Delaware law and
21  Connecticut seems to be similar on officer and director
22  indemnification.  First there's, initially, preconditions of
23  certain undertaking taken by the director that if they're
24  ultimately found to not be entitled to such indemnity or
25  advancement that they would pay it back.  That's no where in

1  any of the debtor's papers that they even satisfied the

2  precondition to an advancement.   In the indemnity, there must

3  be a determination that the debtor acted in good faith in the

4  best interest of the company for the actions.   That

5  determination under the statute is done at the end of the case.

6  It can't be done now.   It's not absolute.   It's not as if they

7  don't pay you must pay.   There still has to be another

8  determination.   There's still another level of analysis that

9  needs to go through before there's even a determination if

10  Grace would have to indemnify Mr. Bettacchi.

11       THE COURT:   Is it likely that Grace would, under any

12  circumstances, pursue that type of a defense against one of its

13  top seven officers who is responsible for 50 percent of its

14  revenue?

15       MS. MILLER:   Well, if -- if they have -- I think they

16  have -- the directors have fiduciary obligations to the

17  corporation.

18       THE COURT:   They do.

19       MS. MILLER:   If they breach that then the corporation

20  has an obligation not to defend.

21       THE COURT:   But the Court -- but the company, as I

22  understand it, is contending that Mr. Bettacchi didn't breach

23  any obligations not only with respect to the company but with

24  respect to your client as a former employee.   Their -- their

25  defense, as I understand it, is the same defense as Mr.

1  Bettacchi.

2          MS. MILLER:  Well, they wouldn't necessarily bring it
3  up in litigation.  They're not going to point fingers at each
4  other, but at the time of indemnification.  Let's say that -- I
5  don't know, maybe --

6          THE COURT:  They're going to have a judicial estoppel
7  effect, aren't they, in trying to bring it later if they don't
8  do it now?

9          MS. MILLER:  Well, that's the other thing.  They've
10 never raised that with respect to Mr. -- Mr. Locke's claim.
11 Look at all the papers.  They're not really -- they're very
12 brief on the arguments against Mr. Locke.  It was more that
13 we're spending money.  He's an important guy.  So, you know,
14 Your Honor, I'm not --

15          THE COURT:  But that's been enough in most instances
16 for an extension of the preliminary injunction regardless of
17 what the theory is as to the individual liability of the
18 officer and director, provided that even without an indemnity
19 the officer and director is sufficiently engaged in the
20 reorganization process that could be distracted might be real a
21 significant case.  This, with the number of claims against it
22 and the assets that the debtor is going to have to commit in
23 order to satisfy those claims certainly qualifies as a
24 significant reorganization effort.

25          MS. MILLER:  Well, Your Honor, they -- they submitted

1 the affidavit in support of that but, obviously, the -- Mr. --
2 I'm going to say it wrong, Snelskits.

3         MR. BERNICK:  Shelnitz.

4         MS. MILLER:  Thank you.  And then what's going on in
5 the Massachusetts case.  Discovery is done.  In fact, Mr.
6 Bettacchi has twice refused, basically, to comply with a
7 Massachusetts court order saying produce discovery.  We
8 understand discovery is done.  There was, you know, in this
9 case -- Chapter 11 case was filed, obviously, it was the estate
10 against Grace and the judge said, Mr. Bettacchi, produce it.
11 And I think a second time the judge said, Mr. Bettacchi,
12 produce it, and he still hasn't done that.  His lawyers have to
13 do that.  He's not involved.  He's been deposed.  There's a
14 pending motion for summary judgment by Grace.  Basically, the
15 case is done.  I don't know where they make the conclusory
16 statement that it's going to take a significant amount of his
17 time and it's just not -- it's not supported.

18         THE COURT:  But your client has, at least, a remedy
19 in this case, which is to file a proof of claim.  Your client
20 is not remediless in this instance.

21         MS. MILLER:  Against Grace.

22         THE COURT:  Yes, against Grace.  But Grace is taking
23 the position that even if you're successful in you claim
24 against Bettacchi it's going to satisfy his liability.  So,
25 regardless, of how you look at it, your client, if it files its

1 proof of claim here and is successful in the litigation against

2 Grace or Bettacchi gets paid out of this estate.

3 MS. MILLER: We have to -- excuse me -- liquidate it

4 at some point.

5 THE COURT: Yes.

6 MS. MILLER: And it seems if you're balancing the

7 harm's err, you know, Mr. Locke is bringing this claim,

8 individually, up where he lives to force him to come down here

9 if that's what the debtors are proposing. They have not said,

10 you know, how they intend to -- to do that. It -- it's almost

11 done, other than the actual -- I don't know anything about the

12 trial schedule.

13 THE COURT: Well, the issue, though is simply one

14 here of a preliminary injunction. It's not a permanent

15 injunction, it's a preliminary injunction. And the question

16 is, in terms of balancing the competing harms who suffers the

17 most. At this point, I think the debtor has a significant

18 interest in keeping one of it's principle managing officers

19 working toward the reorganization effort, and I don't see how a

20 stay -- that's a -- not a permanent stay, but a preliminary

21 stay is going to adversely impact on that process when your

22 client has the alternative of filing a proof of claim here.

23 Now, admittedly, I don't think the bar date is set for that yet

24 either.

25 MS. MILLER: Right.

1          THE COURT:  But, nonetheless, the proof of claim can
2  be filed and litigation, to the extent that that's necessary
3  can go forward in a context in which the debtor would have to
4  participate because the debtor, certainly, will have to do
5  something to challenge the proof of claim if it has a defense
6  to it, or else your client wins.

7          MS. MILLER:  Your Honor, it -- it sounds like you're
8  going to issue the -- the injunction.

9          THE COURT:  It sounds like it.

10         MS. MILLER:  Will you set a time -- when would Mr.
11 Locke -- is it just his gas again to come back and say, okay,
12 now is it time?

13         THE COURT:  Well --

14         MS. MILLER:  Just to save him expense on -- on having
15 to keep coming back.

16         THE COURT:  When is -- the preliminary injunction has
17 been extended for other parties until July?

18         MR. BERNICK:  I don't have it here in front of me,
19 Your Honor, I'm sorry.

20                        (Pause)

21         MR. BERNICK:  I'm not sure, Your Honor.

22         THE COURT:  I seem to think for some reason it's July
23 2nd, but I don't think I have the most recent order in the book
24 here, so I'm not sure that that's the case.  Does anybody know?

25                        (Pause)

1      MR. BERNICK:  I think that the most recent order
2  simply modified the prior order.  And this is simply a
3  modification of it.
4                          (Pause)
5      THE COURT:  Okay.  The prior -- the order that I have
6  here does not set the date.
7      MR. BERNICK:  Right.
8      THE COURT:  So, I apologize.  I don't think --
9      MS. MILLER:  Whatever that order -- other order sets
10  the expiration of the preliminary injunction will apply to Mr.
11  Locke?
12      THE COURT:  Yes.  Whatever order would be in effect
13  Mr. Locke would be party to that order.  But, the thing is I'm
14  -- I don't want my representation that I think it goes through
15  July 2nd to be treated by you as gospel because it may not.
16      MS. MILLER:  I'll go look at it.  But  just as long
17  as I understand that that is the order that's now going to
18  apply to him as well.
19      THE COURT:  Yes, that same order would apply to all
20  parties in the case.  It's a -- it's a preliminary injunction.
21  It is not permanent.  So, at whatever point it's deemed to
22  expire, or be extended or whatever, the same order would apply
23  to Mr. Locke.
24      MS. MILLER:  Okay.  Thank you, Your Honor.
25      THE COURT:  Okay.  With respect to Agenda Item 11, an

1 order will be entered -- I think it would be helpful if I can
2 get your office to prepare that order granting the debtors'
3 motion to extend the preliminary injunction to Mr. Locke under
4 the same terms as if applies to anyone else subject to that
5 adversary.

6 　　　　　MR. BERNICK:  It's Item -- Item 12.

7 　　　　　MS. MILLER:  Item 12, Your Honor.

8 　　　　　THE COURT:  Item 12.  I'm sorry.  I'm sorry.

9 　　　　　MS. MILLER:  And, Your Honor, the -- the last item is
10 13?

11 　　　　　THE COURT:  Yes.

12 　　　　　MS. MILLER:  I -- I represent the third party
13 defendants.  I got off the phone just before we came over and I
14 understand that they were talking about a settlement, so I -- I
15 hear counsel said that there was one, but we don't know what --
16 if this could just be put on the record so I can report back on
17 what -- what their agreement is.

18 　　　　　THE COURT:  I have -- I understand there's a third
19 party complaint that's been filed.  I haven't even seen that
20 yet.  No?

21 　　　　　MS. MILLER:  I'm sorry, Your Honor.  I thought he
22 said that there was an agreement.  I don't -- I don't know what
23 that --

24 　　　　　THE COURT:  There's a Samso (phonetic) agreement from
25 another --

1          MS. MILLER:  Okay.  That's what I was -- I mis-spoke.
2  That's what I meant to say.  But I just -- if we could just get
3  what that is, you know, I talked to my -- before we came over
4  and I just need to confirm what their understanding of that is.
5          THE COURT:  Okay.  All I know about it -- so, it
6  wouldn't help, I suppose, is that the whole matter has been
7  postponed until my next calendar.
8          MS. MILLER:  February?
9          THE COURT:  February 25th.
10          MS. MILLER:  Okay.
11          THE COURT:  At eight a.m.
12          MS. MILLER:  Okay.  Okay.  Thank you.  That's all we
13  need.
14          THE COURT:  Okay.  Was a third party complaint filed
15  in that?  I haven't seen it.
16          MS. MILLER:  Yes.  Yes.
17          THE COURT:  There was one?
18          MS. MILLER:  Yes.
19          THE COURT:  Okay.  All right.  What --
20          MR. BERNICK:  I believe that's all the matters that
21  we have to deal with today.
22          THE COURT:  Yes, sir?
23          MR. CARICKHOFF:  Actually, Your Honor, there's one
24  other housekeeping matter which is the -- Your Honor had
25  instructed us to come up with an amended administrative order

1  --

2           THE COURT:  Yes.

3           MR. CARICKHOFF:  -- with respect to professional

4  fees.  I would like to hand up what I believe is the agreed

5  order.

6           THE COURT:  All right.

7           MR. CARICKHOFF:  And it has been circulated amongst

8  the professionals in these cases.

9           THE COURT:  Okay.  I think there are a couple other

10 housekeeping matters that we need to address too, so thank you.

11 Has everyone present -- all the professionals seen this?  Have

12 you seen it, Mr. Perch?  You have?

13          MR. PERCH:  Yes, Your Honor.

14          MR. CARICKHOFF:  Your Honor, if I could direct your

15 attention to one of the paragraphs.  It actually calls for

16 interim fee application hearings?

17          THE COURT:  Yes.

18          MR. CARICKHOFF:  If you look to Page 8, Paragraph H

19 of that order?

20          THE COURT:  Okay.

21          MR. CARICKHOFF:  The debtors would propose using May

22 20th as an interim fee application hearing covering all the

23 quarterly fee apps. filed through December 31st, 2001.

24          THE COURT:  I lost my calendar.  Is that a day that

25 I'm here.

1    MR. CARICKHOFF:  That's an omnibus hearing date.

2    THE COURT:  It is?

3    MR. CARICKHOFF:  Yes.

4    THE COURT:  Okay.  That's fine.

5    MR. CARICKHOFF:  Okay.  The other item is -- the

6  other hearing dates would be just for the preceding quarter.

7  So for the June 18th omnibus hearing date we'd be looking to

8  cover quarter fee applications covering the January/March --

9  I'm sorry, January, February, March period.

10    THE COURT:  That's fine.

11    MR. CARICKHOFF:  And then September 23rd, 2002 for

12  the next quarter.

13    THE COURT:  That's fine.

14    MR. CARICKHOFF:  And then December 16th for the --

15  the next quarter.

16    THE COURT:  That's fine.  As long as you can all live

17  with this that's -- I have no problem with that.  Okay.  Did

18  you work out the category issue?

19    MR. CARICKHOFF:  We -- we did, and you'll see they're

20  Exhibits 2 and 3.  I believe your instructions at the last

21  hearing were that the fee applications -- the quarter fee apps.

22  from the 2001 calendar year, the professionals should create a

23  spreadsheet listing their matter categories consistent with the

24  15 items?

25    THE COURT:  Right.  Yes.

1          MR. CARICKHOFF:  And that's set forth in the order,

2  and we list those 15 items as an exhibit so the professionals

3  will have this handy as they're creating their spreadsheets.

4          THE COURT:  Okay.  Fine.

5          MR. CARICKHOFF:  And then we've created a second

6  category of billing matters going forward from January 1st,

7  2002 on for these cases.

8          THE COURT:  Okay.  That's fine.  Does anyone have any

9  comments you want me to address?  I'm obviously going to go

10  read this order since it's pretty long before I sign it.  But

11  if you've worked it out, and I assign it encompasses what I

12  asked for I don't know why it won't be entered.  Okay.  I will

13  take a look at this one when I get off the bench.

14          MR. CARICKHOFF:  Thank you, Your Honor.

15          THE COURT:  I also asked you to talk about a fee

16  examiner.  Did you make any progress?

17          MR. BERNICK:  Your Honor, for the debtor our -- our

18  view is that we think that the -- the procedures that have been

19  contemplated by the Court when described last time would be --

20  would be more then adequate.  If Your Honor is inclined,

21  nonetheless, to go forward with the fee examiner, I guess the

22  reports that we've heard is that a Mr. Smith is the fee

23  examiner in the USG case and that that's worked out reasonably

24  well, and we would not have an objection to the appointment of

25  Mr. Smith as a fee examiner in this case.  But, at the same

1  time, our argument is that we ought to go along with the
2  procedure that, I think, Your Honor outlined last time and see
3  how it goes.  If it's too burdensome for the Court or it's too
4  burdensome for the U.S. Trustee's Office we can, certainly, be
5  flexible and talk about bringing Mr. Smith on board.

6         THE COURT:  Well, I just told the parties in the
7  Owens case, yesterday, that I do need a fee examiner, and my --
8  my primary concern, because I think this process works very
9  well, but I've now got so many professionals in all of these
10 cases that it's quite difficult to review the applications.
11 For example, I just had fee hearings yesterday in Owens and I
12 had two and half xerox boxes full of fee applications just to
13 review over a weekend.  It's just to the point where I still
14 have to review them, but it would certainly help to have a fee
15 examiner's analysis in that -- in that instance.  And I don't
16 like increasing the cost of the estate.  I'm really loathe to
17 do that.  But, nonetheless, I think in this case, in order to
18 provide fair service to everyone I'm going to have to do it.
19 The other complication is that Judge Wolin is going to be
20 handling major portions of this case, and I'm going to be
21 handling other major portions.  I think one person, who has
22 some understanding of what's happening on both fronts would be
23 a good idea because Judge Wolin won't know particularly what
24 services you provide here, nor will I know what you're doing on
25 his case.  In global terms we will, but not down to the nitty

1  gritty.  And I think a fee examiner would be in order.  So,
2  although I -- I truly am loathed to put a fee examiner in.
3  I've really never needed them in the past.  I'm not totally
4  satisfied that the cost is justified.  The reductions that have
5  been warranted, and I'm not always sure the reductions are
6  warranted.

7          Having said all that, I truly think, as a
8  housekeeping matter, I'm going to need the assistance in this
9  case, and I think I need it in Owens.  Now, who the party is, I
10 have --

11         MR. BERNICK:  Well, that has -- that has a great deal
12 to do with -- with our -- our position.  I mean, there -- there
13 are very different kinds of examiners that are out there.
14 There are examiners that come in and usually have a name to the
15 firm, and they say, we'll save you 15 percent and, of course,
16 the amount that they make in the case is 15 percent.  So, how
17 much does the estate really save.

18         My understanding of the way that Mr. Smith operates
19 is that it is not in that fashion.  That he really does learn
20 what the case is about, works with the attorneys and has
21 meaningful -- has a meaningful input.  So, our -- in a sense
22 our agreement -- our endorsement process is really fairly
23 specific to -- to him.  If there's somebody else who's -- if
24 he's too busy and there's somebody else who's just like him,
25 obviously, we won't have a problem with that.  We would have a

1  much more significant problem with the -- the professional
2  shops that are in there with their -- with their recipes.

3            THE COURT:   Mr. Perch?

4            MR. PERCH:   Yes, Your Honor, Frank Perch for the U.S.
5  Trustee.   Your Honor, in -- in keeping with what the Court had
6  indicated at the previous hearing that the matter of the
7  examiner would be addressed today, I solicited the input from
8  other parties in advance of today as to what position they'd
9  like to take on it.   I didn't hear back from all the parties.
10  I did hear back from Mr. Baena on behalf of the Property Damage
11  Committee that Mr. Baena would support on behalf of his
12  committee the appointment of a fee examiner and I think would
13  be comfortable with the idea of Mr. Smith.

14            I think that what needs to happen is that someone --
15  and I'm happy to do it, if -- if that makes the most sense.
16  But someone needs to have a discussion with Mr. Smith about
17  what the resources of his shop are, because he is already in
18  USG.   We had a discussion about putting him in in Owens
19  Corning.   I -- I believe that at the last Federal-Mogul hearing
20  before Judge Newsome his name came up as well.

21            While in the ideal world it would be the U.S.
22  Trustee's desire to have a common fee examiner for all five of
23  these cases, because of some of the common proceedings --
24  overlapping case proceedings before Judge Wolin, because of the
25  fact that many of the same professional are involved in many of

1  these cases doing the same things in all the cases there would
2  be, I think, both an efficiency and an effectiveness of having
3  the same fee auditor look at what's going on in all these
4  cases, and cross-reference the same professional applications
5  in one case against the other. I think in fairness to Mr.
6  Smith, before we put him in in all five cases we need to make
7  sure that he's up to the task.

8       THE COURT: All right. I think I need an appropriate
9  motion filed by the debtor so that, in fact, I can get the
10 statement of disinterest and everything else that's going to
11 have to come forward in this case. And, certainly, I would
12 expect that if Mr. Smith doesn't have the capability of
13 performing that he would certainly tell you that.

14      MR. BERNICK: I -- I agree with what Mr. Perch is
15 saying. I think that we ought to have some informal inquiry to
16 find out how committed Mr. Smith is, and then put ourselves
17 into a position to make that formal motion to the Court --
18 satisfy the Court, that this is the appropriate move.

19      THE COURT: Okay. I guess my concern at the moment
20 is, I haven't reviewed any of the fee applications to date, and
21 I'm looking at a pretty hearing in May for a lot of fee
22 applications. If we're going to use a fee examiner I'd like
23 him on board before we have that first round of hearings.  I
24 know that's pushing you, but he's got the capability -- or
25 whoever the he is, not necessarily Mr. Smith -- whoever the fee

1 examiner is has the capability, through use of some computer
2 software that I simply don't have to -- to do a lot of this by
3 some technological format that takes me a manual in put and I -
4 - I think maybe it would be helpful if we get somebody on
5 board.

6 MR. PERCH: I think we ought to be able to get this
7 teed up, if not for the February hearings, certainly for the
8 March hearings.

9 THE COURT: Yes.

10 MR. KRIEGER: Your Honor, Arlene Krieger from Strook,
11 Strook and Lavan again. While we approach this the same way as
12 the debtor, we didn't feel that a fee examiner is necessary at
13 this point in time. We understand that that's what the Court's
14 preference is. Louis Kruger from our firm did have some
15 telephone messages back and forth with Mr. Smith, and
16 understands that he does not have a conflict in -- in working
17 on this matter here.

18 THE COURT: Okay.

19 MR. BAENA: Judge, the only thing I -- I raise out
20 loud is whether -- it sounds like, imminently we'll have a
21 candidate to -- to propose to the Court. We went through this
22 process in -- in U.S. Gypsum and it was a long process until we
23 got through the candidates and got to Mr. Smith for the very
24 reasons that Mr. Bernick -- there are some people get paid by
25 the -- and that didn't feel real good to us. And some people

1 use a computer profile, and they don't apply any judgment to
2 the process.   Mr. Smith seems to do all the things that you
3 wish someone to do before he whacked your fees.   The --

4        THE COURT:  Well, you always have me to complain
5 about the whacking of fees.

6        MR. BAENA:  But Mr. Smith, I think, has developed a
7 certain tempo and cadence to this whole process, and before you
8 enter this order that creates new categories of billing
9 information and -- and what have you, would it be appropriate
10 to suggest we get the motion to you first, and see if the fee
11 examiner wants to tinker with this a little bit too?

12        THE COURT:  Well, aren't you already, pursuant to
13 what we discussed last time, preparing your fee applications in
14 accordance with this anyway?

15        UNIDENTIFIED SPEAKER:  No.

16        MR. BAENA:  Not all together I don't think.  I may be
17 wrong.

18        THE COURT:  I -- I can't imagine how this process
19 isn't going to be helpful even to a fee examiner, because it
20 winnows things into --

21        MR. BAENA:  Okay.  Well, I was -- I'm not looking to
22 make any trouble.  It seemed to me there were a lot more
23 categories and things that we will all have to accommodate.
24 And rather than adjust our booking systems twice or three times
25 --

1    THE COURT:  Oh --

2    MR. BAENA:  That we wait to enter this order.

3    THE COURT:  Well, that's fair.  That's a fair

4 comment.  I'm happy to defer that issue until we talk to him.

5 But, I have to tell you I'm going to pressure him to go along

6 with this order, because my review of these fee applications is

7 expedited, and I still have to look at them too.  So, yes, I'll

8 -- I'll be happy to defer it, but that's not a promise to back

9 off the order.

10    MR. BAENA:  Thank you.

11    THE COURT:  Okay.  So, you want me, simply, to hold

12 this order until the next hearing?

13    UNIDENTIFIED SPEAKER:  Yes.

14    THE COURT:  The administrative order?

15                    (Pause)

16    THE COURT:  How about re-calendaring the issue of the

17 administrative fee order, Mr. Bernick, for whenever the motion

18 to appoint the fee examiner comes up, and I'll simply defer it

19 until then, but the same day.  I'd like to consider both issues

20 the same day.  If he has modifications that he proposes then,

21 you know, give me whatever it is that those modifications are

22 as well, so I have both issues at the same time.

23    MR. BERNICK:  That's fine.

24                    (Pause)

25    THE COURT:  Okay.  Now, I want to go over my notes of

1  discussions with Judge Wolin and make sure that I gave you all
2  the news that I was supposed to give you.  With respect to the
3  -- the panel that I don't know has a name yet.  I sometimes
4  call them Judge Wolin's experts.  I think he might call them
5  court consultants.  I'm not really sure what they're called.

6          UNIDENTIFIED SPEAKER:  The five.

7          THE COURT:  The five -- the big five.  To the extent
8  that he plans to use those same court consultants in all of
9  these asbestos personal injury cases, we thought that it would
10 be more appropriate not to put their fees into this
11 administrative process, but since he is primarily going to be
12 using those consultants I'm not sure that Judge Newsome will be
13 at all.  If we need them we can, but whether we'll need them or
14 not, given the division of labor I don't know.  We are
15 suggesting, and I think Judge Wolin agrees that he withdraw the
16 reference as to any of their fee applications.  His concern, of
17 course, is how to get them paid.  As I understand it, his idea
18 is that, to the extent that the consultants are used in a
19 specific case they're going to bill in that specific case.  To
20 the extent that their work involves all five cases there will
21 be a pro rata division on all five cases.  And, it would be
22 very difficult, given the administrative order process to try
23 to figure out how to account for that.  So, those fee -- the
24 administrative order does not include those consultants and
25 will not include those consultants.  They will be dealt with

1 somehow in a process to be established by Judge Wolin.

2       Futures Representatives, fee examiners and all bar
3 dates, other than personal injury I've already told you will --
4 will come here. Agenda letters, can you please submit to me
5 agenda letters by e-mail to the same box that I gave you
6 earlier. We are sharing agenda letters. We are going to be
7 having conferences every other week so that we know what's
8 happening in all the cases to facilitate the coordination. The
9 procedural matters are not discussing substantive issues, but
10 in order to facilitate that coordination we are looking at
11 everybody's upcoming agendas. So, it would make the
12 facilitation among us much easier if you could submit the by e-
13 mail. So, is there any reason I can't get an e-mail copy
14 transmitted?

15       MR. CARICKHOFF:  Not at all, Your Honor. We have no
16 problem doing it.

17       THE COURT:  Okay. To that same box, please.

18       MR. CARICKHOFF:  Sure.

19       THE COURT:  Okay. I was to give you a date by which
20 to file -- to bifurcate these motions concerning the case
21 management orders, Mr. Bernick. I don't think I did that. I
22 simply asked you to re-file one with respect to the personal
23 injury. Can you take care of that in the next couple of weeks?

24       MR. BERNICK:  No problem.

25       THE COURT:  Okay. So, when I get it I will transfer

1  that matter to Judge Wolin, but if -- if possible, I'd like it
2  on my calendar for the February hearing so I simply know that
3  at that point it's ready for me to transfer to Judge Wolin.
4  Possible?

5          MR. BERNICK:  No problem.

6          THE COURT:  Okay.

7          MR. BAENA:  Your Honor, I have a question.  I
8  apologize.  The mere fact that the personal injury and property
9  damage claims are being bifurcated so to speak does not, I
10 presume, preclude either property damage or personal injury
11 claimants from taking positions in respect of the other case
12 management motions, proposals, claims, et cetera.

13         THE COURT:  No, no, this is just which judge --
14         MR. BAENA:  Who is going to hear it?
15         THE COURT:  -- is going to hear the matter, yes.
16         MR. BAENA:  Okay.

17         THE COURT:  Okay.  I've already advised that you're
18 to contact Judge Wolin's office with respect to the fraudulent
19 conveyance and then he has marked his calendar for trial
20 starting September 30, so you're going to have to work out
21 whatever the details are with him with respect to that.  That's
22 all the notes I have about Grace.  There -- the other notes are
23 specific to other cases, so I -- I think that's it.  Is there
24 anything that I haven't covered that any of you think are
25 necessary issues, something I should address with either Judge

1   Newsome or Judge Wolin about the management of these cases.

2   MR. SOBOL:  Your Honor, I'm just making -- I'm making
3   one assumption, which is there has been a decision that Judge
4   Wolin will be taking on the fraudulent transfer cases and has
5   marked that down for trial one of the things that we had raised
6   with Judge Wolin is that in addition to the fraudulent transfer
7   cases as such against Grace there are also successor liability
8   and/or direct liability claims against the same entities
9   brought on behalf of claimants that include the Zonolite Attic
10  Insulation claimants.  I've been sitting here.  My assumption
11  is that it is the intention of Judge Wolin because those issues
12  are intertwined to be trying all those issues in the same
13  proceeding.

14  THE COURT:  We actually didn't get there.  What we
15  got to was the fact that it appears that in this fraudulent
16  transfer litigation some need to either estimate or liquidate
17  the asbestos liabilities and, in this case, I'll use the word
18  estimation.  I'm not sure that's quite right, but in connection
19  with fraudulent transfer to know what the debtor and the
20  debtors' successors and predecessors knew at the time of the
21  transfers with regard to asbestos liability is going to be an
22  issue.  And as a result there may be some need to determine, in
23  some fashion, that knowledge and that liability.  To the extent
24  that the process may be employed in that litigation that will
25  be the same process used to determine asbestos liabilities as

1 going forward for plan confirmation Judge Wolin wants to hear

2 those cases.   That's -- that's as far as we got.

3       MR. SOBOL:   As far as you got.   Okay.   I think we'll

4 just address it with Judge Wolin.

5       THE COURT:   I think -- yes.

6       MR. SOBOL:   Fine.

7       MR. BERNICK:   But -- but, this -- this is the -- and

8 we had -- and we had an informal conversation with Judge Wolin

9 on -- on this very issue in -- and, obviously, we have to talk

10 about it further with Judge Wolin, but for the -- for the

11 Court's benefit as well, the difficulty is, is that successor

12 liability is the second order -- a derivative kind of

13 liability.   It begs the question of whether there is an

14 underlying liability with respect to which there is successor

15 liability.   And the reason I want to raise that, obviously, is

16 that if and to the extent that the successor liability is

17 attached to either a traditional property claim, or to the

18 Zonolite Attic Insulation claim, it may well be that it's not

19 necessarily attached to the fraudulent conveyance trial because

20 it doesn't pertain to bodily injury.   So, I just want to alert

21 the Court to the fact that I think that that's going to take

22 some further discussion and I don't think it's as simple as

23 saying, gee, at the same time that they were making these

24 fraudulent conveyance claims they made successor liability

25 claims while the defendants might be overlapping.   The subject

1  matter of the claim may actually be and -- and implicate this
2  division of responsibility between the Courts.

3          THE COURT:   Well, it make sense, especially -- I'll
4  give an opinion since I'm not -- I may not be involved in this.
5  It may make sense, if that's the case, that you agree to try
6  the immediate liability issues first, and defer the successor
7  liability issues until there is some ruling on the immediate
8  liability because, although the underlying liability issue as
9  to the debtor may be the same, the issues with respect to
10  successor liability are not necessarily the same.  And it
11  simply  may make sense even for this expedited time frame that
12  you're going to be on to bifurcate those issues.  I don't know
13  whether you've got a statute of limitations issue.  I'm not
14  sure that successor liability issues or compulsory counterclaim
15  type claims that would have be joined anyway.  So it's possible
16  that you don't even need to bring them all at the same time.
17  So, you may want to, simply, however it works out for you to
18  defer that second step until you get the first step
19  adjudicated.

20          MR. BERNICK:   I think that the bottom line is that
21  we're going to have to raise with Judge Wolin what he really
22  wants to take up on the 30th of September at trial, and I'm
23  sure that everyone is going to want to do that.  The reason I'm
24  standing up and saying anything is that it does potentially
25  implicate the matters that are now before Your Honor --

1          THE COURT:  Yes.

2          MR. BERNICK:  -- because ZAI is, as I understand it
3 for the present time, here.

4          THE COURT:  Yes.  It's here.  I mean  you always, in
5 a bankruptcy, have some intertwining issues.  It's difficult to
6 separate them out.  But I think that as a -- as a umbrella
7 issue Judge Wolin intends to take any issue that's related in
8 any way to personal injury asbestos liability and not to take,
9 in any way, any issue that's not related to personal injury
10 asbestos liability unless either one of the judges or one of
11 the parties asks him to and he deems appropriate.

12          Now, that's a moving target.  But I think that's the
13 override -- that's the over-arching principle.  Okay.  I don't
14 know if that helped or not.

15          MR. BERNICK:  We'll find out.

16          THE COURT:  Okay.  Anything else?  Mr. Carickoff?

17          MR. CARICKHOFF:  The scheduling orders that Your
18 Honor would like us to prepare, should I also send those to the
19 same e-mail address?

20          THE COURT:  Yeah.  That would be fine.

21          MR. CARICKHOFF:  Okay.

22          THE COURT:  That's fine.  Okay.  Anything further?
23 We're adjourned.  Thank you.

24          ALL ATTORNEYS:  Thank you, Your Honor.

25                    (Court adjourned)

CERTIFICATION

I, DEBRA L. STOREY, certify that the foregoing is a correct transcript to the best of my ability, from the electronic sound recording of the proceedings in the above-entitled matter.

_Debra L. Storey_                    Date: February 4, 2002

Transcripts Plus