IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**DEBTORS' REVISED MOTION AS TO ALL NON-ASBESTOS CLAIMS, ASBESTOS PROPERTY DAMAGE AND ZAI CLAIMS FOR ENTRY OF CASE MANAGEMENT ORDER, ESTABLISHMENT OF A BAR DATE, APPROVAL OF THE PROOF OF CLAIM FORMS AND OF THE NOTICE PROGRAM**

Pursuant to the Court's instructions during the January 29, 2002 hearing, the Debtors are hereby submitting separate Case Management Order ("CMO"), bar date, claim form and notice program motions with respect to (1) asbestos personal injury claims (to be transferred to Judge Wolin) and (2) asbestos property damage and Zonolite Attic Insulation ("ZAI") claims (to be heard by Judge Fitzgerald). This motion addresses the second category of claims to be heard by Judge Fitzgerald.

Debtors respectfully move the Court for entry of an Order: (1) setting the last day for which holders of ZAI claims against the Debtors must file a proof of claim in these Chapter 11 cases to be August 1, 2002 and setting November 1, 2002 as the last day for which holders of asbestos property damage claims and all non-asbestos claims against the Debtors must file a proof of claim in these Chapter 11 cases (the "Bar Dates"); (2) approving Debtors' notice

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

program; (3) approving Debtors' proposed proof of claim forms for asbestos property damage claims, ZAI claims and all other claims; and (4) approving Debtors' case management schedule for such claims. In support of this Motion, Debtors respectfully state as follows, and also refer the Court to the relevant sections of the Debtors' Memorandum In Support Of Motion For Entry Of Case Management Order, Motion To Establish Bar Date, And Motion To Approve Notice Program," filed on June 27, 2001 (hereinafter "Debtors' Initial CMO Memo"), and Debtors' Consolidated Reply In Support of their Motion For Entry of Case Management Order, Establishment of a Bar Date, Approval of the Claim Forms and Approval of the Notice Program filed on November 9, 2001 (hereinafter "Debtors' CMO Reply").

At the outset, while the Debtors are mindful of the Courts' reasons for severing the adjudication of the personal injury claims from other asbestos claims, the Debtors hereby move that Judge Fitzgerald and Judge Wolin jointly approve a common Bar Date (for all claims other than Zonolite Attic Insulation claims, which would be subject to an earlier bar date) and a combined notice program for all claims, as proposed in the Debtors' June 27, 2001 Motion. A combined notice program would save the Debtors' estates almost four million dollars (primarily in media costs), and would avoid any potential confusion that might be created by separate notice programs. In support of this request, Debtors submit the affidavit of Katherine Kinsella, the Debtors' Notice expert. Pursuant to Ms. Kinsella's Affidavit, the Debtors submit that separate notice programs for Asbestos Personal Injury claims and Asbestos Property Damage and ZAI claims would cost the estate an additional $3,951,376. ($10,026,858 for two separate notice programs vs. $6,075,483 for a combined program.) The combined notice program proposed by the Debtors would satisfy the due process rights of all potential claimants, while minimizing the costs to the estates.

## I. Setting of the Bar Dates

1. All parties whose claims are "disputed, contingent, or unliquidated" must file a proof of claim by the Bar Date in order to "be treated as a creditor with respect to such claim for the purposes of voting and distribution." Fed. R. Bankr. P. 3003(c)(2).

2. This Court has the authority to set Bar Dates for the filing of proofs of claim. Specifically, Bankruptcy Rule 3003(c)(3) provides: "The court shall fix . . . the time within which proofs of claim or interest may be filed . . . "  Fed. R. Bankr. P. 3003(c)(3). Establishment of a bar date serves the important purpose of "enabl[ing] a debtor and his creditors to know, reasonably promptly, what parties are making claims against the estate and in what general amounts. *In re Kolstad,* 928 F.2d 171, 173 (5th Cir. 1991), *cert. denied,* 502 U.S. 958 (1991). The prompt establishment of a bar date is particularly essential in Chapter 11 cases such as these involving the resolution of thousands of asserted tort claims. *See* Debtors' Initial CMO Memo at 20-21.

3. Debtors move this Court to enter an order establishing August 1, 2002 as the Bar Date for Zonolite Attic Insulation Claims and November 1, 2002 as the Bar Date for the filing of all other claims against the Debtors. The Bar Dates will apply to:

- **"Asbestos Property Damage Claims":** All claims against Debtors as of the time immediately preceding the Bar Date that relate to the cost of removal, diminution of property value or economic loss caused by asbestos in products manufactured by Debtors or from vermiculite mined, milled, or processed by Debtors, other than the Zonolite Attic Insulation Claims categorized separately below.

- **"Zonolite Attic Insulation Claims":** All claims against Debtors as of the time immediately preceding the Bar Date that relate to the cost of removal, diminution of property value or economic loss caused by the presence of Zonolite Attic Insulation manufactured by Debtors.

- **"Non-Asbestos Claims"**: All claims against Debtors as of the time immediately preceding the petition date other than Asbestos Personal Injury Claims, Asbestos Property Damage Claims, Zonolite Attic Insulation Claims or Settled Asbestos Claims.

4. Debtors do *not* seek a Bar Date and no proof of claim form should be filed for: (i) claims for administrative expenses of any of Debtors' Chapter 11 cases under section 503(b) or 507(a) of the Bankruptcy Code; (ii) future claims; and (iii) claims of present or former employees of Debtors who are currently receiving, currently have the right to receive, or may in the future have a right to elect to receive, benefits under a state-mandated workers' compensation system on account of any personal injury claims, unless those employees wish to assert such claims directly against Debtors outside of a state workers' compensation system.

## II.  Approval of the Notice Program

5. To comport with the requirements of due process under the Bankruptcy Rules, Debtors must give notice to claimants regarding the Bar Dates. Fed. R. Bankr. P. 2002(a)(7). Debtors propose a two-fold notice program that will provide both actual and publication notice of the Bar Dates to known claimants and/or their counsel, and publication notice to claimants whose identities and/or addresses are not presently known or reasonably ascertainable by Debtors, as explained in more detail below and in Debtors' Memorandum in Support. *See* Debtors' Initial CMO Memo at 34-42.

6. The Notification Plan employs four primary methods in providing notice: (i) direct notice by mail to all identifiable claimants and/or their counsel of record; (ii) broad national published notice through the use of national paid and earned media vehicles; (iii) national notice through trade publications; and (iv) direct notice by mail to third parties who are

likely to have contact with personal injury claimants. By this Motion, Debtors seek approval of the Notification Plan.

*Actual Notice to Identifiable Claimants*

7. Debtors will provide actual notice of the Bar Dates (where addresses are known by Debtors and are reasonably retrievable) by mailing a copy of the Bar Date Notice Package, which consists of the Bar Date Notice for All Claims ("Bar Date Notice") (Exhibit A attached hereto), the Order As to All Non-Asbestos Claims, Asbestos Property Damage Claims and Zonolite Attic Insulation Claims (i) Approving Case Management Schedule, (ii) Establishing Bar Dates, (iii) Approving Proof of Claim Forms; and (iv) Approving Notice Program (filed herewith) (the "Bar Date Order"), and the appropriate proof of claim forms (Exhibit A to the June 27, 2001 Motion and Exhibits G-H to Debtors' Reply and Exhibit B hereto) to the parties required to receive notice pursuant to Bankruptcy Rule 2002, Local Rule 2002-1 and all of the following readily identifiable individuals and/or entities:

- All counsel of record for known holders of Asbestos Property Damage Claims, Zonolite Attic Insulation Claims, Asbestos Personal Injury Claims and Settled Asbestos Claims;

- All counsel of record for asbestos personal injury claims filed against Debtors *historically*;

- All residents of the Libby, Montana area;

- All persons and entities with pending Non-Asbestos Claims, and their counsel of record, if any;

- All individuals who call the toll-free telephone number or write and request a copy of the Bar Date notice package from the official claims agent as a result of seeing the notice in the media.

8. In conjunction with actual notice to counsel of record for known holders of Asbestos Property Damage Claims, Zonolite Attic Insulation Claims, Asbestos Personal Injury

Claims and Settled Asbestos Claims, counsel will also be provided a Notice to Attorneys and Certification, attached to the Debtors' CMO Reply as Exhibits E and F. Counsel of record will be asked to provide the Debtor with the following information: (1) the current names and addresses of their clients who have claims against the Debtors in these cases or who might have claims against the Debtor in these cases so that the Debtors will be able to provide their clients with the Bar Date Package, or (2) a certification that counsel has contacted or attempted to contact all of their clients whom they represent, provided them with the Bar Date Package and advised them regarding their rights to assert a claim against the Debtors and their need to file a proof of claim on the Court-approved Proof of Claim form by the Bar Date.

### *Publication Notice to Unknown Claimants*

9. Unknown claimants are those potential claimants for whom Debtors do not have names, addresses or both, or as to which the names and addresses are not reasonably retrievable. This category of claimants includes, among others, persons who formerly asserted a claim against Debtors that was settled and released, and former claimants whose claims were rejected. While such individuals may have held claims that were settled and released over the course of the past two decades in which Debtors settled tens of thousands of claims, it is merely speculative to believe that any such individuals would at this point in time hold "current" claims. Likewise, if a claim was rejected by Debtors and then never pursued by the claimant, Debtors have no reason to believe that such claimant holds a "current" claim.

10. Notice to "unknown claimants" will be provided by publication notice in lieu of actual notice. Upon entry of the Bar Date Order, Debtors will implement a comprehensive publication notice program that will include providing notice to areas where claims have arisen or where potential claimants may now be located including: (I) the entire United States of

America; (ii) Canada; (iii) Guam; (iv) Puerto Rico; and (v) the U.S. Virgin Islands. Publication notice will be disseminated using the following forms: (a) newspapers; (b) magazines; (c) trade and professional publications; (d) television (network and cable); and (e) web sites.

11. Notice will also be provided directly to trade organizations in which potential claimants may be members and through other third parties who are likely to have contact with personal injury claimants.

12. In addition, a toll-free number will be established for potential claimants to call for information and for a court-approved proof of claim form, as described herein.

13. The Notification Plan outlined herein (Exhibit B to the Debtors' CMO Reply) has been assembled with the advice and direction of Katherine Kinsella, the president of Kinsella Communications, Ltd. Ms. Kinsella is a leading expert in the design, preparation, and dissemination of legal notice in class actions and bankruptcies. Ms. Kinsella is a nationally-recognized specialist in class action notification campaigns in the mass-tort and product liability arenas.

14. Debtors' Notification Plan that describes the adequacy of the publication notice program, publications to be used, target groups to be reached, frequency of reaching such groups, costs associated with the plan, and a variety of other details regarding the scope and manner in which the Notification Plan will be implemented is attached to the Debtors' CMO Reply as Exhibit B.

15. A copy of the form of the Bar Date Notice to be sent to known claimants is filed herewith as Exhibit A. A copy of the print notice for publication of the Bar Date is attached to the Debtors' CMO Reply as Exhibit B-9. A copy of the television notice of the Bar Date for all claims is attached to the Debtors' CMO Reply as Exhibit B-8. (Revised versions of the print

notice and television notice will be filed to reflect the proposed August 1, 2002 ZAI Claim Bar Date.)

16. This notice program complies with due process requirements and is reasonable. Contrary to the PD Committee's objections, there is no precedent for requiring bar date notices to "educate" or "warn" potential claimants of the alleged dangers of a debtor's products unless the requirements for an injunction have been satisfied on the merits. *See* CMO Reply at 66-68. The PD Committee's objections to the content of the bar date notices were primarily stylistic, and have been addressed in the revised short form notices, TV spot and long form notice. *See* CMO Reply at 68-71. The PD Committee's objections to the reach of the notice program are vague and unfounded. *See* CMO Reply at 71-74.

### III.  Approval of the Proof of Claim Forms

17. Debtors move for approval to include, with the Bar Date Notice, one (or more if applicable) of three proof of claim forms, depending on the category of the claimant: (i) Asbestos Property Damage Proof of Claim Form; (ii) Zonolite Attic Insulation Proof of Claim Form; or (iii) Non-Asbestos Proof of Claim Form. Copies of the first two forms along with their corresponding instructions are attached to the Debtors' Reply as Exhibits G and H. A copy of the Non-Asbestos Proof of Claim Form along with the corresponding instructions are attached hereto as Group Exhibit B. (The Asbestos Personal Injury Proof of Claim Form, attached to the June 27, 2001 Motion as Exhibit A, is being submitted to Judge Wolin for approval.)

18. The proof of claim forms proposed by Debtors have been specifically designed to elicit information necessary in the resolution of threshold issues Grace plans to raise relating to each of the various categories of claims. *See* Debtors' Initial CMO Memo at 25-31, 33; Debtors' CMO Reply at 81-82.

19. Debtors move that the proof of claim forms attached to the Debtors' Reply as Exhibits G and H and attached hereto as Exhibit B be approved.

**IV.    Approval of The Case Management Schedule**

20. The litigation protocol proposed by the Debtors is focused, legally sound and manageable. The protocol would enable the Court to reach an early decision on the threshold *Daubert* issue of whether there is reliable scientific evidence that Zonolite Attic Insulation ("ZAI") poses an unreasonable risk of harm. If this *Daubert* proceeding resulted in a finding that ZAI claimants lack such reliable scientific evidence, ZAI claims would be precluded on several grounds, including the absence of any product or design defect, lack of causation and the economic loss doctrine. *See* Debtors' Initial CMO Memo at 1-6; Debtors' CMO Reply at 26-35. Similar threshold common issues should be resolved with respect to the traditional asbestos property damage claims (primarily MK-3 claims), specifically whether such claims are barred by the statute of limitations under the doctrine of constructive notice and whether there is reliable, scientific evidence that MK-3 poses an unreasonable risk to building occupants. *See* Debtors' Initial CMO Memo at 6-12; Debtors' CMO Reply at 35-38. Contrary to the PD Committee's objections: these issues are not too individual for common resolution; Debtors' reliance on *Daubert* summary judgment proceedings and, if necessary, FRCP 42 common issue trials is neither "novel" nor "unprecedented;" and the proposed appointment of a ZAI claimant committee would not preclude other claimant counsel from participating. *See* Debtors' CMO Reply at 57-63, 64.

21. Rather than litigating these common issues under the Federal Rules of Bankruptcy Procedure, and the Federal Rules of Evidence and of Civil Procedure, the PD Committee would prefer that this Court simply assume the validity of the traditional property damage claims

through an estimation process that relies on statistical extrapolation from Grace's prepetition settlements. But the Federal Rules forbid any such use of prior settlements to establish liability. *See* Debtors' CMO Reply at 17-20. Nor would it be possible to confirm a plan of reorganization in these cases without addressing these disputed liability issues: Grace's shareholders are entitled to a finding of the actual value of asserted asbestos claims, based on all available defenses, before any conclusion can be reached by this Court as to whether a proposed plan provides for a distribution to asbestos claimants greater than their claims merit. *See* Debtors' CMO Reply at 20-21.

22. The PD Committee is also wrong when it asserts that § 524(g) of the Bankruptcy Code is the exclusive mechanism for reorganizing companies with asbestos liabilities. Section 524(g) merely sets forth certain tests which, if satisfied, will authorize a channeling injunction to protect the debtor and other entities from present and future asbestos claims. Nothing in § 524(g) limits or supersedes a court's authority to issue injunctions or exercise other powers in connection with a plan of reorganization outside of the scope of § 524(g). Nor is there anything in the language of that section that restricts that claims allowance and disallowance process prior to confirmation of a Chapter 11 plan. To the contrary, the fact that a § 524(g) trust requires the approval of at least 75% of those claimants voting necessarily implies that the Debtors retain the authority to move for disallowance of invalid claims, otherwise the success or failure of the vote on the trust could be decided by those with meritless claims. *See* Debtors' CMO Reply at 22-23.

23. On or before September 1, 2002, the Debtors will make a preliminary report to the Court and the committees, categorizing and summarizing all ZAI claims filed by the August 1, 2002 Bar Date. With respect to the claims other than ZAI Claims, on or before January 2, 2003, Debtors will make a preliminary report to the Court and the committees, categorizing and

summarizing all other claims filed by the November 1, 2002 Bar Date, the Debtors' omnibus objections to claims, and identifying threshold defenses for litigation.

24.     The Debtors' proposed asbestos property damage litigation protocol would proceed along two parallel tracks, one for ZAI claims litigation and one for traditional property damage claims. To implement that protocol, the Debtors move for the adoption of the following Case Management Schedule:

### *Zonolite Attic Insulation Litigation Track*

25.     Debtors propose that Zonolite Attic Insulation claims be litigated pursuant to the following schedule:

a.     Debtors move the Court to schedule the period from June 1, 2002 through November 29, 2002 for discovery regarding whether ZAI poses an unreasonable risk of harm. Unless good cause were shown to extend this discovery deadline, no ZAI discovery with a response date after November 29, 2002 would be allowed.

b.     Debtors will file omnibus objections, a Rule 42 consolidation motion and related *Daubert*/summary judgment motions, based upon the absence of a reliable scientific basis for the alleged risk of harm from ZAI. Debtors request the Court approve January 2, 2003 as the date for submission of Debtors' omnibus objections and *Daubert*/summary judgment motions, February 3, 2003 as the date for claimants' response, and February 17, 2003 as the date for Debtors' reply. The Debtors move that a hearing on the omnibus objections and *Daubert*/summary judgment motions be held promptly thereafter. In the event that the Court finds any material disputed facts, Debtors request that an FRCP 42 common issue bench trial be conducted in early 2003 to decide the unresolved issues.


## *Asbestos Property Damage Litigation Track*

1. Debtors propose that the Asbestos Property Damage claims be litigated pursuant to the following schedule:

    a. As a part of its preliminary report to the Court on January 2, 2003, Debtors will identify with respect to Asbestos Property Damages Claims: (i) already pending cases that could continue to be litigated in other courts, subject to regular reporting to the Court; (ii) claims subject to statute of limitations defenses; (iii) claims subject to *res judicata* defenses; and (iv) claims subject to a *Daubert* motion, based upon the lack of a reliable scientific basis for the alleged product risk.

    b. Debtors request the Court with respect to Asbestos Property Damage Claims approve (i) February 3, 2003 as the deadline for submission of Debtors' summary judgment motion with respect to the issue of statute of limitations under the constructive notice doctrine with respect to the *res judicata* defense; and that (ii) briefing be completed in time for a hearing in April 2003.

    c. Debtors further request that (i) discovery concerning the scientific support for the allegation of Monokote product risk occur from February 2, 2003 through September 2, 2003; (ii) that Debtors file omnibus objections and related *Daubert*/summary judgment motions on September 15, 2003;

    d. After the hearings on Debtors' omnibus objections and *Daubert*/summary judgment motions, any unresolved issues with respect to Asbestos Property Damage Claims will be set for bench trial pursuant to FRCP 42, beginning in the fourth quarter of 2003. The trial would resolve any remaining *Daubert* issues and any other unresolved common issues such as statute of limitations, causation, the economic loss doctrine, and product risk.

WHEREFORE, Debtors respectfully request that this Honorable Court enter the attached Order, granting the relief requested herein.

| | |
|---|---|
| Wilmington, Delaware | Respectfully submitted, |
| Dated: February 12, 2002 | KIRKLAND & ELLIS<br>David M. Bernick<br>James H.M. Sprayregen<br>Andrew R. Running<br>Janet Baer<br>200 East Randolph Drive<br>Chicago, Illinois 60601<br>(312) 861-2000<br><br>REED SMITH LLP<br>James J. Restivo, Jr.<br>Paul M. Singer<br>Douglas E. Cameron<br>435 Sixth Avenue<br>Pittsburgh, PA  15219-1886<br>(412) 288-3131<br><br>and<br><br>PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.<br><br>_/s/ David W. Carickhoff_<br>Laura Davis Jones (#2436)<br>David W. Carickhoff, Jr. (#3715)<br>919 North Market Street, 16th Floor<br>P.O. Box 8705<br>Wilmington, Delaware 19899-8705 (Courier 19801)<br>(302) 652-4100<br><br>Co-Counsel for Debtors and Debtors in Possession |