IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Objection Deadline: March 8, 2002 at 4:00 p.m.
Hearing Date: March 18, 2002 at 10:00 a.m.

## APPLICATION FOR AN ORDER AMENDING THE ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF KINSELLA COMMUNICATIONS, LTD., AS NOTICE CONSULTANT FOR THE DEBTORS AND DEBTORS-IN-POSSESSION TO AUTHORIZE THE DEBTORS TO PAY INTERIM COMPENSATION TO KINSELLA COMMUNICATIONS, LTD.

The above-captioned debtors and debtors in possession herein (the "Debtors"), by and through their undersigned counsel, hereby apply (the "Application") to the Court for the entry of an order amending the previous order of this Court, which authorized the Debtors to employ and retain Kinsella Communications, Ltd., ("KCL") as their notice consultant, to

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

91100-001\DOCS_DE:40790.
1::ODMA\PCDOCS\DOCS_DE\40790\1

authorize the Debtors to pay interim compensation to KCL. In support of this Application, the Debtors respectfully represent as follows:

### Jurisdiction

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and the Application are proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The bases for the relief requested herein are sections 327(a), 328 and 363(b)(1) of the Bankruptcy Code and Fed. R. Bankr. P. 2014.

### Background

3. On July 19, 2001, the Court entered an order (the "Retention Order"), a copy of which is attached as Exhibit 1 to the form of order attached hereto, that authorized the Debtors to employ and retain KCL under section 327(a) of the Bankruptcy Code as their notice consultant in the above-captioned cases (the "Chapter 11 Cases") pursuant to the terms of an advertising and services agreement, dated as of July 1, 2001, (the "Retention Agreement"), a copy of which is attached as Exhibit 2 to the form of order attached hereto,. The terms of the Retention Order and the Retention Agreement provide that the Debtors will compensate KCL in an amount equal to 15% of the cost of the media buy, which amount was to be paid when the bar date notice program was implemented, and reimburse out-of-pocket expenses. The Retention Order and Retention Agreement further provide that, if a bar date is not established in these Chapter 11 Cases or work is cancelled before the bar date, the Debtors will be obligated to pay

an amount equal to a reduced percentage of the media buy for the work performed, which reduced amount will be negotiated between KCL and the Debtors.

4. As set forth in the affidavit of Katherine Kinsella (the "Kinsella Affidavit"), attached hereto as <u>Exhibit A</u>, KCL typically completes half its work in developing a bar date notice plan and the notice materials prior to executing a complex media notice program. It generally then completes the other half of its work when the notice program is executed, at which time it is compensated. This arrangement is usually satisfactory for KCL because there is little delay between the time when the notice plan is developed and when the notice program is executed.

5. In the Chapter 11 Cases, however, the Court has not yet set a bar date, even though seven months have passed since KCL was retained to develop and execute a media notice program. Furthermore, KCL performed the bulk of its services to date during the period from May through November 2001, at which time other developments in the Chapter 11 Cases delayed the setting of a claims bar date.

6. Thus far, KCL has developed not just one, but two separate bar date notice plans and sets of notice materials, the first as part of the original case management order filed by the Debtors in June 2001, and the second in conjunction with Debtors' Reply brief filed in November 2001, wherein Debtors attempted to respond to objections filed to the first plan by the Asbestos Property Damage Committee. KCL expended significant resources without receiving any compensation and since it is still unclear when a bar date may be set, under the current terms of the Retention Order KCL does not have any immediate prospect of receiving any compensation for its significant efforts.

7. Specifically, KCL performed the following tasks:

a. For the initial plan filed in June 2001, KCL:

   i. Extensively researched the Debtors' asbestos-related businesses and products as background for developing a bar date notice plan;

   ii. gathered and analyzed product information relating to the Debtors' asbestos-related products, including: (A) information on Grace's vermiculite and asbestos-containing products, (B) distribution and sales information by state for MK-3 from sales records and (C) information regarding Zonolite Attic Insulation;

   iii. analyzed claims related information including: (A) statistics regarding age of Personal Injury Claimants and (B) claims filings by jurisdiction for Grace;

   iv. developed demographic profiles of Personal Injury Claimants, Settled Claimants, Property Claimants, and Zonolite Attic Insulation Claimants using factors such as age, gender, occupation and the like;

   v. researched and identified the media vehicles through which different classes of potential claimants in the United States and Canada, including Personal Injury Claimants, Settled Claimants, Property Damage Claimants, and Zonolite Attic Insulation Claimants, normally receive information;

   vi. developed a media program, including general consumer magazines, newspapers, television and public relations, through an extensive analysis of the most effective media vehicles to be used in combination to the reach claimants;

   vii. calculated the estimated reach and frequency of the notice program;

   viii. identified potential geographic concentrations of Personal Injury Claimants based upon identifiable areas where the Debtors may have mined, manufactured or distributed vermiculite and asbestos-containing products and operated expanding plants;

   ix. identified (A) third-party organizations that may have contact with Personal Injury Claimants, including occupationally related trade or professional associations and organizations whose membership may include individuals with asbestos-related personal injuries, (B)

                                trade publications that serve industries in which occupational asbestos exposure was likely, (C) consumer publications targeted to "do-it-yourself" homeowners and (D) trade publications likely to be read by owners, administrators, and managers of commercial, residential or public buildings; and

                x.    created the required notice materials with multiple drafts and layouts, including the bar date notices for use in trade and general publications, a script for a 30-second television spot and materials to be sent to trade unions and other third parties.

        b.    For the second notice plan filed in November 2001, KCL:

                i.    developed a new notice program to address concerns of the official committee of asbestos property damage claimants (the "Asbestos Property Damage Committee"), including revisions to the planned consumer magazine, television and Canadian media buys;

                ii.    reconsidered all plan elements in light of the Asbestos Property Damage Committee's concerns;

                iii.    developed several alternative plans using various combinations of television dayparts and print media vehicles;

                iv.    compared the alternative media plans for their relative efficacies in achieving adequate reach among the intended notice parties;

                v.    rewrote and redesigned all notice materials, with multiple drafts and layouts, to address various constituent concerns;

    8.    In addition, during the September to November 2001, time period, Ms. Kinsella and the KCL staff spent considerable time addressing objections raised by the Asbestos Property Damage Committee to the initial bar date notice plan, and Ms. Kinsella filed with the Court a detailed affidavit in support thereof. KCL also provided the Asbestos Property Damage Committee with all requested information prior to their deposing Ms. Kinsella on November 16, 2001. Ms. Kinsella also spent substantial time preparing for the deposition, as well as preparing for testimony to be provided at a hearing scheduled for November 23, 2001, which was cancelled

on the day of the hearing because of other case developments. KCL also developed extensive exhibits to support Ms. Kinsella's planned testimony at the cancelled hearing.

9. When the Retention Agreement was signed, KCL had anticipated that it would have substantially completed its work related to the notice program and concluded the media buy by the end of 2001, entitling it to compensation at that time under the terms of the Retention Order and the Retention Agreement. The delays in the Chapter 11 Cases and the fact that a case management order allowing the notice program to go forward has not yet been approved have created a hardship for KCL in light of the back-loaded nature of the compensation arrangement and the much greater amount of work demanded by the Chapter 11 Cases in comparison with other notice programs that KCL has developed and executed in the past.

### Relief Requested

10. By this Application, the Debtors seek modification of the Retention Order so that the Debtors may pay KCL now for half of the estimated fees that will be due to KCL pursuant to the Retention Agreement. Debtors estimate this amount to be approximately $398,000. The Debtors submit that the changed conditions of the Chapter 11 Cases, which have delayed compensating KCL well beyond what was foreseeable at the time the Court entered the Retention Orders warrants modifying the compensation arrangement as discussed herein.

### No Prior Request

11. No previous request for the relief sought in this Application has been made to this or any other Court.

## Notice

12. Notice of this Application has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to the official committees appointed by the United States Trustee and (iv) those parties who requested notice in the Chapter 11 Cases pursuant to Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, (1) amending the previous Retention Order, which authorized the Debtors to employ and retain KCL as their notice consultant, to authorize the Debtors to pay immediate interim compensation to KCL and (2) granting the Debtors such other relief as is just and proper.

Dated: February 15, 2002

KIRKLAND & ELLIS
James H.M. Sprayregen
James W. Kapp III
Samuel A. Schwartz
Roger J. Higgins
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

_/s/ David W. Carickhoff_
Laura Davis Jones (Bar No. 2436)
Hamid R. Rafatjoo (California Bar No. 181564)
David W. Carickhoff Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-counsel for Debtors and Debtors in Possession