IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**ORDER AMENDING THE ORDER UNDER SECTION 327(A) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF KINSELLA COMMUNICATIONS, LTD., AS NOTICE CONSULTANT FOR THE DEBTORS AND DEBTORS-IN-POSSESSION TO AUTHORIZE THE DEBTORS TO PAY INTERIM COMPENSATION TO KINSELLA COMMUNICATIONS, LTD.**

Upon the application (the "Application")[2] of the Debtors in the above-captioned Chapter 11 Cases, seeking entry of an order amending the previous order of this Court, which authorized the Debtors to employ and retain Kinsella Communications, Ltd., ("KCL") as their notice consultant, to authorize the Debtors to pay interim compensation to KCL; and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); it appearing that venue of this proceeding and the Application are proper in this district pursuant to 28 U.S.C.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

§§ 1408 and 1409; due notice of the Application having been given to parties in interest; it appearing that no other notice need be given; and after due deliberation and sufficient cause appearing, it is hereby:

ORDERED that the Debtors are authorized to pay KCL an amount of not more than $398,000 as interim compensation for the services rendered, pursuant to the Retention Order, attached hereto as Exhibit 1, and the Retention Agreement, attached hereto as Exhibit 2; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this order and the Retention Order

Dated: _____, 2002

_____
Judith K. Fitzgerald
United States Bankruptcy Judge

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Application and the Retention Order, as the case may be.

**Exhibit 1**

**[Retention Order]**

**ORIGINAL**

⌀002

THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

In re:

W.R. GRACE CO., et al.,[1]

Debtors.

)
)
)
)
)
)

Chapter 11

Case No. 01-01139 (JJF)
(Jointly Administered)

### ORDER UNDER SECTION 327(a) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF KINSELLA COMMUNICATIONS, LTD. AS NOTICE CONSULTANT FOR THE DEBTORS AND DEBTORS IN POSSESSION

Upon consideration of the application (the "Application") of the debtors and debtors

in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), for the entry of

an order authorizing the Debtors to employ and retain Kinsella Communications, Ltd. ("Kinsella")

as their notice consultant, and upon the affidavit of Katherine M. Kinsella (the "Affidavit"); and the

Court being satisfied, based on the representations made in the Application and Affidavit, that

Kinsella represents no interest adverse to the Debtors' estates with respect to the matters upon which

they are to be engaged, that Kinsella is a "disinterested person" as that term is defined under section

104(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and that

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.



the employment of Kinsella is necessary and would be in the best interests of the Debtors, their creditors and the Debtors' estates; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Application is granted; and it is further

ORDERED that the Debtors are authorized to employ and retain Kinsella as their notice consultant, on the terms set forth in the Application (as that term is defined in the Application); and it is further

ORDERED that, without further order of this Court, the Debtors shall compensate Kinsella for services rendered as set forth in the Application and upon the submission by Kinsella to the Debtors of invoices that summarize, in reasonable detail, the services or expenses for which compensation is sought, which invoices Kinsella, at its sole discretion, shall submit to the Debtors; and it is further

ORDERED that in the event the Court directs Kinsella to provide additional notice to the Debtors' putative claimants in excess of the notice proposed by the Debtors and/or Kinsella, the Property Damage Committee may readdress, without prejudice, the terms of Kinsella's compensation as set forth in the Application; and it is further

ORDERED that if the Property Damage Committee elects to readdress Kinsella's compensation, and in the event the Property Damage Committee, Kinsella and the Debtors are unable to reach a consensual resolution, the Property Damage Committee shall file the appropriate pleadings with the Court, and serve such pleadings upon counsel for the Debtors, Kinsella, the Committees and the United States Trustee, requesting that the Court readdress Kinsella's compensation in accordance with the Court's additional notice requirements; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters relating to the implementation of this Order.

Dated: _July 19, 2001_

Joseph J. Farnan, Jr.
United States District Judge

**Exhibit 2**

**[Retention Agreement]**

## Advertising and
## Services Agreement

This Advertising and Service Agreement ("Agreement") is entered into as of July 1, 2001 by and between Kinsella Communications Ltd. ("KCL") on one hand, and W. R. Grace and related companies ("Debtors") on the other hand (individually and collectively referred to as the "Party" and/or "Parties").

In consideration of the mutual agreements herein set forth, the Parties agree as follows:

I.   Debtors hereby retain KCL to design, disseminate and implement the requisite ·media bar date notice *In re: W. R. Grace & Co., et al.*, Chapter 11, Case No. 01-01139(JJF).

   •  The notice services shall include: developing and implementing a comprehensive bar date notice plan with recommendations for materials and media distribution; creating all relevant and necessary notice materials, including print and television advertisements; implementing media buys and placement; executing an affidavit or other documentation and testimony as required by the Court and/or as requested by Debtors on the notification services provided; and providing a summary and analysis of the notification activities and media placements (hereinafter "Services") as required by Debtors. Prior to delivery of such Services, KCL shall detail and outline in the Bar Date Notice Plan all contemplated work with an estimate of the associated costs and expenses, and Debtors shall promptly either authorize, modify or cancel such work, as allowed for herein.

II.  Debtors agree to compensate KCL for Services provided as follows:

   A.   Media fees:  For the media buy a commission of 15 percent on all gross media buys as approved by Debtors. Except as provided otherwise pursuant to Section IV, or unless extended by mutual agreement of the Parties, this Agreement shall terminate on July 1, 2002.

   B.   Reasonable out of pocket expenses, including long distance telephone charges, faxes, copying and travel expenses that are incurred and paid by KCL shall be reimbursed by Debtors separately on a monthly basis. Any expense in excess of $1,000, which is not in the Bar Date Notice Plan, must be approved in advance by Debtors.

   C.   All bills are payable in full within 30 days from the date on the invoice provided such arrangement is approved by the Bankruptcy Court.  If Debtors cancel any work in progress or terminate this Agreement, then Debtors, subject to Bankruptcy Court approval, shall pay KCL a negotiated and reasonable percentage of media fees representing completed work prior to the cancellation and necessary work required to terminate the

project as well as expenses incurred through the date of cancellation and necessary cancellation expenses. Should enforcement become necessary for any Party, the Party seeking enforcement shall be entitled to its fees and costs, including reasonable attorneys' fees, related to such collection.

D.    All media fees shall be paid in advance and upon a presentation of a statement by KCL.

III.    KCL shall use good faith and reasonable efforts in providing Services, including placing the notices in all vehicles selected. KCL agrees to further use its best efforts to negotiate the lowest advertising costs to execute the Bar Date Notice Plan once approved by the Court, and to obtain confirmation of the placement of the notes/advertisements. KCL shall also require of any vendors and consultants retained in connection with KCL's provision of Services to use its best efforts in all phases for which they may be retained and KCL shall solely be responsible for rendering payment to any such vendors and/or consultants, and at no time shall KCL permit or authorize any such vendors or consultants to seek payment from Debtors. Moreover, KCL agrees to maintain the appropriate records and documentation indicating that the notices/advertisements have been placed and have actually appeared. Debtors understand and agree that KCL is not, however, providing Debtors with any warranty of any type that the Bar Date Notice Plan and the actual notice will reach all potential asbestos health claimants in the litigation or that all advertisements contracted for will have run as specified. Debtors shall be entitled to any and all credits provided by the vendors for advertisements that do not run as specified.

Debtors agree that in the event of a lawsuit or the commencement of any other proceeding against KCL or its agents because of the Services provided under this Agreement, Debtors shall fully defend and indemnify and compensate KCL for any losses, damages and reasonable attorneys' fees and costs incurred thereby, except to the extent caused by KCL's gross negligence, willful misconduct or bad faith. KCL agrees to comply with all Debtors' reasonable requests for cooperation and assistance necessary to enable Debtors to defend KCL, including making potential witnesses available for deposition and trial and furnishing documents requested by Debtors. Debtors will not, however, be responsible for any claims, liabilities, losses, damages or expenses, which result from KCL's willful misconduct, bad faith or gross negligence.

IV.    The Services to be provided under this Agreement may be terminated, at will:

A.    By Debtors upon at least 30 calendar days' prior written notice to KCL. Debtors' obligation to pay for services or projects in progress at the time of notice of withdrawal shall continue throughout that thirty (30) day period. KCL will continue to provide Services during the period after notification and prior to termination. Debtors shall pay all statements of charges then

2

outstanding, and any future statements of charges covering Services provided prior to termination.

B.    By KCL, (i) with thirty (30) calendar days' prior written notice if Debtors are not current in payment of charges under Section II above, so long as such statements are timely submitted to Debtors.

Termination of the Services shall not terminate, discharge, affect or impair the obligations of Grace under this Agreement as of the date of termination or as to any matter other than termination of Services.

V.    KCL shall not, directly or indirectly, use for its own purposes or disclose or communicate to any person, firm, association, corporation or other entity in any manner whatsoever information of any kind, nature or description concerning: the business plans, trade secrets or other similar data of any kind, nature or description where tangible or intangible of the Debtors, or any other financial, statistical or other information that the Debtors designate or treat as confidential or proprietary. The agreements set forth herein shall not apply to (i) any information that at the time of disclosure or thereafter is generally available to and known by the public (other than as a result of a disclosure directly or indirectly by KCL in violation of this Agreement), (ii) any information the disclosure of which is required by law, regulation, order decree or process or is otherwise approved by Debtors or (iii) any information not treated by Debtors as confidential and which KCL had no reasonable basis to believe was confidential or proprietary.

VI.   If any provision of this Agreement is, becomes or is deemed invalid, illegal, or unenforceable in any jurisdiction: (i) such provision will be deemed amended to confirm to applicable laws of such jurisdiction so as to be valid and enforceable or, if it cannot be amended without materially altering the intention of the parties, it will be stricken; (ii) the validity, legality and enforceability of such provision will not in any way be affected or impaired thereby in any other jurisdiction; and (iii) the remainder of this Agreement will remain in full force and effect.

The validity, interpretation and performance of this Agreement and each of its provisions shall be governed by the laws of, and enforced in, the District of Columbia. No promises, representations or statements not expressly contained in this Agreement, or incorporated herein by reference, shall be binding upon the Parties as a warranty or otherwise.

This Agreement embodies the entire agreement between the Parties. No changes in, addition to, or waivers of, the terms and conditions of the Agreement will be binding upon any Party, unless approved in writing by such Party's authorized representative.

This agreement shall not be assignable by either Party hereto without the written consent of the other Party.

3

KCL agrees that it is an independent contractor and not an agent of Debtors. KCL will not have any authority to bind or act on behalf of Debtors or any of their affiliates except as otherwise expressly authorized by this Agreement.

To the extent permitted by applicable law, under no circumstances shall either Party be liable to the other for indirect, incidental or punitive damages-whether in tort, breach of contract or otherwise, even if that Party has been informed of the possibility of such damages. Each Party covenants not to institute or participate in any proceeding seeking to establish a contrary position.

The Parties hereto agree that any and all matters in dispute concerning this Agreement shall be subject to arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

In no event shall demand for arbitration be made under this Agreement after the date when the commencement of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations. The arbitrator's award shall be final and binding upon the Parties, and judgment may be entered upon it in accordance with applicable law.

All notices, requests, demands, payments, accounting claims or other communications which any of the parties desires or is required to give to any other party under this Agreement shall be given in writing and shall be deemed to have been given if it is sent or registered or certified mail, postage prepaid or rent by prepaid overnight courier or confirmed telecopier, and addressed to the intended recipient as set forth below:

AGREED AND ACCEPTED:

W.R. Grace & Co.

By: _____

Printed: William Corcoran

Title: Vice President

Address: W.R. Grace
7500 Grace Drive
Columbia, MD 21044

Kinsella Communications Inc.

By: _____

Printed: Katherine Kinsella

Title: President

Address: 1920 L Street, NW
Suite 700
Washington, DC 20036