REPORT OF INDEPENDENT ACCOUNTANTS

TO THE SHAREHOLDERS AND BOARD OF DIRECTORS OF
W. R. GRACE & CO.

In our opinion, the accompanying consolidated balance sheets and the
related consolidated statements of operations, of cash flows, of shareholders'
equity (deficit) and of comprehensive income (loss), after the restatement
described in Note 2, present fairly, in all material respects, the financial
position of W. R. Grace & Co. and its subsidiaries at December 31, 2000 and
1999, and the results of their operations and their cash flows for each of the
three years in the period ended December 31, 2000, in conformity with
accounting principles generally accepted in the United States of America. These
financial statements are the responsibility of the Company's management; our
responsibility is to express an opinion on these financial statements based on
our audits. We conducted our audits of these statements in accordance with
auditing standards generally accepted in the United States of America, which
require that we plan and perform the audit to obtain reasonable assurance about
whether the financial statements are free of material misstatement. An audit
includes examining, on a test basis, evidence supporting the amounts and
disclosures in the financial statements, assessing the accounting principles
used and significant estimates made by management, and evaluating the overall
financial statement presentation. We believe that our audits provide a
reasonable basis for our opinion.

The accompanying consolidated financial statements have been prepared
assuming that the Company will continue as a going concern. As discussed in
Note 1 to the consolidated financial statements, on April 2, 2001, the Company
and substantially all of its domestic subsidiaries voluntarily filed for
protection under Chapter 11 of the United States Bankruptcy Code, which raises
substantial doubt about the Company's ability to continue as a going concern in
its present form. Management's intentions with respect to this matter are also
described in Note 1. The accompanying consolidated financial statements do not
include any adjustments that might result from the outcome of this uncertainty.


/s/ PricewaterhouseCoopers LLP
PricewaterhouseCoopers LLP
Baltimore, Maryland
January 29, 2001, except for
"Subsequent Event - Voluntary
Bankruptcy Filing" of Note 1 and the
second paragraph under "Income Taxes"
of Note 15, as to which the date is
April 2, 2001

REPORT OF INDEPENDENT ACCOUNTANTS ON FINANCIAL STATEMENT SCHEDULE

TO THE SHAREHOLDERS AND BOARD OF DIRECTORS OF W. R. GRACE & CO.

Our audits of the consolidated financial statements referred to in our report, which was modified as to a matter raising substantial doubt about the Company's ability to continue as a going concern, and which was dated January 29, 2001, except for "Subsequent Event - Voluntary Bankruptcy Filing" of Note 1 and the second paragraph under "Income Taxes" of Note 15, as to which the date is April 2, 2001, appearing on page F-4 in this Form 10-K also included an audit of the Financial Statement Schedule listed on page F-2 in the Index to Consolidated Financial Statements and Financial Statement Schedule and Exhibit of this Form 10-K. In our opinion, this Financial Statement Schedule, after the restatement described in Note A to such schedule, presents fairly, in all material respects, the information set forth therein when read in conjunction with the related consolidated financial statements.

/s/ PricewaterhouseCoopers LLP
PricewaterhouseCoopers LLP
Baltimore, Maryland
January 29, 2001, except for
"Subsequent Event - Voluntary
Bankruptcy Filing" of Note 1 and the
second paragraph under "Income Taxes"
of Note 15, as to which the date is
April 2, 2001

CONSENT OF INDEPENDENT ACCOUNTANTS

We hereby consent to the incorporation by reference in the Registration Statements on Form S-8 (Nos. 333-37024, 333-49083, 333-49507, 333-49509, 333-49511, 333-49513, 333-49515, 333-49517, 333-49703, and 333-49705) of W. R. Grace & Co. of our report dated January 29, 2001, except for "Subsequent Event - Voluntary Bankruptcy Filing" of Note 1 and the second paragraph under "Income Taxes" of Note 15, as to which the date is April 2, 2001, relating to the financial statements, which appears on page F-4 in this Form 10-K. We also consent to the incorporation by reference of our report dated January 29, 2001, except for "Subsequent Event - Voluntary Bankruptcy Filing" of Note 1 and the second paragraph under "Income Taxes" of Note 15, as to which the date is April 2, 2001, relating to the Financial Statement Schedule, which appears above in this Form 10-K.

/s/ PricewaterhouseCoopers LLP
PricewaterhouseCoopers LLP
Baltimore, Maryland
April 16, 2001

CONSOLIDATED FINANCIAL STATEMENTS

W. R. GRACE & CO. AND SUBSIDIARIES
CONSOLIDATED STATEMENT OF OPERATIONS

| Amounts in millions, except per share amounts | YEAR ENDED DECEMBER 31, | | |
|---|---|---|---|
| | 2000 | 1999 | (Restated) 1998 |
| Net sales | $ 1,597.4 | $ 1,550.9 | $ 1,546.2 |
| Other income | 49.5 | 56.7 | 36.4 |
| | 1,646.9 | 1,607.6 | 1,582.6 |
| Cost of goods sold, exclusive of depreciation and amortization shown separately below | 973.9 | 929.3 | 961.7 |
| Selling, general and administrative expenses | 323.1 | 327.2 | 326.9 |
| Research and development expenses | 45.7 | 42.4 | 47.4 |
| Depreciation and amortization | 87.8 | 89.2 | 92.1 |
| Interest expense and related financing costs | 28.1 | 16.1 | 19.8 |
| Provision for asbestos-related litigation, net of insurance | 208.0 | -- | 376.1 |
| Provision for restructuring and asset impairments | -- | -- | 21.0 |
| Net insurance recovery on environmental remediation | -- | -- | (38.2) |
| | 1,666.6 | 1,404.2 | 1,805.8 |
| (Loss) income from continuing operations before income taxes | (19.7) | 203.4 | (223.2) |
| (Provision for) benefit from income taxes | (70.0) | (73.2) | 28.5 |
| (LOSS) INCOME FROM CONTINUING OPERATIONS | (89.7) | 130.2 | (194.7) |
| Income from discontinued operations, net of tax | -- | 5.7 | 0.9 |
| (Loss) income before extraordinary item | (89.7) | 135.9 | (193.8) |
| Extraordinary item - loss from early extinguishment of debt, net of tax | -- | -- | (35.3) |
| NET (LOSS) INCOME | $ (89.7) | $ 135.9 | $ (229.1) |
| BASIC (LOSS) EARNINGS PER SHARE: | | | |
| Continuing operations | $ (1.34) | $ 1.84 | $ (2.61) |
| Net (loss) income | $ (1.34) | $ 1.92 | $ (3.07) |
| Weighted average number of basic shares | 66.8 | 70.7 | 74.6 |
| DILUTED (LOSS) EARNINGS PER SHARE: | | | |
| Continuing operations | $ (1.34) | $ 1.76 | $ (2.61) |
| Net (loss) income | $ (1.34) | $ 1.84 | $ (3.07) |
| Weighted average number of diluted shares | 66.8 | 73.8 | 74.6 |

The Notes to Consolidated Financial Statements
are an integral part of these statements.

F-6

W. R. GRACE & CO. AND SUBSIDIARIES
CONSOLIDATED STATEMENT OF CASH FLOWS

YEAR ENDED DECEMBER 31,

| Dollars in millions | 2000 | 1999 | 1998 |
|---|---|---|---|
| OPERATING ACTIVITIES | | | |
| (Loss) income from continuing operations before income taxes .................... $ | (19.7) | $    203.4 | $    (223.2) |
| Reconciliation to cash (used for) provided by operating activities: | | | |
| Depreciation and amortization ..................................................... | 87.8 | 89.2 | 92.1 |
| Provision for asbestos-related litigation, net of insurance................ | 208.0 | -- | 376.1 |
| Provision for restructuring and asset impairments......................... | -- | -- | 21.0 |
| Gain on disposal of assets ...................................................... | (5.5) | (13.6) | -- |
| Changes in assets and liabilities, excluding effect of businesses | | | |
| acquired/divested and foreign currency exchange: | | | |
| (Increase) decrease in notes and accounts receivable, net................ | (10.6) | 0.5 | 85.7 |
| (Increase) decrease in inventories ...................................... | (8.0) | (5.7) | 0.5 |
| (Increase) decrease in subordinated interest of accounts receivable sold | (4.9) | 37.0 | (65.1) |
| (Increase) decrease in net pension asset ............................... | (33.6) | (10.6) | (8.8) |
| Increase (decrease) in accounts payable ................................. | (0.3) | (0.3) | 15.3 |
| (Decrease) increase in accrued liabilities ............................. | (9.8) | 12.6 | (157.1) |
| Expenditures for asbestos-related litigation .......................... | (281.0) | (115.9) | (238.7) |
| Proceeds from asbestos-related insurance ................................ | 85.6 | 73.1 | 74.0 |
| Expenditures for environmental remediation ............................. | (36.8) | (17.8) | (28.9) |
| Expenditures for postretirement benefits ............................... | (23.0) | (19.6) | (21.0) |
| Other .................................................................. | (5.3) | 4.8 | 6.5 |
| NET PRE-TAX CASH (USED FOR) PROVIDED BY OPERATING ACTIVITIES | | | |
| OF CONTINUING OPERATIONS..................................... | (57.9) | 237.1 | (71.6) |
| Net pre-tax cash (used for) operating activities of discontinued operations...... | (34.9) | (42.9) | (66.0) |
| NET PRE-TAX CASH (USED FOR) PROVIDED BY OPERATING ACTIVITIES ............... | (92.8) | 194.2 | (137.6) |
| Income taxes (paid) received, net ................................................ | (28.3) | (54.4) | 70.7 |
| NET CASH (USED FOR) PROVIDED BY OPERATING ACTIVITIES ..................... | (121.1) | 139.8 | (66.9) |
| INVESTING ACTIVITIES | | | |
| Capital expenditures ............................................................. | (64.8) | (82.5) | (100.9) |
| Businesses acquired in purchase transactions, net of cash acquired .............. | (49.0) | (9.4) | -- |
| Investments in unconsolidated affiliates ........................................ | (3.6) | -- | -- |
| Net investing activities of discontinued operations ............................ | -- | (54.1) | (14.3) |
| Net proceeds from divestments of businesses .................................... | -- | 184.6 | 3.9 |
| Proceeds from disposals of assets ............................................... | 11.9 | 40.6 | 3.1 |
| Net investment in life insurance policies ...................................... | (16.3) | (2.5) | (5.8) |
| NET CASH (USED FOR) PROVIDED BY INVESTING ACTIVITIES ..................... | (121.8) | 76.7 | (114.0) |
| FINANCING ACTIVITIES | | | |
| Borrowings (repayments) having original maturities of three months or less, net | 311.3 | 18.7 | (331.3) |
| Repayments of borrowings having original maturities in excess of three months ... | (24.7) | -- | (698.5) |
| Proceeds from the exercise of stock options ..................................... | 5.8 | 26.6 | 52.0 |
| Purchase of treasury stock ...................................................... | (47.3) | (95.3) | (82.2) |
| Net financing activity of discontinued operations .............................. | -- | (27.5) | 1,256.6 |
| NET CASH PROVIDED BY (USED FOR) FINANCING ACTIVITIES ..................... | 245.1 | (77.5) | 196.6 |
| Effect of currency exchange rate changes on cash and cash equivalents ........... | (10.1) | (4.5) | 2.0 |
| (DECREASE) INCREASE IN CASH AND CASH EQUIVALENTS ......................... | (7.9) | 134.5 | 17.7 |
| CASH AND CASH EQUIVALENTS, BEGINNING OF YEAR ............................. | 199.8 | 65.3 | 47.6 |
| CASH AND CASH EQUIVALENTS, END OF YEAR ..................................... $ | 191.9 | $    199.8 | $    65.3 |

The Notes to Consolidated Financial Statements
are an integral part of these statements.

F-7

```
============================================================================= ======================================================
W. R. GRACE & CO. AND SUBSIDIARIES
CONSOLIDATED BALANCE SHEET                                                          DECEMBER 31,
----------------------------------------------------------------------------- ------------------------------------------------------
                                                                                                        (Restated)
Amounts in millions, except par value and shares                                       2000                 1999
                                                                                  ---------------       ------------


CURRENT ASSETS
Cash and cash equivalents ...............................................  $       191.9        $      199.8
Notes and accounts receivable, net ......................................          197.2               193.6
Inventories .............................................................          144.2               128.2
Deferred income taxes ...................................................           98.8               111.7
Asbestos-related insurance expected to be realized within one year ......           83.8                75.2
Other current assets.....................................................           58.0                71.3
                                                                                  --------------       ------------
    TOTAL CURRENT ASSETS ................................................          773.9               779.8

Properties and equipment, net of accumulated depreciation and
    amortization of $935.4 (1999 - $908.3) ..............................          601.7               617.3
Goodwill, less accumulated amortization of $7.2 (1999 - $7.2) ...........           34.1                25.4
Cash value of life insurance policies, net of policy loans...............          104.3                81.6
Deferred income taxes ...................................................          388.4               328.3
Asbestos-related insurance expected to be realized after one year........          288.2               296.2
Other assets ............................................................          394.3               346.5
                                                                                  --------------- --  ------------
    TOTAL ASSETS ........................................................  $     2,584.9        $    2,475.1
                                                                                  =============== == ============

LIABILITIES AND SHAREHOLDERS' (DEFICIT) EQUITY
CURRENT LIABILITIES
Short-term debt .........................................................  $       421.9        $       13.0
Accounts payable ........................................................          123.1               124.1
Income taxes payable ....................................................          123.1               146.7
Asbestos-related liability expected to be satisfied within one year......          178.4               159.3
Other current liabilities ...............................................          246.4               286.3
                                                                                  --------------       ------------
    TOTAL CURRENT LIABILITIES ...........................................        1,092.9               769.4

Long-term debt ..........................................................            --                123.2
Deferred income taxes ...................................................           20.2                20.5
Asbestos-related liability expected to be satisfied after one year ......          927.5               884.7
Other liabilities .......................................................          615.6               566.2
                                                                                  --------------- --  ------------
    TOTAL LIABILITIES ...................................................        2,656.2             2,364.0
                                                                                  --------------- --  ------------

COMMITMENTS AND CONTINGENCIES

SHAREHOLDERS' (DEFICIT) EQUITY
Common stock issued, par value $.01; 300,000,000 shares authorized;
    outstanding: 2000 - 65,418,000; 1999 - 69,414,000                                0.8                 0.8
Paid in capital .........................................................          432.2               422.6
Accumulated deficit......................................................         (216.4)             (126.7)
Deferred compensation trust .............................................            --                 (0.6)
Treasury stock, at cost: 11,443,900 common shares (1999 - 6,628,500) .....        (136.4)              (89.1)
Accumulated other comprehensive loss ....................................         (151.5)              (95.9)
                                                                                  --------------- --  ------------
    TOTAL SHAREHOLDERS' (DEFICIT) EQUITY ................................          (71.3)              111.1
                                                                                  --------------- --  ------------
    TOTAL LIABILITIES AND SHAREHOLDERS' (DEFICIT) EQUITY ................  $     2,584.9        $    2,475.1
                                                                                  =============== == ============
```

The Notes to Consolidated Financial Statements
are an integral part of these statements.

W. R. GRACE & CO. AND SUBSIDIARIES
CONSOLIDATED STATEMENT OF SHAREHOLDERS' EQUITY (DEFICIT)
--------------------------------------------------------------------------------

| Dollars in millions | Common Stock and Paid in Capital | Retained Earnings (Accumulated Deficit) | Deferred Compensation Trust | Treasury Stock |
|---|---|---|---|---|
| BALANCE, DECEMBER 31, 1997 | $ 584.3 | $ 168.3 | $ (5.7) | $ |
| Net (loss), as restated | | (229.1) | | |
| Separation of Packaging Business | (237.8) | (82.3) | 6.5 | |
| Reclassification of assets in deferred compensation trust | | | 4.7 | |
| Purchase of common stock | | | | (45.3) |
| Shares issued under stock plans | 79.7 | | 0.2 | |
| Other comprehensive (loss) | | | | |
| BALANCE, DECEMBER 31, 1998, AS RESTATED | $ 426.0 | $ (203.1) | $ (0.8) | $ (45.3) |
| Net income | | 135.9 | | |
| Purchase of common stock | | | | (96.4) |
| Shares issued under stock plans | 42.1 | | 0.2 | 48.4 |
| Retirement of treasury stock | (28.9) | (63.4) | | |
| Other comprehensive (loss) | | | | |
| BALANCE, DECEMBER 31, 1999, AS RESTATED | $ 425.4 | $ (124.7) | $ (0.6) | $ (84.4) |
| Net (loss) | | (89.7) | | |
| Purchase of common stock | | | | (47.5) |
| Shares issued under stock plans | 7.4 | | | |
| Rabbi trust activity | 0.2 | | (0.8) | |
| Rabbi trust obligation | | | 1.4 | |
| Other comprehensive (loss) | | | | |
| BALANCE, DECEMBER 31, 2000 | $ 433.0 | $ (216.4) | $ | $ (216.4) |

| Dollars in millions | Accumulated Other Comprehensive Loss | TOTAL SHAREHOLDERS' EQUITY (DEFICIT) |
|---|---|---|
| BALANCE, DECEMBER 31, 1997 | $ (156.4) | $ 445.9 |
| Net (loss), as restated | | (229.1) |
| Separation of Packaging Business | 147.2 | (350.4) |
| Reclassification of assets in deferred compensation trust | | 4.7 |
| Purchase of common stock | | (45.3) |
| Shares issued under stock plans | | 75.9 |
| Other comprehensive (loss) | (1.4) | (1.3) |
| BALANCE, DECEMBER 31, 1998, AS RESTATED | $ (10.9) | $ 62.1 |
| Net income | | 135.9 |
| Purchase of common stock | | (96.4) |
| Shares issued under stock plans | | 42.6 |
| Other comprehensive (loss) | (15.0) | (15.0) |
| BALANCE, DECEMBER 31, 1999, AS RESTATED | $ (34.3) | $ 131.1 |
| Net (loss) | | (89.7) |
| Purchase of common stock | | (47.5) |
| Shares issued under stock plans | | 7.4 |
| Rabbi trust activity | | (0.6) |
| Rabbi trust obligation | | 1.4 |
| Other comprehensive (loss) | (55.6) | (55.6) |
| BALANCE, DECEMBER 31, 2000 | $ (150.9) | $ (92.1) |

========================================================================

W. R. GRACE & CO. AND SUBSIDIARIES
CONSOLIDATED STATEMENT OF COMPREHENSIVE INCOME (LOSS)          YEAR ENDED DECEMBER 31,
--------------------------------------------------------------------------------

| Dollars in millions | 2000 | 1999 | (Restated) 1998 |
|---|---|---|---|
| Net (loss) income | $ (89.7) | $ 135.9 | $ (229.1) |
| Other comprehensive (loss) income: | | | |
| Foreign currency translation adjustments | (34.1) | (19.3) | (7.2) |
| Net unrealized (losses) gains on investments | (17.7) | 1.5 | 16.5 |
| Minimum pension liability adjustments | (3.8) | 2.8 | (10.6) |
| Total other comprehensive (loss) | (55.6) | (15.0) | (1.3) |
| Comprehensive (loss) income | $ (145.3) | $ 120.9 | $ (230.4) |

The Notes to Consolidated Financial Statements
are an integral part of these statements.

F-9

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
(Dollars in millions unless otherwise stated)

1.   BASIS OF PRESENTATION AND SUMMARY OF SIGNIFICANT ACCOUNTING AND FINANCIAL
     REPORTING POLICIES
--------------------------------------------------------------------------

NATURE OF OPERATIONS: W. R. Grace & Co., through its subsidiaries, is primarily
engaged in specialty chemicals and specialty materials businesses on a
worldwide basis. These businesses consist of catalysts and silica products
(Davison Chemicals) and construction chemicals, building materials and
container products (Performance Chemicals).

W. R. Grace & Co. conducts substantially all of its business through a direct,
wholly owned subsidiary, W. R. Grace & Co.-Conn. (Grace-Conn.). Grace-Conn.
owns substantially all of the assets, properties and rights of W. R. Grace &
Co., either directly or through subsidiaries. As used in these notes, the term
"Company" refers to W. R. Grace & Co. The term "Grace" refers to the Company
and/or one or more of its subsidiaries and, in certain cases, their respective
predecessors.

SUBSEQUENT EVENT - VOLUNTARY BANKRUPTCY FILING - On April 2, 2001, W. R. Grace
& Co. and 61 of its United States subsidiaries and affiliates, including
Grace-Conn. (collectively, the "Debtors"), filed voluntary petitions for
reorganization (the "Filing") under Chapter 11 of the United States Bankruptcy
Code ("Chapter 11" or the "Bankruptcy Code") in the United States Bankruptcy
Court for the District of Delaware (the "Bankruptcy Court"). The cases were
consolidated and are being jointly administered under case numbers 01-1139
through 01-1200. Grace's non-U.S. operating subsidiaries were not a part of the
Filing.

The Filing was made in response to a sharply increasing number of
asbestos-related bodily injury claims. These claims are discussed in more
detail in Note 3 to the Consolidated Financial Statements. Under Chapter 11,
the Debtors expect to continue to operate their businesses as
debtors-in-possession under court protection from their creditors and
claimants, while using the Chapter 11 process to develop and implement a plan
for addressing the asbestos-related claims against them.

Background of Filing - On January 29, 2001, Grace announced that recent
developments in asbestos-related litigation had led to a fourth quarter charge
of $208.0 million (net of expected insurance recovery). The charge was made to
account for probable and estimable costs related to several adverse
developments in Grace's asbestos litigation during 2000, including: a
significant increase in bodily injury claims; higher than expected costs to
resolve bodily injury and certain property damage claims; and new class-action
lawsuits alleging damages from a former attic insulation product not previously
subject to property damage litigation. After this adjustment, Grace's recorded
liability for asbestos-related litigation at December 31, 2000 is $1,105.9
million gross and $733.9 million net of insurance recovery. The estimated gross
liability represents an undiscounted stream of payments in decreasing amounts
over approximately 40 years. However, due to the Filing and the uncertainties
of asbestos-related litigation, actual amounts could differ materially from the
recorded liability.

Grace also announced on January 29, 2001 that it was reviewing the strategic
and operating issues associated with continuing to defend asbestos litigation
through the court system versus voluntarily seeking a resolution of such
litigation through reorganization under Chapter 11. As a result of that review,
the Board of Directors of Grace concluded on April 2, 2001 that a federal
court-supervised Chapter 11 filing provides the best forum available to achieve
predictability and fairness in the claims settlement process. By filing under
Chapter 11, Grace expects to be able to both obtain a comprehensive resolution
of the claims against it and preserve the inherent value of its businesses.

Consequence of Filing - As a consequence of the Filing, all pending litigation
against the Debtors is stayed and no party may take any action to realize its
pre-petition claims except pursuant to order of the Bankruptcy Court. It is the
Debtors' intention to address all of their pending and future asbestos-related
claims and all other pre-petition claims in a plan of reorganization. However,
it is currently impossible to predict with any degree of certainty how the plan
will treat asbestos and other pre-petition claims and the impact the Filing and
any reorganization plan may have on the shares of common stock of Grace.
Generally, under the provisions of the Bankruptcy Code, holders of equity
interests may not participate under a plan of reorganization unless the claims
of creditors are satisfied in full under the plan or unless creditors accept a
reorganization plan that permits holders of equity interests to participate. The
formulation and

implementation of a plan of reorganization could take a significant period of time.

The accompanying Consolidated Financial Statements have been prepared on a going concern basis, which contemplates continuity of operations, realization of assets and liquidation of liabilities in the ordinary course of business. However, as a result of the Filing, such realization of certain Debtors' assets and liquidation of certain Debtors' liabilities are subject to significant uncertainty. Further, a plan of reorganization could materially change the amounts and classifications reported in the consolidated financial statements, which do not give effect to any adjustments to the carrying value or classification of assets or liabilities that might be necessary as a consequence of a plan of reorganization.

All of the Debtors' pre-petition debt is now in default due to the Filing. Accordingly. the accompanying Consolidated Balance Sheet as of December 31, 2000 reflects the classification of the Debtors' pre-petition debt as current.

The Debtors have negotiated a debtor-in-possession revolving credit facility with Bank of America, N.A. (the "DIP facility") in the aggregate amount of $250 million. The DIP facility has a term of 2 years and bears interest at either Bank of America's prime rate or a formula based on the LIBOR rate plus 2.00% to 2.25%. The Bankruptcy Court issued an interim approval of the DIP facility, which allows the Debtors to draw on the DIP facility for 15 days in an amount not to exceed $50 million.

The Debtors have received approval from the Bankruptcy Court to pay or otherwise honor certain of its pre-petition obligations, including claims of trade creditors to a specified amount and employee wages and benefits in the ordinary course of business.

Accounting Impact - Beginning in the second quarter of 2001, Grace will be required to follow Statement of Position 90-7 ("SOP 90-7"), "Financial Reporting by Entities in Reorganization under the Bankruptcy Code." Pursuant to SOP 90-7, Grace's pre-petition liabilities that are subject to compromise will be reported separately on the balance sheet at an estimate of the amount that will ultimately be allowed by the Bankruptcy Court. Obligations of Grace subsidiaries not covered by the Filing will remain classified on the consolidated balance sheet based upon maturity dates or the expected dates of payment. SOP 90-7 also requires separate reporting of certain expenses, realized gains and losses, and provisions for losses related to the Filing as reorganization items.

Pro-Forma Balance Sheet Information (Unaudited) - The condensed balance sheet of the Debtors as if the Debtors had filed petitions for reorganization under Chapter 11 at December 31, 2000 is as follows:

```
*************************************************** ==================
PRO-FORMA CONDENSED BALANCE SHEET OF DEBTORS
--------------------------------------------------       DECEMBER 31,
(UNAUDITED)                                                   2000
(Dollars in millions)
-------------------------------------------------- ------------------
Current Assets:
   Cash and cash equivalents...................... $    37.5
   Notes and accounts receivable, net............       32.8
   Inventories...................................       75.2
   Other current assets..........................       81.2
                                                    ------------------
       Total current assets......................      226.7
   Properties and equipment, net.................      410.0
   Asbestos-related insurance receivable.........      372.0
   Deferred income taxes.........................      482.6
   Loans to non-debtor entities..................      407.0
   Investment in non-debtor entities.............      148.3
   Other noncurrent assets.......................      414.3
                                                    ------------------
       Total assets..............................   $2,460.9
                                                    ==================
Liabilities Subject to Compromise:
   Debt..........................................   $  409.1
   Asbestos-related liability ...................    1,105.9
   Other liabilities.............................      955.4
                                                    ------------------
       Total liabilities.........................    2,470.4
   Equity........................................       (9.5)
                                                    ------------------
       Total liabilities and equity..............   $2,460.9
*************************************************** ==================
```

PACKAGING BUSINESS TRANSACTION: On March 31, 1998, a predecessor of the Company (Old Grace) completed a transaction in which its flexible packaging business (Packaging Business) was combined with Sealed Air Corporation (Sealed Air). Old Grace effected this transaction by transferring its specialty chemicals businesses along with certain other businesses and assets to the Company (then named Grace Specialty Chemicals, Inc.), distributing the shares of the Company's common stock to Old Grace's shareholders on a one-for-one basis (Spin-off) and merging a subsidiary of Old Grace with Sealed Air (Merger). Immediately following the Spin-off and Merger, the Company changed its name to "W. R. Grace & Co." and Old Grace changed its name to "Sealed Air Corporation" (New Sealed Air). As a result of the transaction, the Packaging Business was classified as a discontinued operation as of December 31, 1997.

For further information, see Old Grace's Joint Proxy Statement/Prospectus dated February 13, 1998, the Company's Information Statement dated February 13, 1998 and Note 4.

PRINCIPLES OF CONSOLIDATION: The Consolidated Financial Statements include the accounts of the Company and majority-owned companies as to which the Company exercises control over operating and financial policies. Intercompany transactions and balances are eliminated in consolidation. Investments in affiliated companies as to which the Company does not exercise control over operating and financial

F-11

policies are accounted for under the equity method, unless the Company's ability to influence the investee is determined to be temporary, in which case the investment is accounted for under the cost method.

RECLASSIFICATIONS: Certain amounts in prior years' Consolidated Financial Statements have been reclassified to conform to the 2000 presentation.

USE OF ESTIMATES: The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America requires that management make estimates and assumptions affecting the assets and liabilities (including contingent assets and liabilities) reported at the date of the Consolidated Financial Statements and the revenues and expenses reported for the periods presented. Actual amounts could differ from those estimates.

CASH EQUIVALENTS: Cash equivalents consist of liquid instruments with maturities of three months or less when purchased. The recorded amounts approximate fair value because of the short maturities of these investments.

SALE OF ACCOUNTS RECEIVABLE: Grace enters into transactions to sell certain of its trade accounts receivable and retains a subordinated interest and servicing rights. Net losses on the sale of receivables are based on the carrying value of the assets sold, allocated in proportion to their fair value. Retained interests are carried at fair value and are included in other current assets in the Consolidated Balance Sheet. Grace generally estimates fair value based on the present value of expected future cash flows less management's best estimate of uncollectible accounts receivable. Grace maintains an allowance for doubtful accounts receivable based upon the expected collectibility of all trade receivables, including receivables sold. The allowance is reviewed regularly and adjusted for accounts deemed uncollectible by management. Expenses and losses associated with the program are recognized as a component of interest expense and related financing costs.

INVENTORIES: Inventories are stated at the lower of cost or market. The methods used to determine cost include first-in/first-out and, for substantially all U.S. inventories, last-in/first-out. Market values for raw materials are based on current cost and, for other inventory classifications, net realizable value.

PROPERTIES AND EQUIPMENT: Properties and equipment are stated at cost. Depreciation of properties and equipment is generally computed using the straight-line method over the estimated useful life of the asset. Estimated useful lives range from 20 to 40 years for buildings, 3 to 7 years for information technology equipment, 3 to 10 years for machinery and equipment and 5 to 10 years for furniture and fixtures. Interest is capitalized in connection with major project expenditures. Fully depreciated assets are retained in properties and equipment and related accumulated depreciation accounts until they are removed from service. In the case of disposals, assets and related accumulated depreciation are removed from the accounts and the net amount, less any proceeds from disposal, is charged or credited to income. Grace reviews long-lived assets for impairment whenever events or changes in circumstances indicate that the carrying amount of an asset may not be fully recoverable.

GOODWILL: Goodwill arises from certain purchase business combinations and is amortized using the straight-line method over appropriate periods not exceeding 40 years. Grace reviews its goodwill for impairment whenever events or changes in circumstances indicate that the carrying amount may not be fully recoverable.

REVENUE RECOGNITION: Grace recognizes revenue as risk and title to the product transfers to the customer, which usually occurs upon shipment of goods to customers or upon performance of services.

In December 1999, the Securities and Exchange Commission ("SEC") issued Staff Accounting Bulletin ("SAB") No. 101, "Revenue Recognition in Financial Statements," subsequently updated by SAB 101A and SAB 101B ("SAB 101"). SAB 101 summarizes certain of the SEC's views in applying generally accepted accounting principles to revenue recognition in financial statements. Grace adopted SAB 101 in the fourth quarter of 2000 and there was no material impact on Grace's results of operations or financial position.

RESEARCH AND DEVELOPMENT COSTS: Research and development costs are charged to expense as incurred.

CONSOLIDATED STATEMENT OF CASH FLOWS: Balance sheet information relating to a discontinued business is not restated for periods prior to the date of classification of a business as a discontinued operation. Accordingly, "Net pre-tax cash used for operating activities of discontinued operations" excludes the effects of changes in working capital of discontinued operations prior to their classification as

such. The net investing and financing activities of discontinued operations represent cash flows of discontinued operations subsequent to the respective dates of such classifications.

INCOME TAXES: Grace recognizes deferred tax assets and liabilities with respect to the expected future tax consequences of events that have been recorded in the Consolidated Financial Statements and tax returns. If it is more likely than not that all or a portion of deferred tax assets will not be realized, a valuation allowance is provided against such deferred tax assets.

FOREIGN CURRENCY TRANSLATION: Assets and liabilities of foreign subsidiaries (other than those located in countries with highly inflationary economies) are translated into U.S. dollars at current exchange rates, while their revenues, costs and expenses are translated at average exchange rates during each reporting period; resulting translation adjustments are included in the accumulated other comprehensive income (loss) section of the Consolidated Balance Sheet. The financial statements of subsidiaries located in countries with highly inflationary economies, if any, are remeasured as if the functional currency were the U.S. dollar; the remeasurement creates translation adjustments that are reflected in net (loss) income.

FINANCIAL INSTRUMENTS: Grace periodically enters into interest rate swap agreements and foreign exchange forward and option contracts to manage exposure to fluctuations in interest and foreign currency exchange rates. Grace does not hold or issue derivative financial instruments for trading purposes.

2.   PRIOR PERIOD RESTATEMENT AND RECLASSIFICATION
-------------------------------------------------------------------------------

PRIOR PERIOD RESTATEMENT

Grace's financial statements at December 31, 1999 and for the year ended December 31, 1998, have been restated to reflect management's reassessment of the realization of certain deferred tax assets. The effect of the restatement on the accompanying consolidated financial statements was as follows:

| | DECEMBER 31, 1999 | |
| --- | --- | --- |
| | AS PREVIOUSLY | AS |
| (Dollars in millions) | REPORTED | RESTATED |
| CONSOLIDATED BALANCE SHEET: | | |
| Deferred income taxes, noncurrent....... | $     345.8 | $     328.3 |
| Total assets........................... | 2,492.6 | 2,475.1 |
| Income taxes payable................... | 118.7 | 146.7 |
| Total liabilities...................... | 2,336.0 | 2,364.0 |
| Accumulated deficit.................... | (81.2) | (126.7) |
| Total shareholders' equity............. | 156.6 | 111.1 |

| | YEAR ENDED DECEMBER 31, 1998 | |
| --- | --- | --- |
| | AS PREVIOUSLY | AS |
| (Dollars in millions) | REPORTED | RESTATED |
| CONSOLIDATED STATEMENT OF OPERATIONS: | | |
| Benefit from income taxes.............. | $      74.0 | $      28.5 |
| (Loss) from continuing operations...... | (149.2) | (194.7) |
| Net (loss)............................. | (183.6) | (229.1) |
| Basic (loss) per share: | | |
|   Continuing operations................ | $     (2.00) | $     (2.61) |
|   Net (loss)........................... | (2.46) | (3.07) |

```
Diluted (loss) per share:
  Continuing operations.................    $     (2.00)  $     (2.61)
  Net (loss).............................          (2.46)         (3.07)

CONSOLIDATED STATEMENT OF COMPREHENSIVE
INCOME (LOSS):
Comprehensive (loss)....................    $    (184.9)  $    (230.4)
=========================================== ============= =============
```

The restatement had no effect on the Consolidated Statement of Operations for the year ended December 31, 1999 or the Consolidated Statement of Cash Flows for the years ended December 31, 1999 and 1998, nor did it affect the financial position or results of operations of Grace's operating segments as previously reported.

PRIOR PERIOD RECLASSIFICATION

Grace's financial statements reflect a reclassification of freight costs and sales commissions (previously shown as a reduction of net sales) to costs of goods sold and selling expenses in accordance with the Emerging Issues Task Force Consensus No. 00-10, "Accounting for Shipping and Handling Revenues and Costs." The effect of the reclassification on the accompanying Consolidated Statement of Operations was as follows:

| | YEAR ENDED DECEMBER 31, 1999 | | YEAR ENDED DECEMBER 31, 1998 | |
|---|---|---|---|---|
| (Dollars in millions) | AS PREVIOUSLY REPORTED | AS CURRENTLY REPORTED | AS PREVIOUSLY REPORTED | AS CURRENTLY REPORTED |
| Net sales............. | $1,471.9 | $1,550.9 | $1,463.4 | $1,546.2 |
| Cost of goods sold... | 856.2 | 929.3 | 883.4 | 961.7 |
| Selling, general and administrative expenses | 321.3 | 327.2 | 321.4 | 325.9 |

F-13

3.   ASBESTOS-RELATED LITIGATION
--------------------------------------------------------------------------------

Grace is a defendant in property damage and bodily injury lawsuits relating to
previously sold asbestos-containing products and expects that it will receive
additional asbestos-related claims in the future. Grace was a defendant in
61,395 asbestos-related lawsuits at December 31, 2000 (7 involving claims for
property damage, 8 involving attic insulation, and the remainder involving
124,907 claims for bodily injury), as compared to 50,342 lawsuits at December
31, 1999 (11 involving claims for property damage and the remainder involving
105,670 claims for bodily injury).

PROPERTY DAMAGE LITIGATION

The plaintiffs in property damage lawsuits generally seek to have the
defendants absorb the cost of removing, containing or repairing the
asbestos-containing materials in the affected buildings. Each property damage
case is unique in that the age, type, size and use of the building, and the
difficulty of asbestos abatement, if necessary, vary from structure to
structure. Thus, the amounts involved in prior dispositions of property damage
cases are not necessarily indicative of the amounts that may be required to
dispose of cases in the future. Information regarding product identification,
the amount of product in the building, the age, type, size and use of the
building, the jurisdictional history of prior cases and the court in which the
case is pending provide meaningful guidance as to the range of potential costs.
Grace has recorded an accrual for all outstanding property damage cases for
which sufficient information is available to form a reasonable estimate of such
exposure.

Through December 31, 2000, out of 370 asbestos property damage cases filed, 140
were dismissed without payment of any damages or settlement amounts; judgments
were entered in favor of Grace in 9 cases (excluding cases settled following
appeals of judgments in favor of Grace); judgments were entered in favor of the
plaintiffs in 7 cases for a total of $60.5 million; 207 property damage cases
were settled for a total of $696.8 million; and 7 cases remain outstanding. No
new cases have been filed since 1998.

| PROPERTY DAMAGE CASE ACTIVITY | 2000 | 1999 |
|---|---|---|
| Cases outstanding, beginning of year.. | 11 | 14 |
| New cases filed ...................... | -- | -- |
| Settlements .......................... | (4) | (3) |
| Dismissals ........................... | -- | -- |
| Judgments ............................ | -- | -- |
| Cases outstanding, end of year.. | 7 | 11 |

ATTIC INSULATION LITIGATION

Through December 31, 2000, Grace was a defendant in eight class action lawsuits
brought on behalf of owners of homes containing Zonolite attic fill insulation.
These lawsuits seek damages and equitable relief, including the removal,
replacement and/or disposal of all such insulation. This former attic
insulation product has never previously been the subject of property damage
litigation. Grace believes that this product was safe for its intended purpose.

BODILY INJURY LITIGATION

Bodily injury claims are generally similar to each other (differing primarily
in the type of asbestos-related illness allegedly suffered by the plaintiff).
However, Grace's estimated liability for such claims is influenced by numerous
variables, including the solvency of other former asbestos producers,
cross-claims by co-defendants, the rate at which new claims are filed, the
jurisdiction in which the filings are made, and the defense and disposition
costs associated with these claims. Grace's bodily injury liability reflects
management's estimate of the number and ultimate cost of present and future
bodily injury claims expected to be asserted against Grace given demographic
assumptions of possible exposure to asbestos products manufactured by Grace.

Through December 31, 2000, approximately 16,200 asbestos bodily injury lawsuits
involving approximately 35,500 claims were dismissed without payment of any
damages or settlement amounts (primarily on the basis that Grace products were
not involved), and approximately 53,400 lawsuits involving approximately
151,800 claims were disposed of (through settlement and judgments) for a total
of $561.8 million.

Bodily injury claim activity for 2000 and 1999 was as follows:

| BODILY INJURY CLAIM ACTIVITY | 2000 | 1999 |
|---|---|---|
| Claims outstanding, beginning of year ..................... | 105,670 | 97,017 |
| New claims ........................... | 48,786 | 26,941 |
| Settlements .......................... | (26,950) | (16,174) |
| Dismissals ........................... | (2,598) | (2,109) |
| Judgments ............................ | (1) | (5) |
| Claims outstanding, end of year........ | 124,907 | 105,670 |

ASBESTOS-RELATED LIABILITY

Grace estimates its property damage and bodily injury liabilities based on its experience with, and recent trends in, asbestos litigation. Its recorded liabilities cover indemnity and defense costs for pending property damage cases and for pending and projected future bodily injury claims. As a result of the recent developments discussed in Note 1, Grace's evaluation of its recorded liability for asbestos-related litigation as of December 31, 2000 led to a fourth quarter adjustment of $293.1 million ($190.8 million net of tax) to account for an unexpected increase in the number of claims filed, new risk factors and recent cost experience. In the fourth quarter of 1998, a change in the accrual period for asbestos-related bodily injury litigation resulted in an adjustment of $576.2 million ($374.9 million after tax).

Grace previously purchased insurance policies with respect to its asbestos-related lawsuits and claims. Grace adjusted its recorded insurance receivable in the fourth quarter of 2000 by $85.1 million ($55.6 million after tax) to reflect the additional amounts expected to be recovered in respect of the recorded asbestos-related liability. In 1998, the insurance receivable was adjusted by $200.2 million ($130.5 million after tax) for the same reason.

The net amount of the adjustments recorded during the fourth quarter of 2000 ($208.0 million after insurance recovery) reflects adverse experience in the latter part of 2000 versus certain underlying assumptions used to estimate Grace's liability for asbestos-related litigation. The net amount of the 1998 adjustment was $376.1 million pre-tax. After the 2000 adjustment, Grace's recorded liability for asbestos-related litigation is $1,105.9 million gross and $733.9 million net of insurance recovery.

| ESTIMATED LIABILITY FOR ASBESTOS-RELATED LITIGATION (Dollars in millions) | 2000 | 1999 |
|---|---|---|
| Asbestos-related liability expected to be satisfied within one year | $   178.4 | $   199.3 |
| Asbestos-related liability expected to be satisfied after one year | 927.5 | 884.7 |
| Total asbestos-related liability | $ 1,105.9 | $ 1,084.0 |

The current portion of Grace's asbestos-related liability is based on management's estimate as of the respective balance sheet date of indemnity payments and defense costs expected to be paid within one year. The amounts recorded at each balance sheet date reflect Grace's estimate as of the balance sheet date, based on measures governed by generally accepted accounting principles, of probable and estimable liabilities for asbestos-related litigation in all material respects. However, due to the Filing and the uncertainties of the asbestos-related litigation, actual amounts could differ materially from the recorded liability.

ASBESTOS INSURANCE

Grace has settled with and been paid by its primary insurance carriers with respect to both property damage and bodily injury cases and claims. Grace has also settled with its excess insurance carriers that wrote policies available for property damage cases; those settlements involve amounts paid and to be paid to Grace. In addition, Grace has settled with many excess insurance carriers that wrote policies available for bodily injury claims in layers of insurance that Grace believes may be reached based on its current estimates. Insurance coverage for asbestos-related liabilities has not been commercially available since 1985.

The asbestos-related insurance asset represents amounts expected to be received from carriers under settlement agreements for defense and disposition costs to

be paid by Grace. Estimated insurance reimbursements relate to property damage and bodily injury cases and claims pending at year-end 2000 and bodily injury claims expected to be filed in the future.

Activity in Grace's notes receivable from insurance carriers and asbestos-related insurance receivable during 2000 and 1999 was as follows:

| ESTIMATED INSURANCE RECOVERY ON ASBESTOS-RELATED LIABILITIES (Dollars in millions) | 2000 | 1999 |
|---|---|---|
| **NOTES RECEIVABLE** | | |
| Notes receivable from insurance carriers, beginning of year, net of discount of $0.8 (1999 - $2.3) | $ 5.3 | $ 18.0 |
| Proceeds received under asbestos-related insurance settlements | (3.2) | (14.2) |
| Current year amortization of discount | 0.6 | 1.5 |
| Notes receivable from insurance carriers, end of year, net of discount of $0.2 (1999 - $0.8) | 2.7 | 5.3 |
| **INSURANCE RECEIVABLE** | | |
| Asbestos-related insurance receivable, beginning of year | 366.1 | 425.0 |
| Proceeds received under asbestos-related insurance settlements | (82.4) | (58.9) |
| Increase in asbestos-related insurance receivable | 85.6 | -- |
| Asbestos-related insurance receivable, end of year | 369.3 | 366.1 |
| Total amounts due from insurance carriers | 372.0 | 371.4 |
| Expected to be realized within one year | (83.8) | (75.2) |
| Expected to be realized after one year | $ 288.2 | $ 296.2 |

F-15

4. DISCONTINUED OPERATIONS
--------------------------------------------------------------------------------

PACKAGING BUSINESS TRANSACTION

As discussed in Note 1, the Spin-off and the Merger were completed on March 31,
1998. Prior to the Spin-off and the Merger, Old Grace and a Packaging Business
subsidiary borrowed $1,258.8 million (inclusive of $2.2 million of bank fees)
and made a cash transfer of $1,256.6 million to Grace, which used the
transferred funds to repay substantially all of Grace's debt (see Note 12). The
borrowed funds are shown as a net financing activity of discontinued operations
in the Consolidated Statement of Cash Flows for 1998. In the Merger and a
related recapitalization, for each Old Grace common share outstanding at the
close of trading on March 31, 1998, each shareholder received .536 shares of
New Sealed Air common stock and .475 shares of New Sealed Air convertible
preferred stock. Upon the completion of the Spin-off and the Merger, the
shareholders of Old Grace owned (a) 100% of the specialty chemicals businesses
(through their ownership of 100% of the Company's outstanding shares) and (b)
approximately 63% of New Sealed Air, on a fully diluted basis.

The Packaging Business transaction resulted in an adjustment to shareholders'
equity of $196.4 million, representing Grace's net investment in the Packaging
Business.

During 1998, Grace made certain amendments to one of its domestic pension
plans, which included offering a lump sum settlement option to former Grace
employees not currently receiving benefits. During 1999, a significant number
of the lump sum offers were settled. The Packaging Business Transaction also
required the Company to split certain pension plans and recognize a net
curtailment loss for other plans. In 1999, the Company recognized a pre-tax
noncash charge of $9.1 million ($5.7 million after tax), relating to
settlements of the lump sum offers with former Packaging Business employees,
which is included in "Income from discontinued operations, net of tax" in the
Consolidated Statement of Operations. In 1998, the Company recognized a net
pre-tax loss of $8.4 million ($5.5 million after-tax) in connection with those
changes. This net pre-tax loss is included in "Income from discontinued
operations, net of tax" in the Consolidated Statement of Operations.

CROSS COUNTRY STAFFING

In July 1999, Grace completed the sale of substantially all of its interest in
Cross Country Staffing (CCS), a provider of temporary nursing and other
healthcare services, for total cash proceeds of $184.6 million. The Company's
investment in CCS had been accounted for under the equity method. The sale
resulted in a net pre-tax gain of $76.3 million ($32.1 million after tax),
including the cost of the Company's purchase of interests held by third parties
in CCS and the amount payable under CCS's phantom equity plan prior to closing
under the sale transaction. The gain and the operations of CCS prior to the
sale are included in "Income from discontinued operations, net of tax" in the
Consolidated Statement of Operations. Certain contingent liabilities, primarily
related to tax matters of CCS, have been retained by the Company and are
included in other current liabilities in the Consolidated Balance Sheet.

RETAINED OBLIGATIONS

Under certain divestiture agreements, Grace has retained contingent obligations
that could develop into situations where accruals for estimated costs of
defense or loss would be recorded in a period subsequent to divestiture under
generally accepted accounting principles. Grace assesses its retained risks
quarterly and accrues amounts estimated to be payable related to these
obligations when probable and estimable.

During the years ended December 31, 2000 and 1999, Grace revised its estimate of
the outcome of certain retained obligations of discontinued operations based on
current circumstances. During 2000, as a result of the revised estimate, Grace
recorded a net charge of $6.2 million ($4.1 million after tax). This charge was
offset by a foreign pension premium refund and the reduction of previously
established accruals for environmental remediation. During 1999, the revised
estimate resulted in an additional charge of $25.7 million ($16.7 million after
tax). These charges are included in "Income from discontinued operations, net of
tax" in the Consolidated Statement of Operations.

```
====================================== =============== =========== =========
RESULTS OF DISCONTINUED OPERATIONS
(Dollars in millions)                       2000        1999        1998
-------------------------------------- ---------- ----------- ----------
Net sales .............................  $    --    $    --    $ 431.2
                                         ---------- ----------- ----------
(Loss) income from operations before
    taxes..............................       --      (17.7)      14.7
Income tax provision ..................       --        8.0      (13.8)
                                         ---------- ----------- ----------
(Loss) income from discontinued
    operations ........................       --       (9.7)       0.9
Net gains on dispositions of businesses       --       76.3        --
Provision for income taxes on
    dispositions of businesses.........       --      (44.2)       --
Other charges, net of tax.............        --      (16.7)       --
                                         ---------- ----------- ----------
TOTAL INCOME FROM
    DISCONTINUED OPERATIONS............  $    --    $    5.7   $    0.9
                                         ========== =========== =========
BASIC EARNINGS PER SHARE FROM
    DISCONTINUED OPERATIONS............  $    --    $   0.08   $   0.01
DILUTED EARNINGS PER SHARE FROM
    DISCONTINUED OPERATIONS............  $    --    $   0.08   $   0.01
====================================== ========== =========== =========
```

5. INCOME TAXES
----------------------------------------------------------------------------

The components of (loss) income from continuing operations before income taxes
and the related (provision for) benefit from income taxes are as follows:

```
====================================== =============== ============= ============
INCOME TAXES - CONTINUING OPERATIONS                                 (Restated)
    (Dollars in millions)          -      2000         1999          1998
-------------------------------------- --------------- ------------- ------------
(Loss) income from continuing operations before income taxes:
    Domestic.....................    $   (94.7)   $   135.9   $ (275.8)
    Foreign......................        75.0         67.5       52.6
                                     --------------- ------------- ----------
                                     $   (19.7)   $   203.4   $ (223.2)
                                     =============== ============= ==========
(Provision for) benefit from income taxes:
    Federal - current.............   $   (66.2)   $   (21.2)  $    51.2
    Federal - deferred............       39.4        (26.4)       7.0
    State and local - current.....      (20.0)        (3.5)      (1.3)
    Foreign - current.............      (21.8)       (23.1)     (21.9)
    Foreign - deferred............       (1.4)         1.0       (6.5)
                                     --------------- ------------- ----------
                                     $   (70.0)   $   (73.2)  $    28.5
                                     =============== ============= ==========
```

The components of (loss) income from consolidated operations before income
taxes and the related (provision for) benefit from income taxes are as follows:

```
====================================== =============== ============= ============
INCOME TAXES - CONSOLIDATED
    OPERATIONS (Dollars in millions)                                 (Restated)
                                         2000         1999          1998
-------------------------------------- --------------- ------------- ------------
(Loss) income from consolidated operations before income taxes:
    Domestic.....................    $   (94.7)   $   168.9   $(342.0)
    Foreign......................        75.0         67.5      77.1
                                     --------------- ------------- ----------
                                     $   (19.7)   $   236.4   $(264.9)
                                     =============== ============= =========
(Provision for) benefit from income taxes:
    Federal - current.............   $   (66.2)   $   (40.7)  $   63.1
    Federal - deferred............       39.4        (29.9)      13.7
    State and local - current.....      (20.0)        (7.8)      (3.6)
    Foreign - current.............      (21.8)       (23.1)     (36.4)
    Foreign - deferred............       (1.4)         1.0       (1.0)
                                     --------------- ------------- ---------
```

```
                                       $   (70.0)   $   (100.5)  $   35.8
=======================================  ============  ============  ========
```

At December 31, 2000 and 1999, net deferred tax assets consisted of the
following items:

| DEFERRED TAX ANALYSIS<br>(Dollars in millions) | 2000 | (Restated)<br>1999 |
|---|---|---|
| Liability for asbestos-related litigation..... | $   387.1 | $   379.4 |
| Net operating loss/tax credit<br>  carry forwards............................ | 178.6 | 90.6 |
| Deferred state taxes......................... | 90.2 | 90.2 |
| Liability for environmental remediation....... | 61.2 | 75.4 |
| Other post-retirement benefits................ | 66.1 | 70.5 |
| Deferred charges............................. | 54.4 | 58.6 |
| Reserves and allowances...................... | 43.3 | 56.5 |
| Research and development..................... | 32.6 | 31.7 |
| Pension benefit.............................. | 15.9 | 19.8 |
| Foreign loss/credit carry forwards........... | 10.0 | 8.7 |
| Other........................................ | 13.6 | 11.5 |
| Total deferred tax assets.................... | 953.0 | 892.9 |
| Asbestos-related insurance receivable......... | (123.1) | (121.7) |
| Pension assets............................... | (79.8) | (68.2) |
| Properties and equipment..................... | (52.1) | (58.4) |
| Other........................................ | (62.3) | (72.5) |
| Total deferred tax liabilities............... | (317.3) | (320.8) |
| Valuation allowance ......................... | (169.6) | (153.2) |
| Net deferred tax assets...................... | $   466.1 | $   418.9 |

The valuation allowance shown above arises from uncertainty as to the
realization of certain deferred tax assets, primarily foreign tax credit
carryforwards and state and local net operating loss carryforwards. Based upon
anticipated future results, Grace has concluded that it is more likely than not
that the balance of the net deferred tax assets, after consideration of the
valuation allowance, will be realized. However, given the Company's current net
operating loss carryforward position, such benefits are unlikely to be utilized
for the foreseeable future.

At December 31, 2000, there were $236.5 million of net operating loss
carryforwards, representing deferred tax assets of $82.8 million, with
expiration dates through 2020; $54.6 million of foreign tax credit
carryforwards with expiration dates through 2006; $6.6 million of general
business credit carryforwards with expiration dates through 2013; and $34.6
million of alternative minimum tax credit carryforwards.

The differences between the benefit (provision) for income taxes at the federal
income tax rate of 35% and the Company's overall income tax (provision) benefit
for continuing operations are summarized as follows:

F-17

| INCOME TAX (PROVISION) BENEFIT ANALYSIS (Dollars in millions) | 2000 | 1999 | (Restated) 1998 |
|---|---|---|---|
| Tax benefit (provision) at federal corporate rate.. | $  6.9 | $ (71.2) | $ 78.1 |
| Change in provision resulting from: Nontaxable income/non-deductible expenses................ | (1.6) | (0.1) | 5.2 |
| State and local income taxes, net of federal income tax benefit................. | (1.8) | (1.9) | (0.9) |
| Federal and foreign taxes on foreign operations....... | 1.5 | 0.5 | (33.1) |
| Tax and interest relating to tax deductibility of interest on COLI policy loans (See note 15)...... | (75.0) | -- | -- |
| Valuation allowance for tax assets.................. | -- | -- | (20.8) |
| Other, net.................. | -- | (0.5) | -- |
| Income tax (provision) benefit | $ (70.0) | $ (73.2) | $ 28.5 |

Federal, state, local and foreign taxes have not been provided on approximately
$145.4 million of undistributed earnings of certain foreign subsidiaries, as
such earnings are expected to be retained indefinitely by such subsidiaries for
reinvestment. The distribution of these earnings would result in additional
foreign withholding taxes of approximately $11.2 million and additional federal
income taxes to the extent they are not offset by foreign tax credits. It is
not practicable to estimate the total tax liability that would be incurred upon
such a distribution.

6. ACQUISITIONS
--------------------------------------------------------------------------------

During 2000, Grace completed six acquisitions for cash consideration of $49.0
million and an obligation related to intangible assets of $19.6 million. During
1999, Grace completed one acquisition for all cash. All acquisitions were
accounted for under the purchase method of accounting. The results of
operations of each acquisition are included in the Consolidated Financial
Statements from the date of each acquisition. Pro-forma results of operations
have not been presented because the effects of these acquisitions were not
material on either an individual or aggregate basis.

7. OTHER INCOME
--------------------------------------------------------------------------------

Components of other income are as follows:

| OTHER INCOME (Dollars in millions) | 2000 | 1999 | 1998 |
|---|---|---|---|
| Net gain on settlement of notes receivable................ | $  -- | $  18.5 | $  -- |
| Investment income........... | 25.5 | 14.0 | 8.0 |
| Gain on disposal of assets.................. | 5.5 | 13.6 | -- |
| Tolling revenue.............. | 2.3 | -- | 11.7 |

| | | | |
|---|---|---|---|
| Interest income.............. | 9.7 | 4.2 | 4.9 |
| Other miscellaneous income .. | 6.5 | 6.4 | 11.8 |
| Total.................... | $ 49.5 | $ 56.7 | $ 36.4 |

## 8. COMPREHENSIVE (LOSS) INCOME

The tables below present the pre-tax, tax and after tax components of Grace's other comprehensive (loss) income for the years ended December 31, 2000, 1999 and 1998:

| Year Ended<br>December 31, 2000<br>(Dollars in millions) | Pre-tax<br>Amount | Tax<br>(Expense)<br>Benefit | After<br>Tax<br>Amount |
|---|---|---|---|
| Unrealized (loss) on security: | | | |
| Change in unrealized appreciation during year..................... | $ (8.0) | $ 2.7 | $ (5.3) |
| Reclassification adjustment for gains realized in net income.......... | (19.0) | 6.6 | (12.4) |
| Net unrealized gains................ | (27.0) | 9.3 | (17.7) |
| Minimum pension liability adjustments | (2.2) | (1.6) | (3.8) |
| Foreign currency translation adjustments...................... | (34.1) | -- | (34.1) |
| Other comprehensive loss............ | $ (63.3) | $ 7.7 | $ (55.6) |

| Year Ended<br>December 31, 1999<br>(Dollars in millions) | Pre-tax<br>Amount | Tax<br>(Expense)<br>Benefit | After<br>Tax<br>Amount |
|---|---|---|---|
| Unrealized gains on security: | | | |
| Change in unrealized appreciation during year..................... | $ 11.5 | $ (4.0) | $ 7.5 |
| Reclassification adjustment for gains realized in net income.......... | (9.3) | 3.3 | (6.0) |
| Net unrealized gains................ | 2.2 | (0.7) | 1.5 |
| Minimum pension liability adjustments | 4.4 | (1.6) | 2.8 |
| Foreign currency translation adjustments...................... | (19.3) | -- | (19.3) |
| Other comprehensive loss............ | $ (12.7) | $ (2.3) | $ (15.0) |

| Year Ended December 31, 1998 (Dollars in millions) | Pre-tax Amount | Tax (Expense) Benefit | After Tax Amount |
|---|---|---|---|
| Unrealized gains on security: | | | |
| Change in unrealized appreciation during year | $ 29.5 | (10.3) | $ 19.2 |
| Reclassification adjustment for gains realized in net income | (4.1) | 1.4 | (2.7) |
| Net unrealized gains | 25.4 | (8.9) | 16.5 |
| Minimum pension liability adjustments | (20.0) | 9.4 | (10.6) |
| Foreign currency translation adjustments | (7.2) | -- | (7.2) |
| Other comprehensive loss | $ (1.8) | $ 0.5 | $ (1.3) |

## 9. OTHER BALANCE SHEET ACCOUNTS

| (Dollars in millions) | 2000 | 1999 |
|---|---|---|
| NOTES AND ACCOUNTS RECEIVABLE, NET | | |
| Trade receivables, less allowance of $3.9 (1999 - $3.8) | $ 172.2 | $ 165.7 |
| Other receivables, less allowances of $0.5 (1999 - $0.3) | 25.0 | 27.9 |
| | $ 197.2 | $ 193.6 |
| INVENTORIES (1) | | |
| Raw materials | $ 32.7 | $ 34.9 |
| In process | 22.4 | 16.7 |
| Finished products | 96.4 | 83.6 |
| General merchandise | 22.0 | 20.2 |
| Less: Adjustment of certain inventories to a last-in/first-out (LIFO) basis | (29.3) | (27.2) |
| | $ 144.2 | $ 128.2 |

(1)  Inventories valued at LIFO cost comprised 50.1% of total inventories at
      December 31, 2000 and 45.5% at December 31, 1999.

| | 2000 | 1999 |
|---|---|---|
| OTHER ASSETS | | |
| Plan assets in excess of defined benefit pension obligation | $ 200.1 | $ 298.9 |
| Unamortized costs of overfunded pension plans | 104.7 | (27.6) |
| Deferred charges | 44.3 | 52.4 |
| Long-term receivables, less allowances of $0.8 (1999 - $0.8) | 2.4 | 2.6 |
| Investments in unconsolidated affiliates | 3.6 | -- |
| Patents, licenses and other intangible assets | 39.2 | 20.2 |
| | $ 394.3 | $ 346.5 |
| OTHER CURRENT LIABILITIES | | |
| Retained obligations of divested businesses | $ 67.2 | $ 85.1 |
| Accrued compensation | 32.6 | 36.9 |
| Costs of business restructurings | 2.7 | 13.4 |
| Environmental remediation | 36.2 | 43.9 |
| Deferred compensation | 10.5 | -- |
| Accrued interest | 6.3 | 5.7 |
| Other accrued liabilities | 90.9 | 101.1 |
| | $ 246.4 | $ 286.3 |
| OTHER LIABILITIES | | |
| Other postretirement benefits | $ 189.1 | $ 201.4 |
| Environmental remediation | 138.7 | 171.6 |
| Defined benefit obligations in excess of pension plan assets | 167.8 | 161.8 |
| Unamortized costs of underfunded pension plans | (36.0) | (33.1) |
| Deferred compensation | 9.5 | 32.1 |
| Long-term self insurance reserve | 5.6 | 7.8 |
| Retained obligations of divested businesses | 10.9 | 14.0 |
| Taxes payable, including interest | 103.0 | -- |
| Other accrued liabilities | 27.0 | 16.6 |
| | $ 615.6 | $ 566.2 |

F-19

## 10. PROPERTIES AND EQUIPMENT

| PROPERTIES AND EQUIPMENT (Dollars in millions) | 2000 | 1999 |
|---|---|---|
| Land.......................................... | $   16.3 | $   18.7 |
| Buildings..................................... | 329.6 | 330.9 |
| Information technology equipment.............. | 67.5 | 63.2 |
| Machinery, equipment and other............... | 1,076.5 | 1,061.0 |
| Projects under construction................... | 47.2 | 51.8 |
| Properties and equipment, gross.............. | 1,537.1 | 1,525.6 |
| Accumulated depreciation and amortization.... | (935.4) | (908.3) |
| Properties and equipment, net................ | $  601.7 | $  617.3 |

Interest costs are incurred in connection with the financing of certain assets prior to placing them in service. Grace capitalized interest costs for continuing operations of $1.0 million in 2000, $0.8 million in 1999, and $2.8 million in 1998. Depreciation and lease amortization expense relating to properties and equipment amounted to $84.6 million in 2000, $86.6 million in 1999 and $89.6 million in 1998. Grace's rental expense for operating leases amounted to $18.0 million in 2000, $15.6 million in 1999 and $15.7 million in 1998. See Note 15 for information regarding contingent rentals.

At December 31, 2000, minimum future payments for operating leases were (dollars in millions):

| MINIMUM FUTURE PAYMENTS UNDER OPERATING LEASES | |
|---|---|
| 2001.................................................... | $   10.2 |
| 2002.................................................... | 9.2 |
| 2003.................................................... | 9.0 |
| 2004.................................................... | 8.7 |
| 2005.................................................... | 8.7 |
| Total minimum lease payments............................ | $   45.8 |

The above minimum lease payments are net of anticipated sublease income of $13.5 million in 2001, $13.6 million in 2002, $6.9 million in 2003, $1.8 million in 2004 and $0.7 million in 2005.

## 11. LIFE INSURANCE

Grace is the beneficiary of life insurance policies on certain current and former employees with benefits in force of approximately $2,286 million and a net cash surrender value of $104.3 million at December 31, 2000. The policies were acquired to fund various employee benefit programs and other long-term liabilities and are structured to provide cash flow (primarily tax-free) over an extended number of years. The following table summarizes activity in these policies for 2000 and 1999:

| ACTIVITY SUMMARY - LIFE INSURANCE (Dollars in millions) | 2000 | 1999 | 1998 |
|---|---|---|---|
| Earnings on policy assets.............. | $   36.8 | $   11.6 | $   33.8 |
| Interest on policy loans............... | (30.4) | (29.5) | (30.8) |
| Policy loan repayments................. | 5.2 | 3.4 | 1.6 |
| Annual premium......................... | 2.5 | 2.4 | 3.8 |
| Other activity........................ | 8.6 | (3.3) | 0.4 |
| Change in net cash value.............. | $   22.7 | $    4.6 | $    8.8 |
| Gross cash value....................... | $  452.4 | $  432.4 | $  431.8 |
| Principal - policy loans............... | (325.8) | (331.0) | (334.3) |
| Accrued interest - policy loans....... | (22.3) | (19.8) | (20.5) |
| Net cash value......................... | $  104.3 | $   81.6 | $   77.0 |
| Insurance benefits in force........... | $ 2,286.0 | $ 2,309.0 | $2,325.0 |
| Tax-free proceeds received............. | $   18.7 | $   15.3 | $    4.6 |

Policy loans bore interest at an average annualized rate of 9.2% during the year ended December 31, 2000, compared to an average of 8.4% for the year ended December 31, 1999. Policy assets are invested primarily in general accounts of the insurance carriers and earned returns at average annualized rates of 8.2% for 2000 and 7.3% for 1999.

The Company's financial statements display income statement activity and balance sheet amounts on a net basis, reflecting the contractual interdependency of policy assets and liabilities.

## 12. DEBT AND EXTRAORDINARY ITEM

===============================================================================

**COMPONENTS OF DEBT**

| (Dollars in millions) | 2000 | 1999 |
|---|---|---|

**SHORT-TERM DEBT**

| | | |
|---|---|---|
| Bank borrowings (6.9% weighted average interest rate at December 31, 2000) (1)............ | $ 400.0 | $ -- |
| 8.0% Notes Due 2004 (3)...................... | 5.7 | -- |
| 7.75% Notes Due 2002 (3)..................... | 2.0 | -- |
| Other short-term borrowings (2).............. | 14.2 | 13.0 |
| | $ 421.9 | $ 13.0 |

**LONG-TERM DEBT**

| | | |
|---|---|---|
| Bank borrowings (5.6% weighted average interest rate at December 31, 1999) (1)............ | $ -- | $ 89.7 |
| 8.0% Notes Due 2004 (3)...................... | -- | 5.7 |
| 7.4% Notes Due 2000 (3)...................... | -- | 24.7 |
| 7.75% Notes Due 2002 (3)..................... | -- | 2.0 |
| Sundry indebtedness with various maturities through 2004............................. | -- | 1.1 |
| | $ -- | $ 123.2 |
| Full-year weighted average interest rates on total debt (4)............................ | 7.0% | 6.3% |

===============================================================================

(1)  Under bank revolving credit agreements in effect at December 31, 2000,
     Grace could borrow up to $500.0 million at interest rates based upon the
     prevailing prime, federal funds and/or Eurodollar rates. Of that amount,
     $250.0 million was available under short-term facilities expiring, unless
     extended, in May 2001, and $250.0 million was available under a long-term
     facility expiring in May 2003. As a result of the Filing, Grace is in
     default of the bank revolving credit agreements and accordingly, the
     balance has been reported as short-term debt.

(2)  Represents borrowings under various lines of credit and other
     miscellaneous borrowings, primarily of non-U.S. subsidiaries.

(3)  During 1994, Grace sold $300.0 million of 8.0% Notes Due 2004 at an
     initial public offering price of 99.794% of par, to yield 8.0%; during
     1993, Grace sold at par $300.0 million of 7.4% Notes Due 2000; and during
     1992, Grace sold at par $150.0 million of 7.75% Notes Due 2002. Interest
     on these notes is payable semiannually, and the notes may not be redeemed
     prior to maturity; however, Grace has repurchased notes from time to time
     in response to unsolicited offers. As a result of the Filing, Grace is in
     default on the Notes and accordingly, the balance has been reported as
     short-term debt.

(4)  Computation includes interest expense allocated to discontinued operations
     (primarily the Packaging Business) and excludes interest expense and
     related financing costs related to the Company's receivables financing
     program.

On February 1, 2000, Grace refinanced the 7.4% Notes Due 2000 using the
long-term credit facility expiring May 2003. As a result of the Filing, all of
the Company's debt is callable and therefore not subject to scheduled
maturities.

The amounts of interest expense allocated to discontinued operations (primarily
the Packaging Business) were $13.3 million in 1998. Interest payments amounted
to $23.7 million in 2000, $8.2 million in 1999 and $47.1 million in 1998,

including amounts allocated to discontinued operations.

As discussed in Notes 1 and 4 above, Grace received a cash transfer of $1,256.6 million in connection with the Spin-off and Merger. Grace used the transferred funds to repay substantially all of its debt. On March 31, 1998, Grace used $600.0 million of the cash transfer to repay bank borrowings. On April 1, 1998, Grace repaid $611.3 million principal amount of 8.0% Notes Due 2004, 7.4% Notes Due 2000 and 7.75% Notes Due 2002 (collectively, Notes), pursuant to a tender offer that expired on March 27, 1998. On April 1, 1998 Grace also repaid $3.5 million principal amount of Medium-Term Notes, Series A (MTNs) and $6.0 million of sundry indebtedness.

As a result of this early extinguishment of debt, Grace incurred a pre-tax charge of $56.4 million ($35.3 million after-tax, or a basic and diluted loss per share of $0.47) for premiums paid in excess of the Notes' principal amounts and other costs incurred in connection with the purchase of the Notes and MTNs (including the costs of settling related interest rate swap agreements). These costs are presented as an extraordinary item in the Consolidated Statement of Operations.

13. FINANCIAL INSTRUMENTS
--------------------------------------------------------------------------------

DEBT AND INTEREST RATE SWAP AGREEMENTS

Grace had no outstanding financial derivative instruments at December 31, 2000.

In conjunction with the Packaging Business transaction (see Notes 1 and 4), Grace settled substantially all of its debt and accordingly, also terminated all outstanding interest rate swap agreements. In addition, deferred gains on interest rate agreements associated with the debt retired were also recognized. The cost of terminating the interest rate swap positions was $22.8 million. The deferred gains recognized were $15.1 million and are included in the extraordinary loss from early extinguishment of debt found in the Consolidated Statement of Operations for the year ended December 31, 1998.

FAIR VALUE OF DEBT AND OTHER FINANCIAL INSTRUMENTS

At December 31, 1999, the fair value of Grace's long-term debt approximated the recorded value $123.2 million. Fair value is determined based on expected future cash flows (discounted at market interest rates), quotes from financial institutions and other appropriate valuation methodologies. The estimates of fair value are not necessarily indicative of the costs of the offer to purchase the Notes and the purchase of the MTNs.

At December 31, 2000 and 1999, the recorded values of other financial
instruments such as cash, short-term investments, trade receivables and
payables and short-term debt approximated their fair values, based on the
short-term maturities and floating rate characteristics of these instruments.

SALE OF ACCOUNTS RECEIVABLE

Prior to the Filing, Grace sold, on an ongoing basis, an approximate $100
million pool of its eligible trade accounts receivable to a multi-seller
receivables company (the "conduit") through a wholly owned bankruptcy-remote
special purpose subsidiary (the "SPS"). Upon sale of the receivables, the SPS
held a subordinated retained interest in the receivables. The estimated fair
value of the subordinated interest, excluding allowance for doubtful accounts,
was $33.2 million at December 31, 2000 and $28.1 million at December 31, 1999,
and was included in other current assets. Under the terms of the agreement, new
receivables are added to the pool as collections reduce previously sold
receivables. Grace services, administers and collects the receivables on behalf
of the SPS and the conduit. Cash remittances, net of proceeds received from the
conduit, during 2000 were $17.0 million. Proceeds received from the conduit, net
of cash remittances, since program inception aggregated $56.3 million. The
proceeds were used for the reduction of other short-term obligations and are
reflected as operating cash flows in the Consolidated Statement of Cash Flows.
Grace has recorded net losses of $5.0 million in 2000 and $3.9 million in 1999
from the corresponding sales to the conduit. Due to the Filing, Grace is no
longer selling receivables to the conduit.

CREDIT RISK

Trade receivables potentially subject Grace to credit risk, given
concentrations in the petroleum and construction industries. Grace's credit
evaluation policies, relatively short collection terms and minimal credit
losses mitigate credit risk exposures. Grace does not require collateral for
its trade accounts receivable.

14. RESTRUCTURING COSTS AND ASSET IMPAIRMENTS
--------------------------------------------------------------------------------

RESTRUCTURING COSTS

During 2000, Grace recorded a net reduction of previous restructuring charges
of $3.9 million to account for new information related to sublease agreements
that lowered previously reserved lease termination costs. This amount is
reported in "Selling, general and administrative expenses" in the Consolidated
Statement of Operations.

During 1999, Grace recorded a net restructuring charge of $2.6 million ($1.7
million after tax) in continuing operations. In the first quarter, a
restructuring charge of $4.3 million ($2.8 million after tax) was recorded for
additional severance cost directly related to the productivity effectiveness
program implemented in the fourth quarter of 1998 (discussed below). The
restructuring charge was offset by the reversal of $1.7 million of prior period
restructuring charges primarily related to the execution of a sublease
agreement for previously reserved lease termination costs. Such amounts are
reported in "Selling, general and administrative expenses" in the Consolidated
Statement of Operations.

In the fourth quarter of 1998, Grace recorded a net restructuring charge of
$19.8 million ($13.3 million after tax) in continuing operations related to the
implementation of a productivity effectiveness program. This program was
designed to increase Grace's overall administrative and operating
effectiveness, thereby reducing costs. These charges consisted primarily of
severance costs associated with the reduction of approximately 350 salaried
employees and approximately 70 hourly employees at the business units and
within the corporate organization. During 1999, it was determined that the
actual number of employees to receive severance costs would be 418. Of this
418, 17 employees are scheduled to receive full cash payments in 2001. Also
included in this charge was a provision for the severance costs of
approximately 60 employees for the Boca Raton, Florida office, as Grace
relocated its headquarters to the Davison Chemicals offices in Columbia,
Maryland. Of this 60, 18 remaining employees are scheduled to receive full cash
payments in 2001. The restructuring charge was offset by the reversal of $5.9
million of prior period restructuring charges related primarily to the decision
not to close certain office facilities that will now be used by the relocated
headquarters and to management's reevaluation of plans to close certain other
facilities subsequent to the Spin-off and Merger (see Notes 1 and 4).

The components of the restructuring charges recorded in 2000, 1999 and 1998,
spending and other activity during those years, and the remaining reserve
balances included in "Other current liabilities" and "Other liabilities" at
December 31, 2000 and 1999, were as follows:

| RESTRUCTURING CHARGES<br>(Dollars in millions) | Employee<br>Termi-<br>nation<br>Costs | Plant/<br>Office<br>Closures | Total |
|---|---|---|---|
| **1998** | | | |
| Restructuring reserve<br>  at December 31, 1997........... $ | 20.7 | $    14.9 | $    35.6 |
| Provisions recorded<br>  in continuing operations ....... | 20.4 | 5.3 | 25.7 |
| Reversal of prior period<br>  restructuring reserves.......... | -- | (5.9) | (5.9) |
| Cash payments..................... | (17.3) | (4.8) | (22.1) |
| Restructuring reserve<br>  at December 31, 1998........... $ | 23.8 | $    9.5 | $    33.3 |
| **1999** | | | |
| Provisions recorded in<br>  continuing operations .......... $ | 4.3 | $    -- | $    4.3 |
| Reversal of prior period<br>  restructuring reserves ......... | -- | (1.7) | (1.7) |
| Cash payments..................... | (19.0) | (2.1) | (21.1) |
| Restructuring reserve<br>  at December 31, 1999........... $ | 9.1 | $    5.7 | $    14.8 |
| **2000** | | | |
| Reversal of prior period<br>  restructuring reserves ......... $ | (1.1) | $    (2.8) | $    (3.9) |
| Cash payments..................... | (5.6) | (1.8) | (7.4) |
| RESTRUCTURING RESERVE<br>  AT DECEMBER 31, 2000 ........... $ | 2.4 | $    1.1 | $    3.5 |

## 15. COMMITMENTS AND CONTINGENT LIABILITIES

### ENVIRONMENTAL

Grace is subject to loss contingencies resulting from extensive and evolving
federal, state, local and foreign environmental laws and regulations relating
to the generation, storage, handling, discharge and disposition of hazardous
wastes and other materials. Grace accrues for anticipated costs associated with
investigatory and remediation efforts where an assessment has indicated that a
liability has been incurred and the amount of loss can be reasonably estimated.
These accruals do not take into account any discounting for the time value of
money. At December 31, 2000, Grace's liability for environmental investigatory
and remediation costs related to continuing and discontinued operations totaled
$174.9 million, as compared to $215.5 million at December 31, 1999. In the
fourth quarter of 1998, Grace entered into a settlement with one of its
insurance carriers which provided for a $57.6 million ($37.4 million after tax)
lump-sum cash payment to Grace for previously incurred costs related to
environmental remediation. Also during the fourth quarter of 1998, Grace
recorded a $19.4 million ($12.6 million after tax) charge to reflect a change
in the environmental remediation strategy for a particular site. The 1998
activity reflects a net pre-tax benefit of $38.2 million ($24.8 million after
tax) related to environmental issues.

Grace's environmental liabilities are reassessed whenever circumstances become
better defined or remediation efforts and their costs can be better estimated.
These liabilities are evaluated quarterly, based on currently available