# EXHIBIT N

United States Bankruptcy Court
For The District of Delaware

In re:

W. R. GRACE & CO., et al.,

Bankruptcy Case No. 00-0_____ (___)

01-1139

Debtors.

---

W. R. GRACE & CO., et al.,

    Plaintiffs,

v.

MARGARET CHAKARIAN, et al.,
and JOHN DOES 1-1000,

    Defendants.

Adversary Proceeding No. A-01-771

## SUMMONS AND NOTICE

YOU ARE SUMMONED and required to file a response to the attached complaint on or before 30 days after the date of issuance of this summons, except that the United States or an officer or agency thereof shall file a response to the complaint within 35 days (Responses due May 24, 2001). The response shall be filed with the United States Bankruptcy Court for the district of Delaware, 824 North Market Street, Wilmington, DE 19801.

At the same time, you must also serve a copy of the response upon plaintiffs' attorneys:

| | |
|---|---|
| Laura Davis Jones, Esquire | James H.M. Sprayregen, Esquire |
| Pachulski, Stang, Ziehl, Young & Jones | Kirkland & Ellis |
| 919 North Market Street, 16th Floor | 200 East Randolph Drive |
| P.O. Box 8705 | Chicago, Illinois 60601 |
| Wilmington, DE 19899-8705 | Telephone: (312) 861-2000 |
| Telephone: (302) 652-4100 | Facsimile: (312) 861-2200 |
| Facsimile: (302) 652-4400 | |

YOU ARE NOTIFIED that a PRE-TRIAL CONFERENCE will be held on a date and time to be determined at the U.S. Court House, Room 4B, 844 King Street, Wilmington, DE 19801.

YOU ARE NOTIFIED that a TRIAL will be held on _____ at _____ in the United States Bankruptcy Court, 824 Market Street, Wilmington, DE 19801.
FAILURE TO RESPOND TO THE SUMMONS MAY RESULT IN THE ENTRY OF A DEFAULT JUDGMENT AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

David Bird
Clerk of the Court

Date: April 10, 2001

By: _____
   Deputy Clerk

WLM\120512.1
68700-064\DOCS_DE:19898.1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 01-01139 (JJF) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| W. R. GRACE & CO., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -against- | ) | |
| | ) | Adversary No. 01-771 |
| MARGARET CHAKARIAN, et al. and JOHN DOES 1-1000, | ) | |
| | ) | |
| Defendants. | ) | |

VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

W. R. Grace & Co. ("Grace") and certain of its subsidiaries listed above, (collectively, the "Debtors"), as Debtors and debtors-in-possession in the above-captioned Chapter 11 Cases, and plaintiffs in the above-captioned adversary proceeding, allege for their Verified Complaint,[2] upon knowledge of their own acts and upon information and belief as to all other matters, as follows:

## SUMMARY OF ACTION

1. This is an adversary proceeding brought pursuant to Fed. R. Bankr. P. 7001(7) and (9) and Fed. R. Bankr. P. 7065, for a judgment:

   (i) enjoining the Defendants from prosecuting pending asbestos-related actions (the "Asbestos Actions"), and commencing new actions or proceedings asserting asbestos-related claims (the "Future Actions"), except pursuant to the terms of any plan or plans of reorganization to be confirmed in these cases, against three categories of persons or entities:

   a) Sealed Air Corporation, Sealed Air Corporation (US), and Cryovac, Inc. (collectively "Sealed Air");

   b) National Medical Care, Inc.; Fresenius A.G.; Fresenius, U.S.A., Inc.; Fresenius Medical Care, Inc.; and Fresenius National Medical Care, Inc. (collectively, "Fresenius");

   c) certain subsidiaries and affiliates of W.R. Grace & Co. that are not Chapter 11 debtors, including Advanced Refining Technologies LLC, Advanced Refining Technologies LP, Advanced Refining Technologies Management, Inc., Carbon Dioxide Slurry Systems LP, Construction Products Dubai, Inc., Grace Asia Pacific, Inc., Grace Chemicals, Inc., Grace Collections, Inc., Grace Germany Holdings, Inc., Grace Foundation Inc., Grace Management Services, Inc., Grace Offshore Turnkey, Grace Receivables Purchasing, Inc., Ichiban Chemical Co., Inc., Grace Canada, Inc. as well as Debtors' current and former officers, directors and employees (collectively, "Non-Debtor Affiliates").[3]

---

[2] Attached to this Complaint is the Declaration of David B. Siegel verifying the allegations made herein.

[3] These three groups -- Sealed Air, Fresenius and the Non-Debtor Affiliates -- may collectively be referred to as "Affiliated Entities."

(ii) enjoining the continued prosecution of the Abner v. Grace fraudulent transfer case pending in California Superior Court against Sealed Air and Fresenius,[4] and enjoining the commencement of additional fraudulent transfer cases against Fresenius and/or Sealed Air except pursuant to the terms of any plan or plans of reorganization to be confirmed in these cases.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),(B) and (O).

3. Venue of this action in this district is proper pursuant to 28 U.S.C. § 1409.

4. The statutory predicates for the relief requested herein are Sections 362(a)(1) and (a)(3) and 105(a) of the Bankruptcy Code, Fed. R. Bankr. P. 7065 and the All Writs Act, 28 U.S.C. § 1651.

## THE PARTIES

5. The Debtors are the plaintiffs in this adversary proceeding.

6. The named Defendants are the plaintiffs in the Asbestos Actions. A list of the names of the Defendants is attached hereto as Exhibit A. This list contains several hundred thousand names and would require almost a thousand pages to print. Accordingly, plaintiffs have attached a compact disc containing all of defendants names in electronic format. A hard copy will be provided to the Court upon request.

---

[4]Contemporaneous with the filing of the Chapter 11 Cases, Debtors are removing this case and seeking to have it transferred to the District of Delaware.

7. John Does 1-1000 are named as Defendants as the Debtors are unable to predict the identity of plaintiffs that will attempt to pursue future asbestos-related claims against Affiliated Entities.

## FACTUAL BACKGROUND

### The Chapter 11 Filings

8. On the date hereof (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). Contemporaneously herewith, the Debtors filed a motion to consolidate, for administrative purposes only, the Chapter 11 Cases. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors-in-possession.

### Summary of Operations

9. The Debtors engage in specialty chemicals and materials businesses, operating on a worldwide basis, with their corporate headquarters located in Columbia, Maryland. The Debtors' parent company, W. R. Grace & Co. ("Grace"), conducts substantially all of its business through a direct, wholly owned subsidiary – W. R. Grace & Co. - Conn. ("Grace-Conn"). Grace-Conn is a global holding company that owns substantially all of the assets, properties and rights of Grace either directly or through its subsidiaries (many of which are also debtors in the Chapter 11 Cases).

10. Grace and its affiliates employ approximately 6,550 full and part time employees of which approximately 3,750 are employed by the Debtors. The Debtors and their non-debtor subsidiaries and affiliates operate and report on a consolidated basis. For the fiscal year 2000, on a consolidated basis, Grace reported a net loss of $89.7 million (resulting from a $294 million

asbestos-related charge to earnings recorded in the fourth quarter of 2000) from $1.59 billion in revenues. For the fiscal year 1999, on a consolidated basis, Grace reported net income of $135.9 million from $1.55 billion in revenues.

### The Debtors' History

11. In 1854, William Russell Grace founded W. R. Grace & Co. in Peru. In 1865, Grace relocated its headquarters to New York City, operating as a trading and shipping company with South America and Europe. Grace incorporated in 1899 in Connecticut. Through the first half of the 20th century, Grace expanded its South American businesses into manufacturing and established U.S. operations ranging from agricultural fertilizers to banking. In 1954, Grace acquired Davison Chemical Company and Dewey and Almy Chemical Company, establishing the foundation for the Debtors' catalysts, silicas, packaging, construction and container product lines. Over the following decades, Grace expanded these businesses into more than 50 countries.

12. In 1988, Grace reincorporated in New York through the formation of a new holding company, also named W. R. Grace & Co. ("Grace-New York"). The "old" Grace was renamed W. R. Grace & Co.-Conn. and continued to exist as a subsidiary of Grace-New York. Grace-Conn is the same Connecticut corporation that is the principal operating subsidiary of Grace today.

13. Grace's current operations are conducted primarily through two business units – Davison Chemicals and Performance Chemicals. Davison Chemicals is a leading global supplier of refining and chemical catalysts and silica-based products. Davison Chemicals' refining catalysts are critical in transforming hydrocarbons into finished goods such as gasoline, jet fuel and diesel fuel. Davison Chemicals' chemical catalysts are essential components in the manufacture of

polyethylene resins used to produce such products as plastic film, high performance pipe and household containers. Davison Chemicals' silica-based products are used in a wide variety of industrial and consumer applications such as coatings, food processing, plastics, absorbents and personal care products.

14. Grace's Performance Chemicals business unit produces specialty construction chemicals and building materials used primarily by the commercial construction industry and container sealants and coatings for food, beverage and other packaging. Performance Chemicals' construction chemicals are used to add strength, control corrosion and enhance the handling and application of concrete. Performance Chemicals' building materials are used worldwide for waterproofing and to provide fireproofing protection to structural steel. Performance Chemicals' container products are used to seal beverage and food containers, to protect metal packaging from corrosion and to protect the contents of such packages from the effects of metal. Performance Chemicals' rigid package sealing is used to protect safety and freshness in billions of cans annually.

### The National Medical Care/Fresenius Transaction

15. In 1996, Grace-New York combined its health care business with a subsidiary of Fresenius Medical Care AG, a German company. In connection with this transaction, Grace's chemicals and packaging businesses were transferred to Grace's shareholders through a newly formed subsidiary of Grace-New York, Grace Holding, Inc., a Delaware corporation. ("Grace-Delaware I"). In addition, a cash distribution of approximately $2.3 billion was made to Grace-Conn by the merged health care company. Following the transaction, Grace-Delaware I was renamed W. R. Grace & Co., with Grace-Conn and the other Debtors continuing to exist as its subsidiaries. Grace-New York was renamed Fresenius Medical Care Holding, Inc.

16. Upon information and belief, Fresenius has never mined, milled, manufactured, sold or distributed asbestos or any asbestos-containing products. Fresenius has not been sued in the Asbestos Actions on account of its own conduct or products; rather the allegations against Fresenius arise solely from the 1996 transaction. Plaintiffs in the Abner action in California Superior Court allege that Fresenius is responsible for the Debtors' asbestos liabilities under state fraudulent transfer law.

17. Upon information and belief, Fresenius does not possess information probative of the underlying asbestos-related claims against the Debtors, nor does Fresenius have possession, custody or control over the Debtors' documents, employees, or other witnesses that would be necessary in defending any asbestos-related claims.

18. Grace's former health care business was never involved in the manufacture or sale of asbestos containing products.

### The Sealed Air Transaction

19. In 1998, Grace-Delaware I combined its flexible packaging business with Sealed Air Corporation, a Delaware corporation. In connection with this transaction, Grace's chemicals businesses were transferred to Grace's shareholders through a new Grace subsidiary named Grace Specialty Chemicals, Inc., a Delaware corporation ("Grace-Delaware II"). In addition, a cash distribution of approximately $1.2 billion was made to Grace-Conn by the merged packaging company. Following this transaction, Grace-Delaware II was renamed W. R. Grace & Co., with Grace-Conn and the other Debtors continuing to exist as its subsidiaries. Grace-Delaware I was then renamed Sealed Air Corporation.

20. Sealed Air manufactures and sells a range of protective food and specialty packaging materials and systems throughout the world, including Bubble Wrap® packaging materials.

21. Upon information and belief, Sealed Air has never mined, milled, manufactured, sold or distributed asbestos or any asbestos-containing products. Sealed Air has not been sued in the Asbestos Actions on account of its own conduct or products; rather the allegations against Sealed Air arise solely from the 1998 Transaction. Defendants allege that Sealed Air is responsible for the Debtors' asbestos liabilities under either common law principles of successor liability or fraudulent transfer law.

22. Upon information and belief, Sealed Air does not possess information probative of the underlying asbestos related claims against the Debtors, nor does Sealed Air have possession, custody or control over the Debtors' documents, employees, or other witnesses that would be necessary in defending any asbestos-related claims.

23. Grace's former flexible packaging business was never involved in the manufacture or sale of asbestos containing products.

### The Non-Debtor Affiliates

24. The Non-Debtor Affiliates are subsidiaries, joint ventures or other affiliates of Debtors that have not filed bankruptcy cases, as well as current and former officers, directors and employees of Debtors.

25. The Non-Debtor Affiliates have never mined, milled, manufactured, sold or distributed asbestos or any asbestos-containing products, except for certain individuals that are Non-

Debtor Affiliates who may have done so in their capacity as employees of one or more of the Debtors.

26. The Non-Debtor Affiliates do not possess information probative of the underlying asbestos-related claims against the Debtors, nor do the Non-Debtor Affiliates have possession, custody or control over the Debtors' documents, employees, or other witnesses that would be necessary in defending any asbestos-related claims. Certain present and former officers, directors and employees of the Debtors may have probative information, but are nevertheless entitled to the injunctive relief sought because their affiliation to the Debtors is the only basis for any purported claims against them. Certain of the Debtors have also agreed to indemnify certain of those directors, officers and employees.

27. In short, the Non-Debtor Affiliates have no relationship whatsoever to the asbestos-related claims, other than their affiliation to the Debtors.

### THE ASBESTOS LITIGATION

28. Until 1973, the Debtors manufactured certain products with commercially added asbestos. Until 1990, the Debtors manufactured certain products from vermiculite from Grace's Libby, Montana mine, a mineral containing naturally occurring asbestos impurities. These impurities were largely removed during the processing of the vermiculite. Nonetheless, as a result of prior business operations, the Debtors have for years confronted a substantial volume of claims alleging asbestos-related injuries.

29. These asbestos claims can be divided into four general categories: claims for bodily injury from asbestos exposure, property damage claims, attic insulation claims and claims arising out of vermiculite mining and processing operations.

- *Bodily injury claims* allege health effects from exposure to the Debtors' asbestos containing products, such as fireproofing materials.

- *Property damage claims* generally seek payment for the cost of removing or containing asbestos in buildings.

- *Attic fill insulation claims* have been brought as purported class actions on behalf of homeowners who used the Debtors' attic insulation products and are now seeking damages and other relief, including removal of the attic insulation allegedly containing asbestos.

- The claims arising from the Debtors' *vermiculite operations* allege personal injury and property damage from exposure to naturally occurring asbestos in vermiculite in connection with the mining and processing of the vermiculite into finished products.

30. In total, the Debtors have been served with 324,000 asbestos-related claims cumulatively through February 2001, of which approximately 127,000 remain outstanding.

31. As of the date of this filing, Sealed Air is a named defendant in over 6,000 Asbestos Actions in which the Debtors have also been named as defendants, including eight purported class actions, one of which has been certified.

32. Fresenius, Sealed Air, and certain of the Debtors are named as defendants in a purported nationwide class action filed in the Superior Court of California, San Francisco County, alleging that the arm's-length transactions between Grace and Fresenius Medical Care A.G. in 1996 and between Grace and Sealed Air Corporation in 1998 were fraudulent transfers designed to frustrate litigants with alleged asbestos-related claims (the "fraudulent transfer action"). The lawsuit purports to be brought on behalf of all persons who currently have lawsuits on file in the United States and that are pursuing unsatisfied tort claims relating to alleged asbestos exposure claims against the Debtors. Simultaneous with the filing of this adversary proceeding, Grace is removing

that action to the Bankruptcy Court for the Northern District of California and will be seeking to have that action transferred to the District of Delaware.

33. Grace's Non-Debtor Affiliates are not currently named in any Asbestos Actions, except for certain former employees of one or more of the Debtors.

34. Absent the requested relief, as a consequence of Debtors' Chapter 11 Cases, it is likely that the Affiliated Entities will be named in many of the tens of thousands of actions currently pending against the Debtors and that asbestos claimants may seek to proceed against the Debtors' former employees in the Asbestos Actions in order to access the Debtors' remaining insurance coverage. It is also likely that the Affiliated Entities will be named in thousands of future cases. In previous asbestos-related bankruptcies, asbestos claimants have deluged any and all entities with any connection to the debtor companies with asbestos-related claims once the debtor companies filed chapter 11 cases.

## THE NEED FOR RELIEF UNDER CHAPTER 11

35. While, for years, the Debtors have faced a substantial volume of asbestos claims, they were able to resolve such claims primarily through negotiated settlements. Despite the high percentage of claims the Debtors believed to be without merit, the Debtors agreed to settle most claims rather than incur the significant costs and practical difficulties associated with litigating thousands of independent claims at one time in multiple jurisdictions nationwide. While the Debtors also believe that the volume of claims filed against them historically, and the amounts paid in settlement thereof, is not indicative of the Debtors' true liability - the asbestos claims resolution process has not reflected actual legal liability for years - in very recent months, the number of claims has risen dramatically without any basis in science, medicine or law. The recent dramatic influx of

38. The Debtors further apply for the issuance of a temporary restraining order to restrain the Defendants from continued prosecution of the Asbestos Actions and Future Actions between the date of the filing of this Complaint and the date the Court rules on the Debtors' request for a preliminary injunction.

**PLAINTIFFS' FIRST CLAIM FOR RELIEF**
(Automatic Stay Declaratory Judgment)

39. The Debtors repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

40. An injunction is warranted in this case because the Affiliated Entities' purported liability is identical to, and wholly derivative of, Debtors' alleged liability. The Affiliated Entities face no potential liability based on their own products or conduct; all Asbestos Claims against Affiliated Entities are based solely on the Debtors' conduct and products. Because there is an identity of interest between Debtors and the Affiliated Entities, the Asbestos Actions are in reality claims against the Debtors, and therefore, should be subject to the automatic stay. If the automatic stay is not extended to Asbestos Actions against Affiliated Entities, Debtors will suffer irreparable harm and reorganization under chapter 11 will be extremely difficult, if not impossible. The potential irreparable harm faced by Debtors includes:

41. <u>Evidentiary Prejudice</u>: The Debtors and the Affiliated Entities deny all liability with respect to the Asbestos Actions and all liability with respect to Future Actions, and believe that they have meritorious defenses to such claims. Nevertheless, adverse resolution in Asbestos Actions and Future Actions against Affiliated Entities of critical fact issues could hamstring the Debtors' litigation of similar or substantially identical fact issues.

new claims has severed whatever tenuous connection to actual liability that may have existed in earlier years and an effective defense of such dispersed and voluminous litigation is simply not feasible. The dramatic increase in asbestos claims and the increasing threat of adversarial litigation have impaired the Debtors' ability to obtain financing, consumed management's time and attention, and threatened the health of the Debtors' core business operations.

36.     Under these circumstances, the Debtors have concluded that there is no other way to define and resolve their asbestos liability, while preserving the value and viability of their core business operations, other than through a reorganization under chapter 11 of the Bankruptcy Code.

## NATURE OF RELIEF REQUESTED

37.     Pursuant to 11 U.S.C. § 362(a), asbestos-related personal injury and property damage actions have been stayed as against the Debtors. By this Complaint, the Debtors seek this Court's declaration that, pursuant to §§ 362(a)(1) and (a)(3) of the Code, continued prosecution of the Asbestos Actions against the Affiliated Entities is stayed during the pendency of the Debtors' Chapter 11 Cases. The Debtors also seek a declaration that, pursuant to §§ 362(a)(1) and (a)(3), commencement or continuation of Future Actions against the Affiliated Entities are stayed during the pendency of Debtors' Chapter 11 Cases. In addition, pursuant to §§ 105, 362 and 28 U.S.C. § 1651, the Debtors seek to enjoin prosecution of the Asbestos Actions and Future Actions against the Affiliated Entities during the pendency of the Debtors' Chapter 11 Cases. Finally, Debtors seek to enjoin the currently pending and all future fraudulent transfer lawsuits against Sealed Air and/or Fresenius.

42. <u>Indemnity Agreements</u>: Debtors have indemnity agreements with Sealed Air and Fresenius that may obligate them to pay Sealed Air's and Fresenius' defense costs and any asbestos-related judgments against them ("Indemnification Agreements"). Since Sealed Air was first named a defendant in an asbestos-related action in February of 2000, certain of the Debtors have been indemnifying Sealed Air for their defense costs. These defense costs would continue to mount if the stay were not extended to Sealed Air and the other Affiliated Entities. Further, any adverse judgments obtained against Sealed Air or any of the other Affiliated Entities could give rise to additional indemnity claims against the Debtors.

43. <u>Collateral Estoppel</u>: Throughout the past twenty years, the Debtors have taken the lead in handling asbestos claims against Grace and its affiliates, including analyzing the evidence relative to asbestos claims, investigating facts and working with witnesses, developing procedures for evaluating and resolving claims by settlement, managing discovery and litigation and in presenting Grace's defense at trial. The Affiliated Entities lack the knowledge of Debtors' conduct and products necessary to defend these actions. Adverse judgments against the Affiliated Entities may put Debtors at risk of collateral estoppel in those cases.

44. <u>Diversion of People Key to Debtors' Reorganization</u>: To the extent that the Debtors will need to present evidence in the Bankruptcy Cases with respect to the Asbestos Actions and potential estimation of such Asbestos Claims, the Debtors intend to rely upon many of the same group of witnesses that would provide key testimony in any and all Asbestos Actions or Future Actions that would otherwise proceed against the Affiliated Entities. Those witnesses must be available to the Debtors from the outset of the Bankruptcy Cases through the confirmation of the Debtors' Chapter 11 Plan. Undoubtedly, the prosecution of the Asbestos Actions against Affiliated Entities will divide the attention of those witnesses and compromise their availability to the Debtors,