# EXHIBIT O

UNITED STATES DISTRICT COURT    FILED
DISTRICT OF MASSACHUSETTS    IN CLERK'S OFFICE

APR 2  9 53 AM '01

| | |
|---|---|
| Newell K. Woodward and<br>Winifred W. Woodward,<br><br>    Plaintiffs<br><br>vs.<br><br>SEALED AIR CORPORATION (US);<br>NATIONAL MEDICAL CARE, INC.;<br>FRESENIUS A.G.; FRESENIUS<br>MEDICAL CARE, A.G.; FRESENIUS<br>U.S.A., INC.'s and FRESENIUS<br>NATIONAL MEDICAL CARE, INC.,<br>  a/k/a FRESENIUS MEDICAL CARE<br>HOLDINGS, INC.,<br><br>    Defendants | NO. 01-10547 PBS<br>COPY<br><br>CLASS ACTION COMPLAINT FOR<br>INJUNCTIVE RELIEF AND DAMAGES<br><br>JURY TRIAL DEMANDED |

Plaintiffs, on behalf of themselves and a class of similarly situated people, bring this action against Sealed Air Corporation (US) National Medical Care, Inc.; Fresenius A.G.; Fresenius U.S.A., Inc.; Fresenius Medical Care, Inc.; Fresenius National Medical Care, Inc. Plaintiffs allege the following factual and legal allegations upon information and belief. Paragraphs pertaining to Plaintiffs' own actions, however, are alleged upon personal knowledge.

## I. INTRODUCTION AND OVERVIEW

1.      This is a national class action asserting claims of fraudulent conveyance in violation of the Uniform Fraudulent Transfer Act (adopted by M.G.L. c. 109A, §2) and the common law of fraudulent conveyance; denuding, depletion and dissipation of assets; conspiracy

to denude, deplete and dissipate assets; and common law conspiracy with respect to corporate restructuring transactions involving Defendants and W.R. Grace & Co., Inc. and related entities designed to purposefully and illegally shelter certain assets from asbestos-related liability. This national class action also asserts claims of strict product liability; negligence; and deceit, fraudulent concealment and fraud by nondisclosure with respect to the danger posed by the asbestos contained in Zonolite Attic Insulation products installed in residences of Plaintiffs and other Class members.

2. W.R. Grace & Co., Inc. and its predecessors and certain subsidiaries ("Grace") mined vermiculite ore and manufactured consumer goods that were sold throughout Massachusetts and the United States, including Zonolite Attic Insulation. Grace did so knowing that this product contained dangerous levels of readily loftable tremolite and other forms of asbestos (hereinafter "asbestos"). Grace concealed the dangerous character of Zonolite Attic Insulation from consumers, public officials, and the general public.

3. Plaintiffs represent a Class of tens of thousands of people with unsatisfied product liability or property damage claims against Grace and its affiliates based upon exposure to asbestos contained in Zonolite Attic Insulation installed in plaintiffs' homes. As successor corporations to Grace, Defendants are liable for the amount of Plaintiffs' claims.

4. Many of the proposed plaintiff Class of owners and occupiers of real property throughout the United States remain unaware of substantial dangers to themselves and their properties posed by the presence of Zonolite Attic Insulation in their homes. Others Class members may be newly-aware of the presence of dangerous asbestos contained in Zonolite Attic Insulation, but lack an understanding as to how to properly and safely remediate the problem. As

a whole, Class members remain unaware of important safeguards necessary to forestall continued, future exposure to hazardous levels of asbestos contained in Zonolite Attic Insulation. Class members are also unaware that in order to protect themselves from the hazards of Zonolite Attic Insulation, they must restrict their use and enjoyment of their real property, while implementing appropriate operations and maintenance practices to protect the health and safety of themselves and the general public.

5. Grace manufactured and sold several brand names of asbestos-containing products, including but not limited to Zonolite Attic Insulation. Those products have been responsible for severe personal injuries and tens of thousands of deaths nationwide. As a result, Grace is now a defendant in over 40,000 lawsuits filed by individuals and survivors of individuals exposed to its asbestos products.

6. Facing mounting potential liability related to its manufacture, distribution, and sale of asbestos-containing products such as Zonolite Attic Insulation, Grace entered into a complex series of transactions, in September of 1996 and again in March of 1998, with the intention and effect of insulating valuable assets from potential judgment creditors by fraudulently transferring and conveying such assets to Defendants as herein alleged.

7. In September of 1996, Grace Specialty Chemicals, Inc. spun off its packaging and specialty chemicals businesses - - and its asbestos liabilities to the Class - - but first stripped away and segregated out its medical care company. The spun-off company was called W.R. Grace & Co., and the medical care business was merged with and into a German company, Fresenius Medical Care A.G.. The series of transactions rendered Grace insolvent and unable to pay its debts as they matured, and as such, constituted a fraudulent transfer and

conveyance.

8. In March of 1998, Grace perpetrated a similarly structured fraudulent transfer and conveyance. This time, Grace spun off its specialty chemicals businesses - - and its asbestos liabilities to the Class - - but first stripped away and segregated its packaging business. This transaction consisted of Grace merging its Cryovac packaging business (with sales of $1.83 billion in 1997) with Sealed Air Corporation in a transaction valued at over $6 billion. This transaction resulted in Grace shareholders owning approximately 63% of Sealed Air Corp. This series of transactions further rendered Grace insolvent and unable to pay its debts as they matured, and as such, constituted a fraudulent transfer and conveyance.

9. Plaintiffs seek preliminary and final injunctive relief, equitable relief including disgorgement of ill-gotten gains or in the alternative a constructive trust, and a judicial declaration that Defendants to which Grace fraudulently transferred assets are responsible for the asbestos liabilities of Grace. Plaintiffs also seek judgment against all defendants for fraudulently transferring valuable assets of Grace to themselves and to other entities, and for fraudulently manipulating the corporate form in order to deprive Plaintiffs and the Class of their proper remedies. Plaintiffs seek compensatory and punitive damages, in order to advance public health and safety and to compensate property owners for harm suffered.

## II. PARTIES

10. Plaintiffs, Newell K. Woodward and Winifred W. Woodward, are residents of Hobe Sound, Florida, and are owners of real property in which Zonolite Attic Insulation has been installed located in Florida. Newell K. Woodward and Winifred W. Woodward are prepared to serve as representative of the Class proposed herein.

11.  Sealed Air Corporation ("Sealed Air") is a Delaware Corporation that is located at Park 80 East, Saddle Brook, New Jersey. At all times relevant to the facts alleged in this complaint, Sealed Air Corporation, or its predecessors in interest (including but not limited to W.R. Grace & Co., a Delaware Corporation; W.R. Grace & Co.- Conn; W.R. Grace & Co., a New York Corporation; Grace Holding, Inc.; Montana Vermiculite Company; and Zonolite Company) were engaged in the business of mining vermiculite ore and manufacturing, marketing, distributing and selling Zonolite Attic Insulation. Defendant Sealed Air Corporation is a successor corporation that is liable for the actions of predecessor corporations and that was created in an attempt to fraudulently shield the assets of those predecessors corporations.

12.  Defendant National Medical Care, Inc., is a New York corporation with its corporate headquarters located at 1610 Trapelo Road, Waltham, Massachusetts. At all times relevant to the facts alleged in this complaint, National Medical Care, Inc., or its predecessors in interest (including but not limited to W.R. Grace & Co., a Delaware Corporation; W.R. Grace & Co.- Conn; W.R. Grace & Co., a New York Corporation; Grace Holding, Inc.; Montana Vermiculite Company; and Zonolite Company) were engaged in the business of mining vermiculite ore and manufacturing, marketing, distributing and selling Zonolite Attic Insulation. Defendant National Medical Care, Inc. is a successor corporation that is liable for the actions of predecessor corporations and that was created in an attempt to fraudulently shield the assets of those predecessors corporations.

13.  Defendant Fresenius A.G. is a foreign corporation with its corporate headquarters located at Bordenberg 14, 61440 Oberursel, Germany. At all times relevant to the facts alleged in this complaint, Fresenius A.G., or its predecessors in interest (including but not

limited to W.R. Grace & Co., a Delaware Corporation; W.R. Grace & Co.- Conn; W.R. Grace & Co., a New York Corporation; Grace Holding, Inc.; Montana Vermiculite Company; and Zonolite Company) were engaged in the business of mining vermiculite ore and manufacturing, marketing, distributing and selling Zonolite Attic Insulation. Defendant Fresenius A.G. is a successor corporation that is liable for the actions of predecessor corporations and that was created in an attempt to fraudulently shield the assets of those predecessors corporations.

14. Defendant Fresenius U.S.A., Inc. is a Delaware corporation with its corporate headquarters located at 2637 Shadelands Dr., Walnut Creek, California 94598. At all times relevant to the facts alleged in this complaint, Fresenius U.S.A., Inc., or its predecessors in interest (including but not limited to W.R. Grace & Co., a Delaware Corporation; W.R. Grace & Co.- Conn; W.R. Grace & Co., a New York Corporation; Grace Holding, Inc.; Montana Vermiculite Company; and Zonolite Company) were engaged in the business of mining vermiculite ore and manufacturing, marketing, distributing and selling Zonolite Attic Insulation. Defendant Fresenius U.S.A., Inc. is a successor corporation that is liable for the actions of predecessor corporations and that was created in an attempt to fraudulently shield the assets of those predecessors corporations.

15. Defendant Fresenius Medical Care, A.G. is a German Corporation with its principal place of business at Gluckensteinweg 5, 61343 Bad Homburg, Germany. At all times relevant to the facts alleged in this complaint, Fresenius Medical Care, A.G., or its predecessors in interest (including but not limited to W.R. Grace & Co., a Delaware Corporation; W.R. Grace & Co.- Conn; W.R. Grace & Co., a New York Corporation; Grace Holding, Inc.; Montana Vermiculite Company; and Zonolite Company) were engaged in the business of mining

6

vermiculite ore and manufacturing, marketing, distributing and selling Zonolite Attic Insulation. Defendant Fresenius Medical Care A.G. is a successor corporation that is liable for the actions of predecessor corporations and that was created in an attempt to fraudulently shield the assets of those predecessors corporations.

16. Defendant Fresenius National Medical Care, Inc. a/k/a Fresenius Medical Care Holdings, Inc., is the name of the reorganized entity created through the fraudulent conveyances described herein; a New York Corporation headquarters in Massachusetts. At all times relevant to the facts alleged in this complaint, Fresenius National Medical Care, Inc., or its predecessors in interest (including but not limited to W.R. Grace & Co., a Delaware Corporation; W.R. Grace & Co.- Conn; W.R. Grace & Co., a New York Corporation; Grace Holding, Inc.; Montana Vermiculite Company; and Zonolite Company) were engaged in the business of mining vermiculite ore and manufacturing, marketing, distributing and selling Zonolite Attic Insulation. Defendant Fresenius National Medical Care, Inc. is a successor corporation that is liable for the actions of predecessor corporations and that was created in an attempt to fraudulently shield the assets of those predecessors corporations.

### III. JURISDICTION AND VENUE

17. This Court has subject matter Jurisdiction over this civil action pursuant to 28 U.S.C. 1332. The amount in controversy, that is the amount necessary to effectuate the claims for injunctive, equitable and monetary relief, exclusive of interest and costs, exceeds $75,000.

18. This Court has personal jurisdiction over each of the parties.

19. Venue in this matter is proper in this Court because a significant part of

the conduct at issue occurred in the Commonwealth of Massachusetts. Significantly, Grace's Construction Products Division ("CPD") had overall responsibility for the manufacture and marketing of Zonolite Attic Insulation and was headquartered in Cambridge, Massachusetts. The managers at various Grace vermiculite expanding plants throughout the country reported to personnel in the Cambridge headquarters. Furthermore, the marketing, advertising, and promotional materials for Zonolite Attic Insulation were developed and prepared at the Cambridge headquarters and were distributed to dealers and other members of the distribution network for the product from that location. Finally, CPD personnel in Cambridge were partially or wholly responsible for decisions with respect to whether or not to warn purchasers of Zonolite Attic Insulation or the public about the asbestos content of the product and the attendant health risks; those personnel also were partially or wholly responsible for decisions regarding the labeling of Zonolite Attic Insulation product.

## IV. FACTS

20. Grace and other predecessor corporations of Defendants named herein were manufacturers, distributors, and sellers of Zonolite Attic Insulation.

21. Zonolite Attic Insulation is chiefly composed of expanded vermiculite ore.

22. The predominant source of vermiculite ore used by Grace in the production of Zonolite Attic Insulation was a vermiculite mine owned by Grace and located on Zonolite Mountain near Libby, Montana.

23. Grace transported vermiculite ore from Zonolite Mountain to expansion plants throughout the United States for purposes of manufacturing the finished insulation product, sold under the product name Zonolite Attic Insulation.

24. Zonolite Attic Insulation manufactured, distributed, and sold by Grace and the aforementioned predecessor corporations was purchased and installed in attics of thousands of homes, businesses, and other properties located throughout the State of Massachusetts and the United States.

25. Plaintiffs are owners of real property in which Zonolite Attic Insulation manufactured and sold by Grace and the aforementioned predecessor corporations was installed.

26. Zonolite Attic Insulation manufactured by Grace and the predecessor corporations from Libby vermiculite ore is contaminated with asbestos, including tremolite, a rare and exceedingly deadly form of asbestos.

27. Zonolite Attic Insulation is a loose-fill type of insulation. Asbestos contained in Zonolite Attic Insulation takes the form of microscopic dust that is readily suspended, resuspended, and lofted into the air upon the slightest disturbance of Zonolite Attic Insulation. Once suspended, asbestos fibers maintain their fog-like airborne status for extended periods of time, are readily transported by natural air currents, and represent a continuing source of exposure danger.

28. Tremolite asbestos itself consists of sharp, microscopic needle-like fibers that are readily inhaled and easily pierce and lodge in the lining of the lungs. The lungs are unable to remove tremolite asbestos that penetrates lung tissue, and fibers are not washed out of lung tissue by blood. As a result, the assaulted lung areas become inflamed, in time heavily scarred, and ultimately fail to function. For persons inflicted with this slow and lingering disease process, it becomes increasingly difficult to breathe. Ultimately, the person suffocates.

29. Asbestos is a virtually indestructible substance. Asbestos is a known

human carcinogen. Inhalation of asbestos fibers, either through chronic exposure or one-time heavy exposure, can lead to mesothelioma (diffuse cancer which spreads over the lung lining surface), lung cancer, asbestosis, and other pulmonary diseases that are progressive and often fatal. There is no known safe level of exposure to asbestos.

30.     Disturbance of Zonolite Attic Insulation exposes individuals to heavy doses of airborne asbestos sufficient to cause mesothelioma, lung cancer, asbestosis, and other serious pulmonary diseases.

31.     At all times material to allegations made in this Complaint, Defendants and/or their predecessor corporations had actual knowledge that Zonolite Attic Insulation manufactured from Libby, Montana, vermiculite was dangerously contaminated with tremolite asbestos.

32.     At all times material to allegations made in this Complaint, Defendants and/or their predecessor corporations had actual knowledge that exposure to Zonolite Attic Insulation in the ordinary use of that product exposed users to dangerous levels of asbestos dust.

33.     Zonolite Attic Insulation manufactured by Defendants or their predecessor corporations has caused asbestos contamination to real property in which that product has been installed.

34.     Individuals engaged in ordinary activities commonly associated with property ownership disturb Zonolite Attic Insulation, lofting dangerous levels of asbestos into the air they breathe. Such activities include use of attic spaces for storage of personal belongings, home maintenance activities that involve accessing attic space, home remodeling, installation or replacement of electrical fixtures, upgrading or replacement of attic insulation, and use of attic

spaces by children for play.

35.  Asbestos dust contaminated in Zonolite Attic Insulation can readily migrate from attic spaces into living spaces in homes, constituting a present threat to persons occupying those homes. As such, individuals engaged in the ordinary use and enjoyment of their real property in which Zonolite Attic Insulation is installed are exposed to levels of asbestos threatening to their health and safety.

36.  Persons who own and/or reside in homes insulated with Zonolite Attic Insulation are often unaware that Zonolite Attic Insulation is even present within their home. Further, persons who own and/or reside in homes insulated with Zonolite Attic Insulation are unaware that Zonolite Attic Insulation contains dangerous levels of asbestos and are unaware of the health risks associated with asbestos.

37.  Persons who own and/or reside in homes insulated with Zonolite Attic Insulation are unaware that disturbing of Zonolite Attic Insulation exposes individuals to dangerous levels of asbestos. Persons who own and/or reside in homes insulated with Zonolite Attic Insulation are unaware that Zonolite Attic Insulation has contaminated their real property. Persons who own and/or reside in homes insulated with Zonolite Attic Insulation are unaware that prudence requires limitation of activities so as to avoid exposure to asbestos dust contained in Zonolite Attic Insulation.

38.  While consumers remain essentially unaware of the substantial dangers posed by Zonolite Attic Insulation, Defendants and/or their predecessor corporations were aware of such dangers and engaged in an intentional pattern and practice of concealing the dangers associated with Zonolite Attic Insulation.

39. From approximately 1930 until 1963, Zonolite Company operated the vermiculite mining and processing plant on Zonolite Mountain. Grace acquired the Libby vermiculite mine from Zonolite Company in 1963. Grace had actual knowledge at the time of its purchase that the vermiculite ore mined from Zonolite Mountain and used to manufacture Zonolite Attic Insulation was heavily contaminated with tremolite asbestos. Grace was aware of reliable estimates that ore originating from Zonolite Mountain regularly contained in excess of 20% asbestos.

40. At all times material to facts alleged in this Complaint, Defendants and their predecessor corporations had actual knowledge that asbestos was extraordinarily dangerous and that exposure to even minuscule levels of asbestos causes potentially fatal diseases, including asbestosis, lung cancer, and mesothelioma.

41. Grace was aware of secret medical tests by Zonolite Company that demonstrated that a substantial portion of Zonolite Company's workforce had contracted lung diseases as a result of exposure to the asbestos contained in the vermiculite used to manufacture Zonolite Attic Insulation. These included the July 20, 1959 report to Raymond Bleich, and August 25, 1964 report to Joseph Kelley, a January 29, 1965 report from Dr. Spicer, and a December 23, 1969 in-house study showing lung disease in 92% of long-term workers.

42. In the 1970's, Grace conducted internal tests confirming high incidents of lung disease among workers exposed to vermiculite used in the manufacture of Zonolite Attic Insulation, including an in-house study reported in a May 24, 1977 memorandum showing these workers' risk of cancer was "five times the national average."

43. Despite actual knowledge of the health risks associated with Zonolite Attic

12

Insulation, Defendants and/or their predecessor corporations continued to aggressively manufacture, promote, distribute, and sell Zonolite Attic Insulation, while concealing and/or failing to disclose the substantial risks of disease associated with asbestos exposure.

44. Defendants and/or their predecessor corporations conducted secret animal tests that demonstrated an association between tremolite asbestos and mesothelioma, including Dr. W. Smith's biological testing (final report May 25, 1978). Despite those findings confirmed by its own tests, Grace publicly denied the existence of a relationship between tremolite asbestos exposure and mesothelioma, including in a letter dated May 8, 1979 to county health officer Dr. Richard Irons.

45. Despite knowledge of the unreasonable risks to human health, Defendants or their predecessor corporations intentionally chose to not warn the public of health risks associated with Zonolite Attic Insulation, including the advised decision "not to affix labels" on attic insulation products (May 24, 1977). This decision to conceal from the public such health risks was predicated on a calculation of the financial reward to Defendants or their predecessors corporations should the public be kept uninformed. Written analysis of the financial consequences include a May 24, 1977 "Zonolite Profitability Impact" projecting a "10-50% reduction in sales volume that would result from a requirement to label our products as containing asbestos."

46. Until Grace withdrew Zonolite Attic Insulation from the market in 1984, Defendants and/or their predecessor corporations affirmatively and actively engaged in steps to conceal the toxicity and dangers of Zonolite Attic Insulation from the public and from government agencies charged with police powers to protect public health and safety.

47. In the 1970s, state and federal officials cited various plants belonging to Grace for excessive asbestos exposures levels, including those summarized in the September 21, 1971 memo to R.M. Coquillette. Defendants and/or their predecessor corporations did not normally consider controls to abate these levels "until a citation issued" and only then would each plant be addressed "singly as they are forced to comply."

48. Defendants and/or their predecessors corporations, falsely and/or misleadingly represented to government officials that Zonolite Attic Insulation had been treated with a binder (a substance that would prevent deadly tremolite fibers from being released into the air) while, in fact, no such binder had been successfully developed or applied to Defendants' Zonolite Attic Insulation product.

49. Defendants and/or their predecessor corporations failed to test adequately or properly the use of a binder in preventing hazardous exposure to asbestos.

50. Although Defendants and/or their predecessor corporations publicly represented that Zonolite Attic Insulation posed no health hazard, internal Grace memoranda, including a May 24, 1977 memo from Wood to Brooks and Graf, demonstrate that Grace knew that Zonolite Attic Insulation posed an unreasonable risk to human health with exposure "concentrations upward of 15 f/ml," and that Grace anticipated that Zonolite Attic Insulation would "eventually be banned" by government agencies.

51. As early as 1977, Grace drafted a press release, stating that it was "sufficiently concerned about the entire issue of asbestos and associated health hazards to discontinue this product (Zonolite Attic Insulation)." Despite actual knowledge by Defendants and/or their predecessor corporations that Zonolite Attic Insulation posed a substantial hazard to

the consuming public, they determined to withhold this important press release, to conceal the health hazards associated with Zonolite Attic Insulation, and to continue to aggressively sell Zonolite Attic Insulation for an additional seven years.

52. Defendants and/or their predecessor corporations had superior knowledge, as compared with the consuming public and government enforcement agencies, with respect to the health dangers posed by Zonolite Attic Insulation, but concealed their knowledge of the health dangers associated with their product because they believed that asbestos contained in Zonolite Attic Insulation would remain undetected.

53. As a proximate result of the conduct of the Defendants and/or their predecessor corporations, there is a present, compelling, and immediate need to provide appropriate warnings to the public of the health dangers associated with Zonolite Attic Insulation. Necessary warnings include:

　　a). Warning that Zonolite Attic Insulation contains tremolite, an especially dangerous form of asbestos, and that persons should avoid exposure to Zonolite Attic Insulation;

　　b). Warning that disturbing Zonolite Attic Insulation exposes individuals to hazardous levels of asbestos;

　　c). Warning that persons should not enter or use attic spaces in properties believed to contain Zonolite Attic Insulation, together with advisories on how to identify Zonolite Attic Insulation;

　　d). Warning that tests should be conducted on properties where Zonolite Attic Insulation has been disturbed and that disturbance poses a threat that asbestos may

have been transported to living spaces of the property;

e). Warning that property owners and occupants where Zonolite Attic Insulation has been installed should not engage in remodeling or other activities that involve the disturbance of Zonolite Attic Insulation until an asbestos containment plan has been established by qualified asbestos abatement personnel;

54. As a direct and proximate result of the conduct of Defendants and their predecessor corporations, real properties of Plaintiffs and Class members have been contaminated with asbestos, requiring the development and implementation of an appropriate operations and maintenance program to limit further exposure to dangerous levels of asbestos.

55. As a direct and proximate result of the conduct of Defendants and their predecessor corporations, Plaintiffs and Class members will incur substantial costs of property remediation, restoration, and asbestos abatement.

56. As a direct and proximate result of the conduct of Defendants and their predecessor corporations, owners of real property in which Zonolite Attic Insulation has been installed have been interfered with in their use and quiet enjoyment of their real property.

57. Plaintiffs and members of the Class possess property interests in claims against various Defendants and/or their predecessor corporations for harms arising out of conduct asserted in the Complaint. Defendants and their predecessor corporations knowingly caused injury to the property interests of Plaintiffs and Class members, including through actions to fraudulently shield assets of one another for purposes of evading asbestos liability.

58. Nationwide, experts estimate that at least 21 million American workers have been exposed to "significant" amounts of asbestos at the workplace since 1940. Millions

others have been exposed through environmental contact or contact with relatives who have worked with the products. Because of its injurious propensities, such exposure, in human terms, has meant that literally tens of thousands of people fall ill or die from asbestos-related diseases every year. In legal terms, it has translated into hundreds of thousands of lawsuits centered mainly in industrialized areas along the country's coasts, including Massachusetts.

59. Asbestos litigation has been ongoing for four decades and as a result of this litigation, numerous corporations have been forced into bankruptcy. Raymark Industries, Forty-Eight Insulations, Unarco, Standard Asbestos, Johns-Manville Corporation, Eagle-Picher Industries, and Celotex Corporation, just to name a few, all have at one point declared bankruptcy due to asbestos liability.

60. In light of mounting potential asbestos liability, Grace initiated corporate restructuring transactions during the last decade that were specifically designed to shield assets from actual or potential judgements.

61. On September 30, 1996, Grace and Fresenius A.G. completed a series of transactions that resulted in the creation of two new business entities. First, Grace spun off to its common shareholders a "new" Grace comprised of Grace's packaging and specialty chemicals business. Second, Grace's former health care subsidiary, National Medical Care, Inc. ("NMC") was combined with the worldwide dialysis business of Fresenius A.G. to form a new company name Fresenius Medical Care A.G.

62. As a result of these transactions, Grace's common shareholders received 100% of a "new" W. R. Grace & Co., focused on its packaging and specialty chemicals businesses. "Old" W. R. Grace & Co. common shareholders also received 44.8% of a newly-

created health care company, Fresenius Medical Care A.G., the world's largest fully-integrated renal care company.

63.  On March 31, 1998, the "new" Grace and Sealed Air corporation completed a series of transactions that resulted in the creation of two new companies. First, Grace spun off to its shareholders a second "new" W. R. Grace & Co., comprised of Grace's specialty chemicals businesses. Second, W. R. Grace & Co.'s Cryovac flexible packaging business was combined with Sealed Air, to form the world's leading protective and specialty packaging company.

64.  Valued by the market at more than $6 billion, these 1998 transactions provided substantial value to Grace's shareholders, who received 100% of the second "new" W. R. Grace & Co., a premier global specialty chemicals company, and also received common and preferred stock representing approximately 63% of the "new" Sealed Air, the company combining Grace's former Cryovac business with Sealed Air's protective packaging business.

### The 1996 Fraudulent Transfer

65.  On February 4, 1996, Grace and Fresenius A.G. signed an Agreement and Plan of Reorganization and other related agreements. This transaction was designed to strip out and segregate NMC and other good assets from Grace's specialty chemicals business and asbestos exposure, thus leaving Grace without sufficient capital to pay its asbestos victims and creditors.

66.  Briefly stated, the September 28 and 29, 1996 transactions unfolded as follows:

   a)  Before the transactions, NMC was a wholly-owned subsidiary of Grace-