# EXHIBIT Q

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COPY

|  |  |
|---|---|
| Newell K. Woodward and<br>Winifred W. Woodward,<br><br>   Plaintiffs<br><br>vs.<br><br>SEALED AIR CORPORATION (US);<br>NATIONAL MEDICAL CARE, INC.;<br>FRESENIUS A.G.; FRESENIUS MEDICAL<br>CARE, A.G.; FRESENIUS USA, INC.; AND<br>FRESENIUS NATIONAL MEDICAL CARE,<br>INC. a/k/a FRESENIUS MEDICAL CARE<br>HOLDINGS, INC.,<br><br>   Defendants | No. 01 10547 PBS<br><br><br>**MEMORANDUM IN**<br>**SUPPORT OF MOTION**<br>**FOR INTERVENTION AND**<br>**TRANSFER OF VENUE**<br>**TO THE DISTRICT OF DELAWARE** |

# TABLE OF CONTENTS

Introduction ..................................................................................................................... 1

I.    FACTUAL BACKGROUND .......................................................................... 3

      A.    The Claims and Context of This Lawsuit .......................................... 3

      B.    Company Overview ............................................................................ 4

            1.    Grace's Business and Structure ............................................... 4

            2.    Grace's Role in Asbestos Related Matters .............................. 5

      C.    The National Medical Care/Fresenius Transaction ........................... 5

      D.    The Grace Packaging/Sealed Air Transaction ................................... 6

      E.    Grace's Bankruptcy Filing ................................................................ 6

II.   ARGUMENT ................................................................................................. 8

      A.    The Court Should Transfer This Case to the Delaware District
            Court .................................................................................................. 8

            1.    This Court Has the Authority to Transfer This Action ........... 8

            2.    The Substantive Claims of Asbestos-Related Injury Have
                  Been Stayed by the Delaware Court and Cannot Proceed
                  Here ......................................................................................... 8

            3.    This Adversary Proceeding Should Be Transferred to
                  Delaware Because The Delaware Court Has Exclusive
                  Jurisdiction Over Actions Affecting Property of the Estate .... 9

            4.    The Efficient Administration of Grace's Bankruptcy Cases
                  Also Mandates Transfer to Delaware ..................................... 12

      B.    The Court Should Permit Grace to Intervene in This Action ........... 15

            1.    Grace is Entitled to Intervention As of Right ....................... 16

a.     Grace's Application is Timely ...........................................16

b.     Grace Has an Interest in the Property and
Transactions That Are the Subject of this Action .............17

c.     Disposition of This Matter Could Impede Grace's
Ability to Protect its Interests.............................................19

d.     No Existing Party Can Adequately Represent
Grace's Interests...............................................................20

2.     Grace Also is Entitled to Permissive Intervention .......................21

IV.     CONCLUSION ...............................................................................................22

## TABLE OF AUTHORITIES

**Cases**

Atlantis Dev. Corp. v. United States, 379 F.2d 818, 825 (5th Cir. 1967).........................................20

Banco Popular de Puerto Rico v. Greenblatt, 964 F.2d 1227, 1231 (1st Cir. 1992).......................16

Bank of America v. Nickele, 1998 WL 181827 (E.D. Pa. Apr. 16, 1998) ............................... 12-14

Carlton v. Baww, Inc., 751 F.2d 781 (5th Cir. 1985) ....................................................................10

Caterino v. Barry, 922 F.2d 37, 39-40 (1st Cir. 1990).................................................................16

Citicorp Acceptance Company, Inc. v. Robison (In re Sweetwater)
     884 F.2d 1323 (10th Cir. 1989)..............................................................................................11

Colarusso v. Burger King Corp., 35 B.R. 365 (E.D. Pa. 1984) .....................................................13

Conservation Law Foundation, 966 F.2d at 44........................................................................18, 20

Donaldson v. United States, 400 U.S. 517, 531 (1971).................................................................17

Francis v. Chamber of Commerce of U. S., 481 F.2d 192, 195 n.8 (4th Cir. 1973).........................19

Garrity v. Gallen, 697 F.2d 452, 455 (1st Cir. 1983)....................................................................16

Hall v. Walter (In re Hall), 139 F.3d 911, 1998 WL 77746 (10th Cir., Feb. 24, 1998)..................10

Haworth, Inc. v. Sunarhauserman Ltd., 131 B.R. 359, 363 (Bankr. W.D. Mich. 1991)................14

In re 1606 New Hampshire Ave. Associates, 85 B.R. 298 (Bankr. E.D. Pa. 1988) .......................13

In re Aztec Industries, Inc., 84 B.R. 464 (Bankr. N.D. Ohio 1987)................................................13

In re Commonwealth Oil Refining Co., Inc., 596 F.2d 1239 (5th Cir. 1979)...................................12

In re Convent Guardian Corp., 75 B.R. 346, 347 (Bankr. E.D. Pa. 1987) .....................................13

In re Cybergenics Corp., 226 F.3d at 243 ...................................................................................21

In re Gallucci, 63 B.R. 93-95 (Bankr. D. R.I. 1986)......................................................................13

In re Lopez-Soto, 764 F.2d 23, 27 (1st Cir. 1985)............................................................................11

In re Manville Forest Products Corp., 896 F.2d 1384 (2nd Cir. 1990) ...........................................12

In re Nixon Machinery Co., 27 B.R. 871 (Bankr. E.D. Tenn. 1983) ..............................................12

In re Vital Link Lodi, Inc., 240 B.R. 15 (Bankr. W.D. Mo. 1999) .........................................14, 15

In re Wedlo, Inc., 212 B .R. 678 (Bankr. M.D. Ala.1996).............................................................13

Jet Traders Inv. Corp. v. Tekair, Ltd., 89 F.R.D. 560, 568 (D. Del.1981).....................................17

Knapp v. Hankins, 106 F.Supp. 43, 47 (E.D.Ill.1952)...................................................................18

Kotlicky v. Belford, 64 B.R. 679 (N.D. Ill. 1986) ....................................................................12, 13

LTV Steel Company, Inc. v. Board of Education (In re Chateaugay Corp.),
     93 B.R. 26 (S.D.N.Y. 1988)....................................................................................................10

Meeropol v. Nizer, 505 F.2d 232, 236 (2nd Cir. 1974)....................................................................19

Moosehead Sanitary Dist. v. S.G. Phillips Corp., 610 F.2d 49, 54 (1st Cir.1979) .........................20

Natural Resources Defense Council, Inc. v. U. S. Nuclear Regulatory Commission,
     578 F.2d 1341, 1345 (10th Cir. 1978)...............................................................................19, 20

Official Committee of Unsecured Creditors v. Chinery (In re Cybergenics Corp.)
     226 F.3d 237 (3rd Cir. 2000) .............................................................................................10, 11

Oregon Environmental Council v. Oregon Dept. of Environmental Quality,
     775 F.Supp. 353-357-58 (D.Or.1991)......................................................................................17

Petit v. New England Mortgage Serv., Inc., 182 B.R. 64, 69 (D. Me. 1995) .................................18

Public Service Co. of New Hampshire v. Patch, 136 F.3d 197, 205 (1st Cir.1998).........................18

Security Ins. Co. of Hartford v. Schipporeit, Inc., 69 F.3d 1377, 1380 (7th Cir. 1995) ................16

Seybolt v. Bio-Energy of Lincoln, Inc., 38 B.R. 123 (Bankr. D. Mass. 1974) ...............................13

Stamm v. Rapco Foam, Inc., 21 B.R. 715 (Bankr. W.D. Pa. 1982)................................................13

UPS Worldwide Forwarding, Inc. v. U.S. Postal Service,
    853 F.Supp. 800, 807 (D.Del.1994), *reversed,*
    66 F.3d 621, *cert. denied* , 116 S.Ct. 1261 ...............................................................17

Warminster Investment Corp. v. Horizons Hotels Corp., 191 F.R.D. 48,
    49-50 (D. P.R. 1999) ....................................................................................................16, 17

## Statutes

28 U.S.C. § 1334(e) ...........................................................................................................10, 11

28 U.S.C. § 1412................................................................................................................8

28 U.S.C. § 157(b)(2)(H)....................................................................................................10

## Rules

Fed. R. Bankr. P. 7087 ......................................................................................................8

Fed. R. Civ. P. 24(a) ....................................................................................................16, 19

Fed. R. Civ. P. 24(b)(2)......................................................................................................21

## Other Authorities

David L. Shapiro, *Some Thoughts on Intervention Before Courts, Agencies,*
    *and Arbitration,* 81 Harv.L.Rev. 721, 733 (1968) .................................................................20

Steven L. Schultz, In re Joint Eastern and Southern District Asbestos Litigation:
    *Bankrupt and Backlogged – A Proposal for the Use of Federal Common*
    *Law in Mass Tort Class Actions,* 58 Brook. L. Rev. 553, 561 (1992)...................................7

Wright & Miller, Federal Practice and Procedure, § 1908 ...............................................................19

# GRACE'S MOTION FOR
# INTERVENTION AND TRANSFER OF VENUE

## *Introduction*

Faced with an overwhelming tide of asbestos-related claims, on April 2, 2001,

W.R. Grace & Co. and W.R. Grace & Co. - Conn. ("Grace") were forced to file for Chapter 11

bankruptcy protection in Delaware. As a result, all asbestos-related claims against Grace and its

"Affiliated Entities" -- the named defendants here -- have been stayed by operation of law and by

order of the Delaware court. The present suit, which treats Grace as a defendant in all but name,

was filed the same day as Grace's bankruptcy filing and is a transparent attempt collaterally to

litigate issues that may only be raised in the bankruptcy proceeding. The history leading up to

this suit fully supports this conclusion:

*First*, the present case is a replication in almost every respect of a suit filed in

California on September 28, 2000. That suit, like this one, asserts fraudulent conveyance claims

on behalf of a purported class and seeks to have the transactions between Grace and the named

defendants undone in order to satisfy potential asbestos personal injury claimants. These

allegations mirror those made in the present case, and the classes that each case purports to

represent are likely substantially to overlap. Indeed, lead plaintiffs' counsel in the California suit

also is listed as plaintiffs' counsel here. The only salient difference between the California suit

and this one is that Grace is a named party in the California suit; here, while the complaint is

replete with references to Grace, the company was not formally designated as a defendant.

*Second,* on April 2, 2001, Grace filed for Chapter 11 bankruptcy protection in

Delaware. By operation of law, that filing stayed all pending litigation against Grace and

abrogated the standing of any party other than Grace to pursue any claim for fraudulent conveyance henceforth.

*Third*, on the same day as – and obviously in anticipation of – Grace's bankruptcy filing, the present case was filed on behalf of substantially the same class, against the same defendants – save Grace – and for all of the same alleged conduct as in the California suit. In short, this case appears to have been designed expressly to replicate the California action without naming Grace as a party in order to skirt the effect of the Delaware bankruptcy proceeding.

*Fourth*, on the same day as Grace's Chapter 11 filing, the Delaware court issued an injunction staying all actions against Grace and its "Affiliated Entities" – *i.e.*, the named defendants here – "that arise from alleged exposure to asbestos indirectly or directly caused by" Grace. (Order Granting TRO, Ex. A, at ¶¶ 2-4, 6). In other words, the portion of this case that seeks redress for asbestos-related injuries now is stayed by the Delaware court's order. Lacking sufficient familiarity with the fraudulent concealment claims, the court declined to include the fraudulent conveyance claims in its stay order, but commented that now only the debtor in possession – *i.e.* Grace – has standing to pursue such claims.

The only appropriate conclusion to be reached on these facts is that the present case is no more than a clever attempt to evade bankruptcy jurisdiction, that plaintiffs no longer have standing to pursue their claims here, and that the suit does not belong in this Court. Accordingly, Grace moves to intervene in and transfer venue of this case to the Delaware bankruptcy court where, by logic and law, it truly belongs.

-2-

## I.    FACTUAL BACKGROUND

### A.    The Claims and Context of This Lawsuit

This lawsuit was filed on April 2, 2001 – literally the same day that Grace filed for bankruptcy – against Sealed Air Corporation (US), National Medical Care, Inc. and Fresenius Medical Care, A.G., among others, alleging that both the combination of Grace's medical products business with Fresenius in 1996 and the later combination of its flexible packaging business with Sealed Air in 1998 were fraudulent transfers.[1]  Plaintiffs assert claims for (1) violation of the Uniform Fraudulent Transfer Act and common law of fraudulent conveyance; (2) "denuding, depleting and dissipating the assets of Grace"; (3) civil conspiracy with Grace; (4) product liability; (5) negligence; (6) fraud; and (7) punitive damages.  (Cplt. at 28-36, Ex. C). Plaintiffs purport to bring this action on behalf of "hundreds of thousands of people with unsatisfied product liability or property damage claims *against Grace* and its affiliates based upon exposure to asbestos contained in Zonolite Attic Insulation installed in plaintiffs' homes." (*Id.* ¶ 3, emph. added).  Plaintiffs seek to have the transactions between Grace and the defendants declared fraudulent and rescinded followed by disgorgement or establishment of a constructive trust in order to compensate and remediate alleged damage to class members.  (*Id.* at 36-39).

Notably, the instant suit is virtually identical to a California class action complaint brought against defendants here, which also names Grace as a defendant.  (*See* Cplt. in *Abner v. W.R. Grace, et al*, Ex. D ("California Suit")).  Indeed, the Furth Firm, which is listed as counsel in this suit also is lead plaintiffs' counsel in the California Suit.  (*Compare* Cplt. at 42, Ex. C, to

---

[1]    The details of these transactions are discussed below.

California Suit Cplt. at 22, Ex. D). On April 2, 2001, consonant with this motion, Grace moved the California court to transfer that sister case to Delaware. Likewise, scores of individual suits for personal and property damage containing the same sorts of fraudulent conveyance claims asserted here have now been stayed by operation of law and order of the Delaware Court.

## B.    Company Overview

### 1.    Grace's Business and Structure

W.R. Grace & Co., a Delaware corporation, produces specialty chemical and building materials, operating on a worldwide basis with its corporate headquarters located in Columbia, Maryland. (Siegel Dec. ¶ 4, Ex. E).[2] Grace conducts substantially all of its business through a direct, wholly-owned subsidiary – W.R. Grace & Co. - Conn. ("Grace-Conn"). Grace-Conn is a global holding company that owns substantially all of the assets, properties and rights of Grace either directly or through subsidiaries.

Today, Grace operates predominantly through two divisions – Davison Chemicals and Performance Chemicals. Davison Chemicals is a leading global supplier of refining and chemical catalysts and silica products. Performance Chemicals is a leading supplier of specialty construction chemicals and building materials used by the commercial construction industry, as well as container sealants and coatings for food and beverage packaging. (Siegel Dec. ¶ 4).

---

[2]  Attached to this memorandum as Exhibit E is a declaration of David Siegel, General Counsel to W.R. Grace. Also attached hereto are declarations of Marc Lieberman (Ex. F) and Mary A. Coventry (Ex. G), which were filed in a California Superior Court in support of defendants' joint motion to stay or dismiss the California Suit discussed herein on the grounds of *forum non conveniens*.

### 2.    Grace's Role in Asbestos Related Matters

Grace was a late entrant into the world of asbestos. Its first meaningful participation began with the acquisition of the Zonolite Company ("Zonolite") in 1963. Zonolite, which was merged with what is now Grace's Construction Products Division, mined, milled and processed a mineral called vermiculite from a mine near Libby, Montana. While vermiculite itself is an inert mineral that is non-asbestos, the Libby vermiculite, when mined, contained a secondary mineral – tremolite. Grace operated the Libby mine from 1963 to 1990. One of the principal commercial products made from Grace's vermiculite was Zonolite Attic Insulation ("ZAI"), which is the underlying subject of the present suit.[3] Grace also produced other asbestos-containing products that became the subjects of asbestos-related suits.

### C.    The National Medical Care/Fresenius Transaction

The first of the underlying transactions at issue in this lawsuit closed in September 1996 and involved the tax-free combination of National Medical Care, Inc. – then a Grace - Conn. subsidiary – with the worldwide dialysis business of Fresenius, A.G. (a German corporation). Prior to the combination, National Medical Care, Inc. ("NMC") paid an approximately $2.1 billion tax-free cash distribution to Grace-Conn. The debt incurred to pay that distribution became the obligation of NMC and its new parent, FMC Holdings. (Siegel Dec. ¶ 9; Lieberman Dec. ¶¶ 5-7). The NMC/Fresenius transaction was structured, negotiated and

---

[3]  In the last year or so, nine lawsuits, including four proposed class actions, have been filed in the U.S. seeking removal of ZAI from the attics of residential homes. All of these suits have named Grace as a defendant.

-5-

executed primarily in New York. (Siegel Dec. ¶ 10). Due diligence and some more minor events also took place in Florida and Massachusetts. (Lieberman Dec. ¶ 4).

**D.    The Grace Packaging/Sealed Air Transaction**

The second transaction at issue, which closed in March 1998, brought Grace's Cryovac food packaging division and the "old" Sealed Air Corporation — a Delaware corporation and long-time producer of protective packaging including Bubble Wrap — under the ownership of a common parent corporation: the "new" Sealed Air Corporation (US). (Siegel Dec. ¶ 11; Coventry Dec. ¶¶ 2-3). Before the close of the transaction, $1.2 billion was borrowed and paid to the current Grace entities, which used that money to pay down substantially all of Grace's long-term debt. The debt incurred to pay that distribution became the obligation of the new Sealed Air Corporation and its Cryovac subsidiary. (Siegel Dec. ¶ 11; Coventry Dec. ¶ 4).

Like the NMC/Fresenius deal, all of the negotiations and other events leading up to the Sealed Air transaction took place on the East Coast — *i.e.* Florida, South Carolina, New Jersey and New York. (Siegel Dec. ¶ 12; Lieberman Dec. ¶¶ 5-7). Unlike the first deal, no part of the transaction occurred in Massachusetts. (Siegel Dec. ¶ 12). Further, Delaware law governs the agreements executed in effectuating this transaction. (Siegel Dec. ¶ 12).

**E.    Grace's Bankruptcy Filing**

As a result of its prior business operations, Grace has for years confronted a substantial volume of claims alleging asbestos-related injuries. (Siegel Dec. ¶ 5). The Court likely is well aware of the rising tide and resultant morass of asbestos litigation that began in the 1970's and grew to overwhelm virtually every asbestos defendant in the United States. Grace was drawn into this maelstrom, facing bodily injury claims alleging health effects from exposure

-6-

both to Grace's asbestos-containing products and to naturally occurring asbestos in connection with the mining and processing of vermiculite at Grace's mine in Libby, Montana. Grace also has faced a growing number of property damage claims seeking payment for the cost of removing or containing asbestos-containing products in buildings.

The numbers of claims against Grace once were relatively manageable. Grace and its affiliates were able to resolve asbestos claims primarily through negotiated settlements. In large part, this was because – while Grace believed a high percentage of the claims were without merit – the costs of litigating thousands of independent claims at one time were prohibitive. Now, however, with many traditional asbestos defendants having retreated to the refuge of Chapter 11, the numbers of claims against Grace and its affiliates have skyrocketed and plaintiffs have begun asserting new claims relating to Grace's attic insulation product – a product that never before had been the subject of such litigation.[4] The dramatic increase in asbestos claims and the increasing threat of adversarial litigation have impaired Grace's ability to obtain financing, consumed management's time and attention, and threatened Grace's core business operations. (Siegel Dec. ¶ 6).

As a result, Grace concluded that there was no way to define and resolve its asbestos liability, while preserving its core business operations, other than through a reorganization under Chapter 11 of the Bankruptcy Code. Grace and certain of its subsidiaries

---

[4] In recent years, as many other available defendants sought refuge under Chapter 11, plaintiffs have turned their attacks to new companies in a "search for new and previously untapped sources of compensation." Steven L. Schultz, In re Joint Eastern and Southern District Asbestos Litigation: *Bankrupt and Backlogged – A Proposal for the Use of Federal Common Law in Mass Tort Class Actions*, 58 Brook. L. Rev. 553, 561 (1992).

filed Chapter 11 cases on April 2, 2001. (Siegel Dec. ¶ 7). Upon receipt of the filing and

attendant motions, the Delaware bankruptcy court issued an injunction staying "all pending

actions and actions that have not been filed or are not pending" as of the April 2, 2001 "against

'Affiliated Entities' that arise from alleged exposure to asbestos indirectly or directly caused by"

Grace. (4/2/01 Order, Ex. A, at ¶ 6). The term "Affiliated Entities" expressly included the

named defendants in the present case. (*Id.* at ¶¶ 2-4).[5]

## II.    ARGUMENT

### A.    The Court Should Transfer This Case to the Delaware District Court

#### 1.    This Court Has the Authority to Transfer This Action

Pursuant to 28 U.S.C. § 1412, this Court has the authority to transfer this

adversary proceeding to the United States District Court of Delaware "in the interest of justice or

for the convenience of the parties." 28 U.S.C. § 1412; *see* Fed. R. Bankr. P. 7087 ("On motion

and after a hearing, the court may transfer an adversary proceeding or any part thereof to another

district . . . .").

#### 2.    The Substantive Claims of Asbestos-Related Injury Have Been Stayed by the Delaware Court and Cannot Proceed Here

Under the terms of the Delaware court's April 2nd Order, the claims asserted in the

present action for redress of alleged asbestos-related injury have been stayed and may not now

proceed. Specifically, the present suit asserts claims that "arise from alleged exposure to

---

[5]  An Order Extending Temporary Restraining Order was entered by the United States District
Court on April 12, 2001 (4/12/01 Order attached as Ex. B) and on April 18, 2001 at a status
hearing in the matter the District Court granted Grace a preliminary injunction pending a hearing
thereon which is set for May 3, 2001.

–8–

asbestos indirectly or directly caused by" Grace. The first paragraph of the complaint demonstrates as much, asserting "claims of strict product liability . . . with respect to the danger posed by asbestos contained in Zonolite Attic Insulation products" and attacking "corporate restructuring transactions involving Defendants and W.R. Grace & Co., Inc. and related entities designed to purposefully and illegally shelter certain assets from asbestos-related liability." (Cplt. at ¶ 1). Indeed, the fraudulent conveyance claim is merely a means to an end – *i.e.*, to create a pot of money from which asbestos-related claims might be paid. But because of the Delaware court's order, this Court no longer has the power to determine whether and to what extent there is any asbestos-related liability to the proposed class members at all.

3. **This Adversary Proceeding Should Be Transferred to Delaware Because The Delaware Court Has Exclusive Jurisdiction Over Actions Affecting Property of the Estate**

Because the substantive claim in this case is stayed, the only remaining portion of the case that could go forward is the fraudulent conveyance claim. Yet, by operation of law, the fraudulent conveyance claim asserted by plaintiffs is now a matter that can *only* be raised by Grace in the bankruptcy proceeding: that court has exclusive jurisdiction of this claim and Grace is the only entity with standing to raise it. Plaintiffs' efforts to bypass the bankruptcy court by removing Grace from the caption cannot avoid this rule, for they no longer have standing to assert their claims. Indeed, the Delaware bankruptcy court rightly observed that "nobody would have standing to bring [fraudulent conveyance] cases anyway. *The debtor in possession would be the only ones to have standing to bring them.* So why do I need to issue a TRO or injunction? . . . . [Y]ou are the only ones that have the authority to pursue a fraudulent transfer action" (4/2/01 Tr. at 85-86, Ex. H, emph. added).

–9–

The Delaware court's conclusion is precisely correct. As a threshold matter, this adversary proceeding must be transferred to Delaware because it directly affects the property of the estate over which the Delaware Court now has exclusive jurisdiction. Under 28 U.S.C. § 1334(e), "[t]he district court in which a case under title 11 is commenced or is pending shall have *exclusive jurisdiction* of all of the property, wherever located, of the debtor as of the commencement of such case, and of *property of the estate*." (emph. added). Recovering fraudulent transfers is a key mechanism available to debtors in possession to recover assets for the benefit of the estate and its creditors. Such actions are core proceedings in the bankruptcy case. *See* 28 U.S.C. § 157(b)(2)(H). Only the Delaware court has the authority to determine whether the assets at issue in this lawsuit are, in fact, property of the estate. Courts have repeatedly held that the court where the bankruptcy is pending "should be the forum to decide whether a property is property of the estate," *LTV Steel Company, Inc. v. Board of Education* (In re Chateaugay Corp.), 93 B.R. 26, 29 (S.D.N.Y. 1988). Thus, this action must be transferred to Delaware to allow the Delaware court to make this decision.

Further, as the Delaware court recognized, once a bankruptcy case is commenced, the trustee or debtor in possession has the *exclusive power* to recover fraudulently conveyed assets for the benefit of the estate and its creditors. *See Official Committee of Unsecured Creditors v. Chinery* (In re Cybergenics Corp.), 226 F.3d 237, 240 n.3 (3rd Cir. 2000) ("Only a trustee (or debtor in possession) is authorized to exercise the power to avoid certain transfers or obligations"); *Hall v. Walter* (In re Hall), 139 F.3d 911, 1998 WL 77746, at 2 (10th Cir., Feb. 24, 1998) (absent court authorization, creditor has no authority to pursue avoidance actions); *Carlton*

–10–

*v. Baww, Inc.*, 751 F.2d 781, 785 (5th Cir. 1985) (bankruptcy caused the right to continue prosecution of a fraudulent transfer action to vest with the bankruptcy trustee).

The rationale for this rule is clear: the power to avoid fraudulent transfers should be exercised for the benefit of all of the estate's creditors, not to be enjoyed by individual creditors who have a timing preference over other creditors by obtaining a judgment first. *See Cybergenics*, 226 F.3d at 244 ("[E]mpowering the trustee or debtor in possession to avoid a transaction by pursuing an individual creditor's cause of action is a method of forcing that creditor to share its valuable right with other unsecured creditors."); *Citicorp Acceptance Company, Inc. v. Robison* (In re Sweetwater), 884 F.2d 1323, 1328-299 (10th Cir. 1989) ("All of the avoiding powers have the policy of fair treatment among creditors at their base. . . . The theoretical underpinning of all of them remains the equal treatment among creditors by forcing those who have received an unfair advantage to disgorge the ill gotten gains." (citation omitted)).

In order to ensure the fair treatment of all creditors, the Delaware Court must be allowed to assert jurisdiction over all fraudulent transfer actions. *See* 28 U.S.C. § 1334(e). Absent such control, select creditors who have already filed fraudulent transfer actions may be able to preferentially recover assets of the estate to the detriment of other like creditors. This would hinder the Delaware Court's ability to administer the estate and runs directly counter to the bedrock bankruptcy principle of equal treatment of like creditors. *See In re Lopez-Soto*, 764 F.2d 23, 27 (1st Cir. 1985) ("Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally.") Because 28 U.S.C. § 1334(e) vests this exclusive

-11-

jurisdiction over property of the estate in the court where the bankruptcy case is pending, this proceeding should be transferred to Delaware.[6]

### 4. The Efficient Administration of Grace's Bankruptcy Cases Also Mandates Transfer to Delaware

Courts long have held that the most important factor to consider in determining whether to transfer an adversary proceeding is whether transfer would promote the economic and efficient administration of the estate. *See In re Manville Forest Products Corp.*, 896 F.2d 1384, 1391 (2nd Cir. 1990); *In re Commonwealth Oil Refining Co., Inc.*, 596 F.2d 1239, 1247 (5th Cir. 1979); *Kotlicky v. Belford*, 64 B.R. 679, 681-83 (N.D. Ill. 1986) ("The most important factor is whether the transfer of the proceeding would promote the economic and efficient administration of the estate."). As one court explained:

> In a bankruptcy case, a paramount consideration is speedy and economic administration of the bankruptcy case. This consideration underlies the general rule that the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction.

*In re Nixon Machinery Co.*, 27 B.R. 871, 873 (Bankr. E.D. Tenn. 1983).

When the debtor seeks to transfer an adversary proceeding to the court where its underlying bankruptcy case is pending (the "home" court), courts routinely find that transfer would promote the efficient and economic administration of the estate. *See Bank of America v.*

---

[6] The Delaware court declined to issue a injunction staying all of the fraudulent conveyance claims, but that decision in no way affects the disposition of this motion. As is clear from the transcript, the "whole reason" that the court declined to add these claims to its injunction was that it did not "have a clear enough understanding of all the particulars as to the fraudulent transfer claims" and had not been able to read the motion papers closely enough by the time of the hearing to feel comfortable with adding these claims to the TRO. (4/2/01 Tr. at 118-19, *see also id.* at 116-117, Ex. H).

–12–

*Nickele*, 1998 WL 181827, at \*5 (E.D. Pa. Apr. 16, 1998); *In re Wedlo, Inc.*, 212 B .R. 678, 679

(Bankr. M.D. Ala.1996); *In re Aztec Industries, Inc.*, 84 B.R. 464, 467 (Bankr. N.D. Ohio 1987);

*In re Convent Guardian Corp.*, 75 B.R. 346, 347 (Bankr. E.D. Pa. 1987); *Kotlicky*, 64 B.R. at

681-83; *In re Gallucci*, 63 B.R. 93-95 (Bankr. D. R.I. 1986); *Colarusso v. Burger King Corp.*, 35

B.R. 365, 366-68 (E.D. Pa. 1984); *Stamm v. Rapco Foam, Inc.*, 21 B.R. 715, 724-25 (Bankr.

W.D. Pa.1982); *Seybolt v. Bio-Energy of Lincoln, Inc.*, 38 B.R. 123, 128 (Bankr. D. Mass. 1984).

      As the court in *Nickele* explained: "A presumption has developed that civil

proceedings should be tried in the "home" court, namely, the court where the bankruptcy case

itself is pending." *Nickele*, 1998 WL 181827, at \*5; *see Kotlicky*, 64 B.R. at 681; *In re 1606 New

Hampshire Ave. Associates*, 85 B.R. 298, 305 (Bankr. E.D. Pa. 1988). Likewise, the court in

*Stamm* held:

> The local bankruptcy court is the most convenient court to receive removal
> petitions and acts as the first court to review them. If it is also the "home"
> court, it will decide whether to hear the matter or remand it to the district
> court pursuant to Section 1478(b). If the local bankruptcy court is not the
> "home" court, it should transfer the case to the "home" court.

*Stamm*, 21 B.R. at 724-25. The court in *In re 1606 New Hampshire*, explained the reasoning

behind this rule:

> We are most reluctant to allow pieces to be severed from a case, requiring
> litigation in several jurisdictions, rather than the desired goal of 'centering'
> administration of an entire case in one jurisdiction.

*In re 1606 New Hampshire*, 85 B.R. at 305.

      Here, Grace's estate cannot properly be administered unless all actions affecting

the *res* at issue – the assets of the estate – are consolidated in the court handling Grace's

bankruptcy cases. The instant lawsuit seeks a declaration that the Sealed Air and Fresenius

transactions were fraudulent transfers and seeks payment of those assets to class members -- all of whom have claims against Grace. Because this proceeding directly addresses an issue regarding the assets of the estate that will be available to creditors, it must be transferred to Delaware in order to allow the Delaware Court to marshal all such assets and to prevent preferential treatment of creditors with a timing advantage in filing fraudulent transfer actions. If this fraudulent transfer action is not transferred to Delaware, it will be difficult, if not impossible, efficiently and economically to administer Grace's estate and to ensure equal treatment of like creditors.

Moreover, if this case were to proceed separately, the same witnesses, documents and other evidence ultimately will have to be introduced in both the Delaware bankruptcy cases and this proceeding. As courts have recognized, "it would be extremely burdensome and inefficient to both the court and the parties to litigate these two actions on opposite ends of the United States." *Nickele*, 1998 WL 181827, at *6. It would be far more efficient and economical to transfer this case to Delaware so that it could be dealt with by the court administering Grace's bankruptcy cases.

Courts have not hesitated to transfer adversary proceedings to the "home" court under similar circumstances. In *Haworth, Inc. v. Sunarhauserman Ltd.*, 131 B.R. 359, 363 (Bankr. W.D. Mich. 1991), a bankruptcy court in Michigan transferred an adversary proceeding to the "home" court because it was appropriate to place all disputed matters before the court that was handling the underlying bankruptcy case. Central to the court's reasoning was its determination that the transfer would promote judicial economy and the efficient administration of the bankruptcy estate. Similarly, in *In re Vital Link Lodi, Inc.*, 240 B.R. 15 (Bankr. W.D. Mo.

-14-

1999), the debtor removed an adversary proceeding and sought to have it transferred to the bankruptcy court where its underlying bankruptcy case was pending. The court transferred the adversary proceeding to the home court, explaining that there was a "strong presumption" and "general rule" that "the court where the bankruptcy case is pending is the proper venue for all related proceedings." *Id.* at 19.

Finally, the fact that the substantive injury claims in this case have been stayed by the Delaware court's order militates strongly in favor of transfer. Because no judgment can be rendered on plaintiffs' claims of injury here, the parties to the instant suit could only at most obtain a judgment on whether a fraudulent conveyance occurred at all -- a necessary but not dispositive predicate to ultimate recovery. It hardly serves the ends of judicial economy to invest the time and resources it would take to reach only a partial result in the present litigation -- particularly where another forum exists for resolution of all of the issues presented here.

Because this adversary proceeding directly affects the assets of the estate that will be available to creditors, because Grace now is the only party who has standing to raise the instant fraudulent conveyance claims, and because this case cannot proceed to a final and complete judgment, it should be transferred to the Delaware Court, which has exclusive jurisdiction over property of the estate.

**B.    The Court Should Permit Grace to Intervene in This Action**

In order to facilitate transfer of this action, the Court should permit Grace to intervene in order to protect its interests in the present dispute. That such intervention is proper and indeed necessary is demonstrated by the very allegations in the complaint itself, for the complaint demonstrates that Grace is a party to this action in all important respects – it is only

the formal designation of "defendant" that is missing. Grace should be permitted to intervene in this case to protect its rights and the rights of its other creditors.

### 1.    Grace is Entitled to Intervention As of Right

Under Fed. R. Civ. P. 24(a), intervention is permitted as a matter of right where:

    (1)    the application is timely;

    (2)    the applicant has an 'interest' in the property or transaction which is the subject of the action;

    (3)    disposition of the action as a practical matter may impede or impair the applicant's ability to protect that interest; and

    (4)    no existing party adequately represents the applicant's interest.

*Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995); *Caterino v. Barry*, 922 F.2d 37, 39-40 (1st Cir. 1990) (same). Grace satisfies all four of these requirements.[7]

### a.    Grace's Application is Timely

There can be no argument that Grace's application is untimely. The complaint in this case was filed on April 2, 2001 — the same day that Grace filed its bankruptcy cases, and less than 30 days ago. The present motion is being filed before the named defendants have even answered, thus no party can claim prejudice from the timing of Grace's motion. *See Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir. 1992) ("The more advanced the litigation, the more searching the scrutiny which the motion must withstand."); *Garrity v.*

---

[7] "The application of this framework to the diverse factual circumstances of individual cases requires a holistic, rather than reductionist, approach. (Citation omitted). The inherent imprecision of Rule 24(a)(2)'s individual elements dictates that they 'be read not discretely, but together,' and always in keeping with a commonsense view of the overall litigation." *Warminster Investment Corp. v. Horizons Hotels Corp.*, 191 F.R.D. 48, 49-50 (D. P.R. 1999) quoting *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir.1984).

*Gallen*, 697 F.2d 452, 455 (1st Cir. 1983) ("The timeliness requirement was not designed to penalize prospective intervenors for failing to act promptly; rather, it insures that existing parties to the litigation are not prejudiced by the failure of would-be intervenors to act in a timely fashion."). In short, this motion is timely under any standard. *See, e.g., UPS Worldwide Forwarding, Inc. v. U.S. Postal Service*, 853 F.Supp. 800, 807 (D.Del.1994), *reversed*, 66 F.3d 621, *cert. denied*, 116 S.Ct. 1261 (Motion for permissive intervention was timely when filed within three months after suit was initiated, less than one month after motion to dismiss was filed, and before any discovery was commenced); *Oregon Environmental Council v. Oregon Dept. of Environmental Quality*, 775 F.Supp. 353-357-58 (D.Or.1991) (Motion to intervene as of right was timely where no discovery had taken place, no significant negotiations between parties had occurred, and applicants for intervention had raised issue concerning jurisdiction of court to hear dispute in motion to dismiss complaint); *Jet Traders Inv. Corp. v. Tekair, Ltd.*, 89 F.R.D. 560, 568 (D. Del.1981) ("it is clear that where discovery has not been completed, there have been no significant decisions on the merits considered or decided, and the parties could not be prejudiced by that delay, the motion must be considered timely.").

    **b.**   **Grace Has an Interest in the Property and Transactions That Are the Subject of this Action**

    Grace also has a "significantly protectable" interest in the property and transactions that are the subject of this action. *See Donaldson v. United States*, 400 U.S. 517, 531 (1971) (establishing "significantly protectable interest" standard); *see also Warminster*, 191 F.R.D. at 50 ("'[w]hile the type of interest sufficient to sustain intervention as of right is not

-17-

amenable to precise and authoritative definition, a putative intervenor must show at a bare

minimum that it has a 'significantly protectable interest.'").

Grace's interests in this case are manifold:

• As discussed in detail above, Grace has an interest in the property and transactions in this case because the claim being asserted by the plaintiffs is property of the bankrupt estate. As the debtor in possession, Grace has the right and the duty to recover all assets for the benefit of its creditors. *Petit v. New England Mortgage Serv.*, Inc., 182 B.R. 64, 69 (D. Me. 1995). ("Courts have noted that since the norm is for a debtor to be 'in possession' during the reorganization, 'a debtor-in-possession has all the rights and duties of a Trustee in a chapter 11 case.'. . . Among those rights and duties is the 'duty to protect and conserve property in its possession for the benefit of creditors.'"). Should this case proceed without Grace's participation, Grace will have no means by which to protect the interests of its creditors.

• Grace already is a party defendant in at least one other lawsuit that is virtually identical to this action. This fact alone demonstrates that Grace has a direct interest in the adjudication of the question whether its transactions with the defendants were fraudulent. *Conservation Law Foundation of New England, Inc. v. Mosbacher*, 966 F.2d 39, 42 (1st Cir. 1992) ("interest must be direct, not contingent.").

• Grace also will be forced actively to participate in this action whether it is a named plaintiff or not. Plainly, both plaintiffs and defendants will seek depositions and documents from Grace, again demonstrating Grace's direct interest in this dispute.

• Finally, Grace's economic interests also will be implicated by this suit as the named defendants may ultimately have indemnity claims against Grace. *See Knapp v. Hankins*, 106 F.Supp. 43, 47 (E.D.Ill.1952) (an indemnitor may intervene in an action against principal debtor); *see also* 4/2/01 Tr. at 94, Ex. H. Courts repeatedly have found that "[p]otential economic harm to a would-be intervenor is a factor that warrants serious consideration in the interest inquiry." *Public Service Co. of New Hampshire v. Patch*, 136 F.3d 197, 205 (1st Cir.1998). The risk that Grace will be forced to indemnify the named defendants certainly constitutes potential economic harm sufficient to warrant intervention so that Grace can protect its economic interests.

In sum, Grace has substantial protectable interests in this case that warrant intervention as a right.

–18–

    c.    **Disposition of This Matter Could Impede Grace's Ability to Protect its Interests**

For many of the same reasons, there is a substantial risk that Grace will not be able to protect its interests absent intervention. *See Wright & Miller*, Federal Practice and Procedure, § 1908 (nature of "interest" required and effect of disposition are "closely related issues"). The potential preclusive aspects of an adverse outcome in this case are numerous: decisions in this case about whether the transactions between Grace and the defendants were indeed fraudulent as well as the dollar values of those conveyances could complicate the bankruptcy proceedings, direct an outcome in the parallel California Suit in which Grace is a party, and supply a judgment from which defendants might mount any subsequent indemnity action. These are not inconsequential results and they fall squarely within the standards for permitting intervention.

Since 1966, when Rule 24 was amended to liberalize intervention rights, courts regularly have permitted parties to intervene where a disposition would have a significant practical impact on a proposed intervenor's rights. Indeed, courts repeatedly have found that "*stare decisis* may by itself furnish the practical disadvantage required" for petitioner to be entitled to intervention as of right. *E.g. Francis v. Chamber of Commerce of U. S.*, 481 F.2d 192, 195 n.8 (4th Cir. 1973). "The court is not limited to considering consequences of a strictly legal nature but may consider any significant legal effect in the applicant's interest and is not restricted to a rigid *res judicata* test." *Natural Resources Defense Council, Inc. v. U. S. Nuclear Regulatory Commission*, 578 F.2d 1341, 1345 (10th Cir. 1978); *see also* Wright & Miller, *Federal Practice and Procedure*, § 1908 (1966 amendment to Rule 24 ); *Meeropol v. Nizer*, 505

–19–

F.2d 232, 236 (2nd Cir. 1974) (paperback publisher permitted to intervene in copyright infringement action against hardback publisher in order to protect intervenor's ultimate rights to publish); *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 825 (5th Cir. 1967) (motion to intervene granted where a decision against named defendants would make any later claim of proposed intervenor worthless).

Moreover, given the context in which the present suit arises — one of multiplying and parallel actions, permitting Grace to intervene accords with the fundamental policy objectives behind the rule of intervention. As one commentator has observed, "intervention may have several evident advantages. It can insure against inconsistent results and avoid multiplicity of litigation. It can give the prospective intervenor a crack at the initial judgment of the court on questions of law and law application; in subsequent litigation he will have to contend with *stare decisis* in the same jurisdiction, or comity in another." David L. Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitration*, 81 Harv.L.Rev. 721, 733 (1968).

**d.      No Existing Party Can Adequately Represent Grace's Interests**

Again for many of the reasons already discussed, none of the existing parties adequately can represent Grace's interests in this litigation. The burden of demonstrating inadequate representation is minimal, and "the possibility of divergence of interest need not be great in order to satisfy the burden of the applicants." *Natural Resources*, 578 F.2d at 1346; *see also Conservation Law Foundation*, 966 F.2d at 44 ("An intervenor need only show that representation may be inadequate, not that it is inadequate."). In *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979), the First Circuit found that a proposed

--20--

intervenor "ordinarily must demonstrate adversity of interest, collusion, or nonfeasance" to satisfy this part of the intervention standard.

Here, the interests of both the plaintiffs and the named defendants are adverse to Grace's, albeit to different degrees. Obviously, the plaintiffs here are adverse to Grace's interests, but so, too are the named defendants. As noted above, the named defendants ultimately may assert indemnity claims against Grace, demonstrating an adversity of interest. More importantly, *neither* the plaintiffs nor the defendants can represent Grace's interests as debtor in possession – *i.e.*, neither has any incentive to protect Grace's assets for the benefit of all of Grace's creditors. *In re Cybergenics Corp.*, 226 F.3d at 243 (paramount duty of a debtor in possession is to act on behalf of the bankruptcy estate – *i.e.*, for the benefit of the creditors). Thus, Grace has a unique interest of its own in the fraudulent transfer claim being asserted here, warranting intervention as a matter of right.

## 2.   Grace Also is Entitled to Permissive Intervention

Even if the Court were to conclude that intervention by right is technically unavailable, Grace should be permitted to intervene in this case under Rule 24(b)(2) for all of the reasons discussed above. The standard for such permissive intervention requires simply that the "applicant's claim or defense and the main action have a question of law or fact in common," and the only limitation on the Court's discretion to grant permissive intervention is that "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the individual parties." Fed. R. Civ. P. 24(a)(2). Here, the questions of law and fact necessary for Grace's defenses and claims as debtor in possession are identical to those that will arise in this case. Furthermore, Grace's participation in the case will not unduly prejudice the

rights of the individual parties. As the allegations of the complaint demonstrate, Grace would be a party to this suit in all but name even if intervention were not allowed. It would be manifestly unfair to force Grace to participate in the discovery stage of this case while at the same time precluding Grace from being able to protect its – and its creditors' – interests.

## IV.    CONCLUSION

Grace has the right and the obligation to intervene in this action. The claims in this case are inextricably bound up with the thousands of other asbestos-related claims against Grace that have been stayed in deference to Grace's Chapter 11 filing. The inescapable effect of that filing is that the asbestos-related claims in this case likewise are stayed, and that Grace now is the only litigant that may pursue the remaining fraudulent conveyance claims. Those claims must proceed in the Delaware court. Grace thus respectfully requests that the Court grant its motion to intervene and transfer venue so that this case may properly and efficiently be adjudicated in the Delaware forum where it belongs.

Dated:  April 25, 2001                        Respectfully submitted,

                                              Robert A. Murphy
                                              BBO No. 363700
                                              CASNER & EDWARDS, LLP
                                              One Federal Street
                                              Boston, MA 02110
                                              (617) 426-5900
                                              (617) 426-8810 (fax)

                                              And

David M. Bernick
James H.M. Sprayregen
Reed S. Oslan
Sarah R. Marmor
KIRKLAND & ELLIS
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000
(312) 861-2200 (fax)

*Counsel for W.R. Grace & Co.
and W.R. Grace & Co. - Conn.*

52000.56/182864

−23−