# EXHIBIT T

THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: W.R. Grace & Co., et al., | ) CHAPTER 11 |
| | ) |
| DEBTORS, | ) BANKRUPTCY NO. 01-01139 (JJF) |
| | ) (Jointly Administered) |
| MRS. JACKIE LEWIS, BONNIE LEWIS, | ) |
| THOMAS LEWIS, PAMELA TELLESCH, | ) |
| WAYNE TELLESCH, BRIDGET LOEHNER, | ) |
| DENNIS LOEHNER, AND MRS. JANE ZAJAC, | ) |
| on behalf of themselves and all others similarly | ) |
| situated, | ) |
| | ) |
| Plaintiffs, | ) ADVERSARY COMPLAINT |
| v. | ) |
| | ) |
| W.R. GRACE & COMPANY (a Delaware | ) |
| Corporation); W.R. GRACE & COMPANY- | ) |
| CONN (a Connecticut Corporation); W.R. GRACE | ) Adversary No. 01-_____ |
| & COL., a/k/a/ GRACE, an association of business | ) |
| entities; and SEALED AIR CORPORATION (a | ) |
| Delaware Corporation), NATIONAL MEDICAL | ) |
| CARE, INC.; FRESENIUS A.G.; FRESENIUS | ) |
| U.S.A., INC. and FRESENIUS NATIONAL | ) |
| MEDICAL CARE, INC., a/k/a FRESENIUS | ) |
| MEDICAL CARE HOLDINGS, INC., | ) |
| | ) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT SEEKING
## ZONOLITE ATTIC INSULATION RELIEF

The plaintiffs, Mrs. Jackie Lewis, Bonnie Lewis, Thomas Lewis, Pamela Tellesch,

Wayne Tellesch, Bridget Loehner, Dennis Loehner and Mrs. Jane Zajac (Plaintiffs), on behalf of

themselves and all others similarly situated and, as Plaintiffs in the above-captioned adversary

proceeding, allege for their complaint, upon knowledge of their own acts and upon information

and belief as to all other matters, as follows:

1138

## Introduction

1.    This is an adversary proceeding under Fed. R. Bankr. P. 7001 (7) and (9) and Fed. R. Bankr. P. 7065, brought on behalf of thousands of property owners in the United States and its territories whose properties contain Zonolite Attic Insulation (ZAI), an asbestos-containing loose fill product that unknowingly contaminates the properties of its consumers and that was manufactured solely by the debtor, W.R. Grace & Co. (Grace) and related entities. [1]  This adversary proceeding seeks to achieve three salient goals of this Chapter 11 case.

2.    First, this adversary proceeding seeks nationwide class certification of the Zonolite claims in order to achieve the fair and efficient adjudication of ZAI matters consistent with the constitutional and statutory due process rights of many tens of thousands American property owners and those exposed to ZAI. Only through the exercise of powers granted by Rule 23 of the Federal Rules of Civil Procedure may the shared ends of efficiency, finality and fairness be achieved. Particularly where, as here, almost all of the thousands exposed to ZAI have *no* information *whatsoever* about the ZAI contamination issues, nor of the public health issues surrounding it, nor of the widespread nature of ZAI, nor even of its presence (or lack thereof) in a particular home, Rule 23 as the only available tool that will provide an efficient,

---

[1]    The Debtors consist of the following 62 entities: W.R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.). W.R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon. Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecaig, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-g II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Crop., Grace Washington, Inc., W.R. Grace Capital Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH. Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc.. MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation. Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

2

final and fair resolution of the claims.

3.    Second, this adversary proceeding seeks creation, on behalf of the nationwide Class, of a reasonable program designed to notify and educate owners of ZAI contaminated property and to enable them to take preventative and restorative measures to eliminate the dangers posed by exposure to ZAI created by Grace and related entities. Paramount among the objectives of the adversary proceeding is the dissemination of health and safety warnings through an on-going educational campaign to ensure that American property owners are apprized of the dangers associated with asbestos contaminated insulation, thus averting potential injury and permitting persons to take reasonable precautionary measures to protect themselves and others at risk of exposure. Educational programs would also provide ZAI consumers with information as to the necessary precautions required to minimize asbestos exposure and further contamination of their properties. The remediation component will ensure the availability of appropriate, uniform operation and maintenance of abatement activities. Absent such relief, Americans with ZAI contaminated property will unknowingly and needlessly expose themselves and others to unsafe levels of airborne asbestos. It is highly likely that, in time, exposure to this deadly carcinogen will be manifested by a multitude of often fatal diseases.

4.    Third, this adversary proceeding seeks to hold Grace's related entities, Sealed Air Corporation (Sealed Air) and National Medical Care, Inc. and its successors (NMC), directly liable to ZAI property owners. Given the magnitude of the wrongful conduct of Grace and its related entities of Sealed Air and NMC – manufacture and distribution of known asbestos-containing ZAI for decades to American property owners – and the clear necessity to abate the hazard currently posed by the continued use of the product; adjudication of direct and fraudulent transferred liability against Grace, Sealed Air and NMC is necessary to resolve all claims of

3

00101161

those individuals exposed to ZAI contaminated properties.

## Parties

5.    Plaintiff, Mrs. Jackie Lewis, is a resident of Vincennes, Indiana and owner of real property in Indiana where Zonolite Attic Insulation has been installed. Mrs. Jackie Lewis is prepared to serve as representative of a Class of all others similarly situated.

6.    Plaintiffs, Bonnie Lewis and Thomas Lewis, are residents of Vincennes, Indiana and owners of real property in Indiana where Zonolite Attic Insulation has been installed. Bonnie Lewis and Thomas Lewis are also prepared to serve as representative of a Class of all others similarly situated.

7.    Plaintiffs, Pamela Tellesch and Wayne Tellesch, are residents of Cutbank, Montana and owners of real property in Montana where Zonolite Attic Insulation has been installed. Pamela Tellesch and Wayne Tellesch are also prepared to serve as representative of a Class of all others similarly situated.

8.    Plaintiffs, Dennis Loehner and Bridget Loehner, are residents of South Milwaukee, Wisconsin and owners of real property in Wisconsin where Zonolite Attic Insulation has been installed. Dennis Loehner and Bridget Loehner are also prepared to serve as representative of a Class of all others similarly situated.

9.    Plaintiff, Mrs. Jane Zajac, is a resident of Milwaukee, Wisconsin and owner of real property in Milwaukee, Wisconsin where Zonolite Attic Insulation has been installed. Mrs. Jane Zajac is also prepared to serve as representative of a Class of all others similarly situated.

10.    Defendant, W.R. Grace & Company-Conn (Grace Connecticut), is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of

4

00101161

business in Columbia, Maryland. At all times relevant to facts alleged in this Complaint, Grace
Connecticut, or its predecessor in interest, engaged in the business of mining manufacturing,
marketing, distributing, and selling Zonolite Attic Insulation throughout the United States,
including throughout Montana.

11.     Defendant, W.R. Grace & Company (Delaware) (hereinafter "Grace Delaware"),
is a corporation organized and existing under the laws of the State of Delaware, with its principal
place of business in Columbia, Maryland. Grace Delaware is an alter ego of Grace Connecticut
and it is a successor corporation that is liable for the actions of predecessor companies, including
W.R. Grace & Co.-Conn., W.R. Grace & Co., a New York corporation, Grace Holding, Inc.,
Montana Vermiculite Company, and Zonolite Company with respect to the claims and
allegations of this complaint. At times relevant to facts alleged in this Complaint, Grace
Delaware was, *de facto*, a manufacturer and seller of Zonolite Attic Insulation throughout the
United States, including Montana.

12.     Defendant, W. R. Grace & Co., a/k/a GRACE, is an association of corporations,
conglomerates, holding companies, and other business entities and persons transacting business
in Montana under the common name "W.R. Grace & Co." and/or "GRACE." The associated
entities so conducting business include Grace Holding, Inc., a Delaware corporation, W.R. Grace
and Co., a New York corporation, W.R. Grace & Co., a Delaware corporation, W.R. Grace and
Co.-Conn., a Connecticut corporation, and other corporations, subsidiaries and business entities.
This association of business entities is hereinafter referred to as "the Grace Association".

13.     Defendant, Sealed Air Corporation (Sealed Air), is a Delaware corporation and a
successor corporation which is liable for the actions of predecessor companies, including W.R.
Grace & Co., a Delaware corporation (Old Grace), W.R. Grace & Co.-Conn., W.R. Grace & Co.,

a New York corporation, Grace Holding, Inc., Montana Vermiculite Company, and Zonolite Company with respect to the claims and allegations of this complaint. Sealed Air's principal place of business is in Saddle Brook, New Jersey. W.R. Grace created Sealed Air in order to fraudulently shield the assets of the above-named defendants from anticipated liability for asbestos claims including the claims asserted in this Complaint. Sealed Air does business in the State of Montana.

14.     Grace Connecticut, Grace Delaware, the Grace Association, and Sealed Air are hereinafter collectively referred to as "Grace."

15.     Defendant National Medical Care, Inc. (NMC), is a New York corporation with its corporate headquarters located at 1610 Trapelo Road, Waltham, Massachusetts. At all times relevant to the facts alleged in this complaint, National Medical Care, Inc., or its predecessors in interest (including but not limited to W.R. Grace & Co., a Delaware Corporation; W.R. Grace & Co.- Conn; W.R. Grace & Co., a New York Corporation; Grace Holding, Inc.; Montana Vermiculite Company; and Zonolite Company), engaged in the business of mining vermiculite ore and manufacturing, marketing, distributing and selling Zonolite Attic Insulation. Defendant National Medical Care, Inc. is a successor corporation liable for the actions of its predecessor corporations and was created in order to fraudulently shield the assets of those predecessor corporations.

16.     Defendant Fresenius A.G. is a foreign corporation with its corporate headquarters located at Bordenberg 14, 61440 Oberursel, Germany. At all times relevant to the facts alleged in this complaint, Fresenius A.G., or its predecessors in interest (including but not limited to W.R. Grace & Co., a Delaware Corporation; W.R. Grace & Co.- Conn; W.R. Grace & Co., a New York Corporation; Grace Holding, Inc.; Montana Vermiculite Company; and Zonolite

6

00101161

Company) engaged in the business of mining vermiculite ore and manufacturing, marketing, distributing and selling Zonolite Attic Insulation. Defendant Fresenius A.G. is a successor corporation liable for the actions of predecessor corporations and was created in order to fraudulently shield the assets of its predecessor corporations.

17.     Defendant Fresenius U.S.A., Inc. is a Delaware corporation with its corporate headquarters located at 2637 Shadelands Dr., Walnut Creek, California 94598. At all times relevant to the facts alleged in this complaint, Fresenius U.S.A., Inc., or its predecessors in interest (including but not limited to W.R. Grace & Co., a Delaware Corporation; W.R. Grace & Co.- Conn; W.R. Grace & Co., a New York Corporation; Grace Holding, Inc.; Montana Vermiculite Company; and Zonolite Company) engaged in the business of mining vermiculite ore and manufacturing, marketing, distributing and selling Zonolite Attic Insulation. Defendant Fresenius U.S.A., Inc. is a successor corporation liable for the actions of its predecessor corporations and was created in order to fraudulently shield the assets of its predecessors corporations.

18.     Defendant Fresenius Medical Care, A.G. is a German Corporation with its principal place of business at Gluckensteinweg 5, 61343 Bad Homburg, Germany. At all times relevant to the facts alleged in this complaint, Fresenius Medical Care, A.G., or its predecessors in interest (including but not limited to W.R. Grace & Co., a Delaware Corporation; W.R. Grace & Co.- Conn; W.R. Grace & Co., a New York Corporation; Grace Holding, Inc.; Montana Vermiculite Company; and Zonolite Company) engaged in the business of mining vermiculite ore and manufacturing, marketing, distributing and selling Zonolite Attic Insulation. Defendant Fresenius Medical Care A.G. is a successor corporation liable for the actions of its predecessor corporations and was created in order to fraudulently shield the assets of its predecessor

7

00101161

corporations.

19.    Defendant Fresenius National Medical Care, Inc., a/k/a Fresenius Medical Care Holdings, Inc., is the name of the reorganized entity created through the fraudulent conveyances described herein; a New York Corporation headquarters in Massachusetts. At all times relevant to the facts alleged in this complaint, Fresenius National Medical Care, Inc., or its predecessors in interest (including but not limited to W.R. Grace & Co., a Delaware Corporation; W.R. Grace & Co.- Conn; W.R. Grace & Co., a New York Corporation; Grace Holding, Inc.; Montana Vermiculite Company; and Zonolite Company) engaged in the business of mining vermiculite ore and manufacturing, marketing, distributing and selling Zonolite Attic Insulation. Defendant Fresenius National Medical Care, Inc. is a successor corporation liable for the actions of its predecessor corporations and was created in order to fraudulently shield the assets of those predecessor corporations.

### Jurisdiction and Venue

20.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § § 157 and 1334. This adversary proceeding is a non-core proceeding pursuant to 28 U.S.C. § 157.

21.    This Court has personal jurisdiction over each of the parties.

22.    Venue of this action in this district is proper pursuant to 28 U.S.C. § 1409.

8

00101161

23.    The relief requested herein is predicated on Fed. R. Bankr. P. 7065 and Fed R.

Civ. P. 23.

## Facts

### The Manufacture and Distribution of ZAI

24.    Grace, Sealed Air and NMC were the manufacturers, distributors, and sellers of

Zonolite Attic Insulation.

25.    Zonolite Attic Insulation is chiefly composed of expanded vermiculite ore.

26.    The predominant source of vermiculite ore used by Grace in the production of

Zonolite Attic Insulation was Grace's vermiculite mine located on Zonolite Mountain near

Libby, Montana.

27.    Grace transported vermiculite ore from Zonolite Mountain to expansion plants

throughout the United States for purposes of manufacturing the finished insulation product,

Zonolite Attic Insulation.

28.    Zonolite Attic Insulation manufactured, distributed, and sold by Defendants was

purchased and installed in attics of thousands of homes, businesses, and other properties located

throughout the State of Montana and the United States.

29.    Plaintiffs are owners of real property in which Zonolite Attic Insulation

manufactured and sold by Defendants was installed, which insulation was manufactured from

vermiculite ore originating from Grace's Libby, Montana mine.

30.    Zonolite Attic Insulation manufactured by Defendants from Libby vermiculite ore

is contaminated with asbestos, including tremolite, a rare and exceedingly deadly form of

asbestos.

9

00101161

31.    Zonolite Attic Insulation is a loose-fill type insulation. Asbestos contained in Zonolite Attic Insulation takes the form of microscopic dust that is readily suspended, re-suspended, and lofted into the air upon the slightest disturbance of Zonolite Attic Insulation. Once suspended, asbestos fibers maintain their fog-like airborne status for extended periods of time, are readily transported by natural air currents, and represent a continuing source of exposure.

32.    Tremolite asbestos itself consists of sharp, microscopic needle-like fibers that are readily inhaled and easily pierce and lodge in the lining of the lungs. The lungs are unable to remove tremolite asbestos that penetrates the lung tissue, and fibers are not washed out of the lung tissue by blood. As a result, the assaulted lung areas become inflamed, in time heavily scarred, and ultimately fail to function. For persons inflicted with this slow and lingering disease process, it becomes increasingly difficult to breathe. Ultimately, the person suffocates.

33.    Asbestos is a virtually indestructible substance. There is no known safe level of exposure to asbestos.

34.    Asbestos is a known human carcinogen. Inhalation of asbestos fibers, either through chronic exposure or one-time heavy exposure, can lead to mesothelioma (a diffuse cancer which spreads over the lung lining surface), lung cancer, asbestosis, and other pulmonary diseases that are progressive and often fatal.

35.    Disturbance of Zonolite Attic Insulation exposes individuals to heavy doses of airborne asbestos sufficient to cause mesothelioma, lung cancer, asbestosis, and other serious pulmonary diseases.

36.    At all times material to allegations made in this Complaint, Defendants had actual knowledge that Zonolite Attic Insulation manufactured from Libby, Montana Digi Int'l, Inc.

10

Sec. Litig., 6 F. Supp. 2d 1089, 1103 (D. Minn. 1998), vermiculite was dangerously contaminated with asbestos.

37.    At all times material to allegations made in this Complaint, Defendants had actual knowledge that exposure to Zonolite Attic Insulation in the ordinary use of that product, exposed users to dangerous levels of asbestos dust.

38.    Zonolite Attic Insulation manufactured by Defendants has caused asbestos contamination to real property in which that product has been installed.

39.    Individuals engaged in ordinary activities commonly associated with property ownership disturb Zonolite Attic Insulation, lofting dangerous levels of asbestos into the air they breathe.  Such activities include use of attic spaces for storage of personal belongings, home maintenance activities that involve accessing attic space, home remodeling, installing or replacing of electrical fixtures, upgrading of attic insulation, and use of attic spaces by children for play.

40.    Asbestos dust contaminated in Zonolite Attic Insulation can readily migrate from attic spaces into living spaces in homes, constituting a present threat to persons occupying those homes.  As such, individuals engaged in the ordinary use and enjoyment of their real property in which Zonolite Attic Insulation is installed are exposed to levels of asbestos threatening to their health and safety.

41.    Persons who own and/or reside in homes insulated with Zonolite Attic Insulation are often unaware that Zonolite Attic Insulation is even present within their home.  Further, persons who own and/or reside in homes insulated with Zonolite Attic Insulation are unaware that Zonolite Attic Insulation contains dangerous levels of asbestos and are unaware of the health risks associated with asbestos.

00101161

42.    Persons who own and/or reside in homes insulated with Zonolite Attic Insulation are unaware that disturbing of Zonolite Attic Insulation exposes individuals to dangerous levels of asbestos. Persons who own and/or reside in homes insulated with Zonolite Attic Insulation are unaware that Zonolite Attic Insulation has contaminated their real property. Persons who own and/or reside in homes insulated with Zonolite Attic Insulation are unaware that they must exercise extreme caution where contact with Zonolite Attic Insulation is possible so as to avoid exposure to asbestos dust contained in Zonolite Attic Insulation.

43.    While consumers remain essentially unaware of the substantial dangers posed by Zonolite Attic Insulation, Defendants and/or their predecessor corporations were aware of such dangers and engaged in an intentional pattern and practice of concealing the dangers associated with Zonolite Attic Insulation.

44.    From approximately 1930 until 1963, Zonolite Company operated the vermiculite mining and processing plant on Zonolite Mountain. Grace acquired the Libby vermiculite mine from Zonolite Company in 1963. Grace had actual knowledge at the time of its purchase that the vermiculite ore mined from Zonolite Mountain, and used to manufacture Zonolite Attic Insulation, was heavily contaminated with tremolite asbestos. Grace was aware of reliable estimates that ore originating from Zonolite Mountain regularly contained in excess of 20% asbestos.

45.    At all times material to facts alleged in this Complaint, Defendants and their predecessor corporations had actual knowledge that asbestos was extraordinarily dangerous and that exposure to even minuscule levels of asbestos causes potentially fatal diseases, including asbestosis, lung cancer, and mesothelioma.

46.    Grace was aware of secret medical tests by Zonolite Company that demonstrated

12

that a substantial portion of Zonolite Company's workforce had contracted lung diseases as a result of exposure to the asbestos contained in the vermiculite used to manufacture Zonolite Attic Insulation. These included the July 20, 1959 report to Raymond Bleich, and August 25, 1964 report to Joseph Kelley, a January 29, 1965 report from Dr. Spicer, and a December 23, 1969 in-house study showing lung disease in 92% of long-term workers.

47.    In the 1970's, Grace conducted internal tests confirming high incidents of lung disease among workers exposed to vermiculite used in the manufacture of Zonolite Attic Insulation including an in-house study reported in a May 24, 1977 memorandum showing these workers' risk of cancer was "five times the national average."

48.    Despite actual knowledge of the health risks associated with Zonolite Attic Insulation, Defendants and/or their predecessor corporations continued to aggressively manufacture, promote, distribute, and sell Zonolite Attic Insulation while concealing and/or failing to disclose the substantial risks of disease associated with asbestos exposure.

49.    Defendants and/or their predecessor corporations conducted secret animal tests that demonstrated an association between tremolite asbestos and mesothelioma including Dr. W. Smith's biological testing (final report May 25, 1978). Despite those findings confirmed by its own tests, Grace publicly denied the existence of a relationship between tremolite asbestos exposure and mesothelioma including in a letter dated May 8, 1979 to county health officer Dr. Richard Irons.

50.    Despite knowledge of the unreasonable risks to human health, Defendants or their predecessor corporations intentionally chose to not warn the public of health risks associated with Zonolite Attic Insulation including an advised decision "not to affix labels" on attic insulation products (May 24, 1977). This decision to conceal from the public such health risks

13

was predicated on a calculation of the financial reward to Defendants or their predecessors corporations should the public be kept uninformed. Written analysis of the financial consequences include a May 24, 1977 "Zonolite Profitability Impact" projecting a "10-50% reduction in sales volume that would result from a requirement to label our products as containing asbestos."

51.    Until Grace withdrew Zonolite Attic Insulation from the market in 1984, Defendants and/or their predecessor corporations affirmatively and actively engaged in steps to conceal the toxicity and dangers of Zonolite Attic Insulation from the public and government agencies charged with police powers to protect public health and safety.

52.    In the 1970s, state and federal officials cited various plants belonging to Grace for excessive asbestos exposures levels including those summarized in the September 21, 1971 memo to R.M. Coquillette. Defendants and/or their predecessor corporations did not normally consider controls to abate these levels "until a citation issued" and only then would each plant be addressed "singly as they are forced to comply."

53.    Defendants and/or their predecessors corporations, falsely and/or misleadingly represented to government officials that Zonolite Attic Insulation had been treated with a binder (a substance that would prevent deadly tremolite fibers from being released into the air) while, in fact, no such binder had been successfully developed or applied to Defendants' Zonolite Attic Insulation product.

54.    Defendants and/or their predecessor corporations failed to test adequately or properly the use of a binder in preventing hazardous exposure to asbestos.

55.    Although Defendants and/or their predecessor corporations publicly represented that Zonolite Attic Insulation posed no health hazard, internal Grace memoranda, including a

14

May 24, 1977 memo from Wood to Brooks and Graf, demonstrate that Grace knew that Zonolite

Attic Insulation posed an unreasonable risk to human health with exposure "concentrations

upward of 15 f/ml" and that Grace anticipated that Zonolite Attic Insulation would "eventually

be banned" by government agencies.

56.    As early as 1977, Grace drafted a press release, stating that it was

"sufficiently concerned about the entire issue of asbestos and associated health hazards to

discontinue this product (Zonolite Attic Insulation)." Despite actual knowledge by Defendants

and/or their predecessor corporations that Zonolite Attic Insulation posed a substantial hazard to

the consuming public, they determined to withhold this important press release to conceal the

health hazards associated with Zonolite Attic Insulation, and to continue to aggressively sell

Zonolite Attic Insulation for an additional seven years.

57.    Defendants and/or their predecessor corporations had superior knowledge, as

compared with the consuming public and government enforcement agencies, with respect to the

health dangers posed by Zonolite Attic Insulation, but concealed their knowledge of the health

dangers associated with their product because they believed that asbestos contained in Zonolite

Attic Insulation would remain undetected.

58.    As a proximate result of the conduct of the Defendants and/or their predecessor

corporations, there is a present, compelling, and immediate need to provide appropriate warnings

to the public of the health dangers associated with Zonolite Attic Insulation. Necessary warnings

include:

a).    Warning that Zonolite Attic Insulation contains tremolite, an especially

dangerous form of asbestos, and that persons should avoid exposure to Zonolite Attic Insulation;

b).    Warning that disturbing Zonolite Attic Insulation exposes individuals to

15

hazardous levels of asbestos;

c).     Warning that persons should not enter or use attic spaces in properties believed to contain Zonolite Attic Insulation, together with advisories on how to identify Zonolite Attic Insulation;

d).     Warning that tests should be conducted on properties where Zonolite Attic Insulation has been disturbed and that disturbance poses a threat that asbestos may have been transported to living spaces of the property; and

e).     Warning that property owners and occupants where Zonolite Attic Insulation has been installed should not engage in remodeling or other activities that involve the disturbance of Zonolite Attic Insulation until an asbestos containment plan has been established by qualified asbestos abatement personnel.

59.     As a direct and proximate result of the conduct of Defendants and their predecessor corporations, real properties of Plaintiffs and Class members have been contaminated with asbestos, requiring the development and implementation of an appropriate operations and maintenance program to limit further exposure to dangerous levels of asbestos.

60.     As a direct and proximate result of the conduct of Defendants and their predecessor corporations, Plaintiffs and Class members will incur substantial costs of property remediation, restoration, and asbestos abatement.

61.     As a direct and proximate result of the conduct of Defendants and their predecessor corporations, owners of real property containing Zonolite Attic Insulation have been deprived of the use and quiet enjoyment of their real property.

62.     Plaintiffs and members of the Class possess property interests in claims against various Defendants and/or their predecessor corporations for harms arising out of

16

00101161

conduct asserted in the Complaint. Defendants and their predecessor corporations knowingly caused injury to the property interests of Plaintiffs and Class members, including through actions to fraudulently shield assets of one another for purposes of evading asbestos liability.

63.    Nationwide, experts estimate that at least 21 million American workers have been exposed to "significant" amounts of asbestos at the workplace since 1940. Millions others have been exposed through environmental contact or contact with relatives who have worked with the products. Because of its injurious propensities, such exposure, in human terms, has meant that literally tens of thousands of people fall ill or die from asbestos-related diseases every year. In legal terms, it has translated into a myriad of lawsuits that have drained judicial resources.

### The Corporate Reorganizations

64.    Aware of its potential risk of asbestos liability of enormous proportions, Grace initiated corporate restructuring transactions during the last decade specifically designed to shield assets from actual or potential judgments.

### The 1996 Fraudulent Transfer

65.    On February 4, 1996, Grace and Fresenius A.G. signed an Agreement and Plan of Reorganization and other related agreements. This transaction was designed to strip out and segregate NMC and other good assets from Grace's specialty chemicals business and asbestos exposure, thus leaving Grace without sufficient capital to pay its asbestos victims and creditors.

66.    Briefly stated, the September 28 and 29, 1996 transactions unfolded as follows:

         a)    Before the transactions, NMC was a wholly-owned subsidiary of Grace-

17

00101161

Conn. (Grace Chemicals), which in turn was a wholly-owned subsidiary of the parent company Grace;

b)      Grace-Conn. transferred the stock of NMC to its parent Grace, thus making Grace-Conn. and NMC equal sibling subsidiaries of Grace;

c)      Grace then transferred the Grace-Conn. stock to a newly-formed subsidiary of Grace, Grace Holding Company, Inc.;

d)      Grace then spun-off and gave to its shareholders this brand new subsidiary, Grace Holding Company, Inc., as a totally separate company. Thus, Grace's sole asset became NMC;

e)      Grace (and, of course, NMC) then merged with Fresenius Medical Care A.G., a wholly-owned subsidiary of Fresenius A.G. Grace's shareholders effectively received 44.8% of the stock of the new entity, Fresenius National Medical Care (FNMC), and Grace ceased to exist; and

f)      Grace Holding Company Inc. was renamed W. R. Grace & Co., a Delaware corporation.

67.     The effect of this series of transactions is that Grace-Conn. – the entity with carrying full responsibility for the asbestos liability and the "new" W. R. Grace & Co. – is totally stripped of, and segregated from, its profitable former subsidiary NMC. W. R. Grace & Co. was, therefore, left with full responsibility for satisfying Grace's asbestos liabilities, but, as intended, was left undercapitalized and did not receive fair value for its now lost assets.

68.     In SEC Form S-4 regarding these 1996 transactions, Grace expressly recognized that the transactions may constitute a fraudulent transfer. In a section titled "Fraudulent Transfer and Related Considerations," Grace acknowledged its exposure when it

18