he top of page

stated:

> Under applicable law, the NMC Distribution would constitute a 'fraudulent transfer' if (a)New Grace or Grace Chemicals is insolvent, (b) the effect of the NMC Distribution would render New Grace or Grace Chemicals insolvent, (c) the NMC Distribution would leave New Grace or Grace Chemicals unreasonably small capital, or (d) New Grace or Grace Chemicals intended to incur, or believed it would incur, debts beyond its ability to pay as such debts mature. . . . Grace believes that, based on the factors considered in connection with the NMC Distribution, the NMC Distribution will not be a fraudulent transfer and will be made out of surplus in accordance with applicable law. There is no certainty, however, that a court would reach the same conclusion in determining that New Grace and Grace Chemicals have satisfied the applicable standards. In this regard, it should be noted that Grace Chemicals has had, and is expected to continue to have, significant liabilities arising out of asbestos-related litigation and claims . . . . If, in a lawsuit filed by an unpaid creditor or a representative of unpaid creditors or a trustee in bankruptcy, a court were to find that, at the time the NMC Distribution was consummated or after giving effect thereto, either New Grace or Grace Chemicals, as the case may be, (a) was insolvent, (b) was rendered insolvent by reason of the NMC Distribution, (c) was engaged in a business or transaction for which its remaining assets constituted unreasonably small capital, or (d) intended to incur, or believed it would incur, debts beyond its ability to pay as such debts matured, then such court might require FNMC or NMC to fund certain liabilities of New Grace or Grace Chemicals, as the case may be, for the benefit of New Grace's or Grace Chemicals' creditors. The same consequences would also apply were a court to find that the NMC Distribution was not made out of the surplus of Grace Chemicals.

69.    As Grace fully expected, the 1996 "NMC Distribution" rendered

Grace insolvent – with unreasonably limited capital reserves. Grace intended and believed that

following, and as a result of, the NMC Distribution transactions, it would have debts beyond its ability

to pay such debts as they matured.

### The 1998 Fraudulent Transfer

70.    In August 1997, Grace – consisting of the pared-down former W.R.

19

Grace-Conn.– entered into an agreement with Sealed Air to effect another fraudulent conveyance transaction structured almost identically to Grace's 1996 fraudulent conveyance transactions involving Fresenius. In this instance, Grace segregated its packaging business from its chemical subsidiary's asbestos liability, thus further diminishing Grace's capital and its ability to pay its asbestos victims and creditors.

71.     Briefly stated, the March 1998 transaction unfolded as follows:

a)     Before the transactions, Grace consisted of a specialty chemicals business and a packaging business;

b)     Grace separated its specialty chemicals business and a packaging business into two separate subsidiaries;

c)     Grace then transferred the stock of Grace-Conn. (it specialty chemicals company) to a newly formed subsidiary of Grace, Grace Specialty Chemicals, Inc.;

d)     Grace then spun-off to its shareholders this brand new subsidiary, Grace Specialty Chemicals, as a totally separate company. This left Grace with its packaging business as its sole asset;

e)     Grace (with its sole asset the packaging company) then merged with and became

Sealed Air Corporation, a company outside the Grace family of companies; and

f)     Grace's shareholders effectively received 63% of the stock of Sealed Air Corporation.

72.     The result of these transactions is that Grace has been completely and intentionally severed  and from, its profitable, formerly affiliated packaging business. The new W. R. Grace & Co. remains solely responsible for satisfying Grace's asbestos liabilities, but is

20

purposefully undercapitalized because its assets have been channeled to its affiliates.

73.     In another Form S-4 filing with the SEC, Grace acknowledged – as it had

with regard to its September 1996 series of transactions – that its March 1998 series of

transactions constitute a fraudulent transfer:

> Claimants may also bring suit seeking recovery from New Seale
> Air or its subsidiaries by claiming that the transfers of assets and
> liabilities in connection with the reorganization of Grace, including
> the separation of Grace's packaging and specialty chemicals
> businesses and the cash transfer to and spin-off of New Grace,
> were 'fraudulent transfers.' A transfer would be a fraudulent
> transfer if the transferor received less than reasonably equivalent
> value transferor was insolvent at the time of the transfer, was
> rendered insolvent by the transfer or was left with unreasonably
> small capital to engage in its business. A transfer may also be a
> fraudulent transfer if it was made to hinder, delay or defraud
> creditors. If any transfers in connection with the reorganization of
> Grace are found to be fraudulent transfers, the recipient (including
> New Sealed Air and its subsidiaries) might be required to return
> the property in the transferor.

74.     Grace represented that the newly-formed W. R. Grace & Co. would be

adequately capitalized and purported to believe that the transfers effected in the 1998 transactions were not

fraudulent. Grace admitted, however, in this SEC filing that "a court applying the relevant legal standards

may not reach the same conclusion."

75.     Valued by the market at more than $6 billion, the 1998 transactions

provided substantial value to Grace's shareholders, who received 100% of the second "new" W. R. Grace &

Co., a premier global specialty chemicals company.   The shareholders also received common and preferred

stock representing approximately 63% of the "new" Sealed Air – the company combining Grace's former

Cryovac business with Sealed Air's protective packaging business.

76.     As a result of the 1996 and 1998 fraudulent transfer transactions, the so-

called W. R. Grace & Co. entity, holding all liability for all of Grace's asbestos claims, is a mere shadow of

21

its former self. Virtually all the conglomerate's assets have been successfully and illegally secured from asbestos claims liability. Thus, the asbestos liabilities facing Grace far exceed Grace's fraudulently diminished worth and far exceed Grace's ability to pay its debts as they mature.

Claims Known to Grace When Undertaking Transfers

77.    As of 1996, Grace was aware that it faced tremendous exposure in the asbestos litigation against it. As of December 31, 1996, Grace reported its aggregate accrued asbestos liabilities to be $994.1 million. That amount included all pending personal injury and property damage claims as well as personal injury claims Grace expected to be filed through 2001.

78.    Grace's asbestos litigation exposure has increased over time. According to its Form-10K filed with the SEC on March 28, 2000, as of December 31, 1999, W. R. Grace & Company was a defendant named in approximately 50,342 asbestos-related lawsuits involving 105,670 claims for personal injury. This number represented an increase over its exposure at the end of 1998, when 45,086 lawsuits involving 97,017 claims for personal injury were pending.

79.    In that same form 10-K, Grace noted that judgments had been entered against it in seven cases for a total of $60.3 million and that it had settled 203 cases for a total of $603.8 million. Grace estimated that its gross aggregate accrual for asbestos liabilities as of December 21, 1999 was $1.084 billion.

80.    At all times mentioned herein, Defendants knew of Grace's massive asbestos liability. With intent to defraud contingent creditors such as Plaintiffs and the Class, Defendants intentionally, willfully, maliciously and fraudulently took the actions herein alleged to defraud and unjustifiably deny the rights of the Plaintiffs and the Class as a whole.

**Class Action Allegations**

81.    Plaintiffs bring this action as a class action for injunctive and equitable

22

relief pursuant to Federal Rules of Civil Procedure 23(b)(3) as to monetary relief and pursuant to

23(b)(2) as to all declaratory, injunctive and other equitable relief on behalf of themselves and a

defined Class of similarly situated individuals. The Class is defined as:

> All owners or occupiers of real property located in the United
> States and/or its territories in which Zonolite Attic Insulation has
> been installed. Excluded from the Class are (i) the Debtors, as
> captioned above, in this Chapter 11 case, their present and former
> officers, directors, affiliated entitites and family members; (ii) the
> class as certified in Barbanti v. W.R. Grace & Co., No. 00-2-
> 01756-6, (Wash. Sup. Ct. Nov. 28, 2000) (granting class
> certification); (iii) the class certified in Anderson v. W.R. Grace &
> Co., 92-CP-25-279 (S.C. Comm. Pleas, Hampton Co.); and
> (iv) any other currently certified state class of owners and/or
> occupiers of real property in which ZAI insulation has been
> installed in connection with the certification of claims against these
> defendants.

82.    The members of the Class are so numerous that their joinder is impracticable.

83.    There are questions of law and fact common to the Class. Members of the Class

share a well-defined community of interest in the questions of law and fact that affect members

of the Class and the questions predominate over questions solely affecting individual members.

Illustrative common issues of law and fact include, but are not limited to, the following:

A.    With respect to the manufacture, distribution and sale of Zonolite Attic

Insulation:

i.    Whether Zonolite Attic Insulation designed, manufactured, and

sold by said Defendants and/or their predecessor corporations is not reasonably safe in its design

and/or manufacture in that it contains dangerous levels of readily-airborne asbestos;

ii.    Whether said Defendants and/or their predecessors knowingly and

intentionally failed to provide adequate warnings in connection with Zonolite Attic Insulation;

iii.    Whether asbestos, contained in Zonolite Attic Insulation and

23

installed in homes, constitutes a present threat to public health and safety;

   iv. Whether Zonolite Attic Insulation installed in homes constitutes a present threat to health and safety in that owners and occupants, engaged in their ordinary use and enjoyment of their properties will be exposed to dangerous levels of asbestos;

   v. Whether owners and occupiers of properties containing Zonolite Attic Insulation are installed are unaware of, or unappreciative of, dangers posed by this product, unaware of safeguards that must be taken to avoid harmful exposure to asbestos, unaware of operations and maintenance practices appropriate to properties where Zonolite Attic Insulation is installed, and unaware of the necessity to, and prudent means by which to, engage in such activities as testing, remediation, removal, or abatement;

   vi. Whether said Defendants and/or their predecessor corporations concealed from consumers and government agencies responsible for public health, material information concerning the health hazards associated with Zonolite Attic Insulation;

   vii. Whether said Defendants and/or their predecessor corporations made public announcements, statements, or representations concerning Zonolite Attic Insulation that were untrue, deceptive, or misleading;

   viii. Whether said Defendants and/or their predecessor corporations made public announcements, statements, or representations with respect to Zonolite Attic Insulation that had a capacity to deceive a substantial portion of the consuming public.

   ix. Whether the practices of said Defendants and/or their predecessor corporations representing Zonolite Attic Insulation as asbestos free and safe constitute unfair or deceptive business practices;

   x. Whether preliminary injunctive relief (including

24

warnings to the public) is warranted regarding the dangers of exposure to Zonolite Attic Insulation;

xi.     Whether members of the Class have suffered harm to their property interests in that the presence of Zonolite Attic Insulation requires property owners and property occupants to restrict the use and quiet enjoyment of their property;

xii.     Whether Defendants' conduct with respect to Zonolite Attic Insulation warrants punitive damages.

B.     With respect to the corporate restructuring transactions of 1996 and 1998:

i.     Whether Defendants and/or their predecessor corporations fraudulently conveyed assets in violation of the Uniform Fraudulent Transfer Act;

ii.     Whether Defendants and/or their predecessor corporations fraudulently conveyed assets in violation of the common law of fraudulent conveyance;

iii.     Whether Defendants and/or their predecessor corporations conspired to fraudulently transfer assets in violation of Plaintiffs' and the Class members' rights;

iv.     Whether Defendants and/or their predecessor corporations depleted or dissipated Grace's assets;

v.     Whether Defendants and/or their predecessor corporations conspired to deplete or dissipate Grace's assets;

vi.     Whether Grace received a reasonably equivalent value in exchange for the assets it transferred to Defendants;

vii.     Whether Grace was engaged, or was about to be engaged, in business in which its remaining assets after the transfer were unreasonably inadequate;

viii.     Whether Grace intended to incur or reasonably believed it would

25

incur debts beyond its ability to pay as they became due;

           ix.     Whether Defendants and/or their predecessor corporations made the transfers as herein alleged with actual intent to hinder, delay or defraud the Plaintiffs and the Class.

84.    The claims of Plaintiffs arise from the same events and course of conduct by Defendants that give rise to the claims of the other Class members. Plaintiffs are members of the Class they seek to represent and possess the same interests and have suffered the same injuries as other Class members making Plaintiffs' claims typical of the claims of the Class generally.

85.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions and products liability litigation.

86.    Class certification is appropriate pursuant to Rule 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class and class-wide adjudication of Class members' claims is superior to other available methods for the fair and efficient adjudication of this controversy. The superiority of proceeding on a Rule 23(b)(3) basis is particularly the case where, as here, the fair, efficient and final resolution of a plan of reorganization ought to resolve all issues affecting Zonolite Attic Insulation matters.

87.    Class certification is appropriate pursuant to Rule 23(b)(2) because Defendants have acted, or refused to act, on grounds generally applicable to the Class, in that Defendants and their predecessor corporations have concealed and failed to disclose hazards associated with Zonolite Attic Insulation, rendering millions of homeowners unaware of present dangers in their homes and causing harm and hardship even to those aware of the presence of this toxic product.

26

00101161

Furthermore, Defendants and their predecessor corporations have engaged in fraudulent corporate restructuring transactions designed to illegally shield the assets of W.R. Grace & Co., Inc. from individuals, including Plaintiffs and the Class, harmed by tremolite asbestos containing Zonolite Attic Insulation. Defendants' common course of conduct makes appropriate preliminary and final injunctive and declaratory relief.

### Claims for Relief

88.    Plaintiffs hereby assert each and every cause of action and remedy at law or in equity supported by facts alleged in this Complaint. The causes of action and remedies at law and in equity include, but are not limited to, each of the following:

### First Claim for Relief
### (Strict Liability)

89.    Plaintiffs hereby reallege and incorporate each allegation contained in the preceding paragraphs of this complaint.

90.    Zonolite Attic Insulation is not reasonably safe in design and not reasonably safe in its manufacture in that it contains readily-loftable asbestos, exposing owners and occupiers of property to unreasonable dangers of injury and damage.

91.    Zonolite Attic Insulation manufactured by Defendants is defective in its design and formulation in that it poses dangers beyond that contemplated by an ordinary consumer, which dangers proximately caused harm to Plaintiffs and Class members.

92.    Zonolite Attic Insulation was not accompanied by appropriate or adequate warnings and not accompanied by appropriate or adequate instructions concerning the safe use, handling, or installation of the product, proximately causing harm to Plaintiffs and Class members.

93.    Zonolite Attic Insulation manufactured by Defendants was defective due to

27

inadequate post-marketing warnings and/or instructions in that Defendants acquired actual knowledge of risks to health posed by Zonolite Attic Insulation, but failed to provide adequate warnings to users, consumers, or the public, proximately causing harm to Plaintiffs and Class members.

94.     As a direct, proximate and legal result of defendants dangerous product as described herein, Defendants are strictly liable for injury sustained by, and will continue to be sustained by, Plaintiffs and class members. Injuries suffered include, but are not limited to, contamination of real and personal property, costs of testing, costs of property remediation, costs of asbestos containment, costs of asbestos abatement, and costs and hardship resulting from reasonable effort to avert harm including interference with Class members' use and enjoyment of real property.

### Second Claim for Relief
### (Negligence)

95.     Plaintiffs hereby reallege and incorporate each allegation contained in the preceding paragraphs of this complaint.

96.     Defendants had a duty to exercise reasonable care in the manufacture, testing, distribution, and sale of Zonolite Attic Insulation including a duty to ensure that its product did not pose unreasonable risk of harm to consumers and users and a duty to warn consumers and users of the nature, degree and consequences of exposure to Defendants' asbestos laden Zonolite Attic Insulation.

97.     Defendants failed to exercise reasonable care in the manufacture, testing, distribution, warning, and sale of Zonolite Attic Insulation.

98.     As a direct, proximate and legal result of Defendants' negligence, Plaintiffs and members of the Class sustained and continue to sustain injuries including, but not limited to,

28

00101161

contamination of real and personal property, costs of testing, costs of property remediation, costs of asbestos containment, costs of asbestos abatement, and costs and hardship resulting from reasonable effort to avert harm, including interference with Class members' use and enjoyment of real property.

### Third Claim for Relief
**(Fraud, Deceit, Nondisclosure)**

99.     Plaintiffs hereby reallege and incorporate each allegation contained in the preceding paragraphs of this complaint.

100.     Defendants knew that the properties of the Plaintiffs and the Class members were contaminated with asbestos contained in Defendants' Zonolite Attic Insulation.

101.     Defendants deceived, concealed material facts and made material misrepresentations to Plaintiffs and the Class and otherwise knowingly misled the Plaintiffs and the Class members so that they were unaware of the presence and/or hazards presented by the asbestos contaminating their homes.

102.     Defendants engaged in a practice of issuing material misrepresentations of fact regarding the safety of Zonolite Attic Insulation and tremolite, including misrepresentations to consumers, governmental officials, and the general public.

103.     Defendants knew that the representations regarding Zonolite Attic Insulation and tremolite were untrue and/or recklessly or negligently made such representations without regard to their falsity.

104.     Standardized misrepresentations include, but are not limited to, the misrepresentation that tremolite is not hazardous, that Zonolite Attic Insulation – sold as a "do-it-yourself" home insulation product – is safe, that pouring, handling, and distributing the Zonolite Attic Insulation is "clean" and presents no need for a protective mask, that Zonolite Attic

29

00101161

Insulation "contains no harmful chemicals," and that Zonolite Attic Insulation is a "non-asbestos product."

105.    Defendants' misrepresentations, concealment and suppression of facts were intended to induce the Plaintiffs and Class members to purchase Zonolite Attic Insulation and/or forbear claims for damages or remediation.

106.    Defendants had a duty to disclose to Plaintiffs and Class members the fact of asbestos content and/or hazards presented by the asbestos contaminating the Zonolite Attic Insulation and their homes.

107.    Plaintiffs and the Class members have been unaware of the dangers posed by Zonolite Attic Insulation's asbestos content and also were incapable of discovering the hazards presented by the presence of the Zonolite Attic Insulation in their homes.

108.    Plaintiffs and the Class members justifiably relied upon Defendants' failure to disseminate information known to Defendants as to the dangers of Zonolite Attic Insulation that resulted in their inability to act or refrain from acting to mitigate the danger and thereby suffered damage.

109.    As a direct, proximate and legal result of Defendants' deceit, the Plaintiffs and Class members have sustained and will continue to sustain injury to their property including, but not limited to, contamination of real and personal property, costs of testing, costs of property remediation, costs of asbestos containment, costs of asbestos abatement, and costs and hardship resulting from reasonable efforts to avert harm including interference with Plaintiffs and Class members' use and enjoyment of real property.

## Fourth Claim for Relief
### (Direct, Successor and Fraudulent Transfer Liability)

110.    Plaintiffs refer to and incorporate by reference all preceding paragraphs as if fully

30

set forth herein.

111.    Each of the non-Grace defendants is directly liable to the class for violation of each of the first, second and third claims for relief.

112.    Alternatively, each of the non-Grace defendants is liable to the class as a successor in interest for purposes of ascribing tort liability for violation of the first, second and third claims for relief.

113.    At all times as alleged herein, Plaintiffs and Class members were creditors under the Uniform Fraudulent Transfer Act against a debtor, Grace, for contingent claims arising from injuries suffered due to asbestos exposure. In relevant part, the Act provides that a creditor is any "person who has a claim." A claim under the Act is defined as " a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

114.    The distribution of assets from Grace to FNMC and Sealed Air, respectively, were fraudulent transfers. The transfers were made with the intent to hinder the ability of the Plaintiffs and the Class to recover. Grace did not receive reasonably equivalent value for the transferred assets. Indeed, Grace's remaining assets after the transfers were unreasonably circumscribed. As a result of the transfers, Grace was rendered insolvent and unable to pay its debts as they matured. Grace transferred its assets with the intent and belief that the transactions would deprive the Plaintiffs and Class members of recovery for their asbestos claims.

115.    Defendants acted intentionally, fraudulently, maliciously and without regard for the legitimate rights of the Plaintiff Class and thus the Class is entitled to exemplary damages.

116.    Knowing of the contingent tort liability faced by Grace resulting from the numerous asbestos-related litigations pending at the time of the corporate transactions at issue,

31

transferees as herein described did not accept the transfer of assets in good faith.

117.    At the time it made these transfers of assets herein described, Grace and each of the Defendants had actual intent to hinder and defraud Plaintiffs' and the Class' collection of their contingent claims against Grace. Defendants possessed such knowledge by virtue of their long history of dealing with asbestos litigation and knowledge of Grace's massive future asbestos liability.

### Fifth Claim for Relief
### (Dissipation of Assets of Grace)

118.    Plaintiffs refer to and incorporate by reference all preceding paragraphs as if fully set forth herein.

119.    This Court should declare that FNMC and Sealed Air are liable for Grace's asbestos liabilities, to the extent of the assets FNMC and Sealed Air received from the former W.R. Grace & Co. as a result of the 1996 and 1998 transactions described above. FNMC and Sealed Air were aware of Plaintiffs' and the Class' claims and potential claims against Grace but were not dissuaded from stripping Grace of valuable assets that otherwise would have been available to pay the liabilities of Grace. These transactions were wrongful distributions of assets.

### Sixth Claim for Relief
### (Conspiracy to Dissipate Assets of Grace)

120.    Plaintiffs refer to and incorporate by reference all preceding paragraphs as if fully set forth herein.

121.    Defendants conspired with Grace to denude, deplete and dissipate Grace's assets. Thus, they are liable for Grace's asbestos liabilities to the extent of the value of the assets of the former W.R. Grace & Co., including subsidiaries, that each received as a result of the 1996 and 1998 transactions, respectively.

32

00101161

### Seventh Claim for Relief
(Common Law Conspiracy)

122.    Plaintiffs refer to and incorporate by reference all preceding paragraphs as if fully set forth herein.

123.    Grace made the transfer of assets as herein described with the intent to defraud Plaintiffs and the class.

124.    Defendants and each of them knowingly participated in the unlawful plan herein described and agreed to aid Grace in carrying out its fraudulent conveyances.

125.    Each of the Defendants had knowledge of the conspiracy and its unlawful purpose.

126.    As alleged herein, Defendants agreed and knowingly and willfully conspired between themselves to defraud Plaintiffs in the collection of their claims against Grace arising from contingent asbestos liability.

127.    Under this conspiracy, Defendants agreed that Grace would fraudulently transfer assets among themselves as more fully detailed above.

128.    Each of the Defendants engaged in the conspiratorial conduct in furtherance of the conspiracy and agreement alleged herein.

129.    As a proximate result of the wrongful acts herein alleged, Plaintiffs and the Class have been damaged.

130.    At all times mentioned herein, Defendants knew of Grace's massive asbestos liability and the financial risks Grace faced – especially given that they had effectively drained Grace of its financial resources. With intent to defraud contingent creditors such as Plaintiffs and the Class, defendants intentionally, willfully, maliciously and fraudulently did the things herein alleged to defraud  and oppress Plaintiffs and the Class.  Plaintiffs and the Class are

33

00101161

therefore entitled to an award of punitive damages.

## Eighth Claim for Relief
### (Punitive Damages)

131.    Defendants' conduct as alleged herein was fraudulent and malicious such that punitive damages should be assessed against the Defendants in an amount sufficient to punish, deter and make example of the wrongful conduct.

## Ninth Claim for Relief
### (Equitable Relief)

132.    Plaintiffs and members of the Class have no complete, speedy, or adequate remedy at law with respect to present and continuing dangers to public health and safety posed by Defendants' product.

133.    Absent preliminary and final injunctive relief, Plaintiffs, Class members, and the public at large, will suffer irreparable injury, including:

A.    Unknowing exposure to hazardous levels of asbestos.

B.    Risks of contracting serious and commonly fatal diseases caused by exposure to asbestos.

C.    Unknowing and inadvertent contamination of real and personal property with hazardous levels of asbestos.

D.    Risks of engaging in ordinary uses of real property that spread dangerous levels of asbestos and expose persons to hazardous levels of asbestos.

134.    Plaintiffs and Class members are entitled to preliminary and final injunctive relief appropriate to safeguarding the public and themselves from exposure to Defendants' product.

34

## Request for Judgment

WHEREFORE, Plaintiffs requests that this Court enter an order, decree, and judgment in favor of the Class and against Defendants, and each of them, as follows:

1.    Conduct appropriate proceedings in connection with the *Zonolite Claimants' Motion to Dismiss the Debtors' Chapter 11 Bankruptcy Case*, and thereafter enter an order granting the motion and dismissing the Debtors' bankruptcy petition with prejudice;

2.    In the event the motion to dismiss is denied, an order: (a) certifying this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3) as to monetary relief, and pursuant to Fed. R. Civ. P. 23(b)(2) as to all declaratory, injunctive and other equitable relief, or appropriate subclasses or issues thereof pursuant to Fed. R. Civ. P. 23(c)(4); (b) appointing named Plaintiffs as Class Representatives; and (c) designating undersigned counsel as counsel for the Class;

3.    Under claims for relief one through four, interim and final orders establishing a Defendant-funded Court-supervised identification program which, through use of Defendants' records, sales records, publication, and other means, will identify homes and buildings containing Zonolite Attic Insulation, together with a testing program to verify the suspected existence of Zonolite Attic Insulation in homes and other buildings. Pursuant to claims for relief one, two, three and four, the Court should enter a final judgment in the full amount of damages suffered by the Class.

4.    Under claims for relief one through four, interim and final orders establishing a remediation, education and notification program that issues timely and pertinent warnings and information to property owners, public and private health agencies, and members of the building trades, including:

35

a.   Warning that Zonolite Attic Insulation contains asbestos and that persons should avoid exposure to Zonolite Attic Insulation;

b.   Pertinent advisories regarding how to locate and identify Zonolite Attic Insulation;

c.   Warning that disturbance of Zonolite Attic Insulation exposes individuals to hazardous levels of asbestos;

d.   Warning that persons should not enter areas containing Zonolite Attic Insulation without taking appropriate safety precautions;

e.   Warning that tests should be conducted on properties where Zonolite Attic Insulation has been disturbed or where asbestos dust from Zonolite Attic Insulation may have been transported into living spaces; and

f.   Warning that property owners and occupants should not engage in remodeling or other building activities that risk disturbance of Zonolite Attic Insulation, and that such remodeling and building activities should be performed only by qualified personnel and in accordance with an asbestos containment plan.

Pursuant to claims for relief one, two, three and four, the Court should enter a final judgment in the full amount of damages suffered by the Class.

5.    Under claims for relief one through four, a final order establishing a Defendant-funded Court-supervised health and safety research and education trust, which conducts pertinent research and disseminates relevant findings to Class members, to public and private health agencies, to professional building trades associations, and to property owners, the missions of the trust to include development of a specialized operations and maintenance program that sets forth

36

safety procedures and re-mediation techniques appropriate to Zonolite Attic Insulation contamination. Pursuant to claims for relief one, two, three and four, the Court should enter a final judgment in the full amount of damages suffered by the Class.

6.    A final order establishing a re-mediation and containment program that will provide to Class members:

    a.    Information, techniques, procedures, and protocols for safe containment of the asbestos hazards during anticipated activities of repair, remodeling, storage, or other use of attic space, venting ceiling fans, etc;

    b.    Training, equipment, funding, and other assistance necessary to ensure a safe environment in homes and other buildings during and following repair, maintenance, remodeling, and other activities which disturb Zonolite Attic Insulation;

    c.    Training, equipment, funding, and other assistance necessary to contain and control asbestos hazards from undisturbed Zonolite Attic Insulation so as to ensure a safe environment in homes and other buildings during normal anticipated use.

7.    Under claims for relief five through seven, an order requiring each Defendant to account for all assets of the former W.R. Grace & Co. and any proceeds from the distribution of such assets in connection with the 1996 and 1998 transactions.

8.    Under claims for relief five through seven, a declaration that the 1996 and 1998 transactions constitute fraudulent transfers and an order rescinding those transactions.

9.    Under claims for relief five through seven, an order requiring disgorgement of all ill-gotten gains resulting from said transactions, including all assets transferred and all fees

37

00101161

received in connection with those transactions; in the alternative, an Order establishing a constructive trust on all assets transferred in connection with the 1996 and 1998 transactions.

10.    Under claims for relief five through seven, a determination that Defendants are jointly and severally responsible for damages equal to the full fair market value of all assets transferred in connection with the 1996 and 1998 transactions, as well as for exemplary damages.

11.    Under claims for relief five through seven, an award of punitive damages against Defendants sufficient to punish, deter and make example of the wrongful conduct;

12.    An award of attorneys' fees and costs of suit as allowed by law; and

13.    Such other and further relief as the Court may deem necessary and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED this 16th day of November 2001.

> Thomas M. Sobol
> LIEFF, CABRASER, HEIMANN &
> BERNSTEIN, LLP
> 175 Federal Street, 7th Floor
> Boston, MA 02110-2221
> Phone: (617) 720-5000
> Fax: (617) 720-5015
>
> Elizabeth J. Cabraser, CSB # 083151
> Fabrice N. Vincent, CSB # 160780
> LIEFF, CABRASER, HEIMANN &
> BERNSTEIN, LLP
> Embarcadero Center West, 30th Floor
> 275 Battery Street
> San Francisco, CA  94111
> Telephone:  (415) 956-1000
> Facsimile:  (415) 956-1008

38

00101161

Darrell W. Scott, WSBA# 20241
Michael G. Black, WSBA #19218
Mischelle R. Fulgham, WSBA #22210
Tonya R. Hanson, WSBA #29398
LUKINS & ANNIS, P.S.
1600 Washington Trust Financial Cntr
717 W Sprague Ave.
Spokane, WA 99201-0466
Telephone: (509) 455-9555
Facsimile: (509) 747-2323

Edward J. Westbrook
Robert M. Turkewitz
Edward B. Cottingham, Jr.
NESS MOTLEY LOADHOLT RICHARDSON
& POOLE
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465
Telephone: (843) 216-9000
Facsimile: (843) 216-9440

Jon L. Heberling
Allan M. McGarvey
McGARVEY, HEBERLING, SULLIVAN &
McGARVEY, P.C.
745 South Main
Kalispell, MT 59901
Telephone: (406) 752-5566
Facsimile: (406) 752-7124

And

ELZUFON AUSTIN REARDON
TARLOV & MONDELL, P.A.

/s/ William D. Sullivan
William D. Sullivan, Esquire (#2820)
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, DE 19899-1630
Telephone (302) 428-3181
Facsimile (302) 428-3180

Attorneys for Plaintiffs

39

00101161