IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           :  Chapter 11
                                                                 :  Case No. 01-01139
                                                                 :
W. R. GRACE & CO., et al.,                                       :  Jointly Administered
                                                                 :
                    Debtors,                                     :  Hearing Date: February 25, 2002 at 8:00 am
---------------------------------------------------------------- x

## OBJECTION OF OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS TO ZONOLITE CLAIMANTS' MOTION TO DISMISS THE BANKRUPTCY CASE [Docket No. 1140]

The Official Committee of Equity Security Holders (the "Equity Committee"), by its undersigned counsel, hereby objects to the Zonolite Claimants' Motion to Dismiss the Bankruptcy Case (the "Motion"), and respectfully represents as follows:

1.  The Zonolite claimants contend that the chapter 11 filing of W.R. Grace and its debtor affiliates (collectively, "Grace") serves "no valid reorganizational purpose" and should therefore be dismissed under the controlling precedent of *In re SGL Carbon Corp.*, 200 F.3d 154 (3d Cir. 1999). The contention is unfounded. As discussed below, the present case is starkly different from *SGL Carbon* and amply serves the rehabilitative goals of chapter 11 of the Bankruptcy Code.

2.  At the heart of the *SGL Carbon* decision was the Third Circuit's finding that the debtor, "by its own account and by all objective indicia, experienced *no financial difficulty* at the time of filing nor any significant managerial distraction." *Id.* at 164 (emphasis

KL2:2133603.1

added). SGL Carbon not only had no difficulty paying its debts as they came due; there was not even "any evidence that SGL had any difficulty raising or borrowing money, or otherwise had impaired access to the capital markets." *Id.* at 166; *see also id.* (SGL Carbon's officers admitted that it was "financially healthy" and "had no defaults nor any financial distress when it filed for chapter 11"). The only reason for the bankruptcy filing was tactical: As officers of both SGL Carbon and its corporate parent "expressly and repeatedly acknowledged, [the] Chapter 11 petition was filed *solely* to gain tactical litigation advantages." *Id.* at 167 (emphasis in original).

3. The present case is altogether different. At the time of Grace's chapter 11 filing, the crushing asbestos litigation against Grace not only was a major distraction to the company's management but, in addition, posed a significant risk of impending financial harm. Specifically, as we understand Grace will demonstrate in detail in its own objection to the Motion, the asbestos litigation threatened to negatively impact the company's credit rating, and could even have jeopardized the renewal of its credit facility, had Grace not sought the protections of chapter 11. It was these concrete threats to Grace's financial soundness, and to the value and viability of its business, that caused Grace to seek bankruptcy court protection.

4. Given the risk of immediate financial harm facing Grace, its chapter 11 filing was entirely appropriate. As the Third Circuit noted in *SGL Carbon,* "the Bankruptcy Code encourages early [chapter 11] filing," so as to minimize the erosion of value often experienced prior to actual insolvency:

> It . . . is clear that the drafters of the Bankruptcy Code understood
> the need for early access to bankruptcy relief to allow a debtor to
> rehabilitate its business before it is faced with a hopeless situation.

200 F.3d at 163. To this end, when Congress enacted the Bankruptcy Code in 1978, it eliminated the insolvency requirement that had been contained in Chapter XI of the Bankruptcy Act:

> Legislative history demonstrates that the decision by Congress not to impose financial standards [i.e., insolvency as a condition to the filing of a chapter 11 petition] was prompted by a desire to encourage businesses to seek reorganization at a relatively early stage in order to maximize the chances of success.
>
> . . . .
>
> Testimony before the House of Representatives by members of the National Bankruptcy Conference . . . showed concern over the erosion of assets which is caused by undue delay in the commencement of a reorganization proceeding.

*In re The Bible Speaks*, 65 B.R. 415, 425 (Bankr. D. Mass. 1986); *see also In re Johns-Manville Corp.*, 33 B.R. 727, 736 (Bankr. S.D.N.Y. 1984) (Congress encouraged early chapter 11 filings to "cut short the dissipation of assets and the accumulation of debts" that otherwise "may kill an opportunity for reorganization") (quoting Report of the Commission of the Bankruptcy Laws of the United States, H.R. No. 137 (1973)).

     5.     This case is fundamentally different from *SGL Carbon* in a second respect as well. The litigation that precipitated SGL Carbon's chapter 11 filing was limited in scope and was entirely manageable outside of bankruptcy. Specifically, SGL Carbon was a defendant in a single consolidated antitrust class action; only seven opt-out suits had been filed, and all but one of those were pending in the same court as the class action. *See In re SGL Carbon Corp.*, 233 B.R. 285, 286-87 (D. Del. 1999). A bankruptcy filing was in no way necessary to the establishment of a manageable and fair litigation process.

6. In sharp contrast, Grace sought bankruptcy protection in response to massive and far-flung asbestos litigation, which the courts have long been unable to handle effectively. Judge Wolin recognized the problem more than a decade ago, observing that the "staggering and almost incomprehensible number of [asbestos] claims" had created a "logjam of unprecedented dimension," which "invites the employment of extraordinary case management techniques." *Campolongo v. Celotex Corp.*, 681 F.Supp. 261, 262 (D.N.J. 1988) (Wolin, J.). Three years later, a distinguished panel of judges appointed by Chief Justice Renquist echoed this Court's concerns, characterizing the state of asbestos litigation as "a disaster of major proportions to both the victims and the producers of asbestos products, which the courts are ill-equipped to meet effectively":

> [D]ockets in both federal and state courts continue to grow; long delays are routine; trials are too long; the same issues are litigated over and over; transaction costs exceed the victims' recoveries by nearly two to one; exhaustion of assets threatens and distorts the process; and future claimants may lose altogether.

*Report of the Judicial Conference Ad Hoc Committee on Asbestos Litigation* 2-3 (Mar. 1991) ("Judicial Conference Report"); *see also, e.g., Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 821 & n.1 (1999) (quoting Judicial Conference Report and concluding that "the elephantine mass of asbestos cases . . . defies customary judicial administration").[1] Although Congress has not yet taken action to reform the asbestos litigation process outside of bankruptcy, Congress has

---

[1] These concerns are shared not only by innumerable courts and commentators, but also by the experts who represent the Official Committee of Asbestos Personal Injury Claimants in this bankruptcy. *See* Deborah R. Hensler & Mark A. Peterson, *Understanding Mass Personal Injury Litigation: A Socio-Legal Analysis*, 59 Brook. L. Rev. 961, 1031 (1993) ("Transaction costs -- chiefly, legal fees -- dwarf the amounts paid to injured claimants, who often wait years to receive compensation. Furthermore, the amounts recovered by similarly situated claimants may vary dramatically, and litigants with no impairment may receive compensation while those with disabling injuries receive little or no financial support").

KL2:2133603.1

recognized the need for expanded bankruptcy powers in asbestos cases.  *See* Bankruptcy Code § 524(g) (permitting plan of reorganization in asbestos-driven bankruptcies to provide, in certain circumstances, for permanent injunction "channeling" all present and future asbestos claims into claims trust).

7. In the present case, unlike in *SGL Carbon*, a chapter 11 filing was necessary not only to avert the serious financial harm that could otherwise befall the Debtors, but also to make possible a rational, efficient and fair resolution of otherwise unmanageable asbestos litigation. At present, the Bankruptcy Code provides the only effective tools available to the courts to deal with the asbestos litigation problem. Unlike any other court in our federal system, a bankruptcy court (or more precisely, a district court sitting in bankruptcy) has the power to centralize the resolution of all claims against a particular defendant in a single court. This power gives the court the unique ability to resolve the asbestos litigation in a centralized and efficient manner, ensuring that issues common to large numbers of claims are litigated only once -- rather than being litigated repeatedly in different courts, with inconsistent results, lengthy delays, and enormous transaction costs. At the same time, the Bankruptcy Code's provisions provide important protections, absent outside of bankruptcy, for future claimants -- a crucial issue in the asbestos context.

**Conclusion**

The Zonolite claimants' motion to dismiss this bankruptcy case should be denied.

Dated: February 15, 2002

                Respectfully submitted,

                KLETT ROONEY LIEBER & SCHORLING

                By: _____
                     Teresa K. D. Currier (ID No. 3080)
                     Jeffrey R. Waxman (ID No. 4159)
                The Brandywine Building
                1000 West Street, Suite 1410
                Wilmington, Delaware 19801
                Telephone: (302) 552-4200
                Facsimile: (302) 552-4295

                - and -

                KRAMER LEVIN NAFTALIS & FRANKEL LLP
                    Philip Bentley
                    Gary M. Becker
                919 Third Avenue
                New York, New York 10022
                Telephone: (212) 715-9100
                Facsimile: (212) 715-8000

                Attorneys for the Official Committee of
                Equity Security Holders