IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re: : Chapter 11
: Case No. 01-01139 (JKF)
:
W. R. GRACE & CO., et al., : Jointly Administered
:
Debtors, : Hearing Date: February 25, 2002
---------------------------------------------------------------- x

**RESPONSE OF OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS
IN SUPPORT OF
DEBTORS' REVISED MOTION AS TO ALL ASBESTOS
PERSONAL INJURY CLAIMS FOR ENTRY OF CASE MANAGEMENT
ORDER, ESTABLISHMENT OF BAR DATE, APPROVAL OF
THE PROOF OF CLAIM FORMS AND THE NOTICE PROGRAM [Docket No. 1664]**

TO THE HONORABLE JUDITH K. FITZGERALD,
UNITED STATES BANKRUPTCY COURT JUDGE:

In light of the Court's direction to the Debtors to split their prior motion for entry of a case management order between asbestos personal injury claims and all other claims, the Official Committee of Equity Security Holders (the "Equity Committee"), by its undersigned counsel, submits this Response in support of the Debtors' Revised Motion as to All Asbestos Personal Injury Claims for Entry of a Case Management Order, Establishment of a Bar Date, Approval of the Proof of Claim Forms and the Notice Program (the "Motion"), and respectfully represents as follows:

1. The Equity Committee strongly supports the Motion. In the Equity Committee's view, the procedures proposed by the Motion -- in particular, the fixing of a bar date and the scheduling of a process for resolving threshold issues common to large numbers of asbestos personal injury claims -- are essential to a rational, efficient and fair adjudication of

asbestos claims. The proposed procedures are well designed to take advantage of the Court's powers under the Bankruptcy Code to resolve the enormous challenges posed by asbestos litigation.

2. It has long been recognized that asbestos litigation is in a state of crisis, which the tort system does not appear capable of resolving. In 1991, a distinguished panel of judges appointed by Chief Justice Rehnquist to examine this problem characterized the state of asbestos litigation as "a disaster of major proportions to both the victims and the producers of asbestos products, which the courts are ill-equipped to meet effectively":

> [D]ockets in both federal and state courts continue to grow; long delays are routine; trials are too long; the same issues are litigated over and over; transaction costs exceed the victims' recoveries by nearly two to one; exhaustion of assets threatens and distorts the process; and future claimants may lose altogether.

*Report of the Judicial Conference Ad Hoc Committee on Asbestos Litigation* 2-3 (Mar. 1999) ("Judicial Conference Report").

3. Courts and commentators have overwhelmingly echoed the Judicial Conference Report's conclusions. *See, e.g., Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 821 & n.1 (1999) (quoting Judicial Conference Report and concluding that "the elephantine mass of asbestos cases . . . defies customary judicial administration"); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 597-98 (1997) (describing "asbestos-litigation crisis" and quoting Judicial Conference Report's conclusions); *id.* at 631-32, 637 (Breyer, J., concurring in part and dissenting in part) (asbestos litigation suffers from "[d]elays, high costs, and a random pattern of noncompensation," which pose a "real and present danger"); Jack B. Weinstein, *Individual Justice in Mass Tort Litigation* 155 (1995) ("If mass tort litigation is allowed to run its course in

the tort system, the result will be huge discrepancies in the awards received by similarly situated plaintiffs, backlogged courts, lengthy delays in compensation of victims, and enormous transaction costs"); Deborah R. Hensler & Mark A. Peterson, *Understanding Mass Personal Injury Litigation: A Socio-Legal Analysis*, 59 Brook. L. Rev. 961, 1031 (1993) ("Transaction costs -- chiefly, legal fees -- dwarf the amounts paid to injured claimants, who often wait years to receive compensation. Furthermore, the amounts recovered by similarly situated claimants may vary dramatically, and litigants with no impairment may receive compensation while those with disabling injuries receive little or no financial support"). Judge Wolin recognized the problem more than a decade ago, observing that the "staggering and almost incomprehensible number of [asbestos] claims" had created a "logjam of unprecedented dimension," which "invites the employment of extraordinary case management techniques." *Campolongo v. Celotex Corp.*, 681 F.Supp. 261, 262 (D.N.J. 1988) (Wolin, J.).

    4. Because Congress has taken no action to reform the asbestos litigation process, the Bankruptcy Code provides the only effective tools available to the courts to deal with the problem. Unlike any other court in our federal system, a Bankruptcy Court (or a District Court sitting in bankruptcy) has the power to centralize the resolution of all claims against a particular defendant in a single court. This unparalleled power gives the Court unparalleled opportunities. Perhaps most significant is the Court's power to rule globally on issues common to large numbers of claimants -- so that these common issues are litigated only once, rather than being litigated repeatedly in different courts, with inconsistent results, lengthy delays, and enormous transaction costs.

    5. The Motion proposes an orderly and sensible process for the Court's exercise of its bankruptcy powers. As a necessary first step, the Motion proposes the

establishment of a bar date, to enable the parties and the Court to identify the universe of existing claims. Once all claims have been filed, the Motion proposes phased omnibus objections to claims, consolidation of claims pursuant to Rule 42 and motions for summary judgement on common issues -- a process that has the potential to dispose of many thousands of claims, and to simplify and rationalize the resolution of the remaining claims. For example:

A threshold issue common to all bodily injury claims is whether the Grace products to which claimants were exposed (e.g., Monokote-3, -4 and -5) are capable of causing disease. If the evidence proffered by the claimants on this general causation issue is insufficient to satisfy the standards established by the Supreme Court in *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), then all of the Monokote -3, -4 and -5 claims against Grace lack merit as a matter of law and must be dismissed.

a. A majority of the bodily injury claims pending against Grace were filed by individuals who suffer no asbestos-related impairment, but who merely have some marker of asbestos exposure, such as pleural plaques. Generally applicable principles of tort law require dismissal of these claims, except in those instances where the governing tort law of a particular state permits recovery by claimants who are disease- and symptom-free.

b. An independent defect of pleural-plaque-only claims is that the diagnosis of pleural plaques is notoriously unreliable. Consequently, even those claimants who are entitled to recovery under the tort law of their state will need to establish that the scientific basis for diagnosing this condition is sufficiently reliable to satisfy *Daubert*. Absent such proof, all pleural plaque claims must be dismissed.

6. There can be no question that each of the issues identified above (as well as other issues that Grace has identified or will identify) is an issue *common* to large numbers of claims, rather than particular to individual claimants. Each of these common issues can readily be resolved through a single summary judgment motion. Such joint proceedings are eminently feasible, and are well within the Court's broad power to consolidate trials or other proceedings where appropriate. Moreover, global disposition of threshold common issues is precisely the sort of stringent judicial "gate-keeping" that, as the Fifth Circuit Court of Appeals has urged, is necessary to weed out "weak and frivolous claims" and thereby manage mass tort litigation "in a way that avoids judicial meltdown." *Castano v. American Tobacco Co.*, 84 F.3d 734, 747 n. 24 (5th Cir. 1996).

7. The Court's power to estimate the value of asbestos claims against Grace pursuant to Bankruptcy Code § 502(c) provides no substitute for the need to start with a global adjudication of threshold common issues. If large categories of claims against Grace lack merit as a matter of law (as Grace and the Equity Committee strongly believe), these claims should be dismissed, not "estimated." Moreover, estimation would be particularly inappropriate if it involved a statistical extrapolation of claim values based on the amounts of Grace's pre-petition settlements. The avalanche of claims against Grace prior to its bankruptcy, coupled with the absence of any way to consolidate those claims in a single forum, left Grace with no choice but to settle large numbers of claims on an "inventory" basis; this, in turn, required payment of significant sums to resolve many meritless, as well as meritorious, claims. In bankruptcy, by contrast, the claims against Grace are all in a single forum, and the Court therefore has the ability to dispose of meritless claims through common issue adjudication, a far superior result.

8.  Also of no bearing on the present Motion is Bankruptcy Code § 524(g), which permits Grace, under certain stringent conditions, to establish a trust to liquidate and pay asbestos claims after confirmation of a plan of reorganization. Grace may or may not choose to satisfy the statutory requirements for the creation of a Section 524(g) trust (including giving the trust the right to own a majority of Grace's common stock) at the conclusion of this bankruptcy. Obviously, global rulings disposing of large categories of asbestos claims prior to confirmation could have a direct bearing on whether such a trust is needed. If a Section 524(g) trust *is* created, global rulings on common claim issues would affect the amount of funding needed for the trust, as well as its structure and terms.

**Conclusion**

The Motion presents this Court with a rare opportunity to develop rational, efficient and fair procedures to adjudicate asbestos-related claims. The procedures proposed in the Motion are carefully and prudently designed and should be adopted.

Dated: February 22, 2002

Respectfully submitted,

KRAMER LEVIN NAFTALIS & FRANKEL LLP
  Philip Bentley
  Thomas Moers Mayer
919 Third Avenue
New York, New York 10022
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

- and -

KLETT ROONEY LIEBER & SCHORLING

By: _____
  Teresa K. D. Currier (Del. ID No. 3080)
  Jeffrey Waxman (Del ID No. 4159)
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

Attorneys for the Official Committee of
Equity Security Holders