IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) ) ) ) ) ) ) ) ) | Chapter 11<br><br>Case No. 01-01139 (JKF)<br>(Jointly Administered)<br><br>**Re:  Docket No. 1665**<br><br>**Hearing Date: March 18, 2002** |
| W. R. GRACE & CO., et al., |  |  |
| Debtors. |  |  |
| _____ |  |  |

**RESPONSE AND OBJECTION OF THE OFFICIAL COMMITTEE
OF ASBESTOS PROPERTY DAMAGE CLAIMANTS TO THE PROPOSED ASBESTOS
PROPERTY DAMAGE PROOF OF CLAIM FORM FILED IN SUPPORT OF THE
DEBTORS' REVISED MOTION AS TO ALL NON-ASBESTOS CLAIMS, ASBESTOS
PROPERTY DAMAGE AND ZAI CLAIMS FOR ENTRY OF CASE MANAGEMENT
ORDER, ESTABLISHMENT OF BAR DATE, APPROVAL OF PROOF OF CLAIM
FORMS AND OF THE NOTICE PROGRAM**

The Official Committee of Asbestos Property Damage Claimants (the "PD Committee") through its undersigned counsel, hereby files its Response and Objection (the "Objection") to the Proposed Asbestos Property Damage Proof of Claim Form Filed in Support of the Debtors' Revised Motion as to all Non-Asbestos Claims, Asbestos Property Damage and ZAI Claims For Entry of Case Management Order, Establishment of Bar Date, Approval of Proof of Claim Forms and of the Notice Program (the "Motion"), filed by the above-referenced debtors (collectively, "Debtors").  In support hereof, the PD Committee would show as follows:

**Introduction**

1. On June 27, 2001, Debtors filed their Motion for Entry of Case Management Order, Motion to Establish Bar Date, and Motion to Approve Notice Program and a Memorandum in Support thereof (collectively, the "Debtors' Original CMO Motion"), wherein,

Debtors sought, among other things, the approval of a proof of claim form for non-Zonolite Attic Insulation asbestos property damage claims (the "Original PD POC").

2. On September 7, 2001, the PD Committee filed its Response and Memorandum in Opposition (the "PD Committee's Original Response") to Debtors' Original CMO Motion, wherein, the PD Committee objected to, among other things, the proposed Original PD POC.

3. On November 9, 2001, Debtors filed their Consolidated Reply in Support of Debtors' Original CMO Motion (the "Debtors' CMO Reply"), including a revised proposed proof of claim form for non-Zonolite Attic Insulation asbestos property damage claims (the "Revised PD POC"). A copy of the Revised PD POC is attached to Debtors CMO Reply as Exhibit G, and a duplicate copy is attached hereto as Exhibit 1.

4. On February 12, 2002, pursuant to the Court's instructions during the January 29, 2002 hearing, Debtors submitted a separate motion for entry of a case management order for all claims other than asbestos personal injury claims (the "Revised CMO Motion"), seeking, among other things, the approval of the Revised PD POC.

5. Pursuant to the Court's instructions during the February 25, 2002 hearing and the Court's Scheduling Order Regarding Debtors' Revised CMO Motion, objections to any of the proposed proof of claim forms must be filed on or before March 8, 2002. Accordingly, the PD Committee hereby submits its Objection to the Revised PD POC. Part 1 of this Objection sets forth general objections to the Revised PD POC. Part II of this Objection sets forth specific objections to the information requests and questions contained in the Revised PD POC and, when appropriate, provides recommendations for alternative information requests and/or questions.

**Part I.  General Objections**

6.  Based upon the Court's ruling from the bench during the February 25, 2002 hearing, a claims bar date with respect to property damage claimants will be established and thus, claimants will be forced to file a proof of claim pursuant to 11 U.S.C. §501.  However, the PD Committee submits that the Revised PD POC is unduly complex and contains requirements that are substantially more than is necessary to establish "prima facie evidence of the validity and amount of the claim."  See Bankr.R.Proc. 3001(f).  The Revised PD POC, rather than attempting to establish the universe of PD claims that exists, may very well discourage the filing of claims.  See In re Babcock & Wilcox Co., October 6, 2000 Order and Reasons at 3 (observing that certain offensive aspects of the proposed claim form "may, in effect, if not by design, discourage the filings of claims, which is not the function of a proof of claim form").

7.  The purpose of requiring a proof of claim is to "enable a debtor and his creditors to know, reasonably promptly what parties are making claims against the estate and in what general amounts."  See In re Kolstad, 928 F2d 171, 173 (5th Cir. 1991).  However, it affirmatively appears that Debtors are attempting to utilize the Revised PD POC for purposes far beyond those commonly recognized by courts.  The Revised PD POC, rather than being inclusionary, does no more than attempt to facilitate Debtors' analysis of defenses to filed claims.  Simply stated, sections 501 and 502 of the Bankruptcy Code do not permit the use of a proof of claim for discovery purposes.

**Part II.  Specific Objections**

**A.   Instructions for Filing the W.R. Grace & Co. Asbestos Property Damage Proof of Claim Form**

8.  The Instruction Page states that each Revised PD POC must be filled out in blue or black ink and that it must be printed within the boxes provided.  The PD Committee submits

\74817\15537\ # 555879 v 4

that claimants, at their option, should be permitted to complete the Revised PD POC with the assistance of a word processing template or similar program to facilitate uniformity. In many instances, numerous claimants are represented by the same attorney. That attorney should not be required to repetitively complete Part 2: Attorney Information manually. Moreover, the Instruction Page further states that the Revised PD POC will be read by machine which will likely be easier to read if the text is completed by a computer template rather than by hand.

**B.    Part 1: Claiming Party Information**

9. Information with respect to the building owner should not require the submission of the claimants' social security numbers. Such information was found to be invasive and unnecessary in Babcock & Wilcox, and is likewise invasive and unnecessary here. Indeed, the Court suggested that the last four digits of the claimants' social security numbers ought be sufficient. Moreover, building owners are likely to be corporate or partnership entities which would have federal employer identification numbers ("FEIN") instead of social security numbers. Accordingly, the field for "Social Security Number" should be deleted from Part 1 and replaced with a field for "Last Four Digits of Social Security Number or FEIN."

10. Similarly, the PD Committee objects to the requirement that the claimant include its birth date. That request is likewise invasive and irrelevant and inapposite to corporate and partnership entities.

**C.    Part 2: Attorney Information**

11. The PD Committee does not object to the information requested in this Part.

**D.    Part 3: Property Information**

   **A.    Real Property for Which A Claim Is Being Asserted**

12. With respect to Question 7, the requirement of exact square footage is overly burdensome at this stage of the claims process. Thus, the PD Committee suggests that an approximation of the square footage of the property ought be sufficient and is entirely consistent with the notion that a proof of claim claimant to need only demonstrate a "prima facie" case of liability.

13. Question 8, concerning the year of construction, is irrelevant as the year of the construction of the property may not be the same as the year of installation of asbestos containing materials ("ACM"). Having said that, there is no useful purpose served by requiring claimants to provide the exact year of installation either since that fact is also irrelevant to the existence of a legally viable cause of action. The only purpose served by the information sought is to determine whether Debtors' products are implicated; however, claimants likely will eventually be required to make product identification in any event. Moreover, historical information of this sort is most often extremely difficult to locate especially when one considers that the claimant may not have been the owner or operator at the date of construction.

14. Question 10 asks whether "any interior renovations [have] been completed in the property." The PD Committee objects to the relevancy and breadth of this question. The PD Committee submits that to the extent any information is required in respect of renovations, the pertinent inquiry is whether, based upon the claimants' knowledge, renovations were made which involved the removal and/or installation of Debtors' ACM. Anything further goes beyond what is necessary to demonstrate a prima facie case of liability. The PD Committee suggests that Question 10 be restated to read "To your knowledge, have any interior renovations been conducted in the property which have involved the removal and/or installation of asbestos

containing products manufactured and/or sold by Grace?" Subject to that revision being made, the PD Committee does not object to Question 11.

**B.    Claim Category**

15.    The PD Committee does not object to Question 12, but notes that there appears to be a numerical error in the gray shaded instruction box just below the text of the question. Each bullet point in the shaded box begins "If you checked Category [ ] in question 10 . . ."; however, it should state "If you checked Category [ ] in question **12** . . ." (emphasis added for illustrative purposes only).

**C.    Category 1 Claim:   Allegation With Respect to Asbestos From a Grace Product in the Property**

16.    The PD Committee does not object to the information requested in Question 13, although the PD Committee submits that the question may mislead claimants. The only product referenced is Monokote-3 fireproofing insulation, omitting entirely specific references to all other products that Grace manufactured and/or sold that contained either naturally occurring asbestos or commercially added asbestos. While the Bar Date Notice contains an exhibit that lists additional asbestos containing products (both naturally occurring and commercially added) manufactured and/or sold by Debtors, at a minimum, Question 13 should refer the claimant to such exhibit.

17.    Question 14, similar to Question 10, should include a qualifier based upon the claimant's knowledge. The PD Committee submits that Question 14 should be restated to read "**To the extent you know**, when was the product installed in the property?" (emphasis added for illustrative purposes only). The claimant should not be required to know and furnish the date of any installation which occurred prior to the claimant becoming the owner or operator of the

\74817\15537\ # 555879 v 4

property.  In addition, claimants should be permitted to include a range of dates for installation as opposed to one finite date.

18. With respect to Questions 15 through 18, Debtors represented to this Court that they would delete these questions, therefore eliminating the need to set forth the PD Committee's objections to these questions.

19. The PD Committee objects to the requirement in Question 19 that a claimant must attach "documentation relating to the purchase and/or installation of the product in the property." This request is unduly burdensome and "is not justified by the prospect of summary judgment motions."  See In re Babcock & Wilcox, Order and Reasons, August 25, 2000 at 24. The documentation encompassing what relates to the purchase and/or installation of the product might include architectural plans, specifications, work orders, purchase orders, delivery receipts, and the like.  Such information is voluminous and extremely difficult to collect in the period that claimants will have to complete and file their proofs of claim.  In no event should claimants be required to do more than summarize the documents upon which they base their claims.

20. The PD Committee does not object to Question 20.

21. The PD Committee objects to Questions 21-23 in their entirety and submits that such questions should be stricken.  None of these questions – concerning how the claimant learned of the product in the property and how and when the claimant learned that the product contained asbestos -- are relevant in any manner whatsoever to whether the claimant has an allowable claim in Debtors' bankruptcy.  These questions are intended solely to elicit answers that Debtors likely will posit allow them to summarily dismiss the claims.  Once again, it bears repeating, such is not a permissible objective of a proof of claim form.

\74817\15537\ # 555879 v 4

22. Question 24 is potentially confusing because it refers only to the removal, containment or abatement of a single product, whereas Question 13 clearly states that the claim form may be utilized to make a claim for more than one Grace product. In addition, akin to Questions 19 and 20, a summary of the documents should suffice.

23. The PD Committee submits that Question 25 is duplicative of the information requested in the gray box for Question 24 and thus, is unnecessary.

24. The PD Committee submits that Question 26, "Has there ever been any testing or sampling for the presence of asbestos or other particulates in the property?", should be reworded to include a knowledge qualifier as follows, "**To your knowledge**, has there ever been any testing or sampling which occurred prior to purchase or use of the building. In addition, the gray shaded box requiring the claimant to submit "[a]ll documents related to any testing of the property" must be modified accordingly. Question 27 requests follow-up information with respect to the testing and/or sampling of the property requested in Question 26. This Question is duplicative and unnecessary in light of the fact that the claimant is required to submit a summary of the testing and/or sampling as part of the response to Question 27.

25. Questions 28 and 29 are ambiguous. The questions ask whether the "Grace product for which you are making this claim have ever been modified and/or disturbed" and, if so, "specify when and in what manner . . .". First, the single product/multiple product issue raised in respect of Questions 13 and 24 is also pertinent here. See Paragraph 22 above. Second, there is no guidance provided as to what "modified and/or disturbed" means, nor are such terms necessarily commonly understood or applied by claimants.

**D.    Category 2 Claim: Allegation With Respect to One of Grace's Vermiculite Mining, Milling or Processing Operations.**

\74817\15537\ # 555879 v 4

26.     The PD Committee objects to Questions 30-34, 39-40 on the grounds of relevancy. The information solicited does not pertain to the establishment of a prima facie case of liability. See Paragraph 21 above. With respect to Questions 35-38, the PD Committee reasserts its objections asserted in respect of Questions 24-27. See Paragraphs 22-24 above.

E.    **Part 4: Asbestos Litigation and Claims**

   A.    **Introduction**

27.     The PD Committee objects to Question 1 on the grounds that it is not limited to Debtors' ACM, and also, it is invasive of the attorney-client privilege and irrelevant.

28.     The PD Committee objects to Question 2 as it too is not limited to Debtors' ACM, and therefore is beyond the scope of information that Debtors should be permitted to obtain to determine the extent of claims against them. Moreover, the use of legal terminology such as "non-lawsuit claim" is confusing and beyond the level of sophistication of some claimants.

   B.    **Lawsuits**

29.     Question 1 states that the failure to provide a court-dated copy of the face page of a filed complaint "*may result in the claiming party's claim being forever barred.*" The PD Committee objects to any absolute results attaching to the claimant's failure to provide information, especially in this instance where Debtors ought have the same information available to them. Moreover, claimants may infer that a lawsuit is a pre-condition of a claim and be discouraged from filing a proof of claim.

30.     Also, because Question 1 asks for the "face page" of the complaint, the gray shaded box contained within Question 1 is internally inconsistent.

31.     In subpart "c." of Question 1, "**Code** Number" should be changed to "**Case** Number."

\74817\15537\ # 555879 v 4

C.  **Non-Lawsuit Claims**

32. Question 1 assumes a level of sophistication about legal terms and matters that may be unjustified. For example, it may not be apparent to a claimant what a "claim against Grace outside of a court of law" may encompass. Further, the request in subpart "b" of "Settlement Amount – Received" may violate confidentiality agreements entered into in connection with such settlements. Thus, such subpart should include a provision for indicating that the Settlement Amount is confidential.

33. The PD Committee objects to the breadth and relevance of Question 2 in its entirety. Inquiring whether a claimant has made a claim against other products manufactured by someone other than Debtors is burdensome and irrelevant.

D.  **Settlements**

34. The PD Committee objects to Question 1 in its entirety for the reasons set forth above in Paragraph 33.

F.  **Part 5: Signature Page**

35. The PD Committee objects to the "Consent to Release of Records and Information" contained in the text above the signature line. The language contained in this paragraph is outrageously offensive and violative of fundamental notions of due process and privacy. By signing the form, Debtors would have the claimant "authorize and request that <u>all other parties</u> with custody of any documents or information concerning my property damage or the information contained in this Form to disclose any and all records to Grace or to Grace's representatives." Debtors have no right to obtain such a carte blanche authorization. Debtors would also have the claimant "authorize the release of my (sic) Social Security number for use in comparing information provided separately to other asbestos trusts or claims facilities to verify

\74817\15537\ # 555879 v 4

the completeness and accuracy of the information contained in this Form." The Revised PD POC is filed under penalty of perjury. To require a claimant to authorize the release, disclosure and use of this information is patently offensive and impermissible. When the debtors (represented by the same counsel as Debtors) in Babcock & Wilcox submitted a proposed claim form for asbestos personal injury claims, seeking a similar release and permissive use of the claimant's social security number, Judge Vance ruled that "[t]he language at issue may in effect, if not by design, discourage the filing of claims, which is not the function of a proof of claim form. These provisions must be deleted." See In re Babcock & Wilcox, Order and Reasons, October 6, 2000 at 3.

36. Further, the signature line to the Revised PD POC needs to be revised to read: "Signature of Claimant or **Authorized Agent**" (emphasis added for illustrative purposes only). Paragraph 1 of General Instructions on the Instruction Page to the Revised PD POC expressly permits the signature of the form by either the claimant or his or her authorized agent. See also Bankr.R.Proc. 3001(b). The signature line needs to reflect that as well. See also Bankruptcy Rules 9010(a) and (c).; See also In re Trebol Motors Distrib. Corp., 220 B.R. 500.502 (1st Cir. BAP 1998).

Case No. 01-01139 (JKF)

WHEREFORE, the PD Committee respectfully requests that the Court hear and consider this Response and Objection and thereupon enter an Order denying the Motion.

Wilmington, Delaware
Dated: March 8, 2002.

Respectfully submitted,
BILZIN SUMBERG DUNN BAENA
  PRICE & AXELROD
2500 First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2336
Telephone: (305) 374-7580

Scott L. Baena (Admitted <u>Pro</u> <u>Hac</u> <u>Vice</u>)
Jay M. Sakalo (Admitted <u>Pro</u> <u>Hac</u> <u>Vice</u>)

and

FERRY, JOSEPH & PEARCE, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 19899
Telephone: (302) 575-1555

By: /s/Theodore J. Tacconelli
    Michael B. Joseph
    (Del. Bar No. 392)
    Theodore J. Tacconelli
    (Del. Bar No. 2678)

CO-COUNSEL FOR THE OFFICIAL
COMMITTEE OF ASBESTOS PROPERTY
DAMAGE CLAIMANTS