IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | Re: Docket No. 1651 |

## DEBTORS' OPPOSITION TO EDYTHE KELLOGGS' MOTION TO ANNUL THE AUTOMATIC STAY (DOCKET NO. 1651)

### INTRODUCTION

The above captioned debtors and debtors in possession (collectively, the "Debtors") oppose this effort by Edythe Kellogg (the "Plaintiff") in one of the thousands of cases pending against the Debtors to create an exception in order to allow her to prosecute her case, notwithstanding the stay that is imposed as a result of the Debtors' bankruptcy filings. In her motion (the "Motion"), the Plaintiff seeks relief from the automatic stay to pursue her claims against the Debtors for alleged personal injuries suffered when one of the Debtors' employees

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

allegedly injured the Plaintiff in a motor vehicle accident. In violation of the automatic stay provisions of section 362 of the Bankruptcy Code, the Plaintiff improperly commenced her litigation postpetition on December 13, 2001, captioned <u>Kellogg vs. Wayne Lamar Nussbaum and W. R. Grace Co.</u>, Case No. 01AS07626, (Sup. Ct. Sacramento, California) (the "<u>Kellogg Action</u>"). As of the date hereof, the Kellogg Action is still pending.

If the Kellogg Action were allowed to proceed, the Debtors would suffer substantial prejudice:

- The case would be an immediate burden and distraction to the Debtors and its employees who would be forced to prepare for and participate in this lawsuit;

- The significant expenditure of time and resources necessary to adequately defend against the Kellogg Action would divert the attention of the Debtors' employees from the administration of these chapter 11 cases;

- Allowing the Kellogg Action to proceed would require the Debtors to bear the financial burdens of discovery and a full blown trial; and

- An adverse verdict in this case may lead to more claims of like kind.

This case should not be distinguished from the myriad other claims pending against the Debtors' estates and allowed to proceed. Indeed, this Court has already confronted a similar situation in these chapter 11 cases. In particular, in the Motion for Relief from Automatic Stay filed by Timothy Kane (Docket No. 1032) (the "Kane Motion"), Kane sought relief from the automatic stay to pursue claims against the Debtors for alleged personal injuries suffered when he slipped and fell from a roof allegedly coated with a product manufactured by Grace. While this Court allowed Kane to depose certain individuals whose depositions had previously been designated prior to the filing of these chapter 11 cases, the Court denied the remainder of the Kane Motion and held that the Kane litigation was subject to the automatic stay (Docket No. 1632).

Just as with the Kane Motion, it is critical to the Debtors' successful reorganization that collateral litigation against the Debtors, such as the Kellogg Action, be shut down. Accordingly, the Plaintiff's Motion should be denied.

### BACKGROUND

The Plaintiff alleges that on December 21, 2000, she was in her car driving in Sacramento, California, when one of the Debtors' employees, allegedly operating a motor vehicle during the course and scope of his employment, hit the Plaintiff's car. The Plaintiff alleges that as a result of the accident, she sustained severe injuries. Despite the Plaintiff's severe injuries, which, according to the Motion, occurred on December 21, 2000, the Plaintiff did not file her Motion until December 13, 2001, nearly one year later. The Plaintiff filed her suit against the Debtors' employee for negligence, and against W. R. Grace & Co., a debtor in this bankruptcy proceeding, for negligence and strict liability. This improperly filed lawsuit is only 2 months old and has not advanced, whatsoever. As a result, no discovery has been taken or even propounded.

### ARGUMENT

**I.**  **The Automatic Stay Is One Of The Fundamental Protections For The Debtors.**

The automatic stay is one of the most fundamental protections provided to a debtor under the Bankruptcy Code. See <u>Midatlantic Nat. Bank v. New Jersey Dept. of Environmental Protection</u>, 474 U.S. 494, 503 (1986). Pursuant to section 362(d) of the Bankruptcy Code, a movant must demonstrate sufficient cause to justify the lifting or modification of the automatic stay. Although the Bankruptcy Code does not define what constitutes cause, "courts generally consider the policies underlying the automatic stay [and] . . . the competing interests of the debtor and the movant. <u>In re Continental Airlines, Inc.</u>, 152 B.R.

420, 424 (D. Del. 1993). In particular, Delaware courts consider the following three factors in balancing the competing interests of the parties:

> (1)    the prejudice that would be suffered by the debtors should the stay be lifted;
>
> (2)    the balance of the hardships facing the parties if the stay is lifted; and
>
> (3)    the probable success on the merits if the stay is lifted.

Continental, 152 B.R. at 424. Here, the Plaintiff has failed to demonstrate any prejudice she would suffer should the stay not be lifted. Discovery has not even begun in the matter. Furthermore, no showing has been made whatsoever that the balance of the hardships tip in the Plaintiff's favor or of any likelihood of the Plaintiff's success on the merits. Therefore, sufficient cause to warrant the lifting of the automatic stay does not exist in this case.

**II.    No Collateral Litigation Should Be Allowed To Proceed.**

As a threshold matter, no collateral litigation against the Debtors should be allowed to take place in this case. This is a bankruptcy that is litigation driven. The whole reason that the Debtors were forced into bankruptcy was the morass of asbestos litigation mounting against them. The main challenge of these chapter 11 cases is to develop a comprehensive litigation plan to deal with these thousands of cases and to develop a plan of reorganization. Allowing collateral litigation such as the Kellogg Action to proceed is a distraction that prevents the Debtors from focusing on their reorganization plans.

Courts have recognized that in mass tort cases, there is a critical need to shut down all collateral litigation in order to allow the Debtors an opportunity to develop comprehensive litigation and reorganization plans.

> The purpose of this section [362] by its various subsections is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to

> provide the debtor and its executives with a reasonable respite from
> protracted litigation, during which they may have an opportunity to
> formulate a plan of reorganization for the debtor.

A.H. Robins Co., Inc. v. Piccinin (*In re A.H. Robins & Co., Inc.*), 788 F.2d 994, 998 (4th Cir.

1986).  Here, there are literally thousands of cases currently pending against the Debtors. These

cases should not be litigated piecemeal in courts across the country; rather, they should all

remain stayed for a period of time while the Debtors develop a comprehensive litigation plan to

deal with them.   Allowing the Kellogg Action to proceed will simply divert the Debtors'

attention from the task of developing this plan.

**III.    The Moving Parties Have Failed To Show Sufficient Cause To Lift The Stay.**

**A.    Substantial Prejudice Would Be Incurred By The Debtor If The Stay Were Lifted.**

The most important factor in determining whether to grant relief from the

automatic stay to allow litigation to proceed against a debtor in another forum is the effect of

such litigation on the administration of the estate.  See In re Curtis, 40 B.R. 795, 806 (Bankr. D.

Utah 1984); In re Penn-Dixie Industries, Inc., 6 B.R. 832, 836 (Bankr. S.D. N.Y. 1980).  If the

automatic stay is lifted to allow the litigation of the Kellogg Action, the Debtors' ability to

administer their estates and these chapter 11 cases would be severely impacted.

***First***, modifying the automatic stay to allow the Plaintiff to litigate the Kellogg

Action against the Debtors would require the time and commitment of several employees, as

well as the Debtors' in house counsel who supervise and monitor the litigation (the

"Employees").  Such Employees would be required not only to divert their attention away from

these chapter 11 cases to assist counsel in preparation of the Debtors' defense of the Kellogg

Action, but many of them may be witnesses in the Kellogg Action.  Moreover, because the

Kellogg Action is entirely new, substantial written and deposition discovery remains to be

completed.  Completing discovery will require substantial time and effort on the Debtors' part to search for and produce responsive documents, prepare and defend its employee witnesses, and research and draft discovery responses.

*Second*, allowing the Kellogg Action to proceed would require the Debtors to bear the financial burdens of discovery and trial.  The Debtors dispute the Plaintiff's allegations and anticipate the need to mount a vigorous defense and conduct discovery relating thereto.  In particular, the Debtors (i) dispute whether their employee was acting within the scope of his employment, and (ii) dispute whether the Plaintiff's alleged personal injuries were caused by the Debtors.  Allowing the Kellogg Action to proceed will require the Debtors to introduce fact and expert witness testimony and other evidence in order to defend against the Plaintiff's claims.  Thus, relief from the automatic stay to allow the continuation of the Kellogg Action will result in the unnecessary depletion of the Debtors' assets and resources.

*Third*, if the automatic stay is lifted in this one case, it may open the floodgates of other motions to lift the stay.  This one lawsuit relates to an employee's act, however, there are tens of thousands of claims pending against the Debtors relating to asbestos exposure alone.  Lifting the stay in the Kellogg Action may well prompt large numbers of asbestos claimants to seek relief from the stay to pursue their claims against the Debtors.  Were this to happen, the Debtors would be put back into the position they were in prior to filing for bankruptcy.  Indeed, it was the pendency of these tens of thousands of claims that necessitated the Debtors' bankruptcy filing in the first place.  The Debtors should be given the breathing room provided for by the automatic stay to allow them to develop their litigation plan for dealing with the morass of asbestos and other collateral litigation.

In an attempt to mitigate this burden, the Plaintiff argues that the Debtors have insurance coverage in place which covers any potential damages awarded in this lawsuit. First, the Plaintiff has identified no insurance policies that would cover the purported liability in the Kellogg Action. Second, to the extent that any such insurance policies exist, the Debtors' insurance policies have large deductibles, which are guaranteed by the Debtors' assets, including certain letters of credit the Debtors caused their lenders to issue. Thus, any judgment in this case, which may be for less than the Debtors deductible, would require a drawdown of the Debtors' assets to pay the judgment. Third, even if insurance defense counsel is defending this action, the Debtors' Employees will be required to assist counsel in preparing the defense of the litigation and will likely be called as witnesses at trial. Thus, regardless of whether insurance defense counsel represents the Debtors, allowing the Kellogg Action to proceed will still divert the attention of the Employees away from the Debtors' successful reorganization.

**B.    The Balance Of Hardships Weighs Significantly In Favor Of The Debtors.**

The above-described burdens forced upon the Debtors by the continuation of the Kellogg Action far outweigh any inconvenience encountered by the Plaintiff. Unsecured creditors, such as the Plaintiff, "bear the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the Debtor in denying relief." In re Micro Design, Inc., 120 B.R. 363, 369 (E.D. Pa. 1990) (automatic stay not lifted where it was appropriate for movant to pursue its claim by filing a proof of claim, and participating in the claim process, in the bankruptcy case). In this case, the Plaintiff doesn't even attempt to undertake such an analysis in the Motion, much less demonstrate how the balance of hardships weigh in her favor.

The Plaintiff fails to set forth any reason as to why she should be granted preferential treatment over other general unsecured creditors of Grace. Unwarranted preferential

treatment, however, is exactly what the Plaintiff seeks.  Instead of receiving her pro rata share of whatever distribution which allowed unsecured claims of the Debtors would be entitled to receive under a plan of reorganization, the Plaintiff seeks to expend the limited resources of the Debtors to the detriment of the Debtors' estates so that she might potentially obtain a judgment against the Debtors.  The Debtors, their estates, and the Debtors' unsecured creditors should not be forced to subsidize the Plaintiff's efforts to augment her potential recovery over other unsecured creditors.  This is exactly the sort of result that the automatic stay was intended to avoid.  See Borman v. Raymark Industries, Inc., 946 F.2d 1031, 1036 (3rd Cir. 1991).  Because the Debtors would suffer great hardship if the automatic stay is lifted, and the Plaintiff would suffer little, if any, hardship if the Motion is denied, this Court should deny the Motion to lift the stay.  The Plaintiff will still have the opportunity to resolve her alleged claim in this Court by filing a proof of claim if the Motion is denied.

C.    **The Plaintiff Has Demonstrated No Likelihood of Success on the Merits.**

The Plaintiff's motion for relief from the automatic stay should be denied because she has not demonstrated, nor can she, any likelihood of success on the merits.

## CONCLUSION

For these reasons, the Motion for relief from the automatic stay should be denied.

Dated: March 11, 2002                    Respectfully submitted,

                                         KIRKLAND & ELLIS
                                         James H.M. Sprayregen, P.C.
                                         James W. Kapp III
                                         Janet Baer
                                         200 East Randolph Drive
                                         Chicago, Illinois 60601
                                         (312) 861-2000

                                         and

                                         PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.


                                         Laura Davis Jones (#2436)
                                         David W. Carickhoff, Jr. (#3715)
                                         919 North Market Street, 16th Floor
                                         P.O. Box 8705
                                         Wilmington, Delaware 19899-8705 (Courier 19801)
                                         (302) 652-4100

                                         Co-Counsel for the Debtors and Debtors in Possession