afforded by Television could be a simple logical opportunity to explain and show what Zonolite looks like and how potential claimants may be affected.

v)      The Debtor's proposed notices to PD Claimants do not provide any specific information to engender an understanding of the wide-ranging types of property damage claims that are here.

vi)     The Debtor's proposed notice does not communicate "all the required information." It does not include information that is vital for effectively informing claimants that the Bar Date may affect them, i.e. a complete verbal and visual (where appropriate) description/depiction of the products that are subject to a Bar Date, knowledge that they may be in that person's property and that the asbestos is causing damage to that property.

d.  **The Debtor's Notice Does Not Address The Unwary Nature of the PD Claimants Here.** "…in an increasingly populous and mobile nation, newspaper notices have virtually no chance of alerting an unwary person that he must act now or forever lose his rights…" *Small v. United States of America*, 136 F. 3d 1334, 1336 (C.A.D.C., 1998) "The Court recognizes, however, the gravity of the question whether class action notice sufficient under the Constitution and Rule 23 could ever be given to legions so unselfconscious and amorphous …" *Amchem Products, Inc. v. Windsor*, 117 S. Ct. 2231 (1997).

i)  When I was intending to notify Washington State residents in *Barbanti*, I confirmed through a consumer survey that 85% of homeowners were unaware of the Zonolite brand. The Debtor's notice proposal does not show any similar data nationally that may support or be converse to this. Since Washington demographics and home ownership statistics are not out of the ordinary, Zonolite homeowners throughout the U.S. and other target areas may be almost completely unwary. If they don't know they have the product, and they don't know what the product is, or what it looks like, how can they be expected to take action from a notice involving numerous different claim types and little to no helpful information or visuals?

ii) Based on news articles I have studied that have appeared in recent years, a common theme regarding asbestos is "do not disturb it." The EPA says "LEAVE IT ALONE." And apparently, the companies involved in the asbestos industry, through the Asbestos Information Association of North America, undertook communications programs to encourage the public that in-place asbestos was safe. Now, the unaware homeowner must decide to venture into the attic and disturb it just to determine whether he/she needs to file a claim. Even then, identification may be impossible without the aid of a professional. Before a notice dissemination plan is prepared and even

before a notice is written, a process for determining claim-filing eligibility may be necessary (inspectors, etc.) because that information will be needed for the content of the notice and related materials. And, depending on the process and timing issues, the methods and means of notification will be affected, i.e., an involved identification process may require more notices over a greater period of time.

iii) The broad range of other PD claimants in this case are likely unwary that their buildings contain products on which claims are to be barred.

## COMMUNICATIONS GUIDANCE FROM GENERALLY ACCEPTED COMMUNICATIONS INDUSTRY PRINCIPLES

13. I often study how a notice and notice plan conform to generally accepted communication principles in different situations, and how these principles guide the adequacy of notice. There are numerous observations that I have made about the Debtor's notice proposal that do not seem to be in sync with these long-standing and accepted principles as evidenced by these statements on topics directly relevant to the Debtor's proposals by several of the "fathers" of modern advertising and communication and other sources. These principles have not wavered over the years.

a. **You Must Know Your Audience and Focus On It**. "Two guidepoints, what you're trying to say and the audience you are trying to say it to." *Seiden, Hank. Advertising Pure and Simple. New York: Amacon, 1976;* "Understand your target audience. It helps you see your readers as individuals, not a mass." *Roman, Kenneth and Jane Maas. How to Advertise. New York: St. Martin's Press, 1976;* "Platitudes and generalities roll off the human understanding like water from a duck." *Hopkins, Claude C. Scientific Advertising, 1923;* "Identifying the Target Audience - Different messages are appropriate for different audiences. When trying to reach too many groups with a message or strategy, it is possible to reach none." *Marketing Research Association, Chicago, IL;* "Different ads have different target audiences. When ads are not linked to our own specific needs, either we tend to ignore them, or to find fault with them. Many people call some ads "stupid" because they don't realize that these ads are not targeted at them. Many people are so egocentric that they are unaware of the millions of other people in the audience." *Rank, Hugh. The Pitch. Counter Propaganda Press, 1991.*

   i) The Debtor's Notice targets too many audiences at once and is therefore ineffective in reaching any of them.

   ii) The Debtor's Notice treats all claimants as if they are a part of the mass with the same conditions and concerns.

   iii) The Debtor's Plan identifies different targets but does not address them with different notices.

   iv) The broad range of unaware PD claimants such as Hospitals, Airports, Hotels, and more, need focused notice and examples of products that may affect their properties.

b. **<u>The Headline Needs to Attract Prospects by Speaking Directly to Them</u>**.

"Headlines get 5 times the readership of the body copy." *Ogilvy, David. <u>Ogilvy on Advertising</u>. New York: Crown Publishers, 1983*; "The headline is the most important element in an advertisement. It is the telegram which decides the reader whether to read the copy. Use it to flag down the readers who are prospects." *Ogilvy, David. <u>Confessions of an Advertising Man</u>. New York: Atheneum, 1963*; "We pick out what we wish to read by headlines, and we don't want those headlines misleading. The writing of headlines is one of the greatest journalistic arts. They either conceal or reveal an interest." <u>*Scientific Advertising*</u>; "Headlines that offer the reader helpful information attract above average readership." <u>*Ogilvy on Advertising*</u>; "Headlines more than anything else decide the success or failure of an advertisement." <u>*Ogilvy on Advertising*</u>; "Use the headline to flag your prospect. If the advertisement is talking to a special group, single that out." <u>*How to Advertise*</u>; "What you have will interest certain people only, and for certain reasons. You care

only for those people. Then create a headline which will hail those people only." *Scientific Advertising*.

    i)    The Debtor's Notice does not "flag" down W.R. Grace claimants since they may be unaware of the name Grace in connection with their property, and therefore unaware they are a claimant. The headline speaks to "claims," not people.

    ii)    The special qualifying traits of the claimants are not addressed in the Debtor's headline such that would allow those who have loose-fill attic insulation, those who have sprayed on or other types of insulation products in commercial buildings, or those who worked around commercial and residential insulation products, to know that the notice is even attempting to address them.

    iii)    The Debtor's headline does not focus on any of the diverse claimant groups, instead, it tries to speak to all of them.

c.    **Text Must be Clear, Focused, Simple and Complete**. "But one must consider that the average reader is only once a reader, probably. And what you fail to tell him in that ad is something he may never know." *Scientific Advertising*; "An ad must be single minded. An attempt to make three or four points is doomed a priori to make none of them." *Advertising Pure and Simple*; "Advertising must have

something to say. Beyond that, what is has to say is all-important. Finally, advertising should say it straight, plain and simple." <u>Advertising Pure and Simple</u>; "It is a mistake to use *highfalutin* language when you advertise to uneducated people." <u>Confessions of an Advertising Man</u>; "Broadcast – present ONE idea. It is difficult to communicate more than one idea in a TV commercial. In radio, which is subject to more distractions, it is nearly impossible." <u>How to Advertise</u>; "To be effective, advertising must clearly communicate its message." <u>How to Advertise</u>;

    i) By attempting to present with equal weight all the claim types in one notice, the Debtor's Notice does not conform to these guidelines.

    ii) The TV Notice is virtually unintelligible in the form of a :30 second commercial.

    iii) The Debtor's Notice does not provide an adequate explanation of what key products look like and how to identify them, instead leaving a general impression about "all claims against W.R. Grace"

d. **<u>Visual Elements Are Sometimes Required To Effectively Communicate</u>**. "A picture is worth a thousand words." *Chinese Proverb*.

    i) A notice directed to unaware and uninformed persons such as Zonolite claimants cannot adequately inform these affected people without visuals. Many people may remember the product from installing it, from

previously being in the attic, or may recall the bag's appearance. There is no good reason not to include demonstrative pictures of Zonolite and a Zonolite bag, except the consideration that a photograph may provide little benefit to the person who does not want to go near the product for safety concerns, and cannot recall its appearance from a past encounter. Here, in a Bar Date claims filing situation, with significant curtailment of rights looming, this concern is magnified[4].

## CONCLUSION

14. Asbestos related notice programs have always been difficult. But here there are distinct communications differences. In *In re Armstrong World Industries* for example, no asbestos personal injury claims are subject to bar, so a simplified notice program was appropriate. In *Babcock & Wilcox*, workers knew they worked around boilers, and, as

---

[4] Photographs are not always helpful, needed or required in every litigation notice and frequently they are not employed. For example in Babcock & Wilcox, the phrase "worked around commercial boilers" is adequate to alert workers since they know they did so, and they know what B&W boilers looked like. Similarly, notices to breast implant recipients would not be aided by any photograph. They simply know they have breast implants. Tobacco smokers know what cigarettes look like. However in numerous situations photographs have been used, i.e. In the Washington Diet Drugs litigation *St. John v. American Home Products Corp.*, Super. Ct. Wa., 97-2-06368, the Court approved the notice that carried pictures of the "Fen/Phen" pills because the pills look alike, and they were a helpful way of allowing Class members to identify at a glance that this was something that affected them, as they would remember taking a pill that looked like that even if they never knew the name "Redux" or "Pondimin." The national diet drugs settlement notice approved by the MDL Court also carried photographs of the pills. In other notices, photos and other graphics have been employed for similar and simple communicative enhancement, for example: to help a Polybutylene Pipe homeowner see that the pipe in question looks very different from normal copper pipe, *Spencer v. Shell Oil*, Circuit Court Of Greene County, Alabama, Case No. CV 94-074; to help a hardboard siding owner see a logo stamped on the reverse of the siding, *In Re Louisiana Pacific Hardboard Siding Litigation*, United States District Court, Northern District of California; even to help a Holocaust survivor stir his/her painful memories to decide whether they had Nazi era insurance claims, International Commission on Holocaust Era Insurance Claims, Washington DC, Former U.S. Secretary of State Lawrence Eagleburger Chairman.

separately addressed in focused notices, residents of Apollo/Parks Township PA knew they lived there and were potentially exposed to Nuclear contamination. By bringing these different main messages "home" to potential claimants in media known to be read and viewed by them and by mailing notices directly to the more limited categories of other types of claimants, notice was certainly adequate. In the attempted settlements of litigation involving unwary futures claimants however, tens of millions of dollars were spent on broad notices, ending with the Supreme Court wondering aloud whether such un-self-conscious people could ever be notified[5].

15.     Here, there are numerous "structural" problems that must be addressed before a determination can be made whether adequate notices and a notice plan can be developed that effectively communicate a Bar Date to property damage claimants. What is the current level of awareness of the products affected by the Bar Date? Can unaware claimants be made aware that they may have products affected by the Bar Date? What will the process be that unwary claimants can utilize to determine whether they have Zonolite or other commercial products without disturbing them for example, and then how to communicate that information in notice design and text. If these issues are addressed and the Court requires Bar Date Notice, then recommendations can be prepared to best address

---

[5] In *Ahearn v. Fibreboard Corp.*, C.A. No. 6:93cv526 (E.D. Tex.), the notice plan endeavored to reach "every man, woman and child," and reached 97% of men an average of 7.5 times each. *In re Dow Corning Corporation*, No. 96-20512 (Bankr. E.D. Mi.) Oral Deposition of Katherine M. Kinsella, March 4, 1996. The *Ahearn* media plan cost $10 million dollars in 1994. The total cost of notice was $21 million.

them with dramatic improvement relative to the Debtor's proposed notice program. At this stage, it can be concluded that the Debtor's proposed notice and notice plan is not reasonably certain to inform those affected by any Bar Date the Court may order.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Todd B. Hilsee

SUBSCRIBED AND SWORN TO BEFORE ME this 6th day of September, 2001.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES: 5/27/04

NOTARIAL SEAL
CAROLE S. KUHN, Notary Public
Souderton Boro., Montgomery County
My Commission Expires May 27, 2004

© 2001 Hilsoft Notifications

# Todd B. Hilsee

<u>Hilsoft Notifications, Hilsoft, Inc., 601 E. Broad Street, P.O. Box 120, Souderton, PA 18964 (215) 721-2120 (215) 721-6886 Fax</u>

**Hilsoft Notifications**                                                             **President**
Souderton, PA                                                              March 1994 - Present

*Founded company that exclusively provides large-scale, unbiased legal notification design, implementation and analysis.*

- Developed and implemented multi-national Bar Date notice in *In re The Babcock & Wilcox Co., No. 00-10992 (Bankr. E.D. La)* to asbestos personal injury claimants. Testimony answered all questions posed in pre-ruling motions, was not rebutted by opposing expert and notice plans were found to meet due process standards. Undertook demographic analysis, vehicle selection, circulation research, unduplicated reach and frequency analysis, notice design, and media implementation delivering audience coverage sought while saving $450,000 relative to the notice budget.

- Designed and implemented worldwide settlement notice program to Holocaust survivors and heirs in $1.25 billion settlement with Swiss Banks in *In re Holocaust Victims Assets Litigation, No. CV-96-4849 "Swiss Banks" (E.D.N.Y)*. Responsible for overall determination of effectiveness and adequacy, planning and implementation of all international notices in 500+ publications in 40 countries in 27 languages. Responsibilities include in-depth target audience study, vehicle selection, media placement, and reach and effectiveness analysis. Notice program has been called the most complex in history.

- Designed and implemented national class certification notice program in *Snider v. State Farm, No. 97-L-114 "Auto Parts Litigation" (Cir. Ct. Ill)*, approved by Judge John Speroni, withstood challenges to Ill. Supreme Court and United States Supreme Court. Research included media reach and direct mail analysis. Duties included notice design for comprehension, media placement, web site development, response handling and reporting, and fulfillment.

- Planned and oversaw implementation of massive settlement notice plan, with target audience study, vehicle selection, reach and effectiveness analysis, and response analysis, in *In re Synthroid Marketing Litigation, No. 97-C-6017, MDL 1182 (N.D. Ill)* Scientific analysis showed that targeted notice to 8-million member class reached one of the highest percentages of class members of any consumer publication program in recent history.

- Prepared, analyzed and implemented notice plans in the first ever breast implant class action to go to trial, *Spitzfaden v. Dow Corning, No. 92-2589, "Breast Implant Litigation" (Civ. Dist. Ct., La.)* Submitted affidavit and provided testimony as to the effectiveness of the notice. Notice approved by Judge Yada T. McGee, withstood challenges to the Court of Appeals, and the La. Supreme Court.

- Undertook notice plan analysis, design and development in the *In re Dow Corning Corporation, No. 95-20512-11-AJS (Bankr. E D. Mich.)* Planning ensured that 28 million additional women received effective notice of the bar date. Judge Arthur J. Spector approved domestic and foreign notice plans. Services included optimization of media vehicles and schedules, notice design for comprehension, and reach, frequency and post-plan analysis.

- Provided media planning, target audience analysis, vehicle selection, reach and frequency analysis, affidavit and Court testimony on behalf of national settlement notice plan in *Cox v. Shell Oil, No. 18,844, " Polybutylene Pipe Litigation" (Chanc. Ct. Tenn.)* Notice plan approved as presented in Court by Judge Michael Maloan.

- Other significant notice cases: *Firestone Tire Litigation, In re Babcock & Wilcox Bankruptcy, Canadian Fen/Phen Litigation, Weyerhaeuser Hardboard Siding Settlement, Zonolite Asbestos Litigation, Texaco Bankruptcy, Louisiana Tobacco Litigation, Inamed Breast Implant Settlement, Washington Fen/Dexfen Litigation, First USA Credit Card Litigation, Hurd Gas-Filled Windows Settlement, Factor Concentrate (HIV) Settlement, Vieira Un-scattered Remains Litigation, ADM Lysine Antitrust Litigation, Norwest Credit Life Insurance Litigation,* and many others.

**Foote, Cone & Belding** (*FCB is the largest advertising agency in the domestic U.S.*)         **Account Director**
Philadelphia, PA                                                                                                 February 1990 – March 1994

- Researched, designed, provided deposition, testified in Court, and executed the national notice program for *In re Domestic Air Transportation Antitrust Litigation, MDL 861 (N.D. Ga.)* First reported case involving analysis of audience and readership data. Judge Marvin Shoob approved the notice plan, following my in-depth study of media

effectiveness, including consumer behavior with respect to direct mailings. One of the most often cited cases today supporting effective notice.

- Provided consulting, research, and analysis for other nationwide class actions including *Bolar Pharmaceutical Litigation (Generic Drugs), Steel Drums and Pails Litigation, GM Truck Fuel Tank Class Action (Research), and Ferdinand Marcos Litigation (Demographic Research)*.

- Supervised Account staffs, analyzed marketing information, directed research, media and creative teams, prepared communications plans, developed objectives and strategies, prepared client and new business presentations.

- Responsible for media placement budgets totaling $15 Million annually.

- Developed lending and deposit product as well as service communications campaigns for First Fidelity Bank. Undertook analyses of financial product selection criteria. Campaigns were targeted to various demographics.

- Directed communications programs designed to optimize reach among Panasonic target audiences – national magazines, television, radio and newspapers, and direct mail for all computer and peripheral products, including market leading dot-matrix printer models, as well as full line brand building efforts.

- Awarded American Marketing Association's national Effie, for marketing campaign effectiveness, only the second in FCB/Philadelphia history.

- Repositioned Izod's golf apparel brand with a unique trade and consumer media campaign designed to provide more lasting impact among a specific target (club professionals) than traditional direct mail only efforts. Sell-in and Sell-thru increased during the next two sales periods at substantially higher rates.

- Worked extensively with non-traditional media: Conceived and implemented the first laser networked billboards to help launch the new Futures Center at the Franklin Institute Science Museum. First year attendance doubled vs. the prior year to greater than 1 million persons.

**Foote, Cone & Belding (FCB)**  **Account Executive**
Philadelphia, PA  March 1987 – February 1990

- Developed system to analyze sales response relative to advertising, to monitor advertising effectiveness. Developed custom budget management software to help clients manage media spending allocations.

**Greenwald/Christian, Inc.**  **Account Executive**
Philadelphia, PA  December 1985 – March 1987

- Initiated a system to allow objectives and strategies to more consistently drive agency planning. Worked extensively with collateral production and direct mail projects.

**McAdams & Ong, Inc.**  **Media Planner/Buyer**
Philadelphia, PA  May 1982 – December 1985

- Planning, vehicle selection, negotiating, buying, budget management, and optimizing reach and frequency. Direct responsibility for planning and buying $5 million of media annually. Proficiency in all media: magazines, newspapers, outdoor, radio, TV, etc. for trade and consumer businesses.

## EDUCATION

Pennsylvania State University, 1982, B.S. Marketing Management

## JUDICIAL COMMENTS

a. Judge Marvin Shoob, *In re Domestic Air Transportation Antitrust Litigation* *(January 10, 1992) MDL 861 (N.D. Ga.)*:

"*The Court finds Mr. Hilsee's testimony to be credible. Mr. Hilsee's experience is in the advertising industry. It is his job to determine the best way to reach the most people. Mr. Hilsee answered all questions in a forthright and clear manner. Mr. Hilsee performed additional research prior to the evidentiary hearing in response to certain questions that were put to him by defendants at his deposition. . . .The Court believes that Mr. Hilsee further enhanced his credibility when he deferred responding to the defendant's deposition questions at a time when he did not have the responsive data available and instead utilized the research facilities normally used in his industry to provide the requested information.*"

b. Judge Marvin Shoob, *In re Domestic Air Transportation Antitrust Litigation* *(January 10, 1992) MDL 861 (N.D. Ga.)*:

"*The Court is convinced that the innovative notice program designed by plaintiffs not only comports with due process and is sensitive to defendants' res judicata rights, but it is the only notice program suitable for this unique and massive consumer class action.*"

c. Judge Dudley Bowen, *Andrews/Harper v. MCI* *(August 18, 1995) No. CV 191-175, "900 Number Class Action" (S.D. Ga.)*:

"*Upon consideration of the submissions of counsel and the testimony adduced at the hearing, and upon the findings, observations and conclusions expressed from the bench into the record at the conclusion of the hearing, it is hereby ordered that the aforementioned proposed media plan is approved.*"

d. Judge Michael Maloan, *Cox v. Shell Oil* *(November 17, 1995) No. 18,844, " Polybutylene Pipe Litigation" (Chanc. Ct. Tenn.)*:

"*Cox Class Counsel and the notice providers worked with Todd B. Hilsee, an experienced class action notice consultant, to design a class notice program of unprecedented reach, scope, and effectiveness. Mr. Hilsee was accepted by the Court as a qualified class notice expert....He testified at the Fairness Hearing, and his affidavit was also considered by the Court, as to the operation and outcome of this program.*"

e. Judge Yada T. Magee, *Spitzfaden v. Dow Corning* *(1997) No. 92-2589, "Breast Implant Litigation" (Civ. Dist. Ct., La.)* (The Louisiana Supreme Court upheld the ruling, finding no error):

"*Given the definition of this class and the potential size, the efforts taken to notify potential class members was more than sweeping...Accordingly the Court finds that the notice was adequate.*"

f. Judge John Speroni, <u>*Snider v. State Farm*</u> *(February 25, 1998), No. 97-L-114 "Auto Parts Litigation" (Cir. Ct. Ill)* (Withstood challenge to Illinois Supreme Court, and the United States Supreme Court denied certiorari on issues including the notice issues):

*"...this Court having carefully considered all of the submissions, and reviewed their basis, finds Mr. Hilsee's testimony to be credible. Mr. Hilsee carefully and conservatively testified to the reach of the Plaintiffs' proposed Notice Plan, supporting the reach numbers with verifiable data on publication readership, demographics and the effect that overlap of published notice would have on the reach figures...This court's opinion as to Mr. Hilsee's credibility, and the scientific basis of his opinions is bolstered by the findings of other judges that Mr. Hilsee's testimony is credible."*

g. Judge Elaine Bucklo, <u>*In re Synthroid Marketing Litigation*</u> *(1998) No. 97-C-6017, MDL 1182 (N.D. Ill)*:

*"...the parties undertook an elaborate notice program...in numerous publications in the United States and abroad which those persons most likely to be class members would read...In fact from the affidavits filed, it would appear that notice was designed to reach most of the affected reading public."*

h. Judge Salvatore F. Cozza, <u>*Joseph Delay et al., v. Hurd Millwork Company*</u> *(1998) No. 97-2-07371-0 (Sup. Ct. Wa.)*:

*"I'm very impressed by the notice plan which has been put together here. It seems to be very much a state of the art proposal in terms of notifying the class members. It appears to clearly be a very good alternative for notification. The target audience seems to be identified very well, and the Court is very satisfied with the choice of media which has been selected to accomplish this."*

i. Mr. Justice Cumming, <u>*Wilson v. Servier*</u> *(September 13, 2000) No. 98-CV-158832, "National Fen/Phen Litigation" (Ontario Superior Court of Justice)*:

*"The plaintiffs retained a class-notification expert, Mr. Todd Hilsee, to provide advice and to design an appropriate class action notice plan for this proceeding. Mr. Hilsee's credentials and expertise are impressive. The defendants accepted him as an expert witness. Mr. Hilsee provided evidence through an extensive report by way of affidavit, upon which he had been cross-examined. His report meets the criteria for admissibility as expert evidence. R. v. Lavallee, [1990] 1 S.C.R. 852."*

j. Judge Alfred G. Chiantelli, <u>*Williams v. Weyerhaeuser*</u> *(December 22, 2000) No.995787, "Hardboard Siding Litigation" (Sup. Ct. Ca.)*:

*"The Class Notice complied with this Court's Order, was the best practicable notice, and comports with due process...Based upon the uncontroverted proof Class Counsel have submitted to the Court, the Court finds that the settling parties undertook an extensive notice campaign designed by Todd Hilsee of Hilsoft Notifications, a nationally recognized expert in this specialized field."*

k.  Judge Stuart R. Pollock, *Microsoft I-V Cases* (March 30, 2001) J.C.C.P. No. 4106, (Sup. Ct. Ca.):

"Plaintiffs and Defendant Microsoft Corporation have submitted a joint statement in support of their request that the Court approve the plan for dissemination of class action notice and proposed forms of notice, and amend the class definition. The Court finds that the forms of notice to Class members attached hereto as Exhibits A and B fairly and adequately inform the Class members of their rights concerning this litigation. The court further finds that the methods for dissemination of notice are the fairest and best practicable under the circumstances, and comport with due process requirements."

l.  Judge Sarah S. Vance, *In re The Babcock & Wilcox Co., et al* (August 25, 2000) No. 00-0558 (E.D. Louisiana):

"Furthermore, the Committee has not rebutted the affidavit of Todd Hilsee, President of Hilsoft Notifications, that the (debtor's notice) plan's reach and frequency methodology is consistent with other asbestos-related notice programs, mass tort bankruptcies, and other significant notice programs...After reviewing debtor's Notice Plan, and the objections raised to it, the Court finds that the plan is reasonably calculated to apprise unknown claimants of their rights and meets the due process requirements set forth in Mullane.... Accordingly, the Notice Plan is approved."

m.  Judge Stuart R. Pollak, *Microsoft I-V Cases* (April 1, 2001) Judicial Council Coordination Proceeding No. CJC-00-004106 (Sup. Ct. Ca.):

"...concerning dissemination of class notice; and I have reviewed the materials that have been submitted on that subject and basically I'm satisfied. I think it's amazing if you're really getting 80 percent coverage. That's very reassuring. And the papers that you submitted responded to a couple things that had been mentioned before and I am satisfied with all that."

n.  Judge David Flinn, *Westman v. Rogers Family Funeral Home, et al.* (March 5, 2001) No. C 98-03165 (Sup. Ct. Ca.):

"The Court has determined that the Notice given to potential members of the Settlement Class fully and accurately informed potential Members of the Settlement Class of all material elements of the proposed settlement and constituted valid, due and sufficient notice to all potential members of the Settlement Class, and that it constituted the best practicable notice under the circumstances."

## PUBLICATIONS

"*Off of the Back Pages. The evolution of Class Action Notice: A practical communications perspective sheds the guiding light on adequacy of notice. An analysis of notice in Mullane v. Central Hanover Trust.*" 11/99 Mealey's Judges and Lawyers in Complex Litigation Conference Handbook; "*Class Action Notice to Diet-Drug Takers: A Scientific Approach*": 2/99 Fen-Phen Litigation Strategist. "*Class Action: The Role of the Media Expert*": 12/19/95 Automotive Litigation Reporter, 12/15/95 Asbestos Litigation Reporter, 12/11/95 Medical Devices Reporter, 12/7/95 Asbestos Property Reporter 12/5/95 Toxic Chemicals Litigation Reporter, 1/1/96 Securities and Commodities Litigation Reporter, 12/95 DES Litigation

*Reporter, 11/28/95* Employment Litigation Reporter, *5/24/96* AIDS Litigation Reporter, *7/96* Leveraged Buyouts & Acquisitions Litigation Reporter, *7/96* Wrongful Discharge Report, *7/96* Sexual Harassment Litigation Reporter, *6/19/96* Corporate Officers and Directors Liability Litigation Reporter

## PANELS

Speaker, *"Generation X on Trial,"* ABA Section of Litigation Annual Meeting, 2001; Speaker, *"Tires, Technology and Telecommunications,"* Class Action and Derivative Suits Committee, ABA Section of Litigation Annual Meeting, 2001; Speaker, *"Class Actions,"* Mealey's Judges and Lawyers in Complex Litigation Conference, 1999.

## LEGAL NOTICE CASES

Todd B. Hilsee and Hilsoft Notifications have served as notice experts for planning, implementation and/or analysis in the following partial listing of cases:

| | |
|---|---|
| *In re Domestic Air Transportation Antitrust Litigation* | N.D. GA, CV-2485, MDL 861 |
| *In Re Bolar Pharmaceutical Generic Drugs Consumer Litigation* | E.D. PA MDL 849 |
| *In re Steel Drums Antitrust Litigation* | S.D. OH, C-1-91-208 |
| *In re Steel Pails Antitrust Litigation* | S.D. OH, C-1-91-213 |
| *In re GM Truck Fuel Tank Products Liability Litigation* | E.D. PA, 92-6450, MDL 1112 |
| *In re Estate of Ferdinand Marcos Human Rights Litigation* | D. HI, MDL 840 |
| *Andrews v. MCI (900 Number Litigation)* | S. D. GA, CV 191-175 |
| *Harper v. MCI (900 Number Litigation)* | S.D. GA, CV 192-134 |
| *Kellerman v. MCI Telecommunications Corp (Long Distance Telephone Litigation)* | Cir. Ct. IL, 82 CH 11065 |
| *Bausch & Lomb Contact Lens Litigation* | N.D. AL, 94-C-1144-WW |
| *In re Ford Motor Paint Litigation* | E.D. LA, 95-0485, MDL 1063 |
| *Castano v. American Tobacco* | E. D. LA, CV 94-1044 |
| *Cox v. Shell Oil (Polybutylene Pipe Litigation)* | Ch. Ct. TN, 18,844 |
| *Fry v. Hoercst Celanese (Polybutylene Pipe Litigation)* | Cir. Ct. FL, 95-6414 CA11 |
| *Meers v. Shell Oil (Polybutylene Pipe Litigation)* | Super. Ct. CA, M30590 |
| *In re Amino Acid Lysine Antitrust Litigation* | N.D. IL, 95C7679, MDL 1083 |
| *In re Dow Corning Corp. (Bankruptcy)* | E. D. MI, 95-20512-11-AJS |
| *Kunhel v. CNA Insurance Companies* | Super. Ct. NJ, ATL-C-0184-94 |
| *In re Factor Concentrate Blood Products Litigation (HIV)* | N.D. IL, 93-C-7452, MDL 986 |
| *In re Ford Ignition Switch Products Liability Litigation* | D. NJ, 96-CV-3125 |
| *Jordan v. A.A. Friedman (Non-Filing Insurance Litigation)* | D. GA, 95-52-COL |
| *Kalhammer v. First USA (Credit Card Litigation)* | Cir. Ct. CA, C96-45632010-CAL |
| *Navarro-Rice v. First USA (Credit Card Litigation)* | Cir. Ct. OR, 9709-06901 |

| | |
|---|---|
| *Spitzfaden v. Dow Corning (Breast Implant Litigation)* | Civ. D. Ct. LA. 92-2589 |
| *Robinson v. Marine Midland (Finance Charge Litigation)* | N.D. IL, 95 C 5635 |
| *McCurdy v. Norwest Financial Alabama* | Cir. Ct. AL, CV-95-2601 |
| *Johnson v. Norwest Financial Alabama* | Cir. Ct. AL, CV-93-PT-962-S |
| *In re Residential Doors Antitrust Litigation* | E.D. PA, 94-CV-3744, MDL 1039 |
| *Barnes v. American Tobacco* | E.D. PA, 96-5903 |
| *Small v. Lorillard Tobacco* | Supr. Ct. NY, 110949/96 |
| *Naef v. Masonite Corp* | Cir. Ct. AL, CV-94-4033 |
| *In re Synthroid Marketing Litigation* | N.D. IL, 97 C 6017, MDL 1182 |
| *Chisolm v. Transouth Financial* | U.S. Ct. of Appeals, 4th Cir., 97-1970 |
| *Raysick v. Quaker State Slick 50 Inc.* | D. TX, 96-12610 |
| *Castillo v. Mike Tyson* | Supr. Ct. NY, 114044/97 |
| *Snider v. State Farm Automobile Insurance (Auto Parts Litigation)* | Cir. Ct. IL, 97-L-114 |
| *Walls v. The American Tobacco* | N.D. OK, 97-CV-218-H |
| *Tempest v. Rainforest Café (Securities Litigation)* | D. Mn. 98-CV-608 |
| *Stewart v. Avon Products* | E.D. Pa. 98-CV-4135 |
| *Goldenberg v. Marriott PLC Corp* | D. Md., PJM 95-3461 |
| *Delay v. Hurd Millwork* | Super. Ct. Wa., 97-2-07371-0 |
| *Gutterman v. American Airlines (Frequent Flyer Litigation)* | Cir. Ct. IL, 95CH982 |
| *Hoeffner v. The Estate of Alan Kenneth Vieira (Un-scattered Cremated Remains Litigation)* | Super. Ct. Ca., 97-AS 02993 |
| *In re Graphite Electrodes Antitrust Litigation* | E.D. Pa, 97-CV-4182 |
| *In re Silicone Gel Breast Implant Products Liability Litigation, Altrichter v. INAMED* | N.D. Al, CV-92-D-1000-S, MDL 926, CV 97-R-11441-S |
| *St. John v. American Home Products Corp. (Fen/DexFen Litigation)* | Super. Ct. Wa., 97-2-06368 |
| *Crane v. Hackett Associates (Securities Litigation)* | E.D. Pa, 98-5504 |
| *In re Holocaust Victims Assets Litigation* | E.D. NY, CV-96-4849 |
| *Williams v. Weyerhaeuser (Hardboard Siding Litigation)* | Super. Ct. CA., CV-995787 |
| *Kapustin v. YBM Magnex International Inc.* | E.D. Pa, 98-CV-6599 |
| *Leff v. YBM Magnex International Inc.* | E.D. Pa, 95-CV-89 |
| *Crawley v. Chrysler Corporation* | Common Pleas Ct. Pa., CV-4900 |
| *In re PRK/LASIK Consumer Litigation* | Super. Ct. Ca., CV-772894 |
| *Hill v. Galaxy Cablevision* | N.D. MS, 1:98CV51-D-D |
| *Scott v. American Tobacco Co. Inc. et al.* | Civ. D. Ct. LA, 96-8461 |
| *Jacobs v. Winthrop Financial Associates et al.* | D. MA, 99-CV-11363 |
| *International Commission on Holocaust Era Insurance Claims – Worldwide Outreach Program* | Former Secretary of State Lawrence Eagleburger Commission |
| *Michael A. Bownes v. First USA Bank, et al.* | Cir. Ct. AL, CV-99-2479-PR |

Todd B. Hilsee C.V.

| | |
|---|---|
| *Whetman v. IKON* | D. UT Civil, 2-98-CV-89 |
| *Richard Mangone v. First USA Bank, et al.* | Cir. Ct. IL, 99AR672a |
| *In re Babcock and Wilcox Company et al. (Bankruptcy)* | E.D. LA, 00-10992 |
| *Marco Barbanti v. W.R. Grace and Co. et al. (Zonolite asbestos)* | Super. Ct. WA, 00201756-6 |
| *Sheila Wilson v. Servier Canada Inc. (fen-phen litigation)* | Ontario. Super. Ct., 98-CV-158832 |
| *Danny Paul and Erma Strode v. Country Mutual Insurance Company, et al.* | Cir. Ct. IL, 99-L-995 |
| *In re Texaco Inc., et al. (Bankruptcy)* | S.D. NY. Bankruptcy Nos. 87 B 20142, 87 B 20143, 87 B 20144. |
| *Gary Gustafson, et al., v. Bridgestone/Firestone, Inc.* | S.D. IL, Civil No. 00-612-DRH |
| *John S. Gaynoe v. First Union Corporation* | Super. Ct. NC, No. 97-CVS-16536 |
| *Gale Jones Carson, et al., v. Daimler Chrysler Corporation* | W.D. Tenn., No. 99-2896 TU A |
| *Providian Credit Card Cases* | Super. Ct. CA, J.C.C.P. No. 4085 |
| *Fields v. Great Spring Waters of America, Inc., et al.* | Super. Ct. CA, No. 302774 |
| *Sanders v. Great Spring Waters of America, Inc., et al.* | Super. Ct. CA, No. 303549 |
| *Sims v. Allstate Insurance Co.* | Cir. Ct. IL, No. 99-L-393A |
| *Peterson v. State Farm Mutual Automobile Insurance Co.* | Cir. Ct. IL, No. 99-L-394A |
| *Microsoft I-V Cases* | Super. Ct. CA, J.C.C.P. No. 4106 |
| *Westman, et al., v. Rogers Family Funeral Home, Inc.* | Super. Ct. CA, No. C-98-03165 |
| *Rogers v. Clark Equipment Co.* | Cir. Ct. IL, No. 97-L-20 |
| *Garrett v. Hurley State Bank* | Cir. Ct. Miss, No. 99-0337 |
| *Ragoonanan v. Imperial Tobacco Limited* | Ontario Sup. Ct., No. 00-CV-183165 CP |
| *Dietschi, et al. v. American Home Products Corp. (PPA)* | W.D. WA, No. C01-0306L |
| *Dimitrios and Slioupkidis v. CVS, Inc. (PA Act 6)* | Common Pleas Ct. PA, No. 99-6209 Civil |
| *Ronald Jones et al. v. Hewlett-Packard Company* | Super. Ct. CA, No. 302887 |
| *In re Tobacco Cases II (California Tobacco Litigation)* | Super. Ct. CA, J.C.C.P. No. 4042 |