# KIRKLAND & ELLIS

PARTNERSHIPS INCLUDING PROFESSIONAL CORPORATIONS

200 East Randolph Drive
Chicago, Illinois 60601

David M. Bernick
To Call Writer Directly:
(312) 861-2248

312 861-2000

Facsimile:
312 861-2200

March 13, 2002

The Honorable Judith K. Fitzgerald
United States Bankruptcy Judge
District of Delaware
Suite 5490, USX Tower
600 Grant Street
Pittsburgh, PA 15219

Re:   In re: W.R. Grace & Co., et al.
      Chapter 11 Bankruptcy No. 01-1139(JKF)

Dear Chief Judge Fitzgerald:

At the February 25, 2002 omnibus hearing in the above-captioned matter, the Court heard argument on the ZAI claimants' motion to dismiss. While the motion was denied, Grace is concerned about the factual accuracy of some of the statements made by counsel for ZAI. To clarify the record, Grace submits the attached correspondence from David B. Siegel, Grace's general counsel.

Very truly yours,

David M. Bernick

Enclosure

cc:    All Counsel of Record



**David B. Siegel**
Senior Vice President, General Counsel
 and Chief Restructuring Officer

W. R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

Tel.: (410) 531-4170

March 13, 2002

David M. Bernick, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, Illinois 60601

Dear David:

As you know, Paul Norris and I were in Wilmington for the February 25, 2002 Bankruptcy Court hearing in the Grace bankruptcy case. While we were certainly pleased that Judge Fitzgerald denied the motion by the Zonolite Attic Insulation Class Plaintiffs to dismiss the case, we were quite disturbed by a number of factual misstatements made by Mr. Sobol of Leiff, Cabraser, Heimann & Bernstein, LLP in support of the motion. We would like the opportunity to correct the record on three important points.

1. <u>Zonolite Attic Insulation Class Actions</u>. At the time Grace commenced its Chapter 11 case in April 2001, there were nine residential class actions directed at Zonolite Attic Insulation pending in various courts around the country, all of which had been filed between February 2000 and March 2001. There are at least two other cases pending that allegedly involve large numbers of buildings and multiple Grace products including Zonolite Attic Insulation. Many of these cases are pending in state courts. Only three of these cases were transferred by the MDL panel to Judge Saris in Boston. Two other class actions that Grace had removed to federal court were conditionally transferred to Judge Saris; however, one was remanded back to state court and a motion to remand the other was pending at the time Grace commenced its Chapter 11 case. Had Grace not filed for Chapter 11, it would have had to defend multiple cases in state courts around the country.

2. <u>2000 Increase in Grace's Asbestos Reserve</u>. Mr. Sobol stated that at the end of 2000 Grace increased its asbestos reserve by only 2% and argued that this modest increase demonstrated Grace's confidence in its future ability to handle its personal injury cases. At the end of 2000, in order to account for the tremendous increase in personal injury cases filed in the latter part of 2000 compared to the assumptions used by Grace to estimate its previously recorded liability for asbestos-related litigation,

David M. Bernick, Esq.
March 5, 2002
Page Two

Grace increased its gross asbestos reserve from $812.3 to $1,105.9 million, an increase of 36% (after expected insurance recovery the increase was $208.0 million or 34%). Grace management was concerned by the significant change in the pattern of new claims filings and stated in its annual report, "[D]ue to the uncertainty of asbestos-related litigation, actual amounts could differ materially from the recorded liability." Citing the recent bankruptcies of various codefendants in the asbestos personal injury litigation, Grace's annual report went on to warn of "the risk that Grace will be subject to more claims than previously projected with higher settlement demands" and repeated its disclosure from the third quarter of 2000 that it was considering Chapter 11. Grace management was anything but confident in its ability to manage its asbestos personal injury litigation and did its best to disclose the serious adverse change in its future prospects for survival to the investing public.

      3. <u>Availability of Financing</u>. Grace's 364-day bank credit facility was set to mature in May 2001. $150 million was drawn under this facility at December 31, 2000. Of course Grace management was negotiating with its banks to renew this facility but in view of the disclosures made by Grace of its worsening asbestos situation and the possibility of a Chapter 11 filing, it should be no surprise to anyone that Grace's banks were unwilling to renew this facility on an unsecured basis. Incredibly Mr. Sobol argued that the fact that after the Chapter 11 filing Grace was able to arrange debtor-in-possession financing, which has priority over asbestos claims, demonstrates that Grace's ability to access the capital markets on normal terms had not been compromised. Nothing could be further from the truth. Grace would have been limited to only secured borrowings, to the disadvantage of all of its other creditors.

      Despite Mr. Sobol's attempt to characterize Grace's Chapter 11 filing as some type of bad faith litigation ploy directed towards the Zonolite Attic Insulation plaintiffs Judge Fitzgerald clearly recognized that Grace, like the other asbestos codefendants now in Bankruptcy Court, has chosen Chapter 11 as the only available tool for resolving its asbestos personal injury litigation. Grace management believed then as it believes now—the Zonolite Attic Insulation claims are meritless. Grace's Chapter 11 filing resulted from its inability to defend itself against the 130,000 asbestos personal injury claims pending in multiple state courts around the country, a number that was growing at the rate of 5,000 cases per month in the months leading up to the Chapter 11 filing.

                            Very truly yours,

cc:    Paul J. Norris