## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                          Chapter 11

**W.R. Grace & Co., et al.**                    Case No. 01-01139 (JKF)

                   Debtors.                     Jointly Administered

### TENTH APPLICATION OF STROOCK & STROOCK & LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM JANUARY 1, 2002 THROUGH JANUARY 31, 2002

Name of Applicant                               **Stroock & Stroock & Lavan LLP**

Authorized to Provide
Professional Services to:                        **Official Committee of Unsecured Creditors**

Date of Retention:                               **April 12, 2001**

Period for which compensation and                **January 1, 2002 – January 31, 2002**
reimbursement is sought

Amount of Compensation sought as                 **$100,231.50**
actual, reasonable and necessary:

Amount of Expense Reimbursement sought           **$14,675.58 (of which $12,084.33 relates to**
as actual, reasonable and necessary:             **the Committee's asbestos issues expert)**

This is an: ☒ interim ☐ final application

The total time expended for fee application preparation is approximately 46.3 hours and the
corresponding compensation requested is approximately $8,977.50.[1]

This is the tenth application filed

---

[1] This is Stroock's Tenth Fee Application. Time expended for the preparation of this Fee Application will be
reflected in the next Fee Application.

**Local Form 102 (Fee Application/Attachment A, pg. 1)**

**Attachment A**

## Monthly Interim Fee Applications

| Date Filed | Period Covered | Requested | | Approved for Payment | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| May 30, 2001 | 4/12/01-4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111.943.00 | $6,884.73 |
| July 30, 2001 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| August 31, 2001 | 7/1/01-7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |

## Quarterly Fee Applications

| Date Filed | Period Covered | Requested | | Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| July 30, 2001 | 4/12/01-6/30/01 | $369,873.75 | $19,318.00 | The Hearing to Approve Compensation is scheduled for May 20, 2002 at 10:00 a.m. | |

**Local Form 102 (Fee Application/Attachment A, pg. 1)**

| Nov. 1, 2001 | 7/01/01 – 9/30/01 | $204,923.50 | $15,105.57 | The Hearing to Approve Compensation is scheduled for May 20, 2002 at 10:00 a.m. |
|---|---|---|---|---|
| February 8, 2002 | 10/01/01 – 12/31/01 | $329,842.00 | $21,880.90 | The Hearing to Approve Compensation is scheduled for May 20, 2002 at 10:00 a.m. |

**W R GRACE & CO.**
**ATTACHMENT B**
**THROUGH JANUARY 31, 2002**

| Summary of Hours | Hours | Rate | Amount | No. of Years In Position |
|---|---|---|---|---|
| **Partners** | | | | |
| Kruger, Lewis | 16.6 | 650 | 10,790.00 | 36 |
| Levy, Mark | 4.2 | 615 | 2,583.00 | 27 |
| Greenberg, Mayer | 5.3 | 500 | 2,650.00 | 2 |
| Pasquale, Kenneth | 33.9 | 495 | 16,780.50 | 2 |
| | | | | |
| **Associates** | | | | |
| Krieger, Arlene | 120.3 | 425 | 51,127.50 | 18 |
| Sasson, Moshe | 17.4 | 360 | 6,264.00 | 7 |
| Brandes, Ronnie H. | 12.4 | 185 | 2,294.00 | 1 |
| | | | | |
| **Paraprofessionals** | | | | |
| Cotto, Lisa | 41.2 | 150 | 6,180.00 | 1 |
| Serrette, Rosemarie | 7.5 | 150 | 1,125.00 | 13 |
| Calvo, Fernando | 1.2 | 120 | 144.00 | 1 |
| Defreitas, Vaughn | 21.5 | 100 | 2,150.00 | 10 |
| Mohamed, David | 0.5 | 100 | 50.00 | 6 |
| | | | | |
| Christian, Angelina | 4.9 | 70 | 343.00 | N/A |
| **Subtotal** | 286.9 | | $ 102,481.00 | |
| | | | | |
| Less: 50% Travel Time | (4.7) | | $ (2,249.50) | |
| **Total** | 282.2 | | $ 100,231.50 | |

**Blended Rate**          **$ 355.18**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W. R. GRACE & CO., et al.**[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

### TENTH FEE APPLICATION BY STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., ET AL., FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JANUARY 1, 2002 THROUGH JANUARY 31, 2002

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc., GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA  Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

accordance with the Administrative Fee Order (defined below) for a tenth interim allowance of compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents as follows:

## I.    INTRODUCTION

1.    By this application, Stroock seeks (i) an interim allowance of compensation for the professional services rendered by Stroock as counsel for the Committee for the period from January 1, 2002 through January 31, 2002 (the "Tenth Monthly Period") in the aggregate amount of $100,231.50 representing 210.1 hours of professional services and 76.8 hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Stroock during the Tenth Monthly Period in connection with the rendition of such professional services and paraprofessional services in the aggregate amount of $2,591.25 as well as the fees and expenses of the asbestos issues expert employed by the Committee pursuant to the Court's June 22, 2001 Order Authorizing the Retention of Experts (the "Asbestos Issues Expert")in the aggregate amount of $12,084.33.

2.    Venue of this proceeding and this application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

## II.    BACKGROUND

3.    On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code and have continued in the management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the Bankruptcy Code. Pursuant to an order of the Court, the Debtors' Chapter 11 cases have been procedurally consolidated and are being jointly administered.

2

4.      The Debtors operate a world-wide specialty chemicals and materials business and employ approximately 3860 full and part-time employees.  On a consolidated basis, for the fiscal year 2000, Grace reported a net loss of $89.7 million[2] from $1.59 billion in net revenues.  The Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor subsidiaries and affiliates.

5.      On April 12, 2001, the United States Trustee formed the Committee.  During the first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter 11 cases.  The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP ("DM&H") as its local Delaware counsel.

6.      The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims and asbestos-related property damage claims against the Debtors (collectively, the "Asbestos Claim Committees").  On June 18, 2001, the United States Trustee appointed an official committee to represent the interests of equity security holders of the Debtors.

7.      By application dated May 1, 2001, Stroock sought Court approval for its retention as counsel to the Committee nunc pro tunc to April 12, 2001.  The Court signed an order approving Stroock's retention as counsel to the Committee on May 30, 2001.

8.      This is the tenth monthly application Stroock has filed with the Court for an allowance of compensation and reimbursement of expenses for services rendered to the Committee.  This application is submitted pursuant to the terms of the Administrative Order

---

[2]     The Debtors' pleadings further report that this net loss results in part from a $294.0 million asbestos-related charge to earning recorded in the forth quarter of 2000.

3

Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement

of Expenses for Professionals and Official Committee Members, approved by the Court on May

3, 2001 (the "Administrative Fee Order").

9.      In accordance with the procedures established by the Administrative Fee Order,

Stroock has received payment from the Debtors in the aggregate amount of $691,199.70

representing 80% of the fees and 100% of the expenses sought in each of the first eight monthly

applications covering the period from April 12, 2001 through November 31, 2001. Stroock also

received payment from the Debtors in the amount of $5,431.10 representing fees and expenses of

the Asbestos Issues Expert for the months of October and November 2001. Other than those

payments, applicant has received no payment and no promises for payment from any source for

services rendered in connection with these cases. There is no agreement or understanding

between the Applicant and any other person (other than members of Stroock) for the sharing of

compensation to be received for the services rendered in these cases.

10.      As stated in the Affidavit of Lewis Kruger, Esq. annexed hereto as Exhibit "A,"

all of the services for which interim compensation is sought herein were rendered for and on

behalf of the Committee solely in connection with these cases.

### III.    SUMMARY OF SERVICES RENDERED

11.      Since being retained by the Committee, Stroock has rendered professional

services to the Committee as requested and as necessary and appropriate in furtherance of the

interests of the unsecured creditors of the Debtors' estates. The variety and complexity of these

cases and the need to act or respond on an expedited basis in furtherance of the Committee's

needs have required the expenditure of substantial time by personnel from several legal

disciplines, on an as-needed basis, including in certain instances, working into the evening and

on weekends.

4

12.     Stroock maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the Committee. Such time records were made contemporaneously with the rendition of services by the person rendering such services and in the ordinary course of Stroock's practice, and are presented in compliance with Delaware Local Rule 2016-2(d) amended effective as of February 1, 2001. A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Tenth Monthly Period is annexed hereto as Exhibit "B". In addition, Exhibit "C" hereto contains a summary of the hours expended by each of the attorneys and paraprofessionals during the Tenth Monthly Period, their normal hourly rates, and the value of their services.

13.     Stroock also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are also available for inspection. A schedule of the categories of expenses and amounts for which payment is requested is annexed hereto as Exhibit "D". Also included within Exhibit "D" is an itemization of each expense incurred within each category.

14.     Stroock respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

15.     The following summary of the services rendered during the Tenth Monthly Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit "B". Rather, it is merely an attempt to highlight certain of these areas in which services were rendered to the

5

Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

### (i)    Asbestos: Claims Litigation – Category 0003

16.    During the December 20, 2001 status conference before Judge Wolin, the Court instructed the Committee to submit a letter to the Court setting forth its views of the case management process to be employed in these chapter 11 cases, and the substantive issues that must be resolved with respect to asbestos-related claims against the Debtors and the Committee's review of whether those issues could be resolved consensually. During the Tenth Monthly Period Stroock prepared and submitted on behalf of the Committee correspondence to the Court and, shortly thereafter, met with Judge Wolin to discuss the Committee's views.

17.    In addition, during the compensation period, Stroock reviewed background and other materials on William Drier, appointed by the Court as a special master for these chapter 11 cases, and materials on four other persons appointed by the Court to serve as potential consultants in this and other asbestos-related chapter 11 cases assigned to Judge Wolin. Further, during this compensation period, Stroock reviewed asbestos-claim materials and analyses recently filed in the Johns-Manville Trust matter, and which Judge Wolin referred to during the December 20 Conference. Stroock has expended 32.7 hours on this category for a fee of $16,286.50.

### (ii)    Asset Acquisitions/Business Combinations – Category 0008

18.    During the Tenth Monthly Period, Stroock discussed the Debtors' proposed acquisition of Addiment Incorporated with the Committee's financial advisor, FTI Policano & Manzo ("FTI P&M"), and reviewed FTI P&M's analysis thereof. Stroock has expended 2.0 hours on this category for a fee of $940.00.

6

### (iii)    Business Operations – Category 0013

19.     Stroock reviewed the Debtors' November 2001 operating reports and fourth quarter 2001 operating results, and discussed these and analyses prepared by FTI P&M.  Stroock has expended 5.1 hour on this category for a fee of $2,237.50.

### (iv)    Case Administration – Category 0014

20.     As reported in prior monthly fee applications, towards the end of the November 2001 compensation period, Stroock was informed that these Chapter 11 Cases were being reassigned to District Court Judge Alfred Wolin.  A number of orders were issued during the Ninth Monthly Period relating to the reassignment of these cases to Judge Wolin, and the reference of these cases to Judge Judith Fitzgerald, requests for information regarding the status of pending matters, the scheduling of a status conference on December 20, 2001 before Judge Wolin and a January 2002 hearing before Judge Fitzgerald, and the Court's directive to prepare an amended administrative fee order.

21.     During this Tenth Monthly Period, Stroock reviewed proposed drafts of an amended administrative fee order, discussed the same with FTI P&M and further engaged Debtors' counsel with respect to the terms thereof.  In addition, Stroock continued to closely monitor the items on the Court's docket for these cases to ensure that the Committee was fully informed about all pending motions and adversary proceedings and that Stroock would be ready to timely respond on behalf of the Committee, as might be applicable, continued to engage Debtors' counsel on an on-going basis with respect to pending matters and information requests, prepared revised critical date calendars, reviewed the agenda letters and status reports prepared for Judge Wolin and Judge Fitzgerald during this period and responded to creditor inquiries.

22.     Stroock has expended 61.9 hours on this category for a fee of $15,124.50.

7

(v)    **Committee Matters and Creditor Meetings - Category 0017**

23.    During the Tenth Monthly Period, Stroock communicated with the members of the full Committee through numerous memoranda and telephone conversations, including two conference call meetings of the full Committee.  In order to keep the Committee fully informed of all of the pending matters in these cases, and thus enable the Committee to take informed positions on issues, Stroock thoroughly reviewed and summarized each of the motions filed by the Debtors and other parties in interest in these cases, raised issues the Committee should be aware of, and made recommendations to the Committee concerning appropriate actions to be taken with regard to the motions, communicated with members of the Committee regarding the positions to be taken, engaged counsel for the Debtors, and other parties and movants, as applicable, with the Committee's questions and concerns, and negotiated whenever and to the extent possible consensual resolutions of outstanding issues and acceptable forms of proposed orders.

24.    Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues which have already arisen in these cases and to monitor closely the Debtors' management of these estates.  Stroock has expended 39.3 hours on this category for a fee of $17,049.50.

(vi)    **Compensation of Professionals (Fee Applications of Self and Others) -**
**- Category 0018**

25.    During the Tenth Monthly Period, Stroock prepared its Ninth Fee Application including a narrative section summarizing the services rendered during that period by Stroock and compiled and attached expense schedules all of which were filed with the Court.  Stroock

8

also prepared its third quarterly interim fee application covering the October 1, 2001 through December 31, 2001 period. Stroock has expended 46.3 hours on this category for a fee of $8,977.50.

### (vii)    Executory Contracts/Unexpired Leases (Assumption & Rejection) – Category 0023

26.    During the Tenth Monthly Period, Stroock reviewed several proposed stipulations, including one resolving issues in respect of several unexpired leases in Massachusetts, and the underlying pleadings, and discussed the same with Debtors' counsel. Stroock expended 1.6 hours in this category for a fee of $680.00.

### (viii)    Litigation/Fraudulent Conveyance – 0034

27.    During the Tenth Monthly Period, Stroock reviewed publicly filed financial information for the Debtors relevant to the pending fraudulent transfer-related issues, and participated in numerous discussions with counsel for the Debtors, the other committees in these cases and other parties to the fraudulent transfer litigation in respect of the conduct of such litigation.    Stroock expended 22.4 hours in this category for a fee of $8,669.00.

### (ix)    Non-Working Travel Time – Category 0035

28.    Judge Fitzgerald held two hearings during the Tenth Monthly Period, one held at the very beginning of the period in Pittsburgh, Pennsylvania, and the other in Wilmington, Delaware, and Judge Wolin held a status conference with counsel for the Committee in Newark, New Jersey. Stroock traveled to and from Pittsburgh, Pennsylvania, Wilmington, Delaware and Newark, New Jersey for those hearings. Stroock expended 9.4 hours on this category for a fee of $4,499.00. Pursuant to the Administrative Fee Order, the Applicant is requesting compensation in the amount of $2,249.50 representing fifty percent (50%) of the total amount billed.

9

(x)     **Preparation for and Attendance at Hearings – Category 0037**

29.     Judge Fitzgerald held two hearings in January 2002. Stroock reviewed all of the agenda notices, proposed orders submitted to the Court for approval and relevant pleadings in preparation for the hearings. Stroock expended 34.2 hours on this category for a fee of $16,083.50.

(xi)     **Retention of Professionals - Category 0040**

30.     During the Tenth Monthly Period, the Debtors filed an application seeking authorization to compensate PricewaterhouseCoopers for services PricewaterhouseCoopers had already provided to the Debtors and to employ PricewaterhouseCoopers, but solely for purported non-bankruptcy related services.

31.     Stroock reviewed the application, discussed the application with Debtors' counsel, and reviewed case law relevant to the issues raised by the Debtors' application and cited to by the U. S. Trustee in his objection to the application. Stroock has expended 10 hours on this category for fee of $4,362.50.

(xii)     **Tax/General – Category 0047**

32.     As reported in prior applications, representatives of Stroock and FTI P&M met and prepared a comprehensive tax information request, which was thereafter forwarded to the Debtors. Stroock had received certain of the tax-information requested, and with respect to such items Stroock reviewed the information, and engaged the Debtors and FTI P&M in further discussion with respect to the requested information. During the Ninth Monthly Period, Stroock reviewed additional tax-information received from the Debtors, and with representatives for FTI P&M engaged the Debtors in a lengthy conference call to obtain clarification with respect to certain of the materials received, and to obtain additional tax-related information.

10

33.    During the Tenth Monthly Period, Stroock reviewed case law, relevant Internal Revenue Code statutes, and prepared analyses in respect of the Debtors' NOL position and related items. Stroock has expended 22.0 hours on this category for a fee of $7,569.50.

## IV.    **FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES**

34.    The factors to be considered in awarding attorneys fees have been enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547 F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts. Stroock respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

(A)    The Time and Labor Required. The professional services rendered by Stroock on behalf of the Committee have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the complex issues encountered by the Committee with skill and dispatch. Occasionally, Stroock has been required to perform these services under significant time constraints requiring work late into the evening and on weekends. The services rendered by Stroock were performed efficiently, effectively and economically.

(B)    The Novelty and Difficulty of Questions. Novel and complex issues have already arisen in the course of these Chapter 11 cases, and it can be anticipated that other such issues will be encountered. In this case, as in many others in which the firm is involved, Stroock's effective advocacy and creative approach have helped clarify and resolve such issues and will continue to prove beneficial.

(C)    The Skill Requisite to Perform the Legal Services Properly. Stroock believes that its recognized expertise in the area of corporate reorganization, its

11

ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the resolution of issues, are and will continue to contribute to the maximization of the distributions to the Debtors' unsecured creditors.

(D)     The Preclusion of Other Employment by Applicant Due to Acceptance of the Case. Due to the size of Stroock's insolvency department, Stroock's representation of the Committee has not precluded its acceptance of new clients. However, the volume of the matters needing attention on a continuing basis has required several of the attorneys to commit significant portions of their time to these cases.

(E)     The Customary Fee. The fee sought herein is based upon Stroock's normal hourly rates for services of this kind. Stroock respectfully submits that the fee sought herein is not unusual given the magnitude and complexity of these cases and the time expended in attending to the representation of the Committee, and is commensurate with fees Stroock has been awarded in other cases, as well as with fees charged by other attorneys of comparable experience.

(F)     Whether the Fee is Fixed or Contingent. Pursuant to §§ 330 and 331 of the Bankruptcy Code, all fees sought by professionals employed under § 1103 of the Code are contingent pending final approval by this Court, and are subject to adjustment dependent upon the services rendered and the results obtained.

(G)     Time Limitations Imposed by Client or Other Circumstances. As already indicated, Stroock has been required to attend to the various issues arising in these cases. Occasionally, Stroock has had to perform those services under significant

12

time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

(H)     The Amount Involved and Results Obtained.  Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

(I)     The Experience, Reputation and Ability of the Attorneys.  Stroock has one of the largest and most sophisticated insolvency practices in the nation and has played a major role in numerous cases of national import including:  Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation, Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The Charter Company, Federated Department Stores, G. Heileman Brewing Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc., Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation, Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc., Planet Hollywood International and Anchor Glass Container Corporation.  Stroock's experience enables it to perform the services described herein competently and expeditiously.  In addition to its expertise in the area of corporate reorganization, Stroock has already frequently called upon the expertise of its partners and associates in the litigation and ERISA areas to perform the wide ranging scope of the legal work necessitated by these cases, and is now utilizing the expertise of its partners and associates in the tax and environmental law areas.

13

(J)    The "Undesirability" of the Case. These cases are not undesirable, but as already indicated, have required a significant commitment of time from several of the attorneys assigned hereto.

(K)    Nature and Length of Professional Relationship. As described above, Stroock has been actively rendering services on behalf of the Committee as necessary and appropriate from April 12, 2001 through to the present.

## V.    ALLOWANCE OF COMPENSATION

35.    The professional services rendered by Stroock required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole and the Debtors' estates.

36.    With respect to the level of compensation, § 330 of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person (including attorneys for a creditors' committee): "Reasonable compensation for actual necessary services rendered by [such] . . . professional person. 11 U.S.C. § 330. Section 330 further states that the court should take into consideration, inter alia, the nature, extent, and value of services performed, as well as the cost of comparable services other than in a case under this title. Id. The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

14

37.    The total time spent by Stroock attorneys and paraprofessionals during the Tenth Monthly Period was 286.9 hours. Such services have a fair market value of $100,231.50[3] The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

38.    As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit "C" are summaries of the hours expended by the attorneys and paraprofessionals during the Tenth Monthly Period, their normal hourly rates, and the value of their services.

39.    In addition, Stroock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $2,591.25 for which Stroock respectfully requests reimbursement in full.

40.    The disbursements and expenses have been incurred in accordance with Stroock's normal practice of charging clients for expenses clearly related to and required by particular matters. Such expenses were often incurred to enable Stroock to devote time beyond normal office hours to matters, which imposed extraordinary time demands. Stroock has endeavored to minimize these expenses to the fullest extent possible.

41.    Stroock's billing rates do not include charges for photocopying, telephone and telecopier toll charges, computerized research, travel expenses, "working meals", secretarial overtime, postage and certain other office services, because the needs of each client for such services differ. Stroock believes that it is fairest to charge each client only for the services actually used in performing services for it. Stroock has endeavored to minimize these expenses to the fullest extent possible.

---

[3] Pursuant to Delaware Local Rules 2016, Stroock has reduced its total compensation amount by $2,249.50 representing 50% of the total amount of travel time billed at its normal hourly rate.

15

42.     Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions. Stroock does not charge for incoming facsimiles.

43.     Further, in accordance with the Court's June 22, 2001 Order Authorizing the Retention of Experts, this application seeks payment for the fees and expenses of the asbestos issues expert engaged by the Committee, for the month of January 2002 in the aggregate amount of $12,084.33. No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

44.     Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

45.     No prior application has been made in this or in any other Court for the relief requested herein for the Tenth Monthly Period.

        **WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order and the Court's June 22, 2001 Order Authorizing the Retention of Experts:

(a)     the allowance of compensation for professional services rendered to the Committee during the period from January 1, 2002 through and including January 31, 2002 in the amount of $100,231.50;

(b)     the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from January 1, 2002 through and including January 31, 2002 in the amount of $2,591.25;

16

(c)     the payment of the fees and expenses of the asbestos issues expert employed by the Committee in the aggregate amount of $12,084.33;

(d)     authorizing and directing the Debtors to pay as interim compensation to Stroock 80% of the amount of the professional services rendered by Stroock and 100% of the expenses sought by Stroock in this Application subject to final payment of the full amount; and

(e)     granting such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
        March 7, 2002                     STROOCK & STROOCK & LAVAN LLP


                                          _____
                                          Lewis Kruger (LK4512)
                                          A Member of the Firm
                                          180 Maiden Lane
                                          New York, New York 10038-4982
                                          (212) 806-5400

                                          Co-Counsel for the Official Committee of
                                          Unsecured Creditors of W. R. Grace & Co., et al.

17