IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

## DEBTORS' REPLY TO OBJECTIONS TO
## PROPERTY DAMAGE PROOF OF
## CLAIM FORM AND RELATED MATTERS

### I.     Reply to Property Damage Committee's General Objections

The PD Committee's General Objections are a repeat of the objections they filed on

September 7, 2001 in response to the Debtors Original CMO Motion.[2]  Once again, the PD

Committee argues that the Asbestos Property Damage Proof of Claim Form ("PD POC") is too

complex and requires more information than is necessary to comply with the requirements of

Bankruptcy Rule 3001(f).  For the reasons stated at page 25-31 of the Debtors' CMO Motion and

pages 75 and 82-83 of the Reply, these objections should be overruled.  The solicitation of

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc.), E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2]  Capitalized terms used herein have the same meaning as those used in the Debtors Motion filed February 12, 2002.

information relevant to key liability issues is a necessary predicate for deciding the scope of

Grace's liability for the PD claims.  See Reply at pp. 75 and 82-83.

## II.    Reply to PD Committee's Specific Objections

### A.    Instructions for Filing the W. R. Grace Asbestos Property Damage Proof of Claim Form

**Instruction 3:**  The PD Committee objects only to instruction #3 which requires that the

form be filled out using BLACK or BLUE ink.  The PD Committee seeks the option of

submitting a POC form prepared with the assistance of a word processing template.  The Debtors

have no objection, so long as the Debtors' POC form is used so that the POC is machine

readable.  The Debtors will revise the instruction to include the words "or may be typewritten."

### B.    Part 1: Claiming Party Information

**Social Security Number:**  The PD Committee objects to the request for the claimant's

social security number, arguing that it is invasive.  First, it is not invasive.  Asbestos claimants

routinely are required to provide social security numbers, and have done so to numerous trusts

and companies, including Manville, H. K. Porter and Babcock & Wilcox.  Second, as a result,

the social security number is almost more important than the claimants's name.  For the Debtors

to cross reference the POC against the data bases for certain other asbestos trusts, like the

Manville and Celotex Trusts, the Debtors require the social security number.  The last four digits

of the social security number will not suffice.  The Debtors anticipate that hundreds of thousands

of POC's could be filed in these cases.  With use of only the last four digits, duplicate numbers

will abound, making the identification process much more difficult.  Third, the social security

number is used to identify claimants and distinguish duplicates and the like.  The social security

2

number is especially vital when claimants have extremely common names or more than one family member has submitted a POC.

The Debtors agree that many building owners will be either corporations or partnerships who use FEIN numbers rather than social security numbers. As a result, the Debtors will amend the request to provide for either the "Social Security Number or FEIN Number, as applicable."

For purposes of this POC, so long as the social security number is provided, the Debtors will agree to eliminate the request for birth date, although, once again it can be a helpful distinguishing factor among claimants.

### C.    Part 3: Property Information

### A.    Real Property for Which a Claim is Being Asserted

**Question7:**

7. What is the square footage of the property?

The PD Committee objects to the requirement for exact footage and suggests that the question should be amended to request "approximate square footage." The Debtors do not object and will amend the question accordingly.

**Question 8:**

8. When was the property built?

The PD Committee objects to this request as irrelevant. The Debtors submit that the year of construction is a significant piece of information. If the building was constructed after 1973, the building could not contain a Grace asbestos containing product as Grace did not manufacture

3

or sell such products after 1973. Date of construction also is relevant to notice. Publicity

concerning asbestos was significant by the late '60's, and regulations were adopted by 1971.

### Question 10:

10. Have any interior renovations been completed in the property?

☐ Yes          ☐ No

The PD Committee suggests that the question should be modified to only request

information with respect to renovations involving the removal and/or installation of asbestos

containing products. The Debtors disagree. Different types of renovations could have disturbed

or resulted in the inadvertent removal of a Grace asbestos containing product other than

renovations for the purpose of installation or removal of such products. Thus, the question

should remain as written.

### Question 12:

12. For which category are you making a claim on the property?

☐ Category 1:  Allegation with respect to asbestos from a Grace product in the property

☐ Category 2:  Allegation with respect to one of Grace's vermiculite mining, milling or processing operations

• If you checked Category 1 in question 12, complete section C.
• If you checked Category 2 in question 12, complete section D.

The PD Committee noted a typo in Question 12 which was already corrected to refer is to

question 12 not 10.

**D.     Category 1 Claim: Allegations with Respect to Asbestos from a Grace Product in the Property.**

4

**Question 13:**

The PD Committee does not object to Question 13 but suggests that it may mislead

13. For what alleged asbestos-containing product(s) are you making a claim?  ■
   ☐ Monokote-3 fireproofing insulation
   ☐ Other      Specify:

claimants because it only mentions one product - MK-3. Debtors prepared the POC in this manner because the overwhelming majority of PD Claims filed against the Debtors historically were relating to MK-3. The PD Committee acknowledges that the Bar Date Notice contains a listing of additional asbestos containing products. The Debtors will add a notation to Question 13 which states that "For a list of the brand names under which the Debtors manufactured products that may have contained commercially added asbestos, see Exhibit 2 to the Claims Bar Date Notice provided with this Proof of Claim Form."

**Question 14:**

14. When was the product installed in the property?     ☐☐ - ☐☐ - ☐☐☐☐
                                                         Month  Day   Year        The PD Committee

requests that the qualifying language "To the extent you know," be added to the question. The Debtors object. Claimants should be required to make reasonable inquiry.

**Questions 15 - 18:**

15.  What was the name of the architect or architectural firm who designed the property?

16.  What was the name of the general contractor in charge of the construction of the property?

17.  What was the name of the general engineer or engineering firm in charge of the construction of the property?

18.  What was the name of the company or entity that installed the product?

 As indicated at the hearing on February 25, 2002, the Debtors will agree to eliminate

questions 15 through 18.

6

### Question 19:

19. Do you have documentation relating to the purchase and/or installation of the product in the property?

☐ Yes        ☐ No      **If Yes, Attach All Such Documentation.**

The PD Committee objects to the Debtors request for documentation as unduly

burdensome. Any burden is not undue. Documents are the most reliable source of information

concerning product ID, date or installation and notice. All the claimant need do is gather the

documents. The burden of analyzing then falls to the Debtor. The PD Committee suggests that

in no event should claimants be required to do more than summarize the documents upon which

they base their claim. But supplying documents will eliminate issues concerning the accuracy of

any summary.

### Questions 21 - 23:

21. How did you first learn of the presence in the property of the Grace product for which you are making this claim?

22. When did you first learn that the Grace product for which you are making this claim contained asbestos?

*Month   Day      Year*

23. How did you first learn that the Grace product for which you are making the claim contained asbestos?

7

The PD Committee objects to questions 21-23 as being irrelevant to whether the claimant has an allowable claim. The Debtors disagree. These questions relate directly to the statute of limitations.

**Question 24:**

24. Has there ever been an effort to remove, contain and/or abate the Grace product for which you are making this claim?

☐ Yes      ☐ No      **If Yes, Attach All Documents Relating Or Referring To Such Efforts.**

The PD Committee objects to question 24 as confusing because more than one of the Debtors' products may be at issue. The Debtors will revise question 24 to add the words "or products" after the words "Grace Product."

### Question 25:

25. If yes, please specify the dates and description of such efforts.

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|

Month  Day  Year    Description

Month  Day  Year    Description

Month  Day  Year    Description

The PD Committee objects to question 25 as duplicative of the information requested in the gray box for Question 24. However, if no such documentation is provided, question 25 is very relevant. Keeping in mind the PD Committee's objection to question 24, Debtors will modify question 25 as follows: "If yes, please specify each such product for which an effort to remove, contain or abate it took place and specify the dates and descriptions of each such effort."

### Question 26:

26. Has there ever been any testing or sampling for the presence of asbestos or other particulates in the property?

☐ Yes        ☐ No

**If Yes, Attach All Documents Related To Any Testing Of The Property.**

The PD Committee requests that question 26 be modified to include the qualifier, "To your knowledge..." Grace disagrees. Claimants should make reasonable inquiry.

## **Question 27:**

27. If yes, when and by whom and the type of testing and/or sampling (e.g., air, bulk and dust sampling)?

| | | |
|---|---|---|
| ☐☐ — ☐☐ — ☐☐☐☐ *Month  Day     Year* | Company/Individual | |
| | Type of testing: | |

| | | |
|---|---|---|
| ☐☐ — ☐☐ — ☐☐☐☐ *Month  Day     Year* | Company/Individual | |
| | Type of testing: | |

| | | |
|---|---|---|
| ☐☐ — ☐☐ — ☐☐☐☐ *Month  Day     Year* | Company/Individual | |
| | Type of testing: | |

The PD Committee argues that question 27 is duplicative and unnecessary in light of

question 26. However, if the claimant does not have documentation but does have the requested

information, question 27 will allow Grace to get available data from third parties.

10

**Questions 28 and 29:**

28. Has the Grace product for which you are making this claim ever been modified and/or disturbed?

    ☐ Yes       ☐ No

29. If yes, specify when and in what manner the Grace product was modified and/or disturbed?

| | | | | | | | | | Description | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| *Month* | | *Day* | | *Year* | | | | | | | |

Description

*Month*  *Day*  *Year*

Description

*Month*  *Day*  *Year*

The PD Committee argues that questions 28 and 29 are ambiguous.  The PD Committee also objects because the questions only relate to one product and do not define the terms "modify and/or disturb."  The Debtors will modify questions 28 and 29 to take into account the possibility of multiple products.  As for the terms, "modify or disturb" those are very simple and precise concepts that require no definition. Any property owner who knows he has a Grace asbestos containing product on the property, will understand if the product has ever been "modified" or "disturbed."  In fact, in property damage litigation these terms are commonly used by property damage claimants' counsel.

11

**E.     Category 2 Claim: Allegations with respect to one of Grace's Vermiculite Mining, Milling or Processing Operations.**

**Questions 30 - 34:**

30. What is the business address or location of the Grace operation which has led to your claim?

*Business Name*

*Street Address*

*City*                                                                                                                          *State*        *Zip Code*

                                                                                                                                  *(Province)  (Postal Code)*

*Country*

31. Does (or did) anyone living in the household work for the Grace operation against which you are making a claim?

    ☐ Yes        ☐ No

32. If yes, specify the following for each such individual:

**Name of Individual Working at Grace Operation**

**Date of Birth**

*Month   Day   Year*

**Occupation(s) of Individual**

**Dates Worked at Operation (From-To)**

*Month   Day   Year        Month   Day   Year*

12

33. When did you first know of the presence of asbestos on your property?

$\square$ — $\square$ — $\square$

*Month*   *Day*    *Year*

34. How did you first learn of the presence of asbestos on your property?

**Attach All Documents
Relating Or Referring
To The Presence Of
Asbestos On The
Property.**

The PD Committee objects to questions 30-34 on relevancy grounds. The Debtors
disagree. Question 30 is necessary to identify the connection between the claimant's property
damage claim and the Grace mining, milling or processing operation. If there is no connection,
there could be no claim of this sort. Questions 31-34 are necessary to understand whether the
claim arose from employment with Grace, the strength of the claim, and notice for statute of
limitation purposes. Also see Debtors Reply to Questions 21-23 above.

13

### Questions 35 - 38:

35. Has there ever been an effort to remove, contain and/or abate the asbestos on your property?

☐ Yes     ☐ No     **If Yes, Attach All Documents Relating**
                    **Or Referring To Such Efforts.**

36. If yes, please specify the dates and description of such efforts.

|   |   |   | Description |   |
|---|---|---|---|---|
| *Month* | *Day* | *Year* | | |

|   |   |   | Description |   |
|---|---|---|---|---|
| *Month* | *Day* | *Year* | | |

|   |   |   | Description |   |
|---|---|---|---|---|
| *Month* | *Day* | *Year* | | |

37. Has there ever been any other testing or sampling for the presence of asbestos on your property?

☐ Yes     ☐ No     **If Yes, Attach All Documents Relating**
                    **Or Referring To Such Testing.**

38. If yes, when and by whom and the type of testing/sampling conducted on your property?

|   |   |   | Company/Individual |   |
|---|---|---|---|---|
| *Month* | *Day* | *Year* | Type of testing: | |

|   |   |   | Company/Individual |   |
|---|---|---|---|---|
| *Month* | *Day* | *Year* | Type of testing: | |

|   |   |   | Company/Individual |   |
|---|---|---|---|---|
| *Month* | *Day* | *Year* | Type of testing: | |

14

The PD Committee objects to questions 35-38, again based on the possibility that there

may be more than one Grace product on the property. As with questions 24-27, the Debtors will

modify the questions to take into account the possibility of multiple products.

### Questions 39-40:

39. Were you aware of the presence of asbestos when you purchased your property?

   ☐ Yes      ☐ No

40. If you have sold the property, were you aware of the presence of asbestos when you sold your property?

   ☐ Yes      ☐ No      ☐ Not Applicable, have not sold the property

The PD Committee objects to questions 39-40 on relevancy grounds. The Debtors

disagree. Both questions are relevant to whether the claimants has suffered any economic loss.

### F.    Part 4: Asbestos Litigation and Claims

#### A.    Introduction.

**Question 1:**

1. Has the claiming party or his or her representative contacted a lawyer about a possible asbestos-related property damage lawsuit or claim?

☐ Yes        ☐ No

If "yes," when did the claiming party or his or her representative first contact a lawyer about a possible property damage lawsuit or claim?

Month    Year

The PD Committee objects to question 1 stating that it is not limited to Debtors' asbestos containing products, is invasive of the attorney-client privilege and is irrelevant. The Debtors disagree. First, the question is relevant to the statute of limitations. Second, as part of Debtors' process of reviewing claims and identifying legitimate claims, it is vital for Debtors to know if the claimant has filed a similar claim against numerous companies or if this claim is unique to the Debtors. Often times, claimants' counsel file claims against all of the "usual suspects" - asbestos manufacturers and those who used asbestos in their products. The Debtors are then left with the overwhelming task of sorting, identifying and culling legitimate claims from those where there is no connection between the Debtors' products and the claim. Requesting this type of information is vital. The question does not invade the attorney client privilege. The fact that a claimant contacted a lawyer is not privileged information. The advice the lawyer gave the claimant is privileged information and the question does not solicit such information.

16

### Question 2:

2. Has any asbestos-related property damage lawsuit or claim been filed on behalf of this claiming party?

☐ No

☐ Yes – lawsuit

☐ Yes – non-lawsuit claim (other than a workers' compensation claim)

*If an asbestos-related property damage lawsuit has been filed by or on behalf of this claiming party, complete Section B.*

*If an asbestos-related property damage non-lawsuit claim has been made by or on behalf of this claiming party, complete Section C.*

The PD Committee objects to question 2 as not being limited to Debtors' asbestos containing products. Suits against other products are relevant to the statute of limitations and if they relate to the same structure, will contain highly relevant information concerning the requests in the claim. As an example, if a claimant litigated against another trust and lost or never mentioned a Grace product, the litigation record would be of obvious interest. The PD Committee also objects to the use of the term "non-lawsuit claim" as being beyond the level of sophistication of some claimants. The Debtors disagree. The concept of what is a lawsuit and what is not is quite simple. Further, the questions in sections B and C, once reviewed by the claimant, make it very clear what the distinctions may be.

### B.   Lawsuits

### Question 1:

1. If more than one suit has been filed, photocopy this page and complete one set of questions for each lawsuit. The claimant must attach a court-dated copy of the face page of the complaint filed. *(Failure to do so may result in the claiming party's claim being forever barred.)*

**Attach Copy of Complaint**

The PD Committee objects to the warning that the claim may be barred if the Complaint is not supplied. The Debtors' experience suggests is that if the warning is not contained in the question, claimants will not bother to look for and supply a copy of the Complaint. The PD Committee also suggests that the Debtors do not need the Complaint because Debtors ought to have the information. However, this is incorrect. If the lawsuit does not name the Debtors, there is no reason for the Debtors to have the Complaint. The requirement to supply the Complaint does not discourage the filing of Proofs of Claim. It is a simple request, provides very little burden and may be extremely helpful in the claims process. Finally, the PD Committee points out that the text of questions 1 requires the face page of the Complaint while the gray box requires the entire Complaint. The PD Committee is correct and the question will be modified to be internally consistent, requiring the entire Complaint.

The PD Committee correctly points out a typo in question 1(c) which will be corrected.

### C.    Non-Lawsuits

**Question 1(a):**

1. Has this claiming party submitted a claim against Grace outside of a court of law?
   ☐ Yes        ☐ No

   a. Date submitted: [   ] — [   ] — [    ]    ■
                      *Month   Day   Year*

The PD Committee objects to question 1 as containing legal terms and matters beyond a claimant's sophistication. Again, the question uses simple terms with respect to claims inside and outside of a court of law.

18

**Question 1(b):**

b. Result:
☐ Paid by Grace and released/settled?   Settlement Amount - Received: $ [ ][ ][ ][ ][ ][ ][ ]

Date Received: [ ] -- [ ] -- [ ]
*Month    Day    Year*

☐ Rejected
☐ Pending
☐ Pending and agreed to be settled, but not yet paid.

If so, Settlement Amount Agreed To: $ [ ][ ][ ][ ][ ]

| **Attach All Documents Supporting Your Claim That Grace Agreed To This Settlement** |
| --- |

The PD Committee objects to the request for settlement information to the extent it may

implicate a confidentiality agreement. This is information with respect to Grace being requested

by Grace.

**Question 2:**

2. All other parties, trusts, or claims facilities against whom a claim was made:

| | Month | Day | Year |
| --- | --- | --- | --- |
| | | | |
| | Month | Day | Year |
| | | | |
| | Month | Day | Year |

The PD Committee objects to question 2 as burdensome and irrelevant. As part of

Debtors' process of reviewing claims and identifying legitimate claims, it is vital for Debtors to

know if the claimant has filed a similar claim against numerous companies or if this claim is

unique to the Debtors. Often times, claimants' counsel file claims against all of the "usual

19

suspects" - asbestos manufacturers and those who used asbestos in their products. The Debtors

are then left with the overwhelming task of sorting, identifying and culling legitimate claims

from those where there is no connection between the Debtors' products and the claim.

Requesting this type of information is vital.

### D.   Settlements

### Question 1:

1. Has the claiming party entered into any property damage settlements, whether in connection with a lawsuit or in
   settlement of a claim filed outside a court of law?

   ☐ Yes        ☐ No

If "yes," please complete the settlement information below (other than any settlements with Grace already identified above):

| Settling Party | Settlement Amount – Agreed To | Settlement Amount – Received |
|---|---|---|
| | $ | $ |

| Date Received | Name of Setting Attorney |
|---|---|
| | |
| *Month    Day       Year* | |

The PD Committee objects to question 1 for the same reasons as outlined in response to

Question 2 in Section C above. Settlements with other parties trigger set-off rights in many

jurisdictions.

### E.    Signature Page

All claims must be signed by the claiming party.

I have reviewed the information submitted on this proof of claim form and all documents submitted in support of my claim. I declare, under penalty of perjury,\* that the above statements are true, correct, and not misleading. CONSENT TO RELEASE OF RECORDS AND INFORMATION: I hereby authorize and request that all other parties with custody of any documents or information concerning my property damage or the information contained in this Form to disclose any and all records to Grace or to Grace's representative.
I hereby authorize the release of my Social Security number for use in comparing information provided separately to other asbestos trusts or claims facilities to verify the completeness and accuracy of the information contained in this Form.

_____

SIGNATURE OF CLAIMANT

\*The penalty for presenting a fraudulent claim is a fine up to $500,000.00 or imprisonment up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

The PD Committee objects to the "Consent to Release of Records and Information" as being "outrageously offensive" and violative of fundamental notions of due process and privacy. There is no due process right implicated by a requirement to furnish information and no "privacy right" when (1) the information has been provided to others; (2) it is relevant to the claim being pursued here. And the stridency of this objection should give rise to concern. Claimants should have nothing to fear if their submissions to other trusts are consistent with their claims here. Claimants, though certain counsel, are filing claims at a record pace against every asbestos manufacturer and user of asbestos products they can locate. The increase in such claims over the last two years has led to many new Chapter 11 filings by major corporations, including, to name just a few, the Debtors, Owens Corning, Babcock & Wilcox, Federal Mogal, U.S. G. and Armstrong World Industries. Under these circumstances, it is certainly not inappropriate for the Debtors to seek the opportunity to track what claimants have said to other trusts or companies.

The PD Committee also objects to the request for signature to the extent that it does not permit signature by an "Authorized Agent." The Debtors do not object and will add that language to the signature block.

## II.    The Non-Asbestos Proof of Claim Form, Instructions and General Instructions.

The Debtors have been working closely with the Official Committee of Unsecured Creditors ("OCUC") with respect to the Non-Asbestos Proof of Claim Form, its instructions and the General Instructions to be served along with all Proof of Claim Forms. As a result of those discussions, further modifications to the documents have been made. These modifications include the addition of references to "other names" by which the Debtors did business, references to Medical Monitoring Claims and eliminating all references to Asbestos Personal Injury Claims. While the Debtors had hoped to take advantage of the unique opportunity to obtain a combined Bar Date and publish a combined Bar Date Notification which included Asbestos Personal Injury Claims, the Debtors have determined that it is in the best interest of their estates to proceed with the Bar Dates and Notification Program without including Asbestos Personal Injury Claims at this time. Thus, attached as Exhibit A are the revised Non-Asbestos Proof of Claim Form, its instructions and the General Instructions agreed to by the Debtors and the OCUC.

## III.    The Bar Date Notice

The Debtors have also been working closely with the OCUC with respect to the Bar Date Notice that will be served along with all Proof of Claim Forms. As a result of those discussions, further modifications to Bar Date Notice have been made. Once again, these modifications include the addition of references to "other names" by which the Debtors did business, references

22

to Medical Monitoring Claims and eliminating all references to Asbestos Personal Injury Claims.

Attached as Exhibit B is the revised Bar Date Notice agreed to by the Debtors and the OCUC.

Wherefore, Debtors respectfully request that this Honorable Court enter the attached

Order approving the Debtors various Proof of Claim Forms and granting the other relief

requested.

Dated: March 15, 2002

                              Respectfully submitted,

                              KIRKLAND & ELLIS
                              David M. Bernick
                              James H.M. Sprayregen
                              Andrew R. Running
                              Janet Baer
                              200 East Randolph Drive
                              Chicago, Illinois 60601
                              (312) 861-2000

                              and

                              PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

                              Laura Davis Jones (#2436)
                              David W. Carickhoff, Jr. (#3715)
                              919 North Market Street, 16th Floor
                              P.O. Box 8705
                              Wilmington, Delaware 19899-8705 (Courier 19801)
                              (302) 652-4100

                              Co-Counsel for Debtors and Debtors in Possession