IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case Nos. 01-1139 through 01-1200 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| OFFICIAL COMMITTEE OF ASBESTOS | ) | |
| PERSONAL INJURY CLAIMANTS and | ) | |
| OFFICIAL COMMITTEE OF ASBESTOS | ) | |
| PROPERTY DAMAGE CLAIMANTS OF | ) | |
| W. R. GRACE & CO., suing in behalf of the | ) | |
| Chapter 11 Bankruptcy Estate of W. R. | ) | |
| GRACE & CO., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -against- | ) | Adv. No. 02-_____ |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| SEALED AIR CORPORATION and | ) | |
| CRYOVAC, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## ORIGINAL COMPLAINT

Plaintiffs, by their attorneys, McKool Smith, P.C., Caplin & Drysdale, Chartered, Bilzin Sumberg Dunn Baena Price & Axelrod LLP, Campbell & Levine, and Ferry, Joseph & Pearce, P.A. allege for their complaint, on knowledge as to their own acts, and on information and belief as to all other matters, as follows:

**ORIGINAL COMPLAINT-PAGE 1**

## NATURE OF THE ACTION

1. This is an action to set aside fraudulent transfers by W.R. Grace & Co.-Conn. ("Grace-Conn."). Various businesses owned and operated by Grace-Conn. manufactured and sold asbestos products. Those products have been responsible for severe personal injuries and tens of thousands of deaths. As a result, Grace-Conn. is a defendant in thousands of lawsuits (now stayed) filed by individuals and survivors of individuals exposed to its asbestos products. Grace-Conn. also faces extensive liabilities for asbestos property damage, and is a defendant in state and national class actions (also currently stayed) alleging liability for an attic insulation product containing asbestos known as "Zonolite."

2. The alleged fraudulent transfers that are the subject of this action involve: (1) the transfer by Grace-Conn. in 1998 of its most valuable and profitable operating business (the "Packaging Business") to a subsidiary, and (2) the transfer of the subsidiary's stock to its then parent, W.R. Grace & Co., n/k/a Sealed Air Corporation ("Grace-1998"), for wholly inadequate and insufficient consideration (collectively the "Transfers").

3. The Transfers were calculated to place the value of the Packaging Business beyond the reach of Grace-Conn.'s asbestos victims and other creditors.

4. In the wake of the Transfers, Grace-Conn.'s liabilities, including its liabilities to asbestos victims, greatly exceeded its remaining assets.

5. On April 2, 2001, W.R. Grace & Co., f/k/a W.R. Grace Specialty Chemicals Inc. and Grace-Conn. were two of a number of related debtors that filed a voluntary petition for

reorganization under chapter 11 of title 11 of the United States Code. The reorganization cases are referred to herein as the "Bankruptcy Cases," and title 11 is referred to as the "Bankruptcy Code". No trustee has been appointed in the Bankruptcy Cases, and the debtors, including Grace-Conn., continue to manage their property as debtors-in-possession pursuant to 11 U.S.C. § 1107.

## JURISDICTION AND VENUE

6. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1334(b).

7. Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and 1409(c).

## PARTIES

8. Plaintiffs, the Official Committee of Asbestos Personal Injury Claimants and the Official Committee of Asbestos Property Damage Claimants of Grace ("Plaintiffs" or the "Asbestos Committees"), are committees of creditors appointed by the United States Trustee pursuant to 11 U.S.C. § 1102(a). The Asbestos Committees are made up of persons and entities that assert tort claims against Grace and Grace-Conn. by reason of personal injuries, wrongful death or property damage caused by asbestos-containing products.

9. Pursuant to its "Order re Fraudulent Conveyance Proceedings" (the "Authorizing Order"), this Court has authorized the Asbestos Committees, as representatives of Grace's bankruptcy estate, to prosecute and enforce any and all claims arising from the Transfers.

10. The Asbestos Committees bring this action pursuant to 11 U.S.C. § 544(b) and other applicable law for the purpose of avoiding the Transfers, recovering the property

transferred or the value of such property for the benefit of the debtors' estates and creditors, and subjecting Defendants to liability for Asbestos Claims against the debtors.

11. Defendant Sealed Air Corporation ("Sealed Air" or "Grace-1998") is a Delaware corporation with its principal place of business at Park 80 East, Saddle Brook, New Jersey.

12. Defendant Cryovac, Inc. is a Delaware corporation with its principal place of business at Park 80 East, Saddle Brook, New Jersey.

## FACTUAL ALLEGATIONS

### Asbestos Disease and Litigation

13. Experts estimate that at least 21 million American workers have been exposed to "significant" amounts of asbestos at the workplace since 1940. Millions of others have been exposed through environmental contact or contact with relatives who have worked with the products. Because of the toxic effects of asbestos exposure, literally tens of thousands of people fall ill or die from asbestos-related diseases every year. In legal terms, asbestos exposure has translated into hundreds of thousands of lawsuits.

14. Asbestos litigation has been on going for four decades, and as a result of this litigation numerous companies have been forced into bankruptcy. Raymark Industries, Forty-Eight Insulations, Unarco, Standard Asbestos, Johns-Manville Corporation, Eagle-Picher Industries, and Celotex Corporation, just to name a few, all declared bankruptcy due to asbestos liability prior to the Transfers. Prior to 1998, the risks and liabilities associated with asbestos were widely known and served as the incentive and motivation for the Transfers.

**The Transfers; Lack of Reasonably Equivalent Value**

15.     Prior to the Transfers, Grace-1998 was a publicly traded corporation, owning as its sole asset 100% of the stock of Grace-Conn. Grace-Conn., in turn, was an operating company with divisions engaged in, among other things, construction and performance chemicals, can sealants, and the Packaging Business.

16.     The value of all of these businesses was available to satisfy the claims of all persons and entities who had demanded or would demand in the future compensation for personal injuries, wrongful death, or property damage attributed to asbestos or asbestos-containing products. (This Complaint refers to such persons as "Asbestos Claimants" and to their asbestos-related claims as "Asbestos Claims".)

17.     Not later than 1996, Grace-Conn.'s parent and its management embarked on a plan and course of conduct to "enhance shareholder value" by systematically stripping Grace-Conn. of valuable assets and placing those assets beyond the reach of Asbestos Claimants, thereby enriching the parent company and its public stockholders at the expense of such creditors. In 1996, Grace-Conn. was divested of its health care business in a transfer and spin-off pursuant to such plan and course of conduct. The Transfers and disposition of the Packaging Business formed part of the same scheme and pattern and are the focus of the instant Complaint.[1]

18.     The Packaging Business was, by far, Grace-Conn.'s most profitable and valuable business at the beginning of 1998. It accounted for the lion's share of Grace-Conn.'s revenues and profits, and was viewed in the market place as the primary basis of Grace-1998's stock value.

---

[1] Plaintiffs have also filed an action against Fresenius Medical Care, Inc., f/k/a W.R. Grace & Co., to set aside a fraudulent transfer by Grace-Conn. in 1996 of Grace-Conn.'s former health care subsidiary, National Medical Care, Inc. (the "Fresenius Transfer").

19. In March, 1998, Grace-1998 consummated the Transfers that were designed to "free" the Packaging Business from the taint of Grace-Conn.'s asbestos liabilities, and thus enable Grace-1998's stockholders to realize significant excess value and returns at the expense and to the detriment of Grace-Conn.'s creditors.

20. The Transfers proceeded as follows:

- Grace-1998 caused Grace-Conn. to create a new wholly owned subsidiary, Cryovac, Inc. ("Packco"), to which Grace-Conn. transferred all of the assets and liabilities related to the Packaging Business.

- Grace-1998 then caused Grace-Conn. to contribute the capital stock of Packco to Grace-1998. At the time of the Transfers, the Packco stock had a fair value in excess of $5 billion.

- Grace-1998 made a capital contribution to Grace-Conn. consisting of a payment of approximately $1.2 billion, adjusted for various items including taxes and transaction costs (the "Capital Contribution"). The Capital Contribution was derived from a loan Grace-1998 obtained in the same amount that was secured by the assets of Packco.

- Grace-1998 then caused Grace –Conn. to use the Capital Contribution to pay certain obligations, including the public debt of Grace-Conn., that were guaranteed by Grace-1998 or for which Grace-1998 had contingent liability.

- Grace-1998 then formed a new wholly owned subsidiary, Grace Specialty Chemicals, Inc., and transferred the stock of Grace-Conn. (which now consisted largely of its chemical businesses and asbestos liabilities) to Grace Specialty Chemicals.

- Grace-1998 then spun off to its shareholders this new subsidiary, Grace Specialty Chemicals, as a totally separate company and renamed it as W.R. Grace & Co. ("Grace").  This transfer left Grace-1998 with the stock of Packco as its sole asset, and no further identified connection to the asbestos claims and liabilities.

- Pursuant to an agreement entered into in August, 1997, Grace-1998 then consummated a transaction with Sealed Air Corporation ("Old Sealed Air"), a publicly traded Delaware corporation, that (i) merged a newly-created subsidiary of Grace-1998 into Old Sealed Air, now renamed as Sealed Air Corporation, U.S. ("Sealed Air US"), (ii) established Sealed Air US and Packco as wholly owned subsidiaries of Grace-1998, (iii) renamed Grace-1998 as Sealed Air Corporation, (iv) with the result that Grace-1998's pre-merger shareholders obtained approximately 63% of the stock of post-merger Grace-1998, and Old Sealed Air's shareholders obtained approximately 37% of the stock.

21. Before the incorporation of Packco, financial advisors to Grace-1998 valued the Packaging Business in the range of $ 3.8 billion to $ 4.5 billion.

22. The distribution of the stock of post-merger Grace-1998 to public shareholders of Grace-1998 and public shareholders of Old Sealed Air was based on further valuations performed by financial advisors for Grace-1998 and Old Sealed Air Corporation, each of which valued the stock of Packco at approximately $5 billion (after taking into account the $1.2 billion of debt encumbrances that were incurred to fund the Capital Contribution).

23. Upon consummation of the March 1998 transactions, Grace-1998, now owning Packco and Sealed Air US, emerged with a market capitalization of approximately $9 billion.

The 63% interest that went to shareholders of Grace-1998 had a market value of approximately $5.7 billion.

24.     As a result of the Transfers, Grace-Conn. was stripped of assets worth more than $5 billion. Grace-Conn. received the $1.2 billion Capital Contribution, but it was used largely for the benefit of Grace-1998 through payment of prior debts. With its property greatly depleted, Grace-Conn. was ostensibly left with sole responsibility for liabilities to Asbestos Claimants who would otherwise have had recourse to the value of Packco.

25.     Not surprisingly, Grace-1998 acknowledged in its Form S-4 relating to the merger with Old Sealed Air, filed with the SEC on February 13, 1998 (the "1998 S-4), that the Transfers might constitute a fraudulent transfer:

> "Claimants may also bring suit seeking recovery from New Sealed Air or its subsidiaries by claiming that the transfers of assets and liabilities in connection with the reorganization of Grace, including the separation of Grace's packaging and specialty chemicals businesses and the cash transfer to and spin-off of New Grace, were 'fraudulent transfers.' A transfer would be a fraudulent transfer if the transferor received less than reasonably equivalent value and the transferor was insolvent at the time of the transfer, was rendered insolvent by the transfer or was left with unreasonably small capital to engage in its business. A transfer may also be a fraudulent transfer if it was made to hinder, delay or defraud creditors. If any transfers in connection with the reorganization of Grace are found to be fraudulent transfers, the recipient (including New Sealed Air and its subsidiaries) might be required to return the property to the transferor."

Grace-1998 S-4, p. 22.

**ORIGINAL COMPLAINT-PAGE 8**

26. Grace-1998 represented that the newly formed Grace would be adequately capitalized and claimed that the Transfers were not fraudulent. Grace-1998 admitted, however, in its SEC filing that "a court applying the relevant legal standards may not reach the same conclusions." Grace-1998 S-4, p. 23.

### Grace-Conn.'s Asbestos Liabilities and Insufficient Reserves

27. As of the date of the Transfer, it was obvious that Grace-Conn. faced tremendous exposure as a result of its asbestos liabilities. Grace-1998's consolidated accrual for asbestos liabilities at December 31, 1997, was $855.9 million. Grace-1998 Form 10-K dated December 31, 1997, p. 10 (the "1997 10-K"). This reserve took into account the pending asbestos-related personal injury and property damage claims as well as asbestos-related personal injury claims expected to be filed through 2002, but simply ignored all Asbestos Claims expected to be filed thereafter. The reserve grossly understated the extent of Grace-Conn.'s actual asbestos liabilities.

28. Indeed, according to the Grace Form 10-K filed with the SEC on April 2, 2001 (the "2001 10-K), as of December 31, 2000, Grace-Conn. was a defendant in approximately 61,395 asbestos related lawsuits, involving 124,907 claims for personal injury.

29. In that same Form 10-K, Grace noted that judgments had been entered against it in seven (7) asbestos-related property damage lawsuits for a total of $60.3 million and that it had settled 53,607 asbestos-related personal injury lawsuits for a total of approximately $1.25 billion. Grace also increased its accrual for asbestos liabilities as of December 31, 2000 to $1.1 billion, notwithstanding its payment of in excess of $500 million in judgments and settlements since its December, 1997 estimate. Grace's reserve, moreover, did not take into account a certified class action filed on behalf of all owners of homes containing Grace-Conn.'s Zonolite Attic Insulation

in the State of Washington and a multi-district national class action filed against it that was pending in the federal district court of Massachusetts.

30. At the time of the Transfers, or immediately after the carrying out of the Transfers, Grace-Conn. was insolvent by reason of its massive asbestos liabilities, even without regard to liability for Zonolite.

**The Asbestos Committees are Armed with All Causes of Action
Belonging to Grace Conn. and All Avoidance Powers Derived From its Creditors**

31. Pursuant to the Authorizing Order, the Asbestos Committees have standing to prosecute and enforce all claims belonging to pre-petition Grace-Conn. arising from the Transfers. Pursuant to the Authorizing Order and the strong-arm powers inhering in the debtor-in-possession (*see* 11 U.S.C. §§ 544(b), 1107(a)), the Asbestos Committees also have standing to assert the rights of any and all creditors of Grace-Conn. to avoid the Transfers.

32. For purposes of section 544(b) of the Bankruptcy Code and applicable law governing transfers by debtors, the Asbestos Claimants were all creditors of Grace-Conn. regardless of whether their respective claims were matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent.

33. Pursuant to section 544(b) of the Bankruptcy Code, plaintiffs "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title [title 11 of the United States Code] . . . ." 11 U.S.C. § 544(b). There exist one or more unsecured creditors holding an allowable claim within the meaning of section 544(b) who, subject only to the automatic stay of bankruptcy, have the right to avoid the Transfer

under applicable nonbankruptcy law, including but not limited to the Uniform Fraudulent Conveyance Act as in force in several States, the Uniform Fraudulent Transfer Act as in force in the majority of States, and subchapter D of chapter 76 of the United States Code, 28 U.S.C. § 3301 *et seq*. The Asbestos Committees, as representatives of the bankruptcy estates of Grace and Grace-Conn., wield here all avoidance rights derived from those creditors.

## COUNT I

### Constructive Fraudulent Transfer

34.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 33.

35.    Under applicable law, a transfer is fraudulent as to a present creditor if it was made by the debtor without receiving a reasonably equivalent value in exchange for the transfer, and the debtor was insolvent at that time or became insolvent as a result of the transfer.

36.    Grace-Conn. did not receive reasonably equivalent value in exchange for the Transfers. At the time of the Transfers, Grace-Conn. was insolvent within the meaning of applicable law, or became insolvent as a result of the Transfers.

37.    Accordingly, the Transfers were fraudulent as to Grace-Conn.'s creditors, without regard to Grace-Conn.'s actual intent.

## COUNT II

### Constructive Fraudulent Transfer

38.    Plaintiffs repeat and reallege all of the allegations of paragraphs 1 through 33.

39.    Under applicable law, a present or future creditor may recover for a transfer made without receiving a reasonably equivalent value in exchange for the transfer if the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

40.     At all times from and after the Transfers, Grace-Conn. was engaged in a business for which the assets left in its hands were unreasonably small.

41.     Accordingly, pursuant to applicable law, the Transfers were fraudulent as to Grace-Conn.'s creditors, again without regard to Grace-Conn.'s actual intent.

## COUNT III

### Constructive Fraudulent Transfer

42.     Plaintiffs repeat and reallege all of the allegations of paragraphs 1 through 33.

43.     Under applicable law, a present or future creditor may recover for a transfer made without receiving a reasonably equivalent value in exchange for the transfer if the debtor believed or reasonably should have believed that it would incur debts beyond its ability to pay as they became due.

44.     When Grace-Conn. made the Transfers, it believed, or reasonably should have believed that it would incur debts beyond its ability to pay as they mature.

45.     Accordingly, pursuant to applicable law, the Transfers were fraudulent as to Grace-Conn.'s creditors, again without regard to actual intent.

## COUNT IV

### Transfer Made With Intent to Hinder, Delay or Defraud

46.     Plaintiffs repeat and reallege all of the allegations of paragraphs 1 through 33.

47.     Under applicable law, a transfer is fraudulent as to present or future creditors if the debtor made the transfer with actual intent to hinder, delay or defraud any creditor of the debtor.

48.  The Transfers were made with actual intent to hinder, delay, or defraud present and future creditors of Grace-Conn., including the Asbestos Claimants. In each Transfer, the transferees shared in that intent.

49.  Such intent is apparent from, *inter alia*, the direct and natural consequence of the Transfers in prejudicing the rights of Asbestos Claimants by means of the unjust diminution in the property of Grace-Conn., and from the following "badges of fraud":  (i) The Transfers were to insiders; (ii) the public stockholders of Grace-1998 retained indirect ownership of the transferred property before and after the Tranfers; (iii) the Transfers and the role of various entities in connection therewith were obscured by the inordinately complex steps by which the scheme was carried out, including without limitation the proliferation of entities named "W.R. Grace & Co." and the renaming of Grace-1998 as "Sealed Air Corporation"; (iv) before the Transfers were made, Grace-Conn. and affiliates had been sued in tens of thousands of asbestos-related cases and expected to be sued in tens of thousands of additional asbestos-related cases in the future; (v) the value of the consideration received by Grace-Conn. in the Transfers was not reasonably equivalent to the value of the property transferred; and (vi) Grace-Conn. was insolvent at the time of the Transfers or became insolvent shortly thereafter.

50.  Accordingly, pursuant to applicable law, the Transfers were fraudulent as to Grace-Conn.'s creditors.

## COUNT V

### Successor Liability

51.  Plaintiffs repeat and reallege all of the allegations of paragraphs 1 through 33.

**ORIGINAL COMPLAINT-PAGE 13**

52. The Transfers and related steps were undertaken for the fraudulent purpose of escaping Asbestos Claims.

53. There is no just reason to respect the integrity of the Transfers or related steps. On the contrary, respecting such transactions would unjustly elevate form over substance and allow the improper purpose of these transactions to succeed by placing assets of Grace-Conn. beyond the reach of Asbestos Claimants.

54. Accordingly, Grace-1998 and Packco have succeeded by operation of law to unlimited liability for Asbestos Claims against Grace-Conn. or Grace.

## COUNT VI

### Piercing the Corporate Veil

55. Plaintiffs repeat and reallege all of the allegations of paragraphs 1 through 33.

56. In the Transfers and related steps, Grace-Conn., Grace, and Packco were subject to Grace-1998's pervasive domination and control. Grace-Conn., Grace, and Packco lacked any separate mind, will or existence of their own, and acted as the mere instrumentalities, agents and alter egos of Grace-1998.

57. The Transfers were effectuated for the fraudulent and improper purpose of knowingly and intentionally enhancing the interests of Grace-1998's shareholders at the expense and to the unjust detriment of the Asbestos Claimants.

58. Grace-Conn., Grace, and Asbestos Claimants who are creditors of those entities have suffered injury and unjust loss as a proximate result of the misconduct of Grace-1998 and the wrongful exercise of domination and control in the Transfers and related steps.

59. In the interest of substantial justice, the corporate veils separating Grace-1998 and Packco from Grace-Conn. and Grace should be pierced and disregarded, and Defendants should be subjected to unlimited liability for the Asbestos Claims against Grace-Conn. or Grace.

## COUNT VII

### Breach of Fiduciary Duty

60. Plaintiffs repeat and reallege all of the allegations of paragraphs 1 through 33.

61. As the sole shareholder of Grace-Conn., Grace-1998 owed a fiduciary duty to its subsidiary corporation. As an incident of that fiduciary duty, Grace-1998 bears the burden of proving that any challenged transaction between itself and Grace-Conn. met the test of good faith and inherent fairness from the viewpoint of Grace-Conn.

62. In the exercise of control over Grace-Conn. as the only shareholder of that corporation, Grace-1998 caused the Transfers to occur.

63. The Transfers violated Grace-1998's fiduciary duty and unjustly enriched Grace-1998, Packco, and their successors at the expense of Grace-Conn. and its creditors. Grace-1998 received the Packco stock and Packco received the Packaging Business subject to a duty to make full restitution of the value of that property and all proceeds thereof, and to pay damages to Grace-Conn. to the extent that the value of that property or its proceeds have been dissipated or re-transferred.

## COUNT VIII

### Avoidance of Transfer to Insiders
### Received in Breach of Fiduciary Duty

64. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 33.

65. At the time of the Transfers, the directors and officers of Grace-1998 were subject to fiduciary duties toward the creditors of Grace-Conn. because (i) Grace-Conn. was insolvent or was rendered insolvent by the Transfers, or, in the alternative, (ii) if not actually insolvent immediately before or immediately after the Transfers, Grace-Conn. was operating in the vicinity of insolvency.

66. The fiduciary duty owed to creditors obligated Grace-Conn. and its officers and directors to refrain from preferring insiders over unrelated creditors in the disposition of Grace-Conn.'s property.

67. The Transfers and related steps violated the applicable fiduciary duty.

68. By reason of the Transfers, Defendants have been unjustly enriched.

69. Having received the proceeds of the Transfers as a direct and proximate result of a breach of fiduciary duty, Defendants hold those proceeds subject to a duty to make full restitution thereof.

## COUNT X

### (Punitive Damages)

70. Plaintiffs repeat and reallege all of the allegations of paragraphs 1 through 33.

71. In respect of the Transfers and related steps, Defendants acted in a willful, wanton, and reckless manner and in callous disregard of the rights of Grace-Conn.'s asbestos

victims. The misconduct rises to such a high level of moral culpability as to justify the imposition of punitive damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demands judgment against Defendants for the benefit of the estates and creditors of Grace-Conn. and Grace, and pray that the Court grant each of the following remedies:

a. avoidance of the Transfer pursuant to 11 U.S.C. § 544(b) or other applicable law;

b. recovery of all stock and assets received by Defendants in the Transfers, or a money judgment for the value thereof, pursuant to 11 U.S.C. § 550(a) or other applicable law;

c. a money judgment pursuant to 11 U.S.C. § 550(a) or other applicable law for dissipation of the transferred property after the Transfers, including without limitation any decline in the value of such property between the time of the Transfers and the time of final judgment;

d. a money judgment pursuant to 11 U.S.C. § 550(a) or other applicable law for all consequential and incidental damages and expenses incurred by Grace-Conn. or Grace with respect to, or as a result of, the Transfers;

e. a declaratory judgment that Defendants bear unlimited liability as successors to the liabilities of Grace-Conn. and Grace for Asbestos Claims;

f. a declaratory judgment that the corporate veils separating Grace-1998 and Packco from Grace-Conn. and Grace are pierced and disregarded such that Defendants bear unlimited liability for Asbestos Claims against Grace-Conn. or Grace;

g. an award of punitive damages according to proof;

h. an award of prejudgment interest;

i. an award of reasonable attorneys' fees; and

j. such other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury for all issues so triable.

Dated: March 18, 2002

Respectfully submitted,

FERRY, JOSEPH & PEARCE, P.A.

By: /s/Theodore J. Tacconelli
Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 19899
(302) 575-1555

-and-

BILZIN SUMBERG DUNN BAENA
PRICE & AXELROD, LLP
Scott L. Baena
Robert W. Turken
First Union Financial Center
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131

Counsel for The Official Committee of
Asbestos Property Damage Claimants

-and-

CAMPBELL & LEVINE, LLC

By: /s/Matthew G. Zaleski, III
Matthew G. Zaleski, III (No. 3557)
1201 N. Market Street, 15th Floor
Wilmington, DE 19801
(302) 426-1900

-and-

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
Rita C. Tobin
399 Park Avenue, 27th Floor
New York, NY 10022
(212) 319-7125

-and-

CAPLIN & DRYSDALE, CHARTERED
Peter Van N. Lockwood
Trevor W. Swett
Nathan D. Finch
One Thomas Circle, N.W.
Washington, D.C. 20005
(202) 862-5000

Attorneys for the Official Committee
Of Asbestos Personal Injury Claimants

-and-

McKOOL SMITH, P.C.
Lewis T. LeClair
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4000

Proposed Counsel for Plaintiffs

**ORIGINAL COMPLAINT-PAGE 19**