UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No. 01-1139 (JKF) |
| | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**SUMMARY OF SEVENTH INTERIM APPLICATION OF BILZIN SUMBERG DUNN BAENA PRICE & AXELROD LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS FOR THE PERIOD FROM JANUARY 1, 2002 THROUGH JANUARY 31, 2002**

| | |
|---|---|
| Name of Applicant: | Bilzin Sumberg Dunn Baena Price & Axelrod LLP |
| Authorized to Provide Professional Services to: | The Official Committee of Asbestos Property Damage Claimants |
| Date of Retention: | Retention order entered on June 21, 2001, <u>Nunc</u> <u>Pro</u> <u>Tunc</u>, to April 9, 2001 |
| Period for which compensation and Reimbursement is sought: | January 1, 2002 through January 31, 2002 |
| Amount of Compensation sought as actual, reasonable and necessary: | $46,653.00 |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | $7,974.07 |

This is an **X** interim __final application.[1]

---

[1] All capitalized terms used but not defined herein have the meanings ascribed thereto in the Seventh Interim Application of Bilzin Sumberg Dunn Baena Price & Axelrod LLP for Compensation for Services Rendered and Reimbursement of Expenses as Counsel to the Official Committee of Asbestos Property Damage Claimants for the Period from January 1, 2002 Through January 31, 2002.

## HISTORY OF FEES AND COSTS

| Interim Applications | | Requested | | Pending | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| 7/2/01 | 4/9/01 – 5/31/01 | $194,578.50 | $29,181.11 | $194,578.50 | $29,181.11 |
| 8/6/01 | 6/1/01 – 6/30/01 | $195,105.25 | $14,086.94 | $195,105.25 | $14,086.94 |
| 9/25/01 | 7/1/01 - 8/31/01 | $247,980.00 | $176,063.29 | $247,980.00 | $176,063.29 |
| 11/8/01 | 9/1/01 - 9/30/01 | $49,039.50 | $6,936.85 | $49,039.50 | $6,936.85 |
| 12/13/01 | 10/1/01 - 11/30/01 | $180,750.50 | $140,465.86 | $180,750.50 | $140,750.50 |
| 2/6/02 | 12/1/01 - 12/31/01 | $34,725.00 | $55,174.38 | $34,725.00 | $55,174.38 |

## ATTACHMENT "B" TO FEE APPLICATION
## SUMMARY OF HOURS

| Name of Professional Person | Position of Applicant | Number of years in position | Department | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Scott L. Baena | Partner | 27 | Bankruptcy | $450.00 | 49.6 | $22,320.00 |
| Robert W. Turken | Partner | 21 | Litigation | $390.00 | 12.6 | $4,914.00 |
| Mitchell E. Widom | Partner | 16 | Litigation | $350.00 | 3.3 | $1,155.00 |
| Robert M. Siegel | Partner | 16 | Bankruptcy | $340.00 | 1.4 | $476.00 |
| Michael D. Seese | Partner | 8 | Bankruptcy | $275.00 | .5 | $137.50 |
| Raquel M. Gonzalez | Associate | 7 | Litigation | $260.00 | 10.5 | $2,730.00 |
| Daniel R. Green | Associate | 3 | Litigation | $180.00 | 1.7 | $306.00 |
| Jay M. Sakalo | Associate | 4 | Bankruptcy | $235.00 | 81.7 | $19,199.50 |
| Jose L. Heredia | Paralegal | 10 | Bankruptcy | $100.00 | 6.0 | $600.00 |
| Anthony Box | Paralegal | 11 | Bankruptcy | $100.00 | .9 | $90.00 |
| Luisa M. Flores | Paralegal | 4 | Bankruptcy | $100.00 | 11.0 | $1,100.00 |
| | | | | Total: | 179.2 | $53,028.00 |
| | | | | LESS 50% TRAVEL DISCOUNT: | | -$3,374.50 |
| | | | | GRAND TOTAL | | $49,653.50 |
| | | | | Blended Rate: | | $277.06 |

## COMPENSATION BY PROJECT CATEGORY

| PROJECT CATEGORY | TOTAL HOURS | TOTAL FEES |
|---|---:|---:|
| Case Administration | 62.2 | $18,382.00 |
| Debtors' Business Operations | 1.8 | $616.50 |
| Creditors' Committee | 8.0 | $2,654.00 |
| Retention of Professionals | 4.0 | $940.00 |
| Fee Applications | 9.7 | $1,388.50 |
| Court Appearances | 12.6 | $3,950.00 |
| Travel | 21.4 | $6,749.00 |
| Fraudulent Transfer Litigation | 50.8 | $16,326.50 |
| Litigation Consulting | 8.7 | $2,021.50 |
| **Total** | **179.3** | **$53,028.00** |
| **Less Discount 50% Travel Time** | | **-$3,374.50** |
| **Grand Total** | **179.2** | **$49,653.50** |

557513                                     3

# EXPENSE SUMMARY

| | | | | |
|---|---|---|---|---|
| 1. | Expert Fees | | | $547.88 |
| 2. | Staff Overtime | | | $211.53 |
| 3. | Photocopies | | | $337.65 |
| | (a) | In-house copies @ $ 0.15 | $337.65 | |
| | (b) | Outside copies (At Cost) | | |
| 4. | Messenger Services | | | $175.00 |
| 5. | Overnight Delivery Charges (Federal Express) | | | $54.81 |
| 6. | Postage | | | $.57 |
| 7. | Long Distance Telephone Charges | | | $1,291.76 |
| 8. | Telecopies @ $ 0.50 | | | $189.00 |
| 9. | Court Reporter | | | N/A |
| 10. | Computerized Research, PACER/Westlaw/Lexis | | | $243.91 |
| 11. | Travel Expenses | | | $4,921.96 |
| | (a) | Airfare | $3,999.00 | |
| | (b) | Meals | $75.48 | |
| | (c) | Parking / Mileage | $170.58 | |
| | (e) | Lodging | $676.90 | |
| **TOTAL "GROSS" AMOUNT OF REQUESTED DISBURSEMENT** | | | | **$7,974.07** |

539005

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Case No. 01-1139 (JJF) |
| | ) | Chapter 11 |
| W.R. GRACE & CO., et al.,[1] | ) | |
| | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**SEVENTH INTERIM APPLICATION OF BILZIN
SUMBERG DUNN BAENA PRICE & AXELROD LLP
FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL
COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS FOR
THE PERIOD FROM JANUARY 1, 2002 THROUGH JANUARY 31, 2002**

Pursuant to 11 U.S.C. §§ 330 and 331, Rule 2016 of the Federal Rules of Bankruptcy Procedure, and this Court's May 3, 2001 Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members (the "Administrative Order"), the law firm of Bilzin Sumberg Dunn Baena Price & Axelrod LLP (the "Applicant") hereby submits this seventh interim application (the "Application") as counsel to the Official Committee of Asbestos Property Damage Claimants (the "PD Committee"). In support hereof, the Applicant respectfully represents as follows:

---

[1] The Debtors consist of the following 62 entities: W. R Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Ins., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgracc, Inc., Coalgracc II, Ins., Creative Food `N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B 11 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe. Inc., Grace H-G Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Squarc Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Ins., MICA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## I.   BACKGROUND

1. On April 2, 2001 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

2. On April 2, 2001, the Court entered its Order directing the joint administration of the Debtors' chapter 11 cases (the "Consolidated Cases").

3. On April 12, 2001, the Office of the United States Trustee appointed the PD Committee in this case consisting of Mr. Marco Barbanti, Princeton University, Pacific Freeholds and Prudential Insurance Company. The PD Committee held its organizational meeting on that day and selected Mr. Marco Barbanti to serve as its Chairman. Thereafter, the PD Committee was expanded to include Paul Price, Anderson Memorial Hospital and the Catholic Archdiocese of New Orleans. The PD Committee subsequently elected Mr. Dan Speights, representative of Anderson Memorial Hospital, as Co-Chairman of the PD Committee.

4. The PD Committee represents the interests of the asbestos property damage claimants in the Consolidated Cases.

5. At the PD Committee's initial meeting held on April 12, 2001, at which all original PD Committee members were present, the PD Committee chose to retain the Applicant, by and through Scott L. Baena, Esq., as its counsel to represent it in all matters during the pendency of the Consolidated Cases.

6.     By application, dated May 22, 2001, the Applicant sought Court approval for its retention as counsel to the PD Committee <u>nunc</u> <u>pro</u> <u>tunc</u> to April 9, 2001.  No objections were filed and a certificate of no objection was filed with the Court.

7.     By order dated June 21, 2001 (the "Retention Order"), the Court authorized the PD Committee to retain the Applicant <u>nunc</u> <u>pro</u> <u>tunc</u> to April 9, 2001, pursuant to 11 U.S.C. §§ 1103 and 328, on a general retainer basis, to represent the PD Committee in the Consolidated Cases.  The Retention Order conditioned the Applicant's compensation on approval by this Court.

## II.     RELIEF REQUESTED

8.     Accordingly, the Applicant submits this Application, pursuant to Sections 328, 330, 331 and 503(b) of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Administrative Order, and in accordance with U.S. Department of Justice, Executive Office for United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. §330 (the "Guidelines").  The Applicant requests an interim award of legal fees and reimbursement of expenses incurred by the Applicant as counsel to the PD Committee for the period from January 1, 2002, through January 31, 2002 (the "Application Period"), in the amount of (i) $49,653.50 for services rendered during the Application Period; and (ii) $7,974.07 as reimbursement for the actual and necessary expenses incurred by the Applicant as counsel to the PD Committee during the Application Period, as well as the fees of certain experts engaged by the PD Committee pursuant to the Court's June 22, 2001 Order Authorizing the Retention of Experts.

9.     This request is the Applicant's seventh interim application for compensation and reimbursement of expenses.  No understanding exists between the Applicant and any other

person for a sharing of the compensation sought by this Application, except among the members and regular associates of the Applicant.

10.     In accordance with the Guidelines, the following exhibits are annexed to this application:

Exhibit A – Applicant's billing statement, which includes detail description of services rendered by professionals for each category, summary of fees for each category and summary of costs for each category.

Exhibit B – Certification of Scott L. Baena.

11.     The Applicant has expended a total of 179.2 hours during the Application Period in rendering necessary and substantially beneficial legal services to the PD Committee. Exhibit A includes a daily description of the services rendered and the hours expended by the various attorneys and paralegals of the Applicant who performed services in the Consolidated Cases. The Applicant has prepared Exhibit A based on contemporaneous daily time records maintained by the Applicant's attorneys and paralegals who rendered services in the Consolidated Cases. In compliance with the Guidelines, the daily descriptions of the services rendered by the Applicant are categorized by activity code.

12.     The Applicant has only applied for reimbursement of actual and necessary out-of-pocket disbursements in accordance with § 330(a)(2) of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Guidelines. The expenses listed on the Summary of Expenses were actual and necessary expenses incurred by the Applicant in connection with its service to the PD Committee. The Applicant would typically bill all such expenses to its non-bankruptcy clients.

13. The Applicant charges $.15 per page for in-house photocopying services and $.50 per page for out-going facsimile transmissions. The Applicant does not charge for incoming facsimiles and with respect to computerized research services, Applicant charges the actual cost incurred with any outside vendor.

### III.  SUMMARY OF SERVICES RENDERED

**A.  <u>Case Administration</u>**

This matter covers the attention given to routine motions and pleadings, and preparation of responses thereto, the preparation of summaries and analyses of such papers for the PD Committee, and meetings with the Debtors or their professionals.

The Applicant's focus on the administration of the Consolidated Cases during the Application Period continued to permit the PD Committee to remain fully informed about all on-going matters pending in the Consolidated Cases. During the Application Period, the Applicant continually discussed the status of the Consolidated Cases and the ramifications of the transfer of the cases to Judge Wolin and Judge Fitzgerald with the members of the PD Committee. Upon carefully reviewing Judge Wolin's "First Case Management Order", the Applicant drafted a letter to Judge Wolin and circulated the draft to the PD Committee for review and comment and suggestions. Thereafter, the Applicant amalgamated the various comments received and submitted the letter to Judge Wolin.

In addition, the Applicant carefully prepared for the omnibus hearings held during the first and last week of January 2002. The night prior to the January 3, 2002 hearing, the Applicant was informed that Judge Fitzgerald wished to hear argument on two motions -- one the joint motion for leave for the PD Committee and the PI Committee to prosecute the fraudulent transfer actions and the other, the joint motion to retain special counsel to prosecute such actions

-- that were listed on the agenda as being set for "Status Conference." The Applicant then prepared that day and the next morning for argument on the two motions. In addition, the Applicant prepared for the January 29, 2002 omnibus hearing.

Also, the Applicant reviewed, analyzed and provided recommendations to the PD Committee with respect to the Debtors' motions to extend the period of time in which they may exclusively file a plan of reorganization and the period of time during which they may decide to assume or reject non-residential real property leases. In addition, during the Application Period, the Applicant carefully reviewed, summarized, and provided advice and recommendations to the PD Committee, with respect to the Debtors' position as a creditor in the Intercat bankruptcy, as well as "Project Blueberry" – a proposed acquisition that the Debtors discussed with the PD Committee's financial advisors, Conway, Del Genio, Gries & Co., LLC ("CDG").

**B.    Debtors' Business Operations**

This matter covers the attention given to review and analysis of the Debtors' statement of affairs, schedules of assets and liabilities, monthly reports of operations and their Securities and Exchange Commission filings.

During the Application Period, the Applicant expended time reviewing a report from CDG with respect to the Debtors' business operations. In addition, the Applicant reviewed the Debtors' November operating report and sent correspondence to CDG thereon.

**C.    Property Damage Claimants Committee**

This matter covers formation, membership, and by-law issues of the PD Committee. It also covers attendance at PD Committee meetings, preparation of materials for and presentations thereon to the PD Committee, and the preparation of minutes of the meetings.

557513                                    10

During the Application Period, the Applicant convened weekly telephonic meetings of the PD Committee. The Applicant prepared detailed agendas for each meeting, reviewed pending matters and issues in preparation therefor, and counseled the members in formulating a position on such matters and positions. Further, subsequent to the meetings the Applicant drafted, and circulated for review prior to adoption, drafts of minutes of the PD Committee meetings.

Throughout its representation of the PD Committee, the Applicant has aggressively and attentively represented the interests of the PD Committee. Assuming the role of liaison, the Applicant has continued to maintain continuous communications with the Debtors' counsel and PD Committee members and, at times, counsel to the personal injury claimants committee and counsel to the unsecured creditors' committee. The Applicant timely and professionally relayed information to PD Committee members through in-person meetings, telephone conference calls, e-mail and correspondence.

**D.**     **Retention of Professionals**

This matter covers the retention of professionals by the PD Committee or the Debtors, including interviews, discussions, motions and objections.

Based upon discussions with the United States Trustee's office, at the PD Committee's direction, the Applicant finalized applications for the retention of W.D. Hilton, Jr., and Hamilton Rabinovitz & Alschuler as experts to the PD Committee. In addition, the Applicant, again at the PD Committee's direction, drafted an application for the retention of Hilsoft Notifications as an expert to the PD Committee. This application for retention was filed with this Court subsequent to the Application Period.

In addition, the Applicant reviewed the United States Trustee's objection to the Debtors' proposed retention of PricewaterhouseCoopers.

**E.    Fee Applications**

This matter covers time expended preparing fee applications for the Applicant, the applications for reimbursement of expenses of PD Committee members or professionals, and reviewing, and objecting if necessary, to fee applications of others.

During the Application Period, the Applicant expended time preparing, drafting and filing its sixth interim fee application and the related application for reimbursement of expenses of PD Committee members.

The Applicant also reviewed and analyzed the numerous fee applications filed by the Debtors and their special counsels, the Personal Injury Committee, and the Official Committee of Unsecured Creditors.

**F.    Court Appearances**  This matter covers preparation for and attendance at omnibus court hearings and status conferences.

During the Application Period, the Applicant prepared for, attended and actively participated in the omnibus hearings held on January 3, 2002 in Pittsburgh, Pennsylvania and on January 29, 2002 in Wilmington, Delaware.

**G.    Travel**

During the Application Period, the Applicant traveled to Pittsburgh, Pennsylvania and Wilmington, Delaware to attend the omnibus hearings and for a meeting with CDG held prior to the hearing in Wilmington. In accordance with Local Rule 2016-2(d)(viii), all such time is being billed at fifty percent (50%) of regular hourly rates, to the extent work was not being performed en route.

## H. Fraudulent Transfer Litigation

This matter covers the analysis of the fraudulent transfer claims, motions to prosecute and hearings thereon. It also covers selection of professionals for this litigation, consultation with the PD Committee, the Personal Injury Committee, and special counsel to prosecute the claims.

During the omnibus hearing on January 3, 2002, Judge Fitzgerald ruled that each of the Committees in the Consolidated Cases were authorized to conduct an examination of the transfers potentially subject to fraudulent transfer actions and that each Committee was to prepare a report to the Court at the April 22, 2002 omnibus hearing with respect to its findings during such examination. Judge Fitzgerald further ruled that the examination was to be performed by Committee counsel and not through the use of special counsel. Thus, the Applicant immediately began coordinating efforts amongst the PD Committee's financial advisors, CDG, members of the PD Committee and PD Committee experts to develop a strategic plan to examine the transactions.

During the Application Period, the Applicant convened numerous telephone calls with CDG and Francine Rabinovitz to discuss matters directly related to the examination of the transfers. In addition, the Applicant began to research and analyze the potential causes of action, claims and the legal standards governing the same. Further the Applicant began to vigorously review the structure of the transfers.

Further, the Applicant attended an in-person meeting with CDG to discuss the parameters of the examination and to determine the appropriate tasks to be accomplished during the examination period.

Thereafter, at the January 29, 2002 hearing, Judge Fitzgerald informed the parties in attendance that Judge Wolin had decided that he would be hearing the fraudulent transfer matters. However, Judge Fitzgerald stated that the change in who would hear the case did not mean that the Applicant should cease working on its investigation into the transfers and the potential causes of action.

**I.      Litigation Consulting**

This matter covers the analysis of litigation claims, other than the fraudulent transfer claims, including strategic motions contemplated or conceptualized by the PD Committee.

During the Application Period, at the direction of the PD Committee, the Applicant drafted a limited joinder to the Motion to Dismiss the Consolidated Cases filed by certain of the Zonolite Attic Insulation claimants.

In addition, the Applicant reviewed the adversary proceeding filed by Sealed Air Corporation against Fresenius Medical Care in state court in New York.

**IV.     INDEXING OF TASKS BY ACTIVITY CODES**

As set forth on Exhibit A to this Application, the Applicant has organized its time records by activity codes in accordance with the Guidelines. Accordingly, each of the time entries of the attorneys and paralegals of the Applicant has been indexed into the following categories, which the Applicant ordinarily uses in categorizing its time.

**15537.**      **Case Administration**
**15538.**      **Debtors' Business Operations**
**15539.**      **Property Damage Claimants Committee**
**15540.**      **Retention of Professionals**
**15543.**      **Fee Applications**
**15544.**      **Court Appearances**
**15546.**      **Travel**
**15547.**      **Fraudulent Transfer Litigation**
**15563.**      **Litigation Consulting**

## V. EVALUATION OF SERVICES RENDERED: FIRST COLONIAL CONSIDERATIONS

This Application presents the nature and extent of the professional services the Applicant rendered in connection with its representation of the PD Committee for which the Applicant seeks compensation. The recitals set forth in the daily diaries attached hereto constitute only a summary of the time spent. A mere reading of the time summary annexed hereto cannot completely reflect the full range of services the Applicant rendered and the complexity of the issues and the pressures of time and performance which have been placed on the Applicant in connection with the case.

American Benefit Life Ins. Co. v. Baddock (In re First Colonial Corp.), 544 F.2d 1291 (5th Cir.), cert. denied, 431 U.S. 904 (1977), enumerates twelve factors a bankruptcy court should evaluate in awarding fees; these standards have been adopted by most courts. See also Grant v. George Schuman Tire & Battery Company, 908 F.2d 874 (11th Cir. 1990); 2 Collier on Bankruptcy & 330.05[2][a] at 330-33 through 330-37 (L. King 15th ed. 1991); See also Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981). The twelve factors are:

1. The time and labor required;

2. The novelty and difficulty of the questions presented;

3. The skill required to perform the legal services properly;

4. The preclusion from other employment by the attorney due to acceptance of the case;

5. The customary fee for similar work in the community;

6. Whether the fee is fixed or contingent;

7. The time limitations imposed by the client or circumstances;

8. The amount involved and results obtained;

9. The experience, reputation and ability of the attorneys;

10. The undesirability of the case;

11. The nature and length of the professional relationship with the client; and

12. Awards in similar cases.

First Colonial, 544 F.2d at 1298-99.

Based on the standards set forth in section 330 of the Bankruptcy Code and First Colonial, the Applicant believes that the fair and reasonable value of its services rendered during the period covered by this Application is the total amount of $49,653.50, plus expenses of $7,974.07.

**A.    Time, Nature and Extent of Services Rendered and Results Obtained**

The foregoing summary, together with Exhibit A attached hereto, details the time, nature and extent of the professional services the Applicant rendered for the benefit of the PD Committee during the period covered by this application. The total number of hours expended, 179.2, reveals the extensive time devoted to this matter by the Applicant on a vast spectrum of legal issues which have arisen in this case during the period covered by this Application.

**B.    Novelty and Difficulty of Questions Presented**

The issues which have arisen in this case during the period encompassed by this Application demanded a high level of skill and perseverance of the Applicant. The Applicant spent considerable time preparing for all of the hearings associated therewith, as well as reviewing or drafting related pleadings and documentation.

**C.    Skill Requisite to Perform Services Properly**

In rendering services to the PD Committee, the Applicant demonstrated substantial legal skill and expertise in the areas of bankruptcy, commercial and secured transactions and litigation. In addition, the Applicant has drawn upon and utilized the vast experience of attorneys in other areas of its firm.

**D.    Preclusion from Other Employment by Attorney Due to Acceptance of Case**

The Applicant's representation in this case did not preclude it from accepting other employment, although it has required certain attorneys to dedicate significant amounts of their time to these cases.

**E.      Customary Fee**

The hourly rates of the Applicant as set forth in Exhibit A reflect the hourly rates the Applicant bills to its clients in other bankruptcy and commercial cases in which client payment is made on a frequent, periodic basis.  Other courts outside of this district, in other bankruptcy matters in which the Applicant has been involved, have approved these rates.  The Applicant's hourly rates are derived from a careful and thorough analysis of its internal costs, fees charged by other attorneys in the same practice and geographic areas and the experience of the Applicant's attorneys and paraprofessionals.

**F.      Whether Fee is Fixed or Contingent**

The Applicant's compensation in this matter is subject to approval of the Court and therefore contingent.  The Court should consider this factor, which militates in favor of a fee in the amount requested.  The amount requested is consistent with the fee which the Applicant would charge its clients in other non-contingent, bankruptcy and commercial cases.

**G.      Time Limitations Imposed by Client or Other Circumstances**

The circumstances of this case occasionally imposed serious time constraints on the Applicant due to the necessity for rapid resolution of significant issues.

**H.      Experience, Reputation and Ability of Attorneys.**

The Applicant is an established law firm, and its members and associates working on this case are experienced in matters of this kind.

**I.**     **"Undesirability" of Case**

This case is not undesirable. The Applicant is privileged to have the opportunity to represent the PD Committee and appear before the Court in this proceeding.

**J.**     **Nature and Length of Professional Relationship with Client**

The Applicant had no prior relationships with any member of the PD Committee, nor did the Applicant represent any member of the PD Committee in any matter.

**K.**     **Awards in Similar Cases**

The amount requested by the Applicant is reasonable in terms of awards in cases of similar magnitude and complexity. The compensation which the Applicant requests comports with the mandate of the Bankruptcy Code, which directs that services be evaluated in light of comparable services performed in non-bankruptcy cases in the community. The fee requested by the Applicant, $49,653.50, reflects an average hourly rate of $277.06, for 179.2 hours of service. Considering the complexity of the issues addressed during the periods covered by this application, this rate is entirely appropriate. The costs which the Applicant seeks reimbursement for were necessarily incurred as a result of this engagement. Such costs are not, therefore, implicit in the Applicant's hourly rates.

WHEREFORE, the Applicant respectfully requests the Court to enter an order (i) awarding the Applicant the sum of $49,653.50 as interim compensation for services rendered, and $7,974.07, as interim reimbursement for actual and necessary expenses incurred during the course of the Applicant's representation of the PD Committee during the Application period; (ii) authorizing and directing the Debtor to pay the Applicant the sum of $39,722.80 representing 80% of the total fees and $7,974.07 in costs sought by the Applicant herein; and (iii) granting such other and further relief as the Court deems appropriate.

Dated: March 20, 2002

**BILZIN SUMBERG DUNN BAENA PRICE & AXELROD LLP**
Counsel to the Official Committee of Asbestos Property Damage Claimants
2500 First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2385
Telephone: (305) 374-7580
Facsimile: (305) 374-7593


By: /s/ Scott L. Baena
    Scott L. Baena (Admitted Pro Hac Vice)