LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

ATTORNEYS AT LAW
175 FEDERAL STREET, 7TH FLOOR
BOSTON, MASSACHUSETTS 02110-2221
TELEPHONE: (617) 720-5000
FACSIMILE: (617) 720-5015
mail@lchb.com
www.lchb.com

SAN FRANCISCO
NEW YORK
WASHINGTON, D.C.
NASHVILLE

March 18, 2002

**VIA E-MAIL: JUDGE_JUDITH_FITZGERALD@PAWB.USCOURTS.GOV**
**VIA FACSIMILE 412-644-5448**
**VIA OVERNIGHT COURIER**

The Honorable Judith K. Fitzgerald
United States Bankruptcy Judge
District of Delaware
Suite 5490, USX Tower
600 Grant Street
Pittsburgh, PA 15219

    Re:    In the Matter of W.R. Grace, Bankruptcy Court No. 01-1139

Dear Judge Fitzgerald:

    I am constrained to object to the letter of David D. Siegel, Senior Vice President of W.R. Grace & Co. (dated both March 5 and March 13, 2002). The letter is inappropriate both (i) because this Court has already ruled on the matter and the parties appear to be content to abide by that ruling, and (ii) Mr. Siegel appears to provide after-the-fact testimony on a matter already decided, but has not executed an affidavit and is not subject to cross examination. The contents of this letter also misstate the record.[1]

    Although the Zonolite Attic Insulation claimants believe that the filing by Grace was not made in good faith within the meaning of applicable law, we respect and abide by the court's ruling to deny the Motion to Dismiss. No appeal has been taken. The factual issues raised were all briefed to the Court earlier, and Grace had an opportunity to respond to them then. Grace's after-the-fact letter to this Court of March 13 (or March 5) is simply another example of misstatements of the record. The United States Environmental Protection Agency and the Department of Justice have previously been constrained to write this Court to correct

---

[1] If the Court wishes, a brief response is attached.

The Honorable Judith K. Fitzgerald
March 18, 2002
Page 3

    1. <u>Zonolite Attic Insulation Class Actions</u>. The information provided to this Court regarding the pendancy of the class actions involving Zonolite Attic Insulation ("ZAI") was accurate. Federal litigation was progressing well under the auspices, and at the direction of, the Judicial Panel on Multidistrict Litigation, with all matters pending before District Judge Saris in Boston. State court litigation was progressing in an efficient and well-managed manner, with the certified <u>Barbanti</u> class in Washington and with the certified <u>Anderson</u> class in South Carolina (to the extent it involves ZAI claims). The FY 2000 10-K of Grace discloses only three other state cases and makes no mention whatsoever of any unmanageability issues with respect to any one or all of them.

    2. <u>2000 Increase in Grace's Asbestos Reserve</u>. It was accurate to state, as I did, that the FY 2000 year-end asbestos liability reserve ($1,105.9 million without discounting for insurance recovery) was only two percent (2%) higher than the FY 1999 year-end asbestos liability reserve ($1,084.0 Million without discounting for insurance recovery).[2] In truth, W.R. Grace entered FY 2001 with an asbestos liability reserve not materially different than the asbestos liability reserve it had the previous year. Of course, Grace had paid claims during 2000, and those claims did not reduce its reserve. However, Grace took pains to note in its 10-K for 2000 that the net amount of this one-time adjustment recorded during the fourth quarter of 2000 ($208.0 million after insurance recovery) compared to the markedly larger net amount of the 1998 adjustment ($376.1 million pre-tax). <u>See</u> Grace FY 2000 10-K at F-14. In Grace's FY 2000 10-K, Grace chose to compare the year-end liability reserves (which differ by only two percent [2%]) with the more recent liability adjustment, a figure which is markedly less than that which Grace had to take in the past.

    3. <u>Availability of Financing</u>. It appears that Grace was able to negotiate, <i>prior</i> to the filing of the Chapter 11, the replacement of the bank credit facility. Indeed, this replacement facility was brought to the attention of the Court on the first day of the Chapter 11 filing. The simple point that I made was that replacement financing could be, and was, obtained prior to the filing of the Chapter 11, and during it. Because the replacement facility was tied to the Chapter 11 filing, we do not know whether, absent the Chapter 11, Grace could have obtained a beneficial replacement facility. Grace has not presented evidence that, in the face of its proclamations of strong financial health now and in the future, it would not have been able to do so.

---

[2] $1,105.9 million less $1,084.0 million is $21.9 million; $21.9 million over $1,084.0 million is 0.020203; rounded, that is two percent (2%).

The Honorable Judith K. Fitzgerald
March 18, 2002
Page 2

false records and impressions provided by Grace to the Bankruptcy Court.  See United States' Response to Debtors' Motion For Entry of Case Management Order, Motion to Establish Bar Date, Motion to Approve Claim Forms, And Motion to Approve Notice Program.

Very truly yours,

Thomas M. Sobol

Enclosure
TMS:aa

M:\WRG\Letters\3-14-02 ltr2 J Fitzgerald.doc