UNITED STATES BANKRUPTCY COURT
DISTRICT OF WESTERN PENNSYLVANIA

FILED
2002 MAR 25 PM 3:33
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                            .   Case No. 01-1139
                                  .   Adv. No. 02-2013
                                  .
W. R. GRACE & CO., et al..            5414 USX Tower Building
                                  .   Pittsburgh, Pennsylvania   15222
                                  .
            Debtor.   .
                                  .   March 8, 2002
. . . . . . . . . . . . . . .          10:30 a.m.


TRANSCRIPT OF MOTION FOR A TEMPORARY RESTRAINING ORDER
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:                   Pachulski, Stang, Ziehl
                                  By:  LAURA DAVIS JONES, ESQUIRE
                                       DAVID CARICKHOFF, JR., ESQUIRE
                                  919 North Market Street, 16th Fl.
                                  Wilmington, Delaware   19801

For Philip Morris, Inc.           Womble, Carlyle, Sandridge & Rice
and Philip Morris                 By:  KURT WEAVER, ESQUIRE
Companies, Inc.:                  2100 First Union Capital Center
                                  150 Fayetteville Street Mall
                                  Raleigh, North Carolina   27602

Audio Operator:                   Cathy Younker


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

2

## I N D E X

PAGE

ARGUMENT:

    By Mr. Carickhoff . . . . . . . . . . . . . . . . . 5

    By Mr. Weaver . . . . . . . . . . . . . . . . . 16

    By Ms. Jones  . . . . . . . . . . . . . . . . . 17


RESPONSE:



THE COURT:

    Decision  . . . . . . . . . . . . . . . . . . . 21


EXHIBITS:                                    IDEN.    EVID.

1    (The following hearing with Delaware was held via telephone)

2    THE COURT:  Good morning.

3    OPERATOR:  Hi.  Judge Fitzgerald?

4    THE COURT:  Yes.

5    OPERATOR:  Thank you.

6    THE COURT:  Good morning.  This is the matter of W.

7    R. Grace & Company, Bankruptcy number 01-1139.  This is the

8    time set for a motion for a temporary restraining order at

9    Adversary 02-2013.  This case is pending in the District of

10   Delaware.  Will whoever is on the phone enter appearances,

11   please?

12   MR. CARICKHOFF:  Judge, it's Dave Carickhoff of

13   Pachulski, Stang, Zeihl, Young & Jones on behalf of the

14   plaintiff W. R. Grace & Co.-Conn.  And with me is my colleague,

15   Laura Davis Jones.

16   THE COURT:  All right.  Is anyone else present?

17   MR. WEAVER:  Your Honor, Kurt Weaver from Womble,

18   Carlyle, Sandridge & Rice representing the R. J. Reynolds

19   Tobacco Company.  There are a number of other individuals on,

20   Your Honor.  But I will be arguing this morning.

21   THE COURT:  All right.  Thank you.

22   MS. FATTEL:  Your Honor, Bonnie Fattel from Blank,

23   Rome, Comisky & McCauley also representing R. J. Reynolds.

24   THE COURT:  All right.  Anyone else?

25   MR. HOWELL:  Your Honor, Lee Howell (phonetic) from

**J&J COURT TRANSCRIBERS, INC.**

4

1  Cokeland, Cook, Taylor & Bush (phonetic) representing Liggett

2  Group, Liggett & Ayres, Inc (phonetic), and the Brooke Group

3  Limited (phonetic).

4          MR. BELL:  Lewis Bell representing R. J. Reynolds

5  Tobacco Company, Jackson, Mississippi.

6          MR. HUGHES:  Jay Hughes, W. R. Grace.

7          THE COURT:  Anyone else?

8                        (Pause)

9          THE COURT:  Okay.  We'll --

10          MR. PERKINS:  William Perkins --

11          THE COURT:  I'm sorry?

12          MR. PERKINS:  Willie Perkins, Philip Morris.

13          THE COURT:  Okay.  Anyone else?

14          MR. ACKERLY:  Ben Ackerly on behalf of Philip Morris.

15          THE COURT:  Anyone else?  Mr. Carickhoff?

16          MR. CARICKHOFF:  Yes, Your Honor.

17          THE COURT:  Are you going to present this?

18          MR. CARICKHOFF:  Certainly.  Your Honor, if I could,

19  before I start --

20          THE COURT:  I'm sorry.  We can't understand you.

21  You're coming across like you're coming through a squawk box.

22  Are you on the speaker?

23          MR. CARICKHOFF:  Your Honor, I am because I have my

24  colleague with me.  I will pick up the phone and hopefully it

25  will be more clear.

**J&J COURT TRANSCRIBERS, INC.**

Carickhoff/Argument                                                      5

1              THE COURT:  Thank you.

2              MR. CARICKHOFF:  Is this better?

3              THE COURT:  Yes, much.  Thank you.

4              MR. CARICKHOFF:  Sure.  Before we start, Your Honor,

5    I would like to just review, for the Court's benefit, who the

6    parties are in this adversary proceeding.  The plaintiff is W.

7    R. Grace & Co.-Conn., which Your Honor is aware is a Chapter 11

8    debtor in case number 01-1139.  The defendants to this

9    adversary proceeding are comprised of essentially two groups.

10   The first group is what I would call the individual plaintiffs.

11   And I will describe them in more detail in a short bit.  I'd

12   like to point out to the Court that counsel for the individual

13   plaintiffs who are also defendants in this adversary proceeding

14   have consented to the relief that the debtor has requested in

15   their preliminary injunction pleadings.  The second group of

16   defendants are what I would call the tobacco companies.  Your

17   Honor, when we first filed our injunction pleadings, we listed

18   the tobacco companies.  We have dismissed certain of them since

19   that time.  So currently, the tobacco company defendants are R.

20   J.  Reynolds Tobacco Company, Brown & Williamson Tobacco

21   Corporation, Philip Morris, Incorporated, Liggett Group, Inc.,

22   Lorilard Tobacco Company (phonetic), Batifs, Inc. (phonetic),

23   BAT Industries, PLC, the counsel for Tobacco Research USA,

24   Tobacco Institute Research Committee, the Tobacco Institute for

25   Williams Tobacco Company, Jackson Cigar & Tobacco Company,

**J&J COURT TRANSCRIBERS, INC.**

Carickhoff/Argument                                    6

1    Capital Tobacco & Specialty Company, New Deal Supermarkets,

2    Inc., JR Supermarket and local distributors and retailers A&B.

3            Your Honor, we had dismissed certain defendants that

4    we have determined were holding companies.   And these are all

5    detailed in Footnote 1 of our pleadings.   And Footnote 1

6    indicates the parties that have been dismissed thus far are

7    RJR Nabisco, Inc., British-American Tobacco Company Limited,

8    Philip Morris Companies, Inc., Liggett and Meyers, Inc., Brooke

9    Group Holding, Inc. who were sued as the Brooke Group Limited,

10   American Brand, Inc., and the Lowes Corporation.

11           Now that Your Honor has an idea of who the parties

12   are in this action, I would just like to give Your Honor a

13   background with respect to why we are here.   I'm going to

14   refer to the plaintiff W. R. Grace & Co.-Conn. as Grace.   Grace

15   had commenced what I'll call the tobacco litigation on March

16   23rd, 2001 when it filed its complaint against the tobacco

17   companies with the Circuit Court for the Jefferson County of

18   Mississippi in an action that was captioned "W. R. Grace & Co.-

19   Conn. v. RJR Nabisco, Inc., et al.," which is cause number

20   2001-58.   The co-plaintiffs with Grace in that tobacco

21   litigation are the individual plaintiffs that are referenced in

22   Footnote 1 of our pleadings.   The individual plaintiffs are

23   smokers and/or heirs of the representatives of the estate of

24   deceased smokers who are also occupationally exposed to

25   asbestos.   The individual plaintiffs brought claims against

**J&J COURT TRANSCRIBERS, INC.**

Carickhoff/Argument                                    7

1    Grace seeking compensation for lung injuries, and Grace has

2    since resolved their claims.

3              Through the tobacco litigation, Grace seeks

4    compensatory and punitive damages from the tobacco companies

5    for the direct injury to Grace, with damages including but not

6    limited to sums paid to resolve the personal injury claims of

7    the individual plaintiffs and all other claimants who have been

8    compensated by Grace for injuries caused wholly or in

9    substantial part by tobacco products.

10             Your Honor, as we indicate in our pleadings, the

11   tobacco litigation involved similar claims and causes of action

12   as those that are involved in the Owens-Corning action.   And

13   the Owens-Corning action was an action commenced by Owens-

14   Corning in 1998 against certain tobacco companies seeking the

15   same or similar relief that Grace seeks in the tobacco

16   litigation.   And this was commenced, just so Your Honor is

17   aware, almost three years before Grace's tobacco litigation.

18   In that action, the tobacco defendants filed a motion for

19   summary judgment to dismiss the case, which was ultimately

20   granted by the trial judge, who was Judge Pickard.   He's the

21   same trial judge that Grace has in its tobacco litigation.   The

22   Owens-Corning action is currently on appeal and cross-appeal

23   before the Supreme Court of Mississippi.   Your Honor, Grace, as

24   a debtor and debtor in possession with a fiduciary duty to its

25   creditors, has determined in its business judgment that at this

**J&J COURT TRANSCRIBERS, INC.**

Carickhoff/Argument                                    8

1    point it doesn't make sense for Grace to prosecute the tobacco

2    litigation until such time as there is a final adjudication of

3    the Owens-Corning appeal.

4              THE COURT:  Yes.  But apparently the state court

5    judge has already denied this motion.  So I'm not an appellate

6    court.  If you've already brought this motion before the state

7    court judge and raised all these issues, how do I have

8    jurisdiction to determine this?  I mean this is not a case in

9    which the automatic stay applies.  The debtor commenced this

10   action post-petition.  I simply don't see that I have any

11   jurisdiction or interest in determining this action.  You took

12   it to the place where it belonged, the state court trial judge,

13   and he denied it.  So what can I do about it?

14             MR. CARICKHOFF:  Your Honor, if I could address that?

15   First of all, I don't think it's accurate that we took it

16   before the judge.    In --

17             THE COURT:  Well, in some of the pleadings --

18             MR. CARICKHOFF:  -- in a motion format.

19             THE COURT:  Well, the pleadings said that a consent

20   order was presented and he denied it.

21             MR. CARICKHOFF:  That's accurate, Your Honor.

22             THE COURT:  Well?

23             MR. CARICKHOFF:  If I could just give Your Honor a

24   little bit of background on that?  It's no secret that when

25   Grace and several other asbestos companies filed similar

Carickhoff/Argument                               9

1   actions like the Owens-Corning action, that at that point they

2   were essentially monitoring the Owens-Corning action to see

3   whether or not such actions were going to prove viable through

4   that action.  If you --

5           THE COURT:  Well --

6           MR. CARICKHOFF:  -- if you look at --

7           THE COURT:  -- if I understand the law, since I also

8   addressed this issue in Owens-Corning, none of them have proved

9   viable.  They've all been dismissed on one theory or another

10  generally because it's collateral consequences.

11          MR. CARICKHOFF:  And they're all on appeal at this

12  time, Your Honor.

13          THE COURT:  No.  There have been actually some, I

14  believe, that have gone through the appellate process.

15          MR. CARICKHOFF:  Okay.  Your Honor, with respect to

16  the others, in addition to Grace, as I indicated, there are

17  other tobacco companies that have initiated similar types of

18  actions as the Grace tobacco litigation and the Owens-Corning

19  action.

20          THE COURT:  I'm sorry, Mr. Carickhoff.  I didn't

21  understand.  There are other asbestos --

22          MR. CARICKHOFF:  Asbestos companies --

23          THE COURT:  Okay.

24          MR. CARICKHOFF:  -- similar to Grace and Owens-

25  Corning that have also brought similar types of action in the

Carickhoff/Argument                            10

1   Mississippi court on the same types of theories against the

2   tobacco companies.  And, in fact, the tobacco companies have

3   reached agreements with many of these asbestos companies to

4   stay such actions pending the final adjudication of the Owens-

5   Corning action.

6          THE COURT:  Well, I understand that.  But the problem

7   is that this action is pending in the state court.  The debtor

8   is the plaintiff and not a defendant.  Therefore, the debtor

9   elected to bring this action and the state court judge has

10  denied the request for a continuance.  I am not an appellate

11  court.  I don't see what jurisdiction I have to set aside an

12  order of a state court which denied your request.

13         MR. CARICKHOFF:  Well, I think, Your Honor, then that

14  gets us to the argument as to what the standards are for

15  issuing a temporary restraining order.  And in terms of going

16  through that, the legal analysis that should guide the Court,

17  the Court should look at the factors of the following:  the

18  likelihood that the moving party will prevail on the merits of

19  its claim in a final hearing --

20         THE COURT:  At the moment, there doesn't appear to be

21  any such likelihood because I'm not aware that any plaintiff

22  has yet succeeded in these actions, regardless of how well

23  based they may be.  They've all lost.  So there doesn't appear

24  to be any likelihood that there is going to be success right

25  now unless the Mississippi Supreme Court or some other

Carickhoff/Argument                    11

1   appellate court elects to vary what the current state of the

2   law is. So even if I do it on that basis, I'm not sure I see

3   the grounds for a TRO.  But I want to know what jurisdiction I

4   have in the first place.  You've already taken this issue to a

5   state court and gotten an order.

6          Now I don't know if the Rooker-Feldman Doctrine

7   applies, frankly, because that talks about litigation on the

8   merits and I'm not sure -- no, let me state that affirmatively.

9   This issue is obviously not addressed to the merits of the

10  complaint, that is your request for a continuance.  But to the

11  extent that the order dealt with your request for a

12  continuance, it was a decision on the merits.  The state court

13  judge said no.  I am not in the position of setting aside

14  state court judgments that are not somehow compromised because

15  of being in violation of the automatic stay or otherwise

16  causing some problem with federal law.  The debtor brought this

17  action.

18          MR. CARICKHOFF:  Yeah, I understand.  I recognize

19  that the debtor brought this action.  The debtor brought the

20  action because it determined in its business judgment that to

21  the extent there was a possibility of claims against the

22  tobacco companies, it wanted to protect and preserve any

23  potential claims it might have.  Now with respect to how the

24  court has -- how the bankruptcy court has jurisdiction over

25  this action, Your Honor, if this action is allowed to go

**J&J COURT TRANSCRIBERS, INC.**

Carickhoff/Argument                              12

1   forward and discovery ensues in the tobacco litigation, several

2   things are going to happen.  Number one, you're going to cause

3   Grace to expend substantial costs if --

4            THE COURT:  No, I'm not going to cause Grace to incur

5   costs.  Grace is going to cause Grace to incur that.  Grace

6   filed this action.

7            MR. CARICKHOFF:  Well, I understand that, Your Honor.

8   At this point, it just doesn't make sense for the tobacco

9   litigation to go forward until we have a resolution of the

10  Owens-Corning appeal.

11           THE COURT:  I wholly agree --

12           MR. CARICKHOFF:  Right.

13           THE COURT:  -- but you presented that issue to the

14  state court and the state court said it disagreed.  I'm not an

15  appellate court.  If you disagree with a state court ruling,

16  file an appeal.  I'm not here to set aside state court

17  judgments and I don't see any basis upon which an independent

18  TRO ought to lie here.  I don't know why the state court judge

19  said no.  What was the basis for the denial?

20           MR. CARICKHOFF:  Your Honor, I'm not one of the

21  tobacco litigants -- tobacco counsel in Mississippi.  I'm sure

22  they can better address that question.  In my understanding,

23  it's really not clear why Judge Pickard refused to enter this

24  order, especially because he had previously entered similar

25  types of orders staying the other tobacco cases in his

1  jurisdiction --

2           THE COURT:  Well, maybe --

3           MR. CARICKHOFF:   -- so I'm not --

4           THE COURT:   -- maybe --

5           MR. CARICKHOFF:   -- I'm not clear why he had the

6  change of heart.  If you want --

7           THE COURT:  Maybe you should go back to him and ask

8  because I don't think you're going to get very far with me.  I

9  don't see that I have jurisdiction to entertain this action

10 when you've already presented it by way of a consent order to

11 the state court judge and the state court judge has said no.

12          MR. CARICKHOFF:  Your Honor, if we can go back, if

13 we look at the deposition that is supposed to go forward on

14 March 15th, some of the issues raised in that deposition, and

15 if it's allowed to go forward, really cut to the heart of this

16 Chapter 11 case --

17          THE COURT:  That's Grace's decision when it decided

18 to file this action.  Grace brought this action.

19          MR. CARICKHOFF:  Well, Your Honor, if the deposition

20 is allowed to go forward, then what's going to happen is you're

21 going to have some of these core issues, for instance the

22 claims resolution process -- some of the items that counsel has

23 requested in the notice of deposition necessarily relate to the

24 claims management of the company --

25          THE COURT:  If it's too broad a request for

**J&J COURT TRANSCRIBERS, INC.**

Carickhoff/Argument                                    14

1    deposition, you have remedies to try to narrow the scope of the

2    deposition in the court that has jurisdiction over it.  Grace

3    commenced this action.  Grace has to understand that when it

4    files an action there is going to be discovery.  And if the

5    state court judge isn't willing to hold it up for whatever

6    reason -- you know, you presented this action to the state

7    court first.  You didn't come here for a TRO first.  I'm not an

8    appellate court --

9             MR. CARICKHOFF:  I understand --

10            THE COURT:  -- you already --

11            MR. CARICKHOFF:  -- no, I understand Your Honor's

12   reluctance to try and usurp the state court judge's powers.

13   But we're really concerned that if it is allowed to go forward

14   at this point, then you're going to start using the estate's

15   assets in litigation that's really unnecessary and at this

16   point unknown --

17            THE COURT:  Then the debtor should have thought about

18   that before it brought the action.

19            MR. CARICKHOFF:  If the debtor had not filed when it

20   filed then it would run into statute of limitation issues,

21   Your Honor.  That's the main reason it brought the action.  And

22   --

23            THE COURT:  Well, look --

24            MR. CARICKHOFF:  -- from the beginning of the case

25   forward, you can even see by the interactions between Grace and

                    **J&J COURT TRANSCRIBERS, INC.**

1   the tobacco companies that the parties all understood that it

2   was essentially an action to preserve that statute of

3   limitations issue and preserve their claim against the tobacco

4   companies.  Grace and the tobacco companies, they were

5   presented with a tolling agreement to stay it and ultimately

6   dismiss the complaint.  Grace determined that it wasn't wise to

7   enter into that tolling agreement because it was unclear under

8   Mississippi law whether or not such tolling agreements were

9   valid.  And then they ultimately reached, they being Grace and

10  the tobacco companies, a proposed order to stay the tobacco

11  litigation.

12          THE COURT:  I understand all that.  And it makes

13  perfect sense to me.  The problem is you all lost that issue.

14  All of you lost that issue.  The state court judge denied the

15  motion.  Why don't you go talk to the state court judge and

16  explain the problem and see whether or not, especially if other

17  litigation has been stayed, this one can't join in that track.

18  You're not going to get a TRO from me that essentially is

19  something in derogation of an order that a state court judge

20  entered in a case that is properly before that court and in its

21  jurisdiction that this debtor commenced.  I mean there are

22  risks in litigation.  This debtor elected those risks.  And I

23  appreciate the fact that the tobacco companies probably don't

24  want to go through these depositions either.  To the extent

25  that they win on appeal, they're not going to have to incur

**J&J COURT TRANSCRIBERS, INC.**

1  this expense.  It doesn't make a lot of sense to me why this is

2  going forward.  But you folks already took that to a court of

3  competent jurisdiction and lost the issue.

4        So either if you have an appeal remedy, you use it;

5  if you have a motion for reconsideration remedy, you use it.

6  But I'm not issuing a TRO.  I don't think I have jurisdiction.

7  I don't think I have any basis to do it.  I certainly can't

8  find, given the current state of the law, that the debtor has

9  any possibility of success on the merits of the underlying

10  action.  So I just don't see a basis for a TRO.

11        MS. JONES:  Your Honor, this is Laura Davis Jones.

12  I have not heard from RJR their position really with respect to

13  this TRO.  I don't know if -- I didn't see any papers and I

14  probably took the last minute noticing on our part.  But I

15  think I would like to hear the position of RJR with respect to

16  this.  Maybe this is something that can be worked out.

17        THE COURT:  I'm happy to hear their position, but I'm

18  not signing an order that enters a TRO when I don't think I

19  have jurisdiction.  If you folks need to take this back to the

20  state court, you take it there.  But yes, if somebody from RJR

21  wants to address this, I'll be happy to hear you.

22        MR. WEAVER:  Well, Your Honor, this is Kurt Weaver

23  for Reynolds.  And speaking on behalf, I believe, of the

24  defendants that Grace seeks to enjoin, we would agree with the

25  Court that we question whether or not there is adequate

Jones/Argument                                                    17

1    jurisdiction, particularly in light of this Court's prior

2    pronouncement in the Owens-Corning matter.   Finally though,

3    Your Honor, we believe that for this Court to enter a TRO

4    enjoining us when Mississippi law requires us to get ready for

5    trial, that would be a violation of our due process rights.

6          Your Honor, finally, I think it's noteworthy that in

7    the Sabratek case, S-a-b-r-a-t-e-k, 257 Bankruptcy 73, Judge

8    Walrath of the Delaware Court held that it would be inequitable

9    for a bankruptcy court to enjoin a state court action where

10   debtors have failed to pursue all avenues to be heard in the

11   state court.   We have certainly in the past, prior to this

12   action being filed, tried to work with Grace to resolve this

13   matter without bothering this court.   However, Grace has

14   rejected our every proposal.   And we now are, unfortunately, in

15   a position where we have a state court and Mississippi law that

16   requires us to prepare for trial.   And in the absence of any

17   accommodations by Grace, we are forced to do just that.

18         MS. JONES:   Your Honor, it's probably more of a level

19   of detail than we need to get into, but just for the record I

20   want to make clear that we have not rejected every proposal.

21   Indeed, we sit here before this Court with a consent order that

22   we've actually all tried to agree to and unfortunately just

23   could not get it entered by the state court judge.   So I think

24   that's a little bit of an unfair characterization.   But it's

25   probably a level of detail we don't need to get into.

Jones/Argument                    18

1        Your Honor, I appreciate the time that the Court's

2   trying to give us today.  I don't know, Your Honor, if there's

3   any other avenue in which we can approach you with respect to

4   this.  We are just very concerned not only about the time and

5   the attention that this one deposition will take, but as

6   you've just heard RJR's counsel just say, this is going to be

7   an ongoing effort on their part and I think a strong

8   distraction to the efforts of this case.  I appreciate Your

9   Honor's comments that Grace started this, but, Your Honor, as

10  Mr. Carickhoff said, this is one that had to be done to

11  preserve the statute.  And also, we're talking about several

12  years ago, long before Grace realized it would need to file

13  bankruptcy.

14        THE COURT:  There are risks in litigation.  That's

15  just the way it is.  And if the state court is not going to

16  enter a stay for whatever reason, I don't think I have

17  jurisdiction to do it.  I don't see any basis for a TRO.  I

18  don't see any basis, at the moment, given the current state of

19  the law in which the debtor can succeed in the action.  But,

20  you know, if the debtor can succeed in the action, that's fine.

21  Maybe I'll be proven wrong.  But given the current state of the

22  law and the dismissals of similar cases, I don't see how

23  currently the law is going to provide the debtor a remedy.  So

24  I don't see a basis for a TRO under either some extension of

25  the Rooker-Feldman concept, i.e., that I'm not an appellate

1  court, and that you've already lost this issue in the state

2  court or based on the fact that the debtor is likely on the

3  merits of the action because I can't see how the debtor will

4  succeed on the merits of the action given the current state of

5  the law.  So --

6          MS. JONES:  Your Honor, one of the problems that we

7  have and why we had to bring this on for a TRO, as you saw in

8  our papers, as compared to preliminary injunction papers as we

9  had them initially prepared and filed with the Court, is that

10  RJR has refused to move the March 15 deposition, thus thwarting

11  our ability to be able to go to state court.  In light of Your

12  Honor not being willing to enter a TRO, you know, I don't know

13  if RJR is willing to change their position on that or not.  It

14  has put us in a very difficult position.

15          THE COURT:  Is Reynolds willing to postpone this

16  deposition for another week or so to give all of you, I guess,

17  an opportunity to try to get back into the state court on this

18  issue?

19          MR. WEAVER:  Certainly, Your Honor.  Curt Weaver for

20  Reynolds.  And I would also add that we have already continued

21  this deposition on three occasions.  It was originally

22  scheduled to proceed on January 27th.

23          THE COURT:  All right.  How much time do you need,

24  Ms. Jones?

25          MR. CARICKHOFF:  I would defer to the tobacco counsel

**J&J COURT TRANSCRIBERS, INC.**

1   on the phone, Your Honor, that know better how long procedures

2   take in the Mississippi State Court.

3          MR. WEAVER:  Well, counsel, this will be your motion,

4   so I can't give you advice on --

5          MR. CARICKHOFF:  No, no, I understand.  When I say

6   tobacco counsel I mean with respect to Grace and not the

7   tobacco companies' counsel.  I apologize if that was unclear.

8          MS. JONES:  And I don't know if there is a

9   representative of Grace tobacco counsel on the phone.

10          MR. CARICKHOFF:  Your Honor, we could work this out

11   with Mr. Weaver with respect to postponing it once I have an

12   opportunity to touch base with our tobacco counsel in the

13   Mississippi action.  And hopefully, we can circle back with Mr.

14   Weaver and work out that agreeable schedule.  And just to be

15   clear, Your Honor, we have been cooperating with Mr. Weaver.  I

16   appreciate them.  I just want to recognize that they have

17   agreed to postpone this on several occasions.  I've indicated

18   that in our pleadings that we've been trying to work with them

19   to come up with a solution that makes sense to stay this

20   action.  And I just want to note on the record that we do

21   appreciate their efforts.

22          THE COURT:  All right.  Well, I think that going

23   forward at this time is going to be costly, both for this

24   estate and for the tobacco companies.  When indeed the

25   Mississippi State Courts affirm the actions that have been

**J&J COURT TRANSCRIBERS, INC.**

1   taken below, then I suppose your next level is to attempt to

2   get the United States Supreme Court to hear this.  Whether it

3   will or not, I don't know.  Nonetheless, having said that, I

4   think it will be a lot more clear whether you do or don't have

5   a viable cause of action.   To minimize any consequences to

6   this estate, I certainly would appreciate the accommodation of

7   the state court in providing some postponement until the Owens

8   appeal is finished.  I do not, however, believe that it is my

9   prerogative to impose that, I can simply request.  And so I

10  will make that request formally.  And, counsel, you may convey

11  that request on my behalf.

12          MR. CARICKHOFF:  I appreciate that, Your Honor.

13          THE COURT:  Having said that, I am not going to grant

14  the TRO.  Is there a need to do a preliminary injunction

15  hearing?  I'm not sure at this point what more you need in this

16  adversary action that's pending before me.

17          MS. JONES:  Your Honor, I think -- this is Laura

18  Jones again.  I think a couple of things.  One, if off line

19  were able to get a feel for the state court through our tobacco

20  counsel in Mississippi and also working with Mr. Weaver,

21  hopefully we'd be able to go to the state court and try to seek

22  redress there.  I think I would like to reserve our right

23  though, Your Honor, to pursue on a preliminary injunction that

24  which we have not been able to do here on a TRO in case we're

25  not able to work matters out.  I'm just very concerned about

**J&J COURT TRANSCRIBERS, INC.**

1  the consequences to the estate if we're not able to reach an

2  agreement to collectively go to state court and try to get

3  those things stayed and to translate Your Honor's request that

4  it would be good for the estate as well.  And so, Your Honor,

5  if it should fall apart in Mississippi, I think I'd be hesitant

6  to give up our right to come before you on a PI at this point.

7  And so if we could keep it at least on the docket subject to us

8  coming back to you in the next couple days to calendar it, if

9  we need to?

10      THE COURT:  Well, would you like me just to put it on

11 for a status conference on the next omnibus date and you can

12 let me know at that time whether you need a hearing on the

13 preliminary injunction and we can work out a schedule if you

14 do?

15      MS. JONES:  That would be perfect, Your Honor.

16      THE COURT:  Was a summons issued and served?  Is the

17 complaint actually set for a pretrial yet?

18      MR. CARICKHOFF:  Well, the summons was issued and

19 served.  It has not been set for a pretrial yet.

20      THE COURT:  Okay.  Do you folks in Delaware have the

21 next omnibus dates?  I know I'm there March --

22      MR. CARICKHOFF:  March 18th --

23      THE COURT:  -- March 18th.

24      MR. CARICKHOFF:  -- is the next omnibus date.

25      THE COURT:  Yes.  Is that too soon for a status

1   report or is that when you would like to do it?  The next one

2   after that is either April 22nd or 23rd.  But that's here in

3   Pittsburgh.

4            MR. CARICKHOFF:  Sure.  No, it's April 22nd.  I'm

5   hopeful that we will be in a position to give Your Honor a

6   status report with respect to the preliminary injunction papers

7   at the March 18th hearing.  And if Your Honor would go ahead

8   and put that on the agenda with respect to that and hopefully

9   we can report a good result to Your Honor with respect to

10  reaching a resolution with the tobacco companies to stay the

11  matter in state court.

12           THE COURT:  What time is that on March 18th, Mr.

13  Carickhoff?

14           MR. CARICKHOFF:  I believe it's at 10 a.m. before

15  Your Honor.  I'm sorry.  It was moved to 1 p.m. --

16           THE COURT:  1 p.m.?

17           MR. CARICKHOFF:  -- March 18th at 1 p.m.

18           THE COURT:  Okay.  Yes.  I think I did that so that

19  we would have all afternoon in that case to deal with the case

20  management orders and go over the proofs of claim.  So I'll try

21  to put this first on the list so we can take care of that

22  because I expect to be spending a majority of that day, in fact

23  long into the evening, if necessary, on the case management

24  order.

25           MR. CARICKHOFF:  Okay.  Can I just make one request,

**J&J COURT TRANSCRIBERS, INC.**

Decision                                        24

1   Your Honor --

2          THE COURT:  Yes.

3          MR. CARICKHOFF:  -- to accommodate the tobacco

4   companies' counsel?  Because it is going to be a status

5   conference hearing, I know Your Honor has already agreed to

6   allow the proposed fee auditor, Warren Smith, to appear

7   telephonically.  Rather than have the tobacco companies'

8   counsel have to come up from their various states for a status

9   conference, would Your Honor allow them to participate

10  telephonically?

11         THE COURT:  As long as you make the arrangements

12  through Ms. Bello because it's very difficult there because of

13  the phone systems.  And I don't know which courtroom I'm in on

14  any given day, Mr. Carickhoff.  Some of them have phones; some

15  of them don't.

16         MR. CARICKHOFF:  That's fine, Your Honor.  We'll take

17  the lead in that and make sure we set up a dialing number for

18  the participants -- the tobacco counsel that wish to

19  participate in the status conference, as well as Mr. Smith, and

20  communicate that with Ms. Bello.

21         THE COURT:  All right.  So what we'll be doing that

22  day, so everyone knows in case they choose just to wait for an

23  order, is if there hasn't been some resolution of the request

24  for a continuance in the state court, then I understand the

25  debtor is going to ask me to schedule a preliminary hearing.

1   So I will try to get a date together to do it, but it will not

2   be that day.  This will just be a status conference.  It will

3   not be an evidentiary hearing.  And if the issue has been

4   resolved in the state court, then I take it you're simply going

5   to want to dismiss this adversary, is that right?

6           MR. CARICKHOFF:  To the extent that it has been

7   resolved in the state court, we will likely -- yes, Your Honor,

8   that's accurate.

9           THE COURT:  Okay.

10          MR. CARICKHOFF:  I don't know how certain we'll be as

11  of the eighteenth, whether or not it has been fully resolved in

12  the state court, but --

13          THE COURT:  Yes.

14          MR. CARICKHOFF:  -- hopefully we'll get it moving at

15  that point.

16          THE COURT:  Okay.  Yes.  I understand it may not be

17  resolved but that you may need another continuance.  But if you

18  think it's likely to be resolved, if you've got some motion

19  pending there, then I guess all we're going to do is continue

20  this for another status conference at a later date.

21          MR. CARICKHOFF:   That's correct, Your Honor.

22          THE COURT:  All right.  An order is entered denying

23  the request for a TRO.  The preliminary injunction is set for

24  status conference on March 18th at one and people may

25  participate by telephone.  Make the arrangements through Mr.

Decision                                                    26

1   Carickhoff.

2           MR. CARICKHOFF:  Your Honor, just again, I know that

3   the hearing on the eighteenth is expected to be a long one, as

4   Your Honor has indicated, but would it be possible to schedule

5   the status conference earlier so that we --

6           THE COURT:  I said --

7           MR. CARICKHOFF:  -- I'm sorry --

8           THE COURT:  -- I'd put it first on the list, Mr.

9   Carickhoff, at one o'clock.

10          MR. CARICKHOFF:  That would be great.

11          THE COURT:  Okay.  All right.  Anything more?

12          MR. CARICKHOFF:  I believe that's all we had for Your

13  Honor.

14          THE COURT:  Okay.  We're adjourned.  Thank you.

15          MR. CARICKHOFF:  Thank you for your time.

16          MR. WEAVER:   Thank you, Your Honor.

17                          * * * * *


                    C E R T I F I C A T E

        I certify that the foregoing is a correct transcript to

the best of my ability from the record of proceedings in the

above-entitled matter.

                                _____
                                **J&J COURT TRANSCRIBERS, INC.**
                                By:  PAMELA M. ARCE

DATED:    March 28, 2002

                    **J&J COURT TRANSCRIBERS, INC.**