IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

**DEBTORS' SUPPLEMENTAL FILING IN OPPOSITION TO EDYTHE KELLOGGS'
MOTION TO ANNUL THE AUTOMATIC STAY (DOCKET NO. 1651)**

**INTRODUCTION**

On or about February 7, 2002, Edythe Kellogg ("Kellogg") filed a motion (the "Motion") seeking relief from the automatic stay to pursue an action captioned Kellogg v. Wayne Lamar Nussbaum and W.R. Grace Co., Case No. 01AS07626, (Sup. Ct. Sacramento, CA) (the "Kellogg Action") for alleged personal injuries suffered when one of the Debtors' employees allegedly injured Kellogg in a motor vehicle accident. On or about March 11, 2002, the Debtors filed their opposition to the Motion (the "Debtors' Response"). At the hearing before this Court on March 18, 2002, the Court requested that the Debtors file this supplemental pleading describing (i) the nature of any deductible under the insurance policy that would cover any purported liability in the Kellogg Action and (ii) whether any assets of the Debtors' estates will be expended in the defense of the Kellogg Action.

**THE DEBTORS' INSURANCE POLICIES**

The Debtors maintain automobile liability insurance through an insurance contract (the "Policy") with certain affiliates of American International Group, Inc. (collectively,

the "Insurers").[1] The Policy provides for a deductible in the amount of $250,000.00 per accident (the "Deductible"). The Insurers have provided the Debtors with a Deductible Coverage Endorsement (the "Endorsement") which obligates the Insurers to make initial payment of all sums which the Insurers are obligated to pay up to the limit of payment under the Policy. The Endorsement requires the Debtors to reimburse the Insurers for the amount of any payment made by the Insurers under the Policy, up to the amount of the Deductible (the "Deductible Reimbursement"), within fifteen (15) days after receipt of an invoice for the Deductible Reimbursement from the Insurers.

The Debtors have obtained two letters of credit for the benefit of the Insurers with respect to the Policy (the "Letters of Credit"). The first letter of credit is issued by Bank of America in the amount of $2,190,000 (the "BofA Letter") and the second letter of credit is issued by Chase Manhattan Bank ("Chase") in the amount of $730,000 (the "Chase Letter"). The Chase Letter is secured by a cash collateral account pledged by the Debtors in 105% of the amount of the Chase Letter. Under the terms of the Letters of Credit, if the Debtors fail to make payment of the Deductible Reimbursement according to the terms of the Endorsement, the Insurers are entitled to draw on the Letters of Credit up to the amount of the Deductible Reimbursement.

Therefore, although the Insurers are required to pay the full amount of a judgment up to the limit of the Policy, the Debtors are responsible for payment of the Deductible Reimbursement. Thus, allowing the Kellogg Action to proceed could directly affect the assets of the Debtors' estates. In particular, if the Debtors pay the Deductible Reimbursement, the

---

[1] Pursuant to the Court's order at the March 18, 2002 hearing, a copy of the Policy has been provided to Kellogg.

Debtors would be expending the assets of their estates to allow one creditor to pursue a remedy at the expense of all other unsecured creditors. See *A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins & Co., Inc.)*, 788 F.2d 994, 998 (4th Cir. 1986). The Debtors, their estates and the Debtors' unsecured creditors should not be forced to subsidize Kellogg's efforts to augment her potential recovery over other unsecured creditors.

If the Debtors do not pay the Deductible Reimbursement within the allotted time period, the Insurers will draw down on either the BofA Letter or the Chase Letter. The Insurers have the option of which letter of credit to draw upon as there is not an agreement regarding the marshalling of claims between the two letters of credit. If the Insurers draw on the Chase Letter, Chase will be bestowed with a secured claim which heretofore did not exist. Moreover, not only will the secured claim be created, but such secured claim will be immediately satisfied by Chase's access to the Debtors' cash collateral. Thus, allowing the Kellogg Action to proceed does not merely substitute one unsecured creditor for another, but instead, may convert Kellogg's unsecured claim into a secured claim of Chase to the detriment of the Debtors, their estates and their unsecured creditors.

## CONCLUSION

For these reasons and the reasons set forth in Debtors' Response, the Motion for relief from the automatic stay should be denied.

Dated: April 12, 2002

        KIRKLAND & ELLIS
        James H.M. Sprayregen
        James W. Kapp III
        Christian J. Lane
        200 East Randolph Drive
        Chicago, Illinois 60601
        (312) 861-2000

        and

        PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

        _____
        Laura Davis Jones (#2436)
        David W. Carickhoff, Jr. (#3715)
        919 North Market Street, 16th Floor
        P.O. Box 8705
        Wilmington, Delaware 19899-8705 (Courier 19801)
        (302) 652-4100

        Co-Counsel for the Debtors and Debtors in Possession