Exhibit B

BMC Services Agreement

# AGREEMENT FOR SERVICES

This Agreement is entered into as of the 4th day of April, 2002 between W.R. Grace & Co., and each of the affiliated Debtors and Debtors in Possession under those certain jointly administered Chapter 11 cases pending in the District of Delaware under Case Number 01-01139(JKF) (the "Chapter 11 Cases") and Bankruptcy Management Corporation, a Washington corporation. Customer's headquarters are located at 7500 Grace Drive, Columbia, Maryland 21044, and its telephone number is (410) 531-4000. BMC's address is 6096 Upland Terrace South, Seattle, WA 98118, and its telephone number is (206) 725-5405.

The term "BMC" shall mean Bankruptcy Management Corporation and its servants, agents, employees, licensees and subcontractors, "Customer" shall mean W.R. Grace & Co., a Delaware corporation and its subsidiaries and respective servants, agents, employees, licensees and subcontractors.

## TERMS AND CONDITIONS

### I. SERVICES

BMC agrees to perform claims consulting services for Grace in connection with the Chapter 11 Cases, including: claims reconciliation and information management services; technical and document management support services; and noticing services, (collectively, "Services") as requested by Grace. The Services will be performed at Customer's or Kirkland & Ellis' ("K&E") request, in accordance with K&E's or its co-counsel's (Pachulski, Stang, Ziehl, Young &

1

Jones) (collectively "K&E") instructions and direction, and in compliance with the U.S. Bankruptcy Code (the "Code"), the Federal Rules of Bankruptcy Procedure and any Local Rules of the U.S. Bankruptcy Court District of Delaware (the "Rules"), and any court orders issued in the Chapter 11 Cases by the U.S. Bankruptcy Court District of Delaware (the "Court")(including any court order authorizing BMC's engagement as provided for herein). Without limiting the foregoing, BMC will: (1) assist Customer and K&E in their noticing, reconciliation and solicitation requirements as required under the Rules; (2) manage claims noticing process, including coordinating with assigned agents; (3) manage and perform claims reconciliation and resolve claims (to the extent requested and not duplicative of services being performed by others appointed in the Chapter 11 Cases); (5) act as information and tabulation agent in connection with the solicitation and confirmation of any proposed plan(s); (6) prepare reports, exhibits and schedules of information for use by the Customer or to be delivered to the Court, the Clerk of the U.S. Bankruptcy Court, the Office of the U.S. Trustee, K&E or third parties; and (7) provide such other technical and document management services of a similar nature requested by Customer or K&E.

2

II. **TERM**

The services rendered by BMC pursuant to this Agreement will commence on the date first set forth above or upon the entry of a final order in the Chapter 11 Cases approving the terms hereof, whichever is later, and will continue until the Agreement is terminated as set forth in Paragraph IX below.

III. **TECHNOLOGY SUPPORT**

BMC agrees to: provide computer software support; to use its best efforts to educate and train employees and agents of Customer in the use of the support software; provide BMC's standard reports; provide consulting and programming support for Customer- requested reports, program modifications, data base modification, and/or other features.

IV. **PRICES, CHARGES AND PAYMENT**

A. BMC agrees to charge, and the Debtor agrees to pay, BMC's standard prices for its services, expenses and supplies at the rates or prices in effect on the day such services and/or supplies are provided to the Customer, in accordance with the Fee Schedule annexed hereto as Schedule 1. All such costs being an administrative cost in the Chapter 11 Cases (11 U.S.C. § 503).

3

B.    Notwithstanding paragraph IV.A., BMC agrees not to increase its prices, charges and rates for a period of one (1) year from the date of this Agreement except for any increases in postage or taxes imposed on BMC by virtue of this Agreement. (i.e., sales use and excise taxes, but not income taxes). BMC also agrees to provide thirty (30) days prior written notice to Debtor of any changes in BMC's prices for its services, expenses and supplies.

C.    Customer agrees to pay BMC for any necessarily-incurred and reasonable out-of-pocket expenses for transportation, lodging, meals and related items. Travel time shall be billed by BMC and paid by Customer at one-half of BMC's applicable hourly rate.

D.    In connection with mailing services, Customer agrees to prepay BMC estimated postage amounts with respect to each notice or shall authorize BMC to cause the courier's charges (such as UPS or FedEx) to be stated to and billed to Customer's own account with such courier. In lieu of prepayment, BMC may apply the retainer and any portion thereof referenced in Paragraph F below, as payment for such postage and courier costs at the time such costs are incurred and if so applied, shall be replenished within 10 days as provided in Paragraph IV.F. hereof.

4

E.  BMC agrees to submit its invoice for fees and expenses to Customer and or K&E within fifteen (15) business days of the end of each calendar month. Customer agrees that the amount invoiced is due and payable upon its receipt of the invoice. If any amount is unpaid as of thirty (30) days from the receipt of the invoice, Customer further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) interest on the amount unpaid, accruing from the invoice date. If payment is not timely made as provided herein, BMC may, without obtaining any further order of the Court, cease performing services until such sum is paid and reasonable assurance of future performance is provided. In the case of a dispute in the invoice amount, notice shall be given to BMC within fifteen (15) business days of receipt of the invoice by Customer. Interest shall not accrue on any amounts in dispute. The balance of the invoice amount is due and payable in the normal course. In addition to all other charges provided for herein, Customer shall pay BMC all actual charges related to or arising out of or as a result of any Customer's error or omission. Such charges shall include but are not limited to, reruns and additional clerical work, plus expenses related thereto (i.e., telephone, overtime, travel etc.) and chargeable at the rates set forth on Schedule 1 hereto. Any time for delivery or performance shall be extended by acts or delays caused by Customer.

5

F.  Customer will provide BMC with an advance payment retainer in the amount of two hundred and fifty thousand dollars ($250,000) within three (3) business days after entry of the Final Order referred to in paragraph XVII. The retainer or any portion thereof may be applied as set forth in Paragraph D above to payment for postage and courier charges, provided however, that Customer shall keep the retainer "evergreen" by making monthly payments to BMC within ten (10) days of the end of the applicable calendar month, in the amount necessary to restore the balance of the retainer to $250,000. In addition, the retainer will be applied to BMC's final bill for services and expenses rendered or incurred on behalf of Customer. After application to the final bill, the unapplied portion of the retainer (if any) shall be refunded to Customer. Wire transfer information for transmission of the retainer is as follows: Wells Fargo Wire transfer routing # or ABA - 121000248 to Wells Fargo 1130 Bellevue Way N.E., Bellevue, WA 98004, credit to Account #0033022633 Bankruptcy Management Corporation.

V.  **WARRANTY**

A.  BMC warrants to Customer that:

(1)  At the date first set forth above, BMC has considerable experience in providing claims consulting services for large corporate reorganizations similar to the Chapter 11 Cases;

6

(2) With the exception of Court approval in the Chapter 11 Cases, BMC has, at the date first set forth above, all necessary rights to enter into this Agreement without violating any other agreement or commitment to which it is subject;

(3) BMC will use its best and commercially reasonable efforts, during the term of this Agreement, to provide timely, accurate and professional services to Customer and will exercise the same degree of skill and care in providing these services as any similar claims consultant engaged to provide such services in connection with a comparable Chapter 11 reorganization;

(4) BMC has no knowledge that the software programs furnished by BMC for use under this Agreement infringe as of the date first above written or will infringe during the term of this Agreement (a) any third party patent, copyright or trade secret or (b) any ownership interests of a third party in or to such software programs; and

(5) BMC has, as of the date first above written, and will during the term of this Agreement, have sufficient management personnel, staff, equipment and software programs to perform all tasks within

7

        the scope of this Agreement in a professional and reasonably timely manner.

B.    The BMC warranty under Clause V.A.(3) of this Agreement with respect to reports shall be limited to the re-running, at its expense, of any inaccurate reports, provided that such inaccuracies were caused as a result of BMC performance hereunder and provided further that BMC shall receive written notice of such inaccuracies within a reasonable time after delivery of such report but in no event longer than sixty (60) days. If BMC does not receive such notice within the prescribed time limit Customer shall be liable for all charges. Customer agrees that the foregoing constitutes the exclusive remedy available with respect to any inaccurate reports generated by BMC. BMC's liability is further limited as provided in Paragraph XI hereof.

C.    Customer agrees that, except as set forth in Paragraphs V.A. and V.B. hereof, BMC makes no representations or warranties, express or implied, including without limitations, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

8

## VI. RIGHTS OF OWNERSHIP

A. The parties understand that the software programs and other similar proprietary materials furnished by BMC pursuant to this Agreement and/or developed during the course of this Agreement by BMC are the sole property of BMC and Customer shall not acquire any rights therein. The term "program" is used in its most generic and all encompassing meaning and shall include, without limitation, all data processing programs, specifications, applications, routines, subroutines, procedural manuals, and documentation. Customer agrees not to copy or permit others to copy for unauthorized use the source code from the support software or any other programs or similar proprietary materials furnished pursuant to this Agreement.

B. Customer further agrees that any ideas, concepts, know-how or techniques relating to data processing or BMC's performance of its services developed during the course of its Agreement by BMC shall be exclusive property of BMC.

C. Upon Customer's request, at any time or times while this Agreement is in effect, BMC shall immediately deliver to Customer at Customer's sole expense, any or all of the non-proprietary data, information and records held or controlled by BMC pursuant to this Agreement, in the form

requested by Customer. Notwithstanding anything to the contrary in this Agreement, all information, data and records, in whatever form existing, provided to BMC by Customer or developed by BMC for Customer under this Agreement, shall be Customer's sole property, it being understood that neither party asserts rights of ownership in the official claims register or materials filed with BMC as an agent of the court.

## VII.   NON-SOLICITATION

Customer agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain staff of BMC during the term of this Agreement, nor for a period of twelve (12) months after termination of this Agreement unless mutually agreed upon by both parties.

## VIII.   CONFIDENTIALITY

A.  BMC agrees to, and shall cause its servants, agents, employees, licensees, and subcontractors to, safeguard and keep confidential to the same extent BMC safeguards its own data, all data, records, information and communications of any sort or form, regardless of whether written, oral, visual or otherwise recorded or transmitted, with respect to Customer, but excluding such data, records, information and communications that exist in the public domain (collectively the "Confidential Information"). BMC

10

will use the Confidential Information only for the benefit of customer in connection with the provision of services under this Agreement. Customer agrees to, and will cause its servants, agents, employees, licensees, and subcontractors to, keep all information with respect to BMC's system, procedures and software confidential; provided, however, that if either party is required to produce any such information by order of any court, governmental agency or other regulatory body, it may unless otherwise ordered, upon ten (10) business days' written notice to the other party, release the required information. The obligations set forth in this paragraph shall survive termination of this Agreement.

B.  Customer acknowledges that BMC may solicit and be engaged by competitors of Customer to perform similar services. BMC agrees that in the event it is engaged to provide services to any of Customer's principal competitors during the course of this engagement, BMC will establish a wall of confidentiality between this engagement and those engagements and the individuals who work on them.

## IX. TERMINATION

A. This Agreement shall remain in force until terminated, subject to Court approval, by Customer on one (1) month's prior written notice received by BMC, or, by BMC upon two (2) months' prior written notice received by the Customer.

B. In the event that this contract is terminated, regardless of the reason for such termination, BMC shall cooperate with Customer to orderly transfer to Customer or its designee (or destroy, at Customer's direction) data, records and information in its possession or control and to effect an orderly transition of record-keeping functions. BMC shall provide all necessary staff, services and assistance required for an orderly transfer and transition. Customer agrees to pay for such services in accordance with BMC's then existing prices for such services as per Schedule 1 hereto.

C. BMC may cease performing services hereunder if Customer fails to timely make the payments required hereunder or otherwise materially breaches the terms hereof. Provided however, for any non-monetary breach, BMC will give written notice thereof and Customer shall have ten (10) calendar days to cure or arrange for cure satisfactory to BMC. Any irreconcilable

12

dispute hereunder shall be promptly presented by counsel for Customer to The Bankruptcy Court for resolution.

X.  **SYSTEM IMPROVEMENTS**

BMC's policy is to provide continuous improvements in the quality of service to the Customer. BMC, therefore, reserves the right to make changes in operation procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the BMC data center serving the Customer.

XI. **LIMITATIONS OF LIABILITY AND INDEMNIFICATION**

Customer shall indemnify and hold BMC, its officers, employees and agents harmless against any losses, claims, damages, judgments, liabilities and expense (including reasonable counsel fees and expenses) resulting from action taken or permitted by BMC in good faith with due care and without gross negligence or willful misconduct in reliance upon instructions or orders received from Customer or K&E as to anything arising in connection with its performance under this Agreement. BMC shall have no liability to Customer, K&E or any third party with respect to any performance or non performance in its obligations hereunder, provided such services were performed in good faith and without gross negligence or willful or wanton misconduct. The foregoing sentences of this Paragraph XI shall not apply to losses, claims, damages, judgments, liabilities and expense relating to or arising out of BMC's breach of any of the warranties

13

provided in Paragraph V of this Agreement. In no event shall BMC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

XII. **NOTICES**

All notices in connection with this Agreement shall be given or made upon the respective parties in writing by facsimile or overnight courier and shall be deemed as given, if by facsimile, on the business day immediately following confirmed transmission, or if by courier, on the day it is delivered by such courier to the appropriate address set forth below:

| | |
|---|---|
| Bankruptcy Management Corporation | W. R. Grace & Co. |
| 6096 Upland Terrace | 7500 Grace Drive |
| Seattle, WA 98118 | Columbia, Maryland 21044 |
| Attn: Tinamarie Feil | Attn: David Siegel |
| Fax: (206) 374-2727 | Senior Vice President, General Counsel and Chief Restructuring Officer |
| | Fax: (410) 531-4545 |

or to such other address as the party to receive the notice or request so designates by written notice to the other.

14

XIII. APPLICABLE LAW

This agreement shall be construed in accordance with the laws of the State of Washington and may be modified only by a written instrument duly executed by an authorized representative of Customer and an officer of BMC. In the event of a conflict between Washington Law and the Code, Rules or any order, judgment or other ruling by the Court, the Code, Rules or ruling of the Court shall control.

XIV. ENTIRE AGREEMENT/MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings and other agreements, oral and written between the parties relating to the subject matter of this Agreement. The Agreement may not be modified or altered by written instrument duly executed by both parties. Customer represents that it has the authority to enter into this Agreement, subject to bankruptcy court approval, and the Agreement is non-dischargeable under any applicable statute or law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

XV. ASSIGNMENT

15

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned by BMC to a wholly owned subsidiary of BMC as its successor if any.

## XVI. DEFAULT

If Customer materially breaches this Agreement, BMC may recover all damages proximately caused thereby and as set forth in Paragraph IX hereof may cease providing services hereunder without obtaining any further Order of court. BMC shall recover all expenses including its reasonable attorneys fees and costs incurred in enforcing this Agreement, whether or not litigation is necessary.

## XVII. COURT APPROVAL

This Agreement shall only be effective upon the obtaining of a Final Order from the Court in Customer's Chapter 11 Cases.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

| **Bankruptcy Management Corporation** | **W.R. Grace & Co.** |
|---|---|
| By: /s/ Sean Allen | By: /s/ David B. Siegel |
| Name: Sean Allen | Name: David B. Siegel |
| Title: President | Title: Senior Vice President, General Counsel and Chief Restructuring Officer |
| Date: April 4, 2002 | Date: April 5, 2002 |

Approved:

Kirkland & Ellis

By: _____

Attorneys For: _____

17

# SCHEDULE 1

## FEE STRUCTURE

A.     Engagement Support

| | |
|---|---|
| Consulting Services | $125-$275 /hour |
| Case Support Services | $75-175 /hour |
| Technology Services | $90-175 /hour |
| Information Services | $45-85 /hour |

B.     Service and Deliverable Fees

### Report Processing

| | |
|---|---|
| Claim Register and Standard Reports | $50.00 per request |
| Copying | $0.15 per page |
| Printing (variable data printing) | $0.30 per page |
| Imaging and Storage | $0.15-20 per image |
| Faxing | $0.75 per page |

### Print Mail and Noticing Services

| | |
|---|---|
| Electronic noticing (no attachment) | $150.00 per 1000 |
| Mail File Preparation | Hourly/Case Support Servics |
| Document Production Setup | Hourly/Information Services |
| Return Mail Processing | Hourly/Information Services |
| Finishing (Fold, Stuff, Label, Envelope) | Based on requirements |
| Postage | At cost |
| Legal Notice Publication | Quote |

### Balloting/Distribution

| | |
|---|---|
| Ballot Tabulation (BMC Custom) | $1.50 each |
| Check Issuance | $1.75 each |

### BMC Claims Data Management Systems

| | |
|---|---|
| Per Debtor/Per Month* | $250.00 |
| Per User/Per Month | $35.00 |
| Data Storage | Based on requirements |

BMC will bill monthly for actual services plus out-of-pocket expenses.
* Based on case requirements and due to the number of debtors,
BMC will evaluate a reduced monthly charge.