# EXHIBIT "A"

Form 665

# UNION TANK CAR COMPANY

## CAR SERVICE AGREEMENT

Effective this _____ninth_____ day of _____March, 1977_____ UNION TANK CAR COMPANY, a ~~Delaware~~ Corporation, Chicago, Illinois, (hereinafter referred to as LESSOR), and _W. R. GRACE & CO., CONSTRUCTION PRODUCTS DIVISION, (CAMBRIDGE, MASSACHUSETTS), a Connecticut Corporation.........._ , (hereinafter referred to as LESSEE), agree as follows:

1. LESSOR will lease to LESSEE tank cars at rental rates and for rental periods which shall be mutually agreed between the parties and shown on riders to be added from time to time to this Agreement. The rental charges shall be the rental rates less the mileage credits as hereinafter provided. LESSEE will give LESSOR sufficient advance notice of its requirements for cars to enable LESSOR to provide for such requirements and LESSOR will use reasonable efforts to do so. All cars leased pursuant to such riders are subject to the terms of this Agreement.

2. Except as otherwise provided in the riders, LESSEE will pay LESSOR for the use of said cars such rental charges from the date each car is forwarded to LESSEE until the date such car is released by LESSEE. Bills for rental charges will be rendered monthly and are payable within ten (10) days thereafter.

3. Any and all mileage allowed by the railroads on cars covered by this Agreement will be collected and retained by LESSOR subject to LESSOR's obligation to allow credits therefrom to LESSEE as herein provided. Credits will be computed at allowance rates established by the railroads and in effect on the effective date of this agreement based on short line distances published in the mileage tariffs of each railroad in the route of movement for which railroads actually make mileage payments, as follows:

a) For railroads allowing equal payments for each loaded and empty mile

Credits will be based on double the loaded miles.

b) For railroads allowing for loaded miles only

Credits will be based on loaded miles only.

c) For railroads allowing for loaded miles only and assessing a charge for empty miles

Credits will be based on the loaded miles only at a rate for each such loaded mile equal to the published loaded allowance minus the published empty charge.

The credits, for cars covered by this Agreement, will first be applied against rental rates for the entire year in which such credits accrued; and the excess credits, if any, will then be applied against rental rates for each of the two preceding years to the extent not previously covered by credits, beginning with the earlier of such years. Any remaining credits will then be applied consecutively against rental rates for each of the two succeeding years, but only after allowance has first been made for credits which are applicable as current credits for each of such years. LESSOR will make payment to LESSEE of any amounts due hereunder as soon as practicable. All of a particular year's credits unused after application to the current year and to the two preceding and two succeeding years will be canceled. Upon termination of this Agreement, any unused credits will be canceled. Wherever the word "year" is used in this Clause 3 it means calendar year. If at any time after the effective date of this Agreement the mileage allowance rates or the method of computing mileage allowances established by the railroads shall be changed, this Clause 3 shall be canceled and revised.

4. LESSEE shall operate the cars covered by this Agreement in a manner which will prevent accumulation of empty mileage on any railroad in excess of loaded mileage on such railroad.

5. LESSEE will report promptly to LESSOR the point and date of shipment, routing and destination of each loaded tank car movement and any other information that may be reasonably required.

6. Any demurrage, track storage or detention charge imposed in connection with any car covered by this Agreement shall be the liability of LESSEE or consignee. LESSEE's tracks shall be considered home tracks for the cars covered by this Agreement and LESSOR shall have the use thereof, without charge. LESSEE will perform and/or pay for all switching of such cars within or about its plant. Whenever any of LESSEE's plants may be located on or served by a so-called industrial railroad, LESSEE shall be liable for all costs incidental to the operation of LESSOR's cars on or moving over such railroad.

7. Any cleaning of cars that may be necessary to prepare them for shipment of commodities by or for LESSEE, shall be done at LESSEE's expense and responsibility unless otherwise agreed.

8. LESSEE shall not loan, let or sublet cars covered by this Agreement without the written consent of LESSOR, except that LESSEE may loan, let, or sublet cars to its subsidiary or affiliated companies, or to its consignees or suppliers in connection with the handling of commodities sold, bought, or supplied for account of LESSEE and transported therein. No lettering or marking of any kind shall be placed upon said cars by LESSEE without written permission of LESSOR, provided, however, LESSEE may cause said cars to be stencilled, boarded or placarded with letters not to exceed two inches (2") in height to indicate to whom the cars are leased.

9. Except as otherwise provided in this Agreement, LESSOR is responsible for maintaining and repairing the cars furnished hereunder in accordance with the requirements of railroad companies and the Code of Rules of the Association of American Railroads, the Regulations of the Interstate Commerce Commission and the rules and regulations of other Federal and State Authorities having jurisdiction. LESSOR shall have no such responsibility until informed of the need for such maintenance or repair.

10. It is the duty of LESSEE to know that cars leased hereunder are in proper condition for loading and shipment, except for those responsibilities which, under the law, have been assumed by the railroads.

11. If any of the cars leased hereunder are reported as bad order and require repairs, other than repairs made by the railroads, rental charges will be handled as follows:

a) Empty cars located at loading points—rental charges will cease upon receipt of such bad order notice by LESSOR. After car has been repaired, rental charges will resume on the date car is made available to LESSEE.

b) Cars moving from unloading points to shops located in or near the normal route of the empty return—rental charges will cease on the date of arrival in the shop area. Cars moving from unloading points to shops not in the normal route of the empty return—rental will cease on the date released at the unloading point. In both cases, rental charges will resume on the date car is forwarded from shops to LESSEE.

12. LESSEE shall be liable for loss of or damage to any car, or parts thereof, if such loss or damage is due to the negligence of LESSEE or its sublessee, consignee or consignor.

13. LESSEE shall be liable for damage to any car covered by this Agreement, whether or not due to LESSEE's negligence, if caused by the commodity loaded therein. LESSEE will use said cars for the transportation and handling of commodities which will not injure or damage the cars, unless otherwise specified in a rider, and any car returned to LESSOR must be in the same condition in which it was furnished, excepting for ordinary wear and tear.

14. LESSOR shall not be liable for any loss or damage to commodities loaded in its cars.

15. If a car covered by this Agreement be destroyed, rental therefor will cease on the date of such destruction and LESSOR shall not be obligated to furnish and LESSEE shall not be obligated to accept a replacement. Terms governing a replacement will be subject to mutual agreement at the time.

16. LESSOR will pay all property taxes properly imposed on or measured by said cars or the mileage thereon and file all property tax reports relating thereto, but LESSEE will be liable for all sales and use taxes.

17. This Agreement will be effective as dated and will expire upon completion of the leasing arrangement shown on attached riders of the last car or cars covered hereunder.

UNION TANK CAR COMPANY (LESSOR)

By _____
Vice President-Sales Services

W. R. GRACE & CO.,
CONSTRUCTION PRODUCTS DIVISION (LESSEE)

By _____
Vice President
Finance and Administration

ADDENDUM NUMBER 1 ATTACHED HERETO IS A PART OF THIS AGREEMENT

ADDENDUM NO. 1 TO
CAR SERVICE AGREEMENT
───────────────────

This Addendum constitutes a part of the Car Service Agreement to which this Addendum is attached. As used herein, the term "Lease" refers to said Car Service Agreement and all riders and addenda which may from time to time form a part thereof.

1. **Subordination.** The Agreement and all rights of Lessee (and of any persons claiming or who may hereafter claim under or through Lessee) under the Agreement, including any purchase option or options therein provided for, are hereby made subject and subordinate to any chattel mortgage or conditional sale agreement heretofore or hereafter placed on the cars leased or to be leased under the Agreement and to any equipment trust agreement heretofore or hereafter established with respect to any cars leased or to be leased hereunder and to all the rights of the trustee under any such equipment trust agreement. Any lease, sublease, or loan of cars made by Lessee and otherwise permitted by Section 8 of the Agreement shall be expressly made subject to the above subordination. Lessee represents that all such leases, subleases or loans of cars now outstanding are terminable at will.

2. **Area of Use.** The cars now and hereafter leased under the Agreement shall be used only in the United States of America, Canada and Mexico.

3. **Default.** If (a) Lessee defaults in the payment when due of any rental or other sum required to be paid by it under the Agreement and such default continues for five (5) days, or (b) Lessee defaults in the performance or observance of any other term or condition to be performed or observed by it under the Agreement and such default continues for (15) days after Lessor shall have mailed written notice to Lessee specifying such default and demanding the same to be remedied, or (c) any bankruptcy, reorganization, arrangement, insolvency, receivership or similar proceeding is instituted by or against Lessee or substantially all of its property (and, in the case of a proceeding instituted against Lessee and not consented to by Lessee, such proceeding shall remain undischarged or unstayed for thirty (30) days), then Lessor shall have the right, at its option, to do any one or more of the following: (i) proceed by appropriate court action to enforce performance by Lessee of the terms of the Agreement and to recover damages for the breach thereof, (ii) terminate the Agreement with respect to any or all of the cars covered thereby and Lessee's rights thereunder with respect to such cars, and/or (iii) immediately take possession of the cars covered thereby without demand or notice and without court order or other process of law (Lessee hereby waiving all damages occasioned by such taking of possession).

If Lessor elects to proceed under clause (iii) above, Lessor may, at its option, lease, sell or otherwise dispose of the cars for such consideration and upon such terms and conditions as Lessor may deem appropriate. Lessee shall pay Lessor on demand (a) the deficiency, if any, during the balance of the term of the Agreement between the rental provided for under the Agreement and any consideration paid by others with respect to the rental or purchase of the cars, (b) all costs and expenses of repossession, (c) cleaning charges and charges for repairing damage to the cars which is Lessee's responsibility under the Agreement, and (d) any other losses, damages, costs and expenses arising from Lessee's default.

Any rental or other sum payable to Lessor under the Agreement and not paid when due shall thereafter bear interest at a rate of 10% per annum.

The remedies provided herein are not exclusive but are cumulative and in addition to all other remedies existing at law or in equity. Lessee shall pay Lessor on demand all of Lessor's costs and expenses arising from Lessee's default, including reasonable attorneys' fees and costs of collection. No termination, repossession or other act of Lessor after default shall relieve Lessee from any of its aforesaid obligations. No waiver of any default shall be effective unless in writing signed by Lessor.

Cars are not to be used in unit train or any other designated high mileage operation without consent of Lessor. Each car is limited to a maximum of 35,000 miles (loaded and empty) per calendar year, and if this maximum annual mileage is exceeded, a mileage charge, in addition to monthly rental, will be assessed for all miles in excess of 35,000. Such charge will be determined by Lessor.

The installation, maintenance and removal of interior coatings or linings shall be at Lessee's expense and car service charges for cars shall not cease during any such operation. When any car is released to Lessor with a coating or lining therein, such coating or lining, if serviceable to Lessor, becomes the property of Lessor without cost. If Lessor deems it necessary, at time of release, to remove coating or lining from car, the cost of removal will be for Lessee's account and car service charges for car will continue until coating or lining is removed therefrom, subject to a maximum charge of thirty (30) days after arrival of car at the removal point.

If any time after the effective date of this rider modifications to cars are required by any Government regulation or by any group or committee exercising authority over tank car design, it is agreed between Lessor and Lessee that the Lessor may, at its option, perform all modifications so ordered, and that the cost of those modifications shall be reflected in an increase in the monthly rental rate per car, beginning as to any car leased hereunder on the first day of the month in the month immediately following the month in which a modification is completed. The sum to be added to the monthly rental rate for modification with a useful life equal to that of the car itself will be 1.45% of the cost of the modification, and the sum to be added to the monthly rental rate for a modification with a useful life less than that of the car will be an amount which will recover the cost of the modification, including the implicit cost of money at 10% per annum, over the estimated life such a modification.

Lessee at its expense, will make tank cars clean and free from all commodity prior to release to Lessor.

The minimum rental period for the cars leased hereunder shall be ___fifty-nine (59)___

months, and the cars will continue under lease thereafter for further successive ___fifty-nine (59)___ month terms, at the same rate and under the same conditions, unless notice, in writing, requesting cancelation shall be given by either party to the other at least sixty (60) days prior to the expiration of the initial term or any successive term for cars covered by this rider. Thereafter, this rider will terminate automatically upon the date of release of the last car covered by this rider.

Effective Riders __40 through 73,75,76,77__    Cancels Rider No. _____

Union Tank Car Company (Lessor)

By ____K.P. Jines____
Vice President-Fleet Management

W. R. GRACE & CO., CONSTRUCTION PRODUCTS DIVISION _____(Lessee)

By _____
D. L. Wightman, Vice President Administration