IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**JOINT REPLY OF THE DEBTORS AND PRICEWATERHOUSECOOPERS LLP TO THE UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' AMENDED APPLICATION FOR ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF PRICEWATERHOUSECOOPERS LLP AS AUDITORS AND TAX CONSULTANTS *NUNC PRO TUNC* TO NOVEMBER 11, 2001 (Re: Docket No. 1934)**

## I.    INTRODUCTION

PricewaterhouseCoopers LLP ("PwC") is the Debtors' independent auditor and

accountant.  Desiring PwC both to provide bankruptcy-related services and to continue to

provide routine auditing and accounting services in the ordinary course of business, the Debtors

submitted an application to the court on January 10, 2002 (the "Original Application").  For

convenience, the Debtors sought in the same Original Application both approval for payment of

professional fees and expenses incurred by PwC in providing bankruptcy-related services, and

authorization to retain a separate group of PwC accountants in the ordinary course of business.[1]

The Debtors sought to retain PwC in the ordinary course under Section 363, as

opposed to an order authorizing PwC's retention under Section 327, for two reasons.  First,

seeking ordinary course retention allowed the Debtors and PwC to avoid any issues that might

arise relating to the liquidation of one of the Debtors' foreign subsidiaries.  Specifically, by way

of an agreement dated February 9, 1998, W. R. Grace & Co.-Conn. ("Grace Conn") agreed,

---

[1] The PwC bankruptcy-related services are not at issue here.  The routine audit and
accounting services are the sole focus of the present matter.

1

among other things, to indemnify Colin Graham Bird and Anthony Victor Lomas, both partners

in PwC, against certain potential claims that might be brought against them in connection with

the voluntary liquidation of Chasmbridge Limited (the "Chasmbridge Liquidation"), a United

Kingdom subsidiary of Grace-Conn.  As ordinary course retention under Section 363 does not

implicate the disinterestedness requirement of Section 327(a), there would be no need to engage

in unnecessary litigation before this Court over PwC's role in the Chasmbridge Liquidation.

Second, Section 327(a) retention was not required.  As PwC was not involved in

the administration of the bankruptcy estate with respect to the services at issue, PwC was not

acting as a "professional person" within the meaning of Section 327(a) in providing these

services.  As the requirements of Section 327(a) did not apply, the Debtors acted appropriately in

seeking ordinary course retention under Section 363.  Section 327(a) retention simply was not

required.  By requesting ordinary course retention, the Debtors preserved judicial resources by

avoiding needless litigation over potential issues, the resolution of which was unnecessary under

Section 363.

As the bankruptcy proceedings continued, PwC and the Debtors engaged in

ongoing and extensive negotiations to resolve any issues that might arise in connection with the

Chasmbridge Liquidation.[2]  Both parties contemplated that this potential issue would be resolved

quickly, so PwC continued to do what it has done for over one hundred years: provide routine

auditing and accounting services to the Debtors.  PwC provided services in the good faith belief

that ordinary course retention was appropriate, and thus declined to seek Section 327(a)

retention.

---

[2] These negotiations were brought to a successful conclusion recently, with PwC agreeing
to waive any and all claims for indemnity against the Debtors relating to the Chasmbridge

On January 30, 2002, the United States Trustee (the "U.S. Trustee") filed its
objection to the Debtors' Application (the "Original Objection"). In its Original Objection, the
U.S. Trustee argued that PwC was a professional person whose retention was required under
Section 327(a). See Original Objection at ¶¶ 17-27. Following PwC's waiver of any potential
claims relating to the Chasmbridge Liquidation and in response to the Original Objection, on
April 15, 2002, the Debtors voluntarily withdrew, without prejudice, the Original Application
and submitted an amended application seeking authorization, pursuant to Sections 327(a) and
328, to employ and retain PwC *nunc pro tunc* to November 11, 2001 (the "Amended
Application"). The Debtors did not, as the U.S. Trustee suggests, withdraw the Original
Application because it was "baseless." See United States Trustee's Objection to Debtors'
Amended Application (the "Amended Objection") at ¶15. To the contrary, the Debtors withdrew
the Original Application in an attempt to accommodate concerns raised by the U.S. Trustee. See
Amended Application at ¶4 ("The Debtors believe this Amended Application should resolve the
Trustee's concerns about retaining PwC on a going forward basis in their Chapter 11 Cases.").
Through its Amended Application, the Debtors sought to do exactly what the U.S. Trustee
asserted needed to be done in the Original Objection: seek retention under Section 327(a).[3]

As the Debtors were entitled to retain PwC in the ordinary course of business
under Section 363, filing the Amended Application was not necessary. The Debtors did so in a
good faith effort to foster a spirit of cooperation with the U.S. Trustee and to resolve its concerns

---

Liquidation.
[3] Through its Amended Application, the Debtors did not intend, nor do they now
intend, to express agreement with the U.S. Trustee's view that Section 327(a) retention
was required for the services at issue. The Debtors amended their Original Application
out of respect for the U.S. Trustee's concerns and out of a desire to facilitate the
resolution of this matter.

in this matter. Acting to preserve judicial resources and to avoid needless litigation, the Debtors filed their Amended Application. Despite the Debtors' efforts to reach a mutually agreeable resolution, the U.S. Trustee filed the Amended Objection to the Amended Application on May 3, 2002.

The U.S. Trustee does not object to an order authorizing the retention of PwC on a going forward basis as of April 15, 2002. See Amended Objection at ¶ 16. Thus, the only remaining point of contention is the Debtors' authority to pay PwC for routine accounting and audit services rendered between November 11, 2001 and January 10, 2002.[4] At no time has the U.S. Trustee suggested that PwC's fees were excessive or that the services they performed were not necessary. The U.S. Trustee has elevated form over substance and has forced the Debtors to fight over the appropriate legal mechanism by which to award fees that were necessarily incurred in the ordinary course of the Debtors' business. This Court should bring closure to this matter by entering an order granting the Amended Application.[5]

---

[4] It should be noted that, with respect to any claims the U.S. Trustee might make regarding any delay on the part of PwC in seeking *nunc pro tunc* approval, the Debtors made their Original Application back in January of 2002. Thus, only the period between November 11, 2001 and January 10, 2002 would be relevant to such a claim. Moreover, since the Debtors' application for *nunc pro tunc* approval was styled as an Amended Application, *nunc pro tunc* retention would relate back to the date of the filing of the Original Application. See, e.g. In re United Financial Corp., 241 B.R. 521, 526-27 (Bankr. Del. 1999) (Debtors filed application to retain Ernst & Young on June 29, 1999. Realizing that its original application would be disfavored under a subsequent decision rendered by the court in another case, the Debtors amended its application and sought *nunc pro tunc* approval to June 9, 1999. The court did not find extraordinary circumstances warranting *nunc pro tunc* approval, but nonetheless found that since Ernst & Young "is eligible for retention, albeit under terms different from what it initially sought, we conclude that its retention can be 'retroactive' to the date it first sought approval" and ordered the retention of Ernst & Young effective June 28, 1999).

[5] In the event the Court finds that *nunc pro tunc* approval is not appropriate, the Debtors reassert their right to pay PwC for these services pursuant to Section 363.

## II.    ARGUMENT

The Third Circuit adopted a two-prong test to determine the propriety of *nunc pro tunc* approval in F/S Airlease II, Inc. v. Simon, 844 F.2d 99 (3d Cir. 1988). Under F/S Airlease, *nunc pro tunc* approval is appropriate if the applicant could have been retained and paid by the estate initially; and if the court determines that the particular circumstances are so extraordinary that retroactive approval is warranted. Id. at 105. A decision to grant *nunc pro tunc* approval is committed to the discretion of the bankruptcy court. Id. at 103.

Here, the Debtors sought to retain PwC not as a "professional" within the meaning of Section 327(a), but in the ordinary course of business. Ordinary course retention was appropriate under the facts of this case. Thus, the Debtors have complied with the spirit of the first prong of the F/S Airlease test as PwC's retention has always been proper under Section 363.[6] Moreover, this case presents the sort of exceptional circumstances under which *nunc pro tunc* approval is warranted.

### A.    The Debtors Are Permitted To Retain PwC In The Ordinary Course Of Business

The first prong of the F/S Airlease test is designed to ensure that persons whose retention would not have been proper at the outset are not compensated to the detriment of the estate and other creditors. As PwC's retention has always been proper in this case, authorizing *nunc pro tunc* approval would not implicate the concerns meant to be addressed by the first prong of the

---

[6] It should be noted that, but for the Debtors' desire to cooperate with the U.S. Trustee, the issue of Section 327(a) retention would not even be before this Court. The Debtors could have refused to even attempt to accommodate the U.S. Trustee's concerns about Section 327(a) and continued to assert their ordinary course retention application. The Debtors should not be penalized now for attempting to reach a mutually agreeable conclusion to this issue.

F/S Airlease test. The Debtors regularly retain accountants and auditors in the ordinary course of business. In fact, the Securities and Exchange Commission ("SEC") requires the Debtors to have independent accountants audit its financial statements. Pursuant to Section 363 of the Bankruptcy Code, a debtor in possession may "enter into transactions … in the ordinary course of business, without notice or a hearing." 11 U.S.C. § 363.[7]

Contrary to the United States Trustee's assertions, the Debtors did not have to comply with the requirements of Section 327(a) in retaining PwC in the ordinary course of business. Section 327(a) only applies to professional persons retained "to represent or assist the trustee in carrying out the trustee's duties." 11 U.S.C. § 327(a). As the services for which retention is sought do not involve assisting the trustee in carrying out his duties, the requirements of the Section simply do not apply.

Seatrain and its progeny clearly establish that the requirements of Section 327(a) only apply to persons who "play a central role in the administration of the debtor proceedings." In re Seatrain Lines, Inc., 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1986). It is not a person's title that determines whether Section 327(a)'s requirements apply, but the nature of the services he provides. See also In re First Merchants Acceptance Corp., No. 97-1500 (JJF), 1997 WL

---

[7] In assessing whether a given transaction is in the ordinary course of business, the courts use horizontal and vertical dimension tests. In re Roth Am., Inc., 975 F.2d 949 (3d Cir. 1992). The vertical dimension looks at ordinariness from the perspective of "the debtor's pre-petition business practices and conduct;" the horizontal dimension tests asks "whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry." Id. at 953. Both prongs are met here. The Debtors regularly employed accountants and auditors pre-petition, and from an industry wide perspective it is typical, and even required, corporations the size of Debtors to have done so. See, e.g., Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 617 (Bankr. S.D.N.Y. 1986)(noting that ordinariness "depends upon the nature, type and size of its business. A debtor that is a large, multinational corporation engages in activities of

873551, at *2 (D. Del. Dec. 15, 1997) (espousing a combination of the Seatrain test and the

qualitative analysis test, under which an employee that is given discretion or autonomy in some

part of the administration of the debtor's estate is a professional; court notes that "the bottom line

of both tests [Seatrain's quantitative analysis and the qualitative analysis test] involves an

examination of the types of duties to be undertaken by the individual.").

   Although accountants are commonly considered "professionals" under Section

327(a), it is an accountant's role in the bankruptcy, rather than its status as an accountant, that

controls.  See, e.g., In re That's Entertainment Marketing Group, Inc., 168 B.R. 226 (N.D. Cal.

1994) (accounting firm held not to be a "professional person" under Section 327(a) where

accounting firm employed as an expert witness did not participate in the formulation of strategy

or management of estate or its liabilities, and played only a tangential role in acquiring assets on

behalf of the estate pursuant to litigation).  Thus, the Debtors were not required to retain PwC

pursuant to Section 327(a) simply because of its status as an accountant.

   Moreover, in his Original Objection, the U.S. Trustee cited a number of cases for

the proposition that a debtor cannot retain an accountant in the ordinary course of its business.

See Original Objection at ¶¶ 17-27.  However, a close reading of all but one of those cases

reveals that the issue of ordinary course retention was not before the court.  For example, in

United States Trustee v. PriceWaterhouse, 19 F.3d 138 (3d Cir. 1994), the court only reached the

issue of whether an accountant that is not disinterested could be retained pursuant to Section

327(a); the issue of ordinary course retention was not before the court.  See also United States

Trustee v. Andover Togs, Inc. (In re Andover Togs, Inc.), Nos. 96 Civ. 7601 (DAB) and 97 Civ.

6710 (DAB), 2001 WL 262605 (S.D. N.Y. March 15, 2001) (reversing Bankruptcy Court's

---

a magnitude that would be considered extraordinary for a smaller business.").

decision to authorize retention of an interested accounting firm pursuant to Section 327(e) and general powers pursuant to Section 105(a)); In re LKM Indus., Inc., 252 B.R. 589 (Bankr. Mass. 2000) (Section 327(a) as modified by Section 1107(b) does not authorize the retention of an accounting firm with a conflict of interest); In re Eastern Charter Tours, Inc., 167 B.R. 995 (Bankr. M.D. Ga. 1994) (no authorization to retain accounting firm that is not disinterested pursuant to Section 327(a)); In re Siliconix, Inc., 135 B.R. 378 (N.D. Cal. 1991) (same); In re Wake, 222 B.R. 35 (Bankr. W.D.N.Y. 1998) (interested accountant cannot seek compensation pursuant to Section 503(b)(1)(A)).  The U.S. Trustee's citation to these cases does not address the issue of whether a debtor may retain an accounting firm to perform non-bankruptcy services in the ordinary course of business.

The only case that the U. S. Trustee properly cited in its Original Objection for the proposition that a debtor should not be permitted to employ an accountant in the ordinary course of business is not controlling authority here, nor is it factually analogous.  Bicoastal Corp. v. Clear (In re Bicoastal Corp.), 149 B.R. 216 (Bankr. M.D. Fla. 1993), involved an accountant hired to manage, administer, and invest the assets of the debtor's pension plan.  The court specifically noted that the accountant "was involved in the administration of the estate, as the assets under her control certainly played a role in the reorganization of the Debtor's finances." Id. at 218.  Examining the role the accountant played in the bankruptcy, the court concluded that the accountant was a "professional person" and that her employment was not in the ordinary course of the debtor's business.  Id. at 218.[8]  Bicoastal does nothing to undercut the Debtors'

---

[8] The U.S. Trustee's use of this case to support its view that "PwC cannot cite a case in which any court paused for even a moment over whether debtor's accountants and auditors are professionals" is clearly belied by the fact that the court in Bicoastal only concluded that the accountant at issue was a Section 327 professional after extensive

authority to employ PwC in the ordinary course of business. The Debtors seek to compensate

PwC not for managing and investing the assets of the estate, but for providing the routine

accounting services it needs to operate its business. The services for which the Debtors seek to

compensate PwC did not require PwC to play a role in the administration of the estate as was the

case in Bicoastal, and thus that case is inapposite.

        The Debtors seek to compensate PwC for the non-bankruptcy services it provided

between November 11, 2001 and April 15, 2002 in the Debtors' continued operation of their

business. As PwC did not act as an "accountant ... [retained] to represent or assist the trustee in

carrying out the trustee's duties" in performing the services for which the Debtor seeks to

compensate PwC, the Debtors were not required to comply with Section 327(a) here. The

Debtors acted within the scope of their authority under Section 363 in employing PwC in the

ordinary course of business. As PwC's retention would have been authorized pursuant to

Section 363, the first prong of F/S Airlease is met.

**B.    Under The Extraordinary Circumstances Of This Case,**
**_Nunc Pro Tunc_ Approval Is Appropriate**

        The second prong of the F/S Airlease test requires a finding of "extraordinary

circumstances." Id. at 105. In making this determination, a court should consider factors such as

whether the applicant or some other person bore responsibility for applying for approval;

whether the applicant was under time pressure to begin services without approval; the amount of

delay after the applicant learned that initial approval had not been granted; the extent to which

---

consideration of the exact nature of her duties and after concluding that she did play
a central role in the administration of the estate. Bicoastal, 149 B.R. at 218 ("Based on
the foregoing [analysis of the exact nature of the accountant's duties], this Court is
satisfied that [the accountant] was a professional person under § 327."). See Original

compensation to the applicant will prejudice innocent third parties; and other relevant factors.
Id. at 105-06, citing In re Arkansas Co., Inc., 798 F.2d 645, 650 (3d Cir. 1986).  While the
enumerated factors are relevant, "the Third Circuit's interpretation of the [extraordinary
circumstances] standard suggests a flexible approach which requires bankruptcy courts to
consider the circumstances of each case in light of equitable factors." In re ICG Comm., Inc.,
No. 00-4238 (PJW), 2001 WL 1820319 (Bankr. Del. Aug. 2, 2001), at *4.  The circumstances of
this case, viewed in light of equitable factors, warrant *nunc pro tunc* approval.

       "[I]n exercising its discretion, the bankruptcy court must consider whether the
particular circumstances in the case adequately excuse the failure to have sought prior approval."
In re ICG Comm., Inc., 2001 WL 1820319, at * 4, quoting In re Arkansas, 798 F.2d at 650.
Here, both the Debtors and PwC were operating under the good faith belief that ordinary course
retention under Section 363 was available for the routine accounting and audit services at issue.
The Debtors decided to pursue Section 327(a) retention out of a desire to work with the U.S.
Trustee and to accommodate his concerns.  As the parties here did not, and do not, think that
prior approval under Section 327(a) was necessary because of their decision to proceed under
Section 363 ordinary course retention, they cannot be blamed for not having sought it.

       PwC began to perform the bulk of the auditing services at issue in November of
2001.  The Debtors made their Original Application to retain PwC in the ordinary course on
January 10, 2002.  Given the fact that the Original Application covered two distinct sets of PwC
personnel, providing two distinct sets of services, this delay is not unreasonable.  Specifically,
the Original Application sought retention for one group of PwC accountants to perform

---

Objection at ¶24.

bankruptcy-related services for the Debtors and for another group of PwC accountants to provide routine auditing and accounting services to the Debtors in their continued operation of business.[9]

Moreover, PwC's role was vital to the Debtors in the continuing operation of the Debtors' business. Due to the nature of audit work and the time pressures inherent therein, it is understandable that, in order to fulfill its duties as independent accountants, PwC began to work in advance of the Original Application date. PwC's continued work was needed to avoid interruption of the Debtors' business operations and the negative repercussions that would flow therefrom. Specifically, SEC requires the timely involvement of independent accountants in each of the Debtors' quarterly filings on Form 10-Q. In this context, PwC continued to provide routine accounting services in connection with the Debtors' required 10-Q filings, which were due on May 15, 2001, August 14, 2001, and November 14, 2001. Moreover, the SEC requires the Debtors' annual financial statements on Form 10-K to be audited. PwC began its audit of the annual financial statements in early November of 2001. As the 10-K had to be completed by March 31, 2002, PwC was under extreme time pressure to begin the audit at this time. Without PwC's involvement, the Debtor would not have been able to submit filings in compliance with SEC requirements. The time pressures incumbent upon PwC, in conjunction with the good faith belief held by both PwC and the Debtors that ordinary course retention was appropriate, create the sort of extraordinary circumstances warranting *nunc pro tunc* approval.

The Debtors have attempted in good faith to resolve any problems the U.S. Trustee might have with respect to the Original Application. The Debtors voluntarily withdrew a meritorious Original Application and submitted the Amended Application at issue out of a desire to address the U.S. Trustee's concerns. There has been no suggestion that PwC's work was not

---

[9] As previously noted, the bankruptcy services are not at issue before this Court.

necessary, was not performed competently, did not add value to the estate, or was otherwise

deficient.  The U.S. Trustee has no problem with the retention of PwC going forward.  All that

remains to be resolved is the Debtors' authority to pay PwC for services rendered in good faith,

and to the direct benefit of the bankruptcy estate, for the period between November 11, 2001 and

January 10, 2002.  Given the value that PwC has added to these proceedings, and the good faith

shown on the part of the Debtors in attempting to address the U.S. Trustee's concerns, the

equities weigh in favor of granting the Amended Application.[10]

---

[10] In the event that the court finds *nunc pro tunc* approval inappropriate here, the Debtors
respectfully request the court to authorize the Debtors to compensate PwC for
services rendered in the ordinary course of business.  The Debtors understand that PwC is
willing to submit all fees to court approval and to include the fees incurred between
November 11, 2001 and April 15, 2002 in its final fee application.

## III.   CONCLUSION

For all the foregoing reasons, the Debtors and PwC respectfully request that this Court issue an order granting the Debtors' Amended Application, or, in the alternative, authorizing the Debtors to compensate PwC for the ordinary course services it provided between November 11, 2001 and April 15, 2002, pursuant to Section 363 of the Bankruptcy Code, and grant such other relief as is just and proper.


Dated: May 10, 2002

KIRKLAND & ELLIS
James H.M. Sprayregen, P.C.
James W. Kapp III
Christian J. Lane
Roger J. Higgins
200 East Randolph Drive
Chicago, Illinois
312.861.2000

MORGAN LEWIS & BOCKIUS, LLP
Jami Wintz Mc Keon
John C. Goodchild, III
1701 Market Street
Philadelphia, Pennsylvania 19103
215.963.5000

Counsel for PricewaterhouseCoopers LLP

and

PACHULSKI, STANG, ZIEHL, YOUNG & JONES, P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
302.652.4100

Co-Counsel for the Debtors and Debtors in Possession