IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

Objection Deadline: May 31, 2002
Hearing Date: June 18, 2002 at 1:00 p.m.

## DEBTORS' MOTION TO PAY STAY BONUSES IN CONNECTION WITH THE CONSOLIDATION OF THE CUSTOMER SERVICE FUNCTIONS OF GRACE PERFORMANCE CHEMICALS

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by their undersigned counsel, respectfully move this Court (the "Motion") for the entry of an order authorizing the Debtors to pay certain severance benefits (a "Stay Bonus" or "Stay Bonuses") in connection with the consolidation of certain customer service functions of Grace Performance Chemicals ("GPC") in Chicago, Illinois; and in support thereof, respectfully state the following:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this motion is proper under 28 U.S.C. § 1408.

2. The statutory predicates for this Motion are sections 105 and 363(b) of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

3. On April 2, 2001, the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4. The Debtors' GPC business was formed in July, 1999, by integrating Grace's specialty construction chemicals and specialty building materials business units (together the "Specialty Construction Businesses" or "SCB") with its Darex sealants and coatings business.[2] The Specialty Construction Businesses are leading suppliers of specialty construction chemicals and building materials to the nonresidential (commercial and infrastructure) construction industry, and to a lesser extent, to the residential construction industry.

---

[2] The Darex business is not affected by this Motion. The Court on March 18, 2002 entered an order permitting the Debtors to shut down the former Darex plant in Atlanta and take other actions in connection therewith.

5.  In order to reduce costs and increase customer service efficiency, the Debtors' management determined that the consolidation of certain of SCB's United States customer service functions in Chicago is in the best interests of the Debtors' estates and creditors.[3]

6.  The customer service representatives of SCB ensure (a) that orders, inquiries, complaints and other communications from customers are directed to the proper employees of SCB and (b) that such customer communications are promptly addressed by the SCB organization to the satisfaction of its customers. Among other services that they provide, customer service representatives process customer orders and assure timely product delivery, cause requests from customers for technical advice or service to be addressed by knowledgeable technical staff, and issue invoices to customers and respond to billing and customer credit inquiries.

7.  The Specialty Construction Businesses currently employ customer service representatives in plants throughout the United States. Management estimates that 24 of these representatives will be terminated upon the completion of the consolidation, and new customer service representatives will be hired in Chicago. In order for SCB to maintain continuity in providing customer services during the consolidation process, Grace, in the meantime, will need to retain the services of these 24 customer service representatives located at SCB's plants until the completion of the consolidation.

8.  The Stay Bonuses will be paid to 24 customer service employees, provided that the affected employees do not resign employment before a date specified by Grace, which will be a date necessary to effectuate a smooth transition of customer service activities to

---

[3] The customer service operations of Specialty Vermiculite are not included in the consolidation.

Chicago. For 23 of the employees, the Stay Bonus will provide 13 weeks of additional severance pay, in addition to the normal severance pay per Grace's current severance policy (but, in no event, exceeding 52 weeks in total).

9. In addition, a larger Stay Bonus is requested for the one customer service manager responsible for the management of the entire transition process and the implementation of the training procedures for all of the new employees. The Stay Bonus for such manager would provide 26 weeks of additional severance pay, in addition to the normal severance pay per Grace's current severance policy (but, in no event, exceeding 52 weeks in total). The total cost of the Stay Bonuses will be approximately $255,000.

### Relief Requested

10. By this Motion, the Debtors seek authority to pay the Stay Bonuses.

11. The Debtors respectfully submit that payment of the Stay Bonuses satisfies the governing standards for a transaction promulgated in the Third Circuit. Under section 363(b) of the Bankruptcy Code, the debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Courts within this Circuit interpreting section 363(b) of the Bankruptcy Code have held that transactions should be approved under section 363(b) when they are supported by sound business judgment of management. See In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Phoenix Steel Corp., 82 B.R. 334, 335-336 (Bankr. D. Del. 1987) (judicial approval requires a showing that the proposed transaction is fair and equitable and that a good business reason exists for completing the transaction).

91100-001\DOCS_DE:46729.1

## The Proposed Transaction Is Supported by Sound Business Judgment

12.     The Debtors' management has determined in its business judgment that the payment of the proposed Stay Bonuses is in the best interests of the Debtors' estates and creditors. Clear business reasons exist to justify the Debtors' payment of the Stay Bonuses under section 363(b) of the Bankruptcy Code. Payment of the Stay Bonuses to existing customer service representatives will enable GPC to maintain the high-quality of existing SCB customer service functions until customer service functions can be consolidated in Chicago.

13.     The consolidation in Chicago is expected to be phased in over a five-month period, allowing time for training, knowledge transfer, infrastructure improvements and telephone and technology upgrades. Current customer service representatives will assist in the training of new customer service representatives over a six-to-eight week training period. The Stay Bonuses will encourage customer service representatives to remain during the critical training and transition phase in Chicago. SCB will only be able to maintain a properly trained customer service staff by retaining the existing customer service representatives throughout the transition. Thus, the retention of such representatives during the transition period ensures (i) that the training of new customer service representatives includes exposure to individuals with valuable "hands-on" experience and (ii) the continuation of the same high-quality customer service to which the Debtors' customers are accustomed.

## Notice

14.     Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee and (v) all those parties that requested service and notice of papers in accordance

with Fed R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

### No Prior Request

15. No prior Application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court authorize the Debtors (i) to pay the Stay Bonuses; and (ii) such other and further relief as the Court deems just and proper.

Dated: May 14, 2002

          KIRKLAND & ELLIS
          James H.M. Sprayregen, P.C.
          James W. Kapp III
          Christian J. Lane
          Roger J. Higgins
          200 East Randolph Drive
          Chicago, Illinois 60601
          (312) 861-2000

          and

          PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

          */s/ David W. Carickhoff, Jr.*
          Laura Davis Jones (Bar No. 2436)
          David W. Carickhoff, Jr. (Bar No. 3715)
          919 North Market Street, 16th Floor
          P.O. Box 8705
          Wilmington, DE 19899-8705 (Courier 19801)
          Telephone: (302) 652-4100
          Facsimile: (302) 652-4400

          Co-Counsel for the Debtors and Debtors in Possession

91100-001\DOCS_DE:46729.1