UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                                . Case No.   01-1139(JFK)
                                      .
                                      .
  W.R. GRACE & CO., et al.,           .
                                      . 5414 USX Tower Building
                                      . Pittsburgh, PA 15222
                   Debtors.   .
                                      . April 22, 2002
. . . . . . . . . . . . . . . . . 10:05 a.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:                    Kirkland & Ellis
                                   By:  DAVID M. BERNICK, ESQ.
                                        JAMES KAPP, ESQ.
                                        JANET S. BAER, ESQ.
                                   200 East Randolph Dr.
                                   Chicago, IL 60601

For the Environmental              U.S. Department of Justice
Protection Agency:                 Environment and Natural Resources
                                      Division
                                   By:  JAMES D. FREEMAN, ESQ.
                                   (Telephonically)

For Edythe Kellogg:                Scanlon, Sessums, Parker
                                     & Dallas, P.L.L.C.
                                   By:  PAT H. SCANLON, ESQ.
                                   1650 Mirror Lake Plaza
                                   2829 Lakeland Drive
                                   Jackson, MS 39208
                                   (Telephonically)

Audio Operator:                    Cathy Younker

Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**



APPEARANCES:   (Cont'd)

For U.S. Environmental         U.S. Environmental Protection
Protection Agency:              Agency
                              By:  ANDREA MADIGAN, ESQ.

For DNA Insurance             WILLIAM HARSTAT, ESQ.
Company:                      (Telephonically)

Local Counsel to Asbestos     Campbell & Levine, LLC
Claimants:                    By:  MATTHEW G. ZALESKI, III, ESQ.
                              1201 N. Market St.
                              Chase Manhattan Centre, 15th Fl.
                              Wilmington, DE 19801

For Zonolite Claimants:       Lukins & Annis
                              By:  DARRELL W. SCOTT, ESQ.
                              Suite 1600
                              Washington Trust Financial Center
                              Spokane, WA 99204

For Unsecured Creditors       Stroock, Stroock & Lavan, LLP
Committee:                    By:  ARLENE G. KRIEGER, ESQ.
                              180 Maiden Lane
                              New York, NY 10038

For Official Committee of     Bilzin, Sumberg, Dunn, Baena, Price
Asbestos Property Damage        & Axelrod, LLP
Claimants:                    By:  SCOTT L. BAENA, ESQ.
                              2500 First Union Financial Ctr.
                              Miami, FL 33131

For Official Committee of     Caplin & Drysdale
Asbestos Personal Injury      By:  PETER VAN N. LOCKWOOD, ESQ.
Claimants:                    One Thomas Circle, NW
                              Suite 1100
                              Washington, DC 20005

                              Ashby & Geddes
                              By:  WILLIAM BOWDEN, ESQ.
                                   RICHARDO PALACIO, ESQ.
                              222 Delaware Avenue, P.O. Box 1150
                              Wilmington, DE 19899

1          THE COURT:  Hi.  This is Judge Fitzgerald.  I'm ready
2     to call the W.R. Grace case.  Are you holding for that case?
3          MR. FREEMAN:  Yes, I am.
4          THE COURT:  Ah, okay.  Just a second, please.
5          MR. FREEMAN:  This is Jim Freeman with the Department
6     of Justice.
7          MR. SCANLON:  This is Pat Scanlon for Edythe Kellogg.
8          MS. MADIGAN:  Andrea Madigan with the United States
9     Environmental Protection Agency.
10         MR. HARSTAT:  This is Bill Harstat listening in for
11    DNA.
12         THE COURT:  I'm sorry, folks.  I'm not ready for you.
13    You're starting without me and you're going much too fast for
14    me to be able to type and get your names, number one.  Number
15    two, you're going to have to speak a little louder, please, so
16    we can hear you.
17         Mr. Scanlon, I got you.  Ms. Madigan, I got you.  And
18    I have no idea who else was speaking.  So could you a little
19    more slowly please repeat your names and who you represent?
20         MR. FREEMAN:  Yes, Your Honor.  Jim Freeman with the
21    United States Department of Justice for the Environmental
22    Protection Agency.
23         THE COURT:  All right.  Okay, thank you.
24         MR. HARSTAT:  This is William Harstat for DNA
25    Insurance Company.

4

1            THE COURT:  All right.  Anyone else?

2            Okay, Mr. Bernick.

3            MR. BERNICK:  Thank you, Your Honor.

4            THE COURT:  Now, pardon me one second until I --

5            MR. BERNICK:  Sure.

6            THE COURT:  -- get my file.

7            MR. BERNICK:  I don't know if anyone has pointed this

8  out to the Court, but there's a steamfitter's hat under the

9  podium.  I'm not sure it would fit in with the --

10            THE COURT:  I'm afraid what it's left over from.

11                          (Pause)

12            THE COURT:  Okay, Mr. Bernick, I think I'm ready,

13  thank you.

14            MR. BERNICK:  Turning to Page 2 of the agenda under

15  the uncontested matters, item number three, which is the -- a

16  motion relating to the assumption or rejection of unexpired

17  leases.  We have a stipulation that's been agreed to and is

18  available for the Court.

19            THE COURT:  All right.  Thank you.

20            MR. BERNICK:  With respect to number four, this --

21            THE COURT:  Mr. Bernick, sorry --

22            MR. BERNICK:  Sure.

23            THE COURT:  -- please give me a minute to get caught

24  up.

25                          (Pause)

1          THE COURT:  All right.  This essentially is
2  permitting the debtor to have assumed leases as of the date of
3  the execution of the stipulation and agreed order and to make a
4  very small cure payment of less than $3,000.  It's signed off
5  by the parties.  Have any parties in the courtroom got an
6  objection to this order?

7          Okay.  This order is entered.

8          Okay, Mr. Bernick.

9          MR. BERNICK:  Number four is not our motion, it's a
10 motion by the Committees that pertains to Your Honor's order to
11 transfer the Chris Olympic (sic) claims to Judge Woolen --

12         THE COURT:  I've signed both the request to shorten
13 notice and also entered the order.

14         MR. ZALESKI:  For the record, Matthew Zaleski;
15 Campbell & Levine on behalf of the Asbestos Personal Injury
16 Committee.

17         Your Honor, Mr. Perch for the United States Trustee
18 filed a statement which added one additional document to the
19 list of those which were initially missed.

20         THE COURT:  Okay.

21         MR. ZALESKI:  I didn't certify no objection in the
22 hopes that I could hand up a revised form of order and we
23 wouldn't have competing forms today.

24         THE COURT:  Okay.  So instead of the one that's
25 attached here, you have a different one you want signed?  Okay,

1 that's fine.  I'll take it.

2          MR. ZALESKI:  That's --

3          THE COURT:  This hasn't been docketed.  I just signed

4 it this morning.

5          MR. ZALESKI:  Okay.  May I approach?

6          THE COURT:  Yes.

7          MR. ZALESKI:  Thank you, Your Honor.

8          THE COURT:  All right.  All this does is add to the

9 U.S. Trustee document and I did see that this morning as well.

10 So I think that's not a problem.  It's entered.

11          MR. BERNICK:  With respect to item number five, which

12 was a motion for preliminary injunction in connection with an

13 adversary proceeding.  We've now resolved this matter.  We

14 believe it's been settled.  We have a stipulation that's being

15 circulated for comment.  I believe that the unofficial -- or

16 I'm sorry, the Unsecured Creditors Committee wants to review it

17 and perhaps others.  And what we would propose is that they

18 have, and others have ten days to give us any comments and we

19 believe we can wrap it up at that point in time and tender it

20 to the Court.

21          THE COURT:  All right.  Is this going to resolve the

22 third-party complaint as well?

23          MR. KAPP:  No, Your Honor.  This only resolved issues

24 pertaining to the debtor's motion for a temporary injunction.

25 TRO and preliminary injunction, but it's issues as a 2003 that

1 the adversary proceeding will continue in place for it.

2       THE COURT:  All right.  Are you going to put it back
3 on the calendar for some further scheduling?

4       MR. KAPP:  Yes, Your Honor.  We contemplate putting
5 it on the agenda in a month or two for status and setting up a
6 scheduling.

7       THE CLERK:  May I have your appearance?

8       MR. KAPP:  James Kapp, K-a-p-p, on behalf of the
9 debtors.

10       THE COURT:  Okay, that's fine.

11       MR. BERNICK:  Turning to item six.  Item six is a --
12 is the adversary proceeding that was initiated on behalf of
13 medical monitoring claims.  This is the medical monitoring
14 class action.

15       As Your Honor will recall, we filed a motion to
16 dismiss the adversary on the grounds that it asserted claims
17 within the meaning of Section 1015 and as a consequence could
18 not actually be prosecuted as an adversary proceeding.

19       Your Honor I'm sure will also recall that at the last
20 hearing we had a fairly broad range in discussion on what was
21 going to happen with the medical monitoring claims.  Your Honor
22 indicated that we received by way of notice and bar date and
23 that in light of that the adversary proceeding really was not
24 necessary.  We had some discussion about whether that might be
25 withdrawn.  I believe that counsel for the medical monitoring

8

1  claimants agreed to withdraw the adversary.  We have not
2  received any notice of that withdrawal and I've had a
3  discussion with Mr. Scott before court here and he is amenable
4  to agreeing to an order dismissing the adversary without
5  prejudice on the assumption that or at the time that Your Honor
6  actually approves the notice and bar date process for the
7  medical monitoring claims, which we hope will happen today.

8       So I have a form of order for dismissal of the
9  adversary without prejudice.  Mr. Scott has had an opportunity
10  to take a look and has no problems with it.  But maybe we can
11  ask Your Honor to sign this after we get into the point of the
12  process where we hope Your Honor will sign an order to the
13  notice and bar date process.

14       THE COURT:  Okay.  That's fine.

15       Thank you.

16       MR. BERNICK:  That brings us to item number seven,
17  and this is going to require a little more discussion.

18       There are essentially -- in fact, Your Honor, would
19  it be all right if I could stand over here at --

20       THE COURT:  Yes, sir.

21       MR. BERNICK:  There are essentially two items that
22  relate to number seven on the agenda.  Number seven on the
23  agenda is the adversary class action complaint relating to the
24  ZAI claims.  And there are two issues that are up for
25  discussion this morning.  One relates to the adversary itself

1  and the second relates to the progress that we believe that
2  we're making towards the science trial that we discussed last
3  time.  And let me just take both up at once and go through the
4  whole thing and then Your Honor I think will see what the
5  issues are and we can proceed to take them one at a time.

6       The adversary itself was filed in November of last
7  year and we moved to dismiss it in December again on the same
8  grounds that we just indicated, Section 1015.  It includes
9  these matters as claims as an improper adversary proceeding as
10 a result.  The response was due on March 29 and again, we had a
11 fairy broad discussion of what to with the ZAI litigation last
12 time.

13      Your Honor had a concern that by sending out even a
14 notice of the bar date it might cause an awful lot of concern,
15 have a huge pile of claims.  At the same time Your Honor wanted
16 to go promptly towards a science trial and the middle course
17 that we came up with was to isolate the individual claims of
18 the class representatives who had already pursued their claims
19 in various class actions around the country.  Get those claims
20 here and then have the science trial focus on those individual
21 claims as a consolidated proceeding.  See where that came out
22 and then depending upon the outcome of that proceeding -- if
23 there were motion for class certification to be taken up at
24 that time, if there were a motion to set an overall bar date to
25 then have whatever result that took place from the science

1  trial -- we could proceed on that basis as well.

2         So I think we are fairly clear that we are going down

3  the road towards that kind of proceeding with the individual

4  cases.  In light of that, again the adversary proceeding was

5  unnecessary and there was some discussion about whether there

6  would be an agreement to withdraw the adversary proceeding and

7  the motion for class certification and the class claim forms.

8  And after a colloquy I think that the Court was very clear on

9  where it was that we were going and the agreement likewise was

10  clear.  The Court said this at Page 117.

11         So the motion to file a class proof of claim and the

12  adversary will be withdrawn without prejudice to this test case

13  process, the test case process being the one I just referred

14  to, that we're going to implement instead.

15         Mr. Sobol then responds -- I don't believe he's here

16  today but Mr. Scott is, "Correct.  And just so the record is

17  clear, on all those motions we're not moving forward on the

18  class certification motion."

19         I say, "Right."

20         Mr. Sobol then says, "At this time as well.  All

21  those issues make sense to confer until we've gone through this

22  other process or at least until we decide otherwise."

23         The Court then says, "Well, the motion to certify the

24  class is part of the adversary, is it not?"

25         I say, "Yes."

1        Mr. Sobol says, "Yes."

2        The Court says, "So if the adversary is withdrawn,

3   that's being withdrawn for now too."

4        Mr. Sobol then says, "Yes."

5        The Court says, "Okay."

6        So we're all in agreement that the adversary is going

7   to be withdrawn and the class motion is going to be withdrawn.

8        Unfortunately we have not received any kind of notice

9   of withdrawal of the adversary proceeding or the class motions.

10       The same fashion, Your Honor, that I sought out Mr.

11  Scott this morning, medical monitoring I did on ZAI as well, to

12  get his agreement to withdraw the adversary or agree to an

13  order dismissing the adversary without prejudice and he is

14  unwilling to do that.

15       That's the first item is what to do with that

16  adversary proceeding?  We have motions to dismiss pending.  In

17  fact, there was a response date of March 29 which came and went

18  with no response.  We have not received any response to our

19  motion to dismiss and we're going to ask the Court to dismiss

20  the adversary at this time.  If they want to re-file at some

21  later point, they can always do that.  We don't think that

22  would be proper, but we think at this point in time there's no

23  point in having the adversary pending further proceedings

24  towards the science trial.  That's item one.

25       Item two is what is the progress that we're making

1   towards that science trial?  And here it's kind of a good

2   news/bad news situation, but there's a lot of good news.  First

3   of all, it was pretty clear last time about how it was that we

4   were going to proceed.  I undertook to say that we would remove

5   and transfer the individual representative claims.  In so

6   doing, I made two mistakes that I'll now confess to the Court.

7   Both of them are curable and, in fact, have been cured.  But

8   the first mistake was that I forgot that Section 157(b)(5) only

9   relates to personal injury claims.  These are property claims

10  and therefore the easy pluck that the Court could do using one

11  section if 157(b)(5) is not available.

12        My second mistake was not to pick up on what the

13  Court said at Page 85 which is that we could simply file a

14  claim for these individual claimants.  That really is the cure.

15  So we've now gone ahead and done that.  We filed claims under

16  3004 on behalf of -- all of the named representatives.  There

17  are ten of them in the various class actions that were pending

18  around the country.  They've all now been filed here.  So the

19  claims are, in fact, reposed in this court.

20        We have also proposed a schedule for how to deal with

21  these matters and advance them towards trial.  And essentially

22  the schedule that we've proposed runs something like this.

23  That beginning on the 1st of June we would commence fact

24  discovery.  The fact discovery would run until September the

25  30th.  All the fact discovery would be limited to the science

1  issue that's been framed for decision.  That is is this product
2  an unreasonably risky product, unreasonably dangerous product?

3         On September the 3rd, which is before the end of that
4  period for fact discovery, the plaintiffs would make their
5  expert disclosures.

6         On October the 1st, roughly 30 days later, Grace
7  would make its expert disclosures.

8         From October the 3rd till October the 28th, basically
9  a period of a month, there would be discovery from the
10 plaintiff's experts.

11        Again, the following month from November the 4th
12 through November the 25th there will be discovery of Grace's
13 experts.

14        And then we would have until the 20th of December to
15 file a motion to consolidate the individual claims for purposes
16 of the science issue.  File any summary judgment/Daubert
17 motions we might have and that we tentatively said that if the
18 Court would have the time to hear us as of the 3rd of February,
19 that's when any remaining trial would take place and we Mr.
20 Restivo is sitting here today.  Mr. Restivo would be in charge
21 of the trial should it take place of the ZAI claims.

22        That's the schedule that we proposed.  The good news
23 is that we received a letter back, and I think that there were
24 only really two issues that are taken with that overall
25 schedule.  One is that the claimants don't want to have the

1  discovery limited to the issue of unreasonable risk.  That is

2  the scientific issue.  If we have discovery that goes into the

3  whole history of ZAI, it's going to take a long time and it's

4  going to be very laborious and we don't see any point to that

5  at all.

6        THE COURT:  I'm not sure I see any point either if

7  the whole point is to see first of all whether there is any

8  science that will support a claim, an injury.

9        MR. BERNICK:  That's what our thinking was.  And, of

10  course, there will always be issues if we have that kind of

11  limitation on what falls on what side of the line with that

12  limitation, but those can be worked out.  And we're not going

13  to -- we're not going to be unreasonable that way, but we've

14  got to keep our eye on the ball.  But that's issue number one.

15        Issue number two is that according to our schedule,

16  the plaintiffs would disclose their expert testimony shortly

17  before the completion of fact discovery.  Mr. Sobol said well,

18  why don't we have that take place at the time that fact

19  discovery is concluded?  We had hoped to produce some schedule

20  compression in order to get quickly to trial, but if that 30-

21  day window creates that much of a problem, we don't have a

22  fundamental problem with that either and we can simply shift

23  that back so that their expert disclosures would be due upon

24  the conclusion of the fact discovery.

25        So those are the only two issues that then get to the

1  process that we would like to follow in order to move towards
2  the resolution of the science issue.

3          The bad news side of the equation is that in the same
4  letter where Mr. Sobol responded to our proposal to set a
5  schedule, he introduced the idea of having yet a fourth round
6  of briefing on this whole notion of whether there's going to be
7  a class trial or not.  And there have been now four rounds.
8  Last spring before Your Honor was involved, there was a motion
9  to lift stay in order that these class action cases that were
10 pending pre-petition could be prosecuted post-petition.  That
11 request for stay was denied.

12         Then we have the adversary proceeding.  And Your
13 Honor is now fully familiar with that.  Then we had briefing on
14 the class proofs of claim.  Your Honor is fully familiar.

15         So three different paths or vehicles for which they
16 want to continue to press forward on a class action basis.
17 Their current idea is a variation, variation one now of the
18 lift stay proposal that was rejected last spring.  Under this
19 variation the Court would lift stay so that the Barbanti case
20 could be removed from state court in Washington to the federal
21 court in Washington.  Transfer it over here and we would then
22 have a class trial as opposed to these individuals being tried.
23 A class trial of the Barbanti case.  So we've got, voila, we
24 have class litigation here in this proceeding here.

25         What about the bar against adversary proceedings

16

1   under their proposal?  It's gone.  What about the need for
2   class proofs of claim under their proposal?  They're gone.
3   What about this Court's power to decide the Rule 23
4   certification?  Well, that's gone because basically they're
5   going to adopt the certification order of the state court Judge
6   in Washington.  What about the rules under the Bankruptcy Code?
7   They're gone, too.  First, there is no such provision to
8   transfer the case.  Can't do it that way.  They'd have to
9   remove it and then ask the Court in federal court in the
10  Eastern District of Washington to transfer it here.

11          Second, Rule 9023 which governs in this proceeding
12  would be trumped because the certification of the state court
13  Judge would be dispositive.  The Federal Rule 23 would never
14  have been applied.

15          And then finally and most critically, Rule 9014 of
16  the Code would also be trumped.  9014 says that although class
17  certification may be available, may be a rule that can be used,
18  it is discretionary.  And the cases are crystal-clear that in
19  dealing with class certification in the context of bankruptcy,
20  you not only have to look at the tests of Rule 23, but you have
21  to engage in the analysis using a variety of factors about
22  whether that makes any sense to the case.

23          If you take a look at the case law on this again,
24  it's very clear.  The case law says that even where you have a
25  pre-petition certified class, the proper procedure is for the

1 Bankruptcy Court to determine whether there's going to be class
2 action litigation.  What would happen if we went forward with
3 their proposal?  It's just more delay.  If Your Honor were to
4 lift the stay and to allow that case to proceed here, we would
5 then have an appeal on whether the lift stay procedure was
6 appropriate.  We would then have an appeal on whether Rule 23
7 had been followed.  We would then have an appeal on whether
8 9014 applied and if so, whether the discretionary factors, how
9 they would cut in this case.

10          THE COURT:  Well, Mr. Bernick --

11          MR. BERNICK:  Yes, Your Honor.

12          THE COURT:  -- I thought these issues were all agreed
13 upon at the last hearing.  I mean I thought that it was
14 crystal-clear at that hearing that what was going to happen is
15 we'd get to the science issue.  You'd certify the common issues
16 and we'd do it through a common issue trial first.  Then if, in
17 fact, there is some scientific support for the fact that there
18 is an injury that can be proven or a claim, I guess I should
19 say, that can be filed, then I think we need to take a look at
20 the class certification or class proof of claim issue.

21          MR. BERNICK:  Yes.

22          THE COURT:  But don't we need first to determine
23 whether there is a claim that can be filed at all based on the
24 science side?  Why are we taking these pieces in that order?

25          MR. BERNICK:  I don't -- I don't know and that's why

1 I said it was good news/bad news.  I thought we had taken a
2 major step forward because it looked like the schedule was
3 basically something that people agreed to.  And we got the
4 claims here, we're ready to roll, and this looks like a step
5 backwards.

6 All that I'm anxious to do is to avoid yet another
7 round of briefing that further delays this issue.  What we're
8 going to ask the Court to do today is again dismiss the
9 adversary without prejudice.  To dismiss the class proof of
10 claim motion, again without prejudice.  And to approve the
11 schedule that we've outlined with the amendment that the expert
12 disclosures for the plaintiffs would be due upon the completion
13 of fact discovery to approve that schedule so that we can go
14 forward and do the work that's necessary to get to the hearing.

15 THE COURT:  Okay.  Mr. Scott.

16 MR. SCOTT:  Thank you, Your Honor.

17 The record actually was very clear and Mr. Bernick
18 didn't read an appropriate portion of the transcript.

19 The issue before the Court I think at the last
20 hearing was litigating the liability issue to place this Court
21 in a position where it could intelligently give direction with
22 regard to a proof of claim process.  And that involves
23 litigating the liability issue which Grace characterizes, is
24 the product unreasonably dangerous?  The issue we think is
25 different than that, but whatever the issue is and the Court

1  decides to try, is the liability issue.  And we need to try the
2  liability issue before we have a complex, very costly proof of
3  claim process.

4        The question was posed whether we were prepared to
5  withdraw the class certification issue.  I asked -- I made the
6  comment I'm unsure what the procedure is by which the parties
7  would be before the Court.  Mr. Bernick interrupted and said
8  "It's called lifting stay and removal."

9        I said, "In that case we would withdraw the motion
10 for the certification."

11       This is a very important point and I want to explain
12 to the Court why there really is a difference about the proper
13 procedure by which to litigate.  So there's no question we
14 should litigate the liability issue as quickly as possible.
15 The question is what is the proper procedural device to bring
16 the parties before the Court.

17       Plaintiff's belief that the appropriate and, in fact,
18 the only device to bring the parties before the Court with
19 coherently-asserted claims and with counsel who represent them,
20 is a very ordinary process of lifting the stay to permit the
21 partial liquidation of a claim that was pending prior to
22 bankruptcy.  To litigate the liability issue and give the Court
23 direction with regard to all the other claimants whose claims
24 are not being litigated.

25       So we proposed, and Grace agreed the last hearing,

1  that there would be a lifting of stay and a litigating of the

2  cases that have been filed before.  The Court asked the

3  question should we litigate it in Spokane or here?  I said

4  Spokane would be fine.  Grace had a different opinion.  And we

5  agreed that on lifting stay the case would be transferred here

6  so this Court can try the liability issue.  And I think that's

7  -- while that's not preferable, it's probably correct because

8  this process is I hope going to educate the Court about the

9  nature of the claim.  So lift stay.  Removal of case.  And

10  there is nothing odd about a Bankruptcy Court lifting stay to

11  permit the liquidation of a case if it is an aid of the

12  bankruptcy process, which is what is happening here.

13         Well, we received a letter from Mr. Bernick and when

14  he said he made two mistakes, they were tactical mistakes I

15  think.  Grace changed its mind, rather than lifting the stay

16  and removing, they want to file, the debtor, file a proof of

17  claim on behalf of individual creditors, what they choose, and

18  that those individual creditors then have to go through a

19  contested claim process here in Delaware.  That process will

20  with certainty hamstring this bankruptcy process and it will

21  prevent prompt litigation of the liability issue.

22         This isn't the time to argue motions which will

23  actually be I think before the Court during the next omnibus

24  hearing, but we believe that a debtor is powerless to file a

25  claim on behalf of a creditor at this point in time.  So it is

1 | not an option.

2 | THE COURT:  Why?

3 | MR. SCOTT:  Because the time period for filing claims
4 | has not expired.

5 | THE COURT:  Right.  So therefore the debtor can do it
6 | anytime after the 341 Meeting if the creditor hasn't done it.

7 | MR. SCOTT:  So long as the time period for filing a
8 | claim has expired.

9 | THE COURT:  Well, it can't possibly have expired if
10 | the debtor can do it one day after the 341 Meeting.  In most
11 | instances the deadline wouldn't even be set yet.

12 | MR. SCOTT:  And both of those conditions, the time
13 | period for filing claims by the creditor has to have expired
14 | for a debtor to file a claim.

15 | And as I say, I don't think we need to resolve these
16 | issues, but I'm alerting the Court to those.

17 | THE COURT:  I don't think so.  It says, "If a
18 | creditor fails to file a proof of claim on or before the first
19 | date set for the meeting of creditors, the debtor or trustee
20 | may do so in the name of the creditor within 30 days," oh, I
21 | see, "after the expiration of the time for filing claims
22 | prescribed by Rule 3002 or Rule 3003."

23 | MR. SCOTT:  And if you look at those rules, one has
24 | to do with Chapter 7.  One with Chapter 11.  The Chapter 11
25 | rule is explicit, the debtor has no power to file a claim prior

1  to the expiration of the time period for filing.

2          MR. BERNICK:  Your Honor, that specific issue has

3  been decided in this court.  That's not -- that's not

4  preclusionary.  It can be filed until -- at anytime prior to

5  the expiration of that 30-day period which obviously hasn't

6  even begun to take place because we don't have the bar date

7  yet.

8          MR. SCOTT:  I don't want bring the Court in to trying

9  to resolve but --

10         THE COURT:  I think that's actually -- well, I think

11 in probably a Chapter 13, not a Chapter 11 context, and so it's

12 somewhat -- it's a somewhat different process I concede.  But I

13 think I have resolved it already and the 13 process is saying

14 that it can be done as long as it's not later than 30 days

15 after the end of that bar date.

16         MR. SCOTT:  In Chapter 13.

17         THE COURT:  Yeah.  In a Chapter 13.  But I'm not sure

18 that the rule is different in a Chapter 11.

19         In any event, I think -- I'm more concerned, Mr.

20 Scott, about rather than how we get here, what the issue is

21 about whether it comes up by way of an objection, the claim

22 process. or whether it comes up by way of a transfer process.

23 What is the difference?

24         MR. SCOTT:  Well, the difference -- there are several

25 differences, Your Honor.  One is if it's a lifting stay and a

1  transfer, the case comes to this Court with a procedural
2  history, including a certification of a state court which this
3  Court -- this Court then doesn't need to address the
4  certification issue.  This Court doesn't need to decide whether
5  to bootstrap Rule 23 into the 9000 rules, because a lifting of
6  stay and a permitting of litigation to proceed in the court
7  where the debtor filed bankruptcy is a Rule 7000 procedure.  It
8  is in an adversary proceeding intrinsically, which incorporates
9  Rule 23.

10         So the case would come to this Court procedurally
11 postured with claims that were filed, the actual claims to be
12 litigated filed by the claimant, unlike a proof of claim
13 process which doesn't identify what the legal issues are, what
14 the legal theories are that are the basis for the claim.

15         Now, I know that Grace would prefer to
16 mischaracterize it as a simple quasi-personal injury question
17 of whether the product is unreasonably dangerous.  But as it
18 will become clear as we proceed, the issues are different in
19 kind and the nature of the science that this Court would be
20 litigating I think will be different from what Grace imagines.

21         So a lifting of stay would permit the natural civil
22 litigation process to unfold before this Court.

23         THE COURT:  Well, what is the issue that I'm going to
24 see in the complaints and I'm not going to see in the proof of
25 claim process?

1          MR. SCOTT:    The issues created by a product liability

2   action, for example under Washington law, are different from

3   the issues they have espoused.    Consumer protection claims have

4   also been asserted as bases for the Zonolite claims.    The

5   Zonolite claims are property damage claims, not personal injury

6   claims, and so the nature of the damage and the nature of the

7   "science" that establishes that damage, is going to be

8   different from the kind of science you would see if I were

9   asserting a medical monitoring case or a personal injury case.

10          So this Court has a -- does not have an accurate

11  picture of the nature of the claims if it thinks it's a simple

12  question, "Is it unreasonably dangerous"?    That is not even

13  central to some of the legal theories.

14          So we believe that a lifting of stay and a permitting

15  of the natural process of litigating those claims creates a

16  community, an actual community, who have the power to litigate

17  their claims and who have counsel to represent them.

18          Grace's procedure, an improper, we believe, filing of

19  a claim on behalf of a creditor prior to the expiration of the

20  claim period, will, if it is agreed to by the Court, involve

21  two things that -- it will involve an appeal on that issue and

22  it will raise with certainty the class certification question

23  because we will be -- in order to have a community of people

24  who have the capacity to litigate this issue, it has to be done

25  on some class basis.    We are prepared to do that on a very

1  limited class basis.  A single state which following three
2  months of discovery and lengthy hearing and testimony by
3  Grace's experts, the Court certified as a class.

4          THE COURT:  And also said that she wasn't sure at the
5  time that there is medical evidence but she was going to let
6  this go forward as a class.

7          MR. SCOTT:  That's correct.

8          THE COURT:  Now, I'm not sure we need to get into
9  this class issue.  I think we need to take a look at the
10 science side that that Court has not yet adjudicated and, in
11 fact, no Court has adjudicated.  And I think we're putting the
12 cart before the horse.  If there is no scientific basis for an
13 injury of whatever nature, it doesn't matter whether your
14 theory is that this sounds as a tort or whatever the consumer
15 protection statute breach would sound in.  For my purposes I
16 guess a tort for right now.  Or whether it's a product
17 liability issue.  It doesn't matter how the claim arises if
18 there's no scientific evidence to substantiate that there's
19 liability.

20         MR. SCOTT:  And what if there is?

21         THE COURT:  If there is, then I think we take a look
22 at the whole case all over again and see whether or not a class
23 is advisable and it may well be at that point.

24         MR. SCOTT:  And the only -- what I'm telling the
25 Court is that the only way that there will be parties before

1  this Court without a complicated Appellate process is through a
2  lifting of stay with regard to cases that are pending because a
3  premature and improper filing of a proof of a claim on behalf
4  of individuals will result in a motion for certification of
5  those classes before this Court and whatever the outcome of
6  that issue, which this Court need not even address, will be
7  appealed.  We know that because Grace has made that clear from
8  its last hearing.  We are trying to put the Court in a position
9  where it doesn't have to address the certification issue.

10        THE COURT:  But I don't have to address it now.  I
11 don't have to address it unless and until somebody shows me
12 that the debtor is going to have liability.  That to whom the
13 debtor has liability at this point is something I don't need to
14 decide.  But the four what is something I do need to decide.

15        MR. SCOTT:  But it is our position the liability
16 issue on its own needs to be resolved on a class basis or not
17 at all.

18        THE COURT:  I don't see why.  And if there is
19 scientific evidence to show that the use of Zonolite caused a
20 property damage, it doesn't matter under what theory, just that
21 there is -- it's either an unreasonably dangerous product or
22 it's going to cause some damage in the future to which people
23 will be subjected, it seems to me at that point then we get
24 into the issue about the scope of the damage and whether or not
25 it is appropriate to certify classes.  And I think it may well

1 be.  I don't know that for sure, but it may well be.  It's
2 going to be very difficult to craft the kind of notice program
3 that will reach all of the people who may have Zonolite without
4 some broad-base distribution of that notice.  And it may be
5 that a class or various classes would be appropriate then.  But
6 why do I need to get there until I have some proof that there's
7 scientific evidence?  Right now this is a crap shoot on
8 everybody's behalf.

9      MR. SCOTT:  Because the Court will not have parties
10 before it --

11      THE COURT:  I will.  The debtors --

12      MR. SCOTT:  -- to litigate --

13      THE COURT:  But I will, the debtors --

14      MR. SCOTT:  -- the issue.

15      THE COURT:  -- filed proofs of claim and if they
16 choose to litigate, they do.  And if they don't, then there
17 isn't going to be any scientific evidence.

18      MR. SCOTT:  The debtor, although we haven't received
19 it, I am informed has filed a proof of claim that will result
20 in a motion to strike their proofs of claim.  It will also
21 involve a motion to lift stay and transfer cases.  If the case
22 -- if the claims of the debtor are permitted, then it will
23 result in a motion to certify as a class the liability issue,
24 even if it's perceived as the question, "Is it unreasonably
25 dangerous?"  If that is not a proof, it will -- it of necessity

1 will result in an appeal because Mr. Barbanti cannot --

2         THE COURT:   Look, no matter which way I do this,
3 folks, you all say you're going to appeal.  No matter what way
4 I do it, you're going to appeal.  So, fine, appeal.  I don't
5 care.  Let's at least get the issue determined so you have
6 something to appeal on.  I mean it would make a lot more sense
7 that we get the fundamentals down and then worry about whether
8 you're going to file an appeal.

9         MR. SCOTT:  Well, as I say, the issues I think will be
10 before the Court at the next Omnibus hearing.  There will be
11 apparently -- a claim has already been filed.  There will be a
12 motion to strike the proofs of claims and there will be a
13 motion to lift stay and to transfer.  The Court will make
14 rulings and then the litigation process will I guess take its
15 natural course.  But what I was trying to do was to expedite a
16 hearing on the liability issue and put this Court in a position
17 where it could avoid the certification issue and Grace's
18 proposal I think just cast the Court right into the --

19         THE COURT:  Number one --

20         MR. SCOTT:  It cast the Court into the certification
21 issue, I'm sorry.

22         THE COURT:  Number one, I don't know that I either
23 can or should avoid the certification issue at the appropriate
24 time.  The problem is I think it's premature.  There is no
25 point going to certification issues if, in fact, there isn't

1 going to be any liability determination.  If there is going to
2 be a liability determination, then I think we need to look at
3 the scope.  You've already got the class action certified in
4 the state court.  That's not going anywhere.  So I'm not sure
5 why at this point that whole thing has to come into this court.
6 And if it does, okay, do it that way, I don't really care.  I
7 want to get to the liability side so we can see --

8         MR. SCOTT:  I do too.

9         THE COURT:  -- what it is that this debtor might be
10 subjected to and to whom it may owe and what at some point.

11         MR. SCOTT:  I agree, Your Honor.

12         But I guess the point I would like to leave the Court
13 with is, classes are typically certified and almost invariably
14 uncertified.  Certified on the liability issue and not on the
15 damages issue.  The Court is doing it the other way around.
16 One of the reasons that the Washington court certified the
17 Barbanti case is because trial of the liability issue could not
18 be done even in Washington by a single claimant or a few
19 claimants standing alone.  That is as true in Delaware as it is
20 -- or Pittsburgh as it is in Washington, and so rather than
21 avoiding an issue and getting swiftly to the liability trial, I
22 fear we'll really run sort of run into a procedural nightmare
23 that will set off --

24         THE COURT:  But I think what you're saying is simply
25 that whatever the claimants, and I don't know who they are that

1 the debtors have picked, may not be able to afford the cost of
2 the litigation on the science side.  Is that what you're
3 telling me?  Because if that's the case --

4          MR. SCOTT:  That at least, yes.

5          THE COURT:  All right.  If that's the case, you
6 represent a whole lot of plaintiffs who can join in this action
7 simply by filing a proof of claim.  So if you want more people
8 to share that load, it seems to me that the opportunity is
9 here.  You file a proof of claim.  And we still get to the
10 common issue trial.

11          Pardon me.  Somebody on the phone, I don't know if
12 you're writing or typing or what you're doing next to your
13 microphone, but it's coming across here and it's very difficult
14 to hear.  Could you please do whatever it is, maybe put your
15 phone on mute or something until you're ready to speak.

16          Thank you.

17          MR. SCOTT:  And that is probably one of the
18 procedures that happens.  Mr. Barbanti, who is a representative
19 of the State of Washington, will file a class proof of claim,
20 and off we go.

21          THE COURT:  Well, I still think that we're putting
22 the car before the horse in this instance.  I truly do.  And
23 I'm not sure why we want to complicate what should be, I think,
24 a pretty much cut and dried battle of experts on the liability
25 side by adding to it the issues of a class certification.  I'm

1  really not.

2       Now, I'm not saying that the experts are going to
3  agree.  I don't mean to minimize the complexity of the
4  evidence.  But I'm not sure that we have to go there yet.  And
5  why do we want to if, in fact, it turns out that there is no
6  proof of liability, we're not going anywhere with class
7  certifications.  And if there is liability, we've got a whole
8  different horse to deal with.

9       MR. SCOTT:  Your Honor, it is because individuals
10 with small claims are powerless to litigate a liability issue,
11 which in this case will be in the neighborhood of a half a
12 million dollars of expert witness fees only.  That is the
13 circumstances under which classes are typically certified and a
14 failure to certify a class, the parties are powerless to pursue
15 their claims absent certification, isn't -- gives them an
16 automatic right of appeal.  So we're --

17      THE COURT:  Number one, I don't know that there is
18 going to be an automatic right of appeal when it's
19 discretionary in a Bankruptcy Court.  I haven't seen any cases
20 that say the class certifications are mandatory in Bankruptcy
21 Courts.

22      Number two, in Bankruptcy Courts typically almost
23 everyone who has a claim, and obviously there are exceptions
24 when you paint with this broad a brush, but most people who
25 file claims have small claims.  They bear the burden of that

1 litigation.   There is an Unsecured Creditors Committee already
2 appointed who can handle this litigation.   They're there to
3 deal with issues like property damage claims.   They have
4 counsel.   They can hire experts.   This group of people can very
5 well be represented by that Unsecured Creditors Committee and I
6 don't see how they're going to be disenfranchised from their
7 power to litigate by virtue of not having a class proof of
8 claim certified at this stage.

9        Now, having said that, it's entirely possibly that if
10 there's liability, again the universe may change.   And at that
11 point it may be appropriate to take a look at a different class
12 issue and perhaps do something different from the unsecured
13 creditors.   But I see no reason why this is anything other than
14 a typical unsecured claim that the Creditors Committee can
15 handle.

16        So I have to disagree.   They've got the power.
17 They've got the professional fees in place.   They certainly
18 have the power to retain experts, and I can't see how they're
19 losing rights in this process at this stage.

20        MR. SCOTT:   Well, actually we have a disagreement
21 that any official Committee has the power to litigate the
22 claims of individuals who are members of that claim and Civil
23 Rule 23 is not discretionary in the 7000 rules, an adversary
24 proceeding, which is why the Lewis adversary proceeding was
25 filed.   The dismissal of the Lewis adversary proceeding was

1 conditioned on a transfer and removal of cases which was the

2 position Grace took last time.

3    And so I understand what the Court is saying and I

4 started --

5    THE COURT: No, you don't, Mr. Scott, because I'm not

6 suggesting that the Unsecured Creditors Committee is going to

7 litigate a particular claim. But when you're looking at the

8 concept of whether the debtor bears liability based on some

9 scientific evidence to, when I use this word "class" I don't

10 mean for Rule 23 purposes --

11    MR. SCOTT: Sure.

12    THE COURT: -- but to a component of a creditor body,

13 a class of creditors in that sense. I don't see any reason why

14 the Unsecured Creditors Committee cannot handle that type of an

15 issue.

16    So I really don't see why a common issues trial

17 doesn't work first. But I see, as I said, if there is

18 liability, I think at that point in time there are some serious

19 issues with respect to class certification. But I think we're

20 putting the cart before the horse in this bankruptcy context.

21    MR. SCOTT: Well, I hope I at least helped the Court

22 in understanding what the issues are. I'm certain I haven't

23 helped the Court in resolving issues. And I guess these will

24 be formally presented at the next omnibus hearing.

25    THE COURT: All right.

1          MR. BERNICK:  Your Honor, if I could make a proposal.

2          We have filed the claims.  In terms of the

3  timeliness, Your Honor is correct that the issue has been

4  resolved in the context of Chapter 13.  That was the Snyder

5  case, Western District of Pennsylvania.  It's at 156 B.R. 759.

6  It squarely addresses the issue.  It says that the claims can

7  be filed really at anytime after the creditors meeting and

8  prior to the expiration of 30 days after the bar date.  So we

9  have an adequate window.  We're well within the window.  And

10  that process is underway.

11          If they want to file a motion to strike the claims or

12  strike that process, I suppose they can always do it.  I would

13  advocate that they take a look at these cases because I think

14  that it really is a Rule 11 situation.  It's very plain from

15  the language of the rule as well as from the cases.

16          That then brings us to what to do.  And it seems to

17  me that there are three basic things to do.  Number one is that

18  the adversary should be dismissed without prejudice.  Without

19  prejudice.  That they believe that some fashion they can still

20  pursue this by way of adversary notwithstanding the Manville

21  case and the Penney case and 1015, let them go ahead and do

22  that, but they don't have to do it now.

23          THE COURT:  I don't have to do it now either.  It

24  seems to me that if we're going to get to a common issues

25  trial, I can let this adversary sit until we do.  I don't need

1   to dismiss it.  I simply don't need to schedule it.

2          So if they don't want to withdraw it, that's fine,
3   I'll just let it sit here.

4          MR. BERNICK:  Okay.  And we'll just let then our
5   existing motion to strike the adversary as well.

6          THE COURT:  That's right.

7          MR. BERNICK:  The third thing is I would ask the
8   Court enter an order deferring all matters pertaining to class
9   certification until after the Daubert motions or ultimate trial
10  on this threshold issue is resolved.

11         THE COURT:  Well, I want to hear from the Unsecured
12  Creditors Committee on that point, Mr. Bernick, because I'm
13  assuming that there is a vehicle by which several small
14  claimants, if I can borrow Mr. Scott's words, can be
15  represented against a debtor that has a deep pocket by virtue
16  of some agreements with the banks to litigate this issue in
17  terms of the professional fee carve-outs.  That's what I'm
18  speaking about.

19         MR. BERNICK:  Can I raise a question about that?
20  They would be no more able to do that even in the context of
21  Rule 23.  Under Rule 23 they would still have further costs
22  until the conclusion of the case.  They wouldn't get advance
23  court funding for that purpose.

24         THE COURT:  Well, yes, I know, but the problem is
25  that the debtor in picking and choosing which claimants come

1    in, may have picked and chose those who choose or not choose to
2    bear some part of that cross.

3         MR. BERNICK:  We're brought them all in.  We brought
4    every single person who had filed a claim as a representative
5    from all the different class actions --

6         THE COURT:  Oh, I thought you said you brought ten
7    in.

8         MR. BERNICK:  There were ten, but they were taken as
9    class representatives from all of the existing class action
10   cases.

11        THE COURT:  Oh, I see.

12        MR. BERNICK:  We didn't pick and choose at all.
13   There was one individual who wanted to drop out, his name slips
14   me, and so we said okay, well if you don't want to pursue your
15   claim, you don't want to pursue your claim.  All the others
16   that we brought in, and they come from all the different cases,
17   all the different counsel, including counsel that the Lieff,
18   Cabraser firm, I believe, cases they're involved in as well.

19        So we have not -- we have not hunt and pecked around
20   to find selected plaintiffs.  We've brought them all in and it
21   seems to me that this is the same kind of investment any
22   plaintiff's firm has to make in any litigation that is kind of
23   getting underway, which is do you want to bear the costs that
24   are associated with that?

25        So again, our proposal would simply be to defer all

1 class issues.  If they want to try to take an appeal from Your

2 Honor's orders simply deferring the issues until after a

3 hearing on the science, they can go ahead and do that.  I don't

4 think their prospects are bright.  But that way everything is

5 simply put to the point in time when we have behind us the

6 issue -- the resolution of the issue of whether there's a

7 problem with this product at all.

8       And then finally, we would like to get an order --

9 maybe we can draft up an order consistent with what I recited

10 to the Court about the timetable and the like so that we can

11 actually get this process underway.

12       THE COURT:  Okay.  Well, with respect to the

13 timetable, I think there was something that I thought was

14 missing.  Pardon me a minute while I find it since I'd like to

15 hear from other counsel on that score, too.  Let me take a look

16 at this for a moment.

17                          (Pause)

18       Okay.  I think the schedule works assuming that

19 parties can do things like this.  You're proposing that your

20 Daubert-related summary judgment motions would be filed

21 December 20, but there's not a reply and response schedule.  I

22 would assume this would mean a response would be due by not

23 later than January 15th.  I know that's later than normal, but

24 the holidays are in there.  And a reply a week later by January

25 22nd.  If that's the case, then probably we can get to

1 something in February.  I don't know about February 3rd
2 specifically.  I don't even have a 2003 calendar yet to be able
3 to see it, but I'll have to pull one to see.  Somewhere in that
4 vicinity.

5 MR. BERNICK:  Yeah.  In point of fact it was for that
6 by reason of the holidays that we deliberately -- we didn't
7 want to be too presumptuous with regard to any dates that
8 involved the Court to begin with.  If we accept Mr. Sobol's
9 suggestion and we have the expert disclosures for the company
10 or for the plaintiffs be due on September the 30th as opposed
11 to September the 3rd, all of the dates thereafter get shifted
12 back 30 days anyhow.

13 THE COURT:  Anyway.

14 MR. BERNICK:  So we're really talking about probably
15 January 20 for our summary judgment motion, Daubert motion.  A
16 response, a reply and then a hearing probably in early March.
17 We're very mindful of the Court -- I think it's everybody's
18 desire to get this done promptly, so we really -- we want to
19 show that flexibility at the same time.  We really would like
20 to have this litigated early next year.

21 THE COURT:  Okay.  Mr. Lockwood.

22 MR. LOCKWOOD:  Your Honor, I'd just like to make two
23 points.  First, with respect to the issue of bringing the
24 Barbanti class in in certified form by a lift stay procedure,
25 that would effectively not only take this Court out of the

1 determination of whether or not class treatment was

2 appropriate, it would also take the Unsecured Creditors

3 Committee, the Asbestos Personal Injury Committee and everybody

4 else that didn't happen to be in the State of Washington when

5 Mr. Scott got certification of what was at that point only a

6 single state out of 50 states class action.  And there are a

7 lot of issues about what kind of a class you might have in this

8 case; B2, B3, B1, whatever.  There are issues about whether you

9 would certify certain issues.  Mr. Scott already indicated the

10 possibility you might certify liability questions vis-a-vis

11 damage questions and things of that nature.

12         So my Committee would strenuously object to the idea

13 of simply importing some state law class certification to, as

14 Mr. Scott put it, save this Court the need for having to decide

15 it itself.  I think this Court is perfectly capable of

16 determining issues of that sort.

17         The second had to do with what I took to be some sort

18 of, I don't know, threat maybe isn't the right word, but some

19 suggestion at least that if Mr. Scott and Mr. Sobol and the

20 other proponents of class actions and their individual clients

21 were not assured up front that this would be a class

22 litigation, that they would sort of take their ball and go home

23 and not litigate it.  And the theory apparently being that -- I

24 mean the idea that, for example, Mr. Barbanti is going to be

25 financing a class litigation here is preposterous.  As

1  everybody in the courtroom knows, people are going to be

2  financing this litigation in a class counsel who are supposedly

3  adequate to do that job.  And even in a class certification,

4  class certification is almost invariably conditional.  And so

5  any class counsel for the class action always runs the risk

6  that after they have gone through some form of litigation,

7  whether it be merits or otherwise, that the Court will change

8  its mind and de-certify the class.  And it seems to me that if

9  the arguments in favor of class treatment here are as

10 persuasive as the class proponents seem to believe that they

11 are, it is by no means an imposition to suggest that those

12 class representatives or their counsel should be prepared to go

13 ahead and litigate on behalf of those classes in the same way

14 that they would if they were conditionally certified.

15         And so I think that the proposal that the debtor has

16 made here to go forward on some form of a test case basis,

17 under those circumstances is perfectly appropriate.

18         Thank you, Your Honor.

19         THE COURT:  Anyone else wish to speak?

20         MR. SCOTT:  Could I make a comment on that, Your

21 Honor?

22         THE COURT:  Yes, sir, go ahead.

23         MR. SCOTT:  One of the first conversations I always

24 have with a person who seems -- enough to assume the role of a

25 class representative is the discretion of the rules of

1 professional responsibility and I'm able to tell them that they
2 are responsible for the costs but that some rules and rules of
3 professionals with responsibility have one exception which is
4 if it is certified as a class, then our firm can advance those
5 costs.  But if it is not, then they are responsible for the
6 costs.

7 MR. LOCKWOOD:  Your Honor, I don't believe there's
8 one recorded case under Rule 23, state or federal, in which
9 somebody who is urging the certification of the class and whose
10 expenses have been picked up by punitive class counsel in the
11 event that the class is denied or de-certified, has been held
12 liable for hundreds of thousands of dollars of costs incurred
13 by their counsel.  But if Mr. Scott has some authority for that
14 point under the rules of -- I'd certainly be interested hearing
15 him tell us about it.

16 MS. KRIEGER:  Arlene Krieger, Your Honor, from
17 Stroock on behalf of the Unsecured Creditors Committee.

18 Your Honor, I can honestly say that I can't even
19 address any of these issues today.  I'm not prepared at all to
20 do that.

21 THE COURT:  Mr. Bernick.

22 MR. BERNICK:  Yeah.  Having heard all the comments, I
23 think that again to even -- if Your Honor would direct that all
24 class issues are deferred until after the proceeding on the
25 science takes place and then entertain an order regarding

1  scheduling along the lines of the dates that we had proposed
2  and the other side has agreed to, I think we're in business and
3  we can go forward.

4            THE COURT:   Mr. Baena.

5            MR. BAENA:   Your Honor, I guess it's appropriate for
6  the Property Damage Committee to comment since Zonolite is a
7  constituency we represent.   For the record Scott Baena on
8  behalf of the Property Damage Committee.

9            Your Honor, until we arrived here today, we were
10  unaware of the fact that the debtor filed proofs of claim.
11  Indeed there are class counsel on our Committee who I would
12  have expected to have been provided with copies of whatever was
13  filed by the debtor so we could ascertain the entire universe
14  of what they filed.   But to the best of my knowledge they
15  haven't been served as yet either.

16            When we left the hearing last time, I left content
17  with the notion that the Committee was out of this fray.   There
18  were no pleadings directed at the Committee.   There was no
19  correspondence that's been alluded to that was directed to the
20  Committee.   Everything we have since then learned about this
21  fray has been anecdotally through members of our Committee by
22  viewing from time to time things that have been filed with the
23  Court or by copies of correspondence.

24            As a consequence, I want the Court to be aware that
25  we sort of sat back and maybe that was an appropriate thing to

1  do.  We did sit back and assumed that we were not in this
2  fight.  So in terms of the scheduling that's been proposed to
3  the Court, we haven't taken a view.  We haven't even began to
4  formulate a strategy or an approach to this litigation and
5  we're unable to provide the Court any sense of the reality of
6  the guidelines that you've been discussing.

7          I apologize if I misunderstood.  I thought it was
8  pretty clear from the transcript after I read it again that
9  this was all directed at class reps.  I do believe that Mr.
10 Scott made it abundantly clear that his concern was identifying
11 the class reps as the individuals who would be forced to go
12 forward because of the undue imposition upon them and that
13 sounded right to me.  I'm not a class action lawyer, but it
14 sounded right to me.

15          I do understand that the debtor is trying to move
16 this into another direction.  I do believe that there's a
17 fundamental unfairness in this whole process to the extent that
18 we ordinarily would be involved in a fight like this, but
19 because of its very, very unique and specialized nature, we're
20 not because of the competent counsel that's available.  If we
21 were involved in the fight as you point out, so much of the
22 expense side of the fight would be taking care of through the
23 bankruptcy process and the debtor would pay for it.  I mean it
24 seems like availing ourselves of this unique competences,
25 unfortunately imposing a disadvantage upon claimants who we

1  theoretically represent.  Bearing in mind, Judge, we represent
2  as a Committee.

3  THE COURT:  I didn't follow that.  If I have
4  competent Committee counsel who has the same ability to hire
5  experts, probably one of whom might be class counsel, and
6  experts in terms of witnesses who would be presenting evidence
7  on behalf of the claimants, and they represent the claimants
8  and it's a property damage issue at heart in essence, I'm not
9  sure why that's unfair.  It seems to me that that's perfectly
10  fair.

11  MR. BAENA:  No.  Forgive me.  What I was saying is if
12  it's not considered to be the Committee that's promoting this,
13  which we are not assuming that it is, by imposing upon the
14  class reps to promote this or to wage this legal litigation,
15  imposes upon them the obligation to fund that litigation.  I'm
16  not so sure that that's fair.

17  Again, Judge, the host of Zonolite claimants are
18  unidentified.  Nobody knows who they are.

19  THE COURT:  Right.  Or if they are.

20  MR. BAENA:  Or -- well, we know they are.  We don't
21  know whether they have a claim that you'll deem to be
22  allowable.

23  THE COURT:  Well, we know there's a class -- well,
24  that's right.  We know there's a class that's been certified to
25  address the issue of the liability and whether there is a class

1  or whether there will at some point be damages paid.  But at
2  this point I don't think anybody knows that there really are
3  claimants out there.  There are obviously named claimants that
4  people know, but how many and the extent I don't think is
5  known.

6      MR. BAENA:  We're just, you know, trying to define
7  the problem, you and I, and I think there are claimants.
8  Whether their claims are allowable is an entirely --

9      THE COURT:  Okay.

10     MR. BAENA:  -- different issue --

11     THE COURT:  Fine.

12     MR. BAENA:  -- and I believe that you're looking to
13  this proceeding for guidance in that regard.

14     THE COURT:  Yeah, I accept that.  That's probably a
15  better way to say it.  And maybe what this gets to is that we
16  can avoid both the class certification and all other issues by
17  considering whether this group needs a Committee.  Maybe that's
18  the long and short of it.

19     MR. BERNICK:  Yeah, I'm not sure -- again, I think
20  that Mr. Lockwood did accurately state what the practice is
21  outside of Chapter 11.

22     THE COURT:  Yes.

23     MR. BERNICK:  And therefore when there's a question
24  of the unfairness of the burden, it's no more unfair than our
25  jurist provincial system is unfair by imposing the costs of

1  prosecuting litigation of the people who wish to prosecute it.
2  And maybe the fact that there aren't very many claimants who
3  apparently have stepped forward is an illustration of the fact
4  that notwithstanding the visibility of this issue and counsel's
5  activities, there aren't a lot of people who are really
6  interested in prosecuting this claim.

7        Be that as it may, I'm not sure that the cure is to
8  create a committee.  I understand it and I was not directly
9  involved, but I believe Mr. Lockwood was, the issue of who
10 would pay for the cost of expert expenses in connection with
11 the prosecution of particular kinds of property claims was
12 raised and addressed by Judge Newsome in the context of the
13 Armstrong case.  In that case he set a date for determining
14 really a very similar issue which is there any science to
15 support these claims brought by people who say they were
16 exposed to -- or property claims relating to flooring material.
17 And there was an application on behalf of the Committee to
18 retain experts for that purpose and Judge Newsome ruled and,
19 Mr. Lockwood, correct me if I'm wrong, that the application be
20 denied because this is the expenses associated with the actual
21 prosecution of a claim.  That that's not a matter that's up to
22 the Committee, it's up to the individual claimants and their
23 counsel and the costs are not to be borne by the Committee.

24       So I'm not sure that there's a committee solution to
25 that particular problem.

47

1       THE COURT:  But I think the difference though, Mr.
2  Bernick, is I don't know whether Judge Newsome is faced with
3  motions to certify classes or whether any have been certified.
4  I'm not familiar enough with the case to know.

5       MR. BERNICK:  I think that there was a motion in that
6  case to certify class as well --

7       THE COURT:  But had there been certifications pre-
8  petition?

9       MR. BERNICK:  No.  No, there had not.

10      MR. LOCKWOOD:  Your Honor, since I was counsel in the
11  Armstrong case, maybe I can speak to that.

12      There was a motion to file a class proof of claim on
13  behalf of the punitive class of floor tile claimants in the
14  Armstrong case.  There was a motion on behalf of the PD
15  Committee in that case to be permitted to employ experts to
16  prosecute.  There was an objection from the debtor based on the
17  proposition that while Committees have broad powers to look
18  after the interest of their respective constituents, that power
19  does not go to the extent of actually attempting to prove that
20  the debtor has a liability to those plaintiffs which Judge
21  Newsome viewed as in effect asking the debtor to pay to have
22  claimants establish the debtor's liability in a matter that the
23  debtor was contesting.

24      So what Judge Newsome ultimately did was he said that
25  the proponents of the class action would have to proceed

1  forward on essentially a similar type test case basis here and
2  he gave the PD Committee what he characterized as a gatekeeper
3  role under which that Committee would help serve a liaison
4  function between the class proponents and the Court and the
5  broader constituency.  But he did not authorize, at least as
6  the matters presently stand, and this is, of course, always
7  subject to, you know, further consideration of the motion
8  practice, et cetera, but as the matters presently stand, he did
9  not delegate to the task of PD Committee in Armstrong.  The
10 task of actually litigating the science questions that are
11 raised with respect to that process that are similar to that
12 here.

13         THE COURT:  But he started with a class proof of
14 claim?

15                   (Background noise on tape)

16         MR. LOCKWOOD:  He started with a class action
17 complaint in Texas that was originally a state-only claim that
18 they then attempted to file a class proof of claim and -- to a
19 national class.  And he had class counsel from Texas who were
20 in court arguing that they should be permitted to go forward on
21 a class basis.  And he had a similar set of proceedings about
22 whether they should have a class determination made.  The
23 difference is that he has, in fact, set a parallel schedule,
24 one schedule for the liability and another schedule for class
25 certification.  So that in Armstrong there is an ongoing two-

1 track proceeding.  One directed for the liability and the other
2 directed for the propriety of class certification in which the
3 class proponents all on -- are being afforded an opportunity to
4 come in and argue -- an opportunity to come in and argue...

5           That's where the matters presently stand.

6           THE COURT:  Would those of you who are on the phone
7 please put your mute buttons on.

8           I'm sorry.  I missed a step though, Mr. Lockwood,
9 with respect to the class proof of claim.  You started with a
10 state court action.  They wanted to expand it to a national
11 class.  I take it that didn't happen, but instead a class proof
12 of claim was filed.  Now, I believe the bar date is over in
13 Armstrong for creditors, correct?

14          MR. LOCKWOOD:  That's true, although there are a
15 series of proceedings aimed at extending the bar date and
16 allowing late filings of claims and the like.  And the class --
17 Judge Newsome expressly permitted the filing of a class proof
18 of claim on behalf of the Armstrong floor tile claimants
19 precisely to permit that class to have an allegation at least
20 that is not barred by the bar date.  Obviously if certification
21 is ultimately denied, the question of what happens to the class
22 claims at that point, they may well be barred by the bar date
23 or they may -- Judge Newsome may be prevailed upon I guess to
24 go through a supplemental notice program.  I don't know.  I
25 mean that's obviously the subject of potential future motions

1  practice.

2         THE COURT:  But that might actually be the way to
3  handle what everybody is trying to get to.

4         MR. BERNICK:  What's that?

5         THE COURT:  Let one class proof of claim with respect
6  to Zonolite be filed then simply defer any issues about whether
7  it's appropriate or not appropriate so that in the event that
8  there is a determination of some liability, there's a class
9  proof of claim that can be looked to without a determination as
10  to whether the class is appropriate at this time.

11         If that's the case and that class has counsel, Mr.
12  Scott's issues I think go away.  They clearly at that point in
13  time can retain --

14         MR. BERNICK:  At their own expense.

15         THE COURT:  Oh, yes, at their own expense.  That's
16  how it would be anyway.

17         MR. BERNICK:  Yeah.

18         THE COURT:  I mean if the whole issue is trying to
19  get a -- I'm not sure what, some sort of a class together for
20  purposes of looking at this scientific issue, then maybe we can
21  get that vehicle in.  All I'm trying to do is figure out a way
22  that you folks can actually decide that -- or prove, I
23  shouldn't say decide, prove that there is or isn't liability
24  and then let's get to the guts of who it is who's been harmed
25  and how.

1          MR. BERNICK:  Right.  If you take a look at that
2  idea, there's the issue of expense which I think got us going
3  down this whole road.  And the issue of expense again I don't
4  think really changes whether you're in Chapter 11 or not and
5  Chapter 11 and you're prosecuting individual claims.  I think
6  that it may be that that expense is something that if the Court
7  is that concerned about might be the subject of some specific
8  inquiry.  Mr. Scott actually said that he's very anxious to
9  have the record in the Barbanti case be imported into this
10  case, that would include the evidentiary submissions that were
11  made in that case.  He's got experts.  He's got an evidentiary
12  record.  He's got the slot signs light up.  What is this huge
13  additional cost that we're really going to face to confront
14  what is essentially the same kind of issue that was confronted
15  in the Barbanti case, supplemented by some additional evidence?
16  How costly can it really be?  Maybe that's an appropriate area
17  to make inquiry.  We can see how much of an issue this really
18  is.

19          But the class proof of claim, A, isn't going to solve
20  that problem.  B, if you do anything with it, that is to say
21  that it has some effect on anybody's rights, you then have the
22  same two problems all over again.

23          THE COURT:  That's true.

24          MR. BERNICK:  Is it class certified or not?  Are
25  people bound or not?  What's the effect of the class

1  certification?  Does there have to be a notice either in
2  connection with the proof of claim or in connection -- it's the
3  same mess all over again.

4             THE COURT:  That's probably right.

5             MR. LOCKWOOD:  Your Honor, with all respect, I think
6  we're conflating two issues.  One is a class proof of claim,
7  the other is a certification of the class pursuant to the class
8  proof of claim.

9             Judge Newsome took the position, and I frankly think
10 he was right, that hey, anybody can file a proof of claim and
11 they can file a proof of claim on behalf of the class if they
12 want to and that gets the class in there at least with the sort
13 of place-holder thing and whether or not the class gets
14 certified is the appropriate subject of supplemental briefing
15 and argument and things of that nature.  And if the Court's
16 concern here and counsel's concern is making sure that there is
17 some record that somebody in this case is pressing forward with
18 the notion that there should be class treatment here, the
19 filing of a class proof of claim would certainly put, you know,
20 the place-holder there and then the Court could in its
21 discretion determine when and how and in what process the
22 certification issues would be made as compared to the liability
23 issues.  I mean Courts with class actions have tremendous
24 discretion to order conditional determinations.  They can defer
25 determinations of class.  They can worry about -- because

1  they'll be subclasses or issues only or whatever.  They can do
2  a lot -- they have a lot of power and if the only issue here is
3  simply making sure that there is a record in this court that
4  class litigation is underway, a class proof of claim certainly
5  at least get that basic foot in the door.

6       MR. BERNICK:  They already have that in connection
7  with the adversary proceeding which Your Honor is basically
8  letting hang out there subject to our motion to dismiss.

9       THE COURT:  Well, I think that's a little different
10  because that's not looking at the issue of the debtor's
11  liability on the science side.  I mean I think the problem is
12  we could try the issue of the science and then the question is
13  what do we do with it after that?

14       MR. BERNICK:  Right.

15       THE COURT:  Let's just assume for a moment that, in
16  fact, there is a determination that the debtor has some
17  liability.  Okay, if it's done in that adversary, then the
18  plaintiffs to that adversary are bound and so is the debtor,
19  but I don't know that that sets up the structure of either of
20  the common issues trial.

21       MR. BERNICK:  Right.  I'm not proposing it.  What Mr.
22  Lockwood was saying is that there ought to be some record that
23  there is a request to have class treatment of this matter and I
24  think that that record is already there because there have
25  been, gee I don't know, four different rounds of briefs filed

54

1  to that effect.  The real issue on what basis is the issue
2  litigated at the turn of the year?  What do you do with that
3  determination?  And where we were going last time, we're I
4  think still going today, is that if you use these individual
5  test cases, you can decide the science.  We know who the
6  claimants are.  And we know really that the only people who are
7  bound are those particular claimants.  At that point you can
8  then decide what you want to do to, as I say, write large
9  whatever it is that you've learned from that proceeding.  You
10 can take then up the question of whether there ought to be a
11 certified class proof of claim.  You can take up the question
12 of what to do at the adversary proceeding.  As soon as you take
13 either one of those things, the class claim or the adversary
14 proceeding and make it actually part of this hearing that's
15 going to take place, then you have to follow all of the
16 associated rules and that I think gets us back into the world
17 where we're going to have appeals up and down because it's
18 essentially -- it is, in fact, a class determination.  And
19 that's a very different kettle of fish.

20         THE COURT:  That's the issue.  I don't think we want
21 to get to the -- at least I don't think I want to get to the
22 concept of certifying a class until I know that there's a basis
23 on which --

24         MR. BERNICK:  Right.

25         THE COURT:  -- to certify a class.  And I don't know

1  how much -- I sound like a broken record, I know, and all I'm
2  trying to wrestle with is something that seems to make all of
3  you a bit more comfortable in getting that science side decided
4  before we have to worry about who will be subject to those
5  rulings.

6           MR. BERNICK:  And it seems to me that if Mr. Scott
7  really has a fundamental problem with the fees, let's find out
8  what those costs are really going to be in connection with this
9  process.  And I think he also -- it's not just Mr. Scott's
10 firm, he's got Lieff, Cabraser and I kind of -- I had this
11 vague feeling that Lieff, Cabraser has tremendous resources and
12 that this is something that they do all the time.  I know this
13 is their whole practice.  I'm a little regretful that Mr. Sobol
14 is not here in order to deal with this, but it seems to me if
15 that is the residual issue, that is who bears the burden of
16 this, that's something that we can take a look at without
17 having that be the tail that wags the dog.

18          THE COURT:  Yeah, that's a little bit of what I'm
19 concerned about, too.  I agree that outside -- even in the
20 bankruptcy, individual claims, claimants, do bear the brunt of
21 the expense.  I mean that's just the way it is.  If you file a
22 claim and somebody objects to it, you have to prove your claim.
23 I'm not sure that that's any more than what's happening here in
24 a slightly different context, but nonetheless coming up the
25 same way.  So --

1        MR. BERNICK:  If we could go back to -- maybe as a

2  point, reserve that for the next hearing and then maybe if we

3  can get a better feel for what we're really talking about

4  there, we could have a more fruitful discussion of it.  And at

5  this time again, in order to get the ball rolling on this whole

6  process, we're very anxious to get Your Honor to approve the

7  schedule that's been laid out and to -- I think you're going to

8  have to, otherwise we will face the motions, the lift stay and

9  all the rest of that --

10        THE COURT:  Yeah.

11        MR. BERNICK:  -- defer specifically the prosecution,

12  the class certification issues, and again if Mr. Scott is that

13  upset about it, he can appeal that deferral, although God knows

14  I don't know that that appeal is really going to go anywhere.

15  But I think that that's necessary in light of all the

16  statements that have been made here about the desire to go

17  prosecute motions to lift stay and the like.  It should just be

18  deferred.

19        THE COURT:  All right.  Well, Mr. Baena, I know that

20  your Committee may get involved in this even though you haven't

21  been involved in it.  The debtor is proposing a schedule that

22  essentially would start discovery June 1st and end it by the

23  end of the year roughly.  Through expert discovery.

24        MR. BAENA:  Respectfully, Your Honor, we don't yet

25  know -- I mean they said they filed this claim on behalf of

1 every single conceivable class rep, I don't know who those are.

2         THE COURT:  Were they served?

3         MR. BAENA:  They probably have no notice of this

4 hearing.

5         MR. BERNICK:  No, we did.  But because we felt we

6 were obliged to serve file-stamped copies of the proof of

7 claims when they were filed, we didn't get them back until Mr.

8 Carickhoff -- we didn't get them back until the last couple of

9 days.  But those were filed and they are being served.

10        MR. BAENA:  If I understand the process, such as it

11 is, all of those class reps are being implicated by this

12 process.

13        MR. BERNICK:  Yes.

14        MR. BAENA:  And they're not even here.  They have no

15 idea that we're about to set up a process that has a trial at

16 the end of the day, in February or March or what have you, that

17 could very well end their claims.

18        MR. BERNICK:  Yes, they certainly do because their

19 counsel are here.  Mr. Scott is here.

20        MR. BAENA:  No.  Well, if -- then I believe that Mr.

21 Bernick is mistaken about having filed a claim in respect of

22 every class rep.  Because we know of non -- we know of Zonolite

23 claims that have been asserted in other class actions that

24 aren't characterized as the traditional Zonolite lawsuits.  We

25 know that --

1        THE COURT:  And they're not -- without class reps
2  though.

3        MR. BAENA:  They have class reps.

4        MR. BERNICK:  Yes, we have picked up the class reps
5  from those other proceedings.

6        THE COURT:  Oh.

7        MR. BERNICK:  And Mr. Baena is correct, the people
8  who would know are the people whose lawyers also are here and
9  there may be other lawyers to represent other claimants who are
10  not -- who are not here --

11        MR. BAENA:  Judge --

12        MR. BERNICK:  -- that's correct.

13        MR. BAENA:  -- you know, notice.  This is not an
14  improvisational exercise.  I mean he assumes because people are
15  in the room they have notice.  That's not how we do it.  At
16  least not for the last 200 years.

17        MR. BERNICK:  We submitted a letter -- I'm sorry.  We
18  submitted a letter, Mr. Baena, on the 5th of April to Mr.
19  Sobol.  We told him exactly what we were going to do.  There's
20  no secret about any of this.

21        MR. BAENA:  My point --

22        THE COURT:  No, I understand the point.  I agree that
23  we need to get notice to anybody, particularly inasmuch as
24  we're now looking at proofs of claim designating people as
25  essentially class representatives within those proofs of claim.

1  I agree we need to get notice out.  I think, however, the way

2  to do it is to propose a scheduling order.  Have those

3  claimants and their counsel serve both with a notice, in fact,

4  that the claims have been filed and the scheduling order.  And

5  then permit a method by which people can say that it's not

6  proper for whatever reason.  If we don't get some scheduling

7  order in place, we'll never get started and I think it's time

8  to get started.

9        So I think it would be a good idea to at least get

10 something of record, but without prejudice to people coming in

11 and saying it's not long enough or it's too long or whatever

12 they may want.

13        MR. BAENA:  I agree, Your Honor, and I raised that at

14 the last hearing, I did.

15        THE COURT:  Yes.

16        MR. BAENA:  Not to say I told you so.  I said, you

17 know, if we can use this as a hearing to decide scheduling.  We

18 ought to give all class reps notice.  We didn't do that.

19 Judge, but I think what we're going to struggle with is what

20 are we going to say this is notice of?

21        MR. BERNICK:  That's --

22        MR. BAENA:  I mean what are we going to call it?

23        THE COURT:  All right.

24        MR. BERNICK:  I don't think that that -- why is that

25 difficult?  Well, rightly we'll serve a notice.  The notice

1  will go out to all the claimants and their counsel and the
2  notice would be of a schedule of litigation to a hearing on the
3  merits of the issue that's been framed.  It's just a question
4  of letting it out.  It's not -- it's not rocket science.  And
5  we do have the advantage that certain counsel for some of those
6  representatives already have been a part of this process and
7  therefore have read all of the lengthy briefs that have been
8  filed.

9         You know, the fact of the matter is that these people
10  have initiated a litigation.  All we're doing is taking their
11  claims and bringing their claims here.  This is not -- and
12  we're isolating an issue that's common to those claims.  This
13  is not some -- this is not some extraordinary crisis or novel
14  proceeding.  It is taking a claim and bringing it here.  It's
15  what 3004 exists for.

16         MR. BAENA:  It is an extraordinary process, Your
17  Honor.  I haven't seen it in 28 years.  We are dismantling the
18  class action system by this process.  That's what we're doing.
19  It is extraordinary.

20         THE COURT:  Well, I don't know whether it's
21  extraordinary or not, I don't think it's dismantling the class
22  action system.  I think what it's trying to do is get the
23  fundamental issue that has to be determined determined early on
24  so that we can put the rest of it in context, and that's the
25  difficulty.  In a bankruptcy it's much easier to deal with a

1 claim and whether or not there is liability on a claim.  And I
2 think that's at this point what we're trying to say.  Is there
3 going to be some liability?  And if so, then we need a vehicle
4 for people to be able to file a claim against that particular
5 liability.  And I think it just makes more sense to do it this
6 way.  I thought everyone had agreed that the construct made
7 more sense at the last hearing.  I guess we're still wrestling
8 with how to get started.

9      MR. BERNICK:  Well, we can put together that notice
10 and the schedule that we had discussion of with Mr. Sobol and
11 circulate it to all counsel, including counsel for these other
12 folks.  And how knows, there may be an agreement by some of the
13 other law firms to pitch in and shoulder the economic burden of
14 the case.  We can do that within seven days and as a result
15 notice it up for the next hearing.  I know that that would, I
16 think, violate a little bit of your rules about what can be
17 keyed up next time, but with the Court's special permission, we
18 can do that and then have that ready issue, ready for
19 discussion the next time around.

20      THE COURT:  Yeah.  I think that would make more sense
21 to do it that way and simply get a proposed order.  Let people
22 take their stabs at that proposed order and then actually enter
23 something at the next hearing.  If it pushes back 30 days, this
24 case is going to be here long enough, I don't think another 30
25 days is going to make that much of a difference in the long

1  run.

2      I do agree, however, with plaintiff's concerns about
3  having to disclose their expert witnesses until a fact
4  discovery is done.  I think it should be pushed back.

5      MR. BERNICK:  Yeah, we're agreeable to that as well
6  and we'll make that change appropriately.

7      And again, just so that we don't get yet another
8  brief, another motion on this lift stay proposal, can we have
9  it be clear that all class cert issues are deferred until after
10 Your Honor rules with respect to this threshold issue?
11 Otherwise we're going to be involved in yet more motion
12 practice on the class cert issue before it's really timely.

13     THE COURT:  Well, for sure in the adversary, unless
14 they're willing to voluntarily withdraw it.  I will simply
15 defer ruling on your motion to dismiss until this scientific
16 evidence piece is finished.  So that adversary will remain
17 open, but I will not undertake anything further with respect to
18 that adversary until the scientific side is done.

19     What about the class issue, Mr. Scott?  Is there
20 anything in this sort of free-wheeling discussing that can get
21 us to a common denominator?

22     MR. SCOTT:  First let me say who I represent.  I am
23 class counsel in the _Barbanti_ case.  I am co-counsel in the
24 _Price_ case which is the nationwide counterpart.  Lieff,
25 Cabraser is co-counsel with me.  _Price_ was important because it

1 was designated as the lead federal action.   There were four

2 incendiary actions essentially -- and that _Price_ sued the non-

3 counsel in that action.

4          We would oppose this -- to the past motion to

5 prohibit us from bringing a motion for class certification more

6 strongly than even a determination that the parties couldn't

7 proceed on the class basis.   The Court is clear is not going to

8 be able to avoid this issue.   We've tried to establish

9 procedure that would have set aside the _Price_ certification

10 question altogether and merely had one certified class, but

11 apparently we're going in different directions.   So we would

12 oppose any motion to prohibit the parties from exercising their

13 right to seek certification.

14          THE COURT:   All right.   Well, I'm still somewhat

15 intrigued by Judge Newsome's method of simply putting a class

16 proof of claim on record but not attempting to certify it now.

17 Why doesn't that work?   Why doesn't that get us where we need

18 to be with respect to the science side?

19          MR. BERNICK:   I don't believe there is any -- I agree

20 with Mr. Lockwood.   I don't believe that there is any obstacle

21 to their filing a proof of claim anytime they want.   What I do

22 object to very strenuously is that it play any kind of role

23 because that would then require that Your Honor take up the

24 merits of the class certification issue.

25          THE COURT:   At some point.

1     MR. BERNICK:  At some point.  If all it's going to do
2  is sit out there and, you know, everyone is going to have to
3  proceed as they ordinarily would, if somebody wants to file, I
4  can't stop them from filing a --

5     THE COURT:  Well, I think in terms of proceeding as
6  you ordinarily would what it would do is let the debtor object
7  on a limited basis to that class proof of claim based on the
8  fact that there cannot be, from the debtor's point of view
9  obviously, cannot be a determination of liability against the
10  debtor.  And I don't think we need to get on the certification
11  issues until that liability side is determined.  Now, if that
12  works, I'm not sure why we just don't convert the adversary
13  into a class proof of claim, let you file it and let it sit
14  there without a determination of the certification issue until
15  the liability side is determined.

16     MR. SCOTT:  A class which has been certified prior to
17  the filing of bankruptcy empowers a party to act as an agent
18  for that class.  A class certified prior to bankruptcy, the
19  same creditor, for purposes of filing a proof of claim, Mr.
20  Barbanti would be happy to file a single claim on behalf of
21  that class as he has a right to do by virtue of a certification
22  order.  Grace could subsequent to a liability hearing seek to
23  decertify the class.  The Court could treat --

24     THE COURT:  No, no, no.  I don't think -- we're not
25  even getting to whether or not that certification is proper at

1  this stage.  I mean at some point we can get these

2  certification issues, but I'm not going to take these

3  certification issues on until I get this liability side

4  decided.

5        MR. SCOTT:  And I think I'm saying that.  I think I'm

6  trying to tell the Court in an awkward way the Court doesn't

7  need to treat the certification issue.

8        THE COURT:  Okay.

9        MR. SCOTT:  It's a matter that's already been

10 treated, that is acknowledged to be in dispute.

11       THE COURT:  It is disputed, yes.

12       MR. SCOTT:  Sure.

13       THE COURT:  At some point we have to get to it.

14       MR. SCOTT:  And the Court -- I understand.

15       THE COURT:  But this isn't the point, I don't think.

16 So the question is, Mr. Scott, if you file a class proof of

17 claim and we simply look at an objection to that class on one

18 ground and one ground only without prejudice to raising any and

19 every other ground later, and that is that the class claimants

20 cannot prove that the debtor has any liability on the merits as

21 a result of Zonolite.  Does that get us where we need to go to

22 try the science side and let the rest fall out later?

23       MR. SCOTT:  No.

24       THE COURT:  Okay.

25       MR. SCOTT:  The status of that proof of claim needs

1  to be determined.   There cannot be as a practical matter a

2  trial on the liability issue involving only four or five

3  individuals.   That is dysfunctional.

4        THE COURT:  But you'd have a class claim filed.   It

5  wouldn't be just four or five litigants.

6        MR. SCOTT:  Well, we don't know.   I think -- I think

7  we just heard that while you could file a claim whether, in

8  fact, it is a class proof of claim we'd be held in limbo.   And

9  so the res judicata effect of the determination is unknown.

10  And until it is clear who the parties are that are litigating

11  their claims, I don't think the litigation will move forward.

12        MR. BERNICK:  You know, you can't have it both ways.

13  If all that it is is a class proof of claim, that can be filed

14  at any time.   The Court then has to determine at some point in

15  time whether the classes can be certified or not.   If Mr. Scott

16  wants to file a class proof of claim, to be able to file a

17  class proof of claim, I don't think that we can stop him from

18  doing it.   We can certainly object to it once it's been filed.

19  If that class proof of claim is then used to adjudicate

20  liability in the proceeding on a basis that's binding on not

21  only the defendant or the debtor here, but also on all of the

22  other members of the class, that would require that the Court

23  address Rule 23 and certification in advance.   If Mr. Scott is

24  saying he's not prepared to file the class proof of claim

25  unless Your Honor, in fact, goes ahead and addresses class

1 certification on the merits, then it seems to me that we

2 haven't made any progress whatsoever.   There's no point to the

3 exercise.

4         THE COURT:   Well, it seems to me that Judge Newsome

5 has the right idea.   If there's a class proof of claim filed,

6 you start both tracks at the same time.   You get one done

7 before the other because it's a temporal problem and you can

8 only do one thing at a time.   And so if we get to the liability

9 determination first, we do.   And I think that makes a whole lot

10 of sense.   If somebody files a class proof of claim, then we'll

11 take it from there.   Right now I don't have one and that's what

12 started this discussion several months ago.   I still don't have

13 a class proof of claim filed although I agree, I do have an

14 adversary that raises that issue.

15         With respect to the adversary, your motion to dismiss

16 is deferred until whatever -- for scheduling purposes only,

17 whatever the final pre-trial we're going to have on this

18 Daubert issue will be.   And the only reason I'm deferring it

19 till then is so that we can have a status conference on the

20 adversary at that time so I don't lose track of it, that's all.

21         So whatever day the Daubert matter comes up for pre-

22 trial discussion, I want the adversary calendared at that time

23 on the motion to dismiss just for status conference.   Not for

24 arguments.   Not for responses.   Just so that we don't lose

25 track of it and then we'll do an appropriate scheduling order.

1        With respect to your issue for a scheduling order,
2   yes, I would like you to propose a scheduling order.  I would
3   suggest that you re-meet with counsel one more time to see
4   whether there should be any additional changes to it before
5   it's proposed.  But for the date on which the Daubert pre-trial
6   issue will be heard, I'm not going to schedule any trial until
7   we have a final pre-trial conference.

8        So I would like a blank space for a final pre-trial
9   conference and I will pick whatever the next available omnibus
10  date is going to be after your discovery motions are all
11  finished.  So right now I don't know what that date is so I'll
12  fill it in.  But if you will leave a blank space, I'll fill
13  that in.

14       That order should be served along with the fact that
15  the debtor filed the proofs of claim on the entities as to
16  which the debtor filed the proof of claim and counsel with an
17  indication that I will finally address that scheduling order at
18  the next omnibus hearing in May.

19       In the meantime, however, I expect that discovery can
20  be open so that parties can start trying to figure out who's
21  going to get into this fray and what issues, if any, you expect
22  to be able to litigate.  So I would like the discovery open,
23  but it's without prejudice.  I'll reformat it in May at the
24  next hearing if we need to.

25       Mr. Lockwood?

1    MR. LOCKWOOD:  Your Honor, why couldn't Your Honor

2 just deem the adversary proceeding to be a class proof of

3 claim?

4    THE COURT:  Well, I don't --

5    MR. LOCKWOOD:  There's nothing magic about the

6 form --

7    THE COURT:  That's true.

8    MR. LOCKWOOD:  -- that you have to file a proof of

9 claim and there's a lot of law about informal proofs of claim,

10 et cetera.  We got a pleading filed in this court on behalf,

11 not merely of Barbanti, but a national class here.  The concern

12 here is that people are going to take the position I will

13 litigate it on behalf of the plaintiffs in this case.  That's

14 what I'm hearing.  I'm hearing suggestions that if I don't get

15 a certification, I'm going to walk away and in effect let the

16 debtor -- I don't know, take default or something and then

17 argue on due process grounds or something that we're not going

18 to have it.  There's a pleading in the court that was filed on

19 behalf of a class, it's called an adversary complaint.  Why

20 don't we call it a proof of claim?

21    THE COURT:  Well, there's some authority in the 3rd

22 Circuit for doing that.  I concede.

23    MR. SCOTT:  Your Honor, the adversary proceeding was

24 brought on the basis that the claims asserted did not

25 constitute claims.

1          THE COURT:    That the claims asserted what?

2          MR. SCOTT:    Do not constitute claims and that was --

3          THE COURT:    Well, what are they if they're not

4  claims?

5          MR. SCOTT:    It is is a demand for equitable relief

6  which cannot be adjudicated as a claim.    That was the basis for

7  the adversary proceeding.

8          THE COURT:    Well, I can't see that.    If that's the

9  basis, maybe I do need to dismiss it because it seems to me

10  that at best all that is alleged in the adversary, if I recall,

11  and I didn't review it for purposes of today, is the fact that

12  Zonolite plaintiffs may either need to do some repairs to their

13  property or somehow insulate their property from the effects of

14  having Zonolite in the attic and that some equitable relief to

15  identify the scope of the Zonolite issue and to set an amount

16  that's appropriate for people to have in order to spend in

17  order to fix this problem is there.    That's easily converted

18  into money.    That's one of the easiest things to convert to

19  money I've seen.    Of course, it's a claim.

20          MR. SCOTT:    And that isn't the scope of that

21  adversary proceeding and perhaps it would be helpful to note up

22  the equitable claims that are being sought which --

23          THE COURT:    Which is what?

24          MR. SCOTT:    As illustration and notice -- a

25  nationwide notification to homeowners with regard to steps they

1  should be taking prior to the completion of this bankruptcy
2  process.

3          THE COURT:  That's exactly by trying to see if
4  there's any liability on behalf of the debtor what I'm trying
5  to get to, Mr. Scott.

6          MR. SCOTT:  Sure.  Sure.  That's right.  And the
7  liability should quickly resolve in the context of that
8  adversary proceeding, that's correct.  I'm merely saying you
9  cannot necessarily convert that adversary proceeding into a
10 claim because the very thrust of that adversary proceeding was
11 that there the fundamental relief that was sought there did not
12 constitute a claim.

13         THE COURT:  Okay.  On that theory I think it's
14 appropriate to dismiss that adversary action because I believe
15 that the grounds stated are clearly convertible in money and
16 into a money damage.  The issue of notice is a whole different
17 ball game.  There's a constitutional issue about the type of
18 notice that should be given.  And, of course, the Court would
19 have to order notice in the event that the Court determined
20 that there was a claim.  And I would order notice.  But that's
21 not a separate ground for equitable relief, that's a
22 constitutional mandate that the Court has to carry out.

23         MR. BERNICK:  Your Honor --

24         THE COURT:  Now I'm really confused.

25         MR. BERNICK:  -- that's why I think at that point it

1  becomes all the more important to simplify.  We will put

2  together this notice.  It will set out this schedule.  It will

3  make the change that Your Honor has indicated and we'll have

4  the matter up for a hearing next time.  And I guess I'm really

5  kind of beyond the point of trying to conjure up some ways to

6  accommodate Mr. Scott's concerns.  The only thing that I would

7  reiterate is that it seems to me if we're going to go down the

8  track of this very expedited proceeding, which it is, a very

9  burdensome proceeding, which it is, that during this period of

10  time we should not be distracted with yet more motions with yet

11  more theories for how to litigate class which is --

12         THE COURT:  Mr. Bernick, I'm not going to impose an

13  order up front against people filing motions.  I'm very

14  uncomfortable doing that.  I don't see a basis for it.  If I

15  get a motion, then it will be addressed in due course if it's

16  filed.  I'm hoping that this discussion is somehow or other

17  going to lead to an appropriate resolution.  I'm really -- in

18  no way would I want to be seen as attempting to jeopardize a

19  claimant's rights before this Bankruptcy Court.  And I'm

20  certainly not attempting to do that.  But I think there has to

21  be a logical sequence in getting there and I think --

22         MR. BERNICK:  Right.

23         THE COURT:  -- the first step in that sequence is

24  addressing whether there is some scientific evidence to show

25  that Zonolite imposed an unreasonable risk of harm to the

1  property of the people who used it, which is what the basis for

2  the Zonolite claim is.

3      MR. BERNICK:  In light of that, I think -- I don't

4  know if there's anything else to really take up at this time

5  and I'm mindful of the passage of time with regard to item

6  seven.  We will put together that notice.  Remember there's

7  still that order dismissing without prejudice the medical

8  monitoring case adversary and that's still out there, but that

9  will come up I think again with respect to item nine.

10      MR. BAENA:  Just so I know how to advise my clients.

11  When will people have to respond to this notice, if at all?

12      MR. BERNICK:  Well, we're going to be done with --

13  we're going to send it out within seven days.  I would think

14  that there would be a response after seven days.

15      THE COURT:  Well, the next hearing is May 20 so --

16      MR. BAENA:  May 20, yes.

17      THE COURT:  -- if you respond to it by let's say May

18  the 8th that should give the debtor until May the 15th if the

19  debtor is able to come up with some modifications that would

20  address any objections and I could still get it in time to hear

21  it May 20.

22      MR. BERNICK:  That's fine and I would -- I would

23  further propose that we do this in correspondence like we did

24  the last time around so we don't have briefs filed before Your

25  Honor and simply let Your Honor know -- I mean you've got the

1 basic drift of --

2          THE COURT:  Yes.

3          MR. BERNICK:  -- what the sequence is and I take Mr.
4 Sobol's agreement to most of it to be -- to be encouraging that
5 we're going to have this done by agreement.  So --

6          MR. BAENA:  I'm not trying to be difficult, Judge,
7 I'm just trying to make sure people have enough time.  I assume
8 that this order is going to be directed towards all of these
9 people who you filed claims for.

10          THE COURT:  Yes.  And their counsel.

11          MR. BAENA:  So we don't know who they are, so I am
12 assuming some of them are not here.  They won't get until the
13 8th or so, is that right -- the 1st, rather, or so?

14          If you take one more week to send it out, it will be
15 like the 1st.

16          THE COURT:  They should get it at least by the 1st.
17 How about if they respond by let's say the 13th?  That's two
18 weeks.  And the debtor would then have to I guess file or try
19 to make modifications not later than Thursday, the 16th, so I
20 make sure I have it in time for the hearing.

21          MR. BERNICK:  And initially we're going to correspond
22 with the claimants through their counsel.  But in point of
23 fact, we don't even have the addresses for all of the
24 claimants.  If you all want us to write to the claimants too,
25 we'd be happy to, but otherwise our inclination would be to

1  simply write to the lawyers or counsel.  Is there any problem
2  with that that you guys have?

3          MR. BAENA:  I'm sure there's a problem with that,
4  Judge.  They haven't filed appearances in this court, but I do
5  represent all of them, Judge.

6          MR. BERNICK:  Okay.  Well, then we won't --

7          THE COURT:  Well, gentlemen, either you have to give
8  him names and addresses or you have to make service on your
9  own.  If you want to give them the names and addresses, do it
10  tomorrow.  If you want to serve them on your own, do it.
11  That's it.  That's my ruling.  It's not subject to
12  reconsideration.  Either give them the names and addresses or
13  serve them on your own and direct it to counsel and put that
14  right in the order, Mr. Bernick, they have a choice.  They can
15  give you the names and addresses within a day after service and
16  you will effect service or they can certify to you that they've
17  served on their own.

18          MR. BAENA:  That's fair.  That's fair.  Thank you.

19          MR. BERNICK:  Okay.  Item eight --

20          THE COURT:  Mr. Scott indicated --

21          MR. BERNICK:  Sorry.

22          THE COURT:  -- that he had no problem with that
23  process.

24          MR. SCOTT:  -- can serve me with any case that I am
25  counsel on, I'd be happy to accept it as fact.

1    MR. BERNICK:  Number eight is a motion to annul the

2 automatic stay filed by Edythe Kellogg.  And I seem to recall

3 that Ms. Kellogg's counsel was on the telephone.

4    THE COURT:  Yes, he is.

5    MR. BERNICK:  And just very briefly.  I'm not even

6 sure that this was actually down to be heard.  Last time we

7 talked about having it submitted on paper, but essentially

8 after the last hearing Your Honor directed us to provide more

9 information on the nature of the deductible.  It turns out the

10 deductible is payable by the insurance company, but it's

11 secured by two letters of credit, one at Chase Manhattan Bank

12 and the other is Bank of America on a dollar one basis.  So

13 that if, in fact, the insurance company decides to defend the

14 case or pay the case, they can choose to draw down on either

15 one of those letters of credit.  One of the letters of credit

16 is secured with our cash so our cash immediately goes to court.

17 The other is not secured with cash, it would creat a new

18 unsecured claim presumably by the Bank of America against the

19 debtor in the amount of the letter of credit.

20    So that is where that presently stands.  It does not

21 change our position with regard to this issue.  This is a

22 procedure that is lifting the stay for the Kelloggs.  It would

23 put that particular claimant into a position that's superior to

24 every other claimant and so would our expense, that is with our

25 cash or by creating a new claim, as to which we don't really

1  have a defense.  We don't have a defense against Bank of

2  America.  And under those circumstances, we don't think an

3  exception should be made for Ms. Kellogg.  There are other

4  people who have similar claims and there's no reason from our

5  point of view that hers should get priority, particularly in

6  light of the impact on the estate.

7          THE COURT:  All right.  I somehow at the last hearing

8  lost sight of the fact that the lawsuit was commenced post-

9  petition without relief from stay.

10          MR. BERNICK:  Right.

11          THE COURT:  Doesn't that mean it's void at the

12  outset?  Why do I even have this motion?

13          MR. BERNICK:  Well, they then moved to list the stay.

14  We did not -- and Your Honor -- I believe Your Honor is correct

15  about that.  Yeah, in part part of the reason for that was it

16  was commenced and the insurance company I guess started to pick

17  up with it.  Our cooperation was not really being solicited in

18  the process.  So that's how that unfolded.

19          THE COURT:  Mr. Scanlon?

20          MR. SCANLON:  Yes, Your Honor.  The lawsuit was filed

21  in violation of the stay.  It is void.  It was filed because

22  Ms. Kellogg was not listed as far as, I believe, as a creditor

23  and received no notice of the filing of the bankruptcy.  The

24  relief from -- the motion for relief is to proceed against the

25  insurance policy.  There is an insurance policy that's adequate

1  to pay this entire claim.  The insurance company is not a --

2  will not get a secured claim that's secured by property of the

3  debtor.  What they will have is a right to draw down on one of

4  two letters of credit.  Seventy-five percent of the letter of

5  credit are unsecured by the bank issuing it.  One, the Chase

6  matter is secured by assets of the debtor but this doesn't make

7  Edythe Kellogg a secured creditor.  Chase Manhattan was a

8  secured creditor before the bankruptcy was filed with regard to

9  this and at most Chase is now -- was paying the 250 deductible,

10 assuming that Ms. Kellogg prevails.  That the $250,000 would be

11 liquidating an unliquidated secured claim that already existed

12 prior to the bankruptcy.

13          THE COURT:  Well, I don't know that I can see exactly

14 how it's a secured claim pre-petition when the liability for it

15 hasn't even been determined yet.  At best it seems to me that

16 everybody here has a contingent claim.

17          MR. SCANLON:  Well, that's -- it is contingent and it

18 is unliquidated.

19          THE COURT:  Yes, it's clearly unliquidated.

20          MR. SCANLON:  And both of those things have to be

21 resolved before the bankruptcy is over.  There's no reason to

22 relieve the insurance company of their obligation to pay what

23 plaintiff's counsel estimate to be a $2.5 million claim simply

24 because it's -- I'm not sure what benefit at all would come to

25 the bankruptcy estate.  Chase Manhattan is secured to the

1  extent of their liability.  The insurance company has to
2  eventually pay the claim.  The debtor isn't free to use the
3  property that's subject to Chase's security until the amount of
4  that claim has been determined.  This process will help to
5  liquidate that claim and there really isn't any detriment to
6  the debtor.

7      THE COURT:  What is the detriment to the debtor if a
8  bond is posted or if a letter of credit is posted for the
9  benefit of getting past that original deductible?

10     MR. BERNICK:  Because right now the claim does not
11 have value.  There's no claim.  There's no liability that's
12 been determined.  It's a claim that's out there.  Right now
13 we've got the cash in the account that secures the Chase -- the
14 Chase letter of credit.  And as to the Bank of America, we have
15 no liability.  There's no liability there because there's been
16 no draw down on the letter of credit.

17     THE COURT:  I see.  If Chase draws down, the debtor
18 is out-of-pocket $250,000 on that letter of credit.

19     MR. BERNICK:  Right.  On the Bank of America there's
20 a draw down and we now have a new unsecured claim by Bank of
21 America and a liquidated amount as to which we have no defense
22 as to the Bank of America.  So either way there's an impact on
23 us.

24     THE COURT:  I'm not sure why, Mr. Scanlon, this just
25 isn't a regular pre-petition unsecured claim based on an auto

1  accident that can be filed and liquidated here.   Typically
2  where there are insurance proceeds available and the debtor's
3  estate is not impacted in any way, I've permitted that
4  liquidation to go forward, but that doesn't seem to be the case
5  here.   The debtor will have to be out-of-pocket $250,000
6  pursuant to some reimbursement plan.   And although Chase may be
7  secured in cash, I'll assume for purposes of this discussion
8  that it is, that although Chase may be secured in the cash,
9  your client isn't.   So your client holds an unsecured claim
10 that essentially converts an unsecured claim into something in
11 the nature of a setoff and therefore a secured claim in the
12 event that you're successful in the state court litigation and
13 the judgment that you get is $250,000 or more.

14        So I'm not sure why it's not just appropriate to have
15 it filed here and litigated in the ordinary course.

16        MR. SCANLON:   Well, Your Honor, first, one of two
17 things.   One, it is really reducing or making unavailable to
18 the debtor -- the response doesn't -- indicates that the claim
19 is secured but doesn't say what it's secured by, only that the
20 value of the security if 105 percent of the Chase letter of
21 credit which is in the neighborhood of 790,000.

22        That security, to the extent it is secured by that
23 letter of credit, should not be available to the debtor if the
24 debtor is using collateral of Chase Manhattan.   I submit that
25 it shouldn't be.   So there's no adverse effect on the debtor's

1  estate for that.

2         With regard to the rest of it, this is just an

3  automobile accident in which we're only seeking permission to

4  proceed against the insurance policy.

5         THE COURT:  Well, the problem is though in proceeding

6  against the insurance policy, you're also proceeding against

7  the debtor.  Because to the extent that the debtor has to

8  refund 250,000, if it doesn't participate in the litigation, it

9  loses its rights.  And so I don't see that it has much choice

10  but to defend an action when 250,000 of its cash collateral is

11  at stake.

12         With respect to the debtor using cash collateral that

13  is shouldn't be using, I think there are financing orders and

14  various agreements in place that must permit the debtor to make

15  use of the funds in its cash account just so that cash account

16  doesn't drop below the level that's necessary to make sure that

17  it meets that 105 percent.  Am I incorrect, Mr. Bernick?

18         MR. BERNICK:  I believe that's correct.

19         THE COURT:  So I don't see, Mr. Scanlon, why this

20  action isn't void at the outset as against the debtor.  And

21  with respect to the insurance company, because of the fact that

22  the debtor has to reimburse the insurance company, this really

23  is a suit against the debtor for the first $250,000 of

24  proceeds.  Is there anything in this insurance policy whereby

25  if Mrs. Kellogg chose to waive her first $250,000 worth of

1 distribution the debtor would not be responsible for paying it?

2      MR. BERNICK:  That the rest of the policy drops down

3 to cover dollar one?

4      THE COURT:  Yes.  Because if that's the case, I don't

5 have any problem with her litigating the rest, but I do have a

6 problem if she has to litigate and go through the first 250

7 before this goes further.

8      MR. BERNICK:  An expert here tells me that the policy

9 does not speak to that, so I don't think if there's an express

10 provision that's something that we'd be willing to take the

11 risk of.

12      MR. SCANLON:  Your Honor, if we could get permission

13 to proceed just against the insurance company and just file a

14 proof of claim for the 250, if the liability turns out to

15 exceed that, that would solve the problem.

16      MR. BERNICK:  I don't think that it works that way.

17      THE COURT:  I think you two are going to have to take

18 a look at this insurance policy, Mr. Scanlon, and see.  I have

19 my doubts that it would work that way to the extent that Chase

20 has a right to go against cash collateral.  I don't think that

21 your client filing a proof of claim for the first 250,000 would

22 solve that issue.

23      What I'll do, Mr. Scanlon, I think this would make

24 most sense.  I would deny this motion without prejudice and

25 also require that that lawsuit be terminated against the debtor

1  because it is void as in violation of the automatic stay.  But

2  I will also ask Mr. Bernick to make a copy of the insurance

3  policy available to you.  If it turns out after your review

4  that there is some way that this suit could go forward with the

5  debtor filing a proof of claim, I'll certainly reconsider that.

6  But I have a feeling that this policy is not likely to read

7  that way since it in essence provides Chase with a remedy

8  against the debtor's cash.

9         MR. SCANLON:  Your Honor, the policy has been

10 provided.  The answer to that question is not apparent from it.

11 The policy provided was about four inches thick so I can't

12 absolutely assure the Court that the answer isn't in there, but

13 it didn't seem to be and plaintiff's -- or debtor's counsel

14 didn't direct us to anything that pertained to that issue.

15 In fact, the whole issue of whether or not the right of

16 reimbursement was primary or only after the insurance paid was

17 not particularly clear from the policy.

18        THE COURT:  Okay.  Well, I'm not sure in that

19 circumstance that that helps advance the issue because in all

20 probability the insurance company will deny coverage until the

21 debtor does make whatever reimbursement is necessary and we're

22 right back into collateral litigation anyway, which is what I'm

23 trying to avoid.

24        If there's some basis that you have to seek

25 reconsideration, Mr. Scanlon, in looking at the policy or

1  talking to the insurers or whatever is appropriate, I will

2  reconsider.  But I think for today, for the reasons I've just

3  expressed, this is an action that is directed to at least

4  $250,000 of the debtor's assets.  That I do not believe is

5  appropriate.  The debtor would be required to defend and I

6  don't see at this point that the debtor should be required to

7  defend that action to protect the 250,000 based on the record

8  that's before me today.

9         But as I said, I'll deny this for those reasons

10 without prejudice, subject to your ability to file a motion for

11 reconsideration within ten days in the event that I'm not aware

12 of all of the facts that you believe I should be aware of.  And

13 also direct that the lawsuit be terminated, but that doesn't

14 have to happen until at least your ten-day period for

15 reconsideration is over, Mr. Scanlon.  I don't want you to

16 terminate the lawsuit and then find out that I'm going to grant

17 your relief from stay to go forward with it.

18        So if you do file a motion for reconsideration, the

19 lawsuit does not have to be terminated until I can determine

20 that motion.

21        MR. SCANLON:  Thank you, Your Honor.

22        THE COURT:  Okay.

23        MR. BERNICK:  Your Honor, item nine is the last item.

24 It relates to the traditional -- what it comes down to is the

25 traditional property damage claims and we have another issue of

1 delay here.  Let me just recite briefly the history surrounding
2 this matter.

3            As the Court is aware...

4            THE COURT:  Go ahead.

5            MR. BERNICK:  As the Court is aware, we filed and
6 requested a bar date with regard to so-called traditional
7 property damage claims, July of last year.  It's been pending
8 ever since that time, and our notice program in connection with
9 that motion, our proposed notice program has been open for
10 scrutiny during the entire intervening period of time.  The
11 Property Damage Committee has retained an expert by the name of
12 Tom Hilsay.  And Mr. Hilsay had kind of gone through what I
13 think would be fairly characterized as an evolution in his
14 views.  At first he decided to come out with a report and he
15 gave a deposition where he said, "I'm only going to provide
16 criticisms with regard to this program, but I have no
17 alternative program of my own."  And at the time that this
18 matter originally came up for hearing before Judge Farnham in
19 November, counsel had -- counsel for the Committee was prepared
20 to represent that notwithstanding the fact that Mr. Hilsay
21 didn't have an alternative notice program, they were still
22 willing to proceed with a hearing on our bar date motion.  As
23 you know, that hearing never took place.  On the eve of the
24 hearing, the case was reassigned.

25            Step two was the process before Your Honor.  Once

1 this matter was noticed up for hearing, that is again the bar
2 date, apparently Mr. Hilsay had a change of heart.  And on the
3 eve of the last hearing, that is the hearing in March, he
4 submitted a whole new affidavit, a supplemental affidavit, yea
5 thick.  And in this affidavit he does, in fact, play out a
6 proposed notice program.  Now, we objected to that process as
7 being very untimely, but remember at the last hearing the ZAI
8 portion of the equation got stripped up.  So you only have a
9 notice program that would relate to medical monitoring and the
10 property damage.

11        And with the benefit of all of Mr. Hilsay's
12 considerable learning, and with the benefit of that change in
13 circumstance, Mr. Baena for the Committee said as follows,
14 because I was concerned about well, when are we finally going
15 to get the notice program done and out the door?  Mr. Baena
16 said, "Here's the issue on notification, Judge.  With what just
17 transpired in respect to Zonolite, I think that eliminates a
18 lot of the concerns we have with the program.  We want more
19 publications here and some more frequency there and that's
20 something I think once the experts put their own private
21 authorship aside, we'll be able to resolve.

22        "Mr. Bernick's colleague, who is heading up this
23 matter," that's Ms. Baer who is known to the Court, "suggested
24 that by the end of the week they can prepare and present to us
25 revised notices excising that which is no longer going out and

1  we can meet the following week subject to her availability
2  because of other plans and we're prepared to do that.  I don't
3  know how we could be any more reasonable."  Is what Mr. Baena
4  said at that time.

5          Well, that's the way it was.  We agreed that we would
6  turn over our proposal for how to implement Your Honor's
7  rulings with regard to the claim forms and the like and after
8  considering Mr. Hilsay's latest submission, we agreed to turn
9  over our package for their review the following Friday and they
10 in turn submitted their response to that package in the form of
11 a letter.  And the letter that was submitted was written by Mr.
12 Baena's firm and it systematically went through the proof of
13 claim form, the notice program, the claim bar date notice and
14 then the order that Your Honor would be asked to sign.  All
15 very systematically.

16         All of the matters that were raised in the context of
17 this letter were then addressed by Ms. Baer working with Mr.
18 Sakalo from Mr. Baena's firm, and they all resolved and they
19 were all ready to go with one exception, which is what the bar
20 date itself should be.  We wanted a November, was it 1? bar
21 date and they wanted to have a later bar date.  And that's
22 where we were and that's under good news situation because
23 we're making progress when it gets down to a detail level.

24         The bad news is that last week on the 17th we got a
25 letter from Mr. Sakalo that says this:  "Although the Property

1  Damage Committee maintains that adequate notification cannot be
2  accomplished in any instance," well, if it can't be
3  accomplished, then why are we even here?  I thought well, he's
4  saying all that but maybe he'll say he agrees.  It goes on to
5  say:  "Upon reflection of the contents of the program, the
6  Property Damage Committee is concerned that the program does
7  not accomplish the best possible notice to residential
8  homeowners with non-ZAI insulation claims against the debtors."
9  So he's now saying that notice cannot be adequately done under
10 any set of circumstances, but in any event, what we're
11 proposing is a notice program is not the best notice program
12 that there can be.

13         THE COURT:  Well, wait.  What kind of claims are we
14 looking to as to homeowners that are non-ZAI claims?

15         MR. BERNICK:  That is a good question, but the simple
16 answer is that whatever the kind of claims they are, the issue
17 here that they're raising is maybe what we should do is, it
18 says, "Possibly reinstate the television and earned media
19 program originally planned."

20         THE COURT:  The television and what?

21         MR. BERNICK:  And earned media program originally
22 planned.  Well, but Mr. Hilsay's own supplemental affidavit
23 that he submitted on the eve of the March 18 hearing itself did
24 not have with respect to property damage claims any television
25 program.  The television program was with respect to the ZAI

1  and personal injury claims.  And that's why Mr. Baena, I

2  presume, at the end of the last hearing said, "Well gee, now

3  that ZAI is stripped out and PI is going to stip out, we don't

4  have to worry about this dispute over the television program.

5  So what they appear to now be saying is that notwithstanding

6  everything that's in their letter and their sign-off on

7  everything that's happened, they now want more time to consider

8  the possible need for a television notification program, even

9  though it's different from their own plan.

10        THE COURT:  Is there some challenge to the numbers

11 that have been put in Ms. Casella's affidavit, which I don't

12 have specifically in front of me?  But they say something like

13 there are 70 million chances that any particular person is

14 going to see this at at least once and the numbers are all

15 broken out.  There are huge opportunities based on the

16 publication for everybody to see the fact that the debtor has

17 filed bankruptcy and is soliciting claims.  I mean is there

18 some challenge to the statistics?

19        MR. BERNICK:  I think with the challenge that's being

20 made, it's not even a challenge at this point, they're saying

21 we want to explore with Mr. Hilsay whether there is a problem

22 effectively with the absence of a television notification

23 program.  And that's the problem is that television went out

24 when ZAI went out.  Television was for purposes of ZAI.  Their

25 own supplemental affidavit from Mr. Hilsay does not call for

1  television on the property damage, the traditional property

2  damage claims and now apparently -- and now apparently what

3  they're saying is well, gee, maybe we ought to have one.  The

4  Court should --

5      THE COURT:  I don't know why I need a television for

6  property damage claims.  I think I need a television program

7  for asbestos personal injury claims.  I'm not ruling on that,

8  but if I were ruling on it I'd see why I'd need one.  But a

9  property damage claim is what Bankruptcy Courts deal with all

10  the time.

11     MR. BAENA:  If I may?

12     THE COURT:  Sure.

13     MR. BAENA:  Mr. Barnick has got some of it right, not

14  all of it, of course.  But let me just recount the chronology a

15  little bit differently.

16     When Mr. Hilsay said I'm not submitting a program,

17  early, early on when we were still in front of Judge Farnham is

18  because we had a combined program for Zonolite and traditional

19  property damage.

20     Mr. Hilsay was concerned about the very same thing

21  that you're concerned about and it's causing this new procedure

22  that we're entering into in respect to Zonolite and that is how

23  do you give a notice to somebody who's unwary?  And he didn't

24  blood on his hands and he said I can't do it.

25     And so it's a bit of a misstatement to say that -- to

1  recount Mr. Hilsay's position just as Mr. Bernick did.

2       When Zonolite was taken off the table because of the
3  new process that we're embarking upon, there was, indeed, a
4  severance from the notification program of several aspects of
5  it.  But you have to understand that Catherine Casella
6  identified that there were the same 135 million people I
7  believe it was that had to be approached -- for Zonolite, had
8  to be approached in respect of traditional property damage
9  claims.  There was an overlapping universe of people.  And,
10 indeed, when we left the hearing, when Zonolite was out, to her
11 credit Ms. Baer said to me, "You understand, Scott, that by
12 separating the two programs we're taking TV out.  Are you sure
13 you want to do that?  I'm not a notice expert, Judge.  I didn't
14 know.  I assume if we take out the Zonolite we'd be okay.  But
15 there was this overlap.  Now, why is that important?  Because
16 the nature of W.R. Grace's products was such that it was used
17 in homes too.  They had texture products that were used by
18 homeowners in their homes.  And so that's not a Zonolite
19 product.  It does require notice to them to put forward their
20 claim.

21      Judge, this is an enormous problem and, you know, we
22 go through these cases with sort of the suggestion that
23 property damage claimants are sort of like the tail wagging the
24 dog.

25      THE COURT:  Oh, I don't know that that's the case.

1  I'm not saying that.

2          MR. BAENA:  It certainly isn't the case.  It
3  certainly isn't the case when their own expert on sizing of
4  these claims recognized back in 1998 that the property damage
5  claims going forward were in the magnitude of $4 billion.  It's
6  not an insubstantial -- and that doesn't even include Zonolite.

7          So we have now these residential homeowners that
8  through my ignorance of notification and my ignorance of the
9  application of W.R. Grace's products, I assumed it wasn't a
10 problem taking TV out.  So we went back on the 17th.  Now, the
11 first that we've heard about how terrible we're conducting
12 ourselves is today.  Nobody responded since August 17 to our
13 suggestion that we take a look again at television and earned
14 media.  This isn't a delay.  We're trying to accomplish
15 something that's very fundamental.  They belittle property
16 damage claims by suggesting nobody sues.  That's a far
17 different issue than whether people will take the time to file
18 a proof of claim.  And they will, but we've got to give them
19 notice.

20         And so we have asked that we put back in the
21 television advertising that they formally proposed over the
22 same reach for the same nucleus of people that they were
23 formally going to expose their -- this notification to for the
24 purpose of getting these texture claimants notice of the bar
25 date and we don't think that that is -- a terrific imposition

1 | at this point in time, especially since it is the case that

2 | we've resolved every other issue amongst ourselves since the

3 | last hearing.

4 |         THE COURT:  What's the cost?  I want a cost benefit

5 | analysis.  What happens if we put the TV and the earned media

6 | back in?

7 |         MR. BAENA:  Well, Judge, if we're going to have cost

8 | benefit analyses --

9 |         THE COURT:  Because we may have to do it again.  So I

10 | want to know --

11 |         MR. BAENA:  If we're going to have that, then I'm not

12 | going to -- I'm going to put Mr. Bernick on the stand if he's

13 | going to testify to it.  I want to take testimony on that.

14 |         THE COURT:  I want to know what the cost is.

15 |         MR. BAENA:  I don't know.

16 |         THE COURT:  Okay.

17 |         MR. BAENA:  The program as it stands now is estimated

18 | to cost approximately $2.9 million.

19 |         THE COURT:  No, I meant with the TV in, because there

20 | were estimates earlier.

21 |         MR. BAENA:  Well, the -- but the other estimate

22 | included additional notices in addition to television, for

23 | Zonolite.

24 |         THE COURT:  Oh, well, yes.

25 |         MR. BAENA:  So it's not like we're right back to

1    where we started from, it's just the television component of
2    the former program.

3          THE COURT:  Well, we're pretty much back where we
4    started if the same market is attempting to be solicited.

5          MR. BAENA:  No, they were going to publish different
6    sorts of ads and they had to show product for the Zonolite.  It
7    was a different program, Judge.

8          MR. BERNICK:  Your Honor, in specific response to
9    your question, the cost of the TV is $2.5 million.  And that's
10   set forth in our original revised bar date notice program filed
11   in November.  That's the television, not the part of the
12   program now.

13         Non-TV, without the TV reaches 83.8 percent of
14   households already.  If you put the TV in, you go from 83 to 95
15   percent.  So you're producing a spread from 83 to 95 at a cost
16   of two and a half million dollars.  So significant is that,
17   that Mr. Hilsay in his own affidavit filed in March of this
18   year in this case specifically said that U.S. television would
19   be for ZAI and PI, not for property damage.  That was his own
20   judgment at the time.  So it's not a question of what we'll
21   represent to the Court, it's already a matter of record from
22   their own expert.  So what's essentially happening is although
23   Mr. Hilsay hasn't actually submitted something to say it, is
24   that first he didn't want to say anything about property
25   damage, nothing.  Then he said, oh, yes, property damage can

1  have a program, does not involve television.  Then we eliminate
2  everything else and now he says well, maybe we want to have
3  television.

4       THE COURT:  I truly don't see, given the reach of the
5  newspapers, the consumer magazines, the business magazines, the
6  *Wall Street Journal*, the *Parade* magazine, the debtor's website,
7  the other places, the opportunity for people to call in to the
8  debtor's establishment and get information concerning a proof
9  of claim, I don't see the need for a television ad.

10       MR. BAENA:  Well, Judge, I don't know that anything
11  you've heard or seen so far permits you to come to that
12  conclusion, respectfully.

13       THE COURT:  I have several affidavits, all of which
14  I've read, are you going to challenge the credibility of those
15  witnesses?

16       MR. BAENA:  No, I'm --

17       THE COURT:  Do I need an evidentiary hearing?

18       MR. BAENA:  Those affidavits do not parse out the
19  program we're talking about now.

20       THE COURT:  Which is what?

21       MR. BAENA:  Which is a program for traditional
22  property damage claimants consisting of both commercial and
23  residential as well as state and other government claimants.
24  And I would add, Judge, that if you look back on Celetex where
25  we had in addition to commercial residential claimants, you

1  know, the product could be used in homes, there was a
2  television component that was ordered in respect to that
3  program.

4          THE COURT:  Well, I don't know enough about Celetex
5  to know specifically what all the claims were that were being
6  addressed in any TV ad.  It seems to me that we ought to start
7  with the publication media that are here.  If it turns out
8  after getting these proofs of claims in, have to address
9  Zonolite, and Judge Woolen has to address personal injury
10 anyway.  And I'm willing to bet that as to personal injury
11 there will probably be a TV component.  I'm not sure that it
12 might not be appropriate is to revisit the issue of whether
13 that TV ad at that point should add a sentence or two about
14 additional property damage claims if it's necessary.

15         Mr. Baena, I can't imagine that there's a state or
16 federal government or a commercial vendor out there who doesn't
17 already know that Grace is in bankruptcy and that an
18 opportunity to file a proof of claim exists.

19         MR. BAENA:  Judge, you just heard a lawyer, Mr.
20 Scanlon, on the phone telling you that he filed a lawsuit
21 against W.R. Grace because he didn't know this bankruptcy was
22 filed.

23         THE COURT:  Exactly.  What I said is a commercial, a
24 governmental vendor.  I agree, there are probably people out
25 there who don't understand the implication, but it seems to me

 1 | that this program is going to get to the vast majority of
 2 | people who understand what Grace is, what products it uses and
 3 | the need to file.

 4 | MR. BAENA:  Respectfully, Judge, you're making my
 5 | point.  This is aimed at residential homeowners.  This is not
 6 | the commercial state or other governmental entities that --

 7 | THE COURT:  That's right.  This is aimed at
 8 | residential.

 9 | MR. BAENA:  That's correct.  And what I'm saying is
10 | the more forms of notice we can give them, the better you can
11 | assure yourself of the fact that you've done everything within
12 | the requirements of due process to give people an opportunity
13 | to file a claim.

14 | THE COURT:  I'm not sure that even this notice
15 | program is necessary, Mr. Baena, but based on the fact that Ms.
16 | Casella and Mr. Hilsay both seem to think that it is, I'm
17 | certainly not going to stand in the way of doing all this.
18 | This is a very wide, very broad-based media program.  I'm just
19 | hard-pressed to see how yet one more ad or two more ads,
20 | whatever it would be in the TV program, is going to get that
21 | many more people than this will get.  It seems to me that this
22 | is designed to cover the universe of plaintiffs who could be
23 | out there with property damage.

24 | MR. BAENA:  Your Honor, you heard counsel's statement
25 | about the difference in the reach.  It went from I think he

1 said --

2           THE COURT:   Twelve percent, yes.

3           MR. BAENA:   -- eight -- 12 percent.   Twelve percent
4 of all the homes in the United States.

5           MR. BERNICK:   Well, in fairness, we said that because
6 that was the issue that you all had raised.   But in point of
7 fact, this company has never received a residential non-ZAI
8 claim ever.   So what we're talking about is now reaching out to
9 people who have never been claimants.   And all that's required
10 is reasonable notice.   Notably also, I'm now told that in the
11 Armstrong case there was no TV notice program for the property
12 claims.

13          THE COURT:   I have difficulty seeing why that's
14 necessary.   I think if we get to ZAI or if some supplemental
15 claim period may be appropriate at some point in connection
16 with the PI claim, maybe.   But I don't see the need for a
17 separate television claim process just for this.

18          If you folks really believe that it's that necessary
19 and you want to get your professional fee budget amended so
20 that we include this notice program, if you're that strongly
21 intent on believing that this is that important, then I'll take
22 a look at redoing the entire budget that is going to be payable
23 for fees and advertising.   I'll do that if you're that strongly
24 intent on it.   But I want to know that you're that strongly
25 intent because I can't see it, Mr. Baena.

1    MR. BAENA:  Okay.

2    THE COURT:  I really can't see it.

3    MR. BAENA:  I will abide by the Court's ruling, of
4  course, Your Honor.  I do want to address what Counsel just
5  said.

6    THE COURT:  All right.

7    MR. BAENA:  Because that is a false start again.  The
8  fact that nobody sued them, you know, they keep using the word
9  "claim" to indicate the lawsuit.  What we're dealing with here
10  is a very different sort of a process that engenders claims.
11  The fact that nobody sued them because they had texture
12  materials containing asbestos in their homes is not -- is not
13  by any means the mechanism to determine whether, firstly, those
14  persons would be interested in filing a proof of claim in a
15  bankruptcy proceeding, or whether we are obligated as a matter
16  of law in a particular due process to give that person an
17  opportunity to do something.

18    THE COURT:  But it is a very good indication that to
19  date with this company having been around since the 1920s, that
20  there are very few people out there who absent some
21  solicitation by the debtor, come sue me, have done it.

22    MR. BAENA:  Judge, do you know who made the texture
23  on the ceilings in your home?

24    THE COURT:  As a matter of fact I don't nor do I want
25  to.  Thank you very much.

1              (Laughter)

2         MR. BAENA:  You may not care.  You may not care to.

3         THE COURT:  I may care, that's the problem.

4         MR. BAENA:  Therein lies the problem, Judge.  Until

5    somebody knows that the texture on their ceilings may have

6    asbestos in it and it may be harmful, how are they to know

7    whether or not to file a lawsuit, let alone a proof of claim?

8         THE COURT:  Mr. Baena, if they don't know and they

9    haven't been ill and they don't care, the fact that it's on TV

10   isn't going to get them any more to solicit claims than any

11   other group or print media will.

12        MR. BAENA:  Respectfully, Your Honor, I have to

13   respectfully say you're wrong.  You're wrong because in prior

14   cases that was exactly the mechanism that caused people to file

15   claims when there were no lawsuits pending prior to the

16   bankruptcy.

17        THE COURT:  Then give me some evidence, Mr. Baena,

18   that that's the case.  That the TV ads in whatever, Celetex,

19   caused people with ceiling or whatever, texture paint on their

20   walls or whatever the issue, comparable issue would be in

21   Celetex, to file claims as opposed to the print media.  Give me

22   the evidence and then I'll reconsider.  But for now, I don't

23   see the need for a TV ad.

24        MR. BAENA:  Very well, Your Honor.

25        THE COURT:  But if you give me some evidence, I'll

1 look at it.

2      MR. BAENA:  Very well, Your Honor.  Thank you.  We
3 will.

4      MR. BERNICK:  Your Honor, we would ask that the Court
5 enter the order.  It is Docket 1925.  It's a little "i" on the
6 last item of the agenda.  That is our revised proposed order as
7 to all the non-asbestos claims.  The only thing that's left
8 blank there which remained at issue following the dialogue that
9 took place between the debtor and the Property Damage Committee
10 was the date of the bar date.  We're asking for November 1.
11 All of the activities that are part of the bar date notice
12 program be concluded by what is it, the end of July?

13      UNIDENTIFIED SPEAKER:  Yes.

14      MR. BERNICK:  So if everything goes forward, all
15 done, done, done, end of July.  You then have August, September
16 and October, 90 days, even beyond that, and we think that
17 that's plenty of time for people to get their claims in.  We
18 would ask that the Court authorized that and fill it in as
19 November 1.

20      THE COURT:  And who is objecting to that period?  I'm
21 sorry.

22      MR. BERNICK:  I think it was --

23      THE COURT:  Okay.  Mr. Baena?

24      MR. BAENA:  Judge, just by way of background, I think
25 you should understand that when the debtor first proposed its

1  -- how it would proceed on issues like bar date, the very first
2  instance of a program engendered a notification program that
3  ran from August to November and then an April 1 bar date.  This
4  was August to November of last year with an April 1 bar date.
5  Some eight months was intended to be accomplished in terms of
6  the end of the program for notice and the date that the bar --
7  the bar date would occur.

8         When they revised their program, they adjusted the
9  dates because of the delays we were having and their new
10 program was from December to March.  And it had an August 1 bar
11 date.  Again, an extensive period between the end of the
12 program and the bar date.

13        Now, we're in a rush.  We're in a rush despite the
14 fact that Zonolite is not even on the radar screen with a bar
15 date.  We're in a rush because of personal injury claims.
16 Judge Woolen wrote to Mr. Bernick just a week or so ago and
17 told him I'm not getting into case management until I'm
18 finished with fraudulent transfer, and that's not going to be
19 heard until September.  We're in a rush though to get it done
20 for property damage.  We're in such a rush that we're only
21 going to have two months from the end of the program to the bar
22 date.  And, indeed, the program according to the flow chart
23 they provided to us runs out until the end of August giving us
24 two months.

25        THE COURT:  How much time do you think is

1 appropriate?

2          MR. BAENA:   The eight months was appropriate.

3          THE COURT:   That's an awfully long time, Mr. Baena.

4          MR. BAENA:   Well, Judge, if I can finish.

5          THE COURT:   People will forget.

6          MR. BAENA:   If I can finish and explain to you why.

7          THE COURT:   How about four?

8          MR. BAENA:   Can I explain why, Judge?  Please.

9          Firstly, you've got to look at this from the end of

10 the program forward.

11          THE COURT:   Yes, I agree.

12          MR. BAENA:   Okay.  This is the first case that

13 implicates substantial property damage where the form being

14 used is firstly a building-by-building form and exceeds by a

15 significant amount the provision of information that was

16 otherwise required by a Form 10.  The form that you have now by

17 agreement, because there was no choice but to agree candidly,

18 the form that you have now is far more extensive than anything

19 we have ever had before.  It actually moves towards the claim

20 forms that were used in the property damage facilities that

21 evolved out of confirmed plans in prior cases.  And there is no

22 way to dispute the fact that the information required is the

23 same sort of information that was required in National Gypsum

24 and the same sort of information that was required in Celetex.

25 In National Gypsum they had 18 months to fill out that form.

1  And in Celetex they had two years to fill out that form.  I'm
2  not prepared to ask for that kind of an indulgence here,
3  although I still wonder why we have this urgent need to put an
4  end to property damage when no other constituency seems to be
5  confronted with a bar date or will be confronted with a bar
6  date by the date that they're proposing.

7          THE COURT:  Okay.  It seems to me that if you want
8  more than two months or three, however the debtor calculates
9  it, that's okay.  There is no magic to figuring this out but,
10  Mr. Baena, people will put these things in their drawers and
11  they'll forget about them --

12          MR. BAENA:  Judge --

13          THE COURT:  -- and there is no point to having such a
14  long bar date that that happens.  Pick something reasonable.

15          MR. BAENA:  Judge, if that is your view of what
16  people will do, then I request you give me an evidentiary
17  hearing to prove that that's not what people do.  To prove to
18  you what goes into filling out this form --

19          THE COURT:  Mr. Baena, give me a reasonable date.  I
20  don't need an evidentiary hearing.

21          MR. BAENA:  Eight months is what the debtor
22  originally proposed.

23          THE COURT:  Fine.  Make it eight months.  It will
24  have no --

25          MR. BERNICK:  Eight months --

1          THE COURT:  Mr. -- it will have no bearing on the
2  outcome of this case.  Make it eight months.  By the time Judge
3  Woolen gets around to the personal injury issue and I get
4  around to the Zonolite issue, eight months will be gone.

5          MR. BERNICK:  Eight months from the commencement of
6  the notice program?

7          MR. BAENA:  No, end.

8          THE COURT:  From July -- I'm going to count the eight
9  months.  As I understand it, the notice program is to be
10  finished in July.  So August counts as the first of the eight
11  months.  August, September, October, November, December,
12  January, February, March.  It's to end March 31st if that's a
13  weekday.  Let me see.  March 31st is the end of the notice
14  program.

15          In exchange, Mr. Baena, I expect that all these
16  people are going to have the documents.  Not fill out something
17  saying I'm still trying to get them.  That's the difference in
18  what Celetex and Gypsum required and what I required in this
19  case.  So if they come in without a lot of documents, you can
20  expect that there will be some --

21          MR. BAENA:  Judge --

22          THE COURT:  -- unhappiness on behalf of the Court.

23          MR. BAENA:  -- in Celetex -- in Celetex, which is the
24  most recent of the two, the property damage claims
25  administrator was invested with the authority to continuously

1  extend the period of time for providing that documentation.

2  And he did --

3          THE COURT:  And that may be the case in the event

4  that we have a confirmed plan.  But we're trying to do is get

5  there, Mr. Baena.  So don't ask for an extension for now

6  because I think this is perfectly feasible for the information

7  that's requested in the form.  If it turns out not to be

8  because you need additional notice, as I've already said three

9  times, I will reconsider it then, not now.

10          MR. BAENA:  Judge, the flow chart they provided shows

11  that their program goes through August for Canada --

12          THE COURT:  Then it's seven months.

13          MR. BAENA:  For Canada.

14          THE COURT:  Seven months is still reasonable if

15  that's the case.  I've counted from August.  I've already

16  written it in in two places.  March 31st is long enough, Mr.

17  Baena.  I can't imagine how people cannot fill out this proof

18  of claim form after seven months from the time that the notice

19  program ends.

20          MR. BAENA:  Because they're required to give product

21  identification, Judge.

22          THE COURT:  Yes, and they will.  I'm convinced that

23  they will.

24          MR. BAENA:  And that requires constituent analysis

25  and it's going to be very difficult, Your Honor.

1        THE COURT:  If they need an extension on an

2  individual basis, I'm sure they'll ask for it.  The form

3  already gives them the opportunity to do that.  I want to see

4  the documents.  This is long enough, Mr. Baena.

5        MR. BAENA:  Thank you, Your Honor.

6        THE COURT:  Everybody has the opportunity to ask for

7  bar dates to be extended.  They typically do.  We'll see.

8  Let's see what happens by March 31st.  For now, that's the bar

9  date.

10       I see it three times.  How many other times is it

11  here?

12                 (Pause)

13       All I have here is the order.  So if it's blank in

14  the notice, I don't have the notice date.  Okay.

15                 (Pause)

16       Well, are you going to be typing these to send them

17  out anyway, the notice issues?  Because if you are, there's no

18  sense in my taking the time to write this date in 500 times.

19        MS. BAER:  Ultimately I believe the printer will do

20  something with them, but I would think that they would take a

21  picture of yours and make the print and make it look --

22        THE COURT:  Okay.

23        MS. BAER:  So I'm not sure.

24                 (Pause)

25        THE COURT:  Okay.  Well, I filled in today's date on

1 the claims' bar dates and the date notice on the first line. I

2 found March 31st, 2003 on Page 2 at the top of the page under

3 the words "Under the bar date, order of the Court established

4 the following bar date." I see it again in Paragraph 5 on Page

5 5 where it says, "For all claims return the completed proof of

6 claim form to the claims processing agent no later than March

7 31st, 2003." That's the only place in the notice that I see

8 the date. Did I miss any?

9          MS. BAER: I believe that's correct, Your Honor.

10         THE COURT: All right. Then in the order there is a

11 blank space on Page 2 about two-thirds of the way down the page

12 where Paragraph D says, "A bar date of March 31, 2003."

13         There is a blank space on Page 3 in the first ordered

14 paragraph after the words "Bankruptcy Rule 3003(c)(3)."

15         There is another in the fourth ordered paragraph

16 under "B," the March 31, 2003 bar date.

17         Those are the only ones I see in the order.

18         MS. BAER: I also believe that's correct, Your Honor.

19         THE COURT: Okay. I'm entering this order. This

20 record stands for the fact that if there is some evidence that

21 television is going to be such a much better method, I stand to

22 reconsider this order. If, in fact, there is evidence that not

23 all people -- not all, we'll never get all people, not a

24 reasonable number of people who may be subject to filing claims

25 against the debtor's estate have been reached, I will at that

1  point later in this process consider an extension if that is
2  necessary.

3      I think the record is clear.  I'm not going to put it
4  in here, I don't want to confuse the people who are going to
5  get this notice.  But this is the record.  It is part of my
6  order.

7      MR. BERNICK:  The last leftover item --

8      THE COURT:  Yes.

9      MR. BERNICK:  -- was the medical monitoring complaint
10 which there's agreement we dismiss without prejudice now that
11 Your Honor has gone ahead and approved and signed the program
12 for the notice of bar date with respect to those claims.

13     THE COURT:  Yes.  This is with respect to item number
14 six.

15     MR. BERNICK:  Right.

16     THE COURT:  Okay.  That order is signed so that
17 adversary action is dismissed without prejudice.

18     MR. BERNICK:  That's it.

19     THE COURT:  Okay.  Any housekeeping matters?

20     All right.  Anything else that we need to address
21 back to the whatever issue has been left unstated on this
22 record?

23     Okay.  See you in May.  Thank you.

24              *  *  *  *  *

25

## CERTIFICATION

I, PATRICIA A. KONTURA, certify that the foregoing is a correct transcript to the best of my ability, from the electronic sound recording of the proceedings in the above-entitled matter.

*Patricia A. Kontura*                    Date:   April 25, 2002

PATRICIA A. KONTURA
J&J COURT TRANSCRIBERS, INC.