## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **W.R. Grace & Co., et al.** | Case No. 01-01139 (JKF) |
| Debtors. | Jointly Administered |

**FOURTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK
& LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
FROM JANUARY 1, 2002 THROUGH MARCH 31, 2002**

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **January 1, 2002 – March 31, 2002** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$267,170.20** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$6,149.76** |
| Fees and Expenses of the Asbestos Issues Expert | **$36,352.60** |

This is an: ☒ interim ☐ final application

This is the fourth quarterly application filed

**Attachment A**

## Monthly Interim Fee Applications

| | | Requested | | Approved for Payment | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| May 30, 2001 | 4/12/01-4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111.943.00 | $6,884.73 |
| July 30, 2001 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| August 31, 2001 | 7/1/01-7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |

**Local Form 101 (Fee Application/Attachment A, pg. 1)**

**Quarterly Fee Applications**

| | | Requested | | Approved | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| July 30, 2001 | 4/12/01-6/30/01 | $369,873.75 | $19,318..00 | September 23, 2002 at 10:00 a.m. | |
| November 1, 2002 | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | September 23, 2002 at 10:00 a.m. | |
| February 8, 2002 | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90[1] | September 23, 2002 at 10:00 a.m. | |

---

[1] Of this amount $9,918.43 relates to the Committee's Asbestos Issues Expert.

| W R GRACE & CO. | | | | |
|---|---|---|---|---|
| **ATTACHMENT B** | | | | |
| **FEE APPLICATION FOR JANUARY 1 THROUGH MARCH 31, 2002** | | | | |
| | Hours | Current Rate | Amount* | # of Years In Position |
| **Partners** | | | | |
| Greenberg, Mayer | 14.6 | 525 | 7,425.00 | 2 |
| Kruger, Lewis | 24.6 | 695 | 16,084.50 | 36 |
| Levy, Mark | 10 | 650 | 6,297.00 | 27 |
| Pasquale, Kenneth | 67 | 495 | 33,165.00 | 2 |
| | | | | |
| **Associates** | | | | |
| Brandes, Ronnie H. | 47.9 | 185 | 8,861.50 | 1 |
| Krieger, Arlene | 341.6 | 475 | 150,405.00 | 18 |
| Sasson, Moshe | 59.5 | 395 | 22,379.00 | 7 |
| Taruschio, Anna | 8.2 | 245 | 2,009.00 | 1 |
| | | | | |
| **Paraprofessionals** | | | | |
| Bowen, Mark | 0.2 | 175 | 35.00 | 3 |
| Christian, Angelina | 8.1 | 70 | 567.00 | 1 |
| Calvo, Fernando | 1.2 | 120 | 144.00 | 1 |
| Cotto, Lisa | 67.3 | 170 | 10,177.00 | 1 |
| Defreitas, Vaughn | 84.2 | 100 | 8,420.00 | 10 |
| Malpeli, Gary | 2 | 170 | 340.00 | 14 |
| Mariano, Christine | 9.4 | 155 | 1,457.00 | 3 |
| Mohamed, David | 3.8 | 100 | 380.00 | 6 |
| Serrette, Rosemarie | 19.1 | 170 | 3,007.00 | 13 |
| **Subtotal** | **768.7** | | **271,153.00** | |
| Less: 50% Travel Time | **(8.5)** | | **(3,982.80)** | |
| **Total** | **760.2** | | **267,170.20** | |
| **Blended Rate** | | $    351.45 | | |

* As of March 1, 2002, Stroock increased its hourly rates. The amounts in this column reflect the actual amounts billed during the Compensation Period using the hourly rates in effect at the time services were rendered.

**Local Form 101 (Fee Application/Attachment A, pg. 1)**

SSL-DOCS1 1221662v1

# W R GRACE & CO.

## COMPENSATION BY PROJECT CATEGORY

### JANUARY 1 THROUGH MARCH 31, 2002

| Matter Code | Project Category | Hours | Total Fees($) |
|---|---|---|---|
| 0002 | Asbestos: Claims Analysis and Valuations | 3.3 | 1,402.50 |
| 0003 | Asbestos: Claims Litigation | 64.5 | 30,214.50 |
| 0007 | Asbestos: Other | 28.0 | 9,681.50 |
| 0008 | Asset Acquisitions/Business Combinations | 19.2 | 8,870.00 |
| 0013 | Business Operations | 6.4 | 2,855.00 |
| 0014 | Case Administration | 165.3 | 33,069.00 |
| 0015 | Claim Analysis/Objections/Administration(Non-Asbestos) | 32.7 | 14,937.50 |
| 0017 | Committee Matters and Creditor Meetings | 84.1 | 37,550.00 |
| 0018 | Compensation of Professionals (Fee Applications of Self) | 82.4 | 19,558.50 |
| 0020 | Compensation of Professionals/Others | 0.3 | 142.50 |
| 0022 | Environmental Matters/Regulations/Litigation | 0.8 | 446.00 |
| 0023 | Executory Contracts/Unexpired Leases (Assumption and Rejection) | 2.7 | 1,147.50 |
| 0032 | Litigation (Non-Bankruptcy/General) | 2.1 | 989.50 |
| 0034 | Litigation/Fraudulent Conveyance | 87.2 | 33,690.00 |
| 0035 | Non-Working Travel Time | 16.9 | 7,965.50 |
| 0037 | Preparation for and Attendance at Hearings | 71.1 | 33,242.50 |
| 0040 | Retention of Professionals | 21.9 | 9,420.00 |
| 0041 | Stay Litigation (Section 362) | 1.9 | 902.50 |
| 0047 | Tax/General | 77.9 | 25,068.50 |
| | **Subtotal** | **768.7** | **$ 271,153.00** |
| | Less: Adjustment for Travel Time | **(8.5)** | **(3,982.75)** |
| | **TOTAL** | **760.2** | **$ 267,170.25** |

**Local Form 101 (Fee Application/Attachment A, pg. 1)**

**W R GRACE & CO**

**SUMMARY OF DISBURSEMENTS**

**JANUARY 1 THROUGH MARCH 31, 2002**

| | |
|---|---|
| Outside Messenger Service | 141.97 |
| Local Transportation | 272.51 |
| Long Distance Telephone | 700.22 |
| Duplicating Costs-Outside | 5.25 |
| Duplicating Costs-in-House | 743.60 |
| Postage | 14.07 |
| Process Service & Calendar Watch | 275.72 |
| O/s information Services | 271.29 |
| Miscellaneous | 124.00 |
| In-House Messenger Service | 43.00 |
| Facsimile Charges | 96.00 |
| Meals | 11.45 |
| Overtime | 4.91 |
| Travel Expenses - Transportation | 2,182.73 |
| Westlaw | 1,263.04 |
| | |
| **Total Disbursements** | **6,149.76** |

**Local Form 101 (Fee Application/Attachment A, pg. 1)**

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | )   **Chapter 11** |
| **W. R. GRACE & CO., et al.**[1] | )   **Case No. 01-01139 (JKF)** |
| | ) |
| **Debtors.** | )   **Jointly Administered** |

## FOURTH QUARTERLY FEE APPLICATION BY STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., ET AL., FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JANUARY 1, 2002 THROUGH MARCH 31, 2002

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

1.

---

[1] *The Debtors consist of the following 62 entities:* W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmenta., Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco Internatior al, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holcing, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

accordance with the Administrative Fee Order (defined below) for interim allowance of compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents as follows:

## I.    INTRODUCTION

1.    By this application, Stroock seeks (i) an interim allowance of compensation for the professional services rendered by Stroock as counsel for the Committee for the period from January 1, 2002 through March 31, 2002 (the "Compensation Period") in the aggregate amount of $267,170.20 representing 573.4 hours of professional services and 195.3 hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Stroock during the Compensation Period in connection with the rendition of such professional services and paraprofessional services in the aggregate amount of $6,149.76 as well as the fees and expenses of the asbestos issues expert employed by the Committee pursuant to the Court's June 22, 2001 Order Authorizing the Retention of Experts (the "Asbestos Issues Expert") for the period from January 1, 2002 through and including March 31, 2002 in the aggregate amount of $36,352.60.

2.    Venue of this proceeding and this application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

## II.    BACKGROUND

3.    On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code and have continued in the management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the

2

Bankruptcy Code. Pursuant to an order of the Court, the Debtors' Chapter 11 cases have been procedurally consolidated and are being jointly administered.

4.    The Debtors operate a world-wide specialty chemicals and materials business and employ approximately 3860 full and part-time employees. On a consolidated basis, for the fiscal year 2000, Grace reported a net loss of $89.7 million[2] from $1.59 billion in net revenues. The Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor subsidiaries and affiliates.

5.    On April 12, 2001, the United States Trustee formed the Committee. During the first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter 11 cases. The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP ("DM&H") as its local Delaware counsel.

6.    The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims and asbestos-related property damage claims against the Debtors (collectively, the "Asbestos Claim Committees"). On June 18, 2001, the United States Trustee appointed an official committee to represent the interests of equity security holders of the Debtors.

7.    By application dated May 1, 2001, Stroock sought Court approval for its retention as counsel to the Committee nunc pro tunc to April 12, 2001. The Court signed an order approving Stroock's retention as counsel to the Committee on May 30, 2001.

1.    _____

---

[2]    The Debtors' pleadings further report that this net loss results in part from a $294.0 million asbestos-related charge to earning recorded in the forth quarter of 2000.

3

8.      This is the fourth quarterly interim application Stroock has filed with the Court

for an allowance of compensation and reimbursement of expenses for services rendered to the

Committee. This application is submitted pursuant to the terms of the Administrative Order

Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of

Expenses for Professionals and Official Committee Members, approved by the Court on May 3,

2001 as amended by order dated April 19, 2002 (collectively, the "Administrative Fee Order").

9.      In accordance with the procedures established by the Administrative Fee Order,

Stroock has received payment from the Debtors in the aggregate amount of $769,195.93

representing 80% of the fees and 100% of the expenses sought in each of the first nine monthly

applications covering the period from April 12, 2001 through December 31, 2001. Stroock also

received payment from the Debtors in the amount of $9,918.83 representing fees and expenses of

the Asbestos Issues Expert for the months of October, November and December 2001. Other

than those payments, applicant has received no payment and no promises for payment from any

source for services rendered in connection with these cases. There is no agreement or

understanding between the Applicant and any other person (other than members of Stroock) for

the sharing of compensation to be received for the services rendered in these cases.

10.     As stated in the Affidavit of Lewis Kruger, Esq. annexed hereto as Exhibit "A,"

all of the services for which interim compensation is sought herein were rendered for and on

behalf of the Committee solely in connection with these cases.

### III.    SUMMARY OF SERVICES RENDERED

11.     Since being retained by the Committee, Stroock has rendered professional

services to the Committee as requested and as necessary and appropriate in furtherance of the

interests of the unsecured creditors of the Debtors' estates. The variety and complexity of these

4

cases and the need to act or respond on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by personnel from several legal disciplines, on an as-needed basis, including in certain instances, working into the evening and on weekends.

12.     Strook maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the Committee. Such time records were made contemporaneously with the rendition of services by the person rendering such services and in the ordinary course of Strook's practice, and are presented in compliance with Delaware Local Rule 2016-2(d) amended effective as of February 1, 2001. A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Compensation Period is annexed hereto as Exhibit "B". In addition, Exhibit "C" hereto contains a summary of the hours expended by each of the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

13.     Strook also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are also available for inspection. A schedule of the categories of expenses and amounts for which payment is requested is annexed hereto as Exhibit "D". Also included within Exhibit "D" is an itemization of each expense incurred within each category.

14.     Strook respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

5

15.     The following summary of the services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit "B". Rather, it is merely an attempt to highlight certain of these areas in which services were rendered to the Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

### (i)      Asbestos: Claims Analysis and Valuations – Category 0002

16.     During the Compensation Period, Stroock reviewed the complaints filed by various Zonolite Attic Insulation claimants and continued to review asbestos claims-related materials. Stroock has expended 3.3 hours on this category for a fee of $1,402.50.

### (ii)     Asbestos: Claims Litigation – Category 0003

17.     During the December 20, 2001 status conference before Judge Wolin, the Court instructed the Committee to submit a letter to the Court setting forth its views of the case management process to be employed in these chapter 11 cases, and the substantive issues that must be resolved with respect to asbestos-related claims against the Debtors and the Committee's review of whether those issues could be resolved consensually. During the early portion of the Compensation Period, Stroock prepared and submitted on behalf of the Committee correspondence to the Court and, shortly thereafter, met with Judge Wolin to discuss the Committee's views.

18.     In addition, during the Compensation Period, Stroock reviewed background and other materials on William Drier, appointed by the Court as a special master for these chapter 11 cases, and materials on four other persons appointed by the Court to serve as potential consultants in this and other asbestos-related chapter 11 cases assigned to Judge Wolin. Further,

6

during this Compensation Period, numerous pleadings were filed by Zonolite claimants seeking, among other relief, class certification and authority to file class proofs of claims. In connection herewith, Stroock reviewed all of the pleadings and case law related to the class proof of claim issues and related asbestos-claim materials, and analyses from other cases, including those filed in December 2001 in the Johns-Manville Trust matter, which Judge Wolin referred to during the December 20 Conference. Stroock has expended 64.5 hours on this category for a fee of $30,214.50.

### (iii)     Asbestos: Other – Category 0007

19.      During the Compensation Period, Stroock continued to review articles and other publicly available documentation providing information on, among other items, the quantification and treatment of differing categories of asbestos disease, including in connection with other asbestos-related chapter 11 cases. Stroock has expended 28 hours on this category for a fee of $9,681.50.

### (iv)     Asset Acquisitions/Business Combinations – Category 0008

20.      During the Compensation Period, the Debtors sought Court approval to acquire substantially all of the assets and business operations of Addiment Incorporated and to close the Debtors' Darex manufacturing facility in Atlanta, Georgia and combine the Darex operations into the Debtors' Chicago facility. In connection with the Debtors' pleadings seeking such relief, Stroock reviewed the motions, discussed these matters with Debtors' counsel and in-house personnel, and reviewed case law relevant to potential successor liability issues raised by the proposed acquisition as to be able to address concerns raised by the Committee. During the Compensation Period, Stroock also discussed the motions with the Committee's financial advisor, FTI Policano & Manzo ("FTI P&M"), reviewed FTI P&M's analyses thereof, and

7

prepared and forwarded memoranda to the Committee discussing these matters. Stroock has expended 19.2 hours on this category for a fee of $8,870.00.

### (v)    Business Operations – Category 0013

21.    During the Compensation Period, Stroock reviewed the Debtors' November 2001 operating reports, fourth quarter 2001 and fiscal year 2002 operating results, and discussed these and analyses prepared by FTI P&M with representatives of FTI P&M. Stroock has expended 6.4 hours on this category for a fee of $2,855.00.

### (vi)    Case Administration – Category 0014

22.    As reported in prior monthly fee applications, towards the end of the November 2001 compensation period, Stroock was informed that these chapter 11 cases were being reassigned to District Court Judge Alfred Wolin. A number of orders were issued during the month of December 2001 relating to the reassignment of these cases to Judge Wolin and the reference of these cases to Judge Judith Fitzgerald, requests for information regarding the status of pending matters, the scheduling of a status conference on December 20, 2001 before Judge Wolin and a January 2002 hearing before Judge Fitzgerald, and the Court's directive to prepare an amended administrative fee order.

23.    During this Compensation Period, Stroock reviewed numerous drafts of differing forms of an amended administrative fee order, and of pleadings seeking the retention of Warren Smith & Associates, as fee auditor for these cases, engaged Debtors' counsel and, as applicable, Warren Smith, with respect to the terms thereof, and in connection therewith provided constructive comments. In addition, Stroock continued to closely monitor the items on the Court's general chapter 11 docket for these cases, as well as those dockets relating to each of the adversary proceedings pending in these chapter 11 cases, to ensure that the Committee was fully

8

informed about all pending motions and adversary proceedings and that Stroock would be ready to timely respond on behalf of the Committee, as might be applicable. Stroock continued to engage Debtors' counsel and FTI P&M on an on-going basis with respect to pending matters and information requests, prepared and continuously updated critical date calendars, reviewed the scheduling, and case management, and other orders issued by Judge Wolin and Judge Fitzgerald, the agenda letters and status reports prepared for Judge Wolin and Judge Fitzgerald during this Compensation Period, and responded to creditor inquiries. Stroock has expended 165.3 hours on this category for a fee of $33,069.00.

(vii)   <strong><u>Claim Analysis/Objections/Administration – Category 0015</u></strong>

24.     During the Compensation Period, Stroock reviewed the various forms of the pleadings prepared by the Debtors seeking to establish bar dates in these chapter 11 cases for non-asbestos unsecured claims and asbestos-related personal injury and property damage claims, prepared numerous memoranda setting forth Stroock's comments thereto, and throughout the period engaged Debtors' counsel in discussions aimed toward resolving concerns the Committee had with respect to the proposed bar date processes and forms. Towards the end of the Compensation Period, Stroock prepared and submitted to the Court a statement setting forth its position with respect to the Debtors' February 2002 bar date processes and forms. In addition, during this Compensation Period, Stroock reviewed the Debtors' request to settle our outstanding insurance-related issues arising out of a lease of premises previously occupied by the Debtors. In connection therewith, Stroock reviewed the lease, insurance policy and other relevant documentation, and reviewed case law addressing the issue of when proceeds of insurance policies are property of an estate. Stroock has expended 32.7 hours on this category for a fee of $14,937.50.

9

(viii)   **Committee Matters and Creditor Meetings - Category 0017**

25.     During the Compensation Period, Stroock communicated with the members of the full Committee through numerous memoranda and telephone conversations, including three conference call meetings of the full Committee. In order to keep the Committee fully informed of all of the pending matters in these cases, and thus enable the Committee to take informed positions on issues, Stroock thoroughly reviewed and summarized each of the motions filed by the Debtors and other parties in interest in these cases, raised issues the Committee should be aware of, and made recommendations to the Committee concerning appropriate actions to be taken with regard to the motions, communicated with members of the Committee regarding the positions to be taken, engaged counsel for the Debtors, and other parties and movants, as applicable, with the Committee's questions and concerns, and negotiated whenever and to the extent possible consensual resolutions of outstanding issues and acceptable forms of proposed orders. In addition during this Compensation Period, Stroock continued to keep the Committee informed with respect to the various adversary proceedings filed in these cases, including those in connection with the fraudulent transfer litigation, and with respect to other asbestos claims-related court decisions.

26.     Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues which have already arisen in these cases and to monitor closely the Debtors' management of these estates. Stroock has expended 84.1 hours on this category for a fee of $37,550.00.

10

### (ix)    Compensation of Professionals (Fee Applications of Self -- Category 0018

27.    During the Compensation Period, Stroock prepared its Tenth, Eleventh and

Twelfth Fee Applications including a narrative section summarizing the services rendered during

those periods by Stroock and compiled and attached expense schedules all of which were filed

with the Court. Stroock also prepared its third quarterly interim fee application covering the

October 1, 2001 through December 31, 2001 period. Stroock has expended 82.4 hours on this

category for a fee of $19,558.50.

### (x)    Compensation of Professionals/Fee Application of Others -- Category 0020

28.    During the Compensation Period, Stroock reviewed the fee applications filed

during this period by Kirkland & Ellis, The Blackstone Group, Bilzin Sumberg Dunn Baena

Price & Axelrod LLP, Caplin & Drysdale, and other professionals retained in these cases.

Stroock has expended 0.3 hours on this category for a fee of $142.50. [Is this time correct Lisa?]

### (xi)    Environmental Matters/Regulations/Litigation – Category 0022

29.    During this Compensation Period, Stroock reviewed materials prepared by the

Committee's asbestos issues expert regarding the status of the Debtors' asbestos-related

environmental liabilities. Stroock has expended 0.8 hours on this category for a fee of $446.00.

### (xii)    Executory Contracts/Unexpired Leases (Assumption & Rejection) – Category 0023

30.    During the Compensation Period, Stroock reviewed several proposed stipulations,

including several resolving issues in respect of the Debtors' assumption of equipment leases and

one resolving issues in respect of several unexpired leases in Massachusetts, reviewed the

11

underlying pleadings, and discussed the same with Debtors' counsel. Stroock expended 2.7 hours in this category for a fee of $1,147.50.

### (xiii)    Litigation (Non Bankruptcy/General) - Category 0032

31.     During the Compensation Period, Stroock reviewed the complaint filed by the Debtors against RJR Nabisco and other companies in the tobacco industry seeking an injunction against litigation pending in state court, the transcript of the March 8, 2002 hearings on this matter before Judge Fitzgerald, and the order issued by the Court, and discussed the same with Debtors' counsel. Stroock has expended 2.1 hours on this category for a fee of $989.50.

### (xiv)    Litigation/Fraudulent Conveyance – 0034

32.     During the Compensation Period, Stroock reviewed publicly filed financial information for the Debtors relevant to the pending fraudulent transfer-related issues, the complaints filed by the asbestos committees on behalf of the Debtors' estates, the defendants answers thereto, reviewed the documents voluntarily produced by the Debtors, and participated in numerous discussions with counsel for the Debtors, the other committees in these cases and other parties to the fraudulent transfer litigation in respect of the schedule for and conduct of such litigation.    Stroock expended 87.2 hours in this category for a fee of $33,690.00.

### (xv)    Non-Working Travel Time – Category 0035

33.     Judge Fitzgerald held four hearings during the Compensation Period, one held at the very beginning of the period in Pittsburgh, Pennsylvania, and three others in Wilmington, Delaware, and Judge Wolin held two status conferences with counsel for the Committee in Newark, New Jersey. Stroock traveled to and from Pittsburgh, Pennsylvania, Wilmington, Delaware and Newark, New Jersey for those hearings and conferences. Stroock expended 16.9 hours on this category for a fee of $7,965.50. Pursuant to the Administrative Fee Order, Stroock

12

is requesting compensation in the amount of $3,982.75 representing fifty percent (50%) of the total amount billed.

### (xvi)    Preparation for and Attendance at Hearings – Category 0037

34.    During the Compensation Period, Judge Fitzgerald held four hearings and Judge Wolin held two status conferences during which the Court considered or began to consider a number of significant issues in these cases including the Zonolite Attic Insulation claimants' motion to dismiss these cases, the establishment of one or more bar dates and related forms and procedures for the non-asbestos unsecured claims represented by the Committee as well as asbestos-related property and personal injury claims, and the prosecution of the fraudulent transfer litigation and the Zonolite litigation.. Stroock reviewed the agenda notices, proposed orders submitted to the Court for approval, relevant pleadings and case law in preparation for the hearings. Stroock expended 71.1 hours on this category for a fee of $33,242.50.

### (xvii)    Retention of Professionals - Category 0040

35.    During the Compensation Period, the Debtors filed an application seeking authorization to compensate PricewaterhouseCoopers for services PricewaterhouseCoopers had already provided to the Debtors and to employ PricewaterhouseCoopers, but solely for purported non-bankruptcy related services. Stroock reviewed the application and the objection filed by the U.S. Trustee thereto, discussed the application and objection with Debtors' counsel, and reviewed case law relevant to the issues raised by the Debtors' application and cited to by the U. S. Trustee's objection. Stroock also revised the applications filed with respect to the proposed retention of other professionals in these cases including the Debtor's retention of the Carella, Byrne firm, the asbestos property damage committee's retention of several asbestos claims-related experts, and amendments to the Debtors' retention of Kinsella Communications, and

13

discussed the same, including the proposed forms of order and modifications thereto sought by

the Committee, with counsel for the Debtors or the property damage Committee, as applicable.

Stroock has expended 21.9 hours on this category for fee of $9,420.00.

(xviii)  <u>Stay Litigation (Section 362) – Category 0041</u>

36.     During the Compensation Period, Stroock reviewed the stay relief motion filed by

Edythe Kellogg and Debtors' objection thereto and discussed the same with Debtors' counsel.

Stroock has expended 1.9 hours on this category for a fee of $902.50

(xix)  <u>Tax/General – Category 0047</u>

37.     As reported in prior applications, representatives of Stroock and FTI P&M met

and prepared a comprehensive tax information request, which was thereafter forwarded to the

Debtors.  Stroock had received certain of the tax-information requested, and with respect to such

items Stroock reviewed the information, and engaged the Debtors and FTI P&M in further

discussion with respect to the requested information.

38.     During the Compensation Period, Stroock reviewed additional tax-information

received from the Debtors, and with representatives for FTI P&M engaged the Debtors in a

lengthy conference call to obtain clarification with respect to certain of the materials received,

and to obtain additional tax-related information.  Stroock reviewed case law, relevant Internal

Revenue Code statutes, and prepared analyses in respect of the Debtors' NOL and foreign tax

credit position and related items.  Stroock has expended 77.9 hours on this category for a fee of

$25,068.50.

## IV.     FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

39.     The factors to be considered in awarding attorneys fees have been enumerated in

<u>In re First Colonial Corp. of America</u>, 544 F.2d 1291, 1298-99 (5th Cir. 1977), <u>reh'g denied</u>, 547

14

F.2d 573, <u>cert. denied</u>, 431 U.S. 904; these standards have been adopted by most courts. Stroock respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

(A)    <u>The Time and Labor Required</u>. The professional services rendered by Stroock on behalf of the Committee have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the complex issues encountered by the Committee with skill and dispatch. Occasionally, Stroock has been required to perform these services under significant time constraints requiring work late into the evening and on weekends. The services rendered by Stroock were performed efficiently, effectively and economically.

(B)    <u>The Novelty and Difficulty of Questions</u>. Novel and complex issues have already arisen in the course of these Chapter 11 cases, and it can be anticipated that other such issues will be encountered. In this case, as in many others in which the firm is involved, Stroock's effective advocacy and creative approach have helped clarify and resolve such issues and will continue to prove beneficial.

(C)    <u>The Skill Requisite to Perform the Legal Services Properly</u>. Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the resolution of issues, are and will continue to contribute to the maximization of the distributions to the Debtors' unsecured creditors.

15

(D)     The Preclusion of Other Employment by Applicant Due to Acceptance of

the Case. Due to the size of Stroock's insolvency department, Stroock's

representation of the Committee has not precluded its acceptance of new clients.

However, the volume of the matters needing attention on a continuing basis has

required several of the attorneys to commit significant portions of their time to

these cases.

(E)     The Customary Fee. The fee sought herein is based upon Stroock's

normal hourly rates for services of this kind. Stroock respectfully submits that the

fee sought herein is not unusual given the magnitude and complexity of these

cases and the time expended in attending to the representation of the Committee,

and is commensurate with fees Stroock has been awarded in other cases, as well

as with fees charged by other attorneys of comparable experience.

(F)     Whether the Fee is Fixed or Contingent. Pursuant to §§ 330 and 331 of the

Bankruptcy Code, all fees sought by professionals employed under § 1103 of the

Code are contingent pending final approval by this Court, and are subject to

adjustment dependent upon the services rendered and the results obtained.

(G)     Time Limitations Imposed by Client or Other Circumstances. As already

indicated, Stroock has been required to attend to the various issues arising in these

cases. Occasionally, Stroock has had to perform those services under significant

time constraints requiring attorneys assigned to these cases to work evenings and

on weekends.

(H)     The Amount Involved and Results Obtained. Through the efforts of

Stroock, the Committee has been an active participant in these Chapter 11 cases

from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

(I)      The Experience, Reputation and Ability of the Attorneys. Stroock has one of the largest and most sophisticated insolvency practices in the nation and has played a major role in numerous cases of national import including: Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation, Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The Charter Company, Federated Department Stores, G. Heileman Brewing Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc., Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation, Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc., Planet Hollywood International and Anchor Glass Container Corporation. Stroock's experience enables it to perform the services described herein competently and expeditiously. In addition to its expertise in the area of corporate reorganization, Stroock has already frequently called upon the expertise of its partners and associates in the litigation, ERISA, tax and environmental law areas to perform the wide ranging scope of the legal work necessitated by these cases.

(J)      The "Undesirability" of the Case. These cases are not undesirable, but as already indicated, have required a significant commitment of time from several of the attorneys assigned hereto.

17

(K)   <u>Nature and Length of Professional Relationship</u>. As described above, Stroock has been actively rendering services on behalf of the Committee as necessary and appropriate from April 12, 2001 through to the present.

### V.   **ALLOWANCE OF COMPENSATION**

40.   The professional services rendered by Stroock required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort.  It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole and the Debtors' estates.

41.   With respect to the level of compensation, § 330 of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person (including attorneys for a creditors' committee): "Reasonable compensation for actual necessary services rendered by [such] . . . professional person.  11 U.S.C. § 330.  Section 330 further states that the court should take into consideration, <u>inter alia</u>, the nature, extent, and value of services performed, as well as the cost of comparable services other than in a case under this title.  <u>Id.</u>  The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

42.   The total time spent by Stroock attorneys and paraprofessionals during the Compensation Period was 768.7 hours.  Such services have a fair market value of $267,170.25[3]

1.   ———————————————

[3]   Pursuant to Delaware Local Rules 2016, Stroock has reduced its total compensation amount by $3,982.75 representing 50% of the total amount of non-working travel time billed at its normal hourly rate.

18

The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

43.    As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time.  Attached hereto as Exhibit "C" are summaries of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

44.    In addition, Stroock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $6,149.76 for which Stroock respectfully requests reimbursement in full.

45.    The disbursements and expenses have been incurred in accordance with Stroock's normal practice of charging clients for expenses clearly related to and required by particular matters.  Such expenses were often incurred to enable Stroock to devote time beyond normal office hours to matters, which imposed extraordinary time demands.  Stroock has endeavored to minimize these expenses to the fullest extent possible.

46.    Stroock's billing rates do not include charges for photocopying, telephone and telecopier toll charges, computerized research, travel expenses, "working meals", secretarial overtime, postage and certain other office services, because the needs of each client for such services differ.  Stroock believes that it is fairest to charge each client only for the services actually used in performing services for it.  Stroock has endeavored to minimize these expenses to the fullest extent possible.

47.    Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions.  Stroock does not charge for incoming facsimiles.

19

48.     Further, in accordance with the Court's June 22, 2001 Order Authorizing the Retention of Experts, this application seeks payment for the fees and expenses of the asbestos issues expert engaged by the Committee, for the months of January, February and March 2002 in the aggregate amount of $36,352.60.  No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

49.     Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

50.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period other than as set forth herein.

        **WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order and the Court's June 22, 2001 Order Authorizing the Retention of Experts:

(a)     the allowance of compensation for professional services rendered to the Committee during the period from January 1, 2002 through and including March 31, 2002 in the amount of $267,170.20;

(b)     the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from January 1, 2002 through and including March 31, 2002 in the amount of $6,149.76;

(c)     the payment of the fees and expenses of the asbestos issues expert employed by the Committee for the months of January, February and March 2002 in the aggregate amount of $36,352.60;

20

(d)     authorizing and directing the Debtors to pay as interim compensation to Stroock

80% of the amount of the professional services rendered by Stroock and 100% of

the expenses sought by Stroock in this Application subject to final payment of the

full amount; and

(e)     granting such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
        May 15, 2002                     STROOCK & STROOCK & LAVAN LLP


                                         Lewis Kruger (LK4912)
                                         A Member of the Firm
                                         180 Maiden Lane
                                         New York, New York 10038-4982
                                         (212) 806-5400

                                         Co-Counsel for the Official Committee of
                                         Unsecured Creditors of W. R. Grace & Co., et al.

21