**EXHIBIT "B"**

**SUMMARY OF PRINCIPAL SERVICES RENDERED FOR THE PERIOD**
<u>JANUARY 1, 2002 THROUGH MARCH 31, 2002</u>

1.      Case Administration – 15537 – 242.3 hours ($63,430.50)

This matter covers the attention given to routine motions and pleadings, and preparation of responses thereto, the preparation of summaries and analyses of such papers for the PD Committee, and meetings with the Debtors or their professionals.

The Applicant's focus on the administration of the Consolidated Cases during the Application Period continued to permit the PD Committee to remain fully informed about all on-going matters pending in the Consolidated Cases. During the Application Period, the Applicant maintained constant communication with members of the PD Committee with respect to a "status letter" sought by Judge Wolin from each official committee regarding the status of these cases. The Applicant prepared the status letter and circulated it to the PD Committee for review and comment, and thereafter submitted the "status letter" to Judge Wolin.

During the Application Period, significant progress was made with respect to the Debtors' proposed case management procedures. The Applicant spent substantial amounts of time preparing for the scheduled hearings on the Debtors' highly contentious case management motions, including reviewing the relevant case law, precedent notice programs and proof of claim forms being advocated by the Debtors. The Applicant continuously discussed multiple strategic alternatives to the notice program, bar date and the proof of claim form with members of the PD Committee and experts engaged by the PD Committee to advise on such issues.

Oral argument on the proposed case management motions commenced during the February omnibus hearing, whereat the Applicant stridently objected to the Debtors proposals. During the hearing, the Court directed the Applicant to file a specific, line-by-line objection to the proposed proof of claim form for asbestos property damage claims. On behalf of the PD

Committee, the Applicant drafted the objection to the claim form and filed it with the Court. At the March omnibus hearing, the Applicant, the Debtors and the Court worked to resolve each of the specific objections. At the conclusion of the hearing, the Debtors and the Applicant agreed to attempt to finalize the claim form prior to the April omnibus hearing. The claim form was ultimately submitted to the Court for final approval during the April hearing.

In order to facilitate the Court's analysis of the Debtors' proposed notice program, the PD Committee directed the Applicant to explore with the PD Committee's notice expert, Todd Hilsee, the feasibility of an alternative notice program. The Applicant directed Mr. Hilsee to attempt to develop a notice program that would meet Constitutional due process standards and at the same time, have the appropriate reach and frequency necessary to provide "adequate notice" to asbestos property damage claimants. The Applicant assisted in finalizing the alternative notice program and argued the merits of the alternate program as well as the deficiency of the Debtors' notice program at the March omnibus hearing.

Further, during the Application Period, the issue of the permissibility of class proofs of claim was raised multiple times. The Applicant carefully researched the current state of the law with respect to the issue and counseled the PD Committee appropriately.

In addition, during the Application Period, the Applicant carefully reviewed, summarized, and provided advice and recommendations to the PD Committee, with respect to the Debtors' motion to enter into "Project Blueberry" – a sale of one of their assets. The Applicant discussed the sole with the PD Committee's financial advisors. Further, the Applicant carefully reviewed, the summarized and provided advise and recommendations to the PD Committee with respect to the Debtors' motions to extend exclusivity and the time in which they must assume or reject non-residential lessee and executory contracts.

2.     Debtors' Business Operations – 15538 - 4.9 hours ($1,275.00)

2

567050

This matter covers the attention given to review and analysis of the Debtors' statement of affairs, schedules of assets and liabilities, monthly reports of operations and their Securities and Exchange Commission filings.

During the Application Period, the Applicant expended time reviewing and provided advice to the PD Committee with respect to CDG's report on results of operations of the Debtors, the Debtors' deminimus sales reports, the Debtors' settlement reports, and the Debtors' motion to close an operating plant.

3.      Creditors Committee – 15539 – 18.8 hours ($6,224.00)

This matter covers formation, membership, and by-law issues of the PD Committee. It also covers attendance at PD Committee meetings, preparation of materials for and presentations thereon to the PD Committee, and the preparation of minutes of the meetings.

During the Application Period, the Applicant convened weekly telephonic meetings of the PD Committee. The Applicant prepared detailed agendas for each meeting, reviewed pending matters and issues in preparation therefor, and counseled the members in formulating a position on such matters and positions. Further, subsequent to the meetings the Applicant drafted, and circulated for review prior to adoption, drafts of minutes of the PD Committee meetings.

Throughout its representation of the PD Committee, the Applicant has aggressively and attentively represented the interests of the PD Committee. Assuming the role of liaison, the Applicant has continued to maintain continuous communications with the Debtors' counsel and PD Committee members and, at times, counsel to the personal injury claimants committee and counsel to the unsecured creditors' committee. The Applicant timely and professionally relayed information to PD Committee members through in-person meetings, telephone conference calls, e-mail and correspondence.

567050

4.      Retention of Professionals – 15540 – 13.7 hours ($3,92.00)

This matter covers the retention of professionals by the PD Committee or the Debtors, including interviews, discussions, motions and objections.

During the Application Period, the Applicant reviewed, analyzed and provided advice to the PD Committee with respect to the United States Trustee's objection to the Debtors' application to employ Price Waterhouse.

At the PD Committee's direction, the Applicant finalized applications for the retention of W.D. Hilton, Jr., Hamilton Rabinovitz & Alschuler, and Hilsoft Notifications as experts to the PD Committee.

In addition, the Applicant reviewed and provided comments to the retention papers for the fee auditor, Warren H. Smith, in these cases.

5.      Court Appearances – 15544 – 42.8 hours ($14,497.00)

This matter covers preparation for and attendance at omnibus court hearings and status conferences.

During the Application Period, the Applicant prepared for, attended, and actively participated in the omnibus hearings held on January 3 and 29, February 25 and March 18, 2002.

In addition, the Applicant attended a conference with Judge Wolin to discuss certain fraudulent transfers that the PD Committee (along with PI Committee) sought authority to prosecute on behalf of the estates. Thereafter, the Applicant attended a conference with Judge Wolin to discuss counsel issues related to the prosecution of the fraudulent transfers.

6.      Fee Applications – 15543 – 42.3 hours ($6,054.50)

This matter covers time expended preparing fee applications for the Applicant, the applications for reimbursement of expenses of PD Committee members or professionals, and reviewing, and objecting if necessary, to fee applications of others.

4

567050

During the Application Period, the Applicant expended time preparing, drafting and filing its sixth, seventh and eighth interim fee applications, and third quarterly fee application, and the related application for reimbursement of expenses of PD Committee members.

The Applicant also reviewed and analyzed the numerous fee applications filed by the Debtors and their special counsels, the Personal Injury Committee, and the Official Committee of Unsecured Creditors.

The Applicant also assisted the PD Committee's financial advisors, CDG, with finalizing their fee applications during the Application Period.

7.  Travel – 15546 – 52.0 hours ($8,527.50)

The Applicant traveled to Wilmington, Delaware to attend the omnibus hearings on January 29, February 25 and March 18, 2002. In addition, the Applicant traveled to Pittsburgh, Pennsylvania to attend the omnibus hearing on January 3, 2002. Further, the Applicant traveled to Newark, New Jersey for the fraudulent transfer conferences with Judge Wolin. In accordance with Local Rule 2016-2(d)(viii), all such time is being billed at fifty percent (50%) of regular hourly rates, to the extent work was not being performed en route.

9.  Fraudulent Transfer Litigation – 15547 – 605.2 hours ($170,835.50)

This matter covers the analysis of the fraudulent transfer claims, motions to prosecute and hearings thereon. It also covers selection of professionals for this litigation, consultation with the PD Committee, the Personal Injury Committee, and special counsel to prosecute the claims.

As explained below, the fraudulent transfer cases have been placed on a very expedited timetable. The trial is scheduled to commence on September 30, 2002. As a result, it has been necessary for the Applicant to expend substantial amounts of time on this matter. However, keeping in mind that other counsel are involved in the prosecution, the Applicant has been very conscientious to avoid duplication of effort by counsel involved.

5

During the January 3, 2002 omnibus hearing, the Court heard argument on the asbestos Committees' motion for leave to prosecute the fraudulent transfer actions against Sealed Air Corporation and Fresenius Medical Care. The Court ruled that each Committee was empowered to independently investigate and analyze the potential claims and to issue a report of its finding to the Court at the April omnibus hearing. Immediately after the ruling, the Applicant began to analyze the underlying transactions, including reviewing documents that were "voluntarily" produced by the Debtors. The Applicant developed theories as to potential causes of action, solvency of the Debtors' (pre and post transfers) and potential defenses to the transfers. In addition, the Applicant met with the PD Committee's financial advisors in Wilmington (immediately prior to an omnibus hearing) to develop the framework of the case and to determine further analyses that would be required.

However, at the January 29, 2002 omnibus hearing, the Court informed the Applicant that Judge Wolin ruled that the asbestos Committees would be granted the authority to prosecute the fraudulent transfers against Sealed Air Corporation and Fresenius Medical Care. Thereafter, the Applicant began to coordinate with counsel to the PI Committee a strategic plan for prosecution of the actions. Further, the Applicant attended two conferences held by Judge Wolin to discuss global case management issues.

Thereafter, the Applicant actively participated in all aspects of the prosecution of the actions, including selection of special counsel, determination of experts, coordination of production and scanning of documents at the Debtors' facility in Boca Raton, Florida, reviewing the "key documents" produced to the Applicant by the Debtors and the negotiation of a case management scheduling order.

In addition, the Applicant had an in-person meeting with counsel to the PI Committee to develop a strategy with respect to reviewing approximately 200 boxes of documents produced

6

by the Debtors, as well as to discuss and further develop their overall case strategy.

Also, the Applicant, in conjunction with counsel to the PI Committee drafted the complaints that were filed against Sealed Air and Fresenius. In addition, the Applicant conferred with counsel to the Environmental Protection Agency to discuss the Debtors' environmental liabilities at the time of the transfers.

10.     Litigation Consulting – 15563 – 25.1 hours ($7,043.50)

This matter covers the analysis of litigation claims, other than the fraudulent transfer claims, including strategic motions contemplated or conceptualized by the PD Committee.

Prior to the Application Period, certain Zonolite Attic Insulation ("ZAI") claimants filed a motion to dismiss the Debtors' cases. During the Application Period, after substantial discussion and analysis with the PD Committee regarding its position on the motion to dismiss, the PD Committee directed the Applicant to draft and file a limited joinder to the motion to dismiss.