**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- -                                                              :
In re:                                                           :
                                                                 :
  W.R. GRACE & CO., ET AL.,                                      :  Case No. 01-1139 (JKF)
                                                                 :      Chapter 11
                        Debtors.                                 :
                                                                 :     (Jointly Administered)
- - - - - - - - - - - - - - - - - - -- - - - - - - - - - - - - - x
- - -
```

SUMMARY OF FOURTH INTERIM APPLICATION OF CONWAY, DEL GENIO, GRIES & CO., LLC ("CDG") FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED AS FINANCIAL ADVISOR FOR THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS FOR THE PERIOD FROM JANUARY 1, 2002 THROUGH MARCH 31, 2002.

| | |
|---|---|
| Name of Applicant: | Conway, Del Genio, Gries & Co., LLC |
| Authorized to Provide Professional Services to: | The Official Committee of Asbestos Property Damage Claimants |
| Date of Retention: | Retention order entered on October 22, 2001, Nunc Pro Tunc, to April 27, 2001 |
| Period for which compensation and reimbursement are sought: | January 1, 2002 through March 31, 2002 |
| Amount of compensation requested: | $450,000.00 |
| Amount of expense reimbursement requested: | $4,809.71 |

This is a fourth interim application.

| Date Filed | Period Covered | Requested Compensation | Requested Expenses | Approved Compensation | Approved Expenses |
|---|---|---|---|---|---|
| May 24, 2002 | January 1, 2002 through March 31, 2002 | $450,000 | $4,809.71 | NA | NA |

| | | | | | |
|---|---|---|---|---|---|
| February 25, 2002[1] | November 1, 2001 through December 31, 2001 | $300,000 | $2,406.91 | $300,000* | $2,406.91 |
| November 29, 2001[1] | October 1, 2001 through October 31, 2001 | $150,000 | $1,657.00 | $150,000* | $1657.00 |
| October 26, 2001[1] | April 27, 2001 through September 30, 2001 | $620,000 | $14,376.21 | $620,000* | $14,376.21 |

**\* Subject to section 105(A) and 331 of the Bankruptcy Code establishing procedures for interim compensation and reimbursement of professionals whereby 80% of fees are paid on a monthly basis**
**(1) No objection to the compensation and expenses was filed.**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                          :
In re:                                    :
                                          :
W.R. GRACE & CO., ET AL.,                 :   Case No. 01-1139 (JKF)
                                          :   Chapter 11
                    Debtors.              :
                                          :   (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

SUMMARY OF FOURTH INTERIM APPLICATION OF CONWAY, DEL GENIO, GRIES & CO., LLC ("CDG") FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED AS FINANCIAL ADVISOR FOR THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS FOR THE PERIOD FROM JANUARY 1, 2002 THROUGH MARCH 31, 2002.

TO THE HONORABLE JUDITH K. FITZGERALD,
UNITED STATES BANKRUPTCY JUDGE:

Conway, Del Genio, Gries & Co., LLC ("CDG") files this fourth interim application (the "Application") for allowance of compensation for financial advisory services provided to the Official Committee of Asbestos Property Damage Claimants of W.R Grace & Co., et al. (the "PD Committee") commencing January 1, 2002 (the "Commencement Date") through and including March 31, 2002 (the "Compensation Period") and reimbursement of its actual and necessary expenses incurred during the Compensation Period, and respectfully represents:

Introduction

1. Pursuant to the Order of the Court dated October 22, 2001, (the "Retention Order"), CDG was retained as financial advisor to the PD Committee to perform services set forth in our affidavit dated June 15, 2001.

2. By this Application, CDG requests an interim allowance for professional services rendered during the Compensation Period and reimbursement for actual and necessary expenses incurred during the Compensation Period. CDG is a financial advisory firm specializing in reorganization and restructuring of troubled companies. CDG's senior professionals have extensive experience with the reorganization and restructuring of troubled companies.

Background

3. On April 2, 2001 (the "Filing Date"), the above-captioned debtors (the "Debtors") filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors operated its business and managed its properties as debtors in possession.

4. On April 2, 2001, the Court entered its Order directing the joint administration of the Debtors' chapter 11 cases (the "Consolidated Cases").

5. On April 12, 2001, the Office of the United States Trustee appointed the PD Committee in this case consisting of Mr. Marco Barbanti, Princeton University, Pacific Freeholds and Prudential Insurance Company. The PD Committee held its organizational meeting on that day and selected Mr. Marco Barbanti to serve as its Chairman. Thereafter, the PD Committee was expanded to include Paul Price, Anderson Memorial Hospital and the Catholic Archdiocese of New Orleans. The PD Committee subsequently elected Mr. Dan Speights, representative of Anderson Memorial Hospital, as Co-Chairman of the PD Committee.

6. The PD Committee represents the interests of the asbestos property damage claimants in the Consolidated Cases.

7. On April 27, 2001, the PD Committee chose to retain CDG as its financial advisor. By application, dated July 6, 2001, the Applicant sought Court approval for its retention as financial advisor to the PD Committee nunc pro tunc to April 27, 2001.

8. Pursuant to the Retention Order, the Court authorized the PD Committee to retain CDG as financial advisor at a rate of $150,000.00 per month for the first twelve months and $100,000.00 per month thereafter, plus reimbursement of actual and necessary expenses nunc pro tunc to April 27, 2001, pursuant to Sections 1103(a) and 328(a) of title 11 of the United States Code. The Retention Order conditioned the Applicant's compensation on approval by this Court.

9. On October 26, 2001, CDG requested a first interim allowance of $620,000.00 as compensation for professional services rendered from April 27, 2001 through September 30, 2001 (the "First Interim Compensation Period"). CDG also requested an allowance of $14,376.21 as reimbursement for actual and necessary expenses CDG incurred during the First Interim Compensation Period. No objections to the fee and expense request for the First Interim Compensation Period were filed. CDG received payment of $510,376.21, representing 80% of fees requested and 100% of expenses requested.

10. CDG requested a second interim allowance of $150,000.00 as compensation for professional services rendered from October 1, 2001 through October 31, 2001 (the "Second Interim Compensation Period"). CDG also requested an allowance of $1,657.00 as reimbursement for actual and necessary expenses CDG incurred during the Second Interim Compensation Period. No objections to the fee and expense request for the Second Interim Compensation Period were filed. CDG received payment of $121,657.00, representing 80% of fees requested and 100% of expenses requested.

11. CDG requested a third interim allowance of $300,000.00 as compensation for professional services rendered from November 1, 2001 through December 31, 2001 (the "Third Interim Compensation Period"). CDG also requested an allowance of $2,406.91 as reimbursement for actual and necessary expenses CDG incurred during the Third Interim Compensation Period. No objections to the fee and expense request for the Third Interim Compensation Period were filed. CDG

received payment of $242,406.91, representing 80% of fees requested and 100% of expenses requested.

12. CDG requests a fourth interim allowance of $450,000.00 as compensation for professional services rendered during the Compensation Period. CDG also requests an allowance of $4,809.71 as reimbursement for actual and necessary expenses CDG incurred during the Compensation Period. CDG, in its normal course of business, bills its clients a flat monthly fee and does not charge by the hour. Thus, CDG does not normally keep time records. However, for the benefit of the Court, CDG is recording its hourly time and has provided summaries of the time spent by professionals during the Compensation Period, attached hereto as Exhibit A. CDG has provided supporting detail of the expenses incurred, attached hereto as Exhibit B.

13. There is no agreement or understanding between CDG and any other person, other than members, associates and employees of CDG, for the sharing of compensation received or to be received for services rendered in connection with these proceedings.

14. CDG has not entered into any agreement, express or implied, with any party in interest, including the PD Committee, the Debtors, other creditors, or any representative of any of them, or with any attorney for such party in interest, for the purpose of fixing the fees or other compensation to be paid to CDG for services rendered in connection herewith, from the assets of the Debtors.

<u>Services Provided</u>

15. During the First Interim Compensation Period, CDG provided the PD Committee with experience and expertise in dealing with matters relating to the Debtors' businesses and historical operating trends, the Debtors' business plan, industry trends, proposed acquisitions by the Debtors, the Debtors' employee retention and incentive plans, trends for asbestos litigation and corresponding insurance coverage as well as a number of other items. CDG also assisted the PD Committee in beginning its ongoing investigation of asset divestitures which occurred prior to the Chapter 11 filing. CDG actively participated in meetings and conference calls with the PD Committee and provided the PD Committee members with observations, advice and guidance on various matters

and issues. CDG also responded to numerous questions and information requests from the PD Committee by investigating and reporting CDG's findings back to the PD Committee.

16. During the Second Compensation Period, CDG provided the PD Committee with experience and expertise in analyzing the Debtors' business plan, analyzing operating results, proposed acquisitions by the Debtors, as well as assisting the PD Committee in beginning its ongoing investigation of asset divestitures, which occurred prior to the Chapter 11 filing. CDG actively participated in conference calls with the PD Committee and provided the PD Committee members with observations, advice and guidance on various matters and issues.

17. During the Third Compensation Period, CDG provided the PD Committee with experience and expertise in analyzing operating results and assisting the PD Committee in its ongoing investigation of asset divestitures, which occurred prior to the Chapter 11 filing. CDG completed and provided to the committee a comprehensive report reviewing and analyzing a historical divestiture, with particular emphasis on the merits of fraudulent transfer litigation. CDG also began preparing another report analyzing a second divestiture. CDG also actively participated in conference calls with the PD Committee, provided the PD Committee members with observations, advice and guidance on various matters and issues and attended court hearings.

18. During the Compensation Period, CDG provided the PD Committee with experience and expertise in analyzing operating results and assisting the PD Committee in its ongoing investigation of asset divestitures, which occurred prior to the Chapter 11 filing. CDG continued to investigate and perform financial valuation analyses related to its first report on a historical divestiture delivered to the committee in the Third Compensation Period. CDG also completed a second comprehensive report reviewing and analyzing a second historical divestiture, with particular emphasis on the merits of fraudulent transfer litigation. The report was used by the committee to gain a general understanding of the divestiture and evaluate strategies for pursuing the litigation. CDG also actively participated in conference calls with the PD Committee, provided the PD Committee members with observations, advice and guidance on various matters and issues and attended court hearings. The services rendered by CDG during the Compensation Period:

**Category 1 – Review and Analysis of Debtors' Business and Operations**

No services performed during the Compensation Period.

**Category 2 – Analyzed, reviewed and monitored the Debtors' financial results and other relevant information**

Services performed in this project area during the Compensation Period relate primarily to CDG's detailed review of November and December and year-end operating results. CDG analyzed the Debtors' monthly, quarterly, and fiscal year end operating results, evaluating performance relative to historical trends. CDG kept the PD Committee apprised of current operating results, preparing presentations and analyses related to the quarterly operating results.

**Category 3 - Meetings and conference calls with the Debtors' management and financial advisor**

Services performed in this project area during the Compensation Period relate primarily to CDG's involvement in conference call with the Debtors' to discuss monthly operating results.

**Category 4 – Review of Asbestos Related Litigation, Risk Management and Other Legacy Liabilities**

No services performed during the Compensation Period.

**Category 5 - Meetings and discussions with the Committee and/or its Counsel**

Services performed in this project area during the Compensation Period relate primarily to CDG's active participation on weekly PD Committee conference calls and calls with Counsel related to various case issues that arose. Other services include CDG's attendance at scheduled Court hearings.

**Category 6 – Review of Acquisitions Proposed by the Debtors**

Services performed in this project area during the Compensation Period relate primarily to conference calls and meetings with the Debtor, as well as, to the review of certain documents and information provided by the Debtor, regarding its ongoing negotiations for the acquisition of Addiment Incorporated.

**Category 7 – Reviewed Debtors' Employee Retention and Incentive Plans**

Services performed in this project area during the Compensation Period relate primarily to CDG's review of the Debtors' revised key employee retention plans, incentive compensation plans, and severance arrangements for 2003 and 2004. CDG met with the Debtor to discuss the plans and reviewed supplemental information provided by the Debtor related to the proposed plans. CDG prepared a memo to the PD Committee outlining the terms of the Debtors' Retention and Incentive Plans, and discussed the plan with Committee Counsel.

**Category 8 – Investigation of Asset Divestitures / Fraudulent Conveyance**

Services performed in this project area during the Compensation Period relate primarily to CDG's assisting the Committee in its ongoing investigation and understanding of asset divestitures which occurred prior to the Debtors' Chapter 11 filing. CDG researched and prepared a presentation in order to assist counsel and the Committee in preparation for the litigation, which was planned, but ultimately cancelled, related to which constituency of the Chapter 11 proceedings should pursue fraudulent transfer claims. CDG had numerous conversations with counsel, including an in-person meeting to review the various divestitures, analyze the merits of any litigation and strategies for pursuing the litigation. These analyses focused on assisting the PD Committee in understanding the nature of certain transactions and the value of assets divested and value of consideration received.

**Category 9 - Planning, preparation and organization**

No services performed during the Compensation Period.

**Category 10 - Fee application and statements**

This category includes time spent preparing the fourth fee application. Time statements are attached as exhibits hereto in accordance with the requirements of this Court.

**Category 11 - Other**

Any amount of time CDG spent on activities for the PD Committee, which fall outside of all other categories.

19.     CDG submits that the foregoing services were necessary to the successful and prompt administration of the Consolidated Cases, necessary and beneficial to the PD Committee at the time at which such services were rendered, and were performed without unnecessary duplication of effort or expense.

20.     Annexed hereto as Exhibit A is a schedule setting forth the summarized time by professional of services provided to the PD Committee during the Compensation Period.  Annexed hereto as Exhibit B is a schedule setting forth the actual and necessary expenses that CDG incurred during the Compensation Period. To the best of knowledge, information and belief, all entries in Exhibits A & B comply with the requirements set forth in Order No. 32.  To the best of knowledge, information and belief, this Application complies with section 330 of title 11 of the United States Code, the Federal Rules of Bankruptcy Procedure, the Guidelines adopted by the Executive Office for the United States Trustee for Reviewing Applications for Compensation and Reimbursement of Expenses, Order No. 32 and the Administrative Order.

WHEREFORE CDG respectfully requests (i) interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $450,000.00 ("CDG Professional Services Fees") and reimbursement for actual and necessary expenses CDG incurred during the Compensation Period in the amount of $4,809.71 ("CDG Expenses"); (ii) that the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to CDG's right to seek such further compensation for the full value of services performed; (iii) that the Debtors' be directed to pay to CDG, forthwith, eighty percent (80%) of CDG Professional Services Fees and one hundred percent (100%) of CDG Expenses, and (iv) that the Court grant CDG such other and further relief as is just.

Dated:  New York, New York
        May 24, 2002

                                        Conway, Del Genio, Gries & Co., LLC


                                        By: /S/ GREGORY S. BOYER
                                            Managing Director