IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: July 5, 2002**
**Hearing Date: July 22, 2002 at 10:00 a.m.**

## DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN A PRIME LEASE AND THE ACCOMPANYING SUBLEASE

The above-captioned debtors and debtors in possession (collectively, the

"Debtors") by and through their undersigned counsel, submit this Motion (the "Motion") for

entry of an Order, pursuant to sections 105(a), 363(b) and 365(a) of chapter 11 of the United

States Code (as amended, the "Bankruptcy Code"), authorizing the Debtors to assume and assign

that certain prime lease and the accompanying sublease as more fully set forth herein. In support

of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

**Jurisdiction**

1.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The statutory bases for relief requested herein are sections 105(a), 363(b) and 365(a) of the Bankruptcy Code.

**Background**

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.      W. R. Grace & Co.-Conn. ("Grace") leases a warehouse and office complex located in Carteret, New Jersey (the "Facility") pursuant to two prime leases, one executed in 1972 and the second in 1979, with Carteret Venture (the "Landlord") (such leases the "Facility Leases").  The term of the Facility Leases expire on May 30, 2005 and the annual base rent is $724,512, with additional expenses (including taxes, utilities and maintenance) of almost $600,000 per year.  Grace also leases three parking lots adjacent to the Facility (the "Parking Lots" and together with the Facility, the "Premises") pursuant to leases with the Borough of Carteret and the Hungarian Reformed Church (the "Parking Leases" and, together with the Facility Leases, the "Leases").  The total annual rent for the Parking Leases is $13,202.

5.      In or about 1986, the Debtors divested one of their former subsidiaries and businesses known as Herman's Sporting Goods, Inc. ("Herman's").  As a part of this divestment,

the Debtors assigned the Facility Leases to Herman's. Subsequently, in 1997 and in connection

with Herman's Chapter 11 bankruptcy proceedings, the Facility Leases were reassigned to

Grace.

6.    The Facility consists of over 350,000 square feet of buildings and other

improvements, of which approximately 207,000 square feet is subleased to AMF Trucking &

Warehousing, Inc. ("AMF") for the remaining term of the prime lease pursuant to a sublease

with Grace (the "Sublease").[2]  The remaining space, comprised of 106,000 square feet of

warehouse space and 44,150 square feet of office space, is presently vacant (the "Vacant

Space").

7.    At present, Grace operates the Premises at a monthly net loss in excess of

$50,000. In addition, the Landlord has asserted that Grace has significant obligations to repair

and restore the Facility at the expiration or earlier termination of the Facility Lease. First, the

Facility Lease requires Grace to keep the improvements in good order and repair, and surrender

them at the end of the term in such good condition, ordinary wear and tear excepted. The

Landlord has provided Grace with an extensive list of items of deferred maintenance which the

Landlord believes are required to satisfy this covenant. Grace's estimate of the cost of this

deferred maintenance expense is $350,000. Second, Grace may be required by the Landlord to

remove any alterations made during the term of the Facility Lease. The Landlord presently

asserts that Grace will be required to demolish most of the office space (approximately 35,000

square feet) and convert it back into warehouse space. Grace estimates that the demolition of the

---

[2] Currently, there is also a month-to-month lease of a small office area with a rent of $500 per month. Under the Assignment which is the subject of this Motion, the Landlord has the right to require Grace to terminate this sublease prior to the assignment.

office space would cost $300,000. Third, the Landlord could also assert that Grace will be required to demolish the 51,946 square foot mezzanine. Grace estimates that the demolition of the mezzanine would cost $250,000. In total, Grace could be faced with as much as $900,000 in maintenance and repair obligations within the next three (3) years.

8.      The Vacant Space has been aggressively marketed, but since the condition of the Vacant Space would require substantial tenant improvements (estimated to be in excess of $250,000) and the relatively short remaining term of the lease is not adequate to amortize the necessary tenant improvements, credit worthy tenants have not been interested in the Vacant Space. As a result, over the last several months, a dual track has been followed. Grace has continued to aggressively market the space for subleasing (at a discount from market rents and with bonus commissions payable to the procuring broker) and the Landlord has pursued long term credit tenants (with the understanding that if the Landlord found such a tenant, Grace and the Landlord would try to negotiate mutually satisfactory terms of a termination or assignment of the Facility Lease).

9.      The Landlord has found such a tenant and is now in the position of executing a ten year lease, subject to re-acquiring possession of the Vacant Space from Grace. To accomplish this, Grace and the Landlord have agreed to the terms of an assignment and assumption agreement covering the Facility Leases, the Parking Leases and the Sublease (the "Assignment Agreement") which provides that the Landlord will assume all of Grace's obligations under the Leases. A copy of the Assignment Agreement is attached hereto as Exhibit A.

10.    As a condition of entering into the Assignment Agreement, the Landlord is requiring Grace to (a) continue paying the rent under the Leases until October 31, 2002 (resulting in a net expense of approximately $152,000 for the period from August 1 through October 31) and (b) pay the Landlord the sum of $182,000 in full satisfaction of all of Grace's obligations under the Facility Leases (the "Transfer Payment"). Grace has actively and aggressively negotiated these amounts and believes in its reasoned business judgment that this represents the best possible outcome.

## Relief Requested

11.    Pursuant to sections 363(b) and 365(a) of the Bankruptcy Code, the Debtors seek the Court's approval of the Debtors' assumption and assignment of each of the Leases and the Sublease pursuant to that certain Assignment and Assumption agreement attached hereto as Exhibit A.

## Basis for Relief

12.    The Debtors respectfully submit that the proposed transfer satisfies the governing standards for such transfer promulgated in the Third Circuit. Under section 363(b) of the Bankruptcy Code, the debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Courts within this Circuit interpreting section 363(b) of the Bankruptcy Code have held that transactions should be approved under section 363(b) when they are supported by the sound business judgment of management. See In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) ; In re Phoenix Steel Corp., 82 B.R. 334, 335-336 (Bankr. D. Del. 1987) (judicial approval of a section 363 sale requires a showing that the proposed sale is fair and equitable, that a good business reason exists for completing the sale and that the transaction was entered into in good faith).

13.     The "sound business judgment" test requires a debtor to establish the

following four elements of proof:

- that a sound business purpose justifies the transfer outside the ordinary course of business;

- that adequate and reasonable notice has been provided to interested parties;

- that the debtor has obtained a fair and reasonable price; and

- good faith.

See In re Titusville Country Club, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); Phoenix

Steel, 82 B.R. at 335-336.  See also Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th

Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983).  The proposed transfer

satisfies every prong of the above-articulated test.

*The Proposed Sale is Supported by Sound Business Judgment*

14.     Clear business reasons exist to justify the Debtors' transfer of the Leases

and the Sublease under section 363(b) of the Bankruptcy Code.  Neither the Leases nor the

Sublease are essential to the Debtors' core business operations and neither coincides with the

Debtors' restructuring efforts or ongoing business plan.  Because this property is operating at a

substantial net loss to the Debtors, the Debtors' management has determined in its business

judgment that the Leases and the Sublease should be transferred to the Landlord to minimize the

Debtors' losses.

15.     The Debtors submit that the circumstances surrounding their efforts to

sublease the Vacant Space warrant approval of the sale to the Landlord.  The Debtors believe

that it is highly unlikely that a renewed marketing process and the associated costs would yield a

better result than that offered by the Landlord. Such a process will merely delay the transfer and cause the Debtors to incur further uncompensated carrying costs and associated risks.

*The Debtors Will Provide Reasonable and Adequate Notice to Interested Parties*

16.     In satisfaction of the requirements of Rule 2002 of the Bankruptcy Rules, the Debtors intend to serve copies of this Motion to the parties set forth herein.

*The Proposed Transfer Payment is Fair and Reasonable*

17.     The Transfer Payment represents the most cost-effective method for the Debtors to complete their obligations under the Leases and the Sublease. Based on the information available, and the Debtors' analysis of the likely costs of alternative dispositions of the Leases and Subleases (a summary of which is attached hereto as Exhibit B), the Debtors have concluded that the Transfer Payment is fair and reasonable and represents the best possible result for the Debtors' estates.

*The Transfer Was Negotiated in Good Faith*

18.     The transfer of the Leases and the Sublease is the product of good faith, arm's-length negotiations between the Debtors and the Landlord. The Landlord is not an "insider" of any of the Debtors within the meaning of section 101(31) of the Bankruptcy Code, and is not controlled by, or acting on behalf of, any insider of any of the Debtors. See, e.g., In re After Six, Inc., 154 B.R. 876, 883 (Bankr. E.D. Pa. 1993) (good faith found where officers, directors and employees of debtor had no apparent connection to purchasers). The Debtors request a finding by this Court that the Landlord is a "good faith purchaser" under section 363(m) of the Bankruptcy Code.

19.     For all of the foregoing reasons, the Debtors respectfully request that the Court approve the transfer of the Leases and the Sublease under section 363(b) of the Bankruptcy Code.

*Request for Approval of Transfer Free and Clear of Liens*

20.     The Debtors request that the Court approve the Transfer of the Leases free and clear of all liens, claims, encumbrances and interests which may be asserted against either the Leases or the Sublease (collectively, the "Encumbrances"). The Debtors, however, are not aware of the existence of any Encumbrances against the Leases and the Sublease.

21.     The Debtors submit that the transfer of the Leases and the Sublease meets each of the requirements of the "sound business judgment" test. Accordingly, the Debtors believe that it is in the best interests of their estates and creditors that the Leases and the Sublease are assumed, sold and assigned in accordance with this Motion.

*Request for Relief from Transfer Taxes*

22.     Section 1146(c) of the Bankruptcy Code provides that the making or delivery of an instrument of transfer under a confirmed chapter 11 plan of reorganization may not be taxed under any law imposing a stamp or similar tax, if any. Most courts have construed this provision to include transfers outside of, but in furtherance of effectuating, a chapter 11 plan. See Director of Revenue, State of Delaware v. CCA Partnership, 70 B.R. 696 (Bankr. D. Del. 1987), aff'd 833 F.2d 304 (3d Cir, 1987); In re Jacoby-Bender, Inc., 40 B.R. 10 (Bankr. E.D.N.Y. 1984), aff'd 758 F.2d 840 (2d Cir, 1985); In re A.H. Robins Co., 88 B.R. 742 (E.D. Vir. 1988), aff'd 880 F.2d 694 (4th Cir. 1988). See also In re Hechinger Investment Co. of Delaware, 276 B.R. 43 (D. Del. 2002).

23.    The Debtors respectfully request a ruling of this Court that section 1146(c) of the Bankruptcy Code applies to the transfer hereunder.

## The Assumption and Assignment of the Leases and the Sublease

24.    Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  It is well established that the decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984) (describing the business judgment test as "traditional").  See also In re Taylor, 913 F.2d 102 (3d Cir. 1990); Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp., 872 F.2d 36 (3d Cir. 1989).  Additionally, pursuant to section 365(b)(1)(A) of the Bankruptcy Code "[i]f there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee cures, or provides adequate assurance that the trustee will promptly cure such default." 11 U.S.C. § 365 (b)(1)(A).

25.    The Landlord has agreed to accept the Transfer Payment in full and final satisfaction of all cure amounts relating to the assumption of the Facility Leases.  The Debtors do not believe that any cure amounts are owing relating to the assumption of the Parking Leases or the Sublease.

26.    Accordingly, the Debtors submit that the assumption and assignment to the Landlord of the Leases and the Sublease is in the best interest of the Debtors, their creditors and estates.  As described above, the assumption and assignment of the Leases and the Sublease immediately limits the losses that must be borne by the Debtors.

## Modification of the Parking Leases

27.    Section 365(f) of the Bankruptcy Code provides that ". . . notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease." 11 U.S.C. § 365(f). In anticipation of the assumption and assignment of the Parking Leases, the Debtors request that the Court approve the assignment of the Parking Leases over any anti-assignment provisions contained therein. In particular, the Debtors request that the Court excise the following terms of each of the Parking Leases:

- Hungarian Reformed Church of Carteret - Article VII - Lessee shall have the right to assign this lease subject to the approval of the Lessee, which approval shall not be unreasonably withheld. Lessor shall have the absolute right to withhold its consent if the proposed assignee's utilization of the property is not for the same purpose as that of Lessee; if it is for the same proposed use, Lessor cannot withhold consent.

- Borough of Carteret, 1984 Lease - NO ASSIGNMENT OR SUBLEASE. The tenant may not sublease the Property or assign this Lease without the Landlord's written permission.

- Borough of Carteret, 1986 Lease - 4th paragraph - The Tenant shall not sub-let the demised premises nor any portion thereof, nor shall this Lease be assigned by the Tenant without the prior written consent of the Landlord endorsed hereon, such consent not to be unreasonably withheld

The Debtors submit that the foregoing alterations of the Parking Leases are consistent with the case law in this Circuit. See In re Rickel Home Centers, Inc., 240 B.R. 826, 831-32 (Bankr. D. Del. 1998), *affirmed* 209 F.3d 291 (3d Cir. 2000) (the Bankruptcy Code generally favors the free assignability of contracts and leases as a means of maximizing a debtor's estate); see also In re Headquarters Dodge, Inc., 13 F.3d 674, 682 (3d Cir. 1994) (the Bankruptcy Code prevents contract terms from defeating a debtor's ability to realize the full value of its assets).

The requested modifications are limited to changes that are necessary to permit the assignment of the Parking Leases to the Landlord.

### Conclusion

28.     In sum, by permitting the Debtors to assume and assign the Leases and the Sublease, the Debtors will relieve their estates of a significant, long-term financial burden, thereby freeing additional moneys for the benefit of their estates and creditors. As a result, the Debtors have determined, in the exercise of their business judgment, that the assumption and assignment of the Leases and the Sublease is in the best interests of the Debtors' creditors and estates.

### Notice

29.     Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee, (v) counterparties to the Parking Leases, the Facility Lease and the Sublease, (vi) counsel to the Landlord and (vii) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

### No Prior Relief

30.     No previous application for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, (i) approving the assumption, sale and assignment of the Leases and the Subleases, (ii) approving the modifications to the Parking Leases and (iii) granting such other and further relief as is just and proper.

Dated:  June 17, 2002

KIRKLAND & ELLIS
James H.M. Sprayregen, P.C.
James W. Kapp III
Christian J. Lane
Roger J. Higgins
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession