# EXHIBIT A

## THE ASSUMPTION AND ASSIGNMENT AGREEMENT

# ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (this "Agreement") is made this 14th day of June, 2002, by and between W. R. GRACE & CO. – CONN., a Connecticut corporation having an address at 7500 Grace Drive, Columbia, Maryland 21044 ("Grace") and CARTERET VENTURE, a New Jersey partnership, having an address at c/o The Schultz Organization, 900 Route 9 North, Woodbridge, New Jersey 07095 ("Carteret Venture").

## W I T N E S S E T H:

WHEREAS, by Lease dated May 30, 1972, Carteret Interchange Industrial Park, predecessor in interest to Carteret Venture, as Landlord, leased to W. R. Grace & Co., predecessor in interest to Grace, as Tenant, those certain premises known as Buildings 1 and 2 located at 2 Germak Drive in Carteret, New Jersey, a short form of which Lease was recorded on November 1, 1972 in the Middlesex County Clerk's Office in Deed Book 2789 page 897; and

WHEREAS the said Lease was amended by First Amendment of Lease dated May 14, 1973, a Commencement of Term Agreement as to said Lease was executed on October 22, 1973 and recorded in Deed Book 2831 page 463, and said Lease was further amended by Second Amendment of Lease dated June 8, 1973 and recorded in Deed Book 2819 page 957, Third Amendment of Lease dated October 22, 1973 and recorded in Deed Book 2835 page 1063, and Third *(sic)* Amendment of Lease dated March 29, 1979 (the said Lease, as so amended, being hereinafter referred to as the "First Prime Lease"); and

WHEREAS, by Lease dated March 29, 1979, Carteret Venture, as Landlord, leased to Grace, as Tenant, those certain premises known as Buildings 3 and 4 located at 2 Germak Drive in Carteret, New Jersey; and

WHEREAS the said Lease was amended by First Amendment to Lease dated February 15, 1980 (the said Lease, as so amended, being hereinafter referred to as the "Second Prime Lease," the First Prime Lease and the Second Prime Lease being hereinafter collectively referred to as the "Prime Leases," and the premises leased to Grace pursuant to the Prime Leases being hereinafter collectively referred to as the "Premises"); and

WHEREAS, a Lease (the "Terminated Lease") dated May 14, 1973 between Carteret Venture, as Landlord, and Grace, as Tenant, as amended, was executed and a short form thereof recorded in Deed Book 2819 page 944, with subsequent amendments to said Lease recorded in Deed Book 2831 page 457, Deed Book 2819 page 950 and Deed Book 2831 page 442, which Terminated Lease was cancelled by the terms of the Second Prime Lease; and

WHEREAS Grace is also the tenant under the following three leases: (i) lease dated July 1, 1984 with the Borough of Carteret, for unimproved property in the vicinity of Germak Drive; (ii) lease dated October 31, 1986 with The Hungarian Reformed Church of Carteret, for a right of way on Germak Drive; and (iii) lease dated November 1, 1986 with the Borough of Carteret, for unimproved property (hereinafter collectively referred to as the "Land Leases"); and

WHEREAS, by Sublease dated July 11, 1997, Grace, as Sublandlord, subleased a portion of the Premises to Sea Jet Industries Incorporated ("Sea Jet"), as Subtenant; and

WHEREAS the said Sublease was assigned by Sea Jet to AMF Trucking & Warehousing, Inc. ("AMF Trucking") and then amended by Amendment to Sublease dated April 5, 2000, and guaranteed by Guaranty of Sublease dated April 5, 2002, and subsequently amended by Second Amendment to Sublease dated November 5, 2001 (the said Sublease, as so assigned and amended, and as so guaranteed, being hereinafter referred to as the "AMF Trucking Sublease"); and

WHEREAS, by Sublease dated June 5, 2001 (the "R & S Office Sublease"), Grace, as Sublandlord, subleased a portion of the Premises, on a month-to-month basis, to R & S Liquidating Company; and

WHEREAS Grace filed a voluntary petition for reorganization relief pursuant to Title 11 of the United States Code, 11 U.S.C. Sections 101 et seq., (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on April 2, 2001 (the "Filing Date"), and has operated its business as a debtor-in-possession (as defined in Section 1101 of the Bankruptcy Code), as authorized by Sections 1107 and 1108 of the Bankruptcy Code since the Filing Date; and

WHEREAS Grace desires to assign to Carteret Venture all of Grace's right, title and interest in and to the Prime Leases, the Land Leases, the AMF Trucking Sublease, and the Premises, and Carteret Venture desires to accept such assignment and assume the obligations of Grace thereunder, on the terms and conditions hereinafter set forth,

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged, and the mutual covenants herein contained, the parties hereto hereby agree as follows:

1. Assignment and Assumption.

1.1. <u>Assignment</u>. Subject to the terms and conditions of Section 7 of this Agreement, Grace hereby assigns, sets over and transfers unto Carteret Venture, to have and to hold from and after the Effective Date (as hereinafter defined), (i) all of the right, title and interest of Grace in, to and under the Prime Leases and the Land Leases and the leasehold estates created thereby, for the balance of the terms of the Prime Leases and the Land Leases, respectively, subject to the terms and conditions of the AMF Trucking Sublease, and (ii) all of the right, title and interest of Grace in, to and under the AMF Trucking Sublease.

1.2. <u>Assumption</u>. Subject to the terms and conditions of Section 7 of this Agreement, Carteret Venture hereby accepts such assignment and assumes the performance and observance of, and agrees to be bound by all of the terms, covenants, agreements, provisions and conditions of, the Prime Leases, the Land Leases and the AMF Trucking Sublease on Grace's part to be performed and observed for the period from and after the Effective Date.

1.3. <u>Termination of R & S Office Sublease</u>. The parties acknowledge and agree that Grace shall not assign, and Carteret Venture shall not assume, Grace's right, title and interest in, to and under the R & S Office Sublease. On or before the Effective Date, at Carteret Venture's option, Grace shall give notice to R & S Liquidating Company of the termination of the R & S Office Sublease, and shall thereafter take whatever steps are necessary, if any, to cause R & S Liquidating Company to vacate its premises.

1.4. <u>Additional Consideration</u>. As additional consideration for this assignment and assumption, Grace shall continue to pay all rental due and payable under the Prime Leases and the Land Leases, and all expenses necessary in order to meet its obligations under the Prime Leases (other than casualty insurance, see Section 3.3 hereof) and the Land Leases, as if they had not been assigned, for the period from the date hereof through October 31, 2002, and shall continue to be entitled to receive all rental payable under the AMF Trucking Sublease through October 31, 2002 and all rental payable under the R & S Office Sublease through the earlier to occur of October 31, 2002 or the date of termination thereof. Notwithstanding the foregoing, in the event Carteret Venture leases all or any portion of the premises formerly occupied by Gemini Sound Products Corp. (the "Vacant Space") for a term commencing prior to November 1, 2002, Carteret Venture shall advise Grace of such fact and of the amount of rental payable by its tenant, and Grace shall receive credit against the amount otherwise payable by it hereunder for the amount of rent to be received by Carteret Venture on account of such Vacant Space for any period prior to November 1, 2002.

1.5. <u>No Merger of Estates Under Prime Leases</u>. Notwithstanding the assignment of Grace's interests in the Prime Leases to Carteret Venture, neither of the Prime Leases nor the leasehold estates created

-3-

thereby shall merge with the fee title to any part of the Premises, and the leasehold estates and the fee simple estates shall always remain as separate and distinct estates for the balance of the term of each Prime Lease.

### 2. Prorations and Adjustments.

**2.1. Customary Prorations.** Grace and Carteret Venture shall make all normal and customary prorations under the Prime Leases, the Land Leases and the AMF Trucking Sublease, including, without limitation, rents, real estate taxes, common area maintenance charges, and utility charges (subject to Section 3.1 hereinbelow as to electricity consumption within the Vacant Space), such prorations to be made as of November 1, 2002.

**2.2. Security Deposits.** Grace shall, upon the Effective Date, transfer the $73,317 security deposit held by Grace under the AMF Trucking Sublease to Carteret Venture. Grace represents that the security deposit payable under the R & S Office Sublease was never paid by R & S Liquidating Company.

### 3. Surrender of Possession.

**3.1. Possession.** Carteret Venture shall be entitled to possession and occupancy of the Premises, subject to the AMF Trucking Sublease (and, possibly, to R & S Liquidating Company still being in possession in accordance with Section 1.3 hereof), and Grace shall surrender the Premises and deliver same, on the Effective Date. Notwithstanding the foregoing, Carteret Venture shall have the right to enter the Vacant Space on and after July 1, 2002 for purposes of preparing the same for occupancy by new tenants; provided, however, that (a) Carteret Venture shall pay for the cost of electricity consumed within the Vacant Space from and after July 1, 2002, which consumption shall be measurable by the separate meter to the Vacant Space; and (b) Carteret Venture shall indemnify and hold Grace harmless of, from and against any and all costs, claims, liabilities and expenses, including reasonable attorneys' fees, arising from (i) the death of or accident, injury, loss or damage caused to any person or entity, or to the property of any person or entity, as occurs in the process of or relating to construction or other acts or omissions of Carteret Venture, its agents, employees, tenants or contractors, and (ii) any mechanic's, materialman's or laborer's lien or similar liens or claims resulting from any construction or other activities of Carteret Venture, its agents, employees, tenants and contractors.

**3.2. Condition of Improvements.** On the Effective Date, Grace shall pay to Carteret Venture the sum of $182,000 on account of certain items at the Premises requiring repair or replacement. Upon Grace's payment of such sum, Grace shall be deemed to have satisfied its obligations under Article 9, Article 11 and Article 18 of each of the Prime Leases, and under any other provision of either Prime Lease relating to the condition of repair of the

improvements during the term thereof or at the time of surrender of the Premises at the end of the term.

3.3. <u>Insurance</u>. Notwithstanding the provisions of Section 1.4 hereinabove, Grace shall maintain in full force and effect its casualty insurance policy covering the Premises only until the Effective Date, at which time Carteret Venture shall assume responsibility for carrying its own casualty insurance covering the Premises. Grace and Carteret Venture shall cooperate in coordinating the pass through of the cost of the insurance premiums to AMF Trucking so that AMF Trucking shall be billed for its appropriate pro rata share pursuant to the terms of the AMF Trucking Sublease.

4. <u>Indemnification and Release.</u>

4.1. <u>Grace Indemnification to Carteret Venture</u>. Grace hereby unconditionally, absolutely and irrevocably agrees to indemnify and hold Carteret Venture harmless of, from and against any and all costs, claims, obligations, damages, penalties, causes of action, losses, injuries, liabilities and expenses, including, without limitation, reasonable attorneys' fees, arising by reason of or in connection with Grace's failure to perform its obligations under the Prime Leases (subject to Section 3.2 hereinabove), the Land Leases or the AMF Trucking Sublease arising or accruing prior to the Effective Date.

4.2. <u>Carteret Venture Indemnification to Grace</u>. Carteret Venture hereby unconditionally, absolutely and irrevocably agrees to indemnify and hold Grace harmless of, from and against any and all costs, claims, obligations, damages, penalties, causes of action, losses, injuries, liabilities and expenses, including, without limitation, reasonable attorneys' fees, arising by reason of or in connection with Carteret Venture's failure to perform its obligations under the Prime Leases, the Land Leases or the AMF Trucking Sublease arising or accruing on and after the Effective Date.

5. <u>Grace's Deliveries</u>. Grace hereby agrees to use its good faith diligent efforts to obtain the following items, and deliver them to Carteret Venture prior to the Bankruptcy Court Approval Date:

5.1. <u>AMF Trucking Estoppel Certificate</u>. An estoppel certificate from AMF Trucking in form and substance satisfactory to Carteret Venture. In the event Grace is unsuccessful in obtaining this estoppel certificate prior to the Bankruptcy Court Approval Date, then Grace shall deliver, on or before the Effective Date, its own certification to Carteret Venture, covering the same matters.

5.2. <u>Landlords' Consents to Assignment of Land Leases</u>. The consent of the landlord under each of the Land Leases to the assignment by Grace of its interest under each such Land Lease to Carteret Venture.

In the event Grace is unsuccessful in obtaining such consents prior to the Bankruptcy Court Approval Date, then (i) Grace shall not be deemed to have assigned its rights under any such Land Lease until it obtains the necessary consent; and (ii) Grace shall continue to use all diligent efforts to obtain such consent.

6. Grace's Representations. Grace hereby represents to Carteret Venture as to the following matters:

6.1. Land Leases – Full Force and Effect. Each of the Land Leases is in full force and effect, and has not been amended or modified;

6.2. Land Leases – No Outstanding Defaults. There are no outstanding notices of default under any of the Land Leases and, to the best of Grace's knowledge, no condition exists which might give rise to a default under any of the Land Leases on the part of either any landlord thereunder or Grace;

6.3. Grace's Entire Interest. To the best of Grace's knowledge, Grace has no interest in any lease, license or any other agreement creating a property right in Grace in connection with the Premises or any other property adjoining or adjacent to the Premises, other than the Prime Leases, the Land Leases, the AMF Trucking Sublease, the R & S Office Sublease, and any other document which may be recorded in the applicable land records, it being the intent of both Grace and Carteret Venture that, by consummating the transactions contemplated herein, Grace shall assign to Carteret Venture all of its right, title and interest in connection with property in Carteret, New Jersey, other than its rights in connection with the R & S Office Sublease, which shall be terminated as aforesaid;

6.4. No Prior Assignments. Except as contemplated hereby, Grace has not assigned any portion of its right, title and interest in and to the Prime Leases, the Land Leases, the AMF Trucking Sublease or the R & S Office Sublease; and

6.5. No Other Subleases. There are no subleases or occupancy agreements in effect with respect to the Premises other than the AMF Trucking Sublease and the R & S Office Sublease.

7. Bankruptcy Court Approval. This Agreement shall not become effective unless approved by the Bankruptcy Court. Grace shall use its good faith diligent efforts to pursue Bankruptcy Court approval of this Agreement and the transaction which is the subject hereof. As used in the provisions of this Agreement, the "Bankruptcy Court Approval Date" shall be the date on which the Bankruptcy Court enters an order authorizing and approving this Agreement and the transaction which is the subject hereof, and the "Effective Date" shall be the

date on which the appeal period following the Bankruptcy Court Approval Date has expired, during which either no appeal has been filed, or there has been no entry of any stay pending appeal prohibiting or preventing Grace from proceeding herewith. Carteret Venture shall have the right to terminate this Agreement, by notice to Grace, if the Effective Date shall not have occurred on or before August 1, 2002.

### 8. Miscellaneous.

**8.1. No Broker.** Grace and Carteret Venture each warrant and represent to the other that no broker, agent or finder has been retained by it in connection with this Agreement or any transaction contemplated hereby, and each agrees to indemnify and hold the other harmless from all losses or claims based on or arising out of any assertion by any such party that it is entitled to any fee or compensation due to an agreement made by such party and the indemnitor in violation of the foregoing.

**8.2. Further Assurances.** The parties hereby agree to execute such further documents and take such further action as may be reasonable, necessary or appropriate to effectuate the transactions contemplated by this Agreement and to otherwise provide the other party hereto with the intended benefits of this Agreement. If the Prime Leases (or any memoranda or short form thereof) have been recorded, then Grace agrees, promptly after Carteret Venture's request at any time after the Effective Date, to duly execute and have notarized appropriate assignments of the recorded documents and, in the case of the Terminated Lease, an appropriate discharge of the same.

**8.3. Counterparts.** This Agreement may be executed in two counterparts, each of which shall be deemed an original, but both of which together shall constitute one and the same instrument.

**8.4. Time of the Essence.** Time is of the essence with respect to all provisions of this Agreement.

**8.5. Entire Agreement.** This Agreement constitutes the entire Agreement between the parties hereto with respect to the subject matter hereof, and supersedes any and all written or oral agreements with respect hereto. This Agreement may be amended or modified only by instrument signed by both of the parties hereto.

**8.6. Rules of Construction.** Grace and Carteret Venture have each been represented by legal counsel in the preparation of this Agreement, and the rule of construction that documents be construed against the drafter shall not apply to this Agreement.

8.7. <u>Governing Law</u>. The parties agree that the Bankruptcy Court has exclusive jurisdiction to enforce the provisions of this Agreement and to decide any claims or disputes which may arise or result from or be connected with this Agreement, any breach or default hereunder, or the transaction contemplated thereby. At such time as Grace has completed its reorganization pursuant to the Bankruptcy Code, this Agreement shall be governed by the laws of the State of New Jersey and shall no longer be under the jurisdiction of the Bankruptcy Court.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as a sealed instrument as of the day and year first above written.

W. R. GRACE & CO. – CONN.

By: *[signature]*
Name: W. Brian McGowan
Title: Senior Vice President


CARTERET VENTURE

By: _____
Name:
Title:

- 8 -

8.7. <u>Governing Law</u>. The parties agree that the Bankruptcy Court has exclusive jurisdiction to enforce the provisions of this Agreement and to decide any claims or disputes which may arise or result from or be connected with this Agreement, any breach or default hereunder, or the transaction contemplated thereby. At such time as Grace has completed its reorganization pursuant to the Bankruptcy Code, this Agreement shall be governed by the laws of the State of New Jersey and shall no longer be under the jurisdiction of the Bankruptcy Court.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as a sealed instrument as of the day and year first above written.

W. R. GRACE & CO. – CONN.

By: _____
Name:
Title:

CARTERET VENTURE

By: _____
Name: HARVEY Scho ff
Title: MEMBER

- 8 -