## EXHIBIT B

### ANALYSIS OF DISPOSITION SCENARIOS

| Cash In/(Out) | Status Quo | New Subtenant | Reject Leases | Assign Leases |
|---|---|---|---|---|
| Operating Cash Flow | (1,771,000) | (526,000) | (609,000) | (152,000) |
| Deferred Maintenance | (350,000) | (350,000) | (350,000) | (182,000) |
| Office Demolition | (300,000) | (300,000) | (300,000) | -- |
| Mezzanine Demolition | (250,000) | (250,000) | (250,000) | -- |
| AMF Damage Claim | -- | -- | (833,000) | -- |
| Total Cash Flow | (2,671,000) | (1,426,000) | (2,342,000) | (334,000) |

1.      Status Quo. In this scenario, Grace retains the Leases and AMF performs on the Sublease for the remainder of the term. The negative cash flow reflects the total short fall of rent paid by AMF to Grace versus the rent payable by Grace under the Leases. This scenario does not account for the risk that AMF will default on the Sublease or for the risk of additional extraordinary repair obligations.

2.      New Subtenant. In this scenario, Grace executes a new sublease with a potentially interested subtenant. A substantial portion of the negative cash flow in this scenario is the result of upfront costs related to subleasing the Vacant Space, including tenant improvements and brokerage commissions. Approximately $110,000 would be payable upfront, with $325,000 of the negative cash flow accruing in the first twelve months. This scenario does not account for the risk that AMF or the new subtenant will default on the Sublease or for the risk of additional extraordinary repair obligations.

3.      Reject Leases. In this scenario, Grace rejects the Leases. The negative cash flow is actually the amount of the Landlord's claim for unpaid rent under 502(b)(6). The AMF Damage Claim is calculated based on the rent under the Sublease of $2.12 per square foot and a market rental rate of $3.50 per square foot. The AMF Damage Claim does not account for any claim related to relocation expenses or the interruption of AMF's business, which could increase AMF's claim substantially.

4.      Assign Leases. In this scenario, the Motion is approved and all of Grace's obligations under the Leases and Subleases are assumed by the Landlord in exchange for the Transfer Payment and rent through October 31, 2002.