Hearing Date: July 22, 2002 at 10:00 a.m.<br>
Objection Deadline: July 15, 2002 at 4:00 p.m.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | |
| W.R. GRACE & CO., et al., | Chapter 11 |
| Debtors, | Case No.: 01-01139 (JJF)<br>JOINTLY ADMINISTERED |

## NOTICE OF HEARING

PLEASE TAKE NOTICE that a hearing in connection with the Motion of Timothy Kane for Relief from the Automatic Stay (the "Motion") will be heard on July 22, 2002 at 10:00 a.m. EST, in the United States Bankruptcy Court, District of Delaware, 824 N. Market Street, Wilmington, Delaware.

PLEASE TAKE FURTHER NOTICE objections to the Motion must be filed with the Bankruptcy Court and served upon Neal J. Levitsky, Esquire, Agostini, Levitsky, Isaacs & Kulesza, 824 N. Market Street, Suite 810, P.O. Box 2323, Wilmington, Delaware, 19899-2323 on/or before July 15, 2002 by 4:00 p.m.

PLEASE TAKE FURTHER NOTICE, that if no objections to the Motion are timely filed and received in accordance with the above-procedures, an Order may be entered granting the relief requested in the Motion without further notice or a hearing. Only objections made in writing and timely filed and received will be considered by the Court at such hearing.

                                  AGOSTINI, LEVITSKY, ISAACS & KULESZA

                                  /s/ Neal J. Levitsky
                                  _____
                                  NEAL J. LEVITSKY, ~~ESQUIRE~~ (#2092)
                                  L. JASON CORNELL, ESQUIRE (#3821)
                                  824 N. Market Street, Suite 810
                                  P.O. Box 2323
                                  Wilmington, DE 19899-2323
                                  Attorneys for Movant, Timothy Kane

Dated: 6/18/2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No. 01-01139(JJF) |
| | ) | Jointly Administered) |
| Debtors. | ) | |
| TIMOTHY KANE, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Motion No.: A-01- |
| | ) | |
| W.R. GRACE & CO., et at., | ) | |
| | ) | |
| Respondent | ) | |

## MOTION TO LIFT AUTOMATIC STAY
## FOR CAUSE

1  Movant, TIMOTHY KANE, (hereinafter KANE), moves this Court for relief from the from the Automatic Stay ordered by this Court pursuant to §362 (a) of the Bankruptcy Code, and in support thereof, states as follows:

## UNDISPUTED FACTS

2.  On July 19, 1999, KANE, a construction worker, was injured while performing scaffold erection at the Grand Floridian Resort Hotel in Orlando, Florida.  KANE's injuries occurred when he slipped and fell on a portion of the roof of the Grand Floridian which had been covered with a roofing underlayment manufactured by Debtor, W.R. GRACE & CO. As a result of this slip and fall, KANE fell from the roof of the resort, sustaining serious personal injuries.

3. Thereafter, KANE filed a state court action for personal injuries in Florida's Ninth

Judicial Circuit against Debtor and several other defendants. KANE's claims against Debtor sound in negligence and strict products liability under Florida Law. A true and correct copy of KANE's Amended Complaint for Damages in this state court action is attached hereto as "Exhibit A."

4. After KANE notified Debtor of his intent to pursue an action for personal injuries against Debtor, KANE received a response from Debtor's liability insurer, RSKCo. This correspondence indicated that Debtor had liability insurance coverage applicable to KANE's claims with coverage limits of $10 million per occurrence, $15 million in the aggregate.[1] A true and correct copy of RSKCO's correspondence is attached hereto as "Exhibit B."

5. As a result of the imposition of the automatic stay on KANE's state court action, KANE has been prevented from receiving the actual policy of insurance issued by RSKCo to Debtor, nor has he been permitted conduct further discovery into the existence of further liability insurance over and above the $10 million disclosed by Debtor, which may also be applicable to his claim.

6. This Court has previously entered an Order lifting the stay for the sole purpose of allowing KANE to take four depositions of Debtor's employees to discover whether there was any merit to KANE's strict liability or negligence theories against Debtor. A true and correct copy of the Court's Order With Respect to Timothy Kane's Motion For Relief From Automatic Stay is attached hereto as "Exhibit C."

---

[1] Further, no policy or coverage defenses were disclosed which would somehow make this liability insurance inapplicable to KANE's claims.

7. At the hearing on the motion, counsel for KANE mentioned the $10 million in insurance coverage available to Debtor for KANE's claim. In response, the Court suggested to KANE that if he thought he had grounds to lift the stay based on the existence of this insurance, he should file a Proof of Claim in the case and then move to lift the stay for cause. KANE filed his proof of claim on February 28, 2002.

8. Further, the aforementioned depositions did, indeed, indicate that KANE's strict liability and negligence claims against Debtor have merit. In fact, Debtor had admitted in these depositions that their product becomes extremely slippery when wet, and had re-engineered the slip resistance capabilities of the product on several occasions. These admissions certainly create a factual question as to whether Debtor provided sufficient warnings of the slipperiness of its product, whether it exercised reasonable care in the design of its product, and whether its product was defective as a result of insufficient slip resistance or a failure to provide sufficient warnings.

9. Further, this deposition testimony also indicated that Debtor's previous discovery responses in KANE's state court action had been incomplete. Many more documents relevant to the design and testing of the Debtor's product existed, but had not been provided to KANE in his initial requests. As a result, additional discovery is needed from Debtor on these issues.

**I.
The liability insurance policy
issued by RSKCo to Debtor is
not property of the debtor's estate**

10. The law is well established that the determination of whether an insurance policy issued to the Debtor will constitute "property of the estate" as contemplated by §362 (a) must be analyzed in light of the facts of each case. *Sfuzzi, Inc.*, 191 B.R. 664, 668 (Bankr. N.D.Tx. 1996)

11  Further, the overriding question when determining whether insurance proceeds are "property of the estate" is whether the Debtor would have a right to receive and keep those insurance proceeds when the insurer paid on the claim. When a payment by an insurer cannot possibly inure to the Debtors pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate. *Matter of Edgeworth*, 993 F.2d 51 55 (5th Cir. 1993). ***A Debtor will not have a cognizable interests in the proceeds of the typical liability policy because the proceeds will normally be payable only for the benefit of those harmed by the Debtor under the terms of the insurance contract, such as KANE in the present case.*** *Edgeworth*, 993 F.2d at 55 (emphasis added).

12  In the present case, the insurance `policy provided by RSKCo to Debtor is solely for *liability* insurance. Further, it has been represented through RSKCo's May 24, 2000 correspondence to KANE that this liability insurance contract is payable, should liability be established on the part of Debtor, for the benefit of KANE, who has been harmed by the Debtor under the terms of the contract between RSKCo and Debtor. Thus, the liability insurance proceeds of RSKCO's policy here are not "property of the estate."

II.
**KANE agrees to limit any recovery on
his claims against Debtor to the extent of
the liability insurance proceeds  under RSKCO's**

**policy with Debtor**

13. Although not specifically alleged in his Amended Complaint for Damages, KANE's injuries resulting from the alleged acts/omissions of the Debtor include partial paralysis (paraplegia). As a result of the aforementioned fall from the roof of the resort, KANE became paralyzed from the waste down, lost bladder and bowel function and the permanent loss of his earning capacity.

14. Although KANE'S damages are obviously substantial, nevertheless, it is highly unlikely that a jury's verdict or judgment rendered in KANE's state court action against the Debtor would exceed the $10 million liability insurance coverage limits.

15. Regardless of any verdict rendered in the state court action, by the filing of this Motion, KANE hereby agrees to limit the extent of any recovery he may make against Debtor to the $10 million liability insurance coverage limits of RSKCO's policy of insurance with Debtor. In fact, among the other relief requested herein, Kane respectfully requests that this Court specifically limit any judgment entered in favor of KANE and against Debtor in the state court action to the extent of the liability insurance coverage limits available to Debtor for KANE's claims.

### III.
### All equitable considerations favor the lifting of the automatic stay for cause as it applies to KANE's claims against the Debtor

16. Although KANE has not received a copy of the actual policy of liability insurance issued by RSKCo to Debtor, RSKCo's May 24, 2000 correspondence indicates that no policy or coverage defenses were being asserted by RSKCo against Debtor. As

a result, there is no potential that if the stay is lifted, KANE's claim could somehow reach the assets of Debtor's estate because of a denial of coverage by RSKCo

17. Further, the policy of liability insurance between RSKCo and Debtor provides that RSKCo pay the costs of defense of KANE's state court action  In fact, upon information and belief, RSKCo has hired defense counsel for Debtor in KANE's state court action and is paying for Debtor's defense in its entirety. Thus, KANE's claim will not diminish the assets of the Debtor's estate by forcing Debtor to incur costs to defend itself against KANE because RSKCo is bearing this cost for Debtor.

18. Moreover, the recovery being sought by KANE herein arises out of the alleged defective nature of a roofing underlayment manufactured by Debtor. Based upon the discovery responses of Debtor in KANE's state court action, there is no other current claim existing against Debtor alleging defectiveness of the same product, nor injuries arising under circumstances substantially similar to those involved in KANE's alleged injuries.

19. Thus, no argument can be made by Debtor that payment of KANE's claim by the liability insurance carrier here would somehow "open the floodgates" to other similar claims, thereby reducing the extent of insurance proceeds available to Debtor and expose the assets of Debtor's estate to such claims.

20. KANE's claim is therefore distinguishable from those arising under a "mass tort" situation such as that in which Debtor is currently involved with its asbestos claims. In *Sfuzzi*, the Bankruptcy Court thought this issue to be critical to its decision to lift the automatic stay as it applied to the movant's claims in that case. *Sfuzzi, Inc.*, 191 B.R. 664, 668 (Bankr. N.D.Tx. 1996); *Edgeworth*, 993 F.2d at 56 (5th Cir. 1993). It should be of like import to the Court's decision here.

## CONCLUSION

21  In summary, no possibility exists that the assets of the Debtor's estate could be reached or effected in anyway by the claims of KANE since:

> (1) Debtor has $10 million in liability insurance coverage available to satisfy any settlement, verdict or judgment rendered in Kane's claims;
>
> (2) no policy or coverage defenses have been asserted under this liability insurance policy which could expose the assets of Debtor's estate to Kane's claims;
>
> (3) KANE has agreed to limit any recovery on his claims to the extent of the liability insurance proceeds thereby eliminating any possibility of the liability insurance proceeds being exhausted;
>
> (4) Kane's claim is not a "mass tort" claim, where lifting the stay applicable to it might "open the flood gates" to other similar claims.

WHEREFORE, based upon the foregoing, KANE respectfully requests that this Court lift the Automatic Stay entered by this Court for cause, limit the extent of any recovery by KANE against Debtor to the limit of the liability insurance coverage available to Debtor for KANE's claims, and respectfully requests such other and further relief as this Court deems just and proper.

Respectfully Submitted,

AGOSTINI, LEVITSKY, ISAACS & KULESZA

_____
NEAL J. LEVITSKY, ESQ. (#2092)
824 N. Market Street, Ste. 810
P.O. Box 2323
Wilmington, DE 19899
(302) 654-7444, ext. 3
Attorneys for Movant,
Timothy Kane

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that one copy of the attached MOTION OF TIMOTHY KANE FOR RELIEF FROM THE AUTOMATIC STAY was served this 18th day of June, 2002, upon the following individuals in the manner designated below:

James H. M. Sprayregen, Esquire
James A. Stempel, Esquire
Matthew N. Kleiman, Esquire
Samuel A. Schwartz, Esquire
Kirkland & Ellis
200 E. Randolph Drive
Chicago, IL 60601

*(By First Class Mail Postage Prepaid)*

Laura Davis Jones, Esquire
Pachulski, Stang, Ziehl, Young & Jones
919 N. Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

*(By First Class Mail Postage Prapaid)*

William Kevin Harrington, Esquire
Michael Lastowski, Esquire
Duane, Morris & Heckscher, LLP
1100 N. Market Street, Suite 1200
Wilmington, DE 19801

*(By First Class Mail Postage Prepaid)*

Office of the United States Trustee
844 King Street, Suite 2313
Lockbox 35
Wilmington, DE 19801-3519

*(By First Class Mail Postage Prepaid)*

_____
NEAL J. LEVITSKY, ESQUIRE