PROJECT: DISNEY'S GRAND FLORIDIAN RESORT AND SPA-ROOF REPLACEMENT

CONTRACT NUMBER: 99DE-0904

PROJECT NUMBER: 5E-624-70-12-KGJA07CA

EXECUTED MAY 3 1999 BY:

## LUMP SUM AGREEMENT

THIS AGREEMENT, made effective as of April 15, 1999, by and between Walt Disney World Co. (herein referred to as the "Owner"), whose mailing address is P.O. Box 10000, Lake Buena Vista, FL 32830-1000, Attention: Contract Services, and McENANY ROOFING (herein referred to as the "Contractor"), whose mailing address is 8803 Industrial Drive, Tampa, FL 33637.

### WITNESSETH

In consideration of the mutual covenants hereinafter set forth, the parties hereto agree as follows:

### Article 1
### DEFINITIONS: THE CONTRACT DOCUMENTS

1.1. The capitalized terms used herein shall have the meanings set forth in the General Conditions of the Contract for Construction (herein referred to as the "General Conditions") unless a specific definition therefor is provided herein. Unless otherwise specified, references herein to numbered articles and paragraphs are to those in this Agreement. This Agreement shall be referred to throughout the Contract Documents as the "Agreement".

1.2. The Contract Documents consist of this Agreement, the Conditions of the Contract (General, Special, Supplementary and other Conditions), the Drawings, the Specifications, all Addenda (except portions thereof relating purely to any of the bidding forms or bidding procedures), all Modifications and all other documents enumerated on the attached "List of Contract Documents". Such documents form the Contract and all are as fully a part thereof as if attached to this agreement or repeated herein.

### Article 2
### STATEMENT OF THE WORK

The Contractor shall provide and pay for all materials, tools, equipment, labor and professional and nonprofessional services, and shall perform all other acts and supply all other things necessary to fully and properly perform and complete the following:

> Provide replacement of the roofs at Lodge Buildings 5, 6, 7, 8, and 9 (identified as Sago Cay, Conch Key, Sugar Loaf Key, Big Pine Key and Boca Chica Key) at Disney's Grand Floridian Resort And Spa in accordance with the Contract Documents. The scope of the Contractor's Work shall include the removal of existing and installation of new shingles, underlayment, counterflashing, edge and rake metal, plywood sheathing, foam insulation, metal deck coating and all other Work as detailed within Specification Section 01010, Summary of Work, and all other Contract Documents.

> Owner may, at its option, elect to add to Contractor's scope of work via change order, the replacement of the roofs of Building 4 (Main Building), Monorail station and the ancillary building consisting of the Boat Dock, Narcoossee's restaurant, Pool Building and Summer House. In the event Owner elects to have this additional Work performed, Contractor shall perform the Work in accordance with the Contract Documents for the lump sum amount of $3,303,405. As per mutual understanding between Owner, Contractor and Contractor's Surety, coverage under Performance and Payment Bonds for this additional Work shall be subject to the consent of the Surety. This in no way however, relieves the Contractor from its responsibility to provide Performance and

WDW-1
003001


RECEIVED MAY 17 1999

Exhibit A

BY:__

Payment Bonds at no increase in cost to the Owner for this portion of the Work in the event Owner elects to award this Work to the Contractor.

In the event Owner elects to replace areas of metal roof decking and deteriorated plywood, Contractor shall furnish and install new materials in accordance with the following unit prices. The unit prices include all labor, material, equipment and all other things necessary to fully and properly replace the damaged and deteriorated areas.

| | |
|---|---|
| Metal Roof Decking: | $18.00 per square foot |
| 5/8" Thick Pressure Treated Plywood: | $ 4.95 per square foot |

The following listed documents are applicable to the foregoing work:

A. Drawings: Refer to Attachment A, List of Drawings
B. Specifications:
   - EPCOT Building Codes, latest edition, and all other applicable codes and regulations
   - Design Standard for the Attachment of Overhead Objects, Rev. 1, dated 1/23/95, 19 pages
   - Typical Fence Detail Types I, II, III, and IV, dated 9/16/92 (4 pages)
   - Section 01010   Summary of Work, 28 pages, dated February 25, 1999
   - Section 01018   Owner Furnished Products, 3 pages, dated February 25, 1999
   - Section 01041   Project Coordination, 4 pages, dated February 25, 1999
   - Section 01045   Cutting and Patching, 3 pages, dated February 25, 1999
   - Section 01061   Applicable Building Codes, 1 page, dated February 25, 1999
   - Section 01070   Abbreviations, Definitions and Standards, 6 pages, dated February 25, 1999
   - Section 01202   Progress Meetings, 5 pages, dated February 25, 1999
   - Section 01310   Construction Schedule, 9 pages, dated February 25, 1999
   - Section 01315   Contract Time, Sequencing and Timing of Work, 2 pages, dated February 25, 1999
   - Section 01340   Shop Drawings, Product Data, and Samples, 7 pages, dated February 25, 1999
   - Section 01370   Schedule of Values, 3 pages, dated February 25, 1999
   - Section 01400   Quality Control, 6 pages, dated February 25, 1999
   - Section 01410   Testing Laboratory Services, 2 pages, dated February 25, 1999
   - Section 01500   Temporary Construction Facilities, 4 pages, dated February 25, 1999
   - Section 01568   Erosion Control, 4 pages, dated February 25, 1999
   - Section 01630   Substitutions and Product Options, 2 pages, dated February 25, 1999
   - Section 01640   Product Handling and Protection, 1 page, dated February 25, 1999
   - Section 01700   Project Closeout, 5 pages, dated February 25, 1999
   - Section 01710   Cleaning, 3 pages, dated February 25, 1999
   - Section 01720   Project Record Documents, 3 pages, dated February 25, 1999
C. Special Contract Conditions, 3 pages dated February 25, 1999
D. General Conditions of the Contract for Construction, pages 1 through 19, February 1998, ed.
E. Contractor's Guarantee, 1 page
F. Performance Bond, 1 page
G. Payment Bond, 1 page
H. Change Order form June, 1990, ed.
I. Close-out Change Order form June, 1990, ed.
J. Addendum No. 1, Disney's Grand Floridian Beach Resort & Spa Construction Packages No. 2, 3, & 4, Roof Replacement, 3 pages, dated March 17, 1999.
K. Addendum No. 2, Disney's Grand Floridian Beach Resort & Spa Construction Packages No. 2, 3, & 4, Roof Replacement, 4 pages, dated March 19, 1999.

The Contractor shall further provide and pay for all related facilities described in any of the Contract Documents, including all work expressly specified therein and such additional work as may be reasonably inferred therefrom, saving and excepting only such items of work as are specifically stated in the Contract Documents not to be the obligation of the Contractor. The totality of the obligations imposed upon the Contractor by this Article and by all other provisions of the Contract Documents, as well as the structures to be built and the labor to be performed, is herein referred to as the "Work".

### Article 3
### OWNER'S REPRESENTATIVE

The Owner's authorized representative (herein referred to as the "Owner's Representative") shall be Facility Asset management whose mailing address is Post Office Box 10000, Lake Buena Vista, Florida 32830-1000, ATTN: Steve Coole provided, however, that the Owner may, without liability to the Contractor, unilaterally amend this Article from time to time by designating a different person or organization to act as its representative and so advising the Contractor in writing, at which time the person or organization so designated shall be the Owner's Representative for purposes of this Contract.

### Article 4
### THE ARCHITECT/ENGINEER

The Architect/Engineer for the Project (herein referred to as the "A/E") is WDW Architecture and Facilities Engineering whose mailing address is P.O. Box 10000, Lake Buena Vista, FL 32830-1000.

### Article 5
### TIME OF COMMENCEMENT AND COMPLETION

5.1.    The Contractor shall commence the Work promptly upon receipt of written notice to proceed from the Owner and shall complete all work on or before **August 17, 2000** (such period of time is herein referred to as the "Contract Time") and in accordance with such interim milestone dates (herein referred to as the "Milestones") as may be specified in the Contract Documents. The Contract Time and any such Milestones are of the essence of the Contract.

5.2.    If any work is performed by the Contractor prior to the execution of this Agreement based on receipt of written notice to proceed, all such Work performed shall be in accordance with and governed by the Contract Documents.

5.3.    The Contractor acknowledges that the Owner has made no warranties to the Contractor, expressed or implied, that the Contractor will be able to follow a normal, orderly sequence in the performance of the Work or that there will be no delays in, or interference with, the Work.

### Article 6
### CONTRACT SUM

6.1.    Provided that the Contractor shall strictly and completely perform all of its obligations under the Contract Documents, and subject only to additions and deductions by Change Order or as otherwise provided in the General Conditions, the Owner shall pay to the Contractor, in current funds and at the times and in the installments hereinafter specified, the sum of **Three Million Six Hundred Thirty Eight Thousand Forty Five Dollars ($3,638,045.00)** (herein referred to as the "Contract Sum") to cover the Contractor's profit and general overhead and all costs and expenses of any nature whatsoever (including, without limitation, taxes, labor and materials), foreseen or unforeseen, and any increases in said costs and expenses, incurred by the Contractor in connection with the performance of the Work, all of which costs and expenses shall be borne solely by the Contractor.

6.2.        Also included within the Contract Sum is Ten Dollars ($10.00) to be paid by the Owner to the Contractor as the specific consideration for those provisions contained in the Contract Documents which provide for indemnity and/or guarantee among the Owner, the Owner's Representative, the A/E, their respective parent companies, the subsidiary, related and affiliated companies of each, as well as the officers, directors, agents and employees of each, the Contractor, any Subcontractor, Sub-subcontractor, or any combination of the foregoing, whereby any such person is granted indemnification from liability for damages to persons or property caused in whole or in part by any act, omission or default of any of the above named persons arising from the Contract or its performance. The said specific consideration for such indemnification is paid to the Contractor by the Owner on behalf of the Owner, the Owner's Representative, the A/E, their respective parent companies, the subsidiary, related and affiliated companies of each, and the officers, directors, agents and employees of each, and is allocated to, and shall be deemed to have been paid out of, the first installment of the Contract Sum payable hereunder.

Article 7
APPLICATIONS FOR PAYMENT

The Contractor shall, on the twenty-fifth (25th) day of each calendar month (herein referred to as the "Payment Application Date"), deliver to the Owner an Application for Payment in accordance with the provisions of Article 9 of the General Conditions. Before submitting the first Application for Payment, Contractor shall submit (and resubmit until approval is obtained) to the Owner's Representative for approval the "Schedule of Values", generally following the Uniform Construction Index (CSI) cost analysis format but further broken down by facility, labor and material, all as required by the Owner's Representative. Each item in the "Schedule of Values" shall only include its proper share of overhead and profit. The Schedule of Values, when approved by the Owner's Representative, shall be used as a basis for the Contractor's Application for Payment.

Article 8
PROGRESS PAYMENTS AND FINAL PAYMENT OF THE CONTRACT SUM

8.1.        Based on the Contractor's Application for Payment, the Schedule of Values submitted by the Contractor and approved by the Owner, and the approval of the Application for Payment issued by the Owner pursuant to Article 9 of the General Conditions, the Owner shall make monthly payments to the Contractor on account of the Contract Sum. Such monthly payments shall be made on or before the fifteenth (15th) day of each calendar month or the twentieth (20th) day after receipt by the Owner of the Contractor's Application for Payment, of such documentation, in proper form, to substantiate the amount owed and of such other documentation as the Owner may require pursuant to Article 9 of the General Conditions, whichever is later; provided, however, that the Owner shall have no obligation to make payment as aforesaid if it has withheld approval thereof as permitted under Subparagraph 9.3.1. of the General Conditions or if the Contractor has not submitted to the Owner with its Application for Payment all required documentation. Each such monthly payment shall be in an amount equal to ninety percent (90%) of the net amount allowed the Contractor for labor, materials and equipment incorporated or used in the Work (or suitably stored at the Job Site if the Owner has agreed in advance to pay for such stored materials and equipment) through the Payment Application Date, as indicated in the Owner's approval of the Application for Payment, after deducting any sums withheld by the Owner pursuant to the Contract Documents and the aggregate of all previous payments to the Contractor on account of the Contract Sum. Upon Substantial Completion of the Work, as determined by the Owner, the Owner shall pay to the Contractor a sum sufficient to increase the aggregate payments theretofore made to the Contractor on account of the Contract Sum to ninety percent (90%) of the Contract Sum, less such retainage as the Owner shall determine is necessary for all incomplete Work, unsettled claims or other matters for which the Owner is permitted to withhold under the General Conditions.

8.2.        Final payment, constituting the entire unpaid balance of the Contract Sum, shall be paid by the Owner to the Contractor within fourteen (14) days after completion of those items set forth in the Punch List, including, without limitation, approval by the Owner's Representative of the final Application for Payment, and execution by the Contractor of the Close-out Change Order, the form of which is attached hereto as Exhibit I, in accordance with the General Conditions; provided, however, that final payment shall in no event be due unless and until the Contractor shall have complied with all provisions of the Contract Documents, including those contained in Subparagraph 9.4.2. of the General Conditions.

Article 9
CONTRACTOR'S REPRESENTATIONS, WARRANTIES AND COVENANTS

9.1 The Contractor hereby represents and warrants to the Owner that:

(a) it is duly licensed to observe and perform the terms, covenants, conditions and other provisions on its part to be observed or performed hereunder;

(b) it is experienced and skilled in the construction and work of the type described in, or required by, the Contract Documents;

(c) all equipment and materials used in connection with the Work shall be new (except if otherwise required by the Specifications) and the equipment, the materials and the Work shall be of the best quality, free from faults and defects and shall strictly conform to the Contract Documents; and

(d) it has, by careful examination satisfied itself as to: (i) the nature, location and character of the Job Site including, without limitation, the surface and subsurface conditions of the land and all structures and obstructions thereon, both natural and manmade, surface water conditions of the Job Site and the surrounding area and, to the extent pertinent to the Work, all other conditions; (ii) the nature, location and character of the general area in which the Job Site is located including, without limitation, its climatic conditions, the availability and cost of labor and the availability and cost of materials, tools and equipment; (iii) the quality and quantity of all materials, supplies, tools, equipment, labor and professional services necessary to complete the Work in the manner required by the Contract Documents; and (iv) all other matters or things which could in any manner affect the performance of the Work. Without limitation on the foregoing, the Contractor recognizes the physical and operational restrictions on carrying on of the Work in or about the Project.

9.2. The Contractor accepts the relationship of trust and confidence established by this Agreement between it and the Owner. It covenants with the Owner that it shall: furnish its best skill and judgment and cooperate with the Owner in furthering the interests of the Owner; furnish efficient business administration and superintendence and an adequate supply of workmen, equipment, tools and materials at all times; and perform the work in the best and soundest way and in the most expeditious and economical manner consistent with the best interests of the Owner.

Article 10
TERMINATION

Termination of the Contract by the Owner, with or without cause, and by the Contractor are provided for in Article 15 of the General Conditions. If the Owner terminates the Contract pursuant to Paragraph 15.2. of the General Conditions, and the unpaid balance of the Contract Sum exceeds the costs and expenses incurred by or on behalf of the Owner in finishing the Work, including compensation for any additional architectural, engineering, management and administrative services, such excess shall, upon the completion of the Work, be paid to the Contractor. If such costs exceed such unpaid balance, the Contractor shall pay the difference to the Owner upon demand.

Article 11
USE OF OWNER'S NAME/CONFIDENTIALITY

The Contractor, by virtue of this Contract, shall acquire no right to use, and shall not use, the name of the Owner or the name "Disney" (either alone or in conjunction with or as a part of any other work, mark or name) or any marks, fanciful characters or designs of The Walt Disney Company or any of its related, affiliated or subsidiary companies: in any advertising, publicity or promotion; to express or imply any endorsement of the Contractor's Work or services; or in any other manner whatsoever (whether or not similar to the foregoing uses hereinabove specifically prohibited). The Contractor may, during the course of its engagement hereunder, have access to, and acquire knowledge of or from, material, data, strategies, systems or other information relating to the Work, the Project or

WDW-1
003005

the Owner, or its parent, affiliated, or related companies, which may not be accessible or known to the general public. Any such knowledge acquired by the Contractor shall be kept confidential and shall not be used, published or divulged by the Contractor to any other person, firm or corporation, or in any advertising or promotion regarding the Contractor or its Work or services, or in any other manner or connection whatsoever without first having obtained the written permission of the Owner, which permission the Owner may withhold in its sole discretion.

Article 12<br>LEGAL PROCEEDINGS

12.1. The Contract Documents shall be construed and interpreted in accordance with the laws of the State of Florida and shall constitute the entire and sole understanding of the parties hereto notwithstanding any prior oral or written statements, instructions, agreements, representations, or other communications.

12.2. Any legal proceeding of any nature brought by either party against the other to enforce any right or obligation under this Contract, or arising out of any matter pertaining to this Contract or the Work to be performed hereunder, shall be submitted for trial, without jury, before the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida; or, if the Circuit Court does not have jurisdiction, then before the United States District Court for the Middle District of Florida (Orlando Division); or if neither of such courts shall have jurisdiction, then before any other court sitting in Orange County, Florida having subject matter jurisdiction. The parties consent and submit to the jurisdiction of any such court and agree to accept service of process outside the State of Florida in any matter to be submitted to any such court pursuant hereto, and expressly waive all rights to trail by jury regarding any such matter.

12.3. In the event that any provision of any of the Contract Documents is judicially construed to be invalid by a court of competent jurisdiction, such provision shall then be construed in a manner allowing its validity or, if this leads to an impracticable result, shall be stricken but, in either event, all other provisions of the Contract Documents shall remain in full force and effect.

WDW-1
003006

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed effective as of the day and year first above written.

**OWNER**

**WALT DISNEY WORLD CO.**

Authorized Signature _____ Date: 5-11-99

Print Name/Title    George Leckie

Director, Procurement Services

**CONTRACTOR**

**MCENANY ROOFING**

Authorized Signature _____ Date: 5/3/99

Print Name/Title    Mike McEnany

CONTRACTOR'S CORPORATE SEAL

_____

_____

-or-

WITNESSES

(1) _____

(2) _____

ATTACHMENT A
List of Drawings
CONTRACT NUMBER: 99DE-0904

PROJECT: DISNEY'S GRAND FLORIDIAN RESORT AND SPA-ROOF REPLACEMENT

| Sheet No. | Sheet Title | Date |
|---|---|---|
| 200 | Overall Project Roof Plan | 02/22/99 |
| 201 | Sago Cay (Building No. 20) Roof Plan | 02/25/99 |
| 202 | Main Building Roof Plan (Partial) | 02/25/99 |
| 203 | Main Building Roof Plan (Partial) | 02/25/99 |
| 204 | Main Building Roof Plan (Partial) | 12/03/98 |
| 205 | Conch Key (Building No.3) Roof Plan | 02/25/99 |
| 206 | Sugar loaf Key (Building No. 4) Roof Plan | 02/25/99 |
| 207 | Boca Chica Key (Building No.5) Roof Plan | 12/03/98 |
| 208 | Big Pine Key (Building No.6) Roof Plan | 02/22/99 |

The Following Drawings are Issued for Information Only

| Sheet No. | Sheet Title | | Date |
|---|---|---|---|
| AM2.1 | Monorail Station, Bldg. 1, Bldg. Elevation | Bulletin II | 06/01/88 |
| AM2.2 | Monorail Station, Bldg. 1, Bldg. Elevation | Bulletin II | 06/01/88 |
| AM2.3 | Main Bldg., Bldg. 1, Bldg. Elevation | Revision 15 | 10/07/86 |
| AM2.4 | Main Bldg., Bldg. 1, Bldg. Elevation | Bulletin II | 06/01/88 |
| AM2.5 | Main Bldg., Bldg. 1, Bldg. Elevation | Revision 15 | 10/07/88 |
| AM2.6 | Main Bldg., Bldg. 1, Bldg. Elevation | Bulletin II | 06/01/88 |
| AM2.7 | Main Bldg., Bldg. 1, Bldg. Elevation | Bulletin II | 06/01/88 |
| AM2.8 | Main Bldg., Bldg. 1, Bldg. Elevation | Bulletin II | 06/01/88 |
| AM2.9 | Bldg. 1, Sections | Revision 9 | 06/17/86 |
| AM2.10 | Bldg. Sections | Bulletin II | 04/22/86 |
| AM2.1 | Lodge Bldg. "2" Exterior Elevations | Bulletin II | 06/01/99 |
| AM2.2 | Lodge Bldg. "2" Exterior Elevations | Bulletin II | 06/01/99 |
| AM2.6 | Lodge Bldg. "3" Exterior Elevations | Bulletin II | 06/01/99 |
| AM2.7 | Lodge Bldg. "3" Exterior Elevations | Bulletin II | 06/01/99 |
| AM2.11 | Lodge Bldg. "4" Exterior Elevations | Bulletin II | 06/01/99 |
| AM2.12 | Lodge Bldg. "4" Exterior Elevations | Bulletin II | 06/01/99 |
| AM2.15 | Lodge Bldg. "5" Exterior Elevations | Bulletin II | 06/01/99 |
| AM2.17 | Lodge Bldg. "6" Exterior Elevations | Bulletin II | 06/01/99 |
| AM2.18 | Lodge Bldg. "6" Exterior Elevations | Bulletin II | 06/01/99 |
| A-1 | Pool Bldg., Bldg. 7, floor, sections, elevations | Bulletin II | 06/01/99 |
| A8 | Seafood Lounge Bldg. "9" sections, elevations | TD 106R-4 | 05/15/87 |
| A-11 | Boat Bldg., Bldg "10", plans & elevations | TD126 | 06/04/87 |
| A-16 | Pargo Bldg., Bldg "12", elevations | JRG923BC | 10/01/86 |
| A-19 | Boat Dock, Bldg. "15" | Revision 15 | 10/07/86 |

8 ½ x 11 Details (Bound at the end of Project manual)

| Sheet No. | Sheet Title |
|---|---|
| 1.01 | Eave Flashing with Gutter (Typical) |
| 1.02 | Balcony/Dormer Step Flashing |
| 1.03 | Ridge Flashing Isometric and Section (Typical) |
| 1.04 | Valley Underlayment (Typical) |
| 1.05 | Hip Ridge Flashing (Typical) |
| 1.06 | Dormer Isometric (Flashing Conditions) |
| 1.07 | Crown Cap at Turrets |
| 1.08 | Rake Condition (Typical) |
| 1.09 | Guest Balcony Isometric (Valley and Step Flashing) |
| .10 | Transition – Shingle to Mod. Bit. System (Pargo Building) |
| 2.01 | Guest Balcony Rail Flashing 9Turret Gables0 |
| 2.02 | Flashing at Headwall (Typical) |
| 2.03 | Guest Balcony Rail Flashing (Typical Gable) |
| 2.04 | Transition Fabrication at Guest Balcony |
| 2.05 | Termination of Gutter at Wall |
| 2.06 | Expansion Joint Flashing |
| 2.07 | End Termination at Side Wall Flashing |
| 2.08 | Step Flashing at Side Wall |
| 2.09 | Valley Metal Flashing and Section |
| 3.01 | Edge Metal Profiles at Shingles |
| 3.02 | Edge Metal Lap JOINT AT Rake Condition (Typical) |
| 3.03 | Guest Balcony Wall to Rack Transition Fabrication |
| 3.04 | Edge metal Splice joint Cleat Detail |
| 3.05 | Turret Balconies Corner Flashing Fabrication |
| 3.06 | Valley metal Flashing |
| 3.07 | Outside Corner Eave Drip |
| 3.08 | Hip Transition Flashing |
| 3.09 | Expansion Flashing Fabrication |
| 4.01 | Gutter Expansion Joint Replacement |
| 4.02 | Gutter Fabrication Replacement |
| 4.03 | Gutter End Closure Fabrication |
| 5.01 | Light Strip Mounts |
| 5.02 | Ship's Ladder Mount |
| 5.03 | Roof Transition and Light Fixture Mount |
| 5.04 | Lightning Conductor Penetration |
| 5.05 | Drain Outlet |
| 5.06 | Chimney Flashing |
| 5.07 | Fastener Layout for Plywood |
| 5.08 | Exterior Corridor (Balcony) Flashing |