AGREEMENT NO. 99DE-1313

PROJECT: DISNEY'S GRAND FLORIDIAN RESORT AND SPA-ROOF REPLACEMENT QUALITY CONTROL SERVICES

EXECUTED
JUN 7 1999

## AGREEMENT FOR PROFESSIONAL SERVICES

THIS AGREEMENT, made and entered into this May 2, 1999, between Walt Disney World Co. (herein referred to as the "Owner"), whose mailing address is P.O. Box 10000, Lake Buena Vista, FL 32830-1000, and A/R/C Associates, Incorporated (herein referred to as the "Consultant"), whose mailing address is 601 N. Fern Creek Ave. Su. 100, , Orlando, FL 32803-4899.

### WITNESSETH:

WHEREAS, Owner desires to employ the services of Consultant to perform the hereinafter described services in connection with Disney's Grand Floridian Resort And Spa-Roof Replacement Quality Control Services (hereinafter referred to as the "Project"), and Consultant desires to be so employed.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and obligations herein contained, the parties agree as follows:

1. <u>Scope of Services</u>.

    a. The nature, scope and schedule of services (hereinafter referred to as the "Basic Services") to be performed by Consultant under this Agreement, to the satisfaction of Owner, shall be as follows:

    See attached Exhibit A incorporated herein by reference.

    b. Owner may, from time to time, authorize Consultant in writing to perform, in which event Consultant shall perform, services in connection with the Project which are outside the scope of those Basic Services set forth above. Any such services shall hereinafter be referred to as "Additional Services" and shall be governed by the provisions of this Agreement.

    c. Owner shall have the right at any time during the course of this Agreement to amend, modify, or reduce Consultant's Scope of Services as set forth above. Owner shall be entitled to an appropriate reduction in the fee as set forth in Article 4 of this Agreement, for any reduction in Consultant's Scope of Services.

2. <u>Time for Completion</u>. Consultant shall commence the Basic Services upon execution of this Agreement by Consultant and Owner or upon receipt from Owner of written notice to proceed, whichever is earlier, and shall complete the same in accordance with the following schedule (hereinafter referred to as the "Schedule"), it being understood and agreed that time is of the essence of this Agreement:

    See attached Exhibit B incorporated herein by reference.

    Consultant shall accelerate performance of its Basic Services and Additional Services in the manner directed by Owner in the event Owner, in its sole discretion, determines that such acceleration is necessary to maintain the Schedule. If acceleration is required as a result of delays caused solely by Consultant, acceleration shall be at no cost to Owner. If acceleration is required as a result of delays partially caused by Consultant, such portion of any delay partially caused by Consultant shall not be compensated as an Additional Service, and such other portion of any such delay shall be compensated as an Additional Service.



RECEIVED
JUN 11 [illegible]

WDW-1
000990

3.  <u>Project Construction Budget</u>. - Not Applicable.

4.  <u>Fees</u>.

   a.   The Owner shall pay to Consultant, for its Basic Services as set forth in this Agreement, a not-to-exceed fee based on the hourly rates of Consultant's personnel, as set forth in Exhibit E, attached hereto and incorporated herein by reference. The total of all such hourly rates multiplied by the total hours incurred by Consultant in performance of its Basic Services hereunder shall not exceed the amount of **Fifty Four Thousand Dollars ($54,000.00) DOLLARS**. In addition to the above, the Owner shall pay the Consultant for Reimbursable Expenses in an amount not to exceed **Two Thousand One Hundred Dollars ($2,100.00) DOLLARS** as defined below.

   b.   Progress payments shall be made monthly based upon actual services or hours completed plus Reimbursable Expenses. Consultant shall deliver to Owner, in the form approved by Owner, an invoice on the first day of each calendar month for services rendered during the preceding month plus Reimbursable Expenses. Subject to the hourly rates, the not-to-exceed fee, and the Reimbursable Expense Guidelines set forth below, Owner shall pay each approved invoiced amount within 30 days from receipt of such invoice.

   c.   Reimbursable Expenses shall include only the following actual and necessary costs and expenses reasonably and properly incurred by Consultant in connection with the services rendered under this Agreement:

   Expenses are limited to reimbursement for mileage only, at the rate of $0.31 per mile as approved by Owner.

   d.   Consultant shall provide all supporting documentation with respect to its monthly invoice, as required by the Owner, in connection with all services performed and Reimbursable Expenses incurred.

   e.   Consultant shall be compensated for any services beyond those set forth in Articles 1, 2, and 3 as Additional Services, in such an amount as the parties shall mutually agree in advance. Consultant shall not be entitled to compensation for Additional Services unless Consultant has notified Owner in writing prior to performing such Additional Services, and has received prior written authorization from Owner.

   f.   All invoices should reference the Agreement number and be returned to the following address:

   WALT DISNEY WORLD®, Facility Asset Management
   Attention: Steve Coole
   P.O. Box 10000
   Lake Buena Vista, FL 32830-1000

5.   <u>Books and Records</u>. Consultant shall maintain comprehensive books and records relating to any services performed under this Agreement, which shall be retained by Consultant for a period of at least four (4) years from and after the completion of any services hereunder. Owner, or its authorized representatives, shall have the right to audit such books and records at all reasonable times upon prior notice to Consultant.

6. **Ownership of Documents.**

   a. Title to all plans, drawings, specifications, ideas, concepts, designs, sketches, models, artwork, programs, software, reports, or other tangible work product produced, originally developed, or submitted to Owner by Consultant, pursuant to this Agreement shall be and remain the sole and exclusive property of Owner when produced.

   b. The Consultant shall deliver all such original work product to Owner upon completion thereof unless it is necessary for Consultant in Owner's sole discretion, to retain possession for a longer period of time. Upon early termination of Consultant's services hereunder, Consultant shall deliver all such original work product whether complete or not. Owner shall have all rights to use any and all work product. Consultant shall retain copies for its permanent records, provided the same are not used without Owner's prior express written consent. Consultant agrees not to recreate any designs, or any other tangible work product contemplated by this Agreement, or portions thereof, originally developed under, which if constructed or otherwise materialized, would be reasonably identifiable with the tangible work product originally developed by Consultant pursuant to this Agreement, or the project. If said work product is used by Owner for any purpose other than that purpose which is intended by this Agreement, the Owner shall indemnify Consultant from any and all claims and liabilities which may result from such re-use, in the event Consultant does not consent to such re-use.

   c. Owner exclusively retains all manufacturing rights to all materials or designs developed under this Agreement. To the extent the services performed under this Agreement produce or include copyrightable or patentable materials or designs, such materials or designs are work made for hire for Owner as the author, creator, or inventor thereof upon creation, and Owner shall have all rights therein including, without limitation, the right of reproduction, with respect to such work. Consultant hereby assigns to Owner any and all rights Consultant may have including, without limitation, the copyright, with respect to such work. The Consultant acknowledges that Owner is the motivating factor for, and for the purpose of copyright or patent, has the right to direct and supervise the preparation of such copyrightable or patentable materials or designs.

7. **Confidentiality of Material.** Consultant may, during the course of its engagement hereunder, have access to, be provided or acquire knowledge of or from, material, data, strategies, systems or other information relating to the Project or Owner, or its parent, affiliated, or related companies, which may not be accessible or known to the general public. All such information shall remain Owner's exclusive property and all such knowledge acquired by Consultant shall not be used, published or divulged by Consultant to any other person, firm or corporation, or in any advertising or promotion regarding Consultant or its services, or in any other manner or connection whatsoever without first having obtained the written permission of Owner, which permission Owner may withhold in its sole discretion.

8. **Insurance; Indemnification.**

   a. Consultant shall, throughout the performance of its services pursuant to this Agreement maintain, (and in the case of item (iv) below,) for a period of one year from the date of completion of Consultant's services under this Agreement, or for a period of one year from the date of Substantial Completion of the construction of the Project, whichever is later:

      (i) Occurrence basis commercial general liability insurance (including broad form contractual coverage), with minimum limits of $1,000,000.00 per occurrence and $1,000,000.00 per annual aggregate liability for protection from claims for bodily injury (including death) and property damage which may arise from or in connection with the performance of Consultant's services hereunder or from or out of any act or omission of Consultant, its Subconsultants, and their officers, directors, agents, and employees;

      (ii) Automobile liability insurance with minimum limits of $1,000,000.00 per occurrence and $1,000,000.00 per annual aggregate;

(iii) Workers compensation insurance as required by applicable Florida law (or employer's liability insurance with respect to any employee not covered by workers' compensation with minimum limits of One Hundred Thousand Dollars ($100,000) per accident with respect to any employee not covered by workers' compensation); and

(iv) Professional liability insurance (including coverage for the Scope of Services to be performed under this Agreement) with minimum limits of $500,000.00 per claim and $500,000.00 per annual aggregate for protection from negligent acts, errors and omissions of Consultant from or in connection with the performance of Consultant's services hereunder.

b. All such insurance required in Paragraph a. shall be with companies and on forms acceptable to Owner, shall name Owner, Owner's Representative, their parent companies, and the related, affiliated and subsidiary companies of each and the officers, directors, agents, employees and assigns of each as additional insureds (except for such insurance provided under Paragraph a (iii) and (iv), and shall provide that the coverage thereunder may not be reduced or canceled unless thirty (30) days' prior written notice thereof is furnished to Owner. Certificates of insurance (and copies of all policies, if required by the Owner) shall be furnished to the Owner. In the event of any cancellation or reduction of coverage, the Consultant shall obtain substitute coverage as required hereunder, without any lapse of coverage to Owner whatsoever.

c. Consultant shall defend (if required by Owner), indemnify and hold Owner, their parent company, the subsidiary, related and affiliated companies of each, and the officers, directors, agents, employees and assigns of each, harmless from and against any and all claims, demands, suits, judgments, damages to persons or property, injuries, losses, or expenses of any nature whatsoever (including attorneys' fees) arising directly or indirectly from or out of: any negligent act or omission of Consultant, its Subconsultants, and their officers, directors, agents or employees, any failure of Consultant to perform its services hereunder in accordance with generally accepted professional standards, any material breach of Consultant's representations as set forth in this Agreement or any other failure of Consultant to comply with the obligations on its part to be performed hereunder. The provisions of this paragraph shall survive the expiration or sooner termination of this Agreement.

9. Representations. Consultant hereby represents to Owner:

a. that it has the experience and skill to perform the services required to be performed by it hereunder;

b. that it shall provide and employ in connection with the performance of such services personnel qualified and experienced in their profession; it being understood that the Owner may at any time require the Consultant to remove, and the Consultant shall forthwith remove, any person employed in connection with the performance of the services for any reason whatsoever;

c. that it shall design to and comply with all applicable federal, state, and local laws and codes, including, without limitation, all professional registration and licensing requirements (both corporate and individual for all required basic disciplines) in effect during the term of this Agreement, and shall, if requested by Owner, provide certification of compliance with all registration and licensing requirements;

d. that it shall perform said services in accordance with generally accepted professional standards, in the most expeditious and economical manner, and to the extent consistent with the best interests of Owner;

e. that it is adequately financed to meet any financial obligations it may be required to incur hereunder; and

f. that the designs, plans, drawings, specifications or other work product of Consultant shall not call for the use of nor infringe any patent, trademark, service mark, copyright or other proprietary interest claimed or held by any person or business entity absent prior written consent from Owner.

10. **Determination of Disputes.** Any dispute, difference, claim or counterclaim between Owner and Consultant arising out of or in connection with this Agreement which cannot be amicably resolved by the parties shall be submitted to the Circuit Court in and for Orange County, Florida (or if the Circuit Court shall not have jurisdiction over the subject matter thereof, then to such other court sitting in said county and having subject matter jurisdiction) for trial and determination by the court sitting without jury. Said parties hereby consent to the jurisdiction of such court and to the service of process outside the State of Florida pursuant to the requirements of such court in any matter so to be submitted to it, and they expressly waive the right to a jury trial.

11. **Suspension or Termination.** Anything herein to the contrary notwithstanding, Owner shall, in its sole discretion and with or without cause, have the right to suspend or terminate this Agreement upon three (3) days' prior written notice to Consultant. In the event of suspension or termination, Owner's sole obligation and liability to Consultant shall be to pay to Consultant any amounts for services performed and Reimbursable Expenses incurred (to the extent Reimbursable Expenses are allowed Under Article 4), through the date of termination, and for which Owner has not reimbursed Consultant on any previously submitted invoice, in accordance with the terms of Article 4. Unless the Owner authorizes the Consultant to the contrary, Consultant shall not perform any services and shall not be entitled to receive payment from Owner on account of any such services performed during the period of suspension. Upon receipt of notice from Owner that the suspension has been cancelled, Consultant shall perform its remaining services in accordance with the terms of this Agreement and Consultant shall be entitled to a time extension equal to the period of suspension.

12. **Assignment.** This Agreement is for the personal services of Consultant and may not be assigned by Consultant in any fashion, whether by operation of law, or by conveyance of any type, including without limitation, transfer of stock in Consultant, without the prior written consent of Owner, which consent Owner may withhold in its sole discretion. Owner may assign all or any portion of this Agreement at any time without Consultant's consent. Upon such assignment, and provided the Assignee shall, in writing, assume Owner's obligations under this Agreement, Owner shall be automatically released and discharged from any and all of its obligations under this Agreement, and Consultant shall thenceforth look solely to the Assignee for performance of Owner's obligations hereunder.

13. **Notice.**

a. Notices required or permitted to be given hereunder shall be in writing, may be delivered personally or by mail, facsimile, cable, or courier service, and shall be deemed given when received by the addressee. Notices shall be addressed as follows:

> If to Owner: Walt Disney World Co.
> P. O. Box 10000
> Lake Buena Vista, FL 32830-1000
> Attention: Lee Greenwood
> Manager, Contract Services
>
> If to Consultant: A/R/C Associates, Incorporated
> 601 N. Fern Creek Ave. Su. 100
> Orlando, FL 32803-4899

or to such other address as either party may direct by notice given to the other as hereinabove provided.

b. Notwithstanding the foregoing, any notice sent to the last designated address of the party to whom a notice may be or is required to be delivered hereunder shall not be deemed ineffective if actual delivery

WDW-1
000994

cannot be made due to a change of address of the party to whom the notice is directed or the failure or refusal of such party to accept delivery of the notice.

14. <u>Promotion</u>. Consultant shall acquire no right under this Agreement to use, and shall not use, the name of the Owner, the name "Disney" (either alone or in conjunction with or as a part of any other word or name) or any fanciful characters or designs of The Walt Disney Company or any of its related, affiliated or subsidiary companies: in any of its advertising, (video, stills, film, etc.), publicity, or promotion; to express or imply any endorsement by Owner of its services; or in any other manner whatsoever (whether or not similar to the uses hereinabove specifically prohibited).

15. <u>Subconsultants/Separate Consultants</u>. If the Consultant desires to employ Subconsultants in connection with the performance of its services hereunder:

   a. Any proposed Subconsultants shall be submitted to Owner for approval prior to Consultant entering into a Subconsultant Agreement. Such approval by the Owner shall not be unreasonably withheld. The Owner shall not be liable to the Consultant in any manner arising out of the Owner's objection to a proposed Subconsultant.

   b. Consultant shall coordinate the services and work product of any Subconsultants, and remain fully responsible for the professional quality, technical accuracy and the coordination of all designs, drawings, specifications, and other services furnished by Consultant or its Subconsultants, and Consultant shall review and approve any designs, drawings, specifications, shop drawings, submittals, or other services produced or furnished by an Subconsultants prior to submittal to the Owner. Consultant shall correct or revise any of its errors or deficiencies in the designs, drawings, specifications or other services produced pursuant to this Agreement and shall provide Owner with such corrected or revised designs, drawings, or specifications incorporating such corrections or revisions at its sole cost and expense.

   c. Any Subconsultant Agreement shall reflect the terms of this Agreement and require the Subconsultant to the extent of the services to be performed by the Subconsultant, to assume toward the Consultant all the obligations which Consultant by this Agreement assumes towards the Owner, it being understood that nothing herein shall in any way relieve Consultant from any of its duties under this Agreement.

   d. Consultant shall cooperate at all times with Owner, and cooperate and coordinate with, and incorporate the work product of, any Separate Consultant, in any fashion appropriate or necessary to facilitate the design and construction of the Project within the Project Construction Budget and Schedule. In the event Owner so elects and upon written mutual consent (which consent shall not be unreasonably withheld), as evidenced by an amendment to this Agreement, Consultant shall accept an assignment of any agreement or contract Owner may have with any Separate Consultant, by which Consultant shall assume any and all obligations of Owner and shall be fully responsible for any such Separate Consultant as a Subconsultant.

16. <u>Key Employees</u>. Owner has relied upon and hired Consultant because of the involvement of certain individuals employed by Consultant identified on Exhibit D attached hereto and incorporated herein by reference, and Consultant agrees that the persons (Key Employees) listed on Exhibit D shall be assigned to the Project. Consultant shall not remove any Key Employee from the Project absent prior written consent of Owner for any reason other than termination of employment.

17. <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the law of the State of Florida, to the exclusion of Florida rules of conflicts of laws.

18. <u>Miscellaneous Provisions</u>.

   a. If this Agreement contains any provisions construed to be unenforceable or unlawful by a court of competent jurisdiction, the same shall be deemed modified to conform to applicable law, or if this would

WDW-1
000995

cause an illogical or unreasonable result, such provision shall be stricken from this Agreement without affecting the binding force and effect of the Agreement or any of its other provisions.

    b.    Respecting the subject matter hereof, this Agreement contains the entire agreement of the parties and their representatives and agents, and incorporates all prior discussions or understandings, whether oral or written. No change, modification or amendment, nor any representation, promise or condition, nor any waiver, to this Agreement shall be binding unless in writing and signed by a duly authorized representative of the party to be charged.

    c.    Any failure by Owner to require strict compliance with any provision of this Agreement shall not be construed as a waiver of such provision, and Owner may subsequently require strict compliance at any time, notwithstanding any prior failure to do so.

    d.    The acceptance of final payment under this Agreement, or the acceptance of final payment upon early termination hereof, shall constitute a full and complete release of Owner by Consultant from any and all claims, demands and causes of action whatsoever which Consultant may have against Owner in any way related to the subject matter of this Agreement. Neither the Owner's review, approval or acceptance of, nor payment for, any of the services required under this Agreement shall be construed to operate as a waiver of any rights under this Agreement or of any cause of action arising out of the performance of this Agreement, and Consultant shall be and remain liable to Owner for all damages to Owner caused by Consultant's performance of any of the services furnished pursuant to this Agreement.

    e.    It is understood and agreed that Consultant is acting as an independent contractor in the performance of its services hereunder, and nothing herein contained shall be deemed to create an agency relationship between Owner and Consultant.

    IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed and effective as of the day and year first above written.

CONSULTANT

A/R/C ASSOCIATES, INCORPORATED

Authorized Signature _____  Date June 11, 1999

Print Name Joseph J. Williams

Title Corporate Secretary-Treasurer

OWNER

WALT DISNEY WORLD CO.

Authorized Signature _____  Date 6/13/99

Print Name David L. Ellis

Title Principal Services Representative

| EXHIBIT A |
| --- |
| SCOPE OF SERVICES |
| AGREEMENT NO. 99DE-1313 |

Consultant shall provide professional construction observation and quality control services in support of the ongoing roof replacement at Disney's Grand Floridian Resort And Spa. Consultant shall provide regular site visits to the project on a weekly basis to observe the work of the roofing contractor and ensure their work is in conformance with the Contract Documents.

In the event services performed by the roofing contractor are not in conformance with the Contract Documents, Consultant shall assist Owner in evaluating the cause of non-conformance and assist in determining the best course of action.

When non-conforming conditions are encountered and revised or alternate details are required, Consultant shall provide professional drafting services to document the solution developed by the Consultant.

END OF EXHIBIT A

EXHIBIT B
SCHEDULE
AGREEMENT NO. 99DE-1313

The Consultant shall commence the services on May 2, 1999, and shall complete all services on or before December 31, 2000, in accordance with the Scope of Services.



**END OF EXHIBIT B**

WDW-1
000998

| EXHIBIT C |
| --- |
| PROJECT CONSTRUCTION BUDGET |
| AGREEMENT NO. 99DE-1313 |

N/A

| END OF EXHIBIT C |
| --- |

WDW-1
000999

**EXHIBIT D**
**KEY EMPLOYEES**
**AGREEMENT NO. 99DE-1313**

Joseph Williams

**END OF EXHIBIT D**

| EXHIBIT E |
| :---: |
| SCHEDULE OF RATES |
| AGREEMENT NO. 99DE-1313 |

The Consultant shall be compensated for the actual services provided at the following hourly rates. The rates below include all labor costs, direct and indirect, and overhead, profit and all other costs of Consultant whatsoever, except those Reimbursable Expenses expressly allowed under this Agreement.

Principal, Joseph Williams, $100.00 per hour

Quality Assurance Technician $55.00 per hour

Drafting Services $50.00 per hour

**END OF EXHIBIT E**

WDW-1
001001

WDW-
001002