IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-001139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Re: Docket No. 2189 |
| | ) | Hearing; July 22, 2002  10:00 a.m. |

**DEBTORS' OBJECTIONS TO THE PROPERTY DAMAGE COMMITTEE'S MOTION
TO RETAIN SPECIAL COUNSEL FOR THE ZAI SCIENCE TRIAL**

Debtors object to the Property Damage Committee's Motion to Retain Special Counsel

for the purposes of representing ZAI claimants ("Claimants") in the ZAI "science trial." In

moving to have six different law firms represent Claimants and proposing a budget of over $4.2

million, the PD Committee has violated both the letter and spirit of the Court's view of

appointment of special counsel. The Court indicated that one lead counsel would be appointed

for the science trial, and no more:

> MR. BERNICK: If – I hate to say this, but if the experience in the fraudulent
> conveyance  side is any indication, it may be difficult to reach agreement on a

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food ‖N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

budget. And here's the big problem, is that everybody wants to be lead counsel and have a budget that reflects that they're lead counsel.

We had three different law firms all saying that they're lead counsel on different issues in the fraudulent conveyance litigation and as a result the budget is horrific.

THE COURT: Well let me make it easy. There's going to be one lead counsel, it's on a science trial, it's for a limited purpose. It's to do nothing else, so there will be one firm...

Then if any local counsel  under whatever that local rule is, then I guess – no, they won't because they can use committee counsel as legal counsel.

MR. BERNICK: Right.

THE COURT: So one attorney, one lead counsel.

(May 20, 2002 transcript at pp. 105-106).

Likewise, as reflected in the $4.2 million budget[2] submitted by the PD Committee, the

scope of the science trial contemplated by the PD Committee goes well beyond what the Court

viewed as "pretty much cut and dried battle of experts on the liability." (April 22, 2002

transcript at p. 30).  Further, the PD Committee has proposed the retention of five law firms, to

be paid in full by the Debtors at hourly rates, where heretofore the law firms represented

Claimants on a contingent fee basis.  The Debtors suggest a modified contingent fee arrangement

is more appropriate, reasonable and in keeping with the Court's directions.

**The Claimants Do Not Need Six Law Firms Participating In The Science Trial**

The PD Committee has moved to employ five law firms to represent Claimants in the

science trial.  The PD Committee  has also suggested that its own counsel act as "gatekeeper" for

the litigation.  This suggestion is contrary to the Court's ruling at the May 20, 2002 hearing and

unnecessary.  As the Court stated, retention of special counsel is for the "limited purpose" of

---

[2]   Pursuant to the Court's Order of June 18, 2002, the Debtors' objections to the PD Committee's proposed budget for special counsel, are due to be filed with the Court on July 8, 2002.

representing Claimants in the science trial. (May 20, 2002 transcript at p. 106). While the Court

has not specifically defined the issues to be tried, it has indicated that the science trial is being set

for a limited purpose:

> "There just -- it doesn't make logical sense not to do the science trial first in
> some fashion. It needs to be done, both to find out whether there really is
> potential liability for the estate. And if there is that liability, to define how the
> notices should be created and go forward." (May 20, 2002 transcript at p. 68).

> "...whether there is some science basis for liability." (May 20, 2002 transcript at
> p. 69)

> "That's the only issue I'm going to take up, until we get the liability on the
> hazardous nature of this product determined." (May 20, 2002 transcript at p. 94)

It is unnecessary for the Court to approve, and the Debtors to pay, six law firms to

participate in the science trial. Again, the Court made this clear:

> "Each of these individual claimants obviously has the right to their own counsel.
> And if they want to bring their own counsel involved in this case, there's certainly
> nothing that this Court would do to prohibit it.

> MR. BERNICK: Would we have to pay for it, though?

> THE COURT: No, not for their individual counsel. But for committee counsel
> for them the [sic] pick up in this case and represent it, yes."

(May 20, 2002 transcript at p. 69).

Since the PD Committee disregarded the Court's directions regarding the retention of one

law firm to act as special counsel in the trial, the Court must decide which of the many firms

proffered by the Committee should be permitted to act as special counsel.

The Debtors recognize that Mr. Westbrook of Richardson, Patrick, Westbrook,

Brickman and Mr. Turkewitz of Ness, Motley, Loadholt, Richardson & Poole used to be with the

same law firm and have worked together on property damage cases against the Debtors.

Moreover, Messrs. Westbrook and Turkewitz actively participated in the Barbanti case and the

MDL proceeding. Thus, the Debtors can accept those individuals and their respective firms

working together on the science trial. In fact, they are the logical choice to act as special counsel in the science trial   That being the case however, there does not appear to be any role for Lukins & Annis, a Spokane firm that primarily dealt with Washington State facts relating to specific named plaintiffs in <u>Barbanti</u>. All of the factual information and knowledge needed to present scientific evidence concerning ZAI will already be present with Messrs. Westbrook and Turkewitz. There is, thus, no need or justification for retaining Lukins & Annis unless one or more of the Claimants wants to hire and pay for that firm as additional counsel themselves.

Likewise, there is no need for the PD Committee to employ McGarvey, Heberling, Sullivan & McGarvey PC. The McGarvey firm is a Montana law firm that has a history of pursing mostly personal injury actions against the Debtors in the state of Montana relating to the Debtors' Libby, Montana mining operations. The McGarvey firm has no special expertise with respect to property damage litigation against the Debtors and no particular expertise with respect to ZAI. Any experience that the McGarvey firm has with respect to litigation with the Debtors is also held by Messrs. Westbrook and Turkewitz.

Retention of Lieff Cabraser, Heilmann & Bernstein LLP  is completely unnecessary. Lieff Cabraser has no particular expertise in asbestos or the Debtors' businesses or products. Leiff Cabraser is a firm specializing in class action tort cases. Lieff Cabraser's role in the <u>Barbanti</u> matter, the only ZAI matter to have generated any evidentiary hearings (on a request for a preliminary injunction) was extremely limited. Leiff Cabraser's participation in <u>Barbanti</u> was limited to class certification issues. They were not active in the preliminary injunction hearing which addressed the "science issue" of whether ZAI posed an imminent health hazard that required immediate injunctive relief.

The Court has made it clear that all matters related to class certification and class proofs

of claim will be deferred until after the science trial:

> "I'm trying to make this clear. I want to avoid having to worry about the class
> certifications until I find out whether there is a reason to certify a class. The way
> to do that is to look at the science issue. I want to get the science issue tried at the
> trial. If the debtor loses that trial, then the next thing I'm doing will be a class
> certification issue.
>
> If the debtor wins, then I'm going to look at the class certification issues anyway,
> but probably with a different view than I might have otherwise. So the class
> certification issues will be then, they're not permanently delayed, they're simply
> being put on hold until I get the liability issues determined."

(May 20, 2002 transcript at pp. 108-109)  Thus, the participation of Leiff Cabraser is completely

unnecessary and the PD Committee's application to employ them must be denied.

Finally, having PD Committee counsel act as "gatekeeper" in the science trial is

completely unnecessary (especially if special counsel is limited to two firms).  Claimants will be

more than adequately represented by Messrs. Westbrook and Turkewitz and no gatekeeping

function is necessary.  Since Committee counsel has conceded that it would be inappropriate for

it to represent Claimants in the science trial, Committee counsel's participation should be limited

to keeping up to date on the status of the science trial on behalf of its constituents, much like the

Debtors expect the Official Committee of Unsecured Creditors and the Asbestos Personal Injury

Committee will do, and no more.

## Compensation for Claimants' Counsel on an Hourly Rate Basis is Inappropriate

A debtors' estate is not generally required to bear the costs of claimants prosecuting

claims *against* the estate.  The fee arrangements approved by District Judge Wolin for the

Committee's special counsel to prosecute the Fraudulent Conveyance matter is not relevant.

There, special counsel is representing the Debtors' estates.  In this situation, the Court has made

the extraordinary suggestion that for the science trial to proceed, the Debtors' estates are going to

have to defray some of special counsel's costs. While the Debtors are not in the business of

compensating Claimants for prosecuting claims against them, the Court has suggested that the

science trial is essential in order to find out whether there really is a potential ZAI liability.

The Committee proposes that special counsel be retained to represent Claimants in the

science trial on a full hourly rate basis. The Debtors find this suggestion unusual since all of

these firms are essentially mass tort plaintiff's firms who have contingent fee arrangements with

Claimants. The Court has suggested that for the ZAI science trial to proceed, the Debtors have

no choice but to bear the "out of pocket costs" of the trial. (May 20, 2002 transcript at p. 76)

However, the Court did not suggest that the Debtors' estates would have to bear the costs of a

full hourly fee arrangement for special counsel:

> "I think class actions typically do these things on a contingent basis, because there
> is an upside. If you win, you get the lion's share of whatever the share of the
> attorney proceeds would be, you have the opportunity to come before the court to
> assess those fees, and so typically they are contingent.
>
> I think by requiring the debtor to pick up the costs of expenses, that's going a long
> way."

(May 20, 2002 transcript at p. 81).

Taking to heart the Court's direction, on June 7, 2002, the Debtors filed their Suggestion

of a Proposed Budget for Prosecution of ZAI Claimants' Case in the Science Trial. In that

pleading, the Debtors suggested a compromise between paying full hourly rates and a traditional

contingent fee arrangement for special counsel. Pursuant to this compromise, the Debtors would

assure that all of special counsel's true costs are covered by reimbursing reasonable out of pocket

disbursements plus providing special counsel with a reduced hourly rate and the opportunity to

earn a higher rate and a premium if the Claimants are successful in the science trial.

A debtors' estate is not generally assessed the costs of claimants for prosecuting claims

against the estate. In this extraordinary situation, the Court has said that the science trial is vital

to the estates and the Debtors will have to defray some of the Claimants' costs. The type of compensation arrangement proposed by the Debtors represents a reasonable compromise. It is designed to assure that special counsel's true costs are covered yet does not require that the Debtors reward Claimants for prosecuting claims against the Debtors' estates which may be without merit.

## Conclusion

The PD Committee's Motion to Employ Special Counsel should be granted only insofar as the PD Committee be permitted to employ the firms of Richardson, Patrick, Westbrook, Brickman and Ness, Motley, Loadhold, Richardson & Poole as special counsel in the ZAI science trial, under the fee arrangement proposed by the Debtors herein. The remaining portion of the Motion should be denied.

July 1, 2002

Respectfully submitted,

KIRKLAND & ELLIS
David Bernick
Christopher Sullivan
James W. Kapp III
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
Tel:  (312) 861-2000
Fax:  (312) 861-2200

and

REED SMITH
James Restivo
Douglas E. Cameron
435 Sixth Avenue
Pittsburgh, PA 15219
Tel: (412) 288-3131
Fax: (412) 288-3063


and

PACHULSKI, STANG, ZIEHL YOUNG & JONES P.C.


Laura Davis Jones (#2436)
David W. Carickhoff, Jr. (#3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Tel: (302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession