UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF DELAWARE

```
                        )
IN RE:                  )
                        )         Bankruptcy Action
  W. R. GRACE & CO.,    )         Case No. 01-01139(JKF)
  et al,                )
                        )         Chapter 11
            Debtors,    )         Wilmington, DE
                        )         May 20, 2002
                        )
```

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | DAVID BERNICK, ESQUIRE<br>JANET BAER, ESQUIRE<br>JAMES W. KAPP, III, ESQUIRE<br>Kirkland & Ellis<br>200 East Randolph Drive<br>Chicago, Illinois 60601 |
| | JAMES RESTIVO, ESQUIRE<br>Reed, Smith, LLP<br>1201 North Market Street<br>Wilmington, DE  19899 |
| | DAVID W. CARICKHOFF, JR., ESQUIRE<br>Pachulski, Stang, Ziehl, Young &<br>Jones, P.C.<br>919 North Market Street, 16th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899 |
| For Maryland Casualty | JEFFREY WISLER, ESQUIRE<br>Connolly, Bove, Lodge & Hutz<br>1220 N. Market Street<br>Wilmington, DE 19899 |
| For Continental Casualty<br>Co. | ELIZABETH DELUSTOFICO, ESQUIRE<br>Ford |

Ruling                                          Page 66

1    I believe it's covered to the extent that parties have the

2    opportunity to seek a leave from that preliminary injunction.

3    There is a mechanism built in, and if that's appropriate, it's

4    appropriate.  I don't think it's going to work for Ms. Gerard

5    in this action against Maryland Casualty.

6            I haven't looked at it with respect to Continental.

7            MR. PARKER:  Thank you, very much, Your Honor.

8            THE COURT:  All right.  Mr. Bernick, did your office

9    prepare an order?

10           MR. BERNICK:  Yes.  The next item is the last item,

11   Item 9, and this relates to the CAI claims filings process.

12   And, again, I want to just review a little bit of where we've

13   been on this and the two developments that have taken place

14   since the last hearing.  That will bring the Court up to speed.

15   We're obviously now coming up on the anniversary, the first

16   anniversary, of our motion to set a bar date with respect to

17   these claims.

18           We made that motion, actually, in July of last year.

19   And so this is -- obviously is something that's important to

20   the debtor.  We did it right off and we still are not quite

21   there.  Although I think that two hearings ago, the Court did

22   identify a sound case management path.  Under that path, the

23   Court was going to defer consideration of the bar date and the

24   bar date notice and defer consideration of class issues and

25   hold a science trial first, so that the science trial could

1    inform Your Honor's discussions and deliberations and decisions

2    with regard to those ultimate decisions.  And, in fact, at page

3    92 of the transcript, you said that the real purpose of looking

4    at this is to see, (a) what type of notice we're going to

5    bring, and (b) what type of class.  So if we get the science

6    decided first, then we know either more -- then we know whether

7    either or both of these makes sense, whether they make sense,

8    and we have a whole lot more information with which to

9    determine the type of certification.

10              THE COURT:  Mr. Bernick, let me cut some of this

11    off --

12              MR. BERNICK:  Sure.

13              THE COURT:  -- because this has gone on for three

14    months.  I've read all the pleadings.  It seems to me that

15    that's still the right approach.  The issue seems to be how to

16    get the claimants who need counsel in order to defend an

17    objection to their claim, to be able to do that.

18              And it seems to me that this estate is quite simply

19    going to have to bear the costs.  I don't know any other way

20    around it, in order not to have to get into the class

21    certification issues.

22              There are -- you filed, I think, ten claims.  They

23    purport to be on behalf of the named plaintiffs in the various

24    actions that are there.  It seems to me that the appropriate

25    thing to do -- well one of two things are appropriate at this

1    point.  Either I direct U.S. Trustee's Office to appoint a

2    separate committee, which, frankly, I'm loath to do.  I'm not

3    sure it's necessary.

4            Or I simply define these to be what the parties have

5    defined them to be, property damage claims that are within the

6    subject matter of the property damage committee in the case and

7    require the property damage committee to pick up the

8    litigation.

9            Now having said that, if they need special counsel, I

10   think it's appropriate to hire special counsel.  There are

11   certainly counsel who have been very active in the case.  As

12   special counsel, they don't need to be disinterested, so if the

13   property damage committee wanted to use them, I think they can.

14           My reason for this is twofold.  Number one, I believe

15   under 503, this litigation is essential for this estate to know

16   how it's going to wrap itself up at some point in time.

17           And I think that there would be an entitlement to a

18   503 administrative expense for having benefitted the estate,

19   because it has to be done.  There just -- it doesn't make

20   logical sense not to do the science trial first in some

21   fashion.  It needs to be done, both to find out whether there

22   really is potential liability for the estate.  And if there is

23   that liability, to define how the notices should be created and

24   go forward.

25           So I think long and short of it, in order to defer

Colloquy                         Page 69

1   the class issue, which I think are appropriate, I do not see

2   the need to push the class certification issues until we find

3   out whether there is some science basis for liability.  We have

4   to get it done.

5          Each of these individual claimants obviously has the

6   right to their own counsel.  And if they want to bring their

7   own counsel involved in this case, there's certainly nothing

8   that this Court would do to prohibit it.

9          MR. BERNICK:  Would we have to pay for it, though?

10          THE COURT:  No, not for their individual counsel.

11   But for committee counsel for them the pick up in this case and

12   represent it, yes.

13          Otherwise, I don't see a way that this is going to go

14   forward.  I'm reading between the lines, Mr. Bernick, I don't

15   think this is really an issue about the fact that the science

16   trial should go forward first.  It's really an issue about how

17   the people who will be out of pocket are going to get

18   compensated.

19          And it isn't a fair burden, I think, to pick ten

20   individuals and say, you're going to bear the brunt of this

21   entire science trial.

22          MR. BERNICK:  Well I, you know, if they had their

23   class certified and they were going down the road to a trial

24   they would do exactly that --

25          THE COURT:  But they aren't, and you're asking that I

Colloquy                              Page 70

1    not go there.  If you prefer that I get into the class --

2             MR. BERNICK:  Obviously I do not.

3             THE COURT:  -- I will do that.  I will do it.  But it

4    seems to me that the best way around this, is simply to

5    recognize that this estate's going to have to -- in order to

6    get this issue of time, the estate should bear this expense.  I

7    want a budget.  Because I'm not going to permit a budget to be

8    exceeded.

9             I realize I'm taking money out of one pot,

10   essentially, and requiring it to be put into another.  But I

11   think it's necessary to the progress of this case.

12            MR. BERNICK:  Can I -- I appreciate that, Your Honor.

13   Obviously we're very, very anxious to proceed and we think that

14   the course that the Court has indicated is the proper course.

15            If Your Honor would enter the order that we've asked

16   to be entered that sets up the schedule, we can go forward.

17   With regard to the particular issue of funding, that is who

18   gets funded and in what respect, I think that I, and my client,

19   I know, would like to have a little bit of time to think about

20   that, because it may have some texture to it that's worth

21   exploring a little bit.

22            So if you could give us some time, maybe the next

23   seven days, to make whatever submission we would like to make,

24   if we make a submission on that subject, following up on Your

25   Honor's statements today, I think that that would be

Colloquy                              Page 71

1   appropriate and beneficial to the estate, so that we can get

2   the order entered and get the process underway.

3           Very little time will pass before we will express our

4   views and see if there are any issues at all.

5           THE COURT:  Well I think the -- I think I may need to

6   have you both looking at the issue of funding, but I think we

7   need the committee to decide whether it's going to pick up this

8   action or retain special counsel too.

9           MR. BERNICK:  Okay.

10          THE COURT:  So I think I need two pieces before

11  I'm --

12          MR. BERNICK:  Sure.

13          THE COURT:  -- content giving you an outside bar date

14  on the science side.  I'd like to get this going too, Mr.

15  Bernick.  Because the longer it gets delayed, I don't see that

16  there's much benefit.  But I also don't want to act

17  precipitously and get started on discovery.  It would not be an

18  appropriate party getting -- having representation.

19          Here's the difficulty procedurally that I see.  I now

20  have the objection -- I now have the claims that debtor has

21  filed --

22          MR. BERNICK:  Right.

23          THE COURT:  And the debtor indicates that they're

24  disputed.  But I think in order to frame the pleading, I need

25  the debtor to file an objection to the claims, so that we frame

Colloquy                              Page 72

1   the issues.

2           MR. BERNICK:  Yes.

3           THE COURT:  Because the other problem that I'm

4   facing, and frankly I don't think it's going to be a major one,

5   but, today is the way that the committee or -- I'm sorry, I've

6   forgotten who's filed the response, but the one that identifies

7   the issues at the end of the pleading --

8           MR. BERNICK:  Right.

9           THE COURT:  -- have articulated the issues and the

10  way the debtor articulated the issues are somewhat different.

11  Frankly, I don't think we need to get into, at this early

12  stage --

13          MR. BERNICK:  Exactly.

14          THE COURT:  -- all of those later issues.  I think

15  what we need to do is find out whether there is a hazardous

16  product.

17          MR. BERNICK:  Correct.

18          THE COURT:  And now that's a broad term, hazardous

19  product.  And you folks, I think, need to get together to

20  decide what the parameters of that is.  That what -- are I

21  guess is the plural word, are.  What hazardous means in this

22  context, and I don't necessarily want to interpose anything

23  with respect to that issue today.

24          But I think to set the stage, the debtor now needs to

25  file an objection to that claim.

Colloquy                          Page 73

1           MR. BERNICK:  Okay.

2           THE COURT:  I read with interest the response that

3    says that somehow or other these claimants are being prejudiced

4    from filing a claim, because the debtor filed a claim for it.

5    That, in my view, is pure nonsense.  The claimants can always

6    amend their claims, they can file their own claims to supercede

7    the debtor's claims.

8           MR. BERNICK:  Right.

9           THE COURT:  There hasn't been a bar date set.

10          MR. BERNICK:  Right.

11          THE COURT:  The purpose of the bar date is to fix the

12   final date by which to file a proof of claim, not the first

13   date by which you file a proof of claim.

14          MR. BERNICK:  Right.

15          THE COURT:  So I see no prejudice to anyone.  And,

16   frankly, I think the debtor's filing the claim in the fashion

17   that it did set the stage that needs to be set.  But I need the

18   next piece.

19          MR. BERNICK:  Yeah.  So we will file the objections.

20   We will submit a paper to the Court.  If counsel for the

21   other -- on the other side is going to be making a proposal

22   with regard to the handling of fees, experience says that

23   that's probably going to take a couple of weeks to put

24   together.

25          So why don't we have them exchanged in 14 days.  What

Colloquy                        Page 74

1    I would like to get to, though, is a very, very prompt

2    determination, so that it's not -- we can really continue to go

3    forward with this --

4         THE COURT:  Well I think -- I mean, it seems that

5    there was sort of an agreement -- it seems that there was,

6    basically, an agreement about the content of the discovery

7    order.  So I think it may be appropriate just to re-craft that

8    discovery order, but push the dates out a little bit so the

9    debtor can take a look at the issue of funding, and the

10   committee can take a look at the issue of counsel.

11        You have to get the objections anyway, then I need a

12   response.  And that's a required, mandatory 30 day notice

13   period before I can have a hearing under the Rule.

14        MR. BERNICK:  Okay.  But what if we simply submitted

15   a new form of order that pushed all of the dates out 30 days,

16   thereby giving us the opportunity to get to the next hearing

17   with regard to who is going to be representing the claimants

18   and on what kind of basis?

19        THE COURT:  Well --

20        MR. BERNICK:  The issue being that nobody should have

21   to spend money to comply with the activities that are required

22   by the order --

23        THE COURT:  Right.

24        MR. BERNICK:  -- until that's been clarified.

25        THE COURT:  Right.

Colloquy                          Page 75

1      MR. BERNICK:  So if we created a 30 day window before

2   any substantive activities are required, and during that period

3   of time we can hash out who is going to be paying what, that

4   might be the way to go.

5      THE COURT:  Okay.  That's fine.  I think that's

6   necessary.  I really -- I don't lightly impose costs against

7   the estate, but I think in this instance it's just not going to

8   get off the ground unless I do it.  And I think the debtor's

9   just going to have to bear the brunt of this litigation.

10      I know it's odd to be paying for litigation against

11   yourself, but I don't know how else, in this instance, to get

12   this done.

13      MR. BERNICK:  If we go back -- just an observation

14   and suggestion, but if we go back to the class context,

15   typically class counsel and the named representatives,

16   everybody knows it's class counsel, bears the full cost of

17   prosecuting a class action.

18      THE COURT:  But they also get the upside.  And the

19   problem --

20      MR. BERNICK:  Well, but see, if they're correct, if

21   they're correct about their contentions here, they will get the

22   upside.

23      And you don't get -- you get the upside subject to

24   the ultimate approval of the Court with regard to the

25   contribution they've made to the case.

1     THE COURT:  That's why I want a budget.

2     MR. BERNICK:  Yeah, but here's where I was going.

3  What if we, given where we're at now, which is that we do not

4  have that determination, and yet we do have some finding on

5  burden, what if we focus on, is the estate bearing the

6  financial burden associated with expert expenses and court

7  reporting and the like --

8     THE COURT:  Yes.

9     MR. BERNICK:  -- rather than to take the full nugget

10  and also incur the cost of lawyer time?

11     THE COURT:  Well to the extent that --

12     MR. BERNICK:  I --

13     THE COURT:  -- I -- the committee hasn't even heard

14  this yet.  But to the extent that the law firms are willing to

15  do something, I'll call it on a contingent fee basis for lack

16  of a better term, where if they win then the debtor absorbs the

17  costs of the fees, and if they don't then -- well I don't know

18  that that's necessarily going to work.

19     I wouldn't be opposed to that kind of an order.  But

20  with respect to the expenses and the out-of-pocket costs, yes,

21  this estate is going to have to bear -- and be china walled

22  essentially from what those expert opinions and contacts are

23  with the committee members, as it would be in normal litigation

24  until the appropriate disclosures have to be made.

25     So I'll hear from the committee --

Colloquy                                    Page 77

1    MR. BERNICK:  So in 14 days, both sides make a

2    submission to the Court -- actually what's probably best is for

3    them to make their submission first.  And then we'll respond in

4    seven days from that and that will still be in time for the

5    next status conference before the Court.

6           THE COURT:  Well, let me hear --

7           MR. BERNICK:  Okay.

8           THE COURT:  -- from them.

9           MR. SOBEL:  Good afternoon, Your Honor.  Thomas Sobel

10   for the Price and Barbanti Zonolite cases.  And counsel

11   obviously for the committee will speak separately.  I think in

12   the indications that the Court indicated at the beginning of

13   this colloquy, if you will, it probably makes best sense for

14   the Court and all concerned to take a couple of steps back to

15   absorb the possibility of approaching this issue from a

16   different point of view.

17          Because, obviously, you've focused on one of the --

18   one of, but I'll get to a couple of the other fundamental

19   issues that are outstanding regarding proceeding the way that

20   Grace proposes in this bankruptcy.

21          And therefore, what I would ask you to do is not to

22   be entering any type of order until the committee has had a

23   opportunity to absorb what the Court has said, as well as the

24   Zonolite claimants.

25          THE COURT:  Well I mentioned this at the last

Colloquy                          Page 78

1   hearing.  I hope you were absorbing it since the last hearing.

2   Because this -- this is not the first time this has come up.  I

3   raised it at the last hearing, that if it wasn't resolved in

4   all probability I was going to either require this property

5   damage committee or appoint a new one to pick up this

6   litigation.

7          MR. SOBEL:  Right.  No, I understand that.  But

8   all -- I guess what I'm hearing though from Grace's point of

9   view is before we have anything in place about who the lawyers

10  are going to be, how they're going to be paid, what the precise

11  issues are going to be, enter an order first that governs the

12  nature of the proceeding.  And all I'm suggesting is, that we

13  first try to figure out who the parties are going to be, who

14  the lawyers are going to be, so that those parties and those

15  lawyers can have a opportunity to be heard on the merits of the

16  order itself.

17         And rather than my arguing right now, and --

18         THE COURT:  I thought that issue was determined.  The

19  only reason that I even have an order entered at the last

20  hearing, and it was proposed, is because there was no agreement

21  as to whether or not I needed to go forward with a class

22  certification, because nobody had filled anything that gave me

23  a vehicle to look at these -- that's all.  So as far as I'm

24  concerned no one had any other objection.

25         The debtor is trying to move the case by filing

1   particular claims.  Anybody else can file a claim, there's no

2   bar to people filing claims.  If they want to file claims and

3   get involved in this on an individual basis, they certainly

4   can.

5           MR. SOBEL:  Okay.  All I'm suggesting, Your Honor, is

6   that if there are going to be lawyers who are appointed to

7   represent particular people, before the Court frames the issues

8   to be tried --

9           THE COURT:  Oh.

10          MR. SOBEL:  That's what I'm -- that's all I'm

11  suggesting.

12          THE COURT:  Okay.

13          MR. SOBEL:  Okay.  And there are some things that are

14  implicit in the order that Grace has put before the Court that

15  may or may not dictate the actual issues to be tried and what

16  the content of that is.

17          So all I'm simply suggesting is, you can wait -- I'm

18  suggesting you could entertain waiting to enter that order

19  until such time as the lawyers have been picked there.

20          THE COURT:  Certainly.

21          MR. SOBEL:  That's all.

22          THE COURT:  I'm willing to do that.

23          MR. SOBEL:  Okay.

24          THE COURT:  It seems to me that that makes sense.

25          MR. SOBEL:  Right.

Colloquy                        Page 80

1      THE COURT:  But I want the lawyers picked promptly.

2      MR. SOBEL:  I understand that.  And I think it's also

3  important because it's going to be fundamental in the analysis

4  I would think for anybody who's thinking about getting involved

5  here as to exactly what it is that's being proposed by the

6  Court, recognizing that Grace obviously wants to undercut it.

7      I've heard quite clearly that the Court would

8  consider paying the expenses and the you know the expert

9  expenses and the other costs of the litigation.

10     As we know from only briefly going through the

11 submissions that Grace has made, Grace has also spent many

12 hundreds of thousands of dollars on lawyers and professional

13 staff looking at the Zonolite issue during the bankruptcy

14 itself.

15     And I would suggest that if you're willing to give

16 indications to the parties as to what this Court has in mind

17 appointing counsel to do, and whether it's going to be on an

18 hourly basis or a contingent basis, that's something we would

19 clearly need to know before making an assessment.

20     What I would simply suggest, if the Court is willing

21 to go down this road, I'm not saying this for, you know, myself

22 or my own law firm or any other particular law firm, but that

23 whatever it is that the Court has in mind, be pretty clearly

24 indicated so that we can, when we go back and speak to other

25 lawyers and confer with Grace about how to proceed.  I mean,

1   frankly, face-to-face meetings with Grace before the next

2   hearing, not simply submissions being sent in from Grace to

3   which we would have to respond, be the order of business.

4          THE COURT:  I perfectly well endorse the concept of

5   face-to-face meetings to get this hammered out.  In fact, maybe

6   I'll tell you to come to Pittsburgh where I can lock you in my

7   attorney conference room and hide the key until you get

8   something on paper to be submitted.

9          Absent that, yes, I think face-to-face meetings are a

10  good idea.  With respect to how to pay somebody, until I get an

11  application, I don't think I can offer an opinion.  I think

12  class actions typically do these things on a contingent basis,

13  because there is an upside.  If you win, you get the lion's

14  share of whatever the share of the attorney proceeds would be,

15  you have opportunity to come before the Court to assess those

16  fees, and so typically they are contingent.

17         I think by requiring the debtor to pick up the costs

18  of expenses, that's going a long way.  I don't remember who was

19  here who made the statement at the last hearing, but I think an

20  estimate was given to me, that expert fees for the creditors

21  may be in the neighborhood of $500,000.  That's a big liability

22  for this estate.

23         I want a budget.  Quite frankly, it seems to me that

24  if I get a budget, I don't care how it's spent.  If the debtor

25  tells me that they'll spend $500,000 for this litigation and

1    it's $100,000 in attorney's fees and $400,000 in witness fees,

2    that's okay with me.  If it's 100,000 in witness fees and

3    400,000 in attorney's fees, that's okay with me.  What isn't

4    okay with me is exceeding that $500,000 by one penny, if that's

5    the amount that the debtor is willing to come in.

6            Now Grace may have a different view, other parties,

7    the U.S. Trustee may have a different view.  You're asking me

8    for my guidance.  I don't care how you do it, just so you get

9    to the merit of what we need to get done so that the people you

10   represent have some ability to get into this Court, if it's

11   appropriate for them to be here and to get the remedies they're

12   asking for if they can prove that, in fact, there has been a

13   hazardous product that they've been exposed to.

14           MR. SOBEL:  Okay.  So I think I hear the Court saying

15   two things then.  On the fee side, if you will, the notion is

16   to have the Court entertain an application --

17           THE COURT:  Yes.

18           MR. SOBEL:  -- and to react to that.  And that makes

19   sense.  Obviously, as the Court is aware, in contingent fee

20   type circumstances, if you will, usually there's a common fund

21   that's created from which the Court would look to pay the fee.

22   In here, if there is to be a contingent fee and I don't know if

23   a law firm would propose one.  But if there were to be one, the

24   law firm would have to grapple with the notion that there are

25   only ten claimants whose cumulative claim is worth roughly

Colloquy                           Page 83

1    $30,000 or so.  And so one would have to be looking at the

2    situation in a somewhat different way, if you will.

3         THE COURT:  Well I understand that, but for one fact.

4    It's been alleged that there are thousands of people who were

5    subject to these class actions.  There is no bar to any of

6    those filing their claim if they choose to join this

7    litigation, either by way of having a committee pick up that

8    cost under this order, or by having their own counsel appear,

9    and presenting their own view on the science side to this

10   Court.

11        So I haven't set a bar date, simply because I

12   don't -- I can't craft -- I don't mean the parties can't craft,

13   I can't approve a notice when I don't know who's going to be

14   subject to it and the appropriate format of notice.  We need to

15   get this liability determination done in order to look at the

16   bar date issues.  And that's what the purpose is.  But it will

17   be binding.  Unless somebody is going to come in down the road

18   and tell me that for some reason I wasn't given appropriate

19   expert testimony and they need to do this all over again, I

20   expect that this trial is going to be the model for how

21   debtor -- the debtor is going to be expected to deal with

22   Zonolite claimants going forward through its plan.

23        So if other people want to join, you represent them

24   folks, get them in.  If they don't want to join, that's the way

25   it will be.  But we're doing the common issues trial.

Colloquy                                    Page 84

1       MR. SOBEL:  Another question was, and I heard the

2   Court say this, and I just want to make sure I understand this,

3   is the Court looking for a budget from the debtors as well as

4   the Zonolite claimants?

5       THE COURT:  Well I think the -- whoever the attorney

6   is who is going to be selected to do this I think is going to

7   have to propose the budget, and then I think you're going to be

8   bargaining with the debtor about how to set that budget.

9       I expect that I'm going to get the information and

10  I'm either going to say yes or no.  And, you know, if you

11  agreed on something, then in all probability I'm going to say

12  yes.  If you haven't, I'm going to take a look at both your

13  positions and say, this is the way it's going to be and I'm

14  going issue an order.  If you choose to appeal, you do, you

15  know.  While you're appealing we're going forward with the

16  trial, so --

17      MR. SOBEL:  Thank you.

18      THE COURT:  Good afternoon.

19      MR. SAKALO:  Good afternoon, Your Honor.  Jay Sakalo

20  on behalf of the property damage committee.  A couple of

21  things.  Today is the first time that we've heard that the

22  committee would be asked potentially to do this.

23      THE COURT:  No, it is not.  It was brought up at the

24  last hearing.  I specifically brought it up.  Mr. Vanal

25  (phonetic) was here.  I addressed him specifically and told him

Colloquy                          Page 85

1    to look at this issue.  Okay.

2            MR. SAKALO:  I understand that.  The committee has

3    not made a decision among the committee members as to whether

4    or not they would be proceeding down this path of litigation

5    with the Zonolite claim which would proceed.  So we ask, in

6    agreement with Mr. Bernick has asked, to have a few days to

7    meet as a committee to discuss new issues that were raised

8    today, including a budget, including selection of counsel, as

9    to whether or not it would be our firm or another counsel on

10   behalf of that.

11           I mean in that regards, if we can get an expedited

12   copy of this transcript to provide to our committee members,

13   that would be very helpful.

14           THE COURT:  Sure you can order an expedited copy,

15   that's not a problem.

16           MR. SAKALO:  Thank you.  Excuse me, Your Honor, just

17   a housekeeping -- could they prep the last part of the

18   transcript first.  In other words, we've got several hours of

19   Grace before we got to this.  This is what we need expedited.

20           THE COURT:  From Agenda Item Number 9 on?  That's

21   what you want?

22           MR. SAKALO:  Yes.

23           THE COURT:  Can you order an expedited transcript for

24   them?

25           THE CLERK:  After the hearing, I'll give them a form