Colloquy

1   to fill out.

2              THE COURT:  All right.

3        MR. SAKALO:  Thank you.

4        MR. BERNICK:  Your Honor, turning back to the order

5   that we've tendered and Mr. Sobel was very kind of -- I don't

6   want to say this in a negative way, but smooth about the idea

7   that we shouldn't be entering that order today.  That order,

8   all it does is to reflect the output of what are now two

9   separate hearings.

10             Remember, there was the hearing that was designed to

11   fix a schedule to have the parties exchange a schedule.  That

12   was then done.  We then came back in April and we resolved the

13   issues that pertain to that schedule, so it is a, any and all

14   aspect of that was already the subject of correspondence

15   between myself and Mr. Sobel and argument before the Court.

16             THE COURT:  Well in terms of the scheduling, I don't

17   think that's the issue.  I think what he's saying is, you

18   proposed that the debtor or someone would start the ball with

19   respect to the issues that were going to be on the merits for

20   the science side.

21             MR. BERNICK:  That's different.  All that we want to

22   do with the schedule is to get the schedule as it reads in

23   place now phased out by 30 days.  At some point down the road,

24   there's going to have to be some discussion about exactly how

25   to frame the issue that Your Honor's going to take up.  And

Colloquy

1   there's no particular rush to do that, but we want the schedule

2   in place that defines in broad parameters what this process is

3   going to be about, anticipating that there will inevitably be

4   further discussion on that subject.

5          But it's very critical to get that schedule in place,

6   because it's got some bite to it.  It says, here's what's going

7   to happen.  And here's what I'm afraid of.  We are in a very

8   similar situation, almost an identical situation, with respect

9   to the fraudulent conveyance claims that are now being

10  litigated before Judge Wolin.

11         There, too, we had a scheduling order and there, too,

12  we now have a process of trying to determine who it is that's

13  going to represent the claimants in that matter, and what kind

14  of fees and budgets are going to be appropriate.  They were

15  decoupled.  We put together a schedule that included a trial

16  date and defined the whole thing, all nine yards, before we

17  decided finally who is going to represent the estate and how

18  much it's going to cost.

19         And it was a very good idea.  These are still dealing

20  with the question of what the budget is going to be and who's

21  going to be doing what.  That probably is not going to be

22  resolved, probably for several weeks.  So in like fashion here,

23  we are just so loath to see entry of an order that has been

24  negotiated and litigated already, held up pending a

25  determination about what some kind of budget is going to be.

Colloquy                              Page 88

1    THE COURT:  All right.  Well let's talk about --
2    let's forget the budget issue just for a minute and talk about
3    the scheduling.  The first thing I need is something that sets
4    the stage for the litigation.  So is the debtor going to file
5    the objections to claim?  Is the committee?  Who's --
6    MR. BERNICK:  We will file our objections to claims
7    in ten days.
8    MR. SOBEL:  I don't know if you -- well, I guess Mr.
9    Bernick's talking, so I don't necessarily agree with the
10   process he just indicated.
11   THE COURT:  Okay.  Oh, well, tell me what you don't
12   agree with first?
13   MR. SOBEL:  Well, I think, first, the notion about
14   proceeding by way of the debtor filing the claim rather than
15   the claimants filing the claim is flawed right from the outset.
16   THE COURT:  They have a opportunity to amend.  They
17   had it from the beginning, they haven't done it.  If they want
18   to amend, get them amended in ten days.  And then Mr. Bernick
19   will have ten days after that to file objections to them.
20   They've got that right under the Bankruptcy Code.  Nobody's
21   taken that right away from them.
22   What I'm not going to do, though, is certify or get
23   the certification of class issues, regardless of what kind of
24   proof of claim they get to, until we get the science side
25   decided.

1        At that point, when the science determination is

2   made, if it's relevant, I will then get to the class

3   certification issues.  That's what was agreed upon on the

4   record before, that's how we're going to handle it.  That's the

5   reason I'm imposing the cost on the estate.

6        MR. SOBEL:  If I may, Your Honor.  The reason that

7   the Code only provides the debtor the opportunity to file a

8   claim after claimants have had a reasonable opportunity to do

9   that, is so that claimants can know what they have in store for

10  them at the time that they file their claim.

11       THE COURT:  Well these ten know, because the debtor's

12  filed them and served them.  So these ten people know, number

13  one.  Number two, in terms of a reasonable opportunity, this

14  case is over a year old.  They've had since the day the case

15  was filed to file a proof of claim.

16       MR. SOBEL:  Well if I may, Your Honor, there are some

17  people who are listed here, okay, who are people who filed a

18  claim, in order to prosecute a class case, and did so knowing

19  that they'd be able to have the benefits of the Court to be

20  able to afford them that opportunity.

21       Now, until there is some other procedure that is put

22  in place and that they can at least understand whether or not

23  they themselves have to personally go out-of-pocket on things,

24  or whether they have to pay their lawyers, if they have to run

25  certain expenses --

1    THE COURT:  I just put that in by saying that the

2    committee is going to hire special counsel to defend these

3    objections that the debtor is going to file.  If these

4    claimants want to file proofs of claim, or if they want to file

5    on behalf of additional claimants so that they join, they've

6    got ten days just for the purpose of getting them into the

7    science class.

8        I'm not setting a bar date that bars people from

9    filing proofs of claim in the future.  But to get into this

10   science side, you've got ten days.  Within ten days thereafter

11   the debtor's going to file objections to them, and we're going.

12       MR. BERNICK:  And in the event -- in any event, we

13   will file objections to the claims that already had been

14   brought here, in the event that they're not superceded by

15   another claim.

16       So one way or another, within 20 days, we will have

17   objected to claims that we can be working with in the case.

18       MR. SOBEL:  If I may, again, Your Honor.  What I

19   would suggest, before we start moving down this track, because

20   there might be a way to avoid the adversarial nature of,

21   frankly, the Zonolite claimants' objection to this process that

22   is before you, is to have a cooling off period where we can see

23   if we can find out who the lawyers are going to be, find out

24   how they're going to get paid, then tee these issues up.

25       Otherwise, what I am confronted with is a situation

1    where the Court, with all due respect, is purporting to

2    exercise jurisdiction over ten individuals, no one of which I

3    know for certain has been served any pleading, personally.

4    They have been given documents to their lawyers and the lawyers

5    have been asked in this order to please hand this to somebody,

6    because you might have to go to court, thousands of miles away

7    from Minnesota or Massachusetts, or --

8            THE COURT:  That's what happens when a debtor files

9    bankruptcy.  You file your claim where the debtor is.

10           MR. SOBEL:  That's right.  But what most of these

11   people would do would be file a class proof of claim.

12           THE COURT:  Fine, they can file a class proof of

13   claim.  I've already said, they can file whatever they want.

14   I'm not getting to the class certification issues until after

15   the science side has been decided.  The debtor specifically

16   didn't attempt to file class proofs of claim --

17           MR. SOBEL:  Right.

18           THE COURT:  -- specifically so that we don't have to

19   address the class issues, but we have representative

20   plaintiffs.

21           But they don't have a claim against this estate.  I

22   don't know why they're representing the plaintiffs in a class

23   action.

24           MR. SOBEL:  I guess all I can say, Your Honor, is I'm

25   more than happy, and in fact, I'm willing to meet with Mr.

1   Bernick and go through a process in conjunction with the

2   property damage creditors committee, for us to be able to

3   figure out if there's a way to organize this in a manner that

4   it works.

5            THE COURT:  All right.

6            MR. SOBEL:  In the meantime, okay, what I would

7   suggest is that we either hold, or simply you can rule upon the

8   objection that the claimants have filed, because I do think

9   that as a function of formalities, if you will, Your Honor, in

10  making sure that the position of the claimants as it currently

11  stands is articulated.

12           Our position is that the process is flawed in terms

13  of having Mr. Bernick file the claims, having Mr. Bernick do

14  the objecting, having Mr. Bernick try to frame the issues for

15  trial, having Mr. Bernick frame what issues will go into

16  discovery and won't go -- what will or won't be a subject of

17  discovery.

18           THE COURT:  Fine.  I don't think that's a fair

19  recitation, from my understanding, of what's gone on in prior

20  hearings here.  Yes, the estate filed proofs of claim, because

21  certain individuals haven't done it.  And, yes, the estate or

22  any creditor has the right to object to those proofs of claim.

23  And, yes, those claimants have the right to amend the proofs of

24  claim, to file superceding proofs of claim, other claimants

25  have the right to file proofs of claim.

1     There is no due process problem.  There's no

2   violation of the rules.  It's getting the things teed up the

3   way everybody at the April hearing, I believe, agreed to get it

4   teed up, which is to do the science trial first.  We need a

5   vehicle.  This is the appropriate -- is an, not necessarily

6   the, but an appropriate vehicle.

7     If you have a better idea, then let's hear it.

8     MR. BERNICK:  But, Your Honor, this is the difficulty

9   is that back in March, Mr. Sobel and Mr. Scott were both

10   present.  Mr. Scott and I exchanged correspondence.  We went

11   through all of these different things.  In April, Mr. Scott was

12   here and Mr. Sobel was not.  And we went through all of these

13   different things.

14     All the arguments that he's making about the

15   appropriateness of the claim procedures, I think Your Honor has

16   aptly stated, are just contrary to what the rules are.  And we

17   briefed that, and they moved to strike the claims, they've

18   moved to strike the claims.  We have responded to that motion,

19   and that motion should be denied.

20     THE COURT:  The motion to strike the claims is

21   denied.  I thought that this record was clear enough, to the

22   extent that I didn't say it affirmatively, the motion to strike

23   the claims is denied.  It's denied without prejudice to

24   amending them, substituting them, to refiling them, to having

25   other people file their own proofs of claim, as I stated on the

1    record.  There is no prejudice to anybody's rights.  But right

2    now, these are proofs of claim, and the debtor is going --

3    apparently going to file objections to them so we can get to

4    the science issue.

5          That's the only issue I'm going to take up, until we

6    get the liability on the hazardous nature of this product

7    determined.  With respect to the debtor controlling the issues,

8    of course the debtor isn't going to control all the issues for

9    litigation, but the debtor is going to file an objection to the

10   claim and that will set the parameter.  At that point in time,

11   everybody has a opportunity to state their position.

12          MR. SOBEL:  If we go down in track, Your Honor,

13   again, thank you for the clarification about the motion being

14   denied.  I just want to make clear, that I think that there

15   ought to be, after there is selection of counsel, in terms of

16   who is going to defend the rights and prosecute the rights of

17   many hundreds of thousands of homeowners in the country, okay?

18          That there needs to be the opportunity to be able to

19   put before this Court what the proper scope of discovery should

20   be and what the issues should be at the trial.

21          I'll give you an example.  Earlier this month the

22   United States EPA issued a ruling that it is going to require

23   that 800 homes in Libby, Montana have the Zonolite attic

24   insulation taken out of their homes in connection with the

25   Superfund Clean Up.

1    It's extraordinarily rare to go into homes, actually,

2    as a part of the Superfund site, okay?  Now the EPA did that

3    without having to enter a formal order about an emergency to

4    the immediate public health.

5        What they did do is they recognized that it was

6    something that made sense to do, it was something that made

7    sense to do under the circumstances.  Like I say, they could

8    have left it there.  That should put us and have us be very

9    mindful that there are serious people out there, certainly

10   connected to the Federal Government, that believe that there

11   are certain kinds of property damage claims that may or may

12   not, as Mr. Bernick would have it, say, if you walk into a

13   house that has Zonolite attic insulation, or just the people

14   who live there, that they're going to be dropping left and

15   right.

16       THE COURT:  Well that might -- maybe they'll want to

17   participate in the litigation.  I mean, if they do, they do.

18   But nonetheless, until there is some scientific proof that

19   excessive liability, we can't get on with the formulation of a

20   plan in this case.

21       We need to get our arms around who the appropriate

22   claimants are, how many of them there are, and the kind of

23   relief that they're requesting, and it eventually determines to

24   be entitled to.

25       And until I get the science side done, I can't go

Colloquy                                    Page 96

1    froward with the -- it doesn't make any sense to go forward

2    with the rest.  So if you've got a better vehicle, Mr. Sobel,

3    fine.  Let's hear it.  Otherwise, let's get on with something

4    that makes sense so we can get the science decided.

5         In terms of identifying the specific issues, I wholly

6    agree.  Until your potential trial counsel is selected, it's

7    not appropriate to define the issues, but that doesn't mean

8    that the process can't start.

9         MR. SOBEL:  Right.  And I'm in favor of the

10   face-to-face, Your Honor.

11        THE COURT:  Fine.

12        MR. BERNICK:  But that -- and that's the process is

13   what brings me then back to the order that we'd like to get

14   signed.  We will submit a new order that bumps all the dates by

15   30 days.  The order will be otherwise absolutely ident --

16        THE COURT:  I don't know that your 30 days is going

17   to work.  That's what I started to try to get to before Mr.

18   Sobel's interposed an objection to the process.

19        We're giving people ten days to file proofs of claim,

20   amend proofs of claim, or whatever.  And the debtor ten days

21   thereafter --

22        MR. BERNICK:  Right.

23        THE COURT:  -- will file and serve objections.

24        MR. BERNICK:  Right.

25        THE COURT:  Okay.  The Rules require 30 days notice

Colloquy                              Page 97

1    before the Court hears those objections.  That's the problem.

2    Now so I have a preliminary hearing on those objections that

3    won't hit until the July calendar under this schedule.

4           Meanwhile, I think the discovery thing can go

5    forward, but until they have -- the claimants have a

6    opportunity to file responses to those objections, I'm not sure

7    we're going to know what the issues are.  I think you're going

8    to need to push the dates back probably 60 days, not 30.

9           That's where I was going with this, to try to get to

10   the issues.

11          MR. BERNICK:  Okay.  We'll take our order and we will

12   move back all dates by 60 days.

13          THE COURT:  Sixty days.

14          MR. BERNICK:  And then resubmit it.

15          MR. SOBEL:  So long as Your Honor, that is being done

16   without prejudice to whoever -- if there is anybody, who is

17   representing the group of whoever it may be, later on down the

18   road, and can revisit that order.  Because the order right now

19   frames the scope of discovery, frames issues regarding experts

20   and all the rest of that.

21          And all I'm suggesting is, whoever ends up being

22   trial counsel might have a somewhat different idea about how to

23   proceed.

24          THE COURT:  Where is the order?

25          MR. BERNICK:  The order was attached to -- we gave

Colloquy                                    Page 98

1   you -- it's attached to the notice.  It's Docket 1981.

2              THE COURT:  Where in the agenda binders?

3              MR. BERNICK:  It's -- let me give it to you.

4              THE COURT:  Thank you.

5              MR. BERNICK:  Your Honor, I'd like to deal with that,

6   because this does not sit well in the mouth of counsel, given

7   exactly how this order was put together.

8              All that's happening is that we are going through the

9   process of determining who it is that's going to represent what

10  Your Honor has described as really being the -- in a sense, the

11  interests of the claimants more generally.

12             The Zonolite interests more generally with respect to

13  going forward here.  Given the economics and given the burden

14  and given expertise and the like.

15             Mr. Sobel and his firm, and all of the other firms

16  that have been involved with regard to Zonolite claimants have

17  represented since the very beginning of this case, that they

18  are here on behalf of Zonolite claimants generally.  Not any

19  particular Zonolite claimant, Zonolite claimants generally.

20             And we have dealt with them in that capacity

21  repeatedly.  There have been all kinds of briefs and motions

22  that have been filed before the Court and heard.  I sat down

23  with Mr. Sobel, it was a cooperative effort.  I exchanged

24  correspondence with Mr. Sobel on all of the issues and of the

25  matters that are now in that order.  We wrote letters back and

Colloquy                                    Page 99

1   forth.  And the one issues that emerged was the scope of fact

2   discovery and then also phasing their expert reports by 30

3   days.

4           I agreed to phase their expert reports by 30 days,

5   and with respect to the issue of the scope of fact discovery,

6   Mr. Sobel was not here, but that was resolved last time in

7   April.

8           So the order that we've tendered you represents the

9   output of myself, and people who purport to represent all

10  Zonolite claimants in this case.  That's all there was.  It was

11  all done.

12          THE COURT:  All right.  The only issue that is framed

13  is -- that I see, is in paragraph 2A of the order, and it says:

14          "That discovery shall be limited to the issue of

15      whether ZAI presently poses an unreasonable risk of harm

16      to the occupants of the homes..."

17          Then it goes on to set the date.

18          MR. BERNICK:  Right.

19          THE COURT:  Okay.  What's the issue?

20          MR. SOBEL:  Well that's the only substantive

21  discovery limitation, yes, Your Honor.

22          The issue would be this, if I were -- the issue,

23  first of all, by the way, is we honestly don't know who the

24  lawyers are going to be.  Okay?  So I don't want to be

25  pretending that I'm now substantively arguing the position for

1   everybody.

2         Whoever that lawyer might come along and say -- an

3   intelligent lawyer would say, I know what's going to happen

4   with respect to this limitation, because the documents are in

5   Boston, in fact, they're right across the river from where my

6   office is, and I've been staring at it for 14 months, wanting

7   to get a hold of them, okay, because they were -- the discovery

8   got terminated, obviously, when the bankruptcy got filed.

9         If this limitation stays in here, it will work a

10   significant harm to the claimants in a variety of ways.  First,

11   you won't be able to just untangle what boxes of documents are

12   going to on risk of reasonable risk of harm to occupants of a

13   home, as opposed to for instance, just creates a pryable

14   (phonetic) substance or something that can become airborne and

15   has certain general kinds of information.

16         From documents that, for instance, might pose an

17   unreasonable risk of harm to people who go to work at the

18   place, or an unreasonable risk of harm to people who go to

19   renovate the home.

20         THE COURT:  Well I think the issue in this case is,

21   because apparently these main plaintiffs are homeowners.

22         MR. SOBEL:  But these homeowners, for instance, might

23   want to sell their home some day, and if they want to sell

24   their home, an astute building inspector, or home inspector

25   says, you might have vermiculite up there, and you're going to

1    have to have that removed in order to sell your home.

2              THE COURT:  Yes.

3              MR. SOBEL:  That would be a property damage to them,

4    even though it may not be -- prevent having an unreasonable

5    risk to them.  Of if they had a builder come in and say, you

6    know what, you want to build a second floor?  But it's going to

7    cost you to get rid of that ZIA in there.  Even though it may

8    or may not right now be a harm to you.

9              THE COURT:  This isn't -- okay.  I see.  I did not

10   understand this to be saying that it was a personal injury to

11   the occupants of the home.  It's saying unreasonable risk of

12   harm.  If I simply strike the word occupants and say, in the

13   home or facility, then that probably does what you need to get

14   done.

15             MR. SOBEL:  Fine.  And then that starts.  And then

16   what I'm suggesting is, Your Honor, if I may, okay, because

17   what I want to --

18             THE COURT:  Wasn't this agreed on?  I mean this is

19   supposed to be an agreed order, and you weren't even here, Mr.

20   Sobel.

21             MR. SOBEL:  No.  Your Honor --

22             MR. BERNICK:  This exact issue, this exact language

23   got raised.  Exact.

24             MR. SOBEL:  Which goes to show why we should first

25   find out who the lawyers are who are going to protect these

Colloquy                              Page 102

1    people's interests before these kinds of issues get resolved.

2    I had a stomach flu last month.  I'm sorry I couldn't be here.

3            I would have had a different opinion as to what -- to

4    how this goes.  My point is not that my view is right or -- and

5    Mr. Scott's was wrong, or Mr. Bernick is right or wrong, it's

6    just that, whoever is vindicating the interests of hundreds of

7    thousands of homeowners ought to be the person who contributes

8    to the decision.

9            THE COURT:  Well, number one, I agree with that.

10   Let's do this.  I want to get a discovery order in place.  So

11   we will simply, at the moment, start with fact discovery, and

12   then I think there is an issue about -- I think, Mr. Bernick,

13   what I need is the objection claims so that we can set in that

14   contents what the litigation cost was going to be.

15           By then the -- whoever's going to represent the

16   Zonolite plaintiffs will have counsel in place.  I can see what

17   responses they get.  I think it may be more appropriate to be

18   framed in that sense.  I -- apparently, it's word choices once

19   again.  I mean, you folks are going to cost more in attorney's

20   fees, I'm telling you now, and that's not what I'm paying for.

21           So please understand, I'm not going to get into word

22   smithing disputes.  I'm not paying for it for the debtor, and

23   I'm not paying for it for the other attorney.  No one in this

24   state is going to get paid for word smithing, and if I have to

25   spend the rest of my life going through fee petitions to make

Colloquy                          Page 103

1   sure I don't compensate you for it, I will.

2          So, please, do me a favor, don't ask for it.  I'm not

3   going to through this with this.  I expect more out of you

4   folks than this.  Mr. Bernick, let's go back to the issues.

5   Let's get the objections filed, set the response date and at

6   that point in time we will do an order that will, I think, set

7   the discovery parameters.

8          My view at this point is, that regardless of when we

9   get to it, fact discovery should end by the end of this year,

10  sometime in January, thereabouts.  Whatever the fact discovery

11  is going to be, it shouldn't go on beyond that.

12         So by not getting an agreement as to what the scope

13  of discovery is going to be, everybody's hurting themselves.

14  So my expectation is, I think the order can probably wait one

15  more month, because it's not going to hurt anybody if it does.

16  Next month, I am entering an order, whether it's agreed upon or

17  not.

18         If it's agreed upon, all the better.  If it isn't,

19  I'm entering an order anyway that will control what the process

20  is going to be.  I said next month.  That's probably not

21  correct, based on the objection, it's probably going to be on

22  that July date.

23         Today is the 20th.  Let me work out the date.

24  Amended claims, if anybody's filing one, just to do the science

25  side, for the purpose of setting the science trial, are due by

Colloquy                          Page 104

1   May the 30th.  The debtors, or anybody else's, objections are

2   due by June the 10th, Mr. Bernick?

3          MR. BERNICK:  Fine.

4          THE COURT:  Okay.  Responses are due by July the 8th.

5   And the pretrial conference and status conference on the

6   objections will be on July the 22nd at -- Grace is at 10:00

7   that day.  And on that date, I will be entering an order, not

8   necessarily this one, if you agree upon one, fine.  But that's

9   the day I'm going to enter a discovery order.  My expectation

10  is discovery ought to be done in terms of the fact discovery

11  close to the end of the year.  January, okay.  But close to the

12  end of the year.

13         I don't want to interfere with your fraudulent

14  conveyance actions, but my understanding is that's -- the date

15  of trial in September.  So hopefully by then we should be well

16  on the way to moving into some other areas.

17         MR. BERNICK:  Now when are they going to get their

18  application in who they're going to retain and --

19         THE COURT:  That's next.

20         MR. BERNICK:  -- and the budget?

21         MR. SAKALO:  We're going to have a meeting this week,

22  Your Honor.  We can have 14 days?

23         THE COURT:  Okay.  Property damage committee -- if

24  your firm is undertaking this, I don't think I need to appoint

25  a special counsel, but I do want a litigation budget.  Under

Colloquy                                    Page 105

1   any circumstances, I want a budget.  Because as I said earlier,

2   once I approve that budget, that's it folks.

3           All right.  So the property damage committee is to

4   submit either an application to retain special counsel, or an

5   invitation that current counsel will be litigation counsel for

6   the objections to claims on the science trial by June 7th?

7           MR. SAKALO:  That's fine, Your Honor.

8           THE COURT:  I'm sorry, that -- yeah, that's 15 days

9   roughly, a little longer.

10          MR. SAKALO:  Fine.

11          THE COURT:  With a budget.  With a proposed

12   litigation budget.

13          Okay.  Now it's going to be filed.  How much time do

14   you want -- I think then you need a face-to-face.

15          MR. BERNICK:  Yeah, well then we should just -- I

16   suppose do this whatever date would be a date in anticipation

17   of the hearing on July 22, so we could take it up at the same

18   time, right?  So what's seven days prior to that hearing.

19          THE COURT:  If possible, I would like to get it done

20   sooner than that, because if you've agreed on a budget, then I

21   don't think there's going to be much issue with respect to

22   who's going to --

23          MR. BERNICK:  If -- I hate to say this, but if the

24   experience in the fraudulent conveyance side is any indication,

25   it may be difficult to reach agreement on a budget.  And here's

Colloquy                              Page 106

1    the big problem, is that everybody wants to be lead counsel and

2    have a budget that reflects that they're lead counsel.

3           We had three different law firms all saying that

4    they're lead counsel on different issues in the fraudulent

5    conveyance litigation and as a result the budget is horrific.

6           THE COURT:  Well let me make it easy.  There's going

7    to be one lead counsel, it's on a science trial, it's for a

8    limited purposes.  It's to do nothing else, so there will be

9    one firm.

10          Then if any local counsel under whatever that local

11   rule is, then I guess -- no, they won't because they can use

12   committee counsel as legal counsel.

13          MR. BERNICK:  Right.

14          THE COURT:  So one attorney, one lead counsel.

15          MR. BERNICK:  If you could just pick a day that's

16   convenient for Your Honor for a response would be more than

17   fine, I'm sure we'll comply.

18          MR. SOBEL:  I'd suggest, Your Honor, that we do it

19   sometime between the 8th, which is when the responses come in,

20   and the hearing date.

21          That way we can talk -- or whoever would talk about

22   the substance of the responses, the objections, and the budget.

23          THE COURT:  Okay.  You mean between the July 8th

24   date --

25          MR. SOBEL:  Yes.

```
                        Colloquy                    Page 107
1          THE COURT:  Okay.  So the debtor's response for the
2    asbestos property committee budget and attorney and anybody
3    else's response, why don't I make it due the same -- oh, no,
4    I'm sorry, Mr. Sobel, I got confused.  What I'm attempting to
5    do is give the debtor a opportunity to file some objection to
6    the budget if there is one.
7          MR. SOBEL:  Right.
8          THE COURT:  And I'd like you to get together to see
9    if you can agree before that objection, I think.
10         MR. SOBEL:  Yeah, I misunderstood.  I thought that
11   there would be -- well the objection date --
12         THE COURT:  Is July 8th.
13         MR. BERNICK:  But the due date for their application
14   is --
15         THE COURT:  June 7th.
16         MR. BERNICK:  June 7th.  So why don't we just take
17   some time -- a first -- a day within the first week of July
18   that's not a holiday, that day.
19         THE COURT:  Well Monday is the first.
20         MR. BERNICK:  Okay.  We can probably get something in
21   on the first.  That will give us three weeks to --
22         THE COURT:  To meet?
23         MR. BERNICK:  To meet, yeah.
24         THE COURT:  Mr. Sobel?
25         MR. SOBEL:  That's fine.
```

Colloquy                              Page 108

1       THE COURT:  So you're to have a meeting not later

2   than --

3           MR. SOBEL:  July 1.

4           THE COURT:  July -- I'm sorry, June the 30th.

5           MR. BERNICK:  Right.

6           THE COURT:  You're to meet to discuss the budget and

7   litigation issues, not later than June 30.  If you come up with

8   some better process than this objection to claim process, more

9   power to you.  I'm happy to hear it.  Otherwise, these are the

10  dates I expect to go through with this.

11          MR. BERNICK:  When you say that, I'm just -- we're

12  not opening up again the whole question of whether individual

13  claims are going to be --

14          THE COURT:  No.  No.  I'm trying to make this clear.

15  I want to avoid having to worry about the class certifications

16  until I find out whether there is a reason to certify class.

17  The way to do that is to look at the science issue.  I want to

18  get the science issue tried at the trial.  If the debtor loses

19  that trial, then the next thing I'm doing will be a class

20  certification issue.

21          If the debtor wins, then I'm going to look at the

22  class certification issues anyway, but probably with a

23  different view than I might have otherwise.  So the class

24  certification issues will be then, they're not permanently

25  delayed, they're simply being put on hold until I get the

Colloquy                          Page 109

1   liability issues determined.

2          MR. BERNICK:  I'd like to make one statement and

3   correction here, if I could for just a moment, unless there's

4   something else that Your Honor wanted to take up.

5          Mr. Sobel said that there was a very dramatic

6   announcement that the EPA was requiring the removal of ZAI from

7   800 homes in Libby.  And that's absolutely false, it was a

8   misrepresentation that was made to the Court.  What happened

9   was that there was a request for the EPA to act on an emergency

10  public health basis to do so, and it was declined.

11         The EPA decided not to do that.  What the EPA has

12  said, is that given the totality of other sources of airborne

13  asbestos, or asbestos in the area in Libby, from the mine and

14  the like, that they would make themselves available to

15  residents that wanted it, to take the ZAI out of their homes.

16  There was no finding that ZAI in their homes constituted a

17  health risk, a problem, or a defect.

18         Simply it's an undertaking that was made ancillary to

19  the other different problems that the residents of Libby had.

20         THE COURT:  Okay.  As I said earlier, you know, there

21  are other parties who want to get involved in this, I'm sure

22  I'll be hearing from them, Mr. Bernick.  Otherwise, I think

23  we've got a project in place that will work.  It's not elegant,

24  but it would work.

25         MR. BERNICK:  I think that's all that the debtor has.