IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

Response Deadline: **July 5, 2002**
Hearing Date: **July 22, 2002 at 10:00 a.m.**

## DEBTORS' OBJECTION TO WESCONN CO., INC.'S MOTION FOR RELIEF FROM STAY REGARDING CERTAIN CONSTRUCTION CONTRACTS (DOCKET NO. 2048)

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by their undersigned counsel, respectfully submit this objection to Wesconn Co., Inc.'s Motion for Relief from Stay Regarding Certain Construction Contracts (the "Motion"). The Debtors respectfully represents as follows:

### INTRODUCTION

1.  The Debtors oppose this effort by Wesconn Co., Inc. ("Wesconn") to subsidize its potential recovery over other unsecured creditors. In particular, the insurance policy which

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

covers Wesconn's potential court action (the "Wesconn Action") provides that the Debtors must pay a deductible. In addition, the Debtors' obligation to pay the deductible is ultimately secured by a letter of credit which, in turn, is secured by a cash collateral account. As a result, the Wesconn Action cannot be allowed to proceed without resulting in resources of the Debtors' estates being expended either by (i) the Debtors paying the deductible under the applicable policy out of assets of their estates or (ii) converting an unsecured claim of Wesconn into a secured claim against the Debtors' estates (which can be collected on immediately) if the insurance carrier ultimately draws on the letter of credit secured by the cash collateral account.

2.  This case should not be distinguished from the myriad other claims pending against the Debtors' estates. Indeed, this Court has already confronted similar situations in these chapter 11 cases. In particular, in the Motion for Relief from Automatic Stay filed by Edythe Kellogg (Docket No. 1651) (the "Kellogg Motion"), Kellogg sought relief from the automatic stay to pursue claims against the Debtors for alleged personal injuries suffered when one of the Debtors' employees allegedly injured Kellogg in a motor vehicle accident. Just as in the current situation, while there was insurance coverage for Kellogg's claim, the coverage was subject to the payment of a deductible by the Debtors, which payment obligation was secured by letters of credit pledged by the Debtors. Based in part on the existence of the deductible and the letters of credit securing the deductible obligation, this Court denied the Kellogg Motion.

3.  Just as with the Kellogg Motion, it is critical to the Debtors' successful reorganization that collateral litigation against the Debtors, such as the Wesconn Action, be stayed. Accordingly, Wesconn's Motion should be denied.

## BACKGROUND

4.  Wesconn has been a customer of the Debtors for a number of years, purchasing spray-on fireproofing coatings (the "Product") from the Debtors. Wesconn alleges that a particular batch of the Product caused problems with its equipment including an increase in the frequency of the normal and expected clogging of its equipment. Correspondence from Wesconn in the Debtors' records indicate that the problems with the Product began in November 2000. Wesconn alleges that as a result of the increased clogging, Wesconn suffered damages related to "construction delays, other trade conflicts, increased costs, delay claims, etc." in the amount of $418,000. Wesconn has not yet filed suit against the Debtors.

5.  The Debtors maintain commercial general liability insurance through an insurance contract (the "Policy") with certain affiliates of American International Group, Inc. (collectively, the "Insurers").[2] For periods from and after July 1, 2000, the Policy provides for a deductible in the amount of $250,000.00 per accident (the "Deductible"). The Insurers have provided the Debtors with a Deductible Coverage Endorsement (the "Endorsement") which obligates the Insurers to make initial payment of all sums which the Insurers are obligated to pay up to the limit of payment under the Policy. The Endorsement requires the Debtors to reimburse the Insurers for the amount of any payment made by the Insurers under the Policy, up to the amount of the Deductible (the "Deductible Reimbursement"), within fifteen (15) days after receipt of an invoice for the Deductible Reimbursement from the Insurers.

6.  The Debtors have obtained two letters of credit for the benefit of the Insurers with respect to the Policy (the "Letters of Credit"). The first letter of credit is issued by Bank of

---

[2] A copy of the Policy was provided to Wesconn on May 23, 2002.

America in the amount of $2,190,000 (the "BofA Letter") and the second letter of credit is issued by Chase Manhattan Bank ("Chase") in the amount of $730,000 (the "Chase Letter"). The Chase Letter is secured by a cash collateral account pledged by the Debtors in 105% of the amount of the Chase Letter. Under the terms of the Letters of Credit, if the Debtors fail to make payment of the Deductible Reimbursement according to the terms of the Endorsement, the Insurers are entitled to draw on the Letters of Credit up to the amount of the Deductible Reimbursement. Therefore, although the Insurers are required to pay the full amount of a judgment up to the limit of the Policy, the Debtors are responsible for payment of the Deductible Reimbursement. If the Debtors do not pay the Deductible Reimbursement within the time allowed under the Endorsement, the Insurers are permitted to draw on either of the Letters of Credit.

## ARGUMENT

### I.    No Collateral Litigation Should Be Allowed To Proceed

7.    As a threshold matter, collateral litigation against the Debtors should not be allowed to take place in these chapter 11 cases. This is a bankruptcy that is litigation driven. The whole reason that the Debtors were forced into bankruptcy was the morass of asbestos litigation mounting against them. The main challenge of these chapter 11 cases is to develop a comprehensive litigation plan to deal with these thousands of cases and to develop a plan of reorganization. Allowing collateral litigation such as the Wesconn Action to proceed is a distraction that prevents the Debtors from focusing on their reorganization plans.

8.    Courts have recognized that in mass tort cases, there is a critical need to stay all collateral litigation in order to allow debtors an opportunity to develop comprehensive litigation and reorganization plans.

> The purpose of this section [362] by its various subsections is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor.

A.H. Robins Co., Inc. v. Piccinin (*In re A.H. Robins & Co., Inc.*), 788 F.2d 994, 998 (4th Cir. 1986). Here, there are literally thousands of cases currently pending against the Debtors. These cases should not be litigated piecemeal in courts across the country; rather, they should all remain stayed for a period of time while the Debtors develop a comprehensive litigation plan to deal with them. Allowing the Wesconn Action to proceed will simply divert the Debtors' attention from the task of developing their comprehensive litigation and reorganization plans.

**II.    Utilizing the Debtors' Insurance Coverage Would Require the use of Estate Assets**

9.    Allowing the Wesconn Action to proceed could directly affect the assets of the Debtors' estates. In particular, if the Debtors pay the Deductible Reimbursement, the Debtors would be improperly expending the assets of their estates to allow one creditor to pursue a remedy at the expense of all other unsecured creditors. See *A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins & Co., Inc.)*, 788 F.2d 994, 998 (4th Cir. 1986). The Debtors, their estates and the Debtors' unsecured creditors should not be forced to subsidize Wesconn's efforts to augment its potential recovery over other unsecured creditors.

10.    If the Debtors do not pay the Deductible Reimbursement within the allotted time period, the Insurers will draw down on either the BofA Letter or the Chase Letter. The Insurers have the option of which letter of credit to draw upon as there is not an agreement regarding the marshalling of claims between the two letters of credit. If the Insurers draw on the Chase Letter, Chase will be bestowed with a secured claim which heretofore did not exist. Moreover, not only

will the secured claim be created, but such secured claim will be immediately satisfied by Chase's access to the Debtors' cash collateral. Thus, allowing the Wesconn Action to proceed does not merely substitute one unsecured creditor for another, but instead, may convert Wesconn's unsecured claim into a secured claim of Chase to the detriment of the Debtors, their estates and their unsecured creditors.

### III. The Moving Parties Have Failed To Show Sufficient Cause To Lift The Stay

11. The automatic stay is one of the most fundamental protections provided to a debtor under the Bankruptcy Code. See <u>Midatlantic Nat. Bank v. New Jersey Dept. of Environmental Protection</u>, 474 U.S. 494, 503 (1986). Pursuant to section 362(d) of the Bankruptcy Code, a movant must demonstrate sufficient cause to justify the lifting or modification of the automatic stay. Although the Bankruptcy Code does not define what constitutes cause, "courts generally consider the policies underlying the automatic stay [and] . . . the competing interests of the debtor and the movant." <u>In re Continental Airlines, Inc.</u>, 152 B.R. 420, 424 (D. Del. 1993). In particular, Delaware courts consider the following three factors in balancing the competing interests of the parties:

(i) the prejudice that would be suffered by the debtors should the stay be lifted;

(ii) the balance of the hardships facing the parties if the stay is lifted; and

(iii) the probable success on the merits if the stay is lifted.

<u>Continental</u>, 152 B.R. at 424. Sufficient cause to warrant the lifting of the automatic stay does not exist in this case.

#### (A) Substantial Prejudice Would Be Incurred By The Debtor If The Stay Were Lifted

12. The most important factor in determining whether to grant relief from the automatic stay to allow litigation to proceed against a debtor in another forum is the effect of

such litigation on the administration of the estate. See In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984); In re Penn-Dixie Industries, Inc., 6 B.R. 832, 836 (Bankr. S.D. N.Y. 1980). If the automatic stay is lifted to allow the litigation of the Wesconn Action, the Debtors' ability to administer their estates and these chapter 11 cases would be severely impacted.

13.  *First*, modifying the automatic stay to allow Wesconn to litigate the Wesconn Action against the Debtors would require the time and commitment of several employees, including the sales manager for the Wesconn account and employees with technical knowledge of the Product, as well as the Debtors' in house counsel, Michael Cohan, to supervise and monitor the litigation (the "Employees"). Such Employees would be required not only to divert their attention away from these chapter 11 cases to assist counsel in preparation of the Debtors' defense of the Wesconn Action, but many of them may be witnesses in the Wesconn Action. Moreover, because the Wesconn Action has not yet been filed, substantial written and deposition discovery will need to be conducted. Completing discovery will require substantial time and effort on the Debtors' part to search for and produce responsive documents, prepare and defend its employee witnesses, and research and draft discovery responses.

14.  *Second*, allowing the Wesconn Action to proceed would require the Debtors to bear the financial burdens of discovery and trial. The Debtors dispute Wesconn's allegations and anticipate the need to mount a vigorous defense and conduct discovery relating thereto. Allowing the Wesconn Action to proceed will require the Debtors to introduce fact and expert witness testimony and other evidence in order to defend against Wesconn's claims. Thus, relief from the automatic stay to allow the continuation of the Wesconn Action will result in the unnecessary depletion of the Debtors' assets and resources.

15. *Third*, if the automatic stay is lifted in this one case, it may open the floodgates of other motions to lift the stay. This one lawsuit relates to a defective product; there are thousands of claims pending against the Debtors relating to alleged product defects. Lifting the stay in the Wesconn Action may well prompt large numbers of asbestos claimants to seek relief from the stay to pursue their claims against the Debtors. Were this to happen, the Debtors would be put back into the position they were in prior to filing for bankruptcy. Indeed, it was the pendency of these thousands of claims that necessitated the Debtors' bankruptcy filing in the first place. The Debtors should be given the breathing room provided for by the automatic stay to allow them to develop their litigation plan for dealing with the morass of asbestos and other collateral litigation.

**(B)    The Balance Of Hardships Weighs Significantly In Favor Of The Debtors**

16. The above-described burdens forced upon the Debtors by the initiation and prosecution of the Wesconn Action far outweigh any inconvenience encountered by Wesconn. Unsecured creditors, such as Wesconn, "bear the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the Debtor in denying relief." In re Micro Design, Inc., 120 B.R. 363, 369 (E.D. Pa. 1990) (automatic stay not lifted where it was appropriate for movant to pursue its claim by filing a proof of claim, and participating in the claim process, in the bankruptcy case). In this case, Wesconn relies on the Debtors' insurance coverage to support its position that the Debtors will suffer no hardship. As discussed above, however, the Debtors obligation to pay the Deductible Reimbursement, and the fact that such obligation is secured by the BofA Letter and the Chase Letter, virtually assures that assets of the Debtors' estates will be expended if the Wesconn Action were allowed to proceed.

17.     Wesconn fails to set forth any reason as to why it should be granted preferential treatment over other general unsecured creditors of the Debtors. Unwarranted preferential treatment, however, is exactly what Wesconn seeks. Instead of receiving its pro rata share of whatever distribution allowed unsecured claims of the Debtors would be entitled to receive under a plan of reorganization, Wesconn seeks to expend the limited resources of the Debtors to the detriment of the Debtors' estates so that it might potentially obtain a judgment against the Debtors. The Debtors, their estates, and the Debtors' unsecured creditors should not be forced to subsidize Wesconn's efforts to augment its potential recovery over other unsecured creditors. This is exactly the sort of result that the automatic stay was intended to avoid. See Borman v. Raymark Industries, Inc., 946 F.2d 1031, 1036 (3rd Cir. 1991).

18.     Because the Debtors would suffer great hardship if the automatic stay is lifted, and Wesconn would suffer little, if any, hardship if the Motion is denied, this Court should deny the Motion to lift the stay. Wesconn will still have the opportunity to resolve its alleged claim in this Court by filing a proof of claim if the Motion is denied.

**(C)     Wesconn Has Demonstrated No Likelihood of Success on the Merits.**

19.     Wesconn's Motion should be denied because it has not demonstrated, nor can it, any likelihood of success on the merits.

## CONCLUSION

For these reasons, the Motion for relief from the automatic stay should be denied.

Dated: July 3, 2002

    KIRKLAND & ELLIS
    James H.M. Sprayregen, P.C.
    James W. Kapp III
    Christian J. Lane
    Roger J. Higgins
    200 East Randolph Drive
    Chicago, Illinois 60601
    (312) 861-2000

    and

    PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

    _/s/ David W. Carickhoff, Jr._
    Laura Davis Jones (Bar No. 2436)
    David W. Carickhoff, Jr. (Bar No. 3715)
    919 North Market Street, 16th Floor
    P.O. Box 8705
    Wilmington, DE 19899-8705 (Courier 19801)
    Telephone: (302) 652-4100
    Facsimile: (302) 652-4400

    Co-Counsel for the Debtors and Debtors in Possession