IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | Re: Docket No. 2189 |

Hearing:  July 22, 2002, 10:00 a.m.

## DEBTORS' OBJECTIONS TO THE PROPERTY DAMAGE COMMITTEE'S BUDGET FOR THE ZAI SCIENCE TRIAL

The Debtors hereby object to the Property Damage Committee's budget for the ZAI

science trial.  A budget of over $4.2 million dollars for a matter which the Court has described as

"pretty much a cut and dried battle of experts on the liability" is exorbitant.  (April 22, 2002

transcript at p. 30).  The Property Damage Committee (the "PD Committee"), in estimating that

12,800 hours of professional time is necessary, is contemplating a hearing on matters well

beyond the simple question of "whether there is some science basis for liability" for ZAI.  (May

20, 2002 transcript at p. 69).  Further, in suggesting that a total of six different law firms

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

represent Claimants, the PD Committee clearly is budgeting for a tremendous amount of duplicative effort. Also, proposing that special counsel be retained and paid by the Debtors on a straight hourly rate basis is contrary to the Court's direction and contrary to the way in which special counsel are normally compensated for their time.

On July 3, 2002, as directed by the Court, counsel for the Debtors, counsel for the PD Committee, various special counsel whom the PD Committee has moved to employ for the science trial and the Debtors' General Counsel, met to confer with respect to the budget and the science trial. The issues discussed included: (1) which lawyers were appropriate to act as special counsel for the Claimants; (2) the budget for such counsel; and (3) the issues to be tried as part of the science trial. The Debtors indicated, as outlined in their Objection filed on July 1, 2002, that they believed employing six law firms to represent the Claimants in the science trial was unnecessary and excessive. The PD Committee disagreed, arguing that it is the number of lawyers not law firms that is relevant but making no commitments or providing no explanation of how staffing would work using the six law firms suggested. The parties then discussed the scope of the science trial. The Debtors described the trial as an inquiry into what science says about the health risks from ZAI. The PD Committee and proposed special counsel disagreed, arguing that they believed it was a waste of time to just address this one discrete issue. As a result of this divergence of viewpoint on the issues to be tried, the parties could not begin to reach a consensus on a budget.

**The PD Committee's Projection of 12,800 Hours is Excessive**

The PD Committee has projected a total of 12,800 hours of attorney and paralegal time for the science trial. By comparison, the Debtors project a total of 7050 hours for their counsel. A comparison of the projections is illuminating:

| Services to be rendered | PD Committee's Projection | Debtors' Projection | Variance |
|---|---|---|---|
| Document review and organization | 5000 hours | 1500 hours | +3500 hours |
| Fact/liability depositions | 2,000 hours | 1,300 hours[2] | See below |
| Witness ID and interviews | 1,000 hours | See above | +1700 hours |
| Expert witness meetings, depositions | 2,000 hours | 1,200 hours | +800 hours |
| Legal analysis and briefing | 800 hours | 750 hours | +50 hours |
| Trial preparation and trial | 2,000 hours | 1,800 hours | +200 hours |
| Client consultation | | 500 hours | -500 hours |
| **Totals** | **12,800 hours** | **7050 hours** | **+5750 hours** |

As can been seen from the above chart, the most significant variances in the budgets relate to the time the PD Committee estimates will be spent on document review and fact and expert witness preparation and depositions. The PD Committee's high projection for document review appears to assume a full trial on the merits of the Claimants various ZAI theories of liability, rather than just a science trial. Documents relating to the scientific and technical aspects of ZAI, and any potential hazardous fiber release, should not involve 125 weeks of man-hour review (at 40 hours a week). Further, any comparison that the PD Committee may seek to make with the hours previously billed by the Debtors' special asbestos counsel, Reed Smith, is irrelevant. Reed Smith's collection and review has been undertaken for far more than just science trial issues, such as the EPA's cost recovery claims relating to attic insulation, the fraudulent conveyance matters and other matters relating to asbestos property damage claims.

---

[2]    The Debtors' budget combines liability depositions and witness identification and interviews into one category.

The PD Committee's projections for fact depositions and witness interviews is likewise excessive. If one generously assumes 50 hours of preparation and deposition time per fact witness, then the PD Committee is estimating 40 fact witnesses. This projection is ridiculous. It would be unnecessary to have 40 fact witnesses for a full trial on the merits of all of the various ZAI theories, let a alone for a more limited science trial. In the same respect, for witness identification, interviews and summaries, if you generously assume 20 hours per witness, the PD Committee has in mind approximately 50 witness interviews. Again, this is far in excess of what is necessary for a ZAI science trial.

With respect to experts, the PD Committee lists 14 experts and 2,000 hours of professional time. To the best of the Debtors' knowledge, parties who have tried full-blown asbestos property damage cases against the Debtors in the past have never used as many as 14 experts. Once again, it appears that the PD Committee's projections are related to a full blown trial on the merits of all ZAI related theories, rather than the simple liability issue that the Court has indicated will be heard.

**The PD Committee's  Budget Calls for Duplication of Effort**

The PD Committee's significant variance in the budget as compared to the Debtors' budget may also be directly related to the request of the PD Committee to utilize the services of six law firms to act as counsel in the science trial. The coordination of such excessive counsel in so many different cities, could alone account for the excessive budget. By contrast, the Debtors anticipate that only two firms will represent the Debtors in the science trial – Debtors' Bankruptcy counsel, Kirkland & Ellis and its special asbestos counsel, Reed, Smith.

The PD Committee has argued to the Debtors that it is the number of lawyers, not the number of law firms that is relevant. The PD Committee suggests that the combined personnel of the six law firms proposed does not add up to the number of lawyers at the Debtors' two

-4-

firms. The Debtors submit that the number of lawyers at any firm is irrelevant. Certainly in the past, each of the firms proposed as special counsel has had no trouble, without five other co-counsel, staffing and litigating cases against the Debtors. More importantly, the PD Committee has made no commitments with respect to who at each firm will staff the case. All of the counsel mentioned are senior people, suggesting that the staffing will be very top heavy for special counsel. This is not necessary or appropriate.

As outlined in the Debtors' Objections to the PD Committee's Motion to Employ Special Counsel, filed on July 1, 2002, employment of six different firms to represent the Claimants in the science trial is unnecessary and will serve only to needlessly increase the fees and costs which the PD Committee seeks to pass on to the Debtors' estates for payment.

**Compensation for Claimants' Counsel on an Hourly Rate Basis is Inappropriate**

A debtors' estate is not generally required to bear the costs of claimants prosecuting claims *against* the estate. The fee arrangements approved by District Judge Wolin for the asbestos committees' special counsel to prosecute the Fraudulent Conveyance matter is not relevant. There, special counsel is representing the Debtors' estates. In this situation, the Court has made the extraordinary suggestion that for the science trial to proceed, the Debtors' estates are going to have to defray some of special counsel's costs. While the Debtors are not in the business of compensating Claimants for prosecuting claims against them, the Court has suggested that the science trial is essential in order to find out whether there really is a potential ZAI liability.

The PD Committee proposes that its special counsel be compensated on an hourly rate basis. The Debtors find this suggestion unusual since all of these firms are essentially mass tort plaintiff's firms who have contingent fee arrangements with Claimants. The Court has suggested that for the ZAI science trial to proceed, the Debtors have no choice but to bear the "out of

-5-

pocket costs" of the trial. (May 20, 2002 transcript at p. 76)  However, the Court did not suggest

that the Debtors' estates would have to bear the costs of a full hourly fee arrangement for special

counsel:

> "I think class actions typically do these things on a contingent basis, because there
> is an upside.  If you win, you get the lion's share of whatever the share of the
> attorney proceeds would be, you have the opportunity to come before the court to
> assess those fees, and so typically they are contingent.
>
> I think by requiring the debtor to pick up the costs of expenses, that's going a long
> way."

(May 20, 2002 transcript at p. 81).

Consistent with the Court's direction, on June 7, 2002, the Debtors filed their Suggestion

of a Proposed Budget for Prosecution of ZAI Claimants' Case in the Science Trial.  In that

pleading, the Debtors suggested a compromise between paying straight hourly rates and a

traditional contingent fee arrangement for special counsel.  Pursuant to this compromise, the

Debtors would assure that all of special counsel's true costs are covered by reimbursing

reasonable out of pocket disbursements plus providing special counsel with a reduced hourly rate

and the opportunity to earn a higher rate and a premium if the Claimants are successful in the

science trial.

A debtors' estate is not generally assessed the costs of claimants for prosecuting claims

against the estate.  In this extraordinary situation, the Court has said that the science trial is vital

to the estate and the Debtors will have to defray some of the Claimants' costs.  The type of

compensation arrangement proposed by the Debtors represents a reasonable compromise.  It is

designed to assure that special counsel's true costs are covered, yet does not require the Debtors

reward Claimants for prosecuting claims against the Debtors' estates which may be without

merit.

**Conclusion**

The PD Committee's budget for the science trial is far in excess of what is necessary to proceed with the issue outlined by the Court.  Special counsel's budget should be in line with the budget the Debtors' have submitted for their own counsel.  Further, the Debtors should not be required to pay all of special counsel's out of pocket expenses and full hourly rates.  The Debtors' requirements to pay should be limited to compensating special counsel for its true costs of doing business, with the opportunity for special counsel to earn a higher fee and a premium should the Claimants prevail in the science trial.

Dated: July 8, 2002

Respectfully submitted,

KIRKLAND & ELLIS
David M. Bernick, P.C.
Christopher Sullivan
James W. Kapp III
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
Tel: (312) 861-2000
Fax: (312) 861-2200

and

REED SMITH LLP
James J. Restivo, Jr.
Douglas E. Cameron
435 Sixth Avenue
Pittsburgh, PA  15219
Tel: (412) 288-3131
Fax: (412) 288-3063

and

PACHULSKI, STANG, ZIEHL YOUNG & JONES P.C.

Laura Davis Jones (#2436)
David W. Carickhoff, Jr. (#3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Tel: (302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

-8-