IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., <u>et</u> <u>al.</u>, | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

**RESPONSE OF ZONOLITE ATTIC INSULATION PROPERTY DAMAGE
CLAIMANTS TO DEBTORS' OBJECTIONS
TO THE ZONOLITE ATTIC INSULATION PROOFS OF CLAIM**

### I. **Introduction**

Debtors' objections reflect W.R. Grace's continuing effort to obfuscate the property damage liability issues relating to Zonolite Attic Insulation ("ZAI"). Grace blatantly ignores the vast body of medical-scientific literature and the consensus of the medical-scientific community that asbestos is a hazardous substance for which there is no known safe level of exposure. Moreover, Grace disregards 15 years of asbestos property damage jurisprudence by attempting to transform this case into one for personal injury and demanding proof of personal injury before property damage liability can attach. More than 15 years ago, Grace's argument was unanimously rejected by the Fourth Circuit in the landmark property damage case, <u>City of Greenville v. W.R.Grace & Co.</u>, 827 F.2d 975 (4th Cir. 1987), <u>reh</u>. <u>denied</u>, 840 F.2d 219 (1988) [affirming plaintiff's verdict for $4.8 million compensatory and $2 million punitive damages]. In <u>City of Greenville</u>, Grace argued that it could not be found liable for property damage from Grace's vermiculite-based Monokote fireproofing

1

because no one at Greenville City Hall had developed disease. The appellate court rejected Grace's argument:

> [W]e do not believe that Grace should be allowed to escape liability simply because no occupant of the city hall has yet developed an asbestos-related disease, or because there are, as yet, no epidemiological studies concerning the health risks associated with asbestos contamination of office buildings. Under the circumstances of this case, we agree with our fellow circuits that "products liability law does not preclude recovery until a 'statistically significant' number of people have been injured or until science has had the time and resources to complete sophisticated laboratory studies..."

827 F.2d at 980, n. 2 (citations omitted).

Grace likewise ignores the misery and death caused by the asbestos contamination of its vermiculite products, including ZAI. In <u>Harashe v. Flintkote Company, et al.</u>, 848 S.W.2d 506 (Mo. Ct. App. 1993), the court affirmed a jury verdict that a homeowner's fatal mesothelioma was caused by his exposure to asbestos in ZAI. Mr. Harashe had used ZAI to insulate his home. He was not constantly exposed, as Grace claims is necessary to create danger. Rather, he poured the material in his attic on two separate occasions and went into the attic twice a year to check on a vent. <u>Id</u>. at 507 - 508. In discussing the expert medical testimony, the <u>Harashe</u> court stated:

> Medical testimony would allow a jury to conclude that mesothelioma could be contracted from limited exposure to amphibole asbestos including tremolite. Defendant's medical expert testified on cross-examination that the disease has been found in white collar males whose only exposure was during summer jobs while in college, in housewives whose only exposure was from the clothing of a spouse who worked with asbestos, and from individuals living near to asbestos plants or mines. While that expert believed that heavy continuing exposure was usually necessary to contract the disease, he conceded that it was possible to contract the disease from a single heavy exposure to amphibole asbestos.

<u>Id</u>. at 508.

Grace portrays the current ZAI claims as seeking damages for the mere presence of asbestos

and argues that claimants may not recover damages in tort under the economic loss rule. Claimants do not seek damages for the mere presence of asbestos that is safely embedded in a product. Instead, the Zonolite claims are for property damage resulting from the release of asbestos from ZAI. Grace's similar argument was rejected in City of Greenville with respect to its vermiculite-based Monokote fireproofing:

> [T]he injury that resulted from the installation of Monokote in this case is the contamination of the Greenville City Hall with asbestos fibers, which endangered the lives and health of the building's occupants.
>
> 827 F.2d at 977-978

Importantly, the Monokote fireproofing in City of Greenville was a wet-applied mixture of asbestos, vermiculite and gypsum, which Grace claimed "locked in" the asbestos in a "cementitious matrix". With ZAI, however, there is no such binder. ZAI is just the contaminated vermiculite. Grace's "binder" defense has vanished in ZAI cases. In its place, Grace has conjured up a "light-weight" defense, i.e. Grace claims there is no problem because ZAI contains a small amount of asbestos by weight. But Grace ignores the fact that asbestos fibers are so light that billions of them resided in every bag of ZAI sold. They now rest in attics across the country. As we show below, Grace's current counsel is pressing a "light-weight" argument that its corporate counsel rejected in an internal memo 25 years ago. (See ¶ 14 infra).

The potential for ZAI to release asbestos prompted Assistant Surgeon General, Hugh S. Sloan, to write the Director of the National Institute for Occupational Safety and Health, Dr. Linda Rosenstock, on August 1, 2000, and declare:

> One issue that has very recently come to our attention, is that end-product vermiculite insulation, and most likely other end-products, apparently contained appreciable quantities of asbestos, but were marketed, sold, and used throughout the country without adequate labeling or warnings and were

commonly considered to be non-toxic (see enclosed information and video tape). Internal company documentation and recent testing of residential insulation materials, reportedly used in over one million homes, reveals that even minimal handling by workers or residents poses a substantial health risk (airborne exposures up to 150 times the current occupational standards (0.1 f/cc)).

Exh. 1, August 1, 2000 Letter from Sloan to Rosenstock.[1]

Grace understandably would like to sweep the ZAI tremolite problem under the rug. But EPA does not share Grace's "all is well" view of ZAI. An EPA communication currently on its website makes this clear.

**Why is it a problem?**

If disturbed, asbestos fibers in vermiculite insulation may get into the air. These fibers can be inhaled and become trapped in the lungs where they may cause diseases, such as asbestosis, lung cancer, and mesothelioma. These diseases can develop many years after exposure to asbestos.

**What should I do if I have vermiculite insulation in my home?**

Look at the insulation without disturbing it. If it appears you have vermiculite insulation in your home, we recommend the following steps:

> If possible, leave the insulation undisturbed. Asbestos particles will not become airborne if the insulation is contained. If it's sealed behind wallboards or is isolated in an attic that is vented outside, the best approach is to keep it in place.
>
> If you are planning to remodel or replace vermiculite insulation, have it tested first.
>
>> EPA recommends using a trained and accredited professional to conduct the tests. If you decide to remove the vermiculite home insulation, use

---

[1] Exhibits will be made available upon request to those being served with this response by e-mail.

>    accredited, licenced asbestos removal professionals. Use of "negative pressure enclosure" technique will prevent asbestos fibers and dust from escaping from the attic into the rest of the home. **Do not attempt this yourself.** You could spread asbestos fibers throughout your home, putting you and your family at risk of inhaling asbestos fibers.
>
>    Exh. 2, EPA, "Asbestos in Vermiculite Insulation" July 10, 2002.

### II. Specific Responses to Grace's Enumerated Objections
(Paragraph Numbers Correspond to Grace's Objections)

Grace's objections are irrelevant, have been rejected by courts nationwide, and are without merit. Claimants respond to Grace's specific objections by paragraph as follows:

12. In addition to the dissemination of warnings regarding asbestos in ZAI, claimants seek damages for the cost of safety precautions and asbestos abatement necessary to prevent the release and re-suspension of asbestos fibers from ZAI. In particular, claimants seek injunctive relief and damages for property damage caused by the asbestos in Zonolite Attic Insulation based in part on the following facts:

    1. Grace's national advertising represented that ZAI was "100% vermiculite," "safe," "non-irritating," "contains no harmful chemicals," and that installation was a "family-type fun project;" [Exh. 8, ZAI ads]

    2. ZAI contains varying amounts of tremolite asbestos fibers which are a dangerous form of amphibole asbestos;

    3. While selling ZAI, Grace knew asbestos was a carcinogen;

    4. While selling ZAI, Grace knew that its disturbance during installation resulted in the release of asbestos fibers;

    5. Testing has demonstrated that disturbance of ZAI during and after installation

          results in the release of asbestos fibers;

6. Asbestos fibers released from ZAI settle on building surfaces where they can be re-suspended into the air by disturbance;

7. Once asbestos fibers are released into the air, they can be inhaled and result in exposure unless proper safety precautions are taken;

8. Grace never warned customers or homeowners about ZAI's asbestos content or the potential for asbestos to be released from the product during ordinary use;

9. Most homeowners with ZAI are unaware of its asbestos content or its potential to release asbestos fibers when disturbed and cause contamination.

13. As discussed previously, Grace improperly seeks to make personal injury a prerequisite to a finding of property damage liability. Moreover, Grace's objection ignores the following facts:

1. It is generally accepted by the medical-scientific community that the tremolite asbestos in ZAI is a carcinogen;

2. It is generally accepted by the medical-scientific community that there is no known safe level of exposure to asbestos;

3. It is generally accepted by the medical-scientific community that every exposure increases the risk of disease;

4. It is generally accepted by the medical-scientific community that peak episodic exposures are dangerous and should be avoided;

5. It is generally accepted by the medical-scientific community that tremolite is a particularly dangerous form of asbestos;

14. While Grace presses its "light-weight" defense here, Grace's internal testing of its vermiculite products demonstrated that the tremolite asbestos content varied. (See Exhibit 3, April 19, 1977 memorandum from Yang to Wood.) Moreover, Grace internally admitted that it is the <u>number</u> of asbestos fibers, not the percentage by <u>weight</u> that really matters.

In April, 1977, Grace revisited the issue of a vermiculite warning in connection with the drafting of a material safety data sheet for its vermiculite products. Grace officials met to develop a "sales viewpoint" on the MSDS in order to edit language "to take into account potential adverse impact on the business." It was decided that the MSDS requirement could be avoided for Zonolite Attic Insulation because it was a consumer product. However, the Grace officials acknowledged that normal handling of vermiculite concentrate (from which ZAI is derived) could create an airborne fiber level in excess of the OSHA standards. (See Exh. 4, Attachment C to April 7, 1977, draft proposal).

The issue of whether to set forth the weight percent of asbestos in Grace's vermiculite products was also addressed. In comments delivered at an internal April 8, 1977 meeting, Grace's General Counsel, Mario Favorito recognized the misleading nature of a weight percent figure for asbestos in vermiculite:

> I understand that the reason for wanting to indicate the percent by weight of Tremolite content is to give the recipient the indication that he is not giving (sic) a product containing commercial asbestos... I think that this could be construed as an invitation for the recipient to believe that because the percent from Tremolite asbestos content is low, that the amount of Tremolite asbestos fiber released in handling the product can be assumed to be less than this (sic) prescribed by the asbestos standard. <u>As you know, respirable Tremolite asbestos fibers are light and countless numbers may be present even though the percent by weight is low</u> ... <u>Accordingly, I would recommend that such statement be deleted.</u> OSHA standard 1910.101 regulates asbestos fiber concentrations and that should be the recipient's concern.
>
> Exh. 5, April 8, 1977 handwritten comments by O.M. Favorito, (with typed version) (*emphasis added*).

This telling admission acknowledges that asbestos fibers are so small that millions of them can be present, yet be barely detectable by weight. Indeed, the scientific expert testimony in Harashe established that 600 billion tremolite asbestos fibers are so small they could fit into the cap of a fountain pen. 848 S.W.2d at 508.

Grace's internal testing demonstrated that ZAI produced significant airborne levels of exposure when poured during installation. In a confidential 1977 report evaluating tremolite asbestos in its vermiculite products, Grace addressed the "Harm to Customers" and reported:

> The highest level of exposure is for Attic Insulation and Masonry Insulation.
>
> Exh. 6, May 24, 1977 Memorandum from E.S. Wood to C.E. Brookes, et al., regarding Tremolite in Vermiculite, at 13.

15. The mere presence of asbestos is not at issue in this case. Instead, the claims involve damages arising from the release of asbestos and resulting property damage when the product is disturbed.

16. By the use of term "biologically significant amounts of asbestos," Grace seeks to transform this into a personal injury case. It is generally accepted by the medical-scientific community that all exposures increase the risk of disease. Therefore, all exposures are biologically significant. Moreover, Grace's objection ignores its own knowledge of 25 to 100 cases of asbestos-related disease involving exposure to Zonolite Attic Insulation. Grace's objection also ignores Harashe. Notably, Grace's objection in paragraph 16 impliedly admits that disturbance of ZAI results in the release of asbestos and exposure. The Court should accept this as an admission in these proceedings.

17.     See response to #16.

18.     See response to #16.

19.     Grace"s comparative risk objection has been rejected by many courts nationwide. In City of Greenville, for instance, the district court excluded Grace's comparative risk evidence under Fed.R.Evid. 403, on the grounds that its probative value was substantially outweighed by the risk of jury confusion and delay. Attorney General Griffin Bell, Grace's appellate counsel in that case, conceded the irrelevance of Grace's comparative risk evidence:

> And [defendant] wanted to show [comparative risk assessment] on nitrites in diet soda, peanut butter, which has a toxin in it called aflatoxin, but they've never been able to get any judge to listen to them, and to tell you the truth, I don't much blame the judges for not paying any attention to it.
>
> Exh. 7, Tr. Oral Argument in No. 86-2096 at 46-7 (4th Cir. April 8, 1987).

The Fourth Circuit agreed with Judge Bell:

> At oral argument, counsel for Grace conceded that its claim of error with respect to the exclusion of this evidence lacked merit. We agree with counsel's assessment, being of the view that the district court acted within its discretion in excluding the "comparative risk" evidence.
>
> City of Greenville, 827 F.2d at 981. No. 3.

20.     Legally recognizable claims include fraudulent concealment, negligence, breach of implied warranty of merchantability. The asbestos in ZAI was a "tramp" mineral with no utility whatsoever. Its total lack of utility is best evidenced by the fact that Grace tried to remove it from ZAI. In a May 24, 1977, internal Grace memorandum, a Grace official

described the asbestos problem and stated:

> Tremolite is present as a tramp mineral in our vermiculite deposits, and while most of it is separated from the vermiculite in the milling

>process, small amounts are carried to expanding
>plants and ultimately into finished products.
>
>Exh. 6, May 24, 1977 Memorandum from E.S. Wood to
>C.E. Brookes, et. al, regarding Tremolite in Vermiculite, at 1.

21. It is absurd for Grace to suggest here that to the extent it knew of a problem with tremolite in ZAI, "Claimants also had, or reasonably should have had, such notice, and are, therefore, barred from recovery". Grace sold ZAI as a "safe", "non-irritating" product composed of "100% vermiculite" for a "family-type fun project". Grace clearly had superior knowledge of the asbestos in ZAI and knew that purchasers were unaware of the asbestos. In May 1977, Grace discussed internally whether to place a warning label on its vermiculite products. The fact that purchasers were unaware of the asbestos problem caused a Grace official to conclude, "[w]e believe that a decision to affix asbestos warning labels to our products would result in substantial sales losses." See Exh. 8, May 24, 1977 Memorandum from E.S.Wood to C.E. Brookes, et al., regarding Tremolite in Vermiculite, at 15.

22-33. The remaining paragraphs of Grace's enumerated objections are standard defense boilerplate. If they are notable for anything, it is their inconsistency. For instance, in paragraph 26, Grace contends that the claims are barred by the applicable statutes of limitations. However in paragraph 33, Grace claims that claimants cannot recover for damages "which may be incurred in the future". It will be interesting to hear how Grace can explain in the context of this bankruptcy that a claim is both too late (statute of limitations) and too early (future claim). Herein lies one of Grace's dilemmas. If it claims that its ZAI has not yet released asbestos fibers and therefore the claim is simply "an economic loss", or at least premature, how can it seek discharge of these yet-to-exist claims? Grace cannot have it both ways.

Other of Grace's boilerplate objections border on being laughable. Objections 30 and 31, for instance, claim that any damages suffered by the claimants were either due to their "sole and contributory negligence" or their "comparative fault". Claimants eagerly await seeing how Grace supports its claim that customers are solely at fault or comparatively at fault for purchasing Grace's "100% pure vermiculite" for a "family-type fun project" product and living with it. Likewise, it will be interesting to see how Grace supports its claim that claimants have failed to mitigate their damages (Objection No. 32). Presumably these are the same damages that Grace claims have not yet occurred (Objection No. 33). Nor has Grace explained what type of "mitigation" it is suggesting, other than leaving Grace and ZAI alone. And if claimants leave ZAI alone for a time, what is to be done with their claims for removal costs when the material must eventually be disturbed in renovation or demolition? This is yet another dilemma for a company seeking a bankruptcy discharge for present and future claims.

### III. Conclusion

Grace's objections have lost sight of the fact that a ZAI property damage claim is not a quasi- personal injury claim. Nor is it a "fear of cancer" or medical monitoring claim. It is a property damage claim arising from contamination of claimants' buildings by the release of asbestos fiber from ZAI where the asbestos admittedly has no utility. That the asbestos in ZAI has killed before, and undoubtedly will kill again, simply reflects the nature of asbestos. Future deaths are not a prerequisite for recovery in an asbestos property damage claim. Indeed, for the past fifteen years, Grace has been held liable in asbestos property damage cases involving its vermiculite-based products without proof that any individual in the affected buildings had or was likely to get sick.

Grace would like to rewrite history and deny property damage recovery to claimants unless personal injury has or is likely to follow. But that is not the law in the tort system and cannot be the law in this bankruptcy.

Wilmington, Delaware
Dated: July 10, 2002

  /s/ Charles J. Brown, III
William D. Sullivan
Charles J. Brown, III
ELZUFON, AUSTIN, REARDON,
TARLOV & MONDELL, P.A.
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, DE 19899-1630
Phone: (302) 428-3181
FAX: (302) 428-3180

and

Thomas M. Sobol
Hagens Berman LLP
225 Franklin Street, 26th Floor
Boston, MA 92110
Phone: (617) 482-3700
FAX: (617) 482-3003

Elizabeth J. Cabraser
Fabrice N. Vincent
Jeniene Andrews-Matthews
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Phone: (415) 945-1000
FAX: (415) 945-1008

Darrell W. Scott
Burke D. Jackowich
LUKINS & ANNIS, P.S.
1600 Washington Trust Financial Center
717 West Sprague Avenue
Phone: (509) 455-9555
FAX: (509) 747-2323

Allan M. McGarvey
McGARVEY, HEBERLING, SULLIVAN
& McGARVEY, P.C.
745 South Main
Kalispell, MT 59904-5399
Phone: (406) 752-5566
FAX: (406) 752-7124

Edward J. Westbrook
RICHARDSON PATRICK WESTBROOK
& BRICKMAN
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Phone: (843) 216-9113
FAX: (843) 216-9660

Robert M. Turkewitz
NESS MOTLEY
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Phone: (843) 216-9109
FAX: (843) 216-9440