UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: W.R. Grace & Co., et al.,<br><br>     Debtors, | CHAPTER 11<br><br>Bankruptcy No. 01-01139 (JFK)<br><br>(Jointly Administered) |

**ZAI SPECIAL COUNSELS' RESPONSE TO DEBTORS' SUGGESTION OF A PROPOSED BUDGET FOR PROSECUTION OF ZAI CLAIMANTS' CASE IN THE "SCIENCE" TRIAL AND CHOICE OF COUNSEL (D.I. 2190)**

The proposed Special Counsel to the Zonolite Asbestos Insulation claimants (the "ZAI Claimants") hereby respond to the debtors and debtors in possession (the "Debtors") Suggestion of A Proposed Budget for Prosecution of ZAI Claimants' Case in the "Science" Trial.

**I.     INTRODUCTION**

On June 7, 2002, the Zonolite Attic Insulation claimants ("ZAI Claimants), through proposed Special Counsel, submitted a proposed budget and schedule for the discovery, preparation and trial of the defense of the objections of the debtors to certain proofs of claim filed by the ZAI Claimants. On June 10, 2002, the Debtors submitted a proposed budget for prosecution of the ZAI Claimants' case, suggesting that the Debtors pay a maximum amount of $250,000 for out-of-pocket expenses. Further, the Debtors' proposed budget suggests that the hourly rates of professional fees incurred by Special Counsel to the ZAI Claimants not exceed an hourly rate of $100.00. There could be no better guarantee of ineffective prosecution of the key claims in these proceedings, and no worse attack on the integrity of the science trial and these

134894.1

proceedings in general, than such disproportional and inadequate restrictions. The ZAI Claimants' Special Counsel respectfully submit that the Debtors' proposed budget is unreasonable and disproportionate to: (1) the prevailing market rate for services performed and expenses incurred by the ZAI Claimants' counsel; and (2) the Debtors' ZAI litigation counsels' own requested fees and expenses. Debtors' ZAI litigation counsel have performed enormous work on ZAI issues at high hourly rates during the past 12 to 14 months. The hourly rates range from a minimum of $110/hr upwards, to $430 (and likely more) for senior counsel. The average rate ranges from $220.29 to $350/hr depending on the month and the mix of counsel who bill the estate. ZAI counsel's proposal is eminently reasonable in this relevant market. Moreover, this Court has made eminently clear in prior omnibus hearings that the Court's approval of a fixed budget will serve to ensure that use of the number and range of attorneys by either side is fully appropriate, non-duplicative, and an efficient use of the resources of the estate.

## II. ARGUMENT

### A. ZAI Claimants' Special Counsel Rates and Expenses

Special Counsels' budget includes a considered estimate for the cost of defending the Debtors' objections to ZAI proofs of claim that is fair and reasonable given the complexity of this case, the time expended, the challenge presented by the issues, and the nature and extent of the services rendered thus far in light of the *prevailing market rate*. In computing a fee application, the hourly billing rate to be applied is the "market rate." See Blum v. Stenson, 465 U.S. 886, 895 (1984); Hensley v. Eckerhart, 461 U.S. 424, 447 (1983) (Brennan, J., concurring in part, dissenting in part) ("market standards should prevail"); Burney v. Housing Auth., 735 F.2d 113, 116 (3d Cir. 1984) (remanding for reconsideration of fee award with instructions to apply the market billing rate); In re Fine Paper Antitrust Litig., 751 F.2d 562 (3d Cir. 1984) (same); Carter-Herman v. City of Philadelphia, No. Civ. A-95-4030, 1997 WL 48942

(E.D. Pa. Jan. 31, 1997) (finding that prevailing market rate standard applies to private practitioners in addition to public interest lawyers); In re Synthroid Mktg. Litig., 264 F.3d 712.

It is well established that the "market rate" is not a constant. Rather, it will vary according to the geographic area and the attorney's experience, reputation, practice, qualifications, and customary charge, and is intended to encompass the rate that the attorney would normally command in the relevant marketplace in which the services are offered. Manual for Complex Litigation, Third, § 24.122 (Federal Judicial Center). See also Reazin v. Blue Cross & Blue Shield, 663 F. Supp. 1360, 1453-54 (D. Kan. 1987) aff'd in relevant part, 899 F.2d 951 (10th Cir.), cert. denied, 497 U.S. 1005 (1990) (explaining that in arriving at the appropriate rate, the court should ask the following question: "What do lawyers of comparable skill and experience, practicing in the area in which the litigation occurs, charge for their time?").

Courts appropriately recognize that higher rates are typically paid to specialists, such as the firms encompassing the ZAI Claimants' Special Counsel, who specialize in the prosecution and management of class cases, particularly those involving toxic torts, including asbestos. For example, as explained in Maceira v. Pagan, 698 F.2d 38 (1st Cir. 1983):

> [A]n out-of-town specialist may be able to command a somewhat higher price for his talents . . . . [T]he 'prevailing' rate 'in the community' for work performed by an outside specialist (where that outside specialist is reasonable) is most likely to be that outside specialist's ordinary rate . . . . If the courts (without cause) award fees at less than that rate, they will tend to prevent [plaintiffs] from obtaining the experienced legal counsel they may need . . . .

Id. at 40 (citation omitted.) See also Reazin, 663 F. Supp. at 1453-54 ("the relevant community may be said to be comprised of that group of attorneys specializing in the relevant law and in complex litigation").

Special Counsels' rates are well within the range of prevailing market rates for

- 3 -

legal services and have been approved by other Courts.  These are the hourly rates appropriate for non-contingent cases in which fees are paid currently (on an on-going basis, as the litigation proceeds) and without risk (*i.e.*, where there is a certainty that the fee will be recovered).  See, e.g., Roberts v. Texaco, Inc., 979 F. Supp. 185, 194 n.13 (S.D.N.Y. 1997).  These rates reflect the reputation, experience, and successful record of the specified lawyers and law firms of Special Counsel.  Cf. In re Domestic Air Transp. Antitrust Litig., 148 F. R. D. 297, 355 (N.D. Ga. 1993) (approving hourly rates of up to $500 per hour for partners in fee calculations).

The ZAI Claimants' Special Counsel proposal already includes substantial discounts on the non-contingent hourly rates of experienced and successful trial counsel.  For example, name partner Elizabeth Cabraser of Lieff Cabraser, who has substantial class action and multi-plaintiff motions, trial, and appellate experience in the injury and non-injury product defect field, and who has served on, inter alia, the Official Tort Claimants' Committee with Dow Corning Chapter Eleven proceedings (E.D. Mich.) since May 1998, regularly bills $550 per hour.

Other ZAI Claimants' counsel similarly charge, and receive, hourly rates significantly higher than those reflected in their budget.  They recognize that these are bankruptcy proceedings, and have moderated their rates accordingly.  They have, with careful deliberation, selected the combination of counsel with the relevant experience and expertise, to assure the vigorous and effective prosecution of the ZAI claims that play a key role in these proceedings.  To be relegated to maximum rates below those charged by debtors' counsel for the services of beginning paralegals insults their abilities, but, more to the point, insults the procedure this Court has crafted.  We did not select debtors' counsel, nor set their rates.  Had we done so, they would not be so punitive as those submitted on the debtors' behalf.  We note finally that most of the work done by those designated as the ZAI Claimants special counsel is

performed on a high-risk, contingent basis. Accordingly, their litigation and trial budgets are lean — they do not "staff up" unnecessarily, since their compensation and reimbursement are typically contingent on success. Should they prevail, their rates are of course far higher than those they propose here (more in line with the debtors' counsels' non-contingent rates in these proceedings). But their proposal and budget do not depart from contingent fee budgeting principles, and include <u>no</u> unnecessary or superfluous participants or tasks. We respectfully submit that our track record of success demonstrates that we know how to plan, budget and try cases effectively, and that we be allowed to do so here for the ZAI science trial.

### B. Choice of Special Counsel

The experience of Messrs. Turkewitz and Westbrook in the asbestos and debtor fields are well known. The Lukins & Annis, Lieff Cabraser and McGarvey firms, as well as Thomas Sobol and Jeniene Andrews who recently joined the Hagens Berman firm, have already invested considerable time and resources in the diligent representation of ZAI claims in the Washington state and Boston MDL proceedings, and this investment pays off for the estate because they are already "up to speed" on these claims.

The Special Counsel firms have additional, highly relevant experience that will streamline the proceedings. Ms. Cabraser, for example, has extensive experience in the design and conduct of class action and plaintiff group jury and bench trials that involve determinations of product defect and the fashioning of appropriate remedies, including the <u>Masonite</u> classwide defect trial in Mobile, Alabama in 1996, whose defect verdict was the basis of a subsequent nationwide settlement to pay for repair and replacement of damaged Masonite exterior siding in tens of thousands of homes. A 1999 nationwide class action simultaneous bench/jury trial of consumer fraud and breach of contract claims, culminating in a $1.3 billion judgment, is described in <u>Avery v. State Farm</u>, 746 N.E.2d 1242, 1255 (Ill. App. 2001).

The other Special Counsel all also have extensive relevant backgrounds and skills, as outlined on their attached professional résumés [Exhibit A].  Darrell W. Scott serves as lead class counsel in the certified state class action, Barbanti v. Grace, serves as the agent of Marco Barbanti with respect to and co-chair of the Official Asbestos Property Damage Committee, and has actively represented ZAI interests in essentially every proceeding in Grace's bankruptcy.

### C. Debtors' Litigation Counsels' Rates and Expenses

The Debtors' proposed fees and costs for Special Counsel are in stark contrast to the fees and costs submitted by the Debtor's Zonolite litigation counsel, which are set either at or above the market standard.

### 1. Reed Smith, LLP

From April 2001 until February 2002, Reed Smith, LLP has billed Debtors over $172,000.00 in expenses related to the ZAI case.  From April 2001 to December 2001, Reed Smith billed the Debtors approximately $732,239 in fees based on the time it spent providing services to the Debtors, multiplied by its hourly rates.  The hourly rates charged by Reed Smith personnel alone, who include 22 time keepers and 14 attorneys, are as follows:

a. Partners $325.00 - $430.00

b. Associates $240.00 - $260.00

c. Paralegals/ Administrative $110.00 - $180.00

These hourly rates were adjusted from time to time.  Within this time period, Reed Smith's hourly rate was an average of $242.00, over twice the hourly rate Debtors propose for the ZAI Claimants' Special Counsel.  Note that paralegals all were billed at above the highest rate the debtor proposes for the ZAI Claimants' seasoned trial lawyers.

## 2. **Kirkland & Ellis**

Special Counsel are unable to immediately determine Kirkland & Ellis' billing rates and expenses in this matter but understand that this firm has especially high billing rates, likely reflecting their particular expertise in bankruptcy matters, as outlined in a 2001 Kirkland & Ellis fee petition in Harnischfeger Industries, Inc. (Chap. 11 B.C. Del.) where they charged the following:

- a. Partners     $365.00 - $625.00; and for
- b. Associates     $195.00 - $425.00

## 3. **Casner & Edwards**

From September 2002 to March 2002, Casner & Edwards, LLP billed Debtors $109,825.00, for expenses incurred, including the costs of rent and utilities for the asbestos document repository. Within that same period, Casner & Edwards billed Debtors over $854,000.00 for services rendered on the Debtors' Chapter 11 case and averaged about $100.00 an hour when paralegals are factored in. The hourly rates charged by Casner & Edwards personnel are as follows:

- a. Attorneys     $165.00 - $210.00
- b. Paralegals/     $75.00
  Administrative

These hourly rates were adjusted over time.

## III. **CONCLUSION**

The ZAI Claimants' Special Counsel respectfully request that the Court enter an order authorizing the ZAI Claimants retention of Special Counsel pursuant to the terms outlined in the Official Committee of Asbestos Property Damage Claimants' Response and Motion Pursuant to Section 503 of the Bankruptcy Code to Retain Special Counsel for the Purpose of

Defending Objections to Zonolite Attic Insulation Proofs of Claim and granting such other relief as the Court deems just and proper.

DATED this 18th day of July, 2002.

          ELZUFON AUSTIN REARDON, TARLOV & MONDELL, P.A.

          */s/ William D. Sullivan*
William D. Sullivan (#2820)
Charles J. Brown, III (#3368)
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, DE 19899-1630
(302) 428-3181

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN
& BERNSTEIN, LLP
Embarcadero Center West, 30th Floor
275 Battery Street
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile:  (415) 956-1008

Robert M. Turkewitz
NESS MOTLEY LOADHOLT
  RICHARDSON & POOLE
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465
Telephone: (843) 216-9000
Facsimile:  (843) 216-9440

Allan M. McGarvey
Roger M. Sullivan
Jon L. Heberling
McGARVEY, HEBERLING,
SULLIVAN & McGARVEY, P.C.
745 South Main
Kalispell, MT  59901
Telephone:  (406) 752-5566
Facsimile:  (406) 752-7124

Darrell W. Scott, WSBA# 20241
LUKINS & ANNIS, P.S.
1600 Washington Trust Financial Cntr
717 W Sprague Ave.
Spokane, WA  99201-0466
Telephone: (509) 455-9555
Facsimile: (509) 747-2323

Thomas M. Sobol
Jeniene Andrews-Matthews
HAGENS BERMAN LLP
225 Franklin Street, 26th Floor
Boston, MA  02110
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

Edward J. Westbrook
RICHARDSON, PATRICK, WESTBROOK &
BRICKMAN
28 Bridgeside Boulevard
P.O. Box 1702
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450

G:\Docs\CLIENT\220305\11221\pleading\00130969.DOC

# EXHIBIT A

***ELIZABETH J. CABRASER*** is a partner at Lieff, Cabraser, Heimann & Bernstein, LLP. She was born in Oakland, California, on June 23, 1952.  Admitted to practice in California, 1978; California and U.S. Supreme Court; U.S. District Court, Northern, Eastern, Central and Southern Districts of California; U.S. Court of Appeals, Second, Third, Fifth, Sixth, Ninth, Tenth and Eleventh Circuits and U.S. Tax Court; U.S. District Court, District of Hawaii; U.S. District Court, District of Arizona.

*Education*:  University of California at Berkeley (A.B., 1975); Boalt Hall School of Law, University of California (J.D., 1978).

*Awards and Honors*:  1997 and 2000 *National Law Journal* "One Hundred Most Influential Lawyers in America"; 1997 Trial Lawyers for Public Justice *Public Justice Achievement Award*; 1998 Consumer Attorneys of California *Presidential Award of Merit*; 1998 and 2001 *National Law Journal* "Fifty Most Influential Women Lawyers"; 2002 *National Law Journal* "Top Ten Women Litigators"; 1998 *California Lawyer* "Lawyers of the Year"; 1998-2000, *California Daily Journal* "California Law Business Top 100 Lawyers"; 2002 *California Daily Journal* "Top 30 Women Litigators"; 2000 Legal Aid Society "Matthew O. Tobriner Public Service Award"; 2002 Anti Defamation League Jurisprudence Award.

*Author*:  "Unfinished Business:  Reaching the Due Process Limits of Punitive Damages in Tobacco Litigation Through Unitary Classwide Adjudication," 36 *Wake Forest Law Review* 979 (Winter 2001); "Symposium:  Enforcing the Social Contract through Representative Litigation," 33 *Connecticut Law Review* 1239 (Summer 2001); "Equity for the Victims, Equity for the Transgressor: The Classwide Treatment of Punitive Damages Claims," 74 *Tulane Law Review* 2005 (June 2000); "Class Action Trends and Developments After *Amchem* and *Ortiz*," in *Civil Practice and Litigation Techniques in Federal and State Courts* (ALI-ABA Course of Study 1999); "Life After *Amchem*:  The Class Struggle Continues," 31 *Loyola Law Review* 373 (1998); "Recent Developments in Nationwide Products Liability Litigation:  The Phenomenon of Non-Injury Products Cases, the Impact of *Amchem* and the Trend Toward State Court Adjudication," *Products Liability* (ABA February 1998); "Beyond Bifurcation:  Multi-Phase Structure in Mass Tort Class Actions," *Class Actions & Derivative Suits* (Spring 1997); "The Road Not Taken:  Thoughts on the Fifth Circuit's Decertification of the *Castano* Class," SB24 ALI-ABA 433 (1996); "Getting the Word Out:  Pre-Certification Notice to Class Members Under Rule 23(d)(2)," *Class Actions & Derivative Suits Newsletter* (October 1995); "Mass Tort Class Action Settlements," 24 *CTLA Forum* 11 (Jan./Feb. 1994); "Do You Know the Way from San Jose?  The Evolution of Environmental and Toxic Nuisance Class Actions," *Class Actions & Derivative Suits* (Spring 1994); "An *Oracle* of Change?  Realizing the Potential of Emerging Fee Award Methodologies for Enhancing The Role and Control of Investors in Derivative and Class Action Suits," *Principles of Corporate Governance* (ALI October 1994); "How To Streamline Complex Litigation:  Tailor a Case Management Order to Your Controversy," 21 *The Brief* 12 (ABA/TIPS Summer 1992); "The Applicability of the Fraud-On-The-Market Theory to 'Undeveloped' Markets:  When Fraud Creates the Market, 12 *Class Action Reports* 402 (1989); "The Applicability of the Fraud-On-The-Market Theory to 'Undeveloped' Markets:  When Fraud Creates the Market," 12 *Class Action Reports* 402 (1989); "Mandatory Certification of Settlement Classes," 10 *Class Action Reports* 151 (1987); Contributor/Editor, *Moore's Federal Practice* (1999); Contributor/Editor, *California Causes of Action* (1998).

*Member*: Council, American Law Institute; Advisor, American Law Institute International Jurisdiction and Judgments Project; California Constitution Revision Commission, 1993-1996; National Center for State Courts Mass Tort Conference Planning Committee; Northern District of California Civil Justice Reform Act (CJRA) Advisory Committee, and Advisory Committee on Professional Conduct; Lawyer-Delegate, Ninth Circuit Judicial Conference, 1992-1995; Bar Association of San Francisco (Past President, Securities Litigation Section; Board of Directors); American Bar Association (Litigation Section and Committee on Class Actions and Derivative Suits; Co-Chair, Committee on Mass Torts); Consumer Attorneys of California (CAOC); Bar Associations of the Fifth and Seventh Federal Circuits; Association of Trial Lawyers of America (ATLA); ATLA Women Trial Lawyers Caucus; California Women Lawyers; Association of Business Trial Lawyers; Bay Area Lawyers for Individual Freedom; ABA National Institute on Class Actions (Organizer/ Participant, 1997-2002).

**RICHARD M. HEIMANN** is a partner at Lieff, Cabraser, Heimann & Bernstein, LLP. He was born in Miami, Florida, on August 23, 1948. Admitted to practice in Pennsylvania, 1972; District of Columbia, 1974; California, U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1975; U.S. Supreme Court, 1980; U.S. Court of Appeals, Second Circuit, 1980; U.S. District Court, District of Hawaii, 1986.

*Education*: University of Florida (B.S.B.A., with honors, 1969); Georgetown University (J.D., 1972); *Georgetown Law Journal*, 1971-72.

*Employment*: Mr. Heimann served as Deputy District Attorney and Acting Assistant District Attorney for Tulare County, California, and as an Assistant Public Defender in Philadelphia, Pennsylvania, 1972-74. As a private attorney, Mr. Heimann has tried over 30 civil jury cases, including complex cases such as the successful *FPI/Agretech* and *Edsaco* securities class action trials. In April 2002 in the *Edsaco* case, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd., which included $165 million in punitive damages, the fourth largest jury award reported in 2002 to date.

*Member*: State Bar of California; Bar Association of San Francisco.

**FABRICE N. VINCENT** is a partner at Lieff, Cabraser, Heimann & Bernstein, LLP. He was born in Paris, France, on June 15, 1966. Admitted to practice in California, 1992; U.S. District Court, Northern District of California, Central District of California, Eastern District of California, Ninth Circuit Court of Appeals, 1992.

*Education*: University of California at Berkeley (B.A., 1989); Cornell Law School (J.D., *cum laude*, 1992).

*Author*: Co-Editor-In-Chief, *Fen-Phen Litigation Strategist* (Leader Publications 1998-2000) and author of "Off-Label Drug Promotion Permitted" (Oct. 1999); Co-Author, "The Future of Prescription Drug Products Liability Litigation in a Changing Marketplace," and "Six Courts Certify Medical Monitoring Claims for Class Treatment," 29 *Forum* 4 (Consumer Attorneys of California 1999); Co-Author, *Class Certification of Medical Monitoring Claims in Mass Tort Product Liability Litigation* (ALI-ABA Course of Study 1999); Co-Author, "How Class Proofs of Claim in Bankruptcy Can Help in Medical Monitoring Cases" (Leader


Publications 1999); Co-Author, Introduction, "Sanctioning Discovery Abuses in the Federal Court," (LRP Publications 2000); "With Final Approval, Diet Drug Class Action Settlement Avoids Problems That Doomed Asbestos Pact," (Leader Publications 2000); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," *Survey of State Class Action Law* (ABA 2000), updated and re-published in 5 *Newberg on Class Actions* (June 2001); Coordinating Editor and Co-Author of California and Mississippi sections of the ABA State Class Action Survey (2001).

*Member*:  State Bar of California; Bar Association of San Francisco; American Bar Association; Association of Trial Lawyers of America; Association of Business Trial Lawyers.

**DARRELL W. SCOTT** is a principal at the Spokane office of Lukins & Annis.  He is an experienced litigator who focuses his practice on multi-state and national plaintiffs' class actions and other mass litigation.

Lukins & Annis' Class Action Practice Group, of which Darrell Scott is chair, has focused on the development of the necessary resources to serve the court in the capacity as class counsel, including the retention of a community of attorneys and staff experienced in complex litigation and responsive to the special organizational and management needs of class action practice.  Lukins & Annis has also had the privilege of establishing relationships with colleagues around the nation who are capable of serving the court and clients by bringing to bear specialized knowledge, talents, and expertise.

Darrell served as class counsel in *In re Chattaroy*, *In re Marshall*, *In re Nine Mile*, *In re Midway*, *In re Golden Cirrus*, collectively denominated *In re Firestorm*, certified August 1994; and *In re Ponderosa*, certified July 7, 1995.  These suits involved claims against a private utility company for massive property damages and personal injuries as a result of wildland fires.  A class settlement in the amount of $11.3 million was approved by the court.

Darrell Scott served as class counsel in the multi-state class action *Joseph Delay v. Hurd Millwork Company, Inc.*  That action, involving claims by homeowners that they had been sold defective and misrepresented windows, achieved class settlement in an amount exceeding $5 million.

Darrell served as class counsel in the statewide class action matter of *St. John v. American Home Products*.  That matter, which seeks equitable relief on behalf of 125,000 Washington residents exposed to dangerous diet drugs, has achieved class settlement approval under the auspices of a nationwide settlement valued at in excess of $4 billion.

Darrell is lead class counsel in the nationwide certified product liability class action settlements, *Toner v. IRCA, et al.,* No. 98-2-10876-2-SEA, and *Dean v. Platt, et al.*, No. 99-2-06741-0SEA, in King County, Seattle, Washington, brought on behalf of owners harmed by dangerously defective in-wall heaters.  These actions have reached class settlement totaling approximately $3.9 million.

Darrell Scott is also presently lead class counsel in the matter of *Barbanti, et al. v. W.R. Grace & Co., et al.*  This action is a certified class action seeking equitable relief on behalf of

Washington residents exposed to asbestos-contaminated Zonolite Attic Insulation, a Libby, Montana, vermiculite product. Darrell Scott is now chair of the Official Asbestos Property Damages Committee created by the United States Trustee to oversee W.R. Grace's asbestos liability bankruptcy proceedings.

Darrell Scott is presently lead counsel in the matter of *Ferguson, et al. v. Riverside School District, et al.*, pending in the United States District Court, Eastern District of Washington brought on behalf of persons injured by a "sick building."

Darrell Scott is also counsel in several other currently pending regional and nationwide class actions or mass tort litigation pending in this and other states at both a state and federal level, including representation of persons injured by defective products, environmental contamination and fraudulent telecommunication billing practices.

Darrell is admitted to practice in the state of Washington, U.S. District Court, Eastern and Western Districts of Washington and the U.S. District Court, Northern District of California.

Darrell is a member of the Washington State Bar Association and the American Trial Lawyers Association.

Darrell received his B.A. from Gonzaga University in 1973. He received his M.A. in communications, *magna cum laude*, in 1974 and his Ph.D. in Rhetorical Theory, *magna cum laude*, in 1976 from Wayne State University. In 1990, he graduated *magna cum laude* with his J.D. from Gonzaga Law School.

**BURKE JACKOWICH** is an associate in the Spokane office of Lukins & Annis. Burke's practice focuses on general litigation.

Licensed to practice in Washington, Burke received his B.B.A. in Economics and International Business from Gonzaga University. He received his J.D. from the University of Washington in 2001. Burke's prior experiences include working as a Constituent Liaison for Representative George Nethercutt in Spokane and international duty as an Interrogator in the U.S. Army.

**THOMAS M. SOBOL** is a partner at the Boston office of Hagens Berman LLP. He was born in Framingham, Massachusetts, on January 6, 1958. Admitted to practice in Massachusetts, 1983; Rhode Island, 1991.

*Education*: Clark University (B.A., *summa cum laude*, 1980); Boston University School of Law (J.D., *cum laude*, 1983); member, Phi Beta Kappa.

*Employment*: Law Clerk to Chief Justice Alan M. Hale, Massachusetts Court of Appeals, 1983-84; Brown, Rudnick, Freed & Gesmer, 1984-2000 (partner with practice in complex, civil and criminal litigation); Special Assistant Attorney General to the Commonwealth of Massachusetts, 1995-99; Lead Trial Counsel for the Office of the Attorney General, State of New Hampshire, 1999-2000, Special Counsel to the Attorneys General for the States of Maine

and Rhode Island, 1999-2000; Lieff, Cabraser, Heimann & Bernstein, LLP, 2001-2002.  Mr. Sobol has tried civil and criminal cases, including complex intellectual property, construction, industrial and financial fraud disputes, in federal and state courts and before arbitration panels.

*Member*:  State Bar of California; American Bar Association; American Trial Lawyers Association; Massachusetts Bar Association; Boston Bar Association.

**JENIENE ANDREWS-MATTHEWS** is an associate at the Boston office of Hagens Berman LLP.  She was born in Los Angeles, California, on August 9, 1968. Admitted to practice in California, 2001.

*Education*:  Mills College (B.A., *cum laude*, 1993); Northeastern University School of Law (J.D., 1996.).

*Employment*:  Law Clerk to Judge Helen Gilmore, U.S. District Court, District of Hawaii, 1998-99; Staff Attorney, U.S. Court of Appeals, Ninth Circuit, 1996-98; Motions Attorney, U.S. Court of Appeals, Ninth Circuit, 1999-2001; Lieff, Cabraser, Heimann & Bernstein, LLP, 2001-02; Legal Research and Writing Instructor, Hastings School of Law, 1997-98, 1999-2000.

*Member*: State Bar of California; Lawyers' Committee for Civil Rights of the San Francisco Bay Area; Bar Association of San Francisco; Charles Houston Bar Association.