## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## FEE APPLICATION OF HOLME ROBERTS & OWEN LLP
## FOR THE FOURTH INTERIM QUARTER

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Quarterly Fee Application of Holme Roberts & Owen LLP for the Fourth Interim Quarter[1] (the "Application").

### BACKGROUND

1.     Holme Roberts & Owen LLP ("Holme") was retained as special environmental counsel to the Debtors. In the Application, Holme seeks approval of fees totaling $1,015,155.50 and costs totaling $136,984.52 for its services from January 1, 2002, through March 31, 2002 (the "Application Period").

2.     In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application. We reviewed the Application for compliance with 11 U.S.C. § 330, the Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for

---

[1] We note that Holme entitles the Application its "Third Quarterly" application, but we note that the Application is for the fourth interim fee application period in this bankruptcy proceeding.

the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Holme an initial report based on our review, and received a response from Holme, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.    In our initial report we noted that the Application does not have a separate category for Holme's own fee application preparation. The Guidelines, Rule II.D.1. states "[a] separate project category should be used for ... fee application preparation." Thus in our initial report we asked Holme in the future to please use a separate project category for time devoted to seeking its own compensation, and Holme responded that it would do so.

4.    Local Rule 2016-2(d) directs fee applicants to "include activity descriptions which shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary". Holme's timekeepers were generally attentive to this requirement, but among the many time entries we did find several instances of inadequate detail from ICM, JAH, KJL, CLN, LSD, and KWL. Thus in our initial report we asked Holme to please advise its timekeepers to be more consistent in providing the required level of detail, and Holme responded that it would do so.

5.    Paragraph II.D.5. of the Guidelines provides that "[s]ervices should be noted in detail

and not combined or 'lumped' together, with each service showing a separate time entry; however, tasks performed in a project which total a de minimis amount of time can be combined or lumped together if they do not exceed .5 hours on a daily aggregate."  We found occasional instances of lumping in the time entries of KJC, KLK, and BAT.  Thus in our initial report we asked Holme to please advise these timekeepers to be more consistent in avoiding such lumping, and Holme responded that it would do so.

6.    During this application period, Holme increased the billing rate for a number of its professionals:  Edward Stevenson went from $210 to $280 per hour; Brent A. Tracy went from $225.00 to $240.00 per hour; Thomas W. Korver went from $110.00 to $125.00 per hour; Joan M. Sherman went from $110.00 to $125.00 per hour; M. Carla Latuda went from $90.00 to $125.00 per hour; and Imelda Mulholland went from $90 to $110 per hour.  Paragraph II.A.3. of the Guidelines provides that a fee applicant shall include an "explanation of any changes in hourly rates from those previously charged".  Thus in our initial report we asked Holme to please explain these increases, particularly with respect to Mr. Stevenson and Ms. Latuda, whose rates increased 33% and 39%, respectively.  Holme responded:

> Edward Stevenson (Senior Counsel- Environmental): Mr. Stevenson's billing rate was adjusted from $210.00 per hour to $280.00 per hour after HRO discovered that the hourly rate that had previously been applied to Mr. Stevenson's services in previous applications was incorrect.  In previous applications, HRO had applied a hourly billing rate of $210.00 for Mr. Stevenson's services when his actual hourly rate applied to all other clients was $280.00 per hour.  Considering Mr. Stevenson's experience and qualifications, the corrected hourly rate for Mr. Stevenson is reasonable.  Mr. Stevenson's corrected hourly rate of $280.00 is warranted as Mr. Stevenson holds the position of Senior Counsel and has continuously practiced law for more than twelve (12) years.  Moreover, Mr. Stevenson has been licensed as a Certified Public Accountant for more than sixteen (16) years.  A copy of Mr. Stevenson's credentials are attached as Exhibit A.  Notably, HRO did not apply Mr. Stevenson's corrected billing rate retroactively to January 1, 2002.  Rather, HRO applied the corrected billing rate after the error was discovered and corrected.
> 
> b.    Brent A. Tracy (Associate Attorney- Environmental): Mr. Tracy's billing rate was adjusted from $225.00 per hour to $240.00 per hour as a customary adjustment warranted by Mr. Tracy's increase in experience and qualifications.  Mr. Tracy's rate of $240.00 is consistent with his experience and his qualifications.  Mr. Tracy has practiced law for four (4) years and has been a

chemical engineer for nearly seventeen (17) years.  Accordingly, Mr. Tracy's hourly rate is reasonable when measured by the hourly rates of a similar professional with similar experience and qualifications.  A copy of Mr. Tracy's credentials are attached as Exhibit B.

       c.     Thomas K. Korver (Senior Paralegal- Environmental): The adjustment to Mr. Korver's hourly rate to $125.00 per hour is a customary adjustment warranted by Mr. Korver's increase in experience and qualifications since the date of Mr. Korver's last rate increase.  Mr. Korver's hourly rate was last adjusted more than two years ago, on December 1, 1999, to $110.00 per hour.  Mr. Korver has more than twelve (12) years of experience as paralegal and has been a Senior Paralegal for seven (7) years.  The increase of Mr. Korver's rate to $125.00 is consistent with his experience and is reasonable when measured by the hourly rates of a similar professional with similar experience and qualifications.

       d.     Joan Sherman (Senior Paralegal- Environmental):  The adjustment to Ms. Sherman's hourly rate to $125.00 is a customary adjustment warranted by Ms. Sherman's increase in experience and qualifications.  Ms. Sherman has more than twenty (20) years of experience as paralegal and has been a Senior Paralegal for more than ten (10) years.  The increase of Ms. Sherman's rate to $125.00 is consistent with her experience and qualifications and is reasonable when measured by the hourly rates of a similar professional with similar experience and qualifications.

       e.     M. Carla Latuda (Senior Paralegal- Environmental):  The adjustment to Ms. Latuda's hourly rate to $125.00 is a customary adjustment warranted by Ms. Latuda's increase in experience and qualifications.  Ms. Latuda has more than twelve (12) years of experience as paralegal and has been a Senior Paralegal for six (6) years.  The increase of Ms. Latuda's rate to $125.00 is consistent with her experience and is reasonable when measured by the hourly rates of a similar professional with similar experience and qualifications.

       f.     Imelda Mulholland (Information Specialist- Environmental):  The adjustment to Ms. Mulholland's hourly rate to $110.00 is a customary adjustment warranted by Ms. Mulholland's increase in experience and qualifications since that date of Ms. Mulholland's last rate increase.  Ms. Mulholland has been a Information Specialist for more than ten (10) years.  The increase of Ms. Mulholland's rate to $110.00 is consistent with her experience and is reasonable when measured by the hourly rates of a similar professional with similar experience and qualifications.

We accept these explanations, and thus have no objection to these increases.

## Specific Fee and Expense Entries

7.     In our initial report we noted that while the Application does state that in-house copies are billed at $0.15 per page, and in most cases this appears to be the case, the expense detail indicates that some copies are being billed at $0.20 per page, in matters 00310 (62 copies) and 00350 (2191).  Local Rule 2016-2(e) requires fee applications to "state the requested rate for copying charges (which shall not exceed $.15 per page)".  Thus in our initial report we asked Holme to explain this matter.  Holme responded:

> HRO's billing of copying charges at $0.20 per page in matters 00310 and 00350 was due to an accounting error and HRO agrees to a reduction of HRO's requested award for reimbursement of

costs by $112.65 (2253 copies x $0.05).

Thus we recommend a reduction of $112.65 in expenses.

8.      In our initial report we noted that on a number of occasions the total of the time entry

parentheticals stated in the time entries was less than the time indicated in the "Hours" column of

the invoices.  These occasions are set forth below:

| Date | Tkpr | Description | Hours | Value |
|------|------|-------------|-------|-------|
| 01/30/02 | TWK | Review documents at Department of Transportation Volpe Center re actions taken and costs incurred at Libby Site (3.3); telephone conference with DVanOrten re arrangements for continued review of documents available at Volpe Center re support for DOT actions at Libby (1.50); draft memo summarizing documents available at Volpe Center additional documents available at Volpe and possible actions to be taken in response to documents reviewed (.80). | 6.30 | $ 693.00 |
| 02/26/02 | KJC | Conference with CLNeitzel re issues coding, experts and data (0.90). | 2.10 | 504.00 |
| 02/26/02 | MBF | Review and code documents related to EPA information requests and consumer product case issues including conference with KJCoggon (.60). | 6.40 | 576.00 |
| 02/03/02 | MCL | Travel to Boston to conduct document review (3.00) (3.00 N/C) (NWT 50%). | 3.50 | 437.50 |
| 03/25/02 | CLN | Conference with expert re NPL comments (.50); evaluate information needed from R.J. Lee (1.0); conference with D. Kuchinsky re contacting experts (.30); work on identification of experts (1.20); work on NPL comments (.80); followup call to potential expert (.20); conference with potential expert (.30); coordinate with expert re comments and draft comments (4.0). | 9.30 | 2,790.00 |
| 03/08/02 | MCL | Telephone conference with JLSherman re status of document review at Cambridge including tasks to be completed next week and staffing issues (.60); review documents at Cambridge to determine | 8.60 | 1,075.00 |

| | | | | |
|---|---|---|---|---|
| | | responsiveness to EPA information requests and plaintiff document requests including coding of same (4.50); travel to Denver (3.00) (3.00 N/C) (NWT 50%) | | |
| 03/25/02 | MCL | Conference with JLSherman re Cambridge document review status (.40); telephone conference with Matt Murphy re issues concerning re-integrating documents into Dead Storage boxes that were pulled in January and February 2000 for initial document review project for EPA (.40); draft e-mail to Matt Murphy re status of Boston/Cambridge document review including number of boxes and files remaining to be reviewed (.50); review documents at Cambridge to determine responsiveness to EPA information requests and plaintiff document requests including coding of same (8.90). | 10.30 | 1,287.50 |

Thus in our initial report we asked Holme to please explain these discrepancies. Holme responded with the table attached hereto as Table 1, in which Holme agreed to a reduction of fees in the amount of $802.00. Thus we recommend a reduction of $802.00 in fees.

9.    The Application includes expense entries for overtime totaling $15,257.50 ($2,430.50 for January, $8,317.50 for February, and $4,509.50 for March). Paragraph II.E.7. of the Guidelines, discussing nonreimbursable overhead, provides that "[Overhead] consists of all continuous administrative or general costs incident to the operation of the applicant's office and not particularly attributable to an individual client or case. Overhead includes word processing, proofreading, secretarial and other clerical services...." Thus in the initial report we asked Holme to please explain why these overtime charges should not be classified as nonreimbursable overhead. Holme responded:

> All of the overtime expenses for which HRO requests reimbursement are isolated to and attributable to matter number 00400 (Boston Document Production). HRO incurred overtime expenses in this matter due to Grace's obligation to respond to a request for information propounded by the EPA under Section 104(a) of CERCLA, as well as discovery in related litigation matters. Grace and its

counsel were obligated to respond to the document requests within the very short time line established by the Court. In order to meet the deadlines, HRO support staff was required to work overtime. HRO is required to pay its support staff at a greater rate for overtime work. The combination of the short deadlines and the volume of documents that HRO was required to review compelled HRO support staff to work overtime in this particular matter. HRO should be reimbursed for its overtime expenses in this particular matter due to the unique circumstances presented. Accordingly, the overtime expenses noted above should not be classified as nonreimbursable overhead.

We accept this explanation, and thus have no objection to these charges.

10.     In our initial report we noted that for 1/17/02 there was another conference in which

the lawyers billed different amounts of time.

| Date | Timekeeper | Hours | Amount | Description |
|------|-----------|-------|--------|-------------|
| 01/17/02 | KWL | 2.6 | $ 845.00 | ($325) Meeting with Jim Stout re witness preparation (1.2); ... |
| 01/17/02 | JDM | 3.5 | $ 875.00 | ($250) ... Meeting with Jim Stout, KWLund and JAHall re key documents and issues for case (2.1); ... |
| 01/17/02 | JAH | 8.1 | $1,782.00 | ($220) ... conference with JDMcCarthy and potential expert and witness re background of investigation and remedial action (2.0) |

We noted that in addition to this time discrepancy, another issue is the participation of three

attorneys in this meeting with a witness. Paragraph II.D.5. of the Guidelines provides that "[i]f more

than one professional from the applicant firm attends a hearing or conference, the applicant should

explain the need for multiple attendees." Thus we asked Holme to please both explain this time

discrepancy, and explain why it was necessary for three attorneys to participate in this conference.

Holme responded:

> The apparent discrepancy identified in Paragraph 11 of the Report is due to the different levels of participation among the timekeepers in the referenced meeting. The meeting referenced by all three timekeepers on 1/17/02 ran a total of 2.1 hours. Timekeeper JDM participated in the entire meeting. Timekeeper JAH participated in 2.0 hours of the meeting. Timekeeper KWL participated in only 1.2 hours of the meeting. Accordingly, all three time entries are accurate. Three attorneys participated in this conference to enable timekeeper KWL ($325/ hour) to transition responsibility of the matter to timekeeper JAH ($220/hour) who's billing rate would be more cost-effective in handling the particular matter.

We understand the explanation regarding the time discrepancy, and we understand the explanation regarding why KWL and JAH had to participate in this meeting, but we do not understand why JDM had to be involved in this meeting, and thus recommend a reduction for this time, for a reduction of $525.00 in fees.

11.    In our initial report we noted that between 2/7/02, and 3/7/02, MBF spent a total of 36.20 hours for a total of $3,258.00 performing quality control/quality assessment on documents.

| Date | Tkpr | Description | Hours | Value |
|------|------|-------------|-------|-------|
| 02/07/02 | MBF | Perform quality control of coded Libby documents in Lotus Notes database. | 2.40 | 216.00 |
| 02/08/02 | MBF | Perform quality control on documents coded in Lotus Notes. | 1.00 | 90.00 |
| 02/11/02 | MBF | Perform quality assessment, quality control on documents coded in Lotus Notes. | 0.70 | 63.00 |
| 02/12/02 | MBF | Perform quality control/quality assessment on documents coded into Lotus Notes database. | 4.00 | 360.00 |
| 02/14/02 | MBF | Perform quality control/quality assessment on coding of documents responsive to EPA information requests in Lotus Notes database. | 4.00 | 360.00 |
| 02/19/02 | MBF | Perform quality control/quality assessment of documents coded into Lotus Notes | 2.00 | 180.00 |
| 02/25/02 | MBF | Perform quality control and quality assessment on Historical documents in Lotus Notes database. | 2.00 | 180.00 |
| 02/27/02 | MBF | Perform quality control/quality assessment of documents coded in Lotus Notes database. | 2.00 | 180.00 |
| 02/28/02 | MBF | Perform quality control/quality assessment on Historical documents coded in Lotus Notes. | 2.00 | 180.00 |
| 03/01/02 | MBF | Perform quality control/quality assessment of Historical documents coded into Document Director and Lotus Notes. | 5.20 | 468.00 |
| 03/05/02 | MBF | Perform quality control/quality assessment on Historical documents coded into Document Director/Lotus Notes database. | 2.30 | 207.00 |
| 03/06/02 | MBF | Perform quality control/quality assessment on documents coded into Document Director and Lotus Notes. | 4.20 | 378.00 |
| 03/07/02 | MBF | Perform quality control/quality assessment of Historical documents coded into Lotus Notes | 2.80 | 252.00 |

and Document Director databases.

Local Rule 2016-2(d) provides that fee applications "shall include activity descriptions which shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary." It is not clear what this task entailed, and thus we asked Holme to please explain the nature of the task and why so much time was spent on it. Holme responded:

> time billed by timekeeper MBF (Mary Beth Floyd) is warranted as the services are actual, reasonable, and necessary to efficiently respond to requests for production of documents and prepare Grace's defenses in various actions. Ms. Floyd's time entries identified by the Report represent time necessary to review and revise coding information for documents stored electronically in a Lotus Notes database. Ms. Floyd's time entries referencing quality control/ quality assessment duties refer to time Ms. Floyd spent reviewing documents stored electronically which Grace had selected for production to the EPA. In reviewing these documents, Ms. Floyd checked documents to (i) ensure that accurate coding information had been captured; and (ii) further categorize the documents for future use. There are over 2 million pages stored in the historical documents database that will require additional review at varying levels in order to ensure that documents are produced appropriately and are available in an efficient format for future use in various actions. Accordingly, the fees identified in Paragraph 12 should be allowed as the services rendered by Ms. Floyd are actual, reasonable, and necessary.

We believe that we understand this explanation, and thus do not recommend any reduction for these services.

12.     In our initial report we noted that between 1/7/02 and 3/20/02, LCS ($85.00) spent a total of 86.9 hours on a task described as follows: "Input and maintain data in the Cambridge/Winthrop Box Tacking Database," and we asked Holme to please explain what this task entailed and why so much time was spent on it. Holme responded:

> timekeeper LCS (Loraine Street) is responsible for maintaining a database that tracks all of the boxes reviewed for documents that may potentially be responsive to the EPA's information requests under Section 104(a) of CERCLA. The volume of boxes and documents reviewed is enormous and requires careful tracking to ensure that no documents that may potentially be responsive to an EPA request are omitted from production. The database serves the additional purpose of allowing Grace and its counsel to respond more quickly and efficiently to document requests in the various actions. Accordingly, the fees identified in Paragraph 13 should be allowed as the services rendered by Ms. Street are actual, reasonable, and necessary.

We accept this explanation and do not recommend any reduction for this matter.

13.    Between 3/4/02, and 3/26/02, WEP spent a total of 68.70 hours for a total of $5,839.50 loading and making copies of CD's.

| Date | Tkpr | Description | Hours | Value |
|------|------|-------------|-------|-------|
| 03/04/02 | WEP | Load CD's "Volpe Center 4" through "Volpe Center 7" into Document Director. | 6.80 | 578.00 |
| 03/05/02 | WEP | Make one copy of CD's "Volpe Center 4" through "Volpe Center 7" (3.4); Make one copy of CDs "Box1" through "Box3" (3.1) | 6.50 | 552.50 |
| 03/07/02 | WEP | Make two copies of CD's "Volpe Acquisition" disks 1 and 2(2.5); Make two copies of CD's "VOLPE 8" through "VOLPE 10"(3.5) | 6.00 | 510.00 |
| 03/11/02 | WEP | Make eight copies of CD "FOIA Request 12/10/01" (2.0); Make one copy of CD's "VOLPE Disks" 1 through 7 (2.0). | 4.00 | 340.00 |
| 03/13/02 | WEP | Export images from Document Director and create 3 CD's (T CD0077 -T CD0079) of images for coding QC | 7.80 | 663.00 |
| 03/14/02 | WEP | Make 4 copies of CD's "Sitewide Public Records" volumes 1 through 4 | 7.00 | 595.00 |
| 03/15/02 | WEP | Export images from Document Director and create 3 CDs(T CD0080-T CD0082) of images for coding QC(6.8); Make one copy of CDs "John Mcguiggin e-mails" and "2000-2001 Met. Data"(.5) | 7.30 | 620.50 |
| 03/18/02 | WEP | Export images from Document Director and create 4 CDs(T CD0083-T CD0086) of images for coding QC | 7.00 | 595.00 |
| 03/19/02 | WEP | Export images from Document Director and create 4 CDs(T CD0087-T CD0090) of images for coding QC | 7.30 | 620.50 |
| 03/20/02 | WEP | Export images from Document Director and create 4 CDs(T CD0091-T CD0094) of images for coding QC | 6.00 | 510.00 |
| 03/26/02 | WEP | Make one copy of CD's "Volpe Acquisition CDs" volumes 1 and 2(1.6);  Make two copies of CD "FOIA Request 12/10/01"(1.4) | 3.00 | 255.00 |

In our initial report, we noted that the timekeeper who performed this task is listed as an "Info. Spec.", rather than a lawyer or paralegal, and asked Holme to please explain why it is appropriate to charge $85 per hour for WEP's time relating to the foregoing tasks.  Holme responded:

> timekeeper WEP (William Payne) is a computer and document specialist responsible for database support and document imaging. Mr. Payne spends considerable time each month assisting the attorneys by loading electronically captured images into a central database for use by the litigation team. Mr. Payne also provides electronic copies of documents on compact disks for dissemination to experts, the client, the EPA, and other appropriate parties. Unlike simple computer tasks, the loading and copying of CD's with this type of data takes considerable time. For example, Mr. Payne's duties require him to check each file to be sure that the file is not corrupted, that the file contains the appropriate information, and that the file is complete. Mr. Payne has worked with this and similar databases for several years. An outside vendor providing similar services bills for such services at a rate of between $95.00 to $150.00 per hour. HRO's use of an in-house IT specialist enables the litigation team to respond more efficiently to requests for documents and to manage the significant databases necessary to track the substantial volume of documents at issue in the various actions. Accordingly, the fees identified in Paragraph 14 should be allowed as the services rendered by Mr. Payne are actual, reasonable, and necessary.

We believe that this information adequately explains the time entries such as "Export images from Document Director and create 4 CDs", but it does not explain the time entries for copying CDs, the time entries for which total $2,252.50, and as we believe that the copying of CDs is a ministerial task for which the estate should not be charged, we recommend a reduction of $2,252.50 in fees for this matter.

14.     In our initial report we noted that between 2/26/02 and 3/26/02, six professionals spent a total of 42.10 hours for a total of $12,097.50 in fees regarding NPL listing comments and related issues. See Exhibit A. Local Rule 2016-2(d) provides that fee applications "shall include activity descriptions which shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary." In our initial report we noted that it is our understanding that the purpose of the EPA's National Priorities List is to identify releases of hazardous substances or pollutants and contaminants that are priorities for further evaluation, and that significant comments received during the comment period will be addressed in a support document that EPA will publish concurrently with the Federal Register document if, and when, the site is listed on the NPL. Nonetheless, we were unable to determine from the time entries

why so much time was spent on the comments, and thus we asked Holme to please explain the issue and why so much time was spent on it.  Holme responded:

> time billed regarding the NPL listing comments and related issues is warranted as the services are actual, reasonable, and necessary for the protection and defense of Grace's interests with respect to the EPA cost recovery case and other pending actions against Grace. The NPL listing at the Libby site, and Grace's comments in response to the listing, relate to both the EPA cost recovery case and various attic insulation issues.  More particularly, the information and data which the EPA offers in support of the NPL listing have significant implications to active litigation matters which are being vigorously defended by Grace.  Accordingly, the fees identified in Paragraph 15 and in Exhibit A should be allowed.

We believe that this response is conclusory, and that it and the time entries do not provide information sufficient to establish why it was necessary that all six professionals bill time to this matter, and thus we recommend a reduction of ½ the fees billed on this matter, for a reduction of $6,048.75 in fees.

15.      In our initial report we noted that between 2/26/02 and 3/29/02, CLN, EES, and KJC spent a total of 112.80 hours for a total of $31,508 in fees regarding cost issues.  See Exhibit B. Local Rule 2016-2(d) provides that fee applications "shall include activity descriptions which shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary."  Thus we asked Holme to please explain this issue and why so much time was spent on it.  Holme responded:

> time billed regarding "cost issues" is warranted as the services are actual, reasonable, and necessary for the protection and defense of Grace's interests as to the EPA cost recovery litigation regarding the Libby Site.  The EPA has spent nearly $44 million at the Libby Site through December 31, 2001. Estimates for the clean-up of the Libby Site are as high as $100 million.  Grace's defense in the EPA's cost recovery case will focus, in large measure, on verifying that the EPA's costs are justifiable and supported by generally accepted accounting principles.  Various HRO attorneys are evaluating the EPA's cost recovery claims with a particular focus on the significant technical and accounting issues that are presented in a clean-up of this magnitude.  HRO's services in verifying the EPA costs are essential to Grace's defense in the cost recovery case.  Accordingly, the fees identified in Paragraph 16 and in Exhibit B should be allowed.

We believe that we understand this explanation, and thus have no objection to these fees.

16.    On 3/30/02 and 3/31/02, LSD spent 17.3 hours ($5,190) on research bearing the

generic description "Research case law".

| Date | Tkpr | Description | Hours | Value |
|------|------|-------------|-------|-------|
| 03/30/02 | LSD | Research case law (6.0) and begin drafting motion for summary judgment (1.0) | 7.00 | 2,100.00 |
| 03/31/02 | LSD | Research case law (11.3); continue drafting motion for summary judgment (2.5) | 13.80 | 4,140.00 |

In our initial report we asked Holme to please explain the issue being researched and why it required

such a substantial expenditure of time from an attorney billing at $300 per hour.  Holme responded:

> time billed for legal research and drafting of a response to a motion for summary judgment is
> warranted as the services are actual, reasonable, and necessary for the protection and defense of
> Grace's interests in the cost recovery case.   Timekeeper LSD conducted the legal research necessary
> to prepare a responsive brief to the EPA's motion for summary judgment.  The research related to the
> complicated facts and law supporting Grace's affirmative defenses under CERCLA.   Because
> timekeeper LSD was responsible for drafting the responsive brief  to the EPA's summary judgment
> motion, HRO concluded that it would be most cost-efficient for LSD to perform the legal research
> necessary to LSD's drafting of the brief in opposition to the EPA's motion.  Accordingly, the fees
> identified in Paragraph 17 should be allowed.

We accept this explanation, and do not seek any reduction for this matter.  We note that this matter

most likely will continue into the next application period.

## CONCLUSION

17.    Thus, we recommend approval of fees totaling $1,005,527.25 ($1,015,155.50 minus

$9,628.25) and costs totaling $136,871.87 ($136,984.52 minus $112.65) for Holme's services from

January 1, 2001 through March 31, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
       Warren H. Smith
       Texas State Bar No. 18757050
       Mark W. Steirer
       Texas State Bar No. 19139600

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 29th day of July 2002.

_____
Warren H. Smith

# SERVICE LIST

### Notice Parties

## The Applicant

Elizabeth K. Flaagan, Esq.
Holme Roberts & Owen, L.L.P.
1700 Lincoln St., Suite 4100
Denver, CO 80203

## The Debtors

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

## Counsel for the Debtors

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

## Counsel for the Official Committee of Unsecured Creditors

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

## Counsel to the Official Committee of Property Damage Claimants

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Matthew G. Zaleski, III, Esq.
Campbell & Levine
Chase Manhattan Centre, 15th Floor
1201 Market Street, Suite 1200
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Table 1

| Date | Tkpr | Explanation/Amendment | Adjustment to Fee Request |
|------|------|----------------------|---------------------------|
| 1/30/02 | TWK | Addition error.  Time billed should be 5.6 hours with a value of $616.00. | ($77.00) |
| 2/26/02 | KJC | Typographical error.  Time billed should be 0.90 hours with a value of $216.00 | ($288.00) |
| 2/26/02 | MBF | Typographical error.  Time noted in description should be 6.4 hours rather than .60 hours. | No Change |
| 2/03/02 | MCL | Typographical error.  Time noted in description should be (6.0) (3.0 N/C) (NWT 50%). | ($62.00) |
| 3/25/02 | CLN | Addition error.  Time billed should be 8.3 hours with a value of $2,490.00. | ($300.00) |
| 3/8/02 | MCL | Addition error.  Time billed should be 8.10 hours with a value of $1,012.50. | ($62.50) |
| 3/25/02 | MCL | Addition error.  Time billed should be 10.2 hours with a value of $1,275.00. | ($12.50) |
| | | **Total Adjustments** | **($802.00)** |

Exhibit A

| Date | Tkpr | Description | Hours | Value |
|------|------|-------------|-------|-------|
| 02/26/02 | CLN | Review Libby NPL proposal (.30); coordinate With KW Lund and MaryBeth Floyd to review NPL Proposed docket (.20)... | 4.50 | 1,350.00 |
| 02/26/02 | KJC | Telephone conference with MBFloyd re NPL Listing docket review. | 0.20 | 48.00 |
| 02/26/02 | MBF | Alert attorneys of NPL listing of Libby site in Federal Register (.30); arrange to have copies of Federal Register made for attorneys (.20); speak With CLNeitzel and KJCoggon re viewing docket at EPA (.30); call EPA to arrange appointment to View docket (.20). | 1.00 | 90.00 |
| 02/27/02 | CLN | ...conference with TKorver re NPL proposal (.20) | 7.50 | 2,250.00 |
| 02/28/02 | CLN | ...develop outline for risk experts and for NPL proposal comments (4.50). | 5.70 | 1,710.00 |
| 03/01/02 | CLN | Work on comments on NPL listing (.50).... | 3.30 | 990.00 |
| 03/04/02 | JDM | ...telephone conference with M.. Grummer re NPL issues (0.1). | 0.60 | 150.00 |
| 03/04/02 | CLN | Evaluate docket for NPL (5.50); conference with R. Emmett re NPL proposal (.30) | 5.80 | 1,740.00 |
| 03/04/02 | MBF | Arrange to have discs and documents from NPL docket copied and delivered to CLNeitzel for transmission to consultants. | 0.60 | 54.00 |
| 03/04/02 | TWK | ...research documents in docket in support of NPL listing (.70). | 4.50 | 562.50 |
| 03/06/02 | KWL | ...telephone conference with Bill Corcoran and David Siegel re NPL comments (1.00).... | 8.00 | 2,600.00 |
| 03/07/02 | KWL | Review ATSDR and Volpe documents re NPL listing and risk issues. | 4.00 | 1,300.00 |
| 03/07/02 | CLN | ...develop schedule and work on comments on proposed NPL listing (2.50) | 2.80 | 840.00 |
| 03/08/02 | CLN | ...comments on NPL proposal (.80). | 6.80 | 2,040.00 |
| 03/11/02 | KWL | Telephone conference with Bill Corcoran re NPL response strategy (.50).... | 2.90 | 942.50 |
| 03/12/02 | CLN | Coordinate with experts re NPL comments | 0.80 | 240.00 |
| 03/13/02 | CLN | Work on NPL listing comments (5.0).... | 6.80 | 2,040.00 |
| 03/13/02 | KJC | ...conference with TWKorver and CLNeitzel re comments on NPL listing (0.70). | 1.00 | 240.00 |
| 03/13/02 | TWK | Meet with CLNeitzel and KJCoggin re comments on NPL listing (.70). | 0.70 | 87.50 |
| 03/15/02 | KWL | ...prepare for telephone conference with Bill Corcoran and Bob Emmett re NPL listing issues | 7.90 | 2,567.50 |

|          |      | (1.10); telephone conference with Bill Corcoran and Bob Emmett re NPL listing issues (1.60)... draft NPL strategy update for Bob Emmett (2.00).... |      |          |
|----------|------|---------------------------------------------------------------------------------|------|----------|
| 03/15/02 | KJC  | Conference with KWLund re NPL listing comments and WR Grace "Story."             | 0.20 | 48.00    |
| 03/15/02 | TWK  | Research historical materials re naturally occurring tremolite for NPL listing comments (.50). | 0.50 | 62.50    |
| 03/25/02 | CLN  | Conference with expert re NPL comments (.50); evaluate information needed from R.J. Lee (1.0); ...work on NPL comments (.80) ... coordinate with expert re comments and draft comments (4.0). | 9.30 | 2,790.00 |
| 03/26/02 | CLN  | ...coordinate with consulting expert and KWLund re comments for proposed NPL (.30). | 3.30 | 990.00   |

Exhibit B

| Date | Tkpr | Description | Hours | Value |
|---|---|---|---|---|
| 02/26/02 | CLN | ...conference with KJCoggon re issue coding and preparing documents for cost recovery defense (.90).... | 4.50 | 1,350.00 |
| 02/27/02 | CLN | Review of health risk documents in administrative records to assist in defending against EPA cost recovery and to identify health risk experts (4.80); conference and strategize with JDMcCarthy re health experts (.50); conference with Phil Goad re health risk experts and re December 2001 Weis memo (.80); prepare list of experts (1.20).... | 7.50 | 2,250.00 |
| 03/01/02 | EES | ...review additional Cotton & Company (CPA's) ATSDR cost audit information (1.70). | 2.10 | 588.00 |
| 03/05/02 | EES | ...review additional documentation underlying Financial Management Offices Itemized Cost Summary (1.70).... | 7.60 | 2,128.00 |
| 03/06/02 | EES | ...review ATSDR indirect cost calculation materials (2.30).... | 5.70 | 1,596.00 |
| 03/07/02 | EES | Meeting with JDMcCarthy re cost issues (.30); review costs ATSDR charged from November 1, 2000 to June 30, 2001 (1.90); review NORC overhead charges/calculation methodology (2.20) ...begin review of Volpe supplemental cost document production (2.40). | 7.10 | 1,988.00 |
| 03/08/02 | EES | Draft analysis of documentation supporting ATSDR's allocation transfer IAG of $1.5 million (2.20).... | 2.90 | 812.00 |
| 03/11/02 | EES | Review new Volpe cost documentation from Foster Wheeler Environmental Corporation (.90); review new Volpe cost documentation from Environmental Chemical Corporation (3.10); review audit report of Environmental Chemical Corporation (1.60); continue draft analysis of ATSDR cost documentation (2.10). | 7.70 | 2,156.00 |
| 03/12/02 | EES | Expand outline/analysis of ATSDR cost documentation (3.80) ... review additional Environmental Chemical Corporation cost documentation (1.70). | 6.80 | 1,904.00 |
| 03/13/02 | EES | ...review additional ATSDR task, status report and budgeting documentation (4.10). | 7.40 | 2,072.00 |

| 03/14/02 | EES | Review contract bidding and award documents (3.30); review budgeting and progress reports for excavation activities (1.80).... | 8.80 | 2,464.00 |
|---|---|---|---|---|
| 03/15/02 | EES | ...review cost workpapers prepared by accounting experts (2.90). | 6.90 | 1,932.00 |
| 03/18/02 | EES | Review Marcor contract documentation and modifications (Volpe production) (3.20); review Marcor monthly cost/progress reports (1.90); review contracting office cost evaluations of Marcor costs (3.30). | 8.40 | 2,352.00 |
| 03/19/02 | EES | Review additional Marcor cost documentation (1.70); review Volpe bidding documents (3.20); conference calls with accounting expert re numerous data base/audit issues (1.70); review additional NORC (ATSDR contractor) cost documentation (1.80) | 8.40 | 2,352.00 |
| 03/20/02 | EES | ...review additional contractor expenditure documents (3.60). | 6.90 | 1,932.00 |
| 03/21/02 | EES | Continue review of Volpe cost documentation (including progress reports, monthly billing information and funding modifications) (4.70); telephone conferences with cost expert re cost documentation issues (.90) ... review Toeroek Associates' billing documents (1.80). | 8.60 | 2,408.00 |
| 03/22/02 | KJC | ...telephone conference with EEStevenson re letter to DOJ re missing cost documents (0.30); conference with EEStevenson and experts re cost documentation (1.60). | 5.10 | 1,224.00 |
| 03/22/02 | EES | ...draft summary of missing cost documentation for EPA demand letter (2.80).... | 7.10 | 1,988.00 |
| 03/25/02 | KJC | ...draft and revise letter to H. Kukis re missing cost documentation (1.90); telephone conferences with EEStevenson re letter to H. Kukis (0.50).... | 5.60 | 1,344.00 |
| 03/25/02 | EES | Review and supplement demand letter to EPA regarding cost documentation (2.30); review additional Marcor cost/progress report documentation (1.40) ... review SCORPIO's cost report backup schedules (1.80). | 6.10 | 1,708.00 |
| 03/26/02 | KJC | Revise and send letter to H. Kukis re cost documentation (1.70).... | 5.50 | 1,320.00 |
| 03/26/02 | EES | Review Environmental Chemical bidding documentation and audit evaluations (2.20) ... | 5.60 | 1,568.00 |

|  |  | telephone conferences with accounting experts re cost audit/evaluation issues (1.70). |  |  |
|---|---|---|---|---|
| 03/27/02 | EES | Review extensive billing procedure cost documentation (1.70); review additional Lockheed Martin cost documentation (.40); review additional URS cost documentation (.50); extensive telephone conferences with accounting and cost experts re cost documentation issues (2.10); review additional Toeroek cost documentation (1.40). | 6.10 | 1,708.00 |
| 03/28/02 | EES | Review cost audit workpapers and schedules prepared by accounting experts (3.30); review NORC documentation (1.50); review additional ATSDR cost schedules (1.80). | 6.60 | 1,848.00 |
| 03/29/02 | EES | ...review additional cost audit workpapers prepared by accounting experts (3.10); meeting with accounting experts (2.80). | 7.10 | 1,988.00 |