# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## FOURTH INTERIM QUARTERLY FEE APPLICATION OF
## NELSON MULLINS RILEY & SCARBOROUGH, LLP

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fourth Interim Quarterly Fee Application of Nelson Mullins Riley & Scarborough, LLP</u>[1] (the "Application").

## BACKGROUND

1.     Nelson Mullins Riley & Scarborough, LLP ("Nelson Mullins"), was retained as special litigation and environmental counsel for the Debtors.  In the Application, Nelson Mullins seeks approval of fees totaling $62,909.00 and costs totaling $322.04 for its services from January 1, 2002, through March 31, 2002.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application.   We reviewed the Application for compliance with 11 U.S.C. § 330, the Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for

---

[1]We note that Nelson Mullins styled the Application as its "First Quarterly" fee application. To promote consistency and to avoid confusion in the fee audit process, we have referred to the Application as the "Fourth Interim Quarterly" fee application because it relates to the fourth quarter for which such applications have been submitted in the case.

the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served on Nelson Mullins an initial report based on our review, and received a response from Nelson Mullins, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.      In our initial report we noted that the Application does not have a separate category for Nelson Mullins' own fee application preparation.  Guidelines Rule, II.D.1. states "[a] separate project category should be used for ... fee application preparation."  Thus in our initial report we asked that Nelson Mullins please use a separate project category for time devoted to seeking its own compensation, and Nelson Mullins responded that it would do so.

4.      The time entries were generally adequately detailed and devoid of lumping, although we noted several instances of lumping by timekeepers Brown, Cauthen, N.J. Smith, and Hawkins and instances of inadequate detail in time entries for timekeepers Brown, Hawkins, and Cauthen. Paragraph II.D.5. of the Guidelines provides that "[s]ervices should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry."  Thus in our initial report we asked Nelson Mullins to please advise these timekeepers to be more consistent in avoiding lumping and providing detailed descriptions of their activities in the future, and Nelson Mullins responded that it would do so.

## Specific Time and Expense Entries

5.      Between January 1, 2002, and January 22, 2002, five professionals spent a total of

26.80 hours for a total of $6,355.00 preparing an audit letter.

| 01/10/02 | Review letter from Mr. Siegel regarding preparation of audit letter on specific outstanding potential claims; review items with Attorney Cleary and approach to response. |
|---|---|
| | B.F. HAWKINS          0.90 hrs.          240.00/hr.          $216.00 |

| 01/14/02 | Review Attorney Cleary's instructions for preparing an audit bulletin; search files for an audit bulletin. |
|---|---|
| | K. BROWN          0.30 hrs.          125.00/hr          $37.50 |

| 01/18/02 | Research and draft response to Grace request to provide information to its auditors. |
|---|---|
| | D.M. CLEARY          5.30 hrs.          290.00/hr          $1,537.00 |

| 01/18/02 | Review information from Attorney Cleary concerning Grace audit letter. |
|---|---|
| | B.F. HAWKINS          0.40 hrs.          240.00/hr          $96.00 |

| 01/18/02 | .....; search for documents and e-mail to Attorney Cleary correspondence regarding audit letter (0.4). |
|---|---|
| | K. BROWN          2.20 hrs.          125.00/hr          $275.00 |

| 01/21/02 | Redraft portions of audit letter (0.8); read Attorney Smith's comments (0.1); discuss status of letter and proposed issues with Attorneys Hawkins and Carlisle (0.2) |
|---|---|
| | D.M. CLEARY          1.10 hrs.          290.00/hr          $319.00 |

| 01/21/02 | Review and revise audit letter response as requested by Attorney Cleary. |
|---|---|
| | N.J. SMITH          0.30 hrs.          250.00/hr          $75.00 |

| 01/21/02 | Review information relevant to completing audit letter (0.9); discussion with Attorney Carlisle and Attorney Cleary regarding items to be included in letter and information that need to be obtained (0.5) |
|---|---|
| | B.F. HAWKINS          1.40 hrs.          240.00/hr          $336.00 |

| 01/21/02 | Confer with Attorney Cleary and Attorney Hawkins regarding information to be included in audit letter; begin editing draft letter |
|---|---|
| | R.T. CARLISLE          0.90 hrs.          220.00/hr          $198.00 |

| 01/22/02 | Review and complete drafting PricewaterhouseCoopers audit letter with Attorney Carlisle and Attorney Hawkins |
|---|---|

| | D.M. CLEARY | 3.50 hrs. | 290.00/hr | $1,015.00 |

01/22/02    Review information relevant to providing response to audit letter (1.8); review items with paralegal and Attorney Carlisle that need to be completed to complete letter (0.4); continue locating information to complete audit request (1.1); review and revise audit letter (0.8)

| | B.F. HAWKINS | 4.10 hrs. | 240.00/hr | $984.00 |

01/22/02    Research status of various sites and environmental liabilities and revise draft audit response to incorporate status (2.3);......; revisions to audit response based on comments from Attorneys Hawkins and Cleary (0.7); review additional file information (2.2); make final edits to letter (0.5).

| | R.T. CARLISLE | 7.80 hrs. | 220.00/hr | $1,716.00 |

01/22/02    Assist Attorneys Hawkins and Carlisle in response to Audit letter.

| | L.K. THOMAS | 2.50 hrs. | 95.00/hr | $237.50 |

Local Rule 2016-2(d) provides that fee applications "shall include activity descriptions which shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary." Thus in our initial report we asked Nelson Mullins to please explain why so much time was spent on this activity. Nelson Mullins responded:

Paragraph 5 addresses the work involved in the preparation of the response to the client's January 8, 2002 request, in connection with an audit of the client's consolidated financial statements, for a description and evaluation of matters to which the firm has been engaged and to which the firm devoted substantive attention on behalf of the client or its subsidiaries in the form of legal consultation or representation. The response was issued by Nelson Mullins on January 22, 2002 (Response to Audit Request).

While substantial time was spent on the preparation of the Response to Audit Request, it was necessary to assure that all evaluations stated in the letter were accurate. Nelson Mullins has represented W.R. Grace for over ten years. In the course of that time, we estimate that we have been involved in dozens of discrete matters for the client. Each of those matters had to be considered to determine whether disclosures were appropriate under the terms of the request for the information. For example, in some cases, not all issues were resolved despite a partial settlement, but whether an additional claim was possible, and, if so, whether it was probable of assertion had to be determined. In addition, the information sought by the client in its audit request was expansive. Nelson Mullins was asked to disclose matters involving exposure to a possible loss or gain of $500,000 or more and (1) that constituted pending or threatened litigation, claims or assessments or pending governmental investigations that could give rise to contingencies (excluding unasserted claims), or (2) that constituted unasserted claims or assessments considered by management to be probable of assertion and which, if asserted, would have at least a reasonable possibility of an unfavorable outcome. Moreover, the response was due less than two weeks after it was received by the firm.

Since this was the first response to an audit request that the firm has prepared for W.R. Grace, this evaluation required a new substantive review to identify what features of each matter

constituted pending or threatened claims that were within the scope of what was requested to be disclosed. Within the firm, different matters for W.R. Grace, and in some cases different issues for a single site, have been handled by different attorneys. The number of timekeepers shown on the invoice for this project reflects this. That number also is a function of the number of matters to be reviewed, the breadth and complexity of the review demanded, and the short time frame involved. Several attorneys and paralegals were needed to pull together the information and analysis to provide a timely response to the client.

In addition, due to the client's filing for Chapter 11 protection, many matters handled by the firm had been dormant for at least several months between the bankruptcy filing and request for the review. Facts had to be updated and liability issues had to be reviewed in light of this gap in our active participation. Evaluation of some of these sites required investigation to attempt to determine the present status of activity and the current estimate of overall potential costs for that site. These factors added to the time necessary to conduct a complete and accurate review. Nelson Mullins believes that the time spent on this project was actual, reasonable, and necessary under these circumstances.

We accept this explanation and thus do not recommend any reduction for this matter.

6.    In our initial report we noted that on February 21, 2002, attorneys Hawkins and

Ternes participated in the same conference call for .8 hour.

02/21/02    Telephone conference call with Attorney Ternes, Mr. O'Connell and other Grace representatives regarding evaluation issues arising from stack emission characterization attempt (0.8); telephone conference with Attorney Ternes regarding strategy moving forward with characterization issues (0.6).
B.F. HAWKINS                    1.40 hrs.        240.00/hr.     $336.00

02/21/02    Telephone conference with Mr. O'Connell and Mr. Haase regarding technical issues arising from stack emission characterization attempt (0.6); telephone conference call with Attorney Hawkins, Mr. O'Connell and other Grace representatives regarding stack characterization information (0.8); telephone conference with Attorney Hawkins regarding characterization (0.6); legal research regarding NSPS questions (0.8); draft e-mail to Attorney Hawkins regarding stack characterization issues.
M.E. TERNES                     2.50 hrs.        220.00/hr.     $550.00

Paragraph II.D.5. of the Guidelines provides that "[i]f more than one professional from the applicant

firm attends a hearing or conference, the applicant should explain the need for multiple attendees."

Thus in our initial report we asked Nelson Mullins to please explain why it was necessary for both

attorneys to participate. Nelson Mullins responded:

Attorneys Ternes and Hawkins were involved in this matter for different reasons.  Attorney Ternes assisted in the technical evaluation/analysis of whether emission characterization was sufficient to demonstrate that certain conditions did or did not exist, why, and, if present, what might have contributed to the result-- now and in comparison to the past.  Attorney Hawkins was involved in looking at how certain state and EPA non-technical/policy considerations could impact how Grace might respond to the information generated once conclusions could be drawn regarding its technical meaning.

We accept this explanation and do not recommend any reduction for this matter.

7.    In our initial report we noted that on February 24, 2002, time entries for attorneys Hawkins and Ternes indicate a conference between the two, but that there was a significant discrepancy in the time ascribed to the conference, with Hawkins recording it as .4 hour, and Ternes recording it as 2.5 hours.

| 02/24/02 | Continue review of information concerning application and implication of NSPS provisions and EPA information on NSPS provisions (2.7); review focus of letter to DHEC on NSPS issues with Attorney Ternes (0.4); revise letter to DHEC (0.6). | | | |
| | B.F. HAWKINS | 3.70 hrs. | 240.00/hr. | $888.00 |

| 02/24/02 | Discussions with Attorney Hawkins regarding response and approach with DHEC regarding operating conditions during emissions characterization for the grinder and the furnace. | | | |
| | M.E. TERNES | 2.50 hrs. | 220.00/hr. | $550.00 |

We asked Nelson Mullins to please explain this discrepancy.  Nelson Mullins responded:

Attorney Ternes' entry was based primarily on information she gained from discussions with Attorney Hawkins; thus, this is how she characterized it.  Attorney Hawkins' work was based on review of various sources of information, including information from discussions with Attorney Ternes.  Thus, Attorney Hawkins' initial information review was not limited to discussions with Attorney Ternes, whereas the primary thrust of Attorney Ternes' entry related to ongoing discussions with Attorney Hawkins.  Attorney Hawkins did not bill all the time he spent on discussions with Attorney Ternes.

We accept this explanation and do not recommend any reduction for this matter.

8.    In our initial report we noted that on a number of occasions, timekeeper K. Brown spent time on a task described as "Review, profile, and organize document" or something similar.

| 01/18/02 | Review, profile, and organize document. | | | |
| | K. BROWN | 0.30 hrs. | 125.00/hr. | $37.50 |
| 02/01/02 | Review, profile, and file document. | | | |
| | K. BROWN | 0.30 hrs. | 125.00/hr. | $37.50 |
| 02/01/02 | Review, profile, and organize document. | | | |
| | K. BROWN | 0.20 hrs. | 125.00/hr. | $25.00 |
| 02/22/02 | Review, profile, and organize document. | | | |
| | K. BROWN | 0.20 hrs. | 125.00/hr. | $25.00 |
| 02/22/02 | Review, profile, and organize document. | | | |
| | K. BROWN | 0.40 hrs. | 125.00/hr. | $50.00 |
| 03/07/02 | Review and profile document. | | | |
| | K. BROWN | 0.40 hrs. | 125.00/hr. | $50.00 |

Paragraph II.E.7. of the Guidelines indicates that nonreimbursable overhead "includes word processing, proofreading, secretarial and other clerical services", and Rule 2016-2(d) provides that fee applications "shall include activity descriptions which shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary." Thus in our initial report we asked Nelson Mullins to please explain what it means to "profile and organize" a document, why such profiling does not constitute overhead, and why it took so long to profile a single document in each instance. Nelson Mullins responded:

> We believe those entries relate to certain documents which detailed consolidated reports of EPA's investigation and sampling of multiple sites, which in turn required the creation of multiple cross-references for filing purposes. Thus, additional time to read and create the cross-references was necessary. In the future, we will detail work performed on such documents in future billing details.

We accept this explanation and do not recommend any reduction for this matter.

9.      In our initial report we noted that the Application includes the following expense entry for January:

Outside Services (Univ. of South Carolina)                          26.00

As there was no further explanation of this matter, we asked Nelson Mullins to please explain the nature of this expense. Nelson Mullins responded:

> This entry was a copy charge for retrieving federal register documents (regulation and preamble) for research pertaining to the development of National Emission Standards for Hazardous Air Pollutants related to a building demolition.  The information required by the research dated back to the 1970s that was not available from other sources.  The copy charge from the university is 25 cents/page.  We believe this research was performed months prior to the billing of the expense, hence the disconnect between the research performed and the expense billed.

We accept this explanation and do not recommend any reduction for this matter.

10.    In response to our e-mail request, Nelson Mullins responded that for this case it charges $.05 per in-house photocopy, it does not charge for faxes, and that all third-party charges are passed through at its cost.

## CONCLUSION

11.    Thus we recommend approval of fees totaling $62,909.00 and costs totaling $322.04 for Nelson Mullins' services from January 1, 2002, through March 31, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
        Warren H. Smith
        Texas State Bar No. 18757050
        Mark W. Steirer
        Texas State Bar No. 19139600

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 29th day of July 2002.

_____

Warren H. Smith

## SERVICE LIST

Notice Parties

**The Applicant**

Newman Jackson Smith, Esq.
Nelson Mullins Riley & Scarborough, LLP
151 Meeting Street, Suite 600
Charleston, SC 29401

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Matthew G. Zaleski, III, Esq.
Campbell & Levine
Chase Manhattan Centre, 15th Floor
1201 Market Street, Suite 1200
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022


Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801