# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING
### FOURTH INTERIM QUARTERLY FEE APPLICATION OF
### BILZIN SUMBERG DUNN BAENA PRICE & AXELROD LLP

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fourth Interim Quarterly Fee Application of Bilzin Sumberg Dunn Baena Price & Axelrod LLP</u> (the "Application").

## BACKGROUND

1.      Bilzin Sumberg Dunn Baena Price & Axelrod LLP ("Bilzin Sumberg") was retained as counsel to the official committee of asbestos property damage claimants.  In the Application, Bilzin Sumberg seeks approval of fees totaling $281,179.50 and costs totaling $79,962.62 for its services from January 1, 2002, through March 31, 2002.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application.   We reviewed the Application for compliance with 11 U.S.C. 330, the Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We sent Bilzin Sumberg an initial report based on our review, and received a letter from Bilzen Sumberg in response to our initial report.

## DISCUSSION

### General Issues

3.      In our initial report we noted that the Application does not have a separate category for Bilzen Sumberg's own fee application preparation, as the category of "Fee Applications" that is currently used by Bilzen Sumberg includes time spent by Bilzen Sumberg reviewing the fee applications of others.  Guidelines Rule, II.D.1. states "[a] separate project category should be used for ... fee application preparation."  Thus in our initial report we asked Bilzen Sumberg in the future to use a separate project category for time devoted to seeking its own compensation.

4.       We note that the time entries were generally adequately detailed and devoid of lumping, with the occasional exception of timekeeper RWT's entries.  We do not recommend any reduction at this time for these time entries, but in our initial report we asked Bilzen Sumberg to advise RWT to be more consistent in providing detailed descriptions of his activities.

5.      In our initial report we noted that between 1/6/02 and 1/16/02, JMS and SLB spent a total of 16.90 hours ($6,422.50 in fees) drafting a letter to Judge Wolin and arranging a conference with him.  Our review of the fee detail caused us to question the expenditure of so much time on these endeavors, but our discussions with Bilzen Sumberg, combined with the Application's narrative, satisfied us that the activities reflected in the relevant time entries were an appropriate

response to Judge Wolin's request for a "status letter" from each committee, including the committee of property damage claimants represented by Bilzin Sumberg.

6.       In our initial report we noted that between 3/01/02 and 3/08/02, JMS, JVM, and SLB spent a total of 29.4 hours ($6,231 in fees) discussing, researching, and drafting an objection to the asbestos property damage proof of claim form.  Upon initial review of the fee detail, it was not clear why it was necessary to spend so much time on this issue.   Again, our discussions with Bilzen Sumberg, combined with the Application's narrative that explains that "the Court directed the Applicant to file a specific line-by-line objection to the proposed proof of claim form for asbestos property damage claims", alleviated our concerns.   Accordingly, we have no objection to Bilzin Sumberg's time expenditures regarding this issue.

7.       In our initial report we questioned three pass-through expenditures for "professional services".

| Date | Description | Amount |
|---|---|---|
| 02/18/02 | Professional ServicesVENDOR: HAMILTON,RABINOVITZ & ALSCHULER, INC. ; INVOICE#: HRA20020218; DATE: 2/18/02 - CLIENT - 15537 FOR THE MONTH OF JANUARY 2002 | 6,440.51 |
| 02/18/02 | Professional ServicesVENDOR: HILSOFT NOTIFICATIONS; INVOICE#: 42765; DATE: 3/20/02 - CLIENT -74817-15537  PROJECT: W.R. GRACE | 33,088.34 |
| 03/31/02 | Professional ServicesPROPERTY DAMAGE EXPERT - VENDOR: MATERIALS ANALYTICAL SERVICES, INC.; INVOICE#: 14051; DATE: 3/31/02  -  CLIENT - 15537   1140566 W.R. GRACE BANKRUPTCY | 4,732.97 |

The Application's narrative identified these professionals as experts retained by the committee, and Bilzin Sumberg further explained that these professionals were retained pursuant to an "experts retention order" that authorized the pass-through of such expenses.  We note that a subsequent court order reclassified two such professionals (Hilsoft Notifications and Hamilton, Rabinovitz & Alschuler, Inc.) and required them to submit fee applications on their own behalf in the future, but

only for services performed after the date of reclassification.  Relying on Bilzin Sumberg's assurance

that all services covered by the pass-throughs predate the reclassification, we have no objection to

the pass-through of these expenditures.[1]

8.      In our initial report we noted that Bilzin Sumberg attorneys spent a total of 167.9

hours ($33,692.50 in fees) reviewing documents in Boca Raton, Florida.  (See Exhibit A.)  The

Application's narrative sheds some light on the purpose of the document review, but is not as

detailed as it might be.  Thus in our initial report we asked for more information regarding what

records were reviewed and the services performed by Bilzin Sumberg in this regard.  In its letter to

us Bilzen Sumberg stated:

> Bilzin's review of documents in Boca Raton, Florida directly related to fraudulent transfers
> actions filed against Sealed Air Corporation and Fresenius Medical Care, Inc., which are currently
> pending in front of Judge Wolin.  Prior to granting the Property Damage Committee and the Personal
> Injury Committee the right to prosecute these two actions, the Debtors agreed to "voluntarily"
> produce documents that they believed related to the fraudulent transfers.  As a result, the Debtors
> produced approximately 210 banker's boxes (approximately 500,000 pages) of documents in Boca
> Raton, consisting of approximately 55 boxes of their records, 150 boxes of Wachtell, Lipton, Rose
> & Katz' records (the Debtors' outside counsel on the transactions) and approximately 5 boxes of
> documents from experts retained by the Debtors, for among other reasons, to assist with the
> transactions.
> Bilzin's review included, without limitation, the review of solvency reports prepared by the
> Debtors' advisors, documents related to the Debtors' asbestos property damage liability and personal
> injury liability, legal memoranda provided to the Debtors by their outside counsel, valuation reports
> on the transferred and remaining assets, financial statements and other records, securities documents,
> and internal notes of the Debtors' and their counsel.
> The document review was broken down into six categories: (1) property damage liability;
> (2) personal injury liability; (3) reasonably equivalent value for the transferred assets; (4) securities
> documents; (5) "why" the transactions were done; and (6) the solvency of remaining company.  Each
> document that was selected was then "coded" for purposes of document management and control.
> By agreement with the Debtors, the defendants in the actions and the other committees involved, a
> common, objective database of selected documents was created based upon the initial review of
> documents and circulated to all parties involved.  Bilzin acted as the liaison between the Debtors, the
> committees, the defendants and the scanning/coding company engaged to perform the project.

---

[1]

  Pursuant to the Order Appointing Fee Auditor in Accordance with the Court's Direction (the "Fee Auditor Order"),
we has no authority to review -- and offers no opinion regarding -- the reasonableness of the fees passed through, since
such fees were generated by "professionals providing services pursuant to an order that does not require submission of
fee applications".  Fee Auditor Order, p. 2.

We believe that this information satisfies our concern, and thus we have no objection to these fees.

9.      In our initial report we noted that Caplin & Drysdale, Chartered, as counsel for the personal injury claimants committee, spent more than 100 hours during March reviewing the same documents that are referenced in paragraph 8.  We expressed concern that there may have been duplication of efforts, but we also noted meetings between attorneys for the two firms reflected in time entries such as Caplin & Drysdale attorney TWS's 3/5/02 entry referring to a discussion of "division of responsibilities" between counsel for the two committees.  We asked Bilzen Sumberg to advise us regarding the efforts made to coordinate and avoid duplication of efforts, and explain why Bilzin Sumberg had, as of March 31, 2002, expended considerably more time in this endeavor than had Caplin & Drysdale.  In its letter to us Bilzen Sumberg stated:

> Bilzin and counsel to the Personal Injury Committee, Caplin & Drysdale ("Caplin"), took precautions early on in the fraudulent transfer investigations to be sure to avoid duplication of effort. Each firm assembled a team of attorneys to be responsible for reviewing the documents in Boca Raton.  Prior to deploying attorneys to begin the exhaustive review, Bilzin and Caplin held several meetings and "training sessions" to develop the most streamlined approach to reviewing the documents.  Bilzin submits that the approach used was the most efficient possible, given the sheer amount of documents that needed to reviewed and the time table given to conduct the review.[2]
>
> Bilzin expended considerably more time than Caplin in reviewing the documents for two reasons.  First, Caplin was not able to deploy more than two lawyers to Boca Raton to review documents.  Bilzin was able to deploy at times, as many as four lawyers, to review documents, which was necessary given the scope of the documents that need to be reviewed and the brief time period available in which to do so.  Second, due to Bilzin's geographic proximity to Boca Raton (45 miles), it made practical sense to all concerned for Bilzin to get "the lay of the land" before a thorough review was commenced.  As a result, Bilzin expended more time than Caplin in reviewing the documents.

We believe that this information satisfies our concern, and thus we have no objection to these fees.

10.      As noted below, two Bilzin Sumberg attorneys attended a hearing before Judge Wolin on 2/20/02, and we deal below with the issue of the use of two professionals at this hearing.  Another

---

[2]Pursuant to the scheduling order entered by Judge Wolin, the trial on the fraudulent transfer action against Sealed Air Corporation is to begin on September 30, 2002.  The Complaint was due on March 18, 2002.

issue of concern that we addressed in our initial report, however, is that the time records did not specify whether or not this was a hearing before Judge Wolin that involved multiple bankruptcy cases, including the USG bankruptcy case in which Bilzin Sumberg also serves as counsel to the official committee of asbestos property damage claimants.  After cross-referencing the monthly fee and expense invoices with the USG case, we noted in our initial report that Bilzin Sumberg did not double-bill for its attendance at the hearing.  However, in our initial report we asked Bilzen Sumberg whether this hearing was one of those that involved multiple cases, and, if so, why there was no allocation of its attorney time between the two cases: in other words, why none of this time was attributed to Bilzin Sumberg's representation of the property damage committee in the USG case. In its letter to us Bilzen Sumberg stated:

> The hearing that Bilzin attended before Judge Wolin on February 20, 2002 related solely to the fraudulent transfer actions in the W.R. Grace case and did not relate to the USG Corp. bankruptcy. As a result, none of the attorney time for this hearing was allocated to USG.

This information satisfies our concern, and thus we have no objection to these fees.

11.    The February monthly fee and expense invoice billed non-working travel time at the timekeepers' full hourly rate.  In our initial report we noted that the Application corrects this oversight, deducting $3,943 from the total requested for February.  We also noted, however, that the Application contains two non-working travel time entries for March billed at the timekeepers' full hourly rate:

| | | | |
|---|---|---|---|
| 03/17/02 | JMS | 2.00 | 470.00 | Travel to Wilmington (non-working) (2.0). |
| 03/28/02 | RWT | 5.00 | 1,950.00 | Travel to Newark and return to Miami for meeting with Judge Wolin regarding counsel issues. (non-working) (5.0). |

Rule 2016-2(d)(viii) provides that travel time during which no work is performed shall be separately described and may be billed at no more than 50% of regular hourly rates.  Jay Sakalo of Bilzen

Sumberg reported that this was an oversight, and thus we recommend a reduction of $1,210 in fees for this non-working travel.

12.    In our initial report we noted that on 3/5/02, 3/6/02, and 3/12/02, the time entries reflect prolonged meetings (approximately five, five, and three hours, respectively) attended by four or more attorneys, for a total of $16,423.50 in fees.  These meetings are set forth below:

- •    $6,457 in fees for the 3/05/02 meeting:

| 03/05/02 | MEW | 6.20 | 2,170.00 | Meeting with LeClair, Swett, Fitch and Turken (5.5); conference call with all counsel and court regarding scheduling (.7). |
|---|---|---|---|---|
| 03/05/02 | RG | 1.20 | 312.00 | Attend meeting with counsel for personal, injury committee and M. Widom, B. Turken, J. Sakalo and D. Green on multiple trial preparation issues and research issues. |
| 03/05/02 | DRG | 5.00 | 900.00 | Meeting with Mitch Widom, Bob Turken, Jay Sakalo, Lew LeClair, Nathan Finch and Ted Swett regarding case management issues. |
| 03/05/02 | JMS | 7.50 | 1,762.50 | Conference with T. Swett, N. Finch, L. LeClair (5.0); conference with same, Debtors (.5); prepare for meeting with T. Swett, N. Finch, including review of case strategy and governing law (2.0). |
| 03/05/02 | RWT | 9.20 | 3,588.00 | Prepare for meeting with T. Swett, N. Finch and L. LeClair and review strategy issues and how to proceed (2.2); telephone conference with D. Speights regarding same (.3); attend meeting with counsel and participation in conference call with E. Wohlforth (5.5); telephone conference with S. Baena and P. Lockwood regarding status and how to proceed (1.2). |

- •    $6,021.50 in fees for the 3/06/02 meeting:

| 03/06/02 | MEW | 5.00 | 1,750.00 | Meeting with LeClair, T. Swett and N. Fitch regarding numerous issues. |
|---|---|---|---|---|
| 03/06/02 | DRG | 5.50 | 990.00 | Conference with Mitch Widom, Bob Turken, Jay Sakalo, Lew LeClair, Nathan Finch, Ted Swett regarding case management issues. |
| 03/06/02 | JMS | 7.80 | 1,833.00 | Emails from and to D. Speights regarding fraudulent transfer (.3); meeting with R. Turken, M. Widom, T. Swett, N. Finch, L. LeClair regarding fraudulent transfer (5.5); telephone conference with R. Turken, D. Speights regarding results of meeting with PI counsel, fraudulent transfer strategy (1.2); respond to multiple emails from F. Rabinovitz regarding estimation of liabilities related to fraudulent transfer (.8). |
| 03/06/02 | RWT | 7.60 | 2,964.00 | Attend meeting with counsel to discuss case strategy issues (5.1); telephone conference with D. Speights regarding same and PD issues (1.2); research case issues (1.3). |

- •    $3,945 in fees for the 3/12/02 meeting:

| 03/12/02 | MEW | 3.00 | 1,050.00 | Meeting with document review team to establish document review procedure. |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| 03/12/02 | JVM | 3.00 | 480.00 | Attended training session regarding document review to be conducted at Grace building in Boca Raton. |
| 03/12/02 | DRG | 3.00 | 540.00 | Meeting with Jay Sakalo, Mitch Widom, Robert Turken, Jenette Mathai Nate Finch and John Cunningham regarding document review and training session. |
| 03/12/02 | JMS | 3.60 | 846.00 | Meet with PI counsel, R. Turken, M. Widom, D. Green regarding document review and case strategies (3.0); conference with R. Turken regarding strategy for 3/19 (.6). |
| 03/12/02 | RWT | 4.40 | 1,716.00 | Participate in telephonic meeting with counsel regarding case and document issues (3.0); continue research into legal issues (.8); conference with J. Sakalo regarding strategy for 3/19 hearing (.6). |

Paragraph II.D.5. of the Guidelines provides that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." Thus we requested that Bilzin Sumberg provide an explanation regarding the necessity of the participation of so many attorneys in such lengthy meetings. In its letter to us Bilzen Sumberg stated:

> As explained in our response to Paragraph 9, Bilzin and Caplin held a meeting to develop an approach to reviewing the substantial amounts of documents produced in Boca Raton repository. In addition, at these meetings, Bilzin and Caplin discussed their theories of the cases and crystallized their thoughts with respect to the complaints to be drafted. Prior to these meetings, each Committee had been authorized by Judge Fitzgerald to independently and separately analyze the underlying transactions.* These meetings afforded Bilzin and Caplin the opportunity to combine their ideas and theories about the cases.
> The two agenda items covered at these meetings - - discovery and theories/causes of action - - substantially overlapped, thus Bilzin thought it was appropriate to have the attorneys who would be principally involved in both aspects attend the meetings. These meetings were critical in making sure the cases started correctly. Again, the trial on the Sealed Air transfer begins on September 30, 2002. Neither Bilzin, nor the Property Damage Committee could afford to have any missteps early on in the case. As a result, multiple attorneys attended these meetings. As is evident by other entries subject of the Fourth Application, Bilzin is very careful not to have additional attorneys attend meetings or conferences; however, in those instances, Bilzin deemed it appropriate.
>
> *Prior to the District Court granting the Property Damage and Personal Injury Committees authority to prosecute the fraudulent transfer actions, the Bankruptcy Court authorized the Committees to investigate and analyze the subject transactions in anticipation of making a report to the Court on April 22, 2002. As a result of Judge Wolin's ruling, this investigation and analysis was mooted.

While we believe we understand the explanation offered by Bilzen Sumberg, we still believe that

these meetings were overstaffed, and thus we recommend a reduction of ½ the fees charged for these meetings, for a reduction of $8,211.75 in fees.

13.    In our initial report we noted that it appears that on four occasions – 1/28/02, 2/20/02, 2/25/02, and 3/18/02 – both SLB ($450) and JMS ($235) attended the same hearing.  These hearings are set forth below:

•    Time entries for the 1/28/02 omnibus hearing, including travel time [from categories 8 (Court Appearances) and 10 (Travel)]:

| 01/28/02 | SLB | 4.00 | 1,800.00 | Travel to Wilmington for hearing (4.0). |
|---|---|---|---|---|
| 01/28/02 | JMS | 2.50 | 587.50 | Travel to Delaware for meeting with Conwal Del Genio Gries and omnibus hearing (2.5) |
| 01/29/02 | SLB | 2.60 | 1,170.00 | Court appearance in Bankruptcy Court - omnibus hearing (2.6) |
| 01/29/02 | JMS | 2.60 | 611.00 | Attend Omnibus hearing (2.6). |
| 01/29/02 | SLB | 4.00 | 1,800.00 | Return to Miami (4.0). |
| 01/29/02 | JMS | 4.00 | 940.00 | Travel back to Miami (4.0) |

The fees stated in the first, second, fifth, and sixth entries above [*i.e.*, those from category 10 (Travel)] were subject to a categorical 50% reduction.  The total for both attorneys is $4,344.75; the total for the second attorney (JMS) is $1,374.75.

•    Time entries for the 2/20/02 hearing before Judge Wolin, including travel time:

| 02/19/02 | SLB | 4.00 | 1,800.00 | Travel to Newark for hearing. |
|---|---|---|---|---|
| 02/19/02 | JMS | 2.00 | 470.00[3] | Travel to Newark (2.0). |
| 02/20/02 | JMS | 0.80 | 188.00 | Return travel non-working (.8) |
| 02/20/02 | SLB | 3.40 | 1,530.00 | .......; hearing before Judge Wolin regarding fraudulent transfer, including discussions with Peter Lockwood, Jerry Alexander and David Bernick before and after hearing regarding the same (2.0);... |
| 02/20/02 | JMS | 1.50 | 352.50 | Attend conference with J. Wolin (1.5) |

The Application indicates a categorical 50% reduction for time entries in category 10 (Travel), correcting the monthly fee and expense invoice, which did not indicate such a reduction.  This

---

[3] A $235 reduction in this amount is recommended in paragraph 7 of this initial report; *i.e.*, $235 of these fees are subject to two separate objections.  For purposes of the payment recommendation that will be stated in the Final Report, this $235 will not be double-counted.

reduction applies to the first three entries above, and with respect to the 2/20/02 SLB entry only the relevant 2.0 hours is included. Thus, the total for both attorneys is $2,481.50; the total for the second attorney (JMS) is $681.50.

- Time entries for the 2/25/02 omnibus hearing:

| 02/24/02 | JMS | 1.00 | 235.00 | Travel to Wilmington (non-working) (1.0). |
| 02/25/02 | SLB | 2.70 | 1,215.00 | Court appearance - case management issues. |
| 02/25/02 | JMS | 2.70 | 634.50 | Attend omnibus hearing regarding case management and motion to dismiss (2.7) |
| 02/26/02 | JMS | 1.80 | 423.00 | Travel to New York from Wilmington for meeting with CDG regarding fraudulent transfer (1.8). |
| 02/27/02 | SLB | 4.00 | 1,800.00 | Return to Miami. |

After adjustment for the categorical reduction of non-working travel time, the total for both attorneys is $3,078.50; the total for the second attorney (JMS) is $963.50.

- Time entries for the 3/18/02 omnibus hearing:

| 03/17/02 | JMS | 2.00 | 470.00 | Travel to Wilmington (non-working) (2.0). |
| 03/18/02 | SLB | 8.00 | 3,600.00 | Prepare for and attend Omnibus Hearing (8.0). |
| 03/18/02 | JMS | 9.20 | 2,162.00 | Finalize preparation for hearing and attend omnibus hearing (9.2). |

The total for both attorneys is $6,232.00; the total for the second attorney (JMS) is $2,632.00.

13.    In our initial report we also noted the travel expenses associated with JMS's attendance at the foregoing hearings. Although the relationship is not readily discernable in some instances, the following expense items appear to relate to such travel:

| 01/29/02 | Fares, Mileage, ParkingVENDOR: JAY M. SAKALO; INVOICE#: JMS-01/29/02; DATE: 1/30/02 - Client#15537 - Reim. for travel to/from Philadelphia/Delaware | 44.00 |
| 01/29/02 | LodgingVENDOR: JAY M. SAKALO; INVOICE#: JMS-01/29/02; DATE: 1/30/02 - Client#15537 - Reim. for travel to/from Philadelphia/Delaware | 259.32 |
| 02/26/02 | Fares, Mileage, ParkingVENDOR: JAY M. SAKALO; INVOICE#: JMS-02/27/02; DATE: 2/27/02 - Clients - Reim. for travel to Philadelphia | 27.00 |

| | | |
|---|---|---|
| 02/27/02 | AirfareTRAVEL NY/FTL - VENDOR: TRAVEL VENTURES; INVOICE#86012; DATE: 2/27/02 - CLIENT - 1537 | 227.50 |
| 02/26/02 | Fares, Mileage, ParkingVENDOR: JAY M. SAKALO; INVOICE#: JMS-02/27/02; DATE: 2/27/02 - Clients - Reim. for travel to New York | 49.00 |
| 02/27/02 | Lodging VENDOR: JAY M. SAKALO; INVOICE#:JMS-02/27/02; DATE: 2/27/02 - Clients - Reim. for travel to New York | 1,291.11 |
| 02/27/02 | Meals VENDOR: JAY M. SAKALO; INVOICE#:JMS-02/27/02; DATE: 2/27/02 - Clients - Reim. for travel to Newark, Richmond, VA, Philadelphia and New York | 5.30 |
| 02/27/02 | Fares, Mileage, ParkingVENDOR: JAY M. SAKALO; INVOICE#: JMS-02/27/02; DATE: 2/27/02 - Clients - Reim. for travel to New York | 87.00 |
| 03/20/02 | Fares, Mileage, ParkingVENDOR: JAY M. SAKALO; INVOICE#: JMS-03/20/02; DATE: 3/22/02  -  Clients - Reim. for travel to/from Philadelphia, Wilmington and Washington, D.C.. | 14.00 |
| 03/20/02 | LodgingVENDOR: JAY M. SAKALO; INVOICE#: JMS-03/20/02; DATE: 3/22/02  -  Clients - Reim. for travel to/from Philadelphia, Wilmington and Washington, D.C.. | 484.38 |
| 03/20/02 | MealsVENDOR: JAY M. SAKALO; INVOICE#: JMS-03/20/02; DATE: 3/22/02  -  Clients - Reim. for travel to/from Philadelphia, Wilmington and Washington, D.C.. | 44.30 |
| 03/22/02 | MealsVENDOR: JAY M. SAKALO; INVOICE#: JMS-03/22/02; DATE: 3/22/02  -  Clients - Reim. for meals | 65.76 |
| 03/26/02 | MealsVENDOR: JAY M. SAKALO; INVOICE#: KMS-03/26/02; DATE: 3/26/02  -  Clients - Reim. for meal | 7.60 |
| 03/26/02 | AirfareTRAVEL TO/FROM NEW JERSEY - PAYEE: TRAVEL VENTURES; REQUEST#: 28672; DATE: 3/31/02 | 1,393.50 |

14.    Paragraph II.D.5. of the Guidelines states: "....If more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  Thus, the initial report asked Bilzen Sumberg to provide an explanation of the decision to deploy two attorneys for each of these hearings.  In its letter to us Bilzen Sumberg stated:

The omnibus hearings held in January, February, March and April, 2002[3] included perhaps the most critical and contentious issue to date in the bankruptcy cases - - the Debtors' case management proposals.  From the outset of these cases, the Debtors have attempted to establish procedures designed

to limit the amount and involvement of asbestos property damage claimants in the reorganization of the Debtors, including the establishment of an early bar date, approval of an unprecedented proof of claim and a notice program, all applicable to asbestos property damage claims.  On behalf of the Property Damage Committee, Bilzin filed written a lengthy substantive opposition to each of the Debtors' proposals which was argued at the subject omnibus hearings.  At these hearings, although Scott L. Baena ("SLB") presented the oral argument on behalf of the Property Damage Committee, Jay M. Sakalo ("JMS") provided support to Mr. Baena throughout.  This support included having facile access to all of the backup necessary to support both the Debtors' proposals and the Property Damage Committee's responses.  This alone constituted approximately 7 banker's boxes worth of documents.

In addition, there were certain aspects of the Debtors' case management proposals that Mr. Sakalo principally handled, notably, the Debtors' proposed notice program.  Mr. Sakalo was responsible for developing and coordinating the objections to the proposed program along with the Property Damage Committee's notice expert, Todd Hilsee of Hilsoft Notifications.  Mr. Sakalo's attendance at the hearings was necessary to evaluate and, if appropriate, to provide rebuttal statements to the discussion regarding the notice program.

It is also worth noting that Bilzin maximized efficiencies on these trips.  For example, while Mr. Sakalo was in Delaware for the January 28, 2002 omnibus hearing, he had a meeting with the Property Damage Committee's financial advisors, Conway, DelGenio & Gries, to discuss the financial aspects of the potential fraudulent transfers.*

With respect to the February 20, 2002 hearing held by Judge Wolin, Bilzin deemed it appropriate to have two attendees at the hearing because of the unknown topics for the hearing.  The hearing was limited to issues related to the fraudulent transfer actions; however, an agenda for the hearing was not provided.  Thus, Bilzin did not know in advance of the hearing if the topics to be covered included a substantive discussion of the underlying transactions.  As a precaution, because of Mr. Sakalo's familiarity with the details of the underlying transactions, Bilzin deemed it was appropriate to have him attend the hearing in case a discussion about the details of the underlying transactions ensued.  Mr. Baena's attendance was necessary because one of the topics expected to be covered was a decision on who the counsels would be to prosecute the fraudulent transfers and other overarching global issues related thereto.

For the forgoing reasons, Bilzin believes it was appropriate to have both Mr. Baena and Mr. Sakalo attend the hearings in question.

*This meeting was held prior to Judge Wolin granting the Property Damage Committee and the Personal Injury Committee the right to prosecute the fraudulent transfers.

We believe that this information satisfies our concern, and thus we have no objection to these fees.

15.    In our initial report we noted that the January expense detail for matter 1 (Case Adminstration)  includes two entries for "staff overtime", totaling $211.53:

| | | |
|---|---|---|
| 01/08/02 | Staff Overtime | 134.61 |
| 01/30/02 | Staff Overtime | 76.92 |

Paragraph II.E.7. of the Guidelines, discussing nonreimbursable overhead, provides that "[Overhead] consists of all continuous administrative or general costs incident to the operation of the applicant's office and not particularly attributable to an individual client or case.  Overhead includes word

processing, proofreading, secretarial and other clerical services...."  Thus, in our initial report we asked Bilzen Sumberg to provide further explanation of this charge.  In its letter to us Bilzen Sumberg stated:

> It is Bilzin's policy to pass through "staff overtime" when it is incurred for the convenience of the client as opposed to the convenience of Bilzin.  Both entries reflect time expended by Bilzin staff members beyond their normal workday, and thus, passed through to the estate as an expense and not absorbed as nonreimbursable overhead.

We believe that this information satisfies our concern, and thus we have no objection to these expenses.

## CONCLUSION

16.    Thus, we recommend approval of fees totaling $271,757.75  ($281,179.50 minus $9,421.75) and costs totaling $79,962.62 for Bilzen Sumberg's services from January 1, 2002, through March 31, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**


By:_____
        Warren H. Smith
        Texas State Bar No. 18757050
        Mark W. Steirer
        Texas State Bar No. 19139600

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 29th day of July, 2002.

_____
        Warren H. Smith

## SERVICE LIST

Notice Parties

**The Applicant**

Scott L. Baena
Jay M. Sakalo
Bilzin, Sumberg, Dunn,
Baena, Price & Axelrod, L.L.P.
2500 First Union Financial Center
200 South Biscayne Blvd.
Miami, FL 33131-2336

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Matthew G. Zaleski, III, Esq.
Campbell & Levine
Chase Manhattan Centre, 15th Floor
1201 Market Street, Suite 1200
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

| | | | |
|---|---|---|---|
| 03/04/02 | DRG | 5.10 | 918.00 | Document review in Boca Raton with Jay Sakalo (5.0); conference with Bob Turken and Jay Sakalo regarding same (.10). |
| 03/04/02 | JMS | 8.80 | 2,068.00 | Telephone conference with R. Turken, M. Widom, T. Swett re fraudulent transfer issues (.8); conferences with R. Turken, M. Widom regarding fraudulent transfer case strategy (2.5); telephone conference with R. Turken, S. Baena regarding fraudulent transfer strategy (.5); visit Grace document repository with D. Green (5.0). |
| 03/07/02 | MEW | 8.00 | 2,800.00 | Review and mark documents at depository at Grace regarding Wachtell documents. |
| 03/07/02 | DRG | 8.50 | 1,530.00 | Document review with Mitch Widom in Boca Raton. |
| 03/13/02 | JVM | 10.50 | 1,680.00 | Conducted document review at Grace building in Boca Raton. |
| 03/13/02 | SLB | 0.80 | 360.00 | Telephone call from F. Rabinovitz regarding information needs (.5); interoffice conference with J. Sakalo regarding results of discovery meetings (.3). |
| 03/13/02 | DRG | 10.50 | 1,890.00 | Attend document review in Boca Raton. |
| 03/13/02 | JMS | 12.40 | 2,914.00 | Continue review of documents at document depository in Boca Raton (10.5); conference call with all parties involved regarding document scanning project (.5); conference with S. Baena regarding results of conference call, results from class claim, review of documents (.3); review docket (.4); review letters to J. Fitzgerald filed by the Debtors (.4); review order re fraudulent transfer (.3). |
| 03/14/02 | JVM | 10.50 | 1,680.00 | Conducted document review at Grace building in Boca Raton. |
| 03/14/02 | DRG | 8.50 | 1,530.00 | Attend document review in Boca Raton (left early). |
| 03/14/02 | JMS | 10.50 | 2,467.50 | Continue review of document depository at Grace in Boca Raton (10.5). |
| 03/15/02 | JVM | 10.50 | 1,680.00 | Conducted document review at Grace building in Boca Raton. |
| 03/19/02 | DRG | 10.50 | 1,890.00 | Document review at Grace's office in Boca Raton. |
| 03/20/02 | MEW | 10.50 | 3,675.00 | Attend document review at depository in Boca Raton. |
| 03/20/02 | JVM | 10.50 | 1,680.00 | Conduct document review of Grace files in Boca Raton. |
| 03/20/02 | DRG | 10.50 | 1,890.00 | Document review at Grace's office in Boca Raton. |
| 03/21/02 | JVM | 8.50 | 1,360.00 | Conduct document review of Grace files in Boca Raton. |
| 03/21/02 | DRG | 8.50 | 1,530.00 | Document review at Grace's office in Boca Raton. |
| 03/22/02 | DRG | 4.50 | 810.00 | Document review at Grace. |
| 03/22/02 | JMS | 6.60 | 1,551.00 | Meeting at Document Depository (4.5); telephone conferences with G. Kitchen regarding requests for production (.4); email to D. Speights, D. Scott thereon (.2); review document list for scanning and direct revisions thereto (.8); review jury trial memoranda (.5); conference with M. Widom regarding status of document production (.2). |