## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## FOURTH INTERIM QUARTERLY FEE APPLICATION OF
## STEPTOE & JOHNSON LLP

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Fourth Interim Quarterly Fee Application of Steptoe & Johnson LLP[1] (the "Application").

## BACKGROUND

1.      Steptoe & Johnson LLP ("Steptoe") was retained as special tax counsel to the Debtors.  In the Application, Steptoe seeks approval of fees totaling $94,410.00 and costs totaling $8,274.48 for its services from January 1, 2002, through March 31, 2002.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application.  We reviewed the Application for compliance with 11 U.S.C. §330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines

---

[1]We note that Steptoe styled the Application as its "Third Quarterly" fee application.  To promote consistency and to avoid confusion in the fee audit process, we have referred to the Application as the "Fourth Interim Quarterly" fee application because it relates to the fourth quarter for which such applications have been submitted in the case.

for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent

established in the United States Bankruptcy Court for the District of Delaware, the United States

District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served on

Steptoe an initial report based on our review, and received from Steptoe a response to our initial

report.

## DISCUSSION

### General Issues

3.     We note that the copy of the Application that was served upon us did not contain the

time entries (what we refer to as the "fee detail"), but rather referred to the fee detail attached to the

monthly fee applications.  These monthly applications did not have the fee detail divided up by

project category, but rather had all of the fee detail in chronological order.  Paragraph II.D.1. of the

Guidelines states that "[t]o facilitate effective review of the application, all time and service entries

should be arranged by project categories." Thus we asked Steptoe to comply with this guideline in

future applications, and it stated that it would do so.

4.     We note that Steptoe incurred $11,480.00 preparing its own fee applications, and

asked Steptoe why such a large amount of fees was incurred in this category.  Anne E. Moran of

Septoe responded:

> I think the reason for the $11,480 cost in the 1st quarter of 2002 was the fact that we were actually
> just getting our system in place to respond to the court's request that we no longer bill as ordinary
> course professionals., even for months where are fees did not exceed $50,000. This required that we
> resubmit to Grace (and to the court) bills we had already prepared and submitted to Grace from July
> through December 2001, even those (such as October, November, and December), where the fees had
> not exceeded $50,000. We spent some time with bankruptcy and local counsel working on the
> procedures for this. Thus, the $11,000 + bill really included a great deal of time for processing and
> reviewing the last half of 2001 bills (if you look at my 2001 time you will see I only spent a total of
> 9 hours on that process from July through December 2001, for a total of about $3500. But if you look

> at my daily entries for February and March, you will see that a lot of time is specifically spend on the September, July, November, and December bills. See, e.g., AEMoran entry for 2./05, 2.06, 2.11, 2/22, 3.08, 3/13, 3/14 and 3/22. This time also included submitting some revised affidavits as recommended by Kirkland & Ellis). Therefore if you average the $11,000 over the prior 6 months you will see that the time is not particularly high.
>
> Although I know that I did spend quite a bit of time in January of 2002 on billing, I think that you will find that my future time spent will be less given that I have "caught up" with the monthly and quarter filings and am doing this on a relatively contemporaneous basis.

While we believe we understand this explanation, and appreciate Steptoe's response that it anticipates that its future billings for this service will not be so high, we still believe that $11,480.00 is too expensive for an application for $94,410.00 in fees, representing over 12% of the fees sought. Thus we recommend a reduction of ½ of the fees sought for this service, for a reduction of $5,740.00 in fees.

     5.     Paragraph II.D.5. of the Guidelines states that "[t]ime entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour." We note that all January time entries for AE Moran, all January time entries for B Kaufman before 1/30/02, and all January and February time entries for JW Johnson end in .00, .30, .50, or .80. Oftentimes this phenomenon indicates that timekeepers have recorded their time in increments of quarters of an hour and that the .25's and .75's have been rounded up to .30 and .80. The summary indicating the total hours billed by each attorney is consistent with our interpretation. In our initial report to Steptoe we noted that this practice of rounding up appears to have added $112.50 to the January invoice. Steptoe responded:

> I reviewed our files and did learn that since we had billed on a quarter hour basis in the past, there were a few entries in January that were mistakenly billed by the lawyers as quarter hours, and the system did round them up. The consisted of two entries for Brian Kaufman, one for Anne Moran, and three for Walker Johnson. As you indicated, the difference was $112.50.

Thus we recommend a reduction of $112.50 in fees.

6.      We note that a major portion of this Application consists of fees and expenses relating to Steptoe's presence at the "Dow Chemical trial" in Detroit, Michigan.  Paragraph I.E. of the Guidelines advises that "[i]n evaluating fees for professional services, it is relevant to consider ... whether the services were necessary to the administration of, or beneficial towards the completion of, the case at the time they were rendered".  Along the same lines, Local Rule 2016-2(d) provides that fee applications "shall include activity descriptions which shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary."  There is insufficient detail in either the time entries or the Application to explain the need for Steptoe's attendance at this trial. Thus we requested that Steptoe please provide information explaining why this activity was necessary.

7.      We note that on two separate occasions JW Johnson, at $445 and hour, and AL Bailey, at $465 per hour, traveled to Detroit to observe the Dow Chemical trial.  On the first occasion, from 01/07/02 through 01/09/02, these two professionals billed 36 hours totaling $16,380.00 and expenses of $3,064.05. See Exhibit B for the relevant time and expense entries.  On the second occasion, from 02/19/02 through 02/21/02, these professionals billed 27 hours totaling $12,235.00 and expenses of $2,657.39.  See Exhibit C.  Paragraph II.D.5. of the guidelines provides that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  Thus in our initial report we asked Steptoe to please explain why it was necessary for more than one professional to attend.  Steptoe sent us the response set forth in Exhibit A. While this explanation does explain why monitoring this trial in some fashion was necessary, it does not satisfy us that the method that Steptoe took to monitor this trial were reasonable, nor does it convince us that Steptoe's charges for this monitoring were

reasonable.

8.      We note that it is unlikely that W.R.Grace will have the same judge as in the Dow

Chemical trial, and thus we believe that this limits the need to monitor this trial in person.

Furthermore, even if it were to be the same judge, we cannot fathom why it would be necessary to

have two partners attending this trial.  Thus we propose a reduction of ½ the fees and expenses that

were incurred when Steptoe had two partners at this trial, for a reduction of $14,307.50 in fees and

$2,860.72 in expenses.

9.      We note that lumping occurs in several of AL Bailey's time entries for attendance at

the Dow Chemical trial.

| 01/08/02 | AL Bailey | Attend Dow trial, Detroit, Michigan; discuss same with client representative. | 8.00 |
| 01/09/02 | AL Bailey | Attend Dow trial in Detroit, Michigan; return to DC. | 8.00 |
| 02/07/02 | AL Bailey | Attend Dow trial, Detroit Michigan; return | 8.50 |
| 02/19/02 | AL Bailey | Prepare for and attend Dow trial in Detroit, Michigan. | 9.00 |

Paragraph II.D.5. of the Guidelines provides that "[s]ervices should be noted in detail and not

combined or 'lumped' together, with each service showing a separate time entry;. . ."  Lumping is

also addressed in the Local Delaware Rules, Rule 2016-2(d)(vii) which states "[a]ctivity descriptions

shall not be lumped – each activity shall have a separate description and a time allotment."

10.     Lumping is of special concern in the entries on 02/07/02 and 01/09/02, discussed in

paragraph 6 above,  because it appears that non-working travel time – which is to be billed at 50%

of the normal hourly rate – is lumped together with non-travel time, and the full hourly rate is sought

for the entire lumped entry.  Rule 2016-2(d)(viii) of the Delaware Local Rules provides that "[t]ravel

time during which no work is performed shall be separately described and may be billed at no more

than 50% of regular hourly rates." Without further detail, we cannot determine what part of the entries in question was travel time and whether such time was billed at 50% of the regular hourly rate. Thus in our initial report we asked Steptoe to please advise us how much of these entries relates to non-working travel. Anne E. Moran of Steptoe responded:

> I have tried to catch bunching errors when they entered the system and I will work with the lawyers and systems administrators to improve on this. You are correct that Art Bailey's time was bunched on the dates you state and some of that time did consist of travel time. I have looked at the entries and have the following suggestion for resolving this question.
>
> Messrs Bailey and Johnson billed as nonworking travel about 4 hours for the trip to Detroit (see entries on January 7, 2002) and as a result, I billed half of that time on the very conservative assumption that there was no Grace related work done on the plane, etc., Thus, I would assume that of Mr. Bailey's 8 hours of trial attendance and travel on January 9, 4 were for nonworking travel. Thus, only 6 hours (4 for attending the trial, and 2 for nonworking travel (one-half the time) should be billed instead of 8. The same analysis would apply for Mr. Bailey's 8.5 time entry on February 7, 2002. I would assume that 4.0 hours were for nonworking travel, and 4.5 for attendance at trial.
>   As a result, there are 8 hours of Mr. Bailey's time (4 in January, 4 in February) that should have been designated as nonworking travel. Only half of that time should have been billed, so we overcharged by 4 * 465 or $1860 ($930 in January and $930 in February). Mr. Bailey's entries on the 8th and 19th were not travel time; note that he charged separately for travel on the 7th and 20th, respectively.

We believe that this reduction for lumping and non-working travel should be in addition to the reduction for using two professionals at this trial, and thus we recommend a reduction of $1,860 in fees for lumping and non-working travel.

11. We note that there is a $37.40 expense entry in March for meals. The expense entry does not provide any further explanation. Paragraph II.E. of the Guidelines provides that "[f]actors relevant to a determination that the expense is proper include ... [w]hether applicant has provided a detailed itemization of all expenses including the date incurred, description of expense". Thus in our initial report we asked Steptoe to please provide details for this expense. Steptoe responded:

> The meal expense was for the cost of setting up breakfast beverages and fruit for a breakfast meeting of six people, including counsel for one of WR Grace's former controlled group members. The meeting was at the request of Grace and the former controlled group's counsel. The meeting took place on the morning of March 8, 2002.

Thus we have no objection to this charge.

**CONCLUSION**

12.    Thus, we recommend approval of fees totaling $72,390.00 ($94,410.00  minus

$22,020.00) and costs totaling $5,413.76 ($8,274.48 minus $2,860.72) for Steptoe's services from

January 1, 2002, through March 31, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
Warren H. Smith
State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served First
Class United States mail to the attached service list on this 29th day of July, 2002.

_____
Warren H. Smith

## SERVICE LIST

Notice Parties

**The Applicant**

Anne E. Moran, Esq.
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Matthew G. Zaleski, III, Esq.
Campbell & Levine
Chase Manhattan Centre, 15th Floor
1201 Market Street, Suite 1200
Wilmington, DE 19801


**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

You questioned the appropriateness of the time spent by two attorneys, Walker Johnson & Arthur Bailey, attending the Dow trial, and, in particular, whether there was any duplication of effort or expense.  Let me provide you with some background on the circumstances.

    1)  The tax issue that is being litigated in the Dow Chemical case is the same issue that we are litigating on behalf of WR Grace (the deductibility of interest on corporate-owned life insurance policies). The amount at stake is significant.   Steptoe was specifically asked to attend the Dow Chemical trial by WR Grace, and we explained in full our proposed procedure and uses of lawyers for  attending the trial, with which they agreed.

    2)  The Government will likely use the same lawyers, similar arguments, and the same witnesses in Grace's case that were used in the Dow Chemical case. Both the in-house attorneys at WR Grace and the lawyers at Steptoe  felt it was important to judge how the lawyers and arguments "worked" at trial.   In particular, we believed it important that the two Steptoe lawyers who would be most involved in writing the briefs and making the arguments on behalf of WR Grace attend portions of the DOW trial in person to judge for themselves how the opening arguments were delivered by both the Government and by the attorneys for Dow, and how the arguments were received by the Court.   We all believed that these two attorneys would best be able to evaluate the reactions of the judge to factual and legal arguments, the problems that both Government and taxpayer attorneys will face with particular arguments (these arguments are very technical arguments on sophisticated tax and actuarial issues and are very hard to make effectively), and  the difficulties and effectiveness of experts,  if they both attended in person and could compare impressions.  Such impressions cannot be conveyed by written transcripts.

    3)  The entire trial lasted over 6 weeks.  Messrs. Bailey and Johnson attended only the sessions that they believed would be most beneficial to WR Grace, and they did not even attend all of these sessions together.  They did both attend the opening arguments on January 8 and 9, since those arguments generally set the tone and demonstrate the Government and taxpayer's theory and proposed procedures.   They also jointly attended one session on January  19, since that involved a new expert witness that was being used by the taxpayer and Steptoe believed that it was important to judge how this witness reacted to questions in court.  Moreover, Steptoe was considering using that witness, and this was a very convenient way of  conducting a preliminary "interview" of that witness, a procedure that both Messrs. Bailey and Johnson would have jointly attended in any other context.  Note too that  Mr. Johnson attended part of the trial alone on the 20th and Mr. Bailey attended part of the trial alone on February 6 and 7.   Again, WR Grace was aware at all times as to Steptoe's allocation of manpower and agreed with it.

Exhibit B

Time Entries

| | | | |
|---|---|---|---|
| 01/07/02 | JW Johnson | Travel to Detroit for opening of Dow Chemical trial | 2.00 |
| 01/07/02 | AL Bailey | Travel to Detroit to attend Dow trial | 2.00 |
| 01/08/02 | AL Bailey | Attend Dow trial, Detroit, Michigan; discuss same with client representative. | 8.00 |
| 01/08/02 | JW Johnson | Attend Dow Chemical trial | 8.00 |
| 01/09/02 | AL Bailey | Attend Dow trial in Detroit, Michigan; return to DC. | 8.00 |
| 01/09/02 | JW Johnson | Attend Dow chemical trial | 8.00 |

Expenses

| | |
|---|---|
| Travel Advance | 27.00 |
| Air Fair - J. Walker Johnson - Detroit, MI for Travel for Dow Chemical Trial on 01/07-09/2002 | 635.00 |
| Hotel - J. Walker Johnson - Detroit, MI for Travel Dow Chemical Trial on 01/07-09/2002 | 470.87 |
| Parking - J. Walker Johnson - Detroit, MI for Travel Dow Chemical Trial on 01/07-09/2002 | 42.00 |
| Air Fare - Arthur L. Bailey - Detroit, MI to attend Dow Chemical COLI Trial on 01/07-09/2002 | 635.00 |
| Hotel - Arthur L. Bailey - Detroit, MI to attend Dow Chemical COLI Trial on 01/07-09/2002 | 376.20 |
| Parking - Arthur L. Bailey - Detroit, MI to attend Dow Chemical COLI Trial on 01/07-09/2002 | 42.00 |
| Taxis - Arthur L. Bailey - Detroit, MI to attend Dow Chemical COLI Trial on 01/07-09/2002 | 225.00 |
| Meals While On Travel - Arthur L. Bailey & Walker Johnson - Detroit, MI to Attend Dow Chemical COLI Trial on 01/07-09/2002 | 610.98 |

Exhibit C

Fees

| 02/19/02 | AL Bailey | Prepare for and attend Dow trial in Detroit, Michigan. | 9.00 |
| 02/20/02 | JW Johnson | Observe COLI experts at Dow trial. | 8.00 |
| 02/20/02 | AL Bailey | Return from Dow trial in Detroit, Michigan. | 2.00 |
| 02/21/02 | JW Johnson | Observe COLI experts at Dow trial. | 6.00 |
| 02/21/02 | JW Johnson | Travel to DC. | 2.00 |

EXPENSES

| | |
|---|---|
| Air Fare - J.Walker Johnson - Detroit, MI to Observe COLI Expert Witnesses on 02/19-21-02 | 596.00 |
| Hotel - J.Walker Johnson - Detroit, MI to Observe COLI Expert Witnesses on 02/19-21-02 | 476.52 |
| Parking - J.Walker Johnson - Detroit, MI to Observe COLI Expert Witnesses on 02/19-21-02 | 42.00 |
| Taxis - J.Walker Johnson - Detroit, MI to Observe COLI Expert Witnesses on 02/19-21-02 | 152.00 |
| Meals while on travel - J.Walker Johnson - Detroit, MI to Observe COLI Expert Witnesses on 02/19-21-02 | 282.61 |
| Air Fare - Arthur L. Bailey - Detroit, MI Monitor Dow Trial on 02/19-21/2002 | 696.00 |
| Hotel - Arthur L. Bailey - Detroit, MI Monitor Dow Trial on 02/19-21/2002 | 238.26 |
| Parking - Arthur L. Bailey - Detroit, MI Monitor Dow Trial on 02/19-21/2002 | 28.00 |
| Taxis- Arthur L. Bailey - Detroit, MI Monitor Dow Trial on 02/19-21/2002 | 146.00 |