UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING
FOURTH INTERIM QUARTERLY FEE APPLICATION OF
THE BLACKSTONE GROUP L.P.**

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Fourth Interim Quarterly Fee Application of the Blackstone Group L.P. (the "Application").

**BACKGROUND**

1. The Blackstone Group L.P. ("Blackstone") was retained as financial advisers to the Debtors. In the Application, Blackstone seeks approval of fees totaling $525,000.00 and costs totaling $7,491.87 for its services from January 1, 2002, through March 31, 2002.

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application. We reviewed the Application for compliance with the Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent


established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served an initial report on Blackstone, and received from it a response to our initial report.

## DISCUSSION

### General Issues

3.   While Blackstone was retained pursuant to an engagement agreement providing for Blackstone to be paid a flat monthly fee of $175,000, its fees remain subject to the provisions of 11 U.S.C. § 330. The Order Appointing Fee Auditor in Accordance with the Court's Direction (the "Fee Auditor Order") provides that

> [t]his order applies to (i) all professionals in these cases employed or to be employed pursuant to sections 327, 328 or 1103 of the Bankruptcy Code; and (ii) any claims for reimbursement of professional fees and expenses under section 503(b) of the Bankruptcy Code to the extent permitted by the Court, except: (a) professionals providing services pursuant to an order that does not require submission of fee applications; and (b) professionals retained pursuant to the Court's Order pursuant to §§ 1107(a) and 1108 Authorizing the Debtors to Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors Business, dated May 3 2001.

Fee Auditor Order at 2 (internal footnote omitted). Accordingly, Smith has reviewed the Application to determine compliance with the requirements of section 330.

4.   We note initially that Blackstone professionals spent a total of 708.50 hours on the activities for which fees totaling $525,000 are sought. The effective hourly rate is thus $741.00.

5.   In our initial report we noted that inadequate detail was a problem for all three of the Blackstone professionals who worked on the case, and the Application did not contain a narrative summarizing its activities that would enable us to place the time entries into context. We noted that Blackstone was retained to provide 12 specified categories of financial services to the Debtors, but

the categories into which time entries are assorted do not match those 12 specified categories. We noted that in the absence of a narrative, we cannot determine whether Blackstone has provided the services contemplated by the Court in approving the $175,000 monthly flat-fee arrangement or whether such services were necessary or beneficial under 11 U.S.C. § 330(a)(3)(C). We therefore requested that Blackstone provide a narrative describing its activities and the value of such activities to the Debtors and their estates. Blackstone responded as follows:

> Pursuant to the Amended Administrative Order dated April 17, 2002, Blackstone's monthly fee applications have included a summary substantially in the form of Local Form 101, the monthly invoice, detail of expenses for which reimbursement is sought, and "fee detail" in the form of time records. Pursuant to the request in the Initial Report, Blackstone will provide more detail in the description of its activities. . . .At the Fee Auditor's request, Blackstone has provided a narrative describing its activities for the time period under review in the Initial Report.

Blackstone's narrative is attached hereto as Exhibit A. We believe that this narrative satisfies our request.

### Specific Entries

6.  In the initial report we noted that the Application seeks reimbursement of $548.34 of word processing expenses. Paragraph II.E.7. of the Guidelines instructs us to consider "[w]hether the expenses appear to be in the nature of nonreimbursable overhead." The Guidelines go on to state that:

> Overhead includes word processing, proofreading, secretarial and other clerical services, rent, utilities, office equipment and furnishings, insurance, taxes, local telephone and monthly car phone charges, lighting, heating and cooling, and library and publications charges.

Thus, in the initial report we asked Blackstone to please explain why this expense should not be considered nonreimbursable overhead. Blackstone responded:

> Blackstone does not maintain an in-house fully staffed word processing department. Temporary processors are used on an "as needed" basis. Word processing charges are automatically allocated to a client based on the operator's log-in by a client matter number. Clients are charged at the

> personnel cost of $70.00 per hour for the actual amount of time spent by the operator while rendering word processing services to the client.

From this response, it was unclear to us whether these "temporary processors" were employees of Blackstone or were outside vendors, and thus we asked this question of Blackstone. Blackstone responded:

> In response to the point made in paragraph 7 of the Initial Report, to explain why word processing charges should not be considered nonreimbursable overhead, and in response to subsequent questions, Blackstone respectfully directs the Fee Auditor to the following:
>
> The amount of $70 per hour is the historical standard charge for word processing charges allocated to each client when appropriate. An analysis of the estimated 2002 costs associated with the word processing department, including compensation for Blackstone employees and temporary operators, space and occupancy, and other related expenses and estimated hours of use results in an amount of approximately $50 per hour. Blackstone respectfully submits that these charges should not be considered overhead. The Word Processing Department does exist to service the needs of all Blackstone clients and internal needs as well. However, the size and costs of the department are related to the requirements of its clients and its use; if the in-house department did not provide these services related to its work for the Debtors, Blackstone would have to outsource this work, which Blackstone believes would result in a higher cost to the client. However, as our most recent estimate of such costs is less than $70 per hour, Blackstone represents that all future charges for 2002 will be billed at the lower charge; we will also reimburse the Debtors for the any amounts already paid at the higher rate in 2002.

Thus, it appears that Blackstone does maintain a word processing department, and charges clients for any use of this department. Blackstone does not maintain that this $548.34 in word processing was for overtime charges caused by the exigencies of the case, but states that Blackstone routinely charges for these services. However, we believe that the routine nature of this charge militates in favor of this charge being considered overhead, and therefore recommend a reduction of $548.34 for this charge.

7. In our initial report, we noted that on 1/2/02, there is an expense item indicating a payment of $1,601.25 for legal fees:

Professional Legal Fee
Simpson Thacher & Bartlett   01/02/02                            $1,601.25

The Application's Cumulative Expense Summary contains this charge under the Expense Category of "Other" and the narrative portion of the Application does not explain the services performed by this law firm, and thus in the initial report we asked Blackstone to please explain the nature of the services provided and the basis for the pass-through of this law firm's fees. Blackstone responded:

> The charge for Simpson Thacher & Bartlett related to services provided to Blackstone at the time of its retention with respect to the filing of its application and the negotiation of its order with certain of the Committees. Because these are legal proceedings, Blackstone requires legal advice concerning retention and compensation issues that affect it from time to time in these proceedings. Blackstone needs to obtain such advice from counsel familiar with such issues who is not conflicted from representing some other party in the case. The Blackstone Agreement of Retention specifically provided for reimbursement of expenses of this type and the Retention Order expressly provided for the Debtors to reimburse Blackstone for 'expenses as provided in the Blackstone Agreement'.

We believe that this information satisfies our concern.

8.      We note that the other large charge in the expense category of "Other" is a charge for Publication of $1,200.00. We asked Pam Zilly of Blackstone to explain this charge, and she responded:

> The charge was for receipt of a publication entitled "Thirteenth Annual State of the Industry Report: Review of Infrastructure and Environmental Markets 2001-2002" prepared by Farkas Berkowitz & Company. The report focused on trends in the infrastructure and environmental markets in specific industries such as power, transportation, and telecommunications. It was less helpful in providing a greater understanding of how trends in environmental regulation would impact W.R. Grace's oil refinery catalyst business (for example, the demand for catalysts to reduce emissions in accordance with more stringent environmental regulations) or of the magnitude of Grace's potential liability for environmental investigatory and remediation costs related to continuing and discontinued operations as a designated "potentially responsible party" by the EPA at approximately 30 sites and at other sites under the jurisdiction of state and/or other local authorities. Based on this assessment of the value of the report, I have determined that the charge should be removed and the amount either issued as a credit on a subsequent invoice or otherwise refunded to the Debtors.

Thus we recommend a reduction of $1,200.00 in expenses for this charge.

9.      In our initial report we noted that between 1/4/02 and 2/24/02, and again from 3/15/02 to 3/28/02, professionals Zilly, Blechman, and Alexander spent a total of 164.50 hours on a compensation presentation. See Exhibit B. In our initial report we asked Blackstone to please

explain the nature of this presentation and its value to the Debtors and their estates. Blackstone's response is set forth in Exhibit C, and we believe that this response satisfies our concern.

10. In our initial report we noted that between 1/7/02 and 1/29/02, professionals Zilly, Blechman and Alexander spent a total of 28.00 hours on EPA analysis. See Exhibit D. Thus we asked Blackstone to please explain the nature of this analysis and its value to the Debtors and their estates. Blackstone responded:

> In response to the point . . . that the nature of the EPA analysis be explained, Blackstone respectfully directs the Fee Auditor to the following:
> (a) At the request of the Chief Restructuring Officer of the Debtors, Blackstone prepared an analysis which outlined a range of possible outcomes with respect to recoveries to creditors depending on the size of any potential attic fill liability. The CRO used such presentation in discussions with the EPA regarding its views as to appropriate action with respect to Libby, Montana. The issue of that whole area of potential liability is central to any plan or reorganization and Blackstone's analysis was on point is its role of advising the Debtors as to issues and outcomes that will affect a plan of reorganization.

We believe that this explanation satisfies our concern.

11. We note that on 3/12/02, professionals Zilly, Shinder and Blechman attended a meeting in Columbia with committee advisors. The total time spent including non work travel was 31.50 hours. See Exhibit E. Because Blackstone was retained under Section 328(a), the issue of multiple professionals at a meeting may not support a reduction in fees, but we wanted to bring this matter to the court's attention.

12. We note that the Application contains a charge of $2,389.91 for "Airfare/Railroad/Travel Local", which raised some concern about whether first class airfare was charges. However, a review of these charges indicates that the largest charges are for a number of trips by railroad, and the only airfare charge we found was one for $251.75, and thus we have no objection to these charges.

## CONCLUSION

13.    Thus, we recommend approval of fees totaling $525,000.00 and costs totaling $5,743.53 ($7,491.87 minus $1,748.34) for Blackstone's services from January 1, 2002, through March 31, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
Warren H. Smith
State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas 75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 31st day of July, 2002.

_____
Warren H. Smith

# SERVICE LIST

Notice Parties

**The Applicant**

Pamela D. Zilly
Senior Managing Director
The Blackstone Group L.P.
345 Park Avenue
New York, NY 10154

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Matthew G. Zaleski, III, Esq.
Campbell & Levine
Chase Manhattan Centre, 15th Floor
1201 Market Street, Suite 1200
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

NARRATIVE DESCRIPTION OF ACTIVITIES DURING THE PERIOD January 1, 2002 through March 31, 2002

(Note: "Committees" refers to the Unsecured Creditors Committee, the Asbestos Personal Injury Committee, the Property Damage Committee and the Equity Committee officially appointed in this case)

The financial services provided by Blackstone to the Debtors during this period included:

1) advising the Debtors with respect to the acquisition of Addiment Incorporated by the Specialty Construction Chemicals division of Grace including (i) the preparation and review of documents explaining the reason for and terms of the transaction to be presented to the four Committees (ii) the discussion of the transaction with the Committees' legal and financial advisors, (iii) the preparation of responses and materials in response to due diligence of the transaction by the Committees and their legal and financial advisors, (iv) the preparation and review of the motion related to the transaction;

2) advising the Debtors with respect to the closing of the Darex manufacturing facility in Atlanta and the move of operations to Chicago including (i) the review of documents outlining the cost effectiveness of the move, (ii) the discussions regarding the proposed action with the Committees' legal and financial advisors and the dissemination of information in response to their questions regarding cost savings and other requested financial information

3) advising the Debtors with respect to the formulation of a revised retention program, incentive compensation program, and severance program including (i) the analysis of employee data, (ii) the review of other comparable programs, (iii) discussions with the Committee advisors, (iv) the preparation of a presentation outlining the proposed programs, (iv) the presentation of such material to the Committees' financial advisors, and (v) the ongoing negotiations regarding such programs

4) advising the Debtors with respect to the presentation of recent operating results including (i) the reviews of such results, (ii) the preparation an analyses comparing such results to the Business Plan, (iii) the participation in phone calls with the Committees' financial advisors discussing such results, and (iv) the preparation and dissemination of materials with respect to the Committees' follow-up requests for additional detail

5) providing quantitative and qualitative analysis in support of the Debtors' potential acquisition, joint venture or other business combination with various businesses

6) providing quantitative and qualitative analysis with respect to presentations made to Judge Wolin and the EPA regarding the Debtors' financial condition and possible POR scenarios

7) advising the Debtors with respect to issues surrounding other Liabilities Subject to Compromise such as tax claims, pension issues, environmental obligations.

8) commencing the preparation of a restructuring model to integrate the Debtors' operating plans and possible restructuring alternatives

9) the analysis of comparable companies for valuation purposes

10) providing strategic and business advice in connection with the bankruptcy.

The successful completion of the Addiment transaction and the Darex plant closing, and Blackstone's efforts with respect to working with the Committees to gain their consent, allow Grace to leverage its existing business in the SCC division (in the case of Addiment transaction) and to reduce its cost structure by $2 million (in the case of the Darex plant closing) – both of which add value to the estate.

The efforts expended by Blackstone in advising the Debtors with respect to other transactions also add value since a key element of Grace's business strategy is to make "bolt-on" acquisitions which add depth and range to its product lines.

Blackstone's efforts with respect to the employee programs provide the Debtors with insights on the appropriate structure of plan essential to keeping key employees which the Debtors believe is instrumental in continuing their strong operating results.

Exhibit B

| Name | Date | Hours | Category | Description |
|---|---|---|---|---|
| Pamela Zilly | 01/04/02 | 2.0 | Employee Matters | Review latest compensation backup and analysis |
| Pamela Zilly | 01/04/02 | 1.5 | Employee Matters | Meeting with D. Blechman re: status of compensation presentation, case issues. |
| Pamela Zilly | 01/08/02 | 0.5 | Employee Matters | Call with B. McGowan re: compensation matters |
| Pamela Zilly | 01/09/02 | 1.5 | Employee Matters | Review compensation presentation and backup analysis |
| Pamela Zilly | 01/09/02 | 1.5 | Employee Matters | Meeting with D. Blechman, M. Alexander re: compensation presentation, additional needs |
| Pamela Zilly | 01/11/02 | 0.5 | Employee Matters | Call with N. Bubnovich re: compensation presentation |
| Pamela Zilly | 01/11/02 | 0.5 | Employee Matters | Call with B. McGowan re: comp matter |
| Pamela Zilly | 01/13/02 | 3.0 | Employee Matters | Revise compensation presentation |
| Pamela Zilly | 01/14/02 | 2.0 | Employee Matters | Revise compensation presentation |
| Pamela Zilly | 01/15/02 | 2.0 | Employee Matters | Revise compensation presentation |
| Pamela Zilly | 01/18/02 | 1.0 | Employee Matters | Review revised compensation presentation for updated comp numbers |
| Pamela Zilly | 01/18/02 | 1.0 | Employee Matters | Call with B. McGowan re: compensation analysis |
| Pamela Zilly | 01/24/02 | 1.5 | Employee Matters | Discussions with Blechman, M. Alexander re: comp data |
| Pamela Zilly | 01/28/02 | 2.5 | Employee Matters | Meetings with Blechman, M. Alexander re: compensation analysis and presentation |
| Pamela Zilly | 01/29/02 | 1.0 | Employee Matters | Call with D. Blechman, M. Alexander N. Bubnovich re: compensation presentation |
| Pamela Zilly | 01/31/02 | 1.5 | Employee Matters | Review latest compensation backup data and analysis |
| David Blechman | 01/06/02 | 3.0 | Employee Matters | Prepared materials re: compensation |
| David Blechman | 01/07/02 | 2.5 | Employee Matters | Prepared materials re: compensation plan |
| David Blechman | 01/08/02 | 0.5 | Employee Matters | Call with B. McGowan re: compensation matters |
| David Blechman | 01/08/02 | 1.0 | Employee Matters | Revisions to compensation presentation |
| David Blechman | 01/09/02 | 1.5 | Employee Matters | Meeting with P. Zilly, M. Alexanderer re: compensation presenation |
| David Blechman | 01/14/02 | 1.0 | Employee Matters | Revised analysis of compensation |
| David Blechman | 01/15/02 | 2.0 | Employee Matters | Revised presentation of compensation plan |
| David Blechman | 01/16/02 | 0.5 | Employee Matters | Call with S. Krawczel re: compensation |
| David Blechman | 01/16/02 | 0.5 | Employee Matters | Call with S. Krawczel and M. Piergrossi re: same |
| David Blechman | 01/16/02 | 1.5 | Employee Matters | Reviewed compensation materials |
| David Blechman | 01/18/02 | 2.0 | Employee Matters | Revise compensation analysis for updated numbers |
| David Blechman | 01/18/02 | 1.0 | Employee Matters | Call with P. Zilly, B. McGowan re: compensation analysis |
| David Blechman | 01/23/02 | 1.0 | Employee Matters | Discussions with M. Alexander re: new comp numbers |
| David Blechman | 01/24/02 | 1.5 | Employee Matters | Reviewed compensation materials with P. Zilly |
| David Blechman | 01/24/02 | 0.5 | Employee Matters | Call with M. Piergrossi re: compensation materials |
| David Blechman | 01/24/02 | 0.5 | Employee Matters | Meeting with M. Alexander re: compensation analysis and presentation |
| David Blechman | 01/28/02 | 2.5 | Employee Matters | Meetings with P. Zilly and M. Alexander re: analysis of compensation |
| David Blechman | 01/29/02 | 1.0 | Employee Matters | Meeting with P. Zilly, M. Alexander, N. Bubnovic re: compensation issues |
| David Blechman | 01/29/02 | 0.5 | Employee Matters | Call with S. Krawczel and M. Alexander re: compensation |
| David Blechman | 01/30/02 | 1.0 | Employee Matters | Reviewed compensation materials with M. Alexander |

| Name | Date | Hours | Category | Description |
|---|---|---|---|---|
| David Blechman | 01/30/02 | 0.5 | Employee Matters | Call with S. Krawczel re: compensation |
| Michael Alexander | 01/09/02 | 1.5 | Employee Matters | Meeting with P. Zilly, D. Blechman re: compensation analysis |
| Michael Alexander | 01/11/02 | 2.0 | Employee Matters | Update comparable compensation analysis |
| Michael Alexander | 01/18/02 | 2.5 | Employee Matters | Update compensation analysis, presentation |
| Michael Alexander | 01/18/02 | 1.0 | Employee Matters | Call with P. Zilly, D. Blechman, B. McGowan re: compensation presentation |
| Michael Alexander | 01/23/02 | 1.0 | Employee Matters | Discussion with D. Blechaman re: new comp data |
| Michael Alexander | 01/23/02 | 6.5 | Employee Matters | Catagorized compensation data based on LTIP, AICP, and retention tiers |
| Michael Alexander | 01/24/02 | 1.5 | Employee Matters | Meeting with P. Zilly, D. Blechman re: comp analysis |
| Michael Alexander | 01/24/02 | 0.5 | Employee Matters | Meeting with D. Blechman compensation re: analysis |
| Michael Alexander | 01/24/02 | 4.5 | Employee Matters | Analyze new compensation data and model case |
| Michael Alexander | 01/28/02 | 2.5 | Employee Matters | Meetings with P. Zilly and D. Blechman re: analysis of compensation |
| Michael Alexander | 01/29/02 | 0.5 | Employee Matters | Call with S. Krawczel and D. Blechman re: compensation |
| Michael Alexander | 01/29/02 | 1.0 | Employee Matters | Call with P. Zilly, D. Blechman, N. Bubnovich re: compensation presentation |
| Michael Alexander | 01/30/02 | 2.5 | Employee Matters | Revise compensation presentation |
| Michael Alexander | 01/30/02 | 1.0 | Employee Matters | Reviewed compensation materials with D. Blechman |
| Pamela Zilly | 02/01/02 | 1.0 | Employee Matters | Review latest compensation presentation |
| Pamela Zilly | 02/01/02 | 1.5 | Employee Matters | Meeting with D. Blechman and M. Alexander re: comp plan |
| Pamela Zilly | 02/01/02 | 0.5 | Employee Matters | Call with B. McGowen and N. Bubnovich re: compensation presentaion |
| Pamela Zilly | 02/07/02 | 1.0 | Employee Matters | Review comp presentation; meeting with D. Blechman re: same |
| Pamela Zilly | 02/07/02 | 1.0 | Employee Matters | Analysis of revised compensation analysis |
| Pamela Zilly | 02/11/02 | 1.5 | Employee Matters | Analysis of revised compensation materials |
| Pamela Zilly | 02/12/02 | 2.0 | Employee Matters | Analysis of revised compensation materials |
| Pamela Zilly | 02/13/02 | 1.0 | Employee Matters | Revision of comp presentation |
| Pamela Zilly | 02/14/02 | 3.5 | Employee Matters | Calls/meeting with D. Blechman, M. Alexander, B. McGowan, N. Bubnovich re: compensation analysis |
| Pamela Zilly | 02/14/02 | 2.0 | Case Administration | Update R. Shinder re: Addiment, Darex, compensation |
| Pamela Zilly | 02/14/02 | 2.5 | Employee Matters | Call re: comp with J. Kapp, N. Bubnovich, D. Blechman and M. Alexander |
| Pamela Zilly | 02/24/02 | 1.5 | Employee Matters | review revised compensation presentation |
| Richard Shinder | 02/19/02 | 2.0 | Employee Matters | Discussions with D. Blechman and M. Alexander re: Addiment status, and compensation proposal |
| David Blechman | 02/01/02 | 1.0 | Employee Matters | Review Revised compensation analysis |
| David Blechman | 02/01/02 | 1.5 | Employee Matters | Meeting with P. Zilly and M. Alexander re: comp analysis |
| David Blechman | 02/01/02 | 1.0 | Employee Matters | Conference call with Andersen, McGowan and M. Alexander re: comp plan |
| David Blechman | 02/06/02 | 0.5 | Employee Matters | Call with N. Bubnovich re comp |
| David Blechman | 02/07/02 | 1.0 | Employee Matters | Revised comp presentation; meeting with P. Zilly re: same |
| David Blechman | 02/12/02 | 2.5 | Employee Matters | Review and revise compensation analysis |
| David Blechman | 02/14/02 | 3.5 | Employee Matters | Calls re: comp with J. Kapp. N. Bubnovich, P. Zilly and M. Alexander |
| David Blechman | 02/14/02 | 0.5 | Employee Matters | Call with B. McGowan re: same |
| David Blechman | 02/15/02 | 0.5 | Employee Matters | Call with McGowan re: comp |

| Name | Date | Hours | Category | Description |
|---|---|---|---|---|
| David Blechman | 02/19/02 | 2.0 | Employee Matters | Revise compensation presentation |
| David Blechman | 02/19/02 | 2.0 | Employee Matters | Discussions with R. Shinder and M. Alexander re: Addiment status, and compensation proposal |
| Michael Alexander | 02/01/02 | 1.5 | Employee Matters | Meeting with P. Zilly and D. Blechman re: comp plan |
| Michael Alexander | 02/01/02 | 1.0 | Employee Matters | Conference call with D. Blechman and Andersen & McGowan re: comp plan |
| Michael Alexander | 02/01/02 | 4.0 | Employee Matters | Updated and compared comparable compensation programs |
| Michael Alexander | 02/04/02 | 1.5 | Employee Matters | review Andersen comp vs TBG analysis |
| Michael Alexander | 02/06/02 | 0.5 | Employee Matters | Call with N. Bubnovich and D. Blechman re comp |
| Michael Alexander | 02/12/02 | 1.5 | Employee Matters | Reviewed compensation analysis |
| Michael Alexander | 02/12/02 | 4.5 | Employee Matters | Revised compensation presentation |
| Michael Alexander | 02/14/02 | 3.5 | Employee Matters | Call re: comp with J. Kapp, N. Bubnovich, P. Zilly and D. Blechman |
| Michael Alexander | 02/19/02 | 2.0 | Employee Matters | Discussions with R. Shinder and D. Blechman re: Addiment status, and compensation proposal |
| Pamela Zilly | 03/17/02 | 0.5 | Employee Matters | Call with B. McGowan re: compensation issue |
| Pamela Zilly | 03/13/02 | 3.0 | Employee Matters | Revisions to compensation analysis |
| Pamela Zilly | 03/20/02 | 0.5 | Employee Matters | Call with B. McGowen re: compensation analysis |
| Pamela Zilly | 03/22/02 | 1.0 | Employee Matters | Meeting with R. Shinder re: comp proposal/ |
| Pamela Zilly | 03/25/02 | 1.0 | Committee Matters and Creditor Meetings | Review compensation presentation re: follow-up call with S. Cunningham |
| Pamela Zilly | 03/25/02 | 1.0 | Employee Matters | Discussion with R. Shinder re: comp plan |
| Richard Shinder | 03/15/02 | 1.5 | Employee Matters | Review of compensation proposal |
| Richard Shinder | 03/19/02 | 1.0 | Employee Matters | Review of compensation plan due diligence materials |
| Richard Shinder | 03/22/02 | 1.0 | Employee Matters | Meeting with P. Zillly re: comp proposal, status of responses |
| Richard Shinder | 03/24/02 | 2.0 | Employee Matters | Review of info request materials re: compensation plan |
| Richard Shinder | 03/25/02 | 1.0 | Employee Matters | Follow-up discussion with P. Zilly re: compensation plan |
| David Blechman | 03/19/02 | 2.5 | Employee Matters | Analyzed comp plans by individual: responded to info request |
| David Blechman | 03/19/02 | 1.0 | Committee Matters and Creditor Meetings | Calls with F. Gilbert, B. McGowan, M. Alexander re same |
| David Blechman | 03/25/02 | 2.0 | Employee Matters | Analyzed comp plans by individual re: above request |
| David Blechman | 03/28/02 | 0.5 | Employee Matters | Call with J. Paul re: comp issues |
| David Blechman | 03/28/02 | 0.5 | Employee Matters | Call with B. McGowan, P. Zilly. M. Alexander re: comp issues |
| Michael Alexander | 03/19/02 | 2.0 | Employee Matters | Reviewed comp plan information |
| Michael Alexander | 03/21/02 | 2.0 | Employee Matters | Update comparable comp analysis |
| Michael Alexander | 03/28/02 | 0.5 | Employee Matters | Call with B. McGowan, P. Zilly, D. Bechman re: comp issues |
| Michael Alexander | 03/28/02 | 3.5 | Business Analysis | Prepared for call re 2002 operating plan and comp plan |
| Michael Alexander | 03/28/02 | 1.0 | Committee Matters and Creditor Meetings | Call with P&M re: '02 plan, comp |
| Michael Alexander | 03/28/02 | 0.5 | Business Analysis | Meeting with P. Zilly, D. Blechman re '02 plan, comp |

Exhibit C

In response to the point . . . that professionals spent 164.5 hours on a compensation presentation, Blackstone respectfully directs the Fee Auditor to the following:

1) At the commencement of the case in April 2001 with the approval of the Court, the Debtors put in place a retention program that expires at the end of 2002 and a long-term incentive program for the three-year period 2002-2004. The Debtors recently filed a motion seeking the approval of (i) a new retention program for the period 2003-2004 (or earlier if a plan of reorganization is confirmed) and (ii) changes to the long-term incentive program.

2) Prior to the filing of the motion, at the request of the Debtors, (i) Blackstone assisted the Debtors in the formulation of the specific terms of the programs, (ii) prepared cost analyses of the programs, (iii) prepared and made presentations to the four committees and their financial advisors, (iv) answered numerous questions regarding the terms and cost of the programs from the financial advisors for the Unsecured Creditors, Personal Injury and Property Damage Committees, and (v) negotiated the compromise proposal with these three Committees which is reflected in the recently filed motion. The specific presentation referenced in the time records refers to drafts and final presentation presented to and discussed with the Committees and their advisors. The motion is scheduled for hearing on July 19. Although the objection deadline is not until July 9, Blackstone is confident based on its discussions with the Committees' advisors that there will be no objection from these constituencies notwithstanding their strong initial views to the contrary.

Blackstone's efforts during this period and into April, May and June with respect to the discussions and negotiations with the Committees' advisors resulted in a compromise proposal and eliminated the possibility of a contested hearing and the costs attended thereto and helped the Debtors put in place a retention and compensation program which they strongly feel is imperative to retaining key employees and to continuing the excellent operating performance realized to date.

## Exhibit D

| Name | Date | Hours | Category | Description |
|---|---|---|---|---|
| Pamela Zilly | 01/07/02 | 1.0 | Claims Analysis/Objections/Administration | Meeting with D. Blechman re: EPA analysis |
| Pamela Zilly | 01/15/02 | 2.0 | Claims Analysis/Objections/Administration | Review EPA analysis, discussion with D. Blechman, M. Alexander |
| Pamela Zilly | 01/24/02 | 1.0 | Claims Analysis/Objections/Administration | Meeting with D. Blechman, M. Alexander re: EPA charts |
| David Blechman | 01/07/02 | 1.0 | Claims Analysis/Objections/Administration | Meeting with P. Zilly re: EPA analysis |
| David Blechman | 01/09/02 | 2.0 | Claims Analysis/Objections/Administration | Worked with M. Alexander on EPA analysis |
| David Blechman | 01/15/02 | 1.0 | Claims Analysis/Objections/Administration | Mtg with M. Alexander on EPA analysis |
| David Blechman | 01/23/02 | 1.0 | Claims Analysis/Objections/Administration | Mtg with P. Zilly, M. Alexander re EPA |
| David Blechman | 01/29/02 | 2.0 | Claims Analysis/Objections/Administration | Reviewed EPA and analysis |
| David Blechman | 01/29/02 | 1.0 | Claims Analysis/Objections/Administration | Revised EPA analysis |
| Michael Alexander | 01/08/02 | 3.0 | Claims Analysis/Objections/Administration | Updated EPA analysis |
| Michael Alexander | 01/09/02 | 2.0 | Claims Analysis/Objections/Administration | Discussed EPA analysis with D. Blechman |
| Michael Alexander | 01/15/02 | 2.0 | Claims Analysis/Objections/Administration | Meeting with P. Zilly, D. Bechman EPA re: analysis |
| Michael Alexander | 01/15/02 | 1.0 | Claims Analysis/Objections/Administration | Meeting with D. Bechman re: revised EPA analysis |
| Michael Alexander | 01/22/02 | 3.5 | Claims Analysis/Objections/Administration | Modified EPA analysis |
| Michael Alexander | 01/24/02 | 1.0 | Claims Analysis/Objections/Administration | Call with D. Siegel, P. Zilly, D. Blechman re: EPA analysis |
| Michael Alexander | 01/24/02 | 1.0 | Claims Analysis/Objections/Administration | Meeting with P. Zilly, D. Bechman EPA re: analysis |
| Michael Alexander | 01/29/02 | 2.5 | Claims Analysis/Objections/Administration | Revised EPA analysis |

## Exhibit E

| | | | | |
|---|---|---|---|---|
| Pamela Zilly | 03/12/02 | 2.5 | Committee Matters and Creditor Meetrings | Travel to Columbia |
| Pamela Zilly | 03/12/02 | 5.0 | Committee Matters and Creditor Meetrings | Meeting with Committee financial advisors re: 2002 business plan, KERP |
| Richard Shinder | 03/12/02 | 2.5 | Business Analysis | Travel to Columbia, MD; review of 2002 operating plan presentation |
| Richard Shinder | 03/12/02 | 5.0 | Business Analysis | Trip to Columbia to discuss 2002 operating plan with committee advisors |
| Richard Shinder | 03/12/02 | 2.5 | Employee Matters | Travel to New York; review of retention/LTIP materials |
| David Blechman | 03/12/02 | 3.5 | Committee Matters and Creditor Meetrings | Traveled to Columbia, MD |
| David Blechman | 03/12/02 | 5.0 | Committee Matters and Creditor Meetrings | Meetings with Creditor's advisors and management re: 02 op plan & comp issues |
| David Blechman | 03/12/02 | 3.5 | Committee Matters and Creditor Meetrings | Traveled from Columbia, MD |
| Pamela Zilly | 03/15/02 | 2.5 | Committee Matters and Creditor Meetrings | Travel to New York |