## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| **Debtors.** | § | |
| | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING THE
### FEE APPLICATION OF REED SMITH LLP FOR THE
### FOURTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Fee Application of Reed Smith LLP for the Fourth Interim Period[1] (the "Application").

### BACKGROUND

1.      Reed Smith LLP ("Reed Smith") was retained as special asbestos products liability defense counsel to the Debtors.  In the Application, Reed Smith seeks approval of fees totaling $363,701.50 and costs totaling $134,139.09 for its services from January 1, 2002, through March 31, 2002.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended

---

[1] We note that Reed Smith  styled the Application as its "Third Quarterly" fee application.  To promote consistency and to avoid confusion in the fee audit process, we have referred to the Application as the "Fourth Interim Quarterly" fee application because it relates to the fourth quarter for which such applications have been submitted in the case.

Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served on Reed Smith an initial report based on our review, and received a response from Reed Smith, portions of which response are quoted herein, and portions of which are quoted in the Response Exhibit 1 that is included at the end of this document, and the separate document Response Exhibit 2.

## DISCUSSION

### General Issues

3.    In our initial report we noted that the individual time entries were not divided by category in the Application.  Paragraph II.D.1. of the Guidelines states that "[t]o facilitate effective review of the application, all time and service entries should be arranged by project categories....  A separate project category should be used for administrative matters and, if payment is requested, for fee application preparation."  In addition, we asked Reed Smith to please use a separate category for its own fee application preparation.  It was also noted that the Application did not contain a summary by project category.  The Amended Administrative Order Under 11 U.S.C. §§ 105 (a) and 331 Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members (the "Amended Administrative Order") in this case similarly requires such a summary to facilitate Smith's preparation of  "a spreadsheet showing all fees and expenses paid, by category to each professional and committee member, in each quarterly period...."  Thus in our initial report we asked Reed Smith to please refer to the Guidelines, the

Delaware Local Rules, and both the fee auditor retention order and the Amended Administrative

Order when preparing subsequent fee applications and Reed Smith responded that it would do so.

4.    We noted that throughout the application period there was no distinction made

between travel time and working travel time in the fee detail.  The Application's narrative was mute

on the subject as well.  Local Rule 2016-2(d)(viii) provides that "[t]ravel time during which no work

is performed shall be separately described and may be billed at no more than 50% of regular hourly

rates."  We noted that without further detail regarding the travel in this Application, we could not

determine if any of the travel time was non working and if it was, whether it was billed at the 50%

rate.  Thus we asked Reed Smith to please provide more information regarding travel time.  Douglas

Cameron of Reed Smith responded:

```
As for Travel time, I have instructed all time keepers to enter their travel
time either with a note as to the work they are performing or the phrase
"one-half time."  For example, if they are working and travel for 3 hours,
it would say "preparing for depo while traveling to City X."  If they are
not working, it would say, "Travel to City X (one-half time)" and the time
entry would only be for 1.5 hours.  For past fee applications, I reviewed
the draft time and if there was no entry for work while traveling, I cut the
time in half.  If there was any question, I cut the time in half.
```

We appreciate this response, and this information satisfies our concern.

5.    In our initial report we noted that timekeepers Restivo, Flatley, Atkinson and Cleversy

often did not include sufficient detail in their time entries.  Rule 2016-2(d) of the Delaware Local

Rules states "activity descriptions . . . shall be sufficiently detailed to allow the Court to determine

whether all the time, or any portion thereof, is actual, reasonable, and necessary . . ."  Thus we

advised Reed Smith to please advise these professionals to provide more detailed time entries in the

future and Reed Smith responded that it would do so.

<u>Specific Time and Expense Entries</u>

6.    In our initial report we noted that Reed Smith attorneys and paraprofessionals spent

a total of 695.3 hours in document review.  (See Exhibit A).   An identical description, "Document review", accompanies most of the time entries in the Application.  The exception to this was the time of paralegal Jones who does provide more detail.  We noted that large-scale document productions can be expensive, but the detail of most of the time entries was insufficient to indicate the extent of the task at hand.  Moreover, we noted, the Application did not provide a narrative describing this project.

7.      In our initial report, regarding the document review, we also noted that in January approximately 89% of this document review was done by associates of Reed Smith and 11% by paralegals.  In February this ratio changed  and associates did approximately 38% of the review and paralegals 61%.  In March the ratio was even more lopsided with paralegals doing 83% and associates only 17%.  Thus we asked Reed Smith to please explain the division of labor between the two classifications of employees.  We also asked Reed Smith for more detail regarding the nature of the documents being reviewed, what part of the asbestos litigation these documents relate to, and the general purpose of the review.  The U.S. Trustee Guidelines Rule, I.E. states ". . . [i]n evaluating fees for professional services, it is relevant to consider . . .whether the services were necessary to the administration of, or beneficial towards the completion of, the case at the time they were rendered; whether services were performed within a reasonable time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed. . . ."  Reed Smith's response is attached hereto as Response Exhibit 1.  We have reviewed this response, and have no objection at this time to these fees.

8.      In our initial report we noted that on 02/27/02 four attorneys, Restivo ($430), Bentz ($300), Cameron ($385), and Flatley ($400) prepared for and attended the same meeting for a total

of 26.40 hours and $10,203.00.

| | | | | |
|---|---|---|---|---|
| 02/27/02 | Cameron | 5.0 | $1925.00 | ...prepare for and meet with J. Restivo and L. Flatley regarding strategy meting (.5) prepare for and attend meeting with lawyers form Kirkland & Ellis, J. Restivo, L. Flatley, J. Bentz and R. Finke regarding strategy issues for asbestos litigation (4.5)... |
| 02/26/02 | Restivo | 3.6 | $1,548.00 | Preparation for strategy conference. |
| 02/27/02 | Restivo | 6.0 | $2,580.00 | Strategic Planning Meeting in Pittsburg. |
| 02/27/02 | Bentz | 5.7 | $1,710.00 | Preparation for and attending planning meeting... |
| 02/27/02 | Flatley | 6.1 | $2,440.00 | Preparation for meeting; meeting with Siegel, Finke, Bernick, Restivo, et al; follow up on meeting... |

According to Local Rule 2016-2(d)(ix), "[t]he activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role."   The matter of multiple professionals, is also addressed in the Guidelines, Paragraph II.D.5.: "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."   Thus we asked Reed Smith to please provide information regarding the need for these professionals at this meeting.  Reed Smith responded:

> This item involved the major strategy meeting that we had with our trial team, the lawyers from Kirkland & Ellis, and client representatives involved.  The strategy meeting addressed the status of the court's rulings with respect to a ZAI trial and who would do what on a going forward basis to prepare the defense for the ZAI trial.  Reed Smith will be the lead counsel in the ZAI trial .  The meeting also addressed how the work on the attic insulation cases could have interplay with the EPA cost recovery action at Libby and the fraudulent conveyance action pending before Judge Wolin.  The 4 Reed Smith attorneys were present because for years we have had a division of labor among the 4 of us who have worked on the Grace property damage cases since 1989.  While the ZAI claims are somewhat new, we have maintained the same general division of labor and had that division of labor when we tried the Barbanti attic insulation preliminary injunction prior to the bankruptcy filing.  All 4 were present to discuss the strategy issues that were to be discussed with the client and the Kirkland and Ellis lawyers.

While we believe that we understand this explanation, and we believe that it explains why it was

convenient for 4 attorneys to attend this meeting, we do not believe that it adequately explains why it was necessary for 4 attorneys to attend this meeting. Thus we recommend a reduction of ½ the fees incurred, for a reduction of $5,101.50 in fees.

9.      In our initial report we noted that between 02/01/02 and 03/21/02, J. Butcher and A. Muha, both at $185.00 an hour, spent a total of 158.8 hours and $29,378.00 on preparation of the "Grace defense". (See Exhibit B).   We noted that there was  no narrative in the application and insufficient detail in the individual time entries for us to ascertain the complexity or difficulty of this project. Paragraph I.E. of the Guidelines states that "[i]n evaluating fees for professional services, it is relevant to consider . . . whether services were performed within a reasonable time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed. . . ." Thus we asked Reed Smith to please provide more information regarding this project. Reed Smith responded:

> This project was performed in partial conjunction with the document review. This project has been a preliminary attempt to pull together and organize as much information as possible to help counsel in the preparation of a defense of any claims involving attic insulation, whether in the attic insulation litigation, the EPA cost recovery action or the fraudulent conveyance action.   It has involved collecting, comparing, categorizing, marshalling and summarizing historical information relating to the sale of attic insulation and other vermiculite-based products over a fifty-year period. This work has included various witness interviews, the review of a significant number of new documents and the preparation of attorney work-product materials intended to help facilitate, inter alia:  the preparation of examination outlines and evidentiary objections; the preparation of potential Grace witnesses; working with potential expert witnesses where necessary; and the preparation of other aspects of the defense of any actions or claims that appear to involve attic insulation and other vermiculite products not previously the subject of extensive litigation.   The project has required attorney work at various levels.

While this explanation discusses witness interviews and the preparation of potential Grace witnesses, none of these activities appear on the time entries set forth on Exhibit B, which appears to be mainly drafting and reviewing documents and drafting the Grace story or the Grace history.  It is unclear from the time entries or the explanation why it would cost as much as $29,378.00 in fees to prepare

the Grace story or the Grace history, and thus we recommend a reduction of 1/4 of these fees, for a reduction of $7,344.50 in fees

10.    In our initial report we noted that, on three separate occasions, more than one professional from Reed Smith participated in conference calls.

• 2.9 hours and $1,140.00 spent on 02/05/02 conference call.

| | | | |
|---|---|---|---|
| 02/05/02 | Cameron | Prepare for and participate in conference call with W. Sparks, R. Finke and L. Flatley regarding testing protocol issues (1.3) . . . | 1.3 |
| 02/05/02 | Flatley | Call with D. Cameron re: preparation for call (.1); conference call with R. Finke, W. Sparks and D. Cameron and follow up (1.5); . . . | 1.6 |

• 2.7 hours and $1,075.50 spent on 03/25/02 conference call.

| | | | |
|---|---|---|---|
| 03/25/02 | Cameron | Prepare for and meet with J. Restivo regarding issues relating to common issues trial and discovery period (1.3); participate in conference call with R. Finke regarding same (.6). . . | 1.9 |
| 03/25/02 | Restivo | Conference call with D. Cameron and R. Finke (.8) . . . | .8 |

• 3.4 hours and $1,399.00 spent on 03/27/02 conference call.

| | | | |
|---|---|---|---|
| 03/27/02 | Cameron | Prepare for and meet with J. Restivo regarding conference call issues (.6); Participate in conference call with J. Restivo, D. Bernick, R. Finke, et al. regarding science trial issues (.8); . . . | 1.4 |
| 03/27/02 | Restivo | Preparation for and conference call re: trial planning. | 2.00 |

Local Rule 2016-2(d)(ix) provides ". . .The activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the

participant's role."   Also, Paragraph II.D.5. of the Guidelines states that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."   Thus we asked Reed Smith to please explain the need for more than one professional at these conferences.   Reed Smith responded:

> As with No. 8 above, there were multiple attorneys involved in the calls because those calls involved issues which crossed over into the responsibility of more than one of the Reed Smith lawyers.

We believe that we understand this explanation, but it seems to explain why it was convenient to have more than one professional involved in these conference calls, not why it was necessary, and thus we recommend a reduction of ½ the fees incurred in these conference calls, for a reduction of $3,614.50 in fees.

11.    In our initial report we noted that secretarial overtime was charged in this interim period.

| 02/27/02 | Secretarial Overtime PRINT DOC FR SUMMATION | 195.00 |
| 02/11/02 | Secretarial Overtime TYPING IN SUMMATION | 90.00 |

Paragraph II.E.7. of the Guidelines, discussing nonreimbursable overhead, provides that "[o]verhead includes word processing, proofreading, secretarial and other clerical services...."   Thus we questioned whether this overtime related to secretarial services or word processing and constituted nonreimbursable overhead.   Reed Smith responded:

> The secretarial overtime relates to the document review process.   This relates to the descrition in No. 6 and 7 above. [See Response Exhibit 1] Given the project, we were faced with two options.   Hiring an outside vendor to "blow back" documents so that they could be reviewed by the Reed Smith attorneys or have a Reed Smith secretary work on weekends or late evenings to print the documents.   The cost estimates for the outside vendor were at least two times (and probably more) what it would cost to have a secrtary work on weekends.

We accept this explanation and thus have no objection at this time to these charges.

12.    In our initial report we noted a general expense charge in all three months of this interim period for document scanning and duplicating totaling $83,039.38.   We surmised that these

charges related to the document review referred to in paragraph 6 above.

| 02/27/02 | General Expense - - VENDOR: ON-SITE SOURCING INC DOCUMENT SCANNING | 32,675.19 |
| 02/28/02 | General Expense - - VENDOR: ON SITE SOURCING INC OUTSIDE COPYING OF DOCUMENTS | 23,048.04 |
| 04/30/02 | General Expense - - VENDOR: ON SITE SOURCING INC DOCUMENT SCANNING | 27,316.15 |

We asked Reed Smith for a more-detailed explanation. We expected that the additional information provided by Reed Smith regarding the scope of the document review project would also assist in explaining this expense.  As stated in the Fee Order, "[e]ach applicant may provide the Fee Auditor with such verbal or written supplemental information as the Applicant believes is relevant to the applicable Initial Report."  Reed & Smith's response in set forth in Response Exhibit 1.  We accept this explanation, and thus do not at this time recommend any reduction for this charge.

13.    In our initial report we note that Reed Smith was seeking reimbursement of $5,253.98 in travel expenses in which the detail provided in the application is insufficient.  These included entries which were not attributable to a particular professional and other entries in which the subject of the expense was omitted.   (See Exhibit C).  With regard to expenses, Paragraph II.E. of the Guidelines states that "[f]actors relevant to a determination that the expense is proper include ... [w]hether applicant has provided a detailed itemization of all expense including the date incurred, description of expense (e.g., type of travel, type of fare, rate, destination), method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense. . ." Thus we asked Reed Smith to please provide complete information regarding these expenses.   Reed Smith's response is attached hereto as Response Exhibit 2.

We were informed by Reed Smith that none of the air travel was for first class travel, and we have

no objection to these charges.

14.    In our initial report we noted that on 03/01/02 there was a fee entry for "Litigation Support".

| 03/01/02 | Litigation Support | Loaded the WRG 006.dii and WRG 006.dii image files into the Summation database. Ran the Summation utility Blaze to index all characters in the database. | 2.00 |
|---|---|---|---|

The Guidelines Rule II. E. states, "[f]actors relevant to a determination that the expense is proper include ... [w]hether the expenses appear to be in the nature of nonreimbursable overhead . . . Overhead includes word processing, proofreading, secretarial and other clerical services. . . ." the entry appeared to be word processing which is considered nonreimbursable overhead. Reed Smith responded:

```
The reference to litigation support is a function of the document review and
organization process. [See Response Exhibit 1]
```

We appreciate this explanation and have no objection to this charge.

## CONCLUSION

15.    Thus we recommend approval of fees totaling $347,641.00 ($363,701.50 minus $16,060.50) and costs totaling $134,139.09 for Reed Smith's services from January 1, 2002, through March 31, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
               Warren H. Smith
               State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 2nd day of August, 2002.

_____
               Warren H. Smith

# SERVICE LIST

Notice Parties

**The Applicant**

Kurt F. Gwynne, Esq.
Reed Smith LLP
1201 Market Street, Ste. 1500
Wilmington, DE 19801

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones,
P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of
Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of
Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price &
Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of**
**Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Matthew G. Zaleski, III, Esq.
Campbell & Levine
Chase Manhattan Centre, 15th Floor
1201 Market Street, Suite 1200
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

## Exhibit A

| Date     | Name             |                   | Hours |
| -------- | ---------------- | ----------------- | ----- |
| 01/02/02 | Butcher          | Document review   | 3.20  |
| 01/02/02 | Cindrich         | Document review.  | 7.00  |
| 01/02/02 | DeMarchi Sleigh  | Document review   | 8.10  |
| 01/02/02 | Devine           | Document review.  | 8.90  |
| 01/02/02 | Muha             | Document review.  | .10   |
| 01/03/02 | Butcher          | Document review   | 3.20  |
| 01/03/02 | Cindrich         | Document review.  | 8.90  |
| 01/03/02 | DeMarchi Sleigh  | Document review   | 5.00  |
| 01/03/02 | Devine           | Document review.  | 8.20  |
| 01/03/02 | Muha             | Document review.  | 2.10  |
| 01/04/02 | Butcher          | Document review   | .30   |
| 01/04/02 | Cindrich         | Document review.  | 8.00  |
| 01/04/02 | DeMarchi Sleigh  | Document review   | 8.00  |
| 01/04/02 | Devine           | Document review.  | 7.60  |
| 01/04/02 | Muha             | Document review.  | 9.00  |
| 01/07/02 | Butcher          | Document review   | .70   |
| 01/07/02 | Cindrich         | Document review.  | 9.00  |
| 01/07/02 | DeMarchi Sleigh  | Document review   | 7.70  |
| 01/07/02 | Devine           | Document review.  | 8.60  |
| 01/08/02 | Butcher          | Document review.  | 3.50  |
| 01/08/02 | Cindrich         | Document review.  | 8.50  |
| 01/08/02 | DeMarchi Sleigh  | Document review   | .40   |
| 01/08/02 | Devine           | Document review.  | 8.70  |
| 01/08/02 | Muha             | Document review.  | 8.40  |
| 01/09/02 | Butcher          | Document review.  | 2.00  |
| 01/09/02 | Cindrich         | Document review.  | 8.70  |
| 01/09/02 | Devine           | Document review.  | 8.70  |

| | | |
|---|---|---|
| 01/09/02 Muha | Document review. | 2.80 |
| 01/10/02 Cindrich | Document review. | 8.40 |
| 01/10/02 Devine | Document review. | 7.3 |
| 01/11/02 Butcher | Document review | 2.40 |
| 01/11/02 Cindrich | Document review. | 8.30 |
| 01/11/02 Devine | Document review. | 8.10 |
| 01/14/02 Butcher | Document review | .40 |
| 01/14/02 Cindrich | Document review. | 9.10 |
| 01/14/02 DeMarchi Sleigh | Document review | .30 |
| 01/14/02 Devine | Document review. | 4.10 |
| 01/15/02 Butcher | Document review | .50 |
| 01/15/02 Cindrich | Document review. | 8.60 |
| 01/15/02 DeMarchi Sleigh | Document review | 2.00 |
| 01/15/02 Devine | Document review. | 6.70 |
| 01/15/02 Muha | Document review (5.0)... | 5.0 |
| 01/16/02 Butcher | Document review | 1.60 |
| 01/16/02 Cindrich | Document review. | 8.30 |
| 01/16/02 DeMarchi Sleigh | Document review | .50 |
| 01/16/02 Muha | Document review. | 5.70 |
| 01/17/02 Cindrich | Document review. | 4.00 |
| 01/17/02 Muha | Document review and review materials from Grace storage project. | 1.10 |
| 01/18/02 Butcher | Document review | 1.00 |
| 01/18/02 Cindrich | Document review. | 9.20 |
| 01/18/02 Muha | Document review. | 5.90 |
| 01/20/02 Butcher | Document review | 3.50) |
| 01/21/02 Cindrich | Document review. | 8.40 |
| 01/21/02 Devine | Document review. | 5.30 |
| 01/21/02 Muha | Document review. | 7.80 |
| 01/22/02 Butcher | Document review | 1.30 |

| | | | |
|---|---|---|---|
| 01/22/02 | Cindrich | Document review. | 6.80 |
| 01/22/02 | Devine | Document review. | 5.60 |
| 01/22/02 | Jones | Review and coding of documents. | 8.00 |
| 01/22/02 | Muha | Document review. | .70 |
| 01/22/02 | Slade | Review Code documents | 8.00 |
| 01/23/02 | Cindrich | Document review. | 8.30 |
| 01/23/02 | Devine | Document review. | 1.50 |
| 01/23/02 | Jones | Review and coding of documents. | 8.00 |
| 01/23/02 | Slade | Review Code documents | 5.60 |
| 01/24/02 | Cindrich | Document review. | 7.20 |
| 01/24/02 | Jones | Review and coding of documents. | 5.50 |
| 01/24/02 | Muha | Document review. | 2.30 |
| 01/25/02 | Cindrich | Document review. | 7.30 |
| 01/25/02 | Devine | Document review. | .70 |
| 01/25/02 | Muha | Document review. | 4.00 |
| 01/26/02 | Muha | Document review. | 2.60 |
| 01/28/02 | Butcher | Document review | 2.00 |
| 01/28/02 | Cindrich | Document review. | 8.70 |
| 01/28/02 | DeMarchi Sleigh | Document review | .60 |
| 01/28/02 | Jones | Review and coding of documents for responsiveness to EPA and discovery requests. | 7.90 |
| 01/29/02 | Butcher | Document review | 1.70 |
| 01/29/02 | Cindrich | Document review. | 8.50 |
| 01/29/02 | DeMarchi Sleigh | Document review | 2.00 |
| 01/29/02 | Devine | Document review. | 4.50 |
| 01/29/02 | Jones | Review and coding of documents for responsiveness to EPA and discovery requests. | 7.90 |
| 01/30/02 | Butcher | Document review (1.0)... | 1.00 |
| 01/30/02 | Cindrich | Document review (6.50)... | 6.50 |
| 01/30/02 | Jones | Review and coding of documents for | 8.00 |

|            |                 |                                                                              |      |
|------------|-----------------|------------------------------------------------------------------------------|------|
|            |                 | responsiveness to EPA and discovery requests.                                |      |
| 01/31/02   | Butcher         | Document review.                                                             | .20  |
| 01/31/02   | Cindrich        | Document review.                                                             | 4.60 |
| 02/01/02   | Cindrich        | Document review.                                                             | 7.0  |
| 02/01/02   | Devine          | Document review.                                                             | 3.50 |
| 02/03/02   | Cindrich        | Document review.                                                             | 1.10 |
| 02/04/02   | Cindrich        | Document review.                                                             | 8.10 |
| 02/04/02   | Devine          | Document review.                                                             | 1.20 |
| 02/05/02   | Cindrich        | Document review.                                                             | 4.00 |
| 02/06/02   | Cleversy        | Review of W. R. Grace documents in regard to document requests.              | 8.00 |
| 02/07/02   | Cleversy        | Review of W.R. Grace documents in regard to document requests.              | 8.00 |
| 02/08/02   | Cleversy        | Review of W.R. Grace documents in regard to document request                | 7.00 |
| 02/10/02   | Jones           | Review and organize material for W.R. Grace document review                  | 6.00 |
| 02/11/02   | Cleversy        | Organization of materials from Boston document review.                       | .70  |
| 02/11/02   | Devine          | Document review.                                                             | 3.00 |
| 02/11/02   | Jones           | Review and code documents re responsiveness to EPA and class action claims.  | 7.50 |
| 02/12/02   | Cindrich        | Document review.                                                             | 3.00 |
| 02/12/02   | DeMarchi Sleigh | Document review.                                                             | .60  |
| 02/12/02   | Jones           | Review and code documents re responsiveness to EPA and class action matters. | 7.70 |
| 02/13/02   | Cindrich        | Document review.                                                             | 5.50 |
| 02/13/02   | Jones           | Review and code documents re responsiveness to EPA and class action matters. | 8.00 |
| 02/14/02   | Jones           | Review and code documents re responsiveness to EPA and class action matters. | 9.50 |

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| 02/15/02 | Devine | Document review. | 3.50 |
| 02/17/02 | Jones | Review and organize documents for W. R. Grace document review. | 6.00 |
| 02/18/02 | Devine | Document review. | 2.00 |
| 02/18/02 | Jones | Review and code documents for responsiveness to EPA and class action document requests. | 8.00 |
| 02/19/02 | Cindrich | Document review. | 1.00 |
| 02/19/02 | Jones | Review and code documents for responsiveness to EPA and class action document requests. | 8.00 |
| 02/20/02 | Cindrich | Document review. | 2.00 |
| 02/20/02 | Jones | Review and code documents for responsiveness to EPA and class action discovery requests. | 8.00 |
| 02/21/02 | Jones | Review and code documents for responsiveness to EPA and class action discovery requests. | 8.50 |
| 02/22/02 | DeMarchi Sleigh | Document review | 1.20 |
| 02/26/02 | Cindrich | Document review. | 1.00 |
| 02/27/02 | Cindrich | Document review. | .50 |
| 02/28/02 | Cindrich | Document review. | .20 |
| 02/28/02 | DeMarchi Sleigh | Document review | .60 |
| 03/01/02 | DeMarchi Sleigh | Document review | 3.50 |
| 03/04/02 | DeMarchi Sleigh | Document review | 3.20 |
| 03/04/02 | Haines | Document review (5.9)... | |
| 03/05/02 | DeMarchi Sleigh | Document review | 5.20 |
| 03/05/02 | Haines | Document review (3.5).... | |
| 03/05/02 | Slade | Review and code W. R. Grace documents. | 4.50 |
| 03/06/02 | Slade | Review and code W. R. Grace documents. | 8.00 |
| 03/07/02 | Slade | Review and code W. R. Grace documents. | 8.00 |
| 03/08/02 | Slade | Review and code W. R. Grace documents. | 6.50 |

| | | | |
|---|---|---|---|
| 03/11/02 | Jones | Review and code documents for responsiveness to EPA and class action discovery requests. | 7.40 |
| 03/12/02 | Cindrich | Document review. | .50 |
| 03/12/02 | Jones | Review and code documents for responsiveness to EPA and class action discovery requests. | 7.40 |
| 03/13/02 | Jones | Review and code documents for responsiveness to EPA and class action discovery requests. | 7.00 |
| 03/14/02 | Jones | Review and code documents for responsiveness to EPA and class action discovery requests. | 3.50 |
| 03/19/02 | DeMarchi Sleigh | Document review | 4.70 |
| 03/25/02 | Haines | Document review (6.7).... | 6.70 |
| 03/25/02 | Slade | Review and code W.R. Grace documents. | 8.00 |
| 03/26/02 | Slade | Review and code W.R. Grace documents. | 8.00 |
| 03/27/02 | Slade | Review and code W.R. Grace documents. | 7.00 |

Exhibit B

| | | | |
|---|---|---|---|
| 02/01/02 | Muha 5.90 | Receive materials for Grace Defense. | |
| 02/04/02 | Butcher | Work on Grace defense.    1.50 | |
| 02/04/02 | Muha | Review and itemize documents to be used for Grace defense.   7.30 | |
| 02/05/02 | Butcher 1.01 | Reviewing materials to work on grace defense. | |
| 02/11/02 | Butcher | Review materials to begin Grace defense.   1.30 | |
| 02/11/02 | Muha 0.50 | Review materials for Grace defense project. | |
| 02/12/02 | Butcher 2.30 | Review materials to prepare Grace story. | |
| 02/12/02 | Muha 4.50 | Review documents, materials for Grace defense project. | |
| 02/13/02 | Butcher 4.60 | Review of materials to prepare Grace defense. | |
| 02/13/02 | Muha | Review materials for Grace Story; discuss issues with J.Butcher | 2.20 |
| 02/14/02 | Butcher 4.50 | Review materials to prepare Grace story. | |
| 02/14/02 | Muha | Review materials and make notes for drafting Grace Story. 2.50 | |
| 02/15/02 | Butcher 0.50 | Review materials to prepare Grace defense. | |
| 02/15/02 | Muha 2.20 | Develop outline and draft Grace defense. | |
| 02/15/02 | Butcher | Review materials to prepare Grace story.  2.50 | |
| 02/18/02 | Muha 3.80 | Review materials; draft passages of Grace Story. | |
| 02/19/02 | Butcher 5.60 | Review material to prepare Grace story. | |
| 02/20/02 | Butcher | Review material to prepare Grace story, meeting with J.Bentz to discuss Grace story.        4.80 | |

| | | |
|---|---|---|
| 02/20/02 | Muha re: same. | Draft outline and draft Grace defense and meet with J.Bentz and J. Butcher 4.30 |
| 02/21/02 | Butcher 1.60 | Review material to prepare Grace story. |
| 02/21/02 | Muha | Draft outline of  Grace Story.  1.30 |
| 02/22/02 | Butcher 2.00 | Review material to prepare Grace story. |
| 02/21/02 | Muha | Draft outline of  W.R. Grace Story.  3.30 |
| 02/25/02 | Butcher 7.50 | Review material to prepare defense case. |
| 02/25/02 | Muha 1.50 | Draft outline of  the Grace defense case. |
| 02/26/02 | Muha 5.60 | Draft /review outline of  the Grace defense case. |
| 02/27/02 | Muha .20 | Draft outline of  the Grace defense case. |
| 02/28/02 | Butcher .70 | Draft Grace defense case. |
| 02/28/02 | Muha .50 | Draft outline of  Grace defense case. |
| 03/01/02 | Butcher | Draft Grace historical case.          5.00 |
| 03/04/02 | Butcher | Draft Grace historical case.          8.20 |
| 03/04/02 | Muha | Draft outline/revise and edit outline of Grace historical case.  5.50 |
| 03/05/02 | Bentz | Preparation of historical case defense.  1.25 |
| 03/05/02 | Butcher | Draft Grace historical case.          8.30 |
| 03/05/02 | Muha | Draft outline/revise and edit outline of Grace historical case.  8.00 |
| 03/06/02 | Butcher | Draft Grace historical case.          6.80 |
| 03/06/02 | Muha | Make final revisions to Grace historical case 1st draft outline; merge part a of outline with part 1 (by J.Butcher); meet with J.Bentz re: phase 2 of Grace historical case project; begin review of Grace document subset.          5.50 |
| 03/07/02 | Muha | Review of/notes on "trial subset: of documents for Grace historical case. |

|          |         |                                                                                                        |
|----------|---------|--------------------------------------------------------------------------------------------------------|
|          |         | 5.00                                                                                                   |
| 03/08/02 | Muha    | Review of/notes on "trial subset: of documents for Grace historical case. 5.00                         |
| 03/11/02 | Muha    | Review /notes on "trial subset: of documents for Grace historical case.  3.80                          |
| 03/15/02 | Butcher | Review Grace historical case.                     1.00                                                 |
| 03/15/02 | Muha    | Revise Grace historical case draft out; meet with J. Butcher re: plans for next phase of project.  2.70 |
| 03/18/02 | Butcher | Revise draft of  Grace historical case.   .50                                                          |
| 03/20//02 | Butcher | Review Grace historical case.                      .50                                                 |
| 03/21/02 | Butcher | Review Grace historical case.                     1.00                                                 |

<u>Exhibit C</u>

| | | |
|---|---|---|
| 03/01/02 | $20.00 | Meal Expense WR GRACE CLIENT MEETING 2/26 WASHINGTON, DC 1 LUNCH 1 DINNER |
| 03/01/02 | $17.00 | Taxi Expense  WR GRACE CLIENT MEETING 2/26 WASHINGTON, DC |
| 03/01/02 | $30.88 | Mileage Expense WR GRACE CLIENT MEETING 2/26 WASHINGTON, DC |
| 03/07/02 | $24.90 | Mileage Expense – 60 MILES/PARKING |
| 03/08/02 | $74.49 | Meal Expense -; ABP CORPORATION /Lunch in DC office on 2/26/02 |
| 03/08/02 | $12.00 | General Expense – GRATUITY FROM 2/21 – 2/28  BOSTON TRIP |
| 03/11/02 | $172.97 4 | Meal Expense – BOSTON – REVIEW OF DOCS 2/24 – 28 /01 breakfasts, 4 lunches, 4 dinners |
| 03/11/02 | $536.50 28 | Air Travel Expense – BOSTON – REVIEW OF DOCS 2/24 – /01 |
| 03/11/02 | $16.06 /01 | Mileage Expense - BOSTON – REVIEW OF DOCS 2/24 – 28 |
| 03/11/02 | $60.50 /01 | General Expense - BOSTON – REVIEW OF DOCS 2/24 – 28 $12 TAXI TO HOTEL AND LAUNDRY EXPENSE |
| 03/11/02 | $63.23 | Meal Expense – 3 /4 - 7/02 ALBANY, NY 1 BREAKFAST, 2 DINNERS |
| 03/11/02 | $181.00 | Taxi Expense - 3 /4 - 7/02 ALBANY, NY |
| 03/11/02 | $13.00 | General Expense - 3 /4 - 7/02 ALBANY, NY |
| 03/12/02 | $47.29 | Meal Expense -: KIRBY'S DELI & CATERING BREAKFAST TRAY & FRUIT TRAY 2/27/02 FOR CLIENT MEETING |
| 03/12/02 | $70.00 | Meal Expense – MRC FOOD SERVICES LUNCH FOR 10 2/27/02 DEC |

| | | |
|---|---|---|
| 03/13/02 | $40.08 | Meal Expense – ROLY POLY LUNCH FOR 10 2/27/02 DEC |
| 03/22/02 | $185.28 21/02 | MEAL Expense – BOSTON – REVIEW OF DOCS 3/17 – 4 BREAKFASTA, 5 LUNCHES, 4 DINNERS |
| 03/22/02 | $584.00 | Lodging - BOSTON – REVIEW OF DOCS 3/17 – 21/02 |
| 03/22/02 | $961.50 | Air Travel Expense - BOSTON – REVIEW OF DOCS 3/17 – 21/02 |
| 03/22/02 | $70.25 | Taxi Expense BOSTON – REVIEW OF DOCS 3/17 – 21/02 |
| 03/22/02 | $18.25 | Mileage Expense BOSTON – REVIEW OF DOCS 3/17 – 21/02 25 MILES / 25 MILES |
| 03/22/02 | $15.00 | Telephone – Outside BOSTON – REVIEW OF DOCS 3/17 – 21/02 |
| 03/22/02 | $24.00 | General Expense BOSTON – REVIEW OF DOCS 3/17 – 21/02 GRATUITY AND CART AT AIRPORT |
| 03/29/02 | $124.74 8/02 | REVIEW AND CODE W.R. GRACE DOCUMENTS 3/5 – (VALERIE A. SLADE ) |
| 03/29/02 | $31.00 8/02 | REVIEW AND CODE W.R. GRACE DOCUMENTS 3/5 – (VALERIE A. SLADE ) |
| 03/39/02 | $28.00 8/02 | REVIEW AND CODE W.R. GRACE DOCUMENTS 3/5 – (VALERIE A. SLADE ) |
| 03/29/02 | $178.17 | Meal Expense – BOSTON – REVIEW OF DOCS 3/24 – 28/02 4 BREAKFASTS, 5 LUNCHES 4 DINNERS |
| 03/29/02 | $715.16 | Lodging - BOSTON – REVIEW OF DOCS 3/24 – 28/02 |
| 03/29/02 | $801.50 28/02 | Air Travel Expense BOSTON – REVIEW OF DOCS 3/24 – |
| 03/29/02 | $52.50 | Taxi Expense BOSTON – REVIEW OF DOCS 3/24 – 28/02 |
| 03/29/02 | $50.73 | Mileage Expense BOSTON – REVIEW OF DOCS 3/24 – 28/02 |

| 03/29/02 | $9.00 | Telephone – Outside BOSTON – REVIEW OF DOCS 3/24 – 28/02 |
| 03/29/02 | $25.00 | General Expense BOSTON – REVIEW OF DOCS 3/24 – 28/02 GRATUITY AND CART IN BOSTON AIRPORT |

<u>RESPONSE EXHIBIT 1</u>

The following is a summary of the "document review" process which relates to Inquiry Nos. 6, 7, 12 and 14 in the Fee Auditor's Initial Report Regarding Fourth Interim Quarterly Application of Reed Smith, LLP ("Fee Auditor's Initial Report").

<u>Pre-Bankruptcy Document Collection and Review</u>

By way of background, prior to the bankruptcy filing, W. R. Grace and its counsel were involved in a comprehensive collection and review of a substantial number of company documents.  Because those documents related to discovery requests with respect to potential new claims that were not previously the subject of extensive litigation, they had not been the subject of prior comprehensive reviews.  At that time, W. R. Grace was faced with multiple discovery requests from the EPA and from the attic insulation class action plaintiffs.  The pre-bankruptcy document review process contemplated that thousands of boxes of documents would be reviewed in two phases.  Phase I, the Initial Review, would be conducted by paralegals and/or young lawyers from the several law firms who were at the time involved in the relatively new litigation filed against W. R. Grace with respect to its attic insulation product and from the law firm representing W. R. Grace in litigation with the EPA.  Given the scope of the project, temporary paralegals/lawyers from the Boston area were hired to assist in the Initial Review.  As part of the Phase I review, approximately 3,000 boxes of documents not previously reviewed were identified for the Initial Review, in the Boston area, to identify potentially relevant and responsive documents.  In addition, a quality control review was performed by the more experienced paralegals.  Prior to the bankruptcy filing, over 2,000 of those boxes were reviewed and potentially responsive documents were identified.  It was also decided as part of the pre-bankruptcy document review process that the potentially responsive documents identified during the Phase I review would be scanned/imaged by an outside vendor so that production could be made on CD-Roms as opposed to hard copy documents.  Thus, the approximately 2,000 boxes identified as containing potentially responsive documents were sent to an outside vendor (which, prior to the bankruptcy filing, was Lason) to be scanned or imaged.  At the time of the bankruptcy filing, however, not all of the documents that had been identified as potentially responsive had been scanned.  In addition, at the time of the bankruptcy filing, there were approximately 900 boxes that had not yet been reviewed as part of the Initial or Phase I Review.  Following the bankruptcy filing, additional boxes of potentially responsive documents were identified, bringing the total number of boxes that had to be reviewed post-bankruptcy as part of the Phase I document review to more than 1,000 boxes.

The pre-bankruptcy document review process also contemplated a Phase II attorney work-product document review of the potentially responsive documents that had been scanned.  The Phase II review was intended to identify particularly relevant documents that could be useful to counsel, <u>inter alia,</u> in W. R. Grace's defense of  claims relating to attic insulation.  However, the bankruptcy filing occurred before Phase II of the project was started.

<u>Post-Bankruptcy Document Review</u> **(Inquiry No. 6)**

Following the bankruptcy filing and Reed Smith's retention as Special Asbestos Counsel, the Phase II attorney work-product review of the documents scanned pre-bankruptcy was the first document review project to be conducted.  This review, which was conducted by six new Reed Smith associates, started in mid-September 2001 and was completed in early March 2002.  The results of the attorney work-product review could be relevant to several pieces of the litigation facing W.R. Grace to the extent attic insulation issues were raised, including but not limited to the attic insulation litigation, the fraudulent conveyance action and the EPA cost recovery action.  As part of this review process, Reed Smith paralegals and/or secretarial staff would "blow back" or print copies of the imaged documents for the attorney work-product review.  The initial decision to utilize Reed Smith paralegals or secretarial staff working overtime on weekends was made to save costs (Subsequently, due to time constraints and the need for more high-speed printing capabilities, recently an outside vendor has been utilized to print the imaged documents).

In early November 2001, while the Phase II attorney work-product review was taking place, W.R. Grace counsel started the Phase I paralegal review of the more than 1,000 boxes of documents that had not been reviewed pre-bankruptcy.  The start of this process had been delayed, in part, because the original scanning vendor was inadequate and had itself filed for bankruptcy, and a new scanning vendor (On-Site) had to be identified and retained.  Once that was accomplished, the Phase I project began with document review in the Boston area.  As with the pre-bankruptcy Phase I review, as documents were identified as potentially responsive, they were provided to the vendor for scanning/imaging.  The monthly scanning invoices (Inquiry  No. 12) from On-Site represent the charge by the outside vendor to scan or image the documents that had been identified from this Phase I paralegal review.  The Phase I review was completed in or about late May or early June 2002, although there are still documents being scanned/imaged by On-Site.  To date, there have been over 1.8 million images scanned, more than 800,000 of which have been scanned post-bankruptcy.

The Phase II attorney work-product review of the potentially responsive documents that had been identified as part of the post-bankruptcy Phase I paralegal review (conducted from November 2001 to May 2002) commenced in late May 2002 and is ongoing.  As part of this post-bankruptcy Phase II review, because of prior difficulties experienced with some of the data scanned by Lason, a paralegal-type review of the data received from On-Site has been provided by Reed Smith litigation support personnel (Inquiry No. 14) to make sure all data and images have been electronically imported and are available for use by the attorney reviewers.

The percentage of time between paralegal and attorney document review for the January, February and March 2002 period (Inquiry No. 7) fluctuated because the Phase II attorney work-product review decreased from January to March as the Phase II review of the documents that had been reviewed and scanned as part of the pre-bankruptcy Phase I review was completed, while at the same time the Phase I post-bankruptcy review of documents that had started in November 2001 continued in full force during the entire January to March period.