injured asbestos victims in Libby, Montana. Excuse me, Your Honor.

Our office represents over 300 such PI claimants. The vast majority of these personal injury claimants from Libby are also ZAI claimants, because they have ZAI in their homes. Over 100 residents in Libby have died from asbestos and hundreds more have serious and advancing asbestos disease.

THE COURT: Look, this isn't about asbestos injury. This is about conflict. It seems to me that if you sit as an attorney in fact for a member of one Committee that has an interest in attempting to get the largest distributive share of the pot, whatever that pot's going to be, and then you try to represent directly on behalf of a different Committee with the same interest, adverse to the Asbestos Committee, you have a conflict, and I'm not going to permit it. The question is, can you china wall somebody within your firm?

MR. MCGARVEY: Your Honor, the answer to the china question -- china wall question for our firm is no, we cannot do that.

THE COURT: Then you can't represent both. You have to pick.

MR. MCGARVEY: I'd like an opportunity to convince the Court otherwise.

THE COURT: Go ahead.

MR. MCGARVEY: The common factor to both the property

damage and the personal injury claims that my clients have is the question of the toxicity and the routes and degree of exposure to Zonolite asbestos fiber, or asbestos fiber from Zonolite. It's the same stuff whether it's vermiculite in the mine or vermiculite in the attics.

THE COURT: But you're not representing particular plaintiffs when you represent someone who sits on a Committee. That's the problem. You are sitting as a fact, as a member of the Committee, and your interest is a fiduciary to that member of the Committee. You can't hold that representational capacity in competing Committees.

MR. MCGARVEY: Well, Your Honor, I think that that issue is there regardless. This constituency of the Personal Injury Committee are also ZAI claimants, as are a lot of members of the Committee, and there are those inherent kind of conflicts. But the issues that are going to be litigated in this trial are common issues. The amount, when we all go after the pie, a piece of the pie gets taken away, well we all have those kind of conflicts. But the issues here are the same and the issues are aligned. And I suggest for that reason there's not the kind of conflict that Section 1103 addresses.

Section 1103 speaks to counsel for a Committee, and I think it's important that in looking at this trial we recognize that we're not representing -- the ZAI litigation

group is not representing the Property Damage Committee.

THE COURT: Certainly you are. You're being hired as special counsel for the Property Damage Committee for the special purpose of conducting this trial. Absolutely. That's the only reason you're getting paid from this Estate.

MR. MCGARVEY: That's correct, Your Honor. But that's the only interest of the Property Damage Committee and the Property Damage constituency which we represent.

THE COURT: Yes, and it may also be the largest interest if it turns out that your theory is correct.

MR. MCGARVEY: So therefore, the same conflict that we would -- you know -- we'd call a conflict for the personal injury group is also there for the property damage group.

THE COURT: The difference is that -- I'm not sure, is it you personally who hold the power as attorney in fact for a member of the Asbestos Committee? You're not sitting as counsel, you're sitting as a member of the Committee. You have a power of attorney to sit as attorney in fact for a member of the Committee. You're a fact witness with a fiduciary obligation, which is inconsistent with your fiduciary role representing the Property Damage Committee because of the issue of the share of the distributive pie. I can't see a way around it. It's an absolute conflict, and apparently the Asbestos Committee isn't willing to waive it. So, if you can be china-walled, then I think that could be a

solution. But if you can't be china-walled, you can't hold both positions. So you have to pick one.

MR. MCGARVEY: I understand the Court's position, and I would seek direction, then, as to what role we can play, since we certainly are counsel for these claimants that have both interests. We would like to continue to participate in advocating for our clients' interests in the ZAI case, as we would like to continue to participate in the Personal Injury Committee.

THE COURT: Representing an individual claimant as opposed to the Committee does not cause the same conflict. You would not be being compensated from this Estate. If you want to go forward representing a particular claimant at that claimant's expense, that's up to you and that claimant. But you can't be compensated from the Estate where you hold a conflict, and I think there's a conflict.

MR. MCGARVEY: Very well, Your Honor. If I understand correctly, then, and perhaps this would solve some of the other problems, as one of the five firms, if we withdrew from the plan as being counsel for the Committee, we could continue to participate in the litigation and, indeed, in the science trial as representatives of Paul Price and Marjorie Prebell and not be compensated by the Property Damage --

THE COURT: Well, my initial view without a lot of

thought is probably yes. But I think I would want to see that withdrawal and then find out from the Asbestos Committee whether they think that there is still some conflict. I don't see it to the same extent, because you're not being compensated from the Estate, and clearly, your clients are entitled to choose an attorney, if that's what they choose to do. So I think you can participate, I said that, I've been saying that for months, that anybody who wants to participate at their own expense can. The issue is how to get this trial teed up on a common issues trial without somebody coming forward and being --

MR. MCGARVEY: Yes. Well, we are willing to participate in that manner and we will withdraw from the application to be part of the Property Damage Committee designated team.

THE COURT: Okay.

MR. MCGARVEY: Thank you, Your Honor.

THE COURT: Mr. Baena?

MR. BAENA: Judge, I don't wish to address the conflict issue. I do wish to address the process which may go to the conflict issue; I'm not sure.

Judge, when we were -- when you were fashioning this whole concept on May 20, you sua sponte, in fact, articulated that it was just going to have to be the case, after you reflected on it, that the Debtor was gonna have to bear the

brunt of this, and I think those were your words. And you said either the Property Damage Committee's gonna have to do it, or somebody else is gonna have to do it, and the Debtor's gonna have to pay for it. And at page 68 of the transcript of that hearing, at line 9, starting at line 9, you said, "Now having said that, if they need special counsel, I think it's appropriate to hire special counsel. There are certainly counsel who have been very active in the case. As special counsel they don't need to be disinterested, so if the Property Damage Committee wanted to use them, I think they can. My reason for this is twofold. Number one, I believe under 503 this litigation is essential for the Estate to know how it's going to wrap itself up at some point in time, and I think that there would be an entitlement to a 503 administrative expense for having benefitted the Estate because it has to be done."

And I think, candidly, when you said that, from our perspective, that took this out of the realm of what we would traditionally think of as special counsel to a Committee, and in fact, use the Committee just as a gatekeeper to find somebody if it chose not to do it itself, that you could appoint or not appoint in your discretion and pay him. We thought, candidly, that by that statement and by the sort of ad hoc process that we're engineering as we go along here, that we were out of 1103 and that notions of 1103 are

inapplicable. And that's very important to my Committee, because if these folks were special counsel to us, then we would be the client and they would have certain obligations to us and we would have certain involvements with them and we don't wish that. That's why we didn't take door #1. We are legally impaired from representing, as this is presently teed up, any particular individual claimant in these bankruptcy proceedings. And remember, we're not traveling on class claims, we're not traveling on class representative claims. We are traveling on the individual claims of people like Marco Barbante. And --

THE COURT: Let me back off, Mr. Baena, because I think you make a good point. Whether 1103 applies or not, I don't really need to decide now. It wasn't raised before, and I don't think I need to go there now.

MR. BAENA: I agree.

THE COURT: What I am convinced of, however, is that you can't have an actual conflict and still be -- take part in this trial. You couldn't do it whether there was a bankruptcy or not. If there's an actual conflict, you shouldn't be participating as a lawyer for -- in a different proceeding. To the extent that there may be information developed that has some confidential overtones. And I don't know whether there will or not, but just to the extent that it could be, then I think it would be inappropriate to have an attorney who is

developing that confidential information and has a clear fiduciary duty to a different committee, and therefore, potentially, the obligation to disclose it to that committee, caught in that bind of keeping it confidential wearing one hat and disclosing it wearing another. It's inappropriate and it's not necessary. Because to the extent that counsel wants to come into the case representing an individual claimant, they can. They just can't do it at the cost of this Estate.

Now, maybe they'll have a 503(b) claim later. I don't know. If they do, I'm sure I'll hear about it and as long as it's within the budget, maybe I'll even approve it. I don't know. But I don't think I need to get to the 1103 issue.

MR. BAENA: I appreciate that, Judge. And I'm not gonna argue the conflict issue. I just want to make sure everybody understands and I wish to put it in the record, we are not acting as a client in this representation. Our Committee is not going to direct its counsel, our Committee is not going to share confidences with counsel, our Committee is not going to receive advice from those lawyers.

THE COURT: Well, your Committee's going to be living with the consequences of that --

MR. BAENA: And that's why my Committee can't be put in that position.

THE COURT: I don't quite understand, but that's

okay. I don't need to understand. What I need to do is get this teed up so we can figure out whether there is need to look at the class certification issues and whether the Debtor does have some significant liability that the Debtor at the moment denies having. That's what I'm trying to get a fundamental floor for.

MR. BAENA: Okay. Thank you, Judge.

THE COURT: Mr. Zaleski?

MR. ZALESKI: Your Honor, briefly, and thank you thus far, but I was trying to ask Mr. Weissberg what we should do about the Ness, Motley issue. To the extent that your ruling would be the same --

THE COURT: It would be the same.

MR. ZALESKI: -- I don't know if it's necessary to put that in the Order if they've already agreed to withdraw, so maybe if we have a day to make a phone call --

THE COURT: Well, I haven't seen a withdrawal, Mr. Zaleski. I don't know where that's coming from. Do you have some communication that hasn't been shared?

MR. ZALESKI: We were told, apparently a member of the Ness, Motley firm informed the Committee -- our Committee chairs that they would not, by the time we were here today, still be going forward with this. If subsequently that changed, I don't know. There were several vacations over the past couple of weeks, so key players were difficult if not

impossible to reach. I do know Mr. Rice will be at a Kaiser Committee meeting in New York that's contemporaneous with this, and I should be able to speak with him by early afternoon today. So --

THE COURT: All right.

MR. ZALESKI: -- I'll at least hear that --

THE COURT: I think it would be --

MR. ZALESKI -- part of the firm --

THE COURT: -- appropriate if they want to withdraw that they simply file a notice that they are no longer interested in in any way taking part in this action on behalf of --

MR. ZALESKI: PD.

THE COURT: -- the Property Damage Committee. Yes. Which in my view means they won't be compensated from the Estate.

MR. ZALESKI: Okay. Very well. Thank you, Your Honor.

THE COURT: Mr. Westbrook, can you live with the consequences of these actions?

MR. WESTBROOK: We'll be down to one firm pretty soon, Your Honor --

(Laughter)

MR. WESTBROOK: -- if anybody else stands up.

MR. BERNICK: Can we get a proposal, then, from the

folks, whoever they are, that are gonna be representing the ZAI claimants, say within 10 days? I'm just trying to figure out the schedule that will take us to the next hearing so that we can get this thing finally resolved. Would that be all right, Ed?

MR. WESTBROOK: (No verbal response)

(Counsel confer)

MR. BERNICK: A compelling suggestion was just made to me. 2 weeks would be fine. I think that we're not talking about an awful lot of debate on this anymore. So --

THE COURT: All right.

MR. BERNICK: -- then we can -- and we would have an opportunity thereafter, I think it's a short opportunity, but to make any submission that we think is appropriate, as opposed to we -- we then also will make our submission also within 2 weeks.

THE COURT: All right. The Debtor and -- I'm not sure what we're going to -- the ZAI Group?

MR. WESTBROOK: Claimants. The ZAI Claimants.

MR. BERNICK: That's fine, Your Honor.

THE COURT: Will submit a revised litigation by the -- within 14 days. What else are you looking for, Mr. Bernick?

MR. BERNICK: Whatever it is that we would say by way of response, I guess we would just get in by whatever the

deadline is to have it taken up at the next hearing. But if it --

THE COURT: Okay. I'm not sure at this point what a response is going to be. I mean, if there are line items in the budget that you object to, I've still set the parameters for that budget. I'm still going to be getting fee petitions. I think the appropriate time to file objections to it would be at the fee application process.

MR. BERNICK: Well, if we're gonna get it taken up at the next hearing in any event, I suppose we can voice our objections to the Court at that time. But, presumably, at the next hearing the retention of counsel and the budgets would be approved --

THE COURT: Right.

MR. BERNICK: -- so, that would really be the right time. I was just saying that if there was something that would be useful to submit in writing, we could have a date for doing that. If we have nothing to say, we have nothing to say.

THE COURT: All right. The budgets are due August 6th and responses by August the 13th, a week after.

MR. BERNICK: That's fine.

THE COURT: And the hearing is continued to August the 26th. But as I said, I would like to get this process going, because I will be entering an Order, I will make it

nunc pro tunc to today, because I'm approving the concept and Mr. Westbrook today, so that at least we can get going with this process.

MR. BERNICK: Would it be appropriate to have separate fee applications on this as a -- separate matter for the Court? Would that be helpful?

THE COURT: I think it may be. It might be easier just to break it down, because I think the only thing you're going to be doing is ZAI litigation, correct?

MR. BERNICK: Yeah. But it'd make it easier to keep track of the expenditures that are being made against the budget.

THE COURT: Why don't you build that into the Order? Whatever format you folks can agree on is all right with me. I haven't had any conversations with the fee auditor, so I wasn't really contemplating this as part of that fee audit process, but I don't have any objection to it if you think that works well, that's okay with me. We'll just put into that track, but keep it separate.

(Counsel confer)

MR. BERNICK: I think that brings us, Your Honor, to Item 10.

THE COURT: Okay. Give me one second --

MR. BERNICK: Sure.

THE COURT: -- Mr. Bernick, please, so I can get

caught up. All right. On 8, which is the request to retain counsel. That one I suppose what you're going to do is give me an Order on August 26th that you have worked out?

MR. BERNICK: Well, I think that really plays back into what we just talked about. That is, that the budgets, and in their case it'll include who they're designating as their two lawfirms, would be submitted within 2 weeks. And if we can take a look at theirs and work out an agreed Order, we can submit that in time for the next hearing. And that would be an Order that would cover at least the retention of counsel and maybe also the budget as well, but we can tender an Order at that time that would at least cover the retention of counsel. Or, if they -- if you all want to submit an Order. That seems to be something that could easily be done by the time of the next hearing.

THE COURT: I think that could come in by way of a certification of counsel from you, Mr. Westbrook, with a proposed Order attached to it, if that's helpful.

MR. WESTBROOK: I think we can work this out with Grace, Your Honor. I think this piece we might be able to work out.

THE COURT: All right. If you can't then I expect to enter an Order in August, so please bring one that I can at least modify. Okay. With respect -- so, 8 is essentially continued to August 26th unless I get a certificate of counsel

and an Order attached in advance.

MR. BERNICK: Right.

THE COURT: And 9 is --

MR. BERNICK: Is continued as well.

THE COURT: Because this will be the budget issue that we've worked --

MR. BERNICK: Right.

THE COURT: -- out.

MR. BERNICK: And by way of completeness, Your Honor, I suppose that what was formerly Item 4, which was our budget, also is continued.

THE COURT: Okay. All right. Thank you. Now I'm caught up.

MR. BERNICK: Okay. Now it brings us up to 10, and I'll let others speak to 10.

(Counsel confer)

MR. BERNICK: Your Honor, could I ask the Court's indulgence? If we could try to wind up matters that relate to the -- getting to the ZAI trial, then come back to the others?

THE COURT: That's fine.

MR. BERNICK: And that would require that we go to Item #13.

THE COURT: Okay.

MR. BERNICK: And with respect to Item #13, and I'll look forward to hearing from Mr. Westbrook on this, with

respect to Item 13, the basic problem I think really has been long ago resolved. It's just a question of getting an Order entered that sets it down in writing. With the parties' concurrence. We've known since March that this is going to be a science trial. You said that in March, you said it in April, you said in May, you said it in June. And last month you entered an Order, the Order denying the claimants' Motion to Strike and scheduling certain matters in connection with the ZAI proofs of claim. That Order reiterated on no less than nine different occasions that what we were gonna have was a science trial. So one thing should be clear is that we're gonna have a science trial. That's what it's gonna be about.

The problem has been to get a schedule and a recital of the scope of discovery which really is tailored to that science trial. It's -- and we haven't been successful so far and we've been at it for over 3 months now. April 5, I wrote to propose a schedule and a scope of discovery, way back at the beginning, early part of April. On April 17, Mr. Sobel wrote back, raised only two issues, one was the timing of certain expert reports and the other was the scope of discovery issue. At the April 22nd hearing, after we got done with one of our debates about the overall approach, we talked specifically about these two matters, both those matters, that is, the timing of the expert reports and the scope of expert discovery, and I indicated that there was a desire on the part

of the claimants to deal not only with science, but also with other liability issues. And Your Honor commented at that time that you didn't see that that was necessary in light of the fact that we were going towards a science trial.

I was given the task of preparing an Order. That Order was prepared. And at the May hearing, we went over the Order, and the Order tracked the letter that I had written, precisely, accepted it, made the change on the timing of the expert reports, and the -- whether -- the Order also tracked the letter precisely in saying that discovery would be limited to matters that relate to whether ZAI creates an unreasonable risk of harm to occupants of these buildings.

At that hearing, there was some discussion specifically on the issue of the scope of discovery, and Mr. Sobel spoke to that matter and Your Honor suggested the deletion of certain language, where it said "two occupants," that is harmed two occupants, so that we could deal with harm to potentially others. But with that one correction, it was still basically the same scope of discovery, that is, matters relating to whether there's an unreasonable risk of harm from ZAI.

I urged Your Honor at the May hearing to enter that Order so that we could get going, and Mr. Sobel urged the Court not to do that so that new counsel could be put in place. And for that reason, I believe that reason alone, the

entire matter has now been continued for 60 days till we're here today. But we're still wrestling with the same -- trying to get the same Order that we've been trying to deal with since May.

What has now happened? Well, they do have new counsel. Mr. Westbrook. And unfortunately at the meet and confer that took place, per Your Honor's instruction on this matter, it was old counsel, it was Mr. Sobel and others, who were all speaking to the issue once again and saying that they should not be limited in this proceeding or discovery to the science of ZAI. That was the position that they took. In an effort to compromise further, albeit still stay true to the spirit of what we're trying to accomplish, I agreed even to change the language of the Order so that we said, "discovery" -- "the scope of discovery will be limited to what science demonstrates with regard to whether ZAI creates a risk of harm," so that there wouldn't be any legal label in there, it would just be a subject matter. And with that one correction, we have now submitted, again, the Order to the Court that, again, has the same schedule as before, bumped off 60 more days at the Court's instruction, and also recites that the discovery should be limited to what's appropriate for a science trial, which are matters relating to what science has to say about the risk of ZAI.

So that is where we have finally come. They have

submitted an Order that basically retrenches on these same issues all over again. They recite a litany of issues relating to (quote) "liability" that they want to pursue here, and they don't even want to be limited by that list. So you go through their proposed Order. Sure it's risk, sure it's contamination, but it's whether there's property damage, it's whether there's impact on the value of the properties that are involved, it gets into remediation -- a whole series of other issues that are not the ZAI science issue. So once again, we're now talking about are we gonna have the ZAI science trial, or is it gonna be something that's different.

Their schedule also unilaterally moves the entire schedule back 90 days. Now, I had already moved it back 60 days. They want 90 days on top of that. Your Honor, it is of critical importance, Your Honor, especially in light of the comments that have been made about whether this case is moving, this case must move on parallel tracks and this track is substantially, substantially delayed. We want to get to that trial. There's no reason we can't get to that trial promptly. Your Honor has said repeatedly what it's to be about, and this very Order has now been before the Court, this'll be the third time, essentially, that these matters are before the Court.

THE COURT: Well --

MR. BERNICK: So we ask that the Court enter the

Order that we've tendered.

THE COURT: I think I'm having a little bit of a -- maybe it's a theoretical problem, but I agree that what I want to find out first is whether there is any scientific evidence that Zonolite causes some unreasonable risk of harm. Having -- and I think that's the floor. Because if there is no unreasonable risk of harm, then all of the damage issues don't need to be litigated.

MR. BERNICK: Correct.

THE COURT: So I don't want to get to damage issues now, because I don't think it's necessary to get to those issues --

MR. BERNICK: Right.

THE COURT: -- now. Unless you can't prove the unreasonable risk without also showing the damage. I -- most liability trials like this bifurcate the concept of liability from damage, and it seems to me we're looking at, in phase one, liability. But we're looking at only a subset of liability, which is whether the experts are going to be able to demonstrate that under any theory there is the possibility that Zonolite caused an unreasonable risk of harm. If the determination is yes, then I think the claimants have to prove under what theory the particular claimant suffers some harm, and then show damages. But don't we have to get to the issue first of whether there is an unreasonable risk of harm? I am

looking for a narrow, focused trial on that subject matter. That's what I was attempting to get to.

Now, I don't know --

MR. BERNICK: Yeah. Our --

THE COURT: -- where the Debtor stands, I don't know where other Committee stands. That's what I thought would make a logical litigation strategy.

MR. BERNICK: That's where we've been ever since you suggested it in March. That's why we came up with the idea of having the claimants come before the Court to create, really, a real litigation basis for -- an arena for dealing with that issue, and in every single letter and Order that we've crafted in order to get a schedule put in place that defined what the discovery's to be about and what the schedule should be, that's exactly where we've been. Issues about what the particular legal standard might be in a particular state with respect to a particular individual will presumably (a), be relevant to whether you can certify any kind of class at all, but (b), be relevant when somebody actually files a claim. There'll be particular claims that'll be made under the laws of particular states.

What we're trying to isolate is a core body of evidence that will be informative to the Court on whether there really is a problem with this product, and further informative to the Court's decisions about how to deal with

it. Do you deal with it with -- through class? Do you deal with it through a notice and bar date program?

So all that we want to get to is enough of a generic description so that at least we're not pursuing discovery into historical matters or property value and damage matters. We're pursuing discovery that's focused on the science. And that's what we said in our letters and our Orders ever since, and our Order that we've tendered to the Court that's on the agenda says precisely that. "Discovery on what science demonstrates with regard to the risk of harm from ZAI." That's what it says. And on the schedule, same sequence, same dates, pushed back 60 days, consistent with exactly what Your Honor said last time.

THE COURT: Mr. Westbrook?

MR. WESTBROOK: Yes, Your Honor. Your Honor, I certainly agree that the focus should be on the science, but I think we need to keep our eye on the ball. This is not a fear of cancer claim. I know Grace wants to portray it as a quasi-personal injury type of claim.

We listed a number of issues in our proposed Order and we certainly intended them as science issues, Your Honor, and just some examples. Can installation of ZAI contaminate properties with asbestos fibers? That's gonna require science. Can asbestos fibers be released during foreseeable use of the attic and other spaces over the lifetime of a

property with ZAI? Can asbestos fibers release during foreseeable use of ZAI settle on surfaces in the property causing contamination? Et cetera, et cetera. These are the issues that we see, Your Honor, need to be addressed. These are the issues for 15 or 20 years I have been addressing in traditional asbestos property damage claims, and for that same period of time, we have always butted heads with the defendant. They want to make it a personal injury -- quasi-personal injury case. It's not that. The building is the subject here. If the building is contaminated with asbestos fibers, the owner has a property damage claim.

Now, the owner may also have a fear of cancer claim, but we're not here to discuss that. The owner may also have some other claim. We're not here to discuss that. We need to keep our eye on the ball, because if we get off to what people fear about this and that, we are going to be a long way down the road and not get anything accomplished. If we keep our eye on the ball of the building, which the Courts have said that's the issue, and the contamination, we'll get there.

So, Your Honor, I don't think that -- I don't intend, certainly not intending to go into issues that are non-science issues. We certainly may have a disagreement with Grace about what the science should be. They're gonna want to focus on whether people are gonna get sick and drop dead like flies from this -- this situation. We're going to focus on are the

-- do the buildings have a problem.

The Court said back in April, April 22nd, that you were looking for a scientific basis for an injury of whatever nature. On March 18th, you said you want to find out if Zonolite is really creating some sort of a problem in a building. You said the litigation is essential, and we know that for the state to know how it's going to wrap up, and you said, you want to get liability on the hazardous nature of the product determined. Certainly, whether asbestos -- whether ZAI is innocuous or not is going to be an issue, but we need to focus on whether -- ZAI can release asbestos, whether that's a innocuous problem, whether it's a hazard, potential hazard, but we don't need to be talking about people's fears, about how many people are going to get sick from this or that. That's not the issue. The issue has got to be the building, and we're certainly willing to work with Grace on framing those issues, but I don't want to leave any impression today that the issue in this case from our standpoint should be anything other than whether these buildings have a contamination problem, now, or in the context of this bankruptcy, is such a problem inevitable?

THE COURT: Well, I mean, buildings can have a contamination problem without being damaged as a result of the contamination. If nobody -- if there is no damage as a result of the fact that the building is contaminated, the building

itself doesn't suffer damage. If there is a risk that the building can't be resold because it's contaminated with something that a person views as a hazardous product, that's one thing, but the building itself doesn't have that claim. I think the claim is, and I think where you're going to go with this, is -- maybe I'm incorrect, so that's why I'm raising this issue to find out -- is if in fact Zonolite does release fibers, then the question is, are those fibers dangerous? And if they are, okay, then at some point you're probably going to have both property damage and personal injury claims. And I agree with you, we're not going there now. So the question is, can they release? But the second question is, so what if they can release? Is there a harm incident to that release?

So I don't know that I disagree with your list of issues. I'm not sure it's necessary for me to state them now.

MR. WESTBROOK: I think, Your Honor, we're on the same wavelength.

THE COURT: Mr. Bernick?

MR. BERNICK: That's -- I -- I was gonna come to the same basic observation. Obviously, if there's contamination, you do get to the sequence of questions that we just focused on. But it's contamination, then, is there in fact an unreasonable risk of harm?

THE COURT: Right.

MR. BERNICK: Is it gonna be harmful or hazardous?

And if that's what we're focused on here, that's fine. That's what our Order seeks to pick up by saying what does science have to say about whether ZAI causes or is associated or has an unreasonable risk of harm. Obviously, in some of the circumstance where people are exposed to it, that's where you examine it. Their Order goes way beyond that. Their Order gets into impact on property values, whether homeowners and occupants are aware of the potential for asbestos contamination, what kind of remedial measures might be involved? That's where we fall off the wagon and say, nah, that gets into the question of under what kinds of circumstances may there be damages? But -- and it's not relevant at this point in time.

If what we're talking about here, again, is the properties, the product, whether there is contamination that's associated with it, and then the consequences of that contamination in terms of health risk or hazard, I think we're all reading off the same page, and I think that all of those are perfectly encompassed by the descriptor that we made deliberately broad in our proposed Order, which is what does science have to say?

THE COURT: Mr. Westbrook, why don't I try it with the general parameter the way the Debtor has proposed it, and if in fact you get into some discovery dispute over what the appropriate scope is, I think you can raise it at that time?

As I said, I don't necessarily disagree. I don't think we want to go to damages. And I don't think we want to go to state statute liability at this point. That will obviously be necessary at some point if there is some scientific evidence that asbestos fibers in Zonolite products do pose an unreasonable risk of harm. But I really want to limit this trial to that issue. That's number one.

Number two, the budget that I'm keeping your feet to the fire on probably isn't going to support much more than that anyway. So, I think maybe it would be a good idea to limit the scope to that issue.

MR. WESTBROOK: Yes. Your Honor, the language is not necessarily the problem, as long as we have an understanding that from out standpoint at least, what we're focusing on is the building and contamination of the building and whether if asbestos in a building is not from ZAI, is not innocuous, whether there's a cost to clean that up now or down the road. That's what we're concerned about, the contamination and whether something has to be done about it.

MR. BERNICK: That's the problem is that of course if you said about the -- what's it take to clean it up, it's always gonna cost something to clean it up. The question is whether it's necessary to clean it up. That's the question of liability and question of damages is a clean-up question, that's for later on.

THE COURT: All right. That I agree with. I don't think we want to go to the question of how much does it cost to clean it up, yet. I think what we want to go to is, is it necessary or even advisable to clean it up, and possibly, what are alternative methods, because that may also affect damages. But, for example, the Debtor may say that it can be encapsulated and your position may be no, the building has to be torn down. Somewhere in between may be a reasonable scope. I don't know. I don't know anything about this yet. I'm hoping you're going to inform me about it as we go on. So, these comments are not judging anything. I'm just hypothesizing that there could be a lot of things that come out at this trial, and I don't think it's necessary to get to the aspect of damages yet.

MR. WESTBROOK: Okay. That's fine, Your Honor. I think the language with that understanding, the language doesn't bother us, as long as it doesn't come back at some hearing in some limitation on what we're trying to discover.

THE COURT: Well, if it does, and you disagree with it, you'll file some motion and it'll get heard.

MR. WESTBROOK: Thank you, Your Honor.

THE COURT: All right. Can you live with the schedule that the Debtor has proposed now? This is -- fact discovery ends December 2, expert disclosure is January 2 by the ZAI claimants and by Grace January 31, depositions of ZAI

experts from February 3 to February 28, and of Grace's experts from March 3 to March 31. The Debtor will file a Rule 42 consolidation motion by April 30. The claimants' response due May 26th. Debtors reply June 6. If you can live with those schedules, I'll tell you now when the argument will be.

MR. WESTBROOK: Your Honor, on the fact discovery, and again coming back to my point that fact discovery against Grace has been suspended for 14 months, we thought that fact discovery could go on and should go on -- I think at one hearing the Court said you wanted fact discovery to wind up by the end of the year. Well, Grace moved it back to December 2nd. We had proposed February 28th. If we could move it at least until the end of January to give us a bit more time on fact discovery.

MR. BERNICK: Well the -- I'm sorry. The difficulty with that is that you then have fact discovery overlapping with the expert discovery. You know, I -- this all comes -- this -- these dates, this sequence, the intervals, were specifically gone over in April and May and were satisfactory to the claimants at that point in time. And I can understand if there's a desire for a slippage of, you know, a week, or two or three or maybe even 30 days, but 60 days and then that screws up the expert sequence, I don't think is necessary.

THE COURT: Well, why don't I do this? It seems to me that I did say by the end of the year, so let's change fact

discovery to December 31. We'll make the ZAI claimants' experts reports due by January the 15, Grace's by January 31, and that keeps the rest of your schedule in place.

MR. WESTBROOK: That's fine.

MR. BERNICK: We can live with that, Your Honor.

THE COURT: All right. If that's the case, argument's going to be in Pittsburgh on June 30th and July 1st of 2003.

(Pause in proceedings)

MR. BERNICK: I think that that's all on that.

THE COURT: All right. One second.

(Pause in proceedings)

THE COURT: Okay.

MR. BERNICK: Okay. Actually, the last of the ZAI matters is the Motion for Leave to Appeal, which is Item 11. And maybe once we get done with that we'll be totally done with ZAI for today.

THE COURT: Well, actually, I think that Motion has to be heard by the District Court. Rule 8003 simply directs me to get responses in and transmit everything to the District Court. So, I've gotten response, the Debtor's the only one that filed everything -- anything, so I'm now going to transmit it to the District Court and I think the District Court has to hear it.

MR. BERNICK: Okay.

THE COURT: Anyone disagree?

ALL: (No verbal response)

MR. BERNICK: I think, then, the only two items that remain are #10, which relates to the English -- the Scheme Administrators of English and American Insurance Company, and then the Motion -- I guess it's #12 -- to Clarify the Bar Date Order, and that's it.

THE COURT: Okay.

(Counsel comes forward)

THE COURT: Good morning.

MR. TALMADGE: Good morning, Your Honor. Scott Talmadge from Clifford, Chance, Rogers & Wells on behalf of James McMahon and Thomas Alexander Riddell, who are the Scheme Administrators of English and American Insurance Company. As an initial matter, Your Honor, I was advised by my local counsel this morning that my Pro Hac Vice Motion was approved by the Court. I assume that is acceptable to appear today.

THE COURT: Oh, yes.

MR. TALMADGE: Thank you, Your Honor. English and American, Your Honor, just by way of background, is a UK insurance company. It is the subject of insolvency proceedings in the United Kingdom. A scheme of arrangement has been approved by the English Court in its insolvency proceedings. There is also a Section 304 proceeding relating to English and American which is pending in the Southern

District of New York. A Section 304 permanent injunction was entered by Judge Blackshire in that case in 1995, and then reaffirmed later in the year 2000.

Your Honor, by the Motion, the Scheme Administrators are requesting limited discovery against the Debtors pursuant to Rule 2004. The nature of the discovery goes to the underlying agreements, business arrangements and settlement agreements between English and American and Grace, whether in fact those agreements have been violated, and if violated, the nature and extent of any claims that the English and American Estate may have incurred as a result of those violations.

By way of background, Your Honor, Grace obtained insurance coverage from English and American. English and American in turn obtained reinsurance coverage from two German reinsurance companies; I'll refer to them collectively as Guerling, because I will butcher the name of one if I try.

There was significant litigation between Grace and its London insurers in the early 1990s. There was a Settlement Agreement entered into between certain of the London insurers and Grace in 1995. There was a supplement to that Agreement entered into between the Scheme Administrators of English and American and Grace, which put that whole Settlement Agreement regarding the processing and handling of claims onto English and American.

What had been happening was that Grace was submitting

its claims all along to English and American. English and American would then submit its claims to the reinsurers. In 1998, that stopped. Claims stopped being submitted to English and American. English and American couldn't submit its claims to the reinsurer. What concerned the Scheme Administrators was they believed that an agreement had been reached which in some parlances is referred to as cut-through arrangements by which Grace and Guerling agreed that Grace would no longer submit claims, it would get a payment from Guerling and thereby, English and American could not get its reinsurance coverage from Guerling.

The Debtor has submitted a Response, we submitted a Reply to that. The Debtor's Response essentially says two things. One, Motion is premature, we should wait for a proof of claim to be filed, and after an objection to that proof of claim is filed, then perhaps some discovery should proceed. The problem with that, Your Honor, is the discovery that we're seeking here, and I'll again say, I've said it twice already, it's very limited. There's four document requests. And, indeed, the Debtor doesn't even state that it's broad or it will require any undue burden to the Estate. But that discovery goes to whether or not we indeed have a claim and what the nature of that claim is. And by the way at least I read Rule 2004, there's nothing in the rule that says you have to wait till after you file the proof of claim. Indeed, one

might argue you get the discovery to determine whether you need to file one to begin with.

The second argument that the Debtors make is that they've entered into arrangements with Guerling and there are confidentiality arrangements in those agreements. Well, what I would say is that there's no support in the Debtors' papers that say that they therefore can't produce those documents and indeed, the whole purpose of Rule 2004 is to find out the nature and extent of claims and people can't by virtue of a confidentiality agreement attempt to hide that from someone who's seeking to determine whether or not they have a claim against an Estate.

The last thing I want to say, Your Honor, is that what we learned last week was that Grace and Guerling have commenced an action in the United Kingdom to determine whether or not an agreement is a valid agreement. By virtue of them having filed that action, we now have a copy at least of what we believe to be the cut-through agreement, but we do not have any of the other documents that we are seeking, which we believe go to whether or not we have a good and proper claim against Grace in its bankruptcy and what the nature of that claim is. As a result, Your Honor, we would ask that our limited discovery be granted.

THE COURT: All right.

(Counsel for Debtors steps forward)

THE COURT: Good morning.

MS. BAER: Good morning, Your Honor. Janet Baer on behalf of the Debtors. Your Honor, I believe this Motion is virtually moot. As indicated by counsel for -- from Clifford, Chance, last week in England essentially a Declaratory Judgment action was filed. That action was filed to seek a declaration as to whether or not the (quote) "cut-through agreement" that was entered into is in fact a valid agreement, and secondly, whether or not the claims that EAIC, the Scheme Administrator's client, seeks to suggest Grace needs to make in fact need to be made. Those matters will all be taken up by the English Courts. Those matters will all be ruled upon by the English Courts. The main document that was sought by the Scheme Administrators has been produced as an Exhibit to that Declaratory Judgment action in England and has been served on the Scheme Administrators.

The back-up documentation, namely, one of the four items requested in discovery, will only be relevant if in fact the English Courts determine that Grace had some sort of an obligation to file claims. Then, knowledge as to other claims that Grace has filed against other insurers on this English arrangement would be provided. Your Honor, of the four documents that is being requested in the discovery request, essentially three have been provided either in the form of actual documents or an affidavit that outlines and explains

what the transaction was that's at issue. The only documents not provided that have been asked for are claims that Grace would have submitted to other insurance carriers -- according to an arrangement they had with them in England.

Your Honor, again, effectively, everything's been produced but perhaps some back-up documentation that will be the English Court's decision as to whether or not it's relevant and whether or not it should be produced. Under those circumstances, Your Honor, we think you should essentially let what happens in England take place. That will resolve one way or another whether or not the Scheme Administrators have a claim against Grace or, for that matter, have a claim against Guerling, the German reinsurance company.

THE COURT: Well, perhaps what I should do is simply defer this issue to the English Courts.

MS. BAER: I think that makes perfect sense, Your Honor. They are the ones who have jurisdiction, the matter's governed by English law. Again, most of the documents have been provided or will be relevant in that proceeding, which the Scheme Administrators are a party to.

MR. TALMADGE: Well, Your Honor, if I may for a moment? We're sort of in a -- we were put in a Catch-22. The Catch-22 is "we're not telling you anything, so you go figure it out." So when we go to try to figure it out, they start a lawsuit in another jurisdiction. I don't know what's going to

happen in that lawsuit. I don't know if that lawsuit is going to be stayed in favor of proceedings in the United States. It's just started. At the very least, since, as counsel has suggested, most of the documents have been produced, that which remain should not be too much of a burden on the Estate to produce so we could, again, figure out what we need to do, perhaps either in England or the United States with regard to our claims.

THE COURT: Is the issue that you're facing the March bar date?

MR. TALMADGE: No, Your Honor. That is coming up upon us, and that will certainly have an impact upon what we do, but there may be other actions that we seek to take with regard to our claims against Grace which are contingent upon what we learn by virtue of the documents we're seeking here.

THE COURT: Well -- and your client's a party to the suit in England?

MR. TALMADGE: They just got served, Your Honor, last week, is my understanding.

THE COURT: Well, then, they'll get whatever discovery they're entitled to through that suit, won't they?

MR. TALMADGE: Well, they may, Your Honor, but, again, I don't know what's going to happen with respect to that suit. It's just started. I don't know what actions English counsel's contemplating with respect to that lawsuit.

THE COURT: Well, the Debtor is certainly not going to sue and then stand on the ground that relief from stay has to be obtained in order to file an Answer, is it? 'Cause if it is, then I'm going to grant relief from stay to let that go forward.

MS. BAER: Absolutely not, Your Honor. We are a party to that litigation and that litigation will proceed as appropriate in England.

THE COURT: It seems to me that this issue is something that should be addressed by the English Courts in the first instance. If it gets to the point where your bar date is approaching and you still feel you don't have sufficient information, at that point I think you should get this Motion re-heard here and I may have a different view. But at the outset, I think the appropriate place is in England, where the suit is pending.

MR. TALMADGE: Thank you, Your Honor. I do want to advise the Court, there are other actions that the Scheme Administrations are contemplating right now which may bring me back before Your Honor. I don't know -- we really haven't formulated what those are going to be, but I don't want to show up on your doorstep another time and you wonder why I'm back here.

THE COURT: Okay. Well, this Motion I'm going to deny without prejudice so that I can defer it for adjudication

in the English suit. I'll get the Debtor to give me an Order that identifies the appropriate litigation. They'll run it by you first. But -- and it is without prejudice, so that you can raise it again if need be, but I it seems to me that the appropriate place to take it is where the suit is pending.

MR. TALMADGE: Thank you, Your Honor.

MS. BAER: Thank you, Your Honor.

(Pause in proceedings)

THE COURT: Okay.

MS. BAER: Your Honor, I think that takes us to agenda Item #12, which is the Property Damage Committee's Motion to Clarify the Bar Date Order.

THE COURT: Mr. Baena?

MR. BAENA: Thank you. May it please the Court. Judge, I should have told the Court when Mr. Westbrook was standing up that his son was here and as a parent it would have been a good thing if he could have won.

(Laughter)

MR. BAENA: Since -- but I'll take that favor for myself now. Judge, when the Bar Date Order was entered, there was a provision in the Bar Date Order that we really didn't focus on much, which essentially required all counsel of record for property damage claimants to either provide their clients with the proof of claim package and certify that to the Debtor, or provide the Debtor with the names and addresses

of all their clients who have claims or may have claims against this Estate. And we really didn't focus on it and -- until property damage lawyers started to wonder what that meant. First, how they became subject to the jurisdiction of the Court to be required to do such a thing if they had not appeared in this proceeding. And second, how broad an undertaking is that on their behalf. And finally, and most importantly, what's the effect of not complying with it. And the time to comply with that provision has come and gone. We filed our Motion for Clarification, which is before you today, before that period ended, but June 24th, these lawyers were purportedly required to do this.

We were gratified when we got the Debtor's Response that even the Debtor doesn't take the position that the failure to do either of those things by an attorney who is, they clarify, a counsel of record in either a litigation pending or in this bankruptcy proceeding, does not have the effect of disallowing or serving as a basis for disallowance of the claim, or the disqualification of the lawyer from representing that client. So we're gratified about that.

But we wanted to make sure that from Your Honor's perspective, since we -- we thought you probably had not focused on that much either, that this was purely an aspirational goal in an effort by the Debtor, in good faith, we think, and to their credit, to give as much actual notice

as possible, but this isn't a compulsory requirement that the Court is somehow able to extend the reach of its jurisdiction to find lawyers who might not even be known to the Court --

THE COURT: Mr. Baena, I have many too many lawyers over which I already do have jurisdiction. I'm not trying to bring more in.

MR. BAENA: Okay. So, I think we would be happy to just hear the Court articulate that it concurs there's no negative implication to counsel or to a claimant, that the Court isn't obtaining jurisdiction over either counsel in -- that hasn't already entered an appearance in this case or on claimants who have not yet filed a proof of claim in this case.

THE COURT: Well, obviously I don't have jurisdiction over claimants who haven't filed a proof of claim. I don't think I have any jurisdiction over lawyers who haven't entered an appearance in the case. I did actually look at that provision, and I thought the intent was to attempt to get the most actual notice out as possible, and the problem I thought that was being addressed was that the Debtor needs to know who it is that particular attorneys represent to know who to send notice to, or if the claimant wants to file a claim on its own, to get the appropriate information so that the Debtor can make appropriate service. I thought it was trying to get the universe of claimants expanded, not anything else. That's

what I thought the Debtor wanted to do, and I support that effort.

MR. BAENA: By their papers, they seek to get as broad notice on an actual basis as possible. And again, we applaud that effort. Judge, we don't think it's appropriate for lawyers to have to certify anything to the Debtor. Period. That's not an obligation that ought to be enforceable or even in the first instance required. If the Debtor doesn't get addresses from counsel of record or counsel for claimants who may yet assert claims -- they include in this package, Judge, people who have asserted claims and people who have not yet asserted claims. There's some dangerous language in all this. There's no reason why they can't come to the conclusion readily, we think -- they appear to be pretty bright folks -- that if they haven't gotten the addresses, then that claimant's not going to get actual notice. Period. And that's it. So as I said, it's almost an aspirational goal.

THE COURT: Well, that one I'm not sure I agree with. It seems to me that if an attorney is going to file a claim for somebody, the claim itself has to have the appropriate information in it.

MR. BAENA: That's the claim.

THE COURT: Okay.

MR. BAENA: That's the claim. What they're saying is they want in addition to that a certification that I'm not

giving you the addresses and identities of my client's, I've taken care of it. Lawyers shouldn't have to certify anything about their client relationship to the Debtor.

THE COURT: Okay. Well, I think the issue simply is whether or not at a certain point in time the claimant got noticed, and if the Debtor served the attorney, and the obligation is then on the attorney to serve the client and the attorney doesn't, the attorney's malpractice carrier hopefully is notified. But meanwhile, the Debtor also has some problems to deal with, because appropriate notice wasn't given.

MR. BAENA: Judge, we ought not start climbing that mountain today. When it arises we can deal with it. We just think it's untoward to tell people they have to make a certification to the Debtor about how they are managing their relationship and obligations and responsibilities and strategies with their client.

THE COURT: Well, I don't know that requiring the attorney to say "I notified my client so you don't need to," is going into all that, Mr. Baena.

MR. BAENA: It's unnecessary, Judge. It's --

THE COURT: Well --

MR. BAENA: -- just unnecessary. And it's particularly unnecessary if it doesn't mean anything. If the failure to give that certification doesn't meant anything, what's the point? If they don't get the address from the

lawyer, then they ought to assume that had the lawyer wished to, it would have gotten the certification. And it doesn't change anything.

THE COURT: I think it -- I think the issue is this. If the attorney files a claim saying, "Serve me at this address," then the issue is, does the client agree with that. Now, you're saying as an officer of the Court, I can accept the representation that the client agrees --

MR. BAENA: No, no, no. Judge. Judge. You're way ahead of us. You're way ahead of us. That authorization to file a proof of claim is an issue that will come up if they challenge the claim.

THE COURT: Right.

MR. BAENA: We're not talking about this certification accompanying a proof of claim. They're saying by June 24th -- that's already passed -- all lawyers of record had to either deliver claims packages to their clients and tell them that they did that, or they had to provide them with their clients' names. That's all we're talking about. And I'm saying, that's untoward.

THE COURT: Well, look. They -- the attorneys are the ones at risk, not the Debtor, because if they blow a bar date and their clients don't file one, the excusable neglect standard is undoubtedly not going to say, "I didn't get the notice from my attorney," and undoubtedly I'm going to say,

"too bad, your attorneys got the notice, go contact their malpractice carrier." I think it's for the attorneys' safety.

MR. BAENA: The attorneys don't need the safety net --

THE COURT: Okay.

MR. BAENA: -- of giving a certification to the Debtor.

THE COURT: Okay.

MR. BAENA: And so we would ask that they be relieved of that obligation.

MS. BAER: Your Honor, I don't think it's a major point in terms of whether or not they filed the certification, but Your Honor, the Debtor is trying to do everything it can to get actual notice out. I know that every attorney on that side of the room represents potential claimants or actual claimants. I don't know the names of their claimants, I don't know the addresses of their claimants. I'm required as attorney for the Debtor to make sure the best actual notice possible gets out.

THE COURT: Well, you've done what you can do. You've sent the notice to the attorneys. If the attorneys pass it on, they do. If they don't pass it on, they don't. But you've done what you know to do. You've sent the -- you've sent the notices to the attorneys that you reasonably believed represent claimants. If they represent claimants, they do and

they're quite foolish if they don't pass the information on. If they don't represent any claimants, they don't have any obligation to pass the information on under any ethical constraint. So I think the Debtor has done what it can do.

MS. BAER: Then, Your Honor, I don't think we have an issue.

MR. BAENA: Thank you, Judge.

THE COURT: All right. So what kind of an Order do you need?

MR. BAENA: I think we submitted an Order with our Motion, Your Honor.

MS. BAER: Your Honor, I think their Order is well beyond, that's the problem.

MR. BAENA: Why don't we propose an Order, Judge, to the Debtor and see if we can agree upon an Order to submit to the Court?

THE COURT: All right.

MS. BAER: That's fine, Your Honor.

MR. BAENA: Thank you, Judge.

THE COURT: So it's going to come in on a certification of counsel from the Debtor?

MR. BAENA: Excuse me?

THE COURT: From you?

MR. BAENA: We'll submit a proposed Order to the them, and if it's acceptable to them, we will then send it to

the Court.

THE COURT: All right. So it'll come in from the certification of counsel from you?

MR. BAENA: Yes.

THE COURT: Okay.

MR. BAENA: And we'll get to that this week.

THE COURT: All right. Is that everything?

MR. BERNICK: That's it.

THE COURT: Does anybody have any other issues to address?

ALL: (No verbal response).

THE COURT: Okay. We're adjourned.

ALL: Thank you, Your Honor.

(Court adjourned)

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

Signature of Transcriber                    7-31-02
                                            Date