The ACC has twice tried without success to derail these proceedings. Last year, the ACC opposed the entire concept of a Bar Date and claim allowance process, arguing that litigating the disputed tort claims would be a waste of time because "[t]his company is hopelessly insolvent and they know it and all of this is an exercise at trying to move the burden to somebody else."[3] Having failed to persuade this Court, the ACC made a similar pitch last winter to Judge Brown, moving to initiate summary estimation procedures[4] that would, if allowed, subvert the Bar Date claim determination procedures this Court had previously adopted. The ACC asserted that its proposed summary estimation, based on mechanistic projections from B&W's historical claims database, would clearly establish B&W's insolvency and entitle the tort creditors to all of B&W's equity. After taking the ACC's motion under advisement for several months, Judge Brown denied the motion in a September 21, 2001 order, stating: "Because . . . progress is being made on the case, the court is not inclined to grant the motion by the Asbestos Claimants' Committee to initiate claims estimation procedure at this time."

Most recently, the asbestos claimants have tried to make their "past is prologue" incantation a self-fulfilling prophecy by filing such staggering numbers of invalid Proofs of Claim that, they presumably hope, the claim allowance process will become overloaded and shut down. As discussed in Section III below, the mass dumping of claims began with the March 29, 2001 Settled Claims Bar Date, when the asbestos claimants submitted more than 49,000 allegedly "settled" claims, even though only 50,000 claims were even *pending* with B&W to be

---

[3]  Mr. Inselbuch, 8/16/00 Bar Date Hrg. Tr. at 40-41.

[4]  *See* ACC 12/27/00 Motion to Initiate Claims Estimation Procedure & FCR 2/6/01 Joinder.

*considered* for settlement as of the Petition Date. This volume left Judge Brown "somewhat shocked," especially since claimants' counsel had told him they would file only a "small handful of claims, relatively speaking."[5] The effort to overwhelm the courts continued with the July 30, 2001 Asbestos Personal-Injury Claim Bar Date when a whopping 221,375 claims were filed. This number far exceeds any reasonable projection of legitimate claim volume and amounts to more than half the total number of claims *ever* submitted to B&W during the more than two decades the company was paying claims prior to filing for Chapter 11 relief.

The quality of the Personal-Injury Proofs of Claim is inversely proportional to their volume. As shown in Section IV below, preliminary reviews of the Proofs of Claim (POC's) reflect that the majority are deficient. Two-thirds of the POC's sampled to-date cannot even show any connection to a B&W worksite. Well over half of the POC's are asbestosis claims brought by claimants with no physical impairment or injury – precisely the kind of improper claims that have been flooding the tort system and quadrupling the filing rate against asbestos trusts since the start of last year.

It is apparent that the massive problems plaguing asbestos claims generally have infected this Chapter 11 case, confirming the need for the claim determination process previously adopted by this Court. Debtors believe that process can work effectively and efficiently, pursuant to the specific proposals set forth in the accompanying Motion for a Case Management Order Establishing a Protocol for Litigating Asbestos Personal-Injury Claims and the legal arguments set forth in detail in a reference companion to that motion, the Road Map to B&W's Defenses to Asbestos Personal-Injury Claims.

---

[5] *See* discussion at pp. 45-46 below.