IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., <u>et al.</u>,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**Response Deadline: August 16, 2002**
**Hearing Date: August 26, 2002 at 10:00 a.m.**

## DEBTORS' OBJECTION TO TIMOTHY KANE'S MOTION TO LIFT AUTOMATIC STAY FOR CAUSE (DOCKET NO. 2234)

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by their undersigned counsel, respectfully submit this objection to Timothy Kane's Motion to Lift Automatic Stay for Cause (the "Motion"). The Debtors respectfully represent as follows:

### INTRODUCTION

1.    The Debtors oppose this effort by Timothy Kane ("<u>Kane</u>") to (a) prosecute a product liability action against the Debtors and (b) subsidize his potential recovery over other unsecured creditors. In his motion, Timothy Kane seeks relief from the automatic stay to pursue

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

his claims against the Debtors for alleged personal injuries suffered when he slipped and fell from a roof allegedly coated with a product manufactured by the Debtors. (Kane v. Walt Disney World Co., et al., Case No. CI-00-6803 (Cir. Ct. Orange Cty., Florida) (the "Kane Action")). In particular, the Kane Action asserts claims against the Debtors, in part, based upon theories of strict liability arising out of the alleged defective nature of a roofing underlayment manufactured by the Debtors. Kane Motion at ¶ 3.

2.    This case should not be distinguished from the myriad other claims pending against the Debtors' estates. Indeed, this Court has already confronted similar situations in these chapter 11 cases. Particularly relevant is the Motion for Relief from Stay of Alice Smolker (Docket No. 893) (the "Smolker Motion"). The Smolker Motion sought relief from the automatic stay to pursue allegations that one of the Debtors' products is defective. The Court denied the Smolker Motion stating, in part,

> "[The automatic stay] stays cases. It stayed [the Smolker case] as to Grace, and it appropriately should stay [the Smolker case] with respect to Grace's product, because [Smolker's] claim against Grace's product is a claim against a property interest the Debtor has, so it should be stayed and this injunction should be extended to cover any allegation that includes Grace or Grace's product as a defective product."

January 3 Hearing Transcript at p. 75. The Court recognized that the automatic stay must extend to cases where a Debtor "has to defend or provide information for other entities to defend against the defectiveness of its product." January 3 Hearing Transcript at p. 77.

3.    The focus of these chapter 11 cases is the massive number of asbestos-related cases, many of which allege that one of the Debtors' products was defective or hazardous. Allowing the Kane Action to proceed could set a precedent allowing other cases alleging that a product was defective or hazardous--including the asbestos cases--to proceed. In such an event,

-2-

the Debtors would need to participate in each of the individual proceedings to adequately protect their interests--defeating the purpose of the automatic stay. Because of the central importance to these chapter 11 cases of dealing with this massive amount of litigation in a comprehensive manner, it is critical to the Debtors' successful reorganization that all litigation against the Debtors alleging a defective or hazardous product, including the Kane Action, be stayed. Accordingly, the Motion should be denied.

## BACKGROUND

4.       Kane alleges that in July of 1999, he was erecting scaffolding for roof repairs at Disney's Grand Floridian resort. While walking on an angled portion of the roof, he slipped and fell off the roof, sustaining injuries. Kane alleges that a roofing membrane product produced by the Debtors was used on the roof to protect it against water and ice damage, and that this product was unreasonably slippery when wet. In September of 2000, Kane filed the Kane Action against Disney, the roofing contractor and the roof designer for negligence, and against W. R. Grace & Co.–Conn., one of the Debtors, for negligence and strict liability. On August 23, 2001, Kane filed an Amended Complaint.

5.       By a motion filed with this Court on or about October 26, 2001, Kane sought relief from the automatic stay to pursue the Kane Action. At the hearing before this Court on January 3, 2002 (the "January 3 Hearing"), the Court granted Kane partial relief from the automatic stay to depose certain employees of the Debtors. The Court granted this partial relief based on the relative lack of involvement of the particular named employees of the Debtors with the chapter 11 cases and the possibility that the depositions would provide information that would dispose of the Kane Action with respect to the Debtors. January 3 Hearing Transcript at pp. 94-95. The Court stated, however, "I do ... see reason to stay the [Kane] case as to Grace

-3-

and Grace's product. ... I'll let the depositions go forward, but that's all. I will not permit the [Kane] case to go forward." Id. By order dated January 25, 2002, the Court, while allowing the depositions to proceed, stayed the Kane Action in all other respects.

6.      On or about June 18, 2002, Kane filed the Motion once again seeking relief from the automatic stay to pursue the Kane Action. Kane presents no new facts supporting his renewed request for relief except to note that the Debtors' insurance covers the claims alleged in the Kane Action. As set forth herein, however, the harm the Debtors will suffer if the Kane Action is allowed to proceed (despite the existence of insurance) necessitates that the automatic stay not be modified and that this Court deny the Motion.

## ARGUMENT

## I.      NO LITIGATION ALLEGING A DEFECTIVE PRODUCT SHOULD BE ALLOWED TO PROCEED

7.      As a threshold matter, relief from the automatic stay should not be granted for any litigation against the Debtors alleging a defective or hazardous product. This is a bankruptcy that is litigation driven. The whole reason that the Debtors were forced into bankruptcy was the morass of asbestos litigation mounting against them, much of which alleges that the Debtors produced a defective or hazardous product. The main challenge of these chapter 11 cases is to develop a comprehensive litigation plan to deal with these thousands of cases and to develop a plan of reorganization. Allowing litigation to proceed which involves allegations of a defective or hazardous product, such as the Kane Action, (a) creates a distraction that prevents the Debtors from focusing on their reorganization plans and (b) runs counter to the purpose of the automatic stay in these chapter 11 cases.

-4-

8.      Courts have recognized that in mass tort cases there is a critical need to stay all collateral litigation in order to allow the Debtors an opportunity to develop comprehensive litigation and reorganization plans.

> The purpose of this section [362] by its various subsections is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor.

A.H. Robins Co., Inc. v. Piccinin (*In re A.H. Robins & Co., Inc.*), 788 F.2d 994, 998 (4th Cir. 1986). Here, there are literally thousands of cases currently pending against the Debtors. These cases should not be litigated piecemeal in courts across the country; rather, they should all remain stayed for a period of time while the Debtors develop a comprehensive litigation plan.

9.      Further, as the Court stated at the January 3 Hearing with respect to the Smolker Motion:

> ...[T]o the extent that you are going to raise an allegation that Grace in essence has to defend or provide information for other entities to defend against the defectiveness of its product. Yes, to the extent and that extent only I am willing to extend the injunction. I think the appropriate way to raise that issue is by having you and anyone else who contends that there's a defective product raise that by way of a proof of claim filed in this bankruptcy.

> ...[F]or purposes of this bankruptcy estate I see two things that need to be stayed. One is any action against the Debtor, and the second is any action against the Debtor's product[.]

January 3 Hearing Transcript at pp. 77 & 81. As the Court made clear, the automatic stay applies to cases (such as the Kane Action) alleging that one of the Debtors' products is defective. In particular, if the automatic stay did not apply in such circumstances, the Debtors would be forced to defend or provide information for other entities to defend against the allegations of defectiveness because the Debtors could arguably be bound by the effects of any resulting

judgment. As a result, instead of preserving the assets of the Debtors' estates as envisioned by

section 362 of the Bankruptcy Code, the Debtors would be engaged in full scale litigation to

benefit one creditor over all others and distracted from its task of developing a comprehensive

litigation strategy.

## II.    THE MOVING PARTIES HAVE FAILED TO SHOW SUFFICIENT CAUSE TO LIFT THE STAY

10.    The automatic stay is one of the most fundamental protections provided to a

debtor under the Bankruptcy Code.    See Midatlantic Nat. Bank v. New Jersey Dept. of

Environmental Protection, 474 U.S. 494, 503 (1986).    Pursuant to section 362(d) of the

Bankruptcy Code, a movant must demonstrate sufficient cause to justify the lifting or

modification of the automatic stay.    Although the Bankruptcy Code does not define what

constitutes cause, "courts generally consider the policies underlying the automatic stay [and] . . .

the competing interests of the debtor and the movant." In re Continental Airlines, Inc., 152 B.R.

420, 424 (D. Del. 1993).    In particular, Delaware courts consider the following three factors in

balancing the competing interests of the parties:

(a)    the prejudice that would be suffered by the debtors should the stay be lifted;

(b)    the balance of the hardships facing the parties if the stay is lifted; and

(c)    the probable success on the merits if the stay is lifted.

Continental, 152 B.R. at 424.    Sufficient cause to warrant the lifting of the automatic stay does

not exist in this case.

### A.    Substantial Prejudice Would Be Incurred By The Debtor If The Stay Were Lifted

11.    The most important factor in determining whether to grant relief from the

automatic stay to allow litigation to proceed against a debtor in another forum is the effect of

such litigation on the administration of the estate.  See In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984); In re Penn-Dixie Industries, Inc., 6 B.R. 832, 836 (Bankr. S.D. N.Y. 1980).  If the automatic stay is lifted to allow the litigation of the Kane Action, the Debtors' ability to administer their estates and these chapter 11 cases would be severely impacted.

12.    If the automatic stay is lifted with respect to the Kane Action, it may open the floodgates of other motions to lift the stay.  There are thousands of claims pending against the Debtors relating to alleged product defects and hazardous products.  Lifting the automatic stay in the Kane Action may well prompt large numbers of asbestos claimants to seek relief from the stay to pursue their claims against the Debtors.  Were this to happen, the Debtors would be put back into the position they were in prior to filing for bankruptcy.  The Debtors should be given the breathing room provided for by the automatic stay to allow them to develop their litigation plan for dealing with the morass of asbestos, product liability, and other collateral litigation.

## B.    The Balance Of Hardships Weighs Significantly In Favor Of The Debtors

13.    The above-described burdens forced upon the Debtors by the prosecution of the Kane Action far outweigh any inconvenience encountered by Kane.  Unsecured creditors, such as Kane, "bear the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the Debtor in denying relief."  In re Micro Design, Inc., 120 B.R. 363, 369 (E.D. Pa. 1990) (automatic stay not lifted where it was appropriate for movant to pursue its claim by filing a proof of claim, and participating in the claim process, in the bankruptcy case).

14.    The harm suffered by the Debtors is related to the nature of the claim asserted by Kane--an allegation of a hazardous or defective product.  Claims of injury resulting from the

91100-001\DOCS_DE:52600.1

Debtors' alleged hazardous or defective products are exactly why the Debtors filed these chapter 11 cases. Kane provides no reason why he should be given preferential treatment over literally thousands of other individuals asserting claims against the Debtors on the basis of allegedly hazardous or defective products. Kane has not shown, and cannot show, any cause for the Court to change its decision--as stated at the January 3 Hearing--that the automatic stay applies to all cases based on allegations that the Debtors' products are defective. January 3 Hearing Transcript at p. 75.

15. Kane improperly relies on the Debtors' insurance coverage to argue that the Debtors will suffer no hardship. Any insurance coverage that does exist cannot prevent the real harm to the Debtors' ability to effectively and efficiently develop comprehensive litigation and reorganization plans. Because the Debtors would have to defend or provide information to its insurers to defend against the defectiveness of one of the Debtors' products, the existence of insurance coverage cannot be a sufficient basis to lift the stay. The Debtors would suffer significant harm from the distraction created by having to actively participate in the defense of an action against one of the Debtors' products.

16. Because the Debtors would suffer great hardship if the automatic stay is lifted, and Kane would suffer little, if any, hardship if the Motion is denied, this Court should deny the Motion to lift the stay. Kane will still have the opportunity to resolve his alleged claim in this Court through the process of objections to his proof of claim if the Motion is denied. Using the proof of claim objection process to resolve alleged claims is the remedy the Court applied in conjunction with denying the Smolker Motion at the January 3 Hearing.

91100-001\DOCS_DE:52600.1

**C.    Kane Has Demonstrated No Likelihood of Success on the Merits.**

17.    Kane's Motion should be denied because he has not demonstrated, nor can he,

any likelihood of success on the merits.

## CONCLUSION

For these reasons, the Motion for relief from the automatic stay should be denied.

Dated:  August 9, 2002

> KIRKLAND & ELLIS
> David M. Bernick, P.C.
> James H.M. Sprayregen, P.C.
> James W. Kapp III
> Christian J. Lane
> 200 East Randolph Drive
> Chicago, Illinois 60601
> (312) 861-2000
>
> and
>
> PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.
>
> Laura Davis Jones (Bar No. 2436)
> David W. Carickhoff, Jr. (Bar No. 3715)
> 919 North Market Street, 16th Floor
> P.O. Box 8705
> Wilmington, DE 19899-8705 (Courier 19801)
> Telephone: (302) 652-4100
> Facsimile:  (302) 652-4400
>
> Co-Counsel for the Debtors and Debtors in Possession

-9-