IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Proceedings in a Chapter 11 Reorganization |
| W.R. GRACE & COMPANY, | ) ) | Jointly Administered |
| Debtors. | ) ) ) | Case No. 01-01139 (JKF) |

**RESPONSE OF REED SMITH LLP TO THE FEE AUDITOR'S FINAL REPORT
REGARDING THE FEE APPLICATION OF REED SMITH LLP
FOR THE FOURTH INTERIM PERIOD [Docket Item 2490]**

COMES NOW Reed Smith LLP ("Reed Smith"), Special Asbestos Products Liability Defense Counsel to the Debtors, W.R. Grace & Company et al. ("Grace" or the "Debtors"), to respectfully submit this Response to the Fee Auditor's Final Report [Docket Item 2490] ("Final Report") Regarding the Fee Application of Reed Smith LLP for the Fourth Interim Period ("the Application"), and states as follows:

1.  Since its retention by the Debtors as Special Asbestos Products Liability Defense Counsel following the Debtors' bankruptcy filings in 2001, Reed Smith has filed fee applications for the actual, reasonable and necessary fees it has generated in preparing the Debtors' defense of existing and future claims asserted against the Debtors relating to alleged asbestos-related liabilities. In the subject Application, Reed Smith sought approval of fees totaling $363,701.50 and costs totaling $134,139.09 for its services to the Debtors from January 1, 2002 through March 31, 2002.

2.  In conducting his audit of the Application, the Fee Auditor served on Reed Smith an initial report which raised questions about various entries in the Application, and

requested that Reed Smith clarify specific items in order for the audit to be completed. Reed Smith promptly responded to the Fee Auditor's initial report, and the Fee Auditor's general satisfaction with this response is reflected in the Fee Auditor's Final Report.

3. The Fee Auditor's Final Report does, however, cite to three remaining areas of time entries for which he recommends that Reed Smith's fees be reduced. These three entries regard: (1) a meeting attended by four Reed Smith attorneys on February 27, 2002, see Final Report ¶ 8; (2) work done largely by two Reed Smith junior attorneys on the "Grace defense" project, see Final Report ¶ 9; and (3) participation by more than one Reed Smith attorney on various conference calls, see Final Report ¶ 10. Reed Smith hereby wishes to respond to the Fee Auditor's remaining issues with these entries, and respectfully requests that this Court approve full compensation for two of these three entries.

4. **First Entries.** In its initial report, the Fee Auditor noted that four Reed Smith attorneys prepared for and attended the same meeting on February 27, 2002 for a total of 26.40 hours and $10,203.00. In response to the Fee Auditor's questions regarding the necessity of having all four attorneys attend this meeting, Reed Smith explained that the meeting in question was an all-day, major litigation strategy session in Pittsburgh that involved several client representatives, attorneys from Kirkland & Ellis (the Debtors' bankruptcy counsel), and the lead partners on the Reed Smith trial team, and that due to the division of responsibilities that the Reed Smith attorneys traditionally have used in representing Grace in its asbestos-related property damage litigation, it was necessary that all four attorneys from Reed Smith be present to provide counsel and be involved in the development of the strategy for the proposed ZAI litigation (as well as the other matters facing the Debtors that could involve ZAI and other asbestos-related issues). The Fee Auditor expressed his understanding of this explanation, but

nevertheless recommended that the fees incurred by Reed Smith with regard to this meeting be reduced by ½.  <u>See</u> Final Report ¶ 8.

    5. Each of the four trial attorneys present at the February 27, 2002 meeting traditionally have handled, since 1989, separate and distinct aspects of the asbestos property damage cases filed against Grace.  This division of primary responsibility was designed to avoid duplication of effort and to allocate direct responsibility for results.  Following this format, each of these four attorneys has taken on specific primary responsibilities in Reed Smith's overall position as Grace's Special Asbestos Products Liability Defense Counsel.  The meeting in question was held to discuss the bankruptcy proceeding generally and litigation strategy specifically, including all issues relating to any aspect of the bankruptcy that could involve alleged asbestos-related liabilities of the Debtors (including, but not limited to, the ZAI property damage litigation, the fraudulent conveyance action, and the EPA cost recovery action).  Because the meeting involved planning and strategy for all aspects of the case as well as reports on the status of any work that had been undertaken to that date in all areas of the case, it not only was necessary to the overall litigation strategy for all four responsible Reed Smith attorneys to be present at the meeting, but indeed was more efficient to do so rather than having the details of the meeting passed along through holding what would have amounted to multiple meetings with each lead attorney individually.

    6. **<u>Second Entries.</u>**  In the Fee Auditor's initial report, the Fee Auditor also noted that two Reed Smith attorneys spent a total of 158.80 hours and $29,378.00 on the preparation of the "Grace defense" project between February 1, 2002 and March 21, 2002.  The Fee Auditor sought a more detailed explanation of what that project entailed in order that the fees be justified.  In response, Reed Smith explained that the project, performed in conjunction with

the document review that was also performed by Reed Smith, was a preliminary attempt to research and organize as much information as possible to help counsel in the preparation of a defense of any claims involving attic insulation (a product that had not previously been the subject of substantial litigation), which may arise in any part of the Debtors' bankruptcy cases. The work included collecting, comparing, and summarizing historical information relating to the production and sale of ZAI and other of the Debtors' vermiculite products over the past fifty years, as well as the preparation of attorney work-product materials intended to help facilitate several tasks required for, *inter alia*, the proposed ZAI science trial. Despite this explanation, the Fee Auditor expressed his continued question over the fees generated in this entry, and recommended a reduction of ¼ of these fees. See Final Report ¶ 9.

7. By way of further explanation, the "Grace defense" project is important and necessary to the effective representation of the Debtors in any upcoming discovery, trial preparation and/or trials relating to the Debtors' alleged asbestos-related liabilities. This project has been necessary to enable Reed Smith to become intimately familiar with the history of the Debtors' vermiculite products lines, especially ZAI, and is necessary to enable Reed Smith to effectively combat issues which may arise bankruptcy-related proceedings concerning any and all aspects of their products, including (1) the safety of the products themselves, (2) the state of Grace's knowledge of the safety of the products, and (3) the safety of the processes by which the products were manufactured. It was the determination of Reed Smith, in conjunction with Debtors' in-house counsel and Debtors' bankruptcy counsel, that the most efficient way to grasp this long and heretofore unorganized history was for Reed Smith to compile extensive work-product materials that detail (with direct reference to Grace documents, witness interviews, and various other materials) the Debtor's vermiculite products business.

8.	The Debtors comprise a large industrial organization that had a long history in the business of manufacturing vermiculite products; this organization also has a vast catalog of documents that potentially detail its vermiculite products business history. The "Grace defense" project has taken a large amount of time and fees because, unlike for other products that have been the subject of litigation for almost twenty years, nothing of its nature has ever been done before by or on behalf of the Debtors, because it covers such a long period of time and source materials, and because of its comprehensiveness. Without this work, Reed Smith would be unable to provide full and adequate defense of the Debtors' alleged asbestos-related injury claims. The project is expected not only to provide a guide for any actual asbestos-related issue trials themselves, but perhaps more importantly will provide invaluable aid for the various discovery and trial preparation tasks Reed Smith attorneys will need to accomplish before these trials begin. The efficiencies that will result from this project, as well as the sizable universe of materials that need to be analyzed, summarized and marshaled to produce final attorney work-products, should be taken into consideration in reviewing the instant Application.

9.	**Third Entries.**  In the Fee Auditor's initial report, the Fee Auditor noted that on three separate occasions between January 1, 2002 and March 31, 2002, more than one professional from Reed Smith participated in the same conference calls. The Fee Auditor sought a fuller explanation of the necessity of having multiple professionals on those calls; Reed Smith responded by explaining its division of labor in this bankruptcy proceeding (as described more fully in ¶¶ 4-5 *supra*), and by noting the efficiency of having multiple attorneys on these calls in light of that division. The Fee Auditor nevertheless maintained that having multiple attorneys on those calls was convenient but unnecessary, and recommended a reduction of ½ of the fees incurred in these calls in its Final Report. See Final Report ¶ 10.

10. As with the issue regarding the participation of multiple Reed Smith attorneys at the February 27, 2002 meeting, see ¶¶ 4-5 *supra*, Reed Smith believes it was necessary to have multiple attorneys on the conference calls referenced in the Fee Auditor's Final Report. Reed Smith has been keenly aware of the need to avoid duplication of work tasks, and has worked hard to communicate among attorneys without meetings or calls involving multiple attorneys; however, the aforementioned calls and meetings addressd multiple areas of the bankruptcy case. The conference calls in question involved discussions of issues that related to the areas of responsibility of more than one of the Reed Smith attorneys. It was necessary for more than one attorney to participate in at least a portion of the conference calls so that the issues arising out of each attorney's area of responsibility was fully addressed, thereby eliminating the alternative need for repetitive meetings with individual Reed Smith attorneys or seriatim internal meetings among the Reed Smith attorneys to review what was discussed on each call and confirm that the tasks were being being performed. Notably, each of the conference calls highlighted by the Fee Auditor in its initial and Final Reports was participated in by client representatives, indicating the Debtors' recognition that the participation of multiple Reed Smith attorneys was necessary.

11. Nonetheless, in recognition of the Fee Auditor's concerns that the time entries do not adequately detail and Reed Smith's commitment to avoiding unnecessary duplication of effort, Reed Smith will not contest the Fee Auditor's recommendation that its fees be reduced by $3,614.50. To the extent multiple attorneys may be necessary for part of a call in the future, the time report entries will detail such limited participation of more than one attorney.

-7-

## CONCLUSION

For the foregoing reasons, Reed Smith respectfully requests that this Court approve its fees in the amount of $360,087.00 ($363,701.50 minus $3,614.50) and costs totaling $134,139.09 for Reed Smith's services to the Debtors from January 1, 2002 through March 31, 2002.

| | |
|---|---|
| Wilmington, Delaware<br>Dated:  August 14, 2002 | Respectfully submitted,<br><br>REED SMITH LLP<br><br>    /s/ *Richard A. Keuler, Jr.*<br>Richard A. Keuler, Jr., Esq. (No. 4108)<br>1201 Market Street, Suite 1500<br>Wilmington, DE  19801<br>Telephone:  (302) 778-7500<br>Facsimile:  (302) 778-7575<br>rkeuler@reedsmith.com<br><br>and<br><br>James J. Restivo, Jr., Esquire<br>Lawrence E. Flatley, Esquire<br>Douglas E. Cameron, Esquire<br>435 Sixth Avenue<br>Pittsburgh, PA  15219<br>Telephone:  (412) 288-3131<br>Facsimile:  (412) 288-3063<br><br>Special Asbestos Products Liability<br>Defense Counsel |