## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## FOURTH INTERIM QUARTERLY FEE APPLICATION OF
## KIRKLAND & ELLIS

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its

capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Fourth Interim

Quarterly Fee Application of Duane Morris LLP (the "Application").

## BACKGROUND

1.      Kirkland & Ellis was retained as counsel to the Debtors. In the Application, Kirkland

& Ellis seeks approval of fees totaling $1,281,702.50 and costs totaling $102,514.38 for its services

from January 1, 2002, through March 31, 2002.

2.      In conducting this audit and reaching the conclusions and recommendations contained

herein, we reviewed in detail the Application in its entirety, including each of the time entries

included in the exhibits to the Application.  We reviewed the Application for compliance with 11

U.S.C. § 330, the Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for

the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee

Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed

Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with

precedent established in the United States Bankruptcy Court for the District of Delaware, the United

States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served

on Kirkland & Ellis an initial report based on our review, and received a response from Kirkland &

Ellis, portions of which response are quoted herein, and portions of which response are quoted in the

attached <u>Response Exhibit A</u> and <u>Response Exhibit B</u>.

## DISCUSSION

<u>General Issues</u>

3.      The time entries were generally adequately detailed and devoid of lumping, although

we noted several instances of lumping by timekeepers JWK and SAS and instances of inadequate

detail from SAS, ARR, SAM, JWK, and JB.  Paragraph II.D.5. of the Guidelines provides that

"[s]ervices should be noted in detail and not combined or 'lumped' together, with each service

showing a separate time entry."  Thus in our initial report we asked Kirkland & Ellis to please advise

these timekeepers to be more consistent in avoiding lumping and providing detailed descriptions of

their activities in the future, and Kirkland & Ellis responded that it would do so.

4.      In our initial report we noted that a number of professionals who billed at relatively

high hourly rates, up to $180.00 per hour, charged their full hourly rates for performing a large

number of ministerial tasks such as filing and copying.  Attached hereto as Exhibit A and Exhibit

B are lists of these time entries, which total $4,883.50 and $13,356.50 in fees, respectively, for a total

of $18,240.00 performed on these types of tasks.  Paragraph II.E.7. of the Guidelines indicates that

nonreimbursable overhead "includes word processing, proofreading, secretarial and other clerical

services."  Other authorities indicate that clerical tasks, if billed at all, should be billed at a lower

rate.  *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 855 n.34 (3rd Cir. 1994)( "[w]hen an

experienced attorney does clerk's work, he or she should be paid clerk's wages.)" Thus in our initial report we asked Kirkland & Ellis to please explain why it was appropriate to have these professionals bill the estate for what may be characterized as secretarial or clerical services. Kirkland & Ellis' response is set forth in Response Exhibit A. While we believe that we understand this response, we believe that the tasks identified on Exhibit A and B are ministerial in nature for which a professional should not charge the full hourly rate, and thus we recommend a reduction of ½ the amounts charged, for a reduction of $9,120.00 in fees.

5.      In our initial report we noted four instances in which multiple professionals attended a hearing or meeting, which instances we address in this and the following three paragraphs. Paragraph II.D.5. of the Guidelines provides that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." Thus in our initial report was asked Kirkland & Ellis to please explain why it was necessary for more than one professional to attend each hearing or meeting discussed below. Kirkland & Ellis' response is set forth in Response Exhibit B. These instances of multiple professionals include 1/03/02, when both David M. Bernick, P.C., at an hourly rate of $665.00, and James W. Kapp, at an hourly rate of $470.00, appear to have prepared for and attended the same hearing before Judge Fitzgerald, incurring 19.80 hours of attorney time totaling $11,061.00 in fees, as well as travel expenses totaling $2,226.92. The time and expenses for this hearing are set forth in Exhibit C. Upon review of Kirkland & Ellis' explanation in Response Exhibit B, we do not recommend any reduction for this instance.

6.      Again on 2/25/02, three attorneys billing at $665 (DMB), $580 (JB), and $470 (JWK) attended another hearing in Wilmington. Exhibit D contains the time entries relating to their

preparation for, traveling to, and attendance at the hearing, which time entries total $34,273.00 in fees, as well as the related expense entries, which total $3,242.75. We believe that Kirkland & Ellis' explanation in <u>Response Exhibit B</u> establishes why it may have been convenient to use three professionals at this hearing, but not that it was reasonable or necessary, and thus we recommend a reduction of 1/3 the fees and expenses incurred for this hearing, for a reduction of $11,424.33 in fees and $1,080.92 in expenses.

7.    On 3/15/02, timekeepers Browdy and McMillin both attended a joint defense meeting. The total time spent was 5.50 hours for a total of $2,230.00.

| 3/15/02 | Michelle H Browdy | 3.50 | Joint defense meeting with Fresenius and Sealed Air counsel and preparation. |
| 3/15/02 | Scott A McMillin | 3.50 | Prepare for and participate in joint defense meeting with Fresenius and Sealed Air counsel (2.0);...... |

Upon review of Kirkland & Ellis' explanation in <u>Response Exhibit B,</u> we do not recommend any reduction for this instance.

8.    On March 18, 2002, timekeepers Bernick, Kapp, Pope, Knox and Baer attended a hearing before Judge Fitzgerald. The total time billed including non-working travel was 50.10 hours for a total of $18,334.50[1], and expenses totaled $5,043.12. See Exhibit E for these time and expense entries. We believe that Kirkland & Ellis' explanation in Response Exhibit B establishes why it may have been convenient to use four professionals at this hearing, but not that it was reasonable or necessary, and thus we recommend a reduction of 1/2 the fees and expenses incurred for this hearing, for a reduction of $9,167.25 in fees and $2,521.56 in expenses.

9.    While we do not believe that all instances of the use of multiple professionals are

---

[1] Time for this item was located in 2 project catagories  - Matter 30 - Hearings - Fees and Matter 42 - Travel - Fees.

inappropriate, we believe that the use of multiple professionals should be scrutinized closely. *See Busy Beaver* at 856 (the court should review a fee application to ensure the applicant exercises the same "billing judgment" as do non-bankruptcy attorneys by writing off unproductive research time, duplicative services, and redundant costs precipitated by overstaffing). Thus, we recommend reductions for the use of multiple professionals, as set forth above, only when we believe that it has not been established that the use of multiple professionals was reasonable and necessary.

10.     The Guidelines provide that outgoing faxes may be charged at a rate of up to $1.00 per page. It appears that Kirkland & Ellis generally charged $0.75 per page, but the Application states that fax charges total $1,736.13, which is not a multiple of $0.75. Thus in our initial report we asked Kirkland & Ellis to please explain this matter. Kirkland & Ellis responded:

> The fax charges include two faxes sent by Ms. Baer for $17.20 and $19.43, respectively, from off-site, and thus were not subject to K&E's $0.75 per page standard rate. The remaining charge of $1,699.50 was for the fax transmission of approximately 2,266 pages at the standard rate.

Thus we have no objection to these charges.

11.     The Guidelines provide that in-house copies may be charged at a rate of up to $0.15 per page. The Application does not state Kirkland & Ellis's in-house rate, and we note that the expense detail includes a number of entries that are not evenly divisible by $0.15. Thus in our initial report we asked Kirkland & Ellis to please indicate the rate charged for in-house copies. Kirkland & Ellis responded:

> K&E's standard inhouse copy rate is $0.10 per page in Chicago and $0.15 per page in New York (a number of the litigation attorneys assigned to these chapter 11 cases are located in New York). The total inhouse copy charges for the quarter were approximately $5,426.70.

Thus we have no objection to these charges.

12.     The Application requests reimbursement for a total of $1,573.50 attributable to color

copies.  Paragraph II.E.3.of the Guidelines provides that "[u]nusual items require more detailed

explanations and should be allocated, where practicable, to specific projects."  Thus we asked

Kirkland & Ellis to provide the per-page charge for color copies and explain why color copies were

necessary.  Kirkland & Ellis responded:

> K&E's rates, which are based upon rates that outside vendors charge K&E, vary by page, ranging
> from $1.50 per page for 8.5 x 11 copies to $2.25 per page for 11 x 17 copies.  Color transparencies
> cost $3.00 per transparency.  K&E uses color copies sparingly, and only when necessary.  In this
> particular instance, our litigation team used color copies for litigation props during the various
> hearings that occurred during the quarter, which, as discussed above, helped to simplify several thorny
> and complex litigation issues.  A further review of the firm's records has revealed that, in February
> 2002, $858.00 was incorrectly charged to the Grace matter.  This amount should be stricken from the
> February Fee Application.

Thus we recommend a reduction of $858.00 in expenses for this matter.

13.    The Application seeks reimbursement for a number of expense items that might be

considered nonreimbursable overhead.  Paragraph II.E.7. of the Guidelines provides that "[o]verhead

includes word processing, proofreading, secretarial and other clerical services, rent, utilities, office

equipment and furnishings, insurance, taxes, local telephone and monthly car phone charges,

lighting, heating and cooling, and library and publications charges."  The Application includes the

following charges: $103.25 for "Binding", $120.40 for "Tabs/Indexes/Dividers", $30.00 for "Library

Document Procurement", $228.00 for "Overtime Meals", $273.25 for "Overtime Meals - Attorney",

and $5,090.32 for "Secretarial Overtime".  Thus in the initial report we asked Kirkland & Ellis to

please explain why these expense items should not be considered nonreimbursable overhead

expenses.  Kirkland & Ellis responded:

> It would be improper to classify as "nonreimbursable overhead" any of the items that the Initial
> Report cites in paragraph 13.  In particular, overtime for secretaries is routinely billed as a separate
> line item when the time is spent on a particular client in response to a particular client requirement.
> These types of services are distinct from, and in addition to, nonreimbursable secretarial support for
> attorneys that should not be, and is not, reflected as a separate line item.  Similarly, each of the other
> items, such as overtime meals for attorneys and support staff and library document procurement for

documents from libraries other than the K&E legal library, are specific line items of cost incurred responding to particular client requirements in these complex chapter 11 cases, and should be separately charged to the client. The remaining line items, such as binding, and tabs/indexes/dividers, are copy-related charges for items required above and beyond the copy charges themselves and also should be separately charged to the client.

Thus we have no objection to these charges.

14.    We note that on several occasions the total of the time-entry parentheticals was less than the time indicated in the "Hours" column of the invoices.  These time entries are set forth below:

| | | | |
|---|---|---|---|
| 3/13/02 | Timothy S Hardy | 1.60 | Telephone conference with H. Weill re ILO and PFTS (1.0); telephone conference with H. Weill re follow-on information on predicted values (.2); draft memo re same (.3). |
| 3/01/02 | Mark E Grummer | 5.10 | Review legal memorandum re executory contracts and related environmental research and evaluate applicability of same to environmental PRP agreements (2.7); review lists of Grace environmental sites re same (.6); attend to matters re environmental claim fraudulent conveyance issues (.1); exchange correspondence with R. Emmett re particular site (.5). |
| 3/22/02 | Steven M Wellner | 1.50 | Attend to matters re emergency challenge to EPA asbestos cleanup under CERCLA (.3); review case law pertaining to emergency cleanups (.6). |

Thus in our initial report we asked Kirkland & Ellis to please explain these discrepancies.  Kirkland & Ellis responded:

Time Entry Parentheticals (¶ 14).
(a)    Timothy Hardy.  There is a typographical error in Mr. Hardy's March 13 time entry.  The telephone conference with H. Weill re follow-on information should be listed as 0.6 hours instead of 0.2 hours.
(b)    Mark Grummer.  The following time entry description for 1.2 hours of work was inadvertently missing from the fee application and should be added thereto for a total time billed by Mr. Grummer of 5.1 hours:
        Perform additional research re legal memorandum re executory contracts and review related

existing environmental research re same and evaluate applicability of same to environmental PRP agreements and prepare email memorandum re same (1.2).

(c)    Steven Wellner.  There is a typographical error in Mr. Wellner's March 22 time entry.  The review of case law pertaining to emergency cleanups should have been listed as 1.2 hours instead of 0.6 hours.

Thus we have no objection to these entries.

15.    Between March 7, 2002, and March 22, 2002, five professionals spent a total of 50.60 hours for a total of $23,904.00 addressing proof-of-claim form issues.  See Exhibit F.  Consistent with 11 U.S.C. § 330, Paragraph I.E. of the Guidelines advises us to consider "whether services were performed within a reasonable time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed."  Thus in our initial report we asked Kirkland & Ellis to please explain why this issue required so much in fees.  Kirkland & Ellis stated:

As discussed above, Ms. Baer was primarily responsible for preparing the POC forms for each of the following categories of claims: asbestos personal injury, asbestos property damage, ZAI, asbestos-related medical monitoring and non-asbestos claims.  The content of each of these forms contained a great deal of substantive information, thus generating a great many issues that were hotly contested by the PI Committee and PD Committee.  Ms. Baer spent a great deal of time preparing the forms, negotiating substantive POC issues with the PI Committee and PD Committee professionals, revising the forms based upon those negotiations, preparing detailed comparisons showing differences between the forms along with explanations of each of those differences and further revising the forms based upon the outcome of the March 13, 2002, hearing.  Ms. Baer also spent a great deal of time discussing POC issues with various experts in order to obtain their input.

Several other K&E attorneys, including Andrew Running and Mr. Kapp, assisted Ms. Baer on a number of issues because of size and complexity of these myriad issues.  K&E specifically adopted a team approach to resolve the objections to the forms raised by the Asbestos Committees because of the number and substantive complexity of those objections.  Ms. Pope also assisted Ms. Baer in certain tasks relating to resolving these objections that could be most efficiently accomplished by a legal assistant.  Mr. Bernick, as the senior partner assigned to these chapter 11 cases, consulted with Ms. Baer on the preparation of materials, including briefs, used to respond to the Asbestos Committees' objections.

While we understand this explanation, an examination of the time entries in Exhibit F and this explanation still leaves us questioning why so many professionals were necessary on this project.  We note the abundance of time entries such as "attend to issues re objections to proof of claim form", "attend to matters re preparation of Grace's responses to the objections", and "attend to issues

re revisions to proof of claim". Because of the use of so many professionals, and the inadequately detailed time entries, we recommend a reduction of 1/5 of the amount sought for this project, for a reduction in fees of $4,780.80.

16.    Between March 8, 2002, and March 29, 2002, five professionals spent a total of 77.30[2] hours for a total of $10,972.50 on issues regarding an employee database. See Exhibit G for these time entries. Thus in our initial report we asked Kirkland & Ellis to please explain why so much time was spent on this matter. Kirkland & Ellis responded:

> This is one of the three databases discussed above. Christopher Sullivan, a litigation associate, in conjunction with Mr. Running, a litigation partner, designed this large and complex database of information, including asbestos exposure data, regarding approximately 1,912 former employees at Grace's Libby, Montana plant, to support analysis of various asbestos-related personal injury claims. Aaron Heeringa is a database specialist who worked with Ms. Pope and Mr. Sullivan to write a program in Access (a relational database language) to create the database format. The data for each employee is located in some 15 to 20 fields per employee, including work history. The data entry, the bulk of which Mr. Kutnick performed, involved reviewing hard copies of employee records of each of the 1,912 employees for specific information and then entering it into the database. This was a time-intensive task that lasted several weeks and was absolutely critical to the analysis of personal injury claims.

We note that most of the data entry for this project was performed by a paralegal billing at $90.00 and hour, which may not be appropriate for a larger database project where data-entry specialists may be employed, but is probably appropriate here, and thus we have no objection to these charges.

17.    Between March 4, 2002, and March 26, 2002, timekeepers Browdy and McMillin spent a total of 42.90 hours for a total of $17,330.00 on Fresenius and Sealed Air write-ups. See Exhibit H. Thus in our initial report we asked Kirkland & Ellis to please explain why so much time was spent drafting these write-ups. Kirkland & Ellis responded:

> As debtors-in-possession, the Debtors had a duty to investigate possible fraudulent transfer claims regarding the Sealed Air and Fresenius transactions to determine whether the claims were worth

---

[2] Time for this item was located in Matter 21-Claim Estimate, Objection and Resolution - Fees and Matter 22-Contested Matter/Adversary Proceedings - Fees.

pursuing. Based upon this review, the Debtors concluded that these transactions were not fraudulent transfers and that there are no fraudulent transfer claims worth pursuing. As part of this review, Ms. Browdy and Mr. McMillin drafted detailed outlines of the intensive factual investigation into these two transactions. K&E subsequently used these outlines in the fraudulent transfer adversary proceeding commenced by the Asbestos Committees, and in which the Debtors have intervened, as discussed below.

We accept this explanation and have no objection to these charges.

18.     Between March 20, 2002, and March 30, 2002, five professionals spent a total of 39.80 hours for a total of $16,065.50 working on legal research regarding intervention and fraudulent transfer matters and motion to intervene.

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 3/20/02 | Scott A. McMillin | 2.70 | Legal research re intervention and government fraudulent transfer claims. |
| 3/21/02 | Michelle H Browdy | 1.70 | Work on intervention and other legal issues for fraudulent conveyance case. |
| 3/22/02 | David M Bernick, P.C. | 0.50 | Attend to matters re status of fraudulent conveyance work. |
| 3/25/02 | Michelle H Browdy | 5.40 | Work on intervention issues and analyze legal/factual issues relating hereto. |
| 3/25/02 | Scott A. McMillin | 12.50 | Research and draft motion to intervene (6.5); attend to matters re same (1.5).... |
| 3/25/02 | Andrew R Running | 6.20 | ...legal research re ZAI venue and transfer issues and attend to issues re same (4.5).... |
| 3/26/02 | Kellye L Fabian | 1.00 | Research case law re attempting to remove a case from state court directly to bankruptcy court. |
| 3/29/02 | Scott A. McMillin | 7.30 | Research and draft motion to intervene (4.5); research re collateral estoppel (2.0); attend to matters re motion to intervene in fraudulent transfer claims litigation (.8). |
| 3/30/02 | Michelle Browdy | 4.50 | Revise and edit motion to intervene and accompanying brief, and draft pleadings in intervention re fraudulent transfer litigation (3.0); review/edit legal memorandum on collateral estoppel effects of intervening in fraudulent transfer litigation (1.5). |
| 3/30/02 | Scott A McMillin | 4.20 | Research ad draft memorandum re collateral estoppel implications of intervention. |

Thus in our initial report we asked Kirkland & Ellis to please explain why so much time was spent

addressing these issues.  Kirkland & Ellis responded:

> The fraudulent transfer adversary proceeding is a major piece of litigation that, in the final analysis, stands at the very heart of these chapter 11 cases along with the science trial.  The adversary proceeding commenced when the Court gave the Asbestos Committees leave to pursue the Sealed Air and Fresenius transaction fraudulent transfer claims after the Debtors determined, as discussed above, that they were not worth pursuing.
>
> The Court also gave the Debtors leave to intervene in this adversary proceeding as a defendant because they oppose the Asbestos Committees' attempt, in their pursuit of these fraudulent transfer claims, to inflate the value of the Debtors' purported asbestos liabilities.  As a defendant in this proceeding, the Debtors must aggressively defend not only their position on this issue but also their position that Grace was solvent at the time of the two transactions at issue.  The detailed factual outlines that Ms. Browdy and Mr. McMillin prepared as part of the factual investigation into the nature of the transactions were subsequently revised and enlarged as a major component of K&E's preparation of the Debtors' defense on the solvency and asbestos claims issues.  These outlines are significant pieces of work product detailing both the facts of the transactions and the Debtors' legal strategy.  K&E anticipates that it will continue to spend substantial amounts of time preparing for the fraudulent conveyance trial, which, as discussed above, is scheduled for September 2002.

We accept this explanation, understand the importance of this issue, and have no objection to these charges.

19.    Between 3/22/02 and 3/29/02, four professionals spent a total of 63.20 hours for a total of $26,154.00 working on research regarding a challenge to EPA action. See Exhibit I.  Thus in our initial report we asked Kirkland & Ellis to please explain why this research required so much time.  Kirkland & Ellis responded:

> The K&E litigation team undertook this project in response to potential EPA plans to declare that the presence of ZAI in homes in Libby, Montana, is a "public health emergency" and to then, as a consequence of that declaration, to remove ZAI from those homes.  The EPA had spent considerable time debating this matter internally as well as discussing it with the Debtors.  The Debtors viewed this matter as vitally important for several reasons.  First, and foremost, the Debtors do not believe that the presence of ZAI presents a public health risk at all.  Indeed, the Debtors believe that any EPA action in this regard would be untimely and counterproductive because the science trial will, as discussed above, resolve the issue of whether there is any scientific risk that could lead to liability for the Debtors.  Furthermore, other ZAI claimants could potentially use such a declaration, if made by the EPA, against Grace on a nationwide basis as evidence of Grace's liability for billions of dollars of ZAI claims.  Such a development could undermine the Debtors' efforts to resolve the extent and nature of the Debtors' liability for asbestos-related claims in a single forum.  During the March 2002 timeframe, the K&E team researched possible legal procedures and grounds to challenge such a declaration in court.  Mr. Grummer, Mr. Wellner and David Codevilla each spent considerable time on this immense and very important task.  The K&E team also billed time in April 2002 on this project.

We accept this explanation and have no objection to these charges.

20.    Between 3/1/02 and 3/22/02, timekeepers Kapp and Lane spent a total of 28.40 hours for a total of $11,236.00 on PricewaterhouseCoopers retention issues. See Exhibit J.  Thus in our initial report we asked Kirkland & Ellis to please explain why this matter required so much attention. Kirkland & Ellis responded:

> PwC is the Debtors' prepetition auditor .  The Debtors intended to retain PwC at the outset of these chapter 11 cases to permit it to continue performing required public audits.  Before a retention application could be filed, however, PwC became aware of a potential conflict of interest that had to be resolved.  During the April 2001 to January 2002 timeframe, PwC continued to perform tasks for the Debtors while it and the Debtors attempted to resolve that potential conflict of interest.
> In January 2002, the Debtors filed an application to retain PwC as an ordinary course professional. The U.S. Trustee objected to retaining PwC in any capacity until the potential conflict of interest was resolved.  PwC and the Debtors, with the assistance of K&E, eventually negotiated a successful resolution of this potential conflict of interest.  In April 2002, the Debtors filed an amended application to retain PwC as a section 327 professional.  The U.S. Trustee subsequently filed an additional objection, the gravamen of which opposed compensating PwC for the services performed in the chapter 11 cases prior to the filing of the amended retention application.  After a hearing on the matter in June 2002, the Court retained PwC as a section 327 professional.
> The time expended in March 2002 related to researching and drafting the amended retention application, resolving the potential conflict of interest and attending to the U.S. Trustee's objection to the January 2002 application.

We accept this explanation and have no objection to these charges.

21.    Between 2/26/02 and 3/13/02, timekeepers Keller, Maynes and Shenoy spent a total of 16.60 hours for a total of $6,273.50 preparing and revising a stipulation of facts. See Exhibit K. Thus in our initial report we asked Kirkland & Ellis to please provide further information regarding the reason it took so much time.  Kirkland & Ellis responded:

> The Debtors and the government developed the joint stipulation of facts in support of summary judgment motions that each party is expected to file this summer in the "CCHP litigation", a case before the Federal Court of Claims involving whether certain per diem expenses are wages subject to employment taxes.  The matter involves tax claims of approximately $22 million for the taxable years at issue (1993 through 1995) and in excess of $80 million for all the open years (which include the taxable years at issue and the years 1996 through 1999, which essentially will be bound by the outcome of the CCHP litigation).  Developing the joint stipulation of facts, which recites the facts and circumstances relevant to, and necessary for resolving, the CCHP litigation required K&E attorneys to analyze 37 boxes of documents and engage in extensive interviews with the client and numerous rounds of negotiations with the Internal Revenue Service.  K&E also billed time for developing the

joint stipulation of facts during the April to June 2002 quarter.

While we understand this explanation, an examination of the time entries in Exhibit K and this explanation still leaves us questioning why so many professionals were necessary on this project. We note the abundance of time entries such as "attend to matters re joint status report and joint stipulation of facts", and "attend to matters re same".  Because of the use of so many professionals, and the inadequately detailed time entries, we recommend a reduction of 1/3 of the amount sought for this project, for a reduction in fees of $2,091.17.

22.     From 2/5/02 to 2/15/02, timekeepers Reed ($225 per hour) and Ritter ($420 per hour) spent 42.8 hours drafting, reviewing, and revising a memorandum regarding an eminent domain matter.  See Exhibit L.  Thus in our initial report we asked Kirkland & Ellis to please explain why this issue required so much attorney time.  Kirkland & Ellis responded:

This matter arose from an attempt by the State of Florida to institute eminent domain proceedings to take possession of certain of the Debtors' property located in Florida.  At issue was whether a Delaware bankruptcy court could stay such an eminent domain proceeding when the property was part of the bankruptcy estate.  To assist the Debtors in resolving this matter, K&E attorneys drafted a memorandum that required considerable in-depth legal research into several topics involving several jurisdictions and the intersection of several discrete areas of law, including bankruptcy, real estate and local law.  The nature of the research and interaction of the various relevant laws on the facts and circumstances required, and warranted, considerable attorney time.

We accept this explanation and have no objection to these charges.

## CONCLUSION

23.     Thus, we recommend approval of fees totaling $1,245,118.95 ($1,281,702.50 minus $36,583.55) and costs totaling $98,053.90 ($102,514.38 minus $4,460.48) for Kirkland & Ellis's services from January 1, 2002, through March 31, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____

          Warren H. Smith
          Texas State Bar No. 18757050
          Mark W. Steirer
          Texas State Bar No. 19139600

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 29th day of July, 2002.

_____
          Warren H. Smith

## SERVICE LIST

Notice Parties

### The Applicant

James H.M. Sprayregen, Esq.
James W. Kapp III, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

### The Debtors

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

### Counsel for the Debtors

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones,
P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

### Counsel for the Official Committee of Unsecured Creditors

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

### Counsel to the Official Committee of Property Damage Claimants

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price &
Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

### Counsel to the Official Committee of Personal Injury Claimants

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Matthew G. Zaleski, III, Esq.
Campbell & Levine
Chase Manhattan Centre, 15th Floor
1201 Market Street, Suite 1200
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

Exhibit A

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 1/02/02 | Shirley A Pope | 1.00 | Prepare and fax documents requested by R. Baker (.5).... |
| 1/02/02 | Shirley A Pope | 1.50 | Review correspondence and file same. |
| 1/03/02 | Shirley A Pope | 5.50 | … review correspondence and file same (1.0).... |
| 1/04/02 | Shirley A Pope | 5.50 | Review correspondence, e-mail and file same (1.0).... |
| 1/07/02 | Shirley A Pope | 6.50 | Review correspondence and file same (1.0).... |
| 1/07/02 | Benjamin J. Alke | 7.00 | . . .prepare copies of Abner and Chakarian docket sheets (.6); . . . |
| 1/08/02 | Benjamin J. Alke | 9.50 | Organize various pleadings (2.2); prepare printout of hearing transcript (.8); . . |
| 1/09/02 | Shirley A Pope | 6.60 | …review correspondence and file same (0.50).... |
| 1/10/02 | Benjamin J. Alke | 6.50 | . . .prepare copies of exhibits to Judge Wolin letter (1.2). |
| 1/10/02 | Shirley A Pope | 7.00 | Review correspondence and file same (1.0).... |
| 1/11/02 | Benjamin J. Alke | 7.00 | . . . organize W.R. Grace 10-Q and 10-K forms into binders (2.2); update index of W.R. Grace production boxes (.6). |
| 1/14/02 | Benjamin J. Alke | 7.50 | Organize pleadings (2.1); prepare extra copies of letter to Judge Wolin with exhibits to be sent via FedEx(1.6); . . . |
| 1/14/02 | Shirley A Pope | 7.50 | Review correspondence and file same (1.0).... |
| 1/15/02 | Shirley A Pope | 6.50 | …review correspondence and file same (1.0).... |
| 1/16/02 | Benjamin J. Alke | 7.00 | . . .copy check binders re Fresenius and Sealed Air Transactions (1.8); . . . |
| 1/16/02 | Shirley A Pope | 6.20 | …review correspondence and file same (1.0).... |
| 1/17/02 | Shirley A Pope | 7.50 | Review correspondence and file same (1.0).... |
| 1/18/02 | Shirley A Pope | 5.50 | …review correspondence and file same (1.0).... |
| 1/22/02 | Sabrina M. Mitchell | 0.80 | . . . update the case file index with new |

| | | | |
|---|---|---|---|
| | | | documents and prepare for inclusion into central files (.3). |
| 1/22/02 | Benjamin J. Alke | 7.00 | . . .prepare copies of pleadings (3.2); copy check copies of Grace financial documents (1.4). |
| 1/24/02 | Benjamin J. Alke | 7.00 | Update Concordance re new pleadings (2.3); prepare copies of certain memorandums at attorney request (.8); . . . |
| 1/24/02 | Shirley A Pope | 6.50 | Review correspondence, e-mail and file same (1.50).... |
| 1/28/02 | Sabrina M. Mitchell | 0.40 | . . .retrieve and duplicate lease rejection motion (.1). |
| 1/28/02 | Benjamin J. Alke | 6.50 | Prepare spiral bound copies of the proxy statements for Sealed Air and Fresenuis for attorney review (1.8); . . . |
| 1/29/02 | Shirley A Pope | 3.00 | Review correspondence and file same (1.0).... |
| 1/30/02 | Sabrina M. Mitchell | 0.10 | Retrieve and duplicate retention of experts motion and order. |
| 1/30/02 | Benjamin J. Alke | 3.80 | Prepare copies of orders re Preliminary Injunction (1.2); update Concordance database re new pleadings (1.8); . . . |
| 1/31/02 | Sabrina M. Mitchell | 0.60 | . . . retrieve and duplicate the key employee retention motion and order (.2). |

<u>Exhibit B</u>

<u>Case Administration-Matter 20</u>

Time entries involving copying:

| <u>Date</u> | <u>Name</u> | <u>Hours</u> | <u>Description</u> |
|---|---|---|---|
| 2/11/02 | Shirley A. Pope | 2.50 | ... review pleadings, copy, and distribute for attorney review and file same (.5). |
| 2/11/02 | Marguerite M Melvin | 3.50 | ... review DBR for asbestos bankruptcy related articles and duplicate and distribute same for attorney review (.5). |
| 2/13/02 | Marguerite M Melvin | 0.50 | Review Daily Bankruptcy Review for asbestos bankruptcy related articles and duplicate and distribute same (.5). |
| 2/14/02 | Sabrina M. Mitchell | 2.90 | Retrieve and duplicate Will & Emery affidavit (.1); review the online dockets for newly entered pleadings and download, copy and distribute the same for attorney review (.2); retrieve and duplicate bar date pleadings (1.0)... |
| 2/19/02 | Sabrina M. Mitchell | 0.40 | Retrieve and duplicate exclusivity motion (.1); ... |
| 2/20/02 | Benjamin J Alke | 8.00 | ... prepare copies of pleadings for attorney review (1.6); ... |
| 2/23/02 | Shirley A. Pope | 9.50 | Copy and distribute file documents re Feb. 25, 2002, hearing for attorney review. |
| 2/23/02 | Shirley A. Pope | 1.80 | Copy and distribute file documents re Feb. 25, 2002, hearing for attorney review. |

Time entries involving filing:

| <u>Date</u> | <u>Name</u> | <u>Hours</u> | <u>Description</u> |
|---|---|---|---|
| 2/01/02 | Shirley A. Pope | 8.00 | ... review correspondence and file same (.5); ... |
| 2/04/02 | Marguerite M Melvin | 4.50 | ... integrate pleadings into files (2.5) |
| 2/06/02 | Benjamin J Alke | 6.00 | ... file pleadings forwarded from the Bankruptcy Department (2.3) ... |
| 2/08/02 | Shirley A. Pope | 5.30 | ... file hearing transcripts in Grace main file (.3); ...file attorney materials in legal research files (1.0); ... review correspondence and file same (.5). |

| 2/11/02 | Shirley A. Pope | 2.50 | ...review correspondence and file same (.5); |
| 2/11/02 | Marguerite M Melvin | 3.50 | File materials pertaining to asbestos bankruptcy cases (1.5); ... |
| 2/12/02 | Shirley A. Pope | 8.30 | Review correspondence and file same (1.0); ... file legal research materials (1.0) |
| 2/12/02 | Benjamin J Alke | 7.50 | ... file materials forwarded from the Bankruptcy Department (1.8) ... |
| 2/13/02 | Shirley A. Pope | 3.50 | Review correspondence and file same (.5); ... review newly filed pleadings and file same (.5). |
| 2/13/02 | Benjamin J Alke | 4.00 | ... file pleadings forwarded from the Bankruptcy Department (2.3) ... |
| 2/15/02 | Marguerite M Melvin | 4.60 | ... prepare subfolders for same [pleadings] and file same (.5); ... |
| 2/20/02 | Marguerite M Melvin | 1.90 | ...and file same [pleadings] (.5). |
| 2/21/02 | Shirley A. Pope | 0.50 | Review correspondence and file same (.5). |
| 2/27/02 | Seth B Kutnick | 5.00 | ($90) File newly filed pleadings in Grace files (1.0); |

Contested Matters/Adversary Proceedings - Matter 22

Time entries involving copying:

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 2/05/02 | Shirley A. Pope | 3.0 | Select, index, and copy fraudulent conveyance documents in response to committee document productions request.. Lumped. |
| 2/25/02 | Shirley A. Pope | 9.0 | ... copy Fresnius and Sealed Air transactions key documents and file them in binders to be forwarded at attorney request (2.0) |

Case Administration - Fees - Matter 20

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 2/22/02 | Benjamin J. Alke | 5.50 | . . prepare copy of powerpoint presentation (1.0). |
| 3/01/02 | Sabrina M. Mitchell | 0.50 | Update the case file index with new documents and prepare for inclusion into central files (.2); . . . |
| 3/05/02 | Shirley A. Pope | 6.80 | Review correspondence and file same (1.0); update subject files in Grace main file (.5). |

| 3/05/02 | Seth B. Kutnick | 2.00 | Prepare pleadings re Grace main file. |
| 3/06/02 | Shirley A. Pope | 7.00 | Review correspondence and file same (1.5); |
| 3/08/02 | Shirley A. Pope | 6.50 | Review correspondence and file same (.5); . . . |
| 3/08/02 | Sabrina M. Mitchell | 0.40 | . . . retrieve and duplicate informational brief (.1). |
| 3/09/02 | Shirley A. Pope | 4.00 | . . .  review pleadings (1.0). |
| 3/11/02 | Shirley A. Pope | 7.20 | . . . review docket for newly filed pleadings, download, copy and file same (1.0); . . . |
| 3/12/02 | Shirley A. Pope | 6.00 | . . . review docket for newly filed pleadings, download and file same (1.5); file reference materials (1.0); update file indices (.5). |
| 3/12/02 | Seth B. Kutnick | 2.00 | Update bankruptcy file indices. |
| 3/13/02 | Shirley A. Pope | 8.50 | Review docket for newly filed pleading, download, copy and file (3.0); review correspondence and file same (1.5); . . . |
| 3/14/02 | Shirley A. Pope | 7.50 | Review docket for newly filed pleadings, download and file (2.0); review correspondence and file same (1.0); . . . |
| 3/15/02 | Shirley A. Pope | 5.00 | Review docket for newly filed pleadings, download and file (3.); . . . |
| 3/19/02 | Shirley A. Pope | 7.00 | Review correspondence and file same (1.5); revise index re documents selected by committees (.3); update indices re newly filed legal research materials (1.0); review docket for newly filed pleadings, download and file same (1.0). |
| 3/20/02 | Shirley A. Pope | 4.50 | Review docket for newly filed pleadings, copy and file same (2.0); . . . |
| 3/21/02 | Shirley A. Pope | 3.00 | Review correspondence and file same (1.0); . . |
| 3/22/02 | Shirley A. Pope | 7.00 | Review docket for newly filed pleadings, download and file same (2.0); review correspondence and file same (1.0); file legal research materials (1.0). |
| 3/25/02 | Shirley A. Pope | 6.50 | Review docket for newly filed pleadings, download and file same (2.0); review correspondence and file same (1.0); . . |
| 3/25/02 | Sabrina M. Mitchell | 1.60 | Update the case file index with new |

| | | | |
|---|---|---|---|
| | | | documents and prepare for inclusion into central files. |
| 3/26/02 | Shirley A. Pope | 2.50 | Review docket for newly filed pleadings, download and file same (1.5); revise and update case file indices with newly received materials (1.0). |
| 3/26/02 | Sabrina M. Mitchell | 2.60 | . . .update the case file index with new documents and prepare for inclusion into central files (.6); supplement orders index and include new orders into central file binders (1.4). |
| 3/27/02 | Shirley A. Pope | 3.00 | Review docket for newly filed pleadings, download and file (1.0); review correspondence and file same (1.0); . . . |
| 3/28/02 | Shirley A. Pope | 4.50 | Review docket for newly filed pleadings, download and file same (.9); update media files with DBR articles (.5); organize graphics forwarded by attorneys and file same (.6); review correspondence and file same (.5). |
| 3/29/02 | Shirley A. Pope | 2.50 | Review docket for newly filed pleadings, download and file (.5); . . . |

Exhibit C

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 1/03/02 | David M. Bernick, P.C. | 9.00 | Prepare for and attend hearing before Judge Fitzgerald. |
| 1/03/02 | James W. Kapp | 10.80 | Prepare for and participate in January 3, 2002 hearing before Judge Fitzgerald (9.0); attend to issues re same (1.8).... |

| Date | Amount | Description |
|------|--------|-------------|
| 1/03/02 | 58.40 | Crown Coach – Transportation to/from airport, James W. Kapp |
| 1/03/02 | 31.64 | JAMES W KAPP – Meals, Pittsburgh, PA, 01.02 – 01.03.2002, |
| 1/04/02 | 145.86 | JAMES W KAPP – Travel Expense, Pittsburgh, PA, 01.02 – 01.03.2002, (Attend hearing) |
| 1/04/02 | 959.06 | JAMES W KAPP – Airfare, Pittsburgh, PA, 01.02 – 01.03.2002, (Attend hearing) |
| 1/04/02 01.02 | 292.76 | DAVID M BERNICK, P.C. -- Travel Expense, Pittsburgh, PA, – 01.03.2002, (Attend hearing) |
| 1/04/02 | 717.10 | DAVID M BERNICK, P.C. -- Airfare, Pittsburgh, PA, 01.02 – 01.03.2002, (Attend hearing) |
| 1/22/02 01.02 | 22.10 | DAVID M BERNICK, P.C. -- Travel Expense, Pittsburgh, PA, – 01.03.2002, (Attend hearing) Supplement Report |

Exhibit D

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 2/20/02 | Janet Baer | 0.50 | Review various materials re 2/25 CMO hearing. |
| 2/20/02 | Janet Baer | 0.20 | Review agenda for February 25, 2002, hearing. |
| 2/21/02 | Janet Baer | 1.50 | Review materials and assemble for CMO hearing. |
| 2/22/02 | David M. Bernick, P.C. | 3.50 | Prepare for February 25, 2002, hearing before Judge Fitzgerald. |
| 2/23/02 | David M. Bernick, P.C. | 6.00 | Prepare for February 25, 2002, hearing before Judge Fitzgerald. |
| 2/24/02 | David M. Bernick, P.C. | 7.80 | Prepare for February 25, 2002, hearing before Judge Fitzgerald (7.5); telephone conference with D. Siegel re hearing (.3). |
| 2/24/02 | David M. Bernick, P.C. | 2.00 | Travel to Delaware to attend hearing. (billed at one half-time) |
| 2/24/02 | James W Kapp | 4.90 | Prepare for February 25, 2002, hearing, in particular, review pleadings on agenda and attend to issues re same. |
| 2/24/02 | Janet Baer | 4.50 | Review various materials on notice program in preparation for February 25, 2002, CMO hearing. |
| 2/24/02 | Janet Baer | 1.00 | Travel to Wilmington for CMO Hearing. (billed at one-half time) |
| 2/25/02 | David M. Bernick, P.C. | 6.5 | Prepare for and attend hearing before Judge Fitzgerald (5.0); post hearing meeting with client (1.5). |
| 2/25/02 | David M. Bernick, P.C. | 2.00 | Travel to Chicago. (billed at one-half time) |
| 2/25/02 | James W. Kapp | 10.3 | Prepare for and attend February 25, 2002 hearing and attend to issues re same (5.0); conference with B. McGowan, W. Hearst, D. Siegel, P. Norris, B. Corcoran, L. Davis Jones and D. Carickhoff re February 25, 2002 hearing (1.5); attend to issues re same (3.8) |
| 2/25/02 | Janet Baer | 5.2 | CMO hearing (1.3); attend CMO hearing (2.5); confer with various parties re results of hearing on CMO and related mattes and strategy (1.4). |

| | | | |
|---|---|---|---|
| 2/25/02 | Janet Baer | 2.00 | Travel from Wilmington back to Chicago after hearing on CMO. (billed at one-half time) |

| Date | Amount | Description |
|---|---|---|
| 2/24/02 | 63.20 | Crown Coach – Transportation to/from airport, Janet Baer |
| 2/25/02 | 63.70 | Crown Coach – Transportation to/from airport, Janet Baer |
| 3/01/02 | 262.69 | JAMES W. KAPP - Travel Expense, Wilmington, DE, 02.24 - 02.25.02, (Attend hearing) |
| 3/01/02 | 1,274.58 | JAMES W. KAPP - Airfare, Wilmington, DE, 02.24 - 02.25.02, (Attend hearing) |
| 3/04/02 | 18.85 | DAVID M. BERNICK, P.C. - Meal Expense, Delaware, MD, 2.24 to 2.25.02, (Hearing) |
| 3/04/02 | 369.92 | DAVID M. BERNICK, P.C. - Travel Expense, Delaware, MD, 2.24 to 2.25.02, (Hearing) |
| 3/04/02 | 1,189.81 | DAVID M. BERNICK, P.C. - Airfare Expense, Delaware, MD, 2.24 to 2.25.02, (Hearing) |

Exhibit E

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 3/17/02 | Janet Baer | 3.00 | Travel from Chicago to Wilmington for CMO hearing (½ time). |
| 3/18/02 | David M Bernick, P.C. | 2.00 | Travel to attend Judge Fitzgerald hearing (½ time). |
| 3/18/02 | David M Bernick, P.C. | 9.00 | Prepare for and attend Judge Fitzgerald hearing. |
| 3/18/02 | James W Kapp | 12.60 | ... attend same and attend to issues re same and conferences with D. Carickhoff re same (3.6). |
| 3/18/02 | Shirley A Pope | 5.00 | Travel from Chicago to Wilmington, DE (2.50)(billed ½ time); travel from Wilmington, DE to Chicago (2.5)(½ time). |
| 3/18/02 | Shirley A Pope | 8.00 | Assist in preparation for and attend March 18, 2002, hearing. |
| 3/18/02 | Emily J Knox | 4.50 | Travel to Delaware for CMO hearing (½ time). |
| 3/18/02 | Emily J Knox | 8.00 | Assist in preparing for March 18 hearing and attend hearing. |
| 3/18/02 | Janet Baer | 9.00 | ......; attend 3/18 hearing and attend to matters re same (4.5). |
| 3/18/02 | Janet Baer | 2.50 | Travel from Wilmington back to Chicago after CMO hearing (½ time). |

| Date | Amount | Description |
|------|--------|-------------|
| 3/19/02 | 15.38 | EMILY J KNOX - Travel Meals, Wilmington, DE, 03.18.2002, (W. R Grace CMO hearing) |
| 3/19/02 | 32.60 | JAMES W KAPP - Meals, Wilmington, DE, 03.17 - 03.18, 2002, (Attend hearing) |
| 3/19/02 | 40.00 | EMILY J KNOX - Cabfare & other trans, Wilmington, DE, 03.18.2002, (W.R. Grace CMO hearing) |
| 3/19/02 | 271.68 | JAMES W KAPP - Travel Expense, Wilmington, DE, 03.17 - 03.18.2002 (Attend hearing) |
| 3/19/02 | 1,070.00 | JAMES W KAPP - Airfare, Wilmington, DE, 03.17 - 03.18.2002, (attend hearing) |
| 3/21/02 | 30.00 | JANET BAER - Meal Expense, Philadelphia, PA, 3.17 to 3.18.02, (Hearing) |
| 3/21/02 | 335.92 | JANET BAER - Travel Expense, Philadelphia, PA, 3.17 to 3.18.02, (Hearings) |
| 3/21/02 | 1,228.79 | JANET BAER - Airfare Expense, Philadelphia, PA, 3.17 to 3.18.02, (Hearings) |
| 3/27/02 | 135.00 | DAVID M BERNICK, P.C. - Travel Expense, Wilmington, DE, |

|         |          | 3.18.02 (Hearing)                                                                |
|---------|----------|----------------------------------------------------------------------------------|
| 3/27/02 | 701.23   | DAVID M BERNICK, P.C. - Airfare Expense, Wilmington, DE, 3.18.02 (Hearing)       |
| 3/28/02 | 112.52   | SHIRLEY A POPE - Travel Expense, Wilmington, DE, 3.18.02 (Hearing)               |
| 3/28/02 | 1,070.00 | SHIRLEY A POPE - Airfare Expense, Wilmington, DE, 3.18.02 (Hearing)              |

Exhibit F

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 3/07/02 | Janet Baer | 3.50 | ....; review documents from previous hearings on CMO and organize for upcoming hearing and comments to claim forms (1.1). |
| 3/08/02 | James W Kapp | 0.20 | Attend to issues re objections to proof of claim form. |
| 3/11/02 | James W Kapp | 0.80 | Review objections to proofs of claim and distribute same. |
| 3/11/02 | Andrew R Running | 5.00 | Review claim form objections filed with Judge Fitzgerald (2.1); attend to matters re preparation of Grace's responses to the objections (.3); begin outlining Grace's responses (1.5);...... |
| 3/11/02 | Janet Baer | 5.50 | Follow-up calls re BMC/PWC meetings on claims management (1.0); review objections re CMO/Proof of Claim forms (1.0);.......; conference with creditors' committee counsel re claim form issues (.5);..... |
| 3/12/02 | Andrew R Running | 2.50 | Attend to matters re drafting of responses to claim form objections (.2); begin drafting responses to claim form objections (2.3). |
| 3/11/02 | Janet Baer | 8.20 | review objections to PD Proof of Claim Form and prepare Reply and revise same (.4);............. |
| 3/12/02 | Andrew R Running | 7.40 | ......; draft response to claims form objections (6.1). |
| 3/11/02 | Janet Baer | 9.90 | Revise and supplement reply on claim forms (3.0); conference with A. Krieger re comments on revised claim form and related materials (.8); .....; revise various forms consistent with discussion with A. Krieger (1.0);......; attend to matters re proof of claim issues (1.0);........ |
| 3/12/02 | Andrew R Running | 6.00 | Draft response to ZAI claim form objections (3.8); review draft response to property damage form objections (.6); telephone conversation with D. Rourke re claims analysis (.5); telephone conversation with R. Finke re revisions to claim form brief (.6); revise same (.5). |
| 3/11/02 | Janet Baer | 8.60 | ....; review draft objections to ZAI POC (.8);..... |
| 3/15/02 | David M. Bernick, P.C. | 2.00 | Revise briefs re proof of claims forms. |
| 3/15/02 | Andrew R Running | 0.10 | Attend to matters re response to claim form objections. |

| | | | |
|---|---|---|---|
| 3/15/02 | Janet Baer | 1.00 | Coordinate comments and revisions on replies on claim forms. |
| 3/16/02 | Shirley A Pope | 9.00 | Create documents for each PD, PI, ZAI claim form with questions, objections responses of each party (4.0); proof and revise PI, PD, ZAI work product (5.0). |
| 3/17/02 | Janet Baer | 3.00 | Review PD POC and related pleadings (1.); review ZAI, POC and related pleadings (1.);...... |
| 3/19/02 | James W Kapp | 0.20 | Attend to issues re revisions to proof of claim. |
| 3/19/02 | Janet Baer | 5.00 | ....; revise PD proof of claim forms consistent with Court's rulings (2.0). |
| 3/20/02 | Janet Baer | 5.60 | Complete revisions to PD Proof of Claim (1.5);..... |
| 3/21/02 | James W Kapp | 0.20 | Attend to issues re revised proof of claim forms. |
| 3/21/02 | Janet Baer | 4.00 | Review an further revise claim forms. (1.); prepare transmittal re revised claims information (.5);......; review revise PD form and further revise same (.5). |
| 3/22/02 | Janet Baer | 5.00 | ....; further review and revise PD form (.5);...... |

Exhibit G

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 3/08/02 | Christopher B Sullivan | 3.30 | Review employee exposure data (2.0); develop design specifications for claims database (1.3). |
| 3/10/02 | Christopher B Sullivan | 1.00 | Develop design specification for employee database. |
| 3/11/02 | Christopher B Sullivan | 1.00 | Attend to matters re development of Libby employee database. |
| 3/11/02 | Aaron P Heeringa | 2.00 | Perform Access technical support for claims database (.7); prepare Access data entry template (.5); attend to matters re Excel data conversion (.5). |
| 3/12/02 | Aaron P Heeringa | 5.10 | Draft Access database template for claims database. |
| 3/14/02 | Christopher B Sullivan | 1.50 | Design and develop employee database and reports. |
| 3/15/02 | Aaron P Heeringa | 3.50 | Draft MS Access reports for claims database. |
| 3/18/02 | Christopher B Sullivan | 0.20 | Attend to matters re data entry into employee database. |
| 3/19/02 | Christopher B Sullivan | 0.50 | Attend to matters re employee exposure database. |
| 3/20/02 | Aaron P Heeringa | 0.80 | Develop Access database entry template. |
| 3/20/02 | Shirley A Pope | 1.50 | Develop data entry template format for Employee Access database and attend to matters related thereto (1.0); review client employee documents (.5). |
| 3/20/02 | Andrew R Running | 0.20 | Attend to matter re employee access database. |
| 3/20/02 | Seth B Kutnick | 3.00 | Develop Access Database data entry template for employee records and attend to matters related thereto (1.0); enter data re employees (2.0). |
| 3/21/02 | Aaron P Heeringa | 0.50 | Attend to matters re design of MS Access database for employee records. |
| 3/21/02 | Shirley A Pope | 0.50 | Organize employee records for access database entry project. |
| 3/21/02 | Seth B Kutnick | 5.00 | Organize documents for database entry (3.0); enter data form employees records in Access database (2.0). |
| 3/22/02 | Aaron P Heeringa | 4.00 | Review Grace employee claims Access database format. |
| 3/22/02 | Shirley A Pope | 1.00 | Review documents re employee records for Access |

|         |                |      | database entry. |
|---------|----------------|------|-----------------|
| 3/22/02 | Seth B Kutnick | 6.50 | Attend to matters re revisions of Access Database (.5); enter date re employees (6.0). |
| 3/25/02 | Shirley A Pope | 1.00 | Edit employee database. |
| 3/25/02 | Seth B Kutnick | 7.00 | Enter data into Grace employees claim database (4.0); edit Grace employee claims database (3.0). |
| 3/26/02 | Shirley A Pope | 1.00 | Telephone conference with J. Hughes re Grace employees database (.1); edit Grace employee database (.9). |
| 3/26/02 | Seth B Kutnick | 6.50 | Enter data into employees Access database. |
| 3/27/02 | Seth B Kutnick | 7.00 | Enter data into employee database claims. |
| 3/28/02 | Shirley A Pope | 0.50 | Edit Grace employee claims database. |
| 3/28/02 | Seth B Kutnick | 7.00 | Enter data into Employee claims database. |
| 3/29/02 | Seth B Kutnick | 6.20 | Enter data into employee claims Database. |

Exhibit H

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 3/04/02 | Michelle H Browdy | 2.80 | Work on analysis of Fresenius transaction. |
| 3/05/02 | Michelle H Browdy | 4.10 | ....; work on write up on Fresenius transaction (3.8). |
| 3/05/02 | Scott A McMillin | 6.30 | Draft Sealed Air write up (3.0);...... |
| 3/06/02 | Michelle H Browdy | 2.30 | Continue work on Fresenius transaction write up. |
| 3/06/02 | Scott A McMillin | 4.10 | ......; draft Sealed Air write up (1.4);...... |
| 3/07/02 | Michelle H Browdy | 4.60 | Continue work on Fresenius write up (3.0);.... |
| 3/07/02 | Scott A McMillin | 4.00 | Draft Sealed Air write up (1.0);.....; review and revise Sealed Air detailed outline (1.5). |
| 3/08/02 | Michelle H Browdy | 3.80 | Draft Fresenius and Sealed Air fraudulent conveyance allegation outlines. |
| 3/08/02 | Scott A McMillin | 4.00 | Revised Sealed Air outline (2.0);......; internal conferences re fraudulent transfer write-ups (.3);.... |
| 3/09/02 | Michelle H Browdy | 2.10 | Editing Sealed Air write-ups in advance of 3/15 joint defense meeting. |
| 3/11/02 | Michelle H Browdy | 3.80 | Draft and edit Sealed Air and Fresenius write-ups in advance of 3/15 joint defense meeting. |
| 3/12/02 | Michelle H Browdy | 2.80 | Finish first draft of Fresenius submission and draft outline. |
| 3/12/02 | Scott A McMillin | 8.20 | Review and revise Sealed Air and Frensenius write ups and detailed outlines (7.0);....... |
| 3/18/02 | Michelle H Browdy | 1.30 | Review/analyze new Fresenius and Sealed Air complaints and followup. |
| 3/26/02 | Scott A McMillin | 1.30 | .....; revise Fresenius and Sealed Air transaction write ups (1.0). |

Exhibit I

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 3/22/02 | Mark E Grummer | 2.70 | ...attend to matters re research to challenge particular EPA action (.3); begin research re same (2.3) |
| 3/22/02 | Steven M Wellner | 1.50 | Attend to matters re emergency challenge to EPA asbestos cleanup under CERCLA (.3); review case law pertaining to emergency cleanups (.6). |
| 3/23/02 | Mark E Grummer | 4.50 | Research re legal bases to enjoin expected Environmental Protection Agency action (2.8); review and draft memorandum re formerly owned facilities (1.7). |
| 3/24/02 | Mark E Grummer | 3.10 | Further review and revise memorandum to Grace re treatment of potential future environmental liabilities (.8); attend to matters re same (.1); research re basis to enjoin expected EPA action (1.8); review research and attend to matters re same (.4). |
| 3/24/02 | Steven M Wellner | 3.20 | Continue legal research re preemption issues. |
| 3/24/02 | David A Codevilla | 6.50 | Research re federal statutes with provisions for agency emergency cleanup orders or action concerning Libby/EPA Zonelite issues (6.1); attend to matters related thereto (.4). |
| 3/25/02 | Mark E Grummer | 7.20 | Research cases re CERCLA liability for cleanup (3.2) consider various issues presented in evaluating challenge to EPA (1.4); prepare for and attend strategy conference re research assignments on issues related to evaluating challenge to EPA, review same and attend to matters related thereto (2.6). |
| 3/25/02 | Steven M Wellner | 6.00 | Conduct legal research re issues of possible preemption, strategy conferences related federal statutory schemes (4.5); prepare for and attend strategy conference re same (.5); review EPA guidance materials relating to asbestos cleanup (1.0). |
| 3/25/02 | David A Codevilla | 3.00 | Research re federal agency statutory emergency powers. |
| 3/26/02 | Mark E Grummer | 1.90 | Review research re potential preemption arguments (1.0); attend to matters re research assignment on CERCLA cases (.1); research basis for challenge |

| | | | |
|---|---|---|---|
| | | | agency action with collateral impact on private party (.7); attend to matters re research project (.1). |
| 3/26/02 | Steven M Wellner | 3.50 | Continue legal research re possible preemption (2.2); attend to matters re same (.3); review OSHA/EPA relationship in context of asbestos cleanup (1.0). |
| 3/26/02 | David A Codevilla | 4.50 | Research on emergency powers and develop summary chart of agency emergency powers under federal statutes. |
| 3/27/02 | Mark E Grummer | 3.50 | Attend to matters re research re challenge Environmental Protection Agency action (.7); legal research re same (2.8). |
| 3/27/02 | Timothy S Hardy | 0.40 | Attend to matters re legal grounds to challenge EPA action. |
| 3/27/02 | David A Codevilla | 4.80 | Continue preparing agency emergency powers chart and supporting research (3.0); outline memorandum re potential challenge to emergency action (1.8). |
| 3/28/02 | Mark E Grummer | 2.70 | Review draft chart re statutory emergency action authorizations (.6); prepare summary outline of research to date (1.2); attend to matters re same (.5); prepare notes re research summary (.4). |
| 3/28/02 | David A Codevilla | 1.00 | Revise chart of agency emergency powers. |
| 3/29/02 | David A Codevilla | 3.30 | Research in support of memorandum on challenge to EPA potential action. |

Exhibit J

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 3/01/02 | James W Kapp | 0.20 | Telephone conference with M. Shelnitz re PricewaterhouseCoopers retention and attend to issues re same (.1);.......... |
| 3/04/02 | James W Kapp | 1.70 | Review correspondence from M. Shelnitz re retention of PricewaterhouseCoopers and telephone conference with M. Shelnitz re same (.7); review joint reply to Trustee's objection to PricewaterhouseCoopers retention and attend to issues re same (1.0). |
| 3/05/02 | James W Kapp | 0.30 | Telephone conference with M. Shelnitz re retention of PricewaterhouseCoopers. |
| 3/06/02 | James W Kapp | 0.70 | Review joint reply to Trustee's objection to PricewaterhouseCoopers' retention and attend to issues re same. |
| 3/07/02 | James W Kapp | 1.40 | Review correspondence from B. Tarola re PricewaterhouseCoopers retention application and attend to issues re same (.2); telephone conference with J. Goodchild re PricewaterhouseCoopers' retention and attend to issues re same (.8); telephone conference with M. Shelnitz re PricewaterhouseCoopers' retention and amending the application (.4). |
| 3/07/02 | Christian J Lane | 1.30 | Review applications for retention of PwC and issues re same. |
| 3/08/02 | James W Kapp | 0.20 | Attend to issues re retention of PricewaterhouseCoopers. |
| 3/08/02 | Christian J Lane | 0.50 | Attend to issues related to PwC retention application. |
| 3/12/02 | James W Kapp | 0.80 | ....; telephone conference with J. Goodchild re PricewaterhouseCoopers retention and 327 affidavit and attend to issues re same (.6). |
| 3/13/02 | James W Kapp | 1.10 | Telephone conference with J. Goodchild re PricewaterhouseCoopers retention and attend to issues re same (.3);......; attend to issues re retention of PricewaterhouseCoopers and preparation of amended application re same (.4). |
| 3/13/02 | Christian J Lane | 0.80 | Attend to matters re issues in retention of PwC (.3);... |
| 3/14/02 | James W Kapp | 0.10 | Telephone conference with J. Goodchild re |

| | | | |
|---|---|---|---|
| | | | PricewaterhouseCoopers retention and preparation of affidavit. |
| 3/14/02 | Christian J Lane | 6.80 | Draft and revise PwC retention application (6.0); attend to matters re retention of PwC (.3); telephone conference with J. Goodchild re PvC retention (.2);.. |
| 3/15/02 | James W Kapp | 2.70 | Review and revise amended application to retain PricewaterhouseCoopers and attend to issues re same (1.9);.... |
| 3/15/02 | Christian J Lane | 5.10 | Draft and revise PwC retention application (3.5); attend to matters re PwC retention application issues (.6);......... |
| 3/18/02 | Christian J Lane | 1.80 | Review and revise PwC retention application. |
| 3/19/02 | James W Kapp | 1.00 | Review correspondence re retention of PricewaterhouseCoopers (.1); participate in telephone conference with J. Goodchild and M. Shelnitz re Trustee's comments and amended application to retain PricewaterhouseCoopers and attend to issues re same and review revisions to amend application re same (.9). |
| 3/19/02 | Christian J Lane | 1.20 | Review PwC retention application (.7); participation telephone conference with J. Goodchild re retention issues and status of PwC affidavit and attend to matters re same (.5). |
| 3/20/02 | James W Kapp | 1.90 | Review revised PricewaterhouseCoopers application and attend to issues re same and telephone conference with M. Shelnitz re same (1.5);........ |
| 3/20/02 | Christian J Lane | 1.20 | Revise PwC retention application (.7); telephone conference with J. Goodchild re retention issues and status of PwC affidavit (.5). |
| 3/21/02 | Christian J Lane | 2.20 | Telephone conference with J. Goodchild re retention issues and status of PwC affidavit (.7);... |
| 3/22/02 | James W Kapp | 0.60 | Attend to issues re amended application to retain PricewaterhouseCoopers (.3); telephone conference with J. Goodchild re PricewaterhouseCoopers retention and telephone conference with M. Shelnitz re same (.3). |

### Exhibit K

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 2/26/02 | Natalie H Keller | 2.30 | Review R. Finke's comments to joint stipulation of facts (1.1); revise same (.4); attend to matters re same (.8). |
| 2/28/02 | Natalie H Keller | 4.20 | ......; revise stipulation of facts (1.7);...... |
| 3/01/02 | Natalie H Keller | 1.30 | Revise draft joint stipulation of facts (1.0); attend to matters re same (.3). |
| 3/01/02 | Todd F Maynes | 0.50 | Review correspondence re stipulations (.2); attend to matter re same (.3). |
| 3/01/02 | Pratibha J Shenoy | 1.80 | Review comments and revisions to joint stipulation of facts (1.5); attend to matters re same (.3). |
| 3/04/02 | Natalie H Keller | 1.70 | ........; revise joint stipulation of facts (1.2). |
| 3/04/02 | Todd F Maynes | 2.00 | .....; revise joint stipulations of facts (.9). |
| 3/04/02 | Pratibha J Shenoy | 2.00 | Review draft of joint stipulation of facts prior to submission to client (1.3);........... |
| 3/05/02 | Natalie H Keller | 3.50 | Review M. Dyson correspondence re draft joint stipulation of facts and private letter rulings (.3); revise Stipulation (.4);..... |
| 3/06/02 | Todd F Maynes | 1.50 | Revise joint stipulations of facts. |
| 3/07/02 | Pratibha J Shenoy | 2.10 | .......; discuss statistics cited in draft joint stipulation of facts with D. Portner and attend to matters related thereto (.8); revise joint stipulation of facts for transmission to government attorneys (.6). |
| 3/08/02 | Natalie H Keller | 0.10 | Attend to matters re joint status report and joint stipulation of facts. |
| 3/08/02 | Todd F Maynes | 0.50 | Telephone calls with R. Stewart re joint stipulation of facts and summary judgment and attend to matters re same. |
| 3/08/02 | Pratibha J Shenoy | 1.00 | Review all final changes to joint stipulation of facts and attend to matters re same. |
| 3/13/02 | Pratibha J Shenoy | 2.50 | Participate in several telephone conference with R. Stewart re(1) client's version of joint stipulation of facts, (2) next joint status report and (3) preparation of briefing schedule for motion(s) for summary judgment in tax litigation case (1.2);[3]...... |

---

[3]This time entry contained 3 separate tasks grouped together.  One third of the time is attributed to the questioned task.

Exhibit L

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 2/05/02 | Irene Reed | 9.00 | Research eminent domain matter (6.0); draft memorandum re same. |
| 2/06/02 | Bradley V. Ritter | 1.00 | Review eminent domain memorandum (.8); attend to matters re same ( .2). |
| 2/05/02 | Irene Reed | 6.00 | Review and revise memorandum re eminent domain proceeding in Broward County, Florida. |
| 2/08/02 | Bradley V Ritter | 2.00 | Review eminent domain memorandum (1.5); attend to matters re same(.5). |
| 2/10/02 | Bradley V Ritter | 1.00 | Review and revise eminent domain proceedings memorandum. |
| 2/11/02 | Irene Reed | 4.00 | Consider eminent domain proceedings issues (1.5); revise memorandum re same (2.5). |
| 2/12/02 | Bradley V Ritter | 0.50 | Review and revise eminent domain memorandum. |
| 2/13/02 | Bradley V Ritter | 1.00 | Review and revise eminent domain memorandum. |
| 2/13/02 | Irene Reed | 7.00 | Consider eminent domain issues (2.0); revise memorandum re same (4.0); attend to matters re same (1.0). |
| 2/14/02 | Bradley V Ritter | 1.00 | Review and revise eminent domain memorandum. |
| 2/14/02 | Irene Reed | 3.50 | Revise eminent domain memorandum. |
| 2/15/02 | Irene Reed | 3.50 | Revise eminent domain memorandum. |

Response Exhibit A

K&E's paralegals and project assistants perform a number of diverse and critical functions in these chapter 11 cases, some of which the Initial Report characterizes as "seemingly ministerial". As discussed below, K&E has exercised, and continues to exercise, care to ensure that the best-suited and most cost-effective individual is assigned to complete these kinds of tasks. K&E nonetheless is constantly working to decrease administrative costs by evaluating the need for such tasks and by assigning them to lower-billed individuals when appropriate.

In particular, Shirley Pope, the litigation legal assistant, has the primary responsibility of assisting the K&E litigation team of attorneys by performing the myriad tasks described below. Primarily, Ms. Pope has been charged with creating and maintaining the voluminous case files required in these chapter 11 cases, which currently include fifteen (15) cabinets of documents, three complex, computer-based databases and 300 boxes of documents produced to the plaintiffs in the fraudulent conveyance adversary proceeding. These case files support both the complex litigation at the heart of these chapter 11 cases and the bankruptcy-related legal proceedings. As reflected in some of the time entries in Exhibit B to the Initial Report, the project assistants furnish case file documents to attorneys for their review on an as-needed basis.

One of Ms. Pope's other critical duties is to review all correspondence and pleadings in order to "learn" the case and to "know" the files, which she must do in order to properly support the K&E litigation team of attorneys. Furthermore, a knowledgeable individual such as Ms. Pope must review this large amount of documents and correspondence on an intake basis to determine which members of the litigation team should receive such materials. In many cases, Ms. Pope is the most efficient person to perform this task because her billing rate is less than that of an attorney who would otherwise have to be assigned to the task. This role is primarily reflected in the K&E fee application detail in certain entries such as "reviewing correspondence", some of which are listed in Exhibit B to the Initial Report.

Exhibit B to the Initial Report also lists Marguerite Melvin, another litigation legal assistant located in our New York office. She performs the discrete, albeit critical task of regularly reviewing the Daily Bankruptcy Review, other bankruptcy-related trade publications and other media for articles relevant to these chapter 11 cases. This review ensures that the K&E team is efficiently kept apprised of all relevant developments in these chapter 11 cases. Although Ms. Melvin has, in recent months, trained a secretary to perform a much larger role, she remains primarily responsible for overseeing this review. Nonetheless, on a going-forward basis, K&E expects that the cost of this vital task will decrease. During the period at issue in the Initial Report, however, Ms. Melvin was still defining the scope of the task, which required her to be far more "hands-on" than she is now. Third, Sabrina Mitchell, Benjamin Alke (who has since left the firm) and Seth Kutnick (who was assigned to replace Mr. Alke) are project assistants who perform day-to-day tasks related to maintaining the case files. They also assist in document production and other functions under the supervision of the various legal assistants assigned to these chapter 11 cases, such as Ms. Pope. They bill at a far lower rate than the legal assistants and perform the vast majority of the "ministerial tasks" referred to in the Initial Report. Indeed, the project assistants are generally the ideal persons to perform these types of tasks because of their case-specific knowledge gained from their day-to-day assignments and roles. It would be impossible to manage these cases without the project assistants

working with the legal assistants to maintain this huge database of documents.  Project assistants are a necessary and cost-effective component of the K&E team.

<u>Response Exhibit B</u>

In cases as complex as these chapter 11 cases, K&E adopts a team approach, with various parts of the team concentrating on particular issues.  Given the nature of the Grace chapter 11 cases, the K&E team comprises two major legal disciplines, bankruptcy and litigation, utilizing, when necessary, attorneys with other legal specialties, such as environmental, tax and real estate law. David Bernick, a litigator, is the senior partner in charge of the K&E team and has overall responsibility for these chapter 11 cases.

Although he is very experienced in handling asbestos-related bankruptcy cases, Mr. Bernick is not a bankruptcy specialist.  He focuses primarily on the litigation matters at the heart of these chapter 11 cases.  He has a team of litigation and other specialists who are divided into smaller units of different attorneys assigned to each of the separate, major litigation matters that are running concurrently on separate tracks; these matters include the fraudulent conveyance adversary proceeding, which is scheduled for trial in September 2002, and the Zonolite attic insulation ("ZAI") science trial for determining whether ZAI poses any scientific risks that may lead to liability for the Debtors.  Mr. Bernick attends those hearings at which litigation matters are before the Court.

James Kapp, a bankruptcy specialist and K&E partner, supervises the bankruptcy team and is generally responsible for all bankruptcy-related matters in these chapter 11 cases.  He also oversees the agenda (and ensures that the K&E team is prepared for every matter on the agenda) for each omnibus hearing.  For example, Mr. Kapp is responsible for all matters pertaining to the automatic stay, acquisitions, employee matters, executory contracts and all other general business operations requiring interface between the Debtors, their constituents and the Bankruptcy Court.  Mr. Kapp is also responsible for all matters concerning the retention of professionals and their compensation.  Mr. Kapp's presence is thus generally required at each hearing.

Janet Baer, a bankruptcy specialist with significant litigation experience, is the primary liaison between the bankruptcy and litigation sides of the team.  She is generally responsible to Mr. Bernick for the following matters:  collateral litigation outside the Bankruptcy Court, enforcing the preliminary injunction put into place by the Court at the commencement of these chapter 11 cases (the "Preliminary Injunction"), all environmental issues, the bar date aspects of the case management motion and order, drafting proof of claim ("POC") forms (other than those relating to personal injury claims) and negotiating the content thereof with various constituencies, preparing and negotiating all bar date-related materials, developing the extensive, multi-million dollar bar date notice program, and a number of collateral duties relating to the science trial, including the filing of ZAI claims, objecting to ZAI claims and issues related to the science trial special counsel and budget.  Ms. Baer attends those hearings at which her particular matters are before the Court.

As discussed in more detail below, the complex nature of a particular hearing may also require additional support from other litigation or bankruptcy specialists as well as members of the K&E litigation support staff, such as Ms. Pope.  Meetings may be similarly complex, requiring one or more attorneys to attend if there are several issues on the agenda.  Specifically:

(a)    January 3, 2002, hearing (¶ 5).  There were six items on the agenda for this hearing, each a complex matter that implicated both litigation and bankruptcy issues, thus requiring the presence of both Mr. Bernick and Mr. Kapp.

(b)    February 25, 2002, hearing (¶ 6).  As with the January 3, 2002, hearing, both Mr. Bernick and Mr. Kapp attended the hearing to handle the litigation and bankruptcy-related matters before the Court.  Ms. Baer attended the hearing because of (i) the Carol Gerard matter, a collateral litigation matter involving the Preliminary Injunction and certain insurance issues for which she is responsible and (ii) matters on the hearing agenda concerning the retention of certain experts relating to the bar date notice program and other bar date matters.

(c)    March 15, 2002, joint defense meeting (¶ 7).  Ms. Browdy and Mr. McMillin are the partner and associate, respectively, primarily responsible for preparing for trial in the fraudulent conveyance adversary proceeding (other attorneys are also being assigned to this matter as it draws closer to trial).  In order to most efficiently prepare for trial, Ms. Browdy and Mr. McMillin have each taken different areas of primary responsibility, and thus both needed to attend the joint defense meeting with counsel representing Sealed Air and Fresenius.

(d)    March 18, 2002, hearing (¶ 8).  Mr. Bernick and Mr. Kapp again attended this hearing for the reasons discussed above.  Ms. Baer also attended the hearing because some of her matters on the February 25, 2002, hearing agenda had been continued to this hearing.  Additionally, the hearing also dealt with certain aspects of the science trial, which required the presence of both Mr. Bernick and Ms. Baer.  Furthermore, the POC forms were addressed at this hearing.  The content of the POC forms has been hotly contested among the Debtors and a number of the official committees appointed in these chapter 11 cases (specifically, the asbestos personal injury committee (the "PI Committee") and the asbestos property damage committee (the "PD Committee," together with the PI Committee, the "Asbestos Committees")).  During the hearing, the Court examined each of the four proof of claims forms on a line-by-line basis, ruling on each issue raised by the committees.