IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No.: 01-1139(JJF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**RESPONSE OF TIMOTHY KANE TO
DEBTORS' OBJECTION TO TIMOTHY KANE'S
MOTION TO LIFT AUTOMATIC STAY FOR CAUSE**

Respondent, Timothy Kane (hereinafter "Kane" or "Respondent"), hereby files his Response to Debtors', W.R. Grace & Co., et al. (hereinafter "Debtors"), Objection to Timothy Kane's Motion to Lift Automatic Stay (hereinafter "Kane's Response"). In support of Kane's Response, Respondent states as follows:

**BACKGROUND**

1. On June 18, 2002, Kane filed with this Court his Motion of Timothy Kane for Relief from the Automatic Stay (hereinafter "Motion for Relief From Stay"). The Motion for Relief From Stay seeks entry of an order lifting the automatic stay so that Kane may proceed with his state court personal injury action against Debtors. The Motion also seeks to limit Kane's recovery to the limit of available liability insurance coverage.

2. On August 9, 2002, Debtors filed Debtors' Objection to Kane's Motion for Relief From Stay (hereinafter "Debtors' Objection"). Paragraph 15 of Debtors' Objection summarizes Debtors' position vis a vis Kane's Motion for Relief From Stay:

> Kane improperly relies on Debtors' insurance coverage to argue that the Debtors will suffer no hardship. Any insurance coverage that does exist cannot prevent the real harm to Debtors' ability to effectively and efficiently develop comprehensive litigation and reorganization plans.

WM1A 324v1 08/16/02

> Because the Debtors would have to defend or provide information to its insurers to defend against the effectiveness of one of the Debtors' products, the existence of insurance coverage cannot be a sufficient basis to lift the stay. The Debtors would suffer significant harm from the *distraction* created by having to actively participate in the defense of an action against one of the Debtors' product (emphasis added).

### Kane's Claims Against Debtors are Unique and Separate from Debtors' Asbestos Litigation

3. Debtors object to Kane's Motion for Relief despite the availability of $10 million dollars in available insurance coverage provided by RSKCo, Debtors' insurer. Debtors' Objection lacks any support for the proposition that relief from stay should not be granted despite the existence of substantial insurance coverage. Instead, Debtors assert that if Kane's Motion was granted, the "Debtors' ability to administer their estates and these chapter 11 cases would be severely impacted." Debtors' Obj. at pgh. 11.

4. Debtors admit that they were "forced into bankruptcy" due to a "morass of asbestos litigation". Debtors' Obj. at pgh. 7. Furthermore, Debtors' contend that their primary challenge in these cases is to "develop a comprehensive litigation plan to deal with these thousands of cases." *Supra*.

5. Kane's claim arises out of the alleged defective nature of a roofing underlayment manufactured by Debtors. Kane's claim in no way relates to the "morass of asbestos litigation" which the parties concede is at the core of these bankruptcy cases. To the contrary, the discovery previously permitted by this Court[1] shows that there are no other existing claims against Debtors alleging defectiveness of the same product, nor

---

[1] This Court previously entered an Order lifting the automatic stay in order to allow Kane to take four depositions of Debtor's employees to discover whether Kane's theories of negligence and strict liability against Debtors had merit. A true and correct copy of the Court's Order granting relief from stay for the purposes of depositions is attached hereto as Exhibit "A".

injuries arising under circumstances substantially similar to those involved in Kane's claim.

6. Kane's injuries arose when he fell from the roof of a hotel due to the slippery surface created by Debtors' underlayment. Kane's claim is quite distinguishable from the asbestos claims. Debtors should not be permitted to hide behind the automatic stay merely because Kane's claim may be categorized as alleging "defective product." Claims alleging "slippery surface materials" did not precipitate Debtors commencing their bankruptcy cases.

7. Through their Objection, Debtors' contend that the "thousands of cases currently pending against Debtors" should not be "litigated piecemeal", but instead remain stayed while "Debtors develop a comprehensive litigation plan." Debtors Obj. at pgh. 8.

8. Debtors fail to identify the "comprehensive litigation plan" for which Kane's claim belongs. This omission is due to Debtors' lack of a plan for non-asbestos claims. Instead, Debtors created a "litigation protocol" for resolving asbestos claims. The protocol makes no room for non-asbestos claimants such as Kane. As Debtors concede in their *Supplemental Brief Regarding Procedures for the Litigation of the Common Personal Injury Liability Issues* (hereinafter "Litigation Procedures Brief"), filed with this Court on June 21, 2002, Debtors' litigation protocol requires "disclosure in the claim form of the basic information needed to resolve threshold common issues relating to product identification, product exposure, and the existence of compensable injury." Lit. Proc. Brief at pp. 25. The protocol relates only to issues concerning asbestos, not the products which led to Kane's injury.

9. Debtors' litigation protocol is intended to resolve *"very specific issues* appropriate for common resolution and *very specific procedures* for addressing those issues"(emphasis added). *See Debtors' Consolidated Reply in Support of Their Motion For Entry of a Case Management Order* (hereinafter "Case Management Brief"), filed with this Court on February 12, 2002.

10. Debtors' Litigation Procedures and Case Management Briefs illustrate Debtors' lack of intent on creating a "comprehensive litigation plan" for claimants such as Kane. Clearly, had Debtors intended to make such a plan, they would refer to it in their Objection. Instead, the absence of a plan supports Kane's Motion for Relief as it constitutes the only equitable and efficient resolution of his claim.

### Ample Cause Exists to Lift the Automatic Stay

11. Whether cause exists to grant relief from stay is not governed by a "rigid test," but instead requires courts to consider the policies underlying the automatic stay, as well as the competing interests between the debtor and movant. *In re: Continental Airlines, Inc.*, 152 B.R. 420, 424 (D.Del. 1993). In balancing the competing interests, Courts consider three factors: (1.) the prejudice suffered by the debtor if the stay were lifted; (2.) the balance of hardships between the parties; and, (3.) the probable success on the merits should the stay be lifted. *Supra*.

### No Substantial Prejudice Suffered by Debtors

12. The only prejudice identified by Debtors should this Court grant relief is the potential to "open the floodgates of other motions to lift the stay" prompting a "large number asbestos claimants to seek relief from the stay." *Debtors' Obj. at pgh. 12..*

Debtors' argument is tenuous at best. As already stated, Debtors have proposed litigation procedures which "streamline[] the process of adjudicating [asbestos] claims." *Case Mgmt. Brief, pp. 41.*

13. Instead of seeking relief from the automatic stay, the asbestos claimants, whose interests are represented by a Personal Injury Committee, seek implementation of a claims estimation process for asbestos claims. *See Debtors' Lit. Proc. Brief, pp. 2.*

14. "Numerous courts have permitted the stay to be lifted when the movant is simply seeking to establish the fact and amount of the debtor's liability, and ... the movant has stipulated that any recovery will be sought from Debtor's insurer or a codefendant." *In re: Peterson,* 116 B.R. 247, 250 (D.Col. 1990); citing *In re Wheeler Group, Inc.,* 75 B.R. 200, 200 (S.D. Ohio 1987)(most expeditious way to liquidate claim was to permit foreign action to proceed to conclusion); *In re: Elegant Concepts, Ltd.,* (risk that state judgment may exceed insurance coverage insufficient to justify stay).

15. Debtors' insurer represented to Kane in correspondence dated May 24, 2000 that should Kane establish liability on the part of Debtors, the insurance policy is payable for the benefit of Kane. Furthermore, Kane has already requested this Court to limit any judgment entered in favor of Kane and against Debtors in state court to the $10 million in coverage available under the RSKCo policy.

### The Balance of Hardships Weighs in Kane's Favor

16. Debtors contend that "Kane provides no reason why he should be given preferential treatment over literally thousands of individuals asserting claims against the Debtors ..." Debtors' Obj. at pgh. 14. Debtors also contend the hardships weigh in their

favor due to their obligation to "defend or provide information to its insurers." Debtors' Obj. at pgh. 15.

17. Debtors' Case Management Brief and Litigation Procedures Brief both illustrate Debtors' lack of an efficient and fair mechanism for the resolution of non-asbestos claims. Such pleadings show Debtors' preoccupation with asbestos claimants, to the detriment of Kane.

18. An increase in litigation expenses, by itself, does not justify denial of a request for relief from stay. *In re: Continental Airlines*, 152 B.R. 420, 425 (D.Del. 1993). Furthermore, whether Debtors' supply the information to its insurer, or provide the information during the claims proceedings in this Court, the information surrounding Debtors' defense of Kane's claim must at some point be provided. Given this inevitability, supplying such information does not constitute a legitimate hardship.

19. Should the stay remain, the hardships to Kane are tremendous. Including Kane in the claims resolution process with the asbestos claimants adds unnecessary time to a matter which may be efficiently resolved in a different forum. The Creditors' Committee, in supporting Debtors' Case Management Brief, recognizes the "prospect of waiting years for the resolution of these asbestos issues ..." *See Official Committee of Unsecured Creditors' Memorandum in Support of Debtors' Case Management Plan* at pp. 1.

20. Kane's attorneys are located in Florida. Kane's injuries arose in Florida and factual witnesses reside in that state. When faced with movants with similar circumstances, Courts have ruled that the "added expense of transporting the lawsuit to

Delaware is unnecessary." *In re: Rexene Products Co.,* 141 B.R. 574, 576 (D.Del. 1992).

21. The court in *Rexene* recognized that "cause" for relief from stay may be "'established by a single factor such as the 'desire to permit an action to proceed ... in another tribunal' or 'lack of any connection with or interference with the pending bankruptcy case.'" *Supra;* citing H.R.Rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977) U.S.Code Cong. & Admin.News pp. 5787, 6300.

22. Like the movant in *Rexene,* forcing Kane to begin litigation in Delaware results in far more hardship to Kane than to the Debtors, and would further constitute a waste of judicial resources. *Supra.*, citing *In re: Murray Indus., Inc.,* 121 B.R. 635, 637 (Bankr. M.D.Fla. 1990).

### Kane Has Established Probability of Success on the Merits

23. As to this third and final prong of the analysis, Debtors merely state that Kane "has not demonstrated, nor can he, any likelihood of success on the merits." Debtors' Obj at pgh. 17. Debtors state nothing more to support this point.

24. "Even the slightest probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *In re: Continental Airlines,* 152 B.R. 420, 426 (D.Del. 1993). *Accord, In re: Peterson, supra.,* at pp. 249 (all that is required in a "success on the merits" analysis is that the movant make more than a "vague initial showing" that it can establish a prima facie case).

25. During depositions, Debtors admitted that their product becomes extremely slippery when wet. Debtors further admitted that they had reengineered the slip resistance capabilities of the product on several occasions. These admissions create

factual issues of whether Debtors provided warnings regarding the slipperiness of its product, whether Debtors exercised reasonable care in the design of its product, and whether Debtors product was defective as a result of insufficient slip resistance or a failure to provide warnings.

26.  The prior depositions also revealed that Debtors' responses to Kane's discovery in the state court action were incomplete. Kane has discovered that many additional documents exist relevant to the design and testing of Debtors' product. These documents were not provided to Kane in his initial requests.

### Debtors Fail to Meet Their Burden Under 11 U.S.C. § 362(g) Showing Why the Stay Should Not be Lifted

27.  Section 362(g) of the Bankruptcy Code is generally interpreted as placing the initial burden on the moving party to establish its prima facie case for relief from stay. *In re: Rexene Products Co.*, 141 B.R. 574, 577 (D.Del. 1992). As shown above, Kane has established its prima facie showing of cause to lift the stay. Having done so, Section 362(g)(2) shifts the burden to Debtors "on all other issues."

28.  Debtors have failed to prove why the stay should not be lifted. Debtors support their opposition to Kane's Motion through vague notions that the requested relief would "open the floodgates." Debtors' Obj. at pgh. 12. Kane asserts that he stands alone at Debtors' purported "floodgates" as there are no other claims against Debtors alleging defectiveness in the same product, nor any claims whereby the injuries arose under similar circumstances.

WHEREFORE, Respondent Timothy Kane respectfully requests this Court to over-rule the Debtors' Objection and grant Respondent's Motion for Relief from the Automatic Stay.

FOX ROTHSCHILD O'BRIEN & FRANKEL, LLP

_____
NEAL J. LEVITSKY, ESQUIRE (No. 2092)
L. JASON CORNELL, ESQUIRE (No. 3821)
824 N. Market Street, Suite 810
P.O. Box 2323
Wilmington, DE 19899-2323
(302) 654-7444

-and-

STUART F. COHEN, ESQUIRE
CONROY, SIMBERG GANON, KREVANS & ABEL
3400 Hollywood Blvd., 2nd Floor
Hollywood, FL 33021
(954) 961-1400

Dated: 8/16/02

Attorneys for Timothy Kane

**EXHIBIT "A"**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

re: )
)
W. R. GRACE & CO., et al., ) Chapter 11
)
) Case No. 01-01139 (JJF)
Debtors. ) (Jointly Administered)
) Docket No. 1034

### ORDER WITH RESPECT TO TIMOTHY KANE'S MOTION FOR RELIEF FROM AUTOMATIC STAY

This case came on for an Omnibus hearing on January 3, 2002 pursuant to the Amended Notice of Agenda of Matters Scheduled for Hearing (Docket No. 1415) and Timothy Kane's Motion for Relief from the Automatic Stay (Docket No. 1034).

After due deliberation and cause appearing therefore, accordingly:

IT IS HEREBY ORDERED that Timothy Kane's Motion for Relief from the Automatic Stay is granted solely to allow depositions to be taken by Kane in the action entitled Kane v. Walt Disney World Co., et al., Case No. C1-00-6803 (Cir. Ct. Orange City, Florida) (the "Kane action") of four previously designated employees of the Debtor, namely:

a) Robert Wiercinski, Cambridge, MA
b) Dr. R. F. Jenkins, Cambridge, MA
c) Keith Bartlett, Cambridge MA
d) Pete DiGiovani, Cambridge MA

The remainder of the Motion is denied and the Kane action against the Debtors is stayed.

Dated: January 25, 2002

_Judith K. Fitzgerald_
THE HONORABLE JUDITH K. FITZGERALD.
UNITED STATES BANKRUPTCY JUDGE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that one copy of the attached RESPONSE OF TIMOTHY KANE TO DEBTORS' OBJECTION TO TIMOTHY KANE'S MOTION TO LIFT AUTOMATIC STAY FOR CAUSE was served this 16th day of August, 2002, upon the following individuals in the manner designated below:

David M. Bernick, Esquire
James H. M. Sprayregen, Esquire
James W. Kapp, III, Esquire
Christopher J. Lane, Esquire
Kirkland & Ellis
200 E. Randolph Drive
Chicago, IL 60601
**(By First Class Mail, Postage Prepaid)**

Laura Davis Jones, Esquire
Pachulski Stang Ziehl Young & Jones
919 N. Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705
**(By Hand Delivery)**

William Kevin Harrington, Esquire
Michael Lastowski, Esquire
Duane Morris & Heckscher, LLP
1100 N. Market Street, Suite 1200
Wilmington, DE 19801
**(By First Class Mail, Postage Prepaid)**

Office of the United States Trustee
844 King Street, Suite 2313
Lockbox 35
Wilmington, DE 19801-3519
**(By First Class Mail, Postage Prepaid)**

_____
L. JASON CORNELL, ESQUIRE

WM1A 423v1 08/16/02