IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Hearing: August 26, 2002, at 10:00 a.m. |

**RESPONSE TO FINAL REPORT OF FEE AUDITOR REGARDING FOURTH
INTERIM QUARTERLY FEE APPLICATION OF KIRKLAND & ELLIS**

Kirkland & Ellis ("K&E") appreciates the work of the Fee Auditor and generally believes that the Fee Auditor was extremely fair and reasonable in its final report (the "Final Report"), filed with the Court on August 15, 2002, regarding Kirkland & Ellis's fourth interim quarterly fee application (the "Application"). K & E has certain limited responses with respect to the Fee Auditor's recommendation as summarized below and discussed herein. While the dollars are not significant, the Fee Auditor's approach is significant because the practices of K & E at issue are central to the efficient and effective representation of the Debtors in these chapter 11 cases and could be a reoccurring issue in fee applications going forward.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

### K&E Should Be Compensated for (1) Paraprofessionals' Work, (2) Attendance at Hearings and (3) Activities Related to Development of Proof-of-Claim Forms

1. K&E respectfully requests that each of the following four recommendations of the Final Report be denied and the full amount of fees requested by K&E in these categories be allowed. Specifically:

(a) *Use of Paraprofessionals.* K&E uses paraprofessionals when necessary to perform a wide range of tasks that are vital to K&E's attorneys effectively representing the Debtors in these chapter 11 cases. The Fee Auditor objects to some of their tasks as being merely "ministerial." The Fee Auditor is incorrect in its assessment. The tasks performed by K&E's paraprofessionals could not have been attended to by secretaries and other clerical personnel untrained in performing relatively complex tasks. If K&E did not use paraprofessionals to perform these tasks, it would have had to use attorneys, who bill at far higher rates. K&E respectfully requests that the full amount of fees for paraprofessionals be allowed.

(b) *Attendance of More than One Attorney at Omnibus Hearings.* The Fee Auditor, in the Final Report, recognized the need for K&E to use more than one attorney at certain hearings. Nonetheless, the Fee Auditor recommended that fees for all professionals attending the February 25, 2002, hearing be reduced by one third and for the March 18, 2002 hearing be reduced by one-half when, in fact, the matters before the Court absolutely demanded the presence of each of these professionals. K&E uses the minimum number of professionals necessary to attend to the matters before the Court at any particular hearing, and therefore respectfully requests that it be allowed the full amount of fees requested for its professionals' attendance at the February 25, 2002 and March 18, 2002 hearings.

(c) *Development of Proof-of-Claim Forms.* As the Court well knows, the Debtors were engaged through much of 2001 and 2002 in a complex and protracted effort to develop various proof-of-claim forms. The Fee Auditor recommended a reduction of 1/5 of the fees for the period of the Application relating to this very important and complex task. K&E believes that the Fee Auditor does not fully appreciate the complexity of the effort involved in this matter, which clearly warranted the attention of each of the attorneys listed in this matter. To aid the Court, this Objection provides further explanation of the time entries involved. K&E therefore respectfully requests the Court allow the full amount of fees.

(d) *Development of Joint Stipulation of Facts in Federal Income Tax Controversy.* The development of the joint stipulation of facts in a large federal income tax controversy required the services of three attorneys in order to minimize the amount billed to this complex task. The matter required extensive factual development best suited to a more junior attorney (Prathiba Shenoy) working under the direct supervision of a more experienced attorney (Natalie Keller) and

> the relatively minimal role of a senior tax partner experienced in tax litigation, Todd Maynes, during particularly sensitive points during a lengthy process of negotiation with the Internal Revenue Service ("IRS") concerning virtually every stipulation in that lengthy document.

Each of these four issues is discussed in more detail below. K&E is particularly concerned about these matters because they are all emblematic of the unusual complexity of these multi-faceted chapter 11 cases, which, as the Fee Auditor has recognized, requires multiple attorneys to most efficiently and effectively complete particular tasks.

*Use of Paraprofessionals*

2.  As set forth more fully in Response Exhibit B to the Final Report, K&E's paralegals and project assistants perform a number of diverse and critical functions in these chapter 11 cases. Contrary to the Final Report's assertion, these functions are distinctly not "ministerial" clerical-type tasks that can be performed by untrained non-professionals, such as secretaries. Indeed, none of the paraprofessional functions described in Response Exhibit A of the Final Report include word processing, proofreading or other secretarial services that the U.S. Trustee Guidelines have listed as nonreimbursable expenses.

3.  To the contrary, these functions are instead more complex paraprofessional-type functions, including reviewing court dockets for new pleadings, accessing hearing transcripts and locating particular points of fact for attorney review, organizing documents for filing and circulation to the appropriate attorneys in the numerous related adversary proceedings, and creating and updating file indices for those various case files. Secretaries and other clerical staff generally cannot perform such tasks because they lack the case-specific knowledge and legal training that project assistants have to perform such tasks. Whenever possible, K&E utilizes project assistants to perform these types of functions because they generally bill at a much lower rate than legal assistants. Indeed, it would be impossible to manage these cases without the

project assistants working with the legal assistants on these kinds of functions and to maintain the huge database of documents required for these chapter 11 cases.

4. The Final Report also singles out the time entries for Shirley Pope, the senior litigation legal assistant, for her role of reviewing and performing an initial triage on incoming correspondence. This is a task well beyond the capability of a mere clerk. Ms. Pope was reviewing correspondence and pleadings in order to "learn" the case and to "know" the files, which she must do in order to properly support the K&E litigation team of attorneys. Furthermore, a knowledgeable individual such as Ms. Pope must review this large amount of documents and correspondence on an intake basis to determine which members of the litigation team should receive such materials.

5. Indeed, this particular point highlights the uniquely important role of Ms. Pope as the litigation legal assistant. She spends an enormous amount of her time ensuring that Mr. Bernick, the lead litigator assigned to these chapter 11 cases, can utilize his time in a most efficient manner - - something that a secretary simply cannot do. Ms. Pope is often tasked with the role of assisting Mr. Bernick in preparation for Court hearings, including the creation of demonstrative exhibits. In this respect, the only alternative to using Ms. Pope in this critical role would be to use a junior attorney, who would bill at a higher rate than Ms. Pope and likely, because of the relative inexperience of such an attorney, be less effective. K&E's use of Ms. Pope in her assigned role is clearly cost-efficient and effective and fees attributed to her should not, in any way be reduced.

6. The scope and complexity of these chapter 11 cases virtually dictate the judicious use of paraprofessionals efficiently and effectively to represent the Debtors. Without these paraprofessionals, K&E would have to assign attorneys to virtually all of the functions listed in

Response Exhibit A because they must be performed by someone with a good working knowledge of the cases and some legal training. K&E therefore respectfully requests that the Court approve the entire amount that paragraph 4 of the Final Report recommends be disallowed for paraprofessional billing.

*Attendance of More than One Attorney at Hearings*

7.  The Final Report recommends that the fees and expenses attributable to the February 25, 2002, hearing be reduced by 1/3 and the March 18, 2002 hearing be reduced by 1/2 because it characterizes the use of three or more professionals at the hearing as merely "convenient." This is particularly puzzling because the Final Report also recognizes the critical importance of K&E using more than one attorney at other hearings during the period at issue. At both the February 25, 2002 hearing and the March 18, 2002 hearing, numerous complex matters were before the Court which were similar to the issues requiring the presence of Mr. Bernick and Mr. Kapp in earlier hearings for which the Fee Examiner did not recommend disallowance or reduction. One must therefore assume that the Final Report was focusing on Ms. Baer's presence at the hearings, as well as the presence of paraprofessionals Pope and Knox at the March 18, 2002 hearing.

8.  As outlined in the Debtors' Response to the Fee Examiner, Ms. Baer was required to attend the February 25, 2002 hearing because of (i) the Carol Gerard matter, a collateral litigation matter involving the Preliminary Injunction and certain insurance issues for which she is responsible and (ii) matters on the hearing agenda concerning the retention of certain experts relating to the bar date notice program and other bar date matters. Specifically, at issue before the Court were certain expert reports and a multi-million dollar notice program that Ms. Baer had been working on with the Debtors' experts since June, 2001 and for which Ms. Baer had

negotiated with the Property Damage Committee and the Official Committee of Unsecured Creditors since that time.

9. At the March 18, 2002 hearing, additional matters with respect to the bar date and notice program were at issue, requiring Ms. Baer's attendance. In addition, the Proofs of Claim were addressed at this hearing. Ms. Baer had prepared the various Proof of Claim forms, the Debtors' response to the Committee's objections to the various forms and had engaged in negotiations with the Committee's over the forms. During the hearing, the Court examined the Asbestos Property Damage Claim form line by line and indicated rulings on each issue raised by the Committee which Ms. Baer then had to reflect in the final proof of claim forms approved by the Court on April 22, 2002.

10. The March 18, 2002 hearing also required the presence of Ms. Pope and Ms. Knox who assisted Mr. Bernick with respect to demonstrative exhibits he had assembled relating to several matters which were the subject of discussion and presentation at the March 18, 2002 hearing.

11. It would have been far more expensive for the Debtors (and less time-effective) for Ms. Baer to bring either Mr. Kapp or Mr. Bernick "up to speed" on the various issues addressed at the February 25 and March 18 hearings. In addition, it could have been detrimental to the Debtors for Ms. Baer, Ms. Pope and Ms. Knox not to attend the hearings as all of them had background experience on the matters and were intimately familiar with the case files relating to the issues presented at those hearings.

12. It is both necessary and critical for the Debtors to be permitted to have multiple K&E attorneys and occasionally paraprofessionals representing the Debtors at the Omnibus hearings. It would be impossible for one attorney to be fully steeped in both the general issues

and the specific facts that relate to the multiple issues that come before the Court at each hearing. K&E has undertaken to divide the various pending matters in an appropriate and cost efficient manner and assure that the attorneys and professionals with the most background and expertise on each matter attend the hearings when those matters will be addressed by the Court. However, due to the fact that many of these matters are heard at the same Omnibus hearing, K & E must have multiple attorneys and professionals present at each such hearing and intends to do so in the future. K&E therefore respectfully requests the Court allow the full amount of fees and expenses attributable to the February 25, and March 18, 2002, hearings.

*Development of Proof-of-Claim Forms*

13. As the Court is well aware, developing the various unique proof-of-claim forms required in these chapter 11 cases took an incredible amount of time and required the attention of several attorneys in addition to Ms. Baer. The issues involved in developing the proof-of-claim forms extended into every facet of the chapter 11 cases and the strategy for ultimately approaching claims in the cases and a Chapter 11 Plan. This necessarily involved the input of several attorneys.

14. The Final Report specifically criticized the time entries that stated "attend to issues re objections to proof-of-claim forms," "attend to matters re preparation of Grace's responses to the objections" and "attend to issues re revisions to proof of claim" as being "inadequate" and therefore the reason for reducing K&E's reimbursement of fees for this matter. This criticism fails to take into account the enormous workload associated with responding to the various objections of the Property Damage Committee and the Official Committee of Unsecured Creditors. These responses involved both negotiations with the Committees and continuing revisions of the forms as those negotiations proceeded. The time entries, without being specific about the particular task being attended to, were accurate, if somewhat general in order to avoid

divulging case sensitive and attorney-client privileged matters, which, of course, should not be disclosed. Nonetheless, in similar situations, K&E will endeavor to make the time entries more particular.

15.     With the intent to make time entries more particular where possible, K&E respectfully requests that the Court allow in full the amount of the fees relating to preparation of proof-of-claim forms.

*Development of Joint Stipulation of Facts in Federal Income Tax Controversy*

16.     As the Final Report correctly points out, the development of the joint stipulation of facts was a factually intensive and laborious effort that commenced during the period at issue and continued well into the next quarter. Indeed, the effort did not conclude until July 2002. The stipulation was developed in support of summary judgment motions that each party is expected to file this summer in the "CCHP litigation," a case before the Federal Court of Claims involving whether certain per diem expenses are wages subject to employment taxes. The matter involves tax claims of approximately $22 million for the taxable years at issue (1993 through 1995) and in excess of $80 million for all the open years (which include the taxable years at issue and the years 1996 through 1999, which essentially will be bound by the outcome of the CCHP litigation).

17.     Without an accurate, and where possible, factually favorable stipulation, the Debtors would face a much more difficult task in prevailing in the next phase of the CCHP litigation. To minimize the total amount billed by minimizing the billing rates for attorneys, K&E employed three attorneys in this critical but lengthy task. Ms. Shenoy, the attorney with the lowest billing rate, performed most of the factual development and intensive document review. Her relative inexperience, when coupled with the complex tax issues involved in this

particular matter, required her to be supervised to a certain extent by a more senior (albeit not the most senior in order to minimize billing rates) tax attorney, Ms. Keller.

18. Mr. Maynes, who is a senior tax partner experienced in complex tax litigation and representation of taxpayers before the IRS, also was vital to developing the stipulation. He nonetheless participated only when absolutely necessary, restricting his reviews of various drafts only to those times when they were to be exchanged with the IRS. The complexity of the tax issues and the sensitivity due to the large dollar amounts involved required Mr. Maynes to participate in numerous telephone conferences with the IRS. Many of these telephone conferences also required the presence of Ms. Shenoy because of her detailed familiarity with factual content of many of the source documents on which the stipulation was based and the presence of Ms. Keller both because of her familiarity with the source documents and to ensure that she was kept abreast of the various issues between the Debtors and the IRS in developing the stipulation.

19. K&E will, in the future, seek to employ descriptions in this and other matters that more fully delineates the variegated and necessary roles of each of Ms. Shenoy, Ms. Keller and Mr. Maynes in the CCHP litigation. Nonetheless, the descriptions that the Fee Auditor criticized as being inadequate were employed during subsequent interim fee applications. K&E therefore requests that, based upon their further explanation of this matter for the period at issue and subsequent periods, they be allowed the full amount of fees requested for the development of the joint stipulation of facts for the CCHP litigation.

WHEREFORE, Kirkland & Ellis requests entry of an order (a) allowing the total fees requested by Kirkland & Ellis in the amount of $1,281,702.50; (b) allowing out of pocket disbursements of $101,656.38 ($102,514.38 minus $858.00 for color copies) and (c) granting such other and further relief as is just.

Wilmington, Delaware
Dated: August 20, 2002

Respectfully submitted,

*/s/ Janet S. Baer/*

KIRKLAND & ELLIS
James H.M. Sprayregen, P.C.
David M. Bernick, P.C.
James W. Kapp III
Janet S. Baer
Roger J. Higgins
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000