# EXHIBIT C

**Page 45** CONFIDENTIAL

```
 1   before November 21st, 1997, by the Baron & Budd
 2   firm?
 3            MS. BROWDY: Objection, foundation.
 4            You can answer if you can.
 5            THE WITNESS: Yes, it was.
 6   BY MR. FINCH:
 7       Q.  And it resulted in a verdict against Grace
 8   in favor of the plaintiffs in a total amount of
 9   $9.35 million?
10       A.  Yes, it did.
11       Q.  And that case was subsequently settled by
12   Grace?
13       A.  Yes, it was.
14       Q.  And can you look at the answer to
15   interrogatory - look on -- Can you determine from
16   looking at Hughes Exhibit 2 what the
17   settlement - ultimate disposition amount for those
18   cases was?
19       A.  Yes, I can.
20       Q.  And what was the disposition amount for the
21   cases referenced in Hughes Exhibit 3?
22       A.  Well, it appears that Line 50 and 51 on
23   Exhibit 2, the numbers.
24       Q.  What are the numbers?
25       A.  $3,979,272.60 for Mrs. Williams and
```

BENOWITZ – BERMAN – PEGGY COOK – MATZ TRAKTMAN
a VeriText Company (305)371-1884  Fax(305)377-1100

**Page 46** CONFIDENTIAL

```
 1   $2,335,986 for Mr. Norsworthy.
 2       Q.  What type of evidence did Grace accept from
 3   plaintiffs to - in order for Grace to determine that
 4   they had submitted sufficient evidence of exposure
 5   to a Grace asbestos-containing product to offer them
 6   a settlement?
 7            MS. BROWDY: Objection, overbroad.
 8            Do you mean for these two people or --
 9            MR. FINCH: No, in general. In the 1995 to
10   1998 time frame.
11            THE WITNESS: Well --
12            MS. BROWDY: Okay. Then I'm going to
13   object as overbroad as to time; but you can
14   answer if you can.
15            THE WITNESS: Again, I can't answer the
16   question without making sure you understand that
17   the difference between the documentary evidence,
18   the adequacy of evidence that was acceptable and
19   the quality of the evidence and the fact that
20   under the - in the tort system we were unable
21   to -- There was no mechanism in the tort system
22   to verify the accuracy and legitimacy of the
23   evidence that was being submitted.
24   BY MR. FINCH:
25       Q.  Are you finished with your answer?
```

BENOWITZ – BERMAN – PEGGY COOK – MATZ TRAKTMAN
a VeriText Company (305)371-1884  Fax(305)377-1100

**Page 47** CONFIDENTIAL

```
 1       A.  And as a result, when you say what was
 2   acceptable, we -- What we found to be acceptable and
 3   what we accepted, as is documented in settlement
 4   agreements, is documentary evidence of exposure to a
 5   Grace product and an asbestos-related disease.
 6            Because of the failings in the tort system,
 7   because of the practices of the asbestos
 8   plaintiffs' bar, which are described in part in
 9   Hughes Exhibit 3, which I would love to go into
10   detail with you if you'd like, in the third
11   paragraph, we had no way of questioning without
12   spending millions and millions of dollars in
13   unnecessary legal fees, in trial costs to prove that
14   the evidence - the documentary evidence, both
15   medical and product, that was being submitted to us
16   was - had significant, significant problems with it.
17   And I can go into great detail with you if you'd
18   like about the problems; they're well-documented;
19   they've been acknowledged by the United States
20   Supreme Court; there have been Law Review articles
21   written about it. So, I want you to understand when
22   you say, yeah, product - evidence of product
23   exposure and exposure to Grace products in evidence
24   of an asbestos-related disease, yes; but with the
25   caveat that, under the current tort system and the
```

BENOWITZ – BERMAN – PEGGY COOK – MATZ TRAKTMAN
a VeriText Company (305)371-1884  Fax(305)377-1100

**Page 48** CONFIDENTIAL

```
 1   tort system existing between '95 and, in fact,
 2   earlier than that, I, personally, and most members
 3   of the asbestos defense bar. And, quite frankly,
 4   most legitimate, objective observers of the asbestos
 5   litigation realized that there was a significant
 6   amount of questionable product exposure evidence and
 7   medical testimony being admitted in asbestos
 8   personal injury cases.
 9       Q.  These were cases that were filed in courts;
10   right?
11       A.  Yes, they were.
12       Q.  Grace had the opportunity to depose
13   plaintiffs in these cases; didn't they?
14            MS. BROWDY: Objection.
15            THE WITNESS: After being --
16            MS. BROWDY: Overbroad.
17            You can answer if you can.
18            THE WITNESS: Plaintiffs that, one, had
19   been prepared for their testimony using improper
20   techniques - that's proven, documented - in
21   terms of product exposure. That had
22   been - in -- Leaving aside the quality, the
23   sheer volume of the cases and the resources
24   available to the courts and the resources
25   available to the company to defend the case made
```

BENOWITZ – BERMAN – PEGGY COOK – MATZ TRAKTMAN
a VeriText Company (305)371-1884  Fax(305)377-1100

CONFIDENTIAL                                                                 49

1  an individual trial of the individual cases
2  impossible.
3       Again, you can sit here and talk about the
4  perfect world and say that we have a civil
5  justice system that allows, and why don't we go
6  into court and try every individual case. But
7  we had a situation where there were hundreds of
8  thousands of cases being filed.
9       MS. BROWDY: Excuse me, were you finished
10 with your answer?
11      THE WITNESS: No.
12      In a situation where there's hundreds of
13 thousands of cases being filed and where there
14 was objective, documentary evidence being
15 submitted that met the - the bare-bones
16 requirements of the law, even though we knew and
17 were well aware that there were significant
18 problems with the credibility of most of this
19 evidence and, but for the problems associated
20 with the volumes of the cases, the money
21 associated with the case, that these cases
22 probably were not legitimate claims against
23 Grace, we were forced to pay them.
24 BY MR. FINCH:
25  Q.  You were forced to pay them or else the

BENOWITZ - BERMAN - PEGGY COOK - MATZ TRAKTMAN
a VeriText Company (305)371-1884  Fax(305)377-1100

CONFIDENTIAL                                                                 50

1  plaintiff's lawyer would take you to trial in the
2  cases; right?
3   A.  Yes.
4   Q.  And when Grace went to trial in other
5  cases, the average amount per case in the cases that
6  went to trial, counting defense verdicts and
7  plaintiff verdicts, was over $800,000 per case;
8  isn't that right, Mr. Hughes?
9       MS. BROWDY: Objection.
10      THE WITNESS: But --
11      MS. BROWDY: Objection, overbroad, lack of
12 foundation.
13      You can answer if you can.
14      THE WITNESS: But the cases that we tried
15 are in no way, in any way, shape or form
16 representative of the vast majority of the
17 asbestos cases that were pending in America at
18 the time of these trials.
19      MS. BROWDY: Are you done with your answer?
20      THE WITNESS: In fact, I would go one step
21 further and say that the cases pending - that at
22 least 80 to 90 percent of the cases that were
23 pending at the time would have been difficult to
24 present any kind of testimony even to meet a
25 bare-bones standard if they were allowed to

BENOWITZ - BERMAN - PEGGY COOK - MATZ TRAKTMAN
a VeriText Company (305)371-1884  Fax(305)377-1100

CONFIDENTIAL                                                                 51

1  proceed to trial.
2  BY MR. FINCH:
3   Q.  Well, isn't it true that
4  Mr. Restivo -- Well, Grace didn't - leaving aside
5  the trials, Grace did not pay every asbestos
6  personal injury claim submitted to it; did it?
7   A.  No, fortunately, some jurisdictions, they
8  actually had the foresight and the ability to set up
9  procedures that actually gave the defendants the
10 ability to substantively defend these - the quality
11 of these cases.
12  Q.  But isn't it true that Grace, up until,
13 say, 19- - early 1998 only paid settlements to
14 approximately 80 percent of people who submitted
15 claims to it?
16      MS. BROWDY: Excuse me, what was the year?
17      MR. FINCH: Up until early 1998.
18      MS. BROWDY: Objection, overbroad, lack of
19 foundation.
20      You can answer if you can.
21      THE WITNESS: I will agree that Grace did
22 not pay every claim. And there was a
23 significant number of cases that were disposed
24 of without payment by Grace.
25

BENOWITZ - BERMAN - PEGGY COOK - MATZ TRAKTMAN
a VeriText Company (305)371-1884  Fax(305)377-1100

CONFIDENTIAL                                                                 52

1  BY MR. FINCH:
2   Q.  You have what's been previously marked as
3  Rourke Exhibit 18 in front of you, Mr. Hughes?
4   A.  Uh-huh.
5       MS. BROWDY: Do you have extra copies of
6  that?
7       MR. FINCH: Maybe.
8       MR. AIZLEY: If it was used yesterday --
9       MR. FINCH: It was used yesterday.
10      MR. AIZLEY: -- I've got a copy.
11 BY MR. FINCH:
12  Q.  What's the date of the document,
13 Mr. Hughes, the first page of the document?
14  A.  Cover letter?
15  Q.  Yes.
16  A.  January 20th, 1998.
17      MR. FINCH: Stacy, are there extra copies
18 of Port Number 30 in the box?
19 BY MR. FINCH:
20  Q.  Mr. Hughes, do you have what has previously
21 been marked as Rourke 18 in front of you?
22  A.  Yes, I do.
23  Q.  Do you know Dan Rourke?
24  A.  Yes, I do.
25  Q.  Who is Dan Rourke?

BENOWITZ - BERMAN - PEGGY COOK - MATZ TRAKTMAN
a VeriText Company (305)371-1884  Fax(305)377-1100