# EXHIBIT N

1

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

NEW ORLEANS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

IN THE MATTER OF:    CASE NO. 00-10992
through 00-10995
THE BABCOCK & WILCOX CO., ET AL,    (Jointly Administered)

SECTION "B"

DEBTORS.    CHAPTER 11

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

~~ADVERSARY NO. 01-1155~~

THE ASBESTOS CLAIMANTS'
COMMITTEE, ET AL,

    PLAINTIFF-INTERVENORS,

VERSUS

BABCOCK & WILCOX INVESTMENT
COMPANY, ET AL,

    DEFENDANTS.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Transcript of the proceedings taken in the above-captioned matter on **Wednesday, October 24, 2001**, the Honorable Jerry A. Brown, United States Bankruptcy Judge, presiding.

AUDIO OPERATOR:   Gene Ann Avenel

TRANSCRIPTIONIST:  Dorothy Bourgeois

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES:

    Baldwin & Haspel, L.L.C.
    By:  Dennis M. LaBorde, Esquire
    By:  Monica T. Surprenant, Esquire
    1100 Poydras Street, Suite 2200
    New Orleans, Louisiana 70163-2200

    and

    Caplin & Drysdale
    By:  Nathan D. Finch, Esquire
    By:  Walter B. Sloccombe, Esquire
    One Thomas Circle, NW
    Suite 1100
    Washington, D.C. 20005

    and

    Caplin & Drysdale
    By:  Elihu Inselbuch, Esquire
    399 Park Avenue
    New York, New York 10022

        Representing the Asbestos Claimants' Committee

    Steffes & MacMurdo, LLP
    By:  William E. Steffes, Esquire
    201 St. Charles Street
    Baton Rouge, Louisiana 70802

    and

    Blakeley & Blakeley
    By:  Bradley D. Blakeley, Esquire
    230 Main Street, Suite 540
    Irvine, California 92614

        Representing the Unsecured Creditors Committee

    Law Office of Elizabeth Wall Magner
    By:  Elizabeth Wall Magner, Esquire
    228 St. Charles Avenue, Suite 1110
    New Orleans, Louisiana 70130

        Representing the Unofficial Asbestos Committee

```
 1   APPEARANCES (Cont'd.):

 2
         Young, Conaway, Stargett & Taylor, LLP
 3       By:  James L. Patton, Jr., Esquire
         By:  Richard Morse, Esquire
 4       By:  Edwin J. Harron, Esquire
         11th Floor, Rodney Square North
 5       Wilmington, Delaware 19899-0391

 6       and

 7       Sessions, Fishman & Nathan
         By:  J. David Forsyth, Esquire
 8       By:  Melissa M. Savoie, Esquire
         201 St. Charles Avenue, 35th Floor
 9       New Orleans, Louisiana 70170-3500

10           Representing Futures Representatives

11
         Kirkland & Ellis
12       By:  David M. Bernick, Esquire
         By:  John Donley, Esquire
13       By:  David Zott, Esquire
         By:  Paul Brown, Esquire
14       By:  Jason Zakia, Esquire
         By:  Ellis Leibenstein, Esquire
15       By:  Wayne Murphy, Esquire
         200 East Randolph Drive
16       Chicago, Illinois 60601

17       and

18       Heller, Draper, Hayden, Patrick & Horn, L.L.C.
         By:  William H. Patrick, III, Esquire
19       By:  Jan M. Hayden, Esquire
         By:  Warren Horn, Esquire
20       650 Poydras Street, Suite 2500
         New Orleans, Louisiana 70130-6103
21
             Representing The Babcock & Wilcox Company
22

23

24

25
```

Case 01-01139-AMC   Doc 2581-17   Filed 08/21/02   Page 7 of 13

14

1          MR. BERNICK:  The next major event that has to take
2   place, that we would propose that take place, I think was
3   initiated.  And I know Your Honor's probably received a stack
4   of material that we simultaneously filed before Judge Vance,
5   and we've been working very hard on those materials.  The bar
6   date has passed.  There were a very substantial number of
7   claims, over 200,000 claims, a huge amount of paper.
8          And our analysis thus far indicates that an awful lot
9   of it is really just that, it's paper.  But that is what's
10  going to be before Judge Vance.  We have analyzed those
11  claims, at least on a preliminary basis, and we've tried to
12  live up to the commitments that we made both to Your Honor,
13  and to Judge Vance about what we would do with the claims and
14  with the litigation process going forward.  And I think that
15  we have lived up to those commitments.
16         We've made a report to Judge Vance that describes
17  developments that have taken place in the asbestos litigation
18  generally, with respect to the claims resolution process
19  generally, and then in particular with reference to Babcock &
20  Wilcox and what these claim look like and how they might be
21  amenable to resolution on an issue by issue, or category by
22  category basis.
23         We've secondly included a road map.  There have been
24  questions raised about what the real liability arguments are.
25  And we have laid out in detail what the liability arguments

1   are, what the road map of defenses is, and, in particular, the
2   categories of claims including the number of claims that we
3   would -- that we believe would be swept up in these categories
4   and these determinations.
5        And, finally, we've set out a protocol for actually
6   litigating these liability issues. And the protocol is
7   candidly based upon the experience in the settled claims
8   litigation process. Where there are exemplar claims that are
9   teed up for particular issues, we get a determination on those
10  issues and then based upon that determination, we file omnibus
11  objections to categories of claims and seek to disallow those
12  claims.
13       So, all that work has been done. I know it's a lot
14  of material to get through, but we believe it does really
15  provide a firm foundation for moving forward in this case, and
16  we intend to proceed in that direction.
17       And, again, we remain hopeful that we'll be able to
18  settle the case. If we're not prepared -- if we can't settle
19  the case, we're prepared to continue this work. We think that
20  we've in the sense swallowed a little bit of the whale on
21  creating a foundation for that work, but we obviously need
22  more time.
23       We've asked for an extension of exclusivity I think
24  until the second anniversary of the case, which is on
25  February --

1  in a position six months from now, or three months from now,
2  or two months from now to deny the request on the same basis.
3         What concerns me about this is precisely the same
4  concern I had when the request was made by the Debtor I think
5  two times ago, to extend exclusivity for a protracted period
6  of time to allow this litigation to unfold. Your Honor, I
7  don't see any end in sight to the fights in the case. I don't
8  see any opportunity for a consensual plan of reorganization to
9  surface in the context of the battlefield that the Debtor has
10 mapped out.
11         I believe that we should test the plan of
12 reorganization that the Debtor has on file. An opportunity
13 that Your Honor has is to draw a line in the sand, tell the
14 Debtor to take its plan and its disclosure statement forward,
15 seek to have it approved or not, and let's test whether or not
16 the Debtor's plan has any legs.
17         But, to grant exclusivity extensions today guarantees
18 a further request. And I think the preferred course of action
19 ought to be to set a timetable for consideration of the plan
20 that is on the table.
21         Thank you.
22         THE COURT: All right, anyone else?
23         MS. MAGNER: Your Honor, Elizabeth Magner
24 representing the Select Asbestosis Committee.
25         We did not object to the extension, in fact, we

1   support it today.  We realize that the Debtor has mapped out
2   in its protocol a very lengthy litigation schedule.  I
3   understand the Court's concern with fees.  We have those same
4   concerns.  But, the reality is that the Debtor has not yet
5   completed its attempt to remove some of the problems that it
6   had before bankruptcy.  We think this plan may help that
7   particular problem.
8        I voice the same concerns I did previously, that it
9   is ambitious.  I don't know that it will be successful
10  completely, but we'd like to see them try.
11       THE COURT:  All right.
12       MR. BERNICK:  I would only make on observation.  I
13  don't think that I was unclear, but in the event that I was,
14  the basis for our request is the importance of all activities
15  that are underway, first and foremost to see if we can get a
16  resolution of the case.  That is our number one priority.  We
17  don't have to complete any of this work if we can get a
18  resolution of this case.  And the reason that we are going
19  down this road is that we have tried and we've been unable to
20  do exactly that.  And I come from --
21       THE COURT:  Well, be careful about that argument,
22  because there's lot of law to the effect that it's the only
23  purpose of the extension of exclusivity is to give you an
24  extra negotiating tool that exclusivity should not be
25  lengthened.

1       MR. BERNICK: I understand.

2       THE COURT: And that's almost what you're saying to
3  me.

4       MR. BERNICK: Then I'm not -- then I am being
5  unclear, that's not --

6       THE COURT: That was not your intention.

7       MR. BERNICK: That's not -- that is not my intention.

8       THE COURT: Well, you just got through saying that
9  was your main goal.

10      MR. BERNICK: Our main goal is to resolve the case.
11  I believe that's our obligation here is to resolve the case.
12  And I think Your Honor knows and appreciates that, and that's
13  why we asked Professor McGovern to get involved to see if we
14  couldn't do it. And in case that was not clear, that is --
15  that is our goal. But, we do need the time for a variety of
16  purposes.

17      THE COURT: All right. I've read the briefs, heard
18  all the arguments, I'm convinced some progress is being made,
19  although it's much slower than I had anticipated. Perhaps
20  that was my failure to grasp the complexities and the size of
21  this case.

22      In any event, I'm going to grant the motion and
23  extend exclusivity, but I'm going to exclude -- I'm going to
24  extend it to January 31, 2002, which is about 90 days from the
25  present period. I'm not going to extend it to February 22,

1   because I want to look at it again in January. And besides
2   that, February 22 just brings up too many unpleasant memories,
3   because that's the second anniversary date.
4       All right, submit an order in the same -- same form
5   and fashion as the last one. It's extended to January 31,
6   2002, but if you want to file for another extension, you're to
7   file it no later than -- what was it, 15 days before? I've
8   forgotten exactly whether it was 10 or 15 days before.
9       MS. HAYDEN: I'm sorry, Your Honor --
10      THE COURT: Well, the format that the order took last
11  time was I extended it to October 31, but you had to file for
12  an extension, if you're going to file for another one, by
13  October 15th -- 15th, I believe.
14      MS. HAYDEN: I think that's -- Your Honor, that's --
15  that's the form of order you've been using on the preliminary
16  injunction. In connection with --
17      THE COURT: That's not -- not on this one.
18      MS. HAYDEN: Not on this, but --
19      THE COURT: Oh, I'm sorry. I was confused.
20      MS. HAYDEN: It might be useful though for all the
21  parties --
22      THE COURT: No, that's all right.
23      MS. HAYDEN: -- if you want to pick a date in
24  January, I could do that, and then make sure it gets noticed
25  that way. Do you want to do that?

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_Dorothy Bourgeois_
Dorothy M. Bourgeois

10/30/01
Date