# EXHIBIT P

1

1        UNITED STATES BANKRUPTCY COURT

2        EASTERN DISTRICT OF LOUISIANA

3              NEW ORLEANS

4

5    * * * * * * * * * * * * * * * *
                                  *    CASE NO. 00-10992
6    IN THE MATTER OF:            *    through  00-10995
                                  *    (Jointly Administered)
7    THE BABCOCK & WILCOX CO., ET AL, *
                                  *    SECTION "B"
8              DEBTORS.           *
                                  *    CHAPTER 11
9    * * * * * * * * * * * * * * * *  *
                                  *    ADVERSARY NO. 01-1155
10   THE ASBESTOS CLAIMANTS'       *
     COMMITTEE, ET AL,             *
11                                 *
          PLAINTIFF-INTERVENORS,   *
12                                 *
     VERSUS                        *
13                                 *
     BABCOCK & WILCOX INVESTMENT   *
14   COMPANY, ET AL,               *
                                   *
15         DEFENDANTS.             *
                                   *
16   * * * * * * * * * * * * * * * *

17                **MORNING SESSION**

18

19        Transcript of the proceedings taken in the above-

20   captioned matter on **Monday, October 29, 2001**, the Honorable

21   Jerry A. Brown, United States Bankruptcy Judge, presiding.

22   AUDIO OPERATOR:    Demond Smith

23   TRANSCRIPTIONIST:  Dorothy Bourgeois

24   Proceedings recorded by electronic sound recording,

25   transcript produced by transcription service.

1   APPEARANCES:

2

3       Baldwin & Haspel, L.L.C.
        By:  Dennis M. LaBorde, Esquire
        By:  Monica T. Surprenant, Esquire
4       1100 Poydras Street, Suite 2200
        New Orleans, Louisiana 70163-2200
5

6       and

7       Caplin & Drysdale
        By:  Nathan D. Finch, Esquire
        By:  Walter B. Sloccombe, Esquire
8       One Thomas Circle, NW
        Suite 1100
9       Washington, D.C. 20005

10      and

11      Caplin & Drysdale
        By:  Elihu Inselbuch, Esquire
12      399 Park Avenue
        New York, New York 10022
13
            Representing the Asbestos Claimants' Committee
14

15      Steffes & MacMurdo, LLP
        By:  William E. Steffes, Esquire
16      201 St. Charles Street
        Baton Rouge, Louisiana 70802
17
        and
18
        Blakeley & Blakeley
19      By:  Bradley D. Blakeley, Esquire
        230 Main Street, Suite 540
20      Irvine, California 92614

21          Representing the Unsecured Creditors Committee

22

        Law Office of Elizabeth Wall Magner
23      By:  Elizabeth Wall Magner, Esquire
        228 St. Charles Avenue, Suite 1110
24      New Orleans, Louisiana 70130

25          Representing the Unofficial Asbestos Committee

3

1 | APPEARANCES (Cont'd.):

2 |      Young, Conaway, Stargett & Taylor, LLP
        By:  James L. Patton, Jr., Esquire
3 |      By:  Richard Morse, Esquire
        By:  Edwin J. Harron, Esquire
4 |      11th Floor, Rodney Square North
        Wilmington, Delaware 19899-0391
5 |
        and
6 |
        Sessions, Fishman & Nathan
7 |      By:  J. David Forsyth, Esquire
        By:  Melissa M. Savoie, Esquire
8 |      201 St. Charles Avenue, 35th Floor
        New Orleans, Louisiana 70170-3500
9 |
            Representing Future Asbestos Claimants
10 |
        Kirkland & Ellis
11 |     By:  David M. Bernick, Esquire
        By:  John Donley, Esquire
12 |     By:  David Zott, Esquire
        By:  Paul Brown, Esquire
13 |     By:  Jason Zakia, Esquire
        By:  Ellis Leibenstein, Esquire
14 |     By:  Wayne Murphy, Esquire
        200 East Randolph Drive
15 |    Chicago, Illinois 60601

16 |     and

17 |    Heller, Draper, Hayden, Patrick & Horn, L.L.C.
        By:  William H. Patrick, III, Esquire
18 |     By:  Jan M. Hayden, Esquire
        By:  Warren Horn, Esquire
19 |    650 Poydras Street, Suite 2500
        New Orleans, Louisiana 70130-6103
20 |
            Representing The Babcock & Wilcox Company
21 |

22 |

23 |

24 |

25 |

4

1    APPEARANCES (Cont'd.):

2

3        Adams & Reese
         By:  John M. Duck, Esquire
4        One Shell Square, Suite 4500
         New Orleans, Louisiana 70139
5
         and
6
         Jenner & Block
7        By:  Daniel R. Murray, Esquire
         By:  Joel Africk, Esquire
8        One IBM Plaza
         Chicago, Illinois 60611
9
            Representing McDermott, Inc.,
10           Babcock & Wilcox Investments, et al

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5

1                          I N D E X

2

3    FREDERICK C. DUNBAR

     VOIR DIRE EXAMINATION BY MR. BERNICK . . . . . _. . . . . 7
4
     DIRECT EXAMINATION BY MR. BERNICK. . . ._. . . . . . . . 9
5
     CROSS-EXAMINATION BY MR. INSELBUCH . . . . . . . . . . 99
6

7    EXHIBITS:                          IDENTIFIED    RECEIVED

8    No. 5131      Bench Book               98           98

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Dunbar - Direct

1    Q.   I'm showing you 6080A.   Does this contain excerpts from

2    what Worldwide was saying during exactly the same period of

3    time?

4    A.   Correct.   Worldwide's observations, based upon both the

5    data that were coming in -- and this was actually claims filed

6    data as opposed to claims received -- and their discussions

7    with -- their daily discussions with plaintiffs' attorneys --

8    believed that the claims were on a persist downward trend.

9    Q.   Have you taken a look to see what other companies; that

10   is, other companies with asbestos liabilities, have you taken

11   a look to see what those other companies were reporting during

12   the same period of time, reporting publicly?

13   A.   Yes.

14   Q.   And, what was your observation there?

15   A.   Generally, the non-CCR companies were reporting that

16   claims were trending down after 1995.

17   Q.   Does Exhibit 6097 cover a few of the companies that were

18   reporting downward trends?

19   A.   Yes.

20   Q.   And, which were those companies?

21   A.   Foster Wheeler.   Foster Wheeler is very interesting.   It's

22   actually in the same business as Babcock & Wilcox.

23        Owens Corning and UNR and -- well, those three.

24   Q.   Now, if we take a look at Foster Wheeler, in particular,

25   have you prepared a chart that arrays Foster Wheeler's trend

FORM CSR - LASER    REPORTERS PAPER & MFG. CO.    800-626-6313

75

Dunbar - Direct

1   against the Babcock & Wilcox trend?

2   A.   Yes.

3   Q.   I'm showing you 6160.  Is this the chart?

4   A.   Yes, it is.

5   Q.   And, could you explain to the Court what is set forth in

6   this chart?

7   A.   From the publicly available information, we've

8   superimposed the Foster Wheeler claims experience on the

9   Babcock & Wilcox historic claims, plus the Babcock & Wilcox

10  forecast, and you can see from here that the Babcock & Wilcox

11  historic trends, plus their forecast, were tracking Foster

12  Wheeler.

13       The interesting aspect of this is that Foster Wheeler

14  also a boilermaker, in the same business as Babcock & Wilc

15  Q.   Okay.  So, we have a Babcock & Wilcox forecast and we have

16  a Foster Wheeler actuals, both before and after the forecast?

17  A.   Correct.

18  Q.   Did you also look to see what share prices; that is, what

19  the financial markets were doing with respect to this issue?

20  A.   Yes.

21  Q.   What was the analysis that you performed there?

22  A.   We looked at an index of share prices for publicly traded

23  firms that reported their asbestos liabilities verse an index

24  of share prices.  This is actually an analysis that is

25  dispositive to economists.

Dunbar - Direct

1  Q.  Okay.  And, what did you find?

2  A.  We found that the share prices of the companies that were

3  reporting asbestos liabilities diverged from the share prices

4  of other companies, non-asbestos companies, after 1998.

5      What this means is that prior to that divergence, very

6  well informed people in the market place were not expecting

7  the decline in the fortunes of the asbestos firms that

8  actually occurred.

9      There's a theory adopted by the Supreme Court, actually,

10  that share prices reflect accurately all publicly available

11  information.  And, the fact that later on these share prices

12  went down means that there is no way to forecast prior to

13  that, on the basis of public information, what was going to

14  happen to claims filed against these asbestos producers.

15  Q.  Now, you also analyzed the projected cost of resolving

16  claims, that is, claims cost, to see whether it was on

17  forecast?

18  A.  Yes.

19  Q.  I'm showing you 6065.  What did you conclude about whether

20  Babcock & Wilcox's forecast of cost of claim resolution, per

21  claim, whether it was being borne out or not?

22  A.  They were forecasting pretty high average, annual

23  increases at 10 percent, and those annual average increases

24  were actually a little higher than what was the experience of

25  Babcock & Wilcox.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

77

Dunbar - Direct

1   Q.  Have you prepared, at 6096A, a list or summary of the

2   facts that bear upon the reasonableness of Babcock & Wilcox's

3   estimate, as of July of 1998?

4   A.  Yes.

5   Q.  Going from the top, it says, "Filings on decline since

6   first quarter of 1995, 14 quarters."  Is that that same trend

7   line we've been talking about?

8   A.  Yes.  This is actually very important.  What Babcock &

9   Wilcox was observing was a peak, in 1995, and a downward trend

10  for 14 quarters.  That is quite inconsistent with the fixed

11  toward growing propensity to sue and non-malignant multipliers

12  that Dr. Peterson and Dr. Florence are using.

13  Q.  Okay.  Is this -- given the fact that it went on for 1

14  quarters, did you reach any conclusion about whether it wa

15  transitory, long-term, given the information that was

16  available at the time?

17  A.  Given the information that was available at the time, the

18  information that was coming in from Worldwide, the information

19  that was coming in from other asbestos producers, there was no

20  reason, as of June of 1998, for Babcock & Wilcox to believe

21  that its March 1997 forecast needed to be adjusted.

22  Q.  The actual results were consistently in line with the

23  March 1997 forecast.  Have you covered that?

24  A.  Yes.

25  Q.  Other companies were reporting declining claim filings.