# EXHIBIT C

```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE

IN RE:                              :    Chapter 11
                                    :
W.R. Grace & Co., et al.,           :
                                    :
         Debtor(s).                 :    Bankruptcy #01-01139 (JKF)
.............................................................

                             Wilmington, DE
                             July 22, 2002
                               9:56 a.m.

                      TRANSCRIPT OF MOTIONS HEARING
               BEFORE THE HONORABLE JUDITH K. FITZGERALD
                    UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtor:                         David W. Carickhoff, Jr., Esq.
                                    Pachulski, Stang, Ziehl,
                                    Young & Jones
                                    919 North Market Street
                                    Wilmington, DE 19801

                                    James W. Knapp, Esq.
                                    Kirkland & Ellis
                                    200 E. Randolph Drive
                                    Chicago, IL 60601

                                    David Bernick, Esq.
                                    Kirkland & Ellis
                                    200 E. Randolph Drive
                                    Chicago, IL 60601

                                    Janet S. Baer, Esq.
                                    Kirkland & Ellis
                                    200 E. Randolph Drive
                                    Chicago, IL 60601
```

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

1  and an Order attached in advance.
2          MR. BERNICK: Right.
3          THE COURT: And 9 is --
4          MR. BERNICK: Is continued as well.
5          THE COURT: Because this will be the budget issue
6  that we've worked --
7          MR. BERNICK: Right.
8          THE COURT: -- out.
9          MR. BERNICK: And by way of completeness, Your Honor,
10 I suppose that what was formerly Item 4, which was our budget,
11 also is continued.
12         THE COURT: Okay. All right. Thank you. Now I'm
13 caught up.
14         MR. BERNICK: Okay. Now it brings us up to 10, and
15 I'll let others speak to 10.
16     (Counsel confer)
17         MR. BERNICK: Your Honor, could I ask the Court's
18 indulgence? If we could try to wind up matters that relate to
19 the -- getting to the ZAI trial, then come back to the others?
20         THE COURT: That's fine.
21         MR. BERNICK: And that would require that we go to
22 Item #13.
23         THE COURT: Okay.
24         MR. BERNICK: And with respect to Item #13, and I'll
25 look forward to hearing from Mr. Westbrook on this, with

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0791

1  respect to Item 13, the basic problem I think really has been
2  long ago resolved. It's just a question of getting an Order
3  entered that sets it down in writing. With the parties'
4  concurrence. We've known since March that this is going to be
5  a science trial. You said that in March, you said it in
6  April, you said in May, you said it in June. And last month
7  you entered an Order, the Order denying the claimants' Motion
8  to Strike and scheduling certain matters in connection with
9  the ZAI proofs of claim. That Order reiterated on no less
10 than nine different occasions that what we were gonna have was
11 a science trial. So one thing should be clear is that we're
12 gonna have a science trial. That's what it's gonna be about.
13        The problem has been to get a schedule and a recital
14 of the scope of discovery which really is tailored to that
15 science trial. It's -- and we haven't been successful so far
16 and we've been at it for over 3 months now. April 5, I wrote
17 to propose a schedule and a scope of discovery, way back at
18 the beginning, early part of April. On April 17, Mr. Sobel
19 wrote back, raised only two issues, one was the timing of
20 certain expert reports and the other was the scope of
21 discovery issue. At the April 22nd hearing, after we got done
22 with one of our debates about the overall approach, we talked
23 specifically about these two matters, both those matters, that
24 is, the timing of the expert reports and the scope of expert
25 discovery, and I indicated that there was a desire on the part

of the claimants to deal not only with science, but also with other liability issues. And Your Honor commented at that time that you didn't see that that was necessary in light of the fact that we were going towards a science trial.

I was given the task of preparing an Order. That Order was prepared. And at the May hearing, we went over the Order, and the Order tracked the letter that I had written, precisely, accepted it, made the change on the timing of the expert reports, and the -- whether -- the Order also tracked the letter precisely in saying that discovery would be limited to matters that relate to whether ZAI creates an unreasonable risk of harm to occupants of these buildings.

At that hearing, there was some discussion specifically on the issue of the scope of discovery, and Mr. Sobel spoke to that matter and Your Honor suggested the deletion of certain language, where it said "two occupants," that is harmed two occupants, so that we could deal with harm to potentially others. But with that one correction, it was still basically the same scope of discovery, that is, matters relating to whether there's an unreasonable risk of harm from ZAI.

I urged Your Honor at the May hearing to enter that Order so that we could get going, and Mr. Sobel urged the Court not to do that so that new counsel could be put in place. And for that reason, I believe that reason alone, the

1  entire matter has now been continued for 60 days till we're
2  here today. But we're still wrestling with the same -- trying
3  to get the same Order that we've been trying to deal with
4  since May.
5      What has now happened? Well, they do have new
6  counsel. Mr. Westbrook. And unfortunately at the meet and
7  confer that took place, per Your Honor's instruction on this
8  matter, it was old counsel, it was Mr. Sobel and others, who
9  were all speaking to the issue once again and saying that they
10 should not be limited in this proceeding or discovery to the
11 science of ZAI. That was the position that they took. In an
12 effort to compromise further, albeit still stay true to the
13 spirit of what we're trying to accomplish, I agreed even to
14 change the language of the Order so that we said, "discovery"
15 -- "the scope of discovery will be limited to what science
16 demonstrates with regard to whether ZAI creates a risk of
17 harm," so that there wouldn't be any legal label in there, it
18 would just be a subject matter. And with that one correction,
19 we have now submitted, again, the Order to the Court that,
20 again, has the same schedule as before, bumped off 60 more
21 days at the Court's instruction, and also recites that the
22 discovery should be limited to what's appropriate for a
23 science trial, which are matters relating to what science has
24 to say about the risk of ZAI.
25     So that is where we have finally come. They have

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191

1  submitted an Order that basically retrenches on these same
2  issues all over again. They recite a litany of issues
3  relating to (quote) "liability" that they want to pursue here,
4  and they don't even want to be limited by that list. So you
5  go through their proposed Order. Sure it's risk, sure it's
6  contamination, but it's whether there's property damage, it's
7  whether there's impact on the value of the properties that are
8  involved, it gets into remediation -- a whole series of other
9  issues that are not the ZAI science issue. So once again,
10 we're now talking about are we gonna have the ZAI science
11 trial, or is it gonna be something that's different.
12         Their schedule also unilaterally moves the entire
13 schedule back 90 days. Now, I had already moved it back 60
14 days. They want 90 days on top of that. Your Honor, it is of
15 critical importance, Your Honor, especially in light of the
16 comments that have been made about whether this case is
17 moving, this case must move on parallel tracks and this track
18 is substantially, substantially delayed. We want to get to
19 that trial. There's no reason we can't get to that trial
20 promptly. Your Honor has said repeatedly what it's to be
21 about, and this very Order has now been before the Court,
22 this'll be the third time, essentially, that these matters are
23 before the Court.
24         THE COURT: Well --
25         MR. BERNICK: So we ask that the Court enter the

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191

1   order that we've tendered.
2       THE COURT: I think I'm having a little bit of a --
3   maybe it's a theoretical problem, but I agree that what I want
4   to find out first is whether there is any scientific evidence
5   that Zonolite causes some unreasonable risk of harm. Having
6   -- and I think that's the floor. Because if there is no
7   unreasonable risk of harm, then all of the damage issues don't
8   need to be litigated.
9       MR. BERNICK: Correct.
10      THE COURT: So I don't want to get to damage issues
11  now, because I don't think it's necessary to get to those
12  issues --
13      MR. BERNICK: Right.
14      THE COURT: -- now. Unless you can't prove the
15  unreasonable risk without also showing the damage. I -- most
16  liability trials like this bifurcate the concept of liability
17  from damage, and it seems to me we're looking at, in phase
18  one, liability. But we're looking at only a subset of
19  liability, which is whether the experts are going to be able
20  to demonstrate that under any theory there is the possibility
21  that Zonolite caused an unreasonable risk of harm. If the
22  determination is yes, then I think the claimants have to prove
23  under what theory the particular claimant suffers some harm,
24  and then show damages. But don't we have to get to the issue
25  first of whether there is an unreasonable risk of harm? I am

Writer's Cramp, Inc.
Certified Court Transcribers
732-929-0191

1  looking for a narrow, focused trial on that subject matter.
2  That's what I was attempting to get to.
3         Now, I don't know --
4         MR. BERNICK: Yeah. Our --
5         THE COURT: -- where the Debtor stands, I don't know
6  where other Committee stands. That's what I thought would
7  make a logical litigation strategy.
8         MR. BERNICK: That's where we've been ever since you
9  suggested it in March. That's why we came up with the idea of
10 having the claimants come before the Court to create, really,
11 a real litigation basis for -- an arena for dealing with that
12 issue, and in every single letter and Order that we've crafted
13 in order to get a schedule put in place that defined what the
14 discovery's to be about and what the schedule should be,
15 that's exactly where we've been. Issues about what the
16 particular legal standard might be in a particular state with
17 respect to a particular individual will presumably (a), be
18 relevant to whether you can certify any kind of class at all,
19 but (b), be relevant when somebody actually files a claim.
20 There'll be particular claims that'll be made under the laws
21 of particular states.
22        What we're trying to isolate is a core body of
23 evidence that will be informative to the Court on whether
24 there really is a problem with this product, and further
25 informative to the Court's decisions about how to deal with

1  it.  Do you deal with it with -- through class?  Do you deal
2  with it through a notice and bar date program?
3       So all that we want to get to is enough of a generic
4  description so that at least we're not pursuing discovery into
5  historical matters or property value and damage matters.
6  We're pursuing discovery that's focused on the science.  And
7  that's what we said in our letters and our Orders ever since,
8  and our Order that we've tendered to the Court that's on the
9  agenda says precisely that.  "Discovery on what science
10 demonstrates with regard to the risk of harm from ZAI."
11 That's what it says.  And on the schedule, same sequence, same
12 dates, pushed back 60 days, consistent with exactly what Your
13 Honor said last time.
14      THE COURT:  Mr. Westbrook?
15      MR. WESTBROOK:  Yes, Your Honor.  Your Honor, I
16 certainly agree that the focus should be on the science, but I
17 think we need to keep our eye on the ball.  This is not a fear
18 of cancer claim.  I know Grace wants to portray it as a quasi-
19 personal injury type of claim.
20      We listed a number of issues in our proposed Order
21 and we certainly intended them as science issues, Your Honor,
22 and just some examples.  Can installation of ZAI contaminate
23 properties with asbestos fibers?  That's gonna require
24 science.  Can asbestos fibers be released during foreseeable
25 use of the attic and other spaces over the lifetime of a

1  property with ZAI? Can asbestos fibers release during
2  foreseeable use of ZAI settle on surfaces in the property
3  causing contamination? Et cetera, et cetera. These are the
4  issues that we see, Your Honor, need to be addressed. These
5  are the issues for 15 or 20 years I have been addressing in
6  traditional asbestos property damage claims, and for that same
7  period of time, we have always butted heads with the
8  defendant. They want to make it a personal injury -- quasi-
9  personal injury case. It's not that. The building is the
10 subject here. If the building is contaminated with asbestos
11 fibers, the owner has a property damage claim.
12        Now, the owner may also have a fear of cancer claim,
13 but we're not here to discuss that. The owner may also have
14 some other claim. We're not here to discuss that. We need to
15 keep our eye on the ball, because if we get off to what people
16 fear about this and that, we are going to be a long way down
17 the road and not get anything accomplished. If we keep our
18 eye on the ball of the building, which the Courts have said
19 that's the issue, and the contamination, we'll get there.
20        So, Your Honor, I don't think that -- I don't intend,
21 certainly not intending to go into issues that are non-science
22 issues. We certainly may have a disagreement with Grace about
23 what the science should be. They're gonna want to focus on
24 whether people are gonna get sick and drop dead like flies
25 from this -- this situation. We're going to focus on are the

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
732-329-0191

1    -- do the buildings have a problem.
2         The Court said back in April, April 22nd, that you
3    were looking for a scientific basis for an injury of whatever
4    nature. On March 18th, you said you want to find out if
5    Zonolite is really creating some sort of a problem in a
6    building. You said the litigation is essential, and we know
7    that for the state to know how it's going to wrap up, and you
8    said, you want to get liability on the hazardous nature of the
9    product determined. Certainly, whether asbestos -- whether
10   ZAI is innocuous or not is going to be an issue, but we need
11   to focus on whether -- ZAI can release asbestos, whether
12   that's a innocuous problem, whether it's a hazard, potential
13   hazard, but we don't need to be talking about people's fears,
14   about how many people are going to get sick from this or that.
15   That's not the issue. The issue has got to be the building,
16   and we're certainly willing to work with Grace on framing
17   those issues, but I don't want to leave any impression today
18   that the issue in this case from our standpoint should be
19   anything other than whether these buildings have a
20   contamination problem, now, or in the context of this
21   bankruptcy, is such a problem inevitable?
22        THE COURT: Well, I mean, buildings can have a
23   contamination problem without being damaged as a result of the
24   contamination. If nobody -- if there is no damage as a result
25   of the fact that the building is contaminated, the building

Writer's Cramp, Inc.
Certified Court Transcribers
732-529-0191

1  itself doesn't suffer damage. If there is a risk that the
2  building can't be resold because it's contaminated with
3  something that a person views as a hazardous product, that's
4  one thing, but the building itself doesn't have that claim. I
5  think the claim is, and I think where you're going to go with
6  this, is -- maybe I'm incorrect, so that's why I'm raising
7  this issue to find out -- is if in fact Zonolite does release
8  fibers, then the question is, are those fibers dangerous? And
9  if they are, okay, then at some point you're probably going to
10 have both property damage and personal injury claims. And I
11 agree with you, we're not going there now. So the question
12 is, can they release? But the second question is, so what if
13 they can release? Is there a harm incident to that release?
14         So I don't know that I disagree with your list of
15 issues. I'm not sure it's necessary for me to state them now.
16         MR. WESTBROOK: I think, Your Honor, we're on the
17 same wavelength.
18         THE COURT: Mr. Bernick?
19         MR. BERNICK: That's -- I -- I was gonna come to the
20 same basic observation. Obviously, if there's contamination,
21 you do get to the sequence of questions that we just focused
22 on. But it's contamination, then, is there in fact an
23 unreasonable risk of harm?
24         THE COURT: Right.
25         MR. BERNICK: Is it gonna be harmful or hazardous?

Writer's Cramp, Inc.
Certified Court Transcribers
732-529-0197

1  And if that's what we're focused on here, that's fine. That's
2  what our Order seeks to pick up by saying what does science
3  have to say about whether ZAI causes or is associated or has
4  an unreasonable risk of harm. Obviously, in some of the
5  circumstance where people are exposed to it, that's where you
6  examine it. Their Order goes way beyond that. Their Order
7  gets into impact on property values, whether homeowners and
8  occupants are aware of the potential for asbestos
9  contamination, what kind of remedial measures might be
10 involved? That's where we fall off the wagon and say, nah,
11 that gets into the question of under what kinds of
12 circumstances may there be damages? But -- and it's not
13 relevant at this point in time.
14        If what we're talking about here, again, is the
15 properties, the product, whether there is contamination that's
16 associated with it, and then the consequences of that
17 contamination in terms of health risk or hazard, I think we're
18 all reading off the same page, and I think that all of those
19 are perfectly encompassed by the descriptor that we made
20 deliberately broad in our proposed Order, which is what does
21 science have to say?
22        THE COURT: Mr. Westbrook, why don't I try it with
23 the general parameter the way the Debtor has proposed it, and
24 if in fact you get into some discovery dispute over what the
25 appropriate scope is, I think you can raise it at that time?

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
732-329-0191

1  As I said, I don't necessarily disagree. I don't think we
2  want to go to damages. And I don't think we want to go to
3  state statute liability at this point. That will obviously be
4  necessary at some point if there is some scientific evidence
5  that asbestos fibers in Zonolite products do pose an
6  unreasonable risk of harm. But I really want to limit this
7  trial to that issue. That's number one.
8       Number two, the budget that I'm keeping your feet to
9  the fire on probably isn't going to support much more than
10 that anyway. So, I think maybe it would be a good idea to
11 limit the scope to that issue.
12      MR. WESTBROOK: Yes. Your Honor, the language is not
13 necessarily the problem, as long as we have an understanding
14 that from out standpoint at least, what we're focusing on is
15 the building and contamination of the building and whether if
16 asbestos in a building is not from ZAI, is not innocuous,
17 whether there's a cost to clean that up now or down the road.
18 That's what we're concerned about, the contamination and
19 whether something has to be done about it.
20      MR. BERNICK: That's the problem is that of course if
21 you said about the -- what's it take to clean it up, it's
22 always gonna cost something to clean it up. The question is
23 whether it's necessary to clean it up. That's the question of
24 liability and question of damages is a clean-up question,
25 that's for later on.

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191

87

1   THE COURT: All right. That I agree with. I don't
2   think we want to go to the question of how much does it cost
3   to clean it up, yet. I think what we want to go to is, is it
4   necessary or even advisable to clean it up, and possibly, what
5   are alternative methods, because that may also affect damages.
6   But, for example, the Debtor may say that it can be
7   encapsulated and your position may be no, the building has to
8   be torn down. Somewhere in between may be a reasonable scope.
9   I don't know. I don't know anything about this yet. I'm
10  hoping you're going to inform me about it as we go on. So,
11  these comments are not judging anything. I'm just
12  hypothesizing that there could be a lot of things that come
13  out at this trial, and I don't think it's necessary to get to
14  the aspect of damages yet.
15      MR. WESTBROOK: Okay. That's fine, Your Honor. I
16  think the language with that understanding, the language
17  doesn't bother us, as long as it doesn't come back at some
18  hearing in some limitation on what we're trying to discover.
19      THE COURT: Well, if it does, and you disagree with
20  it, you'll file some motion and it'll get heard.
21      MR. WESTBROOK: Thank you, Your Honor.
22      THE COURT: All right. Can you live with the
23  schedule that the Debtor has proposed now? This is -- fact
24  discovery ends December 2, expert disclosure is January 2 by
25  the ZAI claimants and by Grace January 31, depositions of ZAI

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
732-329-0191

88

1  experts from February 3 to February 28, and of Grace's experts
2  from March 3 to March 31. The Debtor will file a Rule 42
3  consolidation motion by April 30. The claimants' response due
4  May 26th. Debtors reply June 6. If you can live with those
5  schedules, I'll tell you now when the argument will be.
6      MR. WESTBROOK: Your Honor, on the fact discovery,
7  and again coming back to my point that fact discovery against
8  Grace has been suspended for 14 months, we thought that fact
9  discovery could go on and should go on -- I think at one
10 hearing the Court said you wanted fact discovery to wind up by
11 the end of the year. Well, Grace moved it back to December
12 2nd. We had proposed February 28th. If we could move it at
13 least until the end of January to give us a bit more time on
14 fact discovery.
15     MR. BERNICK: Well the -- I'm sorry. The difficulty
16 with that is that you then have fact discovery overlapping
17 with the expert discovery. You know, I -- this all comes --
18 this -- these dates, this sequence, the intervals, were
19 specifically gone over in April and May and were satisfactory
20 to the claimants at that point in time. And I can understand
21 if there's a desire for a slippage of, you know, a week, or
22 two or three or maybe even 30 days, but 60 days and then that
23 screws up the expert sequence, I don't think is necessary.
24     THE COURT: Well, why don't I do this? It seems to
25 me that I did say by the end of the year, so let's change fact

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191

```
 1   discovery to December 31. We'll make the ZAI claimants'
 2   experts reports due by January the 15, Grace's by January 31,
 3   and that keeps the rest of your schedule in place.
 4           MR. WESTBROOK:  That's fine.
 5           MR. BERNICK:  We can live with that, Your Honor.
 6           THE COURT:  All right. If that's the case,
 7   argument's going to be in Pittsburgh on June 30th and July 1st
 8   of 2003.
 9       (Pause in proceedings)
10           MR. BERNICK:  I think that that's all on that.
11           THE COURT:  All right. One second.
12       (Pause in proceedings)
13           THE COURT:  Okay.
14           MR. BERNICK:  Okay. Actually, the last of the ZAI
15   matters is the Motion for Leave to Appeal, which is Item 11.
16   And maybe once we get done with that we'll be totally done
17   with ZAI for today.
18           THE COURT:  Well, actually, I think that Motion has
19   to be heard by the District Court. Rule 8003 simply directs
20   me to get responses in and transmit everything to the District
21   Court. So, I've gotten response, the Debtor's the only one
22   that filed everything -- anything, so I'm now going to
23   transmit it to the District Court and I think the District
24   Court has to hear it.
25           MR. BERNICK:  Okay.
```

Writer's Cramp, Inc.
Certified Court Transcribers
732-529-0191