**EXHIBIT "B"**

**SUMMARY OF PRINCIPAL SERVICES RENDERED FOR THE PERIOD**
APRIL 1, 2002 THROUGH JUNE 30, 2002

1.   Case Administration – 15537 – 149.64 hours ($30,023.90)

This matter covers the attention given to routine motions and pleadings, and preparation of responses thereto, the preparation of summaries and analyses of such papers for the PD Committee, and meetings with the Debtors or their professionals.

The Applicant's focus on the administration of the Consolidated Cases during the Application Period continued to permit the PD Committee to remain fully informed about all on-going matters pending in the Consolidated Cases.

During the Application Period, continued significant progress was made with respect to the Debtors' proposed case management procedures. The Applicant spent substantial amounts of time preparing for the last scheduled hearing on the Debtors' highly contentious case management motions, including reviewing the relevant case law, precedent notice programs and proof of claim forms being advocated by the Debtors. The Applicant continuously discussed multiple strategic alternatives to the notice program, bar date and the proof of claim form with members of the PD Committee and experts engaged by the PD Committee to advise on such issues.

Oral argument on the proposed case management motions continued during the April omnibus hearing. At the hearing, the Applicant, on behalf of the PD Committee, successfully argued many of its line-by-line objections to the Debtors' proposed asbestos property damage proof of claim form. In addition, the Applicant reviewed and analyzed the most recent draft of the proposed notice program for all property damage claims other than Zonolite Attic Insulation claims.

In order to facilitate the Court's analysis of the Debtors' proposed notice program, the PD Committee directed the Applicant to explore with the PD Committee's notice expert, Todd Hilsee, the effectiveness of the Debtors' notice program with respect to residential claimants. Thereafter, the Applicant drafted a letter to the Debtors' counsel explaining its concerns over the ineffectiveness of the proposed program with respect to such issue. At the conclusion of the hearing, Judge Fitzgerald entered an order establishing a bar date and approving a proof of claim for asbestos property damage claims (the "Bar Date Order").

At the PD Committee's request, the Applicant provided advice to the PD Committee with respect to procedural aspects an appeal of the Bar Date Order. Thereafter, at the PD Committee's direction, the Applicant drafted and filed a motion for leave to appeal the Bar Date Order.

In addition, during the Application Period, the Applicant discussed with the PD Committee the issue of forming an additional committee to represent malignant personal injury claimants. Thereafter, the Applicant drafted a letter to Frank J. Perch from the Office of the United States Trustee setting forth the PD Committee's position. The Applicant also carefully reviewed the positions of the Debtors and the other official committees appointed in the Consolidated Cases with respect to such issue and provided advice and recommendations to the PD Committee thereon.

Judge Wolin convened a chambers conference to address the issues related to the handling of asbestos personal injury claims. At the conference, Judge Wolin set out a briefing schedule for the parties involved. As a result, the Applicant began performing research and formulating its advice to the PD Committee with respect to its position on the estimation/liquidation of personal injury claims. Thereafter, the Applicant reviewed and began to analyze the Debtors' submission of the proper protocol for asbestos personal injury claims.

In addition, during the Application Period, the Applicant fielded phone calls from potential property damage claimants. Generally, the Applicant explained the history of the Consolidated Cases to these claimants as well as the process that they must follow in order to participate in these Consolidated Cases.

Further, the Applicant was contacted by counsel to property damage claimants regarding certain unclear provisions in the Bar Date Order regarding the apparent necessity to provide the Debtors' with a certification that such attorney contacted its clients to inform them of the Bar Date, or in the alternative, provided the names of such attorney's clients to the Debtors in order to permit them to contact the clients about the Bar Date. As a result of these inquiries, the Applicant drafted and filed a motion for clarification of the Bar Date Order with respect to such provisions. This motion was successfully argued subsequent to the Application Period.

The Applicant also reviewed and analyzed the proposed stipulations between (i) the Debtors and National Union Fire Insurance; and (ii) the Debtors and Honeywell Corporation. The Applicant carefully monitored the status of PricewaterhouseCoopers' retention and the objections thereto filed by the United States Trustee.

2.  Debtors' Business Operations – 15538 - 14.5 hours ($3,068.50)

This matter covers the attention given to review and analysis of the Debtors' statement of affairs, schedules of assets and liabilities, monthly reports of operations and their Securities and Exchange Commission filings.

During the Application Period, the Applicant participated in a brief discussion with the PD Committee's financial advisors, Conway, Del Genio, Gries & Co., LLC ("CDG") regarding a meeting they had with the Debtors' financial advisors concerning a proposed revised key employee retention program. Thereafter, after receiving the Debtors' motion to revise the

existing key employee retention program, the Applicant discussed the contents thereof with the CDG and the PD Committee. The Applicant drafted an objection to the Debtors' motion, which objection was filed with the Court subsequent to the end of the Application Period.

In addition, the Applicant reviewed the Debtors' reports of *de minimus* asset sales and settlements.

3.      Creditors Committee – 15539 – 26.1 hours ($7,370.50)

This matter covers formation, membership, and by-law issues of the PD Committee. It also covers attendance at PD Committee meetings, preparation of materials for and presentations thereon to the PD Committee, and the preparation of minutes of the meetings.

During the Application Period, the Applicant convened weekly telephonic meetings of the PD Committee. The Applicant prepared detailed agendas for each meeting, reviewed pending matters and issues in preparation therefor, and counseled the members in formulating a position on such matters and positions. Further, subsequent to the meetings the Applicant drafted, and circulated for review prior to adoption, drafts of minutes of the PD Committee meetings.

Throughout its representation of the PD Committee, the Applicant has aggressively and attentively represented the interests of the PD Committee. Assuming the role of liaison, the Applicant has continued to maintain continuous communications with the Debtors' counsel and PD Committee members and, at times, counsel to the personal injury claimants committee and counsel to the unsecured creditors' committee. The Applicant timely and professionally relayed information to PD Committee members through in-person meetings, telephone conference calls, e-mail and correspondence.

4.      Retention of Professionals – 15540 – .6 hours ($114.00)

This matter covers the retention of professionals by the PD Committee or the Debtors, including interviews, discussions, motions and objections.

During the Application Period, the Applicant reviewed, analyzed and provided advice to the PD Committee with respect to the United States Trustee's objection to the Debtors' application to employ Price Waterhouse.

5.      Court Appearances – 15544 – 34.0 hours ($12,290.00)

This matter covers preparation for and attendance at omnibus court hearings and status conferences.

During the Application Period, the Applicant prepared for, attended, and actively participated each of the omnibus hearings held during the Application Period. The April 18, 2002 hearing was attended by Mr. Scott L. Baena and Mr. Jay M. Sakalo, the attorneys who have principally handled all issues related to case management issues. During the hearing, Mr. Baena presented the PD Committee's arguments against certain portions of the Debtors' proposed case management procedures. Prior to the hearing, Mr. Sakalo was responsible for, among other things, interfacing with the PD Committee's notice expert with respect to the PD Committee's objection to the notice program. His attendance was necessary, for among other reasons, to handle any specific issues that may have arisen with respect to the notice program.

The May 20, 2002 hearing was also attended by Mr. Sakalo. On that same day, Judge Wolin had scheduled a chamber's conference in Newark, N.J. in the United States Gypsum Corporation bankruptcy case, in which the Applicant represents the asbestos property damage committee. In order to assure coverage at both hearings, both Mr. Baena and Mr. Sakalo were in Delaware, with the expectation that one of them would need to leave to travel to Newark for the

United States Gypsum conference. As it turned out, the Grace hearing began 3 and ½ hours later than its scheduled starting time. Thus, the Applicant utilized that time to hold a meeting with members of the PD Committee that were also in Delaware. Thereafter, Mr. Baena departed for Newark, and Mr. Sakalo attended the hearing.

Mr. Baena attended the June 18, 2002 omnibus hearing in Wilmington.

In addition, as stated above, the Applicant attended a conference with Judge Wolin to discuss asbestos personal injury case management issues.

6.    Fee Applications – 15543 – 65.8 hours ($9,529.00)

This matter covers time expended preparing fee applications for the Applicant, the applications for reimbursement of expenses of PD Committee members or professionals, and reviewing, and objecting if necessary, to fee applications of others.

During the Application Period, the Applicant expended time preparing, drafting and filing its ninth and tenth interim fee applications, and fourth quarterly fee application, and the related application for reimbursement of expenses of PD Committee members.

The Applicant also assisted the PD Committee's financial advisors, CDG, with finalizing their fee applications during the Application Period.

7.    Travel – 15546 – 66.3 hours ($24,027.50)

The Applicant traveled to Wilmington, Delaware to attend the omnibus hearings in April, May and June, 2002. In addition, the Applicant traveled to Washington, D.C. for a meeting with co-counsel with respect to the fraudulent transfer action against Sealed Air Corporation.[1] Further, the Applicant traveled to Newark, New Jersey for multiple hearings and chamber's conferences with respect to the fraudulent transfer actions. In accordance with Local Rule 2016-

---

[1] See Footnote 1.

2(d)(viii), all such time is being billed at fifty percent (50%) of regular hourly rates, to the extent work was not being performed en route.

8. Litigation Consulting – 15563 – 66.6 hours ($19,165.50)

This matter covers the analysis of litigation claims, other than the fraudulent transfer claims, including strategic motions contemplated or conceptualized by the PD Committee.

During the February omnibus hearing, the Debtors informed the Court that they had filed proofs of claim on behalf of all of the named plaintiffs in all pending Zonolite Attic Insulation ("ZAI"). Thereafter, counsel for the ZAI claimants filed a motion to strike the proofs of claim. The Applicant carefully monitored and analyzed these papers and provided advice to the PD Committee with respect thereto. In addition, the Applicant researched the decisional and statutory law governing the filing of proofs of claim by a debtor on behalf of contingent, unliquidated unsecured creditors in order to provide advice and recommendations to the PD Committee.

The Court ruled on the permissibility of the filing of the proofs of claim by the Debtors, concluding that it was permissible. Thereafter, the Court ruled that a "science" trial would be held and that the ZAI claimants would, at the option of the ZAI claimants and the PD Committee, be represented in such trial by either Special Counsel or counsel to the PD Committee, and that the Debtors would be responsible for bearing the fees and costs of such counsel, subject to the approval of a budget by the Court. Thereafter, the Applicant convened a meeting of the PD Committee to discuss the issues related to the Court's ruling. Since the PD Committee is barred from representing individual claimants in the Consolidated Cases, the decision was made that Special Counsel would be necessary to represent the ZAI claimants. Thereafter, the Applicant, on behalf of the PD Committee, and at the Court's direction, drafted a

motion to retain the Special Counsel that were proposed by the ZAI claimants on whose behalf the Debtors filed proofs of claim.

The Applicant also carefully reviewed the various papers that were filed subsequent to the Debtors filing proofs of claim on behalf of the ZAI claimants, including, the motion to strike the filing of such claims, the Debtors' omnibus objection to the proofs of claim, and the proposed budgets for the Debtors' counsel and ZAI Special Counsel with respect to the "science" trial.