IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (RJN) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**DEBTORS' OBJECTION TO THE RESPONSE OF ZAI CLAIMANTS'
WITH RESPECT TO THE SCHEDULING ORDER FOR
THE ZONOLITE ATTIC INSULATION SCIENCE ISSUES
(RELATED TO DOCKET NOS. 2590 AND 2621)**

1.   On July 22, 2002, the Court entered the Order Setting Initial Schedule for Litigation Concerning Zonolite Attic Insulation Science Issues (the "Scheduling Order"). The Scheduling Order was an order that had been negotiated with the ZAI Claimants and discussed with the Court *at nausea* at the Omnibus hearings on April 22, 2002, May 20, 2002 and July 22, 2002. At every turn, the ZAI Claimants have attempted to try and change the scope of the science trial into something other than what the Court contemplates. And at every turn, the

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Court has made it clear that the science trial is to focus on whether ZAI poses an unreasonable risk, and no more.

2. There is no doubt that the Scheduling Order was entered on July 22, 2002. The Order entered was the draft Order filed by the Debtors on July 15, 2002 (Docket No. 2375), with minor revisions made by the Court with respect to dates. This draft was essentially the same order filed by the Debtors on April 26, 2002 (Docket No. 1981) but with the dates pushed back approximately 60 days as required by the Court to reflect the delay occasioned by the need for the ZAI Claimants to appoint Special Counsel.

3. Unfortunately, the signed and Court-marked version of the Scheduling Order has been lost. The ZAI Claimants are now trying to take advantage of that loss to renegotiate or modify the terms of the Order. This is outrageous and professionally irresponsible. The Scheduling Order was negotiated, discussed at length at numerous hearings and ultimately ruled upon by the Court and entered. It is time to move on with the schedule.

### Argument

4. On July 22, 2002, the Court entered the Scheduling Order. The Scheduling Order entered was in the form presented by the Debtors to the Court. At that time, the ZAI Claimants urged the Court to enter their version of the order. The Court denied that request:

> THE COURT: Mr. Westbrook, why don't I try it with the general parameter the way the Debtor has proposed it, and in fact if you get into some discovery dispute over what the appropriate scope is, I think you can raise it at that time?

(July 22, 2002 Transcript at p. 85) (Exhibit A).

-2-

5. The major change that the ZAI Claimants urged on the Court at the July 22, 2002 hearing was with respect to the definition of the scope of discovery. The Scheduling Order provides that "…[F]act discovery shall be limited to the issue of what science demonstrates regarding the health risks of exposure to ZAI …." The ZAI Claimants, on July 22, 2002, urged entry of an order that contained a laundry list of issues for discovery and trial, many of which went to damages. The Court refused to enter the Claimants' proposed order:

> "…I don't think we want to go to damages. And I don't think we want to go to state statute liability at this point. That will obviously be necessary at some point if there is some scientific evidence that asbestos fibers in Zonolite products do pose an unreasonable risk of harm. But I really want to limit this trial to that issue."

(July 22, 2002 transcript at p. 86).

6. On August 6, 2002, apparently upon discovering that the July 22, 2002 Scheduling Order had not been entered on the Court's docket, the ZAI Claimants lodged another order with the Court. This order again urged the Court to redefine the scope of the trial as well as broaden the claims to be reviewed by the Court. Specifically, the ZAI Claimants urged that the litigation concerning the Debtors' ZAI product not be limited initially to the 10 individual claims filed by the Debtors on April 12, 2002 as amended and objected to by the Debtors. Again, the Court denied the ZAI Claimants request when it came before the Court at the August 26, 2002 hearing and the ZAI Claimants acknowledged the ruling as being no problem:

> THE COURT: Well, I'll rule on the relevance of various issues when I see the context in which it's offered at trial. But in terms of looking at what Claimants are actually involved in the case as main Defendants to the Debtor's actions to object to claims, the only ones I know that I have are those 10. Because I'd be happy to expand the universe. I'd like to get everybody in here so we only

> have to do this once clearly, and combine everybody for sure, without any appellant issues on those points. But I don't think that's the way I can rule given the context of the trial.
>
> MR. WESTBROOK: Your Honor, Mr. Bernick points out that his language specifically is that claim litigation is limited. But that is not necessarily a limitation on the evidence. So we may not have a problem.

(August 26, 2002 transcript at p. 60) (Exhibit B).

7.  In the order submitted by the ZAI Claimants on August 6, 2002, the ZAI Claimants also sought to redefine, once again, the scope of discovery. The language urged by the ZAI Claimants in the August 6, 2002 draft order defined the issue as: "what science says about whether ZAI causes, in the context of a property damage claim, an unreasonable risk of harm." However, in their August 30, 2002 Response to the Debtors' Certification of Counsel with respect to the Scheduling Order (the "Response") (Docket No. 2621), the ZAI Claimants submitted yet a third version of the Scheduling Order. In the newest version of the order, the ZAI Claimants, once again attempt to redefine the scope of discovery, this time to the following: "what science demonstrates regarding ZAI in the property damage context."

8.  The Court already ruled on July 22, 2002 that the definition of the scope of discovery described by the Debtors was appropriate. In fact, in the discussion of the issue, the Court specifically disagreed with the distinction the ZAI Claimants are apparently attempting to draw:

> MR WESTBROOK: ... The issue has got to be the building, and we're certainly willing to work with Grace on framing those issues, but I don't want to leave any impression today that the issue in this case from our standpoint should be anything other than whether these buildings have a contamination problem, now, or in the context of this bankruptcy, is such a problem inevitable?

-4-

> THE COURT: Well, I mean, buildings can have a contamination problem without being damaged as a result of the contamination. If nobody – if there is no damage as a result of the fact that the building is contaminated, the building itself doesn't suffer damage. If there is a risk that the building can't be resold because it's contaminated with something that a person views as a hazardous product, that's one thing, but the building itself doesn't have that claim. I think the claim is, and I think where you're going to go with this, is ... if in fact Zonolite does release fibers, then the question is, are those fibers dangerous? And, if they are, okay, then at some point you're probably going to have both property damage and personal injury claims. And I agree with you, we're not going there now. So the question is, can they release? But the second question is, so what if they can release? Is there a harm incident to that release?"

(July 22, 2002 transcript at pp. 83-84).

    9.    Likewise, at the August 26, 2002 Omnibus Hearing, the Court again refused to modify the language with respect to scope:

> MR. WESTBROOK: From memory, Your Honor, the only other differences following the hearing when we submitted our Order, we've framed the issue as it says in the context of a property damage case, whether ZAI presents an unreasonable risk, we tried to track the language from the transcript. And the Court will see that when it compares our Order with Grace's Order.
>
> MR. BERNICK: That is a sore subject, because we've been over that like nine times, and argued that very issue very specifically, and then negotiated it out.
>
> THE COURT: Well, hopefully I did it myself within the context of the hearing. If I didn't, then I'll take a look at that. I was trying very hard not to set the parameter for what the issues would be until the discovery is done. I think the appropriate place to look at that is at the pretrial conference.
>
> MR. BERNICK: We can live with that.
>
> THE COURT: Okay. Because I think after discovery we may be able to frame the issue a little bit better than we can now anyway.
> ...

(August 26, 2002 transcript at pp. 62-63).

10.     The language on scope urged by the ZAI Claimants in their latest draft order, submitted with their Response, makes absolutely no sense. In addition, the Court ruled that such language was inappropriate when discussed on July 22, 2002 and August 26, 2002. Likewise, the expansion of the participation by claimants urged by the ZAI Claimants in the order attached to the Response, as well as the August 6 draft, has already been denied by the Court. The Court entered a Scheduling Order on July 22, 2002. In entering that Order, the Court ruled on all of the issues that the ZAI Claimants are once again addressing in their Response. These issues have been decided and it is time to end this dialog.

## Conclusion

11.     As a result, the Debtors respectfully request that the Court enter another copy of the Scheduling Order it originally entered on July 22, 2002. That Order, with the changes made by the Court at the July 22, 2002 hearing, is attached to the Debtors' Certification of Counsel filed on August 23, 2002. In addition, the Debtors do not object to the filing of simultaneous *Daubert* motions, as urged by the ZAI Claimants at the August 26, 2002 hearing and in their various draft orders. For the Court's convenience, the Debtors have attached a red-lined and clean version of the Scheduling Order (Exhibits C and D) which contain the modified dates

outlined on July 22, 2002 and modified language in paragraph C of the Scheduling Order with respect to the *Daubert* Motions.

September 11, 2002.

        KIRKLAND & ELLIS

        David R. Bernick
        James W. Kapp III
        Janet S. Baer
        200 East Randolph Drive
        Chicago, Illinois 60601
        (312) 861-2000

        REED SMITH LLP
        James J. Restivo, Jr.
        Douglas Cameron
        Paul M. Singer
        435 Sixth Avenue
        Pittsburg, PA 15219

        and

        PACHULSKI, STANG, ZIEHL, YOUNG & JONES PC

        */s/ Scotta E. McFarland*
        Laura Davis Jones (#2436)
        Scotta E. McFarland (#4184)
        919 North Market Street, 16th Floor
        P.O. Box 8705
        Wilmington, Delaware 19899-8705 (Courier 19801)
        (302) 652-4100

        Co-counsel for the Debtors.