*Chart 6*

# Remedium Group, Inc.
## Accounts Receivable Reconciliation and Aging
## MOR-5
## July 2002

| Trade Accounts Receivable Reconciliation | | |
|---|---|---|
| Trade accounts receivable, beginning of month, gross | $ | - |
| Amounts billed during the period | | - |
| Amounts collected during the period | | - |
| Other | | - |
| Trade accounts receivable at the end of month, gross | $ | - |
| **Trade Accounts Receivable Aging** | | |
| Current | $ | - |
| 1-30 days past due | | - |
| 31-60 days past due | | - |
| +61 days past due | | - |
| Trade accounts receivable, gross | | - |
| Allowance for doubtful accounts | | - |
| Trade accounts receivable, net | $ | - |

| Notes and Accounts Receivable Reconciliation | | |
|---|---|---|
| Trade accounts receivable, net | $ | - |
| Customer notes and drafts receivable | | - |
| Pending customer credit notes | | - |
| Advances and deposits | | 650 |
| Nontrade receivables, net | | 142,728 |
| Total notes and accounts receivable, net | $ | 143,378 |

2 of 4

*Chart 6*

## Darex Puerto Rico, Inc.
## Accounts Receivable Reconciliation and Aging
## MOR-5
## July 2002

| Trade Accounts Receivable Reconciliation | | |
|---|---|---|
| Trade accounts receivable, beginning of month, gross | $ | 2,436,566 |
| Amounts billed during the period | | 495,016 |
| Amounts collected during the period | | (438,788) |
| Other | | (40,994) |
| Trade accounts receivable at the end of month, gross | $ | 2,451,800 |
| **Trade Accounts Receivable Aging** | | |
| Current | $ | 1,218,955 |
| 1-30 days past due | | 231,993 |
| 31-60 days past due | | 312,706 |
| +61 days past due | | 688,146 |
| Trade accounts receivable, gross | | 2,451,800 |
| Allowance for doubtful accounts | | (50,443) |
| Trade accounts receivable, net | $ | 2,401,357 |

| Notes and Accounts Receivable Reconciliation | | |
|---|---|---|
| Trade accounts receivable, net | $ | 2,401,357 |
| Customer notes and drafts receivable | | - |
| Pending customer credit notes | | (11,831) |
| Advances and deposits | | - |
| Nontrade receivables, net | | 3,657 |
| Total notes and accounts receivable, net | $ | 2,393,183 |

*Chart 6*

| Grace Europe, Inc.<br>Accounts Receivable Reconciliation and Aging<br>MOR-5<br>July 2002 | | |
|---|---|---|
| **Trade Accounts Receivable Reconciliation** | | |
| Trade accounts receivable, beginning of month, gross | $ | - |
| Amounts billed during the period | | - |
| Amounts collected during the period | | - |
| Other | | - |
| Trade accounts receivable at the end of month, gross | $ | - |
| **Trade Accounts Receivable Aging** | | |
| Current | $ | - |
| 1-30 days past due | | - |
| 31-60 days past due | | - |
| +61 days past due | | - |
| Trade accounts receivable, gross | | - |
| Allowance for doubtful accounts | | - |
| Trade accounts receivable, net | $ | - |

| Notes and Accounts Receivable Reconciliation | | |
|---|---|---|
| Trade accounts receivable, net | $ | - |
| Customer notes and drafts receivable | | - |
| Pending customer credit notes | | - |
| Advances and deposits | | - |
| Nontrade receivables, net | | 79,067 |
| Total notes and accounts receivable, net | $ | 79,067 |

Chart 7

| W.R. Grace & Co., et al<br>Debtor Questionnaire<br>MOR - 5<br>July 2002 | Yes | No |
|---|---|---|
| 1. Have any assets been sold or transferred outside the normal course of business this reporting period? If yes, provide an explanation below. | X | |
| 2. Have any funds been disbursed from any account other than a debtor in possession account for this reporting period? If yes, provide an explanation below. | | See Note #5 below |
| 3. Have all postpetition tax returns been timely filed? If no, provide an explanation below. | X | |
| 4. Are workers compensation, general liability and other necessary insurance coverages in affect? If no, provide and explanation below. | X | |
| 5. Are post-petition accounts payable and tax obligations current and paid to date? If no, provide an explanation. | X<br>(unless disputed in normal course of business) | |

### Note #5
As part of the first day orders submitted to the court on April 2, 2001, an application for the Debtors to (a) continue and maintain their consolidated cash management system, (b) continue and maintain their existing bank accounts and (c) continue to use existing business forms and granting related relief was included. The Debtors have continued to use their existing bank accounts and no new debtor in possession accounts have been established.

| List assets sold/transferred outside the normal course of business over $25,000: | | |
|---|---|---|
| Description of Asset | Sale Date | Proceeds |
| Sale to Adventus Intellectual Property Inc., trademarks and trademark applications, patents and patent license rights, and associated records. | 07/11/02 | $ 170,000 |
| Conveyance of 341 Main Street, Danville, VA, which was vested in Earl F. Glock, Trustee, under a land trust, dated May 16, 1996. | 07/15/02 | $ 198,149 |

# Combined Chapter 11 Filing Entity Statements

Chart 8

## W. R. Grace & Co. - Chapter 11 Filing Entities
### Combined Statement of Operations

| Amounts in millions | Month Ended July 31, 2002 | Year to Date July 31, 2002 | Cumulative Since Filing |
|---|---:|---:|---:|
| Net sales to third parties | $ 75.2 | $ 503.4 | $ 1,167.2 |
| Net sales to non-filing entities | 12.2 | 81.5 | 186.4 |
| Interest and royalties from non-filing entities | 3.6 | 24.2 | 58.6 |
| Other income | - | 9.9 | 20.7 |
|  | 91.0 | 619.0 | 1,432.9 |
| Cost of goods sold to third parties | 47.3 | 313.6 | 718.8 |
| Cost of goods sold to non-filing entities | 8.1 | 58.8 | 133.6 |
| Selling, general and administrative expenses | 20.5 | 142.9 | 302.3 |
| Research and development expenses | 3.6 | 24.4 | 55.0 |
| Depreciation and amortization | 5.2 | 35.6 | 79.0 |
| Interest expense | 1.8 | 11.7 | 38.6 |
|  | 86.5 | 587.0 | 1,327.3 |
| Income before Chapter 11 reorganization expenses, income taxes and equity in net income of non-filing entities | 4.5 | 32.0 | 105.6 |
| Chapter 11 reorganization expenses, net | (1.3) | (14.1) | (26.8) |
| Provision for income taxes | (4.3) | (20.9) | (55.2) |
| Equity in net income of non-filing entities | 11.2 | 46.7 | 84.0 |
| **Net income** | $ 10.1 | $ 43.7 | $ 107.6 |

The Notes to Combined Financial Statements are an integral part of these statements.

Chart 9

## W. R. Grace & Co. - Chapter 11 Filing Entities
### Combined Functional Basis Statement of Cash Flows

| Amounts in millions | Month Ended July 31, 2002 | Year to Date July 31, 2002 | Cumulative Since Filing |
|---|---:|---:|---:|
| **Core operations cash flow** | | | |
| Pre-tax income from core operations | $ 6.3 | $ 52.2 | $ 160.5 |
| Depreciation and amortization | 5.2 | 35.6 | 79.0 |
| | 11.5 | 87.8 | 239.5 |
| Changes in all core assets/liabilities and other | 1.4 | (14.7) | (14.6) |
| Net increase in accounts receivable due to termination of the securitization program | - | - | (64.8) |
| | 12.9 | 73.1 | 160.1 |
| Capital expenditures | (8.4) | (31.4) | (58.8) |
| **Core Pre-tax Operating Cash Flow** | **4.5** | **41.7** | **101.3** |
| **Charges against core reserves** | | | |
| Restructuring costs | - | - | - |
| Pension liabilities | (0.3) | (2.5) | (6.6) |
| Deferred compensation | - | (0.5) | (2.5) |
| Self insurance | - | (0.4) | (1.3) |
| **Total Spending Against Core Reserves** | **(0.3)** | **(3.4)** | **(10.4)** |
| **Core Cash Flow** | **4.2** | **38.3** | **90.9** |
| **Noncore cash flow** | | | |
| Proceeds from asset sales | 1.1 | 1.8 | 4.7 |
| Benefit proceeds under life insurance policies | 0.5 | 9.5 | 18.6 |
| Other noncore pretax cash flow | 1.6 | 1.8 | (0.2) |
| **Noncore Pre-tax Cash Flow** | **3.2** | **13.1** | **23.1** |
| **Charges against noncore reserves** | | | |
| Asbestos | | | |
|   Asbestos claims processing | (1.2) | (6.8) | (13.3) |
|   Less - insurance recovery | 0.2 | 9.7 | 56.8 |
| Net asbestos (payments) receipts | (1.0) | 2.9 | 43.5 |
| Environmental remediation | (1.7) | (12.6) | (31.4) |
| Retained obligations and other | (0.6) | (2.2) | (7.3) |
| Postretirement benefits | (1.8) | (13.0) | (29.7) |
| **Total Spending Against Noncore Reserves** | **(5.1)** | **(24.9)** | **(24.9)** |
| **Noncore Cash Flow** | **(1.9)** | **(11.8)** | **(1.8)** |
| **Total Pre-tax/Pre-interest/Pre-Chapter 11 Cash Flow** | **2.3** | **26.5** | **89.1** |
| Cash paid for taxes, net of refunds | - | (1.5) | (2.8) |
| Cash paid for interest | 0.2 | 0.3 | (2.3) |
| Chapter 11 reorganization expenses paid | (1.2) | (11.5) | (18.1) |
| **Cash Flow before Strategic Investments** | **1.3** | **13.8** | **65.9** |
| **Strategic Investments** | | | |
| Cash paid for businesses acquired | - | (4.0) | (4.0) |
| Proceeds from option exercises | - | - | - |
| Repurchase of treasury stock | - | - | (0.6) |
| **Cash used for Strategic Investments** | **-** | **(4.0)** | **(4.6)** |
| **Cash Flow after Strategic Investments** | **1.3** | **9.8** | **61.3** |
| Borrowings (repayments) under DIP facility | - | - | (2.8) |
| Net (investing)/financing activities under life insurance policies | - | (15.6) | (34.9) |
| **Net Cash Flow** | **$ 1.3** | **$ (5.8)** | **$ 23.6** |

The Notes to Combined Financial Statements are an integral part of these statements.

Chart 10

## W. R. Grace & Co. - Chapter 11 Filing Entities
### Combined Balance Sheet

| Amounts in millions | July 31, 2002 | December 31, 2001 | April 2, 2001 |
|---|---:|---:|---:|
| **ASSETS** | | | |
| **Current Assets** | | | |
| Cash and cash equivalents | $ 32.2 | $ 38.0 | $ 8.6 |
| Notes and accounts receivable, net | 124.5 | 128.2 | 43.8 |
| Receivables from non-filing entities, net | 37.7 | 33.8 | 51.2 |
| Inventories | 82.1 | 83.9 | 80.6 |
| Deferred income taxes | 9.8 | 17.1 | 80.9 |
| Asbestos-related insurance expected to be realized within one year | 8.7 | 9.7 | 17.0 |
| Other current assets | 59.7 | 51.8 | 21.9 |
| **Total Current Assets** | 354.7 | 362.5 | 304.0 |
| Properties and equipment, net | 381.1 | 384.9 | 400.4 |
| Goodwill, net | 14.4 | 13.9 | 13.6 |
| Cash value of life insurance policies, net of policy loans | 86.5 | 75.6 | 64.1 |
| Deferred income taxes | 500.2 | 502.6 | 401.0 |
| Asbestos-related insurance expected to be realized after one year | 274.9 | 283.7 | 323.4 |
| Loans receivable from non-filing entities, net | 430.9 | 388.0 | 387.5 |
| Investment in non-filing entities | 194.5 | 159.1 | 121.0 |
| Other assets | 312.4 | 325.7 | 308.5 |
| **Total Assets** | **$ 2,549.6** | **$ 2,496.0** | **$ 2,323.5** |
| **LIABILITIES AND SHAREHOLDERS' EQUITY (DEFICIT)** | | | |
| **Liabilities Not Subject to Compromise** | | | |
| **Current Liabilities** | | | |
| Debt payable within one year | $ 1.4 | 1.6 | - |
| Accounts payable | 35.9 | 32.8 | - |
| Income Taxes Payable | 5.0 | - | - |
| Other current liabilities | 42.2 | 61.7 | - |
| **Total Current Liabilities** | 84.5 | 96.1 | - |
| Debt payable after one year | - | - | - |
| Other liabilities | 221.6 | 228.0 | 31.8 |
| **Total Liabilities Not Subject to Compromise** | 306.1 | 324.1 | 31.8 |
| **Liabilities Subject to Compromise** | | | |
| Debt, pre-petition plus accrued interest | 532.8 | 524.5 | 511.5 |
| Accounts payable | 32.1 | 31.7 | 43.0 |
| Income taxes payable | 227.5 | 216.6 | 210.1 |
| Asbestos-related liability | 979.5 | 996.3 | 1,002.8 |
| Other liabilities | 540.4 | 544.5 | 598.6 |
| **Total Liabilities Subject to Compromise** | 2,312.3 | 2,313.6 | 2,366.0 |
| **Total Liabilities** | 2,618.4 | 2,637.7 | 2,397.8 |
| **Shareholders' Equity (Deficit)** | | | |
| Common stock | 0.8 | 0.8 | 0.8 |
| Paid in capital | 433.0 | 433.0 | 432.6 |
| Accumulated deficit | (94.1) | (137.8) | (201.8) |
| Treasury stock, at cost | (137.0) | (137.0) | (136.4) |
| Accumulated other comprehensive income (loss) | (271.5) | (300.7) | (169.5) |
| **Total Shareholders' Equity (Deficit)** | (68.8) | (141.7) | (74.3) |
| **Total Liabilities and Shareholders' Equity (Deficit)** | **$ 2,549.6** | **$ 2,496.0** | **$ 2,323.5** |

The Notes to Combined Financial Statements are an integral part of these statements.

1. **Basis of Presentation and Summary of Significant Accounting and Financial Reporting Policies**

W. R. Grace & Co., through its subsidiaries ("Grace" or "the Company"), is primarily engaged in specialty chemicals and specialty materials businesses on a worldwide basis. These businesses consist of catalysts and silica products (Davison Chemicals) and construction chemicals, building materials and sealants and coatings (Performance Chemicals).

**Voluntary Bankruptcy Filing**

In response to a sharply increasing number of asbestos-related bodily injury claims, on April 2, 2001 (the "Filing Date"), W. R. Grace & Co. and 61 of its United States subsidiaries and affiliates, including Grace-Conn. (collectively, the "Debtors"), filed voluntary petitions for reorganization (the "Filing") under Chapter 11 of the United States Bankruptcy Code ("Chapter 11" or the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The cases were consolidated and are being jointly administered under case number 01-01139 (the "Chapter 11 Cases"). Grace's non-U.S. subsidiaries and certain of its U.S. subsidiaries were not included in the Filing.

During 2000 and the first quarter of 2001, Grace experienced several adverse developments in its asbestos-related litigation, including: a significant increase in bodily injury claims, higher than expected costs to resolve bodily injury and certain property damage claims, and class action lawsuits alleging damages from a former attic insulation product. After a thorough review of these developments, the Board of Directors of Grace concluded on April 2, 2001 that a federal court-supervised Chapter 11 filing provides the best forum available to achieve predictability and fairness in the claims settlement process. By filing under Chapter 11, Grace expects to be able to both obtain a comprehensive resolution of the claims against it and preserve the inherent value of its businesses. Under Chapter 11, the Debtors expect to continue to operate their businesses as debtors-in-possession under court protection from their creditors and

*Consequence of Filing* - As a consequence of the Filing, pending litigation against the Debtors is generally stayed (subject to certain exceptions in the case of governmental authorities), and no party may take action to realize its pre-petition claims except pursuant to an order of the Bankruptcy Court.

The Debtors intend to address all of their pending and future asbestos-related claims and all other pre-petition claims in a plan of reorganization. Such a plan of reorganization may include the establishment of a trust through which all pending and future asbestos-related claims would be channeled for resolution. However, it is currently impossible to predict with any degree of certainty the amount that would be required to be contributed to the trust, how the trust would be funded, how other pre-petition claims would be treated or what impact any reorganization plan may have on the shares of common stock of the Company. The interests of the Company's shareholders could be substantially diluted or cancelled under a plan of reorganization. The formulation and implementation of the plan of reorganization is expected to take a significant period of time.

*Status of Chapter 11 Proceedings* - Since the Filing, all motions necessary to conduct normal business activities have been approved by the Bankruptcy Court. In addition, the Debtors have received approval from the Bankruptcy Court to pay or otherwise honor certain of its pre-petition obligations in the ordinary course of business, including employee wages and benefits, customer programs, shipping charges and a limited amount of claims of essential trade creditors.

As provided by the Bankruptcy Code, the Debtors had the exclusive right to propose a plan of reorganization for a 120-day period following the Filing Date. The Debtors have received an extension of their exclusive period during which to file a plan of reorganization through August 1, 2002, and an extension of the Debtors' exclusive rights to solicit acceptances of a reorganization plan through October 1, 2002. The Debtors have filed a motion to extend the exclusivity period through February 1, 2003.

Three creditors' committees, two representing asbestos claimants and the third representing other