# ATTACHEMENT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

FILED JUL 10 1986
JOHN W. WILLIAMS, Clerk
U.S. DISTRICT COURT

| | |
|---|---|
| Greenville County School District,<br>Plaintiff,<br>vs.<br>W. R. Grace & Company, and<br>National Gypsum Company,<br>Defendants.<br>Re: Petition For Increased<br>Sanctions Against United States<br>Gypsum Company | C/A No. 6:82-3142-14<br><br>ORDER |

Plaintiff petitions for increased sanctions against Defendant United States Gypsum Company (USG) for allegedly intentionally withholding documents during discovery and making false responses to interrogatories and requests to produce.[1] For the reasons stated herein, the Court finds a sanction in the amount of $50,000.00 is warranted. The Court further awards Plaintiff attorneys' fees and costs in the amount of $28,475.39.

---

[1] Plaintiff does not seek to have the settlement between itself and USG set aside.

## PROCEEDINGS

The present lawsuit, commenced on December 15, 1982, is referred to as the Greenville suit. Both Plaintiff's and USG's attorneys were involved in similar litigation throughout the United States during the pendency of this action. While this Court is not concerned with USG's discovery responses in other litigation, it is necessary to occasionally refer to other suits in order to arrive at a proper understanding of the matters presently before the Court.

Plaintiff served its initial discovery requests on USG in January of 1983. USG failed to timely respond and Plaintiff filed a motion to compel. A hearing was held on May 4, 1983 and USG was directed to respond. This began a series of hearings dealing with disputes over discovery matters. In June of 1983, in Columbia, South Carolina, Judge Lloyd F. McMahon, United States District Judge for the Southern District of New York, sitting by designation, held a hearing on plaintiff's motion to compel in the Lexington County lawsuit. At this hearing USG argued it should be able to limit its answers concerning notice of the dangers of asbestos to only the asbestos-containing products involved in the Lexington County suit. Judge McMahon rejected this argument and ruled interrogatories requesting information on notice of the danger of asbestos must be answered without limitation as to product.

-2-

Subsequent to Judge McMahon's ruling, USG served supplemental answers in <u>Lexington County</u> on June 28, 1983, and within a week responded as follows in the <u>Greenville</u> suit:

> <u>Interrogatory No. 71</u>: When and by what manner were you first aware of the hazards of asbestos and asbestos-containing products to the users of those products?
>
> > <u>Response</u>: This defendant states that with respect to dangers associated with exposure to asbestos, late 1960's and with respect to acoustical plasters as manufactured and sold by this defendant, never.
>
> <u>Interrogatory No. 77</u>: Did you direct to be performed, sponsor, finance, or receive the results of any studies or tests performed by the Saranac Lake Laboratory or the Trudeau Foundation relating to asbestos exposure and its effect on human life?
>
> > <u>Answer</u>: None of which this defendant is currently aware.
>
> <u>Request No. 10</u>: Any and all other records, correspondence, minutes, or other documents of this Defendant, including all subsidiaries, divisions, and predecessor entities, wherein the potential health effects of asbestos have been discussed.
>
> > <u>Response</u>: Documents responsive to this request have recently been found and will be forwarded to Plaintiff's attorney.

Consequently, USG misstated that the late 1960's was its "notice" date and that it did not have anything to do with the Saranac Lake Laboratory.

-3-

X   X   X   X   X   X   X   X

inspection by the Court, a procedure frequently followed in this situation.

It is evident to the Court that USG has engaged in a course of conduct designed to circumvent the purposes of the discovery rules and prevent Plaintiff from learning the truth regarding the issue of notice. USG's responses to discovery were carefully tailored to disclose no information and at the same time lead the Court and Plaintiff into believing no further information existed. While engaging in the process of providing answers based on its own highly technical, and many times absurd, interpretations of Plaintiff's questions, USG gave responses which were false.

The answers provided to Interrogatory 77 are among the responses the Court finds fall within this category. In 1983, Plaintiff asked, and USG answered, the following question:

> Interrogatory No. 77: Did you direct to be performed, sponsor, finance, or receive the results of any studies or tests performed by the Saranac Lake Laboratory or the Trudeau Foundation relating to asbestos exposure and its effect on human life?
>
> Answer: None of which this defendant is currently aware.

Torrey was unable to satisfactorily explain to the Court how this answer could be construed as true. (Tr. 33-34, May 30, 1986 Hearing.) At one point she testified it was USG's position that

-20-

because the question referred to "effect on human life," that the results of tests conducted on guinea pigs and not on humans did not have to be disclosed. (Tr. 80, April 24, 1986 Hearing.) The Court finds this explanation to be totally frivolous. This is simply another example of the extremes to which USG reached in order to avoid discovery. Obviously, as conceded by Torrey, the tests on animals were done to determine the effects of asbestos on human life. (Tr. 81, April 24, 1986 Hearing; Tr. 31-33, May 30, 1986 Hearing.)

      The Court also notes that when the initial answer to Interrogatory 77 was provided in 1983, Snell had already received confirmation from Shaver that it appeared to be his signature on the 1936 Saranac sponsoring agreement. Further, the discovery, shortly after the Snell-Shaver conversation, of the Brown to Offutt letter transmitting the Saranac First Progress Report to USG reinforces the information obtained from Shaver. Nevertheless, USG stated it was currently unaware of any such studies. Later, in response to the Court interrogatory, USG slightly modified its response on Saranac. It stated "USG cannot confirm whether, or to what extent, it may have participated in the study or received the findings." This answer is misleading, for it implies that nothing has changed since the original answer and that USG was still unaware of documents or information

Accordingly, USG is directed to pay within 14 days of the date of this Order, the sum of FIFTY THOUSAND AND NO/100 ($50,000.00) DOLLARS to the Clerk of Court and TWENTY-EIGHT THOUSAND FOUR HUNDRED SEVENTY-FIVE AND 39/100 ($28,475.39) DOLLARS to Plaintiff's attorney.

AND IT IS SO ORDERED.

*William W. Wilkins, Jr.*
WILLIAM W. WILKINS, JR.
UNITED STATES DISTRICT JUDGE

Greenville, S. C.
July 10, 1986.

A TRUE COPY
ATTEST: JOHN W. WILLIAMS, CLERK
BY: *Karen Campbell*
DEPUTY CLERK