**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., <u>et al.</u>, | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

## <u>MEMORANDUM IN SUPPORT OF THE ZAI CLAIMANTS' MOTION TO COMPEL</u>

### I. <u>Introduction</u>

When the Court appointed ZAI Special Counsel, it expected the parties to cooperate in discovery. Because ZAI counsel was being appointed "late in the game" after Grace had been organizing its documents for months, the Court stated that ZAI counsel would get the benefit of Grace's document organization and computer indices. Not only has this not happened, but Grace has taken other steps to thwart the ZAI Claimants' search for relevant information. Letter writing has produced no weakening of Grace's resolve to stonewall. The ZAI Claimants must therefore seek Court intervention.

ZAI Special Counsel was appointed on July 22, 2002. Four days later, ZAI counsel served Grace with a first set of discovery.[1] Grace's responses demonstrate that it has no intention of cooperating to expedite the ZAI discovery process. Rather, returning to asbestos litigation "business as usual", Grace has:

1.    Refused to produce its computer index or organized set of vermiculite documents despite the Court's direction to do so;

---

[1] <u>See</u> Attachment 1. Special Counsel faxed the discovery to Grace and local counsel served other parties on July 31, 2002.

2.      Responded to the ZAI Claimants' specific document requests by offering its massive repository from 20 years of asbestos litigation with an invitation to "come look for it";

3.      Refused to produce over 500,000 pages of original vermiculite documents, stating that The ZAI Claimants should be satisfied with copies of the documents on CDs, (which Grace says it will <u>start</u> producing in 3-4 weeks);

4.      Limited its discovery responses to ZAI only and excluded all other vermiculite-related information.

What the ZAI Claimants' counsel feared would happen has indeed occurred.  Grace has had a significant head start in preparing for the ZAI science trial.  By denying the ZAI Claimants access to original documents, dumping its old repository collection on them, refusing to answer any discovery except as to ZAI, and withholding its organized documents and computer indices, Grace is trying to hide the vermiculite ball.  ZAI counsel does not believe this is what the Court intended or the law requires.

## II. <u>Argument</u>

### A. The ZAI Claimants are entitled to Grace's organized document collection and computerized indices

ZAI Special Counsel was appointed on July 22, 2002.  The Court authorized $2 million for each side to prepare for the ZAI science trial from that date forward.  ZAI counsel argued this allocation was unfair because Grace had already been working for months to organize vermiculite documents, and probably had a computer searchable database that gave it a significant advantage.  Because of this inequity, ZAI counsel requested that it receive a larger share of the budget.  The Court denied the ZAI Claimants' request, noting that the ZAI Claimants would be getting the benefit of Grace's work:

**ZAI Counsel**: ... Grace has also had the advantage of people.  The Grace submissions indicate that Reed, Smith has had up to 14 lawyers working on this matter in various months since April.  And Your Honor, although there've been

people discussing these issues on our side, I don't think that anyone could fairly say that we have had the opportunity or have had 14 lawyers from one firm – any firm – working on this.

**The Court**:  Then you should be grateful, because that will mean that their discovery documents will be in better shape to be able to produce to you expeditiously and they won't incur any portion of their budget by putting them together, because they're already together.

**ZAI Counsel**:  Yes.

**The Court**:  So you get the advantages just as they did.

(July 22, 2002 Tr. at 44.)[2]

Likewise, when ZAI counsel noted that Grace would likely have a computer searchable database of the documents, the Court indicated that the ZAI Claimants would have access to it:

**ZAI Counsel**:  Well, we're certainly happy to have whatever advantage we can get from Grace, Your Honor.  For instance, perhaps they have computerized their documents and they have them on a computerized index.  I assume that would be available to us and they wouldn't invoke a work product privilege, then.  And we'd be able to get that.

**The Court**:  If they're computerized and you can make use of the computers as long as they're restricted to this particular trial on the science issues, I don't see why they can't produce – be produced in that format.

. . . .

**ZAI Counsel**:  I'm just – from past experience in non-Zonolite cases, Grace has done internal work to computerize its documents –

**The Court**:  Fine, if –

**ZAI Counsel**: - and get them on.

**The Court**:  - that's the case, everybody will benefit from that.

(July 22, 2002 Tr. at 44-45.)[3]

---

[2]  Attachment 2.

[3] Attachment 2.

Ignoring the Court's direction, Grace has refused to produce any organized collection of the documents or its computerized database, claiming both as work product/privileged.[4] Whatever may be the merit of such an argument when the parties start litigation preparation at the same time and often have years to organize their case, it does not apply here. First and foremost, the Court has already directed that the ZAI Claimants are to have the benefit of Grace's organization. Second, ZAI counsel came into the case with only five months for fact discovery. Now that Grace has taken thirty days to tell the ZAI Claimants it would not produce its computer index, prompting the obligatory letter writing[5], only three and a half months of fact discovery remain. And with Grace not producing the vast majority of the newly reviewed ZAI documents for 3-4 more weeks, the ZAI Claimants will have just two and a half months to review them. The ZAI Claimants' expert reports are due on January 15, 2003, with expert depositions in February -March and evidentiary motions on April 30, 2003. There is simply no time for Grace's "cat and mouse" game.

There is no question that Grace has had a significant head start in organizing its information. Grace had special asbestos counsel appointed on July 19, 2001, over a year before ZAI counsel was appointed. Grace's counsel has been busy ever since, billing over $1 million in fees. Months before ZAI counsel was appointed, Grace's asbestos counsel was reviewing and coding documents and organizing them into a computer searchable database. For instance, one of Reed, Smith's time entries for April 5, 2002 reads:

> Imported the summaries from CD's 007, 008 and 010 into the Test
> Load Summation database. Ran queries on the new summaries to

---

[4] See Response to Request to Produce No. 7 in Grace's August 26, 2002 Responses to Discovery. Attachment 3 at 18.
[5] See letters dated August 30, 2002, September 6, 2002 and September 11, 2002. Attachment 4.

> see if any data was missing from the DocType and Document Sensitivity fields.[6]

Another entry from four days later reads:

> Reviewing boxes, labeling Grace documents that associates reviewed.[7]

Likewise, it is clear that Grace has been busy organizing materials relevant to the science trial issues, as another time entry reflects:

> Review and organize materials relating to science issues.[8]

The Grace time records reflect exactly what ZAI counsel suspected - Grace had gotten a significant jump on organizing its materials.  Grace has already been through the Boston repository and organized the materials ("organizing memos copied during document review in Boston") [9]; assigned additional staff to conduct the review ("e-mails to new associates regarding their collection of Grace documents in connection with analyses of documents")[10];  organized the materials into witness binders ("Prepare witness binders")[11]; organized documents from its database by witness ("Search on Summation database for documents to / from / copied to various witnesses")[12]; created a document index ("Revise and create index for the Grace defense")[13]; incorporated documents into the Grace defense story ("Incorporate documents into historical

---

[6] W.R. Grace special asbestos counsel time summary dated May 24, 2002 at 4. Attachment 5 at 4.

[7] Attachment 5 at 5, April 9, 2002 entry.

[8] Attachment 5 at 4, April 6, 2002 entry.

[9] Attachment 5 at 5, April 10, 2002 entry.

[10] Attachment 5 at 5, April 9, 2002 entry.

[11] Attachment 5 at 6, April 11, 2002 entry.

[12] Attachment 5 at 7, April 12, 2002 entry.

[13] Attachment 5 at 8, April 12, 2002 entry.

case defense outline")[14]; and coded material from Grace's scientific laboratories ("multi telephone calls to Sherman re coding of lab notebooks").[15]   All this work was done months <u>before</u>  ZAI counsel was appointed.[16]   If this significantly skewed field is to be leveled even slightly, ZAI counsel must have access to the organized collection of vermiculite documents and computer indices.

Rule 34 states that  a party faced with a document production request "shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the requests".  Grace has done neither.  Rather, Grace has simply opened its repository, consisting of over 400 boxes of documents gathered over the past 20 years of asbestos property damage litigation.  The vast majority of documents in the repository are not segregated to respond to vermiculite-related requests.  Nor are they segregated to allow searchers to find the files of a particular individual.  As an example, the ZAI Claimants asked Grace for documents from the files of certain individuals that addressed vermiculite, its asbestos contamination, and related issues.  Grace first responded by limiting its response to ZAI.  It then stated that "Debtors will produce non-privileged documents, if any, regarding ZAI that may have been contained in the requested files of the individual".[17] When ZAI counsel went to the Grace repository and requested documents from the files of the first individual they had identified (Grace's research microscopist Dr. Julie Yang), the Grace representative informed ZAI counsel

---

[14] Attachment 5 at 9, April 29, 2002 entry.

[15] Attachment 5 at 9, April 30, 2002 entry.

[16] Nor is it any excuse that certain ZAI Claimants had previously done work for the <u>Barbanti</u> case in Washington State.  The Grace time records cover work done months after <u>Barbanti</u> and clearly in preparation for bankruptcy-related issues.  To the extent any of the Grace work was done to oppose the EPA actions at Libby, it certainly benefits Grace's science trial preparation.

[17] <u>See</u> Response to Request to Produce Nos. 12-28 in Grace's August 26, 2002 responses to discovery.  Attachment 3 at 20-24.

"that the individual's files are scattered throughout the repository".[18]  When ZAI counsel asked

for Grace's computer index to try to locate particular witnesses' documents, they were told that

"any such index would be considered work product and not produced".[19]

When ZAI counsel asked what was available as an index, they were given four manual

indices.  Only one of these indices, the "Attorney Review Index", which covers only 61 of the

438 boxes,  provided sufficient information on its face to try to identify specific documents in the

massive repository set.[20]  The process of using this index is excruciatingly slow, as explained by

a paralegal who attempted to do so:

> The Attorney Review index only covers the Notice documents up to a certain date
> by which the documents were placed in the repository.  In order to use this index,
> the following procedure is followed:   Each Attorney Review box contains
> thousands of pages of indices.  Sections are bound separately with a cover sheet
> containing reference numbers.   A separate sheet is provided that contains
> correlating box numbers to these reference numbers.  After pulling out the boxes
> indicated on the translation sheet, one must look at the individual entry and search
> above it to determine the folder name.   Then one must search through all of the
> boxes pulled for the titled folder, none of which are in order or alphabetized.
> Furthermore, each folder must be pulled out of the box in order to view the title
> name, as they are not indicated on the tabs.
>
> After attempting this process, I found four (4) of the 140 documents that I had
> identified from a section of the index.  I have found this process to be slow and
> cumbersome.   I asked Mr. Murphy (Grace representative) for assistance in
> locating the documents I was unable to locate.  Mr. Murphy informed me that
> some of the documents may be misfiled or no longer there.  Mr. Murphy then
> attempted to search for the first two (2) documents on my list, neither of which he
> could find.[21]

---

[18] See Affidavit of Linda Hambleton (Richardson Patrick paralegal), ¶4.  Attachment 6.

[19] See Affidavit of Linda Hambleton (Richardson Patrick paralegal), ¶4.  Attachment 6.
[20] See Affidavit of Linda Hambleton (Richardson Patrick paralegal), ¶6.  Attachment 6.

[21] See Affidavit of Linda Hambleton (Richardson Patrick paralegal), ¶7 and ¶ 8.  Attachment 6.

As indicated above, after ZAI counsel's paralegal could only find 4 of the 140 documents that she had "identified" using the index, she enlisted the assistance of Grace's representative who was also unable to find documents identified in the index.

It is difficult to comprehend the magnitude of the effort required to search through Grace's disorganized repository without a computerized index.  When ZAI counsel asked to take pictures of the repository to document its size and condition for the Court, Grace refused permission.[22]

As the foregoing indicates, the short time available for fact discovery compels the conclusion that Grace should be ordered to produce all vermiculite-related computerized indices and organized document collections.

### B.  Grace should be required to produce original documents for inspection.

Rule 34 requires a defendant to produce requested documents for inspection and copying. The rule does not permit a party to produce only copies when originals are requested.  Financial Holdings Corp. v. Garnac Grain Co., 1991 WL 221129, at *3 (W.D. Mo. 1991) [Original documents must be produced when requested].[23]  There is a very good reason for this.  Original documents can often have highlighting or notations written on the back that would not show up on copies.  Alterations, erasures, and "white-outs" may not show up on copies either.

Grace has unilaterally declared that it will not produce the originals of the vermiculite-related documents that the ZAI Claimants requested.  Rather, Grace has decided to produce one half million pages of  documents in the form of copies on compact discs.[24]  Grace's unilateral

---

[22] See Affidavit of Linda Hambleton (Richardson Patrick paralegal), ¶11.  Attachment 6.

[23] To the extent Grace may have believed the ZAI Claimants were not specifically requesting originals, the claimants corrected Grace's impression.  See Attachment 4 at 7, September 6, 2002 letter, ¶4.

[24] See Attachment 4 at 10, September 11, 2002 Reed, Smith, letter at 1.

decision to withhold original documents should not be countenanced by the Court. Rule 34 requires that documents be produced "as they are kept in the usual course of business". Grace did not keep these 500,000 pages of documents on CDs in the usual course of business. Grace has admitted that it has the original documents that are maintained in the usual course of business as Rule 34 requires.[25] Grace also admits that it has been through 400,000 pages of these originals. But Grace claims that it cannot produce the same originals to the ZAI Claimants after its own review because those original boxes "contain privileged documents, Grace's work product and non-responsive documents".[26]

From experience in document review, ZAI counsel know that reviewing documents on a computer screen is more difficult and tedious than reviewing the original documents themselves. While the ZAI Claimants do not object to getting a set of CDs of the documents for reference (if they are accompanied by a computer searchable index), this should not take the place of the production of original documents.[27] Grace has provided no explanation why it did not or cannot go through the boxes and identify privileged materials for withholding. Grace has to do this anyway, because it must provide a privilege log for documents it is withholding. Grace does not contest this obligation, stating, "We have no objection to providing a privilege log and will do so as soon as we can".[28]

---

[25] See Attachment 4 at 10, September 11, 2002 Reed, Smith, letter at 1 ("Those originals are maintained in the original boxes, as kept in usual course of business …").

[26] See Attachment 4 at 10-11, September 11, 2002 Reed, Smith, letter at 1-2.

[27] In light of the short time frame for discovery here, the situation is exacerbated by the fact that Grace has not produced the CDs either. Rather, without asking for any extension of time to respond to the document requests, Grace has simply informed the ZAI Claimants that some of the CDs will be coming "over the next 3 to 4 weeks" Attachment 4 at 10, September 11, 2002 Reed, Smith letter, at 1. Even as a reference set, this delay is unacceptable.

[28] See Attachment 4 at 11, September 11, 2002 Reed, Smith letter, at 2.

Thus, it is undisputed that the originals exist and Grace has been through them. It has copied documents from the original boxes. It has or shortly will identify the documents in the original boxes it wishes to withhold as privileged. There is no reason Grace cannot make the original boxes without the privileged material available to the ZAI Claimants. Obviously, Grace has already identified the privileged documents because it told the ZAI Claimants that it copied 400,000 pages of "non-privileged ZAI documents" from the boxes.[29] ZAI counsel will work with Grace, but the original documents should be provided.[30]

### C.  Grace's discovery responses should not be limited strictly to ZAI

ZAI counsel is aware from prior experience that Grace sold two basic groups of products containing asbestos. The first were Grace's "mill-mixed products" consisting of vermiculite, gypsum (or another binder), and asbestos. Products like these, such as Monokote, were the focus of traditional asbestos property damage litigation in the 1980s and 90s. See City of Greenville v. W.R. Grace & Co., 827 F.2d 975 (4th Cir. 1987), reh'g denied, 840 F.2d 219 (4th Cir. 1988) [affirming actual and punitive damage verdict against Grace for Monokote].

Grace's second group of products was the expanded vermiculite products. Their production process was as follows: Vermiculite was mined and separated out from other rock at the mill. Raw vermiculite (resembling flat mica) was then loaded into rail cars and shipped to "expanding plants" across the country. At these expanding plants, the vermiculite was "expanded" by heating it (much like popcorn is popped). This expanded vermiculite was then

---

[29] See Attachment 4 at 10, September 11, 2002 Reed, Smith letter, at 1.

[30] Grace's offer to produce an original if ZAI counsel raises a question as to "legibility or marginalia" of a particular document  (See Attachment 4 at 11, September 11, 2002 Reed, Smith letter, at 2) is insufficient.  It does not address the highlighting issue.  It puts the burden on ZAI counsel to review massive numbers of documents on a computer screen.  And it unjustifiably presumes that ZAI counsel could detect alterations, re-typing, "white-outs", or other changes from a computer screen.

screened for size.  Grace designated various sizes of expanded vermiculite as various commercial

products.

ZAI was the commercial designation Grace gave to expanded vermiculite that it poured

into a bag and marked "Zonolite Attic Insulation".  The same product (expanded vermiculite)

was poured into bags and labeled with other names, such as "Zonolite Plaster Aggregate"

(expanded vermiculite for adding to plaster), "Zonolite Masonry Fill" (expanded vermiculite

poured in the holes in cinder blocks), and "Bar-b-sorb" (expanded vermiculite poured in the

bottom of barbeque grills to absorb grease).  Regardless of the commercial name Grace gave to

expanded vermiculite, it was the same basic product.  Indeed, an internal Grace document shows

that the same size expanded vermiculite used for ZAI could also be used for Masonry Fill and

Plaster Aggregate. [31]

In response to the ZAI Claimants' discovery, Grace has refused to produce any

information not strictly related to ZAI.  The standard limitation Grace has put on its interrogatory

responses is illustrated by the following:

> To the extent this interrogatory seeks information on products or materials other
> than ZAI, it is objected to as overly broad, unduly burdensome, and not
> reasonably calculated to lead to the discovery of admissible evidence in the ZAI
> Science Trial. [32]

Likewise, Grace has similarly limited its responses to document production:

> To the extent that this request seeks information and/or documentation on
> products or materials other than ZAI, it is objected to as overly broad, unduly
> burdensome and not reasonably calculated to lead to the discovery of evidence
> admissible in the ZAI Science Trial. [33]

---

[31] See "W.R. Grace Construction Products Division Expanding Plant Operation" [showing that Libby 2 (L-2) vermiculite was used in Attic Fill, as well as in Plaster Aggregate and Masonry Fill].  Attachment 9.

[32] See Attachment 3 at 5; at Debtors' Response to Interrogatory No. 4.

[33] See Attachment 3 at 20; at Debtors' Response to Request to Produce No. 12.

Grace's limitation of its responses is, as Yogi Berra used to say, "déjà vu all over again". At the inception of the asbestos property damage litigation in the early 1980s, Grace and its co-defendants took the position that they only needed to respond for the particular product or precise question at issue.  By arbitrarily limiting the scope of their responses to the most narrow framework, the asbestos property damage defendants attempted to avoid producing relevant information.  In a classic example, Grace's co-defendant, U.S. Gypsum, failed to reveal that it had financed asbestos studies in the 1930s when asked about sponsored studies on the effects of asbestos on human health.  When Plaintiffs discovered the concealment, USG suggested that because the studies in the 1930s were on rats, not humans, they did not have to be disclosed.  The United States District Court was not amused.  It described the testimony of USG's counsel and its reaction as follows:

> At one point [USG counsel] testified it was USG's position that because the question referred to "effect on human life", that the results of tests conducted on guinea pigs and not on humans did not have to be disclosed … The Court finds this explanation to be totally frivolous.[34]

Likewise, in an early case involving Grace and others, the court rejected Defendants' attempt to limit their answers to the precise asbestos product at issue:

> All parties must supplement prior responses to interrogatories, requests for admissions and requests for production within twenty (20) days of this date.  In responding to interrogatories and other discovery, the parties must bear in mind that the allegedly dangerous product in question is asbestos.  In that regard, when responding to interrogatories, answers should not limit information to specific brand names and products used at specific locations. (emphasis by the court)[35]

---

[34] Greenville County School District v. W.R. Grace & Company, etal., No. 6:82-3142-14(D.S.C. July 10, 1986). Attachment 7 at 20-21.

[35] Huntsville City Board of Education v. National Gypsum Company, etal., No. CV-83-325L (Ala. Cir. June 11, 1987).  Attachment 8 at 3.

Following these early skirmishes, Defendants usually responded to discovery by making all their asbestos product information available. The issue of "product by product" responses largely vanished from asbestos property damage litigation. Now that it is in a new forum, however, Grace has resurrected its "strict constructionist" position and told the ZAI Claimants it will not respond except for ZAI.

The deficiencies of Grace's position are many. First, as pointed out above, ZAI was Grace's trade name for one of a family of expanded vermiculite products. Information Grace has on vermiculite, regardless of its commercial name, should be produced. This information may include measurements of the asbestos content of expanded vermiculite, fiber levels measured during pouring of expanded vermiculite, the effectiveness of binders to keep asbestos fibers from being released from expanded vermiculite, the success (or lack thereof) in removing asbestos from expanded vermiculite, the test methods employed by Grace in measuring asbestos released from expanded vermiculite, and many other asbestos-related issues.

The second deficiency in Grace's "ZAI only" response is that while Grace is attempting to avoid giving the ZAI Claimants access to other expanded vermiculite data, it has had no problem in dumping on the ZAI Claimants thousands of documents concerning its "mill-mixed" asbestos products (Monokote, Zonolite Acoustical plastic, etc.). In opening its Boston repository with a "come search" invitation, Grace has signaled its willingness to bury the ZAI Claimants in potentially irrelevant information on products one step removed from expanded vermiculite (i.e. the "mill-mixed products"). At the same time, Grace is denying access to its other, more closely related expanded vermiculite product information. Can Grace explain why the mill-mixed

products information is discoverable, while information on other expanded vermiculite products is not?[36]

Third, it is apparent that Grace has already reviewed and organized thousands of pages of expanded vermiculite documents.  In responding for ZAI only, Grace is probably using more effort to segregate the other expanded vermiculite documents for exclusion than if it produced the relevant documents to the ZAI Claimants together.  It is also costing the ZAI Claimants time and money to press for documents that should have been produced without a battle.

Fourth, ZAI counsel knows from prior experience that what Grace has unilaterally determined not to be a "ZAI document", for instance, may well contain  ZAI information.  Many Grace documents discuss multiple subjects, some not stated in the title.  ZAI counsel is unwilling to rely upon Grace to make determinations for the ZAI Claimants as to whether a document discussing expanded vermiculite has potential relevance in this case.

Accordingly, the Court should order Grace to produce all documents responsive to the ZAI Claimants' requests that relate to vermiculite or expanded vermiculite.

### D.  Grace Should Produce the Information Withheld on Vermiculite-Related Personal Injury Claims

Grace has also refused to identify the personal injury claims it has had regarding exposure to expanded vermiculite or those claims it has settled.[37]   Information concerning such claims could obviously lead to potentially valuable data on the hazard of expanded vermiculite.  Grace's objection is relevance.    The ZAI Claimants do not believe that objection has merit.  Grace should be ordered to produce the requested information.

---

[36] Where Grace has been unable to remove easily the other expanded vermiculite documents in its old repository collection, it has produced them as well, indicating that its position here is more tactical than anything.

[37] Attachment 3 at 7-8; Responses to Interrogatories Nos. 13 and 14.

### III.  Conclusion

For the foregoing reasons, the ZAI Claimants respectfully request that the Court order Grace to: (1) produce any existing computer indices for the Boston repository and Grace's collection of vermiculite documents; (2) produce any organized set of vermiculite documents; (3) produce originals of all documents requested, as well as any set of documents on CD's that may be used for reference; (4) answer discovery for vermiculite and expanded vermiculite products without artificial limitation to ZAI; (5) answer discovery concerning personal injury claims from expanded vermiculite.


Dated: September 18, 2002                     Edward J. Westbrook, Esq.
      Wilmington, DE                          Robert M. Turkewitz, Esq.
                                                      RICHARDSON,  PATRICK,  WESTBROOK  &  BRICKMAN
                                                     174 East Bay Street
                                                     Charleston, SC  29401
                                                     Tel. (843) 727-6513
                                                     ZAI CLAIMANTS' SPECIAL COUNSEL

Darrell W. Scott, Esq.
Burke D. Jackowich, Esq.
LUKINS & ANNIS PS
717 W. Sprague Ave. Suite 1600
Spokane WA 99201
Telephone: (509) 455-9555
ADDITIONAL SPECIAL COUNSEL

ELZUFON AUSTON REARDON
TARLOV & MONDELL

*/s/ William D. Sullivan*
William D. Sullivan (Bar No. 2820)
Charlie Brown, III (Bar No. 3368)
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, DE  19899

Counsel for the Zonolite Claimants,
Barbanti, Busch, Prebil, and Price