# EXHIBIT D

## AFFIDAVIT OF JOHN F. AKERS

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

### AFFIDAVIT OF JOHN F. AKERS IN SUPPORT OF THE DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE AMENDMENT OF THE EMPLOYMENT CONTRACT OF PAUL J. NORRIS AS CHAIRMAN, PRESIDENT AND CHIEF EXECUTIVE OFFICER

John F. Akers, being duly sworn, deposes and says:

1.  I am the chair of the compensation committee of the Debtors' board of directors. The compensation committee consists solely of independent directors who all meet the strictest standards of independence established by the New York Stock Exchange. I offer this affidavit in support of the Debtors' Motion for an Order Authorizing the Amendment of the Employment Contract of Paul J. Norris as chairman, president and chief executive officer.

2.  I am the retired chairman and chief executive officer of IBM and served in that capacity for about nine years. In that capacity and in my capacity as a member of the Debtors' board of directors I have personal knowledge of the special importance of a chief executive officer to the success of a company. I believe that the leadership of a chief executive officer plays a critical role in a company surviving difficult situations. Continuity of that leadership is also important to the morale of the company's employees.

3.  The independent members of the Debtors' Board of Directors approved the terms and form of the Norris Amendment in June 2002.

4.   The Debtors' board of directors believes that the Norris Amendment will have the practical effect of increasing the likelihood that Mr. Norris will remain in the Debtors' employ for a longer period of time. This is because the Norris Amendment eliminates the pressure on Mr. Norris to tender his resignation by an artificial deadline. The artificial deadline of June 30 has the effect of potentially requiring Mr. Norris to decide to tender his resignation by June 30 to avoid the prospect of remaining with the Debtors' for eighteen months without an option to terminate his employment and still receive his benefits.

5.   The increase in the retention bonus is needed to compensate Mr. Norris for the uncertainty in the Chapter 11 Cases and the company's increasingly difficult operational environment. The increase reflects Mr. Norris's importance to the successful reorganization of the Debtors. Mr. Norris is an experienced and talented executive who is intimately familiar with the Debtors' businesses and could easily obtain employment elsewhere. Mr. Norris has been employed by the Debtors in various positions for nearly fifteen years and for the last four years as chairman, president and chief executive officer. In addition to his service to the Debtors, Mr. Norris has over fifteen years experience at other specialty chemical companies at the executive level with Engelhard Corporation and Allied Signal (now know as Honeywell International, Inc.).

6.   Under the leadership of Mr. Norris, the Debtors have achieved substantial success in their business operations. Throughout Mr. Norris's tenure as chairman, president and chief executive officer, the Debtors have outperformed their industry peers, including being number one in revenue growth and number two in profit growth in 2001 and in the top three year to date for 2002. Mr. Norris's leadership has been crucial to this success. He has developed and communicated his vision for the company and the values he has presented are widely accepted

by the employee population. Mr. Norris introduced the highly successful "six-sigma" program which has led to year-on-year productivity improvement and very high levels of employee engagement with the success of the company. Mr. Norris has fostered an open communications environment through frequent contact with the employee population (including quarterly town meetings, "skip-level" meetings with middle management, and personal travel to the Debtors' operating facilities). Mr. Norris has been the most employee visible chief executive officer in Grace history; this engagement with the Debtors' employees has contributed to significant productivity gains.

7. Losing Mr. Norris likely would adversely affect the Debtors' operations by lowering employee morale because of the appearance of disarray and disruption generated by such a departure. Employee surveys reveal very high levels of trust and confidence in the Debtors' current leadership. The results of employee focus groups reveal that "a potential change in leadership" and "a significant, negatively perceived announcement" would be likely reasons for an employee to leave the company.

8. The Debtors' Board of Directors believe that it would be difficult and expensive to attract and hire a qualified replacement for Mr. Norris. If Mr. Norris left the Debtors, the Debtors would be faced with a potentially lengthy search for an external replacement. Such a search for a new chief executive officer would cause a substantial distraction to the Debtors' management. There also would be substantial expenses incurred in conjunction with securing a qualified outside executive.

AFFIANT FURTHER SAYETH NOT

Dated this 23RD day of September, 2002.

John F. Akers

SUBSCRIBED AND SWORN TO BEFORE ME

this 23RD day of September, 2002.

Notary Public    AILEEN BORGES
My Commission Expires:    3-31-03

4