## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et.al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | **Reference Withdrawn to** |
| | | **United States District Judge** |
| | | **Alfred M. Wolin By Oral Order** |
| | | **Dated October 7, 2002** |

### THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS' MOTION FOR AN ORDER APPOINTING A TRUSTEE FOR W.R. GRACE & CO. AND OTHER DEBTORS PURSUANT TO 11 U.S.C. § 1104(a)

The Official Committee of Asbestos Personal Injury Claimants ("PI Committee") files

this Motion for An Order Appointing A Trustee for the W.R. Grace & Company and Other

Debtors Pursuant to 11 U.S.C. § 1104(a). As grounds for this Motion, the PI Committee states as

follows:

### FACTUAL BACKGROUND

1.      On April 2, 2001 (the "Petition Date"), the above-captioned debtors (the

"Debtors") filed voluntary petitions for relief (Bankr. Ct. Doc. No. 1, Ex. 1, attached hereto)

under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors

continue to operate their businesses and manage their properties as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been

appointed in these cases to date.

2.      On April 2, 2001, the Bankruptcy Court entered its Order Granting Joint

Administration of the Debtors' chapter 11 cases (the "Consolidated Cases"). Bankr. Ct. Doc. 2,

Ex. 2.

3.    On April 12, 2001, the United States Trustee formed three official creditors'

committees: the PI Committee, the Official Committee of Asbestos Property Damage Claimants

("PD Committee") and the Official Committee of Unsecured Creditors (the "Unsecured

Creditors Committee").

4.    By the Petition Date, significant civil litigation had been commenced in several

courts against certain non-debtor affiliates of the Debtors, including but not limited to Sealed Air

Corporation ("Sealed Air") and Fresenius A.G. ("Fresenius"), alleging a scheme to defraud

creditors of W.R. Grace & Company by shifting large assets to Sealed Air or Fresenius for

inadequate consideration (the "Fraudulent Transfer Claims"). The Fraudulent Transfer Claims

were based on allegations that transactions entered into in 1996 (the "Fresenius Transaction")

and 1998 (the "Sealed Air Transaction") were fraudulent transfers adversely affecting the rights

of all creditors of W.R. Grace & Co. Fresenius, Sealed Air, and certain of the Debtors were

named as defendants in a nationwide class action on behalf of asbestos personal injury victims,

filed in the Supreme Court of California, San Francisco County (the "Abner Action") asserting

the Fraudulent Transfer Claims. See Ex. 3. Certain Debtors and Sealed Air are also defendants

in a certified state-wide class action in the Superior Court of Spokane County, Washington, filed

on behalf of Zonolite Attic Insulation property damage victims, seeking relief, in part, based

upon the Fraudulent Transfer Claims relating to the Sealed Air transfers (the "Barbanti Action").

See Ex. 4. On the Petition Date itself, a nationwide fraudulent transfer class action was

commenced in the District Court of Massachusetts against Sealed Air, Fresenius, and others, on

behalf of Zonolite Attic Insulation property damage victims, likewise asserting the Fraudulent

Transfer Claims (the "Woodward Action"). See Ex. 5. The Debtors themselves claim that

Sealed Air is a named defendant "in over 6,000 asbestos-related actions" and in eight class

actions, one of which has been certified and all of which implicate the Fraudulent Transfer Claims.

5.      On the Petition Date, the Debtors filed a Verified Complaint for Declaratory and Injunctive Relief (the "Complaint for Injunction"), styled W.R. Grace & Co., et al. v. Margaret Chakarian, et al., Adversary Proceeding No. A-01-771, (Adv. Pro. 01-771 Doc. 1, Ex. 6.) and a Motion for Temporary Restraining Order and Preliminary Injunction (the "Stay Motion"). Adv. Pro. 01-771 Doc. 2, Ex. 7. In the Complaint for Injunction and the Motion, the Debtors sought, among other things, to enjoin prosecution of pending and future suits against certain non-debtor affiliates of the Debtors, including but not limited to Sealed Air and Fresenius, based upon the Fraudulent Transfer Claims.

6.      At a hearing on the Stay Motion held in the Bankruptcy Court on May 3, 2001, the Debtors' counsel asserted that, as a result of the Debtors' chapter 11 proceedings, the Fraudulent Transfer Claims belong to the Debtors' bankruptcy estates. However, Debtors' counsel also stated on the record that "insofar as Grace is concerned, the debtor is concerned, given the positions we've taken, Grace through its current counsel, would probably be disabled from pursuing" the Fraudulent Transfer Claims. Transcript of May 3, 2001 Hearing, Ex. 8, at p. 11.

7.      On June 14, 2001, following the Debtors' refusal to pursue the Fraudulent Transfer Claims, the PI Committee and the PD Committee (collectively the "Asbestos Committees") filed the Joint Motion by the Official Committees of Asbestos Property Damage and Asbestos Personal Injury Claimants for Authority to Prosecute Fraudulent Transfer Claims (the "Motion to Prosecute"). Bankr. Ct. Doc. 527, Ex. 9. Citing well-established authority that a bankruptcy court could authorize a creditors committee to initiate adversary proceedings on

behalf of the debtor's estate, see Motion to Prosecute, Ex. 9 at ¶ 15, the Asbestos Committees sought the authority to assert a variety of claims against Sealed Air, Fresenius and other defendants on behalf of the Grace bankruptcy estate to recover the assets fraudulently transferred to Sealed Air or Fresenius for the benefit of the W.R. Grace bankruptcy estate and all of its creditors. In order for the court to authorize the Asbestos Committees to bring the Fraudulent Transfer Claims on behalf of the Grace bankruptcy estate, the Asbestos Committees had to persuade the court that (1) the claims were colorable, (2) bringing the claim would benefit the bankruptcy estate, and (3) the debtor was unwilling to pursue the claims. See Motion to Prosecute, Ex. 9 at ¶ 16; see also In re Cybergenics Corp., 226 F.3d 237, 240 n.3 (3d Cir. 2000) (hereinafter "Cybergenics I"); In re Gibson Group, Inc., 66 F.3d 1436, 1438 (6th Cir. 1995); Louisiana World Exposition v. Federal Ins. Co., 858 F.2d 233, 247 (5th Cir. 1988).

8.      On July 11, 2001, the Debtors and the Official Committee of Unsecured Creditors filed their respective Oppositions to the Joint Motion to Prosecute. Bankr. Ct. Doc. 658, Ex. 10; Bankr. Ct. Doc. 659, Ex. 11. The Debtors argued that the Asbestos Committees had a bias in assessing the magnitude of the Debtors' asbestos liability because "both committees were formed for the essential purpose of representing people who are asserting asbestos claims." The Official Committee of Unsecured Creditors argued that whether the Fraudulent Transfer Claims should be prosecuted needed to be investigated prior to bringing an action. Thus, they argued that the Asbestos Committees were conflicted from performing the necessary investigation because the Asbestos Committees had already taken the position that the Fraudulent Transfer Claims should be prosecuted.

9.      Responses to Joint Motion to Prosecute were also filed on July 11, 2001, by Sealed Air, Corp., Bankr. Ct. Doc. 635, Ex. 12, and National Medical Care, Inc., Bankr. Ct. Doc.

657, Ex. 13, the principal targets of the Fraudulent Transfer Claims. Sealed Air and National
Medical Care both argued in their respective Responses that the prosecution, if any, of the
Fraudulent Transfer Claims should take place in this Court.

10.    On August 2, 2001, the Bankruptcy Court postponed the hearing on the Motion to
Prosecute until September 7, 2001. On September 7, 2001, the Court further postponed the
hearing on the Motion to Prosecute until further notice.

11.    On February 20, 2002, the District Court held a "Case Management Conference"
concerning the prosecution of the Fraudulent Transfer Claims at which counsel for all interested
parties were given the opportunity to be heard.

12.    On March 12, 2002 the District Court entered an Order authorizing the Asbestos
Committees to jointly prosecute the Fraudulent Transfer claims on behalf of the Debtors'
bankruptcy estate. Bankr. Ct. Doc. 1789, Ex. 14. In this Order, the Court also withdrew the
reference for all proceedings related to the Fraudulent Transfer Claims and set forth a Schedule
for the litigation of the Fraudulent Transfer Claims, which Schedule included a trial date of
September 30, 2002. Ibid.

13.    Pursuant to that schedule, in March 2002 Debtors produced to the Asbestos
Committees over 150 boxes of documents relating to the Sealed Air and Fresenius Transactions.

14.    On March 18, 2002, after further investigation and initial document review, the
Asbestos Committees filed two separate complaints in the United States District Court for the
District of Delaware asserting causes of action in the name of the Grace bankruptcy estate. The
two separate actions were styled Official Committee of Asbestos Personal Injury Claimants and
Official Committee of Asbestos Property Damage Claimants of W.R. Grace & Co., suing in
behalf of the Chapter 11 Bankruptcy Estate of W.R. Grace & Co., et al. v. Sealed Air

Corporation and Cryovac Inc., Adv. No. 02-2210, (the "Sealed Air Action"), Bankr. Ct. Doc.

1827, Ex. 15, and Official Committee of Asbestos Personal Injury Claimants and Official

Committee of Asbestos Property Damage Claimants of W.R. Grace & Co., suing in behalf of the

Chapter 11 Bankruptcy Estate of W.R. Grace & Co., et al v. Fresenius Medical Care Holdings,

Inc. and National Medical Care, Inc., Adv. No. 02-2211, (the "Fresenius Action") (Bankr. Ct.

Doc. 1829, Ex. 16).

15.     The Sealed Air Action is an adversary proceeding in which the plaintiff Asbestos

Committees have brought claims on behalf of the Grace bankruptcy estate, asserting among other

things that the Sealed Air Transaction must be avoided pursuant to 11 U.S.C. § 544 (b), which

allows for the avoidance of "any transfer of an interest of the debtor in property. . . that is

voidable under applicable law by a creditor holding an unsecured claim that is allowable under

[Bankruptcy Code] section 502." The "applicable law" requiring the avoidance of the Sealed

Air Transaction is the New Jersey version of the Uniform Fraudulent Transfer Act ("UFTA"),

which provides in the section relevant to "constructive fraudulent transfer" claims that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor
> whose claim arose before the transfer was made or the obligation was incurred if
> the debtor made the transfer or incurred the obligation without receiving
> reasonably equivalent value in exchange for the transfer or obligation and the
> debtor was insolvent at the time or the debtor became insolvent as a result of the
> transfer or obligation.

UFTA, §5(A).

16.     The challenged Sealed Air Transaction was carried out in a series of steps in

March 1998 whereby Grace-Conn (the current Debtor) spun-off its Packaging Business, which

was worth at least $5 billion at the time, to its parent company in exchange for consideration

worth approximately $1.2 billion. After the spin-off, the new Grace entity that had been formed

to hold the Packaging Business was merged into old Sealed Air, creating the Sealed Air of today.

The Asbestos Committees will prove that the Transaction is voidable under UFTA § 5's "applicable law" because Grace-Conn (1) received far less than reasonably equivalent value for the Packaging Business in the spin-off (i.e., $1.2 billion versus $5 billion), and (2) the Transaction rendered Grace-Conn insolvent because its remaining assets were worth far less than the asbestos and other liabilities that remained with Grace-Conn after the spin-off. See Original Complaint in Sealed Air Action, Adv. Pro. 02-2210 Doc. 2, Ex. 15 at ¶¶ 15-30, 34-37.

17.     If successful, the Sealed Air Action would result in the recovery of more than *$3.8 Billion* dollars in value for the benefit of Grace's bankruptcy estate and all creditors. See Original Complaint in Sealed Air Action, Ex. 15 at ¶¶ 21, 22. By contrast, the total book value of all of the Debtors' assets, without regard to liabilities, as set forth in Grace's December 31, 2001 SEC Form 10-K and financial statements, is only $2.7 Billion.[1] See W.R. Grace & Co. Form 10K for the year ended December 31, 2001, Ex. 17 at F-8. Thus, the value to the Grace bankruptcy estate of the Fraudulent Transfer claims asserted in the Sealed Air Action is more than a billion dollars more than Grace's assets which are presently available for distribution to its creditors.

18.     On April 1, 2002, Debtor W.R. Grace & Co.-Conn. filed a Motion to Intervene in the Sealed Air Action and the Fresenius Action. Adv. Pro. 02-2210 Doc. 8, Ex. 18. Although Grace's "Pleading in Intervention" did not say whether it was seeking to intervene as a plaintiff or defendant, Grace's Memorandum in Support of Its Motion to Intervene made clear that the Debtor would contend it was solvent at the time of the Sealed Air and Fresenius transactions and thus would oppose the claims asserted by the Asbestos Committees on behalf of the Grace

---

[1]     The PI Committee recognizes that GAAP-based asset valuations are not always indicative of the real economic value of a company's assets. In Grace's case the PI Committee's financial experts and others have concluded that it is unlikely that true economic value of the Grace assets (including any insurance) would be any higher than $2.7 Billion.

bankruptcy estate. See Grace Mem. in Supp. of Mot. to Intervene, Bankr. Ct. Doc. 8, Ex. 19 at 6. On June 12, 2002, the District Court denied Grace's initial Motion to Intervene on the ground that it had not filed a proper pleading in intervention. Adv. Pro. 02-2210 Doc. 35, Ex. 20.

19.     On April 17, 2002, the District Court entered an Order stating that "the first issue to be tried by the Court shall be the issue of constructive fraudulent conveyance with respect to the transfer alleged in paragraph two of the complaint in Adversary Proceeding No. 02-2210, (the "Sealed Air Transfer") and it is further ORDERED that, subject to further Order of the Court, discovery in this matter shall be limited to information and materials that are relevant to the issue of constructive fraudulent conveyance with respect to the Sealed Air Transfer." Adv. Pro. 02-2210 Doc. 17, Ex. 21.

20.     On May 22, 2002, the United States filed a Motion to Intervene in the Sealed Air Action to (1) assist Plaintiffs in preparing a case as to the fair valuation of the environmental liabilities of Grace-Conn. or its parent corporation at the time of the allegedly fraudulent transfers, and (2) brief related legal issues for the benefit of the Court. Adv. Pro. 02-2210 Doc. 28, Ex. 22. On June 14, 2002 the District Court granted the United States' motion to intervene. Adv. Pro. 02-2210 Doc. 38, Ex. 23.

21.     On June 20, 2002, Debtor W.R. Grace & Co. Conn. filed a Renewed Motion to Intervene in the Sealed Air Action and the Fresenius Action. Adv. Pro. 02-2210 Doc. 43, Ex. 24. This time, Grace made clear that it sought to intervene as a ***defendant***, see Grace Renewed Mot. to Intervene, Adv. Pro. 02-2210 Doc. 43, Ex. 24 at 3, and Paragraph 1 of Grace's Answer and Affirmative Defenses expressly states that "Grace admits that this is an action to set aside fraudulent transfers, ***but denies that the claims have any merit.***" Adv. Pro. 02-2210 Doc. 43,

Ex. 24A. The District Court granted Grace's Renewed Motion to Intervene on June 24, 2002. Adv. Pro. 02-2210 Doc. 63, Ex. 25.

22.    Debtor W.R. Grace & Co.-Conn. thus has placed itself in the strange position of litigating to ***defeat*** claims that would greatly benefit the Grace bankruptcy estate. Since its appearance in the Sealed Air Action, Grace has actively litigated against the interests of its creditors by, among other things: supporting Sealed Air's arguments in various motions before the Court; instructing Grace employees or agents not to answer certain questions at deposition; appearing at almost every deposition and making objections to certain questions posed by the Asbestos Committees' lawyers; refusing to produce relevant documents necessitating numerous motions to compel; and taking the lead in deposing plaintiffs' asbestos personal injury claims estimation expert. Grace's contentiousness in discovery has resulted in the Special Master being required to issue fourteen separate Orders concerning discovery disputes. See September 18, 2002 Bench Memorandum, Adv. Pro. 02-2210 Doc. 258, Ex. 26.

23.    On September 11, 2002, after discovery was nearly complete and the September 30 trial date was less than 3 weeks away, Grace filed a Motion seeking permission to withdraw its intervention and appearance as a party in the Sealed Air Action. Grace argued that it should be permitted to revert to amicus status because otherwise a negative result in the adversary proceeding might be binding against it in other fora, including the bankruptcy case in chief. See Mem. in Support of W.R. Grace & Co.-Conn's Motion to Withdraw Intervention, Ex. 27 at 7-8. In accordance with a Bench Memorandum issued on September 18, 2002, the District Court denied Grace's Motion to Withdraw on September 20. See Order dated September 20, 2002, Adv. Pro. 02-2210 Doc. 266, Ex. 28; Bench Memorandum dated September 18, 2002, Adv. Pro. 02-2210 Doc. 258, Ex. 26.

24.     On September 20, 2002, ten days before trial was scheduled to begin in the Sealed

Air Action, the Third Circuit issued its opinion in The Official Comm. of Unsecured Creditors of

Cybergenics Corp. v. Chinery, No. 01-3805, 2002 WL 31102712 (3rd Cir. Sept. 20, 2002)

(hereinafter "Cybergenics II"). Ex. 29. In Cybergenics II, the Third Circuit affirmed a district

court's dismissal of claims brought by a creditor's committee on behalf of a bankruptcy estate

under 11 U.S.C. § 544(b) to challenge certain transactions as fraudulent transfers. The panel's

opinion in Cybergenics II framed the question it was deciding as "whether a creditor's committee

may assert fraudulent transfer claims under § 544 of the Bankruptcy Code ("Code"), or whether

only the trustee or debtor in possession may bring such actions." Cybergenics II, 2002 WL

31102712, at *1. Ex. 29. In affirming the District Court's order dismissing the committee's

claims against the defendants, the Third Circuit held:

> In light of the plain meaning of § 544(b) and the reasoning of Hartford
> Underwriters, we hold that a creditor or creditors' committee may not
> initiate a fraudulent transfer action under § 544.    Neither may a
> bankruptcy court authorize such an arrangement.

Cybergenics II, 2002 WL 31102712, Ex. 29 at *13.

25.     On September 24, 2002, the District Court held an on-the-record conference to

determine whether the Sealed Air Action could proceed in its current procedural posture in light

of Cybergenics II.    Appearances were entered by counsel for the PI Committee, the PD

Committee, the Debtor, the Official Committee of Unsecured Creditors, and Sealed Air.  After

hearing proposals from counsel, the Court postponed the September 30 trial until further notice.

See Transcript of September 24, 2002 Hearing, Adv. Pro. 02-2210 Doc. 301, Ex. 30 at 52.

26.     On October 4, 2002, the Acting United States Trustee ("UST") for Region III

filed a Memorandum Response To the Court's October 2, 2002 Order to Show Cause.  In this

Response, the United States Trustee asserted that if Cybergenics II was held applicable to the

Sealed Air Action, and if the Debtor would not prosecute the Fraudulent Transfer Claims itself, then the "option which clearly and unimpeachably comports with Cybergenics, and therefore is most likely to lead expeditiously to finality in this action, is appointment of a Chapter 11 Trustee, provided that the Court determines on appropriate motion that grounds exist under section 1104 of the Bankruptcy Code to enter an order directing the UST to appoint a trustee." UST Response, Adv. Pro. 02-2210 Doc. 311, Ex. 31 at 3.

27.     On October 7, 2002, the District Court held another on-the-record hearing during which counsel for the PI Committee, the PD Committee, the Debtor, the Official Committee of Unsecured Creditors, the Equity Committee, and Sealed Air entered appearances and were allowed to be heard. At that hearing the Court entered the following Orders on the record:

> (A)     The trial of the constructive fraudulent transfer claims against Sealed Air will begin on December 2, 2002, with the case to remain in its current procedural posture (i.e. the Asbestos Committees as plaintiffs asserting the avoidance claims under 11 U.S.C. § 544(b) on behalf of the Grace Bankruptcy Estate, with Grace and Sealed Air/Cryovac as defendants);
>
> (B)     The Court withdrew the reference from the bankruptcy court for any motion filed by any party for the appointment of a trustee for the Debtor; and
>
> (C)     Any motion for the appointment of a trustee or other pleading any party wished to file must be filed with the District Court by October 11, 2002.

See Transcript of October 7, 2002 Hearing, Ex. 32 at __.[2]

28.     In light of Cybergenics II, the Debtor's refusal to assert or prosecute the Fraudulent Transfer Claims against Fresenius and Sealed Air, and the District Court's October 7, 2002 Order setting the constructive fraudulent transfer claims in the Sealed Air Action for trial on December 2, 2002, with the case remaining in its current procedural posture, the PI Committee has no alternative but to move for the appointment of Trustee pursuant to 11 U.S.C.

---

[2]     The transcript of this hearing was not yet available at the time this Motion was filed. As soon as it is available, the PI Committee will supplement the record to add that transcript as Exhibit 32.

§ 1104(a).  Appointment of a Trustee is the only way to ensure that a proper representative of the Grace Bankruptcy Estate is empowered to assert the avoidance claims under 11 U.S.C. 544(b) against Sealed Air.

Remainder of page intentionally left blank.

## ARGUMENT

## I.    THE COURT "SHALL" APPOINT A TRUSTEE IN THESE CIRCUMSTANCES

29.     Under the current circumstances in this bankruptcy case and the Sealed Air

Action -- most notably the enormous value to the Grace bankruptcy estate of the § 544(b)

avoidance claims against Sealed Air, the fact that the District Court was persuaded that the

claims had sufficient merit and benefit to the bankruptcy estate to authorize the Asbestos

Committees to pursue them, the Debtor's refusal to prosecute (and in fact, active litigation

against) these claims, and the Third Circuit's eleventh hour ruling in Cybergenics II that only a

debtor in possession or trustee may assert the § 544(b) claims -- the Bankruptcy Code mandates

that the Court "shall" appoint a Trustee whose powers include the ability to prosecute the

pending fraudulent transfer claims against Sealed Air.  Failure to make such an appointment to

ensure the vigorous and legally effective prosecution of the 11 U.S.C. § 544(b) claims against

Sealed Air would be clearly adverse to the interests of Grace's creditors (and indeed adverse to

any party with an interest in the Grace bankruptcy estate).  Failing to appoint a Trustee given the

potential effect of Cybergenics II on the enormously valuable Section 544(b) claims would be

unquestionably wrong and would constitute an abuse of the Court's discretion.

### A.  The Standards for Appointment of a Trustee Under 11 U.S.C. § 1104(a).

30.     Under the Bankruptcy Code, appointment of a chapter 11 Trustee is governed by

11 U.S.C. § 1104(a), which provides as follows:

> At any time after the commencement of the case but before confirmation of a
> plan, on request of a party in interest or the United States trustee, and after notice
> and a hearing, the court shall order the appointment of a trustee—
>
> (1) for cause, including *fraud, dishonesty, incompetence,* or *gross mismanagement*
> of the affairs of the debtor by current management, either before or after the
> commencement of the case, *or similar cause,* but not including the number of

holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is *in the interest of creditors*, any equity security holders, and other *interests of the estate*, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a) (emphasis added).

31.     Subsection (a)(1) mandates appointment of a Trustee when "cause" to do so is present, and a determination that such cause exists lies within the province of the bankruptcy court. In re North American Communications, Inc., 138 B.R. 175, 178 (W.D. Pa. 1992) (citing Committee of Dalkon Shield Claimants v. A.H. Robins Co., Inc., 828 F.2d 239, 242 (4th Cir. 1987)). Importantly for present purposes here, *incompetence* and *gross mismanagement* are the most common grounds for appointment of a trustee for cause under subsection 1104(a)(1).   Id. (citing In re Sharon Steel Corp., 86 B.R. 455, 458 (Bankr. W.D. Pa. 1988)); see also In re Boineau's, Inc., No. 90-1165, 1992 WL 38142, at **1 (4th Cir. Mar. 3, 1992) (holding that evidence of squandering corporate assets, hiding corporate records, and damaging the business is sufficient for finding of *incompetence* and *gross mismanagement* under § 1104(a)(1)).

32.     Subsection (a)(2) creates a more flexible standard that allows for appointment of a Trustee, even though "cause" may not exist, when doing so would *serve the interests of the creditors and the estate*.   See In re Sharon Steel Corp., 871 F.2d 1217, 1226 (3d Cir. 1989). There are a myriad of factors justifying appointment of a Trustee under subsection (a)(2), all of which reflect the practical reality that a Trustee is needed to manage particular affairs of the debtor. North American, 138 B.R. at 178-79. Most pertinent for present purposes, many courts have granted motions to appoint a bankruptcy trustee under 11 U.S.C. § 1104(a)(2) when a debtor-in-possession refuses to assert or is conflicted from asserting fraudulent transfer or avoidance claims that would benefit the estate and its creditors. See Sharon Steel, 871 F.2d at

1220-21, 1229 (upholding lower court's appointment of trustee where debtor-in-possession refused to sue for recovery of transfers that were, at best, voidable and, at worst, fraudulent conveyances); In re PRS Ins. Group, Inc., 274 B.R. 381, 390-91 (Bankr. D. Del. 2001) (opining that appointment of a trustee is mandated under § 1104(a) where current management will not investigate and prosecute potential causes of action held by the Debtor); see also, In re Intercat, Inc., 247 B.R. 911, 923 (Bankr. S.D. Ga. 2000); North American, 138 B.R. at 179-80.

33.     Although there exists a general presumption against appointing a trustee because the "debtor-in-possession is a fiduciary of the creditors and, as a result, has an obligation to refrain from acting in a manner which could damage the estate, or hinder a successful reorganization," In re Marvel Entertainment, 140 F.3d 463, 471 (3d Cir. 1998) (citing Petit v. New England Mort. Servs., 182 B.R. 64, 69 (D. Me. 1995)), that presumption falls where the Debtor takes steps to undermine the value of the estate to its creditors. See, e.g., id. at 478 (upholding district court's appointment of Trustee where (1) acrimony between debtor and its creditors rose to the level of "cause" under 1104(a)(1) and (2) appointment of Trustee was found to be in the best interests of the parties/estate); see also, e.g., Sharon Steel, 871 F.2d at 1228 (holding that appointment of trustee was appropriate where debtor engages in pre-bankruptcy systematic syphoning of assets to other companies under common control).

**B.      Cybergenics II And the Value Of The § 544(b) Claims Against Sealed Air to the Grace Bankruptcy Estate Mandate The Appointment Of a Trustee.**

34.      As discussed above, in Cybergenics II, the Third Circuit squarely held:

> In light of the plain meaning of § 544(b) and the reasoning of Hartford Underwriters, we hold that a creditor or creditors' committee may not initiate a fraudulent transfer action under § 544. Neither may a bankruptcy court authorize such an arrangement.

Cybergenics II, 2002 WL 31102712, at *13. Given this holding, a court could easily rule only a trustee may prosecute the § 544(b) claims raised in the Sealed Air Action on behalf of the Grace bankruptcy estate, that the Asbestos Committees lack the capacity to do so, and therefore dismiss the case. The possibility of the estate losing the valuable avoidance claims against Sealed Air unless a trustee is appointed clearly mandates the appointment of a trustee to prosecute the claims.

35.      As set forth in the Factual Background section above, the following facts are undisputable:

(A)      The § 544(b) avoidance claims against Sealed Air, if successful, are of enormous value to the Grace bankruptcy estate, and could result in a recovery of over $3.8 billion;

(B)      If successful, the avoidance claims against Sealed Air constitute the most valuable asset of the bankruptcy estate, dwarfing the combined value of all other assets by over a billion dollars;

(C)      The Asbestos Committees persuaded the District Court that there was sufficient merit to the Fraudulent Transfer Claims such that the Court authorized the Asbestos Committees to prosecute the claims on behalf of the Grace bankruptcy estate. As noted above, in order for the Court to authorize the Asbestos

Committees to bring the Fraudulent Transfer Claims on behalf of the Grace

bankruptcy estate, the Asbestos Committees had to persuade it that (1) the claims

were colorable (2) bringing the claim would benefit the bankruptcy estate; and (3)

the debtor was unwilling to pursue the claims.  See Motion to Prosecute Ex. 9 at

¶ 16.  See also Cybergenics I, 226 F.3d at 240 n.3; Gibson Group, 66 F.3d at

1438; Louisiana World Exposition, 858 F.2d at 247.

(D)     The § 544(b) avoidance claims are currently being prosecuted on behalf of the

        Grace bankruptcy estate by the Asbestos Committees;

(E)     Based on the discovery taken in the Sealed Air Action and the litigation to date,

        there is a strong probability that the fraudulent transfer claims against Sealed Air

        will succeed on the merits;

(F)     Cybergenics II holds that a creditors' committee may not assert § 544(b)

        avoidance claims on behalf of the bankruptcy estate; only the debtor-in-

        possession or a trustee may do so;[3]

(G)     The Debtor here has refused to prosecute the avoidance claims against Sealed Air

        and has indeed disabled itself from doing so in the future by intervening in the

        Sealed Air Action as a defendant and actively litigating to defeat the § 544(b)

        claims;

(H)     Absent the appointment of an estate representative with authority to prosecute the

        § 544(b) claims, there is a strong likelihood the claims will be lost if the case is

        allowed to proceed in its current posture; and

---

[3]     Although the PI Committee initially recommended to the Court that an examiner appointed pursuant to 11
U.S.C. § 1106(b) could prosecute avoidance claims on behalf of a bankruptcy estate, after further scrutiny of
Cybergenics II and the subsequent commentary about it, the PI Committee is now persuaded that the only estate
representative certain to survive scrutiny under Cybergenics II is a bankruptcy trustee.

(I)     The only estate representative that is certain to survive scrutiny under

Cybergenics II is a bankruptcy trustee.

In these circumstances, the Bankruptcy Code mandates the appointment of a trustee, regardless of whether the decision to order such an appointment is analyzed under 11 U.S.C. § 1104 subsection (a)(1) or (a)(2).

36.     The Debtor, by choosing not to prosecute avoidance claims that could significantly enhance the value of the bankruptcy estate, and indeed by actively litigating against the return of assets to its estate, is squandering a valuable asset to the detriment of its creditors. This intentional diminution of estate value, in and of itself, constitutes "gross mismanagement" of the estate assets, given a debtor-in-possession's fiduciary duties to creditors, equity holders, and other interested parties to maximize the value of the estate.    Alternatively, refusing to prosecute a $3.8 billion claim which has a substantial chance of success on the merits is clear evidence of incompetence (or perhaps legal malpractice) on a massive scale.    Certainly, the Debtor's approach to the fraudulent transfer litigation in the Sealed Air Action has been inconsistent with the faithful discharge of its duties to creditors as a debtor-in-possession.

37.     Even if the Debtor's attempts undermine and torpedo the Fraudulent Transfer Claims against Sealed Air do not rise to the level of "gross mismanagement" or "incompetence," there can be no doubt that in the present circumstances the appointment of a trustee is in the interest of creditors, equity security holders, and other interests of the estate, when failure to do so would likely lead to the loss of a $3.8 billion asset.    It goes without saying that a successful avoidance of the Sealed Air Transaction and the recovery of the Packaging Business assets valued at over $3.8 billion would serve the best interests of creditors.    The enhanced value of the estate upon successful prosecution of the fraudulent transfer claims will benefit all creditors of

the Debtor by increasing the overall distribution available to each of them.   Successful prosecution of the claim benefits the equity as well, because it represents their only chance to have a possible distribution from the estate.   Even the Debtor, which seeks to position itself favorably for life after Chapter 11, would benefit by the successful prosecution of the avoidance claims through its corresponding ability to pay a higher value on its creditors' claims, thereby engendering goodwill from its lenders who will be vital to its post-bankruptcy operations. Failure to appoint a trustee would create a great probability that the avoidance claims against Sealed Air, and the consequent benefits to the estate of their successful prosecution, would be lost forever.

38.     Accordingly, given the totality of the circumstances here, the appointment of a Trustee empowered to prosecute the avoidance claims against Sealed Air is necessary.   See Sharon Steel, 871 F.2d at 1228; In re PRS Ins. Group, Inc., 274 B.R. at 390-91.   Failure to order the appointment of a Trustee is an abuse of discretion.   Because the only estate representative that is certain to survive scrutiny under Cybergenics II to prosecute the Sealed Air Action is a bankruptcy trustee, the PI Committee opposes the appointment of any estate representative other than a trustee to prosecute the claims.

39.     Should the Court deny this Motion, the PI Committee requests that the Court certify its Order denying this Motion for immediate appellate review pursuant to 28 U.S.C. § 1292(b).   Certification for immediate appellate review of an Order denying this Motion is appropriate given the fact that any Order resolving this Motion will necessarily involve a controlling question of law as to which there is substantial ground for difference of opinion, that an immediate appeal from the order may materially advance the ultimate termination of the Sealed Air Action and the bankruptcy case as a whole, the importance of the issues raised by this

Motion to the Grace bankruptcy reorganization and the Sealed Air Action, and the pending December 2, 2002, trial date in the Sealed Air Action.

## CONCLUSION

40.     For the reasons stated above, the Court should order the appointment of a Trustee. The PI Committee requests a hearing on this Motion For An Order Appointing a Trustee at the earliest time available to the Court.

Dated: October 11, 2002

**CAPLIN & DRYSDALE, CHARTERED**

*Nathan D. Finch by MTH with permission*

Elihu Inselbuch
399 Park Avenue, 27th Floor
New York, NY 10022
Telephone: (212) 319-7125
Telefax:    (212) 644-6755

Peter Van N. Lockwood
Trevor W. Swett
Nathan D. Finch
One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone: (202) 862-5000
Telefax:    (202) 429-3301

CAMPBELL & LEVINE, LLC

Marla R. Eskin (ID No. 2989)
Mark T. Hurford (ID No. 3299)
800 N. King Street
Suite 300
Wilmington, DE 19801
Telephone:      (302) 426-1900
Telefax:        (302) 426-9947

*Counsel for the Official Committee of*
*Asbestos Personal Injury Claimants*