# EXHIBIT 3

1307

1  FREDERICK P. FURTH (No. 38438)
   BEN FURTH (No. 203763)
2  THE FURTH FIRM
   Furth Building, Ste. 1000
3  201 Sansome Street
   San Francisco, California 94104
4  Telephone: (415) 433-2070

5  LEWIS T. LECLAIR (No. 77136)
   MIKE McKOOL, JR.
6  SAM F. BAXTER
   GARY CRUCIANI
7  McKOOL SMITH, P.C.
   300 Crescent Court, Suite 1500
8  Dallas, TX 75201
   Telephone: (214) 978-4000

9

ENDORSED
F I L E D
San Francisco County Superior Court

NOV 2 2 2000

ALAN CARLSON, Clerk
BY: _KEVIN R. DOUGHERTY_
Deputy Clerk

10  **SUPERIOR COURT OF CALIFORNIA**
    **COUNTY OF SAN FRANCISCO**
    **UNLIMITED JURISDICTION**

11

12  TRAVIS ABNER, JAMES GILL,          )   GENERAL CIVIL CASE
    RICHARD MESQUITA, HARRY            )
13  BARSKY, PETER CASARINO, JOAN       )   No.  315465
    KELLY, RICHARD JONES, NOEL         )
14  HARRISON, PAULINE SPIKER, JOAN     )   FIRST AMENDED CLASS ACTION
    MARY KELLEY, THOMAS JOSEPH         )   COMPLAINT FOR VIOLATIONS OF:
15  COCO, JOHN ROBERTS, LAWRENCE       )
    BULLOCK, and CHARLES URBAN,        )   1)  THE UNIFORM FRAUDULENT
16  individually and on behalf of themselves )       TRANSFER ACT AND COMMON
    and all others similarly situated,  )       LAW OF FRAUDULENT
17                                      )       CONVEYANCE
    TRAVIS ABNER, JAMES GILL,          )   2)  CIVIL CONSPIRACY
18  RICHARD MESQUITA, on behalf of     )   3)  UNFAIR BUSINESS PRACTICES:
    themselves and the California General )       BROUGHT ON BEHALF OF THE
19  Public,                            )       GENERAL PUBLIC
                                       )
20       Plaintiffs,                   )
         vs.                           )   JURY DEMAND
21                                     )
    W.R. GRACE & COMPANY; W.R.         )
22  GRACE CO.-CONN; GRACE              )
    HOLDINGS, INC; GRACE SPECIALTY     )
23  CHEMICALS, INC.; MERRILL LYNCH,    )
    PIERCE, FENNER & SMITH INC.;       )
24  CREDIT SUISSE FIRST BOSTON         )
    CORP.; SEALED AIR CORPORATION      )
25  (US); NATIONAL MEDICAL CARE,       )
    INC.; FRESENIUS U.S.A., INC.;      )
26  FRESENIUS MEDICAL CARE, INC.;      )
    FRESENIUS NATIONAL MEDICAL         )
27  CARE, INC.; and DOES 1-100,        )
                                       )
28       Defendants.                   )

Plaintiffs Travis Abner, James Gill, Richard Mesquita, Harry Barsky, Peter Casarino, Joan Kelley, Richard Jones, Noel Harrison, Pauline Spiker, Joan Mary Kelley, Thomas Joseph Coco, John Roberts, Lawrence Bullock, and Charles Urban, on behalf of themselves and a national class of similarly situated people, bring this action against Merrill Lynch, Pierce, Fenner & Smith, Credit Suisse First Boston Corporation, W. R. Grace & Co., Inc., W. R. Grace & Co.-Conn., Inc., Grace Holdings, Inc., Grace Specialty Chemicals, Inc., National Medical Care, Inc., Fresenius U.S.A., Inc., Fresenius Medical Care, Inc., Fresenius National Medical Care, Inc., Sealed Air Corporation (US), and DOES defendants 1-100 ("Defendants").

Plaintiffs James Gill, Richard Mesquita, and Travis Abner, on behalf of themselves and on behalf of the California general public bring this action in a representative capacity under California Business and Professions Code Section 17200 against the Defendants. The Plaintiffs allege the following factual and legal allegations upon information and belief. Paragraphs pertaining to Plaintiffs' own actions, however, are alleged upon personal knowledge.

## INTRODUCTION AND OVERVIEW

1.     This case arises from W.R. Grace & Co., Inc.'s ("Grace") efforts to shield itself from tort claims arising from its asbestos liability.

2.     The Plaintiffs represent the tens of thousands of people with unsatisfied personal injury or wrongful death claims against Grace and its affiliates based upon exposure to asbestos. Plaintiffs are creditors of Grace and its former subsidiary W.R. Grace & Co.-Conn.

3.     Grace and its predecessors and certain subsidiaries manufactured and sold asbestos products. Those products have been responsible for severe personal injuries and tens of thousands of deaths. As a result, Grace is now the defendant in over 40,000 lawsuits filed by individuals and survivors of individuals exposed to its asbestos products. Thousands of those lawsuits are pending in the State of California.

4.      In September of 1996 and again in March of 1998, Grace entered into a complex series of transactions with the intention and effect of fraudulently transferring and conveying valuable assets to Defendants as herein alleged. In September of 1996, Grace Specialty Chemicals Inc. spun off its packaging and specialty chemicals businesses—and its asbestos liabilities to the Class—but first stripped away and segregated out its medical care company. The spun-off company was called W.R. Grace & Co., and the medical care business was merged with and into a German company, Fresenius Medical Care AG. The series of transactions rendered Grace unable to pay its future debts as they matured (including its asbestos liability), and constituted a fraudulent transfer and conveyance.

5.      In March of 1998, Grace perpetrated a similarly structured fraudulent transfer and conveyance. This transaction consisted of Grace merging its Cryovac packaging business (with sales of $1.83 billion in 1997) with Sealed Air Corporation in a transaction valued at over $6 billion.  This transaction resulted in Grace shareholders owning approximately 63% of Sealed Air Corp.  This series of transactions rendered Grace insolvent, unable to pay its debts as they matured, and constituted a fraudulent transfer and conveyance.

6.      Plaintiffs seek damages, a constructive trust, a judicial declaration that Defendants— to which Grace fraudulently transferred assets—are responsible for the asbestos liabilities of Grace and W.R. Grace & Co.-Conn, and judgment against all Defendants for their role in fraudulently transferring valuable assets of Grace and W.R. Grace & Co.-Conn. to themselves and to other entities.

## JURISDICTION AND VENUE

7.      All Defendants are subject to the jurisdiction of the courts of the State of California by virtue of their business dealings and transactions in California and by causing an injurious effect in California through their fraudulent conveyances.

8.      This Court has jurisdiction over each Defendant named herein because each defendant is a corporation doing sufficient business in California, and having sufficient minimum contacts with California or otherwise intentionally availing itself of the California

FIRST AMENDED CLASS ACTION COMPLAINT

market through the manufacture, production, promotion, sale, marketing and distribution of its products in California, to render the exercise of jurisdiction by the California courts permissible.

9.    Venue is proper because some of the Class Members' property that was fraudulently conveyed is found in this county and Class Members within this County were damaged by Defendants' acts. In addition, at least one of the plaintiffs resides in this County and his claim arose in this County.

## PARTIES

10.    Plaintiff Richard Mesquita is a resident of Castro Valley, California. He either has personal injury claims pending as a representative against Grace arising from exposure to asbestos products or has personal injuries arising from exposure to asbestos products and as such is a creditor of Grace.

11.    Plaintiff James Gill is a San Francisco resident. He either has personal injury claims pending as a representative against Grace arising from exposure to asbestos products or has personal injuries arising from exposure to asbestos products and as such is a creditor of Grace.

12.    Plaintiff Travis Abner is an Oakland resident. He either has personal injury claims pending as a representative against Grace arising from exposure to asbestos products or has personal injuries arising from exposure to asbestos products and as such is a creditor of Grace.

13.    Plaintiff Harry Barsky is a resident of Newark, Delaware. He either has personal injury claims pending as a representative against Grace arising from exposure to asbestos products or has personal injuries arising from exposure to asbestos products and as such is a creditor of Grace.

14.    Plaintiff Peter Casarino is a resident of Newark, Delaware. He either has personal injury claims pending as a representative against Grace arising from exposure to

FIRST AMENDED CLASS ACTION COMPLAINT

asbestos products or has personal injuries arising from exposure to asbestos products and as such is a creditor of Grace.

15.    Plaintiff Joan Kelly is a resident of Hudson Falls, New York. She has personal injury claims pending as representative of Phillip LeGrand Kelly against Grace arising from exposure to asbestos products and as such is a creditor of Grace.

16.    Plaintiff Richard Jones is a resident of Lancaster, California. He has personal injury claims pending as representative of Johnny Morris Jones against Grace arising from exposure to asbestos products and as such is a creditor of Grace.

17.    Plaintiff Noel Harrison is a resident of Palmdale, California. He has personal injury claims pending against Grace arising from exposure to asbestos products and as such is a creditor of Grace.

18.    Plaintiff Pauline Spiker is a resident of Los Angeles, California. She has personal injury claims pending as a representative of Harold Spiker against Grace arising from exposure to asbestos products and as such is a creditor of Grace.

19.    Plaintiff Joan Mary Kelley is a resident of Hudson Falls, New York. She either has personal injury claims pending as a representative against Grace arising from exposure to asbestos products and as such is a creditor of Grace.

20.    Plaintiff Thomas Joseph Coco is a resident of Staten Island, New York. He either has personal injury claims pending as a representative against Grace arising from exposure to asbestos products or has personal injuries arising from exposure to asbestos products and as such is a creditor of Grace.

21.    Plaintiff John Roberts is a resident of Staten Island, New York. He either has personal injury claims pending as a representative against Grace arising from exposure to asbestos products or has personal injuries arising from exposure to asbestos products and as such is a creditor of Grace.

22.    Plaintiff Lawrence Bullock is a resident of Bridgeport, Connecticut. He either has personal injury claims pending as a representative against Grace arising from

FIRST AMENDED CLASS ACTION COMPLAINT

exposure to asbestos products or has personal injuries arising from exposure to asbestos products and as such is a creditor of Grace.

23.     Plaintiff Charles Urban is a resident of East Haddam, Connecticut. He either has personal injury claims pending as a representative against Grace arising from exposure to asbestos products or has personal injuries arising from exposure to asbestos products and as such is a creditor of Grace.

24.     Defendant W.R. Grace & Co. is a Delaware corporation, and is headquartered on 7500 Grace Drive in Columbia, MD 21044.

25.     Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") is a Delaware corporation that has its global headquarters at the World Financial Center, North Tower, 250 Vesey Street, New York City, New York 10281. Merrill Lynch is one of the world's largest and most profitable investment banks in the world.

26.     Defendant W.R. Grace & Co.-Conn. ("Grace-Conn.") is a Connecticut corporation that is headquartered on 1750 Clint Moore Rd., Boca Raton, Florida 33487.

27.     Defendant Credit Suisse First Boston Corporation ("First Boston") is a Massachusetts corporation located at Park Avenue Plaza, 55 East 52nd Street, New York, New York 10055. First Boston is among the largest investment banks in the world.

28.     Sealed Air Corporation ("Sealed Air") is a Delaware Corporation that is located at Park 80 East, Saddle Brook, New Jersey.

29.     Defendant Grace Holdings, Inc. is Delaware corporation that is headquartered on One Town Center Rd., in Boca Raton, Florida. It was a subsidiary of W.R. Grace & Co.

30.     Grace Specialty Chemicals, Inc., renamed as W.R. Grace & Co., was a Delaware Corporation with its principal place of business at One Town Center Rd., in Boca Raton, Florida 33486-1010.

31.     Defendant National Medical Care, Inc. is a New York corporation with its corporate headquarters located at 1601Trapelo Rd., in Waltham, Massachusetts.

32.    Defendant Fresenius U.S.A., Inc. is a Delaware corporation with its corporate headquarters located at 2637 Shadelands Dr., Walnut Creek, California 94598.

33.    Defendant Fresenius Medical Care, A.G. is a German Corporation with its principal place of business at Gluckensteinweg 5, 61343 Bad Homburg, Germany.

34.    Defendant Fresenius National Medical Care, Inc. is the name of the reorganized entity created through the fraudulent conveyances described herein.

35.    Defendants Does 1 through 100, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiffs. When their true names and capacities are ascertained, Plaintiffs will amend this complaint by inserting their true names and capacities herein. Plaintiffs is informed and believes and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that his damages as herein alleged were proximately caused by those defendants.

## CLASS ACTION ALLEGATIONS

36.    The Plaintiffs bring this class action under California Code of Civil Procedure Section 382, on behalf of themselves and as representatives of a Class consisting of:

> **"All persons who presently have lawsuits on file in the United States that are pursuing unsatisfied personal injury or wrongful death claims against any of the Defendants based on or relating to asbestos exposure."**

37.    The questions of law and fact common to the Plaintiffs and the Class Members are substantially similar and predominate over the questions affecting the individual members. Among the questions of law and fact common to the Plaintiffs and the Class are the following:

    a.    Whether Grace fraudulently conveyed assets in violation of the Uniform Fraudulent Transfer Act;

FIRST AMENDED CLASS ACTION COMPLAINT

b.  Whether Grace fraudulently conveyed assets in violation of the common law of fraudulent conveyance;

c.  Whether the Defendants conspired to fraudulently transfer assets in violation of Plaintiffs' and Class members' rights;

d.  Whether Grace received a reasonably equivalent value in exchange for the assets it transferred;

e.  Whether Grace was engaged or was about to be engaged in business in which its remaining assets after the transfer were unreasonably small;

f.  Whether Grace intended to incur or reasonably believed it would incur debts beyond its ability to pay as they become due; and

g.  Whether Grace made the transfers as herein alleged with actual intent to hinder, delay or defraud the Plaintiffs and the Class Members;

h.  Whether the transfers should be set aside and declared invalid and the transferees enjoined to return the assets transferred; and

i.  Whether the Defendants should be subject to a money judgment for restitution for the value of any assets transferred, for any profits, derived from the fraudulently transferred assets and for the expenses in carrying out the transfers.

38.  The claims of the Plaintiffs are typical of the claims of the Class Members.

39.  The named Plaintiffs will fairly and adequately protect the interests of the Class they represent and do not have any interests antagonistic to those of the other members of the Class.

40.  The Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation.

FIRST AMENDED CLASS ACTION COMPLAINT

41.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation make it impracticable for the Class Members individually to seek redress for the wrongful conduct alleged herein. If class treatment of these claims were not available, Defendants would likely unfairly profit from their fraudulent transfer or otherwise escape liability.

## FACTUAL ALLEGATIONS

42.    Experts estimate that at least 21 million American workers have been exposed to "significant" amounts of asbestos at the workplace since 1940. Millions others have been exposed through environmental contact or contact with relatives who have worked with the products. Because of its injurious propensities, such exposure, in human terms, has meant that literally tens of thousands of people fall ill or die from asbestos-related diseases every year. In legal terms, it has translated into hundreds of thousands of lawsuits centered mainly in industrialized areas along the country's coasts, including California.

43.    Asbestos litigation has been on going for four decades and as a result of this litigation numerous companies have been forced into bankruptcy. Raymark Industries, Forty-Eight Insulations, Unarco, Standard Asbestos, Johns-Manville Corporation, Eagle-Picher Industries, and Celotex Corporation, just to name a few, all have at one point declared bankruptcy due to asbestos liability.

44.    On September 30, 1996, Grace and Fresenius AG completed a series of transactions that resulted in the creation of two new business entities. First, Grace spun off to its common shareholders a "new" Grace comprised of Grace's packaging and specialty chemicals businesses. Second, Grace's former health care subsidiary, National Medical Care, Inc. ("NMC") was combined with the worldwide dialysis business of Fresenius AG to form a new company named Fresenius Medical Care AG.

45.    As a result of these transactions, Grace's common shareholders received 100% of a "new" W. R. Grace & Co. focused on its packaging and specialty chemicals businesses. "Old" W. R. Grace & Co. common shareholders also received 44.8%

FIRST AMENDED CLASS ACTION COMPLAINT

1   of a newly created health care company, Fresenius Medical Care AG, the world's largest

2   fully integrated renal care company.

3       46.    On March 31, 1998, the "new" Grace and Sealed Air Corporation

4   completed a series of transactions that resulted in the creation of two new companies. First,

5   Grace spun off to its shareholders a second "new" W. R. Grace & Co., comprised of Grace's

6   specialty chemicals businesses. Second, W. R. Grace & Co.'s Cryovac flexible packaging

7   business was combined with Sealed Air, to form the world's leading protective and specialty

8   packaging company. Numerous valuable assets were transferred to Sealed Air and/or related

9   companies.

10      47.    Valued by the market at more than $6 billion, these 1998 transactions

11  provide substantial value to Grace's shareholders, who received 100% of the second "new"

12  W. R. Grace & Co., a premier global specialty chemicals company, and also received

13  common and preferred stock representing approximately 63% of the "new" Sealed Air, the

14  company combining Grace's former Cryovac business with Sealed Air's protective packaging

15  business.

16          A.    The 1996 Fraudulent Transfer.

17      48.    On February 4, 1996, the Grace and Fresenius AG signed an

18  Agreement and Plan of Reorganization and other related agreements. Grace engaged First

19  Boston and Merrill Lynch to act as its financial advisors in connection with Grace's

20  exploration of how to strip out and segregate NMC and other good assets from Grace's

21  specialty chemicals business and asbestos exposure, thus leaving Grace without sufficient

22  capital to pay its asbestos victims and creditors.

23      49.    First Boston and Merrill Lynch counseled, advised, guided, schemed,

24  conspired, and strategized with Grace to accomplish this goal. First Boston and Merrill

25  Lynch each delivered to Grace's board a short "fairness opinion" opining that the 1996

26  transaction was fair "from a financial point of view." But, as reflected in a Form S-4 filed

27  with the Securities and Exchange Commission ("SEC"), First Boston and Merrill Lynch each

28  expressly assumed away the critical issue—whether the 1996 transactions would comply with

FIRST AMENDED CLASS ACTION COMPLAINT

applicable U.S., foreign, federal and state laws including laws relating to fraudulent conveyance, fraudulent transfer, and other similar laws affecting creditors' rights. As explained in the Form S-4, this was done with Grace's consent.

50.   In exchange for their financial advisory services and fairness opinions, First Boston and Merrill Lynch each received fees of between approximately $8.5 million and $9.4 million, expenses, and received indemnification against certain liabilities in connection with their engagement. In addition, First Boston and Merrill Lynch each reserved the right actively to trade and profit in the debt and securities of Grace and the Fresenius entities.

51.   Briefly stated, the September 28 and 29, 1996 transactions unfolded as follows:

- Before the transactions, NMC was a wholly owned subsidiary of Grace-Conn. (Grace Chemicals), which in turn was a wholly owned subsidiary of the parent company Grace;

- Grace-Conn. transferred the stock of NMC to its parent Grace, thus making Grace-Conn. and NMC equal siblings subsidiaries of Grace;

- Grace then transferred the stock of Grace-Conn. to a newly formed subsidiary of Grace, Grace Holding Company, Inc.;

- Grace then spun off to its shareholders this brand new subsidiary Grace Holding Company, Inc. as a totally separate company. This left Grace with NMC as its sole asset;

- Grace (with its sole asset NMC) then merged with Fresenius Medical Care AG, a wholly owned subsidiary of Fresenius AG. This new entity was called Fresenius National Medical Care ("FNMC"). Grace's shareholders effectively received 44.8% of the stock of this new entity FNMC, and Grace ceased to exist; and

- Grace Holding Company, Inc. was renamed W.R. Grace & Co., a Delaware corporation.

52.   The effect of this series of transactions is that Grace-Conn.—the entity with the asbestos liability and now renamed W.R. Grace & Co.—is totally stripped of and

1   segregated from its profitable former subsidiary NMC.  The new W.R. Grace & Co. was left

2   with full responsibility for satisfying Grace's asbestos liabilities, but was left undercapitalized

3   and did not receive fair value for its now lost assets.

4       53.    In the aforementioned Form S-4 regarding these 1996 transactions,

5   Grace expressly recognized that the transactions may constitute a fraudulent transfer. In a

6   section titled "Fraudulent Transfer and Related Considerations," Grace acknowledged its

7   exposure when it stated:

8           "Under applicable law, the NMC Distribution would constitute

9           a 'fraudulent transfer' if (a) New Grace or Grace Chemicals is

10          insolvent, (b) the effect of the NMC Distribution would render

11          New Grace or Grace Chemicals insolvent, (c) the NMC

12          Distribution would leave New Grace or Grace Chemicals

13          unreasonably small capital, or (d) New Grace or Grace

14          Chemicals intended to incur, or believed it would incur, debts

15          beyond its ability to pay as such debts mature. . . . Grace

16          believes that, based on the factors considered in connection with

17          the NMC Distribution, the NMC Distribution will not be a

18          fraudulent transfer and will be made out of surplus in

19          accordance with applicable law. There is no certainty, however,

20          that a court would reach the same conclusion in determining that

21          New Grace and Grace Chemicals have satisfied the applicable

22          standards. In this regard, it should be noted that Grace

23          Chemicals has had, and is expected to continue to have,

24          significant liabilities arising out of asbestos-related litigation and

25          claims. . . . If, in a lawsuit filed by an unpaid creditor or a

26          representative of unpaid creditors or a trustee in bankruptcy, a

27          court were to find that, at the time the NMC Distribution was

28          consummated or after giving effect thereto, either New Grace or

Grace Chemicals, as the case may be, (a) was insolvent, (b) was rendered insolvent by reason of the NMC Distribution, (c) was engaged in a business or transaction for which its remaining assets constituted unreasonably small capital, or (d) intended to incur, or believed it would incur, debts beyond its ability to pay as such debts matured, then such court might require FNMC or NMC to fund certain liabilities of New Grace or Grace Chemicals, as the case may be, for the benefit of New Grace's or Grace Chemicals' creditors. The same consequences would also apply were a court to find that the NMC Distribution was not made out of the surplus of Grace Chemicals."

54.    As Grace fully expected and knew, the 1996 "NMC Distribution" rendered Grace insolvent and with unreasonably small capital reserves. Grace intended and believed that following and as a result of the NMC Distribution transactions it would have debts beyond its ability to pay such debts as they matured.

B.    The 1998 Fraudulent Transfer.

55.    In August 1997, Grace—now consisting of a the pared down former W.R. Grace-Conn.—entered into an agreement with Sealed Air to effect another fraudulent conveyance transaction structured almost identically to Grace's 1996 fraudulent conveyance transactions involving Fresenius. This time Grace stripped out and segregated its packaging business from its chemical subsidiary's asbestos liability, thus further leaving Grace without sufficient capital to pay its asbestos victims and creditors.

56.    Once again, Grace engaged its cohorts First Boston and Merrill Lynch to act as its financial advisors in connection with Grace's exploration of how to strip out and segregate its packaging business and other good assets from Grace's specialty chemicals business and asbestos exposure, thus leaving Grace without sufficient capital to pay its asbestos victims and creditors.

57.    First Boston and Merrill Lynch counseled, advised, guided, schemed,

1  conspired, and strategized with Grace to accomplish this goal. First Boston and Merrill

2  Lynch advised Grace about the structure and terms of the 1998 transactions. They opined that

3  the transactions were fair from a financial point of view—but again expressly assumed with

4  Grace's consent that the transactions did not constitute a fraudulent transfer. Grace paid each

5  of First Boston and Merrill Lynch at least $7.5 million and perhaps as much as $17.5 million

6  in connection with their work on this transaction.

7        58.   Briefly stated, the March 1998 transactions unfolded as follows.

8        •   Before the transactions, Grace consisted of a specialty chemicals

9  business and a packaging business;

10        •   Grace separated its specialty chemicals business and a packaging

11  business into two separate subsidiaries;

12        •   Grace then transferred the stock of Grace-Conn. (the specialty

13  chemicals company) to a newly formed subsidiary of Grace, Grace Specialty Chemicals, Inc.;

14        •   Grace then spun off to its shareholders this brand new subsidiary Grace

15  Specialty Chemicals as a totally separate company. This left Grace with its packaging

16  business as its sole asset;

17        •   Grace (with its sole asset the packaging company) then merged with

18  and into Sealed Air Corporation, a company outside the Grace family of companies; and

19        •   Grace's shareholders effectively receive 63% of the stock of Sealed Air

20  Corporation.

21        59.   The result of these transaction is that Grace is totally stripped of and

22  segregated from its profitable formerly affiliated packaging business. The new W.R. Grace &

23  Co. is left with full responsibility for satisfying Grace's asbestos liabilities, but was left

24  undercapitalized and did not receive fair value for its now lost assets.

25        60.   In another Form S-4 filing with the SEC, Grace acknowledged—as it

26  had with regard to its September 1996 series of transactions—that its March 1998 series of

27  transactions may constitute a fraudulent transfer:

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"Claimants may also bring suit seeking recovery from New Sealed Air or its subsidiaries by claiming that the transfers of assets and liabilities in connection with the reorganization of Grace, including the separation of Grace's packaging and specialty chemicals businesses and the cash transfer to and spin-off of New Grace, were 'fraudulent transfers.' A transfer would be a fraudulent transfer if the transferor received less than reasonably equivalent value and the transferor was insolvent at the time of the transfer, was rendered insolvent by the transfer or was left with unreasonably small capital to engage in its business. A transfer may also be a fraudulent transfer if it was made to hinder, delay or defraud creditors. If any transfers in connection with the reorganization of Grace are found to be fraudulent transfers, the recipient (including New Sealed Air and its subsidiaries) might be required to return the property to the transferor."

61.    Grace represented that the newly formed W.R. Grace & Co. would be adequately capitalized and purported to believe that the transfers effected in the 1998 transactions were not fraudulent. Grace admitted, however, in its SEC filing that "a court applying the relevant legal standards may not reach the same conclusions."

62.    As a result of the 1996 and 1998 fraudulent transfer transactions, the so-called W.R. Grace & Co. entity left with the asbestos liability is a mere shadow of its former self. Virtually all of its valuable assets had been transferred away from the asbestos liabilities. The asbestos liabilities facing Grace far exceed Grace's fraudulently diminished worth.

63.    As of 1996, Grace was aware that it faced tremendous exposure in the asbestos litigation against it. Its aggregate accrual for asbestos liabilities at December 31, 1996, was reported by the firm to be $994.1 million. This amount includes all pending

2026v5.bsf.doc                                            -15-

FIRST AMENDED CLASS ACTION COMPLAINT

1  personal injury and property damage claims as well as personal injury claims expected to be

2  filed through 2001.

3       64.  This exposure has only increased over time. According to its Form 10-

4  K filed with the SEC on March 28, 2000, as of December 31, 1999, W.R. Grace &

5  Company was a defendant in approximately 50,342 asbestos related lawsuits, involving

6  105,670 claims for personal injury. This number represented an increase over its exposure at

7  the end of 1998, when 45,086 lawsuits involving 97,017 claims for personal injury were

8  pending.

9       65.  In that same Form 10-K, Grace noted that judgments had been entered

10  against it in seven cases for a total of $60.3 million and that it had settled 203 cases for a total

11  of $603.8 million. Grace estimated that its gross aggregate accrual for asbestos liabilities as

12  of December 21, 1999 was $1.084 billion. That figure did not take into account a national

13  class action filed against it in federal district court of Massachusetts in February of 2000 on

14  behalf of all owners of homes containing Grace's Zonolite attic fill insulation.

15       66.  At all times mentioned herein, Defendants knew of Grace's massive

16  asbestos liability and the experiences of other asbestos manufacturers mentioned above. With

17  intent to defraud contingent creditors such as the Plaintiffs and the Class, Defendants

18  intentionally, willfully, maliciously and fraudulently did the things herein alleged to defraud

19  and oppress the Plaintiffs and the Class.

20

21  ### FIRST CAUSE OF ACTION

22  **(For Fraudulent Conveyance In Violation Of The Uniform**

23  **Fraudulent Transfer Act And The Common Law Of Fraudulent Conveyance)**

24       67.  The Plaintiffs refer to and incorporate by reference all preceding

25  paragraphs as if fully set forth herein.

26       68.  At all times as herein alleged, the Plaintiffs and Class Members were

27  creditors under the Uniform Fraudulent Transfer Act against a debtor, Grace, for their

28  contingent claims arising from their injuries suffered due to asbestos exposure. No part of

FIRST AMENDED CLASS ACTION COMPLAINT

1  the aforementioned claims have matured because these tort claims are pending and

2  contingent.

3         69.    The distribution of assets from Grace to FNMC and Sealed Air

4  respectively were fraudulent transfers. The transfers were made with the intent to hinder the

5  Plaintiffs' and the Class' ability to recover. Grace did not receive reasonably equivalent value

6  for the transferred assets.  Indeed, Grace's remaining assets after the transfers were

7  unreasonably small. As a result of the transfers, Grace was rendered insolvent and unable to

8  pay its debts as they matured. Grace transferred its assets with the intent and belief that the

9  transfers would deprive the Plaintiffs and Class Members of recovery for their asbestos

10 claims.

11        70.    Defendants acted intentionally, fraudulently, maliciously, and without

12 regard for the legitimate rights of the Plaintiff and the Class Members and thus they are

13 entitled to exemplary damages.

14        71.    Knowing of the contingent tort liability faced by Grace, transferees as

15 herein described did not accept the transfer of assets in good faith.

16        72.    At the time it made these transfers of assets herein described, Grace

17 and each of the Defendants had actual intent to hinder and defraud Plaintiffs' and the Class'

18 collection of their contingent claims against Grace.  Defendants possessed such knowledge by

19 virtue of their long history of dealing with asbestos litigation and knowledge of Grace's

20 massive future asbestos liability.

21

22                          **SECOND CAUSE OF ACTION**

23                              **(Common Law Conspiracy)**

24        73.    Plaintiffs refer to and incorporate by reference all preceding paragraphs

25 as if fully set forth herein.

26        74.    Grace made the transfer of assets as herein described with the intent to

27 defraud Plaintiffs and the Class.

28

75.   Defendants and each of them knowingly participated in the unlawful plan herein described and agreed to aid Grace to carry out its fraudulent conveyances.

76.   Each of the Defendants had knowledge of the conspiracy and its unlawful purpose.

77.   As alleged herein, Defendants agreed and knowingly and willfully conspired among themselves to defraud plaintiffs in the collection of their claims against Grace arising from its contingent asbestos liability.

78.   Under this conspiracy, the Defendants agreed that Grace would fraudulently transfer assets to themselves as more fully detailed above.

79.   Each of the Defendants did the acts and things herein pursuant to, and in furtherance of, the conspiracy and agreement alleged herein.

80.   As a proximate result of the wrongful acts herein alleged, Plaintiffs and the Class have been damaged.

81.   At all times mentioned herein, Defendants knew of Grace's massive asbestos liability and the experiences of other asbestos manufacturers. With intent to defraud contingent creditors such as the Plaintiffs and the Class, Defendants intentionally, willfully, maliciously and fraudulently did the things herein alleged to defraud and oppress the Plaintiffs and the Class. Plaintiffs and the Class are therefore entitled to award of punitive damages.

### THIRD CAUSE OF ACTION

**(Cal.Bus. & Prof. Code §17200 *et seq.*)**

**(Brought By Plaintiff Gill, Abner, And Mesquita In**

**A Representative Capacity Against All Defendants)**

82.   The Plaintiffs Gill, Abner, and Mesquita re-allege and incorporate by reference each and every allegation set forth in the aforementioned paragraphs.

83.   Plaintiffs Gill, Abner, and Mesquita are suing in their individual capacity and on behalf of the California general public.

2026v5.bsf.doc                                   -18-

84.   Section 17200 of the California Business & Professions Code prohibits unfair competition, which is defined as any unlawful, unfair or fraudulent business act or practice.

85.   Beginning at a date unknown to the Plaintiffs Gill, Abner, and Mesquita, but at least as early as November 14, 1996, Defendants committed and continue to commit acts of unfair competition, as defined by Section 17200 *et seq.* of the Business and Professions Code, by, among other things, engaging in the acts and practices described herein.

86.   Defendants engaged in unfair competition in violation of Cal.Bus. & Prof. Code §17200 *et seq.* by violating, *inter alia*, each of the following, each of which constitutes an independent and separate violation of Cal.Bus. & Prof. Code §17200 *et seq.*:

      a.   The Uniform Fraudulent Transfers Act;

      b.   The Common Law of Fraudulent Conveyance;

      c.   The California Fraudulent Transfers Act, *inter alia*, Cal. Civil Code Sections 3439.04 and 3439.05;

      d.   The common law of civil conspiracy;

87.   Defendants' conduct of, *inter alia*, spinning off its profitable divisions in an effort to avoid future asbestos liability as more fully described herein, was both substantially injurious to Plaintiffs and the Class and likely to mislead the general public, and consequently, constitutes both an unfair and fraudulent business act or practice within the meaning of Cal.Bus. & Prof. Code Section 17200.

88.   Defendants acts herein described resulted in harm to California Plaintiffs and the Plaintiffs Gill, Abner, and Mesquita and that harm outweighs the utility, if any, of Defendants' policy/practices.  Accordingly, Defendants' actions described herein constitute an unfair business practice or act within the meaning of Business and Professions Code §17200.

89.   Defendants' conduct described herein violates the policy or spirit of the Uniform Fraudulent Transfers Act, the California Fraudulent Transfers Act, and/or the

1   California common law of civil conspiracy and/or otherwise significantly threatens or harms
2   competition or the general public, and therefore constitutes a violation of Cal.Bus. & Prof.
3   Code Section 17200.

4        90.    The unlawful, unfair, and fraudulent business practices and acts of
5   Defendants, and each of them, as described above, have injured members of the Plaintiffs
6   Gill, Abner, and Mesquita in that Defendants have fraudulently transferred valuable assets
7   out of Grace and into other entities in an effort to fraudulently manipulate Grace's corporate
8   form in order to deprive the Plaintiffs and others of their proper remedies.

9        91.    Plaintiffs Gill, Abner, and Mesquita, individually, and on behalf of the
10   themselves seek injunctive relief to create a trust or other equitable remedy and any order and
11   judgment of this Court as may be necessary to restore the benefits to themselves and the
12   California general public of all property acquired by Defendants by means of such unlawful,
13   unfair, and/or fraudulent business acts and practices as described herein.  Plaintiffs and other
14   members of the general public have no other adequate remedy of law.

15        92.    As a direct and proximate result of the aforementioned acts, Defendants
16   received and continue to hold ill-gotten gains belonging to Plaintiffs and members of the
17   California general public.

18   **PRAYER FOR RELIEF**

19       WHEREFORE, Plaintiffs, individually and on behalf of the Class they
20   represent pray for judgment as follows:

21       1.    For the First and Second Causes of Action:

22             a.    A determination that this action may proceed and be
23                maintained as a national class action;
24             b.    An Order requiring each defendant to account for all
25                transfers of the assets of the former W.R. Grace & Co. (and
26                any proceeds from the distribution of such assets) and all
27                receipt of fees in connection with the 1996 and 1998
28                transactions;

FIRST AMENDED CLASS ACTION COMPLAINT

1        c.    A declaration that the 1996 and 1998 transactions constitute

2            fraudulent transfers;

3        d.    The establishment of a constructive trust on all assets

4            transferred in connection with the 1996 and 1998

5            transactions, and all fees received in connection with those

6            transactions;

7        e.    A determination that Defendants be held jointly and

8            severally responsible for damages equal to the full fair

9            market value of all assets transferred in connection with the

10           1996 and 1998 transactions, and all fees received in

11           connection with those transactions; and

12        f.    A determination that Defendants be held liable for actual and

13           exemplary damages.

14    2.    For the Third Cause of Action:

15        a.    An Order requiring each defendant to account for all

16           transfers of the assets of the former W.R. Grace & Co. (and

17           any proceeds from the distribution of such assets) and all

18           receipt of fees in connection with the 1996 and 1998

19           transactions;

20        b.    A declaration that the 1996 and 1998 transactions constitute

21           fraudulent transfers;

22        c.    The establishment of a constructive trust on all assets

23           transferred in connection with the 1996 and 1998

24           transactions, and all fees received in connection with those

25           transactions;

26        d.    Pursuant to Business and Professions Code Section 17203

27           and pursuant to the equitable powers of this Court, that

28           Defendants be ordered to restore to the general public all

1  funds acquired by means of any act or practice declared by

2  this Court to be unlawful or fraudulent or to constitute unfair

3  competition under Cal.Bus. & Prof. Code Section 17200;

4      e.     An attachment or other provisional remedy against the assets

5  transferred and their proceeds;

6      f.     An injunction against further disposition by the Defendants

7  or the assets transferred and their proceeds; and

8      g.     Any other relief the circumstances require.

9      3.     A determination that Defendants be held liable for pre- and post-

10  judgment interest at the highest legal rate;

11      4.     A determination that the Defendants are held liable for costs of court

12  and reasonable attorneys' fees pursuant to Code of Civil Procedure Section 1021.5; and

13      5.     For such other and further relief as the Court may deem necessary and

14  proper.

15  **JURY TRIAL DEMAND**

16  Plaintiffs hereby demand a trial by jury for all issues so triable.

17  Dated: November 22, 2000

18  Respectfully submitted,

19  _____
FREDERICK P. FURTH (No. 38438)

20  BEN FURTH (No. 203763)

21  THE FURTH FIRM
Furth Building, Ste. 1000

22  201 Sansome Street
San Francisco, California 94104

23  Telephone: (415) 433-2070

24

25  LEWIS T. LECLAIR (No. 77136)
MIKE McKOOL, JR.

26  SAM F. BAXTER
McKOOL SMITH, P.C.

27  300 Crescent Court, Suite 1500
Dallas, TX 75201

28  Telephone: (214) 978-4000

2026v5.bsf.doc

-22-

FIRST AMENDED CLASS ACTION COMPLAINT