# EXHIBIT 7

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 01-0___ (___) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| W. R. GRACE & CO., | ) | |
| et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -against- | ) | |
| | ) | Adversary No. _____ |
| MARGARET CHAKARIAN, et al., | ) | |
| and JOHN DOES 1-1000, | ) | |
| | ) | |
| Defendants. | ) | |

DECLARATION OF DAVID B. SIEGEL IN SUPPORT OF COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF AND MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

I, DAVID B. SIEGEL, under penalty of perjury, hereby declare as follows:

1.     I am Senior Vice President and General Counsel of debtors W. R. Grace &

Co. ("Grace"), a Delaware corporation, and W. R. Grace & Co.-Conn. ("Grace-Conn"). I have been

employed by Grace-Conn or one of its predecessors or affiliates since 1977. I respectfully submit

this declaration in support of Debtors' Verified Complaint for Declaratory and Injunctive Relief and

Motion for a Temporary Restraining Order and Preliminary Injunction Staying All Asbestos-Related

and Fraudulent Transfer Claims Against Affiliated Entities (the "Complaint").[1] I am authorized to

make this declaration on behalf of Grace, Grace-Conn and the other Debtors in these bankruptcy

cases.

---

[1] Capitalized terms not defined herein have those meanings ascribed to them in the Complaint.

2. This declaration is based on personal knowledge and information learned in the course of my corporate duties.

## The Chapter 11 Filings

3. On the date hereof (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). Contemporaneously herewith, the Debtors filed a motion to consolidate, for administrative purposes only, the Chapter 11 cases. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

## Summary of Operations

4. The Debtors engage in specialty chemicals and materials businesses, operating on a worldwide basis, with their corporate headquarters located in Columbia, Maryland. The Debtors' parent company, W. R. Grace & Co. ("Grace"), conducts substantially all of its business through a direct, wholly owned subsidiary – W. R. Grace & Co. - Conn. ("Grace-Conn"). Grace-Conn is a global holding company that owns substantially all of the assets, properties and rights of Grace either directly or through its subsidiaries (many of which are also debtors in the Chapter 11 Cases).

5. Grace and its affiliates employ approximately 6,550 full and part time employees of which approximately 3,750 are employed by the Debtors. The Debtors and their non-debtor subsidiaries and affiliates operate and report on a consolidated basis. For the fiscal year 2000, on a consolidated basis, Grace reported a net loss of $89.7 million (resulting from a $294 million asbestos-related charge to earnings recorded in the fourth quarter of 2000) from $1.59 billion in revenues. For the fiscal year 1999, on a consolidated basis, Grace reported net income of $135.9 million from $1.55 billion in revenues.

### The Debtors' History

6.      In 1854, William Russell Grace founded W. R. Grace & Co. in Peru. In 1865, Grace relocated its headquarters to New York City, operating as a trading and shipping company with South America and Europe. Grace incorporated in 1899 in Connecticut. Through the first half of the 20th century, Grace expanded its South American businesses into manufacturing and established U.S. operations ranging from agricultural fertilizers to banking. In 1954, Grace acquired Davison Chemical Company and Dewey & Almy Chemical Company, establishing the foundation for the Debtors' catalysts, silicas, packaging, construction and container product lines. Over the following decades, Grace expanded these businesses into more than 50 countries.

7.      In 1988, Grace reincorporated in New York through the formation of a new holding company, also named W. R. Grace & Co. ("Grace-New York"). The "old" Grace was renamed W. R. Grace & Co.-Conn. and continued to exist as a subsidiary of Grace-New York. Grace-Conn is the same Connecticut corporation that is the principal operating subsidiary of Grace today.

8.      Grace's current operations are conducted primarily through two business units — Davison Chemicals and Performance Chemicals. Davison Chemicals is a leading global supplier of refining and chemical catalysts and silica-based products. Davison Chemicals' refining catalysts are critical in transforming hydrocarbons into finished goods such as gasoline, jet fuel and diesel fuel. Davison Chemicals' chemical catalysts are essential components in the manufacture of polyethylene resins used to produce such products as plastic film, high performance pipe and household containers. Davison Chemicals' silica-based products are used in a wide variety of industrial and consumer applications such as coatings, food processing, plastics, absorbents and personal care products.

9.      Grace's Performance Chemicals business unit produces specialty construction chemicals and building materials used primarily by the commercial construction industry and container sealants and coatings for food, beverage and other packaging. Performance Chemicals' construction chemicals are used to add strength, control corrosion and enhance the handling and application of concrete. Performance Chemicals' building materials are used worldwide for waterproofing and to provide fireproofing protection to structural steel. Performance Chemicals' container products are used to seal beverage and food containers, to protect metal packaging from corrosion and to protect the contents of such packages from the effects of metal. Performance Chemicals' rigid package sealing is used to protect safety and freshness in billions of cans annually.

## The National Medical Care/Fresenius Transaction

10.      In 1996, Grace-New York combined its health care business with a subsidiary of Fresenius Medical Care AG, a German company. In connection with this transaction, Grace's chemicals and packaging businesses were transferred to Grace's shareholders through a newly formed subsidiary of Grace-New York, Grace Holding, Inc., a Delaware corporation. ("Grace-Delaware I"). In addition, a cash distribution of approximately $2.3 billion was made to Grace-Conn by the merged health care company. Following the transaction, Grace-Delaware I was renamed W. R. Grace & Co., with Grace-Conn and the other Debtors continuing to exist as its subsidiaries. Grace-New York was renamed Fresenius Medical Care Holding, Inc.

11.      To my knowledge, Fresenius has never mined, milled, manufactured, sold or distributed asbestos or any asbestos-containing products. Fresenius has not been sued in the Asbestos Actions on account of its own conduct or products; rather the allegations against Fresenius arise solely from the 1996 transaction. Plaintiffs in the Abner action in California Superior Court

allege that Fresenius is responsible for the Debtors' asbestos liabilities under state fraudulent transfer law.

12.     To my knowledge, Fresenius does not possess information probative of the underlying asbestos-related claims against the Debtors, nor does Fresenius have possession, custody or control over the Debtors' documents, employees, or other witnesses that would be necessary in defending any asbestos-related claims.

13.     Grace's former health care business was never involved in the manufacture or sale of asbestos containing products.

### The Sealed Air Transaction

14.     In 1998, Grace-Delaware I combined its flexible packaging business with Sealed Air Corporation, a Delaware corporation. In connection with this transaction, Grace's chemicals businesses were transferred to Grace's shareholders through a new Grace subsidiary named Grace Specialty Chemicals, Inc., a Delaware corporation ("Grace-Delaware II"). In addition, a cash distribution of approximately $1.2 billion was made to Grace-Conn by the merged packaging company. Following this transaction, Grace-Delaware II was renamed W. R. Grace & Co., with Grace-Conn and the other Debtors continuing to exist as its subsidiaries. Grace-Delaware I was then renamed Sealed Air Corporation.

15.     Sealed Air manufactures and sells a range of protective food and specialty packaging materials and systems throughout the world, including Bubble Wrap® packaging materials.

16.     To my knowledge, Sealed Air has never mined, milled, manufactured, sold or distributed asbestos or any asbestos-containing products. Sealed Air has not been sued in the Asbestos Actions on account of its own conduct or products; rather the allegations against Sealed

Air arise solely from the 1998 Transaction. Defendants allege that Sealed Air is responsible for the Debtors' asbestos liabilities under either common law principles of successor liability or fraudulent transfer law.

17.    To my knowledge, Sealed Air does not possess information probative of the underlying asbestos related claims against the Debtors, nor does Sealed Air have possession, custody or control over the Debtors' documents, employees, or other witnesses that would be necessary in defending any asbestos-related claims.

18.    Grace's former flexible packaging business was never involved in the manufacture or sale of asbestos containing products.

### The Non-Debtor Affiliates

19.    The Non-Debtor Affiliates are subsidiaries, joint ventures or other affiliates of Debtors that have not filed bankruptcy cases, as well as current and former officers, directors and employees of Debtors.

20.    The Non-Debtor Affiliates have never mined, milled, manufactured, sold or distributed asbestos or any asbestos-containing products, except for certain individuals that are Non-Debtor Affiliates who may have done so in their capacity as employees of one or more of the Debtors.

21.    The Non-Debtor Affiliates do not possess information probative of the underlying asbestos related claims against the Debtors, nor do the Non-Debtor Affiliates have possession, custody or control over the Debtors' documents, employees, or other witnesses that would be necessary in defending any asbestos related claims. Certain present and former officers, directors and employees of the Debtors may have probative information, but are nevertheless entitled to the injunctive relief sought because their affiliation to the Debtors is the only basis for any

-6-

purported claims against them. Certain of the Debtors have also agreed to indemnify certain of those directors, officers and employees.

22.    In short, the Non-Debtor Affiliates have no relationship whatsoever to the asbestos-related claims, other than their affiliation to the Debtors.

### The Asbestos Litigation

23.    Until 1973, the Debtors manufactured certain products with commercially added asbestos. Until 1990, the Debtors manufactured certain products from vermiculite from Grace's Libby, Montana mine, a mineral containing naturally occurring asbestos impurities. These impurities were largely removed during the processing of the vermiculite. Nonetheless, as a result of prior business operations, the Debtors have for years confronted a substantial volume of claims alleging asbestos related injuries.

24.    These asbestos claims can be divided into four general categories: claims for bodily injury from asbestos exposure, property damage claims, attic insulation claims and claims arising out of vermiculite mining and processing operations.

- *Bodily injury claims* allege health effects from exposure to the Debtors' asbestos containing products, such as fireproofing materials.

- *Property damage claims* generally seek payment for the cost of removing or containing asbestos in buildings.

- *Attic fill insulation claims* have been brought as purported class actions on behalf of homeowners who used the Debtors' attic insulation products and are now seeking damages and other relief, including removal of the attic insulation allegedly containing asbestos.

- The claims arising from the Debtors' *vermiculite operations* allege personal injury and property damage from exposure to naturally occurring asbestos in vermiculite in connection with the mining and processing of the vermiculite into finished products.

-7-

25. In total, the Debtors have been served with 324,000 asbestos-related claims cumulatively through February 2001, of which approximately 127,000 remain outstanding.

26. As of the date of this filing, Sealed Air is a named defendant in over 6,000 Asbestos Actions in which the Debtors have also been named as defendants, including eight purported class actions, one of which has been certified.

27. Fresenius, Sealed Air, and certain of the Debtors are named defendants in a purported nationwide class action filed in the Superior Court of California, San Francisco County, alleging that the arm's-length transactions between Grace and Fresenius Medical Care A.G. in 1996 and between Grace and Sealed Air Corporation in 1998 were fraudulent transfers designed to frustrate litigants with alleged asbestos-related claims. The lawsuit purports to be brought on behalf of all persons who currently have lawsuits on file in the United States and that are pursuing unsatisfied tort claims relating to alleged asbestos exposure claims against the Debtors. Simultaneous with the filing of this adversary proceeding, Grace is removing that action to the Bankruptcy Court for the Northern District of California and will be seeking to have that action transferred to the District of Delaware.

28. Grace's Non-Debtor Affiliates are not currently named in any Asbestos Actions, except for certain former employees of one or more of the Debtors.

29. Absent the requested relief, as a consequence of Debtors' Chapter 11 Cases, it is likely that the Affiliated Entities will be named in many of the tens of thousands of actions currently pending against the Debtors and that asbestos claimants may seek to proceed against the Debtors' former employees in the Asbestos Actions in order to access the Debtors' remaining insurance coverage. It is also likely that the Affiliated Entities will be named in thousands of future cases. In previous asbestos-related bankruptcies, asbestos claimants have deluged any and all entities

with any connection to the debtor companies with asbestos-related claims once the debtor companies filed chapter 11 cases.

## The Need for Relief under Chapter 11

30.     While, for years, the Debtors have faced a substantial volume of asbestos claims, they were able to resolve such claims primarily through negotiated settlements. Despite the high percentage of claims the Debtors believed to be without merit, the Debtors agreed to settle most claims rather than incur the significant costs and practical difficulties associated with litigating thousands of independent claims at one time in multiple jurisdictions nationwide. While the Debtors also believe that the volume of claims filed against them historically, and the amounts paid in settlement thereof, is not indicative of the Debtors' true liability - the asbestos claims resolution process has not reflected actual legal liability for years - in very recent months, the number of claims has risen dramatically without any basis in science, medicine or law. The recent dramatic influx of new claims has severed whatever tenuous connection to actual liability that may have existed in earlier years and an effective defense of such dispersed and voluminous litigation is simply not feasible. The dramatic increase in asbestos claims and the increasing threat of adversarial litigation have impaired the Debtors' ability to obtain financing, consumed management's time and attention, and threatened the health of the Debtors' core business operations.

31.     Under these circumstances, the Debtors have concluded that there is no other way to define and resolve their asbestos liability, while preserving the value and viability of their core business operations, other than through a reorganization under chapter 11 of the Bankruptcy Code.

### Irreparable Harm

32.   If the continued prosecution of the Asbestos Actions against the Affiliated

Entities is not enjoined, the Debtors will suffer severe and irreparable harm, including:

(i)     substantially all of the claims asserted against the Affiliated Entities are derivative of the asbestos claims asserted against the Debtors such that the adverse adjudication of the claims against the Affiliated Entities could severely impair the Debtors' ability to contest, limit or otherwise resolve the asbestos claims that precipitated the filing of the Chapter 11 Cases and undermine the Debtors' ability to successfully reorganize;

(ii)    adverse judgments against Sealed Air, Fresenius or other Affiliated Entities with whom Debtors have Indemnification Agreements could result in fixed and liquidated claims for asbestos related liabilities against the Debtors through the Affiliated Entities' indemnification claims;

(iii)   the Debtors' required participation in responding to discovery requests and assisting in the preparation of defenses by the Affiliated Entities in the Asbestos Actions would deplete the Debtors' financial resources and divert key personnel (including fact and expert witnesses) and other resources of Debtors from pursuing Debtors' successful reorganization and the implementation of a plan of reorganization in the Chapter 11 Cases; and

(iv)    the depletion of the proceeds from the Insurance Policies that would result from adverse judgments against the Non-Debtor Affiliates and the accrual and payment of defense costs of Non-Debtor Affiliates would unlawfully deplete assets of Debtors' Chapter 11 estates.

33.   New actions and proceedings asserting asbestos-related claims are being filed

against the Debtors at a rate of approximately 6,000 new claims per month, which translates to an

average of approximately *200 per day*. The Affiliated Entities lack the knowledge to adequately

defend the underlying actions, including the Debtors' historical conduct and products.

-10-

34.    Unless a temporary restraining order and preliminary injunction are issued

and in effect immediately, the Debtors may be severely prejudiced by the Affiliated Entities'

inability to adequately defend the existing actions, as well as the inevitable new actions.

I hereby declare under penalty of perjury that the foregoing is true and correct.

David B. Siegel, Senior Vice President and
General Counsel

SUBSCRIBED and SWORN TO before me
this 2nd day of April, 2001.

Notary Public
My Commission Expires: 03-21-02

-12-

Exhibit O