**EXHIBIT 26**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | Case Nos. 01-1139 through 01-1200 |
| W.R. GRACE & CO., et al., | : | |
| | : | |
| Debtors. | : | |
| ------------------------- | | |
| OFFICIAL COMMITTEE OF | : | Adv. No. 02-2210 |
| ASBESTOS PERSONAL INJURY | : | **[LEAD DOCKET]** |
| CLAIMANTS and OFFICIAL | : | |
| COMMITTEE OF ASBESTOS | : | |
| PROPERTY DAMAGE | : | |
| CLAIMANTS OF W.R. GRACE & | : | |
| CO., suing in behalf of | : | |
| the Chapter 11 Bankruptcy | : | |
| Estate of W.R. GRACE & | : | |
| CO., et al., | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| SEALED AIR CORPORATION | : | |
| and CRYOVAC, INC., | : | |
| | : | |
| Defendants. | : | |
| ------------------------- | | |
| OFFICIAL COMMITTEE OF | : | Adv. No. 02-2211 |
| ASBESTOS PERSONAL INJURY | : | |
| CLAIMANTS and OFFICIAL | : | |
| COMMITTEE OF ASBESTOS | : | |
| PROPERTY DAMAGE | : | |
| CLAIMANTS OF W.R. GRACE & | : | |
| CO., suing in behalf of | : | |
| the Chapter 11 Bankruptcy | : | |
| Estate of W.R. GRACE & | : | |
| CO., et al., | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | **BENCH MEMORANDUM** |
| | : | |
| FRESENIUS MEDICAL CARE | : | |
| HOLDINGS, INC. and | : | |
| NATIONAL MEDICAL CARE, | : | |
| INC., | : | |
| | : | |
| Defendants. | : | |

This matter is opened upon the debtor's motion to withdraw from this adversary proceeding. The motion is opposed by defendant Sealed Air. Sealed Air argues in the alternative that, if the debtor is allowed to withdraw, the Court should grant a 120-day continuance of the trial, currently scheduled to commence on September 30, 2002. Plaintiffs, the Official Committees of Asbestos Claimants, take no position on the debtor's withdrawal, but oppose defendant's motion in the alternative for a continuance.

The disposition of both these motions is driven by the history of the parties' involvement in this action, and the Court will summarize this history for the record now.

As of the date this Court was assigned this chapter 11 proceeding, there was a dispute between the parties whether this matter should be prosecuted at all. The debtor took the position that the fraudulent conveyance allegations were without merit and not worth the expense to the estate. This was consistent with the position of W.R. Grace in pre-petition fraudulent conveyance proceedings in which it had been named as a defendant.

The debtor recommended that the Committee for the Unsecured Creditors be selected to prosecute the matter, but that entity declined. Ultimately, the Court appointed the Asbestos Claimants Committees, jointly, to act as plaintiffs. Special Counsel for the Committees was selected and the parties negotiated an

2

expedited schedule for pre-trial proceedings. The reason for the expedited schedule was to accommodate the Court's stated concern that the fraudulent conveyance action be completed promptly, and that it not impede the progress of W.R. Grace's chapter 11 proceeding toward reorganization. In addition, from the very beginning, Sealed Air emphatically stated that it desired to put this matter behind it quickly and that time was of the essence in bringing the allegations to trial.

Upon the entry of case management order on March 12, Plaintiffs and Sealed Air immediately engaged in intensive discovery proceedings under the auspices of a Special Master, appointed by the Court with the parties' consent. It was at this point that the debtor experienced a change of heart from its previous policy of disengagement from the fraudulent conveyance proceedings. The debtors moved to intervene in April, citing both section 1109 of the bankruptcy code and Federal Rule of Civil Procedure 24. The debtor argued forcefully that its intervention was needed to protect the factual record on issues that would have an impact on the bankruptcy-in-chief, that the Asbestos Claimants had interests contrary to the debtor's, and that the defendant Sealed Air was a stranger to the many issues underlying the debtor's solvency and accordingly could not adequately defend the allegations against it.

The Court denied this motion on a narrow ground. The debtor

proposed to intervene as a full-fledged party, but its proposed "pleading in intervention" took no position on any of the issues in the case. The Court found that intervention as a party was governed by the requirement of Rule 24 that an intervenor must file a proposed pleading "setting forth the claim or defense for which intervention is sought." The Court acknowledged that section 1109 appeared to include intervention as a simple _amicus curiae_ and that this would probably not require a detailed pleading. The debtor's application, however, plainly sought more that mere _amicus_ status, and its four paragraph pleading fell well short of the standard explicit in Rule 24.

The debtor then renewed its application to intervene. It submitted a new pleading styled "Answer and Affirmative Defenses". Unlike the previous submission, this document made plain that the debtor was allied with Sealed Air as a defendant in this adversary proceeding. The debtor rejected the suggestion that it be permitted to participate as an _amicus_, and argued its concern that it might be subject to collateral estoppel on issues involved in this proceeding if its appearance was limited to _amicus_ status without a chance to vigorously defend itself.[1]

As the parties are aware, the Court granted the renewed

---

[1] Renewed Intervention Brief at 6-7.

motion to intervene. Since then, the debtor has participated fully in the discovery process. This process has been contentious-the Special Master has had to issue fourteen separate Orders on discovery disputes. The debtor has been in the thick of these disputes throughout and it has appeared as both a movant and as a respondent resisting discovery.

Now, with twelve days left to trial, the debtor has had a second change of heart and seeks to retreat to *amicus* status from its role as a full-fledged party. The debtor claims that the situation has changed in two respects.

First, the debtor claims that its job is done in this action because, through the debtor's participation in discovery, **[quote]** the relevant historical record has been put in place **[close quote]**. This argument is illusory. The only historical record in a case is comprised of those evidentiary materials that will be brought before the Court and become the basis for an adjudication of a contested issue. The documents and deposition transcripts are not the part of any record at this point with respect to the litigation. As for the debtor's interest in preserving its assertions of privilege, this could as easily have been accomplished by the debtor as a non-party, just as countless third-party witnesses do in litigation every day.

Of course, the debtor did far more than merely protect its privileged information. As set forth in the papers on this

5

motion, the debtor has taken the laboring oar on significant parts of this litigation, in particular deposing former W.R. Grace witnesses, advisors and environmental experts. Now Sealed Air complains, bitterly, that debtor's attempt to withdraw leaves it without a significant part of its defense. Indeed, as quoted in Sealed Air's brief, the debtor represented to the Court that it was the debtor's unique ability to assume this branch of the case that justified its intervention in the first place.

Second, the debtor argues that it should be permitted to revert to amicus status because otherwise a negative result in the adversary proceeding might be binding against it in other fora, including in the bankruptcy-in-chief. But, in its renewed motion to intervene, the debtor advanced this same reason as favoring its intervention as a party. Then, as already noted, the debtor maintained that limiting it to amicus status would result in it being bound without the opportunity to defend itself.

From these facts, the Court seriously questions the real reason the debtor seeks to withdraw. Whether the debtor no longer likes the defense's chances of prevailing, or whether the debtor sought to gain a discovery advantage, is consigned to the inner sanctum of the debtor's litigation strategy. In either event, it is plainly not true that the debtor is a mere non-aligned party attempting to protect the [quote] historical record

6

**[close quote].** From the time the debtor filed its answer and affirmative defenses, it has acted as a co-defendant with Sealed Air. Neither of the grounds now advanced by debtor constitute a real change in the situation as it existed when it moved to intervene. The only material change from the debtor's point of view is that it did not anticipate an adverse decision as to the legal standard to be applied at trial which resulted in the Opinion of this Court dated July 29, 2002.

Nothing the Court says here today should be construed to imply that the Court believes that the debtor is correct in its assessment of the likely outcome in this matter nor in its reading of the July 29 Opinion. It is clear, however, that against the desire of the debtor to escape what it believes to be an unnecessary experience, the Court must weigh the disastrous effect of its eleventh hour withdrawal on the litigation.

The Court is satisfied that the parties have performed vigorously in getting this case ready for trial on schedule. The Court expresses its sincere appreciation for the efforts of counsel, at the cost of personal inconvenience and long hours. Moreover, there can be no doubt that the need for speedy discovery and trial preparation has cost the estate money that would not have been spent under a more relaxed regime. The Court remains convinced that this extra expenditure has been worth the benefit gained by moving quickly to the merits of the fraudulent

conveyance allegations.

The Court will not countenance, however, the debtor dissipating this effort and attendant expense by now disowning its status as a party to the litigation. Between them, Sealed Air and the debtor have prepared the defense of this case. Sealed Air justifiably relied on the debtor to defend the allegations related to W.R. Grace's solvency, because the debtor assured the world and this Court that it was uniquely situated and willing to do so.

Sealed Air contends that it would need a continuance of 120 days to make up for the absence of the debtor as an active trial participant. This would be an intolerable delay. This Court assumed jurisdiction over the W.R. Grace bankruptcy, now a year and a half old, to move it toward a resolution. It is manifestly contrary to that aim to permit this ancillary proceeding to extend for another four months. To the extent the debtor contends that this result is in the interest of the estate, this Court strongly disagrees. Even were the Court to discount its primary concern of efficient management of the bankruptcy proceeding, fairness to Sealed Air strongly weighs against permitting the debtors to abandon its co-defendant now.

As the debtor has frequently reminded the Court, section 1109 is mandatory in allowing intervention by interested parties. It says nothing about withdrawal of parties once they have

8

intervened. Even were section 1109 interpreted to provide for withdrawal as well as intervention, it cannot be read to strip the Court of its powers to prevent an impediment to its management of litigation before it.

And here the impediment is in the extreme. The extraordinary efforts of counsel and the Court through its Special Master would be eviscerated were the debtor's motion to be granted. The Court therefore will deny the debtor's motion. Sealed Air's motion in the alternative for a continuance will likewise be denied as moot.

Dated: September 18, 2002