# EXHIBIT 27

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case Nos. 01-1139 through 01-1200 |
| W.R. GRACE & CO., *et al.*, | ) | |
| | ) | |
| Debtors, | ) | |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| OFFICIAL COMMITTEE OF | ) | |
| ASBESTOS PERSONAL INJURY | ) | |
| CLAIMANTS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -against- | ) | Adv. No. 02-2210 |
| | ) | [LEAD DOCKET] |
| SEALED AIR CORPORATION | ) | |
| and CRYOVAC, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ———————————————— | ) | |
| OFFICIAL COMMITTEE OF | ) | |
| ASBESTOS PERSONAL INJURY | ) | |
| CLAIMANTS, *et al.*, | ) | |
| | ) | Adv. No. 02-2211 |
| Plaintiffs, | ) | |
| | ) | |
| -against- | ) | |
| | ) | |
| FRESENIUS MEDICAL CARE, | ) | |
| HOLDINGS, INC., *et al.*, | ) | This Document Pertains to Adv. No. 02–2210 |
| | ) | |
| Defendants | ) | |

### W. R. GRACE & CO.-CONN.'S MOTION TO WITHDRAW INTERVENTION AND, INSTEAD, ENGAGE IN "AMICUS-STYLE" PARTICIPATION UNDER RULE 1109

On June 24, 2002, the Court granted W. R. Grace & Co.-Conn.'s ("Grace")
motion to intervene in this adversary proceeding. The motion was a limited one – Grace was
concerned that this case inevitably would focus on certain factual matters that were also of
relevance to Grace's bankruptcy case and wanted to ensure that the record developed here would
be complete and accurate. As a stranger to Grace's history, Sealed Air could provide no such
assurance. As set forth in Grace's accompanying Memorandum in Support, the purpose of
Grace's intervention now has been substantially fulfilled, and Grace's continued participation in
this case no longer is necessary to serve the best interests of the estate. Grace therefore seeks to
withdraw its intervention. If the Court permits, Grace would then assume the "amicus-style" role
described by the Court at the June 6, 2002 hearing as to any issues affecting the interests of the
estate in the Chapter 11 case. (6/6/02 Tr. at 54.)

WHEREFORE, for the reasons stated in this Motion and in Grace's

accompanying Memorandum in Support, Grace respectfully moves for leave to withdraw its

intervention, and participate instead in this adversary proceeding as an amicus.

Dated: September 11, 2002

KIRKLAND & ELLIS
David M. Bernick, P.C.
Michelle H. Browdy
Scott A. McMillin
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG & JONES PC

*Scotta E. McFarland*

Laura Davis Jones (Bar No. 2436)
Scotta E. McFarland (Bar No. 4184)
919 N. Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Counsel to Debtors and Debtors in Possession

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case Nos. 01-1139 through 01-1200 |
| W.R. GRACE & CO., *et al.*, | ) | |
| | ) | |
| Debtors, | ) | |
| _____ | ) | |
| | ) | |
| OFFICIAL COMMITTEE OF | ) | |
| ASBESTOS PERSONAL INJURY | ) | |
| CLAIMANTS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -against- | ) | Adv. No. 02-2210 |
| | ) | [LEAD DOCKET] |
| SEALED AIR CORPORATION | ) | |
| and CRYOVAC, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| OFFICIAL COMMITTEE OF | ) | |
| ASBESTOS PERSONAL INJURY | ) | |
| CLAIMANTS, *et al.*, | ) | |
| | ) | Adv. No. 02-2211 |
| Plaintiffs, | ) | |
| | ) | |
| -against- | ) | |
| | ) | |
| FRESENIUS MEDICAL CARE, | ) | |
| HOLDINGS, INC., *et al.*, | ) | This Document Pertains to Adv. No. 02–2210 |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF W. R. GRACE & CO.-CONN.'S
MOTION TO WITHDRAW INTERVENTION AND, INSTEAD,
ENGAGE IN "AMICUS-STYLE" PARTICIPATION UNDER RULE 1109**

On June 24, 2002, the Court granted W. R. Grace & Co.-Conn.'s ("Grace") motion to intervene in this adversary proceeding. The motion was a limited one. – Grace was concerned that this case inevitably would focus on certain factual matters that were also of relevance to Grace's bankruptcy case and wanted to ensure that the record developed here would be complete and accurate. As a stranger to Grace's history, Sealed Air could provide no such assurance. As set forth below, the purpose of Grace's intervention now has been substantially fulfilled, and Grace's continued participation in this case no longer is necessary to serve the best interests of the estate. Grace therefore seeks to withdraw its intervention. If the Court permits, Grace would then assume the "amicus-style" role described by the Court at the June 6, 2002 hearing as to any issues affecting the interests of the estate in the Chapter 11 case. (6/6/02 Tr. at 54.)

## I.    GRACE'S LIMITED INTERVENTION.

Dating back almost to the beginning of the Chapter 11 case, Grace has candidly acknowledged that pursuit of fraudulent conveyance claims based upon projected asbestos liability was factually interconnected with the Chapter 11 case itself. Put simply, litigation over whether Grace was insolvent in 1998 due to asbestos liability necessarily would overlap factually with the determination of the scope of Grace's liability today, even though the legal principles and issues in a fraudulent conveyance case would be different from those which govern the determination of Grace's own legal liability in its Chapter 11 case.

Thus, in the Spring of 2001, shortly after the bankruptcy was filed, Grace made no bones about stating its views on the merit of fraudulent conveyance claims and further

acknowledged that, in light of those views, prosecution of any such claims should be left to others. (*See* 5/3/01 Tr. at 11 ("The Court: And in your mind, is there really any question, given what the pleadings were in the California action, that you're going to come to the conclusion not to pursue the claim? Mr. Bernick: I think that insofar as Grace is concerned, the Debtor is concerned, given the positions that we've taken, Grace, through its current counsel, would probably be disabled from pursuing the claim."); *see also* Debtors' Opposition to Joint Motion to Prosecute Fraudulent Transfer Claims, filed 7/11/01, Docket Nos. 658 and 659.)

Grace then proposed that the Unsecured Creditors Committee investigate whether fraudulent conveyance litigation was in the best interests of the estate. This proposal was animated by the fact that the asbestos claimants themselves had a conflict in making any such determination, because their primary objective in the Chapter 11 case was (and is) to advocate a higher aggregate asbestos liability in order to achieve a plan in which asbestos claimants dominate all other constituencies. (*Id.* at 5-10.)

These matters were still pending when the case was re-assigned to this Court. In the interim, Grace worked to gather materials that would be relevant to fraudulent conveyance claims, in part so that, whatever decision was made concerning the disposition of fraudulent conveyance claims, that decision could be executed promptly. In the same vein, in its original status report to this Court, Grace urged that the matter be resolved expeditiously. (*See* Status Report of W.R. Grace and Proposal for Priorities of Litigation in this Court, filed 12/15/01, Docket No. 1359.)

Once the Court directed that the fraudulent conveyance litigation proceed, Grace had to decide how best to address its unresolved concern over the factual record that would be developed in that litigation and its potential use in the Chapter 11 case. Grace determined that the answer was to intervene, but for a limited purpose. This was made explicit both in Grace's moving papers and in argument before the Court. At the conclusion of the hearing on Grace's first motion, counsel stated:

> I want to come in and do two things. I want to come in and make sure that the people who take the stand, who speak to what it is that Grace knew and believed, are testifying clearly and accurately and fully and with the best knowledge that Grace as an entity has, just like any other corporate company producing corporate witnesses on the stand. . . .That's number one and that's, you know, in point of fact, that is overwhelmingly the purpose of our desire to intervene.

> Point number two is that there will be testimony regarding estimation methodology. It will come from people who were Grace consultants, Mr. Rourke and Mr. Florence, Dr. Rourke, Dr. Florence. They will testify. They were retained as Grace consultants. They fall into the category of being people who were our people that we would put on the stand to say what it is they did and what it is that means. . . .Then we get to Dr. Peterson. Dr. Peterson is likely to be the adversary plaintiffs' expert. . . . Dr. Peterson will testify to the marriage between his methodology and our facts and there is nobody who is going to be as well situated as we are to cross examine Dr. Peterson in that regard, and doing so is directly in the interest of the estate because Dr. Peterson will come back. So, those are the two major areas where we seek to intervene.

(Transcript of 6/6/02 Hearing at pp. 41-44, Docket Nos. 32 and 33.) Further:

> Anything that get us to the point where we can play that role, we're
> prepared to do. We don't want to be at odds with the Court. We
> don't want to say 1109 gives us the right, here's the 24(c) pleading,
> in we go and we have to resolve this as an ongoing issue and make
> it a contested and contentious process. We don't want to do that.
>
> We want to do whatever it takes to be appropriately here in the
> way that your Honor feels comfortable contributes to the ultimate
> result because that's our goal.

(Id. at 44.) Grace's subsequent Renewed Motion to Intervene again emphasized the limited

purpose and scope of the proposed intervention. (*See* W.R. Grace & Co.-Conn.'s Renewed

Motion to Intervene and Memorandum in Support, filed June 20, 2002, Docket Nos. 43 and 44

("Grace will limit its participation to (1) responding to discovery, (2) the presentation of

witnesses who were involved in the events and liabilities at issue, (3) the presentation of

witnesses regarding Grace's solvency and estimates of its liabilities, including asbestos and

environmental liabilities, and (4) the cross examination of plaintiffs' experts on these issues.")

     The Government's subsequent intervention added a new dimension to the

importance of protecting the record in the adversary proceeding. Specifically, that intervention

brought home an additional factual implication of the fraudulent conveyance litigation – it

factually overlapped with the Government's environmental cost recovery case now set for trial in

January 2003 in federal court in Missoula, Montana. (*See, e.g.* 8/30/02 United States' List of

Witnesses and Trial Exhibits, Docket No. 198 )

5

## II.    GRACE HAS EXECUTED ON THE COMMITMENTS MADE IN ITS REQUEST TO INTERVENE

Since entry of the Court's Order granting Grace's motion to intervene, Grace has participated actively in the adversary proceeding and in a fashion that is consistent both with its motion and the best interests of the estate. Its focus has been on responding to fact discovery and cross-examining those experts who are also likely to testify for the asbestos claimants in any estimation ultimately conducted in the Chapter 11 case. Grace has retained no experts to defend the unique claims in this adversary proceeding, identifying only environmental experts already set to testify in the Libby cost recovery case or other asbestos liability experts previously retained by Grace, all in response to the Court's July 29, 2002 Order. More recently, Grace has addressed the Court's in limine orders concerning the fraudulent conveyance trial, due, again, to potential overlap with the Chapter 11 case.

In particular, Grace's principal activities in this adversary are as follows:

- Producing documents.

- Responding to written discovery.

- Litigating privilege issues pertaining to documents that may also be relevant to the Chapter 11 case.

- Preparing fact witnesses and presenting them for depositions.

- Deposing fact witnesses produced in support of the Government's environmental claims.

- Deposing the claimants' expert on estimation of asbestos liability.

- Developing work product, relevant to both the adversary and to the cost recovery case, concerning the Government's environmental claims at Libby, Montana.

Grace also has spent significant time informing Sealed Air on a wide variety of matters as to which it had no prior experience, albeit the fact remains that Sealed Air is historically a stranger to asbestos litigation and Grace's history.

### III. WITHDRAWAL OF GRACE'S INTERVENTION IS NOW APPROPRIATE AND IN THE BEST INTERESTS OF THE ESTATE

Fact discovery is now almost complete, and we are close to trial. It is now appropriate for Grace to withdraw its intervention for three reasons.

*First*, the central, limited purpose of the intervention has been substantially achieved — through discovery, the relevant historical record has been put in place. The documents have been produced and the depositions have been taken. Grace also has deposed the expert most important to the main Chapter 11 case, Dr. Peterson.

*Second*, Grace's interests as the debtor do not extend beyond protecting the record for purposes of the Chapter 11 and environmental cost recovery cases and do not extend to the trial defense of Sealed Air. While Grace believes that the claim against Sealed Air lacks merit, it has been Grace's consistent position that the assessment and prosecution of the claim should lie with others. The Court determined that the claim should be litigated, and Grace has sought to play a role in that litigation that is appropriate given its limited interest.

*Third*, Grace is concerned that the asbestos claimants will seek to derive an improper strategic advantage from Grace's continued participation in the adversary case. In particular, Grace expects that the asbestos claimants will construe language in the Court's July 29 Opinion to mean that the adversary proceeding should decide Grace's actual liability for asbestos and other claims. If the adversary claim is successful, the claimants then will assert that

the result in the adversary is binding upon Grace in the Chapter 11 case. While Grace believes

that this strategy is legally unsupportable, violates the Bankruptcy Code, and may misapprehend

the meaning of the July 29 Opinion,[1] there is little point in courting litigation of such issues

when, as now, there is no other purpose to be served by remaining in the adversary proceeding

through trial. Grace highlighted this problem in an earlier hearing and its brief in response to

plaintiffs' motion to strike the experts Grace identified in response to the July 29, 2002 Opinion.

(8/26/02 W.R. Grace & Co.-Conn's Opposition to Plaintiffs' Motion to Preclude W.R. Grace &

Co.-Conn From Calling As Trial Witnesses the Experts Listed in its August 21, 2002 Disclosure,

Docket No. 223). That brief (together with the other pleadings it incorporated) is incorporated

by reference in this motion.

### IV.   LEGALLY, THE COURT CAN AND SHOULD PERMIT GRACE TO WITHDRAW ITS INTERVENTION AND INSTEAD ENGAGE IN "AMICUS-STYLE PARTICIPATION."

Consistent with the Third Circuit's liberal construction of the legal standards

governing intervention of interested parties, *see Matter of Marin Motor Oil, Inc.*, 689 F.2d 445,

449-50 (3d Cir. 1982), the Court should permit Grace to withdraw as an intervenor in this

adversary proceeding. Indeed, in similar circumstances, where an intervenor has fulfilled the

purpose for which its intervention was originally granted, courts have permitted that intervenor

to withdraw. *See, e.g., United States v. 374/100 Pound Burlap Bags*, 1989 WL 36948 (E.D. Pa.

---

[1]   (Cf. 6/6/02 Tr. at 10 ("[W]hatever happens in this fraudulent conveyance proceeding in terms of the ultimate bankruptcy proceeding for purposes of confirmation of a plan at some point, if we ever get that far, is not going to be binding upon [the Debtor]"); id. at 13; id. at 57 ("the Court has already noted that rulings in this case will not be binding upon the bankruptcy case-in-chief…"); 8/26/02 Tr. at 37 ("I don't want to conflate what's going to happen in the fraudulent conveyance proceeding with what is going to happen in the actual bankruptcy ultimately").

April 13, 1989) (ordering that intervening defendant be allowed to withdraw as an intervenor where he no longer had an interest in the subject of the proceeding); *Siedle v. Putnam Investments, Inc.*, 147 F.3d 7, 9 (1st Cir. 1998) (party intervening for a limited purpose permitted to withdraw as intervenor). Moreover, defendant and plaintiff intervenors alike are routinely permitted to withdraw their intervention prior to the adjudication of the original parties' claims and/or defenses. *See, e.g., LeBoeuf, Lamb Greene & MacRae, LLP v. Abraham*, 2002 WL 1815857 (D. D.C. July 30, 2002) (citing to previous decision by same court permitting defendant-intervenor to withdraw its intervention); *Alascom , Inc. v. F.C.C.*, 727 F.2d 1212, 1216 n.10 (D.C. Cir. 1989) (respondent-intervenor granted leave to withdraw as intervenor); *United Engineering & Forging v. United States*, 779 F. Supp. 1375 (Ct. Int'l Trade 1991) (defendant-intervenor/counterclaim-plaintiff permitted to voluntarily dismiss its counterclaim and effectively withdraw from case); *American Trucking Associations, Inc. v. I.C.C.*, 669 F.2d 957, 959 n.4 (5th Cir. 1982) (plaintiff-intervenor permitted to withdraw as intervenor); *Ortiz v. Perales*, 1990 WL 3186 (S.D.N.Y. Jan. 11, 1990) (plaintiff-intervenor's motion to voluntarily dismiss complaint in intervention granted without prejudice).

At bottom, permitting Grace to withdraw as an intervenor now would be appropriate and in accordance with the law. In place of participating as an intervenor, Grace respectfully requests the opportunity to participate as an amicus.

## CONCLUSION

For these reasons, Grace respectfully requests that its motion for leave to

withdraw its intervention, and participate instead as an amicus, be granted.

Dated: September 11, 2002

KIRKLAND & ELLIS
David M. Bernick, P.C.
Michelle H. Browdy
Scott A. McMillin
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG & JONES PC

*Scotta E. McFarland*

Laura Davis Jones (Bar No. 2436)
Scotta E. McFarland (Bar No. 4184)
919 N. Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

Counsel to Debtors and Debtors in Possession