**EXHIBIT 31**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| W.R. GRACE & CO., et al., | : | |
| | : | |
| Debtors. | : | Bankruptcy No. 01-1139 (JKF) |
| | : | Jointly Administered |

| | | |
|---|---|---|
| OFFICIAL COMMITTEE OF ASBESTOS | : | |
| PERSONAL INJURY CLAIMANTS and | : | Adv. No. 02-2210 |
| OFFICIAL COMMITTEE OF ASBESTOS | : | |
| PROPERTY DAMAGE CLAIMANTS, | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| SEALED AIR CORPORATION and | : | |
| CRYOVAC, INC., | : | |
| | : | |
| Defendants. | : | |

**Hearing Date: October 7, 2002 at 2:30 p.m.**

### UNITED STATES TRUSTEE'S MEMORANDUM RESPONSE
### TO THE COURT'S OCTOBER 2, 2002 ORDER TO SHOW CAUSE

#### Introduction

Donald F. Walton, Acting United States Trustee for Region III, by and through

undersigned counsel (the "UST"), submits this memorandum in response to the Court's October

2, 2002 Order to Show Cause and to the proposed Case Management Order attached thereto.

To date, the UST has not considered it necessary to appear in this adversary proceeding.

However, the need for the Court and the parties to address the impact of the decision of the Court

of Appeals of the Third Circuit in *Official Committee of Unsecured Creditors of Cybergenics*

*Corp. v. Chinery*, No. 01-3805 (September 20, 2002) (hereinafter *"Cybergenics"*) implicates the

statutory duties and functions of the UST, including the power to appoint trustees and examiners

under 11 U.S.C. §1104(d) and 28 U.S.C. §586(a)(5), as well as the duty under 28 U.S.C.

§586(a)(3)(G) to monitor the progress of cases under title 11 and to take such actions as the UST

deems appropriate to prevent undue delay in such progress. As a result, the UST wishes to be

heard regarding the Order to Show Cause.

As an initial matter, the UST wishes to bring to the Court's attention developments in the

*Cybergenics* case that may make it wise to defer any action for a short time until it is determined

whether the Court of Appeals will reconsider its ruling. Additionally, there is an issue that the

parties have not yet considered whether the decision applies retroactively to deprive a plaintiff of

capacity to sue where the action is on the eve of trial and no challenge to the plaintiff's capacity

had been raised at the appropriate stage of the pleadings.

In the event that a change in the posture of the case becomes necessary, the UST shares

the Court's concern that the course of action chosen be one that clearly comports with the

*Cybergenics* decision. Indeed, the UST believes it is vital that this action proceed in a manner

that is as clearly unimpeachable as possible under *Cybergenics*. Given the amounts at stake, it is

probably unreasonable to expect the defendants to waive in advance any right to challenge an

adverse outcome on the basis that the action was not prosecuted by a proper party plaintiff. Any

appeal necessitating a retrial of the case by a different plaintiff (assuming that the remedy of a

retrial would be available) would be extremely costly to the bankruptcy estates and may

materially delay resolution of the Chapter 11 case, since it is likely that a Chapter 11 Plan could

not be negotiated and confirmed while the outcome of this matter remained a question mark.

-2-

For the reasons set forth below, the UST believes that in the event there is no procedure available under witch the Debtor can take over as plaintiff, the option that clearly and unimpeachably comports with *Cybergenics*, and therefore is most likely to lead expeditiously to finality in this action, is appointment of a Chapter 11 Trustee, provided that the Court determines on appropriate motion that grounds exist under section 1104 of the Bankruptcy Code to enter an order directing the UST to appoint a trustee. Furthermore, for the reasons set forth below, the UST believes that there is no basis under the Code for creating a "trustee with limited powers," and therefore, in the event a trustee is appointed, the duties of the trustee should not be limited to this adversary proceeding.

### Argument

**A.    The Court Should Defer Action Pending a Determination Whether *Cybergenics* Will Be Reargued.**

The UST has been advised by counsel to the Committee in *Cybergenics* that a petition has been filed today before the Court of Appeals for reconsideration and/or for rehearing en banc. Therefore, in view of the possibility that rehearing will be granted and no mandate would issue, the Court should defer any decision for a short time until the Court of Appeals determines whether it will entertain the petition for rehearing. If a rehearing is granted, the Court may then separately decide whether to maintain the matter in a stayed posture pending the ultimate outcome of *Cybergenics*, or direct that it proceed in a manner consistent with the Circuit's panel opinion.

-3-

**B.**   **If *Cybergenics* Stands, the Court Should Consider Whether It Applies Retroactively to This Action in Light of Defendants' Failure to Assert an Appropriate Defense.**

It does not appear that the parties and the Court have yet considered the important question of whether *Cybergenics* even applies to this action. This issue has two dimensions. First is the question whether, as a matter of law, the decision applies retroactively to pending actions, especially actions that have gotten past the pleading and summary judgment stage. The UST believes that the parties should be given the opportunity to brief that issue before the Court takes any action.

The second dimension of the issue is whether a defense remains available to Sealed Air in the posture of this case. Sealed Air did not move to dismiss the Complaint on any ground. Rather, Sealed Air filed an answer with certain affirmative defenses (Docket Item 7). Sealed Air pleaded the defense of lack of standing, but did not plead any defense of the Committees' lack of capacity to sue or that the Committees were not the real party in interest. Significantly, the Third Circuit stated its decision did not rest on standing grounds. *Cybergenics* slip op. at 27. In other words, the Court should consider whether Sealed Air waived the defense that the Committees are not the proper plaintiffs by not bringing the very sort of motion to dismiss that the *Cybergenics* defendants did. Notably, such a conclusion would be quite consistent with the analysis in the *Cybergenics* opinion itself denying the committee's belated request to seek substitution of a trustee as plaintiff. The Court of Appeals found that the committee should have been aware as a result of the prior decisions in the case that its status as the proper party was in doubt. Slip op. at 28. Similarly, the defendants herein had access to the *Cybergenics* district court's decision, holding the committee was not the proper party, at the time they responded to the Complaint.

-4-

Thus, the Court could appropriately find that the time for challenging plaintiffs' prosecution of this action has come and gone.

**C.     It Is At Best Highly Doubtful That the Proposed Alternatives to Appointment of a Trustee Pass Muster Under *Cybergenics***

It is well settled that the power to commence avoidance actions pursuant to section 544(b) of the Bankruptcy Code is one of the powers of the trustee that devolves to the debtor-in-possession under section 1107(a) of the Code. *Cybergenics*, slip op. at 6-8. Prior to *Cybergenics*, if a debtor-in-possession failed or refused to pursue colorable avoidance claims, many courts held that a creditor or creditors' committee could move for authority to bring the actions in the name of and for the benefit of the estate. However, in *Cybergenics* the Court of Appeals held that this practice was improper in light of the decision of the United States Supreme Court in *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1 (2000).

It appears inescapable that the Court of Appeals has held that the only parties who can commence and prosecute a Section 544(b) avoidance claim are the debtor in possession and a trustee. Repeatedly, the opinion refers to those two parties and to them only. *See Cybergenics*, slip op. at 3, 11-12, 14. Furthermore, the linchpin of the decision appears to be that the words "the trustee may" appearing in section 544(b) must be given the same meaning given by the Supreme Court in *Hartford Underwriters* to the same words in section 506(c), which limited them to a trustee, or a debtor in possession, but specifically not an individual creditor or a creditors' committee.[1] *Id.* at 10-12, 25. As a result, the UST has serious doubts whether the

---

[1]     The UST does not intend to express herein an opinion as to the correctness of the *Cybergenics* decision or the soundness of its reasoning, but rather simply to set forth the UST's understanding of what the decision says and stands for. The UST reserves his right to appear and seek to be heard in the event any review, reconsideration or reargument of the *Cybergenics*

alternatives proposed by the Court and the parties will pass muster under the Third Circuit's analysis.

1.   Converting the Action to a Declaratory Judgment Action by the Debtor

The Court has proposed that the existing pleadings be withdrawn, and that the Debtor be directed to file a declaratory judgment action seeking a determination that the transaction in question was not a fraudulent conveyance, to which the Committees would then counterclaim for a declaration that it was, which would then be followed by a pleading from Sealed Air.

This option has the advantage of not requiring the Debtor to change its position. However, the UST does not see how converting the action to a counterclaim for a declaratory judgment addresses the problem raised by *Cybergenics* of who is the real party in interest. Filing an action as a counterclaim does not change its essential nature and character, nor does it shift the burdens of production and proof. The Committees would still be the "counterclaim plaintiffs," having the burden to prove to the satisfaction of the trier of fact that the trier of fact should rule that the transaction was a fraudulent conveyance. So long as the Committees remain the party pursuing that relief, whatever label is attached to the pleading, the result seems inconsistent with the holding of *Cybergenics* that a committee cannot pursue such a claim for relief; rather, only a debtor in possession or a trustee can. Moreover, this is at most an intermediate step, because the plaintiffs do not want a mere declaration, they want a money judgment or disgorgement of the transferred assets. Hence, the issue would remain who could seek such relief if and when it became appropriate to do so.

_____

decision is granted.

2.    Appointment of an Examiner with Expanded Powers

The Asbestos Personal Injury Claimants Committee has advocated appointment of an examiner instead of a trustee, asserting that this would be consistent with *Cybergenics* because the Bankruptcy Code at section 1106(b) permits the court to direct an examiner to perform, in addition to certain specified functions, "any other duties of the trustee that the court orders the debtor in possession not to perform."

As facially appealing as this may seem,[2] it is difficult to fit this into the plain language of *Cybergenics*. The decision is based entirely on the Court of Appeals' lengthy analysis of the phrase "the trustee may" in section 544(b).  The Court of Appeals expressly stated that "trustee" included the debtor in possession performing certain trustee duties under authority of section 1107(a). However, the opinion says nothing about including an examiner performing trustee duties under authority of section 1106(b).  Given that the Third Circuit had ample opportunity to say both but they only said one, the UST is concerned that it is unwise to assume that the Court of Appeals meant something it could have said but did not.  Moreover, the UST doubts that Sealed Air is in a position to waive any objection to the ability of an examiner to prosecute the action.  Hence, the UST must conclude that the examiner option does not adequately address the paramount concerns of certainty and finality.

---

[2]    There is precedent for the appointment of an examiner at least for the limited purpose of conducting an investigation of the viability of potential claims, *see* 11 U.S.C. 1106(b) (allowing examiners to conduct investigations). *See, e.g.,  Southmark Corp. v Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 927 (5th Cir. 1999) (noting that the bankruptcy court had ordered the "appointment of an Examiner to provide an unbiased, independent assessment of the propriety and practicality of pursuing litigation against third-parties.").

**D.    If the Debtor in Possession Cannot Prosecute the Action, an Appropriate Alternative Is to Entertain a Motion for Appointment of a Trustee.**

*Cybergenics* restricts avoidance actions to debtors and trustees. As a debtor in possession, Grace has a fiduciary duty to its creditors. *CFTC v. Weintraub*, 471 U.S. 343, 355 (1985), ("if a debtor remains in possession . . . the debtor's directors [have a] . . . fiduciary obligation to creditors and shareholders").[3] Indeed, "the willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'" *Weintraub*, 471 U.S. at 355 (citations and internal quotations omitted).

This fiduciary duty requires Grace to bring appropriate avoidance actions in an effort to maximize creditor recoveries. If Grace refuses to do so, a party in interest could file a motion asking this Court to issue an order under 11 U.S.C. 105(a) directing it to press them. That section allows the court to "issue any order . . . that is necessary or appropriate to carry out the provisions of this title." Debtors' fiduciary duties require them to protect creditor interests by pressing appropriate avoidance actions. Section 105(a) gives this Court power to compel recalcitrant debtors to comply with the Bankruptcy Code by pressing such actions. As a result, the Court would have the power to direct a debtor in possession to bring appropriate avoidance actions to preserve them for the benefit of the estate. Such an Order was entered on October 3, 2002 by Judge Fitzgerald in *Owens Corning*, No. 00-3837.

---

[3]    *Accord Official Committee of Unsecured Creditors of United Healthcare System, Inc. v. United Healthcare System, Inc. (In re United Healthcare System, Inc.)*, 200 F.3d 170, 177 n. 9 (3d Cir. 1999) (applying *Weintraub* in finding that "a debtor-in-possession is a fiduciary for its estate and its creditors").

Here, however, it appears that this otherwise preferable alternative may be foreclosed, because Grace not only disagrees with the Committees regarding the merit of the claim, Grace appears to have an intractable conflict of interest and Grace has already staked out a litigation position on the defendants' side in the action. *See* Transcript of Status Conference, September 24, 2002, at 8-10. In the event that the Court determines that the Debtor cannot be compelled to pursue the action under the circumstances of this case or that it is not realistic to expect the Debtor to pursue the action aggressively, even if ordered to do so, then the Court should consider on appropriate motion whether a trustee should be appointed under Section 1104.

      1.      Prior to Directing Appointment of a Trustee the Court Must Determine that Grounds for Appointment Exist Under Section 1104.

Under *Cybergenics*, if it appears that if the Court cannot direct the Debtor to pursue the action, the alternative indicated by the Third Circuit's decision is to consider appointment of a trustee. However, nothing in the Third Circuit's opinion makes appointment of a trustee mandatory or automatic in any case. Rather, the standards set forth in section 1104 of the Bankruptcy Code for appointment of a trustee still apply.

Thus, the appropriate way to proceed is to direct that the Committees or other interested parties file any motions they wish to file seeking appointment of a trustee. Other parties may then respond. In considering whether to grant the motion, the Court[9] must find that one of the grounds of appointment of a trustee has been proven. For example, the motion might ask the Court to determine whether the Debtor's failure to prosecute this action, and/or its actions to undermine it by intervening on the side of the defendants, constitute "gross mismanagement"

---

[9]      At this time the UST is not expressing a position as to whether such a motion should be considered at the Bankruptcy Court or the District Court level in this case.

under section 1104(a)(1). Alternatively, the movant may ask the Court to consider whether appointment of a trustee is "in the interests of creditors" under section 1104(a)(2).

In determining whether debtor has engaged in "mismanagement" or what is "in the interests of creditors," the Court can consider all of the factors that the parties have alluded to in their papers – the merit and likelihood of success of this action, the potential effect of this action on other issues in the case, the potential consequences of appointment of appointing a trustee, and the probability that if no trustee is appointed, this claim may be lost.

> 2.    If the Court Directs Appointment of a Trustee, the Powers of the Trustee May Not Be Limited.

There has been some suggestion that this Court could enter an order under 11 U.S.C. 1104(a) to craft some type of so-called limited purpose trustee who would not dispossess the debtor in possession and would only prosecute this avoidance action. The Code does not permit this and *Cybergenics* teaches that the Code must be applied according to its plain language. Under 11 U.S.C. 521(4), the debtor must surrender "all" property of the estate to a trustee. Section 1105 of the Code underscores that chapter 11 trustees hold all debtor property upon appointment because it provides that by "terminat[ing] the trustee's appointment," the trustee must "restore the debtor to possession and management of the property of the estate and of the operation of the debtor's business." 11 U.S.C. 1105. Similarly, Section 1106(a)(1) of the Code mandates that a chapter 11 trustee "shall" perform the duties specified in subsection (1) of that section, including being accountable for all estate property received, objecting to claims, and file operating and financial reports. 11 U.S.C. 1106(a). Other subsections of section 1106(a) impose additional duties upon trustees. 11 U.S.C. 1106(a)(2), (3), (4), (5), (6) and (7).

-10-

There is no indication that these duties are optional or subject to the Court's modification (in contrast, for example, to the express language appearing in section 1106(b) and 1107(a) permitting the Court to vary the powers of an examiner or a debtor in possession). *Cybergenics* teaches that it cannot be presumed that the statute should be read to include an option not set forth in the statutory language. Thus, any attempt to create a so-called limited purpose trustees who would not control estate property or who would fail to carry out any of the duties imposed upon trustees by the plain language of the Code may itself be inconsistent with *Cybergenics* and, therefore, be subject to challenge by the defendants.

If a trustee were appointed, it alone could exercise those statutory responsibilities. *In re Dawnwood Properties,* 209 F.3d 114 (2d Cir. 2000). In fact, a trustee would breach its fiduciary duty if it failed to carry out any of its statutorily imposed responsibilities. *Mosser v. Darrow*, 341 U.S. 267 (1951) (holding that trustees have fiduciary duties to the estate's creditors).

Nor does the Code provide a mechanism for lawfully compensating such a so-called limited trustee. If the limited trustee secured recoveries it would turn them over to the debtor for payment to creditors. Section 326(a), however, limits trustee compensation solely to disbursements the trustee makes to creditors and expressly prohibits basing compensation upon payments made to the debtor.

The UST is aware of three reported cases in which a type of limited purpose trustee appointment was ordered. In two of these cases, *In re North American Communications, Inc.,* 138 B.R. 175 (Bankr.W.D.Pa. 1992), and *In re Madison Management Group, Inc.,* 137 B.R. 275 (Bankr.N.D.Ill. 1992), no party appears to have raised any issue for the Court's consideration regarding the scope of the appointment, and significantly, <u>neither decision sets forth any</u>

-11-

reasoning supporting the imposition of limitations on the trustee's charge. This failing was noted by the court in *In re Intercat, Inc.,* 247 B.R. 911, 923 (S.D.Ga. 2000). The *Intercat* court attempted to fill the void by reasoning that section 1107(a) of the Code, which defines the duties of the debtor in possession, granted the debtor in possession many of the duties of the trustee "subject to . . . such limitations or conditions as the court prescribes," and that any duties so withheld by the court from the debtor in possession may be given to a limited trustee.

The second step in the *Intercat* court's analysis is the faulty one. It is inconsistent with sections 521(4), 1105, and 1106(a)(1) of the Code as set forth above. Moreover, the Code does specifically address what happens to those duties of a trustee that are taken away from a debtor in possession -- they are properly given to an examiner, not a trustee. Section 1106(b) permits the court to direct an examiner to perform, in addition to certain specified functions, "any other duties of the trustee that the court orders the debtor in possession not to perform." Thus, the statute says specifically what happens to duties withheld from a debtor in possession, and it does not include the option of giving them to a trustee. The *Intercat* court's analysis is thus directly contrary to the way the Bankruptcy Code is understood in this Circuit as shown by *Cybergenics.*

Moreover, the *Intercat* analysis is fundamentally flawed because it attempts to use the Code section defining the powers of a debtor in possession to back into the permissible ways of defining the powers of the trustee. As the court explained in *In re Fisher*, 162 B.R. 474, 477 (Bankr.N.D.Ohio 1993), "[s]ection 1107 delineates the `rights, powers and duties of [a] debtor in possesssion.' This provision does not purport to limit the powers of a trustee appointed under §1104."

-12-

In sum, the reasoning of the *Intercat* court is unsound, and there is no basis under the Code for creating a limited trustee and that mechanism cannot be employed here. The debtor has a fiduciary duty to bring reasonable avoidance actions. If it fails to do so this Court can order it to bring them. 11 U.S.C. 105(a). If the debtor breaches its duty to bring them, or fails to prosecute them appropriately, a party in interest could seek the appointment of a trustee under 11 U.S.C. 1104(a).

### 3.    Appointment of a Trustee Need Not Be a Catastrophic Event

Debtors have cited to a parade of horribles that they assert will flow from appointment of a trustee. The UST believes that Debtors are presuming that the trustee will not act as a responsible fiduciary and that other parties in the case will act irrationally. The Court should not presume that parties will act against their own economic interest to kill the Debtor. Moreover, the trustee has ample discretion and authority to exercise his/her powers in a responsible manner. Nothing in section 1104 requires the trustee to fire any employee, shut down operations or liquidate any asset.[5] The trustee is not required to destroy the company to save this avoidance action, and the UST submits that a responsible trustee will not permit that to happen. The UST will certainly be mindful of the interests of all parties in selecting a trustee, in the event the UST is directed to do so.[6]

---

[5]    With respect to the contention that various employment contracts and other agreements have "drop dead" provisions in the event a trustee is appointed, perhaps this case will serve to raise the question whether debtors in possession should accede to such "doomsday clauses" and whether it is wise for courts to limit their own future discretion by approving them.

[6]    The initial appointment is made by the UST subject to the court's approval, after consultation by the UST with interested parties. 11 U.S.C. §1104(d). Such appointments are routinely made promptly. Within thirty days after such appointment any party in interest may (but is not required to) request the UST to call a meeting of creditors to elect a trustee.

## Conclusion

For the time being, the Court should await determination of whether the Court of Appeals will rehear *Cybergenics*. In the event that rehearing is denied and the opinion stands, it is crucial that the Court take such action to preserve this action as will not be subject to an expensive and time consuming later challenge. Therefore, in the event the debtor cannot under any circumstances take over as plaintiff, consideration of a motion to appoint a trustee would be appropriate.

<div style="margin-left:30%;">

Respectfully submitted,

**DONALD F. WALTON**
**ACTING UNITED STATES TRUSTEE, REGION III**


BY: /s/ Frank J. Perch, III
    Frank J. Perch, III
    Robert J. Schneider
    Trial Attorneys
    J. Caleb Boggs Federal Building
    844 King Street, Room 2313, Lockbox 35
    Wilmington, DE  19801
    (302) 573-6491
    (302) 573-6497 (Fax)


OF COUNSEL:

**JOSEPH A. GUZINSKI**
**GENERAL COUNSEL**
**EXECUTIVE OFFICE**
**FOR U.S. TRUSTEES**
  P. Matthew Sutko
  Executive Office for U.S. Trustees
  901 E Street, N.W., Suite 780
  Washington, D.C.  20530

</div>

Dated: October 4, 2002

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| W.R. GRACE & CO., et al., | : | |
| | : | |
| Debtors. | : | Bankruptcy No. 01-1139 (JKF) |
| | : | Jointly Administered |

| | | |
|---|---|---|
| OFFICIAL COMMITTEE OF ASBESTOS | : | |
| PERSONAL INJURY CLAIMANTS and | : | Adv. No. 02-2210 |
| OFFICIAL COMMITTEE OF ASBESTOS | : | |
| PROPERTY DAMAGE CLAIMANTS, | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| SEALED AIR CORPORATION and | : | |
| CRYOVAC, INC., | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this 4th day of October, 2002, the foregoing United States Trustee's Memorandum in Response to the Court's October 2, 2002 Order to Show Cause was caused to be served by facsimile to the following:

David Bernick, Esquire
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601
Fax: (312) 861-2200

Laura Davis Jones, Esquire
Pachulski Stang Ziehl Young & Jones
919 Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899
Fax (302) 652-4400

Scott L. Baena, Esquire
Bilzin Sumberg Dunn Baena Price &
Axelrod
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131
Fax: (305) 374-7593

Michael Lastowski, Esquire
Duane Morris & Heckscher
1100 North Market Street, Suite 1200
Wilmington, DE 19801
Fax 302-657-4901

Henry Wasserstein, Esquire
Skadden Arps Slate Meagher & Flom LLP
Four Times Square
New York, NY 10036
Fax 212-735-2000

Jerel Ellington, Esquire
James Freeman, Esquire
U.S. Department of Justice
Environmental Enforcement Section
999 18th Street, Suite 945 North Tower
Denver, CO 80202
(via e-mail)

Theodore Tacconelli, Esquire
Ferry & Joseph, P.A.
824 Market Street, Suite 904
Wilmington, Delaware 19801
Fax: (302) 575-1714

Elihu Inselbuch, Esquire
Caplin & Drysdale, Chartered
399 Park Avenue, 36th Floor
New York, NY 10022-4614
Fax: (212) 644-6755

Marla Eskin, Esquire
Campbell & Levine
1201 Market Street, Suite 1500
Wilmington, DE 19801
Fax: (302) 426-9947

Lewis Kruger, Esquire
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038
Fax 212-806-6006


    /s/ Frank J. Perch, III
Frank J. Perch, III