IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-1139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly-Administered) |

**MOTION TO RESET TRIAL AND DISQUALIFY AND PROHIBIT
PARTICIPATION BY W.R. GRACE & CO.-CONN. AND
ITS COUNSEL, AND OPPOSITION TO MOTIONS TO DISMISS,
FOR APPOINTMENT OF AN EXAMINER, AND
FOR APPOINTMENT OF A TRUSTEE**

For the reasons set forth below in the supporting memorandum of law, the Official Committee of Asbestos Property Damage Claimants (the "PD Committee") respectfully requests this Court to issue an order: (1) resetting the trial of this adversary proceeding, and (2) disqualifying and prohibiting any further participation by W.R. Grace & Co-Conn ("Grace") and its counsel in this adversary proceeding. In addition, the PD Committee requests that this Court defer ruling on defendants' motion to dismiss this adversary proceeding, and on the motions of Grace and the Official Committee of Asbestos Personal Injury Claimants ("PI Committee;" the PI Committee and the PD Committee being collectively referred to as "the Committees") for the appointment of an examiner, and for the appointment of a trustee.

**MEMORANDUM OF LAW**

**Preliminary Statement**

On September 20, 2002, the Third Circuit Court of Appeals issued its opinion in Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery, No. 01-3805, 2002 U.S. App. LEXIS 19731(3d Cir. Sept. 20, 2002). In the opinion, the Court held:

> [O]nly a trustee or debtor-in-possession has the power to invoke
> § 544 (b) to avoid fraudulent transfers, and that a court may not authorize
> a creditor or creditors' committee to bring suit under
> § 544 derivatively.

Cybergenics, 2002 U.S. App. LEXIS 19731, *3-4.

From the date of its issuance, the impact of Cybergenics on the continued prosecution of this adversary has been dramatic. It not only has resulted in an adjournment of the trial initially scheduled in this adversary for September 30, 2002, but it has precipitated a flurry of activity among the Court and the parties to design a course of action to allow the case to proceed to trial. Among the various options proposed and discussed have been the appointment of a trustee (both plenary and limited power), the appointment of an examiner with expanded powers, the requirement that Grace "switch sides" and become a plaintiff, the deferral of the action until it could be assigned in conjunction with a plan of reorganization, and the recasting of the case from an action to avoid a fraudulent transfer and recover property pursuant to 11 U.S.C. §§ 544(b) and 550 to a series of declaratory judgment actions.

Without minimizing the potential significance of Cybergenics, none of these options is necessary or appropriate, at least at this juncture. As we show below, Cybergenics has yet to become final and binding. That fact, in conjunction with other decisional law emanating from the Third Circuit, both before and since Cybergenics, allows the case to proceed as currently configured with the Committees as plaintiffs on behalf of the bankruptcy estate. Moreover, even assuming Cybergenics becomes final and a mandate issued, both Sealed Air and Cryovac have waived the right to assert a real party in interest defense necessary to implicate Cybergenics. Finally, because of the current status of Cybergenics, and the flexibility under F.R.C.P. 17(a) (as incorporated in Bankruptcy Rule 7017(a)) to allow for the substitution of, or ratification

2

by, a real party in interest, it simply does not make any sense at this point to incur the disruption of a trustee or examiner.

As we also show below, the fiduciary duties imposed on Grace as debtor in possession, together with the recognition of the parties and determination by the Court that the action should proceed to trial and final determination, mandate that Grace and its counsel must be prohibited from any further participation or cooperation in the defense of this action.

## I. THE TRIAL SHOULD BE RESCHEDULED WITH THE COMMITTEES REMAINING AS PLAINTIFFS

### A. Cybergenics Is Not Yet Final And Thus Cannot Supplant Binding Third Circuit Precedent

Under federal law an appellate decision is not, and does not become, final until a formal mandate is issued. See F.R.A.P. 41. Moreover, pursuant to F.R.A.P. 41(d):

> [T]he timely filing of a petition for rehearing, petition for rehearing en banc, or motion for stay of mandate, stays the mandate until disposition of the petition or motion unless the court orders otherwise.

This Rule has been uniformly interpreted consistent with its express terms. Indeed, the Supreme Court has held that a petition for rehearing suspends the finality of the appellate court's judgment pending the appellate court's determination on the rehearing application. Foreman v. United States, 361 US 416, 426 (1960), overruled on other grounds, Burks v. United States, 437 U.S. 1 (1977).

> The original opinion was entirely interlocutory and no mandate was issued thereon. It never became final and was subject to further action on rehearing.

Id. See Advisory Committee Notes to 1998 Amendment of Rule 41(a) ("a request for rehearing en banc will suspend the finality of the court of appeals' judgment. . . .").

3

As the Court is aware, the appellants in Cybergenics have filed a petition for rehearing en banc which is under consideration by the Third Circuit. Until Cybergenics becomes final, it cannot supplant the decisional law of the Third Circuit that recognizes the authority of creditors committees to derivatively prosecute § 544(b) avoidance claims. See Official Comm. Of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 340 F.3d 340, 345 (3d Cir. 2001); Buncher Co. v. Official Comm. Of Unsecured Creditors of GenFarm Ltd. Partnership IV, 229 F.3d 245, 250 (3d Cir. 2000); Official Comm. Of Unsecured Creditors of Cybergenics Corp. v. Chinery, 226 F.2d 237, 240 n.3 (3d Cir. 2000).

Although the PD Committee recognizes the potential significance of Cybergenics, we respectfully submit that it is premature to act on it at this point. Accordingly, for this reason alone, and at least until we receive further clarification from the Third Circuit, the PD Committee believes that the most appropriate course of action is to allow the case to proceed with the Committees as plaintiffs.

**B.      Sealed Air and Cryovac Waived Any Defense Based on Real Party in Interest**

In Cybergenics, the Third Circuit expressly determined that the lack of authority of a creditors committee to initiate a § 544(b) avoidance action does not concern the committee's standing to bring the suit, but rather, the committee's capacity to sue as the real party in interest under F.R.C.P. 17(a). Cybergenics, 2002 U.S. App. LEXIS 19731, *48. A defense based on real party in interest is not among the defenses identified in F.R.C.P. 12(h)(2) which can be raised at any stage of the proceedings. To the contrary, the real party in interest defense will be deemed waived if it is not raised in a timely fashion. See, e.g. Swaim v. Moltan, 73 F.3d 711, 718 (7th Cir. 1996); United Health Care Corp. v. American Trade Ins. Co., Ltd., 88 F.3d 563, 569 (8th Cir. 1996); Hefley v. Jones, 687 F.2d 1383, 1388 (10th Cir. 1982).

As Sealed Air and Cyrovac acknowledge, neither has asserted as an affirmative defense lack of

4

capacity to sue or failure to prosecute in the name of a real party in interest. See Defendants Sealed Air Corporation and Cryovac, Inc.'s Memorandum of Law Regarding the Issue of Waiver, pp. 2-6. Instead, they maintain that their lack of standing defense should be deemed sufficient under the circumstances to encompass a real party in interest defense. They are wrong.

Defendants claim that they should be excused from the obligation to properly identify their defense because: (1) at the district court level in Cybergenics, the court dismissed the complaint for lack of standing, and (2) until the Third Circuit issued its opinion in Cybergenics, defendants believed that under well-established law the Committees did have the capacity to initiate the suit. The latter argument is remarkable and demonstrates the disingenuousness of the first argument. If, as defendants claim, they did not know of the existence of the defense (regardless of its characterization) until the issuance of the Third Circuit's opinion in Cybergenics, how could defendants have possibly intended their lack of standing defense to encompass it ?

With regard to defendants' second argument that they could not have known of the Committees' lack of authority to sue until the Third Circuit issued its opinion in Cybergenics, the purported excuse is also legally insufficient. Indeed, the Third Circuit considered and rejected the same argument when it denied the Cybergenics committee's belated request to seek the appointment of a trustee. Cybergenics, 2002 U.S. App. LEXIS 19731, *50-51.

It cannot be gainsaid that defendants' failure to raise a real party in interest defense is not a mere technicality which can be excused by ill-defined notions of equity. To the contrary, if defendants are now permitted to assert the defense, it will result in extraordinary prejudice, waste, and disruption. As this Court is well aware, and defendants readily admit, the defense did not even occur to defendants until 10 days

before trial, after the expenditure of millions of dollars by the estate, and break-neck preparation by the parties and this Court. The notion of "gee, look what we found" is simply unjustified at this juncture.

### C. The Alternative of a Trustee or Examiner Simply Does Not Make Sense At This Point

The appointment of a trustee or examiner[1] may eventually prove necessary depending on the Third Circuit's ultimate ruling in <u>Cybergenics</u>, or its determination of whether, in any event, the decision should apply in this case. However, the PD Committee believes it would be inappropriate to speculate what the Third Circuit will ultimately decide. This is particularly true in light of the Third Circuit's decision in <u>In re Pillowtex, Inc.</u>, 2002 U.S. App. LEXIS 19952 (3d Cir. September 23, 2002), which was issued *three days after* <u>Cybergenics</u> and which is not the subject of a petition for rehearing.

In <u>Pillowtex</u>, the United States Trustee objected to the debtor's retention of a law firm as the law firm had received payments that the United States Trustee claimed to be voidable preferences under 11 U.S.C. § 547[2]. <u>Id.</u> at *5-6. Although the precise question of whether the United States Trustee, as opposed to a trustee appointed under § 1104(c), had the capacity or standing to bring a § 547 avoidance claim was not specifically before the Court, the Third Circuit nonetheless clearly indicated its view on the subject:

> There was some confusion at oral argument about whether the U.S.

---

[1] As the PD Committee stated at the status conference hearing on October 7, 2002, we have serious reservations whether an examiner would be deemed a real party in interest under <u>Cybergenics</u> absent further clarification by the Third Circuit.

[2] Like § 544(b), § 547 by its express terms authorizes only the trustee to prosecute preference avoidance claims.

> Trustee has standing to pursue the preference action below. Although we leave the question to the District Court on remand in the first instance, we call to its attention our discussion in U.S. Trustee v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.), 33 F.3d 294 (3d Cir. 1994), **where we observed of section 307 of the Code, "it is difficult to conceive of a statute that more clearly signifies Congress's intent to confer standing**." Id. at 296.

Id. at *26, n.7 (emphasis added).

Pillowtex lends to the confusion over how the Third Circuit will ultimately rule in Cybergenics. Specifically, the language of § 307, concerning the United States Trustee, cited in Pillowtex, is identical to the language of § 1109(b), concerning creditors committees and other parties in interest, which served as the basis for the Third Circuit's decision in Cybergenics. Section 307 states, in pertinent part, "The United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title . . . ." Similarly, § 1109(b) states, in pertinent part, "A party in interest, including . . . a creditors' committee . . . may raise and may appear and be heard on any issue in a case under this chapter." Thus, the objects of both provisions are the same. The Third Circuit's opinion in Cybergenics squarely rejected § 1109(b) as a statutory basis for permitting the committee to assert avoidance claims on behalf of the estate. Cybergenics, 2002 U.S. App. LEXIS 19731, *24-26. Yet, the Third Circuit in Pillowtex suggested that identical statutory language is sufficient to confer standing on the U.S. trustee to pursue an avoidance claim. Pillowtex, 2002 U.S. App. LEXIS 19952, *26, n.7.

We anticipate that the PI Committee will file a motion for the appointment of a plenary trustee, and Grace will file a motion for the appointment of an examiner or a limited power trustee. If the Third Circuit ultimately confirms its initial ruling in Cybergenics, or that the ruling is applicable in this case,

F.R.C.P. 17(a)[3] permits this Court to substitute either a trustee or an examiner, as may be appropriate, as the real party in interest when that occurs. See, e.g. Arabian American Oil Co. v. Scarfone, 939 F.2d 1472, 1477-1478 (11th Cir. 1991)(allowing post-judgment ratification of lawsuit by real party in interest). If, on the other hand, Cybergenics does not become controlling in this case, deferral of the appointment of a trustee or examiner will have avoided the disruption that such an appointment ordinarily engenders.

In conclusion, there simply is no reason for this Court to take action that is not required– and indeed, may be contrary to currently controlling precedent–in anticipation of an event which may never occur. Far too much time, money, and energy have already been expended to ready this case for trial.

## II       GRACE AND ITS COUNSEL SHOULD BE PROHIBITED FROM ANY FURTHER PARTICIPATION IN THE DEFENSE OF THIS ACTION

This Court has already heard a full proffer of plaintiffs' case in chief, and has had the opportunity to review all expert reports. Although there may be wide-ranging disagreement among the parties regarding the ultimate outcome of this case, it cannot be fairly disputed that the mere prospect of judgment in favor of the estate leads to the conclusion that this litigation is in the interests of the debtors' estates. As the Official Committee of Equity Security Holders has conceded, "the Court has already found that prosecution of the Debtors' fraudulent conveyance claims against Sealed Air 'is in the estates' best interest'" See Response of the Official Committee of Equity Security Holders of W.R. Grace & Co. to the Court's October 2, 2002 Letter Opinion and Order to Show Cause, p. 3.

---

[3]This rule provides, in pertinent part, "No action shall be dismissed on the grounds that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." F.R.C.P. 17(a)

Thus, scrutiny of the continued involvement of Grace and its counsel in the defense of this proceeding is warranted. As the Supreme Court stated in its seminal decision in CFTC v. Weintraub, 471 U.S. 343 (1985):

> if a debtor remains in possession–that is if a trustee is not appointed–the debtor's directors bear essentially the same fiduciary obligations to creditors and shareholders as would the trustee for a debtor out of possession . . . . Indeed, the willingness of courts to leave debtors in possession "is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee."

Id. at 355. Accordingly, Grace's fiduciary duty as debtor in possession should require it to prosecute this action to judgment. Indeed, even Cybergenics makes clear that a debtor in possession can serve but one role in avoidance litigation. It must be a plaintiff. Unfortunately, as this Court observed at the status conference hearing on October 7, 2002, Grace's active involvement in the defense of this action disables it from performing any other role.

Nevertheless, and with full recognition of Grace's involvement to date, the PD Committee believes that the Court's determination that the prosecution of this case is in the best interest of the estate can no longer be reconciled with Grace's defense of, and opposition to, this action. Indeed, the combination of the importance of the case to the estate and the existence of Grace's fiduciary duties as debtor in possession in and of itself renders Grace's continued opposition to the case a violation and breach of its fiduciary duties.

The PD Committee is well aware of Grace's well worn mantra that its determination that the case is meritless fulfilled its fiduciary duty. However, Grace misses the point. Grace's determination of what it deems to be in the best interest of the estate is of no moment as the Court has come to a different

conclusion.

Undoubtedly, Sealed Air and Cryovac will again complain that the disqualification of Grace and its counsel unfairly compromises their defense of this action and necessitates a continuance. Frankly, defendants' dependence on Grace and its counsel is dramatic testimony of Grace's breach of its fiduciary duties to the estate and the inappropriateness of their continued participation in the defense of this action. The PD Committee believes that the adjournment of the September 30th trial until December 2nd, should be more than adequate to facilitate preparation for trial by Sealed Air and Cryovac. If the Court believes that a further continuance is appropriate, sobeit as Grace and its counsel simply cannot continue to participate in any way in the defense of this action.

## Conclusion

As this Court has observed, Cybergenics has already created far too much confusion, disruption, and delay. At this juncture, there is no reason to allow the disruption to continue, let alone to increase. Accordingly, for the foregoing reasons and on the foregoing authority, the PD Committee believes that, pending further clarification from the Third Circuit this case should proceed with the Committees as derivative plaintiffs, and that Grace and its counsel must be disqualified and prohibited from any additional participation in the defense of this case. In addition, the same reasons which support the continuation of this proceeding with the Committees as plaintiffs require that the motions of the other parties to dismiss the complaint, for the appointment of a trustee, and for the appointment of an examiner should be deferred.

Dated this 11th day of October, 2002.

Respectfully submitted,

FERRY JOSEPH & PEARCE, P.A.

/s/Rick S. Miller
Theodore J. Tacconelli (#2678)
Rick S. Miller
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899-1351
(302) 575-1555

-and-

Scott L. Baena
Robert W. Turken
BILZIN SUMBERG DUNN BAENA
PRICE & AXELROD LLP
First Union Financial Center
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131


Counsel for The Official Committee of
Asbestos Property Damage Claimants