IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**Objection Deadline:  4:30 p.m. , October 11, 2002**
**Agreed Extension Date: 4:30 p.m. , October 14, 2002**
**Hearing:  October 28, 2002 at 12:00 p.m.**

**RESPONSE AND LIMITED OBJECTION OF FRESENIUS MEDICAL CARE
HOLDINGS, INC. TO DEBTORS' MOTION FOR THE ENTRY OF AN ORDER
AUTHORIZING THE DEBTORS TO ENTER INTO A SETTLEMENT AGREEMENT
WITH THE INTERNAL REVENUE SERVICE IN CONNECTION WITH
INTEREST DEDUCTIONS CLAIMED WITH RESPECT TO
CORPORATE OWNED LIFE INSURANCE [D.I. #2737]**

Fresenius Medical Care Holdings, Inc. ("FMCH"), hereby responds and presents a

limited objection to the motion of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") entitled Motion For The Entry Of An Order Authorizing The

---

1    The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc.,  CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Debtors To Enter Into A Settlement Agreement With The Internal Revenue Service In

Connection With Interest Deductions Claimed With Respect To Corporate Owned Life

Insurance (the "Motion"), which requests the entry of an order authorizing the Debtors to enter

into a settlement agreement with the Internal Revenue Service ("IRS") in connection with

corporate-owned life insurance ("COLI").  In support of its Response and Limited Objection,

FMCH respectfully submits as follows:

### Introduction

1.       FMCH does not object to the Court authorizing the Debtors to pursue on behalf of

themselves a settlement agreement with the IRS that incorporates the 80/20 Settlement Proposal.

In fact, FMCH has encouraged and supported the Debtors in their effort to implement a mutually

acceptable final settlement agreement incorporating the 80/20 Settlement proposal, including the

surrender of the COLI policies, (the "Closing Agreement"), and FMCH urges the Court to direct

the Debtors to use their best efforts promptly to conclude such a settlement agreement with the

IRS while the opportunity is open to taxpayers.[2]  FMCH does object, however, to the Court

approving a settlement, the exact terms of which are as yet unknown, to the extent that the

Debtors' agreement to such a settlement in any way purports to bind non-Debtors.

2.       It should be clear from the Motion that a settlement with the IRS does not in fact

yet exist.  The so-called 80/20 Settlement Proposal is a promising framework for a settlement

agreement, but it most certainly is not a settlement.  To the contrary, all the parties, including the

IRS, understand that they still need to reach a final agreement, which they then will memorialize

---

[2]    In Announcement 2002-96 (scheduled to appear in Internal Revenue Bulletin 2002-43, dated Oct. 28, 2002) the IRS announced a limited 45 day period for taxpayers to agree to a settlement of interest deductions along the lines of the 80/20 Settlement Proposal.  Announcement 2002-96 is attached as Exhibit A.

CHI99 3999024-5.052942.0033

in a formal closing agreement.  There remain a number of issues that the parties still must

address before each is ready to decide whether the final closing agreement is acceptable to them.

Accordingly, there simply is not sufficient information on which FMCH (or the Court) can base

its evaluation of the proposed settlement.  The Closing Agreement should be submitted to this

Court for approval.

3.      The Motion also is ambiguous as to the scope of authority requested by the

Debtors.  As is further explained below, the Debtors have been dealing with the IRS in many

different capacities.  The Debtors have acted not only on behalf of themselves, but also on behalf

of FMCH, and other members of the FMCH tax consolidated group, as agents of FMCH under a

tax sharing agreement and related powers of attorney.  To the extent the Motion only seeks

authority for the Debtors to enter into a settlement agreement on behalf of themselves, and not on

behalf of  FMCH or its subsidiaries, then the Court can moot this objection by including within

its order language clarifying that the Debtors will execute a Closing Agreement only on their

own behalf, and not on behalf of FMCH.  If, however, through the Motion the Debtors seek

authority in their capacities as agents and attorneys in fact for FMCH to enter into a settlement

agreement on behalf of and binding on FMCH (and other non-Debtors), that may or may not turn

out to be adverse to the interests of FMCH, then FMCH objects.  Such a request would require

the Court to examine the potential conflicts confronting the Debtors in their representative

capacity, and the status of the agreements under which the conflicts arise, before giving approval

to any settlement authority.

4.      For all these reasons, and as is further explained below, FMCH requests that the

Court: (a) authorize and direct the Debtors to negotiate a full and complete Closing Agreement

that incorporates the 80/20 Settlement Proposal, including the surrender of the COLI policies,

and that is subject to Court approval; and (b) clarify that the approval of the Motion only authorizes the Debtors to enter into the Closing Agreement on their own behalf (and not on behalf of any non-Debtors, including FMCH).

5.      In addition, the Court should reject the invitation of the Official Committee of Asbestos Personal Injury Committee Claimants (the "PI Committee") to dictate the terms of the negotiation process with the IRS by precluding a determination of priority tax obligations of the Debtors and requiring that any COLI settlement include a "refund" and the return of such "refund."   Because it is undisputed that any COLI settlement will in fact result in substantial tax liabilities owed to the IRS by Grace (including priority taxes owed by the Debtors, any suggestion by the PI Committee to the contrary notwithstanding), not an overpayment, any such requirement for a "refund" could doom the negotiation process from the start.  The IRS can be expected to resist any cash distribution to taxpayers that owe substantial priority tax liabilities, and its response to an order requiring a "refund" as a condition of a COLI settlement could be to reject the settlement outright.

## Background

### (a)      *The COLI Dispute*

6.      As explained in the Motion, in 1988 and 1990, "Grace" purchased COLI policies from Mutual Benefit Life Insurance Company.[3]  Grace paid the premiums for its COLI policies utilizing, in part, loans secured by the COLI policies (the "Policy Loans").  Commencing with the taxable year ending on December 31, 1989, through the taxable year ending December 31,

---

[3]    The term "Grace" refers to all members of  the consolidated  groups of corporations that included the Debtors and that filed consolidated tax returns during the taxable years at issue (1989 through December 31, 1998). As discussed more fully in the Motion,  Grace included other entities now-unrelated to the Debtors, including FMCH (and its subsidiary, National Medical Care, Inc.) and Sealed Air Corporation (and its subsidiary, Cryovac, Inc.), in most of the taxable years at issue.

CHI99 3999024-5.052942.0033

1998, Grace claimed on the federal consolidated income tax returns for each of those years

deductions of the interest accruing on the Policy Loans (the "COLI Interest Deductions"), which

totaled approximately $255.4 million for all of the taxable years at issue.  W.R. Grace & Co. –

Connecticut ("Grace-Conn."), one of the Debtors, received the benefits of the Policy Loans and

the COLI policies during the tax years at issue and continues to be the owner and beneficiary of

the COLI policies.

7.       The Motion correctly notes that the IRS has sought to disallow deductions taken

by taxpayers (including Grace) for COLI Interest Deductions.  After analyzing and contesting the

IRS position for many years, the Debtors have now proposed that the Grace COLI Interest

Deductions be settled in a manner that is consistent with the terms described in Exhibits A and B

to the Motion.  The 80/20 Settlement Proposal is a proposed settlement structure, not a

settlement in fact.  Even assuming there is agreement on the 80% give-up of the COLI Interest

Deductions by the taxpayers, the parties still must reach agreement on various related issues

before there can be a settlement in fact.

**(b)      *The Debtors' Past and Current Control of the Tax Process***

8.       As described in the Motion, for the taxable years beginning in 1989 and

continuing through the tax year ending on September 28, 1996, the common parent of the Grace

federal consolidated group was W. R. Grace & Co., taxpayer identification number 13-3461988,

("Grace Parent #1" or "Grace Parent #1/FMCH").  In late September of 1996 Grace combined its

National Medical Care, Inc. ("NMC") healthcare subsidiary with the worldwide dialysis business

of Fresenius AG (this is referred to as "Reorganization #1" in the Motion).  As part of

Reorganization #1, Grace Parent #1 changed its name to Fresenius Medical Care Holdings, Inc.

CHI99 3999024-5.052942.0033

and ceased to be the common parent corporation of the consolidated group that constituted the

Grace historical businesses for tax years of the Debtors subsequent to September 28, 1996.[4]

9.      As a matter of convenience to the IRS, the federal consolidated tax return

regulations generally provide that the common parent of a tax consolidated group shall act as

agent for all other taxpayers in the consolidated group and shall control the manner and timing of

tax filings on behalf of the consolidated group.  The common parent also is the consolidated

group's agent for dealing with the IRS when there is an examination by the IRS of the tax returns

of the group.  Because Reorganization #1 resulted in the transfer of the historical Grace

operations and companies (including the Debtors and the companies now known as Sealed Air

Corporation and Cryovac, Inc.) to a new tax consolidated group, those companies did not want

Grace Parent #1/FMCH to retain control of the tax responsibilities for the Grace consolidated

group for the years 1989 to 1996.  Accordingly, as part of Reorganization #1, Grace (including

the Debtors) entered into a Tax Sharing and Indemnification Agreement ("TSIA #1") that

required Grace Parent #1/FMCH to appoint Grace-Conn. to act as its agent with respect to tax

matters relating to the consolidated tax returns of the Grace consolidated group for the taxable

years through 1996.

10.     The principle underlying TSIA #1 was simple and straightforward:  The members

of the Grace consolidated group (including the Debtors) other than FMCH and NMC retained

control of the dealings with the IRS for consolidated return tax years 1989 to 1996 as part of

Reorganization #1 because they received the benefits (refunds) and burdens (payments) of the

---

[4]    As described in the Motion there were two subsequent consolidated groups:  the consolidated group of which Sealed Air Corporation ("Grace Parent #2/Sealed Air") was the common parent until 1998 and the existing Debtors' consolidated group of which the debtor, W.R. Grace & Co. ("Grace Parent #2/Debtor"), currently is the common parent.

CHI99 3999024-5.052942.0033

tax assets and liabilities of historical Grace (other than those attributable to NMC).  Accordingly, TSIA #1, along with the Distribution Agreement signed at the same time, assigned to the remaining members of the Grace consolidated group (including the Debtors) responsibility for filing and defending the relevant consolidated tax returns for the Grace consolidated group and payment of all taxes for historical Grace operations (other than those attributable to NMC) and gave FMCH the right to indemnification for any failures to honor these commitments.

11.     Pursuant to TSIA #1, Grace Parent #1/FMCH provided to Grace-Conn. and various officers and attorneys of Grace-Conn. powers of attorney for purposes of allowing Grace-Conn., through its agents, to control the dealings with the IRS regarding the historical Grace operations.  The Debtors and FMCH have each continued to undertake and perform their duties and obligations under TSIA #1 since the filing of this Chapter 11 case.  It is pursuant to their rights and obligations under TSIA #1 that the Debtors have continued post-petition to exercise the powers of a common parent, filed tax returns and notices on behalf of Grace Parent #1/FMCH, and conducted the negotiations with the IRS regarding the Grace tax audits for tax years 1989 to 1996 generally and the 80/20 Settlement Proposal specifically.

## Argument

### (a)     *The Debtors Must Not Agree To a Settlement on Behalf on Non-Debtors*

12.     Any Closing Agreement with the IRS for tax years 1989 to 1996 must be executed by and in the name of FMCH on behalf of the Grace Parent #1/FMCH consolidated group for such tax years.[5]  FMCH currently understands that the IRS will require both FMCH and the Debtors to execute any Closing Agreement.  Because there are potential conflicts

---

5    Likewise, for subsequent Grace consolidated group tax years the Closing Agreement must be executed by and in the name of Sealed Air Corporation on behalf of the Grace Parent #2/Sealed Air consolidated group.

-7-

between the Debtors' responsibility as agent and attorney in fact for FMCH, and the Debtors' other interests, any order entered by this Court should clearly state that it authorizes the Debtors to enter into a Closing Agreement on their own behalf, and not on behalf of FMCH.  This will ensure that as to any Closing Agreement or other document finalizing the settlement with the IRS, FMCH will individually determine its agreement to the terms of the Closing Agreement and will execute such Closing Agreement in its own name and on its own behalf.  To the extent that the Court agrees with this position, this Limited Objection is mostly moot.   If this is not the Court's conclusion, in the absence of a Closing Agreement it is impossible for FMCH to determine whether the terms or the means by which the 80/20 Settlement Proposal is implemented will have a material adverse effect on FMCH and the Grace Parent #1/FMCH consolidated group.  Not surprisingly, FMCH simply cannot and will not agree to any COLI settlement until it knows the actual terms and conditions of a Closing Agreement.

13.     Given the numerous tax years involved, the existence of three separate tax consolidated groups during these years (each with a separate common parent: Grace Parent #1/FMCH, Grace Parent #2/Sealed Air and Grace Parent #3/ Debtor), the continuing post-petition duties of the Debtors as representatives of FMCH, and the as yet unaddressed issue of the timing and terms of the surrender of the COLI policies by Grace-Conn., there exist significant potential conflicts of interest between the Debtors, FMCH and Grace Parent #2/Sealed Air.  While it is possible that the common interests of the parties will prevent these conflicts from materializing, this Court should not approve the Motion until all of the terms of the Closing Agreement have been agreed among the Debtors, Grace Parent #2/Sealed Air, FMCH, and the IRS.  Until a Closing Agreement is finalized, there is nothing definitive for this Court to approve.

-8-

### (b)      *Settlement Or Not, the Debtors Face Substantial Tax Liabilities*

14.      While the Motion makes clear that the proposed settlement will result in tax liabilities for the Debtors that are substantially reduced from what those liabilities would be, were the Debtors not to prevail in their protests of the COLI Interest Deduction, it is equally clear that the resulting tax liability nonetheless will be substantial.  Although a precise calculation is not possible due to the complexities of the Grace consolidated tax returns and other as yet unresolved tax disputes being protested by Grace, the Debtors' tax liabilities for COLI deduction adjustments alone for the years under the settlement agreement will approach $50 million, without interest.  This is without regard to whatever additional liabilities that will exist as a result of an ongoing IRS examination process.

15.      The suggestion by the PI Committee that the Court's order must require the return of "refunds" that might result from the settlement simply ignores the substantial tax deficiencies that the Debtors and the IRS acknowledge will exist after any settlement, even though the exact amount of such deficiencies has not yet been calculated.  In fact, if this Court were to require that the COLI Closing Agreement provide for any COLI settlement-generated overpayments to be paid to the Debtors, it would almost certainly doom the settlement process from the start.  The IRS is not in the habit of entering into settlement agreements that create tens of millions of dollars of unsatisfied tax deficiencies and then blindly acquiescing in a request for an alleged overpayment of taxes by a taxpayer that is both under IRS examination of its tax returns and in bankruptcy.  Such a suggestion badly misperceives the diligence and ability of the government to fashion an integrated settlement agreement that would preclude such a request in the first place, not to mention its ability to protect the public fisc through redeterminations of liabilities, court sanctioned set-offs, and other mechanisms.

CHI99 3999024-5.052942.0033

16.     The PI Committee assumes that the IRS will implement a settlement of the <u>entire</u>

COLI controversy in a manner that produces an overpayment of taxes, but then fail to act in its

own best interests.  The PI Committee assumes an IRS that will act unlike any other secured

creditor and simply turn its back on an asset that it holds and that can reduce its claim - a priority

tax claim at that.  Assessment is irrelevant to setoff.  It is not a pre-condition to a setoff, as the

Committee seems to assume.  No estimation of the IRS tax claims is needed.  An effective

Settlement Agreement covering all of the COLI Interest Deductions is a pre-condition to any of

the alleged right to refunds arising out of 1990-1992, if any.  Anyone who looks at the tax

ramifications of the 80/20 Settlement Proposal in good faith will be compelled to concede that

upon the effectiveness of the Closing Agreement the IRS will have a valid priority tax claim of

more than five or ten times the amount of any potential "refund" from the tax years 1990-1992.

The only thing the objection of the PI Committee is likely to achieve is the refusal of the IRS to

further consider implementing any COLI settlement.  Is this the pyrrhic victory the PI Committee

seeks on behalf of the Debtors?

17.     Not only should the Court expect that the government will protect itself as part of

a settlement, it is clear that the government has an absolute right to do so under any

circumstances.  The PI Committee requests that the Court prohibit the IRS from any setoff of any

1990-1992 "refundable amount" because "the Debtors [sic] will in effect be achieving a priority

payment of taxes to that extent of the setoff funds."  No such "refundable amount" exists.  Even

assuming arguendo that there is a "refund," and the IRS would be exercising its right of setoff,

the objection is still nonsensical as it goes against the very heart of the setoff right of any

creditor.  "The argument that setoff should be denied to avoid the inequity of preferential

treatment is an argument against the very concept of setoff, not an argument against its

application to the facts of this case." United States v. Maxwell, 157 F. 3d 1099, 1102 (7th Cir. 1998); see also, Nuclear Imaging Systems, Inc., 260 B.R. 724, 739 (Bankr. E.D. Pa. 2000) (alleged unfairness of "unitary creditor" theory would not justify denial of setoff rights).  Section 506 of the Bankruptcy Code makes a creditor with a right of setoff a secured creditor to the extent of the value of that setoff right.  The claims of secured creditors generally are not affected by a bankruptcy proceeding.  The essence of the setoff right, therefore, is preferential treatment. In re Aspen Data Graphics, Inc., 109 B.R. 677, 683 (Bankr. E.D. Pa. 1990).  The IRS has the same right to setoff as any other creditor.  See, e.g., United States v. Munsey Trust Co. of Washington, D.C., 332 U.S. 234, 239 (1947) ("The government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him'") (quoting Gratiot v. United States, 40 U.S. 336, 370 (1841)).  For these reasons, the PI Committee's request should be summarily rejected.

### Notice

18.    Notice of this Response and Limited Objection to the Motion has been given to (i) the Debtors, (ii) the Office of the United States Trustee, (iii) counsel to the debtor-in-possession lenders, (iv) counsel to each official committee appointed by the United States Trustee and (v) those parties that requested papers under Fed. R. Bankr. P. 2002.

WHEREFORE, FMCH respectfully requests that the Court (i) authorize and direct the Debtors to negotiate a full and complete Closing Agreement that incorporates the 80/20 Settlement Proposal, including the surrender of the COLI insurance policies, and that is subject to Court approval; and (ii) clarify that the approval of the Motion only authorizes the Debtors to enter into the 80/20 Settlement proposal on their own behalf (and not on behalf of any non-Debtor, including FMCH).

-11-

CHI99 3999024-5.052942.0033

-12-

Wilmington, Delaware
Dated:  October 14, 2002

Respectfully submitted,

McDERMOTT, WILL & EMERY
David S. Rosenbloom
227 West Monroe Street
Chicago, Illinois 60606-5096
(312) 372-2000

and

IRELL & MANELLA LLP
Milton B. Hyman
Elliot G. Freier
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
(310) 277-1010

and

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ Christopher M. Winter

William H. Sudell, Jr. (No. 463)
Christopher M. Winter (No. 4163)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347
(302) 658-9200

Co-Counsel for Fresenius Medical Care
Holdings, Inc.

CHI99 3999024-5.052942.0033

-12-