**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | **Chapter 11** |
| **W.R. GRACE & CO., et al** | § | **Jointly Administered** |
| | § | **Case No. 01-1139 (JJF)** |
| **Debtors** | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**INTERIM APPLICATION OF FERRY & JOSEPH, P.A.,**
**FOR THE FIRST, SECOND, AND THIRD INTERIM PERIODS**

This is the final report of Warren H. Smith & Associates ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the First, Second, and Third Interim Fee Application Requests of Ferry & Joseph, P.A. (the "Application").

**BACKGROUND**

1. Ferry & Joseph, P.A. ("Ferry Joseph"), was retained as counsel to the official committee of asbestos property damage claimants. In the Application, Ferry Joseph seeks approval of fees totaling $63,965.50 and costs totaling $15,948.32 for its services from April 18, 2001, through December 31, 2001.

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, Issued January 30, 1996,(the Guidelines"), as well as for consistency with

precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Ferry Joseph an initial report based on our review and received a response from Ferry Joseph, portions of which are quoted herein.

**DISCUSSION**

General Issues

3. In our initial report, we noted that the time entries are listed in chronological order by timekeeper, not chronologically by category. We asked Ferry Joseph to make this adjustment for future applications. Ferry Joseph responded that

> The time entries in our earlier fee applications were not listed by category because neither the Local Rules nor the original Administrative Order required them to be. However, we have since changed the format of our time entries and they are now grouped chronologically by category.

This fully addresses our concern.

4. In our initial report, we noted that Ferry Joseph professionals TJT, MBJ, and RSM do not consistently provide adequate detail in their time entries. We asked Ferry Joseph to advise these professionals to provide adequate detail in the future. Ferry Joseph responded that "[t]he professionals at this firm who work on this case will pay closer attention to providing adequate detail in their time entries."

5. In our initial report, we noted that during the August 2001 reporting period, MBJ's rate increased from $250 to $300 per hour and TJT's rate increased from $185 to $200 per hour. We also noted that during the December 2001 reporting period, RSM's rate increased from $160 to $175 per hour. We asked Ferry to explain these rate increases as is required under

the Guidelines. Ferry responded that "[t]he rates for MBJ, TJT, and RSM which increased in August and December, 2001 were part of general firm rate increases and applied to all clients of the firm." We have no objection to the moderate increases in the rates of TJT and RSM. As for the increase in MBJ's rate, Ferry supplemented its response by stating that the rise in MBJ's rate was prompted by a reassessment of his market value in which he determined that his services were underpriced. While we might otherwise object to a sudden 20% increase in the rate of such an experienced professional (MBJ has been practicing for about 25 years) so soon after Court approval of a professional's retention, the fact that MBJ billed just 3.4 hours from the date of the rate increase through the end of the Application Period allays our concerns. Accordingly, we recommend no reduction in this regard but would ask that Ferry Joseph be mindful of the requirement to explain rate increases as they are implemented in the future.

Specific Time and Expense Entries

6. In our initial report, we noted that between May 31, 2001, and November 8, 2001, Ferry billed 23.7 hours for a cost to the bankruptcy estate of $4,282.00 for committee meetings where both TJT and RSM attended. See Exhibit A.[1] We asked Ferry to explain why multiple professionals were necessary at each of these committee meetings. Ferry responded

> RSM and I both regularly work on this case. Due to the complex nature of this case it is necessary for both of us to attend the meetings for scheduling purposes as tasks are sometimes assigned during the meetings and to report to the committee regarding various tasks that either of us may have completed. It is imperative for us both to stay current and be knowledgeable of the multiple issues affecting the PD Committee in order to represent them properly. It is also necessary so that we are both prepared in the event that one of us isn't available then the other will be capable to fill in without jeopardizing the interests of the client.

[1] For the sake of brevity, only the relevant dates and total hours and fees expended are provided.

We accept Ferry Joseph's explanation and recommend no reduction in this regard.

7. In our initial report, we noted that Ferry billed the bankruptcy estate $3,819.54 for expenses that were not adequately explained. We asked Ferry to provide additional detail regarding the following expenses.

| | | |
|---|---|---|
| 05/21/01 | American Airlines | $1,891.00 |
| 05/23/01 | Hyatt Regency DFW | $ 241.47 |
| 07/09/01 | Cost Advance (6/25/01 service of pleading) | $ 554.78 |
| 08/01/01 | Cost Advance (travel reimbursement to T. Tacconelli, Esq.) | $ 497.12 |
| 10/01/01 | T. Tacconelli Travel Expense | $ 635.17 |

Ferry responded:

> The expense listed as American Airlines in the amount of $1,891.00 was the airfare for RSM incurred in connection with attending the first committee meeting in Dallas, TX. The expense listed as Hyatt Regency DFW in the amount of $241.47 was the cost of hotel accommodations for RSM while staying in Dallas for the same meeting. The expense listed as Cost Advance (6/25/01 service of pleading) in the amount of $554.78 was for the out-sourced copying and serving of a pleading filed by the PD Committee. The expense listed as Cost Advance (travel reimbursement to T. Tacconelli, Esq.) in the amount of $497.12 was reimbursement for my costs (air fare, hotel, working meals, etc.) incurred in connection with attending the committee meeting in Atlanta, GA on June 26, 2002. The expense listed as T. Tacconelli Travel Expense in the amount of $635.17 was for reimbursement for my costs (air fare, hotel, working meals, etc.) incurred in connection with attending the committee meeting in Atlanta, GA on August 21, 2002.

Though the written response did not make this clear, Ferry subsequently confirmed that the $1,891 charge for airfare was for a round-trip coach ticket for the first committee meeting, of which there was inadequate notice to allow a discounted fare to be obtained. We note that, to its credit, Ferry used foresight to buy discounted tickets in advance of subsequent committee meetings. We accept Ferry's response and recommend no reductions regarding these expenses.

## CONCLUSION

8. Thus, we recommend approval of fees totaling $63,965.50 and expenses totaling $15,948.32 for Ferry's services from April 18, 2001, through December 31, 2001.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES**

By:______________________

Warren H. Smith
Texas State Bar No. 18757050
Mark W. Steirer
Texas State Bar No. 19139600

900 Jackson Street
120 Founders Square
Dallas, Texas 75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 21st day of October 2002.

______________________
Warren H. Smith

**SERVICE LIST**

**The Applicant**
Theodore J. Tacconelli, Esq.
Ferry & Joseph, P.A.
824 Market Street, Ste. 904
P.O. Box 1351
Wilmington, DE 19899

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Matthew G. Zaleski, III, Esq.
Campbell & Levine
Chase Manhattan Centre, 15th Floor
1201 Market Street, Suite 1200
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

**EXHIBIT A**

| DATE | TOTAL TIME | TOTAL FEE |
|---|---|---|
| 05/31/01 | 2.0 | 345.00 |
| 07/10/01 | 2.6 | 448.50 |
| 07/13/01 | 3.0 | 517.50 |
| 07/20/01 | 2 | 345.00 |
| 08/23/01 | 1[2] | 250.00 |
| 08/02/01 | 1.50 | 260.00 |
| 09/06/01 | 1.40 | 252.00 |
| 09/27/01 | 1.80 | 328.00 |
| 09/13/01 | 0.80 | 144.00 |
| 09/20/01 | 0.60 | 108.00 |
| 10/04/01 | 1.00 | 180.00 |
| 10/11/01 | 0.60 | 112.00 |
| 10/18/01 | 0.50 | 92.00 |
| 10/25/01 | 0.80 | 144.00 |
| 11/15/01 | 1.60 | 296.00 |
| 11/08/01 | 4.00 | 720.00 |

[2] On this date only the entries are for MBJ and TJT. MBJ's entry does not have a time increment assigned, therefore, we assume both were there for the same time period that TJT's entry assessed: 0.50.