## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | |
| | § | **Chapter 11** |
| **W.R. GRACE & CO., et al** | § | **Jointly Administered** |
| | § | **Case No. 01-1139 (JKF)** |
| **Debtors** | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING
### INTERIM APPLICATION OF KIRKLAND & ELLIS
### FOR THE FIRST, SECOND, AND THIRD INTERIM PERIODS

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Application of Kirkland & Ellis for the First, Second, and Third Interim Periods (the "Application").

### BACKGROUND

1.        Kirkland & Ellis ("Kirkland" or "K&E") was retained as bankruptcy counsel to the Debtors.  In the Application, Kirkland seeks approval of fees totaling $4,569,666.00 and expenses totaling $321,555.72 for its services from April 2, 2001, through December 31, 2001.

2.        In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with the Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of

Delaware, and the Third Circuit Court of Appeals.  We served on Kirkland an initial report based

on our review and received a response from Kirkland, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.      In our initial report, we noted that Kirkland professionals Sullivan, Shenoy, Melvin,

Grummer, Stephenson, Fox, Alke, Lutz, Kapp, Schwartz, Pope, Sorce, Running, Ney, Bernick,

McMillin, Hardy, Baer, Windley, Mitchell, Higgins, Sprayregen, Maynes, Bates, Oslan, and Keller

did not consistently provide adequate detail in their time entries.  We asked Kirkland to advise these

professionals to provide more information in their time entries in the future.  Kirkland replied that

it has worked, and will continue to work, to ensure that individual timekeepers provide adequate

information in their time entries.

4.      In our initial report, we noted that Kirkland professionals Alke, Melvin, Mitchell,

Sullivan, Kapp, Schwartz, Baer, Fabian, Running, Bernick, Pope, McMillin, Hardy, and Windley

consistently lumped their time entries.  We asked Kirkland to advise these professionals not to lump

their time entries in the future.  Kirkland replied that it has worked, and will continue to work,

assiduously to avoid lumping time in its entries to ensure that time is kept in tenth of an hour

increments.

5.      In our initial report, we noted that during the August 2001 billing cycle, J. Baer's

hourly rate increased from $495 to $510, J. Kapp III's hourly rate increased from $415 to $425, B.

Windley's hourly rate increased from $150 to $170, and S. Mitchell's hourly rate increased from $70

to $85.  We asked Kirkland to explain these rate increases, as the Guidelines require.  Kirkland

responded that

> [t]hese rate increases were in addition to the normal firm-wide annual rate
> adjustments that normally occur during the July billing cycle each year.

> Commencing on August 1, 2001, K&E further adjusted the rates for Ms. Baer and Mr. Kapp to bring them into line with those of other bankruptcy attorneys of similar experience. Similarly, K&E also adjusted the billing rates firm-wide for their legal assistants and project assistants, including Ms. Windley and Ms. Mitchell, to better reflect the then-prevailing market rates for paraprofessionals of similar skill and experience.

We accept Kirkland's explanations regarding these relatively small increases in the referenced rates, and we recommend no reduction in this regard.

<u>Specific Time and Expense Entries</u>

6.    In our initial report, we noted that between July 2, 2001, and November 30, 2001, Kirkland billed 1,441.45 hours for a cost to the bankruptcy estate of $545,264.55 for projects where the number of professionals assigned to the task seemed high. See Exhibit A. We asked Kirkland to explain why so many professionals were assigned to each task. Kirkland responded in detail regarding each of the projects referenced in Exhibit A. Kirkland's response in this regard is attached hereto as Response Exhibit 1. We accept the explanations offered in Response Exhibit 1 regarding with respect to items A-2 and A-3 and with respect to the CMO Brief and the CMO Hearing. We recommend no reductions with respect to those items.

7.    With respect to item A-1 of Exhibit A, we note that Kirkland accuses us of "conflat[ing]" a number of unrelated automatic stay issues and motions. If we have done so, it is because explanations such as "Attend to matters re stay" and "draft motion for relief from automatic stay" fall far short of the level of specificity envisioned by the Guidelines, and because the time entries restated in part A-1 of Exhibit A appear seriatim in the fee detail[1] without any description to differentiate one stay issue from another. Kirkland states that the activities reflected in part A-1 of

---

[1] The time entries included in Exhibit A constitute 27 of 28 time entries in the project category for the month of July 2001.

Exhibit A

> are a small portion of the time spent by K&E attorneys on literally dozens of different issues relating to enforcement of the automatic stay as well as the myriad issues relating to the formulation and negotiation of the scope of the preliminary injunction (the "Preliminary Injunction") that the Bankruptcy Court put into place on May 3, 2001, a copy of which is attached hereto as <u>Exhibit A</u>, barring the prosecution of currently pending asbestos-related actions and fraudulent transfer actions against certain affiliates of the Debtors.

While we understand that there are "dozens of different issues" involved, we believe that the real problem here is the failure to provide adequate detail regarding the services rendered. Ultimately, we accept the explanation for the involvement of each of the professionals referenced in item A-1 of Exhibit A, but we must admonish Kirkland to provide greater detail regarding its activities relating to the automatic stay in the future.

8.    With respect to item A-4 of Exhibit A, we accept Kirkland's explanation and recommend no reduction. We note, however, that the attorneys regularly billed in half-hour increments rather than in tenths of an hour as is directed by paragraph II.D.5 of the Guidelines: "Time entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour". We expect Kirkland's professionals to adhere to this guideline in the future.

9.    With respect to item A-5 of Exhibit A, we accept Kirkland's explanation regarding all of the time entries included within item A-5 other than those relating to the "College of Knowledge". With respect to these entries, Kirkland explained that

> Ms. Fabian attended a conference sponsored by the Debtors' in-house counsel as a means of understanding Debtors-specific asbestos-related issues.

It is our opinion that the 7.5 hours ($1,725) billed by Ms. Fabian for reviewing the "College of Knowledge binder" are non-compensable. The bankruptcy estate should not be asked to pay for the training of the attorneys it employs; indeed, the engagement of counsel presupposes an expertise in

the relevant practice area. Fundamentally, the training of new associates is an overhead expense that must be borne by the firm. Additionally, as with item A-4, we also note that the attorneys regularly billed in half-hour increments rather than in tenths of an hour as is directed by paragraph II.D.5 of the Guidelines. With respect to item A-5 of Exhibit A, we recommend a reduction of $1,725 in fees.

10.    In our initial report, we noted that between July 10, 2001, and December 13, 2001, Kirkland billed 408.8 hours for a cost to the bankruptcy estate of $177,587.11 in fees for 19 occasions in which multiple professionals attended or participated in the same meeting, hearing, or conference call. See Exhibit B. We asked Kirkland to explain why it was necessary for multiple professionals to participate in each of these meetings, hearings, and conference calls. Kirkland provided a lengthy, detailed response (which is attached hereto as Response Exhibit 2; the introduction to Response Exhibit 1 also touches on the relevant issues) that addressed our concerns with respect to each of these instances. Accordingly, we recommend no reduction for these instances of multiple staffing.

11.    In our initial report, we noted that between July 13, 2001, and August 23, 2001, Kirkland billed the bankruptcy estate $2,071.50 for time entries which appear to be not calculated correctly. See Exhibit C. We asked Kirkland to adjust the invoices appropriately. Instead, Kirkland responded that the errors were errors in transcription, not errors in addition:

> Based upon various attorneys' notes, the time discrepancies should be corrected as follows: (1) Mr. Bernick's time for "preparation for Asbestos team meeting" should be 0.3 hours vice 0.2 (Exhibit C-1), (2) Ms. Windley's telephone conferences with local counsel should be 0.5 hours vice 0.4 (Exhibit C-2), (3) Ms. Baer spent 4.0 hours reviewing "bar date notice cases and pleadings" vice 0.4 hours (Exhibit C-3) and (4) Ms. Baer spent 1.3 hours participating in telephone conferences vice 1.0 hours.

We accept the explanations offered by Kirkland, and we recommend no reduction in this regard.

12.    In our initial report, we noted that between July 2, 2001, and September 28, 2001,

Kirkland billed 195.3 hours for a cost to the bankruptcy estate of $32,122.50 for matters regarding

which a large amount of research was conducted despite the fact that the subject matter falls into

categories that would seem to be routine for a firm of Kirkland's expertise.  See Exhibit D.  We

asked Kirkland to explain why each of these tasks was necessary given the firm's expertise and

probable experience with these issues in the past.

13.    Regarding 167.3 hours in time entries for asbestos litigation research reflected in

Exhibit D, Kirkland responded:

> Yvette Ney, a 2001 summer associate, prepared a detailed internal research
> memorandum under Mr. Running's supervision that focused on product liability
> and other legal issues raised by the ZAI claims, and which had not been addressed
> in the Debtors' prepetition litigation and other relevant pleadings.  Mr. Running
> provided Ms. Ney with all relevant prior legal research and ensured that her
> research did not duplicate prior work.

Despite Kirkland's assurance that Mr. Running's supervision channeled this summer associate's

efforts in a direction that avoided duplication of other research projects, we note that Mr. Running

spent just .90 hour in such a supervisory role.  Moreover, our review of the time records in the

"Asbestos Litigation" project category does not indicate that Mr. Running or any other attorney

reviewed this summer associate's work product or used it in any fashion, despite the fact that this

summer associate billed 166.4 hours on the project at $125 per hour.  Even with the explanation

offered above, the subject matter of this research is poorly defined, and we cannot conclude that this

summer associate's activities conferred any benefit on the estate.  See 11 U.S.C. § 330(a)(3)(C).  We

accordingly recommend a reduction of $21,223 in fees.

14.    Regarding 14.4 hours in time entries for Daubert/Robinson research reflected in

Exhibit D, Kirkland responded:

> Mr. McMillin was assigned to research standards applied to the admissibility of expert testimony in asbestos cases, both under the federal *Daubert* standard as well as various state law standards. Mr. McMillin's research focused on the differences between the state law standards and those that would be applied in this bankruptcy under the Federal Rules of Evidence. Mr. McMillin also looked for precedent on how other federal courts had applied the *Daubert* standard to asbestos-related expert testimony.

We accept this explanation and recommend no reduction in this regard.

15.    Regarding 17.7 hours in time entries for ordinary-course professional research reflected in Exhibit D, Kirkland responded:

> As the time entries indicate, Mr. Schwartz researched and drafted an internal research memorandum for the Debtors containing guidelines for the Debtors to determine whether certain transactions would be actions taken in the ordinary course of business and whether Bankruptcy Court approval was necessary. This memorandum did not touch on any issues relating to the employment of ordinary course professionals.

We accept this explanation and recommend no reduction in this regard.

16.    In our initial report, we noted that between October 1, 2001, and November 30, 2001, Kirkland billed 203.7 hours for a cost to the bankruptcy estate of $23,735.50 for tasks which might be characterized as ministerial. See Exhibit E. We asked Kirkland to explain why these costs should not be so characterized. Kirkland responded generally that

> the kinds of tasks that Exhibit D lists are not secretarial-type tasks, but are, instead, tasks best suited to paraprofessionals. Indeed, as discussed at the August 26, 2002, hearing, K&E's future (e.g., the July 2002 and subsequent) fee applications will more fully describe the time entries for similar tasks so as to clearly indicate that they are not merely ministerial in nature.

Kirkland responded further regarding item E-1 of Exhibit E:

> Catherine Filippini was responsible for cataloging and indexing approximately 50 boxes of documents received from the law firm of Weil, Gotshal & Manges LLP, which had been the Debtors' counsel on this tax controversy with the Internal Revenue Service. As described in the Debtors' response for the fourth interim period, this tax controversy concerned the deductibility of certain expenses. The documents received from Weil, Gotshal had to be cataloged and indexed before

K&E's tax attorneys could begin to review them in preparation for developing the
Debtors' response in this multi-million dollar tax controversy. This was a
document review effort every bit as complex as a major document production.

We accept the general thrust of this response, but it is our opinion that the preparation of labels is

a ministerial/secretarial task for which compensation should not be awarded. Since 4.3 hours of Ms.

Filippini's time relates to this activity (at $70 per hour), we recommend a reduction of $301 in fees.

17.    Kirkland offered several responses regarding item E-2 of Exhibit E. The first such

response regards the time entries from the "Case Administration" project category:

During 2001, Ms. Windley (who has since left the firm) was the primary
bankruptcy legal assistant assigned to these chapter 11 cases and Ms. Mitchell
was the primary bankruptcy project assistant assigned to these chapter 11 cases.
Ms. Mitchell worked under Ms. Windley's direct supervision. Ms. Pope, as the
Fee Auditor is aware, is the primary litigation legal assistant assigned to these
chapter 11 cases. Mr. Alke and Ms. Knox were two of her project assistants.
Marguerite Melvin is a New York office-based legal assistant who has
performed a limited and specialized role in these chapter 11 cases and who has
filled in on occasion when Ms. Pope is not available.

Ms. Windley was responsible for reviewing all bankruptcy-related pleadings
prior to their being filed in K&E's voluminous and complex bankruptcy and
litigation support files. These bankruptcy files encompass all the materials
associated with the bankruptcy docket and are materially different in scope from
the litigation support files for which Ms. Pope is responsible. Ms. Mitchell was
her assistant in these matters, and performed a great many tasks specifically in
order to ensure that they were accomplished by the lowest-billing
paraprofessional capable of performing the particular task. Ms. Mitchell also
spent considerable time retrieving documents for attorney use and review that
were on the docket, a task that cannot be assigned to a secretary because
secretaries generally do not possess the requisite skills to search an electronic
docket, especially in instances where attorneys cannot readily identify the
document sought. Furthermore, it is inappropriate to assign such tasks to
attorneys because attorneys have higher and better uses and bill at far too high a
rate.

Ms. Pope, as the Fee Auditor is aware from the August 26, 2002, hearing and
K&E's responses to the fee auditor's initial and final reports on the fourth
interim quarter, has the primary responsibility of assisting the K&E litigation
team of attorneys by performing the myriad tasks described below. Primarily,
Ms. Pope has been charged with creating and maintaining the voluminous case

files required in these chapter 11 cases, which currently include fifteen (15) cabinets of documents, three complex, computer-based databases and 300 boxes of documents produced to the plaintiffs in the fraudulent conveyance adversary proceeding.  These case files support both the complex litigation at the heart of these chapter 11 cases and the bankruptcy-related legal proceedings.  As reflected in some of the time entries in Exhibit E-2 to the Initial Report, the project assistants (and Ms. Pope on occasion if no one else is available) furnish case file documents to attorneys for their review on an as-needed basis.

One of Ms. Pope's other critical duties is to review all correspondence and pleadings in order to "learn" the case and to "know" the files, which she must do in order to properly support the K&E litigation team of attorneys.  Furthermore, a knowledgeable individual must intelligently review these documents and correspondence on an intake basis to determine their proper handling.  In many cases, Ms. Pope is the most efficient person to perform this task because her billing rate is less than that of an attorney who would otherwise have to be assigned to the task.  This role is primarily reflected in the K&E fee application detail in certain entries such as "reviewing correspondence", some of which are listed in Exhibit B to the Initial Report.

As the Fee Auditor is also aware from the fourth interim period, Ms. Melvin performs the discrete, albeit critical task of regularly reviewing the Daily Bankruptcy Review, other bankruptcy-related trade publications and other media for articles relevant to these chapter 11 cases.  This review ensures that the K&E team is efficiently kept apprised of all relevant developments in these chapter 11 cases.  Although Ms. Melvin has, in recent months, trained a secretary to perform a much larger role, she remains primarily responsible for overseeing this review.  Nonetheless, on a going-forward basis, K&E expects that the cost of this vital task will decrease.  During the period at issue in the Initial Report, however, Ms. Melvin was still defining the scope of the task, which required her to be far more "hands-on" than she is now and will be in the future.

Finally, as alluded to above and as the Fee Auditor is aware from the fourth interim period, Ms. Mitchell, Mr. Alke and Ms. Knox are project assistants who perform day-to-day tasks maintaining the case files. They also assist in  other functions under the supervision of various legal assistants assigned to these chapter 11 cases, such as Ms. Pope and Ms. Windley.  They bill at a far lower rate than the legal assistants and perform the vast majority of the "ministerial tasks" referred to in the Initial Report.  Indeed, the project assistants are generally the ideal persons to perform these types of tasks because they are lower-paid than secretaries even though they are generally better-qualified than the secretaries and have more case-specific knowledge as a function of their day-to-day assignments and roles.  It would be impossible to manage these cases without the project assistants working with the legal assistants to maintain this

> huge database of documents.  Project assistants are a necessary and cost-
> effective component of the K&E team.

We accept the explanations regarding most of the instant time entries, including those reflecting Ms.

Windley's time spent reviewing case documents and assigning file categories.  However, we note

that the above response does not explain why a number of entries reflecting the preparation of copies

of documents by these professionals should be compensated.  These entries total 7.3 hours for BJA

at $70 per hour, 2.4 hours for SMM at $85 per hour, 2.1 hours for MMM at $150 per hour, 2.0 hours

for SAP at $155 per hour, 3.0 hours for KKL at $155 per hour, and 2.2 hours for BFW at $170 per

hour.  Accordingly, we recommend a reduction of $2,179 in fees.

18.    The next response regarding item E-2 of Exhibit E regards the time entries in the

"Claim Estimate, Objection and Resolution - Fees" project category:

> Ms. Pope's time was classified in error in this matter and should have been
> classified in Case Administration and is discussed above.  Ms. Mitchell had an
> additional task of maintaining the log of proofs of claim that the Debtors
> received until information about the claims agent was provided to the public in
> bar date notices.  This task, which is relatively complex and involved
> maintaining several classes of claims, including administrative claims, the
> several categories of priority claims and general unsecured claims, required
> expertise far greater than that of a secretary but did not require extensive work
> by an attorney.  Normally, such a function would be performed by a claims
> agent.  In these chapter 11 cases, however, because of the intense controversy
> over the bar date and notice program, as discussed above, the Debtors were
> unable to efficiently notify the public about the claims agent until many months
> had passed and had to maintain this early claims register.

We accept this explanation and recommend no reduction in fees in this regard.

19.    The next response regarding item E-2 of Exhibit E regards the time entry in the

"Contested Matters/Adversary Proceedings - Fees" project category:

> While K&E's paraprofessionals normally maintain the witness files, some
> attorney supervision is required to ensure that the files are properly organized and
> contain all of the required documents.  Exhibit E-2 reflects one such time entry by
> Mr. Sullivan.

We accept this explanation and recommend no reduction for the referenced time entry.

20.    The next response regarding item E-2 of Exhibit E regards time entries for paraprofessional fees at a November 21, 2001, hearing within the project category "Hearings - Fees":

> As discussed above, the November 21, 2001, CMO Hearing was virtually equivalent to a full trial. It required considerable paraprofessional support, as reflected by these time entries. Indeed, Ms. Pope's time reflects the broad array of tasks assigned to her, including meeting with vendors, arranging for the required technical support and organizing the dozens of boxes of materials and documents required. Mr. Alke provided the needed liaison in Chicago, where the vast majority of K&E's files reside, to ensure that a knowledgeable person could locate documents as required and provide other needed support. K&E understands that Mr. Alke's time entry for 11/20 should have been more detailed and will endeavor in the future to ensure that similar time entries are more detailed.

We accept this explanation and recommend no reduction in fees in this regard.

21.    In our initial report, we noted that between December 25, 2001, and December 31, 2001, Kirkland billed 9.0 hours for a cost to the bankruptcy estate of $5,895 for the drafting of a letter to Judge Wolin.

| | | | |
|---|---|---|---|
| 12/25/01 | Bernick, P.C. | 1.50 | Prepare letter to Judge Wolin. |
| 12/26/01 | Bernick, P.C. | 1.00 | Prepare letter to Judge Wolin. |
| 12/27/01 | Bernick, P.C. | 1.50 | Prepare Judge Wolin letter. |
| 12/29/01 | Bernick, P.C. | 1.00 | Further work on Judge Wolin letter. |
| 12/30/01 | Bernick, P.C. | 2.50 | Draft letter to Judge Wolin. |
| 12/31/01 | Bernick, P.C. | 1.50 | Prepare Judge Wolin letter. |

We asked Kirkland to provide additional information regarding this project. Kirkland enclosed a copy of the letter to Judge Wolin and responded that

> Exhibit N is a copy of Mr. Bernick's letter to Judge Wolin summarizing the huge amount of material contained in the CMO motion, CMO reply and related pleadings. As described above, Judge Wolin was assigned to these chapter 11 cases almost eight months after they had commenced, and after the entire case management matter had already been fully briefed for Judge Farnan in preparation for the November 21, 2001, CMO Hearing. At Judge Wolin's request, Mr.

> Bernick drafted this letter to succinctly summarize for Judge Wolin the myriad
> complex issues involved in case management in these chapter 11 cases.

We accept this explanation and accordingly recommend no reduction in this regard.

22.    In our initial report, we noted that between September 26, 2001, and September 28, 2001, Kirkland billed 7.5 hours for a cost to the bankruptcy estate of $825.00 for research whose purpose and benefit to the estate is unclear.

| 9/26/01 | Business/Ind Research | 0.50 | Business Industry Research |
| 9/26/01 | Business/Ind Research | 2.00 | Business Industry Research |
| 9/26/01 | Business/Ind Research | 5.00 | Business Industry Research |

We asked Kirkland to provide additional information regarding this project. Kirkland responded that

> K&E performed certain background research regarding various constituencies in
> the field of asbestos claims resolution. This research was later applied in a
> number of litigation areas.

We accept this explanation and accordingly recommend no reduction in this regard.

## CONCLUSION

23.    Thus, we recommend approval of fees totaling $4,544,238 ($4,569,666 minus $25,428) and costs totaling $321,555.72 for Kirkland's services from April 2, 2001, through December 31, 2001.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
          Warren H. Smith
          Texas State Bar No. 18757050
          Mark W. Steirer
          Texas State Bar No. 19139600

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 24th day of October 2002.

_____
          Warren H. Smith

## SERVICE LIST

**The Applicant**
Roger J. Higgins
**Kirkland & Ellis**
200 East Randolph Drive
Chicago, IL 60601

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Matthew G. Zaleski, III, Esq.
Campbell & Levine
Chase Manhattan Centre, 15th Floor
1201 Market Street, Suite 1200
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

*A-1:  Automatic Stay*

| 7/02/01 | Sven T Nylen | 3.60 | Draft motion for modification of automatic stay. |
|---|---|---|---|
| 7/03/01 | James W Kapp | 2.90 | Review and revise Debtors' motion to modify automatic stay and attend to issues re same. |
| 7/03/01 | Sven T Nylen | 1.00 | Draft motion for relief from automatic stay. |
| 7/05/01 | James W Kapp | 0.50 | Address issues re Debtors' request to seek relief from automatic stay to pursue appeal. |
| 7/05/01 | Janet Baer | 0.50 | Attend to matters re stay. |
| 7/05/01 | Janet Baer | 0.80 | Attend to matters re stay. |
| 7/06/01 | James W Kapp | 0.70 | Review and revise motion for relief from automatic stay to pursue appeal. |
| 7/06/01 | Janet Baer | 0.50 | Review and revise draft motion to lift stay. |
| 7/06/01 | Sven T Nylen | 4.80 | Research case law re relief from stay for appeals (1.0); draft motion requesting relief from stay (3.8). |
| 7/07/01 | Sven T Nylen | 0.30 | Draft motion for relief from automatic stay. |
| 7/09/01 | James W Kapp | 2.90 | Attend to issues re relief from automatic stay and review and revise motion re same. |
| 7/09/01 | Samuel A Schwartz | 1.20 | Revision of the stay motion (.6); drafting of the order re same (.6). |
| 7/09/01 | Janet Baer | 1.00 | Review correspondence re automatic stay insurance claims and internal conferences re same (.3); ........; review and revise motion to lift stay and confer with parties re same (.4). |
| 7/09/01 | Sven T Nylen | 3.80 | Draft motion for modification of the automatic stay. |
| 7/10/01 | James W Kapp | 0.80 | Attend to issues re motion for relief from stay to pursue action and review and revise same. |
| 7/10/01 | Janet Baer | 0.50 | Various conferences re Honeywell matters and lift stay motions. |
| 7/11/01 | Janet Baer | 0.30 | Attend to matters re implications of stay on various new business issues. |

| 7/13/01 | James W Kapp | 0.30 | Address issues re implication of automatic stay upon particular litigation. |
| 7/18/01 | James W Kapp | 0.80 | Address issues re automatic stay. |
| 7/18/01 | Janet Baer | 0.80 | Attend to matters re stay issues including CNA/Smolker and Morgan matters (.5); prepare correspondence on insurance issues and the stay (.3). |
| 7/20/01 | James W Kapp | 0.60 | Address issues re particular litigation and effect of automatic stay. |
| 7/23/01 | James W Kapp | 0.70 | Telephone conference with J. McFarland re automatic stay and Sealed Air lawsuit (.1); address issues re impact of automatic stay on foreign tax authority proceedings (.6). |
| 7/24/01 | James W Kapp | 0.50 | Address issues of automatic stay's effect upon foreign taxing authority. |
| 7/30/01 | Roger J Higgins | 0.30 | Attend to matters re automatic stay and preliminary injunction with respect to workers' compensation case. |
| 7/31/01 | James W Kapp | 0.40 | Address issues re automatic stay and effect upon government regulatory authority. |
| 7/31/01 | Janet Baer | 3.40 | Numerous conferences re Lift Stay matters (.7);......... |
| 7/31/01 | Roger J Higgins | 1.60 | Attend to matters re application of automatic stay and preliminary injunction re workers' compensation case. |

*Total: 32.5/$9,912.50*

## A-2: Fraudulent Transfer Issues

| 7/02/01 | Michelle H Browdy | 2.50 | Attend to procedural issues re fraudulent conveyance issues. |
| 7/02/01 | James W Kapp | 0.40 | Review correspondence re fraudulent transfer and attend to issues re same. |
| 7/02/01 | Scott A McMillin | 1.00 | Attend to matters re fraudulent transfer claims (.4); review related pleadings (.6). |
| 7/02/01 | Janet Baer | 1.70 | Prepare memo re comments on fraudulent conveyance brief (.4); prepare memo re particular briefs (.4); ....... |
| 7/03/01 | Michelle H Browdy | 6.00 | Legal research on fraudulent conveyance issue. |

| 7/03/01 | James W Kapp | 0.10 | Attend to issues re fraudulent conveyance. |
| 7/06/01 | David M Bernick, P.C. | 2.00 | Revisions to response brief re fraudulent conveyance. |
| 7/06/01 | Michelle H Browdy | 3.90 | Drafting memorandum memorializing research findings on fraudulent conveyance. |
| 7/09/01 | David M Bernick, P.C. | 4.50 | Revising and finalizing fraudulent conveyance brief (1.5); review of Grace brief and Barbanti (1.0); ...... |
| 7/09/01 | Michelle H Browdy | 2.20 | Edit memoranda on fraudulent conveyance legal standard and circulate (1.1); edit brief on fraudulent conveyance (1.1). |
| 7/09/01 | Scott A McMillin | 5.60 | Research and draft opposition to asbestos committees' motion to prosecute fraudulent transfer actions. |
| 7/09/01 | Janet Baer | 2.80 | ......; review draft opposition re fraudulent transfer claim (.3); review memo on fraudulent conveyances (.2);........ |
| 7/10/01 | David M Bernick, P.C. | 4.50 | Telephone conference with client re fraudulent conveyance (1.0); conference with D. Siegel re status of litigation and preparation efforts (.5); revisions to pending brief (1.0); internal K&E conference re fraudulent conveyance brief (1.0); conference with Lynski re document collection for fraudulent conveyance litigation (1.0). |
| 7/10/01 | Scott A McMillin | 3.80 | Review and revise opposition to motion to prosecute fraudulent transfer cases (3.0); conferences with D. Siegel and M. Wolinsky re same (.8). |
| 7/11/01 | Scott A McMillin | 3.00 | Review and revise opposition to motion to prosecute fraudulent transfer claims (2.0); attend to matters re fraudulent transfer claims (1.0). |
| 7/11/01 | Janet Baer | 1.10 | ........; attend to matters and review final draft on fraudulent conveyance matters (.3); confer with M. Yetnikoff re fraudulent conveyance matters (.3). |
| 7/12/01 | Scott A McMillin | 0.70 | ..........; review fraudulent transfer pleading (.4). |

| 7/12/01 | Janet Baer | 2.50 | .....; review Sealed Air's response on fraudulent conveyance matter (.2);........... |
| 7/17/01 | James W Kapp | 1.00 | Review objections to fraudulent transfer motion. |
| 7/17/01 | Janet Baer | 0.50 | Review UCC objection on fraudulent conveyance matter. |
| 7/18/01 | Scott A McMillin | 1.30 | .......: review fraudulent transfer pleadings (.4); prepare for hearing on motion to prosecute fraudulent transfer motions and internal conferences re same (.5). |
| 7/19/01 | Michelle H Browdy | 4.80 | Attend to matters re fraudulent conveyance (2.0); review/analyze fact documents (2.8). |
| 7/19/01 | Scott A McMillin | 4.20 | Attend to matters re fraudulent transfer claims (1.2); ...... |
| 7/23/01 | Scott A McMillin | 0.50 | Attend to matters re fraudulent transfer claims. |
| 7/24/01 | Michelle H Browdy | 2.60 | Work on outline re fraudulent conveyance allegations. |
| 7/25/01 | Michelle H Browdy | 4.60 | Draft outline re fraudulent conveyance. |
| 7/26/01 | Michelle H Browdy | 5.20 | Work on case outlines. |
| 7/26/01 | James W Kapp | 1.20 | ......; review Sealed Air response to fraudulent conveyance motion and attend to issues re same (.5). |
| 7/26/01 | Scott A McMillin | 1.80 | Attend to conference re fraudulent transfer claims (.4); review outlines and documents underlying fraudulent transfer claims (1.0); review fraudulent transfer pleadings (.4). |
| 7/30/01 | Michelle H Browdy | 5.80 | Work on outline of facts re: fraudulent conveyance claims. |
| 7/30/01 | Scott A McMillin | 10.00 | Review documents relating to Sealed Air transaction and draft outline re fraudulent transfer issues. |
| 7/31/01 | Scott A McMillin | 8.00 | .....; review Sealed Air documents and prepare memorandum re Sealed Air transaction (6.2). |

*Total: 85.6/$35,092*

## A-3: Venue Briefs

| Date | Name | Hours | Description |
|---|---|---|---|
| 7/02/01 | Mark E Grummer | 0.50 | Draft venue brief and declaration. |
| 7/02/01 | Reed S Oslan | 2.00 | Review motions to transfer. |
| 7/03/01 | Janet Baer | 1.60 | ...; attend to matters re venue brief (.5);........ |
| 7/04/01 | Mark E Grummer | 2.70 | Revise venue brief and draft W. Corcoran affidavit to incorporate comments received. |
| 7/05/01 | Mark E Grummer | 7.80 | Revise venue transfer briefs and draft accompanying affidavit (4.5); research re Volpe Center involvement and revise brief to include same (3.3). |
| 7/06/01 | Mark E Grummer | 0.20 | Forward venue materials to W. Corcoran (.1); telephone conference with W. Corcoran re draft affidavit (.1). |
| 7/06/01 | Reed S Oslan | 1.80 | Review articles re Libby issues and consider status. |
| 7/06/01 | Janet Baer | 1.60 | .....; review memo re transfer of venue (.5). |
| 7/06/01 | Jacqueline H Sloan | 2.90 | Attend to matters re motion to transfer venue, 28 USC 1334(c)(2) (.4); analysis of memorandum in support of motion to transfer venue (.7)....... |
| 7/08/01 | Mark E Grummer | 5.10 | Revise venue transfer brief in EPA cost recovery case and continue drafting venue transfer brief in EPA access case. |
| 7/09/01 | Mark E Grummer | 5.60 | Draft venue transfer brief and email same to team for initial review (4.9);.......... |
| 7/09/01 | David A Codevilla | 1.80 | Review draft transfer of venue briefs and insert citations to record and affidavits. |
| 7/09/01 | Janet Baer | 2.80 | .....; review draft venue brief on Libby penalties case (.3). |
| 7/10/01 | Mark E Grummer | 6.10 | Draft, edit and revise briefs and affidavits for venue transfer motions. |
| 7/10/01 | James W Kapp | 0.20 | Review and revise removal order and attend to issues re same. |

| 7/11/01 | Mark E Grummer | 2.60 | Draft and revise venue transfer brief. |
|---|---|---|---|
| 7/12/01 | Mark E Grummer | 3.50 | Check on status of draft venue transfer briefs and schedule for filing same (.2); revise briefs including exchange of emails and telephone calls with various participants re comments on draft briefs (3.3). |
| 7/12/01 | Janet Baer | 2.50 | Review draft venue brief (.5);........ |
| 7/13/01 | Mark E Grummer | 6.30 | Revise venue transfer briefs and affidavits (6.2); telephone conference with W. Corcoran re draft affidavit (.1). |
| 7/15/01 | Mark E Grummer | 2.60 | Review and edit venue transfer briefs. |
| 7/16/01 | Mark E Grummer | 8.10 | Continue editing and revisions of venue transfer briefs and affidavits, obtaining and incorporating comments re same, and transmitting same to local counsel for filing. |
| 7/17/01 | Mark E Grummer | 3.50 | Edit venue transfer briefs and affidavits (3.2); conference call attend to matters re filing plans for briefs (.3). |
| 7/17/01 | David A Codevilla | 0.50 | Telephone conference with Colorado and Montana counsel re transfer of venue motions. |
| 7/17/01 | Bennett L Spiegel | 0.30 | Review Judge Bluebond ruling on motion to transfer venue and motion to abstain and remand. |
| 7/17/01 | Bennett L Spiegel | 0.10 | Telephone conference with R. Lewis re report on Judge Bluebond ruling. |
| 7/18/01 | James W Kapp | 1.00 | Review decision to remove litigation to state court. |
| 7/18/01 | Bennett L Spiegel | 0.20 | Attend to matters re review of Judge Bluebond ruling. |
| 7/19/01 | Mark E Grummer | 0.20 | Attend to matters re filing venue transfer briefs. |
| 7/19/01 | Scott A McMillin | 4.20 | ...............; draft reply brief in support of motion to transfer Abner case. (3.0). |
| 7/19/01 | Janet Baer | 0.40 | Attend to matters re Abner case and Libby matters. |

| | | | |
|---|---|---|---|
| 7/20/01 | Mark E Grummer | 0.30 | Telephone conferences with local counsel re status of filing of venue transfer briefs. |
| 7/20/01 | Scott A McMillin | 4.20 | Draft and revise reply brief in support of motion to transfer Abner case. |
| 7/20/01 | Janet Baer | 0.50 | Review draft reply brief re venue of Abner case and attend to matters re same. |
| 7/21/01 | David M Bernick, P.C. | 2.50 | Grace case revisions to motion transfer Abner (1.0); ........ |
| 7/23/01 | David M Bernick, P.C. | 1.80 | .....; conference call with Bayer re Abner transfer motion (.25);...... |
| 7/23/01 | Janet Baer | 2.80 | Review and further revise Abner venue reply brief (.5); various conferences re same (1.0); follow up correspondence re Rossignol, Petro Resources, Smolker (CNA) and Ellison cases (1.0); confer withJ. Young (CNA) re Smolker matters (.3). |
| 7/24/01 | Janet Baer | 0.70 | ........; respond to inquiries re Abner venue matters (.3); attend to matters with D. Seigel re status of Abner case and related issues (.2). |
| 7/25/01 | Bennett L Spiegel | 0.10 | Review Judge Bluebond orders denying Grace Motion to Transfer Venue and granting Smolker Motion to Abstain and Remand to State Court. |
| 7/30/01 | Bennett L Spiegel | 0.10 | Attend to matters re need to seek clarification from Judge Bluebond and status of G.Davison. |
| 7/19/01 | Shirley A Pope | 1.00 | Prepare Westlaw project re cases cited Debtors' Reply Brief in Support of Motion for Transfer of Venue to the District of Delaware. |
| 7/20/01 | Aaron D Birnbaum | 7.00 | Check citations to Debtors' Reply Brief in Support of Motion for Transfer of Venue to the District of Delaware (3.0); create memo re corrections made to Debtors' Reply Brief (1.0);........... |
| 8/02/01 | Mark E Grummer | 0.90 | Attend to issues re briefing schedule for Libby venue briefs and plans for same. |
| 8/03/01 | Bennett L Spiegel | 0.20 | Telephone conference with R. Lewis re declaration in support of request by Judge Bluebond to amend or clarify prior ruling. |

| 8/03/01 | Bennett L Spiegel | 0.80 | Follow up telephone conference with R. Lewis re declaration (.2); review fax from R. Lewis re Lewis declaration (.1); including G. Smolker letter (.1); prepare revisions to R. Lewis draft declaration (.2); begin preparation of application to amend Bluebond order and findings (.2). |
|---------|-------------------|------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 8/06/01 | Janet Baer | 0.40 | Attend to matters re Libby venue motion and related Libby issues. |
| 8/07/01 | Bennett L Spiegel | 3.20 | Prepare draft of ex parte application to amend Judge Bluebond's remand order and related memorandum of decision (.7); prepare further revisions to R. Lewis declaration (.5); attend to matters re same (.2); attend to matters re and revise draft ex parte application re amending remand order and memorandum of decision re same (1.8). |
| 8/08/01 | Mark E Grummer | 0.50 | Review DOJ filing re Libby and e-mail team re same. |
| 8/08/01 | Bennett L Spiegel | 0.40 | Attend to matters re draft ex parte application for amendment of remand order and memorandum (.1); .... |
| 8/09/01 | Bennett L Spiegel | 1.00 | .......; telephone conference with R. Lewis and J. Baer re proposed revisions to Shelnitz declaration and related papers (.3); review revised M. Shelnitz declaration (.1); prepare revised motion to amend remand order and memorandum (.4). |
| 8/10/01 | Mark E Grummer | 0.80 | Review letter re venue issue and K&E office conference re same. |
| 8/10/01 | Janet Baer | 1.30 | Conference with client re several Libby issues (.5); attend to matters re same, relating to EPA's letter on venue (.8). |
| 8/10/01 | Bennett L Spiegel | 1.30 | Prepare further revisions to revised draft motion to amend remand and memorandum of decision (1.0); attend to matters re R. Lewis declaration (.3). |
| 8/11/01 | Mark E Grummer | 2.30 | Review DOJ letter requesting withdrawal of venue motion and outline arguments to be made in reply brief on Libby venue motions. |

| 8/12/01 | Bennett L Spiegel | 0.30 | Prepare further revisions to motion to amend remand order and memorandum of decision and attend to matters re same. |
| 8/13/01 | Mark E Grummer | 3.70 | Continue to evaluate and outline Libby venue reply brief arguments and response to arguments raised in DOJ letter and prepare detailed e-mail to team re same (2.1); prepare for and participate in telephone conference re responding to DOJ letter request to withdraw venue motion (.7);...... |
| 8/13/01 | David A Codevilla | 0.50 | Review correspondence re Libby venue briefs and DOJ letter (.2); participate in conference call re response to DOJ (.3). |
| 8/14/01 | Mark E Grummer | 0.50 | Attend to matters re prospects of Libby venue transfer motion (.4); attend to matters re Libby EPA data issues (.1). |
| 8/14/01 | James W Kapp | 0.40 | Review correspondence re transfer of venue and attend to issues re same. |
| 8/15/01 | Mark E Grummer | 1.50 | Telephone conference with J. McCarthy re Libby venue issues and prospects for further efforts to change venue (.7); prepare detailed email to team re same (.8). |
| 8/15/01 | David A Codevilla | 0.50 | Review DOJ reply brief re Libby venue issues. |
| 8/17/01 | David M Bernick, P.C. | 1.00 | .....; review of brief re transfer of the EPA action (.5). |
| 8/17/01 | Mark E Grummer | 1.00 | Begin reviewing United States' briefs on Libby venue transfer motion. |
| 8/17/01 | Scott A McMillin | 8.30 | ............; conferences with M. Browdy and client re document preservation issues and fraudulent transfer claims (.7);.............. |
| 8/17/01 | David A Codevilla | 5.80 | Research on legal issues raised by DOJ response to Libby venue brief. |
| 8/19/01 | Mark E Grummer | 6.40 | Review U.S. Libby venue briefs and e-mails and voice messages re same and begin outlining reply arguments. |

| 8/20/01 | Mark E Grummer | 2.30 | Prepare detailed email to team re U.S. briefs on Libby venue transfer motion (.8); research case law for reply and outline reply arguments (1.5). |
| 8/20/01 | David A Codevilla | 3.30 | Further case law research and research on legislative history of 1984 bankruptcy code amendments, relating to reply to DOJ Libby response brief. |
| 8/21/01 | David M Bernick, P.C. | 4.30 | ...........; conference with J. Baer re Libby issues and review of related e-mails (.5). |
| 8/21/01 | Mark E Grummer | 6.50 | Continue research and outlining of reply brief for Libby venue transfer motion including detailed email to team re approach (2.7); telephone conferences with J. McCarthy and team re denial of motion (.5); telephone conferences re Libby penalties settlement negotiations and terms of possible settlement (3.3). |
| 8/21/01 | David A Codevilla | 2.50 | Continue research on Libby venue reply brief issues. |
| 8/21/01 | Janet Baer | 4.50 | Review Libby response brief on venue transfer motion (1.0); prepare memo re same (1.0);......... |
| 8/21/01 | Bennett L Spiegel | 0.20 | Conference re follow up with Judge Bluebond re motion to amend (.1); filing of amended Shelnitz declaration (.1). |
| 8/22/01 | Mark E Grummer | 2.60 | ........; emails re possible further efforts to move Libby cases to Delaware (.5). |
| 8/22/01 | David A Codevilla | 2.00 | Research on Libby venue reply brief issues (subordination of government penalty claims). |
| 8/29/01 | Janet Baer | 1.00 | ..........; review J. Blubonds amended remand order in Smolker (.3);........... |
| 8/29/01 | Bennett L Spiegel | 0.40 | Review Judge Bluebond amended order on motion and attend to matters re same (.3); conference with D. Wymore re same (.1). |

*Total: 137.05/$50,867.25*

*A-4: Class Action Issues*

| 7/02/01 | Kellye L Fabian | 8.00 | Draft class action brief |
| 7/05/01 | Kellye L Fabian | 5.30 | Draft class action brief |

| 7/06/01 | Andrew R. Running | 0.90 | Review legal research memo re class action issues. |
| 7/06/01 | Kellye L Fabian | 1.50 | Draft and revise class action brief |
| 7/09/01 | Andrew R. Running | 2.80 | Review key class action proof of claim cases cited in research memo. |
| 7/12/01 | David M.. Bernick, P.C. | 1.50 | Review of MDL class brief (1.0); compiling project list. (.5). |
| 7/13/01 | Kellye L Fabian | 1.50 | Attend to matters re class action brief |
| 7/16/01 | Kellye L Fabian | 4.00 | Research and revise class action brief |
| 7/17/01 | Kellye L Fabian | 6.00 | Research and revise class action brief |
| 7/18/01 | Kellye L Fabian | 7.50 | Revise class action brief |
| 7/19/01 | Kellye L Fabian | 8.00 | Draft class action brief |
| 7/20/01 | Kellye L Fabian | 5.00 | Draft class action brief |
| 7/23/01 | Kellye L Fabian | 3.00 | Research class certification issues. |
| 7/25/01 | Kellye L Fabian | 4.00 | Research class certification issues (2.5); review multidistrict litigation briefs (2.0). |
| 7/26/01 | David M.. Bernick, P.C. | 1.50 | Review class certification case law. |
| 7/26/01 | David M.. Bernick, P.C. | 4.50 | Work on issues frame work. |
| 7/26/01 | Kellye L Fabian | 1.50 | Research class certification issues. |
| 7/27/01 | David M.. Bernick, P.C. | 1.50 | Further development of litigation issues structure. |
| 7/27/01 | Kellye L Fabian | 4.00 | Review multidistrict litigation documents; research class certification issues. |
| 7/30/01 | David M.. Bernick, P.C. | 1.50 | Further work on litigation issues frame work. |
| 7/30/01 | Christopher B Sullivan | 3.00 | ........; review of Barbanti trial exhibits (1.0). |
| 7/30/01 | Kellye L Fabian | 3.00 | Research class certification issues (2.2); review Barbanti briefs (.8). |
| 7/31/01 | David M.. Bernick, P.C. | 6.30 | Finalize litigation outline (4.0); reviewing outline re State substantive law standards and conference with Josepher re causation (2.0); further review of MDL class brief (1.5);.... |

| 8/01/01 | Kellye L Fabian | 2.00 | Research class certification issues. |
|---------|-----------------|------|--------------------------------------|
| 8/10/01 | David M Bernick, P.C. | 3.50 | .........; conference with Fabian re class issues (1.5). |
| 8/10/01 | Kellye L Fabian | 2.00 | Research class action issues and attend to matters re same. |
| 8/14/01 | David M Bernick, P.C. | 4.30 | .............; review of class certification cases (1.0). |
| 8/14/01 | Christopher B Sullivan | 7.70 | Follow up research re bankruptcy class actions at request of W. Sparks (.2);........... |
| 8/14/01 | Kellye L Fabian | 1.00 | Research class certification issues. |
| 8/15/01 | Christopher B Sullivan | 6.50 | Review and update legal research memo (2.0);...... |
| 8/20/01 | David M Bernick, P.C. | 3.00 | .......; outline for class certification argument (1.5). |
| 8/21/01 | David M Bernick, P.C. | 4.30 | Further work on class certification (.3); outline and conference with Fabian re same (2.0); review of class certification cases (1.5);..... |
| 8/21/01 | Sarah R Marmor | 2.50 | Attend to class action arguments. |
| 8/23/01 | Kellye L Fabian | 7.00 | Research class action issues. |
| 8/23/01 | Kellye L Fabian | 3.00 | Research class certification issues. |
| 8/24/01 | Kellye L Fabian | 6.00 | Research class certification issues. |
| 8/28/01 | Kellye L Fabian | 4.00 | Draft class action outline. |
| 8/29/01 | Kellye L Fabian | 6.00 | Draft class action outline. |
| 8/30/01 | Kellye L Fabian | 4.00 | Draft outline of class action argument. |

*Total: 131.3/$42,274.00*

*A-5: Document Depository*

| 7/06/01 | Christopher B Sullivan | 4.50 | Draft debtors response to motion to compel establishment of document depository (2.0); legal research in support of same (2.5). |
| 7/09/01 | David M Bernick, P.C. | 4.50 | ....; revisions to depository brief (1.5);..... |
| 7/09/01 | Christopher B Sullivan | 3.50 | Draft response to motion to compel establishment of document depository (2.0); teleconference with W. Sparks re same (1.0); teleconference with representative of unsecured committee re same (.5). |
| 7/09/01 | Kellye L Fabian | 2.00 | Research production of documents by outside counsel. |
| 7/09/01 | Kellye L Fabian | 0.50 | Review materials in College of Knowledge binder. |
| 7/10/01 | Christopher B Sullivan | 5.90 | Draft/edit response to motion for establishment of document depository (2.4); teleconference with D. Siegel re same (.5); teleconference with W. Sparks re same (1.0); review corporate conduct witness testimony (2.0). |
| 7/10/01 | Kellye L Fabian | 2.00 | Research production of documents by outside counsel. |
| 7/10/01 | Kellye L Fabian | 4.00 | Review documents in College of Knowledge binder. |
| 7/11/01 | Christopher B Sullivan | 7.50 | Edit debtor's response to motion for establishment of document depository (1.5); attend history meeting with client in Washington, D.C. (4.0); phone call with W. Sparks and M. Murphy re debtor's response to motion for document depository (1.0); meet with D. Roarke re statistical analysis (.5); review transcript of B. Murphy deposition re document maintenance (.5). |
| 7/11/01 | Kellye L Fabian | 1.00 | Review College of Knowledge documents. |
| 7/12/01 | Christopher B Sullivan | 3.50 | Incorporate client edits into brief in opposition to creation of documents depository (1.5); legal research in support (1.0); prepare brief for filing (1.0). |

| 7/12/01 | Kellye L Fabian | 2.00 | Review documents in College of Knowledge binder. |
| 7/26/01 | James W Kapp | 1.20 | ......; address issues re document retention and depository motion (.3);....... |
| 7/27/01 | Christopher B Sullivan | 2.50 | Teleconference with W. Sparks re background meeting to history of discovery dispute and ACM document repository (.5); review of reported Grace ACM litigation (2.0). |
| 7/30/01 | Christopher B Sullivan | 3.00 | Attend to matters re document files (.5);........ |
| 7/03/01 | James W Kapp | 1.80 | ....; review Property Damage Committee's request for a central repository and attend to issues re same (1.0);........ |
| 7/13/01 | James W Kapp | 2.10 | .....; review objection to Property Damage Committee's depository motion (.4);....... |
| 7/16/01 | Christopher B Sullivan | 0.40 | Review personal injury committee brief in support of creation of document depository. |

*Total: 43/$14,662.00*

*CMO Brief:*

| 8/01/01 | P. Renee Wicklund | 0.80 | Outline CMO brief re procedure on litigating certain claims. |
| 9/04/01 | Sarah R. Marmor | 0.70 | Attend to matters re CMO briefing. |
| 9/04/01 | Kellye L Fabian | 6.00 | Research for and draft class action outline for CMO reply brief. |
| 9/04/01 | Janet Baer | 4.50 | .......; several conferences re coordination of case management objections and reply (.8);....... |
| 9/05/01 | Kellye L Fabian | 6.00 | Research cases following American Reserve and draft class action argument for CMO reply brief. |
| 9/05/01 | Janet Baer | 8.20 | Attend to matters re CMO reply brief and related issues (.5);...... |
| 09/06/01 | Andrew R Running | 2.70 | Begin drafting outline of CMO reply brief re same. |
| 9/06/01 | Kellye L Fabian | 4.50 | Research and draft class certification argument for CMO reply brief. |
| 9/06/01 | P. Renee Wicklund | 6.20 | Outline attic fill litigation plan for case management order (3.4); research re procedural issues for same (2.8). |
| 9/06/01 | Janet Baer | 5.90 | .....; internal conferences re Case Management |

|  |  |  | Reply and related matters (.5);..... |
|---|---|---|---|
| 9/09/01 | Kellye L Fabian | 2.00 | Research and draft class certification argument for CMO reply brief. |
| 9/09/01 | P. Renee Wicklund | 5.00 | Outline reply brief in support of debtors' motion for entry of a case management order. |
| 9/09/01 | Janet Baer | 2.20 | Review rest of property damage objection to case management order and exhibits thereto (1.5);.... |
| 9/10/01 | Sarah R. Marmor | 0.50 | Attend to matters re CMO outline. |
| 9/10/01 | Kellye L Fabian | 9.00 | Draft class action argument outline for CMO reply brief. |
| 9/10/01 | P. Renee Wicklund | 2.00 | Draft outline of reply brief in support of Grace's proposed CMO. |
| 9/10/01 | Janet Baer | 3.50 | Conference with K. Kinsella via telephone re CMO response (.5);................. |
| 9/12/01 | Kellye L Fabian | 5.50 | Draft class certification outline for CMO reply brief (3.0);....... |
| 9/12/01 | P. Renee Wicklund | 3.30 | Outline reply brief in support of debtors' motion for entry of a case management order. |
| 9/12/01 | Janet Baer | 5.00 | .....; attend to matters re CMO (.5);........ |
| 9/13/01 | Kellye L Fabian | 6.00 | ........; draft class certification argument outline (3.0) |
| 9/13/01 | P. Renee Wicklund | 3.50 | Outline reply brief in support of proposed case management order. |
| 09/14/01 | Andrew R Running | 6.90 | ....; continue review and analysis of claims data in preparation for drafting case management order reply brief (4.6);..... |
| 9/14/01 | Kellye L Fabian | 6.00 | Draft and revise class action argument for CMO reply brief. |
| 9/17/01 | Sarah R. Marmor | 0.50 | Revise CMO outline. |
| 09/17/01 | Andrew R Running | 4.10 | Draft outline of certain sections of the case management order reply brief (3.6); review sections of the CMO outline (.5). |
| 9/17/01 | P. Renee Wicklund | 0.50 | Revise outline for CMO brief response. |
| 9/17/01 | Janet Baer | 5.60 | .....; review draft outline of CMO Reply (.5);........ |
| 9/18/01 | Sarah R. Marmor | 0.50 | Attend to matters re CMO brief and possible revisions to outline. |
| 09/18/01 | Andrew R Running | 0.40 | Review draft outline of case management order reply brief. |
| 9/18/01 | P. Renee Wicklund | 1.70 | Draft outline re issues for common adjudication to be included in reply in support of CMO entry. |
| 9/18/01 | Deanna D | 4.50 | Analyze CMO reply issues re estimation and |

|  |  |  |  |
|---|---|---|---|
|  | Boll |  | manner of notice. |
| 9/18/01 | Janet Baer | 4.40 | Review revised CMO Reply outline in preparation for meeting re same (.3); revise task chart for CMO Reply (.5); conference with K. Kinsella and W. Sparks via telephone re CMO/Zonolite issues (2.0);. |
| 9/19/01 | Sarah R. Marmor | 1.20 | Revise draft outline re CMO matter and attend to matters re same. |
| 9/19/01 | Kellye L Fabian | 1.30 | Review and revise class action argument for reply brief. |
| 9/19/01 | Janet Baer | 4.30 | Further review of case law and revised CMO Reply outline and attend to matters re same (1.3);.... |
| 9/20/01 | David M Bernick, P.C. | 0.50 | Attend to matters re class outline. |
| 09/20/01 | Andrew R Running | 4.00 | .....; continue review of sample claim database in preparation for drafting case management order reply brief (2.6). |
| 9/20/01 | Kellye L Fabian | 0.30 | Attend to matters re class action argument for reply brief. |
| 9/20/01 | Kellye L Fabian | 2.00 | Draft and revise class action section of brief. |
| 9/20/01 | Janet Baer | 7.10 | .....; prepare memo on revisions to CMO exhibits (2.0); .....; prepare revised outline of reply and notice issues (2.5);.... |
| 9/21/01 | David M Bernick, P.C. | 1.00 | Revisions to outline on reply brief, |
| 9/21/01 | Kellye L Fabian | 2.00 | Draft and revise class action section of reply brief. |
| 9/24/01 | Kellye L Fabian | 3.00 | Draft and revise class action section of CMO reply brief. |
| 09/24/01 | Andrew R Running | 3.10 | Analyze sample claims reports in preparation for drafting of case management order reply brief. |
| 9/25/01 | Kellye L Fabian | 7.00 | Draft and revise class action section of CMO reply brief. |
| 9/25/01 | Deanna D Boll | 4.50 | Draft estimation argument for CMO reply and review precedent orders re same. |
| 9/26/01 | Timothy S Hardy | 0.60 | .....; attend to matters re CMO response brief (.4). |
| 9/26/01 | Sarah R. Marmor | 1.00 | Revise and circulate CMO draft. |
| 09/26/01 | Andrew R Running | 0.30 | Review revised outline of case management order reply brief. |
| 9/26/01 | Kellye L Fabian | 7.00 | Draft class action section of case management order reply brief. |
| 9/26/01 | Janet Baer | 4.80 | .....; prepare revised outline on Notice and Claims |

| | | | |
|---|---|---|---|
| | | | for reply on CMO and review documents re same (3.3); ......; review revised CMO Reply outline (.3). |
| 9/27/01 | David M Bernick, P.C. | 1.00 | Revisions to class action outline for CMO reply brief. |
| 9/27/01 | Kellye L Fabian | 7.00 | Draft class action section of case management order reply brief. |
| 09/28/01 | Andrew R Running | 5.30 | .....; continue analysis of sample claims in preparation for drafting of case management order reply brief (2.6); draft portions of case management order reply brief (2.3). |
| 9/28/01 | Janet Baer | 5.40 | .....; review various materials for Reply Brief (1.0); conference with D. Bernick re revising Bar Date Notices and Reply CMO (1.0); prepare portions of Reply Brief re Notice Program and Proofs of Claims (3.0). |
| 9/29/01 | David M Bernick, P.C. | 0.50 | Revisions to notice sections of CMO reply brief. |
| 9/29/01 | Kellye L Fabian | 1.00 | Edit/revise class action section of CMO reply brief. |
| 9/30/01 | Kellye L Fabian | 1.00 | Edit/revise class action section of CMO reply brief. |
| 10/11/01 | Shirley A Pope | 4.00 | ...review correspondence (.2); review reply CMO brief (.5); revise indices to Grace main file (1.0). |
| 10/17/01 | Shirley A Pope | 5.00 | ...review CMO reply draft(.5) |
| 10/25/01 | Shirley A Pope | 3.50 | Review correspondence and file (1.0)...review draft of CMO reply brief (1.0). |
| 10/26/01 | Shirley A Pope | 8.50 | Cite check CMO reply brief (2.0); attend to matters re same re cite checking brief (.5); shepardize cases cited in brief (4.0); organize cases cited in CMO reply brief (2.0). |
| 10/26/01 | Brigitte F Windley | 1.00 | Westlaw research and download of caselaw for attorney review (.3)... |
| 10/26/01 | Benjamin J Alke | 9.00 | Organize client materials (3.8); prepare reports re emails (1.5); organize list of pleadings filed as replies in opposition to CMO for attorney review (1.1); prepare copy of pleading for client review (.6); cite check CMO reply brief (2.0). |

| | | | |
|---|---|---|---|
| 10/27/01 | Shirley A Pope | 11.50 | Cite check CMO reply brief. |
| 10/27/01 | Benjamin J Alke | 11.30 | Cite check CMO reply brief. |
| 10/28/01 | Shirley A Pope | 8.00 | Cite check sections III, IV and V of CMO Reply brief. |
| 10/28/01 | Benjamin J Alke | 8.00 | Cite check CMO reply brief. |
| 10/29/01 | Shirley A Pope | 8.50 | Cite check revised parts I and II of CMO brief (7.0); check revisions to draft (1.50). |
| 10/29/01 | Benjamin J Alke | 8.50 | Cite check CMO reply brief (6.5); prepare reports re emails from J. Hughes (1.4); create list of exhibits re CMO reply brief (.6). |
| 10/31/01 | Shirley A Pope | 13.50 | Cite sections III, IV, V, of revised draft of CMO reply brief. |
| 10/31/01 | Benjamin J Alke | 13.00 | Cite check revised draft of CMO reply brief.. |
| 10/01/01 | Sarah R Marmor | 3.00 | Attend to matters re CMO reply brief outline (1.0); revise CMO reply outline (2.0). |
| 10/01/01 | Kelly L. Fabian | 3.50 | Revise sections of CMO reply brief re American license precedent and certification of nationwide class. |
| 10/01/01 | P Renee Wicklund | 6.30 | Research and draft CMO reply brief re common issue adjudication for Zonolite claims. |
| 10/01/01 | Janet Baer | 6.30 | Revise draft portion of CMO reply brief (1.0)... conference with D. Cameron re CMO reply (.3)... |
| 10/02/01 | David M Bernick, P.C. | 1.50 | Revise CMO reply brief outline. |
| 10/02/01 | Andrew R Running | 3.20 | Draft portions of CMO reply brief. |
| 10/02/01 | Janet Baer | 5.40 | Revise and supplement draft CMO reply (1.0) ... review draft exhibits to CMO reply brief and organize same (1.0) ... revise notice to attorneys and certification (.3). |

| | | | |
|---|---|---|---|
| 10/03/01 | Theodore L Freedman | 4.50 | Draft sections involving 524(g) and estimation for CMO reply brief. |
| 10/03/01 | Andrew R Running | 3.40 | Draft portions of CMO reply brief. |
| 10/03/01 | P Renee Wicklund | 7.70 | Draft portion of CMO reply brief re common issues and personal injury litigation protocol. |
| 10/03/01 | Deanna D Boll | 3.00 | Draft estimation related arguments for CMO reply brief. |
| 10/03/01 | Janet Baer | 5.30 | Revise CMO reply brief and prepare correspondence re same (2.0) ... review and revise alternative draft short form notices (1.0) ... review and revise documents for actual notice issues (.5); review various draft exhibits for CMO reply brief and related documents (.5)... |
| 10/04/01 | Theodore L Freedman | 5.00 | Finalize draft on estimation and 524(g) issues for CMO reply brief. |
| 10/04/01 | Sarah R Marmor | 1.00 | Review bankruptcy law section of CMO brief (.5); attend to matters re same (.5). |
| 10/04/01 | Andrew R Running | 5.60 | Draft portions of CMO reply brief (5.2); telephone conversations with D. Rourke re same (.4). |
| 10/04/01 | P Renee Wicklund | 4.50 | Draft portion of CMO reply brief (3.0); draft portion of CMO reply brief re personal injury protocol (1.5). |
| 10/04/01 | Janet Baer | 2.40 | Review and revise draft CMO order and definitions for CMO reply brief (.7); revise various exhibits to CMO reply brief and prepare memo re same (1.2); review draft section of CMO reply brief on estimation and outline for same (.5). |
| 10/05/01 | Theodore L Freedman | 3.50 | Edit CMO reply brief draft (2.8); conference calls on CMO reply brief draft (.7). |
| 10/05/01 | Sarah R Marmor | 3.50 | Review draft sections of CMO reply (3.0); attend to matters re same (.5). |
| 10/05/01 | Andrew R Running | 8.30 | Draft portions of CMO reply brief (6.5); telephone conversations with D. Rourke re same (.6); review current draft of CMO reply brief (1.2). |

| 10/05/01 | Deanna D Boll | 1.50 | Edit insert for CMO reply brief. |
| 10/05/01 | Janet Baer | 2.10 | Attend to matters re various sections of the CMO reply brief (.5) ...  revise exhibit chart and prepare transmittal re same (.3). |
| 10/06/01 | Sarah R Marmor | 3.00 | Review and revise draft CMO reply brief sections. |
| 10/06/01 | Andrew R Running | 1.20 | Draft portions of CMO reply brief. |
| 10/06/01 | Janet Baer | 0.50 | Revise order on CMO to reflect changes in actual notice procedure. |
| 10/08/01 | David M Bernick, P.C. | 0.80 | Work on CMO reply brief outline. |
| 10/08/01 | Theodore L Freedman | 3.50 | Edit CMO reply brief draft (3.0); attend to matters re same (.5). |
| 10/08/01 | Sarah R Marmor | 2.50 | Review and annotate draft sections of CMO reply brief (3.0); attend to matters re same (.5). |
| 10/08/01 | Andrew R Running | 7.70 | Telephone conference with W. Sparks and J. Hughes re draft CMO reply brief (.5); draft portions of CMO reply brief (7.2). |
| 10/08/01 | Janet Baer | 3.20 | Attend to matters re CMO reply brief (.5); review various revised exhibits re Reply (.5); review published and unpublished cases and update charts re same for authority for Reply (2.2). |
| 10/09/01 | Deanna D Boll | 4.50 | Review and revise draft CMO reply brief. |
| 10/09/01 | Janet Baer | 4.90 | Review Medical Monitoring and Zonolite objections re coverage in CMO reply brief (.5); review cases re notice and bar date issues for CMO reply brief (3.8); review property damage class action documents (.3)... |
| 10/10/01 | Theodore L Freedman | 1.20 | Revise draft CMO reply brief. |
| 10/10/01 | Janet Baer | 2.00 | Review integrated draft of CMO reply brief. |

| 10/11/01 | Janet Baer | 4.00 | Revise CMO reply brief draft to reflect additional cases and unpublished opinions and supplement same (3.5)... |
| 10/12/01 | Janet Baer | 4.00 | Revise and supplement draft of CMO reply brief. |
| 10/14/01 | David M Bernick, P.C. | 2.00 | Work on CMO reply brief. |
| 10/15/01 | David M Bernick, P.C. | 0.80 | Prepare for and attend meeting re CMO reply brief. |
| 10/15/01 | Mark E Grummer | 0.30 | Prepare for and participate in internal conference call re CMO brief. |
| 10/15/01 | Sarah R Marmor | 1.50 | Prepare for internal conference re CMO reply. |
| 10/15/01 | Shirley A Pope | 2.00 | Prepare for and attend team conference re CMO brief. |
| 10/15/01 | Andrew R Running | 2.80 | Review additional data re claims analysis provided by D. Rourke (.8); draft CMO reply brief (2.0). |
| 10/15/01 | Andrew R Running | 1.90 | Participate in internal meeting re draft CMO reply brief. |
| 10/15/01 | Christopher B Sullivan | 2.00 | Prepare for and attend meeting re CMO reply brief. |
| 10/15/01 | Kellye L Fabian | 2.00 | Prepare for and attend team meeting re CMO reply brief. |
| 10/15/01 | P Renee Wicklund | 2.30 | Participate in W.R. Grace telephone conference re CMO reply brief. |
| 10/15/01 | Deanna D Boll | 0.80 | Prepare for and participate in teleconference re CMO strategies. |
| 10/15/01 | Janet Baer | 3.80 | Prepare for and attend meeting to discuss details of CMO reply brief (1.5)... confer with J. Hughes re product lists (.3); revise CMO reply brief (1.0). |
| 10/16/01 | Sarah R Marmor | 3.00 | Revise CMO reply brief. |
| 10/16/01 | Andrew R Running | 2.00 | Review personal injury claims data for CMO reply brief. |

| 10/16/01 | Kellye L Fabian | 7.00 | Draft sections of CMO reply brief re class certification. |
| 10/16/01 | Samuel A Schwartz | 1.30 | Telephone conferences with PwC re the claims management process (1.0); telephone conference with client re same (.3). |
| 10/16/01 | Janet Baer | 3.30 | Attend to matters re need for claims data base responsibilities (.9) ... review and further revise CMO Reply Brief (1.2). |
| 10/17/01 | Sarah R Marmor | 2.50 | Revise on Grace CMO reply brief. |
| 10/17/01 | Kellye L Fabian | 4.00 | Draft section of CMO reply brief re Rule 23 requirements. |
| 10/17/01 | P Renee Wicklund | 1.00 | Revise section of CMO reply brief pertaining to Cimino case. |
| 10/18/01 | Mark E Grummer | 0.10 | Attend to matters re status of CMO draft brief. |
| 10/18/01 | Timothy S Hardy | 0.80 | Review CMO reply brief draft. |
| 10/18/01 | Andrew R Running | 3.90 | Draft portions of CMO reply brief. |
| 10/18/01 | Kellye L Fabian | 3.00 | Draft section of CMO reply brief re class certification. |
| 10/19/01 | Theodore L Freedman | 4.50 | Edit CMO reply brief on estimation and 524(g) issues. |
| 10/19/01 | Andrew R Running | 3.50 | Draft portions of CMO reply brief (3.2); telephone conference with J. Hughes re same (.3). |
| 10/19/01 | Deanna D Boll | 3.50 | Review correspondence from Andersen Consulting and BMC re claims management (.2); edit estimation insert for CMO reply brief and review overall draft (3.3). |
| 10/19/01 | Janet Baer | 2.20 | Review and further revise draft CMO reply brief (.5); attend to matters re claims analysis experts (.2)... |
| 10/22/01 | Theodore L Freedman | 4.50 | Edit CMO reply brief on 524(g) issues. |

| 10/22/01 | Sarah R Marmor | 7.00 | Work on CMO reply brief. |
|---|---|---|---|
| 10/22/01 | Andrew R Running | 1.50 | Draft CMO reply brief. |
| 10/22/01 | Janet Baer | 0.30 | Confer with various parties and revise most recent coupon motion. |
| 10/23/01 | Theodore L Freedman | 3.00 | Edit CMO reply brief on 524(g) issues. |
| 10/23/01 | Sarah R Marmor | 6.50 | Revise CMO reply brief. |
| 10/24/01 | Theodore L Freedman | 3.00 | Edit CMO reply brief on 524(g) issues. |
| 10/24/01 | Sarah R Marmor | 9.50 | Revise CMO reply brief. |
| 10/24/01 | Andrew R Running | 3.00 | Edit and revise draft CMO reply brief. |
| 10/24/01 | Janet Baer | 2.30 | Prepare transmittal re revised exhibits (1.0); attend to matters re portions of the case management reply (.8); attend to matters re interviews with claims consultants (.5). |
| 10/25/01 | Theodore L Freedman | 6.00 | Edit CMO reply brief on 524(g) issues. |
| 10/25/01 | Sarah R Marmor | 8.00 | Draft and revise CMO reply. |
| 10/25/01 | Andrew R Running | 0.60 | Revise CMO reply brief. |
| 10/25/01 | Deanna D Boll | 5.00 | Edit estimation arguments for CMO reply (4.3); telephone conference with KPMG re claims management (.4); attend to matters re Andersen Consulting as potential claims management service (.3). |
| 10/25/01 | Janet Baer | 1.10 | ... revise CMO reply brief (.3). |
| 10/26/01 | David M Bernick, P.C. | 1.00 | Revise CMO reply brief. |

| 10/26/01 | Theodore L Freedman | 3.00 | Edit CMO reply brief on 524(g) issues. |
|----------|---------------------|------|----------------------------------------|
| 10/26/01 | Timothy S Hardy | 1.50 | Draft insert for CMO brief re EPA claims. |
| 10/26/01 | James W Kapp | 1.10 | Review response of Equity Committee re CMO issue (.3); review case law re discharge of claims (.8). |
| 10/26/01 | Sarah R Marmor | 4.00 | Draft and revise CMO reply brief. |
| 10/26/01 | Andrew R Running | 5.50 | Telephone conversations with D. Rourke re claims analysis issues (.5); revise and edit CMO reply brief (5.0). |
| 10/26/01 | P Renee Wicklund | 0.50 | Revise portions of CMO reply brief. |
| 10/26/01 | Deanna D Boll | 6.00 | Review revised exhibits to CMO reply (2.5); edit CMO reply brief (3.0); telephone conference with KPMG re claims management (.3); telephone conference with F. Zaremby re Andersen meeting (.2). |
| 10/26/01 | Janet Baer | 1.50 | Conference with R. Finke re comments on exhibits to CMO reply brief (.7); review notes and prepare memo re asbestos sales issues (.8). |
| 10/27/01 | David M Bernick, P.C. | 3.00 | Revise current draft of CMO brief. |
| 10/27/01 | Sarah R Marmor | 6.00 | Revise and edit CMO reply brief. |
| 10/27/01 | P Renee Wicklund | 9.00 | Revise and edit portions of CMO reply brief re claims appropriate for common resolution, precedent supporting proposed litigation protocol, Cimino case and other objections to proposed litigation protocol, and support in Federal Rules for proposed litigation procedure. |
| 10/28/01 | Sarah R Marmor | 6.70 | Draft and revise CMO reply brief. |
| 10/28/01 | Kellye L Fabian | 2.00 | Research creation of litigation committees for CMO reply brief. |

| 10/28/01 | P Renee Wicklund | 4.50 | Revise and edit portions of CMO reply brief re claims appropriate for common resolution, precedent supporting proposed litigation protocol, Cimino case and other objections to proposed litigation protocol, and support in Federal Rules for proposed litigation procedure. |
|---|---|---|---|
| 10/28/01 | Deanna D Boll | 7.00 | Edit and revise CMO reply brief re estimation arguments (6.5); review brief on transfer and removal issues in Fed. Mogul case and consider same issues in Grace case (.5). |
| 10/29/01 | Theodore L Freedman | 2.00 | Edit CMO reply brief on 524(g) issues. |
| 10/29/01 | Sarah R Marmor | 12.00 | Draft and revise CMO reply (8.0); attend to matters re same (2.0); conference with client re same (2.0). |
| 10/29/01 | Andrew R Running | 3.40 | Telephone conferences with D. Rourke re claims issues (.6); revise draft CMO reply brief (2.8). |
| 10/29/01 | Kellye L Fabian | 5.00 | Draft section of CMO reply brief re establishing the personal injury litigation committee. |
| 10/29/01 | Samuel A Schwartz | 1.20 | Analyze Delaware local bankruptcy rules re motion for leave to file CMO reply brief (.3); telephone conferences with local counsel re same (.2); draft motion for relief to file CMO reply brief (.7). |
| 10/29/01 | Janet Baer | 7.70 | Confer with various parties re finalizing CMO reply brief (1.0) ... review and revise full draft CMO reply brief (2.2); assemble final exhibits for reply brief and confer re same (2.0). |
| 10/30/01 | Theodore L Freedman | 3.50 | Edit CMO reply brief on 524(g) issues. |
| 10/30/01 | Timothy S Hardy | 0.20 | Review memorandum re CMO reply brief. |
| 10/30/01 | Sarah R Marmor | 7.50 | Revise CMO reply brief (6.5); conference with client and local counsel re filing (1.0). |
| 10/30/01 | Andrew R Running | 1.60 | Attend to matters re revisions to CMO reply brief (.5); review and revise draft appendix to brief re claims analysis (.8); telephone conversation with D. Rourke re same (.3). |

| 10/30/01 | P Renee Wicklund | 2.80 | Revise and edit CMO reply brief. |
|---|---|---|---|
| 10/30/01 | Samuel A Schwartz | 1.10 | Analyze Delaware local rules re motion to file CMO reply brief (.5); telephone conferences with local counsel re same (.3); revise motion for relief to file CMO reply brief (.3) |
| 10/30/01 | Deanna D Boll | 6.50 | Edit CMO estimation arguments in CMO reply brief (5.2); examine law re Fed. R. Evid. 408 (1.3). |
| 10/30/01 | Janet Baer | 2.30 | Review CMO reply brief revisions (1.0); attend to matters re final exhibits for CMO reply brief (.5)... |
| 10/31/01 | Theodore L Freedman | 3.00 | Edit CMO reply brief on 524(g) issues. |
| 10/31/01 | Sarah R Marmor | 10.00 | Revise CMO reply brief (8.0); conference with local counsel re same (2.0); review draft motion for leave to file reply (1.0) |
| 10/31/01 | Andrew R Running | 10.10 | Telephone conversations with J. Hughes re draft CMO reply brief (.6); review comments on CMO reply brief from R. Finke, W. Sparks and Hughes (.3); revise draft CMO reply brief (8.8); telephone conversations with D. Rourke re claims issues (.4) |
| 10/31/01 | P Renee Wicklund | 5.20 | Edit and revise CMO. |
| 10/31/01 | Deanna D Boll | 5.00 | ...finalize CMO reply brief and coordinate with legal assistants on organizing exhibits (3.0). |
| 10/31/01 | Janet Baer | 0.80 | Review Grace comments on CMO reply brief and attend to matters re same (.5); confer with K. Kinsella re status of CMO reply brief and notice plan (.3). |
| 11/29/01 | Benjamin J Alke ($70.00) | 5.80 | .... prepare copies of PD committee Sept. Reply brief and CMO Reply brief for attorney review (.8); organize client documents re Hi Temp Cement for attorney review (3.6). |
| 11/30/01 | Benjamin J Alke ($70.00) | 7.00 | Prepare copies of Informational Brief and CMO Reply brief for attorney review (.6)...prepare copy of PI Opposition to CMO and distribute (.6); organize client materials on Hi Temp Cement for attorney review (3.2). |

| 11/01/01 | Sarah R Marmor ($350.00) | 8.50 | Work on CMO reply brief (7.5); attend to matters re same (1.0). |
| 11/02/01 | David M Bernick, P.C. ($655.00) | 2.00 | Revise CMO reply brief. |
| 11/02/01 | Sarah R Marmor ($350.00) | 7.00 | Revise CMO reply brief. |
| 11/02/01 | Deanna D Boll ($360.00) | 1.00 | Attend to claims management issues (.1); telephone conference with S. Darr at KPMG re claims management issues (.1); review CMO reply brief and exhibits (.8). |
| 11/03/01 | David M Bernick, P.C. ($655.00) | 1.00 | Revise CMO reply brief. |
| 11/03/01 | Sarah R Marmor ($350.00) | 1.50 | Review and edit new sections of CMO reply brief. |
| 11/04/01 | David M Bernick, P.C. ($655.00) | 5.00 | Revise CMO reply brief. |
| 11/04/01 | Sarah R Marmor ($350.00) | 1.50 | Review and edit new sections of CMO brief. |
| 11/05/01 | David M Bernick, P.C. ($655.00) | 2.50 | Revise CMO reply brief. |
| 11/05/01 | Sarah R Marmor ($350.00) | 7.00 | Revise CMO reply brief (6.5); attend to matters re same (.5). |
| 11/05/01 | Andrew R Running ($470.00) | 1.70 | Review latest draft of CMO reply brief (.9); attend to matters re revisions to same (.8). |
| 11/05/01 | Kellye L Fabian ($230.00) | 1.50 | Proofread CMO reply brief (.6); revise and edit class action section of reply brief (.9). |
| 11/06/01 | David M Bernick, P.C. ($655.00) | 5.00 | Revise CMO reply brief. |
| 11/06/01 | Sarah R Marmor ($350.00) | 8.00 | Revise CMO reply brief (7.5); attend to matters re same (.5). |
| 11/06/01 | Christopher B Sullivan ($365.00) | 2.70 | Review/edit CMO reply brief (2.0); review/edit order (.7). |
| 11/07/01 | David M Bernick, P.C.  ($655.00) | 3.50 | Revise CMO reply brief. |

| 11/07/01 | Sarah R Marmor ($350.00) | 7.00 | Review comments from client re CMO reply (1.0); follow up on responses and edits re same (1.5); revise CMO reply brief (4.5). |
| 11/07/01 | Andrew R Running ($470.00) | 2.60 | Attend to matters re revisions to CMO reply brief (.5); revise CMO reply brief (1.7); telephone conferences with J. Hughes re his comments on the brief (.4). |
| 11/07/01 | Janet Baer ($510.00) | 3.00 | ...review final draft of CMO reply brief (2.0). |
| 11/08/01 | Andrew R Running ($470.00) | 4.50 | Attend to matters re CMO reply brief (.4); revise same (4.1). |
| 11/08/01 | Janet Baer ($510.00) | 4.00 | ...review and revise ... reply brief and confer with various parties re same (3.9). |
| 11/09/01 | David M Bernick, P.C. ($655.00) | 4.50 | Revise CMO reply brief. |
| 11/09/01 | Sarah R Marmor ($350.00) | 7.00 | Finalize and arrange filing of CMO reply brief. |
| 11/09/01 | Andrew R Running ($470.00) | 4.60 | Revise CMO reply brief (3.2); draft D. Rourke affidavit (.8); teleconferences with D. Rourke re revisions to his affidavit (.6). |
| 11/09/01 | Janet Baer ($510.00) | 2.50 | ...coordinate transmittal of CMO reply brief and exhibits to PD Committee (.5). |
| 11/13/01 | Benjamin J Alke ($70.00) | 3.90 | Update Concordance database re new pleadings (1.8); update Grace Case file re new Legal Research files and Scientific Articles cited in CMO reply brief (2.1). |
| 11/14/01 | Benjamin J Alke ($70.00) | 6.50 | ...edit Concordance database re new pleadings (2.2); prepare copies of CMO reply brief, Exhibit K, and Rourke Affidavit to be forwarded to counsel (2.1); update Grace Case file with new legal research files (1.8). |
| 11/27/01 | Benjamin J Alke ($70.00) | 2.00 | Create binder of printouts of law reviews cited in CMO reply brief (.8); update Concordance database re new pleadings (1.2). |

| | | | |
|---|---|---|---|
| 11/29/01 | Benjamin J Alke ($70.00) | 5.80 | Update Concordance with new pleadings (1.0); update Concordance database with transcript (.4); prepare copies of PD comm. Sept. reply brief and CMO Reply brief for attorney review (.8); organize client docs re Hi Temp Cement for attorney review (3.6). |
| 11/30/01 | Benjamin J Alke ($70.00) | 7.00 | Prepare copies of Informational Brief and CMO Reply brief for attorney review (.6); file Barbanti deposition transcript and 11/21 hearing materials (.8); update concordance with new pleadings transferring case to Judge Wolin (1.8); prepare copy of PI Opposition to44 CMO and distribute (.6)... |

*Total: 733.9/$277,431.8*

*CMO Hearing:*

| | | | |
|---|---|---|---|
| 11/01/01 | Theodore L Freedman  ($575.00) | 1.10 | Prepare materials for case management order hearing. |
| 11/02/01 | James W Kapp ($425.00) | 0.80 | Telephone conference with D. Siegel re response to case management order. |
| 11/02/01 | Theodore L Freedman ($575.00) | 1.30 | Prepare materials for case management order hearing. |
| 11/03/01 | Theodore L Freedman ($575.00) | 1.10 | Prepare materials for case management order hearing. |
| 11/04/01 | Theodore L Freedman ($575.00) | 2.50 | Prepare materials for case management order hearing. |
| 11/05/01 | James W Kapp ($425.00) | 0.50 | Conference with R . Raskin, K. Pasquale, D. Siegel and W. Sparks re case management order and issues re same. |
| 11/05/01 | Theodore L Freedman ($575.00) | 3.50 | Prepare materials for case management order hearing. |
| 11/06/01 | Janet Baer ($510.00) | 1.00 | Attend to matters re claims experts (.4); confer with K. Kinsella re hearing on CMO and draft story boards (.6). |
| 11/06/01 | Theodore L Freedman ($575.00) | 2.00 | Prepare materials for case management order hearing. |

| | | | |
|---|---|---|---|
| 11/07/01 | Christopher B Sullivan ($365.00) | 1.20 | Review and edit proposed case management order. |
| 11/07/01 | Janet Baer ($510.00) | 3.00 | Attend to matters re same (.5); prepare status chart and transmittal on draft CMO order (.5)... |
| 11/07/01 | James W Kapp ($425.00) | 0.20 | Telephone conference with D. Carickhoff re local procedures pertaining to disclosure of experts. |
| 11/07/01 | Theodore L Freedman ($575.00) | 3.00 | Prepare materials for case management order hearing. |
| 11/08/01 | Christopher B Sullivan ($365.00) | 1.90 | Draft/edit proposed case management order (1.7); attend to matters re same (.2). |
| 11/08/01 | Janet Baer ($510.00) | 4.00 | Confer with S. Baena and other parties re CMO discovery (.1); review and revise case management order and reply brief and confer with various parties re same (3.9). |
| 11/08/01 | Theodore L Freedman ($575.00) | 4.00 | Prepare materials for case management order hearing. |
| 11/08/01 | David M Bernick, P.C. ($655.00) | 0.50 | Conference with D. Siegel re CMO hearing. |
| 11/09/01 | Janet Baer ($510.00) | 2.50 | ...coordinate discovery for case management hearing (1.0); confer with K. Kinsella re exhibits for hearing and related discovery issues (.5)... |
| 11/09/01 | James W Kapp ($425.00) | 0.30 | Telephone conference with D. Siegel re depository motion and Manville precedent. |
| 11/09/01 | Andrew R Running ($470.00) | 0.90 | Telephone interview of potential expert witness. |
| 11/09/01 | Theodore L Freedman ($575.00) | 4.00 | Prepare materials for case management order hearing. |
| 11/10/01 | Theodore L Freedman ($575.00) | 1.20 | Prepare materials for case management order hearing. |
| 11/11/01 | Theodore L Freedman ($575.00) | 2.00 | Prepare materials for case management order hearing. |

| 11/11/01 | David M Bernick, P.C. ($655.00) | 1.50 | Preparation for November 21 hearing. |
|---|---|---|---|
| 11/11/01 | Janet Baer ($510.00) | 1.50 | Review and organize various documents for CMO hearing (.5); prepare potential charts and graphs for CMO hearing (1.0). |
| 11/12/01 | James W Kapp ($425.00) | 0.40 | Telephone conference with L. Davis Jones re designation of experts and attend to issues re same. |
| 11/12/01 | Scott A McMillin ($350.00) | 2.30 | Prepare for WLRK document review (1.2); revise opposition to Kane motion for summary judgment (.8); review witness interview memoranda (.3). |
| 11/12/01 | Janet Baer ($510.00) | 1.20 | Attend to matters re expert discovery and related issues (.2); revise Notice of depositions (.5); review pleadings for witness for hearing (.5). |
| 11/12/01 | David M Bernick, P.C. ($655.00) | 1.30 | Coordination of discovery re PD experts (.8); conference with J. Warren re Celotex history (.5). |
| 11/13/01 | Reed S Oslan ($445.00) | 2.00 | Study cases and consider litigation strategy. |
| 11/13/01 | David M Bernick, P.C. ($655.00) | 3.50 | Draft outline for November 21 hearing (1.5); attend to matters re hearing preparation and deposition preparation (2.0). |
| 11/13/01 | Theodore L Freedman ($575.00) | 4.00 | Prepare materials for case management order hearing. |
| 11/14/01 | Christopher B Sullivan ($365.00) | 8.00 | Meet with W. Sparks and Reed Smith re strategy/schedule going forward with vermiculite fact investigation (1.0); prepare for interview with M. Favorito (2.0); interview M. Favorito (2.0); interview L. Shapiro (1.0); interview B. Froelick (2.0). |
| 11/14/01 | Theodore L Freedman ($575.00) | 1.00 | Prepare for case management order hearing. |
| 11/14/01 | Andrew R Running ($470.00) | 0.30 | Consider issues re preparations for case management order hearing. |

| 11/14/01 | David M Bernick, P.C. ($655.00) | 3.00 | Prepare for November 21 hearing (2.0); attend to matters re same (.5); prepare list of materials for same (.5). |
|---|---|---|---|
| 11/14/01 | Janet Baer ($510.00) | 10.30 | ... prepare and revise charts for trial (1.0). |
| 11/15/01 | Kellye L Fabian ($230.00) | 0.30 | Prepare for client conference call re development of trial outline. |
| 11/15/01 | Theodore L Freedman ($575.00) | 1.00 | Prepare for case management order hearing. |
| 11/15/01 | Andrew R Running ($470.00) | 4.10 | Prepare case management order hearing exhibits. |
| 11/15/01 | Christopher B Sullivan ($365.00) | 1.50 | Prepare graphics and exhibits for CMO hearing. |
| 11/15/01 | Deanna D Boll ($360.00) | 4.80 | Telephone conference re CMO hearing (1.0); prepare exhibits for CMO hearing (3.5); correspond with graphics specialist re same (.3). |
| 11/16/01 | Theodore L Freedman ($575.00) | 2.00 | Prepare materials for case management hearing. |
| 11/16/01 | Andrew R Running ($470.00) | 8.60 | Prepare case management order hearing exhibits (8.3); consider issues re preparation of additional exhibits (.3). |
| 11/16/01 | Christopher B Sullivan ($365.00) | 7.70 | Prepare exhibits for CMO hearing (6.5); teleconference with W. Sparks, R. Smith and Casner & Edwards re trial outline for CMO hearing (1.2). |
| 11/16/01 | Kimberly K Love ($155.00) | 4.00 | Prepare and organize CMO reply brief materials for hearing. |
| 11/16/01 | Janet Baer ($510.00) | 1.00 | Review draft exhibits for CMO hearing on Kinsella direct. |
| 11/16/01 | Shirley A Pope ($155.00) | 6.00 | Prepare exhibits for November 21 hearing (4.0); organize graphics for November 21 hearing (2.0). |
| 11/16/01 | Benjamin J Alke ($70.00) | 6.50 | Prepare materials for November 21 hearing. |

| 11/16/01 | Kellye L Fabian ($230.00) | 1.10 | Telephone conference with R. Smith and W. Sparks re development of trial outline. |
| 11/17/01 | Theodore L Freedman ($575.00) | 1.00 | Prepare materials for case management order hearing. |
| 11/17/01 | Andrew R Running ($470.00) | 8.40 | Revise and prepare exhibits for CMO hearing (7.5); telephone conferences with S. Michaels re development of computer graphics re CMO hearing (.9). |
| 11/17/01 | Christopher B Sullivan ($365.00) | 5.50 | Prepare exhibits for CMO hearing (4.0); prepare for and attend team meeting (1.5). |
| 11/17/01 | Janet Baer ($510.00) | 2.00 | Assemble exhibits for CMO hearing. |
| 11/17/01 | Christopher B Sullivan ($365.00) | 1.00 | Legal research re asbestos product defenses. |
| 11/18/01 | David M Bernick, P.C.  ($655.00). | 3.50 | Prepare for November 21 hearing. |
| 11/18/01 | Shirley A Pope ($155.00) | 7.00 | Prepare materials for November 21 hearing. |
| 11/18/01 | Benjamin J Alke ($70.00) | 7.00 | Prepare materials for November 21 hearing. |
| 11/18/01 | Christopher B Sullivan ($365.00) | 5.00 | Prepare exhibits and research for CMO hearing. |
| 11/18/01 | Deanna D Boll ($360.00) | 0.50 | Attend to matters re CMO hearing (.3); correspond with graphic artist re CMO hearing exhibits (.2). |
| 11/18/01 | Theodore L Freedman ($575.00) | 1.00 | Prepare materials for case management order hearing. |
| 11/19/01 | David M Bernick, P.C. ($655.00) | 7.00 | Prepare for November 21 CMO hearing. |
| 11/19/01 | Andrew R Running ($470.00) | 7.80 | Prepare and revise exhibits for case management order hearing. |
| 11/19/01 | Christopher B Sullivan ($365.00) | 4.00 | Prepare exhibits, graphics and legal research for CMO hearing. |

| 11/19/01 | Kimberly K Love ($155.00) | 4.00 | Assist in preparation of materials, graphics and equipment for case management order hearing. |
|---|---|---|---|
| 11/19/01 | Deanna D Boll ($360.00) | 2.30 | Prepare exhibits for CMO hearing. |
| 11/19/01 | Emily J Knox ($80.00) | 2.00 | Prepare materials for case management order hearing. |
| 11/19/01 | Janet Baer ($510.00) | 6.50 | Coordinate preparation for hearing re documents, exhibits, testimony and other matters (4.0); revise Kinsella hearing outline, exhibits and related matters (2.5). |
| 11/19/01 | Benjamin J Alke ($70.00) | 9.50 | Prepare materials for CMO hearing. |
| 11/20/01 | David M Bernick, P.C. ($655.00) | 11.50 | Prepare for November 21 CMO hearing. |
| 11/20/01 | James W Kapp ($425.00) | 0.30 | Telephone conference with D. Carickhoff re November 21, 2001 hearing (.1); attend to issues re same (.2). |
| 11/20/01 | Andrew R Running ($470.00) | 8.50 | Prepare and revise exhibits for case management order hearing (4.0); meeting with F. Dunbar to prepare his rebuttal expert testimony for the hearing (4.5). |
| 11/20/01 | Janet Baer ($510.00) | 14.00 | Draft outline of exhibits and notices in preparation for CMO hearing (5.0); preparation for CMO hearing (8.0); confer with various counsel re same (1.0). |
| 11/20/01 | Christopher B Sullivan ($365.00) | 2.70 | Research in support of CMO hearing (1.0); draft letters to co-counsel re case outline (.2); review core ZAI witness files (1.5). |
| 11/20/01 | James W Kapp ($425.00) | 2.10 | Review materials pertaining to case management order and objections re same (2.0); attend to issues re same (.1). |
| 11/20/01 | Emily J Knox ($80.00) | 12.50 | Prepare for hearing (1.0); prepare opening and closing statement documents (5.3); prepare witness examination documents (6.2). |

| 11/21/01 | Emily J Knox ($80.00) | 5.10 | Prepare opening and closing statement documents for attorney review (.8); prepare courtroom for hearing (1.0); organize hearing materials for shipment to courtroom (3.3). |
| 11/21/01 | Brigitte F Windley ($170.00) | 0.30 | Review hearing agenda. |
| 11/21/01 | Janet Baer ($510.00) | 2.00 | Review and revise outline in preparation for Kinsella testimony at CMO hearing. |
| 11/21/01 | Janet Baer ($510.00) | 2.50 | Confer with Judge Farnan re cancellation of CMO hearing and 3rd Circuit's decision to transfer asbestos cases (1.0); attend to matters re same (1.5). |
| 11/21/01 | Benjamin J Alke ($70.00) | 4.50 | Provide home office support for hearing litigation team. |
| 11/26/01 | James W Kapp ($425.00) | 0.20 | Telephone conference with D. Carickhoff re issues pertaining to continuance of November 21, 2001 hearing. |
| 11/26/01 | Janet Baer ($510.00) | 0.50 | Attend to matters re CMO hearing and related matters. |
| 11/28/01 | Shirley A Pope ($155.00) | 2.00 | Organize materials for filing November 21, 2001 hearing. |
| 11/28/01 | Benjamin J Alke ($70.00) | 2.00 | File materials from Nov. 21 hearing (1.6); file Fresenius transaction documents (.4). |
| 11/29/01 | Andrew R Running ($470.00) | 0.40 | Conference with B. Alke re project to summarize production documents. |
| 11/29/01 | Benjamin J Alke ($70.00) | 1.20 | File materials from 11/21 hearing. |
| 11/30/01 | Andrew R Running ($470.00) | 0.90 | Prepare additional exhibits for case management order hearing. |
| 11/30/01 | Benjamin J Alke ($70.00) | 7.00 | ...file Barbanti deposition transcript and 11/21 hearing materials (.8)... |

*Total: 278.1/$115,025.00*

## Exhibit B

**B-1:**

| 7/10/01 | James W Kapp | 1.50 | Participate in status telephone conference with representatives of the Company and attend to issues re same (1.2);.......... |
| 7/10/01 | Andrew R Running | 1.10 | Participate in telephone conference with D. Siegel, R. Tarola and other senior management to review status of the cases. |

*Total: 2.3/$1,015.00*

**B-2:**

| 7/11/01 | Timothy S Hardy | 6.70 | Conference with D. Siegel, et al. re PI, PD background (4.7);........... |
| 7/11/01 | Andrew R Running | 3.50 | Participate in meeting with D. Siegel et al, re expert issues in asbestos personal injury cases (6.0);...... |
| 7/11/01 | Christopher B Sullivan | 7.50 | ....; attend history meeting with client in Washington, D.C. (4.0);.......... |

*Total: 14.7/$6,371.50*

**B-3:**

| 7/11/01 | David M Bernick, P.C. | 3.00 | Conference with D. Roarke re claims analysis. |
| 7/11/01 | Andrew R Running | 1.80 | Participate in meeting with D. Roarke of ARPC re claims analysis projects. |
| 7/10/01 | David M Bernick, P.C. | 1.50 | Travel to Washington for Grace meeting (represents one-half time) |

*Total: 6.3/$3,793.50*

**B-4:**

| 7/19/01 | David M Bernick, P.C. | 5.00 | ........; hearing before Fanin (2.0). |
| 7/19/01 | James W Kapp | 10.80 | Prepare for and attend omnibus hearing and attend to issues re same. |
| 7/19/01 | Samuel A Schwartz | 7.60 | ..................; attendance of the July 19 hearing (2.0); ............. |
| 7/18/01 | David M Bernick, P.C. | 3.00 | Travel from Chicago, IL to Wilmington, DE in preparation for hearing (represents one-half time). |
| 7/18/01 | Samuel A Schwartz | 1.80 | Travel from Chicago, IL to Wilmington, DE (represents one-half time). |
| 7/19/01 | David M Bernick, P.C. | 3.00 | Travel from Wilmington, DE to Chicago, IL (represents one-half time). |
| 7/19/01 | Samuel A Schwartz | 2.50 | Travel from Wilmington, DE to Chicago, IL (represents one-half time). |

*Total: 25.1/$11,990.00*

<u>B-5:</u>

| 8/02/01 | David M Bernick, P.C. | 9.00 | Prepare for and attend meeting re case preparation with Grace and Reed Smith. |
| 8/02/01 | Timothy S Hardy | 7.20 | Prepare for and attend conference with client re ZAI and MK-3. |
| 8/02/01 | Andrew R Running | 6.80 | Prepare for and participate in conference with client to strategize on ZAI and MK-3 product liability defenses. |
| 8/02/01 | Christopher B Sullivan | 7.50 | Prepare for and participate in conference with client to strategize on ZAI and MK-3 product liability defenses (6.5);......... |

*Total: 29.5/$14,667.50*

<u>B-6:</u>

| 8/03/01 | David M Bernick, P.C. | 4.00 | Meeting with lawyers representing the equity committee and follow-up meeting with client. |
| 8/03/01 | James W Kapp | 4.10 | Conference with P. Bentley, B. Schmidt, T. Mayer and D. Siegel re presentation for Equity Committee pertaining to status of bankruptcy case (3.7);..... |

*Total: 7.7/$4,192.50*

<u>B-7:</u>

| 10/01/01 | Andrew R Running | 0.20 | Prepare for and participate in telephone conference with R. Finke re document retention by law firm. |
| 10/01/01 | Christopher B Sullivan | 0.90 | Prepare for and participate in telephone conference with R. Finke re law firm retention of files (.5)... |

*Total: 0.7/$276.50*

<u>B-8:</u>

| 10/15/01 | P Renee Wicklund | 2.30 | Participate in W.R. Grace telephone conference re CMO reply brief. |
| 10/15/01 | Deanna D Boll | 0.80 | Prepare for and participate in teleconference re CMO strategies. |

*Total: 3.10/$978.00*

<u>B-9:</u>

| 10/23/01 | Shirley A Pope | 6.50 | ...telephone conference with B. Eller re adversary document filing (2).. |

| 10/23/01 | Brigette F Windley | 2.70 | Telephone conferences with B. Eller (Grace) ...(.8)... |

*Total:* 1.0/$167.00

*B-10:*

| 10/19/01 | James W Kapp | 2.40 | ...telephone conference with counsel and financial advisors for Creditors Committee and P. Zilly re document requests and attend to issues re same (1.6)... |
| 10/19/01 | Samuel A Schwartz | 1.70 | Telephone conferences with the commercial committee re disclosure statements(1.0).... |

*Total: 2.6/$1,040.00*

*B-11:*

| 11/12/01 | Scott A McMillin ($350.00) | 1.50 | Travel to NYC for WLRK document review. |
| 11/12/01 | Kellye L Fabian ($230.00) | 2.00 | Travel to NYC for WLRK document review. |
| 11/12/01 | Roger J Higgins ($320.00) | 1.00 | Travel to NYC for WLRK document review. |
| 11/13/01 | Scott A McMillin ($350.00) | 10.30 | Review WLRK documents re Fresenius and Sealed Air transactions (8.1)... |
| 11/13/01 | Roger J Higgins ($320.00) | 9.50 | ...document review of Wachtell...re asbestos liability and fraudulent conveyance issues. |
| 11/14/01 | Scott A McMillin ($350.00) | 10.00 | Review of WLRK documents re Fresenuis and Sealed Air transactions (9.5); attend to matters re same (.5). |
| 11/14/01 | Roger J Higgins ($320.00) | 10.50 | Document review of Wachtell case files re asbestos liability and fraudulent conveyance issues (10.00); attend to matters re same (.50). |
| 11/15/01 | Scott A McMillin ($350.00) | 1.50 | Travel from NYC for WLRK document review. |
| 11/15/01 | Kellye L Fabian ($230.00) | 2.00 | Travel from NYC for WLRK document review. |
| 11/15/01 | Roger J Higgins ($320.00) | 1.00 | Travel from NYC for WLRK document review. |

*Total: 42.6/$11,485.00*

*B-12:*

| 11/04/01 | Samuel A Schwartz ($360.00) | 0.80 | Prepare for the November 5 hearing. |
| 11/05/01 | David M Bernick, P.C. ($655.00) | 4.00 | Prepare for and attend November 5 hearing. |
| 11/05/01 | James W Kapp ($425.00) | 0.10 | Review November 5, 2001 agenda. |
| 11/05/01 | James W Kapp ($425.00) | 2.50 | Prepare for and attend hearing on former employees indemnification motion and attend to issues re same. various matters. |
| 11/05/01 | James W Kapp ($425.00) | 7.30 | Prepare for November 5, 2001 omnibus hearing and review documents re same (4.2); attend to issues re same (.5); review November 5, 2001 agenda (.1); prepare for and attend hearing on former employees indemnification motion and attend to issues re same (2.5). |
| 11/05/01 | Samuel A Schwartz ($360.00) | 3.00 | Prepare for the November 5 hearing (1.3); attend same (1.2); attend to matters re same (.5). |

*Total: 17.7/$8,411.50*

*B-13:*

| 11/16/01 | Deanna D Boll ($360.00) | 4.00 | Travel to and from Philadelphia for Hilsee deposition (bill at half time). |
| 11/16/01 | Janet Baer ($510.00) | 2.50 | Travel to Philadelphia from Chicago re Hilsee and Kinsella depositions (bill at half time). |
| 11/16/01 | Deanna D Boll ($360.00) | 7.00 | Assist with T. Hilsee and K. Kinsella depositions in Philadelphia. |
| 11/16/01 | Janet Baer ($510.00) | 11.00 | ... conduct Hilsee deposition and defend Kinsella and confer with client re same (7.0). |
| 11/16/01 | Janet Baer ($510.00) | 2.50 | Travel from Philadelphia back to Chicago after depositions (bill at half time). |

*Total: 23/$10,080.00*

*B-14:*

| 11/02/01 | Janet Baer ($510.00) | 2.00 | ...participate in telephone conference with clients re Hatco strategy (.6); participate in telephone conference re strategy on other environmental matters (.5)... |
| 11/02/01 | Mark E Grummer ($365.00) | 3.80 | Prepare for and participate in conference call re Hatco site response to agency demands with L. Duff, W. Corcoran, J. McGahren, M. Obradovic and others (1.9)... |
| 11/19/01 | Janet Baer ($510.00) | 1.00 | Conference with various parties re Hatco site. |
| 11/19/01 | Mark E Grummer ($365.00) | 7.80 | ... prepare for and participate in telephone conference with L. Duff, M. Obradovic and J. McGanren re approach to negotiations at Hatco site (1.2)../ |
| 11/28/01 | Janet A Baer ($510.00) | 3.00 | Participate in conference with various company representatives on Hatco matter (1.0)... |
| 11/28/01 | Mark E Grummer ($365.00) | 1.40 | Prepare for and participate in conference call with client representatives re Hatco site status and strategy including plans for upcoming meetings with Hatco and New Jersey DEP (1.2)... |

*Total: 7.4/$3,150.00*

_B-15:_

| 11/21/01 | David M Bernick, P.C. ($655.00) | 3.00 | ...client telephone conferences after cancellation thereof [CMO hearing] (2.5) |
| 11/21/01 | James W Kapp ($425.00) | 5.60 | Conferences with D. Siegel, P. Norris, B. McGowan, W. Sparks, and other representatives of Debtors re outstanding issues and ... hearing (4.1)... |

*Total: 6.6/$3,380.00*

_B-16:_

| 11/19/01 | David M Bernick, P.C. ($655.00) | 3.00 | Travel to hearing (bill at half time). |
| 11/19/01 | David M Bernick, P.C. ($655.00) | 3.50 | Prepare for November 21 CMO hearing. |

| | | | |
|---|---|---|---|
| 11/20/01 | David M Bernick, P.C. ($655.00) | 9.50 | Prepare for November 21 CMO hearing. |
| 11/20/01 | Janet Baer ($510.00) | 3.00 | Travel to Wilmington, DE for CMO hearing (bill at half time). |
| 11/20/01 | Janet Baer ($510.00) | 14.00 | Draft outline of exhibits and notices in preparation for CMO hearing (5.0); preparation for CMO hearing (8.0); confer with various counsel re same (1.0). |
| 11/20/01 | Shirley A Pope ($155.00) | 2.00 | Travel from Chicago to Wilmington, DE re hearing before Judge Farnan (bill at half time). |
| 11/20/01 | Shirley A Pope ($155.00) | 14.40 | ... prepare hearing presentation materials (6.4); prepare hearing exhibits (6.0); prepare materials for F. Dunbar testimony preparation (1.0). |
| 11/20/01 | Emily J Knox ($155.00) | 3.20 | Travel to Delaware (bill at half time). |
| 11/20/01 | Emily J Knox ($155.00) | 12.50 | Prepare for hearing (1.0); prepare opening and closing statement documents (5.3); prepare witness examination documents (6.2). |
| 11/21/01 | David M Bernick, P.C. ($655.00) | 3.00 | Prepare for CMO hearing (.5)... |
| 11/21/01 | Shirley A Pope ($155.00) | 7.50 | ... prepare documents for CMO hearing (2.5)... |
| 11/21/01 | Emily J Knox ($80.00) | 5.10 | Prepare opening and closing statement documents for attorney review (.8); prepare courtroom for hearing (1.0); organize hearing materials for shipment to courtroom (3.3). |
| 11/21/01 | Janet Baer ($510.00) | 2.00 | CMO hearing. |
| 11/21/01 | Janet Baer ($510.00) | 2.00 | Review and revise outline in preparation for Kinsella testimony at CMO hearing. |
| 11/21/01 | Janet Baer ($510.00) | 2.50 | Confer with Judge Farnan re cancellation of CMO hearing and 3rd Circuit's decision to transfer asbestos cases (1.0); attend to matters re same (1.5). |
| 11/21/01 | David M Bernick, P.C. ($655.00) | 2.50 | Travel from hearing (bill at half time). |

| 11/21/01 | Shirley A Pope ($155.00) | 2.00 | Travel from Wilmington, DE to Chicago re hearing (bill at half time). |
| 11/21/01 | Emily J Knox ($80.00) | 2.40 | Travel from Delaware (bill at half time). |
| 11/21/01 | Janet Baer ($510.00) | 2.50 | Travel from Wilmington, DE back to Chicago after CMO hearing (bill at half time). |

*Total: 88.1/$36,437.61*

*B-17:*

| 11/08/01 | Deanna D Boll ($360.00) | 3.50 | Consider issues re T. Hilsee deposition (.5); review Hilsee affidavit and Kinsella revised plan (1.7); review Hilsee affidavit in B&W and Hilsee plan in B&W as comparison tool and notices in both cases (1.3). |
| 11/09/01 | Janet Baer ($510.00) | 2.50 | Assemble documents for Hilsee deposition preparation re Barbanti (.5); coordinate discovery for case management hearing (1.0); confer with K. Kinsella re exhibits for hearing and related discovery issues (.5)... |
| 11/11/01 | Janet Baer ($510.00) | 6.00 | Prepare Hilsee deposition notice and document request (.5); review Hilsee documents/pleadings to prepare outline for deposition (2.6); prepare outline for Hilsee deposition (2.4); review Hilsee outline and St. Johns pleadings (.5). |
| 11/12/01 | Deanna D Boll ($360.00) | 7.00 | ...analyze Barbanti hearing documents and Hilsee B&W related submissions re T. Hilsee deposition (4.5). |
| 11/12/01 | Janet Baer ($510.00) | 6.80 | Prepare letter re discovery (.5); review documents and prepare outline for Hilsee deposition and Kinsella testimony and deposition (5.3); confer with K. Kinsella re Hilsee depositions (1.0). |
| 11/13/01 | Janet Baer ($510.00) | 8.00 | Consider issues and prepare for Hilsee deposition and Kinsella direct and cross (2.0); review Kinsella documents for production and confer with K. Kinsella re same (3.5); revise Hilsee deposition outline and materials (1.5); revise Kinsella direct examination outline and materials (1.0). |

| Date | Name | Hours | Description |
|---|---|---|---|
| 11/14/01 | Janet Baer ($510.00) | 10.30 | Attend to matters re coordination of depositions (.7); prepare correspondence re same (.5); revise and confirm arrangements for court reporter and conference room (.5); prepare letter re Hilton and Rabinovitz depositions (.3); review protective order and consider issues re same (.8); confer with K. Kinsella re story boards and testimony (.5); prepare objection to protective order consider issues re same (2.0); review Hilsee documents (1.0); prepare materials for Hilsee and Kinsella depositions (1.0); supplement Hilsee deposition outline (1.0); revise and supplement Kinsella deposition outline (1.0)... |
| 11/16/01 | Deanna D Boll ($360.00) | 7.00 | Assist with T. Hilsee and K. Kinsella depositions in Philadelphia. |
| 11/16/01 | Janet Baer ($510.00) | 11.00 | ... conduct Hilsee deposition and defend Kinsella and confer with client re same (7.0). |
| 11/16/01 | Deanna D Boll ($360.00) | 7.00 | Assist with T. Hilsee and K. Kinsella depositions in Philadelphia. |
| 11/16/01 | Janet Baer ($510.00) | 11.00 | Review outline, notes and documents re Hilsee deposition (2.0); confer with J. Hughes and K. Kinsella re same and Kinsella deposition (2.0); conduct Hilsee deposition and defend Kinsella and confer with client re same (7.0). |
| 11/18/01 | Janet Baer ($510.00) | 8.30 | Revise Kinsella testimony outline and exhibits (3.0); review materials and deposition transcripts (1.7); attend to matters re same (.6); prepare various materials and respond to inquiries re Hilsee cross examination (2.0); prepare proof of claim questions (1.0). |
| 11/19/01 | Janet Baer ($510.00) | 0.30 | Conference with W. Sparks re J. Wolters and KDC issues |
| 11/20/01 | Deanna D Boll ($360.00) | 2.80 | Review deposition transcripts from T. Hilsee and K. Kinsella for CMO hearing outstanding issues. |

*Total: 77.5/$36,855.00*

_B-18:_

| 12/02/01 | Browdy | 3.00 | Travel to Florida for witness interviews (billed at ½ time) |
| 12/02/01 | McMillin | 1.60 | Travel to Boca Raton, Florida for meetings with former |

| | | | |
|---|---|---|---|
| | | | Grace executives (billed at ½ time). |
| 12/04/01 | Browdy | 1.50 | Witness interview in anticipation of fraudulent conveyance claims and preparation. |
| 12/04/01 | McMillan | 2.00 | Prpare for and meet with A. Costello, B. Beber and M. Browdy re: Fresenius and Sealed Air transactions (2.0); . . . |
| 12/04/01 | Browdy | 1.00 | Travel from Florida (billed at ½ time). |
| 12/04/01 | McMillin | 2.00 | Travel to Chicago from Boca Raton (billed at ½ time). |

*Total: 11.1/4,160.00*

*B-19:*

| | | | |
|---|---|---|---|
| 12/01/01 | Baer | 0.60 | Review file and attend to matters in preparation for Hatco site clean up meeting. |
| 12/02/01 | Oslan | 2.00 | Prpare for meetings in D.C. re Hatco site clean up. |
| 12/03/01 | Grummer | 7.20 | Conference with L. Duff in preparation for meeting with Hatco (.7); prepare for and participate in meeting with Grace team re Hatco site to prepare for meeting with Hatco and later meeting with New Jersey DEP (3.8); participate in meeting between Grace team and Hatco representatives re Hatco site and plans for meeting with NJ DEP (2.5); prepare edits to memorandum re Hatco site legal issues (.2). |
| 12/03/01 | Oslan | 7.00 | Prepare for and meet with client, Hatco, and NJ DEP representatives re future proceedings at site. |
| 12/03/01 | Baer | 9.00 | Attend meetings in Washington, D.C. re Hatco site clean up issues (.5); review documents and case law in preparation re same (.3); attend to matters re Hatco meeting and related matters (1.0). |
| 12/12/01 | Oslan | 2.50 | Prepare for meeting with state re Hatco. |
| 12/12/01 | Baer | 1.00 | Review correspondence re upcoming NJDEP meeting on Hatco (.3); participate in conference re upcoming NJDEP meeting (.4); attend to matters re Hatco meeting (.3); . . . |
| 12/13/01 | Oslan | 6.00 | Prepare for and meet with client, Hatco, and NJDEP re status and future actions at site. |
| 12/13/01 | Baer | 6.50 | Review various correspondence pleadings and memos in preparation for meeting with NJDEP on Hatco site (2.0); attend meeting with clients and Hatco re same (1.5); attend meeting with NJDEP on Hatco site (1.5); attend meeting with clients and Hatco re results of NJDEP meeting (.5); attend to matters re same (1.0). |

*Total: 41.8/$19,136.50*

Exhibit C

*C-1: Difference is $65.50*

| 7/13/01 | David M Bernick, P.C. | 2.10 | Prepare for and attend Asbestos team meeting (.8); K& E conference re class action brief (1.0); preparation for Asbestos team meeting (.2). |
|---|---|---|---|

*C-2: Difference is $17.00*

| 8/08/01 | Brigitte F Windley | 2.40 | Telephone conferences with local counsel re obtaining copies of documents (.4); review various case documents received from attorneys to assign central file categories in preparation for central file supplementation by project assistant (1.9). |
|---|---|---|---|

*C-3: Difference is $1,836.00*

| 8/31/01 | Janet Baer | 7.00 | Review bar date notice cases and pleadings (.4); review materials to prepare outline for CMO Reply or notice (2.0); prepare outline for bar date reply (1.0). |
|---|---|---|---|

*C-4: Difference is $153.00*

| 8/23/01 | Janet Baer | 3.10 | Conference with R. Emmett re Youpee and Otis matters (.3); conference with L. Duff re choice of law issues re environmental actions (.3); participate in telephone conference with clients re potential to resolve Libby related issues (1.0); conference with H. Berger re asbestos school litigation and related matters (.3); conference with C. Marrero re Honeywell matter (.4); internal conferences re Libby matters (.5). |
|---|---|---|---|

Exhibit D

*Asbestos Litigation:*

| 7/02/01 | Yvette Ney | 4.30 | Research asbestos litigation re compliance with safety statute. |
| 7/03/01 | Yvette Ney | 9.30 | Research asbestos litigation re compliance with safety statute. |
| 7/05/01 | Yvette Ney | 8.00 | Research asbestos litigation re statutory compliance and definition of product. |
| 7/06/01 | Yvette Ney | 8.80 | Research asbestos litigation. |
| 7/06/01 | Yvette Ney | 8.80 | Research asbestos litigation. |
| 7/08/01 | Yvette Ney | 3.00 | Research asbestos litigation. |
| 7/09/01 | Yvette Ney | 9.00 | Research asbestos litigation (5.0); compose memorandum re asbestos litigation (4.0). |
| 7/10/01 | Yvette Ney | 12.50 | Research asbestos litigation (7.0); compose memorandum re asbestos litigation (5.5). |
| 7/11/01 | Yvette Ney | 12.50 | Research asbestos litigation and compose memorandum re same. |
| 7/12/01 | Andrew R Running | 0.60 | Attend to matters with Y. Ney re legal research on risk threshold for product liability. |
| 7/12/01 | Yvette Ney | 7.30 | Research asbestos litigation and draft first section of memorandum re same. |
| 7/13/01 | Yvette Ney | 5.00 | Research asbestos litigation. |
| 7/15/01 | Yvette Ney | 0.30 | Research asbestos litigation. |
| 7/16/01 | Yvette Ney | 6.00 | Research asbestos litigation. |
| 7/17/01 | Yvette Ney | 6.00 | Research asbestos litigation and compose memorandum re state of the art evidence re asbestos. |
| 7/18/01 | Yvette Ney | 6.00 | Research asbestos litigation (4.0); compose memorandum re asbestos litigation (.2). |
| 7/19/01 | Yvette Ney | 5.50 | Finalize research re state of the art. |
| 7/20/01 | Yvette Ney | 3.30 | Complete memorandum re state of the art evidence. |
| 7/23/01 | Andrew R Running | 0.30 | Attend to matters with Y. Ney re product liability legal research issues. |

| 7/23/01 | Yvette Ney | 4.50 | Research asbestos litigation and compose memorandum re same. |
| 7/24/01 | Yvette Ney | 9.70 | Research asbestos litigation and compose memorandum re same. |
| 7/25/01 | Yvette Ney | 11.00 | Research asbestos litigation and compose memorandum re same. |
| 7/26/01 | Yvette Ney | 7.50 | Research asbestos litigation and compose memorandum re same. |
| 7/30/01 | Yvette Ney | 9.00 | Research asbestos litigation and compose memorandum re same. |
| 7/31/01 | Yvette Ney | 5.00 | Research asbestos litigation and compose memorandum re same. |
| 8/01/01 | Yvette Ney | 2.30 | Research asbestos litigation (2.0); revise memorandum re asbestos litigation (1.3). |
| 8/02/01 | Yvette Ney | 1.80 | Complete memorandum re asbestos litigation. |

*Total: 167.3 / $21,223.00*

*"Daubert/Robinson" Research:*

| 8/22/01 | Scott A McMillin | 10.20 | Research and draft memorandum re admissibility of expert causation evidence. |
| 8/23/01 | Scott A McMillin | 4.20 | Research and draft memorandum re admissibility of expert causation evidence. |

*Total: 14.4/$5,040.00*

*Ordinary Course Professional:*

| 09/23/01 | Samuel A. Schwartz | 2.10 | Review and analysis of the case law surrounding ordinary course business transactions. |
| 09/24/01 | Samuel A. Schwartz | 6.30 | Review and analysis of the case law surrounding ordinary course business transactions (2.8); drafting of the memorandum summarizing the same (3.5). |
| 09/25/01 | Samuel A. Schwartz | 7.60 | Review and analysis ordinary course of business and related topics (3.5); revise the memorandum re same (3.7); meeting re same (.4) |
| 09/26/01 | Samuel A. Schwartz | 1.20 | Review and revision of the Ordinary Course Memorandum. |
| 09/28/01 | Samuel A. Schwartz | 1.50 | Review and revision of the ordinary course memorandum (.5);..... |

*Total: 17.7/$6,372.00*

Exhibit E

*E-1:*

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 10/01/01 | Catherine B Filippini | 2.30 | ...(.6); create labels and files (1.0); file documents for file management (.5)... |
| 10/04/01 | Catherine B Filippini | 2.00 | Retrieve boxes of CCHP, INC. documents (.2); review, sort and organize documents (.5); create labels and files (.8); file documents for file management (.5). |
| 10/08/01 | Catherine B Filippini | 2.50 | ... create labels and files (.5); file documents for file management (.5); create index (1.0). |
| 10/12/01 | Catherine B Filippini | 2.00 | Print box labels (.1); organize boxes and put labels on boxes including checking to make sure that labels and box contents match (1.0); review documents in boxes and create list of bates ranges and document descriptions (.9). |
| 10/15/01 | Catherine B Filippini | 4.00 | ...update index re contents of boxes and bates ranges (1.0); create box labels (.5); organize and label boxes for file management (.6); create labels and files (.6); file documents (.8). |
| 10/16/01 | Catherine B Filippini | 1.50 | Create labels (.5)... update index (.5). |
| 10/17/01 | Catherine B Filippini | 1.50 | ...create box labels (.5); organize and label boxes for file management (.3); update index (.2). |
| 10/18/01 | Catherine B Filippini | 0.50 | Label and organize boxes for file management (.3)... |
| 10/19/01 | Catherine B Filippini | 0.80 | ...create labels for file management (.5). |
| 10/22/01 | Catherine B Filippini | 1.80 | ...create files and file documents (.5); organize files and boxes for file management (.3); update index (.5). |

*Total: 14.1/$987.00*

*E-2:*

## Matter 20 -Case Administration - Fees

| Date | Name | Hours | Description |
|------|------|-------|-------------|
| 11/01/01 | Brigitte F Windley ($170.00) | 0.70 | Review various case documents and assign central file categories. |
| 11/01/01 | Sabrina M Mitchell ($85.00) | 0.20 | Retrieve and duplicate consulting agreements from central files (.1)... |
| 11/01/01 | Sabrina M Mitchell ($85.00) | 1.80 | Update the case file index with new documents and prepare for inclusion into central files (.3)... review the online docket and update the motion status chart (.2). |
| 11/02/01 | Shirley A Pope ($155.00) | 3.10 | Prepare binders re Fresenius and Sealed Air and other materials re document review. |
| 11/02/01 | Brigitte F Windley ($170.00) | 2.30 | Review new adversary pleadings for central filing (.6); review various case documents and assign central file category (.9)... |
| 11/02/01 | Sabrina M Mitchell ($85.00) | 2.60 | Update the case file index with new documents and prepare for inclusion into central files (.7)... |
| 11/02/01 | Benjamin J Alke ($70.00) | 1.20 | Update case file re new pleadings (.8); update document production index re new work product (.4). |
| 11/02/01 | Marguerite M Melvin ($170.00) | 4.70 | Prepare and update list of key professionals in the asbestos-related bankruptcy cases (.8)... update pleadings indices (.5); prepare subfolders for new pleadings (.2); incorporate pleadings into asbestos case files (.2) |
| 11/05/01 | Shirley A Pope ($155.00) | 1.00 | Prepare documents for attorney review (.5); update correspondence files (.5). |
| 11/05/01 | Sabrina M Mitchell ($85.00) | 2.70 | ... update the motion status chart (.5); update the case file index with new documents and prepare for inclusion into central files (.7)... |
| 11/05/01 | Benjamin J Alke ($70.00) | 4.10 | ...prepare copies of selected docs for attorney review (1.5); prepare copies of the Abner and Woodward complaints for attorney review (.6). |

| 11/06/01 | Brigitte F Windley ($170.00) | 0.30 | Update motion status chart. |
| 11/06/01 | Sabrina M Mitchell ($85.00) | 3.60 | Update the case file index with new docs and prepare for inclusion into central files (.7)... |
| 11/06/01 | Sabrina M Mitchell ($85.00) | 2.10 | Retrieve and duplicate requested documents and prepare transmittal of the same. |
| 11/06/01 | Marguerite M Melvin ($150.00) | 0.40 | Duplicate and distribute articles for attorneys review. |
| 11/07/01 | Sabrina M Mitchell ($85.00) | 1.20 | Download certain pleadings from the W. R. Grace online docket (.1)... |
| 11/08/01 | Sabrina M Mitchell ($85.00) | 3.10 | ...update the motion status chart (.8); create an adversary proceedings binder and include all new pleadings (.7); update the case file index with new documents and prepare for inclusion into central files (.3); identify new pleading and include into the central file docket binders (1.3). |
| 11/08/01 | Marguerite M Melvin ($150.00) | 6.40 | ...download pleadings (1.5); prepare subfolders for pleadings and file (.7); update pleadings indices (.8); update list of key professionals (.4); update schedule of events chart (.5). |
| 11/09/01 | Brigitte F Windley ($170.00) | 3.30 | Provide case pleadings for attorney review (1.9); review various case documents and assign central case file categories (1.1); forward committee counsel contact information to V. Johnson (.3). |
| 11/09/01 | Sabrina M Mitchell ($85.00) | 1.40 | Update the case file index with new documents and prepare for inclusion into central files (.3); identify new pleadings using the court's website and include in the central file docket binders (1.1). |
| 11/12/01 | Brigitte F Windley ($170.00) | 1.90 | Review various case documents and assign central file category. |
| 11/12/01 | Sabrina M Mitchell ($85.00) | 2.90 | Update the case file index with new docs and prepare for inclusion into central files (.6)... |

| 11/12/01 | Benjamin J Alke ($70.00) | 7.00 | ...update Concordance database re new pleadings (1.4); update case file re new Legal Research documents, deposition transcripts, attorney working files, and claims, forms, database files (3.4); prepare copies of statisti- analysis of 1997 and 2000 claims (.4). |
| 11/13/01 | Brigitte F Windley ($170.00) | 1.20 | Prepare various orders from central files for attorney review (.4); review various case documents and assign central file categories in preparation for central filing (.8). |
| 11/13/01 | Sabrina M Mitchell ($85.00) | 4.30 | ... update the case file index with new documents and prepare for inclusion into central files (.6)...organize lease and real estate binders into central files (.4). |
| 11/13/01 | Benjamin J Alke ($70.00) | 3.90 | Update Concordance database re new plead- ings (1.8); update Grace case file re new legal research files and scientific articles cited in CMO reply brief (2.1). |
| 11/14/01 | Shirley A Pope ($155.00) | 5.50 | Review correspondence and update files (1.5). ... prepare documents for attorney review (1.0); update reference files (1.2); update legal research files (1.0). |
| 11/14/01 | Brigitte F Windley ($170.00) | 1.60 | Review various case documents and assign central file categories (1.2); review motion status chart (.4). |
| 11/14/01 | Sabrina M Mitchell ($85.00) | 2.40 | ...update the case file index with new documents and prepare for inclusion into central files (.3)... review the online docket and update the motion status chart (.2). |
| 11/14/01 | Benjamin J Alke ($70.00) | 6.50 | ...edit Concordance database re new pleadings (2.2); prepare copies of CMO reply brief, Exhibit K, and Rourke affidavit to be sent to counsel (2.1); update Grace Case file with new legal research files (1.8). |
| 11/14/01 | Marguerite M Melvin ($150.00) | 2.20 | ... duplicate and distribute articles (1.0); locate and download dockets for related asbestos cases recently filed pleadings of interest (.5). |
| 11/15/01 | Shirley A Pope ($155.00) | 3.00 | Review correspondence and file same (1.5)... |

| 11/15/01 | Brigitte F Windley ($170.00) | 3.10 | Prepare orders from central file for attorney review (.6); review and update motion status chart (.8); review various case documents and assign central file categories (1.7). |
| 11/15/01 | Benjamin J Alke ($70.00) | 8.00 | Prepare copies of Notice of Removal pleadings (1.4); prepare copies of pleadings re Prudential for attorney review (1.4)... |
| 11/15/01 | Marguerite M Melvin ($150.00) | 3.50 | Download recently filed asbestos bankruptcy case pleadings (2.0); prepare subfolders and file pleadings (.5); update indices, update the list of key professionals for each case (.5); update the schedule of events chart (.5). |
| 11/16/01 | Sabrina M Mitchell ($85.00) | 1.30 | Update the case file index with new docs and prepare for inclusion into central files (.3)... |
| 11/16/01 | Marguerite M Melvin ($150.00) | 4.50 | Download recently filed asbestos bankruptcy case pleadings (3.0); prepare subfolders and file pleadings (.5); update indices, update the list of key professionals for each case (.5); update the schedule of events chart (.5). |
| 11/19/01 | Brigitte F Windley ($170.00) | 2.30 | Download motion to dismiss pleadings from court docket and distribute same for attorney review (.9); ...review various case documents received and assign central file categories to same in preparation for central filing (.6). |
| 11/19/01 | Sabrina M Mitchell ($85.00) | 2.20 | Search the online docket for the first claims settlement notice (.3); distribute the online docket to attorneys (.1); update the case file index with new documents and prepare for inclusion into central files (.2)... |
| 11/20/01 | Emily J Knox ($80.00) | 1.00 | Prepare pleadings for attorney review. |
| 11/20/01 | Brigitte F Windley ($170.00) | 0.90 | Id. pleadings for client (.4);organize electronic case filing with bankruptcy court (.5). |
| 11/21/01 | Brigitte F Windley ($170.00) | 1.10 | Review various case docs to assign central file category in preparation for central filing. |
| 11/21/01 | Sabrina M Mitchell ($85.00) | 1.00 | Retrieve the settlement procedures motion and transmit to B. Hatfield (.2); retrieve and transmit requested documents to B. Eller (.8). |

| 11/21/01 | Marguerite M Melvin ($150.00) | 4.30 | ...download pleadings of interest (1.8); update pleadings indices (.5); prepare subfolders for each pleading and file (.5). |
| 11/26/01 | Shirley A Pope ($155.00) | 8.00 | Organize hearing materials for filing (2.0); review correspondence and file (1.5); organize legal research documents (2.0)...organize hearing transcripts (.5); organize deposition transcripts for filing (1.5). |
| 11/26/01 | Benjamin J Alke ($70.00) | 7.50 | Update Concordance database re new pleadings (2.4); update Grace case file re new transcripts (1.2); update Grace case file re new depositions (1.6); update Grace case file re new witness files (1.4); organize materials from 11/21 hearing and deliver to J. Baer (.9). |
| 11/26/01 | Marguerite M Melvin ($150.00) | 4.50 | ... download pleadings of interest (2.0); prepare subfolders for same and file (1.0); update indices (.5). |
| 11/27/01 | Shirley A Pope ($155.00) | 7.50 | Review correspondence and file (1.0); update reference files (.8) ...organize Grace document collection (1.2); update document indices (.5); prepare documents for attorney review (.5); update legal research re Grace main file (1.0); revise file indices (1.0). |
| 11/27/01 | Emily J Knox ($80.00) | 3.80 | Prepare and organize various precedent transfers pleadings and trial transcripts for attorney review. |
| 11/27/01 | Sabrina M Mitchell ($85.00) | 3.80 | ... create Excel chart re committee members and DIP lenders for precedent cases(1.6);  pre-pare SOFA's for duplication by reprographics (.2)...duplicate and send media file to D.Boll (.1); retrieve and distribute wage motion and orders (.2). |
| 11/27/01 | Benjamin J Alke ($70.00) | 2.00 | Create binder of printouts of law reviews cited in CMO reply brief (.8); update Concordance database re new pleadings (1.2). |
| 11/27/01 | Marguerite M Melvin ($150.00) | 1.90 | ... locate articles of interest (.2); copy and distribute same for attorney review (.2). |

| 11/28/01 | Brigitte F Windley ($170.00) | 3.40 | Obtain and distribute of case transfer order for attorney review (1.2)... transmit schedules for attorney review (.3); identify and prepare copies of pleadings for attorney review (1.1). |
| 11/28/01 | Sabrina M Mitchell ($85.00) | 0.10 | Prepare SOFA's for attorney review |
| 11/28/01 | Benjamin J Alke ($70.00) | 2.00 | File materials from Nov. 21 hearing (1.6); file Fresenius transaction documents (.4). |
| 11/28/01 | Marguerite M Melvin ($150.00) | 2.40 | ... forward pleading to D. Boll for review (.2)... |
| 11/29/01 | Shirley A Pope ($155.00) | 5.50 | Review correspondence and file (2.5); prepare documents requested by D. Rosenbloom (1.0); update media files (1.0); prepare documents for attorney review (1.0). |
| 11/29/01 | Kimberly K Love ($155.00) | 2.00 | Prepare and organize various materials, fraudulent transfers, declaratory judgment for attorney review. |
| 11/29/01 | Brigitte F Windley ($170.00) | 2.90 | ... review various case documents to assign central file categories to same in preparation for central filing (1.4). |
| 11/29/01 | Sabrina M Mitchell ($85.00) | 5.80 | Review the online docket and update the motion status chart (.6); retrieve and duplicate the debtors response to the case management motion (.2)... update the case file index with new documents and prepare for inclusion into central files (1.4). |
| 11/29/01 | Benjamin J Alke ($70.00) | 5.80 | Update Concordance with new pleadings (1.0); update Concordance database with transcript (.4); prepare copies of PD committee Sept. Reply brief and CMO Reply brief for attorney review (.8); organize client documents re Hi Temp Cement for attorney review (3.6). |
| 11/30/01 | Shirley A Pope ($155.00) | 3.50 | Review correspondence and file same (.5); update reference files re fraudulent conveyance (1.0); review pleadings (.5); prepare documents for attorney review (1.5). |
| 11/30/01 | Kimberly K Love ($155.00) | 1.00 | Prepare precedent materials for attorney review. |

| | | | |
|---|---|---|---|
| 11/30/01 | Brigitte F Windley ($170.00) | 2.50 | Prepare case information for attorney review (.3); prepare CM/ECF application materials for attorney review (.5); review various case documents to assign central file categories in preparation for central filing (.7)... |
| 11/30/01 | Sabrina M Mitchell ($85.00) | 2.30 | Update the case file index with new documents and prepare for inclusion into central files (.4)... |
| 11/30/01 | Benjamin J Alke ($70.00) | 7.00 | Prepare copies of Informational Brief and CMO Reply brief for attorney review (.6); file Barbanti deposition transcript and 11/21 hearing materials (.8); update concordance with new pleadings transferring case to Judge Wolin (1.8); prepare copy of PI Opposition to CMO and distribute (.6)... |
| 11/30/01 | Marguerite M Melvin ($150.00) | 0.50 | Copy and distribute articles of interest on asbestos cases for attorney review. |

<u>Matter 21 - Claim Estimate, Objection and Resolution - Fees</u>

| | | | |
|---|---|---|---|
| 11/13/01 | Shirley A Pope ($155.00) | 4.30 | Review correspondence and update correspondence file (1.5)... update general reference re Grace main file (1.0). |
| 11/14/01 | Sabrina M Mitchell ($85.00) | 0.30 | Update the proof of claims spreadsheet. |

<u>Matter 22 - Contested Matters/Adversary Proceedings - Fees</u>

| | | | |
|---|---|---|---|
| 11/30/01 | Christopher B Sullivan ($365.00) | 1.60 | Attend to matters re creation of witness files (.2) |

<u>Matter 30 - Hearings - Fees</u>

| | | | |
|---|---|---|---|
| 11/19/01 | Shirley A Pope ($155.00) | 3.00 | Request materials from Purchasing to set up hearing exhibits (1.0); meet with Tech Department concerning Powerpoint presentation equipment and W.R. Grace documents on the Chicago i drive (1.0)... |

| 11/19/01 | Shirley A Pope ($155.00) | 6.00 | Review correspondence re powerpoint slides (.5); ....telephone conference with ShowWorks re equipment required for powerpoint presentation (.5). |
| 11/20/01 | Shirley A Pope ($155.00) | 14.40 | Meet with ShowWorks re equipment needed for Powerpoint presentation (1.0)... |
| 11/20/01 | Benjamin J Alke ($70.00) | 11.00 | Provide home office support for the litigation hearing team. |
| 11/21/01 | Emily J Knox ($80.00) | 5.10 | ...prepare courtroom for hearing (1.0); organize hearing materials for shipment to courtroom (3.3). |
| 11/21/01 | Benjamin J Alke ($70.00) | 4.50 | Provide home office support for hearing litigation team. |
| 11/28/01 | Shirley A Pope ($155.00) | 14.40 | Organize materials for filing re November 21, 2001 hearing. |
| 11/29/01 | Benjamin J Alke ($70.00) | 1.20 | File materials from 11/21 hearing. |

*Total: 189.6/$22,748.50*

<u>Response Exhibit 1</u>

In paragraph 6 and Exhibit A thereto, and in paragraph 7 and Exhibit B thereto, respectively, the Initial Report requests an explanation of two inter-related issues: (a) the number of professionals assigned to a particular task and (b) the presence of more than one professional at particular meetings, hearings and conferences.  The Fee Auditor is well aware of the general explanation, which is essentially the same for both of the Fee Auditor's comments.  It has been extensively discussed at the August 26, 2002, hearing, and explained by K&E in its responses to the Fee Auditor's initial and final reports regarding the fourth interim period of January 1, 2002, through March 31, 2002.

Simply stated, these chapter 11 cases are asbestos mass tort liability bankruptcy cases, and perforce, comprise a number of quite thorny asbestos-related claims resolution issues, including personal injury, Zonolite Attic Insulation ("ZAI") and other property damage claims.  There are also fraudulent transfer allegations that must be litigated, not to mention the myriad bankruptcy issues that arise in chapter 11 cases of this magnitude.  Not surprisingly, the workload in these chapter 11 cases is at once immense and complex.

To efficiently cope with this immense workload, K&E has adopted a team approach, with various parts of the team concentrating on particular issues.  In many instances, such as development of the case management order ("CMO"), motion and related CMO pleadings and the various venue pleadings, each of which are discussed below, K&E's attorneys performed a variety of complex and substantial tasks.  In others, such as the automatic stay matters, there were different attorneys assigned to several discrete and independent tasks.

Moreover, unlike the fourth interim period, when the outline of the litigation matters was fairly well established and the direction of the cases was very clear, the earlier periods were focused on (a) stopping all ancillary litigation in various courts around the country, which required obtaining a preliminary injunction, (b) understanding the unique claims resolution issues involved in the Debtors' bankruptcy, especially regarding the ZAI claims, (c) developing an approach to case management and (d) developing a claims bar date program for these chapter 11 cases that was tailored for two separate tracks - - nonasbestos-related claims and asbestos-related claims.  Indeed, these objectives reflect the very reason why these chapter 11 cases commenced in the first place - - to permit the Debtors to deal with a mounting tidal wave of asbestos-related claims and litigation in a single forum and provide a basis for settling those claims.

Specifically:

(a)    <u>Automatic Stay Tasks (Exhibit A-1)</u>.

The time entries in Exhibit A-1 to the Initial Report conflate over a dozen different assignments or tasks that K&E attorneys accomplished during the July 2001 timeframe.  These tasks are a small portion of the time spent by K&E attorneys on literally dozens of different issues relating to enforcement of the automatic stay as well as the myriad issues relating to the formulation and negotiation of the scope of the preliminary injunction (the "Preliminary Injunction") that the Bankruptcy Court put into place on May 3, 2001, a copy of which is attached hereto as <u>Exhibit A</u>,

barring the prosecution of currently pending asbestos-related actions and fraudulent transfer actions against certain affiliates of the Debtors.

Obtaining the proper scope of injunction was very important to the Debtors.  A number of issues arose after the Preliminary Injunction was in place that highlighted the fact that its scope, as originally drafted, was somewhat too narrow.  The Debtors therefore moved the Bankruptcy Court for a modification of the Preliminary Injunction to encompass many of these matters.  On January 22, 2002, the Bankruptcy Court entered an order modifying the Preliminary Injunction, a copy of which is attached hereto as Exhibit B, listing the new matters that the modified Preliminary Injunction covered.

Specifically:

Mr. Nylen, a 2001 summer associate working under Mr. Kapp's direct supervision, drafted a pleading to request that the automatic stay be lifted to permit an appeal by the defendant in a patent infringement case to proceed.  Prior to the inception of the chapter 11 cases, the Debtors had successfully prosecuted this case as plaintiff and won a judgment at trial.  The Debtors sought to have the appeal concluded so that they could collect on the judgment.  Ultimately, the need to file pleadings was obviated when Ms. Baer, who became involved as a result of other matters she was working on, and other non-K&E attorneys for the Debtors were able negotiate a settlement with the defendant (and which relates to Ms. Baer's July 9 time).

As her time entries indicate, Ms. Baer also worked on a wide range of other issues relating to the automatic stay and the Preliminary Injunction.  Ms. Baer's July 5 time entries relate to modifying the Preliminary Injunction to include new matters.  As mentioned above, the Bankruptcy Court modified the Preliminary Injunction on January 22, 2002, to include a list of new matters. Generally, Ms. Baer was responsible during this period for all matters pertaining to the Preliminary Injunction (which encompassed the *Smolker* products liability and *Abner* asbestos cases, the *Samson Hydrocarbon* matters (environmental), the *Libby* cost recovery action, the *Bettacchi* (and other employment) matters and those automatic stay matters involving indemnity claims (the latter relating to Ms. Baer's time entries for July 11, 18 and 31).

Ms. Baer's July 10 time relates to the *Honeywell* motion to lift the automatic stay, which was one of several *Samson Hydrocarbon* matters covered by the Preliminary Injunction.  Prior to the Petition Date, the Debtors had sold their petroleum business to Samson and, in connection therewith, had given Samson certain indemnities relating to environmental matters, which had been encompassed by the Preliminary Injunction.  Indeed, Ms. Baer is still responding to inquiries from Samson on new environmental indemnity matters.

In addition to supervising Mr. Nylen in the patent infringement matter, Mr. Kapp spent time on several other discrete automatic stay-related tasks.  First, as the "foreign tax authority" and "government regulatory authority" time entries show, Mr. Kapp fielded a number of questions from the Debtors' management concerning the scope of applicability of the automatic stay to governmental bodies, both foreign and domestic.  The balance of Mr. Kapp's time entries relate to the Debtors' motion to extend time to remove actions, attached hereto as Exhibit C which was heard

at the July 19, 2001, hearing, and pursuant to which the Bankruptcy Court entered an order on July 19, 2001, a copy of which is attached hereto as Exhibit D.

Roger Higgins spent time during July 2001 investigating the applicability of the automatic stay and the Preliminary Injunction to an asbestos-related worker's compensation case that was pending in Montana state court.  Mr. Higgins worked closely with local counsel in resolving that matter.

(b)   Fraudulent Transfer Issues (Exhibit A-2).

Exhibit A-2 to the Initial Report refers to a number of discrete but related tasks that K&E was performing in the early days of these chapter 11 cases with respect to one of the central issues: whether the Sealed Air and Fresenius transactions were fraudulent transfers.  As the Fee Auditor is aware, and as discussed in K&E's responses to the Fee Auditor's reports on the fourth interim period and at the August 26, 2002, hearing, the Debtors had a duty to investigate possible fraudulent transfer claims regarding to determine whether the claims were worth pursuing.

Based upon this review, which commenced in earnest in July 2001, the Debtors concluded in early 2002 that these transactions were not fraudulent transfers and that there were no fraudulent transfer claims worth pursuing.  During July 2001, Michelle Browdy was the K&E partner primarily responsible for this factual inquiry.  In late July, Scott McMillin, a senior K&E associate, was assigned to assist Ms. Browdy, having been reassigned from other tasks in these chapter 11 cases.  They worked closely together for the remainder of 2001 and into 2002 on this very large and factually complex project.

As part of this review, Ms. Browdy and Mr. McMillin drafted detailed outlines of the their intensive factual investigation.  K&E subsequently used these outlines in the fraudulent transfer adversary proceeding commenced by the PI and PD Committees in 2002, in which the Debtors have intervened.  As the Fee Auditor is aware, these matters were discussed extensively at the August 26, 2002, hearing and in the Debtors' responses to the Fee Auditor's initial and final reports on the fourth interim period.

K&E also performed a number of other related tasks during July 2001.  First, K&E filed an opposition to the PI and PD Committees' motion to commence fraudulent transfer adversary proceeding.  See Exhibit E.  Mr. Bernick, as the senior litigation partner, and Mr. McMillin, who assisted him, were the primary authors of this pleading to which Ms. Baer and Mr. Kapp also lent their bankruptcy expertise.

K&E also drafted a 30-page internal memorandum to the client which provided a thorough legal analysis of the fraudulent transfer claims.  This privileged document was important to management in assessing the nature and validity of the fraudulent transfer claims that the PI and PD committees sought to bring against Sealed Air and Fresenius.  Finally, some time was spent in basic legal research on the various fraudulent transfer and related issues in support of all of these endeavors.

K&E's approach to fraudulent transfer, as has been discussed previously with respect to the fourth interim period, and as the Fee Auditor is aware, is team-based.  Ms. Browdy and Mr.

McMillin are the litigation attorneys primarily responsible for these tasks during this period, working closely with Mr. Bernick, the senior litigator assigned to these cases. Ms. Baer and Mr. Kapp are the bankruptcy counsel who provided support on an as-needed basis.

(c)    Venue Issues (Exhibit A-3).

Venue issues were critical in the early days of these chapter 11 cases because venue was implicated in numerous ongoing litigation matters in which the Debtors were then attempting to transfer venue to the Bankruptcy Court. The time entries cited in Exhibit A-3 to the Initial Report relate to three distinct matters, the *Libby* cases, the *Abner* case and the *Smolker* case.

The *Libby* cases are a pair of related, complex and high stakes cases in which Mark Grummer, Ms. Baer, Mr. Bernick and Reed Oslan, an environmental litigator, each have played a distinctive role. Prior to, and independent of, the chapter 11 cases, the Environmental Protection Agency and the Department of Justice had sued the Debtors in two separate CERCLA (environmental) actions related to the Libby, Montana Superfund site. The total recovery sought in the two cases may exceed $100 million. Prior to the chapter 11 cases commencing, the *Libby* cases had been pending in federal district court in Montana, where the site is located. The Debtors believed that the Bankruptcy Court was best able to resolve these issues because the Libby asbestos issues are related to the question of the Debtors' asbestos related liabilities. The Debtors therefore drafted and filed pleadings requesting that venue be transferred to Delaware. The venue arguments for such a transfer were complex, requiring substantial legal research and factual development. Because of the magnitude and sensitivity of the *Libby* matter, the briefs required review and approval by various client representatives and by Debtors' outside law firm for the Montana cases (Holme Roberts & Owen) as well as substantial internal K&E development and review.

Mr. Grummer, an environmental/CERCLA attorney with significant bankruptcy and litigation experience, accounted for the bulk of the time in the *Libby* matter. He performed most of the legal and factual research, wrote the briefs and affidavits, some of which are attached hereto as Exhibit F, obtained and incorporated comments from multiple K&E and client reviewers and served as contact point for Grace's outside counsel on the Montana cases. Ms. Baer provided the principal input on bankruptcy-related issues and reviewed drafts of the briefs pertaining to those issues. She also participated in strategy conferences as the K&E team formulated its venue brief. Mr. Bernick's time, which was relatively de minimis, was restricted to reviewing the venue brief in the *Libby* cases. Mr. Oslan also reviewed the draft briefs and provided considerable expertise on particular venue and environmental matters.

The *Abner* case is a ZAI and asbestos property damage class action suit that was being maintained in California state court. As discussed above, the Debtors' goal with such litigation was to transfer it to the Bankruptcy Court in order to resolve all such claims in a single forum. The Debtors ultimately were successful in transferring the *Abner* case. Ms. Baer worked on matters regarding removal of the *Abner* case from state court to the bankruptcy court for the Northern District of California (San Francisco) and the subsequent change of venue to Delaware. Mr. McMillin assisted Ms. Baer on the litigation side of this matter in the early going and was later replaced by Christopher Sullivan when he was reassigned to other aspects of these chapter 11 cases.

Contemporaneously therewith, Ms. Baer worked on matters regarding removal of the *Smolker* case from state court to the bankruptcy court for the Central District of California (Los Angeles) and the change in venue to the Delaware Bankruptcy Court. The *Smolker* case is a products liability case involving numerous third parties as named defendants in which a silica gel product manufactured by the Debtors was at issue, and which was filed in California state court. Judge Bluebond was the bankruptcy court judge who heard the change venue motions. The plaintiffs in this matter contested the change of venue and Judge Bluebond denied the Debtors' venue transfer motion. Subsequently, the Bankruptcy Court enjoined the *Smolker* action when it modified the Preliminary Injunction. This turn of events required K&E attorneys to extensively brief this matter and Bennett Spiegel, a partner in K&E's Los Angeles office, argued the matter before Judge Bluebond and assisted in briefing California law-specific issues. Mr. McMillin assisted in the early stages of this matter before he was reassigned because of his workload in other areas.

Mr. Bernick, as the senior K&E litigation partner, supervised all of these efforts and performed a supporting role of providing expert advice as needed.

(d)    Class Action Issues (Exhibit A-4).

Prior to knowing how the Bankruptcy Court would procedurally handle the various groups of asbestos claimants' claims, the Debtors anticipated, and prepared for, groups of claimants to file class proofs of claim. This anticipatory research proceeded down several tracks simultaneously. It also required K&E attorneys to review court transcripts and exhibits used in the *Barbanti* case in Washington, the *Price MDL* cases pending in Pennsylvania and the *Libby* cost recovery actions in Montana, a task involving thousands of pages of various court documents. K&E attorneys also drafted class action sections for the CMO motion, which is discussed below, although those sections ultimately were not used for strategic reasons. Finally, K&E used much of this class action background research in the class notice brief and motions to dismiss the adversary proceedings filed by the ZAI claimants and the medical monitoring claimants. See Exhibits G (class notice brief), H (motion to dismiss ZAI Claimants' Adversary Proceedings Complaint) and I (motion to dismiss Medical Monitoring Claimants' Adversary Proceedings Complaint). Kelly Fabian was the attorney primarily assigned to this task. Mr. Bernick, as the senior K&E litigator, supervised her and Mr. Running provided expert advice on particular issues.

(e)    Document Depository Tasks (Exhibit A-5).

K&E attorneys spent considerable time on several issues relating to the maintenance of document depositories. First, Mr. Sullivan was the lead K&E attorney who spent a great many hours learning the contents of a 1.5 million document depository located in Massachusetts. Second, Mr. Sullivan worked with Mr. Bernick on a response to a motion by the PD Committee to establish a single document depository. See Exhibit J. Mr. Kapp was the bankruptcy partner responsible for monitoring this matter for bankruptcy-related issues.

Exhibit A-5 to the Initial Report also lists time spent by Ms. Fabian regarding study of documents in a "College of Knowledge" binder, which is a completely separate issue. Ms. Fabian attended a conference sponsored by the Debtors' in-house counsel as a means of understanding Debtors-specific asbestos-related issues. The "College of Knowledge" binder was a compilation of

key documents that these attorneys spent considerable time mastering as key building block of the asbestos-related claims resolution process.

      (f)      <u>CMO Brief (Exhibit A)</u>.

K&E used a team approach to drafting the various case management order ("CMO") pleadings discussed in Exhibit A to the Initial Report. K&E adopted this approach because, as the Fee Auditor is aware from the August 26, 2002, hearing and K&E's responses to the Fee Auditor's initial and final reports on the fourth interim period, the litigation issues in these chapter 11 cases are manifold and complex and therefore have necessitated K&E's adopting a team approach. Moreover, obtaining a case management order was a necessary antecedent to commencing that litigation process. In May 2001, at the first omnibus hearing, Judge Farnan, who originally was hearing these chapter 11 cases until they were reassigned on November 21, 2001, requested the Debtors draft the case management order to lay out their vision of the litigation process.

The Debtors' CMO motion, which was the first of the Debtors' case management pleadings, the exhibits thereto and the Debtors' reply to Committee objections to the CMO motion (the "CMO reply") are each attached hereto as <u>Exhibits K</u>, <u>L</u> and <u>M</u>, respectively. The time entries questioned in Exhibit A to the Initial Report relate to the enormous effort that K&E put forth over several months to draft their CMO reply. Indeed, the CMO reply was a major undertaking in terms of complexity and intricacy of the issues involved, not only because of the substantial nature of the Committees' objections, but also because of the need to fully explicate the Debtors' approach to litigation protocol, claims analysis, claims estimation, and notice to claimants.

In terms of assignments, Mr. Running was the primary draftsperson of the CMO motion. Sarah Marmor was the primary draftsperson of the Debtors' CMO reply because Mr. Running had become very involved in developing litigation strategies related to asbestos personal injury claims.

Specifically, the CMO reply was developed in the following manner:

Ms. Marmor prepared, with extensive input from Mr. Bernick as the senior litigator, the critical, and extensive, summary section of the CMO reply. Mr. Running drafted section I of the CMO reply. He worked extensively with Jay Hughes (of Grace) and an expert to review claims files and interpret and extrapolate data. In drafting that section, he also drew upon the expertise of K&E attorneys such as Mr. Hardy and Ms. Boll, each of whom had worked extensively on the *Babcock & Wilcox* case, including detailed claims analysis. Renee Wicklund was the associate who assisted Ms. Marmor and Mr. Running with research on their respective sections and Ms. Pope and Benjamin Alke (who has since left the firm) were the paraprofessionals who assisted them in preparing charts, cite checking the CMO reply and assembling exhibits thereto.

Mr. Freedman and Ms. Boll prepared section II of the CMO reply, the estimation section. They had done similar work in *Babcock* and were the logical candidates to draft this critical section, even given Mr. Freedman's somewhat higher rates. Because of their *Babcock* experience, they had state-of-the-art information and knowledge and thus were far more efficient - - and effective - - in drafting this particular section than other members of the K&E litigation team would have been. Indeed, their expertise reduced the time and cost involved in drafting section II of the CMO reply.

Claims estimation, as one might well imagine, is a complex topic, and extremely controversial and complicated in the mass tort context. Moreover, there is very little published guidance because, to date, most mass tort cases have tended to be settled rather than litigated. In addition, claims estimation in past cases has not always been successful, making it even more important to get the estimation process "right" in these chapter 11 cases. K&E is attempting in these chapter 11 cases to chart a better course with an approach that will deliver superior claims estimations and thus, at the end of the day, a more equitable plan of reorganization.

Section III of the CMO reply, which dealt with litigation protocol, built upon work done in the CMO motion. The litigation protocol is a detailed schedule of discovery, briefings and hearings designed to resolve the substantive issues of claims estimation and claims analysis, as well as ZAI asbestos personal injury and property damage litigation. Although Ms. Marmor had overall charge of the CMO reply, she relied heavily on work done by Mr. Sullivan, the partner in charge of ZAI and other asbestos-related property damage issues (along with Mr. Hardy to some extent), and Mr. Running, the partner in charge of asbestos-related personal injury issues. Ms. Wicklund assisted Mr. Running in personal injury-related legal research and other matters. The sections relating to case management of personal injury claim matters explicitly detail the medical evidence and the approaches to analyzing that evidence. In the final analysis, the litigation protocol essentially sets forth the Debtors' ideas on how to manage a mass tort case in the bankruptcy context in order to overcome a badly broken tort system.

Mr. Running and Ms. Marmor, with assistance from Ms. Wicklund, drafted section IV of the CMO reply, which responded specifically to objections raised by the PI and PD Committees.

Ms. Baer drafted section V of the CMO reply, which explained how the Debtors' very comprehensive proposed notice program would work. In order to prepare this section, Ms. Baer worked extensively with the Debtors' notice expert and modified the Debtors' notice program to respond to the numerous objections raised by the PD Committee. Exhibits A and B 1-18 to the CMO reply all relate to the proposed notice program. During this period, extensive discovery, including several depositions, was taken regarding the Debtors' proposed notice program. Section V of the CMO reply underwent weeks of revisions and amendments arising from extensive negotiations that took place between the Debtors, spearheaded by Ms. Baer, and other constituencies, especially the PD Committee.

During the period questioned by the Initial Report, Ms. Baer worked primarily alone on this complex matter except for assistance on certain discrete matters, such as Todd Hilsee's deposition. Ms. Boll, who had worked on the *Babcock* notice program, assisted Ms. Baer in some aspects of this matter, primarily with respect to deposing Mr. Hilsee, the PD Committee's notice expert. For a further explanation of this time, see *infra* K&E's response to Exhibits B-13 and B-17 to the Initial Report.

Mr. Running and Ms. Baer prepared section VI of the CMO reply, which dealt with the forms of proofs of claim, and Exhibits D through J of the CMO reply, which were the forms themselves. The PD, ZAI and PI proofs of claims were not simple. Mr. Running drafted the original form of personal injury proofs of claim and Mr. Sullivan drafted the original form of property damage proofs of claim. Ms. Baer assisted with the drafting of both forms of proofs of claim with respect to

bankruptcy-related issues along with some assistance from Ms. Boll as a result of her *Babcock* experience. Ms. Baer also extensively revised the various forms of proofs of claim to incorporate responses to objections made by the Commercial Committee and the PD Committee.

Mr. Bernick worked extensively with each of the K&E attorneys on each of their particular sections of the CMO reply so that the reply accurately reflected his vision of these chapter 11 cases. So important is the issue of case management, accounting for the vast amount of time and energy expended by K&E on the matter, that K&E believes the CMO motion and the CMO reply to be, without doubt, the most significant pleadings filed to date in these chapter 11 cases.

Indeed, the CMO motion and the CMO reply together were the Debtors' single best opportunity to inform the Bankruptcy Court of their rationale for having filed these chapter 11 cases and how they could most efficiently use the chapter 11 process to successfully solve their asbestos mass tort liability crisis. And thus they set forth the Debtors' vision of how to proceed substantively in every aspect of these chapter 11 cases. More specifically, they provided the framework for resolving the myriad classes of asbestos-related claims in these chapter 11 cases and have resulted in a bar date and approved forms of proofs of claim for non-asbestos and asbestos property damage. They further resulted in a discovery schedule for resolving the ZAI science issues. The manner for resolving asbestos-related personal injury claims is fully briefed but has not yet been decided by the Court.

      (g)    <u>CMO Hearing (Exhibit A)</u>.

In June 2001, the Debtors requested Judge Farnan set a hearing date on the case management order as early as August 2001, with a concomitantly expedited briefing and reply schedule for the CMO motion, the Committees' objections and the CMO reply. The Debtors believed that such an expedited schedule for establishing case management procedures would set a clear course for ultimately resolving these chapter 11 cases. The Bankruptcy Court ultimately gave the Committees until early September to respond to the CMO motion and set the CMO evidentiary hearing for November 21, 2001 (the "CMO Hearing").

Judge Farnan intended that all of the matters outlined in the CMO motion and CMO reply were to be presented at the CMO Hearing. K&E utilized its CMO motion and CMO reply team to prepare for the hearing. Mr. Bernick developed a power point slide show of all the constituent parts of the CMO motion and CMO reply and the issues raised therein. Developing this presentation took Mr. Bernick many hours to prepare with assistance from Ms. Pope and her paraprofessionals and inputs from the various K&E attorneys responsible for each of the constituent parts.

In particular, Mr. Freedman worked with Mr. Bernick extensively to prepare this presentation, especially with regard to claims estimation, issues related to the litigation protocol and bankruptcy issues. Mr. Freedman's advice and counsel were especially important because he was K&E's lead bankruptcy attorney in the *Babcock & Wilcox* matter. Mr. Freedman's presence saved the Debtors' estates considerable time and resources that would have had to have been expended if another bankruptcy specialist had been brought fully up to speed on these particular issues - - which otherwise would have been necessary but for Mr. Freedman's presence.

Since the CMO Hearing was evidentiary in nature and the Court was permitting witness testimony, the PD Committee and the Debtors exchanged witness lists. Each side spent many hours preparing their own witnesses for deposition and for testimony at the hearing. Each side also deposed some of the witnesses named by the other side, necessitating K&E's preparations to take those depositions. Indeed, Exhibits B-13 and B-17 to the Initial Report isolate one such preparation for, and taking of, a deposition - - that of Todd Hilsee, the PD Committee's notice expert.

Ms. Baer was responsible for putting on expert testimony from the Debtors' notice expert, Kathy Kinsella, regarding the Debtors' detailed and comprehensive notice program and forms of proofs of claim. She prepared Ms. Kinsella for her testimony. Ms. Baer also prepared a power point slide presentation to accompany the testimony. Ms. Boll, as discussed below in more detail in response to Exhibits B-13 and B-17 to the Initial Report, assisted Ms. Baer in preparing for cross-examine Mr. Hilsee regarding certain aspects of the notice program.

Mr. Kapp was responsible for ensuring that the Debtors were procedurally ready for the CMO Hearing. Mr. Kapp, a bankruptcy partner, supervised the filing of all appropriate pleadings and appearances prior to the CMO Hearing and kept the client fully apprised of all developments and briefed the client on how K&E expected the hearing would proceed.

Mr. Sullivan prepared the form of revised case management order that the Debtors sought to have entered by the Court. This form of order set forth, among other things, a detailed litigation protocol as the Debtors would have it proceed. Mr. Sullivan also prepared exhibits and information relating to ZAI and asbestos property damage for the hearing.

Mr. Running was in charge of preparing for cross examination of two experts that the PD Committee named as witnesses for the hearing, Francine Rabinowitz and W. D. Hilton. The PD Committee named these experts, whom the Debtors had not previously known, at the last minute. The PD Committee also refused to make them available for deposition, going to the extent of serving on the Debtors on the evening prior to when the hearing was scheduled to have commenced a solid 10-inch stack of documents produced by these witnesses. Mr. Running was thus forced to investigate these witnesses and determine their particular areas of expertise at the last moment. He then had to consult the Debtors' own expert concerning these two witnesses and to prepare the Debtors' expert as a potential rebuttal witness in order to be prepared for the hearing.

Mr. McMillin did not work on the CMO Hearing. His November 12 time entry on Exhibit A to the Initial Report instead pertained in part to the fraudulent conveyance document search performed at the Wachtell, Lipton, Rosen and Katz offices, which the Initial Report questioned in Exhibit B-11 thereto. The remainder of his November 12 time entry pertained to work Mr. McMillin performed regarding the Debtors' opposition to the Kane motion to lift the automatic stay and certain witness interviews relating to fraudulent conveyance matters. Mr. Oslan's November 13 time entry likewise pertains to his consideration of issues relating to fraudulent conveyance.

K&E used a number of paraprofessionals to assist in preparing for the CMO Hearing to support the immense K&E attorney effort to prepare for the hearing because of its extensive evidentiary scope and its importance to the eventual outcome of these chapter 11 cases. As mentioned above, Shirley Pope worked closely with Mr. Bernick to prepare or otherwise create a

great number of exhibits for the hearing. Ms. Pope also organized and indexed the dozens of boxes of documents necessary to support K&E's preparations for and presence at the hearing. Ms. Pope and Emily Knox (who has since left the firm) traveled to Wilmington, Delaware for the CMO Hearing to provide needed support during the final preparations for the hearing and during the hearing itself. Mr. Alke provided paraprofessional support at the K&E Chicago offices for the K&E team. Kimberly Love, who was the senior legal assistant assigned to the *Babcock & Wilcox* case, provided assistance to K&E's attorneys and paraprofessionals regarding *Babcock*-related materials relevant to the CMO Hearing. See also, Debtors' response to Exhibit E to and ¶ 11 of the Initial Report.

Consistent with the trial-like scope of the CMO Hearing, K&E's team in Wilmington included Messrs. Bernick, Kapp, Baer, Running, Pope and Knox. The team arrived on November 20, 2001, the day before the hearing, and worked a good part of the night on final preparations for the hearing, including reviewing additional asbestos pleadings that arrived at the last minute.

On the morning of November 21, 2001, while the entire team was putting final touches on exhibits and witness preparation, Ms. Baer was supervising the set-up of equipment needed for the various presentations. Judge Farnan called Ms. Baer into his chambers and informed her that the hearing was being cancelled because of the decision of the Court of Appeals for the Third Circuit to reassign the case to another judge. The Judge indicated that he realized that all of the parties were in town and had spent considerable time preparing for the hearing. He related to Ms. Baer that the Court of Appeals for the Third Circuit had decided on the previous evening to reassign the chapter 11 cases and a number of other asbestos mass tort liability chapter 11 cases before the Delaware Bankruptcy Court to another judge who, at that time had yet to be named (Judge Wolin ultimately was assigned to preside over these chapter 11 cases). Judge Farnan stated that, under these circumstances, he did not believe it was appropriate to proceed with the CMO Hearing because any decisions forthcoming from that hearing would, as discussed above, set the direction for these chapter 11 cases and he did not want to preempt the newly assigned judge's prerogatives relating thereto.

As the Fee Auditor is aware from the August 26, 2002, hearing and the K&E responses to the Fee Auditor's initial and final reports regarding the fourth interim period, the chapter 11 cases were subsequently assigned to Judge Wolin, who bifurcated them to expedite resolution (and hence the case management order issues). The property damage, ZAI and non-asbestos claims portions of the case management order ultimately were heard by Judge Fitzgerald in March and April 2002. The personal injury claims portion of the case management order has been further briefed by the parties and is scheduled for hearing before Judge Wolin in October 2002.

Although K&E expended a great deal of time and resources preparing the CMO motion and the CMO reply and preparing for the CMO Hearing, which was ultimately cancelled, it was valuable and necessary for the preservation of the Debtors' estates. Furthermore, virtually all of the materials produced during this period were either used for the property damage and non-asbestos portions of the case management order entered by Judge Fitzgerald or will be used in the asbestos-related personal injury case management order now before Judge Wolin.

Response Exhibit 2

    1.  <u>Multiple Professionals Attending Hearings, Meetings and Conference Calls (¶ 7 and Exhibit B)</u>.

As discussed above, and in the Debtors' responses to the Fee Auditor's initial and final reports regarding the fourth interim period, and as discussed at the August 26, 2002, hearing, K&E's attorneys operate in teams because of the complex nature of asbestos mass tort liability cases in general, and these chapter 11 cases in particular. Very often, therefore, the subject matter of a hearing, meeting or conference call will fall within the bailiwick of two or more K&E attorneys, making it far more efficient (and advantageous to the Debtors) to have those attorneys attending the particular hearing or meeting than to have one attorney spend the time coming up to speed on issues that are not within his or her particular purview.

    (a)  <u>Conference Call on July 10, 2001 (Exhibit B-1)</u>.

Mr. Running and Mr. Kapp participated in this telephone conference to assist Grace's general counsel, David Siegel, in preparing his report to the Debtors' board of directors on the status of the chapter 11 cases. Mr. Running participated in this telephone status conference to respond to questions regarding litigation issues and Mr. Kapp participated to respond to questions regarding bankruptcy matters.

    (b)  <u>Client Meeting on July 11, 2001 (Exhibit B-2)</u>.

The Debtors' management held this July 11, 2001, meeting in Washington, D.C., to (i) brief the K&E asbestos personal injury claims litigation team, consisting of Mr. Bernick, Mr. Running, Mr. Hardy and Mr. Sullivan, on Grace's personal injury experts and their prepetition expert testimony and (ii) discuss and develop the Debtors' chapter 11 litigation strategies, including the selection of experts. The Debtors' general counsel and most senior in-house attorneys responsible for managing Grace's prepetition personal injury litigation participated in this meeting. The Debtors had requested that each of the K&E attorneys listed above participate in this meeting to ensure that they directly benefited from the briefing and participated directly in developing the Debtors' litigation strategy. As discussed above, each of these K&E attorneys was responsible for a particular portion of litigation in these chapter 11 cases and Mr. Bernick is the senior K&E litigator assigned to these chapter 11 cases.

(c)    Conference with D. Rourke on July 11, 2001 (Exhibit B-3).

This was a follow-on meeting to the July 11 meeting discussed above. Messrs. Bernick, Running and Hardy and Jay Hughes, one of the Debtors' in-house counsel, met with Dr. Daniel Rourke of APRC, to discuss preparing a statistical sample and analysis of the Debtors' prepetition claims. This project ultimately resulted in Dr. Rourke's affidavit to the Bankruptcy Court in connection with the personal injury aspects of the CMO motion. Mr. Bernick participated in the meeting to hear directly from Dr. Rourke and Mr. Hughes about the available data and the sampling and analytical methods to be used and to ensure that the project was focused on relevant issues and would be completed in time for the expected CMO hearing (which was then scheduled for November 2001, as discussed above). Mr. Hardy provided input to project parameters based on his extensive prior expert preparation experience in other lawsuits. Mr. Running participated because he is primarily responsible for the litigation protocol for asbestos personal injury claims, and was working directly with Dr. Rourke and Mr. Hughes on projects related thereto.

(d)    July 19, 2001, Hearing (Exhibit B-4).

As the Fee Auditor is aware from the August 26, 2002, hearing and the Debtors' response to comments in the Fee Auditor's initial and final reports regarding various hearings during the fourth interim period, Mr. Bernick and Mr. Kapp have distinct areas of expertise.

Mr. Bernick, a litigator, is the senior partner in charge of the K&E team and has overall responsibility for these chapter 11 cases. As the Fee Auditor is aware, Mr. Bernick is not a bankruptcy specialist, although he is very experienced in handling asbestos-related bankruptcy cases. He focuses primarily on the litigation matters at the heart of these chapter 11 cases. He has a team of litigation and other specialists who are divided into smaller units assigned to the major litigation matters. Mr. Bernick attends those hearings at which litigation matters are before the Court.

Mr. Kapp, a bankruptcy specialist and K&E partner, supervises the bankruptcy team and is generally responsible for all bankruptcy-related matters in these chapter 11 cases. He also develops the agenda (and ensures that the K&E team is prepared for every matter on the agenda) for each omnibus hearing. Mr. Kapp's presence is thus generally required at each hearing.

At this particular hearing, as Exhibit N shows, a number of litigation-related items were before the Bankruptcy Court, including the Debtors' CMO motion, motions by the Committees to prosecute fraudulent transfer claims and to establish a central document depository and a motion for relief from the automatic stay, each of which required Mr. Bernick's attention. A number of contested bankruptcy-related matters were also before the court, including a motion to extend the time to remove actions and a motion to pay indemnification to certain former employees, each of which required Mr. Kapp's particular attention. Samuel Schwartz, a bankruptcy associate, attended this hearing because he was responsible for matters regarding the interim compensation of professionals and assisted Mr. Kapp on a wide range of issues.

(e)    <u>Meeting with Reed Smith and Client on August 2, 2001 (Exhibit B-5)</u>.

This August 2, 2001, meeting was held in Chicago to enable Mr. Siegel and Richard Finke, the Debtors' senior in-house counsel responsible for property damage litigation, to develop and coordinate the litigation strategy for defending against ZAI and MK-3 property damage claims with the Reed Smith litigation team (which is the Debtors' lead counsel in the ZAI science trial) and the K&E team. Mr. Bernick participated to directly benefit from Mr. Finke's reports and the Reed Smith litigation team's assessment of the Debtors' prepetition litigation strategy and results and their assessment of the Debtors' chapter 11 litigation strategies. Mr. Hardy participated because of his extensive prior experience in preparing experts to testify on asbestos and other related liability issues. Mr. Running participated because he is primarily responsible for developing the MK-3 litigation strategy in this chapter 11 case. Mr. Sullivan participated because he is the K&E attorney primarily responsible for developing the ZAI litigation strategy.

(f)    <u>Meeting with Equity Committee Professionals on August 3, 2001 (Exhibit B-6)</u>.

As discussed above, Mr. Kapp and Mr. Bernick often attend hearings and meetings together because there are both litigation and bankruptcy matters on the agenda. In this particular case, the Equity Committee requested a meeting between their professionals and Debtors' counsel in order to familiarize their professionals, who had just been appointed to represent the Equity Committee, with ongoing issues. Mr. Bernick briefed the Equity Committee professionals regarding developments in the resolution of asbestos-related claims, the Preliminary Injunction, the case management order brief and other litigation-related items. Mr. Kapp briefed the Equity Committee professionals regarding ongoing bankruptcy-related issues.

(g)    <u>Telephone Conference with R. Finke Regarding Document Retention (Exhibit B-7)</u>.

Messrs. Running and Sullivan both participated in the October 1st telephone conference with Mr. Finke because each had relevant information stemming from their distinct roles (discussed above in reference to K&E's responses to Exhibit A to the Initial Report concerning the CMO pleadings) relating to the document preservation motion that was under discussion.

(h)    <u>Client Telephone Conference Regarding CMO Strategies (Exhibit B-8)</u>.

This exhibit lists two separate telephone conferences. As her time entry indicates, Ms. Wicklund updated the Debtors' management regarding particular CMO matters. According to K&E's records, Ms. Boll engaged in a telephone conference with Ms. Baer, also concerning CMO matters.

(i)    <u>Client Telephone Conference Regarding Document Filing (Exhibit B-9)</u>.

Ms. Windley participated in this telephone conference with the Debtors to lend her expertise in bankruptcy pleading service requirements and Ms. Pope participated from the litigation perspective in order to ensure that the proper service to the Debtors of litigation and bankruptcy pleadings occurred in a timely fashion.

(j)    Telephone Conference With Unsecured Creditors' Committee (Exhibit B-10).

Mr. Kapp and Mr. Schwartz both participated in this telephone conference because Mr. Kapp, as has been discussed previously, is a bankruptcy partner assigned to these chapter 11 cases and Mr. Schwartz was the bankruptcy associate working with him on this particular matter.  Mr. Kapp and Mr Schwartz were discussing with the Debtors' financial advisor (Pam Zilly) and professionals representing the Commercial Committee issues regarding the confidentiality agreements that the Commercial Committee's professionals would have to sign prior to engaging in due diligence on the Debtors, a necessary function for the Commercial Committee. Mr. Kapp was responsible for the overall strategy and supervised Mr. Schwartz, who negotiated the particular terms of each of the confidentiality agreements, drafted the agreements and ensured that they were properly executed prior to the Commercial Committee's professionals commencing due diligence.

(k)    Document Review (Exhibit B-11).

Mr. McMillin and Mr. Higgins spent a total of approximately three days in the law offices of Wachtell, Lipton, Rosen & Katz reviewing Grace documents that dealt with the Fresenius and Sealed Air transactions.[2]  During this period, Mr. McMillin and Mr. Higgins reviewed over 200 boxes of documents, a majority of which were later produced to the PI and PD Committees during discovery leading up to the fraudulent transfer adversary proceeding trial that is currently scheduled for September 30, 2002.

(l)    November 5, 2001, Hearing (Exhibit B-12).

As discussed above, and as the Fee Auditor is aware from discussions concerning time entries for the fourth quarterly interim period, Mr. Bernick and Mr. Kapp generally attend hearings together because they are responsible for separate issues.  Specifically, Mr. Bernick attended to the November 5 hearing issues related to the upcoming hearing, then scheduled for November 21, 2001, regarding the CMO scheduling conference.  Mr. Kapp attended the November 5, 2001, hearing because of the bankruptcy-related items on the agenda, especially the various automatic stay relief-related motions. Mr. Schwartz attended the hearing to coordinate matters with local counsel and counsel for other constituencies and generally to assist Mr. Bernick and Mr. Kapp.

---

[2] Ms. Fabian traveled on the first day to New York but was forced to turn back because an airliner crash on Long Island prevented travel into the city.  Ms. Fabian's schedule prevented her from later participating in the document review, which was completed by Mr. McMillin and Mr. Higgins.  The time entry attributed to Ms. Fabian for November 15, 2001, appears to be in error because it is not reflected in K&E's November 2001 monthly fee application nor is it reflected in K&E's records.

(m)     Hilsee Deposition (Exhibits B-13 and B-17).

As discussed above regarding the CMO reply and the CMO Hearing, Ms. Baer deposed Mr. Hilsee as part of the preparations for the CMO Hearing.  Ms. Boll assisted Ms. Baer because of her experience working on the *Babcock* notice program.  Ms. Boll's expertise was of particular interest because Mr. Hilsee had been retained as the debtor's notice expert in the *Babcock* case.  In these chapter 11 cases, by contrast, Mr. Hilsee was retained by the PD Committee as their notice expert. Mr. Hilsee had also been the notice expert in the *Barbanti* case, a ZAI class action in Washington state court prior to the commencement of the chapter 11 cases.  Ms. Kinsella, the Debtors' notice expert, had been retained by one of the committees in the *Babcock* case to critique Mr. Hilsee's work there.  Ms. Boll's insights were therefore particularly helpful to Ms. Baer in preparing for the Hilsee deposition and Ms. Boll was also of immense value during the deposition itself.

(n)     Conference Call With L. Duff Regarding Hatco (Exhibits B-14 and B-19).

Other than the *Libby* site, the Hatco environmental site is the Debtors' single biggest environmental cost exposure. Estimates for the clean-up have run as high as $100 million, although the Debtors believe this to be far too high.  Hatco, the present owner of the site, appears to have been lobbying the State of New Jersey during 2001 to force the Debtors to stay involved in and fund the site clean-up.  The Debtors have taken the position that they do not own the site and that Hatco must take the lead in conducting the site clean-up.  This matter came to a head in two meetings, first with Hatco and then with the State of New Jersey.

Ms. Baer was involved in this matter from a bankruptcy perspective and Mr. Grummer was involved because of his environmental law expertise.  Mr. Oslan also lent his expertise as an environmental litigator to resolving this issue.  Exhibit B-14 to the Initial Report lists three preparatory telephone conferences with the Debtors' management concerning the Hatco matter in which Mr. Grummer and Ms. Baer participated.  Exhibit B-19 lists a preparatory meeting with the Debtors and the meeting with Hatco, both of which took place in Washington, D.C., on December 3, 2001, and were attended by Ms. Baer and Messrs. Oslan and Grummer.  For the reasons discussed above, the presence of Ms. Baer, Mr. Grummer and Mr. Oslan were required for those telephone conferences and meetings.

The December 3, 2001, meeting with Hatco concluded with a decision to proceed with meeting with representatives of the State of New Jersey, which ultimately occurred on December 13, 2001, also listed in Exhibit B-19. Mr. Oslan and Ms. Baer attended that meeting with state officials, each for the reasons discussed above, and successfully reached consensus with the State and a way to proceed with litigation.  Since that December 13, 2001, meeting, a potentially major litigation matter has been avoided.

(o)     Conference Call With Client Regarding Cancellation of CMO Hearing (Exhibit B-15).

As these two time entries indicate, Mr. Bernick and Mr. Kapp both attended a meeting with the Debtors' senior management that was conducted both in person and telephonically, in the aftermath of the cancellation of the CMO Hearing on November 21, 2001. Mr. Bernick focused on the litigation ramifications and overall chapter 11 implications of the cancelled hearing and Mr. Kapp focused on the bankruptcy implications.

(p)     CMO Hearing, November 21, 2001 (Exhibit B-16).

See discussion above, in response to CMO Hearing matters listed in Exhibit A to the Initial Report.

(q)     Witness Interviews (Exhibit B-18).

As the Fee Auditor is aware from the August 26, 2002, hearing and the Debtors' responses to the Fee Auditor's initial and final reports on the fourth interim period, and as discussed above, Ms. Browdy and Mr. McMillin are the attorneys primarily responsible for the trial preparation in the fraudulent transfer adversary proceeding. The time questioned in the Fee Auditor's Initial Report related to the preparation for, travel associated with and time spent in witness interviews with Grace's former CEO and three other members of senior management during the period of the Fresenius and Sealed Air transactions. Ms. Browdy took the lead on preparing for and conducting two of the interviews and Mr. McMillin took the lead on preparing for and conducting the other two interviews. All of these vital interviews were conducted in Boca Raton, Florida, at the Debtors' facilities over a two-day period in order to most efficiently prepare for them and to minimize attorney travel time and time spent during the interviews.