**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In Re: § | |
| § | **Chapter 11** |
| W.R. GRACE & CO., et al § | **Jointly Administered** |
| § | **Case No. 01-1139 (JKF)** |
| **Debtors** § | |

**FEE AUDITOR'S FINIAL REPORT REGARDING**
**INTERIM APPLICATION OF CONWAY, DEL GENIO, GRIES & CO. LLC**
**FOR THE FIRST, SECOND, AND THIRD INTERIM PERIODS**

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Application of Conway, Del Genio, Gries & Co. LLC for the First, Second, and Third Interim Periods (the "Application").

**BACKGROUND**

1.  Conway, Del Genio, Gries & Co. LLC ("Conway") was retained as financial advisors to the official committee of asbestos property damage claimants pursuant to a flat-fee arrangement under which Conway is to be paid $150,000 per month for the first twelve months of its engagement and $100,000 per month thereafter. In the Application, Conway seeks approval of fees totaling $1,070,000[1] and expenses totaling $18,440.12 for its services from April 27, 2001, through December 31, 2001.

2.  In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with the Local Rule 2016-2 of the Local

---

[1] While Conway began its work as of April 27, 2001 -- and we have reviewed the time entries for the period from April 27 to May 26, 2001 -- Conway did not commence its assessment of fees pursuant to the established fee structure until May 27, 2001.

**FEE AUDITOR'S FINAL REPORT** - Page 1
wrg FR re Conway 1-3int 4-12.01.wpd

Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Conway an initial report based on our review and received a response from Conway, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.    In our initial report, we noted that the fee entry detail is reported chronologically versus chronologically by category. We asked Conway to report time chronologically by category in the future. Conway responded that it will make every attempt to provide the necessary information in a form acceptable to us and the Court.

4.    In our initial report, we noted that Conway's retention is based on a flat-fee arrangement of $150,000 per month for the first twelve months and $100,000 per month thereafter. We also note that Conway professionals do not assess their professionals' time at a specific per-hour rate. However, for purposes of this report, we have extrapolated an effective per-hour rate based on the number of hours billed during each of the three periods for which Conway filed a separate application. For the period from April 27, 2001, to September 30, 2001, the per-hour rate is approximately $506.[2] For the period October 1, 2001, to October 31, 2001, the per hour rate is

---

[2] As noted in footnote 1, we have reviewed the time entries from April 27, 2001, to May 26, 2001. We included the time from that period in calculating the $506-per-hour rate. If we include only the time expended between May 27, 2001, and September 30, 2001, the effective hourly rate would be $635.

**FEE AUDITOR'S FINAL REPORT** - Page 2
wrg FR re Conway 1-3int 4-12.01.wpd

approximately $484. And, for the period November 1, 2001, to December 31, 2001, the per hour rate is approximately $660.

Specific Time and Expense Entries

5.      In our initial report, we noted that between April 27, 2001, and December 31, 2001, Conway billed $15,126.46 for travel-related expenses for which no detail is provided. We asked Conway to provide adequate detail regarding these expenses:

| | |
|---|---|
| Meals | $989.65 |
| Lodging | $1,701.66 |
| Ground Transportation | $4,345.65 |
| Airfare: | $8,089.50 |

Conway's response supplemented the previously provided expense detail as we requested, and we made further inquiry by e-mail and telephone call regarding these expenses, and we were satisfied with the responses. Thus we recommend no reduction in the requested amounts.

6.      In our initial report, we noted that between April 27, 2001 and December 27, 2001, there were six occasions in which more than one Conway professional attended or participated in the same meeting or hearing outside the office. See Exhibit A. We asked Conway to state why it was necessary for multiple professionals to participate in these meetings and hearings, to enable us to determine whether related travel expenses were reasonable and necessary. Conway provided the following response:

> A significant portion of the meetings/conference calls with more than one CDG professional was for conversations/meetings with the members of the Committee or counsel for the Committee. While we are not at liberty to divulge or describe the content of conference calls and meetings, the scope of the W.R. Grace bankruptcy, together with the various operational and financial issues and analyses requires a "division of labor." There are professionals within CDG that have focused on certain of the many components that comprise the bankruptcy case, i.e., potential litigation matters, ongoing operations, valuation analyses, diligence matters, etc. Each professional needs to be present in meetings or on conference calls to glean the pieces of information relevant to the work on which

he or she has focused. It would be neither efficient nor prudent to have one professional attempt to relay to all others the key pieces of information.

The remaining meetings or conference calls with more than one CDG professional were with either Grace senior management or Grace's financial advisors. As mentioned above, our professionals focus on many different components of the bankruptcy case, and it is therefore both prudent and efficient to have them at these meetings/conference calls so that they can gain the contextual knowledge necessary to perform the analyses on which they are working.

To add some clarity as to our staffing "methodology" for this engagement, we submit that the core team of people was selected based on relevant experience and capabilities by Michael Gries, a founding member of CDG and the professional responsible for this engagement. Michael Gries serves as the primary CDG contact with the Committee and is ultimately responsible for any work product completed by other professionals during the course of this engagement. He also has a critical role in fraudulent transfer litigation currently being pursued by the Committee, and is therefore integrally involved in the many facets of this engagement. Gregory Boyer, a Managing Director with a substantial background in bankruptcy and restructuring matters, has (under the direction of Michael Gries) overseen the execution of many of the tasks assigned to CDG by the Committee (including post-petition operation reports, valuation analyses, employee retention programs, etc.), and coordinated the efforts of others at CDG to complete assignments in manner that is both thorough and timely for the Committee. During the bankruptcy case, there have been many disparate issues that have arisen that the Committee asked CDG to analyze. Occasionally, other CDG professionals were consulted on a limited basis to address specific issues with which they had experience. In addition, the volume of work necessitated the addition of other CDG professionals to the team on a limited basis in order to satisfy Committee requests in a timely manner. These professionals participated in meetings and conference calls so that they could understand the issues relevant to the analyses they were performing, as well as to be available to answer questions the Committee may have related to those same analyses.

We appreciate this explanation.

## CONCLUSION

7.     Thus, we recommend approval of fees totaling $1,070,000 and costs totaling $18,440.12 for Conway's services from April 27, 2001, through December 31, 2001.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
     Warren H. Smith
     Texas State Bar No. 18757050
     Mark W. Steirer
     Texas State Bar No. 19139600

900 Jackson Street
120 Founders Square
Dallas, Texas 75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 25th day of October 2002.

_____
     Warren H. Smith

## SERVICE LIST
Notice Parties

**The Applicant**
Michael F. Gries
**Conway, Del Genio, Gries & Co. LLC**
Olympic Tower
645 Fifth Avenue
New York, NY 10022

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Matthew G. Zaleski, III, Esq.
Campbell & Levine
Chase Manhattan Centre, 15th Floor
1201 Market Street, Suite 1200
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

## Exhibit A

| Date | Timekeeper | Time | Description |
|---|---|---|---|
| *A-1:* | | | |
| 5/22/2001 | Gregory Boyer | 4 | Travel to Dallas for Committee meeting |
| 5/22/2001 | Michael Gries | 4 | Travel to Dallas for Committee meeting |
| 5/23/2001 | Gregory Boyer | 5 | Committee meeting |
| 5/23/2001 | Michael Gries | 5 | Committee meeting |
| 5/23/2001 | Dan Katz | 4.5 | Reviewed analyst reports and potential comparable companies |
| 5/23/2001 | Gregory Boyer | 4.5 | Travel from Dallas for Committee meeting |
| 5/23/2001 | Michael Gries | 4.5 | Travel from Dallas for Committee meeting |
| *A-2:* | | | |
| 6/13/2001 | Dan Katz | 1 | Review WR Grace information in advance of meeting |
| 6/13/2001 | Gregory Boyer | 1 | Review WR Grace information in advance of meeting |
| 6/13/2001 | Michael Meenan | 1.5 | Review WR Grace information in advance of meeting |
| 6/13/2001 | Dan Katz | 3 | Travel to Company for meeting |
| 6/13/2001 | Gregory Boyer | 3 | Travel to Company for meeting |
| 6/13/2001 | Michael Meenan | 3 | Travel to Company for meeting |
| 6/14/2001 | Dan Katz | 8 | Meeting with WR Grace management |
| 6/14/2001 | Gregory Boyer | 8 | Meeting with WR Grace management |
| 6/14/2001 | Michael Meenan | 8 | Meeting with WR Grace management |
| 6/14/2001 | Dan Katz | 3 | Travel from Company to NY |
| 6/14/2001 | Gregory Boyer | 3 | Travel from Company to NY |
| 6/14/2001 | Michael Meenan | 3 | Travel from Company to NY |
| *A-3:* | | | |
| 6/25/2001 | Gregory Boyer | 3.5 | Travel to Committee meeting |
| 6/26/2001 | Gregory Boyer | 8 | Committee meeting |
| 6/26/2001 | Michael Gries | 8 | Committee meeting |
| 6/26/2001 | Gregory Boyer | 3.5 | Travel from Committee meeting |
| *A-4:* | | | |
| 8/20/2001 | Gregory Boyer | 3.5 | Travel to Atlanta |
| 8/21/2001 | Brian Fox | 4.5 | Committee meeting |
| 8/21/2001 | Gregory Boyer | 6 | Committee meeting |
| 8/21/2001 | Michael Gries | 6 | Committee meeting |
| 8/21/2001 | Brian Fox | 3.5 | Travel to Atlanta |
| 8/21/2001 | Brian Fox | 3.5 | Travel to NY |
| 8/21/2001 | Gregory Boyer | 3.5 | Travel to NY |
| 8/21/2001 | Michael Gries | 3.5 | Travel to NY |

*A-5:*

| Date | Name | Hours | Description |
|---|---|---|---|
| 10/22/2001 | Daniel Katz | 10 | Travel and meeting with Grace re: legacy liabilities |
| 10/22/2001 | Gregory Boyer | 10 | Travel and meeting with Grace re: legacy liabilities |

*A-6:*

| Date | Name | Hours | Description |
|---|---|---|---|
| 11/21/01 | Daniel Katz | 0.5 | Attendance at the court house for hearing canceled that morning |
| 11/21/01 | Gregory Boyer | 0.5 | Attendance at the court house for hearing canceled that morning |
| 11/21/01 | Daniel Katz | 4.5 | Travel to and from court hearing in Delaware re: CMO |
| 11/21/01 | Gregory Boyer | 4.5 | Travel to and from court hearing in Delaware re: CMO |