## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | |
| | § | **Chapter 11** |
| **W.R. GRACE & CO., et al** | § | **Jointly Administered** |
| | § | **Case No. 01-1139 (JKF)** |
| **Debtors** | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING
### INTERIM APPLICATION OF PACHULSKI, STANG, ZIEHL, YOUNG AND JONES,
### P.C. FOR THE FIRST, SECOND, AND THIRD INTERIM PERIODS

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its

capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the First,

Second, and Third Interim Fee Application Request of Pachulski, Stang, Ziehl, Young and Jones,

P.C. (the "Application").

### BACKGROUND

1.      Pachulski, Stang, Ziehl, Young and Jones, P.C.  ("Pachulski"), was retained as

Counsel to the Debtors and Debtors-in-Possession.  In the Application, Pachulski seeks approval

of fees totaling $250,632.50 and costs totaling $172,457.15 for its services from April 2, 2001,

through December 31, 2001.

2.      In conducting this audit and reaching the conclusions and recommendations

contained herein, we reviewed in detail the Application in its entirety, including each of the time

entries included in the exhibits to the Application.  We reviewed the Application for compliance

with 11 U.S.C. § 330,  Local Rule 2016-2 of the Local Rules of the United States Bankruptcy

Court for the District of Delaware, Amended Effective February 1, 2001, and the United States

Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of

Expenses Filed Under 11 U.S.C. § 330, Issued January 30, 1996,(the Guidelines"), as well as for

consistency with precedent established in the United States Bankruptcy Court for the District of

Delaware, the United States District Court for the District of Delaware, and the Third Circuit

Court of Appeals.  We served on Pachulski an initial report based on our review and received a

response from Pachulski, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.      In our initial report, we noted that Pachulski professionals PEC, LAG, and HRR

did not consistently provide adequate detail in their time entries.  We asked Pachulski to advise

these professionals to provide adequate detail in the future.

4.      In our initial report, we noted that during the August 2001 billing cycle, Pachulski

professional Rita Olivere's rate increased from $45.00 to $55.00 per hour and Violet Mobley's

rate increased from $30.00 to $50.00 per hour.    We also noted that, during the November 2001

billing cycle, Pachulski professional Laura Jones' rate increased from $455.00 to $550.00 per

hour, Hamid Rafatjoo's rate increased from $295.00 to $330.00 per hour, David Carickhoff's rate

increased from $245.00 to $280.00 per hour, Michael Seidl's rate increased from $245.00 to

$305.00 per hour, Rachel Lowry's rate increased from $225.00 to $260.00 per hour, Peter

Duhig's rate increased from $195.00 to $225.00 per hour, and Helen Martin's rate increased from

$45.00 to $60.00 per hour.  We asked Pachulski to explain these rate changes, as is required

under the Guidelines.  Pachulski responded that

> At the time PSZYJ was retained, PSZYJ disclosed that its hourly rates were subject
> to increase.  This disclosure was made both in the retention agreement with the
> Debtors and in the application for retention filed with the Court.  The Debtors'

execution of the retention agreement and the application to retain PSZYJ as counsel
to the Debtors constitutes the Debtors' acceptance of PSZYJ's right to raise its billing
rates consistent with the existing market. PSZYJ, as a matter of course, always
adjusts its rates at least once annually to properly compensate the Firm for its legal
services. The rate adjustments are a reflection of the legal market for the work
performed by the Firm and its attorneys. The Firm believes that its rates are
competitive with the hourly rates of other firms substantially similar to PSZYJ in the
marketplace.

We accept this explanation and recommend no reduction in regard to these rates.

5.    In our initial report, we noted that most of Pachulski's monthly applications

included time entries for as many as three months. Pachulski offered the following response:

Time Entries from Previous Months. While professionals and
paraprofessionals maintain daily time records, their daily time records
need to be placed on the Firm's billing system, which is a software
package that enables the Firm to bill its fees and expenses
appropriately. The Firm typically requests that its professionals and
paraprofessionals have all time entries recorded on the billing system
for a calendar month within three days of the end of such calendar
month so that the Firm can generate invoices for its clients regarding
the services provided by the Firm for such time period. Given the
schedules and caseload of professionals and paraprofessionals, it is
not always possible for them to take the second step of entering their
personal daily time records on the Firm's billing system within three
days of the conclusion of the calendar month. Accordingly, it is
possible that a fee application may contain time entries for previous
billing cycles.

We appreciate this response and recommend no reduction in this regard.

Specific Time and Expense Entries

6.    In our initial report, we noted that between April 2, 2001, and June 21, 2001,

Pachulski billed 26.35 hours for a cost to the bankruptcy estate of $10,186.78 in fees and

expenses  for meetings, hearings, and teleconferences in which multiple professionals

participated.

*April 2-4, 2001:*

| | | | | | |
|---|---|---|---|---|---|
| 04/02/01 | HRR | 3.40 | 295.00 | $1,003 | Attend first day hearings. |
| 04/02/01 | DWC | 3.00 | 245.00 | $735 | Attend first-day hearing. |
| 04/02/01 | LDJ | 2.80 | 455.00 | $1,274 | Attend hearings re: first day motions. |
| 04/04/01 | HRR | 4.65 | 295.00 | $1,371.75 | Travel from Delaware to California (Billed ½ time). |
| 04/04/01 | HT | Hotel Expense Hotel Dupont (HRR)[E110] | | $1,275.65 | |
| 04/04/01 | HT | Hotel Expense- Hotel Dupont (HRR)[E110] | | $503.38 | |
| 04/04/01 | TE | Travel Expense- AMS/Pacific (HRR) [E110] | | $184.50 | |

*May 3, 2001:*

| | | | | | |
|---|---|---|---|---|---|
| 05/03/01 | DWC | 3.00 | 245.00 | $735.00 | Attend hearing re: Preliminary Injunction Motion, Final DIP Order and other issues. |
| 05/03/01 | LDJ | 2.00 | 455.00 | $910.00 | Attend hearing re: retention of counsel; retention of other professionals' motion for temporary restraining order and preliminary injunction re: asbestos related and fraudulent transfer claims; final financing order; reclamation claims. |

*June 21, 2001:*

| | | | | | |
|---|---|---|---|---|---|
| 06/21/01 | DWC | 2.10 | 245.00 | $514.50 | Prepare for 6/21 hearing. |
| 06/21/01 | DWC | 3.70 | 245.00 | $906.50 | Attend 6/21 hearing. |
| 06/21/01 | LDJ | 0.60 | 455.00 | $273.00 | Final preparation for 6/21 omnibus hearings. |
| 06/21/01 | LDJ | 1.10 | 455.00 | $500.50 | Attend omnibus hearings. |

We asked Pachulski to explain why multiple professionals were necessary at each of these

meetings.  Pachulski offered the following response:

> Multiple Attorneys at Same Hearing or Hearing.  Ms. Jones, a shareholder of the Firm with over 15 years of bankruptcy experience, is the attorney at PSZYJ primarily responsible for working with the Debtors and co-counsel regarding the overall strategy of these chapter 11 cases.  To the extent that particular hearing involves pleadings that may implicate the overall case strategy, it is essential that Ms. Jones attend such hearings.  For the time period at issue, Mr. Carickhoff was the attorney at PSZYJ responsible for dealing with day-to-day issues in the chapter 11 cases and substantially all of the filings in the chapter 11 cases.  Accordingly, his presence was required at all hearings during this time period.  Further, Mr. Rafatjoo, Mr. Carickhoff, and Ms. Jones spent a considerable amount of time and efforts assisting the Debtors and co-counsel prepare the Debtors' "first day pleadings."  First day pleadings are pleadings designed to ensure that a chapter 11 debtor has a smooth transition into chapter 11 with as little disruption to its operations as possible.  Given the scope of the Debtors' operations and the complex litigation confronting the Debtors, there were many first day pleadings necessary at the outset of the cases to address the Debtors' transition into chapter 11.

One of the hearings at issue, April 2, 2001, was the "first day hearing" in these complex chapter 11 cases. Ms. Jones, Mr. Rafatjoo, and Mr. Carickhoff attended the first day hearing in these cases to assist with the presentation of the first day pleadings, to be prepared to address any noticing and legal issues that would result from the entry of certain first day orders, and to familiarize themselves with the visiting judge assigned to the cases. The presence of three attorneys from the Firm was justified under the circumstances, as Ms. Jones's presence was required given her involvement in the overall case strategy, as Mr. Carickhoff's presence was necessary given his involvement in the day-to-day issues of the cases, and as Mr. Rafatjoo's presence was required given his familiarity with all of the first day pleadings.

After a first day hearing, it is necessary to address noticing issues that result from the entry of certain first day orders. Mr. Carickhoff and Mr. Rafatjoo worked in conjunction to accomplish these tasks, which took a couple of days. Accordingly, Mr. Rafatjoo's presence was necessary in Delaware to accomplish these tasks in a timely manner.

With respect to the May 3, 2001 hearing, both Ms. Jones and Mr. Carickhoff attended such hearing. This hearing involved pleadings that implicated the overall case strategy (including the Debtors' request for debtor in possession financing and the Debtors' request for a temporary restraining order regarding the complex litigation surrounding the Debtors). Given the magnitude, it was necessary and appropriate to have both Ms. Jones and Mr. Carickhoff present at such hearing.

With respect to the June 21, 2001 hearing, both Ms. Jones and Mr. Carickhoff attended such hearing. This hearing involved pleadings that implicated unresolved first day pleadings and other critical issues (including the Debtors' motion for approval of key employee retention plan, the Debtors' motion to modify the preliminary injunction, and the Debtors' motion to extend time to assume or reject unexpired leases). Given the scope of this hearing, it was necessary and appropriate to have both Ms. Jones and Mr. Carickhoff present at such hearing.

We accept this explanation and recommend no reduction in this regard.

7.    In our initial report, we noted that between April 2, 2001, and October 23, 2001, HRR and DWC billed 71.9 hours for a cost to the bankruptcy estate of $18,015.50 on matters which included ministerial tasks. See Exhibit A. We asked Pachulski to explain why professionals billing at such high rates were performing these tasks. Pachulski offered the following response:

Alleged "Ministerial" Tasks.  Attached as Exhibit A to the report is a series of time entries from Mr. Rafatjoo and Mr. Carickhoff that contain entries that appear to be ministerial in nature, but are in fact not.  The Firm acknowledges that the entries may not have been crafted as artfully as they could have been, but disputes the allegation that the underlying services were "ministerial" and should have been performed by a paraprofessional.  "Preparing first day notebooks" does not mean that Mr. Rafatjoo three hole punched the pleadings and inserted them into binders, rather it means that Mr. Rafatjoo prepared and finalized the pleadings that comprised the notebooks and reviewed the same in anticipation of the first day hearing.

"Address service of a pleading" does not mean that Mr. Carickhoff was in the mail room placing labels and postage on envelopes to effectuate service.  Rather, "address service of a pleading" means that Mr. Carickhoff analyzed the pertinent pleading and determined the parties that were necessary to serve in light of the relief requested.  In some instances, particularly when a motion implicated the Debtors' hundreds of leases, significant work needed to be done in this regard, including the review of leases and the coordination with the Debtors' in-house real estate personnel.  The scope of the relief requested drives the time required to ensure that due process is met – *i.e.*, that adequate notice of a particular pleading is given to protect the Debtors' interests and the interests of affected parties.

"Address filing of pleading" does not mean that Mr. Carickhoff filed a particular document with the Court, but that Mr. Carickhoff completed a final review of a pleading, executed the pleading, and provided the necessary direction to paraprofessionals and other support personnel to properly file and serve such pleading.  The complexity of the pleading and the number of exhibits attached drives the time required to perform this task.

Included in Exhibit A is time billed by attorneys to prepare the agenda notice.  The agenda notice is a crucial case document required by the Local Rules to be filed prior to each scheduled hearing detailing the matters scheduled for a particular hearing and the pleadings that pertain to those matters.  In a case as large as this one, where a dozen or more items are routinely scheduled for hearing at any given hearing date, preparation of an agenda notice involves the review of:  (i) many primary pleadings, (ii) even more related documents, and (iii) a lengthy docket to insure that all related items are included.  Additionally, the Local Rules require that the agenda notice be served upon all parties with an interest in a matter scheduled for that hearing; because the matters scheduled for hearing change on a hearing by hearing basis, the standard service list must be constantly updated and revised to reflect the addition or removal of parties whose matters are added or resolved.  Because only those matters properly placed on the agenda notice may be heard at a hearing, and because the agenda notice is signed by counsel, final authority for the agenda notice is committed to counsel (although paralegals perform much of the initial preparation).  Additionally, the agenda notice serves as a mechanism to properly apprise the Court of the status of

matters scheduled for hearing, so that judicial resources are not expended unnecessarily preparing for matters that are continued or settled prior to the hearing. It is necessary for PSZYJ attorneys to be apprised of the status of all matters on the agenda notice so that the same can be properly communicated to the Court. Becoming familiar with the status of all matters set forth on the agenda notice is part of the "preparation of the agenda" process as well.  Accordingly, much time and effort goes into the preparation of this crucial case document.

We accept this explanation and recommend no reduction.

8.      In our initial report, we noted that between July 17, 2001, and July 27, 2001,

Pachulski appeared to have inadvertently double-billed expenses actually totaling $2,138.81:

> 07/17/01 (PO)Reproduction Expense –DDI [E101] Postage [W108] $165.06
> 07/17/01 (PO)Postage–DDI [W108] $165.06
>
> 07/17/01 (RE)Reproduction Expense –DDI [E101] $308.88
> 07/17/01 (RE)Reproduction Expense –DDI [E101] $308.88
>
> 07/26/01 (RE)Reproduction Expense –DDI [E101] $1,093.95
> 07/26/01 (RE)Reproduction Expense –Delaware Document Imaging [E101] $1,093.95
>
> 07/27/01 (PO)Postage--DDI [E108] $447.72
> 07/26/01 (PO)Postage Delaware Document Imaging [E108] $447.72
>
> 07/27/01 (PO)Postage Delaware Document Imaging [E108] $123.20
> 07/27/01 (PO)Postage--DDI [E108] $123.20

We asked Pachulski to explain whether these expenses are redundant.  Pachulski

confirmed that these entries were indeed redundant and agreed to a reduction of $2,138.81 in

expenses.

9.      In our initial report, we noted that between April 6, 2001, and December 28, 2001,

PEC, ALE, and KKY billed 114.9 hours ($12,520) to "[r]eview daily correspondence and

pleadings and circulate [or forward] to the appropriate individuals."  Our interpretation of this

entry is that of mail processing.  The lowest rate charged for this task was $105 per hour.  We

asked Pachulski to explain why this task was not assigned to a lower-rate professional.  Pachulski

responded:

> Alleged "Mail Processing" Tasks.  Similar to paragraph 7, paragraph 9 objects to
> paralegals performing what appear to be simple mail processing tasks, but that are
> in fact not simple tasks.  The Firm acknowledges that the entries may not have been
> crafted as artfully as they could have been, but disputes the allegation that the
> underlying services were simply for mail processing.  Absent specific entries listed
> in the report, the Firm is not able to address each entry individually.  Generally,
> however, in chapter 11 cases of this size – with thousands of docketed pleadings and
> many more thousands of pieces of correspondence –document control is necessary
> and beneficial to the Debtors' estates.  PSZYJ maintains a complete file of all
> pleadings and correspondence consistent with the Court's docket and case protocol.
> PSZYJ personnel review incoming documents, prepare critical date calendars for the
> case based upon the incoming documents, prepare a memorandum regarding the
> same for the client and co-counsel with such mailings included therewith.
> Additionally, personnel address document requests from the Court, the client, co-
> counsel, and other parties in interest.  Absent appropriate review of pleadings and
> correspondence, significant deadlines and case-important events and inquiries could
> not be addressed.   In addition, as Debtors' counsel, PSZYJ is responsible for
> preparing agenda notices and hearing notebooks for the Court.  Accordingly, tasks
> that relate to document control is absolutely necessary to counsels' representation.
> PSZYJ maintains that such functions are necessary and provide a benefit to the estate
> in a case of this size by enabling counsel to timely perform its work.  Indeed, relative
> to other professionals retained in these cases and the role of such professionals, the
> Firm believes that its staffing and resources are used very efficiently to benefit of the
> Debtors' estates.

The cited activities do not involve docketing, preparation of agenda notices, or various other

activities mentioned in Pachulski's response.  The fees relating to those activities are in addition

to the fees referred to in our initial report.  We note that the $12,520 billed for paraprofessionals

to "[r]eview daily correspondence and pleadings and circulate [or forward] to the appropriate

individuals" constitutes 5% of the total fees billed by Pachulski for the Application Period.  This

seems to be a bit high, and the explanation offered by Pachulski does not demonstrate why the

task could not have been performed by someone billing at a lower rate.  We note that Pachulski

had "Case Management Assistants" who billed at rates as low as $30 per hour.  While we do not

think it necessary that these activities be billed at that rate, it is our opinion that $70 per hour would be a fair rate to charge in this regard, and we accordingly recommend a reduction of $4,477.[1]

## CONCLUSION

10.     Thus, we recommend approval of fees totaling $246,155.50 ($250,632.50 minus $4,477.00) and costs totaling $170,318.34 ($172,457.15 minus $2,138.81)  for Pachulski's services from April 2, 2001, through December 31, 2001.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:

Warren H. Smith
Texas State Bar No. 18757050
Mark W. Steirer
Texas State Bar No. 19139600

900 Jackson Street
120 Founders Square
Dallas, Texas 75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

---

[1] $70 x 114.9 = $8,043.  $12,520 - $8,043 = $4,477.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 28th day of October 2002.

_____
Warren H. Smith

# SERVICE LIST

**The Applicant**
Laura Davis Jones
Pachulski, Stang, Ziehl, Young and Jones, P.C.
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200

Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Matthew G. Zaleski, III, Esq.
Campbell & Levine
Chase Manhattan Centre, 15th Floor
1201 Market Street, Suite 1200
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.

Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

**EXHIBIT A**

| | | | | | |
|---|---|---|---|---|---|
| 04/02/01 | HRR | 8.00 | 295.00 | $2,360 | Prepare first day notebooks and motions for first day hearing (5.0); Review and analyze same (3.0). |
| 04/17/01 | DWC | 3.20 | 245.00 | $784.00 | Draft Notice of Hearing and Agenda for Hearing on 4/18/01 and address service thereof via facsimile.  Also, provide telephonic notice of hearing to certain parties. |
| 05/24/01 | DWC | 0.30 | 245.00 | $73.50 | Address filing of Motion to Extend Time to Assume or Reject Non-Residential Real Property Leases. |
| 05/24/01 | DWC | 1.60 | 245.00 | $392.00 | Address service of Motion to Extend Time to Assume or Reject Leases on Landlords. |
| 05/01/01 | DWC | 1.20 | 245.00 | $294.00 | Review Supplemental Declaration of David Siegel in Support of Preliminary Injunction Motion and address filing and service thereof. |
| 05/01/01 | DWC | 0.80 | 245.00 | $196.00 | Review Debtors' Omnibus Reply to Objections to Preliminary Injunction motion and address filing and service thereof. |
| 06/26/01 | DWC | 1.40 | 245.00 | $343.00 | Review and revise motion for order approving de minimis asset sale procedures and abandonment procedures (.8); draft notice in connection therewith (.4); address filing and service thereof (.2). |
| 06/21/01 | DWC | 0.40 | 245.00 | $98.00 | Prepare Second Amended Agenda and address filing and service thereof. |
| 06/27/01 | DWC | 4.80 | 245.00 | $1,176.00 | Review and revise Motion for Case Management Order, Establishment of Bar Date and Related Relief (.8); draft notice in connection therewith (.4); review and revise memorandum in support of the Motion (2.2); review list of exhibits in connection therewith (.6); telephone conference with Jan Baer and Andrew Running |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | (2x) re: same (.3); address filing and service of the Motion, memo and exhibits (.5). |
| 06/29/01 | DWC | 2.20 | 245.00 | $539.00 | Review and revise K&E Second Monthly Fee Application (1.4); draft notice in connection therewith (.4); telephone conference with Jay Kapp re: same (.2); address filing and service thereof (.2). |
| 06/01/01 | DWC | 2.40 | 245.00 | $588.00 | Address filing of Schedules and Statement of Financial Affairs of the 62 debtor entities. |
| 06/01/01 | DWC | 2.10 | 245.00 | $514.50 | Review and revise Motion to Modify Preliminary Injunction and Memorandum in Support Thereof (1.3); draft notice and certificate of service in connection therewith (.6); address filing and service thereof (.2). |
| 06/07/01 | DWC | 1.80 | 245.00 | 441.00 | Review and revise Motion for Approval of Settlement Procedures with Respect to any Actions Against Debtors (.9); draft notice of Motion (.4); Telephone conference with Sam Schwartz re: Motion (.2); address filing and service of Motion (.3). |
| 06/08/01 | DWC | 0.60 | 245.00 | 147.00 | Review and revise Motion to Extend Time to Remove Actions (.4); address filing and service of Motion (.2). |
| 06/21/01 | DWC | 1.20 | 245.00 | 294.00 | Review Amended Adversary Complaint (.9); Telephone conference with Laura Jones re: the same (.1); address filing and service thereof (.2). |
| 06/21/01 | DWC | 0.30 | 245.00 | 73.50 | Review Affidavit of Bert Wolff in support of Motion to Modify Preliminary Injunction and address filing and service thereof. |
| 06/04/01 | DWC | 3.90 | 245.00 | 955.50 | Review and revise Motion of Debtors for Approval of Settlement and Performance Agreement with |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Zjagrus (including Settlement Agreement and underlying contract) (2.0); draft motion to shorten notice period for Motion (1.2); draft notice of motion (.4);  address filing and service thereof (.3). |
| 06/04/01 | DWC | 1.20 | 245.00 | 294.00 | Review and revise motion of Debtors' to retain experts (.6); draft notice of motion (.4); address filing and service thereof (.2). |
| 06/04/01 | DWC | 1.20 | 245.00 | 294.00 | Review and revise motion of Debtors' to retain Wallace King (.6); draft notice of motion (.4);  address filing and service thereof (.2). |
| 06/06/01 | DWC | 0.50 | 245.00 | 122.50 | Review affidavits under 327(e) of Bankruptcy Code for eight ordinary course professionals and address filing and service thereof. |
| 06/07/01 | DWC | 1.30 | 245.00 | 318.50 | Review and revise Motion to Retain Holme Roberts and Owen (.6); draft notice of motion (.4);   address filing and service thereof (.3). |
| 06/08/01 | DWC | 1.50 | 245.00 | 367.50 | Review and revise Motion to Retain Nelson Mullins (.8); draft notice of motion (.4);  address filing and service of Motion (.3). |
| 06/08/01 | DWC | 0.70 | 245.00 | 171.50 | Review and revise certification of counsel re: Blackstone Retention (5); address filing and service thereof (.2). |
| 06/28/01 | DWC | 1.50 | 245.00 | 367.50 | Review and revise Application to retain Kinsella as Claims Notice Consultant (.9); draft notice in connection therewith (.4); address filing and service thereof (.2). |
| 07/10/01 | DWC | 0.40 | 245.00 | 98.00 | Address filing and service of Amended Adversary Complaint and Summons and Notice in Connection therewith. |
| 07/12/01 | DWC | 0.20 | 245.00 | 49.00 | . . .; address filing and service thereof (.2). |
| 07/30/01 | DWC | 0.20 | 245.00 | 49.00 | . . .; address filing and service |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | thereof (.2). |
| 07/31/01 | DWC | 0.20 | 245.00 | 49.00 | . . .; address filing and service thereof (.2). |
| 07/31/01 | DWC | 0.20 | 245.00 | 49.00 | . . .; address filing and service thereof (.2). |
| 07/31/01 | DWC | 0.20 | 245.00 | 49.00 | . . .; address filing and service thereof (.2). |
| 07/02/01 | DWC | 0.20 | 245.00 | 49.00 | . . .; address filing and service thereof (.2). |
| 07/25/01 | DWC | 0.20 | 245.00 | 49.00 | . . .; address filing and service thereof (.2). |
| 07/02/01 | DWC | 0.20 | 245.00 | 49.00 | . . .; address filing and service thereof (.2). |
| 07/26/01 | DWC | 0.20 | 245.00 | 49.00 | . . .; address filing and service thereof (.2). |
| 07/26/01 | DWC | 0.20 | 245.00 | 49.00 | . . .; address filing and service thereof (.2). |
| 08/01/01 | DWC | 0.40 | 245.00 | 98.00 | . . .; address filing and service thereof (.4). |
| 08/09/01 | DWC | 0.20 | 245.00 | 49.00 | . . .; address filing and service thereof (.2). |
| 08/10/01 | DWC | 0.80 | 245.00 | 196.00 | Review and address filing and service of Pitney, Hardin's First, Second and Third Monthly Fee Application and Quarterly Fee Application as well. |
| 08/14/01 | DWC | 0.30 | 245.00 | 73.50 | Review and address filing of Wallace King's June Monthly Fee Application. |
| 08/14/01 | DWC | 0.80 | 245.00 | 196.00 | Review and address filing and service of Pitney Hardin's April Monthly Fee Application (.2), May Monthly Fee Application (.2) June Monthly Fee Application (.2), Quarterly Fee Application (.2). |
| 08/24/01 | DWC | 0.40 | 245.00 | 98.00 | Review and address filing of Blackstone's July Fee App. |
| 08/02/01 | DWC | 0.20 | 245.00 | 49.00 | . . .; and address filing thereof (.2). |
| 08/09/01 | DWC | 0.20 | 245.00 | 49.00 | . . .; address filing and service thereof (.2). |
| 08/13/01 | DWC | 0.20 | 245.00 | 49.00 | . . .; address filing and service thereof (.2). |

| | | | | | |
|---|---|---|---|---|---|
| 08/24/01 | DWC | 0.40 | 245.00 | 98.00 | . . .; address filing and service thereof (.4); . . . |
| 09/07/01 | DWC | 1.80 | 245.00 | $441.00 | Draft Certification of Counsel regarding Debtor's Motion to Assume and Assign Certain Leases (.8); teleconference with Sam Schwartz regarding same (.2); review blackline order with changes (.2); revise order (.2); address filing and service thereof (.4). |
| 09/05/01 | DWC | 1.00 | 245.00 | $245.00 | Address preparation of agenda notice for Sept, 7th hearing, execute the same and address service thereof (.8); telephone conference with Jay Kapp re: same (.2). |
| 09/07/01 | DWC | 2.40 | 245.00 | $588.00 | Review and revise retention application of Rust Consulting as claims agent (1.4); draft notice in connection therewith (.4); address filing and service thereof (.4); teleconference with Sam Schwartz regarding same (.2). |
| 09/12/01 | DWC | 1.40 | 245.00 | $343.00 | Review and revise Revised Order re: Retention of Casner & Edwards (.3); draft Certification of Counsel re: same (.6); address filing and service thereof (.4); Telephone conference with Sam Schwartz re: same (.1). |
| 09/13/01 | DWC | 0.80 | 245.00 | $196.00 | Draft notice of AON Stipulation (.5); address filing and service thereof (.3). |
| 09/13/01 | DWC | 0.20 | 245.00 | $49.00 | Address filing and service of K&E Fourth Supplemental Affidavit. |
| 09/13/01 | DWC | 1.40 | 245.00 | $343.00 | Review and revise opposition to Smolker's Lift Stay Motion and Exhibit thereto (.9); Telephone conference with Scott McMillan re: same (.2); address filing and service thereof (.3). |
| 09/14/01 | DWC | 1.90 | 245.00 | $465.50 | Prepare response to Honeywell's motion for stay relief (1.2); Telephone conference with Sam |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Schwartz re: same (.2); address filing and service thereof (.3); Telephone conference with K. Mangan re: same (.2). |
| 09/26/01 | DWC | 1.20 | 245.00 | $294.00 | Draft Certification of Counsel regarding Order Lifting Stay to allow Zapata litigation to proceed (.8); Telephone conference with Sam Schwartz re: same (.2); address filing and service thereof (.2). |
| 10/30/01 | DWC | 0.60 | 245.00 | $147.00 | Review Pitney Hardin's August Fee Application (.50); and address filing and service thereof (.10). |
| 10/30/01 | DWC | 0.40 | 245.00 | $98.00 | Review amended exhibits to Pitney Hardin's June Fee Application (.30); and address filing and service thereof (.10). |
| 10/30/01 | DWC | 0.50 | 245.00 | $122.50 | Review K&E's September Fee Application (.40); and address filing and service thereof (.10). |
| 10/31/01 | DWC | 1.00 | 245.00 | $245.00 | Review and revise PSZYJ's August Fee Application (.7) and address filing and service thereof (.30). |
| 10/05/01 | DWC | 1.00 | 245.00 | $245.00 | Review Monthly Operating Report (.70) and address filing and service thereof (.30). |
| 10/31/01 | DWC | 0.80 | 245.00 | $196.00 | Review September Monthly Operating Report (.60) and address filing and service thereof (.20). |
| 10/25/01 | DWC | 1.70 | 245.00 | $416.50 | Review and revise motion for approval of consent decree with the EPA (.8); draft notice re: same (.4); address filing and service thereof (.3); teleconference with Jan Baer re: same (.2). |
| 10/11/01 | DWC | 0.80 | 245.00 | $196.00 | Review affidavits of ordinary course professionals (14) (.60); and address filing and service thereof (.20). |
| 10/15/01 | DWC | 1.20 | 245.00 | $294.00 | Review and revise response to Caplin & Drysdale supplemental affidavit seeking to retain Professor |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Warren (1.0); and address filing and service thereof (.20). |
| 10/16/01 | DWC | 1.10 | 245.00 | $269.50 | Draft Certification of Counsel re: retention of Rust Consulting (.20); review and revise proposed order in connection therewith (.70), and address filing and service thereof (.20). |
| 10/23/01 | DWC | 0.30 | 245.00 | $73.50 | Review James Sprayregen Fifth Supplemental Affidavit and address filing and service thereof. |