## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | |
| | § | **Chapter 11** |
| **W.R. GRACE & CO., et al** | § | **Jointly Administered** |
| | § | **Case No. 01-1139 (JKF)** |
| **Debtors** | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING
### INTERIM APPLICATION OF CAPLIN & DRYSDALE, CHARTERED FOR THE
### <u>FIRST, SECOND, AND THIRD INTERIM PERIODS</u>

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>First, Second and Third Interim Fee Application Requests of Caplin & Drysdale, Chartered</u> (the "Applications").

### BACKGROUND

1.     Caplin & Drysdale, Chartered ("Caplin"), was retained as counsel to the official committee of asbestos personal injury claimants.  In the Applications, Caplin seeks approval of fees totaling $338,266.50 and costs totaling $25,487.89 for its services from April 12, 2001, through December 31, 2001.

2.     In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application.  We reviewed the Application for compliance with 11 U.S.C. § 330,  Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of

Expenses Filed Under 11 U.S.C. § 330, Issued January 30, 1996,(the Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served on Caplin an initial report based on our review and received a response from Caplin, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.      In our initial report, we noted that Caplin professionals BAN, TWS, BAS, HMD, KNB, PVL, SME, EJS, JWD, MCH, RCS do not consistently provide adequate detail in their time entries.  We asked Caplin to advise these professionals to provide adequate detail in the future.

4.      In our initial report, we noted that Caplin professionals BAS, NDF, RCT, SME, RCS, SAT, EJS, KNB and JWD consistently 'lump' their time entries.  We asked Caplin to advise these professionals not to lump their entries in the future.

5.      In our initial report, we noted that although Caplin maintains a separate category for its fee application time entries, time entries are nonetheless contained within numerous different categories.  We asked Caplin to segregate the time entries for its own fee application into one category.

### Specific Time and Expense Entries

6.      In our initial report, we noted that between April 30, 2001, and December 20, 2001, Caplin billed 25.9 hours for a cost to the bankruptcy estate of $13,535.50 in fees for meetings, hearings, and teleconferences that multiple professionals attended or participated in.

*December 20, 2001:*

| | | | | |
|---|---|---|---|---|
| 12/20/01 | PVL | 2.8 | $1,400 | ($500 hr) Attend Hearing (1.7); 1/5 joint hearing (.2); conference EI, Zaleski re hearing (.9) |
| 12/20/01 | EI | 1.7 | $1,071 | ($630 hr) Joint session with Judge Wolin (.2); lunch conference with PVNL, and Zaleski to prepare (1.0); conference with Judge Wolin (.5) |

*July 3, 2001:*

| | | | | |
|---|---|---|---|---|
| 07/03/01 | EI | 1.00 | $630.00 | ($630.00 per hour). Committee conference call re bar date issue. |
| 07/03/01 | PVL | 1.40 | $700.00 | ($500.00 per hour). Telephone conference with Committee et al. |
| 07/03/01 | KNB | 1.50 | $397.50 | ($265.00 per hour). Telephone conference re: motion re: proof of claim form. |

*April 30-May 2, 2001:*

| | | | | |
|---|---|---|---|---|
| 04/30/01 | EI | 1.50 | $945.00 | Review of all materials to prepare for meeting (1.0); tele/PVNL re meeting agenda items (.5). |
| 05/01/01 | PVL | 3.90 | $1,950.00 | Prepare for committee meeting (.5), attend committee meeting (3.4). |
| 05/01/01 | TWS | 0.40 | $144.00 | Prepare for Committee meeting: review pending pleadings and correspondence. |
| 05/01/01 | EI | 6.00 | $3,780.00 | Prep for meeting (on plane) (1.5); committee meeting in DC (4.0); conf/PVNL, TWS re meeting issues (.5). |
| 05/02/01 | TWS | 3.30 | $1,188.00 | Committee meeting. |

*June 29, 2001:*

| | | | | |
|---|---|---|---|---|
| 06/29/01 | PVL | 1.40 | $700.00 | Telephone conference with Committee et al. (1.3), prepare for comm. telephone conference (.1). |
| 06/29/01 | EI | 1.00 | $630.00 | Conf call to review status of fraudulent conveyance and other calendar matters. |

We asked Caplin to explain why multiple professionals were necessary in each instance. Caplin provided a lengthy response, which is included as Response Exhibit 1 to this final report. We accept the explanations offered in Response Exhibit 1 and recommend no reductions in this

regard.

7.      In our initial report, we noted that between June 27, 2001, and September 14, 2001, seven Caplin professionals (JWD, KNB, BAN, PVL, KJB, TWS, and EI)  billed 184.7 hours for a cost to the bankruptcy estate of $52,122 on bar date research and drafting of corresponding brief.  See Exhibit A.  We asked Caplin to explain why so many professionals were needed for this task.  Caplin offered the following response:

> You ask that we explain why seven Caplin & Drysdale professionals, Elihu Inselbuch, Peter Lockwood, Ted Swett, Julie Davis, Kimberly Brown, Kris Bess, and Bree Nicolai respectively participated between June 27 and September 14, 2001 in the research and drafting of a Bar Date Brief, filed on September 10, 2001, and issues that arose in the days after that brief was filed.  (Initial Report at ¶ 7.)  This lengthy brief, a copy of which is attached hereto as Exh. A, set forth the Committee's proposal for estimating the asbestos personal injury claims against the Debtor and argued against the Debtors' contrary proposal, under which the Debtors propose to liquidate the claims to finality in the context of the bankruptcy.  This issue, which is still pending, is a core one in the Grace matter, for which the District Judge withdrew the reference.  Were Grace to be successful, substantial numbers of asbestos personal injury claimants would be disenfranchised.  Preparation of the Bar Date Brief involved careful research regarding the existing law under the bankruptcy code, state law regarding the viability of the categories of claims that Debtors seek to disallow through summary proceedings, the proper use of Daubert (which is Debtors' proffered method for creating federal law to disallow claims en masse), the constitutionality of Debtors' proposal in terms of due process, and the feasibility of Debtors' proposal. The brief also set forth the Committee's proposal for an estimation and attached an affidavit of our expert in this field, Dr. Mark Peterson, which discussed the process for estimation as well as data unique to Grace's claims history.

We accept this explanation and recommend no reduction in this regard.

8.      In our initial report, we noted that between May 9, 2001, and December 27, 2001, JWD billed 99 hours for a cost to the bankruptcy estate of $36,135 preparing a weekly status report.

| 08/10/01[1] | JWD | 1.30 | 474.50 | Review pleadings; draft status report for PVNL re same |

---

[1]Although not exhaustive, these entries represent the nature of the time entries questioned.

| 08/15/01 | JWD | 1.30 | 474.50 | Review of filings for purposes of drafting status report. |
| 08/20/01 | JWD | 1.30 | 474.50 | Draft status reports. |

We asked Caplin to explain why a professional billing at $365 per hour is summarizing documents.

Caplin offered the following response:

> You have requested further information regarding time billed by Julie Davis between May 9, 2001 and December 27, 2001 regarding the reviewing of pleadings and preparation of status reports. (Initial Report at ¶ 8.) Ms. Davis' duties in preparing these weekly reports went far beyond simple docket review, but rather included an in-depth analysis of any substantive pleadings and the drafting of a status report that included both recommendations to the Committee regarding positions to be taken on particular issues, and updates on the status of and actions taken or to be taken in pending and future matters. Where the review of pleadings was not immediately followed by a status report, Ms. Davis either delivered her recommendations orally or included those comments in a subsequent report. These reports were employed by all C&D attorneys, as well as our local counsel, to keep current with both developments in the case and the positions taken on behalf of our clients regarding the many complicated issues and court filings that the case involves. We believe that the task of preparing the status reports was appropriately assigned to a senior attorney, and that these reports allowed for an efficient distribution of information among all of the members of our legal team.

We accept this explanation and recommend no reduction in this regard.

9.     In our initial report, we noted that between April 16, 2001, and October 29, 2001,

EJS, HMD, SAT, RCS and SME billed 44.6 hours ($5,758.50) for duplicating and filing documents.

| 08/21/01[2] | EJS | .50 | 62.50 | Searched, retrieved, duplicated and sent various financial materials to L.Tersigni. |
| 08/16/01 | SAT | .25 | 28.75 | Filing of correspondence and pleadings. |
| 08/21/01 | RCS | 1.10 | 148.50 | Review and organize documents received, update pleading file indices, file correspondence and pleadings (1.1). |
| 08/31/01 | SME | .10 | 11.50 | Index and file recent pleadings. |
| 10/01/01 | HMD | .50 | 57.50 | Reviewed, Copied and Distributed Court Documents. |

We noted that these tasks might be characterized as ministerial and asked Caplin to explain why they

---

[2]Although not exhaustive, these entries represent the nature of the time entries questioned.

should be considered compensable at the stated rates.  Caplin offered the following response:

> You have asked for further explanation of time billed by Caplin & Drysdale paralegals Elyssa Strug, Heather Dowie, Samira Taylor, Robert Spohn and Stacie Evans.  (Initial Report at ¶ 9.)  As referenced in their time entries, the tasks performed by these paraprofessionals include maintaining detailed indexes and attorney reference materials on all matters relating to this bankruptcy case, analyzing and classifying each incoming document according to the matter to which it relates and procedural posture of that matter, noting any action that needs to be taken regarding the document and distributing the document to the appropriate attorney or attorneys.  These tasks require legal understanding and judgment, and hence are not merely ministerial.  Therefore, such tasks are assigned to paraprofessionals rather than the clerical staff.

We accept this explanation and recommend no reduction in this regard.

10.    In our initial report, we noted that between December 26, 2001, and December 28,

2001, Caplin billed 5.5 hours for a cost to the bankruptcy estate of $1,182.50 conducting background

reading.

| 12/26/01 | BAS | 215.00 1.00 | Background reading for asbestos litigation (1.0). |
| 12/27/01 | BAS | 215.00 2.40 | Background reading for asbestos litigation (2.4). |
| 12/28/01 | BAS | 215.00 2.10 | Background reading for asbestos litigation cases. |

We asked Caplin to explain why the bankruptcy estate should pay to educate Caplin's professionals

regarding a presumed area of expertise.  Caplin responded thus:

> You ask that we explain time spent on by Brian Skretny December 26 through 28, 2001 "reading" for asbestos litigation cases. (Initial Report at ¶ 10.) Mr. Skretny has been assigned projects relating to three bankruptcy cases, including the W.R. Grace matter, and spent several days reviewing court documents and other materials relating to the specific projects to which he had been assigned.  This preliminary research was divided among the three cases on which he worked.

We note that other Caplin professionals, as well as professionals from other firms, did not to devote

substantial time to "background reading" before beginning their work on the case.  We infer that the

16.5 hours of background reading apportioned among three cases is more properly characterized as

a part of the education of a new associate than as services provided for the benefit of the estate. Accordingly, we recommend a reduction of $1,182.50 in fees.

11.    In our initial report, we noted that between April 17, 2001, and May 8, 2001, Caplin billed 8.1 hours for a cost to the bankruptcy estate of $2,488.00 for matters relating to conflicts checks.

| 04/20/01 | RCT | 265.00 0.40 | Telecon M. Zaleski re: scheduling and conflicts check. |
| 05/08/01 | EI | 600.00 0.50 | Tele/PVNL re fraudulent transfer matters, 341 meeting, equity committee, Blackstone, conflicts, info brief (.5). |
| 04/17/01 | PVL | 500.00 0.10 | Conflicts check (.1). |
| 04/17/01 | RCT | 265.00 0.30 | E-mail PVNL re: retention/conflicts (.3); . . . |
| 04/18/01 | PVL | 500.00 0.30 | Conference with RH re: conflicts check (.1), research re: same (.2). |
| 04/30/01 | RCT | 265.00 0.80 | . . .; review conflict search results (.8). |
| 05/01/01 | RCT | 265.00 1.80 | Telecon PVNL, PP re: conflicts (.5); review conflict materials (.8); update same (.5). |
| 05/02/01 | RCT | 265.00 2.80 | . . .; conflicts check review (.5); telecon PVNL (.5); conference EI (.3); revise C&D retention application to reflect conflicts (1.5). |
| 05/03/01 | RCT | 265.00 0.30 | E-mail and telecon to PAP re: additional conflict check (.3); . . . |
| 05/08/01 | JWD | 365.00 0.80 | Conference with PVNL re disclosure of conflicts of interest (.3); memo to Committee re same (.5). |

We asked Caplin to explain why these activities should be considered compensable. Caplin responded that

> Caplin & Drysdale performs conflict checks in compliance with the requirement stated in § 327(a) of Title 11 of the United States Code (as amended, the "Bankruptcy Code") and incorporated by reference into § 328(a) of the Bankruptcy Code that an attorney employed by a committee appointed pursuant to § 1102 must be a "disinterested person" as that phrase is defined in § 101(14) of the Bankruptcy Code, as modified by § 1107(b). That the Bankruptcy Code permits for the retention of such professionals, and states requirements for their retention, indisputably demonstrates that the authors of the Bankruptcy Code believed that the services of such professionals benefited the estate. Moreover, 11 U.S.C. § 330, Local Rule

2016-2 of the Local Rules of the United States Bankruptcy Court of the District of Delaware, Amended Effective February 1, 2001, does not prevent the compensation of professionals for services provided in connection with their retention.  Nor are we aware of any other statutory provision or other rule of law that would prohibit such payments, particularly regarding those services, such as conflict checks, that are provided to comply with  Bankruptcy Code requirements.

Further, conflict checks such as those performed by Caplin & Drysdale in the present instance are not mere administrative tasks, in that they require that Caplin & Drysdale attorneys exercise discretion and make legal judgments regarding whether a potential retention poses a possible conflict within the meaning of the Bankruptcy Code.

Therefore, Caplin & Drysdale believes that all professional services provided in connection with its retention in this case, including conflict checks conducted to ensure that the firm was a "disinterested person" within the meaning of 11 U.S.C. § 101(14), benefited the estate and should be compensated.

This is a cogent argument in support of Caplin's position.  However, in our experience we have seen different courts reach different conclusions regarding the compensability of time relating to conflict checks.  We are unaware of binding precedent on this point in the Third Circuit or the District of Delaware, nor has the Court made a ruling that could be characterized as "law of the case".  We understand the necessity of the conflict-check process, but it is our opinion that such activities inure primarily to the benefit of the applicant rather than the estate and that such activities, accordingly, are noncompensable under the strictures of 11 U.S.C. § 330(a)(4)(A)(ii).  We thus recommend a reduction of $2,488.00 in fees.

## CONCLUSION

12.    Thus, we recommend approval of fees totaling $334,596.00 ($338,266.50 minus $3,670.50) and costs totaling $25,487.89  for Caplin's services from April 12, 2001, through December 31, 2001.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
              Warren H. Smith
              Texas State Bar No. 18757050
              Mark W. Steirer
              Texas State Bar No. 19139600

              900 Jackson Street
              120 Founders Square
              Dallas, Texas 75202
              214-698-3868
              214-722-0081 (fax)
              whsmith@whsmithlaw.com

              **FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on the 29th day of October 2002.

_____
              Warren H. Smith

## SERVICE LIST

**The Applicant**

Elihu Inselbuch
Caplin & Drysdale, Chartered
399 Park Avenue, 27th Floor
New York, NY 1002-4614

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones,
P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of
Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of
Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price &
Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of
Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Matthew G. Zaleski, III, Esq.
Campbell & Levine
Chase Manhattan Centre, 15th Floor
1201 Market Street, Suite 1200
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

## <u>United States Trustee</u>

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

<u>Exhibit A</u>

| | | | | |
|---|---|---|---|---|
| 06/27/01 | TWS | 360.00 | 0.20 | TC EI re bar date motion. |
| 06/28/01 | PVL | 500.00 | 0.70 | Telephone conference with EI et al re: bar date and POC motion (.2), telephone conference with Budd re: same (.1), conference with JWD re: same (.2), telephone conference with Peterson re: same (.2). |
| 06/29/01 | PVL | 500.00 | 0.40 | Review Bar Date motion (.4). |
| 07/03/01 | TWS | 360.00 | 1.00 | Conf call with Committee re bar date and proof of claim issues. |
| 07/03/01 | JWD | 365.00 | 1.90 | Conference call re Debtors motion re POC form/bar date; selection of counsel for fraudulent conveyance suits. |
| 07/05/01 | JWD | 365.00 | 5.10 | Review B&W materials re bar date, POC; draft letters to law firms re affidavits re POCs; conference with PVNL re same (4.8); conference with TWS re B&W materials (.3). |
| 07/05/01 | PVL | 500.00 | 2.00 | Telephone conference with Baena re: bar date motion etc. (1.0), conference with JWD re: same (.8), telephone conference with EI re: same (.2). |
| 07/08/01 | JWD | 365.00 | 5.20 | Research re POC/bar date issues |
| 07/09/01 | JWD | 365.00 | 5.50 | Conference with KNB re legal factual issues re bar date, POC (.9); legal research re same (2.5);..... |
| 07/10/01 | JWD | 365.00 | .90 | Conference with KNB re bar date brief; discuss legal issues |
| 07/11/01 | KNB | 265.00 | 8.40 | Draft opposition to bar date motion; Conference with JWD, Bruce summer associate and BN re: same |
| 07/12/01 | BAN | 145.00 | 4.20 | Research for KNB for brief. |
| 07/12/01 | KNB | 265.00 | 6.40 | Draft opposition to bar date motion; conference with BN re: same |
| 07/13/01 | BAN | 145.00 | 3.50 | Research for brief for KNB. |
| 07/15/01 | JWD | 365.00 | 5.50 | Revise, edit Peterson affidavit; revise, edit Brief re bar date |
| 07/16/01 | KNB | 265.00 | 9.00 | Draft opposition to POC motion |
| 07/17/01 | BAN | 145.00 | 4.70 | Research and discussing findings w/KNB |
| 07/17/01 | KNB | 265.00 | 8.40 | Draft opposition to POC motion |
| 07/18/01 | BAN | 145.00 | 1.40 | Research and reviewing brief. |

| 07/18/01 | KNB | 265.00 | 6.10 | Draft opposition to POC motion;.... |
| 07/20/01 | JWD | 365.00 | 1.30 | Revise, edit POC brief |
| 07/22/01 | JWD | 365.00 | 2.30 | Revise, edit POC brief |
| 07/25/01 | JWD | 365.00 | 4.30 | Revise, edit POC brief |
| 07/27/01 | JWD | 365.00 | 4.60 | Revise, edit POC brief |
| 07/30/01 | KNB | 265.00 | 4.40 | Conference with JWD re: opposition to bar date motion |
| 07/30/01 | JWD | 365.00 | 3.30 | Revise, edit M. Peterson affidavit, POC brief; discuss with KNB |
| 07/31/01 | KNB | 265.00 | 2.50 | Draft opposition to bar date brief; conference with JWD re: same |
| 07/31/01 | JWD | 365.00 | 2.30 | Revise, edit brief; conference with KNB re same |
| 08/01/01 | KNB | 265.00 | 1.70 | Draft opposition to bar date motion |
| 08/03/01 | JWD | 365.00 | 1.30 | Revise, edit POC brief |
| 08/06/01 | KNB | 265.00 | 1.30 | Draft opposition to bar date motion |
| 08/12/01 | PVL | 500.00 | 1.30 | Review draft bar date opposition |
| 08/14/01 | KNB | 265.00 | 3.40 | Draft bar date motion (3.0); conference with PVNL re: bar date brief (.4) |
| 08/14/01 | PVL | 500.00 | 2.60 | Work on bar date oppo. (.2), conference with KNB re: same (2.4) |
| 08/15/01 | KNB | 265.00 | 3.00 | Draft bar date motion |
| 08/21/01 | KJB | 160.00 | 4.00 | Research into proof of claim and bar date |
| 08/22/01 | TWS | 360.00 | .30 | TC Zaleski re bar date issues and correspondence to A. Rich re same |
| 08/22/01 | KJB | 160.00 | 6.90 | Research re: bar date and proof of claim brief |
| 08/22/01 | KNB | 265.00 | 5.00 | Conference with KJB re: research (.3); draft opposition to bar date motion (4.7) |
| 08/23/01 | KJB | 160.00 | 7.10 | Research, drafting re date, proof of claim |
| 08/23/01 | KNB | 265.00 | 1.90 | Draft oppo. to bar date motion |
| 08/23/01 | KNB | 265.00 | 4.40 | ....; draft opposition to bar date motion (3.4) |
| 08/24/01 | KJB | 160.00 | 7.10 | Research re bar date and proof of claim brief |
| 08/27/01 | KNB | 265.00 | 3.60 | Conference with KJB re: brief in opposition to bar date motion (.5); draft same (2.6); conference with JWD and Mark Peterson re: affidavit (.5) |
| 08/27/01 | KJB | 160.00 | 4.30 | Meeting with KNB; research and draft re: bar date and proof of claim filing |
| 08/28/01 | JWD | 365.00 | 2.70 | .......; revise, edit brief (1.8) |
| 08/29/01 | PVL | 500.00 | .10 | Work on bar date brief (.1) |
| 08/29/01 | KNB | 265.00 | 1.10 | Telephone call to R. Turkowicz re: brief |

| | | | | |
|---|---|---|---|---|
| | | | | (.1); conference with JWD re: same (.5); edit brief in opposition to bar date motion (.5) |
| 08/29/01 | JWD | 365.00 | 1.90 | Revise, edit brief; conference with K. Brown re same |
| 09/03/01 | PVL | 500.00 | 1.70 | Work on bar date oppo. (1.7) |
| 09/04/01 | KNB | 265.00 | 1.20 | Draft bar date opposition |
| 09/04/01 | KNB | 265.00 | .50 | Conference with JWD and paralegal re: bar date brief |
| 09/04/01 | PVL | 500.00 | .30 | Revise bar date brief (.2), conference with KNB re: same (.1) |
| 09/04/01 | JWD | 365.00 | 2.90 | Revise POC brief (.5); Peterson affidavit (.8); revise, edit same (1.6) |
| 09/05/01 | EI | 630.00 | 1.50 | Reviewed draft brief with KNB re: bar date. |
| 09/05/01 | KNB | 265.00 | 1.50 | Conference with JWD, PVNL, EI, M. Zaleski and M. Peterson re: opposition to bar date motion; (1.5); edit same |
| 09/05/01 | KNB | 265.00 | 5.10 | Edit bar date motion |
| 09/05/01 | PVL | 500.00 | .60 | Conferences with KNB re: bar date oppo. (.6) |
| 09/06/01 | KNB | 265.00 | .30 | Revise opposition to bar date motion |
| 09/06/01 | KNB | 265.00 | .40 | Conference call with PVNL and M. Zaleski re: bar date opposition |
| 09/06/01 | KNB | 265.00 | .30 | Conference with EI re: opposition to bar date motion |
| 09/10/01 | JWD | 365.00 | 1.50 | Telephone conference with M. Peterson, M. Zaleski, KNB re POC brief (.8); finalize for filing (.7) |
| 09/14/01 | KNB | 265.00 | .40 | Review statement of facts |

Response Exhibit 1

I.    **Staffing of Hearings and Meetings**

You ask that we explain why it was necessary for more than one Caplin & Drysdale professional to attend several hearings or meetings.  (Initial Report at ¶ 6)   Those explanations are as follows:

A.    **Hearing before Judge Wolin, December 20, 2001**

The December 20 hearing was attended by Mr. Inselbuch, Mr. Lockwood and the Committee's local counsel.  In general, Mr. Inselbuch and Mr. Lockwood share responsibility for all bankruptcy matters, with Mr. Inselbuch, who is in overall charge of each bankruptcy, addressing broad policy matters, negotiations and reorganization plan issues, and Mr. Lockwood supervising all day-to-day activities.  Having two senior attorneys share these responsibilities is not duplicative, but rather permits for an efficient division of labor between the development of advice to and policy for the clients and its implementation.  While Mr. Inselbuch and Mr. Lockwood rarely attend the same meetings, they do so when such meetings, including the hearing with Judge Wolin referenced above, involve major policy issues or negotiations, with or without the clients in attendance, as well as negotiations with other constituencies.  Where matters of a global nature are involved, we believe that it would be inappropriate to leave our client, the Asbestos Personal Injury Claimants Committee (the "Committee") with only one pair of "eyes and ears."

The December 20 hearing was a joint session called by Judge Wolin concerning all of the five bankruptcy cases that he had been appointed to supervise.  After addressing the bankruptcies' constituencies as whole, Judge Wolin met with representatives of the various committees of each bankruptcy, to discuss the status and significant issues in each respective case. It was essential that both Mr. Inselbuch and Mr. Lockwood (as well as the Committee's local counsel) be present at these initial meetings with Judge Wolin, which addressed all aspects of each case, including strategy, reorganization matters, day-to-day procedure and such upcoming issues as pending or anticipated adversary actions.  The time spent at the December 20 hearing was divided among the five bankruptcy matters involved.

B.    **Committee telephone conference, July 3, 2001**

The Committee conference call referenced in these time entries concerned the Debtors' Motion to Establish a Bar Date and Case Management Order ("Bar Date Motion").  The Bar Date Motion asked the Court, not merely to establish a bar date for asbestos claims, but also to adjudicate tens of thousands of asbestos claims that would have been filed in the bankruptcy as the result of the bar date.  Had this scheme been approved, either the claimants would have been deprived of their due process rights, or the bankruptcy court would have been virtually paralyzed with asbestos claims, thousands of which would have required trials as the result of the state laws under which they had been filed. The July 3 telephone conference was an "all hands" meeting which

addressed the work and issues raised by the Bar Date Motion.  Mr. Lockwood attended the meeting to discuss the procedural and logistical aspects of the Committee's response, as well as to allocate assignments among Caplin & Drysdale professionals and the members of the Committee, while Mr. Inselbuch addressed the strategic and policy questions involved and Kimberly Brown, a Caplin & Drysdale senior attorney who had coordinated and written the response to a similar motion in the Babcock & Wilcox bankruptcy, briefed the Committee on the legal and Constitutional issues raised by the Bar Date Motion.

### C.    Committee telephone conference, June 29, 2001

The June 29 Committee telephone conference involved a preliminary report to the Committee regarding the Bar Date Motion and discussions regarding how to address fraudulent conveyance litigation concerning the property damage committee.  These discussions involved both initial planning for the response to the Bar Date Motion and the property damage litigation and discussions of strategy regarding these two matters. Since the matters discussed involved the respective areas of responsibility and expertise of both Mr. Inselbuch and Mr. Lockwood, both attorneys participated in the telephone conference.

### D.    Committee meeting, May 1, 2001

The May 1 meeting was attended by Mr. Lockwood, Mr. Inselbuch and Ted Swett. Mr. Swett supervises many of the adversary actions and additional litigation relating to W.R. Grace and other bankruptcy cases.  The meeting involved a discussion of issues relating to the Fresenius and Sealed Air transactions, which the Committee ultimately challenged as fraudulent transfers.  The May 1 meeting also included discussions of additional litigation matters that Mr. Swett was monitoring on behalf of the Committee, including the property damage litigation, described above, and other potential and pending litigation.  Finally, the meeting addressed negotiation and strategy issues connected with both these matters and the bankruptcy as a whole, as well as day-to-day questions relating to the bankruptcy.  Therefore, both Messrs. Inselbuch and Lockwood were in attendance.