## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | |
| | § | **Chapter 11** |
| **W.R. GRACE & CO., et al** | § | **Jointly Administered** |
| | § | **Case No. 01-1139 (JKF)** |
| **Debtors** | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## FIRST INTERIM APPLICATION OF HOLME ROBERTS & OWEN, L.L.P.

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its

capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the First

Interim Fee Application Request of Holme Roberts & Owen, L.L.P. (the "Application").

## BACKGROUND

1.      Holme Roberts & Owen, L.L.P. ("HRO"), was retained as special environmental

counsel for the debtors.  In the Application, HRO seeks approval of fees totaling $728,315.50

and costs totaling $113,826.56 for its services from April 2, 2001, through December 31, 2001

(the "Application Period").

2.      In conducting this audit and reaching the conclusions and recommendations

contained herein, we reviewed in detail the Application in its entirety, including each of the time

entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330,  Local

Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of

Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for

Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330, Issued January 30, 1996,(the Guidelines"), as well as for consistency with

precedent established in the United States Bankruptcy Court for the District of Delaware, the

United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on HRO an initial report based on our review and received a response from HRO, portions of which response are quoted herein.

## **DISCUSSION**

### General Issues

3.      In our initial report, we noted that the Application states the requested rate for copying charges but requests reimbursement at a cost of $0.20 per page for the time period April 2, 2001, through October 31, 2001, despite a $0.15-per-page limit on such charges.  We further noted that the Application did not specify the number of copies generated and asked for this information to facilitate our review of the appropriateness of the copy charges.  HRO provided the requested information and calculated an appropriate reduction in its request for reimbursement for inhouse photocopying:

> Although HRO initially sought reimbursement at a cost of $.20 per page for the time period April 2, 2001 through October 31, 2001, this amount was decreased to $.15 per page pursuant to discussions between HRO and the United States Trustee's Office.  In response to and pursuant to the direction of the U.S. Trustee's Office, HRO submitted its Certification of No Objection Regarding Docket No. 1092, wherein it voluntarily reduced its cost reimbursement request by $972.65 for the period April 2, 2001 through September 30, 2001.  This reduction included a $.05 per page reduction in all copying costs for the period April 2, 2001 through September 30, 2001.  Accordingly, the total number of copies generated by HRO for the period of April 2, 2001 through September 30, 2001 was 19,393 and the total reimbursement requested by HRO therefore at $.15 per page is $2,908.95.  This amount represents a $969.65 reduction from the amount requested in the Application, but which is accurately reflected in and included within the voluntary reduction of $972.65 in costs set forth in the Certification of No Objection enclosed herewith.  Through inadvertence, HRO failed to decrease it reimbursement request for the period October 1, 2001 through October 30, 2001 to reflect the decrease to $.15 per page for copies during that period.  The number of copies generated by HRO for the period October 1, 2001 through October 30, 2001 was 5,728.  Accordingly, HRO agrees to voluntary reduce it reimbursement

request by $286.40, which reflects a $.05 decrease per page for copies generated from October 1, 2001 through October 30, 2001.  The total number of copies generated by HRO from October 1, 2001 through December 31, 2001 was 55,182.  HRO requests reimbursement at $.15 per page or $8,277.30 for copying charges from October 1, 2001 through December 31, 2001, which reflects the $286.50 reduction discussed herein.

The response indicates that the $0.20-per-page rate was applied to a total of 25,121 copies, and $0.05 times 25,121 equals $1,256.05.  Accordingly, we recommend a reduction of $1,256.05 in expenses.

4.      In our initial report, we noted that HRO professionals TWK and GMB did not consistently provide adequate detail in their time entries.  We asked HRO to advise these professionals to provide greater detail in the future.  HRO responded, "In compliance with the Report and Local Rule 2016-2(d), HRO has instructed all timekeepers, including timekeepers identified as TWK and GMB to be more consistent in providing greater detail in their respective time entries."

5.      We noted an unusually serious example of lack of detail in the time entries recorded by KWL where he bills 28 hours between May 1, 2001, and May 11, 2001, for a cost to the bankruptcy estate of $8,400 for activities bearing the description "work on bankruptcy matters" or similarly vague descriptions.

| 05/01/01 | KWL | Work on bankruptcy matters. | 3.00 | $ | 900.00 |
| 05/02/01 | KWL | Work on bankruptcy matters. | 3.00 | | 900.00 |
| 05/03/01 | KWL | Work on bankruptcy matters. | 3.00 | | 900.00 |
| 05/04/01 | KWL | Work on bankruptcy matters. | 3.00 | | 900.00 |
| 05/07/01 | KWL | Deal with bankruptcy issues. | 3.00 | | 900.00 |
| 05/08/01 | KWL | Work on bankruptcy issues. | 3.00 | | 900.00 |
| 05/09/01 | KWL | Work on bankruptcy issues. | 3.00 | | 900.00 |

| 05/10/01 | KWL | Work on bankruptcy matters. | 3.00 | 900.00 |
| 05/11/01 | KWL | Work on bankruptcy issues. | 4.00 | 1,200.00 |

We asked HRO to demonstrate the compensability of these activities.  HRO offered the

following response:

> At the time of the Debtors' bankruptcy filings, HRO was handling 14 distinct
> matters for the Debtors.  KWL is the primary client contact on all matters and,
> therefore, devoted substantial time to various client related issues.  Time was
> spent working through various internal client issues necessitated by the
> bankruptcy filings, coordination of HRO timekeepers, communications with
> outside counsel, co-counsel, vendors, court reporters and expert witnesses.  For
> example, Debtor W. R. Grace was a potentially responsible party at the Casmalia
> Superfund site in Santa Barbara, California along with 120 other corporate
> entities.  By volume, W. R. Grace (or its predecessor Samson Investment
> Company) was alleged to be the largest contributor to the site and was effectively
> the "leader" of the group.  The bankruptcy filing and W. R. Grace's decision to
> withdraw from participation in the group, created substantial uncertainty which
> necessitated substantial efforts by KWL to coordinate client and outside counsel
> issues, expert witness fees and related vendor issues.  Whenever possible, greater
> description was provided and allocated to specific matters.  However, substantial
> efforts were necessary which had broad applicability and could not be
> appropriately allocated to specific matters.

Allocation difficulties do not explain the absence of activity descriptions.  We must assume that

KWL knew what he was doing and could have created contemporaneous records as required

under the Guidelines.  Moreover, we find the following to be particularly troubling: "Whenever

possible, greater description was provided and allocated to specific matters.  However,

substantial efforts were necessary which had broad applicability and could not be appropriately

allocated to specific matters."  Thus, we are not only unsure as to what exactly KWL was doing

but are also unsure as to which estate the activities are intended to benefit.  In view of the

foregoing, we think a 50% reduction is appropriate.  Accordingly, we recommend a reduction of

$4,200 in fees.

6.      In our initial report, we noted that HRO professionals JLS and CLN tended to lump their time entries.  We asked HRO to advise these professionals to avoid lumping in the future.  HRO responded that it has done so.

7.      In our initial report, we noted that during the November 2001 billing cycle, HRO professional Kenneth W. Lund's rate increased from $300 to $325 per hour, and Charlotte L. Neitzel's rate was raised from $275 to $300 per hour.  We asked HRO to explain these rate changes as is required under the Guidelines.  HRO offered the following response:

> As set forth in HRO's initial Application for Employment, which was approved by the Court on July 18, 2001 *nunc pro tunc* April 2, 2001, HRO's hourly rates are subject to periodic adjustments to reflect economic and other conditions.  KWL and CLN increased their hourly rates during the compensation period by $25.00 per hour.  Neither KWL nor CLN had increased their hourly rates with respect to these Debtors for one year prior to the increase.  Such a periodic adjustment should be accepted as being a reasonable periodic adjustment.

We accept this explanation and recommend no reduction in this regard.

8.      In our initial report, we noted that the Application does not have a separate category for HRO's own fee application preparation.  We asked HRO to use a separate project category for time devoted to seeking its own compensation in the future.  HRO responded that it "has created and will continue to use in the future a separate project category to record time and expenses relating to HRO's preparation and prosecution of its fee applications."

<u>Specific Time and Expense Entries</u>

9.      In our initial report, we noted that Casner & Edwards, as special litigation counsel

for the debtors, spent more than 3,187.60 hours[1] for a cost to the bankruptcy estate of $239,070

conducting document reviews at the Cambridge/Winthrop storage site during the Application

Period and that HRO billed at least an additional 1,433.5 hours[2] for a cost to the bankruptcy

estate of $136,481 on the same activity during the Application Period.  We expressed concern

that there may have been duplication of efforts, but we also noted meetings between the two

firms seemingly intended to avoid such duplication.  We asked HRO to advise us of the efforts

made to coordinate and avoid duplication of efforts.  HRO offered the following response:

> Casner & Edwards, HRO and Reed Smith joined efforts to conduct a
> comprehensive document review of the Cambridge/Winthrop storage collections.
> The law firms represent the Debtors in different capacities:  (a) Casner & Edwards
> has been the Debtors' national discovery counsel for over fifteen (15) years and
> maintains a document repository in Boston, MA, at "Winthrop Square,"  (b) HRO
> is the Debtors' special environmental counsel, and (c) Reed Smith represents the
> Debtors in the attic insulation class action property damage case.  Pursuant to
> multiple distinct discovery requests, the three law firms determined that a
> comprehensive review of the Debtors' documents would be necessary to comply
> with the various discovery requests.  In order to be as efficient as possible, the
> three law firms combined efforts allowing the project to be completed more
> expeditiously and with less duplication of efforts.  By working together to review
> the documents for all pending and expected discovery requests, the three firms
> avoided the need for each to review the same set of documents at different times
> for different purposes.  The law firms have shared the responsibility and the
> workload associated with this massive document review project.  Indeed, the very
> purpose of this approach has been to avoid duplicative efforts.

We accept this explanation and recommend no reduction in this regard.

    10.    In our initial report, we noted that between April 3, 2001, and December 19, 2001,

---

[1]This figure represents only that time which could be identified without a full secondary review of the application. We have chosen to highlight the paralegal time only due to its ease of segregation on this project. These figures do not include the associated travel expenses or associate time entries.  Therefore, these figures represent only a fraction of the total expense.

[2]We again highlight only the paralegal time because of its ease of segregation on this project.

HRO billed 9.1 hours extra for a cost to the bankruptcy estate of $2,430 for time not reflected in the parentheticals within the relevant time entries.  See Exhibit A.  We asked HRO to explain these discrepancies or to make the appropriate reductions.  HRO addressed each instance in a response appended hereto as Response Exhibit 1.  We accept HRO's explanation regarding the first item on Exhibit A, and note that HRO agrees that the other items reflect typographical or arithmetic errors and that our proposed reductions for such time entries are properly calculated. We thus recommend a reduction of $2,305 in fees.

11.     We noted that between June 11, 2001, and December 21, 2001, HRO professionals SN, NKA, KJC, CLN, ICM, MBK, KWL, JDM, MBF and GMB  billed 506.8 hours for a cost to the bankruptcy estate of $135,239 for work relating to the administrative record.  See Exhibit B.  We asked HRO why it was necessary to assign ten professionals to this task.  HRO offered a response appended hereto as Response Exhibit 2.  We accept the explanation and recommend no reduction in this regard.

12.     In our initial report, we noted that between April 6, 2001, and November 4, 2001, HRO billed 51.6 hours for a cost to the bankruptcy estate of $7,155 for non-working travel time that was billed at the timekeeper's full rate.

| 04/06/01 | RJP | Travel from Boston to Denver. | 6.00 | 1,260.00 |
| 04/06/01 | TWK | Travel from Boston to Denver re EPA 104(e) review. | 6.00 | 660.00 |
| 04/06/01 | MCL | ........; travel to Denver (6.0). | 6.00 | 540.00 |
| 08/19/01 | MCL | Travel to Boston | 6.00 | 540.00 |
| 08/24/01 | MCL | ......; travel to Denver (4.0). | 4.00 | 360.00 |
| 09/04/01 | KWL | ....; travel to Montana re same (2.50). | 2.50 | 750.00 |
| 09/05/01 | KWL | ......; return to Denver (2.50). | 2.50 | 750.00 |

| 09/05/01 | KWL | ......; return to Denver (2.50). | 2.50 | 750.00[3] |
|----------|-----|----------------------------------|------|-----------|
| 09/20/01 | MCL | ......; travel to Boulder office to locate original boxes to be copied re same and return to Denver to meet with copy company (6.50). | 6.50 | 585.00 |
| 11/04/01 | MCL | Review revised document review guidelines and associated e-mails while traveling to Boston. (2.4 N.C.). | 4.80 | 432.00 |
| 11/04/01[4] | JLS | Travel to Boston while reviewing document review procedures (2.4 N.C.). | 4.80 | 528.00 |

HRO offered the following response (internal numeration deleted):

> Due to intertwined nature of the comments contained in Paragraphs 12 and 13 of the Report, HRO shall respond to both paragraphs as if the comments were contained in Paragraph 13.

> HRO concedes that between April 6, 2001 and November 4, 2001, certain timekeepers, either through inadvertence or error, billed the bankruptcy estate for non-working travel time at the timekeeper's full rate. Accordingly, HRO would agree to a 50% reduction in the time identified in the Report, or a reduction of $3,577.50 in the fees requested for that time period. Additionally, HRO would agree to an additional $375.00 reduction in the fees requested for that time period to rectify KWL's time entries of 9/5/01 wherein travel time was billed duplicatively to both the Libby-Access Case and the Libby-Cost Recovery categories.

Thus, HRO is amenable to a reduction of $3,952.50, which fully addresses our concerns. We accordingly recommend a reduction of $3,952.50 in fees.

13.    In our initial report, we also noted that in several instances time entries indicated that it was the timekeeper's intention that his entry be calculated at 50% of his billable rate, but the Application did not indicate that this reduction was made. We asked HRO to instruct all

---

[3]KWL's travel time to Denver appears in both Libby-Access Case and Libby-Cost Recovery categories.

[4]Although the entries for 11/01/01 are used as an example of non-compliance with the 50% non-working travel rule, please note that this trip also implicates Paragraph II.D.5 of the Guidelines which provides that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."

personnel who may take part in the conversion of raw billing data into the proper billing format

to make the reduction, especially when instructed to do so by the timekeeper himself.  HRO's

response is quoted in paragraph 12 above.

14.    In our initial report, we noted that between November 5, 2001, and November 30,

2001, HRO billed 97.7 hours for a cost to the bankruptcy estate of $13,051.50  for meetings,

hearings, and teleconferences in which multiple professionals participated.

| 11/05/01 | MCL | Conference at Winthrop Square with Matt Murphy, Susan Haines, JSherman, JWingard and veteran temps re: resumption of document review and changes to document coding protocol (1.9 hrs.); . . . | 1.90 | 171.00 |
| 11/05/01 | JW | Attend meeting at Winthrop with MMurphy to go over review procedures and new target sheets (2.0); . . . | 2.00 | 220.00 |
| 11/09/01 | MCL | Review and replace target sheets in boxes that were ready for scanning at Cambridge (5.5 hrs.); review various email correspondence re: document review issues and protocols and re-read 104(e) requests (2.0); travel to Denver (2.0 hrs.) (2.0 N.C.). | 9.50 | 855.00 |
| 11/09/01 | JLS | Review documents for responsiveness to EPA 104(e) requests and class action requests and replace target sheets in boxes that were ready for scanning at Winthrop Square (5.0); telephone conferences with CLatuda and KJCoggon re document review procedures and protocols (.3); conferences with Winthrop Square temps re coding issues and document responsiveness issues (.6); review document review procedures (2.0 ); travel to Denver (2.0) (2.0 N.C.). | 9.90 | 1,089.00 |
| 11/09/01 | JW | Review documents at Cambridge for responsiveness to EPA information requests (6.0); travel from Boston to Colorado Springs (4.0) (4.0 N.C.). | 10.00 | 1,100.00 |

| 11/16/01 | TTT | Review Grace documents for responsiveness to EPA requests (6.5); travel from Boston to Colorado Springs (4.0) (4.0 N.C.). | 10.50 | 1,837.50 |
|---|---|---|---|---|
| 11/16/01 | TWK | Review documents at Grace Cambridge headquarters in response to EPA 104(e) request and litigation discovery (5.50); return to Denver from Grace headquarters (3.00) (3.0 N.C.). | 8.50 | 935.00 |
| 11/26/01 | BAT | . . .; travel to Boston for document review (2.8) (2.8 N.C.). | 2.80 | 588.00 |
| 11/26/01 | JLS | Travel to Boston (3.0) (3.0 N.C.). | 3.00 | 330.00 |
| 11/26/01 | JW | Travel to Boston for document review (3.5) (3.5 N.C.). | 3.50 | 385.00 |
| 11/30/01 | JAH | Review and QC documents in Cambridge for EPA Fourth Request for Information, supplemental production and class action lawsuits (5.0), travel from Boston to Denver (3.0) (3.0 N.C.). | 8.00 | 1,760.00 |
| 11/30/01 | BAT | Review documents in Cambridge for responsiveness, target for scanning, and answer questions of other reviewers (3.4); conference with Jennifer Umali re reviewing old research notebooks n basement vault and review vault storage to plan review (0.5); travel from Boston to Denver (3.0) (3.0 N.C.). | 6.90 | 1,449.00 |
| 11/30/01 | JLS | Review and respond to emails re document review procedures (1.4); Review and QC documents in Cambridge for EPA Fourth Request for Information, supplemental production and class action lawsuits including train and supervise temporary employees and conferences with BATracy re document review protocols (6.0); travel to Denver (3.0) (3.0 N.C.). | 10.40 | 1,144.00 |
| 11/30/01 | JW | Review documents at Cambridge re responsiveness to EPA and plaintiff requests, including coding of same (7.30); return travel from Boston (3.50) (3.5 N.C.). | 10.80 | 1,188.00 |

We asked HRO to explain why multiple professionals were necessary in each instance.  HRO

offered a response that is appended hereto as Response Exhibit 3.  We accept the explanation and recommend no reduction in this regard.

15.      In our initial report, we noted that the Application seeks reimbursement of overtime costs in the amount of $20,562.

| | |
|---|---|
| IS Overtime | $472.50 |
| Overtime | $14,422.50 |
| Overtime | $467.50 |
| Overtime | $3,601.25 |
| Overtime | $1,598.25 |

HRO offered the following response:

> Virtually all of the overtime expenses for which HRO requests reimbursement are isolated to and attributable to matter numbers 00300  and 00302 (Document Production).  HRO incurred overtime expenses in this matter due to the Debtors' obligations to respond to a request for information propounded by the EPA under Section 104(a) of CERCLA, as well as discovery in related litigation matters.  Grace and its counsel were obligated to respond to the document requests within the very short time line established by the Court.  In order to meet the deadlines, HRO support staff was required to work overtime.  HRO is required to pay its support staff at a greater rate for overtime work.  The combination of the short deadlines and the volume of documents that HRO was required to review compelled HRO support staff to work overtime in this particular matter.  HRO should be reimbursed for its overtime expenses in this particular matter due to the unique circumstances presented.  Accordingly, the overtime expenses noted above should not be classified as nonreimbursable overhead.

We accept this explanation and recommend no reduction in this regard.

16.      In our initial report, we noted that HRO billed the bankruptcy estate $7,200 for maintenance and repairs performed by an outside vendor.

| | | |
|---|---|---|
| 07/13/01 | Other Expenses: VENDOR: JSL Incorporated; INVOICE#: 071301; DATE 7/13/2001 - Repairs and Maintenance, Denver, March 2001. | 1,800.00 |
| 10/27/01 | Other Expenses: VENDOR: JSL Incorporated; INVOICE#: 11/06/01; DATE: 10/27/2001 - Maintenance & repairs for the month of May and June, 2001. | 3,600.00 |

10/27/01      Other Expenses: VENDOR: JSL Incorporated; INVOICE#: 11/06/01A;  1,800.00
DATE: 10/27/2001 - Maintenance & repairs for the month of April
2001.

We asked HRO to provide additional detail regarding these charges.  HRO offered the following

response:

> The final expense listed in Paragraph 16, $1800 invoiced on 10/27/01 was not
> charged to the estate in the Application and has not been included in the request
> for reimbursement.  Pursuant to discussions with the U.S. Trustee's Office, HRO
> agreed to reduce $1800 of the $3600 charged on 10/27/01.  Said amount was
> written off in the Certificate of No Objection Regarding Docket No. 1492 filed
> with the Court on or about February 6, 2002 and included herewith for your
> reference.  HRO hereby agrees to reduce its expense reimbursement request by the
> additional $1,800.00 included in the 10/27/01 entry and by the $1,800.00 billed on
> July 13, 2002.

We understand this response to mean that, of the referenced charges, $1,800 was not billed to the

estate in the first place and that HRO is taking a voluntary reduction regarding the remaining

$5,400.  We accordingly recommend a reduction of $5,400 in expenses.

## CONCLUSION

17.     Thus, we recommend approval of fees totaling $717,858.00 ($728,315.50 minus

$10,457.50) and costs totaling $107,170.51 ($113,826.56 minus $6,656.05) for HRO's services

from April 2, 2001, through December 31, 2001.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
　　　　　Warren H. Smith
　　　　　Texas State Bar No. 18757050
　　　　　Mark W. Steirer
　　　　　Texas State Bar No. 19139600

900 Jackson Street
120 Founders Square
Dallas, Texas 75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on the 29th day of October 2002.

_____
Warren H. Smith

## SERVICE LIST

**The Applicant**
Elizabeth K. Flaagan, Esq.
**Holme Roberts & Owen, L.L.P.**
1700 Lincoln Street, Ste. 4100
Denver, Colorado 80203

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Matthew G. Zaleski, III, Esq.
Campbell & Levine
Chase Manhattan Centre, 15th Floor
1201 Market Street, Suite 1200
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

## United States Trustee

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

## EXHIBIT A

| | | | | |
|---|---|---|---|---|
| 05/16/01 | EKF | E-mails to and from Sam Schwartz re outstanding issues (.3); telephone conference with JDMcCarthy re Libby, Montana litigation (.2); telephone conference with Sam Schwartz re OCP order and affidavit (.2); telephone conferences with KWLund re application and bankruptcy issues (.3); draft affidavit of Ken Lund re OCP retention.<br>***Overbilled: $125.00*** | 1.50 | 375.00 |
| 04/03/01 | KWL | Finalize comments on primary jurisdiction brief; review Matt Cohn letter (.40); review US v. KDC complaint for cost recovery; telephone conference with David Cleary re same (.60); telephone conference with Mario Favorito re temporary shut down of document production efforts (.60).<br>***Overbilled: $1,320.00*** | 6.00 | 1,800.00 |
| 08/08/01 | KWL | Telephone conferences with Jim Stout and Alan Stringer re export plant issues work plan and addendums for continuation of work at export plant (2.0); telephone conference with Mark Owens disposal costs and water line estimates (1.0).<br>***Overbilled: $600.00*** | 5.00 | 1,500.00 |
| 09/05/01 | KWL | Prepare for and attend pretrial conference with EPA (1.20); meet with Gary Graham re case status and strategy (.70); return to Denver (2.50).<br>***Overbilled: $30.00*** | 4.50 | 1,350.00 |
| 09/28/01 | EES | Meeting with potential accounting cost expert (.9); revise and finalize case strategy memo (3.3); conference call with potential NCP compliance expert (1.2).<br>***Overbilled: $21.00*** | 5.50 | 1,155.00 |
| 05/07/01 | LSD | Telephone conference with Elizabeth Mack re E&P issues and bankruptcy issues (.40); review E&P spreadsheet and bankruptcy status issues (.40); telephone conference with KWLund re same (.20).<br>***Overbilled: $225.00*** | 2.00 | 450.00 |
| 10/17/01 | KJC | Prepare for and participate in conference call with Andy Trevelise, Susan Haines, and Matt Murphy regarding scanning vendor selection (0.7); conference with KWLund regarding document production considerations in light of NOV letter from EPA (0.2).<br>***Overbilled: $24.00*** | 1.00 | 240.00 |

| 11/05/01 | JLS | Review documents for responsiveness to EPA 104(e) requests and class action requests and replace target sheets in boxes that were ready for scanning in Cambridge (7.4 hrs.); telephone conferences with CLatuda, KCoggon, and Matt Murphy re document review procedures and protocols (.4 hrs.) *Overbilled: $22.00* | 8.00 | 880.00 |
| 11/15/01 | MCL | Review and replace target sheets in boxes at Winthrop Square that had been previously target sheeted for scanning (7.1 hrs.); telephone conferences with MMurphy, JSherman and SHaines re document review issues and scanner issues (.5 hrs.). *Overbilled: $54.00* | 8.20 | 738.00 |
| 12/19/01 | MCL | Review documents at Cambridge to determine responsiveness to EPA information requests and plaintiff document requests including coding of same (5.4); telephone conferences with Angela Anderson re today's delivery and pickup by ONSS (.2); telephone conference with Matt Murphy re same (.1); log in boxes delivered by ONSS (.6); reconcile with lists of boxes sent out to ONSS and Lason, and lists of boxes sent to Winthrop for review (3.6) *Overbilled: $9.00* | 10.00 | 900.00 |

# EXHIBIT B

| | | | | |
|---|---|---|---|---|
| 06/11/01 | SN | Conferences with MAAdams re appeal on administrative order, and with LASchuh re same (2.50); research Executive Order re Oil Well activity information disclosure and CERCLA re amendments to same (2.50). | 5.00 | 575.00 |
| 06/12/01 | SN | Research environmental cases re Amended Emergency Orders. | 5.80 | 667.00 |
| 06/13/01 | SN | Review cases re Administrative orders (3.0); research statutes re CERCLA settlements and judicial review of Administrative orders and CFR for statutes or cases re appealing an amended administrative order of EPA (6.0). | 9.00 | 1,035.00 |
| 06/14/01 | SN | Research EAB cases re amended orders and appeals of administrative orders (7.30); telephone conference with LAShuh re findings of same (.20). | 7.50 | 862.50 |
| 06/15/01 | SN | Review EAB cases re amended emergency orders | 2.00 | 230.00 |
| 06/18/01 | SN | Draft summary of research and finding re appeal to amended administrative order (2.0); research scope of jury review re administrative orders and cases of consent decrees (2.0); conference with LASchuh re appeal to amended administrative order (.30). | 4.30 | 494.50 |
| 06/27/01 | SN | Draft memo re research history on appealing an amended administrative order. | 2.00 | 230.00 |
| 10/02/01 | CLN | Conference with KWLund re comments on supplemental administrative record (.30); work on administrative record comments (.50) | 0.80 | $220.00 |
| 10/02/01 | KWL | Telephone conference with Bill Corcoran re Administrative Record review (.30);..... | 0.30 | $90.00 |
| 10/03/01 | CLN | Work on admin record comments | 1.00 | $275.00 |
| 10/03/01 | KWL | .....; begin review of Supplemental Administrative Record (3.40);...... | 3.40 | $1,020.00 |
| 10/04/01 | CLN | Work on administrative record comments. | 3.30 | $907.50 |
| 10/05/01 | CLN | Work on administrative record comments. | 1.00 | $275.00 |
| 10/06/01 | CLN | Work on administrative record. | 2.00 | $550.00 |
| 10/07/01 | CLN | Prepare Grace administrative record comments. | 3.00 | $825.00 |
| 10/10/01 | CLN | Review of administrative record and prepare comments (4.3). | 4.30 | $1,182.50 |
| 10/11/01 | CLN | Work on administrative record comments (2.0); conference with KWLund re Grace administrative records comments (.25). | 2.30 | $632.50 |
| 10/10/01 | CLN | Review of supplemental administrative record. | 8.00 | $2,200.00 |
| 10/15/01 | CLN | Work on Administrative Record comments. | 5.80 | $1,595.00 |
| 10/16/01 | CLN | Administrative Record comments (.50); identify number pages in Administrative Record to prepare for extension letter (.50). | 1.00 | $275.00 |
| 10/16/01 | MBF | Review supplemental administrative record at request of CLNeitzel (2.50); send e-mail to KLund, KCoggon, and CLNeitzel re result (.10). | 2.60 | $234.00 |

| 10/17/01 | CLN | Work on Administrative Record comments; confer with KWLund. | 7.80 | $2,145.00 |
| 10/18/01 | CLN | Work on Administrative Record comments. | 7.50 | $2,062.50 |
| 10/18/01 | KWL | Review supplemental administrative records documents (3.30); telephone conferences with Bill Corcoran re same (.70). | 4.00 | $1,200.00 |
| 10/19/01 | CLN | Administrative Record review. | 5.80 | $1,595.00 |
| 10/19/01 | MBF | Print out documents from supplemental administrative record for CLNeitzel. | 3.40 | $306.00 |
| 10/19/01 | NKA | Search for and locate documents in administrative record per CLNeitzel's request. | 5.50 | $550.00 |
| 10/19/01 | ICM | Search for and locate documents in administrative record as per CLNeitzel's request (2.0);....... | 2.00 | $180.00 |
| 10/19/01 | KWL | Review and administrative record documents (1.60); telephone conference with Matt Cohn re same (.20). | 1.80 | 585.00 |
| 10/20/01 | CLN | Work on Administrative Record comments. | 7.00 | $1,925.00 |
| 10/20/01 | ICM | Follow up with CLNeitzel and word processing on status of supplemental administrative record documents. | 0.50 | $45.00 |
| 10/21/01 | CLN | Work on Administrative Record comments. | 5.50 | $1,512.50 |
| 10/22/01 | KWL | ......; review various Administrative Record issues and documents (1.10). | 1.10 | $330.00 |
| 10/22/01 | NKA | Search for and locate documents in administrative record per CLNeitzel's request. | 7.00 | $700.00 |
| 10/22/01 | CLN | Work on Administrative Record comments. | 7.80 | $2,145.00 |
| 10/22/01 | MBF | Work with Bill Payne to find images on administrative record for CLNeitzel review (.6); print out documents from administrative record for CLNeitzel (4.6). | 5.20 | $468.00 |
| 10/23/01 | KWL | Review Supplemental Administrative Record documents (3.20); confer with CLNeitzel re same (.30);........ | 3.50 | $1,050.00 |
| 10/23/01 | JDM | Conference with CLNeitzel re administrative record. | 0.30 | $75.00 |
| 10/23/01 | CLN | Administrative Record comments (2.0);.........; work on administrative record (4.0). | 2.00 | $550.00 |
| 10/23/01 | NKA | Search for and locate documents in administrative record per CLNeitzel's request. | 3.00 | $300.00 |
| 10/24/01 | CLN | Review of briefs to assist in responding to Supplemental Administrative Record (2.50); work on comments (3.30). | 5.80 | $1,595.00 |
| 10/25/01 | CLN | Evaluation of Weiss memo in connection with administrative record comments (3.0);...... | 3.00 | $825.00 |
| 10/26/01 | KWL | Review EPA supplemental administrative record documents (3.20); review CLNeitzel outline re same (.80). | 4.00 | $1,200.00 |
| 10/28/01 | CLN | Evaluate Administrative Record. | 0.50 | $137.50 |
| 10/29/01 | CLN | Work on Administrative Record comments. | 5.50 | $1,512.50 |
| 10/31/01 | CLN | Work on administrative record comments. | 1.80 | $495.00 |

| 11/01/01 | CLN | Draft memo to KWLund re administrative record comments. | 4.80 | 1,440.00 |
|---|---|---|---|---|
| 11/02/01 | CLN | Coordinate with Phil Goad re comments | 0.30 | 90.00 |
| 11/06/01 | CLN | Conference with Phil Goad re comments | 2.00 | 600.00 |
| 11/11/01 | CLN | Draft outline for Administrative Record. | 2.80 | 770.00 |
| 11/12/01 | CLN | Draft outline re administrative record. | 0.80 | 240.00 |
| 11/13/01 | CLN | Work on comments on administrative record. | 0.50 | 150.00 |
| 11/14/01 | CLN | Work on comments to administrative record. | 3.00 | 900.00 |
| 11/15/01 | CLN | Draft comments to administrative record; gather materials for Dori Kuchinsky and draft comments. | 8.50 | 2,550.00 |
| 11/16/01 | GMB | Conference with CLNeitzel re Administrative Record Review. | 0.30 | 63.00 |
| 11/16/01 | CLN | Response to administrative record; comments on administrative record. | 4.30 | 1,290.00 |
| 11/18/01 | CLN | Draft comments on administrative record. | 6.00 | 1,800.00 |
| 11/19/01 | CLN | Work on administrative record comments (6.50); prepare for and conference call with W. R. Grace lawyers; conference with Geoff Barry re reviewing California info for Grace comments (.50). | 7.00 | 2,100.00 |
| 11/19/01 | GMB | .......; conference with CLNeitzel re: Supplemental Administration Record (.40). | 0.40 | 84.00 |
| 11/20/01 | CLN | Conference with Phil Goad and draft comments. | 3.30 | 990.00 |
| 11/20/01 | KWL | Work on cost recovery issues re strategy for administrative record comments. | 2.00 | 650.00 |
| 11/21/01 | KWL | Work on cost recovery issues re strategy for administrative record comments. | 2.00 | 650.00 |
| 11/21/01 | CLN | Draft comments on Administrative Record. | 5.30 | 1,590.00 |
| 11/21/01 | GMB | Research supplemental administrative record (EPA) on Berman papers; locate and review Berman's work on asbestos (1.20); additional research on EPA supplemental administration record (.50);....... | 1.70 | 357.00 |
| 11/21/01 | MBF | Receive and respond to telephone conversations from CLNeitzel regarding administrative record questions. | 0.40 | 36.00 |
| 11/26/01 | KWL | Work on review and developing comments to EPA Supplemental Administrative Record (3.50). | 3.50 | 1,137.50 |
| 11/26/01 | CLN | Prepare comments on supplemental administrative record. | 10.50 | 3,150.00 |
| 11/27/01 | KWL | Work on review and developing comments to EPA Supplemental Administrative Record (3.50). | 3.50 | 1,137.50 |
| 11/27/01 | CLN | Work on comments to administrative record (10.0); conference with Burt Price (.80). | 10.80 | 3,240.00 |
| 11/28/01 | KWL | Work on review and developing comments to EPA Supplemental Administrative Record (3.50). | 3.50 | 1,137.50 |
| 11/28/01 | CLN | Conference with RJLee's office; work on administrative record comments; coordinate with RJLee and others. | 3.80 | 1,140.00 |
| 11/29/01 | KWL | Work on review and developing comments to EPA Supplemental Administrative Record (4.0). | 4.00 | 1,300.00 |
| 11/29/01 | CLN | Work on administrative record (7.0); conference | 7.50 | 2,250.00 |

| | | with Dori Kuchinsky (.50). | | |
|---|---|---|---|---|
| 11/30/01 | KWL | Work on review and developing comments to EPA Supplemental Administrative Record (3.0). | 3.00 | 975.00 |
| 11/30/01 | CLN | Conference with R. Finke, P. Goad, RJLee; review website for administrative record comments and work on administrative record comments. | 8.80 | 2,640.00 |
| 12/03/01 | KWL | Review Supplemental Administrative record and continue draft comments (3.50). | 3.50 | $1,137.50 |
| 12/03/01 | CLN | Work on Administrative Record comments | 9.50 | $2,612.50 |
| 12/03/01 | JDM | Outline administrative record comment issues (1.60); meet with CLNeitzel re comments to administrative record and relationship to litigation strategy (.80);........ | 2.40 | $600.00 |
| 12/04/01 | KWL | Review Supplemental Administrative record and revise draft comments (5.0). | 5.00 | $1,625.00 |
| 12/04/01 | CLN | Work on Administrative Record comments | 6.00 | $1,650.00 |
| 12/05/01 | KWL | Meeting with CLNeitzel re draft comments (.30); continue draft and revisions to comments (2.50). | 2.80 | $910.00 |
| 12/05/01 | CLN | Work on administrative record comments | 7.30 | $2,007.50 |
| 12/05/01 | KJC | Conference with CLNeitzel and Gbarry re administrative record purpose of comments research (0.4). | 0.40 | $96.00 |
| 12/05/01 | GMB | Administrative record review; conference with CLNeitzel and KJCoggon re scope of comments (.50). | 0.50 | $110.00 |
| 12/05/01 | MBF | Contact CLNeitzel re projects re administrative record (.20);........ | 0.20 | $18.00 |
| 12/06/01 | KWL | Review Supplemental Administrative record documents and draft comments (2.50);........ | 2.50 | $812.50 |
| 12/06/01 | CLN | Work on Administrative Record comments | 8.00 | $2,200.00 |
| 12/06/01 | GMB | Lexis Research on comments for administrative record (2.00); Library research - Mathew Bender; ALI-ABA materials (.80); additional Lexis research (2.00). | 4.80 | $1,056.00 |
| 12/07/01 | CLN | Work on Administrative Record comments | 4.00 | $1,100.00 |
| 12/07/01 | GMB | Research on supplementing administrative records (2.00); research on challenges to adequacy of administrative record (1.30); draft notes re administrative records issues (.80); conference with CLNeitzel (.30). | 4.40 | $968.00 |
| 12/08/01 | CLN | Work on Administrative Record comments | 5.00 | $1,375.00 |
| 12/09/01 | CLN | Work on Administrative Record comments | 4.00 | $1,100.00 |
| 12/10/01 | CLN | Draft comments on the Supplemental Administrative Record. | 8.50 | $2,550.00 |
| 12/11/01 | KWL | Review and draft comments to Supplemental Administrative Record (4.3). | 4.30 | $1,397.50 |
| 12/11/01 | CLN | Draft comments on the Administrative Record. | 9.00 | $2,700.00 |
| 12/12/01 | KWL | Review and revise comments to Supplemental Administrative Record (2.0). | 2.00 | $650.00 |
| 12/12/01 | CLN | Prepare comments on the Administrative Record; conference with KWLund and conference with Bert | 8.50 | $2,550.00 |

| | | | | |
|---|---|---|---|---|
| | | Price (7.5); issues raised in EPA Action Memorandum and in draft comments on the Supplemental Administrative Record, including data issues (1.0). | | |
| 12/12/01 | MBK | Begin review of DCS documents written by HRO and Grace to ensure the documents are part of Admin. Record (done at request of CLNeitzel). | 0.40 | $36.00 |
| 12/13/01 | CLN | Prepare comments on the Administrative Record. | 9.00 | $2,700.00 |
| 12/13/01 | ICM | Search for missing documents in the administrative record as per CLNeitzel's request (2.4);........ | 2.40 | $216.00 |
| 12/14/01 | CLN | Prepare comments on the Administrative Record. | 7.30 | $2,190.00 |
| 12/15/01 | CLN | Prepare comments on the Administrative Record. | 7.50 | $2,250.00 |
| 12/16/01 | CLN | Prepare comments on the Administrative Record. | 8.80 | $2,640.00 |
| 12/17/01 | KWL | Review and revise comments to Supplemental Administrative Record. | 3.50 | $1,137.50 |
| 12/17/01 | CLN | Draft comments on Supplemental Administrative Record. | 13.00 | $3,900.00 |
| 12/17/01 | GMB | Conference with CLNeitzel re comments on supplemental administrative record. | 0.30 | $66.00 |
| 12/18/01 | KWL | Review and revise comments to Supplemental Administrative Record (3.80); conference with CLNeitzel re same (0.30). | 4.10 | $1,332.50 |
| 12/18/01 | CLN | Draft comments on Supplemental Administrative Record including conference with Dori Kuchinsky [1.3];........; continue comments on Supplemental Administrative Record [5.2]. | 6.50 | $1,950.00 |
| 12/19/01 | KWL | Review final draft comments to Supplemental Administrative Record. | 5.00 | $1,625.00 |
| 12/19/01 | CLN | Prepare Administrative Record comments | 14.00 | $4,200.00 |
| 12/19/01 | GMB | Review MRI report - comments on supplemental admin record. | 1.00 | $220.00 |
| 12/20/01 | CLN | Prepare Administrative Record comments | 13.30 | $3,990.00 |
| 12/20/01 | GMB | ......; review of additional documents for possible inclusion into administrative record (1.00). | 1.00 | $220.00 |
| 12/21/01 | KWL | Finalize comments to Supplemental Administrative Record (4.0); telephone call to Matt Cohn re same (.20); telephone call to Richard Finke re including Barbanti documents into administrative record (.30). | 4.50 | $1,462.50 |
| 12/21/01 | CLN | Finalize and file Administrative Record comments | 9.80 | $2,940.00 |
| 12/21/01 | GMB | Search Jorgenson files for non-privileged documents to support comments (2.30); conference with CLNeitzel re supporting documentation (.50). | 2.80 | $616.00 |

<u>Response Exhibit 1</u>

HRO concedes that the time entries identified in Paragraph 10 of the Report contain errors.  The errors were the result of either typographical errors or addition errors.  HRO supplements its Application with the following explanation or amendment for the time entries identified in Paragraph 10 of the Report:

| Date | Tkpr | Explanation/Amendment | Adjustment to Fee Request |
|------|------|----------------------|---------------------------|
| 5/16/01 | EKF | Typographical error.  "(0.5)" should have been included after the final task entry.  Copies of Ms. Flaagan's handwritten time entries are enclosed.  Time for 5/16/01 for this matter are noted on page one **and** page three thereof. | None |
| 4/3/01 | KWL | Typographical error - parenthetical time after first task was inadvertently deleted, however, contemporaneous time records are no longer available to substantiate. | ($1,320.00) |
| 8/8/01 | KWL | Addition error.  Time billed should be 3.0 hours with a value of $900.00. | ($600.00) |
| 9/5/01 | KWL | Addition error.  Time billed should be 4.4 hours with a value of  $1,320.00. | ($30.00) |
| 9/28/01 | EES | Addition error.  Time billed should be 5.4 hours with a value of  $1,134.00 | ($21.00) |
| 5/7/01 | LSD | Addition error.  Time billed should be 1.0 with a value of $225.00. | ($225.00) |
| 10/17/01 | KJC | Addition error.  Time billed should be .9 hours with a value of $216.00. | ($24.00) |
| 11/5/01 | JLS (sic) | Addition error.  Time billed should be 7.8 hours with a value of $858.00. | ($22.00) |
| 11/15/01 | MCL | Addition error.  Time billed should be 7.6 hours with a value of $684.00. | ($54.00) |
| 12/19/01 | MCL | Addition error.  Time billed should be 9.9 hours with a value of $891.00. | ($9.00) |
| | | **Total Adjustments** | (2,305.00) |

Accordingly, HRO agrees to a reduction of HRO's requested award for fees by $2,305.00.00.

<u>Response Exhibit 2</u>

The Report requests information regarding the efforts made to review and comment on the Libby, Montana Administrative Record.  HRO believes the time spent was appropriate and reasonable in light of the complex nature of the work being performed.

The United States Environmental Protection Agency ("EPA") made the Supplemental Administrative Record for the Libby, Montana site available to the public on September 21, 2001.  The Supplemental Record contains 941 documents totaling over 12,000 pages.  The Libby Supplemental Administrative record was submitted by EPA under section 9613 of CERCLA to provide to the public all documents relied upon by the agency to justify its action in Libby.  By regulation, the public may submit comments to the EPA regarding the information contained in the record primarily for purposes of providing input into agency decision making.  This process can include the submittal of documents for inclusion into the Administrative Record as well as written analysis and challenges of EPA's decision making.  Due to the complexity of the issues presented, as well as the sheer magnitude of the record itself, EPA granted a sixty-day extension of the comment period up to and including December 21, 2001.

For strategic and substantive reasons, the affected Debtors considered detailed review and comments to the Supplemental Administrative Record to be critical to their defense of the Libby Cost Recovery case.  Moreover, the affected Debtors' review and analysis of the Supplemental Administrative Record has broad applicability in other contexts including EPA's consideration of declaring a public health emergency in Libby, the safety of zonolite products, and currently, the defense of the fraudulent conveyance action now scheduled for trial on September 30, 2002.

<u>Magnitude of Necessary Review and Comments</u>

As stated above, the Supplemental Administrative Record contained over 941 documents totaling 12,000 pages.  This represented almost twice the number of documents contained in the original Administrative Record.  EPA specifically selected these documents to support actions outlined in its July 20, 2001 Action Memorandum.  These documents are extremely complex, scientific studies designed to support EPA's conclusions regarding the alleged risk presented at the Libby site as well as the need for certain cleanup actions at the site.  These documents form the basis for EPA's $110 million cost recovery claim.  On December 21, 2001, the affected Debtors submitted written comments to EPA which were 43 pages in length and included 36 exhibits for inclusion in the Administrative Record.  The comments included detailed analysis of EPA's reliance on the Agency for Toxic Substances and Disease Registry ("ATSDR") mortality study, the ATSDR Community Health Study, air sampling data and methodology, screening level risk assessment calculations, occupational exposure and household exposure analysis and the application of voluminous academic papers allegedly relating to exposure conditions at the site.  HRO will provide a copy of the Debtors' comments with attachments upon request from the Fee Auditor.

<u>Relationship Between Comments and Cost Recovery Litigation</u>

On March 30, 2001, the United States filed suit against certain of the Debtors seeking recovery for all investigation and removal costs arising from EPA's actions with respect to the Libby, Montana site.  Total costs for the site may be as high as $110 million.  The affected Debtors contend that EPA's actions were arbitrary and capricious and not consistent with the National Contingency Plan, and, therefore, the agency cannot recover its costs.

On September 4, 2001, the United States filed its Motion Requesting Ruling on the Scope and Standard of Review of EPA Response Actions and for Protective Order to Limit Discovery Regarding Response Actions to the Administrative Record. The United States seeks to limit judicial review of EPA's response action solely to the Administrative Record and prevent the submission of evidence outside the documents included in the record.  The affected Debtors opposed this motion on grounds that additional evidence was necessary in order for the court to determine whether EPA's action was appropriate.  The court has not yet ruled on the issue.

Because judicial review of EPA's actions may be limited to the Administrative Record, the affected Debtors were required to expend substantial resources to assure that their positions were sufficiently developed and, in fact, included in the record.  HRO's efforts required a detailed analysis of the documents and calculations contained within the record and the development of substantive responses to EPA's position.  The comments are essential to the Debtors' defense in the cost recovery action.

<u>Relationship to Other Matters</u>

The Administrative Record review and comments have broad applicability to other matters as well.  For example, in the fraudulent conveyance case, the United States has designated the entire administrative record as its exhibit list regarding the Libby site.  Since the affected Debtors provided detailed comments which are now included in the administrative record, its defenses have been preserved for presentation in the fraudulent conveyance case.  The comments are also directly related to the so-called "sciences" trial now scheduled for May 2003 where the safety of zonolite attic insulation will be directly at issue.

<u>Use of Multiple Timekeepers</u>

HRO's approach to developing the comments focused on allocating work in the most efficient manner possible.  The complexity of the project and its relationship to other important litigation, however, necessitated substantial efforts from senior lawyers participating in the defense of the cost recovery case.

HRO will address each timekeeper in order of the number of hours spent on the project.

**CLN (321.50 hours)**:  Over a three-month period, from October through December 2001, CLN had primary responsibility for reviewing technical documents and developing analysis of the studies, data and calculations included in the record.  CLN also coordinated non-testifying experts in developing the affected Debtors' responses and review of the risk calculations used by

EPA and was the primary draftsperson and coordinator for revisions to the project.  Substantial client input was necessary in order to develop consistent and scientifically supportable positions. CLN also reviewed documents considered for addition to the record and made strategic decisions regarding documents to be included.  Given the scope and complexity of the issues and the critical nature of comments to various existing litigation, HRO believes the time was reasonable and efficient.

**KWL (76.80 hours)**:  KWL is lead counsel in the cost recovery case as well as other related matters.  KWL was involved in limited document review and some drafting on the project in an effort to coordinate key elements of the Debtors' defense in the cost recovery case.  KWL's time focused on key strategies and coordinating client review of the technical analysis.  Given the complexity of the issues and the critical nature of the comments to various existing litigation, HRO believes the time is reasonable and efficient.

**JDM (2.70) and KJC (.40)**:  Both JDM and KJC are key members of the defense team with significant responsibility for expert witnesses in the cost recovery case.  Their input, though extremely limited, was essential to properly coordinate the comments.  HRO believes this time is reasonable and efficient.

**GMG (17.20 hours)**: GMB was used primarily for legal research and to conduct a privilege review for various documents to be submitted to the administrative record.  HRO believes using an attorney at a much lower billing rate was appropriate and the most efficient use of client resources.

**SN (35.60 hours)**:  All June time for timekeeper SN is unrelated to administrative record review or the drafts of comments as referred to in paragraph 11 of the Auditor's Report.  Time for SN from 6/11/01 to 6/27/01 is related to legal research regarding the 106 order issued to the Debtors in May 2000.  More particularly, the Debtors were seeking to determine the enforceability of the order under the Bankruptcy Code as well as the Debtors' appellate rights under the order.  HRO believes that 35.60 hours at $115 per hour is efficient and reasonable under the circumstances.

**Legal Assistants:  NKA (15.5 hours); ICM (4.90 hours); MBF (11.80 hours) and MBK (.40 hours)**.  Substantial tasks were delegated to legal assistants on the project as a means of efficiently reviewing the highly technical documents included in the administrative record. These tasks included limited document review and coordination of key documents received from various sources.  HRO believes using legal assistants, at a much lower billing rate, was appropriate and the most efficient use of client resources.

<u>Response Exhibit 3</u>

Pursuant to the Fee Auditor's correspondence to HRO of September 12, 2002 and the Report, it appears the Fee Auditor's overriding concern with respect to the issues raised in Paragraph 14 relate to the professionals utilized by HRO in the document review process and whether such staffing was appropriate.  Initially, HRO would like to clarify what appears to be a mistaken assumption on the part of the Fee Auditor.  Both paralegals and attorneys have been utilized throughout the document review process in question.  Contrary to the Fee Auditor's assumptions, this was not a situation where paralegals were utilized exclusively and then attorneys were added to the project.  Paralegals were primarily involved in the initial organization aspects and some of the initial review.  Once the initial organization aspects were completed, attorneys were added to review documents and perform quality control/quality assurance.  HRO never believed it was appropriate to staff the project entirely with paralegals.  To the contrary, HRO used predominantly attorneys to staff the project and filled in with paralegals as appropriate. Overall, the review and coding process required attorney-level decisions on a daily basis.  The more attorneys who were physically present in Boston to address those issues directly, the more efficient and cost-effective the process.  In addition, HRO had limited time to conduct the review and used attorneys at many different levels as available in order to expedite the review.  More experienced attorneys participated and were able to complete the review more quickly than less experienced attorneys and paralegals.  Accordingly, HRO staffed the Boston document review process with multiple professionals at various levels of experience to accomplish the best results for the Debtors.  Contrary to the allegations in the Report, most of the referenced time entries do not reflect time involved in meetings, hearing or teleconferences by multiple HRO professionals. These professionals were all reviewing documents.  To the extent multiple professionals are referenced in the time entries set forth in Paragraph 14, those professionals needed to meet and confer, not only with each other, but with professionals from Casner & Edwards, Reed Smith and the Debtors, in an effort to implement a coordinated and efficient process for the document review.  Such meetings were in no way a duplication of effort.