## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | |
| | § | **Chapter 11** |
| **W.R. GRACE & CO., et al** | § | **Jointly Administered** |
| | § | **Case No. 01-1139 (JKF)** |
| **Debtors** | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING
### INTERIM APPLICATION OF STROOCK & STROOCK & LAVAN LLP
### FOR THE FIRST, SECOND AND THIRD INTERIM PERIODS

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its

capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim

Application of Stroock & Stroock & Lavan LLP for the First, Second and Third Interim Periods (the

"Application").

### BACKGROUND

1.      Stroock & Stroock & Lavan LLP ("Stroock") was retained as counsel to the official

Committee of unsecured creditors.  In the Application, Stroock seeks approval of fees totaling

$904,299.25 and expenses totaling $56,214.47 for its services from April 12, 2001, through

December 31, 2001.

2.      In conducting this audit and reaching the conclusions and recommendations contained

herein, we reviewed in detail the Application in its entirety, including each of the time entries

included in the exhibits to the Application, for compliance with the Local Rule 2016-2 of the Local

Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective

February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996,

(the "Guidelines"), as well as for consistency with precedent established in the United States

Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served on Stroock an initial report based on our review and received a response from Stroock, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.      In our initial report, we noted that Stroock professionals Raskin, Serrette, Krieger, Defreitas, Cott, Sasson, Greenberg, Brandes, and Taruschio do not consistently provide adequate detail in their time entries.  Thus we asked Stroock to please advise these professionals to provide adequate detail in each of their time entries in the future, and Stroock stated that it would do so.

4.      In our initial report, we noted that Stroock professionals Krieger, Serrette, Sasson, Defreitas, Raskin, Sasson, Levy, Greenberg, and Taruschio consistently lumped their time entries.  Thus we asked Stroock to please advise these professionals not to lump their time entries in the future and Stroock stated that it would do so.

5.      In our initial report, we noted that during the June 2001 billing cycle, the hourly billing rates for Stroock professionals Winter, Taruschio, and Serrette were raised from $525 to $550, $185 to $245, and $130 to $150, respectively.  Thus we asked Stroock to provide information regarding these rate increases, as is required under the uidelines.  Stroock responded as follows:

> The Report comments that during the month of June 2001, the billing rates for three timekeepers were raised with Mr. Wintner's increasing from $525.00 to $550.00, Ms. Taruschio's increasing from $185.00 to $245.00, and Ms. Serrette's increasing from $130.00 to $150.00, and seeks information regarding such increases (See Report at paragraph 6).  From time to time in the ordinary course of Stroock's practice, Stroock adjusts the hourly billing rates of its professionals, in order to keep them comparable to the rates of other professionals of similar experience in the same or similar geographical area.  The increases observed by the Fee Auditor were the result of such a routine ordinary course adjustment by the firm after the rates of the firm's professionals were reviewed in June 2002.

We believe this explanation adequately addresses our concerns, and we recommend no reduction in this regard.

Specific Time and Expense Entries

6.       In our initial report, we noted that between April 20, 2001, and December 13, 2001, Stroock billed 146.5  hours for a cost to the bankruptcy estate of $65,924 in fees for multiple professionals to participate in the same meeting, hearing, or conference call.  Thus we asked Stroock to please advise why it was necessary for multiple professionals to attend each of these meetings, hearings and/or conference calls.  See Exhibit A.  Stroock's response is provided below as well as in Response Exhibit 1.  With the exception of the instances discussed in paragraphs 7 through 9 below, we accept the explanation offered with respect to each individual meeting, hearing or conference call, and we recommend no reduction in the associated fees.

7.       With respect to item A-3, Stroock has agreed to a voluntary reduction of $185 attributable to the time of a junior associate who was one of six attorneys participating in a conference call with the committee.  Because Mr. Wintner's and Ms. Krieger's functions relating to employee benefits and compensation seem to have overlapped, we would recommend a further reduction of $475, equal to the amount billed by Ms. Krieger, the lower-priced of the two.  We thus recommend a total reduction of $660 in fees.

8.        With respect to item A-4, we note that of the five attorneys attending the committee the functions of Mr. Wintner and Ms. Krieger relating to employee benefits and compensation seem to overlap, and we would recommend a reduction equal to the amount billed by Mr. Wintner, who billed less time (and a lower dollar amount) in connection with this meeting.  We thus recommend a reduction of $1,575 in fees.

9.    With respect to item A-7, Stroock has agreed to a voluntary reduction of $294 attributable to the time of a junior associate who was one of six attorneys participating in a conference call with the committee.  We accordingly recommend a reduction of $294 in fees.

10.    In our initial report, we noted that during this reporting period, Stroock billed $870.00 for word processing.  We noted that word processing charges may be characterized as non-reimbursable overhead and asked Stroock to explain why these charges should not be so characterized in this instance.  Stroock offered the following response:

> The Report comments that during the period encompassed by the Application Stroock billed $870.00 for word processing.  (See Report at paragraph 9).  The Report states the Fee Auditor's belief that these expenses are  included within the firm's overhead and, therefore, the cost of such expenses should not be reimbursed by these estates and deducted from the amount for which allowance is sought by Stroock.  The Fee Auditor's belief that these word processing charges are part of Stroock's overhead is not correct.  These word processing charges are separate and apart from Stroock's secretarial charges in respect of services rendered during the normal business hours of the firm.  Word processing charges relate to client-specific charges incurred generally outside of the normal working hours.  Because they are client-specific, it has been Stroock's uniform policy that the cost of such services should not be borne by clients of the firm for whom the services were not rendered and, therefore, should not be included within Stroock's overhead structure.  For example, of the $870.00 of word processing charges, over $300.00 of those charges were incurred in connection with Stroock preparing the Reconsideration Motion after hours during the later part of  April 2001, over $120.00 of those charges were incurred in connection with preparing a memorandum in May 2001 summarizing the Section 341 meeting which occurred in these cases, over $250.00 in charges were incurred in connection with preparing in September 2001 a response on behalf of the Creditors' Committee to the Debtors' bar date/case management motion and related pleadings, and over $50.00 in charges were incurred in connection with preparing in November 2001 the Creditors' Committee's objection to the application of counsel to the asbestos personal injury committee's pleading seeking to retain Elizabeth Warren as a consultant.  The remaining amounts comprising the $870.00 charge are also specific to Stroock's representation of the Committee.  Accordingly, Stroock submits that all of the word processing charges should be fully reimbursed by these estates.

We accept the explanation that these charges were particularly attributable to this client and that they were due to unusual time constraints.  We note further that the minimal size of these charges

compared to the overall size of the Application indicates that word processing charges are not routinely billed to the estate.  We accordingly recommend no reduction in this regard.

11.    In our initial report, we noted that between April 16,  2001, and November 9, 2001, Stroock billed 211.8 hours for a cost to the bankruptcy estate of $79,481 for matters where a large number of professionals were assigned to the same project.  See Exhibit B.  We asked Stroock to explain why so many professionals were assigned to each of these projects.  Stroock offered a lengthy response appended hereto as Response Exhibit 2.  We accept the proffered explanations and recommend no reductions in this regard.

12.    In our initial report, we noted that between October 2, 2001, and December 28, 2001, Stroock overbilled the estate $2,382.50 for time entries where the increments were not totaled correctly.  See Exhibit C.  Stroock offered the following response:

> The Report notes that between October 2, 2001 and December 28, 2001, there are eleven instances where the time reflected in the narrative is less than the corresponding aggregate amount of time stated for a particular timekeeper for the date in question, with the aggregate difference being $2,382.50.  (Report at paragraph 11).  The portion of the Application corresponding to this inquiry contains over 40 pages of time entries and hundreds of entries for this period. While Stroock endeavors to double-check each and every narrative and corresponding aggregate amount entry to ensure that the amounts are correct throughout, errors do occur from time to time.  Stroock's review of the narrative time entries reveals that they are correct, but that the stated aggregate amount is incorrect.  Stroock, therefore, submits that the aggregate amount of the compensation it is seeking under the Application should be reduced by $2,382.50.

In view of Stroock's agreement to accept the following reduction, we recommend a reduction of $2,382.50 in fees.

13.    In our initial report, we noted that between April 16, 2001, and June 12, 2001, Stroock billed 32 hours for a cost to the bankruptcy estate of $6,135.25 for the performance of conflict checks.  See Exhibit D.  Stroock offered the following response:

> The Report notes that between April 16, 2001 and June 12, 2001, Stroock billed
> $6,135.25 for 32 hours of time which time related to the extensive conflicts
> checks required in these cases in connection with Stroock's retention in April
> 2001, and then a supplemental conflicts check and affidavit prepared and filed in
> these cases in June 2001. (Report at paragraph 12). Stroock agrees to reduce the
> aggregate amount of the compensation it is seeking under the Application by
> $6,135.25.

In view of Stroock's agreement to accept the following reduction, we recommend a reduction of

$6,135.25 in fees.

14.    In our initial report, we noted that between June 12, 2001, and June 14, 2001,

Stroock billed 9.5 hours for a cost to the bankruptcy estate of $3,420 reviewing files in the Dow

Corning, Babcok and Wilcox bankruptcies.

| 6/12/01 | M. Sasson | 5.5 | $1,980.00 |
|---------|-----------|-----|-----------|
| | Review litigation/bankruptcy files from Dow Corning bankruptcy. | | |
| 6/13/01 | M Sasson | 2.5 | $900.00 |
| | Continued reviewing litigation/bankruptcy/filing in Dow Corning, Babcok & Wilcox case. | | |
| 6/14/01 | M Sasson | 1.5 | $540.00 |
| | Continued reviewing litigation/bankruptcy/filing in Dow Corning, Babcok & Wilcox case. | | |

We asked Stroock to explain the relevance of this task to the instant bankruptcy case. Stroock

offered the following response:

> The Report comments that in June 2001, Stroock billed $3,420.00 to the estate for
> 9.5 hours of time rendered in reviewing files in the Dow Corning and Babcock &
> Wilcox bankruptcy cases, and inquires about the relevance of these services to
> these chapter 11 cases. (Report at paragraph 13). The magnitude, validity and
> ultimate treatment of asbestos claims in these cases, are issues which will directly
> and substantially impact the timing and structure of the Debtors' reorganization
> plan and emergence from chapter 11, and the amount and type of consideration
> available for distribution to the general unsecured creditors represented by the
> Creditors' Committee. The process the Court will embark upon so that
> determinations can be made with respect to those issues, i.e., whether through a
> bar date process with subsequent summary judgment motions and mini-trials,
> through estimation proceedings, or other variations thereon, remains to this day an
> outstanding issue that the Court has yet to rule upon. In anticipation of the
> Debtors filing towards the latter part of June 2001 their motion seeking to
> establish a bar date for all claims against these estates, including asbestos claims

and a case management schedule, Stroock believed it would be beneficial to its
representation of the Committee to understand what processes had been utilized in
other recent mass tort cases.  Accordingly, Stroock reviewed the case
management, bar date and other such processes employed in those cases.  Stroock
submits that the services rendered were directly relevant to major issues in these
chapter 11 cases and accordingly, the compensation sought should be
compensable in its entirety.

We accept this explanation and recommend no reduction in this regard.

15.    In our initial report, we noted that between June 18, 2001, and June 19, 2001,

Stroock billed 18 hours for a cost to the bankruptcy estate of $6,480.00 and $1,635.70 in

expenses for Stroock professional Sasson to attend an asbestos bankruptcy conference.

| | | | |
|---|---|---|---|
| 6/18/01 | M Sasson | 10.0 | $3,600.00 |
| | Attend Asbestos Bankruptcy Conference in Philadelphia, PA. | | |
| 6/19/01 | M Sasson | 8.0 | $2,880.00 |
| | Attend Asbestos Bankruptcy Conference in Philadelphia, PA. | | |
| 06/27/01 | VENDOR: Moshe Sasson: INVOICE # 06/20/01; | | $995.00 |
| | DATE: 06/27/01 06/17 - 06/19 MEALEY | | |
| | CONFERENCES IN PA - REGISTRATION FEE | | |
| | FOR CONFERENCE | | |
| 06/27/01 | VENDOR: Moshe Sasson; INVOICE # 0620/01 | | $521.32 |
| | DATE: 06/27/01 06/16 - 06/19 MEALEY | | |
| | CONFERENCES IN PA - HOTEL | | |
| 06/27/01 | VENDOR: Moshe Sasson; INVOICE # 0620/01 | | $119.38 |
| | DATE: 06/27/01 06/16 - 06/19 MEALEY | | |
| | CONFERENCES IN PA - MEALS | | |

We asked Stroock to explain why these are appropriate expenses for the estate to bear.  Stroock

provided the following response:

The Report notes that in June 2001, Stroock billed the estate for fees in the
amount of $6,480.00 and for expenses in the amount of $1,635.70 relating to one
of Stroock's professionals attending a bankruptcy conference focusing on asbestos
claims-related issues and litigation.  (Report at paragraph 14).  Stroock believes
that the matters discussed at this conference were directly relevant to the issues in
these cases and provided useful information.  Stroock is aware, however, that
Judge Fitzgerald has previously ruled that the fees billed and costs incurred in
attending asbestos bankruptcy conferences are not compensable from the Debtors'
estates.  Accordingly, the aggregate amount of the fees and expenses sought by
Stroock under the Application should be reduced by the amount of the fees billed

($6,480.00) and expenses incurred ($1,635.70) relating to the identified bankruptcy conference.

In view of Stroock's agreement to accept the following reductions, we recommend a reduction of

$6,480 in fees and $1,635.70 in expenses.

16.    In our initial report, we noted that between June 12, 2001, and June 18, 2001,

Stroock billed $6,633.20 for unspecified telecommunication services.

| | | |
|---|---|---|
| 06/12/01 | VENDOR: Deraventures, Inc.; INVOICE # 05056-02201; date: 5/5/01 Telecomm .Svcs 4/01 | $3,059.10 |
| 06/12/01 | VENDOR: Deraventures, Inc.; INVOICE # 05056-02201; date: 5/5/01 Telecomm .Svcs 4/01 | $700.40 |
| 06/18/01 | VENDOR: Deraventures, Inc.; INVOICE # 06060-02201-01; DATE: 6/5/01 Telecomm. Services 5/01 date: 5/5/01 Telecomm. Svcs 4/01 | $2,873.70 |

We asked Stroock to provide additional information regarding these charges.  Stroock offered the

following response:

> The Report notes that between June 12, 2001 and June 18, 2001, Stroock billed $6,633.20 in telecommunications services to the estate, and seeks additional information regarding these charges.  (Report at paragraph 15).  Each of these charges relate to conference calls and meetings Stroock had with the Creditors' Committee.  Stroock's review of invoices received from DeraCom, the telecommunications service provider utilized for these calls, reflects that (i) the charge in the amount of $700.40 relates to the nearly hour long conference call meeting of the Creditors' Committee on April 16, 2001, (ii) the charge in the amount of $3,059.10 relates to those persons who participated by telephone on the extended five and one-half hour (5.5) Creditors' Committee meeting, including financial advisor interviews, on April 20, 2001, and (iii) the charge in the amount of $2,873.70 relates to those persons who participated by telephone on the extended three (3) hour Creditors' Committee meeting on May 1, 2001.  Stroock submits that these charges should be fully reimbursed by these estates.

We accept this explanation and recommend no reduction in this regard.

17.    In our initial report, we noted that between November 1, 2001, and December 31,

2001, Stroock billed $9,908.43 for expert fees and costs without explaining the nature of these

charges.

Expert Fees and Costs      $5,421.10
Expert Fees and Costs      $4,487.33

We have reviewed the Order Authorizing the Retention of Experts, entered June 22, 2001 (the

"Expert Retention Order"), and under our interpretation of this order and the Order Appointing

Fee Auditor in Accordance with the Court's Direction (the "Fee Auditor Order"), we have no

authority to review the reasonableness of the fees of an expert retained under the Expert

Retention Order, since such fees were generated by "professionals providing services pursuant to

an order that does not require submission of fee applications".  Fee Auditor Order, p. 2.  Thus,

we believe that while we should verify the amount of expert fees and costs, we should offer no

opinion regarding the reasonableness of the charges listed above.  Stroock provided the following

response:

> The Report notes that between November 1, 2001 and December 31, 2001,
> Stroock billed the estate for expenses in the aggregate amount of $9,908.43
> representing the fees and expenses of the asbestos issues expert employed by the
> Creditors' Committee.  As the Fee Auditor has noted in his Prior Report and in the
> Fifth Quarterly Fee Report, the procedures established by the Court's June 22,
> 2001 order did not require that the Application specifically identify the expert,
> describe in detail the services rendered by such expert during that period, or that
> the invoices received by Stroock from Chambers Associates Incorporated, the
> Creditors' Committee's expert be annexed to each applicable application.  The
> "pass through" charges for Chambers for the period encompassed by the
> Application related to the services rendered by Chambers for the months of
> October 2001 and November 2001, which aggregate to the sum of $5,431.10, and
> for the month of December 2001, in the sum of $4,487.33.  A copy of the three
> Chambers' invoices for those months are annexed hereto.  The Fee Auditor will
> observe that each of the invoices provides details for the following separate
> categories: (i) Professional Fees, (ii) Support Services, and (iii) Expenses, and
> also provides detail identifying the timekeeper, the time spent and the per hour
> rate for each such timekeeper's services.  While in response to the first initial
> report received from the Fee  Auditor we previously provided the time-record like
> detail describing the services rendered for each timekeeper, in addition to the
> invoices, neither Chambers nor Stroock expected or anticipated that the Fee
> Auditor would take the detail and make it publicly available.  As Chambers
> regards such information to be privileged, and believed that only Stroock would
> review it, we have not provided the underlying detail.  Stroock submits that these
> amounts should be allowed in their entirety.

Stroock's response thus contained supplementary information that has enabled us to verify that these charges are actual expenses of Stroock.  Accordingly, we recommend no reduction in this regard.

## CONCLUSION

18.     Thus, we recommend approval of fees totaling $886,772.50 ($904,299.25 minus $17,526.75) and costs totaling $54,578.77 ($56,214.47 minus $1,635.70) for Stroock's services from April 12, 2001, through December 31, 2001.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
        Warren H. Smith
        Texas State Bar No. 18757050
        Mark W. Steirer
        Texas State Bar No. 19139600

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on the 29th day of October 2002.

_____
        Warren H. Smith

**SERVICE LIST**
Notice Parties

**The Applicant**
Lewis Kruger, Esq.
**Stroock & Stroock & Lavan LLP**
180 Maiden Lane
New York, NY 10038

Rose Serrette, Esq.
**Stroock & Stroock & Lavan LLP**
180 Maiden Lane
New York, New York 10038-4982

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones,
P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of
Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of
Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price &
Axelrod
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of
Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Matthew G. Zaleski, III, Esq.
Campbell & Levine
Chase Manhattan Centre, 15th Floor
1201 Market Street, Suite 1200
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

EXHIBIT A

*A-1:*

| 04/20/01 | A. Krieger | 4.5 | $1,912.50 |
|---|---|---|---|

Attended Committee meeting at uptown office and interview of accountants (4.5) . . . .

| 04/20/01 | L Kruger | 3.3 | $2,145.00 |
|---|---|---|---|

Office conference with committee, interview of accountants for engagement by committee (3.3)

| 04/20/01 | R Raskin | 5.5 | $3,025.00 |
|---|---|---|---|

Prepare for and attend committee meeting at 767 Third Avenue.

| 04/20/01 | R Serrette | 6.3 | $819.00 |
|---|---|---|---|

Attend committee meeting.

| 04/20/01 | M Wintner | 3.5 | $1,837.50 |
|---|---|---|---|

|  |  | TOTAL | $9,739.00 |
|---|---|---|---|


*A-2:*

| 05/29/2001 | Conference at Kirkland & Ellis with K. Pasquale, J. Sprayregan and D. Bernick regarding asbestos issues, etc. | Kruger, L. | 2.3 | $1,495.00 |
|---|---|---|---|---|
| 05/29/2001 | Preparation for and meeting with debtors' counsel re litigation plan and issues (4.0); . . . | Pasquale, K. | 4.0 | $1,900.00 |
|  |  | TOTAL | 6.3 | $3,395.00 |


*A-3:*

| 05/01/2001 | Committee conference call re employee-benefits-related issues, pending matters to be heard on 5/3/01, request to the US Trustee to appoint an equity Committee, proposal to resolve trade payables issues (1.0). | Krieger, A. | 1.0 | $475.00 |
|---|---|---|---|---|
| 05/01/2001 | Telephone call with creditors committee with respect to pre-petition vendor payments, employee and retiree benefits, employee interests, DIP financing and motion before court. | Kruger, L. | 1.1 | $715.00 |
| 05/01/2001 | Creditors Committee meeting (telephone ) (1.0) | Pasquale, K. | 1.0 | $475.00 |
| 05/01/2001 | Prepare for and attend conf. call of the committee. | Raskin, R. | 1.0 | $550.00 |
| 05/01/2001 | Creditors' committee telephone conference call. (1.0);. . . | Wintner, M. | 1.0 | $525.00 |
| 05/01/2001 | Creditors committee call and call re stipulation (2.1); . . . | Taruschio, A. | 2.1 | $388.50 |

|  |  |  |  |  |
|---|---|---|---|---|
|  | TOTAL |  | 7.2 | $3,128.50 |

*A-4:*

| 05/22/2001 | Prepared for and attended Creditors' Committee meeting at the offices of JP Morgan Chase (4.3). | Krieger, A. | 4.3 | $1,827.50 |
|---|---|---|---|---|
| 05/22/2001 | Creditors' Committee meeting with debtor in which debtor reviewed its business lines, financial performance, asbestos issues, employee issues, and Chapter 11 prospects (2.3 hrs); Creditors' Committee meeting regarding employee issues, debtor's presentation, asbestos issues and financial matters (2.1 hrs). | Kruger, L. | 4.4 | $2,860.00 |
| 05/22/2001 | Preparation for and attended creditors' committee meeting (5.5) | Pasquale, K. | 5.5 | $2,612.50 |
| 05/22/2001 | Prepare for and attend meeting with Debtors at Chase and follow-up re same. | Raskin, R. | 5.0 | $3,025.00 |
| 05/22/2001 | Attend Creditors Committee meeting (3.0). | Wintner, M. | 3.0 | $1,575.00 |
|  | TOTAL |  | 17.8 | $11,900.00 |

*A-5:*

| 05/11/2001 | . . . conference call with RR, MW and Debtors' counsel re Debtors' response to Committee's motion for reconsideration and follow-up office conference RR, MW re same and analysis on KERP, employment agreements (.6); . . . | Krieger, A. | .6 | $255.00 |
|---|---|---|---|---|
| 05/11/2001 | Conf. call Wintner, Krieger and Kapp re Debtors proposal regarding motion to reconsider wage order (.8); . . . | Raskin, R. | .8 | $440.00 |
| 05/11/2001 | Telephone conference call with Debtor and R. Raskin, A. Krieger re Creditors' Committee Motion to Reconsider First Day Wage/Benefits Order. | Wintner, M. | 0.5 | $262.50 |
|  | TOTAL |  | 1.9 | $957.50 |

*A-6:*

| 05/18/2001 | Conference call with Debtor et.al re retention plan and employment agreements (.9), . . . | Keppler, A. | .9 | $382.50 |
|---|---|---|---|---|
| 05/18/2001 | Conference call with Debtors representatives, P&M representatives, RAR, MW and AK re employee-related matters (.8); . . . | Krieger, A. | .8 | $340.00 |
| 05/18/2001 | Conf. call with debtors re kerp and executive compensation issues (1.5). | Raskin, R. | 1.5 | $825.00 |

| 05/18/2001 | Telephone conference call with Debtor and Kirkland & Ellis, R. Raskin, A. Krieger, A. Keppler, Polcano &Manzo re Debtors' position on Motion to Reconsider Benefits Order, Motions to Adopt KERP and Assume Senior Executive Employment Agreements (0.9; . . . | Wintner, M. | .9 | $472.50 |
|---|---|---|---|---|
| | TOTAL | | 4.1 | $2,020.00 |

*A-7:*

| 06/06/01 | A Krieger | 1.3 | $552.50 |
|---|---|---|---|
| | Conference call meeting of the Committee re employee-benefit related matters, Debtors' request regarding execution of confidentiality agreements other and then subsequent telephone call J. Kapp re Committee's position on same (1.3). | | |
| 06/06/01 | R. Raskin | .8 | $440.00 |
| | Conference call of the committee. | | |
| 06/06/01 | A Taruschio | 1.2 | $294.00 |
| | ...committee conference call (1.2);.. | | |
| 06/27/01 | A Krieger | 1.1 | $467.50 |
| | Conference call meeting of the Committee re Project Peter and position on Asbestos Committee's joint motion to prosecute the fraudulent conveyance claims (1.1)... | | |
| 06/27/01 | L Kruger | 1.0 | $650.00 |
| | Conference with Creditors' Committee with respect to Equity Committee and to proposed "Peter Project" acquisition, response to asbestos litigation (1.0);... | | |
| 06/27/01 | K. Pasquale | 1.5 | $712.50 |
| | Preparation for and conference call with committee re fraudulent transfer issues (1.5). | | |
| 06/27/01 | R Raskin | 1.0 | $550.00 |
| | Committee conference call. | | |
| | TOTAL for both conference calls | | $3,666.50 |

*A-8:*

| 07/19/01 | ........; to Court for hearings before Judge Farnan (1.3) | Kreiger, A. | 2.4 |
|---|---|---|---|
| 07/19/01 | Travel to court for hearings before Judge Farnan during which the agenda, Pinnacle Brands case, indemnification related pleadings and other matters were reviewed (2.5); travel back to SSL offices following hearings during which began to draft Committee's objection to the terms of the Asbestos Property Damage Committee's retention of Conway, Del Genio (2.3) | Kreiger, A. | 4.8 |

| 07/19/2001 | Preparation for and attended court hearing on pending motions and related travel | Pasquale, K. | 6.0 |
| | Total: | | 13.40/$2,977.50 |

*A-9:*

| 10/29/2001 | ......; review Committee objection to motion and attendance at conference call (.6). | Krieger, A. | 1.0 |
| 10/29/2001 | Attention to former officers' motion and for indemnification and conference call with court, parties re same (.5);....... | Pasquale, K. | 0.7 |
| | | 1.10 hours for a total of $492.50 | |

*A-10:*

| 10/02/2001 | Meeting and interview with potential expert on asbestos litigation issues and follow-up conversation (2.0);..... | Krieger, A. | 3.3 |
| 10/02/2001 | Preparation for and meeting with, prospective asbestos expert (1.5) | Pasquale, K. | 2.5 |
| 10/02/2001 | Committee meeting to interview proposed expert. | Raskin, R. | 2.0 |
| | | Total | 5.50/$3,137.50 |

*A-11:*

| 10/01/2001 | Meeting with Ordway, Cunningham, Raskin,Levy, M. Greenberg et al at 767 Third re tax issues (2.5);.... | | 4.0 |
| 10/01/2001 | Meeting with representatives of Policano & Manzo and Stroock re due diligence on tax issues, follow-up t/cs re J Kapp re due diligence. | Raskin, R. | 2.5 |
| | | Total | 5.00/$2,912.50 |

*A-12:*

| 11/19/2001 | Conference with R. Raskin, K. Pasquale and P. Pantaleo (counsel for Chase) regarding status, strategy and debtors' view. | Kruger, L. | 1.3 |
| 11/19/2001 | Preparation for and meeting with P. Pantaleo-Simpson regarding status of cases (1.5). | Pasquale, K. | 1.5 |
| 11/19/2001 | .....; meeting with counsel to Committee-chair at Simpson Thacher (1.0). | Raskin, R. | 1.5 |
| | | Total | 3.80/$2,107.50 |

*A-13:*

| | | | |
|---|---|---|---|
| 11/05/2001 | Travel to court hearings (3.0). | Pasquale, K. | 3.0 |
| 11/05/2001 | Travel time (4.5) | Raskin, R. | 4.5 |
| 11/05/2001 | Preparation for and court hearing (1) omnibus hearing (2) former employees indemnification motion (6.5). | Pasquale, K. | 6.5 |
| 11/05/2001 | Preparation for and attend hearing in Delaware (2.5). | Raskin, R. | 2.5 |

Total: 16.5/$6,412.50

*A-14:*

| | | | |
|---|---|---|---|
| 11/21/2001 | Travel to and from Delaware for a court hearing | Kruger, L. | 4.5 |
| 11/21/2001 | Attendant travel (4.2) | Pasquale, K. | 4.2 |
| 11/21/2001 | Travel to/from Delaware for a court hearing (4.5) | Raskin, L. | 4.5 |

Total: 13.20/$3,697.50

*A-15:*

| | | | |
|---|---|---|---|
| 12/03/2001 | Discussion with creditors' committee counsel regarding response to Judge Fitzgerald inquiry (.5). | Krieger, A. | 0.5 |
| 12/03/2001 | Conference call with creditors committee counsel regarding response to Judge Fitzgerald. | Kruger, L. | 0.3 |
| 12/03/2001 | Conference call with committee counsel re transfer to Judge Wolin (.5). | Pasquale, K. | 0.5 |
| 12/03/2001 | Conf. call re reassignment of cases and conf. call with court, follow-up. | Raskin, R. | 0.8 |

Total: 2.10/$1,085.00

*A-16:*

| | | | |
|---|---|---|---|
| 12/04/2001 | Conference call with all parties re transfer to Judge Wolin (.5). | Pasquale, K. | 0.5 |
| 12/04/2001 | Conf. call with counsel to debtors re letter to Fitzgerald and open matters. | Raskin, R. | 0.5 |

Total: 1.0/$512.50

*A-17:*

| | | | |
|---|---|---|---|
| 12/20/2001 | Attended all day status conference before Judge Wolin (5.5) | Krieger, A. | 5.5 |
| 12/20/2001 | In court in Newark, NJ before Judge Wolin regarding court's agenda for handling asbestos and non-asbestos issues and fraudulent transfer issue between Judge Wolin and Judge Fitzgerald. | Kruger, L. | 2.9 |
| 12/20/2001 | Preparation for and court hearings before Judge | Pasquale, K. | 4.5 |

|  |  |  |  |
|---|---|---|---|
|  | Wolin (4.5) |  |  |
| 12/20/2001 | Travel to Newark to attend all day status conference before Judge Wolin (.8); and travel back to New York (.8) | Krieger, A. | 1.6 |
|  |  | Total: 14.50/$6,700.00 |  |

*A-18:*

|  |  |  |  |
|---|---|---|---|
| 12/13/2001 | Conference call with ML, MG, FTI representatives re agenda for conference call with the Company (1.1);.... | Krieger, A. | 3.3 |
| 12/13/2001 | .......; c/c Grace tax people et al (1.0);...... | Levy, M. | 4.3 |
|  |  | Total: 2.10/$1,082.50 |  |

<u>EXHIBIT B</u>

*B-1: Correspondence to Debtors*

| 4/16/01 | S Keppler | 1.0 | $425.00 |

. . . draft description of plans for correspondence to Debtors (1.0).

| 4/16/01 | A. Krieger | .9 | $382.50 |

. . .began to prepare draft correspondence (.9).

| 4/16/01 | M Wintner | 1.0 | $525.00 |

. . . draft letter to Debtor with Krieger and Keppler, requesting that Debtor suspend payments under certain employee benefit plans (1.0)

| 4/17/01 | A Keppler | 3.3 | 1,402.00 |

Review list of employee benefit plans and draft correspondence for Debtors' re refraining form making certain payments (3.3). . .

| 4/17/01 | A Krieger | .3 | $127.50 |

Office conference MSW, AK re preparation of draft correspondence to James Kapp re employee-benefits related information(.3).

| 04/17/01 | L. Kruger | .3 | $195.00 |

Review of letter to debtor's counsel regarding employee benefits, adjournment of time to respond to debtor's motion.

| 04/17/01 | M Wintner | 1.0 | $525.00 |

Review Debtor's First Day Wage Order and draft letter to Debtor (from Arlene Krieger) asking that Debtor suspend payments under certain benefit plans.

| 04/18/01 | A Krieger | 1.3 | $552.50 |

Office conference MW, AK re review and revise draft correspondence to Debtors seeking employee benefits related information and payment restraint (1.3).

| 04/18/01 | R Raskin | .4 | $220.00 |

Review letter re employee issues.

| 04/18/01 | M. Wintner | .5 | $262.50 |

Review and revise draft letter to Debtor re employee benefit plans.

| 04/19/01 | A Krieger | 3.0 | $1,275.00 |

Prepared final form of correspondence to J Kapp re employee benefits documentation request and requested restraint on payments (3.0).

Total    13.0/$5,891.00

*B-2: Motion for Reconsideration*

| 04/24/01 | A Krieger | 3.4 | $1,445.00 |

Office conferences A. Keppler re preparation of reconsideration motion (.5); office conference A Taruschio re case law re necessity doctrine and application to Grace cases (,5); correspondence to S. Cunningham re employee benefits documentation received from Grace (.1) correspondence to R Higgins, John Forgach re employee benefits (.5); office conference M. Sasson re local rule for reconsideration motions (.1); began to prepare reconsideration motion and review application of federal rule (1.5); telephone call R Higgins re Kapp correspondence on retiree payment and reviewed correspondence (.2).

| 04/24/01 | M Wintner | .5 | $262.50 |

Review letter from Debtor's counsel concerning payment of employee benefits pursuant to First Day Wage Order and office conference with A. Keppler re same.

| 04/25/01 | A Keppler | 1.0 | $425.00 |

Discussions with MSW, A Krieger and R Raskin re reconsideration request on some benefits (1.0) . . .

| 04/25/01 | A Krieger | .3 | $73.50 |

Telephone call S. Cunningham re employee benefit related documentation and review thereof (.2); office conference A. Keppler re preparation of reconsideration motion (.1)

| 04/25/01 | R Raskin | .7 | $385.00 |

Review reply re employee issues, o/c Wintner and Keppler re same (.7).

| 04/25/01 | A Taruschio | 1.5 | $111.00 |

Begin research on necessity of payment doctrine for A. Krieger (1.5)

| 04/25/01 | M Wintner | 1.5 | $187.50 |

Office conference Rob Raskin; Arlene Krieger and Abbey Keppler re recommended response to Debtors' stated intention to continue to pay retired and terminated employees under various Employee Benefit Plans, under authority of First Day Wage/Benefits Order (.5); review various Employee Benefit Plan documents and Workers Compensation policies (1.0).

| 04/26/01 | A Keppler | 7.2 | $3,060.00 |

Conference call with S. Cunningham et al. and A Krieger and MSW re employee benefits (.2); draft memo to Committee re request for reconsideration of authorization for certain nonqualified pensions and workers' compensation, related discussions with A Krieger and MSW (5.2).

| 04/26/01 | A Krieger | 4.6 | $1,955.00 |

. . . further office conferences A. Keppler re preparation of draft memorandum to the Committee with respect to reconsideration of the Benefits Order (.5); reviewed draft memorandum re reconsideration motion relating to nonqualified draft benefit programs and prepared comments thereon (2.1).

| 04/26/01 | R Raskin | .4 | $220.00 |

Review memo re employee issues.

| 04/26/01 | A Taruschio | 4.8 | $888.00 |

Research and draft necessity section for Employee payment reconsideration motion for A. Krieger (4.8(.

| 04/27/01 | A Keppler | 8.2 | $1,394.00 |

. . . draft memo to committee re motion for reconsideration of certain first day orders and related discussions with A Krieger, draft motion for reconsideration(8.2)

| 04/27/01 | A Krieger | 3.3 | $1,402.50 |

. . . prepare memorandum to the Committee re employee benefit issues and Committee meeting to discuss (.5); office conferences A. Taruschio re case law discussing the necessity doctrine and its application, application of Section 507(a)(3) and (a)(4) (1.2) further office conferences AK re reconsideration motion structure and arguments (1.6).

| 04/27/01 | L Kruger | .4 | $260.00 |

Review of memo on benefits order and motion for reconsideration.

| 04/27/01 | A Taruschio | 8.1 | $1,498.00 |

Research brief point on reconsideration of employee motion (6.4); o/c w/A. Krieger re same (1.7)

| 04/27/01 | M Wintner | 2.0 | $1,050.00 |

Review memo to Creditors' Committee and draft Motion re Employee Benefit Plans (.8); telephone conference Arlene Krieger, Abbey Keppler, Debtor and Debtor's counsel re Workers' Compensation policies and arrangements (.8); office conference A. Krieger and A. Keppler re scope of memo to Committee and draft Motion to Reconsider First Day Wage and Benefits Order (.4).

| 04/28/01 | A Keppler | 4.0 | $1,700.00 |

Draft motion for reconsideration of certain nonqualified pension payments.

| 04/28/01 | A. Krieger | 4.2 | $1,785.00 |

Review, revise draft motion for reconsideration.

| 04/28/01 | A Taruschio | 5.7 | $1,054.50 |

research and write brief on necessity doctrine and employee payments (5.7).

| 04/29/01 | A Keppler | 4.0 | $1,700.00 |

Draft motion for reconsideration of authorization for certain employee benefit payments included in First Day orders.

| 04/29/01 | A Krieger | 4.4 | $1,870.00 |

Further review and revisions to draft reconsideration motion and office conferences A. Keppler re same.

| 4/30/01 | A Krieger | 6.7 | $2,847.50 |

Review and revise form of reconsideration motion (4.6); telephone call MW re same (.1) extended meeting with A Taruschio re legal analysis for reconsideration motion (2.1)

| 4/30/01 | A Taruschio | 4.8 | $888.00 |

Review and revise reconsideration motion for employee benefits w/A Krieger (4.8).

| 05/07/2001 | Review motion by HSTC to lift stay; review motion for appointment of counsel; review motion for reconsideration of first day orders; review 2d supp. affidavit of debtor, committee objections to motion for lift of stay; t/c K. Pasquale re: conference. | Sasson, M. | 2.0 | $950.00 |

B.1.

| 05/01/2001 | Further revisions to reconsideration motion | Krieger, A. | 6.7 | $2,847.50 |

| | | | | |
|---|---|---|---|---|
| | and order to reflect MW comments and Committee's position and then comments form RAR (6.7). | | | |
| 05/01/2001 | Review motion to reconsider wage issues and o/c A. Krieger re same (.5). | Raskin, R. | 0.5 | $275.00 |
| 05/01/2001 | Revise, edit, research for reconsideration motion (5.1). | Taruschio, A. | 5.1 | $943.50 |
| 05/01/2001 | Revise draft Motion to Reconsider First Day Benefits Order (2.0). | Wintner, M. | 2.0 | $1,050.00 |
| 05/02/2001 | Final revisions to reconsideration motion and order and incorporate additional comments from RAR and MW are same and office conferences R. Serrette re filing and service of same (2.7); telephone call M. Lastowski re filing and service of reconsideration motion, hearing date notice, other (.1); . . . office conference A. Keppler re reconsideration motion, KERP program and executive contract review (.7). | Krieger, A. | 3.5 | $1,487.50 |
| 05/02/2001 | Review motion to reconsider wage order (.4). | Raskin, R. | 0.4 | $220.00 |
| 05/02/2001 | Changes and revisions, final edits, research for Reconsideration motion (1.8). | Taruschio, A. | 1.8 | $333.00 |
| 05/02/2001 | Revise draft motion to Reconsider First Day Benefits Order (1.2); and telephone call with Arlene Krieger re: same (0.3). | Wintner, M. | 1.5 | $787.50 |
| | | TOTAL | 23.5 | $8,894.00 |

### *B-3: Indemnification*

| | | | |
|---|---|---|---|
| 07/02/2001 | Worked on revising a legal memo re: treatment of indemnification claims. | Gomelskaya, I. | 6.0 |
| 07/03/2001 | Read Westlaw cases, worked on a legal memo, revisions | Gomelskaya, I. | 4.0 |
| 07/03/2001 | Correspondence to S. Schwartz re: indemnification letters and review same (.2); office conference AT re objection to indemnification motion (.2). | Krieger, A. | 0.4 |
| 07/04/2001 | Begin review and draft reply to employee indemnification motion. | Taruschio, A. | 3.1 |
| 07/05/2001 | Legal research on 11 U.S.C. §502(e) | Gomelskaya, I. | 1.3 |
| 07/05/2001 | Review memo re case law on Frenville and treatment of indemnification claims arising out of contract; review Pinnacle Brands case and office conference Irina re same (1.2);......... | Krieger, A. | 2.0 |
| 07/06/2001 | West law research on 11 USC 502 (c) (2), read cases | Gomelskaya, I. | 3.5 |
| 07/07/2001 | Research and draft indemnification response. | Taruschio, A. | 3.1 |

| 07/08/2001 | Research and draft indemnification response. | Taruschio, A. | 6.1 |
| 07/09/2001 | Revise and edit indemnification objection (3.7 hrs). | Taruschio, A. | 3.7 |
| 07/10/2001 | Review and revise opposition to indemnity of officers and directors | Raskin, R. | 1.5 |
| 07/11/2001 | Office conference A. Taruschio re: indemnity issues and review and revise second mark-up of objection to motion to pay d&o claims. | Raskin, R. | 0.8 |
| 07/11/2001 | Revise and send response to former employee indemnification claim (1.9); office conference with R. Raskin regarding same (.2). | Taruschio, A. | 2.1 |

Total: 36.8 hours/$8,599.50

### B-4: Motion to Retain Counsel

| 10/23/2001 | Attention to asbestos committees' motion to retain counsel to prosecute fraudulent transfer action (.8); office conference M. Sasson re opposition to same (.3) | Pasquale, K. | 1.1 |
| 10/23/2001 | Review Asbestos Committee Motion to retain Special Counsel (.8); t/c K. Pasquale, R. Raskin re: same (.5); draft objection to motion (3.0); draft memo re: same (1.0). | Sasson, M. | 5.3 |
| 10/24/2001 | Continued drafting objection to motion and memo re: same; research proposed law firms. | Sasson, M. | 5.5 |
| 10/25/2001 | Attention to draft opposition to asbestos committees' motion to retain law firms on fraudulent transfer claims (2.5); revised memo to committee re same (.4); telephone conference Kirkland re asbestos committees' motion (.3) | Pasquale, K. | 3.2 |
| 10/25/2001 | Continued drafting objection to motion and memo re: same; research proposed law firms. | Sasson, M. | 5.5 |
| 10/26/2001 | Review draft of Committee's opposition to asbestos committee's joint motion to retain special counsel and office conference M. Sasson re above (1.0); memos to T. Maher re same (.2). | Krieger, A. | 1.2 |
| 10/26/2001 | Review memo from A. Krieger re retention of counsel (.2), review Pasquale draft memo re response to same (.3). | Raskin, R. | 0.5 |
| 10/26/2001 | O/c A. Kreiger re: objection, revise same (1.0); t/c K. Pasquale, L. Kruger, R. Raskin re: objection, status (.5); review various filings (.5). | Sasson, M. | 2.0 |
| 10/29/2001 | Office conference M. Sasson re Committee opposition to special counsel motion and filing of same (.1); office conference RS re filing of | Krieger, A. | 0.7 |

| | | | |
|---|---|---|---|
| | objection (.1); follow-up memo to T. Maher re form of Committee opposition (.1); ...... | | |
| 10/29/2001 | T/c K. Pasquale, A. Kreiger re: objection, revise same; file. | Sasson, M. | 1.0 |
| 10/31/2001 | Review Debtors' objection to Asbestos Committee's retention of Special Counsel to prosecute the fraudulent transfer claims and memos to and from KP re same (.4) | Krieger, A. | 0.4 |
| 10/31/2001 | Attention to Debtors' opposition to asbestos committees' motion to retain law firms (.2);.......... | Pasquale, K. | 0.6 |

Total: 26.2/$10,168.00

### B-5: Warren Retention

| | | | |
|---|---|---|---|
| 10/24/2001 | Memo re supplemental application of Asbestos PI Committee to retain E. Warren (.5); case law research re basis for challenging above (.7). | Krieger, A. | 1.2 |
| 10/25/2001 | Review case law and pleadings re retention of Warren by Caplin & Drysdale. | Krieger, A. | 3.7 |
| 10/25/2001 | Review email re retention of Warren. | Raskin, R. | 0.2 |
| 10/29/2001 | ...........;office conference re:PI Committees proposed retention of Warren and LK, discussions, and preparation of objection thereto (.3). | Krieger, A. | 0.7 |
| 10/29/2001 | Review correspondence re: Warren retention (.2); review supplemental application to retain Professor Warren (.2), t/c A. Krieger re scheduling conf. call (.2). | Raskin, R. | 0.6 |
| 10/30/2001 | Telephone conference P. Lockwood re Warren retention motion (.3); attention to same | Pasquale, K. | 0.5 |
| 10/30/2001 | Review application to retain Professor Warren (.2), t/c S. Case re issues related to retention (.1). | Raskin, R. | 0.3 |
| 10/31/2001 | Office conference with K. Pasquale regarding objection to Elizabeth Warren retention. | Kruger, L. | 0.2 |
| 10/31/2001 | ..............; attention to Warren retention issues (.4) | Pasquale, K. | 0.6 |
| 10/31/2001 | Numerous t/css with A. Krieger and K. Pasquale re Warren retention (.3), t/c T. Maher re same (.1). | Raskin, R. | 0.4 |
| 10/26/2001 | Conference with A.Krieger re memo to T.Maher re response to Cozon retention (.2); work regarding same (.1); memo on Caterpillar motion to the Committee (.2). | Serrette, R. | 0.5 |
| 10/30/2001 | ............; review Inselbuch affidavit and Asbestos PI Committee's supplemental application to employ E. Warren and prepare draft memorandum to the Committee discussing same (2.3); conference call with KP and P. Lockwood re Warren retention issues (.6); review Committee memo to reflect conference call material (.4). | Krieger, A. | 4.4 |

| | | |
|---|---|---|
| 10/31/2001 | Revise memo to the Committee re proposed retention of Warren and issues in connection therewith and memos and telephone conferences to and from KP and RAR re same (1.5); memos to T. Maher and the Committee re Asbestos Committee's proposed retention of E. Warren and T. Maher's position thereon (.5). | Krieger, A. | 2.0 |

Total: 13.6/$5,920.00

### B-6: ZAI Claimants' Motion to Dismiss

| | | |
|---|---|---|
| 11/18/2001 | Review ZAI claimants motion to dismiss the chapter 11 cases as a bad faith filing (.8) | Krieger, A. | 0.8 |
| 11/19/2001 | Case law review re section 1112(b) in respect of ZAI motion (1.2). | Krieger, A. | 1.2 |
| 11/19/2001 | ..........; attention to ZAI claimants' motion to dismiss bankruptcy case (.5). | Pasquale, K. | 0.9 |
| 11/19/2001 | Review motion of Zonolite claims to dismiss case (.2); conference with V.DeFreitas and A. Krieger re same (.2). | Serrette, R. | 0.4 |
| 11/20/2001 | Attention to ZAI Motion to dismiss and relevant case law (1.1). | Krieger, A. | 1.1 |
| 11/21/2001 | Office conference M. Sasson re ZAI plaintiffs motion to dismiss (.3); began to review case law re motion to dismiss (1.6). | Krieger, A. | 1.9 |
| 11/21/2001 | T/c K. Pasquale re: Zonolite motion to dismiss; o/c A. Krieger re: status, same; review motion to dismiss, SGL case. | Sasson, M. | 4.3 |
| 11/25/2001 | Continued review of case law cited to in ZAI plaintiffs motion to dismiss and commentary on the good faith requirements (2.8). | Krieger, A. | 2.8 |
| 11/26/2001 | Attention to ZAI motion to dismiss and arguments in response thereto, reviewing relevant case law (4.6). | Krieger, A. | 4.6 |
| 11/27/2001 | ZAI motion to dismiss and review relevant case law (2.8). | Krieger, A. | 2.8 |
| 11/27/2001 | Further attention to ZAI claimants' motion to dismiss bankruptcy case (1.0) | Pasquale, K. | 1.0 |
| 11/27/2001 | Review motion to dismiss chapter 11 case (.8), review case law re dismissal (1.5). | Raskin, R. | 2.3 |
| 11/28/2001 | Review Law Review article re treatment of mass tort claims through chapter 11 cases (2.60). | Krieger, A. | 2.6 |
| 11/28/2001 | .........; t/c K. Pasquale re: same, motion to dismiss | Sasson, M. | 2.0 |

| | | | |
|---|---|---|---|
| | (.5); ....... | | |
| 11/27/2001 | Conf c/w/Committee re ZAI motion to dismiss and case status, (0.4);....... | Krieger, A. | 1.1 |
| 12/19/2001 | ...............;responded to request by AK for re: Zonolite motion to dismiss chapter 11 case (.2). | Defreitas, V. | 3.4 |
| 12/31/2001 | ........; memo to V. DeFreitas re responses to ZAI motion to dismiss the cases (.1);........ | Krieger, A. | 1.0 |
| 12/03/2001 | Attended to ZAI motion to dismiss the case and office conference M. Sasson re Committee's response (1.8); review 2000 10K; 3/3/01 10Q for financial information relevant to dismissal motion (.8); office conference RS re documentation in connection with same (.1);....... | Krieger, A. | 3.1 |
| 12/03/2001 | T/c K. Pasquale and A. Krieger re: response to motion to dismiss (.6); review prior filings, caselaw, outline opp. to motion to dismiss (6.0). | Sasson, M. | 6.6 |
| 12/04/2001 | Continued drafting opp. to motion to dismiss. | Sasson, M. | 0.7 |
| 12/07/2001 | Continued drafting opposition to motion to dismiss. | Sasson, M. | 1.0 |
| 12/10/2001 | Continued drafting opposition to motion to dismiss. | Sasson, M. | 7.5 |
| 12/11/2001 | Office conference M. Sasson re Committee's response to the ZIA motion to dismiss (.5); telephone call S. Cunningham re Committee's response to ZAI motion to dismiss (.1). | Krieger, A. | 0.6 |
| 12/11/2001 | T/c A. Krieger, K. Pasquale, research 524(g), continued drafting opposition to motion to dismiss. | Sasson, M. | 8.5 |
| 12/13/2001 | Office conference M. Sasson re Committee response to ZAI plaintiffs motion to dismiss (.2). | Krieger, A. | 0.2 |
| 12/13/2001 | Continued drafting opposition to motion to dismiss (6.6); t/c A. Krieger, K. Pasquale re: same (.2). | Sasson, M. | 6.8 |
| 12/14/2001 | Attention and revisions to draft opposition to Zonolite claimants' motion to dismiss bankruptcy case (1.0) | Pasquale, K. | 1.0 |
| 12/14/2001 | Review draft of response to motion to dismiss. | Raskin, R. | 0.3 |
| 12/17/2001 | Review, comment draft Committee response to ZAI motion to dismiss (.6); office conference KP re further revised form of Committee objection (.2);........; review ZAI Class Action complaint (1.2). | Krieger, A. | 3.4 |
| 12/17/2001 | Drafting and revisions to opposition to ZAI claimants' motion to dismiss case (2.0) | Pasquale, K. | 2.0 |
| 12/17/2001 | T/c K. Pasquale, research 524(g), revision opposition to motion to dismiss. | Sasson, M. | 1.5 |
| 12/18/2001 | review revised draft of Committee's opposition to the ZAI motion to dismiss (1.3); office conference KP re same (.6); complete review of Lewis Complaint (.6). | Krieger, A. | 2.5 |

| 12/18/2001 | Revisions to opposition to ZAI claimants' motion to dismiss (1.0); office conference A. Kreiger re same (.5) | Pasquale, K. | 1.5 |
| 12/18/2001 | Review revise draft opposition to motion to dismiss; t/c A. Krieger, K. Pasquale re: same. | Sasson, M. | 0.7 |
| 12/19/2001 | Review, revise Committee opposition to ZAI motion to dismiss and prepare further modifications thereto (.6); office conferences KP and MS re opposition and ZAI pleadings (.3). | Krieger, A. | 0.9 |
| 12/19/2001 | T/c K. Pasquale, A. Kreiger re: opposition to motion to dismiss, adversary complaint, revise opposition to motion to dismiss. | Sasson, M. | 2.7 |
| 12/21/2001 | Office conference KP re: final comments to the Committee's opposition to the Motion to Dismiss and finalize same. | Sasson, M. | 0.6 |

Total: 79.2/$31,419.00

## B-7: Tax Memorandum

| 11/01/2001 | Compiled research and proposed legislation for A. Krieger (0.15); phonecall from A. Krieger re: memo on proposed legislation (0.15). | Brandes, R. | 0.3 |
| 11/01/2001 | Review revised NOL schedule (.4); analysis re impact of NOLs on carryback issues (.3); analysis re impact of legislation (.4). | Greenberg, M. | 1.1 |
| 11/01/2001 | Office conferences RAR re memo describing pending tax legislation and necessary revisions thereto (.1); review tax legislation, underlying documentation, memo and revise same and office conference M. Levy re same (.8); office conferences Ronnie Brandes re tax legislation (.6); prepare memo to the Committee re same (2.3);............ | Krieger, A. | 4.1 |
| 11/01/2001 | Proposed tax legislation re asbestos losses - t/c(s) Raskin and Krieger (.2). | Levy, M. | 0.2 |
| 11/02/2001 | Email/New memo received from A. Krieger (0.15); additional research assignment from M. Greenberg (0.05); research re: federal corporate income tax rates from 1963 thru 2001 (1.3). | Brandes, R. | 1.5 |
| 11/02/2001 | Revise memorandum re proposed legislation (1.1); d/w R. Brandes re impact of tax rates (.5). | Greenberg, M. | 1.6 |
| 11/02/2001 | ........; memo to M.Levy, LK re tax legislation memorandum (.2);............ | Krieger, A. | 0.8 |
| 11/02/2001 | Memo on proposed tax legislation/revision (.1), e-mails re same with Krieger (.1). | Levy, M. | 0.2 |

| 11/05/2001 | Work on memorandum re proposed legislation(2.3); meeting w/R. Brandes re research on tax rate impact (.4). | Greenberg, M. | 2.7 |
|---|---|---|---|
| 11/06/2001 | Revise memo re proposed legislation (1.4); analysis re alternative carryback periods (.4). | Greenberg, M. | 1.8 |
| 11/07/2001 | Work on revise memo re legislation (2.2); d/w MAL re carryback schedule (.2). | Greenberg, M. | 2.4 |
| 11/07/2001 | Review memo re tax legislation. | Raskin, R. | 0.2 |
| 11/08/2001 | Reviewing tax language re: deductibility of SEP Fund payments in reviewing memo from Stroock to creditors committee 1]; revising language in memo 2]; conference call with M. Greenberg and T. Maynes (K&E) re: deductibility of SEP Fund payments 1]. | Eichler, M. | 0.5 |
| 11/08/2001 | Review memo from Stroock to Committee re SEP(.2); call w/ME and T. Maynes re deductibility of payments (.2); analysis re deductibility (.3); call w/MAL re NOLs (.4). | Greenberg, M. | 1.1 |
| 11/08/2001 | Memorandum on proposed tax legislation regarding asbestos claims and its effect - review and comment (.5). | Levy, M. | 0.5 |
| 11/08/2001 | Review memo re tax legislation. | Raskin, R. | 0.3 |
| 11/09/2001 | Call from M. Levy re: additional research (0.1); Research on Section 172 and NOLs and when NOLs can be carried back when corporations file consolidated returns (1.0). | Brandes, R. | 1.1 |

Total: 19.50/$8,589.50

## EXHIBIT C

*C-1:  Difference is $475.00*

| | | | |
|---|---|---|---|
| 10/02/2001 | Preparation for and meeting with, prospective asbestos expert (1.5) | Pasquale, K. | 2.5 |

*C-2: Difference is $42.50*

| | | | |
|---|---|---|---|
| 10/19/2001 | Telephone calls S. Cunningham re request for detail to legacy liabilities and conference call with Debtors' counsel and Blackstone Group representative to discuss (.2); office conference RAR re conference call (.1); review legacy liability memo (0.3); conference call with RAR and representatives for Debtors. FTI P&M, Blackstone Group re legacy liabilities and receipt of underlying detail, and follow up office conference re same (1.5); memos to and from T. Maher re proposed resolution of tax claim with the State of Washington settlement (0.1); memos to and from P. Brach (B of A) and to RAR, LK, T. Maher re advice concerning B of A's selling its debt and resignation from the Committee (.5); memo to C. MacCullum re Committee membership (.1). | Krieger, A. | 2.9 |

*C-3: Difference is $297.50*

| | | | |
|---|---|---|---|
| 10/26/2001 | Review, revise memo to the Committee re Caterpillar and Toyota motions (.2); review, revise memo to the Committee re settlement of tax claims and Gloucester litigation (.3). | Krieger, A. | 1.2 |

*C-4: Difference is $350.00*

| | | | |
|---|---|---|---|
| 10/31/2001 | Reviewing consent decree and associated motions .5]; researching whether SEP payments made Pursuant to a consent decree are deductible (2.4); t/c with M. Levy and M. Greenberg re: deductibility if SEP payments (.2); o/c with M. Greenberg same (.4). | Eichler, M. | 4.5 |

*C-5:  Difference is $105.00*

| | | | |
|---|---|---|---|
| 11/08/2001 | Begin review of time schedules and edits to same (.7); conference with A. Krieger re same (.1). | Serrette, R. | 1.5 |

*C-6:  Difference is $15.00*

| | | | |
|---|---|---|---|
| 11/26/2001 | Final preparation for Committee Conference call (.2); draft memo re same (.2). | Serrette, R. | 0.5 |

*C-7:  Difference is $212.50*.

| 11/02/2001 | Office conference LK re agenda for November 5, 2001 hearings (.1); telephone call D. Carickhoff re Debtors/Honeywell discussion re ICO matter (.2). | Krieger, A. | 0.8 |

*C-8:  Difference is $35.00*

| 11/08/2001 | Reviewing tax language re: deductibility of SEP Fund payments in reviewing memo from Stroock to creditors  committee 1]; revising language in memo 2]; conference call with M. Greenberg and T. Maynes (K&E) re: deductibility of SEP Fund payments 1]. | Eichler, M. | 0.5 |

*C-9:  Difference is $85.00.*

| 11/30/2001 | Continue to prepare memo to the Committee re CCHP litigation (0.8); memos to ML, MG re conf/c with Debtors' counsel to discuss outstanding tax information requests (0.2); memo to S. Schwartz re conf/call to discuss outstanding issues (0.1); t/c S. Schwartz re outstanding tax information request (0.5); o/c MG re substance of conversation with S. Schwartz (0.2); prepare memorandum re S. Schwartz conversation (0.2); o/c M. Levy re S. Schwartz conversation, begin to review CCHP documentation (1.2). | Krieger, A. | 3.4 |

*C-10:  Difference is $85.00*

| 11/08/2001 | Review, o/c M. Berg and further revise draft memo to the Committee re Debtors' proposed EPA settlement(1.3); o/c M. Sasson re EPA litigation (0.1);o/c RAR re memo comments (0.1); memo to M. Levy, M. Greenberg re tax benefits discussion for the memo (0.2); t/c J. Baer re document request, request for extension of time to respond to motion, other (0.5). | Krieger, A. | 2.4 |

*C-11:  Difference is $680.00*

| 12/28/2001 | Prepare draft correspondence to Judge Wolin re Committee composition and counsel and circulate same (1.3). | Krieger, A. | 2.9 |

<u>EXHIBIT D</u>

| 04/17/01 | A Krieger | .4 | $170.00 |
|---|---|---|---|
| | . . .office conference RS re conflicts check to be conducted (.4);. . . | | |
| 04/18/01 | A Krieger | .2 | $85.00 |
| | . . .office conference RS re conflicts check, Committee contact list (.2) . . . | | |
| 04/18/01 | R Serrette | .9 | $117.00 |
| | . . .work on conflict check in preparation for retention (.9). . . | | |
| 04/20/01 | A Taruschio | .6 | $111.00 |
| | O/c A. Krieger, E. Holzberg re status of retention papers and conflict search. . . | | |
| 04/23/01 | A Krieger | .7 | $208.25 |
| | . . .office conference R Serrette re revisions to contract list and conflicts information to Sean Cunningham at Policano & Manzo (.2); office conference EH re review conflicts information(.5). | | |
| 04/24/01 | A Krieger | .3 | $73.50 |
| | . . .office conference EH re conflicts check (.3). | | |
| 04/24/01 | R Serrette | 2.0 | $260.00 |
| | Review and revise calendar, contact lists and conflict memo. | | |
| 04/26/01 | R Serrette | 2.8 | $364.00 |
| | Update contact list; work on conflict check re: representation; filing of response; update critical date calendar. | | |
| 04/27/01 | E Holzberg | 2.9 | $420.50 |
| | Worked on Exhibit for conflicts Affidavit. | | |
| 04/24/01 | A Krieger | .1 | $42.50 |
| | . . .telephone call Sean Cunningham re conflicts information, retention affidavit, for Policano and Manzo pleadings (.1). | | |
| 04/24/01 | A Krieger | 1.0 | $425.00 |
| | Extended office conferences A. Taruschio re conflicts material for retention application (.9). . .office conference RS re additional conflicts checks to be conducted (.1). | | |
| 04/26/01 | A Krieger | .6 | $255.00 |
| | Office conferences A. Taruschio, EH re conflicts check information for Stroock application (.6). | | |
| 04/26/01 | A Taruschio | 5.1 | $943.50 |
| | Revise, edit, and make calls for conflicts check (5.1). | | |
| 04/27/01 | A Taruschio | 6.1 | $1,128.50 |
| | Finalize retention papers and conflicts check w/E. Holzberg and A. Krieger (6.1). | | |
| | | | |
| 05/15/2001 | Office conferences EH re supplemental conflicts check (including critical trade vendors, asbestos committee members to the extent not already done) (.3). | Krieger, A. | 0.3 | $127.50 |
| 05/16/2001 | Worked on conflicts check. | Holzberg, E. | 1.9 | $275.50 |
| 05/01/2001 | Review final conflict check info; o/c w/ J. Tanenbaum re same; review final retention papers (1.9). | Taruschio, A. | 1.9 | $351.50 |

| 05/23/2001 | Office conference with EH regarding supplemental conflicts affidavit (.4 hrs); review of supplemental affidavit forms (.3 hrs); telephone call with Stroock attorneys regarding conflict check (.4 hrs); preparation of supplemental affidavit (.3 hrs). | Taruschio, A. | 1.4 | $259.00 |
| 06/11/01 | A Taruschio<br>Revise supplemental conflicts affidavit for Stroock. | | 1.2 | $294.00 |
| 06/12/01 | A Taruschio<br>Review pending motions and supplemental conflicts affidavit. | | 1.6 | $392.00 |

<u>Response Exhibit 1</u>

The Report comments that Stroock billed 146.5 hours for an aggregate cost of $65,924,00 in fees to the estate for meetings, hearing and/or conference calls between April 20, 2001 and December 13, 2001 where more than one Stroock professional was in attendance.  (See Report at paragraph 8).  Exhibit A to the Report identifies eighteen (18) such meetings, hearings and/or conference calls where this occurred.  In responding to the Report, Stroock has combined several of the meetings, hearings and conferences.

April 20, 2002 Committee Meeting

This was the first Creditors' Committee meeting since Stroock's selection as counsel to the Creditors' Committee.  The meeting was an extended meeting which addressed a wide range of administrative and substantive matters including, among others matters, (i) the preparation of by-laws, (ii) the retention of financial advisors/accountants for the Committee, (iii) those "first" day and other motions filed shortly after the commencement of these cases by the Debtors, certain of which had upcoming objection deadlines and others of which, although the subject of orders by the Court, appeared to grant authority which preferred certain creditors over others, and (iv) the asbestos claims-related issues.  Just prior to the formal start of the Creditors' Committee meeting, interviews of several financial/accounting firms were conducted for their employment by the Committee.  This first meeting of the Creditors' Committee was attended by Mr. Kruger, the senior bankruptcy partner on this matter, who billed 3.3 hours, Mr. Raskin, the junior partner in the bankruptcy department assigned to this matter, who billed 5.5 hours, Mr. Wintner, a partner in the ERISA department at the firm, who billed 3.5 hours, and Ms. Krieger, a senior associate in the bankruptcy department assigned to this matter, who billed 4.5 to the estate.  Stroock submits that each professional performed a distinct role and that the services they performed were not duplicative, but necessary given the number and complexity of substantive bankruptcy and litigation-related issues requiring immediate review, discussion with, and evaluation by, the Committee and, as necessary, the prompt preparation of moving and responsive pleadings stating the Committee's position.  As the senior partner on this matter, Mr. Kruger focused on the global view and long-term strategy attendant to the issues underlying the filing, and imparted those view to the Committee.  As the junior partner on these cases, Mr. Raskin, had the day to day overall responsibility for these cases.  In addition, Mr. Raskin and Ms. Krieger, the senior associate assigned to the cases, each took responsibility to review and to be responsible for follow-up on different, pending matters.  For example, at the outset, Mr. Raskin took responsibility for the preliminary injunction motion filed by the Debtors and for the Committee's review and evaluation of the Debtors' DIP financing motion.  Two of the other matters requiring immediate attention were the motions filed by the Debtors seeking approval for virtually everyone of their employee retention programs and executive compensation plans, and the Debtors' motion to assume certain employment contracts with their senior executives.  The expertise of Mr. Wintner was necessary to assist the Committee in properly and effectively evaluating the Debtors' numerous employee-related programs and agreements and Ms. Krieger worked with Mr. Wintner on these matters for the Committee preparing numerous and, in some cases, extensive correspondence to Debtors' counsel on issues raised by these employee benefit-related motions.  In addition, Ms. Serrette, the paralegal on the case, attended this first Committee meeting.  It was her task to organize the Committee meeting, and to attend to the numerous administrative matters required for a smooth functioning Committee in large chapter 11 cases.  Accordingly, we believe that

the fees billed in respect of the services rendered by Mr. Kruger, Mr. Raskin, Ms. Krieger, Mr. Wintner and Ms. Serrette should be compensable in their entirety.

May 29, 2001 Meeting

Mr. Kruger billed 2.3 hours and Mr. Pasquale, a partner in Stroock's litigation department, billed 4.0 hours in connection with their preparation for and attendance at a meeting with Debtors' counsel to discuss asbestos claims and related litigation issues. Mr. Kruger and Mr. Pasquale play necessary but distinct roles for the Creditors' Committee in these proceedings, which are not duplicative. As discussed above, Mr. Kruger focuses on the long-term plan and chapter 11 emergence-related strategy issues, while Mr. Pasquale focuses upon all aspects of the asbestos-claims issues, the fraudulent transfer claims issues and all related litigation. The expertise of both counsel were required for this meeting, which addressed long-term chapter 11 emergence and litigation-related matters. Stroock submits the time of both professionals is compensable in full.

May 1, 2001 Creditors' Committee Meeting

This Creditors' Committee conference call on May 1, 2001, in which Stroock attorneys billed an aggregate of $3,128.50 to the estate, followed up on the numerous pending matters addressed with the Creditors' Committee at its initial April 20, 2001, meeting, including (i) the employee benefit and compensation related matters, with respect to which Mr. Wintner and Ms. Krieger were primarily responsible, and with respect to which the Committee determined to have Stroock prepare and file a pleading opposing the first day order the Court had entered authorizing the Debtors' to make a wide range of pre-petition and post-petition payments in respect of existing employee retention and compensation-related programs to the Debtors' current and former employees (the "Reconsideration Motion"), (ii) the DIP motion and proposed stipulation in respect of the Debtors' first day motion to pay trade vendors, with respect to which Mr. Raskin took primary responsibility, and (iii) the pending asbestos-related issues on which Mr. Pasquale addressed the Committee. Mr. Kruger imparted to the Committee his senior level of expertise on these issues, as well as on the request made to the United States Trustee for the appointment of an official equityholders' committee. Stroock submits that the conference call participation of each of these counsel was necessary for the Committee to evaluate and take informed positions on various pending matters and therefore, submits that the fees billed for Messrs. Kruger, Raskin, Pasquale and Wintner, and for Ms. Krieger should be fully compensable. With respect to the attendance on the conference call by Ms. Tarauschio, a junior bankruptcy associate rendering some services on this matter, Stroock is prepared to voluntarily waive the $185.00 in fees billed for Ms. Taruschio attending the conference call for 1.0 hours. Stroock submits that the remaining 1.1 hours in time identified on May 1, 2001 related to Ms. Taruschio's preparation of the stipulation embodying a resolution of the dispute with the Debtors regarding the first day authorization to pay all outstanding trade vendors debt, and fees in respect of those services should be fully compensable.

May 22, 2001 Committee Meeting

This extended Creditors' Committee meeting involved the first full presentation from the Debtors on their financial performance and business' operations, their position and strategy on asbestos claims and related litigation, and further discussions on their employee-related benefits and compensation motions including the Debtors' proposal to settle the Reconsideration Motion filed by the Creditors' Committee and senior management contract assumption motions, among other matters. As with the other Creditors' Committee meetings and calls during the first weeks of these chapter 11 cases, the same counsel from Stroock continued to report to and advise the Committee with respect to the substantive issues then under discussion; with Mr. Kruger providing high level, global strategic chapter 11 input, Mr. Pasquale providing expertise with respect to the asbestos-related and fraudulent transfer-related claims and litigation, Ms. Krieger and Mr. Wintner addressing the employee benefit and senior management contract matters and Mr. Raskin discussing all other pending matters with the Committee. Stroock submits that the participation of each of these counsel was necessary for the Committee to evaluate and take informed position on the various pending matters and, therefore, submits that each such counsel's time should be fully compensable.

May 11, 2001 and May 18, 2001 Conference Calls

Following Stroock's preparation and filing of the Reconsideration Motion, Debtors' counsel and counsel at Stroock engaged in these two conference calls to discuss their respective client's positions and attempt to consensually resolve these matters. Stroock counsel billed an aggregate of $957.50 with respect to the May 11, 2001 conference call and an aggregate of $2,020.00 with respect to the May 18, 2001 conference call.

As the bankruptcy partner overseeing the Debtors' cases on a day to day basis for the Committee, Mr. Raskin was involved in the discussions and negotiations with the Debtors over these employee-related on substantive issues which reflected the first major disagreement between the Committee and the Debtors. Mr. Wintner's ERISA and employee-benefit and compensation expertise was essential. Both brought distinct expertise to the discussions which were not duplicative. Ms. Krieger who participated on both calls, and Ms. Keppler, a senior associate in the ERISA department who participated on the May 18, 2002 call, were most familiar with the specific issues and detail addressed by the Committee's Reconsideration Motion, rendered substantial services in connection with the preparation of the Reconsideration Motion which was the subject of the conference calls, and were the counsel responsible to prepare follow-up memoranda to the Committee describing in detail the substance of these discussions with Debtors' counsel and the terms and impact of all responsive compromise proposals made by the Debtors, and any responsive Court pleadings. Stroock submits that it was more cost-effective and efficient for Ms. Krieger and Ms. Keppler to attend and participate on these calls, rather than have Mr. Raskin and/or Mr. Wintner take the time and try to brief them on the discussions. Stroock submits that each of Stroock counsel's time should be fully compensable.

June 6, 2001 and June 27, 2001 Committee Conference Calls

Stroock counsel billed an aggregate of $1,286.50 for its services with respect to the June 6, 2001 Committee conference call, and an aggregate of $2380.00 for its services with respect to the June 27, 2001 Committee conference call.  On the June 6 Call, the Committee discussed the Debtors' compromise proposal in response to the Reconsideration Motion, the Debtors' request that members of the Committee and its advisors execute confidentiality agreements, and other pending matters. On the June 27 Call, the Committee addressed a number of pending matters, particularly the Debtors' proposal to acquire a specialty chemical company, the United States Trustee's appointment of an equity security holders' committee and its impact on these cases, and the recent filing by the asbestos committee of their joint motion seeking to prosecute fraudulent transfer claims on behalf of the Debtors' estates (the "Asbestos Committees Joint Motion"), the recently filed motion by certain former employees of Grace for immediate payment of amounts due them under pre-petition indemnification agreements with Grace (the "Former Employees Indemnification Motion"), among other matters.  Given the mix of fundamental bankruptcy law-related and fraudulent transfer litigation-related matters and issues and the importance of the fraudulent transfer litigation-related issues to the long range ultimate outcome of these cases, Stroock's representation of the Committee required that input from Mr. Kruger, Mr. Pasquale, and Mr. Raskin, for the reasons already stated in this Response.  Stroock submits that the presence of Ms. Krieger on these conference calls was also necessary and not duplicative of the services rendered by other Stroock counsel as she was at that time the Stroock counsel on the call most familiar with the proposed specialty chemical concern acquisition and Former Employee Indemnification Motion, and it was believed that in the long run it would be more efficient and cost effective for Ms. Krieger to attend and participate on these Committee conference calls, rather than have other Stroock counsel take the time and brief Ms. Krieger on the issues discussed and positions taken by the Committee.  Accordingly, we believe that all of the charges incurred by Messrs. Kruger, Pasquale and Raskin, and by Ms. Krieger, on these two conferences should be fully compensable.  With respect to the attendance on the June 6, 2001 Committee conference call of Ms. Taruschio, a junior bankruptcy associate, who prepares certain memoranda for the Committee, Stroock is prepared to voluntarily waive the charges incurred by Ms. Taruschio by her attendance on the call in the amount of $294.00, in the interest of keeping Stroock's fees to a reasonable minimum.

The Report has made the same inquiry with respect to three hearings during the period encompassed by the Application.  (Report at Exhibits A-8, 13 and 14).

July 19, 2001 Hearing

This hearing before Judge Farnan was attended by both Mr. Pasquale and Ms. Krieger, for which counsel billed an aggregate of $2,977.50 for 13.4 hours of time, including travel time.  The Court was scheduled to hear a mix of a number of asbestos claim and fraudulent conveyance litigation-related matters including, the Asbestos Committees Joint Motion to which the Committee had filed an objection, and the asbestos property damage committee's motion to continue the Debtors' bar date/case management motion, as well as the usual chapter 11 bankruptcy-related matters, including one which had been the subject of extensive negotiation between the Committee's bankruptcy counsel and the Debtors' bankruptcy counsel.  Accordingly, Stroock submits that the services

rendered by counsel from each of its litigation and bankruptcy areas were not duplicative, and that the entire amount billed should be compensable.

November 5, 2001 Hearings

The Committee was represented at the omnibus hearing before Judge Farnan on this date, and at the hearing, held this same day before Judge McKelvie on the Former Employees Indemnification Motion and the opposition thereto filed by the Committee, for which Mr. Pasquale and Mr. Raskin billed an aggregate of $6,412.50 to the estate for 16.5 hours of time, including non-working travel time. Judge Farnan was scheduled to hear argument on the Asbestos Committees Joint Motion including the Committee's opposition, and the Debtors Case Management/Bar Date motion along with other more usual chapter 11 matters. Judge McKelvie was scheduled to hear argument on the Indemnification Motion and the Committee's opposition thereto. The agendas for the omnibus hearing before Judge Farnan and the hearing before Judge McKelvie involved both asbestos-litigation related matters, as well as core bankruptcy matters. Stroock submits that the participation of counsel from each of the litigation and bankruptcy areas of the firm was not duplicative. Accordingly, Stroock submits the entire amount of the fees billed are compensable.

November 21, 2001 Hearing

This was the date scheduled for the evidentiary hearing with respect to the Debtors' contested Motion for Entry of Case Management Order, Establishment of a Bar Date, Approval of the Proof of Claim Forms and Approval of Notice Program, dated June 27, 2001. The Motion sought a case management order governing asbestos personal injury claims, asbestos property damage claims, Zonolite Attic Insulation claims, settles asbestos claims, non-asbestos claims – in other words, the Motion and the hearing scheduled for November 21 pertained to every major contested issue in these bankruptcy cases. The Motion itself, the opposition to it filed by the respective asbestos Committees, and the other pleadings filed in connection with motion were voluminous, constituting hundreds of pages in their totality. Depositions had been taken of certain expert witnesses leading up to that hearing, and other depositions had been noticed and were the subject of motion practice. It is not an understatement to describe this scheduled hearing as the most crucial hearing in these bankruptcy cases to that date.

The Committee was represented at this significant hearing by Mr. Kruger, Mr. Raskin and Mr. Pasquale, for which counsel billed an aggregate of $3,679.50 to the estate for 13.2 hours of time including travel time. Mr. Pasquale's presence was necessary not only because he had participated in the depositions leading up to the hearing, but also because the hearing was to require the presentation of testimony and the potential for cross-examination by the Committee's counsel. Mr. Kruger's and Mr. Raskin's respective participation was necessary to address the bar date, notice and other bankruptcy issues that were at issue.

As it turned out, upon arriving at Court for the hearing, counsel for all parties were advised that Judge Farnan had postponed the hearing because an order had just then been issued by the Third Circuit stating that five of the asbestos cases pending in the Circuit, including the Grace cases, would be transferred to a single district court judge for determination (ultimately, of course, Judge Wolin).

Stroock submits that its proper representation of the Committee at what was scheduled to be a very important evidentiary hearing, required the participation of counsel from each of the litigation and bankruptcy areas of the firm and accordingly, the entire amount should be compensable in its entirety.

October 29, 2001 Conference Call with the Court

Stroock was informed on October 29, 2001 that Judge McKelvie's chambers had scheduled a conference call hearing for that day with respect to the pending Former Employees Indemnification Motion, to which the Committee had filed an objection. Given the very short notice that we had and without knowing what the purpose of the conference call was, both Mr. Pasquale and Ms. Krieger participated on this call with Judge McKelvie's chambers to ensure appropriate Committee representation and follow-up, as might be necessary, for which counsel billed an aggregate of $492.50 to the estate, for 1.1 hours to time. Stroock submits that the entire amount of the fees should be compensable.

October 2, 2001 Committee Meeting

The purpose of this Creditors' Committee meeting was to interview Chambers Associates Incorporated ("Chambers") and to discuss the possibility of retaining that firm to serve as the Committee's asbestos claims expert and consultant. The significance of the asbestos litigation, and determinations with respect to the validity, magnitude and treatment of asbestos claims with differing levels of impairment to the ultimate resolution of these chapter 11 cases, is clear, and effects both the litigation and chapter 11 plan aspects of these cases. It was, therefore, important for Mr. Raskin and Mr. Pasquale to both be present and participate at this Creditors' Committee meeting. With respect to the presence and participation of Ms. Krieger, Ms. Krieger was responsible for communicating with members of the Committee who were unable to participate in the meeting, and for all follow-up required in connection with the Committee's retention. Stroock believed that in the long run it was more efficient and cost-effective for Ms. Krieger to attend and participate at the meeting rather than obtain a briefing from other Stroock counsel present. Stroock submits that the fees billed to the estate in the aggregate amount of $3,137.50, for 5.5 hours of time should be fully compensable.

October 1, 2001 Meeting and December 13, 2001 Conference Call

In connection with analyzing the value of the Debtors for long-range asbestos litigation  and plan strategy purposes, Mr. Raskin and Mr. Levy, a partner from Stroock's tax department, met with representatives of FTI Policano & Manzo, the Creditors' Committee's financial advisor, to review tax-related information obtained from the Debtors by that date, and to prepare a comprehensive follow-up information request. Stroock counsel sought additional basic information needed for such an evaluation, including the existence, and understanding of the Debtors' prior application, of their net operating loss carry forwards and other tax credits, is . The Report indicates that Stroock billed an aggregate of $2,912.50 to the estate for 5.0 hours of time.

The conference call with Debtors' tax and bankruptcy professionals on December 13, 2001 was one of several follow-up conference calls to discuss the tax-related materials and information

requested on behalf of the Creditors' Committee and obtained from the Debtors. The Report reflects that Stroock billed an aggregate of $1,082.50 to the estate for 2.1 hours of time of Mr. Levy and Ms. Krieger. Stroock submits that representatives of its bankruptcy and tax departments were both necessary to meet with FTI and understand the tax-related materials needed for the task to be undertaken, and then follow-up with Debtors' tax and bankruptcy professionals. Accordingly, Stroock submits that the full amount of the fees for these meetings and calls should be compensable.

November 19, 2001 Meeting

The largest known component of the non-asbestos unsecured creditor debt represented by the Creditors' Committee is held by JP Morgan Chase in its capacity as agent for those institutions which participated in the Debtors' two pre-petition $250.0 million revolving credit facilities. This relatively brief but comprehensive status and strategy meeting with counsel retained by JP Morgan Chase was attended by Messrs. Kruger, Raskin and Pasquale, for which Stroock billed fees to the estate in an aggregate amount of $2,107.50 for 3.8 hours of time. Stroock submits that each counsel brought a different knowledge base with respect to the extensive litigation and bankruptcy-related pleadings filed in these cases to date and differing insights on the strategy to be employed by the Creditors' Committee going forward. Accordingly, Stroock submits the full amount of the fees charged should be compensable.

December 3, 2001 and December 4, 2001 Conference Calls

The Report identifies four entries on December 3, 2001 reflecting fees billed to the estate in the aggregate amount of $1,085.00 one by each of Messrs. Kruger, Pasquale and Raskin, and one by Ms. Krieger, and two additional entries one each by Mr. Raskin and Mr. Pasquale on December 4, 2001 reflecting fees billed to the estate in the aggregate amount of $512.50. The reassignment of these chapter 11 cases to Judge Wolin and the request made by Judge Fitzgerald that the Debtors and counsel for the official committees provide the Court with a schedule identifying all pending matters and each party's view of which matters should be retained in the District Court and heard by Judge Wolin and which referred to Judge Fitzgerald, engendered multiple discussions during the first days following advice of the reassignment of these cases. With respect to the December 3, conference call, Stroock submits that it is not at all clear from the time entries that all counsel participated on the same call at the same time. But even if that were the case, Stroock submits that it was the most cost effective and efficient for the estate to have each of the counsel at Stroock principally involved in the Committee's representation to participate on what was a relatively short conference call to discuss these issues of great importance to these cases going forward.

December 20, 2001 Judge Wolin Status Conference

This lengthy status held by Judge Wolin at the District Court in Newark, New Jersey, was attended by Mr. Kruger, Mr. Pasquale and Ms. Krieger, for which Stroock billed an aggregate of $6,700.00 for 14.5 hours of time, including non-working travel time. The December 20 Status Conference was the first conference before Judge Wolin and it was expected that the matters addressed by Judge Wolin would be wide-ranging and would involve inherent chapter 11 bankruptcy-related matters, as well as the various litigation-related issues in these cases. The Court was also expected to provide

information with respect to administrative procedures to be utilized with the Court.  Given the breadth of the matters expected to be addressed by Judge Wolin, it was essential for both Mr. Kruger and Mr. Pasquale to be present to hear statements made by Judge Wolin and counsel for other parties in interest in the Grace cases, and to respond to the Court's questions on behalf of the Creditors' Committee.  Stroock submits that the presence of Ms. Krieger was also necessary and cost effective as she was, following Mr. Raskin's departure from the firm, the person responsible for overseeing these cases on a day to day basis, for having knowledge of the pleadings filed in the cases, and with informing the Creditors' Committee about the matters addressed at the Court's status conference. Accordingly, Stroock submits that the fees should be compensable in their entirety.

Response Exhibit 2

The Report comments that between April 16, 2001 and November 9, 2001, Stroock billed fees in the aggregate amount of $79,481.00, for 211.8 hours of time, with respect to matters where there were a number of different professionals rendering services to those matters, and inquires why so many professionals rendered services. (Report at paragraph 10).
Correspondence to Debtors' Counsel and
Motion for Reconsideration (B-1 and 2)

As already described, on or about the petition date, the Debtors sought broad grants of authority and approval with respect to all of their various employee benefit retention and compensation programs and with respect to existing contracts with their senior executives. A complete review and understanding of the relief sought by the Debtors and the impact that the relief sought, if granted, would have on the Debtors' estates, generally, and unsecured creditors specifically, because of the magnitude and priority of the payments sought to be made thereunder, necessitated a full understanding of each of the Debtors' employee benefit plans and programs, and senior executive's contracts. In addition to the expertise of Stroock's bankruptcy professionals, these issues necessitated the extensive, active participation of counsel from Stroock's ERISA area. Stroock, on behalf of the Committee, raised serious concerns with the factual and legal bases for the grants of relief sought in respect of the programs, requested and then obtained copies of the employee-related programs, plans and contracts, which needed to be reviewed and understood, and engaged the Debtors' bankruptcy counsel, as well as, in-house personnel knowledgeable in the employee-benefits area, in discussions and negotiations over these matters. When, despite exchanges of information and an on-going dialogue with Debtors' representatives, a negotiated resolution was not yet achievable, Stroock's bankruptcy and ERISA counsel worked together to prepare and file the comprehensive Reconsideration Motion already referred to in this Response. After the Reconsideration Motion was filed, and as a consequence of further discussions, a negotiated resolution was finally reached and the settlement memorialized in June 2001. As should be evident from the time detail, most of the actual drafting of the various memoranda, correspondence and the Reconsideration Motion was done by the two senior level associates from the bankruptcy and ERISA law departments; Ms. Krieger and Ms. Keppler, each of whom drafted portions of these writings and then combined them. Because of the fact and legal specific analyses involved, the multidisciplinary approach utilized here was essential. In an effort to keep the costs down to a reasonable minimum, Ms. Taruschio, the most junior associate on the Stroock team, conducted whatever research was needed, and drafted sections containing legal analysis. Given the importance of these issues to the Creditors' Committee, these written materials were reviewed and commented upon, as warranted, by Mr. Kruger and Mr. Raskin, but most of the partner level review, drafting and discussions with the Debtors and their advisors were conducted by Mr. Wintner. These issues involved many millions of dollars. Stroock submits that the multidisciplinary approach utilized here was essential and that the fees billed to the estates for these matters should be fully compensable.

Indemnification Motion (B-3)

The Report sets forth time entries relating to Stroock's preparation of an objection on behalf of the Creditors' Committee to the Former Employees Indemnification Motion referred to earlier in this Response. In order to keep the fees for this matter to a reasonable minimum, most of the legal research which needed to be done was conducted by Ms. Gomelskaya, then a legal intern with Stroock, with the rest conducted by Ms. Taruschio, who also drafted the response in opposition to the motion on behalf of the Creditors' Committee. All pleadings are reviewed and approved by a partner before being filed with the Court. In this instance, Mr. Raskin performed those services. Ms. Krieger's very limited involvement in this matter related to discussing the motion with Debtors' counsel and obtaining exhibits referred to but not annexed to the Motion, and discussing with Ms. Gomelskaya the research she was conducting. Other than reading the underlying motion, the time entry for Mr. Sasson does not reflect that he rendered any services on this matter. Stroock submits that the services were rendered effectively and efficiently and should be fully compensable.

Objection to the Motion to Retain Counsel (B-4)

The Report sets forth time entries relating to Stroock's preparation on behalf of the Committee of an objection to the motion filed jointly by the two asbestos committees seeking to retain special counsel to prosecute the fraudulent transfer litigation. As referred to earlier in this Response, the Asbestos Committees' Joint Motion sought to prosecute fraudulent transfer claims on behalf of the estates. The Creditors' Committee had previously filed an objection to that Motion and as of the timeframe of the time entries identified in the Report, the Court had not yet heard argument on the Asbestos Committees' Joint Motion. As reflected by the time entries identified, most of the drafting of the Committee objection on this matter was performed by Mr. Sasson, an associate in the litigation department, and reviewed and revised by Mr. Pasquale. The limited but necessary services rendered by Mr. Raskin and Ms. Krieger to this matter were in the nature of reviewing and providing comment to the draft objection from the bankruptcy law and chapter 11 case perspectives. Stroock submits that the services rendered by each of the professionals on this matter were not duplicative, but rather that such services were rendered effectively and efficiently and should be fully compensable.

Review of Warren Retention Application (B-5)

The Report sets forth time entries relating to Stroock's review of the supplemental application filed by the asbestos personal injury committee to retain Elizabeth Warren as a consultant, and Stroock's preparation of a memorandum to the Creditors' Committee discussing the same and sections of the Bankruptcy Code and Rules relevant to the Committee's consideration of the Warren retention application. As reflected by the time entries identified, most of the services on this matter were rendered by Ms. Krieger. Mr. Raskin and Mr. Pasquale reviewed the underlying supplemental application and engaged in different brief teleconferences on the matter. The time entry for Ms. Serrette which has been included is not related to this matter at all. Stroock submits that the full amount of the fees on this matter should be compensable.

ZAI Claimants Motion to Dismiss (B-6)

The Report sets forth time entries relating to Stroock's extensive review of (i) the motion to dismiss the entirety of the Debtors' chapter 11 cases (the "Dismissal Motion") filed by the zonolite attic insulation claimants, (ii) relevant Third Circuit and other circuit case law and (iii) relevant Grace historical and current asbestos-related and business related documentation, and to Stroock's preparation of an objection on behalf of the Creditors' Committee to the Dismissal Motion. The Dismissal Motion was predicated for the most part on bankruptcy law and the Debtors' asbestos liability, and consequently, preparation of the Creditors' Committee's objection required meaningful input and participation of counsel from each of its litigation and bankruptcy departments. The time entries identified reflect substantial participation by Mr. Sasson and Ms. Krieger in this matter, with Mr. Pasquale and Mr. Raskin providing limited, but necessary, partner level review and revision to the draft prepared. The services rendered by the other timekeepers identified, Ms. Serrette and Mr. DeFreitas, were deminimus in amount and primarily related to circulating the Dismissal Motion and obtaining other ZAI-related pleadings. Stroock submits that the services rendered in connection with this matter were rendered effectively and efficiently and the fees billed to the estates should be fully compensable.

Tax Memorandum (B-7)

The Report sets forth time entries relating to the preparation for the Creditors' Committee of a comprehensive memorandum discussing the substance and status of legislation pending in the United States Congress which would, if enacted, amend certain provisions of the Internal Revenue Code to provide some tax relief to companies with asbestos-related claims. As reflected by the time entries, Mr. Greenberg, a junior partner in the tax department, rendered most of the services in preparing the draft memorandum, with Ms. Brandes, a junior associate, conducting necessary research. Ms. Krieger billed limited services to this matter, relating to providing to tax counsel some background information and structure for the tax legislation memorandum, some comments to an earlier draft of the memorandum, and in preparing a memorandum to the Creditors' Committee introducing, among other matters, the tax memorandum. Mr. Levy and Mr. Raskin provided limited but necessary partner level review of the tax memorandum. Some of the time entries identified in this portion of the Report do not relate to the tax legislation memorandum, but rather to issues arising out of the terms of a consent decree the Debtors sought to enter into in connection with a settlement of litigation with the Environmental Protection Agency. The services rendered by Mr. Eichler, an associate in the tax department, and some of the identified services of Mr. Greenberg related to this matter. Stroock submits that the services with respect to these matters were rendered effectively and efficiently and should be fully compensable.