**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | |
| | § | Chapter 11 |
| W.R. GRACE & CO., et al | § | Jointly Administered |
| | § | Case No. 01-1139 (JKF) |
| Debtors | § | |

**AMENDED FEE AUDITOR'S FINAL REPORT REGARDING**
**INTERIM APPLICATION OF BILZIN SUMBERG DUNN**
**BAENA PRICE & AXELROD LLP FOR THE FIRST,**
**SECOND AND THIRD INTERIM PERIODS**

This is the amended final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Application of Bilzin Sumberg Dunn Baena Price & Axelrod LLP for the First, Second and Third Interim Periods (the "Application").

**BACKGROUND**

1.  Bilzin Sumberg Dunn Baena Price & Axelrod LLP ("Bilzin") was retained as Counsel to the Official Committee of Asbestos Property Damage Claimants. In the Application, Bilzin seeks approval of fees totaling $902,178.75 and expenses totaling $421,908.43 for its services from April 9, 2001 through December 31, 2001.

2.  In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application for compliance with the Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States

Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Bilzin an initial report based on our review, and received a response from Bilzin, portions of which are quoted herein. After filing our final report, we had further discussions with Jay Sakalo of Bilzin, which prompted the filing of this amended final report.

## DISCUSSION

### General Issues

3. In our initial report we noted that Bilzin professionals JZJ, JMS, RWT, SLB, MAM, RMS, RG, ASD, DWT, ADB, DTR, JAM, MMD, ALG, and JLH did not consistently provide adequate detail in their time entries.

4. We also noted that Bilzin professionals RWT, MIL, DWT, JCS, SMC, ELR, ASD, JOD, JMS, JAM, MMD, LR, and KSN consistently lumped their time entries. Thus, we asked Bilzin to please advise these professionals to provide adequate detail and to avoid lumping in their time entries in the future. Bilzin responded that it would.

5. We note that the vast majority of the expenses sought by Bilzen are for expert witness fees or litigation consulting, and we have no objection to those charges. However, in our initial report we noted that Bilzin did not provide adequate detail on the many of the expenses for which it seeks reimbursement. For example, travel expenses do not include in all instances the traveler's identity, the dates of travel, the itinerary for the travel, etc. Additionally, such expenses as Federal Express need appropriate detail so as to discern whether multiple packages with the same rate were mailed on any given day versus one package that was inadvertently entered into the billing system more than once. Thus we asked Bilzin to please provide greater detail for all expenses. Bilzin

provided backup for its expenses, and promised to provide more detail in the future, and thus we have no objection to these charges.

  6.  In our initial report we noted that Bilzin billed a substantial amount of fees for multiple research projects which were staffed by a large number of professionals. We also noted that a formal objection was filed by the U.S. Trustee's office regarding these fees, and that an agreement was reached so that Bilzin would reduce the fees sought in this case from the April 2001 to June 2001 billing period by a total of $41,371.00. Given the existence of such an agreement and the U.S. Trustee's objection on file, we will not duplicate the work by the U.S. Trustee by questioning in this initial report the time that was covered by that objection. Bilzen responded as follows:

> The Fee Auditor correctly notes that Bilzin and the United States Trustee entered into an agreement [stipulation] with respect to the United States Trustee's objection to Bilzin's First Quarterly Fee Application. Importantly, however, the agreement reached between Bilzin and the United States Trustee also encompassed an informal objection to Bilzin's Third Monthly Application for fees and expenses. The Fee Auditor states that the premise of the United States Trustee's objections was the number of professionals involved in research projects. Bilzin respectfully submits that the basis of the objections were far more expansive than the Fee Auditor's characterization, and thus, many of the questions raised in the Report are duplicative of the objections lodged formally and informally by the United States Trustee. However, in an attempt to fully respond to the Report, Bilzin nonetheless will address the specific issues raised in the Report.

We appreciate Bilzin's cooperation.

Specific Time and Expense Entries

  7.  In our initial report we noted that between April 19, 2001 and May 16, 2001, Bilzin billed 4.7 hours for a cost to the bankruptcy estate of $1,011.00 in fees for conflict checks. The time entries are provided below:

| Date | Initials | Hours | Amount | Description |
|---|---|---|---|---|
| 04/19/01 | LMF | 0.30 | 30.00 | Meeting with Cherri Ellison regarding list of creditors and conflict check. |
| 04/19/01 | JOD | 0.20 | 34.00 | . . .; telephone conference with E. Insulbach regarding conflict checks (.1); telephone conference with T. Currier regarding conflict checks (.1). |

| | | | |
|---|---|---|---|
| 05/02/01 KSN | 2.40 | 516.00 | Attention to retention documents for Bilzin, including conflict check (2.4). |
| 05/03/01 KSN | 1.20 | 258.00 | Continue reviewing conflict check regarding retention. |
| 05/16/01 MAM | 0.40 | 140.00 | Telephone conference with F. Rabinovitz regarding retention services and conflicts (.2); telephone conference with G. Bayer regarding CDG retention papers (.2). |
| 05/16/01 JZJ | 0.20 | 33.00 | Telephone conference with F. Rabinovitz regarding conflicts in scope of sues. (.2). |

Thus we asked Bilzin to please advise how this activity benefits the estate. Bilzin responded as follows:

> The time incurred to determine whether Bilzin had any conflicts in representing the Official Committee of Asbestos Property Damage Claimants (the "PD Committee") is beneficial to the estate due to the requirement that all retained professionals are disinterested pursuant to Bankruptcy Local Rule 2014. Thus, just as the time necessary to prepare Bilzin's retention applications is compensable, conducting the conflict check is a necessary component of preparing the application, and should likewise be compensable.

While we believe we understand the explanation regarding the retention process, we believe that clearing conflicts benefits Bilzin rather than the bankruptcy estate, and thus recommend a reduction of $1,011.00 in fees.

8.  In our initial report we noted that between April 20, 2001 and December 21, 2001, Bilzin billed 331.6 hours for a cost to the bankruptcy estate of $109,511.50 for multiple professionals to attend hearings, conference calls, and meetings. See Exhibit A. The Guidelines, Rule, II.D.5. states "...[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." Thus we asked Bilzin to please advise why it was necessary for multiple professionals to attend each of these meetings, hearings and/or conference calls. Bilzin's response is provided in Response Exhibit 1. We believe we understand the explanations for these occasions. However, in several instances the explanation does not establish why multiple professionals were necessary nor does it explain the nature of each participants unique role. Thus, we recommend the following corresponding reductions:

<u>A-1, A-2, A-3, and A- 4</u>:   We recognize that these meetings took place early in the proceedings and thus the attendance and participation of two or three attorneys can be understood.  However, the A- 1 meeting on 04/21/01 , was attended by 4 professionals.  The fourth attorney, RWT, did not attend any of the other three meetings.  Bilzen informed us that he was a litigator that addressed the TRO issues that were pending at the time. Bilzen admitted that his presence was necessary for only ½ the call, and thus we recommend a reduction of $245.00 in fees.

<u>A - 17 on 07/20/01</u>: There is no reason offered for the attendance of MAM at this meeting and thus we recommend a reduction of her fee, for a reduction of $350.00 in fees.

<u>A - 8 on 05/22/01</u>: We appreciate the information regarding this meeting and believe it adequately addresses our concerns.  However, RWT did not bill his travel time separately as required by Delaware Local Rules, Rule 2016-2(d)(viii) , which states [t]ravel time during which no work is performed shall be separately described and may be billed at no more than 50% of regular hourly rates." After further discussions with Mr. Sakalo, it was confirmed that 4 hours of RWT's travel time should have been billed at 50% of his hourly rate.  Thus we recommend a reduction for this travel time of $700.00 in fees.

9. In our initial report we noted that between September 2, 2001 and September 18, 2001, Bilzin billed 19.30 hours for a cost to the bankruptcy estate of $3,792.00 responding to the U.S. Trustee's objection.  *See* Exhibit "B".  Thus we asked Bilzin to please advise us as to why so many professionals were assigned to this task.  Bilzin responded as follows:

> The time entries incurred related to Bilzin's response to the United States Trustee's objections to Bilzin's fees.  A careful review of the time entries demonstrates that the timekeepers were the two attorneys, Messrs. Baena and Sakalo, responsible for filing a reply and two paraprofessionals, Mr. Guerra and Ms. Flores, who gathered the necessary backup for the response.  Given the amount of information necessary to respond, Bilzin submits that the matter was staffed appropriately.

We believe this information satisfies our concern, and thus we have no objection to these fees.

## CONCLUSION

10.	Thus, we recommend approval of fees totaling $858,501.75 ($902,178.75 minus $2,306.00, and also minus the $41,371.00 reduction that was subject to the agreement between Bilzen and the U.S. Trustee) and costs totaling $421,908.43 for Bilzen's services from April 9, 2001 through December 31, 2001.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
Warren H. Smith
State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on the 31st day of October, 2002.

_____
Warren H. Smith

# SERVICE LIST
Notice Parties

**The Applicant**

Scott L. Baena
Jay M. Sakalo
Bilzin, Sumberg, Dunn,
Baena, Price & Axelrod, L.L.P.
2500 First Union Financial Center
200 South Biscayne Blvd.
Miami, FL 33131-2336

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Matthew G. Zaleski, III, Esq.
Campbell & Levine
Chase Manhattan Centre, 15th Floor
1201 Market Street, Suite 1200
Wilmington, DE 19801


**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

EXHIBIT "A"
(Multiple Attendees)

*A-1:*

| | | | | |
|---|---|---|---|---|
| 04/20/01 | MAM | 1.50 | 525.00 | Prepare for PD committee call (.5); attend PD committee call (1.0). |
| 04/20/01 | SLB | 1.30 | 552.50 | Prepare for and participate with Committee conference call (1.3). |
| 04/20/01 | JMS | 1.30 | 292.50 | Telephone conference with creditors committee, Scott Baena, Mindy Mora (1.3). |
| 04/20/01 | RWT | 0.70 | 245.00 | Participate in conference call with committee (.7). |
| 04/20/01 | RWT | 0.70 | 245.00 | Participate in conference call with committee. (.7).[1] |

*Total: 5.50/$1,860.00*

*A-2:*

| | | | | |
|---|---|---|---|---|
| 04/23/01 | MAM | 0.80 | 280.00 | Attend PD Committee Meeting. |
| 04/23/01 | SLB | 1.00 | 425.00 | Telephone conference with Committee (1.0). |
| 04/23/01 | JMS | 0.80 | 180.00 | Conference call with creditors committee (.8). |

*Total: 2.6/$885.00*

*A-3:*

| | | | | |
|---|---|---|---|---|
| 04/26/01 | SLB | 0.80 | 340.00 | Telephone conference with Committee (.8). |
| 04/26/01 | JMS | 0.80 | 180.00 | Conference call with Committee (.8). |
| 04/26/01 | MAM | 0.80 | 280.00 | Attend committee meeting |

*Total: 2.4/$800.00*

*A-4:*

| | | | | |
|---|---|---|---|---|
| 05/02/01 | MAM | 1.40 | 490.00 | Attend committee conference call. |
| 05/02/01 | SLB | 1.50 | 637.50 | Telephonic meeting with Committee (1.5). |
| 05/02/01 | JMS | 1.40 | 315.00 | Committee conference call (1.4). |

*Total: 4.3/$1,442.50*

*A-5:*

| | | | | |
|---|---|---|---|---|
| 05/08/01 | SLB | 1.0 | 425.00 | . . .; Committee conference call (1.0). |
| 05/08/01 | JMS | 1.20 | 270.00 | . . .; committee conference call (1.2); . . . |

*Total: 2.2/$695.00*

---

[1] This time entry is located in the Litigation Consulting category, as this professional apparently split his time between two categories.

*A-6:*

| | | | | |
|---|---|---|---|---|
| 05/17/01 | JMS | 1.20 | 270.00 | Committee conference call (1.2); . . . |
| 05/17/01 | SLB | 0.80 | 340.00 | Committee meeting (.8); . . . |

*Total: 2.0/$610.00*

*A-7:*

| | | | | |
|---|---|---|---|---|
| 05/21/01 | SLB | 0.60 | 255.00 | Telephone conference with Committee (.6); . . . |
| 05/21/01 | JMS | 0.50 | 112.50 | . . .; committee conference call (.5); . . . |

*Total: 1.1/$367.50*

*A-8:*

| | | | | |
|---|---|---|---|---|
| 05/22/01 | SLB | 4.90 | 2,082.50 | Attention to obtaining various materials, etc. for Committee meeting including telephone call to L. LeClair concerning Abner litigation (1.9); travel to Dallas for meeting (work en route reviewing Committee materials for meeting) (3.0). |
| 05/22/01 | JMS | 3.20 | 360.00 | Travel to Dallas. [shown here at half-rate]. |
| 05/22/01 | JMS | 3.00 | 675.00 | Attention to and preparation for committee meeting (2.4); conference with R. Turken thereon (.6). |
| 05/22/01 | RWT | 6.50 | 2,275.00 | Prepare for committee meeting; travel to Dallas. |
| 05/23/01 | SLB | 10.50 | 4,462.50 | Conference with Committee professionals and meeting of Committee (7.5); return to Miami, working en route (3.0). |
| 05/23/01 | JMS | 6.50 | 1,462.50 | Committee meeting (6.5). |
| 05/23/01 | RWT | 11.50 | 4,025.00 | Attend committee meeting and travel home. |
| 05/23/01 | JMS | 3.20 | 360.00 | Travel to Miami. [shown here at half-rate]. |

*Total: 49.3/$17,286.50*

*A-9:*

| | | | | |
|---|---|---|---|---|
| 05/31/01 | SLB | 1.00 | 425.00 | Telephone conference with Committee (1.0). |
| 05/31/01 | JMS | 1.40 | 315.00 | Committee conference call (1.0); prepare therefor (.4). |

*Total: 2.4/$740.00*

*A-10:*

| | | | | |
|---|---|---|---|---|
| 05/02/01 | RMD | 4.50 | 1,687.50 | Traveled to Wilmington, Delaware and reviewed memoranda and case law regarding hearing on preliminary injunction. |
| 05/03/01 | RMD | 3.50 | 1,312.50 | Attended court hearing on motion for preliminary injunction and other issues. |
| 05/03/01 | MAM | 2.50 | 875.00 | Attend hearing on DIP financing and preliminary injunction. |

| | | | | |
|---|---|---|---|---|
| 05/03/01 | SLB | 2.50 | 1,062.50 | Court appearance on various motions (2.5). |
| 05/03/01 | SLB | 4.00 | 1,700.00 | Travel to Miami, work en route. |
| 05/03/01 | RMD | 4.20 | 1,575.00 | Travel from Wilmington, Delaware to Philadelphia and Miami and reviewed files. |

*Total:* 21.2/$8,212.50

<u>*A-11:*</u>

| | | | | |
|---|---|---|---|---|
| 06/05/01 | SLB | 0.80 | 340.00 | Telephone conference with Committee (.8). |
| 06/05/01 | JMS | 1.40 | 315.00 | Prepare for committee call (.4); committee call (1.0). |

*Total: 2.2/$655.00*

<u>*A-12:*</u>

| | | | | |
|---|---|---|---|---|
| 06/14/01 | SLB | 1.50 | 340.00 | Attend Committee meeting (1.5). |
| 06/14/01 | JMS | 2.20 | 495.00 | Prepare for committee call (.7); committee call (1.5). |

*Total: 3.7/$1,132.50*

<u>*A-13:*</u>

| | | | | |
|---|---|---|---|---|
| 06/25/01 | SLB | 3.50 | 1,487.50 | Travel to Atlanta for Committee dinner/meeting - work en route on issues to be discussed at meeting (3.5). |
| 06/25/01 | SLB | 0.30 | 127.50 | Interoffice conference with J. Sakalo regarding preparation for 6/26 meeting and agenda (.3). |
| 06/25/01 | JMS | 2.50 | 562.50 | Prepare for committee meeting (2.5). |
| 06/26/01 | SLB | 9.10 | 3,867.50 | Conference with M. Dies and D. Speights regarding meeting agenda (1.0); Committee meeting (Atlanta) (7.5); conference with M. Gries, J. Sakalo regarding follow-up on matters discussed at meeting (.6). |
| 06/26/01 | JMS | 3.00 | 675.00 | Conferences with committee members re multiple issues (3.0). |
| 06/26/01 | JMS | 8.10 | 1,822.50 | Committee meeting (7.5); conference with Scott Baena, M. Gries re: follow up (.6). |

*Total: 26.5/$8,542.50*

<u>*A-14:*</u>

| | | | | |
|---|---|---|---|---|
| 08/09/01 | JMS | 1.00 | 225.00 | Conference call (.7); prepare therefor (.3); . . . |
| 08/09/01 | SLB | 1.40 | 595.00 | Attend to Committee meeting agenda (.6); Committee meeting (.8). |

*Total: 2.4/$820.00*

<u>*A-15:*</u>

**AMENDED FEE AUDITOR'S FINAL REPORT** - Page 11
wrg fr re Amended Bilzin 1-3int 4-12.01.wpd

| | | | | |
|---|---|---|---|---|
| 07/05/01 | SLB | 1.00 | 425.00 | Committee meeting (1.0). |
| 07/05/01 | JMS | 1.30 | 292.50 | Committee call (1.0); prepare therefor (.3). |

*Total: 2.3/$717.50*

*A-16:*
3.5 hours for a cost to the bankruptcy estate of $1,087.50 participating in the same Committee call. Why were multiple attendees necessary? Guidelines Rule, II.D.5. ". . .[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."

| | | | | |
|---|---|---|---|---|
| 07/10/01 | SLB | 1.50 | 637.50 | Committee meeting (1.5). |
| 07/10/01 | JMS | 2.00 | 450.00 | . . .; prepare for committee call (.5); committee call (1.5). |

*A-17:*

| | | | | |
|---|---|---|---|---|
| 07/20/01 | MAM | 1.00 | 350.00 | Attend Committee Meeting conference call. |
| 07/20/01 | SLB | 1.00 | 425.00 | Committee meeting (1.0); . . . |
| 07/20/01 | JMS | 1.30 | 292.50 | Prepare for committee conference call (.3); committee conference call (1.0). |

*Total: 3.3/$1,067.50*

*A-18:*

| | | | | |
|---|---|---|---|---|
| 08/21/01 | SLB | 8.00 | 3,400.00 | Committee Meeting (8.0). |
| 08/21/01 | JMS | 7.00 | 1,575.00 | Attend Committee Meeting (7.0). |

*Total: 15/$4,975.00*

*A-19:*

| | | | | |
|---|---|---|---|---|
| 08/23/01 | SLB | 0.80 | 340.00 | . . .; preparation for meeting (.3); Committee meeting (.5). |
| 08/23/01 | JMS | 0.90 | 202.50 | Prepare for committee call (.4); committee conference call (.5). |

*Total: 1.7/$542.50*

*A-20:*

| | | | | |
|---|---|---|---|---|
| 08/30/01 | SLB | 0.50 | 212.50 | Committee Meeting (.5). |
| 08/30/01 | JMS | 0.70 | 157.50 | Prepare for committee call (.2); committee conference call (.5). |

*Total: 1.2/$370.00*

*A-21:*

| | | | | |
|---|---|---|---|---|
| 10/11/01 | SLB | 0.30 | 127.50 | Committee Meeting/call. |

| | | | | |
|---|---|---|---|---|
| 10/11/01 | JMS | 0.30 | 67.50 | Committee call. |

*Total: 0.6/$195.00*

<u>A-22:</u>

| | | | | |
|---|---|---|---|---|
| 11/08/01 | ASD | 1.80 | 405.00 | Attend committee meeting (already in progress). |
| 11/08/01 | SLB | 2.00 | 850.00 | Committee meeting (2.); . . . |
| 11/08/01 | JMS | 3.00 | 675.00 | Prepare for Committee call (1.0); committee call (2.0). |
| 11/08/01 | RWT | 2.00 | 750.00 | Attend committee meeting regarding hearing on case management motion. |

*Total: 9.8/$2,680.00*

<u>A-23:</u>

| | | | | |
|---|---|---|---|---|
| 11/15/01 | ASD | 1.00 | 225.00 | Attend committee meeting. |
| 11/15/01 | SLB | 1.00 | 425.00 | Committee Meeting (1.0). |
| 11/15/01 | JMS | 1.50 | 337.50 | Committee call (1.0); prepare therefor (.5). |
| 11/15/01 | RWT | 1.00 | 375.00 | Attend telephonic committee meeting. |

*Total: 4.5/$1,362.50*

<u>A-24:</u>

| | | | | |
|---|---|---|---|---|
| 11/29/01 | SLB | 0.50 | 212.50 | Committee meeting (.5). |
| 11/29/01 | JMS | 0.90 | 202.50 | Prepare for committee call (.4); committee call (.5). |

*Total:* 1.4/$415.00

<u>A-25:</u>

| | | | | |
|---|---|---|---|---|
| 11/16/01 | SLB | 11.70 | 4,972.50 | Preparation for and attendance at depositions of T. Hilsee and K. Kinsella (11.7). |
| 11/16/01 | JMS | 11.70 | 2,632.50 | Attend depositions of T. Hilsee and K. Kinsella (11.7). |
| 11/16/01 | SLB | 3.60 | 1,530.00 | Travel to and from Philadelphia for notification experts' depositions (3.6). |
| 11/16/01 | JMS | 5.00 | 1,125.00 | Travel to and from Philadelphia for expert's depositions (5.0). |

*Total: 32/$10,260.00*

<u>A-26:</u>

| | | | | |
|---|---|---|---|---|
| 11/19/01 | RWT | 6.50 | 2,437.50 | Work on preparation for hearing on case management motion. |
| 11/20/01 | ASD | 15.50 | 3,555.00 | Continue preparation for CMO hearing regarding positions and strategies. |
| 11/20/01 | SLB | 6.50 | 2,762.50 | Preparation for 11/21 hearing (6.5). |

| | | | | |
|---|---|---|---|---|
| 11/20/01 | JMS | 14.00 | 4,150.00 | Continue preparation for 11/21 hearing; work en route to Wilmington; meet with D. Hilton and F. Rabinovitz regarding preparation for hearing; strategy meetings with R. Turken, S. Baena, A. Danzeisen (14.0). |
| 11/20/01 | RWT | 10.50 | 3,937.50 | Prepare for hearing on case management motion and work on preparation for witness testimony. |
| 11/20/01 | ASD | 2.10 | 472.50 | Travel time to Delaware. |
| 11/21/01 | ASD | 5.10 | 1,147.50 | Continue preparation for CMO hearing regarding positions and strategies. |
| 11/21/01 | SLB | 2.50 | 1,062.50 | Conference with Hilton, Rabinovitz & Hilsee re: hearing testimony and preparation; conference with P. Lockwood re: hearing presentation; hearing in case management issues (2.5). |
| 11/21/01 | JMS | 8.80 | 1,980.00 | Continue preparation for hearing (3.5); travel back to Florida from Wilmington (5.3). |
| 11/21/01 | RWT | 4.00 | 1,500.00 | Prepare for hearing on case management motion and analyze implications of cancellation of same (4.0). |
| 11/21/01 | ASD | 5.30 | 1,192.50 | Travel time from Delaware to Miami. |
| 11/21/01 | SLB | 10.0 | 4,250.00 | Return to Miami. |
| 11/21/01 | RWT | 10.0 | 3,750.00 | Travel time to Miami. |

*Total: 100.8/$32,197.50*

*A-27:*

| | | | | |
|---|---|---|---|---|
| 12/06/01 | SLB | 0.30 | 127.50 | Committee meeting (.3); . . . |
| 12/06/01 | JMS | 0.30 | 67.50 | Committee conference call (.3). |

*Total: 0.6/$195.00*

*A-28:*

| | | | | |
|---|---|---|---|---|
| 12/27/01 | SLB | 1.50 | 637.50 | Preparation of meeting agenda (.9); committee meeting (.6). |
| 12/27/01 | JMS | 1.10 | 247.50 | Prepare for committee call and preparation of agenda (.5); committee call (.6). |

*Total: 2.60/$885.00*

*A-29:*

| | | | | |
|---|---|---|---|---|
| 12/19/01 | SLB | 2.50 | 1,062.50 | Travel to Newark (2.5). |
| 12/19/01 | JMS | 2.50 | 562.50 | Travel to Newark (2.5). |
| 12/19/01 | RWT | 2.50 | 937.50 | Travel to Newark (2.5). |

**AMENDED FEE AUDITOR'S FINAL REPORT** - Page 14
wrg fr re Amended Bilzin 1-3int 4-12.01.wpd

| Date | Atty | Hours | Amount | Description |
|---|---|---|---|---|
| 12/20/01 | SLB | 4.00 | 1,700.00 | Court appearance re: Case Management motion (4.0). |
| 12/20/01 | JMS | 4.00 | 900.00 | Attend hearing before Judge Wolin. |
| 12/20/01 | RWT | 5.00 | 1,875.00 | Final preparation for and attendance at status conference. |
| 12/21/01 | SLB | 2.50 | 1,062.50 | Return from Newark (2.5). |
| 12/21/01 | JMS | 2.50 | 562.50 | Return to Miami (2.5). |
| 12/21/01 | RWT | 2.50 | 937.50 | Travel from Newark (2.5). |

*Total: 28/$9,600.00*

Case 01-01139-AMC    Doc 2905    Filed 10/30/02    Page 16 of 20

# EXHIBIT "B"

| Date | Atty | Hours | Amount | Description |
|---|---|---|---|---|
| 09/02/01 | SLB | 0.70 | 297.50 | Begin preparation of response to U.S. Trustee objection (.7). |
| 09/08/01 | SLB | 1.70 | 722.50 | Research and commence drafting of response to UST's objection to interim application. |
| 09/10/01 | SLB | 0.60 | 255.00 | Letter to F. Perch re: objection to fee applications (.6). |
| 09/10/01 | LMF | 0.90 | 90.00 | Compile documents in preparation for response to UST's objection to Bilzin's fee applications (.9). |
| 09/10/01 | JMS | 0.50 | 112.50 | Prepare timeline in connection with response to US Trustee objector to fees (.5). |
| 09/11/01 | SLB | 0.20 | 85.00 | Revise letter to F. Perch re: objection to fee application (.2). |
| 09/11/01 | JMS | 1.30 | 292.50 | Prepare exhibits to response to U.S Trustee's objection to fee application (1.3). |
| 09/12/01 | ALG | 4.00 | 400.00 | Gather supporting backup in connection with response to US Trustee's objection to fee applications. |
| 09/12/01 | LMF | 0.90 | 90.00 | Research and compile information to provide documentation in response to UST's objection to Bilzin's fee application (.9). |
| 09/12/01 | JMS | 1.80 | 405.00 | Continue drafting exhibit to response to U.S. Trustee's objection (1.8). |
| 09/13/01 | ALG | 2.00 | 200.00 | Continue gathering supporting information for response to U.S. Trustee objection (2.). |
| 09/17/01 | ALG | 3.00 | 300.00 | Continue gathering supporting information for response to U.S. Trustee objection . |
| 09/17/01 | SLB | 1.50 | 637.50 | .....; interoffice conference with J. Sakalo re: procedures for scheduling and responding to UST fee objection and for payment of undisputed fees and expenses (.7);....... |
| 09/17/01 | JMS | 1.50 | 337.50 | .....; telephone conference with S. Baena, F. Perch regarding objection to fees (.2); conference with Scott Baena regarding procedures for response to UST objection and for payment of undisputed fees (.7);...... |
| 09/18/01 | SLB | 1.30 | 552.50 | ......; voice mail from F. Perch re: UST objection to fees (.1);........ |

**AMENDED FEE AUDITOR'S FINAL REPORT** - Page 16
wrg fr re Amended Bilzin 1-3int 4-12.01.wpd

Response Exhibit 1

Bilzin is especially careful to avoid unnecessary duplication of effort in every aspect of its representation of the PD Committee, including attendance at meetings, hearings, depositions and on conference calls. However, as the Court noted during the August 26, 2002 fee hearing, there are certainly instances where it is necessary to have multiple professionals in attendance. Set forth below by category – meetings/conference calls, hearings and depositions – is Bilzin's response to Paragraph 9 and Exhibit "A" to the Report.

A.   Meetings/Conference Calls[2]

1.   A-1, A-2, A-3, and A-4

These were the initial telephonic conference calls during which the entire PD Committee was in attendance. In addition, early in this case, the composition of the PD Committee was materially changed by the United States Trustee. The topics covered in these calls were very broad in scope, including: (i) introductions of committee members; (ii) introductions of the "team" of Bilzin lawyers that would be involved in the case; (iii) discussion/analysis of the multitude of "first-day" papers filed by the Debtors; and (iv) the development of an initial strategic action plan.

It was critically important to have multiple Bilzin professionals on these calls, as each professional had numerous responsibilities and tasks to accomplish early on in this case. By way of example, the Debtors filed six binders worth of first-day papers in this case, numbering over 60 pleadings. The enormous effort required to review, analyze and provide executive summaries, advice and recommendations to the PD Committee in an extremely expedited time frame had to be split amongst multiple professionals. The professionals on these calls each had responsibility for a number of these pleadings, and therefore, their participation was required.

2.   A-5, A-6, A-7, A-9, A-11, A-12, A-14, A-15, A-16, A-17, A-18, A-19, A-20, A-21, A-24, A-27, A-28

Each entry is for a committee meeting held by teleconference attended by Scott L. Baena and Jay M. Sakalo. As the Fee Auditor is aware, Mr. Baena and Mr. Sakalo have had the primary responsibility for all aspects of this case from day one. Bearing in mind that Bilzin must maintain client confidences, and therefore, cannot divulge specifics of what was discussed on these calls, each call included a discussion of all then-pending matters. As necessary, either Mr. Baena or Mr. Sakalo led the discussion of the particular matter. In all instances, Mr. Baena was responsible for leading the discussion of pending and contemplated strategic actions, and communicating counsel's recommendations on items which required approval or direction from the PD Committee. Mr. Sakalo was responsible for taking minutes and notes of these meetings. In addition, oftentimes during these meetings, requests for documents or other papers were made

---

[2]   See response to Paragraph 6 above. Many of these meetings/conferences were addressed by the objections of the United States Trustee and are subject of the Stipulation between Bilzin and the United States Trustee.

by committee members. Mr. Sakalo directs the paraprofessionals assigned to this case who are responsible for document management. Thus, his attendance was necessary for this reason as well. Moreover, as each of our lawyers have other client responsibilities, we deem it prudent to ensure that two lawyers are fully involved and informed in a matter. Judiciously, we paired a Senior Partner and a mid-level associate in this case.

3.   A-8

This was the first in-person meeting of the PD Committee. The meeting was held in Dallas, Texas to accommodate the geographic location of the various members of the PD Committee and the PD Committee's professionals. The meeting was attended by Messrs. Baena, Sakalo and Turken. Again, bearing in mind the necessity to maintain client confidences, Mr. Baena was responsible for conducting the meeting, advising the PD Committee of the current status of the Debtors' first-day papers, providing a primer on bankruptcy and introducing the professionals to the members of the PD Committee and explaining the intended scope of their involvement in this case. Mr. Sakalo was responsible for presentation of by-laws to govern the PD Committee, as well as for taking the minutes of the meeting. Mr. Turken was principally involved in representing the PD Committee's position with respect to the Debtors' adversary complaint for a preliminary injunction. Thus, Mr. Turken's attendance at the meeting was necessary to discuss the ramifications of the temporary restraining order obtained on the first day of the case and the subsequently granted preliminary injunction. In addition, counsel advised the PD Committee on a multitude of then-pending and contemplated strategic actions.

4.   A-13

This was an in-person meeting of the PD Committee to discuss the Debtors' case management motion (the "PD CMO") generally, and specifically, the treatment of property damage claims. As explained in great detail in our response to the Fee Auditor's initial report to Bilzin's Fourth Interim Application, the PD CMO was a critical and contentious issue in this case. The PD CMO contained proposals that amounted to never before-seen hurdles for claimants. Consequently, Bilzin, in order to fulfill its professional responsibility to its client, appropriately staffed all matters related to the PD CMO. It is worth noting that with the exception of a couple of instances noted in this response, all aspects of the PD CMO were handled by Messrs. Baena and Sakalo.

Prior to the meeting, Mr. Baena was responsible for developing a preliminary response to the PD CMO. In connection with the preparation of this response, Mr. Sakalo was responsible for the preliminary analysis of the Debtors' proposed notice program with respect to property damage claims. The fruitful results achieved at this meeting are evident by the substantial responses and objections filed by Bilzin on behalf of the PD Committee.

5.   A-22, A-23

These two telephonic committee meetings were conducted during the two weeks prior to the then-scheduled hearing on the PD CMO. The meetings included Messrs. Baena, Turken and Sakalo, and Ms. Allyn Danzeisen. Each of the calls covered at length the PD Committee's

position with respect to each issue engendered by the PD CMO, including the approval of an unprecedented property damage proof of claim form, an accelerated property damage bar date and a complicated notice program.  Due to the numerous issues contained in the PD CMO, it was necessary for Bilzin to assign responsibility for discreet issues to multiple attorneys.  The roles of Messrs. Baena and Sakalo have already been described.  Mr. Turken was responsible for advising the PD Committee on the procedural aspects of the PD CMO, including the attempted use of Rule 42 Common issue trials, the appointment of special litigation committees, and the apparent attempt to vitiate pre-petition certified class actions by requiring individual proofs of claim.  Ms. Danzeisen was responsible for analyzing and developing a survey of state law issues that the Debtors were attempting to run roughshod over, including individualized statutes of limitation and the various standards applied to determine when the applicable statute of limitations begins to run.  Due to the importance of each of these issues, and the time pressures associated with responding to each of the Debtors' proposals, it was necessary for Bilzin to assign these responsibilities in the manner that they did.  It was also necessary to have each of the attorneys available to provide a report to the PD Committee and to answer the specific, detailed question raised by the members of the PD Committee.

B.     Hearings

1.     A-10

This hearing was the first hearing since the appointment of the PD Committee and the selection of Bilzin as counsel to the PD Committee.  The matters on the agenda for the hearing required the experience and participation of all three attendees.  As discussed above in part A.1., the Debtors filed over 60 first-day papers.  This hearing was the final hearing on many of these.  Mr. Baena was responsible for arguing the PD Committee's position on a majority of these.  However, given the nature of two of the first-day papers – the temporary restraining order/preliminary injunction and the debtor in possession financing agreements – it was necessary to have additional attorneys available who could focus solely on those matters.

This hearing was attended by Mr. Baena, Mr. Richard Dunn and Ms. Mindy Mora.  Mr. Dunn, the head of Bilzin's litigation department, had co-responsibility with Mr. Baena for preparation and argument of the PD Committee's objection to the Debtors' adversary complaint for a preliminary injunction.  Ms. Mora, a senior partner in Bilzin's insolvency department was responsible for arguing the PD Committee's objection to the Debtors' proposed final debtor in possession financing agreement.

2.     A-26

The time billed from November 19, 2001 through November 21, 2001, was incurred in connection with the then-scheduled full-day hearing on the PD CMO.  As explained above in part A.5., responsibility for the PD Committee's response to the PD CMO was split amongst Messrs. Baena, Turken and Sakalo, and Ms. Danzeisen.  The need to have all four attorneys in Wilmington, Delaware for the hearing cannot be overstated.  The expected contours of the hearing included the PD Committee presenting at least two witnesses to testify with respect to the PD Committee's positions and to rebut the Debtors' positions.  One witness was intended to

testify with respect to the proposed bar date and proof of claim form. The other witness was intended to testify about the process of estimating property damage liabilities. The logistics alone required Bilzin to transport a dozen banker's boxes of documents to have available at the hearing. Bilzin needed to have the resources in the courtroom to respond to the plethora of arguments likely to be raised by the Debtors.

3. A-29

This meeting was set by Judge Wolin subsequent to the reassignment of the case to Judge Fitzgerald. Judge Wolin scheduled consecutive meetings in all five of the reassigned asbestos cases that day. It was necessary to have Messrs. Baena, Turken and Sakalo at the meetings. Mr. Baena's attendance, as the head of the insolvency department was necessary to cover each of the bankruptcy issues raised. Mr. Turken, a senior litigation partner, was also needed to address the substantive litigation issues that were likely (and indeed, were) to be addressed. Mr. Sakalo's attendance was necessary as he attended the meeting in this case and all four of the other cases to monitor the discussion concerning asbestos claims in those cases.[3] Bilzin appropriately staffed the meeting of the other four cases with a lower rate attorney. As there was no transcript of any of these meetings, attendance in person was necessary in order for the PD Committee to be fully apprized of the discussion of asbestos claims.

C. Depositions

1. A-25

In connection with the PD CMO, the PD Committee sought to depose the Debtors' notice expert, Katherine Kinsella. The Debtors also sought to depose the PD Committee's notice expert, Todd Hilsee. These depositions took place the week prior to the then-scheduled hearing on the PD CMO. Mr. Sakalo was principally responsible for analyzing the Debtors' proposed notice program from a legal perspective and working with Mr. Hilsee to determine the effectiveness of the proposed program. Just prior to the deposition, in response to the PD Committee's objection to the proposed notice program and Mr. Hilsee's supporting affidavit, the Debtors filed a 150 page revised proposed notice program and supporting affidavit from Ms. Kinsella, Mr. Sakalo was also responsible for analyzing the revised program. Given the critical importance in these cases of the notice program and its relation to the CMO, it was necessary to have a senior partner depose Ms. Kinsella and to have Mr. Sakalo – the person with the technical knowledge of the proposed program and most familiarity with the original and revised programs – assist in the deposition.

---

[3] Please note that all time incurred in attending these meetings was split ratably between this case and the U.S. Gypsum case, in which Bilzin is counsel to the property damage committee.

**AMENDED FEE AUDITOR'S FINAL REPORT** - Page 20
wrg fr re Amended Bilzin 1-3int 4-12.01.wpd