**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF FERRY, JOSEPH & PEARCE, P.A.**
<u>**FOR THE FIFTH INTERIM PERIOD**</u>

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Interim Fee Application of Ferry, Joseph & Pearce, P.A. for the Fifth Interim Period</u>.

**BACKGROUND**

1.  Ferry, Joseph & Pearce, P.A.("Ferry Joseph") was retained as counsel to the official committee of asbestos property damage claimants. In the Application, Ferry Joseph seeks approval of fees totaling $26,113.00 and costs totaling $10,994.77 for its services from April 1, 2002, through June 30, 2002.

2.  In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30,

1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Ferry Joseph an initial report based on our review, and received a response from Ferry Joseph, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3. We noted in our initial report that timekeepers TJT and LLC often did not include sufficient detail in their time entries. Rule 2016-2(d) of the Delaware Local Rules states "activity descriptions . . . shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary . . ." This issue was raised in previous reports and we have advised certain professionals to provide more detailed time entries in the future. We again asked Ferry Joseph to continue to advise its professionals regarding this matter and Ferry Joseph responded that it would do so.

4. We noted for the months of April and May, that Ferry Joseph devoted an entire project category to Fraudulent Transfer Litigation totaling 42.4 hours and a total expense to the estate of $8,123.50. On July 10, 2002 Judge Wolin entered an Order dealing with the Sealed Air fraudulent transfer litigation fees in which he withdrew his reference of that matter from the bankruptcy court requiring District Court approval for all fees involved in said litigation matters. We asked Ferry Joseph to please explain why this Order is not applicable to the Fraudulent Transfer Litigation fees provided for in this Application. Ferry Joseph responded that:

> The Fraudulent Transfer Litigation category was left in this application because the

>fee applications for April and May were filed prior to Judge Wolin entering the order withdrawing the reference. Furthermore, this application was filed prior to our receiving notification from your office to lump the fraudulent transfer time entries up to and including May 31, 2002 in the Litigation and Litigation Consulting category. We have revised those time entries and the new totals are reflected in the attached Revised Cumulative Compensation.

Thus we have no objection to these fees.

## Specific Time and Expense Entries

5.    We noted in our initial report that in the months of April and May there are time entries for non-working travel time totaling 7.60 hours and $1,520.00 in fees. The time entries are provided below.

| | | | |
|---|---|---|---|
| 05/22/02 | TJT | Non-Working Travel Time - Travel to Newark, NJ | 2.00 |
| 05/22/02 | TJT | Non-Working Travel Time - Travel to Wilmington, DE | 2.00 |
| 04/15/02 | TJT | Non-Working Travel Time - Travel to Newark | 1.80 |
| 04/15/02 | TJT | Non-Working Travel Time - Travel from Newark | 1.80 |

Local Rule 2016-2(d)(viii) provides that "[t]ravel time during which no work is performed shall be separately described and may be billed at no more than 50% of regular hourly rates." We noted that the Application summary provides that professional TJT's non-working travel time of 5.80 hours is billed at 50%. However, the amount of time described as non-working travel time in the individual entries as well as the summary category for non-working travel time totals 7.60 hours. We further noted that footnote 2 of the Application states that "[p]ursuant to Local Rule 2016 applicant has reduced its total compensation amount by $580.00 representing 50% of the total amount of travel time billed at its normal hourly rate." However, the total fees for non-working travel time was $1,520.00, 50% of which is $760.00. We requested that Ferry Joseph please explain how this miscalculation will be addressed. Ferry Joseph responded as follows:

>The disparity in the totals for the category Non-Working Travel Time was a result

> of one of the time entries being mistakenly categorized. The fee entry: 4/15/02 TJT Non-Working Travel Time - Travel to Newark 1.80 should have been listed under the Hearings category. While traveling to a status conference with Judge Wolin that day, I prepared for the conference by reviewing the numerous pleadings at issue. This error has been corrected and is likewise reflected in the attached Revised Cumulative Compensation Summary by Project Category.

We accept this response and thus we have no objection to these fees.

6.    We noted during the Application period that on three different occasions professionals RSM and TJT prepared for and attended the same meeting for a total of 3.5 hours and a total expense to the estate of $657.50. The time entries are provided below.

\*    April 16, 2002, RSM & TJT, 1.70 hours and $320.00
4/16/02        RSM    Mtgs of Creditors (Committee Meetings) - Attend Committee Teleconference                                                                                0.80
4/16/02        TJT    Mtgs of Creditors (Committee Meetings) - Teleconference with Committee                                                                                0.90
\*    April 25, 2002, RSM & TJT, .80 hours andd $150.00
4/25/02        RSM    Mtgs of Creditors (Committee Meetingss) - Attend Committee Teleconference                                                        0.40
4/25/02        TJT    Mtgs of Creditors (Committee Meetings) - Teleconference with Committee                                                                                0.40
\*    June 6, 2002, RSM & TJT, 1.00 hours and $375.00
06/06/02        RSM    Committee, Creditors', Noteholders' or Equity holders' - Attend Committee teleconference                                                        0.50
06/06/02        TJT    Committee, Creditors', Noteholders' or Equity holders' - Teleconference with Committee                                                        0.50

According to Local Rule 2016-2(d)(ix), "[t]he activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role." The matter of multiple professionals is also addressed in the Guidelines Paragraph II.D.5.: "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." We advised that the fee detail does not provide the reason for multiple professionals at these meetings nor does it explain

each professional's role. We requested that Ferry Joseph please explain the need for multiple professionals at the meetings listed. Ferry Joseph responded that:

> Due to the complex nature of this case it is necessary for both of us to attend the meetings for scheduling purposes as tasks are sometimes assigned during the meetings and to report to the committee regarding various tasks that either of us may have completed. It is imperative for us both to stay current and be knowledgeable of the multiple issues affecting the PD Committee in order to represent them properly. It is also necessary so that we are both prepared in the event that one of us isn't available then the other will be capable to fill in without jeopardizing the interests of the client. The meetings at issue here are regularly scheduled teleconferences with the PD Committee, which have been arranged and are held at their request.

Thus we have no objection to these fees.

7. We noted that during the Application period professional TJT spent a total of 1.5 hours for a total expense to the estate of $300.00 on tasks that appear to be ministerial or inappropriate for a professional of that level. (See Exhibit A). We requested Ferry Joseph explain why this professional performed these seemingly ministerial tasks at the full hourly rate. Ferry Joseph's response is provided at Response Exhibit 1. We appreciate this explanation, but we still believe that these tasks should have been performed by a paraprofessional at a lower billing rate, or a secretary, and therefore we recommend a reduction of 1/3 of these fees, for a reduction of $100.00 in fees.

8. We noted in our initial report that in the Application there are apparent duplicate entries resulting in 1.50 additional hours and an additional expense to the estate of $300.00. (See Exhibit B). While we recognized the possibility that these entries may reflect the performance of the same nominal activity more than once on the same day, we requested that Ferry Joseph please explain whether these entries related to discrete instances of a repeated activity or were duplicate billing of the same time. Ferry Joseph responded that in fact these entries were separate instances

of a repeated activity. Thus we have no objection to these fees.

## CONCLUSION

9. Thus we recommend approval of fees totaling $26,013.00 ($26,113.00 minus $100.00) and costs totaling $10,994.77 for Ferry Joseph's services from April 1, 2002, through June 30, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
Warren H. Smith
State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 31st day of October, 2002.

_____
Warren H. Smith

## SERVICE LIST

Notice Parties

### The Applicant

Michael B. Joseph, Esq.
Theodore J. Tacconelli, Esq.
Rick S. Miller, Esq.
Ferry, Joseph & Pearce, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, De 19899

### The Debtors

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

### Counsel for the Debtors

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

### Counsel for the Official Committee of Unsecured Creditors

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

### Counsel to the Official Committee of Property Damage Claimants

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

# EXHIBIT A

| Date | Initials | Description | Hours |
|---|---|---|---|
| 5/5/02 | TJT | Case Administration - File Administration re: pleadings | 0.10 |
| 5/6/02 | TJT | Case Administration - Teleconference with J&J Court Transcribers re: 4/22/02 hearing transcript | 0.10 |
| 5/20/02 | TJT | Case Administration - Request hearing transcript re: 5/20/02 hearing | 0.10 |
| 05/24/02 | TJT | Case Administration - Teleconference with court transcribers re: 4/20/02 hearing transcript | 0.20 |
| 05/24/02 | TJT | Case Administration - Teleconference with transcriber re: 5/22/02 hearing transcript | 0.10 |
| 05/18/02 | TJT | Litigation/Fraudulent conveyance - File Administration re: pleading/correspondence | 0.30 |
| 06/24/02 | TJT | Case Administration - Order transcript of 6/18/02 hearing | 0.10 |
| 06/27/02 | TJT | Case Administration - Telephone call to Bankruptcy Court Clerk re: 6/18/02 hearing transcript | 0.10 |
| 06/07/02 | TJT | Litigation and Litigation Consulting - Serve copy of Motion to Retain Special Counsel on D. Bernick by fax | 0.10 |
| 06/08/02 | TJT | Litigation and Litigation Consulting - File Administration | 0.30 |

EXHIBIT B

05/13/02 TJT  Litigation /Fraudulent Conveyance - Teleconference with A King re: exhibits to Motion to Compel                                    0.10
05/13/02 TJT  Litigation /Fraudulent Conveyance - Teleconference with A King re: exhibits to Motion to Compel                                    0.10

05/13/02 TJT  Litigation /Fraudulent Conveyance - Teleconference with R. Fleishman re: Motion to Compel Production of Documents from W.R. Grace          0.10
05/13/02 TJT  Litigation /Fraudulent Conveyance - Teleconference with R. Fleishman re: Motion to Compel Production of Documents from W.R. Grace          0.10

05/17/02 TJT  Litigation /Fraudulent Conveyance - Teleconference with R. Fleishman re: Motion to Compel                                    0.10
05/17/02 TJT  Litigation /Fraudulent Conveyance - Teleconference with R. Fleishman re: Motion to Compel                                    0.10
05/17/02 TJT  Litigation /Fraudulent Conveyance - Teleconference with R. Fleishman re: Motion to Compel                                    0.10

05/17/02 TJT  Litigation/Fraudulent Conveyance - Telephone call to D. Carickhoff re: Motion to Compel                                    0.10
05/17/02 TJT  Litigation/Fraudulent Conveyance - Telephone call to D. Carickhoff re: Motion to Compel                                    0.10

05/06/02 TJT  Litigation (Non-bankruptcy/General) - Teleconference with J. Sakalo re: Appeal of Bar Date Order                                    0.10
05/06/02 TJT  Litigation (Non-bankruptcy/General) - Teleconference with J. Sakalo re: Appeal of Bar Date Order                                    0.10

04/04/02     TJT    Litigation/Fraudulent Conveyance - Review and revise Request for Production of Documents to Sealed Air Corp.          0.50
04/04/02     TJT    Litigation/Fraudulent Conveyance - Review and revise Request for Production of Documents to Sealed Air Corp.          0.50

04/04/02     TJT    Litigation/Fraudulent Conveyance - Prepare Notice of Service of Request for Production of Documents to Cryovac for e-filing     0.10
04/04/02     TJT    Litigation/Fraudulent Conveyance - Prepare Notice of Service of Request for Production of Documents to Cryovac for e-filing     0.10

04/05/02     TJT    Litigation/Fraudulent Conveyance - Telephone call to M. Widom re: subpoena                                    0.10
04/05/02     TJT    Litigation/Fraudulent Conveyance - Teleconference with M. Widom re: subpoena                                    0.10

| | | | |
|---|---|---|---|
| 04/08/02 | TJT | Litigation/Fraudulent Conveyance - Telephone call to M. Widom re: subpoena | 0.10 |
| 04/08/02 | TJT | Litigation/Fraudulent Conveyance - Teleconference with M. Widom re: subpoena | 0.10 |
| 04/22/02 | TJT | Litigation/Fraudulent Conveyance - Telephone call to M. Widom re: witness designations | 0.10 |
| 04/22/02 | TJT | Litigation/Fraudulent Conveyance - Teleconference with M. Widom re: witness designations | 0.10 |
| 06/21/02 | TJT | Litigation and Litigation Consulting - Teleconference with J. Sakalo re: Motion for Clarification | 0.10 |
| 06/21/02 | TJT | Litigation and Litigation Consulting - Teleconference with J. Sakalo re: Motion for Clarification | 0.10 |

**FEE AUDITOR'S FINAL REPORT** - Page 11
wrg FR Ferry 5Q 4-6.02.wpd

RESPONSE EXHIBIT 1

Normally, I would not perform "ministerial" tasks. The items listed on Exhibit A appear to be ministerial in nature, but under the circumstances it was necessary for me to perform these tasks for the following reasons:

5/5/02 - This case was commenced on April 2, 2001.  The papers/pleadings filed in this case, (including all of the first day papers/pleadings) had accumulated by this date and it was necessary for me to set up the initial pleading files to make sure that the papers/pleadings were in proper order.

5/6/02 - Even though the 4/22/02 hearing was held in Pittsburgh, it was still my responsibility to obtain the hearing transcript for this hearing.  Since J&J Court Transcribers is the official transcriber for the Bankruptcy Court for the Western District of Pennsylvania, and since I was not present at the hearing, I contacted them to determine exactly what was needed to obtain a transcript of the 4/22/02 hearing.  Thus, it was necessary for me to contact them and obtain the necessary information so that no delay occurred in obtaining this transcript.

5/20/02 - Since the PD Committee needed the transcript of the 5/20/02 hearing on an expedited basis (see page 23 of the transcript) I received an order form directly from the courtroom clerk immediately after the hearing and completed the order form to ensure that the form was completed properly and that we obtained this transcript without delay.  The order process was new so I wanted to make sure that the form was completed properly so that the transcript could be reviewed to prepare for the upcoming issues facing the ZAI claims.  In fact, it was necessary for me to prepare an attachment to the order form to request a part of the transcript involving ZAI on an expedited basis.

5/24/02 - First, this time entry contained a typographical error in that this first teleconference concerned the 5/20/02 hearing transcript, not the 4/20/02 hearing transcript.  Due to the importance of the issues concerning the ZAI claims that were discussed at the 5/20/02 hearing, I was requested by co-counsel to "inquire" as to when we would receive the transcript and whether we could receive it by e-mail.  I contacted the bankruptcy court clerk and was provided with the number of the transcriber.  The estate was not billed for my call to the bankruptcy court clerk.  I then contacted the transcriber and was advised that I would receive a call back as to when the transcript would be ready and whether it could be sent to me by e-mail.  I then received a voice mail message from the transcriber and was advised that the partial transcript may be ready this day and that it could also be e-mailed to me.  The estate was not charged for my retrieval of this voice mail message.

5/24/02 - I received a voice mail from the transcriber regarding questions about certain words that were used during the hearing since she was not familiar with the bankruptcy case.  The estate was not charged for my retrieval of this voice mail message.  I then called the transcriber and answered her questions about certain words used during the hearing and was told that I would receive the requested portion of the transcript by e-mail shortly. After I received and reviewed the transcript, I noticed certain errors in the transcript and then called the transcriber back to correct the

errors. The estate was not charged for my second call to the transcriber.

      5/18/02 - I was responsible for filing and service of the Fraudulent Transfer Complaints. They were filed on this date. After filing and service was completed, I then directed the set up of the initial pleading files to make sure that the future pleadings were filed correctly. Also, due to the nature and importance of these adversary proceedings, it was necessary for me to create a special file for this part of the bankruptcy case.

      6/24/02 - Due to the fact that the Bankruptcy Court transcript Order forms had changed (this was a relatively new process- the court previously used live court reporters), and since we were responsible for obtaining the hearing transcripts for the PD Committee, I completed the transcript order form to obtain the 6/18/02 hearing transcript to ensure that it was ordered properly.

      6/27/02 - I was requested by co-counsel to expedite the request for the 6/18/02 hearing transcript, so I called the bankruptcy court clerk to request that the order now be expedited. I also had to call a second time on 6/28/02, but the estate was not charged for this phone call.

      6/7/02 - This was the day that the Official Committee of Asbestos Property Damage Claimants filed the Response and Motion Pursuant To § 503 of the Bankruptcy Code To Retain Special Counsel For The Purpose Of Defending Objections To Zonolite Attic Insulation Proofs of Claim. This motion was very important and would impact the bankruptcy case as a whole. Due to the importance of the motion, late in the day we were requested by our co-counsel to also send a copy to David Bernick (the debtor's lead litigation counsel) by facsimile in addition to regular service by mail. By the time the motion was filed and regular service was completed, no one was left in our office to send the fax copy to Mr. Bernick, so I made sure that he received a copy sending it to him by fax since I was still present.

      6/8/02 - Since I was responsible for filing and service of the Response and Motion Pursuant To § 503 of the Bankruptcy Code To Retain Special Counsel For The Purpose Of Defending Objections To Zonolite Attic Insulation Proofs of Claim, and due to the many affidavits and exhibits that were sent to our office regarding the motion, the next day it was necessary for me to sort those documents and set up a special sub-file for this motion. This activity was necessary to enable us to locate certain documents quickly and to ensure that later papers associated with the motion were filed correctly so that they could be reviewed promptly if necessary.