**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF STEPTOE & JOHNSON, LLP**
**FOR THE FIFTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Fee Application of Steptoe & Johnson, LLP for the Fifth Interim Period.

**BACKGROUND**

1. Steptoe & Johnson, LLP ("Steptoe") was retained as special tax counsel to the Debtors. In the Application, Steptoe seeks approval of fees totaling $108,822.50 and costs totaling $7,433.40 for its services from April 1, 2002 through June 30, 2002.

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States

Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Steptoe an initial report based on our review, and received a response from Steptoe, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3. In our initial report we noted that timekeepers AEM and JWJ often did not include sufficient detail in their time entries. Rule 2016-2(d) of the Delaware Local Rules states "activity descriptions . . . shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary . . .". We asked Steptoe to advise these professionals to provide additional detail in future time entries.

4. In our initial report we noted that timekeepers JMB, AEM and SHS often tended to lump their time entries. Local Rule 2016-2(d)(vii) provides that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." We asked Steptoe to advise these professionals to avoid lumping their time entries in the future.

5. In our initial report we noted that the Application has a summary of expenses but fails to provide a list of expense details. The Guidelines Rule II. E. provides that "[f]actors relevant to a determination that the expense is proper include the following: . . .3. Whether applicant has provided a detailed itemization of all expenses including the date incurred, description of expense (e.g., type of travel, type of fare, rate, destination), . . .". Thus we asked Steptoe to please provide detailed expense entries with regard to those expenses for which reimbursement is requested. Steptoe provided us with the appropriate information and thus we have no objection to these expenses.

Specific Time and Expense Entries

6. In our initial report we noted that during the Application period multiple Steptoe professionals spent 202.9 hours for a total expense to the estate of $71,951.00 on "COLI" issues.(See Exhibit A). This amount represented 66% of the total Fee Application. Local Rule 2016-2 (d) requires that "[s]uch motion shall include activity descriptions which shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary". The narrative and the individual time entries were essentially void of detail with regard to this project. Thus we asked Steptoe to provide additional information with regard to this project. Steptoe response is provided in Response Exhibit 1. We accept this response and thus we have no objection to these fees.

7. In our initial report we noted that during this application period Steptoe spent 41.1 hours and $15,412.50 preparing its own fee applications. A.E. Moran, with an hourly rate of $375.00, was the only professional from Steptoe that billed time to fee application preparation. The U.S. Trustee Guidelines Rule, I.E. states ". . . [i]n evaluating fees for professional services, it is relevant to consider various factors including the following: the time spent; the rates charged; whether the services were necessary t o the administration of, or beneficial towards the completion of, the case at the time they were rendered; whether services were performed within a reasonable time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;. . .". We noted that in our experience, the majority of the preparation of one's own fee application is routinely performed by paraprofessionals and clerical personnel. We asked Steptoe to explain why professionals with lower billing rates were not utilized for this matter. Steptoe responded as follows:

> The auditor noted that most firms use paralegals or non-attorneys to prepare bills. Steptoe does use an accounting staff who prepares the initial invoices, and I review them as billing partner. Now that I have the quarterly and monthly applications on a grid, I have my secretary fill in the costs and I review them.
>
> The significant time spent preparing and reviewing the bills in April was due to a number of factors. First, you will note that a significant amount of time was spent on October bills and 2001 submissions. This is because we had assumed Grace would pay us the October bill as an ordinary course professional (it had been under $50,000, we understood that we only needed to file for the July and September bills, which exceeded that amount, and from November onward). The judge's order, issued in January of 2002, required submission of all bills beginning in July, 2001. We therefore had to spend some extra time with the October bills trying to put them in proper order for an application.
>
> This was also the first time we had filed quarterly reports and certificates of no objection, which had to be prepared, reviewed and standardized, and establish a procedure for monitoring our submissions to the court. I think you will see a significant drop in the cost of billing in future applications. Nonetheless, as I am sure you appreciate, the review of the work prepared by others is time consuming, particularly when we must be sure that the changes are properly recorded and applied to the proper category. It is more efficient for me to do the review than for someone who is not familiar with the case. Nonetheless, I do attempt to delegate as many administrative tasks as I can.

We believe we understand Steptoe's response, which points out these fees were for preparing prior applications. We also note that the cumulative fees for Steptoe through June 2002, are $405,198.50, and Steptoe's cumulative charges for preparing its own fee applications is $30,392.00. However, since a reduction for these charges was taken in the fourth interim period in the amount of $5,740.00, the total adjusted amount Steptoe charged for preparing its own fee application is $24,652.00, which is just slightly over 5% of Steptoe's cumulative fees. Thus we have no objection to these fees.

8. Thus, we recommend approval of fees totaling $108,822.50 and costs totaling $7,433.40 for Steptoe's services from April 1, 2002 through June 30, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
    Warren H. Smith
    State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 5th day of October, 2002.

_____
Warren H. Smith

## SERVICE LIST

Notice Parties

**The Applicant**

Anne E. Moran, Esq.
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801


**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

EXHIBIT A

| Date | Name | Description | Hours |
|---|---|---|---|
| 04/01/02 | A.L. Bailey | Review recent COLI TAM. | 1.20 |
| 04/01/02 | B. Kaufman | Meeting with A. Moran to anwer C. Finke questions re: COLI landscape | 0.50 |
| 04/29/02 | A.E. Moran | Telephone conference with C. Finke re Response to IDRs and COLI settlements. | 0.50 |
| 04/30/02 | A.E. Moran | Review COLI articles and other issues | 2.80 |
| 05/06/02 | A.L. Bailey | Develop strategy with regard to COLI Fast-Track. | 0.50 |
| 05/06/02 | A.E. Moran | Review COLI legislation and subsequent activities. | 0.80 |
| 05/06/02 | S.H. Serling | Telephone conference with Grace and Anne Moran regarding COLI settlement options. | 1.00 |
| 05/06/02 | S.H. Serling | Review COLI litigation. | 0.50 |
| 05/06/02 | J.W. Johnson | Teleconference with Grace re COLI tax procedures. | 1.00 |
| 05/06/02 | J.W. Johnson | Draft request to IRS for expedited COLI consideration. | 2.00 |
| 05/06/02 | J.W. Johnson | Research COLI operational issues. | 2.00 |
| 05/07/02 | S.H. Serling | Attention to COLI litigation. | 0.50 |
| 05/07/02 | J.W. Johnson | Research regarding COLI operational issues. | 3.20 |
| 05/07/02 | J.W. Johnson | Draft and revise letter to IRS re COLI settlement. | 1.00 |
| 05/08/02 | A.L. Bailey | Advice regarding COLI operational issues. | 0.40 |
| 05/08/02 | J.W. Johnson | Revisions to IRS letter related to expedited settlement of COLI issue. | 0.80 |
| 05/08/02 | J.W. Johnson | Analyze COLI operational issues related to COLI settlement. | 1.80 |
| 05/09/02 | J.M. Baxley | Review of COLI operations. | 1.50 |
| 05/09/02 | J.W. Johnson | Research COLI operations issues per COLI settlement. | 2.20 |
| 05/10/02 | J.M. Baxley | Research re: review of COLI operations. | 3.00 |
| 05/10/02 | J.W. Johnson | (COLI Operations) research related to COLI settlement. | 1.50 |
| 05/13/02 | J.M. Baxley | Research re: COLI operations; begin drafting memorandum. | 4.50 |
| 05/14/02 | B. Kaufman | Review of COLI case filings and decision. | 0.50 |
| 05/14/02 | J.M. Baxley | Research re: COLI operations; continue drafting memorandum. | 5.50 |
| 05/15/02 | J.M. Baxley | Research re: COLI operations. | 5.50 |
| 05/16/02 | A.L. Bailey | Prepare for call regarding COLI cases. | 0.50 |
| 05/17/02 | A.E. Moran | Review recent COLI cases. | 2.50 |

| | | | |
|---|---|---|---|
| 05/17/02 | A.L. Bailey | Review information from other companies re COLI operations. | 0.50 |
| 05/17/02 | J.M. Baxley | Review cases re: COLI operations. | 5.50 |
| 05/19/02 | J.M. Baxley | Research and drafting re: review of COLI operations. | 7.50 |
| 05/20/02 | J.W. Johnson | Review research re COLI operational issues. | 2.20 |
| 05/20/02 | J.M. Baxley | Read cases and draft memorandum regarding review of COLI operations. | 7.00 |
| 05/21/02 | S.G. Watters | Review state legislative history regarding COLI. | 1.00 |
| 05/21/02 | A.E. Moran | Conference call on COLI litigation (AEM attended only part). | 0.50 |
| 05/21/02 | A.E. Moran | Prepare for conference call on COLI litigation. | 0.20 |
| 05/21/02 | J.W. Johnson | Research relating to COLI settlement. | 3.00 |
| 05/21/02 | A.L. Bailey | Call Avon Consulting regarding policyholder reactions to COLI cases. | 1.20 |
| 05/21/02 | S.H. Serling | Conference call regarding COLI litigation with Art Bailey, Anne Moran, Carol Finke, Rick Sentfleben, and Elyse Napoli. | 0.80 |
| 05/22/02 | S.G. Watters | Continue review of state legislative history regarding COLI. | 1.00 |
| 05/22/02 | J.W. Johnson | Research regarding issues related to COLI policies and IRS settlement issues. | 4.50 |
| 05/22/02 | A.E. Moran | Follow up on COLI litigation. | 0.80 |
| 05/23/02 | J.M. Baxley | Review of COLI operations. | 0.50 |
| 05/23/02 | J.W. Johnson | Research regarding issues related to COLI settlement. | 2.50 |
| 05/24/02 | S.G. Watters | Continue review of state legislative history regarding COLI. | 1.00 |
| 05/24/02 | J.M. Baxley | Review of COLI operations; further research re; review of COLI operations; revise memo. | 6.00 |
| 05/24/02 | J.W. Johnson | Research regarding issues relating to COLI settlement. | 2.50 |
| 05/25/02 | J.M. Baxley | Read cases; revise memorandum re: review of COLI operations. | 5.00 |
| 05/26/02 | J.M. Baxley | Research; revise memorandum re: review of COLI operations. | 7.50 |
| 05/27/02 | J.M. Baxley | Finalize first draft or memorandum re review of COLI operations. | 5.00 |
| 05/27/02 | J.W. Johnson | Preparation of Memorandum re COLI issues. | 3.00 |

| Date | Person | Description | Hours |
|---|---|---|---|
| 05/28/02 | J.M. Baxley | Review of COLI operations in preparation for conference call with client. | 3.50 |
| 05/29/02 | J.W. Johnson | Research regarding impacting COLI settlement. | 2.50 |
| 05/29/02 | A.E. Moran | Follow-up re conference on COLI cases and settlement issues. | 0.40 |
| 05/29/02 | J.W. Johnson | Teleconference with client regarding COLI settlement issues. | 2.00 |
| 05/29/02 | J.M. Baxley | Phone conference with client re COLI operations. | 2.00 |
| 05/29/02 | J.M. Baxley | Begin further work re: review of COLI operations. | 3.00 |
| 05/29/02 | S.H. Serling | Prepare for and telephone conference with client regarding pending COLI litigation and IRS procedures (attended part). | 1.30 |
| 05/29/02 | A.E. Moran | Telephone conference re recent COLI cases and settlement issues (attended part). | 1.30 |
| 05/30/02 | A.E. Moran | Review and send information on COLI issues to client. | 0.60 |
| 05/30/02 | J.W. Johnson | Review issues re COLI settlement. | 2.00 |
| 05/31/02 | A.E. Moran | Telephone conference with R. Sentfleben re COLI case. | 0.40 |
| 05/31/02 | J.W. Johnson | Teleconference with client re COLI settlement research. | 0.10 |
| 05/31/02 | J.W. Johnson | Research re COLI settlement issues. | 2.50 |
| 06/03/02 | J.M.Baxley | Review of COLI operations; research; revise draft. | 8.50 |
| 06/03/02 | J.W. Johnson | Research regarding COLI issues and settlement. | 1.00 |
| 6/03/02 | A.E. Moran | Review issues regarding COLI claims. | 1.40 |
| 06/04/02 | J.M. Baxley | Review of COLI operations; additional research. | 9.00 |
| 06/04/02 | J.W. Johnson | Analysis of settlement questions related to COLI questions. | 2.50 |
| 06/05/02 | J.M. Baxley | Finalize document re: review of COLI operations. | 4.00 |
| 06/05/02 | J.W. Johnson | Draft memorandum re COLI settlement analysis. | 3.50 |
| 06/06/02 | J.W. Johnson | Draft memorandum re COLI settlement issues. | 0.80 |
| 06/07/02 | J.M. Baxley | Work on review of COLI operations; review transmittal. | 0.50 |
| 06/07/02 | J.W. Johnson | Analysis of COLI settlement issues. | 1.50 |
| 06/12/02 | A.L. Bailey | Analysis of COLI decisions. | 1.00 |
| 06/13/02 | B. Kaufman | Review of prior COLI NPAs and Grace Protest for 1990-92 years; drafting of Response to COLI NPA | 1.40 |
| 06/13/02 | J.W. Johnson | Meeting with B. Kaufman re COLI NPA. | 0.30 |
| 06/13/02 | J.W. Johnson | Preparation of COLI protest. | 0.20 |
| 06/13/02 | B. Kaufman | Meeting with A. Moran re: drafting of Response | |

| | | | |
|---|---|---|---:|
| | | to COLI NPA for early referral purposes | 0.20 |
| 06/13/02 | B. Kaufman | Phone call with C. Finke re: drafting of Response to COLI NPA for early referral purposes | 0.30 |
| 6/13/02 | B. Kaufman | Meeting with W. Johnson re: Response to COLI NPA | 0.30 |
| 06/14/02 | B. Kaufman | Review of COLI NPA; preparation of Response to COLI NPA | 4.00 |
| 06/17/02 | B. Kaufman | Review of COLI NPA; preparation of Response to COLI NPA | 5.70 |
| 06/17/02 | J.W. Johnson | Preparation of COLI response. | 2.00 |
| 06/18/02 | B. Kaufman | Preparation of Response to COLI NPA | 3.40 |
| 06/18/02 | A.E. Moran | Review COLI draft. | 0.80 |
| 06/18/02 | A.E. Moran | Meet with B. Kaufman re draft. | 0.20 |
| 06/18/02 | J.W. Johnson | Review and revise draft COLI protest; review Form 5701-12 | 9.00 |
| 06/19/02 | J.W. Johnson | Consider NPA response on COLI. | 0.50 |
| 06/20/02 | J.W. Johnson | Teleconference re status of COLI Protest to IRS. | 0.50 |
| 06/20/02 | A.E. Moran | Office consult with B. Kaufman re COLI draft. | 0.20 |
| 06/20/02 | A.E. Moran | Telephone conference with C. Finke re COLI draft. | 0.20 |
| 06/20/02 | A.E. Moran | Review COLI draft. | 1.10 |
| 06/24/02 | J.W. Johnson | Meeting with B. Kaufman re revisions to submission to IRS re COLI insurance. | 0.60 |
| 06/25/02 | J.W. Johnson | Review and revise COLI protest per comments from Tom Borders. | 2.30 |
| 06/28/02 | J.W. Johnson | Revisions to IRS COLI submission. | 2.00 |

RESPONSE EXHIBIT 1

Below please find an overall description of the tasks performed with respect to the corporate owned life insurance ("COLI") policies held by W.R. Grace ("Grace") in April - June 2002, which were questioned by the auditor. Steptoe performed all of these tasks at Grace's direction, and in anticipation of litigation with the IRS in connection with the interest deductions that W.R. Grace had taken on certain corporate owned life insurance policies (hereinafter called "COLI policies") that Grace had purchased in 1988 and 1990. The IRS had already audited Grace for the tax years 1990-92 and disallowed the deduction for interest for those years; Grace had appealed this disallowance unsuccessfully, and at this point was anticipating litigation.

A number of events were happening simultaneously at this time. First, although Steptoe and Grace had previously determined prior to this time that they would litigate this matter for the tax years 1990-92, it became apparent in the spring of 2002 that other taxpayers were starting to lose COLI cases in court. In addition, rumors had begun to circulate that the IRS would withdraw the general settlement offer that it was offering to taxpayers and therefore Grace once again had to decide whether they needed to settle quickly or try to continue with its plan to litigate. At the same, time, Grace knew that the IRS had almost completed its review of deductions for interest for the 1993-96 tax years (each set of tax years starts a new process and IRS review procedure), and was likely to deny deductions for those years as well. It seemed that this might be a good time to consider settlement again. In addition, Grace had to take the necessary procedural steps required to preserve its claims that it was entitled to a deduction for 1993-96 after the IRS denied the deduction. Very generally, it had to file a "protest" with the IRS, which is like a brief explaining its position and responding to the IRS position. Grace also had to decide whether to take advantage of some IRS

programs that permit "early referral" or "fast-track referral" of certain previously considered cases (cases considered for other taxpayers) to the appropriate IRS appeals officer. In the middle of these decisions, there arose certain state law cases affecting corporate owned life insurance policies. All of these issues had to be considered as Grace debated the question of whether to settle or continue to litigate. So, in summary, in these three months, Steptoe generally tried to (a) determine whether the IRS would or would not continue to allow settlement, and on what terms, (b) put Grace in the best procedural position to preserve its claims while pursuing the possibility of settlement, (c) analyze the state law case and issues that arose under state law with respect to COLI benefits, and (d) prepare the required "protest" brief defending Grace's interest deductions. A protest has to be filed whether or not the taxpayer settles.