## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## FEE APPLICATION OF FTI POLICANO & MANZO
## FOR THE FIFTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fifth Interim Quarterly Fee Application of FTI Policano & Manzo</u> (the "Application").

## BACKGROUND

1.  FTI Policano & Manzo ("FTIP&M") was retained as financial advisers to the official committee of unsecured creditors. In the Application, FTIP&M seeks approval of fees totaling $195,700.00 and costs totaling $8,119.58 for its services from April 1, 2002, through June 30, 2002.

2.  In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. 330, the Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States

Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on FTIP&M an initial report based on our review, and received a response from FTIP&M, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.  We noted in our initial report that the fee detail is arranged in chronological order by timekeeper and not by project category as stated in the U.S. Trustee guidelines Rule II.D.1 "To facilitate effective review of the application, all time and service entries should be arranged by project categories." We also noted that, as a result of the timekeeper arrangement provided in the fee detail, the application did not have a separate category for FTIP&M's own fee application preparation. Guidelines, Rule II.D.1. states "[a] separate project category should be used for ... fee application preparation." We asked FTIP&M to please follow the U.S. Trustee Guidelines and Delaware Local rules when preparing future fee applications. FTIP&M responded:

> i.  The Fee Auditor has requested that FTI P&M report time chronologically by category rather than by timekeeper in the future. This issue was also raised in the audit of the 1st, 2nd and 3rd interim periods. Currently, our internal systems are set up to report time chronologically by timekeeper, not by category. Therefore, such a change will require either a considerable financial investment in a different timekeeping system or additional time to manually re-compile the time entries each month. FTI P&M will explore both possibilities in an attempt to comply with the Fee Auditor's request in the future, however, we would like a determination from the Fee Auditor about the necessity for this change in our record keeping.
> ii. The Fee Auditor has noted that the application does not have a separate category for FTI P&M's own fee application preparation. In this case, FTI P&M prepares only its own fee application and no other. Thus, all the fees in this category relate only to the preparation of FTI P&M's fee applications and related tasks.

We do not believe that it would be cost-effective for FTIP&M to manually re-compile time entries each month, and we do not believe that we are in a position to require an applicant to make a

"considerable financial investment", and thus we have no recommendation regarding this issue of arranging time entries by category. We believed, however, that we should bring this issue to the court's attention.

4. We noted in our initial report that in some instances there is inadequate detail regarding the services performed by timekeepers Hamilton, Cunningham and Ordway. Local Rule 2016-2(d) provides that "[s]uch motion shall include activity descriptions which shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary". Additionally, we noted several lumped time entries by Cunningham, Hamilton, Whitney and Ordway. Paragraph II.D.5. of the Guidelines provides that "[s]ervices should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry." We asked FTIP&M to please advise these timekeepers to provide more detail and avoid lumping time entries in the future. We then advised FTIP&M that it would also be helpful for them to include a more-detailed narrative in its quarterly fee applications (or in its monthly fee and expense invoices) to enable us to evaluate time entries in context. FTIP&M responded:

> ii. It should be noted that, in general, financial analysis and related tasks can often take several hours and cannot always be split into minute pieces. It is our belief that timekeeping entries for these activities are not actual incidences of "lumping."
> iii. Although no specific examples of "lumping" were provided by the Fee Auditor, FTI P&M will endeavor to continue to comply with the guidelines with regard to "lumping" and will endeavor to provide more specific time entries and provide more descriptive narratives in the future.

We accept this response and thus have no objection to these fees.

5. We noted in our initial report that during this interim period FTIP&M spent 84.60 hours and $29,845.00 in fees preparing its own fee application. This is slightly over 15% of the total fees requested. For the fourth interim period FTIP&M charged $28,865.50, or almost 15% of the

fees requested in that Application. Of the 84.6 hours spent preparing FTIP&M's fee application, L. Hamilton, at $350 per hour, billed 81.5 of those hours for fees of $27,525.00 which represents 92% of the the fee application charges. The U.S. Trustee Guidelines Rule, I.E. states ". . . [i]n evaluating fees for professional services, it is relevant to consider various factors including the following: the time spent; the rates charged;. . ." In conducting our audits for this case, we have noticed that many other applicants have fee applications prepared by timekeepers with lower hourly rates. It appears that the large amount of fees attributable to this matter by FTIP&M could be reduced if the work associated with fee application preparation was allocated to timekeepers with lower billing rates. Thus we requested that FTIP&M explain why it is necessary for a professional at an hourly rate of $350.00 to prepare the fee applications. FTIP&M's response is attached hereto as Response Exhibit 1. While we understand FTIP&M's concerns, it has been our experience, as previously noted, that this type of activity does not generally require the attention of higher paid professionals to put together an application, as opposed to a final review of an application. As such, we recommend a reduction of one third of the amount requested for this issue, for a reduction of $8,257.50 in fees.

6. We noted in our initial report that on April 15, 2002, S Cunningham ($440), C. Whitney ($375) and W. Gilligan ($375) participated in a committee meeting and a subsequent business plan meeting for a total of 14.4 hours and a total expense to the bankruptcy estate of $5,544.00. The time entries are provided below.

| Date | TK | Hours | Amount | Description |
|---|---|---|---|---|
| 04/15/02 | S C | .6 | $264. | Participated in meeting of committee prior to presentation of business plan update by Debtors. |
| | S C | 4.5 | 1980. | Participated in Debtor's presentation of FY 2002 business plan and KERP proposal |
| 04/15/02 | CW | 0.8 | $1125. | Met with team prior to Committee meeting to discuss case status |
| | CW | 3.5 | $300. | Attended Committee meeting |

**FEE AUDITOR'S FINAL REPORT** - Page 4
wrg FR FTIPM 5Q 4-6.02.wpd

| | | | | |
|---|---|---|---|---|
| 04/15/02 | WG | 5.0 | $1875. | Participated in Committee meeting regarding 2002 business plan and revised KERP |

Paragraph II.D.5. of the guidelines provides that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." We realize that there are occasions when each professional brings a distinct area of expertise to a meeting. However, in the instance cited, the detail provided does not clarify each participants role. Therefore, we asked FTIP&M to please explain the necessity for the three professionals' attendance at these meetings. FTIP&M responded as follows:

> a. Timekeeper Cunningham was in attendance at these meetings as the senior manager assigned to the case. His experience and expertise derived from many bankruptcy cases as well as his specific case knowledge in this case as a senior manager dictated his attendance at the meeting.
> b. At this meeting, the Debtors presented its updated business plan. Prior to the meeting, timekeeper Whitney had been involved in the preparation of various analyses and reports of the original business plan as well as in the preparation of analyses comparing the business plan to current results. For these reasons, the senior manager included timekeeper Whitney in the meeting.
> c. At this meeting, the Debtors presented its reasons for extending and revising the current KERP program. Prior to the meeting, timekeeper Gilligan had been involved in the preparation of analyses of the KERP and LTIP plans and in the preparation of presentations for the Committee. For these reasons, the senior manager included timekeeper Gilligan in the meeting.

We accept this response and thus have no objection to these fees.

7. We noted in our initial report that on June 25, 2002, professionals S. Cunningham and W. Gilligan participated in a conference call for 3.7 hours and a total cost to the bankruptcy estate of $1,430.00. The entries are provided below.

| | | | | |
|---|---|---|---|---|
| 06/25/02 | S C | 1.5 | $660 | Participated in Committee call to discuss fraudulent conveyance strategy. |
| 06/25/02 | WG | 2.2 | $770 | Participated in conference call regarding status update on Debtors' participation in a fraudulent conveyance lawsuit |

We asked FTIP&M to please explain the necessity for the attendance of both professionals and the expertise each brought to the conference. FTIP&M responded:

> a. Timekeeper Cunningham attended the conference call in his capacity as senior manager of the case. Due to his overall experience as well as his current understanding of the issue was deemed prudent to have timekeeper Cunningham in attendance while the issue was discussed by the Committee members.
> b. Timekeeper Gilligan read various documents related to the fraudulent conveyance issue in preparation for the conference call. It was the intention that he would prepare an analysis of the issue, subsequent to the call. This analysis was performed on June 28th.

We accept this response and thus have no objection to these fees.

8.  We noted in our initial report time entries by timekeeper Hamilton for "Updated court docket listing" for a total of 2.3 hours and $805.00. This appears to be a ministerial task unbefitting a $350-an-hour professional. The U.S. Trustee Guidelines Rule, I.E. states ". . . [i]n evaluating fees for professional services, it is relevant to consider various factors including the following: the time spent; the rates charged; . . ." In our final report for the fourth interim period we also addressed this issue and recommended a reduction in fees for these charges. We asked FTIP&M to please explain why a further reduction should not be taken. FTIP&M responded:

> i.  The work described as "updated court docket listing" is an on-going activity which involves acquiring web-access to the court docket system, reading entries and retrieving selected docket items. The selected docket items are read and analyzed and the information disseminated to case team members to ensure their current and timely knowledge of case issues.
> ii. A professional person of timekeeper Hamilton's caliber is assigned to read and analyze the docket so that we can determine if any action needs to be taken on our part to fulfill our duties and responsibilities to our Committee. Such action may include further investigation of the related topic and discussion with the chairman, counsel and our Committee to advise them on the items of significance and recommended position the Committee should take thereon. It is our belief that such work should not be delegated to paraprofessionals who would not have the depth of experience that resides with a professional such as timekeeper Hamilton.
> iii. While it is our belief that this task has been appropriately assigned to

professional staff, these activities are being described more fully and, whenever possible, portions of the task may be assigned to lower fee staff in our current fee applications.

We understand this response, but we do not accept it. We believe that there are portions of this task that may be assigned to lower fee staff, and, as such, we recommend a reduction of one third the total fee requested, for a reduction of $241.50 in fees.

9. We noted in our initial report that on April 24, 2002 FTIP&M billed $2,040.00 to the estate for attendance at an asbestos seminar. At the August 26, 2002 hearing, the Court stated in part "[t]here is one thing I am not going to permit as compensable fees or expenses for any professional in this estate. And that is attendance at professional seminars of any kind, whether to do with asbestos or not. So whoever put those requests in, they are disallowed and they are not to be part of this compensation. . . ." Such educational seminars "should be part of your firm's overhead." We noted in our initial report that a $2,040.00 reduction appeared to be appropriate, and FTIP&M responded that it accepted this recommendation. Thus we recommend a reduction of $2,040.00 in fees.

10. We noted in our initial report that Local Rule 2016-2(e)(iii) provides that the charge for out-going facsimile transmissions shall not exceed $1.00 per page. The April expense report, however, indicates that FTIP&M charges $1.25 per page and that this charge was applied to a total of 224 pages. The May and June invoices indicate the allowable amount of $1.00 per page. We observed in our initial report that a $56.00 reduction seemed appropriate, and FTIP&M responded that it had reduced the total expenses requested by $56.00 for this charge. Thus we recommend a reduction of $56.00 in expenses.

11. Similarly, we noted in our initial report that Local Rule 2016-2(e) provides that

photocopying charges shall not exceed $0.15 per page. The April expense report, however, indicates that FTIP&M charges $0.20 per page and that this charge was applied to a total of 1,111 pages. The May and June invoices indicate the allowable amount of $0.15 per page. We observed in our initial report that a $55.55 reduction seemed appropriate, and FTIP&M responded that it agreed with this recommendation and that the total expenses requested had been reduced by $55.55. Thus we recommend a reduction of $55.00 in expenses.

12. We noted in our initial report that the April invoice reveals $15.00 in charges for word processing. Paragraph II.E.7. of the Guidelines provides that nonreimbursable overhead includes word processing. We stated that a $15.00 reduction appeared to be appropriate, and FTIP&M responded that it had reduced the total fees requested by $15.00. Thus we recommend a reduction of $15.00 in expenses.

13. We noted in our initial report that the Application includes a total of $3,307.50 in entries denominated "Document Preparation and Handling Services":

Document Preparation and Handling Services:
| | | |
|---|---|---|
| N. Backer | 11.5 hours @ $75/hour: | 862.50(April) |
| E. Polukord | .5 hours @ $75/hour: | 37.50(April) |
| N. Backer | 18.8 hours @$75/hour: | 1,410.00 |
| E. Polukord | 0.5 hours @ $75/hour: | 37.50 |
| N. Backer | 11.8 hours @ $75/hour: | 885.00 |
| E. Polukord | 1.0 hours @ $75/hour: | 75.00 |

The text of the Application leads us to believe that these charges relate to "preparation, collation and binding" of documents. We noted this issue in our final report for the fourth interim period and recommended a reduction at that time. FTIP&M responded that:

> FTI P&M eliminated these charges from the May 2002 and June 2002 fee applications and on a going-forward basis, in accordance with the Fee Auditor's determination in the preceding audit of the 4th interim period.

We appreciate this action by FTIP&M, however, as the April expense detail still contains a charge in the amount of $900.00 for this expense, we recommend a reduction in the amount of $900.00 in expenses.

## CONCLUSION

14. Thus, we recommend approval of fees totaling $185,161.00 ($195,700.00 minus $10,539.00) and expenses totaling $7,093.58 ($8,119.58 minus $1,026.00) for FTIP&M's services from April 1, 2002, through June 30, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
Warren H. Smith
Texas State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 6th day of November, 2002.

_____
Warren H. Smith

## SERVICE LIST

Notice Parties

**The Applicant**

Edwin N. Ordway, Jr.
FTI Policano & Manzo
Park 80 West, Plaza I
Saddle Brook, NJ 07663

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

RESPONSE EXHIBIT 1

. . . during the 5th Interim Period, timekeeper Hamilton spent approximately 35.2 hours preparing monthly fee applications and 11.1 hours preparing a quarterly interim period application. The total charges for these activities at timekeeper Hamilton's rate of $350 per hour is $16,205.00, or 8.3% of the total fees charged to the estate for the period. This would appear to FTI P&M to be a reasonable charge, especially given the complexity of the fee applications and the level of care required in the preparation of the fee applications.

    iii.    The analysis also shows that an additional 13.5 hours were required to revise the March 2002 and the 4th Quarterly Interim Period fee applications to conform to the categorization required under the new administrative order governing fee applications. Again, the amount of time spent by timekeeper Hamilton would appear to us to be reasonable. The nature of the work which included conversions of the spreadsheets used to report the time in fee applications, determination of appropriate reclassifications of time expended, reconciliation of data and other associated tasks required that a professional be assigned these tasks.

    iv    The new administrative order also affected the reporting of fee application data reported for the 1st, 2nd and 3rd interim periods. The conversion of data was, again and in our opinion, appropriately assigned to a professional. This activity required conversion of spreadsheets and reclassification of data, similar to the work performed to revise the March 2002 and 4th Quarterly Interim fee applications, but encompassed all data from April 5, 2001 through December 31, 2001. Timekeeper Hamilton spent approximately 6.0 hours performing these tasks.

v. Additionally, the Fee Auditor issued his initial audit report on the 4th Interim Period. Timekeeper Hamilton spent a total of approximately 15.7 hours reading and analyzing the report, discussing the report with colleagues and preparing a detailed response to the report.

    v.    Also, FTI P&M has begun to utilize the skills of lower paid staff to prepare portions of the fee applications. In addition to the Fee Application charges noted above by the Fee Auditor, the word processing charges noted in Item 11 include the following charges, totaling $3,157.50, related to the preparation of the FTI P&M fee application during the 5th interim period:

N. Backer    18.8 hours   @ $75/hour:    1,410.00
N. Backer             11.8 hours   @ $75/hour: 885.00