**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| **Debtors.** | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF HOLME ROBERTS & OWEN, LLP**
<u>**FOR THE FIFTH INTERIM PERIOD**</u>

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Interim Fee Application of Holme Roberts & Owen, LLP for the Fifth Interim Period</u>. (the "Application").

**BACKGROUND**

1.      Holme Roberts & Owen, LLP ("Holme") was retained as special environmental counsel to the Debtors.  In the Application, Holme seeks approval of fees totaling $1,429,411.50 and costs totaling $158,522.92 for its services from April 1, 2002, through June 30, 2002.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for

consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Holme an initial report based on our review and received a response from Holme, portions of which response are quoted herein.

## DISCUSSION

<u>General Issues</u>

3.      We noted in our initial report that many of the timekeepers involved in the document production often did not include sufficient detail in their time entries. Rule 2016-2(d) of the Delaware Local Rules states "activity descriptions . . . shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary . . ." We asked Holme to please advise all of its professionals to provide more detailed time entries in the future and Holme responded that it would do so.

<u>Specific Time and Expense Entries</u>

4.      We noted in our initial report that during the Application period professional WEP ($85) spent a total of  56.0 hours for a total expense to the estate of $4,760.00 on tasks that appear to qualify as non-reimbursable overhead. (See Exhibit A). Paragraph II.E.7. of the Guidelines provides that "[Overhead] consists of all continuous administrative or general costs incident to the operation of the applicant's office and not particularly attributable to an individual client or case. Overhead includes word processing, proofreading, secretarial and other clerical services...." We asked Holme to please review Exhibit A and explain why an exception should be made for these charges. Holme responded:

The services William E. Payne (WEP) provides to HRO and the estate are highly technical services that require specialized training and knowledge of computer technology and information systems. Mr. Payne's services identified in Exhibit A are not clerical or secretarial services as secretarial and clerical staff do not have the necessary training or expertise to carry out the services performed by Mr. Payne. Specifically, the services identified in Exhibit A require Mr. Payne to be sufficiently proficient in computer systems and protocols to electronically manipulate and organize a vast body of imaged documents for privilege review and eventual production to the EPA. In addition Mr. Payne also is responsible for quality control and ensuring that all CD-Rom discs are operational, that they are free from corruption, and that they contain the correct data.

Mr. Payne's time entries for making copies of CDs do not reflect the full process that is required to make the copies identified in Exhibit A of the Report. Making copies of CDs is not the same as making Xerox copies of documents. Rather, the process is entirely manual and requires Mr. Payne to, among other tasks, prepare a new CD for copying, identify the proper files to be copied, convert documents from different protocols or formats, and carefully review the contents of each copy for errors and other quality concerns.

Mr. Payne's time entries may not clearly reflect the number of copies Mr. Payne actually made as Mr. Payne routinely made copies of entire sets of CDs. For instance, the time Mr .Payne billed on May 29, 2002 ("Make four copies of CDs "Volpe 1" through "Volpe 28") reflects the time it took Mr. Payne to make four perfect copies of 28 separate CDs, or 112 total copies.

Rather than incurring the substantial costs of retaining an outside Information Systems vendor or consultant, HRO elected to perform these tasks in-house through Mr. Payne. HRO contends that this election results in a cost savings to the estate because Mr. Payne is familiar with the project and can perform the necessary tasks much more efficiently than an outside vendor. Furthermore, Mr. Payne's hourly rate for performing these services is less than HRO would be required to pay to retain an outside consultant or vendor to perform the same services.

This issue was addressed in the previous final report wherein we recommended a reduction of fees for the task of copying of CDs. While we believe the response provided by Holme adequately explains the amount of time necessitated for the act of copying CDs, we maintain our position that copying CDs is a clerical task and, as such, is non-reimbursable overhead. Thus, we recommend a reduction of $4,760.00 in fees.

5.      Similarly, we noted in our initial report that in the Application Holme is seeking reimbursement for legal assistant and administrative overtime in the amount of $29,526.25.  Paragraph II.E.7. of the Guidelines provides that "[Overhead] consists of all continuous administrative or general costs incident to the operation of the applicant's office and not particularly attributable to an individual client or case.  Overhead includes word processing, proofreading, secretarial and other clerical services...."  We further noted that this issue was questioned and responded to in our reports for the fourth interim period. While we accepted Holme's response and did not recommend a reduction in fees at that time, in light of the large amount of fees involved, we are obligated to question these same charges for this period.   As such, we again asked Holme to explain why an exception should be made for these charges.  Holme responded:

> As noted in HRO's Response to the Fee Auditor's Initial Report Regarding Fourth [SIC] Interim Fee Application, HRO incurred overtime expenses in this matter due to Grace's obligation to respond to requests for information propounded by the EPA under Section 104(a) of CERCLA, as well as discovery in related litigation matters.
>
> Specifically, the EPA propounded additional Interrogatories and Requests for Production of Documents in April 2002, to which Grace was obligated to respond and produce documents by the end of May, 2002.  With respect to the EPA's requests made under Section 104 of CERCLA, Grace was required to respond and produce the requested documents within the established time frames or incur penalties accruing at a rate greater than $20,000.00 per day.
>
> In order to meet the deadlines, HRO support staff was required to work overtime. HRO is required to pay its support staff at a greater rate for overtime work.  The combination of the short deadlines and the volume of documents that HRO was required to review compelled HRO support staff to work additional overtime in this particular matter.  HRO should be reimbursed for its overtime expenses in this particular matter due to the unique circumstances presented.
>
> HRO endeavors in good faith to prevent overtime in all of its Grace engagements, however the special circumstances of the Boston Document Review matter frequently require HRO to incur overtime expenses in order for HRO to meet its obligations to the client, the EPA, and the Court.  Notably, HRO has not incurred, nor sought reimbursement for, overtime in other matters.

Moreover, HRO contends that incurring the overtime expense of its existing professionals assigned to this matter is actually more cost efficient for the estate than trying to prevent overtime altogether. To prevent overtime, HRO would be obligated to assign additional professionals to the matter. The estate would incur the additional costs associated with these additional professionals including the time each professional billed to the matter as well as the costs of airfare, hotel, transportation, and meal expenses associated with each additional professional. In other words, a reduction in the amount of overtime expense would likely not produce a significant savings for the estate as overtime expenses would likely be shifted to travel, meal, and other expenses categories.

We believe this response adequately addresses our concerns and thus we have no objection to these fees.

6.    We noted in our initial report that during the Application period 39 Holme professionals spent a cumulative 1,830.70 hours for a total expense to the estate of $401,470.50 reviewing and coding documents for responsiveness. Samples of the entries questioned are provided below with the timekeepers' hourly rates in italics.

| 4/30/02 | CB*(75)* | 1.00 | 75.00 | Review and code electronic documents produced by EPA for responsiveness to Cost Recovery Issues (1.00) |
|---------|----------|------|-------|------|
| 06/01/02 | MWW *(295)* | 4.80 | 1416.00 | Review and code documents in Boulder for responsiveness to EPA information requests (4.80). |
| 06/19/02 | CRS *(175)* | 8.40 | 1470.00 | Review and code documents for responsiveness to EPA information requests. |
| 06/21/02 | DPW *(185)* | 9.30 | 1,720.50 | Review and code documents for responsiveness to EPA information requests (8.90); travel to Boulder (0.40)(0.40)N/C (NWT 50%). |
| 06/24/02 | NKA *(110)* | 7.00 | 770.00 | Review and code documents in Boulder for responsiveness to EPA information request (7.00). |

We are sensitive to the enormity of the document production in this case and we do not dispute the time involved in a project of this magnitude. However, as illustrated in the sample time entries provided, the hourly rates of the many professionals performing the same work varies from as high as $295.00 to as low

as $75.00 for the same task.  Pursuant to Guidelines Rule, I.E. "In evaluating fees for professional services,

it is relevant to consider various factors including the following: the time spent; the rates charged; whether

the services were necessary to the administration of, or beneficial towards the completion of, the case at

the time they were rendered; whether services were performed within a reasonable time commensurate with

the complexity, importance, and nature of the problem, issue, or task addressed".   We asked Holme to

please explain the extreme variations in hourly rates for this document production.  Holme responded:

> The variation in the hourly rates charged by HRO professionals assigned to the Boston
> Document Review and coding project is justified for a number of reasons.  First, the
> volume of documents to be reviewed and the deadlines by which documents must be
> coded and produced require HRO to assign all available professionals to the project.
> HRO notes that  paralegals and lower level associates performed a substantial portion of
> the document review at lower hourly rates.  HRO professionals that bill at higher hourly
> rates, however, are more efficient at reviewing and coding documents than professionals
> that bill at lower rates.    The higher hourly rates charged by some HRO professionals is
> warranted by the efficiency of these professionals relative to professionals that bill at lower
> rates.
>
> Second, HRO assigns professionals with higher hourly rates to perform more
> complex tasks such as reviewing documents for privilege and interfacing with the various
> client contacts to coordinate the collection and eventual production of documents.  HRO
> professionals with higher rates are also charged with more responsibility, including decision
> making responsibility as to whether the client should withhold the production of documents
> on the basis of privilege.
>
> Although all timekeepers used a standard time entry, the actual work performed
> by each timekeeper varied widely depending on their experience and skill level.  While the
> Boston Document Review project required a large number of professionals at lower billing
> rates to perform the bulk of the project, the project also required a number of higher-level
> professionals to administer the project and perform tasks better suited to more
> experienced attorneys.  Accordingly, the variation in hourly rates is warranted.

While we believe this response explains the necessity of having all available professionals  participate in this

massive production, it does not, in our opinion, explain why professionals at higher level billing rates were

billed at their full hourly rate when performing tasks that, in less time-demanding circumstances, would only

warrant participation by lower level professionals.  On the issue of adjusting rates downward for certain tasks, the Third Circuit seems fond, in the bankruptcy context, of quoting its opinion in *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) that "[r]outine tasks, if performed by senior partners in large firms, should not be billed at their usual rates.  A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn."  *See Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 260 (3rd Cir. 1995); *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 855 n.34 (3rd Cir. 1994).  We found 550.70 hours of document production attributable to professionals with billing rates between $220.00 and $300.00 per hour for a total of $123,670.00.  We believe that an hourly rate of $200.00 is an appropriate ceiling regarding these tasks and thus recommend a reduction of $13,676.00, which is the difference in the total dollar amount billed at these professional's hourly rate and the same number of hours billed at the more reasonable rate of $200.00 per hour, for a reduction of $13,676.00 in fees.

7.      We noted in our initial report that on seven different occasions during the Application period four professionals from the applicant's firm jointly participated in meetings for a combined total of 64.2 hours and for a total fee of $19,451.00. (See Exhibit B).  According to Local Rule 2016-2(d)(ix), "[t]he activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role."  The matter of multiple professionals is also addressed in Paragraph II.D.5 of the Guidelines, "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  The fee detail does not provide the reason for multiple professionals at these meetings nor does it explain each professional's role.  We asked Holme to please explain the need for multiple professionals at the meetings listed in Exhibit B.  Holme responded:

The presence of multiple HRO professionals at the meeting identified in Exhibit B was warranted for a number of reasons. First, the meetings identified in Exhibit B all pertained to the Libby Cost Recovery case wherein Grace is defending against significant liability relating to the EPA's actions in Libby, Montana. Complex accounting issues are central to the case, as are complex medical/toxicology issues. Considering the magnitude of case and the wide variety of issues present in the case, it is appropriate for multiple HRO professionals to attend certain meetings.

Second, the four professionals participating in the meetings identified in Exhibit B, namely Kenneth Lund, Jay McCarthy, Katheryn Coggon, and Edward Stevenson, comprise HRO's core litigation team with respect to Libby cost recovery action. As such, it is essential for these four professionals to meet from time to time to devise strategy, compare information, discuss potential experts, and coordinate the litigation with the client. For instance, two of the meetings identified in Exhibit B (April 30, 2002 and May 16-17, 2002) were meetings between the core team and the client. The presence of HRO's core litigation team at these meetings was necessary to advise the client and determine strategy.

Third, the various HRO professionals at each of the identified meetings performed separate roles. For example, Ken Lund (KWL) attended all of the meetings because he is the client's primary contact for all Grace related matters. Mr. Lund's participation in all of the identified meetings was necessary to guide the client's general litigation strategy and provide the client with information regarding the potential accounting, medical, and toxicology experts that were being interviewed during the period covered by the Application. The attendance of Katheryn J. Coggon (KJC) at the various meetings was necessary as Ms. Coggon is extremely familiar with the facts and detailed history of the Libby matter. In addition to contributing to general litigation strategy based on this knowledge, Ms. Coggon's attendance at the various meetings was essential to inform potential experts of the background facts and necessary to assist in the evaluation of potential experts. Similarly, Ed Stevenson (EES) participated in the various meetings to assist in discussions and decisions relating to accounting experts and litigation strategy regarding accounting issues. Mr. Stevenson has a background in accounting and is responsible for handling the accounting issues in the case. Accordingly, Mr. Stevenson's participation in the various meetings was necessary. Jay McCarthy (JDM) also participated in the various meetings to assist in discussions and decisions relating to medical and toxicology issues present in the case. Mr. McCarthy is responsible for these issues in the case and his participation in the various meetings was also essential.

We believe this response alleviates our concerns with regard to all but the April 24, 2002 meeting. More

specifically, we do not believe there is justification for four professionals at the April 24, 2002, meeting.

Thus, we recommend a reduction of one half of the amount requested for April 24, 2002 meeting, for a

reduction of $1,509.75 in fees.

8.      We noted in our initial report that Holme seeks reimbursement for "travel expenses" on a number of different occasions.  We further noted that a small portion of the "travel expense" entries totaling $29,122.75, failed to provide the requisite detail.  (See Exhibit C).  We asked Holme to please examine these entries and provide additional information with regard to the individual expenses so that we may analyze the reasonableness of the same.  Holme's response is attached hereto as Response Exhibit 1.  Additionally, Ms. Elizabeth Flaagan of the Applicant firm has responded  by e-mail.  We believe these explanations adequately address our concerns and thus we have no objection to these expenses.

9.      We noted in our initial report that on February 7, March 28, and April 18, 2002 professionals R. Emmett, D. Cameron and T. Tygart had a cumulative total of $1,811.62 in hotel charges.  The individual entries, however, fail to provide the number of nights stayed in order to incur these charges.

| 02/07/02 | Travel Expenses: VENDOR: Brown Palace Hotel, The; INVOICE#:88209; DATE: 2/07/2002 - Denver,#90012864, Room Charges, R. Emmett | $397.08 |
| 03/28/02 | Other Expenses: VENDOR: Travis T. Tygart; INVOICE#:041002-1; DATE: 4/10/2002 - Travel to Boston to review documents for WR Grace - Hotel | $781.50 |
| 04/18/02 | Travel Expense: VENDOR: Magnolia, The; INVOICE #: 177540; DATE: 4/18/2002 - Denver, #85673, Room Charges for Doug Cameron, 4/16-4//17/02, D.Cameron | $633.04 |

We asked Holme to please review the entries and provide the number of nights per stay so that we may assess the reasonableness of the same.  Holme responded:

HRO has reviewed the specific entries noted in the Report and provides the following additional information with respect to these entries:

a. 2/7/02 Brown Palace Hotel– This invoice was inadvertently included in HRO's invoice and should not have been charged to the estate. HRO agrees to a reduction in its request for reimbursement by $397.08.

b. 3/28/02 T.Tygart Invoice #041002-1-- Hotel– Mr. Tygart's entry for $781.50 represented hotel charges for five (5) nights (March 23 - 27, 2002). The average rate per night for this stay equates to $156.30.

c. 4/18/02 D.Cameron Invoice #177540–Hotel– Mr. Cameron's entry for $633.04 represented hotel charges for two (2) nights (April 16 - 17, 2002). The average rate per night for this stay was $316.52. This expense item is unusual as Mr. Cameron is employed by Grace and is not an HRO professional. HRO made hotel arrangements for Mr. Cameron while he was in Denver for meetings with HRO professionals. HRO was invoiced for Mr. Cameron's stay and HRO paid this invoice. Reimbursement for this expenses is appropriate in this circumstance.

While we accept the responses for items two of these entries, we believe that Holme could have made hotel arrangements for Mr. Cameron at more reasonably priced establishments. We believe that adequate accommodations, priced under $275.00 per night, could have been found and thus recommend an additional reduction of $83.00 for a total deduction of $480.08 in expenses.

10. We noted in our initial report that Holme seeks reimbursement in the amount of $2,647.86 for expenses incurred by Carla Latuda while at Cambridge on April 8, 2002. The expense details lack the number of days this stay at Cambridge entailed.

| | | |
|---|---|---|
| 04/08/02 | Travel Expense: VENDOR: Carla Latuda; INVOICE#: 040802; DATE:4/8/2002 - To conduct a document review at Cambridge regarding response to EPA's information requests - Hotel expense | $1,062.65 |
| 04/08/02 | Travel Expense: VENDOR: Carla Latuda; INVOICE#: 040802-A; DATE:4/8/2002 - To conduct document review at Cambridge regarding response to EPA's information requests - Hotel | $1,062.65 |
| 04/08/02 | Travel Expense: VENDOR: Carla Latuda; INVOICE#: | $302.71 |

040802; DATE: 4/8/2002 - To conduct a document
review at Cambridge regarding response to EPA's
information requests - meals

04/08/02      Travel Expense: VENDOR: Carla Latuda; INVOICE#:            $219.85
              040802-A; DATE: 4/8/2002 - To conduct document
              review at Cambridge regarding response to EPA's
              information requests - meals

We asked Holme to please review the entries listed and provide the number of days this professional was

at Cambridge so that we may assess the reasonableness of the expenses incurred.  Holme responded:

The specific entries identified in Paragraph 12 of the Report represent hotel and meal
expenses incurred by Ms. Latuda over the course of ten days.  Specifically:

a.    4/8/02 Travel Expense: Carla Latuda; Invoice **#040802**– Hotel
      Expense– This invoice for $1,062.65 represents Ms. Latuda's
      hotel expense for five (5) nights during the period of March 24 -
      29, 2002.  The average rate per night for this stay was $212.53.

b.    4/8/02 Travel Expense: Carla Latuda; Invoice**#040802-A**– Hotel
      Expense– This invoice for $1,062.65 represents Ms. Latuda's
      hotel expense for five (5) nights during the period of March 31 -
      April 4, 2002.   The average rate per night for this stay was
      $212.53.

c.    4/8/02 Travel Expense: Carla Latuda; Invoice **#040802**– Meal
      Expense– This invoice for $302.71 represents Ms. Latuda's meal
      expenses for five (5) days during the period of March 24 - 29,
      2002.  The average meal expense per day for this period was
      $60.54.

d.    4/8/02 Travel Expense: Carla Latuda; Invoice**#040802-A**– Meal
      Expense– This invoice for $219.85 represents Ms. Latuda's meal
      expenses for five (5) days during the period of March 31 - April
      4, 2002.  The average meal expense per day for this period was
      $43.97.

We accept this response and thus have no objection to these expenses.

11.    We calculated in our initial report that during the Application period, the average rate per

night paid by Holme professionals in Boston was $181.14.  We observed that four Holme professionals

seek reimbursement for what we calculate to be excessive hotel rates totaling $6,550.77.

\*      $222.64 per night

05/24/02        Travel Expense: VENDOR: Susan Haag; INVOICE#: 052802;        1,335.84
                DATE: 5/28/02 - Travel to Boston, MA - Document Review
                - 05/12/02-05/17/02-hotel

\*      $212.53 per night

05/24/02        Travel Expense: VENDOR: Joan L. Sherman; INVOICE#: 4/10/02        1,062.65
                DATE: 4/11/02 - 3/24/02 - 3/28/02 Supplemental Document Review
                In Cambridge & Winthrop Square 4/10/02 Hotel.

\*      $258.18 per night

05/31/02        Travel Expense: VENDOR: Troy R. Braegger; INVOICE#:        2,840.78
                060402; DATE: 6/04/02 - Travel expense related to  Document
                Review in Boston, MA for responsiveness to EPA information
                request and litigation discovery 05/20-05/31/02 - Hotel

\*      $218.58 per night

06/15/02        Travel Expense: VENDOR: Carla Latuda; INVOICE#: 061702;        1,311.50
                DATE: 6/17/02 - Travel expense - Cambridge, MA
                Regarding response to EPA's information requests
                June 10-June 15, 2002 - hotel

We asked Holme to please review these expense entries and explain why lower hotel rates could not be

obtained.  Holme responded:

> With respect to hotel expenses, hotel rates can vary substantially from time to time
> depending on the season, occupancy rates, convention activity, special events, and a
> number of other factors.   The variation in average rate per night paid by HRO
> professionals reflects these factors.   HRO has reviewed the specific entries noted in the
> Report and provides the following additional information with respect to these entries:
>> a.      5/24/02 Travel Expense: Susan Haag; Invoice #052802– Hotel
>>         Expense– This invoice for $1,335.84 represents Ms. Haag's hotel
>>         expense for twelve (12) nights during the period of <u>May 12 - 24,
>>         2002.</u> The average rate per night for this stay was $112.32. The
>>         rate Ms. Haag obtained for this stay is a special rate that is not
>>         ordinarily available.
>> b.      5/24/02 Travel Expense: Joan L. Sherman; Invoice– Hotel
>>         Expense– This invoice for $1,062.65 represents Ms. Sherman's
>>         hotel expense for five (5) nights during the period of <u>March 24 -
>>         March 29, 2002.</u>  The average rate per night for this stay was
>>         $212.53.  As noted in 12(a) above, this rate is consistent with the
>>         rate paid by Ms. Sherman during the same period.
>> c.      5/31/02 Travel Expense: Troy R. Braegger, Esq.; Invoice

#060402– Hotel Expense– This invoice for $2,8470.78 represents Mr. Braegger's hotel expense for thirteen (13) nights during the period of <u>May 19 - 31, 2002.</u> The average rate per night for this stay was $218.52

d.    6/15/02 Travel Expense: Carla Latuda; Invoice #061702– Hotel Expense– This invoice for $1,311.50 represents Ms. Latuda's hotel expense for six (6) nights during the period of <u>June 10 - 15, 2002.</u> The average rate per night for this stay was $218.50.

HRO maintains that the average rate per night incurred by these professionals during these periods was consistent with the rates available at other similar hotels and are reasonable. Hotel rooms are booked through HRO's travel agent who is instructed to find the lowest rate possible in the general vicinity of the document review. HRO's travel agent will provide an affidavit attesting to these procedures if requested.

We accept this response and thus we have no objection to these expenses.

12.    We noted in our initial report that Holme seeks reimbursement in the amount of $650.22 for what we calculate to be excessive meal expenses incurred by Susan Haag for May 5, 2002 through May 12, 2002 in Boston, MA.

05/24/02    Travel Expense: VENDOR: Susan Haag; INVOICE#: 052802;    $650.22
DATE: 5/28/02 - Travel to Boston, MA - Document Review
- 05/12/02-05/17/02-meals

We calculated that anywhere from $36.00 to $43.00 was spent per meal. Thus, we asked Holme to please explain why the bankruptcy estate should be liable for this expense. Holme responded:

HRO's Application contained an error with respect to the May 24, 2002 entry for Ms. Haag's meal expenses. Ms. Haag's $650.22 meal expense entry represents meal expenses for twelve (12) days during the period May 12 - May 24, 2002. Accordingly, Ms. Haag's average meal expense <u>per day</u> for this period was $54.19, which is well within HRO's averages for <u>daily</u> meal expenses.

We accept this response and thus we have no objection to these expenses.

13.    Similarly, we noted in our initial report that in the Application Holme seeks reimbursement

in the amount of $1,045.83 for what we calculated to be excessive meal expenses incurred by Keith

Trammell for May 19, 2002 through May 31, 2002 while in Boston, MA.

| | | |
|---|---|---|
| 06/03/02 | Other Meal Expenses: VENDOR: Keith Trammell; INVOICE#: 06/03/02; DATE:6/3/2002 - Denver, 5/19-5/31/02, Boston, MA, expenses incurred while reviewing and coding documents for responsiveness to EPA information requests and litigation discovery, Meals | $1045.83 |

We calculated that anywhere from $27.00 to $31.00 was spent per meal.  Thus, we asked Holme to

please explain why the bankruptcy estate should be liable for this expense.  Holme responded:

> Mr. Trammell's meal expense entry covers his personal meal expenses for thirteen (13) days, but also includes the meal expenses of several other HRO professionals during the period May 19 - 31, 2002.  A summary of Mr. Trammell's meal expenses during this period, attached as **Exhibit 2**, reflects that Mr. Trammell frequently paid the costs of other HRO professionals that joined him for meals.  If the costs of these additional meals were excluded from Mr. Trammell's expense entry, these meal expenses would have been separately submitted by other HRO professionals.

Holme's Exhibit 2 is attached hereto as Response Exhibit 2.  While we accept this response with regard

to the majority of the entries provided in Response Exhibit 2, there are three entries that seem excessive.

\*    5/21      Dinner with CSanchez, TRBraegger, JGBeasley and DPWall    $248.75

We calculate this to equate to $49.60 per person and recommend a reduction of $98.00 in expenses.

\*    5/25      Dinner with TRBraegger at Sage Restaurant                        $79.68
             (total $159.35, but half was for non-reimbursable guest)

We calculate this amount to equate to $39.84 per person and recommend a reduction of $19.68 in

expenses.

\*    5/24      Dinner with TRBraegger                                           $93.77

We calculate this amount to equate to $46.88 per person and recommend a reduction of $33.76 in

expenses.

Thus, we recommend a total reduction of $151.44 in expenses.

14.    We noted in our initial report that Holme seeks reimbursement in the amount of $100.00

for an airfare upgrade purchased by Carla Latuda.

| 06/15/02 | Travel Expense: VENDOR: Carla Latuda; INVOICE#: 061702; DATE: 6/17/02 - Travel expense - Cambridge, MA Regarding response to EPA's information requests June 10-June 15, 2002 - airfare upgrade | 100.00 |
|---|---|---|

The Guidelines II.E.1., states ". . .[f]actors relevant to a determination that the expense is proper include

the following: 1.  Whether the expense is reasonable and economical.  For example, first class and other

luxurious travel mode or accommodations will normally be objectionable."  We asked Holme to please

explain why this airfare upgrade should be reimbursed by the bankruptcy estate.  Holme responded:

> HRO's invoice detail contained within its Application misidentified Ms. Latuda's airfare
> expense of $100.00 as an "upgrade."  Ms. Latuda's $100.00 expense was a service fee
> charged by United Airlines to permit Ms. Latuda to alter her travel itinerary and was not
> an upgrade.

We accept this response and thus we have no objection to this expense.

## CONCLUSION

15.    Thus, we recommend approval of fees totaling $1,409,465.75 ($1,429,411.50 minus

$19,945.75) and costs totaling $157,891.48 ($158,522.92 minus $631.44) for Holme's services from

April 1, 2002, through June 30, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____

       Warren H. Smith
       Texas State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

       **FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 7th day of November, 2002.

_____
       Warren H. Smith

## SERVICE LIST

Notice Parties

**The Applicant**

Elizabeth K. Flaagan, Esq.
HOLME ROBERTS & OWEN, LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane

New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street

Wilmington, DE 19801                              844 King Street, Suite 2311
                                                  Wilmington, DE 19801


**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.

EXHIBIT A

| | | | | |
|---|---|---|---|---|
| 05/10/02 | WEP | Make two copies of CD "FOIA Request" (1.20); make two copies of CD "Year 2000 Medical Testing" (1.20); make two copies of CD "ATSDR Data Dictionary" (1.20). | 3.60 | 306.00 |
| 05/16/02 | WEP | . . . ; make one copy of CDS "DOJ001" through "DOJ0010" (4.30). | 7.30 | 620.50 |
| 05/17/02 | WEP | . . . make one copy of CDS "DOJ011" through "DOJ0012" (1.00); make one copy of CDS "WRG_009" and "WRG_011" through "WRG014" (3.5). | 7.50 | 637.50 |
| 05/21/02 | WEP | Make 5 copies of CD "Libby Asbestos 031502" (2.50); . . . | 7.50 | 637.50 |
| 05/24/02 | WEP | . . .;  Make one copy of CDs "DOJ001" through "DOJ004"  (4.00) | 7.00 | 595.00 |
| 05/28/02 | WEP | Make one copy of CDs "DOJ005" through "DOJ012"  (5.80); make one copy of the EPP and ECW disks (3 total) (1.5). | 7.30 | 620.50 |
| 05/29/02 | WEP | Make four copies of CDs "Volpe 1" through "Volpe 28". | 13.50 | 1,147.50 |
| 05/30/02 | WEP | Make four copies of CDs "DOJ001" through "DOJ012". | 8.50 | 722.50 |
| 06/20/02 | WEP | Make twelve copies of CD "AR Supplement #2 | 7.00 | 595.00 |
| 06/20/02 | WEP | Make one copy of CD "AR Supplement #2 | .80 | 68.00 |

EXHIBIT B

C      April 9, 2002, professionals KWL($350) and JDM($300) spent a total of 5.80 hours for a total expense to the estate of $1,870.00 preparing for and interviewing an expert.

| 04/09/02 | KWL | Prepare for meeting with risk expert (.60); interview potential risk expert (2.00);. . . | | |
| 2.60 | | | | 910.00 |
| 04/09/02 | JDM | Prepare for expert interview (1.0); expert interview (2.2); . . . | | |
| 3.20 | | | | 960.00 |

C      April 5, 2002, professionals KJC($275) and EES($280) spent a total of 2.80 hours for a total expense to the estate of $776.50 preparing for and attending the same meeting.

| 04/05/02 | KJC | Conference with potential accounting expert (1.50). | 1.50 | 412.50 |
| 04/05/02 | EES | Meeting with an additional potential accounting expert (1.30); . . . | 1.30 | 364.00 |

C      April 17, 2002, professionals KWL($350) and JDM($300) spent a total of 9.30 hours for a total expense to the estate of $3,090.00 preparing for and attending the same meeting.

| 04/17/02 | KWL | Meeting with potential risk experts (4.0); meeting with Richard Finke and Doug Cameron re same (2.0) . . . | 6.00 | 2100.00 |
| 04/17/02 | JDM | Prepare for meeting with potential expert (1.0); meet with potential expert (2.3) . . . | 3.30 | 990.00 |

C      April 24, 2002, professionals KWL($275), JDM($300), KJC($275) and EES($280) spent a total of 10.7 hours for a total expense to the estate of $3,019.50 preparing for and attending the same meeting.

| 04/24/02 | KWL | Meeting with Dale Jensen and Kurt Fessler re expert issues (2.00); meet with JDMcCarthy, KJCoggon and EEStevenson re expert issues (1.00). . . | 3.00 | 825.00 |

| 04/24/02 | JDM | . . . prepare for meeting with accounting experts (0.5); meet with accounting experts (2.1). . . | 2.60 | 780.00 |
|---|---|---|---|---|
| 04/24/02 | KJC | . . . conference with KWLund, JDMcCarthy, EEStevenson and expert re meeting with client (2.70). . . | 2.70 | 742.50 |
| 04/24/02 | EES | . . . strategy meeting with accounting experts (2.40). . . | 2.40 | 672.00 |

C    April 30, 2002, professionals KWL($275), JDM($300)and EES($280) spent a total of 15.10 hours for a total expense to the estate of $4,308.00 preparing for and attending the same meeting.

| 04/30/02 | KWL | Meeting with Corcoran, Siegel and Emmett re case strategy (1.4); meeting with various case experts re case preparation and defense (5.0); . . . | 6.40 | 1760.00 |
|---|---|---|---|---|
| 04/30/02 | JDM | Prepare for meeting with client (0.9). . . meet with client and experts (4.7); . . . | 5.60 | 1680.00 |
| 04/30/02 | EES | . . . attend client case strategy meeting (3.10); . . . | 3.10 | 868.00 |

C    June 14, 2002, professionals KJC($275) and EES($280) spent a total of 3.00 hours for a total expense to the estate of $832.00 preparing for and attending the same meeting.

| 06/14/02 | KJC | . . . conference with accounting expert re progress and issues (1.60). | 1.60 | 440.00 |
|---|---|---|---|---|
| 06/14/02 | EES | Meeting with KJCoggon and accounting experts (1.40); . . . | 1.40 | 392.00 |

C    May 16 and 17, 2002, professionals KWL($350.), KJC($275.) and JDM($300.) spent a total of 17.50 hours for a total expense to the estate of $5,555.00 preparing for and attending the same meeting.

| 05/16/02 | KWL | Prepare for May 17, 2002 meeting with experts, G. Graham, and Jay Hughes (4.40.). . . | | |
|---|---|---|---|---|
| | | [4.40] | | [1,540.00] |
| 05/16/02 | KJC | Conference with KWLund re project status, schedule and agenda for May 17, | | |

2002 meeting (0.60). . .

[.60]                                                                                                    [165.00]

05/17/02        KWL   Conference with W. Corcoran, G. Graham, R. Emmett, D. Siegel, J. Hughes,
                KJCoggon and JDMcCarthy re case strategy and update (4.00). . .

[4.00]                                                                                                   [1,400.00]

05/17/02        JDM     Prepare for meeting with client and G. Graham (0.5); meet with client, G.
                Graham and J. Hughes re case status (4.0).

[4.00]                                                                                                   [1,350.00]

05/17/02        KJC     Conference with W. Corcoran, G. Graham, R. Emmett, D. Siegel and J.
                Hughes re case strategy and update (4.00); . . .

[4.50]                                                                                                   [1,100.00]

EXHIBIT C

| | | |
|---|---|---|
| 04/09/02 | Travel Expense: VENDOR: Brent A. Tracy; INVOICE#: 4/9/02; DATE: 4/9/02 - Denver, 3/3-3/7-02, Boston, MA, W.R. Grace Document Review, B. Tracy | $1,119.58 |
| 04/09/02 | Travel Expense: VENDOR: Brent A. Tracy; INVOICE#: APRIL 9, 2002; DATE: 4/9/02 - Denver, 3/31-4/5/02, Boston, MA, W.R. Grace Document Review, B. Tracy | $1,042.10 |
| 04/11/02 | Travel Expense: VENDOR: Natalie Aberle; INVOICE#: 3/27/02; DATE: 4/11/02 - 3/10/2002-3/22/2002, Boston, MA, Supplemental document review in Cambridge | $15.33 |
| 04/11/02 | Travel Expense: VENDOR: Natalie Aberle; INVOICE#: 3/27/02; DATE: 4/11/02 - 3/10/2002-3/22/2002, Boston, MA, Supplemental document review in Cambridge | $192.00 |
| 04/11/02 | Travel Expense: VENDOR: Natalie Aberle; INVOICE#: 3/27/02; DATE: 4/11/02 - 3/10/2002-3/22/2002, Boston, MA, Supplemental document review in Cambridge | $78.00 |
| 04/22/02 | Travel Expense: VENDOR: Mary E. Floyd; INVOICE#: 4/22/02; DATE: 4/22/2002 - Denver, 4/13-4/19/02, Boston, MA, Travel to Work at Client's Reviewing Production Documents, M. Floyd | $1,230.08 |
| 05/10/02 | Travel Expense: VENDOR: Joan L. Sherman; INVOICE#: 5/10/02; DATE: 5/10/2002 - Denver, 4/28-5/03/02, Boston, MA, Supplemental Document Review in Cambridge and Winthrop Square, J. Sherman | $1,340.09 |
| 05/15/02 | Travel Expense: VENDOR: Brent A. Tracy; INVOICE#: 5/15/02; DATE: 5/15/2002 - Denver, 5/5-5/10/02 Boston, MA, W.R. Grace Document Review, B. Tracy | $893.18 |
| 04/11/02 | Travel Expense: VENDOR: Joan L. Sherman; INVOICE#: 4/10/02; DATE: 4/11/02 - 3/24/02 - 3/28/02 Supplemental Document Review in Cambridge and Winthrop Square | $34.00 |
| 04/11/02 | Travel Expense: VENDOR: Joan L. Sherman; INVOICE#: 4/10/02; DATE: 4/11/02 - 3/24/02 - 3/28/02 Supplemental Document Review in Cambridge and Winthrop Square | $35.77 |
| 04/11/02 | Travel Expense: VENDOR: Joan L. Sherman; INVOICE#: 4/10/02; DATE: 4/11/02 - 3/24/02 - 3/28/02 Supplemental Document Review in Cambridge and Winthrop Square | $81.00 |
| 04/11/02 | Travel Expense: VENDOR: Jennifer Hall; INVOICE#: 4/05/02; DATE: 4/11/02 - 3/18/02 - 3/22/02 Review Documents in response to requests and in support of affirmative defenses. | $43.00 |
| 04/11/02 | Travel Expense: VENDOR: Jennifer Hall; INVOICE#: | $25.55 |

| | | |
|---|---|---|
| | 4/11/02; DATE: 4/11/02 - 3/18/02 - 3/22/02 Review Documents in response to requests and in support of affirmative defenses. | |
| 04/11/02 | Travel Expense: VENDOR: Jennifer Hall; INVOICE#: 4/05/02; DATE: 4/11/02 - 3/18/02 - 3/22/02 Review Documents in response to requests and in support of affirmative defenses. | $49.00 |
| 04/18/02 | Travel Expense: VENDOR: Joan L. Sherman; INVOICE#: 4/18/02; DATE: 4/18/02 - Denver, 4/07-4/12/02 Supplemental Document Review in Cambridge and Winthrop Square, J. Sherman | $1,793.67 |
| 05/30/02 | Travel Expense: VENDOR: Joan L. Sherman; INVOICE#: 5/30/02; DATE: 5/30/02 - Denver,5/20-5/24/02,Boston, MA Supplemental Document Review in Cambridge and Winthrop Square, Travel | $1,670.02 |
| 05/30/02 | Travel Expense: VENDOR: Joan L. Sherman; INVOICE#: 5/30/02; DATE: 5/30/02 - Denver,5/13-5/17/02,Boston, MA Supplemental Document Review in Cambridge and Winthrop Square, Travel | $1,310.97 |
| 06/05/02 | Parking:VENDOR: Decker, Lisa Schuh; INVOICE#: 6/5/02; DATE: 6/5/2002- Denver,5/30-5/31/02,Travel to Seattle to meet with Michael Hutchinson | $678.23 |
| 06/05/02 | Other Expenses: VENDOR: Katheryn J. Coggon; INVOICE#: 6/12/02; DATE: 6/12/02 - Travel to Boulder regarding Boulder Document production 05/28, 06/03 and 06/05/02 | $65.70 |
| 05/30/02 | Travel Expense: VENDOR: James G. Beasley; INVOICE#: 5/30/02; DATE: 5/30/02 - Denver, Travel to Boston, MA 5/19-5/24/02, Travel | $1,753.27 |
| 06/03/02 | Travel Expense: VENDOR: Imelda C. Mullholland; INVOICE#:6/03/02; DATE: 6/3/02 - Denver, 5/11-5/17/02, Travel Expenses to Conduct Response to EPA 104(E) Information Request, Travel Expenses | $1,006.52 |
| 06/03/02 | Travel Expense: VENDOR: Imelda C. Mullholland; INVOICE#:6/03/02; DATE: 6/3/02 - Denver, 5/11-5/17/02, Travel Expenses to Conduct Response to EPA 104(E) Information Request, Travel Expenses | $709.50 |
| 06/03/02 | Travel Expense: VENDOR: Keith Trammell; INVOICE#:6/03/02; DATE: 6/3/02 - Denver, 5/19-5/31/02, Boston, MA, Expenses incurred while reviewing and coding documents for responsiveness to EPA information requests and Litigation discovery, Travel Expenses | $3,022.11 |
| 06/04/02 | Travel Expense: VENDOR: Sanchez, Corey R.; INVOICE #:6/04/2002; DATE: 6/4/02 - Denver, 5/15-5/31/02, Work on Grace Project in Boston | $4,031.64 |

| | | |
|---|---|---|
| 06/04/02 | Travel Expense: VENDOR: Travis T. Tygart; INVOICE#:6/4/02F; DATE: 6/4/02 - Colorado Springs, 5/26-5/30/02, Travel to Boston to review Documents For W.R. Grace/Libby, Montana Asbestos case, Travel Expenses | $1,868.73 |
| 06/10/02 | Travel Expense: VENDOR: Constance L. Rogers; INVOICE#:6/10/02; DATE: 6/10/02- Denver, 5/28-6/03/02, Expenses incurred for Document review in Boston for WRGrace, Travel Expenses | $562.95 |
| 06/10/02 | Travel Expense: VENDOR: Constance L. Rogers; INVOICE#:6/10/02; DATE: 6/10/02- Denver, 5/28-6/03/02, Expenses incurred for Document review in Boston for WRGrace, Travel Expenses | $1,980.33 |
| 06/18/02 | Travel Expense: VENDOR: Joan L. Sherman; INVOICE#:6/18/02; DATE: 6/18/02- Denver, 6/10-6/17/02, Boston, MA, Supplemental document review in Cambridge and Winthrop Square, Travel Expenses | $1,692.30 |
| 06/25/02 | Travel Expense: VENDOR: Brent A. Tracy; INVOICE#:6/25/02; DATE: 6/25/02- Denver, 5/27-5/31/02, Boston, MA, Expenses incurred for WR Grace Document review, Travel Expenses Travel Expenses | $798.13 |

Response Exhibit 1

| | REPORT | | ADDITIONAL DETAIL |
|---|---|---|---|
| 04/09/02 | Travel Expense: VENDOR: Brent A. Tracy; INVOICE#: 4/9/02; DATE: 4/9/2002 - Denver, 3/3-3/7/02, Boston, MA, W.R. Grace Document Review, B. Tracy | 1,119.58 | Hotel; Phone; Taxi; Subway; Mileage (03/03/02 to 03/07/02) |
| 04/09/02 | Travel Expense: VENDOR: Brent A. Tracy; INVOICE#: APRIL9,2002; DATE: 4/9/2002 - Denver, 3/31-4/5/02, Boston, MA, W.R. Grace Document Review, B. Tracy | 1,042.10 | Hotel; Phone; Taxi (03/31/02 to 04/05/02) |
| 04/11/02 | Travel Expense: VENDOR: Natalie Aberle; INVOICE#: 3/27/02; DATE: 4/11/2002 - 3/10/2002- 3/22/2002 Boston,MA. Supplemental document review in Cambridge. | 15.33 | Auto Mileage |
| 04/11/02 | Travel Expense: VENDOR: Natalie Aberle; INVOICE#: 3/27/02; DATE: 4/11/2002 - 3/10/2002- 3/22/2002 Boston,MA. Supplemental document review in Cambridge. | 192.00 | Parking (03/10/02 to 03/22/02) |
| 04/11/02 | Travel Expense: VENDOR: Natalie Aberle; INVOICE#: 3/27/02; DATE: 4/11/2002 - 3/10/2002- 3/22/2002 Boston,MA. Supplemental document review in Cambridge. | 78.00 | Taxis; Tips (03/10/02 to 03/22/02) |
| 04/22/02 | Travel Expense: VENDOR: Mary E. Floyd; INVOICE#: 4/22/02; DATE: 4/22/2002 - Denver, 4/13-4/19/02, Boston, MA, Travel to Work at Client's Reviewing Production Documents, M. Floyd | 1,230.08 | Hotel; phone (04/13/02 to 04/19/02 |
| 04/11/02 | Travel Expense: VENDOR: Joan L. Sherman; INVOICE#: 4/10/2002; DATE: 4/11/2002 - 3/24/02 - 3/28/02 Supplemental document review in Cambridge and Winthrop Square | 34.00 | Taxis; Tips |
| 04/11/02 | Travel Expense: VENDOR: Joan L. Sherman; INVOICE#: 4/10/2002; DATE: 4/11/2002 - 3/24/02 - 3/28/02 Supplemental document review in Cambridge and Winthrop Square | 35.77 | Auto Mileage |

| 04/11/02 | Travel Expense: VENDOR: Joan L. Sherman; INVOICE#: 4/10/2002; DATE: 4/11/2002 - 3/24/02 - 3/28/02 Supplemental document review in Cambridge and Winthrop Square | 81.00 | Parking |
|---|---|---|---|
| 04/11/02 | Travel Expense: VENDOR: Jennifer Hall; INVOICE#: 4/5/02; DATE: 4/11/2002 - 3/18/2002-3/22/2002.  Review documents in response to discovery requests and in support of affirmative defenses. | 43.00 | Taxis; Tip |
| 04/11/02 | Travel Expense: VENDOR: Jennifer Hall; INVOICE#: 4/5/02; DATE: 4/11/2002 - 3/18/2002-3/22/2002.  Review documents in response to discovery requests and in support of affirmative defenses. | 25.55 | Mileage |
| 04/11/02 | Travel Expense: VENDOR: Jennifer Hall; INVOICE#: 4/5/02; DATE: 4/11/2002 - 3/18/2002-3/22/2002.  Review documents in response to discovery requests and in support of affirmative defenses. | 49.00 | Parking |
| 04/18/02 | Travel Expense: VENDOR: Joan L. Sherman; INVOICE#: 4/18/02; DATE: 4/18/2002 - Denver, 4/7-4/12/02, Supplemental Document Review in Cambridge and Wintrop Square, J. Sherman | 1,793.67 | Airfare; Hotel; Telephone; Taxis; Tips (04/07/02 to 04/12/02) |
| 05/10/02 | Travel Expense: VENDOR: Joan L. Sherman; INVOICE#: .05/10/02; DATE: 5/10/2002 - Denver, 4/28-5/3/02,, Boston MA, Supplemental Document Review in Cambridge and Winthrop Square, J. Sherman | 1,340.09 | Airfare; Hotel; Meals (04/28/02 to 05/03/02) |
| 05/15/02 | Travel Expense: VENDOR: Brent A. Tracy; INVOICE#: 05/15/02; DATE: 5/15/2002 - Denver, 5/5-5/10/02, Boston, MA, W.R. Grace Document Review, B. Tracy | 893.18 | Hotel Taxis; Tips (05/05/02 to 05/10/02) |

| 05/30/02 | Travel Expense: VENDOR: Joan L. Sherman; INVOICE#: 05/30/02; DATE: 5/30/2002 - Denver, 5/20-5/24/02, Boston, MA, Supplemental Document Review in Cambridge and Winthrop Square, Travel | 1,670.02 | Airfare; Hotel; Taxis; Tips; Subway (05/20/02 to 05/24/02) |
|---|---|---|---|
| 05/30/02 | Travel Expense: VENDOR: Joan L. Sherman; INVOICE#: 05/30/2002; DATE: 5/30/2002 - Denver, 5/13-5/17/02, Boston, MA, Supplemental Document Review in Cambridge and Wintrop Square, Travel | 1,310.97 | Airfare; Hotel; Taxis; Tips; Subway (05/13/02 to 05/17/02) |
| 06/05/02 | Parking: VENDOR: Decker, Lisa Schuh; INVOICE#: 06/05/02; DATE: 6/5/2002 - Denver, 5/30-5/31/02, Travel to Seattle to meet with Michael Hutchinson | 15.00 | Parking |
| 06/05/02 | Travel Expense: VENDOR: Decker, Lisa Schuh; INVOICE#: 06/05/02; DATE: 6/5/2002 - Denver, 5/30-5/31/02, Travel to Seattle to meet with Michael Hutchinson | 678.23 | Travel Expenses to Seattle (05/30/02) |
| 05/30/02 | Travel Expense: VENDOR: James G Beasley; INVOICE#: 05/30/02; DATE: 5/30/2002 - Denver, Travel to Boston, MA, 5/19-5/24/02, Travel | 1,753.27 | Airfare; Hotel; Parking (05/19/02 to 05/29/02) |
| 06/03/02 | Travel Expense: VENDOR: Imelda C. Mulholland; INVOICE#: 06/03/02; DATE: 6/3/2002 - Denver, 5/11-5/17/02, Travel Expenses to Conduct Response to EPA 104 (E) Information Request, Travel Expenses | 1,006.52 | Hotel; Taxis; Auto Mileage (05/11/02 to 05/17/02) |
| 06/03/02 | Travel Expense: VENDOR: Imelda C. Mulholland; INVOICE#: 6/3/02; DATE: 6/3/2002 - Denver, 5/27-5/31/02, Travel Expenses to Conduct Response to EPA 104(E) Information Request, Travel Expenses | 709.50 | Hotel; Taxis; Auto Mileage (05/27/02 to 05/31/02) |

| 06/03/02 | Travel Expense: VENDOR: Keith Trammell; INVOICE#: 06/03/02; DATE: 6/3/2002 - Denver, 5/19-5/31/02, Boston, MA, Expenses incurred while reviewing and coding documents for responsiveness to EPA information requests and litigation discovery, Travel Expenses | 3,022.11 | Hotel; Taxis; Tips (05/19/02 to 05/31/02) |
|---|---|---|---|
| 06/04/02 | Travel Expense: VENDOR: Sanchez, Corey R.; INVOICE#: 06/04/02; DATE: 6/4/2002 - Denver, 5/15-5/31/02, Work on Grace Project in Boston | 4,031.64 | Airfare; Hotel; Taxis; Tips (05/15/02 to 05/31/02) |
| 06/04/02 | Travel Expense: VENDOR: Travis T. Tygart; INVOICE#: 06/04/02F; DATE: 6/4/2002 - Colorado Springs, 5/26-5/30/02, Travel to Boston to review Documents for W.R. Grace/Libby, Montana Asbestos case, Travel Expenses | 1,868.73 | Airfare; Hotel; Taxis; Tips; Parking (05/26/02 to 05/30/02) |
| 06/10/02 | Travel Expense: VENDOR: Constance L Rogers; INVOICE#: 06/10/02; DATE: 6/10/2002 - Denver, 5/28-6/3/02, Expenses incurred for Document review in Boston for WRGrace, Travel Expenses | 562.95 | Hotel; Taxis; Tips (05/28/02 to 06/03/02) |
| 06/10/02 | Travel Expense: VENDOR: Constance L Rogers; INVOICE#: 06/10/2002; DATE: 6/10/2002 - Denver, 5/13-5/22/02, Travel Expenses for Document review in Boston for WRGrace, Travel Expenses | 1,980.33 | Hotel; Taxis; Tips; Subway (05/13/02 to 05/22/02) |
| 06/18/02 | Travel Expense: VENDOR: Joan L. Sherman; INVOICE#: 06/18/02; DATE: 6/18/2002 - Denver, 6/10-6/17/02, Boston, MA, Supplemental document review in Cambridge and Winthrop Square, Travel Expenses | 1,692.30 | Airfare; Hotel; Taxis; Tips; Parking (06/10/02 to 06/17/02) |
| 06/25/02 | Travel Expense: VENDOR: Brent A. Tracy; INVOICE#: 06/25/02; DATE: 6/25/2002 - Denver, 5/27-5/31/02, Boston, MA, Expenses for W.R. Grace document review, Travel Expenses | 798.13 | Hotel; Taxis; Tips; Parking (05/27/02 to 05/31/02) |

| 06/05/02 | Other Expenses: VENDOR: Katheryn J. Coggon; INVOICE#: 061202; DATE: 6/12/2002  -  Travel to Boulder regardding Boulder document production 05/28,06/03 and 06/05/2002 | 65.70 | Auto Mileage (05/28/02 to 06/05/02) |

Response Exhibit 2

**Meal Expense Summary**

<u>Boston Trip</u>:     Left Denver 5/19/02
               Returned to Denver 5/31/02

Bill to:       04339-00400

| <u>Date</u> | <u>Receipt Number & Description</u> | <u>Expense</u> |
|---|---|---|
| 5/19 | Dinner with JGBeasley and TRBraegger | $ 30.88 |
| 5/20 | Lunch at Lunch at W.R. Grace cafeteria | $ 3.85 |
| 5/20 | Dinner with DPWall and CSanchez | $ 91.53 |
| 5/21 | Lunch at W.R. Grace cafeteria | $ 3.65 |
| 5/21 | Dinner with CSanchez, TRBraegger, JGBeasley and DPWall | $ 248.75 |
| 5/22 | Breakfast at Starbucks | $ 5.46 |
| 5/22 | Lunch at W.R. Grace cafeteria (no receipt) | $ 5.00 |
| 5/23 | Lunch at W.R. Grace cafeteria | $ 4.80 |
| 5/24 | Lunch purchase at Whole Foods, Cambridge | $ 12.38 |
| 5/24 | Dinner with TRBraegger | $ 93.77 |
| 5/25 | Dinner with TRBraegger at Sage Restaurant (total $159.35, but half was for non-reimbursable guests) | $ 79.68 |
| 5/27 | Breakfast at Starbucks (total $7.19, but $2.55 was for non-reimbursable guest) | $ 4.64 |
| 5/27 | Lunch at Artu Restaurant (total $48.16, but half was for non-reimbursable guest) | $ 24.08 |
| 5/27 | Film in lieu of dinner with CSanchez and TRBraegger | $ 20.00 |
| 5/28 | Breakfast and lunch at W.R. Grace cafeteria (no receipt) | $ 10.20 |
| 5/29 | Lunch at W.R. Grace cafeteria | $ 5.20 |
| 5/30 | Lunch at W.R. Grace cafeteria | $ 4.00 |

| Date | Receipt Number & Description | Expense |
|------|------------------------------|---------|
| 5/31 | Breakfast with TRBraegger | $      35.09 |
| 5/31 | Dinner with TRBraegger and CSanchez | $      86.19 |
|  | Total Meals at Omni Parker House (includes room service, refreshments and 3 breakfasts with TRBraegger) | $     276.68 |
|  | **Total** | **$   1,045.83** |