## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING
### FEE APPLICATION OF BILZIN SUMBERG DUNN BAENA
### PRICE & AXELROD LLP FOR THE FIFTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Fee Application of Bilzin Sumberg Dunn Baena Price & Axelrod LLP for the Fifth Interim Period.

### BACKGROUND

1.      Bilzin Sumberg Dunn Baena Price & Axelrod LLP ("Bilzin Sumberg") was retained as counsel to the official committee of asbestos property damage claimants.  In the Application, Bilzin Sumberg seeks approval of fees totaling $230,759.40 and costs totaling $69,271.20 for its services from April 1, 2002, through June 30, 2002.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30,

1996, (the "Guidelines"), as well as for consistency with precedent established in the United States

Bankruptcy Court for the District of Delaware, the United States District Court for the District of

Delaware, and the Third Circuit Court of Appeals.  We served on Bilzin Sumberg an initial report

based on our review, and received a response from Bilzin Sumberg, portions of which response are

quoted herein.

## DISCUSSION

### General Issues

3.      In our initial report , we noted that in the April and May portions of the Application,

Bilzin Sumberg failed to provide a separate category for its own fee application preparation, as the

category of "Fee Applications" that was used in these months  included time spent reviewing the fee

applications of others.  We further note that this was corrected in the June Application. Guidelines

Rule, II.D.1. states "[a] separate project category should be used for ... fee application preparation."

 We note that Bilzin Sumberg is now in compliance with this Guideline.

4.      In our initial report, we noted that the time entries were generally adequately detailed

and devoid of lumping, with the occasional exception of lumped entries by  RWT, JMS, LMF and

SLB.  The Guidelines Rule, II.D.5. provides that "[s]ervices should be noted in detail and not

combined or "lumped" together, with each service showing a separate time entry".  Thus we asked

Bilzin Sumberg to please advise these professionals to avoid lumped time entries in the future and

Bilzin Sumberg stated that it would do so.

5.      We note that Bilzin Sumberg states, in footnote 1 to the Application:

> Pursuant to Judge Wolin's July 10, 2002 Order withdrawing the
> reference from the Bankruptcy Court with respect to *all* fees and
> expenses related to the fraudulent transfer action against Sealed Air

> Corporation and Fresenius Medical Care, Inc., the Applicant is concurrently herewith filing a fee application in the District Court for the fees and expenses incurred in such actions for the months of May and June, 2002. Fees and expenses incurred in connection with such actions for the month of April, 2002 were filed prior to the Order and these are included in this Application. (*emphasis added*)

While we believed we understood that the fees and expenses with regard to the fraudulent transfer litigation for the month of April were filed prior to the Order entered on July 10, 2002, we questioned whether this fact alone removed April fees and expenses from the ambit of the Order. Thus we asked Bilzin Sumberg to explain why the July 10, 2002 Order is not applicable to Bilzin Sumberg's April, 2002 fees and expenses involved in the fraudulent transfer litigation. Bilzin Sumberg responded as follows:

> At the time of filing our monthly fee application for April, 2002, Judge Wolin's July 10, 2002 Order withdrawing the reference with respect to fees and expenses incurred in the fraudulent transfer litigation had not been entered, and thus, we included our fees and expenses incurred in the fraudulent transfer litigation during April, 2002 in our April monthly statement in the main case. Since the entry of the July 10, 2002 Order, all fees and expenses incurred in the fraudulent transfer litigation have been filed in the adversary proceeding. It is our impression that the July 10, 2002 Order only applied to fees that had not yet been applied for. If the Fee Auditor's view is that the Order applied to all time incurred in the fraudulent transfer litigation from April, 2002 forward, we can abide by that view and file an amended application for our April fees and expenses.[1]

We accept this explanation with regard to the April fees and expenses, however we note that the following expenses for expert witness service regarding the fraudulent transfer litigation were included in the May fee application, even though Bilzen Sumber is submitting the associated fees to Judge Wolin for his review:

---

[1]    In reviewing the docket for the main case and the adversary proceeding, it appears that none of the professionals involved in both matters filed a separate monthly statement in the adversary proceeding for fees and expenses incurred in April 2002, and that separate monthly statements commenced in May, 2002.

| 05/31/02 | Professional Services Fraudulent Transfer Expert Witness Service Provided 04/27/02 - 05/24/02 | $39,266.15 |
| 05/31/02 | Professional Services Services Rendered 03/06/02 - 05/01/02 Expert Fees 7 Expenses, Invoice # 2104, Date 5/31/02 - Client -15537 Project #1466 | 1,247.25 |
| 05/31/02 | Professional Services Services Rendered 05/01/02 - 05/31/02 Expert Fees & Expenses, Invoice #0005025; Date 5/31/02 Client - 15537 | 1,807.16 |
| 05/31/02 | Professional Services Services through 05/14/02 - Vendor: Expert Fees & Expenses; Invoice #: 1140632; Date 5/31/02 Client - 15537 | 3,000.00 |
| 05/31/02 | Professional Services Services through 05/20/02 - Vendor: Expert Fees & Expenses; Invoice #: 1140638; Date: 5/31/02 Client - 15537 | 2,400.00 |

We believe that expenses should be reviewed in conjunction with their related fees, and thus these expenses should be submitted to Judge Wolin for approval.  Thus, without passing judgement on the merits of these expenses, we recommend a reduction of $47,720.56 in expenses.

6.     In our initial report we noted that  the summary portion of the Application provides for the project category "Fraudulent Transfer Litigation" for a total of 427.9 hours and $124,434.00 which amounts are equal to that of the April invoice for this same category.  However, Exhibit "B"of the Application, entitled , SUMMARY OF PRINCIPAL SERVICES RENDERED FOR THE PERIOD OF APRIL 1, 2002 THROUGH JUNE 30, 2002, provided a brief description of each category with the exception of "Fraudulent Transfer Litigation".  Thus we asked Bilzin Sumberg to please explain why this category was included in the total fees but not in Exhibit "B" of the Application.  Bilzin Sumberg response is provided below as well as in Response Exhibit 1.

The narrative portion of the fee detail incurred in the "Fraudulent Transfer Litigation" matter for April 2002 was not included in Exhibit "B" to the Fifth Interim Application due to the fluid nature of the adversary proceeding.  The description of the fees and expenses incurred in the Fraudulent Transfer Litigation during the Fifth Interim Period could not be separated by month, and thus, a full description of all

> fees and expenses incurred in the Fraudulent Transfer Litigation was included in the interim quarterly application filed in the adversary proceeding. For the Fee Auditor's convenience, the description that was set forth in the adversary proceeding quarterly fee application is attached hereto as Exhibit "1."

We appreciate this explanation, and have no objection to these fees.

7.    In our initial report we noted that Bilzin Sumberg seeks reimbursement in the amount of $4,531.60 for lodging and meals. We observed that a number of these entries fail to provide the number of days in transit, thus making it impossible to determine the reasonableness of the expenses involved. Thus we asked Bilzin Sumberg to provide further information regarding the number of days per stay at hotels as well as the number of meals (or days) involved so that we could analyze the reasonableness of these expenses. Bilzin Sumberg's response is provided in Response Exhibit 2. We appreciate the additional information, but we believe the lodging expense on 4/15/02 for $500.30 is unnecessarily expensive, and therefore recommend a reduction of $100.00 in expenses.

<u>Specific Time and Expense Entries</u>

8.    In our initial report we noted on five separate occasions during the Application period that multiple professionals attended the same hearing or meeting for a total of 19.5 hours and a total expense to the estate of $29,516.90. (See Exhibit A). According to Local Rule 2016-2(d)(ix), "[t]he activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role." The matter of multiple professionals, is also addressed in the Guidelines, Paragraph II.D.5.: "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." We note that while there were other instances of multiple attendees in the Application, these were adequately explained in the Application, but the Application was

silent with regard to the meetings and hearings listed in Exhibit A.    Thus we asked Bilzin Sumberg

to review Exhibit A and explain the need for multiple professionals at the meetings and hearings

listed.  Bilzin Sumberg's response is provided in Response Exhibit 3.  We accept these explanations

and have no objections to these fees.

   9.  In our initial report we noted that between June 5, 2002 and June 14, 2002

professionals RWT(390) and JK(260) spent a total of 13.8 hours for a total expense to the estate of

$4,277.00 on non-working travel.  These time entries are provided below.

| 06/05/02 | RWT | 3.80 | 1,482.00 | Travel to Newark (7.6) |
|----------|-----|------|----------|------------------------|
| 06/06/02 | RWT | 2.20 | 858.00 | Travel to Miami (4.4) |
| 06/07/02 | JK | 1.00 | 260.00 | Car travel to and from W.R. Grace offices in Boca Raton for insurance coverage meeting (2.0) |
| 06/13/02 | RWT | 2.20 | 858.00 | Travel to Newark (4.4) |
| 06/14/02 | RWT | 2.10 | 819.00 | Trave to home (4.2) |

The time is billed at the appropriate 50% of the normal rate.  However, there were no corresponding

time entries for the dates involved.  Nor was there enough detail in the expense entries to adequately

explain the purpose and necessity for these trips.  Thus we asked Bilzin Sumberg to review the

entries provided below and explain the purpose and necessity for each of the trips listed.   Bilzin

Sumberg's response is provided below and in Response Exhibit 4.:

    The Fee Auditor notes that the travel entries of Messrs. Turken and Keusch
between June 5, 2002 and June 14, 2002 do not contain corresponding time entries
for work conducted on the applicable dates. The Fee Auditor is correct that there are
no corresponding entries in the fee detail that was filed in the main case.  However,
the travel entries at issue relate solely to the fraudulent transfer litigation, and thus,
the corresponding entries appear in the fee detail filed in the adversary proceeding for
the month of June 2002.   There are corresponding entries for Messrs. Turken and
Keusch for the applicable dates copies of which are attached hereto as Exhibit "3".
(Response Exhibit 4)

As the time entries for the work undertaken on these dates were submitted to Judge Wolin, we

believe that these fees should also be submitted to Judge Wolin.  Thus, without passing judgment

on the merits of these fees, we recommend a reduction of $4,277.00 in fees.

      10.    In our initial report we noted in the Application that Bilzin Sumberg seeks

reimbursement in the amount of $25,094.25 for airfare.  Of this amount there were seven fares

totaling $7,688.00 which could be excessive.  The entries are provided below.

| | | |
|---|---|---|
| 04/18/02 | Airfare TRAVEL TO/FROM NY - PAYEE: TRAVEL VENTURES; REQUEST#:29069; DATE: 4/18/02 | $1,693.50 |
| 04/18/02 | Airfare TRAVEL TO/FROM NY - PAYEE: TRAVEL VENTURES; REQUEST#:29069; DATE: 4/18/02 | $1,693.50 |
| 05/02/02 | Airfare TRAVEL TO/FROM PHILADELPHIA - VENDOR: TRAVEL VENTURES; INVOICE#:87019; DATE: 4/30/02 CLIENT - 15547 | $1,367.00 |
| 05/02/02 | Airfare TRAVEL FROM MIAMI TO PHILADELPHIA - VENDOR: TRAVEL VENTURES; INVOICE#:87017; DATE: 4/30/02 CLIENT - 15547 | $702.00 |
| 05/02/02 | Airfare TRAVEL MIAMI TO PHILADELPHIA - VENDOR: TRAVEL VENTURES; INVOICE#:87020; DATE: 4/30/02 CLIENT - 15547 | $702.00 |
| 05/03/02 | Airfare TRAVEL FROM PHILADELPHIA - VENDOR: TRAVEL VENTURES; INVOICE#:87018; DATE: 4/30/02 CLIENT - 15547 | $765.00 |
| 05/03/02 | Airfare TRAVEL FROM PHILADELPHIA TO MIAMI - VENDOR: TRAVEL VENTURES; INVOICE#:87021; DATE: 4/30/02 CLIENT - 15547 | $765.00 |

The Guidelines II.E.1., states ". . .[f]actors relevant to a determination that the expense is proper

include the following:  Whether the expense is reasonable and economical.  For example, first class

and other luxurious travel mode or accommodations will normally be objectionable."  Thus we asked

Bilzin Sumberg to explain why lower fares could not be obtained for the flights listed and to provide

assurances that only coach class fares are purchased by Bilzin Sumberg in connection with this case.

Bilzin Sumberg responded as follows:

> The Fee Auditor has asked for our assurance that all of the airline tickets referenced
> in Paragraph 11 were for coach tickets.  We have reviewed the applicable tickets and
> can assure the Fee Auditor that all such tickets were indeed for coach fares.

We accept this response and thus have no objections to these expenses.

## CONCLUSION

11.     Thus, we recommend approval of fees totaling $226,482.40 ($230,759.40 minus

$4,277.00) and expenses totaling $21,450.64 ($69,271.20 minus $47,820.56) for Bilzin Sumberg's

services from April 1, 2002, through June 30, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
        Warren H. Smith
        Texas State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 12th day of November, 2002.

_____
Warren H. Smith

## SERVICE LIST

Notice Parties

**The Applicant**

Scott L. Baena
Jay M. Sakalo
BILZIN SUMBERG DUNN BAENA PRICE
& AXELROD LLP
2500 First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2385

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of
Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of
Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price &
Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of
Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

## Official Committee of Equity Holders

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

## United States Trustee

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

EXHIBIT A

\*    On April 8 and April 9, 2002, MEW(350) and RWT(390) prepared for and attended the same meeting for a total of 15.1 hours and $4,569.00.

| 04/08/02 | MEW | 0.30 | 105.00 | . . .; and regarding meeting B. Friedman in Washington (.3) |
| 04/08/02 | RWT | 0.60 | 234.00 | Prepare for meeting in Washington among counsel, including meeting with J. Sakalo, M. Widom thereon (.6); . . . |
| 04/09/02 | MEW | 4.00 | 1,400.00 | Meeting with Nate Finch, Ted Swett and Milberg Weiss (4.0); . . . |
| 04/09/02 | RWT | 4.60 | 1,794.00 | Attend meeting of counsel (4.6); . . . |
| 04/09/02 | MEW | 2.80 | 490.00 | 50% discount on travel. Travel to Washington DC for meeting (2.8). |
| 04/09/02 | RWT | 2.80 | 546.00 | 50% discount on travel. Travel to D.C. for meeting of counsel and prepare for same (2.8). |

\*    On April 15, 2002, professionals MEW(350) and RWT(390) attended the same hearing for a total of 18.0 hours and $3,700.00.

| 04/15/02 | MEW | 1.00 | 350.00 | Attend hearing before Judge Wolin on status conference (1.0); . . . |
| 04/15/02 | RWT | 1.00 | 390.00 | Attend hearing before Judge Wolin (1.0); . . . |
| 04/15/02 | MEW | 4.00 | 1,400.00 | 50% discount on travel. Travel to and from Newark (8.0). |
| 04/15/02 | RWT | 4.00 | 1,560.00 | 50% discount on travel. Travel time to and from hearing (8.0). |

\*    On April 22, 2002 professionals SLB(450) and JMS(235) attended the same hearing for a total of 29.0 hours and $8,589.90 in fees and expenses.

| 04/22/02 | SLB | 6.50 | 2,925.00 | Omnibus hearing, including meeting with prior to and after hearing with D. Speights, M. Dies, D. Scott and J. Sakalo (6.5) |
| 04/22/02 | JMS | 6.50 | 1,527.50 | Omnibus hearing, including meeting with prior to and after hearing with S. Baena, D. Speights, M. Dies and D. Scott (6.5) |
| 04/22/02 | SLB | 4.00 | 1,800.00 | 50% discount on travel. Travel to Miami (8.0). |
| 04/22/02 | JMS | 4.00 | 940.00 | 50% discount on travel. Travel to Miami - non-working travel (8.0) |
| 04/22/02 | | | | Airfare VENDOR: SCOTT L. BAENA; INVOICE #: SLB-04/22/02; DATE: 4/22/02 - CLIENT - 15546 |

|            |                                                                                                                                            |          |
|------------|--------------------------------------------------------------------------------------------------------------------------------------------|----------|
|            | TRAVEL TO PITTSBURG                                                                                                                         | $1,076.00 |
| 04/22/02   | Meals VENDOR: SCOTT L. BAENA; INVOICE #: SLB-04/22/02; DATE: 4/22/02 - TRAVEL TO PITSBURG                                                    | $   16.25 |
| 04/22/02   | Fares, Mileage, Parking TAXI FARESS - VENDOR: SCOTT L. BAENA; INVOICE #:SLB-04/22/02; DATE: 4/22/02 - CLIENT - 15546 TRAVEL TO PITSBURG      | $  101.25 |
| 04/22/02   | Lodging VENDOR: SCOTT L. BAENA; INVOICE #: SLB-04/22/02; DATE: 4/22/02 - CLIENT - 15546 TRAVEL TO PITTSBURG                                  | $  203.90 |

\*    On April 23, 2002 professionals SLB(450) and JMS(235) attended the same hearing for a total of 17.0 hours and $5,822.50.

| 04/23/02 | SLB | 8.50 | 3,825.00 | Meeting with experts, M. Dies, D. Speights, F. Rabinovitz, R. Turken, M. Widom and J. Sakalo (8.5); . . . |
|----------|-----|------|----------|-----------------------------------------------------------------------------------------------------------|
| 04/23/02 | JMS | 8.50 | 1,997.50 | Meeting with experts, M. Dies, D. Speights, F. Rabinovitz, R. Turken, S. Baena, M. Widom (8.5); . . . |

\*    On May 3, 2002 professionals RWT(390), JMS(235), MEW(350) and SLB(450) attended the same meeting for a total of 20.4 hours and $6,835.50.

| 05/03/02 | MEW | 2.00 | 700.00   | Travel to Miami (4.0) |
|----------|-----|------|----------|-----------------------|
| 05/03/02 | SLB | 0.80 | 360.00   | Return to Miami (1.6) |
| 05/03/02 | JMS | 2.00 | 470.00   | Return to Miami (4.0) |
| 05/03/02 | RWT | 2.00 | 780.00   | Travel to Miami (4.0) |
| 05/03/02 | MEW | 4.30 | 1,505.00 | Meeting with Dan Speights, Martin Dies, R. Turken and J. Sakalo regarding preparation for meeting with B. Friedman (1.3); meeting with B. Friedman, Rachel Fleishman, Dan Speights, Martin Dies, J. Sakalo and S. Baena (3.0) |
| 05/03/02 | SLB | 1.00 | 450.00   | Conference with R. Turken, M. Widom, J. Sakalo, B. Friedman, R. Fleishman regarding case strategies (1.0) |
| 05/03/02 | JMS | 4.30 | 1,010.50 | Prepare for and attend meeting with B. Friedman, R. Fleishman, R. Turken, M. Widom, D. Speights, M. Dies, S. Baena regarding property damage issues with respect to the Sealed Air lawsuit (4.3) |
| 05/03/02 | RWT | 4.00 | 1,560.00 | Meet with M. Dies, D. Speights, B. Friedman, M. Widom and J. Sakalo to discuss case issues and how to proceed (4.0) |

Response Exhibit 1

Exhibit 1 – Narrative of Fee Detail in "Fraudulent Transfer Litigation"

This matter covers the analysis of the fraudulent transfer claims, motions to prosecute and hearings thereon.  It also covers selection of professionals for this litigation, consultation with the PD Committee, the Personal Injury Committee, and special counsel to prosecute the claims.  Due to concerns about attorney-client privilege and the preservation of attorney work-product, this narrative sets forth, in general terms, the work performed during the Application Period.

The fraudulent transfer cases have been placed on a very expedited timetable.  The trial is scheduled to commence on September 30, 2002.  As a result, it has been necessary for the Applicant to expend substantial amounts of time on this matter.  However, keeping in mind that other counsel are involved in the prosecution, the Applicant has been very conscientious to avoid duplication of effort by counsel involved.

During the Application Period, the Applicant began to actively conduct paper discovery by continuing to review the approximately 200 boxes of documents produced by the Debtors at their document depository in Boca Raton.  In connection with such review, the Applicant, along with counsel to the Personal Injury Committee, the Debtors and the defendants in the litigation -- Sealed Air Corporation ("SAC") and Fresenius Medical Care, Inc. ("FMC") -- worked together to establish a protocol to maintain an objective database of documents for each of the parties to utilize.  The Applicant expended considerable time reviewing the documents culled from the depository and establishing a set of documents to be utilized during expert and fact witness discovery.

In addition, the Applicant reviewed and analyzed all of the pleadings filed in the cases, including SAC's and FMC's answers to the complaints and W.R. Grace-Conn's motion to intervene

(and accompanying complaint).  The Applicant prepared a response to the motion to intervene on behalf of the PD Committee, objecting in large part to the technical deficiencies of W.R. Grace-Conn's intervention papers.  The Applicant attended a hearing on W.R. Grace-Conn's intervention, which was denied by the Court.  Ultimately, the Court permitted W.R. Grace-Conn to intervene.

The Applicant became further entrenched in all aspects of the litigation, including, without limitation, the drafting of multiple discovery requests, handling discovery disputes in front of Special Master Drier, determination of experts, and preparing for depositions of SAC's experts and W.R. Grace-Conn's experts.  In addition, the Applicant convened a meeting of property damage experts to discuss the scope of the cases, as well as scheduling issues for expert reports and discovery.

During the paper discovery phase, an issue arose related to the production of what have been called "attorneys-eyes only" documents -- those documents the Debtors purported could only be seen by special counsel Milberg Weiss, as opposed to counsel to PD Committee and the Personal Injury Committee because of alleged "confidentiality" issues.  Subsequent to the Application Period, after a series of telephonic hearings, Special Master Drier concluded that the "attorneys-eyes only" were to be produced to the PD Committee with only limited redactions permitted.

Importantly, the Applicant began the foundational research for the Plaintiff's brief on the "Standard" to be applied to the Debtors' insolvency and the choice-of-law to be applied during the trial.  The Applicant, along with its co-counsel in these actions, drafted and filed a series of briefs and response briefs on these issues that resulted in an opinion of the Court dated July 29, 2002.

The Applicant also asserted its special counsel, Milberg Weiss, in the preparation and filing of its retention papers to act as special counsel in these fraudulent transfer cases.

<u>Response Exhibit 2 – Lodging and Meal Expense Detail</u>

<u>April 2002 Bill</u>:

| <u>DATE</u> | <u>EXPENSE ITEM DETAIL</u> | <u>COST</u> | |
|---|---|---|---|
| 01/28/02 | Lodging VENDOR: ROBERT W. TURKEN; INVOICE#: RWT-03/19/02; DATE: 3/26/02 - Clients - Reim. for lodging | 269.00 | 1 night |
| 03/05/02 | Meals VENDOR: CROUTONS; INVOICE#: 1012; DATE: 3/29/02 - CLIENTS/FIRM | 75.13 | 6 people |
| 03/06/02 | Meals VENDOR: CROUTONS; INVOICE#: 1012; DATE: 3/29/02 - CLIENTS/FIRM | 70.13 | 6 people |
| 03/07/02 | Meals VENDOR: DELI LANE; INVOICE#: 0337; DATE: 3/7/02 - CLIENTS | 18.00 | 2 people |
| 03/12/02 | Meals VENDOR: CROUTONS; INVOICE#: 1012; DATE: 3/29/02 - CLIENTS/FIRM | 80.39 | 5 people |
| 03/12/02 | Meals VENDOR: CHICKEN KITCHEN; INVOICE#: MARCH2002; DATE: 4/1/02 - ACCT.#1008 FIRM/CLIENTS MARCH 2002 CHARGES | 7.12 | 1 person |
| 04/21/02 | Lodging TRAVEL TO PITTSBURGH - VENDOR: JAY M. SAKALO; INVOICE#: JMS-04/22/01; DATE: 4/22/02 - CLIENT - 15537 | 147.06 | 1 night |
| 04/22/02 | Meals TRAVEL TO PITTSBURGH - VENDOR: JAY M. SAKALO; INVOICE#: JMS-04/22/01; DATE: 4/22/02 - CLIENT - 15537 | 130.28 | 6 people including 4 committee members |
| 04/23/02 | Meals BREAKFAST (14 PEOPLE) - VENDOR: CROUTONS; INVOICE#: 1018; DATE: 4/30/02 - FIRM/CLIENT | 54.80 | 14 people |
| 04/23/02 | Meals LUNCH (14 PEOPLE) - VENDOR: CROUTONS; INVOICE#: 1018; DATE: 4/30/02 - FIRM/CLIENT | 129.26 | 14 people |

| 04/22/02 | MealsVENDOR: SCOTT L. BAENA; INVOICE#: SLB-04/22/02; DATE: 4/22/02  -  TRAVEL TO PITTSBURG | 16.25 | 1 person |
| 04/22/02 | LodgingVENDOR: SCOTT L. BAENA; INVOICE#: SLB-04/22/02; DATE: 4/22/02  -  CLIENT - 15546   TRAVEL TO PITTSBURG | 203.90 | 1 night |
| 03/28/02 | MealsTRAVEL TO NJ - VENDOR: ROBERT W. TURKEN; INVOICE#: RWT-05/06/02; DATE: 5/6/02  -  CLIENT - 15547 | 11.43 | 1 person |
| 04/09/02 | MealsVENDOR:  MITCHELL  WIDOM;  INVOICE#: MEW-04/10/02; DATE: 4/10/02  -  Clients - Reim. for meals | 11.85 | 1 person |
| 04/15/02 | LodgingTRAVEL TO NEW YORK - VENDOR: ROBERT W. TURKEN; INVOICE#: RWT-05/06/02; DATE: 5/6/02 - CLIENT - 15547 | 500.30 | 1 night |
| 04/15/02 | MealsTRAVEL  TO  NJ  -  VENDOR:  ROBERT  W. TURKEN; INVOICE#: RWT-05/06/02; DATE: 5/6/02  -  CLIENT - 15547 | 27.67 | 1 person – 2 meals |
| 04/19/02 | LodgingVENDOR: JAY M. SAKALO; INVOICE#: JMS-04/19/02; DATE: 4/19/02 - CLIENT - 15547 TRAVEL TO NY | 307.68 | 1 night |
| 04/19/02 | MealsVENDOR: JAY M. SAKALO; INVOICE#: JMS-04/19/02; DATE: 4/19/02 - CLIENT - 15547 TRAVEL TO NY | 54.25 | 1 person – 2 meals |

May, 2002 Bill:

| 05/02/02 | LodgingTRAVEL - VENDOR: SCOTT L. BAENA; INVOICE#: SLB-05/02/02; DATE: 5/2/02 | 323.17 | 1 night |
| 05/02/02 | MealsTRAVEL  -  VENDOR:  SCOTT  L.  BAENA; INVOICE#: SLB-05/02/02; DATE: 5/2/02 | 139.23 | 5 people |
| 05/02/02 | LodgingTRAVEL TO PHILADELPHIA - VENDOR: JAY M. SAKALO; INVOICE#: JMS-05/02/02; DATE: 5/2/02 | 123.66 | 1 night (1/2 cost) |

| 05/02/02 | MealsTRAVEL TO PHILADELPHIA - VENDOR: JAY M. SAKALO; INVOICE#: JMS-05/02/02; DATE: 5/2/02 | 11.28 | 1 person (1/2 cost) |
| 05/02/02 | LodgingTRAVEL TO PHILADELPHIA - VENDOR: ROBERT W. TURKEN; INVOICE#: RWT-05/02/02; DATE: 5/2/02 | 318.12 | 1 night |
| 05/07/02 | LodgingTRAVEL TO DELAWARE - VENDOR: MITCHELL WIDOM; INVOICE#: MEW-05/07/02; DATE: 5/7/02 | 329.36 | 1 night |
| 05/07/02 | MealsTRAVEL TO DELAWARE - VENDOR: MITCHELL WIDOM; INVOICE#: MEW-05/07/02; DATE: 5/7/02 | 18.00 | 1 person |
| 05/07/02 | MealsTRAVEL TO DELAWARE - VENDOR: MITCHELL WIDOM; INVOICE#: MEW-05/07/02; DATE: 5/7/02 | 17.42 | 1 person |
| 05/07/02 | MealsTRAVEL TO BOCA RATON - VENDOR: JORDAN M. KEUSCH; INVOICE#: JMK-05/10/02 | 1.19 | 1 person |
| 05/10/02 | MealsTRAVEL TO BOCA RATON FOR DOCUMENT REVIEW - VENDOR: ELEANOR BENNETT; INVOICE#: EB-05/08/02; DATE: 5/8/02 - CLIENT - 15547 REIM. FARES | 10.59 | 1 person |
| 05/19/02 | LodgingTRAVEL TO PHILADELPHIA/VA/NEWARK - VENDOR: JAY M. SAKALO; INVOICE#: JMS-05/19/02; DATE: | 222.84 | 1 night |
| 05/19/02 | MealsTRAVEL TO PHILADELPHIA/VA/NEWARK - VENDOR: JAY M. SAKALO; INVOICE#: JMS-05/19/02; DATE: | 154.71 | 2 meals – 8 people |
| 05/20/02 | LodgingTRAVEL TO DELAWARE - VENDOR: SCOTT L. BAENA; INVOICE#: SLB-05/20/02 | 155.00 | 1 night (1/2 cost) |
| 05/20/02 | MealsTRAVEL TO DELAWARE - VENDOR: SCOTT L. BAENA; INVOICE#: SLB-05/20/02; DATE: 5/20/02 - CLIENTS | 5.34 | 1 person |
| 05/21/02 | LodgingTRAVEL TO NEWARK - VENDOR: SCOTT L. BAENA; INVOICE#: SLB-05/20/02 | 280.96 | 1 person |
| 05/21/02 | MealsTRAVEL TO NEWARK - VENDOR: SCOTT L. BAENA; INVOICE#: SLB-05/20/02 | 33.63 | 2 people |

June, 2002 Bill:

| 06/07/02 | MealsTRAVEL TO BOCA RATON, FL - VENDOR: JORDAN M. KEUSCH; INVOICE#: JMK-06/07/02; DATE: 6/7/02 - CLIENT - 74817-15547 | 26.17 | 2 people |
|---|---|---|---|
| 06/17/02 | Meals TRAVEL TO DELAWARE - VENDOR: SCOTT L. BAENA; INVOICE#: SLB-06/17/02; DATE: 6/17/02 - CLIENTS | 25.25 | 2 people |
| 06/17/02 | Lodging TRAVEL TO DELAWARE - VENDOR: SCOTT L. BAENA; INVOICE#: SLB-06/17/02; DATE: 6/17/02 - CLIENTS | 132.49 | 1 night (1/2 cost) |

Response Exhibit 3

The Fee Auditor has asked for an explanation why there were multiple attendees at the hearings and meetings listed on Exhibit A to the Report. The first, second, fourth and fifth entries listed on Exhibit A relate solely to the fraudulent transfer litigation, and thus, are presumably beyond the scope of the Fee Auditor's review; however, since these entries relate to April 2002, we will address the Fee Auditor's questions.[2] The third entry relates to an omnibus hearing which included argument on the property damage case management issues that have been explained in detail in our responses to the Fee Auditor's initial reports regarding our First, Second, Third and Fourth interim applications.    Fraudulent Transfer Entries

With respect to the time entries related to the fraudulent transfer litigation, the first entry relates to a meeting with counsel to the asbestos personal injury committee and the Committee's new co-counsel, Milberg Weiss. This was the first meeting between the two committees and its new co-counsel, and thus, it was necessary to have both Mr. Turken and Mr. Widom, the two litigation partners assigned to the case, attend the meeting to discuss the Committee's theories of the case and to develop a division of responsibility that has been rigidly adhered to throughout the case.

The second entry relates to a status conference called by Judge Wolin to discuss the framework of the case and the then-current status of discovery. Mr. Turken, the litigation partner in charge of developing the framework of the case, needed to attend the status conference to sdiscuss the current framework of the case. Mr. Widom, the litigation partner in charge of all discovery matters in the case, needed to attend to discuss the then-current status of discovery.

---

[2]        See response to Paragraph 5 above.

The fourth entry relates to the first meeting of experts engaged by the Committee, in the fraudulent transfer litigation. This meeting was an "all hands" meeting of certain members of the Committee, counsel to the Committee and the experts engaged by the Committee, to develop the areas in which the experts would be utilized and the services that the Committee needed them to perform.

The fifth entry relates to the first meeting held between certain members of the Committee, counsel to the Committee and the Committee's special counsel, Milberg Weiss. This importance of this meeting cannot be overstated. It was the first opportunity for a co-chair of the Committee, Mr. Daniel Speights, and another member of the Committee, Mr. Martin Dies, two of the most prominent asbestos property damage plaintiffs' counsels, to meet the attorneys from Milberg Weiss in person. Keeping in mind attorney-client privilege concerns, the meeting was used as a strategy session with respect to the processing of the historical information that Messrs. Speights and Dies possess regarding W.R. Grace property damage claims.

The attendees at this meeting from Bilzin, Messrs. Baena, Turken, Widom and Sakalo, all had separate and distinct responsibilities that necessitated their attendance at the meeting. Mr. Baena and Mr. Sakalo, two bankruptcy lawyers well know to the Fee Auditor and the Court, were responsible for the bankruptcy issues related to the case, leading the discussion on the procedural requirements that the plaintiffs were likely to confront in this case. Mr. Baena only participated for a third of the meeting. Upon conclusion of the issues that Mr. Baena needed to address, he left the meeting and Mr. Sakalo remained to address any remaining bankruptcy issues. Mr. Turken, was responsible for leading the discussion of the strategic framework of the case. Mr. Widom was

responsible for leading the discussion of the discovery schedule and the anticipated discovery to be taken in the case.

Main Case Entries

The third entry relates to the final hearing on the Debtors' case management proposals with respect to asbestos property damage claims.  The hearings on the proposals took place over four months -- from January, 2002 through April 2002.[3]  As explained in detail in our response to the Fee Auditor's initial report regarding our Fourth interim period:

The omnibus hearings held in January, February, March and April, 2002 included perhaps the most critical and contentious issue to date in the bankruptcy cases -- the Debtors' case management proposals.  From the outset of these cases, the Debtors have attempted to establish procedures designed to limit the amount and involvement of asbestos property damage claimants in the reorganization of the Debtors, including the establishment of an early bar date, approval of an unprecedented proof of claim and a notice program, all applicable to asbestos property damage claims.  On behalf of the Property Damage Committee, Bilzin filed written a lengthy substantive opposition to each of the Debtors' proposals which was argued at the subject omnibus hearings.  At these hearings, although Mr. Baena presented the oral argument on behalf of the Property Damage Committee, Mr. Sakalo provided support to Mr. Baena throughout.  This support included having facile access to all of the backup necessary to support both the Debtors' proposals and the Property Damage Committee's responses.  This alone constituted approximately 7 banker's boxes worth of documents.

---

[3]  It is worth noting that Judge Fitzgerald approved 100% of the fees and expenses sought in the Fourth Interim Application with respect to the Debtors' asbestos property damage case management proposals.

In addition, there were certain aspects of the Debtors' case management proposals that Mr. Sakalo principally handled, notably, the Debtors' proposed notice program.  Mr. Sakalo was responsible for developing and coordinating the objections to the proposed program along with the Property Damage Committee's notice expert, Todd Hilsee of Hilsoft Notifications.  Mr. Sakalo's attendance at the hearings was necessary to evaluate and, if appropriate, to provide rebuttal statements to the discussion regarding the notice program.

\* \* \*

Thus, as explained above, Bilzin believes it was appropriate to have both Mr. Baena and Mr. Sakalo attend the hearing in question.

Response Exhibit 4

| | | | | |
|---|---|---|---|---|
| 06/05/02 | RWT | 1.80 | 702.00 | Work on PD case issues and document work for depositions. |
| 06/05/02 | RWT | 1.50 | 585.00 | Work on preparation for hearing on Grace Motion to Intervene and telephone conference with B. Friedman regarding same (1.0); conference with M. Widom regarding intervention (.5). |
| 06/05/02 | RWT | 0.90 | 351.00 | Continue work on standards brief. |
| 06/05/02 | JK | 0.40 | 104.00 | E-mails to R. Fleishman regarding Friday's insurance meeting. |
| 06/05/02 | JK | 0.40 | 104.00 | E-mails from R. Fleishman regarding Friday's insurance meeting. |
| 06/05/02 | JK | 0.30 | 78.00 | Phone conference with J. Cohen regarding Friday's insurance meeting (.3). |
| 06/06/02 | RWT | 2.70 | 1,053.00 | Final preparation for and attendance at hearing on Grace Motion to Intervene. |
| 06/06/02 | RWT | 0.40 | 156.00 | Post hearing review with counsel. |
| 06/06/02 | JK | 0.30 | 78.00 | Phone conference with J. Cohen regarding tomorrow's insurance meeting (.3). |
| 06/06/02 | JK | 0.60 | 156.00 | Prepare for tomorrow's insurance meeting at Grace. 06/07/02 |
| | RWT | 0.50 | 195.00 | Telephone conference with B. Friedman, T. Swett, J. Sakalo and N. Finch regarding Fresenius developments, settlement issues and case issues. |
| 06/07/02 | RWT | 0.70 | 273.00 | Telephone conference with B. Friedman regarding Fresenius developments, settlement issues and case issues. |
| 06/07/02 | RWT | 1.20 | 468.00 | Work on P.D. presentation strategy. |
| 06/07/02 | JK | 5.40 | 1,404.00 | Meeting at W.R. Grace with J. Posner, F. Zarembi, S. McMillin, A. Aisley, and committee experts regarding Grace insurance coverage issues. |
| 06/10/02 | RWT | 0.40 | 156.00 | Review with M. Widom regarding deposition issues. |
| 06/10/02 | RWT | 1.80 | 702.00 | Telephone conference with B. Friedman regarding PD analysis issues and review same and valuation questions with J. Sakalo and M. Widom. |
| 06/10/02 | RWT | 0.40 | 156.00 | Attention to objections to retention issues. |
| 06/10/02 | RWT | 1.10 | 429.00 | Document work. |
| 06/10/02 | JK | 0.40 | 104.00 | Receipt and review of correspondence from R. Fleishman to M. Browdy and attached Notices of Depositions for Drs. Rourke and Florence (.2); conference with M. Widom regarding insurance meeting (.2). |
| 06/11/02 | RWT | 1.80 | 702.00 | Attention to deposition issues and scheduling, including conferences with J. Sakalo and M. Widom thereon. |
| 06/11/02 | RWT | 1.50 | 585.00 | Review revised standards brief and participate in conference telephone call regarding same. |
| 06/11/02 | RWT | 2.60 | 1,014.00 | Work on revisions to standards brief. |

| | | | | |
|---|---|---|---|---|
| 06/11/02 | RWT | 1.80 | 702.00 | Telephone conference with expert and M. Widom regarding expert request issues. |
| 06/12/02 | RWT | 2.10 | 819.00 | Review with M. Widom Beber deposition and questions areas and continue work on documents. |
| 06/12/02 | RWT | 1.40 | 546.00 | Telephone conferences with B. Friedman and R. Fleishman regarding standards brief and retention issues and work on same. |
| 06/13/02 | RWT | 0.90 | 351.00 | Continue work on deposition preparation and document review for same. |
| 06/13/02 | RWT | 1.60 | 624.00 | Make revisions with R. Gonzalez and telephone conferences with B. Friedman regarding same. |
| 06/13/02 | RWT | 1.10 | 429.00 | Telephone conferences with B. Friedman, J. Sakalo and E. Wahlforth regarding retention motion issues. |
| 06/13/02 | RWT | 1.20 | 468.00 | Prepare for June 14 hearing. |
| 06/13/02 | JK | 0.30 | 78.00 | Phone conferences with D. Kaplan regarding deposition \ prep issues (.3). |
| 06/14/02 | RWT | 3.30 | 1,287.00 | Final preparation for and attendance at hearing on motion to engage Milberg and USA's motion to intervene (3.1); telephone with J. Sakalo thereon (.2). |