## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING
### FEE APPLICATION OF KIRKLAND & ELLIS
### FOR THE FIFTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Fee Application of Kirkland & Ellis for the Fifth Interim Period.

### BACKGROUND

1.      Kirkland & Ellis ("K&E") was retained as counsel to the Debtors.  In the Application, K&E seeks approval of fees totaling $989,110.00 and costs totaling $67,169.24 for its services from April 1, 2002, through June 30, 2002.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States

Bankruptcy Court for the District of Delaware, the United States District Court for the District of

Delaware, and the Third Circuit Court of Appeals.  We served on K&E an initial report based on our

review and received a response from K&E, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.       In our initial report we noted that a large majority of K&E timekeepers often used the

phrase "attend to" when referring to a variety of tasks resulting in insufficient detail in their time

entries.  Rule 2016-2(d) of the Delaware Local Rules states "activity descriptions . . . shall be

sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is

actual, reasonable, and necessary . . ."  We asked that K&E advise its  professionals to avoid such

global terminology and provide more detailed time entries in the future.

4.       In our initial report we noted that Kapp, Lane and Grummer often tended to lump

their time entries.  Local Rule 2016-2(d)(vii) provides that "[a]ctivity descriptions shall not be

lumped – each activity shall have a separate description and a time allotment."  This issue had been

addressed with certain professionals in previous Applications.  We again ask K&E to continue

advising all of its timekeepers to avoid lumping their time entries in the future and K&E stated that

it would do so.

5.       In our initial report we noted that K&E seeks fees for time spent on the fraudulent

transfer litigation.  On July 10, 2002 Judge Wolin entered an Order dealing with the Sealed Air

fraudulent transfer litigation fees in which he withdrew his reference of that matter from the

bankruptcy court requiring District Court approval for all fees involved in said litigation matters.

Thus we asked K&E to  explain why this Order is not applicable to the fraudulent transfer litigation

fees provided for in this Application.  K&E responded as follows:

> As the Initial Report notes, on July 10, 2002, Judge Wolin entered an order withdrawing the reference for fraudulent transfer fees.  K&E commenced filing a separate fee application with the District Court for fraudulent transfer fees with the June 2002 monthly fee application because it had not yet filed its June monthly fee application when Judge Wolin entered the order.  K&E has since filed separate fraudulent transfer fee applications for July and August 2002 and will continue to do so for September and months following until further order of the court.  K&E did not file amended fee applications separating the fraudulent transfer fees into a second fee application for April and May 2002 because at the time those fee applications had been filed, (May and June 2002, respectively), the reference had not yet been withdrawn.

We believe this information adequately addresses our concern.

## Specific Time and Expense Entries

6.      In our initial report we noted that during the Application period professional Pope($180) spent a total of 140.75[1] hours for a total expense to the estate of $25,335.00 on tasks that appear to be ministerial in nature, such as filing and duplicating documents.  (See Exhibit A).  The U.S. Trustee Guidelines Rule, I.E. states ". . . [i]n evaluating fees for professional services, it is relevant to consider various factors including the following: the time spent; the rates charged; whether the services were necessary t o the administration of, or beneficial towards the completion of, the case at the time they were rendered; whether services were performed within a reasonable time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;. . .".   Thus we asked K&E to review Exhibit A and explain why the professional is performing seemingly ministerial tasks at the full hourly rate.  K&E's response is provided in Response Exhibit 1.  We believe we understand the importance of Ms. Pope's contributions, and

---

[1] Time for this item was located in two (2) Project Categories (i) Matter 20 - Case Administration - Fees and (ii) Matter 22- Contested Matter/Adversary Proceedings - Fees

it would appear that she needs support personnel to assist her with the actual filing and duplicating tasks which are clerical in nature. Accordingly, we still feel time billed for copying documents should not be charged to the bankruptcy estate and should instead be considered nonreimburseable overhead. Ms. Pope billed 20 hours and $3,600.00 for "retrieving and duplicating" documents. Thus we recommend a reduction of $3,600.00 in fees.

       7.     In our initial report we noted that on five time entries, there appeared to be miscalculations in the addition of the parentheticals:

On April 4, 2002, Lane has an entry listed as 9.80 hours for a total of $3,430.00. The points only total up to 9.70 hours for a total of $3,395.00. Difference is $35.00.

| 04/04/02 | CJL | 9.80 | Attend to matters re National Union counterclaim issues (1.3); draft response to National Union counterclaim (7.5); telephone conference with J. Hughes re same (.5); telephone conference with National Union counsel re same (.3); telephone conference with local counsel re same (.1). |
|---|---|---|---|

On April 8, 2002, Browdy has an entry listed as 1.80 hours for a total of $756.00. The points only total up to 1.50 hours for a total of $630.00. Difference is $126.00.

| 04/08/02 | MHB | 1.80 | Follow up on legal research issues re fraudulent transfer litigation (.7); prepare for fact witness meeting on fraudulent transfer (.8). |
|---|---|---|---|

On April 19, 2002, Sullivan has an entry listed as 1.00 hours for a total of $390.00. The points only total up to 0.90 hours for a total of $351.00. Difference is $39.00.

| 04/19/02 | CBS | 1.00 | Telephone conferences with A. Trevelise and S. Haynes re ZAI document production (.7); conference with R. Finke and W. Sparks re same (.2). |
|---|---|---|---|

On May 30, 2002, Baer has an entry listed as 3.20 hours for a total of $1,856.00. The points only total up to 2.20 hours for a total of $1,276.00. Difference is $580.00.

| 05/30/02 | JB | 3.20 | Attend to matters re bar date notice on employee and COLI issues (.5); confer with W. Sparks re de minimis settlement procedures (.2); follow up on employee notice issues |
|---|---|---|---|

(.5);review PI bar date deadlines and confer re same (.5);
follow up on PI bar date issues (.5).

On May 24, 2002, Leibenstein has an entry listed as 4.10 hours for a total of $1,763.00. The points only total up to 3.10 hours for a total of $1,333.00. Difference is $430.00.

05/24/02      EL      4.10          Review analysis re estimates (.8); prepare for meeting with D.
                                    Rourke re estimates (1.5); review D. Rourke charts (.8).

The combined overcharge amounts total 2.5 hours and $1,210.00. Thus we asked K&E to advise

us as to these miscalculations. K&E responded that these were inadvertent arithmetical errors, and

thus we recommend a reduction of $1,210.00 in fees.

     8.      In our initial report we noted that professional Kutnick and Knox spent a total of

272.40 hours for a total of $24,617.50 entering data into the Montana employee database. We

further noted that professional Kutnick spent 77.30 hours for a total expense of $10,972.50 on this

same project during the previous period. When addressed in the previous Interim Report, K&E

explained that "[t]he data entry, the bulk of which Mr. Kutnick performed, involved reviewing hard

copies of employee records of each of the 1,912 employees for specific information and then entering

it into the database. This was a time-intensive task that lasted several weeks and was absolutely

critical to the analysis of personal injury claims." This explanation left the impression that the matter

was completed at the end of the last interim period.   As this project has continued longer than

contemplated, we asked K&E to please explain why a data entry clerk at a lower hourly rate had not

been utilized. K&E responded as follows:

    As discussed in the response to the initial report for the fourth interim period, and as
noted in the Initial Report, the data entry task for the Montana employee database
was an enormous task that lasted several weeks. As discussed in the initial report for
the fourth interim period, Mr. Kutnick and Ms. Knox had to review data for each
employee located in some 15 to 20 different fields per employee, including work

history, in order to glean the data required for entry into the Montana employee database. K&E used its project assistants because, relatively speaking, they were the most cost-effective option available to K&E. Just as importantly, the project assistants were familiar with the information and capable of properly gleaning and entering the data. The technical nature of this task meant that it was not suitable for secretaries or other clerical staff, and it would have been more expensive to hire special-purpose data entry services for the task than to use project assistants.

The Initial Report concluded from K&E's previous explanation that this project was scheduled to be completed in the fourth interim period. K&E apologizes if it left that impression, but that explanation focused only on the fourth interim period and did not address the fifth interim period.

We accept this explanation and thus have no objection to these fees.

9.      In our initial report we noted that on April 22, 2002, Kapp, Bernick and Baer attended a hearing in Pittsburgh. The total time spent including preparation and non-working travel time was 34.00[2] hours for a total of $19,310.00. The time entries are provided below.

| 4/20/02 | James W Kapp | 4.50 | Prepare for April 22, 2002, hearing and review relevant pleadings re same. |
| 4/21/02 | David M Bernick, P.C. | 3.00 | Preparation for 4/22 hearing. |
| 4/22/02 | David M Bernick, P.C. | 5.50 | Preparation for hearing (1.5); attend hearing and post hearing meeting (4.0). |
| 4/22/02 | James W Kapp | 8.50 | Prepare for and attend omnibus hearing and attend to issues re same. |
| 4/22/02 | Janet Baer | 5.00 | Review materials in preparation for hearing on bar date and related matters (2.0); attend and participate in hearing on bar date and related matters (3.0). |
| 4/21/02 | David M Bernick, P.C. | 2.00 | Travel to Pittsburgh for hearing. (billed at ½ time) |
| 4/21/02 | Janet Baer | 2.00 | Travel to Pittsburgh for hearing on same. (billed at ½ time) |
| 4/22/02 | David M Bernick, P.C. | 1.50 | Travel to Chicago. (billed at ½ time) |
| 4/22/02 | Janet Baer | 2.00 | Travel from Pittsburgh back to Chicago after hearing on bar date and related matters. (billed at ½ time) |

---

[2] Time for this item was located in two (2) Project Categories (i) Matter 30 - Hearings - Fees and (ii) Matter 42 - Travel  - Fees

Local Rule 2016-2(d)(ix) provides ". . .The activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role."   Also, Paragraph II.D.5. of the Guidelines states that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  Neither the individual time entries nor the narrative portion of the Application addressed the need for multiple attendees at this hearing nor did it explain each professional's role.   Thus we asked K&E to explain the need for multiple professionals at this hearing.  K&E's response is provided below and in Response Exhibit 2.

> April 22, 2002, Hearing
> At this hearing, Judge Fitzgerald ordered a bar date and approved a multi-million dollar notice program, which were major case management developments.  As previously explained to the Fee Auditor, Mr. Bernick, as the senior litigator, has overall responsibility for all litigation matters, including case management. Ms. Baer was responsible, as previously discussed, for the development of the proof of claim forms and the notice program as well as other case management issues.  At this hearing, Mr. Bernick also handled matters regarding a motion by the asbestos personal injury committee to transfer certain asbestos personal injury claims matters to the District Court.  Ms. Baer was responsible for matters pertaining to the Preliminary Injunction and motions to lift or annul the automatic stay.  Mr. Kapp, as the senior bankruptcy partner assigned to these chapter 11 cases, was responsible for the remaining agenda items, including the Kellogg automatic stay matter.

We accept this explanation and thus have no objection to these fees.

10.    We further noted that on May 20, 2002, Kapp, Bernick and Baer attended another hearing in Delaware.  The total time spent including preparation and non-working travel time was 25.40[3] hours for a total of $14,939.50.  The time entries are provided below.

| 5/20/02 | David M Bernick, P.C. | 7.00 | Prepare for and attend omnibus hearing and status conference. |

---

[3] Time for this item was located in two (2) Project Categories (i) Matter 30 - Hearings - Fees and (ii) Matter 42 - Travel  - Fees

| 5/20/02 | James W Kapp | 7.00 | Prepare for and attend May 20, 2002, omnibus hearing and attend to issues re same. |
| 5/20/02 | Janet Baer | 1.90 | Prepare for omnibus hearing (1.5); attend omnibus hearing re ZAI and C. Gerard (.4). |
| 5/19/02 | David M Bernick, P.C. | 2.00 | Travel to status conference. (billed at ½ time) |
| 5/19/02 | Janet Baer | 2.00 | Travel to Delaware for omnibus hearing (½ time). |
| 5/20/02 | David M Bernick, P.C. | 2.50 | Travel from status conference. (billed at ½ time) |
| 5/20/02 | Janet Baer | 3.00 | Travel from Delaware back to Chicago after omnibus hearing (½ time). |

Again, we asked K&E to explain the role of each professional at this hearing.  K&E's response is provided below and in Response Exhibit 2.

May 20, 2002, Hearing

At this hearing, Judge Fitzgerald ordered the arrangements for the ZAI Science Trial, including briefing schedules.  Mr. Bernick attended the hearing because of the ZAI matters.  Ms. Baer, who was primarily responsible for developing the ZAI proof of claim attended the hearing because the ZAI proof of claim was heavily implicated in the ZAI Science Trial.  Ms. Baer was also responsible for the scheduled status conference on Preliminary Injunction matters.  Mr. Kapp was responsible for the remaining agenda items, including the Kellogg automatic stay matter.

We accept this explanation and thus have no objection to these fees.

11.    We further noted that on June 18, 2002, Kapp and Baer attended another hearing in Delaware.  The total time spent including preparation and non-working travel time was 18.20[4] hours for a total of $9,489.00.  The time entries are provided below.

| 6/18/02 | James W Kapp | 5.50 | Prepare for June 18, 2002, hearing and attend to issues re same and telephone conferences with D. Carickhoff and W. Sparks re same (1.6); participate in omnibus hearing and attend to issues re same (3.9). |
| 6/18/02 | James W Kapp | 4.20 | Review Kellogg pleadings in preparation for June 18, 2002, hearing  and attend to issues re same. |

---

[4] Time for this item was located in two (2) Project Categories (i) Matter 30 - Hearings - Fees and (ii) Matter 42-Travel  - Fees

| | | | |
|---|---|---|---|
| 6/18/02 | Janet S Baer | 5.50 | Review materials in preparation of omnibus hearing re Gerard and ZAI (1.0); conference with various parties re preparation for omnibus hearing and related issues (1.0); conference with parties and attend omnibus hearing (3.5). |
| 6/18/02 | Janet S Baer | 3.00 | Travel to Delaware re monthly Omnibus hearing and travel to Chicago after same. (billed at ½ time) |

Again, we asked K&E to explain the role of each professional at this hearing. K&E's response is provided below and in Response Exhibit 2.

> June 18, 2002, Hearing
>
> Ms. Baer attended this hearing because of several matters on the agenda pertaining to the ZAI Science Trial and ZAI claims that she had handled at previous hearings and Mr. Kapp was responsible for the remaining agenda items, including the Kellogg automatic stay and PricewaterhouseCoopers LLP retention matters. Mr. Bernick did not attend this particular omnibus hearing because there were no litigation-specific agenda items other than the ZAI Science Trial, for which Ms Baer was responsible.

We accept this explanation and thus have no objection to these fees.

12.    In our initial report, we noted that during the Application period, professionals Higgins, Baer and Kapp spent a total of 10.1 hours for a total of $3,262.00 on conflict issues. The time entries are provided below.

| | | | |
|---|---|---|---|
| 04/02/02 | RJH | 3.80 | Attend to matters re potential conflict of interest |
| 04/03/02 | RJH | 1.00 | Attend to matters re potential conflict of interest |
| 04/10/02 | JB | 0.80 | ......; prepare transmittal re same and correspondence conflicts information (.3);..... |
| 04/16/02 | JWK | 0.40 | ......; attend to potential conflict issues and potential eighth supplemental affidavit (.3). |
| 06/19/02 | SMM | 1.10 | Respond to request for conflicts research (.2);...... |
| 06/18/02 | CJL | 0.30 | Telephone conference with Grant Thorton re conflicts review. |
| 06/19/02 | RJH | 0.30 | Attend to matters re gathering materials for conflicts check by Grant Thornton. |
| 06/20/02 | CJL | 1.20 | Telephone conferences re OCP affidavits and conflicts checks (.8); attention to issues related to same (.4). |
| 06/20/02 | SMM | 1.30 | Attend to matters re conflicts search information and distribute (1.1);......... |

| 06/24/02 | RJH | 1.60 | Attend to matters re various potential conflicts of interest (.6);........ |
| 06/25/02 | RJH | 1.00 | Attend to matters re potential conflicts of interest. |

U.S. Bankruptcy Code §330 (4)(A)(ii)(I) provides that "(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for – . . .(ii) services that were not – (I) reasonably likely to benefit the debtor's estate; . . ."  We believe that the activity of a firm running a conflict check benefits the firm, not the estate, and thus we asked K&E to explain how work on conflicts issues benefitted the estate.  K&E responded as follows:

>    Attending to Conflicts of Interest Matters (¶ 12).

>    The Initial Report asks K&E to explain how work on various conflicts issues benefits the Debtors' estates.  Quite simply, K&E has, by default, come to be the central repository of conflicts information for the thirty-odd retained professionals and the fifty-odd ordinary course professionals at work in these chapter 11 cases.  Each time a professional wishes to file an affidavit of disinterestedness (in the case of ordinary course professionals) or to file an application for retention under section 327 of the Bankruptcy Code, that professional almost inevitably approaches K&E for information on filing requirements and on conflicts information.  Virtually all of the time listed in paragraph 13 of the Initial Report relates to the above activities (one time entry for Mr. Kapp refers to a question regarding the necessity for K&E to file a supplemental affidavit of disinterestedness).  Clearly, such time expended by K&E's attorneys benefits the Debtors' estates by enabling professionals other than K&E who are to be retained in these chapter 11 cases to timely and thoroughly ascertain whether there are potential conflicts of interest.

While we understand this argument in support of K&E's position, that most of these time entries were to help with the retention of other professionals, we note that only the following three time entries, totaling $628.50, make it clear that K&E was dealing with the retention of others:

| 06/18/02 | CJL | 0.30 | Telephone conference with Grant Thorton re conflicts review. |
| 06/19/02 | RJH | 0.30 | Attend to matters re gathering materials for conflicts check by Grant Thornton. |
| 06/20/02 | CJL | 1.20 | Telephone conferences re OCP affidavits and conflicts checks (.8); attention to issues related to same (.4). |

Thus we are left with $2,633.50 in time entries that, on their face, appear to be entries in which K&E is dealing with its own conflict issues. As we have previously advised K&E to provide more detail in its time entries, we believe that K&E should bear the cost of its failure to provide the requisite detail that its time entries actually are for the retention of other professionals, and thus we recommend a reduction of $2,633.50 in fees.

## CONCLUSION

13.    Thus, we recommend approval of fees totaling $981,666.50 ($989,110.00 minus $7,443.50) and costs totaling $67,169.24 for K&E's services from April 1, 2002, through June 30, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
    Warren H. Smith
    Texas State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas 75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 12th day of November, 2002.

Warren H. Smith

# SERVICE LIST

Notice Parties

**The Applicant**
Roger J. Higgins
**Kirkland & Ellis**
200 East Randolph Drive
Chicago, IL 60601

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Matthew G. Zaleski, III, Esq.
Campbell & Levine
Chase Manhattan Centre, 15th Floor
1201 Market Street, Suite 1200
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

EXHIBIT A

| 4/01/02 | Shirley A Pope | 7.40 | Review correspondence and file same (1.0); review collateral estoppel legal research and file same (1.0); .........; review docket for newly filed pleadings, download and file (1.90);........ |
| 4/02/02 | Shirley A Pope | 6.80 | Review vendor's statement and request check for payment (.80); review docket for newly filed pleadings, download and file same (1.5); review Fresenius and Sealed Air adversarial proceedings pleadings and file same (1.5); ..........; review correspondence and file same (.5). |
| 4/03/02 | Shirley A Pope | 3.00 | ...........; review correspondence and file same (1.0). |
| 4/04/02 | Shirley A Pope | 6.80 | Review docket for newly filed pleadings, download and file (1.0); ........; retrieve and duplicate Chakarian pleadings requested by attorney (.50); review correspondence and file same (1.5); .......; review legal research materials and file same (.80);........ |
| 4/05/02 | Shirley A Pope | 7.50 | Review correspondence and file same (1.0);......; review docket for newly filed pleadings, download and file (1.0);......; file legal research materials (1.0);....... |
| 4/08/02 | Shirley A Pope | 3.00 | Review correspondence and file same (1.0); review docket for newly filed pleadings, download and file same (1.5);...... |
| 4/09/02 | Shirley A Pope | 5.00 | .......; review docket for newly filed pleadings, download and file (1.5);...... |
| 4/10/02 | Shirley A Pope | 3.30 | Review correspondence and file same (1.25); review docket for newly filed pleadings, download and file same (2.00). |
| 4/11/02 | Shirley A Pope | 8.50 | Review correspondence and file same (1.0); review docket for newly filed pleadings, download and file same (2.0);.......; retrieve and duplicate class action complaints related to Zonolite claimants (Barbanti, Harris, Hunter, Lindholm, McMurchie, Price, Walsh) for attorney review (1.0);....... |
| 4/12/02 | Shirley A Pope | 7.00 | Review docket for newly filed pleadings, download and file same (1.5); review correspondence and file same (1.5);......; retrieve and duplicate preliminary injunction motions and orders in the Chakarain adversary proceedings at attorney request (.5);......... |
| 4/15/02 | Shirley A Pope | 3.50 | ........; review docket for newly filed pleadings, download and file same (2.0);........... |
| 4/16/02 | Shirley A Pope | 4.80 | Review docket for newly filed pleadings, download and file same (2.0); ........; review correspondence and file same (1.0). |
| 4/17/02 | Shirley A Pope | 3.50 | Review correspondence and file same (1.0); .... |

| 4/18/02 | Shirley A Pope | 5.00 | Review correspondence and file same (1.0); review docket for newly filed pleadings, download and file same (1.0);......; file legal research materials re Zonolite (1.0). |
|---------|----------------|------|---|
| 4/19/02 | Shirley A Pope | 7.00 | Review correspondence and file same (1.0); review docket for newly filed pleadings, download and file same (2.0);......; retrieve, duplicate and organize ZAI supporting documents re chronology at attorney request (2.0);........ |
| 4/21/02 | Shirley A Pope | 4.00 | ............; retrieve, duplicate correspondence re ZAI cases at attorney request (.5); ..........; search Concordance database re motions to lift automatic stay (Price, Kane, Smolkers) and duplicate pleadings at attorney request (1.0);......... |
| 4/22/02 | Shirley A Pope | 6.00 | Review correspondence and file same (1.0); review and file docket for newly filed pleadings, download and file same (1.5); .........; review and file expert materials (1.0); update file indices (1.0). |
| 4/23/02 | Shirley A Pope | 6.00 | Review correspondence and file same (1.0); review docket for newly filed pleadings, download and file same (1.5);........; update file indices re media and scientific articles (1.0); update file indices re legal memoranda (1.0). |
| 4/24/02 | Shirley A Pope | 2.00 | Review correspondence and file same (1.0); review docket for newly filed pleadings, download and file same (1.0). |
| 4/25/02 | Shirley A Pope | 3.00 | Review correspondence  and file same (1.0); review docket for newly filed pleadings, download and file same (1.0);....... |
| 4/26/02 | Shirley A Pope | 6.00 | Review correspondence and file same (1.0); ..... |
| 4/29/02 | Shirley A Pope | 4.50 | Review correspondence and file same (1.50);...... |
| 4/30/02 | Shirley A Pope | 6.80 | Review correspondence and file same (1.5); ........; review legal research materials and file same (1.3). |
| 4/09/02 | Shirley A Pope | 2.00 | Retrieve and duplicate pleadings and legal research related to the Fresenius and Sealed Air adversarial proceedings for attorney review. |
| 4/09/02 | Shirley A Pope | 2.00 | Retrieve and duplicate pleadings and legal research related to the Fresenius and Sealed Air adversarial proceedings for attorney review. |
| 4/15/02 | Shirley A Pope | 4.00 | Retrieve, duplicate and organize supporting documents re Fresenius legal research memoranda. |
| 4/16/02 | Shirley A Pope | 3.00 | Retrieve, duplicate and organize supporting documents re Sealed Air legal research memoranda at attorney request. |
| 4/17/02 | Shirley A Pope | 5.50 | Retrieve, duplicate and organize supporting documents re Sealed Air legal research memoranda (2.0);...... |
| 4/23/02 | Shirley A Pope | 0.50 | Prepare request to library re fraudulent conveyance articles at attorney request. |
| 4/24/02 | Shirley A Pope | 1.00 | Retrieve and duplicate legal memoranda re Fresenius and Sealed Air transactions. |

| 4/30/02 | Shirley A Pope | 1.00 | Bates number Grace insurance documents for production to committees. |
| 5/01/02 | Shirley A Pope | 2.80 | Review correspondence and file same (1.8); review docket for newly filed pleadings, download and file same (1.0). |
| 5/02/02 | Shirley A Pope | 2.80 | Review docket for newly filed pleadings, download and file same (1.8); review correspondence and file same (1.0). |
| 5/03/02 | Shirley A Pope | 4.50 | Review correspondence and file same (1.0); review docket for newly filed pleadings, download and file (1.5);......; organize documents forwarded to expert and file same (1.0). |
| 5/06/02 | Shirley A Pope | 6.80 | Review correspondence and file same (1.5); review docket for newly filed pleading, download and file (1.3);.......... |
| 5/07/02 | Shirley A Pope | 7.30 | ..........; retrieve and organize Gerard filings at attorney request (1.3); review docket for newly filed pleadings, download and file same (2.0);........ |
| 5/09/02 | Shirley A Pope | 1.80 | Review docket for newly filed pleadings, download and file same (1.0);...... |
| 5/10/02 | Shirley A Pope | 6.00 | ........; review correspondence and file same (1.5); review media and scientific articles and file same (2.0). |
| 5/13/02 | Shirley A Pope | 5.00 | Review correspondence and file same (1.0); review docket for newly filed pleadings, download and file same (2.0);........; review and file legal research materials (1.0). |
| 5/14/02 | Shirley A Pope | 5.50 | ..........; review docket for newly filed pleadings, download and file same (2.0). |
| 5/15/02 | Shirley A Pope | 5.50 | Review docket for newly filed pleadings, download and file same (2.0);............; file legal research memoranda (1.0). |
| 5/17/02 | Shirley A Pope | 7.50 | ............; review docket for newly filed pleadings, download and file same (2.0);..........; update legal research files (2.0); review media articles re asbestos and file same (1.0). |
| 5/20/02 | Shirley A Pope | 4.30 | ..........; review docket for newly filed pleadings, download and file same (2.0);....... |
| 5/21/02 | Shirley A Pope | 4.50 | ............; review correspondence and file same (1.5); review docket for newly filed pleadings, download and file same (1.0). |
| 5/22/02 | Shirley A Pope | 4.50 | Review correspondence and file same (1.5);........; review docket for newly filed pleadings and file same (1.0);....... |
| 5/23/02 | Shirley A Pope | 8.00 | Review correspondence and file same (1.0); organize legal research and file same (1.5); review docket for newly filed pleadings and file same (2.0);........; organize attorney work product and file same (1.5). |
| 5/29/02 | Shirley A Pope | 4.00 | Review correspondence and file same (1.0); review docket for newly filed pleadings, download and file same (2.0);........ |
| 5/30/02 | Shirley A Pope | 5.00 | Review correspondence and file same (1.5); review docket for newly filed pleadings and download same (1.5);........; update legal research files (1.0). |

| 5/31/02 | Shirley A Pope | 2.30 | ...........; review correspondence and file same (1.0). |
| 5/20/02 | Shirley A Pope | 4.00 | Organize and duplicate Sealed Air key documents (1.5): copy check exhibits attached to legal memorandum at attorney request (1.5);........ |
| 5/21/02 | Shirley A Pope | 4.00 | Organize expert documents and file same (2.0);...... |
| 5/22/02 | Shirley A Pope | 3.00 | Organize key documents from Skadden Arps Sealed Air production (1.0); review docket for newly filed pleadings, download and file same (1.0); enter pleadings ( adversary proceeding 2-2210) in Concordance database (1.0). |

Response Exhibit 1

As the Fee Auditor is aware from the August 26, 2002, hearing, and as K&E has discussed in its response to the Fee Auditor's initial report regarding the fourth interim period and in its response to the Fee Auditor's initial report regarding the first through third interim periods, the kinds of tasks listed in Exhibit A to the Initial Report are not secretarial-type tasks, but are, instead, tasks best suited to paraprofessionals. Indeed, as discussed at the August 26, 2002, hearing, K&E's July 2002 and subsequent fee applications more fully describe the time entries for similar tasks so as to clearly indicate that they are not merely ministerial in nature.

Nonetheless, it is important to note that K&E's paralegals perform a number of diverse and critical functions in these chapter 11 cases, some of which the Initial Report characterizes as "ministerial". K&E has exercised, and continues to exercise, care to ensure that the best-suited and most cost-effective individual is assigned to complete these kinds of tasks. K&E nonetheless is constantly working to decrease administrative costs by evaluating the need for such tasks and by assigning them to lower-billed individuals when appropriate.

In particular, Shirley Pope, the litigation legal assistant, has the primary responsibility of assisting the K&E litigation team of attorneys by performing the myriad tasks described below. Primarily, Ms. Pope has been charged with creating and maintaining the voluminous case files required in these chapter 11 cases, which currently include fifteen (15) cabinets of documents, three complex, computer-based databases and 300 boxes of documents produced to the plaintiffs in the fraudulent conveyance adversary proceeding. These case files support both the complex litigation at the heart of these chapter 11 cases and the bankruptcy-related legal proceedings.

One of Ms. Pope's other critical duties is to review all correspondence and pleadings in order to "learn" the case and to "know" the files, which she must do in order to properly support the K&E litigation team of attorneys. Furthermore, a knowledgeable individual such as Ms. Pope must review this large amount of documents and correspondence on an intake basis to determine which members of the litigation team should receive such materials. In many cases, Ms. Pope is the most efficient person to perform this task because her billing rate is less than that of an attorney who would otherwise have to be assigned to the task. This role is primarily reflected in the K&E fee application detail in certain entries such as "reviewing correspondence", some of which are listed in Exhibit A to the Initial Report.

Response Exhibit 2

As discussed in K&E's responses to the Fee Auditor's initial and final reports regarding the fourth interim period, and as discussed at the August 26, 2002, hearing, and as again discussed in K&E's response to the Fee Auditor's initial report regarding the first, second and third interim periods, K&E's attorneys operate in teams because of the complex nature of asbestos mass tort liability cases in general, and these chapter 11 cases in particular. Very often, therefore, the subject matter of a hearing, especially the regularly scheduled omnibus hearings at which Judge Fitzgerald hears all matters pending before the Bankruptcy Court that month, will fall within the bailiwick of two or more K&E attorneys, making it far more efficient (and advantageous to the Debtors) to have those attorneys attending the particular hearing than to have one attorney spend the time coming up to speed on issues that are not within his or her particular purview.

For example, David Bernick, a litigator, is the senior partner in charge of the K&E team and has overall responsibility for these chapter 11 cases. Although he is very experienced in handling asbestos-related bankruptcy cases, Mr. Bernick is not a bankruptcy specialist. He focuses primarily on the litigation matters at the heart of these chapter 11 cases. He has a team of litigation and other specialists who are divided into smaller units of different attorneys assigned to each of the separate, major litigation matters that are running concurrently on separate tracks; these matters include the fraudulent conveyance adversary proceeding, which now is scheduled for trial in December 2002, and, in conjunction with special counsel, the Zonolite attic insulation ("ZAI") science trial for determining whether ZAI poses any scientific risks that may lead to liability for the Debtors. Mr. Bernick attends those hearings at which litigation matters are before the Court.

James Kapp, a bankruptcy specialist and K&E partner, supervises the bankruptcy team and is generally responsible for all bankruptcy-related matters in these chapter 11 cases. He also oversees the agenda (and ensures that the K&E team is prepared for every matter on the agenda) for each omnibus hearing. For example, Mr. Kapp is responsible for all matters pertaining to the automatic stay, acquisitions, employee matters, executory contracts and all other general business operations requiring interface between the Debtors, their constituents and the Bankruptcy Court. Mr. Kapp is also responsible for all matters concerning the retention of professionals and their compensation. Mr. Kapp's presence is thus generally required at each hearing.

Janet Baer, a bankruptcy specialist with significant litigation experience, is the primary liaison between the bankruptcy and litigation sides of the team. She is generally responsible to Mr. Bernick for the following matters: collateral litigation outside the Bankruptcy Court, enforcing the preliminary injunction put into place by the Court at the commencement of these chapter 11 cases (the "Preliminary Injunction"), all environmental issues, the bar date aspects of the case management motion and order, drafting proof of claim ("POC") forms (other than those relating to personal injury claims) and negotiating the content thereof with various constituencies, preparing and negotiating all bar date-related materials, developing the extensive, multi-million dollar bar date notice program, and a number of collateral duties relating to the science trial, including the filing of ZAI claims, objecting to ZAI claims and issues related to the science trial special counsel and budget. Ms. Baer attends those hearings at which her particular matters are before the Court.