IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: November 29, 2002.**
**Hearing Date: December 16, 2002 at 10:00 a.m., if objections are received.**

## DEBTORS' MOTION FOR AUTHORITY TO AMEND
## AGREEMENT FOR SALE OF REAL PROPERTY

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by

their undersigned counsel, respectfully move this Court (the "Motion") for the entry of an order

authorizing the Debtors to amend that certain Agreement for Sale of Real Property dated August

2, 1995 (as amended, the "Sale Agreement") by and among two of the Debtors, Axial Basin

Ranch Company ("ABR") and H-G Coal Company ("H-G" and together with ABR, the

"Seller"), and Peabody Development Company (the "Buyer"); and in support thereof,

respectfully state the following:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this motion is proper under 28 U.S.C. § 1408.

2.      The statutory predicates for this Motion are sections 105 and 363(b) of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

3.      On April 2, 2001, the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.      On August 2, 1995, pursuant to the Sale Agreement, the Seller agreed to sell to the Buyer 14,257 acres of owned real property located in Routt County, Colorado (the "Land") for a purchase price of four million dollars (the "Purchase Price"). The terms of the Sale Agreement required the Seller to retain 1,280 acres of the Land where the Seller had operated a coal mine (the "Retained Land") to complete certain remediation obligations consisting of replanting the Retained Land and other reclamation activity (the "Remediation Obligation"). The entire Purchase Price was paid to Seller on the closing date and no additional consideration was to be paid for the Retained Land.

::ODMA\PCDOCS\DOCS_DE\58575\1
91100-001\DOCS_DE:58575.1

5.      The Sale Agreement provides that the Seller is to convey the Retained Land to the Buyer within five (5) days after the completion of the Remediation Obligation. The Debtors believe that the Remediation Obligation will be completed sometime in 2004.

6.      The Remediation Obligation arises under Colorado Division of Mining and Geology ("CDMG") Permit # C-80-003 (the "Remediation Permit"). In connection with the Remediation Permit, the Debtors posted a bond in favor of CDMG in 1977 (the "Remediation Bond"). The Remediation Bond is currently in the amount of approximately $28,000.

7.      The Buyer recently approached the Debtors regarding the possibility of taking title to the Retained Land prior to the completion of the Remediation Obligation. On November 6, 2002, the Seller and the Buyer executed the third amendment to the Sale Agreement, subject to Court approval, providing for the early conveyance of the Retained Land to the Buyer (the "Third Amendment"), a copy of which is attached hereto as Exhibit A. In particular, the Third Amendment provides, in part, that: (a) the Buyer would arrange for the Remediation Permit to be transferred from the Seller to the Buyer; (b) the Buyer will post the Remediation Bond, allowing for the release of the bond posted by the Debtors; and (c) the Buyer would assume the Remediation Obligation and hold the Seller harmless therefor (collectively, the "Transfer Obligations").

**Relief Requested**

8.      By this Motion, the Debtors seek the entry of an order approving the Third Amendment.

**Legal Basis for Relief**

9.      The Debtors respectfully submit that entering into the Third Amendment satisfies the governing standards for a transaction promulgated in the Third Circuit. Under section 363(b)

of the Bankruptcy Code, the debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Courts within this Circuit interpreting section 363(b) of the Bankruptcy Code have held that transactions should be approved under section 363(b) when they are supported by sound business judgment of management. See In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Phoenix Steel Corp., 82 B.R. 334, 335-336 (Bankr. D. Del. 1987) (judicial approval requires a showing that the proposed transaction is fair and equitable and that a good business reason exists for completing the transaction).

10.    The Debtors' management has determined in its business judgment that the Third Amendment is in the best interests of the Debtors' estates and creditors. Amending the Sale Agreement relieves the Debtors' estates of the liability related to the Remediation Obligation. In addition, the Third Amendment allows the Debtors to recover the Remediation Bond immediately.

11.    Further, the Debtors will be eliminating the risk of the Remediation Obligation continuing for a longer than expected time period. For example, in the event that a natural disaster destroyed the replantings, the owner of the Retained Land would be obligated to restart the remediation process. In exchange for the Buyer's assumption of this liability and the posting of the Remediation Bond, the Debtors will surrender only the Retained Land – property which already has been sold to the Buyer and in which the Debtors merely hold legal title with no equitable interest.

12.    Pursuant to Bankruptcy Rule 6004(g), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for 10 days after entry of the order, see Fed. R. Bankr. P. 6004(g) (added by

the 1999 Amendments to the Federal Rules of Bankruptcy Procedure). The purpose of Bankruptcy Rule 6004(g) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. See Advisory Committee Notes to Bankruptcy Rule 6004(g).

13.    Although Bankruptcy Rule 6004(g) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 10-day stay period, Collier on Bankruptcy suggests that the 10-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy ¶ 6004.09 (15th ed. 1999). Furthermore, Collier on Bankruptcy provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal. Id.

14.    Accordingly, the Debtors request that, provided no objection is received, or in the event an objection is filed it is satisfactorily resolved and the objecting parties agree to a waiver, the provisions of Rule 6004(g) be waived and the sale be allowed to close immediately upon entry of an order granting the relief requested herein.

## Notice

15.    Notice of this Motion has been given to: (i) the Buyer; (ii) the United States Trustee, (iii) counsel to the DIP Lender, (iv) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (v) counsel to all official committees appointed by the United States Trustee and (vi) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

-5-

**No Prior Request**

16.    No prior Application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court (i) authorize the Debtors to enter into the Third Amendment; (ii) waive the 10 day stay under Bankruptcy Rule 6004(g), and (iii) provide such other and further relief as the Court deems just and proper.

Dated:  November 11, 2002

> KIRKLAND & ELLIS
> James H.M. Sprayregen, P.C.
> James W. Kapp III
> Christian J. Lane
> Roger J. Higgins
> 200 East Randolph Drive
> Chicago, Illinois 60601
> (312) 861-2000
>
> and
>
> PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.
>
> Laura Davis Jones (Bar No. 2436)
> Scotta E. McFarland. (Bar No. 4184)
> 919 North Market Street, 16th Floor
> P.O. Box 8705
> Wilmington, DE 19899-8705 (Courier 19801)
> Telephone: (302) 652-4100
> Facsimile: (302) 652-4400
>
> Co-Counsel for the Debtors and Debtors in Possession