IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: November 29, 2002**
**Hearing Date: December 16, 2002 at 10:00 a.m.**

## MOTION TO AMEND THE ORDER AUTHORIZING THE DEBTOR TO EMPLOY AND COMPENSATE CERTAIN PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF THE DEBTORS' BUSINESS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move the Court (the "Motion") for entry of an order pursuant to sections 105 and 363(b) of title 11, United States Code (as amended, the "Bankruptcy Code"), amending that certain Order Pursuant to 11 U.S.C. §§ 1107(a) and 1108 Authorizing the Debtors to Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Business

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

dated May 3, 2001 (the "Original Order").[2]  In support of this Motion, the Debtors respectfully state as follows:

## Jurisdiction

1.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this motion is proper under 28 U.S.C. § 1408.

2.      The statutory predicates for this Motion are sections 105 and 363(b) of the Bankruptcy Code and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

3.      On April 2, 2001, the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.      On April 2, 2001, the Debtors' filed a motion seeking the entry of the Original Order.  In particular, the Debtors sought to continue, in their day-to-day business operations, to utilize certain professionals, including attorneys, accountants, actuaries and consultants (collectively, the "Ordinary Course Professionals").   The Ordinary Course

---

[2]    Capitalized terms not defined herein have the meaning set forth in the Original Order.

Professionals are not involved in the administration of the Chapter 11 Cases, and the Debtors'

bankruptcy professionals have been retained by separate, individual applications. Reliance upon

the assistance of Ordinary Course Professionals with regard to certain discrete matters is

necessary to allow the Debtors to continue to operate their businesses with sound business

practice.

5.    On May 3, 2001, this Court entered the Original Order which authorized

the Debtors to pay Ordinary Course Professionals up to $50,000 per month (the "Monthly Cap")

and up to $300,000 in total per professional during the pendency of these Chapter 11 Cases (the

"Total Expenditure Cap"). The Ordinary Course Professionals utilized or expected to be utilized

by the Debtors were identified on an exhibit to the original motion which the Debtors amend

from time to time.

**Relief Requested**

6.    The Debtors respectfully request authority to increase the Total

Expenditure Cap to $600,000 (an increase of $300,000) during the pendency of these Chapter 11

Cases.

**Basis for Relief**

7.    In the near future, the Ordinary Course Professionals will begin to exceed

the Total Expenditure Cap set by the Original Order. The increase of the Total Expenditure Cap

is necessitated solely by the length of the Chapter 11 Cases and is neither the result of increases

in the monthly fees billed by the Ordinary Course Professionals nor of excess activity being

performed by the Ordinary Course Professionals. This Motion does not seek to increase the Monthly Cap.

8.    Although the Debtors filed their Chapter 11 Cases over a year and a half ago, the Debtors have continued to diligently pursue their progress toward completing their reorganization. In particular, these Chapter 11 Cases were filed as a result of mounting asbestos-related litigation liabilities rather than as a result of difficulties with the Debtors' core businesses. Defining these liabilities and then providing for the payment of valid claims on a basis that preserves the Debtors' core business operations is a complex process that is central to resolving these Chapter 11 Cases. Given its nature, this process involves significant litigation that is, as the Court has recognized, taking time to resolve. Nonetheless, until this central issue is resolved, little progress can be made towards developing a viable plan of reorganization. Because of the time necessary to complete this litigation and then to formulate and implement a plan of reorganization, the Total Expenditure Cap authorized under the Original Order should be increased.

9.    Increasing the Total Expenditure Cap to $600,000 during the pendency of these Chapter 11 Cases will likely eliminate the need for the Debtors to file numerous additional motions with the Court requesting authority to pay certain Ordinary Course Professionals higher amounts. Such a course of action, if required, could be a significant drain on the Debtors' resources as there are approximately one hundred Ordinary Course Professionals utilized by the Debtors. Nevertheless, the increase to the Total Expenditure Cap will not eliminate the oversight function of the Court and other parties-in-interest because, pursuant to the Original Order, the

Debtors will still be required to file quarterly statements disclosing how much they paid each Ordinary Course Professional.

10.     Additionally, the operation of the Debtors' businesses would be hindered if each of the Ordinary Course Professionals were either (a) unable to be retained or paid for their services, or (b) required to submit to the Court an application, affidavit and proposed retention order and apply for approval of its employment and compensation. Further, a number of the Ordinary Course Professionals are unfamiliar with the fee application procedures employed in bankruptcy cases and might be unwilling to continue working with the Debtors if these requirements are imposed.

11.     In sum, increasing the Total Expenditure Cap will minimize the Debtors' expenses and facilitate the continued success of the Debtors' business operations and thus is in the best interests of the Debtors' estates.

12.     The Debtors further request that, except as otherwise expressly provided in the order granting this Motion, the terms of the Original Order shall remain in full force and effect.

13.     The Debtors reserve the right to request authority to increase the amounts that they are authorized to pay Ordinary Course Professionals in the future if the need arises.

### Notice

14.     Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to agent for the prepetition lenders, (iv) counsel to the committees appointed by the United States Trustee and (v) those

parties that requested papers under Fed. R. Bankr. P. 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

### **No Prior Request**

15.    No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto, authorizing the Debtors to increase the Total Expenditure Cap to $600,000 during the pendency of these Chapter 11 Cases; and granting such other and further relief as is just and proper.

Dated:  November 11, 2002

Respectfully submitted,

KIRKLAND & ELLIS
David M. Bernick, P.C.
James H.M. Sprayregen, P.C.
James W. Kapp III
Christian J. Lane
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

Laura Davis Jones (Bar No. 2436)
Scotta E. McFarland (Bar No. 4184)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession