## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## FEE APPLICATION OF PACHULSKI, STANG, ZIEHL,
## YOUNG & JONES P.C. FOR THE FIFTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Fee Application of Pachulski, Stang, Ziehl, Young & Jones P.C. for the Fifth Interim Period (the "Application").

## BACKGROUND

1.      Pachulski, Stang, Ziehl, Young & Jones P.C. ("Pachulski") was retained as local counsel to the debtors. In the Application, Pachulski seeks approval of fees totaling $124,876.50 and costs totaling $76,888.61 for its services from April 1, 2002, through June 30, 2002.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30,

1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Pachulski an initial report based on our review, and received a response from Pachulski, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.        In our initial report, we noted that timekeepers LAG and HRR occasionally did not include sufficient detail in their time entries. Rule 2016-2(d) of the Delaware Local Rules states "activity descriptions . . . shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary . . ." This issue had been raised in previous reports and we advised certain professionals to provide more detailed time entries in the future. We again asked that Pachulski continue to advise all of its timekeepers regarding this matter.

### Specific Time and Expense Entries

4.        In our initial report, we noted that Pachulski sought reimbursement for secretarial overtime in the amount of $1,720.24 for this interim period. Paragraph II.E.7. of the Guidelines, discussing nonreimbursable overhead, provides that "[o]verhead includes word processing, proofreading, secretarial and other clerical services...." In the absence of further explanation, it appeared that this secretarial overtime constituted nonreimbursable overhead. Thus we asked Pachulski to explain why an exception should be made for these charges. Pachulski responded as follows:

Expenses for Secretarial Overtime. PSZYJ acknowledges that if such services were

only required to be performed during normal business hours, such services would constitute "overhead." Indeed, PSZYJ does not seek reimbursement for "overhead" incurred during regular business hours. The overtime worked by secretaries and paralegals in the chapter 11 cases should not be characterized as "overhead." Given the fact that the chapter 11 cases are unusually large involving an extraordinary number of filings and services, often time such filings could not be completed in a standard workday, and, therefore, overtime for non-attorneys is appropriate. Additionally, in certain instances, PSZYJ will receive time sensitive filings after normal business hours, thereby necessitating overtime to timely file and serve such pleadings. Further, it is necessary to have secretaries and paralegals work overtime to prepare for client meetings and hearings. These circumstances are not within the control of PSZYJ. Overtime is charged to all clients. All of the overtime requested was for work performed by secretaries and paralegals after hours for one of the tasks set forth above. Accordingly, such charges should not be considered "overhead" but should be reimbursable for PSZYJ.

We accept this explanation and thus have no objection to these fees.

5.    In our initial report, we noted that during the Application period professionals DWC(280.00), CAK(120), PEC(120.00) spent a total of 3.70 hours for a total expense to the estate of $914.00 on tasks that appear to be ministerial or inappropriate for a professional of that level. The time entries are provided below.

| 04/02/02 | DWC | Review and revise critical dates calendar | 0.60 | 168.00 |
|---|---|---|---|---|
| 04/11/02 | DWC | Review and revise critical dates calendar | 0.60 | 168.00 |
| 04/19/02 | CAK | Maintain document control | 0.10 | 12.00 |
| 04/19/02 | CAK | Maintain document control | 0.10 | 12.00 |
| 04/24/02 | PEC | Prepare letter to Rust consultants enclosing Proof of Claim Forms received from the Clerk's Office. **Prepare for fed-ex.** (emphasis added) | 0.50 | 60.00 |
| 05/13/02 | DWC | Prepare package for Judge Fitzgerald Containing additional documents added To Agenda since preliminary draft. | 0.80 | 224.00 |
| 05/14/02 | DWC | . . . draft notice of motion (.4); draft cert. of service (.2) | .60 | 168.00 |
| 06/03/02 | DWC | . . .draft notice re: same(.4) | | |

The U.S. Trustee Guidelines Rule, I.E. states ". . . [i]n evaluating fees for professional services, it

is relevant to consider various factors including the following: the time spent; the rates charged; whether the services were necessary t o the administration of, or beneficial towards the completion of, the case at the time they were rendered; whether services were performed within a reasonable time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;. . .".  Thus we asked Pachulski to explain why these professionals performed seemingly ministerial tasks, or tasks inappropriate for their level, at their full hourly rate.  Pachulski responded as follows:

> The time entries for DWC:
>
> 04/02/02 and 04/11/02, Review and revise critical dates calendar, each for 0.60 hours and $168.00 – The "critical dates" calendar is of paramount importance in meeting all statutory and other deadlines established in these cases.  As attorneys are ultimately responsible for deadlines in these cases and any case, it is essential that attorneys take time to review the calendar for accuracy, especially since attorneys are privy to deadlines and extensions that paralegals and other support staff often are not, as the attorneys are the ones involved in negotiations and attending the hearings in these cases.
> 05/13/02, Prepare package for Judge Fitzgerald containing additional documents added to Agenda since preliminary draft at .80 hours for a total of $224.00 – The description was not artfully crafted.  The task included reviewing such enclosures and drafting a letter to the Court explaining the changes in the agenda and indicating where the enclosed documents were reflected in the amended agenda and any change of status.
> 05/14/02, . . . draft notice of motion (.4); draft cert. of service (.2) at .60 hours and $168.00 – These tasks were completed after hours by DWC and were necessary to ready the Motion to Pay Stay Bonuses and to file such motion in a timely manner.
> 06/03/02, . . . draft notice re: same (.4) – Unable to determine task associated with reference.  We will accept a write off on this amount.
>
> The time entries for CAK:
>
> 04/19/02, 2 entries, Maintain document control, each at .10 hours and $12.00 – These tasks are necessary to manage the thousands of pleadings and correspondence documents received by the Debtors in these cases.

The time entry for PEC:

04/24/02, Prepare letter to Rust consultants enclosing Proof of Claim Forms received from the Clerk's Office. Prepare for fed-ex. (emphasis added), at .50 hours for a total of $60.00 – The description was not artfully crafted. The paralegal is managing the proofs of claim received by the firm and by the Court to ensure that they are properly registered by the claims agent in these cases.

We believe we understand the explanations for these tasks. However, in several instances the explanation does not satisfy our concerns. Thus we recommend the following corresponding reductions.

*05/14/02 for DWC*: Regardless of the circumstances described, we still believe that this task could have been handled by a professional at a lower hourly rate and thus we recommend a reduction of $168.00 in fees.

*06/03/02 for DWC*: We acknowledge Pachulski's agreement to a reduction, and thus recommend a reduction of $112.00 in fees.

6.      In our initial report, we noted that Pachulski is seeking reimbursement for a number of expenses totaling $2,913.82 for which the individual entries fail to provide detail sufficient to determine the reasonableness of the same. The time entries are provided below.

| | | | |
|---|---|---|---|
| 02/25/02 | AT | Auto Travel Expense–Eagle[E109] | $120.40 |
| 03/18/02 | AT | Auto Travel Expense–Eagle[E109] | $110.40 |
| 04/08/02 | TE | Travel Expense–Lawyers Travel Service Fee(DWC[E110] | $40.00 |
| 04/22/02 | AT | Auto Travel Expense–Eagle[E109] | $65.90 |
| 05/18/02 | AT | Auto Travel Expense–Eagle[E109] | $60.95 |
| 05/19/02 | AT | Auto Travel Expense–Eagle[E109] | $66.40 |
| 05/20/02 | AT | Auto Travel Expense–Eagle[E109] | $138.00 |
| 05/21/02 | AT | Auto Travel Expense–Eagle[E109] | $64.40 |
| 05/21/02 | AT | Auto Travel Expense–Eagle[E109] | $266.80 |
| 12/28/01 | AF | Air Fare–Lawyers Travel Service fee (LDJ)[E110] | $1,667.00 |
| 06/22/02 | AT | Auto Travel Expense–Eagle[E109] | $64.40 |
| 04/22/02 | HT | Hotel Expense[E110](Hotel/BreakfastDWC) | $249.17 |

With regard to expenses, the Guidelines Rule, paragraph II.E. states "[f]actors relevant to a determination that the expense is proper include the following: . . .3. [w]hether applicant has provided a detailed itemization of all expense including the date incurred, description of expense (e.g., type of travel, type of fare, rate, destination), method of computation, and where relevant, name of the person incurring the expense and purpose of the expense. . .". Thus, we asked Pachulski to augment the entries listed.  Pachulski's response is provided in Response Exhibit 1.  We appreciate the additional information and thus we have no objection to these expenses.

7.      In our initial report we noted that on January 29, 2002, professional LDJ spent a total of $120.00 on a meal.  The expense entry is provided below.

01/29/02   BM   Business Meal – Cavanaugh's(LDJ)[E111]  $120.00

The entry did not indicate how many people attended this business meal.  Thus we asked Pachulski to augment this entry so that we could determine the reasonableness of the same.   Pachulski responded as follows:

This was a catered meal brought into a PSZYJ conference to feed approximately 12 persons (including attorneys LD Jones, DW Carickhoff, J. Kapp, J. Baer, D. Bernick and client representatives) preparing for the hearing on that date or meeting after such hearing.

We accept this explanation and thus we have no objection to this expense.

8.      In our initial report, we noted  that in the expense entries there are apparent duplicate entries totaling $186.50.  The entries are provided below.

| | | | |
|---|---|---|---|
| 11/20/01 | BM | Business Meal–Healy's (LDJ)[E111] | $61.00 |
| 11/20/01 | BM | Business Meal–Healy's (LDJ)[E111] | $61.00 |
| | | | |
| 11/21/01 | BM | Business Meal–Healy's (LDK)[E111] | $32.25 |
| 11/21/01 | BM | Business Meal–Healy's (LDK)[E111] | $32.25 |

Thus we asked Pachulski to advise us as to how these apparent duplicate entries would be addressed.

Pachulski responded as follows:

These are duplicate entries and we will take a reduction in the amount of $93.25.

We accept Pachulski's response and thus we recommend a reduction of $93.25 in expenses.

## CONCLUSION

9.      Thus we recommend approval of fees totaling $124,596.50 ($124,876.50 minus $280.00) and costs totaling $76,795.36 ($76,888.61 minus $93.25) for Pachulski's services from April 1, 2002, through June 30, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____

Warren H. Smith
Texas State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 15th day of November, 2002.

_____
Warren H. Smith

## SERVICE LIST

Notice Parties

### The Applicant

Laura Davis Jones
Paula Galbraith
Patty Cuniff
PACHULSKI, STANG, ZIEHL, YOUNG &
JONES P.C.
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)

### The Debtors

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

### Counsel for the Debtors

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

### Counsel for the Official Committee of Unsecured Creditors

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

### Counsel to the Official Committee of Property Damage Claimants

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price &
Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

### Counsel to the Official Committee of Personal Injury Claimants

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

### Official Committee of Equity Holders

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Response Exhibit 1

Expense:
02/25/02   AT   Auto Travel Expense – Eagle[E109]  $120.40
Detail:  Car service for co-counsel for 02-25-02 Hearing.


Expense:
03/18/02   AT   Auto Travel Expense – Eagle[E109]  $110.40
Detail:  Car service for co-counsel for 03-18-02 Hearing.


Expenses:
04/08/02   AT   Travel Expense – Lawyers Travel Service Fee (DWC) [E110]  $40.00  AND
04/22/02   AT   Auto Travel Expense – Eagle[E109]  $65.90
Detail:  Car service and travel arrangement expense for DWC for 04-22-02 Hearing in Pittsburgh, PA.


Expenses:
05/18/02   AT   Auto Travel Expense – Eagle[E109]  $ 60.95
05/19/02   AT   Auto Travel Expense – Eagle[E109]  $ 66.40
05/20/02   AT   Auto Travel Expense – Eagle[E109]  $138.00
05/21/02   AT   Auto Travel Expense – Eagle[E109]  $ 64.40
05/21/02   AT   Auto Travel Expense – Eagle[E109]  $266.80
Detail:  Car service for co-counsel for 05-20-02 Hearing.


Expense:
12/28/01   AF   Air Fare – Lawyers Travel Service fee (LDJ)[E110]  $1,667.00
Detail:  Airfare for LDJ and DWC for 01-03-02 Hearing in Pittsburgh.


Expense:
06/22/02   AT   Auto Travel Expense – Eagle[E109]  $64.40
Detail:  Car service for co-counsel for 06-18-02 Hearing.


Expense:
04/22/02   HT   Hotel Expense[E110](Hotel/BreakfastDWC)  $249.17
Detail:  Hotel and breakfast expense for DWC for 04/22/02 Hearing in Pittsburgh, PA.