## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Objection Deadline: January 30, 2002 (negative notice)**
**Hearing Date: February 25, 2002 (if necessary)**

### APPLICATION OF THE DEBTORS FOR THE ENTRY OF AN ORDER (i) APPROVING THE PAYMENT OF PROFESSIONAL FEES AND EXPENSES AND (ii) AUTHORIZING THE EMPLOYMENT AND RETENTION OF PRICEWATERHOUSECOOPERS LLP AS INDEPENDENT ACCOUNTANTS AND AUDITORS TO THE DEBTORS AND DEBTORS IN POSSESSION

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

hereby submit this application (the "Application") for the entry of an order (i) approving the payment

of professional fees and expenses pursuant to 11 U.S.C. § 501(b) of title 11 of the United States

Code (as amended, the "Bankruptcy Code") and (ii) authorizing the employment and retention of

PricewaterhouseCoopers LLP ("PwC") in the ordinary course of business, as independent

accountants and auditors to the Debtors. In support of this Application, the Debtors state as follows:

---

[1] Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The statutory bases for the relief requested herein are sections 105(a), 363, 503, 1107 and 1108 of the Bankruptcy Code.

## Background

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.      Since the Petition Date, PwC has been actively involved aiding the Debtors with the administration of their estates, including aiding the Debtors' compliance with their reporting requirements under the United States securities laws (the "Securities Laws"), the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Bankruptcy Rules of this Court (the "Local Rules"). Examples of PwC's contributions include:

- reviewing the Debtors' interim consolidated financial statements filed in connection with the Debtors' Forms 10-Q;
- auditing the Debtors' employee benefit plans;
- preparing the creditor matrix used to notify each potential party-in-interest of the commencement of these Chapter 11 Cases;
- aiding in the mailing of the notice of commencement of, and the temporary restraining order issued in, these Chapter 11 Cases;
- aiding in the Debtors' organization and preparation of their initial monthly operating reports; and
- preparing the Debtors' voluminous Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, the "Schedules").

5.    PwC performed this work prior to being retained by the Debtors due to a potential conflict of interest relating to PwC's oversea's representation of one of the Debtors' foreign subsidiaries. Although negotiations between PwC and the Debtors have been ongoing to resolve this potential conflict, an acceptable resolution to both parties has not been found.[2]  Therefore, the Debtors and PwC have agreed that PwC will not perform any additional bankruptcy related services during these Chapter 11 Cases, but will remain engaged as the Debtors' long standing, ordinary course, independent accountants and auditors.

6.    Due to the Debtors' and PwC's diligent work to resolve this potential conflict, each party believed a workable resolution would expeditiously be reached. Therefore, in an effort to protect the Debtors' estates from potential damage, and because the parties were actively pursuing a resolution, PwC continued to work and provide the Debtors' estates with significant value by aiding the Debtors' compliance with their reporting requirements under the Securities Laws, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. Further, PwC's substantial experience working as the Debtors' independent accountants and auditors since 1906, nearly 100 years, has been invaluable throughout these Chapter 11 Cases, as well as with respect to the Debtors' compliance with the Securities Laws and various tax planning and compliance matters. The Debtors anticipate that PwC's retention in these Chapter 11 Cases with respect to such accounting and audit matters will also continue to be important in the future as the Debtors require the services of independent accountants and auditors in the ordinary course of their businesses. Therefore, the Debtors are filing this application requesting (i) that PwC be reimbursed for its postpetition fees and expenses incurred to date as a substantial contribution to the Debtors' estates and (ii) that the Court approve PwC's retention, in the ordinary course, as the Debtors' independent accountants and auditors.

---

[2]A description of this potential conflict of interest is more fully set forth in the affidavit of Philip N. Seamon, a principal in PwC, attached hereto as Exhibit A.

## Relief Requested

7.      By this Application, the Debtors seek authority to compensate PwC for its substantial contribution to the Debtors' estates of (i) $574,743 related to PwC's bankruptcy related services, (ii) $324,000[3] related to PwC's audit services and (iii) $200,000[4] for PwC's tax services for the period from the Petition Date through the date hereof (the "Fee Period") and $39,893.54 for PwC's actual and necessary expenses incurred while rendering such services during the Fee Period. Attached hereto as Exhibit B is a detailed itemization and description of the bankruptcy related services and expenses that PwC rendered during the Fee Period. By this application, the Debtors also seek authority to employ and retain PwC in the ordinary course of business, pursuant to section 363 of the Bankruptcy Code, as independent accountants and auditors during these Chapter 11 Cases.

## Basis for Relief

Substantial Contribution

8.      PwC's fees and expenses incurred to date satisfy the tenets of section 503(b) of the Bankruptcy Code and qualify as a substantial contribution to the Debtors' estates. Under section 503(b)(3)(D) of the Bankruptcy Code, the actual, necessary expenses incurred by a creditor in making a substantial contribution in a case under chapter 11 shall be allowed as administrative expenses. 11 U.S.C. § 503(b)(3)(D). "The applicable test to determine whether a party has made

---

[3]In accordance with the terms of its retention with the Debtors, PwC is reimbursed for audit and review services of the Debtors' consolidated financial statements based upon a fixed annual fee of $700,000. PwC's request for reimbursement herein of $324,000, however, is based upon the proportionate value of PwC's audit and review services provided to the Debtors since the Petition Date. The balance of the $700,000 would be billed to the Debtors concurrent with the performance of audit and review services performed December 2001 to March 2002.

[4]In accordance with the terms of its retention with the Debtors, PwC is reimbursed for its tax compliance services based upon a fixed monthly fee of $25,000 per month. The tax compliance retention agreement between the parties expired, however, in October of 2001. PwC is also reimbursed by the Debtors for its tax consulting services. PwC's fees for tax compliance and consulting services provided to the Debtors incurred since the Petition Date is $200,000 ($175,000 compliance and $25,000 consulting).

a 'substantial contribution' entitling it to administrative expenses pursuant to section 503(b)(3)(D) is whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." In re AM International, Inc., 203 B.R. 898, 904 (D. Del. 1996), *citing* Lebron v. Mechem Financial, Inc., 27 F.2d 937, 944 (3d Cir. 1994). Under the standard of the Third Circuit set forth in Lebron, "services which substantially contribute to the case are those which foster and enhance . . . the progress of reorganization." Lebron, 27 F.2d at 944, *quoting* Matter of Consol. Bancshares, Inc., 785 F.2d 1249, 1253 (5th Cir. 1986).

9.    In addition to qualifying for administrative priority under section 503(b)(3)(D), PwC's fees and expenses also qualify under section 503(b)(1)(A) of the Bankruptcy Code. Under section 503(b)(1)(A) of the Bankruptcy Code, the actual, necessary costs and expenses of preserving the estate shall be allowed as administrative expenses. 11 U.S.C § 503 (b)(1)(A). This section is designed to grant administrative priority for expenses that arise out of postpetition transactions with the debtor in possession and that directly and substantially benefit the estate. In re Mid-American Waste System, Inc., 228 B.R. 816, 821 (Bankr. D. Del. 1999).

10.    The professional fees and expenses requested herein directly arose out of the postpetition work performed by PwC. Furthermore, the work performed by PwC provided a clear and substantial benefit to the Debtors and their estates. Without PwC's efforts, the Debtors would not have been able to mail the notice of commencement of these Chapter 11 Cases or the notice of the temporary restraining order issued on the Petition Date. Without PwC's efforts, the Debtors would not have been able to complete their initial monthly operating report in accordance with the Local Rules. In fact, the 14,000 plus pages of the Schedules prepared by the Debtors could not have been completed without PwC's extensive work in these Chapter 11 Cases. Clearly, without PwC's support, the Debtors would not have been able to comply with their reporting requirements under

the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. The amount of the fees requested, therefore, is fair and reasonable considering: (a) the complexity of these Chapter 11 Cases, (b) the time PwC expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under the Bankruptcy Code.

11.    Furthermore, in accordance with section 503(b)(3)(D) and the Third Circuit's holding in Lebron, PwC and its professionals have helped foster and enhance the progress of reorganization by aiding the Debtors' (i) mailing of the notice of commencement of these Chapter 11 Cases, (ii) filing of the initial monthly operating report and (iii) filing of the Schedules. Therefore, pursuant to Third Circuit law, PwC's fees and expenses merit administrative expense priority.

12.    In addition, considering PwC's past experience working as the Debtors' independent accountants and auditors for nearly 100 years, its knowledge and understanding of the Debtors' operations allowed it to provide a significant benefit to the Debtors' compilation and preparation of the information necessary to complete the creditor matrix and the Schedules. PwC's services were also required in order for the Debtors to comply with the Securities Laws and timely file their Forms 10-Q. Thus, by using the services of PwC, the Debtors avoided the strategic business interruption and the duplicative costs associated with obtaining substitute professionals to replace PwC. This, in turn, increased the funds available for the Debtors' creditors. Accordingly, PwC's fees and expenses incurred to date warrant administrative expense priority in accordance with section 503(b)(1)(A) of the Bankruptcy Code. Consequently, the Debtors respectfully request that PwC's reasonable postpetition fees and expenses be entitled to administrative expense priority under section 503(b) of the Bankruptcy Code.

Employment and Retention

13.    PwC has a wealth of experience in providing accounting, audit, tax and data-management services to public companies and has an excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States. Furthermore, PwC has been providing independent accounting and audit services to the Debtors since 1906, nearly 100 years.

14.    In light of PwC's extensive experience representing the Debtors, the Debtors' management believes that PwC is well qualified to perform the requested services, given their extensive knowledge and expertise in accounting, audit, tax and data-management services, as well as their familiarity with the Debtors' operations. In addition, PwC will only provide those traditional services PwC has provided to the Debtors for nearly 100 years, and will not provide any bankruptcy or business recovery services during these Chapter 11 Cases.

15.    Such accounting and audit services are necessary to enable the Debtors to comply with the Securities Laws. Indeed, the Debtors must engage independent accountants and auditors in the ordinary course of their businesses in order to comply with the Securities Laws. Further, by using the services of PwC, the Debtors will avoid the strategic business interruption and the duplicative costs associated with obtaining substitute professionals to replace PwC. Therefore, it is in the best interests of the Debtors' estates and creditors that PwC is retained, in the ordinary course, as the Debtors' independent accountants and auditors.

Legal Basis for Employment and Retention

16.    The phrase "professional person" as used in 11 U.S.C. § 327(a) is a term of art reserved for those persons who play an intimate role in the reorganization of debtor's estate. In

re Johns-Manville Corp., 60 B.R. 612, 620 (Bankr. S.D.N.Y. 1986). Upon review of section 327(a)

of the Bankruptcy Code, the Court in Manville went on to find that:

> The catch all language "or other professional persons" cannot be considered other than in the context of the intimate relationship of the player to services peculiar to the administration of the reorganization process. To hold otherwise opens the door to unnecessary court involvement in potentially absurd hiring situations…[T]he whole spectrum of known specialty occupations from sanitation engineer to the company physician easily could become the subject of retention orders. The penumbra of the s 327(a) term "other professional persons" is quite obviously not intended to cover without limitation all those persons of education, ability and accomplishment in any calling who may be regarded as professionals based upon considerations of societal, governmental or academic accreditation, or their own self-esteem…[P]ersons with such a tangential relationship to the…estate do not fall within the rubric of "professional persons."

Id. at 620; see also In re Seatrain Lines, Inc., 13 B.R. 980, 981 (Bankr. S.D. N.Y. 1981) (Maritime

engineers hired as consultants were not "professional persons" since their retention, while important

in the mechanics of debtor's operation, did not affect the administration of debtor's reorganization).

17.    Some courts have adopted a "qualitative analysis," under which a

"professional person" is defined as an employee that is given discretion and autonomy in some part

of the administration of the debtor's estate. In re Fretheim, 102 B.R. 298, 299 (Bankr. D. Conn. 1989)

("[A]pproval must be sought for the employment of a person with a relatively small task but a large

measure of discretion in performing it but not sought for a person who is to perform an important

but nondiscretionary task."); In re Nedig Corp., 117 B.R. 625 (Bankr. D. Colo. 1990).

18.    Other courts have adopted a quantitative analysis, under which the definition

of "professional person is limited to persons in those occupations which play a central role in the

administration of the debtor proceeding" and not those occupations which are involved in the day-to-

day mechanics of the debtor's business. In re Seatrain Lines, Inc., 13 B.R. at 981 (Bankr. S.D. N.Y.

1981).

19.    Therefore, if a person's status as a "professional" is not determinative; the inquiry of whether they are a "professional person" must focus on that person's duties. Accordingly, "if the duties involved are central to the administration of the estate such duties are professional in nature." In re <u>Sieling Associates Ltd. Partnership</u>, 128 B.R. 721, 723 (Bankr. E.D.Va. 1991) (Recognizing various duties as being central to the administration of the estate including: assisting in the negotiation of the debtor's plan of reorganization; assisting in the adjustment of the debtor/creditor relationship; and disposing of assets of the estate and acquiring assets on behalf of the estate.)

20.    Factors to be considered in determining whether an employee is a professional within the meaning of section 327 "include the following: (1) whether the employee controls, manages, administers invests purchases or sells assets that are significant to the debtors reorganization, (2) whether the employee is involved in negotiating the terms of a plan of reorganization, (3) whether the employee is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations; (4) whether the employee is given discretion or autonomy to exercise his or her own professional judgment in some part of the debtor's estate, i.e. the qualitative approach, (5) to the extent of the employee's involvement in the administration of the debtor's estate, i.e. the quantitative approach; and (6) whether the employee's services involve some degree of special knowledge or skill, such that the employee can be considered a 'professional' within the ordinary meaning of the term." In re First Merchants Acceptance Corporation, 1997 WL 873551, *3 (D. Del. 1997). No one factor above is dispositive and each should be weighed against the others. Id.

21.    Although accountants are commonly considered professionals under section 327 of the Bankruptcy Code, it is an accountant's role in bankruptcy, rather than its status

as an accountant, that controls. <u>In re That's Entertainment Marketing Group, Inc.</u>, 168 B.R. 226.

(N.D. Cal. 1994). (Accounting firm held not to be a "professional person" under 11 U.S.C. 327(a)

where accounting firm employed as an expert witness did not participate in the formulation of

strategy or management of estate or its liabilities, and played only a tangential role in acquiring assets

on behalf of estate pursuant to litigation). Thus, the Debtors are not required to retain PwC simply

because of its status as an accountant.

22.    As described below, PwC will only provide the Debtors with those

accounting, audit and tax services PwC has traditionally provided to the Debtors in the ordinary

course. PwC will not provide the Debtors will any bankruptcy or business recovery services, and

PwC will not play a central role in the Debtors' reorganization. Indeed, PwC will not have any input

with respect to the Debtors' disposition or acquisition of assets, the operation of their business or the

negotiation of the ultimate plan of reorganization proposed in these Chapter 11 Cases. Clearly, PwC

is a "professional" within the ordinary meaning of the word, but PwC is not a professional within

the meaning of section 327(a) of the Bankruptcy Code. Therefore, PwC's retention, in the ordinary

course, as the Debtors' longstanding independent accountants and auditors should be approved, as

in the best interests of the Debtors, their estates and creditors.

<u>Scope of Services</u>

23.    PwC will provide such accounting, audit, tax and other business services as

PwC and the Debtors shall deem appropriate and feasible in order to advise the Debtors in the course

of these Chapter 11 Cases, including but not limited to the following:

a.    **Accounting and Auditing Services**.

i.    Audit the financial statements of the Debtors as may be
required from time to time, and advise and assist in the
preparation and filing of financial statements and disclosure
documents required by the Securities and Exchange

10

Commission including Forms 10-Q as required by applicable law or as requested by the Debtors;

ii.     Audit any benefit plans as may be required by the Department of Labor or the Employee Retirement Income Security Act, as amended;

iii.     Review the unaudited quarterly financial statements of the Debtors as required by applicable law or as requested by the Debtors; and

iv.     Perform other audit related services for the Debtors as may be necessary or desirable.

b.     **Tax Services**.

i.     Review and assist in preparing and filing tax returns;

ii.     Advise and assist the Debtors regarding tax planning issues, including calculating net operating loss carry forwards and the tax consequences of any proposed plans of reorganization, and assist in preparing any Internal Revenue Service ("IRS") ruling requests regarding the future tax consequences of alternative reorganization structures;

iii.     Assist the Debtors in preparing for and undergoing existing and future IRS examinations; and

iv.     Rendering any and all other tax assistance as may be requested from time to time.

24.     PwC, at the request of the Debtors, also may render additional general business consulting and other related accounting and support deemed appropriate and necessary by the Debtors. PwC will not, however, provide any bankruptcy or business recovery services to the Debtors during these Chapter 11 Cases. The accounting and business services enumerated above are necessary to enable the Debtors to comply with the Securities Laws. The Debtors believe that PwC's accounting, audit, tax and related services will not duplicate the services that, subject to this Court entering or having entered appropriate orders, other professionals may provide to the Debtors

11

during these Chapter 11 Cases. PwC will use reasonable efforts to coordinate with the Debtors'

other retained professionals to avoid the unnecessary duplication of services.

## Terms of Retention

25. PwC has agreed to represent the Debtors pursuant to a fixed fee arrangement.

PwC's fees in connection with this engagement will be based upon the estimated time that PwC will

necessarily spend in providing its accounting, audit, tax and business services to the Debtors. The

fixed fee for the audit of the Debtors' financial statements is $700,000, which was reviewed with the

Audit Committee of the Debtors' Board of Directors, and approved in July of 2001. In addition,

PwC audits certain benefit plans sponsored by the Debtors. The fixed fees associated with such

audits, in the aggregate, are $100,000, but the Debtors are reimbursed for such fees by the specific

benefit plan trust. PwC had also agreed to provide the Debtors with tax compliance services for a

fixed fee of $25,000 per month under an agreement which expired in October of 2001. These

compliance services included assistance with any reviews of the Debtors' tax returns instituted by

the Internal Revenue Service. Although the Debtors' management now performs most tax

compliance matters in-house, the Debtors may request that PwC perform certain tax compliance

matters in the future. In the event the Debtors request PwC perform any tax related services, it is

anticipated by the parties that such services would be performed upon terms similar to those set forth

in the October, 2001 agreement, or upon such other terms as the parties may agree. These fees are

adjusted from time to time.

26. In addition to the fees outlined above, PwC will bill the Debtors for reasonable

expenses which are likely to include long distance telephone charges, hand delivery and other

delivery charges, travel expenses, computerized research, transcription costs, and third-party

photocopying charges.

12

27.    As a professional employed by the Debtors in the ordinary course, PwC will not seek compensation and reimbursement of expenses in accordance with the Bankruptcy Code.

28.    PwC will, however, maintain reasonably detailed records of its fees and any actual and necessary costs and expenses incurred in connection with the aforementioned services

29.    PwC has received $250,000 in retainers for services related to the Chapter 11 Cases and has been paid $506,029.56 for prepetition bankruptcy related services rendered. The payments have been applied to outstanding balances for prepetition services related to the filing of the bankruptcy petitions. The Debtors have agreed that any portion of the retainer not used to compensate PwC for its prepetition services and expenses ultimately will be used by PwC to apply against its postpetition billings and will not be placed in a separate account.

## Notice

30.    Notice of this Application has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee and (v) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

31.    No prior Application for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto, authorizing the Debtors to (i) pay the reasonable fees and expenses of PwC incurred during the Fee Period as a substantial contribution to the Debtors' estates, (ii) employ and retain PwC as independent accountants, auditors, tax and business consultants in the ordinary course and (iii) grant such further relief as is just and proper.

Dated: January 10, 2002

> KIRKLAND & ELLIS
> James H.M. Sprayregen
> James W. Kapp III
> Samuel A. Schwartz
> Roger J. Higgins
> 200 East Randolph Drive
> Chicago, Illinois 60601
> (312) 861-2000
>
> and
>
> PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.
>
>
> Laura Davis Jones (#2436)
> David W. Carickhoff, Jr. (#3715)
> 919 North Market Street, 16th Floor
> P.O. Box 8705
> Wilmington, Delaware 19899-8705 (Courier 19801)
> (302) 652-4100
>
> Co-Counsel for the Debtors and Debtors in Possession