## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | |
| | § | **Chapter 11** |
| **W.R. GRACE & CO., et al** | § | **Jointly Administered** |
| | § | **Case No. 01-1139 (JKF)** |
| **Debtors** | § | |

## AMENDED FEE AUDITOR'S FINAL REPORT REGARDING
## INTERIM APPLICATION OF WALLACE KING MARRARO & BRANSON, PLLC
## FOR THE FIRST, SECOND AND THIRD INTERIM PERIODS

This is the amended final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Application of Wallace King Marraro & Branson, PLLC for the First, Second and Third Interim Periods (the "Application").

## BACKGROUND

1.      Wallace King Marraro & Branson, PLLC ("Wallace") was retained as Special Litigation and Environmental Counsel to the Debtors.  In the Application, Wallace seeks approval of fees totaling $1,341,150.90[1] and expenses totaling $316,318.77 for its services from April 1, 2001 through December 31, 2001.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries

_____

[1]This figure represents the amount of fees incurred during this interim period net of the voluntary discounts taken by Wallace and referred to in Paragraph 6 of this Initial Report.  We note that we calculate that the gross amount of fees, prior to this discount, is $1,686,854.50.

included in the exhibits to the Application, for compliance with the Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Wallace an initial report based on our review, and received a response from Wallace, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.      In our initial report we noted that Wallace professionals CHM, BB, MM, TP, and AP do not consistently provide adequate detail in their time entries.   Thus we asked Wallace to please advise these professionals to provide more information in their time entries in the future. Wallace responded as follows:

> More specific entries will be provided in the future consistent with the principle that the fee applications are available to the public including Grace's adversaries in the litigation. We do not want to disclose litigation strategy directly or indirectly through our invoices and fee applications.

While we would not want Wallace to disclose any strategy, we would remind Wallace of the U.S. Trustee Guidelines Rule, II.D.5. which states, "Time entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour.  Services should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry; however, tasks

performed in a project which total a de minimis amount of time can be combined or lumped together if they do not exceed .5 hours on a daily aggregate. Time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication. Time entries for court hearings and conferences should identify the subject of the hearing or conference. If more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." We appreciate Wallace's cooperation.

4.    In our initial report we noted that Wallace professionals BB, AP, MM, LS, NAB, WH, TP, DB, CHM, ACZ, KK and RR consistently lumped their time entries. Thus we asked Wallace to please advise these professionals to avoid lumping their time entries in the future and Wallace responded that it would do so.

5.    In our initial report we noted that prior to the June, 2001 billing cycle, all time entries by all timekeepers were lumped. Therefore, absent April and May, 2001 time being re-processed, it is impossible to assign a specific dollar amount to the cost of any given project worked on during that time period. Wallace responded as follows:

> Wallace King submitted our fee applications for April 2, 2001 through April 30, 2001 and May 1, 2001 through May 31, 2001 before the Court mandated task billing. The U.S. Trustee advised us of this problem and agreed to not object to the April and May statements based upon the inadvertent prior deficiency. All statements after that date have been in the proper form. It is very difficult to reconstruct individual tasks for that period as some timekeepers have left the firm.

We appreciate this explanation and we have no objections to these fees.

6.      In our initial report we noted that Wallace and the Debtor have entered into an

agreement whereby Wallace will discount its fees by 40% in the *Honeywell* matter beginning June

21, 2001 in exchange for an interest in any recovery in that case. We have reviewed all fees including

those fees concerning the Honeywell matter.

7.      In our initial report we noted that Wallace did not provide a project category

summary in its applications.  Wallace responded as follows:

> The project summaries have since been submitted to the Fee Administrator for the
> periods in question.  In the future all applications will contain a project category
> summary.

We appreciate Wallace's compliance.

Specific Time and Expense Entries

8.      In our initial report we noted that on May 3, 2001, Wallace billed 32.9 hours for a

cost to the bankruptcy estate of $11,218.00 in fees for multiple professionals to attend the same

meetings.   These time entries are provided below.

| | | |
|---|---|---|
| 05/03/01 AP | 6.80 | Meeting with J. Angello regarding Daylin's earliest knowledge of chromium contamination and future strategy;..... |
| 5/03/01 CHM | 9.50 | All-day strategy meeting with J. Angello;....... |
| 05/04/01 CHM | 7.00 | Meeting with J. Angello continued; ....... |
| 05/04/01 WH | 9.60 | Meeting with Mr. Angello and Mr. Marraro re case strategy, knowledge issue, trial, etc;...... |

Wallace responded as follows:

> Honeywell is a very large and important case.  Timekeepers have different roles in
> the matter.  Mr. Marraro is trial counsel and is involved with all strategic and
> tactical decisions and attends all meetings that significantly impact on those
> decisions. Ms. Pelitier was responsible for water experts and preparing summary
> judgment briefs on certain issues.  Mr. Hughes had responsibility for geo-technical
> experts and preparing various summary judgment briefs.  During this period the
> team was preparing for approximately 30 expert depositions and for briefing 8
> summary judgment motions.  Mr. Hughes, Ms. Pelitier, Mr. Agnello (Co-counsel

– Carella Byrne) and Mr. Marraro were all involved in meetings to develop and coordinate strategy from these various points of view.

We believe this explanation adequately addresses our concerns.

9.      In our initial report we noted that between April 1, 2001, and June 30, 2001,

Wallace billed the bankruptcy estate $8,262.00 for temporary services.  We asked Wallace to

please state whether these temporary employees billed any time during these periods and if these

temporary employees did not bill time to the estate, to explain why this expense should not be

considered an overhead expense.  Wallace responded as follows:

> These charges were billed to the Estate at actual cost from the agency supplying the temporary personnel.  This temporary person did not otherwise bill time to the Estate.

We have no objection to this expense.

10.     In our initial report we noted that between April 1, 2001 and December 31, 2001,

Wallace billed $31,753.66 in airfare, $6,065.65 in meal expense, $26,129.75 in hotel expense, and

$2,435.48 in taxis/miscellaneous travel expenses.  Sufficient detail was not provided so as to

discern who traveled, when they traveled, where they traveled, why they traveled, and the class

of service of travel.  Thus we asked Wallace to please provide this information.  Wallace's

response is provided below and in Response Exhibit 1.

> In connection with the fee auditor report
> 1.      We do not charge first class air fare
> 2.      Our hotel bill rates are less than $300 per night in the New York area
> 3.      Meals come out to between $35 and $40 per person

In addition to this response, Mr. Chris Marraro confirmed that the appropriate information will be included in future fee applications. Thus, we have no objection to these expenses.

11.     In our initial report we noted that during this period, Wallace professionals took and defended multiple depositions in the *Honeywell* matter. Many of these depositions were conducted in cities other than Wallace's home city. However, there were no time entries which indicated travel time on behalf of the professional. Thus we asked Wallace to please explain whether this was due to a firm policy that travel time is not billed or due to professionals including their travel time in the time billed for preparing for and/or attending depositions. Wallace responded that "Travel time was not billed for that period" and this adequately addresses our concerns.

12.     We also note that between April 16, 2001 and December 18, 2001, Wallace billed 407.9[2] hours for a cost to the bankruptcy estate of $140,862.00 for time entries which by their nature must include non-working travel time, yet there was no 50% deduction for non-working travel. These time entries are contained in Exhibit A. Thus we asked Wallace to please explain why this deduction was not made. Wallace again responded that at the time in question, it did not charge for travel time. This information satisfies our concern and we have no objection to these fees.

13.     In our initial report we noted that between August 9, 2001 and August 24, 2001, Wallace billed 50.2 hours for a cost to the bankruptcy estate of $11,344.00 for six professionals

---

[2]This figure is over-stated given the firm's lumping of time referenced in Paragraph 5 of this Initial Report.

to prepare an opposition to Honeywell's Motion to Supplement Summary Judgment Record. See Exhibit B. Thus we asked Wallace to please explain why so many professionals were assigned to this task. Wallace responded as follows.

> The four principal participants were AP – responsible for legal research and preparation of draft motion, WH – responsible for scouring the record for documents and fact support in opposition to this important motion; CHM – responsible for reviewing, editing and final draft and MM – paralegal services with regard to obtaining documents, cite – checking etc. TP and ACZ should not have had a role. We agree to credit our next invoice in the amount of billings by TP and ACZ for this motion. Because of the diligent work of all involved the Debtor prevailed on its opposition to Honeywell's motion.

Thus we recommend a reduction for the amount of time charged by TP and ACZ for a reduction of $630.50 in fees.

14.    We noted in our initial report, that Wallace over-billed the estate on fee entries where the time increments were not calculated correctly. See Exhibit C. Thus we asked Wallace to please advise all professionals responsible for the input and calculation of time detail to use more caution when calculating the fees charged to the estate.

Wallace responded as follows:

> Mr. Marraro has advised and instructed all professionals and all timekeepers to ensure that their time is correctly summed.

While we appreciate Wallace's compliance, we recommend a reduction based on corrections in the calculation of the time entries on Exhibit C for a reduction of $1,693.00 in fees.

15.    In our initial report we noted that during the December, 2001 billing cycle, Wallace billed $1,876.87 in travel-related expenses to Matter 5, Motor Wheel Site, for a trip that allegedly

took place in November, 2001.  However, no time entries were provided either during the

November or December, 2001 billing cycles which correspond to these expenses.  Thus we asked

Wallace to please provide time entries for these expenses.  Wallace responded that "Due to a

prior arrangement on the matter, no professional fees were charged for this meeting."

This explanation adequately addresses our concerns and thus, we have no objection to these

expenses.

16.    In our initial report we noted that in June, 2001, Wallace billed the bankruptcy

estate $15,000.00 and $19,828.62 for payments made to Knight Piesold and SI Group LLC

respectively.  Sufficient detail is not provided for these expenses.  Thus we asked Wallace to

please provide additional information.  Wallace responded that "These were post petition costs

for experts hired for the Honeywell case that Wallace paid and billed as a disbursement."  This

explanation adequately addresses our concerns and thus, we have no objection to these expenses.

## CONCLUSION

Thus, we recommend approval of fees totaling $1,338,827.90 ($1,341,150.90 minus $2,323.00)

and costs totaling $316,318.77 for Wallace's services from April 1, 2001, through December 31,

2001.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
        Warren H. Smith
        Texas State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on the 20th day of November, 2002.

_____

Warren H. Smith

**SERVICE LIST**
Notice Parties

**The Applicant**

Christopher H. Marraro, Esq.
Wallace King Marraro & Branson PLLC
1050 Thomas Jefferson St. N.W.
Washington, DC 20007

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher

1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Matthew G. Zaleski, III, Esq.
Campbell & Levine
Chase Manhattan Centre, 15th Floor
1201 Market Street, Suite 1200
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

**EXHIBIT "B"**

| | | | |
|---|---|---|---|
| 08/09/01 | WH | ......; review and analyze Honeywell's Motion to Supplement Motion on Record and research re opposition to same (2.6 hrs);.... | 9.60 |
| 08/10/01 | WH | ...; work on opposition to Honeywell's motion to supplement summary judgment record (2.8 hrs);.... | 9.90 |
| 08/14/01 | AP | Review Honeywell's motion to supplement the record (.5 hrs); research for opposition brief (3.8 hrs) | 4.30 |
| 08/16/01 | WH | ......; review Honeywell's motion to amend record and confer with Ms. Pelletier re drafting opposition to same (1.3 hrs); review record for documents to be used in opposition to Honeywell's motion to supplement (1.7 hrs);.... | 9.60 |
| 08/17/01 | AP | Research and draft brief in opposition to Honeywell's motion to supplement the record. | 7.00 |
| 08/20/01 | AP | Review cases relating to supplementation of summary judgment record and cases cited by Honeywell and finalize draft of brief in opposition. | 8.30 |
| 08/21/01 | AP | Gather, prepare and incorporate documentary evidence into brief in opposition to motion to supplement summary judgment record (4.5 hrs);... | 5.80 |
| 08/21/01 | MM | .....; search case material and produce various documents to be used in stated brief (4.6 hrs.); search Grace databases re same (.6 hrs.); review brief and organize all exhibits accordingly with tabs (.2 hrs.);... | 6.10 |
| 08/22/01 | MM | Follow-up with Mr. Hughes re status of pending brief to be filed on 8/27/01(.4 hrs.); review and re-organize various exhibits (i.e., a-j) to be attached to stated brief; office conference with Ms. Pelletier re same (1.0 hrs.). | 1.40 |
| 08/22/01 | TP | Reviewed recent correspondence including briefs related to Honeywell's motion to supplement record. | 1.50 |

| 08/23/01 | ACZ | Research whether and under what circumstances the summary judgment record can be reopened by a party seeking to supplement the record (1.0 hrs.); discussions with B. Hughes regarding same (.3 hrs.). | 1.30 |
|---|---|---|---|
| 08/23/01 | CHM | Draft opposition of motion to supplement (2.5);..... | 4.50 |
| 08/24/01 | WH | Revise and finalize Grace's opposition to Honeywell's motion to amend the summary judgment record (5.2 hrs.);...... | 8.90 |
| 08/24/01 | MM | Office conferences with Mr. Hughes, Ms. Pelletier and Mr. Marraro re searching case material and providing various documents to be used as references and as exhibits to pending brief to be filed on 8/27/01 (.4 hrs.);....... | 4.40 |

*Total: 50.2/$11,344.00*

Exhibit C

<u>FEE DETAIL TIME ENTRY QUESTIONS</u>:

§       On June 12, 2001, MM($130) has a time entry of 7.60 for a total of $988.00.
The points only add up to 7.50 for a total of $975.00.  Difference of $13.00.

| | | |
|---|---|---|
| 06/12/01 | MM | Continue preparation of filing various motions (2.0 hrs.); continue to review case material and produce documents to be incorporated in the appendix accordingly (2.8 hrs); office conferences with Mr. Pittman, Mmes. Flax, Pelletier, and Banks re status of pending matters re: motions (.2 hrs.); review and date stamp remaining documents to be incorporated into the motions (1.1 hrs); search Lexis-Nexis and produce case, *Jersey City Redevelopment Authority v. PPF Industries, Inc.* as requested by Ms. Flax (.3 hrs); telephone conference with John J. Prout & Associates re: request for deposition transcript of Mr. Wong (.2 hrs.); review drafts of motions to be filed and insert appendix information accordingly (.6 hrs.); other misc. tasks (.3 hrs.).                         7.60 |

§       On June 12, 2001, BB($130) has a time entry of 13.00 hours for a total of
$1,690.00.  The points only add up to 10.00 for a total of 1,300.00.  Difference of $390.00.

| | | |
|---|---|---|
| 06/12/01 | BB | Collect and prepare pertinent document for Ms. Pelletier re: RCRA/CERCLA brief (3.4 hrs.); consult with Ms. Parker re: expert declaration, telephone expert re: changes and email final declaration (1.0 hrs.); arrange for duplication of exhibits (.2 hrs.); research case records for document pertinent to RCRA brief for Mr. Hughes (4.1 hrs.); proof and cite-check RCRA brief for Mr. Hughes (1.3 hrs.)            13.00 |

§       On September 14, 2001, WH($305) has a time entry of 2.90 hours for a total of
$884.50. The points only add up to 2.80 for a total of $854.00.  Difference of $30.50.

| | | |
|---|---|---|
| 09/14/01 | WH | Legal research re NCP challenge to Honeywell's costs (1.8 hrs); review cases re bringing Daubret challenge to NCP expert (.6 hrs.); work on list of stipulated facts for pretrial order (.4 hrs).            2.90 |

§       On September 17, 2001, BB($130) has a time entry of 8.30 hours for a total of
$1,079.00. The points only add up to 7.00 for a total of $910.00.  Difference of $169.00

| 09/1701 | BB | Return call to case expert re: deposition signature page (.1 hrs); consult with Mr. Hughes re: details of collection of potential trial exhibits and assignments for case experts (.2 hrs.); make call to expert re notarizing deposition signature page and prepare fax re same (.2 hrs.); prepare letter and materials for FedEx package of deposition snd(sic) errata sheets for case expert(.5 hrs.); tespond(sic) to call from case expert re inclusion of defendants' expert documents in to database (.2 hrs.); make call to case expert to acknowledge receipt of deposition signature page (.1hrs.); incorporate new correspondence in to indexed case files and create new case files (3.1 hrs.); review new case experts' deposition transcripts, load onto Summation and electronic case files and create new case files (2.6 hrs.) .  8.30 |

§     On November 5, 2001, BB($130) has a time entry of 4.50 hours for a total of $585.00. The points only add up to 3.5 for a total of $455.00.  Difference of $130.00.

| 11/0501 | BB | Research case indices and collect and prepare pertinent document for Mr. Marraro (.2 hrs); research production database for documents for trial exhibits document review and incorporate into review log (.8 hrs.); continue preparation of documents for trial exhibit review (2.4 hrs.); incorporate new case documents into electronic case files (.1 hrs.).  4.50 |

§     On November 13, 2001, WH($305) has a time entry of 8.50 hours for a total of $2592.50. The points only add up to 5.9 for a total of $1799.50.  Difference of $793.00

| 11/13/01 | WH | Confer with Ms. Pelletier and Ms. Newbold re; site access issue for Trillium (.2 hrs.);  review new case correspondence and confer with Ms. Banks re: same (.6 hrs); review selected documents from CTEH and designate as trial exhibits (3.9 hrs); revise trial database re: same (.8 hrs); work on in limine motion re: expert (.4 hrs).     8.50 |

§     On November 19, 2001, NAB($95) has a time entry of 6.50 hours for a total of $617.50. The points only add up to 5.70 for a total of $541.50.  Difference of $76.00

| 11/19/01 | NAB | Confer with Ms. Banks regarding status of potential expert documents to be used as exhibits (.4 hrs); review and cross reference expert's list of documents relied upon in preparing expert report (4.8 hrs); add findings to reference list of duplicate documents to be pulled from boxes of potential exhibits (.5 hrs).                6.50 |

§      On November 27, 2001, WH($305) has a time entry of 8.40 hours for a total of $2562.00.  The points only add up to 8.1 for a total of $2470.50.  Difference of $91.50.

| | | |
|---|---|---|
| 11/27/01 | WH | Confer with Ms. Pelletier and paralegal re: production of documents from Dr. Chapman's expert files (.5 hrs); review Chapman materials (.8 hrs); work on trial brief (1.8 hrs); confer with Mr. Moasser re: review/analysis of Honeywell's discovery responses and preparation of chart re: same (.4 hrs); review memo from Mr. Moasser and revise same(.7 hrs.); review excerpts from site videotapes produced by Honeywell and confer with paralegal re summarizing same (.8 hrs); confer with Mr. Agnelli re: expert discovery issue (.3 hrs); finalize letter to Mr. Caffrey re: production of Dr. Valera's documents and coordinate service of same (1.3 hrs.); review expert documents collected by Ms. Bynum (1.5 hrs).  8.40 |
| Difference Total | | $1,693.00 |