**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF CAPLIN & DRYSDALE,**
**CHARTERED FOR THE FIFTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Fee Application of Caplin & Drysdale, Chartered for the Fifth Interim Period ( the "Application").

**BACKGROUND**

1. Caplin & Drysdale, Chartered ("Caplin") was retained as national counsel to the Official Committee of Asbestos Personal Injury Claimants. In the Application, Caplin seeks approval of fees totaling $351,396.00 and costs totaling $43,352.68 for its services from April 1, 2002 through June 30, 2002.

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30,

1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Caplin an initial report based on our review, and received a response from Caplin, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.      In our initial report, we noted that timekeepers PVNL, TWS and NDF often did not include sufficient detail in their time entries. Rule 2016-2(d) of the Delaware Local Rules states "activity descriptions . . . shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary . . ." This issue has been raised in previous reports and we have advised certain professionals to provide more detailed time entries in the future. We would again ask that Caplin continue to advise its professionals regarding this matter.

4.      In our initial report, we noted that RCT and JPC often tended to lump their time entries. Local Rule 2016-2(d)(vii) provides that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." Thus we asked Caplin to advise these professionals to avoid lumping their time entries in the future.

5.      In our initial report, we noted that Caplin billed 751.60 hours and $227,193.50 in the category of Litigation/Fraudulent Conveyance. On July 10, 2002 Judge Wolin entered an Order dealing with the Sealed Air fraudulent transfer litigation fees in which he withdrew his reference of that matter from the bankruptcy court requiring District Court approval for all fees involved in said litigation matters. Thus we asked Caplin to explain whether these fees are subject to this Order.

Caplin responded as follows:

> You have noted that Caplin & Drysdale billed $227,193.50 for $751.60 of work performed during the Application Period in the category of Litigation/Fraudulent Conveyance, and asked whether these fees are subject to Judge Wolin's order of July 10, 2002. (Initial Report at ¶ 5.) In fact, $64,166.00 of the fees requested for work 197.60 of services performed in this category relate the period from June 1 through June 30, 2002, and were filed with Judge Wolin in a separate fee application, as directed by the July 10 0rder. The remaining $163,707.50 in fees requested in the Litigation/Fraudulent Conveyance category, regarding 555.50 hours of work performed between April 1 and May 31, 2002, was not subject to that order. A copy of the fee application submitted to Judge Wolin by Caplin & Drysdale regarding the June 2002 Litigation/Fraudulent Conveyance fees and expenses is attached hereto as Exhibit A.

We appreciate Caplin's explanation regarding the June fees and expenses, although it came after we had reviewed these fees. We note that the amount referenced in Caplin's Exhibit A, attached hereto as Response Exhibit 1, is $63,942.00, rather than $64,166.00. As we understand it, the time entries, and thus the corresponding fees, of $63,942.00 were apparently submitted to both courts. Thus, so that there is no confusion causing these fees to be paid twice, and without passing judgement on the merits of these fees, we recommend a reduction in the amount of the fees submitted to Judge Wolin, for a reduction of $63,942.00 in fees.

Specific Time and Expense Entries

6.     In our initial report, we noted that on April 9, 2002 PVNL, TWS and NDF prepared for and attended the same meeting for a total of 12.70 hours and $5,147.00 as well as an additional $49.95 in expenses for a total cost to the estate of $5,196.95. The time and expense entries are provided below.

| | | | | | |
|---|---|---|---|---|---|
| 04/09/02 | | PVL | 560.00 | 1.70 | Conference with Weiss, Friedman, et al. regarding fr. conv. case. |
| 04/09/02 | | TWS | 425.00 | 4.60 | Meet with PD Comm. counsel and Millberg, Weiss lawyers |
| 04/09/02 | | NDF | 350.00 | 6.40 | Prepare for meeting with new co-counsel (1.2); meeting with |

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | TWS, Bob Turken, Brad Friedman, et al re: case strategy and issues (5.2) |  |  |
| 1302,581 49.95 | Petty Cash; TWS lunch meeting with Counsel to PD Committee and NDF on 4/9 From petty Cash 005317 Audit * AP-0070,987:0025 Date: 04/16/02 | E 22 04/16/02 0106 TWS | 49.95 | 8.239.70 |

According to Local Rule 2016-2(d)(ix), "[t]he activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role." The matter of multiple professionals, is also addressed in the Guidelines, Paragraph II.D.5.: "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." We also noted that the fee detail did not provide the reason for multiple professionals at this meeting nor does it explain each professional's role. Thus we asked Caplin to explain the need for multiple professionals at this meeting. Caplin responded as follows:

> The April 9 meeting was a conference between Caplin & Drysdale attorneys and representatives of the PD Committee regarding the Debtor's motion to intervene in the Sealed Air Litigation. The topics addressed at the meeting included litigation strategy and planning, reports and planning regarding discovery, the position that the Committee and PD Committees should tale regarding the Debtors' motion, and various procedural matters relating to both the Sealed Air Action and day-to-day operations of these bankruptcy cases. Peter Lockwood attended the April 9 meeting in his capacity as supervisor of all day-to-day activities relating to the bankruptcies, while Ted Swett and Nate Finch participated in their respective roles as overall supervisor of the Sealed Air Litigation, and litigator in charge of discovery in that action. In general, the meeting with the PD Committee was intended to coordinate the Seal Air plaintiffs' response to the Debtors' motion to intervene and other matters relating to both the Sealed Air Litigation and these bankruptcy cases.

We appreciate Caplin's explanation of the role of each of the attendees at this meeting. We believe

the response adequately addresses our concern, and thus have no objection to these fees and expenses.

    7.    In our initial report, we noted that on April 15, 2002 PVNL and NDF jointly participated in a status conference for a total of 15.70 hours and $4,158.00 as well as an additional $940.00 in expenses for a total cost to the estate of $5,098.00. (See Exhibit A). Thus we asked Caplin to examine Exhibit A, and again, explain the reason for each professional's attendance and the expertise that each brought to this meeting. Caplin responded as follows:

> The April 15 status conference before Judge Wolin related to the Sealed Air Litigation, and was attended by both Peter Lockwood, in his capacity as supervisor of all day-to-day activities relating to this bankruptcy action and Nathan Finch, in his role as co-director of the Sealed Air Litigation and supervisor of the discovery relating to that action. The presence of both Mr. Lockwood and Mr. Finch was required at the status conference, since the topics discussed included the Sealed Air Litigation and the relation of that action to the bankruptcy case as a whole, including the impact that the fraudulent conveyance proceeding might have on asbestos claims issues and an eventual reorganization plan.

We appreciate Caplin's explanation, and thus have no objection to these fees and expenses.

    8.    In our initial report we noted that on May 7, 2002, TWS, EI and NDF jointly participated in the same conference for a total of 11.60 hours and a total expense to the estate of $5,210.00. The time entries are provided below.

| 05/07/02 | TWS | 425.00 | .60 | Conf NDF, B.Friedman, R.Fleishman, S.Gilbert, and J.Miller re insurance matters |
| 05/07/02 | TWS | 425.00 | 3.90 | Conf NDF, Brad Friedman, R.Fleishman, M.Peterson (EI in attendance for part of the meeting) |
| 05/07/02 | EI | 675.00 | 2.50 | Conference Milburg Weiss, TWS, NDF, and Peterson re: fraudulent conveyance case. |
| 05/07/02 | NDF | 350.00 | [4.60] | Prepare for meeting w/Peterson, et al (.6); meeting with Friedman, EI, Peterson, et al re: claims valuation (3.5); meeting with TWS, Friedman, Fleishman re: case issues, discovery, documents (.5) . . . |

Thus we asked Caplin to explain the reason for each professional's attendance and the expertise that each brought to this meeting. Caplin responded as follows:

> This meeting, which was also attended by representatives of the PD Committee and the Committee's asbestos bodily injury expert, Mark Peterson, was held for the purpose of discussing case strategy for the Sealed Air Litigation and selecting and meeting with the Sealed Air Litigation plaintiffs' insurance counsel. The topics discussed included both discovery and trial strategy regarding to the Sealed Air Litigation. Mr. Inselbuch attended this meeting in his capacity as the overall supervisor of these bankruptcy matters, to address the policy issues and strategy questions raised by the Seal Air Litigation, while Ted Swett and Nate Finch participated in their respective roles as overall supervisor of the Sealed Air Litigation, and litigator in charge of discovery in that action.

We believe this explanation adequately addresses our concerns and thus have no objection to these fees.

9. In our initial report, we noted that on May 21, 2002, EI and PVNL attended the same meeting for a cumulative total of 3.00 hours and $1,821.00 as well as additional expenses of $93.88 for a total cost to the estate of $1,914.88. The time and expense entries are provided below.

| Date | Atty | Amount | Hours | Description |
|---|---|---|---|---|
| 05/21/02 | PVL | 280.00 | .40 | Travel to and from Philadelphia for UST meeting (2.0). (1/6 each case) |
| 05/21/02 | PVL | 560.00 | .40 | Attend UST meeting with Walton, DeAngelis, Perch, Golden, George, Magner, Kazan, Iola, Siegal, Bergmann, Rice, Weitz, Rich, Cooney and EI (2.4)(1/6 each case) |
| 05/21/02 | EI | 675.00 | 2.20 | Conference with U.S. Trustee et al. re: committee composition issues; travel to Philadelphia with PVNL and P. Weitz reviewing issues and travel back reviewing status (11.0). [time divided among 5 Delaware cases] |

| 1318,625 | PVNL expenses re status | E 21 05/28/02 0020 | PVL |
| 88.63 | 88.63 | 6,288.43 | |
| | conference in Philadelphia on 5/21 for lunch with Rice, Weitz, Rich, Cooney and EI | | |
| | From Peter Van N. Lockwood | | |
| | 000020 Audit * | | |
| | AP-0071,693:0005 Date:05/28/02 | | |

```
1320,816      Petty Cash; PVNL expenses   E 33 05/31/02 0020 PVL
[5.25]                                    [5.25]  9,666.32
              in Newark and NY on 5/20-22
              From Petty Cash
              005317 Audit *
              AP-0071,745:0026     Date:   05/31/02
```

Again, we asked Caplin to explain the reason for each professional's attendance and the expertise that each brought to this meeting. Caplin responded as follows:

> The May 21 meeting was called by the United States Trustee in response to a request by a Committee constituency, the Unofficial Committee of Select Asbestos Claimants (the "SAC"), that a second asbestos creditors committee be appointed to represent claimants with malignancies. Mr. Inselbuch, who is in overall charge of each bankruptcy, addresses broad policy matters, negotiations, and reorganization plan issues, while, as noted above, Mr. Lockwood supervises all day-to-day activities. Mr. Lockwood also takes a leading role in the formulation and drafting of basic plan documents. The resolution of the SAC's request involved both policy and practical considerations; hence, both attorneys attended the conference. Moreover, had a second asbestos creditors committee been appointed, that committee would have, inter alia, been permitted to retain counsel, at considerable expense to the estate. Thanks in part to the efforts of Committee counsel, that outcome was averted. We believe that both the importance of this issue and its successful conclusion justified the attendance of both Mr. Inselbuch and Mr. Lockwood at the May 21 meeting.

We believe we understand Caplin's explanation, and thus have no objection to these fees and expenses.

10. In our initial report, we noted that on May 22, 2002, EI, PVNL and NDF jointly participated in a status conference for a total of 15.30 hours and $4,995.50 as well as an additional $788.19 in expenses for a total cost to the estate of $5,783.69. (See Exhibit B). Thus we asked Caplin to review Exhibit B and again explain the reason for each professional's attendance and the expertise that each brought to this meeting. Caplin responded as follows:

> The May 22 status conference was called by Judge Wolin to discuss several aspects of this bankruptcy action, including policy, strategy and a reorganization plan, which were addressed by Mr. Inselbuch, day-to-day motions and oversight, which were

> handled by Mr. Lockwood, and the Sealed Air Litigation, which was discussed by Mr. Finch. (Mr. Swett, who along with Mr. Finch is jointly responsible for litigating the Sealed Air Litigation, did not attend this conference.)

We accept this explanation and thus have no objection to these fees and expenses.

11.    In our initial report, we noted that Caplin seeks reimbursement for the rental of a cellular phone for use by EI while in Europe on vacation. The expense entry is provided below.

1313,821    EI rental and use of mobile phone    E 12 05/14/02 0120 EI28.61    28.61    5,034.9
            during European vacation to stay
            in touch w/clients, C&D from Elihu Inselbuch
            000120 AUDIT *
            5/14/02

Thus, we asked Caplin to explain why the Bankruptcy estate should be liable for this expense. Caplin responded as follows:

> The calls made by Mr. Inselbuch on his mobile telephone during his trip to Europe in May 2002 were necessitated by the fact that important pending issues in the case, including those discussed above, required that he remain in contact with the Committee during his vacation. These calls pertained to urgent Committee business and, in addition were long-distance calls, rather than local communications to which Paragraph II.E.7 of the Guidelines applies, and nothing in either the Guidelines nor the Rules that suggests that long distance calls should categorized per se as unreasonable or unnecessary.

We understand Mr. Inselbuch's concern regarding staying in touch with the Committee. However, we believe this charge to be for Mr. Inselbuch's convenience during his vacation and therefore these charges should be borne by Mr. Inselbuch as a personal expense or in the alternative, by Caplin & Drysdale as firm overhead, and not charged to the bankruptcy estate. Thus we recommend a reduction of $28.61 in expenses.

12.    In our initial report, we noted that in the Application Caplin sought reimbursement of airfare for several different flights. The request for reimbursement of airfare is, in and of itself, not objectionable. However, some of the entries provided had two different amounts, one indicating

the price for coach fare and another higher number representing the amount actually paid. (See Exhibit E). Thus, we asked Caplin to review Exhibit E and explain the differing amounts and why an amount other than the coach class fare was paid. Caplin responded as follows:

> Mr. Inselbuch travels first-class so that he can work on the plane. In fact, our calculations indicate that it is actually less costly to the estate for Mr. Inselbuch to travel first-class rates and bill this working travel time at his full hourly rate, than to travel at coach rates, not work on the plane, and bill for both nonworking travel time and later, at his full hourly rate, the work that he would have otherwise performed on the plane. We include the amounts paid for first-class air fare in our requests for reimbursement, both to establish that we are absorbing these additional costs, and so that this information will be on the record, should the Court ever revisit the question of whether requiring that professionals fly only at coach rates is cost-effective.

We believe we understand Caplin's response. However, the Guidelines paragraph II.E.1., addresses this issue directly when it states, ". . .[f]actors relevant to a determination that the expense is proper include the following: 1. Whether the expense is reasonable and economical. For example, first class and other luxurious travel mode or accommodations will normally be objectionable." Other applicants in this case routinely fly coach class, and, judging by their corresponding time entries, are quite capable of working en route. Thus we recommend a reduction of the difference between the coach fares and first class, for a reduction of $1,338.18 in expenses.

## CONCLUSION

13.     Thus, we recommend approval of fees totaling $287,454.00 ($351,396.00 minus the $63,942.00 attributable to the invoice presented to Judge Wolin) and costs totaling $41,985.89 ($43,352.68 minus $1,366.79) for Caplin's services from April 1, 2002, through June 30, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
    Warren H. Smith
    Texas State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas 75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 21st day of November, 2002.

_____
Warren H. Smith

## SERVICE LIST

Notice Parties

**The Applicant**

Elihu Inselbuck
Peter Van N. Lockwood
CAPLIN & DRYSDALE, CHARTERED
399 Park Avenue
New York, NY 10022

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

EXHIBIT A

| Date | Atty | Rate | Hours | Description |
|---|---|---|---|---|
| 04/15/02 | PVL | 560.00 | 2.30 | Conferences with Turken, Friedman, NDF et al. re status conference (1.0); confer J. Wolin et al re fr. conv. case (.5);...... |
| 04/15/02 | NDF | 350.00 | 1.10 | Status conference with Court (.6); meetings with co-counsel (.5) |
| 04/15/02 | PVL | 280.00 | 6.10 | Travel to and return from Newark for status conference with Judge Wolin |
| 04/15/02 | NDF | 175.00 | 7.00 | Travel to Newark and back to DC |

| Ref | Amount | Description | Detail |
|---|---|---|---|
| 1304,217 | 424.00 | ADA Travel PVNL 4/15 travel 424.00 to Newrk (coach fare ($311) From ADA Travel, Inc. 000534 Audit * AP-0071,068:0014   Date: 04/19/02 | E 15 04/19/02 0020 PVL 9,213.89 |
| 1304,218 | 40.00 | ADA Travel Agency fee on 40.00 PVNL 4/15 travel to Newark From ADA Travel, Inc. 000534 Audit * AP-0071,068:0015   Date: 04/19/02 | E 15 04/19/02 0020 PVL 9,253.89 |
| 1304,215 | 424.00 | ADA Travel NDF 4/15 travel 424.00 to Newrk (coach fare $311) From ADA Travel, Inc. 000534 Audit * AP-0071,068:0012   Date: 04/19/02 | E 15 04/19/02 0187 NDF 10,430.88 |
| 1304,218 | 40.00 | ADA Travel Agency fee on 40.00 NDF 4/15 travel to Newark From ADA Travel, Inc. 000534 Audit * AP-0071,068:0013   Date: 04/19/02 | E 15 04/19/02 0187 NDF 10,470.88 |
| 1305,759 | 12.00 | Petty Cash; Cabs for NDF 12.00 t/f Union Station on 4/15 From Petty Cash | E 33 04/24/02 0187 NDF 13,878.77 |

000517 Audit *
AP-0071,163:0033    Date: 04/24/02

EXHIBIT B

| | | | | |
|---|---|---|---|---|
| 05/22/02 | NDF | 350.00 [1.3] | Waiting time in Court (.5); status conf. (.8);........ |
| 05/22/02 | PVL | 280.00 2.10 | Travel to Newark and return to DC (½). |
| 05/22/02 | NDF | 175.00 7.70 | Travel to Newark from DC and return (7.7). |
| 05/22/02 | PVL | 560.00 2.00 | Attend status conference before J. Wolin (1.0); prep for same (1.0). |
| 05/22/02 | EI | 675.00 2.20 | Status conference at Court (1.1); travel to NJ with PVNL discussing agendas (1.1) |

1320,498   ADA Trave; PVNL 5/22 travel     E 15 05/30/02 0020    PVL
233.00                              233.00           7,452.12
            to Newark (coach 162.50)
            From ADA Travel, Inc.
            000534 Audit *
            AP-0071,715:0038 Date:
            05/30/02

1320,498   ADA Trave; NDF 5/22 travel E 15 05/30/02 0187    NDF
456.00                              456.00           9,380.12
            to Newark (coach fare
            290.00)
            From ADA Travel, Inc.
            000534 Audit *
            AP-0071,715:0047 Date:
            05/30/02

1318,620   PVNL expenses re status    E 21 05/28/02 0020    PVL
33.94                                33.94           6,199.80
            conference in Newark on
            5/22 for lunch with EI
            From Peter Van N. Lockwood
            000020 Audit *
            AP-0071,692:0002 Date:
            05/28/02

1320,499   ADA Trave; Agency fee on   E 15 05/30/02 0020    PVL
20.00                                20.00           7,472.12
            PVNL 5/22 travel to Newark
            From ADA Travel, Inc.
            000534 Audit *
            AP-0071,715:0039 Date:
            05/30/02

1320,508   ADA Trave; Agency fee on   E 15 05/30/02 0187    NDF
40.00                                40.00           9420.122
            NDF 5/22 travel to Newark
            From ADA Travel, Inc.
            000534 Audit *

|  |  |
|---|---|
|  | AP-0071,715:0048 Date: 05/30/02 |
| 1320,816 [5.25] | Petty Cash; PVNL expenses   E 33 05/31/02 0020 PVL [5.25]  9,666.32 in Newark and NY on 5/20-22 From Petty Cash 005317 Audit * AP-0071,745:0026   Date: 05/31/02 |

EXHIBIT C

| | | |
|---|---|---|
| 1320,498 233.00 | ADA Trave; PVNL 5/22 travel 233.00 to Newark (coach 162.50) From ADA Travel, Inc. 000534 Audit * AP-0071,715:0038 Date: 05/30/02 | E 15 05/30/02 0020   PVL 7,452.12 |
| 1320,498 456.00 | ADA Trave; NDF 5/22 travel 456.00 to Newark (coach fare 290.00) From ADA Travel, Inc. 000534 Audit * AP-0071,715:0047 Date: 05/30/02 | E 15 05/30/02 0187   NDF 9,380.12 |
| 1299,056 424.00 | ADA Travel PVNL 3/28 travel 424.00 to Newark (coach fare 273/00) From ADA Travel, Inc. 000534 Audit * AP-0070, 892:0025 Date: 04/08/02 | E 15 04/08/02 0020 PVL 2,327.65 |
| 1304,217 424.00 | ADA Travel PVNL 4/15 travel 424.00 to Newrk (coach fare ($311) From ADA Travel, Inc. 000534 Audit * AP-0071,068:0014   Date: 04/19/02 | E 15 04/19/02 0020 PVL 9,213.89 |
| 1304,215 424.00 | ADA Travel NDF 4/15 travel 424.00 to Newrk (coach fare $311) From ADA Travel, Inc. 000534 Audit * AP-0071,068:0012   Date: 04/19/02 | E 15 04/19/02 0187 NDF 10,430.88 |
| 1304,227 444.00 | ADA Travel NDF 4/18 travel 444.00 | E 15 04/19/02 0187 NDF 10,914.88 |

| | | |
|---|---|---|
| | to New York(coach fare $290) From ADA Travel, Inc. 000534 Audit * AP-0071,068:0024    Date: 04/19/02 | |
| 1324,908 456.00 | ADA Travel; NDF 5/29 travel 456.00 to New York (coach fare 330.00) From ADA Travel, Inc. 000534 Audit * AP-0071,909:0012 Date: 06/11/02 | E 15 06/11/02 0187 NDF 1,565.91 |
| 1329,401 181.92 | EI Chicago expenses for 181.92 Grace asbestos meeting on 6/4 for airfare New York to Chicago (coach fare 122.91 From Elihu Inselbuch 000120 Audit * AP-0072,122:0005 Date: 06/21/02 | E 15 06/21/02 0120 EI 7,693.60 |
| 1329,405 166.17 | EI Chicago expenses for 166.17 Grace asbestos meeting on 6/4 for airfare Chicago to Newarj (ciacg fare 123.50) From Elihu Inselbuch 000120 Audit * AP-0072,122:0009 Date: 06/21/02 | E 15 06/21/02 0120 EI 8,065.63 |
| 1331,359 228.00 | ADA Travel; TWS 6/5 travel 228.00 to Newark (coach fare 157.00) From ADA Travel, Inc. 000534 Audit * AP-0072,216:0007 Date: 06/27/02 | E 15 06/27/02 0106 TWS 14,530.52 |
| 1331,391 446.00 | ADA Travel; SME 6/19 travel 446.00 to NYC (coach fare 290.00) From ADA Travel, Inc. 000534 Audit * | E 15 06/27/02 0122 SME 15,502.52 |

| | | | |
|---|---|---|---|
| 1331,386 446.00 | AP-0072,216:0039 Date: 06/27/02 ADA Travel; NDF 6/19 travel 446.00 to NYC (coach fare 330.00) From ADA Travel, Inc. 000534 Audit * AP-0072,216:0034 Date: 06/27/02 | E 15 06/27/02 0187 NDF 15,988.52 | |