IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO., et al.**[1] | ) | **Case No. 01-01139 (JJF)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |

**Objection Deadline: January 10, 2003**
**Hearing Date: January 27, 2003 at 12:00 p.m.**

## APPLICATION OF THE DEBTORS FOR THE ENTRY
## OF AN ORDER AUTHORIZING THE RETENTION
## AND EMPLOYMENT OF WOODCOCK WASHBURN LLP
## AS SPECIAL LITIGATION COUNSEL TO INTERVENE IN LITIGATION

The above-captioned debtors and debtors-in-possession (collectively, the

"Debtors") hereby submit this application (the "Application") for entry of an order pursuant to

Sections 327(e) and 328(a) of title 11 of the United States Code (as amended, the "Bankruptcy

Code") and Federal Rules of Bankruptcy Procedure 2014 and 2016, authorizing the Debtors to

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

retain Woodcock Washburn LLP ("Woodcock") as special litigation counsel for the Debtor to

intervene in the case entitled David B. Bartholic and Intercat, Inc. v. Nol-Tec Systems, Inc.,

2:02CV408JM, pending in the United States District Court for the Northern District of Indiana

(the "Intercat suit").  In support thereof the Debtors' respectfully represent as follows:

## Jurisdiction

1.      This Court has jurisdiction to entertain this application pursuant to 28

U.S.C. §§157 and 1334.

## Background

2.      On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary

petitions for relief under Chapter 11 of the Bankruptcy Code.  Contemporaneously therewith, the

Debtors filed a motion to consolidate, for administrative purposes, the Debtor's Chapter 11

cases.  Pursuant to Section 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to

operate their businesses and manage their properties as debtors-in-possession.

## Relief Requested

3.      The Debtors respectfully request the entry of an order pursuant to Sections

327(e) and 328(a) of the Bankruptcy Code authorizing the Debtors to employ and retain

Woodcock as special litigation counsel to intervene in the Intercat patent infringement suit under

Federal Rules of Civil Procedure ("FRCP") Rule 24.

**Basis for Relief Requested**

4. The Debtors have selected Woodcock as special litigation counsel because of Woodcock's knowledge of the Debtor's business, its success in prior intellectual property litigation for Grace, and Woodcock's extensive experience and expertise in the field of patent law and litigation.

5. The Debtors wish to retain Woodcock and intervene in the Intercat patent infringement suit in order to protect a significant part of the Debtors' business. The Intercat suit was commenced on October 18, 2002 against Nol-Tec Systems, Inc. ("Nol-Tec") by David B. Bartholic and Intercat Inc. (collectively, "Intercat"). Intercat alleges that Nol-Tec is inducing infringement, or contributing to the infringement, of U.S. Patent No. 5,389,236 (issued February 14, 1995)(the "Patent"). Intercat is seeking damages for willful infringement, as well as preliminary and permanent injunctive relief. No alleged direct infringer is identified in Intercat's complaint and none of the Debtors are currently parties to the Intercat suit. However, the Intercat suit may directly affect the Debtors' business.

6. The Debtors are the leading suppliers of fluid cracking catalysts and additives to petroleum refiners around the world. In 2001, the Debtors' revenues for sales of catalysts were in excess of $600 million , or 36% of the Debtors' consolidated, worldwide revenues for 2001. Since 1997, Nol-Tec has been Debtors' most important supplier of catalyst loading equipment in the United States. Nol-Tec catalyst loaders are used by oil refiners to introduce fluid cracking catalyst additives ("FCC Additives") into so called, "FCC Units," which are physically located at the petroleum company's refinery. Crude petroleum is chemically

cracked in those FCC units during the process of refining the petroleum into gasoline for use in motor vehicles. The FCC Additives are introduced into FCC units in order to reduce nitrous oxide and sulfur dioxide emissions in motor vehicle exhausts which would otherwise be released into the atmosphere. Nol-Tec sells catalyst loaders to the Debtors, and the Debtors either sell or lease the loaders to refiners.

7.      The Patent which Intercat alleges has been infringed in the Intercat suit contains claims, among other matters, for a method of controlling the addition of a catalyst into an FCC unit in order to maintain a given concentration of the catalyst in the FCC unit and thereby produce a desired performance from the FCC unit. In its Complaint against Nol-Tec in the Intercat suit, Intercat alleges, among other things, that by selling catalyst loaders, to refiners, Nol-Tec is inducing refiners to infringe the methods claimed in the Patent or is contributing to such infringement by the refiners. Although Debtors are not directly mentioned in the Complaint, Nol-Tec sells to Debtors loaders of the kind charged in the Complaint with infringement which Debtors supply to refiners as part of Debtors' FCC catalyst and additives business. In addition to damages for alleged willful infringement by Nol-Tec, the plaintiffs are seeking a preliminary and a permanent injunction which, *inter alia*, would prohibit the sale of catalyst loaders to the Debtors and other companies who, in turn, lease or sell such loaders to refiners.

8.      The Debtors are in the process of investigating the factual bases for the plaintiffs' infringement action. Based upon its review to date, the Debtors have no information which would indicate either that the Patent is being directly infringed by a refiner or that Nol-Tec

-4-

is inducing infringement or is contributing to infringement by any refiner. A party cannot be liable for inducing or contributing to infringement in the absence of direct infringement by a third party.

9.     The Debtors are concerned, however, that Nol-Tec may not have sufficient strategic interest in catalyst loader production to incur the costs of defending the Indiana infringement action. If the action were pursued through trial and appeal, the litigation could cost in excess of one million dollars to defend. The Debtors are concerned that Nol-Tec could attempt to settle Intercat's action by either agreeing not to sell loaders to the Debtors or by agreeing not to contest Intercat's motion for an injunction against the sale of catalyst loaders to the Debtors and other third parties. Even if Nol-Tec is willing to incur such defense costs, the issuance of a preliminary or permanent injunction against Nol-Tec by the Indiana court could cut off the supply of these catalyst loaders to the Debtors. In addition, even if an injunction were not granted, refiners may nonetheless refuse to accept any catalyst loaders from the Debtors without extensive indemnifications by the Debtors against future infringement claims by Bartholic and Intercat.

10.     The Debtors further believe that it is reasonably likely that any settlement of the Indiana action by Nol-Tec would put Intercat into a position by which it could offer inducements to refiners to purchase catalysts or FCC Additives from Intercat by offering Intercat catalyst loaders at greatly reduced cost to the refiner and/or a free license under the Patent if the refiner purchases the Intercat catalyst or additive. Accordingly, even though a refiner might otherwise wish to purchase catalysts or FCC Additives from the Debtors, Intercat could charge a

-5-

price for a license under the Patent that was prohibitively expensive to the refiner. The Debtors view this threat as a serious one which may lead to the loss of revenues from the sale of FCC Additives to refiners.

11.    If Nol-Tec does settle Intercat's action, neither the issue of which refiners, if any, might be directly infringing the Patent, nor the issue of which Nol-Tec catalyst loaders, if any, sold or leased by the Debtors might constitute indirect infringement of the Patent, would be resolved. This would result in a great deal of uncertainty in the marketplace. Although Debtors could locate a different supplier for different loaders, prospective customers for FCC Additives may refuse to accept any catalyst loaders from the Debtors without extensive indemnification commitments from the Debtors. Alternatively, a refiner may choose simply to buy FCC Additives from Intercat to avoid any controversy regarding catalyst loaders. Similar considerations would apply to existing refinery customers for the Debtors' FCC Additives. The Debtors view this threat as a serious one which could lead to the loss of revenues from the sale of FCC Additives to refiners.

12.    As a consequence, the Debtors believe it is in their best interest and the best interest of their estates to retain Woodcock to intervene on the Debtors' behalf in the Intercat suit under FRCP Rule 24, in order to protect against the strategic threat posed by that suit. The Debtors estimate that the attorneys fees to be incurred by Woodcock to represent the Debtors in the Intercat suit if intervention is permitted are likely to be in excess of $1,000,000 depending upon whether the case goes to trial.

::ODMA\PCDOCS\DOCS_DE\61252\1
91100-001\DOCS_DE:61252.1

13.    Woodcock is uniquely qualified to represent the Debtors in the Intercat suit.  Woodcock was previously retained by the Debtors as an Ordinary Course Professional and in that capacity has been providing the Debtors with advice concerning the Patent and the Intercat suit and related intellectual property issues since the Debtors filed their Chapter 11 cases.  Woodcock is also very familiar with the Debtors' catalyst and FCC Additives business from previous matters on which they have represented the Debtors.  In addition, Woodcock has successfully represented the Debtors in prior patent infringement litigation involving Intercat and has extensive expertise in intellectual property litigation.

<div align="center">**No Adverse Interest**</div>

14.    To the best of Debtors' knowledge, and based upon the Affidavit of Gary H. Levin (the "Levin Affidavit") filed in support of this Application, Woodcock does not represent or hold any interest adverse to the Debtors or their estates with respect to the matter on which Woodcock is to be employed.  Further, to the best of the Debtors' knowledge and based on the Levin Affidavit, Woodcock does not have any connection with any of the Debtors' equity security holders, insiders, creditors or other parties in interest, or their respective attorneys or accountants, or the United States Trustee or any of its employees , except as set forth in the Levin Affidavit.

<div align="center">**Compensation**</div>

15.    In accordance with Section 330(a) of the Bankruptcy Code, the Debtors propose to compensate Woodcock on an hourly basis at its customary hourly rates for services rendered, plus reimbursement of actual, necessary expenses incurred by Woodcock.  The

<div align="center">-7-</div>

primary partners, associates and paralegals of Woodcock who will be handling the above

matters and their current standard hourly rates are:

|  | **Attorney/Paralegal** | **Hourly Rate** |
|---|---|---|
| a. | Gary H. Levin | $435 per hour |
| b. | David R. Bailey | $360 per hour |
| c. | Frank T. Carroll | $250 per hour |
| d. | Karen M. Whitney | $190 per hour |
| e. | Cathy Branka | $145 per hour |

16.     Woodcock's role in the Intercat suit will be that of litigation and trial

counsel. Such representation will require the services of partners, associates and paralegals. The

Debtors believe that the staffing and the hourly rates set forth above are reasonable and should be

approved.

17.     As set forth in the Levin Affidavit, the hourly rates described above are

subject to periodic adjustments to reflect economic and other conditions. Other attorneys or

paralegals may from time to time serve the Debtors in the matter for which Woodcock's

retention is sought. Woodcock's rates are set at a level designed to compensate Woodcock fairly

for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. It

is Woodcock's policy to charge its clients in all areas of practice for all other expenses incurred

in connection with the client's case. The expenses charged to clients include, among other

things, mail and express mail charges, special or hand delivery charges, document processing,

photocopying charges, travel expenses, hotel expenses, airfare, expenses for "working meals,"

computerized research, messengers, and other non-ordinary overhead expenses such as

secretarial and other overtime. Woodcock will charge the Debtors for these expenses in a manner and at rates consistent with charges generally made to Woodcock's other clients.

18.    Woodcock will keep detailed records of the time spent and any expenses incurred in the context of its proposed representation of the Debtors.

19.    Woodcock will submit interim and final applications for compensation in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court and such other and further Orders as the Court may direct.

### Conclusion

20.    For the reasons set forth above and in the Levin Affidavit, the Debtors believe that the attorneys and Woodcock are well qualified to act on the Debtors' behalf in light of their knowledge of the Debtors' business and affairs described herein and their expertise in the field of intellectual property litigation. The Debtors further believe that the engagement of Woodcock is essential to the Debtors' successful reorganization and that the retention of Woodcock is necessary and in the best interest of the Debtors and their estates.

### Notice

21.    Notice of this Motion has been given to (i) the United States Trustee; (ii) counsel to the DIP Lender, (iii) counsel to the Chase Manhattan Bank as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in the Chapter 11 Cases; and (v) all those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice should be required.

: ODMA\PCDOCS\DOCS_DE\61252\1
91100-001\DOCS_DE:61252.1

**No Prior Request**

22.    No application for the relief requested herein have been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, authorizing the Debtors to retain and employ Woodcock as special litigation counsel for the Debtors,  for purposes of representing the Debtors in connection with the Debtors' intervention in the Intercat suit, and grant them such other and further relief as is just and proper.

Dated:  December 23, 2002.

KIRKLAND & ELLIS
James H.M. Sprayregen, P.C.
James W. Kapp III
Janet S. Baer
Christian J. Lane
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

*Kathleen Marshall DePhillips*
Laura Davis Jones (Bar No. 2436)
Kathleen Marshall DePhilips (Bar No. 4173)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

-10-