IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Objection Deadline: January 10, 2003
Hearing Date: January 27, 2003 at 12:00 p.m., only if objections are received.

## DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO TERMINATE A PRIME LEASE AND ASSUME AND ASSIGN THE ACCOMPANYING SUBLEASE

The above-captioned debtors and debtors in possession (collectively, the "Debtors") by and through their undersigned counsel, submit this Motion (the "Motion") for entry of an Order, pursuant to sections 105(a), 363(b) and 365(a) of chapter 11 of the United States Code (as amended, the "Bankruptcy Code"), authorizing the Debtors to terminate that certain prime lease and assume and assign the accompanying sublease as more fully set forth herein. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

**Jurisdiction**

1.     This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.     The statutory bases for relief requested herein are sections 105(a), 363(b) and 365(a) of the Bankruptcy Code.

**Background**

3.     On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.     W. R. Grace & Co.-Conn. ("Grace") leases certain lands and premises in East Lampeter, Pennsylvania (the "Premises") pursuant to a prime lease dated February 1, 1979 (the "Lease") with Lampeter Joint Venture (the "Landlord"). The original term of the Lease expires on January 31, 2005 and the annual base rent payable thereunder is presently $109,468.00, with Grace having the additional obligation to pay taxes and utilities and performance maintenance.

5.     On or about June 7, 1985, the Debtors subleased the Premises to The Pep Boys-Manny, Moe & Jack ("Pep Boys") for the remaining term of the prime lease pursuant to a sublease with Grace (the "Sublease"). Annual base rent payable under the Sublease is presently $116,000. The Sublease also provides for Pep Boys to assume the obligation to pay taxes,

utilities and most items of maintenance. At present, Grace operates the Premises at a monthly net profit of approximately $540.00.

6. On or about May 22, 2000, Pep Boys notified Grace of numerous roof leaks in the Premises. On or about June 26, 2000, Grace notified the Landlord of the roof leaks and demanded the Landlord repair the roof. On or about July 5, 2000, the Landlord disclaimed all responsibility for repairing the roof. An engineering analysis of the roof was conducted in or about July 2000. The engineering analysis determined that the roof required replacement. The cost of such replacement was estimated to be in excess of $75,000.00.

7. In August 2000, Grace initiated litigation to force the Landlord to replace the roof of the Premises (the "Lawsuit"). In or about February 2001, Grace filed a third-party complaint against Pep Boys seeking indemnity for any obligations related to replacing the roof of the Premises (the "Third-Party Complaint," and together with the Lawsuit, the "Litigation").

8. On and after the Petition Date, the parties attempted to negotiate a resolution of the Litigation. After much intense negotiation, the parties agreed to settle the Litigation and allow Grace to relieve itself of all liability related to the Lease and the Sublease. The settlement calls for (a) the termination of the Lease and the assignment of Grace's interests in the Sublease to the Landlord, pursuant to a termination and assignment agreement, a copy of which is attached hereto as Exhibit A (the "Assignment Agreement"); and (b) the dismissal of

the Litigation, with prejudice and the granting of mutual releases by and among all three parties pursuant to a settlement agreement (the "Settlement Agreement").[2]

9. Upon approval by the Court, the Assignment Agreement will be deemed effective as of November 15, 2002. As a result, upon the entry of an order approving the Assignment Agreement, Grace will turn over to the Landlord approximately $1,400.00 (the "Rent Settlement Payment"), pursuant to the letter agreement attached hereto as Exhibit B (the "Rent Settlement Agreement"). The Rent Settlement Payment represents the excess of rent received by Grace under the Sublease over the rent payable by Grace under the Lease for the time between the November 15, 2002 deemed effective date and the entry of the order.

**Relief Requested**

10. Pursuant to sections 363(b) and 365(a) of the Bankruptcy Code, the Debtors seek the Court's approval of the Debtors' termination of the Lease and the assumption and assignment of the Sublease pursuant to the Assignment Agreement.

**Basis for Relief**

11. The Debtors respectfully submit that the proposed transfer satisfies the governing standards for such transfers promulgated in the Third Circuit. Under section 363(b) of the Bankruptcy Code, the debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Courts within this Circuit interpreting section 363(b) of the Bankruptcy Code have held that transactions should be

---

[2] After approval of the Assignment Agreement, the Settlement Agreement will be separately noticed pursuant to the Amended Order Authorizing and Approving an Omnibus Procedure for Settling Certain Claims and Causes of Action Brought by or Against the Debtors in a Judicial, Administrative, Arbitral or Other Action or Proceeding entered on September 18, 2001.

approved under section 363(b) when they are supported by the sound business judgment of management. See In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Phoenix Steel Corp., 82 B.R. 334, 335-336 (Bankr. D. Del. 1987) (judicial approval of a section 363 sale requires a showing that the proposed sale is fair and equitable, that a good business reason exists for completing the sale and that the transaction was entered into in good faith).

12. The "sound business judgment" test requires a debtor to establish the following four elements of proof:

- that a sound business purpose justifies the transfer outside the ordinary course of business;
- that adequate and reasonable notice has been provided to interested parties;
- that the debtor has obtained a fair and reasonable price; and
- good faith.

See In re Titusville Country Club, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); Phoenix Steel, 82 B.R. at 335-336. See also Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983). The proposed transfer satisfies every prong of the above-articulated test.

*The Proposed Sale is Supported by Sound Business Judgment*

13. Clear business reasons exist to justify the Debtors' termination of the Lease and transfer of the Sublease under section 363(b) of the Bankruptcy Code. Neither the Lease nor the Sublease are essential to the Debtors' core business operations and neither coincides with the Debtors' restructuring efforts or ongoing business plan. Because this property is operating at a very small net profit to the Debtors and the liability related to the roof greatly exceeds the total of such profit over the remaining term of the Lease, the Debtors' management

has determined in its business judgment that the Lease should be terminated and the Sublease should be transferred to the Landlord to minimize the Debtors' losses.

*The Debtors Will Provide Reasonable and Adequate Notice to Interested Parties*

14. In satisfaction of the requirements of Rule 2002 of the Bankruptcy Rules, the Debtors intend to serve copies of this Motion to the parties set forth herein.

*The Proposed Rent Settlement Payment is Fair and Reasonable*

15. The Rent Settlement Payment represents a cost-effective method for the Debtors to complete their obligations under the Lease and the Sublease. Based on the information available, the Debtors have concluded that the Rent Settlement Payment is fair and reasonable and represents the best possible result for the Debtors' estates.

*The Transfer Was Negotiated in Good Faith*

16. The termination of the Lease and the transfer of the Sublease is the product of good faith, arm's-length negotiations between the Debtors, Pep Boys and the Landlord. Neither the Landlord nor Pep Boys is an "insider" of any of the Debtors within the meaning of section 101(31) of the Bankruptcy Code, and is not controlled by, or acting on behalf of, any insider of any of the Debtors. See, e.g., In re After Six, Inc., 154 B.R. 876, 883 (Bankr. E.D. Pa. 1993) (good faith found where officers, directors and employees of debtor had no apparent connection to purchasers). The Debtors request a finding by this Court that the Landlord is a "good faith purchaser" under section 363(m) of the Bankruptcy Code.

17. For all of the foregoing reasons, the Debtors respectfully request that the Court approve the termination of the Lease and the transfer of the Sublease under section 363(b) of the Bankruptcy Code.

*Request for Approval of Transfer Free and Clear of Liens*

18.     The Debtors request that the Court approve the transfer of the Sublease free and clear of all liens, claims, encumbrances and interests which may be asserted against either the Lease or the Sublease (collectively, the "Encumbrances"). The Debtors, however, are not aware of the existence of any Encumbrances against either the Lease or the Sublease.

19.     The Debtors submit that the termination of the Lease and the transfer of the Sublease meets each of the requirements of the "sound business judgment" test. Accordingly, the Debtors believe that it is in the best interests of their estates and creditors that the Lease is terminated and the Sublease is assumed, sold and assigned in accordance with this Motion.

*Request for Relief from Transfer Taxes*

20.     Section 1146(c) of the Bankruptcy Code provides that the making or delivery of an instrument of transfer under a confirmed chapter 11 plan of reorganization may not be taxed under any law imposing a stamp or similar tax, if any. Most courts have construed this provision to include transfers outside of, but in furtherance of effectuating, a chapter 11 plan. See Director of Revenue, State of Delaware v. CCA Partnership, 70 B.R. 696 (Bankr. D. Del. 1987), aff'd 833 F.2d 304 (3d Cir, 1987); In re Jacoby-Bender, Inc., 40 B.R. 10 (Bankr. E.D.N.Y. 1984), aff'd 758 F.2d 840 (2d Cir, 1985); In re A.H. Robins Co., 88 B.R. 742 (E.D. Vir. 1988), aff'd 880 F.2d 694 (4th Cir. 1988).

21.     The Debtors respectfully request a ruling of this Court that section 1146(c) of the Bankruptcy Code applies to the transfer hereunder.

### The Assumption and Assignment of the Sublease

22. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). It is well established that the decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984) (describing the business judgment test as "traditional"). See also In re Taylor, 913 F.2d 102 (3d Cir. 1990); Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp., 872 F.2d 36 (3d Cir. 1989). Additionally, pursuant to section 365(b)(1)(A) of the Bankruptcy Code "[i]f there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee cures, or provides adequate assurance that the trustee will promptly cure such default." 11 U.S.C. 365 (b)(1)(A).

23. The Debtors do not believe that any cure amounts are owing relating to the assumption of the Sublease. Accordingly, the Debtors submit that the termination of the Lease and the assumption and assignment to the Landlord of the Sublease is in the best interest of the Debtors, their creditors and estates. As described above, the termination of the Lease and the assumption and assignment of the Sublease immediately limits the losses that must be borne by the Debtors.

### Conclusion

24. In sum, by permitting the Debtors to terminate the Lease and assume and assign the Sublease, the Debtors will relieve their estates of a significant potential financial burden, thereby freeing additional moneys for the benefit of their estates and creditors. As a

result, the Debtors have determined, in the exercise of their business judgment, that the termination of the Lease and the assumption and assignment Sublease is in the best interests of the Debtors' creditors and estates.

### Notice

25. Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee, (v) counsel to the Landlord, (vi) counsel to Pep Boys and (vii) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

### No Prior Relief

26. No previous application for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, (i) approving the termination of the Lease and the assumption, sale and assignment of the Sublease, and (ii) granting such other and further relief as is just and proper.

Dated: December 23, 2002

KIRKLAND & ELLIS
David M. Bernick, P.C.
James H.M. Sprayregen, P.C.
James W. Kapp III
Christian J. Lane
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

*/s/ Darleen Marshall DiPhillips*
Laura Davis Jones (Bar No. 2436)
Scotta E. McFarland (Bar No. 4184)
Bruce Grohsgal (Bar No. 3583)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-counsel for Debtors and Debtors in Possession

# EXHIBIT A

## ASSIGNMENT AGREEMENT

Lampeter Joint Venture
c/o Basser-Kaufman
335 Central Avenue
Lawrence, New York 11559


W.R. Grace & Co. - CONN. ("Grace")
7500 Grace Drive
Columbia, MD 21044

As of November 15, 2002

Re:   Pep Boys
      Premises: East Lampeter, PA

Gentlemen:

This letter is delivered in connection with the Settlement Agreement dated as of November 15, 2002. This letter sets forth our agreement that upon Bankruptcy Court approval of the Settlement Agreement and related documents, Grace shall, within ten (10) business days thereafter, pay to Lampeter at the above address, the amount received from Pep Boys above the amount paid by Grace to Lampeter pursuant to the existing leases for the period from and after November 15, 2002. Such amount equals $17.90 per day and for the period from November 15, 2002, through and including January 31, 2003, is $1,395.90.

It is further agreed that, to the extent that Grace receives any additional sums from Pep Boys with respect to the above premises, it shall immediately forward same to Lampeter.

This letter may be executed in counterparts.

Sincerely,

LAMPETER JOINT VENTURE

By:_____

AGREED TO:

W.R. GRACE & CO. - CONN

By: _____

Lampeter Joint Venture
c/o Basser-Kaufman
335 Central Avenue
Lawrence, New York 11559

W.R. Grace & Co. - CONN. ("Grace")
7500 Grace Drive
Columbia, MD 21044

As of November 15, 2002

Re:  Pep Boys
     Premises: East Lampeter, PA

Gentlemen:

This letter is delivered in connection with the Settlement Agreement dated as of November 15, 2002. This letter sets forth our agreement that upon Bankruptcy Court approval of the Settlement Agreement and related documents, Grace shall, within ten (10) business days thereafter, pay to Lampeter at the above address, the amount received from Pep Boys above the amount paid by Grace to Lampeter pursuant to the existing leases for the period from and after November 15, 2002. Such amount equals $17.90 per day and for the period from November 15, 2002, through and including January 31, 2003, is $1,395.90.

It is further agreed that, to the extent that Grace receives any additional sums from Pep Boys with respect to the above premises, it shall immediately forward same to Lampeter.

This letter may be executed in counterparts.

Sincerely,

LAMPETER JOINT VENTURE

By: _____

AGREED TO:

W.R. GRACE & CO. - CONN

By:_____

C:\Documents and Settings\marck\Local Settings\Temporary Internet Files\OLK149\W.R.Grace - Lampeter.wpd

# EXHIBIT B

## RENT SETTLEMENT AGREEMENT

## TERMINATION OF LEASE AND ASSIGNMENT OF SUBLEASE

THIS TERMINATION OF LEASE AND ASSIGNMENT OF SUBLEASE (this "Agreement ") is made among MYRON L. KAUFMAN, individually and as general partner of LAMPETER JOINT VENTURE ("Landlord"), W.R. GRACE & CO.-CONN. (formerly known as W.R. Grace & Co.), a Connecticut Corporation ("Tenant") and THE PEP BOYS-MANNY, MOE & JACK, a Pennsylvania Corporation ("Subtenant").

INTRODUCTORY STATEMENTS:

A.  By Lease dated February 1, 1979 (as modified, the "Lease"), Landlord's predecessor leased to Tenant certain lands and premises in East Lampeter, Pennsylvania, more particularly described in the Lease (the "Premises").

B.  By Agreement of Lease dated June 7, 1985 (the "Sublease"), Tenant sublet the Premises to Subtenant.

C.  By Consent of Overlandlord, Landlord, and Authority; Addendum to Lease dated July 12, 1985, Landlord and its lender consented to the Sublease and the parties agreed to certain modifications to the Lease.

D.  Tenant filed a voluntary petition for reorganization relief pursuant to Title 11 of the United States Code, 11 U.S.C. Sections 101 *et seq.*, (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on April 2, 2001 (the "Filing Date"), and has operated its business as a debtor-in-

possession (as defined in Section 1101 of the Bankruptcy Code), as authorized by Sections 1107 and 1108 of the Bankruptcy Code since the Filing Date.

E.  The parties desire to terminate the Lease and assign the Tenant's interest in the Sublease to Landlord, so that the Sublease will become a direct Lease from Landlord to Subtenant.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the parties hereby agree as follows:

1.  Landlord and Tenant agree that, as of November 15, 2002 ("the Effective Date"), the Lease is terminated and of no further force or effect. Within five (5) days after the Final Approval Date (as hereinafter defined), Landlord and Tenant shall adjust all payments of rent and additional rent under the Lease (other than percentage rent, which shall be handled as provided in Section 3 of the Settlement Agreement of even date herewith between the parties), such adjustments to be made as of the Effective Date.

2.  Tenant hereby assigns to Landlord all of its right, title and interest as landlord under the Sublease. Within five (5) days after the Final Approval Date, Subtenant and Tenant shall adjust all payments of rent and additional rent under the Sublease (other than percentage rent, which shall be handled as provided in Section 3 of the Settlement Agreement of even date herewith between the parties), such adjustments to be made as of the Effective Date.

3.  This Agreement shall not become effective unless approved by the Bankruptcy Court. Tenant shall use its good faith diligent efforts to pursue Bankruptcy Court approval of this Agreement and the transaction which is the subject hereof. As used in the provisions of this Agreement, the Final Approval Date shall be the third business day following

the date on which the order entered by the Bankruptcy Court authorizing and approving this Agreement and the transaction which is the subject hereof (the "Bankruptcy Court Order") becomes final. The Bankruptcy Court Order shall not be deemed final until the time to appeal has expired without any appeal having been filed or as to which there has been no entry of any stay pending appeal prohibiting or preventing Tenant from proceeding herewith. Any party shall have the right to terminate this Agreement, by notice to the others, if the Final Approval Date shall not have occurred on or before February 1, 2003.

4. Each party warrants and represents to the other that no broker, agent or finder has been retained by it in connection with this Agreement terminating the Lease and assigning the Sublease.

5. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

6. Time is of the essence with respect to all provisions of this Agreement.

7. This Agreement, and the Settlement Agreement with exhibits, constitutes the entire Agreement among the parties hereto with respect to the subject matter hereof, and supersedes any and all written or oral agreements with respect hereto. This Agreement may be amended or modified only by instrument signed by all of the parties hereto.

8. Each party has been represented by legal counsel in the preparation of this Agreement, and the rule of construction that documents be construed against the drafter shall not apply to this Agreement.

9. The parties agree that the Bankruptcy Court has exclusive jurisdiction to enforce the provisions of this Agreement and to decide any claims or disputes which may arise or

result from or be connected with this Agreement, any breach or default hereunder, or the transaction contemplated hereby.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the date and year first above written by their respective representatives thereunto duly authorized.

WITNESS:

|  |  |
| --- | --- |
|  | MYRON L. KAUFMAN, Individually and as General Partner of Lampeter Joint Venture |

WITNESS:                                                   W.R. GRACE & CO.-CONN.

*/s/ Vicki B. Finkets/*                                    By: */s/ C. May/*

WITNESS:                                                   THE PEP BOYS-MANNY, MOE & JACK

                                                           By: _____

4

result from or be connected with this Agreement, any breach or default hereunder, or the transaction contemplated hereby.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the date and year first above written by their respective representatives thereunto duly authorized.

WITNESS:

_____    MYRON L. KAUFMAN, Individually and
                                     as General Partner of Lampeter Joint
                                     Venture

WITNESS:                             W.R. GRACE & CO.-CONN.

_____    By: _____

WITNESS:                             THE PEP BOYS-MANNY, MOE & JACK

*Jacqueline Woods*                   By: *[signature]*
JACQUELINE WOODS                          Frederick A. Stampone

4

result from or be connected with this Agreement, any breach or default hereunder, or the transaction contemplated hereby.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the date and year first above written by their respective representatives thereunto duly authorized.

WITNESS:

*/s/ Marie Lonie/*             */s/ Myron L. Kaufman/*
                                         MYRON L. KAUFMAN, Individually and
                                         as General Partner of Lampeter Joint
                                         Venture

WITNESS:                               W.R. GRACE & CO.-CONN.

_____       By: _____

WITNESS:                               THE PEP BOYS-MANNY, MOE & JACK

_____       By: _____

4