FILED

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          .        Chapter 11
                                .
W.R. Grace & Co., et al.,       .
                                .
        Debtor(s).              .        Bankruptcy #01-01139 (JKF)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

                        Wilmington, DE
                        November 25, 2002
                          10:30 a.m.

                    TRANSCRIPT OF HEARING
        BEFORE THE HONORABLE JUDITH K. FITZGERALD
            UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Debtor:                     Janet S. Baer, Esq.
                                Kirkland & Ellis
                                200 E. Randolph Drive
                                Chicago, IL 60601

                                Scotta McFarland, Esq.
                                Pachulski, Stang, Ziehl,
                                Young & Jones
                                Ste. 1100
                                10100 Santa Monica Blvd.
                                Los Angeles, CA 90067

                                Anthony J. Marchetta, Esq.
                                Pitney, Hardin, Kipp
                                & Szuch, LLP
                                P.O. Box 1945
                                Morristown, NJ 07962

                                James Restivo, Esq.
                                Reed Smith
                                435 Sixth Ave.
                                Pittsburgh, PA 15219

2

|  | |
|---|---|
| 1 | Will Sparks, Esq. |
|  | W.R. Grace |
| 2 | In-House Counsel |
| 3 | For Unsecured Creditor's:     Arlene G. Keieger, Esq. |
|  | Committee                     Stroock, Stroock & Lavan, LLP |
| 4 | 180 Maiden Lane |
|  | New York, NY 10038 |
| 5 | |
|  | Michael Lastowski, Esq. |
| 6 | Duane Morris, LLP |
|  | 1100 N. Market St.-Ste. 1200 |
| 7 | Wilmington, DE 19801 |
| 8 | Edwin N. Ordway, Jr., Esq. |
|  | FTI Policano & Manzo |
| 9 | Park 80 West, Plaza I |
|  | Saddle Brook, NY 07663 |
| 10 | |
|  | For Zonolite Plaintiffs:      William Sullivan, Esq. |
| 11 | Elzufon, Austin, Reardon, |
|  | Tarlov & Mondell, PA |
| 12 | Ste. 1700 |
|  | 300 Delaware Ave. |
| 13 | Wilmington, DE 19801 |
| 14 | For Equity Security Holders:  Gary M. Becker, Esq. |
|  | Committee                     Kramer, Levin, Naftalis |
| 15 | & Frankel, LLP |
|  | 919 Third Ave. |
| 16 | New York, NY 10022 |
| 17 | Jeffrey Waxman, Esq. |
|  | Klett, Rooney, Lieber |
| 18 | & Schorling |
|  | The Brandywine Bldg. |
| 19 | 1000 West Street-Ste. 1410 |
|  | Wilmington, DE 19801 |
| 20 | |
|  | For Asbestos PD Committee:    Jay Sakalo, Esq. |
| 21 | Bilzin, Sumberg, Dunn, |
|  | Baena, Price & Axelrod, LLP |
| 22 | First Union Financial Center |
|  | Ste. 2500 |
| 23 | 200 South Biscayne Blvd. |
|  | Miami, FL 33131 |
| 24 | |
| 25 | |

*Writer's Cramp, Inc.*

Certified Court Transcribers

732-329-0191

3

```
 1                                    Theodore J. Tacconelli, Esq.
                                      Ferry, Joseph & Pearce, PA
 2                                    824 Market Street
                                      Wilmington, DE 19899
 3
        For Asbestos PI Committee:    Mark Hurford, Esq.
 4                                    Campbell & Levine, LLC
                                      1201 North Market St.-Ste. 1501
 5                                    Wilmington, DE 19801

 6      For  Maryland Casualty:       Jeffrey C. Wisler, Esq.
        Company                       Connolly, Bove, Lodge
 7                                    & Hutz, LLP
                                      1220 Market Street-10th Fl.
 8                                    Wilmington, DE 19899

 9                                    Edward J. Longosz, II, Esq.
                                      Echert, Seamans, Cherin
10                                    & Mellott, LLC
                                      1250  24th St., N.W.
11                                    Washington, DC 20037

12      For ZAI Claimants:            Edward J. Westbrook, Esq.
                                      Richardson, Patrick, Westbrook
13                                    & Brickman, LLC
                                      174 E. Bay Street
14                                    Charleston, SC 29401

15      For Edythe Kellogg:           Patrick Scanlon, Esq.
                                      Ste. 101
16                                    203 Northeast Front St.
                                      Milford, 19963
17      Audio Operator:               Sherry Scaruzzi
        Transcribing Firm:            Writer's Cramp, Inc.
18                                    6 Norton Rd.
                                      Monmouth Jct., NJ 08852
19                                    732-329-0191

20    Proceedings recorded by electronic sound recording, transcript
      produced by transcription service.
21

22

23

24

25
```

4

1        THE COURT:  Okay, looks like we're ready.  Ms. Baer
2    good morning.

3        MS. BAER:  Good morning, Your Honor.  Your Honor, I
4    believe that Warren Smith was going to participate by
5    telephone?  Janet Baer on behalf of WR Grace.

6        THE COURT:  Mr. Smith, are you on the phone?

7        MR. SMITH:  Yes, Your Honor, I appreciate your
8    allowing me to appear by telephone, it's a lot more convenient
9    for me.  I have 9 boxes of fee applications that I'm looking at
10   right now.

11       THE COURT:  Yes, I had 14 delivered to me over the
12   weekend.  It was a lot of fun.  But, you did a wonderful job,
13   thank you, with your reports, I appreciated them very much.

14       MR. SMITH:  Thank you, Your Honor.

15       THE COURT:  Do you have an Order?

16       MS. BAER:  Your Honor, we have Orders on both the
17   period 1st through 3rd applications and on the 5th period.  We
18   have amended Orders.  A few numbers were worked out with Mr.
19   Smith over the weekend, and Miss McFarland is going to present
20   those to you.

21       THE COURT:  All right.

22       MS. MCFARLAND:  Your Honor, I have one Order covering
23   the first, second and third period.  There was one change made
24   on this from the last Order that was submitted to the Court, on
25   the amount for the Pachulski, Stang application.  Additional

5

1  information was given Mr. Smith concerning his objections to

2  that and it caused him to change his recommendations, so we've

3  made that amendment and I'd like to present the Order, if I

4  could.

5         THE COURT:  All right.  Has everyone had an

6  opportunity now to see this Order, including Mr. Smith?  This

7  relates to agenda items #1 and 2 and it is the Quarterly Fee

8  Applications Order for the 1st, 2nd and 3rd periods.  And I

9  take it at this point in time, all of these numbers are now

10  uncontested, correct?

11         MS. MCFARLAND:  That is --

12         THE COURT:  By consent?

13         MS. MCFARLAND:  -- that's my understanding, Your

14  Honor.

15         THE COURT:  Mr. Smith, have you seen this proposed

16  Order?

17         MR. SMITH:  Yes, it was originally generated through

18  our office and then passed to Kirkland & Ellis and then to the

19  Pachulski firm, Your Honor.

20         THE COURT:  All right, anybody have any comments on

21  this Order before it's entered?

22         ALL:  (No verbal response).

23         THE COURT:  Okay, that Order is signed.

24         MS. MCFARLAND:  Then we have an Order on the 5th

25  interim quarterly period.  I don't believe it has changed since

6

1    the last one submitted but I have a copy if the Court would

2    like it.

3         THE COURT:  All right.  Okay, has everyone seen and

4    agreed to the fifth, the Order approving the quarterly fees for

5    the 5th period?

6         MS. MCFARLAND:  I believe so, Your Honor.

7         (Pause in proceedings)

8         THE COURT:  All right, that Order is entered.

9         MS. MCFARLAND:  Your Honor, I have a couple of

10   housekeeping matters on fee applications that I would like to

11   ask for guidance on.  Apparently the 4th interim Order that was

12   entered, inadvertently left out some of the Committee expenses

13   for one of their experts.  And also I understand that there was

14   a calculation error in Klett Rooney's amount.  Would you like

15   for us to submit an entirely new, amended Order --

16        THE COURT:  No.

17        MS. MCFARLAND:  -- or just supplement it?

18        THE COURT:  Just a supplement.

19        MS. MCFARLAND:  Okay, Your Honor, we'll be glad to do

20   that, thank you.

21        THE COURT:  If you would just attach it to a

22   Certificate of Counsel, so that I have some basis to get it --

23        MS. MCFARLAND:  Certainly.

24        THE COURT:  -- that would be fine.  Ms. Baer?

25        MS. BAER:  Your Honor, I think that takes us to

1    Contested Matter #76, Matters #1 through 75 being all of the

2    fee applications when they were originally listed.  Your Honor,

3    matter 76 --

4          THE COURT:  Pardon me -- Mr. Smith, since your reports

5    were so very comprehensive, including everybody's responses,

6    and your responses to their responses, and I've now approved

7    the fees, do you want to stay on the line for the rest of this?

8          MR. SMITH:  Not at all, Your Honor, I'd like to be

9    excused.

10         THE COURT:  You're welcome, I'll disconnect.

11         MR. SMITH:  Thank you, Your Honor.

12         THE COURT:  Is there anyone else on the phone?

13         ALL:  (No verbal response).

14         THE COURT:  Anyone else on the phone?

15         ALL:  (No verbal response).

16         THE COURT:  Okay, Ms. Baer, I'm sorry.

17         MS. BAER:  Thank you, Your Honor.  Your Honor, matter

18   #76 involves the Kellogg action, and it's kind of a fluid

19   situation as things have evolved in the last week.  Where we

20   left off, Your Honor, is if you recall, this was originally a

21   Motion to Lift Stay.  Ms. Kellogg was injured when a Grace

22   truck struck her.  The driver's name was Nussbaum and the

23   action was filed against both Grace and Nussbaum.  What

24   happened Your Honor, is you denied the Motion to Lift Stay.  We

25   provided counsel in California with a copy of your injunction

1  which enjoins the actions both against Grace and against
2  Nussbaum, our employee.  The State Court decided that the
3  action could go forward against Nussbaum individually, not in
4  his capacity as an employee of Grace, and was in the process of
5  setting the matter for trial.  We filed this motion, Your
6  Honor, because it doesn't work.  Proceeding against Nussbaum
7  individually is still proceeding against Grace and Grace's
8  insurance.  AIG covers Grace, covers the truck, covers the
9  accident and is still defending the matter.  In the meantime,
10  Your Honor, last week unbeknownst to Grace, the State Court
11  matter went forward in mediation.  AIG participated in that
12  mediation and settled the case.  That's all fine and good, Your
13  Honor, and frankly we think the settlement is a good one for
14  all parties involved.  The problem is AIG did not contact Grace
15  and did not think that, when they settled the case, it still
16  implicated our $250,000 deductible and the $250,000 Letter of
17  Credit.  When we found out, we immediately contacted AIG, who
18  then put us in touch with their corporate counsel in New York.
19  We also contacted Ms. Kellogg's attorney to see what we could
20  resolve.  AIG was agreeable to going forward and paying the
21  $650,000 of the $900,000 settlement and then not paying the
22  250, therefore not triggering the Letters of Credit.  Ms.
23  Kellogg was very much opposed to that, indicated that it had
24  been represented to her that she could receive the entire
25  $900,000 settlement payment immediately from AIG.  That left us

1  in a quandary as to what to do and I did not wish to seek

2  setting aside the settlement if there was some way around it.

3  I also don't want Ms. Kellogg to get hurt because one of my

4  alternatives was to ask Your Honor to stay the settlement,

5  because it implicates Grace.  I spoke with corporate counsel

6  for AIG this morning with an alternative suggestion, which was

7  made by the Kellogg attorneys.  And that is:  as you may

8  recall, there are 2 Letters of Credit that secure the

9  deductible amount.  One is a secured Letter of Credit and one

10  is an unsecured Letter of Credit.  I talked with AIG and they

11  are agreeable, after verification that the Letters of Credit

12  are what we say they are, and are secured as they are, and are

13  the amounts that they are, they would be agreeable to drawing

14  on the Letter of Credit that is the unsecured Letter of Credit.

15  What that would do, Your Honor, is AIG would end up getting

16  paid in full, getting reimbursed for the $250,000 and it would

17  create an unsecured claim of $250,000 by our lender who posted

18  the LC against Grace.  I mentioned it to Unsecured Creditors'

19  counsel this morning.  I can't represent that she was agreeable

20  but she at least understood what we were saying.  And from

21  Grace's perspective, we are agreeable to doing this as it does

22  not create a secured claim against the estate, it creates an

23  unsecured claim against the  estate, which would ultimately be

24  the case in some point when this matter was resolved, or when

25  this matter was tried, and ultimately, if there had been any

1 | judgment entered.  Again Your Honor, from Grace's perspective,
2 | we believe that the settlement of $900,000 is a reasonable
3 | settlement and we are willing to go forward with that and have
4 | this $250,000 deductible --
5 |         THE COURT:  Aren't you going to have to file a 90-19
6 | Motion?
7 |         MS. BAER:  Your Honor, it's very funny.  AIG settled
8 | this action and signed it up without Grace participating
9 | whatsoever.  We're not even a party to the State Court case
10 | anymore.
11 |         THE COURT:  But now they want your $250,000?
12 |         MS. BAER:  They do.
13 |         THE COURT:  So, I think you need a 90-19 Motion, which
14 | I think will give everybody an opportunity to decide whether
15 | the substitution of one claim for another will be okay.  I
16 | mean, if that's what it's doing, substituting claims, there
17 | probably isn't much objection.  Is this going to cause a
18 | default under any of your D-I-P documents?
19 |         MS. BAER:  I don't believe so, Your Honor, but it is
20 | something we need to check.  Your Honor, I believe you're
21 | correct and I was going to suggest that the thing to do here is
22 | to set this matter over to the December Omnibus Hearing.  And
23 | perhaps we can put together some sort of an Agreed Order and in
24 | the meantime, also prepare a 90-19 Motion.
25 |         THE COURT:  Okay, that's fine.  Is anybody here from

1    Ms. Kellogg, or AIG?

2              MR. SCANLON:  Yes, Your Honor.

3              THE COURT:  Mr. Scanlon, good morning.

4              MR. SCANLON:  Good morning, Your Honor.  Your Honor,

5    it's Ms. Kellogg's position --

6              THE CLERK:  State your name, please.

7              MR. SCANLON:  I'm sorry, I'm Patrick Scanlon for

8    Edythe Kellogg.  Your Honor, this is not the Automatic Stay

9    Order, this is the special conjunction.  The application for

10   this injunction runs to, I believe, 35 complaints -- 35

11   paragraphs.  Every paragraph talks about asbestos litigation in

12   one aspect:  whether it's the fraudulent conveyance hook, or

13   what other hook, but it's all about asbestos litigation.  The

14   relief that's asked for in that complaint is complaint to

15   protect the Debtor against asbestos litigation in all its

16   formats.  There is no single reference in there to any other

17   type of litigation that's being enjoined and --

18             THE COURT:  It doesn't really matter if -- if the

19   matter has been settled, and the Creditors don't object to the

20   settlement, it'll go through and it's all irrelevant.  The only

21   question I have is, to the extent that the estate assets are

22   implicated, I think the Debtor has to do a 90-19 Motion and

23   find out it somebody objects.  If it's substituting one

24   unsecured claim for another and doesn't cause default under the

25   D-I-P, probably it's okay.

1    MR. SCANLON:  Your Honor, my point is, and this is the

2 Debtor's application to enjoin the action against Nussbaum, I

3 guess, now to set aside the settlement that the insurance

4 carrier has.  The claim is not against the estate.  The

5 automatic injunction is not involved here.

6    THE COURT:  Well, if that's the case, then how are the

7 Debtor's insurance proceeds implicated?

8    MR. SCANLON:  Well, they aren't at this point.

9    THE COURT:  Well, they are if you're taking $900,000

10 in insurance provided by this estate, 250,000 of which has to

11 come from the Debtor.

12    MR. SCANLON:  Mr. Nussbaum is the insured in this

13 situation.  That AIG, or that Grace paid for the policy doesn't

14 make it Grace's money.  Mr. Nussbaum, because he was a

15 permissive driver of that vehicle, not because he was acting in

16 the scope of employment, because he was a permissive driver of

17 that vehicle, is covered under the insurance policy.

18    THE COURT:  Is driving the vehicle not in the scope of

19 employment and is he covered by the insurance policy that Grace

20 purchased?  I want one of these policies, where do I get one?

21    MR. SCANLON:  Anytime that you have a company truck

22 that you can take home, you have one, Your Honor.

23    THE COURT:  I'd just like one, you know, for my

24 children and my car --

25    MR. SCANLON:  I understand but there's a difference

1  between permissive user and scope of employment.  Mr. Nussbaum
2  -- I don't think the record indicates what he was doing at the
3  time, but he may well have just been going to lunch in a
4  company truck that he had a right to use.  The point is, the
5  insurance company insured him.  They were paid to take this
6  risk.  Now, they are subject to the automatic stay.  The
7  insurance company, having paid this, or once they pay this
8  policy, cannot make a claim against Grace without first getting
9  a relief from the automatic stay to present that.  That's their
10  problem.  If they can proceed against the Letters of Credit
11  without getting permission of the Court, which is a problematic
12  matter, that still doesn't create a secured claim, because the
13  Letters of Credit are the property of the bank.  The bank is
14  going to pay that, that's not assets of the Debtor.  If,
15  contrary to what the expectation is here, that they decide to
16  make the claim against the small Letter of Credit, the one for
17  720,000, instead of the obvious one, the one for 2.1 million or
18  whatever it is, there's still no property of Grace being taken.
19  If the bank wants to proceed against the assets of W.R. Grace
20  they have to come back to this Court for relief from the stay -
21  -

22      THE COURT:  They may, but I'm not going to permit any
23  of that to happen if what this means is, that by approving the
24  settlement, I'm going to create all these problems for the
25  estate.  So, I want the Debtor to Notice it, because to the

1  extent that the Debtor's is going to have a claim against this

2  estate, which it currently doesn't have, by way of liquidated

3  damage, that's what I mean because it will be a $250,000

4  deductible that the Debtor will have to satisfy under this

5  stipulation of settlement, the Debtor's going to have to Notice

6  it.  And if it's appropriate it, it will be approved.  And if

7  it isn't, it won't.  Now if the insurance company's deal with

8  your client is that their on the hook for the whole $900,000,

9  they don't need my approval to settle that.  You're quite

10 correct, they don't.  As long as Grace is out of the case.

11 But, if they're not going to settle it because Grace has a

12 $250,000 deductible, which I haven't approved and haven't let

13 anybody get to yet, then they need to do a Notice.

14         MR. SCANLON:  Your Honor, if I can approach the Court,

15 we've got the settlement --

16         THE COURT:  Okay.

17         MR. SCANLON:  -- they've agreed to it.

18         THE COURT:  Thank you.

19         MR. SCANLON:  As far as I'm concerned, Your Honor, the

20 only thing that I need is the Court's Order that nothing that

21 happened here today would prevent Edythe Kellogg from

22 collecting on this agreement.

23         THE COURT:  Well, what this agreement does is provides

24 the relief against any of the Defendants but the only one at

25 the moment is Wayne Nussbaum.  What's this doing with respect

1   to claims against this estate?

2         MR. SCANLON:  This settlement will release W.R. Grace,

3   if you look at the second paragraph A, it releases Grace but

4   Grace is not bound by this, because they're not a party.  They

5   can benefit from the release, but they're not bound by the

6   $900,000 figure because they weren't party to this.

7         THE COURT:  Okay, I'm sorry, I don't see Grace, what

8   am I missing?

9         MR. SCANLON:  On page 2 --

10        THE COURT:  Yes.

11        MR. SCANLON:  -- paragraph 8A, handwritten, "the

12  release will include W.R. Grace and Company."

13        THE COURT:  Oh, okay, and then it says:  "Plaintiff

14  will set aside $200,000 in trust to satisfy all liens?"

15        MR. SCANLON:  That's medical bills, I understand, Your

16  Honor.

17        THE COURT:  But is that what that symbol is, it's

18  Plaintiff?

19        MR. SCANLON:  Yes, that's π (Pi) for Plaintiff.

20        THE COURT:  Okay, I wasn't sure if it was it, or

21  whether it was Plaintiff.

22        MR. SCANLON:  I'm sure that's π (Pi) for Plaintiff,

23  Your Honor.

24        THE COURT:  Okay, so I think the Debtor needs simply

25  to Notice this for settlement, because it's still going to

1   impact its $250,000 deductible according to the insurance

2   company.

3           MR. SCANLON:  I guess what's at issue today is the

4   Debtor's application here to enjoin what's happened here.

5           THE COURT:  Oh, okay, well I think what I should do

6   is, continue that until the Debtor can Notice this for

7   settlement, because it's probably going to be moot.

8           MR. SCANLON:  Thank you, Your Honor.

9           THE COURT:  All right, how much time do you want to

10  try to get these little issues resolved?

11          MS. BAER:  Your Honor, I think with respect to

12  resolving the Letters of Credit issues and the like, we can get

13  those resolved in 7 days.  With respect to getting the 90-19

14  Motion out, I can get it out quickly but I'm afraid we may not

15  get it out in time to actually have it heard in December

16  because the December hearing is only 3 weeks away.  Unless Your

17  Honor would shorten the time.

18          THE COURT:  I'm willing to shorten the time under

19  these circumstances.  I mean, I have some doubt that there's

20  going to be much of an issue if you're substituting one

21  unsecured claim for another, frankly, if that's what this is.

22  I'm not totally sure it is, but I agree with Mr. Scanlon,

23  nobody's going to be collecting it from the Debtor without

24  relief from stay to do it, so you may want to incorporate that

25  in as well, for this process.  So, I'm -- it's up to you Mr.

1  Scanlon, do you want the time shortened and put on the December

2  list, or --

3           MR. SCANLON:  I would appreciate that, Your Honor.

4           MS. BAER:  Your Honor, with the holidays if I could

5  have until next Monday to get the motion out, as well as

6  resolve it with AIG.

7           THE COURT:  So the motion will be filed by December

8  2nd, and set for hearing on December 16 at 10:00?  And agenda

9  #76 is continued to December 2nd -- I'm sorry, December 16th.

10          MR. SCANLON:  Thank you, Your Honor.

11          THE COURT:  Thank you.

12          MS. BAER:  Thank you, Your Honor.

13          THE COURT:  Okay.

14          MS. BAER:  Your Honor, that takes us to agenda item

15  #77, which is the continued motion of Carol Gerard with respect

16  to the bond, she was asking for Maryland Casualty to post.

17          THE COURT:  Yes.

18          MS. BAER:  And I believe, Your Honor, this matter was

19  argued in September and you had indicated you wanted to review

20  the documents that had been submitted by Ms. Gerard.

21          THE COURT:  Yes, and I have done that and I still do

22  not, at this point in time, see any basis to change the opinion

23  that I wrote earlier.  Actually, I authored a draft of an Order

24  to that effect two weeks and I have been carrying it around and

25  haven't signed it, so I really do not see a basis for it.  I

1  certainly don't see a Motion to Post a Bond.  I'm in agreement

2  with both the response filed by Maryland Casualty and by the

3  Debtor, that this issue at least should have been raised when

4  the initial pleading was filed and not now, but in any event,

5  since it was the Debtor's Motion, I don't think the Court is

6  compelled to enter an Order requiring the posting of a bond.  I

7  simply don't see the basis for it.  So, an Order will be

8  entered but it will not be today, because I do have to go back

9  and take a look at it.  But, I will be entering an Order, you

10  do not need to carry this Order.  I promise between now and

11  December 16 an Order will come out.

12          MS. BAER:  Thank you, Your Honor.

13      (Pause in proceedings)

14          THE COURT:  Okay.

15          MS. BAER:  Your Honor, that takes us to the end of the

16  formal agenda.  However, your Chambers contacted us last week

17  with respect to scheduling on the ZAI science trial?

18          THE COURT:  Yes.

19          MS. BAER:  Mr. Restivo and Mr. Westbrook are here in

20  Court today and Mr. Restivo would like to give you an update

21  status on the science trial, and then also talk about

22  scheduling issues.

23          THE COURT:  All right, Mr. Restivo?

24          MR. RESTIVO:  Jim Restivo, Reed Smith, for the Debtor,

25  good morning, Your Honor.  Your Honor, at the September 23

1  Omnibus Hearing, you set today for a status report on the

2  science trial.  Mr. Westbrook has sent you a report under date

3  of November 22, 2002 with a proposed Order.  The facts reported

4  in that letter are correct, Your Honor.  Since September 23,

5  there have been over 37 communications between counsel for the

6  Debtor and counsel for the Plaintiff.  Documents have been

7  provided.  Discovery disputes have arisen, the parties have

8  discussed them, the parties have resolved them, or are

9  attempting to resolve them.  But, approximately 50,000

10  documents have been produced and as Mr. Westbrook indicates in

11  his letter, and as anticipated by Your Honor at the September

12  23 hearing, there does -- the parties would like to request a

13  modest extension from the existing schedule.  What it basically

14  does, Your Honor, is extend the existing time periods by

15  approximately 60 days.  Within that, there have been some

16  adjustments depending upon dates and weekends.  The only

17  exception to that, Your Honor, is that in terms of an argument

18  date, Mr. Westbrook has suggested and we are in agreement, that

19  the argument date occur on or after September 8, Your Honor.

20  To set the argument date the week before then with the end of

21  vacations and the holiday and everything, good help is hard to

22  find at that time of year, and so, that actually is a little

23  bit more than 60 days.

24         THE COURT:  Well, I have some proposed dates for you.

25  So, let's see if any of these would work out.  I actually have

1  September 9th and 10th available, these are all Pittsburgh

2  dates.  But frankly, I think that that's a little too soon for

3  me because if something is going to be filed by September 8th,

4  in all probability, I'm not going to have it read then.  The

5  next time I have is 16th and 17th of September.  I have the

6  24th and 25th of September.  Grace is already scheduled to be

7  in Pittsburgh on October 22nd, I'm not sure what that's for,

8  actually, whether that's an omnibus date or something else.  I

9  really don't know.  But, you're already set to be there then,

10  and as of the moment, I have that whole week unscheduled.  So

11  we could do it either the 20th and 21st if you're going to be

12  there the 22nd, or the 23rd and 24th, after the 22nd if that

13  works.  But I don't know how far away from September 8th you

14  want to go.

15          MR. RESTIVO:  Your Honor, under the schedule proposed

16  by us, the last documents filed with the Court will be replies

17  limited to 10 pages on August 18 and so, subject to Mr.

18  Westbrook's comments, I would think September 16/17 or

19  September 24/25 would give the Court and the parties

20  appropriate time to digest the replies filed on August 18.  Mr.

21  Westbrook?

22          MR. WESTBROOK:  Good morning, Your Honor --

23          THE COURT:  Good morning.

24          MR. WESTBROOK:  -- Ed Westbrook for the ZIA claimants.

25  Your Honor, I agree with Mr. Restivo, I think either of those

1    dates would be fine.

2         THE COURT:  Okay, well do you want to do the 16th and

3    17th, Monday and Tuesday?

4         MR. RESTIVO:  Yes, Your Honor.

5         THE COURT:  Okay, having said that, are you under any

6    pressure from Judge Wolin to get this done sooner, maybe I

7    should ask that before I agree to this extension?

8         MR. RESTIVO:  Not that I know of.

9         MS. BAER:  Your Honor, we have not had any contact

10   with Judge Wolin with respect to this matter.  Now I do know

11   that this week he has set a settlement hearing, a settlement

12   conference in the fraudulent claims cases.  In the event that

13   that would resolve sooner, I could anticipate some sort of

14   pressure, but I think there's just so much we can do about the

15   timing here, with respect to all of the discovery that's going

16   on.  But, thus far, there's been no mention whatsoever of this.

17        THE COURT:  Okay, so we'll start 9:00 Monday morning,

18   September 16th?

19        MR. RESTIVO:  In Pittsburgh, Your Honor.

20        THE COURT:  In Pittsburgh, and I'll reserve the 16th

21   and 17th.  I did have that Form of Order, but I don't have it

22   here.  Do you have one with you?

23        MR. WESTBROOK:  Your Honor, I have another one.

24        THE COURT:  If I could use it Mr. Westbrook, it might

25   be better if couldn't find it --

1          MR. WESTBROOK.  Absolutely.

2          THE COURT:  -- thank you.  Okay, I'm going to change

3   paragraph 9 to say:  "argument will be in Pittsburgh on

4   September 16 and 17, 2003 at 9:00" at which time we'll address

5   further pre-trial orders and matters.  Are you to the point yet

6   in this document production that some settlement discussions

7   may be appropriate or are you still too far apart in terms of

8   getting information?

9          MR. WESTBROOK:  Your Honor, I think we will need a bit

10  of time from our standpoint.  The last, well, the next 12,000

11  documents came in last week on CD, so we really are starting to

12  assimilate the information, but I think we are a bit premature

13  on that, Your Honor.

14         THE COURT:  Okay, I think I would like to continue to

15  get regular status reports.  I won't ask for one in December

16  since that's only 3 weeks from now, that's probably enough

17  time.  But could you put this back on the January report,

18  please?  Because before we have to get into this trial, I

19  really do want to see whether or not some discussion in the way

20  of settlement will take place.  And at some point, you'll be

21  ready for it before September, I don't know what that point is.

22  So, maybe you can let me know how close you're getting in

23  January.

24         MR. WESTBROOK:  Yes, Your Honor.

25         THE COURT:  Okay, thank you.  Oh, Ms. Baer, before I

1  forget, I apologize for taking this out of order, but I know

2  I'm going to forget this.  The dates I gave you for hearings in

3  June are probably going to be changed.  That is for your

4  omnibus date.  But, I can't give you what dates they will

5  actually be, yet.  Would you please put that on for next month

6  to ask me what that date will be, so that I can confirm a date

7  for you in June.  I hope at this point in time, that's still

8  enough time that that won't have caused a problem.  But, I have

9  to get that week rescheduled.

10         MS. BAER:  That's fine, Your Honor.

11         THE COURT:  Okay, thank you.

12         MS. BAER:  Your Honor, the only other matter I wish to

13  take up is the business plans.  As you will recall, we did

14  submit in confidential to you, the Grace business plans and the

15  most recent updates, and you had returned that material to us.

16  We are about to submit a new business plan for the next

17  upcoming period, as we indicated in our letter to you.  Our

18  procedure is that we complete it internally and then we set a

19  meeting with the Creditor's Committees to provide the

20  information.  Would you like us to #1) provide you the same

21  information at the same time, and #2) set any sort of a status

22  or a hearing with you to make the same presentation to you as

23  to the committees?

24         THE COURT:  With respect to seeing the documents, yes,

25  I would appreciate the opportunity to review it on a

1  confidential basis and return it to the Debtor as I did before,

2  if no one has an objection to my doing that.  It's giving me a

3  better handle, frankly, on where this case is going than I hear

4  from the limited pieces in Court.  So, does anybody have an

5  objection that I see what the Committee sees with respect to

6  the business plans update?

7        ALL:  (No verbal response).

8        THE COURT:  Okay, no one does.  So, if you would

9  submit that on the same kind of confidential basis, and I will

10  return it again when I've read it, then I would like that.

11  With respect to the presentation, I don't know whether it's

12  appropriate or necessary.  Maybe I'd rather hear from the

13  committees about whether they think it would be helpful after

14  they hear it, because obviously I don't know what kind of

15  information's going to be there.  I got a pretty good idea of

16  what was going on just from reading the documents before.  So,

17  for now I'm content with documents.

18        MS. BAER:  Thank you, Your Honor, we will circulate it

19  to you at the same time.

20        THE COURT:  Okay, thank you.

21        MS. BAER:  Your Honor, that's all I have on my agenda.

22        THE COURT:  Anybody else?  Wow, okay.  I guess we're

23  adjourned.  Thank you.

24        MS. BAER:  Thank you, Your Honor.

25     (Court adjourned)

25

1    CERTIFICATION

I certify that the foregoing is a correct transcript from the
2    electronic sound recording of the proceedings in the above-
entitled matter.

3

4    _Lewis Paul_                    12-31-02
Signature of Transcriber              Date

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
