**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF PITNEY, HARDIN, KIPP & SZUCH, LLP**
**FOR THE SIXTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Sixth Interim Fee Application of Pitney, Hardin, Kipp & Szuch, LLP (the "Application").

**BACKGROUND**

1.      Pitney, Hardin, Kipp & Szuch, LLP ("Pitney Hardin"), was retained as special counsel for the Debtors. In the Application, Pitney Hardin seeks approval of fees totaling $183,969.60 and costs totaling $29,513.22 for its services from July 1, 2002, through September 30, 2002.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States

Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Pitney Hardin an initial report based on our review, and received a response from Pitney Hardin, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.   In our initial report, we noted that the time entries were generally adequately detailed and devoid of lumping, with the occasional exception of lumped entries by A. Marchetta. The Guidelines Rule, II.D.5. provides that "[s]ervices should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry". While there has been improvement in this area, we again asked Pitney Hardin to advise this timekeeper to avoid lumping time entries in future applications.

4.   In our initial report, we noted that Pitney Hardin did not use the appropriate project categories. In order to conform to the Court-ordered spread sheet, we requested that Piney Hardin use the correct categories in the future.

### Specific Time and Expense Entries

5.   In our initial report, we noted that on two occasions multiple professionals attended meetings and/or conferences. The total time spent was 7.70 hours for $2,880.50. These entries are provided below.

–On August 20, 2002, S. Zuber ($285), W. Hatfield ($240), and A. Marchetta ($410) prepared for and attended a meeting. The total time spent was 5.80 hours for $2,143.50.

08/20/02    Meeting with A. Nagy, A. Marchetta and principals and counsel for Tahari to discuss possible workout on lease default.

|            |                                            |          |          |
|------------|--------------------------------------------|----------|----------|
|            | S. Zuber                                   | 1.3 (3)  | 383.50   |
| 08/20/02   | Prepare for and meeting with client and adversary regarding settlement. | | |
|            | A. Marchetta                               | 4.0 (3)  | 1,640.00 |
| 08/20/02   | Meeting with A. Marchetta and client; discuss case rulings, trial status and potential issues for appeal with A. Nagy; discuss impact of ICF case on same. | | |
|            | W. Hatfield                                | 0.5 (15) | 120.00   |

–On August 29, 2002, A. Marchetta ($410) and J. Scordo ($270) participated in a conference regarding settlement agreement. The total time spent was 1.90 hours for $737.

| 08/29/02 | Work with J. Scordo regarding settlement agreement and telephone call with A. Nagy regarding agreement terms. | | |
|----------|------|------|------|
|          | A. Marchetta | 1.6 (3) | 656.00 |
| 08/29/02 | Conference with A. Marchetta and A. Nagy on settlement agreement. | | |
|          | J. Scordo | 0.3 (3) | 81.00 |

Paragraph II.D.5. of the Guidelines states, "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." We asked Pitney Hardin to explain why it was necessary for multiple professionals to participate in each of these meetings. Pitney Hardin responded as follows:

> On August 20, 2002, there were two separate meetings with Grace's President of Real Estate, Mr. Akos Nagy. The first meeting involved A. Marchetta and S. Zuber concerning negotiations to settle a litigation with Grace's tenant, Tahari. Mr. Marchetta, in Mr. Nagy's presence, led the settlement discussions with Tahari. When an issue concerning bankruptcy law arose as part of the settlement negotiations, Mr. Zuber, a bankruptcy specialist, was called into the meeting to assist.
>
> Following the Tahari meeting, Mr. Hatfield, an environmental litigator, was called in to update Mr. Nagy and Mr. Marchetta on the Weja litigation, for which Mr. Marchetta is ultimately responsible and on which Mr. Hatfield has been working for several years.
>
> On August 29, 2002, Mr. Scordo worked with Mr. Marchetta concerning drafting of the settlement agreement which had been negotiated with Tahari. Mr. Scordo assists Mr. Marchetta on Grace real estate litigations and has drafted a number of settlement agreements on behalf of Grace concerning its leases.

We believe the response adequately addresses our concern, and thus we have no objection to these fees.

      6.     In our initial report, we noted that on August 15, 2002, B. Benjamin ($285) and A. Marchetta ($410) prepared for and participated in a hearing. The total time spent was 12 hours for

$4,207.50. These entries are provided below.

| Date | Description | | |
|---|---|---|---|
| 08/14/02 | Trial preparation with B. Benjamin and follow-up regarding documents and exhibits necessary at trial. | | |
| | A. Marchetta | 1.3 (3) | 533.00 |
| 08/14/02 | Work with A. Marchetta in preparation for hearing. | | |
| | B. Benjamin | 1.9 (3) | 541.50 |
| 08/15/02 | Prepare for and court appearance regarding trial call. | | |
| | A. Marchetta | 5.0 (3) | 2,050.00 |
| 08/15/02 | Conference with A. Nagy and A. Marchetta regarding preparation for hearing; Attendance at Hearing. | | |
| | B. Benjamin | 3.8 (3) | 1,083.00 |

Paragraph II.D.5. of the Guidelines states, "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." We asked Pitney Hardin to review these time entries and explain why it was necessary for more than one professional to attend this hearing. Pitney Hardin responded as follows:

> On August 14 and August 15, 2002, Mr. Benjamin and Mr. Marchetta worked to prepare for a trial of this matter. Mr. Benjamin is a New York admitted attorney and is intimately familiar with landlord/tenant hearings in New York State Courts. He arranged for Mr. Marchetta to appear pro hac vice on behalf of Grace, and due to his knowledge of New York procedure, helped prepare with Mr. Nagy, Grace's President of Real Estate, and Mr. Marchetta for the hearing on August 15, 2002.

We appreciate Pitney Hardin's response and thus have no objection to these fees.

7.  In our initial report, we noted that between July 11-19, 2002, M. Waller ($280), D. Florence ($90), S. Parker ($90), C. Datilus ($75), M. Pellegrino ($75), and C. Aviles ($75) participated in a project referred to as "reviewing pleadings in prior insurance coverage litigations." The total time spent on this project was 89.60 hours for a total expense to the estate of $7,236.00. (See Exhibit A). Paragraph I.E. of the Guidelines states, "In evaluating fees for professional services, it is relevant to consider . . .whether the services were necessary to the administration of, or beneficial towards the completion of the case at the time they were rendered; . . ." We asked

**FEE AUDITOR'S FINAL REPORT** - Page 4
wrg FR Pitney 6th int 7-9.02.wpd

Pitney Hardin to explain why it was necessary to engage in this project and why so many individuals were needed. Pitney Hardin responded as follows:

> Between July 11 and July 19, 2002, at the request of the client, Mr. Waller supervised five paralegals to review extensive Grace insurance coverage litigation files for purposes of Grace's response to discovery demands in matters against Grace instituted in the bankruptcy court. The files had to be retrieved from storage and since Mr. Waller was most familiar with the matters, he supervised the review of the files to obtain the information for the client.

We believe we understand Pitney Hardin's response and thus have no objection to these fees.

8.   In our initial report, we noted that Waller ($280), Scordo ($270), Benjamin ($285), Moffitt ($245), Chan ($240) and Hirsh ($215) occasionally performed tasks that could be considered ministerial or more appropriate for a professional billing at a lower hourly rate. The total time spent on these tasks was 19.50 hours for a total expense to the estate of $4,991.50. (See Exhibit B). Paragraph I.E. of the Guidelines states, "[i]n evaluating fees for professional services, it is relevant to consider . . .whether services were performed within a reasonable time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;. . ." We asked Pitney Hardin to explain why professionals billing at a lower hourly rate could not have performed these tasks. Pitney Hardin responded as follows:

> Waller, Moffitt & Chan – Given the complex nature of Grace's insurance coverage litigations, the work done by these attorneys could not be done by people of lesser billing rates as it required intimate knowledge of the many coverage disputes of the debtor over the last fifteen years.
>
> As to Messrs. Scordo and Benjamin, the work performed by these attorneys required intimate knowledge of landlord/tenant law in the State of New York and Grace's real estate arrangements.
>
> Because the Second Circuit Court of Appeals required a motion for leave to file an overlength brief, Mr. Hirsh, who is an attorney admitted to practice in the State of New York, was called upon to assist.

We believe we understand Pitney Hardin's response. However, we believe that such tasks as maintaining telephone contact and correspondence with the printer could have been performed by a professional billing at a lower hourly rate. Further, we believe that such tasks should not have required two attorneys performing

**FEE AUDITOR'S FINAL REPORT** - Page 5
wrg FR Pitney 6th int 7-9.02.wpd

essentially the same coordination duties. Thus, for the time billed for these tasks we recommend a reduction of $1,662.50 in fees.

9. In our initial report, we noted that S. Parker ($90) and D. Florence ($90), performed tasks that could be considered nonreimbursable overhead for a total of 8.40 hours and $756.00. These time entries are provided below.

| Date | Description | | |
|---|---|---|---|
| 07/13/02 | Created list of boxes containing potentially responsive documents to be retrieved from storage facility regarding same. | | |
| | S. Parker | 0.8 (04) | 72.00 |
| 08/12/02 | Update the case file, pleading board and letters of submission index. | | |
| | D. Florence | 2.3 (4) | 207.00 |
| 08/16/02 | Organize various appellate brief versions and update the case file accordingly. | | |
| | D. Florence | 1.3 (4) | 117.00 |
| 09/04/02 | Worked with J. Scordo regarding file organization. | | |
| | S. Parker | 0.5 (4) | 45.00 |
| 09/05/02 | Organized and indexed file, and created pleading board. | | |
| | S. Parker | 3.5 (4) | 315.00 |

Paragraph II. E. 7. of the Guidelines states, "[f]actors relevant to a determination that the expense is proper include the following: . . [w]hether the expenses appear to be in the nature of nonreimbursable overhead . . . [o]verhead includes word processing, proofreading, secretarial and other clerical services, . . ." We asked Pitney Hardin to explain why these activities should not be considered nonreimbursable overhead. Pitney Hardin responded as follows:

> The task performed by Ms. Parker and Mr. Florence required intimate knowledge of Grace's past insurance litigations in order to retrieve documents required by the client in the litigation in the bankruptcy court. This work could not have been done by anyone without knowledge of the history of the litigations.

We believe we understand Pitney Hardin's response, and thus we have no objection to these fees.

10. In our initial report, we noted that on July 1, 2002, there was an apparent duplicate entry from A. Marchetta ($410) resulting in an additional .40 hours and an additional expense to the estate of $164.00. These time entries are provided below.

| 07/01/02 | Review motion and forward to client; telephone call from USG counsel regarding handling same. | | |
|---|---|---|---|
| | A. Marchetta | 0.4 (15) | 164.00 |
| 07/01/02 | Review motion and forward to client; telephone call from USG counsel regarding handling same. | | |
| | A. Marchetta | 0.4 (15) | 164.00 |

We recognize the possibility that these entries may reflect the performance of the same nominal activity more than once on the same day. We asked Pitney Hardin to review the entries cited above and explain whether these entries relate to discrete instances of a repeated activity or are duplicate billing of the same time. Pitney Hardin responded as follows:

> We agree with Paragraph 10. One of those entries should be deleted.

We appreciate Pitney Hardin's response and thus recommend a reduction of $164.00 in fees.

11.  In our initial report, we noted that some of the travel, meal, and miscellaneous expenses do not provide detail adequate to analyze the reasonableness of these costs. These expense entries are provided below.

| Travel and Miscellaneous Expense | 92.00 |
|---|---|
| Food and Miscellaneous Expense for August 26, 2002 | 76.95 |
| Meals and Miscellaneous | 68.47 |
| Travel and Miscellaneous Expense | 117.23 |

The Guidelines Paragraph II. E. provides that "[f]actors relevant to a determination that the expense is proper include the following: . . [w]hether the expense is reasonable and economical. For example, first class and other luxurious travel mode or accommodations will normally be objectionable." also ". . .[w]hether applicant has provided a detailed itemization of all expenses including the date incurred, description of expense (e.g., type of travel, type of fare, rate, destination),. . ." We asked Pitney Hardin to provide details with regard to these expenses. Pitney

Hardin responded as follows:

> The $92.00 charge represents reservation and cancellation travel charges incurred by Scott A. Zuber, Esq. to attend a scheduled fee hearing in May, 2002. This fee hearing was adjourned. The $76.95 charge represents travel and meal costs incurred by Anthony J. Marchetta, Esq. to attend a fee hearing before Judge Fitzpatrick on August 26, 2002. This amount includes mileage reimursement ($37.95), parking ($13.00), and meals ($26.00). The $68.47 charge represents meal costs incurred by Anthony J. Marchetta, Esq. for a settlement meeting regarding the Tahari matter on August 20, 2002. Present at this meeting were Mr. Marchetta, Mr. Nagy and counsel for Tahari. Mr. Marchetta also incurred $68.98 for travel expenses for a hearing on the Tahari matter on August 15, 2002. The remaining $48.25 represents travel expenses for Mr. Marchetta for the settlement meeting on the Tahari matter on August 20th.

We appreciate Pitney Hardin's response and thus have no objection to these expenses.

12. Additionally, in our initial report we noted several expense entries for Echo Appelate. These entries are provided below.

| | | |
|---|---|---|
| 07/09/02 | Paid Echo Appellate for service rendered #10501 S#3362 | 11889.90 |
| 08/13/02 | Paid Echo Appel for service rendered #10501 S#3507 | 2036.40 |
| 08/13/02 | Paid Echo Appel for service rendered #10501 S#3506 | 561.20 |

The Guidelines, Paragraph II.E.3. states in part, " .... [u]nusual items require more detailed explanations. . ." Neither the narrative nor the individual expense entries provide enough information for a proper analysis of these costs. We asked Pitney Hardin to provide more information regarding these expenses. Pitney Hardin responded as follows:

> Echo Appellate printed the briefs and appendix submitted to the Second Circuit Court of appeals in the matter of MARYLAND CASUALTY CO. V. W.R. GRACE & CO.-CONN., ET AL., Case No 01-7482

We appreciate Pitney Hardin's response and thus have no objection to these expenses.

## CONCLUSION

13. Thus, we recommend approval of fees totaling $182,143.10 ($183,969.60 minus $1,826.50) and costs totaling $29,513.22 for Pitney Hardin's services from July 1, 2002, through

September 30, 2002.

                                  Respectfully submitted,

                                  **WARREN H. SMITH & ASSOCIATES, P.C.**

                                  By: _____
                                      Warren H. Smith
                                      Texas State Bar No. 18757050

                                  900 Jackson Street
                                  120 Founders Square
                                  Dallas, Texas 75202
                                  214-698-3868
                                  214-722-0081 (fax)
                                  whsmith@whsmithlaw.com

                                  **FEE AUDITOR**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 28th day of January, 2003.

                                  _____
                                        Warren H. Smith

**FEE AUDITOR'S FINAL REPORT** - Page 9
wrg FR Pitney 6th int 7-9.02.wpd

## SERVICE LIST

Notice Parties

**The Applicant**

Anthony J. Marchetta, Esq.
Pitney, Hardin, Kipp & Szuch, LLP
P.O. Box 1945
Morristown, NJ 07962-1945

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

EXHIBIT A

| Date | Description | | |
|---|---|---|---|
| 07/11/02 | Work with team reviewing pleadings in prior insurance coverage litigations regarding identification of judicial decisions and orders. | | |
| | D. Florence | 1.8 (04) | 162.00 |
| 07/11/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | | |
| | C. Datilus | 2.7 (04) | 202.50 |
| 07/11/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | | |
| | C. Aviles | 2.7 (04) | 202.50 |
| 07/12/02 | Work with team reviewing pleadings in prior insurance coverage litigations regarding identification of judicial decisions and orders. | | |
| | D. Florence | 3.3 (04) | 297.00 |
| 07/12/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | | |
| | M. Pellegrino | 3.0 (04) | 225.00 |
| 07/12/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | | |
| | C. Datilus | 3.3 (04) | 247.50 |
| 07/12/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | | |
| | C. Aviles | 3.3 (04) | 247.50 |
| 7/15/02 | Work with team reviewing pleadings in prior insurance coverage litigations regarding identification of judicial decisions and orders. | | |
| | D. Florence | 3.7 (04) | 333.00 |
| 07/15/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | | |
| | S. Parker | 2.3 (04) | 207.00 |
| 07/15/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | | |
| | M. Pellegrino | 3.5 (04) | 262.50 |
| 07/15/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | | |
| | C. Aviles | 3.5 (04) | 262.50 |
| 07/15/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | | |
| | C. Datilus | 3.5 (04) | 262.50 |
| 07/16/02 | Work with team reviewing pleadings in prior insurance coverage litigations regarding identification of judicial decisions and orders. | | |
| | D. Florence | 3.6 (04) | 324.00 |
| 07/16/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | | |

| Date | Description | Timekeeper | Hours (Task) | Amount |
|---|---|---|---|---|
| | | S. Parker | 5.4 (04) | 486.00 |
| 07/16/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | M. Pellegrino | 3.4 (04) | 255.00 |
| 07/16/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and order. | C. Aviles | 3.4 (04) | 255.00 |
| 07/16/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | C. Datilus | 3.4 (04) | 255.00 |
| 07/17/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | S. Parker | 3.3 (04) | 297.00 |
| 07/17/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | M. Pellegrino | 3.2 (04) | 240.00 |
| 07/17/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | C. Aviles | 3.2 (04) | 240.00 |
| 07/17/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | C. Datilus | 3.2 (04) | 240.00 |
| 07/18/02 | Review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | S. Parker | 4.7 (04) | 423.00 |
| 07/18/02 | Prepared responsive documents following review of files in prior insurance coverage litigations. | S. Parker | 2.2 (04) | 198.00 |
| 07/18/02 | Worked with D. Florence regarding implementation of quality control procedures and creation of reports detailing all relevant judicial decisions and/or orders and listing all transcripts of proceedings from prior insurance coverage litigations. | S. Parker | 0.8 (04) | 72.00 |
| 07/18/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | M. Pellegrino | 3.5 (04) | 262.50 |
| 07/18/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | C. Datilus | 3.4 (04) | 262.50 |
| 07/18/02 | Worked with team regarding review of files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | C. Aviles | 3.5 (04) | 262.50 |
| 07/19/02 | Reviewed files in prior insurance coverage litigations regarding identification of judicial decisions and orders. | S. Parker | 2.8 (04) | 252.00 |

## EXHIBIT B

| Date | Description | | |
|---|---|---|---|
| 07/15/02 | Review indices of archived records regarding litigation involving Grace insurance coverage in connection with bankruptcy case request and attending to retrieval of boxes. | | |
| | M. Waller | 0.5 (04) | 140.00 |
| 07/01/02 | Telephone conference with printer regarding preparation of Joint Appendix; | | |
| | M. Waller | 0.3 (15) | 84.00 |
| 07/01/02 | Preparation of letter to printer regarding same. | | |
| | B. Moffitt | 0.4 (15) | 98.00 |
| 07/01/02 | Telephone call with printer regarding same. | | |
| | B. Moffitt | 0.2 (15) | 49.00 |
| 07/02/02 | Work with personnel at Southern District Court regarding obtaining documents For inclusion in joint appendix. | | |
| | B. Moffitt | 2.8 (15) | 686.00 |
| 07/02/02 | Preparation of joint appendix. | | |
| | B. Moffitt | 1.4 (15) | 343.00 |
| 07/03/02 | Obtain documents to be added to Joint Appendix and draft cover letter and forward to printer. | | |
| | M. Waller | 0.4 (15) | 112.00 |
| 07/03/02 | Telephone call with Echo Appellate Press regarding preparation of Joint Appendix and Order permitting filing under seal. | | |
| | M. Waller | 0.1 (15) | 28.00 |
| 07/05/02 | Working with B. Moffitt and Echo Appellate Press to finalize Joint Appendix. | | |
| | M. Waller | 2.0 (15) | 560.00 |
| 07/05/02 | Telephone calls with Echo Appellate Press regarding final preparation of joint appendix. | | |
| | B. Moffitt | 0.4 (15) | 98.00 |
| 07/16/02 | Conform citations in Initial Brief to Joint Appendix pagination. | | |
| | B. Moffitt | 1.2 (15) | 294.00 |
| 07/17/02 | Telephone calls with printer regarding supplementing appendix. | | |
| | B. Moffit | 0.2 (15) | 49.00 |
| 07/18/02 | Telephone call with printer regarding finalizing joint appendix. | | |
| | B. Moffitt | 0.2 (15) | 49.00 |
| 07/23/02 | Various telephone calls with printer regarding same. | | |
| | B. Moffitt | 0.3 (15) | 73.50 |
| 07/24/02 | Telephone conferences with Echo Appellate Press regarding finalizing briefs. | | |
| | M. Waller | 0. 3 (15) | 84.00 |
| 07/24/02 | Assemble documents regarding same. | | |
| | B. Moffitt | 0.4 (15) | 98.00 |
| 07/25/02 | Work with M. Waller and printer regarding finalization of appendix of unreported decisions in initial brief. | | |
| | B. Moffit | 0.4 (15) | 98.00 |
| 07/25/02 | Telephone calls with printer. | | |

| Date | Description | Timekeeper | Hours (Rate) | Amount |
|---|---|---|---|---|
| | | B. Moffit | 0.3 (15) | 73.50 |
| 07/26/02 | Telephone call with printer regarding same. | | | |
| | | D. Buerrosse | 0.1 (15) | 24.50 |
| 07/26/02 | Preparation of facsimile to printer regarding revisions to initial brief. | | | |
| | | B. Moffitt | 0.2 (15) | 49.00 |
| 07/28/02 | Working with B. Moffitt regarding format, citations, and revisions to brief point. | | | |
| | | M. Waller | 0.9 (15) | 252.00 |
| 07/28/02 | Work with M. Waller regarding same. | | | |
| | | B. Moffitt | 0.9 (15) | 220.50 |
| 07/29/02 | Telephone call with printer regarding finalization of initial brief. | | | |
| | | B. Moffitt | 0.1 (15) | 24.50 |
| 07/31/02 | E-mail and telephone calls with printer regarding reply brief. | | | |
| | | B. Moffitt | 0.2 (15) | 49.00 |
| 07/22/02 | Telephone conference with process Server regarding service of 3 day notice. | | | |
| | | B. Benjamin | 0.2 (03) | 57.00 |
| 08/22/02 | Review and organize prior e-mails. | | | |
| | | J. Scordo | 0.2 (15) | 54.00 |
| 08/01/02 | Telephone calls with Court and printer regarding Grace's Initial Brief. | | | |
| | | B. Moffitt | 0.3 (15) | 73.50 |
| 08/01/02 | E-mail to M. Waller and printer regarding Grace's Initial Brief. | | | |
| | | B. Moffitt | 0.1 (15) | 24.50 |
| 08/05/02 | Telephone calls and correspondence with printer regarding reply brief. | | | |
| | | B. Moffitt | 0.3 (15) | 73.50 |
| 08/08/02 | Finalize itemized conclusion per comments by A. Marchetta and working with printer regarding same. | | | |
| | | M. Waller | 0.8 (15) | 224.00 |
| 08/09/02 | Final revisions to appellate brief and work with printer regarding same. | | | |
| | | M. Waller | 0.8 (15) | 224.00 |
| 08/09/02 | Final revisions to affidavit in support of overlength brief and work with printer regarding same to file and serve with brief. | | | |
| | | M. Waller | 0.8 (15) | 224.00 |
| 08/23/02 | Attended to filing and serving Affidavit of A. Marchetta in Further Support of Motion for Leave to Filer an Overlength Reply Brief. | | | |
| | | R. Hirsh | 1.5 (4) | 322.50 |
| 08/09/02 | Fax to client regarding Defendant's Answer and Counterclaim. | | | |
| | | A. Chan | 0.1 (3) | 24.00 |
| 08/22/02 | Review and organize prior e-mails. | | | |
| | | J. Scordo | 0.2 (3) | 54.00 |