## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING FEE APPLICATION OF RICHARDSON PATRICK WESTBROOK & BRICKMAN, LLC FOR THE SIXTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Fee Application of Richardson Patrick Westbrook & Brickman, LLC for the Sixth Interim Period (the "Application").

### BACKGROUND

1. Richardson Patrick Westbrook & Brickman LLC ("RPWB") was appointed as lead special counsel to ZAI Claimants. In the Application RPWB seeks approval of fees totaling $170,069.50 and costs totaling $44,005.38 for its services from July 1, 2002, through September 30, 2002.

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications

for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on RPWB an initial report based on our review and received a response from RPWB, portions of which are quoted herein.

## DISCUSSION

### General Issues

3. In our initial report, we noted that timekeepers Westbrook, Bakst and Turkewitz often did not include sufficient detail in their time entries. Rule 2016-2(d) of the Delaware Local Rules states "activity descriptions . . . shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary . . ." We asked that RPWB advise these professionals to provide more detailed time entries in the future.

4. In our initial report, we noted that timekeeper Westbrook occasionally lumped his time entries. Local Rule 2016-2(d)(vii) provides that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." Thus we asked RPWB to advise this professional to avoid lumping his time entries in the future.

5. In our initial report, we noted that although RPWB provided a Summary of Compensation by Project Category (categories were "Hearings", Travel-Non-working" and "ZAI Science Trial"), the time entries were arranged chronologically without reference to said categories. We requested that in future applications fee and expense entries be listed in the appropriate categories.

6. In our initial report, we noted that the Application has a summary of expenses but

fails to provide any details. The Guidelines Paragraph II.E. provides that "[f]actors relevant to a determination that the expense is proper include the following:...3. Whether applicant has provided a detailed itemization of all expenses including the date incurred, description of expense (e.g., type of travel, type of fare, rate, destination),...". We asked RPWB to provide detailed expense entries with regard to those expenses for which they wished to be reimbursed. Said details were to include the name of the person incurring each expense, the class of fare for airfares, the number of nights per hotel stay, the number of days per car rental, the number of meals per meal expense, the reason for each trip and any other information that may be necessary and useful in explaining the expense. RPWB subsequently provided the requested information.

<u>Specific Time and Expense Entries</u>

7.      In our initial report, we noted that between August 7, 2002, and September 16, 2002, Turkewitz ($400) and Westbrook ($650) spent a combined total of 4.30 hours and $2,045.00 performing tasks which either are noncompensable administrative overhead or are better suited for a professional with a lower hourly rate. The entries are shown below.

| Date | Name | Hours | Amount | Description |
|---|---|---|---|---|
| 08/07/02 | ewestbrook | 3.60 | 2,340.00 | .....; work on organization of Zonolite files (.5);..... |
| 08/15/02 | rturkewitz | 4.70 | 1,880.00 | Reviewed and organized Zonolite files for Science Trial (2.5); phone conversations with experts regarding scheduling of conference call (.5);..... |
| 09/16/02 | ewestbrook | 7.80 | 5,070.00 | .....; work on checking attachments and cross checking against memo (.8);..... |

Paragraph I.E., of the Guidelines, states ". . . [i]n evaluating fees for professional services, it is relevant to consider various factors including the following: the time spent; the rates charged; whether the services were necessary to the administration of, or beneficial towards the completion

of, the case at the time they were rendered; whether services were performed within a reasonable time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;. . .". We asked RPWB to explain why these tasks should not be considered overhead or why a professional billing at a lower hourly rate could not have performed these activities. RPWB explained its position in Response Exhibit 1. We believe the response adequately addresses our concern, and thus we have no objection to these fees.

8.      In our initial report, we noted that between August 16, 2002, and September 11, 2002, multiple professionals from RPWB spent a combined total of 23.65 hours and $10,657.50 to prepare for and participate in conference calls and hearings. (See Exhibit A). Paragraph II.D.5., of the Guidelines, states ". . .[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." Also, Local Rule 2016-2(d)(ix) states, "The activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role." We asked RPWB why it was necessary for more than one professional to participate in these calls and hearings, as well as requesting that the firm address the role of each professional in each instance. RPWB did so in Response Exhibit 2. We appreciate RPWB's explanations, and thus we have no objection to these fees.

9.      As noted above, in our initial report we asked RPWB to provide adequate detail for the expenses requested in the Application. Specifically, we asked RPWB to provide assurance that all airfares were at coach rates. RPWB responded as follows:

> 1.    With respect to airline fares, all our air travel on this case is coach fare. As noted in my previous email, attaching correspondence from American Express Travel, the only time our lawyers may sit in a first-class seat, is because of a special arrangement from Delta. I am enclosing a supplemental letter from

**FEE AUDITOR'S FINAL REPORT** - Page 4
 wrg FR Richardson 6int7-9.02.wpd

```
        American Express confirming that the other air fares booked for RPWB
        use on this case were coach fares.
```

We appreciate RPWB's response, and thus we have no objection to these expenses.

    10.     Finally, we noted four meal expenses which we calculate to be excessive. The entries are provided below.

       _9/9/02_ -       Dinner for RMT, LH and JB - $132.73
       _9/10/02_ -     Dinner for RMT, LH, and KC - $184.56
       _9/19/02_ -     Dinner (JB, LH, KC) - $146.25
       _9/12/02_ -     Dinner on 9/12/02 (JB, LH, and KC) - $133.51

Based on a $35.00 per person scale for reasonable expense, we calculate a total overage of $177.05.

Thus, we recommend a reduction of $177.05 in expenses.

## CONCLUSION

    11.     Thus, we recommend approval of fees totaling $170,069.50 and costs totaling $43,828.33 ($44,005.38 minus $177.05) for RPWB's services from July 1, 2002, through September 30, 2002.

                                       Respectfully submitted,

                                       **WARREN H. SMITH & ASSOCIATES, P.C.**

By:                                                    
                                       Warren H. Smith
                                       Texas State Bar No. 18757050

                                       900 Jackson Street
                                       120 Founders Square
                                       Dallas, Texas 75202
                                       214-698-3868
                                       214-722-0081 (fax)
                                       whsmith@whsmithlaw.com

                                       **FEE AUDITOR**

## CERTIFICATE OF SERVICE

  I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 30th day of January, 2003.

                        _____
                          Warren H. Smith

## SERVICE LIST

Notice Parties

**The Applicant**

Edward J. Westbrook, Esq.
Robert M. Turkewitz, Esq.
Robert S. Wood, Esq.
Richardson Patrick Westbrook & Brickman
174 East Bay Street
Charleston, South Carolina 29401

**Co-Counsel for ZAI Claimants**

William D. Sullivan, Esq.
Charles J. Brown, III, Esq.
Elzufon, Austin, Reardon, Tarlov & Mondell, PA
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, DE 19899-1630

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

| | |
|---|---|
| **Counsel to the Official Committee of Personal Injury Claimants** | **United States Trustee** |
| | Office of the United States Trustee |
| Marla R. Eskin | Frank J. Perch, Esq. |
| Campbell & Levine, LLC | 844 King Street, Suite 2311 |
| Suite 300 | Wilmington, DE 19801 |
| 800 N. King Street | |
| Wilmington, DE 19801 | |

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

Exhibit A

On 08/16/02 R. Turkewitz, E.Westbrook, L. Hambleton, and K. Carr spent a total of $8.70 hours and $2,872.50 preparing and participating in a telephone conference.

| Date | Timekeeper | Hours | Amount | Description |
|---|---|---|---|---|
| 08/16/02 | rturkewitz | 4.00 | 1,600.00 | Reviewed testing documents in preparation for conference call (1.5); telephone conference with Ed Westbrook and experts (1.8); ... |
| 08/16/02 | ewestbrook | 2.80 | 1,820.00 | Conference call with experts, Rob Turkewitz, Kim Carr and Linda Hambleton to discuss setting up various avenues of investigation of ZIA fiber release including locations, methods, local assistance, logistics, type of testing to be done (1.8); ... |
| 08/16/02 | lhambleton | 3.10 | 232.50 | Organized of zonolite documents to be utilized for telephone conference. Distributed to conference attendees (.3); attended telephone conference with experts, Ed Westbrook, Rob Turkewitz & Kim Carr re: upcoming Science Trial (1.8):.... |
| 08/16/02 | kcarr | 1.80 | 225.00 | Participated in conference call regarding setting up various avenues of investigation of ZAI fiber release including locations, methods, local assistance, logistics, type of testing to be done, etc. |

From 08/23/02 through 08/26/02 E. Westbrook and R. Turkewitz spent 8.4 hours and $4,635.00 preparing for and traveling to a hearing.

| Date | Timekeeper | Hours | Amount | Description |
|---|---|---|---|---|
| 08/23/02 | ewestbrook | 2.70 | 1,755.00 | Conversations with Rob Turkewitz regarding upcoming hearing (.1), prepare for hearing (.8), review agenda (.3), ..... |
| 08/23/02 | rturkewitz | 1.50 | 600.00 | .....; telephone conference Christy Birgland regarding agenda for August 26 meeting (.1); received and reviewed agenda of August 26 meeting (.25); conference with Ed Westbrook regarding agenda (.1) |
| 08/26/02 | rturkewitz | 3.00 | 1,200.00 | Strategy meeting with Darrell Sccott and Ed Westbrook regarding science trial issues (1.0):..... |
| 08/26/02 | ewestbrook | 7.50 | 4,875.00 | Meet with Darrell Scott and Rob Turkewitz in preparation for hearing, review status of |

| | | | | |
|---|---|---|---|---|
| | | | | efforts regarding ZAI (1.0),..... |
| 08/26/02 | rturkewitz | 2.50 | 1,000.00 | Attended bankruptcy hearing regarding appointment of counsel and scheduling order for Science trial (2.5); |
| 08/26/02 | ewestbrook | 2.50 | 1,625.00 | - attend hearing in Wilmington (2.5) |

On 09/03/02 R. Turkewitz and E. Westbrook spent 2.0 hours and $1,050.00 participating in a conference call.

| | | | | |
|---|---|---|---|---|
| 09/03/02 | rturkewitz | 6.10 | 2,440.00 | .....; telephone conference call with Zonolite Science Trial experts and Darrell Scott regarding testing issues (1.0); |
| 09/03/02 | ewestbrook | 1.50 | 975.00 | Participate in conference call (participated part of the time) with experts regarding potential testing (1.0),..... |

On 9/11/02 R. Turkewitz and E. Westbrook spent 4.0 hours and $2,100.00 participating in a conference call.

| | | | | |
|---|---|---|---|---|
| 09/11/02 | rturkewitz | 9.50 | 3,800.00 | .....; Conference call with Darrell Scott, his associates and Ed Westbrook regarding progress on Zonolite case, discussions regarding possible retention of expert, coordination regarding vermiculite work, discussions regarding available samples of ZAI (2.0) |
| 09/11/02 | ewestbrook | 2.80 | 1,820.00 | Conference call with Darrell Scott, his associates and Rob Turkewitz regarding progress on Zonolite case, discussions regarding possible retention of expert, coordination regarding vermiculite work, discussions regarding available samples of ZAI (2.0);..... |

Response Exhibit 1

Paragraph 7 - You questioned whether the following three time entries reflect work that should have been performed by Mr. Westbrook / Mr. Turkewitz or a professional with a lower hourly rate. The entries you questioned and our response are as follows:

    a.   8/7/02 - ewestbrook - "work on organization of Zonolite files (.5)"

Response: This half hour reflects work done by Mr. Westbrook in personally organizing his own Zonolite materials. Because of Mr. Westbrook's familiarity with his personal materials, he was the appropriate person to organize them so he could access them most efficiently in the future. As Mr. Westbrook had just been appointed as ZAI Lead Counsel by the Court on July 22, 2002, there were no lower-level professionals working on the matter familiar with his material at this time. Rather, Mr. Westbrook (and Mr. Turkewitz) were evaluating what materials they already had available in preparation for determining not only what additional materials needed to be gathered, but what level of personnel would be necessary to staff the project.

b.   8/15/02 - rturkewitz - "reviewed and organized Zonolite files for Science Trial (2.5); phone conversations with experts regarding scheduling of conference call (.5)"

Response: As with the response to the previous time entry, the 2.5 hours Mr. Turkewitz spent was in reviewing and organizing his own materials to lay the foundation for the substantial work to come. Because this process involved reviewing materials Mr. Turkewitz had personally gathered and kept in his office, he was the most efficient person to review and organize them, weeding out materials that were not of future significance (which he, but not others, could quickly recognize). With respect to the second challenged entry for that date, .5 hour for a phone conversation with experts "regarding scheduling of conference call", the description is a somewhat poor choice of words for the initial contacts Mr. Turkewitz was making with experts, discussing the basic issues with them and setting up a future call to probe the issues in more depth. Because of the sensitivity and importance of making initial contacts with experts and seeing which experts would be suitable for further contact, this was a task appropriately performed by Mr. Turkewitz.

c.   9/16/02 - ewestbrook - "work on checking attachments and cross checking against memo (.8)"

Response: This entry reflects work done by Mr. Westbrook personally in reviewing documents that were intended to be attached to a Motion to Compel that Mr. Westbrook was preparing. His work was not clerical work with respect to the attachments, but was substantive legal work determining whether the attachments that were quoted or referred to in the draft memo actually supported the legal arguments being made, and determining that there were no other parts of the same documents that detracted from the legal argument. As this was a legal memo that Mr. Westbrook was submitting and one that would set the boundaries for the entire ZAI discovery process, it was very important document that he worked on extensively to be sure that the substantive arguments and their support were accurate.

Response Exhibit 2

Paragraph 8 - In this paragraph, you have asked for additional explanation as to why several professionals from RPWB either participated in a conference call or attended a court hearing. We will address these in order:

a.  8/16/02 Conference Call - You have noted that two attorneys and two professional staff either prepared for or participated in various aspects of a conference call on that day. Returning to the fact that RPWB had been appointed by the Court on July 22 as Special Counsel and was still in the organizational phase, the telephone conference on August 16 was a major organizational activity. It was an extensive conference call in which not only the strategy of ZAI testing, but also the logistics and follow-up of such testing were explored. Mr. Westbrook, as attorney in overall charge of the project, presided over the conference call and participated in the extensive discussions. Mr. Turkewitz, who has been chiefly responsible for the day-to-day coordination of the ZAI testing, was the only other RPWB attorney on the phone. His participation was critical for continuity and follow-up with regard to the testing. Ms. Hambleton, as her time record reflects, both organized documents to be used by the telephone conference attendees and, as Mr. Turkewitz's assistant, attended the conference call to be aware from the outset of the testing program, of the individuals involved and to have some personal contact with them and their staffs. The final attendee, Ms. Carr, who works closely with Mr. Westbrook, and was the senior RPWB paralegal heading up the ZAI document production that was to take place, was involved in the conference call so that she would be aware of (and able to relay to the remaining staff), the interaction between the ZAI testing that was planned (being discussed on the phone) and the types of information that would be sought from the Grace documents to be produced in Boston (where she was the senior participating paralegal).

b.  The Fee Examiner has challenged a total of 8.4 hours spent by Mr. Westbrook and Mr. Turkewitz in preparing for and traveling to the August 26, 2002 bankruptcy hearing. The hearing on August 26, 2002 was an important hearing for the ZAI trial in that the Court was to hear the ZAI Claimants' Motion to Compel regarding the scope and extent of Grace's document production. Mr. Westbrook prepared for and attended the hearing to argue the motion. Mr. Turkewitz had a number of conversations with Mr. Westbrook regarding the upcoming motion, as the time records reflect, because he had been involved in document production from the Grace document repository over the years and his attendance at the hearing was felt necessary in case questions came up that required specific knowledge regarding the way Grace organized its documents in its Boston repository. Moreover, and equally as important, Mr. Turkewitz went to Delaware on this trip for a second reason - to attend the strategy session between Mr. Westbrook and Mr. Scott (from Washington State), who has been appointed by the Court as the other ZAI counsel. Because of the great distances involved, ZAI counsel have not had many personal meetings. Since Mr. Scott was going to be in Delaware for the August 26, 2002 hearing (as co-chairman of the Grace Asbestos Property Damage Claimants' Committee), Mr. Westbrook thought it a good opportunity at low cost to get together for a face-to-face ZAI strategy session before the hearing. For these reasons, RPWB believes that the attendance of Mr. Westbrook and Mr. Turkewitz in Delaware on August 26 was legitimate.

c.  9/3/02 Conference Call - The Fee Examiner has questioned a

one-hour conference call attended by both Mr. Westbrook and Mr. Turkewitz on September 3. This was an importance conference call involving not only ZAI testing experts, but also Mr. Scott, who was in charge of locating suitable facilities where ZAI testing could take place. Important decisions were made on this call regarding facilities to be tested and the potential testing to take place which required not only the concurrence of Mr. Westbrook and Mr. Scott, but also the detailed input of Mr. Turkewitz who had been working most closely with the experts.

d.   9/11/02 Conference Call - The Fee Examiner has questioned Mr. Turkewitz and Mr. Westbrook participating in a September 11, 2002 conference call for two hours. As with the September 3, 2002 call, this was a very important call in which the parties discussed the progress of the plan for ZAI testing that involved multiple facets, including securing locations, coordinating with experts, determining the scope of the testing, determining compliance with local regulations, coordinating with local industrial hygiene firms to supply personnel and equipment in a support role for the testing, and numerous other aspects. Mr. Turkewitz is most closely involved in the detailed aspect of the testing program, while Mr. Westbrook in conjunction with Mr. Scott, was necessary to have strategic input and approve the overall plan, personnel, facilities and expected cost.

On the broader issue of multiple participation in conference calls or meetings, we recognize the need to keep attendance to a minimum. Often a telephone call can be handled by a single person and there are numerous examples of that occurring throughout the time entries. But, with the case of the face-to-face meeting in Delaware and conference calls discussed above, there are some occasions when more than one attorney needs to be on a conference call or at a meeting with our co-counsel or our experts. The occasions you have identified (and others that have occurred since then) are such occasions. Often the discussions are wide-ranging including specifics of ZAI testing (in which Mr. Turkewitz is heavily involved) as well as broader issues of how to prepare and present the ZAI case (which is the charge that Judge Fitzgerald has given to me). On such occasions, I have determined that it is more efficient for us to participate jointly in these discussions, rather than have to hold separate conference calls or have one lawyer participate, report to the lawyer who is handling the other matter and then have that lawyer need to get back to co-counsel on the topic that came up (but for which the lawyer responsible was not present). While it is difficult to be mathematically precise as to what is going to come up on each conference call, we try to limit attendance to those with a "need to participate". On some occasions, this is more than one attorney or professional. As I am sure you have noticed from our overall billing records, we have not overstaffed this case by any stretch of the imagination, especially when compared with the multiple lawyers and professionals that W.R. Grace's ZAI counsel (Reed Smith) has had working on various aspects of the case as reflected in their time records. This is not to say that Reed Smith has overstaffed the case either, only that the complicated tasks in the ZAI trial preparation often require multiple individuals.