**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF WALLACE, KING, MARRARO & BRANSON, PLLC**
**FOR THE SIXTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Sixth Interim Fee Application of Wallace, King Marraro & Branson, PLLC</u> (the "Application").

**BACKGROUND**

1. Wallace, King, Marraro & Branson, PLLC ("Wallace King") was retained as special litigation and environmental counsel to the Debtor. In the Application, Wallace King seeks approval of fees totaling $364,875.50[1] and costs totaling $62,765.88 for its services from July 1, 2002, through September 30, 2002.

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2

---

[1] Although the Application requests $364,875.50 in fees for this period, this amount reflects a 40% reduction for time spent with regard to the Honeywell litigation. Notwithstanding this discount, the $233,690.00 by which the total amount of Honeywell fees were reduced was reviewed and is included in this report. Thus, the actual amount of fees reviewed is $598,565.50.

of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Wallace King an initial report based on our review, and received a response from Wallace King, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3. In our initial report, we noted that professionals CHM and MM often did not include sufficient detail in their time entries. Rule 2016-2(d) of the Delaware Local Rules states "activity descriptions . . . shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary . . ." This issue has been raised in previous reports and we have advised certain professionals to provide more detailed time entries in the future. We asked that Wallace King continue to advise its professionals regarding this matter.

4. In our initial report, we noted that professional WH often tended to lump his time entries. Local Rule 2016-2(d)(vii) requires "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." We asked that Wallace King advise this professional to avoid such lumped time entries in the future.

5. In our initial report, we noted that the Application does not contain a summary by project category. The Amended Administrative Order Under 11 U.S.C. §§ 105 (a) and 331

**FEE AUDITOR'S FINAL REPORT** - Page 2
wrg FR Wallace 6Q 7-9.02.wpd

<u>Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members</u> (the "Amended Administrative Order") in this case, requires such a summary. This issue was addressed in previous reports, and we again asked that Wallace King provide such a summary in the future. Wallace King responded as follows:

> This summary has been sent to the Fee Administrator and was sent at the time the 6th Interim Fee Application was sent.

We appreciate Wallace King's response; however, there is no indication in the Application of any attempt to summarize billings into accepted project categories. We would again ask that Wallace King consult and use the categories that have been previously provided in the Project Category Spreadsheet.

Specific Time and Expense Entries

6.   In our initial response, we noted that the Application has a summary of expenses but fails to provide any details.  The Guidelines Rule II. E. provides that "[f]actors relevant to a determination that the expense is proper include the following: . .3. Whether applicant has provided a detailed itemization of all expenses including the date incurred, description of expense (e.g., type of travel, type of fare, rate, destination), . . .".  We asked Wallace King to provide detailed expense entries with regard to those expenses for which it wished to be reimbursed. We requested that the details should include the name of the person incurring each expense, the class of fare for airfares, the number of nights per hotel stay, the number of days per car rental, the number of meals per meal expense, the reason for each trip and any other information that may be necessary and useful in explaining the expense. The Wallace King response is provided in Response Exhibit 1.  After reviewing this information, we consulted Pat Rupp at Wallace King for further clarification

regarding a number of the listed expenses and received a written response from her. Even with the benefit of greater detail, we still consider several of the expense listings to be excessive. These expense entries are provided below.

| | |
|---|---:|
| Marraro, Auto Rental in Newark - 6/11/02 | 382.15 |
| Car Service - to BWI - 6/13/02 | 231.38 |
| Dinner Meeting - 3/30/02 (Marraro and 3 Guests) | 478.48 |
| Dinner Meeting in DC with A. Nagy - 4/5/02 (Marraro and 1 Guest) | 141.63 |
| Dinner Meeting in DC with Agnello, Hughes and Expert-4/8 (Marraro +3) | 263.63 |
| Dinner Meeting in Miami with J. Agnello - 3/19 (Marraro and 2 Guests) | 331.27 |
| Dinner Meeting in NYC with A. Nagy - 4/15 (Marraro and 1 Guest) | 253.80 |
| Dinner Meeting with E. Anderson - 6/18/02 (Marraro and 1 Guest) | 159.34 |
| Dinner Meeting with Messrs. Hughes and Agnello in DC - 4/23 (Marraro and 3 Guests) | 266.89 |

Paragraph II.E.1 of the Guidelines provides that "[f]actors relevant to a determination that the expense is proper include ... [w]hether the expense is reasonable and economical. For example, first class and other luxurious travel mode or accommodations will normally be objectionable.". Thus based on our interpretation of paragraph II.E.1 of the Guidelines we recommend the following reductions.

*Auto Rental - 6/11/02*: We believe $382.15 for two days auto rental is excessive. Thus we recommend a reduction of $191.07 in expenses.

*Car Service - to BWI - 6/13/02*: We asked Wallace King for further clarification of this expense. Wallace King responded as follows:

> 8/22 - John Agnello from Reagan National Airport to Wallace King Offices for meetings on pre-trial and exhibit work - $62.10
> 8/21 - C. Marraro from Carella Barnes in NJ to NYC - To NY from NJ for meetings in NY with client after meeting with local counsel in NJ  - $102.00
> The remaining $67.28 should be deducted from the bill (it was inadvertently billed to Grace)

**FEE AUDITOR'S FINAL REPORT** - Page 4
wrg FR Wallace 6Q 7-9.02.wpd

We accept Wallace King's explanation, and thus we recommend a reduction of $67.28 in expenses.

*Dinner Meeting - 3/30/02*: We believe $478.48 for a meal for four, or $119.62 per person, is excessive. It is our opinion that $35.00 per person is a more reasonable amount. Thus we recommend a reduction of $338.48 in expenses.

*Dinner Meeting - 4/5/02* : We believe $141.63 for a meal for two is excessive. Thus we recommend a reduction of $71.63 in expenses.

*Dinner Meeting - 4/8/02*: We believe $263.63 for a meal for four is excessive. Thus we recommend a reduction of $158.63 in expenses.

*Dinner Meeting - 3/19/02*: We believe $331.27 for a meal for three is excessive. Thus we recommend a reduction of $226.27 in expenses.

*Dinner Meeting - 4/15/02*: We believe $253.80 for a meal for two is excessive. Thus we recommend a reduction of $183.80 in expenses.

*Dinner Meeting - 6/18/02* : We believe $159.34 for a meal for two is excessive. Thus we recommend a reduction of $89.34 in expenses.

*Dinner Meeting - 4/23/02*: We believe $266.89 for a meal for four is excessive. Thus we recommend a reduction of $126.89 in expenses.

7.  In our initial report, we noted on two separate occasions that multiple professionals attended the same meetings for a total of 33.30 hours and a total expense to the estate of $13,212.00. The fee details for these meetings are provided below.

*August 22, 2002 Meeting:*

| | | | |
|---|---|---|---|
| 08/22/02 | CHM | 10.50 | All-day meeting in DC working on pre-trial submission (8.5 hrs.);....... |
| 08/22/02 | WH | 8.00 | All day meeting in DC with Messrs. Agnello and Marraro and Ms. Flax re exhibits stipulations and other trial prep matters. |

*August 23, 2002 Meeting:*

| | | | |
|---|---|---|---|
| 08/23/02 | CHM | 8.80 | All-day meeting on trial preparation. |
| 08/23/02 | WH | 8.00 | All day meeting in DC with Messrs. Agnell and Marraro and Ms. Flax re exhibits, stipulations and other trial prep matters. |

According to Local Rule 2016-2(d)(ix), "[t]he activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role." The matter of multiple professionals, is also addressed in the Guidelines, Paragraph II.D.5.: "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." We realize that there are occasions when each professional brings a distinct area of expertise to a meeting. However, in the instances cited, the detail provided does not clarify each participants' role. We asked Wallace King to explain the need for multiple professionals at the meetings listed. Wallace King responded as follows:

> These two day meetings were held with local counsel to prepare for the pre-trial statement and the trial. Mr. Marraro as trial counsel attends all important meetings involving litigation strategy and trial preparation. Mr. Marraro and Mr. Hughes each had separate responsibilities for the trial preparation. Mr. Marraro is responsible for health experts and Mr. Hughes has responsibility for technical expert issues as well as CERCLA and remedy issues. It was mandatory that each attend these meetings for trial strategy and the important pre-trial statement.

We appreciate Wallace King's response and thus have no objection to these fees.

**FEE AUDITOR'S FINAL REPORT** - Page 6
wrg FR Wallace 6Q 7-9.02.wpd

8. In our initial report, we noted in several time entries that the amount of time provided in parentheses does not equal the total amount charged, resulting in an additional 9.20 hours and an additional $1,703.50 in fees. The time entries are provided in Exhibit A and attached hereto. We requested that Wallace King review Exhibit A and advise us as to these calculations. Wallace King responded as follows:

> Please note that on November 14, 2002, Wallace King sent our quarterly application together with the statements for July, August and September. We noted in our e-mail that these statements should be used for calculating the time entries, not the ones previously sent since we have found that when scanning our statements to put them in the Word format that sometimes things get changed and typographical errors were corrected. Please use those statements to calculate the time. Correct entries are attached as WKMB Exhibit B.

We appreciate Wallace King's explanation and thus have no objection to these fees.

9. In our initial report, we noted that professional SCD spent 56.20 hours for a total expense to the bankruptcy estate of $15,174.00 researching RCRA and preparing a memorandum regarding the same. The time entries are provided below.

| | | | |
|---|---|---|---|
| 07/12/02 | SCD | 7.30 | Conduct RCRA research project at Mr. Marraro's request. |
| 07/17/02 | SCD | 2.10 | Continue RCRA research project as requested by Mr. Marraro. |
| 07/18/02 | SCD | 7.50 | Continue RCRA research project per Mr. Marraro's request. |
| 07/19/02 | SCD | 6.30 | Continue RCRA research project per Mr. Marraro's request. |
| 07/22/02 | SCD | 7.60 | Continue RCRA research project per Mr. Marraro's request. |

**FEE AUDITOR'S FINAL REPORT** - Page 7
wrg FR Wallace 6Q 7-9.02.wpd

| | | | |
|---|---|---|---|
| 07/23/02 | SCD | 8.10 | Continue RCRA research project as per Mr. Marraro's instructions. |
| 07/24/02 | SCD | 8.20 | Continue RCRA research project as per Mr. Marraro's instructions. |
| 07/25/02 | SCD | 9.10 | Research RCRA project (4.8 hrs; drafting memo re same (4.3 hrs.). |

The U.S. Trustee Guidelines Rule, I.E. states ". . . [i]n evaluating fees for professional services, it is relevant to consider . . .whether services were performed within a reasonable time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;. . ." Neither the narrative portion of the Application nor the individual time entries provide information sufficient to analyze the reasonableness of the time spent on this project. We asked Wallace King to explain why this project required so much professional time and effort. Wallace King responded as follows:

> This research project involved defining an "imminent and substantial endangerment" under RCRA's citizen suit provision with specific reference to whether future development plans (such as, for example, developing contaminated property for residential or commercial use) could create an "imminent and substantial endangerment" even if no such endangerment would exist in the absence of the future development plans. Given the complexity of the issue, Mr. Marraro asked Mr. Dubuc to look carefully at the case law relating to RCRA's citizen suit provision, and to summarize (in a memo) the most relevant cases. Mr. Dubuc therefore needed to read many cases to select the relevant cases and to properly summarize those cases. The final work product summarized in detail the relevant holdings of 36 cases. Again, those cases were selected out of hundreds of cases that had to be analyzed for this research project.

We believe we understand Wallace King's response and thus have no objection to these fees.

10.    Similarly, in our initial report we noted that professional RLS spent 23.70 hours for a total expense to the bankruptcy estate of $4,147.50 researching New Jersey law. The time entries are provided below.

| | | | |
|---|---|---|---|
| 09/24/02 | RLS | 7.30 | Research New Jersey law for Mr. Hughes (7.3 hrs.). |

**FEE AUDITOR'S FINAL REPORT** - Page 8
wrg FR Wallace 6Q 7-9.02.wpd

| | | | |
|---|---|---|---|
| 09/25/02 | RLS | 7.50 | Research New Jersey law for Mr. Hughes (7.5 hrs.). |
| 09/26/02 | RLS | 8.10 | Research New Jersey law for Mr. Hughes (5.7 hrs.);....... |
| 09/27/02 | RLS | 3.20 | Research New Jersey case law (3.2 hrs.);......... |

Neither the narrative portion of the Application nor the individual time entries provide information sufficient to analyze the reasonableness of the time spent on this project. We asked Wallace King to explain why this project required so much professional time and effort. Wallace King responded as follows:

> Here are the corrected time entries. The time entries were shortened due to the fact that WKMB was preparing for trial in this matter. Because the fee application and billing invoices are a matter of public record, we had chosen to provide general descriptive categories (*e.g.* work on research in preparation for trial) as opposed to specific detail in describing the tasks billed so that our adversaries did not obtain or could not discern our work product. However, since trial has now begun in the matter, the full time entries follow:
>
> > 9/24/02 - RLS   Researched New Jersey negligence law for a duty to warn buyer of hazardous land conditions (2.5 hrs.); duty to future landowner not to    contaminate land (3.5 hrs.); duty to clean-up land when promise to do so (1.3 hrs.).   7.3 hrs.
> >
> > 9/25/02 - RLS   Researched New Jersey negligence law for duty to warn buyer of hazardous land conditions (3.1 hrs.); duty to future landowner not to contaminate land (2.6 hrs.); duty to clean-up land when promise to do so (1.8 hrs.).   7.5 hrs.
> >
> > 9/26/02 - RLS  Researched New Jersey law for duty to warn buyer of hazardous land conditions (3.1 hrs.); duty to future landowner not to contaminate land (2.0 hrs.); duty to clean-up land when promise to do so (1.8 hrs.); search for "Great Eastern" references in *Hackensack River v. Honeywell* complaint and Honeywell cross claims (1.2 hrs.).   8.1 hrs.
> >
> > 9/2702 - RLS   Researched New Jersey statute of limitations for strict liability claims (5.3 hrs.); prepared to draft RCRA liability section for pre-trial brief (1.0 hrs.).   6.3 hrs.

We believe we understand Wallace King's response and thus have no objection to these fees.

11.     In our initial report, we noted that Wallace King seeks reimbursement in the amount of $3,356.34 for secretarial overtime. The Guidelines Rule II. E. 7., states "[f]actors relevant to a determination that the expense is proper include the following: . . Whether the expenses appear to be in the nature of nonreimbursable overhead . . . Overhead includes word processing, proofreading, secretarial and other clerical services, . . ." We asked Wallace King to explain why this secretarial overtime should not be considered non-reimbursable overhead. Wallace King responded as follows:

> This secretarial overtime was on trial preparation matters. It was not in the nature of simple word processing, proofreading or other clerical services, which would normally be considered nonreimbursable overhead. The secretary in this instance worked on exhibit preparation for the pre-trial statement, major Summation databases for trial and coordination of the pre-trial exhibits, working closely with the paralegals in the firm.

We appreciate Wallace King's response, and given the circumstances and tasks described, we have no objection to these expenses.

12.     In our initial report, we noted that Wallace King seeks reimbursement in the amount of $10,000.00 for an expert witness fee. Paragraph II.E.3. of the Guidelines provides "[u]nusual items require more detailed explanations and should be allocated, where practicable, to specific projects." The Application fails to provide any detail with regard to this expense. We asked Wallace King to augment this expense entry accordingly. Wallace King responded as follows:

This was for Dr. Phillip Goad, our expert at trial.

We accept Wallace King's explanation and have no objection to this expense.

## CONCLUSION

13.     Thus, we recommend approval of fees totaling $364,875.50 and costs totaling $61,312.49 ($62,765.88 minus $1,453.39) For Wallace King's services from July 1, 2002 through September 30, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
    Warren H. Smith
    Texas State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 3rd day of February, 2003.

_____
Warren H. Smith

EXHIBIT A

1. On August 5, 2002, WH has a time entry listed as 7.20 hours for a total of $2,520.00. The points only add up to 7.00 hours for a total of $2,450.00. Difference $70.00.

| | | | |
|---|---|---|---|
| 08/05/02 | WH | 7.20 | Conferences with expert re trial exhibits/demonstrative aids re geotechnical issue (.7 hrs.); review site video in connection with trial prep issue (.6 hrs.); review proposed exhibits from expert and confer with consultant and expert re same (.6 hrs.); review other expert proposed exhibits and confer with expert re same (.5 hrs.); conference with other expert re exhibits and trial prep matter (.4 hrs.); prepare for meeting with Messrs. Agnello, Marraro and expert in NJ re trial prep ratters (4.2 hrs.). |

2. On August 8, 2002, WH has a time entry listed as 8.30 hours for a total of $2,905.00. The points only add up to 7.30 for a total of $2,555.00. Difference $350.00.

| | | | |
|---|---|---|---|
| 08/08/02 | WH | 8.30 | Finalize pre-trial fact stipulations (2.6 hrs.); revise list of legal issues for pretrial (.5 hrs.); conferences with paralegals re assignments (.5 hrs.); review revised table of documents evidencing Grace entities' costs/damages and review selected documents re same (2.2 hrs.); work on deposition designation (1.5 hrs.). |

3. On August 22, 2002, TP has a time entry listed as 8.90 hours for a total of $2,403.00. The points only add up to 8.80 for a total of $2,376.00. Difference $27.00.

| | | | |
|---|---|---|---|
| 08/22/02 | TP | 8.90 | Phone conferences and emails with Mrs. Banks, Bynum and Mr. Moasser requesting current Wong transcripts and summaries and requesting copies of additional transcripts for designations (1.0 hrs.), review of summaries for Wong and other deponents (1.4 hrs.), highlight deposition designations for (5.6 hrs.); phone conference with Mr. Hughes re designations for Wong and others that have been flagged for relevant portions (.3 hrs.); prepared |

|  |  |  |  |  |
|---|---|---|---|---|
|  |  |  |  | status chart from index of deposition transcripts from insurance litigation and present litigation to assess volume to complete and track status of project (.5 hrs.) |
|  | 4. | On July 1, 2002, BB has a time entry listed as 11.70 hours for a total of $1,579.50. The points only add up to 11.50 for a total of $1,552.50. Difference $27.00. |  |  |

| 07/01/02 | BB | 11.70 |  | Continue research of case files, production database and CDs, and designated trial exhibits list, identify and collect supporting documents for timeline for Mr. Hughes (5.1 hrs.); consult with Mr. Hughes re production of additional Grace letter to NJDEP (.1 hrs.); conference with Ms. Bynum re Grace case invoices project (.2 hrs.); conference with Mr. Hughes re new correspondence and documents for Grace supplemental production (.1 hrs.); incorporate additional designated pretrial exhibits into exhibits list (.4 hrs.); review, prepare and produce supplemental documents, incorporate and create new case file (.7 hrs.); review, organize, coordinate, and prepare new correspondence and incorporate into case files (.4 hrs.); review new court materials (.3 hrs.); incorporate new case deadlines into case calendar (.5 hrs.); conference with Ms. Manago re same (.1 hrs.); incorporate new pleadings into indexed case files (.3 hrs.); complete and quality check table of Grace expert invoices (1.4 hrs.); review data on table and identify issues and process for resolution (.6 hrs.); review, sort and organize new correspondence (1.3 hrs.). |
|---|---|---|---|---|

|  | 5. | On July 10, 2002, WH has a time entry listed as 7.90 hours for a total of $2,765.00. The points only add up to 7.50 for a total of $2,625.00. Difference $140.00. |  |  |
|---|---|---|---|---|

| 07/10/02 | WH | 7.90 |  | Conferences with consultant re scheduling matters and other issue in connection with preparing experts for trial (.7 hrs.); review early DEP/Honeywell correspondence and include in trial exhibits (2.2 hrs.); review consultant's list of the Grace experts' opinions for trial and |
|---|---|---|---|---|

**FEE AUDITOR'S FINAL REPORT** - Page 13
wrg FR Wallace 6Q 7-9.02.wpd

revise same (1.2 hrs.); legal research re proving RCRA "imminent and substantial endangerment" and confer with Mr. Marraro re same (1.6 hrs.); review latest production from Allied re sampling/monitoring wells and confer with consultant re same (.8 hrs.); review ICO's letter to NJDEP re groundwater issues and confer with plaintiffs' counsel re same (.7 hrs.); prepare letter to Mr. Caffrey re document production (.2 hrs.).

6. On July 11, 2002, BB has a time entry listed as 6.30 hours for a total of $850.50. The points only add up to 3.40 for a total of $459.00. Difference $391.50.

07/11/02   BB   6.30   Conference with Mr. Hughes on status and needs re Grace invoices project (.2 hrs.); collect and prepare pertinent cases downloaded from Lexis and legal research memo (.2 hrs.); conference with Mr. Moasser on additional needs re Grace invoices (.3 hrs.); conference with Mr. Smith re invoices (.1 hrs.); conference with Ms. Kelly on resolution of issues re proposed trial exhibits in preparation for attorney review (.3 hrs.); research Martindale Hubbell, download and prepare pertinent information on law firm for Mr. Marraro (.1 hrs.); incorporate additional key CERCLA case into legal research case files and electronic files (.3 hrs.); coordinate and organize CERCLA allocation cases for Mr. Hughes (.7 hrs.); collect and prepare pertinent site inspection correspondence for Ms. Pelletier (.3 hrs.); scan and OCR settlement letter for Mr. Hughes (.4 hrs.); research Lexis, download, and coordinate CERCLA allocation cases for Mr. Hughes' legal research file (.5 hrs.).

7. On July 15, 2002, BB has a time entry listed as 8.10 hours for a total of $1,093.50. The points only add up to 4.10 for a total of $553.50. Difference $540.00.

07/15/02   BB   8.10   Collect pertinent settlement correspondence for Mr. Hughes (.2 hrs.); incorporate new court filings into indexed case files and scan and incorporate into electronic files (.7 hrs.); collect pertinent Grace correspondence for Mr. Marraro (.1 hrs.); research expert records, send email

|  |  |  |  |
|---|---|---|---|
|  |  |  | message to Ms. Heller re Dr. Belsito's inquiry re his 7/1/02 invoice and place follow up call to Dr. Belsito's office re status to date (.4 hrs.); conference with Mr. Hughes re trial plans and related issues (.8 hrs.); respond to email from Grace re Dr. Belsito (.1 hrs.); confer with Ms. Kelly re same (.1 hrs.); review, prepare, coordinate and scan Honeywell 6.3.02 supplemental production and site inspection photographs, incorporate into electronic files, and Bates label (1.7 hrs.). |

8. On July 24, 2002, CHM has a time entry listed as 6.70 hours for a total of $2,948.00. The points only add up to 6.50 for a total of $2,860.00. Difference $88.00.

| 07/24/02 | CHM  6.70 | Conference with ICO re scheduling (.8 hrs.); conference with client (.7 hrs.); conference with client and others re property use issues (4.2 hrs.); prepare draft calendar (.6 hrs.); conference with ICO re same (.2 hrs.). |
|---|---|---|

9. On September 27, 2002, PCC has a time entry listed as 1.50 hours for a total of $525.00. The points only add up to 1.30 hours for a total of $455.00. Difference $70.00.

| 09/27/02 | PCC  1.50 | Office conference with Mr. Marraro re injunction issue (.2 hrs.); legal research re same (1.1 hrs.). |
|---|---|---|

Response Exhibit 1

Disbursements: - August 2002

| Item | Amount |
|---|---|
| Marraro, Coach Air Fare From New York - 6/12 | 205.50 |
| Hughes, Coach Air Fare to New York/New Jersey - 8/19-20/02 | 528.50 |
| Hughes, Coach Air Fare to New York/New Jersey - 8/5/02 | 528.50 |
| Marraro, Coach Air Fare to/from Newark - 4/29/02 | 537.50 |
| Marraro, Coach Air Fare to/from Newark - 4/9/02 | 485.50 |
| Marraro, Coach Air Fare to/from Newark - 5/14 and 5/15/02 | 542.50 |
| Marraro, Coach Air Fare to/from Newark - 6/11/02 | 499.50 |
| Marraro, Coach Air Fare to/from Newark - 6/20-21/02 | 589.00 |
| Marraro, Coach Air Fare to/from Newark -6/3/02 | 488.50 |
| Marraro, Coach Air Fare to/from WPB, Fl - 3/18-20/02 | 550.00 |
| Marraro, Auto Rental in Newark - 6/11/02 | 382.15 |
| Marraro, Auto Rental in WPB, Fl - 3/18 | 188.13 |
| Marraro, Auto Rental on Trip to Newark - 6/3/02 | 81.87 |
| Breakfast and Lunch for Pre-Trial Meetings - 8/22/02 (5 persons) | 48.88 |
| Car Service - to BWI - 6/13/02 | 231.38 |
| Certified Copy of Certificate of Change of Corporate Name | 21.00 |
| Copy Costs - Internal | 3,858.90 |
| Dinner Meeting - 3/30/02 (Marraro and 3 Guests) | 478.48 |
| Dinner Meeting in DC with A. Nagy - 4/5/02 (Marraro and 1 Guest) | 141.63 |
| Dinner Meeting in DC with Agnello, Hughes and Expert-4/8 (Marraro +3) | 263.63 |
| Dinner Meeting in Miami with J. Agnello - 3/19 (Marraro and 2 Guests) | 331.27 |
| Dinner Meeting in NYC with A. Nagy - 4/15 (Marraro and 1 Guest) | 253.80 |
| Dinner Meeting with E. Anderson - 6/18/02 (Marraro and 1 Guest) | 159.34 |
| Dinner Meeting with Messrs. Hughes and Agnello in DC - 4/23 (Marraro and 3 Guests) | 266.89 |
| Facsimile Costs | 179.25 |
| FedEx Costs | 314.79 |
| Hotel in Miami - 3/18  (Marraro 4 Nights) | 865.85 |
| Hotel in New York/New Jersey - 8/5/02 (Hughes, 1 Night) | 256.48 |
| Hotel in Newark - 5/23/02     (Marraro, 3 Nights) | 614.54 |
| Hotel in Newark - 6/11/02     (Marraro, 2 Nights) | 218.29 |
| Hotel in Newark - 6/20/02     (Marraro, 2 Nights) | 370.70 |
| Hotel in Newark - 6/3/02      (Marraro, 2 Nights) | 392.04 |
| Hotel on Trip to New York/New Jersey - 8/19-20/02 (Hughes, 1 Night) | 308.11 |
| Lexis Costs | 2,852.48 |
| Long Distance Charges | 530.03 |
| Lunch Meeting for Pre-Trial Preparation - 8/23/02 (8 People, in office) | 110.60 |
| Meals on Trips | 257.25 |

| | |
|---|---:|
| Outside Copies | 43.00 |
| Overtime Meals | 15.50 |
| Overtime Meals - Attorney/Paralegals | 132.62 |
| Overtime Transportation | 853.22 |
| Parking on Trips | 304.00 |
| Postage | 3.85 |
| Marraro, Rental Car in New York - 6/12/02 | 99.51 |
| Marraro, Rental Car on Trip to Newark - 4/9/02 | 80.79 |
| Marraro, Rental Car on Trip to Newark - 5/14-15 | 181.91 |
| Marraro, Rental Car on Trip to Newark - 6/20/02 | 172.27 |
| Secretarial Overtime | 89.01 |
| Westlaw | 2,801.09 |
| Total Disbursements | $23,809.53 |

## SERVICE LIST

Notice Parties

**The Applicant**

Christopher H. Marraro, Esq.
Wallace King Marraro & Branson PLLC
1050 Thomas Jefferson St., N.W.
Suite 500
Washington, D.C. 20007

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801