## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING
### FEE APPLICATION OF KIRKLAND & ELLIS
### FOR THE SIXTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its

capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Fee

Application of Kirkland & Ellis for the Sixth Interim Period.

### BACKGROUND

1.     Kirkland & Ellis (K&E) was retained as counsel to the Debtors.  In the Application,

K&E seeks approval of fees totaling $918,624.50 and costs totaling $135,434.17 for its services from

July 1, 2002, through September 30, 2002.

2.     In conducting this audit and reaching the conclusions and recommendations contained

herein, we reviewed in detail the Application in its entirety, including each of the time entries

included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2

of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended

Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications

for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30,

1996, (the "Guidelines"), as well as for consistency with precedent established in the United States

Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served on K&E an initial report based on our review and received a response from K&E, portions of which response are quoted herein.

## DISCUSSION

<u>General Issues</u>

3.        In our initial report, we noted that a large majority of K&E's timekeepers often use the phrase "attend to" when referring to a variety of tasks resulting in insufficient detail in their time entries.  Rule 2016-2(d) of the Delaware Local Rules states "activity descriptions . . . shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary . . ."  This issue has been raised in earlier reports.  We  again asked that K&E advise its  professionals to avoid such global terminology and provide more detailed time entries in the future.  K&E responded as follows:

> K&E will work with its professionals to avoid using the term "attend to" and to endeavor to be more descriptive of their tasks.

We appreciate K&E's response.

4.        In our initial report, we noted that Kapp and Pope often tended to lump their time entries.  Local Rule 2016-2(d)(vii) provides that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment."  This issue has been addressed with certain professionals in previous applications.  We asked Kirkland & Ellis to continue advising all of its timekeepers to avoid lumping their time entries in the future.  K&E responded as follows:

> K&E has worked, and will continue to work, assiduously to avoid lumping time in its entries to ensure that time is kept in tenth of an hour increments.

We appreciate K&E's response.

5.    In our initial report, we noted that K&E billed 349.40 hours and $110,439.50 to the project category Fee Applications/Applicant.  The billing in this category accounts for 12% of the total fees requested in the Application.  We realize that, as set forth in the Application, during this period there were special circumstances involved in redrawing categories and responding to multiple issues raised by the fee auditor.  We noted, however, that 12% is generally too great a percentage of the overall fees to be devoted to this category, and that we expected that amount of time to decline in the future.  We also asked that K&E examine the necessity of having so many upper-level firm professionals involved in the fee application process.  K&E responded as follows:

> As the Initial Report notes, K&E spent considerable time in responding to various fee-related matters.  First, K&E spent considerable time redesigning the matter numbers to correspond to the requirements of the Court.  Second, K&E responded during this time period to two separate reports regarding fees.  The vast majority of this time was spent by the attorney responsible for fee application preparation, Roger Higgins, responding to a great number of very detailed inquiries in the fee auditor's reports.  The rest of the attorney time was spent by the timekeepers themselves coordinating with Mr. Higgins in order to respond to these inquiries.  K&E has spent, and will continue to spend, its time judiciously in preparing fee applications and responding to various inquiries regarding its fees.

We appreciate K&E's response.

Specific Time and Expense Entries

6.    In our initial report, we noted that on four occasions multiple K&E professionals prepared for, traveled to and attended the same meeting, deposition or hearing for a total of 78.0 hours and $42,679.00.  (See Exhibit A).  Pursuant to the Guidelines, II. D. 5.  "...If more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  Also relevant here, Local Rule 2016-2(d)(ix) provides "[t]he

activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role." We asked K&E to explain why was it necessary for more than one professional to attend these meetings and hearings as well as the nature of each participant's role in each instance. K&E's response is provided in Response Exhibit 1. We believe we understand K&E's explanation and thus have no objection to these fees.

7.      In our initial report, we noted that there were numerous occasions of multiple K&E professionals participating in the same conference calls. The time spent was 15.50 hours for a total of $6,266.50. (See Exhibit B). Pursuant to the Guidelines, II. D. 5. "...If more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." Also relevant here, Local Rule 2016-2(d)(ix) provides "[t]he activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role." We asked K&E to explain why was it necessary for more than one professional to participate in these calls as well as the nature of each participant's role in each instance. K&E's response is provided in Response Exhibit 2. We accept K&E's explanation and thus have no objection to these fees.

8.      In our initial report we noted that on August 29, 2002 Bledsoe ($200) billed 0.30 hours for $60.00 for a telephone conference with the conflicts department. The entry is shown below.

| 08/29/02 | Bledsoe | 0.30 | ...telephone conference with conflicts department re: same (.3);... |

The U.S. Bankruptcy Code §330 (4)(A)(ii)(I) provides that "(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for – . . .(ii) services that were not – (I)

reasonably likely to benefit the debtor's estate; . . ." We asked K&E to explain how this conference benefits the debtor rather than the Applicant. K&E responded as follows:

> Rhonda Bledsoe's August 29, 2002, time entry regarding a telephone conference with the conflicts department involved updating the conflicts lists that K&E maintains, and which are used by all of the thirty-odd professionals retained in these chapter 11 cases. As has been discussed in a previous response, it has become necessary to periodically update these conflicts lists.

We accept K&E's explanation and thus have no objection to these fees.

9.      In our initial report, we noted that Kirkland & Ellis billed expenses of $4,938.35 for secretarial overtime and other clerical services. (See Exhibit C). The Guidelines Paragraph, II.E.7. states, "...[f]actors relevant to a determination that the expense is proper include the following:...Whether the expenses appear to be in the nature of nonreimbursable overhead...Overhead includes word processing, proofreading, secretarial and other clerical services,..." We asked K&E to review Exhibit C and explain why these entries should not be viewed as nonreimbursable overhead. K&E responded as follows:

> All of the expense entries listed in Exhibit C to the Initial Report are for overtime secretarial support. K&E does not, consistent with the U.S. Trustee Guidelines, charge for secretarial services provided during the normal workday. As discussed in previous responses to the Fee Auditor, however, overtime for secretaries is routinely billed as a separate line item when the time is spent on a particular client in response to a particular client requirement. Indeed, as the fee application reflects, these chapter 11 cases have required extensive overtime work by all concerned at K&E, whether attorneys, paralegals or secretarial staff, especially in the various litigation matters. These services are nonetheless distinct from, and in addition to, nonreimbursable secretarial support for attorneys that should not be, and is not, reflected as a separate line item.

We appreciate K&E's response; however, we believe that certain tasks such as copying, faxing, preparing Fed Ex shipments and meeting parties for depositions should still be considered non compensable activities.  These entries are provided below.

| | | |
|---|---|---|
| 7/10/02 | 27.99 | STRIPENS,SU. - Preparing faxes to various individu |
| 7/22/02 | 20.33 | PHILPOTT,LI. - Edits, faxing;preparing fed ex |
| 8/07/02 | 12.16 | HEISE JR,FR. - Copy work for S. Pope |
| 8/08/02 | 9.33 | STRIPENS,SU. - Prepare memo & faxes |
| 8/08/02 | 79.07 | HEISE JR,FR. - Copy work for S. Pope |
| 8/09/02 | 27.99 | STRIPENS,SU. - Preparing correspondence & faxes |
| 8/09/02 | 37.32 | STRIPENS,SU. - Fax and contact sheet preparation |
| 6/10/02 | 18.66 | THOMPSON,SU. - Prep, copy and fax correspondence |
| 6/14/02 | 55.98 | THOMPSON,SU. - Letter to opposing counsel, copy, fax |
| 6/21/02 | 37.32 | THOMPSON,SU. - Coordination, tcs and faxes re cour |
| 6/21/02 | 37.32 | THOMPSON,SU. - Misc., faxing, tcs re court hearing |
| 9/17/02 | 20.33 | VON HERBULIS,JO. - Meet participants in deposition |
| 9/23/02 | 10.16 | PHILPOTT,LI. - Edits, preparing Fed Ex and faxing |
| 9/24/02 | 50.82 | PHILPOTT,LI. - typing edits to brief; faxing |
| 9/24/02 | 30.49 | VON HERBULIS,JO - meet parties for deposition |

Thus, we recommend a reduction of $475.27 in expenses.

10.    In our initial report, we noted a number of travel expenses totaling $2,185.87 which lack sufficient detail.  The entries are shown below.

| | | |
|---|---|---|
| 7/23/02 | 219.42 | JANET BAER -Travel Expense, Philadelphia,PA, 7.21 to 7.22.02, (Hearing) |
| 7/23/02 | 260.55 | DAVID J ZOTT -Travel Expense, Philadelphia,PA 7.18.02 - 7.19.02 (Attend Deposition) |
| 8/01/02 | 170.00 | DAVID M BERNICK, P.C. - Travel Expense, Newark,NJ, 7.25.02, (Attend Grace Hearing) |
| 8/01/02 | 342.92 | DAVID M BERNICK, P.C. - Travel Expense, Wilmington,DE, 7.21.02, (Grace Pre-Trial Hearing) |
| 8/13/02 | 377.52 | JAMES W KAPP - Travel Expense, Wilmington,DE 7.21.02 - 7.22.02 (Attend Hearing) |
| 8/20/02 | 68.62 | JAMES W KAPP - Travel Expense, Wilmington, DE 6.18.02 (Attend Hearing) Supplemental |
| 8/27/02 | 217.92 | JANET BAER - Travel Expense, Philadelphia,PA, 8.25 to 8.26.02, (Hearing) |
| 9/09/02 | 216.80 | JANET BAER - Travel Expense, Baltimore,MD, 9.05 to 9.09.02, (Mtgs) |
| 9/24/02 | 312.12 | JANET BAER - Travel Expense, Wilmington,DE,   9.22 to 9.23.02, (Hearing) |

While these types of expenses do not, in and of themselves, normally draw an objection, failure to adequately detail the entries is inappropriate. The Guidelines, Paragraph II.E. states that "[f]actors relevant to a determination that the expense is proper include the following:...3. Whether applicant has provided a detailed itemization of all expenses including the date incurred, description of expense (e.g., type of travel, type of fare, rate, destination),...". We asked K&E to review the entries and provide such detail as hotel rate, per meal expenses, and other specific information associated with these expenses so that we might assess the reasonableness of the charges. K&E responded as follows:

> The Initial Report lists nine separate "travel expenses" as lacking sufficient detail. Exhibit A[1] attached hereto provides supporting detail for each of these travel expenses, including receipts.

We accept K&E's explanation and therefore have no objection to these expenses.

11.    In our initial report, we noted that Kirkland & Ellis seeks reimbursement in the amount of $6,959.13 in airfare for five flights for which the fares appear to be excessive. The entries are provided below.

| | | |
|---|---|---|
| 7/23/02 | 1,045.68 | JANET BAER - Airfare Expense, Philadelphia,PA, 7.21 to 7.22, (Hearing) |
| 7/23/02 | 1,440.00 | DAVID J ZOTT - Airfare Expense, Philadelphia,PA 7.18.02 - 7.19.02 (Attend Deposition) |
| 8/01/02 | 871.00 | DAVID M BERNICK, P.C. - Airfare Expense, Wilmington,DE, 7.21.02, (Grace Pre-Trial Hearing) |
| 8/01/02 | 1,351.60 | DAVID M BERNICK, P.C. - Airfare Expense, Newark,NJ, 7.25.02, (Attend Grace Hearing) |
| 9/09/02 | 2,250.85 | DAVID M BERNICK, P.C. - Airfare Expense, Wilmington,DE/Denver,CO, 8.25 to 8.28.02, (Pre-Trial Hearing & Depos) |

---

[1] K&E's exhibits were sent in an electronic format whereby the exhibits could be read and reviewed, but could not be attached to this report.

The Guidelines Paragraph II.E.1., addresses this issue directly when it states, ". . .[f]actors relevant to a determination that the expense is proper include the following: 1.  Whether the expense is reasonable and economical.  For example, first class and other luxurious travel mode or accommodations will normally be objectionable."  We asked K&E to provide supporting information to show  that the airfares in question were purchased at coach rates.  K&E responded as follows.

> The Initial Report questions the amount spent on five separate airfares.  As the invoices in Exhibit B hereto show these amounts are the coach fully refundable fares for those routes.  As permitted by the K&E retention order, a copy of which is attached hereto as Exhibit C, Mr. Bernick supplemented his coach fare tickets with first class upgrade certificates.

A portion of the K&E exhibit is provided below.

8/01/02          871.00          DAVID  M  BERNICK,  P.C.  -  Airfare Expense, Wilmington,DE, 7.21.02,  (Grace Pre-Trial Hearing)
K&E response - Train fare: $185.00  Airfare (coach rate): $526.00 Upgrade to first class: $160.00

8/01/02          1,351.60          DAVID M BERNICK, P.C. - Airfare Expense, Newark,NJ, 7.25.02, (Attend Grace Hearing)
K&E response - Airfare (coach rate): $1,191.60   Upgrade to first class: $160.00

9/09/02          2,250.85          DAVID  M  BERNICK,  P.C.  -  Airfare  Expense, Wilmington,DE/Denver,CO, 8.25 to 8.28.02, (Pre-Trial Hearing & Depos)
K&E response - Airfare (coach rate): $940.45 (from DE to CO)
                     Airfare (coach rate): $1,150.40 (from CO to IL)
                     Upgrade to first class: $160.00

We believe we understand K&E's position, and we concur that, in its retention order, airline upgrade certificates are specified as one of the expenses K&E normally charges its clients.  However, we would maintain that the Guidelines are clear as to first class air travel at the expense of the estate.  Further, first class air travel does not appear to be a standard K&E business practice, in that most fares appear to be at coach rates, while others are upgraded to first class.  Thus, we recommend

a reduction of $580.00 in expenses.

12.     In our initial report, we noted that Baer ($580) lists two entries for transportation to and from the airport on September 9, 2002 that total $224.66.  These charges seem unusually high for a single day of transportation.  The entries are shown below.

9/26/02       100.94 JANET BAER-Trans.to/from airport, Boston Coach 9.09.02 (Supplement)
9/26/02       123.72 JANET BAER-Trans.to/from airport, Boston Coach 9.09.02 (Supplement)

The Guidelines, Paragraph II.E. states that "[f]actors relevant to a determination that the expense is proper include the following:...3. Whether applicant has provided a detailed itemization of all expenses including the date incurred, description of expense (e.g., type of travel, type of fare, rate, destination),...".  We asked K&E to review the entries above and to provide specific information associated with these expenses so that we might assess the reasonableness of the charges.   K&E responded as follows:

> The airport transportation expenses for Boston Coach cars questioned in the Initial Report, which were incurred as a result of Ms. Baer attending a meeting with the client at the client's offices, were entirely reasonable.  Indeed, similar car expenses are routinely billed in bankruptcy cases such as these chapter 11 cases.  In particular, Ms. Baer was taken via Boston Coach from K&E's offices in downtown Chicago to O'Hare International Airport during rush hour, a trip that can routinely take over an hour in such conditions.  In response to the second entry, Ms. Baer was taken from Baltimore-Washington International Airport to Grace's corporate headquarters in Columbia, Maryland, a trip that can take over an hour under even the best of traffic conditions.

We accept K&E's explanation and thus have no objection to these expenses.

**CONCLUSION**

13.     Thus, we recommend approval of fees totaling $918,624.50 and costs totaling

$134,378.90 ($135,434.17 minus $1,055.27) for K&E's services from July 1, 2002 through

September 30, 2002.


Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
            Warren H. Smith
            Texas State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**


**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served
First Class United States mail to the attached service list on this 4th day of February, 2003.

_____
            Warren H. Smith

## SERVICE LIST

Notice Parties

**The Applicant**
Roger J. Higgins
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones,
P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of
Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200

Wilmington, De 19801-1246

**Counsel to the Official Committee of
Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price &
Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of
Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Matthew G. Zaleski, III, Esq.
Campbell & Levine
Chase Manhattan Centre, 15th Floor
1201 Market Street, Suite 1200
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

## United States Trustee

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

<u>EXHIBIT A</u>

Between July 24 and July 29, 2002 Grummer ($420) and Bernick ($665) spent 27.50 hours for a total of $13,338.50 preparing for and attending a meeting in Denver on July 29, 2002.

| | | | |
|---|---|---|---|
| 7/24/02 | Grummer | 4.10 | Telephone conference with K. Coggon and other Holme Roberts attorneys re plans for meeting on 7/29 re Libby site (.9) attend to matters re preparation of chronologies for Libby site and other Libby projects (.5); review Libby documents, evaluate Libby issues, work on chronologies, and make other preparations for 7/29 Libby meeting (2.7). |
| 7/25/02 | Grummer | 1.60 | Prepare chronologies, lists, and other materials for 7/29 meeting re Libby (.5); prepare list of sites and calculation of difference between Grace reserve and United States' position on cleanup cost at various sites (.2); review Libby documents in preparation for 7/29 meeting (.9). |
| 7/26/02 | Bernick | 0.10 | Review Libby materials on preparation for meeting at Home Roberts. |
| 7/26/02 | Grummer | 4.90 | Review Libby documents, select and compile chronological set of key Libby documents, prepare event chronologies, and compile all in tabbed ring binders in preparation for 7/29 meeting. |
| 7/27/02 | Grummer | 0.90 | Revise notes of interview of A. Stringer re Libby site and forward notes to D. Bernick (.5); draft Libby trial outline (.4). |
| 7/28/02 | Bernick | 3.20 | Preparation for meeting re Libby litigation, including review of documents. |
| 7/28/02 | Grummer | 5.00 | Draft Libby trial outline and P. Peronard deposition summary outline and forward same to D. Bernick in preparation for 7/29 meeting re Libby (3.1); review Libby documents and prepare for 7/29 meeting re Libby (1.9) |
| 7/29/02 | Bernick | 4.00 | Preparation for and attending meeting in Denver re Libby. |
| 7/29/02 | Grummer | 5.40 | Prepare for meeting re Libby site (.3); attend meeting with Holme Roberts attorneys and D. Frost re Libby site trial preparations (3.7);... |

Between July 1 and July 29, Kapp ($470) and Baer ($580) prepared for and attended the same omnibus hearing. The time spent was 15.10 hours for a total of $7,845.00.

| | | | |
|---|---|---|---|
| 7/21/02 | James W Kapp | 3.10 | Attend to issues re revised employee compensation |

| | | | |
|---|---|---|---|
| | | | motion and review precedent and case law re same in preparation for July 22, 2002, hearing. |
| 7/01/02 attendto | James W Kapp | 0.50 | Review and revise July 22, 2002, agenda and issues re same (.4); telephone conference with D. Carickhoff re same (.1). |
| 7/08/02 | Janet S Baer | 0.50 | Review 6/18 transcript in preparation for staff meeting and upcoming hearing on 7/22. |
| 7/09/02 | Janet S Baer | 2.50 | Organize outstanding matters for team meeting and 7/22 hearing (.5); attend to matters re 7/23 hearing, schedules on briefs and related issues (1.5); attend to matters re Gerard briefing schedule, amending 7/22 agenda and ZAI appeal (.5). |
| 7/15/02 | James W Kapp | 0.20 | Prepare packets re Wesconn motion and revised employee compensation motion in preparation for July 22, 2002, hearing. |
| 7/22/02 hearing | James W Kapp | 5.00 | Prepare for and attend July 22, 2002, omnibus (4.5);... |
| 7/22/02 | Janet S Baer | 4.80 | Review materials re ZAI, scheme administrators and bar date in preparation for omnibus hearing (1.3); attend omnibus hearing and present arguments re scheme administrators and bar date (2.5);... |

On 08/28/02 Bernick ($665) and Grummer ($420) participated in the same deposition for a total of 11.9 hours for $6,590.50.

| | | | |
|---|---|---|---|
| 08/28/02 | David M Bernick | 4.50 | Prepare for and take P. Peronard deposition |
| 08/28/02 | Mark E Grummer | 3.60 | Review newly-received materials for potential exhibits for P. Peronard deposition (.4); attend P. Peronard deposition and assist D. Bernick at same (3.0); ... |
| 08/28/02 | David M Bernick | 2.00 | Travel to Peronard deposition (billed at half time). |
| 08/28/02 | Mark E Grummer | 2.00 | Travel time (billed at half time). |

Between 08/22/02 - 08/26/02 Baer ($580) and Bernick ($665) participated in the same omnibus hearing for a total of 23.5 hours for $14,905.

| | | | |
|---|---|---|---|
| 08/22/02 | Baer | 1.50 | Attend to matters re: 8/26 hearing |
| 08/24/02 | Bernick | 2.00 | Prepare for 8/26 omnibus hearings |
| 08/26/02 | Bernick | 9.00 | Preparation for and participating in hearings before Judge Fitzgerald and Judge Wolin |
| 08/26/02 | Baer | 4.00 | Attend to matters in preparation for omnibus hearing (1.0); attend 8/26 omnibus hearing re: |

| | | | Gerard, executive compensation, ZAI and fees (3.0) |
|---|---|---|---|
| 08/25/02 | Bernick | 2.00 | Travel to hearing (billed at half time). |
| 08/25/02 | Baer | 1.00 | Travel from Chicago to Delaware for omnibus hearing (billed at half time). |
| 08/26/02 | Baer | 2.00 | Travel to Denver (billed at half time) |
| 08/26/02 | Baer | 2.00 | Travel from Delaware back to Chicago after Omnibus hearing (billed at half time). |

## EXHIBIT B

On July 24, 2002 Kapp ($470) and Keller ($415) participated in the same conference call.  The
time spent was 1.90 hours for a total of $843.50.

| 7/24/02 | James W Kapp | 1.00 | Prepare for and participate in telephone conference re 2001 NOL carryback with E. Filon, B. Tarola, D. Siegel, P. Zilly and attend to issues re same. |
| 7/24/02 | Natalie H Keller | 0.90 | Prepare for and participate in telephone conference with E. Filon, et al. re NOL issues. |

On July 2, 2002 Keller ($415) and Shenoy ($280) participated in the same conference call.  The
time spent was 0.30 hours for a total of $97.50.

| 7/02/02 | Natalie H Keller | 0.80 | Conference call with R. Stewart re stipulation of facts (.1); ... |
| 7/02/02 | Pratibha J Shenoy | 6.70 | Discuss exhibits to Joint Stipulation of Facts with N. Keller and call government attorney re same (.2); ... |

On July 3, 2002 Keller ($415) and Shenoy ($280) prepared for and participated in the same
conference call.  The time spent was 0.90 hours for a total of $306.00.

| 7/03/02 | Natalie H Keller | 1.20 | Telephone conference with R. Stewart re stipulation of facts and briefing schedule (.4);... |
| 7/03/02 with | Pratibha J Shenoy | 0.50 | Prepare for and participate in telephone conference government attorney to discuss joint stipulation of facts and briefing schedule. |

On July 9, 2002 Keller ($415) and Shenoy ($280) prepared for and participated in the same
conference call.  Total time spent was 3.10 hours for a total of $1,124.50.

| 7/09/02 | Natalie H Keller | 3.10 | Prepare for conference call re withholding tax issue conference call with C. Finke and R. Finke re same (1.5); .... |
| 7/09/02 | Pratibha J Shenoy | 8.40 | Prepare for and participate in telephone conference with client re withholding tax issues (1.2); ... |

On July 15, 2002 Keller ($415) and Shenoy ($280)  participated in the same conference call.  The
time spent was 1.40 hours for a total of $486.50.

| 7/15/02 | Natalie H Keller | 2.20 | Conference call with E. Filon, C. Finke and R. |

Finke re settlement issues (.7);...

| 7/15/02 | Pratibha J Shenoy | 8.10 | ... participate in telephone call with client re same (.7);... |
|---|---|---|---|

On July 17, Keller ($415) and Maynes ($600) participated in the same conference call. The time spent was 1.10 hours for a total of $567.50.

| 7/17/02 | Natalie H Keller | 2.30 | ... conference call with R. Stewart re settlement (.5)... |
|---|---|---|---|
| 7/17/02 | Todd F Mayes | 2.00 | Telephone calls with R. Stewart re settlement (.6);... |

On July 18, 2002 Keller ($415) and Maynes ($600) participated in the same conference call. The time spent was 0.80 hours for a total of $406.00.

| 7/18/02 | Natalie H Keller | 2.80 | Conference call with E. Filon and C. Finke re settlement issues (.4);... |
|---|---|---|---|
| 7/18/02 | Todd F Maynes E.Filon | 2.50 | Conference calls re bankruptcy settlement with (.4);... |

On 08/20/02 Kapp ($470), Baer ($580) and Lane ($410) participated in the same conference call. The time spent was 3.40 hours for a total of $1,642.00.

| 08/20/02 | Kapp | 1.30 | ... participate in conference with P. Zilly, B. McGowan and P. Norris re: revised employee compensation plans and attend to issues re: same (1.3) |
|---|---|---|---|
| 08/20/02 | Lane | 1.10 | ... telephone conference with client re: same (1.1) |
| 08/20/02 | Baer | 1.00 | ... participate in conference on employee compensation response (1.0); ... |

On 08/13/02 Bernick ($665) and Grummer ($420) participated in the same conference call. The time spent was 1.30 hours for a total of $668.50.

| 08/13/02 | Bernick | 0.50 | Conduct telephone conference with co-defense counsel re: Libby |
|---|---|---|---|
| 08/13/02 | Grummer | 0.80 | ... prepare for and participate in team conference call re: Libby trial preparations status and projects (.8); ... |

On September 3, 2002 Higgins ($390), Browdy ($420) and Kapp ($470) participated in the same

conference call.  The time spent was 2.40 hours for a total of $1,028.00.

| 9/03/02 | Higgins | 1.00 | Prepare for and participate in teleconference re settlement issues in COLI and other tax disputes. |
|---------|---------|------|----|
| 9/03/02 | Browdy | .40 | Telephone conference with client re COLI issues (attend portion only). |
| 9/03/02 | Kapp | 1.10 | Participate in telephone conference with P. Norris, E. Filon, P. Zilly, D. Siegel re COLI tax settlement and to develop strategies re same (1.0);... |

EXHIBIT C

| Date | Amount | Description |
|------|--------|-------------|
| 6/19/02 | 133.81 | MONTERO,AM. - Secretarial Overtime |
| 6/25/02 | 65.31 | CRABB,BA. - Secretarial Overtime |
| 6/26/02 | 37.32 | SOLIS,RO. - Secretarial Overtime |
| 7/01/02 | 93.30 | CLASSEN,JA. - Secretarial Overtime |
| 7/01/02 | 158.61 | JOHNSON,JA. - Secretarial Overtime |
| 7/11/02 | 38.75 | Sullivan, C - Secretarial Overtime |
| 7/10/02 | 65.31 | CRABB,BA. - Secretarial Overtime |
| 7/11/02 | 37.32 | CRABB,BA. - Secretarial Overtime |
| 7/10/02 | 27.99 | STRIPENS,SU. - Preparing faxes to various individu |
| 7/17/02 | 37.32 | CRABB,BA. - Prepare documents |
| 7/22/02 | 20.33 | PHILPOTT,LI. - Edits, faxing;preparing fed ex |
| 7/24/02 | 37.32 | KARCEZEWSKI,M - Document revisions-Secretarial du |
| 7/24/02 | 91.48 | VON HERBULIS,JO. - Prepare correspondence, interr |
| 7/26/02 | 142.31 | PHILPOTT,LI. - compiled documents, made edits, sen |
| 7/27/02 | 186.60 | ORTIZ,HA. - Redact case summaries for production p |
| 7/29/02 | 37.32 | CRABB,BA. - Prepare documents |
| 8/01/02 | 37.32 | CRABB,BA. - Prepare documents |
| 8/02/02 | 65.31 | CRABB,BA. - Prepare documents |
| 8/05/02 | 37.32 | CRABB,BA. - Prepare documents |
| 8/05/02 | 135.63 | Kalemba, K - Revise motion |
| 8/07/02 | 12.16 | HEISE JR,FR. - Copy work for S. Pope |
| 8/07/02 | 65.31 | CRABB,BA. - Prepare documents |
| 8/08/02 | 9.33 | STRIPENS,SU. - Prepare memo & faxes |
| 8/08/02 | 65.31 | CRABB,BA. - Prepare documents |
| 8/08/02 | 79.07 | HEISE JR,FR. - Copy work for S. Pope |
| 8/09/02 | 27.99 | STRIPENS,SU. - Preparing correspondence & faxes |
| 8/09/02 | 37.32 | STRIPENS,SU. - Fax and contact sheet preparation |
| 8/10/02 | 251.91 | CRABB,BA. - Prepare documents |
| 6/05/02 | 65.31 | CRABB,BA. - Prepare documents |
| 6/10/02 | 18.66 | THOMPSON,SU. - Prep, copy and fax correspondence |
| 6/11/02 | 65.31 | CRABB,BA. - Prepare documents |
| 6/12/02 | 37.32 | CRABB,BA. - Prepare documents |
| 6/14/02 | 55.98 | THOMPSON,SU. - Letter to opposing counsel, copy, f |
| 6/14/02 | 65.31 | CRABB,BA. - Prepare documents |
| 6/14/02 | 37.32 | CRABB,BA. - Prepare documents |
| 6/15/02 | 111.96 | SOLIS,RO. - Revise documents |
| 6/15/02 | 37.32 | SOLIS,RO. - Work with documents |
| 6/15/02 | 74.64 | SOLIS,RO. - Work with documents |
| 6/16/02 | 233.25 | CRABB,BA. - Prepare documents |
| 6/17/02 | 55.98 | THOMPSON,SU. - Revise briefs and prep for distribu |
| 6/17/02 | 37.32 | CRABB,BA. - Prepare documents |
| 6/18/02 | 37.32 | CRABB,BA. - Prepare documents |

| | | |
|---|---|---|
| 6/18/02 | 18.66 | THOMPSON,SU. - Revisions to 23(f) Petition |
| 6/18/02 | 65.31 | CRABB,BA. - Prepare documents |
| 6/19/02 | 37.32 | CRABB,BA. - Prepare documents |
| 6/21/02 | 37.32 | THOMPSON,SU. - Coordination, tcs and faxes re cour |
| 6/21/02 | 37.32 | THOMPSON,SU. - Misc., faxing, tcs re court hearing |
| 8/16/02 | 37.32 | CRABB,BA. - Prepare documents |
| 8/17/02 | 149.28 | CRABB,BA. - Prepare documents |
| 8/19/02 | 65.31 | CRABB,BA. - Prepare documents |
| 8/20/02 | 65.31 | CRABB,BA. - Prepare documents |
| 8/22/02 | 65.31 | CRABB,BA. - Prepare documents |
| 8/23/02 | 65.31 | CRABB,BA. - Prepare documents |
| 8/24/02 | 177.27 | CRABB,BA. - Prepare documents |
| 8/26/02 | 65.31 | CRABB,BA. - Prepare documents and distribute same |
| 8/26/02 | 37.32 | CRABB,BA. - Prepare documents |
| 8/28/02 | 37.32 | CRABB,BA. - Prepare documents |
| 9/03/02 | 65.31 | CRABB,BA. - Prepare documents |
| 9/05/02 | 65.31 | CRABB,BA. - Prepare documents and distribute same |
| 9/05/02 | 74.64 | SOLIS,R0. - Revisions to objection to Examiner Mot |
| 9/05/02 | 74.64 | SOLIS,RO. - Professionals list for distributions r |
| 9/08/02 | 93.30 | SOLIS,RO. - Revisions to Fee Examiner Objection Mo |
| 9/11/02 | 65.31 | CRABB,BA. - Prepare documents |
| 9/12/02 | 37.32 | CRABB,BA. - Prepare documents |
| 9/13/02 | 65.31 | CRABB,BA. - Prepare documents |
| 9/17/02 | 20.33 | VON HERBULIS,JO. - Meet participants in deposition |
| 9/18/02 | 37.32 | CRABB,BA. - Prepare documents |
| 9/18/02 | 37.32 | SOLIS,R0. - Revise response to fee auditor |
| 9/19/02 | 30.49 | PHILPOTT,LI. - Making edits to letter; preparing F |
| 9/20/02 | 65.31 | CRABB,BA. - Prepare documents |
| 9/23/02 | 10.16 | PHILPOTT,LI. - Edits, preparing Fed Ex and faxing |
| 9/23/02 | 37.32 | CRABB,BA. - Prepare documents |
| 9/24/02 | 50.82 | PHILPOTT,LI. - typing edits to brief; faxing |
| 9/24/02 | 30.49 | VON HERBULIS,JO - meet parties for deposition |
| 9/26/02 | 149.28 | SOLIS,RO. - Prepare merge letter & faxes for distr |

Response Exhibit 1

As the Fee Auditor is aware from the August 26, 2002, hearing, and as K&E has discussed in its responses to the Fee Auditor's initial and final reports regarding the previous five interim periods, K&E delegates specific matters to different attorneys, depending upon each particular attorney's specialty, experience and availability. Very often, therefore, the subject matter of a hearing, especially the regularly scheduled omnibus hearings at which Judge Fitzgerald hears all matters pending before the Bankruptcy Court that month, will fall within the bailiwick of two or more K&E attorneys, making it far more efficient (and advantageous to the Debtors) to have those attorneys attending the particular hearing than to have one attorney spend the time coming up to speed on issues that are not within his or her particular purview.

> (a)    *July 29, 2002, Meeting Between David Bernick, Mark Grummer and Holme Roberts Attorneys in Preparation for Peronard Deposition, and the Peronard Deposition*

Exhibit A to the Initial Report questions why the July 29, 2002, meeting with David Bernick, the senior partner in charge of the K&E team with overall responsibility for these chapter 11 cases, required the presence of both Mark Grummer, the K&E partner responsible for environmental matters. This particular meeting was part of Mr. Bernick's and Mr. Grummer's extensive preparations for taking the deposition of Paul Peronard, a senior Environmental Protection Agency official who is the key witness with respect to litigation concerning the Libby, Montana asbestos Superfund site. Exhibit A to the Initial Report also questions why both Mr. Bernick and Mr. Grummer were present at Mr. Peronard's deposition.

The EPA has asserted that hundreds of people have died or are ill from asbestos exposure related to Grace's former mining operations at the Libby site, and that the Libby site cleanup costs will exceed $100 million. This issue must be settled before the Debtors can formulate a plan of reorganization. The validity of the Libby cleanup cost estimate was also a major factor in the fraudulent conveyance litigation in determining whether Grace was solvent in 1998 at the time of the Sealed Air transaction. As a result, half the time spent on this matter was placed in the litigation and litigation consulting matter because the time applied to resolving the environmental issues (the lead on which, of course, has been taken by Holme Roberts) and half the time placed in the fraudulent conveyance matter (which has been since resolved by settlement).

Mr. Peronard is the EPA's "On-Scene Coordinator" for the Libby site, the official primarily responsible for overseeing EPA's involvement and making the decisions as to what investigation and cleanup measures are necessary. Thus, he was the central witness with respect to the Libby site, and what liability the Debtors have for the site, and for whether the $100 million cleanup cost estimate is reasonable.

In close consultation with senior Grace management, K&E determined that Mr. Bernick, as the senior litigator and partner in overall charge of these chapter 11 cases, was the best person to take Mr. Peronard's deposition. Indeed, as K&E's senior litigator, he had to master this key aspect of these chapter 11 cases in order to proceed with the rest of these chapter 11 cases. Mr. Grummer, K&E's subject matter expert on environmental law, including the CERCLA "Superfund" law, was

vital to these preparations, both for his expertise and his mastery over the enormous and highly technical factual record. K&E's review and understanding of the record for litigation purposes required Mr. Grummer's knowledge of EPA's procedures and administrative requirements under the "National Contingency Plan," which is EPA's regulation governing CERCLA cleanups. Furthermore, the workload was large enough to require the work of more than one attorney. So important was Mr. Peronard's deposition to these chapter 11 cases, that, with respect to this issue, it was the only environmental litigation-related deposition in which two K&E attorneys participated.

*(b)    July 22, 2002, Omnibus Hearing*

Exhibit A also lists several time entries from James Kapp and Janet Baer regarding the July 22, 2002, omnibus hearing. As has been explained in previous responses to the Fee Auditor's reports, the scope of responsibility for the matters at these omnibus hearings is split between Mr. Kapp, Ms. Baer and Mr. Bernick. Mr. Bernick did not attend the July 22 omnibus hearing because there were no matters before the Court at that hearing requiring his presence.

On the other hand, Mr. Kapp, a bankruptcy specialist and K&E partner who handles certain bankruptcy matters and generally oversees the bankruptcy team assigned to these chapter 11 cases, and Ms. Baer, another bankruptcy specialist and the K&E partner who handles a number of discrete matters not handled by Mr. Kapp, both attended the July 22, 2002, omnibus hearing. As the time descriptions show, Mr. Kapp was responsible for the Wesconn motion and the employee compensation motion that were before the Court at that hearing. Ms. Baer, as her time descriptions show, was responsible for the bankruptcy-related aspects of the ZAI matter, as well as the scheme administrators and bar date matters.

*(c)    August 26, 2002, Omnibus Hearing*

Mr. Bernick did attend the August 26, 2002, omnibus hearing because there were a number of litigation-related items before the Court, including the Debtors' omnibus objection to the ZAI proofs of claim and other matters related to the planned ZAI "science trial" scheduled for later in 2003. Ms. Baer attended because, as set forth in her time descriptions, and as discussed above, she was responsible for the bankruptcy aspects of the ZAI matters. She also argued certain matters concerning executive compensation, and professionals' fees, as well as the Gerard matter, which has been discussed in previous responses to the Fee Auditor. Mr. Kapp did not attend the August 26 hearing because there were no matters before the Court requiring his presence.

Exhibit A to the Initial Report also questions certain travel time, listing Ms. Baer as having traveled to Denver and to Chicago, Illinois on the same day after the August 26 omnibus hearing. A review of the original August fee application indicates that Mr. Bernick traveled to Denver, and not Ms. Baer. Ms. Baer returned to Chicago.

Response Exhibit 2

1.    <u>Multiple Professionals Participating in the Same Conference Calls (¶ 7)</u>.

Exhibit B to the Initial Report lists several telephone conference calls in which two or more attorneys participated.  As previously explained, K&E assigns different attorneys to various matters based upon the attorneys' particular expertise, experience and availability, which might require that more than one attorney participate in a particular meeting or conference call.  In response to the particular inquiries of Exhibit B to the Initial Report:

(a)    *Natalie Keller and Mr. Kapp on July 24, 2002, Call*

Ms. Keller is a senior tax associate familiar with the technical tax aspects of NOL carrybacks.  Mr. Kapp, as discussed above, is a K&E bankruptcy partner who participated in this particular telephone conference call to discuss the bankruptcy implications of the NOL carryback issues.  Both Mr. Kapp and Ms. Keller were required on this telephone conference call with the client to fully apprise the client of the myriad tax and bankruptcy issues, and the complex interrelations between those issues.

(b)    *Various Telephone Conferences on July 2, 3, 9, 15 & 17, 2002*

These telephone conferences, which were with officials from the Internal Revenue Service ("IRS"), all relate to the "CCHP litigation," which K&E explained in its response to the Fee Auditor's initial report regarding the January - March 2002 period.  The CCHP litigation is a case before the Federal Court of Claims involving whether certain per diem expenses are wages subject to employment taxes.  The matter involves tax claims of approximately $22 million for the taxable years at issue (1993 through 1995) and in excess of $80 million for all the open years (which include the taxable years at issue and the years 1996 through 1999, which essentially will be bound by the outcome of the CCHP litigation).

During the first half of 2002, the Debtors and the government developed the joint stipulation of facts in support of summary judgment motions that each party had been expected to file during the summer 2002.  These cross-motions were never filed.  Instead, the parties spent significant time during July and the succeeding months discussing a framework for a potential settlement.  Significant time was also spent in finalizing the draft joint stipulation of facts.

The complexity of the CCHP litigation and its potential value to the Debtors' estates required assigning a total of three tax attorneys to this matter to most efficiently and cost-effectively bring it to a conclusion beneficial to the Debtors' estates.  Todd Maynes was the senior partner assigned.  He participated in negotiations with the IRS regarding a potential settlement, a process that is still ongoing.  Ms. Keller participated in the settlement talks when necessary as a legal and factual expert and assisted Mr. Maynes in preparing for those conferences.  She also participated in other telephone conferences with the IRS, which were devoted to discussing the particulars of the joint stipulation of facts because of her particular expertise in these matters.  Pratihba Shenoy participated in certain conference calls because she was the primary drafter of the joint stipulation.

(c)    *Mr. Kapp, Christian Lane and Ms. Baer on August 20, 2002, Call*

Christian Lane, a bankruptcy associate, had primary responsibility for drafting the original compensation programs motion and the responses to the objections that were the subject of this call, as indicated by the time entries. Ms. Baer participated because she was presenting the compensation programs matter to the Court at the August 26 omnibus hearing rather than Mr. Kapp, who had previously been handling the matter. It was more efficient and cost-effective in this particular circumstance, because this matter was relatively discrete and straight-forward, to have Ms. Baer participate in this telephone conference and then prepare and present the matter at the hearing rather than have Mr. Kapp also fly out to Delaware to present just this one matter, as he was not responsible for any other matters on the agenda. Mr. Kapp participated in this call because of his involvement with the compensation programs matter from its inception and as part of his transition of the matter to Ms. Baer.

(d)    *Mr. Bernick and Mr. Grummer on August 13, 2002, Call*

As discussed above in paragraph 4, Mr. Grummer and Mr. Bernick participated in a conference call with Holme Roberts attorneys pursuant to their distinctive roles in the Libby matter, as discussed above.

(e)    *Mr. Kapp, Michelle Browdy and Mr. Higgins on September 3, 2002, Call*

Mr. Kapp participated in this call as the bankruptcy partner responsible for developing the bankruptcy-related strategy for the particular matters that were the subject of this conference call. Mr. Higgins was the bankruptcy associate who performed the underlying research with respect to the legal and factual issues for this call. Ms. Browdy participated for a brief period to discuss the overall litigation posture of the chapter 11 cases, especially with respect to Fresenius and Sealed Air and their role in the fraudulent conveyance litigation and the impact on these tax settlement issues, which also involved Sealed Air and Fresenius.