**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF CASNER & EDWARDS, LLP**
**FOR THE SIXTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Fee Application of Casner & Edwards, LLP for the Sixth Interim Period (the "Applicant").

**BACKGROUND**

1.  Casner & Edwards, LLP ("Casner) was retained as special litigation counsel to the Debtors. In the Application, Casner seeks approval of fees totaling $168,755.00 and costs totaling $37,247.96 for its services from July 1, 2002, through September 30, 2002.

2.  In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States

Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Casner an initial report based on our review, and received a response from Casner, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.  In our initial report, we noted that the time entries were generally adequately detailed and devoid of lumping, except for the occasional lumped entry by MTM. Rule 2016-2(d) of the Delaware Local Rules states "activity descriptions . . . shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary . . ." This issue has been raised in previous reports, and we have advised certain professionals to provide more detailed time entries. We asked that Casner continue to advise all of its professionals regarding this matter and Casner stated that it would do so.

### Specific Time and Expense Entries

4.  In our initial report, we noted that the bulk of the fee application's time and expense remains devoted to a large-scale document production. We also noted that the majority of time billed to this project continues to be paralegal time rather than attorney time. While we are in accord with this as appropriate use of personnel, we note that as a part of Casner's response to questions in the Fifth Interim Report, it was stated that the deadline to complete the review of documents had slipped into July 2002. "...Initially the deadline was the end of May but because of the volume of documents to be reviewed, the deadline slipped into the first few days of July 2002..." We noted that the document review process continued through the end of September 2002. Thus we asked Casner to explain why it was necessary to extend the deadline of this document review. Casner's response

is provided in Response Exhibit 1. We believe we understand Casner's response and thus have no objection to these fees.

     5.    While we agreed that most of the staffing was appropriate and cost-effective with regard to this project, we noted that professional MTM($180) spent 155.40 hours for a total expense to the estate of $27,972.00 working on this document review, under the single heading of, "Work on wind up of document review at Winthrop Square." The U.S. Trustee Guidelines Rule, I.E. states "[i]n evaluating fees for professional services, it is relevant to consider . . .whether the services were necessary to the administration of, or beneficial towards the completion of, the case at the time they were rendered". In the previous interim period we accepted Casner's explanation of MTM's duties. However, in light of the extension of the document review and the continuing lack of detail contained in his time entries, we again asked for a more detailed explanation of Mr. Murphy's time entries as they relate to the document review. Casner's response is provided in Response Exhibit 2. We appreciate Casner's explanation and have no objection to these fees.

     6.    In our initial report, we noted that on September 26, 2002 RAM($210) and MTM($180) attended the same meeting. The time spent was 7.9 hours for a total of $1,545.00. The time entries are provided below.

| Date | Prof. | Hours | Amount | Description |
|---|---|---|---|---|
| 09/26/02 | RAM | 5.10 | $1,071.00 | ...meet with Holme Roberts attorney, MTM, F. Sankale and D. Croce to prepare latter two for their depositions (4.1)... |
| 09/26/02 | MTM | 5.00 | $ 909.00 | ...Meeting with F. Sankale, D. Croce, RAM and Holme Roberts attorney at Grace in Cambridge re: preparation for depositions tomorrow (3.8)... |

The Guidelines, Rule, II.D.5. states ". . .[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." The

fee detail does not provide the reason for two professionals attending the same meeting, nor does it explain each professional's role. Thus we asked Casner to explain the necessity for both professionals' attendance as well as their individual roles at this meeting. Casner responded as follows:

> The EPA issued deposition notices to two Grace employees who were believed to have been involved in an inadvertent destruction of documents at Grace's facility in Cambridge. MTM conducted the initial investigation of the inadvertent box destruction in August of 2000. He interviewed Mr. Croce and Mr. Sankale and had spoken with a number of people whose documents had been lost to determine the potential relevance, if any, of such records to the EPA/class action issues and/or if any of the destroyed documents could be found in other files. Therefore, MTM was present at the meeting on September 26, 2002 because of his knowledge of the facts which made for a more thorough discussion of the issue. RAM was present because he was assigned the responsibility of defending the depositions which took place at the U.S. Attorney's office in Boston. RAM took the lead in preparing the two employees for their depositions. Neither employee had given a deposition before. The Holme Roberts attorney (Mr. Lund) was present because he was in the East on other business, was the lead counsel in the case for which the depositions were being taken, and would defend the testimony of the two witnesses at trial if they were to testify. Mr. Lund was able to offer perspective on the underlying litigation.

We accept Casner's explanation and thus have no objection to these fees.

## CONCLUSION

7.     Thus we recommend approval of fees totaling $168,755.00 and expenses totaling $37,247.96, for Casner's services from July 1, 2002, through September 30, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
    Warren H. Smith
    Texas State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas 75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 5th day of February, 2003.

_____
Warren H. Smith

## SERVICE LIST

Notice Parties

**The Applicant**

Robert A. Murphy
CASNER & EDWARDS, LLP
303 Congress Street, 2nd Floor
Boston, MA 02210

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Response Exhibit 1

The basic document review did end by July 2002. Please note the many fewer timekeepers working on document related issues during the Sixth Interim Period as compared with the number in earlier periods. The tasks that MTM and the three paralegals have been performing since June relate, in general, to responding to document requests in the ZAI Science Trial, reviewing newly found documents, locating documents about specific persons or issues as requested by in-house or trial counsel, and organizing and accounting for the many thousands of documents that were reviewed and/or scanned. More specifically:

a.  Almost all of EKL's and GRB's time were devoted to (and noted as) wind up activities i.e., organize boxes of documents per source of origin, prepare comprehensive lists of all boxes sent to Winthrop Square during the review to confirm they were reviewed, quality control documents at Winthrop Square to identify any that were not scanned, return boxes to appropriate areas in Cambridge, and prepare an inventory of boxes of documents at Cambridge. In August, we discovered a few boxes which should have been scanned and were not so they were "resheeted" and sent to scanners but the temporary paralegals didn't make specific reference to this in their time entries.

b.  EKL spent some time in September preparing an inventory of library materials. He was either preparing a list of items saved from prior year's library reviews or, where more efficient, making copies of title pages. This project was put off until after the basic document review/scanning was complete due to its relatively low priority and expectation that little, if any, of the library materials would be responsive to EPA or ZAI requests.

c.  In late September, we discovered the 9 "new" boxes among the vermiculite samples in Cambridge but the actual review of the same did not start until November.

Response Exhibit 2

MTM's general responsibilities concerning the document review have been discussed in previous responses to questions of the Fee Auditor, but with respect to his work during the Sixth Interim Period, the following is provided. In addition to the several thousand boxes of documents reviewed from the two "Dead Storage" locations in Grace's Construction Products Division Headquarters in Cambridge, there were approximately 2,300 additional boxes of reviewed materials which Grace intends to maintain indefinitely in two separate locations - the Boston Repository at Winthrop Square and a room in the basement of CPD Headquarters in Cambridge. These 2,300 boxes came from nine separate sources over the course of two and one-half years. In addition, two categories of material totaling several hundred boxes had been reorganized during various phases of the review with portions of these collections being sent to Grace's outside counsel in Denver or for permanent storage in Libby, Montana. Given that Casner & Edwards expects to reduce its paralegal support staff on Grace related work to no more than one permanent position in the near future, it was imperative that these 2,300 boxes be accurately organized and inventoried to ensure efficient and timely retrieval of the materials in these two locations should the need arise.

The actual work performed by MTM and the estimate of time he spent on such work follow. MTM created and reviewed numerous inventories for the various categories of documents at Winthrop Square and Cambridge, as well as cross-checked the inventories of boxes presently in such locations against lists of boxes received over the course of the 26 month review (40 hours). This process included reviewing files regarding several of these categories of boxes which had been initially received as much as five years before the start of the EPA/Class Action review and which categories had been produced and reorganized in connection with earlier litigation prior to the recently completed review (15 hours). The creation and review of the above mentioned inventories invariably resulted in questions about specific boxes or documents which required numerous telephone calls and emails to individuals at Grace, Holme Roberts & Owen and the scanning vendor to resolve such questions (20 hours). In some cases, this reconciliation process (comparing boxes received to boxes currently stored at the two locations) was made more complex due to the fact that portions of certain categories of documents had been sent to Holme Roberts and Libby, Montana, and small portions of which had been returned later to Winthrop Square over the course of the review. In addition, approximately 50-75 boxes from two separate sources had been emptied of their original contents during the early days of the review when documents responsive to the various class action and EPA requests were physically removed from their original boxes and placed in consolidated production boxes. All such "emptied" boxes had to be accounted for and their contents traced to the new "consolidated" boxes (15 hours).

At the end of the review in July 2002, there were approximately 50-60 boxes out of 5,000-6,000 (or 1%) where the original source of origin information had been lost. The process of determining the original source of such boxes (and therefore where to return same) involved the review of the contents of such boxes, coordination among all three firms involved in the review, as well as extensive review of the various check lists and indices created during the course of the review (30 hours). MTM also assisted Grace's outside scanning vendor in locating and reviewing the contents

of between 40-50 boxes of documents for which the scanner needed additional information to complete the project (20 hours).

Finally, MTM coordinated with Holme, Roberts and individuals at Grace in Cambridge regarding the shipment of approximately 2,500 boxes from one of two Dead Storage areas in Cambridge to an independent off-site storage facility. This move required the creation of a new database to link the old dead storage location information with the new off-site storage identification numbers so that Grace could track and locate boxes now stored offsite using the box numbering system employed during the review (15 hours).