**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF BILZIN SUMBERG DUNN BAENA**
**PRICE & AXELROD LLP FOR THE SIXTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Fee Application of Bilzin Sumberg Dunn Baena Price & Axelrod LLP for the Sixth Interim Period.

**BACKGROUND**

1.  Bilzin Sumberg Dunn Baena Price & Axelrod LLP ("Bilzin Sumberg") was retained as counsel to the official committee of asbestos property damage claimants. In the Application, Bilzin Sumberg seeks approval of fees totaling $96,284.50 and costs totaling $22,219.43 for its services from July 1, 2002, through September 30, 2002.

2.  In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30,

1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Bilzin Sumberg an initial report based on our review, and received a response from Bilzin Sumberg, portions of which are quoted herein.

## DISCUSSION

### General Issues

3. In our initial report, we noted that the Application was generally adequately detailed and devoid of lumping, with the exception of an occasional lumped entry by professional ADL. The Guidelines Rule, II.D.5. provides that "[s]ervices should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry". We asked that Bilzin Sumberg advise this professional to avoid lumped time entries in the future and Bilzin Sumberg stated that it would do so.

### Specific Time and Expense Entries

4. We noted that on two separate occasions multiple professionals spent a total of 40.40 hours for a total expense to the bankruptcy estate of $13,874.50 preparing for, traveling to, and attending the same hearings. These entries are provided in Exhibit A attached hereto. Local Rule 2016-2(d)(ix) states that "[t]he activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role." Paragraph II.D.5. of the Guidelines states that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." We asked Bilzin Sumberg to review Exhibit A and explain why it was necessary for more than one

professional to attend each of the hearings listed. Bilzin Sumberg's response is provided in Response Exhibit 1. We believe we understand Bilzin Sumberg's explanation regarding these two hearings and thus we have no objection to these fees.

5. In our initial report, we noted that on three separate occasions, multiple professionals spent a total of 7.3 hours for a total expense to the bankruptcy estate of $2,177.00 participating in the same conference call. These entries are provided in Exhibit B attached hereto. Paragraph II.D.5. of the Guidelines provides that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." Neither the time entries nor the narrative portion of the Application provide the reason for multiple professionals to participate in these phone conferences nor do they explain each professional's role. Thus we asked Bilzin Sumberg to review Exhibit B and for each of the conferences listed, explain the need for multiple professionals as well as each professional's role. Bilzin Sumberg's response is provided in Response Exhibit 2. We accept Bilzin Sumberg's explanation and thus have no objection to these fees.

6. We noted that professionals NP ($85) and MW ($85) spent a total of 11.20 hours for a total expense to the bankruptcy estate of $947.00 performing tasks which could be considered non-reimbursable overhead. These entries are provided below.

| Date | Prof. | Hours | Amount | Description |
|---|---|---|---|---|
| 08/01/02 | NP | 0.20 | 17.00 | Download and print copy of docket for Jay Sakalo (.20) |
| 08/02/02 | NP | 0.20 | 17.00 | Download and print copy of docket for Jay Sakalo(.20) |
| 09/03/02 | NP | 0.20 | 17.00 | Download and print copy of docket for Jay Sakalo(.20) |
| 09/04/02 | NP | 0.20 | 17.00 | Download and print copy of docket for Jay Sakalo(.20) |
| 09/05/02 | NP | 0.20 | 17.00 | Download and print copy of docket for |

**FEE AUDITOR'S FINAL REPORT** - Page 3
 wrg FR Bilzin 6int 7-9.02.wpd

| | | | | |
|---|---|---|---|---|
| | | | | Jay Sakalo(.20) |
| 09/06/02 | NP | 0.20 | 17.00 | Download and print copy of docket for Jay Sakalo(.20) |
| 09/09/02 | NP | 0.20 | 17.00 | Download and print copy of docket for Jay Sakalo(.20) |
| 09/10/02 | NP | 0.20 | 17.00 | Download and print copy of docket for Jay Sakalo(.20) |
| 09/11/02 | NP | 0.20 | 17.00 | Download and print copy of docket for Jay Sakalo(.20) |
| 09/12/02 | NP | 0.20 | 17.00 | Download and print copy of docket for Jay Sakalo(.20) |
| 09/13/02 | NP | 0.20 | 17.00 | Download and print copy of docket for Jay Sakalo(.20) |
| 09/09/02 | MW | 2.00 | 170.00 | Print and sort/organize new claim forms. |
| 09/12/02 | MW | 1.50 | 127.50 | Print and organize new property damage claim forms. |
| 09/19/02 | MW | 1.00 | 85.00 | Print and sort new property damage claim forms. |
| 09/17/02 | MW | 3.30 | 280.50 | Retrieve daily docket and save/print relevant documents for hearing notebooks. |

Paragraph II. E. 7. of the Guidelines states that "[f]actors relevant to a determination that the expense is proper include the following: . . Whether the expenses appear to be in the nature of nonreimbursable overhead . . . Overhead includes word processing, proofreading, secretarial and other clerical services, . . ." We asked Bilzin Sumberg to explain why these activities should not be considered non-reimbursable overhead. Bilzin Sumberg responded as follows:

> The entries in this paragraph relate to an ongoing project that Bilzin has conducted since the first week this case was filed. Due to the inter-relationship between this case and many of the other asbestos-related bankruptcies pending in Delaware and other jurisdictions, it is of utmost importance that Bilzin and the Committee stay abreast of all developments in the other cases to determine their potential application or impact on this case. Thus, Bilzin has assigned its project assistants -- the lowest billed paraprofessionals on Bilzin's staff -- the task of retrieving the dockets from all of the pending asbestos-related cases on a daily basis to determine if there have been any filings in those cases that could impact this case. Bilzin submits that this

>ongoing project far exceeds what is generally considered "non-reimbursable overhead," and is fact, a unique and necessary facet of Bilzin's representation of the Committee that requires staffing by a paraprofessional.

We believe we understand Bilzin Sumberg's response regarding the importance and ongoing nature of this project, and we appreciate that Bilzen Sumberg assigned these tasks to its lowest-billing paraprofessionals. Thus, we have no objection to these fees.

7. In our initial report, we noted that Bilzin Sumberg seeks reimbursement in the amount of $301.12 for meal expenses, the descriptions for which fail to provide detail sufficient to properly analyze the same.

| | | |
|---|---|---|
| 07/23/02 | Meals MIAMI CITY CLUB; INVOICE#: MAM-07/31/02 DATE: 7/31/02 | 77.99 |
| 07/24/02 | Meals MIAMI CITY CLUB; INVOICE#:RMD-07/31/02; DATE: 7/31/02 | 64.51 |
| 07/26/02 | Meals MIAMI CITY CLUB; INVOICE#: RMD-07/31/02; DATE:7/31/02 | 70.23 |
| 08/08/02 | Meals SCOTT L. BAENA; INVOICE#: SLB-08/08/02; DATE: 8/8/02 - Client - 15537 | 40.00 |
| 08/22/02 | MealsVENDOR; MIAMI CITY CLUB; INVOICE# RMD-08/31/02; DATE: 8/31/02 - Acct.#000693 | 48.39 |

Paragraph II.E.7. of the Guidelines states, "[f]actors relevant to a determination that the expense is proper include the following: Whether the expense is reasonable and economical. For example, first class and other luxurious travel mode or accommodations will normally be objectionable." Without further explanation, these amounts seemed excessive. For each of the meal expenses listed, we asked Bilzin Sumberg to provide the number of meals included in the amount requested. Bilzin Sumberg responded as follows:

>The Fee Auditor has requested more detail regarding the number of meals in certain of the meal reimbursements sought during the Application period. In order, the July 23, 2002 reimbursement was for 5 people, the July 24, 2002 reimbursement was for 4 people, the July 26, 2002 reimbursement was for 5 people, the August 8, 2002

reimbursement was for 2 people and the August 22, 2002 reimbursement was for 3 people.

We appreciate the additional information and have no objection to these expenses.

## CONCLUSION

8.  Thus we recommend approval of fees totaling $96,284.50 and costs totaling $22,219.43 for Bilzin Sumberg's services from July 1, 2002, through September 30, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
Warren H. Smith
Texas State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas 75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 6th day of February, 2003.

_____
Warren H. Smith

## SERVICE LIST

Notice Parties

**The Applicant**

Scott L. Baena
Jay M. Sakalo
BILZIN SUMBERG DUNN BAENA
PRICE & AXELROD LLP
2500 First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2385

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

EXHIBIT A

- On July 21-22, 2002, JMS ($235), and SLB ($450) prepared for, traveled to, and participated in an omnibus hearing. The total time spent was 20.70 hours for $7,116.50.

| Date | Atty | Hours | Amount | Description |
|---|---|---|---|---|
| 07/21/02 | SLB | 1.20 | 540.00 | Travel to Wilmington [time not billed for work en route] (2.40). |
| 07/21/02 | SLB | 3.00 | 1,350.00 | Travel to Wilmington [work en route preparing for contested matters to be heard on 7/22/02] (3.0). |
| 07/21/02 | JMS | 3.10 | 728.50 | Prepare for omnibus hearing, including review of all matters scheduled on agenda, discussions with committee members (3.1). |
| 07/22/02 | SLB | 1.50 | 675.00 | Conference with D. Scott, E. Westbrook, T. Sobol, E. Cabraser and J. Sakalo regarding matters to be heard at 7/22 hearing (1.5). |
| 07/22/02 | JMS | 1.50 | 325.50 | Conference with D. Scott, B Westbrook, T. Sobol, E. Cabrases, S. Baena regarding matters to be heard at 7/22 hearing (1.5). |
| 07/22/02 | SLB | 2.40 | 1,080.00 | Hearing on various motions [S. Baena argued motion to clarify and ZAI issues] (2.4). |
| 07/22/02 | JMS | 4.00 | 940.00 | Prepare for and attend omnibus hearing on various motions (J. Sakalo argues KERP motion ) (4.0) |
| 07/22/02 | SLB | 2.50 | 1,125.00 | Return to Miami (5.0). |
| 07/22/02 | JMS | 1.50 | 352.50 | Return travel to Miami (3.0). |

- On August 24-26, 2002, SLB ($450) and JMS ($235) prepared for, traveled to, and attended a hearing. The total time spent was 19.70 hours for $6,758.

| Date | Atty | Hours | Amount | Description |
|---|---|---|---|---|
| 08/24/02 | JMS | 0.30 | 70.50 | Prepare for and organize files for omnibus hearing (.3). |
| 08/25/02 | SLB | 1.60 | 720.00 | Travel to Wilmington [non-working portion of trip] (3.2). |
| 08/25/02 | JMS | 1.50 | 352.50 | Travel to Wilmington (3.0). |
| 08/25/02 | JMS | 2.00 | 470.00 | Prepare for 8/26 omnibus hearing en route to Wilmington (2.0). |
| 08/25/02 | SLB | 1.30 | 585.00 | Prepare for August 26th hearing (1.3). |

| Date | Initials | Hours | Amount | Description |
|---|---|---|---|---|
| 08/26/02 | SLB | 1.00 | 450.00 | Pre-hearing meeting with D. Scott and J. Sakalo, later joined by E. Westbrook and R. Turkewitz regarding hearing agenda and ZAI litigation (1.0). |
| 08/26/02 | SLB | 3.00 | 1,350.00 | Attend Omnibus Hearing (3.0). |
| 08/26/02 | JMS | 6.00 | 1,410.00 | Prepare for and attend omnibus hearing including pre-hearing meeting with D. Scott, R. Turkewitz & E. Westbrook (6.0). |
| 08/26/02 | SLB | 3.00 | 1,350.00 | Return to Miami (6.0). |

EXHIBIT B

- On July 11, 2002, JMS ($235), MPC ($350) and BG ($140) prepared for and participated in a committee call. The total time spent was 2.80 hours for $687.50.

| Date | Initials | Hours | Amount | Description |
|---|---|---|---|---|
| 07/11/02 | JMS | 0.90 | 211.50 | Prepare for committee call and participate in same (.9). |
| 07/11/02 | MPC | 1.00 | 350.00 | Prepared for and participated with PD Committee conference call. |
| 07/11/02 | BG | 0.90 | 126.00 | W.R. Grace Weekly Meeting |

- On July 3, 2002, SLB ($450), JMS ($235) and MPC ($350) participated in two telephone conference calls regarding ZAI science trial. The total time spent was 4.50 hours for $1,489.50.

| Date | Initials | Hours | Amount | Description |
|---|---|---|---|---|
| 07/03/02 | SLB | 2.20 | 990.00 | Telephone conference with D. Bernick, D. Siegel, J. Baer, J. Restivo, T. Sobol, D. Scott, J. Sakalo, M. Coghavin regarding ZAI science trial (.8); telephone conference with D. Scott, T. Sobol, J. Sakalo and M. Coghavin regarding response to objections in ZAI science trial (.3);... |
| 07/03/02 | JMS | 2.80 | 658.00 | Telephone conference with S. Baena, M. Coglianese, D. Bernick, T. Sobol, D. Scott regarding discussion of budget, scope and counsel selection for ZAI science trial (.8);...; telephone conference with S. Baena, D. Scott, T. Sobol regarding follow-up discussion, strategy (.9);... |
| 07/03/02 | MPC | 0.80 | 280.00 | Telephone conference with D. Bernick, D. Scott and T. Sobol regarding scope of Zonolite "science trial". |
| 07/03/02 | MPC | 0.90 | 315.00 | Telephone conference with D. Scott and T. Sobol regarding Zonolite science trial. |

Response Exhibit 1

The Fee Auditor has asked for an explanation why there were multiple attendees at the hearings listed on Exhibit A to the Report. The time entries included in the first bullet point of Exhibit A all relate to the omnibus hearing held on July 22, 2002 in Wilmington, Delaware. The agenda for that hearing principally revolved around three subject matters – (i) Zonolite Attic Insulation ("ZAI"), (ii) the Committee's motion to clarify the Bar Date Order and (iii) the Debtors' motion to revise their key employee compensation programs.

Given the importance of these matters, many of the Committee members were in Delaware to attend the hearing. Thus, Messrs. Baena and Sakalo used the opportunity to conduct a face-to-face meeting with the Committee members present for the hearing. Recognizing the need to maintain client confidences, the Committee discussed all pending matters in the case, as well as strategy on a going forward basis.

As for the hearing itself, as indicated on the time sheets, Mr. Baena argued all issues related to the ZAI litigation, including the selection of special counsel to represent ZAI claimants in a science trial, and all issues related to the Committee's motion to clarify certain aspects of the Bar Date Order. Mr. Baena was the attorney responsible for drafting the Committee's position papers on these two matters. Thus, it was necessary to have him available to present the Committee's argument.

Similarly, Mr. Sakalo was responsible for drafting the Committee's response to the Debtors' motion to amend its key employee retention motion. Mr. Sakalo discussed the empirical data with the Committee's financial advisors and was also responsible for determining the position of the other committees in this case. Thus, it was necessary to have Mr. Sakalo argue the Committee's objection to the Debtors' motion to revise their key employee compensation programs.

With respect to the time entries included in the second bullet point of Exhibit A, at the July 22, 2002 omnibus hearing, oral argument on the ZAI science trial and the Debtors' motion to revise their key employee compensation programs was not concluded by the end of the hearing and was continued until the August 26, 2002 hearing. Thus, both Mr. Baena and Mr. Sakalo needed to be in attendance at the August 26, 2002 hearing to conclude their arguments on the matters for which they were responsible.

Response Exhibit 2

With respect to the July 11, 2002 conference call, Mr. Sakalo, Matthew Coglianese, an environmental law partner at Bilzin, and Brian Greenspoon, a law clerk, all participated in the regularly scheduled weekly Committee conference call. As the Fee Auditor is aware, Mr. Sakalo is one of the two primary insolvency lawyers (along with Mr. Baena) involved in representing the Committee on a day-to-day basis. Thus, he was responsible for leading the conference call and addressing all pending matters with the Committee. Mr. Coglianese participated in the call to address the ZAI issues pending before the Committee. There is a continual overlap on ZAI issues between bankruptcy and environmental issues. Thus, it was necessary for the Committee to have present a resource that it could utilize to address non-bankruptcy questions regarding ZAI. Mr. Greenspoon's role was to take the minutes of the meeting. Ordinarily, this is a task that Mr. Sakalo handles when he conducts the calls with Mr. Baena. However, in this instance, because Mr. Baena was unavailable to participate in the call, it was necessary to have someone present to take the minutes of the meeting. Bilzin believes it is entirely appropriate to have assigned that task to a law clerk.

With respect to the July 3, 2002 conference calls attended by Messrs. Baena, Sakalo and Coglianese, it was necessary to have all three attorneys on the calls. The first call between certain members of the Committee and the Debtors was an attempt to reach an agreement on the contours of the ZAI science trial that had been discussed at the two prior omnibus hearings. Mr. Baena addressed the bankruptcy issues involved in the proposed science trial. Mr. Coglianese addressed the scientific/environmental issues concerning the proposed science trial. Lastly, Mr. Sakalo addressed the procedural history relating to the objections filed by certain ZAI claimants to the proofs of claim filed by the Debtors on such claimants' behalf – an issue that was one of the driving forces behind the science trial.

The second call on that day was between the Committee and Messrs. Baena, Sakalo and Coglianese to discuss the call with the Debtors and to further refine the Committee's strategy for the then scheduled July 22, 2002 omnibus hearing. Each attorney's role was similar to that set out in the prior paragraph.