# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## FEE APPLICATION OF HOLME ROBERTS & OWEN, LLP
## <u>FOR THE SIXTH INTERIM PERIOD</u>

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Interim Fee Application of Holme Roberts & Owen, LLP for the Sixth Interim Period</u>.

## BACKGROUND

1.     Holme Roberts & Owen, LLP ("HRO") was retained as special environmental counsel to the Debtors.  In the Application, HRO seeks approval of fees totaling $2,050,039.75 and costs totaling $121,621.87 for its services from July 1, 2002 through September 30, 2002.

2.     In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States

Bankruptcy Court for the District of Delaware, the United States District Court for the District of

Delaware, and the Third Circuit Court of Appeals.  We served on HRO an initial report based on our

review and received a response from HRO, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.      In our initial report, we noted that timekeeper KJC often fails to provide adequate

detail and continues to occasionally lump her time entries.  Rule 2016-2(d) of the Delaware Local

Rules states "activity descriptions . . . shall be sufficiently detailed to allow the Court to determine

whether all the time, or any portion thereof, is actual, reasonable, and necessary . . ."   Rule 2016-

2(d)(vii) requires that "[a]ctivity descriptions shall not be lumped - each activity shall have a separate

description and a time allotment."  These issues have been raised in earlier reports.  We asked HRO

to advise this professional to provide more detail and to avoid lumping in her time entries and HRO

stated that it has done so.

### Specific Time and Expense Entries

4.      We noted that on July 24, 2002, timekeepers CGH ($250), KWL ($350) and KJC

($275) participated in a telephone conference.  The total time spent including preparation time was

2.70 hours for a total of $787.50.  The conference details are provided below.

| 07/24/02 | CGH | 3.50 | 875.00 | ......; telephone strategy conference with Kirkland & Ellis attorney (.90). |
| 07/24/02 | KWL | 5.00 | 1,750.00 | .......; telephone conference with Mark Grummer re Paul Peronard's fraudulent conveyance deposition (.90);...... |
| 07/24/02 | KJC | 3.50 | 962.50 | ........; telephone conference with M. Grummer re fraudulent conveyance (0.90);....... |

According to Local Rule 2016-2(d)(ix), "[t]he activity descriptions shall individually identify all

meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role."   The matter of multiple professionals is also addressed in the Guidelines, Paragraph II.D.5.:  "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."   The fee detail does not provide the reason multiple professionals were needed  for this conference call,  nor does it explain each professional's role.    Thus we requested HRO to explain why multiple professionals were needed on this call.   HRO's response is provided below:

> In response, HRO states that the telephone conference on July 24, 2002 concerned the then pending deposition of Paul Peronard.  Mr. Peronard was the On Scene Coordinator for EPA at the Libby Asbestos Site from late 1999 through the end of 2002.  Mr. Peronard's testimony was anticipated to be the primary basis for EPA's cost recovery action against the Debtor W.R.  Grace.  Mr. Peronard had also been identified by the United States as the witness on which it would base its case in the "fraudulent conveyance" action brought via an adversary proceeding in this case.  In scheduling the depositions of Mr. Peronard, the United States demanded that W.R. Grace's counsel coordinate efforts such that the later scheduled deposition would not cover the same questions and material as addressed in the earlier deposition; this approach was also the most efficient since the parties agreed to allow use of the transcript from either case in both the Libby Asbestos Site litigation and the fraudulent conveyance case trials.
>
> Mark Grummer, with Kirkland & Ellis, was the attorney primarily responsible for preparing for the deposition of Mr. Peronard in the fraudulent conveyance action. With respect to the July 24, 2002 telephone conference, Colin Harris (CGH) was assigned the responsibility of preparing the outline for deposing Mr. Peronard in the Libby cost recovery action, which was scheduled to take place within a few months of the first Peronard deposition.   Katheryn Coggon (KJC) was assigned the responsibility of managing the Libby cost recovery case generally and was the person on the HRO trial team with the most substantive knowledge about the EPA activities in Libby, such that her participation in the call was both necessary and appropriate. It was and is Ms. Coggon's role to both ensure that the attorneys with primary responsibility for the depositions were fully informed of all related issues and lines of questioning to be pursued as well as to relate information gleaned from the depositions back to other aspects of the cost recovery case.  Ken Lund (KWL) was and is the partner in charge of the W.R. Grace matters for HRO.  Mr. Lund is responsible for informing the client of all progress and issues relating to the cost recovery case and has additional substantive knowledge regarding EPA's activities

in Libby. Mr. Lund's participation in the conference call regarding Peronard's deposition was necessary in order for him to meet his obligations to the client and was beneficial because he brought a broader strategy perspective to the discussions. Accordingly, HRO believes that each professional participating in the July 24, 2002 telephone conference played a separate, distinct and necessary role in coordinating duties and strategy with respect to the Peronard deposition and that all timekeepers time should be allowed and compensated as set forth in the Application.

We accept HRO's explanation and thus have no objection to these fees.

5.     In our initial report, we noted that multiple professionals from the applicant's firm jointly participated in meetings and depositions on ten different occasions for a combined total of 195.50 hours and $58,394.00 in fees. See Exhibit A. According to Local Rule 2016-2(d)(ix), "[t]he activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role." The matter of multiple professionals is also addressed in the Guidelines, Paragraph II.D.5.: "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." The fee detail does not provide the reason for multiple professionals at these meetings, nor does it explain each professional's role. We asked HRO to review Exhibit A and explain the need for multiple professionals at the meetings and depositions. HRO's response is provided in Response Exhibit 1. We appreciate the depth of HRO's response and thus have no objection to these fees.

6.     We noted that on September 12, 2002, LB ($400), JLS ($125) and KAT ($185) prepared for and attended the deposition of Chris Weis for a total of 206.50 hours and $48,250.00. See Exhibit B. According to Local Rule 2016-2(d)(ix), "...[t]he activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role." The matter of multiple professionals is also addressed in the

Guidelines, Paragraph II.D.5.:  "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  The fee detail does not provide the reason for multiple professionals at this deposition, nor does it explain each professional's role.   We requested that HRO explain why the presence of three professionals was necessary at the deposition.  HRO responded that paragraphs 6 and 7 are interrelated and provided one response.  HRO's response is provided as Response Exhibit 2.  We accept HRO's explanation and thus have no objection to these fees.

7.      We further noted that nine other HRO professionals spent 69.4 hours for a total of $11,085.50 working on preparation for the Weis deposition.  See Exhibit C.  With the exception of the research activities of  ICM ($110), most of this time appears to have been spent on document review or to be of a *de minimis* nature.  Total hours billed with respect to the deposition range from .40 hours billed by NKA to 25.0 hours billed by ICM.  According to the Guidelines, Paragraph I.E., "...[i]n evaluating fees for professional services, it is relevant to consider various factors including the following: the time spent; the rates charged; whether the services were necessary to the administration of, or beneficial towards the completion of, the case at the time they were rendered; whether services were performed within a reasonable time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed. . .."  Thus we asked HRO to examine Exhibit C, and explain how the activities of each professional who billed small blocks of time to the Weis deposition were necessary or ultimately beneficial to the estate.  Additionally, we requested HRO to explain the division of labor to assuage our concern that there may have been duplication of effort.  HRO's response is provided as Response Exhibit 2.  We accept HRO's explanation and thus have no objection to these fees.

8.    In our initial report, we noted that there were two time entries which contained miscalculations.  The time differences total .40 hours for an overcharge of $92.00.  The time entries are detailed below.

On September, 20, 2002, KWL ($350) has a time entry listed as 2.00 hours for $700.00.  The parentheticals only total 1.80 hours for a total of $630.00.  The difference is $70.00

| 09/20/02 | KWL 2.00 | 700.00 | Prepare for and conduct trial team meeting (1.80); conference with KJCoggon re case status and strategy (N/C). |

On September, 26, 2002, NKA ($110) has a time entry listed as 2.80 hours for $308.00.  The parentheticals only total 2.60 hours for a total of $286.00.  The difference is $22.00

| 09/26/02 | NKA 2.80 | 308.00 | Review, categorize and code documents produced by EPA for relevance to various case issues (.90); Supervise and manage temporary employees re document review and coding issues (1.00); Update cost recovery coding spreadsheet and check status of Stringer data and ADM2 series (.70). |

We asked HRO to advise us as to these apparent miscalculations, and HRO responded as follows:

HRO concedes that the time entries identified in Paragraph 8 of the Report contain errors.  The errors were the result of either typographical errors or addition errors.  HRO supplements its Application with the following explanation or amendment for the time entries identified in Paragraph 8 of the Report:

| Date | Tkpr | Explanation/Amendment | Adjustment to Fee Request |
|------|------|----------------------|---------------------------|
| 9/20/02 | KWL | Addition error.  Time billed should be 1.8 hours with a value of $630.00. | ($70.00) |
| 9/26/02 | NKA | Addition error.  Time billed should be 2.6 hours with a value of 286.00. | ($22.00) |
| | | **Total Adjustments** | (92.00) |

Accordingly, HRO agrees to a reduction of HRO's requested award for fees by $92.00.

We concur with HRO's response and thus recommend a reduction of $92.00 in fees.

9.    We noted that between September 9 and September 27, 2002, MCL ($125) and LCS ($85) spent 93.80 hours for a total of $11,165.00 recoding documents inadvertently scanned by Lason. This task may be considered non-reimbursable overhead as well as duplicative. See Exhibit D. Paragraph II.E.7. of the Guidelines provides that "[Overhead] consists of all continuous administrative or general costs incident to the operation of the applicant's office and not particularly attributable to an individual client or case. Overhead includes word processing, proofreading, secretarial and other clerical services...." Additionally, the U.S. Bankruptcy Code § 330 (4)(A)(i), states, "[t]he court shall not allow compensation for – (i) unnecessary duplication of services; . . ." We requested that HRO review Exhibit D and explain why this apparent mistake and the subsequent duplication of effort required to correct it should be charged to the estate. HRO's response is provided as Response Exhibit 3. We believe we understand HRO's explanation, and we concur that the activities in question should not be considered overhead. However, it appears that this work was primarily the coding of documents, which we believe is more appropriately performed by a data entry person, at $40.00 per hour, rather than by two paraprofessionals at $125.00 and $85.00 an hour. On the issue of adjusting rates downward for routine tasks, the Third Circuit seems fond, in the bankruptcy context, of quoting its opinion in Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir. 1983) that, " A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn". Thus, we recommend a reduction based on this work being performed at $40.00 per hour, for a reduction of $7,413.00 in fees.

10.    We noted in the Application that HRO seeks reimbursement in the amount of $850.99 for meal expenses incurred throughout the Application period by multiple professionals. The expense entries in question are provided below.

| | | |
|---|---|---|
| 06/27/02 | Other Meal Expenses: VENDOR: Charlotte L. Neitzel; INVOICE#: 6/27/02; DATE: 6/27/2002 - Denver, 6/24-6/25/02, Missoula, MT, Attend Center for Environmental Health Sciences Conference, Meals | 98.30 |
| 06/28/02 | Other Meal Expenses: VENDOR: Carla Latuda; INVOICE#: 06/28/02; DATE: 6/27/2002 - Denver, 6/25-6/27/02, Boston, MA, Document Review at Cambridge re: response to EPS's information requests, meals | 159.66 |
| 08/06/02 | Other Expense: VENDOR: Kenneth W. Lund; INVOICE#: 082602; DATE: 8/26/2002 - Attend meetings in Palo Alto to prepare for deposition of Julie Yang - Meals | 82.25 |
| 08/14/02 | Travel Expense: VENDOR: Kenneth W. Lund; INVOICE#: 091302A; DATE: 9/18/2002 - Travel expenses to Libby and Kalispell, Montana on August 13 and 14, 2002 to attend Libby mine tour with KJCoggon, David Siegel, Bill Corcoran and Betty Anderson/Meals | 233.81 |
| 08/22/02 | Travel Expense: VENDOR: Linnea Brown; INVOICE#: 082202; DATE: 8/22/2002 - Meeting with Elizabeth Anderson @ Geranio Ristorante | 57.76 |
| 08/27/02 | Other Meal Expense: VENDOR: Nancy's Catering & Bakery; INVOICE#: 43396; DATE: 8/27/2002 - Denver, Catering for August, 2002, Lunch, L. Brown | 48.40 |
| 08/27/02 | Other Meal Expense: VENDOR: Nancy's Catering & Bakery; INVOICE#: 43620; DATE: 9/11/2002 - Denver, Catering for September, 2002, Lunch, 9/11/02, Coggon | 40.33 |
| 09/12/02 | Other Meal Expense: VENDOR: Nancy's Catering & Bakery; INVOICE#: 43664; DATE: 9/12/2002 - Denver, Catering for September 2002, Lunch, 9/12/02, L. Brown | 43.48 |
| 09/23/02 | Other Expense: VENDOR: Katheryn J. Coggon; INVOICE#: 100202; DATE: 10/2/2002 - Lunch with W.R. Grace Expert, R. Bartlet for depo preparation on 09/923/02 @ Trinity Grille | 47.00 |
| 09/26/02 | Other Meal Expense: VENDOR: Charlotte L. Neitzel; INVOICE#: 09/26/02; DATE: 9/26/2002 - Denver, 9/26/02, Lunch During Harry Eschenbach Deposition | 40.00 |

While these types of expenses do not, in and of themselves, normally draw an objection, failure to

adequately detail the entries is inappropriate.  We note that in each of these entries the number of meals covered by the expense is not provided.  The Guidelines, Paragraph II.E. states that "[f]actors relevant to a determination that the expense is proper include the following:...3. Whether applicant has provided a detailed itemization of all expenses including the date incurred, description of expense (e.g., type of travel, type of fare, rate, destination),...".  We asked HRO to review each entry and provide the number of meals or per meal charge so that we might assess the reasonableness of these expenses.  HRO's response is provided as Response Exhibit 4.  We appreciate HRO's response and thus have no objection to these expenses.

11.    In our initial report, we noted in the Application that HRO seeks reimbursement in the amount of $6,041.01 for travel expenses which lack sufficient detail.  The entries in question are provided below.

| | | |
|---|---|---|
| 06/28/02 | Travel Expense: VENDOR: Carla Latuda; INVOICE#: 06/28/02; DATE: 6/28/2002 - Denver, 6/25-6/27/02, Boston, MA, Document Review at Cambridge re: response to EPS's information requests, travel expenses | 700.91 |
| 07/09/02 | Travel Expense: VENDOR: Doug Wall; INVOICE#: 7-9-02; DATE: 7/9/2002 - Denver, 5/19-5/31/02, Boston, Travel to conduct Document Review WR Grace, Travel Expenses | 2,701.81 |
| 08/14/02 | Travel Expense: VENDOR: Jay McCarthy; INVOICE#: 08/14/02 DATE: 8/14/2002 - Denver, 8/8-8/13/02, Atlanta, GA, To Take Depositions of S. Dearwent, J. Lybarger and D. Middleton, Travel Expenses | $1,003.20 |
| 08/21/02 | Travel Expense: VENDOR: Edward E. Stevenson; INVOICE#: 08/21/02; DATE: 8/21/2002 - Denver, 8/12-8/15/02, Boston, MA, Deposition of Timothy Wall (CDM), Travel Expenses | 678.17 |
| 08/28/02 | Travel Expense: VENDOR: Edward E. Stevenson; INVOICE #: 08/28/02; DATE: 8/28/2002 - Denver, 8/20-8/23/02, Washington DC, Deposition of Charles Young (FCC), Travel Expenses | 623.92 |

| 08/26/02 | Travel Expense: VENDOR: American Express Corp. Card; | 333.00 |
|---|---|---|
| | INVOICE#: 08/26/02; DATE: 8/26/2002 - Credit Card Charges for August, 2002 | |

While these types of expenses do not, in and of themselves, normally draw an objection, failure to adequately detail the entries is inappropriate.  The Guidelines, Paragraph II.E. states that "[f]actors relevant to a determination that the expense is proper include the following:...3. Whether applicant has provided a detailed itemization of all expenses including the date incurred, description of expense (e.g., type of travel, type of fare, rate, destination),...".  Thus we asked HRO to review the entries above and provide such detail as hotel rate, per meal expenses, and other specific information associated with these expenses so that we might assess the reasonableness of the charges.  HRO's response providing a breakdown of these expenses is set forth as Response Exhibit 5.  Two of those entries are cited here.

| 06/28/02 | Travel Expense:  Carla Latuda/Review at Cambridge re: response to EPS's information requests, travel expenses. | $700.91 |
|---|---|---|
| | **Hotel (2 nights)** | **$627.46** |
| | **Taxi/Tips** | **$44.00** |
| | **Personal Mileage (67 miles)** | **$24.45** |
| | **Subway Tokens** | **$5.00** |

HRO's response indicates a hotel charge of $313.13 per night.  We would suggest $275.00 per night as a more reasonable maximum rate.  Thus, we recommend a reduction of $77.46 in expenses.

| 08/26/02 | Travel Expense:  Brad Jacobson/American Express Corp.Card/Credit Card charges for August, 2002 | $333.00 |
|---|---|---|
| | **This expense was inadvertently charged to this matter and HRO agrees to a reduction of $333.00 in its expense reimbursement request.** | |

We appreciate HRO's response and thus recommend a reduction of $333.00 in expenses.

12.    We noted that HRO seeks reimbursement in the amount of $259.03 for three days of

rental car expense incurred by Katheryn J. Coggon on July 16-18, 2002.  The expense detail is shown

below.

07/18/02        Travel Expense: VENDOR: Katheryn J. Coggon; INVOICE#:        259.03
                061202B; DATE: 7/26/2002 - Travel expense 07/16-07/18/02 Libby,
                MT for site tour, meeting with client and experts - Auto Rental

Over $86.00 per day seems unusually high for auto rental unless there were special circumstances

involved.  We asked HRO to review the entry and provide any information that would support the

reasonableness of the rental expense.  HRO responded as follows:

> It was necessary to rent a vehicle that could accommodate seven (7) people, including
> two (2) HRO professionals and certain client representatives and expert witnesses.
> Accordingly, the rental car expense was slightly higher than would be required if a
> regular passenger car was needed and was the most cost-effective means of
> accommodating all seven (7) people.

We accept HRO's explanation and thus have no objection to this expense.

> 13.    We noted that on July 22, 2002 there is a translation services expense for $550.00.

We can find nothing in the fee detail that explains the purpose of or relates directly to the translation

expense.  The Guidelines, Paragraph II.E.3. states, ". . .Unusual items require more detailed

explanations. . ."  The entry is provided below.

07/22/02        Other Expenses: VENDOR: Herceglic, Angela; INVOICE#: 8/6/2002;        550.00
                date: 7/22/2002 - For translation services.  MFloyd

We asked HRO to provide an explanation regarding the need for the translation service.  HRO's

response is provided below:

> This cost was incurred due to the absolute need and necessity of obtaining an Italian
> article regarding asbestos-related diseases needed for the deposition of Dr. Hughson.
> This article was only available in Italian and, of course, needed to be translated to
> English for use at the deposition.  This expense was both necessary and proper in
> connection with the deposition of Dr. Hughson.

We accept HRO's explanation and thus have no objection to this expense.

14.    We noted in the Application that HRO seeks reimbursement in the amount of $58.62 for  Dialog Services - July 2002.  The entry is shown below.

08/05/02        Other Expense: VENDOR: Dialog Corporation, The; INVOICE#:        58.62
                28002316; DATE: 8/5/2002 - Dialog Services - July 2002

Thus we asked HRO to review the entry and provide sufficient detail to clearly demonstrate how the expense benefits the estate.  HRO responded as follows:

        Dialog Services is a library search service with a national database that was used to
        locate articles by and about the experts disclosed by the EPA.

We accept HRO's explanation and thus have no objection to this expense.

15.    In our initial report, we noted in the Application that HRO seeks reimbursement in the amount of $60.00 for a September 17, 2002 invoice from Michigan State University.  There is no explanation of the expense.  The expense entry is provided below:

09/17/02        Other Expense: VENDOR: Michigan State University; INVOICE#:        60.00
                12247; DATE: 9/17/2002 - Denver, Acct #HORO, —142185, —
                142183, M-142184

The Guidelines, Paragraph II.E. provides that "[f]actors relevant to a determination that the expense is proper include the following:...3. Whether applicant has provided a detailed itemization of all expenses including the date incurred, description of expense (e.g., type of travel, type of fare, rate, destination),...".  We asked HRO to review the entry and provide sufficient detail so that we might assess the reasonableness of the expenses incurred.  HRO's response is provided below:

        This is a Interlibrary loan charge from the Michigan State University for medical
        expert deposition preparations that were required in connection with the depositions
        discussed at length above.

We accept HRO's explanation and thus have no objection to this expense.

## CONCLUSION

16.    Thus we recommend approval of fees totaling $2,042,534.75 ($2,050,039.75 minus

$7,505.00) and costs totaling $121,211.41 ($121,621.87 minus $410.46), for HRO's services from

July 1, 2002 through September 30, 2002.


Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
      Warren H. Smith
      Texas State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 6th day of February 2003.

_____
Warren H. Smith

**SERVICE LIST**
Notice Parties

**The Applicant**
Elizabeth K. Flaagan, Esq.
HOLME ROBERTS & OWEN, LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203


**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044


**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705


**Counsel for the Official Committee of
Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of
Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price &
Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899


**Counsel to the Official Committee of
Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801


**Official Committee of Equity Holders**
Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

## United States Trustee

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

EXHIBIT A

The meetings and depositions in which two or more professionals participated are

detailed  below.

1.　　On July 29, 2002, CGH, KWL and KJC attended a meeting.  The total time spent including preparation time was 24.00 hours for a total of $7,187.50.

| | | | | |
|---|---|---|---|---|
| 07/29/02 | CGH | (Fraudulent Conveyance)  Prepare for meeting with K&E team, Skadden Arps, client, and HRO team re Peronard deposition and trial strategy (3.50); meeting re same (3.00). | 6.50 | 1,625.00 |
| 07/29/02 | KWL | (Fraudulent Conveyance)  Prepare for meeting with David Bernick (Kirkland & Ellis) and Don Frost (Skadden Arps) re fraudulent conveyance matters (3.00); meeting with David Bernick, Don Frost, M. Grummer and R. Finke re fraudulent conveyance case status and strategy (7.00). | 10.00 | 3,500.00 |
| 07/29/02 | KJC | (Fraudulent Conveyance)  Conference with M. Grummer, D. Bernick, D. Frost, KWLund, and R. Finke re fraudulent conveyance themes, strategies, and depositions (7.5);.......... | 8.00 | 2,200.00 |

2.　　On July 1, 2002, four (4) professionals attended a meeting.  The total time spent including preparation time was 31.20 hours for a total of $9,482.50.

| | | | | |
|---|---|---|---|---|
| 07/01/02 | KWL | Prepare for meeting with clients and experts re case status and strategy (5.00); conduct portion of meeting with client and experts re case status and strategy (5.00). | 10.00 | 3,500.00 |
| 07/01/02 | JDM | .............; attend portion of meeting with client and cost experts (4.4). | 9.50 | 2,850.00 |
| 07/01/02 | KJC | Meeting with D. Siegel, W. Corcoran, R. Emmett, R. Finke, various experts and team re progress and strategies (7.70); conference with KWLund and JDMcCarthy re preparation for strategy meeting (0.60). | 8.30 | 2,282.50 |

| 07/01/02 | EES | Prepare for case strategy meeting (3.60); attend portion of case strategy meeting with Grace attorneys and various experts (4.90);....... | 10.40 | 2,912.00 |

3.  On July 2, 2002, four (4) professionals attended a meeting. The total time spent including preparation time was 24.60 hours for a total of $7,676.50.

| 07/02/02 | KWL | Prepare for meeting with clients and experts re case status and strategy (2.90); conduct meeting with client and experts re case status and strategy (7.10). | 10.00 | 3,500.00 |

| 07/02/02 | JDM | Meet with client and experts (6.2);........... | 8.10 | 2,430.00 |

| 07/02/02 | KJC | Meeting with D. Siegel, W. Corcoran, R. Emmett, R. Finke, various experts and team re progress and strategies (7.10);......... | 8.50 | 2,337.50 |

| 07/02/02 | EES | ...........; attend portions of case strategy meeting with cost experts (1.30);.............. | 7.50 | 2,100.00 |

4.  On July 15, 2002, KJC and EES attended a meeting. The total time spent including preparation time was 4.00 hours for a total of $1,112.50.

| 07/15/02 | KJC | 6.70 | 1,842.50 | Conference with cost experts re deposition questions (1.50);..... |

| 07/15/02 | EES | 2.50 | 700.00 | Meeting with accounting experts re cost deposition issues (2.50). |

5.  On August 28, 2002, LB, KWL and KJC attended a deposition. The total time spent was 11.50 hours for a total of $3,612.50.

| 08/28/02 | LB | 3.00 | 1,200.00 | (Fraudulent Conveyance) Attend portion of Paul Peronard deposition (2.00) (2.00 N/C);..... |

| 08/28/02 | KWL | 8.00 | 2,800.00 | (Fraudulent Conveyance) Prepare for and attend Paul Peronard deposition. |

| 08/28/02 | KJC | 2.00 | 550.00 | (Fraudulent Conveyance) Attend P. Peronard deposition (1.50) (1.50 N/C);..... |

6.      On August 14, 2002, KWL and KJC participated in a site visit and a meeting with an expert. The total time spent including preparation and non-working travel time was 14.60 hours for a total of $4,562.50.

| 08/13/02 | KWL | 13.70 | 4,795.00 | ..........; travel to Kalispell (.50)(.50 N/C)(NWT 50%). |
| 08/13/02 | KJC | 14.90 | 4,097.50 | ..........; travel to Kalispell (.50)(.50 N/C)(NWT 50%). |
| 08/14/02 | KWL | 10.80 | 3,780.00 | Site visit with experts and clients (4.00); conferences with expert re possible report supplement (1.50); return travel from Libby (1.30) (1.30 N/C)(NWT 50%);....... |
| 08/14/02 | KJC | 12.40 | 3,410.00 | Site visit with experts and clients (4.00); conferences with expert re possible report supplement (1.50); return travel from Libby (1.30) (1.30 N/C)(NWT 50%);....... |

7.      On September 6, 2002, four (4) professionals attended a meeting. The total time spent including preparation time was 8.20 hours for a total of $2,842.50.

| 09/06/02 | LB | 5.60 | 2,240.00 | ..........; meeting with Dale Jensen, CGHarris and KJCoggon re cost recovery issues and conclusions (2.00);....... |
| 09/06/02 | CGH | 7.10 | 2,485.00 | Prepare for meeting today with Dale Jensen (.50); meet with Dale Jensen re cost issues and Peronard (2.00);...... |
| 09/06/02 | KWL | 4.00 | 1,400.00 | (Fraudulent Conveyance) Meeting with Dale Jensen, KJCoggon, CGHarris, CLNeitzel, and LBrown re cost issues and Peronard (2.00);....... |
| 09/06/02 | KJC | 10.70 | 2,942.50 | .........; conference with LNBrown, CGHarris and D. Jensen re EPA costs (1.70);...... |

8.      On September 17, 2002, LB, JLS and CGH attended the deposition of Peronard. The total time spent including preparation time was 59.70 hours for a total of $16,030.00.

| 09/13/02 | LB | 3.80 | 1,520.00 | Preparation for Paul Peronard deposition (3.80). |

| | | | | |
|---|---|---|---|---|
| 09/16/02 | LB | 13.10 | 5,240.00 | Prepare for Paul Peronard deposition (6.60);..... |
| 09/16/02 | CGH | 10.30 | 3,605.00 | ......; strategize re Peronard depositions and select exhibits with LBrown for use in deposition (3.00). |
| 09/16/02 | JLS | 14.80 | 1,850.00 | Prepare for Peronard deposition (14.40);...... |
| 09/17/02 | LB | 11.20 | 4,480.00 | Finish preparation for and depose Paul Peronard (11.10);... |
| 09/17/02 | CGH | 8.80 | 3,080.00 | Prepare for deposition of Peronard; deposition of Peronard; strategy conferences during breaks in deposition (8.80). |
| 09/17/02 | JLS | 12.20 | 1,525.00 | Prepare for and attend Peronard deposition (12.0);....... |

9.    On September 25, 2002, LB, KWL and KJC attended a meeting in Baltimore.  The total time spent including preparation and non-working travel time was 17.70 hours for a total of $5,887.50.

| | | | | |
|---|---|---|---|---|
| 09/25/02 | LB | 4.20 | 1,680.00 | .........; prepare for and attend meeting with Grace (David Seigel, Bill Corcoran, and Bob Emmett) re case status and trial strategy (3.30). |
| 09/25/02 | KWL | 9.40 | 3,290.00 | Prepare for meeting with client re case status and strategy (2.00); travel from Denver to Baltimore for meeting with clients (1.60) (1.60 N/C) (50% NWT); meeting with LBrown and KJCoggon re case evaluation and preparation for client meeting (1.20); meeting with David Siegel, Bill Corcoran, Bob Emmett and LBrown re case strategy issues (3.30);............ |
| 09/25/02 | KJC | 10.40 | 2,860.00 | ..........; travel to Maryland for client meeting (1.60) (1.60 N/C) (NWT 50%); conferences with KWLund re strategies for trial, budget and client meeting (1.30); conferences with KWLund and LNBrown re trial strategies and depositions (1.20); conferences with client re trial strategies (2.20). |

EXHIBIT B

The time entries of LB ($400), JLS ($125) and KAT ($185) as they relate to the Chris Weis deposition of September 12, 2002 are detailed below.

| 09/02/02 | KAT | Draft Weis deposition outline. | 8.00 | 1,480.00 |
|---|---|---|---|---|
| 09/03/02 | LB | Meeting with KATrammel and LSDecker re Weis deposition (1.00); prepare for Weis deposition (2.90). | 3.90 | 1,560.00 |
| 09/03/02 | KAT | Review documents for Weis deposition (1.00); review and revise Weis deposition outline (1.00). | 2.00 | 370.00 |
| 09/03/02 | JLS | Review, categorize and code documents in preparation for Weis deposition (9.0). | 9.00 | 1,125.00 |
| 09/04/02 | KAT | Review documents for Weis deposition (14.00). | 14.00 | 2,590.00 |
| 09/04/02 | JLS | Review, categorize and code documents in preparation for Weis deposition (5.8); edit Cost Recovery database re Weis documents (2.9). | 8.70 | 1,087.50 |
| 09/05/02 | LB | Prepare for Weis deposition (1.10). | 1.10 | 440.00 |
| 09/05/02 | KAT | Review documents for Weis deposition (10.20); conference with JLSherman re Weis deposition (.30). | 10.50 | 1,942.50 |
| 09/06/02 | LB | ... prepare for Weis deposition (2.00). | 5.60 | 2,240.00 |
| 09/06/02 | KAT | Review documents for Weis deposition (6.60); meeting with KJCoggon re status of review for Weis deposition (.60). | 7.20 | 1,332.00 |

| | | | | |
|---|---|---|---|---|
| 09/06/02 | JLS | Review, categorize and code documents in preparation for Weis deposition (6.90);... | 8.30 | 1,037.50 |
| 09/07/02 | LB | Review in detail expert reports of Hughson, Moolgavkar, and work on Weis deposition preparation.[1] | 6.20 | 2,480.00 |
| 09/07/02 | KAT | Review documents for Weis deposition (5.00); review and revise Weis deposition outline (1.50). | 6.50 | 1,202.50 |
| 09/07/02 | JLS | Prepare for Weis deposition (1.40). | 1.40 | 175.00 |
| 09/08/02 | LB | Prepare for Chris Weis deposition. | 5.70 | 2,280.00 |
| 09/08/02 | KAT | Review documents for Weis deposition (6.60); review and revise Weis deposition outline (.90). | 7.50 | 1,387.50 |
| 09/08/02 | JLS | Prepare for Weis deposition (1.60). | 1.60 | 200.00 |
| 09/09/02 | LB | Prepare for Chris Weis deposition (5.30); review and comment on draft motion to exceed 7 hour limit for Peronard and Weis depositions (.20). | 5.50 | 2,200.00 |
| 09/09/02 | KAT | Review documents for Weis deposition (6.50); review and revise deposition outline (1.50). | 8.00 | 1,480.00 |
| 09/10/02 | LB | Prepare for Chris Weis deposition. | 12.90 | 5,160.00 |
| 09/10/02 | KAT | Review documents for Weis deposition (13.00); review and revise deposition outline (1.00). | 14.00 | 2,590.00 |

---

[1] Because of lumping it is not possible to accurately separate the time spent on Weis.

| 09/10/02 | JLS | Review and code documents in preparation for Weis deposition (3.40); prepare exhibits for Weis deposition (2.80);.... | 8.30 | 1,037.50 |
|---|---|---|---|---|
| 09/11/02 | LB | Prepare for Chris Weis deposition. | 14.90 | 5,960.00 |
| 09/11/02 | JLS | Prepare for Weis deposition (14.50). | 14.50 | 1,812.50 |
| 09/12/02 | LB | Complete preparation for, take deposition of Chris Weis, and debriefing of CLNeitzel and KJCoggon (with Betty Anderson) re same (11.50). | 11.50 | 4,600.00 |
| 09/12/02 | KAT | Attend Weis deposition. | 4.30 | 795.50 |
| 09/12/02 | JLS | Prepare for and attend Weis deposition (12.50). | 12.50 | 1,562.50 |

EXHIBIT C

The time entries of NKA ($110), CLR ($225), PRS ($125), JAH ($220), MJO ($180), AEC ($125), DD ($110), ICM ($110) and KWL ($350) as they relate to the Chris Weis deposition through September 12, 2002 are detailed below.

| | | | | |
|---|---|---|---|---|
| 09/01/02 | NKA | Search for and locate document for Weis deposition preparation per LSDecker's request (.40). | 0.40 | 44.00 |
| 09/03/02 | AEC | ... identify and review Chris Weis deposition prep documents and potential exhibits (2.0). | 6.40 | 800.00 |
| 09/03/02 | DD | Review documents re Weis deposition for JLSherman (5.0) | 5.00 | 550.00 |
| 09/03/02 | ICM | Search for background documents on Dr. Weis (search for case law, past expert testimony, articles/papers/speeches that he has published, etc.)(3.40). | 3.40 | 374.00 |
| 09/04/02 | DD | Review documents re Weis deposition (1.40) | 1.40 | 154.00 |
| 09/04/02 | ICM | Search for background documents on Dr. Weis (contact lending libraries across the country and procure documents through interlibrary loan process). | 2.40 | 264.00 |
| 09/05/02 | ICM | Research re background documents on Weis using online resources (4.80); research same at University of Colorado Health Sciences Center library (2.60); search for nationwide lending libraries on background documents on Weis (2.60).[1] | 6.50 | 715.00 |
| 09/06/02 | CLR | ...review documents for Chris Weis deposition (2.2). | 3.40 | 765.00 |

---

[1] Detail time entries add to 10 hours but only 6.50 hours were posted. The posted figure was used in the exhibit calculation.

| 09/06/02 | PRS | Chris Weis deposition preparations (2.0). | 2.00 | 250.00 |
|----------|-----|-------------------------------------------|------|--------|
| 09/06/02 | ICM | Research re background documents on Weis using online resources (4.80); research same at University of Colorado Health Sciences Center library (1.60); search for nationwide lending libraries on background documents on Weis (1.60); ... | 9.00 | 990.00 |
| 09/07/02 | JAH | ... review and identify documents for use at deposition of C. Weis (8.00);... | 10.70 | 2,354.00 |
| 09/07/02 | CLR | Review documents for Chris Weis deposition (2.7). | 2.70 | 607.50 |
| 09/08/02 | JAH | Review documents and draft deposition outline for use at deposition of C. Weis (6.50); ... | 7.00 | 1,540.00 |
| 09/09/02 | ICM | Follow up with various sources on status of Weis materials (2.20); ... | 7.50 | 825.00 |
| 09/10/02 | JAH | Review documents and draft deposition outline for use at deposition of C. Weis. | 6.50 | 1,430.00 |
| 09/10/02 | MJO | Review documents for Weis deposition. | 5.00 | 900.00 |
| 09/10/02 | ICM | Follow up with various sources on status of Weis materials (1.20); ... | 7.50 | 825.00 |
| 09/11/02 | DD | Review and code documents for the Weis deposition (2.0) | 2.00 | 220.00 |
| 09/11/02 | ICM | Follow up with various sources on status of Weis materials (1.30); ... | 4.10 | 451.00 |
| 09/12/02 | KWL | Telephone conference with LBrown re Weis deposition debriefing. | 0.70 | 245.00 |

EXHIBIT D

| 09/09/02 | MCL | Review and recode documents in Historical database that were inadvertently scanned by Lason (7.60);........... | 8.50 | 1,062.50 |
| 09/10/02 | MCL | Review and recode documents in Historical database that were inadvertently scanned by Lason (7.90). | 7.90 | 987.50 |
| 09/10/02 | LCS | Review and recode documents in historical database that were inadvertently scanned by Lason. | 4.50 | 382.50 |
| 09/11/02 | MCL | Review and recode documents in Historical database that were inadvertently scanned by Lason (7.40);.......... | 7.70 | 962.50 |
| 09/11/02 | LCS | Review and recode documents in Historical database that were inadvertently scanned by Lason. | 5.50 | 467.50 |
| 09/12/02 | MCL | Review and recode documents in Historical database that were inadvertently scanned by Lason (7.50). | 7.50 | 937.50 |
| 09/13/02 | MCL | Review and recode documents in Historical database that were inadvertently scanned by Lason (6.40). | 6.40 | 800.00 |

| | | | | |
|---|---|---|---|---|
| 09/16/02 | MCL | Review and recode documents in Historical database that were inadvertently scanned by Lason (6.70). | 6.70 | 837.50 |
| 09/17/02 | MCL | Review and recode documents in Historical database that were inadvertently scanned by Lason (6.60);........... | 7.00 | 875.00 |
| 09/18/02 | MCL | Review and recode documents in Historical database that were inadvertently scanned by Lason (7.80). | 7.80 | 975.00 |
| 09/18/02 | LCS | Review and recode documents in Historical database that were inadvertently scanned by Lason. | 4.00 | 340.00 |
| 09/19/02 | MCL | Review and recode documents in Historical database that were inadvertently scanned by Lason (6.90);........... | 8.30 | 1,037.50 |
| 09/20/02 | MCL | Review and recode documents in Historical database that were inadvertently scanned by Lason (3.80). | 3.80 | 475.00 |
| 09/26/02 | MCL | Review documents scanned by Lason to locate documents inadvertently scanned and draft list of Bates numbers of same (3.90); review and recode documents in Historical database that were inadvertently scanned by Lason (1.90). | 5.80 | 725.00 |

| 09/27/02 | MCL | .......; review and recode documents in Historical database that were inadvertently scanned by Lason (5.40). | 6.30 | 787.50 |

RESPONSE EXHIBIT 1

a.     ***On July 29, 2002, CGH, KWL and KJC attending a meeting, with the total time***
***spent including preparation time of 24.00 hours, for a total of $7,187.50.***  Please
see response of HRO to Paragraph 4 above.  This meeting relates to the same subject
matter and includes the same timekeepers as the telephone conference of July 24,
2002 addressed above.  As stated in response to Paragraph 4, the participation and
roles played by each timekeeper in this meeting was necessary, proper and efficient
with respect to coordinating the Peronard deposition with Kirkland and Ellis and
Skadden Arps.  There was no duplication of effort by these attorneys.  Each played
a critical and distinct role with respect to the Peronard deposition and the need to
coordinate the same (per the United States directive) among the various
professionals.  In addition to the Peronard deposition, the July 29, 2002 meeting
among Mr. Harris, Mr. Lund and Ms. Coggon and others covered general case
themes and strategies related to both the fraudulent conveyance action and the cost
recovery case.  The discussions engendered many of the strategies upon which both
cases were later built and was an extremely efficient use of time given the co-pending
cases and related nature of both.

b.     ***On July 1, 2002, four (4) professionals attended a meeting, with total time spent***
***including preparation time of 31.20 hours, for a total of $9,482.50.***  See response
to Paragraphs 4 above and  5.c. below.

c.     ***On July 2, 2002, four (4) professionals attending a meeting, with total time spent***
***including preparation time of 24.60 hours, for a total of $7,676.50.***  On July 1,

2002 (5.b. above) and July 2, 2002, the HRO trial team met with various client representatives and experts to discuss trial strategies and case status in the Libby cost recovery case. To ensure that the team was fully informed and that everyone was on the right track for efficiently preparing for trial and meeting ongoing discovery deadlines, it was important that the key members of the team participate in the full briefing and that other members of the team participate as appropriate given their respective roles in the case. The client required such strategy meetings and all participants found them to be a useful means of steering the case in the manner most likely to meet with success. Mr. Lund and Ms. Coggon had primary responsibility for determining case strategy, meeting discovery deadlines, and managing the case such that full participation at the client meeting by both was necessary and appropriate. Ms. Coggon was also assigned to the trial team and her participation at the strategy meeting was critical to ensuring that discovery and early expert work would be consistent with the ultimate trial strategies. Jay McCarthy (JDM), an HRO environmental litigation partner, was assigned the responsibility of handling certain expert matters in the case. Specifically, he was responsible for certain medical and risk experts and fact witnesses. Further, Mr. McCarthy was responsible for overseeing some of the cost expert work that was being done. Mr. McCarthy was assigned to the trial team and his participation at the strategy meeting was critical to ensuring that discovery and early expert work would be consistent with the ultimate trial strategies. Ed Stevenson (EES), HRO Senior Counsel, was assigned primary responsibility for working with W.R. Grace's cost experts and handling cost related

discovery matters. Mr. Stevenson was a CPA prior to becoming an attorney and brought specific skills to the role that no other HRO attorney provided. Mr. Stevenson regularly participated in all meetings related to cost issues and contributed significant insights regarding such issues.

d. ***On July 15, 2002, KJC and EES attended a meeting, with total time spent including preparation of 4.00 hours, for a total of $1,112.50.*** On July 15, 2002, Ms. Coggon (KJC) and Mr. Stevenson (EES) met with W.R. Grace's cost expert group to discuss and develop specific deposition questions for cost-related witnesses. As discussed above, Ms. Coggon had primary responsibility for managing the case as well as specific substantive knowledge regarding EPA's activities in Libby. Mr. Stevenson, on the other hand, brought his accounting expertise and his experience working with the cost experts. The depositions of cost-related witnesses had been divided among the HRO attorneys given the extremely short deadlines and the inability of one attorney to conduct them all. In addition, many of the cost-related witnesses also had substantive knowledge of the site activities such that specific questions related to the government's activities in Libby were necessary. Mr. Stevenson focused on the former while Ms. Coggon focused on the latter. Meeting to discuss the questions was the most efficient approach to developing strong deposition outlines for those witnesses.

e. ***On August 28, 2002, LB, KWL and KJC attended a deposition, with total time spent of 11.50 hours, for a total of $3,612.50.*** Please see response of HRO to Paragraphs 4 and 5.a. above, as it relates to KWL's and KJC's roles and attendance

at the deposition, or portions thereof, of Paul Peronard.    Additionally, timekeeper Linnea Brown (LB), a senior trial lawyer at HRO, was assigned the responsibility of deposing the government's key fact witness, Paul Peronard, in the cost recovery action.  As part of her preparations for his deposition in the cost recovery action, Ms. Brown attended Mr. Peronard's deposition in the fraudulent conveyance action.  As noted in the time entry, Ms. Brown wrote off 50% of the time she spent in attendance at this deposition in recognition of the need to be conscientious of the attendance of multiple professionals at the deposition.  Similarly, Ms. Coggon wrote off 50% of her time spent in attendance at the deposition.   Each professional had a specific role, task and purpose in attending the deposition of Mr. Peronard and there was no duplication of efforts in this regard.  To the extend the Auditor disagrees, HRO would point out that two of the professionals voluntarily wrote off 50% of their time in attending this deposition.

f.    ***On August 14, 2002, KWL and KJC participated in a site visit and meeting with an expert, with a total time spent including preparation and non-working travel time of 14.60 hours, for a total of $4,562.50.***    On August 14, 2002, Mr. Lund and Ms. Coggon jointly provided a site tour for the client and defense experts.  The tour involved providing substantive information about the site and government activities as well as providing an opportunity for significant strategy discussions with the client and experts.  As discussed above, Mr. Lund and Ms. Coggon brought different perspectives and had different responsibilities related to the case such that both attorneys were appropriate and necessary to efficiently conduct the tour and strategy

discussions.

g.      ***On September 6, 2002, four (4) professionals attended a meeting, with total time spent including preparation of 9.20, for a total of $2,842.50.***  On September 6, 2002, certain HRO trial team members met with the W.R. Grace's cost expert to discuss specific issues regarding EPA's costs incurred.  The purpose of the meeting was twofold: both to further refine issues relating to costs and to prepare for the Peronard deposition since some of the questions at that deposition would relate to government expenditures.  Each of the attorneys participated in this meeting for different reasons.  Ms. Brown was assigned to take Peronard's deposition and thus had a logical basis for participating in the preparatory meeting. Mr. Harris was responsible for assisting Ms. Brown with those preparations because he had prior experience deposing Peronard and because there was too much information to digest for just one attorney to do so in the limited time allowed for completion of discovery in the case.  Mr. Lund and Ms. Coggon, as discussed above, brought their own unique insights to the discussion and ensured that the case as a whole proceeded consistently with the strategies outlined for the Peronard portion of the case and that the same information was conveyed to the client.

h.      ***On September 17, 2002, LB, JLS and CGH attended the deposition of Peronard, with total time spent including preparation time of 59.70, for a total of $16.030.00.***  On September 17, 2002, Ms. Brown (LB) deposed Paul Peronard.  Given the very tight timeframe allowed for discovery (the deadline was set for September 30, 2002) and the massive volume of materials involved (Mr. Peronard produced over 2000

emails in this case and the United States produced over 75,000 documents and identified 10 experts), it was impossible for one person to fully prepare for the deposition of this key witness.  Mr. Harris (CGH) provided senior level assistance to Ms. Brown in the preparation for the deposition and attended the deposition to continue to provide that assistance.  Joan Sherman (JLS) was the paralegal assigned to assist in the preparation for the deposition and was responsible for tracking all exhibits and providing additional paralegal support during the deposition.  Ms. Sherman has provided similar assistance to Ms. Brown in the past and has demonstrated that such an arrangement is the most efficient, time-saving approach.

i.      ***On September 25, 2002, LB, KWL and KJC attended a meeting in Baltimore, with total time spent including preparation and non-working travel of 17.70, for a total of $5,887.50.***  On September 25, 2002, Ms. Brown (LB), Mr. Lund (KWL) and Ms. Coggon (KJC) attended an important client strategy meeting. As with other trial strategy meetings, attendance by all three of these attorneys was both necessary and appropriate.  Ms. Brown had been recently selected as lead trial counsel, Mr. Lund continued with his responsibilities for client relationships and overall strategies, and Ms. Coggon continued to manage the day-to-day work and discovery obligations consistent with the trial strategies.

RESPONSE EXHIBIT 2

In early September 2002, the HRO trial team prepared for and took the deposition of Dr. Christopher Weis, the EPA Region 8 toxicologist responsible for Libby.  Dr. Weis was one of only two EPA employees deposed in the cost recovery case and was a key witness because he developed the risk analyses on which the cleanup efforts in Libby were based.  As discussed above, the volume of documents and other discovery materials was such that no single attorney could adequately prepare for a deposition of this magnitude. Dr. Weis, like Peronard, had produced over 2000 emails in the case and there were countless other documents related to his work in Libby that had to be reviewed in preparation for the deposition. Given the tight timeframes allowed for preparation and completion of all discovery, it was not possible to focus all the preparation activities in just one or two individuals.  The primary professionals solicited assistance from specific individuals according to their experience and skills in order to most efficiently prepare for the deposition.

Ms. Brown (LB), as newly appointed lead trial counsel, was assigned the responsibility of taking the deposition of this key and difficult witness.  Keith Trammell (KAT), an HRO associate, and Joan Sherman (JLS), an HRO paralegal, took lead roles in assisting Ms. Brown with preparations for the deposition, with additional substantial assistance from Jennifer Hall (JAH), an HRO associate, and Lisa Schuh Decker (LASD), an HRO environmental litigation partner.  Mr. Trammell had prior experience with the Libby matter (he was corporate counsel involved before the bankruptcy filing) and had more specific experience reviewing Chris Weis related documents.  Thus, his experience was appropriate for the type of assistance he was providing.  In addition, he had a lower billing rate than many of the more experienced attorneys who assisted with the case.  Joan Sherman worked on the Libby matter from late 1999 and had assisted Ms. Brown with the Peronard

deposition, making her the ideal lead paralegal on this task.  Ms. Sherman and Mr. Trammell both attended the deposition in order to further assist Ms. Brown.  Ms. Hall, an HRO associate, had provided considerable assistance on the case generally and had reviewed many of the risk-related documents in the production, making her assistance with the preparation for the Weis deposition appropriate.  Imelda Mulholland (ICM) is an expert in obtaining information about individuals and other information from the internet and other sources; Ms. Mulholland located such background information about Dr. Weis and his area of expertise in order to fully prepare Ms. Brown for the deposition.

Other individuals assisted on a smaller scale and as necessary to supplement the work being done by Ms. Brown, Mr. Trammell, Ms. Sherman, Ms. Hall, and Ms. Decker. Natalie Aberle (NKA) and Ann Carroll (AEC), HRO paralegals,  both worked almost exclusively on W.R. Grace matters and thus could be relied upon for quick turnaround in locating and isolating specific documents to use in preparing for and taking Dr. Weis' deposition.  Dyan Davidson (DD) had considerable experience with the HRO database generally and could efficiently find documents also.  Connie Rogers (CLR), an HRO associate, had previously assisted with document review in this case and had focused her review of production documents on those related to Chris Weis, thus she had specific knowledge that made her more efficient in the review of documents in preparation for the deposition. Paula Stacey (PRS) was a senior paralegal with considerable experience working in the database and with Ms. Brown such that she could quickly and efficiently locate particular documents requested by Ms. Brown for the deposition.  Matt Ochs (MCO), an HRO associate, had done document review for the case and was familiar with the issues generally such that he could efficiently search for specific kinds of documents and isolate those appropriate for use in the deposition.  Mr. Lund

(KWL), as discussed above, had primary responsibility for this matter with the client and thus was required to understand and report to the client on the relative success of the deposition.

That the deposition was extremely complex is evidenced by the fact that in exactly 7.0 hours (the time allowed under Federal Rules), the reporter recorded over 350 pages of transcript (an average one day deposition is about 200 to 250 transcript pages).  In addition, the highly scientific nature of the issues made additional preparation time and assistance during the deposition necessary to accomplish the goals.  HRO approached this deposition and the use of its professionals in the most efficient manner possible, with no duplication of effort by the professionals involved.

RESPONSE EXHIBIT 3

In September 2002, Carla Latuda (MCL) and Loraine Street (LCS) spent considerable time reviewing and coding documents in order to comply with EPA's ongoing request for information under CERCLA section 104(e), which applies hefty penalties of $27,500 per day for failure to comply.  Consistent with those obligations, Ms. Latuda and Ms. Street reviewed documents that had been miscoded by W.R. Grace's scanning vendor, Lason.  Prior to the bankruptcy, W.R. Grace had hired Lason to assist with the response to the 104(e) information requests by scanning documents and providing them back to W.R. Grace's counsel as electronic images with certain coding.  The coding had  initially been assigned by W.R. Grace's counsel as part of the paper document review. In late summer 2002 as part of the renewed efforts to comply with EPA's information request and as required by Court Order in the bankruptcy matter, it was discovered that Lason had mistakenly applied the coding to the images.  To avoid providing the EPA with any privileged documents or any documents unrelated to their information requests, it was necessary to quickly and efficiently review the Lason-created documents to ensure that the coding was accurate.  Ms. Latuda had been involved with the initial review and coding of the documents in 2000 and 2001, making her the ideal person to manage this quick review of the images.  Ms. Street had also been involved in prior Grace document review and assisted Ms. Latuda with this project in order to complete it in the time allowed by the Court.  The reviewing of the documents and correcting errors made by W.R. Grace's prior vendor (Lason) required considerable skill and expertise and was appropriately performed by HRO's paralegals.  In no way were these tasks overhead, secretarial or duplicative, and in no way was HRO correcting its own errors or mistakes.

RESPONSE EXHIBIT 4

The expense entries are listed below with a more detailed description of the expenses following each

such entry:

06/27/02      Other Meal Expenses:  Charlotte L. Neitzel/Attend Center for Environmental
              Health Sciences Conference, Meals.  $98.30
              **Ms. Neitzel's meal expense entry covers her personal meal expenses for
              the period 06/23/02 through 6/25/02, together with meal expenses for
              herself and two WR Grace expert witnesses ( Suresh Moolgavkar and
              Betty Anderson) on June 24, 2002.  The per meal average price is $19.66.**

06/28/02      Other Meal Expenses:   Carla Latuda/Document Review at Cambridge,
              Meal.                                          $159.66
              **Ms. Latuda's meal expense entries cover her personal meal expenses for
              the period 06/25/02 through 06/27/02 and include meal expenses for two
              (2) temporary employees of HRO hired to assist with the document
              review in Cambridge, MA.  One charge on 06/26/02 for $76.84 was for
              three (3) people, or $25.51 per person.  The remaining expense of $82.82
              was for six meals, or an average per meal price of $13.80.**

08/06/02      Other Expense:  Kenneth W. Lund/Attend meeting in Palo Alto to prepare for
              deposition of Julie Yang, Meals.                   $82.25
              **Mr. Lund's meal expense entries cover his personal meal expenses for
              08/06/02, plus meal expenses for Richard Finke (W.R. Grace in-house
              counsel) and Doug Cameron (Reed & Smith), or an average per meal
              price of 20.56.**

08/14/02      Travel Expense:  Kenneth W. Lund/Attend client meeting in Libby Montana,
              mine tour, Meals.                                 $233.81

              **Mr. Lund's meal expense entries cover his personal meal expenses for
              the period 08/13/02 through 08/14/02 and include meal expenses for
              other HRO professionals and employees of W.R. Grace.  The average
              per meal price is $33.40, for two meals attended by a total of 7
              individuals.**

08/22/02      Travel Expense:  Linnea Brown/Meeting with Elizabeth Anderson, Meals.
                                                               $57.76
              **Ms. Brown's meal expense entry covers the period 08/22/02 and includes
              a meal expense for Ms. Brown and Elizabeth Anderson, an expert
              witness, or a per meal price of 28.88.**

08/27/02        Other Meal Expense:  Linnea Brown/August 2002 working lunch for Grace
                Trial Team, Meals.                                    $48.40

                **Ms. Brown's meal expense entry covers the period 08/27/02 and includes
                a meal expense for Ms. Brown and five (5) other HRO professionals, or
                a per meal price of $8.07.**

08/27/02        Other Meal Expense:  Katherine Coggon/September 2002 working lunch for
                Grace Trial Team, Meals.                              $40.33
                **Ms. Coggon's meal expense entry covers the period 09/11/02 and
                includes a meal expense for Ms. Coggon and four (4) other HRO
                professionals, or a per meal price of $8.07.**

09/12/02        Other Meal Expense:  Katherine Coggon/September 2002 working lunch for
                Grace Trial Team, Meals.                              $43.48
                **Ms. Coggon's meal expense entry covers the period 09/12/02 and
                includes a meal expense for Ms. Coggon and four (4) other HRO
                professionals, or a per meal price of $8.70.**

09/23/02        Other Expense: Katherine Coggon/Lunch with W.R. Grace Expert, R. Bartlet
                for deposition preparation.                           $47.00
                **Ms. Coggon's meal expense entry covers the period 09/23/02 and
                includes a meal expense for Ms. Coggon and Grace Expert, R. Bartlet,
                or a per meal price of $23.50.**

09/26/02        Other Meal Expense:  Charlotte Neitzel/Lunch during Harry Eschenbach
                Deposition.                                           $40.00
                **Ms. Neitzel's meal expense entry is for herself and Harry Eschenbach (a
                W.R. Grace deponent) and Will Sparks (W.R. Grace in house counsel),
                for a total per meal average of $13.33.**

HRO maintains that the meal expenses covered above are reasonable and should be
reimbursed.  If so requested by the Fee Auditor, HRO will submit detailed receipts of the above
expenses to the Fee Auditor for review.

RESPONSE EXHIBIT 5

The specific expense entries are listed below with a detailed breakdown of such expenses:

06/28/02     Travel Expense:  Carla Latuda/Review at Cambridge re: response to EPS's
             information requests, travel expenses.                         $700.91
             **Hotel (2 nights)**              **$627.46**
             **Taxi/Tips**                     **$44.00**
             **Personal Mileage (67 miles)**   **$24.45**
             **Subway Tokens**                 **$5.00**

07/09/02     Travel Expense:  Doug Wall/Travel to conduct Document Review WR
             Grace, Travel Expenses.                                     $2,701.81
             **Hotel (10 nights)**             **$2,620.10**
             **Taxi/Tips**                     **$62.00**
             **Personal Mileage (54 miles)**   **$19.71**

08/14/02     Travel Expense:  Jay McCarthy/Travel to Atlanta, GA/Depositions of S.
             Dearwent, J. Lybarger and D. Middleton, Travel Expenses.  $1,003.21
             **Airfare**                       **$100.00 (Change Return Flight)**
             **Hotel (4 nights)**              **$792.30**
             **Taxi**                          **$65.00**
             **Personal Mileage (60 miles)**   **$21.90**
             **Copies for Depositions**        **$24.00**

08/21/02     Travel Expense:  Edward E. Stevenson/Boston, MA/Deposition of Timothy
             Wall, Travel Expenses                            $678.17
             **Hotel (3 nights)**              **$570.12**
             **Taxi/Tips**                     **$108.05**

08/28/02     Travel Expense:   Edward E. Stevenson/Washington, DC/Deposition of
             Charles Young, Travel Expenses                   $623.92
             **Hotel (3 nights)**              **$546.18**
             **Taxi/Tips**                     **$60.00**
             **Personal Mileage (48.6 miles)** **$17.74**

08/26/02     Travel Expense:  Brad Jacobson/American Express Corp.Card/Credit Card
             charges for August, 2002                         $333.00
             **This expense was inadvertently charged to this matter and HRO agrees
             to a reduction of $333.00 in its expense reimbursement request.**

HRO maintains that the travel expenses detailed above are reasonable and should be reimbursed.  If so requested by the Fee Auditor, HRO will submit detailed receipts of the above expenses to the Fee Auditor for review.