## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING
### FEE APPLICATION OF STEPTOE & JOHNSON, LLP
### FOR THE SIXTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its

capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Fee

Application of Steptoe & Johnson, LLP for the Sixth Interim Period[1].

### BACKGROUND

1.      Steptoe & Johnson, LLP ("Steptoe") was retained as special tax counsel to the

Debtors.  In the Application, Steptoe seeks approval of fees totaling $52,450.00 and costs totaling

$5,416.67 for its services from July 1, 2002 through September 30, 2002.

2.      In conducting this audit and reaching the conclusions and recommendations contained

herein, we reviewed in detail the Application in its entirety, including each of the time entries

---

[1] We note that we were not served with an interim application pertaining to this interim period,
and that we conducted a search for such application on PACER but we could find no such
application on file.  Nevertheless, we reviewed the monthly invoices within the time period
covered by the Sixth Interim Period, July 1, 2002 through September 30, 2002, and, as Steptoe's
services are limited to tax services, we believed that we could conduct an audit based on those
invoices.  Thus we will refer to this collection of monthly invoices as the Sixth Interim
Application, and, for the court's convenience, we file this final report if the court wishes to treat
this collection of invoices as an application.  We should note, however, that the filing of this final
report does not constitute approval of Steptoe's failure to serve us with an interim application.

included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2

of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended

Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications

for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30,

1996, (the "Guidelines"), as well as for consistency with precedent established in the United States

Bankruptcy Court for the District of Delaware, the United States District Court for the District of

Delaware, and the Third Circuit Court of Appeals.  We served on Steptoe an initial report based on

our review and received a response from Steptoe, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.      In our initial report, we noted that there were no serious detail or lumping issues

during the Application period.

### Specific Time and Expense Entries

4.      We noted that on four occasions multiple Steptoe professionals spent a total of 8.10

hours for a total expense to the estate of $2,855.00 preparing for and participating in the same

conference call.  The fee details are provided on Exhibit A and attached hereto.  Paragraph II.D.5.

of the Guidelines states ". . .[i]f more than one professional from the applicant firm attends a hearing

or conference, the applicant should explain the need for multiple attendees."  For each of the

conference calls listed, we asked Steptoe to explain each participant's role as well as the need for

multiple participants.  Steptoe's response is provided as Response Exhibit 1.  We accept Steptoe's

explanation and thus have no objection to these fees.

5.      We noted that Steptoe spent 11.3 hours and $4,237.50 preparing its own fee

applications.  As was the case in the last interim period, professional A.E. Moran, with an hourly rate of $375.00, was the only professional from Steptoe that billed time in this category.  The U.S. Trustee Guidelines Rule, I.E. states ". . . [i]n evaluating fees for professional services, it is relevant to consider various factors including the following: the time spent; the rates charged; whether the services were necessary t o the administration of, or beneficial towards the completion of, the case at the time they were rendered; whether services were performed within a reasonable time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;. . .".  We previously noted that, in our experience, the majority of the preparation of one's own fee application is routinely performed by paraprofessionals and clerical personnel.  Steptoe responded to this inquiry in the previous initial report stating ". . . I think you will see a significant drop in the cost of billing in future applications.  Nonetheless, as I am sure you appreciate, the review of the work prepared by others is time consuming, particularly when we must be sure  that  the changes are properly recorded and applied to the proper category.  It is more efficient for me to do the review than for someone who is not familiar with the case.  Nonetheless, I do attempt to delegate as many administrative tasks as I can."  In light of this previous statement, we requested that Steptoe explain why professionals with lower billing rates were not utilized in this regard.  Steptoe responded as follows:

> As explained in my prior responses, Steptoe does not charge for its accounting staff's time when they prepare bills.  My role is to review the drafts of the bills prepared by them.  You will also note that a substantial portion of my time (4.8 of the 5.8 hours of September time, and 2 of the 4.9 hours of July time) was spent responding to auditor requests. Also, note that we did use a nonlawyer (Ms. Bronfeld) to review certain court filings.
>
> You also noted that I had said that I would try to use nonlawyers or lower cost personnel in the future, and why that was not done in these three months.  Note that my statements was in my October 3, 2002 auditor response, in response to the audit

report sent to Steptoe a few weeks earlier. Thus, I had made that statement after most of my July to September time was billed. I will try to use lower cost personnel where appropriate in the future.

We accept Steptoe's explanation, though we would continue to urge the firm to make use of professionals and paraprofessionals with lower billing rates when preparing its fee applications. Thus, we have no objection to these fees.

## CONCLUSION

6.    Thus we recommend approval of fees totaling $52,450.00 and costs totaling $5,416.67 for Steptoe's services from July 1, 2002 through September 30, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
Warren H. Smith
Texas State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 6th day of February, 2003.

_____
Warren H. Smith

# SERVICE LIST

Notice Parties

**The Applicant**
Anne E. Moran
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, NW
Washington, D.C.  20036

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**
Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410

Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

EXHIBIT A

• On July 15, 2002, J.M. Baxley ($300) and A.E. Moran ($375) participated in a telephone conference regarding tax settlement issues. The total time spent was .40 hours for a total expense to the bankruptcy estate of $135.

| | | | |
|---|---|---|---|
| 07/15/02J | J.M. Baxley | Phone call with Ms. Finke re: status of tax issue. | 0.20 |
| 07/15/02 | A.E. Moran | Telephone conference with C. Finke re IRS settlement procedures. | 0.20 |

• On July 31, 2002, A.E. Moran ($375) and J.W. Johnson ($445) participated in a phone conference regarding privilege issue. The total time spent was .50 hours for a total expense to the bankruptcy estate of $208.50.

| | | | |
|---|---|---|---|
| 07/31/02 | A.E. Moran | Telephone call with C. Finke re privilege issue. | 0.20 |
| 07/31/02 | J.W. Johnson | Conference call with Carol Finke re privilege issues re COLI documents. | 0.30 |

• On August 29, 2002, B. Kaufman ($270), J.W. Johnson ($445), and A.E. Moran ($375) participated in numerous conference calls. The total time spent was 5.60 hours for a total expense to the bankruptcy estate of $1,935.50.

The first conference on this date was for 2 hours for $666.

| | | | |
|---|---|---|---|
| 08/29/02 | B. Kaufman | Conference call with E. Filon, C. Finke, T. Borders, A. Moran, C. Finke re: Ms. Filon's discussions with N. Regberg re: surrender issues, 861 issue, and bankruptcy issue and discussion of path for proceeding with settlement. | 0.80 |
| 08/29/02 | A.E. Moran | Conference call re settlement. | 0.80 |
| 08/29/02 | A.E. Moran | Follow-up conference call re settlement. | 0.40 |

The second conference call on this date was for 3.60 hours for $1,269.50.

| | | | |
|---|---|---|---|
| 08/29/02 | J.W. Johnson | Teleconference re COLI settlement. | 1.70 |
| 08/29/02 | B. Kaufman | Preparation for conference call with E. Filon and C. Finke re: settlement strategy. | 0.40 |
| 08/29/02 | B. Kaufman | Conference call with E. Filon, C. Finke, J. Gibbs, W. Johnson, Fresenius, and Sealed Air re: COLI 80/20 | 1.50 |

settlement and Ms. Filon's discussions
with IRS Appeals.

•        On September 4. 2002, B. Kaufman ($270) and S.H. Serling ($450) participated
in a conference call regarding Steptoe.  The total time spent was 1.60 hours for a total expense to
the bankruptcy estate of $576.

| | | | |
|---|---|---|---|
| 09/04/02 | B. Kaufman | Conference call with C. Finke, E. Filon re: Steptoe experience with COLI settlements with Neil Regberg and issues that may be raised. | 0.80 |
| 08/04/02 | S.H. Serling | Conference call with Elyse Filon, Carol Finke, and Rich Sentfleben regarding Appeals process and Neil Regberg. | 0.80 |

Response Exhibit 1

In three of the cases you cited, more than one Steptoe lawyer was involved because we believed it was more efficient to call the client together than to discuss the answer internally and call the client.  A number of Steptoe lawyers are performing a variety of tasks for Grace, and although we try to keep current on all of them, each of us has specialties. For example, I was most involved in the substantive issues on the corporate owned life insurance case; Mr. Kaufman as the least expensive lawyer does a great deal of drafting and negotiation when needed, and Mr. Johnson has expertise on settlement issues. Many of the questions asked by Grace  involve questions on overlapping issues   Therefore we do have to depend  on more than one lawyer to answer this question.  Instead of reporting internally as to the answer and then having one lawyer call Grace, it is often easier and quicker to put two lawyers on the telephone and call Grace together. This also gets the answer to Grace more quickly.  You will note that with one exception, there were only 2 Steptoe lawyers involved in each call.

For example, on July 15, 2002, Jean Baxley was responding to my request to check on the status of IRS settlement discussion s with the other Steptoe lawyers because Ms. Finke had asked me (Anne Moran) about them. Ms. Baxley called me with the answer, and instead of waiting to hear the information from Ms. Baxley, I suggested we call together.  Total time was .40 hours.

On July 31, 2002, Mr. Johnson, who was dealing with a privilege question in connection with documents Grace was considering handing over to a third party, called me about the content of a few documents for which I was responsible.   I reviewed those documents and instead of having an internal conversation with  Mr. Johnson and then having one of us call  Ms. Finke, we resolved all the issues at once.

Similarly, on September 4, 2002 Grace called Mr. Kaufman (who was working with them on other matters) to ask about Steptoe's experience with a particular  IRS settlement officer.  Again, instead of having an internal discussing with Ms. Serling (who had dealt with him in other cases) about the request and then asking Ms. Serling to call Grace, Mr. Kaufman connected her on the telephone and resolved the question.

As to the multiple conference call or calls on August 29, 2002,  it was easier to involve a number of lawyers at some stage of this call than to stagger them into the call.    Mr. Borders, a lawyer who represented a former member of Grace's controlled group, had numerous questions about some of the issues that might arise if the corporate life insurance (COLI ) litigation was settled. Mr. Kaufman was primarily involved with the negotiations with Mr. Borders.  As I had the most familiarity with the substantive issues, I  participated in the early part of the call with Mr. Kaufman, and Mr. Johnson, the most experienced IRS litigator  and Mr. Kaufman participated in a more extensive discussion of settlement strategy with WR Grace later in the day.