**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF STROOCK & STROOCK & LAVAN, LLP**
**FOR THE SIXTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Sixth Interim Fee Application of Stroock & Stroock & Lavan, LLP (the "Application").

**BACKGROUND**

1.  Stroock & Stroock & Lavan, LLP ("Stroock") was retained as counsel to the official committee of unsecured creditors. In the Application, Stroock seeks approval of fees totaling $280,471.77 and costs totaling $28,358.07 for its services from July 1, 2002, through September 30, 2002, as well as $17,814.45 for the fees and expenses of Chambers Associates Incorporated ("Chambers"), an asbestos issues expert.

2.  In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. 330, the Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications

for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Stroock an initial report based on our review and received a response from Stroock, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.  In our initial report, we noted that the time entries were generally adequately detailed and devoid of lumping. These issues were mentioned in earlier interim reports, and overall the Stroock timekeepers have improved in their care with detail and the avoidance of lumping. However, A. Krieger's entries still lack consistent detail and remain occasionally lumped. We asked Stroock to advise this timekeeper to provide the necessary detail and avoid lumping her time entries in the future.

4.  We noted that in addition to its own fees and expenses, Stroock is seeking reimbursement in the amount of $17,814.45 for the fees and expenses of Chambers. We do not review time entry detail for the Chambers' invoices, and therefore take no auditing position on these fees and expenses other than to match invoice totals against the Application request.

### Specific Time and Expense Entries

5.  We noted that on July 7 and July 17, 2002, there are overcharges for time listed in the fee detail. The time differences are 1.0 hours for a total overcharge of $435.00. The time entries are listed below.

On July 2, 2002, A. Krieger ($475) has a time entry posted as 0.6 hours for $285.00. The fee detail

indicates 0.1 hours for a total of $47.50. The difference is $237.50.

| 07/02/02 | AK | 0.6 | 285.00 | Review KPMG motion to compel document production re English and American Insurance Company matter (.1). |

On July 17, 2002, M. Sasson ($395) has a time entry posted as 3.0 hours for $1185.00. The fee detail indicates 2.5 hours for a total of $987.50. The difference is $197.50.

| 07/17/02 | MS | 3.0 | 1185.00 | Review PI Committee's prior filing in B&W case and cases cited therein (2.5) |

Stroock responded as follows:

> The portion of the Application corresponding to this inquiry contains over 60 pages of time entries and hundreds of entries for this quarterly application period. While Stroock endeavors to double-check each and every narrative and corresponding aggregate amount entry to ensure that the amounts are correct throughout, errors do occur from time to time. Stroock's review of the narrative time entries reveals that they are correct, but that the stated aggregate amount is incorrect. Stroock, therefore, submits that the aggregate amount of the compensation Stroock seeks under the Application should be reduced by $435.00.

We accept Stroock's explanation and thus recommend a reduction of $435.00.

6. In our initial report, we noted that between July 16, 2002, and September 25, 2002, C. Mariano ($155), B. Schoenfeld ($155), J.B. Lyons ($155), M. Horn ($155) and A. Peters ($70) spent a combined total of 59.9 hours and $9,174.00 on tasks that could be characterized as ministerial, or nonreimbursable overhead. See Exhibit A. Paragraph II. E. 7., of the Guidelines, states "[f]actors relevant to a determination that the expense is proper include the following: . . . Whether the expenses appear to be in the nature of nonreimbursable overhead . . . Overhead includes word processing, proofreading, secretarial and other clerical services, . . ." We requested that Stroock review Exhibit A and explain why these tasks are compensable. Stroock's response is provided as Response Exhibit 1. We appreciate Stroock's response; however, we maintain that those

entries that indicate billing for printing and copying should be considered ministerial or nonreimbursable overhead. Thus, we recommend a reduction of $3,501.00 in fees.

       7.      We noted that Stroock expended 12.5 hours for a total of $3,073.75 in the category Travel Non-Working. Stroock correctly billed this time at fifty percent (50%) of the normal hourly rates. However, on August 26, 2002, L. Kruger ($695) traveled to New York City from Delaware for a total of 2.0 hours and $1,390.00. This time entry was not included in the Travel Non-Working category. The entry is shown below.

08/26/2002    Travel time to NYC from Delaware (2.0).    Kruger, L.                    2.0

Rule 2016-2(d)(viii) states, "Travel time during which no work is performed shall be separately described and may be billed at no more than 50% of regular hourly rates." Since there is no indication from the fee detail that any specific work was performed during the trip, we asked Stroock to explain why this entry should not be regarded as non-working travel and therefore reduced by $695.00 or fifty percent (50%). Stroock responded as follows:

> Stroock agrees that this entry should be reclassified as Category – 0035 "Non-Working Travel Time", and that the aggregate amount of the compensation Stroock seeks under the Application should be reduced by $695.00.

We appreciate Stroock's explanation and thus recommend a reduction of $695.00 in expenses.

       8.      We noted in the Application that Stroock seeks reimbursement in the amount of $265.00 for travel expenses incurred on July 16 and June 17, 2002. The entries are listed below.

08/14/2002    VENDOR: American Express; INVOICE#: 061702J; DATE 7/16/02      67.00
                     - lawyers trav fee 6/17 NYP WIL NYP

08/14/2002    VENDOR: American Express; INVOICE#: 061702K; DATE: 6/17/02     198.00
                     - amex law trav A Krieger NYP WIL NYP 6/17

While these types of expenses do not, in and of themselves, normally draw an objection, failure to

**FEE AUDITOR'S FINAL REPORT** - Page 4
wrg FR Stroock 6int 7-9.02.wpd

adequately detail the entries is inappropriate. The Guidelines, Paragraph II.E. states that "[f]actors relevant to a determination that the expense is proper include the following:...3. Whether applicant has provided a detailed itemization of all expenses including the date incurred, description of expense (e.g., type of travel, type of fare, rate, destination),...". Thus we asked Stroock to review each entry and provide such detail as the professional traveling, the mode of transportation, the destination and any other specifics relevant to the travel expense, so that we might assess the reasonableness of the charge to the estate. Stroock responded as follows:

> These two expenses relate to Ms. Krieger's roundtrip travel costs on Amtrak to Wilmington, Delaware from New York City, for Judge Fitzgerald's June 18, 2002 omnibus hearing. Stroock's June 2002 monthly application and the corresponding Fifth Interim Quarterly Application clearly reflect Ms. Krieger's travel time to and from the Court's June 18 hearing. As occurs from time to time, outside vendor charges are sometimes posted to Stroock's accounting records in the compensation period subsequent to the period in which the charge was incurred. The $198.00 charge reflects the cost for tickets traveling to and from Wilmington, Delaware and the $67.00 charge reflects the normal service fee charged at that time by Lawyers Travel Service, the travel agency which issued the tickets for Stroock. Since that time, the Lawyers Travel Service fee has been reduced to $48.00. Stroock submits that this aggregate $265.00 expense should be reimbursed in its entirety.

We accept Stroock's explanation and thus have no objection to these expenses.

## CONCLUSION

9.      Thus, we recommend approval of fees totaling $276,535.77 ($280,471.77 minus $3,936.00) and costs totaling $27,663.07 ($28,358.07 minus $695.00) for Stroock's services from July 1, 2002 through September 30, 2002. We offer no comment on the fees and expenses totaling $17,814.45 submitted by Stroock on behalf of Chambers.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
Warren H. Smith
Texas State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas 75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 7th day of February 2003.

_____
Warren H. Smith

## SERVICE LIST

Notice Parties

**The Applicant**
Lewis Kruger
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038-4982

Rose Serrette
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038-4982

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**
Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

# EXHIBIT A

The tasks performed by CM ($155), BS ($155), JBL ($155), MH ($155) and AP ($70) that may be in the nature of nonreimbursable overhead are listed below.

| Date | Who | Hours | Amount | Description |
|---|---|---|---|---|
| 07/16/02 | CM | 1.2 | 186.00 | . . . ; print (.4); and file accordingly (.5) |
| 07/24/02 | CM | 3.5 | 542.50 | . . . ; and print all documents with attachments (1.2), sort documents (.3) and file accordingly (1.2) |
| 07/25/02 | CM | 2.1 | 325.50 | . . . ; print all documents an attachments (1.0) and file documents (.9) |
| 07/31/02 | CM | 2.7 | 418.50 | .. . . ; print (.4); . . .and file accordingly (1.7) |
| 08/07/02 | CM | 1.3 | 201.50 | Review e-mails from bankruptcy and print and file (1.3) |
| 08/08/02 | CM | 1.8 | 279.00 | . . . ; forward via hand delivery (.2);. . . Review e-mails from Bankruptcy and print (.6); . . . |
| 08/09/02 | JBL | 2.0 | 310.00 | Printout JR docs from e-mail. |
| 08/13/02 | CM | 1.3 | 201.50 | . . . ; print (.4); . . . |
| 08/15/02 | JBL | 4.2 | 651.00 | Print JR docs from email and update jr files |
| 08/26/02 | CM | 1.6 | 248.00 | . . . ; Obtain e-mails from Bankruptcy and review, and print. (1.0) |
| 08/28/02 | CM | 1.2 | 186.00 | . . . ; print for Moshe Sasson (.4) and copy for file (.3). |
| 08/29/02 | BS | 3.5 | 542.50 | . . . ; printed out & organized emails (1.0); . . . |
| 08/30/02 | CM | 1.5 | 232.50 | . . . ; Send fax to Ms. Flieschman at Millberg's office. (.2). |
| 09/11/02 | AP | 1.3 | 91.00 | printed the Invoices, fees and expenses for W.R. Grace (1.30) |
| 07/23/02 | BS | 4.0 | 620.00 | Obtain pleadings from adversary print; file accordingly/index. |

| Date | Initials | Hours | Amount | Description |
|---|---|---|---|---|
| 08/22/02 | BS | 5.0 | 775.00 | Updated latest J.R. & correspondence file - Reviewed & printed emails/organized file - indexed and labeled. |
| 08/27/02 | BS | 5.0 | 775.00 | . . . ; printed emails (1.0);..Filed/organized emails (2.0) |
| 08/28/02 | BS | 4.0 | 620.00 | . . . ; Reviewed/printed emails re: bankruptcy (2.5) |
| 09/03/02 | BS | 3.0 | 465.00 | . . . ; Printed emails (1.5); organized and labeled (.8) |
| 09/04/02 | BS | 4.0 | 620.00 | Updated most recent JR file & correspondence. Organized/labeled and filed. |
| 09/06/02 | CM | 2.0 | 310.00 | . . . ; Load depositions into Livenote (.5); Copy depositions for distribution (.3) |
| 09/10/02 | BS | 1.0 | 155.00 | . . . ; Print emails (.5); Organize and file (.3) |
| 09/11/02 | BS | 3.5 | 542.50 | . . . ; Print emails (1.5); Index file/sort (1.0) |
| 09/12/02 | CM | 2.0 | 310.00 | ...sort all general bankruptcy correspondence (.6) and file (.4) |
| 09/12/02 | BS | 4.5 | 697.50 | . . . ; Print emails (2.0) Organize & file (1.0) |
| 09/17/02 | BS | 2.0 | 310.00 | Viewed emails for Bankruptcy case printed/sorted/indexed |
| 09/20/02 | CM | 1.5 | 232.50 | Review e-mails from Ken Pasquale and print (.6); . . |
| 09/23/02 | BS | 2.0 | 310.00 | Reviewed emails for Bankruptcy; printed emails; filed/organized |
| 09/24/02 | MH | 1.0 | 155.00 | Load depositions into LiveNote |
| 09/24/02 | MH | 1.0 | 155.00 | Load expert reports into DocsOpen |
| 09/24/02 | BS | 4.5 | 697.50 | . . . ; Printed emails (1.5) Organized/filed emails (1.0) Labeled & Indexed (1.0) |
| 09/25/02 | CM | 1.6 | 248.00 | . . . ; Print cases from Westlaw for attorney review (.4)... |

## RESPONSE EXHIBIT 1

The services which are the subject of the Fee Auditor's inquiry are client specific charges which should be fully compensable by the estates. The duties and responsibilities of paralegals and other paraprofessionals at Stroock generally include, but are not limited to, such services as (i) maintaining and indexing client files and judgment rolls in a complete and orderly fashion, (ii) preparing and arranging for the transmittal of correspondence, and legal and other documents by any suitable method of transmission including mail, messenger service e-mail and facsimile transmission, as required, (iii) performing or arranging for duplication and/or binding of documents, (iv) obtaining documents using Lexis, Westlaw and other software applications, and (v) providing records of disbursement charges for all charges applicable to a client of the firm. For paraprofessionals in the litigation areas of the firm, such services would also include downloading deposition transcripts into a specific database management program to enable a more efficient and effective use of those transcripts. In connection with and in the course of performing these client-specific services, it was necessary for these paraprofessionals to print documents and emails, organize and then appropriately file such materials. In addition, Stroock notes that virtually all, if not all, of the services identified on Exhibit A were rendered in connection with the materials generated in the Sealed Air fraudulent transfer litigation, where the need to thoroughly and properly file and index the voluminous number of pleadings, reports nd transcripts generated in the litigation is essential. Stroock submits that the challenged services are separate and apart from Stroock's non-client specific secretarial charges rendered during the normal business hours of the firm.

It has been Stroock's uniform policy that the cost of such client-specific services should not be borne by clients of the firm for whom the services were not rendered and, therefore, should not

be included within Stroock's overhead structure. Stroock, therefore, submits that the services identified on Exhibit A, all of such were rendered by Stroock paraprofessionals specifically in connection with this firm's representation of the Creditors' Committee in the Debtors' chapter 11 cases, should be allowed in their entirety.