IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

## MOTION OF DEBTORS FOR AUTHORITY TO
## EXTEND AND MODIFY DEBTOR IN POSSESSION FINANCING

The above-captioned debtors and debtors in possession (collectively, the

"Debtors") hereby move (the "Motion") this Court for authority to enter into an amendment (the

"Amendment") to extend and modify their Post-Petition Loan and Security Agreement among

the Debtors, Bank of America, N.A. ("BofA"), and the additional financial institutions which

became parties to the agreement, as lenders (collectively, the "Lenders") and BofA as the

Lenders' agent (the "Agent") dated as of April 1, 2001, as approved by Court Order [Docket No.

---

[1]  The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc.,  CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

192] dated May 3, 2001 (the "Post-Petition Credit Agreement") or, in the alternative, if the Court

is unable to enter an order approving the Amendment at the omnibus hearing on March 18, 2003

or prior to April 1, 2003, to temporarily extend until May 31, 2003 the Post-Petition Credit

Agreement pending Court approval of the Amendment.  In support of this Motion, the Debtors

respectfully represent as follows:

### Jurisdiction

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(A), (G) and (O).

2.     The statutory predicate for the relief requested herein is section 364 of title

11 of the United States Code (as amended, the "Bankruptcy Code").

### Background

3.     On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary

petitions for relief under chapter 11 of the Bankruptcy Code.  Contemporaneous therewith, the

Debtors filed a motion to consolidate, for administrative purposes, the Debtors' chapter 11 cases

(the "Chapter 11 Cases").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the

Debtors continue to operate their businesses and manage their properties as debtors-in-

possession.

4.     On the Petition Date, the Debtors filed and served their Emergency

Motion for Interim and Final Orders, under 11 U.S.C. §§ 105, 362, 363 and 364, Approving

Post-Petition Financing and Related Relief and Setting Final Hearing Pursuant to Bankruptcy

Rule 4001(c) (the "DIP Motion").

5.      In connection with the initial negotiation of the Post-Petition Credit

Agreement in 2001, the Debtors solicited and received financing proposals from several financial

institutions, including term sheets from BofA, the Chase Manhattan Bank, Goldman Sachs

Credit Partners L.P., and Deutsche Banc Alex. Brown (now known as Deutsche Bank). The

Debtors selected BofA's proposal because, in the Debtors' business judgment, it was far superior

to those offered by the other prospective lenders. In particular, BofA was the only lender to offer

the commitment level required by the Debtors and also offered the lowest interest and fee rates

for the facility. In addition, BofA's proposal provided for greater financial and operational

flexibility for the Debtors, including acquisition and asset disposition flexibility, as well as a

limited ability to fund the operations of the Debtors non-debtor subsidiaries and affiliates.

6.      On May 3, 2001, the Bankruptcy Court entered its Final Order

Authorizing Secured Post-Petition Financing on a Priority Basis Pursuant to 11 U.S.C. § 364 and

Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362 (the "Original Order"). In

the Original Order this Court found the following facts (the "Findings"):

> A.     The Debtors did not have sufficient available sources of working
>         capital and financing to carry on the operation of their businesses
>         without the loans and other credit accommodations provided for in
>         the Post-Petition Credit Agreement;
>
> B.     The ability of the Debtors to pay employees, maintain business
>         relationships with vendors and suppliers, purchase new inventory,
>         ship and distribute materials throughout the manufacturing process,
>         and otherwise finance their operations is essential to the Debtors'
>         continued viability;

C.     Without the financing pursuant to the Post-Petition Credit Agreement, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors and their estates would occur;

D.     The preservation, maintenance and enhancement of the going concern value of the Debtors, as well as the protection of the interests of others as described herein, are of the utmost significance and importance to a successful reorganization of the Debtors;

E.     The Debtors were unable to sustain their operations with the use of cash otherwise available and are unable to obtain sufficient unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense;

F.     Financing on a post-petition basis was not otherwise available without the Debtors' granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in sections 503(b), 507(b), and 546(c) of the Bankruptcy Code, and securing such indebtedness and obligations with the security interests in and the liens upon the property described in the Original Order pursuant to sections 364(c)(2) and (c)(3);

G.     The Post-Petition Credit Agreement was negotiated in good faith and at arms-length among the Debtors and BofA (as Agent and as a Lender), and any credit extended and loans made to the Debtors and letters of credit issued for the account of the Debtors pursuant to the Post-Petition Credit Agreement were deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of section 364(e) of the Bankruptcy Code, and the Agent and Lenders are entitled to the protections of section 364(e) of the Bankruptcy Code;

H.     The terms of the Post-Petition Credit Agreement were fair and reasonable, reflected the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and were supported by reasonably equivalent value and fair consideration; and

I.     The Debtors were each authorized to execute and deliver to the Lenders the Post-Petition Credit Agreement, the Notes[2] (to the extent requested by the Lenders pursuant to the Loan Documents)

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the DIP Motion and the Original Order.

and any other document of any kind required to be executed and delivered in connection therewith.

7.    The Original Order, among other things, provided:

A.    The Debtors authority to borrow from the Lenders (as defined below), on specified terms and conditions, up to $250,000,000 (the "Commitment"), including revolving loans and up to $150,000,000 in letters of credit ("Letters of Credit"), pursuant to the Post-Petition Credit Agreement;

B.    The granting to the Agent and the Lenders of valid and perfected security interests in and liens upon all presently owned and after-acquired personal and real property of the Debtors of any nature whatsoever, wherever located, as set forth in the Loan Documents except (i) avoidance actions, (ii) stock or other equity interests of the Debtors in any foreign subsidiary, and (iii) life insurance policies owned by, or assigned to, any of the Debtors;

C.    The execution by the Debtors of Notes and other documents requested by the Lenders pursuant to the Post-Petition Credit Agreement and cooperation by the Debtors with and assistance in such process. All such documents shall be deemed to have been perfected on the date of the Original Order, and are deemed and adjudicated senior to any other post-petition filing by any other person or entity with respect to the same collateral;

D.    An Event of Default if (a) any of the Chapter 11 Cases is dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or (b) any order of this Court authorizes: (i) any lien in any property of the Debtors in favor of any party other than the Agent and the Lenders, (ii) the incurring of indebtedness that is entitled to super-priority administrative status, or (iii) the use of Cash Collateral or (c) the Debtors seek any of the foregoing relief;

E.    Upon the occurrence of and during the continuance of any Event of Default, the Agent and the Lenders may, acting pursuant to the Post-Petition Credit Agreement, exercise rights and remedies without further order of or application to the Court to:

(i)    terminate or suspend the Commitment and thereafter cease to issue Letters of Credit or make loans to the Debtors;

(ii)    declare the principal of and accrued interest, fees and other liabilities constituting the Obligations to be due and payable;

        (iii)     set-off amounts in any of the Debtors' accounts maintained with a Lender or otherwise enforce rights against any other Collateral in the possession of the Agent or Lenders;

        (iv)     charge the default rate of interest as set forth in the Loan Documents; and/or

        (v)     take any other action or exercise any other right or remedy permitted to the Lenders under the Loan Documents, the Original Order, or applicable law;

F.     The Debtors waived any right to seek relief to the extent any such relief would in any way restrict or impair the rights and remedies of the Agent or the Lenders set forth in the Original Order and in the Loan Documents;

G.     The Debtors, the Agent and the Lenders are authorized to implement, in accordance with the terms of the Post-Petition Credit Agreement, any non-material modifications of the Post-Petition Credit Agreement without further notice or order of this Court;

H.     The Debtors to afford representatives, agents and/or employees of the Agent and Lenders reasonable access to the Debtors' premises and their records in accordance with the Loan Documents;

I.     The Debtors to be jointly and severally liable for all Obligations;

J.     The Agent and the Lenders to be entitled to the full protection of section 364(e) of the Bankruptcy Code with respect to the Obligations and the Liens created, adjudicated or authorized by the Original Order;

K.     Survival of the Original Order, the claims and liens granted pursuant thereto or under the Loan Documents and the priority of such claims and liens thereunder through and after (i) confirmation of a plan of reorganization in the Chapter 11 Cases; (ii) conversion of any Chapter 11 Case to a chapter 7 case; or (iii) dismissal of any Chapter 11 Case, until all of the Obligations are indefeasibly paid in full in cash and discharged;

L.     The granting to the Agent and the Lenders certain protections including without limitation a super-priority administrative claim over any and all administrative expenses of the kinds specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b) and 546(c) of the Bankruptcy Code (a "Super-Priority Claim"); and

M.    A carve-out from the Super-Priority Claim for fees incurred (i) by the Debtors' or any committees' counsel in an amount up to $7.5 million and (ii) by any trustee and its professionals in an amount up to $1 million.

The foregoing is merely a summary of the contents of the Original Order. A true and correct copy of the Original Order is attached hereto as Exhibit "A".

8.    The Post-Petition Credit Agreement will terminate by its terms on April 1, 2003.

9.    The Debtors have entered into discussions with the Agent regarding the Amendment of the Post-Petition Credit Agreement to provide for, among other things:

A.    extension of its termination date through the earlier of (i) the Debtors' emergence from bankruptcy or (ii) April 1, 2006;

B.    adjustment of certain fees payable to the Agent and the Lenders on the approval of the Amendment and on an on-going basis; and

C.    modification of certain of the financial and other covenants and provisions and/or representations and warranties contained in the Post-Petition Credit Agreement.

Other than as set forth in B. and C. above, the Amendment will seek only to extend the terms of the Original Order.

10.    The Debtors have analyzed their options for continuing their post-petition financing and reviewed recent comparable transactions in the capital markets. The Debtors determined that the most cost-effective approach would be to seek an extension of the Post-Petition Credit Agreement. The Debtors expect that the upfront fees related to the Amendment will be lower than those paid under the Post-Petition Credit Agreement and that ongoing fees and interest rates will be reasonable. Additionally, by extending the Post-Petition Credit Agreement

with BofA, the Debtors will avoid the substantial expenses attendant with negotiating a new credit agreement with new lenders.

11.     The Debtors are negotiating the Amendment with the Agent at arm's length and in "good faith" (as that term is defined in section 364(e) of the Bankruptcy Code), with all parties represented by experienced counsel.  The Debtors anticipate that their negotiations with the Lenders will result in an agreement for the Amendment to the Post-Petition Credit Agreement (as amended by the Amendment, the "Amended Credit Agreement").  In anticipation of the finalization of the Amendment,[3] the Debtors are filing this Motion in order to give creditors and parties-in-interest notice of the nature of the contemplated Amendment.  Upon finalization of the Amendment, and prior to the hearing scheduled on this Motion, the Debtors intend to file a supplement to this Motion which will contain (a) the final negotiated provisions of the Amendment and (b) the proposed form of order incorporating such final negotiated provisions.

## Relief Requested

12.     By this Motion, the Debtors seek authority, pursuant to section 364(c)(1) of the Bankruptcy Code, (a) to extend and modify the Post-Petition Credit Agreement on the general terms and conditions described herein, as finalized and memorialized in the Amendment, or (b) in the alternative, if the Court is unable to enter an Order approving the Amendment at the

---

[3]  The discussions among the Debtors and the Agent and Lenders are ongoing and, as of the filing of this Motion, the Debtors have not obtained any commitment from the Agent or the Lenders with respect to an extension or any other amendment to the Post-Petition Credit Agreement.  The Debtors acknowledge that any such agreement must be set forth in writing and signed on behalf of the Agent, and that, if no such agreement is reached, then this Motion shall not serve as the basis for obtaining any relief that is not affirmatively consented to by the Agent.

omnibus hearing on March 18, 2003 or prior to April 1, 2003, to temporarily extend the Post-Petition Credit Agreement on the same terms through and including May 31, 2003 pending Court approval of the extension and modification of the Post-Petition Credit Agreement.

### Basis for Relief

13.    The Debtors have periodically drawn on the Post-Petition Credit Agreement.  The largest amount outstanding totaled $75 million in addition to the current issuance of approximately $13.9 million of Letters of Credit.  Although there are currently no drawings outstanding aside from the Letters of Credit, the Debtors, in their business judgment, determined that the Post-Petition Credit Agreement needs to be extended at the existing Commitment.  The Debtors' decision to extend the Post-Petition Credit Agreement and the Commitment results from the need for continued financial flexibility in order to (a) manage significant contingencies related to their past and present operations, (b) support general trade, risk management and strategic business initiatives, and (c) provide liquidity protection in the face of significant economic uncertainty.

14.    Specific liquidity contingencies include (a) the likelihood of significant contributions to U.S. qualified pension plans to satisfy the funding requirements of ERISA and (b) possible settlements of environmental, tax and other disputes as may be proposed by the Debtors and approved by the Court in advance of a confirmed plan of reorganization.  In addition, the Debtors require a liquidity facility for maintenance of existing, and issuance of additional letters of credit in the ordinary course of the Debtors' business related to, among other things, the following purposes:  (x) trade related performance and customs bonds, (y) credit

support for commodity and foreign currency risk management instruments and (z) credit support for other insurance, environmental and general trade and corporate related matters.

15.     The necessity, timing and/or advisability of expenditures to address the contingencies described above cannot be predicted with any confidence at this time. However, because of the number of contingencies, and the possibility that at least some of them will require substantial expenditures in order to meet these obligations or pursue business strategies and opportunities, the Debtors have concluded that maintaining their current credit availability level is in the best interests of the Debtors' estates and of their creditors.

16.     This credit availability will give the Debtors the flexibility to preserve, maintain and enhance the going concern value of the Debtors, which is of the utmost significance and importance to a successful reorganization of the Debtors under chapter 11 of the Bankruptcy Code.

17.     Because of the greater certainty of a binding credit commitment, and because the interest rates and costs of maintaining the facility and the available terms are, in the Debtors' view, favorable when compared with recent comparable capital markets transactions, the Debtors concluded that maintaining the facility at its current level is more prudent and cost-effective. Decreasing the facility size at this juncture would create significant uncertainty as to the ability of the Debtors to manage these contingencies. Moreover, the Debtors would face the risk of less favorable terms and more adverse market conditions if they had to reenter the credit markets in the future for additional or replacement financing.

**Standard for Relief**

18.     The Debtors propose to extend the financing under the Post-Petition Credit

Agreement by continuing the Super-Priority Claim granted the Agent in the Original Order on all

amounts owing under the Post-Petition Credit Agreement pursuant to section 364(c)(1) of the

Bankruptcy Code and by granting security interests on the Debtors' property pursuant to sections

364(c)(2) and 364(c)(3) of the Bankruptcy Code.  Section 364(c) of the Bankruptcy Code

provides that:

> If the trustee is unable to obtain unsecured credit allowable under
> section 503(b)(1) of this title as an administrative expense, the
> court, after notice and a hearing, may authorize the obtaining of
> credit or the incurring of debt - (1) with priority over any and all
> administrative expenses of the kind specified in section 503(b) or
> 507(b) of this title; (2) secured by a lien on property of the estate
> that is not otherwise subject to a lien; or (3) secured by a junior
> lien on property of the estate that is subject to a lien.

19.     Section 364(c) financing is appropriate when the trustee or debtor in

possession is unable to obtain unsecured credit allowable as an ordinary administrative claim.  In

re Crouse Group, Inc., 71 B.R. 544, 549, modified on other grounds, 75 B.R. 553 (Bankr. E.D.

Pa. 1987) (secured credit under section 364(c) of the Bankruptcy Code is authorized, after notice

and hearing, upon showing that unsecured credit cannot be obtained).

20.     Courts have articulated a three-part test to determine whether a debtor is

entitled to financing under section 364(c) of the Bankruptcy Code :

(i)     The debtor is unable to obtain unsecured credit under section
364(b) of the Bankruptcy Code, i.e., by allowing a lender only an
administrative claim;

(ii)    The credit transaction is necessary to preserve the assets of the
estate; and

(iii)    The terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender.

Id.

## The Debtors do not have an Alternative to the Amendment

21.    Given the Debtors' current financial condition and capital structure, the Debtors require an extension of their financing for continued financial flexibility in order to manage significant contingencies related to their past and present operations and to support general trade, risk management, insurance, environmental and corporate related matters, as well as for liquidity protection in the face of continued economic uncertainty. A working capital facility of the type and magnitude needed cannot be obtained on an unsecured basis. As was found in the Original Order and remains the case, the potential sources of a $250,000,000 credit facility for the Debtors, obtainable on reasonable terms, were very limited. In these circumstances, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." Bray v. Shenandoah Federal Sav. and Loan Ass'n. (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986). As was also found in the Original Order, all potential lenders requested the protections of section 364(c) of the Bankruptcy Code as a prerequisite for obtaining the financing.

22.    A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of section 364(c) of the Bankruptcy Code. Id. See also In re Plabell Rubber Prods., Inc., 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be

unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for

financing." In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom,

Anchor Sav. Bank FSB v. Sky Valley, 99 B.R. 1997, 120 N.4 (N.D. Ga. 1989).  Thus, as the

Findings remain true and accurate, the requirement of section 364(c) of the Bankruptcy Code

that unsecured credit was unavailable to the Debtors is satisfied.

<u>**Application of the Business Judgment Standard**</u>

23.    After appropriate investigation and analysis, the Debtors' management has

concluded that the Amended Credit Agreement is the best alternative available in these Chapter

11 Cases.  Bankruptcy courts routinely defer to the debtor's business judgment on most business

decisions, including the decision to borrow money.  See Group of Institutional Investors v.

Chicago Mil. St. P. & Pac. Ry., 318 U.S. 523, 550 (1943); In re Simasko Prod. Co., 47 B.R. 444,

449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this

Court."); In re Lifeguard Indus., Inc., 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same).  "More

exacting scrutiny would slow the administration of the debtor's estate and increase its costs,

interfere with the Bankruptcy Code's provision for private control of administration of the estate,

and threaten the court's ability to control a case impartially."  Richmond Leasing Co. v. Capital

Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

24.    In general, a bankruptcy court should defer to a debtor in possession's

business judgment regarding the need for and the proposed use of funds, unless such decision is

arbitrary and capricious.  In re Curlew Valley Assoc., 14 B.R. 506, 511-13 (Bankr. D. Utah

1981).  Courts generally will not second-guess a debtor in possession's business decisions when

those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code." Id. at 513-14 (footnotes omitted).

25.     As the Court found in the Original Orders, the Debtors exercised sound business judgment in entering into the Post-Petition Credit Agreement. The Debtors have exercised sound business judgment in determining that the Amendment to the Post-Petition Credit Agreement is appropriate and have satisfied the legal prerequisites to enter into and borrow under the Amended Credit Agreement. The terms of the Amended Credit Agreement will remain fair and reasonable and in the best interests of the Debtors' estates. Accordingly, the Debtors should be granted authority to enter into the Amendment. The Debtors' management is exercising their best business judgment, consistent with their fiduciary duties, in negotiating the Amendment.

## The Terms of the Amendment are Fair, Reasonable and Appropriate

26.     As was found in the Original Order, the Debtors remain unable to obtain unsecured credit allowable solely as an administrative expense. The Amendment reflects the exercise of sound and prudent business judgment. The Debtors believe that they would not be able to obtain financing on an unsecured basis. In the Debtors' business judgment, the Amended Credit Agreement is the best financing option available in the circumstances in these Chapter 11 Cases.

27.     The Debtors expect that the final terms of the Amended Credit Agreement will be fair, reasonable and adequate and that these terms will neither (a) tilt the conduct of these Chapter 11 Cases and prejudice the powers and rights that the Bankruptcy Code confers for the

benefit of all creditors, nor (b) prevent motions by parties in interest from being decided on their

merits.  Like the facility approved in Sky Valley, the purpose of the Amended Credit Agreement

is to enable the Debtors to maintain the value of their estates while formulating a confirmable

plan of reorganization.  See also In re First South Sav. Ass'n, 820 F.2d 700, 710-15 (5th Cir.

1987).

28.     The Amended Credit Agreement provides that the security interests and

administrative expense claims granted to Lenders remain subject to the Carve Out as established

in the Original Order.  In Ames Dep't Stores, 115 B.R. 346 (Bankr. S.D.N.Y. 1990), the

bankruptcy court found that such "carve-outs" are not only reasonable, but are necessary to

insure that official committees and the debtor's estate will be assured of the assistance of

counsel.  Id. at 40.

29.     Likewise, the various fees and charges required by BofA were found to be

reasonable in the Original Order.  Under the Amended Credit Agreement, the Debtors expect the

upfront fees will be lower than those paid under the Post-Petition Credit Agreement and that

ongoing fees and interest rates will be reasonable and thus can be expected to be appropriate

under the circumstances.  Indeed, courts routinely authorize similar lender incentives beyond the

explicit liens and other rights specified in section 364 of the Bankruptcy Code.  See In re

Defender Drug Stores, Inc., 145 B.R. 312, 316 (9th Cir. B.A.P. 1992) (authorizing credit

arrangement under section 364 of the Bankruptcy Code, including a lender "enhancement fee").

30.     The Amendment is clearly for the benefit of the Debtors' estates and

creditors as the means of furthering the Debtors' relationships with their vendors, and of

preserving and enhancing the Debtors' operations.  The continued availability of credit under the

Amended Credit Agreement and the ongoing availability of letters of credit should give the

Debtors' vendors and suppliers the necessary confidence to continue ongoing relationships with

the Debtors, including the extension of credit terms for the payment of goods and services, and

be viewed favorably by the Debtors' employees and customers, and all parties-in-interest.

Therefore, approval of the Amendment is beneficial to the continued operation and health of the

Debtors' businesses.

31.    The Debtors are negotiating the terms of the Amendment at arms' length

and pursuant to their business judgment, which is to be accorded deference.  See, e.g., Brav v.

Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986)

(approving debtor-in-possession financing necessary to sustain seasonal business); In re Ames

Department Stores, 115 B.R. 34, 40 (S.D.N.Y. 1990) ("cases consistently reflect that the court's

discretion under section 364 of the Bankruptcy Code is to be utilized on grounds that permit

reasonable business judgment to be exercised so long as the financing agreement does not

contain terms that leverage the bankruptcy process and powers or its purpose is not so much to

benefit the estate as it is to benefit parties in interest").

32.    Accordingly, the Lenders and BofA should continue to be accorded the

benefits of section 364(c)(1) of the Bankruptcy Code with respect to the Amended Credit

Agreement.

33.     The Debtors believe that the approval of the Amendment is in the best

interest of their bankruptcy estates, their creditors and all parties-in-interest, and that this Court

should grant this Motion and approve the Amendment.

### Request for Alternative Interim Relief

34.     In the alternative, if the Court is unable to enter an order approving the

Amendment at the omnibus hearing on March 18, 2003 or otherwise prior to April 1, 2003, the

Debtors request, and the Agent has agreed,[4] to provide a sixty (60) day extension of the Post-

Petition Agreement through May 31, 2003 (the "Interim Extension") in order to obtain Court

approval of the Amendment.

35.     The necessity of certain outstanding letters of credit (the "Outstanding

LOCs") to the smooth operation of the Debtors' businesses requires the Interim Extension be

granted prior to the expiration of the Post-Petition Credit Agreement on April 1, 2003.  The

Outstanding LOCs have been provided by the Lenders in connection with (a) numerous trade-

related performance bonds, (b) certain insurance matters and (c) certain environmental bonding

requirements.  The current amount of the Outstanding LOCs is approximately $13.9 million.

36.     If the Post-Petition Agreement were to terminate, the Debtors would be

required either to cash collateralize the Outstanding LOCs at 100 cents on the dollar or face

serious disruption to its relations with its customers, insurers and regulatory authorities.  If Court

approval of the Amendment cannot be obtained by April 1, 2003, the Interim Extension would

---

[4] The Agent's agreement to provide the Interim Extension is subject to the approval of the Lenders.

be the least expensive and disruptive means of maintaining the stability of the Debtors' business

pending Court approval of the Amendment.

37.     The Interim Extension will make no modification of the terms of the Post-

Petition Credit Agreement except the extension of the termination date to May 31, 2003.  The

Debtors have agreed to pay Agent a fee of not more than $100,000.00 for the Interim Extension.

### Notice

38.     Notice of this Motion has been given to:  (i) the United States Trustee,

(ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the

Debtors' prepetition lenders, (iv) counsel to the Committees and (v) all those parties that

requested service and notice of papers in accordance with Fed.R.Bankr.P. 2002.  In light of the

nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order, substantially in the form attached hereto, granting this Motion and approving the Amendment, as described above and approve those modifications to the Post-Petition Credit Agreement set out in the Amendment, or, in the alternative, if the Court is unable to enter an order approving the Amendment at the omnibus hearing on March 18, 2003 or prior to April 1, 2003, enter an order approving the Interim Extension; and (ii) grant such other and further relief as is just and proper.

Dated: February 10, 2003

Respectfully submitted,

KIRKLAND & ELLIS
James H.M. Sprayregen, P.C.
James W. Kapp III
Janet S. Baer
Christian J. Lane
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
Scotta McFarland (Bar No. 4184)
Paula Galbraith (Bar No. 4258)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession