IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**AFFIDAVIT OF ROBERT M. TAROLA IN SUPPORT OF
THE DEBTORS' MOTION FOR AUTHORITY TO EXTEND
AND MODIFY DEBTOR IN POSSESSION FINANCING**

Robert M. Tarola, being duly sworn, deposes and says:

1. I am the Senior Vice President and Chief Financial Officer of W. R. Grace & Co., a corporation organized under the laws of the State of Delaware, one of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in this proceeding. I offer this affidavit in support of the Debtors' Motion for Authority to Extend and Modify Debtor-In-Possession Financing (the "Motion"). Capitalized terms not defined herein shall have the meaning accorded to them in the Motion.

2. In connection with the initial negotiation of the Post-Petition Credit Agreement in 2001, the Debtors solicited and received financing proposals from several financial institutions, including term sheets from Bank of America, N.A., the Chase Manhattan Bank, Goldman Sachs Credit Partners L.P., and Deutsche Banc Alex. Brown (now known as Deutsche Bank). The Debtors selected BofA's proposal because, in the Debtors' business judgment, it was far superior to those offered by the other prospective lenders. In particular, BofA was the only lender to offer the commitment level required by the Debtors and also offered the lowest interest and fee rates for the facility. In addition, BofA's proposal provided for greater financial and operational

flexibility for the Debtors, including acquisition and asset disposition flexibility, as well as a limited ability to fund the operations of the Debtors non-debtor subsidiaries and affiliates.

3. On May 3, 2001, the Bankruptcy Court entered its Final Order Authorizing Secured Post-Petition Financing on a Priority Basis Pursuant to 11 U.S.C. § 364 and Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362. The Post-Petition Credit Agreement will terminate by its terms on April 1, 2003.

4. After appropriate investigation and analysis, the Debtors' management has concluded that the Amended Credit Agreement, as currently proposed by BofA, is the best alternative available in these Chapter 11 Cases. The Debtors have exercised their considered business judgment in determining that the Amendment to the Post-Petition Credit Agreement proposed by BofA is fair and reasonable and in the best interests of the Debtors' estates.

5. The Debtors have analyzed their options for continuing their post-petition financing and reviewed recent comparable transactions in the capital markets. The Debtors determined that the most cost-effective approach would be to seek an extension of the Post-Petition Credit Agreement. The Debtors expect that the upfront fees related to the Amendment will be lower than those paid under the Post-Petition Credit Agreement and that ongoing fees and interest rates will be reasonable. Additionally, by extending the Post-Petition Credit Agreement with BofA, the Debtors will avoid the substantial expenses attendant with negotiating a new credit agreement with new lenders.

6. The Debtors have entered into discussions with the Agent regarding the Amendment of the Post-Petition Credit Agreement to provide for, among other things:

(a) extension of its termination date through the earlier of (i) the Debtors' emergence from bankruptcy or (ii) April 1, 2006;

(b) adjustment of certain fees payable to the Agent and the Lenders on the approval of the Amendment and on an on-going basis; and

(c) modification of certain of the financial and other covenants and provisions and/or representations and warranties contained in the Post-Petition Credit Agreement.

Other than as set forth in (b) and (c) above, the Amendment will seek only to extend the terms of the Original Order.

7. The Debtors are negotiating the Amendment with the Agent at arm's length, with all parties represented by experienced counsel. The Debtors anticipate that their negotiations with the Lenders will result in an agreement for the Amendment to the Post-Petition Credit Agreement.

8. The Debtors have periodically drawn on the Post-Petition Credit Agreement. The largest amount outstanding totaled $75 million in addition to the current issuance of approximately $13.9 million of Letters of Credit. Although there are currently no drawings outstanding aside from the Letters of Credit, the Debtors, in their business judgment, determined that the Post-Petition Credit Agreement needs to be extended at the existing Commitment. The Debtors' decision to extend the Post-Petition Credit Agreement and the Commitment results from the need for continued financial flexibility in order to: (a) manage significant contingencies related to their past and present operations, (b) support general trade, risk management and strategic business initiatives, and (c) provide liquidity protection in the face of significant economic uncertainty.

9. Specific liquidity contingencies include: (a) the likelihood of significant contributions to U.S. qualified pension plans to satisfy the funding requirements of ERISA and

(b) possible settlements of environmental, tax and other disputes as may be proposed by the Debtors and approved by the Court in advance of a confirmed plan of reorganization. In addition, the Debtors require a liquidity facility for maintenance of existing, and issuance of additional, letters of credit in the ordinary course of the Debtors' business related to, among other things, the following purposes: (x) trade related performance and customs bonds, (y) credit support for commodity and foreign currency risk management instruments and (z) credit support for other insurance, environmental and general trade and corporate related matters.

10. The necessity, timing and/or advisability of expenditures to address the contingencies described above cannot be predicted with any confidence at this time. However, because of the number of contingencies, and the possibility that at least some of them will require substantial expenditures in order to meet these obligations or pursue business strategies and opportunities, the Debtors have concluded that maintaining their current credit availability level is in the best interests of the Debtors' estates and of their creditors.

11. The purpose of the Amended Credit Agreement is to enable the Debtors to maintain the value of their estates in these Chapter 11 Cases while they formulate a confirmable plan of reorganization. The availability of credit under the Amended Credit Agreement will give the Debtors the flexibility to preserve, maintain and enhance the going concern value of the Debtors, which is of the utmost significance and importance to a successful reorganization of the Debtors under chapter 11 of the Bankruptcy Code. The continued availability of credit under the Amended Credit Agreement and the ongoing availability of letters of credit should give the Debtors' vendors and suppliers the necessary confidence to continue ongoing relationships with the Debtors, including the extension of credit terms for the payment of goods and services, and be viewed favorably by the Debtors' employees and customers, and all parties-in-interest.

12. Because of the greater certainty of a binding credit commitment, and because the interest rates and costs of maintaining the facility and the available terms are, in the Debtors' view, favorable when compared with recent comparable capital markets transactions, the Debtors concluded that maintaining the facility at its current level is prudent and cost-effective. Decreasing the facility size at this juncture would create significant uncertainty as to the ability of the Debtors to manage these contingencies. Moreover, the Debtors would face the risk of less favorable terms and more adverse market conditions if they had to go into the credit markets in the future for additional financing.

13. A working capital facility of the type and magnitude needed cannot be obtained by the Debtors on an unsecured basis allowable solely as an administrative expense. The potential sources of a $250,000,000 credit facility for the Debtors, obtainable on reasonable terms, were very limited. In the Debtors' business judgment, the Amended Credit Agreement is the best financing option available in the circumstances in these Chapter 11 Cases.

14. In the event that the Amendment is not approved prior to the expiration of the Post-Petition Credit Agreement, an extension of the Post-Petition Credit Agreement will be necessary to prevent a disruption in the Debtors' businesses. The Debtors have certain Outstanding LOCs which are necessary to the smooth operation of the Debtors' businesses. The Outstanding LOCs have been provided by the Lenders in connection with (a) numerous trade-related transactions, (b) certain insurance contracts and (c) certain environmental bonding requirements.

15. If the Post-Petition Agreement were to terminate, the Debtors would be required either to cash collateralize the Outstanding LOCs at 100 cents on the dollar or face serious disruption to its relations with its vendors and insurers. If Court approval of the Amendment cannot be obtained by April 1, 2003, the Interim Extension would be the least expensive and disruptive means of maintaining the stability of the Debtors' business pending Court approval of the Amendment.

16. The Interim Extension will make no modification of the terms of the Post-Petition Credit Agreement except the extension of the termination date to May 31, 2003. The Debtors have agreed to pay BofA a fee of not more than $100,000.00 for the Interim Extension.

AFFIANT FURTHER SAYETH NOT

Dated this 10th day of February, 2003.

_____
Robert M. Tarola

SUBSCRIBED AND SWORN TO BEFORE ME

this 10th day of February, 2003.

_____
Notary Public
My Commission Expires:

MOLLIE K. SPRINKLE
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires December 1, 2006