IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**Objection Deadline: February 27, 2003, at 4:00 p.m.**
**Hearing Date: March 17, 2003, at 12:00 p.m. (only if objections are received)**

## MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING, BUT NOT REQUIRING, THE IMPLEMENTATION OF THE 2003-2005 LONG-TERM INCENTIVE PROGRAM FOR KEY EMPLOYEES

The above-captioned debtors and debtors-in-possession (collectively, the

"Debtors") hereby move this Court (the "Motion") for entry of an order authorizing, but not

requiring, the implementation of the Grace 2003–2005 Long Term Incentive Plan (the "2003-

2005 LTIP") for certain key employees, as part of a continuing long-term, performance-based

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

incentive compensation program for those employees.  In support of this Motion, the Debtors

respectfully state as follows:

## Jurisdiction

1.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  This

matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this

proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and

363(b) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

## Background

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed a

voluntary petition for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter

11 Cases"), which have been consolidated for administrative purposes only.  Pursuant to sections

1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and

manage their properties as debtors-in-possession.

4.      On April 2, 2001, upon a motion of the Debtors (the "Wages Motion"), the

Court entered an order that, inter alia, authorized and approved on an interim basis certain

compensation programs for key employees (the "Key Employees"), including the 2001-2003

Long-Term Incentive Plan (the "2001-2003 LTIP"). On June 22, 2001, the Court entered a final order authorizing and approving the 2001-2003 LTIP.[2]

5.       On August 26, 2002, the Court entered an order authorizing, but not requiring, the implementation of revised compensation programs that, inter alia, authorized and approved the implementation of the 2002-2004 long-term incentive plan (the "2002-2004 LTIP") for Key Employees, as part of a continuing long-term, performance-based incentive program for Key Employees (the "Ongoing Long-Term Incentive Program").

6.       The Ongoing Long-Term Incentive Program contemplates the implementation of a specific long-term incentive plan each year, with payouts based on the performance of the Debtors' businesses, measured on a three-year performance period commencing with the year in which the specific plan is implemented. To date, the Ongoing Long-Term Incentive Program consists of (i) the 2001-2003 LTIP and (ii) the 2002-2004 LTIP.

7.       In accordance with its design and goals regarding motivating key employees, and the expectation of key employees, the ordinary administration and implementation of the Ongoing Long-Term Incentive Program requires that annual long-term incentive awards be made to key employees in the ordinary course of the Debtors' business in the form of an "LTIP." The 2003-2005 LTIP continues the implementation of that overall strategy. Adoption of the 2003-2005 LTIP is consistent with the Ongoing Long-Term Incentive

---

[2]  In the Wages Motion, the Debtors reserved the right to determine whether a particular employee is a Key Employee pursuant to the applicable retention and long-term incentive programs. For purposes of this motion, the Debtors continue to reserve the right to determine whether a particular employee is a Key Employee with respect to the 2003-2005 LTIP; and the right to vary the selection of employees as Key Employees from the selection under any prior long-term incentive plan.

Program, and with respect to its design, as discussed above, is also consistent with the 2002-2004

LTIP, which was previously adopted as part of the Ongoing Long-Term Incentive Program.

## Relief Requested

8.      By their motion, the Debtors request that the Court authorize, but not

require, the continuation of the Ongoing Long-Term Incentive Program by authorizing, but not

requiring, the implementation of the 2003-2005 LTIP, pursuant to sections 105(a) and 363(b) of

the Bankruptcy Code.

## Similarity of the 2002-2004 and 2003-2005 LTIP Plans

9.      In all material respects, the provisions of the 2003-2005 LTIP are identical

to the provisions of the 2002-2004 LTIP, which was authorized and approved by the Court

pursuant to the Revised Compensation Order.  Specifically, the provisions of the 2003-2005

LTIP are the same as the provisions of the 2002-2004 LTIP in the following respects:

(a)      The payments under the 2003-2005 LTIP will consist of 100% cash.

(b)      Business performance is measured on a three-year performance period, commencing with 2003.[3]

(c)      The applicable compound annual 3-year growth rate in core earnings before interest and taxes ("EBIT") to achieve an award of 100% of the 2003-2005 LTIP target payment (the "Base Target Payment") will be 6% per annum.

(d)      Partial payouts for EBIT growth rates between 0% and 6% will be implemented on a straight-line basis.

(e)      The amount of the 2003-2005 LTIP target payment will be increased at EBIT compound annual growth rates in excess of the 6%, up to a maximum of 200% of the Base Target Payment at an annual compound growth EBIT growth rate of 25%.

---

[3]  The 2002-2004 LTIP three-year period commenced with 2002.

(f)     Payouts (if earned) will occur in 1/3 and 2/3 installments,
        respectively, in March following years 2 and 3 of the plan.

(g)     The total target payout for the 2003-2005 LTIP will be no more
        than $11.8 million, which is the same total target payout with
        respect to the 2002-2004 LTIP.[4]

10.     The sole difference of significance between the 2002-2004 LTIP and the
2003-2005 LTIP is the three-year period during which performance is measured.
Implementation of the Ongoing Long-Term Incentive Program necessitates a renewed LTIP be
initiated each year, with no more than three LTIPs in effect in any year.  Thus, upon approval of
the Court, in 2003, the 2001-2003 LTIP, the 2002-2004 LTIP and the 2003-2005 LTIP will be
active.

## Basis for Relief

11.     Section 105(a) of the Bankruptcy Code "permits the court to issue any
order that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. §105(a).
This Court has recognized that the broad reach of its equitable powers under section 105(a) of
the Bankruptcy Code authorizes, among other things, implementation of key employee retention
programs, including long-term incentive plans.

12.     Section 363(b) provides in relevant part that "the trustee, after notice and a
hearing, may use, sell, or lease, other than in the ordinary course of business, property of the
estate."  A court has the statutory authority to authorize a debtor to use property of the estate
pursuant to section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the

---

[4]  The calculation of total target payout excludes the CEO under both the 2002-2004 LTIP and the 2003-2005 LTIP.

debtor's sound business judgment and when the use of the property is proposed in good faith.  In re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991); see also Fulton State Bank v. Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by "some articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr.D.Del. 1999); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

      13.     Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business.  See In re Lionel Corp., 722 F.2d 1063, 1070-71 (2d Cir. 1983).  Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest.  See In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992).

      14.     Generally, courts authorize debtors to implement key employee incentive programs because key employees are essential to a debtor's continued operations.  See In re America West Airlines, Inc., 171 B.R. 674, 678 (Bankr. D. Ariz. 1994) (approving success bonuses to certain officers and employees as within Debtor's sound business judgment); In re Interco Inc., 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991) (authorizing the debtor to assume prepetition severance contracts and approving performance based retention program to ensure critical employees remained with the debtor).

15.     To continue to maintain cohesive and motivated management teams

during the chapter 11 process—particularly in large chapter 11 cases—debtors frequently

implement various combinations of incentive compensation programs.  Without such programs,

essential key employees will often tend to leave a debtor's employ if other employment

opportunities arise offering greater financial rewards without the uncertainties inherent in a

debtor's reorganization process.  Recognizing these risks, similar employment and incentive

plans have been authorized by this and other courts, including In re Homelife Corporation et al.,

Case No. 01-02412 (Bankr. D. Del. July 16, 2001); In re Acme Metals Incorporated, et al., Case

No. 98-2179 (Bankr. D. Del. February 23, 1999 and March 1, 1999); In re FPA Medical

Management, Inc., et al., Case Nos. 98-1596 through 98-1685 (Bankr. D. Del. September 23,

1998); In re APS Holding Corp., et. al., Case No. 98-00197 (Bankr. D. Del. September 2, 1998);

and In re PWS Holding Corporation, Brunos, Inc., et. al., Case Nos. 98-212 through 98-223

(Bankr. D. Del. June 3, 1998).

16.     The Ongoing Long-Term Incentive Program was developed in conjunction

with Human Capital Advisor Services Group of Deloitte & Touche, at the time that the Debtors

sought approval of the 2002-2004 LTIP.  The 2003-2005 LTIP will have the effect of continuing

the Ongoing Long-Term Incentive Program developed at that time.

17.     Permitting the Debtors to continue the Ongoing Long-Term Incentive

Program by implementing the 2003-2005 LTIP will accomplish the sound business purpose of

aiding the maximization of the value of the Debtors' estates and furthering the Debtors' efforts to

successfully reorganize.  The Key Employees are experienced and talented individuals who are

intimately familiar with the Debtors' businesses and can easily obtain employment elsewhere. Furthermore, the Debtors' management believes that without continuing the Ongoing Long-Term Incentive Programs, it would be difficult and expensive to attract and hire qualified replacements for any Key Employees who do leave.

18.    Moreover, such a loss of Key Employees likely would adversely affect the Debtors' operations by lowering the morale of the remaining employees because of the appearance of disarray and disruption generated by such departures.  It would also burden the Debtors' remaining employees with additional responsibilities.  All of these factors would make it more likely that the remaining Key Employees, too, would explore other employment opportunities.  The loss of even a few Key Employees could therefore potentially lead to more losses.  Such a scenario would negatively impact the Debtors' operations.  The Debtors therefore must protect a critical mass of their high-performing employees in sufficient numbers to profitably operate their businesses during the pendency of these Chapter 11 Cases, thus maximizing the likelihood of a successful restructuring.

19.    Additionally, given the current status of the Chapter 11 Cases, the Debtors' management believes that it will be unable to maintain employee morale and loyalty if it does not continue the Ongoing Long-Term Incentive Program by implementing the 2003-2005 LTIP.  The employees' morale, continued loyalty to the Debtors and faith in the Debtors' management will be furthered by the 2003-2005 LTIP because the Ongoing Long-Term Incentive Program clearly signals the Debtors' commitment to continuing to profitably grow

their businesses for the benefit of the Debtors' stakeholders, including their employees.  And, the

Debtors need such programs to maximize their chances of successfully reorganizing.

20.    In light of these circumstances, the Debtors' specific goals in

implementing the 2003-2005 LTIP include:

(a)    Continuing the Ongoing Long-Term Incentive Program, which will
provide cash-based, long-term incentive opportunities to achieve
pay levels that are not only competitive within the specialty
chemical industry, but also are competitive with and comparable to
similar programs instituted by other companies in chapter 11
because of mass tort liabilities; and

(a)    Providing significant cash incentive compensation potential to Key
Employees during the Chapter 11 Cases.

21.    In light of the foregoing, the Debtors believe that the incentives provided

by the 2003-2005 LTIP are reasonable and appropriate and will enhance the prospect of retaining

Key Employees and, ultimately, attaining a successful result in these Chapter 11 Cases.  For all

of the foregoing reasons, the 2003-2005 LTIP should be approved.

**Notice**

22.    Notice of this Motion has been given to: (i) the United States Trustee,

(ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the

Debtors' prepetition lenders, (iv) counsel to the Committees and (v) all those parties that

requested service and notice of papers in accordance with Fed.R.Bankr.P. 2002.  In light of the

nature of the relief requested, the Debtors submit that no further notice is required.

**No Prior Request**

23.    No prior motion for the relief requested herein has been made to this or

any other Court.

91100-001\DOCS_DE:64305.1                     9

WHEREFORE, the Debtors respectfully request that the Court authorize, but not require, the Debtors (i) to continue the Ongoing Long-Term Incentive Program by authorizing, but not requiring, the implementation of the 2003-05 Long Term Incentive Plan, (ii) to take such other action as may be necessary or appropriate to effect the intent of this Motion, and (iii) such other and further relief as the Court deems just and proper.

Wilmington, Delaware
Dated: February 10, 2003

Respectfully submitted,
KIRKLAND & ELLIS
James H.M. Sprayregen, P.C.
James W. Kapp, III
Janet S. Baer
Christian J. Lane
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
Scotta E. McFarland (Bar No. 4184)
Paula A. Galbraith (Bar No. 4258)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Co-Counsel for the Debtors and Debtors in Possession