**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF WACHTELL, LIPTON, ROSEN & KATZ**
**FOR THE SIXTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its

capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Fee

Application of Wachtell, Lipton, Rosen &Katz for the Sixth Interim Period[1] (the "Application").

## BACKGROUND

1.      Wachtell, Lipton, Rosen & Katz ("Wachtell") was retained as special corporate

counsel to the Debtors.  In the Application, Wachtell seeks approval of fees totaling $147,341.50 and

costs totaling $24,879.53 for its services from April 2, 2001, through September 30, 2002[1].

2.      In conducting this audit and reaching the conclusions and recommendations contained

herein, we reviewed in detail the Application in its entirety, including each of the time entries

included in the exhibits to the Application, for compliance with 11 U.S.C. §330, Local Rule 2016-2

of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended

Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications

---

[1] Wachtell's Application seeks reimbursement for fees and expenses incurred between April 2, 2001, through
September 30, 2002.  We found that it was not practical for us to separate their fees and expenses into the
appropriate interim periods, and thus we made no attempt to do so.

for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served on Wachtell an initial report based on our review and received a response from Wachtell, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.    In our initial report, we noted that the majority of Wachtell timekeepers lumped their time entries and failed to provide sufficient detail.  We noted that timekeeper Nussbaum was particularly remiss in these areas.  The Guidelines, paragraph  II.D.5. states "[t]ime entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour.  Services should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry;. . . [t]ime entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication.  Time entries for court hearings and conferences should identify the subject of the hearing or conference."  We asked Wachtell to advise all timekeepers to provide more detail and to avoid lumped time entries in future applications.

### Specific Time and Expense Entries

4.    We noted that on April 12 & 18, 2001, D. Bryan ($400) performed conflict checks. The total time spent was 2 hours for $800.  The entries are provided below.

| 04/12/01 | D. Bryan | 1.70 | Draft/finalize supplemental disclosure affidavit and do conflicts check for same. |
| 04/18/01 | D. Bryan | 0.30 | Calls, emails re switching over conflicts |

> check process to J. O/Brien; supplemental
> conflicts/disclosure per K & E additional
> names.

Conflict checks would appear to benefit the applicant and not the bankruptcy estate. We asked Wachtell to explain how the estate benefits from these conflict checks. Wachtell responded as follows.

> The 2.0 hours identified were spent by David Bryan in performing conflict checks and providing disclosure with respect to voluminous lists of creditors and other stakeholders of W.R. Grace. These types of checks and disclosure are not necessary in normal corporate engagements, but were necessary in this case and beneficial to the estate in demonstrating that WLR&K had no substantial conflicts with the estate arising from relationships with any of the entities on such lists.

We appreciate Wachtell's response; however, we maintain that these conflict check entries primarily benefitted the applicant rather than the estate and therefore recommend a reduction of $800.00 in fees.

5.     In our initial report, we noted that D. Cheifitz ($90) and C. Song ($100) performed tasks that could be considered noncompensable for a total of 43 hours and $3,970. The entries are provided below.

| 06/12/01 | D. Cheifitz | 5.00 | Organized and indexed files previously presented to the board of directors. |
| 06/14/01 | D. Cheifitz | 7.00 | Organized and indexed files previously presented to the board of directors. |
| 06/15/01 | D. Cheifitz | 5.00 | Organized and indexed files previously presented to the board of directors. |
| 06/18/01 | D. Cheifitz | 6.00 | Organized and indexed files previously presented to the board of directors. |
| 06/19/01 | D. Cheifitz | 2.00 | Organized and indexed files previously presented to the board of directors. |
| 06/25/01 | D. Cheifitz | 1.00 | Organized and indexed files previously presented to the board of directors. |
| 08/09/01 | D. Cheifitz | 5.00 | Organized and indexed files previously presented to the board of directors. |

| 08/10/01 | D. Cheifitz | 2.00 | Organized and indexed files previously presented to the board of directors. |
| 02/18/02 | C. Song | 10.00 | Received boxes at warehouse; made labels; redacted and replaced docs in 3 boxes (4 sets of 3 boxes); packed up boxes; shipped out boxes; organized boxes and listed them for tomorrow's shipment |

Paragraph II. E. 7. of the Guidelines states that "...[o]verhead includes word processing, proofreading, secretarial and other clerical services, . . ." We asked Wachtell to explain why these activities should be considered compensable. Wachtell responded as follows:

> The tasks described were not clerical or nonreimbursable overhead. David Cheifitz and Clara Song are litigation paralegals. The 43 hours of time identified were expended in organizing and indexing the materials presented to Grace's directors in connection with the board's consideration of the Sealed Air and Fresenius transactions, which became the subject to multi-billion fraudulent transfer lawsuits. Such organizing and indexing was undertaken at the request and for the benefit of the client for purposes of litigation preparation and complying with document production demands relating to such lawsuits.

We believe we understand Wachtell's response, and we accept the explanation for the organizing and indexing of files. However, we maintain that the 10 hours billed by Clara Song should still be viewed as noncompensable. Thus, we recommend a reduction of $1,000.00 in fees.

6.    We note that between 06/26/01 and 08/09/01 D. Rolfes ($95) and D. Pauls ($400) spent a total of 72.40 hours and $9,989.00 researching, drafting and revising a memorandum regarding "substantial authority". See Exhibit A. The U.S. Trustee Guidelines Paragraph, I.E. states ". . . [i]n evaluating fees for professional services, it is relevant to consider various factors including the following: the time spent; the rates charged; whether the services were necessary t o the administration of, or beneficial towards the completion of, the case at the time they were rendered; whether services were performed within a reasonable time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;. . ." Delegating the researching and

drafting of a memorandum to a $95.00 per hour professional, would at first glance seem appropriate. However, upon closer inspection we note that D. Rolfes is a summer intern and billed a total of 64.20 hours to the estate, 60.2 hours of which were devoted to this project.  It is not apparent from the time entries the purpose of the memorandum or its value to the estate.  We asked Wachtell to provide further information regarding this memorandum and its necessity and benefit to the estate. Wachtell responded as follows:

> The purpose of the "substantial authority" memorandum was to assist Ms. Elyse Napoli Filon, Vice President and Director of Taxes of W.R. Grace & Co., in developing a strategy for an Internal Revenue Service audit.  Ms. Filon was considering taking a position in the tax audit and requested the legal memorandum analyzing whether Ms. Filon had sufficient legal authority to take the position she was considering.  The assignment was discussed at the meeting on June 29, 2001, attended by Ms. Filon, Ms. Paul and Ms. Rolfes.  The strategy under consideration was aimed at addressing a risk to Grace in the amount of approximately $45 million. The memorandum was an important part of the determination whether to pursue the strategy.  Ms. Rolfes, a Harvard Law School student and the author of the memorandum, researched the issue extensively and thoroughly. The memorandum was seven pages long and cited at least 12 cases and two secondary sources.  The memorandum was also reviewed extensively by Ms. Paul.

We understand and accept Wachtell's response and therefore have no objection to these fees.

      7.      In our initial report, we noted that on August 15, 2001, E. Roth ($675), A. Brownstein ($650), and M. Wolinsky ($650) participated in a meeting with attorneys from K&E.  The total time spent was 10.80 hours for $7,115.

| 08/15/01 | E. Roth | 3.80 | Meeting w/Brownstein, Wolinsky, K&E. |
| 08/15/01 | A. Brownstein | 3.50 | Mtg@ K&E w/Bernik, Siegel. |
| 08/15/01 | M. Wolinsky | 3.50 | mtg@ K&E to review fraud conv. issues |

Local Rule 2016-2(d)(ix) states that "[t]he activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role."  Paragraph II.D.5. of the Guidelines states that "[i]f more than one professional

from the applicant firm attends a hearing or conference, the applicant should explain the need for

multiple attendees.".  We asked Wachtell to explain why it was necessary for more than one

professional to participate in this conference call.  Wachtell responded as follows:

> It is unusual for three WLR&K partners to attend the same meeting, and the
> preliminary report notes only a single instance.  The particular meeting in question
> was a key strategic and tactical meeting with the client regarding the Sealed Air and
> Fresenius fraudulent transfer litigations, which are key elements of the chapter 11
> cases and involve billions of dollars of claims. Messrs. Nussbaum and Wolinsky are
> senior litigators with extensive experience whose advice the client sought at the
> meeting on substantive and procedural matters. Mr. Brownstein was the corporate
> partner who had represented W. R. Grace in connection with the Sealed Air and
> Fresenius transactions, and as a consequence has extensive and detailed knowledge
> regarding the transactions and the parties.  Under these circumstances, the attendance
> of three WLR&K partners at this particular meeting was necessary and appropriate.

We accept Wachtell's explanation and have no objection to these fees.

    8.    We noted that the Application has a summary of expenses but fails to provide any

details.  The Guidelines Rule II.  E. provides that "[f]actors relevant to a determination that the

expense is proper include the following: . .3. [w]hether applicant has provided a detailed itemization

of all expenses including the date incurred, description of expense (e.g., type of travel, type of fare,

rate, destination), . . .".  We asked Wachtell to  provide detailed expense entries with regard to those

expenses for which it wished to be reimbursed.  After reviewing the expense detail[2], we had no

objection to Wachtell's expenses except for those enumerated below as numbers 9 and 10.

    9.    We noted that neither the Application nor the expense summary provides the per page

charge for facsimile or copies.  Delaware Local Rules, Rule 2016-2(e)(iii) states, "[t]he motion shall

state the requested rate for copying charges (which shall not exceed $.15 per page), computer

---

[2] Wachtell forwarded the requested expense detail, and we reviewed  it.  However, Wachtell did not provide a
version from which we could electronically copy and paste, and thus we were unable to attach this detail as an
exhibit in our final report.

assisted legal research charges (which shall not be more than the actual cost), and out-going

facsimile transmission charges (which shall not exceed $1 per page, with no charge for incoming

facsimile charges)."   We asked Wachtell to provide the per page charges for these expenses.

Wachtell responded as follows:

> The application seeks reimbursement for copying of 21,294 pages at $0.16 per page.
> Computer assisted legal research is charged at actual cost. Outgoing facsimiles are
> charged at $1 per page; there is no charge for incoming facsimiles.

We appreciate Wachtell's response.   However, in accordance with Rule 2016-2(e)(iii), we

recommend a $.01 per page reduction in copying charges for a $212.94 reduction in expenses.

10.    We further noted that there are expense entries totaling $2,348.70 for items that could

be considered nonreimburseable overhead.  These expense entries are provided below.

| | |
|---|---|
| Duplicating/Velobinding/Tab | 365.95 |
| Proofreading | 105.00 |
| Word Processing | 135.00 |
| Night Secretary | 787.50 |
| Duplicating Overtime | 309.75 |
| Messengers Overtime | 325.50 |
| Messengers Double-Time | 140.00 |
| Secretarial Overtime | 180.00 |

The Guidelines, Paragraph II.E.7. states in part "[f]actors relevant to a determination that the expense

is proper include the following: . . [w]hether the expenses appear to be in the nature of

nonreimbursable overhead . . .[o]verhead includes word processing, proofreading, secretarial and

other clerical services, rent, utilities, office equipment and furnishings, insurance, taxes, local

telephone and monthly car phone charges, lighting, heating and cooling, and library and publications

charges."   We asked Wachtell to explain why these entries should not be considered

noncompensable activities or nonreimburseable overhead.  Wachtell responded as follows:

WLR&K does not consider any of the items identified to be nonreimburseable overhead. The Duplicating/Velobinding/Tab includes the cost of velobinding supplies (plastic covers and binding materials) used specifically for assembling materials created in connection with the rendition of legal services to the client. Proofreading and Word Processing costs are allocated costs of professional proofreaders and word processors for documents prepared in connection with the rendition of legal services to the client. The remaining identified items are night and overtime charges incurred by WLR&K in making available to the client WLR&K support staff during non-regular business hours when the exigencies of the client's needs required the incurrence of such extraordinary costs.

We appreciate Wachtell's response. However, we would maintain that duplicating, proofreading and word processing are noncompensable activities. Thus we recommend a reduction of $605.95 in expenses.

## CONCLUSION

11.    Thus we recommend approval of fees totaling $145,541.50 ($147,341.50 minus $1,800.00) and costs totaling $24,060.64 ($24,879.53 minus $818.89) for Wachtell's services from April 2, 2001, through September 30, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
        Warren H. Smith
        Texas State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

     I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 11th day of February, 2003.

_____
        Warren H. Smith

## SERVICE LIST

Notice Parties

### The Applicant

Harold S. Novikoff
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019

### The Debtors

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

### Counsel for the Debtors

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones,
P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

### Counsel for the Official Committee of Unsecured Creditors

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

### Counsel to the Official Committee of Property Damage Claimants

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price &
Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

### Counsel to the Official Committee of Personal Injury Claimants

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

| | | | |
|---|---|---|---|
| 06/26/01 | D. Paul | 3.00 | Meeting with D. Rolfes.  Research substantial authority tax issues. |
| 06/26/01 | D. Rolfes | 0.40 | Getting history of client and overview of assignment from Deborah Paul. (Deborah Paul) |
| 06/26/01 | D. Rolfes | 4.00 | Reading background materials for assignment (Deborah Paul) |
| 06/27/01 | D. Paul | 2.40 | Research substantial authority tax issues. |
| 06/27/01 | D. Rolfes | 3.00 | Researching issue identified above.  (Deborah Paul) |
| 06/28/01 | D. Paul | 3.00 | Research substantial authority tax issues. |
| 06/28/01 | D. Rolfes | 5.00 | Researching substantial authority for spin-off.  (Deborah Paul) |
| 06/29/01 | D. Rolfes | 6.00 | Research. (Deborah Paul) |
| 07/02/01 | D. Rolfes | 4.00 | Researching fourth circuit substantial authority for spin off. (Deborah Paul) |
| 07/03/01 | D. Rolfes | 4.00 | Researching fourth circuit substantial authority for spin off. (Deborah Paul) |
| 07/02/01 | D. Rolfes | 7.00 | Researching fourth circuit substantial authority for spin off. (Deborah Paul) |
| 07/06/01 | D. Rolfes | 6.00 | Researching and writing memo.  (Deborah Paul) |
| 07/09/01 | D. Rolfes | 3.50 | Researching and writing memo.  (Deborah Paul) |
| 07/09/01 | D. Paul | 1.00 | Review D. Rolfes memo re: substantial authority |
| 07/19/01 | D. Rolfes | 1.00 | Researching and writing memo.  (Deborah Paul) |
| 07/23/01 | D. Rolfes | 3.00 | Revising memo. (Deborah Paul) |
| 07/24/01 | D. Rolfes | 3.00 | Revising memo. (Deborah Paul) |
| 07/27/01 | D. Paul | 0.40 | Review D. Rolfes memo re: substantial authority |
| 07/27/01 | D. Rolfes | 4.00 | Revising memo. (Deborah Paul) |
| 07/30/01 | D. Paul | 0.40 | Review D. Rolfes memo re: substantial authority |
| 07/30/01 | D. Rolfes | 1.00 | Revising memo. (Deborah Paul) |
| 08/03/01 | D. Rolfes | 2.50 | Researching/writing memo on fourth circuit substantial authority for spin-off. (Deborah Paul) |
| 08/06/01 | D. Rolfes | 2.50 | Revising substantial authority memo. (Deborah Paul) |
| 08/07/02 | D. Rolfes | 1.00 | Revising substantial authority memo. (Deborah Paul) |
| 08/08/01 | D. Rolfes | 1.00 | Revising substantial authority memo. (Deborah Paul) |
| 08/09/01 | D. Rolfes | 0.30 | Revising substantial authority memo. (Deborah Paul) |