# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | |
| | § | **Chapter 11** |
| **W.R. GRACE & CO., et al** | § | **Jointly Administered** |
| | § | **Case No. 01-1139 (JJF)** |
| **Debtors** | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## APPLICATION OF THE OFFICIAL COMMITTEE OF
## ASBESTOS PERSONAL INJURY CLAIMANTS
## FOR THE SIXTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Application of the Official Committee of Asbestos Personal Injury Claimants for the Sixth Interim Period</u> (the "Application").

### BACKGROUND

1.      The Official Committee of Asbestos Personal Injury Claimants (the "Committee") was appointed by the United States Trustee to represent the interests of the asbestos personal injury claimants in the Consolidated Cases.   In the Application the Committee seeks approval of expenses totaling $4,179.59 for the period from  April 1, 2001, through June 30, 2002, consisting of $3,188.10 in costs sought by Ness, Motley, Loadholt, Richardson & Poole, P.S. ("Ness Motley"), and $994.74 in costs sought by Kazan, McCalin, Edises, Abrams, Fernandez, Lyons & Farrise ("Kazan McCalin").

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application for compliance with Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1,

2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the

"Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy

Court for the District of Delaware, the United States District Court for the District of Delaware, and

the Third Circuit Court of Appeals.  We served on the Committee an initial report  on our review and

received a response from the Committee, portions of which response are quoted herein.

## DISCUSSION

### Specific Expense Issues

3.      In our initial report, we noted that Ms. Davis (Ness Motley) has a charge for Lobby

Lounge as part of her hotel expense.  The entry is noted below.

04/12          Lobby Lounge CHECK #5651              32.65

If this charge is for alcoholic beverages, it may not be reimbursable by the estate.  We asked the

Committee to advise us as to the nature of this expense.  The Committee responded as follows.

> This is a charge for lunch for Ms. Davis, as well as the claimant. The Lobby Lounge
> at the duPont Hotel is one of the restaurants at the hotel which serves lunch.

We accept the Committee's response and thus have no objection to this expense.

4.      We noted that Ms. Davis has a charge of $100.33 for car rental.  The expense seems

unusually high for a one-day rental.   Guidelines II.E.1., states ". . .[f]actors relevant to a

determination that the expense is proper include the following: 1. Whether the expense is reasonable

and economical...".  We asked The Committee to provide any specifics such as type of car and rental

plan that might support the economy of this expense.  The Committee responded as follows.

> The vehicle which Ms. Davis rented was a four door American car. While Ms. Davis
> does not specifically recall the type of car at this time, she typically rents a Taurus
> The meeting Ms. Davis attended ran late. As such, she did not have time to re-fuel
> the car in time to catch her flight, and therefore there is a $15.00 re-fueling charge.
> There is also a $6.00 charge for a GPS system which was in the car. Ms. Davis

arrived in Philadelphia in the evening and is not completely familiar with the area around the airport. Out of concern for safety, she rented a car with a GPS, so that she could find her way without the worry of getting lost leaving the airport. Again, this is only a $6.00 charge. The base charge for this standard car was $60.00.

We accept the Committee's explanation and have no objection to this expense.

5.      We noted  that Mr. Rice has a charge of $230.00 for airfare.  Mr. Rice states in his expense detail that  private aircraft was used, and that he is seeking only the cost of commensurate coach fare.  He further states that no receipt is available for the airfare.    The entry is noted below.

Trip to Philadelphia re Committee meeting
May 21, 2002 (Joe Rice)

    Airfare*                                              230.00

* Private aircraft taken, only cost of coach airfare applied for.  No receipt available.

Guidelines II.E.1., states ". . .[f]actors relevant to a determination that the expense is proper include the following: 1.  Whether the expense is reasonable and economical.  For example, first class and other luxurious travel mode or accommodations will normally be objectionable."   In the absence of a receipt, we asked the Committee to provide other documentation showing by what computation the $230.00 figure was reached.  The Committee responded as follows.

Mr. Rice used a private plane for this meeting. While the actual expense to do so is higher than the $230.00 charged to the estate, this amount is the cost for coach airfare. It is believed that this amount was determined by checking the cost of a commercial flight at that time. Unfortunately, there is no documentationt to support this amount. In the future, counsel will request the cost from the travel agent in writing or print the amount from checking flights on-line. However, as a reference point as to the reasonableness of this charge, Ms. Davis flew to Philadelphia the month prior. The one-way fare going to Philadelphia was $537.50 and returning was $639.50. In looking at the prior cost for a coach flight to Philadelphia, $230.00 appears to be reasonable.

We appreciate the Committee's explanation and thus have no objection to this expense.

6.      In our initial report, we noted a charge of $109.50 for lodging.  The entry is provided below.

Trip to Chicago re Committee meeting
June 3, 2002 (Joe Rice)

      Lodging (split)                 $109.50

 Guidelines II.E.1., states ". . .[f]actors relevant to a determination that the expense is proper include the following: 1.  Whether the expense is reasonable and economical.  For example, first class and other luxurious travel mode or accommodations will normally be objectionable."  We asked that the Committee explain how and among whom the lodging was split in order that we might determine the reasonableness of the expense.  The Committee responded as follows.

> The charge for this room was split amount several estates: Armstrong, B&W, Celotex, USG, Owens Corning and WR Grace. Please note that the room rate was $275.00, which is the amount which was permitted for a hotel room in Chicago as set forth in the Fee Auditors Final Report Regarding the Asbestos Personal Injury Claimants for the Fourth Interim Quarterly Period in USG.

We accept the Committee's explanation and have no objection to this expense.

       7.      We noted that both the May 21, 2002 meeting in Philadelphia, and the June 3, 2002 meeting in Chicago appear to have taken place at the same times and locations as Mealey Conferences.  We noted that Mealey appears to be the Lexis Nexis Mealey Publications and Conferences Group.  These charges appear to be for seminars or conferences.  At the hearing on August 26, 2002, the Court stated in part "[t]here is one thing I am not going to permit as compensable fees or expenses for any professional in this estate.  And that is attendance at professional seminars of any kind, whether to do with asbestos or not.  So whoever put those requests in, they are disallowed and they are not to be part of this compensation. . . ." We asked the Committee to confirm the nature of the expenses with regard to Mealey and separate any time and costs associated with the Mealey conferences from that of official Committee business.  The Committee responded as follows.

There was a question as to whether these expenses are related to the Mealey's conference. As addressed in the Committee's response to the Fee Auditors Report in Owens Corning, Mr. Rice did not attend the Mealey's conference. The room was booked through Mealey's in order to take advantage of a lower room rate. However, Mr. Rice was in committee meetings during his stay, and did not attend Mealey's.

We note that the relationship between Mealey Publications and the Personal Injury Committee remains interwoven in a number of bankruptcy cases, but in light of the fact that Mr. Rice attended only committee meetings and not the Mealey conference, we offer no objection to these expenses.

8.      We noted that Mr. Kazan (Kazan McCalin) has a hotel charge of $353.76 representing one-fourth of the total charge of $1,415.05. This hotel rate appears excessive. The entry is noted below.

| 01-JUN-02 RT3302 | Room Charge Group | 305.00 |
| 01-JUN-02 RT3302 | Room Tax | 45.45 |
| 02-JUN-02 RT4323 | Room Charge Group | 305.00 |
| 02-JUN-02 RT4323 | Room Tax | 45.45 |
| 02-JUN-02 0223 | Local Telephone | 1.50 |
| 03-JUN-02 RT4323 | Room Charge Group | 305.00 |
| 03-JUN-02 RT4323 | Room Tax | 45.45 |
| 03-JUN-02 3912 | Laundry / Valet | 11.75 |
| 04-JUN-02 RT4323 | Room Charge Group | 305.00 |
| 04-JUN-02 RT4323 | Room Tax | 45.45 |
| 05-JUN-02 AMEX | Am Express | 1415.05 |
| | Total - Due | 00.00 |

Guidelines II.E.1., states ". . .[f]actors relevant to a determination that the expense is proper include the following: 1. Whether the expense is reasonable and economical. For example, first class and other luxurious travel mode or accommodations will normally be objectionable." We asked the Committee to explain why less expensive accommodations could not be obtained. The Committee responded as follows.

There was an inquiry as to whether Mr. Kazan's expenses were related to the Mealey's conference. As addressed in response to the Fee Auditors Report in USG for the Fourth Interim Period, Mr. Kazan attended two committee meetings, and also attended a portion of the Mealey's conference. Thus, our position is that this expense should be allowed.

We appreciate the Committee's response, but we feel that a room rate of $275.00 is more reasonable and thus recommend a reduction of $30.00 for this expense.

9.        As noted above, the meeting in Chicago appears to have been in association with a Mealey Conference.  We noted that Mealey appears to be the Lexis Nexis Mealey Publications and Conferences Group.  At the hearing on August 26, 2002, the Court stated in part "[t]here is one thing I am not going to permit as compensable fees or expenses for any professional in this estate.  And that is attendance at professional seminars of any kind, whether to do with asbestos or not.  So whoever put those requests in, they are disallowed and they are not to be part of this compensation. . . ."  We asked the Committee to confirm the nature of the expenses with regard to Mealey and to separate any time and costs associated with the Mealey conference from that of official Committee business.  The Committee's response is shown in paragraph 8.  As Mr. Kazan attended two committee meetings and the Mealey conference, we take the position that one-third of his requested expenses of $994.74 should be disallowed.  Accounting for the $30.00 reduction already recommended, we recommend a further reduction of $321.58 in expenses.

## CONCLUSION

10.        Thus we recommend approval of costs totaling $3,188.10 for Ness Motley and $643.16 ($994.74 minus $351.58) for Kazan McCalin for Committee services from April 1, 2001, through June 30, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____

       Warren H. Smith
       Texas State Bar No. 18757050

900 Jackson Street
120 Founders Square
Dallas, Texas  75202
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 13th day of February, 2003.

_____

Warren H. Smith

# SERVICE LIST

Notice Parties

**The Applicant**

Official Committee of Asbestos Personal Injury
Claimants
Campbell & Levine
Aileen F. Maguire, Esq.
1201 N. Market Street
15th Floor
Wilmington, DE 19899

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee
 of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of
Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price &
Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of
Personal Injury Claimants**

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801