IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Objection Deadline: March 6, 2003 at 4:00 p.m.
Hearing Date: June 17, 2003 at 12:00 p.m.

**SUMMARY OF SEVENTH QUARTERLY VERIFIED APPLICATION OF
CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN
FOR COMPENSATION FOR SERVICES AND REIMBURSEMENT
OF EXPENSES AS SPECIAL COUNSEL TO W. R. GRACE & CO., ET AL., FOR THE
INTERIM PERIOD FROM OCTOBER 1, 2002 THROUGH DECEMBER 31, 2002**

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

**PROJECT AND EXPENSE CATEGORIES
TO SEVENTH QUARTERLY INTERIM FEE APPLICATION
(OCTOBER 1, 2002 THROUGH DECEMBER 31, 2002)**

| Name of Professional Person | Position of the Applicant, Number of Years in that Position, Prior Relevant Experience, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate (including changes) | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| John M. Agnello | Partner –24 yrs | $325 | 218.50<br>2/2002 – 12.40 | $70,200.00<br>$4,030.00 |
| Melissa E. Flax | Partner –11 yrs | $215 | 182.80<br>2/2002 – 29.90 | $39,302.00<br>$6,428.50 |
| G. Glennon Troublefield | Associate –11 yrs | $220 | 1.00 | $220.00 |
| Robert C. Scrivo | Associate –14 yrs | $200 | 123.60 | $24,720.00 |
| Michael Aponte | Paralegal | $75 | 2.40 | $180.00 |
| Kevin Vengrow | Paralegal | $75 | 21.90 | $1,642.50 |

| | | |
|---|---|---|
| Grand Total: | | $136,264.50 |
| Blended Rate: | | |

**COMPENSATION BY PROJECT CATEGORY**

| Project Category (Examples) | Total Hours | Total Fees | Cumulative Fees |
|---|---|---|---|
| Asset Analysis and Recovery | | | |
| Asset Disposition | | | |
| Business Operations | | | |
| Case Administration | | | |
| Claim Analysis Objection Resolution & Estimation (Asbestos) | | | |
| Claim Analysis Objection Resolution & Estimation (Non-Asbestos) | | | |
| Committee (All – Creditors', Noteholders', Equity Holders', etc) | | | |
| Employee Benefits/Pensions | | | |
| Employment Applications, Applicant | | | |
| Employment Applications, Others | | | |
| Expenses | | $12,779.96 | $22,657.80 |
| Expenses – February 2002 | | $1,005.19 | $1,005.19 |
| Fee Applications, Applicant | 28.80 | $6,434.00 | $18,734.00 |

| | | | |
|---|---|---|---|
| Fee Applications, Applicant – February 2002 | 2.20 | $473.00 | $473.00 |
| Fee Applications, Others | | | |
| Financing | | | |
| Hearings | | | |
| Litigation and Litigation Consulting | 516.40 | $129,018.00 | $293,525.00 |
| Litigation and Litigation Consulting – February 2002 | 40.10 | $9,985.50 | $9,985.50 |
| Plan and Disclosure Statement | | | |
| Relief from Stay Proceedings | | | |
| Tax Issues | | | |
| Tax Litigation | | | |
| Travel – non-working | 5.00 | $812.50[1] | $8,251.75[2] |
| Valuation | | | |
| ZAI Science Trial | | | |
| ZAI Science Trial – Expenses | | | |
| Other (Explain) | | | |

**EXPENSE SUMMARY**

| Expense Category (Examples) | Service Provider (if applicable) | Total Expenses | Cumulative Expenses |
|---|---|---|---|
| Computer Assisted Legal Research | Westlaw | 2/2002 - $88.18 $43.35 | $231.93 |
| Facsimile (with rates) | | $236.00 ($0.25 per page) | $1619.00 |
| Long Distance Telephone | | 2/2002 - $51.16 $329.23 | $647.35 |
| In-House Reproduction | | 2/2002 - $80.50 $722.75 ($0.25 per page) | $1,727.50 |
| Outside Reproduction | | $8,969.45 | $8,995.80 |
| Outside Research | | | |
| Filing/Court Fees | | | |
| Court Reporting | Charles P. McGuire | | $145.20 |
| Local Travel | Car service Parking Mileage & Tolls | $63.10 $48.00 $12.80 | $202.00 |
| Out-Of-Town Travel airfare | Continental Airlines | $567.50 | |

[1] The October 2002 Fee Application inadvertently billed out JMA ($325) at his full hourly rate. CBBG has corrected this error in this quarterly application and has reduced its request for fees by $812.50 in this Seventh Quarterly Fee Application.

[2] This amount reflects the reduction of $1,706.00 for travel non-work in August 2002 and $1,183.25 for travel non-work in September 2002 which was inadvertently billed out at the attorneys' full hourly rates.

| | | | |
|---|---|---|---|
| car/taxi service<br>hotel | Car service<br>Hotel<br>Taxi | $202.37<br>$368.16<br>$30.00<br>$1,168.03 | $6,879.68 |
| Courier & Express Carriers<br>(e.g. Federal Express) | | 2/2002 - $108.50<br>$425.52 | $763.97 |
| Postage | | | |
| Other (Explain) – Corporate record search | State of New Jersey Department of Treasury | | $10.00 |
| Other (Explain) – Photographs | Mr. Photo | | $76.25 |
| Other – Aerial photographs | Air Photo Services (2/2002) | $664.05 | $664.05 |
| Messenger | | $527.71 | $1,111.63 |
| Working meals | | $98.46 | $379.77 |
| Additional Staff Time | | $148.36 | $208.86 |

Dated: February 10, 2003

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO. et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**SEVENTH QUARTERLY VERIFIED APPLICATION OF CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN FOR COMPENSATION FOR SERVICES AND REIMBURSEMENT OF EXPENSES AS SPECIAL COUNSEL TO W.R. GRACE & CO., ET AL., FOR THE INTERIM PERIOD FROM OCTOBER 1, 2002 THROUGH DECEMBER 31, 2002[2]**

Pursuant to sections 327, 330 and 331 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Fed. R. Bankr. P. 2016, the Retention Order (as defined below), the Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Professionals and Official Committee Members (the "Interim Compensation Order") and Del. Bankr. LR 2016-2, the law firm of

---

[1] 'The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. -Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food `N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (Ma Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G_ C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners 1, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] This application also includes a request for payment for professional services and expenses incurred during the month of February 2002.

Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein ("CBBG") as special litigation and environmental counsel for the above-captioned debtors and debtors in possession (collectively, "Debtors") in connection with their chapter 11 cases, hereby applies for an order allowing it (i) compensation in the amount $146,723.00[3] for the reasonable and necessary legal services CBBG has rendered to the Debtors and (ii) reimbursement for the actual and necessary expenses that CBBG incurred in the amount of $13,785.15[4] (the "Application"), for the interim quarterly period from October 1, 2002 through December 31, 2002 (the "Fee Period"). In support of this Application, CBBG states as follows:

## Retention of CBBG

1. On April 2, 2001 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). On April 2, 2001, the Court entered an order procedurally consolidating the Chapter 11 Cases for administrative purposes only. Since the Petition Date, the Debtors have continued to operate their businesses and manage their properties as Debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. By this Court's order dated March 18, 2002, the Debtors were authorized to retain CBBG as their special counsel, effective as of February 1, 2002, with regard to environmental and litigation matters (the "Retention Order"). The Retention Order authorizes the Debtors to compensate CBBG at hourly rates charged by CBBG for services of this type and to be reimbursed for actual and necessary out-of-pocket expenses that it incurred, subject to

---

[3] The $146,723.00 includes $10,458.50 in compensation for services rendered during the period February 1, 2002 through February 28, 2002 as explained in paragraphs 10 through 14 below.

[4] The $13,785.15 includes $1,005.19 in expenses incurred during the period February 1, 2002 through February 28, 2002.

2

application to this Court in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, all applicable local rules and orders of this Court.

### Monthly Interim Fee Applications Covered Herein

3.    Pursuant to the procedures set forth in the Interim Compensation Order, professionals may apply for monthly compensation and reimbursement (each such application, a "Monthly Fee Application"), and the notice parties listed in the Interim Compensation Order may object to such request.    If no notice party objects to a professional's Monthly Fee Application within twenty (20) days after the date of service of the Monthly Fee Application, the applicable professional may submit to the Court a certification of no objection whereupon the Debtors are authorized to pay interim compensation and reimbursement of 80% of the fees and 100% of the expenses requested.

4.    Furthermore, and also pursuant to the Interim Compensation Order, professionals are to file and serve upon the notice parties a quarterly request (a "Quarterly Fee Application") for interim Court approval and allowance of the Monthly Fee Application filed during the quarter covered by the Quarterly Fee Application.    If the Court grants the relief requested by the Quarterly Fee Application, the Debtors are authorized and directed to pay the professionals 100% of the fees and expenses requested in the Monthly Fee Applications covered by that Quarterly Fee Application less any amounts previously paid in connection with the Monthly Fee Applications.    Any payment made pursuant to the Monthly Fee Applications or a Quarterly Fee Application is subject to final approval of all fees and expenses at a hearing on the professional's final fee application.

5.    This is the fourth Quarterly Fee Application (designated as the Seventh Quarterly Interim Fee Application) for compensation for services rendered that CBBG has filed with the Bankruptcy Court in connection with the Chapter 11 Cases, which covers the Fee Period of October 1, 2002 through December 31, 2002.

3

6.     CBBG has filed the following Monthly Fee Applications for interim compensation during this Fee Period:

(a)     Verified application of Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein for compensation for services and reimbursement of expenses as special counsel to W.R. Grace & Co., et al., for the interim period of October 1, 2002 through October 31, 2002 (the "October Fee Application"), attached hereto as Exhibit A.

(b)     Verified application of Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein for compensation for services and reimbursement of expenses as special counsel to W.R. Grace & Co., et al., for the interim period of November 1, 2002 through November 30, 2002 (the "November Fee Application"), attached hereto as Exhibit B.

(c)     Verified application of Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein for compensation for services and reimbursement of expenses as special counsel to W.R. Grace & Co., et al., for the interim period of December 1, 2002 through December 31, 2002 (the "December Fee Application"), attached hereto as Exhibit C.

7.     The period for objecting to the fees and expense reimbursement requested in the October Fee Application and November Fee Application have expired and no objections have been filed. The period for objecting to the fees and expense reimbursement requested in the December Fee Application will not expire until February 26, 2003 at which time if no objections are filed, the Debtors will file a certificate of no objection with the Court.

8.     With this Seventh Quarterly Application, CBBG also requests reimbursement of professional fees and expenses incurred during the month of February 2002 for the reasons set forth below in paragraphs 10 through 14. A verified application for CBBG for services and reimbursement of expenses for the interim period of February 1, 2002 through February 28, 2002 (the "February Fee Period") is attached hereto as Exhibit D.

9. CBBG has advised and represented the Debtors in connection with environmental and litigation matters.

4

**Explanation For CBBG's Request for Compensation for
Fees and Expenses Incurred in February 2002**

10.    On December 23, 2002, Melissa E. Flax, Esq. ("MEF") spoke with Warren Smith,

Fee Auditor, regarding CBBG's February 2002 bill.  At that time, MEF advised the Fee Auditor

that, in December 2002, when reconciling CBBG's billings for the year with respect to services

rendered to the Debtors, CBBG discovered that its bill for professional services rendered to the

Debtors in February 2002 had not been paid.

11.    CBBG was originally retained by the Debtors as an ordinary course professional.

In January 2002, John M. Agnello, Esq. ("JMA") executed an affidavit in connection with

CBBG's application before the Bankruptcy Court for an order retaining CBBG as special

litigation and environmental counsel.  As set forth in paragraph 12 of JMA's affidavit:

> In light of the work which will be necessary to prepare the Final Pre-
> Trial Order and conduct the trial in the *ICO* litigation, it is clear that
> the legal services to be rendered by our firm to the Debtors will
> exceed the $50,000 permonth/$300,000 per year limitation set by this
> Court's order approving the debtors' retention of ordinary course
> professionals.

12.    JMA's affidavit was executed on January 17, 2002.  The application for an order

authorizing the retention and employment of CBBG as special litigation and environmental

counsel for Debtors was not filed until February 6, 2002.

13.    By order dated March 18, 2002, the Honorable Judith K. Fitzgerald, U.S.B.J.,

granted the Debtors' application to retain CBBG as special litigation and environmental counsel.

The retention order was *nunc pro tunc* to February 1, 2002.  However, by the time CBBG

received notice of this order, CBBG, unaware that the retention would be *nunc pro tunc* to

February 1, 2002, submitted its February 2002 bill for professional fees and expenses for

payment as an ordinary course professional.  In light of the March 18, 2002 order, the Debtors'

were not permitted to pay CBBG's February 2002 bill as an ordinary course professional.  CBBG

could have sought payment for the February 2002 professional fees and expenses in the Fourth

Quarterly Fee Application[5] covering the period of January 1, 2002 through March 31, 2002, but inadvertently did not. The Fourth Quarterly Fee Application for CBBG only sought compensation for professional fees and expenses incurred in March 2002.

14.     Based upon MEF's telephone conversation with the Fee Auditor, CBBG seeks payment in this Seventh Quarterly Fee Application for professional fees in the amount of $10,458.50 and expenses in the amount of $1,005.19 as set forth in Exhibit D, which were incurred during the February Fee Period.

### Explanation For More Than One Professional Attending/Participating in Conferences/Meetings

15.     Both John M. Agnello, Esq. ("JMA") and Melissa E. Flax, Esq. ("MEF") participated in telephone conference calls on October 2, 2002 and October 4, 2002. These two conference calls included analyzing documents produced in discovery, privilege logs, interrogatory answers, deposition transcripts, pleadings, attorney notes, court rulings, etc. in connection with the preparation of the Grace Defendants' legal issues and contemplated motions for inclusion in the Final Pretrial Order. These conference calls also included the drafting, re-drafting and revision of the Grace Defendants' proposed legal issues and contemplated motions for inclusion in the Final Pretrial Order with respect to both liability and damage issues.

JMA is co-lead trial counsel with Christopher H. Marraro, Esq. of Wallace, King, Marraro & Branson. As co-lead trial counsel, JMA's participation in the preparation and content of all portions of the Final Pretrial Order is essential to the presentation of the Grace Defendants' claims and defenses, and to their trial strategy.

MEF is part of the litigation trial team. As part of the litigation trial team, MEF's participation in these two conference calls was necessary because MEF is thoroughly familiar

---

[5] The Fourth Quarterly Fee Application was CBBG's first quarterly fee application since the Retention Order was entered on March 18, 2002.

6

with the documents and other information produced in discovery and the trial court's rulings in this case, all of which information was necessary to prepare the Grace Defendants' legal issues and contemplated motions for inclusion in the Final Pretrial Order. MEF is also primarily responsible for the Grace Defendants' damage claim proofs. In addition, MEF is responsible for the coordination and preparation of the Final Pretrial Order document to be submitted to the court on behalf of all parties, including the incorporation of all parties' proposals, objections and responses. MEF's input into the Final Pretrial Order is essential to the presentation of the Grace Defendants' claims and defenses, and to their trial strategy.

16.    On October 16, 2002, both JMA and MEF attended the Final Pretrial Conference in connection with the *ICO v. Honeywell International, Inc.* matter. JMA is co-lead trial counsel with Christopher H. Marraro, Esq. of Wallace, King, Marraro & Branson. As co-lead trial counsel, JMA's appearance was required at the Final Pretrial Conference.

MEF is part of the litigation trial team. As part of the litigation trial team, MEF's appearance at the Final Pretrial Conference was necessary because MEF was responsible for the coordination and preparation of the Final Pretrial Order document which was submitted to the court on behalf of all parties, including the incorporation of all parties' proposals, objections and responses.

17.    On December 6, 2002, both JMA and MEF participated in a conference. The purpose of this conference was preparation for oral argument with respect to all parties' motions *in limine* filed in the *ICO* matter. JMA is co-lead trial counsel with Christopher H. Marraro, Esq. of Wallace, King, Marraro & Branson. As co-lead trial counsel, JMA's participation in the preparation for oral argument is essential to the presentation of the Grace Defendants' claims and defenses, and to their trial strategy.

7

MEF is part of the litigation trial team. As part of the litigation trial team, MEF's participation in this conference was necessary because MEF was responsible for preparing two (2) of the motions *in limine* that were filed on behalf of the Grace Defendants.

18.    On December 20, 2002, both JMA and MEF participated in a conference. The purpose of this conference was to ensure that the proposed order regarding motions *in limine* and other matters that were decided at the December 19, 2002 hearing were properly accounted for. Both JMA and Christopher H. Marraro, Esq. attended and argued all motions *in limine*. MEF prepared the order memorializing the Court's determinations. The conference was necessary in order to ensure that all matters ruled upon in anticipation of the January 2003 trial were properly incorporated into the order.

19.    On December 27 and 28, 2002, both JMA and Robert C. Scrivo, Esq. ("RCS") participated in a telephone conference call. The purpose of this conference call was to discuss admissibility issues relating to the Grace Defendants', Honeywell's and the plaintiffs' trial exhibits in the *ICO* matter. JMA is co-lead trial counsel with Christopher H. Marraro, Esq. of Wallace, King, Marraro & Branson. As co-lead trial counsel, JMA's participation in these calls was required since he is the attorney from CBBG who will be trying the case, and objecting to exhibits and/or arguing for their admissibility during the trial.

RCS is part of the litigation trial team. As part of the litigation trial team, RCS's participation was necessary because RCS was responsible for reviewing all of the parties' exhibits (totaling in excess of 5000 documents) and ascertaining what objections, if any, could be raised to any given trial exhibit and what legal arguments, if any, would support the admissibility of any given trial exhibit.

20.    On December 27, 2002, both JMA and MEF participated in a conference. The purpose of the conference was to prepare the Grace Defendants' damage documents for the trial as well as to ascertain which non-Grace Defendant witnesses should be subpoenaed for rebuttal

8

purposes. JMA is co-lead trial counsel with Christopher H. Marraro, Esq. of Wallace, King, Marraro & Branson. As co-lead trial counsel, JMA's participation was required since JMA is the CBBG attorney trying the *ICO* matter.

MEF is part of the litigation trial team. As part of the litigation trial team, MEF's participation was required because MEF was responsible for the coordination and preparation of the damage documents for the Grace Defendants' claims against Honeywell. Moreover, MEF is the attorney responsible for preparing and serving trial subpoenas, as well as communicating with and coordinating all non-party witnesses with respect to the trial subpoenas.

21.    Both JMA and MEF participated in a conference call of February 14, 2002. This conference call included analyzing documents produced in discovery, privilege logs, interrogatory answers, deposition transcripts, pleadings, attorney notes, etc. in connection with the preparation of the Grace Defendants' legal issues and stipulations of facts for inclusion in the Final Pretrial Order with respect to both liability and damages.

JMA is co-lead trial counsel with Christopher H. Marraro, Esq. of Wallace, King, Marraro & Branson. As co-lead trial counsel, JMA's participation in the preparation and content of all portions of the Final Pretrial Order is essential to the presentation of the Grace Defendants' claims and defenses and to their trial strategy.

MEF is part of the litigation trial team. As part of the litigation trial team, MEF's participation in this conference call was necessary because MEF is familiar with the documents and other information produced in discovery and the trial court's ruling in this case, all of which information was necessary to prepare the Grace Defendants' legal issues and stipulations of fact for inclusion in the Final Pretrial Order. MEF is also primarily responsible for the Grace Defendants' damage claim proofs. In addition, MEF is responsible for the coordination and preparation of the Final Pretrial Order document to be submitted to the court on behalf of all parties, including the incorporation of all parties' proposals, objections and responses. MEF's

input into the Final Pretrial Order is essential to the presentation of the Grace Defendants' claims and defenses, and to their trial strategy.

### Explanation for "Lumping" of Time Entries

22.    One of the issues that the Fee Auditor has raised with respect to previous quarterly fee applications is that of "lumping" of time. In connection with the preparation of the Final Pretrial Order and the trial in the *ICO* matter, multiple tasks are being performed simultaneously which makes it difficult, if not impossible in some cases, to ascertain precisely how much time was spent on a particular task. For instance, with the preparation of the Final Pretrial Order, there are various sections including, stipulated facts, contested facts, witness lists (both fact and expert), legal issues, contemplated motions, and trial exhibit lists. Not only must the parties review their respective sections, but also must review and analyze the corresponding sections submitted by their adversaries. The review normally entails either telephone calls and/or emails. The task itself is the preparation of the Final Pretrial Order. The general task of "Final Pretrial Order" therefore included multiple sub-tasks as identified in CBBG's fee detail. *See* MEF (10/1, 10/2. 108, 10/10. 10/11. 10/12, 10/14, 10/15, 10/24, 11/4, 11/6) and JMA (10/2, 10/15 (2 entries), 10/16).

With respect to the motions *in limine*, the task is either (a) preparation of motion papers, (b) review of adversaries' motion papers, (c) review of opposition to motions, and/or (d) preparation of responses. The Grace Defendants filed seven (7) motions *in limine*. Honeywell filed three (3) motions *in limine* plus a motion to strike. *ICO* filed one motion *in limine*. Undertaking the task of preparation of papers or review of papers includes sub-tasks as identified in CBBG's fee detail. *See* MEF (11/4, 11/6, 11/10, 11/11, 11/13, 11/15, 11/25, 11/26, 12/2, 12/13, 12/19) and JMA (10/15, 11/22, 11/26, 12/5 (2 entries), 12/6, 12/9).

With respect to trial preparation, the task includes preparation of witnesses, preparation of trial exhibits, preparation of subpoenas, and a multitude of other sub-tasks that

arise in the course of preparing for trial. The sub-tasks performed are identified in the fee detail. Since numerous issues arise during the course of trial preparation it is difficult, if not impossible in some cases, to ascertain the precise amount of time spent on a specific sub-task. *See* MEF (12/12, 12/13, 12/30) and JMA (12/27. 12/29 (2 entries), 12/30).

## Travel Non-Work Billed in October 2002

23.     CBBG's October Fee Application inadvertently billed JMA out at his full hourly rate of $325 for five (5) hours of travel non-work. With this Seventh Quarterly Fee Application, CBBG has reduced the amount sought by $812.50 so that travel non-work is billed only at 50% of the attorney's full hourly rate in accordance with Local Rule 2016-2(d)(viii).

## Requested Relief

24.     By this Seventh Quarterly Fee Application, CBBG requests that the Court approve the interim allowance of compensation for professional services rendered and the reimbursement of actual and necessary expenses incurred by CBBG for the Fee Period, which is from October 1, 2002 through December 31, 2002, as well as for the month of February 2002, as detailed in the Applications, less any amounts previously paid to CBBG pursuant to the Application and the procedures set forth in the Interim Compensation Order. As stated above, the full scope of services provided and the related expenses incurred are fully described in the Applications, which are attached as Exhibits A, B, C and D.

25.     CBBG may have in the past represented, may currently represent, and likely in the future will represent parties-in-interest in connection with matters unrelated to the Debtors and the Chapter 11 Cases. CBBG disclosed in the Affidavits its connection to parties-in-interest that it has been able to ascertain using its reasonable efforts. CBBG will update the Affidavits when necessary and when CBBG becomes aware of material new information.

**Representations**

26.     CBBG believes that the Application is in compliance with the requirements of Del.Bankr.LR 2016-2.

27.     CBBG performed the services for which it is seeking compensation on behalf of or for the Debtors and their estates, and not on behalf of any committee, creditor or other person.

28.     CBBG has received payment for the October Fee Application in the amount of $27,983.73, representing 80% of services and 100% of expenses incurred during that fee period. The total amount outstanding from the October Fee Application period is $6,479.00. CBBG has not received payment for the November Fee Application. The total amount requested in the November Fee Application was $29,831.41. The total amount outstanding from the November Fee Application (including the $29,831.41) is $36,710.71. CBBG has not received payment for the December Fee Application. The total amount requested in the December Fee Application was $64,626.42. The total amount outstanding from the December Fee Application (including the $64,626.42) is $78,683.52. CBBG has not received any payment for the February Fee Period. The total amount outstanding from the February Fee Period is $11,463.69.

29.     Pursuant to Fed. R. Bank. P. 2016(b), CBBG has not shared, nor has agreed to share (a) any compensation it has received or may receive with another party or person other than with the partners, counsel and associates of CBBG, or (b) any compensation another person or party has received or may receive in connection with the Chapter 11 Cases.

WHEREFORE, CBBG respectfully requests that the Court enter an order providing (a) that, for the Fee Period, October 1, 2002 through December 31, 2002, which includes fees and expenses incurred in February 2002, an administrative allowance be made to CBBG in the sum of (i) $146,723.00 as compensation for reasonable and necessary professional services rendered to the Debtors and (ii) in the sum of $13,785.15 for reimbursement of actual and necessary costs and expenses incurred, for a total of $160,508.15, (b) that the Debtors be

12

authorized and directed to pay CBBG the outstanding amount of such sums less any sums previously paid to CBBG pursuant to the Applications and the procedures set forth in the Interim Compensation Order; and (c) that this Court grant such further relief as is equitable and just.


Roseland, New Jersey                    Respectfully submitted,
Dated: February 10, 2003

                                        CARELLA, BYRNE, BAIN, GILFILLAN,
                                        CECCHI, STEWART & OLSTEIN

                                        _____
                                        John M. Agnello
                                        6 Becker Farm Road
                                        Roseland, New Jersey 07068
                                        (973) 994-1700

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO. et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## VERIFICATION

JOHN M. AGNELLO, after being duly sworn according to law, deposes and says:

1.    I am a partner with the applicant firm, Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein and I am a member in good standing of the bars of the State of New Jersey, the United States District Court for the District of New Jersey, the United States Court of Appeals for the Third Circuit, the State of New York, the United States District Courts for the Southern and Eastern Districts of New York and the Supreme Court of the United States.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. -Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food `N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (Ma Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G_ C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners 1, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

2.    I have personally performed certain of, and overseen the legal services rendered by Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein as special litigation and environmental counsel to the Debtors and am thoroughly familiar with all other work performed on behalf of the Debtors by the lawyers and other persons in the firm.

3.    The facts set forth in the foregoing Application are true and correct to the best of my knowledge, information and belief.

_____
John M. Agnello

In the State of New Jersey

SWORN TO AND SUBSCRIBED
before me this /0 th day of February, 2003

_____
Notary Public

My Commission Expires:
LOIS ISAACSON
A Notary Public of New Jersey
My Commission Expires 6/19/06