UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE _____X

In re:                                                                    In Proceeding for a
                                                                          Reorganization Under
W.R. GRACE & CO. _____X                                             Chapter 11
                              Debtor

                                                                          Case No. 01-01139


                    **NOTICE OF TRANSFER OF CLAIM PURSUANT TO**
                            **F.R.B.P. RULE 3001(E) (2)**

Transferor:     Entergy Gulf States Inc.
                c/o Entergy Services, Inc.
                Mail Unit L-JEF-359
                P.O. Box 6008
                New Orleans, LA 70174
                Attn: Alan H. Katz


          ***Your claim in the amount of $637,294.92 against the Debtors has been transferred to:***

Transferee:     Contrarian Capital Trade Claims, L.P.
                411 West Putnam Avenue, S-225
                Greenwich, CT 06830
                Attn:  Ms. Alpa Jimenez


No action is required if you do not object to the transfer of your claim.   However, IF YOU OBJECT TO
THE TRANSFER OF YOUR CLAIM, WITHIN 20 DAYS OF THE DATE OF THIS NOTICE, YOU
MUST:

        • **FILE A WRITTEN OBJECTION TO THE TRANSFER with:**

                United States Bankruptcy Court
                District of Delaware
                Attn: The U.S. Bankruptcy Clerk
                824 Market Street, 5th Floor
                Wilmington, DE 19801

        • **SEND A COPY OF YOUR OBJECTION TO THE TRANSFEREE:**
                Refer to INTERNAL CONTROL No. _____ in your objection.
                If you file an objection, a hearing will be scheduled.

IF YOUR OBJECTION IS NOT TIMELY FILED, THE TRANSFEREE WILL BE SUBSTITUTED ON
OUR RECORDS AS THE CLAIMANT.
_____

FOR CLERK'S OFFICE USE ONLY:

This notice was mailed to the first party, by first class mail, postage prepaid on _____, 2003.
INTERNAL CONTROL NO. _____
Copy:    (check) Claims Agent_____ Transferee_____ Debtor's Attorney _____


                                          _____
                                                    Deputy Clerk

*Execution Copy*

## AGREEMENT TO ASSIGN CLAIMS

This AGREEMENT TO ASSIGN CLAIMS (this "Agreement") dated as of December 9, 2002, is by and between Entergy Arkansas, Inc., an Arkansas corporation, Entergy Gulf States, Inc., a Texas corporation, Entergy Louisiana, Inc., a Louisiana corporation, Entergy Mississippi, Inc., a Mississippi corporation, and Entergy New Orleans, Inc., a Louisiana corporation (collectively, the "Sellers" and each individually a "Seller"), and Contrarian Capital Trade Claims, L.P., a Delaware limited partnership (the "Purchaser").

## RECITALS

WHEREAS, as described on Schedule A attached hereto, each of the Lead Debtors and/or its debtor affiliates (collectively, the "Debtors") filed voluntary petitions pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the corresponding Bankruptcy Courts (each a "Bankruptcy Court"); thereby establishing the individual bankruptcy cases described on Schedule A (collectively, the "Bankruptcy Cases");

WHEREAS, each Seller is, *inter alia*, a leading provider of power, gas and other utility related services to business and residential customers in several markets including those where the Debtors have operations;

WHEREAS, each Seller furnished power, gas and other utility services to each of the Debtors pursuant to applicable tariffs and/or agreements immediately prior to the filing of the Bankruptcy Cases and such Seller's rendering of electric and other utility services to the Debtors was essential to the Debtors' continued business operations;

WHEREAS, each of the Sellers filed the proofs of claims as set forth on Schedule B attached hereto (the "Proofs of Claim") in the corresponding Bankruptcy Cases (the "Claims") which are currently in the outstanding amounts set forth on Schedule B (the "Outstanding Claim Amounts"); and

WHEREAS, Sellers desire to sell, transfer and assign to Purchaser, and Purchaser desires to purchase and acquire, all of Sellers' respective right, title and interest in, to and under (i) the Claims and (ii) the corresponding Proofs of Claim filed in each of the Bankruptcy Cases, and any other applicable documents or instruments included with or attached to the Proofs of Claim upon filing with the applicable Bankruptcy Court, but only to the extent that each such document or instrument relates to the Claims and to Sellers' rights as holders of the Claims, and all rights thereunder (including, without limitation, (a) any and all right to receive cash, securities and other property payable or distributable in respect of any of the foregoing and (b) all causes of action or other rights (and including causes of action for negligence, fraud, fraudulent transfers or in respect of securities laws) of Sellers against any of the Debtors, their affiliates and any other person or entity in connection with any of the foregoing) (the "Assigned Rights"), all in accordance with the terms and conditions of this Agreement, excluding only the Reserved Rights (as defined below).

389359v10

*Assignment of Claims*                                                              *Page 1*

NOW, THEREFORE, in consideration of the promises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto agree as follows:

1.　　Incorporation of Recitals. The foregoing recitals are fully incorporated herein by reference.

2.　　Sale and Assignment. Subject to compliance with the terms and conditions of this Agreement, including without limitation receipt by Sellers of the Purchase Price (as defined below) from Purchaser each Seller hereby irrevocably sells, transfers, assigns, grants, and conveys unto Purchaser, all of such Seller's right, title, and interest in and to the Claims and the Assigned Rights, excluding only the Reserved Rights. For purposes of this Agreement, "Reserved Rights" means any and all right, title and interest of each Seller or its successors or assigns to receive and retain all: (i) amounts already recovered on the Claims as of the date of this Agreement; and (ii) amounts and rights relating to surety or letter of credit recoveries on the Claims pending as of the date of this Agreement, including, without limitation, any subrogation rights of sureties or issuers of letters of credit relating thereto. All amounts listed on the Schedules to this Agreement have been adjusted to exclude all amounts relating to Reserved Rights.

3.　　Purchase Price.

(a)　　Purchaser shall pay to Sellers a purchase price of $1,059,961.29 (the "Purchase Price") for the Claims, which Purchase Price is allocated to each Claim as set forth on Schedule 3(a) attached hereto.

(b)　　The Purchase Price shall be paid by Purchaser's check made out to "Entergy" and deliverable within one day of the date of this Agreement.

4.　　Sellers Representations. As of the date of this Agreement, each Seller hereby individually and severally, but not collectively or jointly, represents and warrants to the Purchaser as follows:

(a)　　prior to, simultaneously with, or as soon as practicable after the execution of this Agreement, such Seller has delivered or caused to be delivered, or will deliver or cause to be delivered, true and correct copies of the Proofs of Claim as filed in the Bankruptcy Cases that constitute such Seller's individual Claims as set forth on Schedule 3(a) attached hereto, including without limitation all documents or instruments included with or attached to the Proofs of Claim upon filing with the applicable Bankruptcy Court, and no Proof of Claim has been amended or withdrawn and no right thereunder has been waived; all such Proofs of Claim were duly and timely filed in the applicable Bankruptcy Cases;

(b)　　such Seller has the power and authority and the legal right to execute, deliver and perform its individual obligations under this Agreement;

(c)　　such Seller has taken all necessary action to authorize its execution, delivery and performance of this Agreement;

389359v10

*Assignment of Claims*　　　　　　　　　　　　　　　　　　　　　　*Page 2*

*Execution Copy*

(d)      this Agreement has been duly executed and delivered by such Seller and constitutes a legal, valid and binding obligation of such Seller, enforceable in accordance with the terms of this Agreement;

(e)      none of the execution, delivery or performance of its obligations under this Agreement by such Seller, nor the sale and assignment of the Claims and the Assigned Rights by such Seller has resulted, or will result, in any breach of any provision or constitute a default under the such Seller's charter documents or by-laws, or any agreement to which such Seller is a party or by which it is bound or violate any material applicable statute, order, rule or regulation;

(f)      such Seller owns and has good and marketable title to its individual Claims and the related Assigned Rights, free and clear of any and all liens, claims, security interests or encumbrances;

(g)      except for the Reserved Rights, such Seller has not received any payments, dividends or distributions on account of its individual Claims and has not previously sold or assigned its individual Claims or related Assigned Rights; and, to the best of such Seller's knowledge, such Seller did not receive any payments, security interests or other transfers (whether by setoff or otherwise) from or on account of any Debtor during the 91 days prior to the commencement of the respective Bankruptcy Cases, except payments made in the ordinary course of business of such Seller and Debtor, on ordinary and customary business terms, and in respect of indebtedness incurred in the ordinary course of business of such Seller and Debtor;

(h)      such Seller's individual Claims are valid, general unsecured, liquidated, undisputed, non-contingent claims in the Outstanding Claim Amount set forth on Schedule 3(a), and are not subject to any right or claim of setoff, reduction, impairment, recoupment, counterclaim, subordination, defense or disallowance, or to the best of such Seller's knowledge, avoidance or preference, for any reason; and

(i)      such Seller's individual Claims are not subject to any objections including to the validity or amount of the Claims;

(j)      the basis for the Claims are amounts due and owing by the respective Debtors in respect of goods, merchandise or services sold and actually delivered or performed by such Seller and received by the respective Debtors;

(k)      neither such Seller nor any entity related to such Seller is currently the subject of a bankruptcy proceeding;

(l)      such Seller is not an insider within the meaning of 11 U.S.C. Section 101(31);

(m)      such Seller has agreed to the Purchase Price allocated to its individual Claims based on its own independent investigation and credit determination and has consulted with such advisors as it believes appropriate and has not relied on any representations made by Purchaser;

389359v10

*Execution Copy*

(n)      such Seller is aware that information which may be pertinent to such Seller's decision to transfer its individual Claims is available to such Seller and can be obtained from the Bankruptcy Court's files or other publicly available sources;

(o)      such Seller is aware that the consideration received herein for the sale of its individual Claims may differ both in kind and amount from any distributions made pursuant to any plan of reorganization confirmed by the applicable Bankruptcy Court in the respective Bankruptcy Cases; such Seller has such knowledge and experience in financial matters that it is capable of evaluating the merits and risks of the sale and assignment of the Claims and Assigned Rights;

(p)      such Seller is knowledgeable regarding the rights and remedies of an unsecured creditor in a bankruptcy case and the rights and remedies of other creditors and interest holders in such a bankruptcy case;

(q)      such Seller is experienced, or has retained advisors who are experienced, in the purchasing and selling of claims against and interests in financially distressed entities, including entities operating under the protection of the United States Bankruptcy Code, such as the Claims and Assigned Rights;

(r)      such Seller is knowledgeable regarding the Bankruptcy Cases and the status of such proceedings and the Debtors as a result of, among other things, its own due diligence;

(s)      such Seller has agreed to sell the Claims and Assigned Rights on the basis of its own independent investigation, evaluation and credit determination and has not sought or relied upon any representation or warranty from Purchaser or information provided by or statements made by Purchaser regarding or relating to the Bankruptcy Cases, the Debtors, their businesses, operations or future prospects, or the consideration that may be paid or distributed to the holders of the Claims against and interests in the Bankruptcy Cases; provided however that such Seller has relied on the representations, warranties and covenants made by Purchaser in this Agreement; and

(t)      Sellers have not received from Purchaser any confidential or material nonpublic information with respect to any of the Bankruptcy Cases.

5.      Purchaser Representations.  As of the date of this Agreement, Purchaser hereby represents and warrants to the Sellers as follows:

(a)      Purchaser has the power and authority and the legal right to execute, deliver and perform its obligations under this Agreement;

(b)      Purchaser has taken all necessary action to authorize its execution, delivery and performance of this Agreement;

(c)     this Agreement has been duly executed and delivered and constitutes a legal, valid and binding obligation of Purchaser, enforceable in accordance with the terms of this Agreement;

(d)     none of the execution, delivery or performance of its obligations under this Agreement by Purchaser, nor the purchase and assumption of the Claims and the Assigned Rights by Purchaser has resulted, or will result, in any breach of any provision or constitute a default under Purchaser's charter documents, management agreement or by-laws, or any agreement to which Purchaser is a party or by which it is bound or violate any material applicable statute, order, rule or regulation;

(e)     Purchaser has such knowledge and experience in financial matters that it is capable of evaluating the merits and risks of the purchase and assumption of the Claims and Assigned Rights;

(f)     Purchaser can afford to take the economic risks that are entailed in purchasing and assuming the Claims and Assigned Rights;

(g)     Purchaser is knowledgeable regarding the rights and remedies of an unsecured creditor in a bankruptcy case and the rights and remedies of other creditors and interest holders in such a bankruptcy case;

(h)     Purchaser is experienced, or has retained advisors who are experienced, in the purchasing and selling of claims against and interests in financially distressed entities, including entities operating under the protection of the United States Bankruptcy Code, such as the Claims and Assigned Rights;

(i)     Purchaser is knowledgeable regarding the Bankruptcy Cases and the status of such proceedings and the Debtors, as a result of, among other things, its own due diligence;

(j)     Purchaser has agreed to purchase and assume the Claims and Assigned Rights on the basis of its own independent investigation, evaluation and credit determination and has not sought or relied upon any representation or warranty from Sellers or information provided by or statements made by Sellers regarding or relating to the Bankruptcy Cases, the Debtors, their businesses, operations or future prospects, or the consideration that may be paid or distributed to the holders of the Claims against and interests in the Bankruptcy Cases; provided however that Purchaser has relied on the representations, warranties and covenants made by such Seller in this Agreement; and

(k)     Purchaser has not received from Sellers any confidential or material nonpublic information with respect to any of the Bankruptcy Cases, including without limitation such case or cases described on Schedule 5(k) in which one or more of the Sellers has been a member of the Official Committee of Unsecured Creditors appointed in such cases.

6.     Acknowledgment of Non-public Information. Each of the Purchaser and the Sellers acknowledge that the other may possess material non-public information concerning

389359v10

the Claims, the Bankruptcy Cases and/or the Debtors. Each further acknowledges that it has not requested to receive such information; may not have received such information and has nevertheless determined to proceed with the transaction contemplated herein, and neither the Purchaser or the Sellers shall have any liability to the other party arising out of the non-disclosure of such information; provided, however, that nothing in this Section 6 shall limit any representation or warranty made in Section 4 or 5 above.

7.    Indemnification.

(a)    Each Seller agrees individually and severally, but not collectively or jointly, to indemnify and hold harmless Purchaser and its officers, directors, partners, members, managers, employees and agents, and successors and assigns of any of them (collectively, "Purchaser Indemnified Parties") from any and all liability, claim, cost, loss, damage or expense (including reasonable attorneys' fees and expenses) (collectively, "Damages") which Purchaser Indemnified Parties shall incur or suffer as a result of or arising out of or in connection with (i) any breach by such Seller of any representation or warranty of such Seller contained in this Agreement, (ii) any failure by such Seller to carry out any of its obligations under this Agreement, to the extent such Damages are not caused by Purchaser's failure to carry out its obligations under this Agreement or (iii) such Seller's membership on any committee appointed in any of the Bankruptcy Cases.

(b)    Purchaser agrees to indemnify and hold harmless each Seller and its shareholders, officers, directors, members, managers, employees and agents, and successors and assigns of any of them (collectively, "Seller Indemnified Parties"), from any and all Damages which any Seller Indemnified Parties shall incur or suffer as a result of or arising out of or in connection with (i) any breach by Purchaser of any representation or warranty of Purchaser contained in this Agreement or (ii) any failure by Purchaser to carry out any of its obligations under this Agreement, to the extent such Damages are not caused by any Seller's failure to carry out its obligations under this Agreement.

(c)    If a third party commences any action against Purchaser or any Seller for which Purchaser or such Seller is entitled to indemnification under paragraph (a) or (b) of this Section 7 (as the case may be) (the "Indemnified Party"), such Indemnified Party will promptly notify the other party (the "Indemnifying Party") in writing of such commencement and the Indemnifying Party shall, at its own expense and without limiting its obligation to indemnify the Indemnified Party, undertake the defense of such action with counsel reasonably acceptable to the Indemnified Party and provide the Indemnified Party with copies of all notices, pleadings and other papers filed as received in connection with such action. Such Indemnified Party shall have the right to employ its own counsel in any such case, but the fees and expenses of such counsel shall be borne by such Indemnified Party unless (i) the employment of such counsel has been authorized by the Indemnifying Party, (ii) the Indemnifying Party shall not have employed counsel reasonably satisfactory to such Indemnified Party to direct the defense of such action or (iii) such Indemnified Party shall reasonably conclude that there are defenses available to it that are not available to the Indemnifying Party. In the event of clause (i), (ii) or (iii) above, counsel to the Indemnifying Party shall not be entitled to direct the defense of the Indemnified Party.

*Execution Copy*

8.   Receipt of Further Payment.  In the event Sellers shall receive any payment or distribution with respect to the Claims and the Assigned Rights after the date hereof, including cash, securities, obligations or other property (an "Erroneous Payment"), other than any payment or distribution with respect to any Reserved Rights or any portion of the Claims which the Sellers have repurchased in accordance with Section 9 hereof, and other than the purchase price of any Additional Allowed Amount purchased by Purchaser in accordance with Section 10 hereof, Sellers agree to accept such Erroneous Payment as Purchaser's agent and to hold such Erroneous Payment in trust on behalf of and for the benefit of Purchaser.  Within the earlier of (i) seven (7) business days after the applicable Seller's receipt of written notice from Purchaser for payment of an Erroneous Payment, or (ii) thirty (30) calendar days after the actual receipt by the applicable Seller of an Erroneous Payment, such Seller shall deliver such Erroneous Payment to Purchaser pursuant to the notice provisions set forth in this Agreement in the same form received, with the endorsement of the applicable Seller, without recourse, when necessary or appropriate.  In the event Sellers shall receive any documents, instruments, notices or correspondence relating to the Claims and Assigned Rights after the date hereof, Sellers agree to send the same within ten (10) business days after receipt thereof to Purchaser by recognized overnight delivery service (e.g., Federal Express) or by certified mail, return receipt requested.

9.   Obligation of Sellers to Repurchase.

(a)   Subject to Purchaser's obligations under Section 9(e) of this Agreement, in the event that the Bankruptcy Court enters an order (each an "Adverse Order") that: (i) avoids, disallows, expunges, subordinates or otherwise reduces the Claims, or any part thereof or any distribution with respect thereto, for any reason (including without limitation fraudulent conveyance or preferential transfer) or (ii) disallows the transfer of the Claims, or any part thereof, hereunder; or (iii) provides for distributions that are, per-dollar of Claim, less in amount or different in nature or timing than the distributions on unsecured claims generally (any of the foregoing impairments described in Clauses (i), (ii) or (iii) may hereinafter be referred to as an "Impairment"), then Purchaser shall, upon giving Effective Option Notice (as defined below), have the option but not the obligation (the "Repurchase Option") to require the respective Sellers to repurchase the portion of any Claim subject to the Impairment (the "Impaired Portion"), in each case at the Repurchase Price (as hereinafter defined).  (Any Impaired Portion with respect to which the Purchaser exercises the Repurchase Option, may hereinafter be referred to as the "Repurchased Portion").  This Section 9 shall not apply with respect to any Reserved Rights.

(b)   For purposes of this Agreement, "Effective Option Notice" shall mean written notice given to the Sellers within one (1) year following the date of the Adverse Order, which clearly states that the Purchaser is exercising its Repurchase Option with respect to the entire Impaired Portion or a clearly identified portion thereof.

(c)   The "Repurchase Price" for the Impaired Portion of each Claim shall equal the sum of:

(i)   the pro rata portion of the Purchase Price applicable to the Impaired Portion of such Claim (where the pro rata portion is calculated as the product of (1) the total Purchase Price allocable to such Claim (as described on Schedule 3(a)); *multiplied by* (2) a

389359v10

fraction, the numerator of which is the Impaired Portion of such Claim, and the denominator of which is the Outstanding Claim Amount of such Claim (as described on <u>Schedule 3(a)</u>); *plus*

(ii)    simple interest on the Repurchase Price accruing from the date of this Agreement through and including the date that the Sellers close on the repurchase of the Repurchased Portion, at the annual rate of 10% ("<u>Interest</u>"); <u>provided</u> that such Interest shall not be included in the Repurchase Price in the event that Purchaser fails to comply with its obligations under <u>Section 9(e)</u>.

(d)    Notwithstanding the provisions of this <u>Section 9</u>, the rights of Purchaser under <u>Section 9(a)(ii)</u> shall not arise if, as of the date of the Adverse Order, each distribution that has been made (as of that date) on account of the Impaired Portion (whether paid directly to Purchaser or forwarded to Purchaser by Sellers) has been paid in full to Purchaser.

(e)    The Purchaser shall use commercially reasonable efforts to provide the Sellers with notice of any motion, request or application to the Bankruptcy Court for an Adverse Order ("<u>Adverse Order Application</u>") to such Claims so that the respective Sellers have a reasonable opportunity to litigate or contest such Adverse Order Application to have such Adverse Order Application denied (such opportunity for the Sellers to be exercised in the sole discretion of the respective Sellers). Notwithstanding the foregoing, Purchaser may, but shall not be obligated to, prove, defend or take any affirmative action with respect to proving the validity or amount of the Claims. Purchaser shall cooperate with the Sellers in the event that Sellers elect to prove, defend or take any affirmative action with respect to proving the validity or amount of the Claims, including, without limitation, by assisting such Seller with establishing Bankruptcy Court standing or appearing on behalf of such Seller, at such Seller's expense. If the applicable Seller cannot satisfactorily resolve any contested Adverse Order Application within 180 days of the date of such Adverse Order Application, Seller shall provide Purchaser with reasonable and timely notice of such inability to resolve same, and Purchaser may (but shall not be obligated to) attempt to settle such dispute in its reasonable discretion, subject to the applicable Seller's consent, which consent will not be unreasonably withheld or delayed.

(f)    Each and every occurrence of an event described in <u>Section 9(a)</u> hereof shall be deemed a separate and independent event in respect of which Purchaser shall be deemed to have separate Repurchase Options that may be exercised at the time and in the manner set forth in this <u>Section 9</u>. Exercise by Purchaser of its Repurchase Option in connection with one occurrence of an event described in <u>Section 9(a)</u> shall not obligate Purchaser to exercise nor prevent Purchaser from exercising its Repurchase Option in connection with the occurrence of another event.

(g)    Anything to the contrary herein notwithstanding (but subject to the proviso in this sentence), Purchaser's rights under this Section 9 shall be the exclusive remedy available to Purchaser for any Damages arising out of or relating to any Impairment, <u>provided</u> that Seller shall indemnify Purchaser in accordance with Section 7 for Seller's failure to comply with this Section 9, including any litigation by Purchaser in connection with this Section 9.

10.    Additional Allowed Amounts:

In the event that the Claims, or any of them, are allowed as general unsecured unsubordinated claims in the respective Bankruptcy Cases in an amount in excess of the respective Outstanding Claim Amounts (any such excess or amount so allowed may hereinafter be referred to as an "Additional Allowed Amount") the Purchaser may elect, in its sole discretion, to purchase, upon giving five business days' prior written notice, such Additional Allowed Amount at the Purchase Price allocated to the respective underlying Claim on Schedule 3(a) attached hereto on the Additional Closing Date (as defined below) (the "Additional Amount Option").  Additional Allowed Amount as herein defined shall not include any additional claims that a Seller may have and/or assert in the Bankruptcy Cases, including without limitation any additional claims on account of the rejection of any Seller's executory contracts or on account of a judgment or settlement of a lawsuit under chapter 5 of the Bankruptcy Code.  The Sellers shall provide written notice of any Additional Allowed Amount within thirty (30) days after receipt of notice of such Additional Allowed Amount from the applicable Bankruptcy Court (the "Seller Notice").  For purposes of this Agreement, "Additional Closing Date" shall mean the fifteenth (15th) business day after the effectiveness of the Seller Notice, in accordance with Section 12 of this Agreement. In the event that the sale of the Additional Allowed Amount to the Purchaser is consummated, the amount of the respective Claims shall be deemed to include the applicable Additional Allowed Amount and the respective Outstanding Claim Amounts shall be increased by the applicable Additional Allowed Amount, and such Additional Allowed Amount shall be subject to, and benefit from, the terms and conditions of this Agreement, including without limitation the representations and warranties of the parties and the Repurchase Option under Section 9.

11.    Bankruptcy Procedures:

(a)    On the date hereof or as soon as practicable thereafter, each Seller shall prepare, execute and deliver to Purchaser one or more applicable Notices of Assignment with respect to each of the Claims in substantially the form attached hereto as Exhibit 1 (the "Assignment Notices").

(b)    Each of the Purchaser and each Seller shall use its respective commercially best efforts to effect the assignment and sale of the Claims and Assigned Rights as contemplated under this Agreement.  Each Seller agrees to take all reasonable steps reasonably requested by the Purchaser to assist the Purchaser in obtaining Bankruptcy Court approval of this Agreement pursuant to Bankruptcy Rule 3001(e)(2).

(c)    Without limiting the generality of Section 11(b), the Purchaser shall take all commercially reasonable steps necessary to notify the relevant Bankruptcy Court of this transfer as contemplated by Bankruptcy Rule 3001(e)(2), including without limitation: (1) the prompt filing with the Bankruptcy Court of the Assignment Notices (as defined herein) pursuant to Bankruptcy Rule 3001(e)(2) after the date of this Agreement; and (2) the filing with the Bankruptcy Court of other any filings or pleadings required, and serve any other notices or pleadings required, under the Bankruptcy Code (the "Additional Filings") in order to effect the transfers contemplated under this Agreement, and the Purchaser shall use all commercially reasonable efforts to file and serve such Additional Filings on or before January 31, 2003.

389359v10

      (d)     SELLERS HEREBY WAIVES ANY NOTICE REQUIREMENT IMPOSED BY BANKRUPTCY RULE 3001(e), AND CONSENTS TO THE SUBSTITUTION OF PURCHASER FOR SELLERS FOR ALL PURPOSES IN THE CASE, INCLUDING, WITHOUT LIMITATION, FOR VOTING AND DISTRIBUTION PURPOSES WITH RESPECT TO THE CLAIM.

      12.    <u>Notices</u>. Any notices to the Purchaser pursuant to this Agreement shall be served upon the Purchaser at the following address or facsimile number:

> Contrarian Capital Trade Claims, L.P.
> 411 West Putnam Avenue, Suite 225
> Greenwich, CT 06830
> Phone: (203) 862-8238
> Facsimile: (203) 629-1977

      Any notices to the Sellers pursuant to this Agreement shall be served upon the Sellers at the following address or facsimile number:

> ATTENTION: Jon Majewski
> Entergy Services, Inc.
> L-359-JEF
> P.O. Box 6008
> New Orleans, LA 70174
> Phone: (504) 840-2585
> Facsimile: (504) 840-2685

with copies to (which shall not constitute notice hereunder):

> ATTENTION: Alan H. Katz, Esquire
> Entergy Services, Inc.
> L-ENT-26C
> 639 Loyola Avenue
> New Orleans, LA 70113
> Phone: (504) 576-2240
> Facsimile: (504) 576-4150

>    and

> Eric Lopez Schnabel, Esquire
> Klett Rooney Lieber & Schorling
> A Professional Corporation
> The Brandywine Building
> 1000 West Street, Suite 1410
> Wilmington, DE 19801
> Phone: (302) 552-4222
> Facsimile: (302) 552-4295

389359v10

Any notice sent by mail is effective three (3) days after mailing. Any notice sent by facsimile is effective upon receipt as evidenced by sender's confirmation of completion of the facsimile transmission.

13.    Power of Attorney. Each Seller hereby irrevocably appoints Purchaser as its true and lawful attorney-in-fact with respect to the Claim and authorizes Purchaser to act in Seller's name, place and stead, to demand, sue for, compromise and recover all such sums of money which are, or may hereafter become due and payable for, or on account of the Claim herein assigned, to vote the Claim and to file proofs of claim with respect thereto. Each Seller hereby grants unto Purchaser full authority to do all things necessary to enforce the Claim and Purchaser's rights thereunder, subject to the provision in Section 9. Each Seller agrees that the powers granted in this Section are discretionary in nature and exercisable at the sole option of Purchaser. Purchaser shall have no obligation to prove or defend with respect to proving the validity or amount of the Claim, subject to the provision in Section 9.

14.    Calculation of Time Periods. Any notice period or time period for delivery of information or items pursuant to this Agreement shall not expire on a Saturday, Sunday, or "legal holiday" within the meaning of Bankruptcy Rule 9006(a). Any such notice period that would otherwise expire on a Saturday, Sunday, or "legal holiday" shall be deemed to expire at close of business prevailing eastern time on the next day that is not a Saturday, Sunday, or "legal holiday."

15.    Execution in Counterparts. This Agreement may be executed in any number of counterparts and by the different parties to this Agreement on separate counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts shall constitute but one and the same Agreement.

16.    Jointly Drafted/Interpretation. The preparation of this has been a joint effort of the parties and the resulting document shall not, solely as a matter of judicial construction or interpretation, be construed more severely against one of the parties than the other.

17.    No Third Party Beneficiaries. The rights and benefits of this Agreement shall not inure to the benefit of any third party.

18.    Entire Agreement. This Agreement constitutes the entire agreement among the parties and this Agreement supersedes any and all prior agreements or understandings between or among the parties or any of them arising out of or relating to the Claims or the Assigned Rights.

19.    Assignment. Purchaser may freely assign its rights under this Agreement but Purchaser may only delegate its duties hereunder with the prior written consent of Sellers (such consent not to be unreasonably withheld or delayed). Sellers shall not assign their respective rights or duties hereunder without the prior written consent of Purchaser (such consent not to be unreasonably withheld or delayed). Notwithstanding the foregoing, no party shall require consent in the event of any assignment or deemed assignment by such party to any person or entity, having the equivalent or superior credit quality as such assigning party, controlling, controlled by or under common control with such assigning party or in connection with the sale or

transfer of all or substantially all of such assigning party's assets by sale, merger, consolidation or otherwise.

      20.    <u>Survival</u>.  The terms of this Agreement shall be binding upon, and shall inure to the benefit of the Sellers, the Purchaser and their respective successors and assigns.  All representations and warranties made herein shall survive the execution and delivery of this Agreement.

      21.    <u>Further Assurances</u>.  Each of the parties hereto agrees to execute and deliver, or cause to be executed and delivered, all such instruments and take all such reasonable action as the other party may reasonably request in order to effectuate the purposes and to carry out the terms of this Agreement.  Without limiting the generality of the foregoing, Sellers shall deliver to Purchaser true and complete copies of all such additional agreements and documents relating to the Claims as Purchaser may from time to time reasonably request.

      22.    <u>Governing Law; Jurisdiction</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without reference to rules applicable to the conflicts of law.  Each party submits to the jurisdiction of the federal or state courts located in Wilmington, Delaware and agrees that any litigation relating to this Agreement shall be brought only in such courts.  Each party hereto consents to service of process by certified mail at its address listed in the notice provisions of this Agreement.

      23.    <u>Contract Terms</u>.  The Sellers agree to keep the amount of the Purchase Price confidential, unless disclosure is required by law, court order or other judicial or administrative proceedings, or the Purchaser discloses the Purchase Price to a third party that is not bound by any duty of confidentiality.

**(The remainder of this page intentionally left blank –
signatures appear on the following pages)**

*Execution Copy*

IN WITNESS WHEREOF, this Agreement to Assign Claims has been duly executed by the parties hereto as of the date first written above.

**Entergy Arkansas, Inc.**

_____
Attest

By: _____
Name: *Theodore H. Bunting, Jr.*
Title: *VP-CFO-Operations*

**Entergy Gulf States, Inc.**

_____
Attest

By: _____
Name: *Theodore H. Bunting, Jr.*
Title: *VP-CFO-Operations*

**Entergy Louisiana, Inc.**

_____
Attest

By: _____
Name: *Theodore H. Bunting, Jr.*
Title: *VP-CFO-Operations*

**Entergy Mississippi, Inc.**

_____
Attest

By: _____
Name: *Theodore H. Bunting, Jr.*
Title: *VP-CFO-Operations*

**Entergy New Orleans, Inc.**

_____
Attest

By: _____
Name: *Theodore H. Bunting, Jr.*
Title: *VP-CFO-Operations*

**Contrarian Capital Trade Claims, L.P.**

By : Contrarian Capital Management, L.L.C.
     as general partner

_____
Attest

By: _____
Name: _____
Title: _____

*Execution Copy*

IN WITNESS WHEREOF, this Agreement to Assign Claims has been duly executed by the parties hereto as of the date first written above.

**Entergy Arkansas, Inc.**

By: _____
_____            Name: _____
Attest                                Title: _____

**Entergy Gulf States, Inc.**

By: _____
_____            Name: _____
Attest                                Title: _____

**Entergy Louisiana, Inc.**

By: _____
_____            Name: _____
Attest                                Title: _____

**Entergy Mississippi, Inc.**

By:_____
_____            Name: _____
Attest                                Title: _____

**Entergy New Orleans, Inc.**

By: _____
_____            Name: _____
Attest                                Title: _____

**Contrarian Capital Trade Claims, L.P.**

By : Contrarian Capital Management, L.L.C.
      as general partner

_____            By: _____
Attest                               Name:_____
                                     Title: _____Member_____

389359v10

*Assignment of Claims*

SCHEDULE A TO AGREEMENT TO ASSIGN CLAIMS

| LEAD DEBTOR | CASE NO. | BANKRUPTCY COURT | PETITION DATE |
|---|---|---|---|
| Borden Chemicals and Plastics Operating Partnership | 01-1268 | D. Delaware | 4/3/2001 |
| Weiner's Stores, Inc. | 00-3955 | D. Delaware | 10/16/2000 |
| Armstrong World Industries, Inc. | 00-4471 | D. Delaware | 12/6/2000 |
| USG Corporation | 01-2094 | D. Delaware | 6/25/2001 |
| USG Interiors, Inc. | 01-2096 | D. Delaware | 6/25/2001 |
| Kmart Corporation | 02-802474 | N.D. Illinois | 1/22/2002 |
| W. R. Grace & Co. | 01-1139 | D. Delaware | 4/2/2001 |
| Worldcom, Inc. | 02-13533 | S.D. New York | 12/2/2001 |
| Friede Goldman Halter, Inc. | 01-52173 | S.D. Mississippi | 4/19/2001 |

389359v10

*Assignment of Claims*

*Execution Copy*

## SCHEDULE B TO AGREEMENT TO ASSIGN CLAIMS

| Lead Debtor | Seller | Outstanding Claim Amount ($) |
| --- | --- | --- |
| Borden Chemicals and Plastics Operating Limited Partnership | Entergy Gulf States, Inc. | 428,583.09 |
| Weiner's Stores, Inc. | Entergy Gulf States, Inc. | 33,066.99 |
| | Entergy Louisiana, Inc. | 22,367.07 |
| | Entergy New Orleans, Inc. | 9,654.24 |
| | Entergy Mississippi, Inc. | 9,063.06 |
| | Entergy Arkansas, Inc. | 7,464.29 |
| | | 81,615.65 |
| Armstrong World Industries, Inc. | Entergy Mississippi, Inc. | 82,108.70 |
| USG Corporation | Entergy New Orleans, Inc. | 681,292.40 |
| | Entergy Gulf States, Inc. | 728.51 |
| USG Interiors, Inc. | Entergy Mississippi, Inc. | 745,861.43 |
| | Entergy Louisiana, Inc. | 365.62 |
| Kmart Corporation | Entergy Gulf States, Inc. | 137,335.67 |
| | Entergy Louisiana, Inc. | 1,261.40 |
| | Entergy New Orleans, Inc. | 17,839.32 |
| | Entergy Mississippi, Inc. | 95,226.14 |
| | | 251,702.53 |
| W.R. Grace & Co. | Entergy Gulf States, Inc. | 637,294.92 |
| Worldcom, Inc. | Entergy Arkansas, Inc. | 14,801.73 |
| | Entergy Gulf States, Inc. | 5,678.79 |
| | Entergy Mississippi, Inc. | 47,089.06 |
| | Entergy New Orleans, Inc. | 26,730.81 |
| | | 94,300.39 |
| Friede Goldman Halter, Inc. | Entergy New Orleans, Inc. | 5,926.47 |
| | Entergy Louisiana, Inc. | 17,447.10 |
| | Entergy Gulf States, Inc. | 305,067.16 |
| | | 328,440.73 |

*Assignment of Claims*