IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Hearing Date: March 17, 2003, at 12:00 p.m.**

## SUPPLEMENT TO MOTION OF DEBTORS FOR AUTHORITY TO EXTEND AND MODIFY DEBTOR-IN-POSSESSION FINANCING (RE: DOCKET NUMBER 3365)

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), hereby file this supplement ("Supplement") to the Motion of Debtors for Authority to Extend and Modify Debtor-In-Possession Financing (Docket No. 3365) (the "Motion"), which was filed with the Bankruptcy Court[2] on or about February 10, 2003:

1.    As was set forth in the Motion, the Debtors have been engaged in arms-length negotiations with the Agent and the Lenders regarding an amendment (the "Amendment") of the Post-Petition Credit Agreement. The Debtors reserved the right to supplement the Motion at the

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

time such Amendment and the proposed amended order (the "Amended Order") were in a substantially final form.

2.    Attached hereto as <u>Exhibit A</u>, in substantially final form, is the Amendment. Although the Court and all parties in interest are respectfully referred to <u>Exhibit A</u> for the full terms of the parties' agreement, the key terms of the Amendment are as follows:

- The termination date of the Post-Petition Credit Agreement is extended from April 1, 2003 until the earlier of (i) the Debtors' emergence from bankruptcy or (ii) April 1, 2006.

- The maximum amount of Letters of Credit provided for the benefit of the Debtors' non-debtor subsidiaries permitted to be outstanding at any one time is increased from $15,000,000 to $25,000,000.

- The upfront fees for the Amendment are: a Facility Fee of $1,250,000, a Syndication Fee of $375,000 and an Administrative Fee of $225,000.

- The definition of "Restricted Investment" under the Post-Petition Credit Agreement has been modified so as to increase the amount of permitted Restricted Investments not otherwise permitted under the Post-Petition Credit Agreement from $15,000,000 to $20,000,000 net in the first year after the closing of the Amendment, $40,000,000 net in the aggregate during the first two years and $60,000,000 net in the aggregate during the three-year term.    Additionally, Restricted Investments will be limited to a total of $22,500,000 of Restricted Investments without Bankruptcy Court approval.

- The Unused Line Fee is modified from 0.375% per annum to (i) 0.375% per annum at all times that the Average Daily Outstanding Exposure is equal to or greater than $100,000,000; (ii) 0.50% per annum at all times that the Average Daily Outstanding Exposure is equal to or greater than $50,000,000 but less than $100,000,000; or (iii) 0.625% per annum at all times that the Average Daily Outstanding Exposure is less than $50,000,000.

Individual sections of the Post-Petition Credit Agreement have been modified by the Amendment as follows:

- Section 1.7(c) has been modified to limit required reporting of the location of Collateral.

- Section 1.7(h)(1) has been modified to exclude certain intercompany Accounts that are not Eligible Accounts from the representation regarding the Borrowers' Accounts.

- Section 1.7(i)(1) has been modified to (a) exclude from the representation regarding Inventory certain goods which, in the ordinary course of business, are damaged or defective or that become obsolete or slow-moving; (b) permit the Debtors to hold, on a consignment or similar basis, up to $7,500,000 of goods owned by another person and (c) permit the Debtors to transfer, on a consignment or similar basis, up to $5,000,000 of Inventory.

- Section 1.7(j)(1) has been modified to exclude from the requirement to maintain Equipment obsolete, non-functioning or replaced Equipment held in the ordinary course of business until repair or disposal.

- Section 1.7(j)(2) has been modified to delete reporting requirements regarding changes in Equipment.

- Section 1.7(m), granting power of attorney to the Agent, has been modified to clarify that the power of attorney generally may only be exercised when an Event of Default exists and is continuing.

- Section 1.7(o), concerning patent, trademark and copyright Collateral, has been modified to (a) limit the Debtors' duty to report to the Agent and to take certain actions to patents, trademarks and copyrights material to the Debtors' business and (b) allow the Debtors not to take certain actions upon a determination that such action is not in their best interests.

- Section 5.2(b) has been modified to change the monthly reporting requirements.

- Sections 5.2(c) & (d) have been deleted removing certain quarterly and annual reporting requirements.

- Section 5.2(e) has been modified to eliminate two requirements from the chief financial officer's required quarterly certification to the Agent and the Lenders.

- Section 5.2(f) has been modified to (a) allow 45 days rather than 30 days after the end of the Fiscal Year to provide the annual forecast; (b) additionally require an annual capital expenditure budget; and (c) require notification of the Agent if aggregate capital expenditures exceed 120% of the capital expenditure budget.

- Section 5.2(h) has been modified to limit the requirement to deliver to the Agent SEC filings to after the Agent requests delivery.

- Section 7.22, providing a covenant regarding EBITDAR, has been modified to require the Debtors to maintain minimum EBITDAR, for the twelve calendar month period ending on the last day of each calendar month set forth below of not less than the amount set forth below for such period:

| Calendar Month | EBITDAR |
|---|---|
| April, 2003 through and including March, 2004 | $90,000,000 |
| April, 2004 through and including March, 2005 | $95,000,000 |
| April, 2005 and each month thereafter | $100,000,000 |

3.     Attached hereto as Exhibit B, is the proposed Amended Order.  The Amended Order is substantially the same as the Original Order.  A blackline comparison of the Amended Order against the Original Order is attached hereto as Exhibit C.

4.     The Debtors have additionally agreed on the fee to be paid to Agent for the Interim Extension, in the event it is necessary.  The Interim Extension fee will be $75,000.00.

5.     The three-year term of the Amended Credit Agreement provides the Debtors with the certainty of a binding credit commitment.  This certainty of continued financing eliminates the distractions attendant with the negotiation of renewals of the Post-Petition Credit Agreement and allows the Debtors' management to focus on the successful reorganization of the Debtors. The upfront fees the Debtors are paying in connection with the Amendment total $1,850,000 or $1,425,000 less than the upfront fees of $3,275,000 paid initially in conjunction with the Post-Petition Credit Agreement.

6.     The Amendment provides the Debtors with enhanced flexibility in the use of the DIP Facility through the changes in the limits on Letters of Credit and Restricted Investments.

The increase in the amount of Letters of Credit which may be issued on behalf of non-debtor subsidiaries together with the increase in the cap on Restricted Investments also benefit the Debtors' estates by allowing the Debtors the financial flexibility to continue their strategic business plan.

7.    In addition, the terms of the Amendment substantially reduce the burden on the Debtors related to the numerous covenants regarding collateral, reporting requirements and financial covenants in the Post-Petition Credit Agreement.  The loosening of the covenants regarding collateral allow the Debtors to conduct their business operations consistent with their established practice without unnecessary concern about causing a technical default under the Post-Petition Credit Agreement.  The reduced reporting requirements will allow the Debtors' management to focus on the Debtors' reorganization.  The increased flexibility with respect to the EBITDAR covenant will ensure the Debtors' continued financial flexibility during the Chapter 11 Cases.  This continued flexibility is an important part of the Debtors' reorganization efforts and helps to preserve the value of the Debtors' estates.

[Remainder Of Page Intentionally Blank]

8.     As was described in the Motion, the continuation of post-petition financing is necessary to the Debtors continued business operations and the success of their reorganization. The Amendment is the best alternative to satisfy the Debtors financing needs during the continuation of the Chapter 11 Cases and is a necessary part of the Debtors successful reorganization. For the above reasons and the reasons set forth in the Motion, the relief requested in the Motion should be granted.

Dated: February 28, 2003

Respectfully submitted,

KIRKLAND & ELLIS
James H.M. Sprayregen, P.C.
James W. Kapp III
Janet S. Baer
Christian J. Lane
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
WEINTRAUB P.C.

Paula A. Galbraith

Laura Davis Jones (#2436)
Scotta E. McFarland (#4184)
Paula A. Galbraith (#4258)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession