# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

Re. Docket Nos. 3365 & 192 & 3/17/03 Agenda Item No. 2

### FIRST AMENDED FINAL ORDER AUTHORIZING SECURED POST-PETITION FINANCING ON A PRIORITY BASIS PURSUANT TO 11 U.S.C. § 364, AND GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362

The above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a motion (the "Motion") dated February 10, 2003 (a) seeking this Court's authorization pursuant to sections 364(c)(1), 364(c)(2), and 364(c)(3) of Title 11 the United States Code (as amended, the "Bankruptcy Code") and Rules 2002, 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for the Debtors, inter alia, (i) to amend their existing post-petition financing (the "Existing Post-Petition Financing" and, as amended, the "Post-Petition Financing") to, among other things, extend the term thereof with a commitment of up to $250,000,000 (the "Commitment"), pursuant to the Post-Petition Loan and

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants. Inc., Dewey & Almy, LLC (f/k/a Dewey & Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba. Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR. Corporation, Grace Petroleum Libya. Incorporated, GraceTarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R.. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International. Inc., Kootenai Development Company, L B Realty, Inc.) Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc.. Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.). MRA Staffing Systems, Inc. (f/k/a. British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Security Agreement dated as of April 1, 2001 (the "Original Loan Agreement"), as amended by Amendment No. 1 to Post-Petition Loan and Security Agreement (the "Amendment," and as amended thereby or otherwise amended, supplemented or modified from time to time, the "Loan Agreement") among the Debtors, as borrowers, Bank of America, N.A. ("BofA") and the additional financial institutions from time to time parties thereto, as lenders (the "Lenders"), and BofA, as the Lenders' agent (the "Agent"), (ii) to continue to obtain Post-Petition Financing pursuant to the Loan Agreement, (iii) to execute the Amendment (terms not otherwise defined herein shall have the meaning ascribed to them in the Loan Agreement), (iv) to execute all amended ancillary documents contemplated by the Loan Agreement, including, without limitation, revolving loan promissory notes, if any, as set forth in the Loan Agreement (the "Notes," and together with the Loan Agreement, and all other ancillary documents at any time executed in connection therewith, collectively, the "Amended Loan Documents" and together with the ancillary documents executed in connection with the Credit Agreement, the "Loan Documents"); (v) to affirm the grant to the Agent for the benefit of the Lenders, pursuant to section 364 of the Bankruptcy Code, first priority liens and security interests, senior to any and all other liens and security interests, in all of the Debtors' currently-owned and after-acquired property (subject to the exclusions set forth herein) and the proceeds and products thereof, subject only to any non-avoidable, valid, enforceable and perfected liens on and security interests in the assets of the Debtors which existed as of the Petition Date ("Prior Claims") to secure the Debtors' obligations under the Loan Documents; and (vi) to affirm the grant to the Lenders administrative super-priority in payment with respect to such obligations over any and all administrative expenses of the kinds specified in sections 503(b), 507(b) and 546(c) of the Bankruptcy Code; and (b) requesting that a final hearing (the "Final Hearing") be scheduled by

the Court to consider entry of a final amended order (this "Order") authorizing the Post-Petition Financing on a final basis. Due and proper notice of the Motion pursuant to Bankruptcy Rule 4001 has been given as set forth below. The Court having further considered the Motion and any objections thereto, and upon the entire record made at the Final Hearing, and this Court having found good and sufficient cause,

### IT IS HEREBY FOUND AND CONCLUDED that:

A. On April 2, 2001 (the "Petition Date"), the Debtors each filed a voluntary petition for relief with this Court under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are continuing in possession of their property, and operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B. This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion presents a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C. The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the loans and other credit accommodations provided for in the Loan Agreement. The ability of the Debtors to pay employees, maintain business relationships with vendors and suppliers, purchase new inventory, ship and distribute materials throughout the manufacturing process, and otherwise finance their operations is essential to the Debtors' continued viability. In addition, the Debtors' need for financing is immediate. Without the Post-Petition Financing, the continued operation of the Debtors' businesses would not be possible, and

serious and irreparable harm to the Debtors and their estates would occur. The preservation, maintenance and enhancement of the going concern value of the Debtors, as well as the protection of the interests of others as described herein, are of the utmost significance and importance to a successful reorganization of the Debtors under chapter 11 of the Bankruptcy Code.

D.  Given the Debtors' current financial condition and capital structure, the Debtors are unable to sustain their operations with the use of cash otherwise available and are unable to obtain sufficient unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Financing on a post-petition basis is not otherwise available without the Debtors' granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in sections 503(b), 507(b), and 546(c) of the Bankruptcy Code, and securing such indebtedness and obligations with the security interests in and the liens upon the property described below pursuant to sections 364(c)(2) and (c)(3).

E.  Notice of the Final Hearing, the relief requested in the Motion, and the proposed form of this Order has been given to (a) the U.S. Trustee, (b) counsel to the Agent, (c) counsel to the Debtors' Official Committee of Unsecured Creditors ("Creditors Committee"), (d) counsel to the Debtors' Official Committee of Property Damage Claimants ("Property Committee"), (e) counsel to the Debtors' Official Committee of Asbestos Bodily Injury Claimants ("Personal Injury Committee"), and (f) all those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002. Based upon all of the foregoing, sufficient and adequate notice under the circumstances of the Motion and this

Order has been given pursuant to sections 102(1), 364(c), and 364(d) of the Bankruptcy Code, and Bankruptcy Rules 2002 and 4001(c).

F.  The Post-Petition Financing has been negotiated in good faith and at arms-length among the Debtors and BofA (as Agent and as a Lender), and any credit extended and loans made to the Debtors ("Loans") and letters of credit issued for the account of the Debtors pursuant to the Loan Agreement ("Letters of Credit") shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, section 364(e) of the Bankruptcy Code, and the Agent and Lenders are entitled to the protections of section 364(e) of the Bankruptcy Code.

G.  The terms of the Post-Petition Financing are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

H.  This Court concludes that entry of this Order is in the best interests of the Debtors' estates and creditors because its implementation, among other thing, will allow for the availability to the Debtors of working capital which is necessary to sustain the operations of the Debtors' existing businesses and enhance the Debtors' prospects for successful reorganization.

I.  On May 3, 2001, this Court entered a Final Order Authorizing Secured Post-Petition Financing on a Priority Basis pursuant to 11 U.S.C. § 364, and Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362 (the "Original Order"). Pursuant to the Original Order, the Debtors were each authorized to execute and deliver to the Lenders the Loan Agreement, the Notes (to the extent requested by the Lenders pursuant to the

Loan Documents) and any other document of any kind required to be executed and delivered in connection therewith.

J.  Each of the foregoing findings by the Court will be deemed a finding of fact if and to the full extent that it makes and contains factual findings and a conclusion of law if and to the full extent that it makes legal conclusions.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Final Hearing and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.  The Motion is granted, subject to the terms and conditions set forth in this Order and any objections to the entry of this Order are resolved hereby or, to the extent not resolved are overruled.

2.  The Debtors are each authorized and obligated on a final basis to comply with and perform and are bound by, all of the terms, conditions and waivers contained in the Loan Documents, and the Debtors are each authorized and obligated to repay amounts borrowed with interest and any other allowed charges, to the Agent and Lenders in accordance with and subject to the terms and conditions set forth in the Loan Documents and this Order. None of the Loan Documents nor this Order nor any provision of any thereof, nor any right arising under any thereof, shall be voidable or avoidable under section 548 of the Bankruptcy Code or under any applicable State Uniform Fraudulent Transfer Act Uniform, Fraudulent Conveyance Act or similar statute or common law. The Debtors are further authorized and obligated to pay all facility, commitment and other fees and expenses, including, without limitation, all reasonable fees and expenses of professionals engaged by the Agent or the Lenders, in accordance with the terms of the Loan Agreement. All loans made under the Loan Agreement and interest thereon,

together with all reimbursement and other obligations in respect of Letters of Credit and all fees, costs, expenses, indebtedness, obligations and liabilities of the Debtors to the Agent and the Lenders under or in respect of the Loan Documents, the Original Order and this Order are hereinafter referred to as the "Obligations."

3. The Debtors are expressly authorized to borrow from the Lenders, on the terms and subject to the conditions and limitations in availability set forth in the Loan Documents and this Order, a total of up to $250 million of Loans (inclusive of Letters of Credit). The Debtors are authorized to use the proceeds of the Loans, and to request the issuance of Letters of Credit for the purposes permitted under the Loan Agreement.

4. Effective immediately, the automatic stay pursuant to section 362(a) of the Bankruptcy Code, and any and all other stays and injunctions which are or may be applicable, shall be and hereby are modified and vacated as to the Lenders and the Agent and all of their Collateral (as defined below), so that (i) if an Event of Default (as defined in the Loan Agreement) occurs, subject to Paragraph 11 of this Order, the Lenders and the Agent shall be entitled to terminate the financing contemplated by the Loan Agreement and to exercise any and all their rights and remedies under the Loan Agreement, the other Loan Documents and this Order, and (ii) prior to an Event of Default, Agent and Lender may take such actions with respect to the Collateral and proceeds thereof as are authorized in the Loan Agreement, including without limitation the application of proceeds of Accounts and other Collateral to the Obligations, the establishment of cash collateral accounts, and the taking of steps to perfect Agent's Liens on the Collateral. Notwithstanding anything herein to the contrary, no Loans, Letters of Credit, cash Collateral or any portion of the Carve-Out (as defined below) may be used to object to or contest in any manner, or raise any defenses to, the validity, perfection, priority or

enforceability of the Obligations owing to the Lenders or Agent, or the liens in favor of the Lenders or Agent securing such Obligations, or to assert any claims or causes of action against the Lenders or Agent in their capacity as lenders or agent under the Loan Agreement.

5. In accordance with sections 364(c)(1) and 507(b) of the Bankruptcy Code, subject to Paragraph 7 below and the last sentence of this paragraph, the Obligations shall constitute claims with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b) and 546(c) of the Bankruptcy Code and shall at all times be senior to the rights of the Debtors, any successor trustee to the extent permitted by law, or any other creditor in the Chapter 11 Cases or any subsequent proceedings under the Bankruptcy Code, subject only to Prior Claims and the Carve-Out. No cost or expense of administration under sections 105, 364(c)(1), 503(b), 506(c), or 507(b) of the Bankruptcy Code or otherwise, shall be senior to or equal to the claim of the Lenders arising out of the Obligations, subject only to the Carve-Out and the last sentence of this paragraph. As long as no unwaived Event of Default under the Loan Agreement (each a "Carve-Out Event") has occurred, the Debtors shall be permitted to pay compensation and reimbursement of expenses incurred prior to a Carve-Out Event authorized to be paid under sections 330 and 331 of the Bankruptcy Code or otherwise pursuant to an order of the Bankruptcy Court, as the same may be due and payable and such payments shall not reduce the Carve-Out. Notwithstanding the foregoing or any other provision of this Order, the Lenders' administrative claims shall be *pari passu* with all other administrative claims and expenses solely with respect to Lenders' entitlement to share in proceeds of Avoidance Actions.

6. As security for the Obligations, and as provided in the Loan Documents, subject to the Carve-Out provisions in Paragraph 7, the Agent shall have and is hereby granted for the benefit of the Lenders (effective upon the date of the Original Order and without the necessity of the execution, filing and/or recordation by the Debtors of mortgages, security agreements, patent security agreements. trademark security agreements, pledge agreements, financing statements or otherwise), valid and perfected security interests in and liens upon (the "Liens") all presently owned and after-acquired personal and real property of the Debtors of any nature whatsoever, wherever located, as set forth in the Loan Documents, including, without limitation, all cash contained in any account maintained by any of the Debtors, all causes of action existing as of the Petition Date, and all real property the title to which is held by any of the Debtors, or possession of which is held by any of the Debtors pursuant to a leasehold interest (collectively with all proceeds and products of any or all of the foregoing, the "Collateral") as follows:

(a) pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority, perfected Lien upon all of the Debtors' right, title and interest in, to and under all Collateral that is not otherwise encumbered by a Prior Claim; and

(b) pursuant to section 364(c)(3) of the Bankruptcy Code, a junior priority, perfected Lien upon all of the Debtors' right, title and interest in, to and under the Collateral that is subject to a Prior Claim (subject only to such Prior Claim).

The Collateral shall not include (a) claims of the Debtors arising under sections 544, 546, 547, 548, 549, 550 or 553 of the Bankruptcy Code ("Avoidance Actions"), (b) stock or other equity interests of the Debtors in any foreign subsidiary, and (c) life insurance policies (identified as "COLIs" in the Loan Agreement) owned by, or assigned to, any of the Debtors (provided that proceeds of any collateral in clauses (b) and (c) shall constitute Collateral and be subject to the Liens). "Prior Claims" shall not include any lien or security interest that is avoidable pursuant to any provision of the Bankruptcy Code.

7. Notwithstanding any contrary provision of this Order or the Loan Documents, the Liens and claims granted to the Agent and the Lenders pursuant to the Loan Documents and this Order shall be subject and subordinate to (a) Prior Claims, (b) prior to the occurrence of a Carve-Out Event, unpaid professional fees and disbursements incurred by the professionals retained, pursuant to sections 327 or 1103(a) of the Bankruptcy Code, by the Debtors, any successor Chapter 11 or 7 trustee, and any statutory committee(s) (each a "Committee") appointed in the Chapter 11 Cases (the "Professionals"), approved and allowed by this Court pursuant to sections 330 and 331 of the Bankruptcy Code ("Professional Fees"), (c) following the occurrence of a Carve-Out Event, all Professional Fees accrued but unpaid prior to such Carve-Out Event, (d) following the occurrence and during the pendency of a Carve-Out Event, the payment of Professional Fees incurred after the occurrence and during the pendency of such Carve-out Event, in an aggregate amount not to exceed (i) $7.5 million for the Debtors' and any Committees' Professionals, and (ii) for any trustee(s) and its or their Professionals $1 million (in the aggregate) plus any unused amounts remaining under that portion of the Carve-Out described in preceding clause (i) as of the date of the appointment of such trustee(s) (for the avoidance of doubt, "unused" amounts excludes amounts of accrued and unpaid chapter 11 fees or expenses subject to the Carve-Out), and (e) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court and any agent thereof ((b) through (e), collectively, the "Carve-Out"), provided, however, that the Carve-Out shall not include Professional Fees incurred in connection with asserting any claims or causes of action against Lenders or Agent and/or challenging any lien of Lenders or Agent with respect to the Obligations. Notwithstanding any provision of this Order, the amount of any Carve-Out available for the benefit of any particular Professional pursuant to clauses (b)

and (c) of the preceding sentence shall be limited to the amount of Unpaid Professional Fees (i) covered by invoices previously submitted to the Debtors (with a copy to the Agent) and (ii) without duplication, Professional Fees accrued within a consecutive thirty day period immediately prior to the occurrence of such Carve Out Event plus, without duplication, the amount of any good faith estimate of accrued Professional Fees for such Professional previously provided by such Professional to the Debtors and the Agent in writing from time to time. The provisions herein for the Carve-Out shall not reduce Agent's or Lenders' claims to or rights in the Collateral or the amount of Debtors' Obligations to Lenders.

8.  Neither the Debtors, the Debtors' estates nor the Debtors' professionals shall assert a claim under section 506(c) of the Bankruptcy Code against Agent or any Lender for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Agent or Lenders upon, the Collateral. The Agent and Lenders shall not be subject to the equitable doctrine of marshaling or any other similar doctrine with respect to any Collateral. None of the Agent or Lenders shall be required to file or serve financing statements, mortgages, patent and trademark security agreements and similar instruments which are used to perfect liens and security interests in intellectual property, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action including taking possession to validate and perfect the Liens. If, however, the Agent or any Lender, in their sole discretion, shall determine to file any such financing statements, agreement, notices of lien or similar instruments, or to otherwise confirm perfection of such Liens, the Debtors are obligated to cooperate with and assist in such process, and all such documents shall be deemed to have been perfected at the time of and on the date of the Original

Order, and shall be and hereby are deemed and adjudicated senior to any other post-petition filing by any other person or entity with respect to the same collateral.

9. A copy of this Order may be used by Agent as a financing statement, mortgage, deed of trust or similar instrument for purposes of any public filing made by Agent for the perfection of Agent's Liens. All state, federal, and county recording officers are authorized and directed to accept a copy of this Order for filing for such purposes.

10. As long as any portion of the Obligations remains unpaid, or any Loan Document remains in effect (without prejudice to other Events of Default set forth in the Loan Agreement), in addition to the other Events of Default set out in the Loan Documents it shall constitute an Event of Default if (a) there shall be entered any order dismissing any of the Chapter 11 Cases, or an order shall be entered by the Bankruptcy Court (or the Debtors shall file an application or motion for such an order) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or (b) there shall be entered in any of the Chapter 11 Cases or any subsequent chapter 7 case any order which authorizes under any section of the Bankruptcy Code, including sections 105, 363, or 364 of the Bankruptcy Code, (i) the granting of any lien or security interest in any property of the Debtors in favor of any party other than the Agent and the Lenders, (ii) the obtaining of credit or the incurring of indebtedness that is entitled to super-priority administrative status, in either case equal or superior to that granted to the Agent and the Lenders pursuant to this Order (other than the Carve-Out), or (iii) the use of Cash Collateral, or the Debtors seek any of the foregoing relief, unless, in connection with any transaction cited in clause (i), (ii), or (iii) of this paragraph, such order requires that the Obligations shall first be indefeasibly paid in full in cash (including cash collateralization or backstopping of all then outstanding Letters of Credit). Otherwise, and in addition to creating an

Event of Default, the Debtors, on behalf of their estates, expressly waive any right to request, without the prior written consent of Agent, any relief of the type described in the preceding sentence.

11. Upon the occurrence of and during the continuance of any Event of Default, including the Events of Default identified in Section 9.1 of the Loan Agreement, the Agent and the Lenders may, acting pursuant to the Loan Agreement, exercise rights and remedies and take all or any of the following actions without further relief from the automatic stay pursuant to section 362(a) of the Bankruptcy Code or any other applicable Stay or injunction (which have been modified and vacated, as heretofore ordered) to the extent necessary to permit such exercise of rights and remedies and taking of such actions or further order of or application to this Court: (a) terminate or suspend the Commitment and thereafter cease to issue Letters of Credit or make Loans to the Debtors; (b) declare the principal of and accrued interest, fees and other liabilities constituting the Obligations to be due and payable; (c) set-off amounts in any of the Debtors' accounts maintained with a Lender or otherwise enforce rights against any other Collateral in the possession of the Agent or Lenders; (d) charge the default rate of interest as set forth in the Loan Documents; and/or (e) take any other action or exercise any other right or remedy permitted to the Lenders under the Loan Documents, this Order, or applicable law. The Debtors waive any right to seek relief under the Bankruptcy Code including, without limitation, under section 105, to the extent any such relief would in any way restrict or impair the rights and remedies of the Agent or the Lenders set forth in this Order and in the Loan Documents. If the Agent or Lenders elect to exercise any rights or remedies with respect to the Collateral that are predicated upon an Event of Default having occurred before taking such action, the Agent shall provide the Debtors' counsel, and counsel to each of the Property Committee, the Personal Injury

Committee and the Creditors Committee at least five (5) business days prior written notice, provided that no prior notice of a termination or suspension of the Commitment shall be required. If any of the Debtors or any other person challenges the occurrence of an Event of Default, any such objector's remedy shall be limited to requesting a hearing before this Court at least on five business days' written notice (a "Hearing Notice") to Lenders and the Agent. If a hearing is requested in accordance with the preceding sentence, then subsequent to receipt by Agent of a Hearing Notice, unless the Court orders otherwise, Lenders and the Agent shall not take the actions described in clauses (c) or (e) above (or shall suspend such actions if commenced prior to Agent's receipt of a Hearing Notice) for at least five business days after Agent's receipt of a Hearing Notice. In any such hearing, the sole issue before the Court shall be whether an Event of Default exists.

12. The Debtors are authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements in addition to the Loan Documents, as the Agent or the Lenders may reasonably require, as evidence of and for the protection of the Obligations or the Liens in favor of Agent or which otherwise may be deemed reasonably necessary by the Agent or the Lenders to effectuate the terms and conditions of this Order and the Loan Documents. The Debtors, the Agent and the Lenders are hereby authorized to implement, in accordance with the terms of the Loan Agreement, any non-material modifications (including, without limitation, any change in the number or composition of the Lenders) of the Loan Agreement without further notice or order of this Court.

13. Without limiting the rights of access and information afforded the Agent and the Lenders under the Loan Documents, the Debtors shall afford representatives, agents and/or employees of the Agent and Lenders reasonable access to the Debtors' premises and their

records in accordance with the Loan Documents and shall cooperate, consult with, and provide to such persons all such non-privileged information and information not subject to a binding confidentiality agreement, as they may reasonably request.

14. The Debtors shall be jointly and severally liable for all Obligations. To the extent any Debtor (a "Funding Debtor") makes aggregate payments to Agent or Lenders in excess of the aggregate amount of all loans and advances received by such Funding Debtor from Lenders after the Petition Date, then such Funding Debtor, after the payment in full of the Obligations and termination of the Commitments, shall be entitled to a claim under Section 364(c)(1) of the Bankruptcy Code against each other Debtor in such amount as may be determined by the Bankruptcy Court taking into account the relative benefits received by each such person, and such claim shall be deemed to be an asset of the Funding Debtor; provided that any such claim shall be subordinate and junior in all respects to the liens and claims of the Agent and Lenders set forth herein and in the Loan Documents.

15. Having been found to be extending credit, issuing Letters of Credit and making Loans to the Debtors in good faith based on the record before this Court, the Agent and the Lenders shall be entitled to the full protection of section 364(e) of the Bankruptcy Code with respect to the Obligations and the Liens created, adjudicated or authorized by this Order in the event that this Order or any finding, adjudication or authorization contained herein is stayed, vacated, reversed or modified on appeal. Any stay, modification, reversal or vacation of this Order shall not affect the validity of any Obligations of the Debtors to the Agent or the Lenders incurred pursuant to this Order. Notwithstanding any such stay, modification, reversal or vacation, all Loans made and all Letters of Credit issued pursuant to this Order and the Loan Agreement and all Obligations incurred by the Debtors pursuant hereto prior to the effective date

of any such stay, modification, reversal or vacation shall be governed in all respects by the original provisions hereof, and the Agent and the Lenders shall be entitled to all the rights, privileges and benefits, including without limitation, the liens, security interests and first priorities granted herein with respect to all such Obligations.

16. Neither the Agent nor any Lender shall be deemed to be in "control" of the operations of any Debtor or to be acting as a "responsible person" or "owner" or "operator" with respect to the operation or management of any Debtor (as such terms or similar terms are used in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, or any similar federal or state statute) by reason of any credit extended to the Debtors under the Loan Agreement or the exercise by the Agent or any Lender of any rights or remedies hereunder or thereunder, except that this paragraph shall apply to environmental liabilities to the United States only so long as the actions of the Agent and Lenders do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by the Debtors, or otherwise cause lender liability to arise or the status of control, responsible person, owner, or operator to exist under applicable law.

17. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order (a) confirming any plan of reorganization in the Chapter 11 Cases and, to the extent not satisfied in full in cash (or, with respect to the Letters of Credit with cash collaterization or supporting Letters of Credit) the Obligations shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors having hereby waived such discharge; (b) converting any of the Chapter 11 Cases to a chapter 7 case; or (c) dismissing any of the Chapter 11 Cases, and the terms and provisions of this Order as

well as the claims and liens granted pursuant to this Order and the Loan Document shall continue in full force and effect notwithstanding the entry of such order, and such claims and liens shall maintain their priority as provided by this Order until all of the Obligations are indefeasibly paid in full in cash and discharged.

18.     Pursuant to Section 552(a) of the Bankruptcy Code, all property acquired by the Debtors after the Petition Date, is not and shall not be subject to any lien of any entity resulting from any Prior Claim except to the extent that such property constitutes proceeds of property encumbered by a Prior Claim.

19.     To the fullest extent permitted by law, the provisions of this Order and the Loan Documents shall be binding upon and inure to the benefit of the Agent, the Lenders, the Debtors, and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed in the Chapter 11 Cases or in subsequent chapter 7 cases as a legal representative of the Debtors or their estates.

20.     The Debtors shall provide counsel to each of the Creditors Committee, the Property Committee, and the Personal Injury Committee with copies of any notices, amendments, financial data or similar information that Debtors provide to the Agent or Lenders pursuant to this Order or the Loan Documents, substantially contemporaneously with delivery of such information to the Agent or Lenders.

21.     In the event of any conflict between any term, covenant or condition of this Order and any covenant or condition of the Interim Order or any Loan Document, the provision of this Order shall control and govern.

22.     The Court has and will retain jurisdiction to enforce this Order according to its terms.

23. This Order shall become effective and amend the Original Order upon the effectiveness of the Amendment.

Dated: _____, 2003
Wilmington, Delaware

_____
JUDITH K. FITZGERALD
United States Bankruptcy Judge
