# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| **Debtors.** | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## INTERIM FEE APPLICATION OF PRICEWATERHOUSECOOPERS LLP
## FOR THE SEVENTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Fee Application of PricewaterhouseCoopers LLP for the Seventh Interim Period (the "Application").

## BACKGROUND

1.      PricewaterhouseCoopers LLP ("PwC") was retained as independent accountants and auditors for the Debtors and Debtors in Possession.  In the Application, PwC seeks approval of fees totaling $270,097.00[1] and costs totaling $20,047.10 for its services from October 1, 2002, through December 31, 2002.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications

---

[1] Actual fees reviewed for the period were $600,217.00, as  PwC bills only 45% of total fees.

for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30,

1996, (the "Guidelines"), as well as for consistency with precedent established in the United States

Bankruptcy Court for the District of Delaware, the United States District Court for the District of

Delaware, and the Third Circuit Court of Appeals.  We served on PwC an initial report based on our

review and received a response from PwC, portions of which are quoted herein.

## DISCUSSION

### General Issues

3.      In our initial report, we noted that while the Application requests fees totaling

$270,097.00, PwC states in its monthly summaries that this figure effectively amounts to only 45%

of the billing total at standard rate.  We asked PwC to explain both the basis for this adjustment and

the reason it is not addressed in the Application.  PwC responded as follows:

> The 45% accrual rate represents our estimate for 2002 audit work based upon the fixed fee arrangement of $915,000, exclusive of out-of-pocket expenses, that was agreed to by the W. R. Grace & Co. Audit Committee.  Please refer to the excerpts from our initial application to the Court dated November 15, 2002 included below, specifically paragraph 15, where we discussed the calculation of our hourly rates related to the 2002 audit.

> 13. Applicant's hourly rates for its auditors and other professionals charged in connection with Applicant's services for the Debtors were commensurate with the rates Applicant customarily charged its clients (whether corporate or individual) in both bankruptcy and non-bankruptcy matters at the time the services were rendered.

> 14. In this case, the hourly rates PwC charged the Debtors for its professionals' services were based on the fixed fees that the audit committee of the board of directors of W.R. Grace & Co. approved in advance for PwC's 2001 and 2002 audit work. PwC examined the number of hours it actually spent on the 2001 audit work in light of the fixed fee approved in advance by W.R. Grace & Co.'s audit committee, and calculated a billing rate for each of its professionals based on the these factors.

15. For the 2002 audit work, the hourly rates were based upon the approved fixed fee and the estimated hours expected to be incurred. PwC will adjust the estimated hourly rate to the actual hourly rate at the conclusion of the 2002 audit work, and will adjust its final bill if necessary.

16. PwC would have calculated the billing rates for each of its professionals in this fashion whether the audit work were performed for a client in a bankruptcy matter or in a non-bankruptcy matter.

We appreciate PwC's explanation.

4.      In our initial report, we noted that Farmer, Frick, Driscoll, Natt and Govic consistently lumped their time entries. Paragraph II.D.5. of the Guidelines states, " .... Services should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry; ..."  We requested that PwC advise these timekeepers to avoid lumping time entries in the future.  PwC responded as follows:

> We have advised these timekeepers to avoid lumping time entries in the future;  however, due to the nature of our audit testing, it is not uncommon for PwC representatives to work on certain tasks for several consecutive hours in a given day.

We appreciate PwC's response, and we have no objection to PwC representatives working as long as necessary on any given task.  However, we will continue to question entries in which multiple tasks are grouped under a single time notation.

5.      We further noted that Farmer, Divito, Ryan, Cleaver, Driscoll, Anderson, Frick, Govic, Stickley, Wu, Yeager and Zartman consistently failed to provide adequate detail in their time entries.  Rule 2016-2(d) <u>Information Requirements Relating to Compensation Requests</u> states that, "Such motion shall include activity descriptions which shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary ...:" We asked that PwC advise these timekeepers of the need to provide sufficient

detail in their time entries.  PwC's response is provided below.

> We have advised these timekeepers of the need to provide
> sufficient detail in their time entries in the future.  In order to
> ensure that our time reporting is in compliance, we would ask the
> fee auditor to provide us with the examples for the aforementioned
> PwC representatives whereby the time entries were not adequate.

We appreciate the response, and we will continue to work with PwC to be sure that there is a

clear understanding of what constitutes adequate detail in the time entries.

6.      In our initial report, we noted that most time entries throughout the Application

period were entered in quarter, half or full hour increments.  Paragraph II.D.5. of the Guidelines

states,  "[t]ime entries should be kept contemporaneously with the services rendered in time

periods of tenths of an hour..."  We asked PwC to advise all timekeepers to enter their time in

tenths of an hour.  PwC responded as follows:

> We have advised all timekeepers to enter their time in tenths of an
> hour in the future;  however, due to the nature of our audit testing,
> it is not uncommon for PwC representatives to work on a given
> tasks for several consecutive hours in a given day.  As such, while
> it may appear that the tenths of an hour requirement is not being
> met by our applications, we would submit to you that we generally
> are in compliance with this rule.

We appreciate the response.

7.      We also noted that throughout the Application period, description for travel

expenses was insufficient.  Paragraph II. E. of the Guidelines states, "[f]actors relevant to a

determination that the expense is proper include the following: ..3.Whether applicant has

provided a detailed itemization of all expenses including the date incurred, description of

expense(e.g. type of travel, type of fare, rate, destination),...."  We asked PwC to provide

adequate detail for those expenses for which it wished to be reimbursed. Such detail should

include all relevant airfare information, duration of any hotel stay, the number of meals

expensed, the number of attendees at any given meal, etc.  The response is provided below.

> Noted.  We have revised the travel documentation policies for
> future applications, and have responded to your specific inquiries
> below.

We appreciate the response and the policy revision.  Because of the systemic burden and its

relative newness to the case, we did not feel it would be productive or beneficial to the estate to

ask PwC to produce all of the requested travel expense detail for this interim.  We will expect

such detail to be included in all future applications.

<u>Specific Time and Expense Entries</u>

8.      In our initial report, we noted that between 10/1/02 and 11/26/02, various firm

members performed tasks that may not be compensable.  The time spent was 49.0 hours for a

total of $9,696.00.  See Exhibit A.  Paragraph II.  E. 7. of the Guidelines states, "[f]actors

relevant to a determination that the expense is proper include the following: . . .Whether the

expenses appear to be in the nature of nonreimbursable overhead . . . Overhead includes word

processing, proofreading, secretarial and other clerical services, . . . ."  Further, even if an

effective argument can be made for the general compensability of these activities, the question

remains as to why  lower billing professionals could not have accomplished them.  Paragraph,

I.E. of the Guidelines states ". . . [i]n evaluating fees for professional services, it is relevant to

consider . . .whether services were performed within a reasonable time commensurate with the

complexity, importance, and nature of the problem, issue, or task addressed;. . ."  We asked PwC

to review Exhibit A and explain why these activities should be compensable, and if they are, why they should be compensable at the level they were billed.  PwC's response is provided below.

> While we believe that this time incurred was necessary in order to conduct the 2002 audit of W. R. Grace & Co. for our professional staff, we are not able to improve the descriptions of the time incurred previously submitted.  In the future, we will not include the time incurred for executive assistance support, such as that time provided by Alexandra Rivera, Elizabeth Coyle, Karen Huebner, Kate Burke, and Laurie Ortiz. Please note that the actual amount included in our submission for this time is $4,363.20 ($9,696 X 45%).

We accept PwC's explanation and thus recommend a reduction of $4,363.20 in fees.

9.    In our initial report, we noted that on October 17, 2002 Jason Natt and Cheryl Frick participated in a conference call with Davison.    The time spent was 8.0 hours for a total of $3,044.00.  The time entries are provided below.  Paragraph II.D.5.of the Guidelines states, ". . .[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  We asked PwC to review the entries and explain why it was necessary for more than one to participate in this call.

| 10/17/02 | Jason Natt | 4.0 | $1,788 | ...Davison Q3 2002 earnings call |
| 10/17/02 | Cheryl Frick | 4.0 | $1,256 | ...Davison Q3 2002 earnings call |

PwC responded as follow:

> It is customary for more than one PwC representative be present at the quarterly earnings calls, as has been our practice both before and after the bankruptcy. Multiple attendees attend these meetings in order to ensure that we obtain a sufficient understanding of the changes to the business and control environment, as well as to ensure that our documentation is in compliance with generally accepted auditing standards (GAAS) with respect to our quarterly reviews.  These requirements can only be met with two PwC representatives in attendance at the quarterly earnings calls.

We accept the explanation and have no objection to these fees.

10.     In our initial report, we noted that between October 17 and October 28, 2002, Joe Divito and Cheryl Frick billed for tasks that could be viewed as unnecessary without further explanation of their purpose. The time spent was 5.5 hours for a total of $2,721.00. The entries are provided below. Paragraph I.E. of the Guidelines states ". . . In evaluating fees for professional services, it is relevant to consider . . . whether the services were necessary to the administration of, or beneficial towards the completion of, the case at the time they were rendered; . . ." We asked PwC to review the entries and explain how these activities benefitted the estate.

| 10/28/02 | Joe Divito | 1.5 | $1,151 | Partner review and meeting with Larry Farmer to discuss controls work |
| 10/17/02 | Cheryl Frick | 5.0 | $1,570 | de-brief with Cheryl Frick to discuss the results of the Davison Q3 earnings call |

PwC's response is provided below.

> Joseph DiVito is the partner in charge of all computer based testing performed on the Grace engagement, including tests of system controls. Larry Farmer is the partner in charge of the entire audit process. According to the AICPA United States Auditing Standards AU 319 Consideration of Internal Control in a Financial Statement Audit, "In all audits, the auditor should obtain an understanding of internal control sufficient to plan the audit by performing procedures to understand the design of controls relevant to an audit of financial statements, and whether they have been placed in operation." Joseph DiVito was providing Larry Farmer with such information in order to facilitate the audit planning process.

> As for the time noted in your inquiry for Cheryl Frick, her time was inappropriately classified. Cheryl documented the results of the earnings call on our quarterly review. She reviewed financial information, provided by Grace during the call, for consistency and performed substantive analytical procedures on the data obtained from the earnings call.

We appreciate PwC's explanation and have no objection to these fees.

11.      We further noted that between October 3, 2002 and November 25, 2002, entries for multiple firm members might be objectionable because the work performed appears to be a duplication of effort, e.g. 15 professionals reviewing 3Q matters for W.R. Grace. Even if the work is not purely duplicative, it appears that some firm members performed  the same tasks at substantially different hourly rates.  The time spent was 339.6 hours for a total of $135,461.00.  See Exhibit B.  Paragraph I.E. of the Guidelines states,   ". . . [i]n evaluating fees for professional services, it is relevant to consider various factors including the following: the time spent; the rates charged; ... whether services were performed within a reasonable time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;. . . ." We asked PwC to review Exhibit B and explain why these tasks appear to show a duplication of effort and why the same tasks appear to have been performed by professionals billing at substantially different rates. PwC responded as follows:

> Refer to our adjusted Exhibit B[2] attached to this memo, to better reflect the time incurred in this time frame for your review.  As you will see, 13 professionals incurred 254 hours. This time incurred is consistent with our historical time investment on 10-Q filings.  As for the number of professionals included, this results principally from the composition of Grace's business, as we have two separate teams in Columbia, Maryland (for Davison Chemicals and Corporate work), one in Cambridge, Massachusetts (for Performance Chemicals), and one in Boca Raton, Florida (for tax review).  These separate teams are necessary in order to align our audit with the Company's structure.

We appreciate PwC's response.  To the accounting layman, many of the time entries surrounding the 10-Q filing still appear redundant if not purely duplicative.  We do not presume to tell PwC how to

---

[2] Referenced in this report as Response Exhibit 1.

run an audit, though in future applications, we would appreciate as much delineation of detail and explanation of individual expertise as possible. We have no objection to these fees.

12.    In our initial report, we noted that on December 6, 2002, Farmer and Weir traveled to the Grace Financial Conference. The time spent was 5.2 hours for a total of $2,283.40. The entries are listed below. Rule 2016-2(d)(viii) states, "[t]ravel time during which no work is performed shall be separately described and may be billed at no more than 50% of regular hourly rates." We asked PwC to review the time entries and explain why these professionals charged this time at their full hourly rates.

| 12/6/02 | Farmer | 2.2 | $1,500.40 | Attend Financial Conference, Including Travel Time |
| 12/6/02 | Weir | 3.0 | $783.00 | Travel home from Washington DC. To Pittsburgh |

The response is provided below.

> As noted in our application and our first response to the Inquiry, all of our rates are billed at 45% of regularly hourly rates. Travel time during business hours is also billed at 45% of regular hourly rates.

We appreciate the response and have no objection to these fees.

13.    We noted that between December 3 and December 30, 2002 various firm members performed tasks that may not be compensable. The time spent was 15.4 hours for a total of $4,043.58. See Exhibit C. Paragraph II. E. 7. of the Guidelines states, "[f]actors relevant to a determination that the expense is proper include the following: . . .Whether the expenses appear to be in the nature of nonreimbursable overhead . . . Overhead includes word processing, proofreading, secretarial and other clerical services, . . . ." We asked PwC to review Exhibit C and to explain why these amounts should be compensable. PwC's response is provided below.

> While we believe that this time incurred was necessary in order to conduct the 2002 audit of W. R. Grace & Co. for our professional staff, we are not able to improve the descriptions of the time incurred previously submitted. Please note that the actual amount included in our submission for this time is $1,819.61 ($4,043.58 X 45%).

We accept PwC's explanation and thus recommend a reduction of $1,819.61 in fees.

14.    On December 6, 2002, Farmer, Ryan, and Natt attended a financial conference for Grace.   The time spent was 10.2 hours for a total of $5,376.40.   The entries are provided below. Paragraph II.D.5.of the Guidelines states,  ". . .[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." We requested that PwC review the entries below and explain why it was necessary for more than one to attend this conference.

| 12/6/02 | Farmer | 2.2 | $1,500.40 | Attend Financial Conference, Including Travel Time |
| 12/6/02 | Ryan | 4.0 | $2,088.00 | Attend Grace Financial Conference |
| 12/6/02 | Natt | 4.0 | $1,788.00 | Attend Grace Financial Conference |

PwC responded as follows:

> Grace management had requested Mr. Farmer, Mr. Natt and Mr. Ryan all attend the Financial Leadership Conference, as all three were a part of the overall PwC presentation. The three men were asked to speak on behalf of PwC at the conference and were included in the conference agenda. Many of the representatives were from Grace's foreign subsidiaries, and would have significant influences on audit and financial reporting processes in those areas.

We appreciate the response and thus have no objection to these fees.

15.    In our initial report, we noted that between December 2 and December 31, 2002, various firm members spent substantial time on tasks related to "coaching". The time spent was 19.9 hours for a total of $5,057.55.  See Exhibit D. Paragraph I.E.of the Guidelines I.E. states ". . . In

evaluating fees for professional services, it is relevant to consider . . .whether the services were necessary to the administration of, or beneficial towards the completion of, the case at the time they were rendered;  . . ."  We asked PwC to review Exhibit D and explain how these coaching activities directly benefitted the estate rather than PwC itself.  The PwC response is provided below.

> "Coaching" is a term that PwC uses to describe its review and supervision of subordinates work.  Per the AICPA Statement of Auditing Standards AU 310 <u>Planning and Supervision</u> "Supervision involves directing the efforts of assistants who are involved in accomplishing the objectives of the audit and determining whether those objectives were accomplished.  Elements of supervision include instructing assistants, keeping informed of significant problems encountered, reviewing the work performed and dealing with differences of opinion among firm personnel.  The extent of supervision appropriate in a given instance depends on many factors, including the complexity of the subject matter, and the qualifications of persons performing the work."

We appreciate the response and have no objection to these fees.

16.    Between November 8 and November 22, 2002, Cheryl Frick, Dan Weir, Joseph Divito, Maureen Driscoll, and Craig Cleaver list airfare expenses that lack sufficient detail.  The total spent was $4,833.58.  Paragraph II. E. 3. of the Guidelines states, "[f]actors relevant to a determination that the expense is proper include the following: . . .3. [w]hether applicant has provided a detailed itemization of all expense including the date incurred, description of expense (e.g., type of travel, type of fare, rate, destination), method of computation, and where relevant, name of the person incurring the expense and purpose of the expense. . . ."  The entries are listed below.

| 11/12/02 | Cheryl Frick | $1,609.08 | Flight to Libby, MT |
| 11/18/02 | Dan Weir | 965.00 | Flight to Boston |
| 11/08/02 | Joseph Divito | 842.50 | Flight to Baltimore |

| 11/22/02 | Maureen Driscoll | 758.50 | Flight to Boston |
| 11/19/02 | Craig Cleaver | 658.50 | Flight to Boston |

We asked PwC to forward the necessary documentation, including and especially the class of travel, so that we may properly assess the reasonableness of these expenses.  The response is provided as Response Exhibit 2.  We appreciate the response and have no objection to these expenses.

17.    In our initial report we noted that between November 8 and November 21, 2002, various firm members incurred meal expenses that may be excessive. The expense entries are listed below.  With regard to expenses, Paragraph II. E. 3. of the Guidelines states, "[f]actors relevant to a determination that the expense is proper include the following: . . .3. [w]hether applicant has provided a detailed itemization of all expense including the date incurred, description of expense (e.g., type of travel, type of fare, rate, destination), method of computation, and where relevant, name of the person incurring the expense and purpose of the expense. . ."

| 11/20/02 | Maureen Driscoll | $120.28 | Dinner |
| 11/21/02 | Maureen Driscoll | $ 68.44 | Dinner |
| 11/18/02 | Craig Cleaver | $ 42.50 | Dinner |

We asked Pwc to review the listed entries and provide any documentation to support the reasonableness of each expense.   PwC responded as follows:

> We have received clarification from the individuals listed above that the dinners charged while traveling were for more than one individual:
>
> 11/20/02 Maureen Driscoll $120.28, this meal was for by Daniel Weir, Maureen Driscoll, Craig Cleaver and a W.R. Grace representative.

11/21/02 Maureen Driscoll $68.44, this meal was for by Daniel Weir, Maureen Driscoll and Craig Cleaver while the three were traveling together.

11/18/02 Craig Cleaver $42.50, this meal was for by Daniel Weir, as the two were traveling together.

In future expense reporting to the courts, we will include more detail regarding the meal attendees and the nature of the meal.

We appreciate the response and have objection to these expenses.

18.     We further noted that on October 30, 2002, Nina Govi shows a mileage expense that appears excessive without additional, supporting information.  Paragraph II. E. 3. of the Guidelines states, "[f]actors relevant to a determination that the expense is proper include the following: . . .3. [w]hether applicant has provided a detailed itemization of all expense including the date incurred, description of expense (e.g., type of travel, type of fare, rate, destination), method of computation, and where relevant, name of the person incurring the expense and purpose of the expense. . ."

| 10/30/02 | Nina Govi | $1,732.84 | Mileage to client site |
|---|---|---|---|

We asked PwC to review the entry and provide the necessary documentation to support the reasonableness of the expense.  PwC's response is provided below.

We believe you are referencing Nina Govic's expense of $1,732.84 on October 30, 2002.  This was mistakenly classified as mileage.  The expense was incurred for a plane ticket from Washington, DC to Lake Charles, LA to observe inventory procedures at the Grace Catalyst plant in Lake Charles, LA.  The employee flew coach to the site and returned the following day after completion of the inventory observation. Copies of bills can be supplied regarding this matter if needed.

We appreciate the explanation and have no objection to this expense.

19.    In our initial report, we noted that on November 21, 2002, Dan Weir lists lodging expenses that may be considered excessive without additional information.  The total spent was $1,075.98.  The entry is provided below.  Paragraph II. E. 3. of the Guidelines states, "[f]actors relevant to a determination that the expense is proper include the following: . . .3. [w]hether applicant has provided a detailed itemization of all expense including the date incurred, description of expense (e.g., type of travel, type of fare, rate, destination), method of computation, and where relevant, name of the person incurring the expense and purpose of the expense. . ."

| 11/21/02 | Dan Weir | $1,075.98 | Cambridge Lodging |

We asked PwC to review the entry and provide sufficient documentation, including number of nights lodging, so that we can properly review the expense.  PwC responded as follows:

> Lodging expenses were for five nights hotel stay and included two meals at the hotel. Copies of bills can be supplied regarding this matter if needed.

We accept the response and have no objection to these expenses.

20.    We last noted that between December 10 and December 12, 2002,  Stickley and Zartman incurred expenses that may not be reimbursable.  The total spent was $96.65.  The entries are listed below.  U.S. Bankruptcy Code §330 (4)(A)(ii)(I) provides that, "(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for – . . .(ii) services that were not – (I) reasonably likely to benefit the debtor's estate; . . . ."

| 12/10/02 | Stickley | $21.83 | Supplies for WR Grace Christmas Party |
| 12/10/02 | Stickley | $21.52 | Supplies for WR Grace Christmas Party |
| 12/10/02 | Stickley | $26.82 | Overtime Meal for engagement team |

12/12/02        Zartman        $26.48            Supplies for WR Grace Christmas Party

We asked PwC to review the entries and explain how these party supplies benefitted the bankruptcy

estate.  PwC's response is provided below.

> We agree with the courts that the following expenses were not
> reimbursable and should be removed from our fee calculation:
> 12/10/02 Stickley   $21.83    Supplies for WR Grace Christmas Party
> 12/10/02 Stickley   $21.52    Supplies for WR Grace Christmas Party
> 12/12/02 Zartman  $26.48    Supplies for WR Grace Christmas Party
> for a total fee reduction of $69.83.
> The meal for $26.82 charged by Aimee Stickley was for dinner for
> the Columbia, MD engagement team including Cheryl Frick, Nina
> Govic, Jason Natt, Jeff Zartman and Maureen Yeager.

We appreciate the response and thus recommend a reduction of $69.83 in expenses.

## CONCLUSION

21.     Thus we recommend approval of fees totaling $263,914.19 ($270,097.00 minus

$6,182.81) and costs totaling $19,977.27 ($20,047.10 minus $69.83) for PwC's services from

October 1, 2002, through December 31, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
            Warren H. Smith
            Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 4080
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 7th day of April 2003.

_____
                  Warren H. Smith

Exhibit A

| | | | | | |
|---|---|---|---|---|---|
| Aimee Stickley | 10/1/02 | 1.5 | Time tracking spreadsheet for bankruptcy reporting | 213 | 319.50 |
| Aimee Stickley | 10/2/02 | 1.0 | WIP v. budget analysis and bankruptcy time tracking | 213 | 213.00 |
| Aimee Stickley | 10/3/02 | 1.0 | WIP v. budget analysis and bankruptcy time tracking | 213 | 213.00 |
| Aimee Stickley | 10/4/02 | 8.0 | Corporate Admin work including clearning up Corporate's external files, adding Jason Natt's files to the external working papers and some timetracking for bankruptcy proceedings | 213 | 1704.00 |
| Aimee Stickley | 10/7/02 | 1.5 | WIP v. budget analysis and bankruptcy time tracking | 213 | 319.50 |
| Aimee Stickley | 10/8/02 | 1.5 | WIP v. budget analysis and bankruptcy time tracking | 213 | 319.50 |
| Aimee Stickley | 10/15/02 | 2.5 | Bankruptcy time tracking | 213 | 532.50 |
| Aimee Stickley | 10/16/02 | 0.5 | Updating the partner biography list and updating lists of international partners | 213 | 106.50 |
| Aimee Stickley | 10/16/02 | 1.5 | Corporate Administrative work | 213 | 319.50 |
| Aimee Stickley | 10/17/02 | 8.0 | Organization of corporate audit files | 213 | 1704.00 |
| Aimee Stickley | 10/18/02 | 2.0 | Corporation Administrative work | 213 | 426.00 |
| Aimee Stickley | 11/11/02 | 0.5 | Corporate Administrative - Prepare Expense Reports for Bankruptcy Files | 213 | 106.50 |
| Alexandra Rivera | 11/4/02 | 0.5 | Administrative Assistance | 112 | 56.00 |
| Elizabeth Coyle | 10/22/02 | 0.5 | Administrative assistance | 112 | 56.00 |
| Elizabeth Coyle | 11/24/02 | 0.5 | Administrative assistance | 112 | 56.00 |
| Elizabeth Noone | 10/31/02 | 4.5 | Making copies of 2001Performance Chemicals workpapers for Internal Audit review | 185 | 832.50 |
| Fran Schlosser | 10/15/02 | 0.2 | Administrative-Q3 | 470 | 94.00 |
| Fran Schlosser | 10/16/02 | 0.3 | Administrative-Q3 | 470 | 141.00 |
| Fran Schlosser | 10/17/02 | 0.2 | Administrative-Q3 | 470 | 94.00 |
| Karen Huebner | 10/18/02 | 1.0 | Administrative assistance | 120 | 120.00 |
| Kate Burke | 10/8/02 | 0.5 | Administrative assistance | 121 | 61.00 |
| Kate Burke | 10/22/02 | 3.3 | Administrative assistance | 121 | 399.00 |
| Kate Burke | 11/5/02 | 1.0 | Administrative Assistance | 112 | 112.00 |
| Kate Burke | 11/6/02 | 1.0 | Administrative Assistance | 112 | 112.00 |
| Kate Burke | 11/12/02 | 1.0 | Administrative Assistance | 112 | 112.00 |
| Kate Burke | 11/22/02 | 0.2 | Administrative Assistance | 112 | 22.00 |
| Kate Burke | 11/26/02 | 0.5 | Administrative Assistance | 112 | 56.00 |
| Larry Farmer | 10/11/02 | 1.0 | Administrative work | 682 | 682.00 |
| Laurie Ortiz | 11/4/02 | 3.0 | Administrative Assistance | 112 | 336.00 |
| Renee Anderson | 11/22/02 | 0.3 | Administrative Assistance | 235 | 71.00 |

Exhibit B

273.1 hours and $106,579.  Duplicate effort:3rd Q Review by 15 professionals.
(Too many timekeepers to list).

| Andy MacWilliams | 10/16/02 | 2.0 | Partner review and quarterly review work on Performance Chemicals and Darex Puerto Rico | 682 | 1,364.00 |
|---|---|---|---|---|---|
| Andy MacWilliams | 10/20/02 | 2.0 | Partner review and quarterly review work on Performance Chemicals and Darex Puerto Rico | 682 | 1,364.00 |
| Cheryl Frick | 10/14/02 | 8.5 | Grace 3rd Quarter work | 314 | 2,669.00 |
| Cheryl Frick | 10/15/02 | 8.5 | Grace 3rd Quarter work | 314 | 2,669.00 |
| Cheryl Frick | 10/16/02 | 5.5 | Grace 3rd Quarter work | 314 | 1,727.00 |
| Cheryl Frick | 10/18/02 | 2.5 | Grace 3rd Quarter work | 314 | 785.00 |
| Cheryl Frick | 10/21/02 | 9.0 | Grace 3rd Quarter work | 314 | 2,826.00 |
| Cheryl Frick | 10/22/02 | 9.0 | Grace 3rd Quarter work | 314 | 2,826.00 |
| Cheryl Frick | 10/23/02 | 9.0 | Grace 3rd Quarter work | 314 | 2,826.00 |
| Cheryl Frick | 11/04/02 | 3.0 | Quarterly Review | 314 | 942.00 |
| Cheryl Frick | 11/07/02 | 5.0 | Quarterly Review | 314 | 1,570.00 |
| Cheryl Frick | 11/11/02 | 3.0 | Quarterly Review | 314 | 942.00 |
| Cheryl Frick | 11/12/02 | 3.5 | Quarterly Review | 314 | 1,099.00 |
| David Ryan | 10/16/02 | 1.0 | Quarterly review | 522 | 522.00 |
| David Ryan | 10/18/02 | 1.0 | Quarterly review | 522 | 522.00 |
| David Ryan | 10/21/02 | 7.0 | Quarterly review | 522 | 3,654.00 |
| David Ryan | 10/23/02 | 4.0 | Quarterly review | 522 | 2,088.00 |
| David Ryan | 10/24/02 | 2.0 | Quarterly review | 522 | 1,044.00 |
| David Ryan | 11/06/02 | 8.0 | Quarterly Review | 522 | 4,176.00 |
| David Ryan | 11/12/02 | 2.0 | Quarterly Review | 522 | 1,044.00 |
| Derek Nance | 11/06/02 | 11.0 | Quarterly Review-Performance Chemicals | 185 | 2,035.00 |
| Elizabeth Noone | 10/31/02 | 3.0 | 3rd quarter 10Q tie out | 185 | 555.00 |
| Fran Schlosser | 10/12/02 | 0.5 | Review of financial statements-Darex Puerto Rico | 470 | 235.00 |
| Fran Schlosser | 10/14/02 | 2.0 | Review of financial statements-Darex Puerto Rico | 470 | 940.00 |
| Fran Schlosser | 10/14/02 | 3.0 | Consolidation work - Darex Puerto Rico | 470 | 1,410.00 |
| Fran Schlosser | 10/16/02 | 1.0 | Consolidation work - Darex Puerto Rico | 470 | 470.00 |
| Fran Schlosser | 10/17/02 | 0.2 | Consolidation work - Darex Puerto Rico | 470 | 94.00 |
| Fran Schlosser | 10/18/02 | 5.5 | Q3 Earnings meeting | 470 | 2,585.00 |
| Fran Schlosser | 10/18/02 | 1.0 | Consolidation work - Darex Puerto Rico | 470 | 470.00 |
| Fran Schlosser | 10/21/02 | 2.0 | Q3 fluctuation analysis and review of audit work performed. | 470 | 940.00 |
| Fran Schlosser | 10/24/02 | 1.0 | Q3 fluctuation analysis and review of audit work performed. | 470 | 470.00 |
| Fran Schlosser | 10/24/02 | 0.5 | Review of financial statements-Darex Puerto Rico | 470 | 235.00 |
| Fran Schlosser | 10/25/02 | 2.3 | Review of financial statements-Darex Puerto Rico | 470 | 1,081.00 |
| Fran Schlosser | 10/25/02 | 0.9 | Consolidation work - Darex Puerto Rico | 470 | 423.00 |
| Fran Schlosser | 10/27/02 | 1.2 | Review of financial statements-Darex Puerto Rico | 470 | 564.00 |
| Fran Schlosser | 10/29/02 | 1.0 | Review of financial statements-Darex | 470 | 470.00 |

| | | | | | |
|---|---|---|---|---|---|
| | | | Puerto Rico | | |
| Fran Schlosser | 11/6/02 | 1.0 | Review of WR Grace's Financial Statements-Darex Puerto Rico | 470 | 470.00 |
| Fran Schlosser | 11/09/02 | 0.3 | Preparation of the Flux Analysis and Review of the Results-Darex Puerto Rico | 470 | 141.00 |
| Fran Schlosser | 11/11/02 | 0.2 | Preparation of the Flux Analysis and Review of the Results-Darex Puerto Rico | 470 | 94.00 |
| Jason Natt | 10/14/02 | 8.0 | Q3 2002 review work and discussions with Nina Govic and Cheryl Frick | 447 | 3,576.00 |
| Jason Natt | 10/15/02 | 4.5 | Q3 2002 review work and discussions with Nina Govic and Cheryl Frick | 447 | 2,011.50 |
| Jason Natt | 10/16/02 | 8.5 | review of Q3 2002 quarter work | 447 | 3,799.50 |
| Jason Natt | 10/18/02 | 4.0 | Q3 2002 review work and discussions with Nina Govic and Cheryl Frick | 447 | 1,788.00 |
| Jason Natt | 10/21/02 | 5.0 | Q3 2002 review  work and discussions with Cheryl Frick | 447 | 2,235.00 |
| Jason Natt | 10/22/02 | 4.5 | Review of Q3 2002 press release | 447 | 2,011.50 |
| Jason Natt | 10/23/02 | 3.5 | Review and documentation of Q3 2002 work and audit committee call | 447 | 1,564.50 |
| Jason Natt | 10/30/02 | 5.5 | Review of Grace Q3 2002 10-Q | 447 | 2,458.50 |
| Jason Natt | 10/31/02 | 5.0 | Review of Grace Q3 2002 10-Q | 447 | 2,235.00 |
| Jason Natt | 11/11/02 | 8.0 | 10-Q review | 447 | 3,576.00 |
| Jason Natt | 11/12/02 | 8.0 | 10-Q review | 447 | 3,576.00 |
| Jonelle Lippolis | 10/18/02 | 8.5 | Quarterly review provedures for third quarter performance chemical review | 320 | 2,720.00 |
| Larry Farmer | 10/21/02 | 2.0 | Review Q3 wprl; meet engagement team re:third quarter | 682 | 1,364.00 |
| Larry Farmer | 11/01/02 | 2.0 | Review 3rd Quarter 10Q | 682 | 1,364.00 |
| Larry Farmer | 11/04/02 | 1.0 | Review 3rd Quarter 10Q; Prepare for 11/6 Audit Committee Meeting | 682 | 682.00 |
| Michelle Gerety | 10/21/02 | 0.5 | Review of Q3 tax provision | 553 | 276.50 |
| Nina Govic | 10/14/02 | 6.0 | Q3 review of prior quarter to prepare for the upcoming quarterly reivew and to get acquaiated with the database and the standard procedures performed. | 273 | 1,638.00 |
| Nina Govic | 10/15/02 | 8.5 | Q3 Test of details and review | 273 | 2,320.50 |
| Nina Govic | 10/18/02 | 8.0 | Q3 Test of details and review | 273 | 2,184.00 |
| Nina Govic | 10/22/02 | 8.0 | Q3 Test of details and review | 273 | 2,184.00 |
| Nina Govic | 10/23/02 | 8.5 | Q3 Test of details and review | 273 | 2,320.50 |
| Nina Govic | 10/24/02 | 8.0 | Q3 Test of details and review | 273 | 2,184.00 |
| Nina Govic | 10/25/02 | 2.0 | Q3 Test of details and review | 273 | 546.00 |
| Nina Govic | 10/25/02 | 6.0 | Tie out of quarterly financial information for press release | 273 | 1,638.00 |
| Pam Schlosser | 10/16/02 | 0.5 | National office consultation regarding Grace's third quarter 10-Q with Dave Ryan | 990 | 495.00 |
| Peter Woolf | 11/1/02 | 3.0 | Review of the 3Q 2002 tax provision | 733 | 2,199.00 |
| Ray Bromark | 10/22/02 | 1.0 | Concurring partner review and sign off of 3rd quarter audit work | 1422 | 1,422.00 |
| Ray Bromark | 11/15/2002 | 1.0 | Review 3rd Quarter 10Q | 1422 | 1,422.00 |
| Sandra David | 10/18/02 | 1.0 | Quarterly review | 447 | 447.00 |

1.0 hour and $926.    Pension related matters. (Jay Seliber,$1,113; Steve Heindel,$737).

| Jay Seliber | 10/22/02 | 0.5 | Meeting to discuss disclosures of pension-related matters with Jason Natt.  Jay is a partner in the National office Accounting Consulting Services group. | 1113 | 557.00 |
| Steve Heindel | 10/15/02 | 0.5 | Meeting with Jason Natt to discuss pension and OPEB matters regarding Grace. | 737 | 369.00 |

10.0 hours and $4,539.50.  Planning team audits.  (Fran Schlosser,$470; Sandra David, $447).

| Fran Schlosser | 10/3/02 | 3.0 | Mobilization and coordination of Grace internal audit team | 470 | 1,410.00 |
| Sandra David | 11/25/02 | 1.5 | Mobilization of the Team for the Audit | 447 | 671.00 |
| Sandra David | 10/9/02 | 0.5 | Team mobilization and planning | 447 | 223.50 |
| Sandra David | 10/10/02 | 5.0 | Team mobilization and planning | 447 | 2,235.00 |

27.0 hours and $9,465.    Systems work.    (Joseph Divito, $767;Maureen Driscoll,$389; Douglas Hut,$208)

| Joseph Divito | 11/06/02 | 1.0 | GRMS General and Administrative | 767 | 767.00 |
| Joseph Divito | 11/12/02 | 1.0 | GRMS General and Administrative | 767 | 767.00 |
| Joseph Divito | 11/25/02 | 1.0 | GRMS General and Administrative | 767 | 767.00 |
| Maureen Discoll | 11/11/02 | 6.0 | GRMS General and Administrative | 389 | 2,334.00 |
| Maureen Discoll | 11/18/02 | 2.0 | GRMS General and Administrative | 389 | 778.00 |
| Maureen Discoll | 11/19/02 | 2.0 | GRMS General and Administrative | 389 | 778.00 |
| Maureen Discoll | 11/21/02 | 2.0 | GRMS General and Administrative | 389 | 778.00 |
| Douglas Hut | 11/11/02 | 4.0 | GRMS General and Administrative | 208 | 832.00 |
| Douglas Hut | 11/13/02 | 2.0 | GRMS General and Administrative | 208 | 416.00 |
| Douglas Hut | 11/15/02 | 6.0 | GRMS General and Administrative | 208 | 1,248.00 |

28.5 hours and $13,951.50.    Documentation of site visits.    (Tom Kalinosky,$639;Alexandre Rossin,$426).

| Tom Kalinosky | 11/14/02 | 8.0 | Documentation of Memphis and Libby Visits | 639 | 5,112.00 |
| Tom Kalinosky | 11/27/02 | 0.5 | Documentation of Memphis and Libby Visits | 639 | 319.50 |
| Alexandre Rossin | 11/15/02 | 2.0 | Documentation of Memphis and Libby Visits | 426 | 852.00 |
| Alexandre Rossin | 11/26/02 | 8.0 | Documentation of Memphis and Libby Visits | 426 | 3,408.00 |
| Alexandre Rossin | 11/27/02 | 8.0 | Documentation of Memphis and Libby Visits | 426 | 3,408.00 |
| Alexandre Rossin | 11/28/02 | 2.0 | Documentation of Memphis and Libby Visits | 426 | 852.00 |

Exhibit C

| 12/03/02 | Driscoll, M. | 0.5 | Grace admin - set up timesheet for GRMS tracking | 389 | 194.50 |
|---|---|---|---|---|---|
| 12/04/02 | Driscoll, M. | 0.3 | Grace admin - timesheet for associate | 389 | 97.25 |
| 12/09/02 | Driscoll, M. | 0.5 | Grace admin - timesheet | 389 | 194.50 |
| 12/30/02 | Weir, D. | 1.0 | Introduced performance appraisal | 261 | 261.00 |
| 12/11/02 | Schlosser, F. | 1.0 | Time reports for October/November | 470 | 470.00 |
| 12/04/02 | Frick C. | 1.0 | Davison Chemicals Administration (Organizing Files, etc.) | 314 | 314.00 |
| 12/06/02 | Govic, N. | 0.5 | Grace Administration (Organizing Files, etc.) | 273 | 136.50 |
| 12/09/02 | Govic, N. | 1.0 | Time and Expense Tracking | 273 | 273.00 |
| 12/02/02 | Govic, N. | 1.0 | Grace Administration (Organizing Files, Set up the Database, etc.) | 273 | 273.00 |
| 12/03/02 | Govic, N. | 0.5 | Grace Administration (Organizing Files, etc.) | 273 | 136.50 |
| 12/12/02 | Govic, N. | 0.5 | Grace Administration (Organizing Files, etc.) | 273 | 136.50 |
| 12/20/02 | Govic, N. | 0.3 | General and Administrative Database Clean-up Work | 273 | 68.25 |
| 12/04/02 | Stickley, A. | 0.3 | Clean-up the Database | 213 | 63.90 |
| 12/09/02 | Stickley, A. | 0.5 | Clean-up the Davison Chemicals Database | 213 | 106.50 |
| 12/10/02 | Stickley, A. | 1.0 | Coordinating Dinner for the Team | 213 | 213.00 |
| 12/06/02 | Zartman, J. | 1.3 | Grace Administration (Organizing Files, etc.) | 213 | 266.25 |
| 12/09/02 | Zartman, J. | 1.3 | Grace Administrative (Organizing Files, etc.) | 213 | 283.93 |
| 12/03/02 | Yeager, M. | 2.0 | Grace Administrative (Organizing files, Preparation of timesheets for Bankruptcy Reporting, etc.) | 185 | 370.00 |
| 12/10/02 | Yeager, M. | 1.0 | Coordinating the Team Dinner | 185 | 185.00 |

Exhibit D

| | | | | | |
|---|---|---|---|---|---|
| 12/18/02 | Govic, N. | 1.0 | Coaching Maureen Yeager on the Bankruptcy Court Reporting - Expense and Time Tracking | 273 | 273.00 |
| 12/20/02 | Govic, N. | 0.8 | Coaching Maureen Yeager | 273 | 204.75 |
| 12/02/02 | Stickley, A | 1.0 | Coaching Maureen Yeager on the Audit Procedures | 213 | 213.00 |
| 12/04/02 | Stickley, A | 1.2 | Coaching Maureen Yeager on the Audit Procedures | 213 | 255.60 |
| 12/05/02 | Stickley, A | 0.5 | Coaching Maureen Yeager on the Audit Procedures | 213 | 106.50 |
| 12/09/02 | Stickley, A | 0.3 | Coaching Maureen Yeager on the Audit Procedures | 213 | 63.90 |
| 12/13/02 | Stickley, A | 0.6 | Coaching Maureen Yeager on the Audit Procedures | 213 | 127.80 |
| 12/02/02 | Yeager, M. | 1.0 | Coaching from Aimee Stickley on the Audit Procedures to be Performed During Interim Testing | 185 | 185.00 |
| 12/04/02 | Yeager, M. | 1.2 | Coaching from Aimee Stickley on the Audit Procedures to be Performed | 185 | 222.00 |
| 12/05/02 | Yeager, M. | 0.5 | Coaching from Aimee Stickley on the Tasks to be Performed for the Day | 185 | 92.50 |
| 12/09/02 | Yeager, M. | 0.3 | Coaching from Aimee Stickley on the Audit Procedures to be Performed | 185 | 55.50 |
| 12/17/02 | Yeager, M. | 1.0 | Coaching from Nina Govic on the Bankruptcy Court Reporting - Expense and Time Tracking | 185 | 185.00 |
| 12/18/02 | Yeager, M. | 1.0 | Coaching from Nina Govic on the Bankruptcy Court Reporting - Expense and Time Tracking | 185 | 185.00 |
| 12/19/02 | Yeager, M. | 0.5 | Coaching from Aimee Stickley on the Preparation of the AR Aging | 185 | 92.50 |
| 12/05/02 | Frick C. | 0.5 | Davison Chemicals Coaching | 314 | 157.00 |

Response Exhibit 1

Work performed in connection the the statutory audit of Darex Puerto Rico

| | | | | | |
|---|---|---|---|---|---|
| Andy MacWilliams | 10/16/02 | 2.0 | Partner review and quarterly review work on Performance Chemicals and Darex Puerto Rico | 682 | 1,364.00 |
| Andy MacWilliams | 10/20/02 | 2.0 | Partner review and quarterly review work on Performance Chemicals and Darex Puerto Rico | 682 | 1,364.00 |
| Fran Schlosser | 10/12/02 | 0.5 | Review of financial statements-Darex Puerto Rico | 470 | 235.00 |
| Fran Schlosser | 10/14/02 | 2.0 | Review of financial statements-Darex Puerto Rico | 470 | 940.00 |
| Fran Schlosser | 10/14/02 | 3.0 | Consolidation work - Darex Puerto Rico | 470 | 1,410.00 |
| Fran Schlosser | 10/16/02 | 1.0 | Consolidation work - Darex Puerto Rico | 470 | 470.00 |
| Fran Schlosser | 10/17/02 | 0.2 | Consolidation work - Darex Puerto Rico | 470 | 94.00 |
| Fran Schlosser | 10/18/02 | 1.0 | Consolidation work - Darex Puerto Rico | 470 | 470.00 |
| Fran Schlosser | 10/24/02 | 0.5 | Review of financial statements-Darex Puerto Rico | 470 | 235.00 |
| Fran Schlosser | 10/25/02 | 2.3 | Review of financial statements-Darex Puerto Rico | 470 | 1,081.00 |
| Fran Schlosser | 10/25/02 | 0.9 | Consolidation work - Darex Puerto Rico | 470 | 423.00 |
| Fran Schlosser | 10/27/02 | 1.2 | Review of financial statements-Darex Puerto Rico | 470 | 564.00 |
| Fran Schlosser | 10/29/02 | 1.0 | Review of financial statements-Darex Puerto Rico | 470 | 470.00 |
| Fran Schlosser | 11/6/02 | 1.0 | Review of WR Grace's Financial Statements-Darex Puerto Rico | 470 | 470.00 |
| Fran Schlosser | 11/09/02 | 0.3 | Preparation of the Flux Analysis and Review of the Results-Darex Puerto Rico | 470 | 141.00 |
| Fran Schlosser | 11/11/02 | 0.2 | Preparation of the Flux Analysis and Review of the Results-Darex Puerto Rico | 470 | 94.00 |
| | | 19.1 | | | 9825.0 |

Work performed in connection with the 3Q review.

| | | | | | |
|---|---|---|---|---|---|
| Cheryl Frick | 10/14/02 | 8.5 | Grace 3rd Quarter work | 314 | 2,669.00 |
| Cheryl Frick | 10/15/02 | 8.5 | Grace 3rd Quarter work | 314 | 2,669.00 |
| Cheryl Frick | 10/16/02 | 5.5 | Grace 3rd Quarter work | 314 | 1,727.00 |
| Cheryl Frick | 10/18/02 | 2.5 | Grace 3rd Quarter work | 314 | 785.00 |
| Cheryl Frick | 10/21/02 | 9.0 | Grace 3rd Quarter work | 314 | 2,826.00 |
| Cheryl Frick | 10/22/02 | 9.0 | Grace 3rd Quarter work | 314 | 2,826.00 |
| Cheryl Frick | 10/23/02 | 9.0 | Grace 3rd Quarter work | 314 | 2,826.00 |
| Cheryl Frick | 11/04/02 | 3.0 | Quarterly Review | 314 | 942.00 |
| Cheryl Frick | 11/07/02 | 5.0 | Quarterly Review | 314 | 1,570.00 |
| Cheryl Frick | 11/11/02 | 3.0 | Quarterly Review | 314 | 942.00 |
| Cheryl Frick | 11/12/02 | 3.5 | Quarterly Review | 314 | 1,099.00 |
| David Ryan | 10/16/02 | 1.0 | Quarterly Review | 522 | 522.00 |
| David Ryan | 10/18/02 | 1.0 | Quarterly review | 522 | 522.00 |
| David Ryan | 10/21/02 | 7.0 | Quarterly review | 522 | 3,654.00 |
| David Ryan | 10/23/02 | 4.0 | Quarterly review | 522 | 2,088.00 |
| David Ryan | 10/24/02 | 2.0 | Quarterly review | 522 | 1,044.00 |
| David Ryan | 11/06/02 | 8.0 | Quarterly Review | 522 | 4,176.00 |
| David Ryan | 11/12/02 | 2.0 | Quarterly Review | 522 | 1,044.00 |
| Elizabeth Noone | 10/31/02 | 3.0 | 3rd quarter 10Q tie out | 185 | 555.00 |
| Fran Schlosser | 10/18/02 | 5.5 | Q3 Earnings meeting | 470 | 2,585.00 |
| Derek Nance | 11/06/02 | 11.0 | Quarterly Review-Performance Chemicals | 185 | 2,035.00 |
| Fran Schlosser | 10/21/02 | 2.0 | Q3 fluctuation analysis and review of audit work performed. | 470 | 940.00 |
| Fran Schlosser | 10/24/02 | 1.0 | Q3 fluctuation analysis and review of audit work performed. | 470 | 470.00 |
| Jason Natt | 10/14/02 | 8.0 | Q3 2002 review work and discussions with Nina Govic and Cheryl Frick | 447 | 3,576.00 |
| Jason Natt | 10/15/02 | 4.5 | Q3 2002 review work and discussions with Nina Govic and Cheryl Frick | 447 | 2,011.50 |
| Jason Natt | 10/16/02 | 8.5 | review of Q3 2002 quarter work | 447 | 3,799.50 |
| Jason Natt | 10/18/02 | 4.0 | Q3 2002 review work and discussions with Nina Govic and Cheryl Frick | 447 | 1,788.00 |
| Jason Natt | 10/21/02 | 5.0 | Q3 2002 review  work and discussions with Cheryl Frick | 447 | 2,235.00 |
| Jason Natt | 10/22/02 | 4.5 | Review of Q3 2002 press release | 447 | 2,011.50 |
| Jason Natt | 10/23/02 | 3.5 | Review and documentation of Q3 2002 work and audit committee call | 447 | 1,564.50 |
| Jason Natt | 10/30/02 | 5.5 | Review of Grace Q3 2002 10-Q | 447 | 2,458.50 |

| | | | | | |
|---|---|---|---|---|---|
| Jason Natt | 10/31/02 | 5.0 | Review of Grace Q3 2002 10-Q | 447 | 2,235.00 |
| Jason Natt | 11/11/02 | 8.0 | 10-Q review | 447 | 3,576.00 |
| Jason Natt | 11/12/02 | 8.0 | 10-Q review | 447 | 3,576.00 |
| Jonelle Lippolis | 10/18/02 | 8.5 | Quarterly review provedures for third quarter performance chemical review | 320 | 2,720.00 |
| Larry Farmer | 10/21/02 | 2.0 | Review Q3 wprl; meet engagement team re:third quarter | 682 | 1,364.00 |
| Larry Farmer | 11/01/02 | 2.0 | Review 3rd Quarter 10Q | 682 | 1,364.00 |
| Larry Farmer | 11/04/02 | 1.0 | Review 3rd Quarter 10Q; Prepare for 11/6 Audit Committee Meeting | 682 | 682.00 |
| Michelle Gerety | 10/21/02 | 0.5 | Review of Q3 tax provision | 553 | 276.50 |
| Nina Govic | 10/14/02 | 6.0 | Q3 review of prior quarter to prepare for the upcoming quarterly reivew and to get acquaiated with the database and the standard procedures performed. | 273 | 1,638.00 |
| Nina Govic | 10/15/02 | 8.5 | Q3 Test of details and review | 273 | 2,320.50 |
| Nina Govic | 10/18/02 | 8.0 | Q3 Test of details and review | 273 | 2,184.00 |
| Nina Govic | 10/22/02 | 8.0 | Q3 Test of details and review | 273 | 2,184.00 |
| Nina Govic | 10/23/02 | 8.5 | Q3 Test of details and review | 273 | 2,320.50 |
| Nina Govic | 10/24/02 | 8.0 | Q3 Test of details and review | 273 | 2,184.00 |
| Nina Govic | 10/25/02 | 2.0 | Q3 Test of details and review | 273 | 546.00 |
| Nina Govic | 10/25/02 | 6.0 | Tie out of quarterly financial information for press release | 273 | 1,638.00 |
| Pam Schlosser | 10/16/02 | 0.5 | National office consultation regarding Grace's third quarter 10-Q with Dave Ryan | 990 | 495.00 |
| Peter Woolf | 11/1/02 | 3.0 | Review of the 3Q 2002 tax provision | 733 | 2,199.00 |
| Ray Bromark | 10/22/02 | 1.0 | Concurring partner review and sign off of 3rd quarter audit work | 1 4 2 2 | 1,422.00 |
| Ray Bromark | 11/15/20 02 | 1.0 | Review 3rd Quarter 10Q | 1 4 2 2 | 1,422.00 |
| Sandra David | 10/18/02 | 1.0 | Quarterly review | 447 | 447.00 |
| | | 254 .0 | | | $ 96,754.0 |

1.0 hour and $926.  Pension related matters. (Jay Seliber,$1,113; Steve Heindel,$737).

| | | | | | |
|---|---|---|---|---|---|
| Jay Seliber | 10/22/02 | 0.5 | Meeting to discuss disclosures of pension-related matters with Jason Natt.  Jay is a partner in the National office Accounting Consulting Services group. | 1 1 1 3 | 557.00 |
| Steve Heindel | 10/15/02 | 0.5 | Meeting with Jason Natt to discuss pension and OPEB matters regarding Grace. | 737 | 369.00 |

10.0 hours and $4,539.50.  Planning team audits.  (Fran Schlosser,$470; Sandra David,$447).

| | | | | | |
|---|---|---|---|---|---|
| Fran Schlosser | 10/3/02 | 3.0 | Mobilization and coordination of Grace internal audit team | 470 | 1,410.00 |
| Sandra David | 11/25/02 | 1.5 | Mobilization of the Team for the Audit | 447 | 671.00 |
| Sandra David | 10/9/02 | 0.5 | Team mobilization and planning | 447 | 223.50 |
| Sandra David | 10/10/02 | 5.0 | Team mobilization and planning | 447 | 2,235.00 |

27.0 hours and $9,465.  Systems work.  (Joseph Divito, $767;Maureen Driscoll,$389; Douglas Hut,$208)

| | | | | | |
|---|---|---|---|---|---|
| Joseph Divito | 11/06/02 | 1.0 | GRMS General and Administrative | 767 | 767.00 |
| Joseph Divito | 11/12/02 | 1.0 | GRMS General and Administrative | 767 | 767.00 |
| Joseph Divito | 11/25/02 | 1.0 | GRMS General and Administrative | 767 | 767.00 |
| Maureen Discoll | 11/11/02 | 6.0 | GRMS General and Administrative | 389 | 2,334.00 |
| Maureen Discoll | 11/18/02 | 2.0 | GRMS General and Administrative | 389 | 778.00 |
| Maureen Discoll | 11/19/02 | 2.0 | GRMS General and Administrative | 389 | 778.00 |
| Maureen Discoll | 11/21/02 | 2.0 | GRMS General and Administrative | 389 | 778.00 |
| Douglas Hut | 11/11/02 | 4.0 | GRMS General and Administrative | 208 | 832.00 |
| Douglas Hut | 11/13/02 | 2.0 | GRMS General and Administrative | 208 | 416.00 |
| Douglas Hut | 11/15/02 | 6.0 | GRMS General and Administrative | 208 | 1,248.00 |

28.5 hours and $13,951.50.  Documentation of site visits.  (Tom Kalinosky,$639;Alexandre Rossin,$426).

| | | | | | |
|---|---|---|---|---|---|
| Tom Kalinosky | 11/14/02 | 8.0 | Documentation of Memphis and Libby Visits | 639 | 5,112.00 |
| Tom Kalinosky | 11/27/02 | 0.5 | Documentation of Memphis and Libby Visits | 639 | 319.50 |
| Alexandre Rossin | 11/15/02 | 2.0 | Documentation of Memphis and Libby Visits | 426 | 852.00 |
| Alexandre Rossin | 11/26/02 | 8.0 | Documentation of Memphis and Libby Visits | 426 | 3,408.00 |
| Alexandre Rossin | 11/27/02 | 8.0 | Documentation of Memphis and Libby Visits | 426 | 3,408.00 |
| Alexandre Rossin | 11/28/02 | 2.0 | Documentation of Memphis and Libby Visits | 426 | 852.00 |

Response Exhibit 2

All five of the flights listed above were flown in coach class.  The following is an extended description of the purpose of each trip and the relevance to the audit. Copies of bills can be supplied regarding this matter if needed.

Cheryl Frick – 11/12/02 Flight to Libby, Montana from Baltimore, MD.  Libby is the former site of a W.R. Grace vermiculite mine.  The mine is naturally contaminated with asbestos-related substances.  W.R. Grace has and will continue to incur a large liability relating to clean-up costs associated with the Libby mine.  Ms. Frick visited Libby with an environmental specialist to assess the Libby site in connection with our 2002 environmental review.

Daniel Weir – 11/18/02 flight to Boston.  Mr. Weir travelled to Cambridge, MA to perform a preliminary assessment on computer controls at the W.R. Grace Performance Chemicals division located there.  Daniel Weir was present in Boston to assist Maureen Driscoll in testing.  The flight was a roundtrip flight from Philadelphia (Mr. Weir's home) to Boston.

Joseph DiVito -- 11/8/02 flight to Baltimore. Mr. DiVito flew from his home in Pittsburgh to W.R. Grace's corporate headquarters in Columbia, MD.  Mr. DiVito is the partner in charge of computer related testing.  The reason for his travels related to the assessment of his team's preliminary control findings and a briefing meeting with, Mr. Farmer, the audit team partner about the control environment at W.R. Grace.

Maureen Driscoll – 11/22/02 flight to Boston.  Ms. Driscoll traveled to Cambridge, MA to perform a preliminary assessment on computer controls at the Grace Performance Chemicals division located there.  The flight was a roundtrip fare from Ms. Driscoll's home in Philadelphia to Boston, MA.

Craig Cleaver – 11/19/02 flight to Boston. Mr. Cleaver traveled to Cambridge, MA to perform a preliminary assessment on computer controls at the W.R. Grace Performance Chemicals division located there.  Mr. Cleaver was in Boston to review Maureen Driscoll's work. The flight was a roundtrip fare from Mr. Cleaver's home in Philadelphia to Boston, MA.

# SERVICE LIST

Notice Parties

**Counsel for the Applicant**

John C. Goodchild, III
Christine M. Lipski
Morgan Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103

Kathleen M. Miller
Smith, Katzenstein & Furlow, LLP
The Corporate Plaza
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones,
P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of
Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of
Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price &
Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of
Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801