# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| **Debtors.** | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## FEE APPLICATION OF HOLME ROBERTS & OWEN, LLP
## <u>FOR THE SEVENTH INTERIM PERIOD</u>

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Interim Fee Application of Holme Roberts & Owen, LLP for the Seventh Interim Period</u>.

## BACKGROUND

1.      Holme Roberts & Owen, LLP ("HRO") was retained as special environmental counsel to the Debtors. In the Application, HRO seeks approval of fees totaling $2,002,888.50 and costs totaling $155,222.40 for its services from October 1, 2002, through December 31, 2002.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for

consistency with precedent established in the United States Bankruptcy Court for the District of Delaware,

the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We

served on HRO an initial report based on our review and received a response from HRO, portions of

which response are quoted herein.

## DISCUSSION

### General Issues

3.      In our initial report, we noted that there were no detail or lumping issues in the Application.


### Specific Time and Expense Entries

4.      In our initial report, we noted that on October 3, 2002, EES has a time entry listed as 9.50

hours for $2,660.00.  The parentheticals only total 9.40 hours for $2,632.00.  The difference is $28.00.

| 10/03/02 | EES | 9.50 | 2,660.00 | Expand draft outline re arguments opposing exclusion of Dale Jensen's testimony (2.60); conference calls with accounting experts re Shapiro's rebuttal reports and production issues (1.20); begin review of Cotton & Company's workpapers re its evaluation of ATSDR's indirect cost accounting system (3.7); review key EPA employee travel cost and billing information (1.90). |

We asked HRO to review the entry and to explain this miscalculation.  HRO responded as follows.

> HRO concedes that the time entry identified in Paragraph 4 of the Report contains an
> addition error.  Accordingly, HRO agrees to a reduction of HRO's requested award for
> fees by $28.00.

We appreciate the response and recommend a reduction of $28.00 in fees.

5.      We also noted that between October 8 and 14, 2002, MCL and LCS spent a total of

32.70 hours for $2,907.50 recoding documents inadvertently scanned by Lason. The entries are provided

below.

| 10/08/02 | LCS | 5.50 | 467.50 | Review and recode documents in Historical database that were inadvertently scanned by Lason. |
|---|---|---|---|---|
| 10/09/02 | LCS | 2.50 | 212.50 | Review and recode documents in Historical database that were inadvertently scanned by Lason. |
| 10/10/02 | LCS | 7.50 | 637.50 | Review and recode documents in Historical database that were inadvertently scanned by Lason. |
| 10/11/02 | LCS | 8.00 | 680.00 | Review and recode documents in Historical database that were inadvertently scanned by Lason. |
| 10/14/02 | MCL | 3.50 | 437.50 | Review and recode documents in Historical database that were inadvertently scanned by Lason (3.20);....... |
| 10/14/02 | LCS | 6.00 | 510.00 | Review and recode documents in Historical database that were inadvertently scanned by Lason. |

Paragraph, I.E. of the Guidelines states, ". . . [i]n evaluating fees for professional services, it is relevant to

consider . . .whether services were performed within a reasonable time commensurate with the complexity,

importance, and nature of the problem, issue, or task addressed;. . ." We asked HRO to review the entries

and explain why these tasks could not have been accomplished by a lower-billing professional. HRO's

explanation is attached as Response Exhibit 1. We appreciate HRO's response and are mindful of the

circumstances addressed in the response. However, it appears that this work was primarily the coding of

documents, which we believe is more appropriately performed by a data entry person at $40.00 per hour,

rather than by two paraprofessionals at $125.00 and $85.00 an hour. On the issue of adjusting rates

downward for routine tasks, the Third Circuit seems fond, in the bankruptcy context, of quoting its opinion

in *Ursic_v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) that, " A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn". We also cite *In re Interstate Sav., Inc.*, 1998 WL 295654 (Bankr..E.D.Pa.,1998) ("[w]e review fee applications paying particular attention to the level of professional (senior partner, junior partner, associate, paraprofessional), billing time viz a viz the complexity of the task being performed. The nature, extent and complexity of the task at hand determines the level of professional or paraprofessional who should perform the task, and, consequently, the reasonableness of the fees charged for the services"). Based on the $40.00-per-hour suggestion, we recommend a reduction of $1,599.50 in fees.

6.      In our initial report, we noted that on November 13, 2002, LB, JDM and KJC attended a meeting. The total time spent including preparation was 16.10 hours for $5,275.00. The entries are provided below.

| 11/13/02 | LB | 12.60 | 5,040.00 | Attend portion of meeting with Lev Ropes and KJCoggon re trial graphics (3.60); attend portion of meeting with Lev Ropes, KJCoggon, and JDMcCarthy re summary exhibits and trial graphics (2.60);....... |
| 11/13/02 | JDM | 10.90 | 3,270.00 | ........; meet with trial exhibit consultant, LBrown. KJCoggon re demonstration exhibits (2.9);....... |
| 11/13/02 | KJC | 12.40 | 3,410.00 | ........; conference with LBrown and Lev Ropes re demonstrative exhibits and other trial graphics (3.90);........; conferences with LBrown, JDMcCarthy and Lev Ropes re exhibits (3.10);...... |

Paragraph II.D.5.of the Guidelines states, ". . .[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." We asked HRO to explain why it was necessary for more than one professional to attend this meeting. The response

is provided as Response Exhibit 2.  We accept HRO's explanation and have no objection to these fees.

7.    We further noted that on November 18, 2002, six (6) professionals attended a meeting with Department of Justice attorneys.  The total time spent including preparation was 21.20 hours for $5,692.00.  The entries are provided below.

| 11/18/02 | LB | 8.70 | 3,480.00 | .......; pretrial conference with United States and Grace trial teams (3.00);...... |
| 11/18/02 | KWL | 7.60 | 2,660.00 | Prepare for meeting with Department of Justice re exhibit exchange and pre trial preparation, including meeting with internal Grace team (1.80); meeting with Department of Justice re same (3.0);........ |
| 11/18/02 | JDM | 9.70 | 2,910.00 | ........; prepare for pretrial conference with the government (1.2); pretrial conference with government (3.0);........ |
| 11/18/02 | KJC | 12.70 | 3,492.50 | ........; pretrial conference with DOJ (3.00);....... |
| 11/18/02 | NKA | 10.10 | 1,111.00 | ........; attend conference re pretrial order with DOJ/EPA attorneys (3.20);......... |
| 11/18/02 | JLS | 7.40 | 925.00 | ........; attend meeting with LBrown, KWLund, KJCoggon, JDMcCarthy, NKAberle and Department of Justice re pre-trial order (3.00);....... |

Paragraph II.D.5.of the Guidelines states, ". . .[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  Further, Rule 2016-2(d)(ix) states, "The activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role."  We asked HRO to explain each professional's role in this meeting and why it was necessary for more than one to attend.  HRO's response is provided below.

On November 18, 2002, six HRO professionals attended a meeting with six professionals representing the plaintiff. Their specific roles and function in the cost-recovery case and trial are set forth above. (See Response Exhibit 2). The case management order in the cost-recovery case required the meeting and required the parties to attempt to resolve outstanding scheduling or procedural issues, jointly draft a pretrial order, and exchange witness and exhibit information. In addition to the stated goals for the meeting, it was obviously an opportunity for each side to get to know their opponents and size up how the case might go forward. In other words, it was strategically a very important meeting. Accordingly, each of the trial team members needed to be present (Ms. Carroll assisted with last minute witness and exhibit list issues and thus was unable to attend the meeting). In addition, Mr. Lund provided a more objective view of the proceedings and was able to assist the trial team in better preparing for trial.

We appreciate HRO's response, but the response does not establish the necessity of Joan Sherman's (JLS) presence, given that Natalie Aberle (NKA) also attended as the lead paralegal. Thus we recommend a reduction of $375.00 in fees.

8.    In our initial report, we noted that on November 21, 2002, four (4) professionals attended a meeting. The total time spent including preparation was 26.90 hours for $8,717.50. The entries are provided below.

| 11/21/02 | LB | 7.10 | 2,840.00 | ........; meeting with KJCoggon, KWLund, JDMcCarthy, and Gary Graham re trial preparation status and preparation for meeting with client (1.00);.......; attend portion of meeting with client re case status and trial preparation and strategy (3.90). |
| --- | --- | --- | --- | --- |
| 11/21/02 | KWL | 7.10 | 2,485.00 | ........; meeting with LBrown, KJCoggon, JDMcCarthy and Gary Graham re trial preparation status and to prepare for meeting with client (1.0); meet with client re case status and trial preparation strategy (5.60). |
| 11/21/02 | JDM | 9.30 | 2,790.00 | Prepare for client case status/strategy meeting (1.5); meet with LBrown, KWLund, KJCoggon and Gary Graham re case strategy (1.5); attend portion of meeting with client re case status and trial strategy (5.5);........ |

| 11/21/02 | KJC | 8.60 | 2,365.00 | Prepare for client strategy meeting (0.30); meeting with G. Graham, LBrown, KWLund and JDMcCarthy re trial preparation status and to prepare for meeting with client (1.00); meeting with client re case status and trial preparation strategy (5.60);............. |
|---|---|---|---|---|

Paragraph II.D.5.of the Guidelines states, ". . .[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."   Further, Rule 2016-2(d)(ix) states, "The activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role." We again asked HRO to explain each professional's role in this meeting and why it was necessary for more than one to attend. HRO's response is included as Response Exhibit 3.  We accept the response and have no objection to these fees.

9.     We also noted that on November 22, 2002, LB, KWL and JDM attended a meeting.  The total time spent including preparation was 8.40 hours for $2,940.00.  The entries are provided below.

| 11/22/02 | LB | 5.60 | 2,240.00 | Meeting with client and HRO team re trial strategy and preparation (2.70);....... |
|---|---|---|---|---|
| 11/22/02 | KWL | 4.60 | 1,610.00 | .........; meeting with client and HRO team re trial strategy and preparation (3.00);...... |
| 11/22/02 | JDM | 7.30 | 2,190.00 | Meeting with client and HRO team re trial strategy and preparation (2.70);........ |

Paragraph II.D.5.of the Guidelines states, ". . .[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." Further, Rule 2016-2(d)(ix) states, "The activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role." We asked HRO to explain

each professional's role in this meeting and why it was necessary for more than one to attend.  HRO's response is contained in Response Exhibit 3.  We accept the explanation and thus have no objection to these fees.

10.    In our initial report, we noted that on December 16, 2002, LB, LSD and KJC attended a pretrial conference in Missoula.  The total time spent including preparation and non-working travel time was 10.90 hours for $3,437.50.  The entries are provided below.

| 12/15/02 | LB | 5.90 | 2,360.00 | ...............; travel to Missoula for final pretrial conference (1.00) (1.00 N/C) (50% NWT). |
| 12/15/02 | JDM | 6.40 | 1,920.00 | ........; prepare for pretrial conference (2.0). |
| 12/15/02 | KJC | 8.50 | 2,337.50 | .........; travel to Missoula for pretrial conference (2.00) (2.00 N/C) (50% NWT); prepare for pretrial conference (1.10). |
| 12/16/02 | LB | 10.80 | 4,320.00 | ........; participate in final pretrial conference (.90);........; travel from Missoula to Denver (1.00) (1.00 N/C) ( NWT 50%);........... |
| 12/16/02 | JDM | 5.20 | 1,560.00 | ......; attend pretrial conference (1.1);........ |
| 12/16/02 | KJC | 10.00 | 2,750.00 | ........; attend pretrial conference (0.80);........; return travel to Denver from pretrial conference in Missoula (1.00) (1.00 N/C) (50% NWT). |

Paragraph II.D.5.of the Guidelines states, ". . .[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  Further, Rule 2016-2(d)(ix) states, "The activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role."  We asked HRO to explain each professional's role in this conference and why it was necessary for more than one to attend.  The

response is provided below.

>Judge Molloy, United States District Court for the District of Montana, required counsel to be present for a pretrial conference on December 16, 2002 at which certain procedural and other matters were discussed. As a general rule, Judge Molloy requires all trial counsel to be present for all relevant portions of trial, including such a pretrial meeting. All members of the trial team attended the pretrial conference with Judge Molloy as required, including Ms. Brown, Mr. McCarthy and Ms. Coggon.
>
>In addition to the Judge's requirement that all counsel be present at such proceedings, the trial team thought it appropriate for all three counsel to attend the hearing as there was the likelihood of discussion of procedural preferences and other matters important to the presentation at trial. Since trial responsibilities were to be split among counsel, it was prudent for all to attend the pretrial conference. Finally, it was an opportunity for counsel to observe the Judge, his clerk, and opposing counsel prior to the start of trial. As with any situation, different individuals make different observations which collectively contribute to a more complete picture.

We appreciate the response and have no objection to these fees.

11.    We noted that on December 20, 2002, LB, KWL and KJC participated in a conference call. The total time spent including preparation was 2.40 hours for $837.50. The entries are provided below.

| 12/20/02 | LB | 7.30 | 2,920.00 | .......; preparation for and telephone conference with Bill Corcoran, Dave Siegel, Bob Emmett, KWLund, and KJCoggon re various options re Molloy Order (1.00);.......... |
| 12/20/02 | KWL | 3.00 | 1,050.00 | ........; telephone conference with Bill Corcoran and David Siegel (.70). |
| 12/20/02 | KJC | 9.20 | 2,530.00 | ......; telephone conference with W. Corcoran, D. Siegel, R. Emmett, and M. Shelnitz re options for response to court's order granting summary judgment (0.70);......... |

Paragraph II.D.5.of the Guidelines states, ". . .[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." Further, Rule

2016-2(d)(ix) states, "The activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role." We asked HRO to explain each professional's role and why it was necessary for more than one to participate in this conference call.

HRO's response is provided below.

> On December 20, 2002, the client and trial team were all in receipt of Judge Molloy's ruling granting plaintiff's motion for summary judgment. Trial was scheduled to begin in less than two weeks. His ruling substantially altered what would be tried and required substantial consideration by the trial team, including Mr. Lund and the client, to determine how to proceed. As discussed before, each of these individuals (Ms. Brown, Ms. Coggon and Mr. Lund) brought different perspectives to the discussion. The client sought overall strategy advice from Mr. Lund and Ms. Brown, while Ms. Coggon brought a more practical perspective of what could be accomplished with the resources available, when and how.

We appreciate the response and have no objection to these fees.

12.     In our initial report, we noted that on December 23, 2002, four (4) professionals attended the deposition of Chris Weis. The total time spent including preparation was 36.50 hours for $9,535.00. The entries are provided below.

| 12/21/02 | JLS | 1.10 | 137.50 | Prepare for Weis deposition (1.10). |
|---|---|---|---|---|
| 12/22/02 | LB | 7.50 | 3,000.00 | Prepare for second day of Weis deposition, including meeting with JDMcCarthy re legal research ad Weis deposition (7.50). |
| 12/23/02 | LB | 10.90 | 4,360.00 | Finish preparation for and depose C. Weis (10.2);.... |
| 12/23/02 | JDM | 9.90 | 2,970.00 | ........; attend Weis deposition (0.6);....... |
| 12/23/02 | AEC | 7.50 | 937.50 | Prepare exhibits for and attend portions of Chris Weis deposition (7.5). |
| 12/23/02 | JLS | 9.60 | 1,200.00 | Prepare for Weis deposition (2.60); attend Weis deposition (7.0). |

Paragraph II.D.5.of the Guidelines states, ". . .[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." Further, Rule 2016-2(d)(ix) states, "The activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role." We asked HRO to explain each professional's role in this deposition and why it was necessary for more than one to attend. HRO's response is provided below.

> Ms. Brown took Chris Weis' deposition. Dr. Christopher Weis, the EPA Region 8 toxicologist responsible for Libby, was one of only two EPA employees deposed in the cost recovery case and was a key witness because he developed the risk analysis on which the cleanup efforts in Libby were based. The volume of documents and other discovery materials was such that no single attorney could adequately prepare for a deposition of this magnitude. Dr. Weis had produced over 2000 emails in the case and there were countless other documents related to his work in Libby that had to be reviewed in preparation for the deposition. Given the tight timeframes allowed for preparation and completing all discovery, it was not possible for all preparation activities to be accomplished by just one or two individuals. The primary professionals solicited assistance from specific individuals according to their experience and skills in order to most efficiently prepare for the deposition. Ms. Sherman, who had assisted with the prior day's deposition of Dr. Weis, assisted again. Ms. Sherman was responsible for tracking all exhibits and providing additional paralegal support during the deposition. Ms. Sherman has provided similar assistance to Ms. Brown in the past and has demonstrated that such an arrangement is the most efficient approach. Ms. Carroll spent the day of deposition in and out of the room pulling documents and finding information for Ms. Brown as the deposition progressed. Mr. McCarthy attended a very brief portion of the Weis deposition that was particularly relevant to his areas of responsibility (certain risk experts) in order to both assist Ms. Brown and to understand the subject to better prepare him for his role at trial.

We appreciate the response and have no objection to these fees.

13.    We further noted that on December 26, 2002, KJC has a time entry listed as 7.60 hours for $2,090.00. The parentheticals only total 7.00 hour for $1,925.00. The difference is $165.00.

| | | | | |
|---|---|---|---|---|
| 12/26/02 | KJC | 7.60 | 2,090.00 | Address billing issues from team, vendors and experts (0.20); address inquiries and issues re document |

> databases (0.10); respond to questions from client and team re facts and documents (0.20); address trial logistics and issues (0.80); telephone conference with G. Graham re case and trial strategy (0.80); conferences with JDMcCarthy and LBrown re trial strategy and logistics (1.80); telephone conference with R. Emmett re trial strategy (0.50); telephone conference with KWLund re case status and trial strategy (0.20); review Peronard deposition transcript for cites in statement of facts (2.40).

We asked HRO to review the entry and explain this miscalculation.  HRO responded as follows:

> HRO concedes that the time entry identified in Paragraph 13 of the Report contains an addition error.  Accordingly, HRO agrees to a reduction of HRO's requested award for fees by $165.00.

We accept the response and therefore recommend a reduction of $165.00 in fees.

14.    In our initial report, we noted that on December 30, 2002, LB, JDM and EES attended a meeting.  The total time spent including preparation was 18.90 hours for $6,174.00.  The entries are provided below.

| | | | | |
|---|---|---|---|---|
| 12/30/02 | LB | 8.00 | 3,200.00 | Trial preparation, including conference with Dale Jensen, JDMcCarthy, and EEStevenson re cost testimony (6.30);..... |
| 12/30/02 | JDM | 10.30 | 3,090.00 | .......; meet with cost expert, LBrown and EEStevenson (6.3);....... |
| 12/30/02 | EES | 8.20 | 2,296.00 | Trial strategy meeting with accounting experts, LBrown and JDMcCarthy (6.30);..... |

Paragraph II.D.5.of the Guidelines states, ". . .[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."   Further, Rule 2016-2(d)(ix) states, "The activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role."  We asked HRO to

explain each professional's role in this meeting and why it was necessary for more than one to attend.

HRO's response is provided below.

> On December 30, 2002, Ms. Brown attended a meeting with Dale Jensen, W.R. Grace's cost expert. Ms. Brown was responsible for the direct examination of Mr. Jensen at trial. Mr. McCarthy was responsible for cross examination of certain other cost experts at trial. Mr. Stevenson had been working with Mr. Jensen from the beginning to prepare for expert testimony at trial. The meeting included discussion of trial testimony, potential cross examination subjects and questions, and overall cost issue strategies. Since over $20 million was still at stake at trial and depended on Mr. Jensen's testimony and the ability of the HRO attorneys to cross examine the government's cost witnesses, it was appropriate and necessary for all three of these professionals to attend this meeting.

We accept this explanation and have no objection to these fees.

15.    Throughout the Application period, we noted a number of entries for meal expenses that

may be excessive and/or lacking in the necessary supporting detail. The total for the expenses in question

is $1,063.13.  The entries are provided below.

| | | |
|---|---|---|
| 09/17/02 | Other Meal Expense: VENDOR: Nancy's Catering & Bakery; INVOICE# 43748; DATE: 9/17/2002 - Denver, Catering for September, 2002, Lunch 9/17/02, L. Brown | 67.15 |
| 10/04/02 | Travel Expense: VENDOR : Linnea Brown; INVOICE#: 100902B; DATE: 10/9/02 - October 3-4, 2002 Travel expenses - Pittsburgh, PA for meeting with Rich Lee/Meals | 156.78 |
| 10/31/02 | Travel Expense: VENDOR: Robert Fellinger; INVOICE#: 110102; DATE: 11/1/2002 - Site preparation for Missoula Trial/Meals - Dinner for R. Fellinger and C. Thorne | 110.70 |
| 11/26/02 | Other Meal Expense: VENDOR: Lund, Kenneth W; INVOICE#: 11/26/02; DATE: 11/26/2002 - Dinner with David Siegel, Bill Corcoran, Jay hughes, Richard Finke, Richard Sentfleben, Gary Graham, Nea Brown and Ken Lund (Sullivan's) (Avg. $39.00 per person). | 315.96 |
| 12/03/02 | Travel Expense: VENDOR: Lund, Kenneth W; INVOICE#: 112602; | 412.54 |

> DATE: 12/3/2002 - TE: Attend meetings with Grace in Columbia, MD. Dinner with Bill Corcoran, David Siegel, Bob Emmett, Richard Finke, LBrown and KWLund to continue case strategic planning discussions (Avg. $68.00 per meal).

Paragraph II.E. of the Guidelines states that, ". . .[f]actors relevant to a determination that the expense is proper include the following: 1. Whether the expense is reasonable and economical..." We asked HRO to review each entry and to provide any supporting documentation to show why these meal expenses should not be viewed as excessive. HRO's response is provided as Response Exhibit 4. We appreciate HRO's response; however, based on a reasonable per-person ceiling of $15 for breakfast, $25 for lunch and $35 for dinner, we believe some of the entries still reflect excessive charges. Thus, we recommend a reduction of $248.79 in costs.

16.    We noted in October and November, 2002, that there were multiple entries for temporary services that total $2,913.75. The entries are provided below.

| | | |
|---|---|---|
| 10/09/02 | Other Expense: VENDOR: Gibson Arnold & Associates; INVOICE#: 90154; DATE: 10/9/2002 - Temporary services for Stephen Haraldson for week-ending 10/06/02 | 1,023.75 |
| 10/16/02 | Other Expense: VENDOR: Gibson Arnold & Associates; INVOICE#: 90187; DATE: 10/16/2002 - Temporary services for Stephen Haraldson for week-ending 10/13/02 | 1,050.00 |
| 11/01/02 | Other Expense: VENDOR: Gibson Arnold & Associates; INVOICE#: 90283; DATE: 11/6/2002 - Temporary services for week-ending 11/03/02 - Stephen Haroldson - 32.00 hours | 840.00 |

Paragraph II.E. of the Guidelines states, "[a]ny expense for which reimbursement is sought must be actual and necessary and supported by documentation as appropriate." We asked HRO to explain the need for this supplemental staffing and to reference the specific tasks this employee performed that served to further

the resolution of this case.  HRO responded as follows:

> In October and November 2002, Steve Haraldson provided ongoing temporary assistance
> to the HRO trial team in preparing for trial.  All of the charges detailed in Paragraph 16
> relate to the employment of Steve Haraldson.  Mr. Haraldson assisted the HRO trial team
> with the data project, which involved evaluation of massive quantities of EPA data, analysis
> and sampling sheets, and other document review and coding.  All other HRO staff were
> already assigned and temporary assistance was necessary in order to meet ongoing
> deadlines.  Mr. Haraldson joined the HRO staff as a permanent employee shortly
> thereafter, in part based on his exemplary performance in assisting the trial team during
> October 2002.

We accept HRO's explanation and have no objection to these costs.

17.    In our initial report, we noted an expense of $187.83 for auto rental on October 21, 2002,

that appears excessive.  The entry is provided below.

10/21/02        Travel Expense: VENDOR: Hertz Corporation; INVOICE#:        187.83
                525326922; DATE: 10/21/2002 - Auto Rental - Kenneth Lund

Paragraph II.E. of the Guidelines states that, ". . .[f]actors relevant to a determination that the expense is

proper include the following: 1.  Whether the expense is reasonable and economical..."  We asked HRO

to review the entry and to provide any supporting documentation to show that the expense was economical.

HRO's response is reported below.

> The Report notes that HRO seeks reimbursement in the amount of $187.83 for an auto
> rental expense on October 21, 2002 that appears to be excessive.  This auto rental
> expense for a small or mid-size auto for three (3) rental days at the prevailing rates in San
> Francisco, California.  A copy of the invoice detailing this expense will be made available
> to the Fee Auditor upon request.  Accordingly, HRO does not believe this expense is
> excessive.

We concur that the charge is not excessive for a three-day rental, and thus we have no objection to this

expense. We would further suggest, however, that the number of days rental should have been noted on

the original expense detail.

18.     We noted an expense entry of $345.17 dated October 1, 2002, for a hotel conference room charge. The entry is provided below.

| 11/01/02 | Other Expense: VENDOR: Charlotte L. Neitzel; INVOICE#: 11/01/02; DATE: 11/1/2002 - Denver, 9/18/02, San Diego, Prepare for Dr. Highson Deposition, Conference Room at Hotel | 345.17 |

Paragraph II.E. of the Guidelines states, "[a]ny expense for which reimbursement is sought must be actual and necessary and supported by documentation as appropriate." It is unclear from the entry description whether the conference room was reserved for deposition preparation and if so, why? We asked HRO to explain why this expense was necessary and how it benefitted the estate. HRO's response is provided below.

> Charlotte Neitzel (CLN), part of the broader HRO/W.R. Grace legal team, had been working with Dr. Hughson in his role as expert witness for the cost-recovery trial. On September 17, 2002, Ms. Neitzel met with Dr. Hughson and a client representative to prepare for Dr. Hughson's deposition, which took place on September 18, 2002. Dr. Hughson is a practicing physician in San Diego whose office is ill-equipped to accommodate meetings and depositions. A small hotel conference room was selected as the best and most economical alternative.

We accept the explanation and have no objection to this expense.

19.     In our initial report, we noted two airfare entries totaling $2,100.00 that require more detail in order to assess their reasonableness. The entries are noted below.

| 11/16/02 | Travel Expense: VENDOR: Majest International; INVOICE#: 20065; DATE: 11/16/2002 - Denver, Airfare, 11/18 - 11/20/02, Denver Washington Washington Denver, J. McCarthy | 1,850.00 |
| 11/19/02 | Travel Expense: VENDOR: Kenneth W. Lund; INVOICE#: 110402; DATE: 11/19/2002 - Travel Expense; Change fee for airline travel while attending deposition of Harry Eschenbach on 09/26/02. | 250.00 |

Paragraph II.E.1.of the Guidelines states, ". . .[f]actors relevant to a determination that the expense is

proper include the following: 1. Whether the expense is reasonable and economical. For example, first class and other luxurious travel mode or accommodations will normally be objectionable."

We asked that HRO provide documentation that airfares in both entries were for coach or economy class. In the case of the second entry, we asked that HRO also explain why this fee change was necessary. HRO responded as follows:

> Based on unforeseeable changes in the trial strategy and scheduling conflicts, Mr. McCarthy had to book a last minute flight to Washington D.C. to meet with testifying expert, Suresh Moolgavkar. Mr. Moolgavkar was not available any other time to meet and prepare for trial. Accordingly, Mr. McCarthy's airfare is higher than usual, but reasonable in light of the circumstances and was for coach/economy class. On November 19, 2002, Mr. Lund incurred a change fee of $250.00 that included in the Application. This expense was included in the Application in error. Accordingly, HRO agrees to a $250.00 reduction in its expense reimbursement request.

We appreciate HRO's response and thus recommend a reduction of $250.00 in costs.

20.    In our initial report, we noted five (5) airfare expense entries totaling $3,865.00 dated November 18, 2002, that indicate multiple firm professionals traveling to Missoula for a pretrial conference. The entries are provided below.

11/18/02    Travel Expense: VENDOR: Majest International; INVOICE#: 20068;  453.00
            DATE: 11/18/2002 - Denver, Airfare, 12/15-12/16/02, Denver
            Missoula Missoula Denver, L. Brown

11/18/02    Travel Expense: VENDOR: Majest International; INVOICE#: 20069;  853.00
            DATE: 11/18/2002 - Denver, Airfare, 12/15-12/16/02, Denver
            Missoula Missoula Denver, K. Coggon

11/18/02    Travel Expense: VENDOR: Majest International; INVOICE#: 20071;  853.00
            DATE: 11/18/2002 - Denver, Airfare, 12/15-12/16/02, Denver
            Missoula Missoula Denver, R. Fellinger

11/18/02    Travel Expense: VENDOR: Majest International; INVOICE#: 20073;  853.00
            DATE: 11/18/2002 - Denver, Airfare, 12/15-12/16/02, Denver

Missoula Missoula Denver, W. Brown

11/18/02        Travel Expense: VENDOR: Majest International; INVOICE#: 20074;  853.00
                DATE: 11/18/2002 - Denver, Airfare, 12/15-12/16/02, Denver
                Missoula Missoula Denver, John McCarthy

With regard to this conference in Missoula, the issue of multiple professionals attending the same

conference was raised in paragraph #10 of the initial report.  In light of that, we asked HRO to explain why

the accompanying travel expenses of multiple professionals attending the same conference should be

reimbursed.  We further noted, that while there was no mention in the fee detail of work done by R.

Fellinger and W. Brown with regard to this pretrial conference, they nonetheless appear to have traveled

to Missoula with everyone else.  We also asked HRO to explain their roles in this conference and the

necessity of their travel.           HRO's response is provided below.

> The expenses detailed in Paragraph 20 include airfare for those professionals traveling to
> Missoula, MT for the pre-trial conference, which is explained in detail in Paragraph 10
> above, together with an explanation of the necessity of attendance by Ms. Brown, Mr.
> McCarthy and Ms. Coggan.  Additionally, airfare expenses were incurred by HRO
> professionals Robert Fellinger and Windy Brown.  Robert Fellinger and Windy Brown
> (trial support specialists with HRO's technology staff) went to Missoula to address
> electronic issues for trial.  They traveled to Missoula concurrently with the attorneys so that
> Ms. Coggon, who was responsible for managing such matters, could confer with them
> directly about various issues.  In particular, Mr. Fellinger and Ms. Windy Brown
> investigated and made arrangements for subsequent offices to be set up with internal
> computer connections and phone service during trial.  They also assisted in testing the live
> trial transcript feed at the courthouse and making arrangements with the Court's staff for
> exhibits and transcript feed during trial.  Trial counsel and Mr. Fellinger and Ms. Brown
> met and examined room options for setting up the trial "war room" during trial, verifying
> that adequate systems existed for computer, facsimile, and telephone services.  The
> services provided by Mr. Fellinger and Ms. Brown were necessary and invaluable to the
> trial team and the client in preparing for the trial in Missoula.  Fees were not charges for
> their time, but their expenses should be reimbursed as their presence in Missoula greatly
> benefitted W.R. Grace in its trial preparation and presentation.

We appreciate HRO's response, and we note that it makes a strong argument for the value of bringing Mr.

Fellinger or Ms. Brown to Missoula.  While it's debatable that both were needed, we're also cognizant that HRO did not bill the estate for these employees' time but seeks only reimbursement of their travel expenses.  We believe that this is a fair bargain and therefore offer no objection to these expenses.

      21.     We also noted eight (8) pre-billed airfare entries totaling $9,470.00 for travel to Missoula in early January 2003.  The entries are provided below.

| 12/26/02 | Travel Expense: VENDOR: Majest International; INVOICE#: 20431; DATE: 12/26/2002 - Denver, Airfare, 1 /2-1/11/03, Denver Missoula Missoula Denver, K. Coggon | 1258.00 |
|---|---|---|
| 12/26/02 | Travel Expense: VENDOR: Majest International; INVOICE#: 20432; DATE: 12/26/2002 - Denver, Airfare, 1 /2-1/11/03, Denver Missoula Missoula Denver, L. Brown | 1258.00 |
| 12/26/02 | Travel Expense: VENDOR: Majest International; INVOICE#: 20433; DATE: 12/26/2002 - Denver, Airfare, 1 /2-1/11/03, Denver Missoula Missoula Denver, K. Carnes | 1258.00 |
| 12/26/02 | Travel Expense: VENDOR: Majest International; INVOICE#: 20434; DATE: 12/26/2002 - Denver, Airfare, 1 /2-1/11/03, Denver Missoula Missoula Denver, J. McCarthy | 1258.00 |
| 12/26/02 | Travel Expense: VENDOR: Majest International; INVOICE#: 20435; DATE: 12/26/2002 - Denver, Airfare, 1 /2-1/11/03, Denver Missoula Missoula Denver, E. Stevenson | 1258.00 |
| 12/27/02 | Travel Expense: VENDOR: Majest International; INVOICE#: 20443; DATE: 12/26/2002 - Denver, Airfare, 1 /2-1/11/03, Denver Missoula Missoula Denver, N. Aberle | 1258.00 |
| 12/27/02 | Travel Expense: VENDOR: Majest International; INVOICE#: 20445; DATE: 12/26/2002 - Denver, Airfare, 1 /2-1/11/03, Denver Missoula Missoula Denver, D. Jensen | 1258.00 |
| 12/31/02 | Travel Expense: VENDOR: Majest International; INVOICE#: 20462; DATE: 12/31/2002 - Denver, Airfare, 1 /5-1/11/03, Seattle Missoula Missoula Seattle, M. Hutchinson | 664.00 |

While we do not take issue with the pre-billing of travel expenses, these entries raise the question of the need for multiple professionals to travel and work on the same project. Paragraph II.D.5.of the Guidelines states, ". . .[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." Further, Rule 2016-2(d)(ix) states, "The activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role." Because the expenses were pre-billed, possible explanation for the project was not available in the accompanying fee detail. We asked HRO to explain the nature of the Missoula project and why it required the time and travel of so many firm professionals to complete. We further noted that for seven of the eight entries, the $1,258.00 cost of round-trip airfare is approximately one-third higher than usual. We asked HRO to explain why less expensive airfares were not available. HRO's response is provided below.

> Although not reflected in the current fee application, the trial in U.S. v. W.R. Grace (Missoula, MT) took place January 6–8, 2003. At issue was over $20 million for W.R. Grace. While down from the initial $57 million at stake as a result of the summary judgment ruling, the trial team was still required to prepare for and defend W.R. Grace at trial. Further complicating the situation, however, was a still pending motion for reconsideration that could have resulted in the full scale, three week trial going forward on January 6, 2003. Since the motion had been filed during the holidays and Judge Molloy had not issued a ruling, the team had to prepare for the possibility of either a full or reduced scale trial. To obtain favorable airfares, the trial team booked flights for Missoula in advance. As discussed above, Ms. Brown, Mr. McCarthy, Ms. Coggon and Ms. Aberle were all part of the trial team. In addition, Karla Carnes accompanied them as the team's group legal secretary. Mr. Stevenson attended to assist with ongoing trial and witness preparation since the trial had unexpectedly become focused on the cost issues, for which he was responsible. Mr. Jensen testified as an expert cost witness. Mr. Hutchinson testified as a fact witness.
>
> All of the Denver based airfares are consistent at $1258 per person, fully refundable, as it was impossible to predict how long the trial would last and because the airlines had recently changed their policies limiting changes. This was the best airfare available for direct flights from Denver to Missoula, especially given that it was still the

holiday season when travel originated.  The Seattle based airfare was lower since the airlines offered a better deal from that destination.   Again, all airfares were for coach/economy class.

We appreciate the depth of HRO's response and have no objection to these expenses.

22.    Finally, we noted that during November and December of 2002,  there were numerous entries totaling $27,365.02 for legal assistant overtime.  See Exhibit A.  We asked HRO to examine each entry and explain the need for these overtime expenses as they specifically related to this bankruptcy estate.  HRO's explanation is provided as Response Exhibit 5.  We appreciate HRO's response and offer no objection to these expenses.


## CONCLUSION

23.    Thus, we recommend approval of fees totaling $2,000,721.00 ($2,002,888.50 minus $2,167.50) and costs totaling $154,723.61 ($155,222.40 minus $498.79) for HRO's services from October 1, 2002, through December 31, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:

Warren H. Smith
Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 4080
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 9th day of April 2003.

Warren H. Smith

## SERVICE LIST
Notice Parties

**The Applicant**

Elizabeth K. Flaagan, Esq.
HOLME ROBERTS & OWEN, LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of
Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher

1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246
**Counsel to the Official Committee of
Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price &
Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of
Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

| | | |
|---|---|---:|
| 11/27/02 | Legal Assistant Overtime: Paralegal overtime 11/27/02 MF | 172.50 |
| 11/30/02 | Legal Assistant Overtime: Paralegal overtime 11/15/2002 NA | 1,113.75 |
| 11/30/02 | Legal Assistant Overtime: Paralegal overtime 11/15/2002 CA | 150.00 |
| 11/30/02 | Legal Assistant Overtime: Paralegal overtime 11/15/2002 DD | 537.50 |
| 11/30/02 | Legal Assistant Overtime: Paralegal overtime 11/15/2002 MF | 1,092.50 |
| 11/30/02 | Legal Assistant Overtime: Paralegal overtime 11/15/2002 CL | 1,141.25 |
| 11/30/02 | Legal Assistant Overtime: Paralegal overtime 11/15/2002 PS | 646.88 |
| 11/30/02 | Legal Assistant Overtime: Paralegal overtime 11/15/2002 FP | 490.00 |
| 11/30/02 | Legal Assistant Overtime: Paralegal overtime 11/15/2002 IM | 186.88 |
| 11/30/02 | Legal Assistant Overtime: Paralegal overtime 11/15/2002 PS | 192.50 |
| 12/31/02 | Legal Assistant Overtime: 12/13/02-LA OT - 11/29/02 - MBF | 546.25 |
| 12/31/02 | Legal Assistant Overtime: 12/13/02-LA OT - 11/22/02 - PS | 276.25 |
| 12/31/02 | Legal Assistant Overtime: LA OT-12/6/02-NA | 1,306.25 |
| 12/31/02 | Legal Assistant Overtime: LA OT-12/13/02-NA | 1,663.75 |
| 12/31/02 | Legal Assistant Overtime: LA OT-11/22/02-AC | 525.00 |
| 12/31/02 | Legal Assistant Overtime: LA OT-11/29/02-AC | 962.50 |
| 12/31/02 | Legal Assistant Overtime: LA OT-12/06/02-MF | 991.88 |
| 12/31/02 | Legal Assistant Overtime: LA OT-12/13/02-MF | 948.75 |
| 12/31/02 | Legal Assistant Overtime: LA OT-12/6/02-CL | 242.00 |
| 12/31/02 | Legal Assistant Overtime: LA OT-12/13/02-CL | 1,050.50 |
| 12/31/02 | Legal Assistant Overtime: LA OT-12/6/02-JS | 1,956.50 |
| 12/31/02 | Legal Assistant Overtime: LA OT-12/13/02-JS | 1,846.00 |
| 12/31/02 | Legal Assistant Overtime: 12/31/02-LA OT-12/13/02-PS | 825.00 |
| 12/31/02 | Legal Assistant Overtime: LA OT-12/6/02-FP | 203.13 |
| 12/31/02 | Legal Assistant Overtime: 12/13/02-LA OT-11/15/02-CL | 137.50 |
| 12/31/02 | Legal Assistant Overtime: 12/13/02-LA OT-11/22/02-CL | 178.75 |
| 12/31/02 | Legal Assistant Overtime: LA OT-10/25/02-NA | 352.00 |
| 12/31/02 | Legal Assistant Overtime: LA OT-11/15/02-NA | 165.00 |
| 12/31/02 | Legal Assistant Overtime: LA OT-11/22/02-NA | 973.50 |
| 12/31/02 | Legal Assistant Overtime: LA OT-11/29/02-NA | 1,177.00 |
| 12/31/02 | Legal Assistant Overtime: LA OT-9/6/02-JS | 156.00 |
| 12/31/02 | Legal Assistant Overtime: LA OT-9/13/02-JS | 793.00 |
| 12/31/02 | Legal Assistant Overtime: LA OT-9/20/02-JS | 643.50 |
| 12/31/02 | Legal Assistant Overtime: LA OT-9/27/02-JS | 9.75 |
| 12/31/02 | Legal Assistant Overtime: LA OT-11/15/02-JS | 1,092.00 |
| 12/31/02 | Legal Assistant Overtime: LA OT-11/22/02-JS | 695.50 |
| 12/31/02 | Legal Assistant Overtime: LA OT-11/29/02-JS | 1,924.00 |

Response Exhibit 1

        In September and October 2002, Carla Latuda (MCL) and Loraine Street (LCS) spent time
reviewing and coding documents in order to comply with EPA's ongoing request for information under
CERCLA section 104(e), which applies hefty penalties of $27,500 per day for failure to comply.
Consistent with those obligations, Ms. Latuda and Ms. Street reviewed documents that had been
miscoded by the scanning vendor, Lason.  Prior to the bankruptcy, Debtor W.R. Grace had hired
Lason to assist with the response to the 104(e) information requests by scanning documents and
providing them back to W.R. Grace's counsel as electronic images with certain coding.  The coding had
initially been assigned by W.R. Grace's counsel as part of the paper document review.  In late Summer
2002, as part of the renewed efforts to comply with EPA's information request and as required by court
order in the bankruptcy matter, it was discovered that Lason had mistakenly applied the coding to the
images.  To avoid providing to EPA any privileged documents or any documents unrelated to the
information requests, it was necessary to quickly and efficiently review the Lason-created documents to
ensure that the coding was accurate.  Ms. Latuda had been involved with the initial review and coding
of the documents in 2000 and 2001, making her the ideal person to manage this quick review of the
images.  Ms. Street had also been involved in prior W.R. Grace document review and assisted Ms.
Latuda with this project in order to complete it in the time allowed by the Court.  Ms. Street is
particularly efficient at quick review and coding of documents maintained electronically given her
considerable experience in managing and tracking electronic databases.
        In particular, the Fee Auditor has inquired as to why lower billing professionals could not have
accomplished this task.  Ms. Street's time is billed at $85 per hour, relatively low by comparison with
other legal staff.  Of the 32.7 hours charged for this work in October 2002, Ms. Street billed 29.2
hours while Ms. Latuda provided oversight and review of particularly challenging documents for only
3.5 hours.  This division of labor between the two professionals, with the higher billing Ms. Latuda
involved for a fraction of the total, is entirely appropriate, especially given the tight deadlines and
potential punitive impacts of failure to comply with the deadlines.

Response Exhibit 2

As background and as discussed in prior responses of HRO to Fee Auditor Reports, HRO represents W.R. Grace with respect to the cost recovery case pending in the United States District Court for the District of Montana (Missoula). The HRO trial team consists of the following individuals: Linnea Brown (LB), Jay McCarthy (JDM), Katheryn Jarvis Coggon (KJC), Joan Sherman (JLS), Natalie Aberle (NKA), and Ann Carroll (AEC).

In particular, Ken Lund (KWL) is the partner in charge of the W.R.Grace matters for HRO and is responsible for informing the client of all progress and issues related to the cost recovery case. He brings a broad strategy perspective to meetings, conferences, etc. Linnea Brown (LB) is a senior trial lawyer at HRO, and was lead trial counsel for this matter. She was also responsible for preparing certain portions of the case for trial. As lead trial lawyer, Ms. Brown was responsible for overall trial strategy, opening and closing arguments, and various expert witnesses. Jay McCarthy (JDM) is an environmental litigation partner at HRO and was responsible for certain medical and risk experts and fact witnesses, together with having primary responsibility for cost-related work. Katherine Coggon (KJC) managed the cost recovery case generally and was responsible for certain expert and fact witnesses as well as all continuing and ongoing discussions with plaintiff's counsel. She was also responsible for coordinating efforts in this litigation with other pending and ongoing client issues/cases. Ms. Coggon was responsible for keeping the client informed of more detailed information and coordinating communications among the various client representatives. Ed Stevenson (EES) was primarily responsible for preparing the cost portion of the case. Mr. Stevenson was a CPA prior to becoming an attorney and brought specific skills to the role that no other HRO attorney provided. Mr. Stevenson regularly participated in all meetings related to cost issues and contributed significant insights regarding such issues. In addition to the above attorneys, the HRO trial team included primarily three paralegals; however, additional paralegal assistance was both necessary and appropriate in preparing for trial. Ultimately, given certain late decisions by the Court, it was determined that only one paralegal (Natalie Aberle (NKA)) would attend the trial in Montana. Nonetheless, Joan Sherman (JLS) and Ann Carroll (AEC) and the other HRO legal staff continued to provide necessary assistance to prepare for trial.

In specific response to the concerns raised by the Fee Auditor in Paragraph 6 and as set forth in detail above, the HRO trial team included Ms. Brown, Mr. McCarthy and Ms. Coggon, each of whom was assigned to prepare different but related portions of the case. Meetings on November 13, 2002 related to development of graphics for use during trial and required participation from all attorneys on the trial team. The attorneys worked with the consultant to develop individual witness-specific graphics and as a team to ensure that a cohesive and consistent presentation was made to the Court.

Response Exhibit 3

HRO's responses to Paragraphs 8 and 9 of the Report are interrelated as both involve meetings with W.R. Grace.  Accordingly, HRO will respond to both paragraphs in Paragraph 9 below.

On November 21 and 22, 2002, the HRO team met with client representatives to discuss trial strategies and case status in the cost recovery action.  To ensure that the team was fully informed and that everyone was on the right track for efficiently preparing for trial, it was important that the key members of the trial team participate in the full briefing and that other members of the trial team participate as appropriate given their respective roles on the case.  The client required such strategy meetings and all participants found them to be a useful means of steering the case in the manner most likely to meet with success.  By late November 2002, the HRO team was in full trial preparation mode as the trial was just weeks away.  The client was entitled to a full briefing of the status of trial preparation, including a preview of witness preparation, graphics, demonstrative exhibits, etc.  In addition, considerable strategy discussions took place in which all of the trial team members and Mr. Lund as the partner responsible for the client relationship and ultimately the case participated.  In order to present a cohesive and unified case to the Court, attendance at such meetings were both necessary and appropriate for the different professionals noted.  Please refer to Paragraph 6 above for a more detailed description of each professional's role in the trial and in these meetings.

Response Exhibit 4

The Report notes that HRO seeks reimbursement in the amount of $1,063.13 for meal expenses incurred throughout the Application period by multiple professions.  The expense entries are listed below with a more detailed description of the expenses following each such entry:

09/17/02          Other Meal Expense: VENDOR:  Nancy's Catering & Bakery; INVOICE# 43748; DATE:  9/17/2002 - Denver, Catering for September, 2002, Lunch 9/17/02, L. Brown.  $67.15
**This meal expense is for a working lunch for seven individuals including four (4) HRO professionals, two (2) expert witnesses retained by W.R. Grace and in-house counsel for W.R. Grace.  The per meal average price is $9.59.**  A copy of the invoice detailing all seven participants will be made available to the Fee Auditor upon request.

10/04/02          Travel Expense: VENDOR:  Linnea Brown, INVOICE#: 100902B; DATE: 10/9/2002 - October 3-4, 2002 Travel Expenses - Pittsburgh, PA for meeting with Rich Lee/Meals.  $156.78
**This meal expense is for three (3) separate occasions.  Included in the $156.78 is a $16.11 lunch expense for two (2) HRO professionals on 10/03/02 (KJC and LB); a $84.25 dinner expense for two (2) HRO professionals on 10/03/02 (KJC and LB); and a $56.42 lunch expense for two (2) HRO professionals (KJC and LB) and W.R. Grace's in-house counsel.  The per meal average price is $22.40.**  A copy of the invoices detailing all seven meals will be made available to the Fee Auditor upon request.

10/31/02          Travel Expense: VENDOR:  Robert Fellinger; INVOICE#: 110102; DATE: 11/1/2002 - Site preparation for Missoula Trial/Meals - Dinner for R. Fellinger and C. Thorne.  $110.70
**This meal expense is for two (2) HRO professionals for two (2) days, including travel, in Missoula.**  A copy of the invoices detailing these expenses will be made available to the Fee Auditor upon request.

11/26/02          Other Meal Expense: VENDOR:  Lund, Kenneth W; INVOICE#: 1111/26/02; DATE:  11/26/2002 - Dinner with David Siegel, Bill Corcoran, Jay Hughes, Richard Finke, Richard Sentfleben, Gary Graham, Nea Brown and Ken Lund (Sullivan's) (Avg. $39.00 per person)  $315.96
**This meal expense is for dinner for two (2) HRO professionals and six (6) W.R. Grace employees or representatives to discuss issues and strategy with respect to the Missoula case.**  A copy of the invoice detailing

this expense will be made available to the Fee Auditor upon request.

12/03/02          Travel Expense: VENDOR:  Lund, Kenneth W; INVOICE#: 112602; DATE: 12/03/2002 - TE:  Attend meetings with Grace in Columbia, MD.  Dinner with Bill Corcoran, David Siegel, Bob Emmett, Richard Finke, LBrown and KWLund to continue case strategic planning discussions (Avg. $68.00 per meal).  $412.54 **This meal expense is for two (2) HRO professionals and six (6) W.R. Grace employees or representatives to discuss issues and strategy with respect to the Missoula case.**  A copy of the invoice detailing this expense will be made available to the Fee Auditor upon request.

Response Exhibit 5

The time periods covered in this Interim Period were particularly time-sensitive and time-consuming because HRO was in the final stages of preparing for trial. As discussed briefly above, trial preparation was further complicated by a variety of factors. The United States continued to produce documents and other relevant discovery well after the discovery deadline – materials that HRO was forced to review and assimilate in order to defend W.R. Grace. Judge Molloy issued a very late ruling (December 16, 2002) granting portions of the United States' requests for summary judgment. This ruling changed the focus of the trial from EPA's activities (i.e., were they consistent with the NCP, arbitrary and capricious) to the government's cost accounting practices. However, since the Court issued its ruling before discovery had closed (additional days of deposition were still pending), it was appropriate to seek reconsideration of that ruling in light of additional evidence developed during the depositions. Consequently, the trial team had to prepare, in essence, for two trials – both the reduced scale cost accounting trial and the full fledged trial focusing on EPA's activities, albeit with somewhat less vigor since it seemed unlikely the Court would reconsider its earlier decision. In addition, it was prudent to examine options for appeal and determine whether an interlocutory appeal was possible or appropriate.

The paralegals played a key role throughout this case, helping the attorneys prepare for depositions, cite checking briefs and other documents, reviewing the never-ending flood of documents produced by the government and assessing their applicability to various case issues, responding to various requests from attorneys, the client and the experts, and generally assisting the trial team in its preparations for trial. Exhibit A identifies paralegal overtime charges for a variety of individuals.

MaryBeth Floyd (MF) is an expert in legal citation and provided considerable assistance in preparing various briefs including the proposed findings of fact, which have changed numerous times as a reflection of the Court's rulings. Ms. Floyd also assisted with countless other tasks including document review and the data review project.

Natalie Aberle (NA) was a member of the trial team. She managed the temporary paralegals on document review tasks, assisted with the data review project, prepared and revised the witness and exhibits lists, and worked with the attorneys in locating and finalizing the exhibits for trial.

Corina Aschenbrenner (CA), Dyan Davidson (DD), Carla Latuda (CL), Paula Stacey (PS), Faye Proctor (FP), and Imelda Mulholland (IM) assisted with the data review project which required careful review of all sampling and analysis data sheets, field records, and related documents to sort through them, match them up with actual data, and provide in a coherent fashion to our data expert. EPA had collected hundreds of thousands of data points but had not been diligent in tracking the information in a useable database. Defendants, therefore, had to cull through the paper to determine which samples were valid and which had serious data quality errors. The project was condensed into a shorter time frame because EPA had initially promised a database that included all this information.

Ann Carroll (AC) was a member of the trial team who focused on data and documents. She also assisted with the data review project. Ms. Carroll assisted with the witness and exhibit lists, collected trial exhibits, and was generally available to assist with miscellaneous tasks related to trial preparation.

Carla Latuda (MCL) assisted with a variety of other projects and contributed considerable institutional knowledge since she had been involved with the case since EPA made its first document request in December 1999.

Joan Sherman (JS) provided the most varied assistance.  As a member of the trial team, she focused her efforts in assisting with expert witness preparation (since most of the experts did not ultimately testify at the reduced-scale trial, Ms. Sherman volunteered to abstain from participation at trial).  Ms. Sherman has assisted Ms. Brown at several trials and understands all that is involved in preparing for actual trial.  Exhibit A reflects her overtime charges for September through December because she was too busy during most of those months to set aside the time to submit the requests (although all her time is reflected in daily billing records maintained concurrently).  Ms. Sherman's overtime requests include time spent assisting with depositions and other discovery in September (as well as the two late days of deposition for Peronard and Weis).  She also assisted, when able, with the data review project.  Ms. Sherman also assisted with exhibit preparation and expert witness preparation during November and December 2002.

Due to the time-critical nature of the tasks being performed by the paralegals in preparation for the cost-recovery trial, the overtime was necessary and beneficial to the estate.  Such time was extraordinary due to the trial and should be reimbursed by the estate.