**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF CASNER & EDWARDS, LLP**
**FOR THE SEVENTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Interim Fee Application of Casner & Edwards, LLP for the Seventh Interim Period</u> (the "Applicant").

**BACKGROUND**

1. Casner & Edwards, LLP ("Casner & Edwards") was retained as special litigation counsel to the Debtors. In the Application, Casner & Edwards seeks approval of fees totaling $120,006.00 and costs totaling $45,832.30 for its services from October 1, 2002, through December 31, 2002.

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for

consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Casner & Edwards an initial report based on our review and received a response from Casner & Edwards, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3. In our initial report, we noted that the time entries were generally adequately detailed and devoid of lumping, except for the occasional lumped entry and lack of detail by ARA and EKL. Rule 2016-2(d) of the Delaware Local Rules states "activity descriptions . . . shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary . . ." This issue has been raised in previous reports, and we have advised certain professionals to provide more detailed time entries. We again asked that Casner & Edwards continue to advise all of its professionals regarding this matter. Casner & Edwards responded as follows:

```
I showed ARA your comment and reminded her to avoid
"lumping" whenever possible.  I take responsibility
for EKL's lumping and I will explain why that happened
in 5, below.
```

We appreciate the response.

### Specific Time and Expense Entries

4. In our initial report, we noted that between October 3, 2002, and December 13, 2002, ARA ($80), RAM ($80) and GRB ($80) performed tasks that may not be compensable. The total time spent was 52.5 hours for $4,200.00. See Exhibit A. Paragraph II.E. 7.of the Guidelines states, "[f]actors

relevant to a determination that the expense is proper include the following: . . .Whether the expenses appear to be in the nature of nonreimbursable overhead . . . Overhead includes word processing, proofreading, secretarial and other clerical services, . . . ." We asked Casner & Edwards to review Exhibit A and explain why these tasks should be compensable. Casner & Edwards' response is provided as Response Exhibit 1. We appreciate the depth of the response, and we concur that two errors were made when we transcribed the fee detail to construct our Exhibit A. The entry for RAM should have been for ARA, and ARA's time for November 4, 2002, is listed twice. We regret the resulting confusion. Further, we generally accept Casner & Edwards' arguments for compensability for most of the listed entries. However, for ARA's time entries that reflect "prepare boxes" (2.8 hours on 10/9/02), "organize boxes" (.9 hours on 11/4/02) and "receipt of attic insulation bags"(1.0 hours on 11/19/02), we maintain that those tasks should not be compensable. We therefore recommend a reduction of $376.00 in fees.

5. In our initial report, we noted that between October 29, 2002, and November 11, 2002, EKL ($80) spent 54 hours for $4,320.00 obtaining documents for RAM and MTM. The entries are provided below.

| | | | | |
|---|---|---|---|---|
| 10/29/02 | EKL | 7.5 | 600.00 | Obtain documents requested by RAM. |
| 10/30/02 | EKL | 7.5 | 600.00 | Obtain documents requested by RAM(3.5). Obtain documents requested by MTM(4.0) |
| 11/4/02 | EKL | 7.5 | 600.00 | Obtain documents requested by RAM. |
| 11/5/02 | EKL | 5.5 | 440.00 | Obtain documents requested by RAM. |
| 11/6/02 | EKL | 7.5 | 600.00 | Obtain documents requested by RAM. |
| 11/7/02 | EKL | 7.0 | 560.00 | Obtain documents requested by RAM. |
| 11/8/02 | EKL | 7.0 | 560.00 | Obtain documents requested by RAM. |
| 11/11/02 | EKL | 4.5 | 360.00 | Obtain documents requested by RAM. |

Not only is there insufficient detail in the entries, but the time seems to have been billed in half-hour and full-hour increments. Rule 2016-2(d) of the Delaware Local Rules states "activity descriptions . . . shall be

**FEE AUDITOR'S FINAL REPORT** - Page 3
wrg FR Casner 7int 10-12.02.wpd

sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual,

reasonable, and necessary . . ."  Further, Paragraph II.D.5. of the Guidelines states, "[t]ime entries should

be kept contemporaneously with the services rendered in time periods of tenths of an hour...."  We asked

Casner & Edwards to provide sufficient detail regarding the cited entries so that they could be assessed

for compensability.  We also requested that they advise us as to the reason these time entries were not kept

in tenths of an hour.  Casner & Edwards replied as follows:

```
     Grace  agreed  to  use  its  work  product  means  to  obtain
documents
requested by the ZAI plaintiffs.  That is the work EKL was doing
on 10/30 at the request of MTM (Matthew Murphy).  The rest of
EKL's time on 10/29 through 11/11 that is questioned was work
done at my request.  I mentioned earlier that plaintiffs had
requested information concerning 19 present and former Grace
employees. An in-house Grace counsel intended to interview some
of these people,
particularly several about whom he did not have much knowledge
or
information.  He asked me to put together a collection of
documents  for  those  people  to  help  him  prepare  for  the
interviews.  Using  work  product  means,  lists  of  documents
referencing these individuals were prepared.  I reviewed the
lists and indicated documents that should be searched for and
obtained for in-house counsel's use.  EKL did that work at my
request, as indicated, on October 29-November 11.  Because I
wanted to protect the confidentiality of the use of work product
means, I had EKL describe his work in the general way that he
did.
     Both EKL and GRB are temporary paralegals hired by this firm
to work on the Grace project.  They make it a practice, in
general, to work to the clock and they record the time they
actually work.
```

We appreciate the response and have no objection to these fees.

## CONCLUSION

6.        Thus, we recommend approval of fees totaling $119,630.00 ($120,006.00 minus $376.00)

and costs totaling $45,832.30 for Casner & Edwards' services from October 1, 2002, through December 31, 2002.

> Respectfully submitted,
>
> **WARREN H. SMITH & ASSOCIATES, P.C.**
>
> By: _____
> Warren H. Smith
> Texas State Bar No. 18757050
>
> Republic Center
> 325 N. St. Paul, Suite 4080
> Dallas, Texas  75201
> 214-698-3868
> 214-722-0081 (fax)
> whsmith@whsmithlaw.com
>
> **FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 15th day of April, 2003.

_____
Warren H. Smith

# SERVICE LIST
Notice Parties

**The Applicant**

Robert A. Murphy
CASNER & EDWARDS, LLP
303 Congress Street, 2nd Floor
Boston, MA 02210

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

| Date | Initials | Description | Hours | Amount |
|---|---|---|---|---|
| 10/17/02 | ARA | ……Per RAM's request, review Grace directories for any reference to two people (1.5). | 1.9 | 152.00 |
| 10/18/02 | RAM | ……Quality control original documents re:science trial production(2.9). | 5.2 | 416.00 |
| 10/03/02 | ARA | Quality control copy sets of documents received from copy service(2.6);... | 3.6 | 288.00 |
| 10/04/02 | ARA | Quality control and organize original documents received from copy service after production (4.8);... | 5.5 | 440.00 |
| 10/09/02 | ARA | Prepare eleven boxes of documents for shipment to plaintiffs (2.8);…….contact Federal Express re:same (.1). | 4.4 | 352.00 |
| 10/22/02 | ARA | Quality control and organize documents after production. | 2.0 | 160.00 |
| 10/28/02 | ARA | Quality control and organize originals that plaintiffs reviewed during production(2.4). | 3.6 | 288.00 |
| 10/29/02 | ARA | Quality control and organize documents after production  (5.1). …… | 6.0 | 480.00 |
| 11/04/02 | ARA | Receipt of 9 boxes of documents from Cambridge to be reviewed | 5.2 | 416.00 |
| 11/4/02 | ARA | ……organize boxes of unscannable material in one location (.9)……Quality control Sales Outside U.S. Documents(1.0). | 5.2 | 416.00 |
| 11/08/02 | ARA | Quality control production set documents. | 3.5 | 280.00 |
| 11/19/02 | ARA | Quality control documents after production to ZAI plaintiffs(2.7). Receipt of attic insulation bags for storage at Winthrop Square (1.0). | 3.7 | 296.00 |
| 12/12/02 | GRB | Quality control list of approximately 1300 boxes of documents at Cambridge. | 8.0 | 640.00 |
| 12/13/02 | GRB | Quality control list of approximately 1300 boxes of documents at Cambridge. | 6.0 | 480.00 |
| 12/18/02 | ARA | ... Quality control documents (.3) | 1.3 | 104.00 |

Response Exhibit 1

    Please note that you write that a total of 52.5 hours costing $4,200 was spent on "... tasks that may not be compensable."  I can not determine from Exhibit A how the amount of time was calculated.  For example, the amount of time indicated in the body of the description for the daily entries or partial entries (which I assume are the ones being questioned)do not match up with the hours listed.  The listed hours are the total of all the work the professional performed that day and not solely the questioned work.  Second, total hours for ARA on 11/4/02 are listed twice.  Therefore, the explanations appearing below are for those portions of each day's work that is described in Exhibit A.  If you need additional information on any particular day, please let me know.

    I am RAM and my hourly rate in October 2002 was $210 and not $80.  I did not have any entry for 2.9 hours on October 18, but ARA did so I will assume your inquiry has to do with her time on that date.  ARA is Angela R. Anderson who is the resident custodian at Grace's Winthrop Square document repository and the day to day on-site supervisor.  Among her many responsibilities (since she is the only full time paralegal at this firm who is still working on Grace's document related matters) are to prepare for the production of documents to plaintiffs, monitor productions, arrange for the copying of documents requested by plaintiffs' counsel, insure the quality of the copying done by the outside copying service, inventory the original documents being returned and then replace the original documents that were copied to their correct location within the hundreds of boxes of documents at the repository.

    I am conscious of the Guidelines that not all work is compensable or reimbursable.  I review all of the time charges of the people who are working on Grace's matters and reduce time when I believe it should not be charged to the client.  For example, on the days that some of ARA's time is being questioned, I made the following reductions in her time before submitting the fee applications for approval:  10/3 - 1.0 hours; 10/4 -1.0 hour; 10/9 - 0.6 hour; 10/28 - 0.6 hour; 11/4 - 1.10 hours and amounts
less than 0.5 hour on several other days.

    In October 2002, plaintiffs in the ZAI Science Trial served
discovery requests on Grace.  Among the requests was one that

**FEE AUDITOR'S FINAL REPORT** - Page 9
wrg FR Casner 7int 10-12.02.wpd

asked for the last known address, phone number, status and other information concerning 19 former and present Grace employees, some of whom are dead. For those who were not well known to Grace counsel, efforts were made to find out where and when they worked for Grace.  One part of that effort was to review Grace phone directories from years ago.  That is what ARA was doing on 10/17 at my request.

There was a production of documents to the plaintiffs in the ZAI Science trial that lasted for about two weeks in September.  Subsequently the documents that the plaintiffs tagged for copying were sent to the copy service.  After being copied, the originals were returned to Winthrop Square and ARA checked on the quality and completeness of the copying, the condition and completeness of the original documents, and then returned the original documents to the folders and the folders to the boxes from which the documents were obtained.  The after copying work, just described, is the "Quality Control..." work done by ARA on 10/3, 4, 18,19, 22, 28 and 29, and listed on Exhibit A.

On 10/9, ARA quality controlled, organized, boxed and labelled the boxes of documents that had been copied at plaintiffs' requests for shipment to plaintiffs' counsel via Federal Express.

As mentioned above, ARA's time on 11/4 is listed twice. On 11/1, she and an in-house counsel were reviewing documents at Grace, Cambridge. It appeared that some of the documents may not have been included in earlier comprehensive reviews so arrangements were made to ship them to the Winthrop Square repository for a detailed review.  When they arrived at Winthrop Square on 11/4, ARA compared them against notes she had made in Cambridge to insure that all were shipped (Receipt of 9 boxes ...(.5)), then she organized them to be reviewed (prepare documents ...(1.0)) and instructed a temporary paralegal in what to do (conference with paralegal ... (.5)).

Also on 11/4, she was told by attorney Matthew Murphy (MTM) that boxes of unscannable material would be sent to Winthrop Square from Boulder, Colorado for storage and a possible later review by plaintiffs in the ZAI Science trial. The vast majority of documents that were reviewed for the EPA and Chapter 11 cases were scanned and produced to plaintiffs on disks.  Documents and other material that were too large, fragile, bulky or whatever to be scanned were called "unscannable material."  At MTM's instructions, ARA, on this day, organized other unscannable material in Winthrop Square into one location so that the material coming from Boulder could be stored in the same location and be accessible in one

place for any later review by plaintiffs' attorneys. "Sales Outside U.S." is the name given to a subset of Grace documents that have been made available to
plaintiffs for many years. At one point, most of these documents were sent to Boulder, Colorado in connection with the EPA cases. Subsequently, they were returned to Winthrop Square and ARA spent one hour performing the same quality control functions, described above, as to some of these documents.

On 11/8, ARA recorded 3.5 hours as "Quality control production set documents." This is different from the quality control work described above. Whenever she is not involved in performing other work, ARA has been told to spot check the hundreds of boxes that contain the documents that have been produced to plaintiffs for almost 20 years. As you would imagine, because of all the productions, copying and handling of documents over these years, documents are not always where they are supposed to be. ARA periodically checks the boxes and makes sure the documents are in order. On this particular day, she did this type of work because she and the temporary paralegals who were looking for original documents concerning the former employees, mentioned above, noticed that some of the production set documents were out of sequence.

On 11/19, ARA logged in bags of ZAI that were received at Winthrop Square and prepared them to be stored at that location. She recorded 1.0 hours for this work.

On 12/18, ARA assisted the two temporary paralegals in searching for and obtaining documents requested by ZAI plaintiffs' counsel. A brief amount of ARA's time on that day (.3) was spent "quality controlling" some of the documents as she prepared them to be sent to the copy service.

As part of the wrap up of the document review, inventories were prepared of the many sets and subsets of Grace's documents that this firm is responsible for maintaining. One such inventory was prepared for documents stored in the basement of a building in Cambridge, Massachusetts that used to be the headquarters of Grace's Construction Products Division. On 12/12 and 12/13, GRB reviewed this inventory for accuracy and to put it in final form.