**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF KIRKLAND & ELLIS**
**FOR THE SEVENTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Fee Application of Kirkland & Ellis for the Seventh Interim Period.

**BACKGROUND**

1. Kirkland & Ellis was retained as counsel to the Debtors. In the Application, Kirkland & Ellis seeks approval of fees totaling $459,440.50 and costs totaling $18,595.84 for its services from October 1, 2002, through December 31, 2002.

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for

consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Kirkland & Ellis an initial report based on our review and received a response from Kirkland & Ellis, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.       In our initial report, we noted that Kapp, Landau and Lane often failed to provide adequate detail in their time entries. Paragraph II.D.5. of the Guidelines states, ".... Services should be noted in detail ..., with each service showing a separate time entry; ...." We asked Kirkland & Ellis to remind these professionals of the need to provide sufficient detail in each time entry. Kirkland & Ellis responded as follows:

> K&E has worked, and will continue to work, with its professionals to endeavor to be more descriptive of their tasks.

We appreciate the response.

4.       We further noted that Kapp, Pope, Anderson and Patrevito often tended to lump their time entries. Local Rule 2016-2(d)(vii) provides that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." This issue has been addressed with certain professionals in previous applications, and, for the most part, it is those same professionals who continue to lump their entries. We asked Kirkland & Ellis to advise these timekeepers to avoid lumping time entries in the future. Kirkland & Ellis responded as follows:

K&E has worked, and will continue to work, assiduously to avoid lumping time in its entries to ensure that time is kept in tenth of an hour increments.

5. In our initial report, we noted that Kirkland & Ellis billed $29,474.00 to the project category Fee Applications/Applicant. The billing in this category represents 6.4% of the total fees requested in the Application, compared to 12% of total fees in the previous interim application. We congratulated Kirkland & Ellis for this substantial percentage reduction, but also stated that we expected that this percentage would be reduced further in future applications.

6. We noted that Kapp had numerous entries for "review pleadings and correspondence and distribute same." While we do not question a specific monetary amount for these entries in this report, we would suggest that a $470.00-per-hour attorney should not be distributing correspondence. We asked Kirkland & Ellis to review the present procedure with regard to the most prudent and economic use of staff. Kirkland & Ellis' response is provided below.

> The Initial Report notes certain time entries by Mr. Kapp for "review pleadings and correspondence and distribute same." Mr. Kapp, a bankruptcy specialist and K&E partner, supervises the bankruptcy team and is generally responsible for all bankruptcy-related matters in these chapter 11 cases. A knowledgeable individual must review certain documents and correspondence to determine which members of the K&E team should receive and attend to issues presented in such materials. In most cases, notwithstanding his billing rate, Mr. Kapp is the most cost-efficient person to perform this task because of his knowledge of the responsibilities of the various members of the K&E team. This role is primarily reflected in the K&E fee application detail in the entries such as "review pleadings and correspondence and distribute same." Nonetheless, K&E will continue to endeavor to ensure that staff is used in the most prudent and economic manner.

We appreciate the response, though we note that it does not address the primary issue of Mr. Kapp distributing materials. We concur that Mr. Kapp may be the most cost-efficient person to review pleadings

**FEE AUDITOR'S FINAL REPORT** - Page 3
wrg FR K&E 7int 10-12.02.wpd

and correspondence, but we will continue to question whether he should be billing for distributing them to other firm professionals.

Specific Time and Expense Entries

7.   In our initial report, we noted that on October 8, 2002, Alethia V. Anderson ($95) and Rhonda A. Bledsoe ($200) engaged in training activities that may not be compensable. The total time spent was 2.0 hours for $295.00. The entries are provided below.

| 10/08/02 | Aletheia V Anderson | 1.00 | Internal conference with R. Bledsoe and BMC re B-Linx access and claims procedures. |
|---|---|---|---|
| 10/08/02 | Rhonda A. Bledsoe | 1.00 | Conference and training with BMC re B-Linx |

We view training as a normal overhead item and therefore not compensable. Like recruitment, it is an inherent cost of doing business. We realize that in this instance the waters are a little muddied, since BMC appears to be training K&E personnel in a particular and specialized area. However, while it is arguable which firm should absorb the training cost, BMC or K&E, we are not convinced that the bankruptcy estate should be responsible for this training. We asked Kirkland & Ellis to explain why this time should be billable to the estate. The response is provided below.

> The Debtors have received thousands of proofs of claims. BMC was retained to develop and maintain a database to catalog the proofs of claims. To that end, BMC designed a customized database to meet the Debtors' specific needs. K&E will be called upon to assist in the process of analyzing, objecting to and resolving the filed claims and thus will be required to have individuals knowledgeable in the use of the BMC claims database. Ms. Anderson and Ms. Bledsoe received specific instruction from BMC on the proper and efficient use of the Debtors' customized claims database. Such instruction will allow K&E staff to review and respond to proofs of claims in a more expedient and efficient manner, and therefore, constitutes a benefit to the Debtors' estate. Such instruction did not bestow

on Ms. Anderson or Ms. Bledsoe a general skill that will be useful in assisting any entity other than the Debtors.

We appreciate the response and have no objection to these fees.

8. In our initial report, we noted that between October 21 and November 13, 2002, Anderson ($95), Lane ($410) and Kapp ($470) billed for time spent on conflict checks and/or professional retention. Total time billed was 8.40 hours for $2,044.00. See Exhibit A. U.S. Bankruptcy Code §330 (4)(A) (ii) (I) provides that "(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for – . . .(ii) services that were not – (I) reasonably likely to benefit the debtor's estate; . . ." We asked Kirkland & Ellis to explain how these activities benefitted the estate rather than Kirkland & Ellis. Kirkland & Ellis' response is provided as Response Exhibit 1. We appreciate the response and thus have no objection to these fees.

9. We further noted a number of travel expenses for which there is insufficient information to reasonably assess the entries. Those in question are provided below.

10/01/02    85.00    DAVID M BERNICK , P.C. - Travel Expense, Newark, NJ, 9.24.02 (Attend Grace Hearing)

We asked Kirkland & Ellis to provide detail as to what this expense covers.

10/04/02    64.00    EUREST - Working Meals/K&E and Others, 9/06/02, J. Baer, Beverage Setup, 8

We asked Kirkland & Ellis to provide detail as to the nature of the beverage setup.

10/21/02    137.70 JANET BAER - Travel Expense, Boca Raton, Fl, 10/15/02 to 10/16/02, (Deposition)

We asked Kirkland & Ellis to provide detail as to what this expense covers.

12/02/02    130.33 JANET BAER - Transportation to/from airport, Boca Raton, FL,

**FEE AUDITOR'S FINAL REPORT** - Page 5
wrg FR K&E 7int 10-12.02.wpd

        10/16/02 supplement report (Attend F. Finke Deposition)

12/02/02   108.56 JANET BAER - Transportation to/from airport, Boca Raton, FL,
        10/16/02 supplement report (Attend F. Finke Deposition)

We asked Kirkland & Ellis to provide detail as to the number of trips to/from the airport described by the two entries, as well as the mode of transportation and any relevant date information not contained in the entries. The response is provided below.

> In response to the first expense entry, Mr. Bernick's travel expense was for transportation via Boston Coach car to the airport in Chicago and from the airport in Newark via taxicab to the courthouse for the September 24 hearing. In response to the second entry, the "Beverage Setup" was for conference room food and beverages provided for a meeting. The expense was inadvertently included in Matter 42, Travel, Non-Working instead of Matter 52, Expenses and should be moved to Matter 52. In response to the third entry, the $137.70 travel expense for Ms. Baer is for hotel accommodations in Boca Raton, Florida to attend the deposition of Richard Finke. In response to the final entry, Ms. Baer was taken via Boston Coach car from Ft. Lauderdale International Airport to the hotel in Boca Raton, Florida and then returned to the airport the following day, a trip that can take almost an hour under even the best of traffic conditions. The use of Boston Coach cars for such travel is entirely reasonable and is routinely billed in bankruptcy cases such as these chapter 11 cases.

We appreciate the response and have no objection to these costs, except for the October 4, 2002, expense entry for beverage setup. Other than stating that the expense was inadvertently included in the wrong category, it does not offer supporting detail regarding the meeting or the nature of the beverage setup. We see no choice but to recommend a reduction of $64.00 in costs.

  10.  In our initial report, we noted an overtime transportation charge of $64.10 for Stephen Ritchie dated September 26, 2002. The entry is provided below.

9/26/02   64.10  Crown Coach - Overtime Transportation, Stephen L. Ritchie, P.C.

Paragraph II.E.1.of the Guidelines states, ". . .[f]actors relevant to a determination that the expense is proper include the following: 1. Whether the expense is reasonable and economical. For example, first class and other luxurious travel mode or accommodations will normally be objectionable."

There are many entries for overtime transportation listed throughout the Application, but this one seems to be much higher than any of the others. We asked Kirkland & Ellis to explain any unusual circumstances that would necessitate an overtime transportation charge this high. Kirkland & Ellis replied as follow:

> With respect to the expense entry listed in paragraph 10, a further review of the firm's records has revealed that the $64.10 transportation expense was incorrectly charged to the Grace matter. This amount should be stricken from the October Fee Application.

We appreciate the response and thus recommend a reduction of $64.10 in costs.

11.     In our initial report, we noted a secretarial overtime charge of $37.32 for B. Brown dated October 18, 2002. The entry is provided below.

10/18/02        37.32   BROWN, B. - Copying, tabs and binder.

Paragraph, II.E.7.of the Guidelines states, "[f]actors relevant to a determination that the expense is proper include the following: . . Whether the expenses appear to be in the nature of nonreimbursable overhead . . . Overhead includes word processing, proofreading, secretarial and other clerical services, . . ." We asked Kirkland & Ellis to explain why this expense should not be viewed as clerical and therefore not reimbursable. Kirkland & Ellis' response is provided below.

> The expense entry listed in paragraph 11 of the Initial Report is for overtime secretarial support. K&E does not, consistent with the U.S. Trustee Guidelines, charge for secretarial services provided during the normal workday. As discussed in previous responses to the Fee Auditor, however, overtime for secretaries is routinely billed as a separate line item when the time is spent on a particular client in response to a particular client requirement. Indeed, as the fee application reflects, these chapter 11 cases have required extensive overtime work by all concerned at K&E, whether attorneys, paralegals or secretarial staff,

especially in the various litigation matters. These services are nonetheless distinct from, and in addition to, nonreimbursable secretarial support for attorneys that should not be, and is not, reflected as a separate line item.

We appreciate the response and have no objection to these charges.

## CONCLUSION

12. Thus, we recommend approval of fees totaling $459,440.50 and costs totaling $18,467.74 ($18,595.84 minus $128.10) for Kirkland & Ellis' services from October 1, 2002, through December 31, 2002.

            Respectfully submitted,

            **WARREN H. SMITH & ASSOCIATES, P.C.**

By: /s/ Warren H. Smith
            Warren H. Smith
            Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 4080
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 15th day of April, 2003.

                                        Warren H. Smith

## SERVICE LIST
Notice Parties

**The Applicant**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

| Date | Name | Hours | Description |
|---|---|---|---|
| 10/21/02 | Anderson | .20 | Retrieve and review conflicts information for attorney use in updating central conflicts database. |
| 10/23/02 | Anderson | 6.00 | ...; retrieve information re professionals and committees and update central conflicts database for attorney's review (1.0);... |
| 10/25/02 | Anderson | .30 | Attention to matters re retention order retrieval and organization for conflicts update. |
| 10/28/02 | Anderson | 1.40 | Analyze docket and order binders re retention of professionals in main and adversary case and update conflicts database re same. |
| 10/29/02 | Anderson | .50 | Update and revise conflicts list re committees. |
| 10/31/02 | Anderson | .40 | Draft correspondence re conflicts issues and update of central conflicts database (.2);... |
| 1/07/02 | Anderson | 1.00 | ... conferences re: conflicts project and professional listing (.2); analyze conflicts list and update re: professionals and committees (.8) |
| 1/05/02 | Lane | .50 | ... attend to various issues re: professional retention (.5) |
| 11/06/02 | Kapp | .10 | Attend to issues re: Steptoe retention and supplemental affidavit re: same |
| 11/06/02 | Lane | .80 | ... attend to various issues re: professional retention (.8) |
| 11/07/02 | Kapp | .40 | ... attend to issues re: retention of certain ordinary course professionals, including Latham & Watkins (.4) |
| 11/07/02 | Lane | 1.0 | ... telephone conference with ordinary course professional re: procedures for retention and payment (.5); attend to various issues re: professional retention (.5) |
| 11/08/02 | Lane | .50 | ... attend to various issues re: professional retention (.5) |
| 11/11/02 | Lane | .50 | ... attend to various issues re: professional retention (.5) |

Response Exhibit 1

None of the time entries specified on Exhibit A were for the benefit of K&E.

K&E has the responsibility to assist the Debtors and the Debtors' ordinary course and retained professionals in complying with their obligations with respect to conflicts and other retention matters in the bankruptcy case. This responsibility includes, among other related matters, (a) maintaining a list of potential conflicts; (b) consultation with the Debtors regarding proper retention of professionals; and (c) assuring that the professionals have been properly retained.

With respect to the time entries set forth on Exhibit A:

(a)  Ms. Anderson's time entries involved updating the conflicts lists that K&E maintains, and which are used by all of the thirty-odd professionals retained in these chapter 11 cases, together with over fifty ordinary-course professionals. As has been discussed in the responses to the Fee Auditor's reports on both the fifth and sixth Interim Periods, it has become necessary to periodically update these conflicts lists;

(b)  Mr. Kapp's time entries involved the consideration of (i) issues related to a supplemental disclosure affidavit filed by Steptoe & Johnson and (ii) questions relating to the retention of Latham & Watkins as an ordinary course professional, both professionals are providing services to the Debtors during these Chapter 11 Cases; and

Mr. Lane's time entries involved telephone and internal conferences, responding to email correspondence and other time spent as follow-up regarding issues related to the retention of ordinary course professionals, including Latham & Watkins and Deloitte & Touche, and the motion for modification of the order to retain ordinary course professionals.