**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF REED SMITH LLP**
**FOR THE SEVENTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Fee Application of Reed Smith LLP for the Seventh Interim Period.

**BACKGROUND**

1. Reed Smith LLP ("Reed Smith") was retained as special asbestos products liability defense counsel to the Debtors. In the Application, Reed Smith seeks approval of fees totaling $325,159.25 and costs totaling $63,325.59 for its services from October 1, 2002, through December 31, 2002.

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30,

1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Reed Smith an initial report based on our review and received a response from Reed Smith, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3. In our initial report, we noted that there were no serious detail issues.

4. We noted that timekeepers Atkinson and Bentz occasionally lumped their time entries. Local Rule 2016-2(d)(vii) provides that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." We asked Reed Smith to advise these professionals to avoid lumping their time entries in the future. Reed Smith responded as follows:

> All Reed Smith timekeepers have been instructed not to lump their time entries. Reed Smith recognizes that the Fee Auditor has raised these issues in the past. Reed Smith will continue to improve its efforts at providing clear and properly segmented time entries on all future fee applications.

We appreciate the response.

5. In our initial report, we noted that timekeepers Campbell, Rice and Bentz continued to bill in increments other than tenths of an hour. Paragraph II.D.5. of the Guidelines requires that, "Time entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour." This issue was addressed in previous applications, and again we asked Reed Smith to advise all of its timekeepers to comply with this guideline in future applications. Reed Smith's

response is provided below.

> ...Reed Smith acknowledges that on some occcasions, some Reed Smith professionals have billed in increments of one-twentieth (.05) of an hour, rather than a full tenth of an hour, where the time worked by those professionals did not amount to a full rounded amount that could be measured in tenths of an hour. All Reed Smith professionals have been instructed to avoid this practice, and Reed Smith will focus on this issue in preparing future Fee Applications.

We appreciate the response.

Specific Time and Expense Entries

6. In our initial report, we noted that on October 31, 2002, J. Bentz ($300), D. Cameron ($385), A. Muha ($185), and J. Restivo ($430) prepared for and participated in a strategy meeting. The total time spent in preparation and attendance was 15.90 hours for $5,530.00. The entries are provided below.

| Date | Name | Description | Hours |
|---|---|---|---|
| 10/31/02 | Bentz | Attending portions of planning and strategy meeting regarding discovery, pre-trial proceedings, expert and expected motions with R. Finke, J. Restivo, D. Cameron, and A. Muha (3.0);... | 4.40 |
| 10/31/02 | Cameron | Prepare for and chair/attend portions of meeting with R. Finke and (for parts of meeting) J. Restivo, J. Bentz, and A. Muha regarding ZAI Science Trial strategy (3.5);... | 4.30 |
| 10/31/02 | Muha | Attend various portions of strategy and planning meeting for ZAI Science Trial with members of Reed Smith's Grace team and R. Finke, Grace in-house counsel. | 3.10 |
| 10/31/02 | Restivo | Preparation for (3.5) and chair/attend portions of ZAI Science Trial planning meeting (2.8) | 6.30 |

Rule 2016-2(d)(ix) states, "The activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role."

Further, Paragraph II.D.5. of the Guidelines states, ". . .[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." We asked Reed Smith to explain why it was necessary for more than one professional to prepare for and participate in this meeting, as well as addressing the specific role and area of expertise of each. Reed Smith's explanation is provided as Response Exhibit 1. We appreciate the response and have no objection to these fees.

7. We further noted that K. Hindman ($110) and M. Atkinson ($120) performed activities described as "converting, importing and loading databases" and "printing and proofreading". Such tasks may not be compensable. The total time spent was 21.40 hours for $2,427.00. See Exhibit A. Paragraph II. E. 7. of the Guidelines states, "[f]actors relevant to a determination that the expense is proper include the following: . . Whether the expenses appear to be in the nature of nonreimbursable overhead . . . Overhead includes word processing, proofreading, secretarial and other clerical services, . . . We asked Reed Smith to explain why these activities should be considered compensable. Reed Smith's explanation is provided as Response Exhibit 2. We accept the explanation and have no objection to these fees.

8. In our initial report, we noted that Christine Turkaly ($75) lists activities for "organizing and indexing" which may not be compensable. The total time spent was 28 hours for $2,100.00. See Exhibit B. Paragraph II. E. 7. of the Guidelines states, "[f]actors relevant to a determination that the expense is proper include the following: . . Whether the expenses appear to be in the nature of nonreimbursable overhead . . . Overhead includes word processing, proofreading, secretarial and other clerical services, . . . We asked Reed Smith to explain why these activities should be considered compensable. Reed Smith's explanation is provided as Response Exhibit 3.

We accept the explanation and have no objection to these fees,

9. We further noted four entries by Atkinson ($120) for printing or copying documents that may not be compensable. Total time billed was 5.40 hours for $648.00. The entries are provided below.[1]

| Date | Name | Description | Hours |
|---|---|---|---|
| 11/05/02 | Atkinson | Reviewing Summation database for test documents and printing substantive documents for T. Rea review. | 1.30 |
| 11/11/02 | Atkinson | ...; review privilege log for ZAI Science Trial and copies to J. Bentz (2.9). | 6.30 |
| 11/21/02 | Atkinson | ...; copy of complete documents per request of ZAI claimants' counsel (0.2). | .40 |
| 11/22/02 | Atkinson | Reviewing, copies made of privileged documents referenced in Mr. Westbrook's November 22, 2002 faxed letter re: privilege designations (1.0);... | 1.70 |

We asked Reed Smith to explain why time spent printing and making copies of documents should be considered compensable. Reed Smith's response is provided as Response Exhibit 4. We appreciate the response and the voluntary reduction. We therefore recommend a reduction of $120.00 in fees.

10. In our initial report, we noted a number of meal expenses that, without greater explanation, appear excessive. The total is $235.27 for the expenses in question. The entries are provided below.

| Date | Description | Amount |
|---|---|---|
| 10/03/02 | Meal Expense - Meals W/ R FINKE, K COGGON AND CONSULTANT on 9/26 in PGH 2 LUNCHES | 76.50 |
| 10/09/02 | Meal Expense - DOUGLAS E. CAMERON, GRACE IN HOUSE COUNSEL AND DEPONENT (RICH LEE) - LUNCH DURING DEPOSITION BREAK | 43.43 |
| 10/14/02 | Meal Expense - TRIP TO ATLANTA FOR DEPOSITION OF JAMES MILLETTE IN COST RECOVERY ACTION | 47.84 |

---

[1] Because of lumping in the fee detail it was not possible to separate printing/copying time from review time.

|  |  |  |
|---|---|---|
|  | 09/29 - 9/30/02 |  |
| 10/16/02 | Meal Expense: LUNCH ON 9/19/02 (LAWRENCE E. FLATLEY) for witness meeting - - VENDOR: THE COVENTRY DELI | 67.50 |

Paragraph II.E.1.of the Guidelines states, ". . .[f]actors relevant to a determination that the expense is proper include the following: 1. Whether the expense is reasonable and economical..." In keeping with that guideline, we have suggested $15 per person for breakfast, $25 per person for lunch and $35 per person for dinner as reasonable ceilings for meal expenses charged to the bankruptcy estate. For the expenses in question, we asked Reed Smith to provide sufficient documentation so that we might assess the reasonableness of the reimbursement requests. That documentation is provided as Response Exhibit 5. We appreciate the response and have no objection to these expenses.

11.     Finally, we noted a taxi expense of $120.00 dated November 26, 2002, which appears excessive. The entry is provided below.

|  |  |  |
|---|---|---|
| 11/26/02 | Taxi Expense - GRACE OMNIBUS HEARING IN WILMINGTON, DE 11/25 | 120.00 |

Paragraph II.E.1.of the Guidelines states, ". . .[f]actors relevant to a determination that the expense is proper include the following: 1. Whether the expense is reasonable and economical..." We asked Reed Smith to provide appropriate detail for this expense so that we might assess its reasonableness. Reed Smith's response is provided below.

> The Fee Auditor also notes that Reed Smith seeks reimbursement in the amount of $120.00 for a taxi fare expense entered on November 26, 2002, but that insufficient explanation of the expense makes the expense appear excessive. The fare was incurred in relation to the attendance of attorney Restivo at the November omnibus hearing, which was held in Wilmington, Delaware. Attorney Restivo flew from Pittsburgh to Philadelphia, Pennsylvania on the morning of the hearing, and then traveled by taxi to the courthouse in Wilmington to attend the hearing; after the

hearing, he returned to Philadelphia for their return flight by a second taxi trip. The overall cost of these taxi fares was less than the cost of renting a car to drive from Philadelphia to Wilmington, and therefore the Debtors were spared some expense in attorney Restivo's travel to the hearing. Additionally, travel by taxi enabled attorney Restivo to travel to the hearing on the day of the hearing, as opposed to incurring the cost of an overnight stay, to ensure their timely arrival for the morning hearing.

We appreciate the response and have no objection to this expense.

## CONCLUSION

12. Thus, we recommend approval of fees totaling $325,039.25 ($325,159.25 minus $120.00) and costs totaling $63,325.59 for Reed Smith's services from October 1, 2002, through December 31, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
Warren H. Smith
Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 4080
Dallas, Texas 75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 17th day of April, 2003.

_____
Warren H. Smith

# SERVICE LIST
## Notice Parties

**The Applicant**

Richard Keuler, Esq.
Reed Smith LLP
1201 Market Street, Ste. 1500
Wilmington, DE 19801

Douglas Cameron
Reed Smith LLP
P. O. Box 2009
Pittsburgh, PA 15230-2009

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

| Date | Name | Description | Hours |
|---|---|---|---|
| 10/17/02 | K. Hindman | Converted an Access database received from HRO to text and imported 2,121 into the WR Grace Test Load 2 database for use in relation with cost recovery action. | .30 |
| 10/03/02 | K. Hindman | Created a Text Merge database and imported the corrected data from On-Site Sourcing for use`in connection with Science Trial document production. | .30 |
| 10/07/02 | K. Hindman | Created a new Summation database for the Lason Production set for ZAI Science Trial, and load data and images into litigation database, with attention to performing maintenance checks and searching for missing data. | 3.00 |
| 10/08/02 | K. Hindman | Deverlop Summation database for the Lason Production set for ZAI Science Trial, and load data and images into litigation database, with attention to performing maintenance checks and searching for missing data. | 1.50 |
| 10/09/02 | K. Hindman | Work on Summation database for the Lason Production set for ZAI Science Trial, and load data and images into litigation database, with attention to performing maintenance checks and searching for missing data. | 4.00 |
| 10/10/02 | K. Hindman | Work on Summation database for the Lason Production set for ZAI Science Trial, and load data and images into litigation database, with attention to performing maintenance checks and searching for missing data. | 5.00 |
| 10/11/02 | K. Hindman | Work on Summation database for the Lason Production set for ZAI Science Trial, and load data and images into litigation database, with attention to performing maintenance checks and searching for missing data. | 4.00 |
| 10/12/02 | Atkinson | ...; queries in Summation database for privileged | 3.00 |

|          |          |                                                                                                                                                           |      |
|----------|----------|-----------------------------------------------------------------------------------------------------------------------------------------------------------|------|
|          |          | attic documents and printing, review of these documents (1.2); proofreading, revising privilege log for attic insulation documents (.5).                  |      |
| 10/14/02 | Atkinson | reviewing, printing additional documents re: privilege log (.2); training of paraprofessionals in review of documents for production (.8);...             | 1.90 |
| 10/16/02 | Atkinson | Organizing documents reviewed by paraprofessionals for interim storage pending further use as part of document production and trial preparation.          | .60  |

Exhibit B

| Date | Name | Description | Hours |
|---|---|---|---|
| 10/21/02 | Turkaly | Review and organize case file materials and prepare index for same for litigation support in cost recovery action | 1.00 |
| 19/22/02 | Turkaly | Review and organize case file materials and prepare index for same for litigation support in cost recovery action | 2.00 |
| 10/23/02 | Turkaly | Review and organize case file materials and prepare index for same for litigation support in cost recovery action | 4.00 |
| 10/24/02 | Turkaly | Review and organize case file materials and prepare index for same for litigation support in cost recovery action | 4.00 |
| 10/28/02 | Turkaly | Review and organize case file materials and prepare index for same for litigation support in cost recovery action | 1.00 |
| 10/30/02 | Turkaly | Review and organize case file materials and prepare index for same for litigation support in cost recovery action | 4.00 |
| 10/31/02 | Turkaly | Review and organize case file materials and prepare index for same for litigation support in cost recovery action | 3.50 |
| 11/01/02 | Turkaly | Review Grace litigation materials for factual information and organize and prepare index of same. | 4.00 |
| 11/04/02 | Turkaly | Review Grace litigation materials for factual information and prepare index of same. | 3.00 |
| 11/05/02 | Turkaly | Review Grace litigation materials for factual information and prepare index of same. | 1.50 |

Response Exhibit 1

**Multiple Reed Smith Professionals' Attendance at Meeting (Inquiry No. 6)**: In his Initial Report, the Fee Auditor noted that on October 31, 2002, four Reed Smith professionals (James J. Restivo, Jr., Douglas E. Cameron, James W. Bentz, and Andrew J. Muha) prepared for and/or attended the same meeting, for a total of 15.90 hours and $5,530.00. The October 31, 2002 meeting, which was also attended by Richard Finke, the Debtor's in-house counsel, focused on the progress of many issues relating to planning, scheduling and strategy for the upcoming ZAI Science Trial, for which Reed Smith is serving as the Debtors' lead trial counsel. The meeting covered a variety of issues within the general topic of the ZAI Science Trial, each of which fell into primary areas of responsibility allotted to attorneys Restivo, Cameron, and Bentz. It was necessary for each of these attorneys to participate in the meeting so as to review and plan for various issues arising within these attorneys' primary areas of responsibility in the ZAI Science Trial case: attorney Restivo serves as the lead Reed Smith attorney on the case and has primary responsibility for regulatory compliance issues, attorney Cameron has primary responsibility for testing and scientific issues, and attorney Bentz has primary responsibility for fact witnesses and has coordinated the Debtors' discovery efforts. Attorney Muha, an associate working on the ZAI Science Trial case, participated in the meeting both to gain further understanding of the overall strategy to be employed in the case, as well as to receive work assignments pertaining to various parts of the case and to report on the status of the extensive paraprofessional document review and coding project, for which attorney Muha served as Reed Smith's attorney supervisor.

Most importantly, the October 31, 2002 meeting provided an opportunity for the Debtors' in-house counsel to meet in person with most of the lead Reed Smith ZAI Science Trial attorneys, to facilitate the Debtors' active participation in the preparation of their defense in the ZAI Science Trial as well as to enable the Reed Smith attorneys to discuss with in-house counsel strategy and schedules to be used going forward. The presence of several Reed Smith attorneys and the Debtors' in-house counsel allowed all of the participants to engage in developing strategic plans that have guided Reed Smith's work in preparing the Debtors' ZAI Science Trial defense since that meeting. Thus, the meeting not only allowed the Debtors' in-house counsel to be updated on work that had been performed in the ZAI Science Trial case to that point, but also enabled the Debtors and Reed Smith to determine their future course of action.

By way of further explanation of this Inquiry, it should again be noted that the necessity of having multiple Reed Smith attorneys occasionally participate in the same meetings, hearings or conference calls stems from the way Reed Smith has structured its representation of the Debtors in their bankruptcy proceedings. Since 1989, Reed Smith has provided counsel to the Debtors for certain asbestos-related litigation, and several individual Reed Smith attorneys have divided responsibility among themselves for various aspects of those cases. Responsibilities for specific subject areas and segments of the cases have been divided among attorneys Restivo, Cameron, Bentz, and Lawrence E. Flatley for dealing with, among other things, responsibility over medical issues and experts, industrial hygiene issues and experts, microscopy issues and experts, regulatory issues and experts, Grace's historical documents and witnesses, document production and discovery issues, case-specific claims and facts, and damages.

This division of primary responsibility originally was designed to avoid, and has

avoided, duplication of effort and to allocate direct responsibility for results. The division of specific primary responsibilities was carried over to Reed Smith's retention as the Debtors' Special Asbestos Product Liability Defense Counsel. The attendance of multiple Reed Smith professionals at certain meetings, hearings or conference calls has often been necessary when the event in question covers topics within the areas of primary responsibility of more than one Reed Smith professional. Reed Smith is fully aware of the need to avoid duplication, and it has made—and will continue to make—concentrated efforts to avoid any such duplication, including writing off time prior to the submission of Fee Applications if there is any unnecessary duplication. (It should also be noted that attorney Flatley did not attend the October 31 meeting, in part, because his areas of responsibility were not going to be addressed in detail at this meeting.)

    As the various Fee Applications reflect, particularly after the early stages of Reed Smith's representation of the Debtors, the overwhelming majority of meetings, hearings and calls have involved only one Reed Smith professional. Reed Smith has had multiple professionals participate only where doing so was necessary and/or more economical than any alternative staffing plan, and it will continue to follow this policy in the future.

Response Exhibit 2

In his Initial Report, the Fee Auditor raises questions over the fees incurred by paralegal Maureen L. Atkinson and litigation support technician Karen L. Hindman in relation to their work with the Reed Smith database of the Debtors' historic documents. The entries made by paralegals Atkinson and litigation support technician Hindman all pertain to work involved in the administration of the extensive historical document review and production project that Reed Smith has coordinated on behalf of the Debtors since approximately August of 2001. This project (the overwhelming size of which has been detailed for the Fee Auditor by Reed Smith previously) has required Reed Smith to establish an electronic database of the Debtors' millions of pages of documents that are subject to discovery in the Debtors' bankruptcy related cases.

The project has also required intensive attorney and paralegal efforts to review and code the documents to make the database a functional litigation tool. The entries on Exhibit A that are attributable to Ms. Hindman were for work she did in administering this database; once the Debtors' documents were scanned onto CD-ROM form, it was Ms. Hindman's responsibility to load these materials onto the database, to test the integrity of the materials being loaded, and to run periodic tests to assure the performance of the document database. Ms. Hindman was also responsible for transferring from the database to CD-ROMs those documents that were responsive to discovery requests posed by the ZAI Claimants' Counsel, as part of the ZAI Science Trial litigation. Ms. Hindman's work thus was integral to the proper operation of one of the chief litigation tools available to Reed Smith in its representation of the Debtors.

Paralegal Atkinson has been responsible for organizing reviewed and coded documents for their inclusion in Reed Smith's litigation archive for this case, and for identifying the documents that were responsive to the requests for production made by the ZAI Claimants' Counsel as part of discovery in the ZAI Science Trial case. Paralegal Atkinson's performance of these types of tasks has been integral to Reed Smith's coordination of the Debtors' discovery in the ZAI Science Trial case and to Reed Smith's own preparation of the Debtors' defense in this case. Furthermore, paralegal Atkinson had primary responsibility over the creation and maintenance of a privilege log of documents that were protected from discovery in the ZAI Science Trial. This responsibility required paralegal Atkinson to search the database, locate privileged documents, and periodically update and revise the privilege log. Finally, paralegal Atkinson had primary responsibility over marshalling the paper version of documents that were reviewed by the Reed Smith paraprofessionals (in the course of the document review and coding project), to the extent that the paper documents (as opposed to the CD-ROM images) were to be served on the ZAI Claimants' Counsel in relation to discovery in the ZAI Science Trial case.

Response Exhibit 3

In his Initial Report, the Fee Auditor notes that paralegal Christine Turkaly spent 28 hours, for a total of $2,100.00, on various activities which, without further description, may be non-compensable. Paralegal Turkaly was given several boxes of files relating to particular witnesses and legal issues from previous asbestos-related cases in which Reed Smith had represented the Debtors (prior to their bankruptcy filing), for the purpose of merging the materials in these files with the files that have been created for the ZAI Science Trial case, so as to make these materials useable to the lawyers working on the ZAI Science Trial. These asbestos-related case files contained a great deal of information (expert materials, depositions, legal memoranda and other correspondence) that was relevant to the ZAI Science Trial; in order to separate the relevant materials from those that were not relevant to ZAI Science Trial, it was necessary to have a paralegal familiar with the Debtors' asbestos-related issues review and organize these files to save attorney time and expenses.

    This project was important to Reed Smith's preparation of the Debtors' ZAI Science Trial defense, as it enabled Reed Smith to utilize its earlier work and, in part, to avoid repetition of the work done on similar issues in the earlier asbestos-related cases. Thus, paralegal Turkaly's work was not "filing" in the same sense as general secretarial/clerical support work, but rather required analysis of materials in those files for the creation of working tools that have been and continue to be used by Reed Smith attorneys in the preparation of the Debtors' defense in the ZAI Science Trial. Paralegal Turkaly's work has saved a considerable amount of attorney time that otherwise would have been spent in re-doing work that was done in the Debtors' previous asbestos-related cases.

Response Exhibit 4

In his Initial Report, the Fee Auditor notes that between November 5, 2002 and November 22, 2002 paralegal Maureen L. Atkinson spent 5.40 hours ($648.00) printing or copying documents. In the entries at issue, paralegal Atkinson retrieved documents from Reed Smith's database of the Debtors' historic documents (which were reviewed and coded by attorneys and paraprofessionals between 2001 and 2002), in order to support Reed Smith attorneys in their ongoing preparation of the Debtors' defense in the ZAI Science case—specifically, to enable Reed Smith attorneys to review specific documents to determine whether the documents were protected from discovery by an evidentiary privilege. Paralegal Atkinson also identified documents on the Reed Smith database to respond to discovery requests made by ZAI Claimants' Counsel. The vast majority of the time depicted in Inquiry No. 8 was spent searching the database for documents that were either the subject of Reed Smith attorneys' requests for review, or the subject of the ZAI Claimants' Counsel discovery requests; only a small portion was spent printing the documents. Reed Smith estimates that approximately one hour of paralegal Atkinson's overall time in Inquiry No. 8 was spent printing documents. Although Reed Smith asserts that all of this work was necessary to the efficient operation of the overall document management project, it will not contest a reduction in its fees in the amount of $120.00, that portion of time paralegal Atkinson spent printing document images.

Response Exhibit 5

In his Initial Report, the Fee Auditor noted that several Reed Smith professionals incurred $235.27 for meal expenses that were insufficiently described. The following information should resolve remaining issues about those expenses:

- The $76.50 charge entered on October 3, 2002 consisted of two lunches: first, on September 26, 2002, attorney Cameron and the Debtors' in-house counsel met to prepare for a witness deposition and incurred a $14.00 expense for two meals. Second, on September 27, 2002, attorney Cameron met with the Debtors' in-house counsel, an attorney from another of the Debtors' outside counsel firms, and an expert witness retained by the Debtors to testify in the cost recovery action (and who was scheduled to be deposed the next day). During this lunch, four meals were purchased for a grand total of $62.50.

- The $43.43 charge entered on October 9, 2002 was from a lunch attended on September 28, 2002 by attorney Cameron, the Debtors' in-house counsel, an attorney from another of the Debtors' outside counsel firms, and the expert witness being deposed that day. Four meals were purchased for this lunch meeting.

- The $47.84 charge entered on October 14, 2002 consisted of two hotel room service meals (one dinner on September 29, 2002 and one breakfast on September 30, 2002) purchased by attorney Cameron while he was in Atlanta, Georgia, preparing to take an expert witness deposition relating to the cost-recovery action on September 30, 2002.

The $67.50 charge entered on October 16, 2002 related to a luncheon meeting attended by attorney Flatley, the Debtors' in-house counsel, and a witness for the Debtors who was preparing to be deposed in the cost recovery action. Thus, the cost of these three meals are reflected in the overall charge.