**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF STROOCK & STROOCK & LAVAN, LLP**
**FOR THE SEVENTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Seventh Interim Fee Application of Stroock & Stroock & Lavan, LLP (the "Application").

**BACKGROUND**

1. Stroock & Stroock & Lavan, LLP ("Stroock") was retained as counsel to the official committee of unsecured creditors. In the Application, Stroock seeks approval of fees totaling $171,108.00 and costs totaling $25,000.84 for its services from October 1, 2002, through December 31, 2002, as well as reimbursement of costs of $1,780.75 for Chambers Associates Incorporated ("Chambers"), an asbestos issues expert.[1]

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended

---

[1] Stroock does not submit for audit the fees and expenses of Chambers.

**FEE AUDITOR'S FINAL REPORT** - Page 1
wrg FR Stroock 7int 10-12.02.wpd

Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Stroock an initial report based on our review and received a response from Stroock, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3. In our initial report, we noted that the time entries were generally adequately detailed and devoid of lumping.

4. Over the course of the Application period, we calculate that, including the time located in Case Administration, Stroock billed $47,204.60 or 27.5% of total fees for time spent preparing and reconciling its own fees. We feel that this percentage is far too high, and thus we asked Stroock to explain why this percentage is so high and what plans Stroock might have to lower it in future applications. Stroock's response is provided as Response Exhibit 1. We believe we understand the response, and we are cognizant of the special circumstances noted therein. We look forward to a significant reduction in Stroock's time spent in all areas pertaining to fee preparation.

### Specific Time and Expense Entries

5. In our initial report, we noted that from October 2 through November 26, 2002, timekeepers Calvo ($170), Mariano ($155), Maniscalco ($70), Caskadon ($177) and Schoenfeld ($155) spent a combined total of 32.10 hours and $3,408.50 on tasks that may not be compensable. See Exhibit A. Paragraph II. E. 7. of the Guidelines states, "[f]actors relevant to a

determination that the expense is proper include the following: . . Whether the expenses appear to be in the nature of nonreimbursable overhead . . . Overhead includes word processing, proofreading, secretarial. . ." We asked Stroock to explain why these tasks should be compensable. Stroock's explanation is provided as Response Exhibit 2. We appreciate the response and thus have no objection to these fees.

6. In our initial report, we noted a total of $597.66 spent for local transportation throughout the Application period. See Exhibit B. Only a single entry dated November 5, 2002, provides adequate description of purpose and necessity. Paragraph I.E. of the Guidelines states, ". . . [i]n evaluating fees for professional services, it is relevant to consider . . .[w]hether the expense is reasonable and economical." We asked Stroock to review Exhibit B and explain the need for these transportation expenses and why this estate alone should bear the cost for them. Stroock's explanation is provided as Response Exhibit 3. We appreciate the response and Stroock's voluntary reduction of $368.97. Thus, we recommend a reduction of $368.97 in costs.

## CONCLUSION

7. Thus, we recommend approval of fees totaling $171,108.00 and costs totaling $24,631.87 ($25,000.84 minus $368.97) for Stroock's services from October 1, 2002, through December 31, 2002. We offer no comment on the expenses totaling $1,780.75 submitted by Stroock on behalf of Chambers.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
      Warren H. Smith
      Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 4080
Dallas, Texas 75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 17th day of April 2003.

_____
Warren H. Smith

Exhibit A

| Date | Description | Timekeeper | Hours |
|---|---|---|---|
| 10/02/2002 | Westlaw research to find case law for A. Krieger; print and distribute | Calvo, F. | 0.5 |
| 10/17/2002 | ...; and print and organize (.4) | Mariano, C. | 0.8 |
| 10/25/2002 | Obtain e-mails from bankruptcy and print and organize (1.0) | Mariano, C. | 1.0 |
| 10/30/2002 | Printed and prepared documents for update into the case file judgment roll (.5);... | Maniscalco, I. | 2.0 |
| 11/07/2002 | Assist prepare 6th quarterly fee application: print and review July and August fee statements and 5th quarterly fee app(1.1); and print and review cover sheets for Jan-Aug and 4th quarterly fee application per R. Serrette instructions (1.1). | Caskadon, A. | 2.2 |
| 11/13/2002 | ...; Assist in preparation of 6th quarterly fee application: print off docs for A. Krieger (.8);... | Caskadon, A. | 3.7 |
| 11/01/2002 | 0.5 - Printed and prepared documents for update into computer system. 2.3 - Organized and inputted recent documents into case judgment roll file. | Maniscalco, I. | 2.8 |
| 11/05/2002 | ...; made copies & filed (3.0). | Schoenfeld, B. | 6.0 |
| 11/06/2002 | 1.0 - Printed and prepared documents for update into case file 6.0 - Organized and inputted documents into case judgment roll file | Maniscalco, I. | 7.0 |
| 11/06/2002 | Review e-mails from K. Pasquale re: deposition trasncripts, print and file. | Mariano, C. | 0.3 |
| 11/06/2002 | ...; Downloaded files onto livenote - updated deposition list (1.7). | Schoenfeld, B. | 2.0 |

| Date | Description | Timekeeper | Hours |
|---|---|---|---|
| 11/08/2002 | 0.3 - Printed documents and prepared them for entry into case file<br>3.2 - Organized and input recent documents into case judgment roll | Maniscalco, I. | 3.5 |
| 11/12/2002 | ...; print (.4);... | Mariano, C. | 2.3 |
| 11/13/2002 | 0.3 - Printed and prepared documents for update into case file<br>3.0 - Organized and brought to date the case judgment roll file<br>0.5 - Prepared depositions and letter for delivery to Group Digesting<br>1.7 - Organized and inputted index of depositions into case file on computer system | Maniscalco, I. | 5.5 |
| 11/26/2002 | ...; copy (.2) and load into livenote (.2). | Mariano, C. | 0.7 |
| 11/27/2002 | ...; review, insert tabs and copy for binders & attorneys (1.2). Update index list of digests received (.2) and file (.2) and compare with livenote (.5). | Mariano, C. | 3.2 |

Exhibit B

**Local Transportation**

| Date | Description | Amount |
|---|---|---:|
| 10/04/2002 | NYC Two Ways Inc. KRIEGER 09/23/02 07:21 M from 10 EAST END A to 343 7 AVE M | 22.64 |
| 10/04/2002 | NYC Two Ways Inc. PASQUALE 09/18/02 13:06 M from 180 MAIDEN LA to NJ SUMMIT | 74.79 |
| 10/14/2002 | VENDOR: Petty Cash; INVOICE#: 10/08/02; DATE: 10/14/02 - 10/04/02    NY PETTY CASH   H.BALK | 9.00 |
| 10/16/2002 | NYC Two Ways Inc. KRUGER 10/03/02 12:11 M from 180    MAIDEN to 99    E 52 S | 20.69 |
| 10/22/2002 | NYC Two Ways Inc. KRUGER 10/07/02 18:19 M from 343    7 AVE to 157    W 86 S | 27.36 |
| 10/22/2002 | NYC Two Ways Inc. KRUGER 10/08/02 08:14 M from 257    W 86 S to 180    MAIDEN | 32.25 |
| 11/05/2002 | VENDOR: Lewis Kruger; INVOICE#: 10/17/02A; DATE: 11/5/02 - 10/07/02   TRAIN AND CABFARE TO NEWARK, ATTEND MTG. IN JUDGE WOLIN'S CHAMBERS | 8.00 |
| 11/07/2002 | NYC Two Ways Inc. KRIEGER 10/23/02 15:50 M from 180    MAIDEN to E 80 ST | 25.58 |
| 11/07/2002 | NYC Two Ways Inc. KRIEGER 10/21/02 23:00 M from 180    MAIDEN to E 80 ST | 24.60 |
| 11/07/2002 | VENDOR: Corporate Transportation Group, Ltd.; INVOICE#: 552865; DATE: 11/8/02 - NYC Two Ways Inc A Krieger 10/20/02 180 Maiden Lane to 10 East | 24.60 |
| 11/19/2002 | NYC Two Ways Inc. KRIEGER 11/12/02 21:00 M from 180    MAIDEN to 10    EAST E | 25.58 |
| 11/27/2002 | NYC Two Ways Inc. KRUGER 11/05/02 11:45 M from 180    MAIDEN to E 52 ST | 20.69 |
| 11/27/2002 | NYC Two Ways Inc. KRIEGER 11/13/02 20:00 M from 180    MAIDEN to 10    EAST E | 24.60 |
| 02/14/2002 | NYC Two Ways Inc. KRUGER 02/01/02 16:45 M from 180 MAIDEN LA to E 70 ST M | 31.27 |

| Date | Description | Amount |
|---|---|---|
| 02/20/2002 | NYC Two Ways Inc. KRUGER 02/07/02 17:32 M from 180 MAIDEN LA to W 55 ST M | 20.69 |
| 03/21/2002 | NYC Two Ways Inc. KRUGER 03/07/02 15:21 M from 180 MAIDEN LA to 257 W 86 ST M | 39.90 |
| 12/06/2002 | NYC Two Ways Inc. PASQUALE 11/21/02 08:00 M from 380 GREENW to NJ SUMMIT | 77.23 |
| 12/06/2002 | VENDOR: petty Cash; INVOICE#: 12/03/02; DATE: 12/6/2002 - 11/25/0   NY PETTY CASH   A.KRIEGER | 17.00 |
| 12/12/2002 | NYC Two Ways Inc. KRIEGER 11/25/02 07:05 M from 10   EAST E to 343   7 AVE | 27.74 |
| 12/31/2002 | NYC Two Ways Inc. CASKADON 12/10/02 23:44 M from 180 MAIDEN to NJ HOBOKEN | 43.45 |

Response Exhibit 1

The Report notes that over the course of the Application period, Stroock billed $47,204.60 and 27.5% of the aggregate amount of its fees "preparing and reconciling its own fees", and seeks an explanation as to why this percentage was so high, and as to how Stroock intends to lower the costs in future applications.

Stroock agrees that it had to expend too much time during the Application period on fee-related matters, but as more fully discussed below, Stroock spent the time that was necessary to appropriately respond to the multiple inquiries raised by the Fee Auditor in his initial responses to the first, second, third and fifth quarterly fee applications filed by Stroock which corresponds to approximately 60% of the amount questioned.[2] Stroock, in the first instance, respectfully disagrees with the Report's characterization that the amount the Fee Auditor is questioning relates to Stroock's preparation and reconciliation of its own fees. As reflected in the Seventh Quarterly Application, approximately $18,000 was spent by Stroock in connection with its preparation of fee statements for the months of August 2002, September 2002, October 2002 and November 2002, and its completion of Stroock's quarterly application for the sixth application period covering the months from July through September 2002.

The greater portion of the fee-related amounts billed during the Seventh Application Period correspond to Stroock's response to the Fee Auditor's initial report encompassing the first, second and third quarterly fee periods covering the first nine months of the chapter 11 cases from April 2, 2000 through December 31, 2000 (the "First Initial Period Report"), and the separate initial report from the Fee Auditor in respect of the fifth quarterly period covering the months April through June 2002 (the "Fifth Period Report"). The Fee Auditor's First Period Initial Report and Fifth Period Initial Report required responses to over 10 different specific time and expense paragraphs requiring responses to over 35 specific inquiries and involving approximately $200,000. Exhibit A to the First Initial Report identified eighteen (18) different meetings, hearings and/or conferences which Stroock had to provide explanations for. Further, Exhibit B to the First Initial Report required Stroock to respond to seven (7) different inquiries where more than one professional from the firm performed services on a given matter. The matters which were the subject of these 25 inquiries alone represented approximately $150,000 in fees billed to these estates. As a result, the responses Stroock prepared and then provided to the Fee Auditor needed to be and were extensive and thorough, and with very minor exception, the Fee Auditor did not seek to reduce the fees sought by Stroock corresponding to these twenty-five inquiries. The First Initial Report also sought numerous separate other responses

---

[2]   Stroock has not reviewed the time during the Application period detailing the aggregate time spent which related to its responding to the Fee Auditor's initial reports in respect of these quarterly applications. As a result, this response does not either agree or disagree with the aggregate amount stated by the Fee Auditor as having been expended.

**FEE AUDITOR'S FINAL REPORT** - Page 9
wrg FR Stroock 7int 10-12.02.wpd

and explanations relating to charges for telecommunications services, fees for review of pleadings filed in other mass tort bankruptcy cases, and word processing charges among other matters, which themselves required review of numerous separate time and/or expense entries and, as necessary, the expenditure of time to obtain and evaluate back-up information and documentation.  Stroock submits that the time spent was necessary to prepare the authoritative response it did.  The fact that the matters questions stemmed from the 2000 calendar year, a period from 10 to 17 months earlier, also added to the costs.

Stroock further submits that the circumstances that gave rise to the need to expend so much time during the Application period will not happen again, including the fact that there was an unusual number of quarterly fee applications which were the subject of initial reports from the Fee Auditor that Stroock needed to respond to.  There is generally only one initial report raising questions with respect to one quarterly fee application in any given quarterly application period.  In this instance, there were two initial reports raising a multiplicity of question with respect to four quarterly periods.  Stroock continues to endeavor to keep these and all costs in these cases to a minimum.  Stroock, therefore, submits that these amounts should be allowed in their entirety.

Response Exhibit 2

The Report notes that between October 2, 2002 and November 26, 2002 several paraprofessionals spent an aggregate of 32.1 hours of services corresponding to fees sought from the estates in the aggregate amount of $3,408.50, on tasks that appear to be nonreimbursable overhead, and seeks an explanation as to why they should be compensable. (See Report at paragraph 2). The services questioned by the Fee Auditor are identified on Exhibit A to the Report.

The services which are the subject of the Fee Auditor's inquiry are client specific charges which should be fully compensable by the estates. The duties and responsibilities of paralegals and other paraprofessionals at Stroock generally include, but are not limited to, such services as (i) maintaining and indexing client files and judgment rolls in a complete and orderly fashion, (ii) preparing and arranging for the transmittal of correspondence, and legal and other documents by any suitable method of transmission including mail, messenger service, e-mail and facsimile transmission, as required, (iii) performing or arranging for duplication and/or binding of documents, (iv) obtaining documents using Lexis, Westlaw and other software applications, (v) providing records of disbursement charges for all charges applicable to a client of the firm, and (vi) for paraprofessionals in the financial restructuring area of the firm's practice, assisting, to the extent possible, in the preparation of fee applications and statements. For paraprofessionals in the litigation area of the firm, such services would also include downloading deposition transcripts into a specific database management program to enable a more efficient and effective use of those transcripts. In connection with and in the course of performing these client-specific services, it was necessary for these paraprofessionals to print documents and emails, organize and then appropriately file such materials, and contact, as necessary, court reporter to obtain deposition transcripts. In addition, Stroock notes that a greater majority of the services identified on Exhibit A were rendered in connection with the materials generated in the Sealed Air fraudulent transfer litigation, where the need to thoroughly and properly file and index the voluminous number of pleadings, reports and transcripts generated in the litigation is essential. Stroock submits that the challenged services are separate and apart from Stroock's non-client specific secretarial charges rendered during the normal business hours of the firm.

It has been Stroock's uniform policy that the cost of such client-specific services should not be borne by clients of the firm for whom the services were not rendered and, therefore, should not be included within Stroock's overhead structure. Stroock, therefore, submits that the services identified on Exhibit A, all of such were rendered by Stroock paraprofessionals specifically in connection with this firm's representation of the Creditors' Committee in the Debtors' chapter 11 cases, should be allowed in their entirety.

Response Exhibit 3

      The Report notes that a total of $597.66 was spent for local transportation throughout the Application period, and requests that Stroock state the purpose of and necessity for these transportation costs, each of which is identified on Exhibit B to the Report.

      First, Stroock notes that as occurs from time to time, outside vendor charges are sometimes posted to Stroock's accounting records in a compensation period other than the period in which the charges were incurred. Stroock has reviewed the transportation costs identified on Exhibit B and of those costs, Stroock is providing an explanation for the following expenses for which it continues to seek reimbursement in full in the aggregate amount of $228.69:

| Date | Description | Amount |
|---|---|---|
| 10/04/2002 | NYC Two Ways Inc. KRIEGER 09/23/02 07:21 M from 10 EAST END A to 343 7 AVE M<br>-Car to Penn Station for Amtrak train to Delaware for Hearing before Judge Fitzgerald | 22.64 |
| 10/04/02 | NYC Two Ways Inc. PASQUALE 09/18/02 13:06 M from 180 MAIDEN LA to NJ SUMMIT<br>-Travel to and from Sealed Air Hearing in Newark, NJ with respect to discovery issues. | 74.79 |
| 10/22/2002 | NYC Two Ways Inc. KRUGER 10/07/02 18:19 M from 343 7 AVE to 157  W 86 S<br>-Cab expense from Penn Station to home after 10/07 conference before Judge Wolin in Newark. | 27.36 |
| 11/05/2002 | VENDOR: Lewis Kruger; INVOICE#: 10/17/02A; DATE: 11/5/02 - 10/07/02   TRAIN AND CABFARE TO NEWARK, ATTEND MTG. IN JUDGE WOLIN'S CHAMBERS<br>-Self-explanatory: train and cab fare to the hearing. | 8.00 |
| 011/07/2002 | NYC Two Ways Inc. KRIEGER 10/23/02 15:50 M from 180 MAIDEN to E 80 ST<br>-Car home after working all day on Stroock's response to Fee Auditor's reports for: First, Second and Third Interim Fee | 25.58 |

     Applications and Fifth Interim Fee Application.

11/19/2002    NYC Two Ways Inc. KRIEGER 11/12/02 21:00 M from 180   25.58
MAIDEN to 10 EAST
-Car home after working all day on Stroock's Sixth Quarterly fee application.

12/06/2002    VENDOR: petty Cash; INVOICE#: 12/03/02; DATE: 12/6/2002    17.00
11/25/0   NY PETTY CASH   A.KRIEGER
-Taxis fare relating to Delaware trip for hearings before Judge Fitzgerald.

12/12/2002    NYC Two Ways Inc. KRIEGER 11/25/02 07:05 M from 10  EAST   27.74
E to 343   7 AVE
-NYC car relating to Delaware trip for hearings before Judge Fitzgerald.

Stroock is voluntarily agreeing to reduce the amount for which reimbursement is sought in the Application by the sum of $368.97, representing the aggregate of the transportation charges from Exhibit B for which no additional explanation is provided above.

# SERVICE LIST
### Notice Parties

**The Applicant**

Lewis Kruger
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038-4982

Rose Serrette
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038-4982

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801