IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Hearing Date: June 17, 2003 at 12:00 p.m., only if objections are received.
Objection Deadline: May 13, 2003.

**APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 327(A) AND 328(A) AND FED. R. BANKR. P. 2014(A), 2016 AND 5002 AUTHORIZING THE EMPLOYMENT AND RETENTION OF DELOITTE & TOUCHE LLP AS CUSTOMS SERVICES PROVIDERS, AND TAX AND COMPENSATION ADVISORS TO THE DEBTORS *NUNC PRO TUNC* TO FEBRUARY 4, 2003**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this application (this "Application") for an order pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (as amended, the "Bankruptcy Code")

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

91100-001\DOCS_DE:69504.1

and Fed. R. Bankr. P. 2014(a), 2016 and 5002 authorizing the employment and retention of Deloitte & Touche LLP ("Deloitte") as customs services providers, and tax and compensation advisors to the Debtors *nunc pro tunc* to February 4, 2003. In support of this Application, the Debtors state as follows:[2]

## Jurisdiction

1.  The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O). Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is section 327(a) of the Bankruptcy Code and Fed. R. Bank. P. 2014(a).

## Background

2.  On April 2, 2001 (the "Petition Date"), each of the Debtors in these chapter 11 cases filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

---

[2] The facts and circumstances supporting this Motion are set forth in the Affidavit of Larry D. Ishol, member of the firm of Deloitte & Touche LLP, in Support of this Application, filed herewith.

### Relief Requested

3.       By this Application, the Debtors seek to employ and retain Deloitte pursuant to section 327 and 328 of the Bankruptcy Code during the Chapter 11 Cases, as more fully described below.

4.       The Debtors believe that such Customs Services, Tax Services, and Compensation Services (each as described more fully below and in the Ishol Affidavit, and collectively hereinafter referred to as the "Deloitte Services") are necessary to enable the Debtors to maximize the value of their estates and to reorganize successfully. Deloitte has indicated a willingness to act on behalf of the Debtors and to subject itself, for the purposes of the provision of the Deloitte Services, to the jurisdiction and supervision of the Court.

### Deloitte's Disinterestedness

5.       To the best of the Debtors' knowledge, and as disclosed herein on the affidavit of Larry D. Ishol, a member of Deloitte, attached hereto as Exhibit A (the "Ishol Affidavit"), (a) Deloitte is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code and referenced by section 328(c) of the Bankruptcy Code, and holds no interest adverse to the Debtors or their estates for the matters for which Deloitte is to be employed and (b) Deloitte has no connection to the Debtors, their creditors or their related parties herein except as disclosed in the Ishol Affidavit.

6.       Despite the efforts described in the Ishol Affidavit to identify and disclose Deloitte's connections with the parties-in-interest in these Chapter 11 Cases, because Deloitte is

a nationwide firm with tens of thousands of employees, and because the Debtors are a large enterprise, Deloitte is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if Deloitte discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with this Court.

**Qualifications of Deloitte and Scope of Services**

7.  Deloitte is one of the country's leading professional services firms with approximately 100 offices nationwide and has considerable experience in providing clients, both in and out of bankruptcy, with the scope of services it anticipates providing to the Debtors in these Chapter 11 Cases. Because of Deloitte's (a) experience and knowledge in providing services of the nature for which Deloitte's retention is sought in these Chapter 11 Cases, and (b) familiarity with the Debtors' business and affairs, in part as a result of Deloitte's performance of the OCP Services (as defined below), the Debtors' management believes that Deloitte is uniquely qualified to serve the Debtors in these Chapter 11 Cases in an efficient and cost-effective manner.

8.  Deloitte will provide the Deloitte Services as requested by the Debtors and as agreed to by Deloitte in order to assist the Debtors in the course of the Chapter 11 Cases, including but not limited to the following:

    a.    compensation and benefits services, including without limitation, services pertaining to assisting the Debtors in reviewing and analyzing their current employee retention and incentive programs, and in developing new employee retention and incentive programs (the "Compensation Services");

      b.      tax advisory services, including without limitation, services pertaining to assisting the Debtors by consulting on various corporate and sales tax issues, and in reviewing and analyzing the tax implications of various inter-company transactions (the "<u>Tax Services</u>"); and

      c.      customs procedures review and compliance services, including without limitation, services pertaining to assisting the Debtors with the upcoming Focused Assessment to be conducted by the United States Customs Service (the "<u>Customs Services</u>").

9.      The Debtors and Deloitte have entered into (a) the engagement letter dated April 14, 2003 pertaining to Deloitte's provision of the Customs Services which is attached to the Ishol Affidavit as Exhibit A, (b) the engagement letter dated April 8, 2003 pertaining to Deloitte's provision of the Tax Services which is attached to the Ishol Affidavit as Exhibit B, and (c) the engagement letter dated March 14, 2003 pertaining to Deloitte's provision of the Compensation Services which is attached to the Ishol Affidavit as Exhibit C.

10.     Certain professionals who were formerly associated with Arthur Andersen, LLP ("<u>Andersen</u>") have joined Deloitte. While at Andersen, certain of these professionals worked on matters pertaining to the Debtors. It is anticipated that certain of these professionals will provide services to the Debtors on behalf of Deloitte in these Chapter 11 Cases. However, the services that Deloitte anticipates providing to the Debtors in these Chapter 11 Cases (a) will be new engagements pursuant to separate new engagement letters entered into between the Debtors and Deloitte, and (b) will not be a continuation of the Andersen services, but will commence as of the dates authorized by this Court.

11.     Deloitte, at the request of the Debtors, also may render additional related support deemed appropriate and necessary to the benefits of the Debtors' estates. The Debtors

believe that the Deloitte Services enumerated above are necessary to enable the Debtors to maximize the value of their estates and to reorganize successfully. The Debtors also believe that the Deloitte Services will not duplicate the services that, subject to this Court entering or having entered appropriate orders, other professionals may provide to the Debtors in the Chapter 11 Cases. Deloitte will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services.

### Terms of Retention

12.  Deloitte's fees in connection with the Deloitte Services will be based upon the time that Deloitte necessarily spends in providing its tax services to the Debtors, multiplied by its hourly rates. The normal hourly rates charged by Deloitte personnel are as follows:

| *Staff Classification* | *Hourly Billing Rate* |
|---|---|
| *Partner/Principal/Director* | *$350-$660 per hour* |
| *Senior Manager* | *$250-$550 per hour* |
| *Manager* | *$180-$430 per hour* |
| *Senior Accountants/Consultants* | *$135-$340 per hour* |
| *Staff Accountants/Consultants* | *$100-$180 per hour.* |

13.  The range of hourly billing rates reflects, among other things, differences in experience levels within classifications, geographic differentials and differences between types of services being provided. In the normal course of business, Deloitte revises its regular hourly billing rates to reflect changes in responsibilities, increased experience, and increased costs of doing business. Accordingly, the Debtors request that Deloitte be permitted to revise the

aforementioned rates to the hourly billing rates that will be in effect from time to time. Changes in regular hourly billing rates will be noted by Deloitte on the invoices for the first time period in which the revised rates became effective.

14. Deloitte will seek compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures, the Local Bankruptcy Rules and any orders of this Court, including without limitation, (a) the Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, dated May 3, 2001, effective as of April 2, 2001 and (b) the Amended Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, dated April 17, 2002. Pursuant to section 328(a) of the Bankruptcy Code, however, the Court may not allow Deloitte's compensation on terms different from those described herein unless such compensation "prove[s] to have been improvident in light of developments not capable of being anticipated at the time" this Application was originally approved. 11 U.S.C. § 328(a).

15. Deloitte will maintain reasonably detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.

16. Deloitte provided no services to the Debtors prior to the Petition Date and the Debtors are not aware of any pre-petition claims held against the Debtors by Deloitte.

Further, Deloitte has received no retainers from the Debtors in respect of any services it may in the future provide to the Debtors.

17. Deloitte had previously been authorized as an ordinary course services provider to the Debtors in these Chapter 11 Cases. In this capacity, Deloitte performed certain compensation plan implementation, tax advisory, and SAP environment control services (the "OCP Services"). The Debtors have subsequently requested that Deloitte expand its scope of services. Deloitte believes such expanded scope of services requires approval pursuant to the Application, and that such services are beyond the scope of Deloitte's ordinary course retention in these Chapter 11 Cases. The OCP Services where completed on or about January 15, 2003, prior the date for which Deloitte's *nunc pro tunc* retention is sought. Deloitte incurred fees totaling approximately $191,000 in connection with its provision of the OCP Services and is seeking compensation from the Debtors for such fees in accordance with the Court's orders governing the compensation of ordinary course professionals in these Chapter 11 Cases.

### Nunc Pro Tunc Retention of Deloitte

18. Because (a) the Debtors required Deloitte's immediate assistance in connection with the performance of certain of the Deloitte Services, and (b) the Debtors believed that it would have been potentially detrimental to the Debtors' estates and to the creditors if work on such services did not commence prior to this Court's approval of Deloitte's retention to serve the Debtors in these Chapter 11 Cases, Deloitte agreed to commence performing such services for the Debtors with the expectation that Deloitte's retention would be granted on a *nunc pro tunc* basis. Deloitte's provision of the Tax Services commenced on or about February 4, 2003

(the date from which Deloitte's *nunc pro tunc* retention is sought), Deloitte' provision of the Compensation Services commenced on or about March 24, 2003, and Deloitte anticipates commencing the provision of the Customs Services on or about the date of the filing of the Application. Accordingly, subject to this Court's approval, Deloitte intends to seek compensation for its performance of the Deloitte Services, in addition to reimbursement for reasonable expenses incurred in connection therewith, *nunc pro tunc* to February 4, 2003.

## Notice

19. Notice of this Application has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee and (v) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

20. No prior Motion for the relief requested herein has been made to this or any other Court.

**[PAGE LEFT INTENTIONALLY BLANK]**

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto, authorizing the employment and retention of Deloitte as tax services providers, and tax and compensation advisors pursuant to the terms of this Application, the Ishol Affidavit and the engagement letters entered into between the Debtors and Deloitte *nunc pro tunc* to February 4, 2003; and grant such further relief as is just and proper.

Wilmington, Delaware
Dated: April 25, 2003

Respectfully submitted,

KIRKLAND & ELLIS
James H.M. Sprayregen
Janet S. Baer
James W. Kapp III
Christian J. Lane
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB P.C.

*/s/ Paula A. Galbraith*

Laura Davis Jones (Bar No. 2436)
Scotta McFarland (Bar No. 4184)
Paula Galbraith (Bar No. 4258)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession