UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

# FEE AUDITOR'S FINAL REPORT REGARDING
# FEE APPLICATION OF CAPLIN & DRYSDALE,
# CHARTERED FOR THE SEVENTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Interim Fee Application of Caplin & Drysdale, Chartered for the Seventh Interim Period</u> (the "Application").

## BACKGROUND

1. Caplin & Drysdale, Chartered ("Caplin") was retained as national counsel to the Official Committee of Asbestos Personal Injury Claimants. In the Application, Caplin seeks approval of fees totaling $88,876.50 and costs totaling $33,630.90 for its services from October 1, 2002, through December 31, 2002.

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30,

1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Caplin an initial report based on our review and received a response from Caplin, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3. In our initial report, we noted that the Application was generally adequately detailed and devoid of lumping.

4. We further noted that Caplin raised its hourly billing rates in October 2002, ranging from an increase of $10.00 per hour up to an increase of $65.00 per hour. This follows a similar general increase made in January 2002. We asked Caplin explain these billing increases. Caplin's response is provided below.

> You ask in paragraph 4 of the Initial Report that we explain billing rate increases effective October 1, 2002. As stated in our retention application, Caplin & Drysdale reviews its hourly billing rates on an annual basis, usually as of October 1 of each year. Last year, due to the events of September 11, 2001 and the uncertainties created in the economy, the annual review was deferred until January 2002, at which time hourly rates increased firm-wide. The increases that you note in October 2002, which are also firm-wide and apply to all clients and cases, rather than merely the Delaware or other bankruptcy matters, were the result of Caplin & Drysdale's usual annual October review, and are on a par with the annual increases among similar law firms doing work comparable to that performed by Caplin & Drysdale. We believe that our time changes firm-wide are well within the range of changes by similar firms doing similar work.

We appreciate the response.

### Specific time and Expense Entries

5. In our initial report, we noted that between October 9 and November 21, 2002,

RCS ($165), SAT ($135), RCT ($340), TLW ($135), EJS ($155) and BAS ($240) spent a total of 7.60 hours for $1,239.50 performing tasks that may not be compensable. See Exhibit A. Paragraph II. E. 7., of the Guidelines provides, ". . . [f]actors relevant to a determination that the expense is proper include the following: . . Whether the expenses appear to be in the nature of nonreimbursable overhead . . . Overhead includes word processing, proofreading, secretarial and other clerical services, . . ." We asked Caplin to explain why time billed for the referenced tasks should be considered compensable. Caplin's response is provided as Response Exhibit 1. We accept the explanation and thus have no objection to these fees.

6. In our initial report, we noted a charge of $135.00 by TLW on October 11, 2002, for travel to serve a filing. The entry is provided below.

10/11/02     TLW     67.50          2.00          Travel to client office to serve filing.

We recognize that the entry was billed as non-working travel at 50% of the normal hourly rate; however, the time spent may not be compensable at all. Paragraph II. E. 7., of the Guidelines provides, ". . . [f]actors relevant to a determination that the expense is proper include the following: . . Whether the expenses appear to be in the nature of nonreimbursable overhead . . . Overhead includes word processing, proofreading, secretarial and other clerical services, . . ." We asked Caplin to explain why this travel time to serve a filing should be considered compensable. Caplin responded as follows:

> Ms. Wantauk's services on October 11, 2002 included the service of legal papers. (Initial Report at ¶ 7.) Such services are normally performed by paralegals and other paraprofessionals, rather than clerical workers, and hence do not fall into the category of overhead, which includes "word processing, proofreading, secretary and other clerical services."

We accept the explanation and offer no objection to these fees.

7.    In our initial report, we noted that on October 31, 2002, NDF ($395) billed 4.00 hours and $790.00 for non-working travel time to DC, but the reason for this trip was not addressed. The entry is provided below.

| 10/31/02 | NDF | 197.50 | 4.00 | Travel to DC |

Paragraph I.E. of the Guidelines states, "In evaluating fees for professional services, it is relevant to consider . . whether the services were necessary to the administration of, or beneficial towards the completion of, the case at the time they were rendered; . . ." Also, Local Rule 2016-2(d) provides "...[s]uch motion shall include activity descriptions which shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary . . .". We asked Caplin to provide additional information regarding the cited time entry. Caplin's response is provided below.

> As Mr. Finch's time entry for the previous date indicates, he traveled to New York to attend a meeting with environmental experts regarding environmental claims against the Debtors' estates. On October 31, Mr. Finch returned to Washington D.C.

We appreciate the response and have no objection to these fees.

8.    In our initial report, we noted that on November 26, 2002, AGL ($490) billed 4.30 hours and $2,107.00. However, the parentheticals total only 4.00 hours and $1,960.00, resulting in an overcharge of $147.00. The entry is provided below.

| 11/26/02 | AGL | 490.00 | 4.30 | Review CA3 order re supplemental memo on interlocutory appeals (0.2); review Brad Friedman proposed response (0.3); legal research re same (0.6); draft letter-memo to CA3 Clerk and revise same (2.9). |

We asked Caplin to review the entry and explain the overcharge. Caplin responded as follows:

> Since Mr. Lauber's time appears to have been calculated incorrectly, we suggest a reduction of $147 for his services on this date.

We appreciate the response and recommend a reduction of $147.00 in fees.

9.   In our initial report, we noted entries on November 14 and December 17, 2002, totaling 2.80 hours and $619.00 that appear to represent duplications. The entries are provided below.

| | | | | |
|---|---|---|---|---|
| 11/14/02 | EJS | 155.00 | 0.60 | Updated C&D files/indexes. |
| 11/14/02 | EJS | 155.00 | 0.60 | Updated C&D files/indexes. |
| 12/17/02 | EJS | 155.00 | 0.30 | Updated EI hearing files. |
| 12/17/02 | EJS | 155.00 | 0.30 | Updated EI hearing files. |
| 12/17/02 | RCT | 340.00 | 0.50 | Review edits to fee apps and e-mails to TB re: same. |
| 12/17/02 | RCT | 340.00 | 0.50 | Review edits to fee apps and e-mails to TB re: same. |

U.S. Bankruptcy Code § 330 (4)(A)(i), states, [e]xcept as provided in subparagraph (B), the court shall not allow compensation for – (i) unnecessary duplication of services; . . ." We asked Caplin to review the referenced time entries and explain why they should not be viewed as duplicative. Caplin's response is provided below.

> These entries do not describe similar services. Ms. Strug's entries state that she was (1) reviewing, identifying and reviewing court documents and (2) working with Elihu Inselbuch, the lead attorney for the Committee, in updating his hearing files. The latter task required that Ms. Strug analyze pleadings as they were received by Caplin & Drysdale, identify to which case or action each document relates, determine whether the document is relevant to a court proceeding in which Mr. Inselbuch is engaged, and classify the document in hearing preparation files maintained by Ms. Strug for Mr. Inselbuch.
>
> The first set of tasks performed by Ms. Strug, updating Caplin & Drysdale's files and indexes, requires the identification and indexing of the pleadings, Orders, business-related filings by the Debtors, reports from various Committee experts and other documents that are received by Caplin & Drysdale each day. Such documents must be identified and indexed, not merely chronologically or by case, but also according to the motion, adversary proceeding, issue, or other matter to which the

document relates. A paralegal must further note the procedural setting of each document and classify that document accordingly. Further, the paralegal must route each document to the attorney or attorneys working on the proceeding or issue to which the document is relevant. In performing these tasks, a paralegal must exercise legal knowledge and judgment, "assisting" attorneys as surely and significantly as when working with an attorney on a one-to-one basis. No nonlegal staff member could perform these tasks.

Moreover, Ms. Tobin prepares fee applications in numerous bankruptcy matters. As stated in Ms. Tobin's time entries for the dates at issue, she was on those dates reviewing fee applications and communicating with Terri Ballard, Caplin & Drysdale's comptroller (for whose services, including the physical preparation of fee applications and exhibits, the Estates are not billed) regarding the materials and information to be included in those applications. Ms. Tobin reviews all attorney time and fee applications, including numerous exhibits, to ensure that these are complete, in compliance with the Court's administrative order and consistent with the requirements of the Fee Auditor. Ms. Strug could not and does not perform these attorney tasks, nor do Ms. Strug's time entries themselves in any respect duplicate Ms. Tobin's.

We appreciate the response, and we do not maintain that the tasks listed for Ms. Strug duplicated those listed for Ms. Tobin. Rather, the issue raised is that there are three sets of identical entries, that, without further explanation, seem to represent inadvertent duplications of time. Since the response does not address this, we can only assume that the entries were accidentally duplicated. Thus, we recommend a reduction of $309.50 in fees.

10.   In our initial report, we noted three travel expense entries for a total of $568.00 that may be excessive. The entries are provided below.

| Description | Date | Initials | Amount |
|---|---|---|---|
| ADA Travel; Business class travel for TWS to Richmond on 9/12 | 10/18/2002 | TWS | $132.00 |
| ADA Travel First class train for NDF to New York on 11/26 (coach $145.00) | 12/20/2002 | NDF | $203.00 |
| ADA Travel; PVNL first class train to Newark on 11/27 (coach $253.00) | 12/20/2002 | PVL | $233.00 |

Paragraph II.E.1.,of the Guidelines states, ". . .[f]actors relevant to a determination that the expense is proper include the following: 1. Whether the expense is reasonable and economical. For example, first class and other luxurious travel mode or accommodations will normally be objectionable." We asked Caplin to explain why this travel was made at first class and business class instead of coach. In the case of the first entry, we asked Caplin to provide the comparable cost had the travel been made in coach class. For the third entry, we asked Caplin to explain the circumstances that made the stated cost of coach fare lower than the first class fare actually purchased. Caplin replied as follows:

> After reviewing the Application, Caplin & Drysdale proposes a reduction of $58.00 for Mr. Finch's first-class ticket to New York on November 26, 2002. Moreover, having determined that Mr. Swett's coach fare to Richmond on September 12, 2002, would have been $104, we propose a further reduction of $28 for this expense, for a total reduction of $86 for these travel expenses. (Mr. Lockwood's first-class ticket to Newark on November 27, 2002 actually cost $20.00 less than a coach ticket.)

We accept the explanation, and we appreciate the voluntary reduction. Thus, we recommend a reduction of $86.00 in expenses.

## CONCLUSION

11.   Thus, we recommend approval of fees totaling $88,420.00 ($88,876.50 minus $456.50) and costs totaling $33,544.90 ($33,630.90 minus $86.00) for Caplin's services from October 1, 2002, through December 31, 2002.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
     Warren H. Smith
     Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 4080
Dallas, Texas 75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 1st day of May, 2003.

_____
Warren H. Smith

Exhibit A

| Date | Initials | Rate | Hours | Description |
|---|---|---|---|---|
| 10/09/02 | RCS | 165.00 | 1.30 | . . .;download pleadings from electronic docket per attorney request (.4). |
| 10/09/02 | SAT | 135.00 | .40 | Proofread NDF Declaration. |
| 10/10/02 | SAT | 135.00 | .30 | Print pleadings docket as per BAS request. |
| 10/10/02 | SAT | 135.00 | .70 | Search docket for and download BAS requested transcript. |
| 10/17/02 | RCS | 165.00 | 2.40 | . . .; review electronic docket, download pleadings not held in firm files, update pleadings database and attach downloaded imaged documents (2.1). |
| 10/18/02 | RCS | 165.00 | .60 | . . .;review electronic docket and download documents requested by attorney (.3). |
| 10/23/02 | RCS | 165.00 | .90 | . . .; download documents from electronic docket and attache to images to firm file database (.6). |
| 10/24/02 | RCS | 165.00 | .70 | . . .review electronic document in bankruptcy and download files requested by attorney (.4). |
| 10/29/02 | RCS | 165.00 | 1.80 | . . .; download electronic files and append to pleadings database (.7). |
| 10/30/02 | RCS | 165.00 | .70 | . . .; download docket for period June to present per attorney request (.2); . . |
| 11/11/02 | EJS | 155.00 | 1.00 | Sent Manville documents to BAS. |
| 11/21/02 | BAS | 240.00 | 5.10 | . . .; prepared docs and faxed (.5);. . . |

Response Exhibit 1

A. **Attorney Time**

As stated in the remainder of his time entry for November 21, 2002, which is not included in Exhibit A, Mr. Skretny was on this date reviewing documents submitted by medical experts and preparing those documents to be disseminated to various parties. Preparing a document means editing the document, adding necessary exhibits, and otherwise performing the legal analysis that lawyers are required to complete before disseminating materials. Further, attorneys do not fax their own documents; Caplin & Drysdale has a mail and fax staff that does the actual faxing. Moreover, read in the context Mr. Skretny's entire time entry for that date, the nature of the tasks questioned are apparent, as follows:

> Met w/ NDF re: medical experts (.1); met w/ RCS re: docs for medical experts (.3); submitted doc. request to paralegal re: above (.3); phone call w/ potential expert (.3); prepared docs and faxed (.5); reviewed fax received (.3); gathered retention orders (.3); reviewed expert's past testimony (1.1); drafted retainer letter (1.9).B.

B. **Paralegal Time**

Entries regarding the downloading of pleadings refer to time spent by Caplin & Drysdale paralegals reviewing the electronic dockets posted each day by the Courts, from the myriad of pleadings and other documents that are filed each day or week those that relate to matters relevant to Committee, and downloading those documents for attorney review. Due to Caplin & Drysdale's direct internet connection, the time spent downloading documents is a minute fraction of the total amount billed. Further, the downloaded documents are accessed daily by Caplin & Drysdale attorneys, who rely on the paralegals to perform the preliminary sifting and indexing necessary to establish the databases used by the attorneys in their own work. On October 17, 23 and 29, 2002, respectively Mr. Spohn conducted such a docket review. Further, on October 10, Ms. Taylor searched for certain documents that had been specifically requested by Mr. Skretny while, on October 9, 18, 24 and 30, 2002, respectively, Mr. Spohn performed similar services in response to requests by Caplin & Drysdale attorneys.

In addition, on November 11, 2002, Ms. Strug searched through numerous pleading files to identify and provide Mr. Skretny with pleadings that he had requested. Moreover, on October 10, 2002, having provided Mr. Skretny with pleadings and a deposition transcript, Ms. Taylor proofread Mr. Skretny's declaration in order to verify citation form and references. All of the above tasks required legal training and judgment and hence could not have been performed by the nonlegal staff.

## SERVICE LIST
Notice Parties

**The Applicant**

Elihu Inselbuck
Peter Van N. Lockwood
CAPLIN & DRYSDALE, CHARTERED
399 Park Avenue
New York, NY 10022

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801