| | |
|---|---|
| **Objection Deadline:** | **May 12, 2003 at 12:00 p.m.** |
| | **(By agreement)** |
| **Hearing Date:** | **May 19, 2003 at 12:00 p.m.** |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| W. R. GRACE & CO., et al., | : | |
| | : | |
| Debtors. | : | Case No. 01-01139 (JKF) |
| | : | Jointly Administered |

**OBJECTION OF THE DOW CHEMICAL COMPANY AND ITS SUBSIDIARIES AND RELATED ENTITIES TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION TO EXTEND TIME WITHIN WHICH AVOIDANCE ACTIONS MAY BE BROUGHT AND STAYING THE LIMITATIONS DEADLINE PENDING A DECISION ON THIS MOTION (Docket No. 3601)**

The Dow Chemical Company and its subsidiaries and related entities, including but not limited to Union Carbide Corporation, Hampshire Chemical Corp., and Angus Chemical Company (collectively, the "Respondents"), hereby object to the Official Committee of Unsecured Creditors' Motion To Extend Time Within Which Avoidance Actions May Be Brought and Staying the Limitations Deadline Pending a Decision On This Motion, and in support thereof represent as follows:

### Background

1. On or about April 2, 2003, the Official Committee of Unsecured Creditors (the "Committee") filed their Motion To Extend Time Within Which Avoidance Actions May Be Brought and Staying The Limitations Deadline Pending a Decision On This Motion (the "Motion").

2. Because of an error in noticing of the Motion by the Committee, this Objection has been filed subsequent to the deadline established in this Court's Order Establishing Case

Management Procedures and Hearing Schedule (the "Case Management Order") for the filing of objections to motions.   The Case Management Order provides for objections to be filed seventeen days prior to an omnibus hearing date.  The Committee provided in the Motion for an objection deadline of May 12, 2003 at 4:00 p.m. Because the objection deadline was incorrectly noticed by the Committee, counsel to the Committee agreed that the deadline for the Respondents to file their objection to the Motion would be May 12, 2003 at 12:00 noon. Counsel to the Committee later filed an amended notice specifying the earlier objection deadline of May 2, 2003.

3.   The Motion recites that the above-captioned Debtors (the "Debtors") filed voluntary Chapter 11 petitions on April 2, 2001 (the "Petition Date") and that the Debtors have continued in the management and operation of their business and property.

4.   The two-year limitation period prescribed by §546(a)(1) for the commencement of preference actions therefore expired on April 2, 2003.

5.   The Motion states that the Debtors have conducted a review of their books and records and determined that approximately 45,000 transfers occurred in the 90-day period prior to the Petition Date.   The Motion acknowledges, however, that this gross number of transfers fails to account for (a) any of the defenses which would be applicable to any actions to recover such transfers or (b) the dollar amount of such transfers.  Motion at 3.

6.   The Committee recognizes in the Motion that the Debtors, having conducted an investigation into possible avoidance actions, made a determination not to pursue such actions. Motion at 5.

7.   The Committee's Motion, filed on the day the two-year limitations period set forth in §546(a) expired, requests that the Court indefinitely extend the statutorily mandated deadline for

bringing avoidance actions. Specifically, the Committee requests an extension until the earlier of (a) 60 days after a solvency determination or (b) the date a confirmation order becomes final. There is no way of knowing at this time when such dates will occur.

8. The Committee's Motion cannot be granted because the statute of limitations set forth in 11 U.S.C. §546(a) cannot be extended by the Court.[1] Even if the limitations period could be extended, the facts and circumstances in this case do not justify such an extension. Although not disclosed in the Motion, the Committee had sufficient time prior to the expiration of the limitations period to file any avoidance actions which would be worth pursuing. As the Committee was aware, the Debtors' analysis of avoidance actions showed that only a very manageable number of avoidance actions would be worth pursuing. Further, any uncertainty regarding the Committee's standing to bring the actions or the solvency of the Debtors cannot justify the failure to timely commence the actions. Finally, even if the Court could extend the limitations period and such extension were warranted, it cannot do so absent notice to the parties affected by the Motion.

### The Limitations Period of 11 U.S.C. §546(a)(1) Is Incapable Of Extension

9. Bankruptcy Courts do have the power, in appropriate circumstances, to extend certain deadlines specified in the Code or the Bankruptcy Rules. For example, Courts routinely consider requests to extend a debtor's exclusive period to file a plan under 11 U.S.C. §1121, to extend the time for a debtor to remove actions, or to extend the time to assume or reject unexpired leases. Bankruptcy Courts have such power to extend deadlines, however, only where the applicable deadline is specified in the Bankruptcy Rules and Rule 9006 expressly allows such extension, or where the applicable deadline is specified in the Code and the Code allows such extension.

10. For example, 11 U.S.C. §1121(d) specifically authorizes the Court to lengthen or shorten the exclusivity time periods set forth in that section. The time to remove actions is specified in Bankruptcy Rule 9027, and Rule 9006(b) allows extension of that time period. 11 U.S.C. §365(d)(1) provides that the time to assume or reject executory contracts or unexpired leases under that subsection may be extended for cause.

11. Where a deadline is specified in the Code, and the Code does not allow extension, the Court does not have the power to extend the time period. For example, the Court has no power to extend the 180 day deadline specified in 11 U.S.C. §1144 for the revocation of a confirmation order. See In re Orange Tree Assocs. Ltd., 961 F.2d 1445, 1448 (9th Cir. 1992) (citing 9 Collier on Bankruptcy §11.02 [2] at 648 (14th ed. 1978)).

12. The time period within which avoidance actions may be brought is established by Section 546(a) of the Bankruptcy Code. That section provides:

> (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of –
> (A)  2 years after the entry of the order for relief; or
> (B)  1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
> (2)  the time the case is closed or dismissed.

11 U.S.C. §546(a). This provision prevents "the bringing of overly stale claims, put[s] adversaries on notice to defend within a clear-cut time period, and give[s] certainty to repose from suit." In re Austin Truck Rental, Inc., 183 B.R. 398, 401 (E.D. Pa. 1995) (citing United

---

[1] The Motion should be determined by the Bankruptcy Court. This Objection is being filed with the Bankruptcy Court. Because the Committee provided a copy of the Motion to District Court Judge Alfred M. Wolin, the

States v. Kubrick, 444 U.S. 111, 117, 1000 S.Ct. 352, 356-57, 62 L.Ed.2d 259 (1979)). The Committee, through its Motion, seeks to indefinitely extend this limitations period.

> **(a)     Rule 9006(b) Does Not Authorize An Extension of the Limitations Period**

13. Rule 9006(b) of the Federal Rules of Bankruptcy Procedure allows extension of certain time periods but is inapplicable here. Neither that rule, nor any other Bankruptcy Rule, nor any provision of the Bankruptcy Code grants the Court the authority to extend the statute of limitations set forth in Section 546(a) of the Code.

14. Bankruptcy Rule 9006(b) provides, in pertinent part:

> (1) In General. ... [W]hen an act is required or allowed to be done at or within a specific period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b) (emphasis added). Significantly, the rule explicitly states that the time periods that the Court has the discretion to enlarge pursuant to that rule are those established "by these rules or by a notice given thereunder or by order of court". The statute of limitations period established by Bankruptcy Code § 546(a) is a time period which is neither established by the Federal Rules of Bankruptcy Procedure, nor by a notice given thereunder, nor by order of Court. Rather, it is established by statute.

15. The limitations on Rule 9006(b) have been noted by the courts. In In re Federated Food Courts, Inc., 222 B.R. 396 (Bankr. N.D. Ga. 1998), the Court concluded that Bankruptcy

---

respondents will likewise provide a copy of this Objection to Judge Wolin.

Rule 9006(b) does not give the Court the authority to enlarge time periods established by statute. In that case, at issue was whether the Court could apply Fed. R. Bankr. P. 9006(b) to permit a late filing of a motion to extend the time for filing a motion to assume a lease under Section 365(d)(4) of the Bankruptcy Code.  In concluding that it could not enlarge the deadline in § 365(d)(4), the Court stated:

> . . . Bankruptcy Rule 9006(b) is a rule governing the enlargement of time periods prescribed in other Bankruptcy Rules or court orders.  Bankruptcy Rule 9006(b) refers to deadlines set by 'these rules or by a notice given thereunder or by order of the court.' It does not refer to enlarging time periods prescribed by statute . . . . Thus, Bankruptcy Rule 9006(b) does not give the bankruptcy court the discretion to allow a late motion to extend the time for assuming a lease, even if the mistake were the result of excusable neglect.

Federated Food, 222 B.R. at 398-99; see also Alan N. Resnick & Henry J. Sommer, 2003 COLLIER PAMPHLET EDITION BANKRUPTCY RULES at 646 (2003 ed.) ("Rule 9006(b) only permits extensions of deadlines established by the Bankruptcy Rules and does not grant discretion to allow late motions to extend statutory deadlines.")

16. The Court in Federated Food went on to recognize that Bankruptcy Rule 9006(b) parallels Rule 6(b) of the Federal Rules of Civil Procedure.  Courts have consistently held that Rule 6(b) only applies to deadlines established by the Federal Rules themselves, deadlines in notices given under the Federal Rules, or deadlines established in court orders, and not to deadlines set by statutes.  See, e.g., Kreutzer v. Bowersox, 231 F.3d 460, 464 n.2 (8th Cir. 2000) ("Rule 6(b), by its own terms, only applies to time limits set by the Federal Rules of Civil Procedure, or to limits set by the court . . . . It cannot be used to extend a statutory limit."); Village Improvement Ass'n v. Dow Chemical Co., 655 F. Supp. 311, 315 (E.D. Pa. 1987) ("[A] court possesses the power to . . . extend deadlines only where the deadline is established by the

Rules of Civil Procedure themselves, a notice given thereunder or an order of court. Nowhere does Rule 6(b) allow a district court to extend a deadline statutorily prescribed by Congress . . ."); 4A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1165, at 473-75 (2d ed. 1987 and Supp. 1997); 1 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 6.061a (3d ed. 1997) ("Rule 6(b) does not apply to statutorily-established time periods. In other words, federal courts may not use Rule 6(b) to enlarge time periods established by statutes.")

17. In the case at hand, the limitations period established by Section 546(a) of the Bankruptcy Code, 11 U.S.C. § 546(a), is clearly a time period set by statute and not by the Bankruptcy Rules or by court order. See In re Shape, Inc., 138 B.R. 334, 337 (Bankr. D. Maine 1992) ("Section 546(a) is a true statute of limitations").[2]  As such, the Court has no authority under Fed. R. Bankr. P. 9006(b) to enlarge the Section 546(a) limitations period—much less to indefinitely extend it, as the Committee requests in its Motion.

>    **(b)      Section 105(a) Does Not Authorize An Extension, Which Would Directly Contravene An Express Provision of the Code**

18. The Court's equitable powers under Section 105(a) of the Bankruptcy Code do not permit the Court to grant the Committee's Motion. Section 105(a) provides:

> Power of Court
> (a)      The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed

---

[2] One bankruptcy court has held, in a line of cases, that Bankruptcy Code § 546(a) constitutes a "statute of repose" as opposed to a true statute of limitations; thus, the limitations period cannot be waived and once the period runs, the bankruptcy court has no jurisdiction to hear the matter. In re Frascatore, 98 B.R. 710 (Bankr. E.D. Pa. 1989); In re Calvanese, 169 B.R. 104 (Bankr. E.D. Pa. 1994); In re Selig, 1994 WL 396163 (Bankr. E.D. Pa. July 22, 1998); In re Gardner, 218 B.R. 338 (Bankr. E.D. Pa. 1998). The Court does not need to adopt the reasoning of this line of cases in order to deny the Committee's motion, because the Committee has not alleged any basis for the Court to conclude that all possible preference action defendants have waived the protection of the Section 546(a) statute of limitations.

> to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

19. Courts have uniformly held that Section 105(a) does not authorize the bankruptcy court to create rights that are not otherwise available under applicable law.  See, e.g., Southern Railway Co. v. Johnson Bronze Co., 758 F.2d 137, 141 (3d Cir. 1985); In re Reinertson, 241 B.R. 451, 455 (B.A.P. 9th Cir. 1999) ("Despite the broad grant of equitable powers [under Section 105(a)], bankruptcy courts cannot use them 'to defeat clear statutory language, nor to reach results inconsistent with the statutory scheme established by the Code.'"); In re Thomas, 203 B.R. 65, 70 (Bankr. E.D. Tex. 1996) ("This Court exercises its section 105 powers within the constraints of the Code and rules, and it does not construe its powers as being broad enough to resuscitate an expired deadline."); In re Watford, 192 B.R. 276, 281 (Bankr. M.D. Ga. 1996) ("[T]he court believes that its authority to enter orders is not unlimited, and that § 105 of the Code does not authorize bankruptcy courts to create substantive rights that are otherwise unavailable under the Code.  The bankruptcy court's equitable discretion cannot be used in a manner which is inconsistent with the directives of the Code or Rules.").

20. To permit avoidance actions to be brought after the expiration of the statutory period established by Section 546(a) of the Code is clearly inconsistent with the directives of the Bankruptcy Code, which bars the commencement of avoidance actions after the applicable deadline.  Such action is therefore beyond the scope of the Court's equitable powers under Section 105, and the Court may not rely on Section 105 as authority for granting the Committee's Motion. It would be especially inappropriate to rely on Section 105, which

authorizes any order that is "necessary or appropriate to carry out the provisions of this title" where the very provision of title 11 at issue – 11 U.S.C. §546(a) – obviously was written to bar the commencement of actions beyond the two year deadline.

21. Because neither the Bankruptcy Rules nor the Bankruptcy Code specifically authorize the Court to extend the time within which avoidance actions may be brought, and the Court's powers under Code §105 may not be used in direct contravention of specific provisions of the Code, the Court must deny the Motion.

**Even If The Limitations Period Could Be Extended, It Should Not Be Extended In These Circumstances**

**(a)     The Committee Had Sufficient Time To Commence Avoidance Actions**

22. The Committee fails to disclose in the Motion that it had at least six weeks' notice that the Debtors would not be filing any preference avoidance actions. On or about April 21, 2003, the Debtors filed a Status Report Pursuant to this Court's Order Dated March 31, 2003 (the "Status Report"). In the Status Report, the Debtors reported to the Court as follows with respect to Avoidance Actions:

> Pursuant to section 546 of the Bankruptcy Code, the Debtors must initiate any avoidance actions under sections 544, 545, 547, 548 or 553 (the "Avoidance Actions") within 2 years after the entry of the order for relief in their Chapter 11 Cases, which was entered on April 2, 2001 (the "Petition Date"). Thus, the deadline for filing any Avoidance Actions was April 2, 2003 (the "Filing Deadline"). The Debtors do not believe they are or were insolvent at any relevant time. However, in anticipation of the Filing Deadline, the Debtors conducted a review of their books and records to determine what Avoidance Actions would otherwise be appropriate. The Debtors' review was conducted consistent with their fiduciary duties and with primary consideration given to the best interests of their estates and their creditors. **On February 14, 2003, the Debtors delivered to counsel for the Creditors' Committee, the PI Committee and the PD Committee a**

> **memorandum setting forth the basis for the Debtors'
> determination that they would not pursue any Avoidance
> Actions, as well as the background information upon which
> their analysis was based.**

Status Report at 4 (emphasis added). According to the Debtors, then, the Committee had at least

six weeks' notice that the Debtors did not intend to pursue Avoidance Actions.

23. Of course, the deadline to bring Avoidance Actions was no secret, and the Committee

was aware of the Debtors' position regarding its solvency well before February 14, 2003. The

Committee could have easily reasoned well before February 14, 2003 that the Debtors would not

be bringing avoidance actions. At the latest, however, the Committee knew six weeks before the

running of the limitations period that the Debtors did not intend to bring avoidance actions.

24. Six weeks' notice was sufficient time for the Committee to file any avoidance actions

which might be worth pursuing.[3] The Motion recites that the Debtors' records reflect that using

a $50,000 threshold (without considering any defenses to liability), approximately 650

preference actions could be brought. Large bankruptcy cases frequently involve the filing of a

very large number of avoidance actions. Given the magnitude of these bankruptcy cases,[4] and

the sophistication and substantial resources of the counsel involved,[5] it is not unreasonable to

expect counsel to file 650 avoidance actions within a six week period in order to meet a statute of

limitations. This is especially true given that such complaints are routinely drafted in a standard

form, with only the name of the defendant and an exhibit listing the transfers varying between

complaints.

---

[3] The Respondents do not concede that the Committee had standing to commence such actions and reserve the right
to contest the issue of standing at such time, if any, that the Committee files avoidance actions.
[4] For example, according to footnote 1 of the Motion, these cases involve 62 different Debtor entities. Further,
payments by the Debtors in the 90-day preference period alone exceeded $300 million. Motion at 3.
[5] The Committee is represented by a firm of approximately 350 attorneys.

25. Despite the relative ease with which the Committee could have drafted a form complaint and used it to commence adversaries against any appropriate preference targets, and despite having sufficient time to commence the actions, the Committee chose not to do so.

### (b) Any Burden on the Committee in Timely Commencing Avoidance Actions Was Greatly Reduced Once Defenses to Liability Are Taken Into Account

26. As the Committee was aware when it filed the Motion, the Debtors' analysis of preference defenses suggests that only a small number of preference actions would be worth pursuing.

27. As referenced above, counsel to the Debtors prepared a memo dated February 14, 2003 (the "Avoidance Action Memo") analyzing the potential preference actions. A copy of the Avoidance Action Memo, without exhibits,[6] is attached hereto as Exhibit "A". The Avoidance Action Memo takes into account the effect of the ordinary course defense on preference actions. The Avoidance Action Memo concludes that of the approximately 45,000 payments made in the 90 day period, in excess of 44,000 were payments to vendors. The Debtors' analysis of these trade payments or vendor payments is quite instructive. The Avoidance Action Memo states:

> The Debtors' ordinary course of business for at least several years prior to the Petition Date was to pay their trade creditors between 30 and 90 days after the receipt of an invoice . . . . For purposes of this review, the Debtors determined that the proper cutoff was 60 days-i.e. that Vendor Payments made less than 60 days after the invoice date would be deemed to be in the ordinary course and not subject to a potential Avoidance Action and that Vendor Payments made more than 60 days after the invoice date would be subject to further review.

---

[6] Counsel to the Respondents requested a copy of the Avoidance Action Memo from counsel to the Debtors and counsel to the Committee. Counsel to the Debtors provided the Avoidance Action Memo but refused to provide the exhibits thereto on grounds of confidentiality and/or work product privilege. Counsel to the Committee was aware that counsel to the Debtors had provided the memo without exhibits and refused to provide the exhibits to counsel to Respondents. Although the Respondents do not agree that the Avoidance Action Memo is confidential, the version attached has been redacted in response to the Debtors' desire that specific preference targets not be identified.

Avoidance Action Memo at 3.

28. The Avoidance Action Memo further states that, with a threshold of $50,000 and excluding payments made less than 60 days after the invoice date,

> **there are only a total of twenty one Vendor Payments in this category**, with eight of the payments to the same vendor [redacted][7] and four more of the payments to another [redacted]. All but seven of the Vendor Payments were made within ninety days after the invoice date, consistent with the Debtors['] established practice. Of the seven made more than ninety days after the invoice date, one was made 92 days after the invoice date.

Avoidance Action Memo at 3-4 (emphasis added).

29.    Once the Debtors' analysis regarding payments in the ordinary course is factored in, the task of commencing appropriate preference actions against trade creditors to recover 21 payments would be quite manageable.

30.    Trade payments made up the vast majority (approximately 44,000 of 45,000 total payments) of payments made in the 90-day preference period. Avoidance Action Memo at 3. In addition to analyzing trade payments, the Debtors analyzed payments to professionals, settlement payments, employee payments, and inter-company payments with respect to preference liability. As with vendor payments, the Debtors concluded that the number of viable preference actions in other categories was greatly reduced once the ordinary course defense was taken into account. For example, the Avoidance Action Memo states that of the 131 "Professional Payments" which were paid to the 49 professionals who received payments of $50,000 or more, only seven payments were made more than 60 days after the invoice date. Further, "[a]ll but three of the Professional Payments were made within ninety days of the invoice date, consistent with the Debtors' established practice." Avoidance Action Memo at 4. The ordinary course defense

493915_7                                      12

would also reduce the number of inter-company payments in excess of $50,000 to two. Avoidance Analysys Memo at 6.

31. Thus, had the Committee commenced preference actions only with respect to payments which were made outside the ordinary course, the burden of timely commencing those actions would be greatly reduced as the number of actions to be commenced would be quite low. Of the total of over 44,000 payments which were trade, professional, or inter-company payments, only 30 were in excess of $50,000 and made beyond 60 days (21 vendor payments, 7 professional payments, and 2 inter-company payments).

> **(c)    Any Uncertainty Regarding the Committee's Standing Cannot Justify the Failure to Timely Bring the Actions**

32. The Committee contends in its Motion that it was effectively precluded from commencing avoidance actions by the pendency of the appeal before the Third Circuit in Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery, 304 F.3d 316 (3d Cir. 2002), vacated 310 F.3d 785 (3d Cir. 2002).  See Motion at 5.   In fact, the pendency of Cybergenics had no legal effect on the Committee's ability to commence avoidance actions.  The decision of the three-judge panel of the Third Circuit in Cybergenics was vacated by the Court en banc on November 18, 2002, and that decision therefore was considered a nullity from November 18, 2002 forward.  As of April 2, 2003, the state of the law was as it was pre-Cybergenics, and nothing related to Cybergenics prevented the Committee from commencing avoidance actions.

33. The possibility that applicable case law may develop in the future in a way unfavorable to the plaintiff cannot justify the failure of a plaintiff to commence an action prior to

---

[7] The names of the vendors referenced in the Avoidance Action Memo have been redacted in accordance with footnote 6.

the expiration of a statute of limitations, especially where the limitations period itself is crystal clear and the putative plaintiff is well aware in advance that the deadline imposed by the statute of limitations is approaching.

34. Even if the decision of the three-judge panel in <u>Cybergenics</u> had not been vacated, and therefore became final at the Third Circuit level, the proper course for the Committee, as a purported plaintiff wishing to preserve its rights, would be to file the avoidance actions in light of the possibility of a reversal of the holding in <u>Cybergenics</u> by the U. S. Supreme Court, or a reversal of that holding by the Third Circuit or U. S. Supreme Court in a case other than <u>Cybergenics.</u>

35. Any conclusion that a purported plaintiff is justified, based on the need to await the outcome of developments in the law, in purposely failing to timely file an action could obviously lead to disastrous results.  By such reasoning, any number of plaintiffs would be justified in reviving lapsed claims whenever a significant decision of an appellate court changed the law in a way which would have been helpful had the claims been timely commenced.  Any such rule would wreak havoc on a legal system which depends on statutes of limitation to impose some level of certainty and repose for potential defendants.

36. The Committee also contends that "[t]he Hobson's Choice of perhaps unnecessarily commencing the many potential Avoidance Actions at great expense and disruption to these estates, or letting the 546 time period lapse and therefore lose the potential recoveries to the estates is patent."  To the contrary, no such "Hobson's Choice" existed.  If one starts with the premise that the right to bring the actions should be preserved, and that the Committee knew at least six weeks ahead of time of the pending statute of limitations deadline, the only reasonable choice was to commence the avoidance actions prior to the running of the statute.  As noted

above, the cost of commencing even 650 of such actions would have been insubstantial in the context of these cases given that form complaints are frequently used and only the name of the defendant and an exhibit listing the transfers varies from complaint to complaint. Further, as discussed above, had the Committee analyzed the likely ordinary course defenses and commenced actions only with respect to those payments made outside the ordinary course, the number of actions would be substantially less than 650 and likely less than 100. If the Committee were concerned about incurring legal costs after the commencement of these avoidance actions, it could have requested a stay of proceedings for the relatively short period of time that it is likely to take the Third Circuit en banc to issue an opinion in Cybergenics.

37. More likely, however, the Committee recognized that under all of the circumstances, preserving the right to bring the avoidance actions was not critical, given (a) the likelihood of strong defenses to the avoidance actions, and (b) the small likelihood that the Committee would ultimately have authority to bring avoidance actions. Accordingly, the Committee decided not to bring the actions before the limitations period ran. Regardless of the reasonableness of that decision in light of all the circumstances, the effect of the decision is clear – the ability to commence avoidance actions has lapsed.

      **(d)**      **Any Uncertainty Regarding The Solvency Of The Debtors Cannot Justify The Failure To Timely Bring The Actions**

38. Further, the Committee points in its Motion to uncertainty surrounding the solvency or insolvency of the Debtors as a justification for the relief sought. From this standpoint, the circumstances of this case are hardly unique, as proof of the solvency of a debtor at any point in the preference period is frequently a complex undertaking. The observation that "any determination by the Court of the solvency or insolvency of the Debtors during the time period applicable to Avoidance Actions is not imminent," Motion at 4, certainly cannot be enough to

justify an extension of the limitations period, as the solvency of a debtor is frequently uncertain at the time avoidance actions are instituted.

39. *A fortorari*, had the Committee timely commenced the preference actions, the Debtors would have been presumed insolvent during the 90-day preference period. Bankruptcy Code § 547(f) provides:

> For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately proceeding the date of the filing of the petition.

11 U.S.C. §547(f). As a result, the Committee would be at a significant advantage with respect to the issue of solvency in any preference actions it commenced, as the burden of persuasion with respect to solvency would shift to the Committee only if a defendant presented evidence to rebut the presumption of insolvency. See In re Lids Corp., 281 B.R. 535, 540 (Bankr. D. Del. 2002) (Neither expert report, nor pleadings, nor subjective evidence of solvency sufficient under the circumstances to rebut presumption and shift burden of persuasion). Accordingly, any uncertainty regarding the solvency of the debtors cannot justify the relief sought.

     (e)     **The Committee Has Not Alleged Any Facts To Support A Tolling of the Limitations Period**

40. The Committee has not alleged any facts on the basis of which the Court can conclude that it is appropriate to apply equitable principles to toll the Section 546(a) statute of limitations; nor does the record of this case contain any such facts.

41. Although tolling principles are read into Section 546(a) like all federal statutes of limitations, In re Harry Levin, Inc., 175 B.R. 560, 578 (Bankr. E.D. Pa. 1994), and the question of whether tolling principles apply is a question of fact determined on a case-by-case basis, id. at 579, the Debtors in this case have not alleged "fraudulent concealment", "adverse domination",

"equitable estoppel" or any other factual basis applicable to the potential avoidance action defendants on the basis of which the Court might determine that tolling principles apply.[8]

42. To the contrary, the record in this case compels the conclusion that tolling is not warranted. The Committee had, at a minimum, six weeks' notice that the Debtors would not be filing any avoidance actions. Nonetheless, the Committee failed to file any avoidance actions within this time period. The Committee had ample opportunity to file any avoidance actions before the expiration of the statutory period, and the Committee has not alleged that any of the potential avoidance action defendants have engaged in inequitable conduct to which the failure of the Committee to timely file avoidance actions can be attributed. The Court should not reward the Committee's lack of diligence. See United Ins. Mgmt. Inc. v. Ernst & Young, 14 F.3d 1380, 1386 (9th Cir. 1994) (failure of the bankruptcy trustee to act diligently nullifies the trustee's ability to invoke the doctrine of equitable tolling with respect to the Section 546(a) limitations period).

43. Regardless of the Committee's lack of diligence, however, there is no basis such as fraudulent concealment or equitable estoppel on which the Court may conclude that tolling principles apply in this case, and the Committee has not alleged any such basis.

**The Motion Cannot Be Granted Absent Prior Notice to the Preference Targets, Who Obviously Will Be Affected By the Outcome**

44. The Committee requests in the Motion that the Court grant the extraordinary relief of an extension of the statute of limitations set forth in §546(a)(1). The Committee seeks such relief to preserve whatever rights it had to bring avoidance actions as of April 2, 2003.

45. At the time it filed its Motion, the Committee knew, or could have learned with the exercise of due diligence, the parties to whom transfers were made in the 90-day period prior to

---

[8] It is possible, of course, that in appropriate circumstances a defendant could be bound by a voluntary agreement to

the Debtors' bankruptcy filing.  The relief sought by the Committee directly impacts the rights of those parties who are preference targets or potential preference targets, because the outcome of the Motion determines whether avoidance actions can be commenced against those targets in the future.  Because the list of preference targets is a finite group which is capable of determination, and the outcome of the Motion may substantially impact their rights, applicable rules as well as fundamental principles of due process require that the preference targets receive notice of the Motion.  Local Bankruptcy Rule 2002-1(b) provides:

> In cases under Chapter 11, all motions (except matters specified in Fed.R.Bankr.P. 2002(a)(1), (4), (5), (7), 2002(b), and 2002(f) and Local Rules 4001-1 and 9013-2) shall be served only upon counsel for the debtor, the United States Trustee, counsel for all official committees, all parties who file a request for service of notices pursuant to Fed.R.Bankr.P. 2002(i), **and on any party whose rights are affected by the motion**.

Delaware Local Bankruptcy Rules 2002-1(b) (emphasis added).  Further, the United States Supreme Court has stated that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950).

46. Notwithstanding these requirements, the Committee has served the Motion only as follows:

> by facsimile transmission to (i) the Debtors' counsel; (ii) counsel to the Asbestos Committees and the equity committee appointed in these Chapter 11 cases; and (iii) the United States

---

toll the applicable limitations period.  No such circumstances exist or have been alleged here.

> Trustee, and by mail to (iv) all parties who have
> requested notice pursuant to Rule 2002 of the
> Bankruptcy Rules.

Motion at 6-7.

47. Undoubtedly there are preference targets who received payments in the 90 days before the Debtors' bankruptcy filings who have not received notice of the Motion.[9] The Motion cannot be determined under applicable law without notice to these parties. Del. Local B.R. 2002-1(b); Mullane, 339 U.S. 306.

48. The defect in notice of the Motion is of more than passing concern. Any party who has not received notice of the Motion will not be bound by any ruling the Court might issue that the statute of limitations is extended. Richards v. Jefferson County, Alabama, 517 U.S. 793, 805, 116 S.Ct. 1761, 1769 (1996) (parties who did not receive notice of prior action and were not represented in prior action are not bound by results of prior action as a matter of federal due process). Such parties would be permitted, instead, to raise the statute of limitations as an affirmative defense in their respective answers to the preference complaints.[10] This gives rise to the possibility of inconsistent rulings on the same issue, which could work a substantial injustice and may lead to further litigation regarding the issues raised in the Motion. To avoid this possibility, the Motion must be served on all of the preference targets who have not already been served, and those parties must have an opportunity to object to the Motion. Otherwise, the Court's efforts in resolving the Motion will be futile as the issue will surely have to be litigated again in the future.

---

[9] Presumably, counsel to the Respondents received notice of the Motion only because of the filing of a request for notices pursuant to Rule 2002.
[10] In the alternative, such party may assert that the failure to bring the avoidance action within the applicable time limit renders the Bankruptcy Court without jurisdiction to consider the complaint, whether or not the statute of limitations is raised as an affirmative defense by the defendant. See footnote 1.

493915_7                                          19

## **Conclusion**

49. The statute of limitations applicable to avoidance actions cannot be extended.  Even if it could be extended, the Committee has not alleged any facts which would justify such an extension.  Accordingly, the Respondents respectfully request that the Motion be denied.

Respectfully submitted,

/s/ Peter C. Hughes
Peter C. Hughes, Esquire (DE I.D. No. 4180)
Dilworth Paxson LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA  19103-7595
(215) 575-7000


and


Anne Marie P. Kelley, Esquire
Dilworth Paxson LLP
LibertyView
457 Haddonfield Road – Suite 700
Cherry Hill, NJ  08002
(856) 317-7013

Dated: May 9, 2003                          Counsel to the Respondents