```
 1
 2                    UNITED STATES BANKRUPTCY COURT
                           DISTRICT OF DELAWARE
 3
 4    IN RE:                        .        Chapter 11
                                    .
 5    W.R. Grace & Co., et al.,     .
                                    .
 6         Debtor(s).               .        Bankruptcy #01-01139 (JKF)
      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 7
                               Wilmington, DE
 8                             April 28, 2003
                                12:00 p.m.
 9
                            TRANSCRIPT OF HEARING
10         BEFORE THE HONORABLE JUDITH K. FITZGERALD
                  UNITED STATES BANKRUPTCY JUDGE
11
12    APPEARANCES:
13    For The Debtor:               Paula A. Galbraith, Esq.
                                    Pachulski, Stang, Ziehl,
14                                  Young, Jones & Weintraub
                                    919 North Market Street
15                                  Wilmington, DE 19801
16                                  Janet S. Baer, Esq.
      (Via telephone)              Kirkland & Ellis
17                                  200 E. Randolph Drive
                                    Chicago, IL 60601
18
      For Reaud, Morgan & Quinn:    Sandy L. Esserman, Esq.
19                                  Stutzman, Bromberg, Esserman
      (Via telephone)              & Plifka
20                                  2323 Bryan Street-Ste. 2200
                                    Dallas TX 75201
21
      For Equity Security Holders:  Rhonda P. Thomas, Esq.
22    Committee                     Klett, Rooney, Lieber
                                    & Schorling
23                                  Two Logan Square-12th Fl.
                                    Philadelphia, PA 19103
24
25
```



| | | |
|---|---|---|
| 1 | For Asbestos PI Committee: | Marla Eskin, Esq. |
| | | Campbell & Levine, LLC |
| 2 | | 1201 North Market St.-Ste. 1501 |
| | | Wilmington, DE 19801 |
| 3 | | |
| | For Asbestos PD Committee: | Theodore J. Tacconelli, Esq. |
| 4 | | Ferry, Joseph & Pearce, PA |
| | | 824 Market Street |
| 5 | | Wilmington, DE 19899 |
| 6 | For Trade Committee: | Michael Lastowski, Esq. |
| | | Duane Morris, LLP |
| 7 | | 1100 N. Market St.-Ste. 1200 |
| | | Wilmington, DE 19801 |
| 8 | | |
| | For ACE: | Linda M. Carmichael, Esq. |
| 9 | | White & Williams |
| | | 824 N. Market Street-Ste. 902 |
| 10 | | Wilmington, DE 19801 |
| 11 | For National Union: | Richard Palacio, Esq. |
| | | Ashby & Geddes |
| 12 | | 222 Delaware Ave.-17th Fl. |
| | | Wilmington, DE 19899 |
| 13 | | |
| | | Michael S. Davis, Esq. |
| 14 | (Via telephone) | Zeichner, Ellman & Krause, LLP |
| | | 575 Lexington Ave. |
| 15 | | New York, NY 10022 |
| 16 | Audio Operator: | Sherry Scaruzzi |
| 17 | Transcribing Firm: | Writer's Cramp, Inc. |
| | | 6 Norton Rd. |
| 18 | | Monmouth Jct., NJ 08852 |
| | | 732-329-0191 |
| 19 | | |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1    THE COURT:  You can be seated.  I'm sorry.  The next

2  matter is W.R. Grace, 01-1139.

3    (Attorneys telephonically connected)

4    THE COURT:  Good morning.  This is the matter of W.R.

5  Grace.  Will all of you on the phone please put your mute

6  buttons on until you speak, and when you do speak, identify

7  yourself and your client for the record please.  Good morning.

8    MS. GALBRAITH:  Good morning, Your Honor, Paula

9  Galbraith from Pachulski, Stang, Ziehl, Young, Jones &

10  Weintraub for the Debtors.  Also on the phone is my co-counsel,

11  Janet Baer, from Kirkland & Ellis.  Your Honor, I'd like to be

12  sure that you've received a copy of the amended agenda that was

13  filed last Thursday.

14    THE COURT:  Well, I have one.  It doesn't have a

15  filing date on it so I don't know --

16    MS. GALBRAITH:  It's the --

17    THE COURT:    if I do.

18    MS. GALBRAITH:  -- amended notice.

19    THE COURT:  Yes, I have one.

20    MS. GALBRAITH:  Your Honor, as set forth on the

21  amended notice, there's only one matter going forward today,

22  #4.  I've been -- I understand that all the parties are on the

23  telephone.  I'd like to, at this point in time, pass the matter

24  over to Mr. Esserman representing Reaud, Morgan & Quinn and

25  Environmental Litigation Group.

4

1       THE COURT:  All right.  Mr. Esserman?

2       MR. ESSERMAN:  Yes, Your Honor, this is Sandy

3    Esserman on behalf of Reaud, Morgan & Quinn.  I'll be making a

4    brief presentation this morning.  This is a discovery matter in

5    this case, which is an adversary proceeding involving the

6    Debtor and National Union Fire Insurance.  National Union

7    issued some bonds to protect a settlement that was reached in

8    Texas and in Alabama.  In Texas with Reaud, Morgan & Quinn and

9    in Alabama with Environmental Litigation Group, who I also

10   represent.  The amounts of the settlements were 21 million in

11   Texas and 59 million in Alabama.  They were to be paid in three

12   installments.  They were secured by the bond issued by National

13   Union.  The final installment was due on January 15th of '03.

14   Pending in the case is a Motion for Summary Judgment on behalf

15   of National Union.

16       National Union has adopted three -- or filed three

17   affidavits in connection with their Motion for Summary

18   Judgment; the first being a Mr. Kelly, who's a claims adjuster,

19   the second being Jay Hughes, who is W.R. Grace -- with W.R.

20   Grace and was involved in the negotiation of the settlement

21   agreements, the third being Dr. Barrett.  We are seeking -- and

22   the reason for the discovery conference is we are seeking

23   depositions of all those parties at a 30(b)(6) deponent for

24   National Union.  The only deponent who National Union has

25   agreed or the Debtor has agreed to produce is Mr. Kelly.  They

5

1  have not agreed to produce Mr. Hughes, Mr. Barrett, or

2  30(b)(6).  We're not under any particular time frame and our

3  response of Environmental Litigation Group and Reaud, Morgan &

4  Quinn Firm is not due until June 25th of '03.

5      The parties, just for the record, have been very

6  cooperative, very civil, and we certainly all understand that

7  discovery disputes are to be kept out of the Court, if at all

8  possible, and we bring this to you only reluctantly.  Again,

9  the parties have been very accommodating to one another on

10 scheduling dates and the like.  But in our view, there are two

11 issues; one, we would like to bring our own Motion for Summary

12 Judgment, and we of course need to defend the Motion for

13 Summary Judgment that's filed against us.  In that connection,

14 there has been an agreement to depose Mr. Kelly, but there has

15 been no agreement on the production of Mr. Hughes, Mr. Barrett,

16 or a 30(b)(6).  We would like to take these depositions, both

17 in connection with the Motion for Summary Judgment filed by

18 National Union and in connection with our own deposition.

19 Alternatively, if Mr. Hughes and Mr. Barrett are not going to

20 be offered for deposition, we've suggested that perhaps their

21 affidavits ought to be withdrawn in connection with the Summary

22 Judgment.

23     A brief recitation on what we believe the law to be in the

24 Third Circuit, and I'll turn it over to my colleagues at

25 National Union and the Debtor.  We believe the 3rd Circuit,

1  when deciding Summary Judgment Motions, does allow and requires

2  pertinent discovery requests that are unanswered by a party to

3  be responded to prior to the time the Motion for Summary

4  Judgement's heard.   That 3rd Circuit case is <u>Sames vs. Gable</u>,

5  732 Fed.2d, 49.   Secondly, the case that we also think is

6  instructive is the 3rd Circuit case called <u>Miller vs.</u>

7  <u>Beneficial Management</u>, at 977 Fed.2d 834 at 845.   In that case

8  the 3rd Circuit found it was error to grant summary judgment

9  where none of the people with knowledge of the facts at issue

10 had been deposed.   The next case we would call the Court's

11 attention to is an Illinois case out of the District in <u>Allen</u>

12 <u>vs. Bakeline Products</u>.   It's a 2001 U.S. District Lexus 11354,

13 it's 11354.   It's where summary judgment affidavits have been

14 stricken where the opposing party has not had the opportunity

15 to depose the affiant.   The next case we'd like to cite is a

16 2nd Circuit case, which is <u>Flairity vs. Coqland</u> and that's at

17 1713 Fed.2d 10, where there are some statements by the 2nd

18 Circuit.   The Courts agree that summary judgment's improper

19 where the party opposing the motion has been denied relevant

20 discovery.   There are other cases similar line.   We certainly

21 would either like to take discovery of the deponent, we've got

22 time to do it, both in connection with their summary judgment

23 and with our summary judgment.   Alternatively, we'd like the

24 affidavits withdrawn.   Thank you.

25          THE COURT:   All right, does the Debtor want to put

1   anything on record with respect to this issue?

2           MS. BAER:  Your Honor, Janet Baer on behalf of the

3   Debtor.  Only with respect to Mr. Hughes' affidavit.  Your

4   Honor, the affidavit of Jay Hughes is cited in National Union's

5   Motion.  This is an affidavit that the Debtor actually filed

6   when it commenced this adversary proceeding well over a year

7   ago.  National Union only cites the Hughes affidavit for two

8   things.  Number one, it cites the Hughes affidavit with respect

9   to background of how these protocols were put into place, what

10  the settlement was all about.  The second thing that National

11  Union cites the Hughes affidavit for has to do with essentially

12  a couple sentences in the Hughes affidavit where Mr. Hughes

13  indicates that the Texas protocol was not met and therefore the

14  obligation to pay under the protocol has not yet arisen.

15       Your Honor, the Hughes affidavit and those statements are

16  based on information provided to Grace by Reaud, Morgan & Quinn

17  as part of the settlement procedure.  It seems to me that in

18  this circumstance, deposing Mr. Hughes would be unnecessary and

19  quite premature.  All he has done is taken their information

20  and drawn his own conclusions on this one issue.  He did supply

21  a letter to Reaud, Morgan & Quinn when he drew that conclusion

22  indicating to them that he did not believe the appropriate

23  claims were submitted because the claims submitted were not

24  eligible to be counted having had something to do with prior

25  settlements.  That's the only thing that is cited.  It's the

1  only reason Mr. Hughes' affidavit is cited.  And again, Your

2  Honor, under Rule 56(e) on a Motion for Summary Judgment, if

3  Reaud, Morgan & Quinn does not believe that Mr. Hughes is

4  drawing the appropriate conclusions from their information, it

5  seems to me the answer to that, and the way to respond to the

6  Summary Judgment Motion and to file their own motion would be

7  to simply provide a counter-affidavit.  W.R. Grace does not see

8  why Mr. Hughes' affidavit    I'm sorry, why Mr. Hughes'

9  deposition would be necessary at this time.

10          THE COURT:  All right, anyone else wish to --

11          MR. DAVIS:  Your Honor, Michael Davis for National

12  Union.  I think this is very much a tempest in a teapot, and I

13  think the three affidavits -- or rather the three witnesses

14  being sought after be separated one at a time.  I think Ms.

15  Baer has well identified that there's nothing of substance

16  being taken from Mr. Hughes' affidavit that's potentially in

17  dispute, and I would only add one other comment about it and

18  that is what he is providing in the way of information other

19  than the documents which make up the case and he authenticates

20  the documents, and I'm sure there's no dispute as to that, is

21  he provides a tabulation, a quantity.  And we don't believe

22  that any disagreement as to that tabulation or quantity, but

23  just in case there might be, we had our Mr. Kelly do the

24  identical tabulations, and we are offering him as a deposition

25  witness so that there would be no dispute about the tabulation

1  of quantities. So that we think Mr. Hughes has nothing

2  meaningful to contribute, and the correct answer is simply to

3  realize in her Summary Judgment Motion that all we're really

4  putting Mr. Hughes up for is as the source of these tabulated

5  quantities and as the validator of the documents that make up

6  the transaction.

7       I think it's also worth noting, by the way, that National

8  Union is not the Plaintiff in this adversary proceeding. This

9  adversary proceeding was commenced by the Debtor to prevent

10  National Union from paying on these bonds. And National Union

11  cannot pay on these bonds and have its rights of recoveries in

12  tact if it pays on them when it doesn't owe on them. And since

13  the Debtor commenced this proceeding, telling us we don't owe

14  on these bonds, we have -- it's very important to us that we

15  make sure that's properly ruled on before we do make any

16  payment, if we make any payment. And we've come to believe

17  that the Debtors' arguments as to why these bonds need not be

18  paid are quite correct.

19       And it may be helpful to have an understanding of what

20  that argument is. Each of the agreements that we bonded

21  requires that submissions be made in aggregate amounts. In

22  other words, you make a submission of say $10 million. Well,

23  we don't pay it. And when I say we, I really mean Grace. If

24  the submission is not in the full aggregate amount, then Grace

25  has no obligation. If Grace has no obligation, then the surety

1    has no obligation.  So all that's at stake here is the

2    tabulation of when these amounts were submitted, how much they

3    add up to, and then the question is does the contract mean what

4    it says.  And we think that's entirely susceptible to summary

5    judgment and that's why we filed that Motion.

6        The second witness that they wish to depose that we're

7    opposing is Dr. Barrett.  Dr. Barrett is -- his affidavit is

8    not offered in connection with the Summary Judgment Motion.

9    His affidavit is offered in connection with the alternative

10   request for relief.  The alternative request for relief is that

11   in the event summary judgment is not granted, then it would be

12   necessary to adjudicate the medical status of the various

13   claimants in order to know whether they truly are entitled to

14   payment.  And Dr. Barrett has offered an affidavit to point out

15   that there is room for disagreement in that regard.  So what is

16   our ultimate request for relief?  Our ultimate request for

17   relief is actually very simple.  It's simply that the pending

18   matter before Judge Woland, identified as the personal injury

19   procedures litigation, be conducted and concluded before this

20   Court undertake a separate adjudication concerning these

21   claimants.  And we only offered Dr. Barrett's affidavit to

22   point out that there are issues.  We're not asking this Court

23   to rule on those issues at all.  And so his affidavit and his

24   deposition would serve no purpose in terms of the Summary

25   Judgment Motion, and we think it's truly an unusual imposition

1   on a busy practicing physician to ask him to sit for a

2   deposition when the only issue that he's addressing is

3   scheduling.  And that's all he's doing.  His affidavit is

4   offered for the purpose of suggesting a method of scheduling

5   this litigation.

6        The third witness that's been requested is a 30(b)(6)

7   witness of National Union.  And National Union is a surety.

8   What National Union did is it provided its guaranty with

9   respect to these transactions.  We're not denying their

10  obligation under the bond.  The issue we've raised -- and I

11  should point out, we didn't raise this issue, the Debtor did.

12  The issue the Debtor raised is does the Debtor owe the money

13  that we guaranteed.  That's the only issue before this Court.

14  Does the Debtor owe the money that is covered by our bond?  And

15  if the answer to that is no, then the bond doesn't pay; if the

16  answer to that is yes, then the bond does pay.  We haven't put

17  up any issues concerning National Union, its bond, its

18  transactions, it's events, it's circumstances.  There's just

19  the 30(b)(6) witness request from National Union's -- in the

20  face of the Summary Judgment Motion it goes to the underlying

21  transaction.  It strikes us as utterly pointless.

22        THE COURT:  Mr. Esserman?

23        MR. ESSERMAN:  Yes, Your Honor, I'd like to briefly

24  respond to both Mr. Davis and Mr. Baer.  We think, to the

25  extent that the Hughes affidavit is only cited to prove up

documents, I think Mr. Davis correctly stated, those are not in dispute. But we think that their affidavit is being used for more than that, and in fact, he has processed information and he's come to certain conclusions. We think we're entitled to test those conclusions and see, in fact, what in the submissions that he reviewed would lead him to draw such conclusions, because we believe such conclusions are in error and I think we're allowed to test that.

With regard to the affidavit of Dr. Barrett, I think if Dr. Barrett's affidavit is not to be considered in connection with the Motion for Summary Judgment, it ought to be withdrawn; either that or we ought to be allowed to test his presumptions in his affidavit. I think that there's a good chance Dr. Barrett's affidavit will be deemed by the Court to be irrelevant because the standards for submissions have been set pre-petition, have been set in the contracts and by the parties. Nevertheless, it's being offered, and it's certainly, I think, subject to contest.

Next we would like the 30(b)(6) deposition in connection with our own Motion for Summary Judgment in this case, which we think we're entitled to take the deposition of the party that has in fact sued us.

THE COURT: But you haven't filed a Motion, have you?

MR. ESSERMAN: No, not yet. But these are depositions that we would like to take in preparation for that,

1   as well as the defense of the Summary Judgment Motion that has

2   been filed.  It's almost --

3          THE COURT:  On what issue?  Because National Union

4   has just said on this record that if the conclusion is that the

5   Debtor has to pay, then National Union understands its

6   obligation to guaranty and it'll pay.  And if the conclusion is

7   the Debtor doesn't owe the money at this time, then obviously

8   there's no obligation on behalf of National Union to pay.  So

9   what

10          MR. ESSERMAN:  Your Honor, this is Sandy Esserman.  I

11   think that that may go a long way, and that stipulation on the

12   record by Mr. Davis on behalf of National Union will go a long

13   way to what we would have otherwise shown or proven at a

14   deposition of National Union, so at this time I think that that

15   probably is not necessary.

16          THE COURT:  All right, so you don't need a 30(b)(6)

17   deposition now.

18          MR. ESSERMAN:  I think at this time we don't need a

19   30(b)(6) deposition in light of that stipulation.

20          THE COURT:  All right, Mr. Fisher I want to make sure

21   that National -- I correctly stated National Union's position.

22          MR. DAVIS:  It's Michael Davis, are you asking me?

23          THE COURT:  Oh, Mr. Davis, I'm sorry, yes.

24          MR. DAVIS:  Obviously I'm hesitating.  And you can

25   sense that.  The hesitation is I haven't actually consulted

1  with my client as to whether there's some other defense to the

2  bond. And I just haven't asked the question. We put up the

3  defense to the bond that the Debtor doesn't owe the money. And

4  this Motion that's before Your Honor tests the question, "Does

5  the Debtor owe the money?" Is there the possibility of another

6  defense to this bond? None that I've put forward in this

7  Motion, none that I have in mind, and that's what I can say for

8  certain.

9           THE COURT: All right, I think if something other

10 than that, if there is going to be a different defense asserted

11 --

12         MR. DAVIS: None have been asserted up to now.

13         THE COURT: Okay.

14         MR. ESSERMAN: And, Your Honor, they what's we wanted

15 to explore in our deposition, that's all. And that's why the

16 stipulation went    or the proposed stipulation --

17         MR. DAVIS: I'm even prepared to turn this the other

18 way around. I would like the opportunity to consult with my

19 client. If we decide that we have a defense to the bond, which

20 it relates to facts, then I would offer my witness. I wouldn't

21 withhold him. So why don't we just leave that that after

22 consultation with my client, if the decision is we have a

23 defense to the bond that's related to our obligation as opposed

24 to Grace's obligation, then we will put up the witness that has

25 evidence of that.

1    THE COURT: All right. Mr. Esserman, is that

2 satisfactory?

3    MR. ESSERMAN: Yes, Your Honor.

4    THE COURT: All right. How much time will it take

5 you to notify Mr. Esserman whether or not there's going to be a

6 defense?

7    MR. DAVIS: I'd like 10 days.

8    MR. ESSERMAN: That's fine, Your Honor. Like I'd

9 indicated earlier, Mr. Davis and Ms. Baer and myself and our

10 firms have cooperated with deadlines and dates here very well,

11 so that will not be a problem.

12    THE COURT: All right, with respect to Mr. Hughes, it

13 seems to me that the deposition request for Mr. Hughes is

14 appropriate if his affidavit is going to be submitted because

15 he is a fact witness, he has made calculations. And it seems

16 to me that you can't necessarily just say that you had somebody

17 else do it and therefore his calculations were correct. He has

18 independent knowledge and a different understanding of the

19 Debtors' obligations, and I think his deposition is appropriate

20 if the affidavits are not going to be withdrawn. If you want

21 to rely only on Mr. Kelly, I think you can do that, as your

22 choice I mean not as an evidentiary matter, as your choice you

23 can do that, but if you're going to use affidavits of record, I

24 think there's entitlement to a deposition. Limited to 7 hours.

25 With respect to Dr. Barrett, I'm not sure why this affidavit's

1  filed in this Summary Judgment proceeding if it's not being

2  used for the summary judgment.

3        MR. DAVIS:  Your Honor, it's actually not being --

4  the Motion has an alternative request for relief.  The

5  alternative request for relief is simply that the case be

6  stayed pending the resolution of the personal injury procedures

7  litigation in front of Judge Woland because some of the issues

8  we think are the same.  So we put it in an affidavit by Dr.

9  Barrett to demonstrate how the issues might be similar or the

10  same.  That's all there is to it.  He's only being offered for

11  the purpose of a scheduling request.

12        THE COURT:  All right.  Mr. Esserman, he's not being

13  offered for the Summary Judgment proceedings, therefore his

14  affidavit not to be used in that connection.  So that should

15  eliminate the need for Barrett's deposition.

16        MR. ESSERMAN:  That's fine Your Honor, with that

17  clarification on the record at this point, if he's not being

18  offered for the merits, we're not -- there's no need to depose

19  him at this time.

20        THE COURT:  All right, why is it that this should go

21  forward until Judge Woland is finished however?

22        MR. ESSERMAN:  Well, it's very simple, Your Honor.

23  Regardless of what Judge Woland would decide on the merits, we

24  have a settlement agreement which sets forth the liquidation

25  procedure to be used and utilized by the parties, and in fact

1  they have done so pre-petition and have done so post-petition.

2  And we think regardless of what standards Judge Woland may

3  decide constitutes a claim constitutes a -- doesn't constitute

4  a claim.  We've got a private settlement agreement in which the

5  parties have agreed in writing as to these issues, and

6  therefore we think the Judge Woland litigation doesn't

7  necessarily bear on what has been agreed to between the parties

8  as to what's a proper claim, what's not a proper claim, and

9  that in fact is what the bonds were posted for - for payment of

10  those claims.  So that's how we see it.

11          MR. DAVIS:  If I may, Your Honor, the settlement

12  agreements are not classical settlement agreements.  They don't

13  pay this person for this particular claim.  What they do is

14  they set up protocols that set standards, and those standards

15  are very similar to the standards that Judge Woland is looking

16  at and those standards will, in the event we have to make

17  payment or in the event Grace is obligated to make payments to

18  individuals, those standards will have to be examined.  And if

19  those standards have to be examined, if we get to that point,

20  then I think whatever Judge Woland might rule on the personal

21  injury procedures will be pertinent, if not at least

22  precedential.

23          MR. ESSERMAN:  Your Honor, this is Sandy Esserman.

24  Of course we do disagree with that, but that is something that

25  we can discuss fuller and in more detail at the Summary

1    Judgment Hearing, when it is set.

2              MS. BAER:   Your Honor?

3              THE COURT:   Yes.

4              MS. BAER:   Your Honor, on behalf of the Debtor we

5    agree with Mr. Davis.   There are a lot of issues here, and in

6    fact we would anticipate joining in Mr. Davis with respect to a

7    summary judgment suggesting that this is precisely the thing

8    that should be held for Judge Woland and will have     Judge

9    Woland's rulings will have an impact on what happens here and

10   how it goes forward.

11             THE COURT:   I'm not sure why.   Because it seems to me

12   this is a contract interpretation issue.   What does Judge

13   Woland's estimate of personal injury liabilities have to do

14   with whether or not there is a valid contract and people who

15   are entitled under this agreement to make claims, and the

16   Debtors' obligation to pay them if, in fact, all of the i's

17   have been dotted and the t's crossed to get those individuals

18   paid pursuant to the settlement.

19             MR. DAVIS:   The answer is or may be that the

20   agreement that we're referring to requires that a diagnosis of

21   a certain condition exists.   And we think that's probably very

22   similar to the     which itself is not something that you can

23   simply say this individual has a diagnosis of this condition.

24   And particularly when you start looking at the documentation

25   that's been submitted to be -- that's being put forward as a

1    diagnosis, our conclusion is that these things are not

2    diagnoses.  And Judge Woland may very well rule that a

3    submission by a claimant that says he has this x-ray reading

4    and it is consistent with this conclusion is, Judge Woland

5    could rule, not a diagnosis --

6            THE COURT:  Yes, but that --

7            MR. DAVIS:  In which case, that's precisely the

8    question under this agreement.

9            THE COURT:  Well, that's a question for plan

10    confirmation purposes though.  If this master settlement

11    agreement set out some different diagnoses, it set out some

12    different diagnoses.  I mean, maybe it'll be the same, I don't

13    know, but this appears to be a pre-petition contract issue.

14            MR. ESSERMAN:  That's exactly what it is, Your Honor.

15            THE COURT:  So I'm not sure why his rulings for plan

16    confirmation purposes have any bearing on what the parties

17    agreed to pre-petition.

18            MR. DAVIS:  Well, if the words are the sames and the

19    standards are the same, and one Judge gives a ruling about what

20    all that means, wouldn't that be helpful to another Judge?

21            THE COURT:  Well, I don't know.  I mean the plan may

22    very well be different from the settlement agreement, and the

23    obligations under the plan may be different.  I recognize the

24    effect of sealed error.  Nonetheless, Debtors in general did a

25    lot of projections before the sealed error opinion came down,

1   not based on the methodology that sealed error required them to

2   use and entered into these agreements in what I think was a

3   different expectation then they are now confronted with.  And

4   so the terms of that contract may very well be different from

5   the terms of what the plan's going to require based on a ruling

6   that came into place after these agreements were negotiated.

7   So I'm not sure that there's any collateral estoppel res

8   judicata effect because you're talking a pre-petition

9   settlement agreement in one case, and a plan confirmation

10  hearing in another.

11        MR. DAVIS:  There are actually -- there are four

12  levels in which Judge Woland's proceeding could be helpful.  It

13  could simply be helpful in that it'll marshal the same evidence

14  in a way that will save the parties from having to marshal it

15  twice.  And that's the lowest level of assistance.  The second

16  level of assistance is that his decision could be a precedent,

17  just like any decision of any Court is a precedent, but since

18  the issues are so similar, the precedent would be a very

19  helpful precedent.  The third possibility is that of a

20  collateral estoppel, and as to that I'm not prepared to argue

21  that it will or it won't be, and indeed even a res judicata

22  effect.  But somewhere in that spectrum of assistance from one

23  Court to the other, we're reasonably confident that if only to

24  bring about judicial economy, it makes all the sense in the

25  world to let the one proceeding which is involving a much

1 broader universe with a much more elaborate presentation do its

2 work and provide us all with the benefit of it.

3          THE COURT:  Well, I'm not looking to take on work

4 that I don't need, I just am not sure I see a relationship

5 between the master settlement agreement process that took place

6 pre-petition and what Judge Woland has to do to try to figure

7 out what the future claims liability is for plan confirmation

8 purposes, and whether somebody has an allowed claim, if he's

9 going to go there outside the trust distribution. I mean I

10 don't know, does he have an intent to say what levels of trust

11 distribution can be paid?  Is that what he's looking at?  I

12 haven't even seen a plan, let alone a trust distribution

13 process set up yet, so I don't, I mean, I don't understand how

14 this is all fitting together at the moment.

15          MR. DAVIS:  I'm certainly not the one who can help

16 you there.  I don't know.

17          THE COURT:  Well --

18          MS. BAER:  Your Honor, that's all still pending

19 before Judge Woland.  The answer is, frankly, it hasn't been

20 resolved.  None of the procedures have been resolved at this

21 point.  They're fully briefed and waiting for Judge Woland to

22 hear them.

23          THE COURT:  What procedures, Ms. Baer?

24          MS. BAER:  With respect to the approach to the

25 personal injury claims and how they will be handled.

1        THE COURT:  In the plan.

2        MS. BAER:  In the plan.

3        THE COURT:  Okay, so he's working --

4        MS. BAER:  And frankly, how you get to the plan,

5   whether there'll be an estimation process before or after.  All

6   of that is before Judge Woland and under consideration.

7        THE COURT:  Okay.  So if he's looking at both trying

8   to figure how claims against this estate ought to be allowed,

9   and he's also looking at trying to estimate future claims, what

10  does that have to do with a pre-petition contract?

11       MR. DAVIS:  From what I understand of the person

12  injury procedures litigation, one of the issues before Judge

13  Woland is what constitutes a diagnosis.

14       THE COURT:  But that's for plan purposes, not for an

15  agreement.

16       MR. DAVIS:  Well, I understand, but their contract

17  requires that a diagnosis exist, and I'm not suggesting that I

18  know that one litigation is going to control the other; that's

19  not what I'm saying.  I'm simply saying it's helpful.  And as a

20  matter of judicial economy, it makes sense, at least in my

21  mind, to let that litigation, which has a much broader swath,

22  go forward.  And since it's going to go forward    and if

23  nothing else it may very well lead to -- it could lead to a

24  settlement of this dispute because it may set a standard that

25  people will look at and say, "That makes sense."

1    MR. ESSERMAN:  Your Honor, this is Sandy Esserman.

2  I'll be brief and hopefully this'll be the last thing I'll say,

3  but bottom line here, I think one has nothing to do with the

4  other.  This is a pre-petition contract.  It's a detailed

5  contract between the parties as to how the claims are to be

6  paid, how the claims are to be treated.  It has nothing to do

7  with unliquidated claims against this estate in the future or

8  otherwise, and I think we'd be able to demonstrate that to you

9  very clearly.  Thank you.

10    THE COURT:  All right, well, today all I have is the

11  request for the discovery, and what I'm going to do, Mr.

12  Esserman, is ask that you give me an order please that will

13  permit a deposition limited to 7 hours, of Mr. Hughes, not of

14  Dr. Barrett since his affidavit will not be used in connection

15  with the Motion for Summary Judgment, and denying the request

16  for a 30(b)(6) unless National Union asserts a defense and

17  notifies you within the next 10 days, in which case then the

18  designation of a 30(b)(6) witness is approved.

19    MR. ESSERMAN:  That'd be fine, Your Honor, and the

20  parties will work together to schedule those depositions.

21    THE COURT:  All right.  Can you attach that to a

22  Certificate of Counsel when you file it, Mr. Esserman, please?

23    MR. ESSERMAN:  Yes, I will.

24    THE COURT:  All right.  Anything else for today?  I

25  guess I should indicate what I signed -- let me see.  And then

1 I'll turn it back to you.  Just one minute.  I entered orders

2 on numbers 5, 6 and 7.  I am going to enter the order on the

3 Certificate of Counsel at item #3, if it hasn't already been

4 docketed, I'm not -- I'm behind in knowing where my staff's

5 caught up with docketing, so I don't know that.  And I don't

6 remember the status of 1 and 2, I think they're both continued?

7         MS. GALBRAITH:  That's correct, Your Honor.

8         THE COURT:  All right.  So is that it?

9         MS. GALBRAITH:  That's it.

10         THE COURT:  Anybody have any housekeeping or other

11 matters to address?  Okay, we're adjourned.  Thank you.

12         ALL:  Thank you, Your Honor.

13    (Court adjourned)

14

15                CERTIFICATION
I certify that the foregoing is a correct transcript from the
16 electronic sound recording of the proceedings in the above-
entitled matter.

17

18 *Lewis Penn*                              5-20-03
Signature of Transcriber                   Date

19

20

21

22

23

24

25

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191