1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

2

3   IN RE:                          .   Case No. 01-01139 (JKF)
                                    .
4   W. R. GRACE & CO., <u>et al</u>.,      .   Chapter 11
                                    .   Jointly Administered
5            Debtors.              .
                                    .   May 19, 2003 (1:20 p.m.)
6                                   .   Wilmington

7                    TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE JUDITH K. FITZGERALD
8            UNITED STATES BANKRUPTCY COURT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21          Proceedings recorded by electronic sound recording;
22             transcript produced by transcription service.

23

24

25

1          THE COURT:  The next matter is W.R. Grace, 01-1139.

2    Good afternoon.

3          MS. BAER:  Good afternoon, Your Honor.  Janet Baer

4    on behalf of the debtors.  Also with me, Your Honor, this

5    afternoon is Chris Lane from my office in Chicago.  I believe

6    a pro hac vice application for Chris has been filed this

7    week, and also our co-counsel from Delaware, Paula Galbraith

8    is in the court.

9          THE COURT:  Yes, there's an agenda, and I

10   understand number one's been continued.  With respect to

11   number 6 I received a written status report and told the

12   parties that nothing further was necessary.  So I think we're

13   looking at 2 through 5.

14         MS. BAER:  Thank you, Your Honor.  With respect to

15   number 2, Your Honor, it's a status on the Timothy Kane

16   matter.  As you may recall, this is a personal injury matter,

17   an accident down in Florida.  There have been two motions to

18   lift stay.  The first motion was granted and discovery

19   continued.  For that limited purpose the stay was lifted.

20   The second motion, Your Honor, you put over to today with the

21   thought that once the bar date passed we could access how

22   many claims we had against the insurance policies that

23   covered this matter and how that would implicate the bigger

24   picture.  At this point in time, Your Honor, the bar date has

25   passed.  We are in the process of analyzing our claims, but

1  we have not concluded our analysis to the point where we can

2  give an adequate answer of exactly how many claims we have

3  against this insurance policy.  We've spoken with Mr. Kane's

4  counsel.  They've agreed to continue the matter to the next

5  hearing while we get a better handle on that, and, Your

6  Honor, Chris Lane is heading up our team if you will to do

7  claims analysis, and he can give a much more detailed

8  description of where we are in terms of numbers, how many

9  claims are filed if you'd like to have that report.

10            THE COURT:  I don't really need that report right

11  now.  I'm sure I'll be getting motions at some point that

12  will tell me everything I need to know.  Just in broad

13  numbers, how many claims were filed?  My curiosity gets the

14  better of me.

15            MS. BAER:  Approximately fifteen thousand have been

16  processed so far.  The claims agent is still imaging some

17  claims, passing them on to us to do the analysis.

18            THE COURT:  Okay.  Thank you.

19            MS. BAER:  Thank you.  Your Honor, then, with this

20  one, we'd like to continue it to the June 17th hearing date.

21            THE COURT:  Fine.

22            MS. BAER:  The thought, Your Honor, is ultimately

23  we hope to stipulate and the matter can go forward, but we

24  don't know yet where we are in terms of the numbers.

25            THE COURT:  Okay.

1        MS. BAER:  Your Honor, the next matter, number 3 is

2   DK Acquisition Partners' motion.  This is with respect to DK

3   going onto the Creditors Committee.  It's our understanding

4   that the DK people and the U.S. Trustee have been in

5   discussions with respect to what they can and can't do.

6   There's an issue about trading and claims.  My understanding

7   is the people are still talking, and they've asked that this

8   matter be continued to the June 17th hearing.

9        THE COURT:  All right.

10        MS. BAER:  Your Honor, number 4 on the agenda is

11   the Official Committee of Unsecured Creditors' motion to

12   extend the time within which avoidance actions may be filed,

13   and I believe Mr. Kruger from the Committee is here to

14   present that motion.

15        THE COURT:  Okay.

16        MR. KRUGER:  Good afternoon, Your Honor.  Lewis

17   Kruger of Struker, Levin (phonetical) for the Committee.

18   Your Honor, this is a very unusual set of circumstances.

19   First, as Your Honor is well aware, the debtor takes the

20   position that it is solvent, and therefore, there are no

21   avoidance actions to be considered, and the Committee, of

22   course, would be perfectly pleased to have the debtor solvent

23   because it would mean our things would be paid in full with

24   post-petition interest and all of those good things.  Two

25   years into this case, the issue of insolvency of the debtor

1   has not yet been resolved, and there is nothing scheduled

2   that I'm aware of before Judge Rolin which will deal with the

3   asbestos issues.  So it's not clear when the issue of

4   solvency will be resolved.  Unrelated to the fact that Your

5   Honor has before yourself the Zonolight issues that are going

6   forward and probably not to be resolved for some while to

7   come.  In light of all of that, the debtor has done an

8   analysis that says yes, that we did indeed make $300,000,000

9   of payments during the ninety days next proceeding the

10  following, but it's not clear to us that either since we're

11  solvent that it matters or that these were basically all made

12  in the ordinary course, and a significant number of them were

13  from minimal amounts, the fine either is $10,000 or less or

14  is $50,000 or less.  At least two thousand of those payments

15  are greater than $50,000, and when you look at the breakdown

16  of those it's apparent that some eighty-some odd million

17  dollars was paid to asbestos claimants, some twelve thousand

18  claimants during that time period, a $180,000,000 paid to

19  trade creditors.  Those are at least in my own mind

20  significant numbers, and so the Committee finds itself in the

21  peculiar position of wanting to support the debtor on

22  solvency but recognizing that the two-year statute is

23  running.  Obviously, unrealistic to ask the debtor to get

24  forty-five thousand polling agreements from all those who

25  received payments during the ninety days next proceeding it

1   or to really do a full analysis as to which of those payments

2   may indeed be avoidable.  And with the additional

3   circumstance in this case of the uncertain situation of

4   Cybergenics (phonetical) in this Circuit, while the Third

5   Circuit has vacated its Cybergenics' decision it has not

6   ruled on the underlying issue as to whether or not committees

7   may indeed bring these actions.  Now the asbestos committees

8   which would urge that the debtor is indeed insolvent because

9   that way or I would suggest that the claims that they would

10  like to assert and have recognized in the Tractor

11  (phonetical) proceeding would bring the debtor to insolvency,

12  might have brought these actions.  I don't know whether they

13  didn't because they were comfortable with the debtor's

14  analysis or more cynical rather because they received

15  $83,000,000 in the ninety days next proceeding that made them

16  cautious about taking on of the cudgels with respect to that,

17  but it does seem to me that if ever there was a case where

18  equitable tolling of the statute then this case may well be

19  it because I'm not sure what action it is either that one

20  could ask the debtor to take under these circumstances, the

21  Committee to contemplate under these circumstances, and I

22  recognize that there is some desire on the part of trade

23  creditors and recipients of those payments to know that those

24  payments are indeed in their hands, but I would suggest that

25  they are not prejudiced by the fact that the two-year statute

1   has come and gone at this point because that was the

2   objection to their receipt of those funds may have been made

3   any time during the two years.  That they were not made

4   should not prejudice the ability of the estate to look to

5   enhance the value of the estate by recovering where

6   appropriate and avoiding avoidable preferences or avoidable

7   transfers.  Obviously one that is underway before the Court,

8   before Judge Rolin is the Sealed Air case which is not yet

9   fully concluded, which obviously was a much more significant

10  sum of money and the parties recognize that and took action

11  with respect to it.  But none the -- And even in that case,

12  the issue of whether or not the debtor was solvent was also

13  deferred by the settlement reached between the competing

14  interests in the case.  So that issue is a big overhang in

15  this case, and it's not the fault of the Committee or the

16  debtors or anything else, anybody else's that nothing can be

17  done at this time.  I would --

18      THE COURT:  How do I reinstate the statute of

19  limitations though?  I mean this isn't really an equitable

20  tolling issue; is it?  Isn't it the fact that the statute has

21  expired?

22      MR. KRUGER:  Well, no, I think our action was filed

23  before the statute did indeed expire, and so that Your Honor,

24  this hearing may be taking place after the statutory --

25      THE COURT:  But the motion was filed.

1          MR. KRUGER:  The motion was filed, yes.  The motion

2     was filed, I must confess, on the last day of that period

3     because quite frankly we were at a loss to suggest what to

4     do.  There are no cases that are precisely like this, and

5     it's not surprising because the set of circumstances is so

6     unusual.  It's rare to find debtors in chapter proceedings

7     that say they are solvent.  Most debtors don't choose to go

8     into chapter proceedings when they are solvent.  They only go

9     because usually they have insolvency related issues, namely

10    the inability to pay their debts as they become due or

11    something like that or they need to re-cash their capital

12    structure.  That's not the case here where only a set of

13    issues, the asbestos issues, God knows significant in number

14    and in dollar amount, brought the debtor into proceedings

15    where the litigation costs were so enormous all by

16    themselves.  But the parties and the estate should not be

17    prejudiced by the absence of the ability to toll the statute.

18    There, as I said, there are cases that say that the statute

19    of limitations is not jurisdictional.  It's a matter of

20    repose and the Congress had and the Supreme Court has said

21    before that where statutes are not jurisdictional then there

22    always is the opportunity for tolling, and clearly, this

23    Court and other courts have recognized that tolling

24    agreements are indeed appropriate between the parties,

25    between the debtor usually and the recipient of that

1  prospectively avoidable transfer.  Here, through that -- When

2  the debtor says I am solvent and also says there are forty-

3  five thousand of those and even if you took the two thousand

4  that were greater than the $50,000 mark, that still would be

5  a major undertaking to accomplish and perhaps when it is

6  unnecessary if the debtor is indeed solvent.  So it does seem

7  to me that this is an appropriate exercise of the Court's

8  ability to equitably toll the statute.  Now I recognize that

9  trade creditors would say, and they have said in their

10 papers, there's no reason for that kind of extension, and I

11 recognize that they do that both maybe with good intentions

12 but also seeking to preserve that which they themselves have

13 received.  The Official Committee comprises people who have

14 received payments during those time periods and recognize

15 that their payments may be at risk as well, but I think it's

16 appropriate and I think that the statute imposes a duty on

17 all the parties to look at and to pursue and to prosecute

18 avoidable transfers where those have taken place and where

19 the debtor is indeed insolvent.  The problem is that here, we

20 don't know the answer to that question and may not know it

21 for at least some significant foreseeable future.

22          THE COURT:  Okay.  Ms. Baer?

23          MS. BAER:  Your Honor, this is an unusual

24 situation.  I am simply not sure that you have any authority

25 to toll what is effectively a statute of limitations.  In

1   looking at the case law, the case law suggests that you need

2   to have a tolling agreement with the other party.  That has

3   not happened here.  As indicated in our papers, Grace did a

4   very extensive analysis that started back in November to

5   determine how many potential preference payments for example

6   were out there.  Grace does believe it's insolvent, and Grace

7   did not file Chapter 11 because it had a problem paying its

8   trade vendors.  Essentially, these were ordinary course of

9   business payments.  When it came down to how many payments

10  over $50,000 or over $10,000 were made outside of the ninety-

11  day window, it came down to a handful of payments which is

12  typical of the way Grace operated.  We were not leaving

13  creditors out there for a long period of time.  So Grace

14  concluded that there truly were almost no payments which

15  would ultimately be determined to be preferences, and in

16  addition, those payments that might be out there were to

17  people we were still doing business with, and therefore, as a

18  company that has every intention of continuing to operate

19  business into the future, these would not be preferences you

20  would ever want to pursue anyway.  Your Honor, we simply

21  don't see where you have the authority to toll this

22  limitation period.  We believe that vendors are entitled to

23  some definite answer in terms of how long they have to wait

24  before they know whether they will be a target of a

25  fraudulent conveyance or a preference.  That time period has

1    passed.   Now again, Your Honor, it's an unusual situation

2    because we do believe we're solvent, but it's also an unusual

3    situation because we did do the analysis, and we did conclude

4    that there probably are not any avoidable transfers out

5    there.   Under these circumstances, Your Honor, we believe

6    that at this point it is too late, but we don't ultimately

7    believe there's any harm to the estate because we don't

8    believe that there were many avoidable payments if any out

9    there anyway.

10           THE COURT:   Well, the cases I've seen in which

11   equitable tolling has applied, has always been in a

12   circumstance where a defense of the statute of limitations

13   has been raised and then, I guess, rebuttal to it is that

14   there should be some equitable tolling principle and the

15   Court has looked specifically at the facts of each of those

16   cases and decided yes or no that it could or couldn't as the

17   case may be equitably tolled.   I'm not aware of cases where

18   it's been done before an action's actually filed.   Are there

19   cases that --

20           MS. BAER:   We looked, Your Honor, and we couldn't

21   find anything, and certainly that's one thing that can be

22   concluded here is the actions could also be brought and then

23   and when the defense is raised, the Court could make the

24   decision as to whether or not it's appropriate or not to

25   implicate the equitable tolling.   That's the way we've seen

1   it come up.

2        THE COURT:  Yeah, I've never actually seen an

3   opinion where the Court has in advance of an action said that

4   the Court is extending the statute of limitations.  It seems

5   to me that Congress provides the statute of limitations and

6   the Court can sometimes equitably change it, but I think you

7   need the facts that are specific to each action, and that's

8   what I'm not sure of in the cases that were cited.  Are there

9   any where it has been done in advance?  Mr. Kruger, are you

10  aware of any?

11       MR. KRUGER:  Your Honor, as I said, I don't think

12  the circumstances ever arise that allow this to happen as an

13  event in advance.  This is just such a strange set of

14  circumstances.  Most of the time, actions would have indeed

15  be brought.  I wish Grace had brought actions.  They could

16  have said in their actions, We're solvent but nonetheless,

17  you know, I assume the defense would have then been raised,

18  and we would be in a different posture, but they have not

19  done that, and I don't think the estate should suffer from

20  that and when Grace says that's part of the reason they

21  didn't want to bring these, they continued to do business

22  with those suppliers, well that's all well and good, but

23  that's not what the statute says you can't decide not to

24  bring avoidable preference actions because you intend to do

25  business with those suppliers --

1      THE COURT:  Yes, but by the same token the

2 Committee's also been in place in this case for almost the

3 whole two years that the case has been here and also had the

4 authority to demand the debtor file them and then pursue the

5 actions on the Committee's own as it did before Cybergenics

6 because as of now we don't have Cybergenics, and whether we

7 will or not have it I guess is up to the Circuit, but as of

8 this minute at least there is no Cybergenics opinion that

9 prohibits the Creditors Committees from bringing those

10 actions, and as you know in this case, Judge Rolin went

11 forward with the action that was brought by the Committee in

12 the Sealed Air and Persinions (phonetical) matters.  So, I

13 think this case itself is precedent for the fact that the

14 Committee at least could comfortably rely on the fact that if

15 it could meet the standards for its ability to bring the

16 actions.

17      MR. KRUGER:  Well, remember in the footnote, the

18 debtor is solvent.  How do we do that?  We also deal with --

19 One of the issues in this case and one of the reasons that

20 the Committee did not pursue itself, the Cybergenics issue

21 with Sealed Air -- the Sealed Air issue, rather, was because

22 the Committee considered itself properly so conflicted

23 because on the one hand how do you bring an action saying

24 that the debtor was insolvent when indeed you'd like to

25 believe the debtor is solvent?

1    THE COURT:  But by the same token, the debtor can't

2  bring that action either.  I mean because the debtor is

3  saying it's solvent, so the debtor under Rule 911 --

4    MR. KRUGER:  Then the result of that, Your Honor,

5  then is exactly what it is right after equitable tolling

6  should -- make sure it takes place because it provides an

7  opportunity for the Court -- Judge Rolin ultimately in

8  deciding the asbestos issues and yourself deciding the Zone

9  Light issues can conclude whether this debtor is solvent or

10  not, but what we're now saying we're going to do is because

11  it's difficult or you really can't deal with it, we're going

12  to let the statute run and have the estate not enhanced by

13  whatever the value is of the recoveries that might be present

14  from the avoidance actions.  That seems to me the unfortunate

15  result.

16    THE COURT:  I think what I probably should do is

17  just let this issue open and not decide it until there is a

18  determination as to whether the debtor is solvent, because if

19  the debtor is solvent, the issue never comes up.  If the

20  debtor isn't solvent, then you've got the same problem

21  whether I decide that the statute could be equitably tolled

22  now or whether I do it, you know, a year from now after

23  solvency is no longer an issue.  Because, if it turns out the

24  debtor is insolvent, then I have to decide whether I can

25  equitably toll.  Meanwhile, this motion's out there.  I

1   assume that the creditors have been served.  They're aware of

2   it.  Some people have responded to it, so I'm not sure I need

3   to decide it right now.

4            MR. HUGHES:  Your Honor, may I be heard?

5            THE COURT:  Yes, sir.

6            MR. HUGHES:  Good afternoon, Your Honor.  Peter

7   Hughes, Dilworth, Paxson, LLP, representing the Dow Chemical

8   Company and its subsidiaries and affiliates.  The Court

9   simply does not have the power to extend it.  We've set forth

10  the reasons in our response which, you know, I will not

11  repeat what's in the brief, but the Court simply doesn't have

12  the power to extend a statute of limitations.

13           THE COURT:  But that's not -- That can't be correct

14  because there are cases in which equitable tolling principles

15  have been applied.

16           MR. HUGHES:  Equitable tolling --

17           THE COURT:  Yes.

18           MR. HUGHES:  -- absolutely applies.  I think the

19  cases are fairly clear that equitable tolling can apply to a

20  546 statute of limitations, but equitable tolling can't apply

21  where a purported plaintiff has knowledge ahead of time that

22  a statute of limitations is going to run and simply chooses

23  not to bring the actions for whatever reason.  If there had

24  been some sort of fraud or some sort of concealment of the

25  fact that there was a cause of action, that might justify

1    equitable tolling.  But where a committee has knowledge long

2    in advance, at least six weeks and probably much longer given

3    that the debtors have taken a position that they're solvent

4    and simply chooses to let the statute run, that's not at all

5    an appropriate circumstance in which equitable tolling can be

6    used to extend it.  I would take issue with the

7    impracticability of bringing actions on time.  With the

8    review of the debtor's avoidance action memo, it's clear that

9    if you reduce the number of actions by taking into account

10   the defenses that were going to be fairly obvious and taking

11   into account the threshold dollar amount, the number of

12   actions would be fairly manageable, and I think it would set

13   a horrible precedent for other cases if parties could simply

14   let a statute run and then argue after the fact knowing that

15   it was coming up, it just wasn't practical for us to bring

16   those actions.

17          THE COURT:  Well, that's probably true.   It may

18   very well set a terrible precedent because I'll get motions

19   like this in lots of cases that will turn out at some point

20   to be administratively or otherwise insolvent with trustees

21   appointed and then the same issue --

22          MR. HUGHES:  And that would be --

23          THE COURT:  -- will arise.

24          MR. HUGHES:  I'm sorry to interrupt, Your Honor.

25   And that would reek havoc, I think, on part of the bankruptcy

1  system.  It's not unusual for solvency to be contested at the

2  time when a statute of limitations comes up.  You know, I

3  don't think that's so incredibly unusual in this case that

4  this is a one in a million case.  But if I may, Your Honor,

5  I'd like to get back to a point that was brought up at the

6  very beginning of this which is, you know, can it even be

7  done at this point in time.  The Committee takes a position

8  that it can because the motion was filed on the last day, and

9  the answer to that is that is cannot.  I believe what they're

10 relying on is the local order that deals with -- I'm sorry,

11 the local rule that deals with bridge orders.

12          THE COURT:  Uh-huh.

13          MR. HUGHES:  That would on its face appear to allow

14 this sort of scenario.  But the -- That is simply a local

15 rule, and the --

16          THE COURT:  Well, what the local rule does --

17          MR. HUGHES:  The local rule --

18          THE COURT:  -- is simply say that an action that

19 has to be taken within a time frame is extended automatically

20 by virtue of the rule until the Court can have the hearing.

21          MR. HUGHES:  That's correct, Your Honor.

22          THE COURT:  That's all.

23          MR. HUGHES:  That's correct.

24          THE COURT:  But I'm not sure that applies to the

25 statute of limitations context.

1      MR. HUGHES:  It does not.  It absolutely does not.

2  Local Rule 1001-1(b) says that the local rules, and I'll

3  quote:  "Shall be followed insofar as they are not

4  inconsistent with the Bankruptcy Code and Bankruptcy Rules."

5  If that bridge order rule applied here, which it doesn't, it

6  would have the effect of directly negating a section of the

7  Code which says, "Actions may not be brought after the two-

8  year period".  So, the statute has run at this point, and

9  there's no -- the filing of the motion on the last day has no

10 legal effect at this point in time.  Your Honor, I think that

11 the, you know, we're at a bit of a disadvantage here because

12 all the debtor has done is cited 105.  There's no authority

13 cited that equitable tolling would apply in these

14 circumstances, and I don't think it does.  But I think it

15 would be a mistake to simply put this off to another day.

16 The Code is absolutely clear that actions may not be brought

17 after a certain time.  There's no provision for the Court to

18 extend that.  There's no provision in the rules that would

19 allow you to do that, and the only authority cited is 105.

20 105 is very clear that the Court can take certain actions

21 that are necessary or appropriate to carry out the provisions

22 of this title, and this would be directly contrary to the

23 provisions of this title, which shows the actions can't be

24 brought after a certain time period.  And I agree, that if

25 there's a tolling agreement --

1    THE COURT:  Yeah, actually, I think you're right.

2  It is more or less -- The section's called Limitations on

3  Avoiding Powers, but the way it's written it really is a

4  statute of repose because it's written in the negative.   It

5  says an action or proceeding may not be commenced after the

6  earlier of and as applicable here two years after the entry

7  of the order for relief.  So that is a time bar that I think

8  limits the Trustee's ability to even commence the action

9  within that time.  I don't think it's a jurisdictional issue

10  because the Court has jurisdiction to hear it, whether it's

11  brought on time or not.  I think the statute of limitations

12  is an affirmative defense that has to be raised, but that

13  does appear to be written more in a statute of repose than a

14  statute of limitations terms.

15    MR. HUGHES:  Your Honor, we've been able to find

16  cases on that and they go both ways whether it's

17  jurisdictional or not, but --

18    THE COURT:  I don't think it's jurisdictional.   I

19  mean, if pushed to a ruling, I would not find that statute to

20  be jurisdictional.  It simply says that the Trustee can't

21  bring an action.  It doesn't say that the Court can't address

22  it.  So --

23    MR. HUGHES:  But the point that Dow would like to

24  make is that the -- to somehow cloak this under 105, that the

25  Court has the authority to do something that's appropriate to

1    carry out the provisions of this title is simply untenable

2    because what's proposed to be done is directly contrary to

3    very clear language in the Code.  So I don't think there's

4    any way that 105 can be used as a sort of blank check to do

5    whatever the Court wants to do and whatever the Committee

6    wants to do on statutes of limitations.  It's directly

7    contradicted by the Code.  Your Honor, the -- We've made this

8    point in our papers, and I won't belabor the point, but it

9    would not have been that difficult for the Committee to

10   commence an appropriate number of actions --

                THE COURT:  Well, yes it is --

11   
                MR. HUGHES:  -- within the time period.
12

13              THE COURT:  -- if they in fact agree with the

14   debtor's argument that the debtor's solvent.  I mean the

15   Committee can't in good faith bring an action for a

16   preference if it agrees with the debtor that the debtor is

17   solvent.  There is no such action to be brought.

18              MR. HUGHES:  They could allege in their complaint

19   that the debtor was in fact insolvent during that time

20   period.

21              THE COURT:  Well, no, they can't if they think that

22   the debtor is solvent.  I mean, the statute gives the debtor

23   the presumption of insolvency, but if the debtor doesn't

24   agree that that presumption applies and the Creditors

25   Committee also doesn't agree that that presumption applies,

1  they don't have an action to be brought.  But the statute of

2  limitations isn't key to a definition of whether the debtor

3  is solvent or insolvent, it's a key to a two-year time period

4  from the order for relief.

5          MR. HUGHES:  No, but they could have drafted

6  complaints and said in the complaint, upon information and

7  belief the debtor is insolvent or may be insolvent, you know,

8  you can plead in the alternative under the Federal Rules.

9  There's a lot of leeway by which they could have commenced

10  the actions in a timely fashion.  They chose not to do so.  I

11  understand whey they didn't do so.  I'm not saying they're

12  bad lawyers.  I'm not saying they made a bad decision, but

13  the effect of that decision is that the period has run, and

14  it simply can't be revived.

15          THE COURT:  Okay.

16          MR. HUGHES:  Thank you.

17          THE COURT:  Anyone else?  Mr. Kruger?

18          MR. KRUGER:  Final comments, if I may.  Well,

19  first, I don't think that Your Honor tolling the statute

20  would have any precedential effect of a general-wide

21  distribution.  This is a very unusual set of fact specific

22  issues.  There are --

23          THE COURT:  Mr. Kruger, this is Delaware.

24  Everything has a precedent in Delaware.

25          MR. KRUGER:  Well, I don't know how many solvent

1   debtors have filed chapter proceedings in Delaware.

2       THE COURT:  I don't know but I'm willing to bet you

3   a whole lot more of them will determine that they were

4   solvent when they file if I enter this ruling.

5       MR. KRUGER:  Maybe, but I want to read, if I may,

6   from the Congressional Record that was established as

7   Official Congressional Comments on the 1994 Amendments.  It

8   said:  "It is not intended to affect the validity of any

9   tolling agreement or to have any bearing on the equitable

10  tolling doctrine."  It goes on to say, where there has been

11  fraud determined to have occurred.  Well, obviously, fraud is

12  not the issue here and I'd like to suggest that it is, and

13  Congress certainly didn't consider and nobody could have

14  considered the circumstances that are here today, but quite

15  clearly the Congress recognized that there was indeed an

16  equitable tolling doctrine applicable to this statute, and if

17  there ever was a time when it should be applied, it does seem

18  to me that these facts compel it.

19      THE COURT:  Okay.  I'm going to deny this motion.

20  I do not believe that the facts, given the circumstances of

21  this case, warrant equitable tolling on the merits of the

22  equitable tolling provisions because the Committee and other

23  parties in interest -- the Committees, plural, and the other

24  parties in interest who may have had some ability to request

25  the debtor to commence these actions and then to approach the

1    Court for relief in the event that the debtor refused to do
2    so were aware of the fact that the limitations period would
3    exist shortly after the case was filed because the Committees
4    were all appointed very promptly by the United States
5    Trustee's Office.  So they've been up and running for a long
6    time.  Also, at this point, with the Creditors Committee I
7    guess riding a fence because it's wearing essentially two
8    hats, wanting to support the debtor in the solvency
9    determination but by the same token in the event that the
10   debtor is insolvent to recover what is in the best interest
11   of other creditors and for the widest distribution, I think
12   nonetheless has to make difficult choices, and if that
13   difficult choice is to say that the debtor is solvent, then
14   there is no action to be brought.  So there is no action to
15   equitably toll if the debtor is in fact solvent.  The
16   debtor's position is that it is solvent and that's the reason
17   why these actions were not commenced.  Also, I don't think I
18   can make this ruling in advance of the specific action.  I
19   think the equitable tolling principle has to be case -- when
20   I say "case", I mean adversary in a bankruptcy context or a
21   contested matter specific, not bankruptcy case specific.
22   There may be reasons why, for example, one action may be
23   equitably tolled but another may not.  I'm not sure that that
24   applies in this case given the debtor's analysis, but
25   nonetheless, I think that the appropriate time to address it

1  is in connection with each adversary as it is filed and not a

2  ruling in advance.  I do not think that the Court can extend

3  the statute of limitations, and I think that's what this

4  motion is really asking me to do is to -- It's not to

5  equitably toll the statute but to extend it because I think

6  you can only equitably toll it after the fact.  Now, the

7  cases I've seen lead me to conclude that that is the correct

8  analysis.  I've asked the parties to point me to any that

9  have done it in advance.  If I've missed any, then my

10  analysis falls, and I would like an opportunity to reconsider

11  this.  So, please, if you find some I would like to

12  reconsider it, but my understanding of the cases that I've

13  seen is that it's an after-the-fact analysis not an up front,

14  before-the-fact analysis that has to apply.  I agree that

15  Section 105 would not be a -- the words were a "blank check"

16  and to the extent that the statute itself, Section 546,

17  provides that actions may not be commenced after the two

18  years from the order for relief, that the Court cannot use

19  105 as a substantive law provision to extend it.  I think,

20  however, that if an equitable tolling action is appropriate

21  in connection with any one adversary or contested matter, the

22  Court may be able to make use of 105 to apply those equitable

23  tolling provisions.  I just don't think it can be done in

24  advance, the way I'm being asked to do it now.  I think I've

25  covered my reasons.  The bridge order -- Oh, the bridge order

1   I don't think is -- or the rule that substitutes for bridge

2   orders, I don't think is intended to apply to a substantive

3   law provision.  It is intended to make sure that for those

4   areas like rejections or assumptions of leases or I guess in

5   some context maybe to extend the time to solicit ballots in a

6   case that if an action is filed and the Court simply can't

7   hear it before that time period expires, that the time period

8   is extended until the Court can make a ruling, but those are

9   not substantive statutes of limitations provisions I think in

10  the same context because all of those provide for a mechanism

11  by which motions to extend the time can be brought.  This

12  statutes, Section 546 does not provide for that kind of

13  extension.  So I don't think the local rule applies in the

14  context of the statute of limitations.  I hope I haven't

15  forgotten anything.  At the moment, I think those are the

16  reasons that I can recall on the record.  So I will enter an

17  order that will deny the motion for those reasons as I've

18  expressed on the record if the debtor will submit one.

19              MS. BAER:  We will do so, Your Honor.  Thank you.

20              THE COURT:  Okay.

21              MS. BAER:  Your Honor, the next matter before you,

22  item number 5, is the debtors' motion to further extend the

23  preliminary injunction as it applies to the action of Robert

24  Locke vs. Mr. Patachi (phonetical).  Your Honor, as you may

25  recall this is a situation, it's an employment discrimination

1   case against W.R. Grace and Robert Patachi, the president of

2   Grace Performance Chemicals.  The automatic stay, of course,

3   stayed the action against Grace, and the preliminary

4   injunction entered by this Court on January 22nd, 2001

5   extended the stay as to Mr. Patachi.  Your Honor asked us at

6   the hearing a couple of months ago to work this out with the

7   parties for Robert Locke.  As you may recall, there's a

8   pending motion for summary judgment brought by Grace and

9   Patachi in the case.  The parties have worked out a

10  stipulation whereby the automatic stay will be lifted as to

11  Grace, the injunction will be lifted as to Mr. Locke, and the

12  matter will be able to go forward to completion of discovery

13  and completion of the summary judgment motion ruling and

14  appeal therefrom if necessary but the automatic stay will

15  stay in place with respect to further action, the preliminary

16  injunction will stay in place as to further action with

17  respect to Mr. Patachi, and the matter, of course, can come

18  back here for further modification of the stay if and when

19  appropriate depending upon what happens on the summary

20  judgment motion.

21          THE COURT:  All right.  So essentially you're going

22  to liquidate the claim, hopefully through the summary

23  judgment motion and then if it's liquidated come back here

24  for collection on that claim.  A claim will be filed; is that

25  the idea?

1    MS. BAER: Actually, Your Honor, the summary

2 judgment motion was filed on behalf of Grace and Patachi so

3 if the summary judgment is successful there will be no claim.

4 However, if summary judgment is unsuccessful and they want to

5 further proceed, we will come back here to discuss whether

6 the stay should at that point be lifted or if the matter

7 should be liquidated here in this Court.

8    THE COURT: Okay.

9    MS. BAER: Your Honor, I have a stipulation which

10 has been signed by both parties as well as a duplicate copy

11 if Your Honor could sign it for us as we need it for various

12 purposes.

13    THE COURT: All right. Thank you. Okay.

14    MS. BAER: Your Honor, that concludes all of the

15 items on the agenda as item 6 was handled by a letter

16 submitted by the ZAI parties, and if you have nothing

17 further, we've concluded our agenda.

18    THE COURT: Is the case management order in place

19 through the end of the year in this case so that the parties

20 know what dates their motions are due and responses and so

21 forth? Has it been done through the end of the year?

22    MS. BAER: Yes, Your Honor, it has.

23    THE COURT: Okay. Anybody else? Any housekeeping

24 matters? All right. We're adjourned. Thank you.

25    MS. BAER: Thank you.

1    (Whereupon at 1:55 p.m. the hearing in this matter

2 was concluded for this date.)

3

4

5

6

7    I, Elaine M. Ryan, approved transcriber for the

8 United States Courts, certify that the foregoing is a correct

9 transcript from the electronic sound recording of the

10 proceedings in the above-entitled matter.

11

12 *Elaine M. Ryan*                                    6.02.03

13 Elaine M. Ryan
   2801 Faulkland Road
   Wilmington, DE 19808
14 (302) 683-0221

15

16

17

18

19

20

21

22

23

24

25