UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .    Case No. 01-01139 (JKF)
                                    .
W. R. GRACE & CO., <u>et al</u>.,        .    Chapter 11
                                    .    Jointly Administered
        Debtors.                    .
                                    .    January 27, 2003 (12:25p)
                                    .    Wilmington

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.



1      THE COURT:  W.R. Grace, 01-1139.  There are a

2 number of matters for this morning.  Good morning.

3      MS. BAER:  Good morning, Your Honor.  Janet Baer on

4 behalf of the debtor.  Your Honor, I believe we have a number

5 of people on the phone.  I just wanted to make sure because I

6 knew that Mr. Westbrook and Mr. Restivo were both going to

7 participate by telephone.  I'm not sure who else is on the

8 phone.

9      THE COURT:  Mr. Westbrook?

10      MR. WESTBROOK (TELEPHONIC):  Good morning, Your

11 Honor.  Ed Westbrook in Charleston.

12      THE COURT:  Good morning.  Mr. Restivo?

13      MR. RESTIVO (TELEPHONIC):  Good morning, Your

14 Honor.  Jim Restivo in Pittsburgh.

15      THE COURT:  Mr. Esserman?

16      MR. ESSERMAN (TELEPHONIC):  Yes, good morning, Your

17 Honor.  Sandy Esserman on the phone from Dallas.

18      THE COURT:  Anyone else?  Okay.  Ms. Baer.

19      MS. BAER:  Your Honor, the first matter is the

20 uncontested motion of Pitney, Hardin with respect to their

21 special fee arrangement.  Your Honor, they had had a special

22 fee arrangement approved by the Court.  It was a contingent

23 fee arrangement.  The matter's been resolved.  The fees are

24 being held, and the only issue I believe before Your Honor

25 was a final ruling approving their fees so the rest of the

1   eighty percent, the twenty percent left over on the

2   contingency fee could be paid.

3           THE COURT:  Okay.

4           MS. BAER:  Your Honor, counsel for Pitney, Hardin

5   is here.

6           THE COURT:  I'm sorry, what agenda number?

7           MS. BAER:  Agenda item number one, special fee

8   application of Pitney, Hardin.

9           THE COURT:  Didn't I do an order?

10          MS. BAER:  Your Honor, I don't believe on this one

11  we've seen an order or a certificate because it's a final fee

12  application.

13          THE COURT:  I guess I didn't.  I thought I had.

14  Okay.  No, I didn't -- Good morning.

15          MR. ZUBER:  Good afternoon, Your Honor.  Scott

16  Zuber from Pitney, Hardin, Kipp & Szuch.  Your Honor, I think

17  what happened is we had filed a notice for the interim

18  distribution, a special fee application, December 2001, and

19  pursuant to the negative notice procedures we were authorized

20  based upon no objection and the appropriate time period and

21  notice it goes down eighty percent of the $240,000

22  contingency and that after some discussions with the fee

23  ordered later on it was determined that we should have a

24  final fee application hearing to (1) approve the eighty

25  percent we already drew down as well as to approve the twenty

1   percent holdback.  And that's what this is today, Your Honor.

2   I can give the Court some background if you'd like.

3          THE COURT:  I don't think I need it at this point.

4   As I said, I thought I entered the order but I think I didn't

5   get a certificate of no objection and that's the reason that

6   I didn't.  I'm not aware of any objections; have any been

7   filed?

8          MR. ZUBER:  I'm not aware of any, Your Honor.

9          THE COURT:  Does anybody have any objection?  Okay.

10  Do I have an order?

11         MR. ZUBER:  I did not submit one, Your Honor, but

12  I'd be happy to do so.

13         THE COURT:  I think my Web Procedures require an

14  order when you're filing applications.  I realize this may be

15  a final for you, but nonetheless, please submit an order.

16         MR. ZUBER:  Yes, Your Honor.  Actually the papers,

17  I think, were filed by Pachulski, Stang so I'm not sure

18  whether an order was filed at that time.

19         THE COURT:  Well, I don't have one here, so I don't

20  know.  Do you have one?  Okay.  When I get it from -- I guess

21  attached to a CNO would be the best way to do it at this

22  point in time.

23         MR. ZUBER:  Thank you, Your Honor.

24         THE COURT:  It will be entered.  Thank you.

25         MR. ZUBER:  Your Honor, may I be excused?

1      THE COURT:  Yes, sir.  Thank you.

2      MS. BAER:  Thank you, Your Honor.  Delaware counsel

3  will submit an order with a CNO.

4      THE COURT:  Okay.

5      MS. BAER:  We'll take care of that.  Your Honor,

6  agenda item number 2 is PricewaterhouseCoopers' application

7  for a limited waiver of the local rule requirements.  A CNO

8  was filed on this on the 23rd so I don't believe Your Honor's

9  had the opportunity to enter an order.

10      THE COURT:  I haven't seen it yet.  Okay.

11      MS. BAER:  Your Honor, I understand from

12  Pricewaterhouse it was filed.  I do not have a copy myself.

13      THE COURT:  All right.  Good morning.

14      MS. SELLIS:  Good morning, Your Honor.  Debra

15  Sellis on behalf of PricewaterhouseCoopers.  Your Honor, we

16  did submit a certificate of no objection on January 23rd.

17  There was an order submitted with the original motion which

18  was filed in November.  So, the order is attached to the

19  motion.  If Your Honor would like, I can hand one up now.

20      THE COURT:  I think I have it.

21      MS. SELLIS:  Okay.

22      THE COURT:  Let me double check.

23      MS. SELLIS:  If Your Honor has any questions, my

24  co-counsel is here to address them.

25      THE COURT:  No, I don't have any questions.  I take

1   it at this point no one has any objection?

2           MS. SELLIS:  That's my understanding, Your Honor.

3           THE COURT:  Okay.  That order is entered.

4           MS. SELLIS:  Thank you.

5           THE COURT:  Okay?

6           MS. BAER:  Your Honor, agenda item number 3 is the

7   motion of the debtor for an order approving the settlement

8   with MCNIC Pipeline.  A CNO was presented along with an

9   order, and I understand that there was an issue about whether

10  it should be filed in the adversary proceeding or in the

11  bankruptcy proceeding, and Delaware counsel had cleared that

12  up with your office last week.  So at this point, we're just

13  waiting for entry of the order.

14          THE COURT:  This is the order -- The order I have

15  here is the order that was submitted with the stipulation.

16  Was there a changed one?

17          MS. BAER:  No, Your Honor.

18          THE COURT:  Okay.  That order is entered.

19          MS. BAER:  Thank you, Your Honor.

20          THE COURT:  Okay.

21          MS. BAER:  Agenda item number 4 was the debtors'

22  application to employ special counsel, Woodcock and Washburn.

23  Your Honor did enter an order on that one last week.   Your

24  Honor, agenda item number 5 --

25          THE COURT:  Wait.  Pardon me -- Oh, yes, I'm sorry.

1    Go ahead.

2         MS. BAER:  Agenda item number 5 is the debtors'

3    motion for entry of an order pursuant to Sections 363 and 365

4    of the Code with respect to a prime lease.  Your Honor also

5    entered an order on that one last week.

6         THE COURT:  Yes, I did.

7         MS. BAER:  Your Honor, that brings us to contested

8    matter number 6, motion of Caterpillar Financial Services to

9    compel payment on some leases.  Your Honor, the parties have

10   been negotiating on this one.  It's an invoicing problem that

11   Caterpillar is still trying to clear up.  The matter is to be

12   continued until the 24th of February, our next omnibus

13   hearing.  We hope by that time we will have a stipulated

14   order to present to the Court.

15        THE COURT:  All right, it's continued.

16        MS. BAER:  Your Honor, that brings us to agenda

17   item number 7, which is the debtors' motion to further extend

18   the preliminary injunction with respect to the Locke vs.

19   Patachi (phonetical) matter.  Your Honor, this is a matter

20   which has some history to it.  As you will recall on January

21   22nd, 2002, you entered a modified preliminary injunction

22   which among other things enjoined actions against current or

23   former employees, officers, and directors that arise out of

24   their employment with the debtor.  The Locke vs. Patachi

25   matter is an employment discrimination matter brought by Mr.

1  Locke against both W.R. Grace and Robert Patachi.  Mr.

2  Patachi is an executive vice-president of Grace and Grace

3  Conn.  He's also the president of Grace Performance

4  Chemicals, one of Grace's two main divisions.  Your Honor, at

5  the time you entered the January 22nd injunction, the Locke

6  vs. Patachi matter was carved out because you had asked for

7  additional information to be submitted.  The additional

8  information was submitted.  The matter was further argued and

9  on the record you determined that the preliminary injunction

10  should extend to Mr. Locke.  An order was submitted which was

11  an agreed order with Mr. Locke's counsel that extended the

12  preliminary injunction as to that matter until the end of

13  last year.  At the December omnibus hearing, it was extended

14  to this hearing by stipulation of the parties.  Your Honor,

15  the debtor is moving to further extend the preliminary

16  injunction as to this matter.  Essentially it's the same as

17  all of the many other motions that have been filed to modify

18  the injunction to lift the stay.  It is an action against a

19  third party as well as Grace, but it is truly an action that

20  is against Grace.  This is an employment discrimination

21  matter.  Mr. Patachi was acting as an employee, as a director

22  and officer of Grace.  There is an absolute indemnity.  Grace

23  has been defending the action, has been paying for the

24  defense until the injunction was entered.  The facts have not

25  changed.  It is still vital that this matter be enjoined

1  along with all of the other matters that have been enjoined

2  with respect to the preliminary injunction until we are at

3  the point where we can determine how we are going to handle

4  all non-asbestos claims.  Your Honor has entered a bar date.

5  The bar date is March 31st, 2003.  As you indicated on

6  January 29th of last year when you extended the injunction to

7  this matter, Mr. Locke is not in any different circumstance

8  and position from any of the others involved in these third-

9  party type actions, as well as actions against Grace.  His

10  remedy is to file a proof of claim, and through the proof of

11  claim process Grace will address his claim.  It has not been

12  determined at this point what will be the exact way to

13  address non-asbestos claims.  It has not been determined

14  whether or not this action will ultimately be tried where it

15  is, will be tried by this Court, or will be resolved through

16  the claims objection process some other way.  We're not there

17  yet, Your Honor.  We're moving in the right direction.  We've

18  made a tremendous amount of progress in the case, but as you

19  know well, better than anybody, we have some tremendous

20  hurdles to overcome before we can put together a

21  comprehensive reorganization plan and really before we can

22  put together a comprehensive, workable way to approach the

23  different types of claims.  Your Honor, the elements of a

24  preliminary injunction that justify the injunction in the

25  first place still very much remain.  If this action would

1   proceed against Mr. Patachi there would be a very large risk

2   of an adverse impact on the debtor in a couple of ways.

3   Number one, monetarily.  The debtor has an absolute

4   obligation to indemnify Mr. Patachi to pay for his defense.

5   Secondly, Your Honor, Mr. Patachi himself is a key employee

6   and officer of Grace.  As the president of Grace Performance

7   Chemicals, he is one of the primary people that is necessary

8   for an effective reorganization of an effective business.

9   Grace Performance Chemicals is a significant portion of the

10  debtors' business.  It represents over half of the debtors'

11  sales and over forty percent of the debtors' operating

12  profits which Your Honor last year neighbored $100,000,000.

13  Mr. Patachi is key to having this company be a viable company

14  to reorganize and key in putting together a plan that will

15  give creditors opportunities to get paid by a company that is

16  vitally operating and producing the operating profits

17  necessary to pay claims.  Your Honor, with respect to the

18  likelihood of success on the merits, Grace is moving along in

19  a very orderly fashion as promptly as it can to put together

20  a plan of reorganization.  One of the huge hurdles, the

21  fraudulent conveyance matter is essentially behind us now.

22  The ZAI trial and litigation matter has a discovery schedule,

23  it's progressing, and we have a bar date.  We have a bar date

24  for non-asbestos claims.  We have a bar date for asbestos

25  property damage claims and medical monitoring claims which

1   expires March 31st, 2003.   The vital steps that we need to

2   move this plan forward are happening, but they're not quite

3   all there yet.   With respect to balance of harms, Your Honor,

4   although certainly Mr. Locke has a right to have his day in

5   court or to submit his claim and have his claim dealt with by

6   the debtor, it is one of many in a similar circumstance that

7   all need to be addressed in an orderly fashion so that Grace

8   can put together a Chapter 11 plan and complete and have all

9   of the time and attention devoted to putting together that

10   Chapter 11 plan.   At the end of the day, an orderly way to

11   address these claims is certainly to the benefit of all

12   creditors of this estate.   And finally, Your Honor, we

13   believe that with respect to the public interest element of a

14   preliminary injunction again the public interest would favor

15   Grace moving forward in an orderly fashion with its key

16   employees and officers to put together a plan of

17   reorganization and not have to be diverted at this time with

18   respect to litigation against third parties, its officers,

19   its directors.   Your Honor, we ask that the preliminary

20   injunction with respect to the Locke vs. Patachi matter be

21   continued and put on the same schedule as the preliminary

22   injunction in general to be taken up at a time on further

23   order of the Court.

24          THE COURT:   All right.   Good afternoon.

25          MS. MILLER:   Good afternoon, Your Honor.   Kathleen

1    Miller on behalf of Mr. Locke.  Your Honor, just very

2    briefly, the Massachusetts litigation background or I should

3    say status, there is a pending motion for summary judgment

4    filed by the defendants.  The deposition for Mr. Patachi was

5    already deposed.  Discovery has been produced except for one

6    party that we had been, we believe, is prepared and just

7    needs to be produced.  As far as the indemnity, we still

8    stand that it is not an absolute indemnity, and that's what

9    the debtor argues through its papers and stands.  This is

10   absolutely an indemnity.  This is not an absolute indemnity

11   case.  We discussed this before that, you know, there are

12   certain preconditions for the indemnity to ultimately -- Mr.

13   Patachi may be ultimately entitled to it, but it's not an

14   absolute indemnity, and Mr. Patachi under Massachusetts law

15   is individually liable on this claim.  It's not purely a

16   respondent superior type claim, and if Mr. Patachi is found

17   to have discriminated against Mr. Locke, certainly it's

18   questionable, a serious question of whether or not Mr.

19   Patachi acted in good faith investitures of the company which

20   is one of the standards for indemnification under Delaware

21   General Corporation Law.  He'll have his -- Mr. Patachi can

22   have his claim -- his pre-petition claim for indemnification

23   if that's the case.  And the argument that Mr. Locke will be

24   -- his claim will be remedied by a proof of claim, we don't

25   think that is the appropriate remedy.  He may have a claim --

1  obviously he does.  He served a claim against Grace.  Against

2  Mr. Patachi, he's individually liable under a specific

3  Massachusetts statute.  To say that a proof of claim takes

4  care of that when Mr. Locke may get paid whatever percent on

5  the dollar as opposed to recover from Mr. Patachi

6  individually dollar for dollar, you're in effect releasing

7  the non-debtor claim, which this jurisdiction is very careful

8  about.  You have to have -- It's an unusual circumstance to

9  release that kind of claim, and what the debtor in essence is

10  by saying the proof of claim is the appropriate response is

11  saying, Well, you know, basically decide that release issue

12  now.  Don't worry about the Patachi claim.  He has a proof --

13  Mr. Locke has a proof of claim to file.

14         THE COURT:  What's the status of the summary

15  judgment proceedings?  I'm sorry, who filed the --

16         MS. MILLER:  The defendants filed in January 2002.

17  They filed their brief.  Mr. Locke was waiting for some

18  discovery, written discovery responses from the defendants.

19  Even post-petition, the Massachusetts court ordered Mr.

20  Patachi to produce that, and he did not do that even before

21  this Court entered the injunction.  Once we get that, the

22  parties had agreed to a reasonable time for us to file our

23  brief.  They'll file a reply and have it argued.  If they

24  win, it's over.  If they don't then the case would have to be

25  tried, and the papers filed by the debtor don't substantiate

1  how that process would pull Mr. Patachi away from his vital

2  work at the debtor.  It wouldn't necessarily be involved in

3  that process, the written process.  The trial, it may be a

4  day.  It's not a substantial amount of time as their

5  affidavit says.  There's no support for that.  So at a

6  minimum, we think that the summary judgment process should be

7  allowed to proceed.  Your Honor, we're almost coming up on

8  two years in this case.  Even the American Film case that the

9  debtors relied in their papers by this Court, that case had

10  been pending for a year and the Court noted it's a

11  preliminary injunction.  It's not a permanent injunction, and

12  the Court noted that in that case, and it's getting to be

13  about time that you deal with this issue.  We're two years,

14  almost, into this case.  They had the science trial if it

15  doesn't get resolved apparently here in the summer scheduled

16  -- I don't know if it's scheduled yet or not but they're

17  hopeful it will be scheduled in 2003.  I don't follow that

18  issue closely but apparently it's a big issue, and I assume

19  that, you know, there will be appeals and who knows how long

20  that process could take.  And what the debtors are asking

21  about in this motion is basically a permanent injunction

22  until we get to a plan, whenever we get to a plan.  There's

23  no -- Not that there's no end in sight but it's not close in

24  sight, and Mr. Locke is still sitting here with a claim

25  against a non-debtor party being enjoined improperly.

1          THE COURT:  Ms. Baer?

2          MS. BAER:  Your Honor, just briefly.  With respect

3   to the pending summary judgment motion, there is discovery

4   that Grace and Patachi would have to do.  It is not completed

5   and would have to be completed before the summary judgment

6   discovery was closed.  At that point in time a response would

7   be filed and then Grace would have to prepare a reply.  As

8   was pointed out, this is not just an action against Grace.

9   It's also an action against Mr. Patachi individually which

10  is, you can imagine, makes Mr. Patachi extremely interested

11  and spend perhaps more time than might otherwise be necessary

12  or typical to be involved in this litigation process.  It

13  would take his time and his attention even to get through the

14  summary judgment process.  Your Honor, with respect to the

15  indemnity point, there is an absolute indemnity.  The

16  language of the indemnity makes it very clear.  Grace pays

17  the fees, Grace defends the action on behalf of Mr. Patachi.

18  Only if at the end of the day there would be the possibility

19  that under Massachusetts law Grace would not be entitled to

20  pay on the indemnity I believe under Delaware law would there

21  ever become an issue, but from Grace's perspective there is

22  an absolute indemnity.  It does have to expend funds to

23  defend Mr. Patachi.  And further, Your Honor, given what

24  happened here, this employment discrimination case, Grace is

25  very much a party to it.  There would be truly a record taint

1  fear here, the Manville and A.H. Robbins type fear if this

2  action went forward against Mr. Patachi without Grace

3  participating.   This was not just an individual decision of

4  Mr. Patachi's with respect to Mr. Locke's employment.   This

5  was a decision of Grace Performance Chemicals of which he is

6  the president and a decision of Grace and likely its Board of

7  Directors.   Therefore, for this action to proceed against one

8  without the other could ultimately prejudice the debtor

9  greatly.

10         THE COURT:  Well, I -- at some point this claim is

11  going to have to be liquidated, and this claim can't possible

12  be the means-all and end-all of this case.   It just can't be.

13  I mean the debtor didn't file a bankruptcy to avoid a single

14  question of employment discrimination.   So although I

15  appreciate the fact that the debtor needs Mr. Patachi's

16  services, probably even post-confirmation you're going to

17  need Mr. Patachi's services, nonetheless, this claim is going

18  to have to be adjudicated, and quite frankly, it's a whole

19  lot different from the asbestos litigations ongoing, and two

20  years into this with a stay in place for that length of time

21  is getting to be to the point where preliminary is getting a

22  little longer than preliminary really means.   So, tell me

23  what the debtors' expectation is, how long do you need a

24  stay?  Don't tell me for five years because you're not going

25  to get it.   Give me a date on which this stay will terminate,

and I will keep it in place until that date, but I want to
know what's a reasonable period for the debtor to get
prepared for the ZAI litigation, to do whatever it's going to
have to do in-house to be able to get the appropriate parties
lined up to finish the discovery that's necessary and at
least to get through the summary judgment process.   I think
it's appropriate at that point to let this go forward.   I'm
not sure about trial and liquidation of the claim against the
estate, but I really don't think this can go on forever.   So,
give me a date.   Do you want an opportunity to confer with
counsel and try to submit an agreed order?

MS. MILLER:  Your Honor, that would be fine.   An
alternative suggestion would be we know that the bar date
expires March 31st, 2003.   At that point in time, Grace will
have the universe of non-asbestos claims.   Prior to this
Chapter 11 case filing we had a litigation book.   We knew we
had a lot of non-asbestos litigation.   Once the bar date
passes and we're able to access where things are we will
really know what the universe is.   One suggestion, Your
Honor, I would have is that the matter be continued say till
the May hearing when we have a better sense of what is out
there and then we can present Your Honor with a plan as to
non-asbestos litigation, how we would suggest approaching it.
This is not the only significant non-asbestos matter.   It's
certainly not the be-all and end-all, but, Your Honor, there

1    are a lot of other cases that would fit into this same

2    category and to be --

3           THE COURT:  All right.

4           MS. MILLER:  -- off doing different things in

5    different timings just doesn't make sense.

6           THE COURT:  Okay.  I can't see that pushing this

7    till May for a further status report that will see how the

8    debtor plans to reconcile all of these claims if the debtor

9    has a plan will hurt, but in May, I don't expect you to come

10   back with another request for an indefinite extension.  I

11   want a time frame at that point within which this action, I'm

12   not asking about all of them, I'm asking about this one, is

13   going to be adjudicated either in this Court or elsewhere,

14   wherever you're going to do it, I'm going to get it finished.

15   So this motion will be continued till May 19th.  What's your

16   time?  Is it at noon?

17          MS. MILLER:  Yes, it is, Your Honor, it's noon.

18          THE COURT:  So agenda number 7 is continued to May

19   19 at noon to see if the parties have agreed on a schedule

20   for resolving either the motion is pending or the claim

21   overall, whatever it is that you've agreed to, but that's

22   what I want to know, if you've come to some agreement, and if

23   not, then I expect to do some sort of a scheduling order

24   myself that day.

25          MS. MILLER:  Thank you, Your Honor.

1       THE COURT:  Okay.

2       MS. BAER:  Your Honor, agenda item number 8 was put

3  on the agenda at your request two omnibuses ago, and that was

4  I believe in a necessity of rescheduling the June omnibus

5  hearing.

6       THE COURT:  Oh, yes.  I think, however, that I was

7  able to resolve this.  Mona, I need -- Oh, maybe she gave

8  them to me.  Let's see if I have June's schedule.  No.  No, I

9  have it -- Okay.  It looks like Tuesday, June 17th at noon.

10  I'm not sure currently what time this case was scheduled for

11  or what day.  It might have been Thursday.  I had to move my

12  Thursday matters to Monday so you may already have been on

13  that day, June 17 at noon?  Tuesday?

14       MS. BAER:  I don't know for sure, but we are

15  scheduled regularly on that date at noon.

16       THE COURT:  Yes.  No, this looks to be Tuesday at

17  noon because on Monday of that week I have Peregrin set.  So

18  the new omnibus date for June would be Tuesday, June the 17th

19  at noon.

20       MS. BAER:  Thank you, Your Honor.

21       THE COURT:  Okay.

22       MS. BAER:  Your Honor, agenda item number 9 is the

23  status of the ZAI litigation.  I know that Mr. Westbrook

24  submitted a letter to Your Honor on January 23rd that gave

25  you a general status, and Mr. Westbrook and Mr. Restivo are

1    on the phone to address the status further.

2            THE COURT:  All right, Mr. Westbrook.

3            MR. WESTBROOK (TELEPHONIC):  Good afternoon, Your

4    Honor.

5            THE COURT:  Good afternoon.

6            MR. WESTBROOK (TELEPHONIC):  Your Honor, we

7    conferred with counsel for Grace last week and the letter

8    dated June 23rd, 2003 that you received is a result of our

9    joint conference presenting to you the status of the matter.

10   As the Court will see we are proceeding through the fact

11   discovery.  We have informed Grace of our intention to take a

12   number of depositions.  A number of those are scheduled.  I

13   think two are scheduled the 3rd.  They are lining up and

14   we're discussing three others right now.  Grace has indicated

15   they wish to take some fact depositions as well during the

16   month of February, which ends up our fact discovery.  We have

17   had a number of issues on document production which

18   thankfully we have been able to work out including a number

19   of items on privileged documents.  I think we're down from

20   the entire list of privileged documents and some that we had

21   challenged are down to two or three documents that we're

22   still discussing with Grace and if we can't make those go

23   away we may have to present those to the Court.  Then we are

24   generally -- We have been at it on both sides of this for

25   these two firms over a decade, Your Honor.  We are making our

1  best efforts to move the matter along expeditiously and

2  without having to bother the Court with too many matters that

3  lawyers should be able to resolve between themselves.

4          THE COURT:  Okay.  I'm not sure where in your

5  discovery process -- I understand that you have a couple of

6  depositions and things are still going on, but where are you

7  with respect to talking about whether you can come up with an

8  agreed upon resolution through either your own consensual

9  efforts or through some mediation or is that simply not going

10  to work based on the nature of this suit.

11          MR. WESTBROOK (TELEPHONIC):  Oh, Your Honor, it was

12  -- I would never say it's not going to work.  We are ending

13  fact discovery in February.  The expert reports are due, our

14  expert reports from the GAI claimant side are due in March,

15  the debtors' reports in April, and I think after we have

16  those reports and counsel for Grace can correct me, that we

17  probably would be in a position to have some discussions

18  along those lines at least to see if there was anything that

19  we could attempt to try to focus on, but my sense is, at

20  least from having dealt with Grace in the past, that until we

21  get the fact discovery out of the way and the expert reports

22  on both sides laid out that we might not be able to have very

23  fruitful discussions at all.  Jim?

24          MR. RESTIVO (TELEPHONIC):  Your Honor, Jim Restivo

25  for Grace.  I agree with what Mr. Westbrook has said.  I

1    think it would be necessary to get the experts' reports and

2    to review them on each side.   In the many years of litigation

3    between Grace, Mr. Westbrook's firm or firms, some cases have

4    been tried to very -- to judgment.   Some cases have settled,

5    and so I think after the experts give the parties their

6    respective opinions there can be some discussion about the

7    possibility of settlement, and given past history, we know

8    that the parties in an appropriate case do know how to

9    settle.   We also know the parties know how to go to trial,

10   but I do agree with Mr. Westbrook that until the experts

11   opine and we get a chance to look at that any discussions

12   right now would be premature.

13            THE COURT:   All right.   I guess I'd like this put

14   back on the agenda then for -- I'm not sure which, April or

15   May?   Which is better?   Because we can discuss where you are

16   and how much progress you've made, I suppose May.

17            MR. WESTBROOK (TELEPHONIC):   I think May would be

18   -- Ed Westbrook, Your Honor, I think May probably would be

19   right.

20            MR. RESTIVO (TELEPHONIC):   We would agree with

21   that, Your Honor.   I think the May omnibus is May 19 unless

22   that's been changed.

23            THE COURT:   No, I think that's the correct date.

24            MR. WESTBROOK (TELEPHONIC):   And I think that would

25   be a good time to bring this back up on the agenda.

1      THE COURT:  Okay.  That's fine.  I'll just ask

2 counsel, please, to put it back on for that date.  Okay.

3 Anything else in Grace today?

4      MS. BAER:  Your Honor, we have one housekeeping

5 matter with respect to the Carol Girard (phonetical) matter.

6 As you will recall in June the Carol Girard matter came up

7 before Your Honor with respect to a motion for

8 reconsideration having to do with the preliminary injunction

9 and the effect on Maryland Casualty Company.  Your Honor

10 entered an order denying the motion for reconsideration.

11 Carol Girard at that time or shortly thereafter filed a

12 motion with respect to the Maryland Casualty Company asking

13 for a bond to be posted.  Your Honor heard arguments on that

14 in September and again in November, and in November indicated

15 from the bench that you would be entering an order denying

16 the motion with respect to the bond.  The order that was

17 actually entered by the Court was another order denying the

18 motion for reconsideration of the merits.  It was not an

19 order denying the motion for request of bond, and so we would

20 like to submit an order to Your Honor that has been agreed to

21 by the parties that denies the motion requesting the

22 submission of the bond.

23      THE COURT:  Okay.  I'll take it.  Did I get the

24 correct order from somebody?  Because I think when I saw that

25 order, it's awhile ago now, but I looked at it and thought,

24

1    Gee, I thought I signed this --

2             MS. BAER:  You did, Your Honor.

3             THE COURT:  -- and I signed it again.  Okay.

4             MS. BAER:  Yeah, you did, Your Honor, and we -- I

5    don't know what happened with respect to what you got but we

6    were going to clear this up last month, and then the hearing

7    was canceled so we do have the order now to submit to you.

8             THE COURT:  All right.  Okay.  That order is

9    signed.

10            MS. BAER:  Thank you, Your Honor.  That completes

11   the matters on our agenda.

12            THE COURT:  Anyone else have any matters?  Okay.

13   Thank you.

14            MS. BAER:  Thank you, Your Honor.

15            UNIDENTIFIED SPEAKER (TELEPHONIC):  Thank you, Your

16   Honor.

17            (Whereupon at 1 p.m. the hearing on this matter was

18   concluded for this date.)

19

20

21

22

23

24

25

1        I, Elaine M. Ryan, approved transcriber for the

2   United States Courts, certify that the foregoing is a correct

3   transcript from the electronic sound recording of the

4   proceedings in the above-entitled matter.

5

6   _Elaine M. Ryan_                        6 · 02 - 03

7   Elaine M. Ryan
    2801 Faulkland Road
    Wilmington, DE 19808
8   (302) 683-0221

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25