IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                    )
                                          )
                                          )    Chapter 11
                                          )
W. R. GRACE & CO. et al.[1]               )    Case No. 01-01139 (JKF)
                                          )    (Jointly Administered)
        Debtors.                          )


**EIGHTH QUARTERLY VERIFIED APPLICATION OF CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN FOR COMPENSATION FOR SERVICES AND REIMBURSEMENT OF EXPENSES AS SPECIAL COUNSEL TO W.R. GRACE & CO., ET AL., FOR THE INTERIM PERIOD FROM JANUARY 1, 2003 THROUGH MARCH 31, 2003**

Pursuant to sections 327, 330 and 331 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Fed. R. Bankr. P. 2016, the Retention Order (as defined below), the Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Professionals and Official Committee Members (the "Interim Compensation Order") and Del. Bankr. LR 2016-2, the law firm of Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein ("CBBG") as special litigation and

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. -Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (Ma Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G_C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

environmental counsel for the above-captioned debtors and debtors in possession (collectively, "Debtors") in connection with their chapter 11 cases, hereby applies for an order allowing it (i) compensation in the amount $413,932.00 for the reasonable and necessary legal services CBBG has rendered to the Debtors and (ii) reimbursement for the actual and necessary expenses that CBBG incurred in the amount of $28,040.43 (the "Application"), for the interim quarterly period from January 1, 2003 through March 31, 2003 (the "Fee Period"). In support of this Application, CBBG states as follows:

### Retention of CBBG

1. On April 2, 2001 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). On April 2, 2001, the Court entered an order procedurally consolidating the Chapter 11 Cases for administrative purposes only. Since the Petition Date, the Debtors have continued to operate their businesses and manage their properties as Debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. By this Court's order dated March 18, 2002, the Debtors were authorized to retain CBBG as their special counsel, effective as of February 1, 2002, with regard to environmental and litigation matters (the "Retention Order"). The Retention Order authorizes the Debtors to compensate CBBG at hourly rates charged by CBBG for services of this type and to be reimbursed for actual and necessary out-of-pocket expenses that it incurred, subject to application to this Court in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, all applicable local rules and orders of this Court.

### Monthly Interim Fee Applications Covered Herein

3. Pursuant to the procedures set forth in the Interim Compensation Order, professionals may apply for monthly compensation and reimbursement (each such application, a "Monthly Fee Application"), and the notice parties listed in the Interim Compensation Order

2

may object to such request. If no notice party objects to a professional's Monthly Fee Application within twenty (20) days after the date of service of the Monthly Fee Application, the applicable professional may submit to the Court a certification of no objection whereupon the Debtors are authorized to pay interim compensation and reimbursement of 80% of the fees and 100% of the expenses requested.

4. Furthermore, and also pursuant to the Interim Compensation Order, professionals are to file and serve upon the notice parties a quarterly request (a "Quarterly Fee Application") for interim Court approval and allowance of the Monthly Fee Application filed during the quarter covered by the Quarterly Fee Application. If the Court grants the relief requested by the Quarterly Fee Application, the Debtors are authorized and directed to pay the professionals 100% of the fees and expenses requested in the Monthly Fee Applications covered by that Quarterly Fee Application less any amounts previously paid in connection with the Monthly Fee Applications. Any payment made pursuant to the Monthly Fee Applications or a Quarterly Fee Application is subject to final approval of all fees and expenses at a hearing on the professional's final fee application.

5. This is the fifth Quarterly Fee Application (designated as the Eighth Quarterly Interim Fee Application) for compensation for services rendered that CBBG has filed with the Bankruptcy Court in connection with the Chapter 11 Cases, which covers the Fee Period of January 1, 2003 through March 31, 2003.

6. CBBG has filed the following Monthly Fee Applications for interim compensation during this Fee Period:

    (a)    Verified application of Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein for compensation for services and reimbursement of expenses as special counsel to W.R. Grace & Co., et al., for the interim period of January 1, 2003 through January 31, 2003 (the "January Fee Application"), attached hereto as Exhibit A.

3

(b) Verified application of Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein for compensation for services and reimbursement of expenses as special counsel to W.R. Grace & Co., et al., for the interim period of February 1, 2003 through February 28, 2003 (the "February Fee Application"), attached hereto as Exhibit B.

(c) Verified application of Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein for compensation for services and reimbursement of expenses as special counsel to W.R. Grace & Co., et al., for the interim period of March 1, 2003 through March 31, 2003 (the "March Fee Application"), attached hereto as Exhibit C.

7. The period for objecting to the fees and expense reimbursement requested in the January Fee Application, February Fee Application and March Fee Application have expired and no objections have been filed.

8. CBBG has advised and represented the Debtors in connection with environmental and litigation matters.

### Explanation For More Than One Professional Attending/Participating in Conferences/Meetings

9. The three attorneys at CBBG who are involved with the *Interfaith Community Organization v. Honeywell International, Inc.* ("*ICO*") matter are John M. Agnello, Esq. ("JMA"), Melissa E. Flax, Esq. ("MEF") and Robert C. Scrivo, Esq. ("RCS").

10. On the following dates, both JMA and RCS participated in the same meeting/conference with other attorneys not from CBBG which meetings related to all parties' trial exhibits sought to be introduced at trial: 1/7/03; 1/8/03; 1/10/03; 1/11/03; 1/31/03.

JMA is co-lead trial counsel with Christopher H. Marraro, Esq. of Wallace, King, Marraro & Branson. As co-lead trial counsel, JMA's participation in all aspects of trial preparation, including admissibility issues relating to all parties' trial exhibits, is essential to the presentation of the Grace Defendants' claims and defenses, and to their trial strategy.

RCS is part of the litigation trial team. As part of the litigation trial team, RCS's participation in these conferences/meetings was necessary because RCS was responsible for

4

reviewing all of the parties' trial exhibits (totaling in excess of 5000 documents) and ascertaining what objections, if any, could be raised to any given trial exhibit and what legal arguments, if any, would support the admissibility of any given trial exhibit.

11. On the following dates, both JMA and RCS attended the trial in the *ICO* matter: 1/14/03; 1/15/03; 1/16/03; 1/21/03; 1/22/03; 1/23/03; 1/27/03; 1/28/03; 1/29/03; 1/30/03; 2/3/03; 2/4/03; 2/5/03; 2/6/03; 2/11/03.

JMA is co-lead trial counsel with Christopher H. Marraro, Esq. of Wallace, King, Marraro & Branson. As co-lead trial counsel, JMA's participation in all aspects of the trial, including examination and cross-examination of witnesses, and admissibility issues relating to all parties' trial exhibits is essential to the presentation of the Grace Defendants' claims and defenses, and to their trial strategy.

RCS is part of the litigation trial team. As part of the litigation trial team, RCS's presence at the trial was necessary because RCS was responsible for reviewing all of the parties' trial exhibits (totaling in excess of 5000 documents) and ascertaining what objections, if any, could be raised to any given trial exhibit and what legal arguments, if any, would support the admissibility of any given trial exhibit. RCS's presence was also required to take notes of the witnesses' testimony while JMA examined and/or cross-examined witnesses.

Since JMA required the assistance of another attorney throughout the trial, JMA determined that RCS, an associate with CBBG, rather than MEF, a partner with CBBG, should attend the trial with him.

12. On the following dates, both JMA and MEF or RCS participated in conferences/meetings with other attorneys not from CBBG which meetings related to the Grace Defendants' proposed Findings of Fact and Conclusions of Law to be submitted to the Court: 2/8/03; 2/12/03; 3/11/03; 3/13/03; 3/24/03; 3/30/03; 3/31/03.

JMA is co-lead trial counsel with Christopher H. Marraro, Esq. of Wallace, King, Marraro & Branson. As co-lead trial counsel, JMA's participation in the preparation and content of the Grace Defendants' Findings of Fact and Conclusions of law is essential to the Grace Defendants' claims and defenses and to their trial strategy.

MEF is part of the litigation trial team. As part of the litigation trial team, MEF's participation was required because MEF was responsible for the coordination and preparation of the Findings of Fact and Conclusions of law to be filed with the Court. MEF was also responsible for drafting portions of the Findings of Fact and Conclusions of Law.

RCS is part of the litigation trial team. As part of the litigation trial team, RCS's participation was required because RCS was responsible for reviewing all of the parties' exhibits (totaling in excess of 5000 documents) and ascertaining what objections, if any, could be raised to any given trial exhibit and what legal arguments, if any, would support the admissibility of any given trial exhibit. RCS was also present at the trial and therefore was fully familiar with all of the trial testimony in support of the Grace Defendants' claims and defenses. RCS was also responsible for drafting portions of the Findings of Fact and Conclusions of Law.

### Explanation for "Lumping" of Time Entries

13. One of the issues that the Fee Auditor has raised with respect to previous quarterly fee applications is that of "lumping" of time. In connection with the preparation for the trial in the *ICO* matter and the preparation of the Findings of Fact and Conclusions of Law, multiple tasks are being performed simultaneously which makes it difficult, if not impossible in some cases, to ascertain precisely how much time was spent on a particular task. For instance, with the preparation for trial, there are various tasks engaged in when preparing a witness for trial or preparing for the examination or cross-examination of any given witness. The review normally entails reviewing expert reports and deposition transcripts, as well as either telephone calls and/or emails with co-counsel regarding trial strategy. The task itself is preparation for

trial. The general task of "Trial Preparation " therefore included multiple sub-tasks as identified in CBBG's fee detail.

Part of the trial preparation included the issuance of forty (40) trial subpoenas. In response to each of the trial subpoenas, MEF received numerous telephone calls and was required to send information to a majority of the subpoenaed witnesses. The task itself was trial preparation – trial subpoenas which included multiple sub-tasks as identified in CBBG's fee detail.

With respect to post-trial issues, the task is either (a) preparation of Findings of Fact, (b) preparation of Conclusions of Law, (c) preparation of final trial exhibit lists with comments to and from all parties and/or (d) preparation of various stipulations relating to certain documents and past costs incurred by the Grace Defendants and Honeywell. Undertaking the task of preparation of these papers include sub-tasks as identified in CBBG's fee detail.

The time entries referenced in the foregoing paragraphs are: MEF (1/2/03; 1/3/03; 1/6/03; 1/7/03; 1/8/03 (2 entries); 1/9/03 (2 entries); 1/10/03; 1/13/03; 1/14/03; 2/10/03; 2/13/03; 3/7/03); JMA (1/10/03; 1/12/03; 1/17/03; 2/10/03; 2/12/03; 2/13/03; 2/14/03; 2/15/03; 3/3/03; 3/4/03; 3/5/03; 3/11/03 (2 entries); 3/17/03; 3/18/03; 3/19/03; 3/20/03; 3/22/03; 3/24/03; 3/25/03; 3/26/03; 3/27/03; 3/28/03; 3/30/03; 3/31/03); RCS (2/12/03; 3/7/03).

### Requested Relief

14. By this Eighth Quarterly Fee Application, CBBG requests that the Court approve the interim allowance of compensation for professional services rendered and the reimbursement of actual and necessary expenses incurred by CBBG for the Fee Period, which is from January 1, 2003 through March 31, 2003, as detailed in the Applications, less any amounts previously paid to CBBG pursuant to the Application and the procedures set forth in the Interim Compensation Order. As stated above, the full scope of services provided and the related expenses incurred are fully described in the Applications, which are attached as Exhibits A, B and C.

15. CBBG may have in the past represented, may currently represent, and likely in the future will represent parties-in-interest in connection with matters unrelated to the Debtors and the Chapter 11 Cases. CBBG disclosed in the Affidavits its connection to parties-in-interest that it has been able to ascertain using its reasonable efforts. CBBG will update the Affidavits when necessary and when CBBG becomes aware of material new information.

### Representations

16. CBBG believes that the Application is in compliance with the requirements of Del.Bankr.LR 2016-2.

17. CBBG performed the services for which it is seeking compensation on behalf of or for the Debtors and their estates, and not on behalf of any committee, creditor or other person.

18. CBBG has received payment for the January Fee Application in the amount of $154,063.67, representing 80% of services and 100% of expenses incurred during that fee period. The total amount outstanding from the January Fee Application period is $36,132.60. CBBG has received payment for the February Fee Application in the amount of $80,008.09, representing 80% of services and 100% of expenses incurred during that fee period. The total amount outstanding from the February Fee Application is $19,621.20. CBBG has not received payment for the March Fee Application. The total amount requested in the March Fee Application was $125,114.27. The total amount outstanding from the March Fee Application (including the $125,114.27) is $152,146.87.

19. Pursuant to Fed. R. Bank. P. 2016(b), CBBG has not shared, nor has agreed to share (a) any compensation it has received or may receive with another party or person other than with the partners, counsel and associates of CBBG, or (b) any compensation another person or party has received or may receive in connection with the Chapter 11 Cases.

WHEREFORE, CBBG respectfully requests that the Court enter an order providing (a) that, for the Fee Period, January 1, 2003 through March 31, 2003, an administrative

allowance be made to CBBG in the sum of (i) $413,932.00 as compensation for reasonable and necessary professional services rendered to the Debtors and (ii) in the sum of $28,040.43 for reimbursement of actual and necessary costs and expenses incurred, for a total of $441,972.43, (b) that the Debtors be authorized and directed to pay CBBG the outstanding amount of such sums less any sums previously paid to CBBG pursuant to the Applications and the procedures set forth in the Interim Compensation Order; and (c) that this Court grant such further relief as is equitable and just.

Roseland, New Jersey
Dated: June 10, 2003

Respectfully submitted,

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN

_____
John M. Agnello
6 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

## PROJECT AND EXPENSE CATEGORIES
## TO EIGHTH QUARTERLY INTERIM FEE APPLICATION
## (JANUARY 1, 2003 THROUGH MARCH 31, 2003)

| Name of Professional Person | Position of the Applicant, Number of Years in that Position, Prior Relevant Experience, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate (including changes) | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| John M. Agnello | Partner – 24 yrs | $340 | 629.60 | $212,109.00 |
| Melissa E. Flax | Partner – 11 yrs | $225 | 215.40 | $48,465.00 |
| Kenneth L. Winters | Partner – 23 yrs | $250 | 11.20 | $2,800.00 |
| Robert C. Scrivo | Associate – 14 yrs | $210 | 675.80 | $141,918.00 |
| Jake Kubert | Law Clerk | $75 | 5.20 | $195.00 |
| Kevin Vengrow | Paralegal | $75 | 100.00 | $7,372.50 |
| Jeffrey Falduto | Paralegal | $75 | 14.30 | $1,072.50 |

| | |
|---|---|
| Grand Total: | $413,932.00 |
| Blended Rate: | |

## COMPENSATION BY PROJECT CATEGORY

| Project Category (Examples) | Total Hours | Total Fees | Cumulative Fees |
|---|---|---|---|
| Asset Analysis and Recovery | | | |
| Asset Disposition | | | |
| Business Operations | | | |
| Case Administration | | | |
| Claim Analysis Objection Resolution & Estimation (Asbestos) | | | |
| Claim Analysis Objection Resolution & Estimation (Non-Asbestos) | | | |
| Committee (All – Creditors', Noteholders', Equity Holders', etc) | | | |
| Employee Benefits/Pensions | | | |
| Employment Applications, Applicant | | | |
| Employment Applications, Others | | | |
| Expenses | | $28,040.43 | $51,703.42 |
| Fee Applications, Applicant | 52.50 | $12,353.00 | $31,560.00 |
| Fee Applications, Others | | | |
| Financing | | | |
| Hearings | | | |

| | | | |
|---|---|---|---|
| Litigation and Litigation Consulting | 1578.90 | $399,301.50 | $702,812.00 |
| Plan and Disclosure Statement | | | |
| Relief from Stay Proceedings | | | |
| Tax Issues | | | |
| Tax Litigation | | | |
| Travel – non-working | 20.10 | $2,277.50 | $10,529.25 |
| Valuation | | | |
| ZAI Science Trial | | | |
| ZAI Science Trial – Expenses | | | |
| Other (Explain) | | | |

2

**EXPENSE SUMMARY**

| Expense Category (Examples) | Service Provider (if applicable) | Total Expenses | Cumulative Expenses |
|---|---|---|---|
| Computer Assisted Legal Research | Westlaw | $235.21 | $467.14 |
| Facsimile (with rates) | | $369.00 ($0.25 per page) | $1,988.00 |
| Long Distance Telephone | | $1,104.13 | $1,751.48 |
| In-House Reproduction | | $4,314.75 ($0.25 per page) | $6,042.25 |
| Outside Reproduction | | $1,114.72 | $10,110.52 |
| Outside Research | | | |
| Filing/Court Fees | | | |
| Court Reporting | Charles P. McGuire | $14,317.70 | $14,462.90 |
| Local Travel | Parking | $221.30 | $423.30 |
| Out-Of-Town Travel<br>   airfare<br>   car/taxi service<br>   hotel | Continental Airlines<br>Car service | $575.00<br>$131.20<br>$706.20 | $7,585.88 |
| Courier & Express Carriers (e.g. Federal Express) | | $391.16 | $1,155.13 |
| Postage | | | |
| Other (Explain) – Corporate record search | State of New Jersey Department of Treasury | | $10.00 |
| Other (Explain) – Photographs | Mr. Photo | | $76.25 |
| Other – Aerial photographs | Air Photo Services (2/2002) | | $664.05 |
| Messenger | | $337.32 | $1,448.95 |
| Working meals | | $73.70 | $453.47 |
| Subpoenas | Guaranteed Subpoena – Trial Witnesses | $3,226.80 | $3,226.80 |
| Returned Witness Fees | | ($802.00) | ($802.00) |
| Additional Staff Time | | $2,199.92 | $2,408.78 |
| Trial Supplies | | $230.52 | $230.52 |

Dated: June 10, 2003

3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| ) | |
| W. R. GRACE & CO. et al.[1] ) | Case No. 01-01139 (JKF) |
| ) | (Jointly Administered) |
| Debtors. ) | |

## **VERIFICATION**

JOHN M. AGNELLO, after being duly sworn according to law, deposes and says:

1. I am a partner with the applicant firm, Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein and I am a member in good standing of the bars of the State of New Jersey, the United States District Court for the District of New Jersey, the United States Court of Appeals for the Third Circuit, the State of New York, the United States District Courts for the Southern and Eastern Districts of New York and the Supreme Court of the United States.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. -Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G_ C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners 1, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

2. I have personally performed certain of, and overseen the legal services rendered by Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein as special litigation and environmental counsel to the Debtors and am thoroughly familiar with all other work performed on behalf of the Debtors by the lawyers and other persons in the firm.

3. The facts set forth in the foregoing Application are true and correct to the best of my knowledge, information and belief.

_____
John M. Agnello

In the State of New Jersey

SWORN TO AND SUBSCRIBED
before me this ___ day of June, 2003

_____
Notary Public

My Commission Expires:

LOIS ISAACSON
A Notary Public of New Jersey
My Commission Expires 6/19/06