UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| MALLARD CABLEVISION, L.L.C., *et al.* | § | Case No. 03-11391-MFW |
| | § | |
| Debtor. | § | Jointly Administered |

## BRIEF ON OBJECTION TO INTERIM PROVISIONS OF FINAL CASH COLLATERAL ORDER

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

VL Asset Management, LLC ("VL"), files this Brief on Interim Provisions of Final Cash Collateral Order and Motion to Amend Judgment (the "Objection") and respectfully states as follows:

### A. Factual Background

1. On or about May 9, 2003, Mallard Cablevision, LLC, SunTel Communications, LLC, and Mallard Holdings, Inc. (collectively, the "Debtors") filed voluntary petitions for relief.

2. On or about May 10, 2003, the Debtors filed *Motion of Debtors Pursuant to Sections 361, 363(c) and 363(e) of the Bankruptcy Code, Rule 4001(b) of the Bankruptcy Rules and Local Rule 4001-2 for (A) Entry of Preliminary Order (i) Approving Interim use of Cash Collateral; (ii) Providing for Adequate Protection; (iii) Scheduling Final Hearing on Use of Cash Collateral; and (iv) Approving Form and Manner of Notice of the Final Hearing, and (B) Entry of Final Order Approving Use of Cash Collateral Providing Adequate Protection* (the "Motion," docket no. 10).

3. On June 2, 2003 the Court held the hearing on the cash collateral matters. In the minutes before the hearing counsel for the lenders suggested to VL's counsel that changes could be made to the Stipulation and Order Regarding Cash Collateral that would preserve VL's, the

H-416530.1

Committee's and estate's rights with regard to certain matters. The Court accepted the announcement, heard no evidence, and the parties proffered that an order would be forthcoming.

4. The issues that VL reserved and which by agreement remain interim with regard to any cash collateral relief involve, as to VL, the following matters:

    a.    Validation on a final basis of the lenders liens and security interests.

    b.    Release of all claims against the lenders whether under the Bankruptcy Code or otherwise.

    c.    A directive that this case shall require a sale of all assets and that any plan posed by the Debtors shall be a plan involving the sale of all assets, unless the lenders otherwise consent.

    d.    A predetermination that any default by the Debtors in the cash collateral order shall involve an automatic modification of the stay.

### B. Request for Relief

5. Under the circumstances, and in the interests of the estate and all creditors, VL requests that the Court deny the relief as to these items and otherwise protect the estate's rights to the extent implicated.[1]

6. The predetermination that the liens asserted by the lenders are perfected in exchange for access to cash collateral appears unjustified insofar as the unsecured creditors are concerned until such time as this determination has been validated by the unsecured creditors. The lenders in this case apparently accept that they are undersecured. The mandated sale they intend to

---

[1] In addition to reservation of the estate's rights for all the reasons already raised, the recent en banc Cybergenics decision remains potentially subject to further review by the Supreme Court. While it would appear it would be unlikely to be further revisited in the mind of this counsel, the potential remains that the Supreme Court could rule further and in such event irrevocably remove the committee's rights to preserve and act for the estate in matters that affect the rights of unsecured creditors. In such circumstances, there should be no substantive ruling depriving the estate of valuable rights given the short notice and lack of evidence to justify such request, and the preservation of rights already agreed to should not be eliminated by some later "gotcha" argument that might be raised premised upon the wording of this "Final Judgment".

pursue seems to require a result that the unsecured creditors will be left with no recovery. There is no exigency to this "blessing" of liens other than the lenders simply want this to insulate them from later review. In the event there is a sale of all assets, the proceeds of the sale can still be paid to the putative lienholders with a proviso that if at that time there is no current challenge to the lenders' liens, that in the event there is a later challenge that results in any determination that the lenders' are not entitled to all or a portion of the proceeds that they will be required to disgorge these amounts, plus interest from the date so paid at reasonable market rates. In this manner the lenders are not prejudiced, and the rights of the estate remain preserved. Notwithstanding this objection, the unsecured creditors have invited the lenders and Debtors to provide it with analysis and documents that will enable a review of these matters such that perhaps an early determination on this point might be made.

7. The wholesale release of any and all claims against the lenders is particularly unjustified, and comprises a "compromise of controversy" for which no facts have been presented nor any relief properly sought to all for this to occur. Such relief is also prematurely forced, in that the Debtors and lenders have had a relationship in years of conduct while the unsecured creditors who remain unpaid have no information of knowledge regarding the facts, transactions and events that lead to the failure of the Debtors and the lenders' role in such failure. At one time the Debtors had many more subscribers, and substantial equity. Today the lenders and Debtors seem to agree that the worth of the enterprise is but a fraction of what it was just a couple of years ago, or even less. Legitimate issues might well exist. The limitations periods for the type of claims that might exist, if any, range from two years for bankruptcy avoidance actions to four years for traditional common law claims involving the usual lender liability types of theories. Certainly, before any such relief could be contemplated, there would have to be some

voluntary production of all internal board minutes, documents, loan committee reviews, and other information in addition to interviews of witnesses involved in the relationship to even begin to satisfy the evidentiary burdens of assessing the potential viability and release of claims.

8. The requirement that the Debtors comply with the lenders' vision for the case and to rapidly sell all the assets in the face of an extraordinarily depressed market rather than independently determine what is best for the estate is a improper sub rosa plan and effective abdication of exclusivity to lenders. These terms, coupled with the releases referenced above, seem to go beyond what is proper. A bankruptcy trustee is authorized by statute to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under the Bankruptcy Rules, a trustee or debtor in posssession is permitted to settle lawsuits pursuant to section 363(b). FED. BANKR.R. 9019(a). However, section 363(b) does not authorize the trustee to enter a settlement (especially in the guise of a cash collateral order) if the result amounts to a sub rosa plan of reorganization. It has been stated elsewhere: "The debtor and the Bankruptcy Court should not be able to short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of a plan sub rosa in connection with a sale of assets." *Pension Benefit Guar. Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935, 940 (5th Cir.1983).

9. There should be no automatic lifting of the stay on default, especially without notice and opportunity for the unsecured creditors to protect their rights. A "drop dead" clause in an order or plan allows a creditor to exercise its state law remedies upon default of a debtor under a plan without seeking further permission from the bankruptcy court. See, *In re Kennedy*, 177 B.R. 967, 975 (Bankr.S.D.Ala.1995). However, on the notice given and in view of the early stage of the case it is premature to allow for such relief to be given, especially just for use of cash

H-416530.1 4

collateral as opposed to any new financing. Such orders containing drop dead provisions are in the nature of settlement agreements between debtors and secured creditors. See *In re Franklin*, 802 F.2d 324 (9th Cir.1986); *In re Springpark Associates*, 623 F.2d 1377 (9th Cir.1980), *cert. denied*, 449 U.S. 956, 101 S.Ct. 364 (1980); *In re Polries Bros.*, 49 B.R. 669 (Bankr.D.N.D.1985). However, no request for any compromise has ever been filed; and no evidence of such is in the record. Importantly here, this relief is sought at a time when the case was only recently filed and even before the unsecured creditors' committee was even organized. They involve final relief. See *In re Holtkamp*, 669 F.2d 505 (7th Cir.1982). If this relief is needed, a motion in accordance with the statute and rules should be brought.

WHEREFORE, VL requests that the Court amend the final cash collateral order and for such other and further relief as is just.

Respectfully submitted this ___ day of June, 2003.

_____
PATRICK L. HUGHES
Texas State Bar No. 10227300
1000 Louisiana, Suite 4300
Houston, Texas 77002
713.547.2550
713.236.5401 (Facsimile)

ATTORNEYS FOR VL ASSET MANAGEMENT, LLC.

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June ___, 2003, a true and correct copy of the foregoing was served on the following parties via United States First Class Mail.

Michael D. Debaecke
Blank Rome LLP

1201 Market Street, Suite 800
Wilmington DE 19899

H-416530.1                                                     5

United States Trustee
Office of the United States Trustee
844 King Street, Room 2313
Wilmington DE 19801

Martin W. Taylor
Penelope Parmes
Rutan & Tucker LLP
611 Anton Boulevard, 14th Floor
Costa Mesa CA 92626-1931

Jean-Pierre Knight
Union Bank of California, NA
Special Assets Department

445 South Figueroa Street, Suite 403
Los Angeles CA 90071

William P. Bowden
Ashby & Geddes PA
P.O. Box 1150
222 Delaware Avenue, 17th Floor
Wilmington DE 19899

Morton Branzberg
Jennifer Scoliard
Klehr, Harrison, Harvey, Branzburg & Ellers, LLP
1401 Walnut St.
Philadelphia, PA 19102

_____
PATRICK J. HUGHES

H-416530.1                                    6

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE: §
§
MALLARD CABLEVISION, L.L.C., *et al.* § Case No. 03-11391-MFW
§ Chapter 11
Debtor. §

## ORDER MODIFYING FINAL CASH COLLATERAL ORDER

The Court has considered the Objection to Form of Final Cash Collateral Order and Motion to Amend (the "Objection") filed by VL Asset Management, LLC ("VL"), on the underlying motion seeking approval of a final cash collateral order filed by the Debtors on May 10, 2003 (docket no. 10). Good cause exists to grant the relief requested in the Objection. Accordingly, it is hereby ORDERED

1. The Final Judgment approving Stipulation and Order on Use of Cash Collateral is vacated and amended in order to preserve the rights, claims and interests of VL, the Committee and the estate pending further proceedings in the cases.

2. Pending the hearing and proceedings, the interim cash collateral order shall remain in effect.

Dated: _____, 2003.

_____
UNITED STATES BANKRUPTCY JUDGE

H-416530.1