## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | : | Chapter 11 |
| | : | |
| In re: | : | Case No. 01-1139 (JFK) |
| | : | Jointly Administered |
| W.R. GRACE & CO., et al., | : | |
| | : | Objection Deadline: July 14, 2003 at 4:00 p.m. |
| Debtor. | : | Hearing Date: July 28, 2003 at 12:00 p.m. |
| | : | |

## MOTION OF SUMMIT VENTURES, LLC.
## TO COMPEL DEBTOR TO ASSUME
## EXECUTORY CONTRACT PURSUANT TO 11 U.S.C. 365(d)(2)

1.     W.R. Grace & Co. (the "Debtor") filed a voluntary petition for relief under

chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") on April 2, 2001 (the

"Petition Date") in the United States Bankruptcy Court for the District of Delaware (the

"Bankruptcy Court"). On the Petition Date, approximately sixty-one (61) of the Debtor's

domestic subsidiaries also filed related chapter 11 cases, including Gloucester New Communities

Co., Inc. ("GNCC"), a wholly owned domestic subsidiary of the Debtor.

2.     Both the Debtor and GNCC are debtors-in-possession continuing to operate their

prospective businesses pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.     Prior to 1996, GNCC acquired ownership of approximately One Thousand Six

Hundred Eighty (1680) acres of undeveloped land located in Woolwich Township, Gloucester

County, New Jersey (the "Land").

4.     Summit Ventures, LLC ("Summit") is a limited liability company organized

under the laws of the State of New Jersey with offices located at 507 Route 73, Suite 105-B,

Marlton, New Jersey 08053.

5.      Summit was organized for the purpose of acquiring the Land from GNCC, obtaining development approvals for the Land, performing improvements on the Land, and selling the Land to home builders, commercial developers or other end users. The project was intended to span a period of nearly twenty (20) years and result in the creation of new residential communities containing thousands of homes, commercial properties, schools, a municipal complex, a park and related infrastructure.

6.      GNCC, as seller, and Summit, as purchaser, entered into that certain Option And Sale Agreement For Land dated as of August 7, 1996. This original Agreement was amended by a First Amendment To The Option And Sale Agreement dated as of November 27, 2000. (The original Option And Sale Agreement For Land, as amended, is hereinafter referred to as the "Option Agreement".) A true and correct copy of the Option Agreement is attached hereto and incorporated herein by reference as Exhibit "A".

7.      Pursuant to the Option Agreement, Summit has an exclusive option to purchase the Land during the term of the option period, which commenced on August 7, 1996 and terminates on December 31, 2015, unless terminated sooner under the terms of the Option Agreement.

8.      Summit proceeded to obtain a General Development Plan approval from the Planning Board of the Township of Woolwich contemplating, in concept, the development of four thousand five hundred (4,500) residential units on the Land, together with two hundred thousand (200,000) square feet of commercial space, in addition to required open space for schools to serve the developed communities.

9.      Under the Option Agreement, Summit may acquire the Land only for purposes of the purchase and re-sale thereof to builders and third party purchasers.

10.     Pursuant to the Option Agreement, Summit is obligated to pay to GNCC a base price of Five Million Dollars ($5,000,000) for the Land, which is to be divided among the residential units and commercial acreage as set forth in the Option Agreement. In addition, Summit is obligated to pay to GNCC a percentage of its net profits from the resale of the Land, as defined and more fully set forth in the Option Agreement. In essence, Summit has agreed to pay fifty percent (50%) of its Net Profits until GNCC has received Five Million Dollars ($5,000,000) on account of sales, and thirty-three and one-third percent (33 1/3%) of Net Profits thereafter. Summit has already paid GNCC Five Million Eight Hundred Forty-Three Thousand Five Hundred Dollars ($5,843,500) and reimbursed expenses of Two Hundred One Thousand Six Hundred Thirty Dollars ($201,630) under the Option Agreement.

11.     In order to facilitate the development of the Land and the purchase and resale of lots, Summit has negotiated agreements with utility providers and made applications to governmental authorities for development and utility services. In connection therewith, certain Tri-Party Agreements have been entered into by GNCC, Summit and various third parties in furtherance of the development scheme for the Land (the "Tri-Party Agreements") Those Tri-Party Agreements include a Service Agreement dated as of May 8, 1998 among Summit, GNCC and Consumers New Jersey Water Company, pursuant to which sewer and water service is to be provided to the Land and units developed on the Land. A true and correct summary of all Tri-Party Agreements is attached hereto and incorporated herein by reference as Exhibit "B".

12.     Summit has closed on Land for one thousand nine hundred thirty-five (1,935) residential units from GNCC pursuant to the Option Agreement, together with some commercial space. In connection with these acquisitions, Summit has obtained all the necessary approvals and has arranged for the installation and construction of all infrastructure necessary for

development of these properties. A substantial portion of the properties have been acquired since the Petition Date of this chapter 11 case.

13.     Summit has determined that it must file this Motion to compel the Debtor to assume the Option Agreement because it is now critical that Summit receive prompt assurance that the Option Agreement will be assumed by GNCC within the context of its chapter 11 case. Assumption of the Option Agreement is critical at this time because Summit will be now required to expend substantial additional funds for engineering and infrastructure in connection with the further development of the Land, and such expenditures must be made before purchasing and taking title to all the acreage required to benefit from such expenditures. Summit cannot expend those funds without certainty that GNCC is contractually bound by the terms and conditions of the Option Agreement as development moves forward into a critical stage which will require significant additional funding.

14.     In particular, the additional expenditures by Summit which are now required in regard to the further development of the Land under the Option Agreement include, but are not limited to:

(a)     the design, approval and construction of a sewer trunk main of approximately two (2) miles in length from the Land to the wastewater treatment center operated by Logan Township Municipal Utilities Authority ("LTMUA") and a sewer pump station. These expenditures alone will amount to approximately Four Million Dollars ($4,000,000). No further resale or development of the Land is possible until this expenditure is made.

(b)     the pre-purchase of sewer connections to the LTMUA plant at a cost of approximately Two Million One Hundred Thirty-Seven Thousand Dollars ($2,137,000). The LTMUA will utilize these funds to expand the sewer plant to increase its capacity to two million

(2,000,000) gallons per day so that it can treat the effluent expected from the new development. No further resales or development of the Land will be possible until this expenditure is made.

        (c)      the design, approval and installation of new drainage facilities and water lines;

        (d)      the installation of widened roads and intersection improvements at an additional estimated cost of Six Hundred Sixty Thousand Dollars ($660,000);

        (e)      the engineering and design for further municipal and other land use approvals at an approximate cost in excess of One Million Dollars ($1,000,000).

15.     Even the additional sewer capacity described above will not be sufficient to serve all of the Land.  Summit is party to a contract to construct a further expansion of the LTMUA sewerage treatment plant to fully service the remainder of the Project.  The cost of that construction would be approximately Six Million Dollars ($6,000,000).  Substantial engineering costs would be incurred in planning for such an expansion.

16.     Further Land purchases will require Summit to address additional problems associated with development, such as the resolution of the need for vibration and sound barriers to protect and isolate the Land from the negative impact of an adjacent industrial facility.

17.     Accordingly, Summit is not able responsibly undertake these substantial expenditures, which will benefit both GNCC and Summit as parties to the Option Agreement and the related Tri-Party Agreements unless and until GNCC assumes the Option Agreement pursuant to Section 365(a) of the Bankruptcy Code.  GNCC and Summit have continued to function under the Option Agreement in the ordinary course of business during the pendency of this chapter 11 case such that the Option Agreement may be assumed by the Debtor at this time without any additional cost to or burden upon GNCC.  Summit acknowledges that GNCC has

provided adequate assurance of future performance under the Option Agreement and is not in default under its terms.

18.    Pursuant to Section 365(d)(2) of the Bankruptcy Code, upon request of a party to an executory contract, the Bankruptcy Court may order a debtor to promptly decide whether to assume or reject an executory contract. 11 U.S.C. 365(d)(3). In deciding whether to accelerate a debtor's decision to assume or reject, a court must balance the interests of the contracting party against the interests of the debtor and its estate. *In re Physician Health Corporation*, 262 B.R. 290, 292 (Bankr. D. Del. 2001) "In making this determination, the court does not abuse its discretion by considering the interests of the non-debtor party pending the debtor's decision to assume or reject." *In re Kmart Corporation*, 290 B.R. 614, 619 (Bankr. N.D. Ill. 2003).

19.    The general rule is that the debtor has a reasonable time within which to decide whether to assume or reject an executory contract. The determination of what is a reasonable time is within the court's discretion, in light of the circumstances of each case. *See, Theatre Holding Corp. v. Mauro*, 681 F.2d 102-105 (2d Cir. 1982).

20.    In the *Enron* case, the court recently repeated the standard factors utilized by courts for the last two decades in determining whether a debtor has had a reasonable time to decide whether to assume or reject, as follows:

> 1.    the damage the non-debtor will suffer beyond the compensation available under the Bankruptcy Code;
>
> 2.    the importance of the contract to the debtor's business and reorganization;
>
> 3.    whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan; and
>
> 4.    whether exclusivity has been terminated.

*In re Enron Corp.*, 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002) (*quoting Theatre Holding Corp. v. Mauro*, 681 F.2d at 105-106). *Accord, In re Teligent, Inc.*, 268 B.R. 727, 728 (Bankr. S.D.N.Y. 2001). *See also, In re Adelphia Communications Corp.*, 291 B.R. 283, 293 (Bankr. S.D.N.Y.

2003) (listing a total of twelve factors to be considered by the court in determining whether to compel a debtor to assume or reject an executory contract).

21.     In *In re Travelot Company*, 286 B.R. 462 (Bankr. S.D.Ga. 2002), the court granted a motion by CNN to require Travelot Company to assume a contract which enabled it to conduct the core aspect of its business, namely, providing enhanced web-based travel bookings, as a party to an agreement with CNN. After a five (5) month delay from the filing of the bankruptcy case, the court concluded that the debtor could no longer delay its decision to assume or reject its contract with CNN, since the contract provided the basis for the entire business purpose of the debtor. (*Id.* at 469).

22.     Similarly, in the present case, GNCC is a special purpose subsidiary of the Debtor whose sole purpose is to accomplish the development of the Land under the terms and conditions of the Option Agreement. Both GNCC and Summit have been working diligently under the terms of the Option Agreement, at considerable expense to Summit, for more than two (2) years during the pendency of the bankruptcy case. Summit is now in a position where it must expend millions of dollars in extensive improvements in order to proceed to the next stage of development. Accordingly, it is encumbant upon GNCC to determine at this time to assume the Option Agreement so that continued development of the Land may take place.

23.     Summit asserts that continued development of the Land through the assumptio of the Option Agreement will be in the best interests of GNCC and will result in substantial benefit to GNCC and its estate.

WHEREFORE, for the reasons set forth hereinabove, Summit Ventures, LLC requests that the Bankruptcy Court enter an Order requiring GNCC to immediately assume the Option Agreement and all related Tri-Party Agreements pursuant to Section 365(d)(2) of the Bankruptcy Code.

Dated: June 23, 2003

Respectfully submitted,

BALLARD SPAHR ANDREWS & INGERSOLL, LLP

By: /s/ William M. Kelleher
    William M. Kelleher, Esquire (No. 3961)
    919 North Market Street, 17th Floor
    Wilmington, DE 19807
    Telephone: (302) 252-4465
    Facsimile: (302) 252-4466
    E-mail: kelleherw@ballardspahr.com

        -and-

    Of Counsel:
    Dean C. Waldt, Esquire
    William L. Mueller, Esquire
    Plaza 1000, Suite 500, Main Street
    Voorhees, NJ 08043-4636
    Telephone: (856) 761-3450
    Facsimile: (856) 761-1020
    E-mail: waldtd@ballardspahr.com

    Attorneys for Summit Ventures, LLC