UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Bankruptcy No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

## ZONOLITE ATTIC INSULATION CLAIMANTS' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT RE: W.R. GRACE'S CONSUMER PROTECTION LIABILITY

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Marco Barbanti (Washington), Ralph Busch (Washington), Paul Price (Montana), John

Prebil (Montana), John Szufnarowski (Massachusetts), Edward Lindholm (Massachusetts),

James & Doris McMurchie (Minnesota), Stephen Walsh (Minnesota), and William Harris

(California) ("present ZAI claimants") are each creditors for whom W. R. Grace debtors

("Grace") have filed a Zonolite Attic Insulation ("ZAI") property damage proof of claim.[1]

Present ZAI claimants had each filed in their respective states, prior to Grace's filing for

bankruptcy protection, a class action against Grace arising out of Grace's manufacture and sale of

ZAI. The Washington action was certified as a class action by the Honorable Kathleen

O'Connor on December 19, 2000, and ZAI claimants Barbanti and Busch were appointed by the

Court as representatives of ZAI claims in the state of Washington. Class actions brought by

present ZAI claimants, other than Barbanti and Harris, were procedurally transferred by an MDL

---

[1]  Grace has also filed a proof of claim on behalf of Jan Hunter, who had previously filed a proposed state-wide state-based class action in the state of Illinois. Discovery has revealed that Jan Hunter's home does not contain Zonolite Attic Insulation.

-1-

transfer order dated December 7, 2000, and assigned to the Honorable Patti B. Saris, of the

District Court of Massachusetts (MDL 1376). The nationwide class action brought by Montana

ZAI claimants Prebil and Price, in that MDL context, became designated as the lead case. A

hearing for certification of that action had been set, and briefing completed, when Grace filed for

bankruptcy.

Following its bankruptcy filing, Grace filed proofs of claim in the name of present ZAI

claimants in anticipation of a consolidated "science trial," as to Grace's ZAI property damage

liability. ZAI claimants Barbanti, Busch, Prebil, and Price, thereafter, filed amended proofs of

claim.

At the hearing held on July 22, 2002, Judge Judith Fitzgerald appointed present ZAI

counsel as "special counsel" to present ZAI claimants and entered an order setting forth a pretrial

discovery and motion practice schedule pertaining to the anticipated "science trial." Pursuant to

that Order, as amended, motions for summary judgment by either party are due July 7, 2003. The

present motion for partial summary judgment is made in this procedural context.

## II.    SUMMARY OF ARGUMENTS

1.    There is no question but that ZAI is contaminated with asbestos and that ZAI

releases asbestos into the air upon disturbance during foreseeable homeowner activities.

2.    The fact that ZAI is contaminated with asbestos and the fact that ZAI releases

asbestos when disturbed are stand-alone factual milestones to Grace's liability under applicable

state consumer protection laws.

3.    Grace bears significant potential ZAI liability grounded on state statutory

consumer protection laws dating from at least 1969 forward.

-2-

4.      An Order of Partial Summary Judgment declaring that ZAI is contaminated with and releases asbestos meaningfully advances Grace's reorganization by bringing into sharper focus Grace's potential ZAI property damage liability.

## III.    STATEMENT OF FACTS

Zonolite Attic Insulation is contaminated with asbestos.  Zonolite Attic Insulation releases asbestos fibers into the air when disturbed.[2]  These conclusions have been reached by every consulting expert and public health agency that has made inquiry into the subject matter. Experts may quarrel over the measure of asbestos contamination, or disagree as to the best sampling methods, testing protocol, or counting procedures by which to measure contamination and release, but the core findings are the same:  Zonolite Attic Insulation is contaminated with asbestos and releases asbestos fibers into the air when disturbed.

Grace's expert, Dr. Morton Corn, poignantly made this point:

VIII.    Summary and Conclusion.

Review of available investigations of potential homeowner exposure to ZAI, as well as review of an EPA Region VIII risk assessment, associated critiques of this assessment, and other relevant documents, lead to the following conclusions:

- Zonolite Attic Insulation (ZAI) contains approximately 1% or less asbestos by weight.  The bulk material can release airborne particles and fibers when poured or otherwise intruded upon with energy.

- A variety of investigations have been undertaken to measure the concentrations of asbestos-in-air when ZAI does release fibers to the air. . . .  The measurements are consistent in that . . . airborne asbestos concentrations during disturbance are measurable in the breathing zones of

---

[2]  "Based on our evaluation of ZAI and the results of the simulation testing, it is our opinion that this material will release asbestos fibers into the air when the material is disturbed during ordinary and foreseeable disturbance activities.  Additionally, the amounts of asbestos fibers released during upon (sic) disturbance of ZAI are significantly over measured background levels.  Additionally, in our opinion, the release of asbestos from ZAI causes contamination on surrounding surfaces in homes containing ZAI.  The disturbance of ZAI by ordinary activities of homeowners and contractors, including maintenance, repairs, and demolition will cause the release of airborne asbestos from the material exposing families to significant levels of asbestos."  Expert Report by Richard Hatfield/William Longo, Ex. "1" to the Declaration of Darrell W. Scott ("Scott Dec.").

those in the immediate vicinity of the disturbance, but are not elevated throughout the entire home. . . .[3]

The opinions of other Grace experts implicitly acknowledge both that ZAI contains asbestos and that asbestos fibers are released into the air when that product is disturbed. Dr. Richard Lee, as illustration, in attempting to reduce airborne asbestos levels by recharacterizing released fibers as "cleavage fragments," arrives at the conclusion, unavailing for Grace for present purposes that, "airborne asbestos concentrations would have been comparable to or below relevant standards."[4]

Unanimity among retained "science trial" experts is not surprising. The Environmental Protection Agency, through painstaking efforts spanning some two years, confirmed these same central findings: "Q[uestion]: If I have vermiculite insulation in my home, what should I do while the EPA is evaluating long-term solutions? A[nswer]: EPA continues to gather information about vermiculite insulation. To date, sampling results from Libby vermiculite (Zonolite) almost always shows some level of tremolite asbestos. More importantly our sampling has indicated that anytime Zonolite is disturbed it will release fibers into the air."[5]

While Grace's business misconduct is not itself the subject of the proposed order, a recitation of key facts pertaining to that misconduct provides necessary context to ZAI claimants' present motion and Grace's potential liability under contemporaneously adopted state consumer protection statutes.

---

[3]  Corn Expert Witness Report, p. 18, Ex. "2" to Scott Dec.
[4]  Lee Expert Witness Report, p. 6, Ex. "3" to Scott Dec.
[5]  Ask EPA 10/15/01, Ex. "4" to Scott Dec.

In 1970, Grace's product manager urged ZAI salesmen "Consumers must be informed of its [ZAI's] unique benefits through local advertising – it does not sell itself."[6]  Grace recognized that "the future of attic insulation will depend upon effective selling to dealers and strong consumer advertising at the local level, which we have had for many years in the northern states."[7]

In this regard, Grace manufactured, marketed and sold ZAI as quintessentially a do-it-yourself material uniquely suited for handling by novice home improvement and home remodeling do-it-yourselfers.  To project this "do-it-yourself" image and thus foster ZAI's product appeal, Grace instigated a marketing campaign which, until ZAI's withdrawal in 1984, hammered home the single central theme that ZAI was a friendly material appropriate for handling by inexperienced unprotected homeowners and that, when installed, was forever carefree.  This theme permeated Grace's marketing, advertising, and product packaging.

Grace's ZAI product brochure proclaimed "Zonolite Attic Insulation is an ideal do-it-yourself project."[8]  Data sheets supplied by Grace to retail dealers emphasized "every homeowner is a potential sale," remarking that "It fills nooks and crannies fiberglass insulation can't reach, so a homeowner do-it-yourselfer can 'finish it right,' and you can generate add-on sales from fiberglass customers."[9]  Print advertisements generated by Grace for use by retailers honorifically proclaimed ZAI, "The Do-It-Yourself Attic Insulation."  Retail display banners

---

[6]  December 28, 1970, memo from T.A. Bjorklund, "Zonolite Attic Insulation," at IV, Ex. "5" to Scott Dec.

[7]  *Id.*

[8]  Grace brochure, Ex. "7" to Scott Dec.

[9]  Grace data sheets, Ex. "8" to Scott Dec.

provided by Grace to retailers carried this same message into the marketplace.[10] Radio script

provided by Grace closed with this same theme:

> "The (dealer name) _____ people recommend Zonolite vermiculite
> granules as the easiest attic insulation to install yourself. They add that
> Zonolite is light, clean, non-irritating, a pleasure to handle."[11]

Sales booklets prepared by Grace directed at homeowners assured homeowners that

"Installing Zonolite is as easy as pouring popcorn out of a bag.[12] There's no need to hire a

contractor, just install Zonolite yourself and save. . . . No need to call in a professional." The

product brochure vouched that the product was "clean" "safe" and "easy to install," and that

handling of the product was as simple as: "Pour it, Level It, Leave It."[13]

Graphics on Grace's product brochures and printed advertisements reinforced this same

message by featuring couples sporting casual clothing, without so much as a dust mask between

them, pouring bags of ZAI from a standing position into rafters. Grace uniformly depicted

homeowners installing ZAI without any respiratory protection as late as 1980,[14] even though

Grace employees, who poured ZAI for testing during the same years, prudently wore

respirators.[15]

Grace, further, targeted the do-it-yourself market by emphasizing to homeowners that

ZAI was a friendly and utterly innocent product. ZAI was, Grace represented boldly on its

packaging, "100% vermiculite."[16] ZAI was marketed as "clean," "safe," and "chemically

inert."[17] ZAI was described as "not ... any way injurious to ... health," "absolutely safe," a

---

[10] Retail Display banner, Ex. "9" to Scott Dec.

[11] Radio Script, Ex. "10" to Scott Dec.

[12] Sales Booklet, Ex. "11" to Scott Dec.

[13] *Id.*

[14] ZAI television ad slide commercial (May 1980), Ex. "12" to Scott Dec.

[15] Eaton Deposition, at 41, Ex. "13" to Scott Dec.

[16] Product packaging, Ex. "14" to Scott Dec.

[17] "Zonolite the 25-Point Insulation," Ex. "6" to Scott Dec.

product that would keep a child "happy and healthy," that "contains no harmful substance," was "safe and clean," "dust-free and non-irritating," "so lightweight, dustless, clean, simple to handle that a child could pour it between attic joists."[18]

Grace also assured homeowners that ZAI was a carefree material once installed. Homeowners were advised that with ZAI they could "just pour it right over the old fluff, level it off at the top of the joists and forget it."[19] ZAI "never needs to be replaced and will last the life of your house."[20] A particularly ironic Grace ad assured homeowners that "first-cost of installing this insulation is low. And first-cost is the last."[21]

This blithe product image was authored by a company that knew and concealed the truth: that ZAI was contaminated with asbestos; that ZAI would release asbestos fibers into the air whenever the homeowner disturbed it.

Grace's safety director recommended as early as 1969 that because of the mesothelioma risk from asbestos, Grace should place a warning label on all vermiculite packages.[22] Grace ignored him.

Grace considered a "gentle warning" in 1972, but did nothing.[23] Several years later, Grace's safety director reiterated his advice, noting he had been ignored previously.[24] Grace ignored him again.

---

[18] *See* Grace ads, Ex. "6" to Scott Dec.

[19] "Down with Goose Pimple Sale,." Ex. "6" to Scott Dec.

[20] Grace advertisement "Zonolite Attic Insulation … The Easy Way to Fill the Gaps," Ex. "6" to Scott Dec.

[21] "Zonolite Attic Insulation Puts Its "R" Values to Work," Ex. "6" to Scott Dec.

[22] March 11, 1969, memo from P. Kostic to R.W. Sterrett, Ex. "15" to Scott Dec. ("I think it would be well at this time, with the advice of counsel, to consider applying a warning or precautionary label or statement on all containers of products containing vermiculite.")

[23] April, 1972 Memorandum, [Ex. "16" to Scott Dec.

[24] January 27, 1976, memo from P. Kostic to R.A. Kulberg, at 2, Ex. "17" to Scott Dec.

In 1977, Grace went so far as to draft a press release announcing Grace's withdrawal of ZAI from the market due to its contamination with asbestos:

> "The company has determined that the kind of vermiculite mineral used in ZONOLITE Attic Insulation contains traces of tremolite, a naturally occurring obscure form as *[sic]* asbestos. A Grace official stated that 'The company was sufficiently concerned about the entire issue of asbestos and associated health hazards to discontinue the product.'"[25]

The press release was never issued. In that same year, Grace predicted in a lengthy internal confidential memorandum: "We forecast that our vermiculite consumer products, namely Attic Insulation . . . will eventually be banned by the Consumer Product Safety Commission."[26]

In a calculatingly deceptive strategy conceived in that same year, apparently aimed at creating a colorable defense to future personal injuries cases, Grace placed on its ZAI packaging the innocuous statement: "Avoid Creating Dust." Grace omitted what it knew at the time, and what was especially germane to anyone genuinely seeking to issue a meaningful caution, namely, that ZAI dust contained asbestos.[27]

Mindful that issuance of such a directive was double-edged, Grace's general counsel advised Grace that he would not reference the label in dealing with federal agencies because,

> [I] have doubts as to whether the caution labels are very helpful to our case … The caution label used on attic insulation does not specifically identify asbestos and, accordingly, could be viewed by the CPSC as being inadequate warning of the risk which may be associated with use of this product.[28]

---

[25] Ex. "18" to Scott Dec.

[26] *Wood to Brookes, et al.*, May 24, 1977, p. 14, Ex. "19" to Scott Dec.

[27] June 20, 1977, memo B.A. Blessington to Distribution List, Ex. "20" to Scott Dec. Such ambiguous, and in all event, physically impossible directives issued in connection with an intrinsically dusty product like ZAI, has been rightly, although charitably, labeled "black humor." *Borel v. Fibreboard*, 493 F.2d 1076, 1104 (5th Cir. 1973).

[28] March 27, 1980, memo from O.M. Favorito to E.S. Wood, at 1, Ex. "21" to Scott Dec.

Grace's counsel suggested that Grace consider revising the label to, in fact, disclose asbestos contamination.[29]  Grace ignored his advice.

Grace stalwartly promoted ZAI, to the end, as a do-it-yourself material, specifically targeted at the home remodeling market.  The irreconcilability between Grace's marketing tactics and what Grace knew is fully explained by the fact that disclosure of ZAI's asbestos content to consumers would kill vermiculite product sales:

> It is believed that product labeling would have a serious, adverse, and irreversible effect upon consumer acceptance of our products.[30]

## IV.  ARGUMENT

### A.  Introduction.

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56, *Cloverland-Green Spring Dairies, Inc. v. Pennsylvania Milk Marketing Bd.*, 298 F.3d 201, 210 (3rd Cir. 2002). FED. R. CIV. P. 56(d), in this connection, provides for an order specifying the material facts that appear to be without substantial controversy, by custom denominated a "motion for partial summary judgment."  An Order under FED. R. CIV. P. 56(d) serves the important and salutary purpose of narrowing areas of factual or legal dispute, thereby promoting economical resolution of remaining issues. *See Alberty-Velez v. Corporacion de Puerto Rico Para la Diffusion Publica*, 242 F.3d 418, 423, n. 6 (1st Cir 2001). This Court should enter an Order of Partial Summary Judgment finding that: 1) ZAI contains asbestos and 2) ZAI releases asbestos fibers into the air upon disturbance during foreseeable homeowner activities.  The correctness of present ZAI Claimants' proposed findings

---

[29] *Id.*

[30] May 17, 1976, R.II. Locke "Binder Development Program," at 1, Ex. "22" to Scott Dec.

is apparent. The materiality of those findings is shown through the applicability of state

consumer protection laws to Grace's business misconduct.

**B.     Grace's Culpable Business Conduct and the Contemporaneous Rise of
Private Rights of Action Under State Consumer Protection Statutes.**

Grace's deceptive business practice of, among other things, withholding proposed

product warnings regarding asbestos, affirmatively misrepresenting ZAI as "100% vermiculite,"

and deceptively marketing ZAI as a "do-it-yourself" material, was carried out during a period of

heightened concern for protection of the public from deceptive business practices and a period

within which state legislatures were adopting statutes affording private rights of actions for harm

suffered as a result of such misconduct.

The attached chart[31] depicts this confluence of Grace's business misconduct and adoption

by states of consumer protection legislation. Two implications of this historical record are

noteworthy.

First, this rise of consumerism, commencing in the 1960's, was such that by early 1972,

36 states had enacted consumer protection statutes that made deceptive acts or practices

unlawful. Eighty percent (80%) of the nation's population was governed by such state legislation

by that date. *Right to Private Action Under State Consumer Protection Act*, 62 A.L.R.3d 169

(1975).[32] In this connection, the statutory law of each state from which present ZAI claimants

hale has, since the early 1970's, afforded a private right of action for harm resulting from

---

[31] W.R. Grace Business Practices, Appendix "A" hereto.

[32] Today nearly every state has enacted such legislation to curb deceptive business practices. James Nehf, *Textualism in the Lower Courts: Lessons from Judges Interpreting Consumer Legislation,* 26 Rutgers L.J. 1 (Fall 1994). See Chart depicting States with Private Rights of Action, Appendix "B" hereto.

-10-

deceptive business practices.[33] The same is true for the preponderance of other states in which

ZAI claimants reside[34] and within which ZAI was manufactured, sold, and ultimately installed.[35]

---

[33] See Claimant State CPA Analysis Chart, Appendix "C" hereto. *Washington* (ZAI Claimants Barbanti and Busch) – RCW 19.86; *Massachusetts* (ZAI Claimants Szufnarowski and Lindholm) – Massachusetts law Chapter 93A ("Regulation Of Business Practices For Consumers Protection"); *California* (ZAI Claimant Harris) – Bus & Prof Code 17500-17572, 17200-17208; *Montana* (ZAI Claimants Prebil and Price) – Mont. Code 30-14-101; *Minnesota* (ZAI Claimants Walsh and McMurchie) – Consumer Fraud Act, Minn. State 325F.69.

[34] See Zonolite Attic Insulation State Statutory Consumer Protection Analysis Map, Appendix "D" hereto.

[35] A creditor's entitlement in bankruptcy arises from the substantive law creating the debtor's obligation. As such, the validity of a claim is determined by reference to the state law governing the substance of that claim and those state interests are analyzed no differently, absent some federal interest to the contrary, than if the interested parties were not in bankruptcy. *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000); *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156 (1946). The respective states of each present ZAI claimant arguably bear the most significant relationship to the deceptive business practices alleged, and the local law of those states, for present purposes, may be presumed to govern the issue of Grace's liability for deceptive business practices as to those claimants and the classes they seek to represent.

    While a federal court sitting in diversity applies the law of the state in which it sits (*Barton Press, Inc. v. American Environmental Int'l, Inc.*, 1995 U.S. Dist. LEXIS 1450 (D.N.J. 1995); *Klaxon, Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, (1941)), in determining what claims are allowable in bankruptcy, the bankruptcy court does not presumptively apply the law of the state in which it happens to sit (*Vanston v. Green*, 329 U.S. 156 (1946). Whether, in determining the law that is applicable, the bankruptcy court applies the choice of law rules of the state of the forum or that of federal bankruptcy law, is a subject of substantial disagreement among the courts and the matter does not appear to have been treated by the Third Circuit.

    In the absence of circuit court guidance, and where no conflict is observed between state forum law and federal *bankruptcy* law, some courts have simply applied the choice of law rules of the forum state. *See In re Presque Isle Apartments, L.P.*, 118 B.R. 332 (Bankr. W.D. Pa. 1990). In this connection, Delaware applied the "most significant relationship" test in deciding choice of law questions. *Travelers Indem. Co. v. Lake*, 594 A.2d 38 (Del. Super Ct. 1991). This approach, for present purposes, affords no apparent conflict with federal bankruptcy choice of law principles evolved from *Vanston*, and so, for present convenience is used here.

    As to the issue of Grace's potential liability for deceptive business conduct causing injury to property, the fora having a relationship with that claim align themselves between the states of domicile of the individual ZAI Claimants, being also the states where the subject properties are located, and the various corporate fora of Grace on the other. With respect to the former, each ZAI Claimant's state of domicile is the state in which the real property containing ZAI was installed and is located and *ipso facto*, where injury has incurred. Each of the ZAI claimant's states is also the place where the conduct causing injury occurred, being the respective states where ZAI product packaging containing Grace's deceptive representations was encountered, where the product was actually or presumptively purchased, and in all cases, a state where Grace maintained manufacturing facilities for the production of ZAI and where, in all probability, the subject ZAI was in fact, manufactured and deceptively packaged.

Second, while the volume of ZAI misrepresentingly sold and the number of unfortunate homes in which ZAI was installed during this relevant time period are not presently known with precision, each is obviously substantial. From 1969 until ZAI's withdrawal in 1984, Grace manufactured some 807,610 short tons (1,615,220,000 pounds) of expanded vermiculite for use as insulation. ZAI was purchased and installed in as many as 4,486,722 homes in the United States during this same period.[36]

ZAI Claimants' proposed findings stand polar opposite to Grace's unrelenting marketing efforts, during this period, to feature ZAI as a "Do-It-Yourself" material, which was "100% vermiculite." ZAI is, as shall be shown upon plenary proceedings, a "Don't Do-It-Yourself Material" precisely because it is not "100% vermiculite." ZAI Claimants' proposed findings thus serve as factual cornerstones to ZAI claimants' entitlements under state statutory consumer protection laws.

Further, placed in their consumer protection context, these findings take on significance in this bankruptcy without regard for tort bases, definitional quarrels as to whether resulting injury is "economic loss," and without regard for product liability-based inquiries into whether the product is also "unreasonably dangerous."

___

In contrast, the only other states having a potential relationship with the dispute as to each ZAI claimant are Maryland (the principal place of business of W.R. Grace Co. and W.R. Grace Conn.), Connecticut (the state of incorporation of W.R. Grace Conn.) and Delaware (the state of incorporation of W.R. Grace Co.). While states of incorporation may be an important contact where the issue is internal corporate governance, that is not the case here. *See Official Comm. Of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.)*, 281 B.R. 852 (Bankr. D. Del. 2002). Likewise, the principal places of business of Debtors' bear little material relationship to ZAI Claimants' claims, Grace's Construction Product Division having been chiefly located in Massachusetts and Grace's principal place of business having changed over time. The respective states of each ZAI claimant, therefore, arguably bears the most significant relationship to the deceptive business practices alleged by each.

[36] These figures are derived from the Bureau of Mines Minerals Yearbooks data. *See* Production Table with attached Legend, Appendix "E" hereto.

Grace's defense to ZAI claims throughout its bankruptcy, in this regard, have balanced on the erroneous premise that, should a court find a lack of reliable scientific evidence "demonstrating that ZAI poses an unreasonable risk to humans, that finding would be dispositive of ZAI property claims. . . ." Debtors' Consolidated Reply in Support of Their Motion for Entry of Case Management Order, Establishment of a Bar Date, Approval of the Claim forms and Approval of the Notice Program, November 9, 2001. Grace, thus, erroneously and narrowly casts its liability as a question of strict product liability, mistakenly viewed by Grace as involving a single question of whether ZAI is "unreasonably dangerous." Grace thus invites a descent in evolving and conflicting views on testing methodologies, counting rules, and definitional quarrels as to when asbestos fibers become "fibers," all in the hope of lowering asbestos counts, but conceding, as they must, the fact of asbestos contamination and the fact of asbestos release upon disturbance. Having taken this strategic plunge, Grace carries as its safety shoot the erroneous argument that, in all event, its ZAI liability is wholly a matter of tort law and that the whole of tort law is inapplicable because damages, Grace says, are "economic loss."

These strategic positions ignore Grace's substantial liability grounded in state consumer protection statutes precisely designed to redress business misconduct, such as permeated Grace's marketing of ZAI, which statutes afford remedies without regard for whether a product is "unreasonably dangerous," and precisely for damages that may be characterized as "economic loss." In the consumer protection context, the asbestos contamination question becomes materiality, not toxicity.

The impact on ZAI homeowners of ZAI containing and releasing asbestos was recently reflected in an advisory to ZAI homeowners issued by the United States Environmental

-13-

Protection Agency and the Agency for Toxic Substances and Disease Registry in connection with

a "National Consumer Awareness Campaign:"

> EPA and ATSDR strongly recommend that:
>
> - Vermiculite insulation be left undisturbed in your attic . . .
> - You should not store boxes or other items in your attic if retrieving the material will disturb the insulation.
> - Children should not be allowed to play in an attic with open areas of vermiculite insulation.
> - If you plan to remodel or conduct renovations that would disturb the vermiculite, hire professionals trained and certified to handle asbestos to safely remove the material.
> - You should never attempt to remove the insulation yourself. Hire professionals trained and certified to safely remove the material.[37]

State consumer protection statutes afford redress for injury to a wide array of legally

protected interests, chief among them, economic or financial loss, such as occurs when the value

of real property is impacted because of the presence of asbestos in a home, or such as might

occur when a homeowner is compelled, through ordinary prudence or force of regulation, to hire

asbestos professionals to remove ZAI when engaging in activities that might disturb that

contaminated product. See Appendix "C", Claimant State CPA Analysis, *See also Besel v.*

*Viking Ins. Co. of Wisconsin*, 105 Wn.App. 463, 21 P.3d 293 (2001) (diminution in value of

property or money will suffice). A loss of use of property, further, such as occurs when a

homeowner prudently abandons or limits use of his real property, upon advice of public health

agencies, due to asbestos contamination of ZAI, also constitutes injury for consumer protection

purposes. See Appendix "C", Claimant State CPA Analysis, *See also Mason* 114 Wn.2d at 854.

---

[37] EPA Brochure "Current Best Practices for Vermiculite Attic Insulation – May 2003." Ex. "23" to Scott Dec.

-14-

Compensable damages under the consumer protection laws, of course, needn't be, and customarily do not involve, proof of physical harm or physical damage, or for that matter, risk of such harm, nor must damages be monetarily significant. See Appendix "C", Claimant State CPA Analysis, *See also Mason* 114 Wn.2d at 854.[38] The proposed findings, therefore, carry potentially significant weight without any reference to whether ZAI alone is sufficient to cause disease.

## V.    CONCLUSION

Grace's ZAI property damage liability is broadly based, both in terms of consumer protection statutes applicable to its misconduct, and in terms of the numbers of potential ZAI claimants having private rights of action under those applicable statutes.

An Order of Partial Summary Judgment, pursuant to FED. R. CIV. P. 56(d), specifying that there is no material question of fact but that ZAI is contaminated with asbestos and that there is no material question of fact but that ZAI releases asbestos when disturbed during foreseeable homeowner activities, would serve this bankruptcy by bringing into closer reach Grace's ultimate ZAI liability and by facilitating future proceedings by which Grace's actual liability is determined.

Present ZAI Claimants, therefore, respectfully request that this Court enter an Order as proposed.

---

[38] Indeed, under the applicable law of Massachusetts and California, no actual damage need be shown at all for ZAI claimants to prevail, those states entitling consumers to statutory damages where damages are small or non-existent. Mass. Gen. Laws Ch. 93 A Section 9 rights are afforded to "Any person . . . who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by Section Two . . ." The term "injury" here denotes invasion of any legally protected interest of another. *Leardi v. Brown*, 394 Mass. 151, 159 474 N.E.2d 1094 (1985), and does not require proof of damages. [W]here there has been an invasion of a legally protected interest, but no harm for which actual damages can be awarded, Section 9 provides for recovery of minimum statutory damages in the amount of $25. *Leardi*, 394 Mass. at 160 474 N.E.2d 1094, 1101 (1985).

Dated: July 2, 2003.

Respectfully submitted,

By: _____
Darrell W. Scott

Darrell W. Scott
LUKINS & ANNIS, P.S.
717 W. Sprague, Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Facsimile: (509) 747-2323

Edward J. Westbrook
Robert M. Turkewitz
RICHARDSON PATRICK
WESTBROOK & BRICKMAN LLC
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, SC 29464
Telephone: (843) 727-6500
Facsimile: (843) 727-6688

Special Counsel for ZAI Claimants

William D. Sullivan
ELZUFON AUSTIN REARDON
TARLOV & MONDELL
300 Delaware Avenue
Suite 1700
P.O. Box 1630
Wilmington, DE 19899-1630
Telephone: (302) 428-3181
Facsimile: (302) 428-3180