UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Bankruptcy No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

## TABLE OF CONTENTS OF APPENDICES TO
## ZONOLITE ATTIC INSULATION CLAIMANTS' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT RE W.R. GRACE'S CONSUMER PROTECTION LIABILITY

| Appendix No. | Description |
|---|---|
| A | Chart depicting W.R. Grace Business Practices |
| B | Chart depicting States with Private Rights of Action |
| C | Claimant State CPA Analysis Chart |
| D | Zonolite Attic Insulation State Statutory Consumer Protection Analysis Map |
| E | Bureau of Mines Mineral Yearbooks Data Production Table and Legend |
| F | *Barton Press, Inc. v. American Environmental Int'l, Inc.,* 1995 U.S. Dist. LEXIS 1450 (D.N.J. 1995) |

# APPENDIX A

# W.R. GRACE BUSINESS PRACTICES

| CONSUMER PROTECTION PRIVATE RIGHT OF ACTION | | | YEAR | Estimated Yearly # of Homes Installed with ZAI | GRACE'S BUSINESS ACTIVITIES POST-1968 |
|---|---|---|---|---|---|
| **MA** | NC | VT | 1969 | 416,667 | Grace Internal Memo: "It would be well at this time . . . to consider applying a warning or precautionary label"  [**Ex. 15**] |
| **WA** AK | **CA** **NH** | RI | 1970 | 442,000 | Grace's product manager urges ZAI salesmen: "Consumers must be informed of [ZAI's] unique benefits" and that "the future of attic insulation will depend upon effective selling to dealers and strong consumer advertising at the local level."  [**Ex. 5**] |
| IN OR | ID SD | NJ | 1971 | 394,444 | |
| KY | LA | OH | 1972 | 411,111 | Grace considered a "gentle warning" on their packaging, but did nothing.  [**Ex. 16**] |
| **MT** IL ME TX | **MN** CT KS UT | FL MO WY | 1973 | 455,556 | Grace Stop the Fuel Thief Ad: "Zonolite Attic Insulation is an ideal do-it-yourself project"  [**Ex. 7**] |
| MS | NE | WV | 1974 | 261,111 | |
| MD | NV | GA | 1975 | 216,667 | |
| PA | | | 1976 | 216,994 | Grace conducts ZAI testing, demonstrating asbestos contamination and fiber release.  See Hamilton depo.  [**Ex. 24**]  Grace's safety director reiterates his advice for a warning, noting he had been ignored previously.  [**Ex. 17**]  "It is believed that product labeling would have a serious, adverse, and irreversible effect upon consumer acceptance of our products."  May 17 1976 R.H.Locke Binder Development Program at 1.  [**Ex. 22**] |

| CONSUMER PROTECTION PRIVATE RIGHT OF ACTION | YEAR | Estimated Yearly # of Homes Installed with ZAI | GRACE'S BUSINESS ACTIVITIES POST-1968 |
|---|---|---|---|
| MI      TN      VA | 1977 | 416,111 | Grace conducts ZAI testing, including attic simulation testing, demonstrating asbestos contamination and fiber release. See Hamilton Deposition, pp 29-83, **[Ex. 24]**<br><br>Grace Draft Press Release re: ZAI withdrawal: "The company was sufficiently concerned about the entire issue of asbestos and associated health hazards to discontinue the product." (Press Release Withheld) **[Ex. 18]**<br><br>Grace predicts in an internal memorandum that their "vermiculite consumer products, namely Attic Insulation . . . will eventually be banned by the Consumer Product Safety Commission."" **[Ex. 19]**<br><br>Grace includes warning: "Avoid Creating Dust" on packaging (withheld disclosing asbestos). **[Ex. 20]** |
|  | 1978 | 228,889 | Grace conducts additional ZAI testing, including super clean simulated attic tests ("cleaning that was done of this material prior to expansion at Libby"), demonstrating asbestos contamination and fiber release. See Hamilton Depo. **[Ex. 24]** |
|  | 1979 | 220,000 |  |
| NY | 1980 | 212,222 | Grace Internal Memo: "I have doubts as to whether the caution labels are very helpful to our case . . . The caution label used on attic insulation does not specifically identify asbestos and, accordingly, could be viewed by the CPSC as being inadequate warning of the risk which may be associated with the use of this product." **[Ex. 21]**<br><br>Grace ads continue to show homeowners installing ZAI with no respiratory equipment. **[Exs. 8 & 12]** |
| AL | 1981 | 180,556 |  |
|  | 1982 | 129,444 |  |
|  | 1983 | 141,111 |  |
|  | 1984 | 143,889 |  |

# APPENDIX B

47 of the 50 States have Private Rights of Action Under Their Respective
Consumer Protection/Unfair Deceptive Practices Statutes.

STATES THAT ALLOW PRIVATE RIGHT OF ACTION

| | | | | |
|---|---|---|---|---|
| AL | HI | MI | NY | TX |
| AK | ID | MN | NC | UT |
| AZ | IL | MS | OH | VT |
| AR* | IN | MO | OK* | VA |
| CA | KS | MT | OR | WA |
| CO | KY | NE | PA | WV |
| CT | LA | NV | RI | WY |
| DE | ME | NH | SC | |
| FL | MD | NJ | SD | |
| GA | MA | NM | TN | |

WI
CONDITIONAL PRIVATE RIGHT OF
ACTION (in violation of an Order)

IA        ND

NO PRIVATE RIGHT OF ACTION

* Private Right of Action was adopted post-1984

# APPENDIX C

CLAIMANT STATE CPA ANALYSIS

| | Washington WA | Massachusetts MA | California - 1 CA | California - 2 CA | Montana MT | Minnesota - 1 MN | Minnesota - 2 MN |
|---|---|---|---|---|---|---|---|
| Current Population | 5,897,973 | 6,379,304 | 34,501,130 | | 904,433 | 4,972,294 | |
| Percent of Total Pop. | 2.1058% | 2.2445% | 12.1387% | 12.1387% | 0.3182% | 1.7494% | 1.7494% |
| Estimated Homes with ZAI | 85,748 (1970 to 1984) | 100,704 (1969 to 1984) | 494,052 (1970 to 1984) | 494,052 (1970 to 1984) | 8,981 (1973 to 1984) | 49,377 (1973 to 1984) | 49,377 (1973 to 1984) |
| ZAI Expansion Plants | Spokane | East Hampton, North Billerica | Newark, Los Angeles, Sacramento, Santa Ana | Newark, Los Angeles, Sacramento, Santa Ana | Libby, Great Falls | Minneapolis. | Minneapolis. |
| CPA Statute | RCW 19.86.010 to 19.86.920 | Mass. Gen. Laws Ch. 93A | Cal. Civ. Code 1750 to 1784 | Cal. Bus & Prof Code § 17200 to 17581 | Mont. Code 30-14-101 to 30-14-142 | Minn. Stat. § 325D.43 - 235D.48 | Minn. Stat. § 325F.68 to 325F.71 |
| Statute Title | Washington Consumer Protection Act | Massachusetts Consumer Protection Act | California Consumers Legal Remedies Act (Cal. Civ. Code 1750, et seq.) | Cal. Bus. & Prof. Code Sec. § 17200 et seq. (General Business Section Enforcement); False advertising, Sec. 17500 | Montana Unfair Trade Practices and Consumer Protection Act | Uniform Deceptive Trade Practices Act | Prevention of Consumer Fraud Act |
| Effective Date | 1961 | 1967 | 1965 | 1977 | 1973 | 1973 | 1963 |
| Private Right of Action Since | 1970 | 1969 | 1970 | 1977 | 1973 | 1973 | 1973 |
| Private ROA Detail | RCW 19.86.090: "Any person who is injured in his or her business or property by a violation of ... may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee ...." | Public and private rights of action available. Private right of action added in 1969 amendment. | Cal. Civ. Code 1780. May be brought by any person acting for the interests of itself, its members, or the general public. | § 17204: "Actions for relief pursuant to this chapter shall be prosecuted by ... or by any person acting for the interests of itself, its members or the general public." | Mont. Code 30-14-133(1): "Any person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act, or practice declared unlawful by 30-14-103 may bring an individual but not a class action under the rules of civil procedure in the district court of the county in which the seller or lessor resides or has his principal place of business or is doing business ...." | Minn. Stat. 8.31. Private actions (by persons injured) generally must be brought under Minnesota's Private AG Statute. See Ly v. Nystrom, 615 N.W.2d 301 (Minn. 2000). | Minn. Stat. 8.31. Private actions (by persons injured) generally must be brought under Minnesota's Private AG Statute. See Ly v. Nystrom, 615 N.W.2d 301 (Minn. 2000). |

CLAIMANT STATE CPA ANALYSIS

| | Washington WA | Massachusetts MA | California -1 CA | California -2 CA | Montana MT | Minnesota -1 MN | Minnesota -2 MN |
|---|---|---|---|---|---|---|---|
| Practices Prohibited | "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020 | "Unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ch. 93A sec. 2(a) | "Unfair or deceptive acts or practices including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, . . . uses, [or] benefits . . . which they do not have . . .; representing that goods . . . are of a particular standard, quality or grade . . . if they are of another." Cal. Civl Code 1770 | Any unlawful, unfair or fradulent business act or practice and unfair, deceptive, untrue or misleading advertising. Cal. Bus. & Prof. Code § 17200 | "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Mont. Code 30-14-103. | Minn. Stat. 325D.44: "A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person: . . . (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; . . . (7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." | Minn. Stat. 325F.69 subd. 1. "The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein." |
| SOL | 4 years (discovery rule) | 4 Years after cause of action accrues (discovery rule) | 3 Years from date of commission, (Legal Remedies Act) (discovery rule) | 4 years after cause of action accrued (discovery rule) | 2 years from discovery (fraud limitations period) (discovery rule) | 6 Years (discovery rule) | 6 Years (discovery rule) |

CLAIMANT STATE CPA ANALYSIS

| | Washington WA | Massachusetts MA | California - 1 CA | California - 2 CA | Montana MT | Minnesota - 1 MN | Minnesota - 2 MN |
|---|---|---|---|---|---|---|---|
| Discovery Rule Detail | In most cases, a cause of action accrues at the time the tortious act or omission occurred. (citation omitted) However, under the discovery rule, the statute will begin to run at a later date if the plaintiff did not and could not, through the exercise of due diligence, discover the elements of the cause of action at an earlier date. Allen v. State, 118 Wash. 2d 753, 826 P.2d 200, 203 (Wash. 1992). "Alternatively, the Court of Appeals held that Washington's discovery rule applied to Plaintiffs' CPA claims, and as such, Plaintiffs' 'cause of action [is] . . . not . . . deemed to have accrued until the discovery by the aggrieved party of the facts constituting the [CPA violation].'" Pickett, 101 Wn. App. at 913. See RCW 4.16.080(4); see also Reeves v. Teuscher, 881 F.2d 1495, 1501 (9th Cir. 1989)." Pickett v. Holland Am. Line-Westours, Inc., 145 Wn.2d 178 (2001) | Discovery rule operates to toll limitations period until prospective plaintiff learns or should have learned that he has been injured, and may arise in three circumstances; where misrepresentation concerns facts that was inherently unknowable to injured party, where wrongdoer breaches duty of disclosure, or where wrongdoer concealed existence of cause of action through some affirmative act done with intent to deceive. Patsos v First Albany Corp. (2001) 433 Mass 323, 741 NE2d 841. Discovery rule applies when facts are unknowable; where failure to disclose, or where existence is concealed. See Szymanski v. Boston Mut. Life Ins. Co., 56 Mass. App. Ct. 367 (2002) | "[T]he respective statutes of limitation, Business and Professions Code section 17208 (four years) and Civil Code section 1783 (three years), will probably run from the time a reasonable person would have discovered the basis for a claim. (citations omitted) Given the fact that plaintiffs' claim is based on a nondisclosure, the objective determination of when the nondisclosure should have been discovered seems readily amenable to class treatment." Massachusetts Mutual Life Ins. Co. v. Superior Court, 97 Cal. App. 4th 1282 (2002). | "[W]hen defendant's 'fraudulent concealment' prevents a plaintiff from discovering a cause of action, the statute of limitations is generally tolled. Much v. Sturm Ruger and Co., Inc. (D. Mont. 1980), 502 F.Supp. 743, 745. In a non-malpractice negligence action, there must be an affirmative act committed by the defendant, and the affirmative act must be calculated to obscure the existence of a cause of action. Much, 502 F.Supp. at 745." Yellowstone Conference of United Methodist Church v. D.A. Davidson, 228 Mont. 288, 741 P.2d 794 (1987) | "for relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud" Minn. Stat. 541.05(6) | "for relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud" Minn. Stat. 541.05(6) |
| Remedies | Actual damages, injunctive, reasonable attorneys fees/costs; treble damages (increased damage award may not exceed $10,000). RCW 19.86.090 | Actual damages, injunctive, may be able to recover double or treble damages (for knowing and willful violations), attorney fees/costs. 93A: 9. | Actual damages, punitive damages, injunctive relief, attorneys fees and costs, any other relief as court deems proper. Also equitable (as to consumers generally). In class action, damages no less than $300. | Restitution; disgorgement; injunctive relief, § 17203. This statute does not recognize the recovery of damages by individuals for unfair business practices. Chem v. Bank of America, 15 Cal. 3d 866, 875 (1976); Committee on Children's Television, Inc. v. General Foods Corp., 35 Cal. 3d 197, 215 n.16 (1983). | Actual damages or $200, whichever is greater; court may award treble damages (discretionary); equitable relief necessary or proper; attorney fees may be awarded. Sec. 30-14-133 | Actual damages; equitable relief; costs, investigative and attorney fees; injunction. Minn. Stat. Sec. 8.3 subd. 3a | Actual damages; 325F.69 subd. 3a |

CLAIMANT STATE CPA ANALYSIS

| | Washington WA | Massachusetts MA | California-1 CA | California-2 CA | Montana MT | Minnesota-1 MN | Minnesota-2 MN |
|---|---|---|---|---|---|---|---|
| Consumer Purchaser Requirement | "[T]he Washington Consumer Protection Act does not require that the injured party be the same party that purchased the goods or services." RCW 19.86.090; Washington State Physicians Ins. Exch. & Assoc. v. Fisons Corp., 122 Wash. 2d 299, 312-13, 858 P.2d 1054 (1993)." Westminster Lane Rd. Ass'n v. Canning, 1999 Wash. App. LEXIS 1027 (1999). | No; Maillet v. ATF-Davidson Co., 407 Mass. 185, 552 N.E.2d 95 (1990). "In Burnham v. Mark IV Homes, Inc., 367 Mass. 575 (1982), we concluded that because '[l]ack of privity . . . is no longer a defense' under the warranty provisions of the Uniform Commercial Code, G. L. c. 106, § 2-318, nonprivity plaintiffs could also maintain an action under G. L. c. 93A in a products liability case." Id. at 581. | Section 1770 is contained within the CLRA and is limited to actions brought by consumers. See Cal. Civ. Code § 1780(a). ("Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain any of the following . . . ."); "Consumer" means "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d), Lee v. Gen. Nutrition Cos., 2001 U.S. Dist. LEXIS 24739 (C.D. Ca. 2001) | "Any person acting for the interests of itself, its members or the general public" may file an action. § 17204. "Section 17200 does not require that a plaintiff prove that he or she was directly injured by the unfair practice or that the predicate law provides for a private right of action." Gregory v. Albertson's, Inc., 104 Cal. App. 4th 845, 851 (2002) | Statutory language implies privity is a requirement. | The Minnesota Supreme Court has interpreted the "any person" language broadly, holding that a claim under Minn. Stat. § 8.31 may be brought by a plaintiff who is not the actual purchaser of the defendant's products. Group Health Plan, Inc. v. Philip Morris Inc., 621 N.W.2d 2, 8-11 (Minn. 2001). | The Minnesota Supreme Court has interpreted the "any person" language broadly, holding that a "any person" claim under Minn. Stat. § 8.31 may be brought by a plaintiff who is not the actual purchaser of the defendant's products. Group Health Plan, Inc. v. Philip Morris Inc., 621 N.W.2d 2, 8-11 (Minn. 2001). |
| Class Action Permitted | YES | YES | YES | YES. | NO | YES | YES |
| Class Action Detail | Pickett v. Holland America Line-Westours, Inc. 145 Wn.2d 178, 35 P.2d 351 (2001). | See Mass Gen. Law 93A § 9(2); Leardi v. Brown, 394 Mass. 151, 474 N.E.2d 1094 (1985); Haddad v. Gonzalez, 410 Mass. 855, 576 N.E.2d 658 (1991). | Cal. Civ. Code 1781. In class action, damages no less than $300. | Fenning v. Glenfed, Inc., 40 Cal. App. 4th 1285 (1995) - Class action claims brought under 17200, 17500 | Mont. Code Ann. 30-14-133(1) | Dahl v. Charles Schwab & Co., 545 N.W.2d 918, 920 (Minn. 1996) | Dahl v. Charles Schwab & Co., 545 N.W.2d 918, 920 (Minn. 1996) |
| Reliance Required | No | Yes; Fraser Engrg Co. v. Desmond, 26 Mass. App. 99 (1988); Purity Supreme, Inc. v. Attorney Gen., 380 Mass. 726, 777, 407 N.E. 297, 307 (1980) | Yes; Kagan v. Gibraltar Savings & Loan Ass'n, 35 Cal. 3d 582, 593; Outboard Marine Corp. v. Superior Court, 52 Cal. App. 3d 30, 37 (1975). | No; People v. Dollar Rent-A-Car Sys., Inc., 211 Cal. App. 3d 119, 131 (1989) ( statute protects against the likelihood of deception to the public, not just actual harm; liability may be imposed without individualized proof of reliance deception and injury if necessary to deter unfair practices). | No; 30-14-104(1) (due consideration shall be given to interpretations of FTC) | No; see State v. Alpine Air Prods., 500 N.W.2d 788, 790 (Minn. 1993). | No; 355F.69 subd 1. Note: Courts differ on whether reliance is required. Under statutory consumer fraud claims, consumer must at least present circumstantial evidence of some reliance on alleged misrepresentations. Flynn v. Am. Home Prods. Corp., 627 N.W.2d 342 (Minn. 2001); but see Certified Question United States Dist. Court Order v. Philip Morris, 621 N.W.2d 2 (Minn. 2001) stating it is not necessary to plead individual consumer reliance. |

CLAIMANT STATE CPA ANALYSIS

| | Washington WA | Massachusetts MA | California - 1 CA | California - 2 CA | Montana MT | Minnesota - 1 MN | Minnesota - 2 MN |
|---|---|---|---|---|---|---|---|
| Notes | In Washington State Physicians Insurance Exchange & Ass'n v. Fisons Corp., 858 P.2d 1054, 1060-61 (Wash. 1993), the Washington Supreme Court found that noncomsumers may have standing. The Fisons court explained: "Although the consumer protection statutes of some states require that the injured person be the same person who purchased goods or services, there is no language in the Washington Act which requires that a CPA plaintiff be the consumer of goods or services." Fisons, 858 P.2d at 1061. | Indirect purchaser allowed to bring action, Ciardi v. Hoffman-La Roche, 436 Mass. 53 (2002), parties need not be in privity for their actions to come within reach of Ch. 93A, Kattar v. Demoulas, 433 Mass. 1, 14-15 (2000).  In Maillet v. ATF-Davidson Co., Inc., 552 N.E.2d 95, 98-99 (Mass. 1990), the court held that consumers need not be in privity with defendant (employee of purchaser allowed to sue). There must be some transactional relationship between the plaintiff and defendant. Commonwealth v. Homart Development Co., No. 95-2280B (Mass. Superior Court, Feb. 1997). | "Under California law, any unlawful business practice, including violations of laws for which there is no direct private right of action may be redressed by a private action under § 17200. Committee on Children's Television, 35 Cal. 3d at 210-11. "It is not necessary that the predicate law provide for private civil enforcement." Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994). n22 Thus, under § 17200, Plaintiff may redress violations of the California Sherman Act, California Consumer Legal Remedies Act, the Lanham Act (so long as the Lanham Act claims are not merely vehicles for claims under the FDCA or FDA regulations), and Cal. Bus. & Prof. Code § 17500." Summit Tech. v. High-Line Medical Instruments, Co., 933 F. Supp. 918 (C.D. Ca. 1996) | Statute as to advertising includes not only advertising which is false, but also advertising which is misleading or which has the capacity to deceive or confuse the public. See NOTE under Consumer Legal Remedies Act detail: Under California law, any unlawful business practice, including violations of laws for which there is no direct private right of action, such as the CLRA, may be redressed by a private action under § 17200. | | | |

# APPENDIX D



# ZONOLITE ATTIC INSULATION
## STATE STATUTORY CONSUMER PROTECTION ANALYSIS

★ States affording Private Rights of Action pre-dating 1985 (year indicated).

* PROA presumptively arose on date statute was enacted.

Estimated homes in which Zonolite was installed post-dating that State's Consumer Protection Statute.

● Discovery Rule applicable to Consumer Protection Statute.

? Applicability of Discovery Rule unresolved.

⊗ Discovery Rule not applicable.

# APPENDIX E

## Production Information from Bureau of Mines Minerals Yearbooks

| Year | Exfoliated Vermiculite Production (U.S.) in short tons | Percentage of Estimated Use for "insulation" (all types) | Percent of Exfoliated Vermiculite sold as "loose fill" | "Loose Fill" End Use of Exfoliated Vermiculite in short tons | Loose Fill End Use Converted to pounds (1 short ton = 2,000 lbs) | Number of Homes: Average of 30 bags per home, each bag weighing 12 pounds |
|------|------|------|------|------|------|------|
| 1969 | 250,000 | 34% | 30% | 75,000 | 150,000,000 | 416,666.67 |
| 1970 | 221,000 | 40% | 36% | 79,560 | 159,120,000 | 442,000.00 |
| 1971 | 209,000 | 38% | 34% | 71,000 | 142,000,000 | 394,444.44 |
| 1972 | 247,000 | 34% | 30% | 74,000 | 148,000,000 | 411,111.11 |
| 1973 | 293,000 | 31% | 28% | 82,000 | 164,000,000 | 455,555.56 |
| 1974 | 275,000 | 29% | 17% | 47,000 | 94,000,000 | 261,111.11 |
| 1975 | 235,000 | 31% | 17% | 39,000 | 78,000,000 | 216,666.67 |
| 1976 | 270,200 | 29% | 14% | 39,050 | 78,100,000 | 216,944.44 |
| 1977 | 321,000 | 39% | 23% | 74,900 | 149,800,000 | 416,111.11 |
| 1978 | 270,000 | 31% | 15% | 41,200 | 82,400,000 | 228,888.89 |
| 1979 | 278,000 | 31% | 14% | 39,600 | 79,200,000 | 220,000.00 |
| 1980 | 281,000 | 28% | 14% | 38,200 | 76,400,000 | 212,222.22 |
| 1981 | 274,000 | 27% | 12% | 32,500 | 65,000,000 | 180,555.56 |
| 1982 | 235,000 | 24% | 10% | 23,300 | 46,600,000 | 129,444.44 |
| 1983 | 224,000 | 28% | 11% | 25,400 | 50,800,000 | 141,111.11 |
| 1984 | 264,000 | 26% | 10% | 25,900 | 51,800,000 | 143,888.89 |
| **TOTAL** | | | | 807,610 | 1,615,220,000 | 4,486,722.22 |

Note: Items in red indicate information calculated by extropolation.

## LEGEND TO PRODUCTION INFORMATION FROM
## BUREAU OF MINES MINERALS YEARBOOKS

The production spreadsheet provides information taken from the Bureau of Mines Minerals Yearbooks, along with calculations, as follows.

- Exfoliated Vermiculite Production (U.S.) in Short Tons:  In 1952, the Yearbooks begin providing exfoliated short ton production data (rather than only crude vermieulite production) by estimating a 5-percent tonnage loss in processing.  By 1954, exfoliated short ton data is being provided to the Bureau of Mines from producers.  These actual figures, therefore, are provided.

- Percentage of Estimated Use for "Insulation" (all types):  Beginning in 1964, the Minerals Yearbooks begin providing percentages for uses as insulation.  The yearbook states: "for the first time the consumption data provided by the exfoliaters of vermiculite was adequate to estimate the approximate percentages of their outputs for different purposes."  The yearbook provides percentages for the following categories:  Aggregates (concrete, plaster, cement), Insulation (loose fill, block, pipe covering, packing), Agriculture (horticulture, soil conditioning, fertilizer carrier, litter), and Miscellaneous.  The Minerals Yearbook does not provide a further breakdown of these subcategories until 1972.

- Percent of Exfoliated Vermiculite Sold as "Loose Fill":  Beginning in 1973, the Minerals Yearbooks provide data for short ton production of Exfoliated Vermiculite by specific subcategory (and include 1972 figures in their tables).  "Loose Fill" is one of the subcategories under Insulation and actual figures are provided.  For the years 1969 to 1971, the chart shows calculated Loose Fill based on the 1972/1973 figures showing that loose fill was roughly 4% less than the total in the insulation category.

- "Loose Fill" End Use of Exfoliated Vermiculite:  This column shows calculated short tons of Loose Fill based on the percentage above.

- Loose Fill End Use Converted to Pounds:  This column shows calculated pounds of Loose Fill (1 short ton = 2,000 pounds).

- Number of Homes:  This column assumes a bag weight of 12 pounds and an average of 30 bags per installation (per Eaton deposition excerpt attached).

11    Q. How many bags were used in homes?

09:32:14 12        MR. FLATLEY: In a typical installation or

09:32:17 13   the largest possible, smallest possible?

09:32:19 14        A. I don't have an accurate figure. I can

09:32:27 15   give you the impression I was left with. I know

09:32:30 16   that we surveyed lot purchase size from

09:32:35 17   representative distributors, and my recollection is

09:32:41 18   that a very large job would be 100 bags, and a

09:32:45 19   normal job would be more like 20 to 30 bags.

09:32:51 20        Q. Were there jobs exceeding 100 bags?

09:33:02 21        A. I'm sure there were. I just don't know.

09:33:08 22        Q. In your experience, what was the most

09:33:11 23   number of bags used for anyone home?

09:33:13 24        A. I have no relevant experience on that.


12


09:33:15 1    Q. Was there an average number of bags used?

09:33:20 2    A. I've given you everything I know about the

09:33:21 3   number of bags.

09:33:22 4    Q. Did you ever observe Zonolite attic

09:33:25 5   insulation being installed?

09:33:28 6    A. I don't recall if I did.

# APPENDIX F

1995 U.S. Dist. LEXIS 1450, *

BARTON PRESS, INC., Plaintiff, v. AMERICAN ENVIRONMENTAL INTERNATIONAL, INC., Defendant.

Civil Action No. 94-79

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

1995 U.S. Dist. LEXIS 1450

January 31, 1995, Decided

**NOTICE: [*1]** NOT FOR PUBLICATION

**CORE TERMS:** machine, motion to dismiss, cure, testing, Consumer Fraud Act, emission, choice of law, omission, warranty, negligent misrepresentation, breach of warranty, breach of contract, express warranty, specifications, concealment, aggravating, estopped, raising, induce, consumer fraud, failure to state a claim, modifications, methodology, seller, affirmative defense, contractual, suppression, estop, New Jersey Consumer Fraud Act

**COUNSEL:** For Plaintiff: I. LEO MOTIUK, ESQ., MICHAEL O. ADELMAN, ESQ., JOAN E. PEARSON, ESQ., SHANLEY & FISHER, Morristown, NJ.

For Defendant: EILEEN A. LINDSAY, ESQ., ORLOFF, LOWENBACH, STIFELMAN & SIEGEL, Roseland, NJ. MARK C. SMITH, ESQ., ROSENBLUM, VANDENBERG & SMITH, Chicago, IL.

**JUDGES:** ALFRED M. WOLIN, U.S.D.J.

**OPINIONBY:** ALFRED M. WOLIN

**OPINION: OPINION**

WOLIN District Judge

This matter is opened before the Court upon the motion of defendant American Environmental International, Inc. ("AEI") to dismiss the complaint against it for failure to state a claim upon which relief can be granted. The motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. For the reasons given below, the motion to dismiss will be granted as to the third and fifth counts of the complaint only.

**BACKGROUND**

The following facts are taken from the complaint, and are assumed to be true for the purposes of this motion. Plaintiff Barton Press, Inc. ("BPI") is in the printing business. AEI is a manufacturer of air pollution control equipment. On September 12, 1992, the parties entered into a contract for the purchase and sale of AEI's patented Printkleen **[*2]** Emission Control System, Model 801. AEI guaranteed that the system would reduce emissions from BPI's operation below levels permitted by the New Jersey Department of Environmental Protection and Energy. The contract price was $ 107,650.

The contract provided for cure by the seller if the system did not conform to the contract. Testing was to be conducted by an independent testing company at BPI's expense. If the system failed to pass tests, AEI had 90 days to make changes to bring the system into compliance. If AEI's attempt to cure the defect failed, BPI had the right to the refund of the price, and to have the system removed from its premises.

The contract also provided for two legal issues that could arise. First, the contract is to be "construed and enforced" under the laws of Illinois. Second, "any legal proceeding commenced by Purchaser and based upon or arising out of this Proposal must be commenced within one (1) year after the cause of action accrued or shall be forever barred." Complaint, Exhibit A at 8.

The system was installed and ready to test on September 12, 1990. On November 28, the system was tested by an independent tester approved by both parties. The test showed **[\*3]** that the system did not comply with the state's regulations, and, therefore, that it did not conform to the agreement. AEI requested that it be allowed to re-test the system. This test was completed on January 28, 1991.

According to the second test, the system was operating to the contracted specifications. However, BPI objected that the testing methodology was not in accordance with the state's procedures for testing emissions, and therefore the system was still not in compliance. A third test was conducted on May 22, 1991 by a state-approved testing company. This time the system failed.

At this point, plaintiff demanded that AEI honor its commitment to effect a cure within the time provided, or remove the equipment and refund the price. AEI continued to maintain that the system was functioning properly. It requested that it be given the opportunity to perform a fourth test using different methodology. Plaintiff agreed on the condition that the state approve the methodology. Eight months later that approval was granted, and the fourth test was attempted on February 7, 1992. Due to equipment failure, the test was aborted. On March 5, the test was completed.

AEI claimed that the results **[\*4]** of the fourth test showed that the system was in compliance. BPI disagreed and submitted the results to an independent consultant, Harding Lawson Associates. Harding Lawson found that the system had failed again, but suggested modifications to improve its efficiency. By letter agreement dated May 22, 1992, the parties agreed that AEI would make the proposed modifications. Plaintiff's Brief, Exhibit 6. Both parties expressly reserved all their rights under the original contract.

On June 19, the system underwent its fifth test. The system finally appeared to be effective in meeting the state requirements. Unfortunately, in August of 1992, one of the modifications failed. At this point, BPI realized that the modifications AEI actually installed in May and June merely allowed a portion of the emissions to bypass the system altogether and thus violate the state requirements.

After two more attempts to repair the system, it failed its sixth and final test on February 4, 1993. By letter dated April 7, 1993, plaintiff demanded that AEI remove its equipment and refund the money paid to it by BPI.

AEI did not comply. By a complaint dated January 10, 1994, plaintiff commenced this lawsuit. Count **[\*5]** 1 alleges breach of contract. Count 2 alleges that AEI's representations as to the capabilities of its system constituted deception, fraud, et cetera, in violation of the New Jersey Consumer Fraud Act. Count 3 makes the same allegation with regard to the Illinois Consumer Fraud Act. Count 4 alleges that all of AEI's statements and actions constituted common-law fraud. Count 5 alleges negligent misrepresentation.

## DISCUSSION

AEI moves to dismiss the entire complaint against it for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). On a motion to dismiss under Rule 12(b)(6), the Court must accept as true all allegations in the complaint, and provide the plaintiff with the benefit of all inferences which fairly may be drawn from it. Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989). A complaint cannot be dismissed unless the court is certain that no set of facts can be proved that would entitle plaintiff to relief. Id.; Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). The Court will discuss each count of the complaint in turn. **[\*6]**

## 1. Count 1: Breach of Contract

In this motion, defendant does not challenge the proposition that plaintiff has alleged a claim for breach of contract. Instead, defendant raises the affirmative defense that BPI's claim is barred by the contractual limitations period of one year. Conceptually, raising a statute of limitations defense on a motion to dismiss would appear inconsistent with the standard set out above. However, a complaint may be subject to dismissal when its allegations indicate the existence of an affirmative defense. Williams v. Murdoch, 330 F.2d 745, 749 (3d Cir. 1964). n1 Courts may entertain an affirmative defense on a 12(b)(6) motion when, as a matter of law and based on the facts as pled in the complaint, it will bar relief. Id.; 5A Wright & Miller, Federal Practice and Procedure § 1357 at 351 (1990). Thus a statute of limitations defense may be considered on a 12(b)(6) motion. Davis v. Grusemeyer, 996 F.2d 617 (3d Cir. 1993).

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 In accordance with the contractual provision of the parties, this Court will apply the substantive law of the State of Illinois to this dispute. However, with regard to matters of federal procedure, the Court is governed by the law of the Third Circuit. Hanna v. Plumer, 380 U.S. 460, 14 L. Ed. 2d 8, 85 S. Ct. 1136 (1965).

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - - **[*7]**

Defendant claims that BPI's cause of action accrued on April 17, 1991. This was the expiration of the ninety day period following the first test of the system. AEI argues that, because it did not successfully cure within that time, that BPI's cause of action for breach accrued then.

The Court need not reach this issue however, because it finds that under plaintiff's version of the facts, regardless of when the period began to run, defendant is barred from raising the limitations defense by the doctrine of equitable estoppel. Where the words or actions of the defendant reasonably induce plaintiff to delay bringing suit, the doctrine of equitable estoppel will operate to prevent defendant from asserting that the action is time barred. Axia, Inc. v. I.C. Harbour Const. Co., 150 Ill. App. 3d 645, 653, 501 N.E.2d 1339, 1345, 103 Ill. Dec. 801 (1986), appeal denied, 114, Ill. 2d 543, 508 N.E.2d 725 (1987); Sabath v. Morris Handler Co., 102 Ill. App. 2d 218, 226, 243 N.E.2d 723, 727 (1968).

The acts or statements on which plaintiff relied need not constitute **[*8]** an intentional deception for defendant to be estopped. Witherell v. Weimer, 85 Ill. 2d 146, 158-59, 421 N.E.2d 869, 875-76, 52 Ill. Dec. 6 (1981). On the other hand, good faith negotiations will not suffice to estop the defendant from raising the defense. Myers v. Centralia Cartage Co., 94 Ill. App. 3d 1139, 1142-43, 419 N.E.2d 465, 468, 50 Ill. Dec. 357 (1981). Where the defendant induces plaintiff to reasonably believe that settlement is possible without suit, or "lulls plaintiff into a false sense of security" defendant will be estopped. Id. at 1143, 419 N.E.2d at 468. The focus is the reasonableness of plaintiff's reliance, not the purpose with which defendant acted. Witherell, 85 Ill. at 159, 421 N.E.2d at 875-76.

In this case defendant argues that it should not be estopped because any conduct that might have induced reliance occurred after April 17, 1992. By this time, defendant argues, the time to bring suit had already expired. The Court disagrees with defendant's **[*9]** factual and legal premises. It is clear from the cases already cited that the appropriate period during which defendant's conduct may lead to estoppel is the period during which the plaintiff may bring suit. Assuming for the sake of argument that defendant is correct that the cause of action accrued on April 17, 1991, acts or statements until April 17, 1992 may estop it.

Within the relevant period, plaintiff alleges, defendant requested three additional tests, each with the assurance that, this time, the system would pass and the contract would be fulfilled. The last of

these tests (number four) employed a new methodology, proposed by AEI, and which required a lengthy period to obtain state approval. After the system appeared to have passed this test, and during the time in which AEI was maintaining that the system was in compliance, the putative limitation period expired.

On these facts, AEI's actions would have induced a reasonable person to delay filing suit. AEI's repeated assertions that yet another test would show the system to be in compliance, and its insistence that the system had passed the test when in fact it had not, estop it from claiming that BPI should have filed suit **[*10]** sooner.

Thereafter, defendant's actions were or even greater concern. Defendant, intentionally or otherwise, subverted the entire system by allowing emissions to bypass it. This is a classic instance of "lulling the plaintiff into a false sense of security," because it caused later tests of the system's efficiency to emit false results. Finally, drawing all inferences in favor of the plaintiff, the Court must assume that the two attempts to repair the system in late 1992 and early 1993 were undertaken upon defendant's representations that the system could be made to comply. Where there is conduct before the expiration of a limitations period that would induce delay in bringing suit, post-expiration conduct may be considered as evidence of an estoppel. Axia, 150 Ill. App. 3d at 653, 501 N.E.2d at 1345 (dictum). Suit was filed within one year of the sixth and last test of the system.

Moreover, the context of the parties' relationship lends further support for the conclusion that defendant is estopped from raising the limitations defense. It must be remembered that plaintiff had bargained for an express duty to cure provision **[*11]** in the contract. Thus, AEI's attempts to cure are not analogous to mere settlement negotiations. AEI's attempts to cure reasonably may have appeared to BPI as an ongoing attempt to perform. Furthermore, the Printkleen system was obviously an expensive and complex piece of equipment. Defendant, as the manufacturer, was plaintiff's best hope to get it to work. Certainly a premature lawsuit would have doomed any hope of defendant's cooperation. Given defendant's expertise, it was entirely reasonable for plaintiff to rely on defendant's assurances that all would be well, and to assume that defendant was making its best effort to cure the defect.

Finally, defendant points to assertions of BPI's counsel that the agreements to further testing did not waive their client's rights under the contract. Defendant argues that these assertions show that BPI was aware of a controversy between the parties before the limitation period expired. The Court will not attach such weight to this type of lawyer's expression. To the extent this language has any effect, it cuts against defendant's case. This is because it demonstrates that plaintiff was delaying a direct assertion of its legal rights only in **[*12]** reliance on defendant's representations of its ability to cure, and with the understanding that those rights would not be impaired by doing so.

## 2. Count 2: The New Jersey Consumer Fraud Act n2

The complaint alleges three main areas of the parties' relationship that might give rise to a Consumer Fraud Act claim. First, AEI expressly warranted that the pollution control system would enable BPI to meet the state regulations. Second, AEI repeatedly misstated test results in an effort to conceal its breach of warranty. Finally, AEI re-routed a portion of the exhaust gases, also in order to conceal its breach of warranty. Defendant argues that this is a simple breach of contract case. Defendant maintains that, beyond its conclusory assertions, plaintiff has not identified unconscionable commercial practices sufficient to invoke the statute.

> This statute creates two categories of prohibited acts. The first category (unconscionable commercial practices, deception, fraud, false pretense, false promise or misrepresentation) consists of affirmative acts, while the second category (concealment, suppression or omission of any material fact) consists of acts of omission. Affirmative **[*13]** acts require no showing of intent, while an essential element of a consumer fraud claim resting on an act of omission is that the defendants' act be 'knowing'.

Strawn v. Canuso, 271 N.J. Super. 88, 108, 638 A.2d 141, 151 (App. Div. 1994) (quoting Chattin v. Cape May Greene, Inc., 243 N.J. Super. 590, 598, 581 A.2d 91, 95 (App. Div. 1990), aff'd, 124 N.J. 520, 591 A.2d 943 (1991) (Chattin II)), leave to appeal granted sub nom. Incollingo v. Canuso, 137 N.J. 303, 645, 645 A.2d 134 (A.2d 134 (1994). Thus the affirmative acts proscribed require no showing of intent. n3 Fenwick v. Kay Am. Jeep, Inc., 72 N.J. 372, 377, 371 A.2d 13, 16 (1977); Chattin II, 243 N.J. Super. at 598, 581 A.2d at 95.

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n2 The New Jersey Statute provides that:

> The act, use or employment of any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact bee misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J.S.A. 56:8-2. **[*14]**

n3 The Court finds that the New Jersey courts' use of the categories "affirmative acts" and "acts of omission" is misleading. "Knowing concealment," N.J.S.A. 56:8-2, may be an affirmative act in the normal use of the phrase, but here it is categorized as an act of omission. A closer reading of the statute reveals that the legislature imposed the intent element to acts or omissions that prevent the consumer from discovering a defect, while imposing strict liability to acts that engender a false belief in the consumer's mind in the first instance. Nonetheless, with this understanding, the Court will continue to employ the nomenclature used by the New Jersey courts.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

Of the three general areas of acts complained of here, only the express warranty that the system would clean BPI's emissions to state standards qualifies as an affirmative act under the statute. Accordingly, as to the warranty, whether AEI knew that its system was deficient is irrelevant. The parties agree that the case law is unclear as to whether breach of warranty may constitute a violation of the Consumer Fraud Act.

As a matter of **[*15]** logic and the statutory language, the Court finds that an erroneous statement of the quality of goods sold falls squarely within the statute's proscription of misrepresentation. That the statement should be memorialized as a warranty should not change the outcome. Nor should it change the analysis that the statement may concern a machine's capacity to perform some task in the future.

This principle is borne out by cases holding a misdescription of goods may be a Consumer Fraud Act violation. See Chattin v. Cape May Greene, Inc., 216 N.J. Super. 618, 638-40, 524 A.2d 841, 851-52 (App. Div.) (brochure describing windows as "insulated"), certif. denied, 107 N.J. 148, 526 A.2d 209 (1987) (Chattin I); Wildstein v. Tru Motors, Inc., 227 N.J. Super. 331, 334, 547 A.2d 340, 341 (L. Div. 1988) (resetting odometer on used automobile); see also Kugler v. Koscot Interplanetary, Inc., 120 N.J. Super. 216, 226-27, 293 A.2d 682, 687-88 (Ch. Div. 1972) (representations as to future earnings possible with defendant's **[*16]** distributorship contract).

On the other hand, a line of New Jersey cases hold that mere breach of warranty without some showing of unconscionability or "substantially aggravating" factor will not amount to consumer fraud under the Act. DiNicola v. Watchung Furniture's Country Manor, 232 N.J. Super. 69, 72-73, 556

A.2d 367, 368-69 (App. Div.), certif. denied, 117 N.J. 126, 564 A.2d 854 (1989); D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J. Super. 11, 31, 501 A.2d 990, 1001 (App. Div. 1985). In light of the traditional remedies for breach of contract and warranty, the courts have reasoned that the legislature could not have intended the Consumer Fraud Act to apply in every such case. D'Ercole, 206 N.J. Super. at 31, 501 A.2d at 1001.

Plaintiff attempts to distinguish these cases by arguing that they only concern post-sale refusals to cure defects. The Court is not persuaded by this argument. Whether or not the defect is cured, the gravamen of a breach of warranty is that the goods fail to conform to **[*17]** their warranted description. Instead the Court finds that the New Jersey courts have decided to limit the plain language of the statute to exclude garden variety breaches of contract and warranty.

This does not end the inquiry, however, because the Court finds that plaintiff has alleged "substantially aggravating" factors sufficient to place this warranty claim within the reach of the statute. First, the type of warranty itself is out of the ordinary. The complaint alleges that AEI was aware of the special requirements of its customer. Defendant knew BPI was relying on its expertise. It is claimed that the express warranty was made with the intent that it would induce BPI to enter the contract. Complaint P 9.

Second, AEI's subsequent acts must be seen together with the nature of its express warranty to determine if there were aggravating factors. The alleged course of obfuscation and avoidance pursued by AEI concerning the performance of its system has already been chronicled. The reasonable inference to be drawn from the complaint is that the requests for re-testing, disputes over the testing results, and especially the bypassing of the exhaust gasses were done in bad faith. Wilson, 878 F.2d at 775 **[*18]** (reasonable inferences to be drawn in favor of the plaintiff on a motion to dismiss for failure to state a claim).

The Court makes no ruling now as to whether such a showing of bad faith or intention in the seller's post-delivery conduct would be necessary to sustain a Consumer Fraud Act claim either as aggravating factors to the initial express warranty, or as violations of the Act in their own right. Unconscionability in the context of the Consumer Fraud Act is a fact sensitive issue. Perth Amboy Iron Works, Inc. v. American Home Assurance Co., 226 N.J. Super. 200, 211, 543 A.2d 1020, 1026 (App. Div. 1988), aff'd, 118 N.J. 249, 571 A.2d 294 (1990). The parties must be allowed to develop the factual background. D'Ercole, 206 N.J. Super. at 29, 501 A.2d at 1000. The inquiry on this motion is only whether, on any set of facts the plaintiff could prove, it has stated a claim under the Act.

The Court finds that, as alleged, the type of warranty in this case, coupled with the other factors alleged, do state a claim under the Consumer Fraud Act. In addition, **[*19]** if plaintiff can prove that the post-delivery actions amounted to intentional concealment of the deficiencies of the system, it may prevail on the consumer fraud count without relying on the allegation of express warranty. Accordingly, defendant's motion to dismiss this count will be denied.

## 3. Count 3: The Illinois Consumer Fraud Act

Plaintiff has alleged violations of both the New Jersey and Illinois Consumer Fraud Acts. The parties maintain that there is no substantive conflict between the two, and have briefed the case under both statutes. However, the Court believes that it is the more efficient course to rule on this issue now, to preclude future conflicts that may arise, and to avoid unnecessary litigation of this issue.

A federal court must apply the choice of law rules of the state in which it sits. Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 46 L. Ed. 2d 3, 96 S. Ct. 167 (1975); Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941). With respect to contracts, New Jersey looks to the Restatement (Second) of Conflicts **[*20]** and applies the law of the state with the most significant relationship to the parties and the issues. State Farm Mut. Auto Ins. Co. v. Estate of Simmons, 84 N.J. 28, 34-35, 417 A.2d 488, 491 (1980) (citing Restatement (Second) of Conflicts §

188 (1971)).

Under the Restatement, a contractual choice of law clause will not be upheld where "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement (Second) § 187(2)(b). The New Jersey courts have applied this rule to overturn the parties' choice of law, Winer Motors, Inc. v. Jaguar Rover Triumph, Inc., 208 N.J. Super. 666, 672-73, 506 A.2d 817, 820-21 (App. Div. 1986), and it is supported by a long line of dictum. Instructional Sys. Inc. v. Computer Curriculum Corp., 130 N.J. 324, 342, 614 A.2d 124, 133 (1992); Conopco, Inc. v. McCreadie, 826 F. Supp. 855, 864 (D.N.J. 1993), **[*21]** aff'd, 40 F.3d 1239 (3d Cir. 1994); Security Savs. Bank v. Green Tree Acceptance, Inc., 703 F. Supp. 350, 354 (D.N.J. 1989).

The New Jersey Consumer Fraud Act is a clear and fully articulated statement of fundamental public policy by the legislature of New Jersey. See N.J.S.A. 56:8-1 et seq. Its purpose is to protect buyers from unfair practices by sellers. Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 270, 390 A.2d 566, 568 (1978). It was passed in response to widespread public demand. Fenwick, 72 N.J. at 376, 371 A.2d at 15. The importance of the consumer protection policy manifested by the Act has led the courts to apply New Jersey law, even though other choice of law rules pointed elsewhere. Huffmaster v. Robinson, 221 N.J. Super. 315, 318-19, 534 A.2d 435, 437-38 (L. Div. 1986).

In this case the buyer is a New Jersey citizen and the goods were delivered into New Jersey. As a result, the New Jersey policy is directly engaged. These facts also show that New Jersey has a materially **[*22]** greater interest in the transaction. For the same reasons, New Jersey's significant relationship test would require the application of New Jersey law absent a contractual provision to the contrary. n4 Thus, the factors of the Restatement § 187(2)(b) to set aside the contractual choice of law provision are all present concerning the Consumer Fraud statutes. Accordingly, the Court finds that the New Jersey Act controls, and Count 3 of the complaint alleging a violation of the Illinois Act will be dismissed.

- - - - - - - - - - - - - - - - - - Footnotes- - - - - - - - - - - - - - - - - - - -

n4 The record does not disclose where the contract was executed, but the Court notes that this fact is not solely dispositive.

- - - - - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - - - -

### 4. Count 4: Common-law Fraud

Defendant argues that this count must be dismissed because it is predicated on statements that concern future performance. It is well settled that a promise to perform an act in the future cannot be fraudulent.

Plaintiff distinguishes this authority by arguing that the statements about the Printkleen Emission Control System were statements as to the capabilities **[*23]** of an existing machine or of an existing type of machine. Plaintiff cites a case in which an Illinois appeals court held that a seller's statements as to the ability of a air-conditioning system to make ice in accordance with certain specifications were statements of present fact rather than future performance. People ex rel. Peters v. Murphy-Knight, 248 Ill. App. 3d 382, 388-89, 618 N.E.2d 459, 464, 187 Ill. Dec. 868 (1993). Thus, under Illinois law, statements as to the ability of a machine to perform a certain task is considered a statement of existing fact. The cases cited by defendant are distinguishable because they concern statements of a party's intent to do something in the future.

Accordingly, plaintiff may be able to show that defendant made false statements concerning a then-existing machine or type of machine. Defendant argues that the emissions control system was not an existing machine, and their representations were no more than promises to build a machine in

the future in conformance with certain specifications.

The Court finds that the facts alleged in the complaint contradict this argument. The machine **[*24]** was sufficiently in existence to be named "the Printkleen Emission Control System" and it was patented by the defendant. Plaintiff's Brief, Exhibit 1 (the complaint) at Exhibit A (the contract) at 1. It was identified by model number in the contract. Id. at 6, 7. The specifications provided, which defendant claims show that the system was to be custom-built in the future, were no more than the amount and temperature of emissions the machine was supposed to process. Id. at 7.

Thus, as in Murphy-Knight, "under the allegations of the complaint, the representations concerned a machine of known physical characteristics based upon the application of certain mathematical formulae and laws of physics to those physical properties." 248 Ill. App. 3d at 388-89, 618 N.E.2d at 464. Whether the contract for this system referred to an existing machine, or type of machine, or to a machine about which no statements of existing fact could be made is clearly a question of fact that may not be resolved against the plaintiff upon a motion to dismiss. Murphy-Knight shows that the issue is not precluded just because the machine at **[*25]** issue is a large piece of mechanical equipment to be permanently installed in a building. Thus, the allegation of fraud is not deficient based on a statement of future fact.

Even if this issue is ultimately resolved against plaintiff, Illinois law recognizes an exception to the exclusion of in futuro statements from forming the basis for fraud. A cause of action for fraud may be established if plaintiff shows that the statement as was part of an overall fraudulent scheme. Steinberg v. Chicago Medical School, 69 Ill. 2d 320, 333-34, 371 N.E.2d 634, 641, 13 Ill. Dec. 699 (1977). It cannot be said as a matter of law at this point in the litigation that this possibility is precluded.

Therefore, the motion to dismiss on this point must be denied. Defendant has not challenged the sufficiency of the complaint as to any of the other elements of common-law fraud. Therefore, the Court will not consider at this time whether the pleading alleges facts that would support these other elements.

## 5. Count 5: Negligent Misrepresentation

Defendant argues that this count is deficient because it is not alleged that AEI is in the business **[*26]** of providing information. This argument has merit.

It is conceded that to state a claim for negligent misrepresentation, the plaintiff must allege that the defendant was in the business of providing information for the guidance of others in their business transactions with third persons. Plaintiff's Brief at 27. Plaintiff argues that AEI undertook to provide testing results that constituted information upon which BPI would rely in its dealings with the state regulators. The Court rejects this argument.

The Seventh Circuit provided an exhaustive discussion of the Illinois negligent misrepresentation tort in Rankow v. First Chicago Corp., 870 F.2d 356, 360-66 (7th Cir. 1989). The Court of Appeals surveyed Illinois case law and concluded that, where a defendant has provided a tangible product, it will not be held to be in the business of providing information. Id. at 363-64. The court recognized that in many cases both information and a tangible product is provided. "But if we ask what the product is in each of these cases, it becomes clear that the product (a building, precipitator, roofing material, computer or software) **[*27]** is not itself information, and that the information provided is merely incidental." Id. at 364.

The Court believes that this situation is presented here. The information as to whether the system was working as promised is incidental to the delivery of the system itself. Moreover, the complaint shows that, from AEI's perspective, the information was not provided to assist BPI in its dealings with the state regulators, but was intended only to determine whether the terms of the contract had been met. There is no allegation that BPI submitted AEI's test data directly to the state regulators.

On the contrary, BPI was vigilant in subjecting the data provided by the defendant to independent scrutiny. The fact that AEI's contractual compliance and BPI's regulatory compliance turned on the same specifications make this appear a closer issue that it actually is.

Accordingly, the complaint has failed to state a claim for negligent misrepresentation under Illinois law. The motion to dismiss will be granted as to the fifth count of the complaint.

### CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss the complaint for failure to state a claim **[*28]** will be granted as to the third and fifth counts of the complaint. The motion will be denied as to all the other counts.

An appropriate Order is attached.

Dated: January 31, 1995

ALFRED M. WOLIN, U.S.D.J.

### ORDER

In accordance with the Court's Opinion filed herewith,

It is on this 31st day of January, 1995

ORDERED that defendant's motion to dismiss the complaint is denied in part and granted in part; and it is further

ORDERED that only Count Three and Count Five of the Complaint are dismissed.

ALFRED M. WOLIN, U.S.D.J.


Service: **Get by LEXSEE®**
Citation: **1995 U.S. Dist. LEXIS 1450**
View: Full
Date/Time: Thursday, July 3, 2003 – 4:05 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.