848 S.W.2d 506
Prod.Liab.Rep. (CCH) P 13,563
(Cite as: 848 S.W.2d 506)

Page 1

Edward HARASHE, Plaintiff-Respondent,
v.
The FLINTKOTE COMPANY, et al., (including W.R. Grace & Co.--Conn.), Defendants-Appellants.

No. 61474.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 2, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 17, 1993.

Plumber who had been exposed to asbestos in insulation he installed in his house and who subsequently developed terminal mesothelioma brought suit against successor to company which had produced the asbestos. The Circuit Court, City of St. Louis, Brendan Ryan, J., entered judgment on jury verdict of $2.5 million in favor of the plumber, and defendant appealed. The Court of Appeals, Smith, J., held that: (1) defendant company had successor liability for liabilities of company that had produced asbestos; (2) medical expert testimony was sufficient to establish causation between product and harm; and (3) documents concerning potential danger from asbestos contaminants at mine were relevant to notice of danger.

Affirmed.

[1] CORPORATIONS ⇐441.1

101k441.1
Formerly 101k441
Elements of a de facto merger are continuation of management and personnel and general business operations; continuity of shareholders resulting from purchasing corporation paying for assets with shares of its own stock so selling corporation stockholders become constituent part of purchasing corporation; seller corporation ceasing ordinary business operation and dissolving as soon as possible; and purchasing corporation assuming obligations necessary to continue normal, ordinary business operations; however, it is not necessary to find all these elements to find a de facto merger.

[2] CORPORATIONS ⇐445.1
101k445.1
Company which purchased another company producing asbestos had successor liability for liabilities of the company it had purchased where, although purchase agreement was delineated as reorganization through a purchase of assets, it contained all elements of de facto merger.

[3] PRODUCTS LIABILITY ⇐15
313Ak15
To prove causal relationship between defendant's product and the harm, there must be evidence that product was substantial factor in causing harm, and causal relationship must be established by expert testimony.

[3] PRODUCTS LIABILITY ⇐82.1
313Ak82.1
Formerly 313Ak82
To prove causal relationship between defendant's product and the harm, there must be evidence that product was substantial factor in causing harm, and causal relationship must be established by expert testimony.

[4] PRODUCTS LIABILITY ⇐83
313Ak83
Evidence was sufficient to establish causation between defendant's asbestos containing tremolite and plumber's tumor where expert medical witness testified that exposure to defendant's product contributed causally to development of tumor, even though plumber had been exposed to asbestos from other sources.

[5] APPEAL AND ERROR ⇐231(9)
30k231(9)
Court of Appeals considers only those omissions or misstatements in hypothetical questions to which specific objections have been made specifying what is missing or improperly included.

[6] APPEAL AND ERROR ⇐215(1)
30k215(1)
Objections raised on appeal to verdict directing instructions were not preserved where they were not raised at jury instruction conference or in motion for new trial.

[6] APPEAL AND ERROR ⇐302(4)
30k302(4)

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works

848 S.W.2d 506
(Cite as: 848 S.W.2d 506)

Page 2

Objections raised on appeal to verdict directing instructions were not preserved where they were not raised at jury instruction conference or in motion for new trial.

**[7] APPEAL AND ERROR ⇐970(2)**
30k970(2)
Trial court has substantial discretion in admission of evidence and will not be overturned absent abuse of discretion.

**[8] EVIDENCE ⇐355(1)**
157k355(1)
Trial court did not abuse its discretion by admitting reports and internal memoranda concerning potential danger from asbestos contaminants at defendant's mine where documents were relevant as to defendant's notice of danger, even though documents were generated after plaintiff's first two of three exposures to defendant's asbestos product containing tremolite.

**[9] TRIAL ⇐133.2**
388k133.2
If court's action is responsive to objection made by counsel, court is not in error for failure to take other and further curative steps not then sought by the party.

*507 Thomas C. Walsh, David S. Slavkin, Mark B. Leadlove, Bryan Cave, St. Louis, for defendants-appellants.

James P. Holloran, Thomas L. Stewart, James P. Holloran, P.C., St. Louis, Paul H. Hulsey, Ness, Motley, Loadholt, Richardson & Poole, PA, Charleston, SC, for plaintiff-respondent.

SMITH, Judge.

Defendant W.R. Grace & Co.--Conn., appeals from a jury verdict and resultant judgment of $2.5 million arising from plaintiff's exposure to asbestos and his resulting terminal mesothelioma. We affirm.

The product which allegedly caused plaintiff's disease was vermiculite contaminated with tremolite also referred to as actinolite. [FN1] Vermiculite does not cause mesothelioma. Asbestos is a class of crystal mineral deposits that are mined from the earth. Its commercial value lies in its nearly indestructible nature including resistance to extreme heat and chemical corrosion. Tremolite is a form of asbestos but does not have commercial value. It occurs in the vermiculite involved here as an unwanted contaminant mined with the vermiculite. Tremolite is in the amphibole family of asbestos minerals. Also included in that family is crocidolite and amosite. Fibers of the amphibole family are long, straight, rigid and daggerlike in formation. The other asbestos family is serpentine chrysotile asbestos. While it is dangerous to health it is not the cause of mesothelioma, an extremely rare, inevitably fatal, cancer attacking the pleural lining of the lungs. The amphibole family is a primary cause of mesothelioma, with crocidolite the most dangerous and amosite somewhat less dangerous. Amphibole asbestos is friable, meaning it tends to break into long individual fibers which creates dust. During the creation of this dust microscopic fibers of amphibole asbestos may be ingested by breathing.

> FN1. The difference between tremolite and actinolite is the amount of iron contained. For purposes of this opinion we will utilize tremolite to refer to the contaminate.

Plaintiff was at the time of trial 67 years old and it is undisputed that he suffers from mesothelioma and had probably less than a year to live at the time of trial. There was no real dispute that the mesothelioma was caused by amphibole asbestos. Plaintiff was by occupation a plumber and during his career was exposed to asbestos utilized as insulation for boilers and hot water pipes. The amount of this exposure was emphasized by plaintiff as minimal and by defendant as substantial. Plaintiff adduced evidence that 90 to 95% of the asbestos in commercial use in this country is chrysotile serpentine asbestos. Much of plaintiff's exposure to asbestos, although by no means all, occurred while plaintiff was working for the St. Louis School Board from 1971 until his retirement in 1986. His disease was diagnosed in 1990. There was evidence from the defendant's medical expert that the minimum latency period for development of the disease is twenty years after exposure. Plaintiff's expert placed the minimum latency period at fifteen years. If the jury chose to believe defendant's expert on the latency period the exposures during plaintiff's employment by the school board did not impact on plaintiff's contraction of the disease. Even if it chose to believe plaintiff's expert only four years of those exposures would be relevant. The evidence does not establish with precision the frequency of the exposures or when they occurred during the school board employment.

In the early 1950's plaintiff purchased twenty bags of Zonolite insulation. Zonolite was a vermiculite

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works

848 S.W.2d 506
(Cite as: 848 S.W.2d 506, *507)

Page 3

product mined, processed, and sold by the Zonolite Company. In 1963 defendant acquired the assets of Zonolite Company. Plaintiff used the insulation to insulate his attic by pouring the *508 product between the joists of his ceiling. Because of the layout and confined space of the attic, he was required to place his face quite close to the insulation as it was being poured into the spaces between the joists. He testified that the insulation created heavy amounts of dust. Insulating the attic took approximately one day. Thereafter the plaintiff would go to the attic twice a year to check on a vent located there. On those occasions the attic was quite dusty. Several years after the attic work plaintiff bought additional Zonolite to insulate between walls. Again in installing this insulation plaintiff came into contact with heavy clouds of dust. In 1975 plaintiff utilized Zonolite to do additional insulating in the roof of a new addition and again functioned in quite dusty conditions in close proximity to the insulating product. The 1975 exposure would be on the very edge of the latency period of the plaintiff's expert and outside the latency period of the defendant's expert. From the testimony of the plaintiff we believe that a jury could find that the plaintiff sustained at least two heavy exposures to dust from the Zonolite.

Expert testimony established that samples of the insulation from plaintiff's attic contained fibers of tremolite. The amount was placed at "less than 1%" by plaintiff's expert and at .1 of 1% by defendant's expert. Plaintiff's expert placed the number of tremolite fibers at six hundred billion which would constitute approximately the volume of the cap of a fountain pen. That expert also testified that the fibers in the attic were friable and capable of becoming respirable. Defendant's expert did not find any respirable fibers or any capable of becoming respirable.

Medical testimony would allow a jury to conclude that mesothelioma could be contracted from limited exposure to amphibole asbestos including tremolite. Defendant's medical expert testified on cross-examination that the disease has been found in white collar males whose only exposure was during summer jobs while in college, in housewives whose only exposure was from the clothing of a spouse who worked with asbestos, and from individuals living near to asbestos plants or mines. While that expert believed that heavy continuing exposure was usually necessary to contract the disease he conceded that it was possible to contract the disease from a single heavy exposure to amphibole asbestos. Mesothelioma is unlike asbestosis which involves the scarring of the lung tissues from continued breathing of asbestos fibers. Mesothelioma evolves from the entry of the amphibole asbestos fiber into the lung and its movement through the lung tissue into the pleura surrounding the lung. Once in the pleura the fiber or fibers cause a change in the tissue and the development of malignant cells. The human body's natural defenses generally prevent fibers of asbestos from getting into the lung or from moving through the lung tissue into the pleura. It is not clear from the medical testimony that multiple fibers in the pleura are necessary to development of the disease and from the defense expert's testimony it is a reasonable inference that a single fiber which can successfully evade the body defenses and move into the pleura could cause the disease. One way in which the fibers can evade the body defenses is by overloading the system as from a massive dose of foreign particles introduced into the respiratory tract.

Initially we address the defendant's challenge to the trial court's finding that it was a successor corporation to the Zonolite Corporation and therefore has successor liability. The only evidence in the record is the agreement by which defendant acquired the assets of Zonolite. It is questionable that the issue has been preserved. [FN2] No objection was raised at the time the court made its ruling that Grace was a successor to Zonolite. When counsel was asked if there was any question that the liability of defendant was based on a predecessor organization defendant's counsel replied: "I don't know the law of Missouri. I can't tell you that." We will, however, review the matter on the merits.

FN2. Counsel on appeal were not trial counsel.

*509 Plaintiff asserts that the Agreement and Plan of Reorganization between Grace and Zonolite specifically provided for assumption of Zonolite's liabilities including contingent liabilities such as its liability to plaintiff. Plaintiff further contends that the transaction by which Grace acquired Zonolite's assets was a de facto merger thereby imposing successor liability. We find it unnecessary to venture into the questions raised by the language of the contract which provided for the assumption of liabilities actual and contingent and the peripheral issue of choice of laws.

[1][2] The elements of a de facto merger are: (1) a continuation of management and personnel and general business operations; (2) a continuity of shareholders resulting from the purchasing

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works

848 S.W.2d 506
(Cite as: 848 S.W.2d 506, *509)

Page 4

corporation paying for the assets with shares of its own stock so the selling corporation stockholders become a constituent part of the purchasing corporation; (3) the seller corporation ceasing ordinary business operation and dissolving as soon as possible; and (4) the purchasing corporation assuming those obligations necessary to continue normal, ordinary business operations. FLETCHER CYC CORP § 7124.20 (Perm.Ed). It is not necessary to find all the elements to find a de facto merger. Id. The agreement was generally silent about most of the employees of Zonolite but did provide for the continuation of employment for the president for five years and for Grace to continue the general business operations. The assets were purchased by the issuance of stock of Grace which was given to Zonolite stockholders thereby making them shareholders of Grace. The agreement required Zonolite be dissolved as soon as possible. Zonolite was allowed to continue daily operations pending conclusion of the reorganization but was severely restricted in the decisions it could make without express permission of Grace. Grace assumed the obligations of Zonolite necessary to continue the ordinary business of Zonolite. While the agreement was delineated as a reorganization through a purchase of assets it contained all the elements of a de facto merger. See, Ackerman v. Globe-Democrat Publishing Company, 368 S.W.2d 469 (Mo.1963) [4,5]. W.R. Grace has successor liability for the liabilities of Zonolite. See, id.; Ernst v. Ford Motor Company, 813 S.W.2d 910 (Mo.App.1991) [8,9].

[3] Defendant contends that it was entitled to a judgment notwithstanding the verdict because plaintiff failed to meet the causation requirements of Hagen v. Celotex Corporation, 816 S.W.2d 667 (Mo. banc 1991) [7]. The test set forth in Hagen is that there be evidence that the product of the defendant was a substantial factor in causing the harm. Id. The causal relationship must be established by expert testimony. Id. In Hagen the expert witness was only able to testify that asbestos caused the mesothelioma and the defendant's product might have supplied the fatal exposure. Hagen's exposure to asbestos was to the products of nine different manufacturers with his greatest exposure to a non-defendant's product. Exposures to the other products were not quantified. The evidence here is different. Zonolite was identified as the product from which plaintiff received a heavy dosage on at least two occasions and lesser doses on many other occasions. Plaintiff's evidence, if believed, indicated that his exposure to other asbestos products was limited, not in heavy doses, frequently not under circumstances where respiration of dust would occur, and the great bulk of exposure was to asbestos which does not produce mesothelioma.

Plaintiff utilized as his expert medical witness a pathologist. The following testimony was given by that witness:

"Q. (at end of hypothetical) Doctor, based on those assumed facts, that hypothetical, do you have an opinion based upon a reasonable degree of medical certainty as to whether Mr. Harashe's exposure to the W.R. Grace Zonolite product was a substantial contributing factor to his mesothelioma?
A. Yes, do I. (sic)
Q. What is that opinion, Doctor?
*510 A. My opinion is that that exposure did contribute causally to the development of the tumor.
Q. Would you explain to the jury the basis of that, sir?
A. In my opinion, the exposure that he received was of sufficient magnitude, and was—or had occurred long enough ago to allow for the development of that tumor. Within that particular product there is, as was mentioned, the type of asbestos called tremolite, which is a recognized cause of mesothelioma.
Q. Doctor, I believe in reviewing this case you were aware that Mr. Harashe had other exposures of unidentified kinds of asbestos. Is that correct, sir?
A. I don't know how well they were identified. I knew he had been exposed to asbestos from other sources.
Q. Now, Doctor, with that in mind, the fact that he'd been exposed to asbestos on other times, does that in any way affect your opinion that this exposure, as I have just discussed with you, is a significant contributing cause, a substantial factor to his disease?
A. It doesn't change my opinion."

[4] The doctor's testimony was that the exposure to Zonolite contributed causally to the development of the tumor. Defendant's liability may be based upon its product having caused or having contributed to cause the tumor. Hagen, supra. The doctor testified that the exposure contributed to cause the tumor. As such it was a substantial factor and a contributing cause for plaintiff's terminal illness. The evidence was sufficient to establish causation under Hagen. See also, Tragarz v. Keene Corporation, 980 F.2d 411 (7th Cir.1992).

[5] Defendant also contends the hypothetical question

848 S.W.2d 506
(Cite as: 848 S.W.2d 506, *510)

Page 5

to the pathologist was fatally flawed because it contained a much too early date for the third application of Zonolite by the plaintiff. No objection to the question on that ground was made. We only consider those omissions or misstatements in hypothetical questions to which specific objection has been made specifying what is missing or improperly included. Nagel v. Bi-State Development Agency, 567 S.W.2d 644 (Mo. banc 1978) [1,2]. Defendant contends that it did not need to make a specific objection because at that time plaintiff had not testified and defendant did not know the content of his testimony. That is not accurate. Plaintiff had been deposed on three different occasions and defendant's attorney, in opening statement, properly identified the time frame for the third application. It appears that the plaintiff's attorney misspoke in framing the hypothetical and defendant's counsel was aware of the correct date and the misstatement. It is exactly this type of error in hypothetical questions that the requirement for timely objection is designed to correct. Further, both the erroneous date and the correct date were within the latency period of the expert answering the hypothetical, so we must assume that a change in that date would not have altered his opinion.

[6] We find no merit to defendant's challenge to plaintiff's verdict directing instructions. The objections now raised to the instructions were not raised at the instruction conference or in the motion for new trial. They are not therefore preserved. Further, plaintiff utilized an option authorized by MAI 19.01 which is permissible. It is not necessary or even permissible to use language such as "substantial causes" or "substantial contributing factor" in the jury instructions as urged by defendant. That language is used only to provide a standard for the trial court in determining if a submissible case has been made and not to instruct the jury which might be confused by such language. Hagen, supra, at [5,6].

[7][8] Defendant premises error on the trial court allowing documentary evidence of reports concerning defendant's Libby, Montana, mine where the vermiculite utilized was mined. That evidence involved reports and internal memoranda concerning potential danger from asbestos contaminants at that mine. Plaintiff offered the evidence to support its negligence count by showing knowledge by the defendant of the danger. A trial court has substantial *511 discretion in the admission of evidence, and will not be overturned absent an abuse of discretion. Oldaker v. Peters, 817 S.W.2d 245 (Mo. banc 1991) [3-5]. The Libby documents were relevant as to notice. The trial court gave a limiting instruction to the jury. Defendant complains that the documents were generated after the first two exposures of the plaintiff to Zonolite. That is true but they were generated before the third exposure and at times that plaintiff was still making contact with the Zonolite in his attic. Further, the defendant did not raise the time issue in its objections to the documents. This is not inconsequential because as to certain later documents where the objection concerning time was raised the trial court sustained the objections on that ground. We find no abuse of the trial court's discretion.

[9] Defendant, as its final point, premises error on certain statements during plaintiff's closing argument. That has not been preserved. No objections were made to some of the argument at the time the argument occurred so the court was not given the opportunity to prevent the argument or cure any damage. As to other portions of the argument general objections were made which were sustained. Defendant therefore received all the relief which it sought at the time the comment was made. Where the action of the court is responsive to an objection made by counsel the court is not to be convicted of error for failure to take other and further curative steps not then sought by the party. Beck v. Modern American Life Insurance Co., 589 S.W.2d 98 (Mo.App.1979) [16]. Defendant's request for mistrial after the argument on a general ground different than that now asserted does not preserve the point for appeal.

Judgment affirmed.

GARY M. GAERTNER, P.J., and KAROHL, C.J., concur.

END OF DOCUMENT

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works