


Friday
October 30, 1987

# Part III

## Environmental Protection Agency

40 CFR Part 763
Asbestos-Containing Materials in Schools;
Final Rule and Notice



## ENVIRONMENTAL PROTECTION AGENCY

**40 CFR Part 763**

[OPTS-62048E; FRL-3269-8]

**Asbestos-Containing Materials in Schools**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** EPA is issuing a final rule under section 203 of Title II of the Toxic Substances Control Act (TSCA), 15 U.S.C. 2643, to require all local education agencies (LEAs) to identify asbestos-containing materials (ACM) in their school buildings and take appropriate actions to control release of asbestos fibers. The LEAs are required to describe their activities in management plans, which must be made available to all concerned persons and submitted to State Governors. This final rule requires LEAs to use specially-trained persons to conduct inspections for asbestos, develop the management plans, and design or conduct major actions to control asbestos. Exclusions are provided for LEAs which have previously conducted inspections and for LEAs subject to any state requirement at least as stringent as the comparable requirement in this final rule.

**DATES:** In accordance with 40 CFR 23.5, this rule shall be promulgated for purposes of judicial review at 1 p.m. Eastern Standard Time on November 13, 1987. This rule shall be effective on December 14, 1987. The incorporation by reference in the rule is approved by the Director of the Federal Register as of December 14, 1987.

**FOR FURTHER INFORMATION CONTACT:** Edward A. Klein, Director, TSCA Assistance Office (TS-799), Office of Toxic Substances, Environmental Protection Agency, Rm. E-543, 401 M St., SW., Washington, DC 20460, Telephone: (202-554-1404).

**SUPPLEMENTARY INFORMATION:**

**I. Background**

*A. Description of the Enabling Legislation*

On October 22, 1986, President Reagan signed into law the Asbestos Hazard Emergency Response Act (AHERA) which enacted, among other provisions, Title II of the Toxic Substances Control Act (TSCA) 15 U.S.C. sections 2641 through 2654. Section 203 of Title II, 15 U.S.C. 2643, requires EPA to propose rules by April 20, 1987 (180 days after enactment), and to promulgate final rules by October 17, 1987 (360 days after enactment), regarding: (1) The inspection of all public and private school buildings for ACM; (2) the identification of circumstances requiring response actions; (3) description of the appropriate response actions; (4) the implementation of response actions; (5) the establishment of a reinspection and periodic surveillance program for ACM; (6) the establishment of an operations and maintenance program for friable ACM; (7) the preparation and implementation of asbestos management plans by LEAs and the submission of the management plans to State Governors, who may review the plans and approve or disapprove them; and (8) the transportation and disposal of waste ACM from schools. This final rule implements the Title II requirements to issue the section 203 rules (except for transportation and disposal, as discussed further below).

Section 206 of TSCA Title II, 15 U.S.C. 2646, also requires EPA to issue by April 20, 1987, a final model accreditation plan for persons who inspect for asbestos, develop management plans, and design or conduct response actions. States are required to adopt an accreditation program at least as stringent as the EPA model within 180 days after the beginning of their next legislative session. Accreditation of laboratories which analyze asbestos bulk samples and asbestos air samples is also required by TSCA Title II. The National Bureau of Standards (NBS), U.S. Department of Commerce, is required to establish the bulk sampling accreditation program by October 17, 1987, and the air sampling accreditation program by October 12, 1988.

States were required to notify LEAs by October 17, 1987, regarding where to submit management plans. LEAs must submit those plans to their State no later than October 12, 1988. The plans must include the results of school building inspections and a description of all response actions planned, completed, or in progress. After receiving a management plan, States are allowed 90 days to disapprove the plan. If the plan is disapproved, the State must provide a written explanation of the disapproval and the LEA must revise the plan within 30 days to conform with the State's suggested changes. The 30-day period can be extended to 90 days by the State. LEAs are required to begin implementation of their management plans by July 9, 1989, and to complete implementation in a timely fashion.

Transport and disposal rules under TSCA section 203(h) have not yet been proposed. In accordance with TSCA section 204(f), therefore, LEAs shall provide for transportation and disposal of asbestos in accordance with the most recent version of EPA's "Asbestos Waste Management Guidance." Applicable provisions of that document are included as Appendix D of this rule. Regulations governing transport of asbestos-containing waste, including school waste already regulated by the National Emission Standard for Hazardous Air Pollutants (NESHAP) (40 CFR Part 61, Subpart M) under the Clean Air Act (42 U.S.C. section 7401, et seq.), were promulgated by the Department of Transportation (DOT) (49 CFR Part. 173 Subpart J). The NESHAP and DOT rules must be followed, according to the "Asbestos Waste Management Guidance." These rules will be sufficient to ensure the proper loading and unloading of vehicles and to ensure the physical integrity of containers.

Section 203(1) requires Department of Defense schools to carry out asbestos identification, inspection and management activities in a manner comparable to the manner in which an LEA is required to carry out such activities. EPA interprets the language of this section which states that such activities shall be carried out "to the extent feasible and consistent with the national security" as recognition that existing agreements with foreign governments may make it difficult to carry out certain provisions of this regulation.

Since this rule has been signed by the EPA Administrator by October 17, 1987, the rule has been promulgated within the statutory time frame required by section 203 of TSCA Title II. In accordance with 40 CFR 23.5, however, solely for purposes of judicial review deadlines under section 19 of TSCA Title I, the rule is considered to be promulgated at 1 p.m. eastern time, 14 days after publication in the Federal Register. Thus, the period in which petitions for review of this rule may be filed under section 19 commences 14 days after publication.

*B. Previous EPA Asbestos Activities*

EPA has undertaken a variety of technical assistance and regulatory activities designed to control ACMs in buildings and minimize inhalation of asbestos fibers.

1. *Technical Assistance Program.* Since 1979, EPA staff have assisted schools and other building owners in identifying and controlling ACM in their buildings. Through a cooperative agreement with the American Association of Retired Persons (AARP), EPA has hired architects, engineers, and

algorithms and "decision tree" methods for consideration. Other commenters supported the proposed rule's language to allow various assessment methods. The Agency believes it is not possible to point to one assessment method as most capable of producing an appropriate response action recommendation: there are a number of suitable assessment methods available for use by accredited management planners. EPA's management planner accreditation course will provide instruction about a variety of such methods.

### G. Response Actions

1. *Protection of human health and the environment in response action selection.* Several commenters, particularly several State attorneys general and unions, expressed concern that the structure of the response action subsection allowed costs and other considerations to be granted equal consideration with protecting human health and the environment.

EPA has clarified language in the response action subsection (§ 763.90) to underscore its original intent in the proposed rule that protecting human health and the environment is the prime consideration in selecting an appropriate response action. Comments from the Service Employees International Union were particularly useful in this regard.

The Agency believes its response action approach is consistent with congressional direction to apply the prior and inviolable standard of protecting human health and the environment, and allows the consideration and selection of the least burdensome method only after the overriding health determination is made.

2. *Air monitoring for determining response actions.* Several commenters, primarily from industry, encouraged the establishment of air monitoring standards as the primary basis for hazard assessment. Most commenters, however, supported EPA's position in the proposed rule.

Traditionally, EPA has recommended assessment of asbestos in schools by visual evaluation of qualitative factors such as the material's condition, physical characteristics, and location. A careful examination of physical characteristics of the material, conducted by a trained expert, provides a direct method for determining both the relative degree of hazard and the likelihood of future fiber release.

EPA continues to discourage the use of air monitoring as the primary technique for assessing asbestos hazards, since that method only measures current conditions and provides no information about potential and future levels of fiber release. Further, when the costs and technical requirements necessary for acquiring truly meaningful air monitoring data are considered, the Agency maintains that assessment of qualitative factors continues to be the appropriate method for assessment of hazards and selection of response actions which protect human health and the environment. However, air monitoring may provide useful supplemental information, when conducted in conjunction with a comprehensive visual inspection.

Several industry commenters proposed that EPA adopt air monitoring standards for damaged and significantly damaged ACM. The levels most often proposed were 0.01 fibers per cubic centimeter ($f/cm^3$) for damaged friable ACM; 0.1 $f/cm^3$ for significantly damaged friable ACM, with fibers longer than 5 um as measured by transmission electron microscopy (TEM) in each case. No commenters, however, provided any substantive rationale for choosing such levels. The Agency believes that such standards used for purposes of assessing asbestos hazards could not ensure protection of human health and the environment as intended by TSCA Title II. As factors to be used in determining whether response actions are necessary, these numerical values provide a false sense of precision regarding the presence and severity of asbestos hazards and the appropriateness of a given response action. For the same reasons cited in the above discussion of the use of air monitoring, the Agency disagrees with the suggestion that a numerical standard is appropriate as the primary criterion for selection of response actions.

3. *Specificity in definitions related to response actions.* Many commenters felt that more objective and definite response action descriptions should be provided by EPA with regard to damage-related definitions and response actions. Some believed that too much discretion was vested in accredited experts, who would be making technical judgments to advise LEA decisions. One comment cited EPA's economic impact analysis of the rule as an illustration of the lack of objectivity of the response action descriptions. In this analysis, EPA's own regional asbestos coordinators varied greatly in their estimates of what percentages of materials in schools in their regions fell into the various damage conditions described in TSCA Title II.

In response to comments, the Agency has added much more illustrative detail to three important definitions—damaged and significantly damaged friable thermal system insulation ACM; damaged friable miscellaneous ACM; and damaged friable surfacing ACM—which will help accredited experts better identify asbestos hazards in schools. EPA agrees that this language, taken from the preamble of the proposed rule, adds necessary clarification to conditions which may constitute ACM damage and warrant appropriate response actions. These descriptions were not available to Agency regional asbestos coordinators when they gave their estimates of damage in schools. In addition, the extensive training program developed in the rule should achieve much greater consistency in evaluating and assessing asbestos in schools, although perfect consistency will never be achieved.

However, a rigid response action decision structure is not appropriate for this rule, primarily because many asbestos hazard situations are too circumstantial and appropriate response actions are too "hazard specific" to fit neatly into a discrete set of prescriptive categories.

There appears, then, no substitute for the judgment of the accredited management planner, who must recommend appropriate response actions within the general requirements established in § 763.90. That section provides a process by which a range of available choices may be considered by the accredited expert and selected by the LEA to best protect human health and the environment from each particular asbestos hazard in the school.

Under the provisions of the regulation, LEAs may take into account a variety of particular considerations, such as local circumstances, technological feasibility of appropriate response actions, economic considerations, and other relevant factors in selecting the least burdensome method. Such factors, however, may be considered only after the response action has been determined to protect human health and the environment.

Finally, accreditation alone does not imply "expertness." It only assures a suitable and common level of competence and awareness which is necessary for inspection, assessment and response action recommendation. School officials are well-advised to consider a variety of factors, including quality of training, experience, and prior performance of accredited personnel in selecting inspectors, management plan developers, abatement project designers, and contractors for school asbestos projects.

4. *Removal as the "only" appropriate response action for significantly*