**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**INTERIM FEE APPLICATION OF PRICEWATERHOUSECOOPERS LLP**
**FOR THE EIGHTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Fee Application of PricewaterhouseCoopers LLP for the Eighth Interim Period (the "Application").

**BACKGROUND**

1. PricewaterhouseCoopers LLP ("PwC") was retained as independent accountants and auditors for the Debtors and Debtors in Possession. In the Application, PwC seeks approval of fees totaling $445,994.70[1] and costs totaling $9,437.10 for its services from January 1, 2003, through March 31, 2003.[2]

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2

---

[1] The fee total of the monthly invoices (January - $343,731.17; February - $53,135.96; March - $47,690.15) is only $444,557.28, leaving a difference of $1,437.42 from the fee total requested in the Application. There is no indication that this discrepancy has been addressed in the Application.

[2] As stated in Exhibit B of the Application, the fee request of $445,994.70 represents 45% of PwC's standard rate.

**FEE AUDITOR'S FINAL REPORT** - Page 1
wrg FR PwC 8int 1-3.03.wpd

of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on PwC an initial report based on our review, and received a response from PwC, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.    In our initial report, we noted that Stickley, Govic, Cleaver, Natt, Frick, Yeager and Ryan showed multiple occurrences in which they billed in quarters of an hour. Bromark, Devito and Jimenez billed time in whole or half-hour increments. Paragraph II.D.5. of the Guidelines states, "[t]ime entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour..." We asked PwC to advise these timekeepers to log their entries in tenths of an hour. PwC responded as follows:

> We have advised all timekeepers to enter their time in tenth of an hour increments in the future, however, due to the nature of our audit testing, it is not uncommon for PwC representatives to work on a given task for several consecutive hours in a given day. As such, while it may appear that the tenths of an hour requirement is not being met by our applications, we would submit to you that we generally are in compliance with this rule.

We appreciate the response.

4.    In our initial report, we noted that Driscoll consistently lumped her time entries. Paragraph II.D.5. of the Guidelines states, " .... Services should be noted in detail and not combined

or "lumped" together, with each service showing a separate time entry; ..." We asked PwC to advise this timekeeper to avoid lumping time entries in the future. PwC's response is provided below.

> We have advised Driscoll to avoid lumping time entries in the future.

We appreciate the response.

5.  We further noted that Driscoll, Jimenez and Burke consistently failed to provide adequate detail in their time entries. Rule 2016-2(d) <u>Information Requirements Relating to Compensation Requests</u> states that, "Such motion shall include activity descriptions which shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary ...:" We asked PwC to advise these timekeepers to provide sufficient detail in their time entries. PwC responded as follows:

> We have advised these timekeepers of the need to provide sufficient detail in their time entries in the future.

We appreciate the response.

6.  We noted that mileage expense entries failed to provide destination information and purpose of travel. We asked that PwC advise all professionals to note destination and purpose for all mileage-related entries. PwC replied as follows:

> We have revised the travel documentation policies for future applications, and have responded to your specific inquiries below. Nearly all of the mileage-related entries are for mileage incurred on an individuals commute from his home to the client site which is in excess of the individuals normal commute to his assigned PwC office. We will supply additional descriptions in future filings.

We appreciate the response and the adjustment in travel policy documentation.

7.  In our initial report, we noted that Nina Govic's hourly billable rate increased from $273.00 to $282.00. Paragraph II.A.3.of the Guidelines states, ". . .[t]he following information

should be provided in every fee application: . . .[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, explanation of any changes in hourly rates from those previously charged, . . ." We asked PwC to note that any change in billing rates should be explained in the Application. PwC responded as follows:

> Noted. We have revised our process and information regarding rate adjustments will be included in future filings. The change in Ms. Govic's billing rate related to a correction of an erroneous billing rate. Ms. Govic was mistakenly billing at a rate lower than her assigned bill rate, based on her level and years of experience with the firm. The error was remedied on a going forward basis and did not effect our previous filings.

We appreciate the response and the process revision.

Specific Time and Expense Entries

8. As referenced in Footnote 1, Page 1 of this report, we noted that there is an unexplained discrepancy of $1,437.42 between the fee total reported in the monthly invoices and the fee total requested in the Application. We asked PwC to explain this variance. PwC's response is provided below.

> We have reviewed the discrepancy noted between the fee total reported in the monthly invoices and the fee requested in our Applications. Based on the review, we agree that the fee should be reduced by $1,437.42 to agree to the detailed invoices.

We appreciate the response, and thus we recommend a reduction of $1,437.42 in fees.

9. In our initial report, we noted that on January 2 and January 22, 2003, Govic ($273) and Stickley ($213) show entries totaling 1.5 hours for $349.50 for time that seemingly should have been billed at 50% the normal rate. The additional cost to the estate, in consideration of PWC's fixed fee arrangement to bill 45% of the fees incurred, is $78.63 ($349.50 ÷ 2 x 0.45). The time entries are provided below.

FEE AUDITOR'S FINAL REPORT - Page 4
wrg FR PwC 8int 1-3.03.wpd

| | | | | |
|---|---|---|---|---|
| 1/2/03 | Nina Govic | 0.5 | $136.50 | Travel Time to WR Grace from Another Location. |
| 1/22/03 | Aimee Stockley | 1.0 | $213.00 | Organize/pickup dinner for the engagement team. |

Rule 2016-2(d)(viii) states, "[t]ravel time during which no work is performed shall be separately described and may be billed at no more than 50% of regular hourly rates." We asked PwC to explain why these entries should be considered at full hourly rates. PwC's response is provided below.

> As noted in our application and our first response to the Inquiry, all of our rates are billed at 45% of standard hourly rates. Travel time during business hours is also billed at 45% of standard hourly rates.

Consistent with our previous report regarding this issue, we have no objection to these fees.

10. We further noted that during the Application Period, Anderson ($235), Govic ($273), Yeager ($185), Stickley ($213), Zartman ($213) and Lippolis ($320) engaged in tasks seemingly more suitable for a lower-billing professional. The time spent was 16.05 hours for $3,585.55, resulting in additional costs to the estate of $1,613.49 in fees ($3,585.55 x 0.45). See Exhibit A. Paragraph I.E. of the Guidelines states, ". . . [i]n evaluating fees for professional services, it is relevant to consider various factors including the following: the time spent; the rates charged; ...." We asked PwC to review Exhibit A and explain why it was appropriate for these professionals to perform these tasks. PwC's explanation is provided below and further supported in Response Exhibit 1.

> We believe that this noted time incurred was necessary in order to conduct the 2002 audit of W. R. Grace & Co. for our professional staff. A number of these individuals, notably Yeager, Stickley and Zartman, are among the lowest billing professionals on the engagement team. As much work as possible has been pushed down to the lowest level employee available. On occasion, based on the

nature of our work, certain tasks, seemingly administrative, need to be performed by members of the W. R. Grace & Co. engagement team, for example, proofing changes to SEC filings to ensure agreement with our audit working papers. In future filings we will strive to provide better detail of such tasks and their relevance to the client engagement.

We appreciate the explanation and have no objection to these fees.

11. In our initial report, we noted that various firm members engaged in tasks that may not be compensable. The total time spent was 10.9 hours for $1,907.10 or $858.19 ($1,907.10 x 0.45) in fees requested. See Exhibit B. Paragraph II. E.7. of the Guidelines states, "[f]actors relevant to a determination that the expense is proper include the following: . . . Whether the expenses appear to be in the nature of nonreimbursable overhead . . . Overhead includes word processing, proofreading, secretarial and other clerical services, . . . ." We asked PwC to review Exhibit B and explain why these entries should be compensable. PwC responded as follows:

> While we believe that this time incurred was necessary in order to conduct the 2002 audit of W. R. Grace & Co. in accordance with professional standards, we are not able to improve the descriptions of the previously submitted time incurred. You will note that the time was billed at standard hourly rates and was incurred by professionals with the lowest billing rates.

In reviewing our Exhibit B and PwC's response, we suggest that those tasks labeled "copying", "printing", "boxing up", "cleaning up" and "shipping" should not be compensable, but that those tasks related to file organization may be compensable. We therefore recommend a reduction of $277.02 ($615.60 x 0.45) in these fees.

12. We further noted that between January 13 and January 22, 2003, there were three instances in which two or more firm members participated in the same meeting or teleconference. Total time spent was 40.4 hours for $19,916.70. See Exhibit C. Paragraph II.D.5. of the

Guidelines states, ". . .[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." We asked PwC to review Exhibit C and explain why it was necessary for more than one professional to participate in these meetings or teleconference. PwC's response is provided below, with additional explanation in Response Exhibit 2.

> Refer to our responses contained in the revised Exhibit C (Response Exhibit 2 in this report). For a number of important audit meetings with financial management, it is customary for more than one PwC representative to attend. We have limited the number of our attendees in as many situations as possible and remain cognizant that we are required to keep the number of duplicate participants at a minimum.

We appreciate the response and have no objection to these fees.

13.    In our initial report, we noted that on January 10 and January 15, 2003, Frick and Yeager show expense entries for items which may fall into the category of nonreimbursable overhead expenses. The total spent was $268.68. The expense entries are listed below.

| Date | Name | Amount | Description |
|---|---|---|---|
| 1/10/03 | Cheryl Frick | $119.68 | Printing cartridges needed immediately for the WR Grace Engagement |
| 1/15/03 | Maureen Yeager | $149.00 | Subscription to Chemical Week for 1 year. |

Paragraph II.E.7. of the Guidelines states, "[f]actors relevant to a determination that the expense is proper include the following: . . Whether the expenses appear to be in the nature of nonreimbursable overhead . . . Overhead includes . . . office equipment and furnishings, ...and library and publications charges." We asked PwC to review the cited entries and explain why these expenses should be considered reimbursable. PwC responded as follows:

> We agree with the courts that the following expenses were not reimbursable and

**FEE AUDITOR'S FINAL REPORT** - Page 7
wrg FR PwC 8int 1-3.03.wpd

should be removed from our fee calculation:

| | | | |
|---|---|---|---|
| 1/10/03 | Cheryl Frick | $119.68 | Printing cartridges needed immediately for the WR Grace Engagement |

We note that the Chemical Week Magazine charge is specific to the audit at Grace and that Grace management feels that it is befitting of us to receive such a subscription at our Grace mailing address.

We accept the explanation and the voluntary reduction. Thus, we recommend a reduction of $119.68 in expenses.

14. We further noted a meal expense entry of $55.88 for Farmer on January 21, 2003, that may be excessive. The entry is provided below.

| | | | |
|---|---|---|---|
| 1/21/03 | W. Larry Farmer | $55.88 | Dinner at hotel in Cambridge, MA - while traveling for review of Grace Performance Chemicals audit. |

Paragraph II.E.1. of the Guidelines states, ". . .[f]actors relevant to a determination that the expense is proper include the following: 1. Whether the expense is reasonable and economical. For example, first class and other luxurious travel mode or accommodations will normally be objectionable." We suggest a reasonable expense ceiling of $35.00 per person for dinner. We asked PwC to explain why this expense should not be viewed as excessive. PwC responded as follows:

We do not disagree that such amount should be reduced to $35.00.

We accept the response and thus recommend a reduction of $20.88 in expenses.

**FEE AUDITOR'S FINAL REPORT** - Page 8
wrg FR PwC 8int 1-3.03.wpd

## CONCLUSION

15. Thus, we recommend approval of fees totaling $444,280.26 ($445,994.70 minus $1,714.44) and costs totaling $9,296.54 ($9,437.10 minus $140.56) for PwC's services from January 1, 2003 through March 31, 2003.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
    Warren H. Smith
    Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 4080
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 10th day of July, 2003.

_____
Warren H. Smith

## SERVICE LIST
Notice Parties

**The Applicant**

W. Larry Farmer
PricewaterhouseCoopers LLP
1751 Pinnacle Drive
McLean, VA 22102-3811

**Counsel for the Applicant**

OF COUNSEL
John C. Goodchild, III
Christine M. Lipski
MORGAN LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103

Kathleen M. Miller
SMITH, KATZENSTEIN & FURLOW LLP
The Corporate Plaza
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Response Exhibit 1

| Date | Name | Description | | Amount |
|---|---|---|---|---|
| 37626 | Nina Govic 2.00 | Arranging workspace for the audit and answering Grace emails. **PwC receives a number of email inquiries from individuals at Grace, especially prior to commencing year-end audit procedures and prior to the closing of Grace's accounting reecords. Ms. Govic was addressing such emails and applying her expertise.** | 273 | $546.00 |
| 1/7/03 | Nina Govic 1.00 | Answering Grace emails and organization of Grace audit files. **PwC receives a number of email inquiries from individuals at Grace relating to the audit function. Ms. Govic was addressing such emails and applying her expertise.** | 273 | $273.00 |
| 1/8/03 | Nina Govic 0.30 | Repair of computers/ Grace printers | 273 | $81.90 |
| 1/8/03 | Aimee Stickley 0.75 | Time spent with GTS to have printers fixed. **Ms. Stickley was the lowest billing professional available on this date to bring our computers and printers, necessary for completing the audit for repair. Note that PwC bills at 45% of it regular hourly rates.** | 213 | $159.75 |
| 1/24/03 | Jonelle Lippolis 0.70 | Organization of audit work, clean up audit room and return of all the client documents. **Ms. Lippolis was completing standard end of audit procedures. As the field team leader in Cambridge, MA, she had intimate knowledge of the documents required to be returned to the client and the audit workpapers needed to be maintained by PwC** | 320 | $224.00 |

Response Exhibit 2

| 1. Grace Concurring Partner Review Meeting | | | | | |
|---|---|---|---|---|---|
| 15.6 hours and $8,399.  Meeting with Grace on 1/13/03.  (Farmer, Ryan, and Natt). | | | | | |
| 1/13/03 | Larry Farmer | 4.6 | Concurring partner review with Ray Bromark scheduled.  Meetings with Bob Tarola, CFO, David Ryan, and Jason Natt to discuss auditing and reporting issues and risks related to WR Grace audit.  Ray Bromark and Larry Farmer met with Bob Tarola for .8 hours of this 4.6 hour time frame | 682 | $ 3,137.20 |
| 1/13/03 | David Ryan | 4.6 | Concurring partner review with Ray Bromark scheduled;  Meetings to discuss auditing and reporting issues and risks related to WR Grace audit for 2002 | 522 | $ 2,401.20 |
| 1/13/03 | Jason Natt | 6.4 | Concurring partner review with Ray Bromark scheduled;  Meetings to discuss auditing and reporting issues and risks related to WR Grace audit;  Also discussion of open items and reporting time table;  Meeting with Bob Tarola, Tim Delbrugge, Larry Farmer and Dave Ryan. | 447 | $ 2,860.80 |
| **PwC Response:**  It is customary for more than one PwC representative be present during the final concurring partner review (which is required by our auditing and industry standards).  Each individual attending the meeting serves PwC in a different role, Ray Bromark is the concurring review partner, Larry Farmer is the engagement partner, David Ryan is the audit senior manager and Jason Natt is the audit manager.  During this formal meeting, Grace top level financial management discusses with the lead members of the PwC audit team the audit findings, the results of audit testing and any preliminary financial reporting/SEC filing issues.  The parties in attendance from Grace have significant influence on the financial reporting process. | | | | | |