IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Response Deadline: July 18, 2003**
**Hearing Date: July 28, 2003 at noon**

## DEBTORS' OBJECTION TO YESSENIA RODRIGUEZ'S AND CARLOS NIEVES' MOTION TO LIFT AUTOMATIC STAY (DOCKET NO. 3707)

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by their undersigned counsel, respectfully submit this objection to the Motion to Lift Automatic Stay filed by Yessenia Rodriguez and Carlos Nieves (the "Motion") and request the Motion be denied. In support of this Objection, the Debtors respectfully represent as follows:

### Introduction

1.     The Debtors oppose this effort by Yessenia Rodriquez and Carlos Nieves ("Plaintiffs") to subsidize their potential recovery at the expense of other unsecured creditors.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

2.    The Plaintiffs seek relief from the automatic stay to pursue their claims against the Debtors for alleged personal injuries suffered when Rodriguez allegedly slipped and fell on property owned by the Debtors.  (Rodriguez and Nieves v. Ambrosia Chocolate Co., et al., Case No. L-5410-01 (Sup. Ct. Essex City., New Jersey) (the "Rodriguez Action")). Notwithstanding the existence of insurance covering the Debtors' potential liability in the Rodriguez Action, allowing the Rodriguez Action to proceed against the Debtors' insurance policy (the "Policy") at this time could have a detrimental impact on the Debtors' estates and could result in an inequitable distribution of the Debtors' assets.

3.    The Debtors are not yet in a position to determine whether the total amount of allowed claims asserted by unsecured creditors against the Policy will exceed the available coverage under the Policy.  If the allowed claims ultimately exceed the coverage available under the Policy, allowing the Rodriguez Action to proceed will produce an inequitable result contrary to the purpose of Chapter 11.  The last recovering claimants would not receive the full amount of their allowed claims from the Policy and would be left with no more than an unsecured claim against the Debtors' estates to receive their pro rata distribution under a plan of reorganization.  Thus, the Plaintiffs could receive a more favorable recovery than similarly situated unsecured creditors simply because they won the "race to the courthouse" and filed their Motion before other creditors.

4.    In order to assure the equitable distribution of the proceeds of the Policy, the Debtors need additional time to review the filed proofs of claim.  If the Debtors' review of the filed claims results in a determination that the total amount of claims potentially covered by the Policy would not exceed the amount of coverage under the Policy, then it may be appropriate for the Rodriguez Action to proceed.  However, if the proceeds of the Policy appear insufficient

-2-

to cover the total amount of the claims asserted against the Policy, the Debtors must have the opportunity to develop an approach designed to equitably distribute the Policy proceeds among the creditors entitled to recovery under the Policy. Allowing the Rodriguez Action to proceed at this time may prevent the Debtors from equitably distributing the Policy proceeds which is contrary to the very purpose of the chapter 11.

## **Background**

5.      The Policy is subject to an aggregate policy limit of $20,000,000 (the "Policy Limit"). The Policy Limit applies to all covered claims for the one year period from July 1999 to June 2000. The Policy's coverage is not subject to a deductible.

6.      In June of 2001, the Plaintiffs filed the Rodriguez Action against the defendants, including the Debtors, for negligence asserting personal injury to Rodriguez and loss of consortium for Nieves. Both Plaintiffs filed claims in the Debtors' chapter 11 cases—Rodriguez filed a claim for $50,000 and Nieves filed a claim in an unliquidated amount.

7.      Pursuant to this Court's order, the bar date for filing non-asbestos, asbestos property damage and medical monitoring claims was set for March 31, 2003. In response to the bar date, over 15,000 claims have been filed. The Debtors are currently reviewing this substantial number of filed claims and have not yet been able to identify the total number of claims which may be covered by the Policy. Until the Debtors have had an opportunity to review and categorize all of the filed claims, the Debtors cannot be sure whether the Policy Limit will be sufficient to cover all claims potentially made under the Policy.

DOCS_DE:74907.1

8.     As set forth herein, the harm the Debtors will incur if the Rodriguez Action is allowed to proceed (despite the existence of insurance) necessitates that the Plaintiffs' motion to modify the automatic stay be denied.

## Argument

### The Moving Parties Have Failed To Show Sufficient Cause To Lift The Stay

9.     The automatic stay is one of the most fundamental protections provided to a debtor under the Bankruptcy Code.  See Midatlantic Nat. Bank v. New Jersey Dept. of Environmental Protection, 474 U.S. 494, 503 (1986).  In particular, courts have recognized that in mass tort cases, there is a critical need to stay all collateral litigation in order to allow the Debtors an opportunity to develop comprehensive litigation and reorganization plans.

> The purpose of this section [362] by its various subsections is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor.

A.H. Robins Co., Inc. v. Piccinin (*In re A.H. Robins & Co., Inc.*), 788 F.2d 994, 998 (4th Cir. 1986).  Indeed, "the automatic stay is designed to preclude the rush to the courthouse".  See In re Flores, 291 B.R. 44 (Bankr. S.D.N.Y. 2003) (citing numerous cases regarding the purpose of the automatic stay to prevent the "race to the courthouse").

10.     Pursuant to section 362(d) of the Bankruptcy Code, a movant must demonstrate sufficient cause to justify the lifting or modification of the automatic stay.  Although the Bankruptcy Code does not define what constitutes cause, "courts generally consider the policies underlying the automatic stay [and] . . . the competing interests of the debtor and the

movant." In re Continental Airlines, Inc., 152 B.R. 420, 424 (D. Del. 1993).  In particular, Delaware courts consider the following three factors in balancing the competing interests of the parties:

(a) the prejudice that would be suffered by the debtors should the stay be lifted;

(b) the balance of the hardships facing the parties if the stay is lifted; and

(c) the probable success on the merits if the stay is lifted.

Continental, 152 B.R. at 424.  Sufficient cause to warrant the lifting of the automatic stay does not exist in this case.

## A.    Substantial Prejudice Would Be Incurred By The Debtor If The Stay Were Lifted

11.    The most important factor in determining whether to grant relief from the automatic stay to allow litigation to proceed against a debtor in another forum is the effect of such litigation on the administration of the estate.  See In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984); In re Penn-Dixie Industries, Inc., 6 B.R. 832, 836 (Bankr. S.D. N.Y. 1980).  If the automatic stay is lifted to allow the litigation of the Rodriguez Action at this time, the Debtors' ability to administer their estates and these chapter 11 cases would be adversely impacted.

12.    If the automatic stay is lifted with respect to the Rodriguez Action, it may open the floodgates of other unsecured creditors seeking to emulate the Plaintiffs' successful rush to the courthouse.  Because of the threat that the Policy Limit will not be sufficient to cover all applicable claims, creditors content to rely on the claim resolution process advocated by the Bankruptcy Code would be penalized if the Court approved the Motion.  Therefore, the Debtors could be forced to defend against hundreds of lawsuits in various jurisdictions—the exact situation the Debtors faced prior to filing for bankruptcy protection.  The Debtors should be given the breathing room provided for by the automatic stay to allow them to develop a

DOCS_DE:74907.1

comprehensive plan for dealing with the morass of asbestos, product liability, and other collateral litigation. See In re A.H. Robins Co., Inc., 63 B.R. 986 (Bankr. E.D. Va. 1986) ("What the automatic stay provides is 'the essential breathing room for a Chapter 11 debtor to restructure its affairs[.]'")

      13.    The Debtors should be allowed sufficient time to analyze the recently filed proofs of claim, object to claims as appropriate and determine whether there is a likelihood that the Policy Limit will be insufficient to cover all valid, applicable claims.[2]  Once such analysis is complete, if it is determined that Policy Limit will cover all claims potentially covered by the Policy, it may then be appropriate for the Rodriguez Action to proceed.  On the other hand, if it is ultimately determined that the Policy Limit is not sufficient to allow all similarly situated creditors to receive a full recovery under the Policy, the Debtors must be given an opportunity to formulate an approach, in conjunction with their Chapter 11 plan, which would ensure the equitable distribution of the proceeds of the Policy to those similarly situated creditors.  As a result, allowing the Rodriguez Action to proceed at this time, before the Debtors have identified and determined the universe of claims covered by the Policy, could foreclose the opportunity for the Debtors to treat all like creditors in a similar manner, thus defeating the very purpose of chapter 11.

---

[2] Based on an initial review of the proofs of claims filed and claims asserted prior to the Petition Date, the Debtors have already identified at least five other claims potentially covered by the Policy.  Two claimants alone—Timothy Kane and the Estate of Jeffrey Chwala—have claims totaling $18 million of the $20 million Policy Limit.  The claim filed by one of the Plaintiffs—Carlos Nieves—asserts damages in an unliquidated amount.  Additionally, a significant number of claims were filed without sufficient documentation to determine if the claims might be covered by the Policy.

**B.     The Balance Of Hardships Weighs Significantly In Favor Of The Debtors**

14.     The above-described burdens forced upon the Debtors by the prosecution of the Rodriguez Action far outweigh any inconvenience encountered by the Plaintiffs. Unsecured creditors, such as the Plaintiffs, "bear the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the Debtor in denying relief." In re Micro Design, Inc., 120 B.R. 363, 369 (E.D. Pa. 1990) (automatic stay not lifted where it was appropriate for movant to pursue its claim by filing a proof of claim, and participating in the claim process, in the bankruptcy case).

15.     In this case, the Plaintiffs rely solely on the existence of the Debtors' insurance coverage to support the modification of the automatic stay.  As discussed above, however, the Policy Limit potentially restricts the Debtors' ability to ensure that similar claims receive the same pro rata recovery.  Allowing the Plaintiffs to proceed with the Rodriguez Action presents the real risk that the Plaintiffs will subsidize their recovery at the expense of the Debtors' estates and other creditors.  This is exactly the sort of result that the automatic stay was intended to avoid.  See Borman v. Raymark Industries, Inc., 946 F.2d 1031, 1036 (3rd Cir. 1991) ("The automatic stay was designed 'to prevent certain creditors from gaining a preference for their claims against the debtor[.]'").  Because the Debtors have a duty to all of their creditors to equitably allocate their assets—including their insurance coverage—the existence of insurance coverage alone cannot be a sufficient basis to lift the automatic stay.  See Matter of Fletcher, 176 B.R. 445, (Bankr. W.D. Mich. 1995) (allocating assets equitably among a debtor's creditors is a goal of the Bankruptcy Code).

16.     The Plaintiffs provide no reason why they should be given preferential treatment over literally thousands of other individuals asserting claims against the Debtors which

DOCS_DE:74907.1

are potentially covered by insurance.  The Plaintiffs have not even attempted to demonstrate, nor could they demonstrate, any cause for the Court to decide that the balance of the hardships weighs in their favor.

17.     The Plaintiffs will lose neither their right to try their alleged claim nor their right to share in the proceeds of the Policy if the Motion is denied at this time.  The denial of the Motion will protect the Plaintiffs' rights along with the rights of all similarly situated claimants to receive their equitable distribution of the proceeds of the Policy.  Because the Debtors would suffer hardship if the automatic stay is lifted, and the Plaintiffs would suffer little, if any, hardship if the Motion is denied, this Court should deny the Motion to lift the automatic stay.

**C.      The Plaintiffs Have Demonstrated No Likelihood of Success on the Merits.**

18.     The Plaintiffs' Motion should be denied because they have not demonstrated, nor can they demonstrate, any likelihood of success on the merits.

DOCS_DE:74907.1

### Conclusion

For these reasons, the Motion for relief from the automatic stay should be denied.

Wilmington, Delaware
Dated:  July 11, 2003

KIRKLAND & ELLIS
David M. Bernick, P.C.
Janet S. Baer
James W. Kapp III
Christian J. Lane
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
WEINTRAUB P.C.

*Paula A. Galbraith*

Laura Davis Jones (Bar No. #2436)
Scotta McFarland (Bar No. #4184)
Paula Galbraith (Bar No. #4258)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession