IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., <u>et al.</u>,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Response Deadline: July 18, 2003**
**Hearing Date: July 28, 2003 at 12:00 p.m.**

## DEBTORS' OBJECTION TO MOTION OF ROBERT COSTA AND RONALD THORNBURG FOR RELIEF FROM STAY UNDER <u>11 U.S.C. § 362 OF THE BANKRUPTCY CODE (DOCKET NO. 3937)</u>

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by

their undersigned counsel, respectfully submit this objection to the Motion of Robert Costa and

Ronald Thornburg for Relief from Stay under 11 U.S.C. § 362 of the Bankruptcy Code (the

"Motion"). The Debtors respectfully represent as follows:

### Introduction

1.      Robert Costa ("Costa") and Ronald Thornburg ("Thornburg" and together with

Costa, the "Dismissed Relators") are not exempt from the automatic stay.  Although the Debtors

---

[1]      The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

do not contest that section 362(b)(4) of chapter 11 of Title 11 of the United States Code (as amended, the "Bankruptcy Code") exempts actions of governmental units enforcing their police or regulatory power from the automatic stay, the Dismissed Relators are not a governmental unit, nor an agent thereof. They cannot exercise the "police power" exemption to the automatic stay. Moreover, this Court need not determine whether the Dismissed Relators are proper agents of the government because this issue has already been resolved by the district court in the underlying action.

2.      In particular, the Dismissed Relators filed the FCA Action (as defined below) purporting to act as agents for the United States and California pursuant to the False Claims Act, 31 U.S.C. 3129 (the "FCA"). Subsequently, the United States and California intervened and assumed responsibility for the FCA Action. Upon separate motions of W.R. Grace & Co.—Conn. ("Grace"), the Dismissed Relators were both dismissed from the FCA Action by the court, finding that the Dismissed Relators had no right to assert the claims set forth in the FCA Action. Therefore, the Dismissed Relators are no longer parties to the FCA Action, are not recognized as agents for a governmental unit and are precluded from asserting the right to prosecute the FCA Action under the "police power" exemption granted to governmental actions.

3.      Relying on their "police power" exemption argument, the Dismissed Relators do not even attempt to demonstrate that sufficient cause exists to warrant the lifting or modification of the automatic stay, nor could they meet their substantial burden even if they tried. Indeed, the continuation of the FCA Action and the prosecution of any appeal requires the Debtors' participation in the defense of the action, depletes the Debtors' resources to pay for the defense of the FCA Action and could lead to a flood of similar motions for relief from the automatic stay. All these factors combine to deny the Debtors the breathing room that the automatic stay is

intended to provide. It remains critical to the Debtors' successful reorganization that all collateral litigation against the Debtors, such as the FCA Action, be stayed. Accordingly, the Motion should be denied.

### Background

4.    On June 1, 1995, the Dismissed Relators filed a *qui tam* action[2] in the United States District Court for the Northern District of California (the "District Court") captioned <u>United States of America ex rel. Robert Costa and Ronald Thornburg and State of California ex</u> <u>rel. Robert Costa and Ronald Thornburg v. Baker & Taylor, Inc., d/b/a Baker & Taylor Books</u> <u>and W. R. Grace & Co.—Conn.</u>, (Civil No. 95-1825 (VRW) (N.D. Cal.) (the "FCA Action")) against Grace and Baker & Taylor, Inc. ("Baker & Taylor") on behalf of the United States and the State of California ("California"), alleging violation of the FCA, related to the sale of books to public libraries. The United States and California intervened in the FCA Action by notice of their election to intervene filed on January 31, 1997. Thereafter, 17 individual states represented by their respective attorneys general were granted leave to file a complaint in intervention in the case.

5.    On October 2, 1997, Grace filed a motion seeking to dismiss the FCA Action in its entirety as barred by the statute of limitations. By order filed on March 20, 1998,[3] the District Court denied the motion in part, but found that Thornburg was not a proper party to the FCA

---

[2] A *qui tam* action is an informer's suit brought by one who sues for the United States as well as for himself. The government is given the option to enter and assume primary responsibility for prosecuting the action. <u>United States ex rel.</u> <u>Newsham v Lockheed Missiles & Space Co.</u>, 907 F Supp 1349, 1352 (N.D. Cal. 1995) ("The term qui tam comes from the Latin phrase 'qui tam pro domino rege quam per se ipso in hac parte sequitur,' which means 'who brings the action for the king as well as for himself.'"). Court's refer to the individual plaintiff as a *qui tam* plaintiff or a relator. <u>Id.</u>

[3]    The Order dismissing Thornburg (the "Thornburg Order") is attached hereto as Exhibit A.

Action and dismissed him on grounds that he had failed to file the FCA Action within the applicable statue of limitations.

6.      On August 21, 1998, Grace filed a motion seeking the dismissal of Costa for lack of subject matter jurisdiction.  By order filed on March 9, 1999,[4] the District Court ruled that Costa was not a proper party to the FCA Action and dismissed him for lack of subject matter jurisdiction under the FCA.  The District Court found that Costa's *qui tam* action was barred because the allegations in the FCA Action were "previously disclosed and [Costa] was not an 'original source' of these disclosures."  (Costa Order, pp. 6-9).  The Court found that the evidence was sufficient to "unequivocally establish" that the accusations made by the relators were publicly disclosed prior to the case's filing.  The Court noted:  "A whistle blower sounds the alarm, he does not echo it."  As both Costa and Thornburg claimed the right to pursue the claims under the specific requirements of the FCA, which requires that relators act as the "original source" of the information which is the basis of the complaint, the finding that the allegations were previously disclosed serves as an additional bar to Thornburg's pursuit of the claims.  On August 5, 1995, the Court denied a motion to seek reconsideration of the Costa Order.

7.      On or about October 19, 1999, the Dismissed Relators filed a motion seeking certification of their dismissals for immediate appeal.  In an order entered August 18, 2000,[5] the District Court denied the Dismissed Relators' request for certification of the appeal of their dismissal, stating that "there are no compelling reasons to permit Thornburg and Costa to seek

---

[4]    The Order dismissing Costa (the "Costa Order") is attached hereto as Exhibit B.

[5]    The August 18, 2000 order denying the Dismissed Relators motion for certification of their dismissal for appeal is attached hereto as Exhibit C (the "Certification Order").

-4-

appellate review at this juncture." (Certification Order, p. 3).  Thereafter, the United States, the State of California, and the 17 states continued to pursue the claims asserted in the FCA Action against Baker & Taylor and Grace.

8.       On July 31, 2000, both Baker & Taylor and the Debtors settled the FCA Action with the United States and California pursuant to a settlement agreement (the "Settlement Agreement").[6]  Among other things, the Settlement Agreement waived the plaintiffs' right to recover any additional amounts, providing that the United States and California "on behalf of itself, its officers, agents, agencies, and departments" expressly released Baker & Taylor and Grace "from any civil or administrative monetary claims…under…the False Claims Act." Subsequently, Grace and Baker & Taylor paid the amounts agreed under the Settlement Agreement to the United States and California.  The United States voluntarily paid to the Dismissed Relators 15% of its settlement of $3,000,000.

9.       On or about June 25, 2001, the District Court administratively closed the FCA Action.[7]  On September 7, 2001, California, Baker & Taylor and Grace executed a stipulation voluntarily dismissing the complaint of California with prejudice.  The voluntary dismissal left the United States as the only remaining plaintiff in the FCA Action.  In light of certain actions taken by the United States after the execution of the Settlement Agreement, Grace would not enter into a Stipulation of Dismissal of the Action with the United States.  The United States has never sought to have the case dismissed or to have a final judgment entered in the FCA Action. Accordingly, there is no final judgment in the FCA Action.

---

[6]   A copy of the Settlement Agreement is available upon request to the Debtors' counsel.

[7]   The order administratively closing the FCA Action is attached hereto as Exhibit D.

10.    On or about March 20, 2003, Costa and Thornburg filed a joint proof of claim in the Debtors' chapter 11 cases asserting a claim for $737,973.00 (the "Claim").

11.    On or about June 20, 2003, the Dismissed Relators filed the Motion seeking relief from the automatic stay to pursue an appeal of their dismissal from the FCA Action.    The Dismissed Relators seek to prosecute an appeal seeking reversal of the orders dismissing them from the FCA Action (the "Appeal").    The purpose of the Appeal is to reinstate the Dismissed Relators as plaintiffs in the FCA Action so that the Dismissed Relators may seek an award of attorneys' fees and costs.[8]    (Motion at ¶11).    As no final judgment has been entered in the FCA Action, the Appeal cannot proceed without leave of the District Court.    As set forth herein, the harm the Debtors will suffer if the FCA Action and the Appeal are allowed to proceed necessitates that the automatic stay not be modified and that this Court deny the Motion.

**Argument**

## I.    THE DISMISSED RELATORS ARE NOT EXEMPTED FROM THE AUTOMATIC STAY

12.    Section 362(b)(4) of the Bankruptcy Code provides an exception from the application of the automatic stay for:

> the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power.

11 U.S.C. § 362(b)(4).    Courts have recognized that *qui tam* suits under the FCA fall within this exception to the automatic stay.    See, e.g., U.S. ex rel. Doe v. X, Inc., 246 B.R. 817 (E.D. Va.

---

[8] Only proper *qui tam* plaintiffs are entitled to receive attorneys' fees. See Federal Recovery Services, Inc. v. United States, 72 F.3d 447, 450 (5th Cir. 1996) (denying attorneys' fees to a dismissed relator and holding that under the False Claims Act, "[o]nly those parties that are properly part of the *qui tam* action are statutorily entitled to an award of attorneys' fees and expenses").

2000). Courts, however, have also recognized that *qui tam* plaintiffs who are dismissed from actions under the FCA are not entitled to the rights granted to proper *qui tam* plaintiffs under the FCA. See <u>Federal Recovery Services, Inc. v. U.S.</u>, 72 F.3d 447 (5th Cir. 1995). See also <u>United States ex rel. Taxpayers Against Fraud v. General Electric Co.</u>, 41 F.3d 1032, 1044 (6th Cir. 1994); <u>United States ex rel. Eitel v. Reagan</u>, 35 F. Supp. 2d 1151, 1162 (D. Ariz. 1998).

13.    Pursuant to the Thornburg Order and the Costa Order, the Dismissed Relators have been dismissed from the FCA Action. Therefore, the Dismissed Relators are not entitled to assert the rights provided by the FCA to a proper *qui tam* plaintiff as the District Court has determined that the Dismissed Relators lack the standing to prosecute, or in any way participate in, the FCA Action. As a result thereof, the Dismissed Relators have no entitlement to the exemption from the automatic stay afforded to government agencies pursuant to section 362(b)(4) of the Bankruptcy Code. Moreover, the Dismissed Relators provide no authority whatsoever for their position that, notwithstanding their dismissal, they retain standing to invoke the "police power" exemption. Therefore, the Dismissed Relators are subject to, and not exempt from, the automatic stay.

## II.    THE DISMISSED RELATORS HAVE NOT DEMONSTRATED CAUSE NECESSARY FOR RELIEF FROM STAY

14.    Because the Dismissed Relators are not entitled to invoke the "police power" exemption from the automatic stay, they have the burden, pursuant to section 362(d) of the Bankruptcy Code, of demonstrating that sufficient cause exists to justify the modification of the automatic stay. Although the Bankruptcy Code does not define what constitutes cause, "courts generally consider the policies underlying the automatic stay [and] . . . the competing interests of the debtor and the movant." <u>In re Continental Airlines, Inc.</u>, 152 B.R. 420, 424 (D. Del. 1993).

In particular, Delaware courts consider the following three factors in balancing the competing interests of the parties:

    (a)    the prejudice that would be suffered by the debtors should the stay be lifted;

    (b)    the balance of the hardships facing the parties if the stay is lifted; and

    (c)    the probable success on the merits if the stay is lifted.

Continental, 152 B.R. at 424. In their Motion, the Dismissed Relators ignore the balancing test altogether and, as a result, fail to demonstrate sufficient cause necessary to modify the automatic stay in this case.

### A.    Substantial Prejudice Would Be Incurred By The Debtor If The Stay Were Lifted

15.    The most important factor in determining whether to grant relief from the automatic stay to allow litigation to proceed against a debtor in another forum is the effect of such litigation on the administration of the estate. See In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984); In re Penn-Dixie Industries, Inc., 6 B.R. 832, 836 (Bankr. S.D. N.Y. 1980). If the automatic stay is lifted to allow the litigation of the FCA Action, the Debtors' ability to administer their estates and these chapter 11 cases would be severely impacted.

16.    As a threshold matter, collateral litigation against the Debtors should not be allowed to take place in these chapter 11 cases.[9] This is a bankruptcy that is litigation driven. Indeed, the main challenge of these chapter 11 cases is to develop a comprehensive plan to deal

---

[9]    Courts have recognized that in mass tort cases, there is a critical need to stay all collateral litigation in order to allow the Debtors an opportunity to develop comprehensive litigation and reorganization plans.

    The purpose of this section [362] by its various subsections is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor.

    A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins & Co., Inc.), 788 F.2d 994, 998 (4th Cir. 1986).

with the morass of pre-petition asbestos litigation filed against the Debtors. Allowing collateral litigation such as the FCA Action to proceed will simply divert the Debtors' attention from the task of developing a plan to address such problems in a comprehensive manner.

17.    There are also several specific harms facing the Debtors if the FCA Action is allowed to proceed. Most importantly, the FCA Action presents the potential of a judgment against Grace and the potential of an indemnity claim by Baker & Taylor against Grace pursuant to the agreement governing Grace's disposition of Baker & Taylor in 1991. In particular, the Debtors will be forced to divert attention from their reorganization in order to actively participate in the defense of the FCA Action. Moreover, the Debtors will bear the entire financial burdens of the Appeal and, potentially, of a trial and further proceedings upon remand because they do not possess insurance which covers the FCA Action.

18.    Indeed, the very purpose of the Motion is to require Grace to participate in the FCA Action and the Appeal. In particular, the Dismissed Relators state that one objective of their Motion is to "ensure that W. R. Grace cannot later complain that . . . it was not a party to any appeal." (Motion at ¶ 18). Thus, although the Dismissed Relators state that they will not attempt to enforce any judgment they obtain in the FCA Action against the Debtors at this time,[10] it is obviously their intent that the Debtors be bound by any such judgment. As a result, the Debtors have no choice but to participate actively in the Appeal. In fact, it was the Debtors that originally sought to dismiss the Dismissed Relators from the FCA Action in the first place and the Debtors continue to dispute the Dismissed Relators' attempt to rejoin the FCA Action.

19.    Finally, if the automatic stay is lifted with respect to the FCA Action, it may open the floodgates of other motions to lift the automatic stay. There are thousands of claims pending

---

[10] Motion at ¶ 18.

against the Debtors where a co-defendant bears a significant portion of the liability. Lifting the automatic stay in the FCA Action may well prompt large numbers of litigation claimants to seek relief from the automatic stay to pursue their claims against the Debtors. Were this to happen, the Debtors would be put back into the position they were in prior to filing for bankruptcy.

**B.**    **The Balance Of Hardships Weighs Significantly In Favor Of The Debtors**

20.    The above-described burdens forced upon the Debtors by the prosecution of the FCA Action far outweigh any inconvenience encountered by the Dismissed Relators. Unsecured creditors, such as the Dismissed Relators, "bear the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the Debtor in denying relief." In re Micro Design, Inc., 120 B.R. 363, 369 (E.D. Pa. 1990) (automatic stay not lifted where it was appropriate for movant to pursue its claim by filing a proof of claim, and participating in the claim process, in the bankruptcy case). In this case, the Dismissed Relators do not even attempt to undertake such an analysis, much less demonstrate how the balance of hardships weigh in their favor. The Dismissed Relators provide no reason why they should be given preferential treatment over literally thousands of other individuals asserting litigation-based claims against the Debtors.

21.    Moreover, the Dismissed Relators have not provided any evidence that they will suffer any hardship from delaying the prosecution of the FCA Action and the Appeal. Indeed, there are several reasons to believe that the Dismissed Relators will suffer no harm if the Motion is denied. *First*, the FCA Action is not time sensitive. The FCA Action was initially filed over eight years ago. The Dismissed Relators waited over two years since the administrative closing of the FCA Action to seek relief from the automatic stay. Finally, the remedy sought is strictly monetary. *Second*, the Dismissed Relators have already received a recovery that they are not entitled to in the absence of a finding that they are proper parties to the FCA Action. The United

-10-

States' voluntary payment of $450,000[11] to the Dismissed Relators serves to mitigate any harm the Dismissed Relators may suffer as a result of the delay imposed by the automatic stay. *Third*, the Dismissed Relators will still have the opportunity to pursue the Appeal at a later date if the Motion is denied and also can seek to pursue their Claim in the Debtors' bankruptcy cases. Because the Debtors would suffer great hardship if the automatic stay is lifted, and the Dismissed Relators would suffer little, if any, hardship if the Motion is denied, this Court should deny the Motion.

**C.    The Dismissed Relators Have Demonstrated No Likelihood of Success on the Merits.**

22.    Finally, the Dismissed Relators have not shown, nor can they show, any likelihood of success on the merits. The Dismissed Relators have provided no basis to dispute the Thornburg Order and the Costa Order dismissing them from the FCA Action.

23.    The Dismissed Relators, as purported relators, had no distinct interests in the FCA Action. The Dismissed Relators sued on behalf of the United States and were agents of the United States in bring a *qui tam* action. See Cedar-Sinai Medical Center v. Shalala, 125 F.3d 765, 768 (9th Cir. 1997) (relator has no interest distinct from the government); United States ex rel. Hyatt v. Northrop Corp., 91 F.3d 1211, 1218 n.8 (9th Cir. 1996) ('[q]ui tam Relators cannot and do not sue for FCA violations on their own behalf [but] *on behalf of the government as agents of the government*, which is always the real party in interest.") (emphasis added); United

---

[11]    The United States voluntarily paid the Dismissed Relators 15% of its settlement of $3,000,000, notwithstanding that the District Court has held that the FCA Actions were based largely on public disclosures. *See* Costa Order at 6 (e.g., the complaint's disclosures "echo rather than sound the charges leveled in the public disclosures"). Under the FCA, since this case was based on public disclosures rather than the disclosures of the Dismissed Relators, *only* the District Court has the authority to grant an award to a proper *qui tam* plaintiff, in an amount the court deems proper. *See* 31 U.S.C. § 3730(d)(1). The United States also was required to submit its proposal to pay the Dismissed Relators *any* share of the recovery to the District Court for its approval. Further, the United States decided to award Costa and Thornburg 15% of the recovery even though the statute expressly permits the District Court to award no more than 10% to an actual, proper relator in a case based on public disclosures. *See* 31 U.S.C. § 3730(d)(1).

States ex rel. Kreindler & Kreindler v. United Technologies Corp., 985 F.2d 1148, 1155 (2d Cir. 1993) (*qui tam* plaintiffs are private attorneys general deputized to enforce federal laws).

24.    Thus, to the extent that the Dismissed Relators are reinstated to the FCA Action and a court considered the Dismissed Relators' request for attorney's fees and costs, such court should deny the request because the Settlement Agreement released all such claims.    In the Settlement Agreement, the United States "on behalf of itself, its officers, *agents*, agencies, and departments" (emphasis added) expressly released Grace "from any civil or administrative monetary claims...under...the False Claims Act."    The Dismissed Relators never objected to the terms of the Settlement Agreement.  If on appeal the Dismissed Relators were able to establish that they had standing to assert their claims, they would do so as agents of the United States (with no greater rights than the United States).  As such, they are bound by the terms and releases of the Settlement Agreement and cannot obtain an award of attorneys' fees.

25.    The Motion should be denied because the Dismissed Relators have not demonstrated, nor can they demonstrate, any likelihood that they will prevail on the underlying merits in the FCA Action.

-12-

## Conclusion

For these reasons, the Motion for relief from the automatic stay should be denied.

Wilmington, Delaware
Dated: July 11, 2003

KIRKLAND & ELLIS
David M. Bernick, P.C.
Janet S. Baer
James W. Kapp III
Christian J. Lane
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
WEINTRAUB P.C.

Laura Davis Jones (Bar No. #2436)
Scotta McFarland (Bar No. #4184)
Paula Galbraith (Bar No. #4258)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession