# EXHIBIT B

```
                                                         FILED

                                                       MAR - 9 1999

                                                    RICHARD W. WIEKING
                                                   CLERK, U.S. DISTRICT COURT
                                                  NORTHERN DISTRICT OF CALIFORNIA
```

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, ex rel.
ROBERT COSTA and STATE OF                C-95-1825-VRW
CALIFORNIA, ex rel. ROBERT COSTA,
                                         ORDER
         Plaintiffs,

    v.

BAKER & TAYLOR, INC d/b/a BAKER &
TAYLOR BOOKS and W.R. GRACE & CO
-CONNECTICUT,

         Defendants.
_____/

     Before the court is defendants' motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction. For the reasons stated below, defendant's motion is GRANTED.

     Plaintiff Robert Costa, the former City Librarian of Richmond, Virginia, brings this *qui tam* action against defendants to recoup monies obtained through an allegedly fraudulent billing scheme. Defendant Baker & Taylor, a book distributor and wholesaler, contracted with libraries and educational institutions to sell books at various discount levels. The level of discount (e.g., "short" or "long") assigned to an individual publication was

1  apparently determined according to the type of book and binding.
2  Plaintiff alleges that defendants deliberately mischaracterized
3  books in order to sell them at a reduced discount and that these
4  mischaracterizations were inconsistent with defendants'
5  representations and contractual obligations.
6       Defendants contend that the substance of these
7  allegations has been circulating publicly for a number of years and
8  that such prior public disclosures rob the court of subject matter
9  jurisdiction over plaintiff's claim pursuant to 31 USC §
10 3730(e)(4)(A). The court must agree.
11      In the 1986 amendments to the *qui tam* provisions of the
12 False Claims Act ("FCA"), Congress inserted a jurisdictional bar
13 excluding relators who merely repeat allegations that have already
14 been publicly disclosed:

> No court shall have jurisdiction over an action under
> this section based upon the public disclosure of
> allegations or transactions in a criminal, civil, or
> administrative hearing, in a congressional,
> administrative, or Government Accounting Office report,
> hearing, audit, or investigation, or from the news media
> * * * unless the action is brought by the Attorney
> General or the person bringing the action is an original
> source of the information.

20 31 USC § 3730(e)(4)(A).
21      Section 3730 provides a two-part test for determining
22 jurisdiction. See <u>United States ex rel Findley v FPC-Boron</u>
23 <u>Employee's Club</u>, 105 F3d 675, 681 (DC Cir 1997); <u>Wang v FMC Corp</u>,
24 975 F2d 1412, 1416 (9th Cir 1992). First, the reviewing court must
25 ascertain whether the "allegations or transactions" upon which the
26 suit is based were previously publicly disclosed. 31 USC §
27 3730(e)(4)(A). Second, if the answer to the first question is

28                              2

1  affirmative, the court must then proceed to decide whether the *qui*
2  *tam* plaintiff is an "original source," i.e. whether the plaintiff
3  has direct and independent knowledge of the information on which
4  the allegations are based.   31 USC § 3730(e)(4)(B).
5       Accordingly, this court must proceed to resolve the
6  following two predicate jurisdictional questions:
7       (1) Are plaintiff Costa's allegations anticipated by public
           disclosures that predate the filing of the *qui tam*
8          complaint? And if so,
9       (2) Was plaintiff Costa an "original source" of those
           public disclosures?
10
        Plaintiff's complaint alleges improper discounting and
11
   price manipulation by Baker & Taylor.  Defendants, in response,
12
   offer several prior public disclosures regarding an industry-wide
13
   practice of miscategorizing book prices and discounts, one of which
14
   mentions Baker & Taylor's practices specifically.  See Def Mem at
15
   7-12.  At issue is whether these disclosures sufficiently mirror
16
   the plaintiff's allegations to trigger the jurisdictional bar.
17
        Prior to 1986, the jurisdictional provision used as its
18
   unit of inquiry "evidence or information" rather than the current
19
   "allegations or transactions."  See 31 USC § 232(C).  Thus,
20
   determination of this court's jurisdiction today turns not upon
21
   whether plaintiff has supplied some new information or evidence,
22
   but upon whether the allegations or transactions at issue were
23
   previously publicly disclosed.  This pivotal delineation is simply
24
   the logical distinction between an assertion and its proof; an
25
   allegation can be made public even if its proof remains hidden.
26
   See Wang v FMC Corp, 975 F2d 412, 1418 (9th Cir 1992).
27
28                                 3

The allegations contained in plaintiff's original complaint have been supplemented several times and are now presented in a fourth amended complaint. Putting aside the question whether plaintiff is entitled to rely on allegations identified through discovery or post-filing government investigations, the allegations contained in the fourth amended complaint, fairly characterized, merely repeat the accusation already known to the public: that Baker & Taylor deliberately manipulates book discounts to overcharge its customers.

The disclosures presented by defendants consist of both general statements about industry-wide practices and specific statements about Baker & Taylor's pricing.

An article by Audrey Eaglen entitled *Short Discount Shuffles* describes the miscatagorizing of "trade" titles as "short" discount books by Baker & Taylor to overcharge its customers. "[Wholesalers] often conveniently ship a library bound edition even when a trade edition is available, hoping the library will accept the higher-priced book. They forget to tell us that single binding and reinforced binding are not the same as library bound editions, but charge us for them as if they were." See Bray Decl, Ex 6. "Clearly the nation's 'oldest and largest wholesaler to libraries' [Baker & Taylor] has made and is making an enormous profit on every single reinforced binding, simply by classifying them as library bound editions." Id. Following a discussion of discrepancies between wholesaler and publisher discounting of library bound and trade editions, the article notes that "[w]holesalers, almost without exception claim that the discounts they offer to libraries

4

are based on the discounts they, in turn, receive from publishers." Id. And, "[n]early every major university press has a certain number of trade publications which are sold at trade discounts * * * but the very best discounts we have ever been given [by Baker & Taylor] is 10 percent -- in spite of the fact that these books are full trade discount titles." Id.

Another publication cited by defendants observes: "The rub is that many wholesalers simply classify reinforced bindings (sometimes called single bindings) as library bindings and discount them to libraries as library bindings with a short discount." Bray Decl, Ex 7. And yet another publication notes that "[s]ometimes vendors who have high discounts will artificially inflate the list price of the book before applying the discount." Bray Decl, Ex 23.

These disclosures, published in 1979, 1989 and 1992 respectively, unequivocally establish that accusations of short-discounting and price manipulation were publicly directed at Baker & Taylor and the book wholesaling industry long before plaintiff filed his qui tam complaint in June 1995. Moreover, the disclosures pointed to by defendants specifically describe the miscatagorizing of books and the inflation of list prices as the means used to overcharge customers. The question then, is whether these accusations of widespread improper practice are sufficient to trigger the jurisdictional bar with respect to plaintiff's claims.

The court's reading of the complaint reveals allegations which substantially repeat what the public already knows and add only the particular means used by Baker & Taylor in the questionable and previously documented practices. Plaintiff's

5

fourth amended complaint alleges that Baker & Taylor agreed to sell certain categories of books at specified discounts from the publisher's suggested list prices keyed to the discounts Baker & Taylor itself received from the publisher. See Compl ¶¶ 14, 31. Plaintiff specifically alleges that Baker & Taylor (1) programmed its computer to miscatagorize books systematically and thereby deprive its customers of contractually agreed upon discounts; (2) inflated list prices on invoices, and (3) breached "most favored customer" contracts by charging the federal government customers more than other retail customers. See Compl ¶17, 32-33. The specific information provided by plaintiff, however, cannot change the fact that plaintiff's disclosures echo rather than sound the charges leveled in the public disclosures cited by defendants.

Unfortunately, Congress did not "prescribe by mathematical formulae the quantum or centrality of nonpublic information that must be in the hands of the *qui tam* relator" for the suit to proceed. <u>United States ex rel Springfield Terminal Ry Co v Quinn</u>, 14 F3d 645, 649 (DC Cir 1994). The court must instead look to the statute's structure and purpose for guidance.

The FCA *qui tam* provisions are driven by the twin goals of rejecting suits which the government is capable of pursuing itself while promoting those which the government is not equipped to bring on its own. See id at 653. Hence, it is the court's task to ensure that *qui tam* suits are limited to those in which the relator has contributed significant independent allegations. Where the material elements of the fraudulent transaction are already in the public domain, a *qui tam* action cannot be maintained.

1  When the publicly disclosed information is sufficient to
2  raise an inference of fraud, there is little need for *qui tam*
3  actions. Here, it is apparent from the disclosures that, before
4  the filing of the present action, enough information was in the
5  public domain to expose the allegation that Baker & Taylor was
6  perpetrating a fraud on the government through its billing methods.
7  The public disclosures raise the specter of fraud by describing the
8  practice of miscategorizing publications and inflating list prices
9  in order to overcharge customers. And, the disclosures recognize
10 that these practices occur not only throughout the book industry
11 but are perpetrated specifically by Baker & Taylor.
12 The conclusory allegations of the initial complaint, and
13 the more fleshed out statements contained in the fourth amended
14 complaint, do not introduce new wrongful transactions or material
15 elements to the publicly disclosed allegations. Moreover, the mere
16 fact that some of the public disclosures were directed toward
17 industry-wide practices rather than specifically at Baker & Taylor
18 does not lessen their importance in light of the limited number of
19 industry participants. See Findley, 105 F3d at 686-88. Finally,
20 the public disclosures are not so ancient as to render them
21 incapable of placing the public and the government on notice of
22 Baker & Taylor's potentially fraudulent practices during the
23 relevant time period.
24 While the information provided by plaintiff would
25 certainly aid a government investigation, the information in the
26 public domain was sufficient to enable the government to initiate
27 an investigation and bring an action against Baker & Taylor without
28 

7

1  the aid of plaintiff's *qui tam* complaint. That the government
2  chose not to pursue the matter prior to the filing of plaintiff's
3  complaint says nothing about its capacity to do so.
4      Finding jurisdiction under these circumstances would do
5  nothing to promote the aims of the FCA. A whistle blower sounds
6  the alarm, he does not echo it. The court must conclude that
7  because plaintiff's complaint merely echoes publicly disclosed,
8  allegedly fraudulent allegations that enabled the government to
9  investigate the case and make a decision whether to prosecute, the
10 public disclosure bar applies. Accordingly, the court moves to the
11 second part of the jurisdictional test to determine if plaintiff
12 was an original source of the information on which the allegations
13 are based.
14     An original source is defined by the statute as "an
15 individual who has direct and independent knowledge of the
16 information on which the allegations are based and has voluntarily
17 provided the information to the Government before filing an action
18 under this section which is based on the information." 31 USC §
19 3730(e)(4)(B). To qualify as an original source in the Ninth
20 Circuit, the relator must have directly or indirectly been a source
21 to the entity that actually disclosed the allegations on which the
22 suit is based. See <u>Wang v FMC Corp</u>, 975 F2d 1412, 1418 (1992).
23     Plaintiff had direct and independent knowledge of the
24 alleged transactions both through his capacity as librarian and
25 through his investigative efforts with Ronald Thornburg. Section
26 3730(e)(4)(A), however, requires a *qui tam* plaintiff <u>also</u> to have
27 played some part in his allegation's original public disclosure.
28

See Wang v FMC Corp, 975 F2d 1412, 1418 (1992). Plaintiff has not alleged that he is in any way responsible for the public disclosures identified by defendants. He does not, therefore, fit within the original source exception to the jurisdictional bar.

Because the allegations presented by plaintiff were previously publicly disclosed and plaintiff is not an "original source" of these disclosures, his *qui tam* action is barred. Defendants' motion to dismiss for lack of subject matter jurisdiction (Doc 186) is GRANTED.

IT IS SO ORDERED.

VAUGHN R. WALKER
United States District Judge

9