## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING
### FEE APPLICATION OF STROOCK & STROOCK & LAVAN, LLP
### FOR THE EIGHTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Eighth Interim Fee Application of Stroock & Stroock & Lavan, LLP (the "Application").

### BACKGROUND

1.      Stroock & Stroock & Lavan, LLP ("Stroock") was retained as counsel to the official committee of unsecured creditors.  In the Application, Stroock seeks approval of fees totaling $224,358.50, which includes a voluntary reduction of $257.00 for paraprofessionals' time, and costs totaling $9,424.04 for its services from January 1, 2003, through March 31, 2003, as well as reimbursement of costs of $1,077.80 for Chambers Associates Incorporated ("Chambers"), an asbestos issues expert.[1]

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. 330,  Local Rule 2016-2

---

[1] Stroock did not submit to us any detail regarding the fees and expenses of Chambers.

of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.    We served on Stroock an initial report based on our review, and received a response from Stroock, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.    In our initial report, we noted that the time entries were generally adequately detailed and devoid of lumping, with the occasional instance of inadequate detail from KP, AK and MG. Rule 2016-2(d) of the Delaware Local Rules states "activity descriptions . . . shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary . . ."  We asked Stroock to advise these timekeepers to provide more detailed time entries.

4.    We further noted that the Application does not address the increase in billing rates of several professionals effective on March 1, 2003.  Paragraph II. A. 3. of the Guidelines states that ". . .[t]he following information should be provided in every fee application: . . .[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, explanation of any changes in hourly rates from those previously charged, . . ."  We asked Stroock to explain this billing rate increase.  Stroock responded as follows:

The billing rates for each of the timekeepers rendering services on behalf of the

> Creditors' Committee were raised, as were the rates of many professionals at Stroock.  From time to time in the ordinary course of Stroock's practice, Stroock adjusts the hourly billing rates of its professionals to compete with the rates of other professionals of similar experience in the same or similar geographical area.  The increases observed by the Fee Auditor were the result of such a routine ordinary course adjustment by the firm after the rates of the firm's professionals were reviewed.

We appreciate the response.

<u>Specific Time and Expense Entries</u>

5.      In our initial report, we noted that throughout the Application period, multiple Stroock professionals  prepared for and participated in the same conference calls, meetings or hearings. See Exhibit A.  The total time spent was 45.50 hours for a cost of $25,293.00.  Rule 2016-2(d)(ix) states, "The activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role."  Further, Paragraph II.D.5. of the Guidelines states,  ". . .[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  We asked Stroock to explain why it was necessary for more than one professional to prepare for and participate in each referenced conference call, meeting or hearing, as well as addressing the specific role and area of expertise of each.  Stroock's response is provided as Response Exhibit 1.  We appreciate the response and have no objection to these fees.

6.      We further noted several entries where the total time ascribed to an entry does not match the total of the subparts.  The difference totals $1,037.50 in fees.  See Exhibit B.  We asked Stroock to please review Exhibit B and explain the discrepancies.  Stroock responded as follows:

> The Report notes that there are several entries where the total time ascribed to the entry does not correspond to the total of component entries for the particular timekeepers for the dates identified and seeks an explanation for the discrepancy.

The aggregate difference is $1,037.50 in fees. (Report at paragraph 7). Exhibit B to the Report refers to six (6) such entries.

The portion of the Application corresponding to this inquiry contains over 60 pages of time entries and hundreds of entries for this quarterly application period. While Stroock endeavors to double-check each and every narrative and corresponding aggregate amount entry against each other, as well as against the subject attorneys time detail notes to ensure that the amounts are correct throughout, errors do occur from time to time. Stroock's review of the narrative time entries against the original notes input reveal that in two instances a typographical error occurred in putting the attorney's time detail data into the firm's accounting system. As a result, in these instances the narrative is incorrect, but the stated aggregate amount is correct.

Time Keeper A. Krieger's time detail for 2/28/03 falls within this category as the time recorded to "Review FTI draft memorandum on DIP and prepare comments thereon" should have been (1.0.) not (0.1.), which accounts for the difference. Stroock submits that the aggregate amount for this entry is correct.

Time Keeper A. Krieger's time detail for 2/05/03 falls within this category as the time recorded with respect to preparing a "memorandum to the Committee re: asbestos-related articles" should have been (0.7) not (0.1), which accounts for the difference. Stroock submits that the aggregate amount for this entry is correct.
Each of the other narrative time entries reveals that they are correct, but that the stated aggregate amount is incorrect. Stroock therefore submits that the aggregate amount of the compensation Stroock seeks under the Application should be reduced by $325.00.

We accept the explanation, and thus we recommend a reduction of $325.00 in fees.

7.      In our initial report, we noted a meal expense entry of $97.87 that may be excessive.

The entry is provided below.

02/26/2003      VENDOR: Cavonberry's; INVOICE#: 020303; DATE: 2/3/2003 L          97.87

                kruger 1/24/03

Paragraph II.E.1.,of the Guidelines states, ". . .[f]actors relevant to a determination that the expense is proper include the following: 1. Whether the expense is reasonable and economical. For example, first class and other luxurious travel mode or accommodations will normally be objectionable." We

asked Stroock to provide additional information on this expense so that we might assess the reasonableness of the charge.  We asked that the response include the type of meal (i.e. breakfast, lunch or dinner), the number of meals and diners per meal.  Stroock's response is provided below.

> This was a charge for the cost of food at a breakfast meeting at Stroock's midtown office attended by Messrs. Kruger and Pasquale, Ms. Krieger, the chairman of the Creditors' Committee and several representatives from FTI, the Committee's financial advisor, to discuss chapter 11 plan and emergence-related issues.  Stroock submits it should be reimbursed in full for this charge.

As the charge for this business breakfast is less than the $15 per person charge that we suggest for breakfast, we have no objection to this expense.

8.    Finally, we noted a total of $337.16 spent for local transportation throughout the Application period.  See Exhibit C.  Only a single entry dated February 10, 2003, provides an adequate description of purpose and necessity.  Paragraph I.E. of the Guidelines states, ". . . [i]n evaluating fees for professional services, it is relevant to consider . . .[w]hether the expense is reasonable and economical."  We asked Stroock to review Exhibit C and explain the need for these transportation expenses and why this estate alone should bear the cost for them.  Stroock's response is provided as Response Exhibit 2.  We appreciate the response and accept the voluntary reduction. We therefore recommend a reduction of $91.62 in expenses.

## CONCLUSION

9.    Thus we recommend approval of fees totaling $224,033.50 ($224,358.50 minus $325.00) and costs totaling $9,332.42 ($9,424.04 minus $91.62) for Stroock's services from January 1, 2003, through March 31, 2003.  We offer no comment on the expenses totaling $1,077.80 submitted by Stroock on behalf of Chambers.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
            Warren H. Smith
            Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 4080
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**


**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 17th day of July, 2003.

_____
            Warren H. Smith

Exhibit A

1.     On January 30, 2003, AK ($475), LK ($695) and KP ($495) spent 4.10 hours for $2,153.50 in fees participating in the same meeting.

01/30/2003     Extended meeting with J. Ellington re Andrea Mardin re Sealed Air settlement, environmental claims, other (1.8).     Krieger, A.     1.8

01/30/2003     Office conference with K. Pasquale, A. Krieger and representatives of EPA regarding environmental claims against WR Grace (.9).     Kruger, L.     0.8[2]

01/30/2003     Meeting with J. Ellington and Andrea Mardin (EPA) re environmental issues (1.5) Pasquale, K.     1.5

2.     On January 24, 2003, four (4) professionals [AK ($475), LK ($695), KP ($495) and MW ($595)] spent 3.80 hours for $2,047.00 in fees preparing for and participating in a conference call.

01/31/2003     ................; preparation for Committee conference call (1.0); discussed pending matters with Committee on conference call (.7);...........     Krieger, A.     2.6

01/31/2003     Office conference with A. Krieger, K. Pasquale, M. Wintner  and by phone with the committee considering exclusivity, D&K as committee members, pension fund issue, environmental, ZAI issues and Sealed Air settlement proposal (.9) Kruger, L.     0.9

01/31/2003     Conference call with Committee re Sealed Air and pending issues (1.0) Pasquale, K.     1.0

01/31/2003     Telephone conference call Creditors Committee re Motion to authorize payments to Union Pension Plan.     Wintner, M.     0.2

3.     On January 22, 2003, AK ($475), LK ($695) and KP ($495) spent 3.10 hours for $1,694.50 in fees participating in the same conference call.

01/22/2003     ......................; extended conference call with LK, KP and counsel for Sealed Air re settlement agreement (1.0);.............     Krieger, A.     3.1

01/22/2003     Office conference with A. Krieger; telephone call with H. Wasserstein and S.

_____

[2]The time ascribed to the entry is 0.80 hour, but the time from the description totals 0.90 hour. The time used in the calculation was 0.80 hour.

Birnbaum regarding Sealed Air's proposal to pay settlement into 524G trust for tax benefits (.9); . . .
Kruger, L.        1.5

01/22/2003    Conference call with Skadden, L. Kruger, A. Krieger re settlement terms (.8); attention to same (.4)    Pasquale, K.    1.5[3]

    4.    On February 6, 2003, AK ($475), LK ($695) and KP ($495) spent 1.30 hours for $735.50 in fees participating in a Committee conference call.

02/06/2003    ....................; Committee Conference call re Sealed Air Settlement Agreement (.4).
Krieger, A.        0.9

02/06/2003    Telephone conference with Creditors' Committee considering Sealed Air proposed settlement and best efforts directions with respect to proceeds.
Kruger, L.        0.5

02/06/2003    Committee conference call re Sealed Air settlement issues (.4)
Pasquale, K.    0.4

    5.    On February 7, 2003, AK ($475), LK ($695) and MW ($595) spent 4.50 hours for $2,455.50 in fees preparing for and participating in a conference call with the Creditors' Committee.

02/07/2003    Review material for Committee conference call (1.4); memorandum to the Committee re Curtis Bay materials (.2); Committee conference call re Debtors' presentation on Curtis Bay matter (1.0);......................
Krieger, A.        3.2

02/07/2003    Office conference with A. Krieger and M. Wintner, then conference call with Creditors' Committee and debtor with respect to debtor's pension plan agreement as part of labor negotiations and justification therefore (.9);...................
Kruger, L.        1.2

02/07/2003    Telephone conference call Creditors' Committee and Debtor (and its professionals re Motion to authorize special contribution to Curtis Bay Union Pension Plan (1.0);............    Wintner, M.    1.6

_____

[3]The time ascribed to this entry is 1.50 hours, but the total time from the subparts is 1.20 hours. The time used in this calculation is 1.50 hours because the other issue is covered in paragraph #7.

6.      On February 7, 2003, AK ($475), LK ($695) and KP ($495) spent 2.50[4] hours for $1,445.50 in fees participating in a conference call.

| 02/07/03 | AK | 1.30 | ............; settlement agreement call (.6);........... |
|---|---|---|---|
| 02/07/03 | LK | 1.10 | Office conference with K. Pasquale and A. Krieger - then conference call with H. Silverstein, S. Birnbaum, S. Baena and P. Lockwood considering Sealed Air settlement issues and need for revised settlement agreement. |
| 02/07/03 | KP | 0.8 | Conference call with all parties re Sealed Air settlement terms (.8). |

7.      On February 12, 2003, AK ($475), LK ($695) and KP ($495) spent 7.70[5] hours for $4,071.50 in fees participating in a conference call.

| 02/12/03 | AK | 4.80 | Sealed Air Agreement conf call (3.0);.......... |
|---|---|---|---|
| 02/12/03 | LK | 1.60 | Office conference with A. Krieger and K. Pasquale; telephone conference with H. Silverstein, P. Lockwood, S. Baena and J. Bear regarding Sealed Air settlement agreement. |
| 02/12/03 | KP | 3.3 | Participated in conference call with all parties re documentation of settlement (3.1);................ |

8.      On February 19, 2003, AK ($475), LK ($695) and KP ($495) spent 6.10 hours for $3,315.50 in fees participating in a conference call.

| 02/19/03 | AK | 4.30 | .........; conference call on Sealed Air settlement agreement (2.2);........ |
|---|---|---|---|
| 02/19/03 | LK | 1.70 | Telephone conference with K. Pasquale, S. Birnbaum, H. Silverstein, S. Baena and P. Lockwood regarding Sealed Air settlement and tax issues. |
| 02/19/03 | KP | 2.70 | .........; conference call with all parties re same (2.2). |

9.      On March 11, 2003, AK ($495), LK ($725) and KP ($550) spent 12.40 hours for $7,374.50 in fees preparing for and participating in a committee meeting.

---

[4]The exact time and fees cannot be determined due to lumping with one of the time entries.

[5]The exact time and fees cannot be determined due to lumping with one of the time entries.

03/11/03    KP    0.50    Preparation for committee meeting (.5).

03/12/03    AK    4.30    ................; participated at Committee meeting during which Debtors presented operational results, discussed pension and other matters (3.6).

03/12/03    LK    4.30    Creditors' Committee meeting prior to meeting with debtor to consider EPA request to join committee as ex officio and other issues (1.1); Creditors' Committee meeting with debtor regarding results for 2002, business plan, asbestos issues and environmental issues (2.8); Committee meeting to consider its financial advisor comments on debtor's financial performance, business plan, Sealed Air settlement issues and EPA issues (.4).

03/12/03    KP    4.00    Creditors' committee meeting/debtors' presentation (4.0).

Exhibit B

1.      On January 21, 2003, AC has a time entry listed for 2.10 hours for a total fee of $357.00.  The points only total 1.90 hours for a total fee of $323.00.  Difference in fee is $34.00.

01/21/03      AC    2.10    Prepare service of fee statement (1.1); various communications w/S. Caban re: approval of Notice (.3); and serve (.5).

2.      On January 23, 2003, AK has a time entry listed for 3.90 hours for a total fee of $1,852.50.  The points only total 3.70 hours for a total fee of $1,757.50.  Difference in fee is $95.00.

01/23/2003    Extended office conference M. Greenberg re substance of conversation with D. Lopo (Skadden) re tax position/rationale (.8); office conference LK re inquiry whether successor liability claims are estate claims or individual creditor claims (.1); memo to KP re same (.2); further review of Sealed Air complaint (.5); memo to A. Taruschio re research issue on nature of successor liability claims (.1); office conferences A. Taruschio re above (.3); office conferences KP re nature of claims and Skadden tax position (.3); memo to M. Sasson re Sealed Air response to complaint (.5); memo to R. Brandes re Raymark case review (.1); memo from A.Taruschio re case law on successor liability (.3); exchanged further memos with A.T. re follow-up inquiries (.2); further memo from AT re response to AK inquiry (.1); further memo to AT re response (.1); memo to R. Brandes re review of applicable Raymark decision (.1).          Krieger, A.      3.9

3.      On January 22, 2003, KP has a time entry listed for 1.50 hours for a total fee of $742.50.  The points only total 1.20 hours for a total fee of $594.00.  Difference in fee is $148.50.

01/22/03      KP    1.50    742.50          Conference call with Skadden, L. Kruger, A. Krieger re settlement terms (.8); attention to same (.4)

4.      On February 4, 2003, AK has a time entry listed for 2.20 hours for a total fee of $1,045.00.  The points only total 2.10 hours for a total fee of $997.50.  Difference in fee is $47.50.

02/04/2003    Memorandum to the Committee re presentation by the Debtors on Curtis Bay (.3); extended telephone conference Jay Sakalo re PD Committee concerns on Curtis Bay (.5); memo to M. Wintner re J. Sakalo conversation (.5); telephone conference W. Katchen re Next Wave case and applicability to Grace (.4); exchanged memos with KP re Committee meeting to discuss revised  Sealed Air Agreement (.1); memo from J. Anderson re meeting (.1); memo from M. Chehi re next meeting (.1); memo from W. Katchen re meeting (.1).
              Krieger, A.      2.2

5.      On February 5, 2003, AK has a time entry listed for 2.50 hours for a total fee of

$1,187.50.  The points only total 1.90 hours for a total fee of $902.50.  Difference in fee is $285.00.

| | |
|---|---|
| 02/05/2003 | Memo to KP, LK re Committee call to discuss revised Sealed Air Agreement (.2); memo to T. Maher re Committee call (.1); office conference LK re circulation of asbestos-related articles to the Committee (.1); memo to W. Katchen re distribution of ABA-related materials (.1); memo from W. Katchen re circulation of materials to the Committee (.1); exchanged memorandum with B. Wolff re expected circulation of revised Sealed Air Settlement Agreement (.2); memorandum to the Committee re meeting to address revised settlement agreement (.2); memorandum to the Committee re asbestos-related articles (.1); review asbestos-related materials (.8).  Krieger, A.     2.5 |

      6.      On February 28, 2003, AK has a time entry listed for 1.50 hours for a total fee of $712.50.  The points only total 0.60 hours for a total fee of $285.00.  Difference in fee is $427.50.

| | |
|---|---|
| 02/28/2003 | Review FTI draft memorandum on DIP and prepare comments thereon (.1); memo to C. Lane re DIP motion (.1); memo to C.Troyer re comments to the draft memorandum (.1); further memos from and to C. Troyer re review of memorandum on amended DIP (.3).          Krieger, A.     1.5 |

<u>Exhibit C</u>

| | | |
|---|---|---|
| 02/04/2003 | VENDOR: Ken Pasquale; INVOICE#: 01/29/03; DATE: 2/4/2003 - 01/23    MTG. IN MIDTOWN - CABFARE | 13.00 |
| 02/05/2003 | VENDOR: Petty Cash; INVOICE#: 02/03/03; DATE: 2/5/2003 - 01/27/03    NY PETTY CASH   A.KRIEGER | 6.00 |
| 02/10/2003 | NYC Two Ways Inc. TARUSCHIO 01/23/03 20:00 M from 180 MAIDEN to E 74 ST | 23.62 |
| 03/06/2003 | NYC Two Ways Inc. BRANDES 02/19/03 21:47 M from 180 MAIDEN to 60    W 23 S | 19.71 |
| 03/12/2003 | NYC Two Ways Inc. KRIEGER 02/25/03 22:00 M from 180    MAIDEN to 10    EAST E | 24.60 |
| 03/12/2003 | NYC Two Ways Inc. CASKADON 02/26/03 20:10 M from 180 MAIDEN to NJ  HOBOKEN | 43.45 |
| 03/19/2003 | NYC Two Ways Inc. BRANDES 03/10/03 21:21 M from 180 MAIDEN to 33    W 71 S | 28.72 |
| 03/19/2003 | NYC Two Ways Inc. CASKADON 03/04/03 18:00 M from 180 MAIDEN to 146    ORCHAR | 14.81 |
| 03/19/2003 | NYC Two Ways Inc. PASQUALE 02/25/03 20:28 M from 180 MAIDEN to NJ  SUMMIT | 77.85 |
| 03/28/2003 | NYC Two Ways Inc. PASQUALE 03/12/03 12:56 M from 180 MAIDEN to 767    3 AVE | 33.44 |
| 03/28/2003 | NYC Two Ways Inc. KRIEGER 03/11/03 21:33 M from 180    MAIDEN to EAST END AVE | 32.25 |
| 03/28/2003 | NYC Two Ways Inc. BRANDES 03/11/03 22:19 M from 180 MAIDEN to 60    W 23 S | 19.71 |

Response Exhibit 1

The Report notes that there were a number of occasions where multiple Stroock professionals prepared for and participated in the same conference calls, meetings or hearings which are identified on Exhibit A to the Report, and seeks an explanation as to why multiple professionals were necessary. (Report at paragraph 6). Exhibit A to the Report identifies ten (10) such conference calls, meetings or hearings where this occurred. In responding to the Report, Stroock has combined several of the conference calls, meetings or hearings.

As a general response, Stroock states that it has informed the Fee Auditor on several prior occasions that the issues in these cases require from time to time the expertise of professionals from different disciplines within Stroock and depending upon the needs of the particular matter at issue, professionals at different levels of responsibility within the same legal discipline. As reflected by the time records generally, Mr. Kruger, a senior partner in the bankruptcy department, while certainly knowledgeable about the day to day motions filed in these cases, focuses on global and all long term plan and chapter 11 strategy and emergence issues, as well as chapter 11 issues of material importance to the Committee. Mr. Pasquale, a partner in the litigation department, focuses upon the asbestos claim issues, in respect of both personal injury and property damage claims, including the ZAI-related issues, the fraudulent transfer claim issues and all related litigation. Ms. Krieger has the day to day overall responsibility for these cases including a review of all motions and pleadings filed in these cases before Judge Fitzgerald, as well as being knowledgeable about the substantive pleadings and decisions filed in, or issued from, the District Court by Judge Wolin, and with Mr. Pasquale, prepares most of the memoranda for the Committee and would be expected to participate in and/or provide input into, the preparation of most of the correspondence or pleadings necessitated in these cases. Mr. Wintner, a partner in the ERISA department, provides his expertise and advise to all employee-related related matters in these cases, including all pension-related issues. It is Stroock's position that each of these professionals play necessary but distinct roles in these proceedings which are not duplicative and for whose services Stroock should be compensated in full.

January 30, 2003 Meeting

This was the initial meeting between representatives for the Department of Justice, on behalf of the Environmental Protection Agency (the "DOJ"), and counsel for the Committee. As is evident from the time records, the meeting which lasted less than 2 hours, addressed issues in respect of the substantial environmental claims held by the Government against the Debtors' chapter 11 estates which need to be dealt with in these cases prior to plan confirmation and in respect of the environmental claims held by the Government during the time-period relevant to the Sealed Air fraudulent transfer litigation. In addition, during this meeting, ex-officio membership by the DOJ on the Committee was discussed. Accordingly, proper representation of the Committee's interests at this meeting with representatives of the Government required counsel from both the bankruptcy and litigation areas of the time, including the presence of Mr. Kruger, who was present for only half of the meeting. Stroock submits that the compensation sought in respect of the services rendered in connection with this matter should be allowed in its entirety.

January 31, 2003 Committee Conference Call

This Creditor's Committee conference call on January 31, 2003 in connection with which Stroock attorneys billed $2,047.00 for a total of 3.8 hours addressed numerous pending matters, including (i) the Debtors' motion for authorization to increase the funding to one of the Debtors' pension plans, an employee and bankruptcy law related matter, with respect to which Mr. Wintner and Ms. Krieger were primarily responsible, (ii) the Debtors' motion to further extend their exclusive periods to file a reorganization plan and solicit acceptances to such plan, a fundamental bankruptcy-related matter, which Mr. Kruger discussed with the Committee, (iii) discussions with DK Acquisition Partners, a holder of a substantial amount of pre-petition bank debt, with respect to its appointment to the Committee, a matter for which Mr. Kruger and Ms. Krieger had primary responsibility, (iv) a report given by Messrs. Kruger and Pasquale in respect of the 1/30/03 meeting with representatives from the DOJ, and (v) the status of the ZAI litigation and issues in respect of the most recent draft of the Sealed Air settlement agreement, for which Mr. Pasquale took primary responsibility.  Stroock submits that the compensation sought in respect of the services rendered in connection with this matter should be allowed in its entirety.

**January 22, 2003 Conference Call**
**February 6 2003 Conference Call**
**February 7 2003 Conference Call**
**February 12 2003 Conference Call**
**February 19 2003 Conference Call**

The amounts available for distribution and the form of consideration provided to the non-asbestos general unsecured creditors represented by the Creditors' Committee and Stroock will be significantly impacted by the resolution of the asbestos-related claims against the Debtors' estates and impacted, although perhaps to a lesser extent, by the resolution of the fraudulent transfer litigation involving the Sealed Air Corporation and Fresenius Medical Care Holdings, Inc.  As a consequence, the terms and structure of the proposed settlements in principle of the Sealed Air and Fresensius' actions announced towards the end of November 2002 were of significant interest to the Creditors' Committee.  The basic terms of the settlement generally call for Sealed Air to pay $512.5 million, plus interest and 9.0 million shares of Sealed Air stock.

In January 2003, the first draft of the Sealed Air settlement was circulated to Stroock and counsel to other parties in interest.  The terms of the initial draft deviated in several important respects with those terms discussed with the Court and other interested parties in November 2002.  The differences adversely impact the non-asbestos general unsecured creditor constituency represented by the Committee.  Stroock communicated to Sealed Air's counsel the modifications that needed to be made to the settlement agreement draft.

During the January 22, 2003 conference call singled out by the Fee Auditor, Sealed Air's counsel responded to Stroock's proposed modifications.    The response heightened the Creditors'

Committee's concerns regarding the structure of the settlement agreement, which was reportedly being driven by tax considerations benefiting Sealed Air, but which structure was disadvantageous, and detrimental to the Debtors' estates and general unsecured creditors represented by the Committee.

The February 6, 2003 conference call singled out by the Fee Auditor, was a brief call that Stroock's professionals had with the Creditors' Committee following the circulation of yet a further revised draft of the proposed Sealed Air settlement agreement.

As a general matter, February 2003 was a period of heightened activity by the parties to the agreement, each of which was attempting to resolve the many issues, both substantive and conceptual, that they respectively had to one or more of the terms of the drafts of the settlement agreement circulated.  Certain discussions with counsel for Sealed Air, counsel for the asbestos committees and counsel for the Debtors, which addressed more global issues to the settlement agreement, such as the discussion held at the February 7, 2003 conference call singled out by the Fee Auditor, were relatively short in duration.  Conference calls, such as those which occurred on February 12, 2003 and on February 19, 2003 were more lengthy as the parties addressed numerous issues to the revised draft then being circulated.

The issues raised by the settlement agreement required expertise from the litigation, insolvency, and tax disciplines within Stroock, and will impact plan negotiations and strategy and emergence issues. Accordingly, proper representation of the Creditors' Committee required the participation of each of Messrs. Kruger and Pasquale and Ms. Krieger in the performance of the distinct roles each of them renders on behalf of the Creditors' Committee.  Mr. Pasquale had attended the hearings before Judge Wolin in which the Sealed Air litigation was the matter on the calendar and was present when the proposed Sealed Air and Fresenius settlements were discussed.  In addition, given that the structure of the settlement agreement was being driven by Sealed Air reportedly for tax considerations, Stroock's tax counsel needed to be kept abreast of the status of discussions and all relevant modifications.  Part of Ms. Krieger's role in attending these conference calls was to be able to communicate to the professionals in Stroock's tax department the status of the agreement and outstanding issues in respect thereof.  Stroock submits that the compensation sought in respect of the services rendered in connection with these conference calls should be allowed in its entirety.

February 7, 2003 Committee Conference Call

This Creditors' Committee conference call on February 7, 2003 in connection with which Stroock's professionals billed $2,455.00 for a total of 4.5 hours was attended by Mr. Kruger, Mr. Wintner and Ms. Krieger.  The Debtors had filed a motion regarding modifications negotiated with respect to one of their pension plans in which the Debtors sought authorization to increase the level of pension benefits to certain of their employees and in connection therewith make a payment in an amount of up to $10.0 million to the pension plan.  This was a follow-up call with the Committee on this matter, which was a subject of the January 31, 2003 Committee conference call.

The Debtors' representatives from their employee benefits/human resources areas, among others, as

well as the Debtors' actuary made a presentation to the Creditors' Committee on this conference call, and answered questions from the Committee and Stroock on this matter.

This matter raises issues in both the ERISA and bankruptcy areas and consequently, Mr. Wintner and Ms. Krieger had primary responsibility for this matter and were both necessary for this conference call with the Committee. Stroock submits that the compensation sought in respect of the services rendered in connection with this conference call should be allowed in its entirety.

March 12, 2003[1] Committee Meeting

This Creditors' Committee meeting held in New York was attended by Mr. Kruger, Mr. Pasquale and Ms. Krieger, who billed an aggregate of $7,374.50 for 12.4 hours of time in connection with preparing for and participating in the meeting. The March 12, 2003 meeting was lengthy, involved a full presentation from the Debtors and their advisers on a number of matters including the Debtors' 2002 business operations and most recent business plan, on the proposed settlements of the fraudulent transfer litigation with Sealed Air and Fresenius, the Zonolite attic insulation litigation on-going before Judge Fitzgerald, other asbestos-related and nonasbestos-related environmental liability issues, and the then proposed extension of the DIP financing facility, among other matters. Both prior to and following the Debtors' presentation, the Committee held interval discussions regarding, among other matters, its position with respect to the DOJs' request for ex-officio status on the Creditors' Committee, and to discuss the Debtors' operations and other pending matters. As already stated, it is Stroock's position that Messrs. Kruger and Pasquale and Ms. Krieger play distinct roles in these proceedings from each other, and bring different and necessary expertise and services to the Committee. Consequently Stroock submits that these services are not duplicative. Given the multitude of asbestos and environmental claims, issues in respect of the proposed fraudulent transfer settlements and ZAI litigation-related issues, along with the panoply of Chapter 11 and reorganization issues, it is imminently understandable why, attorneys from two different disciplines and at different levels would be required at the March 12, 2003 Committee meeting to properly meet the needs of the Creditors' Committee.

While the Committee and its professionals are very cognizant of concerns regarding professional fees incurred in these cases, and makes every effort to avoid duplication of services, it is Stroock's position, in summary, that there are often times when multiple attendance by attorneys from Stroock are required and justified by the circumstances and matters being addressed and that Committee meetings and conference calls addressing significant issues whether in respect of employee-related, asbestos and environmental-related and/or plan negotiation and Chapter 11 emergence-related issues are often those types of circumstances. Stroock believes that the attendance of all of the counsel present at the conferences and meetings identified in the Report by the Fee Auditor was appropriate

---

[1] The Report erroneously identified the date as March 11, 2003. While Mr. Pasquale rendered 0.5 hours of services preparing for the Committee meeting on March 11, 2003, the meeting was on March 12, 2003.

and that allowance of the compensation sought with respect to such services should be granted in its entirety. Stroock refers the Fee Auditor to the case law in support of Stroock's position that was cited to in Stroock's response to the Fee Auditor's initial report to Stroock's fourth quarterly fee application.

Response Exhibit 2

The Report Notes that a total of $337.16 was spent for local transportation throughout the Application period, and requests that Stroock state the purpose of and necessity for these transportation costs, each of which is identified on Exhibit C to the Report.

Stroock has reviewed the transportation costs identified on Exhibit C and of those costs, Stroock is providing an explanation for the following expenses for which it continues to seek reimbursement in full in the aggregate amount of $245.54.

| | | |
|---|---|---|
| 01/23/03 | NYC Two Ways Inc. TARUSCHIO 1/23/03 | 23.62 |
| | 20:00 M from 180 Maiden Lane to E 74th St. | |
| | Car home after working late obtaining and reviewing case law on successor liability issues. | |
| 02/19/03 | NYC Two Ways Inc. BRANDES 2/19/03 | 19.71 |
| | 21:47 M from 180 Maiden Lane to 60 W. 23 St. | |
| | Car home after working late researching tax law and preparing memorandum summarizing the tax implications of the Fresenius settlement agreement | |
| 02/25/03 | NYC Two Ways Inc. KRIEGER 2/25/03 | 24.60 |
| | 22:00 M from 180 Maiden Lance to 10 East E | |
| | Car home after working late preparing a memorandum for the Creditors' Committee discussing Debtors' DIP motion and comments to FTI's DIP-related memorandum | |
| 3/10/03 | NYC Two Ways Inc. BRANDES 3/10/03 | |
| | 21:21 M from 180 Maiden to 33 W 71 S | |
| | Car home after working late on Sealed Air settlement-related matters required for 3/11/03 meeting.14.36[1] | |
| 2/25/03 | NYC Two Ways Inc. PASQUALE 2/25/03 | 77.85 |
| | 20:28 from 180 Maiden to NJ Summit | |
| | Car home after working late on Grace related matters after extended conference call on Sealed Air settlement agreement | |
| 3/12/03 | NYC Two Ways Inc. PASQUALE 3/12/03 | 33.44 |
| | 12:56 M from 180 Maiden Lane to 767 3 Ave. | |
| | Car to Stroock's midtown office for Creditors' Committee meeting | |
| 3/11/03 | NYC Two Ways Inc. KRIEGER 3/11/03 | 32.25 |
| | 21.33 M from 180 Maiden to East End Ave | |
| | Car home after working late on a variety of matters including the fraudulent transfer settlement agreements | |
| 3/11/03 | NYC Two Ways Inc. BRANDES 3/11/03 | 19.71 |

22:19 M from 180 Maiden to 60 W 23 S
Car home after working late to prepare a memorandum for use at
the 3/12/03 Committee meeting discussing the Sealed Air
settlement agreement and related matters.

Stroock is voluntarily agreeing to reduce the amount for which reimbursement is sought in the
Application by the sum of $91.62, representing the aggregate of the transportation charges from
Exhibit C for which no additional explanation is provided above.

## SERVICE LIST
### Notice Parties

**The Applicant**

Lewis Kruger
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038-4982

Rose Serrette
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038-4982

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801