**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF BANKRUPTCY MANAGEMENT CORPORATION**
**FOR THE EIGHTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Fee Application of Bankruptcy Management Corporation for the Eighth Interim Period (the "Application").

**BACKGROUND**

1. Bankruptcy Management Corporation (BMC) was retained as Claims Reconciliation and Solicitation Consultant to the Debtors. In the Application, BMC seeks approval of fees totaling $229,500.25 and costs totaling $9,998.31 for its services from January 1, 2003, through March 31, 2003.

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications

for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on BMC an initial report based on our review, and received a response from BMC, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.    In our initial report, we noted that S. Cohen, S. Herrschaft and M. Grimmett occasionally lumped their time entries. Paragraph II.D.5. of the Guidelines states, ".... Services should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry; ...." We asked BMC to advise these timekeepers to avoid lumping their entries. BMC replied as follows:

> BMC has reminded S. Cohen, S. Herrschaft and M. Grimmett that lump billing is not allowed and requested that they discontinue combining services in one time entry. BMC will make every effort to correct this in the future.

We appreciate the response.

### Specific Time and Expense Entries

4.    We further noted that between January 8, 2003, and March 28, 2003, SH ($210) spent a total of 8.70 hours and $1,827.00 to perform tasks that may have been more appropriate for a professional with a lower hourly rate. The entries are provided below.

| | | | | | |
|---|---|---|---|---|---|
| HERRSCHAFT | $210.00 | 1/8/2003 | 0.5 | $105.00 | Research re: Delaware local noticing rules |

| | | | | | |
|---|---|---|---|---|---|
| HERRSCHAFT | $210.00 | 1/17/2003 | 2.0 | $420.00 | Identify and organize items for M Brown review |
| HERRSCHAFT | $210.00 | 2/13/2003 | 3.2 | $672.00 | Prepare notices for mailing and verify mailing addresses - approx 1500 notices |
| HERRSCHAFT | $210.00 | 2/25/2003 | 0.5 | $105.00 | Compile and send list of e-mail addresses fro Grace b-Linx users to D Espalin. |
| HERRSCHAFT | $210.00 | 3/28/2003 | 2.5 | $525.00 | Research issues re: difficult trade claim reconciliations/questions and respond to L Bogue |

Paragraph I.E., of the Guidelines, states ". . . [i]n evaluating fees for professional services, it is relevant to consider various factors including the following: the time spent; the rates charged; whether the services were necessary to the administration of, or beneficial towards the completion of, the case at the time they were rendered; whether services were performed within a reasonable time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;. . .". We asked BMC to explain why a professional with a lower hourly rate could not have performed the tasks referenced above. BMC's response is provided as Response Exhibit 1. We appreciate the explanation and accept the voluntary reduction of $50.00 in fees for the January 8, 2003 entry. However, we suggest further reductions of one-half the totals for the entries of February 13 and February 25, 2003. On the issue of adjusting rates downward for certain tasks, the Third Circuit seems fond, in the bankruptcy context, of quoting its opinion in *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) that "[r]outine tasks, if performed by senior partners in large firms,

**FEE AUDITOR'S FINAL REPORT** - Page 3
wrg FR BMC 8int 1-3.03.wpd

should not be billed at their usual rates. A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." While BMC's argument for full compensation is not without merit, we still believe that a substantially lower rate than that of Ms. Herrschaft's normal hourly rate is appropriate for the described tasks. We therefore recommend a reduction of $388.50 for these two entries. Coupled with the voluntary reduction of $50.00, we thus recommend a total reduction of $438.50 in these fees.

   5. In our initial report, we noted that on March 5, 2003, two time entries for MG ($175) indicate a total of 6.80 hours and $1,190.00 billed to the estate for meeting with F. Zaremby and R. Finke regarding Prop Damage claim system review and training. The fee detail of both time entries reflects identical language and could be construed to represent a duplication. The entries are provided below.

| | | | | | |
|---|---|---|---|---|---|
| GRIMMETT | $175.00 | 3/5/2003 | 3.0 | $525.00 | Meet with FZaremby and Rfinke re Prop Damage claim system review and training. |
| GRIMMETT | $175.00 | 3/5/2003 | 3.0 | $525.00 | Meet with Fzaremby and RFinke re Prop Damage claim system review and training |

U.S. Bankruptcy Code § 330 (4)(A)(i), states, [e]xcept as provided in subparagraph (B), the court shall not allow compensation for – (i) unnecessary duplication of services; . . ." We asked BMC to clarify why these time entries do not represent a duplication of services. BMC responded as follows:

> The two time entries submitted by M Grimmett for March 5, 2003 for 3.0 hours each and which the Fee Examiner believes are possible duplicates based upon the identical language. Upon review of the invoices attached to the 8th Interim Quarter Fee Application and the March 2003 Monthly Fee Application, it appears that there is a typographical error in the Report with respect to these two entries in question. The

invoices attached to the 8th Interim Quarter and the March 2003 Fee Applications show that these entries are for 3.0 hours and 3.8 hours, respectively, not 3.0 and 3.0 as reflected on the Fee Examiner's Report. While the fee detail reflects identical language, the time expended for each of the entries is different. Essentially Mr. Grimmett is attempting to follow the BMC interal rule of not billing more than 4 hour blocks of time per time entry. In this instance, he has taken his 6.8 hours for an all day training session with Messrs. Zaremby and Finke and divided it into 2 entries of less than 4 hours each with the same description. Mr. Grimmett was under the belief that he could use the same description when splitting his hours if each of the entries had a different amount of time allocated to it. BMC has informed Mr. Grimmett that in the future he can bill more than 4 hours to a time entry if it is for an all day meeting with a client, or if he chooses to continue to split entries over 4 hours into two separate entries, that the second entry must contain the word "continued" so as to differentiate it from the initial split out entry. Since these two entries are not duplicative, but merely a misunderstanding of the application of BMC's internal billing policy, BMC requests that the Fee Examiner approve these two time entries.

We appreciate the response and have no objection to these fees.

6. We noted two entries for meal expenses that, without greater detail, may be viewed as excessive. The entries are provided below.

| | | | |
|---|---|---|---|
| 3/4/03 | zzCorpAMEX_MG | Dinner MG/SH hotel restaurant 3/4-6/03 | $109.93 |
| 3/6/03 | zzCorpAMEX_SH | hotel restaurant 3/4 & 5/03 | $58.24 |

In the first instance, we asked BMC to state the number of meals covered by the entry. In the second, we asked the firm to state the number of meals covered by the entry and whether the expense was for breakfast, lunch or dinner. BMC's response is provided below:

The breakdown for the two meal expenses are as follows:

*3/4/03  zzCorpAMEX_MG     Dinner MG/SH hotel restaurant 3-4 - 6/03    $109.93* is comprised of dinner for M Grimmett on March 4 for $45.98, dinner on March 5 for M Grimmett for $45.98 and breakfast charges of $17.97 on March 5 and 6.

*3/6/03  zzCorpAMEX_SH     hotel restaurant 3/4 & 5/03    $58.24* is comprised of dinner for S Herrschaft on March 4 for $21.49 and dinner on March 5 for S Herrschaft of $36.75.

We appreciate the response. Regarding meal expenses, we suggest a ceiling of $35.00 per person for dinner. For the two M. Grimmett dinner expenses totaling $91.96 on March 4 and 5, we recommend a reduction of $21.96. For the S. Herrschaft dinner on March 5, we recommend a reduction of $1.75. Thus, we recommend a combined reduction of $23.71 in expenses.

7. In our initial report, we noted a parking charge for $90.00 dated March 6, 2003, which seems excessive. The entry is provided below.

3/6/03        zzCorpAMEX_MG        3/4-6/03                                        $90.00

Given that Herrschaft shows a parking charge of $49.34 for the same dates, we asked BMC to explain why the $90.00 charge should not be viewed as excessive. BMC's response is provided below.

> BMC will reduce the amount of parking reimbursement for M Grimmett from $90.00 to $49.34 (the same amount expended by Ms. Herrschaft). Ms. Herrschaft and Mr. Grimmett park in different parking structures associated with their respective airlines, and the parking structures charge different amounts.

We accept the response and thus recommend a reduction of $40.66 in this expense.

## CONCLUSION

8. Thus, we recommend approval of fees totaling $229,061.75 ($229,500.25 minus $438.50) and costs totaling $9,933.94 ($9,998.31 minus $64.37) for BMC's services from January 1, 2003, through March 31, 2003.

Case 01-01139-AMC    Doc 4075    Filed 07/18/03    Page 7 of 12

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
Warren H. Smith
Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 4080
Dallas, Texas 75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 18th day of July, 2003.

_____
Warren H. Smith

**FEE AUDITOR'S FINAL REPORT** - Page 7
wrg FR BMC 8int 1-3.03.wpd


## SERVICE LIST
Notice Parties

**The Applicant**

Sean A. Allen, President
Bankruptcy Management Corporation
6096 Upland Terrace South
Seattle, Washington 98118

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Response Exhibit 1

With respect to the five (5) time entries for Sue Herrschaft for 8.70 hours and $1,827.00 that the Fee Examiner noted may have been more appropriate for a professional with a lower hourly rate, BMC submits the following:

Items a), b) and c) of the time entries relate to the schedule amendments in these cases - which turned into an extremely complicated and complex assignment, due in part to the sheer number of schedules to be amended, and in part to the non-data format of the information provided to BMC for use in preparing the amendments. As a result, BMC had to convert the non-data format of the information provided into some type of data format, create data comparison programs to systematically match the bulk of the non-data information to the invoice information in BMC's system, and then manually review all the systematic matches to ensure that the correct schedule record was amended. Due to the complexity of the schedule amendment project, Ms. Herrschaft was intimately involved in the conversion of the non-data formatted information, and the issues that arose as a result of: i) multiple schedule amendments for a single creditor; ii) creditors with multiple b-Linx schedule records of which only certain records were being amended; iii) combining and reconciling the b-Linx records into a single schedule record to produce a single custom notice; and iv) resolving the discrepancies between the non-data information received, the data records maintained by BMC and the actual schedules filed.

> a) *January 8, 2003 entry for 0.5 hours and $105.00 with a description of "Research re: Delaware Local Noticing Rules"* – BMC submits that this entry should be allowed since it related to the noticing of the schedule amendments contemplated by the Debtors. However, since Ms. Herrschaft failed to properly provide an adequate description that would support the use of a professional at her hourly rate, BMC will voluntarily reduce the rate charged on this from $210.00 per hour to $110.00 per hour. Therefore, the accompanying amount for 0.5 hours at $110.00 per hour would be $55.00 for this entry, a $50.00 reduction. BMC requests that the Fee Examiner allow the entry and the hours at the reduced rate.

> b) *January 17, 2003 entry for 2.0 hours and $420.00 with a description of "Identify and organize items for M Brown review."* This description does not provide adequate information to allow the Fee Examiner to determine that this task was performed by the appropriate hourly rate professional. In this instance, the items that Ms. Herrschaft was identifying and organizing for M Brown's review related to the amendments to the Debtors Schedules – identification of schedule amendments with discrepancies for review and supplemental information by the client. Ms. Herrschaft performed the identification and organization of the items as she was the person at BMC with the most knowledge of the schedule amendments. To have assigned this task to a lower billing rate professional who lacked Ms. Herrschaft's intimate knowledge of the issues related to the schedule amendments would have resulted in substantially higher billing for the project as a whole, as Ms. Herrschaft would have had to review all the work performed by the lower rate person to ensure that all the discrepancies and issues were identified. Based thereon, BMC requests

that the Examiner approve the fees associated with these services. BMC and Ms. Herrschaft will make every attempt in the future to provide a more adequate description of her time expended.

c)      *February 13, 2003 entry for 3.2 hours and $672.00 with a description of "Prepare notices for mailing and verify mailing addresses – approx 1500 notices."* Essentially this task related to the final preparation of the notices of schedule amendments that were transmitted to all affected parties. In order to ensure that the data efforts of BMC were accurately reflected in the individualized notices prepared for each affected creditor (showing their original schedule information and the schedule amendment), Ms. Herrschaft, as the person most knowledgeable with the issues related to the schedule amendments and BMC's efforts with respect thereto, reviewed and verified each of the individualized notices against the information provided to ensure that the correct schedule record was reflected on the notice as being amended, and that the corresponding mailing address for that schedule record appeared on the notice of schedule amendment. Based on the complexity of the schedule amendment project, and Ms. Herrschaft's intimate knowledge of the issues involved, BMC requests the Fee Examiner approve the fees requested in this entry.

d)      *February 25, 2003 entry for 0.5 hours and $105.00 with a description of "Compile and send list of e-mail addresses for Grace b-Linx users to D Espalin."* This task resulted from a request made in connection with the set up of a demo version of b-Linx for Grace users to test various functions without affecting live data. In order to ensure that all the Grace users were included in the demo version, a list had to be compiled for D Espalin of BMC's IT department. Ms. Herrschaft has been maintaining Grace user information in various locations in the system. While a lower rate employee could have compiled this list, it would have cost more in the end, as Ms. Herrschaft would have had to expend time directing the lower rate employee on where to locate the information, and review the collected information to ensure that it was accurate. Ms. Herrschaft would still have ended up spending the same 0.5 hours of time in directing the lower rate employee and in reviewing the results of the lower rate employee's work, but the costs would have increased for the time expended by the lower rate employee. Since Ms. Herrschaft knew the location of all the necessary information, and the parties necessary to complete the list for the IT department, it made more sense to have her prepare the master list rather than expend two BMC employees to prepare the same information. Based thereon, BMC believes that it utilized the most knowledgeable employee to complete the work in the most cost-efficient manner for the benefit of the estate and requests that the Examiner approve the fees.

f)      *March 28, 2003 entry for 2.5 hours and $525.00 with a description of "Research issues re difficult trade claim reconciliations/questions and respond to L Bogue."* Ms. Herrschaft was reviewing specific trade claim reconciliation issues and questions referred to her from the Claims Reconciliation Department (of which Ms. Bogue is a member) that arose during their review of the claims in this case. The Claims Reconciliation Department reviews and reconciles claims based upon definitions established by BMC for each case, and

is staffed by lower billing rate employees. The claims and questions referred to Ms. Herrschaft were exceptions to the WR Grace definitions and involved, among other things, resolution of ambiguous invoice details, amount discrepancies or incomplete schedule matches. Ms. Herrschaft reviewed the claims, the reconciliation issues and questions and provided the Claims Reconciliation Dept with her feedback. The information provided by Ms. Herrschaft is now incorporated into the BMC definitions for the WR Grace case, and similar claims will be treated according to the information provided by Ms. Herrschaft, and will not require referral to a higher billing rate person. Therefore, BMC requests that the Fee Examiner allow the time and fees for this entry.