IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., <u>et al.</u> | ) | Case No. 01-01139 |
| | ) | **Jointly Administered** |
| | | **Response Deadline: July 18, 2003** |
| | | **Hearing Date: July 28, 2003** |

**REPLY MEMORANDUM IN SUPPORT OF THE MOTION OF
ROBERT COSTA AND RONALD THORNBURG FOR RELIEF FROM STAY
UNDER 11 U.S.C. § 362 OF THE BANKRUPTCY CODE**

Robert Costa and Ronald Thornburg respectfully submit this Reply Memorandum in response to Debtors' Objection to Reply Memorandum in Support of the Motion of Robert Costa and Ronald Thornburg for Relief from Stay under 11 U.S.C. § 362 of the Bankruptcy Code.[1]

**I.  COSTA'S AND THORNBURG'S CLAIMS AGAINST BAKER & TAYLOR, INC. WERE NEVER PROPERLY SUBJECT TO A STAY RESULTING FROM W.R. GRACE & CO.'S BANKRUPTCY.**

W.R. Grace & Co. and its fellow debtors in this bankruptcy proceeding (collectively, the "Debtors"), argue strenuously - albeit, for reasons stated below, incorrectly - that the stay that has been issued on the False Claims Act lawsuit initiated on behalf of the United States and California by Movants Robert Costa and Ronald Thornburg ("Movants") should be exempt from normal rules excluding liability determinations in False Claims Act ("FCA") lawsuits from such stays. However, with respect to application of the stay in this proceeding to Baker & Taylor, Inc. (W.R. Grace & Co. -

---

[1] References to Exhibits are to Exhibits contained in Appendix to Reply Memorandum in Support of the Motion of Robert Costa and Ronald Thornburg for Relief from Stay Under 11 U.S.C. § 362 of the Bankruptcy Code which is being filed with the Court. Copies to the Appendix may be obtained from Movant's Counsel.

Connecticut's co-defendant in the False Claims Act lawsuit), Debtors have offered no colorable justification as to why Costa's and Thornburg's requested relief should be denied.

Debtors do not dispute the observation made in Movants' opening brief that Baker & Taylor, Inc. is separate corporate entity from Debtors that is owned by parties unrelated to Debtors and that is not seeking bankruptcy protection in this proceeding. Indeed, the only mention of Baker & Taylor, Inc.'s potential liability to Movants that appears in Debtors' opposition papers is their unsubstantiated assertion that a finding of liability against Baker & Taylor, Inc. could lead to an indemnity claim by that company against W.R. Grace & Co. - Connecticut ("W.R. Grace") pursuant to a 1991 agreement that Debtors have not elected to provide this Court. See Debtors' Objection to Motion of Robert Costa and Ronald Thornburg for Relief from Stay Under 11 U.S.C. §362 of the Bankruptcy Code ("Debtors' Objection"), at 9.

Debtors, however, fail to establish the legal basis upon which the mere possibility of such a future contract claim by Baker & Taylor, Inc.[2] can be used by Debtors in this action to preclude Movants from pursuing their distinct legal claims against Baker & Taylor. In effect, Debtors argue that their bankruptcy petition should bar not only direct suits against Debtors themselves, but also all suits against any unrelated third party that might later be able to claim, by contract, a right of contribution or indemnity from a Debtor (absent an enforceable contractual agreement, no such right would exist in

---

[2] As noted in Movants' original brief, under the False Claims Act, Baker & Taylor, Inc. is jointly and severally liable for their continuation of the fraud since they were incorporated in 1992, and no right of contribution or indemnification normally exists. See, e.g., United States ex rel. Wiser v. Geriatric Psychological Services, Inc., 2001 WL 286838 (D.Md.)("defendants have no right of contribution or indemnification under the False Claims Act"). While Debtor asserts that a 1991 contractual agreement between W.R. Grace and Baker & Taylor, Inc. exists "governing Grace's

FCA and other fraud-based actions). Bankruptcy protection does not extend so far. See, e.g., Wedgeworth v. Fibreboard Corp., 706 F.2d 541, 544 (5th Cir. 1983) ("[T] protections of § 362 neither apply to co-defendants nor preclude severance."); In re Related Asbestos Cases, 23 B.R. 523, 529 (N.D.Cal. 1982)("[C]ases emphasize consistently that section 362 and its analogous predecessors serve to protect the estate of the bankrupt alone and do not encompass actions against related but independent codefendants.")

Nor is this a case in which it even could be argued persuasively that non-bankrupt Baker & Taylor, Inc.'s False Claims Act liability to Movants would be indemnifiable "successor liability" based on the conduct of Debtors. Baker & Taylor, Inc. was sued in the FCA action on the basis of its own continuation of the pattern of fraudulent conduct that W.R. Grace after it was spun off from W.R. Grace and sold. Indeed, Baker & Taylor, Inc. did not exist until its spin off from W.R. Grace. It thus could not have participated in a conspiracy with W.R. Grace that the FCA plaintiffs alleged until after it was formed and the misconduct at issue was its own, and not that of its predecessor division of W.R. Grace. Surely, any indemnity agreement that might have been created at the time of the sale of Baker & Taylor, Inc. would not protect Baker & Taylor, Inc. from the consequences of its own misconduct. No doubt that is why Debtors elected not include the indemnity agreement they purport to rely upon as an exhibit to their objection brief.[3]

---

disposition of Baker & Taylor," Debtors' Objection at 9, they neither provide a copy of the agreement nor seek to explain how any such indemnity could apply to Baker & Taylor's misconduct after 1991.

[3]    Moreover, as mentioned in Movants' opening brief, when Baker & Taylor, Inc. was incorporated and spun off by W.R. Grace in 1992, it was sold to investors that included the individuals who were the top management for Baker & Taylor Books while it remained an unincorporated subsidiary of W.R. Grace. Because those managers-turned-owners planned and initiated the fraud Costa and Thornburg alleged, both before and after the spin-off, it is highly doubtful that any

Should Baker & Taylor, Inc. ever seek to recover indemnity from W.R. Grace notwithstanding the obvious factual bars to such a claim, Debtors remain amply protected from unwarranted imposition of liability.  Application of the bankruptcy stay to any indemnification claim brought directly against Debtors would achieve the result Debtors claim they desire.  It is thus neither necessary to protect Debtors nor fair to Movants to use the shield of bankruptcy proceedings to delay claims against non-bankrupt Baker & Taylor, Inc. based on the small possibility that Baker & Taylor, Inc. may seek to pursue a future claim for contractual indemnity against W.R. Grace when its own liability to Movants is established.

## II. THE BANKRUPTCY STAY SHOULD ALSO BE LIFTED AS TO W.R. GRACE PURSUANT TO THE POLICE POWER EXEMPTION.

### A. The "Police Power" Exemption to Bankruptcy Stays that Normally Applies to Liability Determinations in False Claims Act Lawsuits Applies to Movants' Claims.

Debtors concede that courts have recognized that qui tam suits under the False Claims Act fall within the "police power" exception to the bankruptcy stay.  Debtors' Objection, at 6.  But they argue the normal rule should not apply to Movants' case because they were dismissed from the FCA action by the district court.  Id.  Debtors' argument rests on the presumption that the orders of the district court dismissing Costa and Thornburg as FCA "relators" were correct.  That, however, is the very issue that Costa and Thornburg are now seeking opportunity finally to appeal.[4]  The legal foundation upon which Debtors rest their argument for maintaining the stay as it applies to Movants' direct claims against

---

indemnification (or even any contribution) agreement would be enforceable.  Such enforcement would pay those owners back from W.R. Grace funds for their own fraudulent misconduct that they initiated while they were still working as W.R. Grace employees.

[4]  The cases Debtors' cite in support of their assertion that improper relators are not entitled the rights granted to proper qui tam plaintiffs, id. at 7, similarly are relevant only after it is finally determined whether Movants are proper relators in the FCA action they initiated.  Because that issue is the crux of what needs to be finally resolved on appeal, those cases provide no support for Debtors' position that Movants should be denied the right now to pursue their appeal.

Debtors thus <u>is not a final judgment</u>, even in front of the district court that issued the orders.[5]  Indeed, it is Debtor W.R. Grace's procedural manipulations in those proceedings that stopped a final judgment from being entered in that matter, despite the fact that Debtors long ago satisfied their financial obligations to all government plaintiffs and no issues remain between them and the government plaintiffs in that case.

Debtors acknowledge that the reason a stipulation of dismissal was not entered in the FCA action after settlement was reached with the United States, California, and other intervening states that were victimized by Debtors' fraud, is that W.R. Grace "would not enter into a Stipulation of Dismissal of the Action with the United States."  Debtors' Objection, at 5.  What Debtors do not inform this Court is that the reason for that refusal was the continued pendency of a criminal investigation of its conduct by the office of the United States Attorney for the District of New Jersey.[6]  Nor do Debtors frankly acknowledge here that the collateral benefit W.R. Grace has obviously gained in delaying formal resolution of the FCA action has been to complicate and delay entry of the final judgment in the district court that Costa and Thornburg need to be able to appeal their wrongful dismissal from that action as a matter of right.  <u>See</u> Federal Rule of Civil Procedure 54(b).

The Supreme Court has recognized that relators in False Claims Act lawsuits serve the interests in those actions both of the government entities in whose name the proceedings are brought and, due to the statutory assignment to relators of various rewards, their own personal interest in seeking fraud redressed as well.  <u>Vermont Agency of Natural Resources v. United States ex rel. Stevens</u>, 529 U.S.

---

[5]   A decision failing to adjudicate the rights and liabilities of all parties, while not normally a final judgment, can be certified as final pursuant to Federal Rule of Civil Procedure 54(b). *See Thompson v. Betts*, 754 F.2d 1243, 1245 (5th Cir.1985), ("In certifying a decision as final for appellate jurisdiction purposes, the district court must comply with the requirements set out in Rule 54(b)." *See id*.  "Until the district court makes an express determination that no just reason for delay exists and expressly directs entry of judgment, finality will not attach to an order that disposes of some but not all of the [claims or parties]. *See* Fed. R. Civ. P. 54(b).").

[6]   Movants' understanding of this issue is based on what they were told by the United States after W.R. Grace's settlement with the government plaintiffs.

765, 120 S.Ct. 1858 (2000).  Indeed, it is by awarding relators for acting as "private attorney generals" that Congress designed the qui tam provisions of the FCA to encourage would-be whistleblowers not only to expose fraud but also to aid the United States in prosecuting it.  The False Claims Act authorizes both the Attorney General and private persons to bring civil actions to enforce the Act and is the government's "primary litigative tool for combating fraud" against the federal government.  United States ex rel. Kelly v. Boeing Co., 9 F.3d 743  C.A.9 (Cal.)1993, *citing* Senate Judiciary Committee, False Claims Amendments Act of 1986, S.Rep. No. 345, 99th Cong., 2d Sess. 2 (1986).  Congress amended the FCA in 1986 to increase the financial and other incentives for private individuals to bring suits under the Act and thereby to enlist the aid of the citizenry in combating the rising problem of "sophisticated and widespread fraud." Id., citing S.Rep. No. 345 at 2, 23-24, *reprinted in* 1986 U.S.C.C.A.N. at 5267, 5288-89.    The statutory attorneys' fees and expenses that Movants ultimately hope to recover from Baker & Taylor, Inc. and/or in part from W.R. Grace (through their claim in this bankruptcy proceeding) are part of the remedies that Congress made mandatory to be paid to proper relators whenever a qui tam action has resulted in a recovery to the United States by judgment "or settlement."  See 31 U.S.C. §3730(d)(1) (proving in the event of judgment or settlement that a relator "shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs.  All such expenses, fees, and costs shall be awarded against the defendant.")(emphasis added).  Debtors' effort to separate from the police power exemption Movants' interest in establishing on appeal their proper standing as relators would substantially undermine the effectiveness of the qui tam policing provisions of the FCA because it would reduce relators' ability and incentive to help the Department of Justice fight fraud in the manner Congress intended when it amended the False Claims Act in 1986.

Reply Final1_

**B.      The Balance of Equities in this Matter Clearly Weigh in Favor of Lifting the Stay.**

If the Court determines that a balancing of interest analysis is necessary to decide this matter notwithstanding the exemption from bankruptcy stays that normally applies to FCA matters, Costa's and Thornburg's motion should nonetheless be granted.

1.      Debtors Would Suffer No Prejudice Were the Stay Lifted.

With respect to Costa and Thornburg's request for a ruling making clear that their FCA claims against Baker & Taylor, Inc. are not properly subject to a stay based on W.R. Grace's bankruptcy petition, it is clear for the reasons set forth above that Debtors would suffer no prejudice from the relief Costa and Thornburg seek.  As a separately owned and incorporated business entity, Baker & Taylor, Inc. was never properly subject to the benefits of Debtors' stay. See Debtors' Objection at footnote 1 (listing all entities that are subject to the bankruptcy, a list that does not include Baker & Taylor, Inc.).  Moreover, even to the extent that an enforceable contract may exist between Baker & Taylor, Inc. and Debtors if Baker & Taylor ultimately is found liable to Costa and Thornburg for their FCA attorneys' fees and expenses, Debtors' legitimate bankruptcy protections would remain unaffected.  Not until Baker & Taylor, Inc. actually pays Costa and Thornburg would any right of action against W.R. Grace by Baker & Taylor, Inc. arise, and that action would properly be subject to any bankruptcy stay or resolution then in effect.  The fact that a legally distinct co-defendant might have to pay Movants' claim has no bearing on Debtors' bankruptcy rights at all.

Similarly, Debtors face no genuine risk of prejudice from having Movants' appeal move forward.  The sole issues that remain in the FCA case are whether Costa and Thornburg are proper relators and, if so, the appropriate amount of attorneys' fees and expenses that are due.  These are not

complex factual disputes that will require exhaustive and expensive litigation. The merits work on the False Claims Act case was finished before Debtors declared bankruptcy. W.R. Grace, moreover, can continue to rely on its co-defendant, Baker & Taylor, Inc., to help with their common objective winning an appeal.

      2.      <u>The Balance of Hardships Favor Lifting the Stay</u>.

Any effort to weigh the balance of hardship of lifting the stay must begin with recognition that, by refusing to sign the stipulation of dismissal that accompanied its settlement with the United States, W.R. Grace has manipulated the proceedings in the district court proceeding so as to substantially complicate and delay Costa and Thornburg's opportunity to secure the procedural <u>right</u> to pursue an appeal. Indeed, even if Costa's and Thornburg's current motion is granted, they still will be forced to ask the district court to enter a final judgment notwithstanding W.R. Graces' continued refusal to stipulate to the dismissal of the case that it has already settled with the government plaintiffs. With more than $700,000 in attorneys' fees and expenses at issue-- for which W.R. Grace and its non-bankrupt co-defendant Baker & Taylor, Inc. are jointly and severally liable-- maintenance of the current stay as to both defendants works a very substantial and wholly unjust hardship on the individual Movants.

Were the stay to be lifted as to Baker & Taylor, Inc. alone, Debtors would experience no hardship at all. The FCA case against Baker & Taylor, Inc. could be severed from the case against W.R. Grace and appealed separately.

If the stay more properly were lifted as to both Baker & Taylor, Inc. and W.R. Grace, the hardship to Debtors (huge corporations) would be minimal. To wrap up liability issues in the FCA litigation, W.R. Grace would at most be required to file appeal briefs and review and (if they thought needed) challenge the amount of Movants' fee and expense application. W.R. Grace would not be

Reply Final1_

required to pay outside of the bankruptcy proceedings any fees and expenses of Movants that ultimately were found due. And they would have the option in conducting the limited litigation that remains simply of reviewing, commenting on, and signing on with briefs and positions of Baker & Taylor, Inc.

Lifting the stay also would not result in a slew of motions from other creditors as Debtors seek to suggest. Because Movants request is based on the unique factual and legal circumstances of the False Claims Act case they initiated, granting the relief the request would not benefit or encourage motions by any creditor who was not similarly situated. Debtors point to no other such creditor, and Movants are aware of none.

3. <u>Costa and Thornburg are Highly Likely to Succeed on Their Appeals.</u>

The basis upon which Costa and Thornburg were dismissed as relators in the FCA action are different, but equally wrong.

Thornburg was dismissed based on the district court's conclusion that he was sufficiently aware of the nature of defendants' misconduct more than six years prior to filing suit so as to be subject to the six-year minimum statute of limitations of the Act. <u>See</u> 31 U.S.C. §3731(b). A copy of that decision is attached to Debtors' Objection as Exhibit A. Whether that determination is correct will be just one subject of Thornburg's appeal. A more fundamental problem with the court's opinion is its failure to deal correctly with the fact that Costa and Thornburg sued on <u>a pattern</u> of separate False Claims Act violations in their complaint that started ten years prior to the June 1, 1995 filing of their complaint and <u>that continued up to and including</u> the filing of their complaint. The unanimous conclusion of every other court to review the issue is that the statute of limitations for False Claims Act violations runs separately from each violation of the Act. <u>See</u>, <u>e.g.</u>, <u>United States ex rel Kriendler & Kreindler v. United Technologies Corp.</u>, 985 F.2d 1148, 1157 (2d Cir.), <u>cert.denied</u>, 508 U.S. 973 (1993); <u>United States</u>

v. Incorporated Village of Island Park, 888 F.Supp. 419, 441-42 (E.D.N.Y. 1995). Because 60% or more of the false claims at issue in the FCA case occurred within six years of June 1, 1995, the district court should not have dismissed Thornburg altogether as a relator entirely even if it is found on appeal to have correctly concluded that he was precluded from being a relator for any false claim submitted by defendants more than six years before Movants' FCA case was filed.

There is a similar disconnect between the district court's stated basis for dismissing Costa from the action based on the False Claims Act's "public disclosure" bar and the timing of the sole "public disclosure" upon which the court based its ultimate decision.[7] In denying Costa's motion to reconsider the court's ruling dismissing him on public disclosure grounds, the district court ultimately relied exclusively on a 1979 article in a journal for public librarians in which it was alleged that a public library in Cleveland, Ohio was the victim of pricing fraud of a type similar to that alleged in Movants' FCA complaint. In determining, however, that such a 1979 article could constitute public disclosure of the false claims Movants brought to the attention of the United States and California, the court gave no weight to the fact that the conduct alleged in 1979 must have occurred at least 16 years prior to Movants' suit. The article thus could not possibly be referring to the same transactions as were at issue in Movants' action. This is because the maximum statute of limitations under both the federal and California false claims acts is 10 years, even where there has been a delay in the discovery of the fraud. See 31 U.S.C. §3731(b). Movants' FCA action touched on false claims that all occurred at least 6

---

[7] Debtors have attached only the court's initial order regarding the public disclosure issue that led to Costa's dismissal. See Debtors' Objection, Exhibit B. Attached hereto as Exhibit 1 is a copy of the court's order denying Costa's motion to reconsider.

years and as many as 16 years after the so-called "first toot of alarm" that supposedly alerted the United States and California to the later-occurring false claims Movants' sued in their qui tam action.

Nor did the court give weight to the fact that the uncontradicted, documentary evidence showed that one major component of the fraud against public libraries that Movants' detailed in their complaint was not even invented by defendants until 1986, seven years after the article that is said to have publicly disclosed such fraud. Similarly, the court failed to give weight to the fact that neither direct (non-public library) purchases by California nor the United States were issues covered in that 1979 article (although they were alleged victims in Movants' complaint) or to the substantive distinct allegation made by Movants that the defendants violated "best price" clauses included by the United States in contracts for book purchases for federal agency libraries.

The strength of Movants' case on appeal is evidenced as well by the fact that both the United States and California supported Movants' opposition to their dismissals (despite the savings on relators' awards such a dismissal could gain them) and agreed thereafter to pay a relators' share award despite the district court's rulings rather than risk being liable for a higher award percentage should relators prevail on appeal. Similarly, the unusual procedural tricks Debtor has played (before W.R. Grace filed for bankruptcy) to avoid entry of final judgment in the FCA matter[8] is indicative of their concern about the merits of an appeal as well.

---

[8] The notion raised in Debtors' Objection, at 5, that W.R. Grace refused to file a stipulation of dismissal based on unspecified conduct of the United States is facially suspect. How could W.R. Grace's refusal to have an FCA case against it formally dismissed after it had already fully paid its FCA liability to the government possibly work to its advantage vis-a-vis the United States? The only obvious advantage to W.R. Grace in behaving in such a fashion would be to preclude an appeal by relators and thereby avoid or delay the risk of liability for their substantial attorneys' fees and expenses in helping the government prove their case.

Debtors suggest finally that any appeal by Movants is moot because the terms of the settlement agreement that they entered into with the United States, "on behalf of itself, its officers, *agents*, agencies, and departments," included a release for any civil or monetary claims under the FCA. Debtors' Objection, at 12 (emphasis supplied by Debtors).[9]  Debtors' contention that Movants are "agents" of the United States within the meaning of that release is facially specious.  Having purposefully excluded separately-represented parties from settlement discussions (and, indeed, ceasing even to serve Costa and Thornburg with any pleadings or other court papers in the FCA action after their dismissal - including, notably, the settlement agreement they now rely upon), it is absurd for W.R. Grace to claim that Costa's and Thornburg's rights are extinguished by boilerplate release language of another party. The assertion is also inconsistent with Debtor's contention that Costa and Thornburg no longer could claim the benefit of the police power exemption from bankruptcy stays of litigation once dismissed because they could no longer be said to be "agents for a governmental unit" of the United States.  See id., at 2.

Moreover, whatever, can be argued about the continued power of Costa and Thornburg to act as "agents" of the United States in the FCA action once it has intervened and settled its own claims in the case, it is clear under the terms of the statute that the United States could not act as an agent of Costa and Thornburg with the power unilaterally to compromise the separate rights that Congress granted relators under the False Claims Act.  See Stevens, supra; 31 U.S.C. § 3730(c)) (setting forth

---

[9]  No similar argument is made by Debtor with respect to their settlement with California of the states' interest in the California False Claims Act action.  But, even if such an argument were to be advanced belatedly, the same obvious flaws exist with respect any assertion that California intended to release or could release relators' rights as exist under the federal statute.

the rights and awards as relators as distinct parties to qui tam actions). And the settlement agreement Debtors refer to makes clear that the United States never intended to do so.[10]

---

[10] Movants were today provided by Debtors with a fax copy of that settlement agreement, the very first paragraph of which lists on whose behalf the United States is acting. Movants Costa and Thornburg are not included. See Exhibit 2, hereto. Additionally, paragraph 6 of that agreement provides that the original settlement between Baker & Taylor, Inc. continues to control that defendant's settlement with the United States. Id. That agreement between the United States and Baker & Taylor, Inc. provides that "No party to this Agreement is acting as the agent of any other party, individual, or entity." See Exhibit 3, hereto, at paragraph 13.

Reply Final1_

### III. CONCLUSION

For all the reasons set forth above and in the original motion, Costa and Thornburg respectfully request that the automatic stay be lifted in the matter of United States of America ex rel. Robert Costa and Ronald Thornburg and State of California ex rel. Robert Costa and Ronald Thornburg v. Baker & Taylor, Inc., d/b/a Baker & Taylor Books ("Baker & Taylor") and W.R. Grace & Co. -- Connecticut ("W.R. Grace"), CIVIL NO. 95-1825(vrw), so that they can pursue their appeal, collect from the non-bankrupt co-defendant Baker & Taylor, Inc., and establish the validity and extent of their claim in bankruptcy against W.R. Grace & Co. - Connecticut.

Dated: July 18, 2003

        Dilworth Paxton LLP

By: /s/ Martin J. Weis
    Martin J. Weis (DE No. 4333)
    Derrick A. Dyer (WI No. 10238)
    First Federal Plaza
    Suite 500
    Wilmington, DE 19801
    (302) 571-9800

and

Phillips and Cohen LLP

Peter W. Chatfield
Phillips & Cohen, LLP
2000 Massachusetts Ave., NW
Washington, D.C. 20036

Reply Final1_