# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement ("Agreement") is entered by and between the United States of America, acting through its Department of Justice and the United States Attorneys' Office for the Northern District of California, and on behalf of various departments and agencies, including the United States Department of Defense, the Library of Congress, and the United States Department of Education (collectively referred to as the "United States"), the State of California and its political subdivisions acting through the Attorney General of the State of California (collectively referred to as "California"), the following states by their respective Attorneys General: Arkansas, Connecticut, Florida, Hawaii, Idaho, Kentucky, Massachusetts, Minnesota, Missouri, Nevada, New Mexico, North Carolina, Oklahoma, Tennessee, Texas, Vermont and Wisconsin (collectively referred to as the "17 States"); Baker & Taylor, Inc. ("B&T") and W.R. Grace & Co. – Conn. ("WRG"). Collectively, the United States, California and the 17 States will be referred to as the "Plaintiffs." Collectively, B&T and WRG will be referred to as the "Defendants." Collectively, all of the above will be referred to as the "Parties."

## PREAMBLE

A.    WHEREAS, this Agreement addresses the Plaintiffs' civil claims against the Defendants, based on the conduct described in Preamble Paragraphs F through G below and the conduct alleged in United States et al. v. Baker & Taylor, Inc., et al., No. 95-1825 VRW (Northern District of California) (filed under seal June 1, 1995), including allegations contained in the Fourth Amended Complaint and the Complaint in Intervention;

B.    WHEREAS, B&T is a Delaware corporation incorporated in December 1991 and headquartered in Charlotte, North Carolina;

[12757-0058/LA003681.9761]

DB
7-31-00

Final Settlement Agmt.
July 31, 2000

C.      WHEREAS, WRG is a Connecticut corporation headquartered in Columbia.
Maryland:

D.      WHEREAS, at relevant times, the Defendants operated a wholesale book
distributing business throughout the United States;

E.      WHEREAS, the Defendants submitted or caused to be submitted claims for
payment to agencies of the United States, its departments, and agencies;

F.      WHEREAS, the Plaintiffs allege that since at least 1980, the Defendants
breached contracts and violated federal and state statutes and/or common law doctrines in
connection with the marketing and sale of books to various agencies and departments of the
United States, the State of California and the 17 States, and to schools, universities, library
associations, and library associations nationwide (some of which received federal and/or state
grant funds), by categorizing deeply discounted "trade" books as short discount books,
violating contractual agreements with these governmental agencies, departments, schools,
universities, library associations, and libraries, and engaging in other practices as set forth
more fully in the Fourth Amended Complaint and in the Complaint in Intervention;

G.      WHEREAS, the Plaintiffs allege that the practices described in Preamble
Paragraph F above resulted in the submission of false or fraudulent claims actionable under
the federal, California, Florida, Hawaii, and Massachusetts False Claims Acts, under various
state consumer protection and unfair or deceptive trade practices statutes, for breach of
contract, and under the common law theories of unjust enrichment and payment by mistake,
to agencies, departments and grantees of the United States (including the Department of
Defense and the Library of Congress), California, the 17 States, including schools,
universities, library associations, and libraries across the United States, which enabled the

Defendants to claim and receive payments improperly from governmental agencies, departments, and grantees, and schools, universities. library associations. and libraries;

H.      WHEREAS, the 17 States brought their Complaint in Intervention on behalf of themselves, their agencies and units of government, and as *parens patriae*, to enforce their respective deceptive practices laws and to assert such other claims as are set forth in the Complaint in Intervention;

I.      WHEREAS, the Defendants deny the allegations of the Plaintiffs contained in the Fourth Amended Complaint and Complaint in Intervention;

J.      WHEREAS, effective June 25, 1999, B&T and the United States previously reached a full and final compromise of certain civil claims the United States had against B&T, as set forth in the settlement agreement dated June 25, 1999 ("June 25 Settlement Agreement");

K.      WHEREAS, in order to avoid the delay, expense, inconvenience and uncertainty of protracted litigation of these claims, the Parties mutually desire to reach a full and final compromise of the civil claims the Plaintiffs may have against the Defendants arising from the conduct referred to in the Preamble above, pursuant to the statutes and terms set forth in Paragraphs 1-15 below, except as reserved in Paragraph 5 below.

## TERMS AND CONDITIONS

NOW, THEREFORE, in reliance on the representations contained herein and in consideration of the mutual promises, covenants, and obligations in this Agreement. and for good and valuable consideration, receipt of which is hereby acknowledged, the Parties hereby agree as follows:

Final Settlement Agmt.
July 31, 2000

1.       WRG agrees to pay the United States the sum of three million dollars ($3,000,000) (the "United States Settlement Amount"), and this sum shall constitute a debt immediately due and owing to the United States, on the "Effective Date" (as that term is defined in paragraph 13) of this Agreement.  This debt is to be discharged by payment to the United States under the following terms and conditions:

     a.       WRG shall pay three million dollars ($3,000,000) to the United States on the 16th day of the first month following the Effective Date of this Agreement;

     b.       The payment to the United States described above shall be electronically transferred pursuant to instructions provided by the Department of Justice.

2.       B&T and WRG agree to pay to California and the 17 States the total sum of twelve million five hundred thousand dollars ($12,500,000), and this sum shall constitute a debt immediately due and owing to California and the 17 States on the Effective Date of this Agreement.  This debt is to be discharged by payment under the following terms and conditions:

     a.       B&T and WRG shall pay the total amount of four million dollars ($4,000,000) to California on the 16th day of the first month following the Effective Date of this Agreement;

     b.       B&T and WRG shall pay the total amount of eight and one-half million dollars ($8,500,000) to the Attorney General of North Carolina on the 16th day of the first month following the Effective Date of this Agreement, which funds shall in turn be disbursed among the Attorneys General of the 17 States pursuant to the agreement of those Attorneys General;

Final Settlement Agree.
July 31, 2000

... 00658/1.A003681.926}

Jul-18-03   03:11pm   From-Phillips & Cohen, LLP

202 833 1815            T-859   P.006   F-370

07/08/03   19:56 FAX                                                                            ☒007

     c.    The payments to California and the Attorney General of North

Carolina described above shall be electronically transferred pursuant to instructions provided

by the California and North Carolina Attorneys General.

     3.    After the payments noted in paragraph 2, above, B&T and the 17 States shall

execute consent decrees to be filed in each of the 17 States ("Model Consent Decree"). A

copy of the Model Consent Decree is attached hereto as Exhibit A.

     4.    a.    Subject only to the conditions specified in Paragraph 5 below. upon

full receipt of the payments described in Paragraphs 1 and 2 above by the Plaintiffs, the

United States, on behalf of itself, its officers, agents, agencies, and departments, will release

and will be deemed to have released and forever discharged (i) the Defendants, (ii) the

Defendants' predecessors, successors, assigns, current and former officers, directors,

shareholders, employees, agents, and transferees, from any civil or administrative monetary

claims (including recoupment or restitution claims) that the United States has or may have

under the common law, the False Claims Act, 31 U.S.C. § 3729-3733, for breach of contract,

payment by mistake and unjust enrichment and under any statutory provision applicable to

the federally-funded programs for which the Civil Division, United States Department of

Justice, has actual and present authority to assert and compromise (or delegate) pursuant to

28 C.F.R. Part 0. Subpart 1, § 0.45 (1999), for the allegations set forth in Preamble

Paragraphs F and G above.

     b.    Upon full receipt of the payments described in Paragraphs 1 and 2 above by

the Plaintiffs, California (as defined above to include its political subdivisions) on behalf of

itself, its officers, agents, agencies, and departments will release and will be deemed to have

released and forever discharged Defendants, Defendants' predecessors, and their present and

former officers, employees, directors, shareholders, representatives, agents, transferees,

successors and assigns, and each of them, from any and all civil or administrative monetary

Final Settlement Agmt.
July 31, 2000

Jul-18-03   03:11pm   From-Phillips & Cohen, LLP

07/08/03   19:58 FAX                                     202 833 1815                T-858   P.007   F-370

claims, whether known or unknown, suspected or not suspected to exist, claimed or not claimed, which have arisen or are now arising from the allegations set forth in Preamble Paragraphs F and G above.' This release will be notwithstanding Civil Code section 1542, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The provisions of Civil Code section 1542 are hereby expressly waived by all parties.

c.    Upon and after receipt of the payments to the 17 States described in Paragraph 2 above and Baker & Taylor's entry into Consent Decrees to be filed in each of the 17 intervenor States, each of the 17 States, acting in the full capacity in which they have brought the Complaint in Intervention, releases and forever discharges Defendants and their present and former officers, employees, directors, shareholders, representatives, agents, predecessors, transferees, successors and assigns, and each of them, from any and all civil or administrative claims, whether known or unknown, suspected or not suspected to exist, claimed or not claimed, which have arisen or are now arising from the allegations set forth in Preamble Paragraphs F, G, and H above to the fullest extent of the authority vested in each of the 17 States and the Attorneys General of each of the 17 States, except that each of the 17 States and their respective Attorneys General retains the right to obtain and enforce the Model Consent Decree against B&T. The Attorneys General of the 17 States agree that they shall refrain from instituting any civil or legal proceeding or civil legal action against the Defendants herein under their respective consumer protection acts, false claims acts, or for breach of contract or any other actions for the conduct set forth in the States' Complaint in Intervention filed in the U.S. District Court for the Northern District of California occurring

Final Settlement Agmt.
July 31, 2000

during the time in issue in the Complaint in Intervention and prior to the effective date of this agreement.

5.    Notwithstanding any other provision in this Agreement, the United States, California and the 17 States specifically do not release the Defendants or any other entity or individual, from (a) any potential criminal liability arising from the subject matter of this Agreement; (b) any potential criminal, civil or administrative claims arising under Title 26 U.S. Code (Internal Revenue Code), the California Revenue and Taxation Code, or title 10 of Part 3 of the California Code of Civil Procedure, or other revenue laws of the 17 States; (c) any potential civil liability to the United States (or any agencies thereof), California or the 17 States for any conduct other than that identified in Preamble Paragraphs F and G above; (d) any claims against any individuals, including Defendants' current or former directors, officers, employees, agents or shareholders, who are criminally indicted or charged, or are convicted, or who enter into a criminal plea agreement related to the conduct alleged in the Complaint; provided, however, that if such individuals are legally entitled to repayment from WRG by claim for indemnification, contribution, reimbursement, or otherwise as a result of a claim brought by the United States, or if such individuals are legally entitled to repayment from WRG and/or B&T by claim for indemnification, contribution, reimbursement, or otherwise as a result of a claim brought by California or the 17 States, the releases provided in Paragraph 4 above shall apply to such individuals with respect to that claim; or (e) any obligations created by this Agreement.

6.    As between the United States and B&T only, the terms of the June 25 Settlement Agreement shall exclusively govern in the event of any conflict between the terms of this Agreement and the June 25 Settlement Agreement.

7.    With respect to Civil Action No. 95-1825 VRW, after the effective date of this Agreement and after the United States Department of Justice and the Attorney General of North Carolina, are in full receipt of the payments described in Paragraphs 1 and 2 above, and after Baker & Taylor has entered into Consent Decrees to be filed in each of the 17

Jul-18-03   03:11pm   From-Phillips & Cohen, LLP

07/08/03   18:58 FAX                          202 833 1815          T-859   P.008/054   F-370

Intervenor states, the United States and the 17 States will within 10 days notify the Court in the Northern District of California that they have stipulated to dismissal of the Civil Action and will file a stipulation of dismissal with prejudice pursuant to and consistent with the terms of this Agreement. The Court shall retain jurisdiction over California's claims under the California False Claims Act for the sole purpose of any apportionment required under that statute of the payments under this Agreement to California. Any orders issued as to that apportionment shall not affect the release or liability of Defendants pursuant to this Agreement. Within ten (10) days of the issuance of any order approving an apportionment of the settlement, California shall notify the Court that it has stipulated to dismissal of the Civil Action and will file a stipulation of dismissal with prejudice pursuant to and consistent with the terms of this Agreement.

8.     The Defendants hereby agree that they will waive and will not assert any defense which may be based in whole or in part on the Double Jeopardy Clause of the Constitution as set forth in the holding or principles in United States v. Halper. 490 U.S. 435 (1989), or under similar provisions of the Constitutions or laws of California or the 17 States, in any criminal prosecution based on the conduct alleged in Preamble Paragraphs F through G above, and they agree that the amounts paid under this Agreement are not punitive in nature or effect for purposes of such criminal prosecution. Nothing in this Agreement constitutes an agreement by the United States, California or the 17 States concerning the characterization of the amounts paid hereunder for purposes of any proceeding under Title 26 of the Internal Revenue Code, the California Revenue and Taxation Code, or Title 10 of Part 3 of the California Code of Civil Procedure, or similar provisions of the laws of the 17 States.

9.     For government contracting purposes, the Defendants agree to treat as unallowable all costs (as defined in the Federal Acquisition Regulations ("FAR")

Final Settlement Agmt.
July 31, 2000

§ 31.205.47(a)) incurred by or on behalf of the Defendants and/or their successors, assigns, transferees, subsidiaries and divisions in connection with (a) the matters covered by this Agreement; (b) the Government's audit and investigation of the matters covered by this Agreement; (c) these corporate entities' investigation, defenses, and corrective actions; (d) the negotiation and performance of this agreement; (e) the payments made to the Parties provided for in this Agreement; and (f) payments, if any, made to a relator for fees and legal expenses. These amounts shall be separately estimated and accounted for by these corporate entities, and they will not charge such costs directly or indirectly to any contracts with the United States (or any of its agencies or departments), California or the 17 intervenor States.

10.     In the event that B&T or WRG commences, or a third party commences, within 91 days of the effective date of this Agreement; any case, proceeding, or other action (a) under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, seeking to have any order for relief of their debts, or seeking to adjudicate B&T or WRG as bankrupt or insolvent, or (b) seeking appointment of a receiver, trustee, custodian or other similar official for B&T or WRG or for all or any substantial part of B&T's or WRG's assets, B&T and WRG agree as follows:

a.      The obligations of the Defendant subject to an action under Paragraph 10(a) or (b) above under this Agreement may not be avoided pursuant to 11 U.S.C. Section 547, and that Defendant will not argue or otherwise take the position in any such case, proceeding or action that: (i) that Defendant's obligations under this Agreement may be avoided under 11 U.S.C. Section 547; (ii) that Defendant was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States hereunder; or (iii) the mutual promises, covenants and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to that Defendant.

b.    In the event that a Defendant's obligations hereunder are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the Plaintiffs, at their sole option, may rescind the releases as to that Defendant in this Agreement, and bring any civil and/or administrative claim, action or proceeding against that Defendant for the claims that would otherwise be covered by the releases provided in Paragraph 5 above. If the United States, California or any of the 17 States chooses to do so because of any of the insolvency events listed in this Paragraph 10, that Defendant agrees that (i) any such claims, actions or proceedings brought by the Plaintiffs (including any proceedings to exclude that Defendant from participation in federal programs) are not subject to an "automatic stay" pursuant to 11 U.S.C. Section 362(a) as a result of the action, case or proceeding described in the first clause of this Paragraph, and that Defendant will not argue or otherwise contend that the Plaintiffs' claims, actions or proceedings are subject to an automatic stay; (ii) that Defendant will not plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any such civil or administrative claims, actions or proceedings that are brought by the Plaintiffs within 90 days of written notification to that Defendant that the releases herein have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on the date of this Agreement; and (iii) the Plaintiffs have a valid claim against that Defendant in the amount of fifteen million dollars ($15,000,000), and the Plaintiffs may pursue their claim, *inter alia,* in the case, action or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding, notwithstanding the entry of any consent decree related to the facts at issue in this matter.

c.    The Defendants acknowledge that their agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

Final Settlement Agmt.
July 31, 2000

d.    Provided, however, that as between the United States and B&T, this Paragraph 10 shall have no force or effect, and the United States and B&T shall remain bound by Paragraph 8 of the June 25 Settlement Agreement.

11.    The Parties agree that this Agreement does not constitute an admission by any person or entity with respect to any issue of law or fact.

12.    The Defendants represent and warrant that the undersigned signatories are signing this Agreement in their official capacities and are fully empowered and authorized by their Boards of Directors to execute this Agreement. The undersigned United States signatories, and those of the State of California and of the 17 States represent that they are signing this Agreement in their official capacities and that they are fully empowered and authorized to do so.

13.    This Agreement shall become final and binding only on signing by each respective party hereto. The date upon which the Agreement becomes executed by all parties is the "Effective Date."

14.    This Agreement may not be changed, altered or modified, except in writing signed by the Parties.

15.    Any communication required under this Agreement must be in writing and must be given personally, by Federal Express, by facsimile, or by registered or certified mail, postage prepaid, as follows:

If to B&T:

General Counsel
Baker & Taylor, Inc.
2709 Water Ridge Parkway
Suite 500
Charlotte, North Carolina 28217

Final Settlement Agmt.
July 31, 2000

If to WRG:

> David B. Siegel
> Senior Vice President & General Counsel
> W.R. Grace & Co.-Conn.
> 7500 Grace Drive
> Columbia, Maryland 21044

If to the United States:

> Michael F. Hertz, Esq.
> Director
> Commercial Litigation Branch
> Civil Division
> United States Department of Justice
> 601 D Street, N.W., Room 9902
> Washington, D.C. 20004

If to the State of California:

> Christopher Ames
> Senior Assistant Attorney General
> Office of the Attorney General
> Civil Division, False Claims Section
> 455 Golden Gate Avenue, Suite 11000
> San Francisco, CA 94102

If to (the 17 States):

**Arkansas**

MARK PRYOR
ATTORNEY GENERAL
Shellie Wallace
Assistant Attorney General
Office of the Attorney General
Consumer Protection
323 Center Street, Suite 200
Little Rock, AR 72201

Final Settlement Agmt.
July 31, 2000

## Connecticut

RICHARD BLUMENTHAL
ATTORNEY GENERAL
Gary Hawes
Assistant Attorney General
Connecticut Attorney General's Office
110 Sherman Street
Hartford, CT 06105

## Florida

ROBERT A. BUTTERWORTH
ATTORNEY GENERAL
Jack A. Norris, Jr.
Assistant Attorney General
Florida Attorney General's Office
Economic Crimes Division
Republic Tower
110 S.E. 6th Street
Ft. Lauderdale, FL 33301

## Hawaii

EARL I. ANZAI
ATTORNEY GENERAL
James J. S. Chang
Deputy Attorney General
425 Queen Street
Office of the Attorney General
Honolulu, HI 96813

## Idaho

ALAN G. LANCE
ATTORNEY GENERAL
Brett T. DeLange
Deputy Attorney General
Idaho Attorney General's Office
P.O. Box 83720
Boise, ID 83720-0010

Final Settlement Agmt.
July 31, 2000

## Kentucky

ALBERT BENJAMIN CHANDLER III
ATTORNEY GENERAL
Harold Turner
Assistant Attorney General
Consumer Protection Division
9001 Shelbyville Road, Suite 3
Louisville, KY 40222

## Massachusetts

THOMAS F. REILLY
ATTORNEY GENERAL
Glenn Kaplan
Assistant Attorney General
Massachusetts Attorney General's Office
One Ashburton Place, 19th Floor
Boston, MA 02108

## Minnesota

MIKE HATCH
ATTORNEY GENERAL
James Crassweller
Assistant Attorney General
Minnesota Attorney General's Office
1100 NCL Tower
445 Minnesota Street
St. Paul, MN 55101

## Missouri

JEREMIAH W. ("JAY") NIXON
ATTORNEY GENERAL
Sue A. Sperry
Assistant Attorney General
Missouri Attorney General's Office
Penntower Office Center
3100 Broadway
Suite 609
Kansas City, MO 64111

DJB 7/31/00

Final Settlement Agmt.
July 31, 2000

[17157-0058/LA003681.926]

## Nevada

FRANKIE SUE DEL PAPA
ATTORNEY GENERAL
Jo Ann Gibbs
Deputy Attorney General
Bureau of Consumer Protection/TMCFU
555 E. Washington, #3900
Las Vegas, NV 89101

## New Mexico

TOM UDALL
ATTORNEY GENERAL
Ann Strickland
Assistant Attorney General
Office of the Attorney General
Post Office Drawer 1508
Santa Fe, NM 87504-1508

## North Carolina

MICHAEL F. EASLEY
ATTORNEY GENERAL
K. D. Sturgis
Assistant Attorney General
Office of the Attorney General
Post Office Box 629
Raleigh, NC 27602-0629

## Oklahoma

W. A. DREW EDMONDSON
ATTORNEY GENERAL
Steven Leippert
Assistant Attorney General
Consumer Protection Unit
4545 N. Lincoln, Suite 260
Oklahoma City, OK 73105

Final Settlement Agmt.
July 31, 2000

### Tennessee

PAUL G. SUMMERS
ATTORNEY GENERAL
Jennifer Rawls
Assistant Attorney General
Consumer Protection Division
425 Fifth Avenue North, 2nd Floor
Nashville, TN 37243-0491
Phone: (615) 741-2614
Fax: (615) 532-2910

### Texas

JOHN CORNYN
ATTORNEY GENERAL
D. Esther Chavez
Assistant Attorney General
Office of the Attorney General
Consumer Protection Division
Post Office Box 12548
Austin, TX 78711-2548

### Vermont

WILLIAM H. SORRELL
ATTORNEY GENERAL
Elliot Burg
Assistant Attorney General
Vermont Attorney General's Office
109 State Street
Montpelier. VT 05609

### Wisconsin

JAMES E. DOYLE
ATTORNEY GENERAL
James Jeffries
Assistant Attorney General
Office of Consumer Protection
Department of Justice
123 West Washington Avenue
P.O. Box 7857
Madison, WI 53707-7857

Final Settlement Agmt.
July 31, 2000

copy 0ASUL A003581.526)

at the above addresses, or as otherwise designated by notice. Notice by personal delivery
(messenger or otherwise) shall be effective upon actual receipt. Notices by mail will be
effective three (3) calendar days after mailing. Notices by facsimile or Federal Express will
be effective upon electronic verification of successful receipt or confirmation of delivery by
Federal Express, respectively.

16.   This Agreement shall be governed by the law of the United States. The
Parties agree that the exclusive jurisdiction and venue for any dispute arising under this
Agreement shall be the United States District Court for the Northern District of California,
*except that*, with respect to the Consent Decrees filed pursuant to Paragraph 3, above, the
Parties agree that exclusive jurisdiction and venue for any dispute arising thereunder shall be
in the courts in which the respective Consent Decrees are filed.

17.   This Agreement may be executed in counterparts, each of which shall
constitute an original and all of which shall constitute one and the same Agreement.

18.   This Agreement is effective on the date signed by the last signatory.

### UNITED STATES OF AMERICA

By: _____     Dated: _____
DEE LORD
Civil Division
United States Department of Justice

By: _____     Dated: _____
MARY BETH UITTI
Assistant United States Attorney
Northern District of California

Final Settlement Agmt.
July 31, 2000

at the above addresses, or as otherwise designated by notice. Notice by personal delivery (messenger or otherwise) shall be effective upon actual receipt. Notices by mail will be effective three (3) calendar days after mailing. Notices by facsimile or Federal Express will be effective upon electronic verification of successful receipt or confirmation of delivery by Federal Express, respectively.

16.    This Agreement shall be governed by the law of the United States. The Parties agree that the exclusive jurisdiction and venue for any dispute arising under this Agreement shall be the United States District Court for the Northern District of California, *except that*, with respect to the Consent Decrees filed pursuant to Paragraph 3, above, the Parties agree that exclusive jurisdiction and venue for any dispute arising thereunder shall be in the courts in which the respective Consent Decrees are filed.

17.    This Agreement may be executed in counterparts, each of which shall constitute an original and all of which shall constitute one and the same Agreement.

18.    This Agreement is effective on the date signed by the last signatory.

### UNITED STATES OF AMERICA

By: _Dee Lord_                    Dated: 7/11/00
DEE LORD
Civil Division
United States Department of Justice

DB 7/11/00

Final Settlement Agmt.
July 31, 2000

By: _Mary Beth Uitti_                          Dated: _July 10, 2000_
MARY BETH UITTI
Assistant United States Attorney
Northern District of California


### BAKER & TAYLOR, INC.

Dated:

By:


### W.R. GRACE & CO. – CONN.

Dated:

By:
DAVID B. SIEGEL
Senior Vice President & General Counsel


### THE STATE OF CALIFORNIA

Dated:

By:
PETER K. SOUTHWORTH
Deputy Attorney General


### THE STATE OF ARKANSAS

MARK PRYOR
ATTORNEY GENERAL

Dated:

By:
Shellie Wallace
Assistant Attorney General


### THE STATE OF CONNECTICUT

Final Settlement Agmt.
July 31, 2000

## BAKER & TAYLOR, INC.

By: _____    Dated: _____

## W.R. GRACE & CO. – CONN.

By: _____    Dated: _____
DAVID B. SIEGEL
Senior Vice President & General Counsel

## THE STATE OF CALIFORNIA

By: _____    Dated: _____
PETER K. SOUTHWORTH
Deputy Attorney General

## THE STATE OF ARKANSAS

MARK PRYOR
ATTORNEY GENERAL

By: _____    Dated: _____
Shellie Wallace
Assistant Attorney General

## THE STATE OF CONNECTICUT

RICHARD BLUMENTHAL
ATTORNEY GENERAL

By: _____    Dated: _____
Gary Hawes
Assistant Attorney General

Final Settlement Agmt.
July 31, 2000

United States Department of Justice


By:                              Dated:
MARY BETH UITTI
Assistant United States Attorney
Northern District of California


BAKER & TAYLOR, INC.


By: _A. G. Bashah_                Dated: _July 12, 2000_
    General Counsel

W.R. GRACE & CO. – CONN.


By:                              Dated:
DAVID B. SIEGEL
Senior Vice President & General Counsel


THE STATE OF CALIFORNIA


By:                              Dated:
PETER K. SOUTHWORTH
Deputy Attorney General


THE STATE OF ARKANSAS

WINSTON BRYANT
ATTORNEY GENERAL


By:                              Dated:
Shellie Wallace
Assistant Attorney General


THE STATE OF CONNECTICUT

Final Settlement Agmt
July 31, 2000

## BAKER & TAYLOR, INC.

By: _____    Dated: _____

### W.R. GRACE & CO. - CONN.

By: _____    Dated: _July 7, 2000_
DAVID B. SIEGEL
Senior Vice President & General Counsel

## THE STATE OF CALIFORNIA

By: _____    Dated: _____
PETER K. SOUTHWORTH
Deputy Attorney General

## THE STATE OF ARKANSAS

WINSTON BRYANT
ATTORNEY GENERAL

By: _____    Dated: _____
Shellie Wallace
Assistant Attorney General

## THE STATE OF CONNECTICUT

RICHARD BLUMENTHAL
ATTORNEY GENERAL

By: _____    Dated: _____
Gary Hawes
Assistant Attorney General

DJS 7/3/00

Final Settlement Agmt.
July 31, 2000

United States Department of Justice

                                                    Dated:

By:
MARY BETH UITTI
Assistant United States Attorney
Northern District of California

                          BAKER & TAYLOR, INC.


                                                    Dated:

By:

                          W.R. GRACE & CO. – CONN.


                                                    Dated:

By:
DAVID B. SIEGEL
Senior Vice President & General Counsel

                          THE STATE OF CALIFORNIA


By:                                                 Dated: 7/18/00
PETER K. SOUTHWORTH
Deputy Attorney General

                          THE STATE OF ARKANSAS


WINSTON BRYANT
ATTORNEY GENERAL

                                                    Dated:

By:
Shellie Wallace
Assistant Attorney General

                          THE STATE OF CONNECTICUT

Final Settlement Agmt.
July 31, 2000.

07/08/03  20:03 FAX                                                                    @026

## BAKER & TAYLOR, INC.

By:                                          Dated:

## THE STATE OF ARKANSAS

MARK PRYOR
ATTORNEY GENERAL

By: _[signature]_                            Dated: July 7, 2000
Shellie Wallace
Assistant Attorney General

BTB 7/6/00

RICHARD BLUMENTHAL
ATTORNEY GENERAL

By: _____          Dated: _____
Gary Hawes
Assistant Attorney General

## THE STATE OF FLORIDA

ROBERT A. BUTTERWORTH
ATTORNEY GENERAL

                                      Dated: _____
By: _____
Jack A. Norris, Jr.
Assistant Attorney General

## THE STATE OF HAWAII

EARL I. ANZAI
ATTORNEY GENERAL

                                      Dated: _____
By: _____
James J. S. Chang
Assistant Attorney General

## THE STATE OF IDAHO

ALAN G. LANCE
ATTORNEY GENERAL

                                      Dated: _____
By: _____
Brett T. DeLange
Deputy Attorney General

## THE STATE OF KENTUCKY

ALBERT BENJAMIN CHANDLER III
ATTORNEY GENERAL

Final Settlement Agmt.
July 31, 2000

# THE STATE OF FLORIDA

ROBERT A. BUTTERWORTH
ATTORNEY GENERAL

By: _____      Dated: _____
Jack A. Norris, Jr.
Assistant Attorney General

# THE STATE OF HAWAII

EARL I. ANZAI
ATTORNEY GENERAL

By: _____      Dated: _____
James J. S. Chang
Assistant Attorney General

# THE STATE OF IDAHO

ALAN G. LANCE
ATTORNEY GENERAL

By: _____      Dated: _____
Brett T. DeLange
Deputy Attorney General

# THE STATE OF KENTUCKY

ALBERT BENJAMIN CHANDLER III
ATTORNEY GENERAL

By: _____      Dated: _____
Harold Turner
Assistant Attorney General

SCB 7/31/00

Final Settlement Agmt.
July 31, 2000

RICHARD BLUMENTHAL
ATTORNEY GENERAL

Dated:

By:
Gary Hawes
Assistant Attorney General

## THE STATE OF FLORIDA

ROBERT A. BUTTERWORTH
ATTORNEY GENERAL

By: Jack A. Norris          Dated: 7-6-2100
Jack A. Norris, Jr.
Assistant Attorney General

## THE STATE OF HAWAII

EARL I. ANZAI
ATTORNEY GENERAL

Dated:

By:
James J. S. Chang
Assistant Attorney General

## THE STATE OF IDAHO

ALAN G. LANCE
ATTORNEY GENERAL

Dated:

By:
Brett T. DeLange
Deputy Attorney General

## THE STATE OF KENTUCKY

ALBERT BENJAMIN CHANDLER III
ATTORNEY GENERAL

THE STATE OF HAWAI'I

EARL I. ANZAI
Attorney General

By *Russell A. Suzuki*                    Dated: July 24, 2000.
   RUSSELL A. SUZUKI
   Deputy Attorney General

DO 7/31/00

Final Settlement Agmt.
July 31, 2000

RICHARD BLUMENTHAL
ATTORNEY GENERAL

Dated:

By:
Gary Hawes
Assistant Attorney General

THE STATE OF FLORIDA

ROBERT A. BUTTERWORTH
ATTORNEY GENERAL

Dated:

By:
Jack A. Norris, Jr.
Assistant Attorney General

THE STATE OF HAWAII

EARL I. ANZAI
ATTORNEY GENERAL

Dated:

By:
James J. S. Chang
Assistant Attorney General

THE STATE OF IDAHO

ALAN G. LANCE
ATTORNEY GENERAL

By: _Rext DeLang_                       Dated: 7 / 6 / 00
Brett T. DeLange
Deputy Attorney General

THE STATE OF KENTUCKY

ALBERT BENJAMIN CHANDLER III
ATTORNEY GENERAL

Final Settlement Agmt.
July 31, 2000

07/08/03  20:04 FAX                                                        ☒032

By: ~~Harold Turner~~    Dated: July 6, 2000

Harold Turner
Assistant Attorney General

SFG
7/31/00

Final Settlement Agmt.
July 31, 2000

# THE STATE OF MASSACHUSETTS

THOMAS F. REILLY
ATTORNEY GENERAL

By:_____          Dated:_____
Glenn Kaplan
Assistant Attorney General

## THE STATE OF MINNESOTA

MIKE HATCH
ATTORNEY GENERAL

By:_____          Dated:_____
James Crassweller
Assistant Attorney General

## THE STATE OF MISSOURI

JEREMIAH W. ("JAY") NIXON
ATTORNEY GENERAL

By:_____          Dated:_____
Sue A. Sperry
Assistant Attorney General

## THE STATE OF NEVADA

FRANK SUE DEL PAPA
ATTORNEY GENERAL

By:_____          Dated:_____
Jo Ann Gibbs
Deputy Attorney General

# THE STATE OF MASSACHUSETTS

THOMAS F. REILLY
ATTORNEY GENERAL

By: _[signature]_                          Dated: 7/19/00
Glenn Kaplan
Assistant Attorney General

# THE STATE OF MINNESOTA

MIKE HATCH
ATTORNEY GENERAL

                                            Dated:
By:
James Crassweller
Assistant Attorney General

# THE STATE OF MISSOURI

JEREMIAH W. ("JAY") NIXON
ATTORNEY GENERAL

                                            Dated:
By:
Sue A. Sperry
Assistant Attorney General

# THE STATE OF NEVADA

FRANK SUE DEL PAPA
ATTORNEY GENERAL

                                            Dated:
By:
Jo Ann Gibbs
Deputy Attorney General

## THE STATE OF MASSACHUSETTS

THOMAS F. REILLY
ATTORNEY GENERAL

Dated:

By:
Glenn Kaplan
Assistant Attorney General

## THE STATE OF MINNESOTA

MIKE HATCH
ATTORNEY GENERAL

By:
James Crassweller
Assistant Attorney General

Dated: 7/6/ʒᵒᵒⁱ

## THE STATE OF MISSOURI

JEREMIAH W. ("JAY") NIXON
ATTORNEY GENERAL

Dated:

By:
Sue A. Sperry
Assistant Attorney General

## THE STATE OF NEVADA

FRANK SUE DEL PAPA
ATTORNEY GENERAL

Dated:

By:
Jo Ann Gibbs
Deputy Attorney General

# THE STATE OF MASSACHUSETTS

THOMAS F. REILLY
ATTORNEY GENERAL

Dated:

By:
Glenn Kaplan
Assistant Attorney General

# THE STATE OF MINNESOTA

MIKE HATCH
ATTORNEY GENERAL

Dated:

By:
James Crassweller
Assistant Attorney General

# THE STATE OF MISSOURI

JEREMIAH W. ("JAY") NIXON
ATTORNEY GENERAL

By:

Dated: 7/24/00

Sue A. Sperry
Assistant Attorney General

# THE STATE OF NEVADA

FRANK SUE DEL PAPA
ATTORNEY GENERAL

Dated:

By:
Jo Ann Gibbs
Deputy Attorney General

Final Settlement Agmt.
July 31, 2000

# THE STATE OF MASSACHUSETTS

THOMAS F. REILLY
ATTORNEY GENERAL

                                         Dated:

By:
Glenn Kaplan
Assistant Attorney General

# THE STATE OF MINNESOTA

MIKE HATCH
ATTORNEY GENERAL

                                         Dated:

By:
James Crassweller
Assistant Attorney General

# THE STATE OF MISSOURI

JEREMIAH W. ("JAY") NIXON
ATTORNEY GENERAL

                                         Dated:

By:
Sue A. Sperry
Assistant Attorney General

# THE STATE OF NEVADA

FRANK SUE DEL PAPA
ATTORNEY GENERAL

By: *Jo Ann Gibbs*                       Dated:  7-7-2000
Jo Ann Gibbs
Deputy Attorney General

Final Settlement Agmt.
July 31, 2000

# THE STATE OF NEW MEXICO

TOM UDALL
ATTORNEY GENERAL

By:_____     Dated: _____
Ann Strickland
Assistant Attorney General

## THE STATE OF NORTH CAROLINA

MICHAEL F. EASLEY
ATTORNEY GENERAL

By:_____     Dated: _____
K. D. Spurgis
Assistant Attorney General

## THE STATE OF OKLAHOMA

W.A. DREW EDMONDSON
ATTORNEY GENERAL

By:_____     Dated: _____
Steven Leippert
Assistant Attorney General

## THE STATE OF TENNESSEE

PAUL G. SUMMERS
ATTORNEY GENERAL

By:_____     Dated: _____
Jennifer Rawls
Assistant Attorney General

Final Settlement Agmt.
July 31, 2000

# THE STATE OF NEW MEXICO

PATRICIA A. MADRID
ATTORNEY GENERAL

By: _V. Ann Strickland_          Dated: _7/28/00_
V. Ann Strickland
Assistant Attorney General

# THE STATE OF NORTH CAROLINA

MICHAEL F. EASLEY
ATTORNEY GENERAL

By: _____          Dated: _____
K. D. Sturgis
Assistant Attorney General

# THE STATE OF OKLAHOMA

W.A. DREW EDMONDSON
ATTORNEY GENERAL

By: _____          Dated: _____
Steven Leippert
Assistant Attorney General

# THE STATE OF TENNESSEE

JOHN KNOX WALKUP
ATTORNEY GENERAL

By: _____          Dated: _____
Jennifer Rawls
Assistant Attorney General

Final Settlement Agmt.
July 31, 2000

# THE STATE OF NEW MEXICO

TOM UDALL
ATTORNEY GENERAL

Dated:

By:
Ann Strickland
Assistant Attorney General

# THE STATE OF NORTH CAROLINA

MICHAEL F. EASLEY
ATTORNEY GENERAL

By: _KDS_
K. D. Sturgis
Assistant Attorney General

Dated: July 5, 2000

# THE STATE OF OKLAHOMA

W.A. DREW EDMONDSON
ATTORNEY GENERAL

Dated:

By:
Steven Leippert
Assistant Attorney General

# THE STATE OF TENNESSEE

JOHN KNOX WALKUP
ATTORNEY GENERAL

Dated:

By:
Jennifer Rawls
Assistant Attorney General

Final Settlement Agmt.
July 31, 2000

# THE STATE OF NEW MEXICO

TOM UDALL
ATTORNEY GENERAL

Dated:

By:
Arn Strickland
Assistant Attorney General

# THE STATE OF NORTH CAROLINA

MICHAEL F. EASLEY
ATTORNEY GENERAL

Dated:

By:
K. D. Sturgis
Assistant Attorney General

# THE STATE OF OKLAHOMA

W.A. DREW EDMONDSON
ATTORNEY GENERAL

By: *Steven J Leippert*                Dated: 7/7/00

Steven Leippert
Assistant Attorney General

# THE STATE OF TENNESSEE

JOHN KNOX WALKUP
ATTORNEY GENERAL

Dated:

By:
Jennifer Rawls
Assistant Attorney General

Final Settlement Agmt.
July 31, 2000

THE STATE OF TENNESSEE

PAUL G. SUMMERS
ATTORNEY GENERAL & REPORTER

JENNIFER L. RAWLS
Assistant Attorney General

Dated: July 25, 2000

## THE STATE OF TEXAS

JOHN CORNYN
ATTORNEY GENERAL

Dated: _____

By: _____
D. Esther Chavez
Assistant Attorney General

## THE STATE OF VERMONT

WILLIAM H. SORRELL
ATTORNEY GENERAL

Dated: _____

By: _____
Elliot Burg
Assistant Attorney General

## THE STATE OF WISCONSIN

JAMES E. DOYLE
ATTORNEY GENERAL

Dated: _____

By: _____
James Jeffries
Assistant Attorney General

# THE STATE OF TEXAS

JOHN CORNYN
ATTORNEY GENERAL

By: *D. Esther Chavez*                   Dated: 7-28-2000
D. Esther Chavez
Assistant Attorney General

## THE STATE OF VERMONT

WILLIAM H. SORRELL
ATTORNEY GENERAL

Dated:

By:
Elliot Burg
Assistant Attorney General

## THE STATE OF WISCONSIN

JAMES E. DOYLE
ATTORNEY GENERAL

Dated:

By:
James Jeffries
Assistant Attorney General

*DB 7/31/00*

Final Settlement Agmt.
July 31, 2000

# THE STATE OF TEXAS

JOHN CORNYN
ATTORNEY GENERAL

                                    Dated:

By:
D. Esther Chavez
Assistant Attorney General

# THE STATE OF VERMONT

WILLIAM H. SORRELL
ATTORNEY GENERAL

                                    Dated:    7/17/00

By:    _Wley_
Elliot Burg
Assistant Attorney General

# THE STATE OF WISCONSIN

JAMES E. DOYLE
ATTORNEY GENERAL

                                    Dated:

By:
James Jeffries
Assistant Attorney General

Final Settlement Agmt.
July 31, 2000

[L757-00560/A005AA1926]

# THE STATE OF TEXAS

JOHN CORNYN
ATTORNEY GENERAL

Dated:

By:
D. Esther Chavez
Assistant Attorney General

# THE STATE OF VERMONT

WILLIAM H. SORRELL
ATTORNEY GENERAL

Dated:

By:
Elliot Burg
Assistant Attorney General

# THE STATE OF WISCONSIN

JAMES E. DOYLE
ATTORNEY GENERAL

By: *James D Jeffries*    Dated: *July 6, 2000*
James Jeffries
Assistant Attorney General

Final Settlement Agmt.
July 31, 2000

# MODEL CONSENT DECREE

[State caption]

This matter came before the Court upon the joint motion of the parties for entry of this Consent Decree and Judgment (hereinafter referred to as "Consent Decree"), and it appearing that defendant Baker & Taylor and W.R. Grace, a non-party, have agreed to pay to plaintiff $ _____ as partial consideration for the settlement of this matter, that Baker & Taylor and plaintiff have consented to the entry of this Consent Decree pursuant to the terms and conditions contained herein, and that the Plaintiff, State of _____, and the defendant, _____, have consented to the making and entry of this Final Judgment and Order without admission by any party in respect to any issue of fact or law other than those with regard to jurisdiction set forth in Part __ of this Final Judgment and without this Final Judgment constituting evidence of any admission by any party hereto with respect to any issue of fact or law other than those with regard to jurisdiction set forth in Part __ of this Final Judgment, it is hereby ORDERED, ADJUDGED, AND DECREED, as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over the parties and this matter pursuant to (insert relevant state law here), and venue is proper pursuant to (insert relevant state law here).

## PARTIES

2.    The parties to this Consent Decree are as set forth in the above caption.

Final Settlement Agmt.
July 31, 2000

## INJUNCTIVE RELIEF

3.      IT IS HEREBY ORDERED that Baker & Taylor, Inc. (hereinafter "Baker &
Taylor") is permanently enjoined and restrained from engaging in any of the following:

a.      Billing or willfully receiving payment for any book from a school, community
college, university, library or library association purchaser at a higher price than the agreed upon
price for the transactions reflected in the bill or payment, whether such price was agreed upon in a
written contract, correspondence, or orally;

b.      Employing in its pricing system for a school, community college, university,
library or library association purchaser any pricing category or method which is not fully
disclosed, in writing, to that purchaser within the text of the contract or offer itself, prior to
execution or acceptance of the contract, if employing that pricing category or method would
result in book prices inconsistent with the purchaser's contract;

c.      Using any term, grouping, or categorization of books in its pricing system for
a school, community college, university, library or library association purchaser, in a manner
inconsistent with its contract with that purchaser;

d.      When a contract between Baker & Taylor and a school, community college,
university, library or library association purchaser specifies a range of discounts applicable to a given
category or type of books, placing a limit on the maximum amount of the discount actually given that
is less than the full specified range of discounts;

e.      When any contract between Baker & Taylor and a school, community college,
university, library or library association purchaser provides for a discount to the customer
commensurate with the discount Baker & Taylor receives from the publisher, failing to
provide an actual discount that fully reflects the publisher's discount (minus Baker &
Taylor's usual profit margin in that contract on books similarly discounted by the publisher);

Final Settlement Agmt
July 31, 2000

f.      Making any untrue, deceptive or misleading statement to a school, community college, university, library or library association purchaser about discounts offered by Baker & Taylor

g.      Making any untrue or misleading statement in any contract with a school, community college, university, library or library association purchaser about discounts offered by Baker & Taylor as applied to any particular term, group, or category of book; and

h.      Using similarly-defined terms, groups, or categorizations of books inconsistently as between different school, community college, university, library or library association customers of Baker & Taylor; provided however, that nothing herein shall preclude Baker & Taylor from charging its customers on the basis of any terms, groups or categorizations of books in accordance with a written or oral agreement defining those terms, groups or categorizations; or in accordance with a written or oral request, solicitation or instruction from the customer(s) that departs from Baker & Taylor's normal usage of those terms, groups or categorizations. Provided, further, that nothing in this section 3.h. shall be construed as relieving Baker & Taylor of its duty to comply with the terms of this Consent Decree nor as an acceptance or waiver regarding any unfair or deceptive conduct of Baker & Taylor.

**REPORTING**

4.      For a period of three years from the date of this Consent Decree, Baker and Taylor shall make available to the State upon 30 days notice all documents and records to assess compliance with this Consent Decree. These documents and records shall be provided at Baker & Taylor's expense unless the request is made more frequently than once in any six month period, in which case the expense of copies for additional requests shall be borne by the State.

Final Settlement Agmt.
July 31, 2000

[12757-0058/LAD03681 926]

pg. 47 of 53

# DISTRIBUTION BY THE STATE

5.    [One (or none) of the options below to be selected by each State]

A.    The disposition and distribution of the funds received in the settlement of the claims addressed herein shall be directed by the Attorney General in accordance with law.

### Or

B.    The funds received in the settlement of the claims asserted herein shall be used by the Attorney General of _____ at his/her sole discretion for:

1) deposit in the State's general fund;

2) deposit in the consumer education fund of the Office of the Attorney General;

3) use in antitrust or consumer protection enforcement;

4) restitution to damaged parties as determined by the Attorney General;

5) deposit in a state agency fund;

6) payment to the Office of Attorney General for attorneys fees and costs associated with the litigation.

The decision of the Attorney General or his designee regarding the qualification for and the amount of restitution shall be final and binding on the person seeking or receiving restitution and the defendant, and said decision shall not be reviewable.

Final Settlement Agmt.
July 31, 2000

Jul-18-03   03:14pm   From-Phillips & Cohen, LLP

202 833 1815                              T-859   P.050/054   F-370

07/08/03   20:08 FAX                                                          图051

**Or**

C.    The funds received by the Attorney General in the settlement of this matter shall be used to restore in whole or in part the alleged pecuniary losses in this State as set forth in Exhibit A attached hereto. At its option, the State may establish or use a restitution account wholly owned by it for purposes of depositing and distributing the restitution amounts set forth in Exhibit A.

**Or**

D.    The funds received by the Attorney General in this settlement of this matter shall be used to restore in whole or in part the alleged pecuniary losses in this State at the discretion of the Attorney General. At its option, the Attorney General may establish or use a restitution account wholly owned by his/her office for purposes of depositing and distributing in whole or in part the restitution amounts set forth in Exhibit A.

**Or**

E.    The funds received in the settlement of the claims asserted herein shall be distributed as restitution on a pro rata basis to those schools and libraries that, according to the best records available to the Attorney General as of the date of entry of this Consent decree (and without any admission of liability by Baker & Taylor), experienced alleged overcharges in the amount of $_____ or more. The decision of the Attorney General or his designee regarding the qualification for and the amount of restitution shall be final and binding on the person seeking or receiving restitution and the defendant, and said decision shall not be reviewable.



Final Settlement Agmt.
July 31, 2000

**Or**

F.     Within __ days of the entry of this Consent Decree and in accordance with Paragraph
2, section b of the Settlement Agreement and Release attached hereto as Exhibit A, Baker & Taylor
and W.R. Grace shall pay to the North Carolina Attorney General, as restitution, the total sum of $
_____].   _____'s portion of that payment, $_____, as determined pursuant to
Paragraph 2, section b of the Settlement Agreement and Release shall be distributed by the _____
Attorney General on a pro rata basis, to those schools and libraries that, according to the best records
available to the Attorney General at the time of entry of this Consent Decree, experienced alleged
overcharges in the amount of $_____ or more. The decision of the Attorney General or his
designee regarding the qualification for and the amount of restitution shall be final and binding on the
person seeking or receiving restitution and the defendant, and said decision shall not be reviewable.

**Or**

G.     The funds received by the Attorney General in the settlement of this matter
shall be used for attorneys fees or costs of investigation, or shall be placed in a consumer
education litigation, local consumer aid account or fund and shall be used for consumer
protection or education purposes at the discretion of the Attorney General and as permitted
under state law.

**NON-WAIVER PROVISIONS**

6.     Nothing in this Consent Decree shall preclude the State from exercising any
administrative, legal, or equitable remedies available to it to enforce the provisions of this
Consent Decree, or to enforce the laws of the State of _____, in the event that Baker &
Taylor violates any provision of this Consent Decree.

Final Settlement Agmt.
July 31, 2000

7.      Nothing in this Consent Decree shall be construed as relieving Baker &

Taylor's duty to comply with all applicable federal, state, and local laws, regulations, rules,

or permits.

8.      Nothing in this Consent Decree shall be construed as a waiver by any person

or entity of any private rights, causes of action, or remedies against Baker & Taylor, except

as may occur by operation of law.

9.      Nothing in this Consent Decree shall be construed to limit or modify the

lawful powers of the Attorney General of the State of _____ to request, demand or

compel production of documents or the testimony of witnesses.

## SEVERABILITY

10.     The provisions of this Consent Decree shall be severable and should any

provision be declared by a court of competent jurisdiction to be unenforceable, the other

provisions of this Consent Decree and Judgment shall remain in full force and effect.

## SUCCESSORS

11.     This Consent Decree shall be binding upon Baker & Taylor and each of its

transferees, subsidiaries, successors, and assigns (including directors, officers, employees,

agents, and representatives thereof) which sell books to any school, community college,

university, library or library association in the State of _____ and constitutes a

continuing obligation.

Final Settlement Agmt.
July 31, 2000

## MISCELLANEOUS

12.    This Consent Decree shall be enforceable only by Baker & Taylor and the
State of _____.

13.    This Consent Decree does not constitute an approval by the State of _____
of any of Baker & Taylor's advertising, business programs or practices, and Baker & Taylor
shall make no representation to the contrary.

14.    As between Baker & Taylor and the State of _____, the determination of
the manner of allocation or distribution of the settlement proceeds set forth in paragraph 5 is
solely the responsibility of the Attorney General, and is being made in the sole judgment of
the Attorney General, without any involvement or responsibility of Baker & Taylor.  No
person seeking or receiving payment pursuant to this Consent Decree shall have any legal
recourse against Baker & Taylor with respect to the Attorney General's determination of the
manner of allocation or distribution of the settlement proceeds.

15.    This Court retains jurisdiction over this matter for the purpose of enabling the
parties to apply for such further order or directives as may be necessary or appropriate.

Final Settlement Agmt.
July 31, 2000

16.    This Consent Decree becomes effective upon execution by the parties and entry by

the Court.

**WE CONSENT:**

(signature blocks)

**APPROVED AND SO ORDERED.**

Dated:  _____

_____
Judge (District Court/Circuit Court/Superior
Court)

Final Settlement Agmt.
July 31, 2000