## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement ("Agreement") is entered by and between the United States of America, acting through its Department of Justice and the United States Attorneys' Office for the Northern District of California, and on behalf of various departments and agencies, including the United States Department of Defense, the Library of Congress, and the United States Department of Education (collectively all of the above will be referred to as the "United States"); and Baker & Taylor, Inc. ("B&T"). Collectively, all of the above will be referred to as the "Parties."

### PREAMBLE

A. WHEREAS, this Agreement addresses the United States' civil claims against B&T, based on the conduct described in Preamble Paragraphs E through F below and the conduct alleged in <u>United States ex rel. Costa v. Baker & Taylor, Inc., and W.R. Grace & Co. — Conn.</u>, No. 95-1825 VRW (Northern District of California) (filed under seal June 1, 1995);

B. WHEREAS, B&T is a Delaware corporation incorporated in December 1991 and headquartered in Charlotte, North Carolina;

C. WHEREAS, at relevant times, B&T operated a wholesale

book distributing business throughout the United States;

D. WHEREAS, B&T submitted or caused to be submitted claims for payment to agencies of the United States, its departments, and agencies;

E. WHEREAS, the United States alleges that beginning on March 20, 1992 and continuing thereafter, B&T violated federal statutes and/or common law doctrines in connection with the marketing and sale of books to various agencies and departments of the United States, and to public schools and libraries nationwide that received federal grant funds, by, *inter alia*, categorizing deeply discounted "trade" books as short discount books, violating contractual agreements with these governmental agencies, departments, and grantees, and engaging in other practices as set forth more fully in the Fourth Amended Complaint;

F. WHEREAS, the United States alleges that the practices described in Preamble Paragraph E above resulted in the submission of false or fraudulent claims actionable under the False Claims Act, 31 U.S.C. § 3729-3733, and under the common law theories of unjust enrichment and payment by mistake, to agencies, departments and grantees of the United States, including the Department of Defense and the Library of Congress,

which enabled B&T to collect federal payments improperly from governmental agencies, departments, and grantees;

G. WHEREAS, B&T denies the allegations of the United States contained in the complaint;

H. WHEREAS, in order to avoid the delay, expense, inconvenience and uncertainty of protracted litigation of these claims, the Parties mutually desire to reach a full and final compromise of the civil claims the United States has against B&T, pursuant to the statutes and terms set forth in Paragraphs 1-17 below and based on the conduct alleged in the Preamble above, except as reserved in Paragraphs 3 through 4 below.

## TERMS AND CONDITIONS

NOW, THEREFORE, in reliance on the representations contained herein and in consideration of the mutual promises, covenants, and obligations in this Agreement, and for good and valuable consideration, receipt of which is hereby acknowledged, the Parties hereby agree as follows:

1. B&T agrees to pay the United States the sum of three million dollars ($3,000,000.00) (the "Settlement Amount"), and this sum shall constitute a debt immediately due and owing to the United States on the effective date of this Agreement. This debt is to be discharged by payment to the United States under the

3

following terms and conditions:

    a. B&T shall pay three million dollars to the United States no later than three business days after the effective date of this Agreement;

    b. The payment to the United States described above shall be electronically transferred pursuant to instructions provided by the Department of Justice.

    2. Subject only to the conditions specified in Paragraphs 3 through 4 below, on full receipt of the payments described in Paragraph 1 above by the United States, the United States, on behalf of itself, its officers, agents, agencies, and departments, will release and will be deemed to have released (i) B&T, (ii) B&T's successors, assigns, current and former officers, directors, shareholders, employees, agents, and transferees, from any civil or administrative monetary claims (including recoupment claims) that the United States has or may have under the common law doctrines of payment by mistake or unjust enrichment, the False Claims Act, 31 U.S.C. § 3729-3733, or any statutory provision applicable to the federally-funded programs for which the Civil Division, United States Department of Justice, has actual and present authority to assert and compromise (or delegate) pursuant to 28 C.F.R. Part 0, Subpart I, § 0.45 (1995),

4

for the allegations set forth in Preamble Paragraphs E and F above.

3. Notwithstanding any other provision in this Agreement, the United States in this Agreement specifically does not release any claims the United States has against W.R. Grace & Co. -- Conn. ("WRG"), or against former or present directors, officers, agents or employees of WRG, provided, however, that any person referred to in paragraph 2 above who may have served as a director, officer, agent or employee of WRG is also released for conduct occurring after March 20, 1992.

4. Notwithstanding any other provision in this Agreement, the United States specifically does not release B&T or any corporate entity or any individual referenced in Paragraph 2 above, or any other entity or individual, from (a) any potential criminal liability arising from the subject matter of this Agreement; (b) any potential criminal, civil or administrative claims arising under Title 26 U.S. Code (Internal Revenue Code); (c) any potential civil liability to the United States (or any agencies thereof) for any conduct other than that identified in Preamble Paragraphs E and F above; (d) Any civil or administrative claims against individuals, including current or former directors, officers, employees, agents or shareholders of

5

B&T, who are criminally indicted or charged, or are convicted, or who enter into a criminal plea agreement related to the conduct alleged in the complaint; (e) claims of any states to the extent such claims do not constitute federal funds; (f) any obligations created by this Agreement.

5. With respect to Civil Action No. 95-1825 VRW, after the effective date of this Agreement and after the United States is in full receipt of the payments described in paragraph 1 above, the United States will notify the Court in the Northern District of California that the Parties have stipulated that the United States' claims against B&T in the Civil Action pending there shall be dismissed with prejudice pursuant to and consistent with the terms of this Agreement.

6. B&T hereby agrees that it will waive and will not assert any defense, which may be based in whole or in part on the Double Jeopardy Clause of the Constitution as set forth in the holding or principles in United States v. Halper, 490 U.S. 435 (1989), in any criminal prosecution based on the conduct alleged in Preamble Paragraphs B through F above, and it agrees that the amounts paid under this Agreement are not punitive in nature or effect for purposes of such criminal prosecution. Nothing in this Agreement constitutes an agreement by the United States concerning the

characterization of the amounts paid hereunder for purposes of any proceeding under Title 26 of the Internal Revenue Code.

7. For government contracting purposes, B&T agrees to treat as unallowable all costs (as defined in the Federal Acquisition Regulations ("FAR") §31.205.47(a)) incurred by or on behalf of B&T and/or its successors, assigns, transferees, subsidiaries and divisions in connection with (a) the matters covered by this Agreement; (b) the Government's audit and investigation of the matters covered by this Agreement; (c) these corporate entities' investigation, defense, and corrective actions; (d) the negotiation and performance of this agreement; (e) the payments made to the United States provided for in this Agreement; and (f) payments, if any, made to a relator for fees and legal expenses. These amounts shall be separately estimated and accounted for by these corporate entities, and they will not charge such costs directly or indirectly to any contracts with the United States, or any of its agencies or departments.

8. In the event B&T commences, or a third party commences, within 91 days of the effective date of this Agreement, any case, proceeding, or other action (a) under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, seeking to have any order for relief of B&T's debts, or seeking

7

to adjudicate B&T as bankrupt or insolvent, or (b) seeking appointment of a receiver, trustee, custodian or other similar official for B&T or for all or any substantial part of B&T's assets, B&T agrees as follows:

a. B&T's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. Section 547, and B&T will not argue or otherwise take the position in any such case, proceeding or action that: (i) B&T's obligations under this Agreement may be avoided under 11 U.S.C. Section 547; (ii) B&T was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States hereunder; or (iii) the mutual promises, covenants and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to B&T.

In the event that B&T's obligations hereunder are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement, and bring any civil and/or administrative claim, action or proceeding against B&T for the claims that would otherwise be covered by the releases provided in Paragraph 2 above. If the United States chooses to do so

because of any of the insolvency events listed in this paragraph 8, B&T agrees that (i) any such claims, actions or proceedings brought by the United States (including any proceedings to exclude B&T from participation in federal programs) are not subject to an "automatic stay" pursuant to 11 U.S.C. Section 362(a) as a result of the action, case or proceeding described in the first clause of this Paragraph, and that B&T will not argue or otherwise contend that the United States' claims, actions or proceedings are subject to an automatic stay; (ii) that B&T will not plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any such civil or administrative claims, actions or proceedings that are brought by the United States within 90 days of written notification to B&T that the releases herein have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on the date of this Agreement; and (iii) the United States has a valid claim against B&T in the amount of $15 million, and the United States may pursue its claim, *inter alia*, in the case, action or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

    b. B&T acknowledges that its agreements in this Paragraph

9

are provided in exchange for valuable consideration provided in this Agreement.

9. The Parties agree that this Agreement does not constitute an admission by any person or entity with respect to any issue of law or fact.

10. B&T represents and warrants that the undersigned signatories are signing this Agreement in their official capacities and are fully empowered and authorized by its Board of Directors to execute this Agreement. The undersigned United States signatories represent that they are signing this Agreement in their official capacities and that they are fully empowered and authorized to do so.

11. This Agreement shall become final and binding only on signing by each respective party hereto.

12. This Agreement may not be changed, altered or modified, except in writing signed by the United States and B&T.

13. No party to this Agreement is acting as the agent of any other party, individual, or entity.

14. Any communication required under this Agreement must be in writing and must be given personally, by Federal Express, by facsimile, or by registered or certified mail, postage prepaid, as follows:

**If to B&T:**

> General Counsel
> Baker & Taylor, Inc.
> 2709 Water Ridge Parkway
> Suite 500
> Charlotte, North Carolina  28217

If to the United States:

> Michael F. Hertz, Esq.
> Director
> Commercial Litigation Branch
> Civil Division
> United States Department of Justice
> 601 D Street, N.W., Room 9902
> Washington, D.C. 20004

at the above addresses, or as otherwise designated by notice. Notice by personal delivery (messenger or otherwise) shall be effective upon actual receipt. Notices by mail will be effective three (3) calendar days after mailing. Notices by facsimile or Federal Express will be effective upon electronic verification of successful receipt or confirmation of delivery by Federal Express, respectively.

15. This Agreement shall be governed by the law of the United States. The Parties agree that the exclusive jurisdiction and venue for any dispute arising under this Agreement shall be the United States District Court for the Northern District of California.

16. This Agreement may be executed in counterparts, each of which shall constitute an original and all of which shall constitute one and the same Agreement.

17. This Agreement is effective on the date signed by the last signatory.

### UNITED STATES OF AMERICA

By: _____  Dated: June 25, 1999
DEE LORD
Civil Division
United States Department of Justice

By: _____  Dated: June 25, 1999
MARY BETH UITTI
Assistant United States Attorney
Northern District of California

### BAKER & TAYLOR, INC.

By: _____  Dated: JUNE 25, 1999
SUSAN E. BACKSTROM
General Counsel

12