**NAI** COLLINS, SHARP & KOELLA, INC.

New America International

900 S. Gay St., Suite 1904
Knoxville, TN 37902
865/521-8080
865/546-3852 (FAX)
www.cskonline.com



July 29, 2003

Office of the Clerk of the United States Bankruptcy Court for the District of Delaware
Marine Midland Plaza
824 Market Street
Wilmington, Delaware 19801

In re:  The United States Bankruptcy Court for the District of Delaware
        Debtors: W. R. Grace & Co., et al.,
        Case No. 01-01139 (JKF)
        <u>DEBTORS' SECOND OMNIBUS OBJECTION TO CLAIMS (NON-SUBSTANTIVE)</u>

        Claimant:  NAI COLLINS, SHARP & KOELLA, INC.
                   900 South Gay St, #1904
                   Knoxville, Tennessee 37902
        Claim #:   23
        Case #:    01-01140

Dear Sir:

The above-captioned Claimant represented W. R. Grace & Co.-Conn as listing broker in
subleasing a portion of the property at 4315 Clinton Highway, Knoxville, Tennessee to The
American Council of the Blind Enterprises and Services, Inc.  This claim is supported by the
enclosed copy of the original listing agreement and copy of the sublease agreement, dated
January 5, 2000.  Also attached is a copy of Claimant's original invoice to the Debtor for
payment of commission for services rendered.

Acting in the capacity of real estate broker, Claimant procured the American Council of the Blind
as subtenant for a portion of the listed premises and negotiated the sublease therefor. The
Schedule of Commission Rates and Conditions, attached to the Sublease Listing Agreement,
and Section 21.13 of the Sublease pertain specifically to this claim.  As per the listing
agreement, W. R. Grace & Co.-Conn paid to the claimant the initial 25% of the commission.
Subsequently, the Debtor filed for bankruptcy and payments to claimant ceased, although the
Debtor continues to receive the benefits of the claimants work.  It is our contention that the
balance of the outstanding commissions ($13,800.00) should be paid to Claimant as it
represents payment for an ongoing commercial relationship.

The undersigned, John S. Dempster, is the representative of the Claimant with whom counsel
for the Debtors should communicate.  I may be reached at (865)521-8080 during normal
business hours.  My address is NAI Collins, Sharp & Koella, Inc., 900 South Gay Street, Suite
1904, Knoxville, Tennessee 37902, and my fax number is (865)546-3852.

Page 2
The United States Bankruptcy Court for the District of Delaware
July 29, 2003

Thank you for your attention to this matter and I look forward to a speedy resolution.

Sincerely,

NAI COLLINS, SHARP & KOELLA, INC.

John S. Dempster
Broker

JSD/nb

Enclosures

cc: Kirkland & Ellis LLP
200 E. Randolph Drive
Chicago, Illinois 60601
Attn: James W. Kapp III, Janet S. Baer, Christian Lane

Pachulski, Stang, Ziehl, Young, Jones & Weintraub, P. C.
919 North Market Street, 16th Floor
Wilmington, Delaware 19801
Attn: Scotta E. McFarland

COLLINS, SHARP, & KOELLA, INC.
COMMERCIAL REAL ESTATE SERVICES, WORLDWIDE.



# NAI COLLINS, SHARP & KOELLA

900 S. GAY STREET, STE. 1904
KNOXVILLE, TN 37902
865/521-8080 fax 865/546-3852

## INVOICE

| Customer | | |
|---|---|---|
| Name | W. R. GRACE - CONN. | |
| Address | ATTN: AKOS L. NAGY | |
| | ONE TOWN CENTER ROAD | |
| City | BOCA RATON    State FL    ZIP 33486-1010 | |
| Phone | | |

| Date | 1/3/2002 |
|---|---|
| Order No. | |
| Rep | |
| FOB | |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| | FOR PROFESSIONAL SERVICES RENDERED: | | |
| | | | |
| | RE: LEASE AGREEMENT COMMISSION | | |
| | AMERICAN COUNCIL OF THE BLIND | | |
| | 4315 CLINTON HIGHWAY; KNOXVILLE, TN | | |
| | $230,000 x 8% = $18,400 | | |
| | 25% X $18,400 = $4,600 PAID UP FRONT | | |
| | | | |
| | 25% X $18,400 = $4,600 DUE MARCH 1, 2001 | $4,600.00 | $4,600.00 |
| | | | |
| | 25% X $18,400 = $4,600 DUE MARCH 1, 2002 | $4,600.00 | $4,600.00 |
| | | | |
| | 25% X $18,400 = $4,600 DUE MARCH 1, 2003 | $4,600.00 | $4,600.00 |
| | | SubTotal | $13,800.00 |
| | | Shipping & Handling | $0.00 |
| | | Taxes | |
| | | TOTAL | $13,800.00 |

**Payment Details**

O  Cash
◉  Check
O  Credit Card

**MAKE CHECKS PAYABLE TO:**
Collins, Sharp & Koella, Inc.
Federal ID # 62-1179233

*Questions concerning this invoice? Please Call: Janice Vowell*

*THANK YOU FOR YOUR BUSINESS!*

**GRACE**

W. R. Grace & Co.-Conn.
One Town Center Road
Boca Raton, FL 33486-1010

(407) 362-2000

September 17, 1996

**VIA AIRBORNE EXPRESS**

Mr. John Dempster
Collins Sharp & Koella
Suite 602
602 South Gay Street
Knoxville, Tennessee 37901

> Re:    Sublease of approximately 18,000 square feet located at
>        4315 Clinton Highway, Knoxville, TN (the "Premises")

Dear Mr. Dempster:

The purpose of this letter ("Agreement") is to set forth the terms and conditions under which Collins Sharp & Koella ("Broker") has agreed to render services to W. R. Grace & Co.-Conn. ("Grace") as Grace's exclusive broker to obtain one or more subleases of the Premises currently leased by Grace from MCC Group - Knoxville #1, as landlord, under Agreement of Lease dated May 25, 1979 (said lease, as the same has been amended, modified and assigned to date, being hereinafter referred to as the "Lease").

1.    The term of this exclusive listing agreement shall commence on the 20th day of September, 1996 and shall terminate on the 19th day of March, 1997.

2.    Any prospective subtenant and the terms of any proposed sublease shall be subject to the approval of Grace and its counsel. At any time prior to Grace's execution and delivery of a sublease, Grace shall have the unqualified right for any reason whatsoever to reject any and all proposals negotiated by Broker or Grace, to discontinue negotiations or to cease altogether its attempt to sublease the applicable space, without incurring any obligation or liability to Broker. Broker is not authorized, and has no right, power or authority, either express or implied, to represent itself as an agent or representative of Grace or to obligate Grace in any way to third parties in connection with the performance of its services hereunder. Broker will not enter into any agreement on behalf of Broker or Grace or represent that it has the power to enter into any agreement on behalf of Broker or Grace with respect to the subject matter of this Agreement.

3

3.   (a)  If during the term of the exclusive listing Grace enters into a sublease of all or any portion of the Premises upon terms acceptable to Grace and its counsel, with a party who was procured by Broker, Grace shall pay Broker a commission computed and payable in accordance with the provisions of the annexed Schedule of Commission Rates and Conditions (the "Schedule").

(b)  Broker shall be fully responsible for the payment of any and all commissions and fees earned by any Co-Broker (hereafter defined) and shall indemnify Grace against all claims for the same made by any Co-Broker.  As used herein, the term "Co-Broker" shall mean any real estate broker who works with Broker on a cooperating basis in connection with the sublease of the Premises.

4.   Broker hereby indemnifies and holds Grace harmless from and against any and all claims, liabilities, costs, fees, suits, causes of action, damages or expenses, including, without limitation, attorneys' fees and disbursements, which Grace may incur as a result of any claim or demand for any brokerage fees or agents' commissions or other compensation asserted by any person, corporation or other entity, including but not limited to any Co-Broker claiming to have dealt with Broker in connection with this Agreement or the transactions contemplated hereby, it being expressly understood that this indemnification does not pertain to claims or demands made by persons, corporations or other entities having dealt with Grace and not with Broker (an "Indemnified Claim").  In no event shall Broker's liability under the foregoing indemnity on any single Indemnified Claim exceed the aggregate of the amounts paid and payable to Broker under this Agreement. Subject to the foregoing, Grace may offset the amount of any such claims, liabilities, costs, fees, expenses related to suits and causes of action and any damages or expenses of any other type incurred by Grace with respect to any Indemnified Claim, which exceed the sums paid by Broker under this indemnification, against all commissions at any time and from time to time payable to Broker under this Agreement, regardless of the date or dates when such commissions are earned or paid.

In the event that Grace shall receive notice of any claim for which Broker is required pursuant to this Agreement to indemnify Grace, Grace shall promptly give notice to Broker of such claim.  Broker shall be permitted to defend such claim through counsel it selects, subject to the prior approval of such counsel by Grace, which approval shall not be unreasonably withheld or delayed.  Grace shall cooperate with Broker, at Broker's expense, in the defense of any such claim.  Broker shall have the right at its sole cost and expense to settle or compromise such claims without Grace's consent unless the amount of such settlement or compromise shall exceed Broker's indemnity obligations hereunder, in which case Broker shall not settle or compromise such claim without Grace's prior consent.  As long as Broker is not in default in the performance of any of its obligations hereunder, Grace shall have no right to settle or compromise any such claim without first releasing Broker from any obligations in excess of its indemnity obligations hereunder with respect to such claim.  Broker's indemnification of Grace shall survive the expiration or earlier termination of this Agreement.

2

5.    If Grace terminates a sublease procured hereunder by Broker by reason of the subtenant's default thereunder or if the subtenant cancels the sublease pursuant to an express provision contained in the sublease (any such termination or cancellation being referred to herein as a "Non-Commissionable Termination") prior to the date on which one or more of the commission installments is due and payable, no installments of the commission thereafter becoming due shall be deemed earned by Broker or payable by Grace; however Broker shall be entitled to receive and retain the installment(s) of the commission which were due and payable under the annexed Schedule with respect to such sublease prior to the date of termination or cancellation. If the sublease is terminated by reason of Grace's willful default in performing its obligations thereunder or is mutually canceled or terminated by the parties in the absence of an express provision in the sublease providing for such termination or cancellation, then, except as otherwise provided herein, the installments of the commission thereafter becoming due shall be paid on the dates specified in the Schedule.

6.    If, in conjunction with any sublease of the Premises or any assignment or sale of the Lease, any furniture, fixtures, equipment or other personal property is transferred from Grace to the subtenant, whether or not for consideration, no commission shall be payable to Broker with respect to such transfer.

7.    If Broker advertises the Premises or portions thereof, it shall do so subject to Grace's approval and at Broker's expense. Such advertisement shall be subject to any restrictions and conditions in the Lease on Grace's ability to promote or advertise the Premises. All advertising shall be done solely in Broker's name and shall not be in Grace's name except upon the express written direction of Grace. At Grace's request, Broker will provide Grace with a marketing and advertising plan and will provide Grace, every thirty (30) days, with a reasonably detailed report on Broker's activities hereunder. Grace shall have the right to advertise the Premises and discuss it with other brokers and their agents. During the term of the exclusive listing, however, Grace will refer to Broker all inquiries received by Grace from any source concerning the Premises. Broker will diligently investigate such inquiries as well as all other inquiries or offers received or directed to Broker, and will use its best efforts to procure a sublease of the Premises.

8.    If Broker fails to comply with one or more of its material obligations hereunder and such default is not remedied within ten (10) days after Grace delivers written notice to Broker specifying the default(s), Grace may terminate this Agreement by delivering written notice of such termination to Broker.

9.    All notices, requests or other communications which may be or are required to be given, served or sent by either party to the other shall be in writing and shall have been properly given or sent (a) if intended for Broker, by mailing by certified mail, return receipt requested, or by transmittal via overnight delivery service addressed to Broker at the address of Broker first hereinabove set forth, Attention: John Dempster and, (b) if intended for Grace, by mailing by certified mail, return receipt requested, or by

3

transmittal via overnight delivery service addressed to Grace at One Town Center Road, Boca Raton, Florida 33486-1010, Attention: Corporate Secretary. Either party shall have the right to designate a new address as its address for the receipt of notices by notice given to the other party in accordance with the provisions of this paragraph. Any notice given in accordance with this paragraph shall be deemed to have been given on the third day after it shall have been mailed or on the next business day after delivery to an overnight delivery service as provided in this paragraph.

10.    Within ten (10) days after the expiration or earlier termination of the exclusive listing, Broker shall provide to Grace a list of all prospective subtenants with whom it has had active, substantive negotiations during the term of the exclusive listing regarding the subleasing of space in the Premises. Grace shall pay a commission to Broker as set forth on the annexed Schedule with respect to any sublease entered into with a person or entity included on Broker's list if the sublease is completed within 30 days after the expiration or earlier termination of the exclusive listing period as a result of substantially continuous negotiations. In the event Broker does not provide Grace with the above-described list of prospective subtenants within the specified time period, then Grace shall have no obligation to pay Broker any commission in the event Grace, after expiration or earlier termination of this exclusive listing, enters into a sublease or other transaction involving the Premises with any party with whom Broker claims to have had communications or negotiations during the term of the exclusive listing.

11.    This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective permitted successors and assigns. Broker may not assign its rights or obligations under this Agreement without first obtaining Grace's consent, which may be withheld by Grace in its sole discretion.

12.    In the event any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions hereof, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been included.

13.    Broker represents it is a licensed real estate broker in the State of Tennessee.

14.    The validity, interpretation, performance and enforcement of this Agreement and the legal relationships arising out of it shall be governed by the laws of the State of New York.

15.    This Agreement contains the entire understanding between Grace and Broker concerning the subject matter hereof and may only be amended or modified in writing signed by the party to be bound.

4

Please confirm your agreement with the foregoing, including the Schedule, by signing and dating this Agreement and the enclosed copy and returning the copy to me at the address set forth herein for notice to Grace.

Very truly yours,

W. R. GRACE & CO.-CONN.

By: _____
    Akos L. Nagy
    Director of Real Estate

AGREED TO AND ACCEPTED ON
September **27**, 1996:

COLLINS SHARP & KOELLA

By: _____
Name: _TOWNSEND S. COLLINS, JR._
Title: _PRESIDENT_

cc: S. Michel, Esq.
    H. E. Pierson
    B. Anderson-Keevill

5

## SCHEDULE OF COMMISSION RATES AND CONDITIONS

### 1. RATES

Regardless of whether Broker is the sole broker or has a co-broker.................8%

### 2. COMPUTATION OF COMMISSION

Commissions shall be computed in accordance with the above rate based upon Fixed Sublease Rent. For the purposes hereof, the term "Fixed Sublease Rent" shall mean the amount of the minimum annual fixed rental payable under any sublease of the Premises during each year of its term. In calculating Fixed Sublease Rent the following shall be deducted from minimum annual fixed rental payable under the sublease: (x) the amount of any abatement or credit against any rental payable under the sublease; and (y) any amount Grace may be obligated to pay, invest or incur, whether as an actual payment or as an abatement or credit to any rental payable under the sublease, and attributable to the performance of any construction in, or demolition or renovation of, the Premises to prepare the same for the subtenant's use and occupancy, which amount, for the purpose only of calculating the minimum annual fixed rental upon which Broker's commission shall be payable, shall be amortized on a straight-line basis over the term of the sublease. If the sublease provides for increases in the minimum annual fixed rental based upon a formula, then, in computing the commission such increases shall not be considered.

### 3. TIME OF PAYMENT

The commission shall be earned, due and payable as follows: (a) Grace shall remit to Broker one quarter (25%) of the commission after each of the following conditions shall have been met (the date on which all of such conditions shall be met being hereinafter referred to as the "Commission Commencement Date"): (i) the sublease shall have been executed and unconditionally delivered by Grace and the subtenant (and Grace hereby reserves the right to refuse to execute such a sublease unless it is satisfactory in form and substance to Grace and its counsel), (ii) any and all cancellation rights available to the subtenant under the sublease (unrelated to casualty or condemnation) or any agreement entered into in connection therewith permitting the subtenant to cancel the sublease after the execution and delivery thereof shall have lapsed, (iii) all consents and approvals, if any, required from the overlandlord, from the subtenant's shareholders, directors or partners, if applicable, and from any other parties whose consent or approval is required in order for the sublease to be valid and binding in accordance with its terms shall have been

1

obtained, (iv) the subtenant's obligation to make payments of Fixed Sublease Rent shall have commenced, and (v) Grace has received the subtenant's first month's rent payment under the sublease; (b) Grace shall remit to Broker an additional one quarter (25%) of the commission one year from the Commission Commencement Date; (c) Grace shall remit to Broker an additional one quarter (25%) of the commission two years from the Commission Commencement Date; and (d) Grace shall remit to Broker the final one quarter (25%) of the commission three years from the Commission Commencement Date.

## 4.    RENEWALS, EXTENSIONS AND EXPANSIONS

Except as specified below, Grace shall have no obligation to pay Broker any commission if, at any time: (i) the term of the sublease is renewed or extended pursuant to any option(s) or right(s) contained in the sublease; or (ii) subtenant subleases other or additional space at the Premises from Grace pursuant to any option(s) or right(s) contained in the sublease. If Grace exercises an option to extend or renew its Lease of the Premises with its overlandlord and the term of the sublease is renewed or extended pursuant to an option or right contained in the sublease for a concurrent period of time, then Grace agrees to pay to Broker at the time the option period commences the commission computed and payable for said option period in accordance with the applicable provisions of this Schedule. If Grace does not exercise any of its options to extend or renew the Lease, and the Lease terminates on or before the expiration of its initial term, then Grace shall have no obligation to pay Broker any additional commission for any period subsequent to the termination of the Lease, even if the subtenant remains in possession of the Premises subsequent to the termination of the Lease.

H:\SHARED\CAPPLEGA\WP\CHANNEL\KNOXTN.BKR

2

## SUBLEASE AGREEMENT

THIS SUBLEASE made as of the _____5th_____ day of ~~December, 1999,~~ January, 2000 between W. R.
GRACE & CO.-CONN., a Connecticut corporation formerly known as W. R. Grace & CO.,
having an office at Village Center Drive, Swedesboro, New Jersey 08085 ("Landlord"), and THE
AMERICAN COUNCIL OF THE BLIND ENTERPRISES AND SERVICES, INC., a District
of Columbia not for profit corporation, having an office at One Financial Plaza, Suite 1005, 120
South Sixth Street, Minneapolis, Minnesota 55402-1839 ("Tenant").

## WITNESSETH:

WHEREAS, Landlord is the tenant under that certain lease more particularly described on
Exhibit A attached hereto and made a part hereof, as the same shall have been amended, modified,
assigned and/or transferred to date (said Lease, as so amended, modified, assigned and/or
transferred to date, being hereinafter referred to as the "Lease"), demising certain premises in
Knoxville, Tennessee, and which are more particularly described in the Lease (said premises being
hereinafter referred to as the "Entire Premises");

WHEREAS, Landlord desires to sublet 12,000 ± square feet of the Entire Premises, as
more particularly shown in black and labeled "Remaining Vacant Space" on Exhibit B attached
hereto and made a part hereof (said subleased premises being hereinafter referred to as the
"Demised Premises"), to Tenant and Tenant desires to sublet the Demised Premises from
Landlord.

NOW, THEREFORE, Landlord hereby sublets to Tenant, and Tenant hereby hires and
takes from Landlord, the Demised Premises, together with all easements and appurtenances
thereto, to be used and occupied by Tenant for the uses permitted herein, for a term commencing
on or about March 1, 2000, and terminating at midnight on the Expiration Date (hereinafter
defined), unless extended or earlier terminated pursuant to the terms hereof (as the case may be,
the "Term").

## ARTICLE 1
### Basic Lease Provisions and Definitions

1.01. Sublease Subordinate. This Sublease is expressly subject and subordinate to the
Lease. This Paragraph shall be self-operative and no further instrument of subordination shall be
required.

1.02. Minimum Rent. Beginning on the Commencement Date, Tenant shall pay to
Landlord Minimum Rent as follows:

(a)    From and after the Commencement Date the sum of Sixty Thousand Dollars ($60,000.00) per annum, payable in advance in equal monthly installments of Five Thousand Dollars ($5,000.00) each.

All other amounts payable by Tenant to Landlord pursuant to the terms of this Sublease shall be deemed to be Additional Rent.

1.03.    Overlandlord.    The landlord under the Lease shall herein be described as "Overlandlord."

1.04.    Permitted Use.    The Demised Premises may be used and occupied for the operation of a retail second hand thrift store, and for no other purpose.

1.05.    Tenant's Address.

> One Financial Plaza, Suite 1005,
> 120 South Sixth Street,
> Minneapolis, Minnesota 55402-1839

1.06.    Landlord's Address.

> Village Center Drive, Suite 210
> Swedesboro, New Jersey 08085

1.07.    Demise.    Landlord hereby demises and leases to Tenant, and Tenant hereby takes and hires from Landlord, the Demised Premises, together with the non-exclusive right, in common with others, to use the Common Areas (as defined in the Declaration of Easements, Covenants and Restrictions, as further discussed in Article 22 hereof) for ingress and egress and parking purposes only, for a term (the "Term") commencing on the Commencement Date and ending on the Termination Date. Tenant acknowledges the use by Northern Tool & Equipment Co. ("NTEC") of the fenced in area to the rear of NTEC's premises for outdoor promotional activities and other uses.

1.08.    Payment of Rent.

(a)    Tenant shall pay Minimum Rent in advance and without demand, on the first day of each calendar month during the Term, beginning on the later to occur of the Commencement Date (hereafter defined) or the date upon which a Certificate of Occupancy is issued for the Demised Premises. Minimum Rent shall be paid by Tenant in lawful money of the United States, without deduction, offset or abatement, to Landlord at Landlord's address or at such other place as Landlord may designate in writing. For any fraction of a month in which Tenant is obligated to pay Rent, Tenant shall pay an amount equal to one-thirtieth (1/30th) of the monthly Rent installment amount for each day of occupancy of the Demised Premises by Tenant.

12/27/99
177716.4                                        2

(b)     If Tenant shall fail to pay any Minimum Rent or any Additional Rent payable hereunder within fifteen (15) days after the date on which the same is due and payable, Tenant shall pay Landlord a late charge of five (5%)percent of the past due amount.

1.09. Commencement Date. Commencement Date shall mean the earlier of February 1, 2000, or the date upon which Tenant takes possession of the Demised Premises, to be confirmed by memorandum signed by both parties upon Tenant's taking possession of the Demised Premises.

1.10. Expiration Date. Expiration Date shall mean January 31, 2005, or such earlier or later date on which the Sublease shall terminate pursuant to the terms hereof.

1.11 Termination.

(a) This Sublease is expressly conditioned upon Tenant's obtaining and maintaining proper licenses, permits, additional use permits, occupancy permits, and any other type of approvals (collectively the "Approvals") necessary to operate and use the Demised Premises for the use permitted by this Sublease, whether such Approvals are required by the City of Knoxville, Tennessee, or any other governmental entity having jurisdiction over the Demised Premises. Tenant shall use it best good faith efforts to obtain all necessary Approvals by the Commencement Date. In the event all necessary Approvals are not obtained by the Commencement Date, Tenant shall have the option to terminate this Sublease by giving written notice of termination to the Landlord at least ten (10) days prior to the Commencement Date. Upon receipt of said notice, this Sublease shall terminate on a day which is ten (10) days after the date notice is received by Landlord.

(b) If after the Commencement Date there is a change in the zoning restrictions applicable to the Demised Premises so that its use as a retail second hand thrift store cannot lawfully be maintained in spite of claims of vested rights and/or preexisting nonconforming uses, then the Tenant shall have the right to terminate this Sublease by giving written notice of termination to the Landlord at least ten (10) days after the change of zoning. Upon receipt of said notice, this Sublease shall terminate on a day which is ten (10) days after the date notice is received by Landlord.

1.12 Termination Fee. The parties agree the sum of Fifty Thousand Dollars ($50,000.00) (the "Tenant Finish Deposit") represents the Landlord's anticipated out-of-pocket expenses in performing Tenant Finish which are unique to the Tenant's use. In the event of any termination of this Sublease, whether pursuant to Paragraph 1.11 or for any other reason including Tenant's default, Tenant shall be obligated to pay Landlord all rents through the date of termination. In addition, Tenant shall be obligated to pay Landlord as a termination fee and not as a penalty, and as a condition precedent to Tenant's right of Termination, an amount equal to the Tenant Finish Deposit multiplied by a fraction, the numerator of which shall be the number of months remaining in the Term and the denominator of which shall be total number of months in the Term. The

12/27/99
177716.4                              3

resulting product shall be the termination fee which Tenant shall be obligated to pay Landlord upon termination of this Sublease pursuant to Paragraph 1.11. Said amount, along with any other amounts due under this Sublease, shall be paid to Landlord when and as notice of termination is received by Landlord.

## ARTICLE 2
### Tenant Finish

At Landlord's cost and expense, Landlord shall perform all work necessary for Tenant's use and operation of the Demised Premises ("Tenant Finish") consisting of the work described on Schedule 2.01 attached hereto and incorporated herein by reference. Landlord agrees to use its best efforts to complete such work by March 1, 2000, but in any event to complete the installation of tile flooring and front doors and glass by February 1, 2000. Tenant shall be granted possession of the Demised Premises no later than February 1, 2000, even if Tenant Finish is not complete by February 1, 2000. If Tenant takes possession before Tenant Finish is complete, Tenant agrees not to interfere with Landlord's efforts to complete Tenant Finish..

## ARTICLE 3
### Operation of Business

Tenant will keep the Demised Premises open for business as a retail second hand thrift store and for no other purpose from 9:00 a.m. to 9:00 p.m. Monday through Saturday of each week. Tenant my be closed on legal holidays. During all times that Tenant is open for business, Tenant will provide adequate personnel to service its customers.

## ARTICLE 4
### Taxes

4.01. Personal Property. Tenant shall be liable for all taxes levied against personal property and trade fixtures of Tenant in the Demised Premises. If any such taxes are levied upon Landlord or, if the assessed value of Landlord's property is increased by inclusion of Tenant's personal property and trade fixtures in the Demised Premises, Tenant shall pay to Landlord upon demand the portion of such taxes attributable to the same.

4.02 Real Property Taxes. From and after the Commencement Date, Tenant will pay Landlord, as Additional Rent, 33.33% of all real estate taxes and assessments which Landlord is obligated to pay with respect to the Entire Premises. Tenant shall pay Landlord such Additional Rent within fifteen (15) days after receipt by Tenant of a copy of the tax receipt covering the Demised Premises for the tax year for which payment is sought, together with a statement reflecting the computation of Tenant's share. In the event the tax year does not coincide with the calendar year, Tenant's share of the taxes for the first and last year of the Term shall be prorated for such partial tax years.

12/27/99
177716.4                                        4

4.03. Sales Taxes. Tenant shall pay any sales taxes which may be levied, pursuant to statute or other governmental regulation, whether or not enacted or promulgated after the date of this Sublease, upon all or any portion of the Rent payable under this Sublease at any time during the Term by any state, local or federal government having jurisdiction over the Demised Premises or all or any portion of the Rent reserved hereunder. Tenant also shall pay any and all license and/or permit fees incident to the conduct of its business in the Demised Premises.

## ARTICLE 5
### Compliance with Laws and Orders

Tenant shall comply with the requirements of all laws, orders, ordinances and regulations of all governmental authorities and shall not use the Demised Premises in any manner which will constitute a violation of the uses permitted hereunder. Except as may be required in connection with the uses permitted hereunder, Tenant shall not bring or keep, or permit to be brought or kept, in or on the Demised Premises, any flammable, combustible or explosive fluids, materials or hazardous substances and shall not permit any cooking for commercial gain unless expressly authorized by this Sublease, or permit any unusual or objectionable odors to emit from the Demised Premises. Products such as motor oil and gasoline that are used in the sale of equipment shall be stored-and disposed of in accordance with all applicable laws. Tenant shall comply with all rules, orders or requirements of the applicable state and the National Board of Fire Underwriters, fire insurance rating organization, and other similar body or bodies having jurisdiction, and shall not do, permit to be done, or bring or keep anything, in the Demised Premises which shall increase the rate of fire insurance of the Demised Premises or on the property therein over the rate in effect on the Commencement Date. Should Tenant fail to comply with the foregoing covenant, Tenant shall reimburse Landlord on demand, as Additional Rent, any increase to Landlord on insurance premiums thereafter payable which shall be charged because of such violation by Tenant. In any action or proceeding wherein Landlord and Tenant are parties, a schedule or make-up of rates for the Demised Premises, issued by the applicable state fire insurance rating organization or other body fixing the fire insurance rates, shall be conclusive of the facts stated therein and of the items and charges in the fire insurance rate then applicable to the Demised Premises. If any federal, state or municipal government or any department or division thereof shall condemn the Demised Premises or any part thereof as not in conformity with the laws and regulations relating thereto, and if such condemnation, law, order or requirement is with respect to an item which is Tenant's obligation to repair pursuant to Article 6 hereof, or with respect to Tenant's use of the Demised Premises, or is triggered by any future Tenant alterations, Tenant will immediately, at Tenant's own cost and expense, comply therewith, and no abatement or adjustment of rent shall be granted, provided, however, that Tenant shall be entitled to contest the validity thereof.

## ARTICLE 6
### Repairs and Maintenance

After completion of Tenant Finish, but subject to the terms of the Lease, Tenant shall be bound by and perform and observe the terms and conditions to be performed on the part of the tenant under the Lease to perform repairs or maintenance in the Demised Premises, or to make any installations, repairs, replacements, improvements or restorations to the Demised Premises, and the equipment, fixtures and appurtenances thereto (including, but not limited to, the water, sewerage, sprinkler, plumbing, mechanical, HVAC, fire and electrical systems therein and all plate glass); provided, however, Landlord shall be responsible for all roof and structural repairs. Tenant shall indemnify Landlord against all claims, damages, costs and expenses (including attorney's fees and disbursements) arising out of, or in connection with the nonperformance or non-observance of any of such obligations by the Tenant.

## ARTICLE 7
### Additions, Alterations, and Improvements

7.01.  Nonstructural Alterations.  After completion of Tenant Finish, but subject to the terms of the Lease, Tenant may make or cause to be made any interior, non-structural decorations, alterations, additions or improvements in or to the Demised Premises without submitting to Landlord plans and specifications therefor and without obtaining Landlord's consent thereto; provided, however, that such alterations, additions or improvements neither impair the structural soundness nor diminish the value of the Demised Premises or the building in which the Demised Premises are located.  Tenant shall not make or cause to be made any exterior or structural alterations, additions or improvements in or to the Demised Premises without submitting to Landlord plans and specifications therefor and obtaining Landlord's consent thereto, which shall not be unreasonably withheld; provided, however, that such alterations, additions or improvements must not impair, the structural soundness or diminish the value of the Demised Premises or the building in which the Demised Premises are located.

7.02.  Surrender of Demised Premises.  Upon the Expiration Date or upon the earlier termination of this Sublease, Tenant shall peaceably surrender the Demised Premises broom-clean, in good order and condition, reasonable wear and tear excepted and otherwise in the condition required under the Lease.  Notwithstanding the foregoing, prior to the Expiration Date, Tenant shall remove from the Demised Premises the signs, movable furniture, trade fixtures, equipment, and other personalty which were furnished and installed by or on behalf of Tenant ("Tenant's Property").  Any of Tenant's Property not so removed, at Landlord's election and without limiting Landlord's right to compel removal thereof, shall be deemed abandoned.  Any damage to the Demised Premises caused by Tenant in the removal of Tenant's Property shall be promptly repaired by and at Tenant's expense.

7.03.  Title to Improvements.  Title to all alterations, additions, improvements, repairs, decorations (including any hard surface, bonded or adhesively affixed flooring), heating and air

conditioning equipment and fixtures (other than Tenant's Property) which shall have been made, furnished or installed by or at the expense of either Landlord or Tenant in or upon the Demised Premises, shall vest in Landlord upon the installation thereof, and the same shall remain upon and be surrendered with the Demised Premises as a part thereof, unless required to be removed under the terms of the Lease, in which event Tenant shall remove the same in accordance with the applicable provisions of the Lease.

<h2 style="text-align:center">ARTICLE 8</h2>
Insurance

8.01. <u>Landlord's Insurance Rates; Indemnity</u>.  Tenant shall not do anything, or suffer or permit anything to be done, in or about the Demised Premises or Common Areas which shall (a) subject Landlord to any liability or responsibility for injury to any person or property by reason of any activity being conducted in or about the Demised Premises or Common Areas; (b) cause any increase in the fire insurance rates applicable to the Demised Premises or equipment or other property located therein during the Term.  Tenant shall indemnify and hold harmless Landlord from and against all claims, losses, damages, liability, costs and expenses (including attorney's fees and disbursements) which Landlord may suffer or incur as a result of or arising from the acts or omissions of the Tenant, its employees, agents, contractors, licensees and invitees in, on or about the Demised Premises or the Common Areas.

8.02. <u>Insurance Policies</u>.

(a)  Throughout the Term, Tenant shall, at Tenant's sole cost and expense, effect and maintain, with insurance companies authorized to do business in the State of Tennessee, the following insurance coverages with respect to the Demised Premises: (i) comprehensive general liability insurance in an amount not less than $1,000,000.00 combined single limit each occurrence for bodily injury and property damage, including but not limited to premises liability, blanket contractual liability, personal injury and products liability insurance coverage; (ii) workers' compensation coverage in compliance with the Workers' Compensation Act of the state where the Demised Premises are located and employer's liability insurance with a limit of not less than $1,000,000.00 per occurrence for any accident/disease; (iii) umbrella and excess liability insurance (such umbrella and excess liability insurance shall provide additional limits of liability to those coverages required under (i) and (ii) above) with a limit of not less than $1,000,000.00; and (iv) such other property and liability insurance as Landlord may reasonably require.  To the extent possible, the insurance required hereunder shall designate Landlord and Overlandlord as additional insureds.  All such insurance required under this Article shall contain waivers of subrogation in favor of Landlord and Overlandlord and no cancellation or material change or reduction thereof shall be effective until at least ten (10) days after receipt by Landlord's corporate risk management department at Landlord's Boca Raton, Florida address and Overlandlord of written notices thereof.  All such policy or policies shall provide that Landlord and Overlandlord shall not incur any liability to the insurance carriers for payment of any premiums for such insurance as a result of Landlord's or Overlandlord's being designated as additional insureds

thereon. All insurance required under this Article shall be primary and not excess or contributory with any insurance, coinsurance or self-insurance maintained by Landlord or Overlandlord. Certificates of insurance evidencing the insurance required hereunder shall be delivered to Landlord and Overlandlord on or before the date Tenant first enters the Demised Premises after execution hereof and on or before policy anniversary or inception dates. If Tenant fails to maintain the insurance coverages required under this provision, then Landlord may procure and/or pay the same and the amounts so paid by Landlord, with interest thereon at the Interest Rate (hereinafter defined), shall be added to the installment of Rent becoming due on the first day of the next succeeding month and shall be collected as Additional Rent.

(b)     Insurance claims by reason of damage or destruction to all or any portion of the Demised Premises may be adjusted by Landlord, but Tenant shall have the right to join with Landlord in adjusting any such loss; except, however, Tenant's consent in any such adjustment shall not be unreasonably withheld, conditioned or delayed.

(c)     Landlord and Tenant hereby release each other from any and all liability or responsibility (to the other or anyone claiming through or under the other by way of subrogation or otherwise) for any loss of or damage to property covered by the property insurance policies insuring the Demised Premises and any of Tenant's Property or Tenant Finish or Landlord's property, even if such damage shall have been caused by the fault or negligence of the other party hereto.

(d)     Landlord shall maintain (i) "All Risk" property insurance covering the Entire Premises (but not Tenant's Property) in an amount not less than the replacement cost minus the cost of excavation, footings and foundations; and (ii) comprehensive general liability insurance covering the Common Areas in an amount not less than $3,000,000.00 combined single limit each occurrence for bodily injury and property damage, including, but not limited to, premises liability, blanket contractual liability, personal injury and products liability insurance coverage. From and after the Commencement Date, Tenant shall pay Landlord, as Additional Rent, 33.33% of the cost of such "All Risk" and comprehensive general liability insurance within fifteen (15) days after receipt by Tenant of Landlord's written request therefor.

(e)     Nothing contained in this Article shall be construed as imposing any additional obligations or liability upon Landlord, other than expressly set forth in this Sublease.

### ARTICLE 9
#### Mechanic's Liens

9.01. <u>No Mechanics' Liens</u>. Tenant shall not permit any mechanic's or materialmen's liens to be filed against the Demised Premises or any other portion of the Entire Premises by reason of work, labor, services or materials performed for, and/or furnished to, Tenant. If any such lien at any time shall be filed, Tenant may contest the same in good faith but, notwithstanding such contest, within thirty (30) days after the filing thereof, Tenant shall cause such lien to be

released of record by payment, bond, order of a court of competent jurisdiction, or otherwise. If Tenant shall fail to release of record any such lien within such period, Landlord may remove the same by paying the full amount thereof, by bonding or in any other manner Landlord deems appropriate, without investigating the validity thereof and regardless of the fact that Tenant may contest the propriety or the amount thereof; and Tenant upon demand shall reimburse Landlord for the amount paid by Landlord in connection with the discharge of said lien, together with expenses incurred in connection therewith, including attorney's fees and disbursements. Nothing contained in this Sublease shall be construed as a consent on the part of Landlord to subject Landlord's estate in the Demised Premises to any lien or liability under the lien laws of the state in which the Demised Premises are located.

9.02. <u>No Security Interests</u>. Tenant shall not create or suffer to be created a security interest or other lien against any improvements, additions, or other construction made or performed by Tenant in or to the Demised Premises or against any equipment or fixtures installed by Tenant therein. If any such security interest shall be created in breach of the foregoing covenant, Landlord shall be entitled to discharge the same by exercising the rights and remedies afforded Landlord hereunder, including the provisions of Section 9.01.

## ARTICLE 10
### Assignment or Subletting

Tenant shall not assign its interest in this Sublease and/or the leasehold created hereby ("Tenant's Interest") and/or sublet all or any portion of the Demised Premises to any other person, without the prior written consent of Landlord, which consent Landlord shall not unreasonably withhold. Tenant shall not pledge, mortgage or hypothecate Tenant's Interest without the prior written consent of Landlord, which consent Landlord may withhold in its sole discretion. Tenant shall be deemed to have assigned its interest in this Sublease if there shall be a change in control of Tenant. As used herein, the term "change in control" shall mean a change in the possession of the power to direct or cause the direction of management and policy of Tenant (whether or not Tenant shall be a corporation, a partnership or another entity), whether through the ownership of voting securities, by contract, common directors or officers, or the contractual right to manage the business affairs of Tenant. Notwithstanding an assignment by Tenant of the Tenant's Interest or Tenant's subletting of all or any portion of the Demised Premises, Tenant shall remain primarily liable for the performance or observance of all of the obligations to be performed by Tenant pursuant to the provisions of this Sublease.

## ARTICLE 11
### Landlord's Right to Enter

Landlord shall have the right, upon reasonable prior notice, and without disrupting Tenant's operations, to enter upon the Demised Premises during regular business hours for the following purposes: to inspect or protect the same; to effect compliance with any law, order or regulation of any governmental authority having jurisdiction; to exhibit the same to prospective

purchasers, lenders or tenants; to make or supervise repairs, additions or alterations to the same; and to take all materials thereon that may be required therefore; to erect, use and maintain pipes and conduits in and through the Demised Premises; and to alter, decorate or otherwise prepare the Demised Premises for reoccupancy at any time after Tenant shall have vacated the same or shall have removed substantially all of its property therefrom. Landlord shall have the right to enter upon the Demised Premises at all other hours in the event of an emergency involving the Demised Premises. None of the foregoing shall constitute an actual or constructive eviction of Tenant or a deprivation of its rights, nor subject Landlord to any liability or impose upon Landlord any obligation, responsibility or liability whatsoever, for the care, supervision or repair of the building of which the Demised Premises are a part, or any part thereof, other than as specifically provided herein, or entitle Tenant to any compensation or diminution or abatement of the Rent reserved hereunder. If Tenant refuses or neglects to make such repairs as it is required to make or to complete the same within a reasonable time, Landlord may make or cause such repairs to be made at Tenant's cost and expense, and the amount so paid by Landlord, together with interest thereon at the Interest Rate until the time of payment, shall be added to the installment of Minimum Rent next becoming due and shall be then payable as Additional Rent. Landlord shall not be liable to Tenant for any loss or damage that may occur to Tenant's merchandise or other property by reason of any work done by or on behalf of Landlord in or about the Demised Premises unless the same shall arise from the negligence of Landlord, its agents, employees or contractors. Nothing contained in this Section shall be deemed to require Landlord to perform any repair, alteration, maintenance or improvement or otherwise to perform any act or-deed which is the obligation of Tenant under this Sublease.

## ARTICLE 12
### Utilities

Tenant promptly shall pay when due the costs of all utilities rendered or furnished to the Demised Premises from and after the Commencement Date including, but not limited to, steam, heat, water, sewer, electricity, gas, heating, ventilation, air-conditioning and sprinkler systems, and water and/or sewer taxes, if any, assessed thereto. Water and sewer services are to be submetered, and Landlord shall send Tenant an invoice each month for Tenant's share of water and sewer costs. Landlord shall not be liable in damages or otherwise for any failure to furnish or interruption in the services of any of said utilities unless the failure shall arise from Landlord's negligence.

## ARTICLE 13
### Indemnification of Landlord

13.01. Tenant's Indemnity. Tenant shall indemnify and hold harmless Landlord and Landlord's agents and employees from and against any and all loss, liability, fines, suits, claims, obligations, damages, penalties, demands and actions, and costs and expenses of any kind or nature (including attorneys' fees and disbursements) due to or arising out of:

(a)     any work or thing done in, on or about the Demised Premises or any part thereof by Tenant or anyone claiming by, through or under Tenant or the respective employees, agents, licensees, contractors, servants or subtenants of Tenant or any such person, whether prior to, on or after the Commencement Date;

(b)     any use, possession, occupation, condition, operation, maintenance or management, prior to, on or after the Commencement Date, of the Demised Premises or any part thereof, or any parking lot, sidewalk, curb, or space adjacent thereto, or any railroad siding, sewers, or private roadway by Tenant or anyone claiming by, through or under Tenant;

(c)     any acts, omissions or negligence on the part of Tenant or any person claiming by, through or under Tenant, or the respective employees, agents, licensees, invitees, contractors, servants or subtenants of Tenant or any such person;

(d)     any accident or injury to any person (including death) or damage to property (including loss of property) occurring in, on or about the Demised Premises or any part thereof, or any parking lot, sidewalk, curb, or space adjacent thereto, or any railroad siding or private roadway, on or after the date hereof; or

(e)     any failure on the part of Tenant to perform or comply with any of the terms, covenants, agreements, provisions, conditions or limitations contained in this Sublease on its part to be performed or complied with.

The provisions of this Section shall survive the expiration or termination of this Sublease for a period equal to the duration of the applicable statue of limitations. Any sums payable by Tenant to Landlord under this Section shall be Additional Rent.

13.02.  Landlord's Liability.  After completion of Tenant Finish, but subject to the terms of the Lease, Landlord shall not be liable for any of the following, unless caused solely by or due solely to the gross negligence of Landlord without contributory negligence on the part of Tenant or anyone else:

(a)     any failure of water supply, gas or electrical current or any other utility;

(b)     any injury or damage to person or property caused by or resulting from explosion, falling plaster, smoke, gasoline, oil, steam, gas, electricity, hurricane, tornado, flood, wind or similar storms or disturbances, or water, rain, ice or snow which may be upon, or leak or flow from, any street, road, sewer, gas main or subsurface area, or from any part of the Demised Premises or building equipment, or the leakage of gasoline, oil or other substances from pipes, pipelines, appliances, sewers or plumbing in the Demised Premises or from any other place, or from the breaking of any electric wire or the breaking, bursting or leaking of water from any plumbing or sprinkler system, or any other pipe in or about the Demised Premises;

(c)     interference with light or other incorporeal hereditaments, or interference with any railroad siding, sewers or private roadway; or

(d)     loss by theft or otherwise of Tenant's Property or the property of any person claiming by, through or under Tenant.

## ARTICLE 14
### Condemnation

In the event the Demised Premises or any part thereof shall be condemned and taken by eminent domain or for public or quasi public use or by sale in lieu of such taking, Tenant shall have the same rights, privileges and/or obligations which Landlord shall have as tenant under the Lease, except that any time period in the Lease within which Landlord as tenant thereunder shall be required to give a notice or to act shall, for purposes of Tenant's rights and obligations hereunder, be reduced by 10 days.  If this Sublease is not canceled pursuant to the relevant provisions of the Lease, then this Sublease shall remain in full force and effect and the Minimum Rent shall be equitably adjusted between the parties considering the effect of the reduction in size of the Demised Premises in relation to Tenant's operation at the Demised Premises.  Tenant shall have no right or claim to any awards in compensation made to Landlord or Overlandlord.

## ARTICLE 15
### Damage and Destruction

15.01.  Tenant's Rights upon Damage or Destruction.  If all or any portion of the Demised Premises shall be damaged or destroyed during the Term by fire or other casualty for reasons other than the acts or omissions of Tenant, (a) Tenant shall have the same right to terminate this Sublease as Landlord, as tenant under the Lease, shall have to terminate or otherwise cause the term of the Lease to expire or be forfeited, except that any time period in the Lease within which Landlord as tenant thereunder shall be required to give a notice or to act shall, for purposes of Tenant's rights and obligations hereunder, be reduced by 10 days; and (b) Tenant shall have no right to an abatement of Minimum Rent or Additional Rent unless Landlord is entitled to a corresponding abatement with respect to its corresponding obligation under the Lease as it relates to the Demised Premises (and the dollar amount of such abatement shall be limited to the amount of the abatement to which Landlord is entitled under the Lease).  If, by reason of such fire or casualty, Overlandlord elects to terminate the Lease in accordance with the provisions of the Lease then, upon such termination of the Lease, this Sublease automatically shall be terminated as if such date of termination were the expiration date; except, however, that if Landlord has the option to terminate the Lease as to part, but not all, of the Demised Premises, Landlord will not, as long as Tenant is not in default hereunder beyond any applicable grace period, terminate the Lease as to the Demised Premises without the prior consent of Tenant.

15.02.  Landlord's Liability.  Landlord shall not be liable for any inconvenience or annoyance to Tenant or interference or injury to the business of Tenant resulting from any damage

by fire or other casualty or the repair of such damage. Landlord shall not be required to carry insurance of any kind covering Tenant's property.

## ARTICLE 16
### Bankruptcy of Tenant

Upon the filing of a petition by or against Tenant under the Bankruptcy Code, Tenant, as debtor and as debtor-in-possession, and any trustee who may be appointed, agrees (a) to perform each and every obligation of Tenant under this Sublease including, but not limited to, the manner of operations as provided in Article 3 of this Sublease until such time as this Sublease is either rejected or assumed by order of the United States Bankruptcy Court; (b) to pay in advance on the first day of each calendar month as reasonable compensation for the use and occupancy of the Demised Premises an amount equal to all Rent otherwise due pursuant to this Sublease; (c) to reject or assume this Sublease within 60 days of the filing of such petition under Chapter 7 of the Bankruptcy Code or within 120 days (or such shorter terms as Landlord, in its sole discretion, may deem reasonable, as long as notice of such period is given) of the filing of a petition under any other Chapter; (d) to give Landlord at least 45 days prior written notice of any proceeding relating to any assumption of this Sublease; (e) to give Landlord at least 30 days prior written notice of any abandonment of the Demised Premises, any such abandonment to be deemed a rejection of this Sublease; (f) to do all other things of benefit to Landlord otherwise required under the Bankruptcy Code; (g) to be deemed to have rejected this Sublease in the event of the failure to comply with any of the above; and (h) to have consented to the entry of an order by an appropriate United States Bankruptcy Court providing all of the above, waiving notice and hearing of the entry of same. Notwithstanding the foregoing, Tenant shall promptly reimburse Landlord, upon presentation of a statement therefor, for Landlord's attorneys' reasonable fees and disbursements incurred in connection with asserting or confirming Landlord's claims with respect to such bankruptcy. No default under this Sublease by Tenant, either prior to or subsequent to the filing of such a petition, shall be deemed to have been waived unless expressly done so in writing by Landlord.

## ARTICLE 17
### Defaults

17.01. **Rights on Tenant's Default.** If Tenant defaults in any payment of Minimum Rent or Additional Rent and such default continues for more than five (5) days after receipt of written notice from Landlord, or if Tenant defaults in performing any of the other covenants or agreements of this Sublease on Tenant's part to be kept or performed (except for the requirements of Article 10), and such default is not cured or commenced to be cured (and diligently prosecuted to completion thereafter) within twenty (20) days after receipt of written notice from Landlord, or if Tenant breaches the terms of Article 10 hereof, five (5) days after receipt of written notice to Tenant, Landlord shall have the following rights, as well as all others available under applicable laws:

(a)    even though Landlord thereafter may relet the Demised Premises, to declare this Sublease ended, re-enter the Demised Premises, take possession thereof, and remove all persons therefrom, and Tenant shall have no further claim thereon or thereunder;

(b)    to bring suit for the collection of Rent, as it may accrue pursuant to the terms of this Sublease, and damages (including attorneys' fees and disbursements and the reasonable cost of renovating the Demised Premises) without entering into possession of the Demised Premises or canceling this Sublease; and/or

(c)    to bring suit for the collection of the rent or other amounts for which Tenant may be in default, or for the performance of any other covenant or agreement devolving upon Tenant, all without entering into possession of the Demised Premises or terminating this Sublease.

17.02.    Interest. If Tenant defaults in any payment of Minimum Rent or Additional Rent, in addition to any other rights or remedies available to Landlord hereunder, Tenant shall pay to Landlord as Additional Rent interest at the Interest Rate on all amounts unpaid, which amount of interest shall accrue on such unpaid amounts until the same shall be paid to Landlord.

17.03.    Waiver of Jury Trial. Tenant waives trial by jury in any action or proceeding by the Landlord to enforce Landlord's rights hereunder. Tenant further waives any and all statutory rights of redemption following termination of this Sublease or dispossession of Tenant.

17.04.    Abandonment. If Tenant shall abandon the Demised Premises or if the Term shall expire as hereinbefore provided, or if Tenant fails to take possession of the Demised Premises within ten (10)days after the Commencement Date, Landlord may re-enter the Demised Premises and remove Tenant or its legal representatives or other occupant by summary proceedings or otherwise and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end.

17.05.    Remedies. In case of any such re-entry, expiration and/or dispossess by summary proceedings or otherwise, Rent shall become due thereupon and shall be paid up to the time of such re-entry, dispossession and/or expiration, together with such expenses as Landlord may incur for brokerage and/or putting the Demised Premises in good order, or for preparing the same for reletting. Landlord may relet the Demised Premises or any part or parts thereof, either in the name of Landlord or otherwise, for a term or terms which, at Landlord's option, may be less than or exceed the period which may otherwise have constituted the balance of the Term and may grant reasonable concessions or free rent; and Tenant or the legal representatives of Tenant also shall pay Landlord, as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between (a) all Rent hereby reserved and/or covenanted to be paid for the balance of the Term; and (b) the net amount, if any, of the rents collected on account of the leasing of all or any portion of the Demised Premises for each month of the period which would otherwise have constituted the balance of the Term. In computing such liquidated damages, there shall be added to the such deficiency such expenses as Landlord may

incur in connection with reletting, such as for brokerage, advertising, keeping the Demised Premises in good order, attorney's fees and disbursements and for preparing the same for reletting. Any such liquidated damages shall be paid in monthly installments by Tenant on the days specified in this Sublease, until Landlord shall elect to accelerate the payment of such liquidated damages, in which event Tenant shall pay Landlord, within ten (10) days after Landlord's demand, an amount equal to any such deficiency between the sums described in clauses (a) and (b) above, discounted to the present value at the rate of ten percent (10%) per annum. Any suit brought to recover the amount of such deficiency for any month shall not prejudice in any way the rights of Landlord to collect the deficiency for any subsequent month by a similar proceeding. Landlord in its discretion may make such alterations, repairs, replacements and/or decorations in the Demised Premises as may be necessary for the purpose of reletting the Demised Premises. The making of such alterations and/or decorations shall not operate or be construed to release Tenant from liability hereunder. Landlord shall not be liable for failure to relet the Demised Premises. The words "re-enter" and "re-entry" as used in this Sublease shall not be restricted to their technical legal meaning.

17.06.  Injunctive Relief.  In the event of a breach by Tenant of any of the covenants or provisions of this Sublease, Landlord shall have the right of injunctive relief and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not provided for herein. Mention in this Sublease of any particular remedy shall not preclude Landlord from any other remedy, at law or in equity.

17.07.  Cure of Defaults.  If Tenant shall default in the performance of any provision, covenant or condition on its part to be performed under this Sublease, Landlord at its option may perform the same for the account and at the expense of Tenant. If Landlord at any time shall be compelled to pay or elects to pay any sum of money or perform any act which requires the payment of any sum of money by reason of the failure of the Tenant to comply with any provisions of this Sublease, or if Landlord incurs any expense in prosecuting or defending any action or proceeding by reason of any default of Tenant under this Sublease, the sums so paid by Landlord with interest at the Interest Rate (hereinafter defined)shall be due from and be paid by Tenant to Landlord on demand as Additional Rent hereunder. Once the default has been remedied, Tenant shall no longer be considered in default, and Landlord shall have no further remedy until further default.

## ARTICLE 18
### Notices

All notices given herein shall be in writing, shall be addressed to the party to be notified at the address set forth below or at such other address as such party may designate for itself from time to time by notice hereunder, and shall be deemed to have been validly served, given or delivered (a) three (3) days after deposit with the U. S. Postal Service, with proper postage prepaid, by Certified or Registered Mail, Return Receipt Requested, or (b) the next business day after such notice was delivered to a regularly scheduled overnight delivery carrier with delivery

fees either prepaid or an arrangement, satisfactory with such carrier, made for the payment of such fees, or (c) upon receipt of notice given by telecopy, mailgram, telegram, or personal delivery:

| | |
|---|---|
| To Landlord: | W. R. Grace &Co.-Conn.<br>7500 Grace Drive<br>Columbia, Maryland<br>Attention: Akos Nagy<br>Telecopy Number: (410) 531-4195 |
| With Copy To: | W. R. Grace &Co.<br>One Town Center Road<br>Boca Raton, Florida 33486<br>Attention: Real Estate Counsel<br>Telecopy Number: (407) 362-1635 |
| To Tenant: | The American Council of the Blind Enterprises and Services, Inc.<br>One Financial Plaza, Suite 1005<br>120 South Sixth Street<br>Minneapolis, Minnesota 55402-1839<br>Attn.: James R. Olsen<br>Telecopy Number: (612) 332-7850 |

Tenant shall promptly forward to Landlord all notices which it from time to time may receive from Overlandlord.

## ARTICLE 19
### Environmental Indemnities

Landlord shall indemnify and hold Tenant harmless against any claims by third parties arising out of Hazardous Substances discovered on, in, or under the Property solely as the result of the act or omission of anyone other than Tenant, including Tenant's reasonable attorney fees and costs, which indemnity shall be Tenant's exclusive remedy under this paragraph. In the event Hazardous Substances are discovered on, in, or under the Premises solely or partially as a result of any act or omission of Tenant, Tenant shall indemnify and hold Landlord harmless against any claims arising out of such Hazardous Substances including Landlord's reasonable attorney fees and costs. Notwithstanding the foregoing, in the event Hazardous Substances are discovered on, in, or under the Premises solely or partially as a result of any act or omission of both parties or of a party and a third party, a party's duty to indemnify and hold the other party harmless shall be in proportion to that party's allocable share of the act or omission causing such contamination. The provisions of this paragraph shall survive the termination of this Lease. For the purposes hereof, "Hazardous Substances" means any hazardous substance as that term is defined under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (including any amendments thereto), pollutants, contaminants, toxic or hazardous substances or wastes, oil or

16

etroleum products, flammables or any other substances whose nature and/or quantity of xistence, use, release, manufacture or effect renders it subject to clean up, remediation, removal, r investigation under any Federal, state or local environmental, health, community awareness or afety laws or regulations, now or hereafter enacted or promulgated by any governmental authority r court ruling.

## ARTICLE 20
### Subordination

This Sublease shall be subject and subordinate to (a) the Lease, (b) all mortgages, deeds f trust or, other liens now or hereafter affecting the Lease, (c) all mortgages or deeds of trust 'hich may now or hereafter affect the Demised Premises, the Entire Premises or any portion lereof, whether such mortgages or deeds of trust cover only the Demised Premises or the Entire remises or constitute a blanket mortgage or deed of trust covering other premises as well, and l) any renewals, modifications, consolidations, replacements or extensions thereof. This clause lall be self-operative and no further instrument of subordination shall be required by any lortgagee or trustee. Notwithstanding the foregoing, Tenant promptly shall execute any lstrument which Landlord may request in confirmation of such subordination.

## ARTICLE 21
### Miscellaneous

21.01. Landlord's Title. Tenant acknowledges that Landlord holds a leasehold interest i and to the Demised Premises. Landlord warrants it has full power, authority and right to enter ito this Lease and will defend Tenant's leasehold interest in the Demised Premise from any party : entity claiming by, through or under Landlord, subject, however, to the terms of this Sublease id the Lease.

21.02. Quiet Enjoyment. Tenant, upon paying the Rent reserved herein, and performing l of the terms and covenants of this Sublease, shall and may peaceably hold and enjoy the emised Premises during the Term, without any interruption or disturbance from Landlord, or ly party or entity holding by, through or under Landlord, subject, however, to the terms of this iblease and the Lease.

21.03. Compliance with Lease. Tenant shall not violate and shall comply with the terms : the Lease, except to the extent otherwise provided in this Sublease and, if there is conflict :tween the provisions of the Lease and this Sublease which would permit Tenant to do or cause be done or suffer or permit any act or thing which is prohibited or any violation of the Lease, en the provisions of the Lease shall prevail. Tenant shall have no right with respect to any )tion(s) to purchase or right of first refusal, if any, contained in the Lease.

17

21.04. Overlandlord Consent. Whenever the consent or approval of Overlandlord shall be required under the Lease with respect to matters involving this Sublease or the Demised Premises, Tenant shall seek such consent or approval from Landlord and Landlord's refusal to grant such consent or approval shall be deemed reasonable if Landlord, as tenant under the Lease, is required to obtain such consent or approval of Overlandlord and Overlandlord shall refuse or fail to grant such consent or approval. All time periods applicable to the granting or denial of such approvals shall be appropriately expanded to permit the processing of all requests for the same through both the Landlord and Overlandlord.

21.05. Termination of Lease. If the Lease should terminate for any reason whatsoever prior to the Expiration Date, this Sublease likewise shall terminate simultaneously with such termination, and, except for the termination of the Lease because of a default of Landlord as tenant thereunder, Tenant shall acquire no right or cause of action against Landlord by reason of such termination. As long as Tenant shall not be in default under this Sublease beyond any applicable grace period and to the extent permitted by law, Landlord shall not voluntarily cancel or terminate the Lease without the prior written consent of Tenant, which consent shall not be unreasonably withheld or delayed. If Landlord shall default in the performance of any obligation on its part to be performed under the Lease, which obligation was not assumed by Tenant hereunder, Tenant may cure said default for the account and at the expense of Landlord, if Landlord fails to cure said default or commence to cure (and diligently prosecute to completion and thereafter) within twenty (20) days after Landlord's receipt of written notice from Tenant.

21.06. Assignment by Landlord. The term Landlord, as used in this Sublease, shall mean W. R. Grace & Co.-Conn. and any successor in interest thereto. If this Sublease is sold or transferred by Landlord, the seller or assignor shall be relieved of all covenants and obligations under this Sublease thereafter occurring and it shall be deemed without further agreement between the parties hereto and their successors, that the purchaser or assignee has assumed and agreed to carry out all covenants and obligations of Landlord hereunder.

21.07. Force Majeure. The period of time during which either party is prevented or delayed in the performance of or the making of any improvements or repairs or fulfilling any obligation required under this Sublease due to delays caused by fire, catastrophe, strikes or labor trouble (unless the same involve only such party and are not industry-wide), civil commotion, acts of God or the public enemy, governmental prohibitions or regulations, or inability or difficulty to obtain materials, or other causes beyond such party's control, shall be added to such party's time for performance thereof, and such party shall have no liability to the other party by reason thereof.

21.08. Estoppels. Within twenty (20) days after written request by either party (the "Requesting Party"), the other party shall deliver a certification to the Requesting Party or to any proposed mortgagee, trustee or purchaser, certifying the Commencement Date, the duration of the Term, the amount of the Rent and Additional Rent then payable by Tenant hereunder, and also

18

certifying that this Sublease is in full force and effect and that there are no defenses or offsets thereto, or stating those claimed by either party.

21.09. Miscellaneous. No agreement to accept a surrender of the Demised Premises shall be valid unless in writing signed by Landlord. The delivery of keys to any employee or agent of Landlord shall not operate as a termination of this Sublease or a surrender of the Demised Premises. The failure of Landlord to seek redress for violation, or to insist upon the strict performance, of any covenant or condition of this Sublease, or of any rule or regulation, shall not prevent a subsequent act, which would have originally constituted a violation, from having all the force and effect of an original violation. The receipt by Landlord of Rent with knowledge of the breach of any covenant of this Sublease shall not be deemed a waiver of such breach. No provision of this Sublease shall be deemed to have been waived by Landlord, unless such waiver be in writing signed by Landlord. No payment by Tenant or receipt by Landlord of a lesser amount than the Rent stipulated herein shall be deemed to be other than on account of the earliest stipulated Rent, nor shall any endorsement or statement on any check nor any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy provided in this Sublease.

21.10. Entire Agreement. This Sublease contains the entire agreement between the parties as to the subject matter hereof, and all prior discussions, conversations, and correspondence are merged into this Agreement. Any agreement made hereafter shall be ineffective to change, modify, or discharge it in whole or in part, unless such agreement is in writing and signed by the party against whom enforcement of the change, modification or discharge is sought.

21.11. No Personal Liability of Landlord. Notwithstanding anything to the contrary set forth herein, there shall be no personal liability on the part of Landlord with respect to this Sublease, and Tenant shall look solely to the equity, if any, of Landlord in the Demised Premises for the satisfaction of each and every remedy of Tenant in the event of any breach by Landlord of any of the terms, covenants and conditions of this Sublease to be performed by Landlord; such limitation of liability to be absolute and without any exception whatsoever.

21.12. Execution by landlord. This Sublease shall be of no force and effect whatsoever unless it shall have been executed by Landlord.

21.13. Brokers. Landlord and Tenant represent and warrant to each other that they have not dealt with any real estate agent or broker in connection with this Sublease except Collins, Sharp, & Koella, Inc. ("Brokers"). Landlord and Tenant shall indemnify and hold harmless each other from and against any and all loss, claim, cost and expense incurred by reason of the breach of such representation and warranty. Landlord shall pay Brokers a commission in accordance with Landlord's separate agreements with said Brokers.

19

21.14. No Joint Venture. The parties have not created and do not intend to create by this Sublease a joint venture or partnership relation between them.

21.15. Additional Rent. Whenever in this Sublease Tenant is required to pay additional charge(s)or other monies to Landlord, the same shall be deemed to be Additional Rent, and Landlord shall have all remedies for the collection thereof that Landlord has for the non-payment of Rent hereunder.

21.16. No Warranties. Tenant acknowledges and agrees that Landlord, its agents and representatives, have made no representations, warranties or promises with respect to the Demised Premises except as expressly set forth herein.

21.17. Successors Bound. The provisions of this Sublease shall be binding on and inure to the benefit of the parties hereto, their heirs, executors, legal representatives, successors and permitted assigns.

21.18. Holding Over. In the event Tenant shall remain in occupancy of the Demised Premises for any period beyond the Expiration Date or any renewals or extensions thereof or the earlier termination of this Sublease, Tenant shall pay to Landlord, as and for liquidated damages, an amount per diem equal to one-and-one-half (1-1/2) times Rent per diem for the last lease year of the Term, which shall be deemed Additional Rent hereunder. Notwithstanding the foregoing, Tenant shall not be deemed to be authorized to remain in occupancy beyond the Expiration Date or any renewals or extensions thereof or the earlier termination of this Sublease.

21.19. Captions. The captions, section numbers and article numbers appearing in this Sublease in no way define, limit, construe or describe the scope or intent of such sections or articles of this Sublease. The language in all parts of this Sublease shall in all cases be construed as a whole according to its fair meaning, and not strictly for nor against either Landlord or Tenant, and should a court be called upon to interpret any provision hereof, no weight shall be given to, nor shall any construction or interpretation by influenced by, any presumption of preparation of the Sublease by Landlord.

21.20. Attorneys' Fees. In any action or proceeding arising out of this Sublease resulting in litigation, the losing party shall pay to the prevailing party all expenses incurred therefor by the prevailing party, including attorneys' fees and disbursements.

21.21. Interest Rate. As used in this Sublease, the term "Interest Rate" shall mean an annual interest rate of ten (10%) percent.

21.22 Venue. Any action or proceeding arising out of this Sublease will be litigated only in a Federal Court located in the district, or a State Court in the State and County, in which the

20

Demised Premise are located and both parties waive any objection based on forum non conveniens and any objection to venue in connection therewith.

21.23  Memorandum of Sublease.  The parties will at any time at the request of either one, execute duplicate originals of any instrument in recordable form which will constitute a short form sublease or memorandum of sublease setting forth the description of the Demised Premises and the term of this Sublease so that it will not be necessary to record this Sublease in its entirety.

### ARTICLE 22
### Common Area and Other Charges/Declaration of Easements, Covenants and Restrictions

22.01.  Declaration.  This Sublease is made subject and subordinate to the terms, provisions and conditions set forth in the "Declaration of Easements, Covenants and Restrictions" ("Declaration"), a copy of which is attached hereto as Exhibit C and made a part hereof.  The Declaration provides, in part, for a grant of certain easements across the Common Areas (as defined therein) and maintenance by the Overlandlord of the Common Areas.  Landlord has agreed, however, in Article 8 of the Lease, to perform all of the Common Area maintenance obligations of the Overlandlord under the Declaration.

22.02.  Use of Common Areas.  Tenant shall be entitled, in common with others, to use the Common Areas for purposes of ingress and egress and parking (but not for sales or storage or any other unauthorized purpose); provided, however, that from and after the Commencement Date, Tenant will pay Landlord, as Additional Rent, thirty-three and one third percent (33.33%) (after deducting any sums which Landlord is entitled to recoup from the Overlandlord with respect to the Out Parcel), of all sums which Landlord incurs for insurance, cleaning, maintenance, repair or replacement of the Common Areas, including, but not limited to, insurance costs, security (if any), management, accounting and administrative fees of 15 %, personal and real property taxes, utility charges, gardening and landscaping, repairs, repaving, painting, striping, sweeping, refuse removal, snow and ice removal, and maintenance, repair and replacement of paving, curbs and walkways.  Provided, however, Tenant shall not be responsible for more than $5,000.00 in any calendar year for capital improvements to the Common Areas.  Tenant shall pay Landlord such Additional Rent within fifteen (15) days after receipt by Tenant of a copy of the bill for which payment is sought, together with a statement reflecting the computation of Tenant's share.

22.03.  Additional Charges.  During the Term, Tenant shall also pay to Landlord any other charges or additional rent (not otherwise expressly mentioned in this Sublease) relating to common area charges which Landlord, as tenant, is obligated to pay to Overlandlord under the Lease. Tenant shall make such payments to Landlord in such manner, and at such times, as required of Landlord as tenant under the Lease.

## ARTICLE 23
Intentionally Deleted.

## ARTICLE 24
### Signage

Tenant shall have the right, at its sole risk and expense and in conformity with applicable laws and ordinances, to erect, maintain, place and install its usual and customary signs in the interior of the Demised Premises.  In addition, Tenant shall have the right, at its sole risk and expense and in conformity with applicable laws and ordinances, to erect, and thereafter to replace, if Tenant shall so elect, (a) signs on the front and sides of Tenant's portion of the building (being the Demised Premises), and (b) a sign on the pylon sign standard located on the date hereof at or near Clinton Highway.

IN WITNESS WHEREOF, the parties have hereunto set executed this Sublease as of the date first above written.

W. R. GRACE & CO.-CONN.

By: _____
Name: __A. L. Nagy__
Title: _____Director, Real Estate_____

THE AMERICAN COUNCIL OF THE BLIND
ENTERPRISES AND SERVICES, INC.

By: _____
Name: __LeRoy F. Saunders__
Title: __Chairman__

22

## Exhibit A

Agreement of Lease dated May 25, 1979 between MCC Group -Knoxville #1, a Texas Partnership, and W. R. Grace & Co., a Connecticut corporation, which lease was amended by First Amendment of Lease dated December 14, 1979 and was assigned by MCC Group -Knoxville #1 to William B. Dunbar and Vera B. Dunbar, husband and wife, by Assignment of Lease dated June 25, 1981.

<u>Exhibit B</u>
<u>Description of Demised Premises</u>



**EXHIBIT B**

Northern.
Tool & Equipment Co.

Exhibit C
Copy of Declaration

Exhibit "C"

### DECLARATION OF EASEMENTS, COVENANTS AND RESTRICTIONS

THIS DECLARATION OF EASEMENTS, COVENANTS AND RESTRICTIONS (the "Declaration") made this _14th_ day of _May_ , 197_5_, by _____ a Texas general partnership whose general partners are _LAS W. MACLAY_ _____ and _____ with its principal office address at Suite 416, 3131 Turtle Creek Boulevard, Dallas, Texas, 75219 (the "Joint Venture #1") and MCC GROUP - Knoxville #2, a Texas general partnership whose general partners are DOUGLAS W. MACLAY, ROBERT K. CARLIN and LUCIEN B. CROSLAND, with its principal office address at Suite 416, 3131 Turtle Creek Boulevard, Dallas, Texas, 75219, (the "Joint Venture #2") (referred to collectively as the "Developers").

### W I T N E S S E T H:

₹ 6£9977 ∶20C922∕

WHEREAS, the Joint Venture #1 is the owner of that certain real property located in the City of Knoxville, County of Knox, State of Tennessee, containing approximately 3.45 acres, being more particularly described on Exhibit "A" (the "Handy City Parcel"); and

WHEREAS, the Handy City Parcel and appurtenant rights have been leased to W. R. Grace and Co. as tenant (the "Handy City Tenant") by the Joint Venture #1 as landlord for the purpose of operating a 36,000 square foot Handy City home improvement center by the terms of that certain Lease (the "Handy City Lease") dated _____ for a term of twenty-five (25) years with two (2) successive extension options of five (5) years each, measured from the Lease commencement date which is to occur upon completion of the improvements and acceptance of the same by W. R. Grace & Co. (the "Commencement Date"), a Memorandum of said Lease is to be recorded in the Register's Office of Knox County, Tennessee; and

WHEREAS, the Joint Venture #2 is the owner of that certain real property located in the City of Knoxville, County of Knox, State of Tennessee, containing approximately 0.7 acres, more particularly described on Exhibit "B" (the "Out Parcel"); and

WHEREAS, the Handy City Parcel and the Out Parcel are adjacent and contiguous and together constitute a combined parcel depicted on Exhibit "C" which shows both parcels and the intended site plan for each (the "Overall Parcel"); and

WHEREAS, the Developers desire to impose upon the Common Area, as defined hereinafter, certain covenants and restrictions and grant easements for the benefit of the Overall Parcel and each parcel thereof so as to enhance the respective and common uses and values of each,

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is acknowledged by each party unto the other, it is agreed as follows:

1. <u>Duration</u>. The parties do hereby impose upon their respective parcels the provisions contained herein which shall attach to and run with the Overall Parcel and each parcel thereof until the sixtieth (60th) anniversary date of this Declaration, upon which date this Declaration shall automatically terminate if not terminated sooner in accordance with the terms hereof.

2. <u>Common Area Defined</u>. The Common Area shall mean all of the property located on the Overall Parcel to the northeast of a line running generally east-west across the entire Handy City Parcel parallel with the southernmost boundary of the Out Parcel at a distance of 145' feet south of said southernmost

This Instrument Prepared By: Richard D. Croteau
Miller & Martin
10th Floor, Volunteer Building
Chattanooga, TN 37402

boundary of the Out Parcel, which line is shown on Exhibit "C", including the Out Parcel, less any buildings, other improvements or fixtures constructed on the Out Parcel (herein collectively called "Out Parcel Building") for the exclusive use and benefit of any business or enterprise conducted on the Out Parcel.

3.   Reciprocal Easements.  For their mutual use and benefit, the Developers do hereby grant each to the other and their respective guests, invitees, employees and licensees, continual nonexclusive reciprocal easements for ingress/egress, cross driving, parking, utility service, utility installation, utility hook-ins and maintenance, over, under, through, across and upon the Common Area; provided that the exercise of said rights by any parties shall not interfere with the conducting of business or other permitted use of the Handy City Parcel or the Out Parcel; and provided further that the use shall be consistent with the general uses under Article 4 hereof and that the traffic on the access areas and parking shall be used primarily by pedestrians, retail customers with passenger cars or vehicles and light commercial vehicles in connection with the general uses set forth under Article 4 hereof.  In furtherance of the foregoing, the parties agree to cooperate with each other in granting additional appurtenant nonexclusive easements for all of the foregoing purposes and to cooperate in permitting the joint and common use of utility easements, equipment installation, and service whenever it is practical and economically feasible to do so.

4.   General Use.  The Overall Parcel shall be used only for the construction, operation, maintenance and ancillary uses in connection with mercantile, commercial, professional or less intensive compatible uses.

5.   Restrictions On Out Parcel.

(a)  The Out Parcel may be used for any legal retail or commercial use for which the Overall Parcel may be used, except for use as a discotheque, betting parlor, or other on-site entertainment use and so long as the Handy City Tenant is operating a retail home improvement center store on the Handy City parcel, the Out Parcel or any portion thereof shall not be used or permitted to be used for retail use that includes the sale other than on an incidental basis of an array of merchandise usually offered by a retail home improvement store, including, but not limited to, hardware and lumber.

(b)  The owner of the Out Parcel shall provide Joint Venture #1 and the Handy City Tenant with thirty (30) days' prior written notice of the owner's intention to commence any construction upon or use of the Out Parcel allowed hereunder.  Such construction upon or use of the Out Parcel as provided herein shall be undertaken and completed in a manner which will minimize interference with the Handy City Tenant's business in and about the Handy City Parcel or access to the Handy City Parcel.

(c)  Any building constructed upon the Out Parcel shall not exceed one (1) story nor twenty-two (22) feet in height and total building space on the Out Parcel shall not exceed four thousand (4,000) square feet total leasable ground floor area under roof.

(d)  The owner of the Out Parcel shall enclose and cover all trash receptacles located on the Out Parcel, excluding the small individual trash cans of 40 gallons or less in capacity, in a manner acceptable to Joint Venture #1 and the Handy City Tenant so long as it is a tenant or occupant of the Handy City Parcel.

(e)  No sign shall be erected on the Out Parcel without the prior written approval of Joint Venture #1 and the Handy City

Tenant during the term of the Handy City Lease or any extension of the same. The criteria for such approval shall be the height, size, location and style of such pylon sign or other signs and in no event shall the Handy City Tenant be obligated to approve any such sign which substantially interferes with or impedes visual access of the Handy City Tenant's pylon sign; however, it is acknowledged that an owner or, in the alternative, an occupant of the Out Parcel shall have the right, subject to the above approval by Joint Venture #1 and Handy City Tenant, to erect a pylon sign on the Out Parcel.

(f) Without first obtaining the prior written consent of the then owner and first mortgagee, if any, of the Handy City Parcel, and Handy City Tenant so long as it is an occupant or tenant of the Handy City Parcel, no building structure shall be erected on the Out Parcel, except in the building area shown on Exhibit "C".

(g) Until the owner of the Out Parcel uses the Out Parcel as permitted hereunder, Joint Venture #1 shall have the exclusive right to possession of the Out Parcel the same as if the Out Parcel were part of the Handy City Parcel and Joint Venture #1 is hereby granted a temporary easement for the purpose of installing the paved and gravelled areas set forth in Article 6, subsection (a) hereof.

(h) The parking areas on, and the areas of ingress to and egress from, the Out Parcel and the Handy City Parcel as shown on Exhibit C (i) shall be designated and installed so that the Common Area constitutes an integrated parking area to serve all the buildings located on the Overall Parcel and (ii) shall not be altered without first obtaining the prior written consent of Joint Venture #1 and the Handy City Tenant so long as it is an occupant or tenant of the Handy City Parcel.

6.   Obligation's Of Respective Owners.

(a) The owner of the Handy City Parcel shall:

(i) Prepare and install paving (1) for purposes of access, ingress and egress on the 26-foot-wide rectangular strip running east to west along the entire southern-most portion of the Out Parcel as shown on Exhibit "C" and (2) for parking and ingress and egress on the 46-foot-wide rectangular strip running north to south along the western-most portion of the Out Parcel as shown on Exhibit "C"; and,

(ii) Prepare so as to retard growth of vegetation and cover with gravel, up to a cost of $200.00, the portion of the Out Parcel not paved pursuant to the preceding clause (i) of this Article 6(a).

(b) After the commencement of construction of the Out Parcel Building, the then owner thereof shall maintain the Out Parcel Building in good condition and in the event of a total or partial destruction of the Out Parcel Building, shall repair, restore or remove all damaged buildings or improvements or fixtures within a reasonable time thereafter. In the event of a removal of damaged improvements or fixtures or buildings, the Out Parcel shall be left in a safe and presentable condition reasonably satisfactory to the Handy City Tenant so long as it is an occupant.

(c) Upon substantial completion of the building permitted to be constructed on the Out Parcel pursuant to Article 5 hereof, the then owner of the Out Parcel shall prepare and install paving for parking and ingress and egress on that portion of the area described in clause (ii) of Article 6(a) hereof on which no part of the Out Parcel Building is located.

BOOK 1677 PAGE 693

-3-

7.   <u>Common Area Maintenance</u>.  Provided Joint Venture #1 is
being reimbursed as setout hereinafter, Joint Venture #1 shall
have the right and obligation to maintain the Common Area except
that, from and after commencement of construction of the Out
Parcel Building, the fee owner of the Out Parcel is obligated to
cause the Out Parcel to be free of litter which may result from
the undeveloped condition, or from the process of development of
the Out Parcel, or which may be generated by or as a result of
any business or enterprise conducted upon the Out Parcel and
except for damage or destruction, which damage or destruction
shall be controlled by Article 6(b) hereof.  From the date on
which construction of any Out Parcel Building is substantially
completed, the Owner of the Out Parcel shall reimburse Joint
Venture #1 for the Out Parcel's prorata share of the Common Area
Maintenance cost incurred thereafter.  Common Area maintenance
cost shall mean all direct out-of-pocket costs and expenses
reasonably paid or incurred by Joint Venture #1 during each
calendar year in equipping, maintaining and operating (including
without limitation, cleaning, lighting, insuring, restriping,
resurfacing, sweeping and repairing the Common Area, excluding,
however, real estate taxes levied against any portion of the
Common Area) the Common Area (the "Common Area Maintenance
Cost").    The Out Parcel's prorata share of the Common Area
Maintenance Cost shall be the total of such cost multiplied
times a fraction, the numerator of which shall be the total
leasable ground floor area under roof (expressed in square feet)
of all buildings constructed upon the Out Parcel and the denomi-
nator of which shall be the total leasable ground floor area
under roof (expressed in square feet) of all buildings con-
structed upon both the Handy City Parcel and the Out Parcel from
time to time but excluding any outside sales or storage areas;
provided, however, if the nature of the business of any occupant
or tenant of the Out Parcel requires cleaning the Common Area
more often than is customary for the retail use to which the
Handy City Parcel is then used and if the Out Parcel Owner is
not keeping the Out Parcel free of litter as required in the
first sentence hereof, then the Out Parcel Owner shall bear the
cost and expense of such additional cleaning to the extent that
such cost is attributable to cleaning required by the use of the
Out Parcel.  The reimbursement of Joint Venture #1 by the then
owner of the Out Parcel as required herein shall be paid
quarterly within thirty (30) days following demand for the same.
The owner of the Out Parcel's obligations to pay its prorata
share of the Common Area Maintenance Cost is expressly condi-
tioned upon its prior receipt of a demand by Joint Venture #1
accompanied by such statements, bills, invoices or other docu-
mentation certified by a financial officer of Joint Venture #1
as shall be necessary or appropriate for a proper analysis of
such charges.  Joint Venture #1 shall keep good and accurate
books  and  records  in  accordance  with  generally  accepted
accounting principles concerning the operation, maintenance and
management of the Common Area and the then owner of the Out
Parcel and its agents shall have the right at any time and from
time to time during normal business hours to inspect and copy
such books and records.  Any obligation herein pertaining to the
Out Parcel shall be borne by and accrue against the then owner
of the Out Parcel and its successors and assigns.

8.    <u>Remedies</u>.  In the event any party, or its respective
successors or assigns, fails to comply with any of its obliga-
tions hereunder, including performance of the maintenance or
restoration requirements set forth herein, and continues in said
failure for thirty (30) days after receiving a written notice
regarding same from the non-defaulting party for whose benefit
the rights are created, then (a) if said failure is of payment
to said non-defaulting party of any monetary amounts due here-
under, said amount, plus interest at ten percent (10%) a year
and reasonable attorneys fees, shall be deemed a lien on the
parcel of the defaulting party and may be foreclosed as provided
for in mechanics and materialmen's lien law of the State of

Tennessee, and (b) if said failure is in fulfilling a monetary obligation to a third party or is of a non-monetary nature, said non-defaulting party may, but shall not be obligated to, cure, or attempt to cure, said failure on behalf of the defaulting party, and the cost of curing, or attempting to cure, said failure shall be paid by the defaulting party to said non-defaulting party within ten (10) days after receipt of a statement regarding said cost and, if not so paid, said cost, plus interest at ten percent (10%) a year and reasonable attorneys fees, shall be deemed a lien on the parcel of the defaulting party and may be foreclosed as provided for in the mechanics and materialmen's lien law of the State of Tennessee.

9.   _Delegation to Handy City Tenant_.   The rights, obligations (other than those set forth in Article 6(a)), benefits and covenants imposed upon or which inure to the benefit of Joint Venture #1 under this Declaration have been delegated and assigned to the Handy City Tenant pursuant to the Handy City Lease, so long as it occupies any portion of the Handy City Parcel, and the Handy City Tenant shall be permitted to exercise any of the rights granted to Joint Venture #1 herein.

10.   _Amendment, Etc. and Mortgage Joinder_.   This declaration may be amended, modified or terminated earlier than the scheduled termination date by the recording in the Register's Office of Knox County, Tennessee of a certificate executed by the then fee owners of each parcel composing the Overall Parcel and the respective first lien holders, if any, of each parcel representing their unanimous consent to such amendment, modification or termination; provided, however, no amendment, modification or termination of this declaration shall be valid without the joinder of all mortgagees with a valid first lien upon any portion of either parcel upon the effective date or recording of such amendment, modification or termination and the Handy City Tenant so long as it occupies any portion of the Handy City Parcel.

11.   _Covenants Running With The Land_.   The provisions of this declaration shall run with the land and shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns.

IN WITNESS WHEREOF, the parties have hereunto set their authorized signatures.

DEVELOPERS:

MCC GROUP - KNOXVILLE #1

_____
Douglas W. Maclay, General Partner

_____
Robert K. Carlin, General Partner

_____
Lucien B. Crosland, General Partner


MCC GROUP - KNOXVILLE #2

_____
Douglas W. Maclay, General Partner

_____
Robert K. Carlin, General Partner

_____
Lucien B. Crosland, General Partner

<u>Schedule 2.01</u>
<u>Description of Tenant Finish</u>

- Install new double door entrance with 6 feet of glass on each side.
- Construct a demising wall in the existing space leaving 12,000 square feet of space to be leased. The wall shall be constructed of drywall on studs, taped, spackled and sanded, ready to receive paint.
- Construct a dividing wall with 2 sets of swinging doors (each with a six foot opening) to create a back-room area. The wall shall be constructed of drywall on studs, taped, spackled and sanded, ready to receive paint.
- Remove garage door in back, block in space and install double steel doors each 3 feet in width to create a 6 foot opening.
- Install new floor tile on the sales floor and restrooms. (Approximately 9000 square feet.)
- Replace discolored or damaged ceiling tiles to match existing tiles.
- Repair or replace existing lighting.
- Install one new row of lighting on right side of space (looking from the front of the store) to provide more adequate lighting for a retail sales floor.
- Install new air-conditioning and heating units, with 30 tons capacity of air-conditioning.
- Construct two restroom facilities to meet ADA requirements.
- Paint all of interior to be white.
- Tenant shall be allowed signage on pylon sign standard and allowed to install signage on the exterior of the premises.
- Landlord shall repair, reseal and restripe parking lot including marked handicapped spaces as needed by ADA standards.
- Parking lot lights to be put in good working order.
- Install separate electric meter.
- Install meter(s) as necessary to allow for submetering of water and sewer services.