IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., et al.[1], | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

## GRACE'S MEMORANDUM IN OPPOSITION TO ZAI CLAIMANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING CONSUMER PROTECTION ACT CLAIMS [RE: DOCKET NO. 4007]

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................... 1

II.     ARGUMENT .................................................................... 1

        A.      Claimants' CPA Motion Should Be Denied Because
                It Fails to Address the Issue the Court Posed for the
                ZAI Science Trial................................................................ 1

        B.      On Their Merits, Claimants' Consumer Protection Act
                Claims Fail Because Claimants Must Prove that ZAI
                Poses an Unreasonable Risk of Harm.............................................. 2

                1.      In the context of Claimants' consumer protection
                        act claims, "Materiality" and "Toxicity" are inseparable............... 3

                2.      Grace's knowledge regarding ZAI is irrelevant
                        to the ZAI Science Trial issue.............................................. 8

III.    CONCLUSION ................................................................ 13

## TABLE OF AUTHORITIES

**Cases**

*Atari Corp. v. The 3DO Co.*, No. C-94-20298 RMW (EAI), 1994 WL 723601
(N.D. Cal. May 16, 1994) ......................................................................... 6

*Barden v. HarperCollins Publishers, Inc.*, 863 F. Supp. 41 (D. Mass. 1994) .................. 8

*Caro v. Proctor & Gamble Co.*, 22 Cal. Rptr. 2d 419 (Cal. App. Ct. 1993) ................... 4

*Commonwealth v. Amcan Ents., Inc.*, No. CIV.A.93-7034-B, 1996 WL 130934
(Mass. Super. Ct. 1996) ......................................................................... 4

*Dole Fresh Fruit Co. v. Delaware Cold Storage, Inc.*, 961 F. Supp. 676 (D. Del. 1997) ..... 10

*Hampton v. Borough of Tinton Falls Police Dept.*, 98 F.3d 107 (3d Cir. 1996) ............... 10

*Lally v. Volkswagen Aktiengesellschaft*, 698 N.E.2d 28 (Mass. App. Ct. 1998) ............... 7

*Mason v. Mortgage America, Inc.*, 792 P.2d 142 (Wash. 1990) ................................. 8

*National State Bank v. Federal Reserve Bank*, 979 F.2d 1579 (3d Cir. 1992) ................. 3

*Peterson v. Honeywell, Inc.*, No. C2-93-1795, 1994 WL 34200 (Minn. Ct. App.
April 15, 1994) ................................................................................. 3

*Robinson v. Avis Rent-a-Car System, Inc.*, 22 P.3d 818 (Wash. Ct. App. 2001) .............. 4

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997) .................... 6

*Urman v. South Boston Savs. Bank*, 674 N.E.2d 1078 (Mass. 1997) ........................... 7

## INTRODUCTION

Claimants' motion for partial summary judgment on their consumer protection act claims ("CPA Motion") should be denied because it fails to address the issue the Court set for disposition in this ZAI Science Trial – whether science establishes that ZAI poses an unreasonable risk of harm. This fundamental issue lies at the heart of whether any of Claimants' claims have merit. Even on its merits, the CPA Motion should be denied because, absent proof of an unreasonable risk of harm, any alleged misrepresentations regarding ZAI are immaterial and not actionable.

## ARGUMENT

### A.    Claimants' CPA Motion Should Be Denied Because It Fails to Address the Issue the Court Posed for the ZAI Science Trial.

After hearing considerable argument from the parties regarding the proper framework for these proceedings, the Court's order for this Science Trial specified that the issue to be determined is "what science demonstrates with regard to whether ZAI poses an unreasonable risk of harm." *See* November 25, 2002 Order of Court, in In re W.R. Grace & Co. et al., No. 01-01139 (Bankr. D. Del.) (Fitzgerald, J.).[2] Claimants' CPA Motion purports to address a different issue. In fact, contrary to this Court's explicit directive, Claimants' CPA Motion contends that whether ZAI is "unreasonably dangerous" is not the issue to be decided. *See* CPA Motion at 12, 15. The fundamental premise of Claimants' CPA Motion is that "ZAI is

---

[2] For more than eight months since the Court's order, the parties have conducted fact discovery, submitted expert reports and conducted expert discovery, all within the parameters of this directive.

contaminated with asbestos[,] . . . releases asbestos when disturbed" and, as a result, Grace is

liable under state consumer protection laws, "without regard for whether [ZAI] is 'unreasonably

dangerous.'" CPA Motion at 2, 12-13. In short, Claimants contend that whether ZAI is

unreasonably dangerous is irrelevant to their CPA Motion. *Id.* at 13.

Because the CPA Motion completely fails to address the issue this Court posed

for the Science Trial, it should be peremptorily denied. The Court should also deny the CPA

Motion because the requested relief – a declaration that ZAI contains asbestos fibers and releases

asbestos fibers – is meaningless. It merely begs the central question this Court has asked the

parties to address – whether ZAI poses an unreasonable risk of harm – and such elemental

questions as how much asbestos is released, what is the duration of exposure, and whether such

exposure poses an unreasonable risk to human health.

**B.     On Their Merits, Claimants' Consumer Protection Act Claims Fail Because Claimants Must Prove that ZAI Poses an Unreasonable Risk of Harm.**

The crux of Claimants' CPA Motion is the allegation that Grace[3] represented to

homeowners that ZAI was safe when, it is alleged, Grace knew that it was not. *See* CPA Motion

at 10-15. Thus, Claimants' argument goes, Grace committed deceptive business practices by

"withholding proposed product warnings regarding asbestos [in ZAI], affirmatively

misrepresenting ZAI as '100% vermiculite' and deceptively marketing ZAI as a 'do-it-yourself'

material." CPA Motion at 10.

---

[3] The Debtors, W.R. Grace & Co., et al., are referred to herein as "Grace."

It follows that in order to support these claims, Claimants necessarily must prove that Grace's business practices were unfair or deceptive by proving that ZAI is unsafe and that Grace knew so at the time the representations were made. *See, e.g., Peterson v. Honeywell, Inc.*, No. C2-93-1795, 1994 WL 34200, at * 5 (Minn. Ct. App. April 15, 1994) (to establish an actionable consumer protection act claim, plaintiff must prove the existence of false representation or other deceptive business practice, plus the proper legal nexus between complained-of conduct and alleged damages).

As set forth in Grace's Motion for Summary Judgment: (1) Claimants cannot point to any scientifically reliable and admissible evidence that ZAI poses an unreasonable risk of harm; and (2) the scientifically credible evidence demonstrates that the potential risks, if any, from ZAI are well within the range of risks deemed acceptable by science and relevant regulatory agencies. Accordingly, Claimants cannot come anywhere near meeting their summary judgment burden of establishing conclusively that ZAI is not safe in that it poses an unreasonable risk of harm. *See National State Bank v. Federal Reserve Bank*, 979 F.2d 1579, 1581 (3d Cir. 1992) (to succeed on summary judgment motion, movant must show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law).

1.    **In the context of Claimants' consumer protection act claims, "Materiality" and "Toxicity" are inseparable.**

Claimants attempt a semantic end-run around the Court's directive by arguing that, with respect to their consumer protection act claims, the "question becomes materiality, not toxicity." CPA Motion at 13. In other words, Claimants argue that Grace may be found liable

for material misrepresentations even if the Court ultimately determines that ZAI is not unreasonably dangerous. In making that contention, however, Claimants never explain how it is possible for Grace's representation that ZAI was safe to be materially false and a basis for liability if, in fact, ZAI is safe. What Claimants apparently fail to appreciate is that only material misrepresentations are actionable. Where, as here, the alleged misrepresentation concerns a product's safety, the representation is material only if the product is unsafe. Thus, in the context of Claimants' CPA Motion, "materiality" and "toxicity" are inseparable.

        As a threshold matter, it is widely recognized that in order to be actionable, a misrepresentation must be material. *See e.g., Caro v. Proctor & Gamble Co.*, 22 Cal. Rptr. 2d 419, 432 (Cal. App. Ct. 1993); *Commonwealth v. Amcan Ents., Inc.*, No. CIV.A.93-7034-B, 1996 WL 130934, at *3-*4 (Mass. Super. Ct. March 20, 1996); *Robinson v. Avis Rent-a-Car System, Inc.*, 22 P.3d 818, 824 (Wash. Ct. App. 2001). On this there is no dispute. Claimants' CPA Motion argues that the critical question is materiality, and Grace agrees. The parties' disagreement here involves the connection between materiality and toxicity.

        To demonstrate just how dependent the materiality determination is on toxicity here, one need only view Grace's purported misrepresentations while taking as given that ZAI does not pose an unreasonable risk of harm to human health. Such an assumption is appropriate, of course, because the fundamental premise of Claimants' CPA Motion is that they are entitled to summary judgment whether or not ZAI is unreasonably dangerous.

        If ZAI is safe, Grace's representations that ZAI was "safe," "easy to install," "absolutely safe," "non-irritating," "chemically inert," "lightweight," "[so] simple to handle that

a child could pour it between attic joints" and "never needs to be replaced and will last the life of

your home," CPA Motion at 5-7, quite frankly, <u>are</u> <u>not</u> misrepresentations at all.  Simply stated,

if ZAI is safe, how can it be a misrepresentation to say that it is safe?  Similarly, the alleged

misrepresentations that ZAI was "100% vermiculite," "clean" and "a pleasure to handle" cannot

be material if ZAI does not pose an unreasonable risk of harm.  If, for example, the trace

contaminant in ZAI was common house dust, instead of asbestos, no one would argue that

"100% vermiculite" was a material misrepresentation.

Moreover, Claimants take Grace's representation that ZAI was "100%

vermiculite" out of its proper context.  *See* CPA Motion at 6.  Claimants proffer a photograph of

a bag of ZAI to argue that Grace represented ZAI to be 100% vermiculite.[4]  However, upon

examination of that photograph, it becomes clear that the subject representation relates to

flammability.  The bag states as one of seven printed bullet points:

"• <b>Will Not Burn – 100% Vermiculite</b>"

In an attempt to "aid" the Court's reading of the document, Claimants include an electronically

enlarged inset which omits the language "<b>Will Not Burn</b>."  It is undisputed that ZAI does not

burn because its only constituent is vermiculite, which does not burn.  This bullet point

accurately advised potential buyers that ZAI is not flammable because it does not contain any

flammable constituents.

---

[4]The referenced photograph is attached as Exhibit 14 to the Declaration of Darrell W. Scott in Support of Zonolite Attic Insulation Claimants' Memorandum in Support of Motion for Partial Summary Judgment Re W.R. Grace's Consumer Protection Liability ("Claimants' Scott Dec.").

Consistent with the requirement that a misrepresentation be material, courts considering the propriety of advertisements have drawn the line between actionable misrepresentations and what is deemed "puffing." "Puffing" is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997). "Puffing" includes highly generalized claims and claims which are either vague or highly subjective. *See Atari Corp. v. The 3DO Co.*, No. C-94-20298 RMW (EAI), 1994 WL 723601, at *2 (N.D. Cal. 1994). The law gives product sellers, such as Grace, considerable leeway in making subjective representations regarding their products.

Many of the Grace statements referenced in the CPA motion are, at most, non-actionable puffing. Depictions of couples casually installing ZAI and the use of tag lines such as "the easiest attic insulation to install yourself" and "[i]nstalling [ZAI] is as easy as pouring popcorn out of a bag" are textbook examples of non-actionable puffery, regardless of Claimants' attempts to cast these materials in a sinister light. Again, unless the product poses an unreasonable risk, such puffing is clearly immaterial.

Grace's purported misrepresentations were not only immaterial when made, they are completely irrelevant today. One of Claimants' central themes is that Grace should not have promoted ZAI for do-it-yourself installation. *See* CPA Motion at 12. Claimants fail to mention, however, that by the very nature of the product, installation of ZAI was likely an event that only occurred a few times in a lifetime. Moreover, Grace has not sold ZAI since 1984, almost twenty

years ago.  That Claimants installed ZAI themselves as part of a do-it-yourself project decades

ago is not relevant to whether ZAI poses a risk today.

Claimants' suggestion that "[t]he proposed findings . . . carry potentially

significant weight without any reference to whether ZAI alone is sufficient to cause disease," *see*

CPA Motion at 15, ignores the fact that all states' consumer protection laws require the existence

of a deceptive or unfair business act to support an actionable claim for relief.  Claimants must

demonstrate more than a suspicion or unverified belief that Grace's statements were untrue,

misleading or deceptive in order to make an actionable claim.  *See, e.g., Urman v. South Boston*

*Savs. Bank*, 674 N.E2d 1078, 1081-83 (Mass. 1997) (where air testing in condominium "showed

that the unit contained only minimal, nondangerous levels of TCE," summary judgment entered

in favor of defendant seller on consumer protection act claim for non-disclosure of alleged

hazard; affirmed on appeal); *Lally v. Volkswagen Aktiengesellschaft*, 698 N.E.2d 28, 42-43

(Mass. App. Ct. 1998) (no statutory misrepresentation where plaintiff's suspicion and allegation

of misrepresentation by automobile manufacturer was not supported by evidence).

As noted above, absent evidence that ZAI poses an unreasonable risk to

consumers, there is no basis on which to label Grace's statements and ads as misleading, unfair

or deceptive.  Claimants have no basis for an actionable claim.  Claimants' proposed findings get

them no closer to actionable consumer protection claims, because they fail to establish that the

trace amounts of asbestos contained in ZAI pose unreasonable risks of harm to homeowners.

The consumer protection laws do not cure this fundamental defect in the Claimants' claims.[5]

### 2.    Grace's knowledge regarding ZAI is irrelevant to the ZAI Science Trial issue.

Unable to meet their summary judgment burden, Claimants resort to attempting to

create the false impression that Grace believed ZAI was hazardous at the time Grace was selling

it.

What Grace knew about ZAI during the decades prior to the 1984 discontinuance

of its manufacture and sale may raise many disputed issues of fact, but none are at all relevant to

the Science Trial issue.  Such, of course, was an important consideration underlying the Court's

directive that the parties first address the threshold issue of what science shows as to whether

ZAI poses an unreasonable risk of harm to human health.  Claimants' CPA Motion

acknowledges as much in its statement that "Grace's business misconduct is not itself the subject

of the proposed [partial summary judgment] order."  CPA Motion at 4.  In determining whether

ZAI is safe as a matter of science, Grace's state of mind at various points in history is simply

irrelevant.

---

[5] While not all consumer protection laws require proof of actual quantifiable damage, they do require that an injury be the consequence of a materially unfair, deceptive or misleading business practice. *See Mason v. Mortgage America, Inc.,* 792 P.2d 142, 148 (Wash. 1990).  Indeed, courts define "unfairness" in part by determining whether the allegedly unfair, misleading or deceptive act "<u>causes</u> substantial injury to consumers (or competitors or other businessmen)."  *Barden v. HarperCollins Publishers, Inc.*, 863 F. Supp. 41, 46 (D. Mass. 1994) (emphasis added).  Claimants' argument that the consumer protection laws permit recovery for non-quantifiable injuries is simply irrelevant without establishing that these alleged injuries were caused by an actionable (i.e., material) misrepresentation as to the safety of ZAI.

Nevertheless, ostensibly to provide "necessary context to ZAI Claimants' present motion," Claimants' motion papers include a lengthy, distorted statement of what they call "Grace's business misconduct." CPA Motion at 4-9. Claimants concoct their "context" by taking Grace statements and fragments of statements out of context. Grace takes exception to Claimants' inaccurate and unfair portrayal of its past conduct regarding ZAI. It is important to Grace that the Court be aware that Grace never believed ZAI was unsafe to homeowners – a point well-illustrated in many documents, including several of the documents submitted by ZAI Claimants with their motion papers.[6]

Claimants, for example, include with their motion papers a May 24, 1977 memorandum by E.S. Wood, then Grace's Executive Vice-President in charge of the division that made and sold ZAI. *See* Claimants' Scott Dec., Ex. 19. This voluminous document reflects months of Grace's study of the tremolite-in-vermiculite issue. In this memorandum, Mr. Wood plainly states:

> We do not feel that our products create a hazard for normal end uses. . . .
> Due to the products' short and irregular periods of use, it seems unlikely
> that we would exceed the 2 f/ml, 8-hour time weighted average, OSHA
> standard with attic insulation . . . .

Claimants' Scott Dec., Ex. 19, 5/24/77 Memorandum, at 2.

After explaining steps taken to bind ZAI to fulfill an anticipated regulatory requirement (which ultimately never came to be), Mr. Wood notes that:

---

[6]To the extent these proceedings ever reach a general liability trial, Grace will present the testimony of its former employees who studied and sold ZAI, as well as a more complete presentation of relevant historical documents in their proper context. To do so now, however, would be both premature and contrary to the Court's directive for the ZAI Science Trial.

> It should be emphasized that these steps are being taken to comply with extremely stringent projected regulations, and not because we feel that the use of these products creates a serious risk for consumers.
>
> Considering the brief and irregular pattern of use, we do not believe that asbestos exposure from our products causes an increased risk of health problems.

*Id.* at 8. There is, therefore, another side of the story regarding what Grace believed about ZAI, a circumstance that in itself precludes Claimants' reliance on alleged Grace misrepresentations in the context of Claimants' summary judgment motion. *See Hampton v. Borough of Tinton Falls Police Dept.*, 98 F.3d 107, 112 (3d Cir. 1996) (summary judgment inappropriate where non-movant demonstrates a dispute over facts that might affect the outcome of the suit); *Dole Fresh Fruit Co. v. Delaware Cold Storage, Inc.*, 961 F. Supp. 676, 680 (D. Del. 1997) (citing *Hampton*).

When concerns about the presence of asbestos in commonly used consumer products arose in the 1970s, Grace investigated and tested ZAI and assured itself that ZAI was safe. *See* Claimants' Scott Dec., Ex. 19; *see also* E.S. Wood Dep., Feb. 5, 2003, at 24-29[7]. Grace even went so far as to voluntarily go to the United States Consumer Product Safety Commission ("CPSC") to discuss ZAI, presenting to the CPSC the results of air sampling tests that Grace conducted during the installation of ZAI in homes.[8] Armed with that information, the CPSC, which had banned a variety of asbestos-containing products during the 1970s, never banned ZAI, thus allowing Grace to continue to sell it.

---

[7] The relevant portion of the deposition of E.S. Wood is attached hereto as Exhibit A.

[8] *See* Exhibit 25, Volume I of the Attachments to Memorandum in Support of the ZAI Claimants' Motion for Summary Judgment.

Grace's historical documents from the 1970s and early 1980s regarding the possible withdrawal of ZAI from the market, possible warnings, or attempts to bind ZAI cannot be read fairly without regard to the regulatory context of the time. As set forth in Mr. Wood's May 24, 1977 memorandum, Grace was operating under the assumption that the CPSC was going to ban all products containing any asbestos fibers "unless they can be shown to be 'bound.'" Claimants' Scott Dec., Ex. 19, 5/24/77 Memorandum, at 7-8. During that time period, the CPSC had banned drywall joint compound, artificial fireplace logs and spackling compounds containing asbestos fibers. *See id*. Accordingly, Claimants' repeated suggestions that Grace tried to bind ZAI, contemplated warnings and/or prepared notices of product withdrawal because it believed ZAI was unsafe are simply false.

At various times during the 1970s, Grace considered whether warning labels should be placed on ZAI. Grace concluded that warning labels were unnecessary because, when used as intended, ZAI did not create asbestos exposures exceeding governmental exposure limits. In a March 28, 1977 memorandum regarding "Guidelines for Handling of Tremolite Contamination In our Mines, Plants and Products," Mr. Wood instructed his division on Grace's policy regarding warnings and responses to product inquiries:

1.    We will not expose our customers and employees to environments which have been formally defined as hazardous by the U.S. Government without proper caution as to the nature of the hazard. We will take all reasonable steps and practicable steps to minimize or eliminate unreasonable risks which may be associated with the manufacture and use of our products including, where appropriate, instructions for proper use of our products.

2.    The tremolite asbestos fiber count limits in effect and enumerated in OSHA (or MESA) regulations will be the guide to whether a health hazard exists. If the product in reasonable use exposes the user to counts in excess of OSHA limits, caution labels will be affixed to the products.

3.      Customer, user, or government agency inquiries with respect to tremolite in our plants, products, or use environments will receive straightforward and candid responses with respect to the data and measurements which we have gathered and which are relevant to their respective situations.

Claimants' Scott Dec., Ex. 19, 3/28/77 Memorandum, at 1-2. Grace followed this policy with

respect to ZAI. Because ZAI in its intended use did not create fiber levels exceeding

government thresholds, no specific warning was deemed necessary. *See* Claimants' Scott Dec.,

Ex. 19, 5/24/77 Memorandum, at 15.

There is no question that Grace looked carefully at ZAI, at the asbestos content of

ZAI, at removing as much asbestos from ZAI as possible, at the extent to which the product

would release asbestos into the air during installation, at the dose and duration of potential

exposure for homeowners who used the product, at what the government said through

regulations and otherwise that would be helpful to the analysis and, ultimately, at the same issue

that the Court has directed the parties to address – whether ZAI poses an unreasonable risk of

harm to homeowners.[9]

What Grace concluded decades ago – that ZAI does not pose an unreasonable risk

of harm – is fully consistent with what today's science shows, a point spelled out in detail in

Grace's Motion for Summary Judgment.

---

[9] All of this is apparent from merely reading the several Grace documents submitted with Claimants' CPA Motion without even referencing the thousands of additional historical documents regarding Grace's production and sale of ZAI.

## CONCLUSION

For the reasons set forth above, this Court should deny ZAI Claimants' Motion

for Partial Summary Judgement Regarding Consumer Protection Act Claims.

August, 8, 2003

RESPECTFULLY SUBMITTED,


REED SMITH LLP
James J. Restivo, Jr.
Lawrence E. Flatley
Douglas E. Cameron
James W. Bentz
435 Sixth Avenue
Pittsburgh, PA  15219
Telephone:  412.288.3131
Facsimile:  412.288.3063


SPECIAL ASBESTOS COUNSEL FOR
DEBTORS


PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2346)
Scotta E. McFarland (Bar No. 4184)
Paula A. Galbraith (Bar No. 4258)
919 Market Street
Suite 1600
Wilmington, DE  19801
Telephone:  302.652.4100
Facsimile:  302.652.4400


CO-COUNSEL FOR DEBTORS