UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                                    .    Case No. 01-01139 (JKF)
                                          .
W. R. GRACE & CO., <u>et al</u>.,      .    Chapter 11
                                          .    Jointly Administered
          Debtors.                        .
                                          .    July 28, 2003 (12 noon)
                                          .    Wilmington

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

FORM FED-25   PENGAD • 1-800-631-6989

1    THE COURT:  Good afternoon.  Please be seated.  Are

2 the parties connected on the phone?  Okay, thank you.  This

3 is the matter of W.R. Grace, 01-1139.  I have listed as

4 participating by phone:  Jay Sakalo, Doug Cameron, and/or Jim

5 Restivo, Ed Westbrook, and Darrell Scott.  Is anyone else

6 present on the phone, please?  Anybody present on the phone?

7    MR. CAMERON (TELEPHONIC):  Yes, Your Honor.

8    THE COURT:  Okay.

9    MR. CAMERON (TELEPHONIC):  Doug Cameron, Your

10 Honor.

11    THE COURT:  Thanks, I wasn't sure we were getting

12 through, thank you.  All right.  Good afternoon.

13    MR. KAPP:  Good afternoon, Your Honor.

14    MR. WESTBROOK (TELEPHONIC):  Good afternoon, Your

15 Honor.

16    MR. KAPP:  James Kapp on behalf of the debtors.

17 Your Honor, I'm working off the amended notice that the

18 debtors filed last week.

19    THE COURT:  Okay, well, let me tell you what I

20 think I've taken care of, and we can see if you agree.

21    MR. KAPP:  Okay.

22    THE COURT:  There was a CNO filed on agenda item 2,

23 but I didn't see it in time to stamp two.  I have the order

24 entered.  So I have signed it, but it's not docketed.

25    MR. KAPP:  Thank you, Your Honor.

FORM FED-25   PENGAD • 1-800-631-6989

1    THE COURT:  The same is true at item 3 on the COC.

2  That order has been entered but not docketed yet.  I believe

3  there is an order that was entered on agenda item 8.  One is

4  continued.  Nine, I'm expecting you to bring an order here

5  and everything else is going forward.

6    MR. KAPP:  Your Honor, I hate to tell you this but

7  I'm in agreement.

8    THE COURT:  Okay.

9    MR. KAPP:  Would you like us to address 9 now with

10  the order, or we should we --

11    THE COURT:  That's fine if you're ready to do that.

12    MR. KAPP:  May I approach?

13    THE COURT:  Yes.  Okay, thank you.  This takes care

14  of everybody's fee applications for this period.  Okay, I've

15  signed the order on item 9.

16    MR. KAPP:  Thank you, Your Honor.

17    THE COURT:  Thank you.

18    MR. KAPP:  Your Honor, the first open matter would

19  be item number 4 which is the joint motion of the debtors and

20  the ZAI claimants.  Doug Cameron and Ed Westbrook are on the

21  phone to address the status of that motion.

22    THE COURT:  Were objections filed?

23    MR. KAPP:  Your Honor, I'm not aware of any

24  objections.

25    THE COURT:  Okay, Mr. Cameron?

MR. CAMERON (TELEPHONIC): Yes, Your Honor. We filed the joint motion requesting an increase in the budget that Your Honor set back in July of 2002. The motion goes through in detail but in essence we have worked very hard and as cost efficiently as possible, and we are short in terms of our estimates that when we filed the materials before you back in July and we have requested an increase to get us through to the September hearing that Your Honor has scheduled on the Summit's trial. Right now discovery is closed, and we had an extensive number of depositions, both fact and expert witnesses, and we are now in the midst of preparing reply briefs after the original motions, dispositive motions were filed on July 7. So we have basically several more months to go to get to the hearing that Your Honor scheduled.

THE COURT: Mr. Westbrook?

MR. WESTBROOK (TELEPHONIC): Yes, Your Honor. Mr. Cameron has correctly summarized where we have been and where we're going, and the motion does lay it out in much more detail. We did submit to Your Honor, which we thought were courtesy copies of our briefs at the time when you were perhaps going to be the facilitator, and it might give, at least by their weight, give Your Honor some idea about the amount of work that has been done, and I think we have substantially sharpened the issues and the reply briefs will

1  do that further, but we are -- both sides are out of money on

2  the allotted funds.  The ZAI claimants are actually about

3  $250,000 above the budget.  Of course we haven't been paid

4  for that, but on paper we've already billed that, so we are

5  out of the allocated funds, and we do join in this joint

6  request to have the budget increased so that we can get to

7  the hearing and get the work done for the Court.

8      THE COURT:  All right.  Do you have -- Judge Rolin

9  had indicated he was going to withdraw the reference and then

10 called me back and said he wasn't going to withdraw the

11 reference, so that's why I was in the position of thinking

12 that I could act as the settlement judge but then can't.  So

13 as a result I'm not sure what process has been set up.  Can

14 somebody fill me in?

15     MR. WESTBROOK (TELEPHONIC):  Your Honor, Ed

16 Westbrook.  Francis McGovern has contacted both sides, Your

17 Honor.  We've had initial discussions with Mr. McGovern.  He

18 was traveling on the west coast when he called me, and we had

19 a rather brief conversation, and he was going to check his

20 schedule and see if he had some time in that period between

21 the time when our briefing would be complete, which I believe

22 is August 18th and substantially in advance of the hearing

23 before Your Honor so that we could get the lay of the land on

24 whether this could be mediated to some successful resolution.

25     THE COURT:  Okay.  Is this budget sufficient to

1  cover the fact that you're going to have some mediations?

2          MR. WESTBROOK (TELEPHONIC):  I believe, Your Honor,

3  that it should be sufficient.

4          THE COURT:  Mr. Cameron?

5          MR. CAMERON (TELEPHONIC):  Yes, I would agree with

6  that, Your Honor.

7          THE COURT:  Okay.  I'm not aware of any responses

8  or objections to this agenda item; were there any?

9          MR. WESTBROOK (TELEPHONIC):  Your Honor, Ed

10  Westbrook.  We have received none and been informed that none

11  were filed as far as anybody knows.

12          THE COURT:  All right.  Does anybody have an

13  objection?  Okay.  Let me see if I have an order here.  Do

14  you have one?

15          MR. KAPP:  Yes.

16          THE COURT:  You do, okay.  Let me just take yours.

17  That will be easier, thank you.  Do your best not to exceed

18  this, folks, this is a very rich budget for something that I

19  think is a complex issue but after summary judgments in the

20  event that this can't be decided that way, and of course I

21  don't know yet whether it can or not, I think that the

22  further proceedings that will take place shouldn't result in

23  more than probably two to three days at most of trial.  Based

24  on some recent experience dealing with experts, I think

25  that's probably about all everybody can take on the subject

1  at one time.  So, try to stay within this, please.  Okay,

2  that order is entered.

3          MR. CAMERON (TELEPHONIC):  Okay.  Thank you, Your

4  Honor.

5          MR. KAPP:  Your Honor, then that leaves us the

6  three contested matters.  I might note item 5 this morning

7  the debtors agreed to continue that until the next hearing.

8  The parties are still discussing if there's a consensual

9  resolution to be had.

10          THE COURT:  All right.

11          MR. KAPP:  And then I might note, Your Honor, if we

12  can take it out of order, that item 7, a CNO was filed on

13  Friday with a revised order upon agreement with the Creditors

14  Committee and the Property Damage Committee.  So we believe

15  there are no objections to that motion.

16          THE COURT:  A CNO or a certificate of counsel.

17          MR. KAPP:  Certificate of counsel, Your Honor.

18          THE COURT:  Okay.  All right, I haven't seen that

19  one yet.

20          MR. KAPP:  Your Honor, I have an order if I can

21  present it to you.

22          THE COURT:  Okay, has everybody who is a party in

23  interest seen this --

24          MR. KAPP:  Yes, Your Honor.

25          THE COURT:  -- since it was just filed on Friday?

1    No objections to it?

2          MR. KAPP:   No objections that I'm aware of since
3    Friday.

4          THE COURT:   All right.

5          MR. KAPP:   No objections were filed on the
6    objection deadline although the Property Damage Committee and
7    the Creditors Committee asked for additional time, and we've
8    resolved their problems with this revised order.

9          THE COURT:   All right.   May I see it, please.
10   Thank you.

11         MR. KAPP:   I would note, Your Honor, the key
12   difference is that the motion provided for funds in both 2003
13   and 2004.   This just deals with 2003 in the amounts
14   requested.   We'll deal with 2004 when we get there.

15         THE COURT:   I take it the debtor has the funds to
16   make the payments that I'm authorizing by signing these
17   orders?

18         MR. KAPP:   Yes, Your Honor.

19         THE COURT:   Okay.   I see that this withdraws the
20   2004 request, so I guess we'll deal with it later.

21         MR. KAPP:   Thank you, Your Honor.   That then leaves
22   the final item, which is item 6, the motion of Costa and
23   Thornburg for relief from the automatic stay.   Their counsel
24   are here and ready to address their motion.

25         THE COURT:   All right.

MR. WEIS:  Good afternoon, Your Honor.  Martin Weis, local counsel for Robert Costa and Ronald Thornburg.  I would request -- I'd like to move the admission pro hac vice for this matter of Mr. Peter Chatfield.  He is a member in good standing of the bar of the State of Maryland and the District of Columbia.

THE COURT:  Has a motion been filed?

MR. WEIS:  It has, Your Honor, but it was filed last week.

THE COURT:  Any objection to Mr. Chatfield's appearance today?  All right, that motion's granted, and it will be confirmed in writing when I get the motion.

MR. WEIS:  Thank you, Your Honor.

THE COURT:  Okay.

MR. CHATFIELD:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

MR. CHATFIELD:  I'm Peter Chatfield.  I represent Robert Costa and Ronald Thornburg in a False Claims Act matter that was filed in 1995 in the Northern District of California.  The defendants in that action were Baker & Taylor, Inc., which is a non-bankrupt defendant and W.R. Grace of Connecticut which used to own Baker & Taylor as a unincorporated subsidiary until 1992 at which point they incorporated the company and sold it to some of its managers and to the Carlisle Group.  The reason for this motion is

that that case is effectively resolved in the Northern

District of California.  In a series of motions after the

governments intervened, the United States and California

intervened in the false claims actions, my clients were

dismissed.  First, Ronald Thornburg was dismissed on the

basis of statute of limitations grounds and subsequently

Robert Costa was dismissed on a ground that meets the False

Claims Act, the public disclosure jurisdictional ground.  We

moved immediately after their dismissal for rehearing and

that was denied and then we moved as well for a right to

appeal immediately to the Ninth Circuit on both of those

dismissals, and that was denied as well.  In the interim

time, shortly before the order was entered denying our right

to appeal, a settlement was reached between W.R. Grace, Baker

& Taylor, and all of the main government plaintiffs which

included the State of California, the federal government, and

seventeen other states which had intervened to pursue their

own similar allegations.  The nature of the fraud at issue

was Baker & Taylor Books, is a wholesaler of books that sells

to public lending libraries as well as to government

libraries and government institutions directly including the

United States Government Libraries and including the Library

of Congress, and as well including the State of California's

government agencies.  When that suit was settled our

understanding both from the pleadings and confirmation from

the federal government is that W.R. Grace refused to sign the
stipulation of dismissal with the United States, and as a
result, the District Court in the Northern District of
California and we were never told at the time before the stay
was entered on the proceeding that there was in fact a
settlement, and then the stay was entered, and the case was
put into stasis while this proceeding went forward.  We
understand the reason from the United States, the reason that
W.R. Grace refused to sign the stipulation of dismissal was
the pendency of an ongoing criminal investigation by the U.S.
Attorney's Office in the District of New Jersey.  We have no
knowledge at this time whether that investigation has been
closed or not, but for current purposes we're seeking to lift
the stay against both parties.  We believe the argument for
lifting the stay against Baker & Taylor, Inc., is the clearer
of the two arguments.  Given that this was a fraud case,
there is no right of contribution or indemnity as well given
the fact that W.R. Grace officials that initiated this fraud
are among the purchasers of Baker & Taylor, Inc., that bought
the company when it split off from W.R. Grace.  Any argument
as suggested in the debtor's briefs that there's a right of
contribution indemnity makes no sense, and it couldn't
possibly happen.  In addition, the period from '92 forward
through '95, Baker & Taylor, Inc., was the only defendant
involved and the only issues that remained in the case are

1  payment of statutory attorney's fees, costs, and expenses

2  under the False Claims Act if we prevail on the appeal.  With

3  regard to W.R. Grace itself, there is case law, most notably,

4  U.S. X-Well Markets vs. NBI, Inc., which appears at 142 B.R.

5  I -- Bankruptcy I, District of D.C. (1992) opinion which says

6  that relators' actions within the False Claims Act are

7  covered by the police power exemption, and we believe that

8  rule is correct.  It holds only that the issue of liability

9  may be determined outside of the stay, and any collection

10  effort against a bankrupt debtor would still have to wait and

11  go through the bankruptcy proceedings.  We believe that is

12  the correct application of the law.  When Congress amended

13  the False Claims Act in 1986, the legislative history shows

14  that a major purpose of the amendments -- or the major

15  purposes of the amendments was to assure that private

16  citizens known as relators would have incentives and

17  protections to go forward and file false claims actions on

18  behalf of the United States and also have protections and

19  incentives in place within the statute to assure that they

20  could hire competent counsel to help the United States

21  prosecute the fraud.  California then immediately copied the

22  statute essentially and enacted it on the state level with if

23  anything even more powerful protections and incentives for

24  relators and members to come forward and represent the United

25  States.  The history of the pre-tunc (phonetical) provisions

1    goes back to before the formation of the union, and

2    essentially what they do is give people the right to act as

3    private attorney generals on behalf of the United States.  We

4    think that it's important to the continued effectiveness of

5    this method of policing thought against the United States

6    that the relator's protections and their counsel's

7    protections for attorney's fees, you could give them the

8    protection even in the bankruptcy situation because otherwise

9    there would be dis-incentives for people to take the risk in

10    the advance of substantial funds on behalf of the United

11    States and California.

12        THE COURT:  Well, I think I'm a little unclear

13    about if you could back up for me with respect to the

14    settlement.  There was a settlement in principle or a

15    settlement that was actually presented to the Court or what

16    was the status --

17        MR. CHATFIELD:  There was a settlement as far as I

18    know that was never presented to the Court, but it was paid

19    in fact.  Baker & Taylor originally paid a settlement to the

20    United States of $3 million, and then subsequently W.R. Grace

21    and Baker & Taylor settled with the United States and

22    California and the other sixteen states for a total of 17.5

23    million, I believe, 3 million or more of which went to the

24    United States from W.R. Grace and 4 million of which went to

25    the State of California from Baker & Taylor and W.R. Grace,

1   and I'm not sure what the split is.  I don't know that anyone

2   outside of the defendants knows how they split that

3   liability.  But the governments have been paid, and the

4   governments have already agreed to pay the relators the

5   minimum statutory relator share recognizing the risks that we

6   would be successful on appeal, but also, it should be noted

7   for the Court, that they objected at the time to the motions

8   to dismiss our clients because they thought that on the

9   merits we deserved to be there and because we were actively

10  helping with the litigation at the time.

11          THE COURT:  Who -- Which "they" objected?

12          MR. CHATFIELD:  California and the United States.

13  Individual states we didn't have a direct relationship

14  because they didn't have pre-tunc statutes.

15          THE COURT:  Okay, so your clients are not parties

16  to the settlement.

17          MR. CHATFIELD:  No, they're not.

18          THE COURT:  And does your client intend to go

19  forward with the appeal to the Ninth Circuit if relief from

20  stay is granted or does the other client expect to get back

21  into the suit somehow?  I'm not sure what -- If I approve

22  this motion, what is it that you're going to do?

23          MR. CHATFIELD:  If you approve the motion, we will

24  go back to the Northern District of California and ask the

25  Court either to enter a final judgment in the case, given

that it has effectively been settled even though none of the

remaining parties have noticed the Court that it is settled,

or to -- theirs has a Rule 54 right to immediate appeal so

that we can go to the Ninth Circuit on those other issues.

Again, the United States -- California has dismissed the

action that it filed, but under Rule 54 the proceeding cannot

go forward until all of the plaintiffs' and all of the

defendants' issues are resolved one way or the other.  And

technically still open before the Northern District of

California is the claims between the United States, W.R.

Grace, and Baker & Taylor.  No, actually the United States

and W.R. Grace.

THE COURT:  But I thought they were settled?

MR. CHATFIELD:  They were settled but they never

dismissed the action and because we were as relators

dismissed from the action, we had no ability to go into the

Court and get a dismissal as a matter of right from the

Court.   So that I don't know to this date if the Northern

District of California has been informed by any of the

remaining parties that the case has effectively been settled.

We intend to do that when we go back to the Northern District

of California.

THE COURT:  If your clients are to be paid whatever

their minimum amounts are under the False Claims Act as part

of the settlement, what's the basis for an appeal?  I'm

1   confused about --

2          MR. CHATFIELD:   Okay.   There were two things that

3   relators get in the False Claims Act rewards.   One is a

4   percentage of the recovery that the government entities get.

5   That can be anywhere from fifteen to twenty-five percent of

6   the recovery.   The United States and California have both

7   agreed to pay the fifteen percent, a relator's share, that's

8   what it's called, and we've already resolved those issues

9   with the government entities.   In addition, the statute

10  provides that in any false claims case in which a judgment is

11  entered or there is a settlement the Court shall order the

12  defendants to pay reasonable attorney's fees, costs, and

13  expenses of the litigation.   So at this point, the issue

14  that's remaining -- the only issue that remains is the

15  liability of the two defendants in the False Claims Act case

16  for attorney's fees, expenses, and costs of the False Claims

17  Act litigation.

18         THE COURT:   Why is that simply not a claim to be

19  filed here?

20         MR. CHATFIELD:   Well, with regard to Baker, Taylor,

21  Inc., Baker, Taylor, Inc., is not a party to this bankruptcy,

22  and has joint several liability and -- but the Court sua

23  sponte, the District Court, sua sponte because it had the

24  similar name, I believe, as Baker & Taylor, which it was a

25  subsidiary of W.R. Grace stayed the entire proceedings.   So,

with regard to Baker & Taylor, Inc., we would like the Court either to lift the stay if there is a stay in effect or issue an order making clear that the stay that went in automatically with the bankruptcy of W.R. Grace does not apply to Baker & Taylor, Inc., because it is a non-related party, non-debtor.  With regards to W.R. Grace, again it is that D.C. circuit law and other False Claims Act law that says that relators in a lawsuit filed under the False Claims Act act as both individuals and on behalf of the government.

THE COURT:  Well, you may, but I think the issue about what the costs and attorney's fees are that are reasonable is simply a claim, and whether you're acting in terms of prosecuting the action or not on behalf of the government, which you clearly are if you're a relator and even if that's under the police powers, I'm not sure I see how the claim for attorney's fees is, it's just a claim.

MR. CHATFIELD:  Well, the reason it would be is that is the method that Congress chose with regard to fraud against the federal government to enforce the provisions against defrauding the federal government.  So, the relators indeed would act as attorney generals, private attorney generals with the United States, and so this is a way to insure that people have that incentive.  But dis-incentives to relators to come forward would be increased if they knew that they stood a unique risk viz-a-viz the United States or

1  California --

2        THE COURT:  But you don't.  I mean, a court at some

3  point -- there has been a settlement.  If the statute is

4  self-executing and it says the Court shall enter an order

5  granting reasonable fees and costs for the relator whether

6  there's a settlement or an adjudication on the merits by some

7  other method, then a court is going to enter an order that

8  grants attorney's fees and costs.  So, the question is why

9  isn't it simply a claim?

10       MR. CHATFIELD:  The reason it's not a claim at this

11  point is that we have been, as it stands now, dismissed from

12  the District Court action, so we need to be able to have the

13  right on appeal to establish that we are proper relators.

14       THE COURT:  But the Court -- Well, I mean, the

15  District Court apparently has determined that you don't have

16  too much likelihood of success on the merits of that issue,

17  so why should I lift the stay to permit that issue to go

18  forward now?

19       MR. CHATFIELD:  Well, if you look at our reply

20  brief that we made a motion to file with regard to Thornburg,

21  he was dismissed on a statute of limitations argument that

22  essentially said that because the Court concluded that he was

23  aware of the existence of this bar more than six years before

24  he filed suit, that he was barred by the minimum six year

25  statute of limitations under the False Claims Act.  The

1   problem with his decision and the way it varies from every

2   other decision that's ever been rendered in the False Claims

3   Act context is that it ignores the fact that the fraud

4   continued.  And especially with regard to Baker & Taylor,

5   Inc., which was the second owner of the company.  It

6   continued up until the day that they filed their False Claims

7   Act lawsuits, so they is no way --

8          THE COURT:  Maybe it wouldn't have if he was aware

9   of it six years before and brought some action about it.

10          MR. CHATFIELD:  That's not what the statute of

11   limitations says, Your Honor, and, you know, actually there's

12   two issues.  One is, did he know about it; the second is, did

13   he know enough about it that he could file a legitimate

14   action; and the third issue is, did he know about the False

15   Claims Act which in '85 was not even the earliest time that

16   these claims reach back to, it was not even an amendment.  So

17   there was no right for him to bring the action back, you

18   know, that far back.  So, it's like any other statute of

19   limitations.  A statute of limitations is what it is.  It's

20   six years minimum from each false claim, and there's no issue

21   of equitable consideration beyond what the statute says, if

22   the Court is correct, which we don't concede the Court is

23   correct, that the person understood how the fraud worked.  In

24   fact, all he knew was that something was going on which made

25   him suspicious but only after he hired counsel and we

1    investigated by interviewing other former employees were we

2    able to figure out how the fraud was being conducted and in

3    fact, no single employee that we talked to understood how the

4    fraud was being conducted.   It was a computer run fraud which

5    required people to understand how Baker & Taylor and Baker

6    and Taylor, Inc., set up their data bases for sales.   So, the

7    second issue, Robert Costa was dismissed on a public

8    disclosure ground in which the Court ultimately relied on a

9    single article in a library journal from 1979 in which a

10   Cleveland, Ohio librarian said that she thought her library

11   was being cheated by Baker & Taylor.   The problem with that

12   is that even given its most favorable view in terms of

13   disclosure of the kind of fraud that was being done, 1979 is

14   sixteen years before this lawsuit was filed and six years

15   before any claim in this lawsuit was relevant because the

16   maximum statute of limitation under the False Claims Act is

17   ten years, and the case was filed in June of '95 so the

18   farthest back any of the claims that issued went was June of

19   '85.   And so, we have essentially a situation where the

20   District Court concluded that someone blowing the whistle on

21   a conduct that occurred six years before any of the claims

22   issued were stated is sufficient to put the government on

23   notice that it's to continue in '85 not to mention '95.   And

24   we think, you know, the courts won't uphold that.   It doesn't

25   make any sense.   It's against policy for the United States to

1  recognize that --

2      THE COURT:  Okay, but at this point though, based

3  on the issues that you're now talking about, these have

4  nothing -- these issues have nothing to do with the

5  government prosecuting a false claim.  They have simply to do

6  with who is the entity that prosecutes the false claim, and

7  whether or not their counsel, i.e., Baker -- not Baker &

8  Taylor, pardon me, Costa and Thornburg's counsel is able to

9  collect attorney's fees for having brought this action.  But

10 they have nothing to do with the police powers at this point

11 in time.  Those issues are not affected or do not affect

12 police power issues.

13     MR. CHATFIELD:  Well, I believe they do, Your

14 Honor, because these are the methods and the incentives that

15 are created to have whistle blowers come forward, and if you

16 undermine -- In fact that's why the 1986 amendments occurred

17 because under the previous version of the False Claims Act

18 there were not sufficient protections for whistle blowers and

19 their counsel to actually get whistle blowers to come

20 forward, and therefore, up until '86 the use of the False

21 Claims Act was almost nonexistent.  In '86 Congress

22 specifically said in order to make effective police power on

23 behalf of the United States we have to make sure that whistle

24 blowers and their counsel are protected as they act as

25 private attorney generals on behalf of the United States.

1           THE COURT:  Okay.

2           MR. CHATFIELD:  Okay.  Thank you, Your Honor.

3           MR. KAPP:  James Kapp on behalf of the debtors,

4    Your Honor.  Your Honor, just a couple of points in which to

5    clarify a little bit of confusion.  Number one, the easiest

6    proposition on stay all day, the debtors take the position

7    that the automatic stay applies to them, but we do not take

8    the position that the automatic stay applies to our

9    codefendants in the underlying litigation, the litigation

10   Baker & Taylor.  The movants do not need any relief from this

11   Court to proceed against Baker & Taylor.  Indeed, it's not an

12   issue for this Court.  It's an issue for the District Court

13   in the underlying litigation.  We would, for purposes of

14   condor, note that depending on if the movants do go into the

15   District Court and what the District Court decides, the

16   debtors may come back here and seek appropriate relief in

17   this Court to the extent that their interests are impacted,

18   but we're not there yet, Your Honor.  So, the only issue here

19   today is whether the automatic stay should be modified to go

20   after the debtors and proceed against the debtors.  That it

21   goes to the police power exemption, Your Honor, and the

22   movants are not entitled to the police power exemption of the

23   automatic stay.  They are not a government unit nor are they

24   an agent thereof.  Indeed, and I think part of the confusion,

25   Your Honor, the underlying District Court determined that the

1   movants do not have the authority and were not a proper party

2   to assert the claims in that litigation.  They do not have

3   standing to prosecute as a private attorney general.  So

4   therefore, to argue the police power is -- that hasn't been

5   proven yet, they are a proper private attorney general and a

6   proper agent of the government; indeed the District Court

7   says they're not.  So, therefore, the movants' responses

8   were, Your Honor, they got it wrong.  And they basically seek

9   for you to come in and answer the question that's the

10   underlying question in the appeal, Are they a proper party or

11   not?  Hasn't been proven yet, and this Court certainly

12   doesn't have enough information to make such a decision.

13          THE COURT:  Well, I don't, but that's not an issue

14   I should be adjudicating anyway; is it?  I mean the District

15   Court's made a decision.  If there's going to be some further

16   action, that's going to be through the Appellate Courts not

17   backward through the Bankruptcy Court.

18          MR. KAPP:  That is precisely our argument, Your

19   Honor.  Which then moves us to the third point which is the

20   balancing test, and the debtors argue that the balancing test

21   weighs clearly in favor of the debtors for the following

22   reasons:  Number one, there's no insurance for this matter.

23   So any cost of defending this going forward would be born

24   directly by the debtors' estates, and to make sure we're

25   clear on what this is, it's not an issue on the fees.  First

1   we have to have the appeal as to whether Costa and Thornburg

2   are proper parties, and that would be appeal of the debtors'

3   motion to dismiss.  And so that will have to be briefed.  It

4   will have to be argued, and in case the movants are

5   successful, it will go back down to the District Court.  And

6   once again, it's not just a -- We should not just assume that

7   then it's an issue of the costs and fees.  The debtors also

8   have other defenses available to them by which they believe

9   that Costa and Thornburg are not proper parties.  There would

10  be litigation.  And if we get beyond that and we get to the

11  fees once again, as we set forth in our papers, the debtors

12  believe that their arguments as to why they're not entitled

13  to fees they seek.

14          THE COURT:  Okay, but from the debtor's point of

15  view, however, it seems to me that if the debtor concedes

16  that the automatic stay doesn't apply to the non-debtor

17  entity, and it takes a comfort order from this Court to say

18  the automatic stay doesn't apply to that entity, they can go

19  litigate against that entity, and then you'll have all your

20  answers.  The only issue will be whether or not the debtor at

21  some point in time has to contribute, and the debtor will

22  have its choice of either appearing or not appearing in those

23  proceedings.  I would think that the other entity would have

24  as much interest in attempting to uphold the rulings on the

25  motion to dismiss and prosecuting the appeal as the debtor

1  has.

2           MR. KAPP:  Well, Your Honor, it gets more

3  complicated than that.  There is a scenario where if the

4  movants went forward in the District Court because there is,

5  as counsel to Costa and Thornburg stated, there is a period

6  of time where it's just causes of action based upon Baker &

7  Taylor.  If they went forward in the District Court just on

8  that action, we would agree.  The debtors are not implicated,

9  and there's no potential threat.  However, if the movants

10  were allowed to proceed on the claims that could be possibly

11  joint and several between Baker & Taylor and the debtors,

12  then the debtors would feel they would need to be involved.

13  As I mentioned, this was the debtors' motion to dismiss.

14  Now, Baker & Taylor ultimately joined in, but this was the

15  debtors' initial motion to dismiss.  So in that circumstance,

16  depending on what the District Court allowed the movants to

17  go forward on, we may feel the need to come back here and

18  seek appropriate relief.  We don't know yet if the District

19  Court will allow this to go forward, and if they would, on

20  what claims?  So we're a little premature on that.  There is

21  a scenario where we would not feel the need for relief from

22  this Court.

23           THE COURT:  Well, but it would still be the

24  debtor's option.  It would seem to me that Baker & Taylor at

25  this point, as I said, have the same interest that the debtor

1  has in defending the District Court's decision that the

2  movants are not proper relators in this action, and the

3  District Court will decide, I suppose, whether or not to

4  permit the appeal, or if the District Court doesn't have that

5  choice and an appeal is filed then it will be and the Circuit

6  will decide whether they're appropriate parties.  If there is

7  a determination that they're appropriate parties, it seems to

8  me you're correct.  Then you're back in the District Court

9  and at that point then it seems to me some further

10  proceedings about relief from stay and whether the debtors

11  should be compelled to participate in those proceedings is in

12  order, but I'm not sure why I shouldn't grant relief from

13  stay or forget the debtor in granting relief from stay, just

14  make it clear that the automatic stay doesn't apply to the

15  non-debtor plaintiff in the action or defendant in the

16  action.

17  MR. KAPP:  Your Honor, I would take you up on your

18  second option.  The debtors do not have any issue with that

19  course of action if this Court just made it clear the

20  automatic stay does not apply to Baker & Taylor.  That would

21  then allow the movants to go back to the District Court, and

22  the District Court if it saw proper in its authority to go

23  forward can determine if it wants to go forward and as to

24  what causes of action.  We have no problem with that, Your

25  Honor.  The problem with the first suggestion is I can't sit

1  here today and tell you what Baker & Taylor's attorneys will

2  do.  We have no idea if they would litigate this or just roll

3  over.  The debtors do feel if the debtors were involved as

4  the cause of action to deal with them, we don't want to get

5  to the argument about fees and costs because then you give up

6  the underlying argument of whether they should be there in

7  the first place.

8         THE COURT:  Right, I understand.

9         MR. KAPP:  And that is the debtors' issue.  But we

10  do not have any objection to the first course this Court

11  offered which is to make it clear the stay does not apply to

12  Baker & Taylor.  Finally, going back to the balancing test,

13  honestly if all this goes on, it's a clear distraction to the

14  administration of these estates and to the overall plan which

15  is to develop a comprehensive plan to deal with all of its

16  litigation.  And finally we would note, these claims are not

17  time sensitive.  This action was filed over eight years ago,

18  and we also note that they're really seeking monetary relief.

19  So for those reasons we would state that the automatic stay

20  should not be modified with regards to the debtors to allow

21  the Costa/Thornburg action to go forward as to the debtors.

22         THE COURT:  Right.  What's the situation with

23  respect to the criminal investigation?  This has been going

24  on for eight years; hasn't the statute of limitations for

25  that expired?

1    MR. KAPP:  Well, Your Honor, that's a good

2  question.  Here's what I know as the problem was that we did

3  believe we had a settlement with the government.  We paid

4  money.  The problem was as soon as the money went the

5  government said, Hey, by the way, we're also looking at you,

6  Debtor, as from the criminal matters.  First they didn't come

7  up.  That didn't cause -- That was obviously not the

8  agreement of the debtors.  The debtors were -- and that sort

9  of put the stymie on the settlement, and as the parties were

10  attempting to resolve things, the debtors several months

11  later then filed for bankruptcy and at that point, as I

12  understand it, it's sort of been, we've not heard anything

13  else from the government as to criminal action.  I do not

14  know -- I cannot report to this Court now as I know the

15  status of the negotiations there.

16    THE COURT:  Well, wouldn't it make sense to contact

17  the government and find out whether there is or isn't still a

18  live investigation?  Because if there isn't maybe the

19  settlement goes forward.  Does the settlement encompass the

20  attorney's fees?

21    MR. KAPP:  I do not believe it does, Your Honor.

22    THE COURT:  Okay.  So the issue that Costa and

23  Thornburg are raising is going to go forward whether the

24  settlement's approved or not?

25    MR. KAPP:  I believe that is the case.  As the

1    issue is, it is the debtors' belief, Costa and Thornburg are

2    not proper parties to that suit.  They've been dismissed.  So

3    the idea that they would take part of any settlement, they're

4    not parties.  They've been dismissed.  Your Honor, if there's

5    any other questions, I --

6         THE COURT:  No, I think it would be a good idea,

7    however, to get in touch with the Criminal Investigation

8    Department, or whatever; I take it it's a federal

9    investigation?

10        MR. KAPP:  Yes, Your Honor.

11        THE COURT:  All right, then somebody in the U.S.

12   Attorney's Office certainly ought to know whether or not this

13   is a done deal or not because at least to the extent that

14   some of these proceedings took place eight years ago, I think

15   the statute of limitations is five, so maybe they're not all

16   expired, I don't know, but a number of them surely should be,

17   and if that's the whole left to the settlement then it seems

18   to me at this point in time maybe that's an issue that can go

19   away and at least you can get that part of the settlement

20   approved.  So I'd like a report back at the next omnibus,

21   please, on that issue.

22        MR. KAPP:  Yes, Your Honor, we can do that.  I just

23   want to clarify though we still believe that doesn't change

24   the debtors' position as to the automatic stay applying to

25   the debts.

1    THE COURT: Yes, I understand, but as to the

2    settlement it may be at least get some issues behind the

3    debtors, so I'd like a report on that issue, the debtors'

4    relationship with B&T and with the United States pursuant to

5    that settlement.  Okay.

6    MR. CHATFIELD: Your Honor, may I please reply?

7    THE COURT: Yes, sir.

8    MR. CHATFIELD: I just wanted to bring to the

9    Court's attention that in our exhibits to our reply brief we

10   have now a copy of the signed, executed settlement agreement

11   between W.R. Grace and the United States, so the issue is not

12   whether is a settlement complete, the issue is why hasn't the

13   case been dismissed given that there is a settlement

14   complete.  We at this point, if W.R. Grace feels the United

15   States has now breached this agreement then they have their

16   own claim, contract claim against the United States, but

17   there is a settlement, and the Court in the Northern District

18   of California should be told that there is a settlement and

19   that the action's actually over.

20   THE COURT: Well, yeah, I'm a little, I guess,

21   concerned about how you have a paper settlement and yet it's

22   not filed of record, but nonetheless, I don't know all the

23   terms of it so I'm simply going to do what I said earlier,

24   require a contact with the United States Attorney's Office

25   and report back next month as to what the status of the

1   criminal investigation is.  Because if it's over, then it

2   seems to me the appropriate thing for all the parties to do

3   is to notify the District Court that there was a settlement

4   and that in fact it's been paid.  Does the debtor agree its

5   portion of the settlement proceeds were paid?

6           MR. KAPP:  Yes, Your Honor, we do.

7           THE COURT:  Okay.  Then, you know, I see no reason

8   not to get that done and eliminate at least those claims

9   against this estate.

10          MR. CHATFIELD:  Thank you, Your Honor.

11          THE COURT:  All right.  With respect to the issue

12  I'd like to hear a response from, please.  It seems to me

13  that you can get the relief you're asking simply by an order

14  from me at this point that says the automatic stay doesn't

15  apply to Baker & Taylor because you can litigate all the

16  issues in that context without the debtor being there if the

17  District Court, or whatever the appropriate court is, decides

18  to let you go forward on that issue.

19          MR. CHATFIELD:  Yeah, the only difficulty we have

20  with that would be that the District Court would have to then

21  agree to sever the case so that we could under Rule 54 go

22  forward with the appeal against Baker & Taylor, Inc.

23          THE COURT:  Yes.

24          MR. CHATFIELD:  And that's why we would prefer to

25  have it clarified and resolved finally that this case is over

before the Northern District of California so that we have a right of appeal as a matter of right, because, you know, when the Court entered its first order --

THE COURT: Well, wait. You wouldn't have a right to appeal against the debtors as a matter of right, at least not under Third Circuit jurisprudence because you were the entity -- your clients, I apologize, your clients were the entities that commenced the action in the first place. So, without relief from stay to go forward on the appeal directly even if the District Court decides that the action's settled and your right to appeal takes place you'd still need relief from stay to do that as to this estate.

MR. CHATFIELD: Yes, Your Honor, but I believe it is important for the District Court to know the true status of the facts. One of the reasons it gave for denying our right to immediate appeal was the stated belief that our interests, our client's interest would be protected adequately by the government if we were not proceeded to have an immediate appeal. I think the way it's played out is showing that that's not true. The United States, for all its virtues, doesn't have the time and resources to spend its time being concerned about whether the procedural rights of the relators have been adequately protected, and so it would be very beneficial to be able to go to court and have them understand that this case is actually over and it's been ripe

for appeal but for the issue of whether there should be a

stay against W.R. Grace.

THE COURT:  All right, well, I'll offer two choices

then:  Number one, I'll continue this whole matter till the

next omnibus date at which point I will expect to hear from

the debtor what the status of the criminal investigation is.

If it's over then it seems to me at that point I should

direct the debtor to take appropriate steps to file the

settlement of record in the District Court to let the

District Court know that that action at least can be

terminated if it chooses to terminate it.  That's choice one.

Choice two, if the criminal investigation is still ongoing,

we're back here in the same posture that you're in right now

anyway, and I'd have to make some decision.  Choice two is

I'll simply do an order that indicates that the automatic

stay is not in fact as to Baker & Taylor but keep it in

effect as to the debtor, because I don't intend at this point

to release the automatic stay until I find out what's

happening with respect to the criminal investigation.

MR. CHATFIELD:  Would we -- In option two, would be

permitted to inform the Bankruptcy Court that further update

is expected from W.R. Grace about the criminal case at the

next bankruptcy --

THE COURT:  Inform the District Court?

MR. CHATFIELD:  Yes.

1    THE COURT:  Oh, yeah, sure.  I don't have any

2  problem.  I mean the District Court can get this transcript

3  like anybody else could and know that I'm waiting for that

4  advice, but I guess the question is whether you simply want

5  to wait until next month and see whether the issue is

6  adjudicated on all fronts or whether you prefer an order with

7  respect to Baker & Taylor now and wait to see what happens

8  with respect to the debtor.

9    MR. CHATFIELD:  We would prefer the latter.  Thank

10  you.

11    THE COURT:  Okay.  You want to prepare an order for

12  me that will indicate that the automatic stay is not in

13  effect as to Baker & Taylor but is in effect as to the

14  debtor.

15    MR. CHATFIELD:  Yes, Your Honor.

16    THE COURT:  I will sign that order.

17    MR. CHATFIELD:  Thank you.

18    THE COURT:  Run it by counsel for the debtor before

19  it's filed, and I'll expect to get it on a certification of

20  counsel; within ten days?

21    MR. CHATFIELD:  Yes, Your Honor.

22    THE COURT:  And then we'll continue this hearing

23  until the next omnibus date with respect to the debtor.

24  Okay.

25    MR. KAPP:  Thank you, Your Honor.  That is all on

1  today's agenda.

2          THE COURT:  All right.  Anyone on the phone have

3  any housekeeping matters to address?  Anyone in court?  Okay,

4  see you next month.  Thank you.

5          ALL:  Thank you, Your Honor.

6          (Whereupon the above-captioned matter was concluded

7  at 12:53 p.m. for this date.)

17          I, Elaine M. Ryan, approved transcriber for the

18  United States Courts, certify that the foregoing is a correct

19  transcript from the electronic sound recording of the

20  proceedings in the above-entitled matter.

22  *Elaine M Ryan*                              8-7-03
    Elaine M. Ryan
23  2801 Faulkland Road
    Wilmington, DE 19808
24  (302) 683-0221