## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | |
| | ) | Case No. 01-01139 (JKF) |
| Debtors. | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | Regarding D.I. 4089 |
| | ) | Hearing Date: August 25, 2003, at noon |
| | ) | Responses Due: August 8, 2003 |

### RESPONSE OF CLAIMANT LUCY FONTENOT TO DEBTORS'
### SECOND OMNIBUS OBJECTION TO CLAIMS (NON-SUBSTANTIVE) [D.I. 4089]

Claimant Lucy Fontenot, by and through their undersigned counsel[1], files this Response

to Debtors' Second Omnibus Objection to Claims (Non-Substantive), and in support thereof,

respectfully states the following:

1.      Claimant Lucy Fontenot is asserting an asbestos-related personal injury claim

against Debtors arising from the death of her late husband, Gussie Fontenot, from asbestos-

related lung cancer. Her claim number is 2513, dated on or about January 9, 2003.

2.      Gussie Fontenot had, prior to his death filed a lawsuit against Debtor W.R. Grace

and other defendants in Jefferson County, Texas, under the style *Gussie Fontenot v. Able Supply

Co.*, No. A-061156, In the 58th Judicial District Court of Jefferson County, Texas. This lawsuit

was continued by his representatives, including his widow, Claimant Lucy Fontenot, after Mr.

---

[1] Claimant's counsel interprets Local Bankruptcy Rule 9010-1(c)(i) to except this response from the requirement of association with local counsel or formal admission *pro hac vice*, and this response is filed accordingly. In the event that this interpretation is incorrect, or the Court otherwise desires admission, Claimant's undersigned counsel will promptly act appropriately.

Fontenot's death on March 4, 2001. The lawsuit was still pending when Debtor filed for bankruptcy protection.

3.    Contemporaneously with the filing of this Response, Claimant has filed an amended Proof of Claim with supporting documentation to show Mr. Fontenot's diagnosis with, and death from, asbestos-related lung cancer. A copy of the amended Proof of Claim is attached as Exhibit 1.

4.    No bar date for asbestos-related personal injury claims has been set in this proceeding, nor have the procedures for filing such claims been established. (The Bar Order setting the March 31, 2003, bar date specifically excludes asbestos personal-injury claims.) Accordingly, Claimant does not yet know the nature and extent of documentation that will be required for her claim. It would unfairly prejudice Claimant to dismiss her claim at this point, before the requirements for asbestos personal-injury claims like hers have been ordered.

5.    Claimant's asbestos personal-injury claim is for an unliquidated amount consistent with verdicts that have been awarded in other death cases related to lung cancer caused by asbestos.

6.    Debtor also has objected to a duplicate claim erroneously submitted by Claimant, assigned claim number 2710. Claimant does not oppose the expunging of claim number 2710, so long as claim number 2513 survives.

WHEREFORE, Claimant Lucy Fontenot respectfully requests the Court to overrule Debtors' Second Omnibus Objection to claim number 2513 or, in the alternative, for leave to submit an amended claim prior to any applicable bar date containing additional supporting documentation to establish her asbestos personal-injury claim.

Dated this 7th day of August, 2003.

Respectfully submitted,

RUSSELL L. COOK, JR. & ASSOCIATES
Russell L. Cook, Jr.
Texas State Bar No. 04756500
1221 Lamar, Suite 1300
Houston, Texas 77010
(713) 650-1221
(713) 650-0521 (fax)

Of counsel:
ARNEY LAW FIRM
Lance C. Arney
Texas State Bar No. 00796137
1221 Lamar, Suite 1300
Houston, Texas 77010
(713) 571-0501
(713) 650-0521 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon the following counsel by overnight delivery on this 7th day of August, 2003.

Lance C. Arney

Kirkland & Ellis LLP
Attn: Janet S. Baer, James W. Kapp III, and
Christian Lane
200 East Randolph Drive
Suite 6500
Chicago, IL 60601

Pachulski, Stang, Ziehl, Young, Jones &
Weintraub P.C.
Attn: Scotta McFarland, Esq.
919 N. Market Street, 16th Floor
Wilmington, Delaware 19801

B10 (Official Form 10) (Rev. 04/01)

| UNITED STATES BANKRUPTCY COURT For the District of Delaware | PROOF OF CLAIM |
|---|---|

In re:   **W.R. Grace & Co. et al·**

Case Number: 01-1139 through 01-1200 (Jointly Adm.)

NOTE: This claim should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**Creditor Name**
(Person or entity debtor owes)   **Lucy Fontenot ***

**Address Line 1**   c/o Russell L. Cook, Jr.

**Address Line 2**   1221 Lamar Street

**Address Line 3**   Suite 1300

**City, ST ZIP**   Houston, Texas 77010-3038

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach Copy of statement giving particulars.

☒ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court

THIS SPACE IS FOR COURT USE ONLY

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR.
Cause No. A-161156 Fontenot v. Able Supply
58th JDC, Jefferson Co., Texas

Check here if this claim   ☐ replaces   ☒ amends   a previously filed claim dated: 01-03-03

**1. BASIS FOR CLAIM**

☐ Goods sold
☒ Personal injury/wrongful death
☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Services performed
☐ Taxes
☐ Wages, salaries, and compensation (Fill out below)
Your social security No. _____
☐ Money loaned
☐ Other (Describe Briefly)
Unpaid compensation for services performed
from _____ to _____
(date)        (date)

**2. Date Debt Incurred: (MMDDYY)**

Various Dates

**3. If Court Judgment, Date Obtained:**

4. CLASSIFICATION OF CLAIM. Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☐ **SECURED CLAIM**
Attach evidence of perfection of security interest
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle   ☐ Other (Describe briefly)

Amount of arrearage and other charges at time case filed included in secured claim above, if any $ _____

☒ **UNSECURED NONPRIORITY CLAIM**
A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ **UNSECURED PRIORITY CLAIM** - Specify the priority of the claim.
☐ Wages, salaries, or commissions (up to $4,650), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $2,100 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Taxes or penalties of governmental units - 11 U.S.C. § 507 (a)(7).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a) _____

**5. AMOUNT OF CLAIM AT TIME CASE FILED:**

Unliquidated but at least

1 0 , 0 0 0 , 0 0 0 . 0 0

(Secured)   (Unsecured Nonpriority)   (Unsecured Priority)

☐ Check this box if claim includes charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

6. CREDITS AND SETOFFS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

7. SUPPORTING DOCUMENTS: *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary.

8. TIME-STAMPED COPY: To receive an acknowledgment of the filing of your claim, enclosed a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**PLAINTIFF'S EXHIBIT**
1

Date   **9-7-03**

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)   *Lance C. Arney*

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 452 and 3571.

*Lucy **Fontenot**, Individually & Representative of the Estate of Gussie Fontenot

# STATE OF LOUISIANA

**IMPORTANT:** PRINT or TYPE. black ink or ribbon mandatory

836884

**THIS RECORD IS VALID FOR DEATH ONLY**

**CERTIFICATE OF DEATH**

BIRTH No. _____    FILE No. 117 _____

3485007

**DECEDENT**

| 1A. LAST NAME OF DECEDENT | 1B. FIRST NAME | 1C. MIDDLE NAME | 1D. DATE OF DEATH (Month, Day, Year) |
|---|---|---|---|
| Fontenot | Joseph | Gussie | March 04 2001 |

| 2B. HOUR OF DEATH | 3. SEX | 4. RACE | 5. MARITAL STATUS | 6. SURVIVING SPOUSE (if wife, give maiden name) |
|---|---|---|---|---|
| 9:00PM | Male | White | Married | Mary L. Ardoin |

| 7. DATE OF BIRTH (Month, Day, Year) | 8. AGE Last Birthday | UNDER 1 YEAR | UNDER 1 DAY | 9. BIRTHPLACE (City and State or Foreign Country) |
|---|---|---|---|---|
| August 02 1927 | 73 | | | Mamou, LA |

| 10. USUAL OCCUPATION (Kind of work done during most of working life) | KIND OF BUSINESS/INDUSTRY | 11. OF HISPANIC ORIGIN? |
|---|---|---|
| Painter | Local #783 | No |

| 12. EVER IN U.S. ARMED FORCES? | 13. SOCIAL SECURITY NUMBER | 14. DECEDENT'S EDUCATION (Specify ONLY HIGHEST grade completed) ELEMENTARY/SECONDARY (0-12) | COLLEGE (1-4, 5+) |
|---|---|---|---|
| Yes | 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 | 12 | |

**PLACE OF DEATH**

| 14A. PLACE OF DEATH | | | | | | | |
|---|---|---|---|---|---|---|---|
| HOSPITAL | INPATIENT | ER/OUTPATIENT | DOA | NON-HOSPITAL | NURSING HOME | RESIDENCE ☒ | OTHER |

| 14B. NAME OF FACILITY | 14C. PLACE OF DEATH IN CITY LIMITS? |
|---|---|
| 6716 Bonne Meadow | Yes |

| 14D. CITY, TOWN OR LOCATION OF DEATH | 14E. PARISH OF DEATH |
|---|---|
| Lake Charles | Calcasieu |

**RESIDENCE**

| 15A. STREET ADDRESS (If not in body give road route number or location) | 15B. PARISH OF RESIDENCE | 15C. STATE OF RESIDENCE |
|---|---|---|
| 6716 Bonne Meadow | Calcasieu | Louisiana |

| 15D. CITY OR TOWN | 15E. ZIP CODE | 15F. RESIDENCE INSIDE CITY LIMITS? |
|---|---|---|
| Lake Charles | 70605 | Yes |

**PARENTS**

| 16A. FATHER'S LAST NAME | FIRST | MIDDLE | 16B. FATHER'S PLACE OF BIRTH | NO. STATE |
|---|---|---|---|---|
| Fontenot | Arcade | | u/a | LA |

| 20A. MOTHER'S MAIDEN NAME | FIRST | MIDDLE | 21B. MOTHER'S PLACE OF BIRTH | NO. STATE |
|---|---|---|---|---|
| Blanchard | Eda | | u/a | LA |

**INFORMANT**

| 21A. TYPE OR PRINT NAME OF INFORMANT | 21B. INFORMANT'S ADDRESS | 21C. DATE (Month, Day, Year) |
|---|---|---|
| Mary L. Fontenot | 6716 Bonne Meadow Lake Charles, LA 70605 | Mar 04 2001 |

**DISPOSITION**

| 23A. METHOD OF DISPOSITION | 23B. DATE THEREOF | 23C. NAME AND LOCATION OF CEMETERY OR CREMATORIUM |
|---|---|---|
| ☒ BURIAL CREMATION REMOVAL OTHER | March 07 2001 | Consolata Cemetery Lake Charles, LA |

| 24A. SIGNATURE AND ADDRESS OF FUNERAL DIRECTOR | 23D. FACILITY NUMBER | 24C. LICENSE NUMBER |
|---|---|---|
| Johnson Funeral Home P.O. Box 4888 Lake Charles, La. 70606-4885 | 911 | E1562 |
| | 24. ALTERATIONS | |

**REGISTRAR**

| 26A. BURIAL TRANSIT PERMIT | 26B. PARISH OF ISSUE | 26C. DATE OF ISSUE | 26. SIGNATURE OF LOCAL REGISTRAR |
|---|---|---|---|
| 654790 | Calcasieu | March 07 2001 | _Grace Gaspard_ |

**MANNER OF DEATH**

| 27. MANNER OF DEATH | | | | | |
|---|---|---|---|---|---|
| ☒ NATURAL | ACCIDENT | SUICIDE | HOMICIDE | PENDING INVESTIGATION | UNDETERMINED |

| 28A. DATE OF INJURY (Month, Day, Year) | 28B. TIME OF INJURY | INJURY AT WORK | 28D. DESCRIBE HOW INJURY OCCURRED |
|---|---|---|---|
| | | | |

| 28E. PLACE OF INJURY (Specify at home, farm, factory, street, etc.) | 28F. LOCATION (Street number or route number, city or town, State) |
|---|---|
| | |

**CERTIFIER**

| 29A. I CERTIFY THAT I ATTENDED THE DECEDENT FROM / TO | AND THAT DEATH OCCURRED ON THE ___, ___ AND HOUR STATED. HIS/HER DUE TO THE CAUSES AND IN THE MANNER SO STATED. | 29B. SIGNATURE OF PHYSICIAN OR CORONER | 29C. DATE (Month, Day, Year) |
|---|---|---|---|
| November 3, 2000 March __ 2001 | | _Michl Byrom m.d._ | March 21, 2001 |

| 29D. TYPE OR PRINT NAME AND TITLE OF PHYSICIAN OR CORONER | 29E. ADDRESS OF PHYSICIAN OR CORONER |
|---|---|
| Michael Byerman, M.D. | 501 S. Ryan, Lake Charles, LA 7601 |

**CAUSE OF DEATH**

30. PART I. ENTER THE DISEASES, INJURIES OR COMPLICATIONS THAT CAUSED THE DEATH. DO NOT ENTER THE MODE OF DYING SUCH AS CARDIAC OR RESPIRATORY ARREST OR HEART FAILURE. LIST ONLY ONE CAUSE ON EACH LINE.

APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH

| IMMEDIATE CAUSE (Final disease or condition resulting in death) | Bronchogenic Carcinoma, poss small cell type | II months |
|---|---|---|
| | DUE TO (OR AS A CONSEQUENCE OF) | |
| Sequentially list conditions, if any, leading to immediate cause | | |
| | DUE TO (OR AS A CONSEQUENCE OF) | |
| Enter UNDERLYING CAUSE (Disease or injury that initiated events resulting in death) LAST | | |
| | DUE TO (OR AS A CONSEQUENCE OF) | |

| 30. PART II. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE IN PART I | 31. IF DECEASED WAS FEMALE, WAS THERE A PREGNANCY IN THE LAST 90 DAYS? | 32A. WAS AN AUTOPSY PERFORMED? | 32B. WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OR DEATH? |
|---|---|---|---|
| ☒ Tobacco Other | Yes No | Yes ☒ No | Yes No |

PHS 18 - (REV. 01/93)

**OFFICE OF PUBLIC HEALTH - VITAL RECORDS REGISTRY**

IN ACCORDANCE WITH L.S.A.R. 40:50 (C), I CERTIFY THAT THE ABOVE IS A TRUE AND CORRECT COPY OF DEATH CERTIFICATE IN MY CUSTODY.

_Grace Gaspard_ MAR 23 2001
LOCAL REGISTRAR



I CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF A CERTIFICATE OR DOCUMENT REGISTERED WITH THE VITAL RECORDS REGISTRY OF THE STATE OF LOUISIANA, PURSUANT TO LSA — R.S. 40:32, ET SEQ.

_William H Barlow_
STATE REGISTRAR



**EXHIBIT**

**A**

ALL-STATE® INTERNATIONAL

WARNING: It is illegal to alter or counterfeit this copy.

CYTOLOGY REPORT

| | | |
|---|---|---|
| PATH #: C98-821 | PATIENT: GUSSIE FONTENOT | FILE #: 104771 |
| SERVICE: 8/20/98 | DOB: 8/02/27 (71) SEX: F RACE: | ACCT #: S30353580 |
| RECEIVED: 8/20/98 | PHYSICIAN: CHARLES BRDLIK, M.D. | (318)491-7708 |
| REPORTED: 8/21/98 | LOCATION: ST PATRICK HOSPITAL | |

PHYSICIAN: CARL NABOURS, M.D.

CLINICAL DATA: RLL mass 6 x 3.5 x 2.5 cm, R/O lung ca.

DIAGNOSIS:      FNA OF RIGHT LOWER LOBE:
NON-SMALL CELL CARCINOMA WITH FEATURES OF
ADENOCARCINOMA.

RECOMMENDATION:  As clinically indicated.

GROSS DESCRIPTION:
Fine needle aspirate of right lower lobe of lung submitted by
radiologist.

FROZEN DIAGNOSIS: NON-SMALL CELL CARCINOMA.

MICROSCOPIC DESCRIPTION:
Cytospin and cell block preparations of FNA of right lower lobe of
lung show marked cellularity. Numerous aggregates of malignant
cells and single malignant cells are noted. The cells show increased
nuclear cytoplasmic ratios and marked irregular nuclei with prominent
irregular nucleoli. Gland formation is seen.

ADEQUACY:  Satisfactory.

RR/ar

ELECTRONICALLY REVIEWED

ROBERT RUMSEY, MD

EXHIBIT

B

ALL-STATE® INTERNATIONAL

1                    NO.  A-0161156

2
    GUSSIE FONTENOT        )    IN THE DISTRICT COURT OF
3
                           )
4   VS.                    )    JEFFERSON COUNTY,  TEXAS
                           )
5   ABLE SUPPLY            )
    COMPANY, ET AL         )    58TH  JUDICIAL  DISTRICT
6

7

8   _____

9                    DEPOSITION OF

10      # ARTHUR L. FRANK, M.D., PH.D.

11               JANUARY 24, 2001

12  _____

13

14      ORAL DEPOSITION OF ARTHUR L. FRANK, M.D., Ph.D.,

15  produced as a witness duly sworn by me at the

16  instance of the Defendants, taken in the above

17  styled and numbered cause on the 24th day of

18  January, 2001, before Kathy Miller, Certified

19  Shorthand Reporter No. 739 in and for the State of

20  Texas, at the Tremont House Inn, 2300 Ship's

21  Mechanic Row, Galveston, Texas  77550, pursuant to

22  the Texas Rules of Civil Procedure and the

23  provisions stated on the record or attached therein.

24                    **EXHIBIT**

25                       C

                    ALL-STATE® INTERNATIONAL

1    APPEARANCES:

2        For the Plaintiff:
             Mr. Gary DiMuzio
3            Cook, Doyle & Bradshaw
             1221 Lamar, Suite 1300
4            Houston, Texas 77010-3039

5        For the Defendants Clemtex, Pangborn
         and W. R. Grace:
6            Ms. Barbara Barron
             Mehaffy & Weber
7            2615 Calder Avenue
             Beaumont, Texas 77702

8
         For the Defendant U.S. Silica:
9            Mr. Allen R. Till
             Beirne, Maynard & Parsons
10           1300 Post Oak Boulevard
             Houston, Texas 77056

11
         For the Defendant Vallen Corp.:
12           Mr. Peter Boyd Wells, III
             Wells, Peyton, Greenberg & Hunt, LLP
13           550 Fannin, 6th Floor
             Beaumont, Texas 77707

14
         For the Defendant Mine Safety Appliance Co.:
15           Mr. Michael T. Fuerst
             Nelson, McCormick, Hancock & Newton
16           1900 West Loop South, Suite 700
             Houston, Texas 77010

17
         For the Defendant Scott Aviation:
18           Mr. Thomas M. Johnson
             Ryan & Dawson
19           770 S. Post Oak Lane, Suite 523
             Houston, Texas 77056

20

21       For the Defendant Norton Company:
             Mr. Christopher Groves
22           Jones, Day, Reavis & Pogue
             2727 North Harwood Street
23           Dallas, Texas 75201

24

25

9

APPEARANCES:    (Continued)

For the Defendants Moldex-Metric, Inc.,
and Louis Gerson Company:
    Ms. Ellen G. Reynard
    Adams & Coffey
    550 Fannin, Suite 800
    Beaumont, Texas  77701

For the Defendants J.T. Thorpe and Binks:
    Mr. Jeffrey P. Fultz
    Fairchild, Price, Thomas,
    Haley & Willingham, LLP.:
    440 Louisiana, Suite 2110
    Houston, Texas  77002

For the Defendant American Optical:
    Mr. Jeff Shaver
    Sammons & Parker
    11200 Westheimer, Suite 900
    Houston, Texas  77042

For the Defendant AБandS, Inc.:
    Mr. Patrick M. Primavera
    Dunn, Kacal, Adams, Pappas & Law
    2929 Allen Parkway, Suite 2600
    Houston, Texas  77019

For the Defendant Ingersoll Rand:
    Mr. Arthur Grimaldo, II
    Forman, Perry, Watkins, Krutz & Tardy
    1349 Empire Central, Suite 400
    Dallas, Texas  75247

For the Defendant U.S. Gypsum and T&N:
    Mr. James Powers
    Powers & Frost
    909 Fannin Street, Suite 2600
    Houston, Texas  77002

For the Defendant Thorstenberg Materials Co.:
    Mr. Van Gardner
    Hennessy, Gardner & Barth
    502 Caroline Street
    Houston, Texas  77002

1    APPEARANCES:   (Continued)

2       For the Defendants Pulmosan Safety Equipment:
            Mr. J. Michael Young
3           Johnson, Ferguson, Pipkin & Phillips
            4900 Woodway, Suite 1100
4           Houston, Texas  77056

5       For the Defendant Able Supply:
            Mr. Earl H. Walker
6           Jackson & Walker
            1100 Louisiana, Suite 4200
7           Houston, Texas  77002

8       For the Defendant A.P. Green Refractories Co.
        and Harbison-Walker Refractories Co.:
9           Mr. Mike Blakeney
            Spain & Hastings
10          2350 Two Houston Center
            909 Fannin
11          Houston, Texas  77010

12      For the Defendant Kelly Moore:
            Ms. Kimberly R. Stuart
13          Brown, McCarroll & Oaks Hartline, LLP
            6990 Portwest Drive, Suite 190
14          Houston, Texas  77024

15      For the Defendant Garlock:
            Ms. Paula H. Blazek
16          Germer, Bernsen & Gertz
            805 Park Street
17          Beaumont, Texas  77701

18
        For the Defendant Lone Star Industries, Inc.:
19          Mr. George Pappas
            Sheehy, Serpe & Ware
20          909 Fannin, Suite 2500
            Houston, Texas  77010

21
        For the Defendant Combustion Engineering:
22          Ms. Jessica R. Jones
            Galloway, Johnson, Tompkins,
23          Burr & Smith
            3555 Timmons Lane, Suite 1225
24          Houston, Texas  77027

25

APPEARANCES:   (Continued)

For the Defendants 3M, Georgia Pacific,
Riley Stoker, C.S. Mineral:
    Mr. Christopher P. Manning
    DeHay & Elliston
    901 Main Street, Suite 3500
    Dallas, Texas  75202

For the Defendant Parmelee:
    Ms. Darlea Feldt
    Phillips & Akers
    3200 Southwest Freeway, Suite 3400
    Houston, Texas  77027

For the Defendant Foster Wheeler:
    Mr. Lawrence Lynn
    Coats, Rose, Yale, Ryman & Lee
    1001 Fannin, Suite 800
    Houston, Texas  77002-6707

For the Defendant E.D. Bullard Co.:
    Ms. Xaverie Picciurro
    Steve Bryant & Associates
    3618 Mt. Vernon
    Houston, Texas  77006

For the Defendant Dalloz:
    Mr. Robert Arredondo
    Manning, Gosda & Arredondo
    5847 San Felipe
    Houston, Texas  77057

For the Defendant Specialty Sand:
    Mr. Trey Browne
    Adams & Coffey
    1331 Lamar, Suite 1360
    Houston, Texas  77010

Also Present:
    Ms. Sandra Perez Ard
    McLeod, Alexander, Powel & Apffell, P.C.
    802 Rosenberg
    Galveston, Texas  77550

02:40 PM

# INDEX

|  | PAGE |
|---|---|
| Appearances.................................. | 2 |
| Stipulations................................. | 7 |

ARTHUR L. FRANK, M.D., Ph.D.

| | |
|---|---|
| Examination-Ms. Barron..................... | 8 |
| Examination-Mr. Pappas..................... | 101 |
| Examination-Mr. Powers..................... | 108 |
| Examination-Mr. Manning.................... | 113 |
| Examination-Ms. Blazek..................... | 134 |
| Examination-Mr. Wells...................... | 139 |
| Re-Examination-Ms. Barron.................. | 140 |
| Re-Examination-Mr. Manning................. | 142 |
| Examination-Mr. Lynn....................... | 142 |

## EXHIBITS

| NUMBER | DESCRIPTION | PAGE MARKED |
|---|---|---|
| 1 | Curriculum Vitae | |
| 2 | Letter dated September 29, 2000 to Dr. Arthur Frank from Jeanie Gardner | 7 |
| 3 | Medical Records pertaining to Gussie Fontenot from King White, M.D. | 102 |

1          (Exhibits 1 and 2 were marked.)

2              MR. DIMUZIO:  Read and sign, take it

3    by the Rules?

4              MS. BARRON:  Whatever he wants to

02:40 PM  5    do.

6              MR. MANNING:  Can we have one

7    objection good for all?

8              MR. DIMUZIO:  For now it's -- One

9    for all is okay for now.

02:41 PM 10              MS. BARRON:  Other than perhaps

11    proving up qualifications, your intention is not to

12    follow us with a complete direct exam, is it?

13              MR. DIMUZIO:  Oh, no.  That's the

14    only thing that I do and I'm actually leaning

02:41 PM 15    towards not doing.

16              MS. BARRON:  You can see where the

17    problem is, though, if you passed and we went five

18    hours, we have a slight problem with a trial direct.

19              MR. DIMUZIO:  Yeah.  Trial direct

02:41 PM 20    will not happen, I'll guarantee you that.

21              MS. BARRON:  Since you noticed it

22    and are probably not going to ask questions, I don't

23    want to be saddled with the original costs.  What we

24    normally do is divide the original cost among

02:41 PM 25    everyone that's ordering a copy.

                    KATHY MILLER, CSR    (713)   861-0203
              NELL MCCALLUM & ASSOCIATES, INC.    HOUSTON, TEXAS

02:41 PM  1          MR. DIMUZIO:  That's fine.

2          MS. BARRON:  Is that acceptable?

3          MR. DIMUZIO:  That's acceptable.

4          MS. BARRON:  Any objections?

02:41 PM  5  Otherwise, I ain't going with the first question.

6                (Discussion off the record.)

7          MR. DIMUZIO:  And it's read and sign

8  and take it by the Rules.

9          ARTHUR L. FRANK, M.D., Ph.D.,

10  having been first duly sworn to testify the truth,

11  the whole truth, and nothing but the truth,

12  testified as follows:

13                      EXAMINATION

14  BY MS. BARRON:

02:42 PM  15     Q.   Dr. Frank, my name is Barbara Barron and

16  I'll be starting off the deposition with some of the

17  questions.  I know some of the other ladies and

18  gentlemen in the room will also have questions for

19  you today and I'll move as quickly as I can.  You

02:43 PM  20  have obviously given numerous depositions in the

21  past, correct?

22     A.   Yes, ma'am.

23     Q.   You understand the deposition protocol,

24  correct?

02:43 PM  25     A.   Yes.

|          |    |                                                          |
|----------|----|----------------------------------------------------------|
| 03:00 PM | 1  | case, did you get to see Mr. Fontenot?                   |
|          | 2  | A.   I did not.                                          |
|          | 3  | Q.   Okay.  Did you ever ask for the                    |
|          | 4  | opportunity to see Mr. Fontenot?                        |
| 03:01 PM | 5  | A.   No.                                                 |
|          | 6  | Q.   What materials did you review then?               |
|          | 7  | A.   They -- They're all here.                          |
|          | 8  | Q.   Yeah.                                               |
|          | 9  | A.   And there's a long list of materials, 23           |
| 03:01 PM | 10 | separate identified sets of information.                |
|          | 11 | Q.   And I've marked that exhibit, Exhibit 2,           |
|          | 12 | correct?                                                 |
|          | 13 | A.   Correct.                                            |
|          | 14 | Q.   And that's a letter dated September 29th,          |
| 03:01 PM | 15 | 2000 to you, from Jeanie Gardner, the legal             |
|          | 16 | assistant to Russ Cook, with a CC to Gary?              |
|          | 17 | A.   Yes.                                                |
|          | 18 | Q.   Very efficient office.  When were you              |
|          | 19 | hired or retained in this case?                         |
| 03:01 PM | 20 | A.   Probably about a year before, I was asked          |
|          | 21 | about if I would be available to work on this case.     |
|          | 22 | Q.   Is September of 2000 the first time you            |
|          | 23 | were sent any materials on the case?                    |
|          | 24 | A.   I believe so.  I think most of what I got          |
| 03:02 PM | 25 | earlier was verbal, a description of the case, and      |

25

03:02 PM    1    then the records showed up.

2        Q.    What description of the case do you

3    remember receiving?

4        A.    It's probably been a year-and-a-half, but

03:02 PM    5    basically it was a gentleman with a lung cancer who

6    had been involved with sandblasting, and had been

7    exposed to asbestos.

8        Q.    Other than the medical records that you

9    brought with you, have you reviewed anything else in

03:02 PM    10   this case?

11       A.    No.

12       Q.    Were you provided anything else from the

13   plaintiff's office?

14       A.    Other than verbally, no, I don't believe

03:02 PM    15   so.

16       Q.    How many conversations in total have you

17   had on this case with the plaintiff's office?

18       A.    Probably four or five, mostly setting up

19   the deposition, probably one of substance.

03:03 PM    20       Q.    And when --

21       A.    Or two.  One originally, and one very

22   recently and very briefly.

23       Q.    The one originally, how long did that

24   conversation last?

03:03 PM    25       A.    I don't recall.  Probably not more than

03:03 PM   1    five minutes.

           2         Q.    And the one recently, that was very brief,

           3    how long did that last?

           4         A.    Not more than five minutes.

02:03 PM   5         Q.    Was that today?

           6         A.    Yes.

           7         Q.    Was that right before the deposition?

           8         A.    Yes.

           9         Q.    What was discussed right before you came

03:03 PM  10    in today?

          11         A.    That I'd reviewed these records, and that

          12    I had an opinion about the cause of Mr. Fontenot's

          13    lung cancer.

          14         Q.    Did you review any X-rays?

03:03 PM  15         A.    Now that I think about it, I was sent some

          16    copies of X-rays with the initial -- I don't have

          17    any X-rays in my possession.  I think I was

          18    originally sent some X-rays.  They were copies and

          19    sent them back and they were not suitable for

03:04 PM  20    evaluation.

          21         Q.    Any CT scans?

          22         A.    No.  I don't read CT scans.

          23         Q.    And why not?

          24         A.    Because I was not -- They didn't have CT

03:04 PM  25    scans when I did my medical training, and I'm not a

03:04 PM  1    radiologist and I haven't gone back and learned how

2    to read CT scans, at least not officially.  I would

3    -- I would defer to a radiologist for those

4    evaluations.  I look at them, but I've not been

03:04 PM  5    formally trained to read them.

6         Q.   Do you think CT scans have any diagnostic

7    value in diagnosing occupational lung diseases?

8         A.   Yes.  They tend to be better than PA chest

9    X-rays for pleural disease.

03:04 PM 10        Q.   Do you think they have value in both -- in

11    diagnosing asbestos-related disorders and

12    silica-related disorders?

13        A.   They can have use in both.  I think there

14    -- in my own experience they're probably not any

03:05 PM 15    better for parenchymal disease.  They're good for

16    pleural disease and for things like egg shell

17    calcifications in silicosis.

18        Q.   Do you believe they have a tendency to

19    show rounded densities prior to when they would show

03:05 PM 20    on radiographs alone?

21        A.   I don't know.  I have no opinion about

22    that.  I -- I just haven't found them nor do I find

23    the literature documenting that they're especially

24    useful for parenchymal changes.  I'll still go with

03:05 PM 25    the chest X-ray.  I think they're much better for

19

03:05 PM  1    pleural changes that you can't see on the usual

2    chest films.

3        Q.   Did you ask anyone to review any of the CT

4    scans in this case?

03:05 PM  5        A.   No.  There are CT scan reports in the

6    records here.  So, they eventually did show up.

7        Q.   And how about pathology?

8        A.   I am not a pathologist.  I didn't review

9    pathology.  Whatever pathology I know about comes

03:06 PM 10    from the reports and the records.

11        Q.   And did you review plaintiff's deposition?

12        A.   I did not.

13        Q.   In terms of -- If you were to be sent a CT

14    scan, would you have one of your colleagues take a

03:06 PM 15    look at it, at UT Tyler?

16        A.   Frankly, usually not because I'll read the

17    reports that come with the records.  If I am just

18    sent the CT and there's some reason to, I might.  I

19    think -- I think in all the years, I may have had

03:06 PM 20    one CT looked at by a radiological colleague.

21    Usually I'll rely on the reports that are in the

22    records.

23        Q.   Is there a radiologist at UT Tyler that

24    you do confer with or consult with occasionally?

03:06 PM 25        A.   Whoever is in the reading room I can get

KATHY MILLER, CSR   (713)  861-0203
NELL MCCALLUM & ASSOCIATES, INC.   HOUSTON, TEXAS

03:06 PM    1    hold of.

2            Q.    And how about pathology?

3            A.    I don't think I've ever taken any

4    pathology to a colleague at UT Tyler, because I

03:07 PM    5    don't get sent the pathology.

6            Q.    If a plaintiff attorney was to call you

7    and ask that they -- ask you who they should send it

8    to, who would you recommend?

9            A.    It depends on what the problem was.  If it

03:07 PM    10    was an asbestos problem, I probably would recommend

11    -- I would probably give several names, but what I

12    usually start with or often go back to Dr. Suzuki

13    who I trained with in New York, who I think is as

14    experienced in this area as almost anybody.

03:07 PM    15            Q.    Anyone in the southern region that you

16    would recommend?

17            A.    I would probably bring up names of people

18    I'm familiar with that look at these materials, but

19    -- but probably not.

03:07 PM    20            Q.    And how about if it's a silica related

21    disorder?

22            A.    That's never occurred.  I have never been

23    asked about it, and I am not sure what I would do.

24    I -- I'd probably call Dr. Suzuki and ask if he

03:08 PM    25    would look at it, because I just -- you know, I -- I

03:08 PM   1   trust him.

2        Q.    We were talking about when you were sent

3   the materials by the plaintiff's law firm.  Have you

4   done any work in the past for the law firm that

03:08 PM   5   retained you in this case?

6        A.    I have.

7        Q.    And approximately how many cases have you

8   been asked to look at for medical legal purposes?

9        A.    Probably between five and ten.

03:08 PM  10        Q.    And I know Gary sitting next to you used

11   to be with another firm.  Have you met him

12   previously before today?

13        A.    Yes.

14        Q.    And have you ever had an opportunity to

03:08 PM  15   review any cases from his prior firm?

16        A.    Yes.

17        Q.    And approximately how many cases would

18   that have been?

19        A.    In terms of a review of records, one or

03:08 PM  20   two maybe.

21        Q.    Is there anything else other than a review

22   of records?

23        A.    Looking at X-rays.

24        Q.    How about looking at X-rays?

03:09 PM  25        A.    I have looked at a considerable number of

31

03:09 PM  1    X-rays for his previous firm.

2          Q.    How many people would you think total?

3                    MR. DIMUZIO:  Objection, form.

4          A.    Probably more than 400.

03:09 PM  5    Q.    (By Ms. Barron)  Was that for screening

6    purposes?

7          A.    Basically.  Yes.  I mean X --

8          Q.    How did --

9          A.    All I got was an X-ray without a history,

03:09 PM  10   and was asked to make an assessment of it.

11         Q.    Of those 400 that you looked at, do you

12   know what your percentage of finding positive

13   findings is?

14         A.    About 1 in 20.

03:09 PM  15                MS. STUART:  I'm sorry, I couldn't

16   hear that.

17         A.    1 in 20, give or take.  I mean, I -- you

18   know, it's about -- It runs about that.

19         Q.    (By Ms. Barron)  Were you screening --

03:09 PM  20   Were those screenings predominantly for asbestosis

21   or silicosis?

22         A.    Both.

23                MR. DIMUZIO:  Objection, form.

24         Q.    (By Ms. Barron)  Are you normally told

03:09 PM  25   what the screenings are for?

32

03:09 PM 1   A.   No.

2   Q.   Have you done any screenings for Russ

3   Cook's law firm, for the law firm that's hired you

4   for this case?

03:10 PM 5   A.   Other than the number that I gave you of

6   files that I have looked at, no screening in the

7   sense of not having a history or disease or being

8   asked to render a judgment about a particular case.

9   Q.   With regard to your review of the records

03:10 PM 10   in this case, after -- how much time did you spend

11   reviewing the records?

12   A.   That took about two hours.

13   Q.   Trying to help you here.

14   A.   Oh, maybe it was six.  No.

03:10 PM 15   Q.   With -- When you went through the records,

16   were you looking for anything specifically?

17   A.   Yes.  I mean, I am looking for any -- any

18   description of exposures or work settings.  I am

19   looking for diagnoses that are related to the issues

03:11 PM 20   I have been asked to comment on.  Clearly,

21   Mr. Fontenot has a number of medical problems that

22   are unrelated to the issues I have been asked to

23   comment upon.  I look for pathology reports.  Being

24   that I had not seen any original X-rays, I looked

03:11 PM 25   for X-ray reports which I often don't do if I get to

03:11 PM  1   read my own X-rays.  I look for CT scan reports.

2   That's predominantly it.

3       Q.    Pulmonary function?

4       A.    I probably look at them, but it doesn't --

03:11 PM  5   it almost never -- It never makes the diagnosis for

6   you and no matter what the results are, it doesn't

7   make something become a diagnosis or exclude

8   something.  So, I don't put much stock in PFTs.

9       Q.    After you reviewed all the records, did

03:12 PM  10  you come to a conclusion that any additional testing

11  needed to be done?

12      A.    No.

13      Q.    Were -- Was there anything else that you

14  thought you needed from the plaintiff's law firm in

03:12 PM  15  order to render an opinion in this case?

16      A.    No.  If I had thought so, I would have

17  asked for it.

18      Q.    Have you ever had an opportunity at all,

19  even on the phone, to talk to the plaintiff in this

03:12 PM  20  case?

21      A.    No.

22      Q.    Did you yourself ever take a history from

23  the -- from the plaintiff?

24      A.    I did not.  The first answer would have

03:12 PM  25  been expected to exclude the second, but, no.

34

03:12 PM   1        Q.    Is it a fair statement that everything
        2   that you have seen in this case has been sent to you
        3   from the plaintiff's attorney?
        4        A.    Yes.
03:12 PM   5        Q.    Is there anything that you have asked for
        6   that they've not provided to you?
        7        A.    No.
        8        Q.    You said the X-rays that you saw were poor
        9   quality?
03:13 PM  10        A.    No.    They were copies, not poor quality.
       11   I just, as a rule, don't read copies for
       12   pneumoconiosis unless they're extremely good copies
       13   or with some of the new equipment, the digital
       14   X-rays, they come out -- I mean, they're all copies,
03:13 PM  15   but they're good, quality X-rays.
       16        Q.    Most hospitals nowadays will not release
       17   the originals.
       18        A.    That has occasionally been a problem when
       19   I've asked attorneys for them.    I have learned that,
03:13 PM  20   yes.
       21        Q.    In terms of your opinions in this case,
       22   what are those opinions?
       23            MR. DIMUZIO:    Objection, form.
       24        Q.    (By Ms. Barron)    Sorry.    Easiest way to
03:13 PM  25   get it, and fastest.

03:13 PM   1        A.    My opinion is that Mr. Fontenot has

2    developed an adenocarcinoma of the lung, and that

3    this resulted from three exposures that I'm aware

4    of:  Exposure to asbestos, exposure to silica, and

03:14 PM   5    exposure to cigarette smoke.

6        Q.    Do you believe Mr. Fontenot has

7    asbestosis?

8        A.    I have seen no evidence that would lead me

9    to that diagnosis.

03:14 PM  10        Q.    Do you believe he has silicosis?

11        A.    Similarly, I've seen no information that

12    would lead me to make that specific diagnosis.

13        Q.    Do you believe based on reasonable medical

14    probability that he has chronic obstructive

03:14 PM  15    pulmonary disease?

16        A.    He appears to have that.

17        Q.    Based on reasonable medical probability,

18    do you believe that he has asbestosis?  I didn't

19    throw that in earlier, that's why I'm having to

03:15 PM  20    reask.

21        A.    Not seeing any evidence for it, I can't

22    believe he has a diagnosis for which I see no

23    objective evidence.

24        Q.    And based on reasonable probability, is

03:15 PM  25    your answer the same for silicosis?

26

03:15 PM 1          A.    Yes.

2          Q.    In terms of the literature on silica and

3    cancer, were you sent any medical articles or

4    literature from the plaintiff's attorneys in this

03:15 PM 5    case?

6          A.    I was not.

7          Q.    On the topic of whether silica is a

8    carcinogen, or whether there is any association

9    between silicosis and lung cancer, have you been

03:16 PM 10    sent any information from any plaintiff's attorney?

11          A.    The most honest answer is:  Not that I

12    recall.  That doesn't mean that sometime -- I mean,

13    every once in a while a plaintiff's attorney will

14    send me an article they think is of interest to me.

03:16 PM 15    It's happened with the asbestos work for a long

16    time.  It may have happened with the silica work,

17    but I -- I don't recall receiving anything from a

18    plaintiff's attorney regarding that issue.

19          Q.    In terms of your review of the medical

03:16 PM 20    records in this case, did you make any notes?

21          A.    No.

22          Q.    Do you have any notes on any of your

23    conversations with the plaintiff's law firm?

24          A.    No.

03:16 PM 25          Q.    Other than what you brought with you

03:16 PM 1    today, and obviously some medical articles, is there

2    anything else that you rely on in rendering your

3    opinion that you just gave us?

4        A.    No.

03:17 PM 5        Q.    Has any lawyer from the law firm that has

6    hired you for this case, have they ever been to your

7    house?

8        A.    Yes.

9        Q.    On how many occasions?

03:17 PM 10       A.    One.

11       Q.    And have you ever been to any of their

12   houses or homes?

13       A.    No.

14       Q.    What is -- In terms of the three exposures

03:17 PM 15   that you believe contributed to his lung cancer, do

16   you attribute a percentage to any of those causes?

17       A.    I have no way of being able to identify a

18   percentage that I can attribute to any one of these

19   three causes.

03:18 PM 20       Q.    What is your understanding of what the

21   plaintiff did for a living?

22       A.    He was a painter who also did

23   sandblasting.  One of the things left for me here

24   out of all the records was a consultation done for

03:18 PM 25   one of your colleagues, I believe, which outlines

29

1    his work history in pretty good detail.  If you want

2    me to review it briefly, and it will be on the

3    record or not, but he worked as a sandblaster.

4        Q.    Do you know whether he ever did any

5    residential painting?

6        A.    Not specifically.

7        Q.    Do you know whether he did any residential

8    Sheetrock work, floating and taping?

9        A.    He did do that, but I don't know in which

10   setting.

11       Q.    Do you know whether the plaintiff actually

12   had any exposure to asbestos-containing material?

13            MR. DIMUZIO:  Objection, form.

14       A.    I have no direct evidence of that other

15   than the settings in which he worked in which one

16   would have expected asbestos to be present.  If he

17   did Sheetrock work and did taping and spackling as a

18   painter, those compounds for many years contained

19   asbestos.  But if you ask me to identify any

20   particular product that he may have been exposed to

21   or any particular type of asbestos, I can't do that.

22            MS. STUART:  Object to nonresponsive

23   to everything after "no direct evidence."

24            THE REPORTER:  Can you give me your

25   name?

30

MS. STUART:  Kim Stuart.

MS. BARRON:  We can probably agree
just to put defendants' objection by one is
objection by anyone who later wants to assert it,
which will make your job a little easier.

MR. DIMUZIO:  (Indicating.)

Q.   (By Ms. Barron)  Did you see any
indication in any of the records that you reviewed
that plaintiff had any asbestos exposure?

A.   Yes.  There's lots in the records where
doctors have commented that he had either probable
exposure to asbestos or probable exposure to
asbestosis, which is obviously not correct, but is
not infrequently how it's listed in records.

Q.   Do you recall seeing entries in the
medical records where there was questionable, as
opposed to probable, questionable exposure --

A.   Yes.

Q.   -- to asbestos?  And if I understand what
you were telling me earlier, because of what your
understanding is from the medical records of what
the plaintiff's jobs were, you're making a
presumption, based on your experience, that you
believe that he was exposed to asbestos?

A.   Not just what his jobs were, but in some

40

| 03:21 PM | 1 | cases the settings for those jobs such as a |
| | 2 | shipyard. Shipyards are, in fact, known to be |
| | 3 | places where asbestos is commonly found. |
| | 4 | Q. What shipyards did this plaintiff work at? |
| 03:21 PM | 5 | A. I forget. I am not sure I ever knew |
| | 6 | specifically. Somewhere in the records, I believe, |
| | 7 | it said he did some of his work in a shipyard. |
| | 8 | Unless I am forgetting, it doesn't say that here in |
| | 9 | this record. |
| 03:21 PM | 10 | Q. Is it your preference to actually see the |
| | 11 | plaintiff when you can? |
| | 12 | MR. DIMUZIO: Objection, form. |
| | 13 | A. Not really. If I have adequate |
| | 14 | information, I can render a judgment, and it both |
| 03:22 PM | 15 | saves money and time and discomfort for patients to |
| | 16 | have to travel to see me. |
| | 17 | Q. (By Ms. Barron) Did you find the work |
| | 18 | history taken by Dr. Holland to be adequate? |
| | 19 | MR. DIMUZIO: Objection, form. |
| 03:22 PM | 20 | A. Without answering it -- I mean, it -- it |
| | 21 | gave me information that was useful to me. It's not |
| | 22 | necessarily how I would have taken it, but it was |
| | 23 | helpful in understanding what Mr. Fontenot had done. |
| | 24 | Q. (By Ms. Barron) You have a form that you |
| 03:22 PM | 25 | use with plaintiffs that actually come to see you |