IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>W.R. Grace & Co., et al.,<br><br>Debtors, | Chapter 11<br><br>Case No.  01-01139 (JKF)<br>(Jointly Administered) |

## AFFIDAVIT OF BILL BUTLER

Bill Butler, having been first duly sworn, upon oath states and alleges as follows:

1.    I am attorney representing the following claimants ("Claimants") in this

case:

| Name of Claimant | | ADDRESS | CITY | ST | ZIP | CASE NUMBER | CLAIM NUMBER |
|---|---|---|---|---|---|---|---|
| Lawrence | Barker | 1606 Jefferson Street NE | Minneapolis | MN | 55413 | 01-01140 | 11331 |
| Wallace | Barko, Jr. | 1916 3rd Street NE | Minneapolis | MN | 55418 | 01-01140 | 11332 |
| Sue | Branch | 1226 Washington St. NE | Minneapolis | MN | 55413 | 01-01140 | 11333 |
| Scott | Cauwels | 4021 Wooddale Avenue S | St Louis Park | MN | 55416 | 01-01140 | 11264 |
| Adam | Chase | 1427 Adams Street NE | Minneapolis | MN | 55413 | 01-01140 | 11334 |
| Dwight | Christensen | 681 Summer Street NE | Minneapolis | MN | 55413 | 01-01140 | 11336 |
| Caroline | Cisewski | 1332-1334 Madison Street NE | Minneapolis | MN | 55413 | 01-01140 | 11335 |
| James | Craig | 2101 5th Street NE | Minneapolis | MN | 55418 | 01-01140 | 11337 |
| Brad | Daystar | 508 20th Avenue NE | Minneapolis | MN | 55418 | 01-01140 | 11338 |
| Mark | DePauw | 1338 Jefferson Street NE | Minneapolis | MN | 55418 | 01-01140 | 11339 |
| David & Gail | Fiebiger | 1316 Jefferson Street NE | Minneapolis | MN | 55413 | 01-01140 | 11340 |
| Jordan | Fineberg | 825 19th Avenue NE | Minneapolis | MN | 55418 | 01-01140 | 11341 |
| Jean | Forland | 1515 4th Street NE | Minneapolis | MN | 55413 | 01-01140 | 11342 |

| Patricia | Foss | 636 22nd Avenue NE | Minneapolis | MN | 55413 | 01-01140 | 11343 |
|---|---|---|---|---|---|---|---|
| Steven | Fuller | 1212 Jefferson Street NE | Minneapolis | MN | 55413 | 01-01140 | 11344 |
| Larry | Gallagher | 2311 Whitewater Creek Road | Whitewater | CO | 81527 | 01-01140 | 11345 |
| Julie | Gubbin | 1508 Madison Street NE | Minneapolis | MN | 55413 | 01-01140 | 11346 |
| Tobi | Harris | 1530 California Street NE | Minneapolis | MN | 55413 | 01-01140 | 11347 |
| Patricia | Hughes | 2212 Howard Street NE | Minneapolis | MN | 55418 | 01-01140 | 11348 |
| Keith | Johnson | 2314 Quincy Street NE | Minneapolis | MN | 55418 | 01-01140 | 11349 |
| Trista | Jonk | 1813 Jackson Street NE | Minneapolis | MN | 55418 | 01-01140 | 11350 |
| Martin | Kouri | 1138 Jefferson Street NE | Minneapolis | MN | 55413 | 01-01140 | 11351 |
| Namie & Doris | Kouri | 1138 Jefferson Street NE | Minneapolis | MN | 55413 | 01-01140 | 11352 |
| Thomas | Kouri | 2000 4th Street NE | Minneapolis | MN | 55418 | 01-01140 | 11353 |
| Wayne | Kovensky | 1407 Adams Street NE | Minneapolis | MN | 55413 | 01-01140 | 11354 |
| Leo | Kuelbs | 1202 Jefferson Street NE | Minneapolis | MN | 55413 | 01-01140 | 11355 |
| Ella | Kuha | 2106 4th Street NE | Minneapolis | MN | 55418 | 01-01140 | 11356 |
| John | Landry | 20276 Spoonbill Ct. | Rogers | MN | 55374 | 01-01140 | 11357 |
| Timothy | Lees | 1518 Madison Street NE | Minneapolis | MN | 55413 | 01-01140 | 11358 |
| Gunda | Luss | 2117 25th Avenue South | Minneapolis | MN | 55406 | 01-01140 | 11359 |
| Philip | Martin | 1610 Madison Street NE | Minneapolis | MN | 55413 | 01-01140 | 11360 |
| Sharon | Martin | 1134 Jefferson St. NE, #1 | Minneapolis | MN | 55413 | 01-01140 | 11361 |
| Mike | Miskowiec | 1432 5th Street NE, #3 | Minneapolis | MN | 55413 | 01-01140 | 11362 |
| Robert | Nordstrom | 690 Lowry Avenue NE | Minneapolis | MN | 55418 | 01-01140 | 11363 |
| Chyleen | Ostlund | 1412 Monroe Street NE | Minneapolis | MN | 55413 | 01-01140 | 11364 |
| Zaharias | Pakirtzis | 7201 36th Avenue N Apt #118 | Crystal | MN | 55427 | 01-01140 | 11365 |
| Gary | Patch | 1502 Madison Street NE | Minneapolis | MN | 55413 | 01-01140 | 11366 |
| Mahtab | Rezai | 1539-4th Street NE | Minneapolis | MN | 55413 | 01-01140 | 11367 |
| John | Russinik | 429 20th Avenue NE | Minneapolis | MN | 55418 | 01-01140 | 11368 |
| Gail | Schack | 1210 Jefferson Street NE | Minneapolis | MN | 55413 | 01-01140 | 11369 |
| William | Schaefer | 1435 Adams Street NE | Minneapolis | MN | 55413 | 01-01140 | 11370 |
| Carla | Sellers | 1732 Jefferson Street NE | Minneapolis | MN | 55413 | 01-01140 | 11371 |
| Jean | Seymour | 1812 5th Street NE | Minneapolis | MN | 55418 | 01-01140 | 11372 |
| John | Smith | 2415 Garfield Street NE | Minneapolis | MN | 55418 | 01-01140 | 11373 |

| Jon | Soucek | 1715 5th Street NE | Minneapolis | MN | 55413 | 01-01140 | 11374 |
| Timothy | Speidel | 1724 Jefferson Street NE | Minneapolis | MN | 55413 | 01-01140 | 11375 |
| St. John's Lutheran Church | | 610 Broadway St NE | Minneapolis | MN | 55413 | 01-01140 | 11378 |
| Delores | Sydloski | 1431-4th Street NE | Minneapolis | MN | 55413 | 01-01140 | 11376 |
| Clemens | Szykulski | 2407 Jefferson Street NE | Minneapolis | MN | 55418 | 01-01140 | 11377 |
| Elizabeth | Taft | 1718 Jefferson Street NE | Minneapolis | MN | 55418 | 01-01140 | 11380 |
| Brian | Treffert | 2331 Monroe Street NE | Minneapolis | MN | 55418 | 01-01140 | 11379 |
| Paul | Van ryswyk | 1927 University Avenue NE | Minneapolis | MN | 55418 | 01-01140 | 11381 |
| Randy | Vanderwood | 1337 Adams Street NE | Minneapolis | MN | 55413 | 01-01140 | 11382 |
| William | Worley | 1720 6th Street NE | Minneapolis | MN | 55413 | 01-01140 | 11383 |

2.      Attached hereto as Exhibits are true and correct copies of the following

documents:

| EXHIBIT | |
| --- | --- |
| A | February 2001 publication of Environmental Protection Agency explaining the history of Western Minerals Superfund site in Northeast Minneapolis. |
| B | September 11, 2000 Letter report from EPA identifying asbestos found in neighborhood surrounding Western Minerals site. |
| C | September 2000 publication from Minnesota Department of Health explaining history of Western Minerals site and dangers of asbestos exposure. |
| D | September 14, 2000 Letter from EPA to W.R. Grace providing notice of asbestos contamination in neighborhood surrounding Western Minerals site. |
| E | October 2000 Complaint in Chase v. W.R. Grace, Hennepin County File No. 00-014792 |

Bill Butler

NOTARY PUBLIC

Subscribed and sworn to before me this
_____ day of August, 2003



United States
Environmental Protection
Agency

Office of Public Affairs
Region 5
77 West Jackson Boulevard
Chicago, Illinois 60604-3590

Illinois, Indiana
Michigan, Minnesota
Ohio, Wisconsin

# Western Mineral Products Site Cleanup to Resume in Spring

**Minneapolis, Minnesota**             **February 2001**

## This Fact Sheet Will Tell You About:

- The background of the site.

- Cleanup activities conducted in the fall 2000.

- When the cleanup will resume.

- What the future cleanup activities will involve.

- How to get more information.



*Tape barricades the working area at a resident's home in Minneapolis.*

## Introduction

The United States Environmental Protection Agency (U.S. EPA) has been conducting cleanup activities in the northeast portions of Minneapolis as a result of asbestos contamination at the Western Mineral Products site. This fact sheet explains the site background and summarizes site activities to date. It also describes potential exposures and explains how residents can contact U.S. EPA.

## Site Background

The Western Mineral Products site is composed of industrial property in northeast Minneapolis at 1720 Madison Street and 1815 Jefferson Street in Hennepin County, Minnesota, and surrounding residential properties. The industrial site is bordered on the north by Electramatic, Inc., on the east by Burlington Northern & Santa Fe railroad tracks, on the west by Jefferson Street, and on the south by a commercial complex.

Western Mineral Products, Inc. was purchased by W.R. Grace Co. in 1963 to manufacture vermiculite insulation from vermiculite ore that was mined in Libby, Montana. The Minneapolis facility operated from the late 1930s to the



**EXHIBIT**

late 1980s. During operations, piles of waste vermiculite rock were placed outside the facility. This rock was offered to anyone, free of charge. Residents in Logan Park and other neighborhoods may have used this material for driveway or yard fill, in pet enclosures, gardens, barbeque pits, children's sand boxes, or carried it in the trunks of their cars for traction in the snow. Unfortunately, the vermiculite ore from Libby was found to contain high levels of tremolite asbestos. The waste material, "crushed rock" or "stoner rock," also contains high levels of asbestos.

In 1990, W.R. Grace allegedly conducted a removal of all material stored in two on-site silos. Currently, the site is owned by the firm of Madison Complex and leased to Panel Specialities, Inc., which manufactures prison furniture.

## Site Activities

In February 2000, U.S. EPA conducted a site assessment of the former Western Mineral Products site. The interior and exterior portions of the building were inspected. Samples taken from outside the building contained asbestos.

In April 2000, U.S. EPA representatives conducted additional sampling of surface soils near the facility that appeared to have visual evidence of vermiculite or asbestos. At that time, there was a recently excavated trench along the western edge of the facility where a new electrical transformer was to be installed. U.S. EPA observed an unusual layer of what appeared to be vermiculite two feet below the surface in the trench. Samples collected on the facility property contained asbestos. At about this time, the first public meeting about asbestos and vermiculite was hosted by the City of Minneapolis. Currently, owners of the industrial site (Madison Complex) are participating in a voluntary cleanup program under the direction of the Minnesota Pollution Control Agency.

In June and August 2000, U.S. EPA collected residential samples. The U.S. EPA team began a walkthrough of the residential area within a ¼-mile radius of the site. The team attempted to contact residents of homes where suspect asbestos-containing material was visible. Residents were asked about the possibility of the transfer of material from the Western Mineral Products facility to their premises.

In September 2000, U.S. EPA representatives were available to talk with residents about vermiculite processed at Western Mineral Products, Inc. Informational pamphlets were delivered to approximately 400 residents. Phone numbers were provided to residents who wanted to schedule an appointment with U.S. EPA for a visual inspection of their property. U.S. EPA conducted approximately 100 environmental assessment interviews in the Logan Park neighborhood. Findings of asbestos contamination in public areas, such as alleyways and streets, and increased public concern have served to increase the area of investigation to include approximately one square mile.

In October 2000, U.S. EPA established a field office in the Logan Park neighborhood near the industrial site. The office served as a command post for the cleanup activities. Through facts sheets, an October 11, 2000, public meeting, and two informal open houses, residents have been urged to contact U.S. EPA if asbestos contamination is suspected. A local U.S. EPA hotline (612-706-0615) was established at the site. A total of 313 residences have been inspected to date. Of the 313 residences inspected, 244 require no further action, 23 are targeted for further soil sampling, 25 are targeted for spring cleanup, and 21 residential properties have already been cleaned up. The cleanup involved vacuuming alleys behind the asbestos-contaminated residential properties with a high-powered vacuum system and excavating soil from residential properties with visible asbestos. During these activities, the work area and neighborhood air was monitored. Of the 21 residences cleaned up, 16 alleys/residential properties were vacuumed. Soil on all 21 residential properties was excavated and restored. Twelve residences will be revisited in spring 2001 in order to excavate contaminated lawn areas that could not be restored in the fall due to cold weather.

## Asbestos Exposure

People who work in industries that use asbestos or asbestos-containing products, such as construction material, may breathe fibers into their lungs. In addition, people who live or work near asbestos-related operations may inhale asbestos fibers that enter the air through releases of materials into the air. Some asbestos fibers are so small they invisibly float in the air. People may also swallow asbestos if they eat in

2

areas where there are asbestos fibers in the air. People who have the waste vermiculite material from the Western Mineral Products site, or other vermiculite-processing facilities, on their property may be exposed to asbestos. The amount of asbestos a person is exposed to will vary according to the number of fibers that are in the air and how long a person breathes the air containing the fibers.

Some people exposed to asbestos have health problems; some do not. After asbestos fibers are inhaled, they can easily enter body tissues. The fibers may become trapped in airways and lung tissue. Diseases related to asbestos may not show up until years later. Today, health problems are showing up in people who worked with asbestos during World War II. If you believe you have asbestos-containing material on your property grounds, you should contact a U.S. EPA representative through the toll-free number listed on the back page.

## The Next Step

U.S. EPA will not be conducting any inspections or excavations during the winter months due to expected weather conditions. The U.S. EPA local hotline (612-706-0615) will remain open for citizens to call to request property inspections to be conducted in the spring. Site activities will resume in spring 2001 with additional residential cleanups and residential inspections as necessary.

### For More Information

#### Information Repository

Western Mineral Products site technical documents and information about the Superfund process are available for review in the local information repository listed below:



Minneapolis Public Library Northeast
2200 Central Avenue Northeast
Minneapolis, MN 55418

#### Web Sites

U.S. EPA Web Site:
http://www.epa.gov
U.S. EPA Headquarters
Asbestos Page:
http://www.epa.gov/asbestos/



#### Contact Names

The names, addresses, and phone numbers of U.S. EPA officials working on the Western Mineral Products site are listed on the back page of this fact sheet.

## Mailing List

If you did not receive this fact sheet by mail, you are not on U.S. EPA's mailing list for the Western Mineral Products site. To add your name to the mailing list to receive future information concerning the site, please fill out this form, detach, and mail to:

Mr. Stuart Hill
Community Involvement Coordinator
Office of Public Affairs (P-19J)
U.S. EPA Region 5
77 West Jackson Boulevard
Chicago, IL 60604-3590

Name_____

Affiliation_____

Address_____

City_____ State_____ Zip_____

## Contact Information

For additional information about site activities or about asbestos and vermiculite, you may contact the following:

**Stuart Hill**
Community Involvement Coordinator
Office of Public Affairs (P-19J)
(312) 886-0689
hill.stuart@epa.gov

**Cheryl Allen**
Community Involvement Coordinator
Office of Public Affairs (P-19J)
(312) 353-6196
allen.cheryl@epa.gov

**Sonia Vega**
On-Scene Coordinator
Office of Superfund (SE-5J)
(312) 886-7191
vega.sonia@epa.gov



U.S. EPA Region 5
77 West Jackson Boulevard
Chicago, IL  60604-3590
(800) 621-8431 (U.S. EPA toll-free hotline)

Agency for Toxic Substances and Disease Registry (ATSDR)
ATSDR Information Line (Atlanta, Georgia):  (888) 42-ATSDR (1-888-422-8737)


Reproduced on Recycled Paper

U.S. Environmental Protection Agency
Region 5
Office of Public Affairs (P-19J)
77 West Jackson Boulevard
Chicago, IL  60604-3590

Official Business
Penalty for Private Use - $300

**LETTER REPORT
FOR THE RESIDENTIAL PORTION OF
WESTERN MINERAL PROCESSING
MINNEAPOLIS, HENNEPIN COUNTY, MINNESOTA
TDD: S05-0006-010
PAN: 050N1001RSXX**

September 11, 2000

**Prepared for:**

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
Emergency Response Branch
77 West Jackson Boulevard
Chicago, Illinois 60604**

Prepared by: _____    Date: 9/11/00
 for Vincent L. Gee, START Project Manager

Reviewed by: _____    Date: 9/11/00
 Patrick Zwilling, START Assistant Program Manager

Approved by: _____    Date: 9/11/00
 for Daniel Sewall, START Program Manager



# ecology and environment, inc.

International Specialists in the Environment

33 North Dearborn Street, Chicago, Illinois 60602
Tel. 312/578-9243, Fax: 312/578-9345

recycled paper



EXHIBIT

B



# ecology and environment, inc.

International Specialists in the Environment

33 North Dearborn Street
Chicago, Illinois 60602
Tel. 312/578-9243, Fax: 312/578-9345

September 11, 2000

Ms. Gail Nabasny, START Project Officer
United States Environmental Protection Agency
Emergency Response Branch
77 W. Jackson Boulevard, 5th Floor
Chicago, IL  60604-3690

Re:    Western Mineral Processing
       Minneapolis, Hennepen County, Minnesota
       TDD: S05-0006-010
       PAN: 050N1001RSXX

Dear Ms. Nabasny:

       The United States Environmental Protection Agency (U.S. EPA) tasked the Ecology and
Environment, Inc. (E & E), Superfund Technical Assessment and Response Team (START), under
Technical Direction Document (TDD) S05-0006-010, to conduct an outdoor residential assessment and
perform amphibole asbestos sampling activities for the neighborhood surrounding the former Western
Mineral Products (WMP) and Electramatic, Inc.(Electramatic) site (Attachment A, Figure 1). This letter
report documents activities related to the outdoor residential assessment. The industrial sites are located at
1720 Madison Street and 1815 Jefferson Street N.E., Minneapolis, Hennepin County, Minnesota, with
latitude and longitude coordinates of 45.00336N, 93.25561W respectively. The site is bordered on the east
by Burlington Northern & Santa Fe railroad tracks, on the north by commercial buildings, on the west by
commercial and residential buildings and a city maintenance facility, and on the south by a commercial
complex. The residential assessment and amphibole asbestos sampling activities expanded out 0.4 miles in
all directions (Attachment A, Figure 2). Photodocumentation collected during U.S. EPA-related residential
assessment activities for the WMP site are presented in Attachment B.

       The facility was operated by Western Mineral Products, which was purchased by W.R. Grace
Co., as an exfoliating plant for vermiculite ore from Libby, Montana. W.R. Grace operated the facility
until approximately 1989. During the operating period between the 1950s and 1989, WMP/W.R. Grace
placed piles of residual vermiculite outside the facility and the neighborhood residents were allowed to take
the waste material free of charge. This residual vermiculite contained amphibole asbestos and can be
identified visually as vermiculite mixed with small gray rock fragments with a bluish-green tint. At that
time, the site was sold to Madison Complex and was leased to Panel Specialties Inc.(PSI), which currently
manufactures prison furniture on site. Allegedly, in 1990, W.R. Grace conducted a removal of all material
stored in the two on-site silos. U.S. EPA site assessment activities were conducted to determine the
potential threat of amphibole asbestos-containing material (ACM) in vermiculite produced at the
W.R.Grace facility that remains in soil on site.

On February 2, 2000, U.S. EPA On-Scene Coordinator (OSC) Len Zintak and START member Ron Bugg arrived at the site and conducted a site walkthrough of the exterior and interior portions of the buildings. OSC Zintak and START Bugg observed exfoliated vermiculite insulation behind drop ceiling tiles on the first floor of the office building. START Bugg collected two samples of this material, labeled BS-1 and BS-2. The samples were analyzed using polarized light microscopy (PLM) utilizing the U.S. EPA-approved methodology 600/R-93/115, and transmission electron microscopy (TEM) utilizing the Chatfield method. Laboratory analysis confirmed that both samples contained less than 1% amphibole asbestos by volume (Attachment C, Table 1). START also collected two soil samples near the silos. The samples were labeled OS-3 and OS-4. Laboratory PLM and TEM analysis confirmed that these samples contained less than 1% amphibole asbestos by volume.

On April 13, 2000, OSC Len Zintak and START member Eric Reuscher arrived at the site to conduct additional sampling activities of building material and surface soil near the WMP facility that was found to have visual evidence of vermiculite or amphibole asbestos (Attachment A, Figure 3). U.S. EPA representatives toxicologist Mark Johnson, civil investigator Joseph Kawecki, and public affairs representative Virginia Narsete were also present on site. START collected samples BS-5-WMIN and BS-6-WMIN inside the WMP facility, and samples OS-7-WMIN and OS-8-WMIN outside the WMP facility. Laboratory PLM and TEM analysis showed trace levels of less than 1% amphibole asbestos in the indoor samples and approximately 20% and 8% amphibole asbestos in outdoor samples (Attachment C, Table 2) (see July 21, 2000 Letter Report for Western Mineral Processing Minneapolis, Hennepen County, Minnesota TDD: S05-0002-014, S05-0006-010 PAN: 050F1401SIXX, 050N1001RSXX).

On June 21, 2000, START began collecting residential samples when potential source areas were detected (Attachment A, Figure 4). START sent all samples collected by chain-of-custody to Reservoir Environmental Services, in Denver, Colorado, for analysis under analytical TDD S05-0005-805. The samples were analyzed using PLM and dispersion staining techniques utilizing the EPA-approved methodology 600/R-93/116. The results are presented as estimates based on this method for the portion of the sample analyzed (Attachment D). The PLM results are confirmed using TEM.

On June 21, 2000, U.S. EPA OSC Zintak, community involvement coordinator T. Stuart Hill and toxicologist Mark Johnson met with START members Garth Daley and Vince Gee on site to initiate sample collection in the surrounding residential area. Backyard and driveway inspections were made in search of residual vermiculite/suspect ACM (Attachment A, Figure 4). The U.S. EPA team began a walkthrough of the residential area within a 0.4 mile radius of WMP and Electramatic. The team attempted to contact residents of homes where suspect ACM contamination was visible. Community outreach was carried out throughout the neighborhood by U.S. EPA representatives Hill, Johnson, and Zintak. Community outreach was made with the homeowner of 1732 Jefferson and questions were asked about the possibility of the transfer of material from the WMP facility to their home for gardening or driveway fill. Sample RES1 was collected from the backyard because a small trace of suspect ACM was identified. A brief discussion was conducted by Hill and Johnson with the homeowner of 1610 Jefferson. The homeowner indicated that on one occasion he had received waste products from the WMP facility. Sample RES2 was collected between the doghouse and the garage at 1610 Jefferson. Sample RES3 was collected from the driveway of 1504/1506 Jefferson after observing suspect ACM and vermiculite product. Sample RES4 was collected from the driveway of 1505 Jefferson after observing suspect ACM. Samples were collected to see if possible ACM was migrating from the WMP site into Jefferson Street. Sample RES5 was collected from

2

the sediment at the west driveway to the WMP/PSI complex and sample RES6 was collected from sediment along the curb midway between the entrance to WMP/PSI and Electramatic.

On August 1, 2000, OSC Len Zintak and START members Campbell and Gee continued the investigation for amphibole asbestos contamination for the community and surrounding residential area. Community outreach was made with the homeowner of 1424 Jefferson, questions were asked about the possibility of the transfer of material from the WMP facility to their home for driveway fill. Sample RES7 was collected from the alley of 1424 Jefferson. Community outreach was made with the homeowner of 1318 Jefferson, questions were asked about the possibility of the transfer of material from the WMP facility to their home for driveway fill. Samples RES8 and RES8I were collected from the driveway of 1318 Jefferson.

Sample RES8I was a composite of small gray rock fragments with a bluish-green tint that were 10 to 25 millimeters in length. Sample RES8I illustrated properties of amphibole asbestos (tremolite-actinolite) which was identified in previous sampling events and was later confirmed by PLM analysis to be 80% tremolite-actinolite (Attachment A, Figure 3). It was agreed upon by U.S. EPA and START that visual identification (VIS) would be deployed when obvious gray rock fragments 10 to 25 millimeters in length were present. Sample RES9 was from the center of the alley from 1318 Jefferson. Community outreach was made with the homeowner of 1310 Adams, again questions were asked about the possibility of the transfer of material from the WMP facility to their home for driveway fill. Sample RES10 was from the center of the alley behind 1310 Adams. Visual identification VIS1 was made on the driveway for 1403 Washington. Community outreach was made with the homeowner of 649 19th Avenue, routine questions were asked about the possibility of the transfer of material from the WMP facility to their home for driveway fill. Sample RES11 was collected from the center of the alley.

Samples RES12, 12I and VIS2 represents an area that encompass' the four garage addresses 1919, 1922, and 1923 Jefferson Street and 640 20th Avenue. After making community outreach with the owner of 1918 Jefferson, samples RES12 and 12I was collected from the driveway area as a composite representation. Visual identification VIS3 was made on the driveway for 1835 Monroe. Visual identification VIS4 was made on the driveway for 1839 Monroe. Community outreach was made with the homeowner of 1843 Monroe, and questions were asked about the possibility of the transfer of material from the WMP facility to their home for driveway fill. Sample RES13 was collected from the driveway of 1843 Monroe. Samples RES14 and 14D were collected from Logan Park (690 13th Avenue N.E.). Community outreach was made with the homeowner of 1301-1307 Monroe, again questions were asked about the possibility of the transfer of material from the WMP facility to their home for driveway fill. Sample RES15 was collected from the driveway. After community outreach and questioning was established with the owner of 1423/1425 Monroe, sample RES16 was collected from the driveway. Visual identification VIS5 was made on the vacant lot for 1607 Monroe.

The result of the soil samples from the residential survey revealed the following: RES1, RES2, RES10, RES11, RES13 and RES16 contained trace amounts of ACM; RES3 contained 10% ACM tremolite/actinolite; RES4 contained 6% ACM tremolite/actinolite; RES5 contained 6% ACM tremolite/actinolite; RES6 contained 4% ACM tremolite/actinolite, RES8 contained 2% ACM tremolite/actinolite, RES9 contained 2% ACM tremolite/actinolite and RES12 contained 7% ACM tremolite/actinolite (Attachment C, Table 3). A summary of all results is provided in Attachment D.

3

The preparation of this Letter Report serves as the final deliverable, as per OSC Len Zintak's request. All tasks pertaining to this TDD have been completed. Please contact our office should you have any question or require additional information.

Sincerely,

Vincent L. Gee
START Project Manager

Daniel Sewall
START Program Manager

Attachments:    A - Figures
                B - Photodocumentation
                C - Tables
                D - Analytical Results

cc:    Len Zintak, U.S. EPA OSC
       Sonia Vega, U.S. EPA OSC
       START TDD File

4



### ecology and environment, inc.

Region 5 - Superfund Technical Assessment and Response Team
33 North Dearborn, Suite 900, Chicago, Illinois 60602

| Title: | | Figure: |
|---|---|---|
| Site Location Map | | 1 |
| Site: | | Scale: |
| Western Mineral Processing | | Not to Scale |
| City: | State: | Date: |
| Minneapolis | Minnesota | 7/13/00 |

# Western Mineral Site
# Vicinity of 1720 Madison Street NE
# Minneapolis, Minnesota

### Legend



Grab Samples
August 1-2, 2000

Grab Samples
June 20-22, 2000

Visually Inspected
August 1-2, 2000

Industrial Site



N



Attachment A, Figure 2

0.2          0          0.2          0.4   Miles




FIELDS

Preliminary Map
Coordinate System
UTM Zone 15, NAD 83

Sample Locations for August 1-2, 2000
supported by GPS Locational Data

*Minnesota Department of Health Information*

# Vermiculite Processing Operations in Northeast Minneapolis

**Update from the Minnesota Department of Health** September 2000

## Vermiculite, Zonolite, and "Stoner Rock"

Vermiculite is a naturally-occurring mineral used in insulation, construction, and gardening products. Processed vermiculite (sometimes sold under the name "Zonolite") has been primarily made from ore mined in Libby, Montana by the Zonolite/W.R.Grace company. In fact, from 1924 to 1990, most of the world's supply of raw vermiculite ore came from Libby. This ore is now known to contain tremolite, a form of asbestos fiber.

Ore from the Libby mine was shipped to many processing plants around the country, including several plants in Minnesota. From about 1938 to 1988, ore from the Libby mine was processed at the Western Mineral Products plant located at 1720 Madison St. NE in Minneapolis. Beginning in the 1960s, this plant became part of the W.R. Grace company. At this plant, raw vermiculite was heated until the moisture trapped in the ore caused it to pop, in a manner similar to that of popcorn. After going through this "exfoliation" process, the vermiculite had a porous structure, making it suitable for insulation.

Most testing to date has shown that the Zonolite product used for insulation has less than 1 percent asbestos. Building materials with more than 1 percent asbestos are regulated due to health concerns.

In addition to the vermiculite product, the exfoliation left waste rock (known as "stoner rock" and "crush rock") that also contains asbestos fibers. Recent analyses of some samples at the former Western Mineral Products/Grace plant have found up to 20 percent asbestos in this waste rock. The sampling results of the "stoner rock" indicate that this waste material may contain a concentration of asbestos fibers greater than the vermiculite product "Zonolite."

## Health risks

It has been known for many years that workers exposed to asbestos have suffered from asbestos-related diseases. In addition to lung cancer, asbestos exposure can also cause a rare type of cancer known as mesothelioma, which affects the lining around the lungs and abdomen.

It can also cause a type of permanent lung damage known as asbestosis, which causes shortness of breath and increases the risk of serious lung infections.

More recently, serious concerns have been raised about a high prevalence of asbestos-related disease in Libby, Montana—among people who worked in the vermiculite mines, their families, and other members of the community. Currently, the federal Agency for Toxic Substances and Disease Registry (ATSDR) and the U.S. Environmental Protection Agency (EPA) are conducting investigations to determine the extent of the health problems in this community.

The investigations in Libby have lead to further exploration of possible asbestos exposure in other locations around the country. Vermiculite ore has been shipped to and processed at many places, including the former Western Minerals Products site in Minneapolis.

Staff from the Minnesota Department of Health (MDH), Minnesota Pollution Control Agency (MPCA), and U.S. EPA have received reports of asbestos-related disease among former workers at the northeast Minneapolis facilities, as well as residents of the surrounding community.

We have also learned that the waste rock material was offered to area residents for free and was used as filler, in driveways, and for other purposes on their own property. Some people from the community played on piles of the waste rock many years ago when they were children.



*Division of Environmental Health*
121 E. Seventh Place, Suite 220
St. Paul, Minnesota 55101
(651) 215-0700
www.health.state.mn.us

**EXHIBIT**

C

It is important to note that the health risks associated with exposure to asbestos in the vermiculite can vary, depending on the kind of exposure a person had.

Those at highest risk include:
- people who worked in the processing plant

Those at a lower risk include:
- people who lived with those workers,
- children who played on the waste rock piles

The risk may be lowest for:
- people who moved or used waste rock,
- people who simply live in the neighborhood but had no direct contact with the materials.

The Libby investigation should provide us with a clearer picture of the health risks.

**Further investigation and clean-up planned**
MDH, MPCA, and EPA are currently working on a multi-phase investigation. We want to more clearly define the extent of asbestos exposure from the Western Mineral Products site–both to workers and for people in the community.

An investigation of the waste material on the site, and in any off-site locations, will be conducted. Visible material in yards, driveways, and alleys will be removed. An assessment of asbestos in soil around the neighborhood will also be done.

Investigators plan to ask neighbors living near the site to complete a questionnaire. This will help to identify where the waste rock material may have been transported and used off the site.

Investigation and clean-up of visible areas of contamination will begin this fall and continue in the spring, when the ground is bare.

**Preventing exposure**
It is important that residents are informed of potential health risks associated with any waste rock that can still be found in the area. On the former Western Mineral Products/Grace site, the material has been covered with plastic and access to the site is restricted.

To prevent exposure to residents during removal activities, access to the area will be restricted. Clean-up workers will be protected from the dust with special protective clothing and respirators.

Residents who know they have this material on their property should cover the material and restrict access to it. If you have any of this material, you can call and report it to T. Stuart Hill of the EPA at (312) 886-0689. Homeowners should not attempt to remove the material themselves, since any disturbance of the asbestos-containing rock may release hazardous levels of asbestos into the air.

In place, Zonolite and other vermiculite insulation products do not present as much health risk to residents as the waste rock. There is usually no need to remove Zonolite or vermiculite insulation from homes. Homeowners who are concerned about the asbestos content of their insulation may want to have it tested by an accredited laboratory. To find one, you can contact the Minnesota Department of Health's Asbestos Unit at 651/215-0900.

For the safety of both residents and visitors in your home, asbestos-containing materials should be removed by a specially licensed contractor.

Residents concerned about health problems associated with asbestos exposure should consult their physician. A chest x-ray and lung function test can detect asbestos-related diseases. These diseases generally are not diagnosed until 20-30 years after exposure has occurred.

**Vermiculite products still on the market**
Although vermiculite no longer comes from the Libby mine, the EPA and the Consumer Product Safety Commission are investigating whether current vermiculite garden products contain harmful levels of asbestos. Testing so far indicates that most products contain little–if any–asbestos, and that this potential exposure poses a minimal health risk to consumers.

The EPA notes that these risks can be further reduced by:
- using vermiculite outdoors or in well-ventilated areas

- keeping vermiculite damp while using it to reduce the amount of dust created
- avoiding dust from vermiculite being brought into the home on clothing
- using pre-mixed potting soil, which usually contains more moisture and less vermiculite
- using other soil additives, such as peat, sawdust, perlite, or bark.

**For more information**

If you would like further information, address health concerns to Lisa Pogoff of the Minnesota Department of Health at 651/215-0916 or at lisa.pogoff@health.state.mn.us. Questions or concerns about the clean-up can be addressed to Jeff Connell of the MPCA at 651/296-7271 or at jeff.connell@state.mn.us. Addition sources of information about vermiculite and asbestos include:

U.S. EPA website: http://www.epa.gov/
EPA asbestos page: http://www.epa.gov/asbestos
EPA Superfund hotline:
http://www.epa.gov/epaoswer/hotline
Consumer Product Safety Commission:
http://www.cpsc.gov/
http://www.cpsc.gov/cpscpub/pubs/5080.html
EPA Superfund hotline: 1/800-424-9346,
                TDD: 1/800-553-7672
Agency for Toxic Substances and Disease Registry info line: 1/888-42-ATSDR

*E,6*
*9/14/00*

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 5
77 WEST JACKSON BOULEVARD
CHICAGO, IL 60604-3590

SEP  1 4 2000

REPLY TO THE ATTENTION OF
Western Mineral Products Site

**VIA FACSIMILE**
**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

DUPLICATE
RECORDS CENTER
7TH FLOOR

W.R. Grace
c/o Kenneth W. Lund
Holme, Roberts & Owen, LLP
1700 Lincoln Street
Suite 4100
Denver, CO 80203-4541

RE:   Western Mineral Products Site
      Minneapolis, Minnesota
      General Notice of Potential Liability

Dear Mr. Lund:

The United States Environmental Protection Agency (U.S. EPA) has
documented the release or threat of release of hazardous
substances, pollutants and contaminants into the environment at
and from the above-referenced facility, and is planning to spend
public funds to investigate and control these releases.   The
initial notice issued by U.S. EPA on June 16, 2000 addressed the
facility at 1720 Madison Street and 1815 Jefferson Street, N.E.,
Minneapolis, Minnesota.   This notice addresses various
residential properties in Minneapolis that contain elevated
levels of amphibole asbestos-containing material that was
provided by W.R. Grace and its predecessors.   This action will be
taken by U.S. EPA pursuant to the Comprehensive Environmental
Response, Compensation, and Liability Act of 1980, 42 U.S.C.
§9601 et seq. (CERCLA), as amended by the Superfund Amendments
and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat.
1613 (1986) (SARA), unless U.S. EPA determines that such action
will be done properly by a responsible party or parties.
Responsible parties under CERCLA include the current and former
owners and operators of the facility, persons who generated the
hazardous substances, and persons who were involved in the
transport, treatment, or arranging for disposal of the hazardous
substances at the facility.   Under Section 107(a) of CERCLA,
where U.S. EPA uses public funds towards the cleanup of the
hazardous substances, responsible parties are liable for all
costs associated with the removal or remedial action and all
other necessary costs incurred in cleaning up the facility,
including investigation, planning, and enforcement costs

**EXHIBIT**

D

Recycled/Recyclable • Printed with Vegetable Oil Based Inks on 50% Recycled Paper (20% Postconsumer)

U.S. EPA will identify those residential sites within
approximately a quarter mile radius of the industrial site where
asbestos has come to be located, and for those residences and
others located by U.S. EPA surveys.  U.S. EPA is currently
planning to conduct the following actions:

1.   Determine the horizontal extent of amphibole asbestos
     contamination in the residential areas and identify areas to
     be remediated;

2.   Excavate and remove asbestos-contaminated soils to a maximum
     depth of 18 inches (unless visible asbestos is present at 18
     inches, in which case excavation will continue until visible
     asbestos is removed) in the yards and alleys;

3.   Excavate and remove asbestos-contaminated soils horizontally
     until no asbestos is detected, subject to limits on that
     excavation based on the U.S. EPA On-Scene Coordinator's
     judgement;

4.   Remove asbestos from the surface of the paved alleys and
     driveways;

5.   Analyze bulk asbestos samples using standard Polarized Light
     Microscopy (PLM) methods.  Supplement PLM analysis with
     Transmission Electron Microscopy (TEM) for samples with
     lower concentrations of asbestos to assess whether
     contamination is present and whether sufficient excavation
     has occurred;

6.   Install a synthetic liner at the bottom of the excavated
     area prior to backfill;

7.   Backfill excavated areas with clean soil and restore
     property to original pre-removal condition;

8.   Dispose of contaminated soils at an EPA approved off-site
     disposal facility;

9.   Perform personal air sampling and ambient air sampling
     during remediation activities; and

10.  Implement engineering measures to control dust during the
     cleanup.

U.S. EPA has received information that your organization may have
owned or operated the facility or generated or transported
hazardous substances that were disposed of at the facility.  By
this letter, U.S. EPA notifies you of your potential liability
with regard to this matter and encourages you, as a potentially
responsible party, to agree to reimburse U.S. EPA for costs
incurred to date and to voluntarily perform or finance the

response activities which U.S. EPA has determined or will
determine are required at the facility.  U.S. EPA is willing to
discuss with you the entry of an appropriate administrative
consent order under which you would perform or finance response
activities and reimburse U.S. EPA for its costs.  If a consent
order cannot be promptly concluded, U.S. EPA may issue a
unilateral order under Section 106 of CERCLA, requiring you to
perform specified work.  Under Sections 106 and 107 of CERCLA,
you may be liable for reimbursement of U.S. EPA's costs, for
statutory penalties, and for treble damages for noncompliance
with such an order.

Because of the conditions described above, U.S. EPA believes that
response activities at the Site must be initiated as quickly as
possible.  Therefore, U.S EPA does not intend to utilize the
special notice procedures available under Section 122(e) of
CERCLA.  Due to the immediate threat posed by the conditions at
the Site, U.S. EPA will initiate the removal action by September
25, 2000 if an agreed order cannot be expeditiously negotiated
with W.R. Grace.

As a potentially responsible party, you should notify U.S. EPA in
writing within three business days of receipt of this letter of
your willingness to perform or finance the activities described
above and to reimburse U.S. EPA for its costs.  Your response
should be sent to:

                    Carol Ropski
                    U.S. EPA - Region 5
                    Emergency Enforcement & Support Section  SE-5J
                    77 West Jackson Boulevard
                    Chicago, IL  60604-3590

If U.S. EPA does not receive a timely response, U.S. EPA will
assume that your organization does not wish to negotiate a
resolution of its potential responsibility in connection with the
facility and that your organization has declined any involvement
in performing the response activities.

Your response should indicate the appropriate name, address, and
telephone number for further contact with you.  If you are
already involved in discussions with State or local authorities
or involved in a lawsuit regarding this facility, you may
continue such activities as you see fit.  This letter is not
intended to advise you or direct you presently to restrict or
discontinue any such activities already underway; however, you
are advised to report the status of those discussions or actions
in your response to this letter and to provide a copy of your
response to any other parties involved in those discussions or
actions.

4

If you need further information regarding this letter, you may contact Thomas Krueger of the U.S. EPA Office of Regional Counsel at (312) 886-0562.

Due to the nature of the problem at this facility and the attendant legal ramifications, U.S. EPA strongly encourages you to submit a written response within the time frame specified herein. We hope you will give this matter your immediate attention.

Sincerely yours,

Richard C. Karl, Chief
Emergency Response Branch

cc: David M. Cleary, W.R. Grace

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

CASE TYPE: OTHER

---

|  |  |
|---|---|
| Adam Chase, individually and as representatives for all others similarly situated,<br><br>                            Plaintiff,<br><br>        vs.<br><br>W.R. Grace Co.-Conn.,<br><br>                     Defendant. | **COMPLAINT**<br>**(CLASS ACTION)**<br><br>**JURY TRIAL DEMANDED**<br><br>Court File No. _____ |

---

Plaintiff Adam Chase, individually and on behalf of all other persons similarly situated, for his Complaint against Defendant W.R. Grace, alleges as follows:

## I.    JURISDICTION AND VENUE

1.    Plaintiff Adam Chase is a citizen of the State of Minnesota and resident of Hennepin County.

2.    Defendant W.R. Grace Co.-Conn is a Connecticut corporation doing business in Minnesota.

## II.    BACKGROUND/FACTUAL ALLEGATIONS

3.    From approximately 1938 to 1989 Defendant and its predecessor in interest, Western Mineral Products Co., (hereinafter known as ("W.R. Grace") owned and operated a

1



vermiculite processing plant located in Northeast Minneapolis at 1720 NE Madison Street (hereinafter referred to as "Plant").

4.      Upon information and belief, beginning in 1938 W.R. Grace maintained a pile of scrap vermiculite at the Plant that was offered to the public as "free crushed rock." Upon further information and belief, from 1938 to 1989 the scrap vermiculite was contaminated with asbestos.

5.      By offering the contaminated scrap vermiculite (hereafter referred to as "Scrap Asbestos") as "free crushed rock," W.R. Grace encouraged residents to remove the Scrap Asbestos from the Plant and thereby save W.R. Grace the cost of disposing of it.

6.      Upon information and belief W.R. Grace knew as early as 1956 that the vermiculite processed at the Plant contained asbestos and that asbestos was dangerous to human health.

7.      In spite of its knowledge that the vermiculite being processed at the Plant contained dangerous asbestos, W.R. Grace continued to dispose of the Scrap Asbestos by offering it to the public as "free crushed rock" as late as 1989.

8.      Upon information and belief many Northeast Minneapolis residents placed the Scrap Asbestos on their property for landscaping, gardening and other purposes.

9.      Plaintiff owns the property at 1427 Adams Street N.E., Minneapolis MN (hereinafter referred to as "Property").

10.     Scrap Asbestos has been identified on the surface of certain portions of the Property.

2

11.     The extent of asbestos present on the Property can only be determined through the use of expert investigation and testing.

12.     Any asbestos identified on the property from the investigation and testing must be removed and/or remediated from the Property according to the implementation of an appropriate response action plan.

13.     The remediation of the Property will require that costs be incurred for investigation, testing, and removal of the asbestos (hereinafter collectively referred to as "Cleanup Costs").

14.     W.R. Grace is liable to Plaintiff for the Cleanup Costs because W.R. Grace made the Scrap Asbestos available to the residents of the Northeast Minneapolis Neighborhood which surrounded the Plant.

15.     The asbestos that exists in the Scrap Asbestos from the Plant is classified as a hazardous substance under applicable environmental laws, and is a hazard to human health.

16.     The presence of a hazardous substance on the Property has caused the Property to lose value by the amount of Cleanup Costs  (hereinafter referred to as "Contamination Value Loss").

17.     So long as Scrap Asbestos remains on the Property, the value of the Property will be reduced by the Contamination Value Loss.

18.     The Property's designation as a property that contained a hazardous substance before remediation plus its location in a neighborhood where other contaminated properties are located nearby have caused the Property to permanently lose value due to stigma (hereinafter

3

referred to as "Stigma Value Loss").

19.     If W.R. Grace had not made the Scrap Asbestos available to the neighborhood and induced the residents of the neighborhood to take the Scrap Asbestos from the Plant at no charge, the Property and other properties in the neighborhood which are near the Property would not contain Scrap Asbestos in their soil.

20.     Plaintiff is damaged because the market value of the Property is diminished by the sum of Contamination Value Loss and the Stigma Value Loss.

21.     W.R. Grace is liable to Plaintiff for the loss in market value to the Property equal to the sum of Contamination Value Loss prior to any remediation plus Stigma Value Loss.

## III.    CLASS ACTION ALLEGATIONS

22.     Plaintiff seeks to represent, pursuant to Rule 23 of the Minnesota Rules of Civil Procedure, a class that includes all property owners of the Northeast Minneapolis neighborhood bounded by Broadway Street, University Avenue, Lowry Avenue, and Central Avenue (hereinafter referred to as the "Affected Neighborhood").

23.     The Affected Neighborhood corresponds to the area of Minneapolis which the EPA has identified as one which is most likely affected by contamination with asbestos from the Plant. Plaintiff reserves the right to expand the Affected Neighborhood if, during the course of discovery, the area of Minneapolis affected by this asbestos contamination extends beyond these borders.

4

24.    There are questions of law and fact common to the Plaintiff and the other

members of the class that predominate over any possible questions affecting individual members

of the classes. Among the questions of law and fact common to the class are the following:

      (a)    Plaintiff and all other members of the class have suffered Stigma Value Loss to their property, regardless whether their property has Scrap Asbestos on their property because Defendant caused the Scrap Asbestos to be distributed throughout the Affected Neighborhood;

      (b)    Plaintiff and all other members of the class have or will in the future incur costs to (1) investigate and test whether their property has asbestos on their property and (2) clean up any asbestos contamination which is found on their property.

25.    This action is properly maintained as a class action for the following reasons:

      (a)    The members of the class are so numerous that joiner of all such class members is impracticable;

      (b)    There are questions of law or fact common to members of the class;

      (c)    Plaintiff's claims are typical of those of the members of the class;

      (d)    Plaintiff will fairly and adequately protect the interests of the class;

      (e)    Plaintiff adequately represents the class;

      (f)    The questions of law or fact common to the class predominate over any possible questions affecting only individual class members;

      (g)    A class action is superior to any other possible available methods for the fair and efficient adjudication of the controversy; and,

      (h)    Plaintiff knows of no difficulty that should be encountered in the management of this litigation that would preclude its maintenance as a class action.

## COUNT I
## STRICT LIABILITY

26.     Plaintiff realleges each and every preceding paragraph of this Complaint as if fully set forth herein.

27.     By causing the Scrap Asbestos to be distributed throughout the Affected Neighborhood and deposited on Plaintiff's land, Defendant engaged in activity that was abnormally dangerous and created a condition that was unreasonably dangerous and harmful to Plaintiff's Property.

28.     As a direct and proximate result of Defendant's abnormally and unreasonably dangerous activities, Plaintiff and all others similarly situated have suffered damages in excess of Fifty Thousand Dollars.

## COUNT II
## NUISANCE

29.     Plaintiff realleges each and every preceding paragraph of this Complaint as if fully set forth herein.

30.     Defendant's conduct in distributing the Scrap Asbestos in the Affected Neighborhood has substantially interfered with Plaintiff's use and enjoyment of his land, Plaintiff's health and comfort and Plaintiff's peace of mind.

31.     As a direct and proximate result of Defendant's distribution of the Scrap Asbestos in a residential community, Plaintiff and all others similarly situated have suffered damages in excess of Fifty Thousand Dollars.

6

## COUNT III
## TRESPASS

32.    Plaintiff realleges each and every preceding paragraph of this Complaint as if fully set forth herein.

33.    By intentionally distributing the Scrap Asbestos in a residential neighborhood, Defendant has engaged in intentional acts from which it was foreseeable that the Scrap Asbestos would physically invade Plaintiff's Property and other property in the Affected Neighborhood.

34.    As a direct and proximate result of Defendants' intentional distribution of the Scrap Asbestos in a residential community, Plaintiff and all others similarly situated have suffered damages in excess of Fifty Thousand Dollars.

## COUNT IV
## NEGLIGENCE

35.    Plaintiff realleges each and every preceding paragraph of this Complaint as if fully set forth herein.

36.    Defendant owed Plaintiff a duty to (1) refrain from activity that would cause its Scrap Asbestos to enter onto Plaintiff's land; and (2) to warn Plaintiff and others of the dangers of the Scrap Asbestos as soon as it became aware of the danger.

37.    Defendant breached these duties by (a) causing the Scrap Asbestos to be widely distributed throughout the Affected Neighborhood by advertising it as "free crushed rock"; and (b) failing to warn residents once it became aware of the danger of the Scrap Asbestos.

7

38.     As a direct and proximate result of Defendant's negligence, Plaintiff and all others similarly situated have suffered damages in excess of Fifty Thousand Dollars.

## COUNT V
## CONSUMER FRAUD

39.     Plaintiff realleges each and every preceding paragraph of this Complaint as if fully set forth herein.

40.     Defendant's conduct in distributing the Scrap Asbestos by offering it to the public as "free crushed rock," was deceptive and misleading in violation of the Minnesota Consumer Fraud Act, Minnesota Statutes, section 325F.69. Defendant misled consumers into believing that it was offering a gratuitous commodity to the public, when in fact Defendant received consideration in the transaction by persuading consumers to remove the Scrap Asbestos from its premises and distribute it throughout the Affected Neighborhood.

41.     As a direct and proximate result of Defendant's deceptive and misleading statements and omissions in distributing the Scrap Asbestos, Plaintiff and all others similarly situated have suffered damages in excess of Fifty Thousand Dollars.

8

## COUNT VI
## MINNESOTA ENVIRONMENTAL RESPONSE AND LIABILITY ACT

42.     Plaintiff realleges each and every preceding paragraph of this Complaint as if fully set forth herein.

43.     By distributing the Scrap Asbestos throughout the Affected Neihborhood, Defendant is a "person responsible for the release of hazardous substances" in accordance with the Minnesota Environmental Response and Liability Act, Minnesota Statutes, chapter 115B.

44.     As a direct and proximate result of Defendants' distribution and release of the Scrap Asbestos in the Affected Neighborhood, Plaintiff and all others similarly situated have suffered damages in excess of Fifty Thousand Dollars.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the other members of their respective classes, pray for judgment against Defendants as follows:

1.     Declaring this action to be a proper class action, appointing Plaintiff as class representative and counsel as class counsel;

2.     An order allowing Plaintiff and other members of the class to conduct an investigation of their Property and have their Property tested at Defendant's expense;

3.     Awarding Plaintiff and the other members of the class compensatory damages, including the Contamination Value Loss and Stigma Value Loss to their properties, together with investigation, testing, and clean-up costs, disbursements and reasonable attorneys and witness fees;

4.     Awarding Plaintiff and other members of the class prejudgment interest at the maximum rate permitted by law;

9

5.   An injunction prohibiting Defendant from in the future distributing or emitting asbestos from its processing Plants; and

6.   Granting such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

Dated: October 17, 2000

Dan Biersdorf (8187)
BIERSDORF & ASSOCIATES, P.A.
4100 Multifoods Tower
33 South Sixth Street
Minneapolis, Minnesota 55402
(612) 339-7242

William B. Butler (227912)
WILLIAM B. BUTLER, PLLC
4100 Multifoods Tower
33 South Sixth Street
Minneapolis, Minnesota 55402
(612) 630-5177

ATTORNEYS FOR PLAINTIFF

10

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that the Court, pursuant to Minnesota Statutes, section 549.21, subdivision 2, may award costs, disbursements and reasonable attorney and witness fees to the opposing parties in this litigation if the Court should find that the undersigned acted in bad faith; asserted a claim or defense that is frivolous and that is costly to the other party; asserted an unfounded position solely to delay the ordinary course of proceedings or to harass; or committed a fraud upon the Court.

Dan Biersdorf (8187)

11