U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

Jul 26   4 28 PM '93

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Cheshire Medical Center

v.                                         Civil No. 88-516-M

W.R. Grace & Co., et al.

ORDER ON DEFENDANT'S MOTIONS IN LIMINE

This is an asbestos property damage case. Plaintiff, Cheshire Medical Center ("Cheshire"), claims that its facility in Keene, New Hampshire, is contaminated with toxic asbestos fibers released from a fireproofing product ("Monokote") manufactured by defendants, W.R. Grace & Co. and W.R. Grace & Co. - Conn. (collectively, "Grace"). Monokote was installed in Cheshire's facility in 1971 and 1972. Federal regulations mandate that all asbestos containing materials, such as Monokote, ultimately be removed from buildings. Such removal must occur, at the latest, during renovation or demolition. 40 C.F.R. Section 61.147. Cheshire alleges that Grace is liable for the cost of assessing, managing and abating the hazard posed by the Monokote.

I.   Discussion.

Grace has filed several motions in limine seeking exclusion of certain evidence at trial. Most of Grace's arguments, however, go to the weight the jury ought to give such evidence, rather than to its admissibility. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Relevant evidence may, however, be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or unnecessary presentation of cumulative evidence. Fed.R.Evid. 403.

Citing Fed.R.Evid. 403, Grace asserts that much of the disputed evidence is unfairly prejudicial and, therefore, should be excluded from trial. While any evidence supporting one's opponent is necessarily "prejudicial," Rule 403 plainly contemplates balancing the probative weight of that evidence against the unfair harm, confusion or unnecessary delay likely to result from its introduction at trial before excluding it.

Copyright 1993 McGuire Publications
Phone (215) 328-4388 / FAX (215) 328-0566

Reproduction without permission prohibited

The primary purpose of a motion in limine is to prevent unfair prejudice at trial by obtaining a definitive ruling on the admissibility of certain evidence at the outset, thereby preventing the non-moving party from referring to inadmissible and/or inappropriately prejudicial evidence in an opening statement or eliciting such evidence from a witness. In re Wyoming Tight Sands Antitrust Cases, No. 85-2349, 1990 U.S. Dist. LEXIS 13576 at * 8 (D.Kan. Sept. 6, 1990). Of particular concern is the preclusion of plainly inadmissible evidence which, because of its nature, would undeniably prejudice a jury or taint a trial in such a profound way that a limiting instruction from the court would be of no effect or value.

Nevertheless, evidence should not be excluded in limine unless it is clearly inadmissible on all potential grounds because, in the context of a trial, evidence which is inadmissible for one purpose may be admissible for another. Middleby Corp. v. Hussmann Corporation, No. 90-C-2744, 1993 U.S. Dist. LEXIS 6150 at * 2-3 (N.D.Ill. May 5, 1993); Estate of Carey v. Hy-Temp Mfg., Inc., No. 82-C-7171, 1991 U.S. Dist. LEXIS 11475 at * 2 (N.D. Ill. August 16, 1991). Therefore, rulings on the admissibility of evidence should ordinarily be deferred until trial, so that the court may resolve questions of foundation, relevancy and potential prejudice in proper context. Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975) cert. denied 423 U.S. 987 (1975); West Coast Video Enterprises, Inc. v. De Leon, No. 90-C-1236, 1991 U.S. Dist. LEXIS 4209 at * 3 (N.D. Ill. April 3, 1991).

Denial of a motion in limine to exclude evidence at trial does not necessarily mean that all such evidence will be admitted at trial; a court may deny the motion simply because it is unable or unwilling to rule on the admissibility of the evidence out of the context of a trial. Middleby Corporation, supra, at * 2. Accordingly, the advance rulings on the admissibility of evidence made by the Court in this order are subject to modification or repeal, upon proper motion or objection of the parties at trial.

II. Grace's Motions.

A. Motion to Exclude Evidence of Other Asbestos Litigation.

Grace first seeks to exclude any evidence which relates to or references other asbestos-in-building cases to which Grace was a party. Grace argues that such evidence is of little or no

probative value and its introduction will have a substantial and unfairly prejudicial effect on the jury. Cheshire responds by claiming that evidence of other lawsuits in which Grace was a defendant is relevant to show "Grace's motive to continue to fraudulently conceal the hazards of asbestos." Cheshire's Consolidated Response to Motions in Limine at 65.

The Court is inclined, at this time, to agree with Grace. Evidence of other litigation involving Grace would seem to be of little probative value, and introduction of such evidence would involve a substantial risk of unfairly prejudicing the jury in this case. Kelley Bayou Plantation, Inc. v. Shell Chemical Inc., 491 F.2d 1239, 1242-43 (5th Cir. 1974); In re Related Asbestos Cases, 543 F.Supp. 1152, 1156 (N.D. Cal. 1982). Furthermore, in light of the other evidence Cheshire appears prepared to present at trial to show Grace's knowledge of the hazards of asbestos, the probative value of evidence showing Grace to have been a defendant in similar asbestos contamination cases would seem, at this juncture, to be at least cumulative. Cheshire shall not introduce direct evidence of Grace's prior involvement in other asbestos-in-building cases without first obtaining permission of the Court, out of the presence of the jury. This order shall not, however, limit Cheshire's ability to introduce otherwise admissible evidence stemming from, relating to, or prepared in connection with such other litigation, such as depositions, toxicology reports or epidemiologic studies. This issue is discussed more fully below, in Section II I. Grace's Motion to Exclude Reference to other Asbestos-in-Building Actions Against Grace is granted.

B. Motion to Exclude Evidence of Analysis of Dust Samples.

Grace also moves to exclude evidence of results and analyses of tests performed by Cheshire's experts on settled dust samples collected in the building. Grace's arguments are, however, more properly addressed to the weight given by the jury, rather than the inadmissibility of such evidence. Evidence of contaminated dust samples would appear to be relevant to show that Cheshire's facility is contaminated with asbestos fibers released from the fractured and fracturing Monokote installed in the facility.

Beyond asserting the superiority of its own testing methods, Grace offers little support for its claims that Cheshire's testing method overstates the "true" level of asbestos contamination and fails to identify the source of the asbestos

Copyright 1993 McGuire Publications
Phone (215) 328-4388 / FAX (215) 328-0566

Reproduction without permission prohibited

contamination. Motion in Limine to Exclude Evidence Relating to the Results of Sampling and Analysis of "Settled Dust" at 3. The essence of Grace's argument, is that Cheshire's testing methods "lack objective support . . . in the scientific community." Id. at 4. Grace points to Frye v. United States, 293 F. 1013 (D.C.Cir. 1923):

> [W]hile courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle for discovery, the thing from which the deduction is made must be sufficiently established to have gained acceptance in the particular field in which it belongs.

Id. at 1014 (emphasis added).

Cheshire, on the other hand, relies upon the Supreme Court's recent opinion in Daubert v. Merrell Dow Pharmaceuticals, Inc., No. 92-102, 1993 U.S. LEXIS 4408, 61 U.S.L.W. 4805 (June 28, 1993), in which the Court held:

> To summarize: "general acceptance" is not a precondition to the admissibility of scientific evidence under the Federal Rules of Evidence, but the Rules of Evidence - especially Rule 702 - do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands.

Daubert v. Merrell Dow Pharmaceuticals, Inc., No. 92-102, 1993 U.S. LEXIS 4408 at * 22.

In this case, Grace's arguments are twofold: first, that the testing methods of Cheshire do not meet the Frye requirement of general acceptance in the field; and second, that the results of Cheshire's testing methods tend to overstate the true level of asbestos contamination. The Daubert opinion makes clear that failure to gain general acceptance in the scientific community is not, standing alone, a sufficient basis to exclude otherwise probative, relevant and trustworthy evidence which is based upon "scientifically valid principles." And, with respect to Grace's second claim - relating to the accuracy of Cheshire's testing methods - Grace will certainly have the opportunity at trial to explain its position to the jury and thereby attempt to convince them why little or no weight should be given to such evidence.

At trial, the Court will ensure that prior to admitting Cheshire's evidence relating to the levels of contaminated dust, Cheshire first establishes that its "expert's" testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharmaceuticals, Inc., No. 92-102,

7

1993 U.S. LEXIS 4408 at * 32. For the foregoing reasons, Grace's Motion to Exclude Evidence Relating to the Results of Sampling and Analysis of "settled dust" is denied. See Granville v. W.R. Grace & Co., 640 F.Supp. 559 (D.S.C. 1986), aff'd 827 F.2d 975 (4th Cir. 1987); Tioga Public School Dist. No. 15 v. United States Gypsum Co., 984 F.2d 915 (8th Cir. 1993). The weight, if any, which should be given to Cheshire's evidence of asbestos contamination is a question properly addressed to the jury. Fed.R.Evid. 104(b).

C. Motion to Exclude Evidence of Asbestos-Related Injury.

Next, Grace moves to exclude all evidence concerning personal injuries allegedly caused by occupational exposure to asbestos, arguing that such evidence is irrelevant, unfairly prejudicial and hearsay. Cheshire responds by pointing to several cases in which courts recognized that such evidence is relevant to the issue of notice, that is, what Grace knew about the risks of exposure to asbestos and when it acquired such knowledge. The Court is inclined to agree. See Granville, supra; Jackson v. Johns-Manville Sales Corp., 750 F.2d 1314, 1316 (5th Cir. 1986), cert. denied 478 U.S. 1022 (1986). As noted by the Granville court:

[I]t is a jury question whether notice of asbestos hazards in one setting should alert a manufacturer to a possible hazard in other settings. Asbestos dust is no respecter of job classifications. If the people manufacturing the asbestos or putting it in buildings were known to be at risk, logic suggests the manufacturer should anticipate that others who would work around the material or eventually have to remove it during renovation or demolition might also be at risk.

Granville v. W.R. Grace & Co., 640 F.Supp. 559, 567, n.1 (D.S.C. 1986), aff'd 827 F.2d 975 (4th Cir. 1987). Again, Grace's arguments are more appropriately directed to the weight which should be given such evidence, rather than to its admissibility. Grace's Motion to Exclude All Evidence of Asbestos-Related Personal Injury is denied.

D. Motion to Exclude Evidence of Multibestos Company.

Grace also moves to exclude all evidence relating to the Multibestos Company, a corporation once acquired and later sold in 1935 by Dewey & Almy. Subsequently, in 1954, Grace acquired Dewey & Almy. Grace asserts that evidence relating to Multibestos Company, a manufacturer of products "wholly dissimilar" from the Monokote here at issue, is irrelevant. Cheshire contends that such evidence shows that Dewy & Almy and, ultimately Grace, knew of the hazards of asbestos long ago. Cheshire is entitled to

9

10

demonstrate that the evidence it seeks to introduce relating to Multibestos Company and Davy & Almy is relevant to an issue in this case. Grace's Motion to Exclude Evidence Relating to the Multibestos Company is denied.

5. Motion to Exclude NESHAP Regulations.

Grace next seeks the exclusion from trial of the National Emission Standards for Hazardous Air Pollutants, 40 C.F.R. 61.140, et seq. ("NESHAP"). The NESHAP regulations mandate the removal of friable (i.e., capable of being crushed or fractured) asbestos-containing materials prior to the demolition or renovation of a building. Such regulations establish and define the legal duties imposed upon Cheshire and are plainly relevant and probative. Kershaw County Board of Education v. U.S. Gypsum Co., 396 S.E.2d 369, 302 S.C. 390 (S.C. 1990); City of Greenville, supra. Grace's Motion to Exclude Any Reference to the NESHAP Regulations is denied.

7. Motion to Exclude Evidence of Grace's Remedial Actions.

Grace also seeks to exclude evidence that it removed asbestos-containing products from its own buildings, arguing that such evidence is irrelevant and prejudicial. The Court

11

disagrees. Such evidence might suggest to a jury that Grace removed asbestos-containing building materials from its own buildings out of concern for the health and safety of those working within. Furthermore, Cheshire contends that such evidence demonstrates that when determining whether to remove asbestos-containing products from its own buildings, Grace does not (contrary to its supposed position in this case) make those decisions based upon the type of product, the quantity of asbestos in the product, or the level of asbestos contamination shown by air samples. Grace's Motion to Exclude Evidence of Grace's Removal of Asbestos-Containing Products From Its Own Buildings is denied.

8. Motion to Exclude Demonstrative Evidence.

Grace moves to exclude samples of Monokote collected from Cheshire's facility, arguing that such samples "would differ significantly from the material they purport to represent." Grace contends that the removal and handling of these samples will likely create a friable sample which would differ dramatically from the actual, undisturbed product installed in Cheshire's facility. Again, Grace's argument goes to the weight of the evidence, not its admissibility. At trial, Grace will

12

obviously have the opportunity to introduce its own samples of Monokote and describe to the jury exactly why Monokote, if left undisturbed, will not release asbestos into the environment. Grace's Motion to Exclude Demonstrative Evidence of Fireproofing Samples is denied.

H. **Motion to Exclude Evidence of Health Problems from Industrial Exposure to Asbestos.**

Grace also seeks to exclude evidence relating to health problems stemming from high dose industrial exposure to asbestos, including evidence relating to exposure of employees at the Libby vermiculite mine and mill. Grace asserts that such evidence is irrelevant and prejudicial. For the reasons set forth above in Section II C, Grace's Motion to Exclude Evidence Relating to Health Problems Resulting from Industrial Exposure to Asbestos is denied.

I. **Motion to Exclude Testimony From Other Litigation.**

Grace moves to exclude the deposition testimony of former employees of the Zonolite Company, Western Mineral Products Co. and present and former employees of Grace (who will be unavailable for trial), which testimony was given in other civil actions against Grace. Grace argues that such testimony is

13

hearsay and should be excluded pursuant to Fed.R.Evid. 802. Cheshire counters that such deposition testimony is admissible at trial pursuant to Fed.R.Civ.P. 32(a) and Fed.R.Evid. 804(b)(1). The exception to the hearsay rule stated in Fed.R.Evid. 804(b)(1) provides that a deposition taken in connection with a prior proceeding is admissible in a subsequent civil proceeding if: (i) the declarant is unavailable, and (ii) the party against whom the testimony is offered or its predecessor in interest had an opportunity and similar motive to cross examine the declarant. The parties do not dispute that Grace was a party to each of the prior cases in which the depositions were taken and that Grace was represented by counsel at those depositions. Nor is it seriously questioned that each prior case involved products containing asbestos which Grace sold or manufactured. The only substantive question to be addressed is, therefore, whether Grace had a "similar motive" to develop the testimony of the declarant when he or she was being deposed.

Grace's conclusory argument that the prior cases were so dramatically different that it had no "similar motive" to cross examine the declarant is unpersuasive. To the extent that deposition testimony is offered from cases in which Grace was the

14

Copyright 1993 McGuire Publications
Phone (215) 328-4388 / FAX (215) 328-0566        40        Reproduction without permission prohibited

defendant and Monokote or other, similar asbestos-containing products manufactured and/or sold by Grace were involved, the Court is inclined to permit the introduction of such deposition testimony. The Court will reserve final evidentiary rulings, as appropriate, from the bench. Grace's Motion to Exclude Testimony from Other Actions is denied.

J. **Motion to Exclude Evidence of Tests Conducted in Other Facilities.**

Grace moves to exclude evidence of asbestos contamination testing conducted in buildings other than Cheshire's facility, which involved different air handling systems and different asbestos-containing building products. Again, however, Grace's arguments go to the weight attributable to such evidence, not its admissibility. Plainly such evidence will only be relevant and probative if Cheshire can demonstrate that the tests conducted in these other buildings provide useful, accurate information relating to the asbestos-containing products in its facility. Presumably, Cheshire will attempt to demonstrate that conditions in, and the materials contained in the other buildings are sufficiently similar to those in the Cheshire facility to warrant reliance upon and/or extrapolation from the data collected in those other buildings in assessing the damages allegedly caused

15

to Cheshire as a result of the presence of Monokote in its facility.

At trial, Cheshire presumably will seek to lay a proper foundation for the introduction of this evidence. It should also be more evident in the trial context precisely how Cheshire plans to use the evidence. The Court is unwilling to issue an advance ruling precluding the introduction of such evidence. Grace's Motion to Exclude Evidence Relating to Tests Conducted in Other Buildings is denied.

K. **Motion to Exclude Dr. Anderson's Study.**

Grace seeks a ruling prohibiting the introduction of a report prepared by Dr. Henry Anderson, entitled "Mesothelioma Among Employees with Likely Contact with In-Place Asbestos-Containing Building Materials," asserting that Dr. Anderson has failed to release to Grace the data underlying the study. Cheshire responds by alleging that the state of Wisconsin has produced every document pertaining to this study that is permissible without violating Wisconsin medical confidentiality statutes. Cheshire also points out that Grace "has received thousands of documents underlying this study." Cheshire's

16

Consolidated Response to Motions at 45. Additionally, Cheshire points to Fed.R.Evid. 803(18) and notes that any qualified expert could rely upon Dr. Anderson's report if: (1) Dr. Anderson's report were established as reliable authority; (2) experts in the field would reasonably rely upon it when forming an opinion; and (3) the report were published. Furthermore, Cheshire points out that Dr. Anderson, if recognized by the Court as an expert, may testify to matters such as those referenced in his report, which are within his field of expertise and personal knowledge.

The Court cannot, at this time, rule that Dr. Anderson's report is inadmissible as a matter of law. Grace's Motion to Exclude Evidence Relating to Dr. Henry Anderson's Report is denied.

### III. Summary.

Consistent with the findings and rulings discussed above, and subject to modification in the context of trial, the Court rules as follows with respect to Grace's pending motions in limine:

A. Motion to Exclude Reference to Other Asbestos-in-Building Actions Against Grace (document no. 109) is granted.

B. Motion to Exclude Evidence Relating to the Results of Sampling and Analysis of "Settled Dust" (document no. 110) is denied.

C. Motion to Exclude All Evidence of Asbestos-Related Personal Injury (document no. 111) is denied.

D. Motion to Exclude Evidence Relating to the Multibestos Company (document no. 112) is denied.

E. Motion to Exclude Any References to the NESHAP Regulations (document no. 113) is denied.

F. Motion to Exclude Evidence of W.R. Grace's Removal of Asbestos-Containing Products From its Own Buildings (document no. 114) is denied.

G. Motion to Exclude Demonstrative Evidence of Fireproofing Samples (document no. 115) is denied.

H. Motion to Exclude Evidence Relating to Health Problems Resulting From Industrial Exposure to Asbestos (document no. 116) is denied.

I. Motion to Exclude Use by Plaintiff of Testimony From Other Actions (document no. 117) is denied.

J. Motion to Exclude Evidence Relating to Tests Conducted in Other Buildings (document no. 118) is denied.

K. Motion to Exclude Evidence Relating to Dr. Henry Anderson's Study (document no. 119) is denied.

SO ORDERED.

Steven J. McAuliffe
United States District Judge

July 23, 1993

17

18