DELBERT E. WONG
Judge of the Superior Court
(Retired)
2416 W. Silverlake Drive
Los Angeles, CA 90039
(213) 666-6616

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| CENTURY PARK, a California limited partnership, | CASE NO. WEC 137 827 |
| Plaintiff, | REFEREE'S FINDINGS AND RECOMMENDATIONS ON DEFENDANT'S MOTIONS IN LIMINE |
| v. | |
| CALIFORNIA ZONOLITE COMPANY, INC. et al., | |
| Defendants. | |

The motions in limine of defendant, UNITED STATES GYPSUM COMPANY, were heard on October 17, 1994 with plaintiff, CENTURY PARK, appearing by Gilbert L. Purcell, Esquire, David H. Backenstoe, Esquire, and Patrick DeBlase, Esquire, of Moreno, Purcell & Schindler; and with defendant, UNITED STATES GYPSUM COMPANY, appearing by Thomas C. Corless, Esquire, of Breidenbach, Swainston & Way and by Michael R. Libor, Esquire, and Kell M. Damsgaard, Esquire, of Morgan, Lewis & Bockius. As authorized by the referee, both parties filed additional documents on October 18, 1994, after which the case was submitted.

The undersigned referee, having read and considered the documents filed herein and the arguments of counsel, makes the following findings and recommendations:

-1-

## MOTION IN LIMINE TO EXCLUDE EVIDENCE AND TESTIMONY AS TO PLAINTIFF'S EXPERTS' INSPECTIONS OF THE BUILDING AND TO EXCLUDE ALL EVIDENCE OF PLAINTIFF'S CLAIM FOR REMOVAL COSTS.

Essentially this is a discovery dispute in which the defendant is requesting evidence sanctions against the plaintiff for failure to adhere to its discovery obligations. Defendant is requesting an order to prohibit plaintiff from (1) offering any evidence or testimony of its experts concerning their inspections of the fireproofing material located on the beams above the suspended ceilings in the building at issue, and (2) offering any evidence of plaintiff's claim for removal costs.

It is the defendant's position that because plaintiff, without any just cause, has prohibited defendant's experts, Dr. Morton Corn and Mr. Douglas Mitten, from conducting an inspection of the building to view the fireproofing material above the suspended ceiling, the plaintiff's experts should be prohibited from offering any evidence or testimony concerning their inspection of such areas. It is also defendant's position that because plaintiff has refused to produce all of the estimates it has received from abatement contractors as to the costs to remove the fireproofing from the building, it should be precluded from offering any evidence in support of its claim for removal costs.

### Inspection by Dr. Morton Corn

Dr. Morton Corn, defendant's expert was scheduled by the parties to inspect the subject building on July 21, 1993 from 6 p.m. to 9 p.m. The inspection did go forward, but because

-2-

of a misunderstanding between counsel with respect to protective precautions and procedures, Dr. Corn was not permitted to remove the ceiling tiles in order to view the fireproofing and other conditions above the suspended ceilings. While the declarations filed by the parties are conflicting as to who was responsible for the said misunderstanding, I find that Dr. Corn had an opportunity to make a complete inspection of the building with the exception of the area above the suspended ceiling. That evening Dr. Corn prepared a list of "Above Ceiling Access Areas" on eight floors to be inspected at a future date (Exh. F, Def. Motion in Limine to Exclude Evidence and Testimony as Plaintiff's Experts' Inspection of Building). Since that date neither the defendant nor Dr. Corn had requested an opportunity to complete his inspection. I find, therefore, that the failure of Dr. Corn to complete his inspection was not due to any action on the part of the plaintiff, but was due to the inaction of the defendant for over one year. Defendant is not entitled to any relief because of such failure.

Inspection by Douglas Mitten

On September 8, 1994 the parties herein appeared in Department A of the Superior Court in Santa Monica and began trailing for trial. On September 16, 1994 counsel for plaintiff informed counsel for defendant that there was an abatement project of two suites in progress and invited a representative of the defendant to visit or to make an inspection. (Exh. 1 to the Declaration of Michael R. Libor (Exh. "H") to the subject Motion in Limine). Defendant's counsel indicated that one of

-3-

1  their experts, Douglas Mitten, would be making the inspection
2  and plaintiff's counsel agreed that he could conduct his
3  inspection of the two suites on the evening of September 26
4  commencing at 10:00 p.m. and that the only two items necessary
5  were (1) a respirator, and (2) a certificate showing that he
6  had received training in wearing a repirator. Both counsel
7  were aware of the fact that inspections had to be performed
8  after 9 p.m. and before 5 a.m. Counsel for defendant requested
9  that Mr. Mitten be permitted to inspect the whole building,
10 but counsel for plaintiff refused to permit Mr. Mitten access
11 to any part of the building other that the two suites in which
12 the abatement was taking place.
13         On September 26 at 10 p.m. the abatement contractor refused
14 to allow Mr. Mitten to conduct the inspection of the suites
15 unless he produced two documents (1) a medical release from
16 a doctor indicating he was fit to enter in containment and (2)
17 a form indicating that he was fit-tested for a respirator.
18 Mr. Mitten was not previously informed of such requirements
19 and was unable to comply because of the lateness of the hour
20 so the inspection was thus postponed until the following day.
21 At 3:30 p.m. the following day counsel for defendant asked
22 counsel for plaintiff whether Mr. Mitten could conduct an
23 inspection of the two suites that afternoon or whether he could
24 conduct an inspection of other areas of the building. Counsel
25 for plaintiff refused both requests. Because of the inability
26 of counsel to agree upon the scope of Mr. Mitten's inspection
27 or the conditions thereof, the said inspection was cancelled.
28

Inasmuch as all of the above events took place while the case was trailing for trial and during the many weeks following the close of discovery, there was no obligation on the part of the plaintiff to permit Mr. Mitten to make an inspection of the building. Thus, the refusal of plaintiff to permit Mr. Mitten to inspect the entire building or the refusal of plaintiff to agree to modify the terms of its invitation to inspect the two suites being abated did not violate any discovery rules and certainly does not support the motion to exclude evidence.

Failure to Produce All Evidence Concerning Removal Costs

Defendant also contends that because plaintiff has failed to produce all evidence concerning the cost of removal of asbestos from the building, it should be precluded from offering any evidence in support of its claim for removal costs.

Defendant states that during the first five years of this litigation, discovery in this case indicated that it was the policy of the plaintiff to encapsulate the asbestos-containing fireproofing in the building in question as space became vacant. According to plaintiff's primary witness, removal of fireproofing had been considered, but was not done because it was deemed too disruptive. During discovery defendant learned that 30% of the building had been encapsulated.

On or about July 27, 1994, in response to defendant's demand for production of documents, defendant received from plaintiff a copy of a bid from Latch-On Insulation, Inc. for over 15 million dollars for removal and replacement of the asbestos-containing materials in the subject building.

-5-

It is defendant's position that in the light of this exorbitant and unrealistic claim and because plaintiff refused to produce other estimates it received on the cost to abate the building, it was necessary to obtain all relevant information concerning the Latch-On bid.

On August 2, 1994 at the deposition of Jeff Bertwell, who had been project manager of plaintiff's building until June 20, 1994, defendant learned that Mr. Bertwell had obtained the Latch-On bid about June 9, 1994 and may have obtained two other bids, but he could not remember the identity of the other bidders. He also testified that he was terminated as project manager when a new management team took over. The reason for the change was the personal bankruptcy of Irwin Daniels, who had been the managing general partner of plaintiff since approximately 1983, and was the primary person responsible for the management of the building.

On August 30, 1994 defendant moved for a continuance of the September 8, 1994 trial date before Judge David M. Rothman. At the hearing, counsel for plaintiff volunteered to produce Joe and Harold Held, the new management team, for their depositions. Judge Rothman, recognizing that there was still time to take these depositions, since the case would be trailing for a few weeks, denied the motion for a continuance.

Since that hearing the deposition of Harold Held was taken on September 30, 1994 and the deposition of Joe Held was taken on October 5, 1994.

-6-

Since receiving the 15 million dollar Latch-On bid, defendant has been attempting to obtain information about other removal bids which plaintiff may have obtained. Former project manager Jeff Bertwell testified that in addition to the Latch-On bid he had received approximately two other written removal bids from other contractors. At the deposition defendant requested that all such removal bids be provided and it was agreed that the deposition would not be concluded at that time so that Mr. Bertwell could be questioned regarding the other bids. At the time discovery ended, Mr. Bertwell's deposition had not resumed and the other removal bids had not been produced. Thus, neither fact is indicative of any violation of the discovery rules by plaintiff, nor supportive of defendant's motion to exclude.

At the deposition of September 30, 1994 Harold Held was unable to provide any information as to the identity of the contractors performing the ongoing removal projects in the subject building, the costs thereof, nor any other details of the projects. He also testified that Joseph Held would be a better source of such information.

At the deposition of October 5, 1994 Joseph Held admitted that he had obtained the bids for the ongoing abatement projects, but refused to answer questions concerning the identity of these contractors or of the contractor or contractors who were awarded the contracts. At the deposition he was unable to even estimate the amount of one of the two ongoing removal projects and could only provide an estimate of the other.

-7-

After each of the said two depositions, counsel for defendant requested that plaintiff's counsel provide copies of all documents pertaining to the ongoing abatement project. Plaintiff's counsel asked whether defendant would agree not to move to exclude them if they produced such documents. Counsel for defendant replied that he was not makings any deals but simply making a request. Thus, defendant has refused to waive any such rights and plaintiff has refused to produce.

I am of the opinion that defendant is entitled to the production of all bids pertaining to the two ongoing abatement projects, since this is information that plaintiff should have received at the depositions of Harold and Joseph Held. I am also of the opinion that the failure to give such information does not entitle the defendant to preclude plaintiff from offering any evidence of its claim for removal costs.

Recommendation:

It is my recommendation that the Court order plaintiff to produce all bids pertaining to the two ongoing abatement projects, whether or not accepted by plaintiff. It is also my recommendation that the Court deny the defendant's motion (1) to exclude evidence and testimony as to plaintiff's experts' inspection of the building in question and (2) to exclude all evidence of plaintiff's claim for removal costs.

## MOTION IN LIMINE TO EXCLUDE EVIDENCE AND TESTIMONY OF SETTLED AND PASSIVE DUST SAMPLING AND ANALYSES AND MOTION IN LIMINE RE VIDEOTAPED SIMULATIONS BY PLAINTIFF'S EXPERTS

Because these two motions are interrelated, they will be discussed together.

Defendant seeks to exclude evidence and testimony regarding certain "settled dust samples" collected by Richard Hatfield in plaintiff's building and analyzed by Dr. William Longo, and to exclude the videotaped simulations thereof.

Such samples are collected by using a small vacuuming device constructed by Mr. Hatfield to vacuum small portions of surface dust in the building. Mr. Hatfield and possibly Dr. Longo will attempt to testify regarding analyses of such samples. The collection of such samples consists of the placement of collection tins at various locations in plaintiff's building for a period of time. Both the settled and passive dust sampling devices are then washed out and their contents analyzed by the indirect method, which involves dissolving the contents in a chemically treated solution, filtering and counting the fibers, if any, which appear on a tiny fraction of the resulting filter.

Defendant contends that such evidence should be excluded at the trial of this case because the methodology of both the collection and the analyses of the samples does not have any of the indicia of scientific reliability to qualify it as a proper basis for expert testimony.

More particularly, defendant argues that plaintiff's

-9-

1  proffered dust sampling evidence does not satisfy the requisites
2  for expert testimony under California law because such evidence
3  is "not sufficiently established to have gained general
4  acceptance in its field".
5      As to the videotaped simulations, defendant contends that
6  they should be excluded because they are irrelevant to any issues
7  in this case, but even if they could be accorded some minimal
8  probative value, the Court should nevertheless exclude such
9  evidence because any probative value is outweighed by its
10 potential for unfair prejudice and confusion of the jury.
11     In addition to the briefs in support of its motions,
12 defendant has submitted (1) a videocassette entitled "1880
13 Century Park East, Suite 1006--Reintrainment and Friability
14 Demonstrations", (2) the deposition of Richard L. Hatfield taken
15 on August 30, 1994 for the present case, (3) transcript pages
16 3055-3088, 3107-3114, 3177-3182, 3190-3208 of the testimony
17 of Richard Hatfield in Bunker Hill Towers Condominium Association
18 v The Prudential Insurance Company of America, (4) transcript
19 pages 1004-1027. 1029-1031 of the testimony of Richard Hatfield
20 in J.H. Snyder Co. v U.S. Gypsum, (5) Jury Instruction on
21 "contamination" given in The 3250 Wilshire Blvd. Building v
22 Metropolitan Life Ins. Co., No. CV 87-6048 (C.D. Cal.), November
23 16, 1989, and (6) Deposition of Dr. Morton Corn taken in Century
24 Park v California Zonolite Co., WEC 137827, Sept. 7, 1994, pgs.
25 1-4, 13-15, 49-56, 73-88.
26     Plaintiff, on the other hand, contends that the testimony
27 and procedures which defendant is attempting to exclude have
28                                -10-

1. been repeatly admitted in asbestos property damage trials
2. across the nation. Plaintiff further contends that each of
3. Richard Hatfield and William Longo's techniques have indeed
4. gained general acceptance in the field. Plaintiff also argues
5. that their approach is typical in asbestos property damage
6. litigation, including those tried in Los Angles Superior Court
7. (see, <u>Bunker Hill Towers Condominium Association v W.R. Grace
8. & Co.--Conn., J.H. Snyder v U.S. Gypsum Co., and One Wilshire
9. v U.S. Gypsum Co.</u>).
10.     In addition to the briefs in opposition to the two
11. pending motions, plaintiff has submitted: (1) additional
12. excerpts of the testimony of Richard Hatfield in the <u>J.H. Snyder
13. Co. v U.S. Gypsum</u> trial before Judge James E. Satt, p. 825-
14. 1056, (2) additional excerpts of the testimony of Richard
15. Hatfield in Bunker Hill Towers Condominium Association v The
16. Prudential Insurance Co. trial before Judge Ernest S. Hiroshige,
17. p. 2931-2976, (3) Excerpt from a discussion of asbestos standards
18. from Federal Register, Vol. 59, No. 153, August 10, 1994,
19. (4) a true and correct copy of an internal U.S. Gypsum Co. (USG)
20. document indicating, as part of USG's "company approach" to
21. assessment of asbestos hazards at it own facilities, "settled
22. dust studies" being obtained at "all [USG] company properties
23. using asbestos", and (4) An excerpt from the HEI report
24. referenced at the hearing by Mr. Libor confirming that "Surface
25. dust analysis can assist in the identification of potential
26. sources of human exposure" and indeed can play an "important
27. role as an indicator of [asbestos] pollution and of the
28.

-11-

effectiveness of remedial actions."

Both sides in the present litigation cite in support of its theory the same basic authorities, such as (1) Evidence Code section 801, (2) the Kelly/Frye rule, and (3) the recent United States Supreme Court case of <u>Daubert v Merrell Dow Pharm., Inc.</u>, (1993) 113 S. Ct. 2786. Thus, there is no disagreement as to which legal principles are controlling, but only as to the manner in which they are to be applied in this case.

In support of its position, plaintiff has cited the recent Court of Appeal of Maryland case, filed on September 12, 1994, <u>United States Gypsum Company v Mayor and City Council of Baltimore</u> (Exh. B, Plaintiff's brief in opposition to present motion), in which the Court discussed in great detail the scientific technique used by Richard Hatfield and R. W. Longo and affirmed the judgment based upon such evidence. Plaintiff also argues that the same scientific techique has been used in other cases in the Los Angeles Superior Court (see, e.g. <u>Bunker Hill Towers Condominium Association v W.R. Grace & Co.-- Conn.</u>, <u>J.H. Snyder v U.S. Gypsum Co.</u>, <u>One Wilshire v U.S. Gypsum Co.</u>, etc.).

It has been recognized that a trial judge may take judicial notice of earlier Kelly-Frye hearings within the same court (See <u>People v Smith</u> (1989) 215 C.A.3d 19, 25). Thus, based upon the above authorities, I am of the opinion that the plaintiff is entitled to present to the jury the settled and passive dust sampling and analysis in question and that the motion to exclude such evidence should be denied.

-12-

As requested by counsel, I have viewed the videotape in question along with the deposition transcript of Richard Hatfield and have concluded that the motion to exclude the said videotape should also be denied.

RECOMMENDATIONS: I recommend that the Court deny the motion of the defendant to exclude evidence and testimony of settled and passive dust sampling and analyses and the motion to exclude the videotaped simulations conducted by plaintiff's experts.

MOTION IN LIMINE RE EXPERT TESTIMONY OF PAUL T. DUNCAN AND HIS ABATEMENT ESTIMATE

Defendant has moved the Court in limine to:

"1.  Instruct the plaintiff, its attorneys and witnessess not to mention, refer to, interrogate concerning or attempt to suggest to the jury in any manner anything regarding the June 7, 1994 abatement bid from Latch-On Insulation, Inc.

"2.  Exclude any testimony by the plaintiff's purported expert witness, Paul T. Duncan, referring to his estimate as set forth in Exhibit "A" or any other abatement or encapsulation estimates and regarding any opinions as to the condition of the fireproofing in the subject building and the need for abatement or encapsulation of the subject fireproofing.

"3.  Exclude any testimony by plaintiff's purported expert witness, Paul T. Duncan, on any other issue."

In determining the validity of defendant's various objections relating to the above three issues, I have read and considered the 147 pages of the deposition of Paul T. Duncan taken on August 23, 1994, and am of the opinion that all such

-13-

1  objections should be overruled and the instant motion in limine
2  should be denied.
3      Evidence Code section 720(a) provides: "A person is
4  qualified to testify as an expert if he has special knowledge
5  skill, experience, training, or education sufficient to qualify
6  him as an expert on the subject to which his testimony relates."
7      There is no rigid classification of expert and nonexpert
8  witnesses, and experts need not necessarily be professional
9  men. Expertness is relative to the subject, and any person
10 who has special knowledge, skill or experience in any occupation,
11 trade or craft may be qualified as an expert in his field (Witkin
12 on California Evidence, Third Edition, Vol. 1, p. 454).
13     Paul Duncan testified that for the past six years he has
14 spent 90% of his time on environmental work and 90% of such
15 time was devoted to asbestos removal. He also testified that
16 he was the person who prepared the June 7, 1994 Latch-On
17 Insulation, Inc. bid which is the subject matter of this motion.
18 Thus, it can be anticipated that Mr. Duncan will be called by
19 the plaintiff to testify as a nonexpert witness with respect
20 to this bid. It can be anticipated that Mr. Duncan will also
21 be called as an expert witness in many of the other areas covered
22 by the deposition. Based upon the deposition transcript I am
23 of the opinion that Mr. Duncan has the qualifications to testify
24 in the present case as an expert witness in some of the fields
25 of expertise addressed by counsel. If he does, it will be the
26 responsibility of the jury to weigh his credibility.
27
28                              -14-

**Recommendations:** I recommend that the Court deny the motion in limine relating to the expert testimony of Paul T. Duncan and his abatement estimate.

Respectfully submitted,

Dated: October 24, 1994

Delbert E. Wong
Referee

**PROOF OF SERVICE BY MAIL (1013a, 2015.5, C.C.P.)**
State of California, County of Los Angeles

I am a resident of the County of Los Angeles. I am over the age of eighteen years, not a party to the within entitled action. My business address is 2416 W. Silverlake Drive, Los Angeles, California, 90039. I served the within Referee's Findings and Recommendations on Defendant's Motions in Limine to the interested parties in the said action, by placing a true copy thereof enclosed in a sealed envelope with postage fully prepaid, in the United States mail at Los Angeles, California, addressed as follows:

Gilbert L. Purcell, Esq.
MORENO, PURCELL & SCHINDLER
227 Broadway Street, Suite 200
Santa Monica, CA 90401-2370

Thomas C. Coreless, Esq.
BREIDENBACH, SWAINSTON & WAY
611 West Sixth Street, Sixteenth Floor
Los Angeles, CA 90017-3100

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 24, 1994 at Los Angeles, California.

_Dolores Wong_
Dolores Wong