THOMAS L. SANSONETTI
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

JAMES D. FREEMAN
HEIDI KUKIS
DAVID F. ASKMAN
Trial Attorneys
Environmental Enforcement Section
U.S. Department of Justice
999 Eighteenth Street, Suite 945NT
Denver, CO 80202
(303) 312-7376

WILLIAM W. MERCER
United States Attorney
District of Montana

VICTORIA FRANCIS
Assistant United States Attorney
District of Montana
2929 Third Avenue North, Suite 400
Billings, Montana 59101
(406) 657-6101

MATTHEW D. COHN
ANDREA MADIGAN
Enforcement Attorneys
U.S. EPA Region 8
999 Eighteenth Street, Suite 300
Denver, Colorado 80202
(303) 312-6853

ATTORNEYS FOR PLAINTIFF
United States of America

FILED
MISSOULA, MT
2002 NOV 12 AM 10 12
PATRICK E. DUFFY
BY ______
DEPUTY CLERK

02 NOV 14 AM 10:03
U.S. DEPT. OF JUSTICE
ENV. & NAT. RES. DIV.
DENVER, CO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

vs.

W.R. GRACE & COMPANY, W.R. GRACE & CO. - Conn., and KOOTENAI DEVELOPMENT CORPORATION,

Defendants.

Civ. No. 01-72-M-DWM

**UNITED STATES' REPLY TO DEFENDANTS' RESPONSE TO UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' THIRD AFFIRMATIVE DEFENSE**

The United States submits this reply to Defendants' response to the United States' motion for partial summary judgment on the Defendants' Third Affirmative Defense, regarding consistency with the National Contingency Plan ("NCP"). As Defendants' opposition does not create a genuine issue of fact as to whether there is evidence in the administrative record that supports EPA's cleanup decisions in Libby, the United States' motion must be granted.

## I. SUMMARY JUDGMENT STANDARD APPLICABLE TO REVIEW OF AGENCY DECISIONS.

Defendants do not discuss the application of the somewhat unique summary judgment standard that is applicable to the review of agency decisions. As the United States noted in its opening brief, the Ninth Circuit has found that summary judgment is an "appropriate mechanism" for reviewing administrative agency decision making. City and County of San Francisco v. United States, 130 F.3d 873, 877 (9th Cir. 1997); Occidental Eng'g Co. v. I.N.S., 753 F.2d 766, 770 (9th Cir. 1985). Indeed, this Court has found that summary judgment is "particularly appropriate" where the review of agency decision making is on the administrative record. Montana v. U.S. EPA., 941 F. Supp. 945, 956 (D. Mont. 1996)(Judge Lovell), aff'd, 137 F.3d 1135 (9th Cir. 1998). In this circumstance, the district court is not tasked with resolving the factual disputes that were before the agency. Occidental Eng'g, 753 F.2d at 769. Rather, the Ninth Circuit has stated that the district court must "determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." City and County of San Francisco, 130 F.3d at 877 (quoting Occidental Eng'g, 753 F.2d at 769).

## II. ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW REQUIRES CONSIDERATION OF RELEVANT FACTORS.

Defendants' agree, as they must, that analysis of whether the United States' actions in Libby are "not inconsistent" with the NCP is, in effect, an analysis of whether the actions are "arbitrary and capricious." Def. Brief at 2; 42 U.S.C. § 9613(j); United States v. Chapman, 146 F.3d 1166, 1170 (9th Cir. 1998). Defendants further agree that the arbitrary and capricious standard of review requires courts to determine "whether [the EPA] considered the relevant factors and articulated a rational connection between the facts found and the choice made." Def. Brief at 2. See also Inland Empire Public Lands Council v. Glickman, 88 F.3d 697, 703-04 (9th

Cir. 1996) (discussing arbitrary and capricious standard); United States. v. Iron Mountain Mines, Inc., 987 F. Supp. 1250, 1259-60 (E.D. Cal. 1997) (same).

At this point Defendants' analysis goes astray. Rather than discuss the "relevant factors" that should be applied in this case, Defendants state (in bold and underlined) that "judicial review must be based on something more than trust and faith in the EPA's experience." Def. Brief at 2. This is certainly true. The United States does not ask this Court to blindly assume that EPA has made supportable decisions in Libby. All it asks is that the Court review the actions EPA has taken against the backdrop of CERCLA and the NCP. The first step in this analysis should be whether EPA in fact considered the "relevant factors" in making its cleanup decisions. The "relevant factors" that Congress required EPA to consider in undertaking environmental cleanups are set forth in the NCP. See 42 U.S.C. § 9604(a)(1); Iron Mountain Mines, 987 F. Supp. at 1255. With regard to removal actions, the Ninth Circuit has recognized that the eight criteria set forth in 40 C.F.R. § 300.415(b)(2) are the appropriate factors to consider. See Chapman, 146 F.3d at 1172. Other courts are in accord. See, e.g., United States v. Odabashian, 1999 U.S. Dist. LEXIS 23202 at *17-*18 (W.D. Tenn. March 26, 1999)(40 C.F.R. § 300.415(b)(2) contains the "relevant factors" for assessing adequacy of removal action). As is discussed at great length in the United States' opening brief (and not repeated here), EPA carefully analyzed the removal action criteria in the action memoranda at issue in this case, and cogently explained why several of them were satisfied. U.S. Brief at 11; A.R. Facts 9-14, 42-47, 52-55. Thus, Defendants cannot genuinely dispute that the administrative record reflects EPA consideration of the "relevant factors" the NCP requires for removal action decisions or articulated a rational connection between the conditions it observed and the decisions to undertake cleanup actions.

## III. EPA'S CHOICE OF TIME-CRITICAL REMOVAL AUTHORITY WAS NOT ARBITRARY AND CAPRICIOUS.

### A. The Administrative Record Supports EPA's Characterization of the Cleanups as Removal Actions.

CERCLA provides for two types of response actions: removal actions and remedial actions. Defendants contend that EPA's cleanup actions in Libby are "remedial" rather than

"removal" in nature because of their extent and expense.[1] Def. Brief at 4-8. While as a general matter removals involve short-term or interim measures and remedial actions involve long-term or permanent measures, see Hatco Corp. v. W.R. Grace & Co.-Conn., 849 F. Supp. 931, 962 (D.N.J. 1994), courts have recognized that there is significant overlap between the two types of response actions. See, e.g., Geraghty & Miller, Inc. v. Conoco, Inc., 234 F.3d 917, 926 (5th Cir. 2000) (definitions of removal and remedial "are expansive enough that certain activities may well be covered by both"); Hatco v. Grace-Conn., 849 F. Supp. at 962 ("A response action may constitute both a removal and remedial action, and a court is not constrained to find either term applicable at the expense of the other."). In determining whether a cleanup action is properly characterized, the first step is to examine the statutory definitions of "removal" and "remedial." A "removal" action is defined broadly to include "the cleanup or removal of released hazardous substances from the environment, . . . such actions as may be necessary to monitor, assess, and evaluate the release, or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment . . . ." 42 U.S.C. § 9601(23). "Remedial" actions are taken "instead of or in addition to removal actions," and are taken "to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment." 42 U.S.C. § 9601(24).

The term "removal action" is to be given a broad interpretation, see Kelley v. E.I. DuPont de Nemours & Co., 17 F.3d 836, 843 (6th Cir. 1994), and the question of the classification of response actions is one of law, see Geraghty & Miller, 234 F.3d at 926. Because the definitions

---

[1] Defendants contend that EPA "mischaracterized" its response actions as removal actions in order to "evade the safeguards provided for in the remedial process." Def. Brief at 4. This is a serious accusation, yet it is absolutely unsupported. Defendants do not cite to any depositions or affidavits, and the United States is not aware of any, that contend that EPA elected to proceed with removal actions in Libby for any improper purpose. Instead, the evidence in the administrative record supports the proposition that EPA chose to undertake removal actions at Libby because the release or threat of release of asbestos met the removal action criteria set forth in 40 C.F.R. § 300.415(b)(2). See A.R. Facts 9-14, 42-47, 52-55.

of "removal" and "remedial" actions overlap, a "plaintiff's 'own description of its clean-up efforts is a prime starting point for determining whether those efforts should be labeled as remedial or removal'" under the statute. Prisco v. New York, 902 F. Supp. 374, 385 (S.D.N.Y. 1995)(quoting Tri-County Bus. Campus Joint Venture v. Clow Corp., 792 F. Supp. 984, 992 (E.D. Pa. 1992)). Courts have uniformly recognized that "EPA's decision to institute a response action and the choice of the particular action is discretionary." EPA v. TMG Enterps., Inc., 979 F. Supp. 1110, 1126 (W.D. Ky. 1997)(citing United States v. Hardage, 982 F.2d 1436, 1442 (10th Cir. 1992)). Thus, EPA's classification of an action is to receive deference because Congress has charged EPA to interpret CERCLA and to administer the NCP, and "determining the appropriate removal and remedial action involves specialized knowledge and expertise, [and therefore] the choice of a particular cleanup method is a matter within the discretion of the EPA." Id. at 1126-27 (quoting Hardage, 982 F.2d at 1442).[2]

With this background, there can be no dispute that the cleanup activities authorized in the EPA action memoranda before the court may be characterized as removal actions. First, the cleanups that EPA conducted at the Site are described repeatedly and consistently as removal actions throughout the administrative record. See U.S. Exhibit 5, May 23, 2000 Action Mem. at 1; U.S. Exhibit 9, August 17, 2001 Action Mem. Amend. at 1; U.S. Exhibit 12, May 9, 2002 Action Mem. Amend. at 1. Second, the cleanups primarily involve the excavation and disposal of asbestos-contaminated soils. As such, they constitute the "clean up and removal of released hazardous substances" and the "disposal of removed material" under the CERCLA removal definition, see 42 U.S.C. § 9601(23), and the "[e]xcavation, consolidation or removal of highly contaminated soils" under the NCP, see 40 C.F.R. § 300.415(e)(6). Courts have recognized that excavations may properly be characterized as removal actions. See General Electric Co. v. Litton Industrial Automation Sys., Inc., 920 F.2d 1415, 1419 (8th Cir. 1990) (excavation of

---

[2]In light of the deference accorded EPA classifications, Defendants' reliance on cases assessing private party cleanup actions, Def. Brief at 6, is misplaced. Nonetheless, the multi-factor test Defendants reference, particularly the exigency of the release, lack of complexity of an excavation removal, and the nature of the actions taken, supports the characterization of the cleanup activities identified in the action memoranda as removals.

contaminated soil and buried drums "undoubtedly" a removal action); TMG Enterps., 979 F. Supp. at 1130 (excavation and off-site transport of contaminated soil may be characterized as "removal"); Hatco v. Grace-Conn., 849 F. Supp. at 963 (same). The imminence of the threat of release and the threat to public health posed by the release, see U.S. Exhibit 5, May 23, 2000 Action Mem. at 13; U.S. Exhibit 9, August 17, 2001 Action Mem. Amend. at 13-19; U.S. Exhibit 12, May 9, 2002 Action Mem. Amend. at 11-14, also support the use of removal authority.[3] See Hatco v. Grace-Conn., 849 F. Supp. at 963. That is not to say that all of the asbestos contamination in Libby can or should be addressed under EPA's removal authority. EPA has listed the Libby Asbestos Site on the National Priorities List, see 67 Fed. Reg. 65,315 (October 24, 2002), and as a result is conducting a remedial investigation pursuant to 40 C.F.R. § 300.430(a)(2) to determine whether and to what extent remedial activities are appropriate to compliment the ongoing removal actions.[4]

Grace-Conn. appears to contend that the fact that EPA has spent more than one year removing asbestos in Libby converts the cleanup to a remedial action. But Grace-Conn. overlooks some key facts. First, as the Court is aware, Grace-Conn. (and its subsidiary KDC) prevented the United States from undertaking cleanup actions at the Kootenai Flyway and Kootenai Bluffs by denying access to those properties. The denial of access also delayed the cleanup of other Screening Plant properties, as EPA also sought access to the Mine to use as a disposal area for the excavated asbestos. United States v. W.R. Grace & Co., 134 F. Supp. 2d 1182 (D. Mont. 2001)(Judge Molloy); U.S. Exhibit 9, August 17, 2001 Action Mem. Amend. at 1. Thus, Grace-Conn. criticizes EPA for a delay in cleanup that was caused, in large part, by

---

[3]Defendants contend that the action memoranda do not provide the detail regarding the immediacy of the threat EPA's Action Memorandum Guidance suggests should be provided. Def. Brief at 9. But a review of the action memoranda provisions referenced in the text above indicates that sufficient information has been provided. Similarly, Defendants complain of "blatant misinformation" in the action memoranda because no one "lives or works" on the KDC Bluffs or Flyways. Id.; GSF ¶ 71. But people did "live and work" on the adjacent Parker property, and frequented the other parcels.

[4]Superfund-financed remedial actions can be conducted only at sites listed on EPA's National Priorities List. See 40 C.F.R. § 300.425(b)(1).

Grace-Conn.'s obstruction of EPA's cleanup efforts. Second, Grace-Conn. ignores that EPA's removal actions in Libby span many different locations in town. Most of the individual locations were addressed very quickly. But even if EPA were solely responsible for the length of the cleanup, Defendants' argument still fails because removals are not necessarily limited to short-term responses. See, e.g., General Electric, 920 F.2d at 1418-20 (holding that excavation that began several years after wastes were discovered and that took fourteen months was a "removal"); United States v. Amtreco, Inc., 846 F. Supp. 1578, 1582 (rejecting argument that removals can only be short-term actions), amended by, 858 F. Supp. 1189 (M.D. Ga. 1994).[5]

Along the same line, Defendants contend that EPA's removal actions in Libby are arbitrary and capricious because the agency exceeded the $2 million/12-month statutory limit on removal actions set forth in CERCLA. But Defendants admit that CERCLA and the NCP permit exceedances of this limit – a fact which seriously undermines Defendants' contention (discussed above) that removals are exclusively limited to short term actions – where "continued response actions are immediately required to prevent, limit, or mitigate an emergency [and] (ii) there is an immediate risk to public health or welfare or the environment." Def. Brief at 8 (quoting 42 U.S.C. § 9604(c)(1) and referencing 40 C.F.R. § 300.415(b)(5)). EPA makes exactly this showing in its action memoranda to obtain waivers of the statutory limit. See U.S. Exhibit 5, May 23, 2000 Action Mem. at 13-14 (inhalation of asbestos fibers "by workers, visitors, and on-site residents [at former Export and Screening Plants] could cause an immediate public health threat"); U.S. Exhibit 9, April 17, 2001 Action Mem. Amend. at 19, 13-17; U.S. Exhibit 12, May 9, 2002 Action Mem. Amend. at 13-14, 8-11. Defendants may disagree with EPA's conclusions regarding the immediacy of the threat to public health and welfare, but they cannot dispute that

---

[5]Similarly, Defendants' contention that EPA's actions must be deemed remedial because they are permanent is off the mark. Numerous courts have held that a removal action is not converted into a remedial action just because it achieves a permanent remedy. See, e.g., General Electric, 920 F.2d at 1419 n.4; TMG Enterps., 979 F. Supp. at 1130 (length of time or permanency of the remedy does not preclude finding that EPA conducted removal action); Hatco. v. Grace-Conn., 849 F. Supp. at 962 ("a removal action is not converted into a remedial action just because it effects a permanent remedy").

the EPA action memoranda addressed the statutory exemption factors.

**B. The Administrative Record Supports EPA's Characterization of the Removal Actions as Time-Critical.**

Defendants similarly contend that EPA's decision to proceed with a "time-critical" rather than a "non-time-critical" removal action was arbitrary and capricious.[6] Def. Brief at 12-13. Defendants correctly note that a removal action is "non-time-critical" when there is a six month planning period before on-site activities must be initiated at a site. Id. at 12; 40 C.F.R. § 300.415(b)(4).[7] In this case, it is clear that the six-month planning period did not exist. The action memoranda demonstrate that EPA chose time-critical removal actions because it believed the releases and threats of releases of asbestos that it observed in Libby needed to be addressed immediately. See U.S. Exhibit 5, May 23, 2000 Action Mem. at 13 ("immediate threat to the local population posed by the amphibole asbestos released to the environment"); U.S. Exhibit 9, August 17, 2001 Action Mem. Amend. at 13-19; U.S. Exhibit 12, May 9, 2002 Action Mem. Amend. at 11-14. Had EPA chosen to undertake a non-time-critical removal in the May 23, 2000 Action Memorandum, for example, the six-month planning period would have run through the fall of 2000. This could well have delayed the onset of removal activities until spring of 2001 due to northern Montana's short construction season, a full year after EPA began the

---

[6]As in their remedial/removal argument, Defendants charge that EPA intentionally mischaracterized a non-time-critical removal as a time-critical removal to avoid procedural requirements. Def. Brief at 12. Defendants offer no support for this accusation.

[7]The six-month planning period must exist between EPA's decision to undertake a response action (generally the issuance of an action memorandum) and the date on-site cleanup activities must be initiated. See 40 C.F.R. § 300.415(b)(4). Thus, Defendants' contention that the six month planning period was triggered when EPA learned of the contamination, see GSF 40-81, is unfounded. Defendants' contention that EPA did not begin on-site activities at the Kootenai Bluffs and Kootenai Flyway portions of the former Screening Plant within six months of the May 23, 2000 Action Memorandum, see GSF 49-55, is correct, but irrelevant. As noted above, EPA could not immediately begin the cleanup on the KDC owned properties because KDC and its parent W.R. Grace & Co. refused to provide EPA access to perform the cleanups. Even if KDC had not denied access, the NCP does not require EPA to initiate on-site activities at all locations on a site within six months. Defendants do not dispute that EPA began on-site activities at some portions of the Screening Plant in July 2000. See GSF 47.

cleanup of the Parker parcel of the Screening Plant using its time-critical removal authority.[8]

In sum, the NCP provides EPA the discretion to conduct removal actions under time-critical or non-time-critical authority, depending on EPA's assessment of the immediacy of the problem. EPA documented immediate threats to human health and the environment in its action memoranda, and Defendants provide no compelling reason that EPA's assessment was an abuse of discretion.

## IV. GRACE'S CONTENTIONS REGARDING THE ROLE OF HISTORIC EXPOSURES IN EPA'S ANALYSIS, EPA'S EVALUATION OF RISK AND EPA'S USE OF ANALYTICAL METHODOLOGIES DOES NOT CREATE GENUINE ISSUES OF FACT.

Grace-Conn. contends in its response that EPA gave undue weight to the death and disease of Libby residents that was caused by Grace-Conn.'s historic operations in Libby, insufficiently evaluated the current risk posed by exposure to asbestos in Libby, and relied on flawed asbestos sampling methodologies. Def. Brief at 13-17. As discussed in the United States' opening brief, W.R. Grace & Co. raised these same arguments in the various comments it has submitted on EPA's response actions, and EPA has responded to the arguments at length and placed its response in the administrative record as the NCP requires. U.S. Brief at 12-18. Suffice to say, Defendants do not create a genuine issue of material fact by pointing out this disagreement. The issue now before the Court is whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did. City and County of

---

[8] Defendants attempt to buttress their argument by stating (in bold) that the "EPA On-Scene Coordinator admitted in his deposition that he never even considered preparing" an EE/CA, see Def. Brief at 12, which is required in non-time critical removals but not time-critical removals. But Defendants offer no support for this statement. Defendants reference GSF ¶ 128, which in turn references pages 354-56 of Mr. Peronard's deposition. But these pages are not included in the excerpt of Mr. Peronard's deposition transcript provided at Defendants' Exhibit 3. It is easy to see why Defendant omitted the pages, as they do not support Defendants' contention. Rather, Mr. Peronard states that he did not discuss performing an EE/CA with others. U.S. Exhibit 19, Deposition of Paul Peronard at 354-56. Defendants did not even ask Mr. Peronard whether he considered performing an EE/CA. In any event, the relevant issue is whether EPA had a six month planning period prior to beginning on-site removal activities, not whether EPA considered performing an EE/CA. As demonstrated above, EPA determined that the removal actions needed to begin immediately.

San Francisco, 130 F.3d at 877; Occidental Eng'g, 753 F.2d at 769. As discussed in the United States' opening brief at 11 and A.R. Facts 9-14, 42-47, 52-55, there is ample evidence in the administrative record to demonstrate that the release or threat of release of asbestos in Libby triggered several of the NCP's removal criteria. As such, summary judgment is appropriate despite the fact that EPA and Defendants have substantial disagreement (and will likely remain in disagreement) on numerous underlying scientific and technical issues.

It is worth noting that many of the arguments Defendants raise are red herrings. For example, Defendants' contention regarding the alleged undue emphasis EPA placed on the death and disease of Libby residents from historic asbestos exposure does not directly relate to any of the removal criteria in the NCP. EPA could have applied the removal criteria to remove asbestos in soils at Libby even if no one in Libby had ever contracted an asbestos-related disease. Illnesses or deaths from exposure to a hazardous substance is simply not required for EPA to undertake a removal action. See 40 C.F.R. § 300.415(b)(2). Similarly, EPA could have removed the Libby asbestos without conducting a risk assessment. The NCP removal action criteria (unlike the remedial action regulations) do not require it. See id. Thus, Grace-Conn.'s contention that the risk assessment that EPA undertook in Libby was inadequate is irrelevant. Finally, Defendants contend that some of EPA's data relied on an indirect method of sampling for asbestos that should be excluded on Daubert grounds, Def. Brief at 16, citing In re Armstrong World Industries, a recent Bankruptcy Court opinion. Other courts have accepted the indirect method, and United States believes it is scientifically valid and provides useful, accurate information. In addition, there are numerous factual differences between the use of the method in Armstrong and its use here that obviate the Armstrong court's concerns. In any event, Defendants did not move to exclude such evidence by the motions deadline, so it is not an issue in this case. (As counsel for Armstrong also represents W.R. Grace & Co., Defendants cannot contend that this is a newly discovered issue.)

## V. DEFENDANTS' EXAMPLES OF INCONSISTENCIES WITH THE NCP REMOVAL CRITERIA ARE UNAVAILING.

Defendants provide two examples of alleged inconsistencies with the removal action criteria. Def. Brief at 17-18. First, Defendants appear to contend that evidence that surface soils

at the Plummer Elementary School contain 3% to 8% asbestos combined with evidence that children played in the area does not create an "actual or potential exposure" to asbestos under 40 C.F.R. § 300.415(b)(2)(i). See Def. Brief at 17. Merely stating Defendants' contention illustrates its absurdity. There may not be a direct statistical correlation between the amount of asbestos in soil and the amount in ambient air, as Defendants state. But that does not mean that contact with the soil or disturbance of the soil will not result in the potential for exposure. In fact, the administrative record is replete with support (including Grace-Conn.'s own historical studies) that disturbance of materials containing asbestos will increase the asbestos in the ambient air. See U.S. Exhibit 8, Response To Comments on May 23, 2000 Action Mem. at 5-6.

    Second, Defendants contend that EPA's decision to excavate asbestos-contaminated soil down to depths of 13 feet in one area of the former Screening Plant is arbitrary and capricious because EPA did not assess the risk posed by contamination at these depths. Def. Brief at 18. As discussed above, however, the "risk" posed by the materials is not one of the removal action criteria. See 40 C.F.R. § 300.415(b)(2). "Actual or potential exposure to nearby human populations" from a hazardous substance is one of the criteria. Id. § 300.415(b)(2)(i). It hardly seems unreasonable for EPA to conclude that a pit filled with asbestos contaminated material on a parcel of river front property that is going to be developed would create a "potential" exposure pathway. The NCP gives EPA the discretion to conduct the "[e]xcavation, consolidation, or removal" of contaminated soils as part of a removal action. Id. § 300.415(e)(6). The decision as to how much of the contamination should be removed is certainly part of that discretion.

Dated: November 11, 2002          Respectfully submitted,

JAMES D. FREEMAN
HEIDI KUKIS
DAVID F. ASKMAN
Trial Attorneys
Environmental Enforcement Section
U.S. Department of Justice
999 Eighteenth Street, Suite 945NT
Denver, Colorado 80202
(303) 312-7376

**CERTIFICATE OF SERVICE**

I certify that on November 11, 2002, I caused a copy of the foregoing **UNITED STATES' REPLYTO DEFENDANTS' RESPONSE TO UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' THIRD AFFIRMATIVE DEFENSE** to be served upon the following via postage-prepaid, U.S. Mail:

Gary L. Graham
Dean A. Hoistad
Terry J. MacDonald
Kelly M. Wills
GARLINGTON, LOHN & ROBINSON, PLLP
199 W. Pine
P.O. Box 7909
Missoula, MT 59807-7909

John D. McCarthy
Kenneth W. Lund
Katheryn Jarvis Coggon
HOLME ROBERTS & OWEN, LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203

Victoria Francis
Assistant United States Attorney
District of Montana
2929 Third Avenue North, Suite 400
Billings, MT 59101

Corrine A. Christen, CLA
Paralegal Specialist
U.S. Department of Justice
Environmental Enforcement Section