IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| ) | |
| W. R. GRACE & CO. et al.[1] ) | Case No. 01-01139 (JKF) |
| ) | (Jointly Administered) |
| Debtors. ) | |

**NINTH QUARTERLY VERIFIED APPLICATION OF CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN FOR COMPENSATION FOR SERVICES AND REIMBURSEMENT OF EXPENSES AS SPECIAL COUNSEL TO W.R. GRACE & CO., ET AL., FOR THE INTERIM PERIOD FROM APRIL 1, 2003 THROUGH JUNE 30, 2003**

Pursuant to sections 327, 330 and 331 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Fed. R. Bankr. P. 2016, the Retention Order (as defined below), the Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Professionals and Official Committee Members (the "Interim Compensation Order") and Del. Bankr. LR 2016-2, the law firm of

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. -Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food `N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (Ma Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G_ C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners 1, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein ("CBBG") as special litigation and environmental counsel for the above-captioned debtors and debtors in possession (collectively, "Debtors") in connection with their chapter 11 cases, hereby applies for an order allowing it (i) compensation in the amount $208,097.50 for the reasonable and necessary legal services CBBG has rendered to the Debtors and (ii) reimbursement for the actual and necessary expenses that CBBG incurred in the amount of ($7,510.67)$^2$ (the "Application"), for the interim quarterly period from April 1, 2003 through June 30, 2003 (the "Fee Period"). In support of this Application, CBBG states as follows:

### Retention of CBBG

1. On April 2, 2001 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). On April 2, 2001, the Court entered an order procedurally consolidating the Chapter 11 Cases for administrative purposes only. Since the Petition Date, the Debtors have continued to operate their businesses and manage their properties as Debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. By this Court's order dated March 18, 2002, the Debtors were authorized to retain CBBG as their special counsel, effective as of February 1, 2002, with regard to environmental and litigation matters (the "Retention Order"). The Retention Order authorizes the Debtors to compensate CBBG at hourly rates charged by CBBG for services of this type and to be reimbursed for actual and necessary out-of-pocket expenses that it incurred, subject to

---

$^2$ The parenthetical indicates a negative number. As set forth in the May Fee Application, CBBG credited the Debtors for Charles McGuire charges relating to trial transcripts. Those transcript charges were paid by CBBG's co-counsel, Wallace King Marraro & Branson PLLC. The net expense sought for this quarterly period results in a credit to the Debtors.

application to this Court in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, all applicable local rules and orders of this Court.

### Monthly Interim Fee Applications Covered Herein

3. Pursuant to the procedures set forth in the Interim Compensation Order, professionals may apply for monthly compensation and reimbursement (each such application, a "Monthly Fee Application"), and the notice parties listed in the Interim Compensation Order may object to such request. If no notice party objects to a professional's Monthly Fee Application within twenty (20) days after the date of service of the Monthly Fee Application, the applicable professional may submit to the Court a certification of no objection whereupon the Debtors are authorized to pay interim compensation and reimbursement of 80% of the fees and 100% of the expenses requested.

4. Furthermore, and also pursuant to the Interim Compensation Order, professionals are to file and serve upon the notice parties a quarterly request (a "Quarterly Fee Application") for interim Court approval and allowance of the Monthly Fee Application filed during the quarter covered by the Quarterly Fee Application. If the Court grants the relief requested by the Quarterly Fee Application, the Debtors are authorized and directed to pay the professionals 100% of the fees and expenses requested in the Monthly Fee Applications covered by that Quarterly Fee Application less any amounts previously paid in connection with the Monthly Fee Applications. Any payment made pursuant to the Monthly Fee Applications or a Quarterly Fee Application is subject to final approval of all fees and expenses at a hearing on the professional's final fee application.

5. This is the sixth Quarterly Fee Application (designated as the Ninth Quarterly Interim Fee Application) for compensation for services rendered that CBBG has filed with the

Bankruptcy Court in connection with the Chapter 11 Cases, which covers the Fee Period of April 1, 2003 through June 30, 2003.

6. CBBG has filed the following Monthly Fee Applications for interim compensation during this Fee Period:

(a) Verified application of Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein for compensation for services and reimbursement of expenses as special counsel to W.R. Grace & Co., et al., for the interim period of April 1, 2003 through April 30, 2003 (the "April Fee Application"), attached hereto as Exhibit A.

(b) Verified application of Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein for compensation for services and reimbursement of expenses as special counsel to W.R. Grace & Co., et al., for the interim period of May 1, 2003 through May 31, 2003 (the "May Fee Application"), attached hereto as Exhibit B.

(c) Verified application of Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein for compensation for services and reimbursement of expenses as special counsel to W.R. Grace & Co., et al., for the interim period of June 1, 2003 through June 30, 2003 (the "June Fee Application"), attached hereto as Exhibit C.[3]

7. The period for objecting to the fees and expense reimbursement requested in the April Fee Application and May Fee Application have expired and no objections have been filed. The period for objecting to the fees and expense reimbursement requested in the June Fee Application will expire on August 14, 2003.

8. CBBG has advised and represented the Debtors in connection with environmental and litigation matters.

---

[3] The June Fee Application inadvertently contained a duplicate time entry for RCS on 6/14/03 in the amount of $735. That time entry has been manually stricken and all numbers affected by the erroneous charge have been adjusted as indicated by the handwritten corrections. Additionally, Attachment B of the June Fee Application contains an itemization of expenses. A charge in the amount of $14.30 was omitted from the itemized chart of expenses although it was included in the total amount of expenses sought. That figure has been manually written in as well.

### Explanation For More Than One Professional Attending/Participating in Conferences/Meetings

9. The three attorneys at CBBG who are involved with the *Interfaith Community Organization v. Honeywell International, Inc.* ("*ICO*") matter are John M. Agnello, Esq. ("JMA"), Melissa E. Flax, Esq. ("MEF") and Robert C. Scrivo, Esq. ("RCS").

10. On April 2, 2003 and April 8, 2003, both JMA and RCS participated in the same meetings/conferences with other attorneys not from CBBG which meetings related to the Findings of Fact and Conclusions of Law to be filed with the Court in connection with the *ICO* matter.

JMA is co-lead trial counsel with Christopher H. Marraro, Esq. of Wallace, King, Marraro & Branson. As co-lead trial counsel, JMA's participation in the preparation and content of the Grace Defendants' Findings of Fact and Conclusions of law was essential to the Grace Defendants' claims and defenses and to their trial and post-trial strategy.

RCS is part of the litigation trial team. As part of the litigation trial team, RCS's participation in these conferences/meetings was necessary because RCS was responsible for reviewing portions of Honeywell's proposed Findings of Fact and preparing responsive Findings of Fact on behalf of the Grace Defendants.

11. On April 7, 2003, both JMA and MEF participated in a meeting with other attorneys not from CBBG which meeting related to the Grace Defendants' proposed Findings of Fact and Conclusions of Law to be submitted to the Court.

JMA is co-lead trial counsel with Christopher H. Marraro, Esq. of Wallace, King, Marraro & Branson. As co-lead trial counsel, JMA's participation in the preparation and content of the Grace Defendants' Findings of Fact and Conclusions of law was essential to the Grace Defendants' claims and defenses and to their trial and post-trial strategy.

MEF is part of the litigation trial team. As part of the litigation trial team, MEF's participation was required because MEF was responsible for the coordination and preparation of the Findings of Fact and Conclusions of law to be filed with the Court. MEF was also responsible for drafting portions of the Findings of Fact and Conclusions of Law.

12. On June 30, 2003, both JMA and MEF participated in a meeting with other attorneys not from CBBG which meeting concerning to the preparation of the fee petition which related to ECARG's claim against Honeywell under the Resource Conservation and Recovery Act ("RCRA").[4]

JMA is co-lead trial counsel with Christopher H. Marraro, Esq. of Wallace, King, Marraro & Branson. As co-lead trial counsel, JMA's participation in the preparation and content of the RCRA fee petition is essential to the Grace Defendants' trial and post-trial strategy.

MEF is part of the litigation trial team. As part of the litigation trial team, MEF's participation was required because MEF was responsible for reviewing CBBG's monthly fee detail for the period of June 1999 through May 20, 2003 and ascertaining the allocation for each charge related to ECARG's RCRA claim. MEF was also responsible for the coordination and preparation of the RCRA fee petition to be filed with the Court, including the drafting of JMA's declaration in support of the RCRA fee petition.

### Explanation for "Lumping" of Time Entries

13. One of the issues that the Fee Auditor has raised with respect to previous quarterly fee applications is that of "lumping" of time. In connection with the preparation of the Findings of Fact and Conclusions of Law, the Final Judgment, and issues relating to the Special Master appointed by the Court, multiple tasks are being performed simultaneously which makes

---

[4] In its decision, the Court awarded ECARG attorneys' fees, expert witness fees and other costs associated with ECARG's RCRA claim against Honeywell.

it difficult, if not impossible in some cases, to ascertain precisely how much time was spent on a particular task. For instance, with the preparation of the Findings of Fact and Conclusions of Law, there are various tasks engaged in when preparing each proposed fact and/or conclusion of law. The review normally entails reviewing trial testimony, exhibits in evidence, case law, as well as conference calls and/or emails with co-counsel regarding each finding of fact and/or conclusion of law. The task itself is preparation of Findings of Fact and Conclusions of Law. The general task of "Preparation of Findings of Fact/Conclusions of Law" therefore included multiple sub-tasks as identified in CBBG's fee detail.

With respect to the preparation of the Final Judgment, the task itself was preparing the form of the Final Judgment. However, various subtasks were involved in preparing the form of the Final Judgment including conference calls with plaintiffs' counsel, conference calls with co-counsel, and conference calls with both plaintiffs' counsel and co-counsel. The task itself is preparation of the Final Judgment. The general task of "Preparation of Final Judgment" therefore included multiple sub-tasks as identified in CBBG's fee detail.

With respect to issues relating to the Special Master who was appointed by the Court, the general issue was the scope of a Special Master's powers. However, there are various tasks associated with the issue of the scope of the Special Master's powers. These tasks include research, analyses and conferences/conference calls among the Grace Defendants' counsel. The general task of "Scope of Special Master's Powers" therefore included multiple sub-tasks as identified in CBBG's fee detail.

The time entries referenced in the foregoing paragraphs are: JMA (4/1/03, 4/2/03, 4/7/03, 4/8/03, 4/9/03, 4/10/03, 4/11/03, 5/22/03, 6/12/03, 6/24/03); RCS (4/3/03, 4/4/03, 4/5/03, 4/6/03, 4/7/03, 4/9/03, 4/15/03, 4/23/03, 4/29/03, 6/14/03, 6/19/03).

**Duplicate Time Entry**

14. In the June Fee Application, CBBG sought $76,244.00 in professional fees. On page 8 of CBBG's fee detail, CBBG discovered a duplicate time entry for RCS on 6/14/03 in the amount of $735. With this Ninth Quarterly Fee Application, CBBG has manually deleted the time entry and has manually revised the hours and fees billed. The amount sought by this Quarterly Fee Application takes into account the reduction as noted on Exhibit C hereto. *See* footnote 3 above.

**Travel Expense**

15. In the June Fee Application, a travel expense in the amount of $30.45 is listed. The travel expense has two components. First, on June 9, 2003, JMA attended a meeting with the Special Master and all counsel. He incurred a parking charge in the amount of $17.00. Second, on June 4, 2003, RCS traveled to the United States District Court in Newark, New Jersey to review certain files. He incurred a parking charge in the amount of $8.95 and mileage reimbursement for twenty (20) miles at the rate of $0.225 per mile for a total of $4.50.

**Requested Relief**

16. By this Ninth Quarterly Fee Application, CBBG requests that the Court approve the interim allowance of compensation for professional services rendered and the reimbursement of actual and necessary expenses incurred by CBBG for the Fee Period, which is from April 1, 2003 through June 30, 2003, as detailed in the Applications, less any amounts previously paid to CBBG pursuant to the Application and the procedures set forth in the Interim Compensation Order. As stated above, the full scope of services provided and the related expenses incurred are fully described in the Applications, which are attached as Exhibits A, B and C.

17. CBBG may have in the past represented, may currently represent, and likely in the future will represent parties-in-interest in connection with matters unrelated to the Debtors and the Chapter 11 Cases. CBBG disclosed in the Affidavits its connection to parties-in-interest that it has been able to ascertain using its reasonable efforts. CBBG will update the Affidavits when necessary and when CBBG becomes aware of material new information.

### Representations

18. CBBG believes that the Application is in compliance with the requirements of Del.Bankr.LR 2016-2.

19. CBBG performed the services for which it is seeking compensation on behalf of or for the Debtors and their estates, and not on behalf of any committee, creditor or other person.

20. CBBG has not received payment for the April Fee Application. The total amount requested in the April Fee Application was $73,092.24. The total amount outstanding from the April Fee Application (including the $73,092.24) is $90,444.14. CBBG has not received payment for the May Fee Application. The total amount requested in the May Fee Application was $23,406.61. The total amount outstanding from the May Fee Application (including the $23,406.51) is $32,572.41. CBBG has not received payment for the June Fee Application. The total amount requested in the June Fee Application was $62,468.48.[5] The total amount outstanding from the June Fee Application (including the $62,468.48) is $77,570.28.

21. Pursuant to Fed. R. Bank. P. 2016(b), CBBG has not shared, nor has agreed to share (a) any compensation it has received or may receive with another party or person other than with the partners, counsel and associates of CBBG, or (b) any compensation another person or party has received or may receive in connection with the Chapter 11 Cases.

---

[5] This amount has been recalculated to reflect the reduction of the duplicate time entry in the amount of $735. *See* footnote 3 above.

WHEREFORE, CBBG respectfully requests that the Court enter an order providing (a) that, for the Fee Period, April 1, 2003 through June 30, 2003, an administrative allowance be made to CBBG in the sum of (i) $208,097.50 as compensation for reasonable and necessary professional services rendered to the Debtors and (ii) in the sum of ($7,510.67) for reimbursement of actual and necessary costs and expenses incurred, for a total of $200,586.83, (b) that the Debtors be authorized and directed to pay CBBG the outstanding amount of such sums less any sums previously paid to CBBG pursuant to the Applications and the procedures set forth in the Interim Compensation Order; and (c) that this Court grant such further relief as is equitable and just.

Roseland, New Jersey
Dated: August 6, 2003

Respectfully submitted,

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN

John M. Agnello
6 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700