

# PACHULSKI STANG ZIEHL YOUNG JONES WEINTRAUB

LAW OFFICES
PROFESSIONAL CORPORATION
WILMINGTON, DE
LOS ANGELES, CA
SAN FRANCISCO, CA
NEW YORK, NY

919 NORTH MARKET STREET
16th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

TELEPHONE 302/652 4100
FACSIMILE 302/652 4400

PGAILBRATH@PSZYJW.com

August 11, 2003

302-778-6463

**VIA FIRST CLASS MAIL**
Mr. Burrell Johnson, Jr.
P.O. Box 4500
Michael-Unit
Tennessee Colony, TX 75886

Re: **W. R. Grace & Co., Case No. 01-01139 (JKF)**

Dear Mr. Johnson:

As requested by David Bird, Clerk of the Court for the United States Bankruptcy Court, District of Delaware, I am responding on behalf of the Debtors to your letter to Mr. Bird dated June 22, 2003.

Enclosed is a copy of the Debtors' *Status Report Pursuant To This Court's Order Dated March 31, 2003*. This document will provide the information that you requested of Mr. Bird.

Sincerely,

Paula A. Galbraith

Paula A. Galbraith

PAG:alc
Enclosure
cc: David D. Bird ✓

LOS ANGELES
10100 SANTA MONICA BLVD.
11th FLOOR
LOS ANGELES
CALIFORNIA 90067-4100

TELEPHONE 310/277 6910
FACSIMILE 310/201 0760

SAN FRANCISCO
THREE EMBARCADERO CENTER
SUITE 1020
SAN FRANCISCO
CALIFORNIA 94111-4023

TELEPHONE 415/263 7000
FACSIMILE 415/263 7010

NEW YORK
460 FIFTH AVENUE
25th FLOOR
NEW YORK
NEW YORK 10017-6234

TELEPHONE 212/561 7700
FACSIMILE 212/561 7777

WEB: www.pszyjw.com

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

## STATUS REPORT PURSUANT TO THIS COURT'S ORDER DATED MARCH 31, 2003

The above-captioned debtors and debtors in possession (collectively, the "Debtors") filed for bankruptcy protection pursuant to Title 11 of the United States Code on April 2, 2001 (the "Chapter 11 Cases").

### Bar Date

By an order dated April 25, 2002, this Court set a claims bar date of March 31, 2003, for all claims relating to asbestos property damage, non-asbestos claims (including all governmental claims) and medical monitoring claims (the "Bar Date"). A bar date has yet to be set for asbestos personal injury claims and claims related to Zonolite Attic Insulation ("ZAI"). Prior to the Bar Date, the Debtors established a claims review process and began to review the filed claims. The Debtors are diligently continuing the process of review and are ready to review claims as expeditiously as possible upon availability of claim form information. The vast majority of the claims, however, were filed in the last weeks prior to the Bar Date and are currently being processed by the claims agent.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

### Asbestos Personal Injury Procedures

On January 29, 2002, the Court directed the Debtors to submit separate case management order, bar date, claim form and notice program motions for asbestos personal injury claims and asbestos property damage claims, including claims related to ZAI. Pursuant to this instruction, the Debtors, on February 12, 2002, submitted the Debtors' Revised Motion as to All Asbestos Personal Injury Claims for Entry of Case Management Order, Establishment of a Bar Date, Approval of the Proof of Claim Forms and of the Notice Program (Docket No. 1664) (the "PI Case Motion"). Pursuant to an order of this Court dated March 15, 2002 (Docket No. 1812), the PI Case Motion and all pleadings related thereto were transferred to the Honorable Alfred M. Wolin (the "PI Transfer Order"). The PI Transfer Order was subsequently corrected to reference the correct related docket numbers on April 22, 2002 by order Docket No. 1965.

On June 19, 2002, Judge Wolin established a briefing schedule pursuant to his Order Concerning Briefing of Motion for Entry of a Case Management Order Governing Asbestos Personal Injury Claims (Docket No. 2265) (the "PI Briefing Order"). The PI Briefing Order provided a schedule for the Debtors and the Official Committee of Asbestos Personal Injury Claimants (the "PI Committee") to submit briefs in support of their respective proposals for case management of the asbestos personal injury claims to determine the Debtors' liability to asbestos personal injury claimants (the "PI Case Proposals"). The PI Briefing Order also provided the opportunity for the Official Committee of Unsecured Creditors (the "Creditors' Committee") and the Official Committee of Asbestos Property Damage Claimants (the "PD Committee") to submit briefs with respect to both PI Case Proposals.

The Debtors, the PI Committee, the Creditors' Committee and the PD Committee each filed briefs regarding the PI Case Proposals. A hearing on the PI Case Proposals was scheduled before Judge Wolin for October 17 and 18, 2002. The hearing was adjourned pursuant to a letter order dated October 9, 2002 (Docket No. 2793). The hearing has not been rescheduled.

### ZAI Science Trial and Related Proceedings

Pursuant to the Court's instruction on January 29, 2002, the Debtors, on February 12, 2002, also submitted the Debtors' Revised Motion as to All Non-Asbestos Claims, Asbestos Property Damage and ZAI Claims for Entry of Case Management Order, Establishment of a Bar Date, Approval of the Proof of Claim Forms and of the Notice Program (Docket No. 1665).

This matter involves alleged property damage claims relating to the ZAI product and has generally become known and referred to as the "ZAI Science Trial." The purpose of the ZAI Science Trial is to determine as a threshold issue what science demonstrates as to whether ZAI poses an unreasonable risk of harm. Accordingly, this Court entered an Order dated October 21, 2002 providing "that the scope of discovery will be limited to what science demonstrates with regard to whether ZAI creates an unreasonable risk of harm." The October 21 Order further set a discovery schedule. During the fall and winter of 2002, ZAI claimants and Debtors each served and responded to multiple sets of paper discovery including written interrogatories, requests for production of documents and requests for admissions. This phase of fact discovery involved, among other things, several massive document productions by Debtors to ZAI Claimants including the production of approximately 500,000 pages of documents via compact disk and the

production of documents at the document repository Debtors have maintained for many years of asbestos litigation.

By Amended Order dated November 25, 2002, this Court extended the time for the parties to complete fact discovery, and meet subsequent deadlines, by approximately sixty (60) days. Under the Amended Order:

- Fact discovery was to close February 28, 2003;

- ZAI Claimants' expert reports were due March 21, 2003;

- Debtors' Expert Reports were due April 11, 2003;

- Depositions of Claimants' experts are to be conducted from April 14, 2003 to May 9, 2003;

- Depositions of Debtors' experts are to be conducted from May 12, 2003 to June 6, 2003;

- Debtors shall file and ZAI Claimants may file a Rule 42 consolidation motion together with related Daubert/summary judgment motions by July 7, 2003;

- Responses are due August 8, 2003;

- Replies are due August 18, 2003; and

- Argument will be on or after September 8, 2003.

The ZAI Science Trial has proceeded and is expected to continue to proceed in accordance with the schedule set forth in the Court's Amended Order.

Subject to the parties' agreement to defer and possibly eliminate the need for several depositions, the parties have completed fact discovery. In addition to the completion of paper discovery, the parties have completed the depositions of five former employees of the Debtors as well as approximately nine depositions of Claimant/homeowners and the deposition of a contractor and former contractor listed by Claimants as fact witnesses. The ZAI Claimants served expert reports on Debtors on March 21, 2003. Debtors served expert reports on Claimants on April 11, 2003. The parties are currently in the process of scheduling and taking expert depositions in accordance with the schedule set forth in the Amended Order. Debtors anticipate completion of dispositive motions in accordance with the schedule set forth in the Amended Order.

This Court has also ordered counsel for the parties in the ZAI Science Trial to participate in the May 19, 2003 Omnibus hearing by providing a status report including an update on any settlement discussions.

**Avoidance Actions**

Pursuant to section 546 of the Bankruptcy Code, the Debtors must initiate any avoidance actions under sections 544, 545, 547, 548 or 553 (the "Avoidance Actions") within 2 years after the entry of the order for relief in their Chapter 11 Cases, which was entered on April 2, 2001 (the "Petition Date"). Thus, the deadline for filing any Avoidance Actions was April 2, 2003 (the "Filing Deadline"). The Debtors do not believe they are or were insolvent at any relevant time. However, in anticipation of the Filing Deadline, the Debtors conducted a review of their books and records to determine what Avoidance Actions would otherwise be appropriate. The Debtors' review was conducted consistent with their fiduciary duties and with primary consideration given to the best interests of their estates and their creditors. On February 14, 2003, the Debtors delivered to counsel for the Creditors' Committee, the PI Committee and the PD Committee a memorandum setting forth the basis for the Debtors' determination that they would not pursue any Avoidance Actions, as well as the background information upon which their analysis was based. On the Filing Deadline, the Creditors' Committee filed a motion seeking to extend the Filing Deadline. This motion is discussed further in the section below titled "Motions".

**Adversary Proceedings**

1.  W. R. Grace & Co., et al. v. Chakarian, et al., (Adv. Pro. No. 01-00771) (the "Chakarian Adversary Proceeding").

    The Debtors initiated the Chakarin Adversary Proceeding on the Petition Date to obtain a preliminary injunction enjoining all actions against certain non-Debtors for claims related to the Debtors. On the Petition Date, the Court entered a temporary restraining order staying, among other things, prosecution of all actions against (a) Affiliated Entities (as defined therein) that arise from alleged exposure to asbestos indirectly or directly allegedly caused by the Debtors and (b) Non-Debtor Affiliates on account of which the Non-Debtor Affiliates may be entitled to coverage under certain Insurance Policies providing coverage for asbestos-related claims asserted against the Debtors. On May 3, 2001, the Court granted a preliminary injunction (Docket No. 32, the "Original Injunction"). On June 1, 2001, the Debtors moved to modify the Original Injunction to further expand its scope to additional affiliated entities and actions (Docket No. 36) (the "Modification Motion"). Thereafter, numerous objections were filed, hearings were held and on January 22, 2002, the Preliminary Injunction (Docket No. 87) was entered, which continued to enjoin actions that arise from exposure to asbestos indirectly or directly allegedly caused by the Debtors.

    *(a)   Gerard Motions*

    On February 4, 2002, Carol Gerard ("Gerard") filed a Motion to Clarify the Scope of the Preliminary Injunction or, in the Alternative, to Modify the Preliminary Injunction (Docket No. 86) (the "Gerard Motion"). Gerard sought to proceed against Maryland Casualty Company ("Maryland") in an action filed against W. R. Grace & Co. ("Grace") and Maryland entitled Carol Gerard v. W. R. Grace & Co., et al., Case No. 00-0015534 (the "Baltimore Action") pending in the Circuit Court for Baltimore City and sought

discovery from Grace in that regard. In March, 2002, shortly after the first hearing on the Gerard Motion, certain other individuals (the "Libby Plaintiffs"), in violation of the Preliminary Injunction, filed a similar Complaint against Maryland in Montana.

On June 20, 2002 the Bankruptcy Court entered an Order denying Gerard's Motion (Docket No. 109) (the "June 20 Order"). The June 20 Order states that the Preliminary Injunction stays both the Baltimore Action and the Montana Actions. On July 5, 2002, the Libby Plaintiffs filed a Motion to Reconsider the June 20, 2002 Order. On September 12, 2002 the Bankruptcy Court denied the Libby Plaintiffs' Motion to Reconsider the June 20, 2002 Order (Docket No. 133) (the "September 12 Order"). The Libby Plaintiffs and Gerard then appealed the June 20 Order and the September 12 Order to the United States District Court for the District of Delaware. The appeal before the District Court is fully briefed and pending.

(b)     *Locke v. Bettacchi*

On or about June 18, 2001, Robert Locke ("Locke") filed an objection (Docket No. 43) to the Modification Motion. At the January 3, 2002 hearing, the Debtors agreed to submit an affidavit setting forth the facts supporting the application of the preliminary injunction to the Locke Action and Locke was given the opportunity to respond to the affidavit. The Preliminary Injunction specifically carved out the Locke Action and continued that matter for further hearing on January 29, 2002.

The Locke Action asserts claims of employment discrimination against the Debtors and Robert Bettacchi ("Bettacchi"), the Senior Vice President of Grace and W. R. Grace & Co.-Conn. ("Grace-Conn"), and President of Grace Performance Chemicals, one of the Debtors' two major operating units. Mr. Bettacchi is one of seven elected officers of both corporations, and he is a member of the Grace Leadership Team which sets the strategic direction of the Debtors. The Locke Action was precipitated by the corporate restructuring of certain of the Debtors' business units which took place in 1998. Mr. Bettacchi was in charge of implementing the restructuring for Grace-Conn. Grace and Grace-Conn have been defending Mr. Bettacchi since the Locke Action was filed in 1999 pursuant to a mandatory indemnity obligation set out in the certificate of incorporation and by-laws of Grace and Grace-Conn.

At the hearing before this Court on January 29, 2002 (the "January 29 Hearing"), the Court indicated that the Preliminary Injunction would apply to the Locke Action on the same terms which the Preliminary Injunction applies to all other matters. At some time after the January 29 Hearing, the Debtors and Locke agreed to the form of an order whereby the Preliminary Injunction was extended and modified "to stay and enjoin the prosecution of the Locke Action through and including December 16, 2002 at 10:00 a.m. when the Locke matter shall come before the court for further hearing on the preliminary injunction." (the "Proposed Order"). On February 13, 2002, the Debtors filed a certification of counsel (Docket No. 88) with respect to the Proposed Order. The Debtors subsequently discovered that the Court never signed the Proposed Order. However, the Debtors have continued to operate as if the Proposed Order had been entered.

On November 11, 2002, the Debtors filed a Motion to Further Extend the Preliminary Injunction as it Applies to the Robert Locke Matter (Docket No. 143, the "Locke Extension Motion"). Locke objected to the Locke Extension Motion and the matter was heard by the Court at the January 27, 2003 hearing. At the hearing, the Court stated that the Preliminary Injunction would continue to apply to the Locke Action, but that the matter would be reheard at the May 19, 2003 hearing. No order regarding this extension was entered.

The Chakarian Adversary Proceeding remains open and the Modified Preliminary Injunction Order remains in effect.

2. <u>Lewis, et al. v. W. R. Grace & Co., et al.</u>, (Adv. Pro. No. 01-08810).

This adversary proceeding relates to the ZAI litigation which is discussed in greater detail above.

3. <u>Abner et al v. W. R. Grace & Co.-Conn., et al.</u>, (Adv. Pro. No. 01-08883) (the "Abner Adversary Proceeding").

Prior to the Petition Date, certain of the Debtors were named in a purported class action suit filed in September 2000 in California Superior Court for the County of San Francisco alleging that the 1996 reorganization involving a predecessor of Grace and Fresenius A.G. and the 1998 reorganization involving a predecessor of Grace and Sealed Air Corporation were fraudulent transfers (<u>Abner, et al., v. W. R. Grace & Co., et al.</u>) (the "Abner State Litigation"). The suit is alleged to have been brought on behalf of all individuals who then had lawsuits on file asserting personal injury or wrongful death claims against any of the defendants. Since <u>Abner</u>, and prior to the Chapter 11 filing, two other similar class actions were filed. These lawsuits have been stayed as a result of Grace's Chapter 11 filing.

This adversary proceeding was initiated when the Abner State Litigation was removed to the Bankruptcy Court for the Northern District of California and subsequently transferred to this Court. The Abner Adversary Proceeding is expected to be resolved in conjunction with the Fresenius Adversary Proceeding and Sealed Air Adversary Proceeding, discussed in greater detail below.

4. <u>W. R. Grace & Co.-Conn. et al. v. National Union Fire Insurance Company of Pittsburgh</u>, (Adv. Pro. No. 02-01657) (the "National Union Adversary Proceeding").

Prior to the Petition Date, Grace-Conn entered into two agreements (the "Protocols") with two law firms—Reaud, Morgan & Quinn ("RMQ") and Environmental Litigation Group, P.C. ("ELG")—providing a procedure for settling a number of asbestos claims asserted against the Debtors. The Protocols required the Debtors to make payments to RMQ and ELG on January 15, 2002, (the "2002 Payment") and January 15, 2003, (the "2003 Payment") if RMQ and ELG submitted to the Debtors certain required documentation from eligible claimants (the "Qualifying Materials"). The Protocols also required the Debtors to obtain guaranties of the Debtors' obligation to make the 2002

Payment and the 2003 Payment. The Debtors obtained payment bonds (the "Bonds") from National Union Fire Insurance Company of Pittsburgh, PA ("National Union").

In anticipation that National Union would pay RMQ and ELG the 2002 Payment pursuant to its obligation under the Bonds, the Debtors filed the National Union Adversary Proceeding. The Debtors sought a preliminary injunction and temporary restraining order (i) restraining and enjoining National Union, as issuer of the Bonds, from paying as surety the 2002 Payment, and (ii) enjoining National Union from drawing upon certain letters of credit obtained by the Debtors. Prior to a hearing before the Court on the issue of the 2002 Payment, the parties reached an agreed settlement of the matter, which was filed with the Court on May 1, 2002 (Docket No. 17).

In December 2002, National Union filed a motion for summary judgment (Docket No. 19) (the "National Motion") seeking a directed verdict determining that National Union has no remaining obligation to pay RMQ and ELG under the Bonds, or, in the alternative, deferring the determination of the amount of the remaining obligation on the Bonds until the completion of the Personal Injury Procedures Litigation (discussed above). The parties have agreed on a briefing schedule (Docket No. 28) setting forth the deadlines to respond to the National Motion and allowing RMQ and ELG to file their own motion for summary judgment. The hearing on the National Motion and any motion for summary judgment filed by RMQ and ELG is set for September 22, 2003.

On March 24, 2003, RMQ and ELG filed a discovery request seeking documents from National Union and the Debtors and also filed a motion to compel the depositions of Jay Hughes, Dr. Peter Barrett and a corporate representative of National Union (Docket No. 29) (the "Motion to Compel"). The Debtors and National Union filed objections to the Motion to Compel on April 11, 2003 (Docket Nos. 41 & 42). The hearing on the Motion to Compel is set for April 28, 2003.

5. <u>Official Committee of Asbestos Property Damage Claimants v. Sealed Air Corporation, et al.</u>, (Adv. Pro. No. 02-02210) (the "Sealed Air Adversary Proceeding").

The Sealed Air Adversary Proceeding and the Fresenius Adversary Proceeding were consolidated. Please see the combined discussion below.

6. <u>Official Committee of Asbestos Property Damage Claimants v. Fresenius Medical Care Holdings, Inc., et al.</u>, (Adv. Pro. No. 02-02211) (the "Fresenius Adversary Proceeding").

On or about March 12, 2002, Judge Wolin entered an order (Docket No. 1789) authorizing the Official Committee of Asbestos Personal Injury Claimants and the Official Committee of Asbestos Property Damage Claimants to proceed with claims against Sealed Air Corporation alleging that the 1998 transaction involving Grace's former packaging business and Sealed Air Corporation constituted a fraudulent conveyance. A trial had been scheduled to begin on December 9, 2002. On November 29, 2002, Sealed Air Corporation and Fresenius Medical Care AG each announced that they had reached agreements in principle with representatives of the asbestos creditors committees to resolve all of the current and future asbestos-related claims and the

pending fraudulent transfer claims made against them and their respective affiliates. Under the terms of the proposed Sealed Air settlement, Sealed Air would contribute to the Grace estate or a trust, upon the effectiveness of Grace's plan of reorganization, $512.5 million (plus interest at 5.5% per annum, commencing on December 21, 2002) and nine million shares of Sealed Air common stock. Under the terms of the proposed Fresenius settlement, as subsequently revised, Fresenius would contribute $115 million to the Grace estate upon confirmation of a plan of reorganization. Both settlements are subject to Court approval. Upon the effectiveness of these settlements the Abner Adversary Proceeding and all similar actions will be dismissed.

The parties, including Grace, have executed the Fresenius settlement agreement. The motion seeking approval of the settlement was filed on April 15, 2003 in the Fresenius Adversary Proceeding (Docket No. 16). The parties are still negotiating the terms of the Sealed Air settlement agreement.

### Motions

1. <u>Timothy Kane Motion for Relief from Automatic Stay</u>. Docket No. 2234 (the "Kane Motion"). Status hearing scheduled for the May 19, 2003 omnibus hearing.

   Timothy Kane ("Kane") alleges that in July 1999, he was erecting scaffolding for roof repairs at Disney's Grand Floridian resort. While walking on an angled portion of the roof, he slipped and fell off the roof, sustaining injuries. Kane alleges that a roofing membrane product produced by the Debtors was used on the roof to protect it against water and ice damage, and that this product was unreasonably slippery when wet. In September of 2000, Kane filed the Kane Action against Disney, the roofing contractor and the roof designer for negligence, and against W. R. Grace & Co.-Conn., a debtor in these bankruptcy cases, for negligence and strict liability. On August 23, 2001, Kane filed an Amended Complaint.

   By a motion (Docket No. 1034) filed with this Court on or about October 26, 2001, Kane sought relief from the automatic stay to pursue the Kane Action. At the hearing before this Court on January 3, 2002 (the "January 3 Hearing"), the Court granted Kane partial relief from the automatic stay to depose certain employees of the Debtors. By order dated January 25, 2002, the Court stayed the Kane Action in all other respects.

   On or about June 18, 2002, Kane filed a motion (Docket No. 2234) once again seeking relief from the automatic stay to pursue the Kane Action. The Court denied Kane's renewed motion, ordered Kane to file a proof of claim and set the matter for a status hearing at the May 19, 2003 omnibus hearing.

2. <u>Motion of Caterpillar Financial Service Corporation to Compel Payment of Administrative Expenses and for Relief from the Automatic Stay or in the Alternative for Adequate Protection</u>. Docket No. 3009 (the "Cat Motion"). Objection deadline extended by agreement of the parties to May 2, 2003.

   Caterpillar filed the Cat Motion to compel the payment of post-petition amounts allegedly due under certain equipment leases which had been previously assumed by the Debtors.

The Debtors have been working with Caterpillar to determine the exact amount of unpaid post-petition payments due. Upon Caterpillar providing the Debtors with the amount it asserts is due and unpaid, the Debtors anticipate reconciling that amount with their records and filing a stipulated resolution to the Cat Motion.

3. <u>Motion of DK Acquisition Partners, L.P. for an Order Permitting Trading in the Debtors' Bank Debt</u>. Docket No. 3483 (the "DK Motion"). Objection deadline is April 11, 2003.

   The DK Motion seeks an order permitting DK Acquisition Partners, L.P. to trade in the Debtors unsecured debt for its own benefit while serving on the Creditors' Committee. The Debtors have no objection to the DK Motion.

4. <u>Motion to Extend Time to Assume, Assume and Assign, or Reject Unexpired Leases or Nonresidential Real Property</u>. Docket No. 3544 (the "Lease Extension Motion"). Objection deadline is April 11, 2003.

   Opposition to the motion was filed by a landlord, William B. Dunbar. The Debtors are working with Mr. Dunbar's counsel in order to resolve his opposition. A certificate of counsel with respect to the Lease Extension Motion was filed with the Court on April 18, 2003.

5. <u>Motion to Extend Time Within Which Avoidance Actions May Be Brought and Staying the Limitations Deadline Pending a Decision On This Motion</u>. Filed by the Official Committee of Unsecured Creditors (the "Creditors' Committee"). Docket No. 3601 (the "Avoidance Action Motion"). Objection deadline is May 2, 2003.

## Conclusion

The preceding is intended to be a comprehensive list of outstanding matters in these Chapter 11 Cases. In the event the Debtors discover additional matters not described herein, the Debtors will file a supplementary status report with this Court.

Dated: April 21, 2003

        KIRKLAND & ELLIS

        David M. Bernick, P.C.
        Janet S. Baer
        James W. Kapp III
        Christian J. Lane
        200 East Randolph Drive
        Chicago, Illinois 60601
        (312) 861-2000

        and

        PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

        */s/ Scotta E. McFarland*

        Laura Davis Jones (Bar No. 2436)
        Scotta McFarland (Bar No. 4184)
        Paula Galbraith (Bar No. 4258)
        919 North Market Street, 16th Floor
        P.O. Box 8705
        Wilmington, Delaware 19899-8705 (Courier 19801)
        (302) 652-4100

        Co-Counsel for the Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

DAVID D. BIRD
CLERK OF COURT

824 MARKET STREET
WILMINGTON, DE 19801
(302) 252-2900

July 2, 2003

David W. Carickhoff, Jr., Esq.
Pachulski Stang Ziehl Young & Jones
919 N. Market Street
16th Floor
Wilmington, DE 19899-8705

Re:   W. R. Grace & Co.
      Case No. 01-01139

Dear Mr. Carickhoff:

I have enclosed a letter requesting information on the above-captioned case. Would you please respond and send a copy of the response to my attention.

Thank you for your assistance.

Sincerely,

*/s/ David D. Bird*

David D. Bird
Clerk of Court

DDB/mcc

Enclosure:   Letter and documents sent by Burrell Johnson, Jr.

REC'D JUL 0 8 2003

RECEIVED
JUL 0 2 2003
Pachulski, Stang, Ziehl,
Young, Jones & Weintraub

By-Request For Assistance And Consideration (Office of The-Clerk)

Date: 6-22-03

Office-Of, U.S. Bankruptcy-Clerk,
U.S. Bankruptcy-Court, For The
Dist., of Delaware/Sixth-Floor,
824 Market Street
Wilmington, Delaware
(19801)

Ref:
W.R. Grace & Co., (et-al)
Ch. 11, /Case-No., 01-01139, (J.K.F.)

Subj.:
U.S. War-Veteran/College Correctional-Inmate Darrell Johnson,Jr. No. 00241395-A, (U.S. Roper) Mailing Return-Address, P.O. Box-4500, Michael-Unit, Tennessee-Colony, TX (75886); By-Request For The Court-Clerk(s) Assistance, In-Receiving Any New-? Development In The Above Ch. 11, Case-Numbers. (Concerned)

Dearest Clerk:
Hello, Any Assistance In This Matter Will Be Deeply-Appreciated. (Next-Page)

"Perjury-Form",

I, Burrell Johnson, Jr., "I.D.C.O.J."
No., 00241395-8, (U.S. Appeal) Further Hereby-Declare
Under Penalty of Perjury Pursuant-To
Title-18 & 28, U.S.C., Sec.,(s) 287,1001 & 1746,
Provides A Penalty of Not More-Than ($) 10,000
Fine or Not More-Than 5-Years Imprisonment
or Both, Under U.S. Code And Texas Res., Civil
Practice And Rem., Code-Sec.,(s),
                                                132.001, 2, & 3.
That The Statements And Questions-Made In This
(Request/Acknowledgment) Are True And Correctly-Made
By Above (U.S. War-Veteran).
                            This 22nd Day-of
"June-2003", To The-Best of My-Knowledge,
Belief And Recollection.

                    "Concerned & Appreciated",

"By, U.S. War-Veteran",
                    Burrell Johnson, Jr.