UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: ) | Chapter 11 |
| ) | |
| W.R. GRACE & CO., et al., ) | Bankruptcy No. 01-01139 (JKF) |
| ) | Jointly Administered |
| Debtors. ) | |

**ZONOLITE ATTIC INSULATION CLAIMANTS' REPLY TO GRACE'S
MEMORANDUM IN OPPOSITION TO ZAI CLAIMANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE W.R. GRACE'S CONSUMER PROTECTION LIABILITY
[RE: DOCKET NO. 4007]**

Darrell W. Scott
Burke D. Jackowich
Lukins & Annis, P.S.
717 W. Sprague, Suite 1600
Spokane, WA 99201

Telephone: (509) 455-9555
Facsimile: (509) 747-2323

William D. Sullivan
Elzufon Austin Reardon Tarlov & Mondell
300 Delaware Avenue
Suite 1700
P.O. Box 1630
Wilmington, DE 19899-1630

Telephone: (302) 428-3181
Facsimile: (302) 428-3180

Edward J. Westbrook
Robert M. Turkewitz
Richardson Patrick Westbrook & Brickman
  LLC
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, SC 29464

Telephone: (843) 727-6500
Facsimile: (843) 727-6688


## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENTS ..................................................................................................................... 2

    A.    Grace Concedes that ZAI is Contaminated with Asbestos; Grace Concedes that ZAI Releases Asbestos into the Air when Disturbed During Ordinary Activities of Homeownership; These are Scientific Matters About Which There is No Longer Any Scientific Doubt. ........................................ 2

    B.    The Proposed Undisputed Scientific Findings are "Material" to Proof of ZAI Claimants' Case and "Material" to the Question Posed by the Court. ............ 3

        1.    These Scientific Findings are Material to Grace's Substantial Consumer Protection Liability. ................................................................. 3

        2.    These Scientific Findings are Material to the Issue of "Unreasonable Risk of Harm." ............................................................... 4

    C.    Grace's Historic Business Misconduct ................................................................. 9

III. CONCLUSION ................................................................................................................. 10

## TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................. 2

*Cloverland-Green Spring Dairies, Inc. v. Pennsylvania Milk Marketing Bd.*, 198 F.3d 201 (3rd Cir. 2002) ................................................................................................................ 3

*Everett v. Paschall*, 61 Wash. 47, 111 P. 879 (1910) ................................................................. 5

*Ferry v. Seattle*, 116 Wash. 648, 203 P. 40 (1922) ................................................................... 5

*Henderson v. City of Simi Valley*, 305 F.3d 1052 (9th Cir. 2002) .............................................. 2

*Morris v. McNicol*, 83 Wn.2d 491, 519 P.2d 7 (1974) ............................................................... 3

*Urman v. South Boston Savings Bank*, 424 Mass. 165, 674 N.E.2d 1078 (1997) ...................... 6

**STATUTES**

*Cal. Civ.C. §1102.6* .................................................................................................................. 8

*RCW 64.06.020* ........................................................................................................................ 8

**RULES**

*Fed R. Civ. P. 56* ...................................................................................................................... 3

## I. INTRODUCTION

The Court's decision to effectuate scientific discovery into "whether ZAI poses an unreasonable risk of harm" has now borne scientific fruit: ZAI is contaminated with asbestos;[1] ZAI releases asbestos into the air during ordinary activities of homeownership.[2] The materiality of these scientific findings to ZAI's capacity to cause property harm is revealed through application of state consumer protection laws, which afford private rights of action for harm to real property value, interference with right of usage of property, and loss of money.[3]

Grace conceded these scientific conclusions and dismisses them as "meaningless." ZAI claimants respectfully submit that Grace is wrong.

These two scientific findings, linked to marketplace aversion to asbestos in real property, demonstrate unreasonable risk of harm to property value. These two scientific findings, linked to a prudential imperative to avoid exposure to airborne asbestos,[4] demonstrate unreasonable risk of harm to usage of property. These two scientific findings, linked to a prudential obligation to retain asbestos professionals to remove ZAI before remodeling, demonstrate unreasonable risk of financial loss. These conclusions do not require, legally or factually, proof that ZAI doubles the risk of disease.

An order of partial summary judgment as to these two fundamental scientific findings is appropriate because there is no question as to their accuracy, because they are material to

---

[1] "To date, sampling results from Libby vermiculite (Zonolite) almost always show some level of tremolite asbestos." (Ask EPA 10/15/01 – Ex. 4 to the Declaration of Darrell W. Scott in Support of Zonolite Attic Insulation Claimants' Memorandum in Support of Motion for Partial Summary Judgment re: W.R. Grace's Consumer Protection Liability, hereafter "Scott Dec." filed 7/7/03); "Zonolite Attic Insulation (ZAI) contains approximately 1% or less asbestos by weight." (Grace Expert Morton Corn Expert Report, p. 18 – Ex. 2 to Scott Dec. filed 7/7/03).

[2] "More importantly our sampling has indicated that anytime Zonolite is disturbed it will release fibers into the air." (EPA Region 8 – Ask EPA – Ex. 4 to Scott Dec. filed 7/7/03).
"[I]t is our opinion that this material will release asbestos fibers into the air when the material is disturbed during ordinary and foreseeable disturbance activities." (Richard Hatfield/William Longo Expert Report, p. 24 – Ex. 1 to Scott Dec. filed 7/7/03).

[3] *See* Claimant State CPA Analysis Chart (Appendix "C" to ZAI Claimants' Brief filed 7/7/03).

[4] "DO NOT DISTURB IT. Any disturbance has the potential to release asbestos fibers into the air." (EPA's "Current Best Practices for Vermiculite Attic Insulation" dated May 2003 - Exhibit 23 to Scott Dec. filed 7/7/03); *see also* Response of ZAI Claimants to Debtors' Motion in Limine to Exclude Evidence of Any Alleged Damages from the ZAI Science Trial filed 8/8/03.

claimants' proof that ZAI poses an "unreasonable risk of harm," and because such an order would advance Grace's liability by streamlining proof.

## II. ARGUMENTS

A. **Grace Concedes that ZAI is Contaminated with Asbestos; Grace Concedes that ZAI Releases Asbestos into the Air when Disturbed During Ordinary Activities of Homeownership; These are Scientific Matters About Which There is No Longer Any Scientific Doubt.**

A party opposing summary judgment shoulders a burden of rebuttal, requiring submission of evidence that convinces the Court that there is a question of fact as to the truth of the matter about which summary judgment was sought. *See Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-1056 (9th Cir. 2002); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will search Grace's response brief in vain for evidence that calls into question the accuracy of ZAI claimants' proposed findings. Grace's silence establishes that there is no question of fact but that (1) ZAI is contaminated with asbestos, and (2) ZAI releases asbestos into the air when disturbed during ordinary activities of homeownership.

In an effort to avoid an order confirming these unquestioned scientific findings, Grace accuses claimants' Motion of being outside the scope of the Order of the Court. Grace's criticism is perplexing. The proposed findings are core results of the scientific discovery enterprise this Court set in motion by its Order of October 21, 2002. The scientific inquiry conducted by experts for both sides, pursuant to the Court's Order, were directed, in important part, at whether ZAI was contaminated with asbestos and whether ZAI would release asbestos into the air when disturbed during ordinary activity of homeownership.[5] The ultimate conclusions drawn by Grace's own expert were directed at these questions.[6] Grace's effort to find sanctuary in the frail claim that this expensive scientific enterprise was irrelevant merely signals Grace's displeasure with the results.

Similarly moved, Grace argues that, because Grace's liability under applicable consumer protection statutes does not require, as an element of proof, demonstration that ZAI is

---

[5] *See* Expert Witness Reports of ZAI Experts Richard Hatfield/William Longo (Ex. 1 to Scott Dec. filed 7/7/03), and Grace Expert Morton Corn (Ex. 2 to Scott Dec. filed 7/7/03).

"unreasonably dangerous," the Court should not enter an Order as to these established scientific findings. Grace's position makes no sense. Since expensive scientific discovery conducted at the direction of the Court has now established that ZAI is contaminated with asbestos and that ZAI releases asbestos into the air when disturbed during ordinary activities of homeownership, and since these uncontested scientific findings are material to Grace's consumer protection liability, the Court has every reason to expedite proceedings by avoiding wasteful expenditures of Court time and Debtor's money putting on proof of what are uncontested scientific facts. Moreover, Grace argues in its own Summary Judgment Motion that all ZAI claims (including consumer protection claims) should be dismissed. Grace cannot argue, out of the other corner of its corporate mouth, that consumer protection claims are, somehow, not presently at issue.

**B.    The Proposed Undisputed Scientific Findings are "Material" to Proof of ZAI Claimants' Case and "Material" to the Question Posed by the Court.**

Summary judgment is appropriate where there is "no material question of fact" as to the matter for which summary judgment has been sought. Fed R. Civ. P. 56; *Cloverland-Green Spring Dairies, Inc. v. Pennsylvania Milk Marketing Bd.*, 198 F.3d 201, 210 (3rd Cir. 2002). The accuracy of the proposed findings is unquestioned. The only remaining question is whether these undisputed scientific findings are material. "A 'material fact' is a fact upon which the outcome of the litigation depends, in whole or in part." *Morris v. McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7, 10 (1974). While Grace dismissively labels the findings as "meaningless," they are, in fact, scientific landmarks in the landscape of Grace's substantial liability to millions of homeowners.

    1.    <u>These Scientific Findings are Material to Grace's Substantial Consumer Protection Liability.</u>

Grace does not challenge claimants' demonstration that state consumer protection laws afford millions of ZAI homeowners private rights of action for business misconduct dating from roughly 1970 to 1984. Grace does not contest that diminution in property value, loss of use of

---

[6] *See* Expert Witness Report of Grace Expert Morton Corn (Ex. 2 to Scott Dec. filed 7/7/03).

-3-

property, and loss of money are harms compensable under these consumer protection laws.[7] Whether "ZAI poses an unreasonable risk of harm," thus, directly places at issue ZAI's capacity to cause diminished property value, cause injury to usage of property, or cause loss of money. "The outcome of litigation" as to ZAI's capacity to cause these harms "depends in whole or in part" on scientific proof that ZAI contains asbestos and that ZAI releases asbestos into the air when disturbed during ordinary activities of homeownership. These findings, therefore, are "material" for purposes of establishing grounds for partial summary judgment.

    2.    These Scientific Findings are Material to the Issue of "Unreasonable Risk of Harm."

The question posed by the Court is whether ZAI creates an unreasonable risk of harm. That asbestos is firmly established as one of the most toxic substances known to science,[8] provides explanatory context to marketplace aversion to properties that contain asbestos and that pose risk of asbestos release. In the face of this marketplace aversion, risk of harm to property value is established upon proof that ZAI is contaminated with asbestos and that ZAI releases asbestos into the air when disturbed during ordinary homeowner activities.[9]

The fact that asbestos itself is toxic, and the fact that each exposure increases the risk of disease due to the cumulative toxicological effects of asbestos, provide meaningful context to a prudential imperative to avoid exposure to airborne asbestos, where possible, and to incur the expense of retaining an asbestos professional when disturbance becomes necessary.[10] These burdens are triggered upon proof that ZAI is contaminated with asbestos and that ZAI releases asbestos into the air when disturbed by ordinary homeowner activities. The nation's most respected public health agencies have now issued a clarion public health call, affirming the

---

[7] *See* Claimant State CPA Analysis (Appendix "C" to ZAI Claimants' Brief filed 7/7/03).
[8] *See* Response of ZAI Claimants to Debtors' Motion in Limine to Exclude Evidence of Any Alleged Damages from the ZAI Science Trial filed 8/8/03.
[9] *See* Expert Report of John Kilpatrick (Attachment F).
[10] Sources relating to toxicity, cumulative exposure, and need to avoid each exposure have been previously submitted to this Court. *See* Response of ZAI Claimants to Debtors' Motion in Limine to Exclude Evidence of Any Alleged Damages from the ZAI Science Trial filed 8/8/03.

applicability, appropriateness, and importance of these measures as to ZAI homeowners.[11] Grace would pounce with the accusation that a homeowner had been contributorily negligent were she to disregard these recommendations. The scientific conclusions that ZAI is contaminated with asbestos and that ZAI releases asbestos when disturbed during ordinary homeowner activities are, thus, directly material to whether ZAI poses an unreasonable risk of harming property value, harming rights of usage, or causing loss of money.

Although the Court is without analytical or legal necessity to go to the extreme, causation would be established even were Grace to somehow convince the Court that the recommendations of the EPA and ATSDR[12] are wrong and that marketplace aversion to asbestos was somehow misplaced. *See Everett v. Paschall*, 61 Wash. 47, 111 P. 879 (1910); *Ferry v. Seattle*, 116 Wash. 648, 203 P. 40 (1922). The impact of marketplace aversion to asbestos, of course, is well understood by Grace, who predicted, long ago, that disclosure of asbestos contamination of ZAI would have "serious, adverse, and irreversible" effects upon consumer acceptance of its product.[13] Significantly, Grace had no difficulty acknowledging market aversion or linking market aversion to its own business loss, even where, as Grace allegedly believed, the product did not present an "unreasonable risk of disease." Grace cannot now plead surprise that ZAI poses risk of serious, adverse, and irreversible effects upon the real property in which Grace's asbestos-contaminated product is now installed or feign disbelief that such harm could occur absent proof of "unreasonable risk of disease."

Grace, nonetheless, repeats verbatim its now thread-bare assertion that the only question is "unreasonable risk of disease" and "toxicity." This stance is as misplaced in the consumer protection context as it is in the property damage tort context.

---

[11] *See* EPA's "Current Best Practices for Vermiculite Attic Insulation" dated May 2003 (Exhibit 23 to Scott Dec. filed 7/7/03).
[12] *Ibid.*
[13] *See* R.H. Locke "Binder Development Program" dated May 17, 1976 (Exhibit 22 to Scott Dec. filed 7/7/03).

Grace concedes, as it must, that proof of physical harm, let alone "unreasonable risk of disease," is simply not an element of a consumer protection claim. Remarkably, the only case cited in Grace's brief that references "toxicity" in a consumer protection context is *Urman v. South Boston Savings Bank*, 424 Mass. 165, 674 N.E.2d 1078 (1997). This case could only have been cited by Grace in the hope that the Court would not actually read it. The case does not stand for the proposition Grace suggests, and indeed, proves ZAI claimants' point.

*Urman* involved a consumer protection claim for property harm allegedly resulting from toxic contamination on <u>other</u> property, where that off-site problem had been <u>abated and no longer existed</u>, where the defendant had only limited knowledge as to the now-resolved contamination problem and had made no representations to the plaintiffs, and where, as to the plaintiffs' property, no corrective measures were proposed, implemented, or necessary. *Urman*, 424 Mass. at 167-168. Under these conditions, the court held, understandably, that there was no claim under Massachusetts' consumer protection law. *Urman*, 424 Mass. at 169.

The case is salient, however, for present purposes, because the Court provided guidance as to what would constitute injury to a real property owner, <u>even</u> where the offending condition was on <u>other</u> property: "In appropriate circumstances, off-site physical conditions, known to a seller who is subject to G.L.c. 93A, may require disclosure if the conditions are 'unknown and not readily observable by the buyer [and] if the existence of those conditions is of <u>sufficient materiality to affect the habitability, use, or enjoyment of the property</u> and, therefore, render the property <u>substantially less desirable or valuable to the objectively reasonable buyer.</u>'" (emphasis added) *Urman*, 424 Mass at 169, 674 N.E.2d at 1082. Given Grace's awareness of asbestos contamination of ZAI and failure to disclose that contamination, the "risk of harm" question is the materiality of ZAI asbestos contamination to property value, to use and enjoyment of property, and to the desirability of property. The "risk of harm" question is not whether an occupant's risk of contracting a deadly disease has doubled.

If the contaminant in ZAI were dust, and not asbestos, Grace muses, there would be no harm. This observation merely establishes that the scientific fact that ZAI is contaminated with <u>asbestos</u> is <u>material</u>. The conclusion Grace draws (that only the degree of "toxicity" is relevant) is a non-sequitur, and simply not in accord with the law, the realities of the marketplace, or the realities of homeownership. The scientific finding that highly friable ZAI readily releases asbestos into the air when disturbed during ordinary homeowner activities, in and of itself, triggers risk to the property interests of ZAI homeowners, including the unfortunate homeowner who discovers that ZAI is in the home she is remodeling,[14] in her attic where possessions, including keepsakes, are stored,[15] within the walls of her home, sifting[16] through ceiling fans, ceiling vents, heater,

---

[14]
- "I estimate that between the attic bracing and the back porch that I'm close to 200 hours [spent disturbing the vermiculite]." (Ralph Busch 8/22/00 Depo. Pg. 73, Attachment "I")
- "We bought the home knowing that we were going to do remodel on it . . . we started ripping into walls and going up in the attic and it, as soon as we drilled a hole in the ceiling or opened up a wall, vermiculite came pouring out." (Brendan King Depo. Pg. 23, Attachment "J")
- "The floor had to be torn out in order to remove the vermiculite to get to the wiring" (Shawn Dillon Depo. Pg. 58, Attachment "L")
- "I know I worked two full days on getting it [the vermiculite] up, but there was other days that I was up there piddling around and cleaning." "I would say [I removed] 17 bags [of vermiculite]." (Jerri Dillon Depo. Pgs. 44 & 46, Attachment "K").
- "I spent probably somewhere between three and 500 hours up there [in the attic]." (Clarke Russ Depo., Pg. 42, Attachment "N").

[15]
- "[W]e store furniture in there, old textbooks, quilts, my wife's wedding gown was up there, blankets, winter blankets, old toys." (Clarke Russ Depo. Pg. 40, Attachment "N")
- "[M]y son's train set is up there. He's not happy. . . . Some records, tax records, that type of thing." (Leon Cohen Depo. Pg. 30, Attachment "O")
- "All my clothes, jewelry [are stored in the attic]. At one point toys, a bed, dressers." (Jerri Dillon Depo. Pg. 34, Attachment "K")
- "I've got documents that I keep up there for taxes and whatnot for my business that's stored and no, they're not disposed of. I mean that would be like cutting of my hands to spite my face, you know; IRS and that type of thing." (Shawn Dillon Depo. Pg. 30, Attachment "L")
- "[M]y dad used it [the attic] as storage for his company records." (3/12/03 Rand Hatch Depo. Pg. 26, Attachment "M")
- See also Exemplar Photographs regarding Michigan homeowner Koski and Washington homeowner Matthews (Attachment "A")

[16] "As shown by our home inspections, Libby vermiculite has an affinity for seeping through cracks and crevices and entering living spaces." (Ewing Expert Report Pg. 8, Attachment "H"; See also Photographic Exemplars (Attachments "A" – "C")

electrical or plumbing outlets,[17] or migrating into the children's rooms,[18] bedroom,[19] laundry room,[20] living/family room,[21] or basement.[22] A homeowner's duty to disclose detrimental conditions to any prospective purchaser[23] assures that marketplace aversion to asbestos will take its toll when the property is sold.[24]

While present harms to property interests of homeowners manifest themselves in countless ongoing ways,[25] and left unremedied will fuel increased damages over time, ZAI claimants' property damages, fortunately, share a single common denominator: the cost of removal. This

---

[17]
- "[A]ll of the water supply had to run through the attic, through the insulation, and all the electrical, . . . a lot of the wiring had to run through the attic insulation." (King Depo. Pg. 28, Attachment "J")
- "[W]here the switches were, there would be vermiculite. If you had to replace a switch, you know, quite a few of the switches had vermiculite that was kind of filtering through. Electrical outlets it would kind of filter through." (3/12/03 Rand Hatch Depo. Pg. 24, Attachment "M")
- "[W]hen a plumber came in to do the rough plumbing is when he started having it come down on him." (8/21/00 Rand Hatch Depo. Pg. 34, Attachment "M").
- "I can't use that fan because if I do, the vermiculite pours through when I turn it on." (Gladwin Worden Depo. Pg. 49, Attachment "Q")
- "[Y]ou had to cut a hole right up to it, and some of it sifted down. And if you use that fan to this day, it will still sift through that fan." (regarding living room ceiling fan, Robert Parks Depo. Pg. 88, Attachment "P")
- *See also* Photographic Exemplars of Maryland homeowner Worden, Michigan homeowner Koski and Washington homeowner Whitmore (Attachment "B")

[18]
- [W]e began to see the stuff [ZAI]. . . in the kids' closets where it was coming through the cracks." (Kurt Salisbury Depo. Pg. 5, Attachment "R"); *See also* Photographic Exemplars of Idaho homeowner Salisbury (Attachment "C")
- "[W]e had two or three times when the ceiling in [our daughter] Mary's room collapsed because of water, and the Zonolite came down into her room." (Clarke Russ Depo. Pgs. 44-45, Attachment "N").

[19] "I took paneling off in a second floor bedroom which exposed a crack to the attic, and that vermiculite was sifting down through that crack continuously. It was all over the place." (Ralph Busch 2/27/03 Depo. Pg. 53, Attachment "I")

[20] *See* Photographic Exemplars of Maryland homeowner Worden (Attachment "C")

[21] "[T]here's a couple places where I just have the speaker wires coming up through there, and there's vermiculite, ZAI, that has filtered down through there. . . . That's the living room." (3/12/03 Rand Hatch Depo. Pg. 63, Attachment "M") "Q. Which fan will the vermiculite come through? A. The one in the living room." (Robert Parks Depo. Pg. 88, Attachment "P")

[22] *See* Photographic Exemplars of New York homeowner Kwas and Maryland homeowner Worden (Attachment "C")

[23] *See* e.g. (Washington) RCW 64.06.020 and (California) Cal. Civ.C. §1102.6.

[24] *See* Declaration of John Kilpatrick, Ph.D. (Attachment "G"); *See also* Kilpatrick Expert Report (Attachment "F").

[25] *See* Report of Homeowner ZAI Disturbance by Category, included in Claimants' Reliance Materials, which provides a summary of information taken from homeowners. (Attachment "D")

common denominator provides a means of meaningfully bracketing Grace's ultimate ZAI liability, placing that liability in the context of Grace's liability to other creditors, and ultimately acknowledging Grace's ZAI liability in a unified, collective, programmatic way that benefits ZAI claimants nationwide and advances public health for the nation as a whole.

**C.    Grace's Historic Business Misconduct.**

Claimants are mindful that Grace's business misconduct is not presently at issue. Demonstration that Grace's misconduct occurred in an historic context that rendered various state consumer protection laws applicable,[26] and demonstration that the period of that misconduct potentially implicates millions of ZAI claimants,[27] however, is central to understanding how the proposed scientific findings significantly advance the question of Grace's ultimate ZAI liability.

Grace does not dispute this important historical context. Grace does make effort to defend its business misconduct. ZAI claimants here decline opportunity for rejoinder, given the present stage of proceeding, other than to touch upon two subjects, by way of footnote, that deserve correction.[28]

---

[26] *See* Chart Depicting W.R. Grace Business Practices (Appendix A to ZAI Claimants' Brief filed 7/7/03).

[27] *See* Zonolite Attic Insulation State Statutory Consumer Protection Analysis Map and Bureau of Mines Mineral Yearbooks Data Production Table and Legend (Appendices D and E to ZAI Claimants' Brief filed 7/7/03).

[28] Grace claims that throughout this period of business conduct, it innocently "felt" and "believed" that ZAI was safe. Aberrant corporate cultures, it has been observed, often maintain a stranglehold on the conscience of those employed by that company. But that grip sometimes slips. Grace's own former Manager of Industrial Hygiene, employed at Grace during the relevant time period 1971 to 1987, has now come forward in the context of this science trial:
"But you have to understand that I was in a position in the Health and Safety Department – I was in a position to study the effects and understand the health effects of asbestos exposure. I was doing lung function tests on people who could barely breathe. You know, after you do 100 lung function tests on people who cannot blow into the machine because they have a lung disease, you say: Wait a minute. This material is a problem. . . . And I felt as though if the manufacturer of the product can create an exposure potential, that we control bag houses and we're very cautious about what we're doing, and yet this product is then put out on the market and there is not even a label on it warning people about it. Somebody has to come forward and say: Enough." (Hamilton Depo. Pgs. 140-141) "[I] think I would use the word 'unconscionable' if I were to describe the fact that there was no label on these bags to warn people that there was asbestos fiber in there. The opportunity for exposure was clear. . . ." (Hamilton Depo. Pg. 123 – Exhibit 24 to Scott Dec. filed 7/7/03).

### III. CONCLUSION

ZAI is contaminated with asbestos. ZAI releases asbestos into the air when disturbed during ordinary homeowner activities. These findings serve as scientific milestones toward demonstration that ZAI poses an unreasonable risk of harm to property. These scientific findings stand as milestones toward establishing Grace's liability to millions of ZAI claimants under applicable state consumer protection statutes. These scientific findings are not in dispute. These scientific findings are "material." An Order of Partial Summary Judgment is appropriate.

Dated: August 18th, 2003.

Respectfully submitted,

By: _____
Darrell W. Scott
LUKINS & ANNIS, P.S.
717 W. Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Facsimile: (509) 747-2323

Edward J. Westbrook
Robert M. Turkewitz
RICHARDSON PATRICK WESTBROOK & BRICKMAN
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, SC 29464
Telephone: (843) 727-6500
Facsimile: (843) 727-6688

Special Counsel for ZAI Claimants

William D. Sullivan
ELZUFON AUSTIN REARDON TARLOV & MONDELL
300 Delaware Avenue, Suite 1700
Wilmington, DE 19899-1630
Telephone: (302) 428-3181
Facsimile: (302) 428-3180

---

Grace argues that ZAI claimants "electronically enlarged" a photo of ZAI packaging, insinuating that it was done to grammatically separate the "100% Vermiculite" claim from Grace's representation that ZAI was "fireproof." As Grace is already well aware, its representation that ZAI was 100% vermiculite was predominantly made as a stand-alone representation, distinct from its representation that the product was also fireproof. (See Appendix "E").

-10-

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In Re:<br><br>W.R. GRACE & CO., et al.,<br><br>Debtors. | ) CHAPTER 11<br>)<br>) BANKRUPTCY NO. 01-01139 (JKF)<br>)<br>) (Jointly Administered)<br>) |

**CERTIFICATE OF SERVICE**

I, Darrell W. Scott, hereby certify that I caused a copy of the following documents to be served on the individuals on the attached service list on the date and in the manner indicated:

- Zonolite Attic Insulation Claimants' Reply to Grace's Memorandum in Opposition to ZAI Claimants' Motion for Partial Summary Judgment Re W.R. Grace's Consumer Protection Liability [re: Docket No. 4007] (with Appendix);

- Certificate of Service; and

- August 18, 2003, correspondence to Judge Fitzgerald and Judge Wolin.

EXECUTED this 18th day of August, 2003, at Spokane, Washington.

DARRELL W. SCOTT
Lukins & Annis, P.S.
717 W. Sprague Avenue, Suite 1600
Spokane, WA 99201
(509) 455-9555

The following were served via federal express on August 18, 2003:

| | |
|---|---|
| Laura Davis Jones, Esquire<br>David Carickoff, Esquire<br>Pachulski, Stang, Ziehl, Young & Jones<br>919 North Market Street, 16th Floor<br>Wilmington, DE 19899-8705<br>*(Counsel to Debtors and Debtors-in-Possession)* | David Bernick, Esquire<br>James Kapp, III, Esquire<br>Kirkland & Ellis<br>200 East Randolph Drive<br>Chicago, IL 60601<br>*(Counsel to Debtor)* |
| James J. Restivo, Jr., Esquire<br>Reed Smith LLP<br>435 Sixth Avenue<br>Pittsburgh, PA 15219-1886<br>*(Counsel to Debtor)* | |

The following were served via first class mail on August 18, 2003:

| | |
|---|---|
| Hamid R. Rafatjoo, Esquire<br>Pachulski, Stang, Ziehl, Young & Jones<br>10100 Santa Monica Boulevard<br>Los Angeles, CA 90067-4100<br>*(Counsel to Debtors and Debtors-in-Possession)* | David B. Seigel<br>W.R. Grace and Co.<br>7500 Grace Drive<br>Columbia, MD 21044<br>*(Debtor)* |
| Michael R. Lastowski, Esquire<br>Duane Morris & Heckscher LLP<br>1100 North Market Street, Suite 1200<br>Wilmington, DE 19801-1246<br>*(Counsel to Official Committee of Unsecured Creditors)* | Lewis Kruger, Esquire<br>Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, NY 10038-4982<br>*(Counsel to Official Committee of Unsecured Creditors)* |
| Michael B. Joseph, Esquire<br>Ferry & Joseph, P.A.<br>824 Market Street, Suite 904<br>P.O. Box 1351<br>Wilmington, DE 19899<br>*(Counsel for Property Damage Claimants)* | J. Douglas Bacon, Esquire<br>Latham & Watkins<br>Sears Tower, Suite 5800<br>Chicago, IL 60606<br>*(Counsel to DIP Lender)* |

| | |
|---|---|
| Matthew G. Zaleski, III, Esquire<br>Campbell & Levine<br>800 King Street, Suite 300<br>Wilmington, DE 19801<br>*(Counsel to Personal Injury Committee)* | Scott L. Baena, Esquire<br>Bilzin Sumberg Dunn Baena<br>  Price & Axelrod, LLP<br>First Union Financial Center<br>200 South Biscayne Boulevard, Suite 2500<br>Miami, FL 33131<br>*(Official Committee of Property Damage Claimants)* |
| Philip Bentley, Esquire<br>Kramer Levin Naftalis & Frankel LLP<br>919 Third Avenue<br>New York, NY 10022<br>*(Equity Committee Counsel)* | Elihu Inselbuch, Esquire<br>Rita Tobin, Esquire<br>Caplin & Drysdale, Chartered<br>399 Park Avenue, 27th Floor<br>New York, NY 10022<br>*(Official Committee of Personal Injury Claimants)* |
| Teresa K.D. Currier, Esquire<br>Klett, Rooney, Lieber & Schorling<br>1000 West Street, Suite 1410<br>Wilmington, DE 19801<br>*(Equity Committee Counsel)* | Peter Van N. Lockwood, Esquire<br>Julie W. Davis, Esquire<br>Trevor W. Swett, III, Esquire<br>Nathan D. Finch, Esquire<br>Caplin & Drysdale, Chartered<br>One Thomas Circle, N.W.<br>Washington, DC 20005<br>*(Official Committee of Personal Injury Claimants)* |
| Frank J. Perch, Esquire<br>Office of the United States Trustee<br>844 King Street, Room 2313<br>Lockbox 35<br>Wilmington, DE 19801<br>*(United States Trustee)* | Mark D. Collins, Esquire<br>Deborah E. Spivack, Esquire<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>P.O. Box 551<br>Wilmington, DE 19899<br>*(Counsel for The Chase Manhattan Bank)* |