IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., <u>et al.</u>, | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

**Claimants' Reply to W.R. Grace's Response to Claimants' Motion for Summary Judgment**

Darrell W. Scott, Esq.
Burke D. Jackowich, Esq.
Lukins & Annis, PS
717 W. Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Facsimile: (509) 747-2323
ADDITIONAL SPECIAL COUNSEL

Edward J. Westbrook, Esq.
Robert M. Turkewitz, Esq.
James L. Ward, Esq.
Robert S. Wood, Esq.
Richardson, Patrick, Westbrook & Brickman
1037 Chuck Dawley Blvd., Building A
Mount Pleasant, SC 29464
Telephone: (843) 727-6513
Facsimile: (843) 727-6688
ZAI CLAIMANTS' SPECIAL COUNSEL

William D. Sullivan, Esq.
Charles Brown, Esq.
Eluzufon Auston Reardon Tarlov & Mondell
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, DE 19899
Telephone: (302) 428-3181
Facsimile: (302) 777-7244
COUNSEL FOR THE ZONOLITE CLAIMANTS,
BARBANTI, BUSCH, PREBIL, AND PRICE

Dated: August 18, 2003

# TABLE OF CONTENTS

| | | |
|---|---|---:|
| INTRODUCTION | | 1 |
| ARGUMENT | | 1 |
| I. | Claimants Have Met Their Burden of Proving Property Damage | 1 |
| II. | The Epidemiological Evidence Relied on by Grace Does Not Support Its Case | 3 |
| III. | Grace's Reliance on the Versar Study is Misplaced | 4 |
| IV. | Claimants Have Demonstrated Increased Risk of Asbestos-Related Disease from ZAI Using Grace's Risk Assessment | 4 |
| V. | Grace Ignores the Lifetime Exposure Evidence From the Contractor Depositions | 5 |
| VI. | Grace's Historical Testing is Further Evidence of the Risks of ZAI Exposure | 6 |
| VII. | The Harashe Result and Grace's Prior ZAI Bodily Injury Settlements Provide Further Proof of the Risks of ZAI Exposure | 8 |
| VIII. | Grace Continues to Cling to Dr. Lee Unsupported Opinion in the Face of Unanimous Opposition | 8 |
| IX. | EPA Agrees That Exposure to ZAI Poses a Health Risk | 9 |
| XI. | Grace's Opposition to a Claims Facility May Be Both Shortsighted and Impede An Effective Reorganization | 9 |
| CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

**CASES**

1. 80 S. Eighth St. Ltd. P'ship v. Cary-Canada, Inc.,
   486 N.W.2d 393 (Minn. 1992).................................................................... 2

2. 3250 Wilshire Blvd. Bldg. v. W.R. Grace & Co.,
   No. CV 87-6048-WMB, 1989 WL 260222 (C.D. Cal. July 24, 1989).................. 3

3. City of Greenville v. W.R. Grace & Co.,
   827 F.2d 975 (4th Cir. 1987) .................................................................... 1

4. Commonwealth v. United States Mineral Prods. Co.,
   809 A.2d 1000 (Pa. Commw. Ct. 2002) ...................................................... 2

5. Harashe v. Flintkote Co.,
   848 S.W.2d 506 (Mo. Ct. App. 1993)......................................................... 5,8

6. In re Armstrong World Indus.,
   No. 00-04471 (RJN) (Bankr. D. Del. Nov. 1, 2002)....................................... 7

7. In re Celotex Corp.,
   196 B.R. 973 (Bankr. M.D. Fla. 1996) ....................................................... 3

8. Perlmutter v. U.S. Gypsum Co.,
   4 F.3d 864 (10th Cir. 1993) ..................................................................... 2

9. School Dist. of Independence, Mo., No. 30 v. U.S. Gypsum Co.,
   750 S.W.2d 442 (Mo. Ct. App. 1988)......................................................... 2

10. Towerridge, Inc. v. T.A.O., Inc.,
    111 F.3d 758 (10th Cir. 1997) ................................................................. 8

12. Uforma/Shelby Bus. Forms, Inc. v. NLRB,
    111 F.3d 1284 (6th Cir. 1997) ................................................................. 8

**STATUTES**

1. 59 Fed. Reg. 40964-01 (Aug. 10, 1994) ..................................................... 7

2. Federal Rule of Evidence 408................................................................... 8

## OTHER AUTHORITIES
1. ATSDR, Year 2000 Med. Testing of Individuals Potentially Exposed to Asbestiform Minerals Associated with Vermiculite in Libby, MT (Aug. 23, 2001) ............. 4

2. EPA, Background: EPA's Pilot Study to Estimate Asbestos Exposure from Vermiculite Attic Insulation (May 21, 2003) ............. 4

3. EPA, "Current Best Practices for Vermiculite Attic Insulation – May 2003" ...... 9

4. Mossman, B.T., et al., Asbestos Scientific Developments and Implications for Public Policy, Science 247:294-301 (Jan. 19, 1990) ............. 3

5. Pinchin Envtl., Final Rep. Site Assessment Vermiculite Removal Bldg. E-12 C.F.B. Shilo, Shilo, Manitoba (Apr. 3, 1997) ............. 7

6. Versar, Inc., Final Draft: Pilot Study to Estimate Asbestos Exposure from Vermiculite Attic Insulation (May 21, 2003) ............. 4

## INTRODUCTION

Like ships passing in the night, Grace's opposition brief ignores twenty years of asbestos property damage precedent and proposes a new standard of proof never accepted by any property damage court; i.e., whether ZAI "doubles the homeowner's risk of asbestos-related disease".[1] The appropriate issue is whether ZAI's asbestos contamination gives rise to a property damage claim. Under the correct standard, Claimants have established their property damage claims as a matter of law and are entitled to summary judgment.

## ARGUMENT

### I.   Claimants Have Met Their Burden of Proving Property Damage.

Hundreds of asbestos property damage cases have been tried or settled since 1983. They have generated a legion of pre-trial, post-trial and appellate opinions. Although Grace's brief is littered with personal injury opinions, <u>Grace cites no opinion that has ever adopted its proposed standard for asbestos property damage</u>.

There is no issue of material fact that ZAI contaminates homes and creates an unreasonable risk of harm. As the Fourth Circuit noted, even a small risk of harm can be "unreasonable" when asbestos is unnecessary in a product. <u>City of Greenville v. W.R. Grace & Co.</u>, 827 F.2d 975, 979 (4th Cir. 1987). In a property damage case, the key to determining unreasonable risk of harm is "physical contamination from asbestos fiber release". <u>Id.</u> at 978. For two decades, plaintiffs have met this burden by showing asbestos contaminating surfaces (through dust testing) that can increase airborne asbestos levels significantly above background upon disturbance. ZAI amply meets this test. The numerous property damage cases cited in Claimants' opening brief clearly hold that a property

---

[1] Opposition of W.R. Grace & Co. to Claimants' Mot. for Summ. J. at 3 (Aug. 8, 2003) ["Grace Resp. Br."].

damage claimant is not required to prove imminent or certain personal injuries will result from the contamination.[2]

In School Dist. of Independence, Mo., No. 30 v. U.S. Gypsum Co., 750 S.W.2d 442 (Mo. Ct. App. 1988), the defendant argued that "in order to prove unreasonable danger, the School District must prove the level or threshold at which exposure to asbestos in [an asbestos-containing product] actually becomes a health hazard". Id. at 454. This is precisely Grace's argument. The court rejected it, distinguishing between personal injury and property damage cases:

> The School District, however, states a claim for present injury to its property. Although the claim of injury through contamination is related to the increased risk of future harm to building occupants, the School District seeks recovery for present injury to its property, not for future personal injuries.

Id. at 454-55.

Likewise, Grace's argument that a claimant must show asbestos levels above occupational standards is simply wrong. Grace Resp. Br. at 9. The School Dist. of Independence court expressly held that the jury is not required to measure the degree of risk from the asbestos product "against an external standard as a basis for its determination of whether [the product] was unreasonably dangerous." Id. at 455.[3] Other courts have likewise rejected Grace's argument that airborne asbestos fibers must reach occupational levels to establish contamination. Rather, the key is whether asbestos has been released when it should not be:

> Thus, if it could be shown that the air or other portions of the . . . building were contaminated beyond normally expected levels by the failure of [the asbestos-containing product] to lock in asbestos fibers at the site of the original application

---

[2] See, e.g., Perlmutter v. U.S. Gypsum Co., 4 F.3d 864, 867 (10th Cir. 1993) (affirming jury verdict on property damage claim where plaintiffs did not "assert that anyone has been physically injured by the presence of the [asbestos-containing] product"); 80 S. Eighth St. Ltd. P'ship v. Carey-Canada, Inc., 486 N.W.2d 393, 398 (Minn. 1992) (building owner need not wait "for an occupant or user of the building to develop an asbestos related injury" to recover for property damage); Commonwealth v. United States Mineral Prods. Co., 809 A.2d 1000, 1020 (Pa. Commw. Ct. 2002) (rejecting defendants' contention that a property damage plaintiff must present a statistical or epidemiological analysis of the risk associated with a toxic substance).

[3] The court noted that the concept of unreasonable danger is given content by the jury's "'applying their collective intelligence and experience to the broad evidentiary spectrum of facts and circumstances presented by the parties.'" Id. at 455 (citations omitted).

> of the product, the plaintiffs would be entitled to the costs of abatement plus loss
> of use or the diminution in value of the property, whichever is less.

3250 Wilshire Blvd. Bldg v. W.R. Grace & Co., No. CV 87-6048-WMB, 1989 WL 260222 at *4 (C.D. Cal. July 24, 1989) [Attach. 1]; see also In re Celotex Corp., 196 B.R. 973, 1010 (Bankr. M.D. Fla. 1996) (a building owner "does not have to establish the release of asbestos fibers rose to a specific level" to prove property damage). There is no dispute that ZAI disturbance increases asbestos levels by orders of magnitude above the expected background.[4]

Claimants have established that ZAI in their homes results in physical contamination. The air and settled dust testing results definitively establish that asbestos fibers have been released from ZAI and will continue to be released upon subsequent disturbances. These asbestos fibers create an increased risk of harm to ZAI homeowners. Claimants have met their burden of proving property damage as a matter of law and are entitled to summary judgment.

## II. The Epidemiological Evidence Relied on by Grace Does Not Support Its Case.

Even though epidemiological evidence is not a prerequisite to property damage recovery, Grace continues its futile criticism of the absence of such evidence. Tellingly, the only epidemiological study relied upon by Grace does not support its case. Grace contends that the ATSDR Libby study "found no association between asbestos disease and living in a home with ZAI or having 'handled' ZAI." Grace Resp. Br. at 4. Grace overstates the significance of this statement. The failure to find an association is not the same as concluding no association exists. It simply means the study could not determine an association. Epidemiological studies often cannot determine an association because competing factors obscure any possible association. In the ASTDR study, the Libby residents had too many other asbestos exposure pathways to separate out their ZAI exposure.

---

[4] One of Grace's experts published a background level for asbestos in indoor air of 0.0007 f/cc in a building with damaged asbestos. B.T. Mossman, et al., Asbestos Scientific Developments and Implications for Public Policy, Science 247:294-301 (Jan. 19, 1990) [Attach. 2]. ZAI disturbance can result in levels of 16 f/cc or more, over a 22,000 fold increase.

- 3 -

Even so, the study concludes that the odds ratios for those who "handled vermiculite insulation" showed a "statistically significant elevation" of disease risk.[5] The study is of no help to Grace.

### III. Grace's Reliance on the Versar Study is Misplaced.

Grace has twisted the meaning of a single sentence from an EPA summary of the Versar Report to support its argument. The summary simply states that "[a]dditional studies are needed to better understand any potential risks" from ZAI.[6] Grace's distorted interpretation of this sentence is that there are no risks from ZAI. Grace Resp. Br. at 19. But the Versar Report explains that additional studies are needed, not because its testing proved no risk from ZAI, but because it had conducted its in-place simulation in a home whose vermiculite had no detectable asbestos:

> No detectable amount of actinolite/tremolite was found in the vermiculite in the [only house where simulations were conducted]. According to the bulk sampling of vermiculite attic insulation in the 5 occupied [houses where simulations were not conducted], the asbestos content in vermiculite may be as high as 2 percent. It therefore appears necessary that more simulations with vermiculite containing higher asbestos contents are necessary to assess the upper range of cancer risks associated with residential use of vermiculite attic insulation.[7]

In stark contrast to Grace's interpretation, and after considering other testing Versar did under laboratory conditions, the EPA summary concludes that disturbed ZAI "<u>can create a potential exposure risk to consumers</u>." EPA Summ. at 2 (emphasis added). Clearly, Grace's interpretation that the Versar Report demonstrates the absence of risk from disturbing ZAI is a misstatement of the study's conclusions.

### IV. Claimants Have Demonstrated Increased Risk of Asbestos-Related Disease From ZAI Using Grace's Risk Assessment.

As Claimants have repeatedly made clear in this and prior briefs, no risk assessment or "doubling risk" is necessary to prove property contamination. Grace nevertheless continues its

---

[5] ATSDR, Year 2000 Med. Testing of Individuals Potentially Exposed to Asbestiform Minerals Associated with Vermiculite in Libby, MT at 17, 23 (Aug. 23, 2001) [Attach. 3].

[6] EPA, Background: EPA's Pilot Study to Estimate Asbestos Exposure from Vermiculite Attic Insulation at 2 (May 21, 2003) ("EPA Summ.") [Attach. 4].

[7] Versar, Inc., Final Draft: Pilot Study to Estimate Asbestos Exposure from Vermiculite Attic Insulation § 6.2, at 40-41 (May 21, 2003) [Attach. 5].

- 4 -

myopic focus on risk assessment. If risk assessment were relevant, Grace's risk assessment amply proves significantly increased risk by demonstrating numerous estimated risks greater than EPA's preferred one in a million risk.[8] Further, by simply correcting the number of ZAI homes and total homes to more accurate numbers, Grace's risk assessment formula demonstrates an aggregate risk to a ZAI-exposed contractor of nearly 1 in 1000[9] -- a risk one thousand times EPA's preferred risk. Using Grace's risk assessment formula, Claimants have also calculated an estimated risk of 44 times EPA's preferred 1 in 1,000,000 risk for a homeowner who conducts a once-in-a-lifetime full ZAI removal.[10] Grace's own risk assessment formula demonstrates significant risks that cannot be ignored.

V.  **Grace Ignores the Lifetime Exposure Evidence From the Contractor Depositions.**

Glaringly omitted from Grace's brief is any discussion of contractor ZAI exposure. Grace focuses solely on "homeowner" exposure. It claims ZAI exposures, even if high, are acceptable to its expert, Dr. Corn, (and presumably should be to the Court) because a homeowner will only renovate or remove ZAI once in his or her lifetime.[11] Grace Resp. Br. at 22-23. Grace ignores the testimony of a contractor who described his work around ZAI and his knowledge that other contractors are regularly exposed to ZAI for significant periods.[12] Grace's medical expert and the industrial hygienist who supervised Grace's ZAI simulation study admitted they would be concerned about the health risks to

---

[8] Elizabeth L. Anderson, Assessment of the Potential Risks to Homeowners and Residential Contractors From Asbestos Exposure Associated With Vermiculite Attic Insulation at 41-43, Tables V-6, V-7, V-8 (Apr. 14, 2003) [Attach. 6].

[9] See Revised Table E-9 [Attach. 7].

[10] See Estimated Risks Not Calculated by Dr. Anderson: Activity #5/Removing VAI [Attach. 8].

[11] Claimants do not believe homeowners will agree to be Dr. Corn's guinea pigs and breathe millions of asbestos fibers on Dr. Corn's assurance, especially when short-term ZAI exposure has already been ruled a cause of death. See Harashe v. Flintkote Co., 848 S.W.2d 506 (Mo. Ct. App. 1993).

[12] See Deposition of Kevin Kalman at 45, 91 (Feb. 26, 2003) [Attach. 9]; see also Deposition of Ralph Mold at 21-22, 24-27, 62-65, 71-81 (Feb. 28, 2003) (describing his exposure to ZAI during renovations) [Attach. 10].

a contractor regularly exposed to the levels detected in Claimants' ZAI disturbance simulations.[13] If Grace wants to focus on risk, it cannot ignore these significant, foreseeable exposures.

## VI. Grace's Historical Testing is Further Evidence of the Risks of ZAI Exposure.

Grace continues to attack its own historical testing of ZAI fiber release, now claiming those tests were conducted on "experimental products" rather than "finished ZAI". Grace Resp. Br. at 17. Grace's argument is nonsensical, because the exposure levels during testing on the so-called "experimental" products (many of which were coated with a binder) were often <u>lower</u> than the levels from the commercial ZAI tests, but still elevated. Indeed, the "experimental" products were never marketed because they did not significantly reduce the asbestos hazard of commercial ZAI.[14] The "experimental" product tests simply demonstrate that Grace could not eliminate unacceptable fiber release despite manipulating the product. Both "experimental" and "commercial" ZAI testing showed the product had an inherent defect that Grace never could correct.

Grace also contends that its test results are inapplicable because they do not reflect time weighted average exposures. Grace Resp. Br. at 17. This is factually incorrect and medically irrelevant. It is factually incorrect because numerous Grace ZAI tests resulted in fiber releases exceeding the current OSHA time weighted average limit of 0.1 f/cc.[15] Many would also exceed today's ceiling limit of 1 f/cc (30-minute exposure). It is medically irrelevant because there is no known safe level of asbestos exposure. High level exposures, even if brief, contribute to disease potential.

---

[13] Deposition of William Hughson at 175-80 (June 6, 2003) [Attach. 11]; Deposition of Steven Mlynarek at 152-56 (June 19, 2003) [Attach. 12].

[14] See Memo from J.H. Wilson to G.E. Hall, et al., at 4 (Sept. 30, 1980) [Attach. 13].

[15] See, e.g., Fred Eaton, Tremolite Reduction Program Progress Report Summ. (Oct. 17, 1979) [Attach. 14]. All but one of the 146 ZAI attic test results attached to this ZAI test summary exceed 0.1 f/cc on a time weighted average basis. Moreover, these results are artificially low because they incorrectly assume installation took only two hours.

Recognizing that ZAI can release enormous numbers of asbestos fibers that exceed the OSHA eight-hour limit for contractors, as well as the "ceiling limit" for individuals exposed for shorter periods,[16] Grace next claims that regulatory limits should be ignored as overly protective.[17] Grace Resp. Br. at 11. On the contrary, OSHA recognizes that its standard still leaves "significant risk". 59 Fed. Reg. 40964-01, 40967 (Aug. 10, 1994). Its standard was a political compromise, not a safe level. Indeed, Judge Newsome recognized in the Armstrong case that if air levels ever exceed the OSHA standard (or any other regulatory standard), a claimant has certainly established a property damage case:

> It would seem to me at the very least ... if in fact there is quantity of asbestos in the air as established by air testing samples that exceeds any governmental compliance, I think at that point you've proven your case.[18]

Judge Newsome elaborated that while lower air levels could also establish property damage, exceeding any regulatory level was the "per se" case for a successful claim.[19]

Grace next claims that a fully informed CPSC let Grace continue selling ZAI in the 1980s, so all must have been well. Grace Resp. Br. at 14-15. This is a classic bootstrap argument. Grace duped the CPSC by: (1) promoting ZAI as having a miniscule asbestos weight percent that was both factually wrong and against the advice of its general counsel; (2) using unsanctioned "discriminatory

---

[16] The OSHA standard prohibits airborne fiber concentrations in excess of 0.1 f/cc (greater than 5 microns over an eight-hour time weighted average) and exposures above 1 f/cc (greater than 5 microns over any 30-minute period) measured by phase contrast microscopy. Grace testing showed exposures above both limits, i.e. up to 2.84 f/cc (8-hour TWA) and 11.35 f/cc. See Eaton, supra note 13. This is consistent with testing by the Canadian Government and Claimants. For example, ZAI testing by the Canadian Government showed levels of up to 0.21 f/cc (8-hour TWA) and 2.27 f/cc (30-minute TWA). Pinchin Envtl., Final Rep. Site Assessment Vermiculite Removal Bldg. E-12 C.F.B. Shilo, Shilo, Manitoba at App. II (Apr. 3, 1997) [Attach. 15]. Testing by Claimants showed fiber levels of up to 0.93 f/cc (8-hour TWA) and 14.4 f/cc (31-minute sample). William M. Ewing, Zonolite Attic Insulation Rep., Attach. 2, at 13-14 (Mar. 19, 2003) ("Ewing Rep.") [Attach. 16].

[17] The OSHA limit does not apply to homeowners, but only to fully informed workers. Thus, Grace's argument on OSHA airborne levels is inapplicable to homeowners.

[18] In re Armstrong World Indus., No. 00-04471 (RJN), Tr. at 16-17 (Bankr. D. Del. Nov. 1, 2002) [Attach. 17].

[19] Id. at 18. While Claimants respectfully disagree with the Armstrong ruling that air testing determines property damage (contrary to twenty years of precedent), they cite Armstrong to show that even under its test they have established their claims. The Armstrong ruling was in the process of being appealed by the Armstrong Claimants when Armstrong settled their claims at Judge Newsome's suggestion.

counting" to artificially reduce ZAI fiber counts; (3) dividing those counts by four (claiming nobody installed ZAI for more than two hours when its testing showed otherwise); and (4) falsely representing there would never be further exposure (based on air monitoring in quiet attics some months after ZAI installation). Grace shows remarkable chutzpah in asserting that CPSC's acceptance of its subterfuge gives ZAI a clean bill of health.

### VII. The Harashe Result and Grace's Prior ZAI Bodily Injury Settlements Provide Further Proof of the Risks of ZAI Exposure.

Try as it might, Grace cannot escape the import of the Harashe decision. Despite Grace's arguments at trial, a competent jury found that the plaintiff's mesothelioma resulted from brief exposure to ZAI. The appellate court refused to disturb this verdict, finding ample evidence to support the jury's conclusion. This Court can take judicial notice of the Harashe decision as further proof of the risks of ZAI exposure. Likewise, this Court should weigh heavily Grace's admission that it has settled 25 to 100 ZAI bodily injury claims rather than face other juries on the ZAI issue.[20] Remarkably, Grace refused to respond to discovery about Harashe and the settled ZAI claims on the ground that personal injury was irrelevant to this case.[21] Yet Grace now seeks to force Claimants to prove that ZAI doubles the risk of asbestos-related disease. Grace should not be allowed to withhold this evidence and rely on its absence to support its case.

### VIII. Grace Continues to Cling to Dr. Lee's Unsupported Opinion in the Face of Unanimous Opposition.

Grace continues to assert that Claimants have improperly counted non-asbestiform cleavage fragments as asbestiform fibers. Grace Resp. Br. at 6-8. As thoroughly discussed in Claimants' Lee

---

[20] Federal Rule of Evidence 408 does not bar the admissibility of this admission. The "general principle" is that "'Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim.'" Uforma/Shelby Bus. Forms, Inc. v. NLRB, 111 F.3d 1284, 1293-94 (6th Cir. 1997) (citations omitted); see also Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 770 (10th Cir. 1997) ("Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated.").

[21] See Debtors' Objections and Resps. to ZAI Claimants' Second Set of Reqs. to Admit to Debtors (Dec. 19, 2002) [Attach. 18]; Debtors' Answers and Objections to ZAI Claimants' First Set of Interrogs. to Debtors (Aug. 26, 2002) [Attach. 19].

counting" to artificially reduce ZAI fiber counts; (3) dividing those counts by four (claiming nobody installed ZAI for more than two hours when its testing showed otherwise); and (4) falsely representing there would never be further exposure (based on air monitoring in quiet attics some months after ZAI installation). Grace shows remarkable chutzpah in asserting that CPSC's acceptance of its subterfuge gives ZAI a clean bill of health.

### VII. The Harashe Result and Grace's Prior ZAI Bodily Injury Settlements Provide Further Proof of the Risks of ZAI Exposure.

Try as it might, Grace cannot escape the import of the Harashe decision. Despite Grace's arguments at trial, a competent jury found that the plaintiff's mesothelioma resulted from brief exposure to ZAI. The appellate court refused to disturb this verdict, finding ample evidence to support the jury's conclusion. This Court can take judicial notice of the Harashe decision as further proof of the risks of ZAI exposure. Likewise, this Court should weigh heavily Grace's admission that it has settled 25 to 100 ZAI bodily injury claims rather than face other juries on the ZAI issue.[20] Remarkably, Grace refused to respond to discovery about Harashe and the settled ZAI claims on the ground that personal injury was irrelevant to this case.[21] Yet Grace now seeks to force Claimants to prove that ZAI doubles the risk of asbestos-related disease. Grace should not be allowed to withhold this evidence and rely on its absence to support its case.

### VIII. Grace Continues to Cling to Dr. Lee's Unsupported Opinion in the Face of Unanimous Opposition.

Grace continues to assert that Claimants have improperly counted non-asbestiform cleavage fragments as asbestiform fibers. Grace Resp. Br. at 6-8. As thoroughly discussed in Claimants' Lee

---

[20] Federal Rule of Evidence 408 does not bar the admissibility of this admission. The "general principle" is that "'Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim.'" Uforma/Shelby Bus. Forms, Inc. v. NLRB, 111 F.3d 1284, 1293-94 (6th Cir. 1997) (citations omitted); see also Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 770 (10th Cir. 1997) ("Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated.").

[21] See Debtors' Objections and Resps. to ZAI Claimants' Second Set of Reqs. to Admit to Debtors (Dec. 19, 2002) [Attach. 18]; Debtors' Answers and Objections to ZAI Claimants' First Set of Interrogs. to Debtors (Aug. 26, 2002) [Attach. 19].

motion, Dr. Lee's opinions are scientifically unreliable and should be rejected. Since Claimants filed their opening brief, the Justice Department and EPA have stated the official position of the United States that Dr. Lee's opinions are unscientific.[22] As the United States' brief reiterates, the fiber counting methods employed by Claimants' experts are scientifically valid and reliable.

IX.   **EPA Agrees That Exposure to ZAI Poses a Health Risk.**

Finally, citing dated sources, Grace contends that EPA has affirmatively stated that ZAI does not pose a health risk. Grace Resp. Br. at 18-19. In light of EPA's recent nationwide warning that ZAI should be "left undisturbed in your attic",[23] it is obvious that EPA has concluded ZAI poses an increased health risk, and Grace's incredulous argument should be afforded no weight.[24]

X.   **Grace's Opposition to a Claims Facility May Be Both Shortsighted and Impede An Effective Reorganization.**

Rather than simply addressing the problem with ZAI in homes, Claimants offered a solution – a claims facility modeled on other bankruptcies to compensate homeowners who need to remove ZAI during renovation, before demolition or in other appropriate circumstances. Grace opposes this, preferring to have all ZAI homeowners come forward to file proofs of claim that would then presumably be contested one by one.

While Grace's approach is another way to address the issue, Claimants believe that their facility suggestion merits careful consideration. Grace's suggestion could embroil the Court in years

---

[22] See United States' Statement Regarding Asbestos Analysis Issues in W.R. Grace's Motion for Summary Judgment and Claimants' Motion to Exclude Dr. R.J. Lee's Opinion on Cleavage Fragments at 3-10 (Aug. 7, 2003).

[23] EPA, "Current Best Practices for Vermiculite Attic Insulation – May 2003" ("If you removed or disturbed the insulation, it is possible that you inhaled some asbestos fibers. Also the disturbance may have resulted in the fibers being deposited into other areas of the home. Exposure to asbestos increases your risk of developing lung disease.") [Attach. 20].

[24] Grace, itself, would have warned consumers of the dangers of exposure to ZAI had it not been more concerned with preserving its profits from ZAI sales. See R. H. Locke Binder Dev. Program (May 17, 1976) ("It is believed that product labeling would have a serious, adverse, and irreversible effect upon customer acceptance of our products.") [Attach. 21]; Memo from E.S. Wood to C.E. Brookes, et al., at 15 (May 24, 1977) ("We believe that a decision to affix asbestos warning labels to our products would result in substantial sales losses.") [Attach. 22].

of claims adjudication. Claimants' suggestion would allow Grace's reorganization to proceed with ZAI claims processing assigned to experienced professionals. Mediation and arbitration could streamline the claims facility operations. While Grace's suggestion could overwhelm the bankruptcy with millions of claims for immediate compensation, Claimants' proposal would address compensation needs as they arose. Under Claimants' proposal, no ZAI homeowner would be required to live with ZAI, but homeowners would not be required to rush to rip all ZAI out to meet some artificial claims deadline. While the details of the ultimate solution are still to be worked out, a good faith effort by both sides should be able to solve this problem.

## CONCLUSION

There is no issue of material fact that ZAI releases asbestos fibers upon disturbance, resulting in physical contamination of ZAI homes. These asbestos fibers create an increased risk of harm to occupants of these homes. Claimants, therefore, have met their burden of proving property damage as a matter of law. Accordingly, Claimants request an Order granting them summary judgment.

RESPECTFULLY SUBMITTED,

*[signature]*

Edward J. Westbrook, Esq.
Robert M. Turkewitz, Esq.
James L. Ward, Jr., Esq.
Robert S. Wood, Esq.
Richardson, Patrick, Westbrook & Brickman
1037 Chuck Dawley Blvd, Building A
Mount Pleasant, SC 29464
Tel. (843) 727-6513
ZAI CLAIMANTS' SPECIAL COUNSEL

William D. Sullivan, Esq.
Elzufon Auston Reardon Tarlov & Mondell
300 Delaware Avenue, Suite 1700
P. O. Box 1630
Wilmington, DE 19899
Telephone: (302) 428-3181
COUNSEL FOR THE ZONOLITE CLAIMANTS

Darrell W. Scott, Esq.
Burke D. Jackowich, Esq.
Lukins & Annis PS
717 W. Sprague Ave. Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
ADDITIONAL SPECIAL COUNSEL

Dated: August ___, 2003

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Claimants' Reply to W.R. Grace's Response to Claimants' Motion for Summary Judgment and Claimants' Reply to W.R. Grace's Response to Claimants' Motion to Exclude Dr. R.J. Lee's Opinions on Cleavage Fragments have been served upon the following counsel of record by Federal Express Overnight Mail this 18th day of August, 2003:

Laura Davis Jones, Esquire
David Carickoff, Esquire
Pachulski, Stang, Ziehl, Young & Jones
919 North Market Street, 16th Floor
Wilmington, DE 19899-8705
*(Counsel to Debtors and Debtors-in-Possession)*

David Bernick, Esquire
James Kapp, III, Esquire
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601
*(Counsel to Debtor)*

Mark D. Collins, Esquire
Deborah E. Spivack, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
*(Counsel for The Chase Manhattan Bank)*

Michael R. Lastowski, Esquire
Duane Morris & Heckscher LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
*(Counsel to Official Committee of Unsecured Creditors)*

Michael B. Joseph, Esquire
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
*(Counsel for Property Damage Claimants)*

Hamid R. Rafatjoo, Esquire
Pachulski, Stang, Ziehl, Young & Jones
10100 Santa Monica Boulevard
Los Angeles, CA 90067-4100
*(Counsel to Debtors and Debtors-in-Possession)*

James J. Restivo, Jr., Esquire
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219-1886
*(Counsel to Debtor)*

David B. Seigel
W.R. Grace and Co.
7500 Grace Drive
Columbia, MD 21044
*(Debtor)*

Lewis Kruger, Esquire
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982
*(Counsel to Official Committee of Unsecured Creditors)*

J. Douglas Bacon, Esquire
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL 60606
*(Counsel to DIP Lender)*

Matthew G. Zaleski, III, Esquire
Campbell & Levine
800 King Street, Suite 300
Wilmington, DE 19801
*(Counsel to Personal Injury Committee)*

Philip Bentley, Esquire
Kramer Levin Naftalis & Frankel LLP
919 Third Avenue
New York, NY 10022
*(Equity Committee Counsel)*

Teresa K.D. Currier, Esquire
Klett, Rooney, Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801
*(Equity Committee Counsel)*

Scott L. Baena, Esquire
Bilzin Sumberg Dunn Baena
   Price & Axelrod, LLP
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131
*(Official Committee of Property Damage Claimants)*

Elihu Inselbuch, Esquire
Rita Tobin, Esquire
Caplin & Drysdale, Chartered
399 Park Avenue, 27th Floor
New York, NY 10022
*(Official Committee of Personal Injury Claimants)*

Peter Van N. Lockwood, Esquire
Julie W. Davis, Esquire
Trevor W. Swett, III, Esquire
Nathan D. Finch, Esquire
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005
*(Official Committee of Personal Injury Claimants)*

Frank J. Perch, Esquire
Office of the United States Trustee
844 King Street, Room 2313
Lockbox 35
Wilmington, DE 19801
*(United States Trustee)*

By: /s/ Kim Leavitt
Richardson, Patrick, Westbrook & Brickman, LLC