IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | | RE: DOCKET NOS. 4012 & 4202 |

## REPLY IN SUPPORT OF DEBTORS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ANY ALLEGED DAMAGES FROM THE ZAI SCIENCE TRIAL

Claimants' assertion that this Court sought to adjudicate the "science of real estate valuation" in these proceedings is not credible. Neither this Court's Orders of October 21, 2002 and November 25, 2002 (describing the scope of the Science Trial), nor this Court's statements during the hearings leading up to the issuance of those Orders gave any indication that the Science Trial was to involve dueling real estate appraisers. Quite to the contrary, this Court indicated that before hearing damages evidence, it first sought to determine the threshold issue of whether Claimants could prove that ZAI poses a hazard to people. Claimants' manipulation of this Court's Orders to now argue that the Science Trial should involve whether ZAI creates an

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

unreasonable risk of harm <u>to real property values</u> is improper.

Claimants have repeatedly and erroneously argued that they need not prove that ZAI poses an unreasonable risk of harm to human health because, Debtors submit, they cannot do so.[2] In the instant response to Debtors' motion *in limine*, Claimants' attempted escape involves the "important" principle of real estate valuation known as "intuitive toxicology." *See* Response of ZAI Claimants to Debtors' Motion In Limine to Exclude Evidence of Any Alleged Damages from the ZAI Science Trial ("Claimants' Response") at 9. In other words, Claimants contend that they merely need to show that people in the general population think that ZAI is hazardous, even if it is not, in order to prevail here. This Court should preclude Claimants from converting the Science Trial, a proceeding narrowly designed to address the hard science regarding whether ZAI poses an unreasonable risk of harm to people, to a trial of public opinion.

More particularly, this Court should exclude any evidence of damages proffered by Claimants, preclude Claimants' real estate valuation expert from testifying in any necessary Science Trial, and strike all references to his report that appear in Claimants' moving and/or opposition papers.

---

[2] *See* Zonolite Attic Insulation Claimants' Memorandum in Support of Motion for Partial Summary Judgment Re: W.R. Grace's Consumer Protection Liability ("CPA Motion") at 12, 15. Debtors have refuted these arguments at length in their prior briefs which are incorporated herein by reference. *See* Grace's Memorandum In Opposition to ZAI Claimants' Motion For Partial Summary Judgment Regarding Consumer Protection Act Claims ("Grace's CPA Opposition"); Brief of W.R. Grace & Co. in Support of Motion for Summary Judgment ("Grace's Summary Judgment Brief").

I.      **Claimants' Proffer Of An Expert Real Estate Appraiser Is Contrary To The Court's Direction For The Science Trial.**

1.      This Court's Orders of October 21 and November 25, 2002, provide "that the scope of discovery will be limited to what science demonstrates with regard to whether ZAI creates an unreasonable risk of harm." Claimants assert that the issue is whether "ZAI poses an unreasonable risk of harming real property values." Claimants' Response at 1 (emphasis added). Claimants fail to cite any indication or even suggestion by the Court that it sought to hear property valuation testimony in the Science Trial.[3] More importantly, Claimants ignore the Court's clarifications regarding what was and was not to be tried in the Science Trial.

2.      In a hearing prior to the entry of the Court's October 21 Order, Claimants' counsel complained (in arguing to compel discovery) that Grace was trying to push the case "to a quasi personal injury claim." September 23, 2002 Hearing Transcript, at 84.[4] The Court responded that:

> Number one, yes, you're going to have to show me that there is some hazardous contamination. Now, what makes it hazardous? The fact that it's going to either be hazardous to the environment or to the people who live in the home or something. There has to be a hazard. If there is no hazard, there is no claim.
>
> As I understood what has taken place, not by way of evidence, just by discussion here, the contention is that attic insulation is hazardous because if it's disturbed, people breathe it, and when they breathe it, there is a likelihood that they could ingest an asbestos fiber which could cause a disease. Not that it's hazardous just because it's sitting in an attic, but because somebody is going to be eventually injured by virtue of the fact that it's in their home.

---

[3] Claimants' several citations to the voluminous record of hearings pre-dating the Court's Orders on the scope of the Science Trial merely confirm that the Court sought a narrow, focused trial and did not wish to address damages issues.

[4] Relevant portions of the September 23, 2002 Hearing Transcript are attached hereto as Exhibit A.

> So, the contamination may have to be remediated somehow in order to eliminate that hazard. But you have to, I think, show me that there is a way that there is going to be asbestos fibers that are somehow going to pose a hazard to somebody or else it's not going to be a hazard. Id. at 84-85.

3.  Claimants cannot credibly argue that they did not have notice of this Court's intention to focus the Science Trial on whether ZAI poses an unreasonable risk of harm to human health.

4.  Nor can Claimants contend that they reasonably believed the Science Trial would involve damages issues, including impact on property values. In arguing that the Science Trial order should focus on whether there is an unreasonable risk of harm, Debtors' counsel cited a provision of Claimants' proposed order addressing "impact on property values"[5] as one example of where Claimants were attempting to go well beyond the central issue for the Science Trial. July 22, 2002 Hearing Transcript, at 84-86.[6] In response, the Court indicated that it would enter the order it eventually entered on October 21, 2002 and rejected Claimants' proposed order, explaining that:

> I don't think we want to go to damages. And I don't think we want to go to state statute liability at this point. That will obviously be necessary at some point if there is some scientific evidence that asbestos fibers in Zonolite products do pose an unreasonable risk of harm. But I really want to limit this trial to that issue. That's number one.
>
> Number two, the budget I'm keeping your feet to the fire on probably isn't going to support much more than that anyway.[7]

---

[5] A copy of Claimants' proposed order regarding the scope of the Science Trial is attached hereto as Exhibit B.

[6] Relevant portions of the July 22, 2002 Hearing Transcript are attached hereto as Exhibit C.

[7] The Court also indicated that it would permit Claimants to re-raise the issue if the ruling on scope prompted a discovery dispute. Claimants did so at the September 23, 2002 hearing. As set forth above, the Court then confirmed an intention to keep the Science Trial focused on the unreasonable risk of harm to human health. *See* September 23, 2002 Hearing Transcript, Exhibit A.

July 22, 2002 Hearing Transcript, at 85-86 (Exhibit C).

5.  Now, just over one year later, Claimants seek to take the Science Trial precisely where the Court instructed it should not go – to damages and state statute liability issues.[8] They do so without ever having sought leave of Court to broaden the Science Trial. Unfortunately, they have already wasted substantial portions of their budget. More importantly to the Debtors, they have caused the Debtors to incur the substantial costs of deposing Claimants' valuation expert (to confirm his testimony would not be germane to the Science Trial), responding to Claimants' CPA Motion, making the instant motion *in limine* and preparing this reply, all to address issues not intended for the Science Trial.

6.  Debtors request that the Court grant their motion *in limine* and put an end to what has become an expensive sideshow to the Science Trial.

## II. Claimants' Real Estate Valuation Expert Cannot Establish The Causation They Otherwise Lack.

7.  Mindful that damages evidence has been excluded from the Science Trial, Claimants argue that the testimony of their real estate valuation expert John Kilpatrick ("Kilpatrick") addresses causation, not damages.[9] Claimants' Response, at 5. Examination of Kilpatrick's purported role as a "causation" witness highlights Claimants' inability to prove

---

[8] Claimants have, of course, improperly filed a motion for partial summary judgment on state statutory consumer protection act claims in the Science Trial, *see* Claimants CPA Motion, and rely here on such claims to justify their submission of property valuation evidence. Claimants' Response, at 2.

[9] Even as to damages, Kilpatrick's purported opinion that ZAI poses an unreasonable risk of harm to property values is without sufficient support under *Daubert* and is therefore inadmissible. He has, for example, done no survey or study concerning ZAI and its effect on the value of residential properties and admits that he is not even aware of any such studies. *See* Kilpatrick Dep., at 17-18, attached as Exhibit D. Claimants' contention that Debtors do not challenge the substance or admissibility of Kilpatrick's testimony, Claimants' Response, at 5, is incorrect.

causation through their other experts, as well as Kilpatrick's own inability to offer any meaningful assistance.

Claimants' Response argues in essence that:

- ZAI contains asbestos fibers.
- ZAI can release asbestos fibers.
- There is no safe level or threshold for exposure to asbestos.
- Therefore, ZAI poses an unreasonable risk of harm.

8.  This basic argument runs throughout Claimants' motions for summary judgment and opposition to Grace's motion for summary judgment. For the reasons set forth more fully in the Debtors' prior briefs,[10] it is fatally flawed. It merely begs the question posed by the Science Trial – does ZAI pose an unreasonable risk of harm – and such elemental questions as how much asbestos is released, what are the duration and frequency of exposures, and whether such exposures pose an unreasonable risk of harm to human health.

9.  Claimants' "no threshold" argument fails because it does not meet the *Daubert* standard and because Claimants' own medical expert concedes that there are levels of exposure to asbestos in ZAI that are not medically significant. Courts have repeatedly rejected Claimants' "no threshold" argument. *See* Grace's Summary Judgment Brief, at 35-38; Grace's Opposition, at 5, 10-11.

---

[10] *See* Grace's Summary Judgment Brief, Opposition of W.R. Grace & Co. to Claimants' Motion for Summary Judgment ("Grace's Opposition") and Grace's CPA Opposition.

10. Because Claimants' medical, industrial hygiene, and microscopy experts cannot establish causation, Claimants turn to Kilpatrick and the "science of real estate valuation" to do so.[11] To Kilpatrick, Claimants' other experts' failure to establish, in their laboratories and through their research and literature searches, that ZAI poses an unreasonable risk of harm to human health is of no consequence. He would testify that this is so because under the "important" real estate valuation principle of "intuitive toxicology," whether the product actually poses a hazard does not matter. Claimants' Response, at 9. "The principle of 'intuitive toxicology' is especially salient where families, as here, are confronted with a toxic substance whose harm is the product of cumulative exposures" and people react "irrespective of the degree of toxicity." Id. People "are not monotonically tuned to the degree of contamination." Id.

11. When pressed about the plain meaning of his expected testimony, Kilpatrick testified as follows:

> Q. And just so I'm clear as to what you're saying, you're saying that it's the perception that can affect the value, not necessarily the health risk?
>
> A. Yes. That's a good generalization.

Kilpatrick Dep., at 36 (Attached as Exhibit D).

12. In short, Claimants argue that they need not prove that ZAI poses an unreasonable risk of harm to homeowners; they need only show that people think it does.[12] This is not and has never been the law. It would improperly render moot both long established principles of law (such as strict liability under the requirements of Section 402A of the

---

[11] Claimants' Response, at 7 n. 9.
[12] Claimants' Response, at 7-10.

Restatement (Second) of Torts and the basic elements of negligence and misrepresentation claims) and the more recent requirements under *Daubert* and its progeny that only scientifically credible and reliable evidence be admissible to prove causation. Admitting Kilpatrick's testimony to prove causation would, in effect, improperly render the remainder of the Science Trial proceedings a charade – a very expensive one involving expert physicians, industrial hygienists, microscopists and biostatisticians.

13. Debtors request that the Court confine the Science Trial to real toxicology rather than "intuitive toxicology" and, for that matter, to real science rather than "intuitive science."

## Conclusion

14. For the reasons set forth above and in the Memorandum in Support of Debtors' Motion In Limine to Exclude Evidence of Any Alleged Damages From the ZAI Science Trial, this Court should: (1) exclude any evidence of alleged damages proffered by ZAI Claimants; (2) preclude Kilpatrick from testifying in the Science Trial; and (3) strike any

*[Remainder of Page Intentionally Left Blank]*

references to Kilpatrick's report that appear in Claimants' moving and/or opposition papers.

Date: August 18, 2003

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

*/s/ Paula A. Galbraith*

Laura Davis Jones (Bar No. 2436)
Scotta E. McFarland (Bar No. 5488)
Paula A. Galbraith (Bar No. 4258)
919 Market Street
Suite 1600
Wilmington, DE 19801
Telephone: 302.652.4100
Facsimile: 302.652.4400

Co-Counsel For Debtors

– and –

REED SMITH, LLP
James J. Restivo, Jr.
Lawrence E. Flatley
Douglas E. Cameron
James W. Bentz
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone: 412.288.3131
Facsimile: 412.288.3063

Special Asbestos Counsel For Debtors