IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Objection Deadline: September 5, 2003
Hearing Date: September 22, 2003 at noon

**APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 327(A) AND 328(A) AND FED. R. BANKR. P. 2014(A), 2016 AND 5002 AUTHORIZING, BUT NOT REQUIRING, THE EMPLOYMENT AND RETENTION OF STATE STREET BANK AND TRUST COMPANY TO ACT AS INVESTMENT MANAGER AND FIDUCIARY OF THE GRACE STOCK WITHIN THE GRACE SAVINGS & INVESTMENT PLAN**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this application (this "Application") for an order pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Fed. R. Bankr. P. 2014(a) and 2016 authorizing, but not requiring, the Debtors to retain State Street Bank and Trust Company ("State Street") as investment manager and fiduciary of the stock of W. R. Grace & Co. ("Grace Stock") held by the trust (the "Trust") funding the W. R. Grace & Co.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

("Grace") Savings & Investment Plan (the "Savings Plan"), as of a date determined by the Debtors. In support of this Application, the Debtors respectfully state as follows:

## Jurisdiction

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O). Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is section 327(a) of the Bankruptcy Code and Fed. R. Bank. P. 2014(a).

## Background

2. On April 2, 2001 (the "Petition Date"), each of the Debtors in these chapter 11 cases filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

## Relief Requested

3. By this Application, the Debtors seek to employ and retain State Street pursuant to section 327 and 328 of the Bankruptcy Code during the Chapter 11 Cases, to serve as the investment manager and fiduciary of Grace Stock held by the Trust funding the Savings Plan (the "Fiduciary Services"), as more fully described below.

4. The Debtors believe that such Fiduciary Services (as described more fully below) are necessary to enable the Debtors to maximize the value of their estates and to reorganize successfully. State Street has indicated a willingness to act as investment manager under the terms of the Engagement Agreement (defined below) and to subject itself, for the purposes of the provision of the Fiduciary Services, to the jurisdiction and supervision of the Court.

**State Street's Disinterestedness**

5. To the best of the Debtors' knowledge, and as disclosed herein on the affidavit of Julio J. Fuentes, a principal of State Street Global Advisors, attached hereto as Exhibit A (the "Affidavit"), (a) State Street is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code and referenced by section 328(c) of the Bankruptcy Code, and has no interest adverse to the Debtors or their estates for the matters for which State Street is to be employed and (b) State Street has no connection to the Debtors, their creditors or their related parties herein except as disclosed in the Affidavit.

6. Despite the efforts described in the Affidavit to identify and disclose State Street's connections with the parties-in-interest in these Chapter 11 Cases, because State Street is a nationwide firm with tens of thousands of employees, and because the Debtors are a large enterprise, State Street is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if State Street discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with this Court.

**Qualifications of State Street and Scope of Services**

7. State Street has significant experience managing company stock within qualified retirement plans. Moreover, State Street has expressed a willingness to assume fiduciary responsibilities as investment manager with respect to the Grace Stock held in the Trust and to make determinations and direct the trustee of the Trust (the "Trustee") regarding the future disposition of Grace Stock as the Chapter 11 Cases progress, all within the context of, and subject to, the Engagement Agreement and Investment Guidelines (defined below) and the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

8.  Serving the specialized needs of sophisticated investors, State Street has earned its reputation as an industry leader with more than 200 years of experience as a financial service provider. State Street provides comprehensive investment management services across all major asset classes to institutional investors worldwide and is a leading pension manager domestically and globally.

9.  As further described in the Engagement Agreement between Grace and State Street, attached hereto as <u>Exhibit B</u> (the "Engagement Agreement"),[2] State Street will determine the appropriateness of the Trust's retention or sale of Grace Stock, all within the context of, and subject to, the Investment Guidelines (attached to the Engagement Letter as Exhibit II) and ERISA.

10. State Street with not have any authority, responsibility or obligation to vote any of the shares of Grace Stock held in the Trust, it being understood that all such shares will be voted by the Trustee of the Trust as directed by the participants in the Savings Plan; provided however, in the event that a vote relates to a proposed merger or other transaction the approval of which would have substantially the same effect as a sale or other disposition of substantially all of the assets of Grace or of the shares of Grace Stock held in the Trust, State Street shall have discretionary authority to direct the Trustee to vote all shares of the Grace Stock in the Trust in favor of such merger or other transaction, but only if such direction is consistent with the Investment Guidelines and ERISA. The Debtors shall cause the Savings Plan and Trust documents to be amended to provide for this discretionary authority and shall notify participants of the Savings Plan such amendments.

---

[2] The final form of the Engagement Agreement will be substantially in the form attached hereto.

11.  In addition, State Street will take such other actions, or cause others to act on its behalf, as it deems necessary or appropriate to assist in connection with its engagement and to satisfy its fiduciary obligations in a timely fashion consistent with the scope of it duties and responsibilities as investment manager. In particular, State Street may independently engage legal counsel and a financial advisor to represent it in connection with the performance of its obligations under the terms of the Engagement Agreement.

## Terms of Retention

12.  As compensation for services State Street pursuant to the Engagement Agreement, the Debtors will pay to State Street an annual fee equal to $530,000 which will be paid monthly in arrears. In addition, the Debtors will reimburse State Street for all reasonable out-of-pocket expenses incurred in connection with this engagement (including such expenses incurred prior to the execution of the Engagement Agreement) provided that the fees (and not the expenses) of State Street's legal counsel and financial advisor shall be subject to the following limits with respect to the period specified below:

*State Street Legal Fees*

| | |
|---|---|
| Start-up period relating to engagement (Fees accrued to 10/31/2003) | No greater than $125,000 |
| Next 9 months of engagement: | No greater than $25,000 per month |

*State Street Financial Advisor Fees*:

| | |
|---|---|
| First month of engagement: | No greater than $50,000 |
| Second and third months of engagement: | No greater than $25,000 per month |

13.  The fee and expense reimbursement arrangement described above is hereinafter referred to as the "Fee Structure."

14. State Street will maintain, or cause to be maintained, detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services, including receipts for any individual expenditure in excess of $25.

15. The Debtors also seek approval of the Fee Structure pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 of the Bankruptcy Code on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. §328(a). Section 328(a) of the Bankruptcy Code, therefore, permits the Court to approve the Fee Structure outlined herein. The Fee Structure appropriately reflects the nature and scope of the services to be provided by State Street, State Street's substantial experience with respect to fiduciary services, and the fee structures typically utilized by State Street and other leading fiduciaries, which do not bill their clients on an hourly basis.

16. Pursuant to section 328(a) of the Bankruptcy Code, the Court may only allow State Street's compensation on terms different from the approved Fee Structure if such compensation "prove[s] to have been improvident in light of developments not capable of being anticipated at the time" the Fee Structure was originally approved. 11 U.S.C. §328(a).

17. State Street provided no services to the Debtors prior to the Petition Date and the Debtors are not aware of any pre-petition claims held against the Debtors by State Street. Further, State Street has received no retainers from the Debtors in respect of any services it may in the future provide to the Debtors.

## Approval of Limited Indemnification

18.     As part of the Retention Agreement, the Debtors are required to provide State Street with a limited indemnification described in the Indemnification Agreement (attached hereto <u>Exhibit C</u>). The Indemnification Agreement provides in relevant part as follows:

> A.     As a material part of the consideration for the agreement of State Street to perform services under the Engagement Agreement, the Indemnitor agrees to indemnify, defend, reimburse and hold harmless State Street and each past, present and future officer, director, employee, and controlling person of State Street within the meaning of either Section 15 of the Securities Act of 1933, as amended or Section 20 of the Securities Exchange Act of 1934, as amended (collectively, the "Indemnified Parties") to the fullest extent lawful from and against any and all losses, claims, damages, liabilities, costs and expenses (or actions in respect thereof) joint or several, arising out of any actions taken or omitted to be taken by an Indemnified Party in connection with services performed under the Engagement Agreement ("Covered Losses", subject to the provisions of the Paragraph D below. Without limiting, the foregoing, but subject to the provisions of Paragraph D below, the Indemnitor agrees to pay any legal or other expenses incurred by the Indemnified Parties in respect to Covered Losses, including but not limited to reasonable costs of investigation and preparation and reasonable attorneys' fees, disbursements and other charges, and the aggregate amount paid in connection with, incident to, or in settlement or compromise of any actions, suits, or other legal proceedings, or governmental investigation (collectively, "Proceedings"), or claims to which an Indemnified Person may become subject under any statute or common law or otherwise...; <u>provided, however</u>, that the Indemnitor shall not be liable for any amounts paid in settlement or compromise which have not been previously authorized and approved in writing by the Indemnitor (which authorization and approval shall not be unreasonably withheld). The Indemnitor further agrees that State Street shall have no liability to the Indemnitor, or any other person, for any losses, claims, damages, liabilities, costs or expenses relating to the engagement, except as provided in Paragraph D.

> D.     The Indemnitor shall not be liable under the Indemnification Agreement or any other agreement or arrangement for any losses, claims, damages, liabilities, costs or expenses which are finally judicially determined to have resulted primarily from the negligence, gross negligence, recklessness or willful misconduct of any Indemnified Party or any agent or advisor of State Street. For the purposes of this Indemnification Agreement, the term "negligence" means a departure from standards of ordinary care applicable to a person with demonstrated expertise in rendering professional services similar to the services to be performed by State Street as set forth in the Engagement Agreement or by its agent or advisor, whichever is applicable. In regard to determining whether the losses, claims, damages, liabilities, costs or expenses were caused by the

negligence, gross negligence, recklessness or willful misconduct of the Indemnified Party, the expenses related thereto (including attorneys' fees related thereto) will be borne by the losing party.

19.     State Street has advised the Debtors that this limited indemnification appears as a condition to engagement in its contracts with comparable clients. State Street has also advised the Debtors that it is not willing to provide services needed by the Debtors without such indemnification. The Debtors' research of comparable investment management contracts indicates that such indemnification provisions are common.

20.     The Debtors respectfully submit that the Court should approve this limited indemnification of State Street. Since State Street will not be indemnified for losses judicially determined to have resulted primarily from its negligence, the indemnification standard is more favorable to the Debtors than is usual. The Debtors believe that State Street is well qualified and uniquely able to provide the services sought by the Debtors.

21.     Given the services to be rendered by State Street and level of its experience in managing plan investments of this type, the Debtors believe that the risk of indemnification claims against the estates is low. Furthermore, the indemnification is limited; the Debtors will not be liable for any losses, claims, damages, liabilities, costs or expenses arising primarily from State Street's negligence (as defined in the Indemnification Agreement), gross negligence, recklessness or willful misconduct or the negligence (as so defined), gross negligence, recklessness or willful misconduct of any of State Street's employees, officers, directors, agents or advisors. Accordingly, the Debtors submit that the provision of such limited indemnification is reasonable under the circumstances and reflects a fair balance between the potential risk to State Street and the benefit to the estates from State Street's services.

22.     In analogous situations involving the retention of professionals under sections 327 and 330 of the Bankruptcy Code, including cases within the Third Circuit, similar

indemnification provisions have been approved. See, e.g., In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003) (affirming the District Court's approval of an indemnification agreement and explaining that a court should consider the market in which such professionals operate in evaluating whether indemnification is "reasonable"); In re Comdisco, Inc., Case Nos. 02 C 1174 and 02 C 1397 (N.D. Ill. Sept. 23, 2003) (ethical rules governing lawyers "do not apply to financial advisors and cannot provide the benchmark for assessing the reasonableness of a financial advisor's contract under the bankruptcy laws"); In re LTV Steel Co., Inc., Case No. 4:01CV1116 (N.D. Ohio Nov. 16, 2001) (affirming the limited grant of indemnification of debtors' business and financial consultants); In re Joan and David Halpern, Inc., 248 B.R. 43, 46 (Bankr. S.D.N.Y. 2000), aff'd, 2000 WL 1800690 (S.D.N.Y. Apr. 4, 2000) ("[T]he idea that a fiduciary cannot be indemnified for negligence, or that such indemnification is contrary to public policy, is just plain wrong.").

23. Because the Indemnification Agreement provides a reasonable, limited indemnification of State Street, execution of such agreement is within the sound discretion of the Debtors. Accordingly, the Debtors submit that this Court's approval of the Indemnification Agreement is appropriate.

### Notice

24. Notice of this Application has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee and (iv) those parties that requested papers under Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court (i) authorize, but not require, the Debtors to retain State Street as investment manager and fiduciary of Grace Stock within the Savings Plan as of a date determined by Debtors, and (ii) grant such other and further relief as the Court deems just and proper.

Wilmington, Delaware
Dated: August 18, 2003

    Respectfully submitted,

    KIRKLAND & ELLIS LLP
    James H.M. Sprayregen, P.C.
    James W. Kapp, III
    Janet S. Baer
    Christian J. Lane
    200 East Randolph Drive
    Chicago, Illinois 60601
    (312) 861-2000

    and

    PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB PC

    */s/ Paula A. Galbraith*
    Laura Davis Jones (Bar No. 2436)
    Scotta McFarland (Bar No. 4184)
    Paula Galbraith (Bar No. 4258)
    919 North Market Street, 16th Floor
    P.O. Box 8705
    Wilmington, Delaware 19899-8705 (Courier 19801)
    (302) 652-4100
    Co-Counsel for the Debtors and Debtors in Possession