## EXHIBIT A

## Affidavit of Julio J. Fuentes

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

AFFIDAVIT OF JULIO J. FUENTES IN SUPPORT OF THE APPLICATION OF
THE DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§
327(a) AND 328(a) AND FED. R. BANKR. P. 2014(a), 2016 AND 5002
AUTHORIZING THE EMPLOYMENT AND RETENTION OF
STATE STREET BANK AND TRUST COMPANY AS INVESTMENT MANAGER

I, Julio J. Fuentes, being duly sworn, depose and state:

1.  I am a principal of the firm of State Street Bank and Trust Company (hereinafter "State Street"), which has an office located at Two International Place, Boston, Massachusetts 02110. I make this affidavit (this "Affidavit") of my personal knowledge based upon inquiries made by myself or on my behalf in support of the Application (the "Application") for Entry of an Order Pursuant to U.S.C. §§ 327(a) and 328(a) and Fed. Bankr. P. 2014(a), 2016 and 5002

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Authorizing the Employment and Retention of State Street Bank and Trust Company as Investment Manager for the Debtors' Retirement Plan Trust.

2.   Neither I, State Street, nor any other employee thereof, insofar as I have been able to ascertain after reasonable inquiry, has any connection with the above-captioned debtors and debtors-in-possession (the "Debtors"), their respective attorneys and accountants, the United States Trustee or any person employed in the office of the United States Trustee, except as set forth in this affidavit.

3.   The Debtors have requested to retain State State, and State Street has agreed to be retained, as an investment manager and fiduciary of the stock of W.R. Grace & Co. (the "Grace Stock") held by the trust (the "Trust") funding the W.R. Grace & Co. Savings & Investment Plan (the "Savings Plan"), as of a date determined by the Debtors. The Debtors and State Street have agreed to enter into an engagement agreement, substantially in the form of the engagement agreement attached as Exhibit A to the Application (the "Engagement Agreement"), setting forth the terms and conditions of such engagement.

4.   As further described in the Engagement Agreement, State Street will determine the appropriateness of the Trust's retention or sale of Grace Stock and shall direct the trustee of the Trust (the "Trustee") regarding the future disposition of Grace Stock as the Chapter 11 cases progress, all within the context of, and subject to, the Investment Guidelines (attached as Exhibit II to the Engagement Agreement) and the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

2

5. State Street will not have any authority, responsibility or obligation to vote any of the shares of Grace Stock held in the Trust, it being understood that all such shares will be voted by the Trustee as directed by the participants in the Savings Plan; provided however, in the event that a vote relates to a proposed merger or other transaction the approval of which would have substantially the same effect as a sale or other disposition of substantially all of the assets of W.R. Grace or of the shares of Grace Stock held in the Trust, State Street shall have discretionary authority to direct the Trustee to vote all shares of the Grace Stock in the Trust in favor of such merger or other transaction, but only if such direction is consistent with the Investment Guidelines and ERISA. In addition, State Street will take such other actions as it deems necessary or appropriate to assist in connection with its engagement and to satisfy its fiduciary obligations in a timely fashion consistent with the scope of its duties and responsibilities as investment manager.

6. All services that State Street will provide to the Debtors will be appropriate and consistent with its fiduciary responsibilities as set forth in the Engagement Agreement.

7. As compensation for its services, the Debtors will pay to State Street an annual fee equal to $530,000 which will be paid monthly in arrears. In addition, State Street will be entitled to payment by the Debtors for State Street's reasonable out-of-pocket expenses incurred in connection with its engagement in these bankruptcy cases (including such expenses incurred prior to the execution of the Engagment Agreement) and for services of such legal, financial and other advisors as State Street deems necessary or appropriate to enable it to perform its obligations hereunder; provided that the fees (and not the expenses) of State Street's legal

counsel and financial advisor shall be subject to the following limits with respect to the periods specified below:

*State Street Legal Fees*:

| | |
|---|---|
| Start-up period (fees accrued relating to engagement) through and including September 30, 2003: | No greater than $125,000 |
| Next 9 months of engagement: | No greater than $25,000 per month |

*State Street Financial Advisor Fees*:

| | |
|---|---|
| First month of engagement: | No greater than $50,000 |
| Second and third months of engagement | No greater than $25,000 per month |

8.  Except as set forth herein, no promises have been received by State Street as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules and orders of this Court.

9.  State Street has no agreement with any entity to share any compensation received from the Debtors.

10. Except as set forth herein, to my knowledge based on reasonable inquiry, (a) State Street, and the employees that are anticipated to provide the services for which State Street is to be retained in these Chapter 11 cases, do not hold or represent any interest adverse to any of the Debtors with respect to the matters on which State Street is to be retained in these Chapter 11 cases, and (b) neither State Street, nor such employees have any relationship to the Debtors, the

Debtors' significant creditors, or other parties-in-interest in these Chapter 11 cases, or to the Debtors' attorneys that are known to be assisting the Debtors in these Chapter 11 cases.

11. To check upon and disclose possible relationships with parties-in-interest in these Chapter 11 cases, State Street researched its internal client databases and performed reasonable due diligence to determine whether it had any relationships with the entities that were listed on schedules provided to State Street by the Debtors in connection with these Chapter 11 cases, which included the following:

    (a)    The Debtors and their affiliates;

    (b)    The Debtors' twenty largest unsecured creditors;

    (c)    The Debtors' secured creditors and other lenders, including bank lenders;

    (d)    Law firms anticipated to assist the Debtors in the these Chapter 11 cases; and

    (e)    The Debtors' key personnel, including its officers and directors.

12. Exhibit A attached hereto describes any and all connections with parties-in-interest in these Chapter 11 cases discovered by State Street after a review of its internal databases. Despite efforts to identify and disclose State Street's connections with the parties-in-interest in these Chapter 11 cases, because State is a global firm with thousands of employees, and because the Debtors are a large enterprise, State Street is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if State Street discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with this Court.

13. From time to time, State Street and its affiliates have provided services, currently provide or may prospectively provide services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties potentially adverse to the Debtors in matters unrelated to these Chapter 11 cases. Moreover, certain of these creditors, other parties-in-interest, attorneys, or accountants have or may have provided goods or services to, currently provide or may currently provide goods or services to, and may in the future provide goods or services to State Street and its affiliates in matters unrelated to these Chapter 11 cases.

14. I am not aware of any pre-petition claims held by State Street against the Debtors. Further, State Street has received no retainers from the Debtors in respect of any services it may in the future provide to the Debtors. Except as may be disclosed herein, to the best of my knowledge, State Street and its employees do not hold or represent any interest adverse to the Debtors, and I believe that State Street and its employees are "disinterested persons" as that term is defined in Section 101(14) of the Bankruptcy Code.

Dated: August 18, 2003

Julio J. Fuentes

**EXHIBIT A**

**CLIENTS:**

State Street Corporation provides various services to the entities listed below including any or all of the following: trustee, custodian, investment manager, and independent fiduciary services. **None of these entities are included on State Street's top 100 client list based on revenue generated, and each entity represents less than one percent of State Street Corporation's annual revenue for the fiscal year 2002.**

Wachovia Bank of North Carolina
Holmes Oil Company
The Chase Manhattan Bank
The Depository Trust Company
Bank of America, N.A.
J.P. Morgan Chase Co.
Credit Suisse First Boston Corp
ABN Amro Bank N.V.
Wachovia Bank and Trust Company, N.A
Hapoalim
Barclays Bank PLC
Commerzbank A.G.
HSBC Holding PLC
Citibank, N.A. (Citigroup)
Dupont Dow Elastomers
Union Carbide Corp
BASF
Radian International
American International Group, Inc.
The Travelers Insurance Co.

**VENDORS:**
State Street Corporation receives various services from the entities listed below. The amount paid to each entity year to date is less than $2,000,000 and each entity represents less than one percent of State Street Corporation's total year to date (2003) operating expense.

Blackstone Group, L.P.
R. R. Donnelley & Sons Company
Wachtell, Lipton, Rosen & Katz
Holmes Roberts & Owen LLP
Steptoe & Johnson
PriceWaterhouseCoopers LLP
Wachovia Bank of North Carolina
The Depository Trust Company
Credit Suisse First Boston Corp.
Citibank, N.A.
Chase Manhattan Bank
HSBC/Marine Midland (HSBC Bank USA)
Bank of America
Bankers Trust Company
J.P. Morgan Chase & Co.
The Prudential Insurance Company of America
Stroock & Stroock & Lavan LLP
Kramer Levin Naftalis & Frankel LLP (2002)
Walsh, Monzack, and Monaco
Skadden, Arps, Slate, Meagher, & Flom LLP
American International Group, Inc.

**LEGAL COUNSEL:**
A. State Street Corporation receives legal services from the entities listed below. Each entity represents less than one percent of State Street Corporation's total year to date (2003) operating expense. The amount paid to each is less than $1,000,000 year to date.

Wachtell, Lipton, Rosen & Katz
Holmes Roberts & Owen LLP
Stepoe & Johnson
Skadden, Arps, Slate, Meagher & Flom LLP

B. State Street as the investment manager for Agway's Company Securities Fund is the Chairman of the Agway Unsecured Creditors Committee which has employed Pachulski, Stang, Ziehl, Young, & Jones as its counsel.

**OTHER:**
State Street currently has a joint venture with Citigroup, which operates under the name of CitiStreet. Citistreet will not be performing any services in connection with this engagement.

3