# ATTACHMENT 1

▷

Only the Westlaw citation is currently available.


United States District Court, C.D. California.

The 3250 WILSHIRE BOULEVARD BUILDING, et
al., Plaintiffs,
v.
W.R. GRACE & CO, a corporation, Defendant.

**No. CV 87-6048-WMB.**

July 24, 1989.


ORDER RE PLAINTIFFS' AND DEFENDANT'S
MOTIONS IN LIMINE

WM. MATTHEW BYRNE, Jr., District Judge.

I. BACKGROUND

*1 The plaintiffs are a partnership that constructed, leased and operated a building at 3250 Wilshire Boulevard between 1969-1986 (3250 Wilshire Boulevard Building Partnership) and a partnership formed to purchase the building in 1986 (3250 Wilshire Boulevard Partners). The defendant is W.R. Grace & Co. Conn. (Grace), a producer of asbestos containing fireproof materials (ACFM).

The building was originally fireproofed using an ACFM material called MK-3 which was supplied by defendant Grace. After construction in 1971, Metropolitan Life Insurance Co. (Metropolitan) purchased the building for $18.5 million and leased it back to the plaintiffs for a twenty-year period with renewal options. [FN1]

In 1983, Metropolitan and the plaintiffs began negotiations to sell Metropolitan's reversionary interest in the building. Ultimately, the talks culminated in a sale of Metropolitan's interests to the plaintiffs for $36 million in 1986. The purchase was facilitated with a short term (five-year) non-recourse loan of over $40 million made by Chase Bank. The terms of sale required the plaintiffs to put $360,000 down, which was nonrefundable. Prior to the sale, the plaintiffs paid approximately $550,000 for five successive one month extensions of the escrow closing date. The terms of sale specified that the building was to be sold "as is" and incorporated the plaintiffs' previous lease obligation to maintain and repair the building. The defendant claims that the

building is currently worth about $70 million, that the plaintiffs have received an offer for $87.5 million, and that the plaintiffs are seeking $90 million to sell the building.

Subsequently, the plaintiffs allege that in a series of *Wall Street Journal* articles published in mid-1986, they discovered that many lenders, including Metropolitan, had instituted a policy in 1983 against making long-term loans on buildings that were built with ACFM materials, thus reducing the value of their purchase. Further, the plaintiffs claim that the presence of ACFM in the building necessitates over $25 million in repairs, and that as a result, they could not complete their financing on the Metropolitan sale, nor could they sell the building to other purchases, or adequately rent the office space.

The plaintiffs move in limine to preclude the defendant from contesting certain issues on the grounds of collateral estoppel. The defendant moves in limine to preclude totally, or, in the alternative, to limit partially, damage evidence to be offered by the plaintiff.

II. DISCUSSION

1. *Plaintiffs' Motion for Collateral Estoppel*

The plaintiffs seek to estop the defendant from contesting the following six issues on the basis of collateral or judicial estoppel:

1. Whether Grace knew of the human health hazards associated with MK-3 when it sold the product;

2. whether the state of the art recognized that MK-3 ACFM was dangerous when the product was sold to the plaintiffs;

3. whether the mere presence of MK-3 in a building constitutes property damage;

*2 4. whether asbestos fibers must reach a level certain to represent a health concern and property damage;

5. whether asbestos can be removed as an ordinary construction material; and

6. whether MK-3 was a defective product.

The plaintiffs base their motion on two cases, *City of Greenville v. W.R. Grace & Co.,* 640 F.Supp. 559, aff'd *City of Greenville v. W.R. Grace & Co.,* 827 F.2d 975 (4th Cir.1987) and *Dayton Independent*

1989 WL 260222
(Cite as: 1989 WL 260222 (C.D.Cal.))

*School Dist. et al. v. Nat'l Gypsum Co., et al.*, 682 F.Supp. 1403 (E.D.Tex.1988). In *Greenville*, a general verdict was rendered against Grace for $6.4 million in actual damages and $2 million in punitive damages resulting from the use of MK-3 in the Greenville City Hall. In *Dayton*, Grace successfully argued that its insurance carriers had to extend coverage for claims occasioned by the mere presence of asbestos in a building; the threatened release of fibers was held to be damage subject to insurance indemnification. The plaintiffs argue that both cases collaterally or judicially estop the defendant from asserting that any dispute exists as to the six issues they raise in this action.

In *Parklane Hosiery Co., Inc. v. Shore*, 99 S.Ct. 645, 640-50 (1979) and *Blonder-Tongue Laboratories v. University of Illinois Foundation*, 91 S.Ct. 1434 (1971), the Court expanded the use of offensive collateral estoppel to preclude a defendant from raising defenses in an action when issues were litigated fully and decided against the defendant in a previous case. In the Ninth Circuit, collateral estoppel may apply to all issues of fact and law that were actually litigated and necessarily decided in a prior proceeding against a defendant. *Robi v. Five Platters, Inc.*, 838 F.2d 318, 321-22 (9th Cir.1988). If the requisites for the application of collateral estoppel exist, the Court has broad discretion to bar the relitigation of the affected claims. *Parklane, supra* at 651.

The Court declines to apply collateral estoppel in this case.

First, the Court finds that there is considerable doubt as to precisely what the jury in *Greenville* decided. The jury was instructed on three alternate theories: negligent manufacture, failure to warn, and failure to test. The *Greenville* verdict returned against Grace did not identify any specific theory of liability. On appeal, various aspects of the trial court proceedings relevant to the issues on which the plaintiffs seek preclusion were discussed, but the court did not identify precisely the findings the jury made against Grace.

The plaintiffs argue that even if the *Greenville* verdict was general, the Court may infer from the record that certain issues, including the six raised by the plaintiffs here, were necessarily decided against the defendant. However, each of the three possible bases for the *Greenville* verdict involve different potential findings against Grace. For instance, to impose liability on the warranty claim, the jury did not necessarily have to find that Grace had

knowledge of a defect or that it had knowledge of industry standards concerning asbestos. Hence, if warranty liability was the basis for the plaintiff's recovery in *Greenville*, the issue of Grace's knowledge, one of the issues on which the plaintiffs seek preclusion, need not have been necessarily and adversely decided against the defendant. Similar ambiguities exist with respect to the other claims raised by the plaintiff in *Greenville*.

*3 Therefore, the Court finds that because the jury in *Greenville* returned a general verdict that could have been based on three distinct legal theories, each of which would involve certain distinct factual findings, the application of collateral estoppel is inappropriate in this case. Hence, the Court declines to exercise its discretion to apply collateral estoppel based on the *Greenville* decisions. [FN2]

The Court further finds that collateral or other equitable estoppel remedies based on the decision in *Dayton Independent School Dist., et al., v. Nat'l Gypsum Co., et al*, 682 F.Supp. 1403 (E.D.Tex.1988) are not warranted in this case. In *Dayton*, the defendant was sued by a number of school districts, *inter alia*, for damage due to the presence of ACFM in school buildings. The defendant sought a judgment in a third party action against its insurers that the plaintiffs' claim for property damage due to the presence of ACFM in school buildings was covered under the terms of the policies. 682 F.2d 1403, 1407-08. The court found in favor of Grace.

The plaintiffs argue that since Grace took the position in *Dayton* that the mere incorporation of ACFM in a building constituted property damage sufficient to trigger insurance coverage, the issue of whether the presence of MK-3 on a building constitutes property damage should now be precluded.

The Court rejects the plaintiffs' position. First, collateral estoppel does not apply since the issue in *Dayton* was not resolved adversely to the defendant. The plaintiffs, in apparent recognition of this fact, changed their estoppel theory in their reply brief and at the hearing to contend that Grace cannot maintain inconsistent positions here and in the *Dayton* litigation. Hence, they now argue that judicial estoppel should bar the defendant's opposition to the issue of whether the mere presence of MK-3 constitutes property damage.

In *Dayton*, however, the defendant's argument was that should it be found liable to the plaintiffs, damages due to ACFM installation constituted

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

damages as specified in its insurance contract. Thus, for purposes of obtaining coverage, the defendant was asserting that, in the event the plaintiffs' contentions had merit, the language of the insurance policies applied. This position is not inconsistent with a denial that the claimed damage in fact is not recoverable as a matter of law. Thus, judicial estoppel is not warranted.

Hence, the Court denies the plaintiffs' motion for precluding any issue in this case on the basis of the *Dayton* decision.

2. *Defendant's Motion to Exclude or Limit Damages*

The defendant asserts that California law prohibits the recovery of economic losses, as opposed to cost of repair or diminution in value as a result of actual physical damage, in actions based on negligence or strict liability for harm to a structure. The defendant argues that plaintiffs have presented no evidence of actual physical damage to any person or to the building beyond the mere fact that ACFM was placed in the building. Hence, their damage claims for the costs of removing the asbestos and for concomitant diminution in the building's value are purely economic in nature and are barred. Further, the defendant contends that even if there is some compensable damage to the building, the plaintiffs are seeking to obtain both diminution and repair recoveries in violation of California precedent. The defendant also asserts that, in several respects, the plaintiffs' damages calculations are inaccurate. Thus, in the alternative, the defendant argues that even if the plaintiffs' damage evidence is not wholly excluded, it should be severely limited to reflect only recoverable items.

*4 The parties' papers reflected some confusion as to the precise nature of the defendant's motions. In one portion, the defendant apparently sought summary adjudication of certain damage issues. As was discussed at the hearing, the Court finds that summary judgment is inappropriate at this time. Rather, the Court treats the instant motions as a request for clarifying the damages which the plaintiffs could, as a matter of law, recover in the event that they could establish the essential elements of their claims.

Plaintiffs put forth three separate theories of damages:

1. The mere presence of ACFM manufactured by the defendant has damaged the property by reducing the value of the building, thus generating compensable damages measured by the costs of totally removing the ACFM;

2. the risk of possible future release of asbestos by the MK-3 has harmed the building, and the plaintiffs may recover the cost of the complete removal of the product; and

3. the MK-3 has contaminated the air and other portions of the building by releasing asbestos fibers or flaking, thus requiring abatement for which damages are compensable.

For the reasons discussed below, the Court finds that only the third theory of damages based on the actual contamination of the building's air or other parts of the structure by asbestos released from the MK-3 sets forth a legally compensable claim against the defendant. Thus, if it could be shown that the air or other portions of the 3250 Wilshire building were contaminated beyond normally expected levels by the failure of MK-3 to lock in asbestos fibers at the site of the original application of the product, the plaintiffs would be entitled to the costs of abatement plus loss of use or the diminution in value of the property, whichever is less. *See Ferraro v. Southern California Gas Co.,* 162 Cal.Rptr. 238, 248 (Cal.App.1980). The Court finds that plaintiffs may not recover damages under their theories that the mere presence of ACFM or the potential future risk of ACFM contamination constitutes actionable harm in tort.

*A. The Plaintiffs' Claim that the Mere Presence of ACFM in a Building Generates a Tort Action for Damages*

The Court finds that any reduction in the value of the plaintiffs' building due to the financial and real estate market's aversion to purchase the structure solely because ACFM was employed in its construction constitutes purely economic loss. Such a loss in not recoverable under California tort law.

In *Seely v. White Motor Co.,* 45 Cal.Rptr. 17, 23 (Cal.1965), the California Supreme Court held that a claim for economic losses in the absence of actual, physical property damage to a building or other chattels is barred in a tort action. The rationale of the case, which has been cited widely in federal, California, and other state decisions, is that to permit economic loss recovery for defective or negligently produced products would subject manufacturers to excessive risks and confuse tort remedies with contract and warranty remedies. *Id.*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

*5 The *Seely* decision has been repeatedly invoked by the California courts to bar recovery of economic losses in actions for negligence or strict liability in the context of damage to chattels. *See Anthony v. Kelsey-Hayes Co.,* 102 Cal.Rptr. 113 (Cal.App.1973) (claims for loss of use and diminution in value of trucks installed with defective wheels not permissible in negligence or strict liability actions because the losses are economic in character); *Rodrigues v. Campbell Industries,* 151 Cal.Rptr. 90, 91-92 (Cal.App.1978) (claims for losses of wages and reduced fish catch by crew of vessel due to vessel's improper construction not permissible in negligence or strict liability actions because economic in character); *Sacramento Regional Transit Dist. v. Flxible,* 204 Cal.Rptr. 736, 739-43 (Cal.App.1984) (claims for damages due to installation of faulty fuel tanks in buses purely economic since no damage apart from defect itself alleged and thus not cognizable in negligence or strict liability actions); *Osborne v. Subaru of America, Inc.,* 243 Cal.Rptr. 816, 821 (Cal.App.1988) (economic losses not recoverable in California in products liability cases based on negligence or strict liability).

The Court finds that the plaintiffs' claim that the ACFM, by its mere presence in the building, has caused a reduction in the building's market value, amounts to an attempt to recover purely economic damages in tort. The Ninth Circuit in *State if Arizona v. Cook Paint and Varnish Co.,* 391 F.Supp. 962 (D.Ariz.1975), *aff'd* 541 F.2d 226 (9th Cir.1976) barred a similar claim on facts substantially identical to this case. In *Cook,* a building owner alleged that a polyurethane foam product used to insulate his building was also highly flammable, thus causing, *inter alia,* a diminution in the building's value. The owner sued the manufacturers in strict liability and negligence.

The court found that the alteration of the building to include the insulation was not an accidental harm but was intended by the owner. The damage represented by the loss of the building's market value therefore resulted purely from the failure of the product to perform as expected. Hence, the court found that the costs of removing the product and the loss in value of the building were all economic in character; they did not result from negligent or accidental physical injury to the building or to the occupants. Thus, relying on *Seely,* the court found that none of the plaintiff's damages were recoverable in tort. 391 F.Supp. at 971-72.

The Court founds that the rationale of the *Seely* line of cases and *Cook* bars the plaintiffs from recovering

in tort for alleged diminution in the value of their building solely because of the presence of ACFM. Like the insulation in *Cook,* the defendant's MK-3 was applied intentionally to the 3250 Wilshire building to retard fire damage. The plaintiffs have conceded that the MK-3 continues to function properly as a fire retardant. However, again as was the case with the flammable insulation in *Cook,* the presence of the MK-3 here allegedly has also engendered a perceived asbestos danger among potential buyers which depresses the market value of the building. Because this alleged diminution in value is occasioned solely by the market's appraisal of the value of a structure which contains ACFM, rather than by actual physical damage to people or to parts of the building other than where the MK-3 was intended to be applied, it is a purely economic loss. The plaintiffs cannot recover such a loss in tort. [FN3]

*6 The plaintiffs attempt to distinguish *Seely* by arguing that California tort law now permits economic loss recoveries and that *Seely* has been effectively overruled. They rely on *J'Aire Corp. v. Gregory,* 157 Cal.Rptr. 407, 412 (Cal.1979) where the court permitted a lessor of a building constructed negligently by a defendant to recover for economic losses.

However, the Court finds that *J'Aire* permitted economic loss recovery in tort only when there is a sufficiently close or special relationship between the parties so that the plaintiff's economic losses are foreseeable by the defendant. *Id.* Thus, the *J'Aire* court relied on an earlier case, *Biankanja v. Irving,* 320 P.2d 16 (Cal.1958) to utilize a six-part test which establishes when a special relationship giving rise to a heightened duty of care sufficient to permit economic damage recovery in tort exists. [FN4]

In the wake of *J'Aire,* a number of cases have permitted economic recoveries in tort, but only when the *Biankanja* six-factor test for the existence of a special relationship has been met. *See, e.g., Huang v. Garner,* 203 Cal.Rptr. 800, 811-13 (Cal.App.1984) (recovery of lost profits and diminution in value of building permitted by purchaser of condominiums from developer in negligence ad strict liability action); *Ales-Peratis Foods v. American Can Co.,* 209 Cal.Rptr. 917, 920-25 (Cal.App.1985) (recovery of economic losses by canner for defective cans permitted on negligence and strict liability theories).

The only case which arguably supports the plaintiffs' claim that California law has abolished generally the *Seely* proscription against economic damage recovery

in tort is *Pisano v. American Leasing,* 194 Cal.Rptr. 77, 79 (Cal.App.1983). In *Pisano,* a cabinet maker was permitted to recover economic damages from the maker of a power sander after the sander damaged his products. Although the court purported to apply the special relationship test enunciated in *J'Aire,* and explicitly cited the six-factor test articulated in *Biankanja,* its interpretation of the special relationship requirement was much broader than set forth in *J'Aire.* In *Pisano,* the only apparent relationship between the defendant and the plaintiff was as buyer and seller; no other special connection existed. *Id.* Thus, if *Pisano* accurately reflects the state of California tort law, the potential for economic recoveries would be significantly broader than under the *Seely* line of cases. [FN5]

However, cases subsequent to *Pisano* have either reaffirmed expressly the requirement of a special relationship in order to obtain economic damages in tort (*see Ales-Peratis, supra* ) or have questioned whether *Pisano* was properly grounded on *J'Aire (see Flxible, supra* at 743). *J'Aire* itself never discussed *Seely.* In addition, a number of cases decided after *J'Aire* and *Pisano* have reaffirmed *Seely's* holding where there is no special relationship or the parties are both fairly knowledgeable about the product at issue. *See, e.g., Flxible, supra* (fact that buyer of buses was transit authority and thus had extensive knowledge of product counseled against permitting an economic recovery in tort since special knowledge of buyer required that risk of benefit of bargain losses be borne by buyer or be recovered in contract).

*7 The plaintiffs have conceded that no special relationship as articulated in *J'Aire* exists in this case. [FN6] The defendant itself never sold any products to the plaintiffs, or any other party in California but rather supplied products to wholesalers which then sold to the contractors that did ACFM installations. Thus, there can be no finding of a special relationship such that Grace can be charged with the foreseeability of the plaintiff's alleged harm as articulated in *J'Aire, supra.* Further, the plaintiffs are highly knowledgeable concerning the use of building materials, knew that ACFM was installed in the building from the start and in fact had explicitly requested that such material be employed in the structure. [FN7] Thus, the special knowledge of the plaintiffs further weighs against finding that the *J'Aire* exception should apply here. Under California precedent, a party especially knowledgeable as to the features of a given product should bear the risk of economic losses occasioned by the use of that product. *See Flxible, supra; Cook, supra* at 971 (quoting *Seely* as to the distinction

between allocation risks for actual harm to the seller and allocating economic losses due to building damage to the buyer in negligence or products liability actions).

Hence, the *J'Aire* exception to the *Seely* rule barring economic loss recovery in tort is inapplicable to this case.

In addition, *Pisano* permitted economic recoveries only in the wake of actual physical damage to the plaintiff's products. Thus, the case is inapposite to the plaintiffs' allegations that the mere presence of ACFM can generate damages recoverable in tort. Absent additional physical damage to parts of the plaintiffs' building where MK-3 was not originally applied or harm to an occupant, the plaintiffs' first theory of damages would not afford a recovery in tort.

The plaintiffs also contend that other courts have found that the mere incorporation of ACFM into a building constitutes compensable physical damage in tort actions. [FN8] The plaintiffs' cited authority, however, demonstrates only that when there are allegations or facts concerning the flaking or deterioration of ACFM in a building such that other parts of the structure are contaminated by asbestos, courts are willing to treat such damage as physical and not mere economic harm. *See Greenville, supra* (flaking of MK-3 onto furniture, floors or stairs constitutes physical damage); *Cinnaminson Township Board of Education v. U.S. Gypsum Co.,* 552 F.Supp. 855, 858-59 (D.N.J.1982) (contamination by asbestos in gypsum boards used in school construction presents at least mixed physical/economic damage claim); *City of Manchester v. Nat'l Gypsum Co.,* 637 F.Supp. 646, 651 (D.R.I.1986) (allegations of contamination of ceilings, walls, and drapes by asbestos set forth physical damage claim); *Town of Hooksett School Dist. v. W.R. Grace & Co.,* 617 F.Supp. 126, 131 (D.N.H.1984) (same). [FN9]

*8 Thus, in all of these cases there were explicit allegations, and often evidence in support of claims that there was contamination of other parts of the building by the ACFM. The Court finds that these cases do not stand for the proposition that the mere presence of ACFM constitutes actionable property damage. Rather, they establish that contamination of other parts of a building is also necessary to set forth a cognizable tort damage claim.

Consequently, the Court finds that no damages can be recovered for losses engendered solely by the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

presence of MK-3 in the plaintiffs' buildings. Such losses are purely economic in character and, absent additional physical damage to persons or other parts of the building distinct from where the ACFM was first applied, are barred by *Seely* and its progeny.

### B. The Plaintiffs' Claim for Damages due to a Future Risk of MK-3 Asbestos Release

The plaintiffs further contend that they may bring an action in tort for damages occasioned by the future risk that the defendants' ACFM might emit asbestos fibers into the air or contaminate other portions of the building.

It is well-settled in California that damages relating to future, speculative harm are not available in a tort action. *See Albino v. Starr,* 169 Cal.Rptr. 136, 147 (Cal.App.1980); *Kelsey-Hayes, supra* at 116. Further, basic tort principles as enunciated by the federal courts make clear that future risks, absent some initial physical damage to property or persons, are not compensable in tort. *See, e.g., Laswell v. Brown,* 683 F.2d 261, 269 (8th Cir.1982) (claims by children of father who was subject to nuclear radiation contamination for the risk of disease occasioned by alleged cellular damage resulting from father's exposure stated only possibility of future harm and thus not recoverable in tort); *Gideon v. Johns-Manville Sales Corp.,* 761 F.2d 1129, 1136-37 (5th Cir.1985) (threat of future asbestos-related disease absent some discernible present harm not enough to satisfy damage requirement of tort actions, but where present disease exists, risk of future disease can provide a basis for tort recovery in addition to present harm).

Absent harm inflicted on an occupant or to another section of the building apart from where the MK-3 was originally sprayed, the plaintiffs cannot recover for losses in their building's value due solely to the risk of future harm. Such losses, as discussed *infra,* are purely economic in character and thus cannot be recovered in a tort action. Consequently, the plaintiffs' second damage theory based on the risk that the defendant's product might cause future harm is not cognizable in the present action.

### C. The Plaintiffs' Claim for Damages due to Asbestos Contamination

The Court finds that the third damage theory the plaintiffs advance, that present contamination of the building and air exists because the MK-3 has actually emitted asbestos fibers, does set forth a claim recoverable in tort. *See* plaintiffs' First Amended

complaint at ¶ ¶ 47, 49. If the plaintiffs can show that the MK-3 has eroded and that as a result asbestos fibers have been released into other parts of the structure, such facts would establish physical damage. If the other required elements of the plaintiffs' actions were also established at trial, the Court finds that such damage would be compensable in tort. *See Greenville, supra; Cinnaminson, supra; City of Manchester, supra; Town of Hooksett, supra.* As compensation, the plaintiffs could obtain either the diminution in value of the building or the cost of abatement plus loss of use in the event the structure is not completely destroyed, whichever is less. *Ferraro v. Southern California Gas Co.,* 162 Cal.Rptr. 238, 248 (Cal.App.1980).

\*9 Consequently, the plaintiffs' allegations of actual contamination of the building through the release of MK-3 would generate valid tort damages claims.

In the event the Court found that the plaintiffs could proceed on any damage theory, the defendant has moved to exclude testimony derived from certain reports the plaintiffs have prepared, particularly those contained in Exhibit 1700 (Ex. 1700) to Leventhal's Deposition, and other elements of the plaintiffs' proposed testimony. *See* defendant's Ex. J. The Court declines, however, to rule on the admissibility of the plaintiffs' damage evidence at this juncture because the plaintiffs' estimates were made prior to this Order. Much of the plaintiffs' cost estimates were, therefore, based on premises which may not be valid in light of the Court's rulings here. Thus, it would be premature to rule on specific items of evidence without providing the plaintiffs an opportunity to amend their damage estimates, if necessary, to reflect the rulings contained in this Order.

Consequently, the Court denies the defendant's motion to exclude certain damage evidence at this time, without prejudice.

### III. CONCLUSION

Collateral or judicial estoppel does not apply in this case to preclude the defendant from litigating any of the six issues raised by the plaintiffs.

Plaintiffs' damage claims based on the theories that the mere presence of ACFM or that the future risk that the defendant's ACFM might release asbestos fibers has harmed the value of the building are not cognizable in tort. Losses in the building's value due simply to the presence of ACFM, or because of future risks of danger, are purely economic in nature.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Consequently, plaintiffs may not claim damages on either theory in their actions for negligence and strict liability.

Plaintiffs' allegations that their building has been contaminated by the failure of the defendant's product to contain asbestos to locations where the ACFM was originally applied do set forth damage claims in tort. In the event that the plaintiffs can demonstrate such contamination and make out the other elements of their claims, they are entitled to recover either the diminution in the building's value or the cost of abatement plus loss of use, whichever is less.

The Court denies, without prejudice, the defendant's motion to exclude certain items of damage testimony because it is premature in light of this Order. The defendant is given leave to refile the motion after the plaintiffs have had an opportunity to adjust their proposed evidence, if necessary, to reflect the rulings contained in this Order.

> FN1. Metropolitan was dismissed from the action on its earlier motion for summary judgment.

> FN2. The defendant also argues that in most asbestos cases to date the federal courts have declined to apply collateral estoppel. The rationale is that in such cases the use of collateral estoppel would risk perpetuating arbitrary and possibly incorrect verdicts and that most asbestos cases are fact specific, especially when the bonding of a specific ACFM to a specific material is at issue. *See, e.g., Hardy v. Johns- Manville Sales Corp., 681 F.2d 334, 346 n. 13 (5th Cir.1982).*
> The plaintiff tries to distinguish these precedents by first asserting that this case is not a mass torts case and that the concerns for conflicting or unfair verdicts expressed in the mass torts context are inapplicable. Although this contention has some merit, it is undeniable that the issues concerning MK-3's inherent defectiveness and Grace's knowledge would be relevant in many other asbestos cases, including other commercial building cases similar to the instant action. Thus, the Court is sensitive to the possibility that inconsistent verdicts could be rendered against the defendant.
> The plaintiffs argue that the defendant has not shown that there is any risk of inconsistent verdicts such that collateral

estoppel should not be employed. Instead, the plaintiffs argue that the defendant relies solely on cases which demonstrate inconsistencies in verdicts as to materials other than MK-3. *See, e.g., Johns-Manville, supra.*

In *Oxnam v. Abex Corp.,* No. V-13408 Cal.Sup.Ct. (1989), however, the plaintiff claimed damages from Grace for alleged exposure to asbestos in the St. Francis Hotel over a six-year period of employment in the building. The court granted Grace's motion for a directed verdict and found that the evidence, which included a wind test of the structure to show that MK-3 as applied did not leach asbestos into the air, did not permit an inference that there was "any exposure whatsoever." *See* defendant's Ex. B. at 47. Hence, in *Oxnam,* the court found *inter alia* that in the St. Francis Hotel MK-3 did not create a risk of asbestos exposure, a finding that contradicts a portion of the outcome in *Greenville.*

Although the facts of *Oxnam* and *Greenville* are not precisely comparable because the cases involved actions for personal injury and property damage, respectively, the Court finds that the partial inconsistency between them suggests caution when applying collateral estoppel in this action. It appears from these decisions that, in different contexts, courts may find that MK-3 may present either a significant, or no risk of personal or property damage, depending on the condition of the material in a building. Thus, the plaintiffs motion is denied for the additional reason that asbestos cases involving MK-3 have led to inconsistent results, a result which underscores the fact specificity of the issues involved.

> FN3.e *Cook, supra.* The Court found that the failure of a product to perform as expected, even if it created a hazard (such as fire damage), related to the economic expectations of the user. Thus, unless the product actually damaged another portion of the building, the costs of remedying its defectiveness were not recoverable in tort. 391 F.Supp. at 971-72. Further, the court held that damage to the building due to repairs necessitated by the removal of the defect "does not constitute the kind of accidental injury against which the doctrines

of strict liability or tort are designed to protect the consuming public. Rather, it represents mere possible consequential damage flowing from the failure of the product to meet expected standards of performance." *Id.* at 972. California cases are in accord. *See, e.g., Flxible, supra* at 742 (cost of repair of defective fuel tank not recoverable in negligence, and when the only damage is the defect itself, no non-economic losses exist).

FN4. The six factor test is (1) the extent to which the transaction is intended to benefit the plaintiff, (2) the foreseeability of harm to plaintiff, (3) the certainty that plaintiff suffered harm, (4) the connection between the plaintiff's harm and defendant's conduct, (5) the moral blame to be placed on defendant, and (6) the policy of preventing harm. 157 Cal.Rptr. at 410 (quoting *Biankanja* ).

FN5. The plaintiffs also cite *Union Oil Co. v. Oppen,* 501 F.2d 558 (9th Cir.1974) for the proposition that economic damages are recoverable in negligence actions. The case permitted commercial fishermen to recover for lost catches due to the Santa Barbara oil spill under both admiralty and California negligence law. However, the court's application of California law was expressly questioned and limited to the facts of the case in *Rodrigues, supra* at 92 n. 3. *Rodrigues* held precisely counter to *Union Oil* that economic losses due to fish catch declines were not recoverable in tort. The plaintiffs also claim that the fact economic losses are recoverable in tort is so clear that the defendant's failure to cite *J'Aire* should be sanctionable under Rule 11. However, the plaintiffs' citation to *Golden Eagle Dist. Corp. v. Burroughs Corp.,* 801 F.2d 1531 (9th Cir.1986) is misleading. In the lower court proceeding, the judge, apparently believing that *J'Aire* was adverse authority to *Seely,* sanctioned the defendants for not discussing the case in their moving brief, although they did distinguish *J'Aire* in their reply. The court never reached the issue of whether the defendant's arguments were valid; rather the sanctions were applied merely because the court felt that the issue should have been broached in the moving

papers and not the reply. *See Golden Eagle Dist. Corp. v. Burroughs Corp.,* 103 F.R.D. 124, 128-29 (N.D.Cal.1984) (argument made in reply "entirely acceptable" but held sanctionable because not made in moving papers). The Ninth Circuit reversed the sanctions and never addressed in any way the merits of whether *Seely* was overruled by *J'Aire.* Hence, the appellate decision is totally irrelevant to the issue at hand.

FN6. At the hearing, the plaintiffs stated that the *Biankanja* test did not apply in this case, but suggested that there might be a special relationship sufficient to invoke *J'Aire* based on other grounds purportedly enunciated in the case. The Court finds that *J'Aire* and its progeny exclusively rely on the *Biankanja* test to determine if a special relationship does exist, and that consequently even if some other relationship obtains between the parties the *J'Aire* line of cases are inapplicable to the instant action.

FN7. One of the partners in the plaintiffs' partnerships, Daniel Mann Johnson and Mendenhall (DMJM) drafted the building specifications for the 3250 Wilshire building. Specification 9(f) expressly called for the application of MK-3. *See* defendant's Ex. Q attached to memorandum of points and authorities in support of the motion of defendant W.R. Grace & Co.-Conn. for summary judgment, filed Nov. 23, 1988.

FN8. Part of this argument relies on the defendant's pleadings in *Dayton, supra.* As discussed in the motion for collateral estoppel, *supra,* the defendant's arguments as to damages for which insurance coverage would exist have no effect on whether the plaintiffs can recover economic damages in tort.

FN9. The Court notes that many of these cases (e.g. *Greenville, supra; Cinnaminson, supra* ) applied state law which permitted economic recoveries in tort actions in distinction from the California rule. Hence, their findings are inapplicable here.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1989 WL 260222
(Cite as: 1989 WL 260222 (C.D.Cal.))

1989 WL 260222, 1989 WL 260222 (C.D.Cal.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works