UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .  Case No.  01-01139
                                    .
                                    .
W.R. GRACE,                         .
                                    .  5414 USX Tower Building
                                    .  Pittsburgh, PA 15222
                Debtor.             .
                                    .
                                    .
                                    .  August 25, 2003
. . . . . . . . . . . . . . . . .   .  12:02 p.m.

               TRANSCRIPT OF TELEPHONE CONFERENCE
            BEFORE HONORABLE JUDITH K. FITZGERALD
            UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:              Kirkland & Ellis
                             By:  JANET BAER, ESQ.
                                  CHRISTIAN LANE, ESQ.
                             200 East Randolph Drive
                             Chicago, Illinois 60601

For Costa & Thornburg:       PETER CHAPMAN, ESQ.
                             24 Perdicaris Place
                             Trenton, NJ 08618

For Unsecured Creditors:     Stroock & Stroock & Lavan LLP
                             By:  LEWIS KRUGER, ESQ.
                             180 Maiden Lane
                             New York, New York 10038


Audio Operator:              Janet Kozloski

Proceedings recorded by electronic sound recording, transcript
               produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-Mail:  jjcourt@optonline.net**

**(609) 586-2311    Fax No. (609) 587-3599**

APPEARANCES (Cont'd)

| | |
|---|---|
| For Personal Injury<br>Claimants Committee: | Caplin & Drysdale, Chartered<br>By: PETER LOCKWOOD, ESQ.<br>One Thomas Circle, NW<br>Washington, DC 20055 |
| For Asbestos Claimants: | Campbell & Levine<br>By:  MARLA ESKIN, ESQ.<br>     CHRISTIAN LANE, ESQ.<br>800 King Street, Ste. 300<br>Wilmington, Delaware 19801 |
| For Maryland Casualty: | Connolly, Bove, Lodge & Hutz LLP<br>By:  JEFFREY WISLER, ESQ.<br>1220 Market Street, 10th Floor<br>Wilmington, Delaware 19899 |
| For Libby Mine Claimants: | Klehr, Harrison, Harvey Branzburg<br>& Ellers<br>By:  STEVEN KORTANEK, ESQ.<br>919 Market Street, Ste 1000<br>Wilmington, Delaware 19801 |
| For Libby Mine Claimants: | Cohn, Khoury, Madoff & Whitesell,<br>LLP<br>By:  DANIEL COHN, ESQ.<br>101 Arch Street<br>Boston, Massachusetts 02110 |
| For Asbestos Property<br>Damage claimants: | DAVID ZICLE, ESQ. |
| For the Petitioners: | SHELDON RITTY, ESQ. |

- - -

**J&J COURT TRANSCRIBERS, INC.**

1       THE COURT:  Good afternoon.  This is the matter of
2  W.R. Grace, Bankruptcy Number 01-1139 pending in the District
3  of Delaware.

4       I understand I'm to get a sign-in sheet that's going
5  to be faxed here.  That may make the most sense.  For purposes
6  of this transcript, when you speak would you please just
7  identify yourselves, I think that may be the easiest thing to
8  do today.

9       I have entered orders on Number 4C, which was the
10 Debtor's Motion to File a Reply Brief.  And I also entered an
11 order on the Certification of Counsel on Item Number 6.  I
12 understand that Items 1 and 2 have been continued and
13 apparently I got revised orders on 7 and 8, which are here in
14 court.  Let me take a look, I haven't seen these yet.  I will
15 look at 7 right now.  All right, 7, I don't see a problem with,
16 so Rachel, have you been presented with copies of these revised
17 orders there too?

18      MS. BELLO:  I think it's cc'd on the e-mail, Your
19 Honor.

20      THE COURT:  Okay.  Then what's easier for you, do you
21 want me to sign this and have it -- 7, has a huge attachment to
22 it, I don't want to have to try to docket this whole thing from
23 here.

24      MS. BELLO:  Okay, I can do that.

25      THE COURT:  All right.  Why don't you stamp the one

1    that was filed on 7 and also the one filed on 8.

2          MS. BELLO:   Okay.

3          THE COURT:   They're both fine.   So let me make a note

4    here.   Okay, I'll get those docketed in Delaware.   So I believe

5    then that leaves me with hearings on 3, 4 and 5.

6          MS. BELLO:   Your Honor, in addition to that, on

7    behalf of the debtor, you had also asked for a status on the

8    Gerard matter that was moved on to Judge Wolin?

9          THE COURT:   Yes, I did.

10          MR. CHAPMAN:   Your Honor, this is Peter Chapman,

11   representing Costa and Thornburg on Number 6, there was a

12   follow-up to that regarding W.R. Grace, whereas the first order

13   was principally about Baker & Taylor, Inc.

14          THE COURT:   I received a C.O.C.   I stamped that

15   order.   If there's been a follow-up order, I haven't received

16   it.

17          MR. CHAPMAN:   There hasn't been an order, but you had

18   asked them to follow-up with the criminal folk and we can talk

19   about that when we need to get a final determination as to W.R.

20   Grace, the stay on W.R. Grace and the agreements that have been

21   reached.   We need to get you an order probably to the

22   agreements that have been reached or will be reached today with

23   respect to W.R. Grace.

24          THE COURT:   Okay, yes.   I'm not aware of what's going

25   on there, so why don't we just -- I'll just add that to the

1  agenda and perhaps you can give me a status report when we get
2  there then.
3          MR. CHAPMAN:  Okay, thank you.
4          THE COURT:  Thank you.
5          Okay, who is present for the debtor?
6          MS. BAER:  Your Honor, Janet Baer, on behalf of the
7  debtor, also in the courtroom is Chris Lane.
8          THE COURT:  I'm sorry, we can't -- it's very
9  difficult to understand what you're saying.
10         MS. BAER:  Your Honor, I'll speak directly into the
11 microphone as loudly as I can.
12         THE COURT:  That's better.
13         MS. BAER:  Janet Baer, on behalf of the debtor, also
14 present for the debtor are Christian Lane and Paula Galbraith.
15         THE COURT:  All right, thank you.
16         Where do you want to start?
17         MS. BAER:  Your Honor, I believe that, as discussed
18 with your clerk, we were going to start with the status on the
19 Gerard matter, and if that's where you'd like us to start, we'd
20 be happy to do so.
21         THE COURT:  That's fine, go ahead.
22         MS. BAER:  Your Honor, as you may recall, this is a
23 situation where you entered an order denying the plaintiff's
24 motion to modify the preliminary injunction.  On July 16th,
25 Judge Wolin entered an order vacating and remanding that

1  matter, both Maryland Casualty Company and W.R. Grace has filed

2  notices of appeal of Judge Wolin's order.  Under those

3  circumstances, Your Honor, I think the status quo should be

4  maintained and there's nothing further for this Court to do

5  unless the Gerard parties decide to move further in this court

6  for other relief.

7        THE COURT:  Is anybody there representing the

8  Gerards?

9        MS. BAER:  Yes, Your Honor, they are.

10       THE COURT:  Okay, may I hear from them, please?

11       MR. KORTANEK:  Your Honor, this is Steve Kortanek

12  with Klehr Harrison, we're Delaware counsel for the claimants,

13  and with me today is Dan Cohn, who is lead litigation counsel,

14  I'd like to move his admission for purposes of this hearing.

15       THE COURT:  Have you filed a motion?

16       MR. KORTANEK:  Your Honor, we'll check, Your Honor,

17  there are other lawyers working on the matter, if not, we will

18  certainly file one.

19       THE COURT:  All right.  Who is Mr. Cohn, and where is

20  he admitted?

21       MR. KORTANEK:  Mr. Cohn is admitted in Boston, as

22  well as other jurisdictions, Your Honor, excuse me,

23  Massachusetts as well as other jurisdictions.

24       THE COURT:  All right.  He's admitted for today, but

25  it has to be followed up with a motion pro hac, please.

1       MR. COHN:  Good morning, Your Honor, this is Dan
2  Cohn, my firm is Cohn, Khoury, Madoff & Whitesell.  We are not
3  strictly speaking litigation counsel, we are handling the
4  bankruptcy aspects of the case for the Libby Mine claimants.
5  Our view is somewhat different from that of the debtor.  The
6  injunction has now been vacated so far as we are concerned, and
7  we intend to go forward with the litigation.

8       THE COURT:  Well, okay.  I mean, at this point I'm
9  not exactly sure what I'm supposed to do.  That's the reason I
10  set this status conference up.  Obviously, I don't have
11  jurisdiction to do anything while the matter is on appeal.  So
12  if you're going forward somewhere else, I guess you take your
13  chances there.  But before me, what can I do if the matter is
14  on appeal?

15       MR. COHN:  We're not asking you to do anything and I
16  agree with your assessment that this Court could not have
17  jurisdiction while the case is on its way to the 3rd Circuit.

18       THE COURT:  Okay.  Then I'll simply ask the debtor to
19  monitor this, and it at any point in time it is ripe for me to
20  do something to put it back on my agenda because I don't know
21  how I'm going to track it with two appeals filed of an order
22  that is not going to be treated by the Circuit as though it's
23  coming from me case they'll look at it as Judge Wolin's order.
24  So when something happens by the Circuit, then the debtor is to
25  put this back on the agenda for a status report.

1          Okay, anything else on that one?

2          MR. WISLER:  Yes, Your Honor, Jeff Wisler, on behalf
3  of Maryland Casualty Company.  Your Honor may choose to act on
4  this or not, but I want to make our position clear while Gerard
5  counsel is here.  They filed a motion to clarify or modify an
6  injunction that was over a year old at the point that they
7  filed their motion.  That injunction still exists and that
8  injunction expressly, in two ways, prohibits any litigation
9  against Maryland Casualty Company relating to asbestos
10 exposure.  I don't think they would deny that that injunction
11 still exists.  They won't deny that their suit relates to
12 asbestos exposure.  They can't deny that Judge Wolin did not
13 reverse Your Honor's decision, he only vacated the decision and
14 that decision was on the order on their motion to clarify.
15 Judge Wolin, did not in any way accept or rule upon the
16 injunction that's still stands with an order of this Court.
17 So unless Gerard and the co-movants in the original motion are
18 planning to do something with Your Honor's original injunction,
19 there is nothing more to be done, the injunction stands and
20 their motion to clarify is still on appeal to the 3rd Circuit.

21         THE COURT:  Well, I didn't understand that Judge
22 Wolin set the injunction aside, but I'm not sure what any Court
23 is going to do while it's on appeal anyway.

24         MR. WISLER:  And Your Honor, he did not set the
25 injunction aside.  He specifically vacated the order on a

1 | motion to clarify to remand it for further proceedings.  While
2 | it's on appeal, I don't know that there's anything more that
3 | Your Honor is going to do, but there is no part in that, in
4 | Judge Wolin's order that can be deemed a reversal or a vacation
5 | of the actual injunction.

6 | THE COURT:  Okay, Mr. Cohn?

7 | MR. COHN:  Your Honor, with all due respect to my
8 | colleague, the Libby Mine claimants disagree with that
9 | interpretation.  It appears to us that he vacated the
10 | injunction as it relates to the Libby Mine claimants.  I would
11 | not assert that there is anything more to take from that.
12 | Certainly the injunction that was entered by this Court still
13 | stands as to everybody else as to whom it was entered.

14 | THE COURT:  Well, okay.  As I said, I guess it's an
15 | academic discussion because I don't see where anybody is going
16 | to do anything while the issue is still on appeal.  So at least
17 | before me, all I'm doing today is I'm ordering the debtor when
18 | the 3rd Circuit does something, to put this back on the agenda
19 | for a status conference so I can find out whether I do or don't
20 | have to do something to comply with Judge Wolin's remand.

21 | Okay, anything more on this one today?

22 | MR. COHN:  Well, Your Honor, if I may, this is Dan
23 | Cohn again, while we do not intend to do anything in the
24 | adversary proceeding that is pending in your court, I did want
25 | to leave the record clear that it is our intention to, or the

1 | intention of my co-counsel who is handling the trial aspect of
2 | this, to now seek a trial in the trial courts where this
3 | litigation is pending.

4 |         THE COURT:  Well, I don't know how the state is going
5 | to have any better jurisdiction over it than the bankruptcy
6 | court does while the order is on appeal, but you know, that's
7 | up to you folks to decide what to do.

8 |         MR. COHN:  We understand, Your Honor.

9 |         MR. WISLER:  Your Honor, this is Jeff Wisler again, I
10 | am not asking Your Honor to rule, but Your Honor has an
11 | injunction in place and the order of the District Court Judge
12 | Wolin says that the orders of the Bankruptcy Court dated June
13 | 20, 2002, is hereby vacated.  Nothing in the order references
14 | the earlier preliminary injunction that still exists.  So if
15 | the plaintiff decided to move forward in the state court
16 | litigation, they will be knowingly violating the injunction
17 | that expressly protects Maryland Casualty.

18 |         THE COURT:  Well, if that's the parties' view, I'm
19 | sure since I'm the one who entered the injunction, I'll be
20 | hearing from you on motions for contempt or whatever, but
21 | there's nothing before me today, so please, let's move onto
22 | something that is on the agenda today.  I can't do anything
23 | with respect to the remand at this point in time because the
24 | issue is on appeal.  If somebody violates an injunction in
25 | somebody else's view as an allegation, I'm sure I'll hear from

1  you and I'll deal with it then.

2          Okay, next, Ms. Baer?

3          MS. BAER:  Thank you, Your Honor.  The next matter on

4  your call, Number 3, is the motion of the debtors for entry of

5  an order approving the execution and performance under an

6  administrative order with the EPA.  Your Honor, no objections

7  have been filed to this motion.  There are more inquiries by

8  the unsecured creditors committee.  Information was provided

9  and based on the unsecured creditor's committee's inquiries,

10 the EPA has agreed to solely modify the administrative order

11 that Grace intends to sign here to make it very clear that if

12 there are any stipulated penalties to be paid that Grace has

13 not performed, those penalties will be the subject of this

14 Court's jurisdiction.  With that one change in the

15 administrative order, the unsecured creditor's committee has no

16 objection, no objections were filed by anybody else and we

17 would ask for an entry of an order permitting the debtor to

18 enter into the administrative order with the EPA to do this

19 rather small amount of cleanup on debtor owned property in the

20 Libby Montana area.

21         THE COURT:  Okay, does anybody want to be heard on

22 that issue?

23         Submit that order on a certification of counsel,

24 please, and I will sign it when I get it.

25         MS. BAER:  Thank you, Your Honor.

**J&J COURT TRANSCRIBERS, INC.**

1        Your Honor, actually the order is already in the
2  binder, if you would at this point like to pull it out and sign
3  it right now.
4            THE COURT:  All right, just a second.
5            MS. BAER:  It's Tab 3A.
6            THE COURT:  All right, Rachel, please stamp the
7  order, please, 4087.
8            MS. BAER:  Your Honor, Rachel left the courtroom.
9            THE COURT:  Oh, she has.  Okay.  I'll sign this one,
10  I guess we can docketed it from here.
11            (Interruption in telephone conference)
12            THE COURT:  I'm sorry, you're going to have to call
13  back.  I really can't deal with this kind of music and the
14  other noise that's going on.  If somebody puts us on hold, I
15  don't know why they bother calling in to a call in and then put
16  someone on hold.  Is that music finished now?
17            All right, Ms. Baer, I've signed the order that's
18  attached as Number 3A in the binder.
19            MS. BAER:  Thank you very much, Your Honor.
20            Your Honor, the next matter on the agenda, Item
21  Number 4, is the debtor's fifth motion for extension of the
22  exclusivity period.  The debtors are requesting another six
23  months extension in the exclusivity period, Your Honor.  While
24  we recognize that this case has been going on for a couple of
25  years and we have had exclusivity, we have made a tremendous

1  amount of progress in this case.  It's a complicated case,
2  there's a lot of factors that not all asbestos cases have.  But
3  we simply want to remind the Court that we have obtained a bar
4  date for non-asbestos, for property damage, for medical
5  monitoring, and have obtained an order that includes a very
6  significant EPA claim.  We are now progressing with claimant's
7  objections.  We received 15,000 claims as a result of the bar
8  date.  We today, have before the Court, 1500 objections.  We
9  are progressing with that and will continue to do so.
10  Secondly, Your Honor, we have an interesting challenge in this
11  case of the Zonalitae attic insulation.  From day one, the
12  debtor has pushed  to put in a procedure so that we can find
13  out what this claim is and whether it has merit.  Your Honor
14  very accommodatingly came up with a great procedure to move the
15  matter forward, it has been fully briefed, it is set for
16  argument in mid-September, it's our understanding that if a
17  complete summary judgment is not entered, we will shortly
18  proceed to trial, and hopefully very soon, we will have
19  clarification as to the Zonalitae claim and what the client
20  says about Zonalitae.  Then the huge question mark and factor
21  that is not just convenient to have decided by the Court but
22  really vital to decide how to proceed with the plan and how, if
23  you will, decide it's appropriately divided up when on one side
24  people believe the claims were zero and on the other side
25  people who believe, mainly the Zonalitae claimants believe that

1 the claims are worth several billion, if not hundreds of
2 billions of dollars.

3        Third, Your Honor, of course we have significant
4 environmental claims in this case.  We have a bar date.  We are
5 working through those claims.  We have engaged in dialogue with
6 many environmental entities, as well as a significant dialogue
7 with the EPA to move forward and get handles on what the total
8 amount of that liability may be.

9        With respect to the personal injury claims, Your
10 Honor, as you may recall, on day one in this case, we filed a
11 case management order and pursued in a rather aggressive
12 fashion, some sort of a procedure we put in place for a bar
13 date for an appropriate estimation or the like that was
14 substantially brief.  It was taken by Judge Wolin, it was
15 substantially briefed more and it still remains pending for
16 him.  Your Honor, the debtor has by no means delayed in this
17 case.  It has by no means used the exclusivity period to lull
18 itself into a certain situation bankruptcy case.  We have been
19 diligently pursuing the various pieces of this puzzle in terms
20 of moving forward.  At the same time, Your Honor, there have
21 been dialogue.  There have been dialogue with all of the
22 various creditors and constituencies.  Unfortunately, none of
23 the dialogue have led us to a consensual plan, but we are
24 certainly making progress on various fronts that could
25 ultimately put us there.

**J&J COURT TRANSCRIBERS, INC.**

1        Your Honor, under Section 1121 of the Code, the
2    debtor is to be given a meaningful opportunity to negotiate a
3    consensual plan.  This meaningful opportunity is still there
4    and still needs to be there.  This is not a case that can be
5    resolved in six months, it's a case with many moving parts,
6    more moving parts, frankly, than most of the other cases
7    pending in this court, and courts around the country.

8        There is certainly a better likelihood of an imminent
9    consensual plan coming from the debtor than with any other
10   entity at this point.  The debtor has to take into account all
11   creditor constituency, not just the personal injury
12   constituency.  We all understand that the personal injury
13   constituency believe it to be the largest and most significant
14   portion, until ZAI gets resolved, I guess we really won't know
15   that for sure.  We are moving forward, it's very difficult to
16   come up with a complete agreement until we know what some of
17   the pieces will fall into place to be.

18       Your Honor, there is no alternative plan being
19   composed at this time.  By the debtor keeping exclusivity,
20   we're not holding off a reasonable and viable alternative.  On
21   balance, Your Honor, the best hope of getting a consensual plan
22   in this Chapter 11 case, is for the debtor to obtain
23   exclusivity so that the debtor can work with all creditor
24   constituencies, not favoring one over another, to put together
25   an appropriate and hopefully consensual plan.

J&J COURT TRANSCRIBERS, INC.

1    Under these circumstances and with the various moving
2  pieces, Your Honor, the debtor has requested an additional six
3  months until February 1st, 2004, to file a plan, and until
4  April 1st, 2004, for accepting that plan.  Thank you, Your
5  Honor.

6    THE COURT:  All right, does someone wish to be heard
7  in opposition?

8    MR. LOCKWOOD:  Your Honor, Peter Lockwood, for the
9  asbestos claimants committee.  I think we should put the
10 debtor's motion in some kind of context here, Your Honor.  This
11 case has been proceeding now for almost two and a half years.
12 Essentially, with the exception of a sort of routine type of
13 claims allowance omnibus objection type proceeding, essentially
14 nothing has been accomplished other than to make some progress
15 on the Zonalitae attic insulation.  If in fact the debtors
16 prevail on their summary judgment motions in the Zonalitae
17 attic insulation, obviously, that will be a material
18 development and lessening the complexity of this.  But let's
19 not kid ourselves here.  Even if the debtors prevail it can be,
20 I think, fairly predicted that the Zonalitae attic insulation
21 claimants will take an appeal and they will take an appeal as
22 high as they can take it.  In the interim, nothing whatsoever
23 has happened with respect to the personal injury claims.  Your
24 Honor will undoubtedly recall with the case management proposal
25 that the debtors originally put in, which is as Ms. Baer

1 observed, sitting in front of Judge Wolin at this juncture,
2 involved essentially trying to litigate their way out of their
3 asbestos personal injury liability to a variety of summary
4 judgment motions, <u>Dalbert Hearings</u>, bar dates, proof of claims
5 filings and the like, all of which, if they were to prevail
6 before Judge Wolin and got him to agree to that laundry list of
7 their wishes, would take years to resolve.  In addition, to my
8 knowledge, there has been no resolution of any significant kind
9 of any of the non-Zonalitae attic insulation property damage
10 claims which are substantial.  With respect to environmental
11 claims, and there is some form of bar date going on, I'm not
12 aware of any substantial near term likelihood of resolution in
13 some fashion of that, but I can't say that it couldn't happen.
14 But essentially, we've got a situation in which everybody is
15 just sitting around kind of cooling their heels while the
16 debtor tried to litigate its way out of a whole variety of
17 problems which if the debtor's course proceeds in the path that
18 it's chosen, is likely to take years.  In the interim, while it
19 is true that no alternative, viable plan has been agreed upon
20 by creditor constituencies, it is also true that there is
21 almost no incentive for the creditor constituencies to try and
22 negotiate such a plan as long as the debtor has control through
23 exclusivity of the entire bankruptcy case because the debtor,
24 while Ms. Baer talks about the sort of fair referee, umpire,
25 what-have-you, among its various creditors, the fact of the

1  matter is that the debtor is still hoping to preserve everybody
2  litigating its way out of all of its problems here and the
3  likelihood that the debtor is going to propose any kind of plan
4  in the near term is, to put it mildly, remote.  I read the
5  debtor's reply paper, I heard Ms. Baer say it, that there has
6  been supposedly some kind of negotiations going on between the
7  debtor and the constituency, I don't know who they've been
8  negotiating with, to the best of my knowledge, it certainly
9  hasn't included the asbestos committee, I don't believe, I
10  invite correction if I'm wrong, it includes the property damage
11  committee and I suppose I haven't had a chance to ask Mr.
12  Kruger yet to find out whether he's been negotiating with the
13  debtor for the unsecured creditor's committee, but if he has,
14  it hasn't been brought to my attention.  The fact of the matter
15  here is, that there is nothing, I repeat, nothing going on here
16  to have any prospect of a consensual plan or cram down or any
17  kind of a plan to be put on the table for the future.  And it
18  is clear to me beyond any venture of doubt (sic) that this six
19  month extension is just, you know, another one in a series,
20  they'll be back here in six months again asking for another six
21  months, there's no likelihood in the next six months that
22  anything definitive is going to happen with respect to either
23  the personal injury claims, the regular property damage claims
24  or the Zonalitae attic insulation claims, there may well be
25  developments, but there's nothing definitive that can happen

1  because people have rights to appeal, and many of the processes
2  like the ones involving personal injury claims will take years
3  to implement if the debtor gets his way.

4       Now, one of the things that the creditors, the
5  constituencies do in bankruptcy, as Your Honor is well aware,
6  not only from your long experience and also from your recent
7  experience in a number of other asbestos bankruptcies where
8  plans have been negotiated among constituencies, some -- all
9  the constituencies, some less than all the constituencies, is
10 that the representatives of the various constituencies have
11 been dealing with uncertainty.  They have to negotiate what
12 plans in ways that sort of cope with uncertainty.  They either
13 have to negotiate to resolve the uncertainty by some sort of
14 consensual deal, or they have to draft a plan that itself sort
15 of provide to hold back through other mechanisms, ways of
16 preserving a resolution of the uncertainty to a later date,
17 post confirmation.  All my committee is asking, Your Honor, is
18 that exclusivity be terminated so that the constituencies,
19 without having to worry that they're wasting their time because
20 of the (indiscernible) of the debtor in its determination to
21 pursue its litigation strategy, could in fact see, and I won't
22 represent to you that we will accomplish this, but at least see
23 whether or not there is some kind of consensual arrangement
24 that the creditor constituencies could arrive at here, which we
25 could then present to the debtor and the debtor could either

1 agree to it or not agree to it.  If it doesn't agree to it,

2 then we'll have a cram down on the debtor.  If it does agree to

3 it, then we'll have a consensual plan.  But right now, with

4 these constant extensions of exclusivity, and the debtor's

5 apparent assumption that it's entitled to keep getting those

6 extensions indefinitely until its litigation strategy plays

7 out, there is simply no incentive for any of the creditor

8 constituencies to go through, make the effort, try and make the

9 hard choices, and there are going to be hard choices.  I mean,

10 Ms. Baer's correct, Zonalitae attic insulation situation is,

11 you know, has a range of zero to millions of dollars if you

12 believe the various protagonists to their evaluation of their

13 case, but on the other hand, it is at least conceivable that a

14 group of constituents representatives, including those of the

15 Zonalitae attic insulation folks could in fact reach some kind

16 of a consensual resolution of all of that.  And so, Your Honor,

17 we would respectfully request that exclusivity be terminated at

18 this point.  Thank you, Your Honor.

19         THE COURT:  Anybody else wish to be heard in

20 opposition to the motion for exclusivity extension?

21         MR. ZICLE:  Your Honor, good afternoon, Dave Zicle,

22 on behalf of Property Damage Committee.  My committee echoes

23 Mr. Lockwood's comments, however, we don't oppose a short

24 extension of exclusivity at point for the debtor.  As Mr.

25 Lockwood pointed out, there are many contingencies and

1  variables that have to be decided in this case.  However, the
2  P.D. Committee does not oppose the debtors having an additional
3  three or four months to try to put a plan together that all the
4  creditor contingencies can agree to.  Absent that, the P.D.
5  Committee agrees with the (indiscernible) committee that
6  exclusivity should be terminated.  Thank you.
7          THE COURT:  All right, anyone else?
8          MR. KRUGER:  I'm here from Stroock & Stroock & Lavan,
9  counsel for the unsecured creditor's committee.
10          THE COURT:  I'm sorry, I couldn't hear your name?
11          MR. KRUGER:  It's Lewis Kruger.
12          THE COURT:  Yes, sir, thank you.
13          MR. KRUGER:  For the unsecured creditor's committee.
14          THE COURT:  Yes, sir.
15          MR. KRUGER:  While I'm sympathetic to Mr. Lockwood's
16  perspective that it would be nice to get this reorganization
17  plan underway and getting a deal done, the reality of it is,
18  although we've had, for example, some desultory conversations
19  occasionally with the committee, we really are no place near
20  any sort of a consensual arrangement between ourselves, and I
21  don't think it's a fact that exclusivity has resided with the
22  debtor that has made it not likely for us to reach consensus.
23  I think the reality of it is, that there are indeed significant
24  issues in the case pending before Judge Wolin and before Your
25  Honor as well, and until there is some guidance with respect to

1  those, I'm not hopeful that we will find a consensual
2  arrangement.  And I don't believe that if the debtor's
3  exclusivity were to be extended for six months, that Mr.
4  Lockwood and I, for example, if we could find a consensual
5  arrangement between ourselves, could present that to the debtor
6  and failing obtaining the debtor's consent, to take whatever
7  other action we thought appropriate.  So I'm not sure that
8  there really is a tie-in, if you will, between exclusivity for
9  the debtor and the absence of a consensual reorganization plan.
10  So I think from the perspective of the unsecured creditor's
11  committee, we would continue to support the debtor's
12  exclusivity.

13        THE COURT:  All right, thank you.  Anyone else?
14  Ms. Baer, does the debtor want to make any final comments?

15        MS. BAER:  Yes, Your Honor, just briefly.  One of the
16  last things that Mr. Lockwood said, I think is the most telling
17  and significant thing that was said here by him, and that was
18  he indicated that the Personal Injury Committee wanted
19  exclusivity terminated so that the creditor constituencies
20  could see whether there's some kind of an arrangement they
21  could arrive at and present to the debtor.  Your Honor, whether
22  the debtor has exclusivity or not, has absolutely nothing to do
23  with whether or not the creditor's constituencies among
24  themselves, as well as with the debtor, can talk about a
25  consensual plan.  There is every incentive in the world for the

1  creditor constituencies to talk among themselves and present
2  something to the debtor, there's also every incentive in the
3  world for the debtor to be in that room and add its two cent's
4  worth.   This is an asbestos chapter 11 case.   There hasn't
5  really been any cram down plans in asbestos chapter 11 cases,
6  and we hope there won't be, Your Honor.   This is a situation
7  where all of the parties should continually be talking, coming
8  up with whatever ideas they can as they get through all of the
9  rather significant challenges that face them.   And while I'm
10  sorry that Mr. Lockwood doesn't feel incentivized (sic) to have
11  those discussions, I would encourage him very much to have
12  those discussions, the debtor would welcome the ideas of
13  whatever creditor constituency would want to bring to it.   In
14  the meantime, Your Honor, we would like to proceed with getting
15  some of these hurdles taken care of and get working on what we
16  hope to be a consensual plan.   Under those circumstances, Your
17  Honor, we simply ask that the exclusivity period be extended
18  for the debtor so that we can, in fact, try to put together a
19  consensual plan.

20        THE COURT:   All right.   I have reviewed the pleadings
21  that have been filed, and heard the arguments of counsel.   I am
22  going to grant the debtor's motion.   I agree with Ms. Baer that
23  the fact that the debtor has exclusivity should not be a
24  disincentive to creditors getting together to see if they can
25  come to some mutual understanding of the kind of plan they'd

**J&J COURT TRANSCRIBERS, INC.**

1  like to see.  At that point, if in fact they have such a plan,
2  then the debtor isn't willing to move forward with that or some
3  other plan, that may be grounds to terminate exclusivity, but I
4  don't see why the debtors having exclusivity while so my
5  litigation seems necessary in this case is overly burdensome to
6  the creditor's ability to convene among themselves to see
7  whether a consensual plan can come together.  I think the fact
8  that Judge Wolin has had pieces of the litigation and so have
9  I, has, I hope, advanced the ball rather than not advancing the
10 ball.  When I first got this case, it appeared that it was
11 somewhat at a standstill from a court processing point of view,
12 and I think the debtor, at that point, was already beyond the
13 first 120 day period of time and from what I can recall,
14 virtually nothing had happened from a court perspective in that
15 time.  So from what I have seen in this case, it seems to be
16 moving, not at the speed that people would like, hopefully once
17 the ZAI piece is a little further toward conclusion, that will
18 no longer be a stumbling block.

19        I think it's time, however, for the parties to make a
20 concerted effort to get together, and so I am coupling this
21 order that grants the debtor's motion with a directive to the
22 debtor to start meeting independently with the different
23 constituent groups to find out what it is they want and how on
24 earth the debtor may be able to come to some accommodation.  I
25 understand that the division of assets will be somewhat

1  difficult, while the ZAI piece and the other property damage
2  pieces are somewhat unknown, nonetheless, I think the structure
3  of a plan could come together whether or not the actual
4  distribution mechanism and distribution numbers can be known at
5  this point in time.  So the debtor is ordered to start meeting
6  with the various constituencies and by next month, I want the
7  debtor to have met at least one time with every constituency
8  simply to get something on the table as to what it is that is
9  going to get this case out of bankruptcy short of legislation
10 which, of course at this time, I don't know what the status of
11 that is.  So I've signed the order that grants the debtor's
12 period of exclusivity extension through February 1 for filing
13 the plan through April 1 for solicitation, and I have orally
14 directed the debtor to meet with each of the constituent
15 groups.

16         MS. BAER:  Thank you, Your Honor.

17         THE COURT:  Okay, just give me one second, please, so
18 I can make a note here.

19                    (Pause)

20         THE COURT:  Okay, next.

21         MS. BAER:  Your Honor, the next on the agenda, Item
22 Number 5, Motion of the Objector, Rodriguez and Carlos Nueves
23 (phonetic), for relief from the automatic stay.

24         Your Honor, very briefly, before we hear from the
25 movants, this is a small personal injury slip and fall case

1  from July 1999.  The actual complaint was filed against the
2  debtor in June of 2001, actually in violation of the automatic
3  stay.  Proof of claim has been filed.  There is insurance
4  coverage for this matter, but at this point in time, Your
5  Honor, the debtor does not know how many claims outstanding are
6  against this insurance policy.  As Your Honor well knows, we do
7  have the claims in.  We have 15,000 claims filed.  We are
8  getting through them as quickly as possible.  Some claims tell
9  you a lot, some claims tell you very little.  So at this point,
10  we do not know what exactly the claims are going to be against
11  this insurance policy.  We are endeavoring to work on that, but
12  are not there yet.  Your Honor, in this particular situation,
13  we do not see a compelling reason for lifting of the automatic
14  stay.  This matter is essentially now five years old.  It's on
15  property that the debtor does not own.  It's on property that
16  at the time of the slip and fall was not being operated by the
17  debtor, it was being operated by someone else, the debtor
18  simply happened to be the owner of the property.  As this
19  matter went forward, the debtor would be in a very difficult
20  position in terms of finding someone who could work with the
21  insurance company in this litigation.  Your Honor, I believe
22  counsel for Rodriguez and Nueves is here, it is their motion,
23  so I will give them the podium to address the matter.
24          THE COURT:  All right.
25          MR. RITTY:  Good afternoon, Your Honor, Sheldon Ritty

1  on behalf of the petitioners.  Your Honor, as the debtor's
2  counsel stated, there is first dollar insurance coverage
3  available for the coverage for the slip and fall.  The
4  petitioners were seriously injured in this accident and are
5  seeking not to go after the estate's funds, but only to the
6  extent of insurance coverage.  The debtor is stating that the
7  huge amount of claims that they cannot at this time sort
8  through and make a determination as to whether there will full
9  coverage or prorata coverage, I don't see that as a problem.
10 What the plaintiff proposes is to be allowed to proceed with
11 the case but agree to hold off on executing any judgment
12 obtained.  This will expedite and streamline the process and
13 allow the plaintiff to continue the case at the same time the
14 debtor is working through its potential claimants.  What the
15 debtor's counsel did not state is when they plan to have a date
16 certain or at least an approximate date as to when they will be
17 able to sort through these potential claimants.  We have sought
18 that information and have not obtained it.  They cannot say
19 when it would be available.  And I think that -- I mean, we
20 could theoretically be here for another two or three years just
21 waiting, and I don't think it will be any prejudice to the
22 estate for us to proceed whatever judgment we obtain, hold off
23 on execution and at the same time give the debtors the
24 opportunity to sort through the potential claimants.
25           THE COURT:  Ms. Baer?

1          MS. BAER:  Your Honor, the debtor has a tremendous
2    concern that if these actions proceed, this kind of potential
3    will be diverted in a way that may never have to be determined.
4    We do not wish to minimize by any means the injuries that may
5    have been suffered here, but Your Honor, this is a circumstance
6    where there is really no compelling reason to go forward now.
7    Proofs of claim have been filed.  We are getting through the
8    claims.  This case may never need to be litigated.  Once we
9    have an idea of how many aggregate claims are against this
10   policy, it's very likely these can all be resolved without need
11   for any litigation.  To start piece-meal litigation now,
12   frankly, Your Honor, gives us great pause and concern that it
13   could open a floodgate, if not one then why not a hundred?  The
14   debtor cannot be put in a position where it piece-meal starts
15   litigating once again in a circumstance where the whole reason
16   of bankruptcy is so rather than piece-meal litigating and
17   dealing with the run to the courthouse and frankly the
18   (indiscernible) debtor's access to defendant, so we can deal
19   with things in an orderly fashion.  Under these circumstances,
20   Your Honor, the plaintiffs here have really not asserted any
21   compelling reason why their case should be different from
22   thousands of others.  And we'd ask that the stay remain in
23   place.

24          THE COURT:  Well, how long is it going to take the
25   debtor to go through this process?

1    MS. BAER:  Your Honor, We have 15,000 claims.  On the
2  first objections we got through 1500.  We have personnel ready,
3  willing and able to do that, but in looking at these claims,
4  some can take two minutes and some can take two days.  They are
5  all over the place in terms of figuring out what they are, what
6  they stand for, what is real and what is not.  It's very
7  difficult, Your Honor, for me to say right now how fast we will
8  get through all 15,000 claims.  I think we're way ahead of the
9  curve in terms of where a lot of people would be at this point,
10  but it would be very difficult for me to say whether it's going
11  to be three months or six months.  Certainly we are moving in
12  that direction.

13    THE COURT:  All right.  It seems to be under these
14  circumstances that the best thing to do for this matter is to
15  simply continue it for several months to see where Grace is.  I
16  think the debtor is making some effort, concerted effort to get
17  through the claims and probably does need to evaluate whether
18  or not there is going to be insurance coverage for this and
19  similar claims and whether there might be some additional claim
20  against the estate.  So I think a brief period to let the
21  debtors start to make that effort worthwhile is in order.  I'm
22  going to ask the debtor to put this back on the agenda for the
23  December calendar for a status report, and I'll see at that
24  point in time whether it appears feasible to lift the stay or
25  not at that time.

1              MR. RITTY:   Thank you, Your Honor.

2              THE COURT:   Thank you.

3              MS. BAER:   Thank you, Your Honor.

4              Your Honor, that takes us to Agenda Item Number 6,

5  the Motion of Robert Costa and Ronald Thornburg for relief from

6  the stay.  We talked about this a little bit earlier on in the

7  hearing.  As you may recall, Your Honor, this was up last

8  hearing, and actually you ruled.  I believe you ruled on, and

9  we agreed, that the automatic stay should not apply to the

10  action against Baker and Taylor, beyond that, it does -- on

11  that estate -- does apply to W.R. Grace and it remains in place

12  now to W.R. Grace.  In fact, an order was submitted to Your

13  Honor on a Certificate of No objection which makes it clear

14  that the matter is not (indiscernible) to Baker and Taylor.

15  The reason this matter was put on your court calendar today was

16  the status, because as you may recall, the district court

17  action that this matter involved was sitting in the district

18  court and a final order had not been entered approving the

19  debtor's settlement with the government, and with Baker and

20  Taylor.  It ended up sitting there because of potential

21  concerns about criminal action.  Since that time, Your Honor,

22  the debtor has spoken with his counsel at trial, spoken with

23  Baker and Taylor, and they saw the circumstances of the case,

24  the debtor is prepared to notify the district court that the

25  matter has been settled and an order can be entered dismissing

1  the case.  From there Costa and Thornburg will then be free to
2  pursue whatever order it seeks from the district court so that
3  it can pursue its appeal and to Baker and Taylor.  The stay, of
4  course, will remain in effect as to W.R. Grace and W.R. Grace
5  doesn't reserve the right, if it believes it necessary, to come
6  to this court with the request to extend the preliminary
7  injunction to cover the action against Baker and Taylor if the
8  debtor deems that it would be a related to matter that would
9  need to be enjoined.  At this point in time, we don't know
10 where things are going to go in the district court and the
11 appellate court, so we are not asking for that relief.  But
12 under these circumstances, Your Honor, I believe that the only
13 outstanding issue from the last hearing has been resolved,
14 there's no need to decide whether or not the debtor needs to be
15 compelled to enter that agreement in the district court because
16 we will do so.  We have spoken with Baker and Taylor, they have
17 no objection.

18         THE COURT:  All right, is anyone there for Costa and
19 Thornburg?

20         MR. CHAPMAN:  Yes, this is Peter Chapman.

21         THE COURT:  Yes, go ahead.

22         MR. CHAPMAN:  A couple of issues.  My understanding
23 of the previous order is similar to that of W.R. Grace in most
24 respects in that it's clear that the Court and the order that
25 we presented to you lifted the stay or acknowledged that the

1  stay did not properly apply to Baker and Taylor, Inc.  With
2  regard to W.R. Grace, I guess it wasn't as clear to me what
3  exactly the scope of the Court's final order was.  Essentially
4  the order that you were asked to sign is consistent with what
5  was said at the hearing, which was that W.R. Grace would not
6  have its stay lifted at that time, that they would report back
7  to the Court this month, today, about what they learned about
8  the criminal process that caused them to refuse to sign
9  stipulation of dismissal.

10                  (Interruption)

11          MR. CHAPMAN:  Are you there still?

12          THE COURT:  Yes, I am.

13          MR. CHAPMAN:  Okay.  And that they would then report
14  back today and the Court would determine whether, if you see
15  the last sentence of the order, whether any further relief from
16  the court was appropriate.  In terms of the plan to dismiss the
17  action in the District of California, North District of
18  California, our clients obviously, have no objection to that.
19  I'm not entirely clear, and maybe this can be cleared up by
20  counsel for W.R. Grace, about whether Baker and Taylor has
21  indicated to W.R. Grace that they would be cooperating with
22  that effort or whether they are going to continue to refuse as
23  well, to sign the stipulation of dismissal, and that matters a
24  little.  But also we would like to have whatever clarity we can
25  have about whether W.R. Grace, what its position is going to

1 be, whether the stay actually applies because it doesn't do us
2 any good to start the appellate process only then when we're
3 seeking to appeal this issue to have W.R. Grace come back in
4 and try again to stir everything, you know, it just ends up
5 wasting more resources and time for us not have this resolved
6 one way or the other now so that we can determine procedurally
7 what we need to do to go forward.

8         THE COURT:  Ms. Baer?

9         MS. BAER:  Your Honor, with respect to the question
10 of Baker and Taylor, the settlement agreement was a three party
11 agreement among the government, Baker and Taylor and W.R.
12 Grace.  We have spoken with Baker and Taylor and they are in
13 agreement that we can submit that matter to the district court
14 for entry of an order dismissing the action.  So I believe that
15 clears up the matter.

16         With respect to the appeal as to Baker and Taylor,
17 Your Honor, at this point in time there is nothing pending
18 before you.  If Costa and Thornburg wish to pursue their appeal
19 against Baker and Taylor in the district -- in the appellate
20 court in California, they can do so.  There is no automatic
21 stay.  There is an automatic stay as to Grace, we vehemently
22 insist that the automatic stay remain in place, and we would
23 oppose any modification of the automatic stay so they can
24 proceed against Grace.

25         With respect to where that appeal goes, how it goes

1 and whether or not Grace would at some point in time seek to
2 enjoin the appeal against Baker and Taylor, we simply are not
3 there, Your Honor.  This is an action that's been going on for
4 a long time.  It's unclear right now what position Baker and
5 Taylor will take.  It's unclear what kind of an order the
6 district court will enter.  And under these circumstances,
7 we're not asking at this point for the case to be enjoined as
8 to Baker and Taylor, we simply wanted to make the parties aware
9 that that could happen at some point in the future if in fact
10 we determine that it's a related to action, keeping in mind
11 Judge Wolin's most recent ruling in the Gerard matter, and that
12 it would have a substantial impact, it could have a substantial
13 impact on the estate as it goes forward against Baker and
14 Taylor.  We are not there, we are not asking for that at this
15 point in time.

16          THE COURT:  All right.  So what form of order do you
17 propose to submit?

18          MS. BAER:  Your Honor, are you asking in this court
19 or in the district court in California?

20          THE COURT:  Here.  By me.

21          MS. BAER:  Your Honor, I don't think any order needs
22 to be entered by you here.  You've already have before you, if
23 you have not already signed an order indicating that the action
24 is not stayed as to Baker and Taylor.  I think that was the
25 only thing that needed to be done, and I think the Court

**J&J COURT TRANSCRIBERS, INC.**

1  provides that the action is stayed as to W.R. Grace.  I don't
2  think any further relief from this Court is necessary at this
3  time.

4          MR. CHAPMAN:  Your Honor, this is Peter Chapman
5  speaking again.  I guess we would need clarity of whether the
6  Court's preliminary ruling last month that the liability
7  provision of stay which still apply to W.R. Grace
8  notwithstanding the case law that says that in false claims
9  actions that the determination of liability may proceed.

10          THE COURT:  Well, yes, I think at this point I have
11  to stay with that decision for the reasons I put on the record
12  at the last hearing.  Your clients haven't been determined to
13  be appropriate parties.  If you win on that appeal, that may be
14  a different issue.  But for now, I don't think there's anything
15  that gives me grounds to say anything but that the automatic
16  stay does apply.

17          MR. CHAPMAN:  Okay, well that clarity then means, you
18  know, I think what we'll need to do then is seek severance and
19  to go forward against Baker and Taylor, Inc. which is useful to
20  know in and of itself.

21          THE COURT:  Okay, so you don't need any further order
22  then now either?

23          MR. CHAPMAN:  I don't believe so.

24          THE COURT:  Okay, that's fine, then no further order
25  will be entered on Number 6 other than the one I did sign, I

**J&J COURT TRANSCRIBERS, INC.**

1 don't know if it's been docketed yet, but I did sign the order
2 that was submitted on the certification of counsel.

3         MR. CHAPMAN:  All right, thank you, Your Honor.

4         THE COURT:  All right, thank you.

5         MS. BAER:  Your Honor, given that you have entered
6 orders on the claims objections items 7 and 8, I believe that
7 concludes the agenda before the Court unless somebody else has
8 something to take up.

9         THE COURT:  Anybody have any housekeeping matters to
10 address?

11         Okay, I have one with respect to the ZAI matter.  Are
12 you folks in the process of trying to come to some resolution?
13 Are we going forward in September with the arguments?  I've
14 started to review some of the material.  There's an awful lot
15 of it.  If it turns out that in fact you're making progress
16 toward settlement, frankly, I'd prefer to spend my time doing
17 something else rather than having it turned out to be wasted.
18 So can somebody give me a status report on that matter?

19         MS. BAER:  Your Honor, David Siegel, general counsel,
20 W.R. Grace, is in the courtroom, I have spoken to him briefly
21 last week with respect to it.  I know there has been progress.
22 If you'd like a detailed report, he can certainly report on it.
23 I can generally tell you that progress has been made, but
24 beyond that, with respect to how to guide you in terms of using
25 your time, I'm not in a position to do that.

1            THE COURT:   Okay, when are you meeting with the

2  mediator again?

3            MS. BAER:   September 5, Your Honor.

4            THE COURT:   And when is the argument set?

5            MS. BAER:   I believe it's September 15th -- 16th,

6  excuse me.

7            THE COURT:   All right, so are you going to know

8  before the 16th whether it is or isn't settled?

9            MS. BAER:   We would certainly hope so, Your Honor.

10            THE COURT:   When is our next omnibus?

11            MS. BAER:   The next omnibus is September 22nd.

12            THE COURT:   Okay, I think what I'd like to do then

13  with respect to the ZAI matter is find out from -- I don't care

14  whether you arrange it by conference call or send me an e-mail

15  or what, something by not later than -- pardon me while I get

16  my calendar here for a second.  Not later than September the

17  11th, what the status is with respect to the mediation so that

18  -- because over that weekend, is undoubtedly when I'll spend a

19  lion's share of time getting ready for the summary judgment

20  argument.  And if it's been settled, then I really would prefer

21  to spend my time doing something else.  So September 11.  Ms.

22  Baer, I'll let you figure out with the parties how to get me

23  this information, but I'm directing the debtor to provide me

24  with a status report.  I don't want to know the substance of

25  the settlement if you've arrived at one, that's not what I'm

1 asking for, I'm simply trying to get a case management process
2 in place for myself.

3          MS. BAER:  I understand, Your Honor, and we will make
4 sure you get that information on the 11th.

5          THE COURT:  All right.  Anything further from anyone
6 else?

7          MS. BAER:  Your Honor, one point of clarification
8 with respect to the claims objections.  Omnibus objection to
9 Exhibit D, the document provided responses filed are being
10 expunged.  The four matters on that exhibit are actually being
11 continued.

12          THE COURT:  Yes.  The orders that were -- I just
13 assumed, Ms. Baer, that the debtor is going to keep continuing
14 the matters that have not yet been resolved and you'll just
15 tell me in the upcoming agendas which matters have been
16 continued.

17          MS. BAER:  Yes, Your Honor, we will do that.

18          THE COURT:  Okay.  Because otherwise -- I mean, I'll
19 sign the orders as to matters that are uncontested or that have
20 been settled, but obviously, you're not finished with the
21 omnibus objection until you get through them all.

22          MS. BAER:  Your Honor, these four are a little bit
23 unique and we wanted to bring them specifically to the Court's
24 attention.  These are personal injury claims filed on a
25 property damage claim form.  There are several ways we could

1 approach these claims, and as we have asked for and as provided
2 in your order, the claims are being expunged. The language in
3 the order makes it very clear that these people's, substantive
4 right as to their personal injury claim, they're not being
5 affected whatsoever, whatever process has been put in place to
6 have (indiscernible) or whatever process might ultimately be
7 agreed upon by the parties to solicit personal injury claims,
8 these people will not be affected by the order in any way. We
9 are simply trying to clean up, if you will, the claims docket
10 by getting these P.I. forms that are filed on P.D. form off the
11 docket for now until it's appropriate for P.I. claims to in
12 fact be filed.

13          THE COURT:  Okay.  Is somebody opposed to that?

14          MS. BAER:  Your Honor, we did receive four responses
15 to our request for expungement.

16          THE COURT:  Yes, and those are the ones you're
17 continuing.

18          MS. BAER:  Oh, Your Honor, I'm sorry, I misspoke.
19 We're now asking for those to be continued.  In the orders
20 before you, those matters are being sustained.  None of the
21 parties representing the four responses are in court today.  We
22 did inform them the matter would be going forward today.

23          THE COURT:  All right.  Where are you looking, Ms.
24 Baer?  I'm not following -- where are you in the agenda,
25 please?

1            MS. BAER:  Your Honor, I'm going to ask at this point
2  for my office to deal with this, they are much more able to
3  deal with this than I am.
4            MS. ESKIN:  Your Honor, Marla Eskin for --
5            THE COURT:  I'm sorry, I can't hear you.
6            MS. ESKIN:  I'm sorry, Your Honor, Marla Eskin, from
7  Campbell, Levine for the Asbestos Personal Injury Committee.
8  We had asked the debtor to revise the initial order --
9            THE COURT:  Where are you in the agenda, I'm sorry,
10 I'm lost.
11           MS. ESKIN:  This is Exhibit C --
12           THE COURT:  To what?
13           MS. ESKIN:  2C is the attachment to the agenda.
14           THE COURT:  Exhibit 2C?
15           MS. ESKIN:  Yes, it's the short one, short list,
16 there's only four people listed, is the quickest way to find
17 it, I think.
18           THE COURT:  All I have behind Tab 2 is a continuance.
19 I do not have anything behind Tab 2.
20           MS. ESKIN:  The list begins --
21           THE COURT:  Oh, this is in Exhibit 7.
22           MS. ESKIN:  It may be that, Your Honor, you have the
23 preliminary agenda, I don't know that this was attached to the
24 amended agenda.
25           THE COURT:  I can't follow what you're talking about,

**J&J COURT TRANSCRIBERS, INC.**

1 I'm really sorry, but I just can't see what it is you're
2 referring to. If you can't point me to where it is in the
3 agenda, I can't find it.

4          MS. ESKIN:   Your Honor --

5          THE COURT:   I don't know what agenda number it
6 relates to because --

7          MS. ESKIN:   Okay.

8          MR. LANE:   Your Honor, Christian Lane for the
9 debtors.   Exhibit 2C to the final agenda has the list of these
10 four.   I think you might be looking at the preliminary agenda
11 which did not have the same exhibit attached.

12          THE COURT:   I don't know to what agenda item this
13 exhibit purports to refer.   It came in simply listed as exhibit
14 in one case, 1B and then 2C, but it doesn't tell me what it
15 relates to, so I can't follow what you're talking about.

16          MR. LANE:   It relates to Agenda Item 8.

17          THE COURT:   Eight?

18          MR. LANE:   Eight.

19          THE COURT:   All right, well I just got an order on 8
20 here in court that I said that I'd sign.   Has that not taken
21 care of this issue?

22          MR. LANE:   It has, Your Honor, however, we needed a
23 ruling with respect to the four claims which are on Exhibit B
24 to the order.

25          THE COURT:   Well, by signing the order aren't I

**J&J COURT TRANSCRIBERS, INC.**

1  making rulings?  I'm really confused.  I'm sorry, but I'm
2  really not following what you're asking me to do at all.  I'm
3  lost.

4         MR. LANE:  Your Honor, I will submit a revised
5  Exhibit B continuing these matters until we can explain it a
6  little more clearly.

7         THE COURT:  The order that I have that came on Agenda
8  Item 8, does not have any exhibits attached.  The order that I
9  got on Exhibit 7 has numerous, maybe oh, I'm estimating, maybe
10 a hundred pages worth of exhibits attached.  Is there something
11 mixed up here?

12        MR. LANE:  I think there is something mixed up.
13 Those should be the exhibits in both of the orders.

14        THE COURT:  They're the same exhibits?

15        MR. LANE:  They are not the same exhibits, there are
16 two sets of exhibits, it may have been somewhat confused in the
17 e-mail.

18        THE COURT:  All right, I'm not going to sign, I'm
19 revising what I said earlier.  I'm not going to sign either the
20 order on 7 or on 8 until you get me corrected exhibits because
21 I thought I understood what you were doing, and now, I'm lost.

22        MR. LANE:  We will get those filed --

23        THE COURT:  All right, those that came in this
24 morning through the e-mail, I'm throwing away.

25        MR. LANE:  That's fine.

1    THE COURT:  All right, I need new orders on 7 and 8.
2  All right, now that I'm up to speed and understand where you're
3  looking, now tell me what the issue is about 8.

4    MS. ESKIN:  Marla Eskin.  Your Honor, there were some
5  claims listed that were personal injury claims. They were
6  listed to be expunged as they were filled out on property
7  damage claim forms.  We have worked out with the debtor the
8  revised language which Your Honor has which specifically states
9  that should any accepted personal injury claims be expunged,
10 they have the right to come back to file an additional proof of
11 claim or to be (indiscernible).  I think the list which you
12 don't have in front of you, some of those are accepted personal
13 injury claims and I believe the debtors have spoken with these
14 attorneys so that they're aware that the claims will be
15 expunged but that their rights are reserved.

16    THE COURT:  All right, what I have by way of this
17 order on Exhibit 8, talks about claims that were listed on
18 Exhibit C that the debtor was withdrawing -- I'm sorry, that
19 the objections to claims were withdrawn without prejudice to
20 the debtor's right to object later.  Exhibit C and F were
21 stating that the claim was listed as expunged and disallowed
22 for all purposes, the same with respect to Exhibits E and G.
23 Then there is a separate paragraph that said to the extent that
24 there was an asbestos related personal injury claim that was
25 expunged that was without prejudice to the right of the

1 claimant to file a later proof of claim without leave of court
2 but subject to applicable defenses.  That was the order that I
3 had signed originally, although there were no exhibits
4 attached.

5          MR. LANE:  Your Honor, Christian Lane for the
6 debtors.  That is the correct order, there was some confusion.
7 The particular exhibit at issue here is Exhibit B which lists
8 four personal -- presumably personal injury asbestos claims who
9 filed claims on property damage.  They all filed pro se
10 responses.  Two of them are prisoners so they are not folks
11 that I have been able to speak to with respect to the
12 expungement of their claims.  However, we feel that the
13 language in the order protecting their rights with respect to
14 their personal injury claim allow to expunge these claims at
15 this time.

16          THE COURT:  Yes, I agree, I don't see any problem
17 with it, it appears that that's a reasonable solution when
18 there is a bar date set for the P.I. matters or if there is one
19 set then that claim can be filed appropriately at that time.
20 So I think the language works fine.  I'm still going to throw
21 these out though so that I get corrected orders, correct orders
22 on Number 7 and 8.

23          MR. LANE:  We will make sure that's taken care of.
24          THE COURT:  Okay.  Anything further?  All right,
25 we're adjourned.

1          MR. LANE:   Thank you, Your Honor.

2                      * * * * * *

3              # C E R T I F I C A T I O N

4

5          I, Johanna LiMato, court approved transcriber,

6    certify that the foregoing is a correct transcript from the

7    official electronic sound recording of the proceedings in the

8    above-entitled matter.

9

10

11

12    _____          September 1, 2003

13    J&J COURT TRANSCRIBERS, INC.

14

15

16

17

18

19

20

21

22

23

24

25