IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**Objection Deadline:  September 30, 2003**
**Hearing Date:  October 27, 2003 at Noon, Eastern, only if objections are received**

## MOTION OF THE DEBTORS FOR AN ORDER EXTENDING TIME TO ASSUME, ASSUME AND ASSIGN, OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

hereby move the Court for entry of an order, pursuant to section 365(d)(4) of title 11 of the

United States Code (as amended, the "Bankruptcy Code"), extending the time for the Debtors to

assume, assume and assign, or reject any lease, sublease or other agreement that may be

considered "an unexpired lease of nonresidential real property" (the "Unexpired Leases") under

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

section 365(d)(4) of the Bankruptcy Code through and including March 31, 2004 (the "Motion").

In support of this Motion, the Debtors respectfully represent as follows:

### Background

1.      In an order dated April 28, 2003, the Court extended the Debtors' time to

assume, assume and assign, or reject Unexpired Leases through and including October 1, 2003,

subject to and without prejudice to: (a) the rights of the Debtors to request a further extension of

the time to assume, assume and assign, or reject the Unexpired Leases and (b) the rights of any

lessor to request that the extension be shortened as to a particular Unexpired Lease (the

"Extension Order").

2.      The Debtors are currently parties to several hundred Unexpired Leases

that fall into two major categories.  The first category of Unexpired Leases consists of real

property leases for offices and plants throughout the United States and Puerto Rico.  The second

category of Unexpired Leases consists of several hundred leases where the Debtors are lessees

under leases of commercial real estate, often retail stores, restaurants and other, similar facilities,

most of which have been sub-leased to other tenants.

### Relief Requested

3.      By this Motion, the Debtors are seeking an order further extending the

Debtors' time to assume, assume and assign, or reject Unexpired Leases from October 1, 2003,

until March 31, 2004 (a six month extension).  This extension would be subject to and without

prejudice to: (a) the rights of the Debtors to request a further extension of the time to assume,

assume and assign, or reject the Unexpired Leases and (b) the rights of any lessor to request that

the extension be shortened as to a particular Unexpired Lease.

## Basis for Relief

4.      This Motion is filed pursuant to section 365(d)(4) of the Bankruptcy Code,

which permits bankruptcy courts to grant, for cause, extensions of the period to assume or assign

non-residential leases enumerated therein (the "Rejection Period"). In re Channel Home Centers,

Inc., 989 F.2d 682 (3d Cir. 1993), cert. denied, 114 S. Ct. 184 (1993).  Congress enacted section

365(d)(4) in order "to protect lessors ... from delay and uncertainty by forcing a trustee or a

debtor in possession to decide quickly whether to assume unexpired leases." In re American

Healthcare Management, Inc., 900 F.2d 827, 830 (5th Cir., 1990).  Congress recognized,

however, in enacting section 365(d)(4) of the Bankruptcy Code, that the prescribed time period

"will not be enough time for bankrupt lessees to decide whether to assume, assume and assign, or

reject leases.  In those circumstances, upon adequate demonstration of cause, bankruptcy courts

may grant lessees extensions of time in which to assume or reject." Id.

5.      The legislative history of section 365(d)(4) of the Bankruptcy Code

indicates that a debtor confronted with the task of analyzing a significant number of leases has

sufficient cause to extend the Rejection Period:

> This time period [can] be extended by the court for cause,
> such as in exceptional cases involving large numbers of
> leases.

130 Cong. Rec. S8894-95, reprinted at 1984 U.S. Code Cong. & Admin. News 576, 598-601

(remarks of Sen. Hatch concerning the bill).  In construing the legislative history, the bankruptcy

court in In re Unit Portions of Delaware, Inc., 53 B.R. 83 (Bankr. E.D.N.Y. 1985) concluded:

> Congress recognized that there may be times when it is not
> possible for the trustee to make a careful and informed
> assessment of the benefits and burdens of the lease within
> this 60 day period.  Accordingly, it empowered the court to
> grant a trustee who demonstrates cause for an extension of
> additional time to make this assessment.

Id. at 85.

6.     Numerous courts have discussed what constitutes sufficient cause to

extend the Rejection Period.  In In re Wedtech Corp., 72 B.R. 464 (Bankr. S.D.N.Y. 1987), the

Court applied the following factors, among others, to determine whether "cause" existed to

extend the Rejection Period:

a.     where the leases are an important asset of the estate such that the decision
to assume or reject would be central to any plan of reorganization;

b.     where the case is complex and involves large numbers of leases; or

c.     where the debtor has had insufficient time to intelligently appraise each
lease's value to a plan of reorganization.

Id. at 471-72.

d.     The Third Circuit Court of Appeals has endorsed the Wedtech decision:

> [N]othing prevents a bankruptcy court from granting an
> extension because a particular debtor needs additional time
> to determine whether the assumption or rejection of
> particular leases is called for by the plan of reorganization
> that it is attempting to develop.  Thus we agree with...In re
> Wedtech Corp., 72 Bankr. 464, 471-72 (Bankr. S.D.N.Y.
> 1987) that it is permissible for a bankruptcy court to
> consider a particular debtor's need for more time in order to
> analyze leases in light of the plan that it is formulating.

In re Channel Home Centers, Inc., 989 F.2d at 689.

       7.     Indeed, the deadline for assumption or rejection of leases is often extended for long periods of time. See, e.g., In re Ernst Home Center, Inc., 221 B.R. 243, 256 (9th Cir. B.A.P. 1998) (granting 14 month extension). Indeed, courts routinely grant multiple extensions of the Rejection Period. See e.g., In re Channel Home Centers, Inc., 989 F.2d at 688; Matter of American Healthcare Management, Inc., 900 F.2d at, 830; In re Victoria Station, Inc., 88 B.R. 231, 239 n.7 (9th Cir. B.A.P. 1988), aff'd 875 F.2d 1380 (9th Cir. 1989) (multiple extensions of 365(d)(4) time period allowed).

       8.     The Debtors' present situation meets the requirements in Wedtech for an extension of the 365(d)(4) period to assume or reject the Unexpired Leases. Since the Extension Order was entered, the Debtors' management and professionals have been consumed with the operation of the Debtors' businesses and the complex task of resolving these chapter 11 cases, which were filed as a result of mounting asbestos-related litigation liabilities. Defining these liabilities and then providing for the payment of valid claims on a basis that preserves the Debtors' core business operations is a complex process that is central to resolving these chapter 11 cases. Given its nature, this process involves significant litigation that is, as the Court has recognized, taking time to resolve.

       9.     To that end the Debtors have worked diligently in conjunction with a number of constituencies to advance the chapter 11 cases, and, as a result, substantial progress has been made in establishing a framework within which to resolve the mounting asbestos-related litigation liabilities and various other claims against the Debtors. Indeed, since the most

recent rejection period extension motion was filed, there have been a number of developments

regarding the "Science Trial," a forum established by this Court to resolve factual questions

about the scientific risks of Zonolite attic insulation ("ZAI") and whether it may lead to liability

in these chapter 11 cases.  On November 25, 2002, (the "November 25 Order") this Court

entered its Amended Order revising the modified Science Trial scheduling order, which had been

entered on July 22, 2002.

        10.     As set forth in the November 25 Order, fact discovery for the Science

Trial ended on February 28, 2003.  Both the ZAI claimants' expert reports and the Debtors'

expert reports have been completed and served.  Depositions of the ZAI claimants' experts and

depositions of the Debtors' experts have been completed.  The parties both filed summary

judgment motions and other related motions on July 7, 2003.  Responses to the summary

judgment motions were filed on August 8, 2003, and replies filed August 18, 2003.  A hearing on

the motions was scheduled to commence on September 16, 2003 but due to progress made with

the mediator appointed in the matter, the hearing was continued to November 24, 2003.

        11.     By another order dated April 25, 2002, this Court also has set a claims bar

date of March 31, 2003 (the "Bar Date"), for all claims relating to asbestos property damage,

non-asbestos claims (including all governmental claims) and medical monitoring claims.  Over

15,000 claims were filed by the Bar Date.  The Debtors and their professionals are now in the

process of reviewing the filed claims and preparing claims objections.  A Personal Injury Claims

bar date, however, has yet to be set, and other related issues raised by the Debtors' case

management motions also remain unresolved.  The Debtors and other constituents have fully

briefed Judge Wolin on how best to resolve the Personal Injury Claims and the procedures for

doing so.

12.     Other progress has also been made in these Chapter 11 Cases since the

most recent rejection period extension motion was filed. In particular, the parties in the

fraudulent transfer actions filed by the official asbestos committees in these Chapter 11 Cases

(Adversary Proceeding Nos. 02-2210 and 02-2211) have expended substantial time and effort

negotiating agreements memorializing the settlements with Sealed Air Corporation and Fresenius

Medical Care AG ("Fresenius") reached on November 29, 2002. The parties, including Grace,

have executed the settlement agreement with Fresenius. An order approving the settlement was

signed on June 25, 2003. Additionally, the Debtors are meeting with each of their four court-

appointed committees to discuss the development of a plan of reorganization and will report to

the Court on these meetings at the hearing on September 22, 2003.

13.     The litigation described above streamlines the claims adjudication process

and provides a means of resolving the common legal issues through a fair and orderly process in

a single forum while preserving legitimate personal injury claimants' rights to trial. The Debtors

submit, however, that further progress is necessary before the Debtors can meaningfully develop

a viable plan of reorganization.

14.     For example, the issues pending in the Science Trial are significant to

determining the scope of a currently unknown body of potential liability that could have to be

dealt with in any plan of reorganization developed by the Debtors. The ZAI Claimants have

alleged that as many as approximately 30 million homes in the United States may contain ZAI,

thus creating potential liability for the Debtors. The Debtors, however, believe that they ultimately will be found to have no liability for the ZAI Claims. Therefore, the outcome of the Science Trial could greatly influence the Debtors' financial picture and the availability of assets to satisfy the claims of the Debtors' various constituencies. Likewise, the outcome of the process to resolve Personal Injury Claims will be similarly determinative.

15.    This lengthy process has affected the Debtors' ability to analyze their Unexpired Leases in several respects. First, the attention of the Debtors' management has been focused elsewhere, and second, the nature of the resolution of these asbestos-related claims may impact the Debtors' decisions regarding some or all of these Unexpired Leases. Finally, due to the inability of the Debtors to develop a viable plan of reorganization until the above-described issues are resolved, the Debtors have been unable to evaluate the impact that the assumption or rejection of several hundred leases would have upon any such plan of reorganization.

16.    The period ending on October 1, 2003, therefore has been insufficient for the Debtors to make prudent decisions concerning the assumption or rejection of the Unexpired Leases. The size, nature and complexity of these chapter 11 cases and the Debtors' businesses, the complex legal and economic issues relating to these chapter 11 cases and the development of a plan of reorganization and the potential value of the Unexpired Leases to the ongoing operations of the Debtors all necessitate further extending the Rejection Period. As a result, sufficient cause exists to extend the Rejection Period until March 31, 2004.

17.    The Debtors believe that they are current in all of their postpetition rent payments and other contractual obligations with respect to the Unexpired Leases. The Debtors

intend to continue to timely pay all rent obligations on leases until they are either rejected or assumed and will continue to timely perform their contractual obligations with respect to the assumed leases. As a result thereof, the continued occupation of the relevant real property by the Debtors (whether directly or by sublessees) will not prejudice the lessors of such real property or cause such lessors to incur damages that cannot be recompensed under the Bankruptcy Code. Furthermore, these lessors will not be prejudiced because they retain the right under section 365(d)(7) of the Bankruptcy Code to request that the period to assume or reject be shortened with respect to particular leases.

18.     For the reasons set forth herein, the Debtors respectfully submit that the time period under section 365(d)(4) of the Bankruptcy Code should be extended for the Debtors to assume, assume and assign, or reject all Unexpired Leases through and including March 31, 2004.

**Notice**

19.     Notice of this Motion has been given to: (i) the United States Trustee; (ii) counsel to the debtor in possession lenders; (iii) counsel to the official committees appointed in these chapter 11 cases; (iv) the non-Debtor parties to the Unexpired Leases; and (v) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order

(i) extending the Rejection Period through and including March 31, 2004, subject to and without

prejudice to (a) the rights of the Debtors to request a further extension of the Rejection Period

and (b) the rights of any lessor to request that the extension be shortened as to a particular

Unexpired Lease, and (ii) grant such other and further relief as the Court deems appropriate.

Dated:  September 11, 2003

> KIRKLAND & ELLIS LLP
> James H.M. Sprayregen, P.C.
> Janet S. Baer
> James W. Kapp III
> Christian J. Lane
> 200 East Randolph Drive
> Chicago, Illinois 60601
> (312) 861-2000
>
> and
>
> PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
> WEINTRAUB P.C.
>
> Laura Davis Jones (DE Bar No. 2436)
> Scotta McFarland (DE Bar No. 4184)
> Paula Galbraith (DE Bar No. 4258)
> 919 North Market Street, 16th Floor
> P.O. Box 8705
> Wilmington, Delaware 19899-8705 (Courier 19801)
> (302) 652-4100
>
> Co-Counsel for the Debtors and Debtors in Possession