UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

FEE AUDITOR'S FINAL REPORT REGARDING
FEE APPLICATION OF RICHARDSON PATRICK WESTBROOK &
<u>BRICKMAN, LLC FOR THE NINTH INTERIM PERIOD</u>

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fee Application of Richardson Patrick Westbrook & Brickman, LLC for the Ninth Interim Period</u> (the "Application").

## BACKGROUND

1.  Richardson Patrick Westbrook & Brickman LLC ("RPWB") was appointed as lead special counsel to ZAI Claimants. In the Application RPWB seeks approval of fees totaling $479,492.50 and costs totaling $269,925.05 for its services from April 1, 2003, through June 30, 2003.

2.  In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30,

1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on RPWB an initial report based on our review, and received a response from RPWB, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3. In our initial report, we noted that the Application was generally free of lumping and instances of inadequate detail.

4. We further noted that per RPWB's Appointment Order, the firm was authorized a total budget as ZAI counsel of $1.5 million in fees and $500,000 in expenses for prosecuting the Science Trial. On July 28, 2003, the Court entered an Order increasing the budget by $950,000 per side for additional attorney fees and expenses. By our calculations, RPWB's submitted fees from July 1, 2002, through June 30, 2003, are $1,640,718.00, and its submitted expenses for the same period are $554,539.95, and thus RPWB is within the budget as increased by the Order dated July 28, 2003.

### Specific Time and Expense Entries

5. In our initial report, we noted that on April 15, 2003, five firm members attended a meeting. The total time spent including preparation time was 41.50 hours for fees of $14,040.00. The entries are provided below.

| | | | | |
|---|---|---|---|---|
| 04/15/03 | KC | 8.00 | 1000.00 | Meeting with experts regarding upcoming depositions. |
| 04/15/03 | RT | 9.90 | 3960.00 | Received and reviewed Grace expert reports and other materials in preparation for meeting with experts |

|  |  |  |  | (1.5); meeting with experts re: facts and opinions and scheduling for depositions for ZAI Science Trial (8.0);............ |
|---|---|---|---|---|
| 04/15/03 | BW | 8.20 | 1968.00 | Attend meeting with experts regarding all aspects of case, reports and opinions (8.0);......... |
| 04/15/03 | EW | 8.20 | 5330.00 | Strategic meeting with attorneys and experts, review issues, defense position on issues (8.0);.......... |
| 04/15/03 | JW | 9.70 | 2570.50 | Participate in meetings with experts witnesses re: all aspects of case and expert opinions (8.0);.......... |

Paragraph II.D.5.of the Guidelines states,  ". . .[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."

We asked RPWB to explain why it was necessary for five professionals to attend this meeting.

RPWB responded as follows:

> As you will note from a review of our time submissions to date, we have kept multiple attendee meetings to a minimum throughout our ZAI Special Counsel appointment. The meeting to which you refer on April 15, 2003 was the major meeting at which our four attorneys working on the case and one supervisory paralegal met with the majority of our experts to review the Debtors'' expert reports that had just been filed on April 11, 2003, and to prepare the Claimants'' experts for their depositions which were scheduled to run from the date of the meeting until May 9, 2003. (See November 25, 2002 Amended Scheduling Order). In an effort to prevent duplication of effort, I had assigned each lawyer an expert or experts for whom they were primarily responsible during the expert report and deposition process. Although these experts have specific areas of the case on which they are to testify, there is significant interaction among the scientific areas. For instance, while one of our experts testifies about the ZAI experiments conducted in various homes, another expert testifies about the laboratory analysis of the samples taken during those experiments, and yet a third expert testifies about the medical significance of the fiber levels the second expert determined based on the first expert''s testing. The same holds true with various other aspects of the expert testimony in this case. I made the determination that it was critically important for each of the experts to discuss his or her activities in the presence of the other experts and that the attorneys responsible for the various experts have an opportunity to hear each of the experts discuss his or her areas so that the attorneys could understand the overall ""fit"" of their expert''s testimony within the case, and appreciate how that testimony related

> to that of other experts in the case. Accordingly, we scheduled a single, comprehensive conference with all of the available experts and the attorneys involved, along with our chief coordinating paralegal, to review proposed testimony, strategy, begin preparation for the upcoming depositions and determine from the collective experts'' wisdom, what more needed to be done to get our case prepared as strongly as possible. Under the circumstance of this case, where we are charged with representing the interests of over one million homeowners and presenting the finest science available in a ""one-shot"" proceeding, I believe that it was critically necessary to have this strategic meeting. I hope you will agree.

We accept this explanation and thus offer no objection to these fees.

6. In our initial report, we noted that On May 23, 2003, RT, BW and EW participated in a conference call. The total time spent including preparation time was 1.50 hours for fees of $645.00. The entries are provided below.

| Date | Atty | Hours | Amount | Description |
|---|---|---|---|---|
| 05/23/03 | RT | 4.30 | 1720.00 | .........; Conference call with Ed Westbrook, Bobby Wood and Darrell Scott regarding EPA notification and briefing schedule (.5);......... |
| 05/23/03 | BW | 0.80 | 192.00 | Conference call with Ed Westbrook, Rob Turkewitz and Darrell Scott regarding strategy and EPA disclosures (.5);.......... |
| 05/23/03 | EW | 7.40 | 4810.00 | .........; telephone conference with Rob Turkewitz Bobby Wood and Darrell Scott regarding EPA notification and briefing schedule (.5);.......... |

We asked RBWB to explain why it was necessary for three firm members to participate in this conference call. RPWB's response is provided below.

> As reflected in the time entries for May 23, the 30-minute conference call covered three issues — strategy, the EPA notification to homeowners regarding ZAI and the briefing schedule for motions. I determined it was most efficient to have all three attorneys on this call to discuss these three subjects because the three attorneys have differing responsibilities on the team. I am in overall charge of the case and principal liaison with our co-counsel, Mr. Scott. Mr. Turkewitz has concentrated on EPA matters and the discussions during that conference call on the recently issued EPA notification to homeowners directly implicated his on-going activities, including the depositions of Debtors'' experts that were being conducted from May 12 to June 6,

2003. The EPA notification issued in the midst of these depositions was a major development whose significance we needed to consider and discuss among ourselves as it applied not only to the upcoming motions, but also the ongoing depositions of Grace''s experts. Mr. Wood was included on the conference call because he had not only been involved with a number of homeowners who had ZAI in their homes (some of whom had testing conducted by our experts in their homes), but was also in charge of those aspects of the upcoming briefing that dealt with the homeowner issues. Thus, the EPA notification was not only a major topic of current interest on May 23, but also had great significance for the upcoming briefing. Under these circumstances, I believe it was appropriate to have three attorneys on the phone for 30 minutes on three topics.

We appreciate the response and have no objection to these fees.

7. Finally, we noted that on June 5, 2003, RT and BW attended a deposition in Pittsburgh. The total time spent including preparation and non-working travel time was 37.50 hours for fees of $9,660.00. The entries are provided below.

| Date | Atty | Hours | Amount | Description |
|---|---|---|---|---|
| 06/04/03 | RT | 13.50 | 5400.00 | .......; Travel from Charleston to Pittsburgh (3.5 - worked during travel);........ |
| 06/04/03 | BW | 6.00 | 1440.00 | .......; travel to Pittsburgh for E. Anderson deposition reviewing documents in preparation for deposition (1.2); review and edit deposition outline in preparation for E. Anderson deposition (2.3). |
| 06/05/03 | RT | 15.30 | 6120.00 | Attended deposition of Dr. Elizabeth Anderson (8.0);..............; conference with Bobby Wood prior to the deposition of Dr. Anderson regarding the deposition (.5);............. |
| 06/05/03 | BW | 8.80 | 2112.00 | Meeting with Mr. Turkewitz regarding E. Anderson deposition (.5); attend E. Anderson deposition (8.0);....... |
| 06/04/03 | BW | 3.50 | 420.00 | Non-working travel time to Pittsburgh for deposition of Dr. Anderson (billed at half rate) |
| 06/05/03 | BW | 5.50 | 660.00 | Non-working travel to Charleston from Pittsburgh (billed at half rate) |

| 06/06/03 | RT | 4.50 | 900.00 | Travel from depositions (Pittsburgh) to Charleston (4.5 - billed ½ rate). |

We asked RPWB to explain why it was necessary for more than one firm member to attend this deposition. RPWB responded as follows:

> Actually, there were two depositions set in Pittsburgh on back-to-back days (June 5 and June 6, 2003). Mr. Wood was primarily responsible for the Elizabeth Anderson deposition on June 5. That deposition was followed on June 6 by the deposition of Dr. R.J. Lee. Mr. Turkewitz was primarily responsible for the R.J. Lee deposition. Dr. Anderson is a risk assessment expert. Her risk assessment figures relied heavily on fiber level calculations performed by Dr. Lee. Dr. Anderson plugged Dr. Lee''s calculations into her risk assessment formulas to come up with her calculated risks of ZAI exposure to homeowners under varying circumstances. Mr. Turkewitz, who was scheduled to take Dr. Lee''s deposition the next day, attended the Pittsburgh deposition of Dr. Anderson with Mr. Wood so that he could both provide Mr. Wood with follow-up questions during the Anderson deposition that related to items he needed to know for Dr. Lee''s deposition the next day, and also develop additional lines of attack on Dr. Lee''s testimony based on Dr. Anderson''s responses to questioning. Because Mr. Turkewitz had to be in Pittsburgh on June 5 anyway to be present for the morning of June 6 for Dr. Lee''s deposition, it made good litigation sense, and was an economical use of his time, for him to get to Pittsburgh in time to attend the Dr. Anderson deposition. Please note that when Mr. Wood finished Dr. Anderson''s deposition, he did not stay to attend the Lee deposition. Rather, as the time records you have excerpted reflect, Mr. Wood left Pittsburgh on June 5. Mr. Turkewitz left Pittsburgh on June 6 following the Lee deposition. I hope this explanation is sufficient to explain why our two lawyers were in Pittsburgh. By setting these depositions up in a single city, we were able to take both quite efficiently and with maximum benefits for the ZAI Claimants. I believe this may be the only time when we have had two lawyers at any deposition. While not being critical, I note that W.R. Grace often had an in-house attorney and a litigation attorney at the expert depositions. Each certainly had a legitimate reason to be there.

We accept this explanation and thus have no objection to these fees.

## CONCLUSION

8.     Thus, we recommend approval of fees totaling $479,492.50 and costs totaling $269,925.05 for RPWB's services from April 1, 2003, through June 30, 2003.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
Warren H. Smith
Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 4080
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 17th day of September, 2003.

_____
Warren H. Smith

**SERVICE LIST**
Notice Parties

**The Applicant**

Edward J. Westbrook, Esq.
Robert M. Turkewitz, Esq.
Robert S. Wood, Esq.
Richardson Patrick Westbrook & Brickman
174 East Bay Street
Charleston, South Carolina 29401

**Co-Counsel for ZAI Claimants**

William D. Sullivan, Esq.
Charles J. Brown, III, Esq.
Elzufon, Austin, Reardon, Tarlov & Mondell, PA
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, DE 19899-1630

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801