COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
C.A. NO. 00-4884

AUG 25 2003

CITY OF EVERETT,
      Plaintiff,
v.
BARLETTA ENGINEERING CORPORATION &
FIREMAN'S FUND INSURANCE COMPANY,
      Defendants.

)
)
)
)
)
)
)
)
)

**SECOND AMENDED
SUPPLEMENTAL
COMPLAINT**

BARLETTA ENGINEERING CORPORATION &
FIREMAN'S FUND INSURANCE COMPANY,
      Defendants/Third Party Plaintiffs,
v.
EARL R. FLANSBURGH ASSOCIATES, INC.
      Third-Party Defendant.

)
)
)
)
)
)
)
)

BARLETTA ENGINEERING CORPORATION,
      Defendant/Third Party Plaintiff,
v.
EARL R. FLANSBURGH ASSOCIATES, INC.,
A&A WINDOW PRODUCTS, INC.,
B&T MASONRY CONSTRUCTION CO., INC.,
DeBRINO CAULKING ASSOCIATES, INC.,
MODERN GLASS & ALUMINUM, INC.,
SOLOCO, INC., EMBREE ELEVATOR, INC.,
      Third-Party Defendants.

)
)
)
)
)
)
)
)
)
)
)

CITY OF EVERETT,
      Plaintiff,
v.
BARLETTA ENGINEERING CORPORATION,
FIREMAN'S FUND INSURANCE COMPANY,
EARL R. FLANSBURGH ASSOCIATES, INC.
FLANSBURGH ASSOCIATES, INC.,
GREAT AMERICAN INSURANCE COMPANY,
COREGIS INSURANCE COMPANY,
UNITED STATES FIRE INSURANCE
COMPANY, TRANSCONTINENTAL
INSURANCE COMPANY,
      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

## Background

1.    The City of Everett ("Everett") brings this action to recover its damages relating to certain negligent and defective construction, negligent and defective design and property damage arising from Everett's Lafayette School Project.

2.    The City seeks recovery from the General Contractor, Barletta Engineering Corporation ("Barletta"), for breach of contract, breach of implied covenant of good faith and fair dealing, breach of warranty, negligence, and indemnification. The City seeks recovery from Barletta's surety bond company, Fireman's Fund Insurance Company ("Fireman's") for breach of its bond obligations.

3.    Everett seeks recovery from Earl R. Flansburgh & Associates, Inc. and Flansburgh Associates, Inc. (collectively "Flansburgh") for breach of contract, breach of implied covenant of good faith and fair dealing, negligence, recoupment under Mass. Gen. L. c 7 §38H(j) and indemnification.

4.    Everett also seeks a declaratory judgment that its insurance carriers, Great American Insurance Company, COREGIS Insurance Company and United States Fire Insurance Company (hereinafter collectively referred to as "Everett's insurers") and/or Barletta's insurance carrier, Transcontinental Insurance Company ("Barletta's insurer"), are responsible for, in whole or in part, and must pay to the City all costs associated with property damage caused by water infiltration.

5.    Everett also seeks recovery from Fireman's, Everett's insurers and Barletta's insurer for beach of implied covenant of good faith and fair dealing and violations of Mass. Gen. L. c. 176D. Everett is also asserting Mass. Gen. L. c. 93A violations against all defendants.

## Parties

6.    Everett is a municipal corporation with its City Hall located at 484 Broadway, Everett, MA 02149.

7.    Barletta Engineering Corporation is a Massachusetts corporation with its principal place of business at 10 Whipple Avenue, Roslindale, MA 02131. Barletta is engaged in the business of general contracting and construction.

8.    Fireman's Fund Insurance Co. is a California corporation authorized to engage in the business of suretyship within the Commonwealth of Massachusetts. The surety's principal office for the conducting of business in Massachusetts is located at 4 Batterymarch Park, Quincy, MA 02269.

9.    Great American Insurance Company, f/k/a American Alliance Insurance Company, is an Ohio corporation engaged in the business of providing insurance, and licensed in Massachusetts to issue insurance policies, having a principal place of business at 580 Walnut Street, Cincinnati, Ohio.

10.    COREGIS Insurance Company is an Indiana corporation engaged in the business of providing insurance, and licensed in Massachusetts to issue insurance policies, having a principal place of business at 525 West Van Buren, Suite 500, Chicago, Illinois.

11.·    United States Fire Insurance Company is a New York corporation engaged in the business of providing insurance, and licensed in Massachusetts to issue insurance policies, having a principal place of business at 305 Madison Avenue, Morristown, New Jersey.

12.    Transcontinental Insurance Company is a New York corporation engaged in the business of providing insurance, and licensed in Massachusetts to issue insurance policies, having a principal place of business at CNG Plaza, Chicago, Illinois.

13.    Flansburgh Associates, Inc. ("Flansburgh"), f/k/a Earl R. Flansburgh Associates, Inc., is the architect for the Project, and a Massachusetts corporation having a principal place of business at 77 North Washington Street, Boston, Massachusetts.

## Factual Background

### The Design Agreement

14.    On or about January 9, 1997, Everett entered into a professional services agreement (the "Design Agreement") with Flansburgh for design and construction administration services for five school projects, including the new Lafayette School project at Edith Street in Everett (the "Project").

15.    The Design Agreement required Flansburgh to provide certain basic services (the "Basic Services"), which required Flansburgh, among other things, to:

(i)     perform its services as expeditiously as inconsistent with professional skill and care and the orderly progress of the project work (¶1.1.2);

(ii)    be responsible for the coordination of all drawings, design documents and other instruments of services, the completeness and accuracy of those documents, compliance with all codes and represent that the Project is constructable (Amendment No. 1 ¶1.1.41);

(iii)   be responsible for the design of the Project (¶2.52);

(iv)    prepare the plans, specifications and documents for construction (¶2.4) (Contract Documents);

(v)     administer the Contract Documents during construction (¶2.6.2);

(vi)    visit the Project, become generally familiar with the progress and quality of the construction work; determine if construction work is in accordance with the Contract Documents, keep Everett informed of the progress and quality of the work and endeavor to guard Everett against defects and deficiencies in the work (¶2.6.5);

(vii)   certify payments applications from the construction contractor based on Flansburgh's determination that the construction work has progressed to the point represented in payment applications and is of the quality required by the Contract Documents; and issue a certificate that payment is due the construction contractor (¶2.6.10);

(viii)    reject work that does not conform to the Contract Documents and require additional testing or inspection of the contractor's work to determine conformance (¶2.6.10); and

(ix)    conduct inspections and determine the date upon which the contractor achieves substantial and final completion (¶2.6.14).

16.    The Design Agreement provided that Flansburgh was to be paid a lump sum price for Basic Services performed within a time schedule provided by Flansburgh. Basic Services performed after that time schedule were to be paid over and above the lump sum amount as Additional Services on time and material basis at certain set hourly rates (¶11.5.1).

17.    The Design Agreement provided that Flansburgh would be paid over and above the lump sum price for certain Additional Services for, among other things, the preparation of documents relating to Change Orders, Construction Change Directives and Claims, except to the extent such services result from the negligence of Flansburgh (Design Agreement, Amendment No. 1, ¶¶3.3.3, 3.3.7).

18.    The Design Agreement expressly disclaims any payment to Flansburgh for any services relating to changes that are required for additional work that should have been anticipated by Flansburgh in the preparation of the Contract Documents (Design Agreement, Attachment 5).

19.    The Design Agreement provides that Flansburgh will indemnify Everett against all claims, including reasonable attorneys' fees, caused by the negligence or fault of Flansburgh (Design Agreement, Amendment No. 1 ¶12.3).

20.    The Design Agreement provides that, prior to initiation of any legal proceedings, Everett and Flansburgh must submit disputes to non-binding mediation (¶7.1). However, Everett and Flansburgh have not proceeded with mediation because they are already parties to the instant litigation.

## The Construction Contract

21.    Everett issued the Contract Documents prepared by Flansburgh seeking general bids and filed sub-bids for the Project.

22.    Barletta was the low bidder on the Project and on or about March 5, 1998, entered into a contract for construction with Everett.   The terms of that contract for construction were the Contract Documents prepared by Flansburgh.

23.    Pursuant to the Contract Documents, Barletta was required to provide a performance surety bond.   Fireman's issued such performance surety bond on behalf of Barletta assuring Barletta's performance of the work set forth in the Contract Documents.

24.    Pursuant to the Contract Documents, Barletta was required to secure certain insurance.   Barletta's insurer provided such insurance, naming Everett as an additional named insured.   Everett also secured owner provided insurance policies from Everett's own insurers.

25.    The contracts Documents required Barletta, among other things, to:

(i)    warrant that its work is of good quality and new, free from defects and in conformance with the Contract Documents (¶3.5.1);

(ii)    indemnify and hold harmless Everett from all claims, including attorneys' fees, caused in whole or in part by Barletta (¶3.18.1);

(iii)    complete the Project within the time set forth in the Contract Documents (¶8.2.1); and

(iv)    promptly complete and correct work rejected by Flansburgh.

26.    The Project was required to be completed on or before July 5, 1999.   The contract provides that time was of the essence in the completion of the work and that Barletta would be liable to Everett for any and all actual damages suffered by Everett as a result of Barletta's failure to complete the work on schedule.

27.    During the course of the work, certain change orders were authorized by Everett, which resulted in net adjustments to the contract price in the amount of $937,666.97 and extension of time for completion of the work were granted to bring the extended scheduled completion date to August 5, 1999.

### Performance

28.    During the course of the work Barletta submitted and Flansburgh certified certain periodic payment requisitions, which represented that Barletta's work was in conformance with the Contract Documents and was not defective. Such representation by Barletta and certification by Flansburgh were false in that Barletta's work was defective and not in conformance with the Contract Documents.

29.    On or about October 25, 1999, Barletta represented, and Flansburgh certified, that the Project was substantially complete and in conformance with the Contract Documents and not defective. Such representation by Barletta and certification by Flansburgh were false in that Barletta's work was defective.

30.    Everett, in the ordinary course, reasonably relied upon the representations made by Flansburgh and Barletta.

31.    The Project was not able to be occupied for its intended use by Everett until February 28, 2000, due to, among other things, breakdowns of the heating system, problems with the air balancing, broken ceiling tiles, and unperformed cleaning of the building.

32.    Prior to and subsequent to substantial completion of the building, Flansburgh and its consultant prepared punchlists, detailing the items of Barletta's incomplete and defective work, which had been discovered as of the dates of the various punchlists.

33.    Barletta and its subcontractors performed some of the work listed on the punchlists, but a substantial amount of incomplete, defective, or non-conforming work was

left uncorrected or incomplete because of the failure or refusal of Barletta and its subcontractors to perform the punchlist work.

34.    Barletta has been repeatedly directed to complete the subject punchlist work yet has failed and refused to do so.

35.    On or about August 30, 2000, Everett put Fireman's and Barletta on notice of Barletta's material default of its obligations under the Contract Documents.

36.    On or about August 31, 2000, Fireman's responded to the default notice and requested that Barletta respond directly to Everett to remedy the default and that Fireman's would keep the matter open and under investigation.   Barletta and Fireman's failed to remedy such default.

37.    On or about January 12, 2001, Everett notified Barletta and Fireman's that Barletta remained in material default of its obligations under the Contract Documents.

38.    On or about January 26, 2001, Everett exercised its right to terminate Barletta's contract with Everett and demanded that Fireman's honor its obligations under the surety bond.

## Water Damage

39.    The Project has been plagued with water infiltration and penetration at numerous locations including, but not limited to, the base flashing at the masonry curtain wall intersection, the flashing at window lintels, through the wall flashing at relieving angles, the base flashing at the curtain wall, door entries, window sashes, the joints between the window frame and architectural louvers, the architectural louvers, the architectural louvers themselves, and the curtain walls.

40.    The systemic leaks in the Project have caused damage to, among other things, walls, ceilings, floors and other building materials.

41.    Everett hired Covino Environmental Associates, Inc. ("Covino") to conduct visual inspection and environmental sampling to assess potential microbial contamination in the wall cavities as a result of suspected mold growth caused by the building leaks and water damaged building materials.

42.    Preliminary testing and sampling of materials by Covino and the Massachusetts Department of Public Health, Bureau of Environmental Health Assessment, have confirmed the presence of microbial contamination in the exterior wall cavities as well as the presence of bioaerosols (viable mold and total mold spores) in a significant percentage of the samples and locations tested.

43.    At least once cause of this mold contamination is water leakage, which resulted in water, damaged building materials. As a result of the water leaks and mold contamination, Everett has been denied usage of parts of the building, incurred costs and expenses in testing and analyzing the results of testing for the presence of damaged building materials and mold, determining or attempting to determine the extent to which water has penetrated the building skin and thus presenting additional areas at risk of contamination, determining and authorizing the remedial work necessary to prevent the water leaks and to decontaminate the building, and additional damages caused by the concerns of parents, teachers, and staff that building occupants are being exposed to dangerous and unhealthy air quality.

44.    During the summer of 2000, Barletta retained Simpson Gumpertz & Heger, Inc. ("SGH") to perform water leakage testing at the Project and to recommend certain repair work. Barletta performed certain corrective work but failed to correct the causes of the water leaks.

45.    In January 2001, Wiss Janney Elstner Associates, inc. ("WJE"), was retained by Everett to review SGH's investigation and review repairs implemented by Barletta. WJE

completed its initial studies at the Project in or around April 2002 and attributed the water leakage to various exterior wall and other conditions, including:

- (i)     Base flashing at masonry;
- (ii)    Flashing at window lintels;
- (iii)   Masonry flashing at relieving angles and base of exterior wall;
- (iv)    Base flashing at curtain wall;
- (v)     Exterior doors;
- (vi)    Window sashes;
- (vii)   Joints between window frame and architectural louver;
- (viii)  Architectural louvers;
- (ix)    Curtain walls;
- (x)     Masonry jambs;
- (xi)    Metal panels at fourth floor;
- (xii)   Roofing and copings; and
- (xiii)  Opacifier coating failure.

46.     The water leakage conditions are caused, in whole or in part by, alone or in combination with, certain design deficiencies, errors or omissions; negligent and defective construction practices, materials or methods; premature failure of material or other causes.

47.     The water leakage and damage to building materials has led to collateral damages caused by mold growth, which will require extensive remediation efforts, and repair and reconstruction of substantial portions of the Project.

48.     In or about April 2002, Everett notified Barletta's insurer as well as Everett's insurers of the water damaged materials and mold growth at the Project. Everett made demand on such insurers for all costs, losses and damages that Everett has and will continue to incur as a result of water and related mold damage seeking coverage for such losses to the extent covered by the respective policies.

### Ball Field

49.     The Remediation Action Management ("RAM") Plan, submitted by the Licensed Site Professional, required Barletta to install a 36-inch soil cover at the ball field in accordance with the Department of Environmental Protection Guidelines.

50.    Flansburgh rejected Barletta's submittals depicting ball field construction and tendered by Barletta between June 1999 and June 2000 on the grounds that they lacked detail and were insufficient to verify coverage of 36 inches.

51.    The November 1999 punchlist provided to Barletta includes the lack of adequate coverage on the ball field.

52.    Barletta provided a survey, which indicated that the coverage was 36 inches. The survey provided by Barletta was inaccurate.

53.    Barletta was notified again as of August 12, 2000 regarding its non-compliance with the Contract Documents, because of its failure to provide sufficient soil coverage for the ball field.

54.    As a result of Barletta's failure to submit the required documents verifying 36 inches of soil cover, Everett was required to hire an independent consultant to verify the soil cover depth.

55.    Everett was without use of the field because the independent consultant determined that the soil cover depth reported by Barletta was inaccurate and the actual soil depth was inadequate under the RAM plan.

56.    Everett has incurred costs to verify the soil cover for the field, as well as additional costs associated with remediation and corrective work.

## COUNT I

### Breach Of Contract – Barletta

57.    Everett repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 56 of this Second Amended Supplemental Complaint as if fully set forth herein.

58.    Everett has fully performed its obligations under the Contract Documents.

59.   All conditions precedent necessary for Barletta to be obligated to perform under the Construction Contract have been met or have occurred.

60.   Barletta has materially breached its contractual obligations to Everett by, among other things:

(i)   failing to complete its work within the required completion time;

(ii)   failing to perform and complete all of its work in compliance with the Contract Documents;

(iii)   performing defective construction and, in providing defective materials and equipment;

(iv)   misrepresenting that its work was in compliance and conformity with the Contract Documents, when in fact the work was non-conforming;

(v)   misrepresenting progress of the work in its pay applications; and

(vi)   misrepresenting that the Project was substantially in conformance with the Contract Documents when in fact the construction was defective and not in compliance with the Contract Documents.

61.   As a consequence of Barletta's breaches of contract, Everett has incurred and continues to incur costs, damages and expenses.

WHEREFORE, The City of Everett demands judgment against Barletta Engineering Corporation in an amount to be determined at trial, plus interest and costs and such other and further relief that this Honorable Court deems just and proper.

## COUNT II

### Negligence – Barletta

62.   Everett repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 61 of this Second Amended Supplemental Complaint as if fully set forth herein.

63.   Barletta and/or its subcontractors owed Everett a duty to exercise reasonable care in the performance of its work on the Project.

64. Barletta and/or its subcontractors breached that duty by, among other things, negligently performing construction work, providing defective construction and/or providing defective materials that allowed water penetration of the Project's building envelope and by negligently submitting or causing to be submitted incorrect, inaccurate and/or false representations as to the quality, progress and completion of the construction work.

65. Everett reasonably relied upon Barletta's representations to its detriment, and has otherwise been damaged and continues to be damaged by Barletta's breach of its duty of care in performing its work on the Project.

WHEREFORE, The City of Everett demands judgment against Barletta Engineering Corporation in an amount to be determined at trial, plus interest and costs and such other and further relief that this Honorable Court deems just and proper.

### COUNT III

### Breach of Implied Covenant
### Of Good Faith and Fair Dealing – Barletta

66. Everett repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 65 of this Second Amended Supplemental Complaint as if fully set forth herein.

67. The Contract Documents between Everett and Barletta contain an implied covenant of good faith and fair dealing.

68. Barletta's negligence and failure to perform in a timely, competent and workmanlike manner constitute a breach of that covenant.

69. As a result of such breaches, Everett has incurred and continues to incur, substantial costs.

WHEREFORE, The City of Everett demands judgment against Barletta Engineering Corporation in an amount to be determined at trial, plus interest and costs and such other and further relief that this Honorable Court deems just and proper.

## COUNT IV

### Breach Of Express Warranty – Barletta

70.    Everett repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 69 of this Second Amended Supplemental Complaint as if fully set forth herein.

71.    Barletta has expressly warranted that the materials and equipment furnished under the Contract Documents will be of good quality, free from defects and will conform to the requirements of the Contract Documents.

72.    Certain of Barletta's work was of poor quality, not in conformance with the Contract Documents, and defective.

73.    Accordingly, Barletta has breached the express warranty set forth in the Contract Documents.

74.    As a result of this breach, Everett has incurred and continues to incur substantial damages.

WHEREFORE, The City of Everett demands judgment against Barletta Engineering Corporation in an amount to be determined at trial, plus interest and costs and such other and further relief that this Honorable Court deems just and proper.

## COUNT V

### Indemnification - Barletta

75.    Everett repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 74 of this Second Amended Supplemental Complaint as if fully set forth herein.

76.     Barletta agreed to indemnify and hold harmless Everett from, among other things, any and all claims, demands, liabilities, losses, expenses, including but not limited to attorneys' fees, arising from the negligence, acts or omissions of Barletta or its subcontractors.

77.     Everett has incurred liability and costs arising out of the negligent acts or omissions of Barletta.

78.     Barletta has failed and refused to indemnify and hold harmless Everett, and as a result, Everett has been damaged.

WHEREFORE, The City of Everett demands judgment against Barletta Engineering Corporation in an amount to be determined at trial, plus interest, costs and such other and further relief that this Honorable Court deems just and proper.

## COUNT VI

### Violation of Mass. Gen. L. c. 93A – Barletta

. 79.     Everett repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 78 of this Second Amended Supplemental Complaint as if fully set forth herein.

80.     Barletta is engaged in a trade or commerce within the meaning of Mass. Gen. L. c. 93A.

81.     The conduct of Barletta as described in this Second Amended Supplemental Complaint occurred primarily and substantially in the Commonwealth of Massachusetts.

82.     The conduct of Barletta as described in this Second Amended Supplemental Complaint was knowing or willful.

83.     As a direct and proximate result of Barletta's unfair and deceptive acts and practices, Everett has suffered damages and is entitled to recover up to three times its actual damages, plus interest, costs and attorneys' fees.

WHEREFORE, The City of Everett demands judgment against Barletta Engineering Corporation for the amount of its damages, doubled or trebled pursuant to Mass. Gen. L. c. 93A, plus interest, costs and attorneys' fees and such other and further relief that this Honorable Court deems just and proper.

### COUNT VII

### Claim On Bond – Fireman's

84.     Everett repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 83 of this Second Amended Supplemental Complaint as if fully set forth herein.

85.     Fireman's Fund issued a performance bond (the "Bond") to Barietta that secures performance by Barletta of all work required under the Contract Documents.

86.     The Contract Documents are incorporated by reference into the Bond.

87.     Barletta has been and remains in default of its contract obligations. Demand has been made on Fireman's Fund to remedy Barletta's default.

88.     Fireman's has failed and refused to remedy Barletta's default of its contract obligations.

89.     All conditions precedent to the maintenance of this action, on the Bond provided by Fireman's Fund, have been performed.

90.     Everett has been and continues to be damaged by Fireman's breach of the Bond obligations.

WHEREFORE, The City of Everett respectfully requests this Court enter judgment in its favor and against Fireman's Fund Insurance Company in an amount to be determined at trial, plus interest and costs as may be allowed by law, and such other and further relief as this Honorable Court deems just and proper.

## COUNT VIII

### Breach of Implied Covenant
### Of Good Faith and Fair Dealing – Fireman's

91.    Everett repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 90 of this Second Amended Supplemental Complaint as if fully set forth herein.

92.    The Bond and the Contract Documents contain implied covenants of good faith and fair dealing.

93.    Fireman's failed to investigate the claims made on the Bond by Everett and has failed to complete and correct the work of Barletta in a timely, competent and workmanlike manner, thereby breaching the covenants of good faith and fair dealing.

94.    As a result of such breaches Everett has incurred, and continues to incur, substantial costs and damages.

WHEREFORE, The City of Everett respectfully requests this Court enter judgment in its favor and against Fireman's Fund Insurance Company in an amount to be determined at trial, plus interest, costs and such other and further relief that this Honorable Court deems just and proper.

## COUNT IX

### Violation of Mass. Gen. L. c. 176D and 93A – Fireman's

95.    Everett repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 94 of this Second Amended Supplemental Complaint as if fully set forth herein.

96.    At all times, Fireman's was engaged in the trade and business of providing surety bonds within the Commonwealth of Massachusetts.

97.    Fireman's failure to investigate and remedy the default of Barletta, or otherwise discharge its obligations under the Bond, constitute unfair claim settlement practices pursuant to Mass. Gen. L. c. 176D.

98.    Fireman's failure to remedy the default of Barletta, or otherwise discharge its obligations under the Bond, was knowing and willful and thereby constitutes an unfair and deceptive practice prohibited by Mass. Gen. L. c. 93A.

WHEREFORE, The City of Everett respectfully requests this Court enter judgment in its favor and against Fireman's Fund Insurance Company for the amount of its damages, doubled or trebled pursuant to Mass. Gen. L. c. 93A, plus interests, costs and attorneys' fees and such other and further relief this Honorable Court deems just and proper.

## COUNT X

### Breach Of Contract - Flansburgh

99.    Everett repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 56 of this Second Amended Supplemental Complaint as if fully set forth herein.

100.    Everett has fully performed its obligations under the Design Agreement.

101.    Flansburgh has materially breached its contractual obligations to Everett by, among other things:

        (i)    failing to perform its services expeditiously and consistent with professional skill;

        (ii)    failing to properly prepare, complete and coordinate the contract documents;

        (iii)    failing to properly determine whether Barletta performed in accordance with the contract documents;

        (iv)    failing to guard Everett against defects and deficiencies in Barletta's work;

(v)    improperly certifying pay requisitions in that such certifications did not accurately represent progress or completion of the Project;

(vi)    failing to reject Barletta's work not in conformance with the Contract Documents;

(vii)    improperly determining the Project to be substantially complete when Barletta's work was defective and not in conformance with the Contract Documents;

(viii)    charging Everett for basic services beyond the lump sum set in the Design Agreement;

(ix)    charging Everett for services relating to changes requested for additional work that should have been anticipated by Flansburgh;

(x)    failing to indemnify Everett against claims caused by the negligence or fault of Flansburgh; and

(xi)    failing to properly and timely administer claims of Barletta and its subcontractors.

102.    As a consequence of Flansburgh's breaches of contract Everett has incurred, and continues to incur, costs, damages and expenses.

. WHEREFORE, The City of Everett respectfully requests this Court enter judgment in its favor and against Flansburgh Associates, Inc. and Earl R. Flansburgh Associates, Inc. in an amount to be determined at trial, plus interest, costs, attorneys' fees and such other and further relief that this Honorable Court deems just and proper.

### COUNT XI

### Recoupment/Violation Of Statute - Flansburgh

103.    Everett repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 56 and 99 through 102 of this Second Amended Supplemental Complaint as if fully set forth herein.

104.    Flansburgh improperly charged Everett for professional services, which were made necessary by Flansburgh's failure to anticipate certain work including, but not limited

to, the design of such materials, equipment and construction to make the Project watertight, to prevent water penetration into the building envelope and to prevent mold contamination.

105.   Flansburgh improperly charged Everett for professional services for which it was entitled to no payment.  Such overcharges include, but are not limited to:

    (i)   charges for services performed negligently and/or in breach of the Design Agreement;

    (ii)   charges for services made necessary to correct errors and omissions in the Contract Documents; and

    (iii)   charges for services related to improper pay application certification and improper substantial completion determination.

106.   Flansburgh's charges for such services are a breach of the Design Agreement and a violation of Mass. Gen. L. c. 7 Section 38H(j).

107.   Everett has been damaged by Flansburgh's breaches and violation of statute in that Everett has paid Flansburgh for certain services for which Flansburgh was not entitled to payment.

108.   Everett is entitled to recoup such overcharges from Flansburgh.

109.   As a result of such violation of statute and overcharges, Everett has incurred and continues to incur substantial costs and damages.

WHEREFORE, The City of Everett respectfully requests this Court enter judgment in its favor and against Flansburgh Associates, Inc. and Earl R. Flansburgh Associates, Inc. in an amount to be determined at trial, plus interest, costs, attorneys' fees and such other and further relief that this Honorable Court deems just and proper.

## COUNT XII

### Negligence - Flansburgh

110.   Everett repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 56 and 99 through 109 of this Second Amended Supplemental Complaint as if fully set forth herein.

111.   Flansburgh owed Everett a duty to exercise reasonable care in the performance of its services on the Project.

112.   Flansburgh breached that duty by, among other things:

      (i)    failing to perform its services expeditiously and consistent with professional skill;

      (ii)   failing to properly prepare, complete and coordinate the Contract Documents;

      (iii)  failing to properly determine whether Barletta performed in accordance with the Contract Documents;

      (iv)  failing to guard Everett against defects and deficiencies in Barletta's work;

      (v)   improperly certifying pay requisitions insofar as Flansburgh's certifications did not represent an accurate statement of the progress or completion of the Project;

      (vi)  failing to reject Barletta's work not in conformance with the Contract Documents; and

      (vii)  improperly determining the Project to be substantially complete when Barletta's work was defective and not in conformance with the Contract Documents.

113.   Flansburgh negligently represented that it was due certain payments from Everett for services under the Design Agreement when in fact Flansburgh was not entitled to such payments.

114.   Flansburgh negligently represented that Barletta was entitled to certain payments under the construction contract for work that was represented to be in

conformance with the Contract Documents and not defective when in fact Barletta's work was defective and not in conformance with the Contract Documents.

115.    Flansburgh negligently represented that Barletta had achieved substantial completion of the Project and substantially complied with the Contract Documents when in fact Barletta was not and is not in substantial conformance with the Contract Documents.

116.    Everett reasonably relied upon the representations of Flansburgh to its detriment by, among other things, making payments to both Flansburgh and Barletta which were not due and owing.

117.    Everett has been damaged and continues to be damaged by Flansburgh's breach of its duty of care and negligence.

WHEREFORE, The City of Everett respectfully requests this Court enter judgment in its favor and against Flansburgh Associates, Inc. and Earl R. Flansburgh Associates, Inc. in an amount to be determined at trial, plus interest, costs, attorneys' fees and such other and further relief that this Honorable Court deems just and proper.

## COUNT XIII

### Breach of Implied Covenant of
### Good Faith and Fair Dealing - Flansburgh

118.    Everett repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 56 and 99 through 117 of this Second Amended Supplemental Complaint as if fully set forth herein.

119.    The Design Agreement contains an implied covenant of good faith and fair dealing.

120.    Flansburgh's failure to perform its services under the Design Agreement in a timely, competent and professional manner constitutes a breach of that covenant.

121.   Flansburgh's charges to Everett for professional services for which Flansburgh is not entitled to payment constitute a breach of that covenant.

122.   As a result of such breach Everett has incurred, and continues to incur, substantial costs, damages and expenses.

WHEREFORE, The City of Everett respectfully requests this Court enter judgment in its favor and against Flansburgh Associates, Inc. and Earl R. Flansburgh Associates, Inc. in an amount to be determined at trial, plus interest, costs, attorneys' fees and such other and further relief that this Honorable Court deems just and proper.

## COUNT XIV

### Indemnification - Flansburgh

123.   Everett repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 56 and 99 through 122 of this Second Amended Supplemental Complaint as if fully set forth herein.

124.   The Design Agreement contains an express provision that Flansburgh will indemnify and hold harmless Everett from and against all claims and damages, including reasonable attorneys' fees, caused by the negligence or fault of Flansburgh.

125.   Claims and damages associated with water penetration and intrusion into the Project as well as related mold contamination and such other defective design or Contract Document administration are caused, in whole or in part, by the negligence or fault of Flansburgh.

126.   Charges for professional services either improperly performed in violation of statute, or otherwise not properly due and payable under the Design Agreement, are caused by the negligence or fault of Flansburgh.

127.   Everett is entitled to recover all costs associated with such claims, including attorneys' fees.

WHEREFORE, The City of Everett respectfully requests this Court enter judgment in its favor and against Flansburgh Associates, Inc. and Earl R. Flansburgh Associates, Inc. in an amount to be determined at trial, plus interest, costs, attorneys' fees and such other and further relief that this Honorable Court deems just and proper.

## COUNT XV

### Violation of Mass. Gen. L. c. 93A- Flansburgh

128.    Everett repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 56 and 99 through 127 of this Second Amended Supplemental Complaint as if fully set forth herein.

129.    Flansburgh is engaged in trade or commerce within the meaning of Mass. Gen. L. c. 93A.

130.    Flansburgh's acts and omissions occurred primarily and substantially in the Commonwealth of Massachusetts.

131.    Flansburgh's conduct was knowing or willful.

132.    As a direct and proximate result of Flansburgh's unfair and deceptive acts and practices, Everett has suffered damages and is entitled to recover up to three times its actual damages, plus interest, costs and attorneys' fees.

WHEREFORE, The City of Everett respectfully requests this Court enter judgment in its favor and against Flansburgh Associates, Inc. and Earl R. Flansburgh Associates, Inc. for the amount of its damages, doubled or trebled pursuant to Mass. Gen. L. c. 93A, plus interest, costs and attorneys' fees and such other and further relief this Honorable Court deems just and proper.

## COUNT XVI

### Declaratory Judgment-Everett's Insurers, Barletta's Insurer

133.   Everett repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 83 of this Second Amended Supplemental Complaint as if fully set forth herein.

134.   Everett's insurers and/or Barletta's insurer is/are obligated under the respective policies to defend and indemnify Everett and/or cover Everett's costs and expenses associated with the water damage and related damages caused to the Project.

135.   Everett's insurers and/or Barletta's insurers have/has failed to perform their respective obligations under said policies by failing and refusing to defend and indemnify Everett and/or cover Everett's costs and expenses associated with the water damage and mold contamination related damages caused to the Project.

136.   As a result, Everett has suffered, and continues to suffer, damages and expenses.

WHEREFORE, The City of Everett respectfully requests that this Court enter a declaratory judgment establishing that Great American Insurance Company, COREGIS Insurance Company, United States Fire Insurance Company and/or Transcontinental Insurance Company must reimburse Everett for all costs, expenses and damages relating to water damage and collateral mold contamination caused to the Project, and allowing such other and further relief as this Honorable Court deems just and proper.

## COUNT XVII

### Breach of Implied Covenant
### Of Good Faith and Fair Dealing— Everett's Insurers, Barletta's Insurer

137.   Everett repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 83 and 133 through 136 of this Second Amended Supplemental Complaint as if fully set forth herein.

138.   The insurance contracts of Everett's insurers and Barletta's insurer contain an implied covenant of good faith and fair dealing.

139.   Everett's insurers and Barletta's insurer have failed to adequately investigate the claims made on the insurance contracts, failed to make a reasonable determination of coverage, failed to make a reasonable settlement offer on Everett's claims and failed to comply with their obligations under the insurance contracts, thereby breaching the implied covenant of good faith and fair dealing.

140.   As a result of such breaches, Everett has incurred, and continues to incur, substantial costs, damages and expenses.

WHEREFORE, The City of Everett demands judgment against Great American Insurance Company, COREGIS Insurance Company, United States Fire Insurance Company and/or Transcontinental Insurance Company in an amount to be determined at trial, plus interest, costs, attorneys' fees and such other and further relief that this Honorable Court deems just and proper.

## COUNT XVIII

### Violation of Mass. Gen. L. c. 176D and 93A

### Everett's Insurers, Barletta's Insurer

141.    Everett repeats, realleges and incorporates by reference the allegations contained in Paragraphs 1 through 83 and 133 through 140 of this Second Amended Supplemental Complaint as if fully set forth herein.

142.    At all times relevant hereto, Everett's insurers and Barletta's insurer were engaged in the trade and business of providing insurance within the Commonwealth of Massachusetts.

143.    Everett's insurers and Barletta's insurer failed to adequately investigate the claims made on the insurance contracts, failed to make a reasonable determination of coverage, failed to make a reasonable settlement offer on Everett's claims and failed to comply with their obligations under the insurance contracts, thereby engaging in unfair claim settlement practices pursuant to Mass. Gen. L. c. 176D.

144.    Everett's insurers' and Barletta's insurer's failure to adequately investigate the claims made on the insurance contracts, failure to make a reasonable determination of coverage, failure to make a reasonable settlement offer on Everett's claims and failure to comply with their obligations under the insurance contracts were knowing and willful and thereby constitute unfair and deceptive practices prohibited by Mass. Gen. L. c. 93A.

WHEREFORE, The City of Everett respectfully requests that this Court enter judgment against against Great American Insurance Company, COREGIS Insurance Company, United States Fire Insurance Company and/or Transcontinental Insurance Company for the amount of its damages, doubled or trebled pursuant to Mass. Gen. L. c. 93A, plus interest, costs and attorneys' fees and such other and further relief that this Honorable Court deems just and proper.

CITY OF EVERETT

By its attorneys,

Richard K. Allen, BBO #553744
Leah A. Rochwarg, BBO #566524
GADSBY HANNAH LLP
225 Franklin Street
Boston, MA 02110
617-345-7000

Dated: May 13, 2002

{B0248350.DOC:1}