# **EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W.R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| Debtors and Debtors in Possession. | ) |

## AFFIDAVIT OF MARIE HENDRIXSON IN SUPPORT OF THE DEBTORS' APPLICATION TO RETAIN AND EMPLOY PROTIVITI INC. AS RISK CONSULTANTS FOR THE DEBTORS

| | |
|---|---|
| STATE OF PENNSYLVANIA | ) |
| | ) ss.: |
| COUNTY OF PHILADELPHIA | ) |

MARIE HENDRIXSON, being duly sworn, deposes and says:

1. I am a Managing Director of Protiviti Inc. ("Protiviti"), a risk consulting firm that maintains offices at 100 Penn Square East, 4th Floor, Philadelphia, Pennsylvania, and I make this affidavit on behalf of Protiviti (the "Affidavit"). Protiviti is a provider of independent risk

---

[1] The Debtors consist of the following 62 entities: W.R. Grace & Co. (f/k/a/ Grace Specialty Chemicals, Inc.), W.R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N' Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a/ Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston LTD., G C Limited Partners I, Inc. (f/k/a/ Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc,.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a/ Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a/ GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E& C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company; H-G Coal Company.

consulting services, including internal auditing, technology risk and business risk consulting services. Protiviti is a wholly-owned subsidiary of Robert Half International Inc. ("RHI"), an employment agency. I submit this Affidavit in support of the application (the "Application") of the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 case (the "Chapter 11 Case") for an order authorizing the employment and retention of Protiviti as consultant to the Debtors to assist with the development and implementation of a Sarbanes-Oxley Act Section 404 compliance program (the "Engagement"). Except as otherwise noted, I have personal knowledge of the matters set forth herein.

### Protiviti's Qualifications

2. Protiviti has significant expertise in providing risk consulting services. Protiviti is a leading firm dedicated exclusively to risk consulting and internal auditing. Protiviti helps its clients manage various risks associated with its client's business, including regulatory, financial, technology related and operational risk. Protiviti has hundreds of professionals located in all major U.S. markets, and provides on-location services, technologies and skills to its clients.

3. Protiviti has become familiar with the Debtors' business and financial situation and is well qualified to represent the Debtors as consultants in connection with the Engagement in a cost-effective and efficient manner.

### Professional Services and Compensation

4. A June 25, 2003 letter agreement for services referred to as "Phase I" (the "Protiviti Agreement") governs the services to be provided to the Debtors and the relationship between Protiviti and the Debtors.[2] A copy of the letter agreement is attached as Exhibit A to the Application. Protiviti will provide such consultancy services (the "Consultancy Services") as are

---

[2] Protiviti received compensation from the Debtors in the ordinary course of business under a June 5, 2003 letter agreement pursuant to which the Debtors purchased from Protiviti use of a software license and related services.

set forth in the Protiviti Agreement for the compensation described therein. The nature and extent of the services that Protiviti proposes to render at the Debtor's request in connection with Debtor's Chapter 11 case, include, but are not limited to, the following:

> Phase I: Assess Current State & Classification of Relevant Processes, etc.:
>
> a. Identify and prioritize financial statement elements by, among other things, working with Grace Internal Audit professionals to visit operating sites, both international and domestic;
>
> b. Document the Pilot "Close the Books" and Financial Reporting Processes by working with Internal Audit professionals to develop remediation plans and with operating professionals to implement necessary remediation;
>
> c. Complete Sarbanes-Oxley Act Diagnostic Tool, and perform testing of the controls to ensure readiness for external audit of internal controls in 2004;
>
> d. Identify key contacts and documentation available supporting critical processes by documenting the controls in place at client sites in accordance with standards established for Sarbanes-Oxley compliance;
>
> e. Validate results of Phase I with external auditors.

It is the intention of the Debtor that the functions to be performed by Protiviti will not be duplicative of those performed by the Debtor's other professionals.

      5. The Consultancy Services set forth in the Protiviti Agreement do not encompass other Consultancy Services that may be performed by Protiviti at the request of the Debtors not set forth in the Protiviti Agreement. The terms and conditions of any such Consultancy Services, including compensation arrangements, would be set forth in a separate written agreement between the Debtors and Protiviti and would be subject to any necessary Court approval.

6. Prior to the Petition Date, Protiviti has not performed professional services for the Debtors.

7. Protiviti will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.

8. Protiviti will seek compensation and reimbursement of expenses, as specified in the Protiviti Agreement, with the payment of such fees and expenses to be approved in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules and any orders of this Court.

9. Protiviti's compensation for professional services rendered to the Debtor will be based upon the hours actually expended by each assigned staff member extended by the hourly billing rate, except as noted below. The Debtor will compensate Protiviti for professional services rendered at its rates discounted from its standard hourly rates. Compensation will be payable to Protiviti on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by Protiviti. I am the primary professional at Protiviti who will be responsible for this engagement. Below are the current discounted hourly rates of Protiviti professionals for this engagement[3]:

(a) Managing Directors    $300
(b) Associate Directors    $275
(c) Managers              $225
(d) Senior Consultants    $175
(e) Consultants           $150

---

[3] The rates set forth are discounted for this engagement and do not represent Protiviti's standard billing rates.

The hourly rates set forth above are subject to periodic adjustments to reflect economic and other conditions.

10. The hourly rates set forth above are Protiviti's standard hourly rates for work of this nature. These rates are set at a level designed to fairly compensate Protiviti for the work of its professionals and to cover fixed and routine overhead expenses. It is Protiviti's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, reasonable attorney's fees incurred in connection with this engagement, telephone and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, charges for mailing supplies (including, without limitation, envelopes and labels) provided by Protiviti to outside copying services for use in mass mailings, travel expenses, expenses for "working meals," computer usage, computerized research, transcription costs, as well as non-ordinary overhead expenses such as secretarial and other overtime.

11. Protiviti believes that the fee structure set forth in the Protiviti Agreement appropriately reflects the nature and scope of the Engagement, Protiviti's substantial experience with respect to consultancy services, and the fee structures typically utilized by Protiviti and other leading consultants that bill their clients on an hourly basis.

**Disinterestedness of Professionals**

12. In connection with Protiviti's proposed retention by the Debtor, among others, the names of the Debtor and its subsidiaries, its non-debtor affiliates, the Debtor's officers and directors, its equity shareholders, and the Debtor's twenty (20) largest unsecured creditors were circulated by electronic mail to all of Protiviti's managing directors and directors to ascertain whether Protiviti has connections to any of those entities and, if so, whether such connections

related to the proposed consulting services to be performed by Protiviti for the Debtor.[4] Protiviti also searched its accounts receivable files to determine the existence of any potential conflicts. In addition, we searched electronic files of RHI, Protiviti's parent company, to determine whether RHI is providing services to any of these entities. Based on the results of this conflict search conducted to date, to the best of my knowledge, neither I, Protiviti, nor any officer or employee thereof, insofar as I have been able to ascertain, has any connection with the Debtor, its creditors, other parties-in-interest (as reasonably known to us), its respective attorneys, or the U.S. Trustee or any person employed in the Office of the U.S. Trustee, except as disclosed or otherwise described herein.

13. Some employees of Protiviti may consume products or services of, or receive credit from, the Debtor or other parties in interest. Employees at Protiviti may have beneficial ownership of securities issued by or banking, insurance or money management relationship with, other parties in interest. Employees at Protiviti may have relatives or spouses employed by parties in interest. I have conducted no investigation of my colleagues' banking, insurance or investment activities or familial connections in preparing this affidavit.

14. To the best of my knowledge, Protiviti is a "disinterested person," as that term is defined in section 101(14) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), as modified by section 1107(b) of the Bankruptcy Code, as it, its employees, and its affiliates:

    a.    are not creditors, equity security holders or insiders of the Debtors;

---

[4] The names of the following were also circulated in connection with the conflict check performed by Protiviti: the Debtor's professionals; the special master; Debtor's secured lenders; all substantial unsecured bondholders or lenders; all indenture trustees; members of the official unsecured creditors' committee; members of the property damage committee; members of the bodily injury committee; members of the equity committee; professionals for each committee; special claims objection counsel; parties to Debtors' significant executory contracts and leases; issuers of the Debtors' outstanding surety bonds; and letter of credit issuers.

      b.      are not and were not investment bankers for any outstanding security of the Debtors;

      c.      have not been, within three years before the date of the filing of the Debtors' chapter 11 petition, (i) investment bankers for a security of the Debtors, or (ii) an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtors;

      d.      were not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors or of any investment banker as specified in subparagraph (b) or (c) of this paragraph; and

      e.      do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or an investment banker specified in subparagraph (b) or (c) of this paragraph or for any other reason.

15. To the best of my knowledge, Protiviti, and its partners, members, principals, and employees, do not have any relation to or connection with any Judge of this Court or with the United States Trustee for this region or any person employed in the Office of the United States Trustee such as would render the employment of Protiviti improper under Bankruptcy Rule 5002.

16. Protiviti has in the past, and may in the future, be represented by attorneys and law firms, some of whom may be involved in these proceedings. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtors herein in matters upon which Protiviti is to be employed.

17. Protiviti and certain of its employees may now or have in the past represented or provided professional services to entities or persons that may be creditors or parties in interest

or ordinary course professionals to the Debtors in the Chapter 11 Case. Protiviti will continue to provide professional services to such entities or persons, <u>provided</u>, <u>however</u>, that such services do not relate to, or have any direct connection with, the Chapter 11 Case. I have been advised that the following clients of Protiviti are creditors or parties-in-interest in the Chapter 11 Case:

a. Provititi provides consulting services to ABN Amro Bank N.V., a secured creditor of the Debtor. The services provided by Protiviti to ABN Amro Bank N.V., are and will remain unrelated to the Chapter 11 Case.

b. Protiviti provides consulting services to the Los Angeles Unified School District and to CNA Insurance, both of which have been identified as among the Debtor's twenty largest unsecured creditors. The services provided by Protiviti to the Los Angeles Unified School District and to CNA Insurance are and will remain unrelated to the Chapter 11 Case.

c. Protiviti provides consulting services to Franchise Finance Corporation of America, Hines Interest Limited Partnership and Pier 1 Imports, all of which have been identified as a party to a significant executory contract or lease with the Debtor. The services provided by Protiviti to Franchise Finance Corporation of America, Hines Interest Limited Partnership and Pier 1 Imports are and will remain unrelated to the Chapter 11 Case.

d. Protiviti provides consulting services to American International Group, Inc., which has been identified by the Debtor as a significant party-in-interest. The services provided by Protiviti to American International Group, Inc. are and will remain unrelated to the Chapter 11 Case.

e. Protiviti provides consulting services to Keystone Realty Company, which has been identified by the Debtor as a significant party-in-interest. The services provided by Protiviti to Keystone Realty Company are and will remain unrelated to the Chapter 11 Case.

f. Protiviti provides consulting services to FBL Financial Group, Inc., which may be related to or affiliated with FBL Partners. FBL Partners has been identified by the Debtor as a party to a significant executory contract or lease with

        the Debtor. The services provided by Protiviti to FBL Financial Group, Inc., are and will remain unrelated to the Chapter 11 Case.

g.   Protiviti provides consulting services to Ingram Micro, Inc., which may be related to or affiliated with Ingram Plaza Company. Ingram Plaza Company has been identified as a party to a significant executory contract or lease with the Debtor. The services provided by Protiviti to Ingram Micro, Inc., are and will remain unrelated to the Chapter 11 Case.

h.   Protiviti provides consulting services to Wickes, Inc. (Wickes Lumber), which may be related to or affiliated with Wickes Co., Inc. Wickes Co., Inc. has been identified as a party to a significant executory contract or lease with the Debtor. The services provided by Protiviti to Wickes, Inc. (Wickes Lumber) are and will remain unrelated to the Chapter 11 Case.

i.   Protiviti provides consulting services to Universal Orlando. Blackstone Group, L.P., which holds a fifty-percent interest in Universal Orlando, has been identified a one of the Debtors' professionals in this case. The services provided by Protiviti to Universal Orlando are and will remain unrelated to the Chapter 11 Case.

Protiviti's clients include many financial institutions and commercial corporations, some of which may possibly be claimants in these Chapter 11 proceedings. Additionally, various personnel of Protiviti may have business associations with certain creditors or interested parties. To the extent that any additional connections between Protiviti and creditors, or parties-in-interest or ordinary course professionals of the Debtor are discovered, Protiviti will file a supplemental affidavit disclosing same.

18. RHI, Protiviti's parent company, placed approximately 180,000 employees on temporary assignments in 2002, some of which may have been with creditors or interested parties. Moreover, RHI's external auditors are PriceWaterhouseCoopers LLP, who have been

identified as one of the Debtors' professionals in this case. Because RHI is a separate corporation from Protiviti, Protiviti will not disclose RHI's client relationships.

19. Despite the efforts described above to identify and disclose the connections that Protiviti has with parties in interest in this case, because the Debtor is a large enterprise with numerous creditors and other relationships, Protiviti is unable to state with certainty that every client relationship or other connection has been disclosed. Protiviti's search also may not have identified certain professionals at Protiviti that may have provided services to certain creditors of the Debtor prior to joining Protiviti. In this regard, if Protiviti discovers additional information that requires disclosure, Protiviti will file a supplemental disclosure with the Court.

### Nunc Pro Tunc Approval

20. At the request of the Debtors, Protiviti began providing services related to the Protiviti Agreement shortly after June 25, 2003. The Debtors were unavoidably delayed in seeking approval for its retention of Protiviti for several reasons. I have been informed that the Debtors originally proposed retaining Protiviti as a so-called "ordinary course professional." However, it was subsequently determined that Protiviti's retention required a formal application and conflict search. Given the 18-page list of interested parties in this matter, the conflict search at the Protiviti and RHI levels took several weeks to complete. In addition, Protiviti usually retains Simpson Thacher & Bartlett LLP as its counsel in such matters. However, we were informed that STB has already been retained as a professional in this matter, which required Protiviti to seek new counsel. Consequently, Protiviti has requested that the Debtors seek approval of the agreement as of the actual start date of the engagement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 15th day of September 2003.

*Marie Hendries*
Managing Director

Subscribed and Sworn to before me
this 15th day of September 2003

*Sheri S. McManus*
Notary Public
My Commission expires: 10/1/05

NOTARIAL SEAL
SHERI S. McMANUS, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 1, 2005