IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Objection Deadline: October 10, 2003
Hearing Date:  October 27, 2003 at Noon, Eastern, only if objections are received

## MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO PAY CERTAIN AMOUNTS DUE UNDER THE FLORIDA INTANGIBLE PERSONAL PROPERTY TAX ACT FOR THE TAX YEARS 1993 THROUGH 1996

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for the entry of an order authorizing the Debtors to pay tax and interest due under the Florida Intangible Personal Property Tax (the "Florida Tax Act") for the tax years 1993 through 1996 (the "Tax Years"). In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory basis for the relief requested herein is section 105(a) of title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code") and Rule 2002 of the Federal Rules of Bankruptcy Procedure.

## Background

3. On April 2, 2001, the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases have been consolidated for administrative purposes only and pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

## Florida Intangible Personal Property Tax

4. The Florida Tax Act imposes an *ad valorem* tax (the "Property Tax") on all intangible personal property (as defined in the Florida Tax Act) that has a taxable situs in the State of Florida (the "Subject Intangible Property"). Fla. Stat. Ann. § 199.032. The Florida Department of Revenue (the "FDOR") administers and enforces the assessment and collection of the Property Tax, including interest and penalties. Fla. Stat. Ann. § 199.202. The Tax is due and payable on June 30th of each year and equals 2 mills (for the years in dispute) for each dollar of valuation of the Subject Intangible Property as of January 1st of each year in which the tax is due.

Underpayments are subject to interest at 12% per annum (the "Florida Statutory Rate") and potential penalties.

5.  Every corporation authorized to do business in the State of Florida must file an annual Property Tax return (a "Florida Return") under the Florida Tax Act on June 30th and a corporate group may file on a consolidated basis. Fla. Stat. Ann. § 199.052.

### The Grace Group[2]

6.  During the Tax Years, the common parent of the Grace Group for federal and state tax purposes was Fresenius Medical Care Holdings, Inc. (then named W. R. Grace & Co.), a New York corporation that is no longer affiliated with the Debtors, and which is referred to herein as "Fresenius/Grace New York". Fresenius/Grace New York filed all Florida Returns and paid all Florida taxes on behalf of the Grace Group during the Tax Years. Fresenius/Grace New York is a named party on the notice of proposed assessment for the Property Tax, more fully described below.[3]

### Assessment and Reconciliation

7.  On June 25, 2001, the FDOR issued an initial assessment of the taxes, interest and penalties payable by Grace under the Florida Tax Act for the Tax Years (the "Initial Assessment"). The Initial Assessment totaled approximately $14.2 million, consisting of

---

[2] The term "Grace" or "Grace Group" refers to all members of the consolidated group of corporations (including the Debtors) that filed consolidated tax returns during the Tax Years. As discussed more fully below, during the Tax Years, Grace included entities that are now unaffiliated with the Debtors.

[3] As of September 29, 1996, as part of the separation of Grace's National Medical Care business from Grace's other operations (the "NMC Transaction"), Fresenius/Grace New York ceased to be the common parent corporation of the historic Grace business. After the NMC Transaction, Fresenius/Grace New York became a subsidiary of Fresenius Medical Care AG, a German corporation. The implications of this change and the subsequent agreements between Fresenius/Grace New York and the Debtors are more fully discussed below.

approximately $6.7 million of assessed taxes, $5.5 million of interest, and $2 million of penalties.

8. Grace filed a protest of the Initial Assessment on July 5, 2001. At an informal conference with the FDOR on October 25, 2001, among other matters, W. R. Grace & Co.-Conn. ("Grace-Conn."), representing Grace, established that the FDOR's auditor should have eliminated intra/inter-company receivables between Grace subsidiaries and divisions in calculating the proper tax base. Subsequently, the FDOR reduced the tax assessment to $580,000, plus interest and penalties. Grace-Conn. conducted additional discussions with the FDOR and the tax assessment was again revised downward to approximately $277,401, plus interest, and an $181,654 penalty. Grace-Conn. requested that the penalty be abated, and the full amount of the penalty was then waived by FDOR.

9. The current proposed assessment is approximately $349,957 (the "Agreed Tax Amount"), comprising $227,401 of taxes and $122,556 of interest under an existing interest amnesty program, which expires on October 31, 2003. Payment of the Agreed Tax Amount would liquidate Grace' total exposure under the Florida Tax Act for the Tax Years for approximately 2.5% of the Initial Assessment. No penalty would be required to be paid in connection with the assessment.

### Fresenius Connection

10. As previously outlined, Fresenius/Grace New York was the common parent of the Grace Group during the Tax Years and is the named party of the proposed Property Tax assessment. The FDOR has also filed a priority proof of claim against the Debtors for the

DOCS_DE:79276.2                               4

proposed assessment plus additional interest and penalties for an aggregate amount of approximately $572,464.

11. The automatic stay applicable to the Debtors does not extend to Fresenius/Grace New York with respect to state tax claims and no injunction has been entered by this Court to protect Fresenius/Grace New York from such state tax claims. Consequently, the FDOR could seek recourse directly against Fresenius/Grace New York for unpaid taxes under the Florida Tax Act for the Tax Years.

12. In anticipation of this and similar tax matters, as part of the NMC Transaction, Fresenius/Grace New York and the Debtors entered into a Tax Sharing and Indemnification Agreement ("TSIA"), dated September 27, 1996, which allocated the rights and responsibilities of the parties with respect to tax matters.

13. However, the TSIA has since been superseded in relevant part by a Settlement Agreement and Release of Claims dated February 6, 2003 (the "Settlement Agreement").[4] Under the Settlement Agreement, Fresenius/Grace New York and certain of its affiliates (the "Fresenius Group") agreed to pay, within five business days after the Settlement Effective Date, subject to certain preconditions, $115 million (the "Fresenius Payment"), as directed by this Court for the benefit of the Debtors' Estates. The "Settlement Effective Date" is the later of (a) the effective date of the Debtors' plan of reorganization or (b) the satisfaction or waiver of all preconditions to the Fresenius Payment.

---

[4] A copy of the Settlement Agreement is attached hereto as Exhibit A.

14.     One precondition to the Fresenius Payment is that the Fresenius Group be released from all Grace-Related Claims (as defined in the Settlement Agreement), including all Indemnified Taxes. "Indemnified Taxes" include all taxes (including accrued interest and penalties thereon) of the Grace Group with respect to any tax period ending on or before December 31, 1996. The Property Tax at issue in this Motion is an Indemnified Tax under the Settlement Agreement.

15.     The Settlement Agreement gives Grace-Conn. the sole authority to act with respect to Indemnified Taxes. However, under Section 3.03(B) of the Settlement Agreement, none of the Debtors may voluntarily agree to the payment, assessment or other resolution of any Indemnified Taxes prior to the Settlement Effective Date, unless (a) the Debtors have obtained authorization from this Court to pay in full any such Indemnified Taxes, or (b) Fresenius has consented in writing to such agreement by the Debtors. Further, pursuant to Paragraph 2(iii) of the Order of District Judge Wolin approving the Settlement Agreement,[5] the Debtors are authorized to make any payment of Indemnified Taxes in connection with any settlement of such Taxes.

16.     In the event that a member of the Fresenius Group pays Indemnified Taxes, the Debtors are unconditionally obligated to repay such amount to the Fresenius Group, with interest calculated from the date of payment at a penalty "Hot Interest Rate." If not repaid prior to the Settlement Effective Date, the Indemnified Tax, plus accrued Hot Interest, will either

---

[5] A copy of the Order approving the Settlement Agreement is attached hereto as Exhibit B.

be an Allowed Administrative Claim or will be subject to setoff against the Fresenius Payment (see Settlement Agreement, Section 3.07 and 3.08). The "Hot Interest Rate" as defined under the Settlement Agreement is five percentage points over the Federal short-term rate published by the U.S. Treasury Department each calendar quarter. The Hot Interest Rate for the January 1, 2003 through September 30th accrual period is 7%. The interest rate charged under the Debtor-in-Possession ("DIP") facility of the Debtors is 2% over the London Interbank Offered Rate ("LIBOR"). Over the same accrual period, the DIP rate has averaged 3.26%. This yields an approximately 3.7 percentage point increase in interest expense comparing Hot Interest to the DIP rate and an approximately 8.7 percentage point increase in interest expense comparing the Florida Statutory Rate to the DIP rate.

### Relief Requested

17.   By this Motion, the Debtors seek an order authorizing the Debtors to settle the Property Tax controversy with FDOR and pay the Agreed Tax Amount by October 31, 2003.

### Basis for Relief

18.   The Court's general equitable powers are codified in Section 105(a) of the Bankruptcy Code. Section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528 (1984)). For the reasons set forth herein and summarized below, the

Debtors strongly believe that the payment of the Agreed Tax Amount is in the best interests of the Debtors' Estates and their creditors and increases the likelihood of the Debtors' successful reorganization.

19. As previously noted, payment of the Agreed Tax Amount would liquidate Grace's total exposure under the Florida Tax Act for the Tax Years for approximately 2.5% ($349,957) of the Initial Assessment ($14.2 million). Settlement of the controversy and payment of the Agreed Tax Amount by October 31, 2003, the end of the interest amnesty period, would also avoid the FDOR's potential reinstatement of the approximately $181,654 penalty and additional interest accruing to the State of Florida at the Florida Statutory Rate, far in excess of the interest rate currently available to Debtors under the DIP facility.

20. If approval to settle the controversy and pay the Agreed Tax Amount is not obtained, the FDOR will likely continue to seek payment from the Fresenius Group. Under the terms of the Settlement Agreement, Fresenius/Grace New York may choose to continue to protest the amount due or settle the controversy and pay the Agreed Tax Amount.

(a) If Fresenius/Grace New York protests the Property Tax, any tax amount subsequently determined due, plus any penalty and interest (both to Florida at the Florida Statutory Rate and to Fresenius/Grace New York at the Hot Interest Rate) will either be set off against the Fresenius Payment or allowed as an Administrative Claim (see Sections 3.07 and 3.08 of the Settlement Agreement). In addition, Fresenius/Grace New York will likely seek reimbursement for costs associated with settling the controversy, including attorney and accountant fees

("Settlement Costs"). Because in the Debtors' judgment the Agreed Tax Amount is a very favorable settlement, it is very likely that a protest will lead to no better and perhaps a worse eventual result, plus additional expenses.

(b) If Fresenius/Grace New York pays the Agreed Tax Amount, the Agreed Tax Amount plus Hot Interest, and possible Settlement Costs will either be set off against the Fresenius Payment or allowed as an Administrative Claim (see Sections 3.07 and 3.08 of the Settlement Agreement).

21. Under either non-settlement scenario, more money is likely to be paid out of the Debtors' Estates to resolve the controversy than if the proposed settlement is authorized and the Agreed Tax Amount is paid to the FDOR. Specifically, in either non-settlement scenario, the Debtor risks reinstatement of the approximately $181,654 penalty, imposition of interest charges far in excess of its current borrowing rate, and reimbursement of Settlement Costs.

22. Based upon the foregoing, there is ample reason to authorize the Debtors to settle this Property Tax controversy and make prompt payment of the Agreed Tax Amount to the FDOR.

## Notice

23. Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP lender, (iii) counsel to all official committees appointed by the United States Trustee, and (iv) all those parties that requested service and notice of papers in accordance with

Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

### No Prior Request

24.  No prior Application for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order (a) authorizing the Debtors to pay the Agreed Tax Amount prior to October 31, 2003; and (b) granting such other relief as the Court deems just and proper.

Wilmington, Delaware
Dated: September 22, 2003

Respectfully submitted,

KIRKLAND & ELLIS LLP
James H.M. Sprayregen, P.C.
Janet S. Baer
James W. Kapp III
Christian J. Lane
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

*/s/ Paula A. Galbraith*

Laura Davis Jones (DE Bar No. 2436)
Scotta McFarland (DE Bar No. 4184)
Paula Galbraith (DE Bar No. 4258)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession