## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| **Debtors.** | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## FEE APPLICATION OF PRICEWATERHOUSECOOPERS LLP
## FOR THE NINTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fee Application of Pricewaterhouse Coopers LLP for the Ninth Interim Period</u> (the "Application").

## BACKGROUND

1.      PricewaterhouseCoopers LLP ("PwC") was retained as independent accountants and auditors for the Debtors and Debtors in Possession.  In the Application, PwC seeks approval of fees totaling $172,305.13[1] and costs totaling $2,594.86 for its services from April 1, 2003, through June 30, 2003.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2

---

[1] Total fees reviewed for this period are $356,626.10.  PwC bills 45% of its standard fees for most activities, except that PwC bills 65% of its standard fees for those activities related to the federally required audit of the W.R. Grace management's assessment of the Debtors' internal controls under the Sarbanes Oxley Act.

of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended

Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications

for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30,

1996, (the "Guidelines"), as well as for consistency with precedent established in the United States

Bankruptcy Court for the District of Delaware, the United States District Court for the District of

Delaware, and the Third Circuit Court of Appeals.  We served on PwC an initial report based on our

review, and received a response from PwC, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.       In our initial report, we noted that in the April fee detail, Lippolis and Yeager showed

multiple occurrences in which they billed in increments other than tenths of an hour.  Paragraph

II.D.5. of the Guidelines states,  "[t]ime entries should be kept contemporaneously with the services

rendered in time periods of tenths of an hour..."  We asked PwC to advise these timekeepers to log

their entries in tenths of an hour.  PwC responded as follows:

> We have advised all timekeepers to enter their time in tenth of an hour increments
> in the future.  Due to the nature of our work, it is not unusual for individuals to
> perform tasks in one-half or whole hour increments.  While it may appear that the
> tenths of an hour requirement is not being met by our applications, we would submit
> to you that we generally are in compliance with this rule.

We appreciate the response.

4.       We noted that Lippolis consistently lumped time entries.  Paragraph  II.D.5. of the

Guidelines states, " .... Services should be noted in detail and not combined or "lumped" together,

with each service showing a separate time entry; ..."  We asked PwC to advise this timekeeper to

avoid lumping time entries in the future.  PwC responded as follows:

We have advised Ms. Lippolis to avoid lumping time entries in the future.

We appreciate the response.

5.     In our initial report, we noted that Divito consistently failed to provide adequate detail in time entries.   Rule 2016-2(d) <u>Information Requirements Relating to Compensation Requests</u> states that, "Such motion shall include activity descriptions which shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary ...:" We asked PwC to advise this timekeeper to provide sufficient detail in time entries.  PwC responded as follows:

> We have advised this timekeeper of the need to provide sufficient detail in their time entries in the future.

We appreciate the response.

6.     We further noted that between 4/1/03 and 4/30/03, the following firm members billed at different hourly rates without explanation by the Applicant:

> Maureen Yeager ($197 and $202)
>
> Joseph Divito ($767 and $821)
>
> Nina Govic ($298 and $307).

Guidelines, Rule II.A.3 requires, in part, the "...[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, explanation of any changes in hourly rates from those previously charged, ...."  We asked Pwc to provide an explanation for the apparent difference in the hourly rates charged by these professionals.  PwC's explanation is provided below.

> Noted.  We have revised our process, and information regarding rate adjustments will be included in future filings.  The change in the individual billing rates results from the annual adjustment in firm billing rates, which took effect on April 15,

2003.  Rates were adjusted at all levels.  The change took place on a going forward basis and did not affect any previous periods.

We appreciate the response.

### Specific Time and Expense Entries

7.      In our initial report, we noted that between April 2 and June 27, 2003, various firm members billed (at their discounted rates) for training and timekeeping tasks which may be considered noncompensable.  The total time spent was 28.9 hours for a total discounted amount of $3,993.32 ($8,874.05 * 0.45).  See Exhibit A.  We asked PwC to review Exhibit A and explain why these tasks should be compensable.  A part of PwC's response is provided below, with the remainder included as Response Exhibit 1.

> We agree with your assessment, however, we feel that $253.71 of the time spent falls under the confines of our fee agreement.

We concur with the response and thus recommend a reduction of $3,739.61.

8.      In our initial report, we noted that on April 11, 2003, Jason Natt ($487) and Cheryl Frick ($342) spent 7.9 hours and $2,057.25 ($3,165*0.65) in what appears to be a duplication of effort.  The entries are provided below.

| 4/11/03 | Jason Natt | 3.2 | $1,558.00 | Review of Sarbanes Oxley Database, Printing of numerous documents (as requested by the Grace Internal Audit team) and review of information in regards to providing Grace access to this database. |
|---------|------------|-----|-----------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 4/11/03 | Cheryl Frick | 4.7 | $1,607.00 | Review of Sarbanes Oxley Database, Printing of numerous documents (as requested by the Grace Internal Audit team) and review of information in regards to |

providing Grace access to this
database.

Paragraph I.E. of the Guidelines states, ". . . [i]n evaluating fees for professional services, it is

relevant to consider various factors including the following: the time spent; the rates charged;

...."  We asked PwC to review the entries and explain why these entries should not be

considered a duplication of effort. PwC responded as follows:

> As this was a time sensitive event required to be completed by PwC for W.R.
> Grace, it was necessary that both staff members be involved in the process for
> timely completion.  While the descriptions are similar for both Ms. Frick and Mr.
> Natt, the work covered different areas, as both individuals did not print/compile
> the same control information.  Ms. Frick focused on gathering information on
> asset and liability items such as cash, accounts receivable, accruals, etc.  At the
> same time, Mr. Natt gathered information on income statement and equity items,
> such as revenue and expense account items.

We accept the explanation and offer no objection to these fees.

9.    We noted that on April 23, 2003,  Dave Ryan, Jason Natt, and Cheryl Frick

participated in a Sarbanes materiality meeting.  The time spent was 5.5 hours for a total of

$1,632.80 ($2,512.00*0.65). The time entries are listed below.

| 4/23/03 | Dave Ryan | 1.5 | $854.00 | Materiality meeting with Jason Natt (PWC) and Ryan Heaps (Grace) & Barb Summerson (Grace).  To discuss which units would qualify under Sarbase |
| 4/23/03 | Jason Natt | 2.0 | $974.00 | Materiality meeting with Jason Natt (PWC), Dave Ryan (PWC) and Ryan Heaps (Grace) & Barb Summerson (Grace).  To discuss which units would qualify under Sarbase |
| 4/23/03 | Cheryl Frick | 2.0 | $684.00 | Materiality meeting with Jason Natt (PWC), Dave Ryan (PWC) and |

Ryan Heaps (Grace) & Barb
Summerson (Grace).  To discuss
which units would qualify under
Sarbase

Paragraph II.D.5. of the Guidelines states,  ". . .[i]f more than one professional from the

applicant firm attends a hearing or conference, the applicant should explain the need for

multiple attendees."  We asked PwC to explain why was it necessary for more than one

professional to participate in this meeting.  PwC responded as follows:

> For a number of important audit meetings with financial management, it is
> customary for more than one PwC representative to attend.  We have limited the
> number of our attendees in as many situations as possible and remain cognizant
> that we are required to keep the number of duplicate participants at a minimum.
> David Ryan was leading the meeting, with Cheryl Frick and Jason Natt
> participated in the meeting, took notes and worked with the W.R. Grace
> Representatives after Dave Ryan finished presenting to answer questions.

We appreciate the response, but we believe it fails to establish the necessity of both Frick and

Natt attending the meeting.  Thus, we recommend a reduction based on Frick's time, resulting

in a reduction of $444.60 ($684.00*0.65) in fees.

　　　　10.　　　In our initial report, we noted that between April 22 and May 31, 2003, various

firm members spent time completing performance evaluations of firm members providing

services for the W.R. Grace engagement.  These tasks appear to comprise expenditures incurred

in the ordinary course of providing professional services to any client, and therefore may be of

little or no specific benefit to the estate. The time spent was 15.2 hours for a total of $1,978.83

($4,397.40*0.45).  See Exhibit B.  U.S. Bankruptcy Code §330 (4)(A)(ii)(I) provides that

"(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for – . .

.(ii) services that were not – (I) reasonably likely to benefit the debtor's estate; . . . ."  We asked

PwC to review Exhibit B and state why the time spent in these evaluations should be compensable.  PwC's response is provided below.

> We agree with your assessment that this time was improperly included in our filing.  We agree to a reduction of fees in the amount of $1,978.83.

We concur and therefore recommend a reduction of $1,978.83.

11.    In our initial report, we noted that on April 28, 2003, David Ryan may have inadvertently duplicated expenses for mileage for round trips to the client's work site.  The total spent was $69.68.  The expense entries are listed below.

| 4/28/03 | David Ryan | 33.84 | Mileage in excess of regular commute (47 miles x 2 x $0.36) from home to Columbia, MD Grace HQ |
| 4/28/03 | David Ryan | 1.00 | Tolls ($0.50 x 2) incurred on trip from home to Grace HQ in Columbia MD |
| 4/28/03 | David Ryan | 33.84 | Mileage in excess of regular commute (47 miles x 2 x $0.36) from home to Columbia, MD Grace HQ |
| 4/28/03 | David Ryan | 1.00 | Tolls ($0.50 x 2) incurred on trip from home to Grace HQ in Columbia MD |

U.S. Bankruptcy Code §330 (4)(A)(i), states, "[e]xcept as provided in subparagraph (B), the court shall not allow compensation for – (i) unnecessary duplication of services; . . ."  We asked PwC to review the expense entries and explain whether they represent an inadvertent duplication.  PwC responded as follows:

> We apologize for the error; clarification has been obtained from David Ryan.  One of the mileage charges was mistakenly recorded as April 28th, 2003, and should have been recorded with a date of April 30th, 2003.

We accept the explanation and offer no objection to these expenses.

**CONCLUSION**

12.    Thus, we recommend approval of fees totaling $166,142.09 ($172,305.13 minus

$6,163.04) and costs totaling $2,594.86 for PwC's services from April 1, 2003, through June

30, 2003.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
        Warren H. Smith
        Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 4080
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served
First Class United States mail to the attached service list on this 3rd day of October, 2003.

_____
            Warren H. Smith

## SERVICE LIST
Notice Parties

**The Applicant**

W. Larry Farmer
PricewaterhouseCoopers LLP
1751 Pinnacle Drive
McLean, VA 22102-3811

**Counsel for the Applicant**

OF COUNSEL
John C. Goodchild, III
Christine M. Lipski
MORGAN LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103

Kathleen M. Miller
SMITH, KATZENSTEIN & FURLOW
LLP
The Corporate Plaza
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones,
P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of
Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of
Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price &
Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of**
**Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Response Exhibit 1

| rate per hour | | total cost | discounted cost (45%) | PwC response |
|---|---|---|---|---|
| 349 | | 436.25 | | We agree that this time was mistakenly included and should be removed from our fee request. |
| 202 | | 383.80 | | We agree that this time was mistakenly included and should be removed from our fee request. |
| 202 | | 262.60 | | We agree that this time was mistakenly included and should be removed from our fee request. |
| 307 | | 307.00 | | We agree that this time was mistakenly included and should be removed from our fee request. |
| 256 | | 51.20 | | We agree that this time was mistakenly included and should be removed from our fee request. |
| 232 | | 626.40 | | We agree that this time was mistakenly included and should be removed from our fee request. |
| 197 | | 610.70 | | We agree that this time was mistakenly included and should be removed from our fee request. |
| 197 | | 256.10 | | We agree that this time was mistakenly included and should be removed from our fee request. |
| 197 | | 433.40 | | We agree that this time was mistakenly included and should be removed from our fee request. |

| | | | |
|---|---|---|---|
| 342 | 307.80 | 138.51 | This time was necessary to familarize the intern with the task at hand.  Ms. Frick provided clairfication saying that she was preparing Ms. Misler to complete several responsibilities including reviewing the external file index, and rolling forward several documents from the prior year. |
| 487 | 438.30 | | We agree that this time was mistakenly included and should be removed from our fee request. |
| 307 | 276.30 | | We agree that this time was mistakenly included and should be removed from our fee request. |
| 487 | 2,484.00 | | We agree that this time was mistakenly included and should be removed from our fee request. |
| 342 | 1,744.20 | | We agree that this time was mistakenly included and should be removed from our fee request. |
| 256 | 256.00 | 115.20 | We believe that this amount should be included, as this work was necessary to WR Grace to complete the audit process, and Ms. Anderson was the individual with the lowest rate per hour available to complete the work. |
| **Total** | 8,874.05 | 253.71 | |
| **Total at discount** | 3,993.32 | 253.71 | |