IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Response Deadline: October 10, 2003
Hearing Date: October 27, 2003 at noon

## DEBTORS' OBJECTION TO OLDCASTLE'S APG NORTHEAST, INC. D/B/A FOSTER-SOUTH EASTERN MOTION FOR RELIEF FROM STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE (DOCKET NO. 4458)

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by their undersigned counsel, respectfully submit this objection to Oldcastle APG Northeast, Inc. d/b/a Foster-South Eastern's Motion for Relief from Stay Under Section 362 of the Bankruptcy Code (the "Motion"). The Debtors respectfully represents as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## INTRODUCTION

1.      Oldcastle APG Northeast, Inc. d/b/a Foster-South Eastern ("Oldcastle") fails in its burden to demonstrate sufficient cause to lift the automatic stay to allow the filing and prosecution of the Oldcastle Complaint (as defined below). Oldcastle offers absolutely no reason why the Debtors should now be forced to expend their limited resources, to the detriment of similarly situated unsecured creditors, to defend themselves in the State Action (as defined below) which has already been pending for three years. Indeed, Oldcastle's ability to mount a defense in the State Action is in no way impaired if the Debtors do not participate in the State Action. No other party to the State Action has any claims against the Debtors. Oldcastle simply finds it more convenient to involve the Debtors in the State Action so that, in the event that Oldcastle is ultimately found liable, Oldcastle can, in turn, assert separate and independent causes of action against the Debtors in an attempt to recover damages. Such separate causes of action, however, are not an integral part of the State Action and may eventually be resolved without the need for the Debtors to expend time and resources if Oldcastle is found not to be at fault in the State Action.

2.      Moreover, by filing proofs of claim in the Debtors' chapter 11 cases, Oldcastle has already sought the appropriate course for the preservation and resolution of its alleged claims against the Debtors if Oldcastle ultimately has any liability in the State Action. Oldcastle provides absolutely no reason why the claim resolution process in the Debtors' chapter 11 cases will not be sufficient to liquidate their claims. In addition, this Court has already been confronted with a similar situation when it considered the request for relief from the automatic

stay filed by Wesconn Co., Inc. In particular, this Court denied the requested relief, finding that the appropriate remedy for Wesconn was to file a proof of claim in the Debtors' chapter 11 cases.

3. Accordingly, for the reasons set forth herein, the Oldcastle Motion should be denied.

## BACKGROUND

4. Oldcastle seeks relief from the automatic stay to file and prosecute a fifth-party complaint against the Debtors (the "Oldcastle Complaint") in an existing action (the "State Action") filed in Massachusetts Superior Court, Middlesex Division in October 2000. The plaintiff in the State Action asserts liability for defective and non-conforming work on a construction project. Oldcastle is named in the State Action as a fourth-party defendant. In the three years since the State Action was initiated, no party to the State Action has filed, or has attempted to file, suit against the Debtors relating to any allegations made in the State Action.

5. Among other things, the Debtors manufacture Dry-Block II Block Admix, a concrete additive (the "Product"). Although it is not made clear in the Motion, Oldcastle apparently alleges that particular batches of the Product purchased by Oldcastle between July 1998 and April 2001 were deficient in some unspecified manner which gave rise, in some part, to Oldcastle's liability alleged in the State Action.

6. Oldcastle timely filed two proofs of claim in the Debtors' chapter 11 cases asserting breach of contract, negligence, breach of warranty and misrepresentation in the purchase of dry block (the "Claims"). The Claims were assigned claim numbers 12943 and

12944. The Claims assert damages in the aggregate amount of $8,200,000 which are highly contingent and are supported by no credible documentation. As of the filing of this response, the Debtors have not yet filed an objection to either of the Claims, but anticipate doing so in due course.

## ARGUMENT

### I. No Collateral Litigation Should Be Allowed To Proceed

7.  As a threshold matter, collateral litigation against the Debtors should not be allowed to take place in these chapter 11 cases. The whole reason that the Debtors were compelled to file for bankruptcy protection was the morass of asbestos litigation mounting against them. The main challenges of these chapter 11 cases are to develop a comprehensive litigation plan to deal with these thousands of cases and to develop a plan of reorganization.

8.  Courts have recognized that in mass tort cases, there is a critical need to stay all collateral litigation in order to allow the Debtors an opportunity to develop comprehensive litigation and reorganization plans.

> The purpose of this section [362] by its various subsections is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor.

A.H. Robins Co., Inc. v. Piccinin (*In re A.H. Robins & Co., Inc.*), 788 F.2d 994, 998 (4th Cir. 1986). Here, there are literally thousands of cases currently pending against the Debtors. These cases should not be litigated piecemeal in courts across the country; rather, they should all

remain stayed for a period of time while the Debtors develop a comprehensive approach with respect to such litigation.

9. In particular, the Debtors currently are litigating Zonolite attic insulation ("ZAI") and asbestos personal injury ("PI") claims to (a) streamline the claims adjudication process and (b) provide a means of resolving the common legal issues through a fair and orderly process in a single forum. The ZAI and PI litigation is significant to determining the scope of a currently unknown body of potential liability which is crucial to developing any plan of reorganization. Until the ZAI and PI issues are resolved, the Debtors are unable to sufficiently evaluate the non-asbestos litigation and its impact on any potential reorganization. As a result, Oldcastle's assertion that the Debtors are no longer in need of a "breathing spell" to formulate a plan of reorganization is simply erroneous. (Motion at ¶ 17).

10. Allowing the Oldcastle Complaint to be filed at this time will only divert the Debtors' attention from the task of developing its comprehensive litigation and reorganization plans.

## II. Oldcastle Has Failed To Show Sufficient Cause To Lift The Automatic Stay

11. The automatic stay is one of the most fundamental protections provided to a debtor under the Bankruptcy Code. See Midatlantic Nat. Bank v. New Jersey Dept. of Environmental Protection, 474 U.S. 494, 503 (1986). Pursuant to section 362(d) of the Bankruptcy Code, a movant must demonstrate sufficient cause to justify the lifting or modification of the automatic stay. Although the Bankruptcy Code does not define what constitutes cause, "courts generally consider the policies underlying the automatic stay [and] . . .

the competing interests of the debtor and the movant." In re Continental Airlines, Inc., 152 B.R. 420, 424 (D. Del. 1993). In particular, Delaware courts consider the three factors in balancing the competing interests of the parties: (a) the balance of the hardships facing the parties if the stay is lifted; (b) the prejudice that would be suffered by the debtors should the stay be lifted; and (c) the probable success on the merits if the stay is lifted. See Continental, 152 B.R. at 424. Sufficient cause to warrant the lifting of the automatic stay does not exist in these chapter 11 cases.

**(A)   The Balance Of Hardships Weighs Significantly In Favor Of The Debtors**

12.     The burdens forced upon the Debtors by the filing and prosecution of the Oldcastle Complaint far outweigh any inconvenience encountered by Oldcastle. Unsecured creditors, such as Oldcastle, "bear the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the Debtor in denying relief." In re Micro Design, Inc., 120 B.R. 363, 369 (E.D. Pa. 1990) (automatic stay not lifted where it was appropriate for movant to pursue its claim by filing a proof of claim, and participating in the claim process, in the bankruptcy case). The Motion does not offer a single hardship that is particular to Oldcastle and is not shared by all of the thousands of unsecured creditors in these chapter 11 cases.

13.     There is simply no compelling need to force the Debtors to now join litigation which has been pending for three years. Oldcastle does not, and cannot, argue that the absence of the Debtors from the State Action in any way impairs Oldcastle's ability to defend itself in such litigation. Oldcastle is the only party to the State Action which appears to have any

potential right to recover from the Debtors. Neither the plaintiff nor the other defendants2 has asserted any claims against the Debtors either in the State Action or by filing a proof of claim in the Debtors' chapter 11 cases.3 Therefore, Oldcastle's contention that all parties to the State Action would be inconvenienced by the resolution of the State Action in this Court is disingenuous. (Motion at ¶ 18). In fact, it is Oldcastle that attempts to burden the other parties to the State Action by seeking to unnecessarily add the Debtors to the litigation. There is no reason why any other party to the State Action should become involved in these chapter 11 cases as they possess no claims against the Debtors.

14. Moreover, Oldcastle has not provided, nor can it provide, any reason why the State Action cannot be adjudicated fully without the participation of the Debtors while still preserving any rights Oldcastle might have against the Debtors. If Oldcastle is not found liable in the State Action, that finding would apparently resolve Oldcastle's claims against the Debtors. Therefore, it is premature to force the Debtors to expend their limited resources to defend against the Oldcastle Complaint to the detriment of similarly situated unsecured creditors, when a judgment has not been entered against Oldcastle in the State Action.

15. Even if Oldcastle is found ultimately liable in the State Action, Oldcastle has preserved its right to hold the Debtors' accountable for any judgment imposed on Oldcastle by filing its Claims in these chapter 11 cases. Indeed, filing a proof of claim is the exact remedy

---

[2] The Plaintiff in the State Action is the City of Everett, Massachusetts and the two defendants, other than Oldcastle, are Barletta Engineering Company and B&T Masonry Construction Co., Inc.

[3] The Court established March 31, 2003 as the bar date for filing general unsecured claims against the Debtors.

the Bankruptcy Code offers to creditors, such as Oldcastle, in a chapter 11 case. As the Court stated at the hearing on the Wesconn Motion:

> I don't see anything in this [motion for relief from stay] that is any different from what the typical creditor faces by way of an economic loss of a business transaction, so I don't see anything that distinguishes this from other claims of a similar nature. So, I'm not prepared to lift the automatic stay for those reasons. But I do think you have a remedy in filing a proof of claim. (Transcript, July 22, 2002 Hearing).

16. Similarly, in the Johns-Manville chapter 11 cases, a creditor who had incurred prepetition damages related to a product supplied by one of the debtors filed a proof of claim for such damages. Shortly after filing its claim, the creditor instituted a state court action seeking to recover the damages sought in the proof of claim. The Manville court denied relief from the automatic stay, finding that (a) by filing a claim for damages arising from prepetition events, the creditor admitted that its claim falls within the ambit of the reorganization proceedings; and (b) the creditor cannot be allowed to simultaneously pursue its claim in both the state court and the federal bankruptcy court. In re Johns-Manville Corp., 57 B.R. 680, 688 (Bankr. S.D.N.Y. 1986).

17. Instead of reconciling its claims in this Court, Oldcastle seeks to expend the limited resources of the Debtors to litigate the Oldcastle Complaint so that it might potentially obtain a judgment against the Debtors in another venue. The Debtors, their estates, and the Debtors' unsecured creditors should not be forced to subsidize Oldcastle's efforts to liquidate its contingent claim in another forum. See Borman v. Raymark Industries, Inc., 946 F.2d 1031, 1036 (3rd Cir. 1991) ("The automatic stay was designed to prevent certain creditors

from gaining a preference for their claims against the debtor[.]") (internal quotations and citations omitted). Oldcastle offers no reason whatsoever why it should be granted preferential treatment over similar unsecured creditors of Grace.

18. Thus, Oldcastle will suffer little, if any, hardship if the Motion is denied. Oldcastle has demonstrated no reason why the Oldcastle Complaint must be filed at this time—the State Action has been proceeding with only the current parties and can continue to proceed without the Debtors' participation. Indeed, it may ultimately be determined, without the need for the Debtors' involvement, that Oldcastle has no liability in the State Action and no claims against the Debtors. In the alternative, if Oldcastle is ultimately found liable in the State Action, Oldcastle will still have the opportunity to resolve its Claims pursuant to the claims resolution process envisioned by the Bankruptcy Code.

**(B)    Substantial Prejudice Would Be Incurred By The Debtor If The Automatic Stay Were Lifted**

19. An additional factor in determining whether to grant relief from the automatic stay to allow litigation to proceed against a debtor in another forum is the effect of such litigation on the administration of the estate. See In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984); In re Penn-Dixie Industries, Inc., 6 B.R. 832, 836 (Bankr. S.D. N.Y. 1980). If Oldcastle is allowed to file and pursue the Oldcastle Complaint, the Debtors' ability to administer their estates and these chapter 11 cases would be severely impacted.

20. First, allowing the Oldcastle Complaint to proceed would require the Debtors to bear the financial burdens of discovery and trial.4 The Debtors dispute Oldcastle's allegations and anticipate the need to mount a vigorous defense and conduct discovery relating thereto. Allowing the Oldcastle Complaint to be filed and to proceed against the Debtors will require the Debtors to introduce fact and expert witness testimony and other evidence in order to defend against Oldcastle's claims. Thus, relief from the automatic stay to allow the filing of the Oldcastle Complaint will result in the unnecessary depletion of the Debtors' assets and resources.

21. Second, if the automatic stay is lifted in this instance, it may open the floodgates of other motions to lift the automatic stay. The Oldcastle Complaint relates to a claim against one of the Debtors' products; there are thousands of claims pending against the Debtors relating to the Debtors' products. Lifting the automatic stay to permit the filing of the Oldcastle Complaint may well prompt large numbers of claimants, including, in fact, asbestos claimants to seek relief from the automatic stay to pursue their claims against the Debtors in a forum other than this Court. Were this to happen, the Debtors would be forced back into the position they were in prior to filing for bankruptcy protection. Indeed, it was the pendency of these thousands of claims that necessitated the Debtors' bankruptcy filing in the first place. The Debtors should be given the breathing room provided for by the automatic stay to allow them to develop their litigation plan for dealing with the morass of asbestos and other collateral litigation.

---

[4] Based on the allegations as set forth in the Motion and the Claims, the availability of any insurance coverage for the damages sought in the Oldcastle Complaint or the Claims is unclear. Therefore, the Debtors' estates could be required to bear the expenses of litigating the Oldcastle Complaint and of seeking recovery under applicable insurance policies, if any.

22. Third, modifying the automatic stay to allow Oldcastle to file and litigate the Oldcastle Complaint against the Debtors would require the time and commitment of several employees, including the sales manager for the Oldcastle account and employees with technical knowledge of the Product, as well as the Debtors' in house counsel, Michael Cohan, to supervise and monitor the litigation (the "Employees"). Such Employees would be required not only to divert their attention away from the Debtors' reorganization to assist counsel in the preparation of the Debtors' defense of the Oldcastle Complaint, but many of them may be witnesses as well. Moreover, because the Oldcastle Complaint has not yet been filed, substantial written and deposition discovery will need to be conducted. Completing discovery will require substantial time and effort on the Debtors' part to search for and produce responsive documents, prepare and defend its employee witnesses, and research and draft discovery responses.

**(C)** **Oldcastle Has Demonstrated No Likelihood of Success on the Merits.**

23. Oldcastle's Motion should be denied because it has not demonstrated, nor can it, any likelihood of success on the merits. Notwithstanding Oldcastle's assertion that its claims are not frivolous, it is the movant's burden to demonstrate it has a reasonable likelihood of success on the merits. Oldcastle simply failed to do so.

## CONCLUSION

For these reasons, the Motion for relief from the automatic stay should be denied.

Dated: October 10, 2003

        KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
James W. Kapp III
Janet S. Baer
Christian J. Lane
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

And

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB, P.C.

*/s/ Paula A. Galbraith*

Laura Davis Jones (Bar No. 2436)
Scotta McFarland (Bar No. 4184)
Paula Galbraith (Bar No. 4258)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession