**UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING
FEE APPLICATION OF REED SMITH LLP
FOR THE NINTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Fee Application of Reed Smith LLP for the Ninth Interim Period.

**BACKGROUND**

1.      Reed Smith LLP ("Reed Smith") was retained as special asbestos products liability defense counsel to the Debtors. In the Application, Reed Smith seeks approval of fees totaling $580,295.75 and costs totaling $60,586.48 for its services from April 1, 2003, through June 30, 2003.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30,

1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.   We served on Reed Smith an initial report based on our review, and received a response from Reed Smith, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.    In our initial report, we noted that the time entries were generally devoid of lumping and provided adequate detail, with only occasional lumping by Cameron, Bentz and Restivo, and inadequate detail by Cameron, Flatley, Turkaly and Restivo.  Local Rule 2016-2(d)(vii) provides that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment."  Furthermore, Local Rule 2016-2(d) directs fee applicants to "include activity descriptions which shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary".  We asked Reed Smith to advise these professionals to avoid lumping and to provide adequate detail in their future time entries.  Reed Smith responded as follows:

> All Reed Smith timekeepers have been instructed on several occasions not to lump their time entries.  Reed Smith recognizes that the Fee Auditor has raised these issues in the past.  Reed Smith will continue to improve its efforts at providing clear and properly segmented time entries on all future fee applications.

We appreciate the response.

### Specific Time and Expense Entries

4.    We noted an entry by Flatley ($440) on May 1, 2003, in which the total hours stated

do not match the parenthetical subparts. The difference is one hour and $440.00. The entry is provided below.

05/01/03  Flatley     Drafting memorandum re: Dr. Anderson deposition (1.50);     2.60
                      message for R. Sentfleben (.10) ;

We asked Reed Smith to review the entry and state whether it represents an omission of work performed or an inadvertent miscalculation. Reed Smith's response is provided below.

> We have reviewed the original time entries, and have concluded that due to an error in the drafting of the fee detail, the parenthetical subparts were incorrectly transcribed and reported. The parenthetical subparts should read: "Drafting memorandum re: Dr. Anderson deposition (2.50); message for R. Senftleben (.10)." The correct charge for attorney Flatley's time for this entry should be 2.6 hours, for a total of $1144.

We accept the explanation and thus offer no objection to these fees.

5.    In our initial report, we noted that between June 2 and 26, 2003, Turkaly spent a total of 91.00 hours for fees of $8,645.00 reviewing and digesting fact witness deposition transcripts. (See Exhibit A) We find no mention of a subsequent summary or memorandum. Paragraph I.E. of the Guidelines states, ". . . In evaluating fees for professional services, it is relevant to consider . . . .whether the services were necessary to the administration of, or beneficial towards the completion of, the case at the time they were rendered; . . ." We asked Reed Smith to explain the purpose of this review and how it benefitted the estate. Reed Smith's response is provided below.

> In his Initial Report, the Fee Auditor noted that during the month of June 2003, paralegal Chris Turkaly spent a total of 91.00 hours for fees of $8,645.00 reviewing and digesting fact witness deposition transcripts. This time was very important to the preparation of the Debtors' briefs for their summary judgment and motion in limine papers (see response to Inquiry No. 6, below), for the Debtors' responses to the summary judgment motions and oppositions to be filed by the ZAI Claimants, and Reed Smith's ultimate preparation for the ZAI Science Trial hearing.
> During the course of discovery in the ZAI Science Trial proceeding, Reed Smith attorneys took a series of depositions of numerous fact witnesses who had been

>identified by the ZAI Claimants, in addition to participating in extensive expert witness discovery.  The fact witnesses who were deposed by the Debtors generally were homeowners whose homes allegedly contain ZAI; their depositions generally focused on the conditions of their homes, the risks they perceived they faced due to the presence of ZAI in their homes, and narrative descriptions of how the ZAI was installed, how the ZAI was impacted during attic usage, and (if applicable) how the ZAI had been removed.  All of this information was important to the Debtors' ability to formulate its positions on the central issue of the ZAI Science Trial:  whether the presence of ZAI in a home presents an unreasonable risk of harm.
>
>In terms of preparing motions and briefs at the summary judgment stage, however, the deposition transcripts themselves were difficult to use, as the testimony in the deposition transcripts is voluminous and in some cases meandering.  Paralegal Turkaly was asked to review and digest these transcripts so the main points of the testimony could be captured in materials that were far easier and more cost effective for the attorneys to use in drafting the Debtors' summary judgment papers than the transcripts themselves.  (On separate occasions, paralegal Turkaly has digested transcripts from depositions of numerous expert witnesses offered by the ZAI Claimants, for the same purpose.)
>
>Reed Smith believes that, given the number of depositions reviewed and the length and detail of the testimony contained therein, paralegal Turkaly's time spent on this task was necessary and not excessive.  Indeed, the digests she produced were relied upon by the Reed Smith attorneys who worked on the summary judgment motions and briefs--which, as described in the next response, were large-scale, exhaustive presentations of the Debtors' positions in the ZAI Science Trial proceeding.

We accept the response and offer no objection to these fees.

6. We noted that between June 18 and 30, 2003, seven firm members spent a total of 128.05 hours for fees of $46,752.25 on research and preparation of a summary judgment motion and brief.  (See Exhibit B)   Paragraph I.E. of the Guidelines states, ". . . [i]n evaluating fees for professional services, it is relevant to consider . . .whether services were performed within a reasonable time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;. . ."  We asked Reed Smith why this matter required the involvement of seven firm members and this much time to complete.  Reed Smith's response is provided as Response Exhibit 1.  We accept this explanation and offer no objection to these fees.

**FEE AUDITOR'S FINAL REPORT** - Page 4
wrg FR Reed 9int 4-6.03.wpd

7. In our initial report, we noted two meal expenses which may be excessive. The entries are provided below.

| Date | Description | Amount |
|---|---|---|
| 04/29/03 | Meal Expense - VENDOR: DOUGLAS E. CAMERON DINNER WITH RICHARD FINKE, ESQ. OF W.R. GRACE 4/2/03. | 154.87 |
| 05/29/03 | Meal Expense - VENDOR: LAWRENCE E. FLATLEY - DINNER ON 5/21 WITH R. SENFTLEBEN AND DR. ILGREN, PHILA. PA - THREE DINNERS PURCHASED | 312.36 |

Paragraph I.E. of the Guidelines states, ". . . [i]n evaluating fees for professional services, it is relevant to consider . . .[w]hether the expense is reasonable and economical." We suggest reasonable ceilings of $15 per person for breakfast, $25 for lunch and $50 for dinner. We asked Reed Smith to explain why the cited entries should not be viewed as excessive. Reed smith responded as follows:

> Although the overwhelming majority of all meal expenses incurred by Reed Smith have fallen significantly below the reasonable ceilings suggested by the Fee Auditor, Reed Smith will not contest a reduction of $167.23 (as detailed below) for the expenses questioned by the Fee Auditor.
> On April 2, 2003, attorney Cameron incurred an expense of $154.87 for a dinner with the Debtors' in-house counsel. Only two dinners were purchased on this occasion, and therefore Reed Smith will not dispute a reduction for this expense of $54.87, pursuant to the reasonable ceilings on meal expenses suggested by the Fee Auditor. On May 21, 2003, attorney Flatley incurred an expense of $312.00 for a dinner with the Debtors' in-house counsel, one of the Debtors' expert witnesses, and the expert witness's assistant. Four dinners were purchased on this occasion. Reed Smith will not dispute a reduction of $112.36 for this expense, based on the Fee Auditor's suggested standards.

We appreciate the response and thus recommend a reduction of $167.23 in expenses.

**CONCLUSION**

8.  Thus, we recommend approval of fees totaling $580,295.75 and costs totaling $60,419.25 ($60,586.48 minus $167.23) for Reed Smith's services from April 1, 2003, through June 30, 2003.

>   Respectfully submitted,
>
>   **WARREN H. SMITH & ASSOCIATES, P.C.**
>
>   By: _____
>   Warren H. Smith
>   Texas State Bar No. 18757050
>
>   Republic Center
>   325 N. St. Paul, Suite 4080
>   Dallas, Texas 75201
>   214-698-3868
>   214-722-0081 (fax)
>   whsmith@whsmithlaw.com
>
>   **FEE AUDITOR**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 13th day of October, 2003.

>   _____
>   Warren H. Smith

## SERVICE LIST
Notice Parties

**The Applicant**

Richard Keuler, Esq.
Reed Smith LLP
1201 Market Street, Ste. 1500
Wilmington, DE 19801

Douglas Cameron
Reed Smith LLP
P. O. Box 2009
Pittsburgh, PA 15230-2009

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

| Date | Initials | Hours | Description |
|---|---|---|---|
| 06/02/03 | CHT | 8.00 | Review and digest fact witness deposition transcripts. |
| 06/03/03 | CHT | 8.00 | Review and digest fact witness depositions. |
| 06/04/03 | CHT | 6.00 | Review and digest fact witness depositions. |
| 06/05/03 | CHT | 7.00 | Review and digest fact witness depositions. |
| 06/06/03 | CHT | 8.00 | Continue to review and digest fact witness depositions. |
| 06/10/03 | CHT | 6.00 | Review and digest D. Van Cura's deposition. |
| 06/11/03 | CHT | 8.00 | Review and digest D. Van Cura's deposition. |
| 06/12/03 | CHT | 5.00 | Review and digest K. Kalman's deposition. |
| 06/13/03 | CHT | 6.50 | Review and digest K. Kalman's deposition. |
| 06/16/03 | CHT | 2.00 | Review and digest additional fact witness depositions. |
| 06/20/03 | CHT | 4.50 | Review and digest additional fact witness depositions. |
| 06/23/03 | CHT | 7.50 | Review and digest R. Hatch's deposition (2.0); review and digest J. Dillon's deposition (5.5). |
| 06/24/03 | CHT | 7.00 | Review and digest additional fact witness depositions. |
| 06/25/03 | CHT | 7.00 | Review and digest additional fact witness depositions. |
| 06/26/03 | CHT | 0.50 | Review and digest fact witness deposition. |

Exhibit B

| Date | Name | Description | Hours |
|---|---|---|---|
| 06/18/03 | Condo | Drafting work on Summary Judgment motion and brief. | 1.00 |
| 06/19/03 | Condo | Drafting work on Summary Judgment motion and brief. | 3.00 |
| 06/22/03 | Cameron | Review of materials for Daubert and summary judgment motions. | 1.30 |
| 06/23/03 | Butcher | Meeting with K. Condo re: Daubert brief (0.4); review materials for brief (1.3); begin drafting brief (1.4). | 3.10 |
| 06/23/03 | Cameron | Prepare for and meet with J. Restivo and K. Condo regarding summary judgment and Daubert motions (.8); additional meeting with J. Restivo regarding same (.3); telephone call with R. Finke regarding same (.8);...........; review outline of arguments for motion (.7). | 2.90 |
| 06/23/03 | Condo | Drafting work on Summary Judgment motion and brief. | 2.80 |
| 06/23/03 | Restivo | Meeting with K. Condo re: Daubert motion (1.2); conference call re: same (0.8); dictate brief opening of motion (0.5);............ | 4.00 |
| 06/24/03 | Bentz | ..........; work regarding summary judgment brief (1.9). | 4.00 |
| 06/24/03 | Butcher | Begin drafting portions of Daubert brief. | 1.20 |
| 06/24/03 | Cameron | Review draft outline for summary judgment brief (.8);............ | 1.60 |
| 06/24/03 | Condo | Drafting work on Summary Judgment motion and Brief. | 2.10 |
| 06/25/03 | Butcher | Detailed review of materials to | 3.80 |

|  |  |  |  |
|---|---|---|---|
|  |  | draft Daubert section of Summary Judgment brief. |  |
| 06/25/03 | Cameron | ............; review outline of summary judgment brief and comment (.8). | 1.50 |
| 06/25/03 | Condo | Drafting work on Summary Judgment motion and brief. | 7.70 |
| 06/25/03 | Flatley | Review outlines and rough draft of brief (1.20); call with J. Bentz re: status (.20); call with D. Cameron re: status (.40); with J. Restivo re: status of brief and scheduling issues and follow up (.50). | 2.30 |
| 06/26/03 | Bentz | Work on brief in support of Daubert exclusions and summary judgment (5.0);.......... | 9.40 |
| 06/26/03 | Butcher | Meeting re: Summary Judgment brief (1.80); draft portion of brief (.30). | 2.10 |
| 06/26/03 | Cameron | Prepare for and meet with trial team regarding summary judgment/Daubert motions (1.9); prepare and revise outline regarding same (.9);............ | 3.60 |
| 06/26/03 | Condo | Drafting work on Summary Judgment motion and brief. | 7.50 |
| 06/26/03 | Flatley | Review outlines and initial draft of brief in support of motion for summary judgment (1.20); meeting to discuss outline of brief and status of preparation (2.10); meet with D. Cameron re: revisions to outline (.20). | 3.50 |
| 06/26/03 | Muha | Search for materials relating to Daubert motion. | .30 |

06/26/03 Restivo    Preparation for and meeting re:    6.00
         motions and briefs (1.5); case
         review in preparation for briefs
         (2.5); dictate portions of
         memorandum for motions (2.0).

06/27/03 Bentz    ...........;work on motion for
         summary judgment brief (2.3).

06/27/03 Butcher    Draft section of summary judgment    4.20
         brief re: indirect preparation of
         test samples.

06/27/03 Condo    Drafting work on Summary Judgment    6.75
         motion and brief.

06/28/03 Butcher    Draft section of brief in support    5.10
         of Motion for Summary Judgment
         (4.70); revise indirect
         preparation section (.40).

06/28/03 Cameron    Work on proposed revisions to    1.50
         summary judgment brief.

06/28/03 Condo    Drafting work on Summary Judgment    1.00
         motion and brief.

06/29/03 Butcher    Review and revise sections of    3.40
         Daubert/Summary Judgment brief
         (.80); institute changes and
         revisions to brief (1.50); review
         cases cited in the brief (1.10).

06/29/03 Cameron    Continue review of draft brief and    1.30
         prepare additional inserts and
         revisions for same.

06/29/03 Flatley    Review D. Cameron draft inserts    .30
         (re: summary judgment brief) and
         supplement.

06/30/03 Bentz    Work on Daubert/Summary Judgment    4.70
         brief.

06/30/03 Butcher    Work on Daubert/Summary Judgment    5.10

Brief.

06/30/03 Cameron    Review of draft summary judgment    4.80
brief and extensive revisions and comments thereto (2.6); several meetings with J. Restivo and L. Flatley regarding revisions and comments to various sections of the brief (1.8); meet with J. Restivo regarding same (.4).

06/30/03 Condo    Drafting work on Summary Judgment    2.00
motion and brief.

06/30/03 Flatley    E-mails re: status of brief (.20);    10.50
review first draft of summary judgment brief (2.90); draft language for inserts to brief (1.40); meet with J. Restivo and D. Cameron to review draft of brief and discuss strategy (1.30); reviewing and revising second draft of brief, including discussions with J. Restivo and D. Cameron (4.70).

06/30/03 Restivo    Work (including meetings, calls,    11.00
drafting, re-drafting and research) re: July 7 motion for summary judgment and brief in support.

Response Exhibit 1

The summary judgment motions and briefs prepared by Reed Smith during this time period constitute the most important milestone to date in the ZAI Science Trial; the time spent on the preparation of these materials reflects both their importance to the Debtors in the course of the ZAI Science Trial proceeding generally, as well as the exhaustive effort required to prepare these materials.

It must be noted at the outset that there were multiple motions, briefs and appendices being prepared by Reed Smith during this period: first, a motion for summary judgment (with supporting brief and appendix) on the potentially case-dispositive issue of whether ZAI poses an unreasonable risk of harm, which the Court designated as the ultimate issue in the ZAI Science Trial proceeding; second, a motion in limine (with supporting brief) seeking to exclude any evidence of damages offered in the ZAI Science Trial proceeding by the ZAI Claimants; and third, a motion to consolidate the individual actions brought by the ZAI Claimants. The most significant amount of the work at issue was done on the motion for summary judgment and its supporting brief. The "Notice of Agenda of Matters Scheduled for Argument" for the September 16, 2003 hearing lists the voluminous motions and supporting briefs and appendices filed in the ZAI Science Trial matter.[1]

---

[1] The "Notice of Agenda of Matters Scheduled for Argument" for the September 16, 2003 hearing can be accessed by the Fee Auditor via the electronic docket system used in the Debtors' bankruptcy proceedings, or can be provided by Reed Smith at the Fee Auditor's request. Tables of contents for the various briefs also can be provided to the Fee Auditor at his request, in order to further demonstrate the large volume of materials assembled by Reed Smith on behalf of the Debtors.

The motion for summary judgment incorporated both substantive legal arguments on why ZAI poses no unreasonable risk of harm to homeowners, as well as Daubert arguments as to why the alleged scientific evidence offered by the ZAI Claimants' experts was unreliable and should be excluded from the ZAI Science Trial. The importance of the motion for summary judgment to the Debtors' chances of prevailing in the ZAI Science Trial cannot be overstated. After an extensive period of fact and expert discovery, an enormous quantity of legal, factual, and expert scientific information needed to be collected, reviewed, analyzed and summarized in the course of preparing the motion and brief. To do this, the work was divided among Reed Smith professionals to make for the most efficient work process and the best work product.

The way in which this work was divided reflects the way Reed Smith has structured its representation of the Debtors historically. Since 1989, Reed Smith has provided counsel to the Debtors for certain asbestos-related litigation, and several individual Reed Smith attorneys (namely, attorneys Flatley, James J. Restivo, Jr., Douglas E. Cameron, and James W. Bentz) have individually taken primary responsibility for dealing with, among other things, medical issues and experts, industrial hygiene issues and experts, microscopy issues and experts, regulatory issues and experts, Grace's historical documents and witnesses, document production and discovery issues, and damages.

This division of primary responsibility originally was designed to avoid, and historically has avoided, duplication of effort. It also has allocated direct responsibility for results. The division of specific primary responsibilities was carried over to Reed Smith's retention as the Debtors' Special Asbestos Product Liability Defense Counsel, and has been utilized throughout the entire period Reed Smith has worked on the ZAI Science Trial. Reed Smith is fully aware of the need to avoid duplication, and it has made--and will continue to make--extensive efforts to avoid any such duplication, including writing off time prior to the submission of Fee Applications if there is any unnecessary duplication.

With respect to the ZAI Science Trial (which was actuated by the Court's finding that the scientific issue of ZAI's alleged harmfulness could be dispositive of the ZAI Claimants' claims), attorneys Restivo, Flatley, Cameron and Bentz additionally had significant involvement working with the Debtors' experts in connection with the experts' preparation of scientific expert reports. All four also took or defended the depositions of particular expert (and fact) witnesses, depending upon the attorneys' areas of individual responsibility. All of these items, in one way or another, related to the work on the motions and briefs prepared in June 2003 (and thereafter), and the efforts of each of these attorneys was required for a comprehensive treatment of all the issues presented in the ZAI Science Trial.

In addition to the work done by attorneys Restivo, Flatley, Cameron and Bentz, attorneys Kathy K. Condo, Jayme L. Butcher and Andrew J. Muha also contributed to the briefs, largely

through factual and legal research, preliminary drafting work, and organization of supporting evidence, which was later expanded upon and revised by the four primary Reed Smith attorneys in subsequent drafts of the materials. Rather than being duplicative, this preliminary work was necessary to supply a foundation for subsequent work and the final versions of the papers. Several meetings among various groups of the Reed Smith professionals were necessary to coordinate each individual's work and responsibilities (and to avoid duplication of efforts), as well as to update the entire group on the progress made by each individual. Without these periodic update meetings, it would be difficult at best to keep the drafting efforts moving forward in an expeditious and manageable manner.

Given the enormous importance of these materials to the Debtors' efforts to prevail in the ZAI Science Trial, Reed Smith felt it necessary to work through several drafts of the summary judgment and motion in limine papers before finalizing them for filing in July 2003. That several drafts were circulated (both internally and to the Debtors' in-house representatives) is apparent from the time entries noted by the Fee Auditor; the necessity of these exercises should not be ignored. Furthermore, because the summary judgment and motion in limine papers were due to be filed in court shortly after the July 4 holiday, Reed Smith's professionals focused their efforts on substantially completing these materials by the end of June, in advance of the holiday weekend. The time spent on the preparation of these materials, we submit, was reasonable, necessary and not excessive, and Reed Smith asks for full compensation for these detailed and monumental tasks.[2]

---

[2] Reed Smith's review of the fee applications filed by the ZAI Claimants' counsel for the June 1-30, 2003 period indicates that the ZAI Claimants' counsel incurred fees in preparing the ZAI Claimants' summary judgment papers that were at least as much as, if not greater than, the fees Reed Smith incurred in preparing the Debtors' summary judgment papers. Reed Smith believes that this further evidences the extensive nature of the work required to assemble the summary judgment and motion in limine papers in the ZAI Science Trial proceeding.