IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W.R. Grace & Co., et al., | ) Case No. 01-01139 (JKF) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Related Docket No. 4575 |
| | ) Objection Deadline: October 31, 2003 |
| | ) Hearing Date: November 17, 2003 @ 12:00 p.m. |

**OBJECTION OF THE UNOFFICIAL COMMITTEE TO APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105, 327, AND 524(g)(4)(B) FOR THE APPOINTMENT OF C. JUDSON HAMLIN AS LEGAL REPRESENTATIVE FOR FUTURE CLAIMANTS**

D.K. Acquisition Partners, L.P., Bear, Stearns & Co. Inc., Fernwood Associates, L.P. and Deutsche Bank Trust Company Americas (collectively, the "Unofficial Committee"), by and through their counsel of record, Klehr, Harrison, Harvey, Branzburg & Ellers LLP and Willkie Farr & Gallagher LLP, respectfully submit the following objection to the Application of Debtors Pursuant to 11 U.S.C. §§ 105, 327, and 524(g)(4)(B) for the Appointment of C. Judson Hamlin as Legal Representative For Future Claimants ("Application").

**Preliminary Statement**

1.  Pursuant to the Application, Debtors seek to have appointed as Representative for Future Claimants (the "Futures Representative") C. Judson Hamlin, Esq., an individual who, for almost two years, has served as an intimate advisor to the District Court. For the reasons discussed more fully below, Mr. Hamlin is not, as required by the Bankruptcy Code, disinterested, and his appointment as an advocate on behalf of future asbestos claimants in this case would conflict sharply with his past and future role as an advisor to the District Court. If the Debtors' Application were granted, a key constituency in these bankruptcy proceedings would be represented by a person who has enjoyed -- and apparently will continue to enjoy -- unparalleled access to and influence with the District Court on the very same issues he will be

called upon to advocate on behalf of the future asbestos claimants. Indeed, given Mr. Hamlin's role in these cases and his close relationship with the District Court, the fact that the Debtors would even seek to have Mr. Hamlin appointed to such a powerful position as Futures Representative is shocking. The Debtors' conduct here raises serious doubts not only concerning the Debtors' judgment, but also the fairness and transparency of these proceedings. As Judge Henry Friendly observed, "the conduct of bankruptcy proceedings not only should be right but must seem right." In re Ira Haupt & Co., 361 F.2d 164, 168 (2d Cir. 1966). The application is deficient on both counts and should be denied.

2. Though not at issue in this Objection, Mr. Hamlin's dual role as Consultant in this case and Futures Representative in the G-I bankruptcy case, which certainly shares many of the same potential asbestos claimants and issues as these cases, raises serious concerns with respect to whether the District Court should disqualify itself in these cases. The Unofficial Committee is carefully reviewing these issues, and following the recusal proceedings as they unfold in the Owens-Corning case. The Unofficial Committee and each of its members reserve their right to seek disqualification in the future and no waiver of that right should be implied by the submission of this Objection or the Court's disposition thereof.

## Background

3. On April 2, 2001, W. R. Grace & Co., and 61 of its predecessors, subsidiaries, and other related entities (collectively, "Debtors"), filed for reorganization under Chapter 11 of the United States Bankruptcy Code.

4. On November 27, 2001, then-Chief Judge Becker of the Third Circuit Court of Appeals ordered that the Debtors' cases, and four other asbestos-related chapter 11 cases

pending in the District of Delaware[1] (together, the "Five Asbestos Cases"), be transferred from the Bankruptcy Court and assigned to the Honorable Alfred M. Wolin of the United States District Court for the District of New Jersey, who temporarily was assigned to the District of Delaware. (See Designation of a District Judge for Service in Another District Within the Circuit (the "Designation Order), Wills Aff. Ex. A.)[2] Judge Becker directed that "these bankruptcy cases, which carry with them tens of thousands of asbestos claims, need to be consolidated before a single judge so that a coordinated plan for management can be developed and implemented." (Id. ¶ 2.)

     5.     On December 28, 2001, the District Court appointed C. Judson Hamlin, and four other individuals, as Court Appointed Consultants (the "Consultants") in the Five Asbestos Cases. (See Order Designating Court Appointed Consultants and Special Masters (the "Appointment Order"), Wills Aff. Ex. B.)[3]

     6.     Each member of the Unofficial Committee is a creditor in these chapter 11 cases, holding claims against the Debtors arising under: (i) a certain $250 million credit facility, entered into as of May 14, 1998; and/or (ii) a certain $250 million revolving credit facility dated as of May 5, 1999 (collectively, the "Credit Facilities").

     7.     As of August 2003, the fixed, liquidated aggregate claim of the members of the Unofficial Committee against the Debtors, exclusive of accrued and accruing post-petition

---

[1] The four other cases are: In re Armstrong World Indus., Inc., et al., Case Nos. 00-4471, 00-4469, 00-4470; In re Owens Corning, et al., Case No. 00-03837; In re Federal Mogul Global, Inc., T&N Ltd., et al., Case Nos. 01-10578; and In re USG Corp., et al., Case Nos. 01-2094 through 01-2104.

[2] References to "Wills Aff. Ex. __" are to the exhibits attached to the Affidavit of Joanne Wills in Support of Objection of the Unofficial Committee of Unsecured Creditors of W.R. Grace, et al. to Application of Debtors Pursuant to 11 U.S.C. §§ 105, 327, and 524(g)(4)(b) for the Appointment of C. Judson Hamlin as Legal Representative for Future Claimants.

[3] The four other Consultants are William A Drier, Esq., David R. Gross, Esq., John E. Keefe, Esq., and Professor Francis E. McGovern. (See Appointment Order, Wills Ex. B.)

3

DEL1 54144-1

date interest, was estimated to be not less than $150 million. This estimate includes outstanding principal as well as estimated prepetition interest and facility fees. (Id.)

8.  As holders of claims against the Debtors arising under the Credit Facilities, the entities referenced herein decided to form the Unofficial Committee to represent the interests of its members in these bankruptcy cases.

## Objection

9.  As the Third Circuit has noted, "it is important that [future asbestos claimants] have a representative to protect their interests in any discharge of [debtors'] debts . . . ." In re Amatex Corp., 755 F.2d 1034, 1035 (3d Cir. 1985). As such, it is clearly right to seek the appointment of a Futures Representative. See 11 U.S.C. § 524(g)(4)(B)(i). Such an appointment, however, must meet both the requirements of Section 327 of the Bankruptcy Code and the ethical rules governing Mr. Hamlin's conduct as an attorney; Mr. Hamlin's appointment as Futures Representative would meet neither.

**A.  Mr. Hamlin's Appointment As Futures Representative Does Not Meet The Requirements of Section 327 of the Bankruptcy Code.**

10.  Section 327 of the Bankruptcy Code governs the employment of professional persons in all bankruptcy cases. The section provides that the trustee or debtor in possession "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under [the Bankruptcy Code]." 11 U.S.C. § 327(a). See also In re Roger J. Au & Son, Inc., 71 B.R. 238, 240-41 (Bankr. N.D. Ohio 1986) ("The restrictions of Section 327 apply to a debtor in possession.").

4

DEL1 54144-1

11.     The term "disinterested person" is defined under the Bankruptcy Code in section 101(14) as a person who, among other things, "does not have an interest materially adverse to the interest of the estate <u>or of any class of creditors</u> or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor . . . <u>or for any other reason</u>." 11 U.S.C. § 101(14)(E) (emphasis added).

12.     Unlike "disinterested person," the term "adverse interest" is not defined in the Bankruptcy Code. Most courts, however, have defined the phrase "to hold or represent an interest adverse to the estate" as either "(1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant, or (2) to possess a predisposition under circumstances that render such a bias against the estate." <u>In re Tinley Plaza Assocs., L.P.</u>, 142 B.R.. 272, 277 (Bankr. N.D. Ill. 1992); <u>In re CF Holdings Corp.</u>, 164 B.R. 799, 806 (Bankr. D. Conn. 1994). <u>See also</u> <u>In re Marvel Entm't Group, Inc.</u> 140 F.3d 463, 476-77 (3d Cir. 1998) (holding that a mere potential conflict is an unacceptable adverse interest under section 327); <u>In re BH & P, Inc.</u>, 949 F.2d 1300, 1315-16 (3d Cir. 1991) (same). In addition, "having" an interest adverse to the estate and "representing" an interest adverse to the estate are identical considerations. <u>See</u> <u>Roger J. Au & Son, Inc. v. Aetna Ins. Co.</u>, 64 B.R. 600, 604 (Bankr. N.D. Ohio 1986).

13.     As such, section 327 prevents a party from occupying two possibly conflicting roles in a bankruptcy. Thus, for example, section 327 has been held to (i) prevent counsel who previously had advised a creditor from also representing the debtor (<u>see</u> <u>Meespierson Inc. v. Strategic Telecom</u>, 202 B.R. 845, 847, 850 (D. Del. 1996)), (ii) bar a member of a committee of pre-petition claimants from representing future claimants (<u>see</u> <u>Locks</u>

DEL1 54144-1

v. United States Trustee, 157 B.R. 89, 93-94 (W.D. Pa. 1993)), and (iii) prohibit an accounting firm that was a creditor of and had provided accounting services to the debtor prior to filing from providing similar services post-petition. See United States Trustee v. Price Waterhouse, 19 F.3d 138, 141 (3d Cir. 1994). Nor is the "disinterested person" requirement of section 327 limited to those directly employed by the debtor or trustee; rather, it generally extends to professionals connected to the bankruptcy. For example, it has been held to apply to the appointment of examiners (see In re Big Rivers Elec. Corp., 284 B.R. 580, 595 (W.D. Ky. 2002) ("It is clear that the Examiner must be a 'disinterested person' within the meaning of the Bankruptcy Code and Bankruptcy Rules")), and to the retention of counsel by creditors' committees (see In re Caldor, Inc.--NY, 193 B.R. 165, 170-171 (Bankr. S.D.N.Y. 1996)).

14. As noted above, the District Court appointed Mr. Hamlin as a "Court Appointed Consultant" in the Five Asbestos Cases, which includes this case, on December 28, 2001. The grant of authority provided to Mr. Hamlin, as well as the other Consultants, was extremely broad. As the District Court stated, the purpose of the "Consultants is to advise the Court and to undertake [certain] responsibilities, including by way of example and not limitation, mediation of disputes, holding case management conferences, and consultation with counsel . . . ." (See Appointment Order, ¶ 3, Wills Aff. Ex. B.)

15. Pursuant to the Appointment Order, Mr. Hamlin, as well as the other Consultants, also was delegated "certain authority to hear matters and to advise the District Court on issues that may arise in these five large Chapter 11 cases." (Id. ¶ 1.) For example, the Appointment Order provided that the District Court could, "without further notice, appoint any of the Court Appointed Consultants to act as a Special Master to hear any disputed matter and to make a report and recommendation to the Court on this disposition of such matter." (Id. ¶ 4.)

16. The District Court itself has described the Consultants, including Mr. Hamlin, as "necessary for the efficient administration of these very large mass-tort chapter 11 cases," and as "occupying a unique position in the [asbestos] cases not shared by other persons employed in these cases." (See Fee Allowance Order, ¶ 1, Wills Aff. Ex. C.)[4] And, the District Court has described the Consultants as "functioning in a manner in all respects similar to examiners as provided for in the Bankruptcy Code." (Id.)

17. In his role as a Consultant, Mr. Hamlin has, consistent with the grant of authority he received, participated materially in these cases as an advisor to the District Court. Mr. Hamlin's time records show that, over the course of the past 22 months, Mr. Hamlin has been deeply involved in this case and his activities included several meetings with the District Court and the other Consultants and the drafting of a memorandum relating to the propriety of certain motions filed by parties to these bankruptcy cases. (See Wills Aff. Exs. D-F.)

18. In short, it cannot reasonably be disputed that Mr. Hamlin has had unparalleled access to the District Court, and has had, and continues to have, influence with the District Court and the District Court's decision-making process not shared by the Unofficial Committee or, presumably, by any other party to these proceedings.

19. Nevertheless, Mr. Hamlin's role as an advisor to the District Court in these cases garnered little more than a passing reference by Debtors in their Application to have Mr. Hamlin appointed as a partisan advocate for future asbestos claimants. Indeed, the only mention of Mr. Hamlin's role as a Consultant is buried within the section of the Application dedicated to Mr. Hamlin's qualifications, and not in the section of the Application discussing Mr. Hamlin's

---

[4] The "Fee Allowance Order" refers to the Order 1) Partially Withdrawing the Reference and 2) Governing Applications for the Allowance of Fees and Expenses to Court Appointed Advisors.

alleged disinterestedness. (See Application ¶ 11.)[5] The Debtors' attempt to minimize Mr. Hamlin's past and continuing role as an advisor to the District Court in these cases is not surprising, given that Mr. Hamlin's prior and continuing role as a Consultant disqualifies him from serving as the Futures Representative.

20. It cannot be disputed that Mr. Hamlin and the other Consultants have actively participated in these cases and in the four other asbestos cases in which they are advising the District Court, including devoting many hours to consulting privately with the District Court, performing legal and factual research for the District Court, attending hearings and assisting the District Court in preparing for hearings, and engaging in other tasks that may have a material impact on the manner in which these cases are administered and the results that will be achieved. (See, e.g. Wills Aff. Exs. D-F.)

21. Having fulfilled this role for almost two years, Mr. Hamlin simply cannot now act as a partisan advocate for future asbestos claimants -- a group whose interests clearly are adverse to the Debtors' direct and immediate stakeholders and perhaps the Debtors themselves in the same case. Indeed, as Futures Representative, Mr. Hamlin will be duty bound to see that the future asbestos claimants whom he represents receive the greatest consideration possible, even if such consideration comes at the expense of other creditor classes -- including the members of the Unofficial Committee -- or subjects the Debtors to onerous obligations. Thus, on issues such as discharge, the setting of bar dates, the estimation of future claims, substantive consolidation,

---

[5] The Unofficial Committee was not privy to the process by which the Debtors determined to seek the appointment of Mr. Hamlin as Futures Representative. As a result, the Unofficial Committee has served discovery requests and subpoenas, seeking documents and depositions from the Debtors and others, in order to ascertain why Mr. Hamlin was selected and the steps that were taken by Debtors in coming to their decision.

DEL1 54144-1

channeling injunctions and successor liability, Mr. Hamlin will -- as he must -- forcefully advocate the interests of future asbestos claimants.

22. It is not reasonable to believe that the knowledge, insight, and potential advantage Mr. Hamlin has gained based on his role as a close advisor to the District Court simply can be set aside every time he turns to the role of acting as a partisan advocate for his constituents. As troubling is the certain perception that Mr. Hamlin's role as an advisor to the District Court in this very case could play a substantial role in the effectiveness of his position as Futures Representative. Indeed, if Mr. Hamlin were to be appointed Futures Representative he would be in a position to exploit his close connection with the District Court -- and his role in having helped the District Court evaluate the issues in the Debtors' cases -- in his new role as a partisan advocate for the future asbestos claimants, all to the detriment of other creditor classes and to the perception of fairness and impartiality which is critically important to the functioning of the judicial process in these cases.

23. As such, regardless of whether this conflict ever would, in fact, be acted upon, its very existence violates the requirements of section 327 of the Bankruptcy Code, and renders Mr. Hamlin's appointment as Futures Representative an impossibility.

**B.    The Rules of Professional Conduct Also Militate Against Mr. Hamlin's Appointment As Futures Representative.**

24. The Code of Conduct for Judicial Employees makes clear that "[e]mployees who occupy positions with functions and responsibilities similar to those for a particular position identified in this code should be guided by the standards applicable to that position, even if the position title differs." Code of Conduct for Judicial Employees, fn. 2 available at http://www.uscourts.gov/guide/vol2/ch2a.html. While the role Mr. Hamlin has

fulfilled as a Consultant to the District Court may not technically be that of a law clerk or staff attorney, he clearly has performed similar functions for the District Court.

25. For example, the District Court's order appointing Mr. Hamlin provided that his role was, among other things, "to advise the Court . . . , mediat[e] disputes, hold[] case management conferences, and consult[] with counsel . . . ." (Appointment Order, ¶ 2, Wills Aff. Ex. B.) Thus, it appears that, as with a law clerk, Mr. Hamlin is a "sounding board[] for tentative opinions and legal researcher[] who seek[s] the authorities that affect [the District Court's] decisions," and Mr. Hamlin has been and will continue to be "privy to the judge's thoughts in a way that [no other] parties to the lawsuit . . . may be." Hall v. Small Bus. Admin., 695 F.2d 175, 179 (5th Cir. 1983).

26. The time records produced to date by Mr. Hamlin and the other consultants bear this out. Those records show that the Consultants have, among other things, conducted legal research, prepared memoranda, and advised the District Court in connection with hearings and pending motions. (See, e.g., Wills Aff. Exs. D-F.) Based upon these activities, which are at the heart of the judicial decision-making process, the District Court has described Mr. Hamlin and the other Consultants as "necessary for the efficient administration of these very large mass-tort chapter 11 cases," and as "occupying a unique position in the [asbestos] cases not shared by other persons employed in these cases." (Fee Allowance Order, at 2, Wills Aff. Ex. C.)

27. Thus, while Mr. Hamlin may not, in name, be a law clerk or staff attorney, it is impossible to deny that he has in fact fulfilled that role for almost two years. As such, Mr. Hamlin should be subject to the same ethical considerations as those faced by former judicial law

10

clerks or other court personnel. Those considerations would not permit Mr. Hamlin to assume the role of Futures Representative.

28. For example, New Jersey's Rules of Professional Conduct state as follows:

> [A] lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator, or <u>law clerk</u> to such a person, unless all parties to the proceeding consent after disclosure.

N.J. RPC 1.12 (emphasis added). Delaware's Rules of Professional Conduct are to the same effect. See Del. RPC 1.12(a) ("a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator or law clerk to such person, unless all parties to the proceeding consent after consultation.").

29. As such, Mr. Hamlin's involvement as an advocate now to a party in a case in which he has been active as an advisor to the District Court clearly would be proscribed by New Jersey's and Delaware's ethical rules. Indeed, Mr. Hamlin's appointment as Futures Representative would require the District Court's recusal. See Fredonia Broadcasting Corp., Inc. v. RCA Corp., 569 F.2d 251, 255 (5th Cir. 1978) ("Once it appeared that Fredonia might have an unfair advantage in the litigation because its counsel included a lawyer who had been exposed to the trial judge's innermost thoughts about the case, the trial judge had no alternative to disqualifying himself."); Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988) (having attorney who was former law clerk to judge appear before him might "reasonably cause an objective observer to question [Judge's] impartiality.").

DEL1 54144-1

30. As the appointment of Mr. Hamlin as Futures Representatives would call into question the intrinsic fairness of this bankruptcy proceeding given his role as an advisor to the District Court in this and the other cases, the Debtors' Application should be denied.

### Conclusion

For all the foregoing reasons, the Unofficial Committee respectfully submits that the Application of Debtors Pursuant to 11 U.S.C. §§ 105, 327, and 524(g)(4)(B) for the Appointment of C. Judson Hamlin as Legal Representative For Future Claimants must be denied.

Dated: October 29, 2003

**KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS LLP**

By: *Joanne B. Wills*
Joanne B. Wills (#2357)
919 Market Street, Suite 1000
Wilmington, DE 19809-3062
(302) 426-1189

**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, NY 10019
(212) 728-8000

Counsel for Unofficial Committee
Of Unsecured Creditors