IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**Response Deadline: November 7, 2003**
**Hearing Date: November 17, 2003 at 10:00 a.m.**

## DEBTORS' OBJECTION TO WESCONN CO., INC.'S AND FUS, INC.'S MOTION TO COMPEL (DOCKET NO. 4577)

W. R. Grace & Co.-Conn. ("Grace") respectfully submits this objection (the "Objection") to the Motion to Compel (the "Motion") filed by Wesconn Co., Inc. and FUS, Inc. (together, "Wesconn"). The Debtors respectfully represent as follows:

### Introduction

1. The Debtors should not be compelled to answer Wesconn's discovery requests at this time. While it may be appropriate in the future for the Debtors to respond to

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

certain discovery, the Debtors focus at this juncture in their chapter 11 cases should be, and is, the development of a chapter 11 plan that will include, or be in conjunction with, a comprehensive litigation plan. Until the Debtors develop their chapter 11 plan and comprehensive litigation strategy, the Debtors will not be able to adequately assess individual litigation claims, including Wesconn's claims. The Debtors, therefore, should be allowed to develop their chapter 11 plan and assess all of the litigation claims within the context of their comprehensive litigation strategy. Extensive discovery on one claim at this time would present an unnecessary distraction at a critical juncture in these chapter 11 cases.

2. Wesconn has never shown how it is harmed if it must wait—like all similarly situated creditors—to liquidate its claims. Indeed, the Court previously refused Wesconn's request to liquidate its claims in state court. There is still no pressing need to liquidate Wesconn's claims and no one is harmed if the determination of Wesconn's claims is postponed until the Debtors develop their plan and litigation strategy.

3. Further, if Wesconn is permitted to obtain discovery from the Debtors, it is likely that many more claimants will also seek discovery using Wesconn's strategy. This potential flood of motions and discovery requests could place the Debtors back in the position they were in prior to filing for bankruptcy and would pose a major impediment to the Debtors' reorganization. Accordingly, Wesconn's Motion should be denied.

## Background

4. Wesconn has been a customer of the Debtors for a number of years, purchasing spray-on fireproofing coatings (the "Product") from the Debtors. Wesconn alleges

that a particular batch of the Product caused problems with its equipment, including an increase in the frequency of the normal and expected clogging of its equipment. Correspondence from Wesconn in the Debtors' records indicates that the complaints about the Product began in November 2000. Wesconn alleges that as a result of the increased clogging, Wesconn suffered damages related to "construction delays, other trade conflicts, increased costs, delay claims, etc." in the amount of $418,000. Wesconn has not filed suit against the Debtors.

5. On or about May 14, 2002, Wesconn filed a motion for relief from stay (Docket No. 2048) (the "Stay Motion") to file and prosecute an action against the Debtors (the "Wesconn Action"). On or about July 3, 2002, the Debtors filed an objection to the Stay Motion. As specified by order of this Court dated August 26, 2002 (the "Stay Order"), the Court denied the Stay Motion and directed Wesconn to file a proof of claim on or before July 31, 2002 and directed the Debtors to file any objection to such claim on or before September 30, 2002. On or about July 22, 2002, Wesconn filed two proofs of claim (the "Claims"). The Debtors filed an objection to the Claims on September 30, 2002 (the "Claim Objection"). As of the date of this Objection, Wesconn has not filed a response to the Claim Objection.

6. Wesconn delivered certain discovery requests (the "Discovery") to the Debtors' counsel on or about June 11, 2003. The Discovery is very broad in scope. For example, Wesconn requests that the Debtors "Identify any practices or procedures, including any documents related thereto, utilized by Debtors concerning business with [Wesconn]"; that the Debtors produce "All documents or communications between Debtors and Wesconn from June

1999 to present"; and multiple requests for the Debtors to identify its customer lists, its production line configuration and the formula for its Product.

7.    As reflected in the Motion, the Debtors' counsel engaged in discussions with Wesconn's counsel regarding the appropriateness of the Discovery moving forward at such time. Upon the last contact between the parties, on or about June 18, 2003, the Debtors' counsel believed that they were waiting for a response from Wesconn's counsel regarding the need for discovery. After approximately four months and no further contact from Wesconn, Wesconn filed this Motion seeking to compel the Debtors to respond to the Discovery, on or about October 15, 2003. Wesconn never informed the Debtors of its intent to file the Motion or made any further contact regarding the Discovery.

## Argument

### A.    Discovery Should Be Postponed As There is no Compelling Reason for it to Proceed at This Time

8.    Allowing the Discovery to proceed at this time would produce the same results as if the full litigation of the Claim had been allowed to proceed in the state court, which this Court already determined was not appropriate in the Stay Order. Indeed, the Discovery is merely another attempt by Wesconn to liquidate its claims through collateral litigation against the Debtors. The Debtors have maintained throughout these chapter 11 cases that no collateral litigation against the Debtors should be allowed to take place at this time. Forcing the Debtors to deal with potential litigation claims, and extensive discovery related thereto, one-by-one at this time before a chapter 11 plan and litigation strategy has been formulated could result in the Debtors becoming consumed by discovery requests related to thousands of product liability

claims. This result could significantly distract the Debtors from the administration of these chapter 11 cases and the formulation of an overall plan and approach to such litigation, thereby forcing the Debtors into the situation that the Stay Order sought to prevent.

**Allowing the Discovery to Proceed Now Will Distract from Developing a Plan**

9. This Motion should be denied for the same reasons the Stay Motion was denied. The Debtors must be allowed the opportunity to develop a comprehensive approach to deal with the litigation claims of all similarly situated unsecured creditors. Indeed, as this Court is well aware, the Debtors were compelled to file for bankruptcy protection because of the morass of asbestos litigation mounting against them. The main challenge of these chapter 11 cases is to develop a chapter 11 plan and a comprehensive litigation strategy to deal with these thousands of cases. Courts have recognized that in mass tort cases, there is a critical need to stay all collateral litigation in order to allow the Debtors an opportunity to develop comprehensive litigation and reorganization plans. See, e.g., In re Ionosphere Clubs, Inc., 922 F.2d 984 (2d Cir. 1990) (a principal purpose of the Bankruptcy Code is to provide the debtor a breathing spell from its creditors).

10. The Debtors currently are litigating Zonolite attic insulation ("ZAI") and asbestos personal injury ("PI") claims to (a) streamline the claims adjudication process and (b) provide a means of resolving the common legal issues through a fair and orderly process in a single forum. The ZAI and PI litigation is significant to determining the scope of a currently unknown body of potential liability which is crucial to developing any plan of reorganization. Until the ZAI and PI issues are resolved, the Debtors are unable to sufficiently evaluate the non-

asbestos litigation and its impact on any potential reorganization. The Debtors intent is to develop a plan and a comprehensive strategy for confronting all of their non-asbestos-related litigation claims and then seek to resolve the claims—including Wesconn's Claims—consistent with that strategy.

11. Until the Debtors' litigation strategy is formulated and implemented, it is unclear what discovery will be appropriate and efficient for the resolution of the litigation claims, including the Wesconn Claims. Because of this, the Debtors have not begun to file substantive objections to litigation-based claims. The sole exception is the Claim Objection, which the Debtors only filed because of the requirements of the Stay Order. However, the Stay Order does not contemplate the parties proceeding with extensive discovery to resolve the Claim Objection. The Discovery should be postponed at this time.

### **Wesconn Suffers no Harm from the Postponement of the Proposed Discovery**

12. Wesconn did not and cannot demonstrate any harm from the postponement of the Claim Objection and the Discovery. Moreover, Wesconn has not provided, nor can it provide, any reason why the Claim Objection must be adjudicated now, as it will certainly not hasten any recovery Wesconn might receive under a plan of reorganization. Wesconn does not, and cannot, argue that it suffers any harm which is not imposed on all other claimants asserting unliquidated unsecured claims against the Debtors. The liquidation of Wesconn's Claims, and discovery related thereto, can be postponed without prejudicing any rights Wesconn might have against the Debtors and without unnecessarily expending the Debtors' limited resources.

13. Wesconn has already received the relief that the Court determined to be appropriate in the Stay Order. Now Wesconn attempts to extend the Stay Order to require the Debtors to liquidate Wesconn's Claims. The Stay Order in no way contemplates this result. Indeed, at the July 22, 2002 hearing on the Stay Motion, the Court recognized that the intent of the Stay Order was not to put Wesconn in the same position as if relief from the automatic stay had been granted, stating, "I think [the relief in the Stay Order] will get you maybe not quite at the same place, but within the construct of the bankruptcy, a little further along." (Transcript at p. 35).

14. Wesconn fails to set forth any reason as to why it should be granted preferential treatment over other general unsecured creditors of Grace. Unwarranted preferential treatment, however, is exactly what Wesconn continues to seek. If the Motion were granted, the limited resources of the Debtors would be expended to respond to the comprehensive Discovery and prosecute the Claim Objection, to the detriment of the Debtors' estates, for nothing more than the illusory benefit of liquidating Wesconn's Claims sooner. Wesconn should receive the same uniform treatment as all similar unsecured litigation claimants, which the Debtors cannot determine until the Debtors' litigation strategy is formulated.

15. While it is premature to force the Debtors to expend their limited resources to respond to the Discovery to the detriment of similarly situated unsecured creditors, the Debtors' harm goes far beyond the expenditure of their limited resources. This one claim relates to an alleged defective product; there are thousands of other claims pending against the Debtors relating to other allegations of product defects. If discovery is allowed to proceed in this

one matter, it may well prompt a flood of copycat attempts to pursue discovery at this juncture in the chapter 11 cases. Were this to happen, the Debtors would be put back into the position they were in prior to filing for bankruptcy—dealing with thousands of litigation claims on a piecemeal basis. The Debtors should not be denied the breathing room provided for by the automatic stay and should be allowed to develop a comprehensive approach to such litigation claims before they engage in the claim resolution process for such claims.

**B.     Wesconn's Motion to Compel is Defective**

16.     Even if the Court determines that some Discovery may proceed under certain circumstances, the Motion still should be denied because Wesconn fails to meet the standards for a motion to compel. First, Local Rule 37.1[2] requires that the motion either contain "a verbatim recitation of each interrogatory . . . which is the subject of the motion or shall have attached a copy of the actual discovery document which is the subject of the motion." Wesconn failed to either recite the interrogatories in or attach a copy of the request to the Motion.

17.     Second, Federal Rule 26(d)[3] provides that "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Wesconn served its discovery on the Debtors without making any attempt to confer regarding a proposed discovery plan. Indeed, Wesconn has never sought to engage in a discovery conference with the

---

[2] In this Objection, "Local Rules" means the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware.

[3] Pursuant to Federal Rules of Bankruptcy Procedure 7026, 7028-7037 and 9014, certain of the Federal Rules of Civil Procedure (the "Federal Rules") related to discovery are made applicable to contested matters in bankruptcy court, including Federal Rules 26 and 37.

Debtors. At the very least, Wesconn should be required to follow the procedures set out in the Federal Rules and be required to confer with the Debtors regarding the discovery plan before being entitled to an order compelling discovery and providing costs.

18.  Third, Federal Rule 37(a)(2)(B) provides that a motion to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the . . . party failing to make discovery in an effort to secure the information or material without court action." While the Motion does include a certification to that effect, the fact that Wesconn last contacted the Debtors approximately four months prior to filing the Motion belies the "good faith" of Wesconn's attempts to resolve the issue. Wesconn never informed the Debtors of its intent to file the Motion. Wesconn clearly falls short of the intent of the Federal Rules that discovery disputes be settled without court intervention. Because of these significant defects, the Motion should also be denied.

*[Remainder of Page Intentionally Left Blank]*

**Conclusion**

For these reasons, the Motion should be denied.

Dated: October 31, 2003

        KIRKLAND & ELLIS LLP
        David M. Bernick, P.C.
        James W. Kapp III
        Janet S. Baer
        Christian J. Lane
        200 East Randolph Drive
        Chicago, Illinois 60601
        Telephone: (312) 861-2000
        Facsimile:  (312) 861-2200

        and

        PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

        */s/ Laura Davis Jones*
        Laura Davis Jones (Bar No. 2436)
        Scotta McFarland (Bar No. 4184)
        David W. Carickhoff, Jr. (Bar No. 3715)
        919 North Market Street, 16th Floor
        P.O. Box 8705
        Wilmington, DE 19899-8705 (Courier 19801)
        Telephone: (302) 652-4100
        Facsimile:  (302) 652-4400

        Co-Counsel for the Debtors and Debtors in Possession