**W.R. Grace & Co. - Chapter 11 Filing Entities**
**Combining Balance Sheet**
**MOR - 3**
**September 30, 2003**

| | Hayden-Gulch West Coal Company | H-G Coal Company | Eliminations between Filing Entities | Conversion to Equity Method | Reporting Reclasses | COMBINED FILING ENTITIES |
|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | |
| **Current Assets** | | | | | | |
| Cash and cash equivalents | $ - | $ - | $ - | $ - | $ - | $ 105,287,664 |
| Accounts and other receivables, net | - | - | - | - | - | 118,233,561 |
| Receivables from/(payables to) filing and non-filing entities, net | - | - | - | - | - | 55,623,133 |
| Inventories | - | - | - | - | - | 80,128,711 |
| Deferred income taxes | - | - | - | - | (5,661,417) | 36,022,400 |
| Other current assets | - | - | - | - | - | 19,280,575 |
| **Total Current Assets** | - | - | - | - | (5,661,417) | 414,576,044 |
| | | | | | | |
| Properties and equipment, net | - | - | - | - | - | 387,048,514 |
| Goodwill | - | - | - | - | - | 14,499,090 |
| Cash value of company owned life insurance, net of policy loans | - | - | - | - | - | 90,522,885 |
| Deferred income taxes | - | - | - | - | (199,829,271) | 567,175,891 |
| Asbestos-related insurance receivable | - | - | - | - | - | 271,579,801 |
| Loans receivable from/(payable to) filing and non-filing entities, net | - | - | - | - | - | 416,612,575 |
| Investment in filing and non-filing entities | - | - | (1,317,802,717) | 108,635,299 | 2,000,000 | 267,851,030 |
| Other assets | - | - | (1,101,282) | - | - | 88,019,063 |
| **Total Assets** | $ - | $ - | $ (1,318,903,999) | $ 108,635,299 | $ (203,490,688) | $ 2,517,884,893 |
| | | | | | | |
| **LIABILITIES AND SHAREHOLDERS' EQUITY (DEFICIT)** | | | | | | |
| **Liabilities Not Subject to Compromise** | | | | | | |
| **Current Liabilities** | | | | | | |
| Debt payable within one year | $ - | $ - | $ - | $ - | $ - | $ 0 |
| Accounts payable | - | - | - | - | - | 42,777,081 |
| Income taxes payable | - | - | - | - | 5,000,000 | 5,000,000 |
| Asbestos-related liability expected to be disbursed within one year | - | - | - | - | - | - |
| Other current liabilities | - | - | - | - | (16,361,417) | 41,979,042 |
| **Total Current Liabilities** | - | - | - | - | (11,361,417) | 89,756,123 |
| | | | | | | |
| Debt payable after one year | - | - | - | - | - | - |
| Deferred income taxes | - | - | - | - | (199,829,271) | - |
| Asbestos-related liability expected to be disbursed after one year | - | - | - | - | - | - |
| Other liabilities | - | - | - | - | - | 217,409,378 |
| **Total Liabilities Not Subject to Compromise** | - | - | - | - | (211,190,688) | 307,165,501 |
| | | | | | | |
| **Liabilities Subject to Compromise** | | | | | | |
| Debt, pre-petition plus accrued interest | - | - | - | - | - | 547,500,797 |
| Accounts payable | - | - | - | - | - | 32,200,556 |
| Income taxes payable | - | - | - | - | - | 238,257,818 |
| Asbestos-related liability | - | - | - | - | - | 964,580,146 |
| Other liabilities | - | - | (100,000) | - | - | 602,412,933 |
| **Total Liabilities Subject to Compromise** | - | - | (100,000) | - | - | 2,384,952,250 |
| **Total Liabilities** | - | - | (100,000) | - | (211,190,688) | 2,692,117,752 |
| | - | - | | | | |
| **Shareholders' Equity (Deficit)** | | | | | | |
| Preferred Stock | - | - | - | - | - | 112 |
| Common Stock | - | - | (86,493,960) | - | - | 772,632 |
| Paid in capital | - | - | (1,198,570,000) | - | - | 432,133,937 |
| (Accumulated deficit)/Retained earnings | - | - | (33,740,039) | 147,933,811 | 2,000,000 | (121,451,999) |
| Treasury stock, at cost | - | - | - | - | - | (135,902,719) |
| Accumulated other comprehensive loss | - | - | - | (39,298,512) | 5,700,000 | (349,784,822) |
| **Total Shareholders' Equity (Deficit)** | - | - | (1,318,903,999) | 108,635,299 | 7,700,000 | (174,232,858) |
| **Total Liabilities and Shareholders' Equity (Deficit)** | $ - | $ - | $ (1,318,903,999) | $ 108,635,299 | $ (203,490,688) | $ 2,517,884,893 |

**Note #3**
Certain contingent liabilities of divested businesses are included on the balance sheet of W. R.Grace & Co. - Conn as it is not practical to determine which Debtor bears the ultimate obligation.

*Chart 5*

| W. R. Grace & Co. - Conn<br>Status of Postpetition Taxes<br>MOR-4<br>September 30, 2003 | | | | |
|---|---|---|---|---|
| | Beginning Tax Liability | Amount Withheld or Accrued | Amount Paid | Ending Tax Liability |
| **Federal** | | | | |
| Withholding | $          - | $   1,997,868 | $   (1,997,868) | $          - |
| FICA - Employee | 2,772 | 1,061,698 | (1,061,568) | 2,902 |
| FICA and payroll- Employer | 1,826,622 | 1,061,699 | (1,272,686) | 1,615,635 |
| Unemployment | - | 3,877 | (3,877) | |
| Other | - | | | - |
| **Total Federal Taxes** | $   1,829,394 | $   4,125,142 | $   (4,335,999) | $   1,618,537 |
| **State and Local** | | | | |
| Withholding | $          (9) | $   721,783 | $   (721,774) | $          - |
| Sales & Use | 1,025,422 | 409,071 | (361,466) | 1,073,027 |
| Property Taxes | 3,387,741 | 401,348 | (411,127) | 3,377,962 |
| Other | - | | | - |
| **Total State and Local** | $   4,413,154 | $   1,532,202 | $   (1,494,367) | $   4,450,989 |
| **Total Taxes** | $   6,242,548 | $   5,657,344 | $   (5,830,366) | $   6,069,526 |

**Note #4**
Grace's information systems do not provide the detailed nature of invoices in Accounts Payable. See Debtor Questionnaire (Chart 7, MOR – 5) for attestation related to accounts payable and tax obligations.

*Chart 5*

| Remedium Group, Inc.<br>Status of Postpetition Taxes<br>MOR-4<br>September 30, 2003 | | | | |
|---|---|---|---|---|
| | Beginning Tax Liability | Amount Withheld or Accrued | Amount Paid | Ending Tax Liability |
| **Federal** | | | | |
| Withholding | $          - | $       11,883 | $      (11,883) | $          - |
| FICA - Employee | - | 4,635 | (4,635) | - |
| FICA and payroll- Employer | - | 4,635 | (4,635) | - |
| Unemployment | - | - | - | - |
| Other | - | - | - | - |
| Total Federal Taxes | $          - | $       21,153 | $      (21,153) | $          - |
| **State and Local** | | | | |
| Withholding | $          - | $          597 | $         (597) | $          - |
| Sales & Use | - | - | - | - |
| Property Taxes | - | - | - | - |
| Other | - | - | - | - |
| Total State and Local | $          - | $          597 | $         (597) | $          - |
| Total Taxes | $          - | $       21,750 | $      (21,750) | $          - |

**Note #4**
Grace's information systems do not provide the detailed nature of invoices in Accounts Payable. See Debtor Questionnaire (Chart 7, MOR – 5) for attestation related to accounts payable and tax obligations.

Chart 5

| Grace Washington, Inc. Status of Postpetition Taxes MOR-4 September 30, 2003 | | | | |
|---|---|---|---|---|
| | Beginning Tax Liability | Amount Withheld or Accrued | Amount Paid | Ending Tax Liability |
| **Federal** | | | | |
| Withholding | $ - | $ 4,322 | $ (4,322) | $ - |
| FICA - Employee | - | 232 | (232) | - |
| FICA and payroll- Employer | - | 233 | (233) | - |
| Unemployment | - | - | - | - |
| Other | - | - | - | - |
| Total Federal Taxes | $ - | $ 4,787 | $ (4,787) | $ - |
| **State and Local** | | | | |
| Withholding | $ - | $ 889 | $ (889) | $ - |
| Sales & Use | - | - | - | - |
| Property Taxes | - | - | - | - |
| Other | - | - | - | - |
| Total State and Local | $ - | $ 889 | $ (889) | $ - |
| Total Taxes | $ - | $ 5,676 | $ (5,676) | $ - |

**Note #4**
Grace's information systems do not provide the detailed nature of invoices in Accounts Payable. See Debtor Questionnaire (Chart 7, MOR – 5) for attestation related to accounts payable and tax obligations.

Chart 5

| | Beginning Tax Liability | Amount Withheld or Accrued | Amount Paid | Ending Tax Liability |
|---|---|---|---|---|
| **L B Realty, Inc.** | | | | |
| **Status of Postpetition Taxes** | | | | |
| **MOR-4** | | | | |
| **September 30, 2003** | | | | |
| **Federal** | | | | |
| Withholding | $          - | $          - | $          - | $          - |
| FICA - Employee | - | - | - | - |
| FICA and payroll- Employer | - | - | - | - |
| Unemployment | - | - | - | - |
| Other | - | - | - | - |
| Total Federal Taxes | $          - | $          - | $          - | $          - |
| **State and Local** | | | | |
| Withholding | $          - | $          - | $          - | $          - |
| Sales & Use | - | - | - | - |
| Property Taxes | - | - | - | - |
| Other | - | - | - | - |
| Total State and Local | $          - | $          - | $          - | $          - |
| Total Taxes | $          - | $          - | $          - | $          - |

**Note #4**
Grace's information systems do not provide the detailed nature of invoices in Accounts Payable. See Debtor Questionnaire (Chart 7, MOR – 5) for attestation related to accounts payable and tax obligations.

Chart 5

| Darex Puerto Rico, Inc.<br>Status of Postpetition Taxes<br>MOR-4<br>September 30, 2003 | | | | |
|---|---|---|---|---|
| | Beginning<br>Tax<br>Liability | Amount<br>Withheld or<br>Accrued | Amount<br>Paid | Ending<br>Tax<br>Liability |
| **Federal** | | | | |
| Withholding | $          - | $          - | $          - | $          - |
| FICA - Employee | (193) | 998 | (1,099) | (294) |
| FICA and payroll- Employer | 4,253 | 998 | (397) | 4,854 |
| Unemployment | - | - | - | - |
| Other | - | - | - | - |
| Total Federal Taxes | $     4,060 | $     1,996 | $   (1,496) | $     4,560 |
| **State and Local** | | | | |
| Withholding | $          - | $     1,738 | $   (1,738) | $          - |
| Sales & Use | - | | | - |
| Property Taxes | 271,456 | 4,064 | (1) | 275,519 |
| Other | - | - | - | - |
| Total State and Local | $   271,456 | $     5,802 | $   (1,738) | $   275,519 |
| Total Taxes | $   275,516 | $     7,798 | $   (3,234) | $   280,079 |

**Note #4**
Grace's information systems do not provide the detailed nature of invoices in Accounts Payable. See Debtor Questionnaire (Chart 7, MOR – 5) for attestation related to accounts payable and tax obligations.

**Chart 6**

| W. R. Grace & Co. - Conn |
|---|
| Accounts Receivable Reconciliation and Aging |
| MOR-5 |
| September 2003 |

**Trade Accounts Receivable Reconciliation**

| | |
|---|---:|
| Trade accounts receivable, beginning of month, gross | $ 110,252,344 |
| Amounts billed during the period | 70,314,746 |
| Amounts collected during the period | (72,186,241) |
| Other | (54,265) |
| Trade accounts receivable at the end of month, gross | $ 108,326,584 |

**Trade Accounts Receivable Aging**

| | |
|---|---:|
| Current | $ 79,963,411 |
| 1-30 days past due | 22,515,186 |
| 31-60 days past due | 5,246,542 |
| +61 days past due | 601,445 |
| Trade accounts receivable, gross | 108,326,584 |
| Allowance for doubtful accounts | (751,837) |
| Trade accounts receivable, net | $ 107,574,747 |

**Notes and Accounts Receivable Reconciliation**

| | |
|---|---:|
| Trade accounts receivable, net | $ 107,574,747 |
| Customer notes and drafts receivable | 896,837 |
| Pending customer credit notes | (49,336) |
| Advances and deposits | 5,039,721 |
| Nontrade receivables, net | 1,732,969 |
| Total notes and accounts receivable, net | $ 115,194,938 |

Chart 6

| Remedium Group, Inc. |
|---|
| **Accounts Receivable Reconciliation and Aging** |
| **MOR-5** |
| **September 2003** |

| **Trade Accounts Receivable Reconciliation** | | |
|---|---|---|
| Trade accounts receivable, beginning of month, gross | $ | - |
| Amounts billed during the period | | - |
| Amounts collected during the period | | - |
| Other | | - |
| | | |
| Trade accounts receivable at the end of month, gross | $ | - |
| **Trade Accounts Receivable Aging** | | |
| Current | $ | - |
| 1-30 days past due | | - |
| 31-60 days past due | | - |
| +61 days past due | | - |
| Trade accounts receivable, gross | | - |
| Allowance for doubtful accounts | | - |
| Trade accounts receivable, net | $ | - |

| **Notes and Accounts Receivable Reconciliation** | | |
|---|---|---|
| Trade accounts receivable, net | $ | - |
| Customer notes and drafts receivable | | - |
| Pending customer credit notes | | - |
| Advances and deposits | | - |
| Nontrade receivables, net | | 23,965 |
| Total notes and accounts receivable, net | $ | 23,965 |

*Chart 6*

| Darex Puerto Rico, Inc. Accounts Receivable Reconciliation and Aging MOR-5 September 2003 | |
|---|---|
| **Trade Accounts Receivable Reconciliation** | |
| Trade accounts receivable, beginning of month, gross | $    2,873,292 |
| Amounts billed during the period | 681,207 |
| Amounts collected during the period | (356,942) |
| Other | (232,613) |
| Trade accounts receivable at the end of month, gross | $    2,964,944 |
| **Trade Accounts Receivable Aging** | |
| Current | $    1,799,605 |
| 1-30 days past due | 472,424 |
| 31-60 days past due | 427,558 |
| +61 days past due | 265,357 |
| Trade accounts receivable, gross | 2,964,944 |
| Allowance for doubtful accounts | (37,625) |
| Trade accounts receivable, net | $    2,927,319 |

| **Notes and Accounts Receivable Reconciliation** | |
|---|---|
| Trade accounts receivable, net | $    2,927,319 |
| Customer notes and drafts receivable | - |
| Pending customer credit notes | 65 |
| Advances and deposits | - |
| Nontrade receivables, net | 3,147 |
| Total notes and accounts receivable, net | $    2,930,531 |

Chart 6

| Grace Europe, Inc. | | |
| :---: | :---: | :---: |
| Accounts Receivable Reconciliation and Aging | | |
| MOR-5 | | |
| September 2003 | | |

| **Trade Accounts Receivable Reconciliation** | | |
| :--- | :--- | ---: |
| Trade accounts receivable, beginning of month, gross | $ | - |
| Amounts billed during the period | | - |
| Amounts collected during the period | | - |
| Other | | - |
| Trade accounts receivable at the end of month, gross | $ | - |
| **Trade Accounts Receivable Aging** | | |
| Current | $ | - |
| 1-30 days past due | | - |
| 31-60 days past due | | - |
| +61 days past due | | - |
| Trade accounts receivable, gross | | - |
| Allowance for doubtful accounts | | - |
| Trade accounts receivable, net | $ | - |

| **Notes and Accounts Receivable Reconciliation** | | |
| :--- | :--- | ---: |
| Trade accounts receivable, net | $ | - |
| Customer notes and drafts receivable | | - |
| Pending customer credit notes | | - |
| Advances and deposits | | - |
| Nontrade receivables, net | | 84,127 |
| Total notes and accounts receivable, net | $ | 84,127 |

Chart 7

| W.R. Grace & Co., et al<br>Debtor Questionnaire<br>MOR - 5<br>September 2003 | Yes | No |
|---|---|---|
| 1. Have any assets been sold or transferred outside the normal course of business this reporting period?  If yes, provide an explanation below. | | X |
| 2. Have any funds been disbursed from any account other than a debtor in possession account for this reporting period?  If yes, provide an explanation below. | | See Note #5 below |
| 3. Have all postpetition tax returns been timely filed? If no, provide an explanation below. | X | |
| 4. Are workers compensation, general liability and other necessary insurance coverages in affect?  If no, provide and explanation below. | X | |
| 5. Are post-petition accounts payable and tax obligations current and paid to date? If no, provide an explanation. | X<br>(unless disputed in normal course of business) | |

**Note #5**
As part of the first day orders submitted to the court on April 2, 2001, an application for the Debtors to (a) continue and maintain their consolidated cash management system, (b) continue and maintain their existing bank accounts and (c) continue to use existing business forms and granting related relief was included.  The Debtors have continued to use their existing bank accounts and no new debtor in possession accounts have been established.

| List assets sold/transferred outside the normal course of business over $25,000:<br>Description of Asset | Sale Date | Proceeds |
|---|---|---|
| | | |

# Combined Chapter 11 Filing Entity Statements

Chart 8

| W. R. Grace & Co. - Chapter 11 Filing Entities Combined Statement of Operations | | | | |
|---|---|---|---|---|
| | Month Ended September 30, | | Nine Months Ended September 30, | |
| Amounts in millions | 2003 | 2002 | 2003 | 2002 |
| Net sales to third parties | $ 71.0 | $ 70.4 | $ 624.7 | $ 643.3 |
| Net sales to non-filing entities | 19.1 | 10.5 | 135.4 | 102.4 |
| Interest and royalties from non-filing entities | 5.0 | 3.7 | 34.5 | 31.7 |
| Other income | 0.1 | 3.0 | 9.4 | 14.9 |
| | 95.2 | 87.6 | 804.0 | 792.3 |
| Cost of goods sold to third parties | 48.3 | 42.9 | 420.1 | 400.1 |
| Cost of goods sold to non-filing entities | 15.5 | 7.7 | 103.3 | 73.6 |
| Selling, general and administrative expenses | 17.2 | 17.5 | 166.0 | 161.6 |
| Depreciation and amortization | 4.9 | 5.1 | 46.0 | 45.9 |
| Research and development expenses | 2.4 | 3.4 | 29.6 | 31.5 |
| Net Pension expense | 3.5 | 2.0 | 36.0 | 16.2 |
| Interest expense | 1.4 | 1.4 | 12.4 | 14.9 |
| Provision for environmental remediation | - | 13.4 | 52.5 | 19.2 |
| | 93.2 | 93.4 | 865.9 | 763.0 |
| Income (loss) before Chapter 11 expenses, income taxes and equity in net income of non-filing entit | 2.0 | (5.8) | (61.9) | 29.3 |
| Chapter 11 expenses, net | - | (4.0) | (11.7) | (21.4) |
| Provision for income taxes | (5.6) | 1.0 | 6.1 | (19.5) |
| Equity in net income of non-filing entities | 10.1 | 8.0 | 61.8 | 59.2 |
| Net income (loss) | $ 6.5 | $ (0.8) | $ (5.7) | $ 47.6 |

The Notes to Combined Financial Statements are an integral part of these statements.

Chart 9

| W. R. Grace & Co. - Chapter 11 Filing Entities Combined Functional Basis Statement of Cash Flows | | |
|---|---|---|
| Amounts in millions | Month Ended September 30, 2003 | Nine Months Ended September 30, 2003 |
| **Core operations cash flow** | | |
| Pre-tax income from core operations | $ 5.0 | $ 18.8 |
| Depreciation and amortization | 4.9 | 46.0 |
| | 9.9 | 64.8 |
| Contributions to defined benefit pension plans | (23.9) | (32.8) |
| Cash received from Non-Filing entity operating loans | - | 83.4 |
| Cash received from Non-Filing entity investment | 24.0 | 24.0 |
| Changes in all core assets/liabilities and other | 16.3 | (4.5) |
| | 26.3 | 134.9 |
| Capital expenditures | (4.7) | (44.4) |
| **Core Pre-tax Operating Cash Flow** | **21.6** | **90.5** |
| **Charges against core reserves** | | |
| Restructuring costs | - | - |
| Pension liabilities | (0.4) | (3.3) |
| Deferred compensation | (0.2) | (0.7) |
| Self insurance | - | (0.8) |
| **Total Spending Against Core Reserves** | **(0.6)** | **(4.8)** |
| **Core Cash Flow** | **21.0** | **85.7** |
| **Noncore cash flow** | | |
| Proceeds from asset sales | 2.7 | 3.5 |
| Benefit proceeds under life insurance policies | 0.3 | 10.0 |
| Other noncore pretax cash flow | (0.4) | (3.7) |
| **Noncore Pre-tax Cash Flow** | **2.6** | **9.8** |
| **Charges against noncore reserves** | | |
| Asbestos | | |
| Asbestos claims processing | (0.8) | (8.1) |
| Less - insurance recovery | 0.8 | 11.0 |
| Net asbestos (payments) | - | 2.9 |
| Environmental remediation | (1.2) | (9.1) |
| Retained obligations and other | (0.2) | (1.2) |
| Postretirement benefits | (0.2) | (8.8) |
| **Total Spending Against Noncore Reserves** | **(1.6)** | **(16.2)** |
| **Noncore Cash Flow** | **1.0** | **(6.4)** |
| **Total Pre-tax/Pre-Interest/Pre-Chapter 11 Cash Flow** | **22.0** | **79.3** |
| Cash paid for taxes, net of refunds | (0.1) | 4.2 |
| Cash paid for interest | (3.3) | (3.3) |
| Chapter 11 reorganization expenses paid | (1.0) | (14.4) |
| **Cash Flow before Strategic Investments** | **17.6** | **65.8** |
| **Strategic Investments** | | |
| Cash paid for businesses acquired | - | - |
| **Cash used for Strategic Investments** | **-** | **-** |
| **Cash Flow after Strategic Investments** | **17.6** | **65.8** |
| Borrowings (repayments) under DIP facility | (0.1) | (3.3) |
| Net (investing)/financing activities under life insurance policies | (0.1) | (14.0) |
| **Net Cash Flow** | **$ 17.4** | **$ 48.5** |

The Notes to Combined Financial Statements are an integral part of these statements.

Chart 10

| W. R. Grace & Co. - Chapter 11 Filing Entities | | | |
|---|---|---|---|
| **Combined Balance Sheet** | | | |
| Amounts in millions | September 30, 2003 | December 31, 2002 | April 2, 2001 |
| **ASSETS** | | | |
| **Current Assets** | | | |
| Cash and cash equivalents | $        105.3 | $        56.8 | $        8.6 |
| Accounts and other receivables, net | 118.2 | 114.7 | 43.8 |
| Receivables from non-filing entities, net | 55.6 | 43.4 | 51.2 |
| Inventories | 80.2 | 70.5 | 80.6 |
| Deferred income taxes | 36.0 | 22.2 | 80.9 |
| Asbestos-related insurance expected to be realized within one year | - | - | 17.0 |
| Other current assets | 19.3 | 30.8 | 21.9 |
| **Total Current Assets** | 414.6 | 338.4 | 304.0 |
| Properties and equipment, net | 387.0 | 389.7 | 400.4 |
| Goodwill | 14.5 | 14.5 | 13.6 |
| Cash value of life insurance policies, net of policy loans | 90.5 | 82.4 | 64.1 |
| Deferred income taxes | 567.2 | 567.0 | 401.0 |
| Asbestos-related insurance expected to be realized after one year | 271.6 | 282.6 | 323.4 |
| Loans receivable from non-filing entities, net | 416.6 | 444.4 | 387.5 |
| Investment in non-filing entities | 267.9 | 244.7 | 121.0 |
| Other assets | 88.0 | 77.7 | 308.5 |
| **Total Assets** | $        2,517.9 | $        2,441.4 | $        2,323.5 |
| **LIABILITIES AND SHAREHOLDERS' EQUITY (DEFICIT)** | | | |
| **Liabilities Not Subject to Compromise** | | | |
| **Current Liabilities** | | | |
| Debt payable within one year | $        - | - | - |
| Accounts payable | 42.8 | 41.4 | - |
| Income Taxes Payable | 5.0 | 5.0 | - |
| Other current liabilities | 41.8 | 52.9 | - |
| **Total Current Liabilities** | 89.6 | 99.3 | - |
| Debt payable after one year | - | - | - |
| Other liabilities | 217.3 | 229.6 | 31.8 |
| **Total Liabilities Not Subject to Compromise** | 306.9 | 328.9 | 31.8 |
| **Liabilities Subject to Compromise** | | | |
| Debt, pre-petition plus accrued interest | 547.5 | 538.8 | 511.5 |
| Accounts payable | 32.2 | 32.4 | 43.0 |
| Income taxes payable | 238.3 | 227.8 | 210.1 |
| Asbestos-related liability | 964.6 | 973.2 | 1,002.8 |
| Other liabilities | 602.5 | 562.5 | 598.6 |
| *Total Liabilities Subject to Compromise* | 2,385.1 | 2,334.7 | 2,366.0 |
| **Total Liabilities** | 2,692.0 | 2,663.6 | 2,397.8 |
| **Shareholders' Equity (Deficit)** | | | |
| Common stock | 0.8 | 0.8 | 0.8 |
| Paid in capital | 432.1 | 433.0 | 432.6 |
| Accumulated deficit | (121.4) | (115.7) | (201.8) |
| Treasury stock, at cost | (135.9) | (137.0) | (136.4) |
| Accumulated other comprehensive income (loss) | (349.7) | (403.3) | (169.5) |
| **Total Shareholders' Deficit** | (174.1) | (222.2) | (74.3) |
| **Total Liabilities and Shareholders' Equity (Deficit)** | $        2,517.9 | $        2,441.4 | $        2,323.5 |

The Notes to Combined Financial Statements are an integral part of these statements.

**W. R. Grace & Co.**
**Notes to Combined Financial Statements**
**September 30, 2003**

## 1. Basis of Presentation and Summary of Significant Accounting and Financial Reporting Policies

W. R. Grace & Co., through its subsidiaries, is engaged in specialty chemicals and specialty materials businesses on a worldwide basis. These businesses consist of catalyst and silica products ("Davison Chemicals") and construction chemicals, building materials and sealants and coatings ("Performance Chemicals").

W. R. Grace & Co. conducts substantially all of its business through a direct, wholly owned subsidiary, W. R. Grace & Co.-Conn. ("Grace-Conn."). Grace-Conn. owns substantially all of the assets, properties and rights of W. R. Grace & Co., either directly or through subsidiaries.

As used in these notes, the term "Company" refers to W. R. Grace & Co. The term "Grace" refers to the Company and/or one or more of its subsidiaries and, in certain cases, their respective predecessors.

**VOLUNTARY BANKRUPTCY FILING**

In response to a sharply increasing number of asbestos-related bodily injury claims, on April 2, 2001 (the "Filing Date"), W. R. Grace & Co. and 61 of its United States subsidiaries and affiliates, including Grace-Conn. (collectively, the "Debtors"), filed voluntary petitions for reorganization (the "Filing") under Chapter 11 of the United States Bankruptcy Code ("Chapter 11" or the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The cases were consolidated and are being jointly administered under case number 01-01139 (the "Chapter 11 Cases"). Grace's non-U.S. subsidiaries and certain of its U.S. subsidiaries were not included in the Filing.

During 2000 and the first quarter of 2001, Grace experienced several adverse developments in its asbestos-related litigation, including: a significant increase in bodily injury claims, higher than expected costs to resolve bodily injury and certain property damage claims, and class action lawsuits alleging damages from a former attic insulation product. After a thorough review of these developments, the Board of Directors of Grace concluded on April 2, 2001 that a federal court-supervised Chapter 11 process provided the best forum available to achieve predictability and fairness in the claims settlement process.

By filing under Chapter 11, Grace expects to be able to both obtain a comprehensive resolution of the claims against it and preserve the inherent value of its businesses. Under Chapter 11, the Debtors expect to continue to operate their businesses as debtors-in-possession under court protection from their creditors and claimants, while using the Chapter 11 process to develop and implement a plan for addressing the asbestos-related claims against them.

*Consequence of Filing* – As a consequence of the Filing, pending litigation against the Debtors for pre-petition matters is generally stayed (subject to certain exceptions in the case of governmental authorities), and no party may take action to realize its pre-petition claims except pursuant to an order of the Bankruptcy Court.

The Debtors intend to address all of their pending and future asbestos-related claims and all other pre-petition claims in a plan of reorganization. Such a plan of reorganization may include the establishment of a trust through which all pending and future asbestos-related claims would be channeled for resolution. However, it is currently impossible to predict with any degree of certainty the amount that would be required to be contributed to the trust, how the trust would be funded, how other pre-petition claims would be treated or what impact any reorganization plan may have on the shares of common stock of the Company. The interests of the Company's shareholders could be substantially diluted or cancelled under a plan of reorganization. The formulation and implementation of the plan of reorganization is expected to take a significant period of time.

*Status of Chapter 11 Proceedings* – Since the Filing, all motions necessary to conduct normal business activities have been approved by the Bankruptcy Court. In addition, the Debtors have received approval from the Bankruptcy Court to pay or otherwise honor certain of its pre-petition obligations in the ordinary course of business,

including employee wages and benefits, customer programs, shipping charges, and a limited amount of claims of essential trade creditors.

As provided by the Bankruptcy Code, the Debtors had the exclusive right to propose a plan of reorganization for a 120-day period following the Filing Date. The Debtors have received extensions of their exclusivity period during which to file a plan of reorganization through February 1, 2004, and extensions of the Debtors' exclusive rights to solicit acceptances of a reorganization plan through April 1, 2004.

Three creditors' committees, two representing asbestos claimants and the third representing other unsecured creditors, and a committee representing shareholders have been appointed in the Chapter 11 Cases. These committees will have the right to be heard on all matters that come before the Bankruptcy Court and, together with a legal representative of future asbestos claimants (for whom Grace has filed a motion with the Bankruptcy Court to appoint), are likely to play important roles in the Chapter 11 Cases. The Debtors are required to bear certain of the committees' and the future asbestos claimants representative's costs and expenses, including those of their counsel and financial advisors.

The Debtors' Chapter 11 cases have been assigned to Judge Alfred M. Wolin, a senior federal judge who sits in Newark, New Jersey. Judge Wolin is presiding over asbestos bodily injury matters and the fraudulent conveyance litigation described below. He has assigned the Debtors' other bankruptcy matters to Judge Judith Fitzgerald, a U.S. bankruptcy judge from the Western District of Pennsylvania, sitting in Wilmington, Delaware.

*Claims Filings* – The Bankruptcy Court established a bar date of March 31, 2003 for claims of general unsecured creditors, asbestos-related property damage claims and medical monitoring claims related to asbestos. The bar date did not apply to asbestos-related bodily injury claims or claims related to Zonolite® attic insulation ("ZAI"), which will be dealt with separately.

Approximately 15,000 proofs of claim were filed by the bar date. Of these claims, approximately 10,000 were non-asbestos related, approximately 4,000 were for asbestos-related property damage, and

approximately 1,000 were for medical monitoring. In addition, approximately 400 proofs of claim were filed after the bar date. The discussion below refers to claims filed before the bar date.

Approximately 7,000 of the 10,000 non-asbestos related claims involve claims by employees or former employees for future retirement benefits such as pension and retiree medical coverage. Grace views these claims as contingent and does not plan to address them until a later date in the Chapter 11 Cases. The other non-asbestos related claims include claims for payment for goods and services; taxes; product warranties; plus interest advanced under pre-petition credit facilities; amounts due under leases; contracts rejected in the Bankruptcy Court; environmental remediation; indemnification or contribution from actual or potential co-defendants in asbestos-related and other litigation; pending non-asbestos related litigation; and non-asbestos related personal injury.

The Debtors' preliminary analysis indicated that many claims are duplicates, represent the same claim filed against more than one of the Debtors, lack any supporting documentation, or provide insufficient supporting documentation. As of September 30, 2003, the Debtors had filed with the Bankruptcy Court approximately 1,100 objections with respect to such claims, most of which were non-substantive (duplicates, no supporting documentation, late filed claims, etc.). The Debtors expect to file a substantial number of additional objections, most of which will be substantive, as analysis and evaluation of the claims progresses.

As claims are resolved, Grace will make adjustments to the liabilities recorded on its financial statements as appropriate. Any such adjustments could be material to the Company's consolidated financial position and results of operations. Because of the uncertainties of the Chapter 11 process, the in-progress state of the Debtors' investigation of submitted claims, and the lack of documentation submitted in support of many claims, Grace, at this time, is not able to estimate the value of the claims that may ultimately be determined and allowed by the Bankruptcy Court.

*Litigation Proceedings in Bankruptcy Court* – In July 2002, the Bankruptcy Court approved special counsel to represent the ZAI claimants, at the

Debtors' expense, in a proceeding to determine certain threshold scientific issues regarding ZAI. The court has set a litigation schedule that would result in pretrial hearings on these issues in November of 2003.

On November 29, 2002, Sealed Air Corporation ("Sealed Air") and Fresenius Medical Care AG ("Fresenius") each announced that they had reached agreements in principle with the Official Committee of Asbestos Personal Injury Claimants and the Official Committee of Asbestos Property Damage Claimants to settle asbestos and fraudulent conveyance claims related to the 1998 transaction involving Grace's former packaging business and Sealed Air, and the 1996 transaction involving Grace's former medical care business and Fresenius, respectively. Under the terms of the Fresenius settlement, as subsequently revised and subject to certain conditions, Fresenius would contribute $115.0 million to the Grace estate. In July 2003, the Fresenius settlement was approved by the Bankruptcy Court. Under the terms of the proposed Sealed Air settlement, Sealed Air would make a payment of $512.5 million (plus interest at 5.5% per annum, commencing on December 21, 2002) and nine million shares of Sealed Air common stock, valued at $425.1 million as of September 30, 2003, as directed by the Bankruptcy Court upon confirmation of Grace's plan of reorganization. The Sealed Air settlement remains subject to the approval of the Bankruptcy Court and the fulfillment of specified conditions. Grace is unable to predict how these settlements may ultimately affect its plan of reorganization.

*Impact on Debt Capital* – All of the Debtors' pre-petition debt is in default due to the Filing. The accompanying Consolidated Balance Sheet as of September 30, 2003 reflects the classification of the Debtors' pre-petition debt within "liabilities subject to compromise."

The Debtors have entered into a debtor-in-possession post-petition loan and security agreement with Bank of America, N. A. (the "DIP facility") in the aggregate amount of $250 million. The term of the DIP facility, originally set to expire April 1, 2003, has been extended for up to an additional three years through April 1, 2006.

*Accounting Impact* – The accompanying Consolidated Financial Statements have been prepared in accordance with Statement of Position 90-7 ("SOP 90-7"), "Financial Reporting by Entities in Reorganization Under the Bankruptcy Code," promulgated by the American Institute of Certified Public Accountants. SOP 90-7 requires that financial statements of debtors-in-possession be prepared on a going concern basis, which contemplates continuity of operations, realization of assets and liquidation of liabilities in the ordinary course of business. However, as a result of the Filing, the realization of certain Debtors' assets and the liquidation of certain Debtors' liabilities are subject to significant uncertainty. While operating as debtors-in-possession, the Debtors may sell or otherwise dispose of assets and liquidate or settle liabilities for amounts other than those reflected in the Consolidated Financial Statements. Further, a plan of reorganization could materially change the amounts and classifications reported in the Consolidated Financial Statements, which do not currently give effect to any adjustments to the carrying value or classification of assets or liabilities that might be necessary as a consequence of a plan of reorganization.

Pursuant to SOP 90-7, Grace's pre-petition liabilities that are subject to compromise are required to be reported separately on the balance sheet at an estimate of the amount that will ultimately be allowed by the Bankruptcy Court. As of September 30, 2003, such pre-petition liabilities include fixed obligations (such as debt and contractual commitments), as well as estimates of costs related to contingent liabilities (such as asbestos-related litigation, environmental remediation, and other claims). The recorded amounts of such liabilities generally reflect accounting measurements as of the Filing Date, adjusted as warranted for changes in facts and circumstances and/or rulings under Grace's Chapter 11 proceedings subsequent to the Filing. (See Note 3 to the Consolidated Financial Statements for detail of the liabilities subject to compromise as of September 30, 2003, and December 31, 2002.) Obligations of Grace subsidiaries not covered by the Filing continue to be classified on the Consolidated Balance Sheet based upon maturity dates or the expected dates of payment. SOP 90-7 also requires separate reporting of certain expenses, realized gains and losses, and

3

provisions for losses related to the Filing as reorganization items.

**Basis of Presentation**

The interim Combined Financial Statements presented herein represent the results of operations, cash flows and financial position of the Debtors. These financial statements pertain to periods beginning with, and subsequent to, the Filing Date and have been prepared in conformity with requirements of the Bankruptcy Court. Consequently, these financial statements do not purport to present the financial performance of W. R. Grace & Co. in conformity with generally accepted accounting principles which would require the consolidation of all controlled subsidiaries and more extensive notes and analysis related to the worldwide operations of W. R. Grace & Co. Financial activity of non-Debtor entities is not presented herein. However, all non-Debtor entities are either directly or indirectly controlled by the Debtors and, accordingly, non-Debtor financial results are reflected under the equity method of accounting. These financial statements are unaudited and should be read in conjunction with the consolidated financial statements presented in W. R. Grace & Co.'s 2002 Form 10-K and, when filed, its 2003 Form 10-K and other periodic filings with the U.S. Securities and Exchange Commission.

These interim Consolidated Financial Statements reflect all adjustments that, in the opinion of management, are necessary for a fair presentation of the results of the interim periods presented under generally accepted accounting principles; all such adjustments are of a normal recurring nature. All significant inter-Debtor accounts and transactions have been eliminated. Transactions and balances with non-Debtor entities are separately disclosed. Certain amounts in prior years' Consolidated Financial Statements have been reclassified to conform to the 2003 presentation.

**Use of Estimates**

The preparation of financial statements in conformity with U.S. generally accepted accounting principals requires that management make estimates and assumptions affecting the assets and liabilities reported at the date of the Consolidated Financial Statements, and the revenues and expenses reported for the periods presented. Actual amounts could differ from those estimates. Changes in estimates are

recorded in the period identified. Grace's accounting measurements that are most affected by management's estimates of future events are:

- Contingent liabilities such as asbestos-related matters, environmental remediation, income taxes and retained obligations of divested businesses.
- Pension and post-retirement liabilities that depend on assumptions regarding discount rates and/or total returns on invested funds.
- Depreciation and amortization periods for long-lived assets, including property and equipment, intangible, and other assets.
- Realization values of various assets such as trade receivables, inventories, insurance receivables, income taxes, and goodwill.

The accuracy of these and other estimates may also be materially affected by the uncertainties arising under the Chapter 11 Cases.

## 2.  Chapter 11 Related Financial Information

As a result of the Filing, Grace's Consolidated Balance Sheet separately identifies the liabilities that are "subject to compromise" as a result of the Chapter 11 proceedings. In Grace's case, "liabilities subject to compromise" represent pre-petition liabilities as determined under U.S. generally accepted accounting principles. Changes to the recorded amount of such liabilities will be based on developments in the Chapter 11 Cases and management's assessment of the claim amounts that will ultimately be allowed by the Bankruptcy Court. Changes to pre-petition liabilities subsequent to the Filing Date reflect:  1) cash payments under approved court orders; 2) the accrual of interest on pre-petition debt at the pre-petition contractual rate; 3) accruals for employee-related programs; and 4) changes in estimates related to pre-petition contingent liabilities and assets.

Set forth below is a reconciliation of the changes in pre-filing date liability balances for the period from the Filing Date through September 30, 2003.

| (Dollars in millions) | Current Month | Cumulative Since Filing |
|---|---|---|
| Balance, beginning of period .......... | $ 2,388.8 | $ 2,366.0 |
| Cash disbursements and/or reclassifications under bankruptcy court orders: | | |
| Freight and distribution order .... | -- | (5.7) |
| Trade accounts payable order .... | -- | (9.1) |
| Other court orders including employee wages and benefits, sales and use tax and customer programs ................................. | (4.1) | (167.9) |
| Expense/(income) items: | | |
| Interest on pre-petition debt ....... | 0.9 | 44.0 |
| Current period employment-related accruals ...................... | 0.5 | 25.8 |
| Change in estimate of environmental contingencies ....... | -- | 129.0 |
| Change in estimate of income tax contingencies ......................... | (1.1) | 26.7 |
| Balance sheet reclassifications ...... | 0.1 | (23.7) |
| Balance, end of period ................... | $ 2,385.1 | $ 2,385.1 |

Pre-Filing Date obligations allowable under current court orders and expected to be paid prior to an adopted plan or reorganization are classified as "liabilities not subject to compromise." Additional liabilities subject to compromise may arise due to the rejection of executory contracts or unexpired leases, or as a result of the allowance of contingent or disputed claims.

## 3. Other Balance Sheet Accounts

| (Dollars in millions) | September 30, 2003 | Filing Date |
|---|---|---|
| **Accounts and other receivables, net** | | |
| Trade receivables, less allowance of $0.8 (Filing Date – $0.7)............................ | $ 111.3 | $ 32.3 |
| Other receivables, less allowance of $1.7 (Filing Date – $2.1)............................ | 6.9 | 11.5 |
| | $ 118.2 | $ 43.8 |
| **Inventories** | | |
| Raw materials ........................... | $ 18.2 | $ 20.3 |
| In process ................................. | 23.1 | 16.2 |
| Finished products ....................... | 63.5 | 63.8 |
| General merchandise ................. | 11.0 | 9.6 |
| Less: Adjustment of certain inventories to a last-in/first-out (LIFO) basis ................... | (35.6) | (29.3) |
| | $ 80.2 | $ 80.6 |
| **Other Assets** | | |
| Deferred pension costs............... | $ 5.3 | $ 227.9 |
| Deferred charges ....................... | 29.1 | 40.4 |
| Long-term receivables................ | 7.4 | 1.9 |
| Long-term investments ............. | - | 2.1 |
| Patents, licenses and other intangible assets .................... | 18.1 | 25.2 |
| Pension – unamortized prior service cost........................... | 26.4 | 8.1 |
| Other assets................................ | 1.7 | 2.9 |
| | $ 88.0 | $ 308.5 |
| **Other Current Liabilities** | | |
| Accrued compensation .............. | $ 13.7 | $ -- |
| Accrued commissions ................ | 5.0 | -- |
| Customer programs ................... | 13.2 | -- |
| Accrued utilities ........................ | 0.2 | -- |
| Accrued freight ......................... | 2.8 | -- |
| Other accrued liabilities ............ | 6.9 | -- |
| | $ 41.8 | $ -- |
| **Other Liabilities** | | |
| Deferred royalty income–nonfiling entities ...................... | 2.9 | 31.8 |
| Pension – underfunded plans ..... | 213.4 | -- |
| Other accrued liabilities ............ | 1.0 | -- |
| | $ 217.3 | $ 31.8 |
| **Liabilities Subject to Compromise** | | |
| Other postretirement benefits .... | $ 139.0 | $ 185.4 |
| Environmental remediation ....... | 244.4 | 164.8 |
| Retained obligations of divested businesses ............................... | 57.6 | 75.5 |
| Special pension arrangements ... | 76.5 | 70.8 |
| Deferred compensation ............. | 5.2 | 8.2 |
| *Self insurance reserve* .............. | 23.5 | 11.8 |
| Other accrued liabilities ............ | 56.3 | 82.1 |
| | $ 602.5 | $ 598.6 |

## 4. Life Insurance

Grace is the beneficiary of life insurance policies on certain current and former employees with a net cash surrender value of $90.5 million at September 30, 2003. The policies were acquired to fund various employee benefit programs and other long-term liabilities and are structured to provide cash flow (primarily tax-free) over an extended number of years. The following table summarizes the net cash value at September 30, 2003 and Filing Date:

| Components of Net Cash Value | September 30, 2003 | Filing Date |
|---|---|---|
| Gross cash value | $   470.7 | $   453.7 |
| Principal – policy loans | (365.8) | (390.3) |
| Accrued interest – policy loans | (14.4) | 0.7 |
| Net cash value | $    90.5 | $    64.1 |
| Insurance benefits in force | $ 2,212.4 | $2,286.0 |

Grace's financial statements display income statement activity and balance sheet amounts on a net basis, reflecting the contractual interdependency of policy assets and liabilities.

## 5. Debt

On September 30, 2003, and Filing Date, Grace's debt was as follows:

| Components of Debt (Dollars in millions) | September 30, 2003 | Filing Date |
|---|---|---|
| **Debt payable within one year** | | |
| DIP facility | $    -- | $    -- |
| Other short-term borrowings | -- | -- |
| | $    -- | $    -- |
| **Debt payable after one year** | | |
| DIP facility | $    -- | $    -- |
| Other long-term borrowings | -- | -- |
| | $    -- | $    -- |
| **Debt Subject to Compromise** | | |
| Bank borrowings | $  500.0 | $  500.0 |
| 8.0% Notes Due 2004 | -- | 5.7 |
| 7.75% Notes Due 2002 | -- | 2.0 |
| Other borrowings | 1.2 | 1.2 |
| Accrued interest | 46.3 | 2.6 |
| | $  547.5 | $  511.5 |

In April 2001, the Debtors entered into the DIP facility for a two-year term in the aggregate amount of $250 million. The DIP facility is secured by a priority lien on substantially all assets of the Debtors, and bears interest based on LIBOR. The Debtors' have extended the term of the DIP facility for up to an additional three years through April 1, 2006, and modified certain other provisions. Grace had no outstanding borrowings under the DIP facility as of September 30, 2003; however, $25.8 million of standby letters of credit were issued and outstanding under the facility. The letters of credit, which reduce available funds under the facility, were issued mainly for trade-related matters such as performance bonds and certain insurance and environmental matters.

The 7.75% Notes were repaid on June 11, 2001, and the 8.0% Notes were repaid on August 15, 2001, by the unaffiliated guarantor of the Notes. Grace's liability with respect to these notes is included in other liabilities subject to compromise as of September 30, 2003.