# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 01-01139 (JKF) |
| W.R. GRACE & CO., et al., | ) | Jointly Administered |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | Hearing Date: 12/15/03 @ 12:00 pm |
| | | Objection Deadline: 11/26/03 |

## ROYAL INDEMNITY COMPANY'S MOTION
## FOR LEAVE TO FILE A LATE PROOF OF CLAIM

Royal Indemnity Company ("Royal"), by and through its undersigned counsel, hereby moves pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9006(b)(1) for the entry of the proposed Order annexed hereto granting Royal leave to file a late proof of claim. Submitted herewith is the Affidavit of Mary Lou Hutson and certain Exhibits annexed hereto ("Hutson Aff.").

## INTRODUCTION

1. This Motion concerns the unliquidated and contingent indemnification claims of Royal arising out of a Settlement Agreement entered into with Grace after over ten years of litigation. The Settlement Agreement extinguished and released Royal's obligations to defend or indemnify any asbestos related bodily injury and property damage claims ("Asbestos-Related Claims") under various insurance policies issued to a predecessor of Grace. It further provided that Grace would indemnify and hold Royal harmless from any further Asbestos-Related Claims made under the policies. This Motion was prompted by the (over-)zealous positions taken by certain personal injury claimants residing in Libby, Montana (the "Libby Claimants") who seek to deny Royal the indemnity protection it purchased when it settled with Grace and to avoid the

6184171

stays and preliminary injunctions entered by this Court applicable to other similarly situated claimants.

2. As more fully shown herein, to the extent any indemnification claims of Royal arising out of the Settlement Agreement were subject to the Bar Date, adequate cause exists to grant Royal leave to file a late proof of claim, especially given that Grace has yet to even file a proposed plan of reorganization or distribute any estate assets.

## BACKGROUND

### A. Grace's Chapter 11 Proceedings

3. On April 2, 2001 (the "Petition Date"), W.R. Grace & Co. and various related entities ("Grace" or "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Grace continues to operate its businesses and manage its properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

4. Grace has not yet proposed any disclosure statement or plan of reorganization, and Grace's exclusive time to do so has been extended through February 1, 2004. [*See* Order dated August 25, 2003, D.I. 4320]. Further, upon information and belief, Grace has not yet made any distributions to creditors holding pre-petition general unsecured claims. Additionally, although Grace has apparently begun the process of reviewing some of the 15,000 filed non-asbestos claims, no bar date has yet been set for asbestos personal injury claims or for administrative claims.

### B. The Royal/Grace Insurance Settlement

5. Prior to the Petition Date, Royal issued several comprehensive general liability insurance policies (the "Policies") to a Grace predecessor, the Zonolite Company ("Zonolite"),

covering ten consecutive one year periods from March 31, 1953 through April 1, 1963. [Hutson Aff.") at ¶ 3].

6. Pursuant to an "Agreement and Plan of Reorganization" dated January 17, 1963 (copy annexed hereto as **Exhibit A**), Grace acquired Zonolite in exchange for a part of the common stock of Grace. In connection with certain asbestos containing products sold by Zonolite, Grace, as successor to Zonolite, was subsequently named as a defendant in numerous Asbestos Related Claims which were then submitted to Royal for coverage under the Policies. [Hutson Aff. at ¶ 4].

7. Various disputes arose between Grace, Royal and certain other primary insurers concerning the scope of coverage afforded under the Policies for the Asbestos-Related Claims. [Hutson Aff. at ¶ 5]. These disputes came to the fore in a declaratory judgment action commenced in the United States District Court for the Southern District of New York captioned as *Maryland Casualty Co. v. W.R. Grace & Co.*, Case No. 83 Civ. 7451. [*Id.*].

8. After more than ten years of litigation, in January 1995, Royal and Grace entered into a Settlement Agreement (the "Settlement Agreement") (copy annexed hereto as **Exhibit B**),[1] which resolved all issues arising out of Grace's claim for coverage under the Policies for Asbestos Related Claims. [Hutson Aff. at ¶ 6]. In exchange for a substantial sum of money paid by Royal, Grace agreed, *inter alia*, to the exhaustion and cancellation of all coverage under the

---

[1] As this Court is aware, the Settlement Agreement contains certain confidentiality provisions which have caused Royal and Grace to object to its production in whole to the "Libby Claimants." Those objections were resolved pursuant to a stipulation whereby Royal, Grace and the Libby Claimants agreed that any reference in the Settlement Agreement to the amount of the settlement payment paid by Royal to Grace would be redacted. Consistent with that stipulation, Royal has annexed hereto as Exhibit B only the redacted copy of the Settlement Agreement. Notwithstanding the foregoing, Royal is willing to provide the Court with a complete, unredacted copy of the Settlement Agreement for the Court's *in camera* review in connection with this Motion.

Policies for any Asbestos Related Claims and to further release and discharge Royal from any and all claims for coverage under the "Products Hazard" portion of the Policies. [*Id.*; Ex. B, §§ III, IV, VII and VIII].

9. The Settlement Agreement further provided that Grace would indemnify and hold Royal harmless from any and all liability imposed upon, or costs or expenses incurred by Royal in connection with any Asbestos-Related Claims or "Products Claims" made against Royal under the Policies, up to a maximum limit of $6,000,000. [Hutson Aff. at ¶ 7]. Grace's obligations under the indemnification provisions of the Settlement Agreement thus include not only the duty to indemnify Royal, but also the obligation to defend Royal from and against any actions by any person or entity seeking to assert a right to the released claims to coverage. [*Id.*; Ex. B, § IX].

## C. The Libby, Montana Claims

10. Upon information and belief, in July 1999, the Libby Claimants filed complaints against, *inter alia*, Montana Vermiculite Company ("Montana Vermiculite") for various alleged asbestos related bodily injuries caused by Zonolite. [Hutson Aff. at ¶ 8]. Apparently, after the sale of all of Zonolite's assets to Grace in 1963, including the Policies issued by Royal, Zonolite changed its name to the Montana Vermiculite Company. Montana Vermiculite is thus an empty shell corporation that was dissolved in 1964. [*Id.*; Ex. A, ¶ 10].

11. The Libby Claimants have expressly taken the position that the avowed purpose of the various asbestos related bodily injury actions which they have filed against Montana Vermiculite is to recover any available insurance coverage from Royal for pre-1963 claims. [*See* Opposition Of Carol Gerard, et al. To Debtors' Motion To Expand The Preliminary Injunction To Include Actions against Montana Vermiculite Company (D.I. 156), at p. 4 ("Upon obtaining judgments in any existing and future Montana Vermiculite Litigation, the Libby [Claimants]

-4-

intend to collect from Royal under the Pre-Sale Policies to the extent of available coverage.")]. Indeed, the Libby Claimants have gone so far as to seek (unsuccessfully) to have Royal appointed as the designated trustee of Montana Vermiculite for the receipt of service of process. [*See* Further Opposition of Carol Gerard, et al. To Debtor's Motion to Expand The Preliminary Injunction (D.I. 162), at p. 2, n. 1 ("Royal was invited to serve as trustee of Montana Vermiculite Company by reason of Royal's economic interest as the company's insurer.")]. Significantly, however, the Montana Claimants have yet to commence any actions directly against Royal.

12. In connection with the recent September 22, 2003 hearing on Grace's motion to expand the preliminary injunction entered in Adversary Proceeding No. A-01-771 (the "Preliminary Injunction Action") to include actions against Montana Vermiculite (D.I. 153), counsel for the Libby Claimants essentially took the position that Grace is not entitled to an extension of the preliminary injunction because Royal failed to timely file a proof of claim based upon its right to indemnification under the Settlement Agreement and thus any further prosecution of the claims against Montana Vermiculite will have no effect on Grace's reorganization proceedings.[2] [*See* Further Opposition of Carol Gerard, et al. (D.I. 162)].

13. In discussing the results of the September 22, 2003 hearing with counsel, Royal learned for the first time that the Libby Claimants were contending that the March 31, 2003 Bar

---

[2] Royal vehemently disagrees with the Libby Claimants that any failure to timely file a proof of claim is dispositive of Grace's motion to expand the preliminary injunction to cover claims asserted against Montana Vermiculite. Amongst other things, there are serious questions as to whether Grace has successor liability for claims asserted against Montana Vermiculite. Thus, a judgment entered against Montana Vermiculite may equate to a judgment against Grace. Further, the avowed purpose of the Libby Claimants in pursuing claims against Montana Vermiculite is to seek a recovery under the Royal Policies, whose coverage for Asbestos-Related Claims was exhausted, released and cancelled by the Settlement Agreement. To the extent any coverage for Asbestos-Related Claims remains under those Policies (which Royal also disputes), any such rights are the property of Grace's bankruptcy estate and thus already protected by the automatic stay of Bankruptcy Code § 362(a).

Date applied to any contingent and unliquidated indemnity claim arising out of the Settlement Agreement, including any claim based upon the obligations of Grace to indemnify Royal for the claims asserted by the Libby Claimants against Montana Vermiculite. [Hutson Aff. at ¶ 10]. In order to rectify any error which may have been made by Royal in not timely filing a proof of claim, this Motion was promptly prepared and filed. [*Id.*].

**D.    The Bar Date Notice Package**

14.    On April 22, 2002, this Court entered an order pursuant to Fed. R. Bankr. P. 3003(c)(3) (the "Bar Date Order") establishing a bar date of March 31, 2003 (the "Bar Date") for "All Non-Asbestos Claims, Asbestos Property Damage Claims and Medical Monitoring Claims," all of which are defined terms referenced in Exhibit 1 to the "Claims Bar Date Notice" which was also approved by the Bar Date Order. [Ex. C].

15.    On June 28, 2002, Royal received a "Bar Date Notice Package" that was sent out on behalf of Grace. [Hutson Aff at ¶12]. The Bar Date Notice Package consisted of the following:

        A.    An Index to the Claims Bar Date Notice Materials;
        B.    The Claims Bar Date Notice;
        C.    The Bar Date Order;
        D.    General Instructions for Completing Proof of Claim Forms; and
        E.    A standard Form B10 Proof of Claim;

A copy of the Bar Date Notice Package actually received by Royal is annexed hereto as **Exhibit C**.

16.    In total, the Bar Date Notice Package comprises twenty-seven (27) pages and includes a plethora of dense, legalistic disclosures, directives and explanations. The Bar Date Notice itself is thirteen (13) pages long, single spaced, and includes seven (7) pages of notices

-6-

--618417 1

and instructions, three pages of definitions and two pages of related entity and product type disclosures. [*See* Ex. C].

17. Buried within the Bar Date Notice Package on page 2 of the Bar Date Notice in the fourth paragraph of Section 1 is the following statement: "The Bar Date does apply to derivative asbestos claims and asbestos-related claims for contribution, indemnity, reimbursement or subrogation." [*Id.*]. That one sentence is the only one set forth in the entire Bar Date Notice Package directed specifically towards indemnification and similar type claims.

18. As more fully discussed herein, Royal seeks a determination from this Court that, to the extent that Royal's indemnity claim is deemed a pre-petition non-asbestos claim subject to the Bar Date, then Royal should be granted leave to file a late proof of claim.

## ARGUMENT

### A. Royal Is Entitled To Leave To File A Late Proof Of Claim

19. Bankruptcy Code § 501(a) provides that a creditor may file a proof of claim to present its claim or interest to the court. Federal Rules of Bankruptcy Procedure 3001 and 3003(c) complement § 501 because they describe the form and timing of filing a proof of claim in a Chapter 11 case.

20. Furthermore, § 502 provides for the allowance of timely filed claims unless a party in interest objects. Specifically, § 502(b)(9) governs the effects of a late filed claim. It asserts that the court shall determine, after notice and a hearing, the amount of a claim except to the extent that the claim is not timely filed, unless permitted by the Federal Rules of Bankruptcy Procedure.

21. Federal Rule of Bankruptcy Procedure 9006(b)(1) in turn provides for the enlargement of time to permit a late filing of a proof of claim in a Chapter 11 case if the movant's failure to comply with an earlier deadline "was the result of excusable neglect." The United States Supreme Court has determined that a party's neglect to timely file a proof of claim before a bar date can constitute excusable neglect. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489, 1498 (1993). The determination of whether such neglect is excusable is "at bottom an equitable one" to be determined by weighing all relevant circumstances surrounding the failure to file, including: (1) the danger of prejudice to the debtor; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id.* As further reasoned by the Supreme Court, such an equitable determination is consistent with the policies underlying Chapter 11, since "Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors." 507 U.S. at 389, 113 S.Ct. at 1495.

22. This proposition is well-settled in the Third Circuit. *See Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litigation)*, 233 F.3d 176, 181-82 (3d Cir. 2002) (applying *Pioneer* test to allow a late filed securities proof of claim); *In re Orthopedic Bone Screw Products Liability Litigation*, 246 F.3d 315, 321-22 (3d Cir. 2001) ("[*Pioneer*] provides the analysis for consideration of untimely claims ...."); *Chemetron Corp. v. Jones*, 72 F.3d 341, 349-50 (3d Cir. 2000) (*Pioneer* requires a "totality of circumstances" test to determine "excusable neglect"); *Manus Corp. v. NRG Energy, Inc., (In re O'Brien Environmental Energy, Inc.)*, 188 F.3d 116, 125 (3d Cir. 1999) (applying *Pioneer* to allow a late filed bankruptcy proof of claim).

--618417 1

23. Applying the equitable framework of *Pioneer* to Royal's circumstances here clearly establishes beyond any doubt that leave to file a late proof of claim should be granted as a result of Royal's "excusable neglect."

**1. No Prejudice**

24. First, there is absolutely no danger of prejudice to the Debtors posed by the allowance of Royal's proof of claim. Although it does not appear that the claim was scheduled by Grace, there is little doubt that Grace was well aware of Royal's potential claim for indemnity given the explicit provisions of the Settlement Agreement.[3] Moreover, at this point, Royal's indemnity claim is contingent and unliquidated, and may not result in any liability to the Debtors. In this regard, the claim is being filed as a precautionary measure to protect the rights of Royal in the event that it has a right of indemnification from the Debtors arising under the Settlement Agreement.

---

[3] It does not appear that Royal was listed in Grace's schedules as a general unsecured creditor. Grace, however, did list Royal as maintaining two executory contracts, although it is unclear whether Grace was referring to the Settlement Agreement or something else. [*See* **Exhibit D** annexed hereto]. Of course, to the extent that the Settlement Agreement can be construed as an executory contract, Royal's indemnification claims are not subject to the Bar Date since Royal would have until thirty days after receiving notice of rejection of the executory contract to file a rejection damages claim. *See* Fed. R. Bankr. P. 3002(c)(4) ("a claim arising from the rejection of an executory contract or unexpired lease of the debtor may be filed within such time as the court may direct."); Ex. C, Bar Date Order at p.3, 3rd decretal paragraph (providing that rejection damages claims may be filed within the later of the Bar Date or thirty days from service of notice of rejection). To date, Royal has not received any such rejection notice from the Debtor.

-9-

--618417 1

25. The total maximum amount of Royal's indemnity claim is capped by the Settlement Agreement at $6,000,000. This sum pales in comparison to the total amount of liabilities scheduled by Grace. The most recent monthly operating report filed by Grace indicates that it has estimated total liabilities in excess of $2.6 billion. [*See* D.I. 4398]. Further, the reorganization costs incurred by Grace will easily be in the many millions of dollars, and perhaps upwards of a $100 million. Thus, regardless of whether Royal's indemnity claim is deemed to be a general pre-petition unsecured claim or a post-petition claim, it will have no material impact on the Debtor's financial condition, nor will it materially dilute the overall projected pro rata distribution percentage to any creditor group.

26. The Third Circuit has held that "prejudice is not merely the loss of an advantageous position, but must be something more closely tied to the merits of the issue." *In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 125 (3d Cir. 1999). Here, the mere allowing of Royal to file a late claim will not prejudice the rights of the Debtors to object to that claim on the merits to the extent any such objections exist. To Paraphrase *O'Brien*, if Royal's claim is permitted to be filed late, the debtor (Grace) and other interested parties (the Libby Claimants) are in the same position as if the proof of claim had been filed on time. *Id.* at 126-27. Quite plainly, no prejudice will result to the Debtor or any other party in interest if Royal is permitted to file a late claim under the circumstances presented here.

### 2. No Material Disruption of Judicial Administration

27. Second, no disruption to the efficiency of judicial administration exists if Royal's motion is granted. Although Grace has apparently begun to undertake the claim review process for the more than 15,000 claims filed in response to the March 31, 2003 Bar Date, it does not appear that that process is anywhere near completion. More importantly, no estate assets have

-10-
--618417 1

been distributed to any general unsecured creditors or to the asbestos claimants. Indeed, no bar date has even been set for asbestos bodily injury claimants or for administrative claims. Most importantly, no disclosure statement or plan of reorganization has yet been proposed by Grace, but rather Grace's exclusive time to do so has been extended through April 1, 2004.

28. As aptly noted by one court in allowing a late filed claim, "[t]his is not a case where Debtor has negotiated a plan, sought creditor approval, and obtained confirmation of a plan." *In re McKissick*, 298 B.R. 535, 540 (Bankr. W.D. Pa. 2003). Such is also not the case here. Because Grace's Chapter 11 reorganization cases appear to be a long way off from confirmation, and because no estate assets have yet to be distributed to the creditors, Royal's filing of a late proof of claim will have no material impact on the judicial administration of these Chapter 11 cases.

29. Further, the length of delay is not significant in Royal's case. The Motion at bar was brought within seven months of the Bar Date and prior to the confirmation of any plan by Grace, not years after the Bar Date and years after the confirmation of the debtor's Chapter 11 reorganization plan. *See In re Eagle Bus Mfg. Inc.*, 62 F.3d 730, 740 (5th Cir. 1995) (finding excusable neglect where delay was six to eight months); *In re Byrne*, 162 B.R. 816 (Bankr. W.D. Wisc. 1993) (impact on proceedings minimal where proof of claim filed one year and two months late); *In re Thompson McKinnon Sec., Inc.*, 159 B.R. 146 (Bankr. S.D.N.Y. 1993) (leave granted where proof of claim filed two and one-half years late). In short, because there is no prejudice, the length of the delay should not matter here.

### 3. The Reason for the Delay Is Excusable

30. As determined by the Supreme Court in *Pioneer*, "neglect" encompasses both simple, faultless omissions to act and, more commonly, omissions caused by "carelessness." 507 U.S. at 388, 113 S.Ct. at 1495. As the Third Circuit found in *O'Brien*, "In so holding, the [*Pioneer*] Court explicitly rejected the argument that excusable neglect applies only to those situations where the failure to comply is a result of circumstances beyond the creditor's reasonable control." 188 F.3d at 116. In other words, "blamelessness on the part of the movant is no longer the standard for 'excusable neglect.'" *In re Herman's Sporting Goods, Inc.*, 166 B.R. 581, 584 (Bankr. D.N.J. 1994).

31. As set forth in the Hutson Aff., Ms. Hutson was the Royal Major Case Unit Manager who received the Bar Date Notice and who would have been responsible for filing any proof of claim. [Hutson Aff. at ¶ 13]. She recalls briefly reviewing the Bar Date Notice Package, but not studying it in depth, as she has only limited experience in handling bankruptcy-related matters. [*Id.*]. She did not think that the Bar Date would apply to indemnification claims arising under the Settlement Agreement, given that no actions had yet been filed against Royal which would trigger Grace's indemnification obligations.[4] [*Id.*]. Rather, Ms. Hutson was only concerned with any potential obligations owed by Grace to Royal for unpaid premiums or unpaid deductibles. [*Id.*]. Moreover, Ms. Hutson, does not recall reading the brief, one sentence directive on page 2 of the Bar Date Notice that the Bar Date did apply to "derivative asbestos claims and asbestos-related claims for contribution, indemnity, reimbursement and subrogation."

---

[4] Indeed, given the past and continued litigation within the Third Circuit over when certain types of indemnification claims accrue for bankruptcy purposes, such a belief is entirely understandable. *See, e.g., Avellino & Bienes v. M. Frenville Co., Inc. (Matter of M. Frenville Co., Inc.)*, 744 F.2d 332 (3d Cir. 1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911 (1985).

[*Id.*; Ex. C]. Further, Ms. Huston did not send the Bar Date Notice Package to Royal's outside counsel, nor did she discuss it with anyone else at Royal. [*Id.*].

32. In this regard, as noted by the Third Circuit in *O'Brien*, it is proper for the Bankruptcy Court to consider that the announcement of a bar date for particular types of claims was "buried in the middle of a twelve page document …." 188 F.3d at 129. Here, it is easy to see how the one sentence announcement in the Bar Date Notice that the Bar Date applied to claims for indemnification could be overlooked, especially given that it is set forth in the middle of page two of the thirteen page Bar Date Notice which is in turn included in a lengthy package. [*See* Ex. C].

33. Indeed, the fact that the Bar Date Notice expressly focussed on "Non-Asbestos Claims," "Asbestos Property Damage Claims" and "Medical Monitoring Claims", all of which are extensively defined terms, is somewhat misleading under the circumstances presented by the Royal indemnity claim. Certainly, the Royal indemnity claim does not fit within the category of an Asbestos Property Damage Claim or a Medical Monitoring Claim. And the fact that the Royal indemnity claim arose out of a Settlement Agreement that was designed to extinguish any and all liability for asbestos claims under the Policies could lead to the logical conclusion that Royal's indemnity claim was not necessarily a Non-Asbestos Claim.

34. In any event, Royal never intended to consciously disregard the Bar Date and forego its right to file a proof of claim for the indemnification obligations undertaken by Grace in the Settlement Agreement. [Hutson Aff. at ¶ 14]. Rather, any failure to comply with the Bar Date was solely the result of Royal's failure to fully review and comprehend the Bar Date Notice Package and its lack of knowledge that the indemnification provisions in the Settlement

Agreement could give rise to a claim subject to the Bar Date, even though no actions had been commenced against Royal which would actually trigger such an obligation by Grace. [*Id.*].

**4. Good Faith**

35. Finally, Royal files its proof of claim in good faith. As soon as the mistake was realized, Royal promptly notified the Court and the relevant parties of its intention to file this Motion. Moreover, as explained in the Hutson Affidavit, Royal's mistake was completely inadvertent based upon a good faith belief that the Bar Date as explained in the Bar Date Notice Package did not apply to unliquidated and contingent indemnity claims of the kind granted to Royal in the Settlement Agreement.

## CONCLUSION

36. The lack of any prejudice to the Debtors or to the interest of efficient judicial administration of these bankruptcy cases, combined with the good faith of Royal, weigh strongly in favor of permitting Royal to file a late proof of claim.

WHEREFORE, for all of the reasons set forth above, it is respectfully requested that the Court enter the proposed Order annexed hereto granting Royal leave to file a late proof of claim for any indemnity obligations owed by Grace under the Settlement Agreement, together with such other and further relief as this Court deems just and equitable.

--618417 1

Dated: November 5, 2003

Respectfully submitted,

BIFFERATO, BIFFERATO & GENTILOTTI

By: _____
Ian Connor Bifferato, Esq. (#3273)
1308 Delaware Avenue
The Buckner Building
Post Office Box 2165
Wilmington, Delaware 19899-2165
(302) 429-1900

-and-

James P. Donovan, Esq.
Carl Pernicone, Esq.
WILSON, ELSER, MOSKOWITZ,
 EDELMAN & DICKER LLP
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000

-and-

Mark G. Ledwin, Esq.
WILSON, ELSER, MOSKOWITZ,
 EDELMAN & DICKER LLP
3 Gannett Drive
White Plains, New York 10604
(914) 323-7000

Counsel for Royal Indemnity Company

--618417 1