IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 01-01139 (JKF) |
| W.R. GRACE & CO., et al., | ) | Jointly Administered |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

### AFFIDAVIT OF MARY LOU HUTSON

STATE OF NORTH CAROLINA  )
                         ) ss:
COUNTY OF MECKLENBERG    )

MARY LOU HUTSON, first being duly sworn, hereby states under the penalty of perjury as follows:

1. I am a Major Case Unit Manager for Royal Indemnity Company ("Royal"). My duties in that capacity include the supervision and handling of coverage matters involving W.R. Grace & Co. ("Grace or Debtors"). I have personal knowledge of all statements made herein as a result of my position with Royal and my review of the documents submitted herewith, except for those matters stated herein upon information and belief, and as to those matters I verily believe them to be true.

2. I submit this Affidavit in support of Royal's Motion for leave to file a late proof of claim against the Debtors.

3. Royal issued several comprehensive general liability insurance policies (the "Policies") to the Zonolite Company ("Zonolite") covering ten consecutive one year periods from March 31, 1953 through April 1, 1963.

618428 1

4. Pursuant to an "Agreement and Plan of Reorganization" dated January 17, 1963 (copy annexed to the Motion as Exhibit A), Grace acquired Zonolite in exchange for a part of the common stock of Grace. In connection with certain asbestos containing products sold by Zonolite, Grace, as successor to Zonolite, was subsequently named as a defendant in numerous Asbestos-Related Bodily Injury and Property Damage Claims ("Asbestos-Related Claims") which were then submitted to Royal for coverage under the Policies.

5. Various disputes arose between Grace, Royal and certain other primary insurers concerning the scope of coverage afforded under the Policies for the Asbestos Related Claims. These disputes came to the fore in a declaratory judgment action commenced in the United States District Court for the Southern District of New York captioned as *Maryland Casualty Co. v. W.R. Grace & Co.*, Case No. 83 Civ. 7451.

6. After more than ten years of litigation, in January 1995, Royal and Grace entered into a Settlement Agreement (the "Settlement Agreement") (copy annexed to the Motion as Exhibit B), which resolved all issues arising out of Grace's claim for coverage under the Policies for Asbestos Related Claims. In exchange for a substantial sum of money paid by Royal, Grace agreed, *inter alia*, to the exhaustion and cancellation of all coverage under the Policies for any Asbestos Related Claims and to further release and discharge Royal from any and all claims for coverage under the "Products Hazard" portion of the Policies. [Ex. B, §§ III, IV, VII and VIII].

7. The Settlement Agreement further provided that Grace would indemnify and hold Royal harmless from any and all liability imposed upon, or costs or expenses incurred by Royal in connection with any Asbestos Related Claims or "Products Claims" made against Royal under the Policies, up to a maximum limit of $6,000,000. Grace's obligations under the indemnification provisions of the Settlement Agreement thus include not only the duty to

-2-

indemnify Royal, but also the obligation to defend Royal from and against any attempts by any person or entity seeking to assert a right to the released claims to coverage. [Ex. B, § IX].

8. Upon information and belief, in July 1999, several individuals residing in Libby, Montana (the "Libby Claimants") filed complaints against, *inter alia*, Montana Vermiculite Company ("Montana Vermiculite") for various alleged asbestos related bodily injuries caused by Zonolite. Apparently, after the sale of all of Zonolite's assets to Grace in 1963, including the Policies issued by Royal, Zonolite changed its name to the Montana Vermiculite Company. Montana Vermiculite is thus an empty shell corporation that was dissolved in 1964. [*See* Ex. A, ¶ 10].

9. Upon information and belief, in connection with the recent September 22, 2003 hearing on Grace's motion to expand the preliminary injunction entered in Adversary Proceeding No. A-01-771 (the "Preliminary Injunction Action") to include actions against Montana Vermiculite, the Libby Claimants essentially took the position that Grace is not entitled to an extension of the preliminary injunction because Royal failed to timely file a proof of claim based upon its right to indemnification under the Settlement Agreement and thus any further prosecution of the claims against Montana Vermiculite will have no effect on Grace's reorganization proceedings.

10. In discussing the results of the September 22, 2003 hearing with Royal's outside counsel, I learned for the first time that the Libby Claimants were contending that the March 31, 2003 Bar Date applied to any contingent and unliquidated indemnity claims of Royal arising out of the Settlement Agreement with Grace, including any claim based upon the obligations of Grace to indemnify Royal for the claims asserted by the Libby Claimants against Montana

Vermiculite. In order to rectify any error which may have been made by Royal in not timely filing a proof of claim prior to the Bar Date, this Motion was promptly prepared and filed.

11. Upon information and belief, on April 22, 2002, this Court entered an order (the "Bar Date Order") establishing a bar date of March 31, 2003 (the "Bar Date") for "All Non-Asbestos Claims, Asbestos Property Damage Claims and Medical Monitoring Claims."

12. On June 28, 2002, Royal's mail room at its Charlotte, North Carolina offices received a "Bar Date Notice Package" concerning Grace. The Bar Date Notice Package consisted of the following:

   A. An Index to the Claims Bar Date Notice Materials;
   B. The Claims Bar Date Notice;
   C. The Bar Date Order;
   D. General Instructions for Completing Proof of Claim Forms; and
   E. A standard Form B10 Proof of Claim.

A copy of the Bar Date Notice Package actually received by Royal is annexed to the Motion as Exhibit C.

13. The Bar Date Notice Package eventually was delivered to me as the Manager in the Major Case Unit responsible for Grace matters. I recall briefly reviewing the Bar Date Notice Package, but not studying it in depth. Admittedly, I have only limited experience in handling bankruptcy-related matters. At that time I was concerned only with any potential obligations owed by Grace to Royal for outstanding premiums or unpaid deductibles. I did not think that the Bar Date would apply to any indemnification claims arising under the Settlement Agreement given that no actions have ever been filed against Royal which would trigger Grace's indemnification obligations. In this regard, I do not recall reading the brief, one sentence directive on page 2 of the Bar Date Notice that the Bar Date did apply to "derivative asbestos

claims and asbestos-related claims for contribution, indemnity, reimbursement and subrogation." [*See* Ex. C]. Further, I did not send the Bar Date Notice Package to Royal's outside counsel, nor did I discuss it with anyone within Royal.

14.  Neither I nor anyone else at Royal intended to consciously disregard the Bar Date and forego Royal's right to file a proof of claim for the indemnification obligations undertaken by Grace in the Settlement Agreement. Rather, any failure to comply with the Bar Date was solely the result of my own failure to fully review and comprehend the Bar Date Notice Package and my lack of knowledge that the indemnification provisions in the Settlement Agreement could give rise to a claim subject to the Bar Date even though no actions had been commenced against Royal which would actually trigger such an obligation by Grace.

WHEREFORE, for the reasons more fully set forth in the Motion, it is respectfully requested that Royal's Motion be granted.

_____
Mary Lou Hutson

Signed and Sworn to before me
this 7th day of November, 2003.

_____
Notary Public

My Commission Expires July 7 2008

-5-

-618428 1