# EXHIBIT A

( .0)

# AGREEMENT AND PLAN OF REORGANIZATION

### BETWEEN

## W. R. GRACE & CO. AND ZONOLITE COMPANY

AGREEMENT AND PLAN OF REORGANIZATION dated January / 7七 1963 (hereinafter called the "Agreement") between W. R. GRACE & Co., a Connecticut corporation having its principal office at 7 Hanover Square, New York, N. Y. (hereinafter called "Grace") and ZONOLITE COMPANY, a Montana corporation having its principal office at 135 South La Salle Street, Chicago, Illinois (hereinafter called "Zonolite").

In consideration of the mutual covenants, agreements, representations and warranties herein contained, the parties hereto agree as follows:

1. *Plan of Reorganization.* The reorganization will comprise the acquisition by Grace of substantially all of the properties and assets of Zonolite in exchange solely for a part of the common stock of Grace, par value $1.00 per share ("Grace common stock"), and the assumption by Grace of certain of Zonolite's liabilities, as hereinafter provided, and the dissolution of Zonolite and the distribution of said Grace common stock to the stockholders of Zonolite according to their respective interests, in complete liquidation and complete, cancellation and redemption of the outstanding common stock of Zonolite, par value $1.00 per share ("Zonolite common stock"), all upon and subject to the terms and conditions hereinafter set forth and for the purpose of carrying out a tax-free reorganization within the meaning of Section 368(a)(1)(C) of the United States Internal Revenue Code of 1954.

2. *Sale of Assets and Business by Zonolite.* On the terms and subject to the conditions herein set forth, at the Closing (hereinafter referred to in Section 5), Zonolite will convey, sell, transfer, assign and deliver to Grace all of the assets and properties of Zonolite of every type and description, real, personal and mixed, tangible and intangible, and its business as a going concern, including, without limitation, all cash on hand and in banks, stocks, bonds, and other securities, good will, the corporate name "Zonolite" and any variants thereof, trade-marks, trade names, brand names, patents and patent applications and interests thereunder, inventions, processes, know-how, formulae, real estate and interests therein (including leaseholds and all other interests), buildings, machinery, equipment, notes and accounts receivable, books and records, inventories of raw materials, work in process, finished products and supplies, fixtures, contracts, agreements, franchises, funds of whatever nature including unemployment compensation, retirement, industrial accident, pension and savings bond funds and all other property and rights of every kind and nature owned or held by Zonolite on the date of the Closing or then used by it in its business whether or not specifically referred to in this Agreement. The assets, properties and business of Zonolite to be transferred to Grace hereunder are hereinafter called the "Zonolite Assets". Without limiting the generality of the foregoing it is agreed that the Zonolite Assets shall include all of the assets, properties and rights reflected on the Balance Sheet of Zonolite delivered to Grace pursuant to Section 8(f) of this Agreement, except such assets, properties and rights as may have been disposed of prior to the Closing in the ordinary course of business or with the express written consent of Grace.

Notwithstanding the foregoing, Zonolite shall retain as of the Closing such cash as Zonolite and Grace shall agree in writing may be required for the payment of Zonolite's expenses in connection with the consummation of this Agreement, including, without limitation, (i) counsel fees, (ii) expenses arising out of the sale and delivery of the Zonolite Assets to Grace, including any and all federal, state or local taxes, (iii) expenses of dissolution, liquidation and distribution of Grace common stock to Zonolite stockholders, (iv) amounts payable to dissenting Zonolite stockholders, if any, and (v) expenses of any proceedings to determine the fair value of the stock of dissenting Zonolite stockholders, if any. If the amount of cash retained by Zonolite as aforesaid is in excess of the amount required to pay said expenses,

the excess shall be paid over by Zonolite to Grace. If the amount of cash required to pay said expenses is in excess of the amount retained, Grace shall return to Zonolite an amount of cash equal to such excess, provided that, in no event shall the amount of cash to be returned by Grace, when added to the amount of cash retained by Zonolite, reduce the net assets sold, conveyed, transferred, assigned and delivered to Grace to an amount less than 90 per cent of the net value of Zonolite's assets.

3. *Purchase of Assets and Business by Grace.* In reliance on the covenants, agreements, representations and warranties of Zonolite contained herein and subject to the terms and conditions hereof, Grace will at the Closing purchase the Zonolite Assets and in full consideration thereof and payment therefor will, in the manner herein provided, (i) issue and deliver to Zonolite that number of fully paid and non-assessable shares of Grace common stock determined by dividing by four (4) the total number of outstanding shares of Zonolite common stock on the date of the Closing, after subtracting from said total number of outstanding shares of Zonolite common stock the aggregate number of shares, if any, held by stockholders of Zonolite who shall have given valid written notice to Zonolite within 20 days after the date of the meeting of stockholders of Zonolite at which the sale of Zonolite Assets provided for herein is duly authorized by Zonolite stockholders, that they do not assent thereto, (ii) assume and agree in due course to pay and discharge all debts and liabilities of Zonolite existing on the Closing, whether absolute, contingent or otherwise, and whether or not set forth on, reserved against or reflected in Zonolite's Balance Sheet as at December 31, 1962 to be prepared pursuant to Section 4 hereof, other than (a) liabilities against which Zonolite is insured or otherwise indemnified, to the extent of such insurance or indemnification, (b) liabilities of Zonolite to its shareholders arising out of their relationship as such shareholders, and (c) liabilities referred to and provided for in the second paragraph of Section 2 hereof, and (iii) assume and agree to observe, perform and fulfill the terms and conditions to be observed, performed and fulfilled by Zonolite under all lawful executory contracts, agreements, leases, commitments and undertakings duly assigned to Grace at the Closing hereunder.

In the event that on the Closing Zonolite is entitled to a fractional share of Grace common stock pursuant to this Agreement, the aggregate number of shares of Grace common stock delivered to Zonolite hereunder shall be increased to the next higher number of full shares. Such excess fraction of a share shall not increase the number of shares of Grace common stock which any Zonolite stockholder shall be entitled to receive, but may be sold in connection with the distribution by Zonolite of Grace common stock to Zonolite stockholders, the proceeds from such sale however, to be held by Zonolite for the account of Grace and remitted to Grace in due course.

4. *Balance Sheets as at December 31, 1962.* Grace and Zonolite shall cause Messrs. Price Waterhouse & Co., independent accountants, to conduct an examination and audit of the books and accounts of Zonolite, Superior Asbestos Company and Texas Vermiculite Company (each such corporation, other than Zonolite, is hereinafter called a "Wholly Owned Subsidiary" and all said corporations, other than Zonolite, collectively are hereinafter called the "Wholly Owned Subsidiaries") as of the close of business December 31, 1962, and to prepare and deliver to Grace not later than February 28, 1963 a consolidated balance sheet of Zonolite and the Wholly Owned Subsidiaries as at December 31, 1962 certified by Messrs. Price Waterhouse & Co. as presenting fairly the consolidated financial position thereof as at such date in accordance with generally accepted accounting principles. In addition, Grace and Zonolite shall cause Messrs. Price Waterhouse & Co., independent accountants, to conduct an examination and audit of the books and accounts of Ari-Zonolite Co., California Zonolite Co. and Western Mineral Products Company (each such corporation is hereinafter called a "Subsidiary" and all of said corporations collectively are hereinafter called the "Subsidiaries") as of the close of business December 31, 1962, and to prepare and deliver to Grace not later than February 28, 1963 a balance sheet of each Subsidiary as at December 31, 1962 certified by Messrs. Price Waterhouse & Co. as presenting fairly the financial position of each of the Subsidiaries as at such date in accordance with generally accepted accounting principles.

5. *Closing.* The Closing hereunder (herein called the "Closing") will take place at 10:00 a. m. o'clock local time on the 10th day of April, 1963 at the offices of The Corporation Trust Company, 15 Exchange Place, Jersey City, New Jersey, or at such other time and place as the parties hereto

2

shall agree upon, provided, however, that in the event that the conditions specified in Sections 14(1) and 15(e) hereof shall not have been satisfied at such time the Closing shall be postponed to 10:00 a.m. o'clock local time on May 14, 1963 and provided further that in no event shall the Closing occur on a date prior to the expiration of twenty (20) days after the date of the meeting of stockholders of Zonolite at which the sale of the Zonolite Assets provided for herein is duly authorized.

6.    *Zonolite's Obligations at Closing; Further Assurances.*   At the Closing, Zonolite will deliver to Grace (i) such good and sufficient full covenant and warranty deeds, bills of sale with covenants of warranty, endorsements, assignments and other good and sufficient instruments of conveyance, sale, transfer and assignment, in form and substance satisfactory to Grace's counsel, as shall be required or desirable in order effectively to vest in Grace good, indefeasible and marketable title to the Zonolite Assets free and clear of all equities, charges, commitments, obligations, liabilities, mortgages, pledges, liens, conditional sales agreements, easements and other burdens and encumbrances of every nature whatsoever except those herein specifically provided for, and (ii) all of the files, documents, papers, agreements, formulae, operating instructions, books of account and records pertaining to the business conducted by Zonolite and its Wholly Owned Subsidiaries.

At the Closing and at any time or from time to time thereafter, Zonolite shall at the request of Grace also take all action necessary to put Grace in actual possession and operating control of the Zonolite Assets and shall execute and deliver such further instruments of conveyance, sale, transfer and assignment, and take such other action as Grace may request in order more effectively to convey, sell, transfer and assign to Grace any of the Zonolite Assets, to confirm the title of Grace thereto and to assist Grace in exercising rights with respect thereto. After the completion and satisfaction of the appraisement proceedings, if any, Zonolite will cancel the shares of Zonolite common stock previously held by dissenting stockholders of Zonolite who were parties to such proceedings.

7.    *Grace's Obligations at Closing.*   At the Closing, Grace will, in return for the conveyance, sale, transfer, assignment and delivery specified in Section 6 hereof, (i) issue and deliver to Zonolite a certificate or certificates representing the number of fully paid and non-assessable shares of Grace common stock provided for in Section 3 hereof, (ii) execute, acknowledge and deliver to Zonolite a valid and binding undertaking whereby Grace assumes and agrees in due course to pay and discharge the debts and liabilities of Zonolite as provided in Section 3 hereof, and (iii) execute, acknowledge and deliver to Zonolite a valid and binding undertaking whereby Grace assumes and agrees to observe, perform and fulfill the terms and conditions to be observed, performed and fulfilled by Zonolite under all lawful executory contracts, agreements, leases, commitments and undertakings duly assigned to Grace at the Closing.

The certificate or certificates for shares of Grace common stock to be delivered to Zonolite shall be in such denominations and registered in the name of Zonolite or its nominee or such other names as Zonolite shall specify in writing at least 3 days prior to the Closing. In the event that after the date hereof and prior to the issuance and delivery to Zonolite of shares of Grace common stock to be issued and delivered as provided in Section 3 hereof (i) any recapitalization, or reclassification, split-up or consolidation of shares of Grace common stock shall be effected, or (ii) the outstanding shares of Grace common stock are, in connection with a merger or consolidation of Grace or a sale by Grace of all or a part of its assets, properties or franchises, exchanged for a different number or class of shares of stock of Grace or for the shares of the capital stock of any other corporation, or (iii) the record date for determination of holders of record of Grace common stock entitled to receive a common stock dividend (including the 2% stock dividend on Grace common stock declared on January 3, 1963 to be distributed on March 18, 1963 to stockholders of record on February 15, 1963) shall have occurred, the number and class of the shares to be issued and delivered to Zonolite pursuant to Section 3 hereof shall be proportionately adjusted so that there shall be issued to Zonolite the class and aggregate number of shares of stock which Zonolite would have owned and been entitled to receive after the happening of any of the events described above had the shares of Grace common stock issuable under Section 3 hereof been issued immediately prior to the happening of such event.

3

8. *Representations and Warranties by Zonolite.* Zonolite represents and warrants to Grace as follows:

(a) Zonolite is a corporation duly organized, validly existing, and in good standing under the laws of the State of Montana. Zonolite is licensed and qualified as a foreign corporation and in good standing in the States of Alabama, Florida, Georgia, Arkansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Missouri, New Jersey, New York, North Carolina, South Carolina, Tennessee, Pennsylvania and Illinois, and neither the character or location of the properties owned by it nor the nature of the business transacted by it makes license or qualification in any other juris-diction necessary. Zonolite has the corporate power and authority to carry on its business as it is now being conducted and to own and operate its assets, properties and business. The copies of its Articles of Incorporation and all amendments thereto to date (certified by the Secretary of State of Montana) and of its by-laws, as amended to date (certified by its Secretary) which have been delivered to Grace are true, complete and correct.

(b) The authorized capital stock of Zonolite consists of 1,500,000 shares of common stock, par value of $1 per share, of which 1,104,397 shares are validly issued and outstanding, fully paid and non-assessable. There are no outstanding subscriptions, options, warrants, calls, commit-ments, obligations or agreements relating to Zonolite's authorized or issued common stock, except for (i) the employees' restricted stock options referred to in Section 13 hereof and (ii) Zonolite's obligation under an agreement dated September 9, 1953, as amended, with R. B. Moran to issue shares of Zonolite common stock to Mr. Moran under certain circumstances.

(c) Zonolite has delivered to Grace a true and complete list (certified by the President of Zonolite) dated as of the date hereof setting forth (a) the name and jurisdiction of incorporation of each corporation any of the outstanding voting stock of which is owned or controlled, directly or indirectly, by Zonolite (each such corporation other than any Wholly Owned Subsidiary or any Subsidiary is hereinafter called an "Affiliate" and all of said corporations collectively are hereinafter called the "Affiliates"), (b) the jurisdictions in which each Wholly Owned Subsidiary, Subsidiary and Affiliate is duly qualified to do business as a foreign corporation, (c) the authorized capital stock of each Wholly Owned Subsidiary, Subsidiary and Affiliate, (d) the number of shares of each class of capital stock of each Wholly Owned Subsidiary, Subsidiary and Affiliate outstanding, and (e) the number of shares of each such class owned or controlled by Zonolite or any other Wholly Owned Subsidiary, Subsidiary or Affiliate (and, if owned by a Wholly Owned Subsidiary, Subsidiary or Affiliate, the name thereof). Each Wholly Owned Subsidiary, Subsidiary and Affiliate is a corporation duly organized, validly existing, and in good standing under the laws of its state of incorporation and is duly licensed and qualified as a foreign corporation and is in good standing in all other jurisdictions wherein the character or location of the properties owned by it or the nature of the business transacted by it makes license or qualification necessary. Each Wholly Owned Subsidiary, Subsidiary and Affiliate has the corporate power and authority to carry on its business as it is now being conducted and to own and operate its assets, properties and business. The copies of each Wholly Owned Subsidiary's, Subsidiary's and Affiliate's Articles of Incorporation and all amendments thereto to date (certified by the Secretary of State or other appropriate official of such Wholly Owned Subsidiary's, Subsidiary's and Affiliate's jurisdiction of incorporation) and of its by-laws as amended to date (certified by its Secretary) which have been delivered to Grace and are true, complete and correct. All the issued and outstanding shares of stock of each Wholly Owned Subsidiary, Subsidiary and Affiliate which are owned by Zonolite or by any other Wholly Owned Subsidiary, Subsidiary and Affiliate are validly issued and outstanding, fully paid and non-assessable, and are free and clear of all liens and encumbrances.

(d) Except for the Wholly Owned Subsidiaries, Subsidiaries and Affiliates referred to in Section 8(c) above, Zonolite has no subsidiaries or affiliates, nor does it own any capital stock of, or have any proprietary interest in, any other corporation, association or business organization.

4

nor does it control the management or policies of any other corporation, association or business organization by means of a management contract or otherwise.

(e) As of the date hereof the directors and officers of Zonolite are as follows:

| Name | Office Held |
|------|-------------|
| Lester Armour | Director |
| George R. Birkelund | Director |
| John H. Bishop | Director and Secretary |
| E. P. Brooks | Director |
| Edwin A. Locke, Jr. | Director |
| Joseph A. Kelley | Director and President |
| James M. Phelan | Director |
| Robert C. Shields | Director |
| Robert W. Sterrett | Director and Vice President |
| Hamilton K. Smith | Director |
| Dayton L. Prouty | Vice President |
| Daniel J. Boone | Vice President |
| Francis W. Rupp | Treasurer |

(f) The following financial statements of Zonolite, Texas Vermiculite Company and the Subsidiaries, copies of which have been delivered to Grace by Zonolite, are true and complete and have been prepared in accordance with generally accepted accounting principles consistently followed thereby in the past:

(i) The balance sheet of Zonolite as at March 31, 1962 and statements of income and retained earnings of Zonolite for the five fiscal years ended March 31, 1962, certified by Messrs. Ernst & Ernst, certified public accountants.

(ii) The unaudited balance sheet of Texas Vermiculite Company as at March 31, 1962, unaudited statement of income and retained earnings of Texas Vermiculite Company for the fiscal year ended March 31, 1962, statement of income and retained earnings of Texas Vermiculite Company for the fiscal year ended March 31, 1961, certified by Messrs. Ernst & Ernst, certified public accountants, and unaudited statements of income and retained earnings of Texas Vermiculite Company for the three fiscal years ended March 31, 1960.

(iii) The balance sheet of Ari-Zonolite Co. as at March 31, 1962 and statements of income and retained earnings of Ari-Zonolite Co. for the five fiscal years ended March 31, 1962, certified by Messrs. Ernst & Ernst, certified public accountants.

(iv) The balance sheet of California Zonolite Co. as at March 31, 1962 and statements of income and retained earnings of California Zonolite Co. for the five fiscal years ended March 31, 1962, certified by Messrs. Ernst & Ernst, certified public accountants.

(v) The balance sheet of Western Mineral Products Company as at January 31, 1962 and statements of income and retained earnings of Western Mineral Products Company for the two fiscal years ended January 31, 1962, certified by Messrs. Boulay, Anderson, Waldo & Co., certified public accountants, and statements of income and retained earnings of Western Mineral Products Company for the three fiscal years ended January 31, 1960, certified by Messrs. Ernst & Ernst, certified public accountants.

Each of the aforesaid balance sheets fairly presents, as of its date, the financial condition of the corporation referred to therein and each of the aforesaid statements of income and retained earnings fairly presents the results of the operations of the corporation referred to therein for the fiscal period which each purports to cover. The aforesaid balance sheets are herein collectively referred to as

(

the "Balance Sheets". Wherever reference herein is made to the "Balance Sheet Date" of Zonolite or any Wholly Owned Subsidiary or Subsidiary it shall mean the date of the aforementioned balance sheet of Zonolite or such Wholly Owned Subsidiary or Subsidiary, as the case may be.

(g) Except as and to the extent reflected or reserved against in its Balance Sheet or as disclosed in or pursuant to this Agreement, neither Zonolite nor any Wholly Owned Subsidiary as of its Balance Sheet Date, had any debts, liabilities or obligations of any nature, whether accrued, absolute, contingent or otherwise, and whether due or to become due arising out of any transactions entered into, or any state of facts existing prior thereto, including, without limitation, liabilities or obligations on account of taxes or other governmental charges, or penalties, interest or fines thereon or in respect thereof. Zonolite does not know nor have any reasonable grounds to know of any basis for any assertion against Zonolite or any Wholly Owned Subsidiary as of its Balance Sheet Date of any debt, liability or obligation of any such nature or in any amount not fully reflected or reserved against in the Balance Sheets.

(h) Since its Balance Sheet Date (or in the case of Superior Asbestos Company since its date of organization) there has not been:

(i) Any change in the condition (financial or otherwise) or properties, assets, liabilities, business or prospects of Zonolite, any Wholly Owned Subsidiary or any Subsidiary, except changes in the ordinary course of business, none of which has been materially adverse;

(ii) Any damage, destruction or loss (whether or not covered by insurance) adversely affecting the properties, assets, business or prospects of Zonolite, any Wholly Owned Subsidiary or any Subsidiary;

(iii) Any declaration, setting aside, or payment of any dividend or other distribution on or in respect of the capital stock of Zonolite or any Wholly Owned Subsidiary, or any direct or indirect redemption, purchase or other acquisition of any such stock, except that in November, 1962 Zonolite paid a dividend of 10¢ per share on its outstanding common stock;

(iv) Except to the extent disclosed in the statement entitled "Schedule 8(h)(iv)" (certified by the President of Zonolite and delivered to Grace) any increase in the compensation or rate of compensation or commissions payable or to become payable by Zonolite or any Wholly Owned Subsidiary to any of its directors, officers, salaried employees earning more than $10,000 per annum, salesmen or agents, or any general increase in the compensation or rate of compensation payable or to become payable to its hourly employees or salaried employees earning $10,000 per annum or less ("general increase" for purposes hereof shall mean any increase generally applicable to a class or group of employees and does not include increases granted to individual employees for merit, length of service, change in position or responsibility or other reasons applicable to specific employees and not generally to a class or group thereof), or any payment of any bonus, profit sharing or other extraordinary compensation to any director, officer or employee, or any change in any then existing bonus, profit sharing, pension, retirement or other similar plan, agreement or arrangement, nor has Zonolite or any Wholly Owned Subsidiary adopted or entered into any new bonus, profit sharing, pension, retirement or other similar plan, agreement or arrangement;

(v) Any change in the accounting methods or practices followed by Zonolite or any Wholly Owned Subsidiary, or any change in depreciation or amortization policies or rates theretofore adopted;

(vi) Any debt, obligation or liability (whether absolute or contingent) incurred by Zonolite or any Wholly Owned Subsidiary except (i) current liabilities incurred, and obligations under agreements entered into, in the ordinary course of business, (ii) obligations or liabilities entered into or incurred in connection with the execution of this Agreement, and (iii) liabilities in amounts not exceeding $35,000 incurred in connection with materials sold for a construction job;

6

(vii) Any shares of capital stock of Zonolite, any Wholly Owned Subsidiary or any Subsidiary issued (other than shares of common stock of Zonolite issued upon exercise of employees' restricted stock options) or any option or commitment granted or entered into by Zonolite, any Wholly Owned Subsidiary or any Subsidiary relating to the authorized or issued capital stock of Zonolite, any Wholly Owned Subsidiary or any Subsidiary other than employees' restricted stock options included among those referred to in the list delivered to Grace by Zonolite pursuant to Section 13 of this Agreement;

(viii) Except to the extent disclosed in the statement entitled "Schedule 8(h)(viii)" (certified by the President of Zonolite and delivered to Grace), any sale, lease, abandonment or other disposition by Zonolite, any Wholly Owned Subsidiary or any Subsidiary of any real property, or machinery, equipment or other operating properties other than in the ordinary course of business nor any sale, assignment, transfer or license by Zonolite or any Wholly Owned Subsidiary of any patent, patent application, invention, process, know-how, trade mark, trade name or other intangible asset;

(ix) Any labor trouble, strike, or any other occurrence, event or condition of any character which adversely affects or may affect the assets, properties, business or prospects of Zonolite, any Wholly Owned Subsidiary or any Subsidiary.

(i) Zonolite, each Wholly Owned Subsidiary and each Subsidiary has filed all tax returns (federal, state and local) required to be filed by it, and all taxes shown to be due and payable on said returns or on any assessments received by Zonolite, any Wholly Owned Subsidiary or any Subsidiary and all other taxes (federal, state and local), other than personal property taxes, due and payable by Zonolite, any Wholly Owned Subsidiary or any Subsidiary on or before the date hereof have been paid. All United States income and excess profits tax returns of Zonolite have been audited by the United States Internal Revenue Service for all fiscal years up to and including the fiscal year ended March 31, 1961, and all taxes and assessments for such years finally determined and paid. There are no agreements, waivers or other arrangements providing for an extension of time with respect to the assessment of any tax or deficiency against Zonolite or any Wholly Owned Subsidiary, nor are there any actions, suits, proceedings, investigations or claims now pending against Zonolite or any Wholly Owned Subsidiary in respect of any tax or assessment or any matters under discussion with any federal, state or local authority relating to any taxes or assessments, or any claims for additional taxes or assessments asserted by any such authority. The provisions made for taxes on the Balance Sheets are sufficient for the payment of all unpaid federal, state and local taxes of Zonolite and each Wholly Owned Subsidiary for the fiscal years ended as of its Balance Sheet Date and all periods prior thereto.

(j) The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby will not (i) result in any breach of any of the terms or conditions of, or constitute a default under, the Articles of Incorporation or By-Laws of Zonolite or any Wholly Owned Subsidiary, or any commitment, mortgage, note, bond, indenture, contract, agreement, license or other instrument or obligation to which Zonolite or any Wholly Owned Subsidiary is now a party or by which Zonolite or any Wholly Owned Subsidiary may be bound or affected, or (ii) violate any law, or any rule, regulation of any federal, state or local governmental body, or any order, writ, injunction or decree of any court.

(k) Each of the following schedules (certified by the President of Zonolite) which have been delivered by Zonolite to Grace, is complete and the information reported thereon is correct:

*Schedule 1—Mining Properties Owned in Montana*

This schedule sets forth a complete description by metes and bounds of each parcel of real property owned by Zonolite, any Wholly Owned Subsidiary or any Subsidiary and located in the State of Montana which produces or is held primarily for the production of minerals, together with a summary description of the mines, buildings and improvements thereon.

7

*Schedule 2—Other Mining Properties*

This schedule sets forth a summary description of each parcel of real property owned by Zonolite, any Wholly Owned Subsidiary or any Subsidiary or in which Zonolite, any Wholly Owned Subsidiary or any Subsidiary owns or has any mineral or mining interest (including any royalty, overriding royalty or other interest), other than those described in Schedule 1, which produces or is held primarily for the production of minerals, together with a summary description of the mines, buildings and improvements thereon.

*Schedule 3—Non-Mining Properties*

This schedule sets forth a complete description by metes and bounds of each parcel of real property owned or leased by Zonolite, any Wholly Owned Subsidiary or any Subsidiary, other than those described in Schedule 1 or 2, together with a summary description of the mines, buildings and improvements thereon.

Zonolite, the Wholly Owned Subsidiaries or the Subsidiaries have good and marketable title to all real property or interests therein described in Schedules 1 and 3 (other than leased property described in Schedule 3) and to the mines, buildings and other improvements located thereon, in each case free and clear of all mortgages, liens, assessments, easements, covenants, restrictions, reservations and other encumbrances of every nature except as set forth in Schedules 1 and 3, and to all real property and interests therein described in Schedule 2 and to the mines, buildings and improvements located thereon, in each case free and clear of all mortgages, liens, assessments, easements, covenants, restrictions, reservations and other encumbrances of every nature except taxes constituting a lien but not yet due and payable, and defects or irregularities of title or encumbrances which are not such as to interfere materially with the operation, value or use of any such property or right or materially affect title thereto. All mines and buildings owned or occupied by Zonolite, any Wholly Owned Subsidiary or any Subsidiary and all machinery, equipment, tools, dies, fixtures, motor vehicles and other operating properties owned or used thereby, are in good operating condition and repair and are adequate and sufficient for all current operations of Zonolite, such Wholly Owned Subsidiary or such Subsidiary. Neither the whole nor any portion of any real property owned or occupied by Zonolite, any Wholly Owned Subsidiary or any Subsidiary has been condemned or otherwise taken by any public authority, nor does Zonolite, any Wholly Owned Subsidiary or any Subsidiary know or have reasonable grounds to believe that any such condemnation or taking is threatened or contemplated. Zonolite, each Wholly Owned Subsidiary and each Subsidiary has good and marketable title to all personal property (including leases covering real property) which it purports to own, including that reflected on its Balance Sheet (except as since its Balance Sheet Date sold or otherwise disposed of in the ordinary course of business), free and clear of mortgages, pledges, liens, conditional sale and other title retention agreements, and other burdens and encumbrances of any nature. None of the properties owned or held under lease by Zonolite, any Wholly Owned Subsidiary or any Subsidiary, or the occupancy or operation thereof, is in violation of any law, building, zoning or other ordinance, code or regulation applicable to it and no notice from any governmental body has been served upon Zonolite, any Wholly Owned Subsidiary or any Subsidiary or upon any real property owned or held under lease by Zonolite, any Wholly Owned Subsidiary or any Subsidiary claiming any violation of any such law, ordinance, code or regulation or requiring, or calling attention to the need for, any work, repairs, construction, alterations or installation on or in connection with said properties which has not been complied with. Zonolite and each Wholly Owned Subsidiary has all easements and rights, including easements for power lines, waterlines, aerial tramways and roadways, together with all water and water rights and easements appurtenant thereto, necessary to conduct the business it now conducts.

(1) Zonolite has delivered to Grace a true and complete list (certified by the President of Zonolite) of all patents, trade-marks, trade names, brand names, copyrights, and all pending applications therefor owned or used by or licensed to Zonolite or any Wholly Owned Subsidiary, together with a summary description and full information in respect of the filing registration or

8

issuance thereof. All of such patents, trade-marks, trade names, brand names, copyrights, pending applications and licenses are valid and in good standing and assignable to Grace and no patent application or patent of Zonolite or any Wholly Owned Subsidiary is involved in any interference proceeding. No licenses, sub-licenses, covenants or agreements have been granted or entered into by Zonolite in respect of such patents, trade-marks, trade names, brand names, copyrights or licenses except those described on the list delivered to Grace by Zonolite pursuant to Section 8 (m) of this Agreement. Zonolite and each Wholly Owned Subsidiary validly owns or is validly licensed under all patents, patent applications, trade-marks, trade names, brand names, inventions, processes, know-how, trade secrets and copyrights which are necessary for the conduct of its business as now conducted and all such rights of Zonolite are valid and assignable to Grace in good standing, and free and clear of all liens and encumbrances of any nature whatsoever and have not been challenged in any way. The operations of Zonolite and of each Wholly Owned Subsidiary, the manufacture, use and sale by them of their products, the use by them of their machinery, equipment and processes, the use of their products by their customers for the purpose for which sold, and the use or publication by them of their patents, trade-marks, trade names, brand names and advertising, technical or other literature do not involve infringement or claimed infringement of any United States patent, trade-mark, trade name or copyright.

(m) Zonolite has delivered to Grace a true and complete list (certified by the President of Zonolite) of all of the following contracts, agreements, leases, licenses, plans, arrangements or commitments to which Zonolite or any Wholly Owned Subsidiary is a party or by which Zonolite or any Wholly Owned Subsidiary is in any way affected or bound:

(i) All contracts, agreements or commitments in respect of the sale of products or services, or for the purchase of raw materials, supplies or other products or utilities, other than contracts or commitments involving payments or receipts by Zonolite or any Wholly Owned Subsidiary of less than $5,000 and terminable within six months from the date hereof;

(ii) All sales agency or distributorship agreements or franchises;

(iii) All collective bargaining agreements, union agreements, employment agreements or agreements providing for the services of an independent contractor;

(iv) All profit sharing, pension, stock option, retirement, bonus or other employee benefit plans, agreements, arrangements or commitments, whether or not legally binding;

(v) All contracts, agreements, commitments or licenses relating to patents, trade-marks, trade names, brand names, copyrights, inventions, processes, know-how, or trade secrets;

(vi) All leases or other contracts, agreements or commitments relating to or affecting real property or any interest therein (including but not limited to, oil, gas, or mineral interests);

(vii) All mortgages, pledges, conditional sales or title retention agreements, equipment obligation, lease and lease purchase agreements;

(viii) All contracts, agreements and commitments involving payment by or to Zonolite or any Wholly Owned Subsidiary of more than $25,000, or not terminable within six months from the date hereof or otherwise materially affecting the financial or other condition, business or prospects of Zonolite.

All of said contracts, agreements, leases, licenses and commitments (other than those called for by clause (iv) above) are valid, binding and in full force and effect and there is no existing default thereunder. Those contracts, agreements, leases, licenses and commitments to which Zonolite is a party are assignable to Grace (other than those called for by clause (iv) above). The copies of the documents described in the aforesaid list which have been delivered by Zonolite to Grace are true and complete and include all amendments, supplements or modifications thereto.

(n) Zonolite has delivered to Grace a true and complete list (certified by the Treasurer of Zonolite) showing:

9

(i) The name of each bank in which Zonolite has an account or safe deposit box and the names of all persons authorized to draw thereon or to have access thereto;

(ii) The names of all persons, firms or corporations, if any, holding general or special powers of attorney from Zonolite and a summary statement of the terms thereof.

(o) There are no suits, actions, claims, investigations by any governmental body, or legal, administrative or arbitration proceedings pending or threatened against or affecting Zonolite or any Wholly Owned Subsidiary or any of the properties, assets or business of Zonolite or any Wholly Owned Subsidiary, or to which Zonolite or any Wholly Owned Subsidiary is or might become a party and neither Zonolite nor any officer of Zonolite knows of any basis or grounds for any such suit, action, claim, investigation or proceeding. There is no outstanding order, writ, injunction or decree of any court, governmental agency or arbitration tribunal against or affecting Zonolite or any Wholly Owned Subsidiary, or the properties, assets or business of Zonolite or any Wholly Owned Subsidiary.

(p) Zonolite has delivered to Grace a true and complete list (certified by the President of Zonolite) showing all insurance policies (giving the insurer, the amount of the coverage, the type of insurance, and the policy number) maintained by Zonolite and each Wholly Owned Subsidiary on its properties, assets, business and personnel. Zonolite has delivered to Grace copies of all policies referred to in said list and will keep all such insurance and each of the policies or renewals thereof relating thereto in full force and effect until the Closing, at which time Zonolite will, at Grace's option, assign to Grace all such policies issued to Zonolite, if any, as Grace specifies. Neither Zonolite nor any Wholly Owned Subsidiary is in default with respect to any provision contained in such insurance policies, nor has it failed to give any notice or present any claim thereunder in timely fashion.

(q) Zonolite and each Wholly Owned Subsidiary has all licenses and permits (federal, state and local) necessary to conduct the businesses it conducts and such licenses and permits are in full force and effect. No violations are or have been recorded in respect of such licenses or permits or any of them, and there is pending or threatened no proceeding looking toward the revocation or limitation of any of said licenses or permits. Zonolite and each Wholly Owned Subsidiary has complied with all laws, rules, regulations and orders applicable to its business and to the purchase, distribution and sale of its products.

(r) All notes, accounts and bills receivable of Zonolite and of each Wholly Owned Subsidiary shown on its Balance Sheet and all notes, accounts and bills receivable acquired by it subsequent to its Balance Sheet Date have arisen in the ordinary course of business and have been collected or are collectible in the aggregate recorded amounts thereof, less the applicable reserves set up on the books of Zonolite or such Wholly Owned Subsidiary.

(s) The inventories of Zonolite and of each Wholly Owned Subsidiary shown on its Balance Sheet and the inventories acquired by it subsequent to its Balance Sheet Date consist of items of a quality and quantity usable and salable in the normal course of its business, and the value of obsolete materials and materials below standard quality has been written down on its books of account to realizable market value, or adequate reserves have been provided therefor, and the values at which such inventories are carried reflect the customary inventory valuation policy consistently applied by Zonolite and each of the Wholly Owned Subsidiaries of stating inventory at the lower of cost or estimated realizable market value, on a first-in, first-out basis, all in accordance with generally accepted accounting principles.

(t) The execution and delivery of this Agreement by Zonolite and the performance of the transactions contemplated herein have been duly and validly authorized by the Board of Directors of Zonolite, subject to the approval by the stockholders of Zonolite, and, upon approval by the favorable vote of the holders of two-thirds ($\frac{2}{3}$) of the whole number of shares of Zonolite common stock then outstanding given at a meeting duly called, convened and held for such purpose, this

Agreement will have been duly and validly authorized by all necessary corporate action and will be binding upon and enforceable against Zonolite in accordance with its terms.

(u) Neither Zonolite nor any Wholly Owned Subsidiary is in default, or alleged to be in default, under any agreement, contract, lease, commitment, instrument or obligation and no other party to any contract, agreement, lease, commitment or instrument to which Zonolite or any Wholly Owned Subsidiary is a party is in material default thereunder.

(v) Zonolite has delivered to Grace all current financial reports showing the assets of each employee pension, retirement, profit-sharing, bonus and other welfare or benefit plan of Zonolite, and of each Wholly Owned Subsidiary, a statement of the estimated current annual cost and any past service cost of each such plan, current reports by a qualified actuary on each such plan the cost of which is determined by actuarial methods, a statement of the extent to which such cost and any liability of Zonolite and of each Wholly Owned Subsidiary under each such plan has been funded and with respect to each such funded amount which constitutes a separate trust fund under any such plan, a currently effective United States Internal Revenue Service ruling or determination letter holding such trust to be exempt from Federal income tax; there has been no subsequent amendment of any such plan or trust which might affect the current validity of any such ruling or determination letter.

(w) Zonolite has delivered to Grace a statement (certified by the President of Zonolite) setting forth the name and current annual salary of each director of Zonolite and of each Wholly Owned Subsidiary and of each officer and employee thereof whose current annual salary is $10,000 or more, and the profit-sharing, bonus, or other form of compensation (other than salary) paid or payable to or for the benefit of each such person for the immediately preceding fiscal year of Zonolite or of any Wholly Owned Subsidiary.

(x) No representation or warranty by Zonolite in this Agreement, or in any statement (including financial statements), certificate or other instrument furnished to Grace pursuant hereto, or in connection with the transactions contemplated hereby, contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact necessary to make the statements contained herein or therein not misleading.

9. *Representations and Warranties by Grace.* Grace represents and warrants to Zonolite as follows:

(a) Grace is a corporation duly organized, validly existing and in good standing under the laws of the State of Connecticut. The copy of the Amendment to its Certificate of Incorporation dated May 14, 1962 (certified by the Secretary of State of Connecticut) which has been delivered to Zonolite is true, complete and correct.

(b) As of the close of business October 31, 1962, the outstanding capital stock of Grace consisted of 40,000 shares of Preferred Stock, par value $100 per share, 48,132 shares of Class A Preferred Stock, par value $100 per share, 37,951 shares of Class B Preferred Stock, par value $100 per share, and 10,521,116 shares of Common Stock, par value $1 per share.

(c) Grace has delivered to Zonolite copies of the following financial statements:

(i) Consolidated Balance Sheet of Grace and subsidiary companies as at December 31, 1961, and Statements of Consolidated Income and Consolidated Capital Surplus and Retained Earnings for the year ended December 31, 1961, certified by Messrs. Price Waterhouse & Co., independent accountants.

(ii) Third Quarter Report dated November 5, 1962 containing unaudited results of the nine month period ended September 30, 1962.

The above certified Consolidated Balance Sheet and Statements of Consolidated Income and Consolidated Capital Surplus and Retained Earnings are true and complete and present fairly the financial position of Grace and its consolidated subsidiary companies at December 31, 1961

11

and the results of their operations for the year in conformity with generally accepted accounting principles applied on a basis consistent with that of the preceding year.

(d) Since December 31, 1961 there has not been any material adverse change in the condition (financial or otherwise) or properties, assets, liabilities, business or prospects of Grace.

(e) The shares of Grace common stock deliverable pursuant to this Agreement, when issued and delivered as herein provided, will be validly issued and outstanding shares of Grace common stock, fully paid and non-assessable and duly authorized for listing on the New York Stock Exchange upon official notice of issuance.

(f) The execution and delivery of this Agreement by Grace and the performance of the transactions contemplated herein have been duly and validly authorized by all necessary corporate action.

(g) The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby will not result in any breach of any of the terms or conditions of, or constitute a default under, the Certificate of Incorporation of Grace, or any commitment, mortgage, note, bond, indenture, contract, agreement, license or other instrument or obligation to which Grace is now a party or by which Grace may be bound or affected.

(h) Grace has no present intention of reselling or making any other disposition of the Zonolite Assets in such a manner as to cause the consummation of this Agreement not to constitute a reorganization as defined in Section 368(a)(1)(C) of the Internal Revenue Code or to alter the tax deferred nature of the transaction as stated in Section 15(e) hereof.

(i) No representation or warranty by Grace in this Agreement, or in any statement (including financial statements), certificate or other instrument furnished to Zonolite pursuant hereto, or in connection with the transactions contemplated hereby, contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact necessary to make the statements contained herein or therein not misleading.

10. *Meeting of Stockholders of Zonolite and Liquidation of Zonolite.* Zonolite will duly call, give notice of and hold a meeting of its stockholders on or before March 4, 1963 for the purpose of authorizing (i) the sale, conveyance, assignment, transfer and delivery of the Zonolite Assets, to Grace upon the terms and conditions provided herein, (ii) the voluntary dissolution of Zonolite following the distribution to its stockholders of shares of Grace common stock in complete liquidation of Zonolite, and (iii) an amendment to Zonolite's Articles of Incorporation to change Zonolite's name at or after the Closing to one which does not include the name "Zonolite" or any variant thereof. As promptly as practicable after the Closing, Zonolite shall be dissolved and Zonolite in complete winding up and liquidation of Zonolite, will distribute to each holder of Zonolite common stock, in exchange for and upon surrender for cancellation of his certificate or certificates for shares of Zonolite common stock, Grace common stock at the rate of one share of Grace common stock for each four shares of Zonolite common stock represented by the certificate or certificates so surrendered by him (subject to adjustment as a result of the occurrence of events referred to in the last paragraph of Section 7 hereof). In order to effect such distribution, Zonolite will deliver to a bank or trust company as agent for the Zonolite stockholders (the "Exchange Agent") selected by Zonolite prior to the Closing and satisfactory to Grace, the certificates for shares of Grace common stock delivered to Zonolite as provided for in this Agreement. In accordance with an agreement to be entered into between the Exchange Agent and Zonolite, in form and substance satisfactory to Grace, the Exchange Agent shall distribute said Grace common stock to Zonolite's stockholders on the basis hereinabove provided.

Grace shall not be obligated to issue any certificates representing fractional shares of Grace common stock in connection with the aforesaid distribution. Instead, Zonolite shall make appropriate arrangements with the Exchange Agent, in form and substance satisfactory to Grace, for the purchase or sale, for the accounts of Zonolite stockholders entitled to fractional interests, of fractional interests in Grace common stock. The expenses of the Exchange Agent, including any transfer taxes incurred upon the sale of fractional interests for the accounts of Zonolite stockholders, shall be subtracted from the proceeds of such sales, and the net proceeds shall be remitted by the Exchange Agent to such Zonolite stockholders.

12

Zonolite will not dispose of any shares of Grace common stock delivered pursuant to this Agreement except as provided in this Agreement.

At or promptly after the Closing, Zonolite will take all such action as may be required to change its name to one which does not include the name "Zonolite" or any variant thereof; and from and after the Closing, Zonolite will not engage in any business or other activity except as required by this Agreement and as required to complete the liquidation or dissolution of Zonolite as provided for in this Agreement.

Zonolite covenants and agrees that it will take all such action in connection with its dissolution, winding up and complete liquidation so as to carry out a tax-free reorganization within the meaning of Section 368(a)(1)(C) of the United States Internal Revenue Code of 1954.

11. *Conduct of Zonolite Business Prior to Closing.* Zonolite covenants and agrees that pending the Closing:

(a) The business of Zonolite, each Wholly Owned Subsidiary and each Subsidiary will be conducted only in the ordinary course.

(b) No change will be made in the Articles of Incorporation or By-Laws of Zonolite, any Wholly Owned Subsidiary or any Subsidiary unless first approved in writing by Grace.

(c) No change will be made in the authorized or issued common or capital stock of Zonolite, its Wholly Owned Subsidiaries, or its Subsidiaries nor shall any rights, warrants or options relating thereto be issued or granted, provided, however, that additional shares of common stock of Zonolite may be issued upon exercise of employee restricted stock options referred to in Section 13 hereof.

(d) No dividend or other distribution or payment will be declared, set aside, paid or made on or in respect of the common or capital stock of Zonolite nor will Zonolite directly or indirectly redeem, retire, purchase or otherwise acquire any of such stock, except that if between the date hereof and the Closing there shall occur a record date for the determination of holders of record of Grace common stock entitled to receive a cash dividend on Grace common stock Zonolite may declare and pay on outstanding Zonolite common stock a cash dividend per share equal to one-quarter ($\frac{1}{4}$) of said cash dividend per share payable on Grace common stock.

(e) Except as otherwise requested by Grace, Zonolite will use its best efforts to preserve the business organizations of Zonolite, each Wholly Owned Subsidiary and each Subsidiary intact and to keep available to Grace the services of the present officers, employees, and agents of Zonolite, the Wholly Owned Subsidiaries and the Subsidiaries. Zonolite will use its best efforts to preserve for Grace the good will of suppliers, customers, distributors and others having business relations with Zonolite, the Wholly Owned Subsidiaries and the Subsidiaries.

(f) Except with Grace's prior written consent, no increase will be made in the compensation or rate of compensation or commissions payable or to become payable by Zonolite or any Wholly Owned Subsidiary to any officer, director, salaried employee earning more that $10,000 per annum, salesman or agent, nor will there be made any general increase in compensation or rate of compensation payable or to become payable to hourly employees or salaried employees earning $10,000 per annum or less ("general increase" shall have the meaning set forth in Section 8(h)(iv) of this Agreement) and no bonus, profit sharing or other extraordinary compensation shall be paid by Zonolite or any Wholly Owned Subsidiary, nor shall any bonus, profit sharing, retirement, pension or similar plan, agreement or arrangement heretofore adopted or entered into by Zonolite or any Wholly Owned Subsidiary be amended, modified or changed in any respect nor shall any new bonus, profit sharing, retirement, pension or similar plan, agreement, or arrangement be adopted or entered into by it, provided, however, that Zonolite may make distributions, with respect to its fiscal year ending March 31, 1963, under its bonus plan for officers and employees in accordance with practices followed in prior years and in an aggregate amount not exceeding 10% of Zonolite's earnings before taxes for said fiscal year ending March 31, 1963 and under its management incentive plans for managers, plant superintendents, salesmen and certain other employees in accordance with practices followed in the past and in an aggregate amount consistent with amounts paid in prior years.

13

(g) Except with Grace's prior written consent, no contract, agreement, obligation or commitment will be entered into or assumed by or on behalf of Zonolite or any Wholly Owned Subsidiary, except for normal and ordinary contracts, agreements, obligations or commitments not involving payments or receipts of more than $25,000 in any single case for the purchase of raw materials, supplies or other products or utilities or for the sale of products of Zonolite or a Wholly Owned Subsidiary. Except with Grace's prior written consent, Zonolite or any Wholly Owned Subsidiary will not enter into or assume any mortgage, pledge, conditional sale or other title retention agreement, lien, encumbrance or charge of any kind upon any of its properties and assets including its notes, accounts and bills receivable whether now owned or hereafter acquired, or create or assume any obligation for borrowed money, or make any loans or advances to or assume, guarantee, endorse or otherwise become liable with respect to the obligations, stock or dividends of any person, firm, association, or corporation or purchase or otherwise acquire any stocks, bonds or other securities of any person, firm, association or corporation or sell, lease, abandon, or otherwise dispose of any of its real property or any machinery, equipment or other operating properties.

(h) No change will be made affecting the banking and safe deposit arrangements or in the powers of attorney referred to in Section 8(n) hereof.

(i) Zonolite and the Wholly Owned Subsidiaries each will duly and timely file all reports or returns required to be filed with federal, state, local and other authorities and will promptly pay all federal, state and local tax assessments and governmental charges lawfully levied or assessed upon it or its properties or upon any part thereof, and will duly observe and conform to all lawful requirements of any governmental authority relative to its properties or to the operation and conduct of its businesses and to all covenants, terms and conditions upon or under which any of its properties are held.

(j) All buildings, offices, shops and other structures and all machinery, tools, equipment, fixtures and other property of Zonolite and its Wholly Owned Subsidiaries will be kept and maintained in good condition, repair and working order.

(k) Zonolite and its Wholly Owned Subsidiaries will continue to maintain in full force and effect all policies of insurance now in effect.

(l) Zonolite, the Wholly Owned Subsidiaries and the Subsidiaries will not merge, amalgamate or consolidate with any other corporation or acquire all or substantially all of the business or assets of any other person, firm, association or corporation.

(m) Zonolite, the Wholly Owned Subsidiaries and the Subsidiaries shall give, from and after the date hereof, to Grace and to Grace's counsel, accountants, engineers and other representatives, full access during normal business hours throughout the period prior to the Closing to all of their plants, offices, properties, books, contracts, commitments, records and affairs so that Grace may inspect and audit them and will furnish to Grace copies (certified, if requested) of all documents and all such information concerning Zonolite's, each Wholly Owned Subsidiary's and each Subsidiary's properties and affairs as Grace may reasonably request.

12. *Agreement From Certain Zonolite Stockholders.* Zonolite shall obtain from such of its stockholders as may be specified by Grace a written instrument, in form and substance satisfactory to Grace and its counsel, to the effect that such person covenants and agrees that he will not at any, time or times, directly or indirectly, offer, sell, pledge, transfer, or otherwise dispose of the Grace common stock or any portion thereof which he is to receive on the liquidation of Zonolite (or solicit any offers to buy, purchase, or otherwise acquire or to take a pledge of any of said stock) if under the Securities Act of 1933, as amended, and the applicable rules and regulations (including Rule 133) of the Securities and Exchange Commission, such person would be deemed to be an underwriter or to be engaged in a distribution with respect to such shares or Grace would for any reason be required to register the Grace common stock under the Securities Act of 1933, as amended.

14

to Grace true and complete ( es of all stock options granted by Zonc   to its employees, and of all plans relating thereto, pursuant to which said employees have been granted employee restricted stock options to purchase shares of Zonolite common stock. Grace agrees that, subject to the prior approval of its stockholders duly given, it will grant to each of said employees a stock option, in substitution for said employee's Zonolite stock option, to purchase that number of full shares of Grace common stock determined by dividing by four (4) the number of shares of Zonolite common stock as to which said employee shall not have exercised his Zonolite stock option at the time of the Closing at a price per share of Grace common stock equal to the price per share of Zonolite common stock under said employee's Zonolite stock option (as adjusted for stock dividends, if any) multiplied by four (4), it being the intent of the parties to this Agreement to effect a substitution of options pursuant to Section 421(g) of the Internal Revenue Code of 1954. The Grace stock option granted to each of said employees, to the extent appropriate, shall otherwise contain substantially the same terms and conditions as his Zonolite stock option.

Grace agrees to submit to its stockholders for their approval at the next annual meeting of such stockholders to be held on May 10, 1963 a proposal authorizing the grant of the Grace stock options hereinabove provided for to the employees of Zonolite and Grace agrees that its management will recommend the adoption of such proposal to its stockholders.

14. *Conditions Precedent to Grace's Obligations.* All obligations of Grace under this Agreement are subject, at Grace's option, to the fulfillment, prior to or at the Closing, of each of the following conditions:

(a) The stockholders of Zonolite representing at least two-thirds ($\frac{2}{3}$) of the whole number of shares of Zonolite common stock then outstanding shall have voted in favor of the proposition or resolution to sell the Zonolite Assets to Grace as herein provided at the meeting of stockholders of Zonolite referred to in Section 10.

(b) All representations and warranties of Zonolite contained in this Agreement or in any deed, certificate, statement, or other document delivered pursuant to the provisions hereof or in connection with the transactions contemplated hereby shall be true and accurate in all material respects as of the date when made and shall be deemed to be made again at the time of the Closing and shall then be true in all material respects.

(c) Zonolite shall have performed and complied with all covenants, agreements and conditions required by this Agreement to be performed or complied with by it prior to or at the Closing.

(d) Zonolite shall have delivered to Grace a certificate of the President and Treasurer of Zonolite, dated the date of Closing, certifying to the fulfillment of the conditions set forth in Section 14(a), (b) and (c) hereof;

(e) Zonolite shall have delivered to Grace an opinion of its counsel, Messrs. Bishop, Burdett, Falasz & Ericson of Chicago, Illinois, dated the date of the Closing, in form and substance satisfactory to Grace, that:

(i) The corporate existence, foreign qualifications and good standing and the corporate power and authority of Zonolite, the Wholly Owned Subsidiaries, and the Subsidiaries are as represented and warranted in Section 8(a) and 8(c) hereof.

(ii) The outstanding capital stock of Zonolite, the Wholly Owned Subsidiaries and the Subsidiaries is duly issued and outstanding, fully paid and non-assessable.

(iii) Such counsel does not know or have any reason to believe that Zonolite, any Wholly Owned Subsidiary or any Subsidiary is a party to or affected by any pending suit, action, claim, investigation by any governmental body, or legal, administrative or arbitration proceedings or that any such suit, action, claim, proceeding or investigation is threatened to which either Zonolite, any Wholly Owned Subsidiary or any Subsidiary might become a party or which might affect its properties, business or prospects.

15

(iv) Such counsel does not know or have any reason to believe that any representation or warranty set forth or contained in this Agreement or in any written statement, certificate, deed or other document delivered pursuant hereto or in connection with the transactions contemplated hereby is false in any material respect, or that any statement of fact made by Zonolite herein or in any written statement, certificate, deed, or other document furnished to Grace pursuant hereto or in connection with the transactions contemplated hereby contains any untrue statement of a material fact or omits to state any material fact necessary in order to make the statements herein or therein contained not misleading.

(v) Zonolite has the corporate power and authority to sell, assign, convey, transfer and deliver the Zonolite Assets as herein provided; all legal and corporate proceedings necessary to be taken by Zonolite or its stockholders in connection with the transactions provided for by this Agreement and necessary to make the same effective have been duly and validly taken; and this Agreement has been duly and validly authorized, executed and delivered by Zonolite and constitutes a valid and binding obligation of Zonolite, enforceable in accordance with its terms.

(f) Grace shall have received such legal opinions, title insurance (or commitments therefor) or other evidence, in form and substance satisfactory to it and its counsel, as it may deem necessary to establish that:

(i) As of the Closing, the real and personal property titles of Zonolite, each Wholly Owned Subsidiary and each Subsidiary are as represented in Section 8(k) hereof, subject only to the exceptions provided for therein, and

(ii) the instruments of sale, conveyance, transfer and assignment delivered to Grace at the Closing are valid in accordance with their terms, proper in form and substance to accomplish their intended purpose and effectively vest in Grace good and marketable title of the character stated in Section 8(k) hereof, to the real property referred to in said Section 8(k) and all right, title and interest of Zonolite in and to the other assets, properties, and business of Zonolite, as contemplated by this Agreement.

(g) All actions, proceedings, instruments and documents required to carry out this Agreement, or incidental thereto and all other related legal matters, shall have been approved by F. Franklin Moon, Esq., General Counsel of Grace.

(h) Zonolite shall have delivered to Grace an employment contract signed by Mr. Joseph A. Kelley, substantially in the form of that heretofore delivered to Zonolite and initialled by Mr. Kelley and by an officer of Grace providing, among other terms and conditions, that Mr. Kelley shall devote his entire time and attention to the affairs of Grace for a period of five years from the date of the Closing hereunder.

(i) Grace shall have received from counsel selected by it an opinion that the issuance and delivery of the Grace common stock to Zonolite and the distribution of said stock to Zonolite's stockholders are, under the circumstances contemplated by this Agreement, exempt from registration under the Securities Act of 1933.

(j) The Grace common stock to be delivered to Zonolite hereunder shall have been authorized by the New York Stock Exchange for listing upon official notice of issuance.

(k) Grace shall have received a permit from the Commissioner of Corporations of the State of California authorizing the issuance and/or delivery of Grace common stock to the stockholders of Zonolite residing in the State of California.

(l) Grace shall have received either an opinion of F. Franklin Moon, Esq., General Counsel of Grace or rulings from the Internal Revenue Service, satisfactory to said F. Franklin Moon, to the effect that the consummation of this Agreement will constitute a reorganization as defined in Section 368(a)(1)(C) of the Internal Revenue Code of 1954 and that no gain will be recognized upon the receipt of Grace common stock by Zonolite in exchange for the transfer of the Zonolite Assets and assumption of Zonolite liabilities pursuant to this Agreement.

16

(m) No suit, action, investigation by any governmental body, or l    ; or administrative proceeding shall have been brought or shall be threatened which questions the validity or legality of the transaction contemplated hereby.

Grace covenants and agrees that it will use its best efforts to fulfill, comply with and satisfy all of the conditions set forth in Subsections (i), (j), (k) and (l) of this Section 14.

15. *Conditions Precedent to Zonolite's Obligations.* All obligations of Zonolite under this Agreement are subject, at Zonolite's option, to the fulfillment, prior to or at the Closing, of each of the following conditions:

(a) The stockholders of Zonolite representing at least two-thirds (⅔) of the whole number of shares of Zonolite common stock then outstanding shall have voted in favor of the proposition or resolution to sell the assets of Zonolite to Grace as herein provided at the meeting of stockholders of Zonolite referred to in Section 10.

(b) All representations and warranties of Grace contained in this Agreement or in any deed, written certificate, statement, or other document delivered pursuant to the provisions hereof or in connection with the transactions contemplated hereby shall be true and accurate in all material respects as of the date when made and shall be deemed to be made again at the time of the Closing and shall then be true in all material respects.

(c) Grace shall have performed and complied with all covenants, agreements and conditions required by this Agreement to be performed or complied with by it prior to or at the Closing.

(d) Grace shall have delivered to Zonolite an opinion of F. Franklin Moon, Esq., General Counsel of Grace, dated the date of the Closing, in form and substance satisfactory to Zonolite, that:

(i) The corporate existence and good standing of Grace are as represented and warranted in Section 9(a) hereof.

(ii) The shares of Grace common stock to be delivered pursuant to this Agreement will, when issued and delivered in accordance with the terms hereof, be duly and validly issued, fully paid and non-assessable.

(iii) The shares of Grace common stock to be delivered pursuant to this Agreement are duly authorized for listing on the New York Stock Exchange upon official notice of issuance.

(iv) This Agreement has been duly and validly authorized, executed and delivered by Grace and constitutes a valid and binding obligation of Grace, enforceable in accordance with its terms and that all legal and corporate proceedings necessary to be taken by Grace in connection with the transactions provided for by this Agreement and necessary to make the same effective have been duly and validly taken.

(v) The issuance and delivery of the Grace common stock to Zonolite and the distribution of said stock to Zonolite's stockholders are, under the circumstances contemplated by this Agreement, exempt from registration under the Securities Act of 1933.

(e) Zonolite shall have received either an opinion of its tax counsel or rulings from the Internal Revenue Service, satisfactory to Zonolite's tax counsel, to the effect that the consummation of this Agreement will constitute a reorganization as defined in Section 368(a)(1)(C) of the Internal Revenue Code of 1954 and that no gain will be recognized upon the receipt of Grace common stock (a) by Zonolite in exchange for the transfer of the Zonolite Assets and assumption of Zonolite liabilities pursuant to this Agreement or (b) by the stockholders of Zonolite in exchange for their shares of Zonolite common stock on the liquidation of Zonolite, except for such gain or loss recognized with respect to fractional interests which may be sold by the Exchange Agent as agent for such stockholders.

(f) No suit, action, investigation by any governmental body, or legal or administrative proceeding shall have been brought or shall be threatened which questions the validity or legality of the transaction contemplated hereby.

Zonolite covenants and agrees that it will use its best efforts to fulfill, comply with and satisfy all of the conditions set forth in Subsections (a) and (e) of this Section 15.

17

16. *Condition Precedent to this Agreement.* Anything herein to the contrary notwithstanding (including the fact that the stockholders of Zonolite representing at least two-thirds ($\frac{2}{3}$) of the whole number of shares of Zonolite common stock then outstanding shall have voted in favor of the proposition or resolution to sell the Zonolite Assets to Grace as herein provided at the meeting of stockholders of Zonolite referred to in Section 10), this Agreement may be terminated and the sale herein provided for may be abandoned by either the Board of Directors of Zonolite or the Board of Directors of Grace if the number of shares of the outstanding Zonolite common stock owned by stockholders of Zonolite who, pursuant to Montana General Corporation Law, have given valid written notice to Zonolite that they do not assent to said sale and demand payment for the value of their shares and have made due application in the district court of the county in Montana where the principal place of business of Zonolite is situated to have the value of their Zonolite common stock fixed and appraised shall be more than 5% of the whole number of shares of Zonolite common stock then outstanding.

17. *Grace's Covenant.* Grace covenants and agrees that in the event that the Closing hereunder shall not occur, Grace shall hold in confidence all trade secrets and confidential information, if any, disclosed to it by Zonolite pursuant to or in connection with the transactions provided for in this Agreement except that nothing herein shall require Grace to keep in confidence any information already known to Grace prior to Zonolite's disclosure thereof, any information which may be disclosed to Grace from other lawful sources or any information which at any time hereafter shall be published through no fault on the part of Grace.

18. *Retirement Plans.* Zonolite and Grace shall, before and after the Closing, take all such action as may be necessary, convenient, or appropriate in the opinion of Grace, to transfer to Grace all of the rights, and to cause Grace to assume all of the obligations of Zonolite under its retirement or pension plans and the trusts related thereto (including the adoption of such amendments to such plans and trusts and such action as may be necessary to secure approvals of the Internal Revenue Service which may be required or deemed advisable), to the end that the plans shall continue subsequent to the transfer of Zonolite's properties, assets and rights to Grace and that Grace shall be substituted for Zonolite as the employer under the plans.

19. *Nature of Statements and Non-Survival of Representations and Warranties.* All statements of fact contained in any written statement, certificate or other document delivered by or on behalf of Zonolite or Grace pursuant to this Agreement or in connection with the transactions contemplated hereby shall be deemed representations and warranties by Zonolite or Grace, respectively, hereunder. The representations and warranties made by Zonolite or Grace herein or in any such written statement, certificate or other document shall expire with, be terminated and extinguished by the Closing.

20. *Expenses of the Parties.* All expenses incurred by or on behalf of the parties hereto including, without limitation, all fees and expenses of agents, representatives, counsel and accountants employed by the parties hereto in connection with the authorization, preparation, execution and performance of this Agreement, shall be borne solely by the party who shall have incurred the same and the other party shall have no liability in respect thereof.

21. *Brokers.* Each party to this Agreement represents and warrants that no broker or finder has acted for it in connection with this Agreement or the transactions contemplated by this Agreement and that no broker or finder is entitled to any brokerage or finder's fee or other commission in respect thereof based in any way on agreements, arrangements, or understandings made by it.

22. *Notices.* All notices, requests, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given if delivered personally, given by prepaid telegram or mailed first-class, postage prepaid, registered or certified mail as follows:

If to Grace—
W. R. Grace & Co.
7 Hanover Square
New York 5, N. Y.

*Attention: Franklin Moon, Secretary*

18

If to Zonolite—
    ZONOLITE COMPANY
    135 South LaSalle Street
    Chicago 3, Illinois

    *Attention: Joseph A. Kelley, President*

23. *Interpretation; Section Headings.* This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York. The section and subsection headings contained herein are for reference purposes only, and shall not in any way affect the meaning or interpretation of this Agreement.

24. *Contents of Agreement; Parties in Interest; Amendments.* This Agreement sets forth the entire agreement and understanding of the parties in respect to the transactions contemplated hereby, and supersedes all prior agreements, arrangements and understandings relating to the subject matter hereof. No representation, promise, inducement or statement of intention has been made by Zonolite or Grace which is not embodied in this Agreement, any exhibits or schedules hereto or the written statements, certificates, or other documents delivered pursuant hereto or in connection with the transactions contemplated hereby, and neither Zonolite nor Grace shall be bound by or liable for any alleged representation, promise, inducement or statement of intention not so set forth. All the terms, provisions and conditions of this Agreement shall be binding upon, and inure to the benefit of and be enforceable by the parties hereto and their respective successors, but this Agreement and the rights and obligations hereunder shall not be assignable by either party. This Agreement may be amended, modified, superseded or cancelled, and any of the terms, provisions or conditions hereof may be waived, only by a written instrument executed by both Grace and Zonolite acting by their respective officers thereunto duly authorized. The failure of any party at any time or times to require performance of any provision hereof shall in no manner affect the right to enforce the same. The waiver by any party of any breach of any provision herein shall not be construed to be a waiver of any succeeding breach of such provision itself by such party.

25. *Counterparts.* This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first above written.

W. R. GRACE & CO.

By _____
           *Executive Vice President*

Attest:

_____
  *Assistant Secretary*

ZONOLITE COMPANY

By _____
           *President*

Attest:

_____
  *Secretary*

19

STATE OF NEW YORK  } ss.:
COUNTY OF NEW YORK }

On the *16th* day of January, 1963, before me personally came *J. C. Griswold*
to me known, who, being by me duly sworn, did depose and say that he resides at
*655 Park Avenue   New York 21, N Y*                              ;
that he is the Executive Vice President of W. R. GRACE & Co., the corporation described in and which
executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to
said instrument is such corporate seal; that it was so affixed by order of the board of directors of said
corporation, and that he signed his name thereto by like order.

*Jacqueline L. Corine*
Notary Public

JACQUELINE L. CORINE
Notary Public, State of New York
No. 41-0763455    Queens County
Certificate filed in New York County
Term Expires March 30, 1963


STATE OF ILLINOIS  } ss.:
COUNTY OF COOK     }

I, *L. C. Miller*, a notary public in and for said county and state, do hereby
certify that *J. A. Kelley*, President of the above-named ZONOLITE COMPANY, per-
sonally known to me to be the same person whose name is subscribed to the foregoing instrument as
such President of said corporation, appeared before me this day in person, and acknowledged that he
signed, sealed and delivered the said instrument and caused the corporate seal of said corporation to
be affixed thereto, pursuant to authority given by the board of directors of said corporation, as the free
and voluntary act of said ZONOLITE COMPANY, and as his own free and voluntary act as such President,
for the uses and purposes therein set forth.

Given under my hand and official seal this *17th* day of January, 1963.

*L. C. Miller*
Notary Public

20