# Attachment

# Affidavit of Paul J. Norris

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No: 01-01139 (JKF) |
| | ) | |
| Debtors | ) | Jointly Administered |

**AFFIDAVIT OF PAUL J. NORRIS IN SUPPORT OF
THE DEBTORS' MOTION FOR AN ORDER AUTHORIZING, BUT NOT REQUIRING,
THE EMPLOYMENT AND RETENTION OF STATE STREET BANK AND TRUST
TO ACT AS INVESTMENT MANAGER AND FIDUCIARY OF
THE GRACE STOCK WITHIN THE GRACE SAVINGS AND INVESTMENT PLAN**

Paul J. Norris, being duly sworn, deposes and says:

1. I am Chairman, President and Chief Executive Officer of W.R. Grace & Co., a corporation organized under the laws of the State of Delaware, one of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") in these chapter 11 cases (the "Chapter 11 Cases"). I offer this Affidavit (A) in support of the Application of the Debtors for Entry of an Order Pursuant to 11 U.S.C. §§ 327(A) and 328(A) and Fed. R. Bankr. P. 2014(A), 2016 and 5002 Authorizing, But Not Requiring, the Employment and Retention of State Street Bank and Trust Company to Act as Investment Manager and Fiduciary of the Grace Stock within the Grace Savings & Investment Plan (the "Application") and (B) in response to the Court's directive to the Debtors of October 27, 2003, to consider whether the compensation of those who currently have fiduciary responsibility regarding the stock of W. R. Grace & Co. ("Grace Stock") within the Grace Savings & Investment (the "Savings Plan") should be adjusted downward if State Street is retained to assume that responsibility.

2. It is my understanding that, at present, those with "fiduciary responsibility" regarding the management of Grace Stock within the Savings Plan include certain senior officers

of the Debtors (the "Responsible Executives") and, in certain circumstances, the Debtors' Board of Directors (the "Board"), in accordance with the Employee Retirement Income Security Act of 1974 ("ERISA"). This responsibility includes determining whether Grace Stock should continue to be an investment option within the Savings Plan. The Responsible Executives include the Debtors' Chief Financial Officer and the Senior Vice President of Administration.

3. The Debtors' search for a third party to serve as the independent fiduciary for Grace Stock within the Savings Plan included consideration of whether the issues regarding fiduciary responsibility for Grace Stock could be addressed by shifting fiduciary responsibility away from the Board and the Responsible Executives to other full-time employees of the Debtors or to former employees of the Debtors. The Debtors determined that such an approach was not feasible.

4. The Debtors believe that any individual or entity assuming fiduciary liability for managing Grace Stock within the Savings Plan should satisfy certain criteria. Among the criteria that an individual or entity should possess are: (a) the experience and knowledge, or access to the support of persons who possess the experience and knowledge, necessary to manage equity investments in publicly-traded companies, preferably in stock funds within qualified retirement plans; (b) experience and knowledge, or access to the support of persons who possess experience and knowledge, regarding the requirements of ERISA that govern such investments; (c) a lack of day-to-day involvement in the decision making process with respect to the Chapter 11 Cases or the Debtors' reorganization efforts and (d) significant fiduciary liability insurance to allow for meaningful financial recovery to Savings Plan participants, should the individual or entity fail to perform the requisite fiduciary duty in an appropriate manner.

5. The Debtors believe it could be a breach of their fiduciary duty under ERISA to appoint a person as fiduciary of Grace Stock, if the person does not satisfy each of these criteria.

6. With respect to active employees, the Debtors, as a specialty chemicals and construction products company, do not employ any individuals who have the experience and knowledge set out in the first two criteria, and who are not involved on a day-to-day basis in the decision making process with respect to the Chapter 11 Cases and the Debtors' reorganization.

7. Several of the Debtors' employees expressed hesitation with respect to assuming such fiduciary responsibility, given the possibility of personal liability under ERISA, regardless of certain fiduciary liability insurance carried by the Debtors for its employees.

8. The Debtors considered approaching several former employees who have a reputation for experience and knowledge with respect to general investment principles, and who are not "insiders" with respect to the Chapter 11 Cases and the Debtors reorganization.

9. The Debtors did not actually approach any former employees, having determined that no such former employee had actually managed company stock funds within qualified plans nor had significant background in the requirements imposed by ERISA in this regard.

10. One of the principal reasons that the Debtors decided to retain State Street with regard to Grace Stock within the Savings Plan, is that State Street is backed by both significant assets and fiduciary liability insurance coverage that provides adequate coverage in this regard.

11. The Debtors believe that it is unlikely that any former employee of the Debtors would be willing to assume the possibility of personal liability as provided under ERISA in this regard, even if limited amounts of fiduciary liability insurance were available.

12. The Debtors concluded that it would not be consistent with its fiduciary duties to require any current employee, or ask any former employee, to assume responsibility for managing Grace Stock within the Savings Plan.

13. On a daily basis, each Responsible Executive is expected to perform a myriad of tasks for the Debtors. While some tasks are constant and ongoing, many others change on a regular basis as the needs of the Debtors change. The compensation of each Responsible Executive is based on the understanding that, in addition to performing certain tasks long-established as standard for his position, the Executive will also be available to perform other specific tasks as needs arise.

14. Adjustments to the compensation of the Responsible Executives as a result of changes in discreet duties and tasks as needs arise or are resolved in the normal course would not be consistent with the Debtors' compensation practices regarding senior executives. I believe that the Debtors' compensation practices in this regard are consistent with such practices at other similarly situated corporations.

15. When the Debtors' current Chief Financial Officer was retained in 1999, his employment was not expressly conditioned on assuming fiduciary responsibility for Grace Stock in the Savings Plan. He assumed that responsibility without any adjustment in compensation from the Debtors. The Senior Vice President of Administration assumed his current fiduciary responsibility with respect to Grace Stock in the Savings Plan in 1998, and he did not receive an increase in compensation from the Debtors as a result.

16. Neither of the Responsible Executives receive any compensation from any of the Debtors' employee benefit plans, in accordance with ERISA sections 406(a)(1)(C) and (D), 406(b)(1), and 408(c)(2).

17. Commencing with the filing of the Chapter 11 Cases, each of the Responsible Executives became responsible for managing significant issues related to the Chapter 11 Cases, but did not receive an increase in compensation in consideration of assuming these additional responsibilities.

18. Each Responsible Executive will be required to dedicate the time necessary to familiarize State Street with the circumstances surrounding the Debtors' Chapter 11 Cases as well as the Grace Stock within the Savings Plan, and to provide periodic updates as requested by State Street.

AFFIANT FURTHER SAYETH NOT.

Dated this _____ day of November, 2003,

_____
Paul J. Norris

SUBSCRIBED AND SWORN TO BEFORE ME
this _7_ day of _Nov_____, 2003.

_____
Notary Public

My commission expires: _9-1-06_

[Notary Seal: JANET L. DAVIS, NOTARY PUBLIC, CARROLL COUNTY, MD]

5