Exhibit T

```
               UNITED STATES BANKRUPTCY COURT
                  DISTRICT OF NEW JERSEY

IN RE:                            . Case No. 01-30135
                                  . Adv. No. 01-3065
                                  .
                                  . M.L.K. Jr. Federal Building
    G-I HOLDINGS, INC.,           . 50 Walnut Street
                                  . Newark, New Jersey 07102
                   Debtor,        .
                                  . September 30, 2003
. . . . . . . . . . . . . . . . . . 1:39 p.m.

                 TRANSCRIPT OF MOTION HEARING
              BEFORE HONORABLE ROSEMARY GAMBARDELLA
              UNITED STATES BANKRUPTCY COURT JUDGE
```

APPEARANCES:

For the Debtor:              Riker, Danzig, Scherer, Hyland &
                             Perretti LLP
                             By: J. ALEX KRESS, ESQ.
                                 MARK HALL, ESQ.
                                 DENNIS O'GRADY, ESQ.
                             Headquarters Plaza
                             One Speedwell Avenue
                             Morristown, NJ   07962

                             Weil, Gotshal & Manges
                             By: RALPH MILLER, EQ.
                                 DEBRA GOLDSTEIN, ESQ.
                             100 Crescent Court, Suite 1300
                             Dallas, TX   75201

                             Weil, Gotshal & Manges
                             By: MARTIN BIENENSTOCK, ESQ.
                             767 Fifth Avenue
                             New York, New York

Audio Operator:              Juan Filgueiras

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

FILED
JAMES J. WALDRON, CLERK
OCT 15 2003
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY_____ DEPUTY

---

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail: jjcourt@optonline.net

(609) 586-2311   Fax No.  (609) 587-3599

2

**APPEARANCES CONTINUED:**

For the Committee:              Caplin & Drysdale
                                By:  TREVOR W. SWETT, III, ESQ.
                                     MAX HEERMAN, ESQ.
                                One Thomas Circle, N.W.
                                Washington, DC  20005

                                Lowenstein Sandler, PC
                                By:  JEFFREY D. PROL, ESQ.
                                65 Livingston Avenue
                                Roseland, NJ  07068

For the Legal Representatives:  Keating, Muething & Klekamp, PLL
                                By:  KEVIN E. IRWIN, ESQ.
                                     MICHAEL L. SCHEIER, ESQ.
                                1400 Provident Tower
                                One East Fourth Street
                                Cincinnati, OH  45202

                                Saiber, Schlesinger, Satz &
                                 Goldstein, LLC
                                By:  DAVID R. GROSS, ESQ.
                                     NANCY WASHINGTON, ESQ.
                                One Gateway Center, 13th Floor
                                Newark, NJ  07102

For the IRS:                    RICHARD G. JACOBUS, ESQ.
                                U.S. Dept. of Justice
                                PO Box 227
                                Washington, DC  20044

1    THE COURT: Let me take the appearances in the G-I
2 Holdings matter.
3    MR. MILLER: Yes, Your Honor, I'm Ralph Miller here
4 for G-I Holdings with Martin Bienenstock, Katherine Turner,
5 Debra Goldstein and Mark Hall. Dennis O'Grady may also be here
6 in a few moments, Your Honor.
7    THE COURT: Okay.
8    MR. MILLER: This is on the estimation motion issue,
9 Your Honor.
10    THE COURT: Yes.
11    MR. PROL: Good afternoon, Your Honor, Jeffrey Prol,
12 Lowenstein Sandler and Trevor Swett of Caplin & Drysdale for
13 the Committee.
14    MR. IRWIN: Good afternoon, Your Honor, Kevin Irwin,
15 Your Honor, on behalf of the Legal Representatives, Mr. Jud
16 Hamlin. With me is my co-counsel, Mr. David Gross, Michael
17 Scheier and also Nancy Washington with Mr. Gross's office.
18    MR. JACOBUS: Richard Jacobus for the United States
19 on behalf of IRS. Your Honor, I'm entering an appearance
20 solely on the 2 p.m. matter.
21    THE COURT: Yes, I understand. Are there appearances
22 on -- we have everyone's appearance? Okay. The 1:30 matter
23 was for status purposes, I believe, although I suppose counsel
24 can bring me up to date since I rendered an opinion September
25 10th. I'm not necessarily advised of what's occurred since

1 then.

2          MR. MILLER: May it please the Court, Your Honor, I'm
3 Ralph Miller and on behalf of the movant on the estimation
4 motion and the Debtor, we believe that the next step in this
5 process should be the bar date hearing because we believe that
6 is a time critical matter.

7          We think the estimation process is related in some
8 sense to the bar date, particularly with regard to claim form
9 and we have proposed that we think, first of all, that the bar
10 date hearing process should be set in motion, that the Court
11 should get us a schedule and we should start working against
12 that. During that time period, Your Honor, we would like to
13 take the deposition of Dr. Peterson, their expert whom you
14 recall had some criticism of the claims form among other
15 things.

16          THE COURT: Yes.

17          MR. MILLER: There is also an expert named by the
18 Legal Representative, Dr. Wyatt. We don't know whether we need
19 his deposition or not, he is more focused on the matrix and
20 some of the numbers. We recognize that this may need to be a
21 focused deposition, we've had some meeting confers, we've made
22 a good faith effort to work this out. We recognize that Dr.
23 Peterson may be a witness on several issues. He may, for
24 example, be a witness later on the Committee's estimation
25 motion. We don't need to depose him on that issue to get what

5

1  information we would need to deal with the bar date and the
2  claim form, so we have suggested a focused deposition.
3       We don't know for certain, Your Honor, we think our
4  claims form is reasonable because it was derived from claims
5  forms that have been used in other cases but we recognize the
6  possibility that we may change the claim form slightly in our
7  proposal. We would have time to do that while we work toward
8  the bar date hearing. There may be some other modifications in
9  the proposed matrix and the process as I had said before, Your
10 Honor, we believe this is not a question of baseball
11 arbitration where the Court has to pick between the proposal of
12 party A or party B in the sense that we're trying to get
13 something that works, Your Honor, and we recognize that there
14 is some high powered experts and some talent that has ben
15 brought to bear on this and if we can learn something we will.
16 It is possible that we will be modifying the proposal of Dr.
17 Chambers some. We're going to try to do that promptly, Your
18 Honor, we think it can be done without further delay. We are
19 not going to see further document discovery at this stage, Your
20 Honor, we're not going to seek further discovery from parties
21 outside the proceeding. We heard Your Honor in your ruling and
22 we take that as guidance and so, we'd like to move on with it.
23       If there are some modifications in the process, we
24 think that they would be relevant on the estimation motion not
25 only to the claims form, but to the legal issues and to the

1  practicality of our estimation proceeding.  We suggest that we
2  ought to come to rest on this after some very limited and brief
3  discovery and at that point it might be appropriate for the
4  Court to set some hearings on some of these legal issues in
5  light of any modification of the plan which would probably be
6  sometime next year.
7           That's our vision, Your Honor.  I think the Committee
8  has a different notion of how they'd like to see it proceed but
9  we think that this is a practical solution and, again, I would
10 emphasize the importance of getting the bar date process going
11 and doing that as a first order of business.
12          THE COURT:  Mr. O'Grady, you want to enter your
13 appearance?
14          MR. O'GRADY:  Yes.  I'm sorry, Your Honor, I thought
15 this was at two o'clock.  Dennis O'Grady, Riker, Danzig,
16 Scherer, Hyland and Perretti appearing for the Debtor G-I.
17          THE COURT:  Thank you.  Let me hear from the
18 Committee or the Legal Representative.
19          MR. SWETT:  Good afternoon, Your Honor, Trevor Swett
20 for the Committee.
21          THE COURT:  Good afternoon, Mr. Swett.
22          MR. SWETT:  The difficulty, of course, with a status
23 conference at this stage of the estimation proceeding is that
24 we are on completely different coasts.  This is sort of between
25 the Mets and the Dodgers.  We have two different conceptions of

1  what estimation should be, there are some fundamental issues
2  that need to be decided so that we can all know which track we
3  ought to be on and our notion is that there is no point in
4  going down the path that the Debtor has sketched out because in
5  the end it cannot produce a lawful, comfirmable plan.
6      On the other hand, we have a well trodden path that
7  is relatively short and relatively simple that could produce an
8  estimation hearing on claims estimation in the aggregate and
9  get to an answer within, say, 120, 150 days. And it may be of
10 assistance to the Court if I describe a little bit what those
11 two paths would look like.
12     First of all, let me put a bookmark on a point that
13 is in one sense formalistic and in another sense not important.
14 Mr. Miller described the Debtor as the movant and it's true
15 they have their motion to estimate by way of liquidation under
16 a matrix, but we moved, indeed, we moved first to commence an
17 estimation under 502(c) and to do it in what I'll call the
18 Peterson style which is the way in which mass tort liabilities
19 have typically been estimated in bankruptcy in what is now a
20 substantial body of cases.
21     And, so, if we look at their track of liquidation by
22 estimation, we must refer you to the substantial briefs by
23 which we have sought, in effect, judgment on the pleadings that
24 that methodology is not lawful and can't work. They would like
25 to take a significant step down that path by having a bar date

8

1  hearing.  If Your Honor is inclined to schedule proceedings
2  towards the bar date hearing, it would be necessary to take up
3  the objections to the bar date, to the claim form and those
4  would implicate the methodology.  And so, on our way of looking
5  at it, if you're going to entertain the process they've
6  suggested, the first order of business, no matter how styled,
7  is to deal with those briefs and those legal issues.  Very
8  briefly, there's been some --
9          THE COURT:  Well, that may be.  I don't think anyone
10 would disagree that these motions may have some
11 interrelationship with each other.  The question is to get the
12 matters moving forward.  There's also clearly some, and excuse
13 me, I'm interrupting because I need to put it in context.
14         MR. SWETT:  No, that's fine.
15         THE COURT:  There's some legal issues that have
16 briefed as I understand it, which are threshold issues and
17 certainly those have to be determined one way or another.  You
18 know, whether they're parallel tracks that the estimations run
19 on along with the outstanding motion for bar date and claims
20 form, I mean that may be really a matter of the Legal Rep.
21 wanting to hear one before the other, but to me there's some
22 interrelationship of all of these issues and there's some
23 threshold legal determinations that probably this Court has to
24 make which then would assist the parties in moving forward in
25 all of these matters, so that's really what I want to try to

1 get to today.

2 MR. SWETT: We agree with that.

3 THE COURT: And I want to try to get to it in a
4 fashion and form where there can be, perhaps, more agreement
5 than difference because I think all parties on both sides want
6 to move these matters forward. The withdraw of reference
7 issues have been resolved. We know, you know, which matters
8 this Court is hearing, which matters Judge Bassler is going to
9 retain jurisdiction over, so now we have to just move these
10 calendar matters forward. So, I guess what I'd like to also
11 know is not so much to argue the estimation motions because,
12 obviously, that's for another day, but are there certain
13 threshold legal issues that the Committee or the Legal
14 Representative or even the Debtor believes the Court has to
15 make even before we get to the substance of some of these other
16 matters?

17 MR. SWETT: Allowing that the two motions both
18 pertain to estimation and are, therefore, in some sense
19 certainly related, if we look first at the Debtor's motion, the
20 legal issues going to the fundamental questions of the
21 lawfulness or not of their method, are those framed in the
22 briefs that have now been closed since early January.

23 To touch just very briefly on the nature of the
24 issues as opposed to arguing them, since what we're trying to
25 get at here is a process for breaking this stuff down and

taking it in manageable pieces, in essence, Your Honor would have to decide whether that methodology of estimating by way of liquidation individual claims under a predetermined matrix of diseases and values, is lawful. One of the objections made is that that's really not estimation, that's claim by claim liquidation which under the code ought to be treated as something different than estimation and, indeed, implicates the constitutional and statutory rights of the personal injury tort and wrongful death claimants to have their claims liquidated only by jury trial and that's a square legal issue that's been fully briefed.

THE COURT: Well, that's been raised from day one.

MR. SWETT: It has and it's sitting there ready whenever Your Honor wishes to address it, we can set it down for oral argument.

Similarly, the notion on having the matrix applied by a non-judicial of three wisemen called the Claims Liquidation Committee based upon a record that would consist of responses to what is called a proof of claim form but bears no resemblance to Form 10, implicates legal questions both under the code and under the due process clause of the Constitution of the United States because if what is happening is individual claims are being translated into dollars, then the Constitution guarantees those claimants certain rights in the adjudication of those matters and that's what it would amount to, an

11

1  adjudication.
2         Finally, there is what, if anything, is an even more
3  fundamental question which is whether the liquidation method
4  proposed by the Debtor squares with what we would regard as the
5  most basic requirement for the validity of an estimation
6  method. Is it calculated to produce a fair estimate of the
7  results it would obtain outside of bankruptcy. One way of
8  saying that is, does it respect the privacy of state law in
9  matters of tort?
10        Well, there's a nice little debate about whether the
11 existence of the federal diversity jurisdiction and the results
12 that have sometimes obtained in diversity cases case be seized
13 upon and translated into the entire universe of rules and
14 values for resolving these claims. We would say not, that's
15 not what diversity jurisdiction is about, and it certainly
16 isn't what bankruptcy jurisdiction is about. The fundamental
17 premise of bankruptcy is that you come in to resolve the
18 liabilities, but the bankruptcy jurisdiction does not transform
19 or change either the legal basis or the amount of the claims.
20 Those matters are to be decided under state law and what that
21 implies more generally is, estimation needs to be a process
22 that's reasonably calculated to arrive at numbers that are in
23 line with the numbers that would be arrived at by the claims
24 resolution processes that operate outside of bankruptcy and in
25 this case what we're talking about is the interplay of rules

1  and procedures and substantive doctrines and trial practices
2  that we call the tort system.
3  Fundamentally, the Debtor's program is intended
4  specifically not to replicate the tort system, the Debtor has
5  been fairly frank in its first day applications and affidavits
6  in saying that they have to come into bankruptcy because they
7  can't deal with the liabilities that they're being forced to
8  litigate in the tort system, they have to find a different way
9  and their liquidation method is best seen in my view as an
10 effort to construct a parallel universe to the tort system, but
11 one that operates on rules and produces values that are
12 arbitrarily being determined by the Debtor and not faithful to
13 either the concept of estimation as replicating the extra
14 bankruptcy world, or faithful to the substantive rules and
15 practices of the tort system.
16 So, those are three broad, but fundamental
17 impediments, in our view fatal impediments, to their method and
18 the issue for us today as a case management matter is, okay,
19 those issues having been framed and briefed, how do we proceed
20 to deal with them and we would recommend simply that Your Honor
21 set them down for argument before taking any substantial step
22 down the path of the Debtor's motion and that brings me to the
23 alternative which is our motion, simultaneously pending.  We
24 want to estimate claims in the aggregate and in thinking about
25 the topic that will come later today, our proposal has evolved

1  to present what we regard as the overarching question in the
2  bankruptcy case as a whole, which is who is entitled to own
3  GAF, that's what estimation in part is for, who is entitled to
4  own GAF?  We think that the creditors have that entitlement by
5  virtue of the scale of the liabilities.  And we think that
6  there is a way to cut through some of the complexities and some
7  of the, what I'll call collateral issues, to get at the heart
8  of the matter because if we're right on the facts, this Debtor
9  is underwater without regard to the category of claims that get
10 so much attention in their liquidation methodology which is
11 non-malignant claims or what they could call the claims of the
12 non-sick.  We don't accept that description but because the
13 cancer claims are so large we think that we can put that aside,
14 have that discussion later among creditors if, indeed, there is
15 no equity in the company taking account only of the cancer.
16           I can report to you as can Mr. Gross, that today
17 Judge Wolin has had a session on the estimation process in the
18 U.S.G. case and what has emerged is a cancers only estimation
19 where only claimants who had claims already on file at the time
20 of the bankruptcy petition will be required to respond to a
21 fairly simplified claim form where because that number is
22 limited, the time necessary for responding to the claim form
23 and gathering the information and because those claimants are
24 already represented by counsel, unlike the many thousands of
25 claims that have accrued since early 2001, the response time

1 can be fairly short and when those claim forms come in, the
2 notion is that the Debtor will be given the opportunity to
3 frame whatever defenses to categories of those claims it wants
4 to test, there will be a litigation process aimed at those
5 arguments asserted by the Debtor.  The results will then be
6 turned over to the valuation experts who on that basis will
7 perform their analyses and their extrapolations and the result
8 will be an estimated aggregate liability in a fairly short
9 space of time.
10         Well, we would be happy to embrace that process here
11 and we think it makes particularly good sense in this case
12 because this is a Debtor who one of the fundamental facts about
13 this Debtor is that it is owned, in terms of who its ultimate
14 stockholder is, by one gentleman, Samuel Heyman, the issue is,
15 does he have any proper stake and this kind of estimation as a
16 step towards the possibility of a creditors plan makes eminent
17 good sense from the standpoint of testing that proposition as
18 well as from the standpoint of simplifying, the cutting down
19 into manageable pieces, the number and nature of controversies
20 that we have to deal with to make progress here.  So, our
21 notion is on the one hand, the legal challenges to the Debtor's
22 liquidation method are framed and briefed and ready to be
23 heard, on the other hand, we're ready, willing and able,
24 whenever Your Honor likes, to structure a calendar for the
25 purpose of the estimation in the aggregate that we have in

1 mind.

2 So, I would urge Your Honor to find a way that allows
3 progress on both fronts because if we're correct, then in the
4 next phase of the case, Your Honor, we would hope to persuade
5 Your Honor that there's no point in devoting further attention
6 to the elaborate liquidate method that the Debtor has proposed
7 and to offer up a fairly economical, fairly short path, towards
8 the presentation of a confirmable creditors plan.

9 THE COURT: Thank you, Mr. Swett. Let me hear from
10 the Legal Representative.

11 MR. IRWIN: Good afternoon, Your Honor.

12 THE COURT: Good afternoon, Mr. Irwin.

13 MR. IRWIN: Your Honor, I would join in Mr. Swett's
14 articulation of the issues as you asked us to identify those.
15 I have a couple, just two more that I would add to that list
16 and I'll return to that in a moment, Your Honor, but we believe
17 that, and if you've had any opportunity to see the voluminous
18 pleadings we've presented to you on estimation, that there is
19 another fatal problem with the Debtor's proposal and that is
20 that it doesn't square with Section 524(g) and the Debtor's
21 stated intention, proposing a plan in this case, that would not
22 track the route that Congress has laid out for the resolution
23 of these cases. We believe, as we've said in our papers and we
24 say again to you today, is a dead end. And it is a long road
25 that we would have to travel to get to that dead end, Your

1 Honor. And so, the first steps that the Court asks about today
2 are really the questions and really the pertinent questions to
3 ask and what we would ask the Court to do is to frame a
4 preliminary hearing in which we basically determine the merits
5 of either of the routes that we've presented to you.
6 The Committee is on file first with a motion under
7 502(c). As you know, that is the traditional route for the
8 resolution of these cases in an aggregate estimation. The
9 Debtor, on the other hand, has provided something that's
10 unique. It is cut from whole cloth and it's their cloth. So,
11 what we would urge the Court to do is to quickly frame those
12 issues and let us determine that. We note Judge Wolin's
13 proceedings with interest. We've cited to you in the past the
14 opinion when Judge Wolin announced this route and as the court
15 said there, that the court wanted to test whether there was any
16 real benefit to traveling this long route that was laid out,
17 that the Debtor's desired to do in which they were going to set
18 up summary proceedings and basically dispose of the claims
19 either in groups or one at a time, perhaps, and the court
20 reached its own conclusions about what way to shorten it and if
21 you will, I would say that the court there has fashioned some
22 way of determining whether the Debtor's process should be let
23 out of the gate, if you will.
24 And, so, we would welcome that, we would welcome
25 something that gets to the legal inquiry, Your Honor, and, you

1  know, for example, one of the other issues that we will ask you
2  to address at that time is the Debtor's proposal that's raised
3  for the first time in their reply to the effect that their
4  proposal would deal with exposure only claimants. These are
5  people who do not know that they're sick. It would propose
6  these people are to file claims, that they're going to be
7  barred and, indeed, that they would estimate them. We know of
8  no way that can be done under the law, Your Honor.
9        So, we joint the Committee in suggesting that. We
10 also see a great connection between these matters and those of
11 exclusivity and that's why the proposal that we have jointly
12 made with the Committee on a cancer only estimation, we believe
13 can be done on a rapid track. We do think that a four to six
14 month track is very feasible. Your Honor, it's very different
15 from everything the Debtor's would present, is basically
16 testimony presented in the form of expert testimony. Like
17 others in the room, I've participated in those kind of
18 proceedings and they can be done with a minimum amount of court
19 time actually, with a few days out of the court's docket, and
20 we can determine whether there are cancer only claims. And we
21 believe when that determination is done, Your Honor, that that
22 also will dictate the course for the case and for plan
23 proposals and as you'll hear from us later today, we would like
24 to have the opportunity to provide the Court with a Creditors'
25 plan so that any such estimation could be done in the context,

1  or as a predicate to plan confirmation.
2      THE COURT: Thank you, counsel. I suppose it's time
3  for the Debtor to respond.
4      MR. BIENENSTOCK: Good afternoon, Your Honor, Martin
5  Bienenstock for the Debtors.
6      THE COURT: Good afternoon.
7      MR. BIENENSTOCK: Mr. Miller asked me if I could
8  resist responding and I said no, so he was kind enough to let
9  me do that. I'm going to use all of my human strength, such
10 as it is, to resist responding to the Legal Rep. and the
11 Committee on the merits of the pending motions. Suffice it to
12 say, we couldn't disagree more with their legal conclusions.
13     Here is how we suggest we should proceed and why.
14 Under Bankruptcy Rule 3003(c)(3), Congress and the Supreme
15 Court have said the court shall set a bar date and we think
16 since we have a motion for a bar date pending for a long time,
17 that has survived a reference withdraw proceeding, that should
18 be set down. It basically presents two issues, I'm not here to
19 argue them, just to note for the Court's planning. One issue
20 is -- well, three issues. Can we have a bar date, what is the
21 bar date and the third issue is, can we have proof of claim
22 form different than official Form 10?
23     We believe that while the proof of claim form could
24 make life easier later to the extent it is consistent with the
25 factors the Court would want to look at to liquidate and