# Exhibit U

**ORIGINAL**

1

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
CASE NO. 01-30135(RG)

IN THE MATTER OF:
G-I HOLDINGS, INC.,

    Debtor,

THE OFFICIAL COMMITTEE
FOR ASBESTOS CLAIMANTS,

    Plaintiff,

vs.

G-I Holdings, Inc.,

    Defendant.

| | |
|---|---|
| DATE: | December 13, 2002 |
| BEFORE: | HONORABLE ROSEMARY GAMBARDELLA |
| LOCATION: | United States Bankruptcy Court |
| | Courtroom 3E |
| | Martin Luther King, Jr. Building |
| | 50 Walnut Street |
| | Newark, New Jersey |
| PURSUANT TO: | Motion to Appoint Trustee |

Reported by:
GAYLE MAY-BARKER, C.S.R.

REPORTING SERVICES ARRANGED THROUGH
VERITEXT/NEW JERSEY REPORTING COMPANY, L.L.C.
Kabot Battaglia & Hammer - Suburban Shorthand
Waga & Spinelli - Arthur J. Frannicola CSR
25B Vreeland Road, Suite 301
Florham Park, New Jersey 07932
Tel: (973) 410-4040          Fax:(973) 410-1313

VERITEXT/NEW JERSEY REPORTING  (973) 410-4040

```
                                                              2
 1  A P P E A R A N C E S:

 2       LOWENSTEIN, SANDLER, ESQS.
         65 Livingston Avenue
 3       Roseland, New Jersey 07068-1791
         BY:  JEFFREY PROL, ESQ.
 4            JOHN SHERWOOD, ESQ.
         For the Committee of Asbestos Claimants
 5       (973) 597-2548

 6       WEIL, GOTSHAL & MANGES, LLP
         767 Fifth Avenue
 7       New York, New York 10153-0119
         BY:  MARTIN BIENENSTOCK, ESQ.
 8            KATHRYN TURNER, ESQ.
         For the Debtor, G-I Holdings
 9       (212) 310-8231

10       RIKER, DANZIG, SCHERER, HYLAND
         & PERRETTI, LLP
11       Headquarters Plaza
         One Speedwell Avenue
12       Morristown, New Jersey  08606
         BY:  DENNIS O'GRADY, ESQ.
13            MARK HALL, ESQ.
         For the Debtor, G-I Holdings
14       (973) 538-0800

15       CAPLIN & DRYSDALE
         One Thomas Circle, NW Suite 100
16       Washington, DC 2006
         BY:  TREVOR SWETT, ESQ.
17            MAX HEERMAN, ESQ.
         For the Committee of Asbestos Claimants
18       (202) 862-5000

19       DUANE, MORRIS & HECKSCHER, LLP
         One Riverfront Plaza
20       Newark, New Jersey 07102
         BY:  WILLIAM C. KATCHEN, ESQ.
21       For the Movant, Bank of New York
         (973) 424-2000
22
         KEATING, MUETHING & KLEKAMP
23       1400 Provident Tower
         One East Fourth Street
24       Cincinnati, Ohio 45202
         BY:  MICHAEL L. SCHEIER, ESQ.
25            KEVIN IRWIN, ESQ.
         For the Legal Representative
```

3

```
 1        UNITED STATES DEPARTMENT OF JUSTICE
          OFFICE OF THE UNITED STATES TRUSTEE
 2        One Newark Center, Suite 2100
          Newark, New Jersey 07102
 3        BY:  MITCHELL B. HAUSMAN, ESQ.
               ANTHONY SODONO, ESQ.
 4        For the US Trustee
          (973) 645-3014
 5
          U.S. DEPARTMENT OF JUSTICE
 6        TAX DIVISION
          P.O. Box 227
 7        Washington, DC 20044
          BY:  RICHARD G. JACOBUS, ESQ.
 8        For the Internal Revenue Service

 9        SAIBER, SCHLESINGER, SATZ & GOLDSTEIN, LLC
          One Gateway Center, 13th Floor
10        Newark, New Jersey 07102-5311
          BY:  DAVID R. GROSS, ESQ.
11        For the Bank of New York
          (973) 645-4929
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

57

even a trace amount of asbestos it is thought can stimulate the horrendous cancer of mesothelioma, and mesothelioma claims are projected to continue in not insubstantial numbers until the year 2040. The volume of the claims, the dilemma of the courts in dealing with the dockets, all of things that are underscored as the problem with the tort system now are fundamentally the result of the pervasive distribution of the product by the distributors and manufactures, including be GAF. When you look around and notice -- when you embrace that fact and then you observe the behavior of other defendants in a similar dilemma represented by lawyers equally talented and vigorous as this defendant how they are choosing to dispose of the claims by paying them, you must I think approach the notion of some sort of wholesale grandiose fraud with deep scepticism. I think that will suffice for the moment on that subject.

        Your Honor, I think I'm at the point where I should sit down and let other people talk.

        JUDGE GAMBARDELLA: Thank you.

        MR. GROSS: Good morning, your Honor. As your Honor knows, I represent the legal

58

1 representative in this situation; and although I
2 have not been before your court on many occasions
3 with respect to the bankruptcy world, I've had
4 substantial experience in that world as a result of
5 my appointment in another court in this building
6 with respect to some of the bankruptcies that are
7 presently before Judge Wolin.  As a result of that
8 inexperience in the bankruptcy world, I have done
9 everything I can to acquaint myself with the
10 relevant teachings of the Third Circuit with
11 respect to the appointment of a trustee, which I
12 understand is an unusual action on behalf of a
13 court.  As to the position of the legal
14 representative and what has been set forth before
15 your Honor in prior hearings, we have been sitting
16 back watching what goes on because our position has
17 always been and remains that we are not merely an
18 alterego of the committee, although we have very
19 similar goals as a result of our duty to those who
20 will be the claimants with respect to a trust
21 assuming it ever evolves in this situation.
22          We now find as a result of what we
23 have had the opportunity to view in the time we've
24 been involved in this case a number of things.
25 First of all, based on experience, it seems that

59

1   this bankruptcy through no fault of anyone but we
2   believe the direct attempt to drag out the
3   bankruptcy, if you will, has been going on for a
4   long time.  I do not intend to go through the same
5   kind of argument that Mr. Swett who has so ably put
6   before this court since we've done so in our brief
7   and we have been careful to review the brief with
8   the committee.  We have adopted what they say.
9              JUDGE GAMBARDELLA:  Essentially
10  the legal representative has joined in the motion
11             MR. GROSS:  Exactly, and our
12  position is that as I'll try to indicate in a very
13  brief presentation to this court, we believe that
14  under the teachings of the Third Circuit in the
15  Sharon case and in Marvel it is clear that your
16  Honor has great discretion in implementing an act
17  such as this.  We wholeheartedly endorse the
18  position taken by the committee and believe that
19  from the point of view of its own presentation as I
20  indicated by Mr. Swett there is clearly enough
21  information before this court to allow you to
22  within the teachings of those decisions come to the
23  inescapable conclusion that a trustee must be
24  appointed here.  Even though understanding that
25  there is a substantial burden of proof on behalf of

60

1  those who espouse that position and that in doing
2  so it's not the usual course in the bankruptcy
3  proceeding. I would only reaffirm what Mr. Swett
4  has said with respect to the experience that I've
5  had on behalf of my client I share with this court
6  as to what has gone on in other bankruptcy
7  proceedings which involved large corporations
8  similarly situated to the corporation that is the
9  debtor here.
10             JUDGE GAMBARDELLA: What do you
11 specifically see is the failings since that's what
12 you characterize it has in this case.
13             MR. GROSS: It would seem to me,
14 Judge, that the position of the debtor here is not
15 to try and work out a settlement, if you will, with
16 the committee and necessarily with the client I
17 represent or we represent, the legal
18 representative, but it is to attempt to through the
19 use of the modalities and perhaps legal, if you
20 will, attempt on behalf of the debtor in the
21 declaratory judgment action in things such as this,
22 which I do not think most respectfully is properly
23 under the teachings of the Third Circuit, again in
24 the Sum Oil case, before you or should be before
25 you. It's not the way it should be done as I

1  understand what those cases mean. And further,
2  with respect to --
3          JUDGE GAMBARDELLA: I believe your
4  position is that's an improper tool to get to that
5  remedy.
6          MR. GROSS: Exactly. That it
7  seems to me that getting down to the basics of it,
8  if I'm asking -- your Honor did ask, I suspect it's
9  a delaying action and an attempt to see what will
10 happen as time goes on with respect to perhaps
11 legislation and things such as that, which is not
12 in the best interests of my constituency or my
13 clients as well as anybody else's. I think that
14 from what I can tell the way the debtor has
15 proceeded specifically now -- and I'm going to
16 withdraw, go back from one second. I think that
17 the evidence that's put before this court on behalf
18 of the committee is clearly enough to allow this
19 court to direct that a trustee under Chapter 11 be
20 appointed, but I must also add to that, which I
21 don't think is necessary from the point of view of
22 the legal representative, the position taken by the
23 debtors in their matters which are presently before
24 you and before Judge Bassler when judge Bassler
25 gets to them, with respect to the motions to

62

1 withdraw the reference, are not in keeping -- and I
2 can go into in some greater detail -- with what has
3 happen in the other bankruptcies. Now I am not
4 suggesting for a moment --
5    JUDGE GAMBARDELLA: I think it's
6 been suggested here that the route of the debtor is
7 not the traditional route.
8    MR. GROSS: There's no question
9 about it. I'm not suggesting that because it's not
10 traditional it's wrong, but I think that if you
11 look at the other bankruptcies and the way they've
12 been handled and they have transpired, you have
13 found that I think as Mr. Swett concluded in his
14 argument, indicated these are not a question --
15 there's not a question of whether these are
16 fraudulent claims. They're claims which must be
17 dealt with. The Congress has set up a methodology
18 in 524(g) to deal with them and with respect to the
19 client that we represent to allow it to do its job
20 with respect to those claims or the claims that
21 will be in the future. And what this debtor has
22 done, as I see it in contrast to what I've seen in
23 other cases, is that it's proposed something
24 different. Well, the fact that it's different --
25 and that was what I was alluding to before --

63

doesn't mean it's wrong, but I think that under 524(g) and what the court is directed to follow by the Congress I think it is wrong. And I think that from the legal representative's point of view we have been short-changed, if you will, in the way we've been dealt with herein. I think that's just another indication of the fact that the debtor in this case is not doing what it needs to do with respect to its duty to not only the clients that Mr. Swett and the committee represents, the actual claimants who have present claims, but certainly not with respect to the manner in which we are supposed to deal with the claims in the future. That's just a matter of -- I think in addition, if you will, and I would suggest to your Honor respectfully that that alone on behalf of the legal representative would be enough in the manner in which we have been dealt with or failed to be dealt with.

JUDGE GAMBARDELLA: You want to give some specifics?

MR. GROSS: As your Honor -- as I can indicate to this court --

JUDGE GAMBARDELLA: Again I know that some of them are in the legal memoranda and

64

1  the position paper.
2              MR. GROSS: It seems to me that I
3  can refer you to page 7 particularly the memoranda
4  we filed with this court, which as your Honor
5  indicates, really enjoins in the application of the
6  committee. It seems that the debtor now takes the
7  position -- I'm reading from our memoranda on page
8  7 that the legal representative is, quote, "No
9  longer necessary in this case because legal demands
10 have dischargeable claims. Little or no legal
11 claims -- little or no legal demands, in
12 parenthesis, or future claims remain, in brackets,
13 to worry about." I would suggest to you that's an
14 indication very clearly the fact that the debtor
15 doesn't really believe it has to concern itself
16 with the position that we must take and my client
17 must take on behalf of the future claimants.
18 They're really not of any great importance. And
19 your Honor is now presently sitting on a motion
20 dealing with the position of the legal
21 representative in some of these cases, and your
22 Honor will in due course make that decision. And
23 we will obviously abide by it, but I would suggest
24 to the court as we've said to you in our argument
25 at that time that the 524(g) provisions make it

1  clear that we need to be present, we need to be
2  able to speak, and we need to be part of this
3  situation in dealing with the claims of the future
4  claimants.
5            As far as the arguments we have
6  with respect to the appointment of the trustee, as
7  I said to this court before, we haven't really
8  taken a sideline position; but we've really not
9  been as active as we might have been.  That I would
10 suggest to you is a time which has gone past.  We
11 think that at this time for the reasons that the
12 committee has set forth there needs to be a change
13 as to the composition of the debtor and to allow
14 someone that does not have the same problems that
15 have been elucidated by Mr. Swett and the committee
16 present in determining and dealing with not only
17 the committee but in dealing with the future
18 representative or the legal representative as the
19 statute indicates.  I think that it is just another
20 reason why that must be done and this court must
21 take this somewhat drastic action at this point.
22 The teachings of the cases that have already been
23 alluded to, and I think Mr. Swett used this
24 terminology in the very beginning, it's something
25 that struck me when I read these cases and I've

66

1 reread them, is the totality of the circumstances
2 are something this court must take into account.
3 Obviously exercising your good discretion in doing
4 so. And in looking at those circumstances as
5 indicated by the briefs filed with this court as
6 well our brief and our position, which is quite
7 distinct from that, I would suggest to you, than
8 the position of the committee, this court really
9 should exercise its determination and judgment in
10 appointing a Chapter 11 trustee.
11            I don't know what a trustee would
12 or would not do, but I do believe and I would urge
13 upon this court that at least the trustee whomever
14 that might be, assuming that should be the decision
15 of this court, would be able to do so without the
16 unusual circumstances that one finds here. These
17 circumstances do not seem to be present in the
18 other cases that I've had some history with, if you
19 will. Now that is not to say there that has been
20 an acquiescence in all cases by the debtor saying
21 here I am. Take whatever you can and take whatever
22 assets you can and not offering and not engaging
23 insubstantial negotiations with the committee and
24 with the other future representatives. That
25 certainly has been done, but it has not been done

67

1  in the manner in which it was and has been and
2  continues to be before this court.
3              I don't intend to spend any more
4  time dealing with the general reasons for the
5  appointment of a trustee, but I think the main
6  thing that I wish to emphasize to your Honor at
7  this time, and perhaps Mr. Irwin will do so in
8  rebuttal and will retain some right to do so after
9  we hear from the debtor with respect to the
10 intricacies of the bankruptcy law which I'm not as
11 familiar with as he is, as your Honor knows, is
12 that Judd Hamlin, the future's representative, has
13 an obligation and a fiduciary duty to the future
14 claimants in this situation.  That flows from the
15 524(g) which allows a full and complete injunction
16 and allows a company to go forward as Mr. Swett
17 said.  That seems not to be -- not seems to be.  It
18 clearly is not what the debtor has in mind here.
19 To allow this to continue on from a time point of
20 view -- and I can only stress again that the timing
21 of these other bankruptcies, and once again you
22 have to look to some extent to the past, if you
23 will, and what's going on presently in these other
24 bankruptcies, has not indicated a two-year
25 situation as this has where really nothing much has

68

1  been done except an awful lot of wrangling. The
2  acrimony is not necessarily a personal, one as
3  counsel for the committee has indicated, but it's a
4  natural acrimony that seems to come from the
5  positions of the parties beforehand. That requires
6  I think judicial intervention even though it is
7  again a substantial kind of activity, and I
8  understand and recognize that. But forgetting
9  about for a moment -- and I don't mean to
10 trivialize to any extent the committee's
11 position -- from the point of view of the legal
12 representative I don't think that we can properly
13 do -- perform the obligation or my client can
14 properly perform those obligations without a
15 change, if you will, in command at the G-I
16 circumstance; and I would respectfully urge that on
17 behalf of my client. I don't need to do anything
18 else.
19             JUDGE GAMBARDELLA: Mr. Gross, in
20 your brief you also touch upon the Cybergenics case
21 and what the legal representative notes is
22 uncertainty given the status of that decision. Is
23 there anything else you would wish to comment on
24 including if you have a position on the tolling
25 agreements that you've seen?

```
                                                         69
 1              MR. GROSS:  I have not seen the
 2  tolling agreements myself.  Other counsel for the
 3  futures representative have and will comment if we
 4  need to afterwards.  As far as Cybergenics goes,
 5  Cybergenics I think puts us in the position of
 6  requiring the trustee to be fully and completely
 7  protected as indicated by Mr. Swett.  Other than
 8  that, one does not know clearly what the court of
 9  en banc will do.  I think that the reliance perhaps
10  that counsel for the debtor has placed on the
11  opinion by Judge Wolin in the Sealed Air case is
12  perhaps overstated, and there's no point in going
13  further than that.
14              I think at this time since it
15  really would involve dealing with hearings that
16  were before the court, which are matters of public
17  record.  I'm not suggesting there's anything
18  private about them, but I don't necessarily believe
19  that the opinion as it seems the debtor's counsel
20  read it as necessarily as all inclusive as they
21  believe it to be.  As far as the tolling agreement,
22  if your Honor wishes to I'll ask my colleague to
23  come up because have not seen them.
24              JUDGE GAMBARDELLA:  Thank you very
25  much.  We'll continue and hear Mr. Jacobus and then
```