1

2                UNITED STATES BANKRUPTCY COURT
                      DISTRICT OF DELAWARE

3

4    IN RE:                      .        Chapter 11

5    W.R. Grace & Co., et al.,   .

6         Debtor(s).             .        Bankruptcy #01-01139 (JKF)

     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

7

8                          Wilmington, DE
                          October 27, 2003
9                            12:00 p.m.

                        TRANSCRIPT OF HEARING
10         BEFORE THE HONORABLE JUDITH K. FITZGERALD
              UNITED STATES BANKRUPTCY JUDGE

11

12   APPEARANCES:

13   For The Debtor:                   David Carickhoff, Esq.
                                       Pachulski, Stang, Ziehl,
14                                     Young, Jones & Weintraub
                                       919 North Market Street
15                                     Wilmington, DE 19801

16                                     Janet S. Baer, Esq.
                                       Kirkland & Ellis
17                                     200 E. Randolph Drive
                                       Chicago, IL 60601

18
     For Equity Security Holders:      Gary M. Becker, Esq.
19   Committee                         Kramer Levin Naftalis
                                       & Frankel, LLP
20                                     919 Third Ave.
                                       New York, NY 10022

21

     For Asbestos PI Committee:        Mark T. Hurford, Esq.
22                                     Campbell & Levine, LLC
                                       800 North King Street-Ste. 300
23                                     Wilmington, DE 19801

24

25

*Writer's Cramp, Inc.*

Certified Court Transcribers

732-329-0191



2

| | | |
|---|---|---|
| 1 | For Asbestos PD Committee: | Theodore J. Tacconelli, Esq.<br>Ferry, Joseph & Pearce, PA<br>824 Market Street<br>Wilmington, DE 19899 |
| 2 | | |
| 3 | | |
| 4 | For Trade Committee: | Michael Lastowski, Esq.<br>Duane Morris, LLP<br>1100 N. Market St.-Ste. 1200<br>Wilmington, DE 19801 |
| 5 | | |
| 6 | | Moshe Sasson, Esq.<br>Stroock Stroock & Lavan, LLP<br>180 Maiden Lane<br>New York, NY 10038 |
| 7 | | |
| 8 | For London Market Insurers: | Francis J. Murphy, Esq.<br>Murphy Spadaro & Landon<br>824 Market st.-Ste. 700<br>Wilmington, DE 19899 |
| 9 | | |
| 10 | | |
| 11 | | Michael J. Zoeller, Esq.<br>Baach Robinson & Lewis, PLLC<br>One Thomas Circle-Ste. 200<br>Washington, dC 20005 |
| 12 | | |
| 13 | For Holland: | Thomas D. Walsh, Esq.<br>McCarter & English, LLP<br>Mellon Bank Center<br>919 Market sTreet-Ste. 1800<br>Wilmington, DE 19899 |
| 14 | | |
| 15 | | |
| 16 | For Bank Group: | Denise S. Kraft, Esq.<br>Klehr Harrison Harvey<br>Branzburg & Ellers, LLP<br>Mellon Bank Center<br>919 Market St.-Ste. 1000<br>Wilmington, DE 19801 |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | For Old Castle N.E.: | William D. Sullivan, Esq.<br>Elzufon Austin Reardon<br>Tarlov & Mondell, PA<br>300 Delaware Ave-Ste. 1700<br>Wilmington, DE 19899 |
| 21 | | |
| 22 | | |
| 23 | Audio Operator: | Sherry Scaruzzi |
| 24 | | |
| 25 | | |

3

1  Transcribing Firm:              Writer's Cramp, Inc.
                                   6 Norton Rd.
2                                  Monmouth Jct., NJ 08852
                                   732-329-0191
3
   Proceedings recorded by electronic sound recording, transcript
4  produced by transcription service.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

|    |                               | Direct | Cross | Redirect | Recross | Further Redirect |
|----|-------------------------------|--------|-------|----------|---------|------------------|
| 1  | Index                         |        |       |          |         |                  |
| 2  |                               |        |       |          |         |                  |
| 3  | Witnesses For The: Objectors  |        |       |          |         |                  |
| 4  |                               |        |       |          |         |                  |
| 5  |                               |        |       |          |         |                  |
| 6  | Witnesses For The Debtor:     |        |       |          |         |                  |
| 7  |                               |        |       |          |         |                  |
| 8  |                               |        |       |          |         |                  |
| 9  | MOTIONS:                      |        |       |          |         |                  |
| 10 |                               |        |       |          |         |                  |
| 11 |                               |        |       |          |         |                  |
| 12 | EXHIBITS:                     |        |       |          | Marked  | Received         |
| 13 |                               |        |       |          |         |                  |
| 14 |                               |        |       |          |         |                  |
| 15 |                               |        |       |          |         |                  |
| 16 | SUMMATION BY:                 |        |       |          |         |                  |
| 17 |                               |        |       |          |         |                  |
| 18 |                               |        |       |          |         |                  |
| 19 |                               |        |       |          |         |                  |
| 20 | THE COURT: Finding            | 38     |       |          |         |                  |
| 21 |                               |        |       |          |         |                  |
| 22 |                               |        |       |          |         |                  |
| 23 |                               |        |       |          |         |                  |
| 24 |                               |        |       |          |         |                  |
| 25 |                               |        |       |          |         |                  |

1    THE COURT:  Good afternoon.  Please be seated.  This

2  is the matter of <u>W.R. Grace</u>, Bankruptcy #01-1139.

3    MS. BAER:  Good morning, Your Honor --

4    THE COURT:  Good afternoon.

5    MS. BAER:  -- Janet Baer on behalf of the Debtor.

6    THE COURT:  Ms. Baer?

7    MS. BAER:  Your Honor, the first matter on

8  Caterpillar Financial is being continued once again, and I

9  believe the new date is November 17th at noon.  Your Honor, the

10  second matter on the calendar is the Debtors' Motion Extending

11  Time to assume, assign, or reject unexpired leases of

12  nonresidential real property.  We've submitted a Certificate of

13  No Objection and would ask the Order be entered.

14    THE COURT:  Yes, items 2, 4, and 5 I directed my

15  staff to enter those Orders.  I don't think they've actually

16  been done yet, but they will be.

17    MS. BAER:  Thank you, Your Honor.  That takes us to

18  item 3, the application of the Debtor to retain Protiviti as

19  Sarbanes-Oxley counsel.  Your Honor, we spoke with Protiviti

20  last week after the U.S. Trustee filed an objection to the

21  application challenging the nunc pro tunc nature.  Protiviti

22  would like the opportunity to file a supplemental affidavit

23  explaining the situation and the justification for the request.

24  We're asking that the matter be put over to the November 17th

25  hearing.

1        THE COURT:  All right.  Is there anyone here from the

2  U.S. Trustee?  No.  Any objection to that by the U.S. Trustee?

3        MS. BAER:  We did call the U.S. Trustee on Friday

4  and tell him we were going to ask for continuance.

5        THE COURT:  All right, thank you.

6  (Clock chimes)

7        THE COURT:  It's better than elevator music.

8  (Laughter)

9        MS. BAER:  Your Honor, the next matter on your

10  agenda is the Debtor's application -- this is agenda item #6,

11  the Debtors' application to retain State Street Bank as

12  Investment Manager and Fiduciary for the Grace Stock that's

13  contained within the Grace Savings Plan.  Your Honor, there

14  have been two objections to this filed, one by the Equity

15  Committee, one by the Unsecured Creditors Committee.  The

16  Equity Committee raised an objection as to what was the reason

17  for this.  I believe Grace was pretty clear in the application,

18  but then did supplement it with a reply and an affidavit from

19  Brian McGowan who is one of the members of the Investment

20  Committee.  Your Honor, it's very simple.  The Investment

21  Committee and the Board of Directors of Grace are in an

22  impossible situation.  On the one hand, under ERISA.  They are

23  fiduciaries to make decisions as to whether or not to do things

24  with the Grace stock, sell, hold, and the like.  Your Honor,

25  these are the very same people who will be making decisions on

1  the Grace Chapter 11 Plan.  The Investment Committee members
2  are two key members that are helping us put together the
3  various numbers and the various information necessary to
4  negotiate a plan.  The Board, of course, is involved in that
5  process.  It is impossible for them to continue to act as
6  fiduciaries for the Grace stock and at the same time fulfill
7  their fiduciary roles, both under the FCC Rules, as well as the
8  Bankruptcy Code.  In this particular circumstance, Your Honor,
9  we think that the business judgment rule suggests to do the
10 prudent thing here, invest, or retain an investment manager
11 like State Street to come in and exercise those fiduciary
12 obligations to make sure that the ERISA obligations that are
13 there are fulfilled and the Grace Board and the Investment
14 Committee can fulfill their obligations to Grace in this
15 bankruptcy case.  Your Honor, the second objection that was
16 filed was by the Unsecured Creditors Committee.  Nobody's
17 objecting to State Street, its expertise, its fees, the
18 indemnity, the objection simply is to who pays, and Your Honor,
19 in that respect again, Grace's business judgment would suggest
20 that it is appropriate in this case for the company to pay the
21 fees and expenses of State Street and its investment adviser.
22 Your Honor, we have submitted an affidavit from State Street
23 indicating that in this business in the nature of what is being
24 done here, it is standard to have the company pay.  Again, we
25 are not doing this because it's necessary so much at the

1  employees' request.  We are doing it because the company needs

2  to do this.  The company has fiduciary obligations which it is

3  having difficulty fulfilling because of the conflict of

4  interest, so the company needs to put somebody in there, an

5  independent third party who can make those decisions.  In

6  addition, Your Honor, this is for the benefit of the Grace

7  Savings Plan.  This is a savings plan that is invested in by

8  the rank and file of Grace.  Approximately 85 percent of all

9  Grace employees in the United States participate in this plan.

10 This is a plan, of course, that has been devastated by the

11 Chapter 11.  The stock that was once there and worth a great

12 deal is worth so very little today due to what has happened in

13 the asbestos world and Chapter 11.  It would be a horrible

14 situation to have to now tell the employees not only that

15 they're gonna have to deal with what's happened to their stock,

16 but now we're going to have to charge them to have somebody

17 fulfill the fiduciary duties here of deciding what to do with

18 that stock.  Under these circumstances, Your Honor, we believe

19 the appropriate thing to do here is to have the company pay the

20 fees of State Street Bank.  In addition, Your Honor, there is

21 no fund of money that these fees could be taken from in the

22 Plan to pay State Street and its professionals.  Quite to the

23 contrary, Your Honor, this is allocated by individual employee

24 account, so if the fees were paid by the Plan it would actually

25 come out of each individual employee's account.  The morale

1    that we have been trying to hold would be devastated by that.

2    It is not something that we believe, in our best business

3    judgment, is something that would be wise and appropriate for

4    the company.  Under those circumstances, Your Honor, we would

5    ask that State Street be retained under the provisions of the

6    agreement that is before Your Honor and that the company be

7    authorized to pay the fees and expenses of State Street.  Thank

8    you.

9            THE COURT:  Okay.  Well, this motion says -- wait

10   maybe I'm confusing it with the one before.  No, I'm not.  It

11   says for an order authorizing but not requiring the employment.

12   I'm not sure what the termination provisions are, number one,

13   and number two, if the Debtor does make the payment -- does

14   involve State Street in this issue it seems to me, frankly,

15   that the Debtor ought to be the entity that makes that payment,

16   but what if the Debtor doesn't, then who has to pay?  So, it

17   seems to me that if the Debtor wants to do this, and the

18   Debtors' discretion, I think, is advisable with respect to the

19   decision whether to engage in this process, but once it

20   engages, seems to me the fees ought to be paid.  The Creditors,

21   that is the account holders, if the Debtor is agreeing to

22   undertake their cost shouldn't later have to absorb that cost.

23           MS. BAER:  Your Honor, it is not our intention that

24   they would absorb the cost.  The Debtor is intending to hire

25   State Street and to pay those costs.

1    THE COURT:  Okay.  Then why is it listed in, may but
2  doesn't have to, language?

3    MS. BAER:  Your Honor, it's standard lawyer language
4  that we put into some of these applications because we like
5  to, if you will, you know, hold open the possibility that if
6  circumstances change we would not go forward.  It is our
7  intention to go forward here, Your Honor.  We have no problem
8  striking that particular language.  We want to go forward, we
9  want to hire State Street, we want to pay those fees.

10    THE COURT:  All right.  Someone want to be heard from
11  the Equity Committee?  Okay, Creditors, go ahead.

12    MR. SASSON:  Good afternoon, Your Honor, Moshe Sasson
13  from Stroock, Stroock & Lavan on behalf of the Creditors
14  Committee.  Your Honor, the Creditors Committee objects to
15  Debtors' application only to the extent that it seeks to burden
16  the Debtors' Estates and its Creditors with the fees and
17  expenses that benefit only a certain block of equity holders.
18  The Committee believes that the State Street expenses, as well
19  as the other professionals retained to assist them, should be
20  borne by the equity group benefitting from the services.  That
21  is to say, the costs should be borne by the Trust or the Plan,
22  and not the Estate.  There's no legal requirement that these
23  expenses be borne by the Debtor and its Creditors.  The fact is
24  that the Debtor can chose to charge the Estate or the Plan, and
25  here the Debtor has sought to charge the Estate in attempts to

1 justify this choice with the purported justification of

2 employee morale.  That's a amorphous, objective term which

3 can't be measured or tested.

4        THE COURT:  But the Debtor's already bearing the

5 expense, it's just bearing it because its current officers and

6 directors are doing the work.  The Debtor's already paying for

7 the fees, it's just that at this point in time it may be some

8 additional costs because you've got to hire an independent

9 third party.

10        MR. SASSON:  My understanding is that the fees now

11 would be minimal, and we're now talking about an increase to

12 about a million dollars a year.

13        THE COURT:  Well, maybe if this is duties that are

14 coming out of the officer's compensation or duties that are

15 coming off of the officer's responsibilities maybe there

16 should be some adjustment made to officer's compensation to

17 assist in the payment.  But, nonetheless, I don't think that

18 the employees who are making this investment should be charged

19 with this burden.

20        MR. SASSON:  Well, Your Honor, I guess the issue is

21 whether the justification of employee morale is sufficient to

22 justify charging the Creditors and the pockets coming out of

23 for the expenses that they anticipate.

24        THE COURT:  Well, the Debtor's telling me that there

25 is no fund.  This isn't a plan -- it's not a Trust that

1   generates the kind of fund that would be normally used to

2   pay --

3         MR. SASSON:  My understanding is that -- don't mean

4   to interrupt, Your Honor -- but that the Trust has sufficient

5   assets and generates income sufficient to pay these expenses.

6   It's not that it couldn't pay the expenses.  It's just that

7   they would prefer to have the company pay the expenses and not

8   have the Trust and the Plan pick up these expenses.  It

9   certainly has the assets and the income to pay these expenses.

10        THE COURT:  Well, I mean, it seems to me that they're

11  not being charged that way against the Trust in the Plan now.

12  Now, I haven't looked at the ERISA document to see whether it

13  can be modified to put those expenses into the Plan, I'll just

14  assume without deciding at the moment that it can be, but why

15  is that appropriate when this is an investment backing to the

16  company stock by the people that you want to have an ownership

17  interest in the company, the employees?

18        MR. SASSON:  It's an unfortunate expense that needs

19  to occur.  The question is who should have to bear it, and we

20  believe that the Creditor block that's going to be benefitting

21  by these investment services should be the party to bear that

22  expense.

23        THE COURT:  Well, I don't know that the employees are

24  Creditors at all.  I mean, maybe they are.  I don't know that

25  they are Creditors.  It seems to me that you don't want to do

1  something to jeopardize the employees' relationship with the

2  company.  What may be appropriate is to re-examine the

3  officer's compensation.  If this is taking a million dollars

4  worth of duties out of the officers and putting it into State

5  Street it may be that at this point in time their compensation

6  should be reexamined, but I don't see in any way that it's

7  appropriate to put this onto the employees whose interest in

8  this company you want to foster, not terminate.

9       MR. SASSON:  Well, certainly, Your Honor, we don't

10 want to do anything to injure employee morale, we just don't

11 think that passing on these expenses to the employees would

12 necessarily do that.  Given the rough cost of about a million

13 dollars a year, and we've been advised that the Plan has

14 several thousand participants, we're talking about roughly a

15 few hundred dollars per year per member, and for a limited

16 amount of time.

17      THE COURT:  Do you want to do the notice to all of

18 those employees that tell them that their plan may be changed

19 and that they may be paying a cost as a result of this service

20 for investing in the Debtor, remembering that it's the

21 Creditors assuming that there's a 524(g), assuming that there

22 is, because I haven't seen a plan that goes through that is

23 eventually going to own this company, and that's the risk

24 you're taking.

25      MR. SASSON:  We understand that risk, Your Honor,

1    and you know, there have been prior applications made where

2    employee morale was a justification, and we acceded to those

3    prior requests.  For example, the Committee --

4              THE COURT:  Yes, I know, I'm familiar with them.

5              MR. SASSON:  We don't believe --

6              THE COURT:  That's not relevant to this.

7              MR. SASSON:  We don't believe that this is such an

8    example.

9              THE COURT:  All right.

10             MR. SASSON:  Furthermore, Your Honor, to the extent

11   that the Court is inclined the grant the Debtors' application,

12   the Committee believes that the fees of the professionals

13   retained by State Street, namely Duff & Phelps and the legal

14   counsel should be subject to the same audit and review

15   procedures as the professionals in this case.  I'm not certain

16   that their retention agreement provides for that, and I don't

17   see any reason to exclude them from the same review procedures

18   that apply to the professionals here today.

19             THE COURT:  Well, that I'm a little bit more

20   sympathetic to.  I'm not sure why they should be excluded

21   either, because at this point in time they are acting on behalf

22   of the Estate, I mean, it's through the State Street Bank,

23   admittedly, but nonetheless, State Street's essentially picking

24   up a fiduciary duty to the employees of the company.  Why is it

25   that their adviser shouldn't have some corresponding obligation

1   to have their fees reviewed?

2   MR. SASSON:  Thank you, Your Honor, I think the --

3   THE COURT:  All right.

4   MR. BECKER:  Good afternoon, Your Honor, Gary Becker

5   from Kramer, Levin for the Equity Committee.  Your Honor, we

6   objected originally, and continue to object, because it doesn't

7   appear that this action will benefit the Debtors' Estate.

8   Presumably, I believe it's established now that the services

9   are currently being performed by some of the Debtors' officers.

10  As Your Honor pointed out, there's been no proposal that the

11  officer's compensation be reduced, it's just adding on $530

12  thousand in fees and further legal expenses for what benefit to

13  the Estate?

14  THE COURT:  Employees who want to continue to invest

15  in the company.

16  MR. BECKER:  Well, they can continue to invest in the

17  company.  As I understand the problem, this is more in the

18  nature of an insurance policy in the event that these officers

19  have material non-public information and that somehow conflicts

20  with their duty to sell the stock on behalf of the Investment

21  Plan.

22  THE COURT:  To a certain extent I think that's true.

23  The other thing is I would think that the employees would feel

24  more comfortable knowing that somebody who isn't about,

25  perhaps, to pull their own rug out from under the value of the

1  stock in the Chapter 11 Plan it may have to turn over even

2  their stock investments, I don't know, to a group of asbestos

3  Creditors that that decision's being made by somebody other

4  than the Board of Directors who set this process up.  I don't

5  know that these individuals Directors did, but a board that set

6  this process up and now has to turn the company over to other

7  Creditors.  I think the conflict is evident.

8          MR. BECKER:  I understand that, Your Honor, but there

9  may be other less expensive ways to avoid the problem.

10         THE COURT:  Well, have you found any?

11         MR. BECKER:  Well, for instance, the people who are

12  appointed to the Investment Committee may not need to be the

13  same people that are there right now, and they could possibly

14  be screened.

15         THE COURT:  Regardless --

16         MR. BECKER:  But the problem is for them to have

17  material non-public information.

18         THE COURT:  Well, I think the problem is having an

19  Investment Committee that is a part of the Board, and therefore

20  members of the Board that have to stear this case through the

21  reorganization process at the outset, that's the conflict.

22         MR. BECKER:  Your Honor, this problem arises with

23  respect to any of the official committees in this case, too.

24  They have material non-public information that my affect

25  whether they can trade their holdings.

1   THE COURT:  Oh, it does, but is isn't an issue of
2   Directors trading their holdings.  This is an issue about the
3   Directors advising or deciding what investments to make on
4   behalf of the employees of a company when the investors may
5   want to put the money back into Grace stock knowing that Grace
6   stock may not be worth what it's worth now or may not be owned
7   by who it's owned by now.

8   MR. BECKER:  Your Honor, if I understood the Debtors'
9   pleadings, there are no more purchases of Grace stock.  The
10   issue is whether it should be sold or not --

11   THE COURT:  Well --

12   MR. BECKER:  -- and there are other possible
13   solutions.  You can preclude the Plan from trading their stock.
14   They just have to hold what they have right now.

15   THE COURT:  Why would you want to do that with
16   employees who you want to foster a good relationship with the
17   company?  I mean, they're already probably going to take a hit
18   on the value of the stock, and now you don't want them to be
19   able to trade it?  And yet you expect that they're going to be
20   there post-reorganization?

21   MR. BECKER:  Well, we certainly don't want it to
22   harm the Debtors' employees' morale.  The issue is whether you
23   need to pay $530 thousand a year minimum on the basis that
24   these Directors might have material non-public information,
25   they might subsequently be sued and have some indemnification

1  claim against Grace, and that the case is not settled.  Now,

2  depending on how long this goes on, how much is that insurance

3  worth?  That's a pretty steep price to pay.

4          THE COURT:  Well, if you want a continuance until

5  November 17th so that you can see whether you can come up with

6  a less costly alternative I'll do that.  I am going to direct

7  the Debtors to take a look at officer's compensation who are

8  normally on the Investment Committee to see whether or not this

9  is a material duty that they were engaged in and whether or not

10 some, not necessarily all, of this cost shouldn't come from

11 there.  It seems to me a part of their, {in quotes}, "job

12 description," is to perform the service and they're not, then

13 this is an issue, and because I do agree part of it is to solve

14 a problem that they have in the event that they make a decision

15 and then are subject to suit whether it's a good faith decision

16 or not, I agree.  It is also, however, for the benefit of the

17 employees knowing that the people who make that management

18 advice are not conflicted, and the members of the Investment

19 Committee are conflicted, and therefore shouldn't be making

20 this decision as this Plan gets closer toward being finalized.

21 So, if you want an opportunity to see what you can come up with

22 that's, I'll call it a least restrictive alternative, I'll give

23 you that opportunity, and you can file something if you can.

24 Otherwise, it seems to me State Street Bank obviously has the

25 resources to be able to handle this, they perform this function

1  for numerous other clients, it doesn't seem to be an issue with

2  respect to their confidence, it seems to be an issue simply as

3  to how they should be paid, and so I think you folks ought to

4  talk about how they should be paid.  With respect to their

5  professionals filing fee applications, or at least being

6  subject to Court scrutiny, I agree.  At this point in time they

7  should be subject to that -- to some Court scrutiny, at least

8  while the Chapter 11 Plan process is winding its way through

9  the Courts.  Because what I don't want to see is that the

10  investment -- advisory services are relatively inexpensive but

11  the legal fees that are occasioned by it are astronomical, and

12  the only way to control that that I know of is to make them

13  subject to a fee application process.  So, I'll approve it

14  unless the Equity Committee and the Creditors Committee come up

15  with something between now and November 17th.  On November 17th

16  I would expect to approve this motion, but subject to (a)

17  having the professionals required to file fee applications with

18  the Court; and (b) seeing how this fee is going to be paid,

19  that I hope you folks can negotiate, and I'm not making a

20  determination on that issue now.  I'm reserving determination

21  on that until November 17th.

22          MR. BECKER:  Thank you, Your Honor.

23          THE COURT:  All right.  So, this matter's continued

24  to see whether you can resolve it.

25          (Pause in proceedings)

1    THE COURT:  Okay.

2    MS. BAER:  Your Honor, the next matter on your

3    agenda, item #7, is the motion of Oldcastle APG Northeast for

4    lifting of the automatic stay.  I've spoken with counsel for

5    Oldcastle, and they are agreeable to continuing this motion to

6    the next hearing on November 17th.  What they want to do is

7    discuss with Grace whether there is some third party discovery

8    that may solve their issue, and I said we're certainly willing

9    to talk about that.  We'll see what we can work out, and then

10   if it can't be resolved we'll take up the Stay Motion with you

11   on the 17th.

12        THE COURT:  All right.  Good afternoon.

13        MR. SULLIVAN:  Good afternoon, Your Honor, Bill

14   Sullivan on behalf of Oldcastle APG Northeast.  Your Honor, my

15   client is the manufacturer, or supplier of concrete masonry

16   units which incorporated Grace's product dry block and was used

17   in the construction of an elementary school in Everett,

18   Massachusetts.  The city of Everett brought suit against

19   various parties involved in the process of construction after

20   there were alleged severe deficiencies in the water repellant

21   abilities of the school and potential mold damage.  Your Honor,

22   this case has been pending since 2000.  My client filed a

23   Motion for Relief from the Stay to seek to add Grace as a party

24   to that litigation.  Your Honor, we have agreed to continue the

25   hearing on this motion for one month, and at the heart of it is

1  the fact that Grace and my client may be on the same side in

2  some respects with respect to this claim, so we're going to

3  pursue working with Grace to get some materials and perhaps

4  some discovery answered.  This case has a discovery cutoff of

5  May, 2004, and to the extent that we can't resolve everything

6  that my client needs we'll be back here, Your Honor.  We feel

7  this is a claim where Grace, if brought in, will contest

8  liability.  It will need to be resolved, liability will need to

9  be resolved, but we don't need to argue the merits of whether

10  stay relief is appropriate at this time.

11          THE COURT:  Okay.  Has Oldcastle or whoever has the

12  claim against the Debtor, I guess the State of Massachusetts,

13  filed a claim?

14          MR. SULLIVAN:  Your Honor, my client filed a Proof

15  of Claim --

16          THE COURT:  Okay.

17          MR. SULLIVAN:  -- against Grace.

18          THE COURT:  All right.  I'll see you November

19  17th if I don't get a stipulation in the meantime.  Thank you.

20  Ms. Bear?

21          MS. BAER:  Your Honor, item #8 on the agenda is the

22  Debtor's Motion to Approve a settlement with KWELMB Companies.

23  Your Honor, the KWELMB Companies are insolvent insurance

24  carriers, I believe in London.  In 1996 Grace settled with a

25  number of London insurers.  KWELMB was, although part of that

1  group, was not part of the settlement due to the fact that
2  they were in insolvency proceedings.  Since that time progress
3  has been made, and at this point KWELMB is now agreeable to, if
4  you will, kind of become part of that settlement.  What the
5  settlement will do is allow Grace's claim in the amount of
6  $4,337,182.73, which is consistent with the overall settlement,
7  agreement, and arrangement that was reached in 1996 with all
8  the other insurers.  KWELMB will be required under the way in
9  which the settlement works given the dividends they've been
10 paying to pay Grace about $1.8 million now, and then Grace will
11 be entitled to continue dividends on their claim as KWELMB
12 winds up its affairs and pays its claims.  Your Honor, nobody
13 has filed an objection to this, however, the London insurers
14 have filed an objection with respect to the fact that
15 accidentally the original 1996 Settlement Agreement, which had
16 confidentiality provisions, was attached to the motion.  We've
17 spoken with the London insurers and they have assured us that,
18 again, they have no objection to the merits of the Settlement,
19 but would like us to put some procedures in place to undo the
20 mistake that was made.  They have provided a Draft Order which
21 we can provide to the Court today which outlines the following:
22 #1, Request that the Court strike from the docket the
23 Settlement Agreement; #2 Request that all parties who were
24 served with notice of the motion and a copy of the motion
25 destroy the attached Settlement Agreement.  In addition, Your

1    Honor, I've agreed with the London insurers that they reserve

2    all rights to assert damages to the extent that they believe

3    there could have been -- there were damages as a result of the

4    disclosure.  We're not aware of any.  We hope that, and don't

5    believe thatm there are any, but it was an inadvertent mistake,

6    and they reserve their rights in that respect.  I believe

7    they're here to address their opposition.

8            THE COURT:  All right.  Good afternoon.

9            MR. MURPHY:  Good afternoon, Your Honor, I'm Francis

10   Murphy, I'm with Murphy, Spadaro & Landon here in Delaware.

11   Michael Zoellar is here from Baach, Robinson & Lewis.  We had

12   filed a pro Hac motion for him, Your Honor, a few weeks back,

13   I but I don't believe it's been granted as yet.

14           THE COURT:  Okay, I'll look for it.  I'm not aware

15   of it, I haven't seen it, but I will look for it.

16           MR. MURPHY:  I know, Your Honor.  Mr. Zoeller,

17   though, I think can address this, if it's acceptable to the

18   Court.

19           THE COURT:  Yes, sir, thank you.

20           MR. MURPHY:  Thank you, Your Honor.

21           MR. ZOELLER:  Good afternoon, Your Honor.

22           THE COURT:  Good afternoon.

23           MR. ZOELLER:  Like Ms. Baer said, we don't have any

24   objections to the Settlement Agreement itself, but this

25   Settlement Agreement with London Market Insurers from 1996 was

1   on the record and is available for anybody to download on
2   pacers.  This is a confidential Settlement Agreement.
3              THE COURT:  It should be stricken.
4              MR. ZOELLER:  Right.
5              THE COURT:  I don't see any reason why it shouldn't
6   be stricken.
7              MR. ZOELLER:  And to the extent that we reserve our
8   rights, again, we don't see any claims arising from this, but
9   is that something that the Court should include in its Order,
10  or whether --
11             THE COURT:  Yes.
12             MR. ZOELLER:  -- we should just put it on the record.
13             THE COURT:  I think it should be included in the
14  Order, yes.
15             MR. ZOELLER:  Okay, all right, thank you, Your Honor.
16             THE COURT:  Do you have an Order, or you're going to
17  have to submit one.
18             MS. BAER:  Your Honor, Grace had agreed to a Form of
19  Order that did not have any mention in it with respect to their
20  reservation of potential damages for the inadvertent
21  disclosure.  I'm not real comfortable with the language they
22  did draft, and may I suggest that we work that out together,
23  and then submit to you an order.
24             THE COURT:  That's fine.  Sooner rather than later
25  if you want this one stricken from the docket, because it's

1   going to take me a while to get it deleted.

2            MR. ZOELLER:  Thank you, Your Honor.

3            THE COURT:  Okay.  And let me make a note so that my

4   staff is clear that they are to strike it once the Order comes

5   in.

6            MR. ZOELLER:  It's, just for the record, Your Honor,

7   docket entry #4460 and it's attachment #2 to that docket entry.

8            THE COURT:  Okay.

9            MR. ZOELLER:  It's actually only part of that

10  attachment, but in order -- I don't believe you can strike just

11  part of an attachment, so the Draft Order had in there

12  direction for the Debtor to submit a revised attachment, too.

13           THE COURT:  Okay, that's fine.

14           MS. BAER:  Your Honor, the Draft Order outlines

15  exactly which docket order entry so your clerk should have

16  pretty clear direction.

17           THE COURT:  All right.

18      (Pause in proceedings)

19           THE COURT:  Okay.

20           MS. BAER:  Your Honor, the next item on your agenda

21  is item #9.  It's the Debtors' Motion for Modification of the

22  Court's preliminary injunction to permit certain third party

23  appeals to proceed.  Your Honor, I believe that the Smolkers,

24  who are involved in this matter, are on the telephone.

25           THE COURT:  Is anyone present on the phone?

1    MR. SMOLKER:  Gary Smolker is present on the phone,

2 Your Honor.

3    THE COURT:  All right.

4    MS. BAER:  Your Honor, Grace is simply trying to do

5 the right thing here.  In January of 2002 when the Court's

6 Preliminary Injunction was entered it apply a stay to all of

7 the actions with respect to the Smolkers including certain

8 appeals that were pending in various Courts in California.

9 Your Honor, since that time Pacific Villas' Homeowners'

10 Association and one of the condominium homeowners that was

11 involved in some of those appeals, James and Julie Holland,

12 contacted Grace, indicated that there had been some dismissals

13 of them from the Smolkers' action in the State Court.  Those

14 dismissals were on appeal as well as, I believe, some requests

15 for attorney's fees by one of the parties.  The items as we

16 understood and was represented to us were on appeal simply

17 having to do with the dismissal of these parties from the

18 lawsuit.  Grace agreed with them that to the extent that

19 that's all at issue it does not affect Grace.  It was certainly

20 not our intension to stay things that had no affect whatsoever

21 on Grace, and Grace was agreeable, again, to the extent that

22 this had no affect on Grace whatsoever to having this stay

23 modified slightly so that these appeals could be completed, and

24 if, in fact, the dismissals were sustained Pacific Villas and

25 the Hollands would be out of the Smolker action entirely.  The

1  stipulations that Grace entered into with Pacific Villas and
2  with the Hollands specifically suggested that in the event that
3  the appeals were unsuccessful on their behalf, and the Court
4  reversed the lower Court, and then these people were, in fact,
5  still involved in the underlying action, and there were cross
6  actions against Grace.  That is all still completely stayed.
7  The only intention here was to allow the appeal over whether or
8  not the dismissal should take place and whether or not some fee
9  should be awarded could be completely in the Appellate Court.
10  Since filing the motion the Smolkers have filed a response.
11  The response suggested that Grace would be affected and the
12  other parties then filed a reply, if you will.  The Hollands
13  filed a reply, again, reiterating what was the intention of the
14  parties here and how it does not affect Grace.  Based on what
15  Grace has seen, we don't see that these particular appeals do
16  affect us, therefore we're not opposed to the stay being
17  modified slightly so that the appeals can go forward, but in
18  some with respects, Your Honor, it's not our fight.  I mean,
19  Grace really is content with the Preliminary Injunction that
20  is entered, believes it was very much appropriate at the time,
21  still continues to be appropriate at the time, but I would say
22  that it sounds as though these actions were sort of
23  inadvertently part of the bigger picture, and from Grace's
24  perspective we have no objection to the Preliminary Injunction
25  being slightly modified only to allow these appeals to proceed.

1    THE COURT:  Mr. Smolker?

2    MR. SMOLKER:  Well, we had an extremely contested

3  hearing on this about two years ago where we went over these

4  issues in great detail, and there was nothing inadvertent

5  about it, and it was specifically included that the appeals

6  would be stay in their entirety.  We were against anything

7  being stayed besides the action against Grace, but Grace

8  pointed out that Grace's product is what is at issue and all of

9  these actions and that it's impossible to separate out Grace's

10  product from any of these actions.  It's very convoluted in

11  terms of there may be five, or six, or nine different orders on

12  appeal, and each one is connected and interrelated to the

13  others, and that's why they're all consolidated, and it really

14  wouldn't be possible for the Court of Appeal to make a decision

15  on either the Hollands' -- what we'll call the Hollands'

16  appeal, or the Pacific Villas' appeal without making a decision

17  on all the other appeals, because they have so many issues in

18  common, and they're consolidated, and the record on appeal is

19  just, for all intents and purposes, one record or at most two

20  records, and there was only supposed to be one appeal brief or

21  at most two appeal briefs, and all the other parties in the

22  appeals have vested interest in it, and just to give you two

23  examples of the complications, the Hollands filed a cross

24  complaint against Grace and Home Savings Termite Control and

25  other people, which I attached to my objection to their Motion

1  for Leave to file a reply to my opposition, in their reply they

2  said that they hadn't made a claim against Grace, that's

3  blatantly untrue.  They filed a cross complaint against Grace,

4  and I attached a copy of the cross complaint, and more

5  importantly, in their cross complaint, I mean, this is what

6  persuaded you at the hearing about two years ago, against my

7  objection, and I'm not claiming I was right and you were wrong

8  then --

9        (Laughter)

10        MR. SMOLKER:   -- that the action against Termite

11  Control -- Home Savings Termite Control, which is the company

12  that applied the Grace product, they, Home Savings Termite

13  Control, has filed a cross complaint against Grace, and they,

14  Home Savings Termite Control, have filed a claim in the Grace

15  bankruptcy, so anything that goes forward that implicates

16  Termite Control, it was pointed out, implicates Grace.  Now,

17  also in these appeals are claims against the insurance carrier

18  for the Hollands and the Home Owners' Association, and in a

19  comprehensive general liability policy there's something called

20  a med-pay provision that basically says if somebody is hurt on

21  the premises that this insurance relates to and they have to

22  get medical expenses that, without going into negligence or

23  liability, they just are direct insured under the policy, and

24  that can submit their medical bills, and they get paid.  Well,

25  the insurance company for the Hollands and the Home Owners'

1 Association were submitted these insurance claims, they denied
2 them, and we had two different trial Judges at two different
3 times in the underlying actions, even though in California
4 you're only supposed to have one Judge for all purposes, and
5 the first Judge that ruled on the demur of the first insurance
6 company said, yes, of course, it's covered under the med-pay,
7 and then the second Judge that ruled on the other insurance
8 company said of course it isn't covered.  So, that's one of
9 the things on appeal, and depending upon how the Court of
10 Appeal went on the issue that the Hollands raise and the Home
11 Owners' Association raise would also affect and implicate the
12 liability under the insurance policy.  So, to explain all this
13 in a minute or two you is beyond my ability so I appreciate
14 how I might seem a little incoherent, and that's why I asked
15 if you want to accept the Hollands' reply, if they know why,
16 you should treat it as an independent motion, and give us time
17 to respond to it so we can explain to you how everything is
18 interrelated and it's not possible to separate it.  It's
19 literally a Gregorian knot, and our Court of Appeals would
20 prefer to have one appeal brief on all persons that have
21 similar and totally related legal issues instead of separate
22 ones, and they never gave notice to all the parties when Grace
23 made this motion.  Now, Grace has said that it has really no
24 interest in this and that it's just trying to do what's right.
25 I think Grace's time would be better spent trying to do

1  whatever's required in the bankruptcy proceeding and not get
2  involved in charitable endeavors to save the world, because
3  they don't have the time or the energy to do that, and they
4  don't have enough perspective to understand what they're
5  doing.  From the point of view of someone that has to do the
6  work that's extremely burdensome they have to do more than one
7  appeal on what's essentially the same issue, that is totally
8  unfair to the other people that have the same legal issue.
9  Now, the Hollands' pointed out in their motion that there was
10 an appeal on the Kay matter, but they didn't play out why
11 didn't they lend their appeal, and that's also a complicated
12 story that, if you wish I'll take up your time now or I'll take
13 up your time in a supplementary brief on it, but very simply
14 there were different issues raised and different complaints,
15 and the Hollands' motion was granted without Leave to Amend the
16 one time that it was heard, and I think the Court of Appeal's
17 gonna over turn it because basically this case caused so much
18 work in the trial Court that the trial Judge was trying to be
19 efficient, and this was just the way he saw of maybe getting
20 rid of the case, but it really didn't, and it won't.  So,
21 basically, Grace says it has no real interest in the outcome of
22 this hearing so I don't know why they brought the motion.  I
23 have a great interest in the outcome of the hearing because
24 it's how much work I have to do at the Court of Appeal and when
25 I have to do it, and I would rather, and I think the Court of

1 Appeal would rather just have this proceed in the orderly way
2 it's been set up to proceed instead of trying to split out
3 people whose demurs were granted at the same time as other
4 people and are all part of one appeal that has similar legal
5 issues, if you're not releasing everyone else, and also if they
6 wanted to be released and they didn't have their own
7 complications they could have been served.  The motion by Grace
8 could have told you why they did or didn't join in the motion,
9 that would be, I would think, the preliminary thing.  If you
10 have any inclination to grant this motion, that they say they
11 have no interest in, I think before you do you should ask Grace
12 to contact the people that have the interest in the outcome,
13 ask them whether or not they're in favor of this, and why they
14 are or why they're not, and proceed from that.  I mean, the
15 problem with this motion is, besides it being wrong thought, is
16 it's the wrong procedure.  They didn't contact, or give notice
17 to, the people that are interested and solicit their input on
18 how it would affect them.  I told you how it would affect me.
19 It'll just create more wheel spinning and more complications
20 and make it take more work and be more expensive to get to the
21 ultimate result instead of going in the efficient way of --
22 currently set up to proceed.
23         THE COURT:  All right.  I'm not really sure I see
24 why the stay has to be relieved at this point, frankly.  It
25 would seem to me that it's better to try to get this case in

1   a posture where the State would be terminated for all matters

2   not just going forward on an appeal that may result in a

3   remand that's then going to end up staying the case again

4   anyway.

5          MR. SMOLKER:  Exactly.

6          THE COURT:  Yes, sir, good afternoon.

7          MR. WALSH:  Good afternoon, Your Honor, Tom Walsh

8   with McCarter & English on behalf of James and Julie Holland.

9   I just ask the Court not to lose sight of a couple things here

10  that I think Mr. Smolker omits, and rather than, as he said,

11  approach this as a convoluted case, as to my clients this is

12  really very simple, and they deserve to allow their appeal to

13  go forward and it's this simple.  They bought this condominium

14  days before the Smolkers filed suit.  Their predecessor, their

15  seller, Carol Kay, was dismissed from the case, period.  Now

16  Mr. Smolker will proceed on a theory that somehow my clients,

17  who bought this house from somebody who was dismissed, has

18  somehow inherited liability.  I venture to say that's a little

19  bit farfetched.  It's not gonna happen.  I say it's not gonna

20  happen because the California Court dismissed without Leave to

21  Amend after the fifth amended complaint.  The preliminary

22  injunction -- and that was in November '99.  The preliminary

23  injunction has been in place since 2002.  Now we're almost

24  two years, a year and ten months roughly, coming up on the

25  preliminary injunction when my clients have essentially been

1  dismissed from this case, except for these outrageous appeals,

2  since November '99.  They've sold the place.  They are entitled

3  to be dismissed from this case.  That is what's gonna happen.

4  That's what the Court will see.

5          THE COURT:  Is that the only issue, whether the

6  Hollands should or shouldn't remain in the case?

7          MR. WALSH:  If the appeal goes forward they will be

8  dismissed.  We're very confident of that.

9          THE COURT:  Is the only issue on appeal whether the

10  Hollands should remain in the case or not?

11          MR. WALSH:  I think Mr. Smolker will have to answer

12  that.  The appeal, as I understand it, has been the same

13  underlying issue, and that's of liability.  Keep in mind,

14  again, that there must be some assumption that my clients'

15  inherited liability from a person who was dismissed from

16  liability.  Now, here we are four years later from that

17  dismissal of my clients, not only their predecessor, and they

18  don't want to go forward.

19          THE COURT:  I think they don't want to go forward

20  because I've imposed a stay that says that they can't go

21  forward as to the Debtor, and their issue is, if I recall

22  correctly, that the Debtor has some liability for the

23  pesticides and whatever else.  I don't really remember all the

24  merits of what the suit alleges at the moment in the case.  And

25  so if the issue is whether or not -- if the issue on appeal

1  that I can relieve the stay for is limited to whether or not
2  the Hollands are proper parties to the suit, then I'm willing
3  to let Relief from Stay go forward because whether they are or
4  are not won't affect the Debtors one way or the other.  If
5  there is something other that then I'm not sure at this point
6  what it is that the Hollands want to do.  If the Appellate
7  Court determines that the Hollands are not proper parties to
8  the suit and dismisses them out that's not going to affect the
9  Debtors.  If he holds them in then the only way it would affect
10  the Debtors is if he sends it back to Court for trial and the
11  trial has to include all parties, one of which is the Debtor.
12  And if that's the case as to the Debtor I'm not going to let
13  the trial go forward.

14            MR. WALSH:  Well, Your Honor, I would suggest that
15  that is exactly the case.  Without having it before me, the
16  Dismissal Order, Carol Kay was dismissed individually having
17  nothing to do with W.R. Grace.  They weren't in Chapter 11
18  yet.  My clients were dismissed.  W.R. Grace was not dismissed.
19  This is on appeal.  The dismissal, again after the fifth
20  amended complaint, I would think the Court of Appeals would
21  look at this record very quickly and easily and affirm or not
22  the decision.  And if it's or not the stay is in place and
23  their protections to W.R. Grace remain.  Otherwise, it should
24  go forward and not keep parties like the Hollands hanging out
25  there for years upon years with what will ultimately be a

1  frivolous lawsuit.

2         THE COURT:  Okay.  I'm not understanding, Mr.
3  Smolker, why as to the Hollands the issue of whether or not
4  they're proper parties shouldn't go forward.  It doesn't affect
5  Grace in any way whatsoever.

6         MR. SMOLKER:  I disagree, and I'd like to first clear
7  up some things that the attorney said.  He said he didn't know
8  what the underlying action was about, he didn't know what the
9  complaint was about, he didn't know what the appeal was about,
10 that this was a fifth amended appeal, excuse me, complaint, and
11 therefore that has some significance.  This is the fifth
12 amended complaint because other people, other than the Hollands
13 demur, and the Hollands demur was never heard until the fifth
14 amended complaint.  The Hollands have, and certain other
15 people, cross complaints in this action.  There are all kinds
16 of different cross complaints by different people against each
17 other --

18        THE COURT:  Yes, but this --

19        MR. SMOLKER:  -- the Hollands are not in because
20 they inherited liability.  The Hollands are in because, and
21 the lawsuit was filed before the Hollands bought their condo.
22 The Hollands are in because there was a pesticide in the wall,
23 and the only people that could remove the pesticide were the
24 owners, and the Hollands became the owners, and they refused
25 to do anything to move the stuff that's in the wall.  If the

1  Court let the -- the thing on appeal is not only whether or

2  not the Hollands are a proper party.  The Court heard a great

3  number of demurs at the same hearing, one of which was the

4  Hollands' and it granted the demurs after the tenant ruling

5  was not granted, it granted the demurs on the basis among

6  others that there was insurance to cover the claim being

7  asserted against the Hollands.  On the other hand, it let off

8  the insurance company on the basis that there wasn't insurance

9  on a demur.  So, essentially they treated the demur as a

10  speaking motion for Summary Judgment.  Whether or not the

11  Court of Appeal is gonna do this or that is speculation.  My

12  best decision is they're gonna reverse the finding, but the

13  thing that isn't speculation is that the Hollands do not have

14  a free-standing appeal.  The Hollands' appeal is an appeal of

15  an order that includes other parties that were dismissed that

16  have the same legal issue who are not asking for this to be

17  essentially bifurcated, and --

18          THE COURT:  Well, it seems to me that I can't --

19          MR. SMOLKER:  -- it's generally related with

20  different insurance coverage issues against different insurance

21  companies where different trial Judges have made inconsistent

22  rulings, some of which are on appeal, and it's also

23  consolidated with other rulings that were made at other times

24  and different appeals that were filed that all became

25  consolidated.  Now, after everything became consolidated the

1  procedure in our California Courts are, you have to designate
2  a record on appeal.  So, we designated, essentially, one
3  record on appeal.  This one record on appeal or so has been
4  consolidated is what everyone's gonna refer to when they write
5  their briefs.  When you have consolidated appeals you get to
6  write one brief for all the appeals, not a separate brief for
7  each different person.

8           THE COURT:  Mr. Smolker --

9           MR. SMOLKER:  -- so essentially what they're asking
10  is for the Court of Appeal to ignore the dismissal of other
11  parties who also have similar legal issues and similar facts
12  because they all had their demur dismissed at the same time,
13  and to rule on this.  There are so many interrelationships
14  between the Home Owners' Association, the homeowners, and the
15  insurance companies, and the pesticide applicator and who hired
16  them, and what they did, and why they did it, and how it was
17  maintained after it happened, that there's really no practical
18  way to let just part of an appeal go forward --

19           THE COURT:  Yes, there is.  Mr. Smolker, yes, there
20  is a practical way, and this is what I'm going to do.

21           MR. SMOLKER:  Okay.

22           THE COURT:  I'm going to lift the Preliminary
23  Injunction, not just for the Hollands but for any other party
24  who wants to contend on appeal that either a dismissal as to
25  them was appropriate for whatever reason, or conversely that a

1  dismissal as to that party was inappropriate, depending on who

2  the appellant in the appeal is, and for no other purpose.   In

3  the event that the parties are held in and the action is

4  remanded for trial at that point I'm keeping the stay in place,

5  parties can ask me for a status conference to see whether the

6  stay should be lifted as to all parties including Grace at that

7  time.   But for now it seems to me appropriate to get keyed up

8  the issue of who, if anybody, should be the Defendants in this

9  action, so I'm going --

10            MR. SMOLKER:  But how are we to know, and I'm asking

11  this not as an argument but for clarification, how are we to

12  know who those parties are?  I mean, that's the problem with

13  the way this was presented, and that's the problem for the

14  Court of Appeal and me.

15            THE COURT:  You know who the parties --

16            MR. SMOLKER:  Who exactly is the stay relieved from?

17  These are all nebulous words that sound great, but who am I

18  supposed --

19            THE COURT:  Isn't there an action pending with named

20  Defendants?

21            MR. SMOLKER:  Yes --

22            THE COURT:  Okay.

23            MR. SMOLKER:  -- there's an action pending with named

24  Defendants --

25            THE COURT:  Then as to --

1    MR. SMOLKER:  -- that's the underlying action.

2    THE COURT:  Pardon me, then as to every named

3 Defendant, other than the Debtors, the stay is, or Preliminary

4 Injunction is lifted for any of those parties on appeal to

5 determine who -- to permit the Court of Appeals to determine

6 who the appropriate parties are in the suit going forward.

7    MR. SMOLKER:  Okay.

8    THE COURT:  So, the Court of Appeals has total

9 jurisdiction to determine as to everybody other than the

10 Debtors.

11    MR. SMOLKER:  Okay.  Now, just so you'll know, some

12 of the parties are employees of the W.R. Grace company.

13    THE COURT:  Okay, have they been dismissed out?

14    MR. SMOLKER:  Yes.

15    THE COURT:  Okay, if they want to pursue it they

16 can.

17    MR. SMOLKER:  Well, I don't know how to respond, if

18 they want to pursue it they can, but I thought your Order was

19 stiff-lipped.  I mean, we want to go forward and pursue it.  I

20 mean, I've wanted to go forward with this whole thing.  I was

21 against anything being stayed --

22    THE COURT:  Wait, wait, don't, don't, don't -- it's

23 very late, I've got a very long docket.  We went over this at

24 least in two prior hearings if not more before.  I understand

25 your position.  All I'm trying to do at this point is get this

1  case in a posture through the Appellate Court system so that

2  everybody knows who, if it has to go to trial, is going to go

3  to trial against.  And that includes the Grace employees to the

4  extent --

5            MR. SMOLKER:  Great.  Before --

6            THE COURT:  -- to the extent -- pardon me --

7            MR. SMOLKER:  -- the Grace employees and Grace argued

8  that Grace had to help everybody resist my action --

9            THE COURT:  Mr. Smolker --

10            MR. SMOLKER:  -- that that would be a distraction

11  from their bankruptcy because --

12            THE COURT:  Mr. Smolker --

13            MR. SMOLKER:  -- if they were found at the end then

14  all these other things would happen and this was kind of a nip

15  the bud in the --

16            THE COURT:  I want the phone calls placed from here

17  in the future.

18            MR. SMOLKER:  -- nip the problem in the bud kind of

19  situation, but now they seem to be --

20            THE COURT:  Mr. Smolker --

21            MR. SMOLKER:  -- not concerned about --

22            THE COURT:  Mr. Smolker --

23            MR. SMOLKER:  Yes.

24            THE COURT:  Pardon me.  I'm done with the argument,

25  please.  Let me make findings so that we can get on with this.

1    MR. SMOLKER:  Okay, I'm sorry.

2    THE COURT:  As to the Grace employees, to the extent

3 that Grace wants to participate in the defense it's free to do

4 so.  If they have their own counsel, that's up to them.  The

5 stay is lifted as to everybody except the Debtors, including

6 the Debtors' employees for the one purpose, and one purpose

7 only, and that is to determine who the appropriate parties are

8 in the action.  Now, who's going to submit an order that will

9 reflect this?

10    MS. BAER:  Your Honor, frankly, I think this is

11 horrible.  I mean, I'd like to --

12    THE COURT:  Look, you asked for it.  No.

13    MS. BAER:  You know what --

14    THE COURT:  No, no, no.

15    MS. BAER:  Your Honor --

16    THE COURT:  No.

17    MS. BAER:  -- this has gone --

18    THE COURT:  Ms. Baer, I'm done.

19    MS. BAER:  Your Honor, this has gone way beyond --

20    THE COURT:  Ms. Baer, pardon me --

21    MS. BAER:  -- what anybody intended.

22    THE COURT:  -- I am done with this matter.  This is

23 the Debtors' request, the Debtor's getting what it asked for.

24 It wants some parts of the appeals to go forward, a Court of

25 Appeals should not be in a position to have only a part of

1  this issue before it.  There will be binding orders that will

2  be issued, there will be legal issues that will be common

3  issues for various Defendants.  So, it's an all or nothing

4  thing, except as to the Debtors.  That's the end of it, and I

5  want an order that's going to permit that to go forward.  Once

6  the Court of Appeals determines who the appropriate parties

7  are the stay remains in place.  I'm not going to permit the

8  trial to go forward until I have a chance to see what the

9  consequences will be for the Debtor, but I am going to permit

10 the Court of Appeals to determine, based on the record that's

11 before it, who the appropriate parties are.  The Debtor asked,

12 the Debtor's getting it.  Okay.  I want that order submitted

13 by the Debtor, run it past Mr. Holland's counsel and the

14 opposing counsel, please, so that you make sure that that's

15 what it says, Mr. Smolker, and it's to do nothing else, only

16 that.

17        MS. BAER:  Your Honor, I will prepare that.  I just

18 want to make one comment, that is, I apologize.  This has

19 become an unpleasant situation, and part of it is

20 unfortunately technology, but I think that the Court is being

21 a little rash to take Mr. Smolker's argument, get frustrated

22 with the argument, as a result grant relief far beyond --

23        THE COURT:  Oh, no --

24        MS. BAER:  -- what any party anticipated.

25        THE COURT:  -- I'm not frustrated with Mr. Smolker's

1    argument except for the fact that I can't interrupt to get it

2    stopped, which is the problem with having the phone call

3    placed from someplace else other than the Court, and so I'll

4    correct that by placing the phone calls from the Court in the

5    future.  That's all.  I've heard his argument before.  I

6    understand the argument.  I heard the Debtors' argument before.

7    I granted the Debtors' request.  The Debtor's backing off the

8    Debtors' request, but I'm not going to permit it to be

9    piecemealed, it's as simple as that.  If it's good for the

10   Hollands it's good for every other Defendant in the case

11   except for the Debtors, and that's why I'm ruling.  If the

12   Debtor had no interest in this the Debtor shouldn't have filed

13   the motion.  That's the order I want.

14           MS. BAER:  Thank you, Your Honor.

15           MR. WALSH:  Thank you, Your Honor.

16           MR. SMOLKER:  Thank you, Your Honor, may we be

17   excused from your Court proceedings now?

18           THE COURT:  Yes, sir, yes you may.

19           MR. SMOLKER:  Thank you, very much, Your Honor, bye.

20       (Pause in proceedings)

21           THE COURT:  Okay.

22           MS. BAER:  Your Honor, the next item on your agenda,

23   item #10, the Debtors' first omnibus objection to claims.  Your

24   Honor, there's only one remaining issue, it has to do with

25   Pipeline Services, Inc.  We're asking that that matter be

1  continued until November 17th.

2        THE COURT:  That's fine.

3        MS. BAER:  Your Honor, with respect to item #11,

4  which is the Debtor's Second Omnibus Objection to Claims and

5  Non-Substantive Objection.  We have an Order to submit to your

6  Court, Your Honor, it does several things.  Some of the

7  objections are sustained, some of the objections are

8  withdrawn.  The best news is with respect to the IRS, which

9  was the great majority of the them.  We have ironed out with

10  them which of the claims remain and which of the claims should

11  be expunged.

12        THE COURT:  All right, that's fine, I'll take it.

13        MS. BAER:  Thank you, Your Honor.

14     (Order handed to the Court)

15        THE COURT:  Thank you.

16     (Pause in proceedings)

17        THE COURT:  Okay, that Order's entered.

18        MS. BAER:  Thank you.  Your Honor, the last item on

19  your agenda was a, I think, a Certification of Counsel with

20  respect to a Scheduling Order involving the Montana

21  Vermiculite Action.  Your Honor, I'm not sure if that got

22  entered, but since that time I do know the parties are going

23  to be submitting a Supplemental Scheduling Order, and the

24  matter's actually gonna be continued to the December omnibus

25  hearing.

1    THE COURT:  Yes, I wondered because -- no, the Order

2 has not been entered because right now it provides that the

3 last day to file anything is the same day as the omnibus

4 hearing, and I knew that couldn't work, so I will not enter

5 that one.  Why don't you just submit a revised one?

6    MS. BAER:  We will do so, Your Honor.

7  (Pause in proceedings)

8    THE COURT:  Okay, I'll accept that one on a

9 Certificate of Counsel, and simply have it entered when it's

10 filed.

11    MS. BAER:  Thank you.

12    THE COURT:  Okay.  I didn't collect from you any

13 Orders that I didn't sign and have to hand back, correct?  I

14 did that once this morning, and I want to make sure I didn't

15 do that here, too.

16    MS. BAER:  No, Your Honor.  I think you have

17 everything, and I just handed you the one on the claims

18 objections, and we'll get it off the docket when it's entered.

19    THE COURT:  Okay, that's fine.

20    MS. BAER:  So, we're fine.

21    THE COURT:  All right.  Do you have dates, did I give

22 you dates beyond April?

23    MS. BAER:  No.

24    THE COURT:  Okay.  Well, three times today I've

25 misplaced my list, and I've done it again.  It's too little.

1  Oh, here it is, okay.  May 24th in Pittsburgh, June 21st, July

2  19, August 23, September 27, October 25, November 15, and

3  December 20 in Pittsburgh.

4            MS. BAER:  Your Honor, what time are those set for?

5            THE COURT:  What I'm trying to do, Ms. Baer, from

6  January forward is to keep Grace at noon.  I won't really know

7  until probably February when I have the experience of two

8  months of doing it whether my new scheduling process is going

9  to work, so for now let's say noon --

10           MS. BAER:  Okay.

11           THE COURT:  -- but we'll talk in February

12 about whether that's going to work.

13           MS. BAER:  Thank you, Your Honor, I understand.

14           THE COURT:  Okay.  All right, any other matters to

15 be addressed today?

16           MS. BAER: I think that completes the agenda, Your

17 Honor.

18           THE COURT:  Okay, thank you.  We're adjourned.

19      (Court adjourned)

20

21                      CERTIFICATION

I certify that the foregoing is a correct transcript from the
22 electronic sound recording of the proceedings in the above-
entitled matter.
23

24  _____          _11-10-03_
    Signature of Transcriber              Date
25

*Writer's Cramp, Inc.*
Certified Court Transcribers
732-329-0191