<u>Exhibit A</u>

**Transcript from April 22, 2002 Omnibus Hearing before the Honorable Judith K. Fitzgerald United States Bankruptcy Judge for the District of Delaware**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          . Case No.   01-1139(JFK)
                                .
                                .
  W.R. GRACE & CO., et al.,     .
                                . 5414 USX Tower Building
                                . Pittsburgh, PA 15222
                     Debtors.   .
. . . . . . . . . . . . . . . . . 10:05 a.m.
                                . April 22, 2002

TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:                 Kirkland & Ellis
                                By:  DAVID M. BERNICK, ESQ.
                                     JAMES KAPP, ESQ.
                                     JANET S. BAER, ESQ.
                                200 East Randolph Dr.
                                Chicago, IL 60601

For the Environmental           U.S. Department of Justice
Protection Agency:              Environment and Natural Resources
                                  Division
                                By:  JAMES D. FREEMAN, ESQ.
                                (Telephonically)

For Edythe Kellogg:             Scanlon, Sessums, Parker
                                  & Dallas, P.L.L.C.
                                By:  PAT H. SCANLON, ESQ.
                                1650 Mirror Lake Plaza
                                2829 Lakeland Drive
                                Jackson, MS 39208
                                (Telephonically)

Audio Operator:                 Cathy Younker

Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**



2

APPEARANCES:   (Cont'd)

| | |
|---|---|
| For U.S. Environmental Protection Agency: | U.S. Environmental Protection Agency<br>By:  ANDREA MADIGAN, ESQ. |
| For DNA Insurance Company: | WILLIAM HARSTAT, ESQ.<br>(Telephonically) |
| Local Counsel to Asbestos Claimants: | Campbell & Levine, LLC<br>By:  MATTHEW G. ZALESKI, III, ESQ.<br>1201 N. Market St.<br>Chase Manhattan Centre, 15th Fl.<br>Wilmington, DE 19801 |
| For Zonolite Claimants: | Lukins & Annis<br>By:  DARRELL W. SCOTT, ESQ.<br>Suite 1600<br>Washington Trust Financial Center<br>Spokane, WA 99204 |
| For Unsecured Creditors Committee: | Stroock, Stroock & Lavan, LLP<br>By:  ARLENE G. KRIEGER, ESQ.<br>180 Maiden Lane<br>New York, NY 10038 |
| For Official Committee of Asbestos Property Damage Claimants: | Bilzin, Sumberg, Dunn, Baena, Price & Axelrod, LLP<br>By:  SCOTT L. BAENA, ESQ.<br>2500 First Union Financial Ctr.<br>Miami, FL 33131 |
| For Official Committee of Asbestos Personal Injury Claimants: | Caplin & Drysdale<br>By:  PETER VAN N. LOCKWOOD, ESQ.<br>One Thomas Circle, NW<br>Suite 1100<br>Washington, DC 20005<br><br>Ashby & Geddes<br>By:  WILLIAM BOWDEN, ESQ.<br>     RICHARDO PALACIO, ESQ.<br>222 Delaware Avenue, P.O. Box 1150<br>Wilmington, DE 19899 |

3

1       THE COURT:  Hi.  This is Judge Fitzgerald.  I'm ready
2  to call the W.R. Grace case.  Are you holding for that case?
3       MR. FREEMAN:  Yes, I am.
4       THE COURT:  Ah, okay.  Just a second, please.
5       MR. FREEMAN:  This is Jim Freeman with the Department
6  of Justice.
7       MR. SCANLON:  This is Pat Scanlon for Edythe Kellogg.
8       MS. MADIGAN:  Andrea Madigan with the United States
9  Environmental Protection Agency.
10      MR. HARSTAT:  This is Bill Harstat listening in for
11  DNA.
12      THE COURT:  I'm sorry, folks.  I'm not ready for you.
13  You're starting without me and you're going much too fast for
14  me to be able to type and get your names, number one.  Number
15  two, you're going to have to speak a little louder, please, so
16  we can hear you.
17      Mr. Scanlon, I got you.  Ms. Madigan, I got you.  And
18  I have no idea who else was speaking.  So could you a little
19  more slowly please repeat your names and who you represent?
20      MR. FREEMAN:  Yes, Your Honor.  Jim Freeman with the
21  United States Department of Justice for the Environmental
22  Protection Agency.
23      THE COURT:  All right.  Okay, thank you.
24      MR. HARSTAT:  This is William Harstat for DNA
25  Insurance Company.

4

1          THE COURT:  All right.  Anyone else?

2          Okay, Mr. Bernick.

3          MR. BERNICK:  Thank you, Your Honor.

4          THE COURT:  Now, pardon me one second until I --

5          MR. BERNICK:  Sure.

6          THE COURT:  -- get my file.

7          MR. BERNICK:  I don't know if anyone has pointed this

8  out to the Court, but there's a steamfitter's hat under the

9  podium.  I'm not sure it would fit in with the --

10          THE COURT:  I'm afraid what it's left over from.

11                      (Pause)

12          THE COURT:  Okay, Mr. Bernick, I think I'm ready,

13  thank you.

14          MR. BERNICK:  Turning to Page 2 of the agenda under

15  the uncontested matters, item number three, which is the -- a

16  motion relating to the assumption or rejection of unexpired

17  leases.  We have a stipulation that's been agreed to and is

18  available for the Court.

19          THE COURT:  All right.  Thank you.

20          MR. BERNICK:  With respect to number four, this --

21          THE COURT:  Mr. Bernick, sorry --

22          MR. BERNICK:  Sure.

23          THE COURT:  -- please give me a minute to get caught

24  up.

25                      (Pause)

5

1          THE COURT:  All right.  This essentially is
2    permitting the debtor to have assumed leases as of the date of
3    the execution of the stipulation and agreed order and to make a
4    very small cure payment of less than $3,000.  It's signed off
5    by the parties.  Have any parties in the courtroom got an
6    objection to this order?

7          Okay.  This order is entered.

8          Okay, Mr. Bernick.

9          MR. BERNICK:  Number four is not our motion, it's a
10   motion by the Committees that pertains to Your Honor's order to
11   transfer the Chris Olympic (sic) claims to Judge Woolen --

12         THE COURT:  I've signed both the request to shorten
13   notice and also entered the order.

14         MR. ZALESKI:  For the record, Matthew Zaleski;
15   Campbell & Levine on behalf of the Asbestos Personal Injury
16   Committee.

17         Your Honor, Mr. Perch for the United States Trustee
18   filed a statement which added one additional document to the
19   list of those which were initially missed.

20         THE COURT:  Okay.

21         MR. ZALESKI:  I didn't certify no objection in the
22   hopes that I could hand up a revised form of order and we
23   wouldn't have competing forms today.

24         THE COURT:  Okay.  So instead of the one that's
25   attached here, you have a different one you want signed?  Okay,

6

1 that's fine.  I'll take it.

2          MR. ZALESKI:  That's --

3          THE COURT:  This hasn't been docketed.  I just signed

4 it this morning.

5          MR. ZALESKI:  Okay.  May I approach?

6          THE COURT:  Yes.

7          MR. ZALESKI:  Thank you, Your Honor.

8          THE COURT:  All right.  All this does is add to the

9 U.S. Trustee document and I did see that this morning as well.

10 So I think that's not a problem.  It's entered.

11          MR. BERNICK:  With respect to item number five, which

12 was a motion for preliminary injunction in connection with an

13 adversary proceeding.  We've now resolved this matter.  We

14 believe it's been settled.  We have a stipulation that's being

15 circulated for comment.  I believe that the unofficial -- or

16 I'm sorry, the Unsecured Creditors Committee wants to review it

17 and perhaps others.  And what we would propose is that they

18 have, and others have ten days to give us any comments and we

19 believe we can wrap it up at that point in time and tender it

20 to the Court.

21          THE COURT:  All right.  Is this going to resolve the

22 third-party complaint as well?

23          MR. KAPP:  No, Your Honor.  This only resolved issues

24 pertaining to the debtor's motion for a temporary injunction.

25 TRO and preliminary injunction, but it's issues as a 2003 that

7

1  the adversary proceeding will continue in place for it.

2      THE COURT:  All right.  Are you going to put it back

3  on the calendar for some further scheduling?

4      MR. KAPP:  Yes, Your Honor.  We contemplate putting

5  it on the agenda in a month or two for status and setting up a

6  scheduling.

7      THE CLERK:  May I have your appearance?

8      MR. KAPP:  James Kapp, K-a-p-p, on behalf of the

9  debtors.

10      THE COURT:  Okay, that's fine.

11      MR. BERNICK:  Turning to item six.  Item six is a --

12  is the adversary proceeding that was initiated on behalf of

13  medical monitoring claims.  This is the medical monitoring

14  class action.

15      As Your Honor will recall, we filed a motion to

16  dismiss the adversary on the grounds that it asserted claims

17  within the meaning of Section 1015 and as a consequence could

18  not actually be prosecuted as an adversary proceeding.

19      Your Honor I'm sure will also recall that at the last

20  hearing we had a fairly broad range in discussion on what was

21  going to happen with the medical monitoring claims.  Your Honor

22  indicated that we received by way of notice and bar date and

23  that in light of that the adversary proceeding really was not

24  necessary.  We had some discussion about whether that might be

25  withdrawn.  I believe that counsel for the medical monitoring

8

1  claimants agreed to withdraw the adversary.  We have not

2  received any notice of that withdrawal and I've had a

3  discussion with Mr. Scott before court here and he is amenable

4  to agreeing to an order dismissing the adversary without

5  prejudice on the assumption that or at the time that Your Honor

6  actually approves the notice and bar date process for the

7  medical monitoring claims, which we hope will happen today.

8          So I have a form of order for dismissal of the

9  adversary without prejudice.  Mr. Scott has had an opportunity

10  to take a look and has no problems with it.  But maybe we can

11  ask Your Honor to sign this after we get into the point of the

12  process where we hope Your Honor will sign an order to the

13  notice and bar date process.

14          THE COURT:  Okay.  That's fine.

15          Thank you.

16          MR. BERNICK:  That brings us to item number seven,

17  and this is going to require a little more discussion.

18          There are essentially -- in fact, Your Honor, would

19  it be all right if I could stand over here at --

20          THE COURT:  Yes, sir.

21          MR. BERNICK:  There are essentially two items that

22  relate to number seven on the agenda.  Number seven on the

23  agenda is the adversary class action complaint relating to the

24  ZAI claims.  And there are two issues that are up for

25  discussion this morning.  One relates to the adversary itself

1 and the second relates to the progress that we believe that
2 we're making towards the science trial that we discussed last
3 time.  And let me just take both up at once and go through the
4 whole thing and then Your Honor I think will see what the
5 issues are and we can proceed to take them one at a time.

6      The adversary itself was filed in November of last
7 year and we moved to dismiss it in December again on the same
8 grounds that we just indicated, Section 1015.  It includes
9 these matters as claims as an improper adversary proceeding as
10 a result.  The response was due on March 29 and again, we had a
11 fairy broad discussion of what to with the ZAI litigation last
12 time.

13      Your Honor had a concern that by sending out even a
14 notice of the bar date it might cause an awful lot of concern,
15 have a huge pile of claims.  At the same time Your Honor wanted
16 to go promptly towards a science trial and the middle course
17 that we came up with was to isolate the individual claims of
18 the class representatives who had already pursued their claims
19 in various class actions around the country.  Get those claims
20 here and then have the science trial focus on those individual
21 claims as a consolidated proceeding.  See where that came out
22 and then depending upon the outcome of that proceeding -- if
23 there were motion for class certification to be taken up at
24 that time, if there were a motion to set an overall bar date to
25 then have whatever result that took place from the science

10

1 trial -- we could proceed on that basis as well.

2     So I think we are fairly clear that we are going down
3 the road towards that kind of proceeding with the individual
4 cases. In light of that, again the adversary proceeding was
5 unnecessary and there was some discussion about whether there
6 would be an agreement to withdraw the adversary proceeding and
7 the motion for class certification and the class claim forms.
8 And after a colloquy I think that the Court was very clear on
9 where it was that we were going and the agreement likewise was
10 clear. The Court said this at Page 117.

11     So the motion to file a class proof of claim and the
12 adversary will be withdrawn without prejudice to this test case
13 process, the test case process being the one I just referred
14 to, that we're going to implement instead.

15     Mr. Sobol then responds -- I don't believe he's here
16 today but Mr. Scott is, "Correct. And just so the record is
17 clear, on all those motions we're not moving forward on the
18 class certification motion."

19     I say, "Right."

20     Mr. Sobol then says, "At this time as well. All
21 those issues make sense to confer until we've gone through this
22 other process or at least until we decide otherwise."

23     The Court then says, "Well, the motion to certify the
24 class is part of the adversary, is it not?"

25     I say, "Yes."

11

1        Mr. Sobol says, "Yes."

2        The Court says, "So if the adversary is withdrawn,

3   that's being withdrawn for now too."

4        Mr. Sobol then says, "Yes."

5        The Court says, "Okay."

6        So we're all in agreement that the adversary is going

7   to be withdrawn and the class motion is going to be withdrawn.

8        Unfortunately we have not received any kind of notice

9   of withdrawal of the adversary proceeding or the class motions.

10        The same fashion, Your Honor, that I sought out Mr.

11   Scott this morning, medical monitoring I did on ZAI as well, to

12   get his agreement to withdraw the adversary or agree to an

13   order dismissing the adversary without prejudice and he is

14   unwilling to do that.

15        That's the first item is what to do with that

16   adversary proceeding?  We have motions to dismiss pending.  In

17   fact, there was a response date of March 29 which came and went

18   with no response.  We have not received any response to our

19   motion to dismiss and we're going to ask the Court to dismiss

20   the adversary at this time.  If they want to re-file at some

21   later point, they can always do that.  We don't think that

22   would be proper, but we think at this point in time there's no

23   point in having the adversary pending further proceedings

24   towards the science trial.  That's item one.

25        Item two is what is the progress that we're making

12

1  towards that science trial?  And here it's kind of a good

2  news/bad news situation, but there's a lot of good news.  First

3  of all, it was pretty clear last time about how it was that we

4  were going to proceed.  I undertook to say that we would remove

5  and transfer the individual representative claims.  In so

6  doing, I made two mistakes that I'll now confess to the Court.

7  Both of them are curable and, in fact, have been cured.  But

8  the first mistake was that I forgot that Section 157(b)(5) only

9  relates to personal injury claims.  These are property claims

10  and therefore the easy pluck that the Court could do using one

11  section if 157(b)(5) is not available.

12       My second mistake was not to pick up on what the

13  Court said at Page 85 which is that we could simply file a

14  claim for these individual claimants.  That really is the cure.

15  So we've now gone ahead and done that.  We filed claims under

16  3004 on behalf of -- all of the named representatives.  There

17  are ten of them in the various class actions that were pending

18  around the country.  They've all now been filed here.  So the

19  claims are, in fact, reposed in this court.

20       We have also proposed a schedule for how to deal with

21  these matters and advance them towards trial.  And essentially

22  the schedule that we've proposed runs something like this.

23  That beginning on the 1st of June we would commence fact

24  discovery.  The fact discovery would run until September the

25  30th.  All the fact discovery would be limited to the science

1   issue that's been framed for decision.   That is is this product

2   an unreasonably risky product, unreasonably dangerous product?

3      On September the 3rd, which is before the end of that

4   period for fact discovery, the plaintiffs would make their

5   expert disclosures.

6      On October the 1st, roughly 30 days later, Grace

7   would make its expert disclosures.

8      From October the 3rd till October the 28th, basically

9   a period of a month, there would be discovery from the

10   plaintiff's experts.

11      Again, the following month from November the 4th

12   through November the 25th there will be discovery of Grace's

13   experts.

14      And then we would have until the 20th of December to

15   file a motion to consolidate the individual claims for purposes

16   of the science issue.   File any summary judgment/Daubert

17   motions we might have and that we tentatively said that if the

18   Court would have the time to hear us as of the 3rd of February,

19   that's when any remaining trial would take place and we Mr.

20   Restivo is sitting here today.   Mr. Restivo would be in charge

21   of the trial should it take place of the ZAI claims.

22      That's the schedule that we proposed.   The good news

23   is that we received a letter back, and I think that there were

24   only really two issues that are taken with that overall

25   schedule.   One is that the claimants don't want to have the

14

1 discovery limited to the issue of unreasonable risk.  That is

2 the scientific issue.  If we have discovery that goes into the

3 whole history of ZAI, it's going to take a long time and it's

4 going to be very laborious and we don't see any point to that

5 at all.

6          THE COURT:  I'm not sure I see any point either if

7 the whole point is to see first of all whether there is any

8 science that will support a claim, an injury.

9          MR. BERNICK:  That's what our thinking was.  And, of

10 course, there will always be issues if we have that kind of

11 limitation on what falls on what side of the line with that

12 limitation, but those can be worked out.  And we're not going

13 to -- we're not going to be unreasonable that way, but we've

14 got to keep our eye on the ball.  But that's issue number one.

15          Issue number two is that according to our schedule,

16 the plaintiffs would disclose their expert testimony shortly

17 before the completion of fact discovery.  Mr. Sobol said well,

18 why don't we have that take place at the time that fact

19 discovery is concluded?  We had hoped to produce some schedule

20 compression in order to get quickly to trial, but if that 30-

21 day window creates that much of a problem, we don't have a

22 fundamental problem with that either and we can simply shift

23 that back so that their expert disclosures would be due upon

24 the conclusion of the fact discovery.

25          So those are the only two issues that then get to the

15

1  process that we would like to follow in order to move towards
2  the resolution of the science issue.

3       The bad news side of the equation is that in the same
4  letter where Mr. Sobol responded to our proposal to set a
5  schedule, he introduced the idea of having yet a fourth round
6  of briefing on this whole notion of whether there's going to be
7  a class trial or not.  And there have been now four rounds.
8  Last spring before Your Honor was involved, there was a motion
9  to lift stay in order that these class action cases that were
10 pending pre-petition could be prosecuted post-petition.  That
11 request for stay was denied.

12      Then we have the adversary proceeding.  And Your
13 Honor is now fully familiar with that.  Then we had briefing on
14 the class proofs of claim.  Your Honor is fully familiar.

15      So three different paths or vehicles for which they
16 want to continue to press forward on a class action basis.
17 Their current idea is a variation, variation one now of the
18 lift stay proposal that was rejected last spring.  Under this
19 variation the Court would lift stay so that the Barbanti case
20 could be removed from state court in Washington to the federal
21 court in Washington.  Transfer it over here and we would then
22 have a class trial as opposed to these individuals being tried.
23 A class trial of the Barbanti case.  So we've got, voila, we
24 have class litigation here in this proceeding here.

25      What about the bar against adversary proceedings

16

1  under their proposal?  It's gone.  What about the need for
2  class proofs of claim under their proposal?  They're gone.
3  What about this Court's power to decide the Rule 23
4  certification?  Well, that's gone because basically they're
5  going to adopt the certification order of the state court Judge
6  in Washington.  What about the rules under the Bankruptcy Code?
7  They're gone, too.  First, there is no such provision to
8  transfer the case.  Can't do it that way.  They'd have to
9  remove it and then ask the Court in federal court in the
10 Eastern District of Washington to transfer it here.

11         Second, Rule 9023 which governs in this proceeding
12 would be trumped because the certification of the state court
13 Judge would be dispositive.  The Federal Rule 23 would never
14 have been applied.

15         And then finally and most critically, Rule 9014 of
16 the Code would also be trumped.  9014 says that although class
17 certification may be available, may be a rule that can be used,
18 it is discretionary.  And the cases are crystal-clear that in
19 dealing with class certification in the context of bankruptcy,
20 you not only have to look at the tests of Rule 23, but you have
21 to engage in the analysis using a variety of factors about
22 whether that makes any sense to the case.

23         If you take a look at the case law on this again,
24 it's very clear.  The case law says that even where you have a
25 pre-petition certified class, the proper procedure is for the

1  Bankruptcy Court to determine whether there's going to be class
2  action litigation.  What would happen if we went forward with
3  their proposal?  It's just more delay.  If Your Honor were to
4  lift the stay and to allow that case to proceed here, we would
5  then have an appeal on whether the lift stay procedure was
6  appropriate.  We would then have an appeal on whether Rule 23
7  had been followed.  We would then have an appeal on whether
8  9014 applied and if so, whether the discretionary factors, how
9  they would cut in this case.

10          THE COURT:  Well, Mr. Bernick --

11          MR. BERNICK:  Yes, Your Honor.

12          THE COURT:  -- I thought these issues were all agreed
13  upon at the last hearing.  I mean I thought that it was
14  crystal-clear at that hearing that what was going to happen is
15  we'd get to the science issue.  You'd certify the common issues
16  and we'd do it through a common issue trial first.  Then if, in
17  fact, there is some scientific support for the fact that there
18  is an injury that can be proven or a claim, I guess I should
19  say, that can be filed, then I think we need to take a look at
20  the class certification or class proof of claim issue.

21          MR. BERNICK:  Yes.

22          THE COURT:  But don't we need first to determine
23  whether there is a claim that can be filed at all based on the
24  science side?  Why are we taking these pieces in that order?

25          MR. BERNICK:  I don't -- I don't know and that's why

18

1  I said it was good news/bad news.  I thought we had taken a
2  major step forward because it looked like the schedule was
3  basically something that people agreed to.  And we got the
4  claims here, we're ready to roll, and this looks like a step
5  backwards.
6          All that I'm anxious to do is to avoid yet another
7  round of briefing that further delays this issue.   What we're
8  going to ask the Court to do today is again dismiss the
9  adversary without prejudice.  To dismiss the class proof of
10 claim motion, again without prejudice.  And to approve the
11 schedule that we've outlined with the amendment that the expert
12 disclosures for the plaintiffs would be due upon the completion
13 of fact discovery to approve that schedule so that we can go
14 forward and do the work that's necessary to get to the hearing.
15          THE COURT:  Okay.  Mr. Scott.
16          MR. SCOTT:  Thank you, Your Honor.
17          The record actually was very clear and Mr. Bernick
18 didn't read an appropriate portion of the transcript.
19          The issue before the Court I think at the last
20 hearing was litigating the liability issue to place this Court
21 in a position where it could intelligently give direction with
22 regard to a proof of claim process.  And that involves
23 litigating the liability issue which Grace characterizes, is
24 the product unreasonably dangerous?  The issue we think is
25 different than that, but whatever the issue is and the Court

1  decides to try, is the liability issue.  And we need to try the

2  liability issue before we have a complex, very costly proof of

3  claim process.

4       The question was posed whether we were prepared to

5  withdraw the class certification issue.  I asked -- I made the

6  comment I'm unsure what the procedure is by which the parties

7  would be before the Court.  Mr. Bernick interrupted and said

8  "It's called lifting stay and removal."

9       I said, "In that case we would withdraw the motion

10 for the certification."

11      This is a very important point and I want to explain

12 to the Court why there really is a difference about the proper

13 procedure by which to litigate.  So there's no question we

14 should litigate the liability issue as quickly as possible.

15 The question is what is the proper procedural device to bring

16 the parties before the Court.

17      Plaintiff's belief that the appropriate and, in fact,

18 the only device to bring the parties before the Court with

19 coherently-asserted claims and with counsel who represent them,

20 is a very ordinary process of lifting the stay to permit the

21 partial liquidation of a claim that was pending prior to

22 bankruptcy.  To litigate the liability issue and give the Court

23 direction with regard to all the other claimants whose claims

24 are not being litigated.

25      So we proposed, and Grace agreed the last hearing,

1 that there would be a lifting of stay and a litigating of the

2 cases that have been filed before.  The Court asked the

3 question should we litigate it in Spokane or here?  I said

4 Spokane would be fine.  Grace had a different opinion.  And we

5 agreed that on lifting stay the case would be transferred here

6 so this Court can try the liability issue.  And I think that's

7 -- while that's not preferable, it's probably correct because

8 this process is I hope going to educate the Court about the

9 nature of the claim.  So lift stay.  Removal of case.  And

10 there is nothing odd about a Bankruptcy Court lifting stay to

11 permit the liquidation of a case if it is an aid of the

12 bankruptcy process, which is what is happening here.

13      Well, we received a letter from Mr. Bernick and when

14 he said he made two mistakes, they were tactical mistakes I

15 think.  Grace changed its mind, rather than lifting the stay

16 and removing, they want to file, the debtor, file a proof of

17 claim on behalf of individual creditors, what they choose, and

18 that those individual creditors then have to go through a

19 contested claim process here in Delaware.  That process will

20 with certainty hamstring this bankruptcy process and it will

21 prevent prompt litigation of the liability issue.

22      This isn't the time to argue motions which will

23 actually be I think before the Court during the next omnibus

24 hearing, but we believe that a debtor is powerless to file a

25 claim on behalf of a creditor at this point in time.  So it is

21

1 not an option.

2          THE COURT:  Why?

3          MR. SCOTT:  Because the time period for filing claims
4 has not expired.

5          THE COURT:  Right.  So therefore the debtor can do it
6 anytime after the 341 Meeting if the creditor hasn't done it.

7          MR. SCOTT:  So long as the time period for filing a
8 claim has expired.

9          THE COURT:  Well, it can't possibly have expired if
10 the debtor can do it one day after the 341 Meeting.  In most
11 instances the deadline wouldn't even be set yet.

12          MR. SCOTT:  And both of those conditions, the time
13 period for filing claims by the creditor has to have expired
14 for a debtor to file a claim.

15          And as I say, I don't think we need to resolve these
16 issues, but I'm alerting the Court to those.

17          THE COURT:  I don't think so.  It says, "If a
18 creditor fails to file a proof of claim on or before the first
19 date set for the meeting of creditors, the debtor or trustee
20 may do so in the name of the creditor within 30 days," oh, I
21 see, "after the expiration of the time for filing claims
22 prescribed by Rule 3002 or Rule 3003."

23          MR. SCOTT:  And if you look at those rules, one has
24 to do with Chapter 7.  One with Chapter 11.  The Chapter 11
25 rule is explicit, the debtor has no power to file a claim prior

22

1  to the expiration of the time period for filing.

2          MR. BERNICK:  Your Honor, that specific issue has

3  been decided in this court.  That's not -- that's not

4  preclusionary.  It can be filed until -- at anytime prior to

5  the expiration of that 30-day period which obviously hasn't

6  even begun to take place because we don't have the bar date

7  yet.

8          MR. SCOTT:  I don't want bring the Court in to trying

9  to resolve but --

10          THE COURT:  I think that's actually -- well, I think

11  in probably a Chapter 13, not a Chapter 11 context, and so it's

12  somewhat -- it's a somewhat different process I concede.  But I

13  think I have resolved it already and the 13 process is saying

14  that it can be done as long as it's not later than 30 days

15  after the end of that bar date.

16          MR. SCOTT:  In Chapter 13.

17          THE COURT:  Yeah.  In a Chapter 13.  But I'm not sure

18  that the rule is different in a Chapter 11.

19          In any event, I think -- I'm more concerned, Mr.

20  Scott, about rather than how we get here, what the issue is

21  about whether it comes up by way of an objection, the claim

22  process. or whether it comes up by way of a transfer process.

23  What is the difference?

24          MR. SCOTT:  Well, the difference -- there are several

25  differences, Your Honor.  One is if it's a lifting stay and a

23

1 transfer, the case comes to this Court with a procedural

2 history, including a certification of a state court which this

3 Court -- this Court then doesn't need to address the

4 certification issue.  This Court doesn't need to decide whether

5 to bootstrap Rule 23 into the 9000 rules, because a lifting of

6 stay and a permitting of litigation to proceed in the court

7 where the debtor filed bankruptcy is a Rule 7000 procedure.  It

8 is in an adversary proceeding intrinsically, which incorporates

9 Rule 23.

10          So the case would come to this Court procedurally

11 postured with claims that were filed, the actual claims to be

12 litigated filed by the claimant, unlike a proof of claim

13 process which doesn't identify what the legal issues are, what

14 the legal theories are that are the basis for the claim.

15          Now, I know that Grace would prefer to

16 mischaracterize it as a simple quasi-personal injury question

17 of whether the product is unreasonably dangerous.  But as it

18 will become clear as we proceed, the issues are different in

19 kind and the nature of the science that this Court would be

20 litigating I think will be different from what Grace imagines.

21          So a lifting of stay would permit the natural civil

22 litigation process to unfold before this Court.

23          THE COURT:  Well, what is the issue that I'm going to

24 see in the complaints and I'm not going to see in the proof of

25 claim process?

1          MR. SCOTT:  The issues created by a product liability
2    action, for example under Washington law, are different from
3    the issues they have espoused.  Consumer protection claims have
4    also been asserted as bases for the Zonolite claims.  The
5    Zonolite claims are property damage claims, not personal injury
6    claims, and so the nature of the damage and the nature of the
7    "science" that establishes that damage, is going to be
8    different from the kind of science you would see if I were
9    asserting a medical monitoring case or a personal injury case.

10          So this Court has a -- does not have an accurate
11   picture of the nature of the claims if it thinks it's a simple
12   question, "Is it unreasonably dangerous"?  That is not even
13   central to some of the legal theories.

14          So we believe that a lifting of stay and a permitting
15   of the natural process of litigating those claims creates a
16   community, an actual community, who have the power to litigate
17   their claims and who have counsel to represent them.

18          Grace's procedure, an improper, we believe, filing of
19   a claim on behalf of a creditor prior to the expiration of the
20   claim period, will, if it is agreed to by the Court, involve
21   two things that -- it will involve an appeal on that issue and
22   it will raise with certainty the class certification question
23   because we will be -- in order to have a community of people
24   who have the capacity to litigate this issue, it has to be done
25   on some class basis.  We are prepared to do that on a very