25

1   limited class basis.  A single state which following three
2   months of discovery and lengthy hearing and testimony by
3   Grace's experts, the Court certified as a class.

4          THE COURT:  And also said that she wasn't sure at the
5   time that there is medical evidence but she was going to let
6   this go forward as a class.

7          MR. SCOTT:  That's correct.

8          THE COURT:  Now, I'm not sure we need to get into
9   this class issue.  I think we need to take a look at the
10  science side that that Court has not yet adjudicated and, in
11  fact, no Court has adjudicated.  And I think we're putting the
12  cart before the horse.  If there is no scientific basis for an
13  injury of whatever nature, it doesn't matter whether your
14  theory is that this sounds as a tort or whatever the consumer
15  protection statute breach would sound in.  For my purposes I
16  guess a tort for right now.  Or whether it's a product
17  liability issue.  It doesn't matter how the claim arises if
18  there's no scientific evidence to substantiate that there's
19  liability.

20         MR. SCOTT:  And what if there is?

21         THE COURT:  If there is, then I think we take a look
22  at the whole case all over again and see whether or not a class
23  is advisable and it may well be at that point.

24         MR. SCOTT:  And the only -- what I'm telling the
25  Court is that the only way that there will be parties before

1 this Court without a complicated Appellate process is through a

2 lifting of stay with regard to cases that are pending because a

3 premature and improper filing of a proof of a claim on behalf

4 of individuals will result in a motion for certification of

5 those classes before this Court and whatever the outcome of

6 that issue, which this Court need not even address, will be

7 appealed. We know that because Grace has made that clear from

8 its last hearing. We are trying to put the Court in a position

9 where it doesn't have to address the certification issue.

10 THE COURT: But I don't have to address it now. I

11 don't have to address it unless and until somebody shows me

12 that the debtor is going to have liability. That to whom the

13 debtor has liability at this point is something I don't need to

14 decide. But the four what is something I do need to decide.

15 MR. SCOTT: But it is our position the liability

16 issue on its own needs to be resolved on a class basis or not

17 at all.

18 THE COURT: I don't see why. And if there is

19 scientific evidence to show that the use of Zonolite caused a

20 property damage, it doesn't matter under what theory, just that

21 there is -- it's either an unreasonably dangerous product or

22 it's going to cause some damage in the future to which people

23 will be subjected, it seems to me at that point then we get

24 into the issue about the scope of the damage and whether or not

25 it is appropriate to certify classes. And I think it may well

1  be.  I don't know that for sure, but it may well be.  It's

2  going to be very difficult to craft the kind of notice program

3  that will reach all of the people who may have Zonolite without

4  some broad-base distribution of that notice.  And it may be

5  that a class or various classes would be appropriate then.  But

6  why do I need to get there until I have some proof that there's

7  scientific evidence?  Right now this is a crap shoot on

8  everybody's behalf.

9          MR. SCOTT:  Because the Court will not have parties

10  before it --

11          THE COURT:  I will.  The debtors --

12          MR. SCOTT:  -- to litigate --

13          THE COURT:  But I will, the debtors --

14          MR. SCOTT:  -- the issue.

15          THE COURT:  -- filed proofs of claim and if they

16  choose to litigate, they do.  And if they don't, then there

17  isn't going to be any scientific evidence.

18          MR. SCOTT:  The debtor, although we haven't received

19  it, I am informed has filed a proof of claim that will result

20  in a motion to strike their proofs of claim.  It will also

21  involve a motion to lift stay and transfer cases.  If the case

22  -- if the claims of the debtor are permitted, then it will

23  result in a motion to certify as a class the liability issue,

24  even if it's perceived as the question, "Is it unreasonably

25  dangerous?"  If that is not a proof, it will -- it of necessity

28

1  will result in an appeal because Mr. Barbanti cannot --

2         THE COURT:  Look, no matter which way I do this,

3  folks, you all say you're going to appeal.  No matter what way

4  I do it, you're going to appeal.  So, fine, appeal.  I don't

5  care.  Let's at least get the issue determined so you have

6  something to appeal on.  I mean it would make a lot more sense

7  that we get the fundamentals down and then worry about whether

8  you're going to file an appeal.

9     MR. SCOTT:  Well, as I say, the issues I think will be

10  before the Court at the next Omnibus hearing.  There will be

11  apparently -- a claim has already been filed.  There will be a

12  motion to strike the proofs of claims and there will be a

13  motion to lift stay and to transfer.  The Court will make

14  rulings and then the litigation process will I guess take its

15  natural course.  But what I was trying to do was to expedite a

16  hearing on the liability issue and put this Court in a position

17  where it could avoid the certification issue and Grace's

18  proposal I think just cast the Court right into the --

19         THE COURT:  Number one --

20         MR. SCOTT:  It cast the Court into the certification

21  issue, I'm sorry.

22         THE COURT:  Number one, I don't know that I either

23  can or should avoid the certification issue at the appropriate

24  time.  The problem is I think it's premature.  There is no

25  point going to certification issues if, in fact, there isn't

1  going to be any liability determination.  If there is going to

2  be a liability determination, then I think we need to look at

3  the scope.  You've already got the class action certified in

4  the state court.  That's not going anywhere.  So I'm not sure

5  why at this point that whole thing has to come into this court.

6  And if it does, okay, do it that way, I don't really care.  I

7  want to get to the liability side so we can see --

8       MR. SCOTT:  I do too.

9       THE COURT:  -- what it is that this debtor might be

10  subjected to and to whom it may owe and what at some point.

11       MR. SCOTT:  I agree, Your Honor.

12       But I guess the point I would like to leave the Court

13  with is, classes are typically certified and almost invariably

14  uncertified.  Certified on the liability issue and not on the

15  damages issue.  The Court is doing it the other way around.

16  One of the reasons that the Washington court certified the

17  Barbanti case is because trial of the liability issue could not

18  be done even in Washington by a single claimant or a few

19  claimants standing alone.  That is as true in Delaware as it is

20  -- or Pittsburgh as it is in Washington, and so rather than

21  avoiding an issue and getting swiftly to the liability trial, I

22  fear we'll really run sort of run into a procedural nightmare

23  that will set off --

24       THE COURT:  But I think what you're saying is simply

25  that whatever the claimants, and I don't know who they are that

30

1    the debtors have picked, may not be able to afford the cost of

2    the litigation on the science side.  Is that what you're

3    telling me?  Because if that's the case --

4              MR. SCOTT:  That at least, yes.

5              THE COURT:  All right.  If that's the case, you

6    represent a whole lot of plaintiffs who can join in this action

7    simply by filing a proof of claim.  So if you want more people

8    to share that load, it seems to me that the opportunity is

9    here.  You file a proof of claim.  And we still get to the

10   common issue trial.

11             Pardon me.  Somebody on the phone, I don't know if

12   you're writing or typing or what you're doing next to your

13   microphone, but it's coming across here and it's very difficult

14   to hear.  Could you please do whatever it is, maybe put your

15   phone on mute or something until you're ready to speak.

16             Thank you.

17             MR. SCOTT:  And that is probably one of the

18   procedures that happens.  Mr. Barbanti, who is a representative

19   of the State of Washington, will file a class proof of claim,

20   and off we go.

21             THE COURT:  Well, I still think that we're putting

22   the car before the horse in this instance.  I truly do.  And

23   I'm not sure why we want to complicate what should be, I think,

24   a pretty much cut and dried battle of experts on the liability

25   side by adding to it the issues of a class certification.  I'm

1  really not.

2          Now, I'm not saying that the experts are going to

3  agree.  I don't mean to minimize the complexity of the

4  evidence.  But I'm not sure that we have to go there yet.  And

5  why do we want to if, in fact, it turns out that there is no

6  proof of liability, we're not going anywhere with class

7  certifications.  And if there is liability, we've got a whole

8  different horse to deal with.

9          MR. SCOTT:  Your Honor, it is because individuals

10 with small claims are powerless to litigate a liability issue,

11 which in this case will be in the neighborhood of a half a

12 million dollars of expert witness fees only.  That is the

13 circumstances under which classes are typically certified and a

14 failure to certify a class, the parties are powerless to pursue

15 their claims absent certification, isn't -- gives them an

16 automatic right of appeal.  So we're --

17         THE COURT:  Number one, I don't know that there is

18 going to be an automatic right of appeal when it's

19 discretionary in a Bankruptcy Court.  I haven't seen any cases

20 that say the class certifications are mandatory in Bankruptcy

21 Courts.

22         Number two, in Bankruptcy Courts typically almost

23 everyone who has a claim, and obviously there are exceptions

24 when you paint with this broad a brush, but most people who

25 file claims have small claims.  They bear the burden of that

1  litigation.   There is an Unsecured Creditors Committee already

2  appointed who can handle this litigation.   They're there to

3  deal with issues like property damage claims.   They have

4  counsel.   They can hire experts.   This group of people can very

5  well be represented by that Unsecured Creditors Committee and I

6  don't see how they're going to be disenfranchised from their

7  power to litigate by virtue of not having a class proof of

8  claim certified at this stage.

9       Now, having said that, it's entirely possibly that if

10 there's liability, again the universe may change.   And at that

11 point it may be appropriate to take a look at a different class

12 issue and perhaps do something different from the unsecured

13 creditors.   But I see no reason why this is anything other than

14 a typical unsecured claim that the Creditors Committee can

15 handle.

16      So I have to disagree.   They've got the power.

17 They've got the professional fees in place.   They certainly

18 have the power to retain experts, and I can't see how they're

19 losing rights in this process at this stage.

20      MR. SCOTT:   Well, actually we have a disagreement

21 that any official Committee has the power to litigate the

22 claims of individuals who are members of that claim and Civil

23 Rule 23 is not discretionary in the 7000 rules, an adversary

24 proceeding, which is why the Lewis adversary proceeding was

25 filed.   The dismissal of the Lewis adversary proceeding was

1 conditioned on a transfer and removal of cases which was the

2 position Grace took last time.

3          And so I understand what the Court is saying and I

4 started --

5          THE COURT:  No, you don't, Mr. Scott, because I'm not

6 suggesting that the Unsecured Creditors Committee is going to

7 litigate a particular claim.  But when you're looking at the

8 concept of whether the debtor bears liability based on some

9 scientific evidence to, when I use this word "class" I don't

10 mean for Rule 23 purposes --

11          MR. SCOTT:  Sure.

12          THE COURT:  -- but to a component of a creditor body,

13 a class of creditors in that sense.  I don't see any reason why

14 the Unsecured Creditors Committee cannot handle that type of an

15 issue.

16          So I really don't see why a common issues trial

17 doesn't work first.  But I see, as I said, if there is

18 liability, I think at that point in time there are some serious

19 issues with respect to class certification.  But I think we're

20 putting the cart before the horse in this bankruptcy context.

21          MR. SCOTT:  Well, I hope I at least helped the Court

22 in understanding what the issues are.  I'm certain I haven't

23 helped the Court in resolving issues.  And I guess these will

24 be formally presented at the next omnibus hearing.

25          THE COURT:  All right.

1       MR. BERNICK:  Your Honor, if I could make a proposal.

2       We have filed the claims.  In terms of the

3  timeliness, Your Honor is correct that the issue has been

4  resolved in the context of Chapter 13.  That was the _Snyder_

5  case, Western District of Pennsylvania.  It's at 156 B.R. 759.

6  It squarely addresses the issue.  It says that the claims can

7  be filed really at anytime after the creditors meeting and

8  prior to the expiration of 30 days after the bar date.  So we

9  have an adequate window.  We're well within the window.  And

10  that process is underway.

11       If they want to file a motion to strike the claims or

12  strike that process, I suppose they can always do it.  I would

13  advocate that they take a look at these cases because I think

14  that it really is a Rule 11 situation.  It's very plain from

15  the language of the rule as well as from the cases.

16       That then brings us to what to do.  And it seems to

17  me that there are three basic things to do.  Number one is that

18  the adversary should be dismissed without prejudice.  Without

19  prejudice.  That they believe that some fashion they can still

20  pursue this by way of adversary notwithstanding the _Manville_

21  case and the _Penney_ case and 1015, let them go ahead and do

22  that, but they don't have to do it now.

23       THE COURT:  I don't have to do it now either.  It

24  seems to me that if we're going to get to a common issues

25  trial, I can let this adversary sit until we do.  I don't need

35

1  to dismiss it.  I simply don't need to schedule it.

2  So if they don't want to withdraw it, that's fine,

3  I'll just let it sit here.

4  MR. BERNICK:  Okay.  And we'll just let then our

5  existing motion to strike the adversary as well.

6  THE COURT:  That's right.

7  MR. BERNICK:  The third thing is I would ask the

8  Court enter an order deferring all matters pertaining to class

9  certification until after the Daubert motions or ultimate trial

10  on this threshold issue is resolved.

11  THE COURT:  Well, I want to hear from the Unsecured

12  Creditors Committee on that point, Mr. Bernick, because I'm

13  assuming that there is a vehicle by which several small

14  claimants, if I can borrow Mr. Scott's words, can be

15  represented against a debtor that has a deep pocket by virtue

16  of some agreements with the banks to litigate this issue in

17  terms of the professional fee carve-outs.  That's what I'm

18  speaking about.

19  MR. BERNICK:  Can I raise a question about that?

20  They would be no more able to do that even in the context of

21  Rule 23.  Under Rule 23 they would still have further costs

22  until the conclusion of the case.  They wouldn't get advance

23  court funding for that purpose.

24  THE COURT:  Well, yes, I know, but the problem is

25  that the debtor in picking and choosing which claimants come

1  in, may have picked and chose those who choose or not choose to

2  bear some part of that cross.

3          MR. BERNICK:  We're brought them all in.  We brought

4  every single person who had filed a claim as a representative

5  from all the different class actions --

6          THE COURT:  Oh, I thought you said you brought ten

7  in.

8          MR. BERNICK:  There were ten, but they were taken as

9  class representatives from all of the existing class action

10 cases.

11         THE COURT:  Oh, I see.

12         MR. BERNICK:  We didn't pick and choose at all.

13 There was one individual who wanted to drop out, his name slips

14 me, and so we said okay, well if you don't want to pursue your

15 claim, you don't want to pursue your claim.  All the others

16 that we brought in, and they come from all the different cases,

17 all the different counsel, including counsel that the Lieff,

18 Cabraser firm, I believe, cases they're involved in as well.

19         So we have not -- we have not hunt and pecked around

20 to find selected plaintiffs.  We've brought them all in and it

21 seems to me that this is the same kind of investment any

22 plaintiff's firm has to make in any litigation that is kind of

23 getting underway, which is do you want to bear the costs that

24 are associated with that?

25         So again, our proposal would simply be to defer all

1  class issues.  If they want to try to take an appeal from Your

2  Honor's orders simply deferring the issues until after a

3  hearing on the science, they can go ahead and do that.  I don't

4  think their prospects are bright.  But that way everything is

5  simply put to the point in time when we have behind us the

6  issue -- the resolution of the issue of whether there's a

7  problem with this product at all.

8            And then finally, we would like to get an order --

9  maybe we can draft up an order consistent with what I recited

10 to the Court about the timetable and the like so that we can

11 actually get this process underway.

12            THE COURT:  Okay.  Well, with respect to the

13 timetable, I think there was something that I thought was

14 missing.  Pardon me a minute while I find it since I'd like to

15 hear from other counsel on that score, too.  Let me take a look

16 at this for a moment.

17                          (Pause)

18            Okay.  I think the schedule works assuming that

19 parties can do things like this.  You're proposing that your

20 Daubert-related summary judgment motions would be filed

21 December 20, but there's not a reply and response schedule.  I

22 would assume this would mean a response would be due by not

23 later than January 15th.  I know that's later than normal, but

24 the holidays are in there.  And a reply a week later by January

25 22nd.  If that's the case, then probably we can get to

38

1  something in February.  I don't know about February 3rd

2  specifically.  I don't even have a 2003 calendar yet to be able

3  to see it, but I'll have to pull one to see.  Somewhere in that

4  vicinity.

5      MR. BERNICK:  Yeah.  In point of fact it was for that

6  by reason of the holidays that we deliberately -- we didn't

7  want to be too presumptuous with regard to any dates that

8  involved the Court to begin with.  If we accept Mr. Sobol's

9  suggestion and we have the expert disclosures for the company

10  or for the plaintiffs be due on September the 30th as opposed

11  to September the 3rd, all of the dates thereafter get shifted

12  back 30 days anyhow.

13      THE COURT:  Anyway.

14      MR. BERNICK:  So we're really talking about probably

15  January 20 for our summary judgment motion, Daubert motion.  A

16  response, a reply and then a hearing probably in early March.

17  We're very mindful of the Court -- I think it's everybody's

18  desire to get this done promptly, so we really -- we want to

19  show that flexibility at the same time.  We really would like

20  to have this litigated early next year.

21      THE COURT:  Okay.  Mr. Lockwood.

22      MR. LOCKWOOD:  Your Honor, I'd just like to make two

23  points.  First, with respect to the issue of bringing the

24  Barbanti class in in certified form by a lift stay procedure,

25  that would effectively not only take this Court out of the

39

1 determination of whether or not class treatment was

2 appropriate, it would also take the Unsecured Creditors

3 Committee, the Asbestos Personal Injury Committee and everybody

4 else that didn't happen to be in the State of Washington when

5 Mr. Scott got certification of what was at that point only a

6 single state out of 50 states class action.  And there are a

7 lot of issues about what kind of a class you might have in this

8 case; B2, B3, B1, whatever.  There are issues about whether you

9 would certify certain issues.  Mr. Scott already indicated the

10 possibility you might certify liability questions vis-a-vis

11 damage questions and things of that nature.

12          So my Committee would strenuously object to the idea

13 of simply importing some state law class certification to, as

14 Mr. Scott put it, save this Court the need for having to decide

15 it itself.  I think this Court is perfectly capable of

16 determining issues of that sort.

17          The second had to do with what I took to be some sort

18 of, I don't know, threat maybe isn't the right word, but some

19 suggestion at least that if Mr. Scott and Mr. Sobol and the

20 other proponents of class actions and their individual clients

21 were not assured up front that this would be a class

22 litigation, that they would sort of take their ball and go home

23 and not litigate it.  And the theory apparently being that -- I

24 mean the idea that, for example, Mr. Barbanti is going to be

25 financing a class litigation here is preposterous.  As

1 everybody in the courtroom knows, people are going to be

2 financing this litigation in a class counsel who are supposedly

3 adequate to do that job.  And even in a class certification,

4 class certification is almost invariably conditional.  And so

5 any class counsel for the class action always runs the risk

6 that after they have gone through some form of litigation,

7 whether it be merits or otherwise, that the Court will change

8 its mind and de-certify the class.  And it seems to me that if

9 the arguments in favor of class treatment here are as

10 persuasive as the class proponents seem to believe that they

11 are, it is by no means an imposition to suggest that those

12 class representatives or their counsel should be prepared to go

13 ahead and litigate on behalf of those classes in the same way

14 that they would if they were conditionally certified.

15          And so I think that the proposal that the debtor has

16 made here to go forward on some form of a test case basis,

17 under those circumstances is perfectly appropriate.

18          Thank you, Your Honor.

19          THE COURT:  Anyone else wish to speak?

20          MR. SCOTT:  Could I make a comment on that, Your

21 Honor?

22          THE COURT:  Yes, sir, go ahead.

23          MR. SCOTT:  One of the first conversations I always

24 have with a person who seems -- enough to assume the role of a

25 class representative is the discretion of the rules of

41

1 professional responsibility and I'm able to tell them that they
2 are responsible for the costs but that some rules and rules of
3 professionals with responsibility have one exception which is
4 if it is certified as a class, then our firm can advance those
5 costs.  But if it is not, then they are responsible for the
6 costs.

7         MR. LOCKWOOD:  Your Honor, I don't believe there's
8 one recorded case under Rule 23, state or federal, in which
9 somebody who is urging the certification of the class and whose
10 expenses have been picked up by punitive class counsel in the
11 event that the class is denied or de-certified, has been held
12 liable for hundreds of thousands of dollars of costs incurred
13 by their counsel.  But if Mr. Scott has some authority for that
14 point under the rules of -- I'd certainly be interested hearing
15 him tell us about it.

16         MS. KRIEGER:  Arlene Krieger, Your Honor, from
17 Stroock on behalf of the Unsecured Creditors Committee.

18         Your Honor, I can honestly say that I can't even
19 address any of these issues today.  I'm not prepared at all to
20 do that.

21         THE COURT:  Mr. Bernick.

22         MR. BERNICK:  Yeah.  Having heard all the comments, I
23 think that again to even -- if Your Honor would direct that all
24 class issues are deferred until after the proceeding on the
25 science takes place and then entertain an order regarding

1  scheduling along the lines of the dates that we had proposed

2  and the other side has agreed to, I think we're in business and

3  we can go forward.

4             THE COURT:  Mr. Baena.

5             MR. BAENA:  Your Honor, I guess it's appropriate for

6  the Property Damage Committee to comment since Zonolite is a

7  constituency we represent.  For the record Scott Baena on

8  behalf of the Property Damage Committee.

9             Your Honor, until we arrived here today, we were

10  unaware of the fact that the debtor filed proofs of claim.

11  Indeed there are class counsel on our Committee who I would

12  have expected to have been provided with copies of whatever was

13  filed by the debtor so we could ascertain the entire universe

14  of what they filed.  But to the best of my knowledge they

15  haven't been served as yet either.

16             When we left the hearing last time, I left content

17  with the notion that the Committee was out of this fray.  There

18  were no pleadings directed at the Committee.  There was no

19  correspondence that's been alluded to that was directed to the

20  Committee.  Everything we have since then learned about this

21  fray has been anecdotally through members of our Committee by

22  viewing from time to time things that have been filed with the

23  Court or by copies of correspondence.

24             As a consequence, I want the Court to be aware that

25  we sort of sat back and maybe that was an appropriate thing to

43

1  do.  We did sit back and assumed that we were not in this

2  fight.  So in terms of the scheduling that's been proposed to

3  the Court, we haven't taken a view.  We haven't even began to

4  formulate a strategy or an approach to this litigation and

5  we're unable to provide the Court any sense of the reality of

6  the guidelines that you've been discussing.

7          I apologize if I misunderstood.  I thought it was

8  pretty clear from the transcript after I read it again that

9  this was all directed at class reps.  I do believe that Mr.

10  Scott made it abundantly clear that his concern was identifying

11  the class reps as the individuals who would be forced to go

12  forward because of the undue imposition upon them and that

13  sounded right to me.  I'm not a class action lawyer, but it

14  sounded right to me.

15          I do understand that the debtor is trying to move

16  this into another direction.  I do believe that there's a

17  fundamental unfairness in this whole process to the extent that

18  we ordinarily would be involved in a fight like this, but

19  because of its very, very unique and specialized nature, we're

20  not because of the competent counsel that's available.  If we

21  were involved in the fight as you point out, so much of the

22  expense side of the fight would be taking care of through the

23  bankruptcy process and the debtor would pay for it.  I mean it

24  seems like availing ourselves of this unique competences,

25  unfortunately imposing a disadvantage upon claimants who we

1  theoretically represent.  Bearing in mind, Judge, we represent

2  as a Committee.

3       THE COURT:  I didn't follow that.  If I have

4  competent Committee counsel who has the same ability to hire

5  experts, probably one of whom might be class counsel, and

6  experts in terms of witnesses who would be presenting evidence

7  on behalf of the claimants, and they represent the claimants

8  and it's a property damage issue at heart in essence, I'm not

9  sure why that's unfair.  It seems to me that that's perfectly

10 fair.

11      MR. BAENA:  No.  Forgive me.  What I was saying is if

12 it's not considered to be the Committee that's promoting this,

13 which we are not assuming that it is, by imposing upon the

14 class reps to promote this or to wage this legal litigation,

15 imposes upon them the obligation to fund that litigation.  I'm

16 not so sure that that's fair.

17      Again, Judge, the host of Zonolite claimants are

18 unidentified.  Nobody knows who they are.

19      THE COURT:  Right.  Or if they are.

20      MR. BAENA:  Or -- well, we know they are.  We don't

21 know whether they have a claim that you'll deem to be

22 allowable.

23      THE COURT:  Well, we know there's a class -- well,

24 that's right.  We know there's a class that's been certified to

25 address the issue of the liability and whether there is a class

1  or whether there will at some point be damages paid.  But at

2  this point I don't think anybody knows that there really are

3  claimants out there.  There are obviously named claimants that

4  people know, but how many and the extent I don't think is

5  known.

6        MR. BAENA:  We're just, you know, trying to define

7  the problem, you and I, and I think there are claimants.

8  Whether their claims are allowable is an entirely --

9        THE COURT:  Okay.

10        MR. BAENA:  -- different issue --

11        THE COURT:  Fine.

12        MR. BAENA:  -- and I believe that you're looking to

13  this proceeding for guidance in that regard.

14        THE COURT:  Yeah, I accept that.  That's probably a

15  better way to say it.  And maybe what this gets to is that we

16  can avoid both the class certification and all other issues by

17  considering whether this group needs a Committee.  Maybe that's

18  the long and short of it.

19        MR. BERNICK:  Yeah, I'm not sure -- again, I think

20  that Mr. Lockwood did accurately state what the practice is

21  outside of Chapter 11.

22        THE COURT:  Yes.

23        MR. BERNICK:  And therefore when there's a question

24  of the unfairness of the burden, it's no more unfair than our

25  jurist provincial system is unfair by imposing the costs of

1  prosecuting litigation of the people who wish to prosecute it.

2  And maybe the fact that there aren't very many claimants who

3  apparently have stepped forward is an illustration of the fact

4  that notwithstanding the visibility of this issue and counsel's

5  activities, there aren't a lot of people who are really

6  interested in prosecuting this claim.

7      Be that as it may, I'm not sure that the cure is to

8  create a committee.  I understand it and I was not directly

9  involved, but I believe Mr. Lockwood was, the issue of who

10 would pay for the cost of expert expenses in connection with

11 the prosecution of particular kinds of property claims was

12 raised and addressed by Judge Newsome in the context of the

13 Armstrong case.  In that case he set a date for determining

14 really a very similar issue which is there any science to

15 support these claims brought by people who say they were

16 exposed to -- or property claims relating to flooring material.

17 And there was an application on behalf of the Committee to

18 retain experts for that purpose and Judge Newsome ruled and,

19 Mr. Lockwood, correct me if I'm wrong, that the application be

20 denied because this is the expenses associated with the actual

21 prosecution of a claim.  That that's not a matter that's up to

22 the Committee, it's up to the individual claimants and their

23 counsel and the costs are not to be borne by the Committee.

24      So I'm not sure that there's a committee solution to

25 that particular problem.

1          THE COURT:  But I think the difference though, Mr.
2   Bernick, is I don't know whether Judge Newsome is faced with
3   motions to certify classes or whether any have been certified.
4   I'm not familiar enough with the case to know.

5          MR. BERNICK:  I think that there was a motion in that
6   case to certify class as well --

7          THE COURT:  But had there been certifications pre-
8   petition?

9          MR. BERNICK:  No.  No, there had not.

10          MR. LOCKWOOD:  Your Honor, since I was counsel in the
11   Armstrong case, maybe I can speak to that.

12          There was a motion to file a class proof of claim on
13   behalf of the punitive class of floor tile claimants in the
14   Armstrong case.  There was a motion on behalf of the PD
15   Committee in that case to be permitted to employ experts to
16   prosecute.  There was an objection from the debtor based on the
17   proposition that while Committees have broad powers to look
18   after the interest of their respective constituents, that power
19   does not go to the extent of actually attempting to prove that
20   the debtor has a liability to those plaintiffs which Judge
21   Newsome viewed as in effect asking the debtor to pay to have
22   claimants establish the debtor's liability in a matter that the
23   debtor was contesting.

24          So what Judge Newsome ultimately did was he said that
25   the proponents of the class action would have to proceed

1  forward on essentially a similar type test case basis here and
2  he gave the PD Committee what he characterized as a gatekeeper
3  role under which that Committee would help serve a liaison
4  function between the class proponents and the Court and the
5  broader constituency.  But he did not authorize, at least as
6  the matters presently stand, and this is, of course, always
7  subject to, you know, further consideration of the motion
8  practice, et cetera, but as the matters presently stand, he did
9  not delegate to the task of PD Committee in Armstrong.  The
10 task of actually litigating the science questions that are
11 raised with respect to that process that are similar to that
12 here.

13          THE COURT:  But he started with a class proof of
14 claim?

15              (Background noise on tape)

16          MR. LOCKWOOD:  He started with a class action
17 complaint in Texas that was originally a state-only claim that
18 they then attempted to file a class proof of claim and -- to a
19 national class.  And he had class counsel from Texas who were
20 in court arguing that they should be permitted to go forward on
21 a class basis.  And he had a similar set of proceedings about
22 whether they should have a class determination made.  The
23 difference is that he has, in fact, set a parallel schedule,
24 one schedule for the liability and another schedule for class
25 certification.  So that in Armstrong there is an ongoing two-

1 track proceeding.  One directed for the liability and the other

2 directed for the propriety of class certification in which the

3 class proponents all on -- are being afforded an opportunity to

4 come in and argue -- an opportunity to come in and argue...

5         That's where the matters presently stand.

6         THE COURT:  Would those of you who are on the phone

7 please put your mute buttons on.

8         I'm sorry.  I missed a step though, Mr. Lockwood,

9 with respect to the class proof of claim.  You started with a

10 state court action.  They wanted to expand it to a national

11 class.  I take it that didn't happen, but instead a class proof

12 of claim was filed.  Now, I believe the bar date is over in

13 Armstrong for creditors, correct?

14         MR. LOCKWOOD:  That's true, although there are a

15 series of proceedings aimed at extending the bar date and

16 allowing late filings of claims and the like.  And the class --

17 Judge Newsome expressly permitted the filing of a class proof

18 of claim on behalf of the Armstrong floor tile claimants

19 precisely to permit that class to have an allegation at least

20 that is not barred by the bar date.  Obviously if certification

21 is ultimately denied, the question of what happens to the class

22 claims at that point, they may well be barred by the bar date

23 or they may -- Judge Newsome may be prevailed upon I guess to

24 go through a supplemental notice program.  I don't know.  I

25 mean that's obviously the subject of potential future motions