IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 01-01139 (JKF) |
| W.R. GRACE & CO., et al., | ) | Jointly Administered |
| | ) | |
| Debtor. | ) | Chapter 11 |
| _____ | ) | |

### ROYAL INDEMNITY COMPANY'S REPLY TO OBJECTIONS (D.I. 4749, 4757, 4758, 4760) AND IN FURTHER SUPPORT OF ROYAL'S MOTION FOR LEAVE TO FILE A LATE PROOF OF CLAIM (D.I. 4667)

Royal Indemnity Company ("Royal"), by and through its undersigned counsel, respectfully submits this Reply to the Objections of the Debtors (D.I. 4749), the Official Committee of Property Damage Claimants (D.I. 4757), the Official Committee of Asbestos Claimants (D.I. 4760) and the Libby, Montana Claimants (D.I. 4758) and in further support of Royal's Motion for Leave to File a Late Proof of Claim (D.I. 4667).[1] Submitted herewith are the supporting Affidavits of Carl J. Pernicone ("Pernicone Aff.") and E. Stratton Horres ("Horres Aff.").[2]

### PRELIMINARY STATEMENT

1. Royal concedes that it received a copy of the Bar Date Notice on or about June 28, 2002. [*See* Hutson Aff., ¶ 12]. Indeed, Royal even goes so far as to attach a copy of the

---

[1] The Objections filed by the two Committees and the Libby, Montana Claimants are basically "me too" joinders in the Debtors' Objection.

[2] This Reply was previously authorized by the Court in a Stipulation and Order entered on November 13, 2003, in Adversary Proceeding No. A-01-771 (D.I. 175), thus obviating the need for a motion authorizing same as normally required under Local Delaware Bankruptcy Rule 9006-1(d).

actual Bar Date Notice that it received to its Motion papers. [*Id.*, Ex. C]. Further, Royal does not dispute that the Bar Date applied to its contractual indemnification claims. Whether or not Royal itself received a copy of the Bar Date Notice, and whether or not the Bar Date applies to Royal's claim is not at issue. What is at issue is, whether notwithstanding receipt of the Bar Date Notice, Royal should still be permitted to file a tardy claim under the "excusable neglect" standard fashioned by the United States Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489, 1498 (1993). As more fully discussed herein, Grace has failed to rebut the showing made by Royal that it satisfies the *Pioneer* test, especially given the total lack of prejudice to Grace and its reorganization proceedings. The equities thus clearly weigh in favor of granting Royal leave to file a late claim.

## REPLY ARGUMENT

**A.    Royal's Counsel Did <u>Not</u> Receive Notice Of The Bar Date**

2.    At the outset, it is important to address the completely erroneous assertion made by Grace on no fewer than five occasions that *both* Royal *and* its counsel, Wilson, Elser, Moskowitz, Edelman & Dicker LLP ("Wilson Elser") received a copy of the Bar Date Notice. [*See* Grace Objection, at p. 2 and ¶¶ 7, 19, 26, 27, 32]. Although Royal admits that it received a copy of the Bar Date Notice, Wilson Elser vehemently disputes that it ever received a copy of the Bar Date Notice.

3.    In support of this erroneous assertion, Grace attaches to its Objection a copy of the Declaration of Service which purportedly shows that that the Bar Date Notice was sent not only to Royal, but also to its counsel, *i.e.* the Wilson Elser firm at its New York and Dallas

---

Unless otherwise defined, all capitalized terms used herein are intended to have the meaning ascribed to such terms in Royal's initial Motion papers.

--631358 1

offices. [Grace Objection, Ex. B]. The Wilson Elser partner who has been and currently still is principally responsible for handling all Grace matters on behalf of Royal is Carl J. Pernicone, Esq. who resides in Wilson Elser's New York, NY office. [Pernicone Aff. at 1]. As set forth in his Affidavit, Mr. Pernicone does not recall ever receiving a copy of the Grace Bar Date Notice, which would have been forwarded to his attention as the partner in charge of all asbestos-related Grace matters on behalf of Royal. [Id. at 5]. Moreover, after conducting a diligent search, no copy of the Bar Date Notice was found in any of Wilson Elser's files maintained by the New York office for Grace matters. [Id.].

4.    Upon a closer examination of the Declaration of Service submitted by Grace for the Bar Date Notice, the reason that Mr. Pernicone does not recall ever receiving a copy of the Bar Date Notice, and the reason why none could be found in Wilson Elser's files, is easily explained. The purported address for the New York office of Wilson Elser is listed on the Service List as "**105** EAST 42ND STREET, NEW YORK, NY". [Grace Objection, Ex. B (emphasis added)]. That was and is wrong. The correct address for Wilson Elser's New York office in June of 2002 through today is **150** East 42nd Street, New York, NY. [Pernicone Aff. at ¶ 4]. Quite simply, Royal's counsel never received a copy of the Bar Date Notice because it was *wrongly addressed by Grace.*[3]

5.    Grace's purported service of the Bar Date Notice on Wilson Elser's Dallas office was equally ineffective. Significantly, the Dallas office of Wilson Elser does not now and never

---

[3]  The original Declaration of Service dated June 27, 2002, filed by Grace to prove service on Royal is wrong in at least one other material respect. Read literally, the Declaration of Service states that only a copy of the blank Proof of Claim form – and not the Bar Date Notice Package -- was served on Royal in June of 2002. [*See* Grace Objection, Ex. B]. Grace clarifies this error in a supplemental Declaration of Service dated October 8, 2003, which was apparently made after the September 22, 2003 hearing on the motion to expand the preliminary injunction when the proof of claim issue first came to the fore. [*Id.*].

--631358 1

has represented or counseled Royal on any asbestos or other matters relating to Grace. [Horres Aff. at ¶ 4]. Rather, Wilson Elser's representation of Royal with respect to Grace has been undertaken solely by lawyers residing in Wilson Elser's New York offices. [Id.].

6.      Further, although Grace's Declaration of Service indicates that a copy of the Bar Date Notice was mailed to the Dallas office of Wilson Elser on or about June 21, 2001, as more fully set forth in the Affidavit of Stratton Horres, the Regional Managing Partner of the Dallas office, after a diligent investigation, no attorneys residing in the Dallas office of Wilson Elser ever recall receiving any such Bar Date Notice and no such Bar Date Notice has been located within any files maintained by the Dallas office. [Horres Aff. at ¶ 5].

7.      There are at least two reasons for the missing Bar Date Notice. First, Grace again misstated the address for Wilson Elser. The Service List submitted by Grace incorrectly lists the Dallas office's address as "**500** RENAISSANCE TOWER". [Grace Objection, Ex. B]. However, the correct address for Wilson Elser's Dallas office is **5000** Renaissance Tower, Dallas, TX. [Horres Aff. at ¶ 6].

8.      Second, even if a copy of the Bar Date Notice was received by Wilson Elser's Dallas office sometime in June 2002, there would have been no reason to retain a copy of the Notice given that the Dallas office had then no connection to any Grace matters. Indeed, it appears that the sole reason the Dallas office was even included on Grace's Service List was due to its prior representation of Brown & Root in about 5,000 asbestos personal injury actions filed within the State of Texas. [Horres Aff. at ¶ 7]. In about half of these personal injury actions, Grace was apparently named as a co-defendant. [Id.]. The Dallas office's representation of Brown & Root in the Texas asbestos personal injury litigation, however, ended in July of 2000, when Wilson Elser was substituted out as counsel of record for Brown & Root by the Dallas firm

-4-

of Goodwin Gruber. [*Id*.]. To the extent, that the Dallas office received any pleadings or notices related to the Texas asbestos personal injury litigation after July of 2000, they were immediately forwarded to the Goodwin Gruber firm. [*Id*.]. Moreover, the Dallas partner who had been in charge of administering the Brown & Root litigation left the firm in January of 2001. [*Id*.].

9.     Upon information and belief, when Grace was compiling its Service List for the Bar Date Notice, the Dallas office of Wilson Elser was included solely as a result of its prior representation of Brown & Root in the Texas asbestos personal injury litigation, and not as a result of any matters pertaining to Royal. [Horres Aff. at ¶ 8]. Accordingly, to the extent that Wilson Elser's Dallas office ever did receive a copy of the Bar Date Notice, it would have been forwarded to the Goodwin Gruber firm without retaining any copies. [*Id*. at ¶ 9]. More importantly, Wilson Elser's Dallas office would not have had any occasion to discuss any such Bar Date Notice with anyone at Royal. [*Id*.].

10.     Grace's failure to properly serve Wilson Elser with a copy of the Bar Date Notice is significant. Grace points out that Royal and its counsel (*i.e.*, Carl Pernicone of Wilson Elser's New York office) were well aware of the Montana Vermiculite litigation since at least March of 2002, before this Court even entered the Bar Date Order and Grace served the Bar Date Notices. [*See* Grace Objection, at ¶¶ 4, 10]. Indeed, Grace even attaches a letter and proposed order from the Montana Vermiculite litigation that was "cc:ed" to Mr. Pernicone on March 25, 2002. [*Id*., Ex. D]. If Royal and its counsel were aware of the Montana Vermiculite litigation prior to entry of the Bar Date Order, then certainly Grace was also well aware of exactly which attorney from which office of Wilson Elser was representing Royal, as well as the correct address for that office. Indeed, Grace was well aware that Mr. Pernicone was Royal's counsel in all asbestos-related matters with Grace since *at least 1985* when Royal was added as a party to the *Maryland*

--631358 1

*Casualty* asbestos coverage litigation involving Grace's primary insurers. [Pernicone Aff. at ¶¶ 1, 6]. Nevertheless, Grace erred in compiling the address of Wilson Elser's New York office for its Service List. As a consequence, neither Mr. Pernicone nor any other attorney at Wilson Elser responsible for the Grace-related Royal matters received a copy of the Bar Date Notice. Had Mr. Pernicone received a copy of the Bar Date Notice, he would have reviewed it with the firm's bankruptcy counsel and advised Royal to timely file a proof of claim. [*Id.* at ¶ 7].

11.    Contrary to Grace's assertions, therefore, Grace has *not* "complied with the specific language of the Bar Date Order, which calls for a copy of the Notice Package to be sent to counsel for appropriate parties." [Grace Objection, at ¶ 32]. Was Grace's error the product of a conscious effort to avoid serving Royal's counsel? Was it reckless indifference? Probably not. In all likelihood it was the product of inadvertence or careless neglect. As already shown, so too was Royal's failure to timely file a proof of claim prior to the Bar Date.

**B.    Grace Has Failed To Rebut Royal's Showing Of Excusable Neglect**

12.    Grace correctly identifies the four factors established by *Pioneer* for determining whether excusable neglect exists so as to allow a creditor to file a late proof of claim. [*See* Grace Objection at ¶ 17]. However, Grace's focus on the alleged neglect of Royal, rather than on whether or not that neglect is excusable, misapplies the *Pioneer* factors and fails to rebut the clear showing already made by Royal that its neglect should be excused under the circumstances presented here.

13.    Notwithstanding the clear and unequivocal holding of the Supreme Court in *Pioneer* that excusable neglect is not limited to those circumstances where the failure to timely file a claim is beyond the creditor's control, Grace nevertheless argues that Royal's delay here was solely within its own control and thus for this reason alone Royal should not be permitted to

--631358 1

file a tardy claim. [Grace Objection at ¶ 26]. Grace also attempts to imply, without any support

whatsoever, that Royal's neglect rose to a level beyond mere inadvertence or carelessness to

something approaching recklessness or a conscious disregard of the Bar Date. [*Id.* at ¶¶ 17, 18].

Grace is wrong on both points.

14.    First, Grace's argument concerning its own purportedly blameless conduct was

flatly rejected by the Supreme Court in *Pioneer* which opined in no uncertain terms on this issue

as follows:

> The ordinary meaning of 'neglect' is '*to give little attention or respect*' to
> *a matter*, or, closer to the point for our purposes, '*to leave undone or
> unattended to esp[ecially] through carelessness.*' Webster's Ninth New
> Collegiate Dictionary 791 (1983) (emphasis added). The word therefore
> encompasses both simple, faultless omissions to act and, more commonly,
> omissions caused by carelessness. * * * Congress plainly contemplated
> that the courts would be permitted, where appropriate, to accept late
> filings caused by inadvertence, mistake, or carelessness, *as well as* by
> intervening circumstances beyond the party's control.

*Pioneer*, 507 U.S. at 388, 113 S.Ct. at 1494-95 (emphasis added).  *See also In re O'Brien

Environmental Energy, Inc.*, 188 F.3d 116, 125 (3d Cir. 1999) ("In so holding, the [*Pioneer*]

Court explicitly rejected the argument that excusable neglect applies only to those situations

where the failure to comply is a result of circumstances beyond the creditor's reasonable

control.");  *In re Herman's Sporting Goods, Inc.*, 166 B.R. 581, 584 (Bankr. D.N.J. 1994)

("[B]lamelessness on the part of the movant is no longer the standard of 'excusable neglect'")

(citing *Pioneer*).

15.    Put another way, the Supreme Court noted in *Pioneer* that "'excusable neglect' is

understood to encompass situations in which failure to comply with a filing deadline is

attributable to *negligence.*" *Pioneer*, 507 U.S. at 394, 113 S.Ct. at 1497.

16.    Royal has submitted the Affidavit of Ms. Hutson explaining the circumstances surrounding the receipt of the Bar Date Notice and the subsequent failure to timely file a proof of claim to preserve Royal's indemnification rights under the Settlement Agreement. As noted by Ms. Hutson, she recalls briefly reviewing the Bar Date Notice, but not in detail; she does not recall seeing the one sentence directive that the Bar Date applied to indemnification type claims; she erroneously believed that the Bar Date only applied to fixed and liquidated claims such as for unpaid premiums and deductibles, and not to contingent and unliquidated indemnification claims; she admits to not having any extensive bankruptcy experience; and she admits that she failed to send to or review the Bar Date Notice with outside counsel. [Hutson Aff. at ¶¶ 12-14]. Do these actions indicate that Royal "gave little attention or respect to" the Bar Date Notice? Or that Royal "carelessly" failed to attend to the Bar Date Notice? Or that Royal was even "negligent"? Yes, they do. But, so too was Grace when it failed to properly serve the Bar Date Notice on Royal's counsel which Grace knew about for at least the *last eighteen years.*

17.    Moreover, what these actions do not indicate is that Royal was "reckless" or somehow consciously chose to ignore the Bar Date as argued by Grace. The concept of recklessness implies intent, or at least deliberate indifference equating to a conscious disregard for one's actions. Certainly, no such deliberate or conscious indifference can be inferred from Ms. Hutson's sworn statements, and no shred of evidence to the contrary has been submitted by Grace or any other party.[4]

---

[4]    Grace misconstrues Royal's argument about the one sentence reference to indemnification claims included within the Bar Date Notice. Royal does not argue that this Notice was insufficient. Royal does argue that this one sentence reference to indemnification claims included within a twelve page notice clearly aimed at Asbestos Property Damage Claims and Medical Monitoring Claims is easy to miss.

--631358 1

18.    Indeed, courts under circumstances far more egregious than those presented here have nevertheless granted leave to file a late claim, especially where no prejudice will result to the debtor.  For example, in *In re Earth Rock, Inc.*, 152 B.R. 61 (Bankr. D. Idaho 1993), the creditor was provided with express notice of the bar date, and after consulting with a bankruptcy attorney, was specifically advised not to file a proof of claim.  *Id*. at 61-62.  After obtaining substitute bankruptcy counsel, the creditor filed a motion for leave to file a late claim after the bar date.  After undertaking the requisite *Pioneer* analysis, the court in *Earth Rock* allowed the late claim since there was no showing that the creditor's claim would prejudice the debtor's reorganization efforts or otherwise delay the administration of the bankruptcy case.  *Id*. at 64.  *See also In re Pappalardo*, 210 B.R. 634, 647 (Bankr. S.D. Fla. 1997 ("[A] careless mistake in professional judgment is not bad faith.").

19.    In analyzing *Earth Rock* and other similar cases, the court in *In re Scared Heart Hospital of Norristown*, 186 B.R. 891, 898 (Bankr. E.D. Pa. 1995), noted that "attribution of the reason for the delay to the [creditor] should not outweigh the total lack of prejudice to the Debtor in our analysis of the equitable circumstances which the *Pioneer* court directs that we consider."

20.    That Royal was neglectful in attending to the Bar Date Notice is a given.  However, contrary to Grace's assertions, that does not end the inquiry.  Indeed, it is not even determinative.  As noted by the Third Circuit:  "While it is certainly relevant that the delay in this case was due in part to the lack of care on the part of [creditor], the concept of excusable neglect clearly anticipates this, i.e., neglect on the part of the one seeking to be excused.  * * * Thus, *this is not determinative* to the inquiry."  *O'Brien*, 188 F.3d at 128 (emphasis added; citation to *Pioneer* omitted).  What is determinative here is the total lack of prejudice to Grace and its Chapter 11 proceedings.

## C.    Grace Has Failed To Show Any Prejudice

21.    Grace concedes that it has not yet proposed a plan of reorganization, let alone confirmed one, and that it has not yet paid any estate assets to any creditors similarly situated to Royal. [Grace Objection at ¶ 21]. As noted by one court, "[t]he absence of a confirmed plan of reorganization indicates a lack of prejudice to the debtor." *Herman's Sporting Goods*, 166 B.R. at 584. Quite simply, this is a not a situation where Royal is seeking to file a late claim long after a plan has been confirmed and monies paid out. Thus, there is no prejudice that Grace has failed to account for the Royal claim prior to negotiating or confirming a plan, or that Grace would have to secure additional funding to pay the Royal claim. Moreover, given that other similarly situated creditors have yet to receive any distributions or even projections, they would not be prejudiced by allowing Royal's late claim. Royal is merely seeking to be placed in the same position as these other creditors.

22.    In this regard, Grace wholly ignores the Third Circuit's test for determining prejudice based upon the loss of some substantive right, such as the right to dispute the creditor's claim resulting from lost evidence or fading memories. *See O'Brien*, 188 F.3d at 125 ("prejudice is not merely the loss of an advantageous position, but must be something more closely tied to the merits of the issue."). Indeed, as far as Royal can tell, Grace's claim objection process is still in its early stages. Thus, nothing will prevent Grace from objecting to the Royal claim once it is filed.

23.    Further, while Grace asserts that Royal's potential $6,000,000 indemnification claim "is not an insignificant amount" [Grace Objection at p. 12], surely this sum pales in

--631358 1

comparison to the total liabilities at issue in Grace's bankruptcy cases which easily exceed several *billion* dollars.[5]

24.    Accordingly, Grace is left solely with the argument that it "*may*" be prejudiced by this Court's granting Royal leave to file a late claim because such a ruling "*could*" open up the proverbial "flood-gates" for other late filers.  [Grace Objection at p. 2 and ¶ 23].  Significantly, Grace fails to point to a single concrete example of any other creditors similarly situated to Royal who have sought, or even may seek, leave to file a late claim.  Grace's argument is thus purely hypothetical.  In this regard, it is significant that basically the same flood-gates argument was flatly rejected by the Third Circuit in *O'Brien* which cautioned that "[p]rejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence."  188 F.3d at 127-28.  Indeed, as noted by the court in *Herman's Sporting Goods*, the supposed potential that the flood-gates will open up and the supposed need for absolute certainty when setting a bar date runs counter to the Supreme Court's rejection of a bright-line test in *Pioneer* for purposes of establishing excusable neglect.  166 B.R. at 584.  Just as in *O'Brien* and *Herman's Sporting Goods*, Grace fails to substantiate its flood-gates argument with any proof that other similarly situated creditors have or will file motions seeking leave to file late claims.  Moreover, adopting such an argument here would negate Royal's right to seek leave to file a late claim based upon excusable neglect.

---

[5] The amount of Grace's retained indemnification obligations under the Settlement Agreement is also significantly less than the total settlement amount paid by Royal.  Again, to the extent the Court desires, Royal is willing to submit an unredacted copy of the Settlement Agreement for the Court's *in camera* review at the hearing on this Motion.

In this regard, Royal also notes that the Libby Claimants' argument that their claims do not fall within the "Products Hazard" coverage of the Royal policies and thus are not encompassed within the Settlement Agreement is simply wrong.  The Settlement Agreement encompasses not only claims falling within the Products Hazard of the Royal policies, but also any "*Asbestos-Related Claims*"— not just *asbestos products claims* --against Grace.  [*See* Hutson Aff., Ex. B].

-11-

**D.    The Length Of The Delay And Its Impact On Judicial Proceedings Is Immaterial**

25.    Grace tries to make an issue out of the length of time between Royal's motion for
leave to file a late claim and entry of the Bar Date Order. [Grace Objection at ¶ 24]. The
relevant time frame from which delay is calculated, however, runs from the Bar Date itself, not
from the date it was first established. *See O'Brien*, 188 F.3d at 129; *In re Spring Ford
Industries, Inc.*, 2003 WL 21785960, *4 (Bankr. E.D. Pa. 2003). Moreover, the length of the
delay is only material if it causes some prejudice to the debtor or otherwise impacts the judicial
proceedings. *O'Brien*, 188 F.3d at 130. Here, Royal promptly notified the Court and Grace in a
letter dated October 13, 2003, that it was intending to file this motion. [*See* D.I. 172 filed in
Adv. No. A-01-771]. That letter was written shortly after the September 22, 2003 hearing on the
motion to expand the preliminary injunction to the Montana Vermiculite claims and at which
time the Royal proof of claim issue first came to the fore. Thereafter, Royal promptly filed this
Motion on November 6, 2003, pursuant to a stipulated briefing schedule negotiated by counsel
and "so ordered" by this Court. [*See* D.I. 175 filed in Adv. No. A-01-771]. Thus, from the time
that Royal first realized there was even an issue as to whether it should have filed a proof of
claim, Royal has moved promptly and without any significant delay.

26.    Although Royal's motion was filed some seven months after the Bar Date, it was
also filed long before any plan of reorganization has even been proposed, let alone confirmed,
and long before the claim resolution process has concluded. *See Spring Ford*, 2003 WL
21785960, at *4 ("the filing occurred before any plan of reorganization was proposed"); *In re
McKissick*, 289 B.R. 535, 540 (Bankr. W.D. Pa. 2003) ("The delay did not impair balloting on a
proposed plan or the disclosure statement and/or the confirmation process."). In short, because
allowing Royal leave to file a late claim will not have any significant impact on Grace's

reorganization proceedings, or otherwise cause any prejudice to Grace, the alleged delay between the Bar Date and the filing of the instant Motion is simply immaterial. *See Herman's Sporting Goods*, 166 B.R. at 584 ("The finding of lack of prejudice and impact on judicial proceedings weigh strongly on the side of finding movant's neglect 'excusable'").

**E.    Grace Fails To Challenge Royal's Good Faith**

27.    Grace does not offer any evidence to the effect that Royal filed this motion in bad faith as part of a strategy to accomplish some improper purpose. To the contrary, Royal has demonstrated its good faith by promptly notifying the Court and the parties of its intention to file this motion as soon as Royal realized that it had failed to comply with the Bar Date, and then following up that notice with the filing of the actual motion pursuant to a stipulated briefing schedule.

**CONCLUSION**

28.    Royal's failure to timely file a proof of claim was solely the result of inadvertent carelessness. There was no devious plot behind this failure and the good faith basis underlying Royal's motion has not been challenged. More importantly, no prejudice whatsoever will result to Grace or any other creditor by allowing Royal leave to file a late claim, which will have no material impact whatsoever on Grace's multi-billion dollar reorganization proceedings which have yet to produce a confirmed plan. In sum, "the lack of any prejudice to [Grace] or to the interest of efficient judicial administration, combined with the good faith of [Royal] and [its] counsel, weigh strongly in favor of permitting the tardy claim." *Pioneer*, 507 U.S. at 398, 113 S.Ct. at 1499.

--631358 1

WHEREFORE, for all of the reasons set forth above and in Royal's moving papers, it is respectfully requested that the Court overrule the objections and enter an Order granting Royal leave to file a late proof of claim for any indemnity obligations owed by Grace under the Settlement Agreement, together with such other and further relief as this Court deems just and equitable.

Dated:  December 5, 2003                    Respectfully submitted,

                                            BIFFERATO, BIFFERATO & GENTILOTTI

                                            By: _____
                                            Ian Connor Bifferato, Esq. (#3273)
                                            1308 Delaware Avenue
                                            The Buckner Building
                                            Post Office Box 2165
                                            Wilmington, Delaware  19899-2165
                                            (302) 429-1900

                                            -and-

                                            Carl J. Pernicone, Esq.
                                            WILSON, ELSER, MOSKOWITZ,
                                              EDELMAN & DICKER LLP
                                            150 East 42nd Street
                                            New York, New York  10017-5639
                                            (212) 490-3000

                                            -and-

                                            Mark G. Ledwin, Esq.
                                            WILSON, ELSER, MOSKOWITZ,
                                              EDELMAN & DICKER LLP
                                            3 Gannett Drive
                                            White Plains, New York  10604
                                            (914) 323-7000

                                            Counsel for Royal Indemnity Company

--631358 1