**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-4212
_____

IN RE: KENSINGTON INTERNATIONAL LIMITED and
SPRINGFIELD ASSOCIATES, LLC, Petitioners

No. 03-4526
_____

IN RE: D.K. ACQUISITION PARTNERS, L.P.; FERNWOOD ASSOCIATES, L.P.
AND DEUTSCHE BANK TRUST COMPANY AMERICAS, Petitioners

On Petitions for Writs of Mandamus
to the United States Bankruptcy Court
for the District of Delaware
(Related to Bankruptcy Nos. 00-03837 and 01-01139)

_____

Argued on December 12, 2003

BEFORE: FUENTES, SMITH and GARTH, <u>Circuit Judges</u>

(Opinion Filed: December 18, 2003)

Roy T. Englert, Jr.   (argued)
Robbins, Russell, Englert, Orseck &
Untereiner
1801 K Street, N.W
Suite 411
Washington, DC  20006

*Attorney for Petitioners in 03-4212*

Richard Mancino (argued)
Marc Abrams
Willkie, Farr & Gallagher
787 Seventh Avenue
New York, NY 10019-6099

Joanne B. Willis
Klehr, Harrison, Harvey, Branzburg &
Ellers
919 North Market Street
Suite 1000
Wilmington, DE 19083

*Attorneys for Petitioners in 03-4526*

Charles O. Monk, II   (argued)
Saul Ewing
100 South Charles Street
Baltimore, MD  21201

Norman L. Pernick
J. Kate Stickles
Saul Ewing
222 Delaware Avenue
P.O. Box 1266, Suite 1200
Wilmington, DE  19899

*Attorneys for Respondents Owens
Corning et al*

David M. Bernick (argued)

Kirkland & Ellis
200 East Randolph Drive
Suite 6500
Chicago, IL 60601

*Attorney for Respondent W.R. Grace & Co.*

Elihu Inselbuch (argued)
Caplin & Drysdale
399 Park Avenue
27th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine
800 North King Street
Suite 300
Wilmington, DE 19801

*Attorneys for Respondent Official Committee of Asbestos Claimants of Owens Corning*

Michael J. Crames (argued)
Kaye Scholar
425 Park Avenue
New York, NY 10022

Edwin J. Harron
Young, Conaway, Stargatt & Taylor
P.O. Box 391, 1000 West Street
Brandywine Building, 17th Floor
Wilmington, DE 19899

*Attorneys for Respondent James J. McMonagle*

Daniel K. Hogan
Law Offices of Daniel K. Hogan

1701 Shallcross Avenue
Suite C
Wilmington, DE 19806

Sander L. Esserman
Stutzman, Bromberg, Esserman & Plifka
2323 Bryan Street
Suite 2200
Dallas, TX 75201-2689

*Attorneys for Respondent Baron & Budd
Claimants*

Jeffrey S. Trachtman
Kramer, Levin, Naftalis & Frankel
919 Third Avenue
39th Floor
New York, NY 10022

Adam G. Landis
Rebecca L. Butcher
Landis, Rath & Cobb
919 Market Street
Suite 600, P.O Box 2087
Wilmington, DE  19899

*Attorneys for Respondent Credit Suisse
First Boston Corp*

Neal J. Levitsky
L. Jason Cornell
Fox Rothschild
824 North Market Street
Suite 810
Wilmington, DE 19899-2323

Henry W. Simon
Robert A. Simon
Simon & Simon
3327 Winthrop Avenue

Suite 200
Fort Worth, TX 76116

*Attorneys for Respondent Waters &
Kraus*

Michael R. Lastowski
Duane Morris
1100 North Market Street
Suite 1200
Wilmington, DE 19801

*Attorney for Intervenor Official
Committee of Unsecured Creditors of
USG Corp.*

Mark E. Felger
Jeffrey R. Waxman
Cozen & O'Connor
1201 Market Street
Suite 1400
Wilmington, DE 19801

*Attorneys for Intervenor Official
Committee of Unsecured Creditors of
Armstrong World Industries, Inc.*

Stephen C. Neal (argued)
Cooley Godward
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306

Daniel J. DeFranceschi
Richards Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

*Attorneys for Amicus Curiae USG Corp.*

-4-

Richard A. Samp
Washington Legal Foundation
2009 Massachusetts Avenue, N.W.
Washington, DC 20036

*Attorney for Amicus Curiae Washington
Legal Foundation*

_____

OPINION OF THE COURT

_____

Garth, <u>Circuit</u> <u>Judge</u>:

_____We have before us two Emergency Petitions for a Writ of Mandamus. Both

Petitions allege that a district court judge who has presided over five asbestos-related

bankruptcies for the past two years has, through his association with certain advisors,

created an appearance of partiality such that he must be disqualified from any further

participation in those proceedings. The parties seeking the district court judge's

disqualification originally moved for recusal in the Bankruptcy Court, but filed Petitions

for Mandamus in our Court after the district court judge withdrew the recusal motions

from the Bankruptcy Court and stayed discovery on those motions. The District Court

has yet to rule on the recusal motions. As originally filed, both Petitions asked us to

issue an order directing the district court judge either to: (a) recuse himself pursuant to

28 U.S.C. § 455; or (b) expedite consideration of (including discovery on) the recusal

motions pending before him.

After carefully considering all of the written submissions from the parties and *amicus curiae* and following a sharply-contested hearing, we have decided to direct the district court judge to rule on the withdrawn recusal motions.  In doing so, we will vacate the district court judge's order staying discovery on the recusal motions and direct that expedited discovery proceed without interruption.  Because of certain temporal exigencies explained later in this opinion, we will direct that all discovery *and the district court judge's ruling on the recusal motions* be completed no later than January 31, 2004. We will retain jurisdiction over any further proceedings subsequent to the district court judge's ruling.  *See In re Sch. Asbestos Litig.,* 977 F.2d 764, 774-78 (3d Cir. 1992).

We emphasize at the outset of this opinion that we are not ruling on the merits of the disqualification relief sought by the Petitioners.  Our decision to remand the recusal motions to the district court judge is prompted by our overarching concern that we do not have an adequately developed evidentiary record before us.

I.

A.   The Parties

_____This case arises from five Chapter 11 asbestos-related bankruptcies involving the following corporate entities: Owens Corning, W.R. Grace & Co., USG Corporation, Armstrong World Industries, Inc., and Federal-Mogul Global, Inc. (collectively, the "Five Asbestos Cases").

-6-

The first Petition for Mandamus was brought by Kensington International Limited and Springfield Associates, LLC, two creditors of Owens Corning (collectively, "*Kensington*").

The second Petition for Mandamus was filed by D.K. Acquisition Partners, L.P, Fernwood Associates, L.P., and Deutsche Bank Trust Company Americas, three creditors of  W.R. Grace & Co. (collectively, "*D.K. Acquisition Partners*").

In response to the Petitions for Mandamus, we received Answers from Owens Corning, the Unofficial Committee of Select Asbestos Claimants, the Baron & Budd Claimants, W.R. Grace & Co., Waters & Kraus, LLP, a Dallas firm which filed a response on November 10 on behalf of asbestos claimants, James J. McMonagle (Legal Representative for Future Claimants of Owens Corning), the Official Committee of Asbestos Creditors of Owens Corning, the Official Committee of W.R. Grace Asbestos Claimants, and Credit Suisse First Boston ("CSFB").  We also received Replies to these Answers.

In addition, we received written submissions from five *amicus curiae*.  In no particular order, the *amici* are: Armstrong World Industries, Inc., the Official Committee of Unsecured Creditors of Armstrong World Industries, Inc. et al., the Washington Legal Foundation, USG Corporation, and the Official Committee of Unsecured Creditors of USG Corporation et al.

### B.   The Court-Appointed Consultants

On November 27, 2001, then-Chief Judge Becker of our Court[1] ordered that the Five Asbestos Cases, which were then pending in the District of Delaware, be transferred from the Bankruptcy Court to Senior District Court Judge Alfred M. Wolin of the District Court of New Jersey.  Chief Judge Becker explained in his order that "these bankruptcy cases, which carry with them tens of thousands of asbestos claims, need to be consolidated before a single judge so that a coordinated plan for management can be developed and implemented."  Shortly after receiving the Five Asbestos Cases, Judge Wolin re-referred them to the Bankruptcy Court, but retained jurisdiction over the asbestos-related claims and issues.

On December 28, 2001, Judge Wolin named five "Court Appointed Consultants" (the "Consultants") to assist him in the Five Asbestos Cases.  The five individuals he named were David Gross, Judson Hamlin, William Dreier, John Keefe, and Francis McGovern, all of whom had prior experience with asbestos or mass tort litigation.[2] Pursuant to Judge Wolin's order, the Consultants were to "advise the Court and to undertake such responsibilities, including . . . mediation of disputes, holding case management conferences, and consultation with counsel, as the Court may delegate to

---

[1] Chief Judge Becker's term as Chief Judge of this Court ended on May 4, 2000. He was succeeded by Chief Judge Scirica on that date.

[2] Consultants Hamlin, Dreier, and Keefe are former judges of the Appellate Division of the New Jersey Superior Court; Consultant McGovern is a professor of law at Duke University; and Consultant Gross is an experienced litigator in asbestos-related lawsuits.

them individually." The Consultants could also be delegated "certain authority to hear matters and to advise the Court on issues that may arise in these five large Chapter 11 cases." Judge Wolin's order provided that he could, "without further notice, appoint any of the Court-Appointed Consultants to act as a Special Master to hear any disputed matter and to make a report and recommendation to the Court on the disposition of such matter." In connection with his order, Judge Wolin announced at a Case Management conference that he would conduct *ex parte* meetings with the attorneys.

## C.   The *G-I Holdings* Bankruptcy

Two months earlier, the Bankruptcy Court for the District of New Jersey had appointed Judson Hamlin, one of the Consultants, to serve as the "Legal Representative of Present and Future Holders of Asbestos-Related Demands" in still another asbestos-related bankruptcy case captioned *In re G-I Holdings Inc.* The *G-I Holdings* case is not related to the Five Asbestos Cases and Judge Wolin has played no role in the *G-I Holdings* proceedings. The *G-I Holdings* bankruptcy does, however, share one common characteristic with the Five Asbestos Cases assigned to Judge Wolin:  it too faced a wave of asbestos lawsuits. *See Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman,* 277 B.R. 20, 24-28 (S.D.N.Y. 2002) (explaining that, "[b]eginning in the late 1970's, large numbers of claimants began to bring lawsuits [against *G-I Holdings*] seeking compensation for bodily injury, death and related harms inflicted by asbestos and products containing asbestos"). We have also been told that many of *G-I Holdings'*

significant creditors, as well as asbestos-claimant creditors, also have claims against the debtors in the Five Asbestos Cases.

Mr. Hamlin was not the only Consultant who participated in the *G-I Holdings* bankruptcy. Less than one month after Judge Wolin appointed the five Consultants, Mr. Hamlin filed an application in *G-I Holdings* seeking the Bankruptcy Court's approval to engage David Gross, another Consultant, as his local counsel. In connection with that application, Mr. Gross submitted an affidavit to the *G-I Holdings* Bankruptcy Court disclosing his appointment as a Consultant to Judge Wolin in the Five Asbestos Cases. Mr. Hamlin's application was met with no objection and the Bankruptcy Court approved Mr. Gross as Mr. Hamlin's counsel.

## D. *Kensington*'s Recusal Motion

Almost two years later, *Kensington* filed a motion in the Bankruptcy Court seeking to recuse Judge Wolin from further participation in the *Owens Corning* bankruptcy. *Kensington*, which claims that it only recently learned about Messrs. Gross and Hamlin's participation in the *G-I Holdings* bankruptcy, asserted that Judge Wolin was precluded under 28 U.S.C. § 455 from continuing to preside over the *Owens Corning* bankruptcy by virtue of the fact that two of his Consultants had conflicts of interest. In connection with that motion, *Kensington* sought discovery of W.R. Grace & Co., Messrs. Hamlin and Gross, and their law firms. CSFB, an agent for banks holding

approximately $1.6 billion in pre-petition claims against Owens Corning and certain of

its subsidiaries, filed papers supporting Judge Wolin's recusal.

Three days later, the debtors in the *W.R. Grace* bankruptcy filed an application in

the Bankruptcy Court to appoint Mr. Hamlin as the Legal Representative for Future

Asbestos Claimants of W.R. Grace & Co.  The application disclosed that Mr. Hamlin

was already serving as a Consultant to Judge Wolin in the Five Asbestos Cases

(including, of course, the *W.R. Grace* bankruptcy).

On October 23, 2003, Judge Wolin entered an order staying all discovery in

connection with *Kensington*'s recusal motion.  The order explained that recusal motions

are often brought for improper purposes and that all discovery should be stayed until

*Kensington*'s motion could be tested by the adversarial process.  Judge Wolin also

announced in his order that he intended to issue a Case Management Order in the near

future governing further proceedings on the recusal motion.

### E.   *Kensington*'s Mandamus Petition

___      Dissatisfied with Judge Wolin's decision to *sua sponte* stay discovery on the

recusal motion, *Kensington* filed an Emergency Petition for a Writ of Mandamus with us

on October 28, 2003.  *Kensington*'s petition asked us to issue a Writ of Mandamus

"directing Judge Wolin either (a) to disqualify himself under 28 U.S.C. § 455, or (b) to

withdraw his October 23[, 2003] order suspending briefing and discovery on the recusal

motion, and instead allow expedited discovery and an expedited briefing and hearing schedule on the motion."

On October 30, 2003, we issued an order staying "all proceedings affected by" *Kensington*'s mandamus petition (with the exception of the recusal motion) and establishing a briefing schedule. Our order invited Judge Wolin to respond to *Kensington*'s petition.

Meanwhile, Judge Wolin issued a Case Management Order on October 28, 2003 which left his stay of discovery order in place, but directed each of the five Consultants to submit affidavits setting forth certain information relating to their activities in the Five Asbestos Cases and the *G-I Holdings* bankruptcy. The order also established a briefing schedule on *Kensington*'s recusal motion.

## F.  The District Court's Responses

In response to our invitation, Judge Wolin submitted three written responses to *Kensington*'s petition. In his first response, Judge Wolin announced that he would "judge the Motion to Recuse on the law and facts presented after all of the parties have been heard in full" and that he would seek to resolve the motion as quickly as possible. Judge Wolin also explained that he had recently finished a four-week bench trial in the *Owens Corning* bankruptcy case concerning the issue of "substantive consolidation." That trial was necessary because *Owens Corning* had proposed a plan of reorganization which, if adopted, would substantively consolidate *Owens Corning* and its debtor-

-12-

subsidiaries into a single bankruptcy estate.  It is alleged that *Kensington* and CSFB have

opposed substantive consolidation because it would significantly reduce their aggregate

recovery.[3]  Judge Wolin stated in his response that he was preparing an opinion on

substantive consolidation, but had not yet issued the opinion when *Kensington* filed its

motion seeking his recusal.  Judge Wolin also maintained that he had no information

regarding the *G-I Holdings* bankruptcy.

In his second response, Judge Wolin addressed the suggestion made by *D.K.*

*Acquisition Partners* that his *ex parte* communications with the Consultants and various

attorneys somehow required his recusal.[4]  Judge Wolin explained that he had announced

at his initial Case Management conference on December 20, 2001, that the size and

complexity of the Five Asbestos Cases would require him to have *ex parte*

communications.  The purpose of the *ex parte* communications, according to Judge

---

[3]  Owens Corning has explained that:
Unlike Owens Corning's other major unsecured creditors, which have
direct claims against the parent company alone, [*Kensington* and CSFB
have] guarantees from certain Owens Corning subsidiaries.  If these
subsidiary guarantees are enforceable, [they] will receive a greater
proportionate recovery than that received by other unsecured creditors.
Substantive consolidation would eliminate this claimed disproportionate
recovery by [*Kensington* and CSFB].

[4]  Around the same time that Judge Wolin filed his second response, USG
Corporation filed a motion in the Bankruptcy Court seeking his recusal.  Unlike some of
the other parties seeking Judge Wolin's removal, USG Corporation argued that the
extensive *ex parte* communications between Judge Wolin and the Consultants (as well as
other persons) provide an independent basis for Judge Wolin's disqualification under
both 28 U.S.C. § 455(a) and (b)(1).

Wolin, "was to ensure that each committee or corporate constituency was afforded the opportunity to provide to the Court insights as to why, in the competition for limited dollars, its claim was just."  Judge Wolin also wrote that, "[g]iven that these meetings occurred on a regular basis without complaint and given that the December 20, 2001 case management conference alerted all concerned that ex parte meetings were part of the District Court's case management plan, it strikes a discordant note that the conduct of ex parte conferences would be the ground for a recusal motion."

In his third response, Judge Wolin again defended his Case Management methods and, in particular, his decision to allow *ex parte* communications.  Judge Wolin explained that the public disclosure of proprietary or other sensitive information in the context of a bankruptcy proceeding can have significant economic ramifications and therefore "it was the expressed intent of the District Court to provide access to any and all interested parties free of the constraint of damning admissions in a public arena." Judge Wolin also recommended, for the first time, that we -- the Court of Appeals -- decide the merits of *Kensington*'s Petition for Mandamus without further delay, although he stood ready to decide the recusal motions if we found the record to be insufficient.

G.   The Consultants' Affidavits

In compliance with Judge Wolin's order, each of the Consultants filed affidavits in the District Court on November 14, 2003 describing their activities in the Five Asbestos Cases.  Mr. Gross stated in his affidavit that Judge Wolin had been aware "[a]t

-14-

all relevant times" of Mr. Gross's role in the *G-I Holdings* bankruptcy case. Mr. Gross also explained that his role in the Five Asbestos Cases was essentially "that of a settlement facilitator" and that he had never "assisted in any way in Judge Wolin's decision-making function" or "discussed with Judge Wolin . . . any legal or factual issues before the Court or likely to come before the Court in any of the five bankruptcies assigned to Judge Wolin, or, . . . in the *G-I Holdings* case."

Mr. Hamlin explained in his affidavit that his assignments as a Consultant to Judge Wolin "consisted of reviewing appeals from the Delaware Bankruptcy Court and submitting a draft opinion in each of the [Five Asbestos Cases]," a role Mr. Hamlin likened "to that of a magistrate [judge] in providing recommended findings of fact and conclusions of law to a district judge." Mr. Hamlin asserted that he had prepared only one draft opinion in the *Owens Corning* bankruptcy and that Judge Wolin had not used that particular opinion. Mr. Hamlin also stated that he "did not discuss any substantive issues in the [*Owens Corning*] case with Judge Wolin at any time."

## H.   The Answers

On November 21, 2003, Answers to the mandamus petitions were filed. The following opposed *Kensington*'s efforts to disqualify Judge Wolin: Owens Corning Corp., the Official Committee of Asbestos Creditors in Owens Corning, James McMonagle (the Legal Representative for Owens Corning's Asbestos Claimants), and the Baron & Budd Claimants. CSFB supported Judge Wolin's disqualification.

## I.  *D.K. Acquisition Partners'* Mandamus Petition

_____On November 14, 2003, the same day that the Consultants submitted their affidavits to the District Court, *D.K. Acquisition Partners* filed a motion in the *W.R. Grace* bankruptcy case seeking Judge Wolin's recusal.  A week later, *D.K. Acquisition Partners* filed an emergency petition with us seeking the same relief sought by *Kensington.*

We ordered that *D.K. Acquisition Partners'* mandamus petition be consolidated with the *Kensington* petition.  We have since received Answers to *D.K. Acquisition Partners'* petition from W.R. Grace & Co., the Official Committee of W.R. Grace Asbestos Claimants, and the Unofficial Committee of Select W.R. Grace Asbestos Claimants.

## J.  Hearing

On December 12, 2003, we held the hearing scheduled by our order of November 21, 2003.  Both parties and *amici* were heard and various arguments and representations urged, on the one hand, that we disqualify Judge Wolin and, on the other hand, that we deny disqualification.  Among the representations which we have taken into consideration insofar as expediting our ruling and Judge Wolin's ruling is Mr. Inselbuch's representation that since the filing of these cases close to 30,000 asbestos claimants had died of mesothelioma and lung cancer and that 15 victims "will die today as a matter of statistics."  Hence, he claimed delay was fatal.

II.

We turn now to the governing legal standards. *Kensington* and *D.K. Acquisition Partners* both seek Judge Wolin's disqualification under 28 U.S.C. § 455(a).[5] *Kensington* stated in its Petition for Mandamus that it was also seeking Judge Wolin's disqualification under § 455(b)(1),[6] but it has relied primarily on § 455(a).

A.  Standards Governing Writs of Mandamus

We have the power to issue writs of mandamus under the All Writs Act, 28 U.S.C. § 1651(a), which provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *See Haines v. Liggett Group Inc.,* 975 F.2d 81 (3d Cir. 1992). A writ of mandamus is, however, an extraordinary form of relief. *See In re Federal-Mogul Global, Inc.,* 300 F.3d 368, 379 (3d Cir. 2002). "As the adjective 'extraordinary' implies, . . . courts of appeals must be chary in exercising that power: '[M]andamus must not be used as a mere substitute for appeal.'" *In re Sch. Asbestos Litig.,* 977 F.2d 764, 772 (3d Cir. 1992) (quoting *Westinghouse Elec. Corp. v. Republic of Philippines,* 951 F.2d 1414, 1422 (3d Cir.

---

[5]  § 455(a) provides in its entirety that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

[6]  § 455(b)(1) provides that a judge must disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

-17-

1991)).  If, in effect, an appeal will lie, mandamus will not.  "Even when the petitioner

shows that there is no other adequate means to obtain the desired relief, and also has

shown a 'clear and indisputable' right to issuance of the writ, the exercise of our power is

largely discretionary."  *Alexander v. Primerica Holdings, Inc.,* 10 F.3d 155, 163 (3d Cir.

1993) (quoting *Will v. United States,* 389 U.S. 90, 96 (1967) (citation omitted)).

B.  Mandamus as a Means For Disqualifying a Judge

"Mandamus is a proper means for this court to review a district court judge's

refusal to recuse from a case pursuant to 28 U.S.C. § 455(a), where the judge's

impartiality might reasonably be questioned."[7]  *Alexander,* 10 F.3d at 163.  Indeed,

"[v]irtually every court of appeals has recognized the necessity and propriety of

interlocutory review of disqualification issues on petitions for mandamus 'to ensure that

judges do not adjudicate cases that they have no statutory power to hear.'"  *Alexander,* 10

F.3d at 163 (quoting *School Asbestos,* 977 F.2d at 778).  Less well established, however,

is the inclination of a court of appeals to entertain a mandamus petition seeking a district

court judge's disqualification when the district court judge has not yet ruled on a motion

for recusal pending before him.

---

[7]  In *City of Pittsburgh v. Simmons,* 729 F.2d 953, 954 (3d Cir. 1984), we relied
on our long-standing precedent that a denial of recusal did not constitute a final order and
thus appellate jurisdiction could not be entertained.  That case did not, however, specify
the statutory recusal that was being sought.  In *School Asbestos,* Judge Becker of our
Court held that a Petition for Mandamus predicated on § 455 would be entertained by
this Court.  *See School Asbestos,* 977 F.2d at 775.

-18-

C.   Standard for Disqualification under § 455(a)

Whenever a judge's impartiality "might reasonably be questioned" in a judicial proceeding, 28 U.S.C. § 455(a) requires that the judge disqualify himself.  The test for recusal under § 455(a) is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned.  *Edelstein v. Wilentz,* 812 F.2d 128 (3d Cir. 1987).

It is of no consequence that the judge is not *actually* biased because § 455(a) "concerns not only fairness to individual litigants, but, equally important, it concerns 'the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who *appears* to be tainted.'"  *Alexander v. Primerica Holdings, Inc.,* 10 F.3d 155, 162 (3d Cir. 1993) (quoting *School Asbestos,* 977 F.2d at 776) (emphasis added).

In *Haines v. Liggett Group Inc.,* 975 F.2d 81 (3d Cir. 1992), where a mandamus petition filed by leading tobacco companies charged that the district court judge had disqualified himself when he stated that the tobacco industry concealed smoking risks and "despite some rising pretenders, . . . may be the king of concealment and disinformation," we held that "[i]mpartiality and the appearance of impartiality in a judicial officer are the sine qua non of the American legal system" and that "[a]ny tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias."  *Id.* at 98 (quoting *Lewis v. Curtis,* 671

-19-

F.2d 779, 789 (3d Cir. 1982)).  We went on to say in *Haines* that the district court judge

in question had "been a distinguished member of the federal judiciary for almost 15 years

and [was] no stranger to this court; he [was] well known and respected for magnificent

abilities and outstanding jurisprudential and judicial temperament." *Id.*  Judge Wolin is

no different -- he exhibits the same admirable qualities and talents.

> We went on to say in *Haines* that:

> On the basis of our collective experience, we would not agree that [the district court judge was] incapable of discharging judicial duties free from bias or prejudice. Unfortunately, that is not the test. It is not our subjective impressions of his impartiality gleaned after reviewing his decisions these many years; rather, the polestar is "[i]mpartiality and *the appearance of impartiality*."

*Id.*

### D.   Standard for Disqualification under § 455(b)(1)

Whereas § 455(a) is a catchall disqualification provision, § 455(b)(1) is more

narrow in that it requires a judge to disqualify himself only if "he has a personal bias or

prejudice concerning a party, or personal knowledge of disputed evidentiary facts

concerning the proceeding."  28 U.S.C. § 455(b)(1); *see also Liteky v. United States,* 510

U.S. 540, 548 (1994) (describing § 455(a) as a "'catchall' recusal provision, covering

both 'interest or relationship' and 'bias or prejudice' grounds").  Unlike disqualification

under § 455(a), however, which may be waived by the parties, the grounds for

disqualification under § 455(b)(1) generally cannot be waived.  *See* 28 U.S.C. § 455(e).

As noted above, *Kensington*'s mandamus petition relies on both § 455(a) and § 455(b)(1).  *D.K. Acquisition Partners'* petition was brought under § 455(a).

### III.

In light of these standards, we now examine the arguments presented by the parties and *amicus curiae* both in support of, and in opposition to, Judge Wolin's recusal.

### A.  Arguments in Support of Disqualification

The parties asking for Judge Wolin's disqualification first seek to demonstrate that Messrs. Gross and Hamlin's dual roles in the Five Asbestos Cases and *G-I Holdings* gave rise to potential and actual conflicts of interest.  In doing so, these parties contend, among other things, that:

- It is highly likely that a significant number of the future asbestos claimants in *G-I Holdings* will also be future claimants in the Five Asbestos Cases,[8] thus creating a conflict between Messrs. Gross and Hamlin's duty to zealously represent their clients, on the one hand, and their duty to give Judge Wolin neutral advice, on the other;

- Messrs. Gross and Hamlin never disclosed to the parties in the Five Asbestos Cases that they were representing the asbestos claimants in *G-I Holdings*;

- Messrs. Gross and Hamlin repeatedly used their positions as advisors to Judge Wolin to advocate their clients' partisan interests in *G-I Holdings*;

---

[8]  The Petitioners claim that, "[b]ecause asbestos claimants frequently claim to have been exposed to asbestos-containing products produced by more than one manufacturer, or are unsure of the identity of the manufacturer who produced the product that allegedly caused their injuries, it is not uncommon for asbestos claimants to assert claims against different manufacturers."

- Messrs. Gross and Hamlin challenged and criticized in *G-I Holdings* an expert witness who is likely to testify in *Owens Corning*;

- There were numerous instances in which Messrs. Hamlin and Gross, as partisan advocates for the asbestos claimants in *G-I Holdings*, met *ex parte* with James McMonagle, the Legal Representative for Future Asbestos Claimants in *Owens Corning*, to discuss "common futures issues;" and

- The debtors in *W.R. Grace* applied to the Bankruptcy Court to have Mr. Hamlin appointed as the legal representative for future asbestos claimants -- an application which, if granted, would give rise to another conflict.

Building on that argument, the Petitioners next contend that, through his close association with the Consultants, Judge Wolin was "tainted" by association with Messrs. Gross and Hamlin, such that a reasonable person might question his impartiality. The Petitioners emphasize that it matters not whether Judge Wolin actually knew of the conflicts, but only that, as a result of Messrs. Hamlin and Gross's dual and conflicting roles, a reasonable person might question Judge Wolin's partiality. The Petitioners also point out that the Washington Legal Foundation, the only party with no direct interest in this case, supports Judge Wolin's recusal.[9]

The Petitioners also emphasize that Judge Wolin apparently knew all along that Messrs. Hamlin and Gross were serving as partisans on behalf of the future claimants in *G-I Holdings*, but did not make a disclosure to the parties. The Petitioners argue that the appearance of impropriety was further fostered by the extensive *ex parte* communications

---

[9] Owens Corning challenges the Washington Legal Foundation's purported non-interested party status, claiming that it is "allied" with the commercial creditors and regularly campaigns for asbestos tort reform in the media, courts, and U.S. Congress.

between Judge Wolin and the Consultants.  Taken together, the Petitioners contend that these factors conclusively demonstrate that Judge Wolin's impartiality might be questioned, thereby mandating his removal.

B.  <u>Arguments Against Disqualification</u>

The parties opposing Judge Wolin's disqualification argue first and foremost that the Petitions for Mandamus should be denied because they are untimely.  *See United States v. York,* 888 F.2d 1050, 1055 (5th Cir. 1989) (stating that timeliness requirement "prohibits knowing concealment of an ethical issue for strategic purposes").  The premise underlying this argument is that the Petitioners knew, or reasonably should have known, about Messrs. Gross and Hamlin's roles in *G-I Holdings* long ago, but chose not to act on that information until recently.  Those parties point out, for example, that (a) Messrs. Gross and Hamlin's participation in *G-I Holdings* was a matter of public record and was widely reported in the asbestos litigation trade press; and (b) that certain law firms representing the creditors in the *Owens Corning* bankruptcy received notice of Messrs. Gross and Hamlin's participation in *G-I Holdings*.[10]

---

[10]  *Kensington* and *D.K. Acquisition Partners* vigorously dispute any suggestion that they deliberately delayed filing their respective Petitions for Mandamus.  *Kensington* flatly states that it had "no knowledge" of Messrs. Gross and Hamlin's participation in *G-I Holdings* until two weeks before it filed its recusal motion.  For its part, *D.K. Acquisition Partners* claims that it first learned about Messrs. Gross and Hamlin's role in *G-I Holdings* when *Kensington* filed its recusal motion.

-23-

In addition to the timeliness argument, the parties opposing the mandamus petitions contend that:

- *Kensington*'s petition for mandamus is merely a litigation tactic intended to derail the *Owens Corning* bankruptcy, as evidenced by the "barrage of motions and lawsuits" purportedly filed by *Kensington* beginning in October 2003;

- The petitions for mandamus have failed to demonstrate that Judge Wolin's association with Messrs. Gross and Hamlin requires his recusal; and

- The complexity of the Five Asbestos Cases required a novel case management approach, thus justifying the use of advisors with broad powers and *ex parte* communications.[11]

Finally, certain parties have tried to impress upon us that even if Judge Wolin must be disqualified from the *Owens Corning* bankruptcy, it does not necessarily follow that he must also be disqualified from presiding over the remaining four bankruptcies. For example, W.R. Grace & Co. believes the parties in the *W.R. Grace* bankruptcy should await a ruling in the *Owens Corning* bankruptcy before concluding whether similar relief should be extended to the *W.R. Grace* bankruptcy.  In a similar vein,

---

[11]  We must confess that we have struggled to define the role and position of the "Consultants."  To the best of our knowledge, the Consultants' roles and positions are truly novel in terms of the powers they were assigned.  *See, e.g.,* Fed. R. Civ. P. 53(a) (authorizing district courts to appoint "masters"); Fed. R. Evid. 706 (permitting "court-appointed experts"); 28 U.S.C. § 636(b)(1) (permitting referrals to magistrate judges); *see also* December 1, 2003 Amendment to Fed. R. Civ. P. 53 (providing, inter alia, that a "Master must not have a relationship to the parties, counsel, action, or court that would require disqualification of a judge under 28 U.S.C. § 455").

　　At oral argument, we asked Owens Corning's attorney if he had ever heard of a judge appointing this kind of a "hybrid" advisor.  He replied that he had not.

Armstrong World Industries submitted a Statement solely to emphasize that Judge Wolin and the Consultants played a minimal role in the *Armstrong* bankruptcy.

IV.

After reviewing the written submissions from the parties, the District Court, and *amicus curiae*, and after hearing oral argument on December 12, 2003, we will, while retaining jurisdiction, remand this matter to Judge Wolin so that he can, in the first instance, decide (following expedited discovery) whether he should recuse himself from one or more of the Five Asbestos Cases.  Our recital of the parties' arguments as they are presented in this opinion are not to be taken or interpreted as expressions or inclinations of this Court respecting the issue of recusal or disqualification.

First and foremost, we are concerned that the existing record is inadequate and incomplete.  We are reluctant to act in a complex situation such as this one, where so many vital interests are at stake, without a developed evidentiary record.  We do not fault the parties.  Judge Wolin's stay of discovery order prevented the parties from developing evidence of the circumstances which they allege give rise to the recusal motions.

Hence, a remand allowing for discovery is necessary because the primary inquiry to which we must respond pursuant to 28 U.S.C. § 455(a) is "whether a reasonable person *knowing all the circumstances* would harbor doubts concerning the judge's impartiality" -- an inquiry which necessarily requires that *we* know all the circumstances. *Jones v. Pittsburgh Nat'l Corp.,* 899 F.2d 1350, 1356 (3d Cir. 1990) (emphasis added).

-25-

Accordingly, we require in order to discharge our judicial function that the evidentiary record in this case be developed.

In its Reply brief, *Kensington* asserted that, in light of the extensive briefing and scheduled oral argument, there was "no need to remand this case for further factfinding" and that we could "and should enter a recusal order on the existing record."  Briefs without an evidentiary basis and oral argument are, however, a poor substitute for a developed evidentiary record which can result from an adversarial discovery process.

Among other things, discovery in this case may shed light on such matters as (i) the full extent of the Consultants' activities in the Five Asbestos Cases; (ii) Messrs. Gross and Hamlin's activities in *G-I Holdings*; (iii) the timeliness of the Petitions for Mandamus; and (iv) the extent to which recusal, if warranted in one of the bankruptcies, must be held to extend to the other bankruptcies.  Because discovery is not an exercise which this Court can reasonably conduct, but is more the function of the District Court, we will vacate the stay Judge Wolin entered in his October 23, 2003 order and remand this matter to Judge Wolin so that his recusal ruling, which we direct that he make, may benefit from the discovery engaged in by the parties.[12]

---

[12]  In remanding this matter to Judge Wolin, we are deviating slightly from the relief requested by *Kensington*.  In its Reply brief, *Kensington* requested that, in the event we decided additional factfinding was required, we remand the motion for recusal to a different judge for resolution.  *Kensington* believed this was necessitated by certain remarks Judge Wolin made in his written responses to the mandamus petitions, including his statement that the timing of *D.K. Acquisition Partners'* recusal motion "speaks volumes as to the legitimacy of the Motion for Recusal of the District Court."

Second, our decision to remand is impelled in large part by the standards governing the issuance of a writ of mandamus.  It is well established that a writ of mandamus will issue *only* if the party seeking the writ has "no other adequate means to attain the desired relief."  *In re Sharon Steel Corp.*, 918 F.2d 434, 436 (3d Cir. 1990). Clearly that standard cannot be met where a motion seeking the district judge's disqualification -- the same relief sought in the mandamus petitions -- is pending in the district court.

Finally, our decision to remand this matter to Judge Wolin is guided by the principle that "[d]iscretion is confided in the district judge in the first instance to determine whether to disqualify himself . . . [because the] judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a recusal motion."  *In re Drexel Burnham Lambert Inc.,* 861 F.2d 1307, 1312 (2d Cir. 1988)

---

We decline to remand this matter to a different judge because we do not believe Judge Wolin's written responses demonstrate that he will be unable to render an impartial decision on the recusal motions.  Indeed, Judge Wolin stated in his first response that, "[i]n order to preclude any unwarranted conclusion" that he was prematurely deciding the substantive merits of the motion to recuse, he would restrict his responses to procedural matters.  Moreover, we harbor serious reservations about assigning a § 455 disqualification motion to a different judge, particularly at this stage of the proceedings.  *See, e.g., Bernard v. Coyne,* 31 F.3d 842, 843 (9th Cir. 1994) (holding that responsibility for deciding § 455 recusal motion lies solely with judge to whom motion is directed); *Njie v. Lubbock County,* 999 F. Supp. 858, 860 (N.D. Tex. 1998) (concluding that if recusal motion is made under § 455, "the judge whose impartiality is being questioned rules on the motions").  *Compare* 28 U.S.C. § 144 (requiring "another judge" to rule on recusal motion if supporting affidavit meets threshold "sufficiency" test).

(citation omitted).  This principle rings particularly true where, as here, the district court judge has presided over (i) an extraordinarily complex litigation (ii) involving a multitude of parties (iii) for an extended period of time.  Judge Wolin has been intimately involved in these proceedings for the past two years and, as demonstrated by his written responses, has acquired a familiarity with the issues beyond ours.  Accordingly, he is in the best position to understand "the implications of those matters alleged in [the] recusal motion[s]."  *Id.*

We realize, of course, that our decision to remand this matter to Judge Wolin will result in some delay, which causes us great concern.  Not only can delay have unintended (and undesirable) ramifications for the debtors-in-bankruptcy; it can have a much more personal effect on the asbestos claimants who have filed claims against the debtors-in-bankruptcy and their related entities.[13]  We nevertheless believe that a short delay so that an evidentiary record may be developed is to be preferred rather than making an ill-informed decision on allegations alone.[14]  In an attempt to reduce the delay, however, we

---

[13]  At oral argument, the attorney representing the Official Committee of Asbestos Claimants in *Owens Corning* represented to the Court that approximately 30,000 of the asbestos claimants in the Five Asbestos Claimants have died from asbestos-related diseases since the cases were filed and that statistics would reveal that 15 asbestos-related victims would die each day.

[14]  We inquired at oral argument about the effect Judge Wolin's disqualification would have on the Five Asbestos Cases.  *Owens Corning*'s counsel replied that assigning another judge to the *Owens Corning* bankruptcy would set the proceedings in *Owens Corning* back at least one year.

By expediting the filing of this opinion and by ordering compliance with our directions which establish a deadline or outside date of January 31, 2004, we believe any

will order that expedited discovery and Judge Wolin's ruling on the recusal motions be completed no later than January 31, 2004. While this might ordinarily be deemed too short a time for discovery, we believe that it is manageable under the district court judge's guidance and supervision. Indeed, *Kensington*'s attorney advised us at oral argument that expedited discovery probably could be completed in two to three weeks.

V.

For the foregoing reasons, we will (i) vacate the discovery stay imposed by Judge Wolin in his order of October 23, 2003; (ii) direct that expedited discovery proceed without interruption, objections, or extensions; and (iii) direct Judge Wolin to rule on the recusal motions pending before him no later than January 31, 2004. This panel will retain jurisdiction in the event proceedings subsequent to Judge Wolin's ruling are required.

TO THE CLERK:

Please file the foregoing opinion.


/s/ Leonard I. Garth
Circuit Judge

---

delay is minimal, but in this case essential.