IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: January 9, 2004**
**Hearing Date: January 26, 2004 at Noon**

## MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO SETTLE MASSACHUSETTS CORPORATE EXCISE TAX REFUND CLAIM

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for the entry of an order authorizing W. R. Grace & Co.-Conn. ("Grace-Conn."), one of the Debtors, to settle and compromise a Massachusetts corporate excise tax refund claim for the tax year 1986 (the "1986 Tax Year") in the amount of $1,292,340, consisting of $245,256, plus interest of $1,047,084 from the date of payment through November 30, 2003. If this settlement offer is accepted, Grace-Conn. will have received

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

principal and interest of approximately $5.8 million, or 87% of principal and interest on its total refund claim. In support of this Motion, the Debtors respectfully state as follows:

### Jurisdiction

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are section 363 of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background

3. On April 2, 2001, the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases have been consolidated for administrative purposes only. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

### Massachusetts Corporate Excise Tax

4. The Massachusetts General Law Act imposes an annual corporate excise tax on every foreign corporation authorized to do business in the Commonwealth of Massachusetts. Mass. Gen. L.63 §39 (the "MA Tax Act"). Corporations must file an annual corporate excise tax return and may file on a combined basis. The tax is imposed at a rate of 9.5% for the year at issue and is administered by the Massachusetts Commissioner of Revenue (the "MCOR").

5. During the 1986 Tax Year, the common parent of the current Debtors and their affiliates for federal and state tax purposes was Grace-Conn.

### Tax Refund Claim

6. During the 1986 Tax Year, Grace-Conn. divested a number of subsidiaries in the retailing and restaurant business. These subsidiaries included Herman's Sporting Goods ("Herman's"), Channel Home Centers ("Channel"), and El Torito, Inc. ("El Torito") and certain other restaurant chains (collectively, the "Divested Companies"). Grace-Conn. took the tax position that the gains from such divestments were not related to its core specialty chemical business and so were non-business related gains taxable for state income tax law purposes only in the State of New York, where its headquarters and commercial domicile were then located.

7. The MCOR, however, took the position that the gains were business-related and assessed tax of $1,270,186 in respect of such gains.

8. Under Massachusetts law at that time, a taxpayer could not dispute an unpaid tax assessment. Grace-Conn. therefore paid the amount assessed and then filed an abatement application with the MCOR for a refund of the tax paid of $1,270,186 together with accrued interest. The application was denied in June 1996. In December 1996, Grace-Conn. filed a petition with the Appellate Tax Board. A hearing took place in May 1998 before the Appellate Tax Board.

9. On August 2, 1999, the Appellate Tax Board ruled that Grace was due a tax refund of $1,270,186 plus interest of approximately $3.5 million through August 31, 1999. The Board's opinion stated that the gains derived from the divestment of the Divested Companies were not subject to Massachusetts tax. In January 2000, the MCOR appealed the decision to the

Massachusetts Appeals Court (the "Appeals Court"). An attempt at mediation before the Appeals Court failed.

11. On April 17, 2002, the case was argued before the Appeals Court. On July 2, 2003, the Appeals Court ruled that the capital gains resulting from the Herman's and El Torito divestments could not be taxed by Massachusetts, on grounds that these subsidiaries were not related to Grace's core specialty chemicals business. The refund claims for Channel and the other restaurant businesses were remanded to the Appellate Tax Board for a determination as to whether their business relationships with Grace were such that they were related to Grace's core business and therefore subject to Massachusetts tax.

11. The claims ruled upon by the Appeals Court related to a tax amount of $864,087 plus interest of $3,628,627 resulting in a tax refund totaling $4,492,714 which has been paid to Grace-Conn. The claims remanded to the Appellate Tax Board for decision relate to a tax amount of $406,099 plus interest of $1,773,779 for a total of $2,139,878 through November 30, 2003 (the "Remaining Claims").

12. By letter dated December 1, 2003, the MCOR offered to settle the Remaining Claims for a refund to Grace-Conn. of $1,292,340, consisting of $245,256 (80% of the Channel claim and 20% of the remaining restaurant claims), plus interest of $1,047,084 through November 30, 2003. (the "Proposed Tax Refund"). When combined with the previous refunds received of $4,492,714, the total refunds would amount to $5,785,054 or 87% of the $6,632,592 of total tax and interest at issue with MCOR as outlined herein.

4

## Relief Requested

13. By this Motion, the Debtors seek an order authorizing them to settle the Remaining Claims for the Proposed Tax Refund.

## Basis For Relief

14. This Court may authorize the Debtors to settle tax liabilities for a tax refund. Section 363(b) of the Bankruptcy Code allows the trustee or debtor in possession to use property of the estate in other than the ordinary course of business after appropriate notice and hearing. See 11 U.S.C. § 363(b)(1).

15. Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The decision whether to accept or reject a compromise lies within the sound discretion of the Bankruptcy Court. In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986). Approval of a compromise settlement is appropriate if it is in the "best interests of the estate." Id.

16. In determining whether a compromise settlement is in the best interests of a debtor's estate, courts in the Third Circuit have considered the following four factors:

(i) the probability of success in the litigation;

(ii) the difficulties, if any, to be encountered in the matter of collection;

(iii) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and

(iv) the paramount interest of the creditors.

Id. See also In re Pennsylvania Truck Lines, Inc., 150 B.R. 595, 598 (E.D. Pa. 1992), aff'd, 8 F.3d 812 (3d Cir. 1993); In re Grant Broadcasting of Philadelphia, Inc., 71 B.R. 390, 395 (Bankr. E.D. Pa. 1987).

17. The settlement need not be the best that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." In re Penn Central Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979). In making its determination, a court should not substitute its own judgment for that of the debtor. Neshaminy Office, 62 B.R. at 803. Moreover, it is not necessary for the court to conduct a "mini trial" of the facts or the merits underlying the dispute. Grant Broadcasting, 71 B.R. at 396. See also In re A & C Properties, 784 F.2d 1377, 1384 (9th Cir.), cert. denied, 479 U.S. 854 (1986). Rather, the court need only consider those facts that are necessary to enable it to evaluate the settlement and to make an informed and independent judgment about the settlement. Penn Central, 596 F.2d at 1114; In re Energy Cooperative, Inc., 886 F.2d 921, 924-25 (7th Cir. 1989).

18. In the case of tax settlements, it is often found to be in the estate's best interest to settle tax disputes for a definite amount. See In re America West Airlines, Inc., 214 B.R. 382, 386 (Bankr. D. Ariz. 1997) (approving a settlement of a tax dispute which allowed the debtor to avoid the expense and uncertainty of claims litigation and assure a definite amount for the claim); and In re Holywell Corporation, 93 B.R. 291, 295 (S.D. Fla. 1988) (approving a settlement which allowed the debtors to "receive a resolution of County tax claims on excellent terms.").

19. The Debtors have concluded that they are not likely to obtain a more favorable resolution of this matter. The Debtors do not believe that further negotiations with the MCOR

will elicit a better settlement offer than the Proposed Tax Refund. If no negotiated settlement is reached, then the Remaining Claims will be taken up by the Appellate Tax Board on remand. In the case of some of the businesses whose divestments are the subject of the Remaining Claims, it is questionable whether the existing documentation will be sufficient to convince the Appellate Tax Board that the businesses were not unitary with Grace-Conn. In any event, there is no certainty that the Appellate Tax Board's conclusion will be more favorable than the Proposed Tax Refund, particularly because Grace-Conn. has already been granted complete recovery on two-thirds of the issues at stake in its claim, and will have obtained 87% of the claimed refund if it accepts the Proposed Tax Refund. The Proposed Tax Refund will increase the value of the Debtors' estates and therefore is in the estates' best interest.

20. Because the settlement of the claim is favorable to the Debtors' estates, the Motion should be approved.

### Notice

21. Notice of the Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP lender, (iii) counsel to all official committees appointed by the United States Trustee, and (iv) all those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

### No Prior Request

22. No prior Application for the relief requested herein has been made to this or any other Court.

7

91100-001\DOCS_DE:86022.2

WHEREFORE, the Debtors respectfully request that the Court enter an Order (i) authorizing the Debtors to settle the Remaining Claims for the Proposed Tax Refund; and (ii) granting such other relief as the Court deems just and proper.

Dated:  December 22, 2003

Respectfully submitted,

KIRKLAND & ELLIS
James H.M. Sprayregen, P.C.
Janet S. Baer
James W. Kapp III
Christian J. Lane
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

_____
Laura Davis Jones (#2436)
David W. Carickhoff, Jr. (#3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

91100-001\DOCS_DE:86022.2