IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: January 9, 2004**
**Hearing Date: January 26, 2004 at Noon**

## DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO AMEND (I) THE CREDIT AGREEMENT WITH ADVANCED REFINING TECHNOLOGIES LLC TO EXTEND THE TERM AND INCREASE THE CREDIT LINE THEREUNDER, AND (II) THE RESTRICTIVE COVENANTS OF DEBTORS' POST-PETITION LOAN AND SECURITY AGREEMENT TO PERMIT LOANS TO ADVANCED REFINING TECHNOLOGIES UNDER THE INCREASED CREDIT LINE

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by

their undersigned counsel, respectfully move this Court (the "Motion") for entry of an order

authorizing the Debtors to amend (I) the ART Credit Agreement (as defined herein) between

W. R. Grace & Co.-Conn., one of the Debtors ("Grace-Conn."), and Advanced Refining

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Technologies LLC ("ART") to extend its termination date from March 1, 2005, to March 1,

2006, and increase the line of credit thereunder from $11 million to $24.75 million, and (II) the

restrictive covenants of the DIP Loan Agreement (as defined herein) to permit Grace-Conn., to

make loans under the ART Credit Agreement up to $24.75 million. In support of this Motion, the

Debtors respectfully state as follows:

### Jurisdiction

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this

motion is proper under 28 U.S.C. § 1408.

2.     The statutory bases for the relief requested herein are sections 105 and 363 of title

11 of the United States Code (as amended, the "Bankruptcy Code").

### Background

3.     On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions

for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  These

Chapter 11 Cases have been consolidated for administrative purposes only.  Pursuant to sections

1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and

manage their properties as debtors in possession.

4.     Effective March 1, 2001, Grace-Conn. and Chevron Products Company, a

division of Chevron U.S.A. Inc ("Chevron USA"), formed ART, a Delaware limited liability

company.  ART develops, manufactures and sells hydroprocessing catalysts, which are used in

the petroleum refining industry for the removal of certain impurities from petroleum feedstock.

Grace-Conn. owns a 55% interest in ART and Chevron USA owns a 45% interest.  ART is

2

governed by the Limited Liability Company Agreement dated as of March 1, 2001 (as amended, the "Operating Agreement"), between Grace-Conn. and Chevron USA.

5.      In connection with the formation of ART, Grace-Conn. and Chevron Capital Corporation, an affiliate of Chevron USA ("Chevron Capital"), entered into separate Credit Agreements with ART (the "ART Credit Agreements") under which they provide ART with an aggregate of $20 million of revolving credit in proportion to the ownership of ART: $11 million from Grace-Conn., and $9 million from Chevron Capital. The current ART Credit Agreements expire on March 1, 2005. Other than the credit amounts, the two ART Credit Agreements are substantially identical. The Operating Agreement provides that loans under the ART Credit Agreements will be so administered that loans aggregating $2,000,000 or integral multiples thereof will be lent 55% by Grace-Conn. and 45% by Chevron Capital, whereas for administrative convenience, loans in lesser amounts will be made exclusively by Grace-Conn. until their balance reaches $2,000,000.

6.      For the reasons explained below, Grace-Conn. and Chevron Capital seek to (a) amend the ART Credit Agreements to extend their terms to March 1, 2006, and (b) increase ART's lines of credit to a total of $45 million ($24.75 million from Grace-Conn. and $20.25 million from Chevron).

7.      Currently, ART is funded in three ways: (a) cash from ART's operations, (b) extended payment terms for goods and services from Grace-Conn. and its subsidiaries ("Grace") and Chevron USA and its affiliates ("Chevron"), and (c) Grace's retention of ownership of catalyst inventory until ART is ready to ship the inventory to its customers.

3

8.     Grace is currently the primary provider of extended payment terms to ART,

because Grace manufactures and sells finished catalyst to ART for resale to ART's customers.

In addition, Grace provides ART a greater level of research and development and sales and

administrative services than Chevron. As of September 30, 2003: (a) ART's payables to Grace

and Chevron totaled $24.2 million, of which $22.8 million was owed to Grace and $1.4 million

was owed to Chevron and (b) Grace held $8.2 million of inventory for eventual sale to ART.

9.     The original payment terms at the time of ART's formation were 90 days for

supply of catalyst from Grace to ART, and 90 days for all services from Grace and Chevron to

ART. Effective July 1, 2003, the catalyst supply agreement terms were reduced to 60 day

payment terms. In order to further reduce the disproportionate financial burden on Grace,

effective January 1, 2004, ART will reduce payment terms under its catalyst supply and services

agreements with Grace and Chevron to 30 days from end of month. In addition, ART will

purchase Grace's remaining hydroprocessing catalyst inventory before December 31, 2003.

After these changes, ART is expected to have average month's end payables of $10.5 million

outstanding to Grace and Chevron for catalyst and services, and Grace will no longer hold

inventory for ART.

10.     In order to satisfy the cash requirements resulting from these changes, ART will

need borrowing capacity beyond the $20 million currently available under the ART Credit

Agreements. After an extensive financial analysis of the ART business, Grace and Chevron

management, as well as the ART Executive Committee, concluded that the appropriate revised

total borrowing capacity is $45 million. The analysis looked at the 2004 – 2006 forecast period

and determined that ART will require a maximum loan of approximately $40 million during the

4

second half of 2004. While the Debtors believe that the $40 million maximum requirement

reflects the most likely scenario, ART's business is subject to uncertainty of timing as to

shipments to customers. Refiners replace fixed bed catalysts approximately once per year and

certain distillate catalysts even less frequently. If timing of orders shifts by even a few months,

then ART may be required to hold inventories for longer than expected, and therefore require a

greater than expected working capital investment. By providing a capacity of $45 million under

the lines of credit, ART will have available the funds necessary to carry its own finished goods

inventory and to pay its parents on 30 day terms for supplies and services. The parties also

concluded that since current projections indicate a need for parent financing of ART into 2006,

and given the uncertainty of shipment timing described above, the term of the ART Credit

Agreements should be extended to March 1, 2006.

11.     The net effect on Grace of the payment and inventory changes on Grace is

expected to be positive. As of March 31, 2003, Grace had approximately $53.1 million invested

in ART working capital, which consisted of $18.3 million in finished goods inventory and $34.8

million in accounts receivable for supplies and services.[2] As of March 31, 2004, Grace's

working capital investment in ART is projected to be reduced to $26.8 million, consisting of $9.8

million in accounts receivable for finished goods inventory and services, and $17.0 million

outstanding under the line of credit from ART.[3]

---

[2] The March 31, 2003 receivables were under the 90 day payment terms.

[3] By contrast, Chevron's investment in ART is projected to increase from approximately $1.4 million at March 31, 2003 to $14.5 million at March 31, 2004.

5

12.    Based on ART's current three-year forecasts, it is expected that the lines of credit will be paid back in full in 2006. After that time, ART will be self-financing, and Grace-Conn.'s investment in ART therefore will be reduced to the amount of its outstanding receivables for finished goods inventory and services, which are expected to average $10.2 million at month's end.

13.    Under the Debtors' Post-Petition Loan and Security Agreement (the "DIP Loan Agreement"), the Debtors currently are permitted to lend ART no more than $11 million. The DIP Loan Agreement will therefore have to be amended by the lenders and the Debtors to permit loans to ART of up to $24.75 million. The Debtors and the lenders have negotiated an amendment to the DIP Loan Agreement, which is subject to the entry of an order authorizing the Debtors to amend the DIP Loan Agreement. The lenders will require a fee of $25,000 for the amendment, payable ratably to the lenders approving the amendment.

**Relief Requested**

14.    By this Motion, the Debtors seek an order authorizing the Debtors to amend (a) Grace-Conn.'s ART Credit Agreement to (i) extend its term to March 1, 2006, and (ii) increase the revolving credit line to ART thereunder from $11 million to $24.75 million, and (b) the restrictive covenants of the DIP Loan Agreement to permit Grace-Conn. to lend ART up to $24.75 million.

**Statutory Authority**

15.    Section 105(a) of the Bankruptcy Code "permits the court to issue any order that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a

6

hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." A court has the statutory authority to authorize a debtor to use property of the estate pursuant to section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also Fulton State Bank v. Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by "some articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

16.      Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business. See Lionel Corp., 722 F.2d at 1070-71. Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992). The business judgment rule has significance in chapter 11 cases as it shields a debtor's management from judicial second-guessing. See Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operations of a business by a debtor and a presumption

7

of reasonableness attaches to debtor's management decisions."). A party in interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." Montgomery Ward, 242 B.R. at 155.

17.    Courts have applied four factors in determining whether a sound business justification exists: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. See Lionel Corp., 722 F.2d at 1071 (setting forth the "sound business purpose" test); Abbotts Dairies, 788 F.2d at 145-47 (implicitly adopting the articulated business justification test of the Lionel standard and adding the "good faith" requirement); Delaware & Hudson, 124 B.R. at 176 (adopting Lionel in this district).

18.    Authorization to amend Grace-Conn.'s ART Credit Agreement and the DIP Loan Agreement to provide an increased credit commitment to its ART joint venture is in the best interests of the Debtors.

19.    *Sound Business Reasons.* In return for the $13.75 million increase in Grace-Conn.'s credit commitment to ART, Grace is being relieved of a disproportionate share of the costs of extended payment terms and carrying inventory. After implementation of the amendments discussed herein, the costs of financing ART will be financed through the ART Credit Agreements, and hence by Grace and Chevron in proportion to their ownership percentages. Once the balance loaned under the ART Credit Agreements is reduced to zero, which is projected to occur in 2006, ART will be self-financing, and Grace-Conn.'s investment

8

in ART will be reduced to its receivables, under standard commercial payment and delivery terms, for finished goods and services.

20.    *Fair and Reasonable Consideration.*  Grace-Conn. projects the reduction of its total investment in the ART joint venture as a result of the revised financing structure.

21.    *Good Faith.*  The Debtors have negotiated the amendments to the ART Credit Agreement and the DIP Loan Agreement at arm's length and in good faith.  The Debtors also believe that the terms of the proposed transaction are fair to and in the best interests of the Debtors.

22.    *Adequate and Sufficient Notice.*  In satisfaction of the requirements of Rule 2002 of the Bankruptcy Rules, the Debtors intend to serve copies of this Motion to all parties as provided herein.

23.    In light of the foregoing, the Debtors have determined in their business judgment that the amendments to Grace-Conn.'s ART Credit Agreement and the DIP Loan Agreement are fair and reasonable.  The Debtors believe that the proposed transaction is in the best interest of their estates, grounded in sound business judgment and satisfies the "sound business judgment" test for the use of assets outside the ordinary course of business under Section 363(b) of the Bankruptcy Code.

## Notice

24.    Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee and (iv) those parties that requested papers under Fed. R. Bankr. P.

91100-001\DOCS_DE:86027.2

2002. In light of the nature of the relief requested, the Debtors submit that no further notice is
required.

WHEREFORE, the Debtors respectfully request that the Court enter an order
(a) authorizing the Debtors to amend Grace-Conn.'s ART Credit Agreement to (i) extend its term
to March 1, 2006, and (ii) increase the revolving credit line to ART thereunder from $11 million
to $24.75 million; (b) authorizing the Debtors to amend the restrictive covenants of the DIP Loan
Agreement to permit Grace-Conn. to lend ART up to $24.75 million; (c) authorizing the Debtors
to pay the $25,000 amendment fee to the lenders; and (d) granting such other and further relief as
the Court deems just and proper.

Dated:  December 22, 2003

KIRKLAND & ELLIS LLP
James H.M. Sprayregen, P.C.
Janet S. Baer
James W. Kapp III
Christian J. Lane
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
Scotta E. McFarland (Bar No. 4184)
David Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

10