IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Objection Deadline:  January 9, 2004
Hearing Date: January 26, 2004 at Noon

**DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE RESTRUCTURING OF STOCK AND DEBT INTERESTS IN CERTAIN FOREIGN SUBSIDIARIES**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases, by their undersigned counsel, respectfully move this Court (the "Motion") for entry of an order authorizing the Debtors to restructure their stock interests in and loans to certain foreign subsidiaries (the "Foreign Restructuring") in order to (1) provide those subsidiaries with more efficient capital structures, (2) allow for the repayment of approximately $32 million to the Debtors and (3) reduce foreign taxes paid by

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

approximately $1 million per annum and foreign dividend withholding taxes by at least $2.6 million. In support of this Motion, the Debtors respectfully state as follows:

## Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this motion is proper under 28 U.S.C. § 1408. The statutory predicates for this Motion are sections 105 and 363 of the Bankruptcy Code.

## Background

2. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases have been consolidated for administrative purposes only. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

3. The Debtors have substantial business operations in foreign countries, which are conducted primarily through non-Debtor foreign subsidiaries (the "Foreign Subsidiaries") of which W. R. Grace & Co.-Conn. ("Grace-Conn."), one of the Debtors, is the direct or indirect parent.

## Review Of Foreign Capital Structures

4. Currently, most of the Foreign Subsidiaries' financing requirements are met by intercompany loans either between Foreign Subsidiaries, or between Foreign Subsidiaries and either Grace-Conn. or Grace International Holdings, Inc. ("GIHI"), Grace-Conn.'s U.S. finance subsidiary and one of the Debtors. Grace-Conn. and GIHI are referred to herein

2

collectively as "Grace US". The Foreign Subsidiaries also carry certain intercompany payable accounts with each other and with Grace US, which are attributable to their purchase of goods and services and the use of intangible property. These intercompany loans and accounts payable are referred to herein as "Foreign Liabilities."

5. Grace-Conn. has recently completed a review of the Foreign Subsidiaries' local earnings and cash flow forecasts and has concluded that approximately $102 million of the Foreign Liabilities is not likely to be repaid in the near future (the "Subject Liabilities"[2]). Certain of the Subject Liabilities were established when the Foreign Subsidiaries maintained a larger operating base. Therefore, with the current operating base, it would take many years to service the Subject Liabilities. The obligors of the Subject Liabilities are Foreign Subsidiaries located in France, Indonesia, the Philippines, Taiwan, Argentina, Brazil and Chile (the "Restructuring Subsidiaries"). The Restructuring Subsidiaries owe approximately $50 million to Grace US, while the remaining approximately $52 million is owed primarily to Foreign Subsidiaries located in Belgium, the United Kingdom, Spain, Italy, Japan, Singapore and Venezuela.

6. The Debtors have concluded that the Subject Liabilities should be converted to equity capital rather than maintained as long term debt in order to (i) provide the Restructuring Subsidiaries with more efficient capital structures given their estimated earning capacity, (ii) reduce foreign taxes, and (iii) minimize foreign exchange risks, as will be further described herein.

---

[2] Final dollar amount may change due to foreign exchange movement and additional accrued interest.

91100-001\DOCS_DE:86053.1

### Foreign Restructuring
(See Attached Exhibit I For Pre and Post Restructuring Charts)

7.  As part of the Foreign Restructuring, certain of the Foreign Subsidiaries will either purchase newly issued shares of Restructuring Subsidiaries, or convert existing debt to shares of Restructuring Subsidiaries. The Restructuring Subsidiaries will use the proceeds of the cash purchases to repay approximately $84 million of the Subject Liabilities, of which approximately $32 million will be repaid to Grace US. The reduction in excess foreign cash is expected to eliminate foreign taxes of approximately $1 million per annum on interest accruing thereon and also to eliminate foreign exchange fluctuations on the amounts to be repatriated.

8.  The use of Foreign Subsidiaries to provide the increased equity capitalization of the Restructuring Subsidiaries will result in the creation of regional holding companies. However, Grace-Conn. will continue to be the indirect parent of the Restructuring Subsidiaries through its ownership of the regional holding companies, as described below.

9.  The Foreign Subsidiaries that will make the equity investments and thereby become regional holding companies (the "Holding Companies") are Grace Construction Products Limited ("Grace Construction UK") for Europe, Grace Canada, Inc. ("Grace Canada") for Latin America, and W. R. Grace (Singapore) Pte. Ltd. ("Grace Singapore") for Asia Pacific. The Holding Companies were selected on the basis of their cash reserves, business alignment with the Restructuring Subsidiaries, and the favorable legal and tax regimes in their countries.

10. To implement the Foreign Restructuring, each Holding Company will either purchase equity of the Restructuring Subsidiaries in its region or convert currently existing debt into equity. The specific form of the capitalization in each country will be based upon local legal and tax requirements.

11.     In addition, as part of the Foreign Restructuring, Grace US will (a) convert approximately $13.7 million of the liabilities of Grace Brasil Ltda. ("Grace Brazil") and approximately $4.3 million of the liabilities of Grace Quimica Compania Limitada ("Grace Chile") to equity capital, and (b) contribute its 100% stock ownership interest in each of W. R. Grace Italiana S.p.A. ("Grace Italy") and Grace N.V. ("Grace Belgium") to Grace Construction UK:

(a) Grace US will capitalize Grace Brazil and Grace Chile's liabilities so that the equity interest received by Grace Canada for its contribution better reflects the value of the company, because there are withholding tax risks to Grace US that could result if Grace Canada's contribution were deemed greater than the value of the company.

(b) The contribution of Grace Italy and Grace Belgium stock to Grace Construction UK will eliminate withholding taxes on dividend distributions, yielding a projected withholding tax savings on currently distributable cash of approximately $1.5 million.

12.     The Debtors do not expect that the implementation of the Foreign Restructuring, including the establishment of the Holding Companies, will have an adverse effect on the business, financial condition or results of operations of Grace-Conn. or of any of the other Debtors.

### Relief Requested

13.     By this Motion, the Debtors seek an order authorizing Debtors and the Foreign Subsidiaries to make the contributions and perform any and all other acts that are necessary or useful to implement the Foreign Restructuring.

### Basis For Relief

14.     The Debtors bring this Motion under sections 105(a) and 363(b)(1) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code "permits the court to issue any order

that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

15. This court has the statutory authority to authorize the Debtors to use or sell property of the estates pursuant to section 363(b)(1) of the Bankruptcy Code if such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also Fulton State Bank v. Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by "some articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

16. Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business. See Lionel Corp., 722 F.2d at 1070-71. Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992). The business judgment rule has significance in chapter 11 cases as it shields a debtor's management from judicial second-guessing. See Committee of Asbestos-Related Litigants and/or Creditors v.

6

Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 615-16 (Bankr. S.D. N.Y. 1986) ("[T]he Code favors the continued operations of a business by a debtor and a presumption of reasonableness attaches to debtor's management decisions."). A party in interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." Montgomery Ward, 242 B.R. at 155.

17.     Courts have applied four factors in determining whether a sound business justification exists: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. See Lionel Corp., 722 F.2d at 1071 (setting forth the "sound business purpose" test); Abbotts Dairies, 788 F.2d at 145-47 (implicitly adopting the articulated business justification test of the Lionel standard and adding the "good faith" requirement); Delaware & Hudson, 124 B.R. at 176 (adopting Lionel in this district).

18.     The Foreign Restructuring meets each of the aforementioned criteria. There are multiple, sound business-reasons for the transaction, as set forth below:

(a)     The Foreign Restructuring will provide the Restructuring Subsidiaries with capital structures that are more efficient given their projected earning capacity.

(b)     The Foreign Restructuring also will permit the tax efficient repayment to Grace US of approximately $32 million in foreign cash. This is tax efficient because the repayment of outstanding debt principal is not subject to foreign withholding or US taxes.

(c)     The reduction in excess foreign cash and cash equivalents will reduce foreign taxes on interest income by approximately $1 million per annum. In addition, there is savings of approximately $2.6 million in dividend withholding taxes.

(d)     The repayment of foreign cash will also reduce the Debtors' overall exposure to foreign exchange risks.

In addition, this transaction is the result of extensive analysis by the Debtors' financial management team, who have determined, in good faith, that the transaction is in the best interests of the Debtors and their foreign subsidiaries. Finally, notice via this Motion is adequate, as the Foreign Restructuring will not adversely affect the ability of the Debtors to pay any claims. To the contrary, the Foreign Restructuring will immediately provide the Debtors with cash and will ensure the prospective financial health of the Restructuring Subsidiaries.

## Notice

19.  Notice of this Motion has been given to (i) the Office of the United States Trustee; (ii) counsel to the debtor in possession lenders; (iii) counsel to each official committee appointed by the United States Trustee; and (iv) those parties that requested papers under Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing the Debtors and Foreign Subsidiaries to perform any actions deemed useful or necessary to implement the Foreign Restructuring as outlined herein and (ii) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: December 22, 2003

KIRKLAND & ELLIS LLP
James H.M. Sprayregen, P.C.
Janet S. Baer
James W. Kapp III
Christian J. Lane
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
Scotta McFarland (Bar No. 4184)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession