IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: January 9, 2004**
**Hearing Date: January 26, 2004 at Noon**

## DEBTORS' MOTION REQUESTING AN ORDER (i) FINDING COUNSEL FOR GERARD IN CONTEMPT OF COURT AND (ii) STAYING CERTAIN PROCEEDINGS PENDING APPEAL

This Motion is being filed in response to Carol Gerard's (a) Amended Complaint and Demand for Jury Trial and (b) Motion Requesting Entry of Scheduling Order, which were filed in the Baltimore Litigation (as defined herein) on November 21, 2003. These filings seek to advance certain state-law asbestos-related personal-injury proceedings where Gerard: (a) names "W.R. Grace & Co.-Conn, et al." as a defendant and (b) seeks to recover compensatory and

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

punitive damages from CNA[2] and Maryland Casualty Company ("Maryland"). To the extent that Carol Gerard ("Gerard")[3] seeks to proceed against any of the Debtors, she is expressly prohibited by the automatic stay. To the extent that Carol Gerard seeks to expand the action to include actions against CNA, she is prohibited by the express terms of the Preliminary Injunction. Finally, to the extent that Gerard seeks to proceed against Maryland, she is prohibited by both the Preliminary Injunction and this Court's June 20, 2002 Order, which specifically stayed Gerard from proceeding against Maryland and its affiliates in the Baltimore Litigation. Although the district court subsequently vacated this Order, the district court specifically remanded the matter to this Court for further proceedings consistent with the district court's holding. Gerard has not afforded this Court an opportunity to reconsider its Order.

Counsel for Gerard[4], had notice or knowledge of: (a) the automatic stay, (b) the Preliminary Injunction, (c) this Court's June 20, 2002 Order, and (d) the district court's order. Their attempt to proceed (on behalf of Ms. Gerard) against Maryland and CNA in the Baltimore Litigation blatantly violates all of the aforementioned directives. Accordingly, this Court should issue an order that: (a) finds Counsel for Gerard and their respective firms (collectively, the "Contemnors") in contempt of Court; (b) requires the Contemnors to withdraw their Amended Complaint and Demand for Jury Trial and their Motion Requesting Entry of Scheduling Orders;

---

[2] Carol Gerard's Amended Complaint defines "CNA" as the collection of the following entities: CNA Financial Corporation, Continental Casualty Company and Transportation Insurance Company. Unless otherwise noted, any references to CNA in this Motion are intended to encompass all of the aforementioned entities.

[3] Pursuant to the Notice of Substitution of Parties, which was filed in the Baltimore Litigation on November 21, 2003, Tami A. Broden, the Personal Representative of the estate of Carol Gerard, is now pursuing Ms. Gerard's claims on behalf of the Estate of Carol Gerard. For purposes of consistency with past pleadings, the Debtors continue to refer to the plaintiff in that proceeding as Gerard.

[4] Brian C. Parker of Parker ("Parker"), of Durnler & Kiely LLP, and Jon L. Heberling ("Heberling"), of McGarvey, Heberling, Sullivan & McGarvey, P.C., (collectively, "Counsel for Gerard") have jointly represented Gerard throughout the time period relevant for purposes of considering this Motion.

2

91100-001\DOCS_DE:86058.1

(c) requires the Contemnors to reimburse the Debtors for all costs and expenses associated with preparing and pursuing this Motion; (d) stays the Baltimore Litigation pending resolution of the Debtors' appeal of the district court's July 16, 2003 memorandum opinion, which is currently pending before the Court of Appeals for the Third Circuit; and (e) awards the Debtors any additional relief that this Court deems just and proper.

## Background

1.     In December of 2000, Carol Gerard (a resident of Libby, Montana, for a period of time) filed a Complaint and Demand for Jury Trial (the "Original Complaint", which is attached hereto as <u>Exhibit A</u>) with the Circuit Court for the City of Baltimore (the "Baltimore Litigation"). The Original Complaint sought recovery from Grace for (a) strict liability[5], (b) breach of warranty[6], (c) negligence[7], and (d) civil conspiracy[8]. The Original Complaint sought recovery from Maryland for (a) negligence[9], (b) aiding and abetting[10], and (c) civil conspiracy[11]. The Original Complaint did not assert claims against, or seek recovery from, CNA.

2.     On April 2, 2001 (the "Petition Date"), the Debtors commenced their respective reorganization cases by filing petitions under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"). By operation of law, all pending and prospective judicial

---

[5] <u>See</u> Exhibit A ¶22-27 at pp. 5-6.

[6] <u>See</u> Exhibit A ¶28-30 at pp. 6-7.

[7] <u>See</u> Exhibit A ¶31-35 at pp. 7-9.

[8] <u>See</u> Exhibit A ¶46-50 at pp. 12-13.

[9] <u>See</u> Exhibit A ¶36-40 at pp. 9-11.

[10] <u>See</u> Exhibit A ¶41-45 at pp. 11-12.

[11] <u>See</u> Exhibit A ¶46-50 at pp. 12-13.

3

91100-001\DOCS_DE:86058.1

proceedings against any of the Debtors were automatically stayed pursuant to 11 U.S.C. § 362(a)(1) (the "Automatic Stay").

3.  On January 22, 2002, this Court entered an Order Granting Modified Preliminary Injunction (the "Preliminary Injunction", which is attached hereto as <u>Exhibit B</u>) in the adversary proceeding entitled <u>W.R. Grace & Co., et al. v. Margaret Chakarian, et al. and John Does 1-1000</u> ("the Adversary Proceeding"), Case No A-01-771. In particular, this Court enjoined all "Actions"[12] that had been filed "(a) against Affiliate Entities[13] that arise from alleged exposure to asbestos indirectly or directly allegedly caused by Debtors; or (b) for which there may be coverage under the Insurance Policies; (c) against Affiliated Entities alleging fraudulent transfer or fraudulent conveyance claims; (d) against Insurance Carriers alleging coverage for asbestos-related liabilities…" <u>Exhibit B</u> ¶10 at pp. 3-4. The following Insurance Carriers were listed as Affiliated Entities for purposes of the Preliminary Injunction: (a) Maryland Casualty Company, (b) Continental Casualty Company, (c) Affiliates of Maryland Casualty Co. and Continental Casualty Co., and (d) Other Insurers of the Debtors under the Insurance Policies who have been named as defendants in actions pending in direct action states[14]. <u>See</u> Exhibit A of <u>Exhibit B</u>. Accordingly, the Preliminary Injunction specifically stayed any Actions against CNA and/or Maryland. Gerard did not appeal the entry of the Preliminary Injunction.

---

[12] The Order defines "Actions", in relevant part, as any "pending actions and actions that have not been filed or are not pending as of the date of entry of this Order." Preliminary Injunction ¶10 at p. 3.

[13] All capitalized terms not otherwise defined in this Motion have the meanings given to them in the referenced documents.

[14] Continental Casualty Company and Transportation Insurance Company are Affiliates of CNA Financial Corporation.

4.      On February 4, 2002, Gerard filed a Motion to Clarify the Scope of the Preliminary Injunction or in the Alternative to Modify the Preliminary Injunction with this Court (the "Motion to Clarify"). In particular, Gerard sought the entry of an Order stating that, to the extent the Baltimore Litigation asserted claims against Maryland based upon Maryland's own, indepedent tortuous conduct, the Preliminary Injunction did not stay the Baltimore Litigation. The Motion to Clarify did not request any findings relating to potential causes of action against CNA (which was not a party to the Baltimore Litigation at that time) or any other parties. Parker argued in support of the Motion to Clarify at the May 2002 Grace omnibus hearing.

5.      On June 20, 2002, this Court denied Gerards' Motion to Clarify, and specifically stayed Gerard from proceeding against Maryland and its affiliates in the Baltimore Litigation (the "Order"). As a result, the Baltimore Litigation was stayed indefinitely.

6.      Shortly thereafter, Gerard and the other Appellants[15] appealed the Order. On July 16, 2003, the U.S. District Court for the District of Delaware issued a memorandum opinion, which vacated the Order (not the underlying Preliminary Injunction) and remanded the matter to this Court for further proceedings consistent with the memorandum opinion (the "Wolin Order). Gerard has never returned to this Court for further proceedings consistent with the Wolin Order, and this Court has not had an opportunity to reconsider its Order in light of the Wolin Order.

7.      On August 15, 2003, the Debtors and Maryland filed a notice of appeal of the Wolin Order with the Court of Appeals for the Third Circuit (the "Third Circuit Appeal"). The Third Circuit Appeal is currently pending.

---

[15] The other Appellants are plaintiffs in two similar actions entitled <u>Alfred v. Pennock and Betty L. Pennock, et al. v. Maryland Casualty Company, et al.</u>, Case No. CDV-2002-233 and <u>Billie J. Schull and Carolyn Schull, et al. v. State of Montana, et al.</u>, Case No. CDV 704 (collectively, the "Montana Actions"), both pending in the Montana First Judicial District, Lewis and Clark County.

8. On November 21, 2003, Parker and Heberling filed several pleadings (on behalf of Gerard) in the Baltimore Litigation. In particular, Parker and Heberling filed a Motion Requesting Entry of Scheduling Order (the "Scheduling Motion", attached hereto as Exhibit C), seeking to establish a new litigation schedule in the Baltimore Litigation. The Scheduling Motion states that Judge Wolin *vacated* the Bankruptcy Court's Order"[16]; and erroneously asserts that, "unless and until the Order of the United States District Court is vacated, Ms. Gerard is free to pursue the present case (the Baltimore Litigation)."[17]

9. On November 21, 2003, Parker and Heberling also filed (on behalf of Gerard) an Amended Complaint and Demand for Jury Trial (the "Amended Complaint" attached hereto as Exhibit D) in the Baltimore Litigation. The Amended Complaint names CNA, for the first time, as a defendant, as well as Grace and Maryland. The Amended Complaint differs from the Original Complaint in that: (a) it adds claims against CNA for negligence, aiding and abetting, and civil conspiracy; and (b) it does not assert any causes of action, or seek recovery from, Grace[18].

10. The Amended Complaint contains a listing of several "General Allegations," which includes the following assertions (collectively, the "Grace Allegations"):

- "(4) ... The Vermiculite mined at the Grace Mine and Mill contained tremolite asbestos, a *deadly toxin.*"

- "(5) Grace's mining and milling operation produced *extensive amounts* of asbestos containing dust..."

---

[16] Scheduling Motion ¶6 at p. 2.

[17] Scheduling Motion ¶7 at p. 2.

[18] Parker also filed a Notice of Substitution of Parties, which substitutes Tami A. Broden, the personal representative of the estate of Carol Gerard, as the plaintiff in the Baltimore Action.

91100-001\DOCS_DE:86058.1

- "(8) At all times relevant to this case, Grace *knew* that asbestos from its mining and milling operations *posed a significant threat to its workers and others* who came in contact with the asbestos dust from the mining and milling operation"

- "(9) Despite Grace's knowledge of the dangers that the asbestos dust posed to its workers, the workers' families and residents of Libby, Montana, Grace failed to take *reasonable measures* to prevent those individuals from being exposed to asbestos dust."

Amended Complaint ¶¶4 - 9 (emphasis added).

### Relief Requested

11. The Contemnors' blatant disregard for the Automatic Stay, the Preliminary Injunction, the Order, and the Wolin Order have caused the Debtors: (a) to experience disruption and uncertainty in their reorganization process; and (b) to incur additional legal fees. Accordingly, the Debtors request that this Court issue an Order that: (a) finds the Contemnors in contempt of Court; (b) orders the Contemnors to immediately withdraw their Amended Complaint and Demand for Jury Trial and their Motion Requesting Entry of Scheduling Orders; (c) orders the Contemnors to reimburse the Debtors for all costs and expenses associated with this Motion; (d) stays the Baltimore Litigation pending resolution of the Third Circuit Appeal; and (e) awards the Debtors any additional relief that this Court deems just and proper.

### Argument

**(i) Counsel for Gerard Should be Found in Contempt of Court**

**(A) Applicable Law**

12. This Court has the equitable power to enforce its own lawful orders. See In re Unioil, 948 F.2d 678, 682 (10th Cir. 1991). Indeed, a motion finding contempt of court is an appropriate method to seek enforcement of a bankruptcy court's order. See In re Radco Merchandising Services, Inc., 111 B.R. 684, 687 (N.D. Il. 1990). Specifically, civil contempt is

the proper vehicle for redressing actions taken in violation of the automatic stay of the Bankruptcy Code. See, e.g., Fidelity Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47 (2d. Cir. 1976), cert. den. 429 U.S. 1093.

13. It is a well-established principle that a lawyer, as well as the law firm with which the lawyer is affiliated, may be held in civil contempt for pursuing claims against a debtor, in violation of the protections afforded to debtors under the Bankruptcy Code. See In re Rhyne, 59 B.R. 276 (Bankr. E.D.Pa. 1986) (finding law firm in contempt of court for pursuing discharged claims where it had received notice of the debtor's discharge).

14. Section 362(h) of the Bankruptcy Code grants this Court the power to award pecuniary damages for the Contemnors' violation of the Automatic Stay. Section 362(h) of the Bankruptcy Code states: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. §362(h).

15. To prevail on a motion for civil contempt, the movant must prove by clear and convincing evidence that: (1) there was a valid court order; (2) the alleged contemnor had knowledge or notice of the order; and (3) the alleged contemnor disobeyed the order. See Wessley Jessen Corp. v. Bausch & Lomb, Inc., 256 F.Supp.2d 228 (D.Del. 2003); In re Associated Hobby Mfrs., Inc., 33 B.R. 959 (Bankr. Pa. 1983); In re Reed, 11 B.R. 258, 268 (Bankr. Utah 1981) (notice or knowledge of an order); Yates v. United States, 316 F.2d 718, 723 (10th Cir. 1963); Denver-Greeley Valley Water Users Ass'n v. McNeil, 131 F.2d 67, 69 (10th Cir. 1942) (notice or actual knowledge).

16. The Supreme Court for the United States of America has stated that civil contempt, "is a severe remedy, and should not be resorted to where there is a fair ground of

doubt as to the wrongfulness of defendant's conduct." California Artificial Stone Paving Co. v. Molitor, 113 U.S. 609, 618 (1885). In light of this promulgation, the Debtors fully understand the serious nature of the requested relief. However, it is clear that Counsel for Gerard has consciously defied the clear directives of this Court and the district court. Rather than returning to this Court for further proceedings consistent with the Wolin Order, Counsel for Gerard has taken action in the Baltimore Litigation in violation of the Automatic Stay, the Preliminary Injunction, the Order, and the Wolin Order (collectively, "the Orders"). In addition, the Amended Complaint now seeks to pursue claims against CNA, which is in clear violation of the Preliminary Injunction. The Orders are clear on their faces, and Counsel for Gerard had notice of such Orders.

### (B)   Filing the Amended Complaint and the Scheduling Motion Directly Violates the Order, the Preliminary Injunction and the Wolin Order

17.   Before Gerard can pursue independent claims against Maryland in the Baltimore Litigation, she has to return to this Court for further proceedings. Indeed, the Wolin Order specifically remands this matter to the Bankruptcy Court for further proceedings consistent with the Wolin Order. See Wolin Order at p. 1. Accordingly, before Gerard may proceed with the Baltimore Litigation, she must first file a pleading requesting this Court to reexamine its Order in light of the Wolin Order. Until Gerard does so, the Preliminary Injunction and the Order remain effective, and Gerard is prevented from pursuing her claims against Maryland in the Baltimore Litigation.

18.   Rather than comply with the Wolin Order and return to this Court, Counsel for Gerard proceeded directly to the court in the Baltimore Litigation. Moreover, Counsel for Gerard falsely represented to that court that, "unless and until the Order of the United States District Court is vacated, Ms. Gerard is free to pursue the present case." Scheduling Motion ¶7

at p. 2. Counsel for Gerard attached a copy of the Wolin Order to the Scheduling Motion. Accordingly, Counsel for Gerard had notice and knew that such representations contradicted the Wolin Order's express directive for Gerard to return to this Court for further proceedings consistent with the Wolin Order. The Contemnors knew the Preliminary Injunction prohibited Gerard from pursuing claims against Maryland in the Baltimore Litigation, and as a result thereof, the Contemnors should be found in contempt of Court for violating the Preliminary Injunction and the Order.

### (C) The Preliminary Injunction Prohibits the Actions Taken by Gerard Against CNA in the Amended Complaint and the Scheduling Motion

19. The Contemnors' actions also knowingly violate the Preliminary Injunction by seeking to advance claims against CNA. For the first time, the Amended Complaint adds CNA as a defendant in the Baltimore Litigation and asserts claims against, and seeks recovery from, CNA. CNA, however, is specifically set forth as an entity protected by the Preliminary Injunction. See Listing of "Insurance Carriers" in Exhibit A of the Preliminary Injunction.

20. The Contemnors cannot plausibly argue that the Wolin Order somehow modified, or even related to, the Preliminary Injunction's protection of CNA. Indeed, the Motion to Clarify did not in any way seek leave from the Preliminary Injunction to assert claims against CNA. As a result thereof, the Wolin Order only deals with the question of whether independent claims against Maryland should be excluded from the Preliminary Injunction. Therefore, although the Wolin Order vacates this Court's determination that the Preliminary Injunction extends to independent negligence claims asserted against Maryland in the Baltimore Litigation, the Wolin

10

Order did not vacate, or otherwise alter the scope of, the Preliminary Injunction. See Wolin Order at p. 18.[19]

21. Since neither the Order nor the Wolin Order addressed claims against CNA, the Preliminary Injunction's prohibition of claims against CNA remains effective. The Amended Complaint, however, specifically asserts claims against "CNA", and defines CNA as including: CNA Financial Corporation, Continental Casualty Company and Transportation Insurance Company. All three of these entities are "Insurance Carriers" that are expressly covered under the Preliminary Injunction.

22. Counsel for Gerard had notice or knowledge of the Preliminary Injunction, because they were served with the Preliminary Injunction, the Order, and the Wolin Order. Further, Counsel for Gerard filed the Motion to Clarify, which dealt directly with the scope of the Automatic Stay and the Preliminary Injunction. Accordingly, they certainly had knowledge of the Automatic Stay and Preliminary Injunction. In addition, the Contemnors not only knowingly violated the Preliminary Injunction by pursuing claims against CNA, but they had knowledge that their actions would result in the filing of this Motion. Indeed, this Court invited the Debtors to take this very action.

---

[19] Likewise, the body of the Wolin Order consistently limits its holding to independent claims against Maryland. For example, the Wolin Order states, "The asbestos claimants, in their application to the Bankruptcy Court and this Court, have made it clear that they are seeking leave to pursue their state remedies against *Maryland Casualty solely with respect to Maryland Casualty's independent tort liability.* They disavow any intention to press claims based upon Grace's Maryland Casualty's policies or for the insurer's vicarious liability for Grace's torts." Wolin Order at p. 9 (attached as Exhibit D) (emphasis added). Judge Wolin further notes, "it is clear that the debtor's estate will in no way be affected by a remand of the independent claims against Maryland Casualty to the Montana and Maryland State Courts." Wolin Order at p. 9.

23. In particular, Dan Cohn, bankruptcy counsel for Ms. Gerard (and the Libby Claimants), and Jeff Wisler, counsel for Maryland, both appeared at Grace's August 25, 2003 Omnibus Hearing. During the course of that hearing, Mr. Cohn[20] stated that Gerard's legal team believed that the *Preliminary Injunction* had been vacated, and they intended to go forward with the Baltimore Litigation. See August 25, 2003 Omnibus Hearing Transcript at 7, 1-7 (attached, in relevant part, as Exhibit E). Mr. Wisler vehemently opposed Mr. Cohn's position and repeatedly noted that only the Order, *and not the underlying Preliminary Injunction,* had been vacated by the Wolin Order. This protracted discussion culminated with the following dialogue:

> MR. WISLER: Your Honor, this is Jeff Wisler again, I am not asking your Honor to rule, but Your Honor has an injunction in place and the order of the District Court Judge Wolin says that the orders of the Bankruptcy Court dated June 20, 2002, is hereby vacated. Nothing in the order references the earlier preliminary injunction that still exists. So if the plaintiff decided to move forward in the state court litigation, they will be knowingly violating the injunction that expressly protects Maryland Casualty.
>
> THE COURT: Well, if that's the parties' view, I'm sure since I'm the one who entered the injunction, I'll be hearing from you on motion for contempt or whatever, but there's nothing before me today, so please, let's moves onto something that is on the agenda today. I can't do anything with respect to the remand at this point in time because the issue is on appeal. If somebody violates an injunction in somebody else's view as an allegation, I'm sure I'll hear from you and I'll deal with it then.

August 25, 2003 Omnibus Hearing Transcript at p. 10, 9-22. Despite this Court's stated belief that, "[it] [didn't] see where anybody [was] going to do anything while the issue is still on appeal,"[21] Gerard has not only proceeded, but she has now asserted new claims against CNA.

---

[20] Mr. Cohn and Parker serve as co-counsel for Gerard and the other plaintiffs in the Baltimore Litigation. Mr. Cohn is apparently responsible for bankruptcy-related matters, and Parker is appears to be responsible for all asbestos-related litigation matters.

[21] August 25, 2003 Omnibus Hearing Transcript at p. 9, 15-16.

91100-001\DOCS_DE:86058.1

24. As a result thereof, the Contemnors actions blatantly violate the express terms of the Preliminary Injunction by asserting claims against CNA.

### (D) The Amended Complaint and Scheduling Motion Violate the Automatic Stay

25. The newly filed Scheduling Motion names "W.R. Grace & Co.-Conn, et al." as a defendant, and, therefore, violates the Automatic Stay. Section 362(a)(1) of the Bankruptcy Code prohibits "the *issuance or employment of process*, of a *judicial*, administrative, or other *action or proceeding against the debtor* that was or could have been commenced before the commencement of the case under this title..." 11 U.S.C. §362(a)(1) (emphasis added). "Process is so denominated because it proceeds or issues forth in order to bring the defendant into court, to answer the charge preferred against him, and signifies the writs or judicial means by which he is brought to answer." 1 Joseph Chitty, A Practical Treatise on the Criminal Law 338 (2d ed. 1826). The inclusion of Grace in the newly filed Scheduling Motion constitutes judicial process against the Debtors, which is expressly prohibited by the Automatic Stay.

26. The Debtors note that the Amended Complaint appears not to specifically seek recovery from Grace. The Scheduling Motion, however, neither (a) acknowledges the existence of the Automatic Stay nor (b) states that Gerard is prohibited from advancing her claims against the Debtors. Accordingly, it is not clear whether Gerard is attempting to advance her claims against Grace. To the extent that Gerard intends to advance such claims against the Debtors, or include the Debtors in the discovery schedule contemplated by the Scheduling Motion, she is expressly prohibited by the Automatic Stay.

### (ii) The Debtors are Entitled to a Stay of the Baltimore Litigation Pending Resolution of the Third Circuit Appeal

27. To the extent that this Court believes there is any doubt with respect to whether the Baltimore Litigation is already stayed pursuant to the Preliminary Injunction, the Baltimore

13

Litigation should be stayed in its entirety until the Third Circuit Appeal has been resolved. The Third Circuit has stated that the following factors should be considered when deciding whether an applicant is entitled to a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Republic of Philippines v. Westinghouse Elec. Corp., 949 F.2d 653 (3d. Cir. 1991). All of the aforementioned factors indicate that the Debtors are entitled to a stay.

### (a) Debtors are Likely to Succeed on Appeal

28. The Debtors are likely to succeed on appeal because their interest in developing a fair and complete factual record in the Baltimore Litigation is sufficient to confer this Court with related-to jurisdiction over that matter. If the Baltimore Litigation proceeds, then a record that is damaging to Grace's position in Grace's asbestos-related litigation could be established. It is unrealistic to assume that the factual record established in the Baltimore Litigation can neatly be divided between (a) facts relevant to Maryland's alleged tortuous behavior and (b) facts relevant to Grace's alleged tortuous behavior. A quick examination of the Grace Allegations supports this assertion, as these allegations assert legal and factual conclusions concerning Grace. Once this proverbial bell has been rung, the reverberations will inevitably ring throughout Grace's prospective asbestos-related litigation.

29. Courts have found related-to jurisdiction - based solely on a debtor's interest in developing a fair and complete record in ancillary litigation - in situations that were almost identical to Grace's situation. In In Johns-Manville Corp. v. Asbestos Litig. Group (Manville), 40 B.R. 219(S.D.N.Y. 1984) the court made the following observations:

14

> [O]nce a witness has testified to a fact, or what sounds like a fact, that witness may be confronted with his prior testimony under oath in a future proceeding directly involving Manville, whether or not Manville was a party to the record on which the initial testimony was taken. Once an admission against interest is made, under oath or otherwise, by the agent of a party, that admission stands for all time. No matter what Lake may stipulate, the thousands of other claimants and cross-claimants who are after Manville's assets, would be entitled to use the product of such discovery. Id. at 225.

\*\*\*

> [The stay is] absolutely necessary if there shall be any hope of reorganizing the Debtor in accordance with the statutory goal. Manville cannot be reorganized while its management is chasing around the country preparing for pre-trial discovery and protecting its legitimate interests in the scope and conduct of deposition testimony. To suggest otherwise, as noted above, would be to ignore the realities of modern litigation.

Id. These statements are similarly applicable to the Debtors' circumstances. Like the debtors in Manville, the Debtors are faced with an onslaught of asbestos-related litigation – the primary reason the Debtors were forced to file their chapters 11 cases.

30.  If the Baltimore Litigation is allowed to proceed against Maryland, the Debtors will reasonably feel the need to defend themselves. In particular, the Grace Allegations (a) make factual assertions, (b) allege adverse legal conclusions, and (c) cast moral judgments upon the Debtors. In light of the massive amount of pending asbestos claims against Grace, these damaging allegations are even more important to Grace than the average, "reasonable party." While Grace would normally participate in any litigation where such allegations were made, it currently needs to direct its attention towards its restructuring and administering these chapter 11 cases. The Automatic Stay was specifically incorporated into the Bankruptcy Code so the Debtors do not have to participate in such matters.

15

### (b) The Debtors' Risk of Irreparable Harm Outweighs Any Harms the Plaintiffs May Suffer if the Baltimore Action is Stayed Pending the Debtors' Appeal

31. The dangers associated with the development of a damaging record also serve to satisfy the "irreparable harm" requirement for issuance of a stay pending the Third Circuit Appeal. The Debtors are not in a position to participate in the Baltimore Litigation. However, if they do not expand the resources necessary to defend themselves in the Baltimore Litigation, they will be forced to live with the factual record established in that matter. The factual record is pertinent to the Grace estates, as the Debtors are defendants in a countless number of asbestos-related cases. Indeed, the potential liabilities associated with such litigation were the primary reason that the Debtors were forced to file these chapter 11 cases. The potential harm that may be caused to the Debtors' estates by allowing the Baltimore Litigation to proceed far outweighs any harm that Gerard could suffer if the stay is granted.

### (c) The Public Policy Underlying the Bankruptcy Code Supports a Stay

32. Chapter 11 of the Bankruptcy Code was implemented to give insolvent companies an opportunity to reorganize into viable going-concerns. The rehabilitation of companies serves the public good by: saving jobs, encouraging lending, etc. In order to allow debtors to reorganize, precludes all litigation against or relating to a debtor's estate:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressure that drove him into bankruptcy.

Historical and Statutory Notes to 11 U.S.C. § 362. This Court would promote the Debtors' reorganization efforts by granting the requested stay. As the Debtors previously noted, the Grace

16

Allegations and risks associated with the development of a factual record in the Baltimore Litigation will force the Debtors to become involved, to the extent that the Baltimore Litigation is allowed to proceed. This involvement will serve as a costly distraction from its primary goal, which is to reorganize itself as a viable going-concern and to administer these chapter 11 cases. Therefore, to the extent public policy seeks to promote the Debtors' reorganization efforts, the requested stay is necessary.

33. Therefore, as the Debtors' requested relief complies with the applicable authority, the Baltimore Litigation should be stayed in its entirety until the Third Circuit Appeal has been resolved.

17

91100-001\DOCS_DE:86058.1

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form of the proposed order attached hereto, that: (a) finds the Contemnors in contempt of the Orders; (b) orders the Contemnors to withdraw their Amended Complaint and Demand for Jury Trial and their Motion Requesting Entry of Scheduling Orders; (c) orders the Contemnors to reimburse the Debtors for all costs associated with this Motion; (d) stays the Baltimore Litigation pending resolution of the Third Circuit Appeal; and (e) awards the Debtors any additional relief that this Court deems just and proper.

Respectfully Submitted:

Dated: December 22, 2003

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
James W. Kapp III
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

Laura Davis Jones (#2436)
Scotta McFarland (# 4184)
Paula Galbraith (# 4258)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession