1

```
 1                  UNITED STATES BANKRUPTCY COURT
                    FOR THE DISTRICT OF DELAWARE
 2


 3

     IN RE:  OWENS CORNING,              CHAPTER 11
 4   et al.,                            Case Nos. 00-3837 through
                                                     00-3854
 5        Debtors.
     --------------------------
 6   IN RE:  W.R. GRACE & CO.,           CHAPTER 11
     et al.,                            Case Nos. 01-1139 through
 7                                                   01-1200
          Debtors.
 8   --------------------------
     IN RE:  USG CORPORATION,            CHAPTER 11
 9   a Delaware Corporation,            Case Nos. 01-2094 through
     et al.,                                         01-2104
10
          Debtors.
11   --------------------------

12                                 December 23, 2003
                                   Newark, New Jersey
13

14   B E F O R E:   ALFRED M. WOLIN, USDJ

15

16

17   Pursuant to Section 753 Title 28 United States Code, the
     following transcript is certified to be an accurate record as
18   taken stenographically in the above-entitled proceedings.

19

     JACQUELINE KASHMER
20   Official Court Reporter

21

22

23             JACQUELINE KASHMER, C.S.R., C.R.R.
                     OFFICIAL COURT REPORTER
24                         P. O. Box 12
                       Pittstown, NJ 08867
25                       (609) 656-2595
```

2

```
 1     A P P E A R A N C E S:

 2

 3         ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER, LLP
           1801 K Street, N.W. - Suite 411
           Washington, D.C. 20006
 4         BY:  GARY A. ORSECK, ESQ.,
           For Kensington and Springfield
 5

 6         COOLEY GODWARD, LLP
           Five Palo Alto Square
 7         3000 El Camino Real
           Palo Alto, CA 94306-2155
 8         BY:  STEPHEN C. NEAL, ESQ.,
           For USG
 9

10         KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS, LLP
           919 Market Street - Suite 1000
11         Wilmington, DE 19801
           BY:  JENNIFER L. SCOLIARD, ESQ.,
12

13                        and

14         WILLKIE, FARR & GALLAGHER
           787 Seventh Avenue
           New York, NY 10019
15         BY:  RICHARD MANCINO, ESQ.,
           For D.K. Acquisition Partners, Fernwood Associates, and
16         Deutsche Bank Trust Company America

17

18         KRAMER, LEVIN, NAFTALIS & FRANKEL, LLP
           919 Third Avenue
           New York, NY 10022
19         BY:  JEFFREY S. TRACHTMAN, ESQ.,
           For Credit Suisse First Boston
20

21         SAUL EWING, LLlP
           100 South Charles Street
22         Baltimore, MD 21201-2773
           BY:  CHARLES O. MONK, II, ESQ.,
23              HENRY R. ABRAMS, ESQ.,
                NORMAN L. PERNICK, ESQ.,
24         For Owens Corning Debtors

25
```

1    A P P E A R A N C E S, cont'd.:

2

3        KAYE SCHOLER, LLP
         425 Park Avenue
4        New York, NY 10022-3598
         BY:  MICHAEL J. CRAMES, ESQ.,
5             JANE W. PARVER, ESQ.,
         For James McMonagle, Owens Corning Futures Representative,
6        and Dean Trafelet, USG and Armstrong Futures
         Representative

7

8        CAPLIN & DRYSDALE
         399 Park Avenue
9        New York, NY 10022-4614
         BY:  ELIHU INSELBUCH, ESQ.,
10       For Asbestos Claimants Committee in Owens Corning, USG,
         W.R. Grace, and Armstrong

11

12       KIRKLAND & ELLIS, LLP
         200 East Randolph Drive
13       Chicago, IL 60601
         BY:  DAVID M. BERNICK, P.C.,
14       For W.R. Grace

15

16       STROOCK & STROOCK & LAVAN, LLP
         180 Maiden Lane
         New York, NY 10038-4982
17       BY:  KENNETH PASQUALE, ESQ.,

18                   and

19       DUANE MORRIS
         744 Broad Street - Suite 1200
20       Newark, NJ 07102-3889
         BY:  WILLIAM S. KATCHEN, ESQ.,
21       For the Official Committee of Unsecured Creditors of USG

22

23       COZEN O'CONNOR
         Chase Manhattan Centre - Suite 1400
         1201 North Market Street
24       Wilmington, DE 19801-1147
         BY:  JEFFREY R. WAXMAN, ESQ.,
25       For the Armstrong Creditors

4

1     A P P E A R A N C E S, cont'd.:

2

3          WEIL, GOTSHAL & MANGES, LLP
           767 Fifth Avenue
4          New York, NY 10153-0119
           BY:  DEBRA A. DANDENEAU, ESQ.,
5          For the Armstrong Debtors

6

           ANDERSON, KILL & OLICK
7          1251 Avenue of the Americas
           New York, NY 10020
8          BY:  JOHN B. BERRINGER, ESQ.,
           For the Designated Members for the Unsecured Creditors
9          Committee

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    THE COURT:  Good morning.  Everyone may be seated.  Thank

2    you.  All right.  We're all here because of the remand Opinion

3    issued by the Circuit Court of Appeals on December 18 and the

4    Case Management Order issued by the Court on December 19, and as

5    I read the Opinion of the Circuit Court of Appeals, they stressed

6    the need for an adequately developed evidential record which I

7    intend to comply with.

8        They speak of expedited discovery to proceed without

9    interruptions, objections or extensions, and I read into that

10   that it's subject to the supervision and control of the District

11   Court, including deadlines.

12       The Court has, as you know, vacated its stay of discovery

13   through the Case Management Order that was entered on December

14   19, and before we get started today, there's certain housekeeping

15   details, and before I take your appearances, certain housekeeping

16   details that the Court would like to engage in.  But you know

17   what, I think I'll take your appearances first in case there's a

18   housekeeping detail that you're going to respond to, then I've

19   got to say, Who are you, so, why don't we start over here on the

20   Petitioner's side.

21       MR. ORSECK:  Good morning, your Honor.  I'm Gary Orseck

22   from Robbins, Russell, Englert, Orseck & Untereiner in

23   Washington, and I'm appearing today on behalf of Kensington and

24   Springfield.

25       THE COURT:  Okay.  Thank you.

1    MR. NEAL:  Good morning, your Honor.  Stephen Neal from

2  Cooley Godward law firm on behalf of USG.

3    THE COURT:  Good morning, Mr. Neal.

4    MS. SCOLIARD:  Jennifer Scoliard, Klehr, Harrison, Harvey,

5  Branzburg & Ellers, representing D. K. Acquisition Partners.

6    THE COURT:  Would you spell your name for me please.

7    MS. SCOLIARD:  S-c-o-l-i-a-r-d.

8    THE COURT:  Okay.  You're from Klehr?

9    MS. SCOLIARD: Yes.

10    THE COURT:  And you're appearing for USG -- I'm sorry --

11  W.R. Grace?

12    MS. SCOLIARD:  Yes.  In W.R. Grace, representing D.K.

13  Acquisition Partners, LP, Fernwood Associates, LP, and Deutsche

14  Bank Trust Company America.  With me is my co-counsel, Richard

15  Mancino --

16    THE COURT:  All right.  Mr. Mancino, welcome.

17    MR. MANCINO:  Thank you, your Honor.

18    MS. SCOLIARD:  -- from the law firm of Willkie, Farr &

19  Gallagher, and if I may, your Honor, move for his admission pro

20  hac vice.

21    THE COURT:  Any objection by anyone?  Granted.

22    MS. SCOLIARD:  Thank you.

23    THE COURT:  Let's move on.

24    MR. TRACHTMAN:  Jeffrey Trachtman from Kramer Levin here

25  representing Credit Suisse First Boston as agent for the bank.

1          THE COURT:  Okay.  And you represent the banks?

2          MR. TRACHTMAN:  Yes.  I represent Credit Suisse as agent.

3          THE COURT:  Okay.  Fine.

4          MR. MONK:  Good morning, your Honor.  Charles Monk from

5    Saul Ewing, along with Henry Abrams and Norman Pernick.  We

6    represent the debtors in the Owens Corning case.

7          THE COURT:  All right.  Next.

8          MR. CRAMES:  Good morning, your Honor.  Michael Crames of

9    Kaye Scholer, accompanied by Jane Parver, also of Kaye Scholer,

10   representing James McMonagle, the futures rep in OC, and Dean

11   Trafelet, the futures rep in USG.

12         THE COURT:  Okay.  Fine.

13         MR. INSELBUCH:  Elihu Inselbuch from Caplin & Drysdale.

14   We represent the Asbestos Claimants Committee in Owens Corning,

15   in USG and in W.R. Grace.

16         MR. BERNICK:  David Bernick, Kirkland & Ellis, for W.R.

17   Grace.

18         THE COURT:  Okay.

19         MR. PASQUALE:  Good morning, your Honor.  Kenneth Pasquale

20   from Stroock & Stroock & Lavan for the USG Creditors Committee.

21         MR. KATCHEN:  William Katchen --

22         THE COURT:  Wait a minute.  I can't see you.  You people

23   are going to have to move.  I have to be able to see everybody in

24   the courtroom.  Everybody squeeze in.

25         MR. WAXMAN:  Good morning, your Honor.

1           THE COURT:  I'm not ready for you.  Sorry.  All right.

2   Mr. Pasquale, you're here for USG Creditors?

3           MR. PASQUALE:  Yes, sir.

4           THE COURT:  And, Mr. Katchen, who are you here for?

5           MR. KATCHEN:  Good morning, your Honor.  Duane Morris for

6   USG Creditors Committee, co-counsel.

7           THE COURT:  So, you're local counsel for Mr. Pasquale.  Is

8   that right?

9           MR. KATCHEN:  Yes, sir.

10          THE COURT:  Okay.  All right.  Yes.

11          MR. WAXMAN:  Jeff Waxman of Cozen & O'Connor on behalf of

12  the Official Committee of Unsecured Creditors.

13          THE COURT:  In what case?

14          MR. WAXMAN:  Armstrong.

15          THE COURT:  And I need the spelling of your name.

16          MR. WAXMAN:  W-a-x-m-a-n.

17          THE COURT:  W-a-x-m-a-n?

18          MR. WAXMAN:  Yes, sir.

19          THE COURT:  And you're for the Armstrong creditors?

20          MR. WAXMAN:  Yes, your Honor.

21          THE COURT:  All right.  Anybody else who feels that

22  they're going to address the Court, I need to know your

23  appearance.

24          MS. DANDENEAU:  Your Honor, I don't intend to address the

25  Court but in case there's anything by any of your --

1       THE COURT:  Excuse me?

2       MS. DANDENEAU:  Debra Dandeneau from Weil, Gotshal &

3  Manges on behalf of Armstrong.

4       THE COURT:  For the Armstrong debtor?

5       MS. DANDENEAU:  Yes, your Honor.

6       THE COURT:  Okay.  Anybody else?

7       MR. INSELBUCH:  Your Honor, I would add we are also

8  counsel for the Armstrong Asbestos Claimants Committee.

9       MR. CRAMES:  And if I may, your Honor, inasmuch as other

10  parties in Armstrong have appeared, it should be noted that we

11  are also counsel for Dean Trafelet, the futures rep in Armstrong.

12       THE COURT:  Okay.  Fine.  I now want to go to some of the

13  housekeeping details.  First of all, I think that there's an

14  application before this Court to grant amicus status to the

15  Washington Legal Foundation.  I don't think that's ever been

16  granted -- is that correct -- or you don't know?

17       MR. ORSECK:  I don't know whether it's been granted.

18       THE COURT:  Does anybody have any objection?  I'm going to

19  assume it was never granted and I'm going to grant it.  All

20  right.

21       It was difficult to tell from the filings in the Circuit

22  Court of Appeals whether there was any filing on behalf of the

23  Unsecured Creditors Committee of Owens Corning and W.R. Grace.

24  If they did file in the Circuit Court of Appeals, then I want to

25  make them movants in this case.  If they did not, then fine.

1    Let's find out.

2           Does anybody know the answer to that?

3           MR. BERNICK:  David Bernick for Grace.  I am unaware of

4    any filing that was made by the Unsecured Creditors Committee in

5    the Court of Appeals in connection with this matter.

6           THE COURT:  I did not receive anything, so, that's why I'm

7    asking the question, just to complete the record.

8           MR. PASQUALE:  Your Honor, Ken Pasquale from Stroock.  We

9    represent the Committee in Grace.  We did not make a filing.

10          THE COURT:  Okay.  Fine.  Is anybody here in Owens Corning

11   that can tell us whether the Official Committee of Creditors did

12   or did not file?

13          MR. BERRINGER:  Your Honor, John Berringer on behalf of

14   the Designated Members for the Unsecured Creditors Committee.

15   There was no filing made by the Committee.

16          THE COURT:  Okay.  Fine.  The next matter that I want to

17   discuss very briefly is that I infer that the type of discovery

18   that is going to be requested of the Court is document

19   production, potentially interrogatories, and depositions of

20   designated people.  I'll wait to hear from you later.

21          I also want to advise everybody that I have received three

22   communications.  One that I received this morning from you, Mr.

23   Orseck, came through on the fax late last night, but I shouldn't

24   say late, 5:09 it came through.

25          I've received a communication from Saul Ewing setting

1    forth time periods, and from USG Corporation, a request for a

2    document production by the Court.

3        If there are any other filings with the Court, please let

4    me know because I haven't received them.  Did anybody file

5    anything with the Court in terms of this case management

6    conference today?  If so, tell me now.

7        MR. INSELBUCH:  Your Honor --

8        THE COURT:  Yes, Mr. Inselbuch.

9        MR. INSELBUCH:  -- we received copies of Mr. Orseck's

10   communication and Mr. Monk's communication.  We did not receive a

11   copy of Mr. Neal's communication.

12       MR. NEAL:  Service is being implemented, so, if people

13   haven't received those by today, I'm assuming they will receive

14   them today, your Honor.

15       THE COURT:  Yes, Miss Parver.

16       MS. PARVER:  Good morning, your Honor.  Your Honor,

17   normally the rules are such that counsel are directed to ensure

18   that co-counsel or their adversaries are supposed to receive

19   notice of communications to the Court at or about the same time,

20   particularly as communications are made with the Court in

21   writing, so that if you're doing it by fax or electronically, Mr.

22   Neal, we would ask that there's no reason to effect service a day

23   later.

24       THE COURT:  Well, you know, there's a service page here

25   that indicates that it was served on Jones Day, counsel for the

1    USG Debtors, it was served on Finger & Slanina, PA, counsel for

2    Kensington International Limited and Springfield Associates, it

3    was served on Mr. Orseck's firm, it was served on Willkie, Farr &

4    Gallagher, counsel for D.K. Acquisition, it was served on

5    Woolmuth, Maher & Deutsch, and they, I think, transmitted it to

6    us, I'm not quite sure.  Then it was served on Stutman, Treister

7    & Glatt in Los Angeles, counsel for Kensington and Springfield,

8    and it was served on Joanne B. Wills of the Klehr firm, counsel

9    for D.K. Acquisition Partners firm with associates, so, it seems

10   like it was served on one side of the case.

11          MS. PARVER:  Thank you.

12          MR. BERNICK:  I don't take issue at this point with the

13   nature of the service but I'm not familiar with any one of the

14   three documents that the Court has mentioned.  If your Honor

15   intends to take those matters up this morning, I certainly would

16   appreciate knowing a little bit about what it is that they said.

17          THE COURT:  The first two that I mentioned, the one from

18   Robbins, Russell and Saul Ewing, primarily deal with time periods

19   in discovery.  They are not subtantive in that sense.

20          The USG is substantive and I intend to deal with it right

21   now.

22          There are two other housekeeping details I want to deal

23   with before we get into substantive matters.  Any depositions

24   that are granted by the Court will take place at this court

25   house, and let me tell you why.  I've already made application to

1    Chief Judge Bissell, the Chief Judge of the District Court of the

2    District of New Jersey, that if there is any discovery dispute,

3    it will be resolved by a district judge to be appointed by him

4    and not by me in view of the fact that this District Court has to

5    determine its recusal, so, it would be inappropriate for this

6    District Court to determine any issue concerning discovery after

7    today's proceeding.

8         I will report to Judge Bissell what the scope of the

9    discovery requested is and also the time periods that are

10   established for that discovery.  Does anybody have any questions

11   about that?  If so, I'll address them right now.

12        MR. BERNICK:  I think one of the issues that's going to

13   arise, depending upon how your Honor defines the scope of

14   discovery, are privilege issues, privileges that --

15        THE COURT:  I understand that, Mr. Bernick, and I'm going

16   to direct that if there is a request for document production,

17   that if there is an issue concerning privilege or work product,

18   that a log be established for those documents and it be

19   transmitted to the District Judge who will then rule, so, I don't

20   think it's going to be a problem and I don't know how many

21   documents are going to be requested.  I've learned over the past

22   two years not to anticipate, so, we'll wait and see what people

23   have to say.

24        So, depositions will take place at the court house on the

25   scheduled date.  Also, anything that's going to happen because of

1   the mandate of the Circuit Court of Appeals in terms of the

2   sunset of January 31st, I'm going to direct that depositions,

3   court proceedings all be on a daily-copy basis to be paid for by

4   the parties and the daily copy of deposition transcripts shall be

5   forwarded a copy to this Court.

6        Any requests for document production, a copy thereof shall

7   be forwarded to this Court.  If subpoenas are issued, a copy of

8   the subpoena shall be issued to this Court.  We're not calling

9   for you at this time to send the documents that are produced to

10  this Court but we want to have an overall sense of what's going

11  on in terms of the discovery so that we can keep tabs on the

12  progress.

13       All right.  The next matter I'd like to deal with before I

14  go to the specific discovery that everybody is going to request,

15  and I just have no idea what it is, I want to deal with Mr.

16  Neal's application, because it's different than the letters I've

17  received from others and, Mr. Neal, if you want to make a record,

18  I'll give you the opportunity to make a record.  I'll then be

19  prepared to rule on your application.

20       MR. NEAL:  Thank you, your Honor, and I'll be very brief

21  in making the record.  We have filed our recusal motion under

22  both 455(a) and 455(b).

23       THE COURT:  I'm aware of that.  By the way, I should tell

24  everybody I have had an opportunity to read everything in this

25  case.  I've read the Circuit Court of Appeals' argument, I've

1   read the Opinion of the Court and I've read all the submissions

2   leading up to it.

3       MR. NEAL:  So, your Honor, also, is therefore aware that

4   our 455(b) argument raises the question that goes to

5   communications between the Court and various parties to the

6   proceedings before the Court.  The request that we have filed

7   with the Court is simply designed to elicit in the best way we

8   could think of whatever documents exist that reflect or pertain

9   to such communications, and then we note at the end of our

10   request that there may be a necessity for interrogatories or some

11   other form of communication.

12       We would like to establish on the record the scope of your

13   Honor's communications with all parties to these proceedings and

14   if there is an existing log that already identifies those, that

15   obviously is at least a first step towards getting that

16   information, but we need somehow to be able to develop a record

17   as to what the extent of the Court's communications with parties

18   in this proceeding have been, and our desire is hopefully it will

19   be reflected in existing documents and, if not, through

20   supplemental requests to ascertain the time, the extent of the

21   communications, the method of the communications that the Court

22   has had with various parties before the Court.

23       THE COURT:  All right.  Thank you.  Does anybody else want

24   to be heard.  If so, I'll hear you now.  If not, I'm prepared to

25   rule.  No voices being heard -- Mr. Bernick.

1    MR. BERNICK:  I'm sorry.  Excuse me, your Honor.

2    THE COURT:  Yes, Mr. Bernick.

3    MR. BERNICK:  Again, we've not received a copy of this

4    document and I am unaware of the extent to which this document

5    seeks out information that would be pertinent to the Grace case.

6    I simply don't know.  And to the extent that the document seeks

7    discovery of the Court relating to the Grace case, obviously, our

8    interests are implicated and I want to make sure that at this

9    point in time, the record is clear that we had no opportunity to

10   respond to this whatsoever, so, I'll make an objection to the

11   discovery that USG is seeking under these circumstances because

12   if your Honor is going to rule, I don't know how you're going to

13   rule on this, so, we want to preserve our right to make more

14   specific objections.

15   THE COURT:  I'll preserve your right to make more specific

16   objections but I am prepared to rule.

17   It's unfortunate that it was not communicated to others in

18   the case, Mr. Neal, and I would hope that in the future if

19   something is going to be communicated, that it would be sent to

20   all others.  I must say, Mr. Neal, it has never been a problem

21   before with your office.

22   MR. NEAL:  No, your Honor.  I apologize to your Honor.

23   THE COURT:  I take this as an oversight.

24   MR. NEAL:  Yes.

25   THE COURT:  Mr. Neal, I'm going to deny your application

1    and I'm going to deny your application for six reasons -- all

2    right -- and if you think that the Court is wrong, I know you

3    know your way to Philadelphia.

4         First of all, as a procedural and institutional matter, I

5    believe that discovery from the Court is inappropriate without

6    specific direction of the Circuit Court of Appeals.

7         Secondly, your application for this type of document

8    production from the Court was not accompanied by any authority

9    that would indicate to the Court that you have a right to such

10   document production and, in fact, I want to quote to you from a

11   case out of the Eastern District of Pennsylvania.

12        The case is Cooney vs. Booth, and it's cited 262 F.Supp.2d

13   494, was written by Judge Robreno of that court, and just on page

14   8, I just want to give you one quote where it was a motion for

15   recusal of Judge Robreno under U.S.C. 455, and in that case there

16   were affidavits by the movants for his recusal, and he says, "The

17   Court is not required to accept the factual statements contained

18   in the affidavit as true, "but here's the phrase that I want to

19   bring to your attention, he says, "Instead, the presiding judge

20   may contradict the movant's factual allegations with facts

21   derived from the judge's knowledge and the record."

22        So, I repeat my number one reason is that from an

23   institutional and procedural standpoint, discovery from this

24   Court is inappropriate without specific directions of the Circuit

25   Court of Appeals.

1   The second reason, others involved in this litigation

2   possess the type of documents that are sought by U.S. Gypsum.

3   There will be no hardship to you to demand those documents from

4   others.

5   Third, in the submission to the Circuit Court of Appeals,

6   it was submitted to the Circuit Court of Appeals but my

7   recollection was that it was the December 28 (sic) Case

8   Management Order of this Court when I returned from California

9   that I issued directing that all of the adviser consultants

10  prepare an affidavit under oath, and in that Case Management

11  Order, this Court waived any judicial privilege it had as to any

12  court consultant confidences or records that may be in their

13  possession.  So, you can go to all the advisers and the

14  consultants and demand documents, if that's what you seek.

15  You've asked for substantially all documents initiated by

16  the District Court and I tell you that there are 190 of them that

17  are on the bankruptcy web site in Delaware, so, you can look

18  there for those, that type of information.

19  The fifth reason is that correspondence that pertains to

20  the jointly administered cases is in the possession and control

21  of persons who are susceptible to subpoena for that type of

22  information.

23  Lastly, the scope of discovery that you seek, Mr. Neal,

24  extends beyond the nature of the discovery representation to the

25  Court of Appeals given to complete the evidentiary record and

1    appears to violate both the spirit and the letter of those

2    representations.

3         So, for those six reasons, I'm going to deny your

4    application.

5         I'm now prepared to move to the type of discovery that is

6    sought and then to discuss a timetable, and I might as well start

7    with you, Mr. Orseck.  You represent Kensington and if you would

8    tell me what you seek, I will evaluate it and try to establish a

9    timetable for it.

10         MR. ORSECK:  Thank you, your Honor.  We have, on behalf of

11    Kensington and Springfield, issued yesterday out of my office a

12    set of, I believe it is, 15 requests containing document

13    subpoenas.  Virtually all, if not all, of them are accompanied by

14    requests that the target of the subpoena appear for a deposition,

15    so, we have propounded --

16         THE COURT:  Let's see if I understand.  You want to take

17    the deposition of 15 individuals?

18         MR. ORSECK:  That's correct.

19         THE COURT:  Okay.

20         MR. ORSECK:  Now, before I move on from that, Mr. Neal's

21    firm, as you're aware, your Honor, has made additional requests

22    for documents and depositions.

23         THE COURT:  I'm only aware of what I just ruled on.  I'm

24    not aware of any requests for depositions.  That's why we're

25    having this case management meeting today.  I am the one who

1    knows the least about what you want in discovery.

2        MR. ORSECK:  I understand, and I misspoke.  I prepared, if

3    your Honor would like, to list --

4        THE COURT:  I would.

5        MR. ORSECK:  -- document and deposition subpoenas that

6    came out of my office yesterday.  I'll leave it to Mr. Neal to --

7        THE COURT:  Do I take it that they're without date?

8        MR. ORSECK:  Well, we put dates on them.  We put document

9    return dates for production, but to be perfectly honest, we sort

10   of picked a date out of the air because we understand that the

11   schedule will be pronounced by the Court.

12       THE COURT:  And that's why we add in our Case Management

13   Order to give you guidance that, regardless of what you put in

14   your subpoena, we are going to establish the dates here today.

15       MR. ORSECK:  Yeah.  I think all the parties are aware of

16   that and --

17       THE COURT:  Okay.

18       MR. ORSECK:  -- there are dates in them.  We did put, I

19   believe, on our subpoenas a December 29 return date for documents

20   but we have in the letter that you got this morning, your Honor,

21   from my office suggests a January 2nd deadline for the production

22   of documents by all parties.

23       THE COURT:  Well, what I'd really like to know first is

24   what discovery you seek and then we'll talk about dates.

25       MR. ORSECK:  Yes, sir.

THE COURT:  Because I've got to hear from everybody and I
have to know overall how much document discovery you're going to
be involved in, how many depositions are going to be taken, are
we going to do them on single or multi-tracks.  I won't know that
until I know the numbers.

MR. ORSECK:  All right.  Well, to begin with, we have sent
document and deposition subpoenas to the five adviser
consultants, to each of them.

THE COURT:  So, you're going to do it for Gross, Dreier,
Hamlin, Keefe, and McGovern?

MR. ORSECK:  That's correct.

THE COURT:  Okay.  Fine.

MR. ORSECK:  And prior to your housekeeping order this
morning, we were not aware that service on the Court of the
subpoenas issued to other parties was necessary, so, we've not
done it.  We'll send them in.

THE COURT:  You can just send them to me.  It doesn't have
to necessarily be contemporaneous.  I just want to know what's
happening.  All right.  Who else?

MR. ORSECK:  Okay.  Beyond that, we have sent a document
and deposition subpoena to Kevin Irwin, who, my understanding is,
serves as counsel to Futures Rep, Mr. Hamlin, in the G-1 case,
along with Mr. Gross.  That makes six.

THE COURT:  Okay.

MR. ORSECK:  We have also sent document and deposition

 1    subpoenas --

 2         THE COURT:  By the way, can I interrupt you to this

 3    extent.  I take it that everybody you're listing now, it's a

 4    document production and a deposition.  If it's just a document

 5    production or a deposition and it's not both, just tell me.

 6         MR. ORSECK:  I'll do that.

 7         THE COURT:  Thank you.

 8         MR. ORSECK:  Okay.  Maura Smith and Michael Thaman.

 9         THE COURT:  Okay.  I know who they are.

10         MR. ORSECK:  Okay.

11         MR. BERNICK:  I'm sorry, your Honor.  Could we just, for

12    the benefit of the rest of us, I think I know who Maura Smith is.

13         THE COURT:  Maura Smith was former general counsel of

14    Owens Corning, no longer there, and Mike Thaman is the CEO.

15         MR. ORSECK:  There was a 30(b)(6) subpoena to Grace, and

16    the rest I'll just rattle them off, is David Siegel.

17         THE COURT:  Who is he?

18         MR. BERNICK:  It's the GC of Grace.

19         THE COURT:  And how do you spell Siegel?

20         MR. BERNICK:  S-i-e-g-e-l, I believe.

21         THE COURT:  Okay.  Hold on a second.  He's the general

22    counsel?

23         MR. BERNICK:  Yes, your Honor.

24         THE COURT:  Okay.  Who else?

25         MR. ORSECK:  Mr. Pernick, and those are, I believe, all of

1    the subpoenas that have issued from my office.

2           THE COURT:  Those are ten.

3           MR. ORSECK:  Yes.

4           THE COURT:  You said 15.

5           MR. ORSECK:  I did say 15.

6           MR. BERNICK:  11.

7           MR. ORSECK:  Well, the remaining ones on my list are

8    issued from Cooley or from Willkie Farr, but I don't want to miss

9    any, so, I think I will turn it over to my colleague.

10          THE COURT:  For those people who have 11 --

11          MR. INSELBUCH:  Yes.

12          THE COURT:  -- are you counting Grace as one?

13          MR. INSELBUCH:  Yes.

14          THE COURT:  Okay.  Fine.  It wasn't individual?  Any idea

15   how long you're going to depose these people so we can get a

16   sense of time?

17          MR. ORSECK:  Well, we certainly have planned to double or

18   triple track as necessary.  We've received subpoenas from the

19   other side that have, I think, 15 or 11 requests, 15 different

20   depositions.

21          THE COURT:  I've not seen that.

22          MR. ORSECK:  Yeah.  That letter came in last night and it

23   just listed 15 people.

24          THE COURT:  Whose letter is that?

25          MR. ORSECK:  That's Mr. Monk's letter.

1          THE COURT:  Oh, Mr. Monk's letter?  Okay.  I haven't

2     received that item.

3          MR. ORSECK:  And so, it is apparent to me at least that

4     given that there is only going to be a couple of weeks available

5     for depositions, they're likely to be double or even triple

6     track.

7          I don't know an answer to the question of how long each of

8     these individual depositions is going to take.

9          THE COURT:  I can only tell you the only other experience

10    I've had with massive depositions was in the Prudential case

11    where we took 55, there were 55 depositions taken in four days,

12    and it was triple, quadruple tracked or whatever was necessary.

13         MR. ORSECK:  We will certainly agree to take them on any

14    schedule that the Court thinks is appropriate, including on the

15    weekends, given the time frame.

16         THE COURT:  I also have a concern about duplicity.  The

17    first example, if you're going to take Judge Dreier's deposition

18    and Mr. Neal wants to take Judge Dreier's deposition, I would

19    think that what Mr. Neal would do would be only supplemental to

20    what you do.  I mean, this is not an endurance contest for

21    anyone, I would hope.

22         MR. ORSECK:  Your Honor, certainly on the movants' side,

23    that is our intention for the depositions, to designate a lead

24    counsel to chair the deposition and then if there are

25    supplemental questions needed by others, that would be at the

1    end.

2         THE COURT:  Do you think that it would make sense, Mr.

3    Orseck, because we seem to have petitioners on one side and

4    respondents on the other, that someone on the petitioners' side

5    should be designated as the lead discovery counsel to assist in

6    the scheduling of the depositions and the taking of the

7    depositions and the staffing of the depositions so that they can

8    be multi-tracked?

9         MR. ORSECK:  I think at this point there are enough

10   different entities involved that we may want to talk about,

11   amongst ourselves, how to coordinate that.  I'm not prepared to

12   offer a designation of one counsel for our side to do that at

13   this point.

14        THE COURT:  What I think I'm going to do is after I find

15   out what the scope of the discovery is, I think I'll take a ten-

16   minute recess, give people an opportunity to talk among

17   themselves as to the type of discovery, who's going to do it, do

18   they need it, whatever, and then we'll set a time period later

19   on.  Let me find out what the scope of the discovery is.

20        MR. ORSECK:  All right.  Well, those are the 11 then that

21   have gone from my office.

22        THE COURT:  Okay.  That's it for you.  Correct?

23        MR. ORSECK:  That's right.

24        THE COURT:  All right.  Mr. Neal, I'll hear from you.

25        MR. NEAL:  Thank you, your Honor.  And we have -- the

1   movants have collectively divided up the parties from which we

2   seek information and, so, we have served yesterday subpoenas on

3   behalf of all three movants and, again, to the extent people

4   haven't received them yet, I apologize.  They were going out late

5   yesterday and they will be in your offices.

6        THE COURT:  Well, it will be on the record today, so, tell

7   us who.

8        MR. NEAL:  What I'll do is read through the list of

9   entities on which we have served document subpoenas that we have

10  proposed be returnable on January 2nd, and then I will go back

11  and identify those from whom we are currently seeking to take

12  deposition testimony.

13       We may want to add to the deposition list after we see the

14  documents that come in, but we have served document subpoenas on

15  Caplin & Drysdale.

16       THE COURT:  Caplin & Drysdale.

17       MR. NEAL:  Mr. Inselbuch.

18       THE COURT:  Attention Mr. Inselbuch.  Excuse me.  Caplin &

19  Drysdale is one.  Mr. Inselbuch --

20       MR. NEAL:  No.  It's just one.  I'll just read the entity,

21  unless your Honor wants me to tell you the person.  Campbell &

22  Levine, LLC.

23       THE COURT:  Who do they represent?

24       MR. NEAL:  They are counsel to the Official Committee of

25  Asbestos Personal Injury Claims.

1     THE COURT:  Okay.

2     MR. NEAL:  Blank Rome, in the same capacity.

3     THE COURT:  Hold on.  You speak quicker than I write.

4     MR. NEAL:  The Bayard Firm.

5     THE COURT:  Who do they represent?

6     MR. NEAL:  They're also counsel to the Asbestos Committee.

7     MR. INSELBUCH:  Neither is Blank Rome.

8     MR. NEAL:  I'm sorry.  They're counsel to the individual

9  members of the committee.  Ashby & Geddes in Wilmington.

10     THE COURT:  Who do they represent?

11     MR. NEAL:  They are counsel, again, to a number of the

12  Asbestos Committee --

13     MR. INSELBUCH:  No, they're not.  Ashby & Geddes were

14  local counsel at the beginning of these proceedings.  They were

15  replaced by Campbell & Levine.

16     THE COURT:  All right.  Let him list them and then I'll

17  hear from you.

18     MR. INSELBUCH:  I'm just trying to correct the record,

19  Judge.

20     MR. NEAL:  Your Honor, just picking up on that, obviously,

21  if there are people who it doesn't make sense for us to have

22  directed these to, we are open to hearing that.  We are trying to

23  get these on file as expeditiously as possible consistent with

24  the schedule that the Court Circuit's imposed.

25     Brayton & Purcell.

1          THE COURT:  Who?

2          MR. NEAL:  Brayton & Purcell.

3          THE COURT:  How do you spell Brayton?

4          MR. NEAL:  B-r-a-y-t-o-n.  Baron & Budd.

5          THE COURT:  Excuse me.  How do you spell Purcell?

6          MR. NEAL:  P-u-r-c-e-l-l.

7          THE COURT:  And who do they represent?

8          MR. NEAL:  They are counsel to the Official Committee of

9   Asbestos Claimants from the first amended notice of Official

10  Committee of Asbestos Claimants in Owens Corning.

11         THE COURT:  Okay.  Baron & Budd.  Who else?

12         MR. NEAL:  Weitz & Luxenberg.  Kelley & Ferraro.

13         THE COURT:  Excuse me.  Kelley & Ferraro?

14         MR. NEAL:  Hartley & O'Brien.

15         THE COURT:  Would you repeat that one please.

16         MR. NEAL:  Hartley & O'Brien.

17         THE COURT:  Hartley?

18         MR. NEAL:  H-a-r-t-l-e-y.

19         THE COURT:  Yes.

20         MR. NEAL:  Goldberg, Perskey.

21         THE COURT:  Goldberg, Perskey, are they that New Jersey

22  firm down in Atlantic City?

23         MR. NEAL:  I believe so.

24         MR. INSELBUCH:  No, sir, your Honor.  They're in

25  Pittsburgh.

```
 1              THE COURT:  Pittsburgh?  Thank you.

 2              MR. NEAL:  Cumbest, Cumbest, Hunter & McCormick.

 3              THE COURT:  Cumbest?

 4              MR. NEAL:  C-u-m-b-e-s-t, Cumbest, Cumbest, Hunter &

 5      McCormick.  Cooney & Conway.

 6              THE COURT:  Cooney & Conway.

 7              MR. NEAL:  Glasser & Glasser.

 8              THE COURT:  Glasser & Glasser.

 9              MR. NEAL:  Thorton & Naumes.

10              THE COURT:  Thorton, spell the last name.

11              MR. NEAL:  Naumes, N-a-u-m-e-s.

12              THE COURT:  Okay.

13              MR. NEAL:  Peter Angelos.  Bergman, Senn, Pageler &

14      Frockt.

15              THE COURT:  Bergman.

16              MR. NEAL:  Senn.

17              THE COURT:  How do you spell Senn?

18              MR. NEAL:  S-e-n-n,, P-a-g-e-l-e-r and Frockt,

19      F-r-o-c-k-t.

20              THE COURT:  Okay.

21              MR. NEAL:  Kazan, McClain.  Elizabeth Magner.

22              MR. MONK:  Elizabeth Magner?

23              THE COURT:  Elizabeth Magner.

24              MR. NEAL:  Obermayer, Rebmann, Maxwell & Hippel.

25              THE COURT:  Okay.
```

1      MR. NEAL:  Noel Burnham.  He's actually Montgomery,

2  McCracken, the firm is Montgomery, McCracken.

3      MR. BERNICK:  In what capacity are they being discovered?

4  Who do they represent?

5      MR. NEAL:  Unofficial Committee of Asbestos Claimants.

6      MR. BERNICK:  In your case?

7      MR. NEAL:  Dean Trafelet, James McMonagle, Kaye Scholer,

8  Young, Conaway, and Motley Rice.

9      THE COURT:  Young, Conaway?  Now, are these people -- and

10  you've listed roughly 26 persons.  Correct?

11      MR. NEAL:  Correct.

12      THE COURT:  Is it 25 or 27?

13      MR. INSELBUCH:  I didn't count them, Judge.

14      MR. ABRAMS:  I have 28, your Honor.

15      MR. NEAL:  Of that group, your Honor, at the present time

16  our intentions would be to take the deposition of Mr. Rice.

17      THE COURT:  Okay.  Mr. Rice.

18      MR. NEAL:  Mr. Inselbuch.

19      THE COURT:  Okay.  Let me get there.

20      MR. NEAL:  Elizabeth Magner, Mr. Trafelet.

21      THE COURT:  Okay.

22      MR. NEAL:  Mr. McMonagle and Mr. Crames.  And, your Honor,

23  obviously, depending on documents that are produced in response

24  to the subpoenas, we might seek additional depositions, but at

25  the present time, that's the group.

1          THE COURT:  So, as I understand it, you want six

2     depositions.

3          MR. NEAL:  Correct.

4          THE COURT:  Okay.  Can you tell me the nature of, in light

5     of the discussion of the Third Circuit in their Opinion and

6     remand to this Court for the conduct of discovery, can you tell

7     me the nature of the document production you seek from all of

8     these people?

9          MR. NEAL:  Yes.  It's fairly focused.  I don't know what

10    the volume will be but it essentially goes to communications that

11    these people have had with any of the Court's advisers or

12    communications that these people have had with the Court itself.

13    Those are the two categories that we're seeking.

14         THE COURT:  And I take it you're prepared to give

15    reciprocal discovery on that as to your contact with the Court in

16    an ex parte conference.  Is that correct?

17         MR. NEAL:  Absolutely.

18         THE COURT:  Okay.  Fine.  Anybody else?  Yes, sir.  Step

19    up to the plate.

20         MR. MANCINO:  I will, your Honor.  Richard Mancino.

21         THE COURT:  Mr. Mancino, you don't seem to have a pad.

22         MR. MANCINO:  My list is very short, as was my assignment,

23    and we caused a subpoena to be served on Kirkland & Ellis and Mr.

24    Bernick.

25         THE COURT:  Now, do you want documents or do you want his

1   deposition?

2        MR. MANCINO:  Both, your Honor, and that exhausts my list

3   thus far.

4        THE COURT:  Okay.  I takes it that's everybody on the

5   petitioners' side.  Mr. Monk, you're up.

6        MR. MONK:  Good morning again, your Honor.  Your Honor, we

7   have yesterday served requests for production of documents.

8        THE COURT:  Let's see if we can break it down just like

9   Mr. Orseck did.  Are yours production of documents and deposition

10  subpoenas or are we just going to do production of documents and

11  then we'll get to subponeas.

12       MR. MONK:  We're going to do production of documents

13  first, and we addressed those to the parties in the case, and

14  that when I say the case, I'm only acting in the Owens Corning

15  case.

16       THE COURT:  Okay.  Tell me who you want.

17       MR. MONK:  So, we directed requests for production of

18  documents to Kensington and Springfield.

19       THE COURT:  Hold on.  Kensington, Springfield.

20       MR. MONK:  Credit Suisse First Boston.

21       THE COURT:  CSFB.

22       MR. MONK:  And they're the only parties that we sent

23  requests for production of documents to.

24       THE COURT:  Okay.  Now, when you say Kensington and

25  Springfield, does that include Mr. Brodsky maybe has documents

1    outside?

2         MR. MONK:   Your Honor, Kensington and Springfield are

3    parties by having filed claims and filed the petition.

4         THE COURT:   I understand that.

5         MR. MONK:   We also sent subpoenas duces tecum because we

6    couldn't serve document requests, and we sent subpoenas duces

7    tecum to Kensington International Limited -- excuse me -- I'm

8    misreading.   We sent them to J.P. Morgan Chase.

9         THE COURT:   J.P. Morgan Chase?

10        MR. MONK:   Mr. McDonough is the co-chair of the Official

11   Committee in our case.

12        THE COURT:   I know who that is.

13        MR. MONK:   Bear Stearns, former member of the bank group

14   in our case, and then three of Mr. Brodsky's entities, your

15   Honor.   Elliott International, Elliott Associates and Elliott

16   Management.

17        We sent a subpoena duces tecum to the Official Committee

18   in our case.

19        THE COURT:   In care of who?

20        MR. MONK:   Mr. Case.

21        THE COURT:   Davis Polk?

22        MR. MONK:   Davis Polk, yes, your Honor.   And to Kramer

23   Levin, to Davis Polk, and to Davis Polk itself.

24        THE COURT:   Okay.

25        MR. MONK:   We've drafted some interrogatories, your Honor,

1    on what we think are fairly straightforward matters.  We have not

2    yet served those.  We thought we would await your advices today

3    before we served interrogatories.  They're addressed to things

4    such as all these -- all this is addressed to the knowledge

5    point, when people had knowledge of the appointments and the --

6          THE COURT:  And the timeliness argument that you made

7    before the Circuit.

8          MR. MONK:  Correct, your Honor.

9          THE COURT:  Okay.  Now, these interrogatories, are they

10   addressed to the people that you sent subpoenas duces tecum to

11   or --

12         MR. MONK:  They would be addressed to the parties

13   because --

14         THE COURT:  Okay.  So, that's Kensington, Springfield and

15   CSFB.

16         MR. MONK:  Correct, your Honor.  And they relate to sort

17   of very simple specific matters like do you have a subscription

18   to the Meeley's Asbestos Reporter and did you receive copies.

19         THE COURT:  Or the Daily Deal or whatever.

20         MR. MONK:  Correct.

21         THE COURT:  I understand.  How about depositions?

22         MR. MONK:  Your Honor, we would -- I'm sorry.  We would

23   expect to take depositions of Mr. Brodsky, Mr. Eckstein,

24   depending upon what we learn from the document production, the

25   Official Committee.  We may even take Mr. Case's deposition.

1       There are two persons whose names appear in the Davis Polk

2   time records who were involved in gathering data in connection

3   with the G-1 case that we would want to depose.  We believe

4   they're paralegals in the Davis Polk firm, and then we would want

5   to take the depositions of the persons at the Kramer Levin firm

6   who were involved in billing time to the G-1 case, where they had

7   entered their appearance, and that would include both the -- Mr.

8   Eckstein's affidavit suggests that someone who was not a lawyer

9   billed time to the G-1 case at the time of the appointment.  We

10  won't know that name until we've seen those time records.

11      THE COURT:  All right.  Who speaks for --

12      MR. MONK:  I'm sorry.  I've been reminded of two other

13  people, your Honor.  Mr. Kofol, Don Kofol, K-o-f-o-l, was CSFB's

14  principal in our Owens Corning case from the beginning of the

15  case.  He's now left CSFB.  We would want to take his deposition

16  for his role in connection with the Official Committee in our

17  case.

18      THE COURT:  Where is he?

19      MR. MONK:  We don't know.  We're pretty sure we can locate

20  him, so, and we've asked Kramer Levin whether they will make him

21  available through CSFB.  It may be that there are depositions,

22  when we look at the documents, such as Bear Stearns or J. P.

23  Morgan or Bank of New York, that we, by looking at the records,

24  may discover other people who have knowledge, but that's the

25  first cut of this.

1    THE COURT:  Okay.

2    MR. INSELBUCH:  If I may, your Honor.

3    THE COURT:  Mr. Crames, we're working our way around.  Mr.

4    Crames, any depositions or document production discovery?

5    MR. CRAMES:  I think we can coordinate with the debtors,

6    Owens Corning, and with what Mr. Inselbuch is going to say.

7    THE COURT:  All right.  Fine.  Mr. Inselbuch, I'll hear

8    from you, sir.

9    MR. INSELBUCH:  In the Owens Corning case, your Honor, we

10   will coordinate with Mr. Monk and we will subscribe to the same

11   list and we will coordinate our efforts so that there's no

12   duplication.

13   It was unclear to us when your Honor entered his

14   scheduling order whether or not the USG case, the USG recusal

15   motion was before the Court, because the two captions your Honor

16   put on it was Owens Corning and W.R. Grace.

17   If, indeed, we are going to deal with the USG case as

18   well, we have not yet formulated a complete discovery list but we

19   will certainly want to have document discovery of Mr. Neal and

20   his firm, depositions probably of Mr. Neal and probably of Mr.

21   Devereaux, as well as document discovery and depositions from the

22   Stroock firm that represents the Creditors Committee.

23   THE COURT:  Well, my understanding is that there is a

24   petition for my recusal filed by USG, not only the debtors but

25   the Creditors Committee, and that they obtained amici status from

1   the Circuit Court of Appeals on the emergent mandamus.  To me

2   that means they're a movant in the case and that whatever this

3   Court is going to do, it's going to consider USG.

4        MR. INSELBUCH:  Very well.  Then that would be our

5   preliminary discovery with respect to USG as well.

6        THE COURT:  So, it's Mr. Neal, Mr. Devereaux and who from

7   Stroock?

8        MR. INSELBUCH:  Probably Mr. Kruger.

9        THE COURT:  Anyone else?

10       MR. INSELBUCH:  Not that I know of today, your Honor.  We

11   would have to see what the discovery the documents produced.

12       THE COURT:  Okay.  Mr. Bernick.

13       MR. BERNICK:  Yes, your Honor.  I know your Honor probably

14   doesn't want to hear now concerns about what we've just heard but

15   it's difficult to avoid it because right now I've just heard a

16   list of 40, 45, it's hard to keep track of, different kinds of

17   subpoenas, different kinds of depositions.  I don't have a clue

18   about what the content of those subpoenas is.  I don't have a

19   clue about what they want to accomplish in depositions.  I don't

20   know that they relate to the Grace case, to the USG case, to the

21   Owens Corning case, to all cases, all five cases, to other cases

22   that your Honor had.  I just don't have any idea.

23       To formulate a discovery plan to respond to whatever might

24   emerge in the discovery process and whatever issues might be

25   confronted at this point in time, I frankly think, your Honor, is

1   impossible.  I had come here today prepared to seek no discovery.

2   I'm interested in finding out is there, in fact, a conflict that

3   these advisers are involved with.  That's the root question, is

4   there a conflict.  I haven't heard a conflict in the Grace case.

5   I haven't heard an articulation in the Grace case of what the

6   purpose of this discovery actually is, so, I don't have a bench

7   point of relevance here apart from the papers that were filed

8   before the Court of Appeals.

9        At this point in time I would think that I probably should

10  tell the Court that we would seek discovery of the people who

11  have filed for recusal in the Grace case and I suspect that Mr.

12  Mancino will end up being the person most knowledgeable about the

13  underlying facts, so, I will say today we would like to take Mr.

14  Mancino's deposition but, frankly, that's about all I can say.

15       THE COURT:  Mr. Mancino argued but the petition for D.K.,

16  et al., was by Miss Wills' firm, Harrison, who drafted the

17  petition.

18       MR. BERNICK:  Yes, but I'm confident that Mr. Mancino,

19  based upon discussions -- Mr. Mancino made a habit of calling me

20  and asking for debriefing on what was going on in the Grace case

21  on an ongoing basis and we, of course, accommodated those

22  requests, and I suspect Mr. Mancino probably knows maybe a little

23  bit more than his client even knows and, therefore, I identify

24  him.

25       If he can produce the same information through his client,

1    I recognize the rule that says you don't take discovery of

2    lawyers, which rule seems to be completely passed by the wayside

3    with all the requests we heard this morning, so, if Mr. Mancino's

4    client knows all he knows, then that's fine, we'll depose his

5    client.

6         THE COURT:  Well, you know, I go back to page 26 of the

7    Circuit Court Opinion where it says, "Among other things,

8    discovery in this case may shed light on such matters as, one,

9    the full extent of the consultants' activities in the five

10   asbestos cases; two, Messrs. Gross and Hamlin's activities in G-1

11   Holdings; three, the timeliness of the petitions for Mandamus,

12   and; four, the extent to which recusal, if warranted in one of

13   the bankruptcies, must be held to extend to the other

14   bankruptcies", and it seems kind of narrow and, yet, from what

15   I've heard this morning, this is going to be a broad exercise of

16   discovery powers.

17        MR. BERNICK:  I'd like to ask the Court that, I know that

18   you have a process here and I know from much experience before

19   your Honor that you have a plan for how to proceed this morning

20   and I don't want to impose upon --

21        THE COURT:  I just about exhausted my plan up to here

22   because I hadn't heard from anybody, so, this all comes to me at

23   the first instant now and that's why I indicated before we set

24   time periods, I would probably take a ten- or 15-minute recess to

25   give people an opportunity to talk and see if all of this is

1   really necessary as outlined to the Court.

2        I certainly understand advocacy, Mr. Bernick, but

3   sometimes what you wish for you really don't want and, so, I'm

4   going to give people an opportunity to sit down and, if I can be

5   biblical, let them come and reason together.

6        MR. BERNICK:  I would appreciate that at some point before

7   your Honor pronounces where we're going from here on forward, I

8   know that I would like to have opportunity to address the Court

9   with respect to what's just been said and its implications for my

10  client and what's happening to my client's rights in this process

11  and I am relatively comfortable from the kind of rumble over here

12  on this side of the courtroom that there are probably others who

13  would also like to address the Court with respect to what's been

14  proposed on behalf of their clients, but I'll abide by whatever

15  the Court's schedule and desire is this morning and be happy to

16  research that later.

17       THE COURT:  Would you be happy to do that now and give

18  everybody an opportunity who wants -- yes, sir.  You want to

19  address the Court?

20       MR. WAXMAN:  Yes, your Honor, when Mr. Bernick is done.

21       THE COURT:  Well, are you on discovery, Mr. Waxman?

22       MR. WAXMAN:  Your Honor, again, Jeff Waxman on behalf of

23  the Armstrong --

24       THE COURT:  Yes, I know who you are.

25       MR. WAXMAN:  Thank you, your Honor.  Your Honor, the

1    Armstrong Committee has not filed a motion for recusal.  However,

2    we would like to participate in the discovery process.

3         THE COURT:  What does that mean?

4         MR. WAXMAN:  We would like to --

5         THE COURT:  You want to sit there?

6         MR. WAXMAN:  Yes, sir.  We'd like to be served with all

7    documents, the request for documents and the production thereof.

8    We'd also like to sit in on all depositions.

9         THE COURT:  Well, what if we five track the depositions

10   and there are five going on at one time?  Are you going to pick

11   and choose?

12        MR. WAXMAN:  I don't know how we'll handle that at this

13   point, your Honor.

14        THE COURT:  Neither do I.  I'm just trying to deal with

15   your request in terms of reasonableness.

16        MR. WAXMAN:  Well, your Honor, the Armstrong Committee

17   filed papers before the Third Circuit just seeking to have all

18   five cases similarly decided, but we've not yet filed any motion

19   for recusal before the Court.  Rather, we'd like to wait and hear

20   the facts before we determine.  That way we don't --

21        THE COURT:  How long do you want to wait?  I'm under a

22   mandate that I must rule by January 31st.  You know, with all

23   this discovery, the Court is going to need a period of time to

24   absorb everything that is contemplated and then to resolve its

25   own recusal.

1    MR. WAXMAN:  I understand that, your Honor, and I don't

2  know the answer to your question, quite honestly.  However, I

3  believe that it would be imprudent for my client to file a motion

4  at this point without knowing the facts, the underlying facts.

5    THE COURT:  Well, your client, if it at some future date

6  were to file a motion, it may be considered untimely.

7    MR. WAXMAN:  Yes, your Honor, we understand that.

8    THE COURT:  You run that risk.

9    MR. WAXMAN:  Yes, your Honor, but at this point all we'd

10  like to do is participate and reserve and preserve all of our

11  rights to participate and to receive all the documents and to sit

12  through the depositions and to be able to cull the facts

13  necessary to make a determination.

14    THE COURT:  Hasn't your -- not your particular client but

15  hasn't Judge Newsome held a hearing in Armstrong and where he

16  confirmed the plan as submitted by the Armstrong debtor?

17    MR. WAXMAN:  Yes, he did, your Honor.

18    THE COURT:  And I understand that the creditors took

19  exception, 88 percent, whatever that number was, and I thought he

20  crammed you down.

21    MR. WAXMAN:  I believe that's correct, your Honor.  I was

22  not in attendance at this hearing.

23    THE COURT:  So, now that there's been a confirmation of

24  that plan, I'm hard-pressed to know what interest you really have

25  in these proceedings now.

1          MR. WAXMAN:  Well, your Honor, I don't believe this case

2     has been fully adjudicated.  I believe there's still a matter

3     before your Honor and at this point, again, my client is --

4          THE COURT:  I have stayed my participation in all matters

5     until my recusal is or the District Court's, not me, the District

6     Court's recusal is resolved.

7          Anybody want to be heard as to Mr. Waxman's request?

8          MR. ORSECK:  Not as to Mr. Waxman's request but before Mr.

9     Bernick addressed the Court, for the sake of completeness, there

10    are two additional depositions that I did not list among the list

11    that I presented, and those are --

12         THE COURT:  Who are they?

13         MR. ORSECK:  -- Perry Weitz and John Cooney, who are

14    members of the Asbestos Committee in the Owens case.

15         THE COURT:  Okay.

16         MR. ORSECK:  And that's it.

17         MR. INSELBUCH:  They are listed by Mr. Neal.

18         THE COURT:  They were listed.  You didn't miss them.

19         MR. NEAL:  I did not identify them as people we intended

20    depose.

21         THE COURT:  All right.  If you wait one second.  Mr. Neal

22    indicated that he wanted to take Rice, Crames, McMonagle,

23    Trafelet, Elizabeth Magner, and Inselbuch, and I don't think

24    Weitz was mentioned before as to his deposition.  Okay.  Weitz

25    and Cooney.  Okay.

1    MS. DANDENEAU: Debra Dandeneau for the Armstrong debtor.

2    THE COURT:  Would you spell your last name.

3    MS. DANDENEAU:  Yes.  D-a-n-d-e-n-e-a-u.

4    THE COURT:  And you represent the Armstrong debtor?

5    MS. DANDENEAU:  Yes, your Honor, and I just wanted to

6    clarify for the record the status of the Armstrong case.  It is

7    true that Judge Newsome held a confirmation hearing and ruled

8    that the creditors class six should be crammed down.

9        What the status of our case, however, is that in light of

10   the need for 524(g) injunction, Judge Newsome has issued proposed

11   findings of fact and conclusions of law and a proposed

12   confirmation order which is awaiting approval by a district court

13   judge.

14   THE COURT:  I understand that but I've not received them.

15   MS. DANDENEAU:  Your Honor, I believe that he signed the

16   proposed findings of fact and conclusions of law last Friday, as

17   well as the confirmation order.

18   THE COURT:  Well, maybe you'd want to send them to us

19   because we have not received them.

20   MS. DANDENEAU:  We will forward those to your Honor.

21   THE COURT:  Okay.  Fine.

22   MR. BERNICK:  I have nothing further with respect to --

23   THE COURT:  My only concern, Mr. Waxman, is trees.  How

24   many trees are we going to slay to keep you advised in a case

25   where the Bankruptcy Court has already made findings of fact and

signed a confirmation order subject to the 524(g) being submitted

to a district court judge for approval?

MR. WAXMAN:  Your Honor, I understand that concern but at

this point the committee does not anticipate taking any

additional discovery.  Rather, we'd just like to keep apprised

and learn what other discovery is being had in the other cases.

As I'm sure your Honor recognizes, there are common issues

of fact and of law at issue.

THE COURT:  Do you have a working relationship with any of

these attorneys in the room here?  Can Miss Dandeneau's firm keep

you apprised rather than, I mean, everybody send things all over

the place.  You know, time is very short.

MR. WAXMAN:  I understand that, your Honor.  We would just

seek to have, you know, a place at the table, your Honor, and be

able to participate as a party.  That's all.

MS. DANDENEAU:  Your Honor, we certainly, for no other

reason than to minimize the expense --

THE COURT:  I'm having trouble hearing you back there.

I'm sorry.  I'm an aged American.

MS. DANDENEAU:  Your Honor, for no other reason than to

minimize the expense to Armstrong's estate, we'd be happy to

coordinate with -- I'm sure Mr. Inselbuch will be happy to

provide a daily copy to the counsel for the Unsecured Creditors

Committee.  I don't think it's necessary for them to sit in on

every single deposition.

1    THE COURT:  All right.  I understand.  I've going to deny

2    your request because I think people will cooperate with you on a

3    basis without an order.

4    MR. WAXMAN:  Excuse me.  If I can just have a

5    clarification, your Honor.

6    THE COURT:  Yes.  I'm denying your request.

7    MR. WAXMAN:  I understand that.  Can we at least have

8    permission to attend the depositions if we see necessary, your

9    Honor?

10   THE COURT:  Well, what if it's in a room that holds eight

11   and there's seven people that are going to participate, including

12   the reporter and the witness, and there's no room for you?

13   MR. WAXMAN:  I don't know that, your Honor.

14   THE COURT:  Make application when the depositions are

15   scheduled.

16   MR. WAXMAN:  Thank you, your Honor.

17   MR. BERNICK:  Your Honor, I'd like to raise three issues

18   and then use some information I have concerning discovery that's

19   been propounded on Grace illustrative of those three issues.

20   It seems to me at this point, the first of the issues

21   virtually dominates our proceedings here today, which is we're

22   sitting here with all kinds of discovery that's been propounded.

23   It sounds like it's very, very broad.  Indeed, it sounds like

24   it's almost without limitation and many people sitting here in

25   this courtroom have clients whose interests may well be

1    implicated by those discovery requests and they don't have the

2    discovery requests and, therefore, they are not able to really

3    articulate exactly what their position might be.

4        I would even raise the prospects based upon the discovery

5    that I'm aware of that there are other parties that are not even

6    present before the Court here today whose interests may be

7    implicated by the breadth of the discovery that is sought.  It is

8    just truly a remarkable set of requests and, yet, we don't even

9    have the baseline handled, which is people with notice

10   represented by counsel here in court adequately informed and

11   prepared to address the issues.

12       All of the different depositions that were sought or

13   identified in connection with the, I guess with Mr. Neal's list

14   in particular, I have no idea whether they relate to Grace or

15   not.  If they don't relate to Grace, I don't really care about

16   them particularly.  If they relate to Grace, I care about them an

17   awful lot.  So, there's the problem of our process here today in

18   light of the fact that the information hasn't been shared with

19   counsel and there may be other parties whose interests are

20   implicated that haven't received notice even of the fact that

21   this robust process is now under way.

22       Number two is there have been no articulation of any kind

23   of theory of relevance.  Relevance is the baseline of figuring

24   out what kind of discovery is necessary.  It does seem to me that

25   in light of the urgency of these proceedings, and it's

1    unmistakable coming from the Court of Appeals that this matter is

2    a matter of tremendous urgency, we ought to be focusing not only

3    on discovery which is clearly relevant but that is highly

4    relevant, highly material to the issues that have been identified

5    by the Court of Appeals.

6         THE COURT:  How does the Court determine that?

7         MR. BERNICK:  How does the Court determine that?

8         THE COURT:  How does this District Court and, by the way,

9    it's not going to be my decision.  It's going to be a district

10    court judge, but let me put myself in the place of the unnamed

11    district court judge at this time.  How is that district court

12    judge going to determine what's relevant?

13         MR. BERNICK:  I can think of only really two ways, perhaps

14    three, which relevance can be determined.  Number one is from the

15    list of matters that your Honor just read from from the Court of

16    Appeals' decision.  It seems to me that's the easiest place to

17    begin, and right now I don't see, maybe there is but I don't see

18    an ability to articulate how all this discovery really pertains

19    to those issues.  But that's a good beginning point because,

20    after all, the Court of Appeals, and we all were present for the

21    Court of Appeals argument, the Court of Appeals --

22         THE COURT:  Not all of us, Mr. Bernick.  Not all of us.

23         MR. BERNICK:  Fair enough, your Honor.  Fair enough.  The

24    Court of Appeals was transparently focused on the question of how

25    long it would take to get this matter heard and resolved by the

1    Court.  Not only was a schedule set but there were pointed

2    questions that were posed of counsel, Mr. Englert.  Mr. Englert

3    is present here.  He was asked specifically what kind of

4    discovery do you really need.  Indeed, he was asked that twice.

5         Other counsel were also asked exactly the same question

6    and the articulation that Mr. Englert gave at that time when

7    pressed, he said three things, he said we want Gross, we want

8    Hamlin, and then in a clear lapse of judgment he also said we

9    want Grace.  Those are the only three things he said.

10        THE COURT:  Let me quote from page 65, this is Mr.

11   Englert.  "We had proposed to take discovery" -- starting at line

12   12 -- "We had proposed to take discovery of Mr. Gross, of Mr.

13   Hamlin and of W.R. Grace, of Mr. Gross and of Mr. Hamlin not so

14   much about the advice that they gave Judge Wolin as about whether

15   Judge Wolin knew of the conflict."

16        Then he goes on to say, "As one of my adversaries said in

17   response to a question from Judge Smith today, 'it is now

18   undisputed that Judge Wolin knew the conflict', so, that's pretty

19   much by the boards from our standpoint."

20        So, the Court then says, "All right.  So that's the extent

21   of the discovery that you are seeking?"

22        "MR. ENGLERT:  Well, we also asked for discovery from W.R.

23   Grace because we wanted to know what role Judge Wolin played in

24   nominating Hamlin or Gross to be futures representatives.  Mr.

25   Inselbuch's time records answer that question to some extent."

1     So, it seems that when Mr. Englert, who was, I would say,

2  the main participant for the petitioners as I read the argument

3  before the Court of Appeals, and, Mr. Neal, I don't want to

4  diminish your appearance before the Court of Appeals as an amici

5  but Mr. Englert seemed to be carrying the rowing oar in that,

6  said there wasn't very much discovery, and I think that if the

7  Circuit Court of Appeals were sitting here this morning and they

8  had an opportunity to hear this, I'm sure they would be most

9  amazed.

10     MR. BERNICK:  Well, if your Honor is indicating -- I could

11  go on at length because I think that this list is over-reaching.

12  The requests that have been made of my client and of my firm, I

13  know --

14     THE COURT:  Let's assume for purposes of this argument

15  you're right.  Let's assume it's right.  We have a very short

16  period of time.  How do we deal with it?  Mr. Neal serves his

17  subpoena for production, and being good advocates on the other

18  side, you're going to move to quash or whatever.  Okay?

19     MR. BERNICK:  There are privilege issues.  There are

20  settlement privilege issues coming out of the walls.

21     THE COURT:  Now you've got to put it together and then

22  you've got to take it before a district judge.

23     MR. BERNICK:  Right.  What I was going to propose were

24  some fairly simple steps.  Number one, I don't know how you deal

25  with the problem, the fundamental problem that these requests may