UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE


IN RE:  OWENS CORNING,                    CHAPTER 11
et al.,                                   Case Nos. 00-3837 through
                                                    00-3854
        Debtors.
-------------------------
IN RE:  W.R. GRACE & CO.,                 CHAPTER 11
et al.,                                   Case Nos. 01-1139 through
                                                    01-1200
        Debtors.
-------------------------
IN RE:  USG CORPORATION,                  CHAPTER 11
a Delaware Corporation,                   Case Nos. 01-2094 through
et al.,                                             01-2104

        Debtors.
-------------------------
                                   Telephone Conference Call
                                   December 24, 2003
                                   Newark, New Jersey


B E F O R E:   ALFRED M. WOLIN, USDJ




Pursuant to Section 753 Title 28 United States Code, the
following transcript is certified to be an accurate record as
taken stenographically in the above-entitled proceedings.

_____
JACQUELINE KASHMER
Official Court Reporter




JACQUELINE KASHMER, C.S.R., C.R.R.
OFFICIAL COURT REPORTER
P. O. Box 12
Pittstown, NJ 08867
(609) 656-2595

A P P E A R A N C E S:


        ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER, LLP
        1801 K Street, N.W. - Suite 411
        Washington, D.C. 20006
        BY:  GARY A. ORSECK, ESQ.,
        For Kensington and Springfield


        COOLEY GODWARD, LLP
        Five Palo Alto Square
        3000 El Camino Real
        Palo Alto, CA 94306-2155
        BY:  STEPHEN C. NEAL, ESQ.,
        For USG


        WILLKIE, FARR & GALLAGHER
        787 Seventh Avenue
        New York, NY 10019
        BY:  RICHARD MANCINO, ESQ.,
        For D.K. Acquisition Partners, Fernwood Associates, and
        Deutsche Bank Trust Company America


        KRAMER, LEVIN, NAFTALIS & FRANKEL, LLP
        919 Third Avenue
        New York, NY 10022
        BY:  JEFFREY S. TRACHTMAN, ESQ.,
        For Credit Suisse First Boston


        SAUL EWING, LLlP
        100 South Charles Street
        Baltimore, MD 21201-2773
        BY:  CHARLES O. MONK, II, ESQ.,
        For Owens Corning Debtors

A P P E A R A N C E S:


     KAYE SCHOLER, LLP
     425 Park Avenue
     New York, NY 10022-3598
     BY:  MICHAEL J. CRAMES, ESQ.,
          JANE W. PARVER, ESQ.,
     For James McMonagle, Owens Corning Futures Representative,
     and Dean Trafelet, USG and Armstrong Futures
     Representative


     CAPLIN & DRYSDALE
     399 Park Avenue
     New York, NY 10022-4614
     BY:  ELIHU INSELBUCH, ESQ.,
     For Asbestos Claimants Committee in Owens Corning, USG,
     W.R. Grace, and Armstrong


     KIRKLAND & ELLIS, LLP
     200 East Randolph Drive
     Chicago, IL 60601
     BY:  DAVID M. BERNICK, P.C.,
     For W.R. Grace

1        MR. WOHLFORTH:  Ladies and gentlemen, this is Evans

2    Wohlforth, Judge Wolin's law clerk.  I'm going to put you on the

3    speaker and here in chambers is Judge Wolin, Gail Hansen, the

4    court deputy clerk, the court reporter and my two colleagues.

5    Can you hear us.  Can you hear us?  Very well.

6        THE COURT:  This is Judge Wolin.  All right.  Good

7    morning.  The first thing I'd like to do is take appearances of

8    all persons that are participating in this phone call as opposed

9    to persons who are just listening and then I will ask for them to

10    identify themselves in what I will term a roll call, but I want

11    to take appearances for participants first.

12        MR. MONK:  Your Honor, this is Charles Monk on behalf of

13    the Owens Corning debtors.

14        THE COURT:  All right.

15        MR. INSELBUCH:  Elihu Inselbuch on behalf of the Asbestos

16    Creditors Committees in Owens Corning, United States Gypsum, W.

17    R. Grace and Armstrong.

18        MR. CRAMES:  Michael Crames, your Honor, and Jane Parver

19    of Kaye Scholer on behalf of James McMonagle, the Futures rep in

20    Owens Corning, Dean Trafelet, the Futures rep in USG and

21    Armstrong.

22        THE COURT:  Next.

23        MR. ORSECK:  Gary Orseck, your Honor, on behalf of movants

24    Kensington and Springfield.

25        THE COURT:  All right.  Next please.

1          MR. NEAL:  Stephen Neal and Scott Devereaux on behalf of

2     USG.

3          THE COURT:  All right.  Thank you.

4          MR. MANCINO:  Judge, good morning, your Honor.  It's

5     Richard Mancino, Willkie, Farr & Gallagher, on behalf of D.K.

6     Acquisition Partners and the other two movants in the W. R. Grace

7     matter, and I'm joined by Chris Sangenos.

8          THE COURT:  All right.  Good morning, Mr. Mancino.

9          MR. TRACHTMAN:  This is Jeffrey Trachtman from Kramer

10    Levin on behalf of CSFB as agent for the bank group.  Good

11    morning, your Honor.

12         THE COURT:  Good morning, Mr. Trachtman.

13         MR. PARKER:  David Parker from Kleinberg, Kaplan, Wolff &

14    Cohen, also here on behalf of Kensington and Springfield.

15         THE COURT:  Okay.  Thank you. Next.

16         MR. GIBBONS:  John Gibbons.

17         THE COURT:  I'm sorry?

18         MR. GIBBONS:  John Gibbons, Gibbons, Del Deo, also on

19    behalf of Kensington and Springfield.

20         THE COURT:  Mr. Gibbons, are you a participant or are you

21    just a roll call?

22         MR. GIBBONS:  Roll call.

23         THE COURT:  Well, I'm not to roll call yet, so, I'm

24    working on participants.

25         MR. GIBBONS:  All right.

1          THE COURT:  Thank you.  Any other participants?  And by

2     the way, Mr. Parker, I don't know whether you're a participant or

3     a roll call.

4          MR. PARKER:  Your Honor, I'm not a hundred percent sure

5     myself.  I'm hoping to be deferring to Mr. Orseck.

6          MR. BERNICK:  This is David Bernick and I will be

7     participating on behalf of W.R. Grace.

8          THE COURT:  All right.  Next please, participants only.

9     Have we completed all the participants?  Anybody who's a

10    participant who has not recorded their appearance?  I guess none.

11    Good.  We'll go to roll call.

12         MR. PERNICK:  Your Honor, Norm Pernick on behalf of the

13    debtor, Owens Corning.

14         THE COURT:  Okay.

15         MS. KATZ:  Karen Katz from Davis, Polk & Wardwell on

16    behalf of the creditors.

17         THE COURT:  Would you please spell your name.

18         MS. KATZ:  K-a-t-z.

19         THE COURT:  K-a-t-z?

20         MR. HARRISS:  And Gordon Harriss from Davis Polk.

21         MR. CASE:  And Stephen Case from Davis Polk.

22         MR. JAMES:  James McClammy, M-c-C-l-a-m-m-y, Davis Polk.

23         MR. DANZEISEN:  And Allyn Danzeisen on behalf of the

24    Asbestos Property Damage Claims Committee in USG and W.R. Grace.

25         THE COURT:  Would you please spell your name.

1          MR. DANZEISEN:  A-l-l-y-n, and my last name is

2      D-a-n-z-e-i-s-e-n.

3          THE COURT:  Okay.  Thank you.

4          MR. KRUGER:  Your Honor, Lewis Kruger and Ken Pasquale

5      from Stroock for the Official Committee of Unsecured Creditors in

6      both the Grace and USG cases.

7          THE COURT:  All right.  Thank you.

8          MR. FINCH:  Your Honor, David Finch from Caplin & Drysdale

9      on behalf of the Asbestos Personal Injury Claimants Committee in

10     USG, Owens Corning, Armstrong and Grace.

11         THE COURT:  All right.  Thank you.

12         MR. TOBIN:  Peter Tobin from Caplin & Drysdale is also

13     sitting in.

14         THE COURT:  Tobin?

15         MR. TOBIN:  Tobin, T-o-b-i-n.

16         MR. KATCHEN:  William Katchen, Duane Morris, USG Official

17     Committee of Unsecured Creditors.

18         THE COURT:  Next.

19         MR. BERRINGER:  John Berringer from Anderson Kill on

20     behalf of the Designated Members of the Unsecured Creditors

21     Committee of Owens Corning.

22         THE COURT:  Okay.  Next.

23         MR. ENGLERT:  Good morning, your Honor.  Roy Englert on

24     behalf of Kensington and Springfield.

25         THE COURT:  Good morning, Mr. Englert.

1    MR. PARKER:  David Parker.  I have with me Mark Brodsky

2    and Nidad Manham from Kensington and Springfield.

3        THE COURT:  All right.  Thank you.

4        MR. MANCINO:  Your Honor, this is Rich Mancino again.  My

5    partner, Mark Abrams, may be coming, listening in on part of the

6    call.  He's not in the room right now.

7        THE COURT:  All right.  I'll list him as roll call.

8        MR. CRAMES:  Your Honor, Michael Crames.  My partner,

9    Aaron Stiefel, S-t-i-e-f-e-l, will also be listening.

10        THE COURT:  All right.  Thank you.

11        MR. ABRAMS:  Your Honor, Henry Abrams from Saul Ewing on

12    behalf of Owens Corning.

13        THE COURT:  All right.  Thank you.

14        MR. DOBSON:  Matthew Dobson, also from Saul Ewing on

15    behalf of Owens Corning.

16        THE COURT:  I'm sorry.  I didn't get the last name.

17        MR. DOBSON:  D-o-b-s-o-n, your Honor.

18        THE COURT:  All right.  Thank you.

19        MR. GOLDSTEIN:  Judge, this Bruce Goldstein on behalf of

20    David Gross.

21        THE COURT:  All right.  Thank you, Mr. Goldstein.

22        MR. LORELL:  And, Judge, Jeffrey Lorell, also on behalf of

23    David Gross.

24        THE COURT:  All right, Mr. Lorell.  Thank you.  Anybody

25    else?  I'm sorry.  Would you please repeat your name.

1          MR. DiFILIPPO:  Paul DiFilippo.

2          THE COURT:  Yes, Mr. DiFilippo.  And anybody else?  I'll

3     go back to Mr. Gibbons.

4          MR. GIBBONS:  Yes.

5          THE COURT:  Okay.  I'll list you now.

6          MR. GIBBONS:  Fine.

7          THE COURT:  Anybody else for the roll call?  Okay.  I now

8     want to move to what I'm going to term process and procedure for

9     this call.  Because of the fact that by my listing there are nine

10    participants, not everybody can speak at once, so, here's the

11    procedure I'd like to follow.  Whoever speaks shall speak as to

12    all of their objections that they raise in their entirety when

13    they are given their opportunity to speak.

14         The Court will provide each speaker a brief opportunity to

15    reply after all participants have had an opportunity to speak.

16    Now, I don't really care who goes first and the reason that I'm

17    giving a reply is that I anticipate that someone may say, well,

18    if I go first, you know, then everybody else has an opportunity

19    to feed off me; therefore, I'll give you the opportunity to

20    reply.

21         As to the request as of yesterday, the Court will make

22    available to parties for inspection, we're not going to produce

23    them but for inspection, the court's official minutes that were

24    filed for calendar year 2001, 2002, and 2003, and you'll have to

25    contact Gail Hansen, who is my deputy court clerk, who will make

1    those minutes available to you.  Does anybody have any question

2    about that?

3         MR. BERNICK:  Yes, I do, your Honor.

4         THE COURT:  Yes, Mr. Bernick.

5         MR. BERNICK:  Those minutes, do they relate -- which of

6    the cases do they relate to and do they relate to cases other

7    than the five cases?

8         THE COURT:  They only relate to the five cases that are

9    under consideration here.  Okay.  And after I have had the

10   opportunity to hear from everyone, I am prepared to rule today on

11   the discovery requests and, thereafter, the rulings will be

12   contained in a Court Order to be issued by the Court today.

13        I would ask that Saul Ewing take it upon themselves to

14   distribute the Case Management Order that will be issued by the

15   Court.  Can we do that, Mr. Monk?

16        MR. MONK:  Your Honor, we'll be happy to do that.

17        THE COURT:  All right.  I would like to start with the

18   movants' submission of requests for documents and then I will go

19   to the requests for submission of documents by Saul Ewing,

20   because that is the way that they were received by the Court.

21        Now, the pages that came through on the fax have numbers

22   beyond one, two, three and four, you know.  I think I received

23   from the movants' submissions 29 pages, some 29 pages, but as you

24   go through them, they don't work that way, so, I don't know if

25   you have them listed one through 29 or you have them one, two,

1    three, four in each category.  I will try to identify the pages

2    in both manners so that you can follow.  Everybody understand?

3           SPEAKERS:  Yes.

4           THE COURT:  Okay.  I want to go to the first page of the

5    movants' submission for request of documents.  Everybody ready?

6           SPEAKERS:  Yeah.

7           THE COURT:  Okay.  Going over to page two -- I'm sorry.

8    If there was a delay, it was that we delayed it and put you on

9    hold for a moment.  I want to go over to page three and I guess I

10    want to start with the bottom of page two, wherein I believe that

11    there is a concern about the deposition schedule that was

12    announced by the Court and contained in its Case Management

13    Order.

14           There was no rhyme or reason as to the dates that were

15    picked and the Court relied upon the statement of Mr. Orseck

16    wherein he indicated that the Court need not be concerned about

17    multiple tracks, that it could be covered, and we relied upon

18    that in ordering these depositions.

19           Now, at the time that we ordered these depositions on

20    particular dates, we had not spoken to any of the individuals to

21    be deposed.  For example, I do not know where Keefe, Dreier,

22    Hamlin and Gross are on January 5th, or McGovern.  I was

23    surprised to learn today that McGovern is out of the country and

24    would not have known that but for the submissions saying that

25    he'll be out of the country until January 9, but I am satisfied

1    that if we keep to a deposition schedule on the fifth and sixth,

2    and if McGovern is one of those people that would be deposed on

3    the fifth and the sixth, he will just have to return from

4    wherever he is out of the country.  In other words, there are no

5    sacred cows in the taking of these depositions.

6         Now, you've said that it's a lot to take Keefe, Dreier,

7    Hamlin and Gross on January 5th.  I'm willing to alter that.  I

8    put Hamlin and Gross down with Keefe and Dreier because I

9    anticipate that you're not going to spend a lot of time with

10   Keefe and Dreier in particular and far more time with Hamlin and

11   Gross.

12        Now, if I'm wrong in my assumption, then we'll reschedule

13   them.  You want to put Hamlin on one day and Gross on another

14   day, you want to move Brodsky up or Eckstein and Case with Keefe

15   and Dreier, that's fine by me.  I'm willing to adjust that

16   deposition schedule within reason.  But I did rely upon the

17   statement made that everybody has the manpower to handle this.

18   And the reason that I put depositions on the fifth and the sixth,

19   so that necessarily if we could avoid multi-tracking depositions,

20   that would be preferable.  If we can't, then we'll multi-track.

21        So, I guess, Mr. Orseck, I'm addressing you first on that

22   issue because you're the one that raised it.

23        MR. ORSECK:  Yes.  Thank you, your Honor.  I did say that

24   we will cover the depositions whenever scheduled.  Of course,

25   when I made that representation, it was not proposed by either

1    side that all of the depositions would be taken in a two-day

2    period, allowing probably no more than two hours for each one.

3    We thought that the depositions, and I think the other side did

4    as well, would take at least a half a day or more each.

5            Having said that, your Honor, I would like to be able to

6    reserve on the question, on this call of moving Mr. Gross or Mr.

7    Hamlin because, as you pointed out, your Honor, none of us knows

8    when either one or when anyone else who's been listed here is

9    available and, therefore, I think it probably makes more sense

10   for us to contact those individuals and find out when each one

11   can be deposed.

12           But I would repeat that without the need for any double

13   tracking or triple tracking, we could certainly spread these out

14   over a somewhat longer period which would allow all the parties

15   the safety valve of some additional time and will also build in

16   some time for the depositions to allow the Court to rule

17   contemporaneously on any objections that are raised, because

18   under the current schedule, as soon as that occurs, we are likely

19   to eat into substantial time that has been allotted for these

20   depositions.

21           So, I guess our response, your Honor, is that while, of

22   course, we will cover any depositions at any time, our lead

23   counsel is absolutely unavailable either of those days and in

24   order to accommodeate that schedule, while allowing for a bit

25   more time if necessary for each deposition, we would propose

1    setting forth some additional days for them and in either event,

2    your Honor, we will take it upon ourselves to contact the people

3    whose depositions we are seeking and we can, I suppose, agree

4    with the other side to move particular deponents from one day to

5    another if that works out to everyone's convenience.

6        MR. BERNICK:  Your Honor, this is David Bernick for Grace.

7    I would strenuously object to that.   It seems to me, number one,

8    that when it comes to finding out the schedules for the advisers,

9     that that ought to be done in a conference call that can be very

10   simply set up with the advisers where all counsel can participate

11   rather than having this thing take place through several filters,

12   and the simple question is their availability during the days on

13   the fifth and sixth and if they have an excuse for why they can't

14   be available, they could take that up with the Court.

15       This schedule is inconvenient for absolutely everybody but

16   all the inconvenience that's really of relevance here is the

17   convenience of the Court of Appeals.  Your Honor very carefully

18   set a schedule yesterday which contemplates the discovery gets

19   done within a certain period of time so that there can be a

20   hearing and the Court can rule, and what's now being requested of

21   you is that you basically extend the discovery schedule,

22   deposition schedule in particular, and that will clearly

23   jeopardize the overall flow that you established yesterday.

24       It seems to me that what the Court has proposed is

25   definitely reasonable, which is that everybody has got to show up

1    and the only question is whether you want -- whether folks want

2    to shift the order of witnesses either to accommodate their own

3    concerns or to accommodate the witness, but if this is an effort

4    to revisit the overall schedule, I think that that should be

5    rejected because we don't have time to revisit the overall

6    schedule.

7         With respect to the convenience of Mr. Robbins, Mr.

8    Robbins, to my knowledge, hasn't participated in anything to

9    date.  He didn't participate in the Court of Appeals argument, he

10   didn't participate in the hearing that took place yesterday.  I

11   don't here him chiming in on the phone today.  Maybe he's there,

12   but Mr. Robbins is one person and Mr. Englert has handled things,

13   Mr. Orseck has handled things, and there could be nothing more

14   explicit yesterday than the representation that they would do

15   whatever was necessary.  They can get counsel.  They can act.

16   They're big boys.  And it doesn't seem to me that we ought to be

17   accommodating Mr. Robbins' schedule.

18        MR. ORSECK:  Your Honor, this is Gary Orseck again.  If I

19   may respond for one moment.

20        THE COURT:  Mr. Orseck, let's see if any other participant

21   wants to respond.  Then I'll give you an opportunity to reply.

22        MR. ORSECK:  Thank you.

23        THE COURT:  Does any other participant want to be heard on

24   the issue that I raised?

25        MR. INSELBUCH:  I agree with what Mr. Bernick just said.

1       THE COURT:  All right.  Anybody else before Mr. Orseck?

2       MS. PARVER:  Your Honor, it's Jane Parver for the futures

3  rep.  We agree as well with what Mr. Bernick said.

4       THE COURT:  All right.  Anybody else before Mr. Orseck?

5  All right, Mr. Orseck, and before you respond, Mr. Orseck, I want

6  to add one thing, too.  If you look at the paragraph that

7  followed the designations of depositions, the Court listened to

8  you yesterday when you said, well, you know, how do we know what

9  may come out of the depositions, so, therefore, I left the

10  seventh for people to reflect and on the eighth to convene a

11  conference before the Court to listen to counsel in the event

12  they were to be able to point to something that arose out of the

13  depositions on the fifth and sixth in order to consider

14  additional depositions if necessary.

15       If we're to change the fifth and the sixth, then that date

16  on the eighth may no longer be available or further depositions,

17  if ordered, may be in a greater compressed time period.  So,

18  there was an overall time period for getting this accomplished

19  with it ultimately being accomplished by January 16, so the Court

20  could then reflect on all of the discovery, all the depositions,

21  and be able to render an opinion as directed by the Court of

22  Appeals.  Now I'll hear you, Mr. Orseck.

23       MR. ORSECK:  Yes.  Thank you, your Honor.  The two dates

24  that you've mentioned are January 8th, at which time the Court is

25  to consider whether additional depositions are required, and then

1    oral argument on January 16.

2         THE COURT:  That's correct.

3         MR. ORSECK:  I think without any need to threaten our

4    ability to meet and the Court's ability to meet the January 31st

5    deadline, an accommodation of moving these dates back by perhaps

6    two days each should not threaten the ability to get all of this

7    accomplished by the end of the month.

8         It is not the case that I am raising the convenience of a

9    particular individual.  It's Christmas and it's New Year's for

10   everyone and we all understand that.  What I am saying is that

11   Mr. Robbins, who was hired by the movant Kensington and

12   Springfield, as lead counsel and who is expected to defend Mr.

13   Brodsky's deposition, has an oral argument in the Court of

14   Appeals in Washington on the sixth.  It is literally impossible

15   for him to do both of those things at once.

16        THE COURT:  Well, maybe he should consider adjourning the

17   argument before the Court of Appeals just like I'm considering

18   adjourning some trials that I have in January so that I can

19   concentrate on this.

20        MR. ORSECK:  I have not raised with the Court of Appeals

21   or with Mr. Robbins, who happens to be out of the country at the

22   moment, whether that oral argument can be moved, but I certainly

23   tend to doubt it.  But my only point here is without threatening

24   the schedule and the intervals in between the times and the dates

25   that the Court had set, Mr. Robbins' schedule could be

1     accommodated, number one, and number two, these depositions could

2     certainly be spread out among -- over a greater period of time as

3     both the movants and the respondents have proposed, which would

4     allow for, number one, the discovery I think the Court of Appeals

5     envisioned the parties to be entitled to and, number two, to

6     allow the Court contemporaneously on objections.  That's my

7     response to Mr. Bernick.

8              THE COURT:  All right.  Anybody else wish to be heard?

9              MR. NEAL:  Your Honor, Stephen Neal.  I don't have

10    anything I want to say with respect to the scheduling of the

11    depositions.  I am concerned that if the Court's intention is

12    that these, in fact, be restricted to effectively a couple of

13    hours per deponent, that that may turn out to be insufficient

14    time, and I know your Honor suggested that it may be that we use

15    less than two hours for a couple.

16             THE COURT:  Mr. Neal, you never heard me restrict anybody

17    to any period of deposition.  We'll go by the federal rule.  It's

18    a maximum of seven hours for any deponent.  All I said was I

19    doubt that you'd want to depose some people beyond two hours.

20    Gross and Hamlin you may want to depose for seven hours.  I don't

21    know.

22             So, Mr. Neal, your objection, if it's an objection, is not

23    well-taken.

24             MR. NEAL:  It's not an objection, your Honor.  That

25    clarification is very helpful.

1      THE COURT:  Okay.  I always want to help.  I am very

2   disinclined to move the schedule that the Court set out.  It's

3   part of an overall scheme that lends itself to all the other

4   matters that the Court designed for the disposition of this

5   matter.

6      Secondly, I think it's in keeping with the spirit and the

7   letter of the Court of Appeals and I'm not so sure that all the

8   document production that everybody seeks here, everybody all

9   inclusive, is within the letter and spirit of the Circuit Court

10   of Appeals, but we'll cope with that later.

11      I have no objection to revisiting between the parties on a

12   voluntary basis who shall be deposed on January 5th or January

13   6th.  This Court will not limit the discovery on those days to

14   the court day of eight hours.  If you want to say here till 10:00

15   at night and depose someone, that's fine with the Court.  The

16   Court will be here.

17      Also, it is not my purpose to argue with some Court of

18   Appeals somewhere as to someone's argument.  That's between that

19   individual and that Court of Appeals.  I don't know when --

20   obviously, this person who you mentioned before who has such an

21   important argument with the Court of Appeals seems to be out of

22   the country, when potentially they could be preparing for their

23   argument before the Court of Appeals.

24      My schedule as to January 5th and January 6th for the

25   taking of depositions shall remain.  If parties want to

1    interchange who will go on the fifth and who will go on the

2    sixth, I'm certainly amenable to that and I'm going to give you

3    until Monday, the 29th, to advise the Court at 10:00 whether the

4    schedule is changed on a voluntary basis.  If not, then the

5    schedule shall remain.

6         MR. ORSECK:  Your Honor, this is Gary Orseck again.  I'm

7    afraid that we, on our own, are unable at this point to contact

8    Mr. McGovern or to force him to return here, and this may be more

9    of a housekeeping matter than anything else, but if the Court is

10   to issue an order at the conclusion of this call, I wonder if it

11   might be appropriate to make some provision for directing Mr.

12   McGovern's presence for his deposition.

13        MR. BERNICK:  This is David Bernick.  I'm relatively

14   confident, based upon not only mine but other people's dealings

15   with Professor McGovern in the context of these cases, that it

16   will not be difficult to communicate to him the importance of his

17   showing up and I don't know that we have to have court orders to

18   accomplish what I think will be accomplishable readily without

19   the need for court orders.

20        THE COURT:  Mr. Orseck, who do you want to contact Mr.

21   McGovern?  Do you want the Court's clerk to reach out for him,

22   you want to reach out for him, you want Mr. Bernick to reach out

23   for him?  I don't want to engage in anything that you're going to

24   say is, by the way, ex parte if I reach out for McGovern.

25        MR. ORSECK:  Your Honor, I frankly wouldn't even know how

to reach out for Professor McGovern.  Certainly if -- I think Mr.

Bernick can contact him, if he'd be willing to do so, and talk

about whether his deposition should be on the fifth or the sixth.

MR. BERNICK:  A proposal maybe in the spirit of trying to

get this done on a cooperative basis among the parties, it really

does seem to me that the most effective way in which to

coordinate these deposition schedules so that we don't have to

come back to Judge Wolin is for the movants to caucus among

themselves about who it is that they want to take and for what

periods of time, and the same thing for the respondents, and that

we schedule a conference call with the advisers prepared to talk

about their schedules at some point in the next few days, and

that each side be prepared to make a proposal on how long they

want to go with each witness and on which day, see if we can work

it out.

I think if we don't have that call, we're all going to

waste a tremendous amount of time getting the logistics of this

thing straight and all that's going to happen is we're going to

get back to the Court with what will be a very frustrating

unproductive call.  I think it would be a waste of time when we

could have resolved these logistical matters amongst ourselves.

MR. ORSECK:  This is Gary Orseck and that sounds fine to

me.

THE COURT:  All right.  And when is that call to take

place, Mr. Bernick?

1     MR. BERNICK:  Well, I guess it's -- we will undertake -- I

2     mean, it seems to me that the first thing is people have to make

3     up their minds how much time they need and in light of the press

4     of time and people's schedules, we will undertake to set up a

5     conference call on Friday of this week in the afternoon, and or

6     if the Saul Ewing people can do it because they've got

7     everybody's telephone number, that would be even better, but

8     Friday afternoon seems to be reasonable, and in the meantime, it

9     also seems to me that somebody's got to reach out to each one of

10    the advisers to let them know that they really ought to

11    participate in that call if they care about their schedules, and

12    I can contact Mr. McGovern, I think I've got his telephone

13    numbers where he might be, and if somebody else will reach out to

14    the others, we can get it done.

15         MR. MONK:  Your Honor, this is Charles Monk.  I believe

16    Mr. Gross's counsel is on the line.  Is that correct?

17         MR. GOLDSTEIN:  That's correct.

18         MR. MONK:  So, presumably we've communicated with him by

19    virtue of this call.  We will set up a conference call for 3:00

20    on Friday, the 26th, among all parties, to discuss the scheduling

21    of the advisers' depositions.

22         THE COURT:  And I take it that on Monday, the 29th, at

23    10:00, a conference call will be made to the Court or you may

24    designate someone to call the Court and to give the Court the

25    schedule.

1        MR. MONK:  Yes, your Honor, if that's how you'd like us to

2  do it.

3        MR. BERNICK:  Can I ask counsel for Mr. Gross also to

4  contact the other advisers excepting Francis, whom I'll contact

5  to let him know about the call.

6        MR. GOLDSTEIN:  I'm not sure that we can communicate with

7  them and I don't frankly think that is something we should be

8  undertaking.  There are counsel and we suggest whoever you want

9  to depose apart from Mr. Gross, that you communicate with them

10  directly.

11        MR. BERNICK:  I don't want to depose anybody but --

12        MR. GOLDSTEIN:  Whoever the parties want to depose.

13        MR. BERNICK:  Does somebody else want to call?  I don't

14  want to sit there and call everybody.  Does somebody else want to

15  volunteer to call some of the others?

16        MR. MONK:  Your Honor, this is Charles Monk.  We will

17  contact the other advisers.

18        THE COURT:  Keefe and Dreier and Hamlin are in the Lawyers

19  Diary.  They shouldn't be difficult to find.

20        MR. MONK:  Thank you, your Honor.

21        THE COURT:  You're welcome.  All right.  Let's move on to

22  the next matter; that is, that I would like to hear parties'

23  statements or objections as to the demand for production of

24  documents that have been filed and if nobody is a volunteer, then

25  I will --

1           MR. BERNICK:  I'll volunteer, your Honor, and I do so

2   because I think that one of the difficulties in going through

3   this is that we're going to be revisiting a lot of the same

4   issues again and again because they crop up again and again, and

5   I think that there's some basic parameters that would constitute

6   core objections to be made that apply pretty much across the

7   board, and I've tried to think of it that way as well as focusing

8   on the particular requests that are directed at my client and at

9   my firm and myself.

10          It seems to me that they basically fall into three major

11  categories.  There are, first of all, objections that are based

12  upon the fact that as currently styled, these requests will

13  potentially affect the rights of people who are not even before

14  the Court and, therefore, pose basic constitutional problems of

15  due process when compliance with the rules.

16          To the extent that these requests go beyond the five cases

17  that are before the Court, they most certainly do affect the

18  rights of people who are not before the Court.  There's obviously

19  been a concerted effort here to use the excuse of this motion for

20  recusal to reach out to specific -- and the excuse of posing

21  discovery to counsel to reach out and potentially affect the

22  rights of people who are involved in the Combustion Engineering

23  case, people who are involved in the T-1 Holdings case.  None of

24  those people are before the Court.

25          In the case of Combustion Engineering, I'm very familiar

1    with that because, as you know, I'm counsel to some of the plan

2    proponents of that case.  That's a case where there's actually

3    already a confirmed plan and, in light of that, you would have

4    to, if you wanted to effect anything to do with that case, the

5    Court -- which is now on appeal before the Third Circuit, there

6    would be enormous problems, they have jurisdiction; B, of giving

7    notice to each of tens of thousands of claimants who now have a

8    direct stake in the outcome of that case, and that the effort to

9    reach out to that case, and likewise G-1 Holdings, is clearly

10   improper and violates basic precepts of notice of due process,

11   and it seems to me that requests that relate to those cases ought

12   to be rejected out of hand.

13        The second category are problems of relevance.  It seems

14   to me that in dealing with relevance, we have to come back to the

15   discussion that took place yesterday, which seems to me to be

16   wholly -- has been wholly ignored by the people who put together

17   these discovery requests.  Nothing could have been clearer

18   yesterday from the Court that we have a limited period of time,

19   that the focus should be not simply irrelevant information but

20   specifically highly relevant information, yet, in casting these

21   discovery requests, the proponents have -- the movants have

22   clearly retreated back to the same approach that we saw

23   yesterday, which is to make a record at the expense of trying to

24   figure out an answer to what the Court of Appeals has now

25   required, which is to actually find the relevant evidence.  This

1    is just more of the same.  There's no improvement.

2        And what's more, therefore, in order to try to cut through

3    the paperwork and come up with a reasonable proposal about how to

4    get this job done, it's important to articulate what the Court of

5    Appeals has focused on.  It seems to me that there are two

6    principal areas where there could be relevant evidence.

7        Area one is the roles that were actually played by the

8    advisers, because the roles that were actually played by the

9    advisers is germane to the issue of whether there is a conflict

10   to begin with.

11       Again, if there is no conflict and these people have not

12   been given work to do that gives rise to a conflict with their

13   other engagements in G-1, the whole predicate for the motion

14   that's been filed by Owens Corning -- or in the Owens Corning

15   case and the Grace case disappears and, therefore, discovery that

16   relates to what the advisers actually did is relevant discovery,

17   but more particularly, your Honor, it ought to be discovery

18   relating to what Gross and Hamlin did because they are the ones

19   that are alleged to have the conflict. There's been no allegation

20   of conflict that pertains to any of the other advisers.

21       So, the discovery regarding roles played should relate to

22   Hamlin and Gross and, in particular, should focus on whether they

23   have engaged in activities that pertain to the interests of

24   future claimants because those are the folks where the conflicts

25   is alleged to have arisen.

1          If they engaged in other activities, such as mediating

2     issues in one of the cases or advising the Court with respect to

3     fraudulent conveyance principles, that is of absolutely no

4     relevance at all to the key issue of whether there's a conflict.

5     We've heard a lot of argument about how the roles played have

6     been very broad given the broad ambit of the notice that your

7     Honor provided.  We've seen no evidence that's actually been

8     produced regarding the roles that were actually played.  That was

9     the reason why Grace suggested that they engage the record -- the

10    movants engage the record on that subject, and that now is their

11    opportunity.  They have the opportunity to develop a factual

12    record on whether the G-1 engagement was really relevant and

13    created a conflict of interest.

14          The second area of discovery is ex parte contacts and,

15    again, with respect to the Owens Corning movants and the Grace

16    movants, nothing could be clearer in their papers but that they

17    were not taking on the ex parte process itself but simply saying

18    that by virtue of the ex parte process, the conflict that they

19    were focusing on and was the predicate of their motion, that that

20    conflict ended up having particular impact.

21          USG is in a different situation and USG apparently is

22    willing to waive whatever rights they might have with respect to

23    ex parte contacts.  I'm not going to address USG's situation in

24    their particular case but what I would say is when it comes to ex

25    parte contacts affecting all of the other cases, that the focus

1   again should be on ex parte contacts that are germane to the

2   alleged conflict of interest and, therefore, the focus should be

3   not on ex parte contacts between other parties and the Court.

4        Those were, as the Court has indicated, innumerable and

5   pertain to many, many different features of this case.  Those ex

6   parte contacts are protectable because they involve work product

7   that could have been shared with the Court, they involve

8   confidential information that could have been shared with the

9   Court, they involved settlement matters that could have been

10  shared with the Court.  There are all kinds of privilege issues

11  associated with that and none of that is relevant.  Lots of

12  different people had ex parte contacts with the Court.

13       The real issue with respect to ex parte contacts is

14  whether Messrs. Gross and Hamlin had ex parte contacts with the

15  Court pertaining to future claimants, because it is that subject

16  matter again which gives rise to the claim that there's a

17  conflict of interest.  So, when we go to ex parte contacts, the

18  only relevant ex parte contacts are contacts between the advisers

19  and the Court with respect to matters that are alleged to be

20  affected by conflict.

21       The third major source that my client, my firm would

22  object to all discovery requests that either implicate parties of

23  interest and parties that are of interest in these matters that

24  are not before the Court.  We would also object on relevance

25  grounds because it seems to us, and we can demonstrate this in

1    detail in connection with requests that are made of Grace and of

2    Kirkland & Ellis, that these requests are grossly overbroad and

3    do not pertain to the relevant subject matters that are keyed up

4    by the issues before the Third Circuit.

5         And then the third source of objections which we will also

6    make is that most of these requests seek privileged information.

7    We have privileges that apply, including work product privileges,

8    attorney-client privileges.  There's been no showing that

9    specified need to waive to override those privileges and,

10   therefore, we would object to their press on grounds of

11   privilege, those privileges in particular, and that another part

12   of the privilege issue is that these discussions, these documents

13   also relate to the settlement process, and the Third Circuit has

14   reasonably held that settlement discussions are not only

15   inadmissible under the rules but they're also nondiscoverable.

16   We would invoke precisely that principle and object to any

17   request that elicits information that pertains to settlement in

18   any way, shape or form.

19        So those are our three sources of objections with respect

20   to the discovery that has been propounded and, again, I'm

21   prepared to go through the Grace requests in particular if the

22   Court believes that would be appropriate.

23        THE COURT:  All right.  Maybe what we should do is rotate

24   between movants and respondents so that all the respondents don't

25   go first and all the movants go first, so, maybe, Mr. Orseck, we

1    should hear from you next.

2         MR. ORSECK:  Thank you, your Honor.   I will respond to

3    those sections.

4         THE COURT:  And by the way, Mr. Inselbuch, you're on deck.

5         MR. INSELBUCH:  Thank you.

6         THE COURT:  Go ahead, Mr. Orseck.

7         MR. ORSECK:  To begin with, your Honor, we have vastly

8    narrowed down the document requests from the ones that were

9    circulated on Monday.  The ones that remain we think are targeted

10   as specifically as can possibly be done with the materials that

11   are most --

12        THE COURT:  Can I make an inquiry of you?

13        MR. ORSECK:  Yes, sir.

14        THE COURT:  In this document is reference to Combustion

15   Engineering.  My review of the Circuit Court of Appeals' argument

16   indicates that when I believe Mr. Englert raised Combustion

17   Engineering, the Circuit Court of Appeals shut it down

18   immediately.

19        MR. ORSECK:  I don't believe that's correct, your Honor.

20        THE COURT:  What's incorrect about it?

21        MR. ENGLERT:  Your Honor, this is Roy Englert, if I may.

22   When I raised Combustion Engineering, Mr. Bernick took the

23   extraordinarily unusual step in the Court of Appeals in standing

24   up to object and Judge Fuentes' response was we're not going to

25   have that, I believe was we were not going to have objections

1    during counsel's argument to a Court of Appeals, not we're not

2    going to have discussion of Combustion Engineering --

3         THE COURT:  Well, I'm not sure.

4         MR. ENGLERT:  -- though tempering my remarks after Mr.

5    Bernick's objection, and there was nothing said by the judges of

6    the Court of Appeals to suggest that I should not be discussing

7    that.

8         MR. BERNICK:  Your Honor, also, the transcript was not

9    well transcribed and my own observation would be that actually

10   the extraordinary thing about that whole process was that Mr.

11   Englert would seek to argue to the Third Circuit, which now has

12   the Combustion Engineering case on appeal, anything relating to

13   that case, even though that case was not noticed up for anything

14   in connection with the pending matter, that the different

15   proponents and interested parties in the Combustion Engineering

16   case were not before the very same court that is hearing that

17   case absolutely outrageous, and their attempt here is no less

18   outrageous.  It's the same outrage, and what happened was that I

19   had no choice but to stand and object because they're talking to

20   the same Court.

21        Judge Garth did say we will have no more of that.  I don't

22   know whether he was referring to my objection or to Mr. Englert's

23   argument, but what was very clear is that Mr. Englert thought he

24   was referring to his own argument because he then hastened to go

25   through it, and if you take a look at the language he used, he's

1    recognizing he doesn't want to spend very much time on it because

2    he knows he's not supposed to be doing it.

3        MR. ENGLERT:  Your Honor, I just simply register for the

4    record my strong disagreement with Mr. Bernick.  I won't

5    elaborate.  Thank you.

6        THE COURT:  Fine.  Mr. Orseck, let's continue on.

7        MR. ORSECK:  Yeah.  The first objection that was raised by

8    Mr. Bernick I think attempts to eliminate Rule 45 from the

9    federal rules.  Mr. Bernick suggests that it is inappropriate, in

10   fact, unconstitutional to seek discovery from parties who are not

11   before the Court, but I think, more particularly, he's suggesting

12   that we ought not to be able to take discovery with respect to

13   matters that are not before the Court.

14       We are not going after the thousands of claimants in other

15   cases.  This case puts directly at issue the dual roles of the

16   advisers in one case and their service as futures representatives

17   in another case.  There is simply no way to get at that issue

18   without seeking documents and asking questions in a deposition

19   that refer at least to that other matter.  That's number one.

20       MR. BERNICK:  Your Honor, if I may, just because I don't

21   think Mr. Inselbuch, maybe he can address that, but just to be

22   clear, if you're following the rules for the issuance of, for

23   taking discovery, you have to provide notice, and what's not --

24   the notice that's not been given here is the notice to all the

25   other people that are involved in the case.

1           It's not a question of whether you can't or you're

2     precluded from conducting discovery.  It's the process that you

3     have to follow, and they are most certainly attempting to affect

4     the rights of thousands of claimants because those claimants

5     voted in favor of the plan that's now before the Court of

6     Appeals.  You know, in the bankruptcy world, you've got to give

7     notice to the people who are claimants because they have an

8     interest in the matter.

9           The Combustion Engineering case was not subject to the

10    system of advisers that have been supplied in these cases.  As

11    your Honor well knows, that case came to your Honor outside of

12    the confines of the five consolidated cases.  It came on for

13    confirmation after Judge Fitzgerald heard all the evidence and

14    held the confirmation hearing and that case is definitely not at

15    issue with any of the motions that have been filed before the

16    Court of Appeals and there's nothing about the Court of Appeals'

17    Opinion that implicates it, so, I am most certainly raising a due

18    process argument because no effort has been undertaken to notify

19    the interested parties either in Combustion Engineering or in G-1

20    Holdings.

21          THE COURT:  All right.  Excuse me.  Mr. Bernick, now

22    you're violating the process.

23          MR. BERNICK:  I'm sorry, your Honor.

24          THE COURT:  And I'm going to give all participants an

25    opportunity to reply.  If we keep having this type of colloquy,

1   we may not finish before midnight.  So, I'd like to let Mr.

2   Orseck continue uninterrupted.  Let him say or argue whatever he

3   chooses and then we'll keep moving down the line and then I'll

4   come back and give the participants a brief opportunity to reply.

5          Mr. Orseck, you may continue.

6          MR. ORSECK:  Thank you, your Honor.  Just to follow up on

7   that single point, we are seeking facts with these document

8   requests.  There is no attempt and there is no conceivable way in

9   which our attempts to take discovery affects the rights of

10  parties who are not before the Court.  That is simply a red

11  herring.  We are simply taking discovery.

12         Mr. Bernick's objections on the grounds of the

13  constitution or relevance or civil procedure are completely --

14  are completely unfounded.

15         The second objection he made was, Mr. Bernick attempted to

16  post the relevant subject matter here to the activities of

17  Messrs. Gross and Hamlin.  For purposes of his objection, I'm

18  going to assume that he's right, that that is the only relevant

19  subject matter before the Court.  Of course, we disagree with

20  that but the fact of the matter is there is no rule that I'm

21  aware of that restricts a party's ability in discovery with

22  respect to one issue that a party must be prohibited from taking

23  discovery from other parties to determine what parties A and B

24  did.  We are certainly able to take discovery from other parties

25  for that purpose.  That's precisely where our document requests

1    are directed.

2         Number two, the premise is wrong.  We have raised in this

3    proceeding, in fact, we have raised in the recusal motion that

4    was originally presented to the Court footnote seven on page nine

5    raises the conflict problems surrounding Professor McGovern and

6    Mr. Keefe as well.  Those matters are before the Court.  We have

7    raised them and we are entitled to discovery from those

8    individuals with respect to their conflicts and also with respect

9    to the conflict by Messrs. Gross and Hamlin.  So, there is simply

10   no basis for any attempt to restrict discovery from the start to

11   only the two advisers.

12        I am going to, your Honor, ask Mr. Neal to address the

13   objections regarding the discovery requests for ex parte

14   information but before I pass that along, I want to assure the

15   Court of this.  We are not demanding the production of privileged

16   information.  We are confident that the respondents of this

17   motion are not going to produce to us privileged information.

18        We are seeking relevant non-privileged information as the

19   Third Circuit has directed.  In fact, your Honor, we had a call

20   earlier this morning to try to work out some issues between the

21   parties and the one specific objection that was raised by the

22   other side to a particular document request resulted in our side

23   quickly caucusing and agreeing that that request could be

24   dropped, which we have done and which I have informed the other

25   side about.  So, the notion that our requests, number one, are

1    grossly overbroad, that they are unconstitutional and that this

2    is an attempt, as Mr. Bernick suggests, to use a discovery

3    process as an excuse to go after other materials that are not

4    relevant is absolutely, absolutely baseless.

5         THE COURT:  All right.  Mr. Orseck, only one modification

6    to that.  This Court, in relation to its court-appointed

7    advisers, has waived its judicial privilege as to confidence.

8         MR. ORSECK:  I understand.

9         THE COURT:  And the record should so reflect that.

10         MR. ORSECK:  Thank you, your Honor.

11         THE COURT:  Okay.  Mr. Neal.  Or Mr. Neal, if you want to

12    reserve until Mr. Inselbuch so we can do my rotation.

13         MR. NEAL:  Your Honor, which ever way you proceed, that's

14    fine with me, because I don't think Mr. Bernick actually sort of

15    addressed the USG-related issues and if Mr. Inselbuch intends to

16    do that, then I think your procedure probably is the more

17    sensible way to go, but I'll do whatever you want.

18         THE COURT:  I'll hear from Mr. Inselbuch, then I'll hear

19    from Mr. Neal on deck.

20         MR. INSELBUCH: Thank you, your Honor.   Elihu Inselbuch.

21    I have very little to add to what was said yesterday in court or

22    to what David Bernick added today because when I took a look at

23    what was served out this morning and compared it with what was

24    served out yesterday, although I hadn't seen it when I was in

25    court yesterday, it's identical.  The material that you quashed

1    yesterday has been put up once again, and for all the reasons we

2    argued yesterday, it is so far beyond the scope of what anyone

3    could have envisioned would be done here in the limited time

4    frame as to be so objectionable as to not even be worth arguing

5    about.

6         For example, I told you yesterday that we have 72 linear

7    feet of file materials and that most of those file materials, in

8    fact, almost everything in there will be subject to either

9    attorney-client or work product or both privileges.

10        Now, their first request for production yesterday read all

11   documents that constitute, reflect or refer to communications

12   between you and Judge Wolin, and they went on to say yesterday

13   any pleadings served on all parties in the applicable case may be

14   excluded.

15        Now, they dropped that sentence in today's request, so,

16   presumably we would have to go through the file and find any

17   piece of paper that referred to anything that had to do with

18   anything that went on that in any way touched the Court, and we

19   would then have to go through all of those materials and see and

20   make privilege logs out of 72 feet of material to see whether or

21   not there was anything in there unprivileged to produce, and what

22   would be learned from any of that?  What would advance the ball

23   if you look at what the Court of Appeals wanted to know by way of

24   discovery?

25        The Court of Appeals said they wanted discovery to shed

1   light on the full extent of the consultants' activities in the

2   five asbestos cases.  The five consultants have filed their time

3   records, they filed their statements and your Honor has said they

4   should be available to be deposed.  Well, let them be deposed and

5   if, within the context, within the context of the time period

6   that we have available to us, the full extent of their activities

7   certainly can include day-by-day document-by-document examination

8   of everything that they did but, rather, a broad description

9   adviser-by-adviser case-by-case of the activities they were

10  involved in, what their relationships with the parties in those

11  cases were, what their relationships with the Court were.

12       The next document request, identical to what you quashed

13  yesterday, reads all documents that reflect, refer to or concern

14  any meetings, including without limitation, any conferences

15  between you and Judge Wolin.  This isn't even restricted to

16  attempt to see whether or not counsel or any of these other

17  individual counsel were alone with Judge Wolin or alone with his

18  advisers.  In theory, this would call for any document reporting

19  on any conference that had to do with Judge Wolin whether in open

20  court or in chambers with many people present, in your Honor's

21  jury room where we often meet with all the parties and, again,

22  the same burdensome search to come up again with no information

23  other than what your Honor said yesterday, there was ample notice

24  given that there would be ex parte conferences.  Your Honor has

25  stated the nature of what those things are and I can't understand

1    why any -- why this kind of approach to the world needs to be

2    taken.

3        Third, they say all documents that constitute, reflect or

4    refer to communications between you and any advisers.  This again

5    would require a 72-foot search to see whether there are reports

6    made or notes made, and I can assure the Court that if anything

7    of consequence occurs, it would be reflected in a report I make

8    to my clients which would include my impressions of what the

9    conversations were and, thus, inevitably be subject to the

10   attorney-client privilege.

11       The fourth item, all documents which constitute, reflect,

12   refer to, relate to any draft opinions or memorandum of law for

13   Judge Wolin or any adviser.  I can tell you now we didn't draft

14   any.  I can tell the Court, as the Court I'm sure is aware, we

15   didn't draft anything for the Court or any of its advisers.

16       And finally, item five, again, identical to what they

17   served yesterday and to what the Court quashed yesterday, all

18   documents that report, tabulate, reflect or refer to the number

19   of hours that we participate or prepare for communications as

20   described here, and other than our time records, well, I don't

21   know what we have other than our time records.

22       But, your Honor, this is exactly the same material that

23   they served on us, that they sand-bagged on us yesterday that they

24   wanted to talk about with your Honor in court yesterday, that you

25   had seen but we never saw, and they just served it all up today

1    without any refinement, without any explanation of what they hope

2    to accomplish with this and in an obvious attempt to defy the

3    Court and to defy the Third Circuit, and I think that

4    over-breadth is clear.

5        The privilege issues are enormous.  The inability to

6    accomplish any of this within the time frame that's available is

7    plainly obvious and we would ask that this all be stricken.

8        THE COURT:  All right.  Thank you, Mr. Inselbuch.  Mr.

9    Neal.

10        MR. NEAL:  Thank you, your Honor.  What I address will be

11    the five items that Mr. Inselbuch just ran through, which he did

12    summarize accurately.  We have served a proposal that we asked

13    five, but only five, law firms for the five categories of

14    information that Mr. Inselbuch describes, so, it's to be served

15    on five firms for five categories of information.

16        Mr. Inselbuch says that the requests now have been

17    broadened to impose on the responding parties the burden of

18    turning over pleadings.  That's not accurate.  The definition of

19    documents that are on the preceding page explicitly provide that

20    we are not looking for any pleadings, briefs or other documents

21    that have been filed in the court.

22        Mr. Inselbuch makes a point directly that, literally read,

23    the requests would seem to include documents concerning

24    conferences at which all parties were present before the Court,

25    and we would agree to exclude from the requests documents

1    relating to any such occasions, that is, relating to occasions

2    when all parties were present before the Court.

3         The remainder of these, however, go directly to the

4    question of the nature, extent and substance of ex parte

5    communications either with the Court or the Court's advisers,

6    which is obviously directly and specifically relevant to our

7    455(b) arguments.

8         Both Mr. Bernick and Mr. Inselbuch have said it will call

9    for -- might call for privilege documents.  We agree there may be

10   privilege documents that shouldn't be produced but we do want

11   those scheduled on a log so that we have a fair opportunity to

12   address whether they are indeed subject to privileges and should

13   not be produced as a result of that.

14        But the information is directly relevant to the 455(b)

15   issue and has been greatly narrowed as far as the number of

16   parties that we are asking to provide this information to us, and

17   as I say, we're prepared to narrow it further consistent with Mr.

18   Inselbuch's suggestion.

19        THE COURT:  Well, Mr. Neal, in response to that, when we

20   started this call today, I indicated that perhaps the first line

21   of consideration should be the minutes of the Court that are

22   possessed by the deputy clerk, but we'll pass on.

23        MR. NEAL:  And we heard that.  Obviously, we would like to

24   take the opportunity to do that but we are working on a tight

25   time frame and, therefore, in the event those minutes don't