1   illuminate all of the things that may be appropriate and relevant

2   to the 455(b) issue, this is the only way that seems available to

3   us to try and get that illumination.

4       THE COURT:  All right.  I understand.

5       MR. BERNICK:  Can I ask a question, your Honor, in the way

6   of clarification --

7       THE COURT:  Sure.

8       MR. BERNICK:  -- with respect to what Mr. Neal has said.

9       THE COURT:  If it's not a reply, it's a clarification,

10  I'll permit it.

11      MR. BERNICK:  Question.  I'm not going to reply to it, at

12  least at this point.

13      THE COURT:  Okay, fine.

14      MR. BERNICK:  I look at the definitions in the requests

15  that are directed to Cooney & Conaway, Motley Rice, Caplin &

16  Drysdale, Weitz & Luxenberg and the list I take it to be the ones

17  that you're referring to, it has, when it comes to the requests

18  for production, the definitions, there's the definition of the

19  five asbestos cases.  When it comes to the requests for

20  production, though, I don't see anything that limits the requests

21  for production to the five asbestos cases.

22      Is the intent of these requests the five asbestos cases or

23  is the intent to go beyond them?

24      MR. NEAL:  No, David.  If you look at paragraph five,

25  paragraph five makes it clear that we want communications in the

1    five cases but also any communications in any other case pending

2    before Judge Wolin involving claims arising from exposure to

3    asbestos.  So that if, for example, there were communications, ex

4    parte communications concerning Combustion Engineering, our

5    requests are intended to pick those up or at least to elicit a

6    privilege log listing of them and an explanation as to why they

7    aren't being produced.

8         MR. BERNICK:  Also pertaining to the advisers?

9         MR. NEAL:  Correct.

10        THE COURT:  All, right fine.  Mr. Tractman, why don't we

11   hear from you.

12        MR. TRACHTMAN:  Thank you, your Honor.  I did want to

13   address one specific point made by Mr. Bernick earlier that I

14   don't think has really been joined.  I think Mr. Bernick, in his

15   arguments yesterday and today, is really inappropriately trying

16   to impose upon discovery his ultimate arguments about the

17   relevant scope of really about the merits of the ultimate motion.

18   What types of activities would constitute an appearance of

19   impropriety or an appearance of possible bias is not necessarily

20   as narrow as he's defining it.

21        He is suggesting that only, for example, only activities

22   directly relevant to the treatment of future claimants could

23   possibly give rise to an appearance of impropriety.  That is his

24   argument.  We all have arguments both ways about the proper scope

25   of the 455(a) and (b) motions and the ultimate merits and what

1    constitutes grounds for recusal.  Discovery is not the place to

2    impose those limitations.

3    There's a wide range of activity in which the advisers

4    that we know they've engaged or we could discover that they

5    engaged that could strengthen the already significant record

6    about appearance of impropriety.  One example, Mr. Bernick

7    mentioned fraudulent conveyance and suggested that that was

8    inherently irrelevant, and I -- did I lose your Honor?  Your

9    Honor, are you there?

10    THE COURT:  I'm here.

11    MR. TRACHTMAN:  I'm hearing an echo.  I'm sorry.  I think

12    he's referring perhaps to the Sealed Air matter, which we're all

13    familiar with that.  That is extremely relevant to the interest

14    of future claimants and all tort claimants.  Almost anything of

15    any consequence that happened in these cases is of vast

16    importance to asbestos claimants and are matters on which the

17    asbestos claimants and other creditors have dramatically

18    divergent positions.  And so, anything in which, of any

19    significance, in which these advisers participated in our view

20    gives rise to an appearance of a conflict of an impropriety

21    because they are advocates at the same time they're being

22    neutral.  It doesn't matter whether the specific issue at stake

23    is a treatment of future claimants.  So, it's a global comment.  I

24    think it's inappropriate to try to limit the inquiry within the

25    five days by narrowly saying that only certain subject matters

1    and activities could be relevant.

2            THE COURT:  All right.  Anything else?  All right.  I'd

3    like to hear from Mr. Crames next please.

4            MR. CRAMES:  Miss Parver will respond, your Honor.

5            THE COURT:  All right.  And Mr. Parker, if you're going to

6    reply, you're on deck.

7            MR. MANCINO:  Your Honor, Rich Mancino.  Will I have an

8    opportunity to respond very briefly --

9            THE COURT:  Absolutely, you're going to be heard from.

10           MR. MANCINO:  -- Mr. Bernick's comments?

11           THE COURT:  Mr. Mancino, I'm going to give you an

12   opportunity to speak but it's not now.

13           MR. MANCINO:  I just didn't want to be overlooked.

14           THE COURT:  Mr. Mancino, it would be very difficult to

15   overlook you.

16           MS. PARVER:  Your Honor, this is Jane Parver.  Good

17   afternoon.

18           THE COURT:  Good afternoon.

19           MS. PARVER:  Your Honor, both Mr. Orseck and Mr. Neal have

20   represented to the Court that the requests that were delivered

21   today were much narrower than the requests that we did not see

22   yesterday and that they really go to communications with the

23   advisers, what the advisers' role were, were communications with

24   the Court.

25           I can tell you, your Honor, that their representations are

1    really belied by the requests to the futures reps and to Kaye

2    Scholer in this case that we received this morning.  There are 11

3    requests, your Honor, and most of them have nothing to do by

4    their express terms with anything to do with any communications

5    with the advisers or with the Court.

6        For example, your Honor, number five with respect to the

7    five asbestos claims cases, Combustion Engineering and G-1

8    Holdings, all documents that reflect, refer to or relate to the

9    establishment of a bar date for filing claims or demands for

10   present or future asbestos-related injuries against the debtor,

11   the estimation or other calculation, quantification or

12   liquidation of claims or demands for asbestos-related injuries or

13   the substantive consolidation of any debtor or any debtor's

14   estate with any other entity or entity's estate.

15       There's no term there tell us about communications with

16   advisers concerning this.  Your Honor, we've been at this for

17   several years.  For example, with claims estimations, there are

18   just tons and tons of documents between us and our clients that

19   deal with future claims estimations.  It has nothing to do with

20   the issues in this case and this is -- I mean, it would take

21   years to put together this stuff to produce, that's an

22   exaggeration, certainly months, to comb the files, and it's got

23   nothing to do with the issues that Mr. Neal and Mr. Orseck have

24   said were what they were trying to discover.

25       So, I really think, your Honor, these requests on the

1    future reps are so overbroad and so irrelevant that they should

2    just be stricken.

3          MR. ORSECK:  At the risk of violating the Court's

4    interruption rule, this is Gary Orseck, and I can quickly address

5    that.  Your Honor, when I mentioned that there had been an

6    objection this morning to --

7          THE COURT:  No, Mr. Orseck.  Mr. Orseck, I'm going to give

8    you a reply.  I'm going to give you a reply.  Let's see if we can

9    keep to the procedure.

10          MR. ORSECK:  I just wanted to mention, your Honor, that

11    that's no longer a request from us.

12          THE COURT:  Okay.

13          MS. PARVER:  I kind of find it interesting, your Honor,

14    because certainly Mr. Orseck didn't bother to notify the futures

15    rep or the future rep's counsel about that.

16          MR. CRAMES:  Jane, let me interrupt you.  This is Michael

17    Crames, if I may.  By e-mail, Mr. Orseck's request number five

18    was being withdrawn.  However, the e-mail continues that it's

19    being withdrawn with the understanding that those communications

20    are subsumed in request number three.

21          MS. PARVER:  So, they really -- I mean.

22          MR. CRAMES:  I mean, to the extent that they would expect

23    a response on five, they still expect a response but in the

24    context of three, so --

25          THE COURT:  Okay.  Thank you.

1    MR. CRAMES:  I really don't think that the issue has gone

2    away, and I don't want to interrupt Jane further, but when she's

3    finished, I will have one or two very, very brief comments.

4         THE COURT:  Are you finished, Miss Parver?

5         MS. PARVER:  Just one other example.  You know, when

6    asking for documents that refer to statements concerning any

7    decision that you might or might not make in future proceedings,

8    I mean, under Mr. Trachtman broad definition of what they're

9    allowed to look for, this is ridiculous.  Practically everything

10   they're asking for is going to be privileged.  It's irrelevant.

11        We're going to spend months doing privilege logs.  This is

12   not the narrow rifle shot that they represented they were going

13   to do, your Honor.

14        THE COURT:  Okay.  Thank you.  Mr. Crames, I'll hear you

15   briefly.

16        MR. CRAMES:  The only two points I'll make, your Honor,

17   that further reflect the breadth and the scope of these requests,

18   I would just call the Court's attention to number eight, which is

19   another extraordinarily broad request for documents.  Frankly, I

20   wouldn't know where we would begin to pull those altogether in

21   any meaningful response.

22        I would also suggest to your Honor that items six, seven,

23   nine and ten and, amusingly, all my resumes since I first applied

24   for a job are called for by item 11, are totally irrelevant in

25   our view.

1    THE COURT:  All right.  Thank you.  Mr. Parker.

2    MR. PARKER:  Your Honor, I have nothing to add to what Mr.

3    Orseck was saying before.

4    THE COURT:  Okay.  Mr. Mancino, you're up.

5    MR. MANCINO:  Thank you, your Honor.  And I will start by

6    saying that I concur with the comments that Mr. Tractman made

7    concerning the restrictions that Mr. Bernick -- the substantive

8    restrictions that Mr. Bernick would seek to impose on discovery,

9    because those go to the ultimate question that your Honor will

10   need to address with respect to the motions to disqualify, and we

11   don't, on behalf of our clients, we don't believe that the issues

12   that we've raised in our motions, our motion are as limited as

13   Mr. Bernick suggests.

14        We've raised two issues and one relates to the involvement

15   of the advisers in the case as giving rise to an appearance of

16   impropriety, and that is not limited simply to whether or not

17   they have worked on the Grace case or have worked on directly

18   issues related to future asbestos claimants in the Grace case.

19   There the appearance of impropriety that we believe has been

20   created relates to their overall role in the five asbestos cases,

21   not simply in Grace.

22        Secondly, it's clear to me at least that neither Mr.

23   Bernick, nor Mr. Inselbuch, want to produce any documents

24   relating to ex parte communications that they have had with the

25   Court or with the advisers.  But there, too, those source of

1    documents and communications are directly relevant not just to

2    the -- we have raised in our motion but also in the issues that

3    were put before the Third Circuit and on which the Third Circuit

4    is seeking a more developed record, so, I would argue, your

5    Honor, that those are acutely relevant and go to the heart of

6    what should be discovered in these matters.

7        With respect to privilege concerns, I think Mr. Neal made

8    the point which I will adopt that we are not seeking to blow

9    appropriately based privileged claims.  However, not every

10   communication between Mr. Bernick or his client and the Court or

11   the advisers or between Mr. Inselbuch and the Court and the

12   advisers is privileged.

13       I believe your Honor made that point yesterday, that these

14   bankruptcies are not in their entirety one big settlement

15   discussion, which is what I heard Mr. Bernick suggest might be

16   the case.

17       With respect to work product, if Mr. Bernick or Mr.

18   Inselbuch had shared work product with the Court in an ex parte

19   context, it seems to me they've waived any protections that the

20   work product might otherwise have, but those issues can be

21   addressed once we see what sorts of documents they assert

22   privilege and work product protection on.

23       Finally, with respect to the Combustion Engineering point,

24   I really don't have a dog in the fight on that one, but I do note

25   that in the document request that I believe was submitted by --

1    on behalf of at least some of the respondents, the definition

2    of -- they have a definition of six asbestos bankruptcy cases

3    that does include In Re Combustion Engineering.

4         THE COURT:  Mr. Mancino, you can rest assured that

5    whatever the ruling is for the petitioners will be the same for

6    the respondents.

7         MR. MANCINO:  Okay.  So, your Honor, with that, I will

8    subside and, if appropriate, if a further reply is appropriate,

9    I'd appreciate the opportunity, but if it's not, I'll just keep

10   quiet.  Thank you.

11        THE COURT:  All right.  Thank you.  I think the only one

12   that's left that's a participant that hasn't been heard from is

13   Mr. Monk.

14        MR. MONK:  Correct, your Honor, last but hopefully not

15   least.

16        THE COURT:  I'll hear from you.

17        MR. MONK:  Your Honor, I join in most of the comments that

18   were made by the persons on my side of the virtual courtroom

19   here.  I do have some specific points that I would like to make

20   drawing your attention, I think to some specifics that might be

21   of assistance.

22        One is the way that movants have defined documents is

23   really their attempt, it seems to me, to narrow the scope of the

24   discovery here to those matters that were pleadings that were

25   filed or other documents filed with the clerk of the bankruptcy

1    court.  I would suggest that that should be broadened to include

2    anything that was circulated, correspondence or e-mails that were

3    circulated to counsel so that what they're really seeking is

4    non-public communications to the advisers or the Court, things

5    that were -- because we operate so much by e-mail these days, it

6    seems to me that they have overly included a lot of information

7    they already have in their possession and shortness of time

8    involved here, the waste of everybody's resources to be producing

9    e-mails that were sent to them.

10        As a for instance, even if that wasn't something that was

11   a pleading or a brief or something that was filed with the

12   clerk --

13        MR. NEAL:  Your Honor, Steve Neal.  I don't mean to

14   interrupt but I agree with that completely.  I'm in complete

15   agreement with that.

16        MR. INSELBUCH:  Your Honor, Elihu Inselbuch.  Can I make a

17   brief point about the document requests that have been noticed

18   for the advisers?

19        THE COURT:  Why can't you save that for your reply.

20        MR. INSELBUCH:  Very well, sir.

21        THE COURT:  Thank you.

22        MR. MONK:  Your Honor, with respect to the time frame

23   involved, we did have a discussion about the time frame among

24   counsel this morning.  I think the best definition of a relevant

25   time frame would be from the period when Owens Corning, which I

1    believe is the first in the cases that was filed, which would be

2    October 4th of 2000, until October 10th, which was the date that

3    the movants first filed a motion to seek recusal, and anything

4    that -- and that should be the relevant scope of discovery here.

5        I don't believe that any communications that took place

6    after their filing among respondents would certainly be anything

7    other than privilege or really irrelevant, because the subject,

8    as I understand it, is their knowledge and any communications

9    that anybody had prior to the filing of the petitions with the

10   advisers.

11       I guess one further clarification, to the extent that --

12       THE COURT:  By the way, let me ask you a question, Mr.

13   Monk, about those dates.  Why shouldn't the beginning date be

14   November 27 of 2001, which I believe is the date Judge Becker

15   appointed me to these cases?

16       MR. MONK:  Your Honor, my understanding is that Mr.

17   Hamlin, Mr. Hamlin's appointment in the G-1 case was nominated on

18   May the 1st of 2001, and I'm sure, because I know how hard it is

19   to find futures representatives, that the parties were discussing

20   Mr. Hamlin as a prospective futures rep well before then, so, and

21   the point would be that if that was in the press or discussed or

22   communicated with others prior to that point in time, it would

23   have been within their knowledge no matter when this Court was

24   appointed.

25       THE COURT:  Okay, fine.  You've clarified for the Court

1    because I would have no information on that.

2         MR. MONK:  In our effort to coordinate on behalf of the

3    Owens Corning debtors and Mr. Inselbuch's and Mr. Crame's

4    clients, we have included the Combustion Engineering case.  We

5    have really, to the extent that that's in our papers, we really

6    have no interest in the Combustion Engineering case.  We don't

7    feel as though that forms a part of this record.  We understand I

8    think Mr. Bernick's concerns and would be, unless I hear from my

9    colleagues to the contrary, willing to narrow our request to

10   eliminate the Combustion Engineering case from the discussion.

11        THE COURT:  All right.

12        MR. MONK:  Those are my only comments.

13        THE COURT:  All right.  Thank you.  I'll now go to

14   replies.  Mr. Bernick, you were the first one to speak.  I'll

15   give you the first reply.

16        MR. BERNICK:  Thank you, your Honor.  Everybody always

17   says they don't have much to say and always says a little bit

18   more.  I don't have anything further to say with respect to the

19   notice and participation point.  I think that, obviously, it

20   implicates Combustion Engineering and G-1.  I think that the

21   record, I mean the argument on that has been fairly

22   straightforward and clear.

23        I'll only note that as I pace through some of these other

24   requests, and maybe that counsel don't simply realize what the

25   implications of some of these requests are, that you've just got

1    massive problems in that area.

2          For example, when you ask of all communications between

3    you, that is referring to Elizabeth Magner, Motley Rice, John

4    Cooney, Caplin & Drysdale, Weit & Luxenberg, between you and any

5    adviser, well, Francis McGovern acted as a mediator in connection

6    with the Combustion Engineering case.  He's an adviser in this

7    case, these cases, but there he was a mediator.  All of those

8    firms had massive communications with Professor McGovern in

9    connection with the extensive and continuing efforts of Mr.

10   McGovern to act as a mediator in that case and that, obviously,

11   does implicate the interests of all of their clients, all those

12   many thousands claimants in that case.  Just an illustration of

13   as soon as you did tip your toe into the water outside the five

14   case, how problematic this list becomes.

15         With respect to relevance, it's interesting because the

16   arguments that are being made about relevance here are being made

17   as if there were no record and there were no pleadings and there

18   was no Court of Appeals' decision remanding this case.  Those

19   are, and if the motion to recuse is kind of like bringing a

20   lawsuit, it's notice pleading, and after that you can kind of

21   conduct a fishing expedition to find out what it is that supports

22   your claims.

23         A motion to recuse is not notice of pleading and it's not

24   the initiation of a lawsuit and it's certainly not the initiation

25   of the lawsuit here.  Motion to recuse is an extraordinary

1    request and requires a focused and well-founded claim to begin

2    with.  You don't just make a motion to recuse and try to find out

3    what's out there.

4         In this particular case they're not writing on a clean

5    slate.  They filed motions to recuse that argued specific points.

6    We know what they were.  We know they were based upon conflicts

7    of interest involving Hamlin and Gross and they submitted those

8    theories before the Court of Appeals, and they've never retreated

9    from those, and the Court of Appeals has adopted those theories

10   in connection with the remand, but even USG, which has raised a

11   somewhat different kind of tact in their motion focuses on

12   particular circumstances involving the claim forms where they

13   feel that there were improper contacts with the Court.

14        That record, those allegations are not only required to be

15   specific because of the nature of the remedy sought, but at this

16   point they're locked in stone.  We're not going back and

17   reinventing through discovery what the real scope of this inquiry

18   is, to say nothing of engaging in a fishing expedition to find

19   out what else is there because the current theory they have is

20   probably not a very good theory.  So, all these arguments are

21   being made, well, this might -- these are all ignore the nature

22   of the remedy that's being sought in the proceedings that have

23   taken place to date.

24        Also on the lines of relevance, Mr. Trachtman says, well,

25   you know, fraudulent conveyance, that doesn't relate to the

1    futures or that relates to the futures, like they can't figure

2    out what relates to the futures.  That's another completely

3    far-fetched position.  Mr. Trachtman knows better because he's

4    dealt with mass tort bankruptcies before.  People know in the

5    case that not everything relates to the futures.  In the case of

6    fraudulent conveyance, there is only one issue which is bring

7    more assets into the estate, and in fact, the time that we

8    litigated the fraudulent conveyance claim in the Grace case there

9    was no futures representative because it wasn't necessary to have

10   the futures representative.  It's never been necessary to have a

11   futures representative in the Grace case.

12        Further argument with respect to relevance is that, well,

13   gee, it's not proper to just restrict discovery to Grace, and

14   it's true that discovery can be conducted with respect to issues

15   that are involved in the activities in the other cases that may

16   be relevant to Grace.  That's not the point.  The point is what

17   is the issue, and the issue is conflict with an engagement on

18   behalf of the futures representative.

19        We have never taken the position that they can't conduct

20   discovery into work that's being done by the advisers in

21   connection with other cases that implicate the interests of the

22   futures, but we are taking the position that when you ask Grace

23   or when you ask Kirkland & Ellis for their documents or their

24   information relating to the activities of the advisers relating

25   to the futures, it ought to be confined to the Grace case, and to

1    the extent that my client or I had information about futures

2    representative activity in connection with other cases, that is

3    going to be work product.  It's going to be information obtained

4    by the general counsel or by me as a result of the inquires that

5    we have made that are still protectable.

6         So, when you get to who responds to the discovery, you

7    then have to pay attention to the case in which the discovery is

8    being conducted.

9         Then turning to privilege and settlement, again, no one

10   really addressed the problem of settlement, how settlement is

11   achieved.

12        With respect to privilege, two points.  First, the

13   argument has been made that, well, see, all the privilege was

14   waived to the extent it was shared with the Court as part of this

15   ex parte process.  That's false.  It wasn't waived at all because

16   the communications with the Court were, it took place with the

17   expectation of confidentiality so that there would be no waiver

18   and, obviously, when you're showing up to the Court and you're

19   talking about your theory of the case, of course, it's work

20   product and of course it's privileged information and it's not

21   waived at all.  And your Honor may decide that the Court is not

22   going to invoke confidentiality, is not going to insist upon

23   confidentiality, but certainly the Court's determination to go in

24   that direction doesn't constitute a client's waiver of

25   confidentiality.

1    There has been no waiver with respect to any privilege

2    here and the same thing applies to the settlement privilege and

3    the protections that adhere to settlement discussions.  They've

4    taken place with the Court under an expectation of

5    confidentiality.  There's been no waiver of that expectation,

6    there's been no waiver of those rights.  And my final point with

7    respect to this general argument is that there's been kind of a

8    blase reference to the fact that, well, we're not asking for any

9    privileged information but, by the way, you got to log it all.

10    We will never get done with that process.  We'll never get

11    done with the arguments that will then take place of the logging

12    process in our lifetime given the scope of these requests.

13    The last thing I'll say is that I have not responded to

14    the particular document requests made of my client or my firm and

15    I've not responded to the document requests that have been made

16    of others that implicate the interests of my client and I want to

17    reserve our right and, depending upon what the Court decides is

18    the appropriate process here, to go through each and every one of

19    these requests that talk about how they're poorly phrased, poorly

20    worded and grossly objectionable, not only on the grounds that

21    I've listed but on other grounds as well.

22    THE COURT:  All right.  Thank you very kindly.  Mr.

23    Orseck, your reply.

24    MR. ORSECK:  Well, your Honor, I think I've said what I've

25    had to say about the relevance and the appropriateness of all of

1   our discovery.  I think privileged material does not need to be

2   produced.  I believe the privileged material that is relevant and

3   responsive can be logged.

4          I want to -- I want to respond to something that Mr. Monk

5   mentioned about the time frame of these document requests.  We

6   agree with your Honor that the documents requested by either side

7   become relevant only after this Court's appointment to the five

8   cases.  We also believe that documents that were created after

9   the filing of the recusal motion are not relevant except to the

10  extent that there are non-privileged documents created by one

11  party or another that will pertain particularly to the recusal

12  motion itself, so that, for example, if a document is created

13  that will constitutes an ex parte contact after the recusal

14  motion was filed, that could be relevant.  But none of these

15  remaining materials that have been sought I think are relevant

16  after that date, and I think I'd like to have Mr. Trachtman, if

17  he cares to, reply to Mr. Bernick on the fraudulent conveyance

18  issue.

19          THE COURT:  Mr. Trachtman was next on my reply list.  Have

20  you finished, Mr. Orseck?

21      ·   MR. ORSECK:  I have.  I'd just like to bring to the

22  Court's attention one other matter.  I just want to get to it

23  before we forget.  This document -- the two document requests the

24  state different dates by which the production is to be made and I

25  want to bring to the Court's attention that I think we have an

1   agreement reached among counsel this morning that with the

2   exception of some narrow categories of materials that both sides

3   will attempt to produce by December 31st, that the remaining --

4   the deadline for remaining materials will be January 2nd.

5           THE COURT:  That was my understanding.

6           MR. ORSECK:  Right.

7           THE COURT:  Okay.  Thank you.  Mr. Trachtman.

8           MR. TRACHTMAN:  Thank you, your Honor.  I just want to

9   respond to a couple of specific points.  One is Mr. Bernick's

10  reply.  There's nothing in the Third Circuit opinion, to my

11  knowledge, that narrows the relevant issues to the extent that

12  Mr. Bernick attempted to in his remarks at the outset and, in

13  particular, with respect to Sealed Air, as Mr. Bernick knows,

14  really as I believe everybody on this call knows, there are

15  issues in that decision, in particular, the methodology used to

16  determine solvency, that are of intense interst to tort

17  claimants.  The issues have been argued and briefed in a number

18  of different cases that Mr. Bernick has participated in and, in

19  fact, as your Honor will remember, there were letter briefs by

20  parties in this case arguing the significance or lack of

21  significance of Sealed Air.

22          So, to try to circumscribe as narrowly as he has tried the

23  issues that implicate the issues of tort claimants is misleading

24  and not supported by the Third Circuit's remand.

25          I wanted to just address briefly a couple of points made

1    by Mr. Crames and Miss Parver with respect to the document

2    requests to their firm and to the futures representatives.  One

3    is with respect to the narrowing, I think it's important to note

4    that we did drop number five.  Dropping number five, in fact,

5    substantially narrows -- they're trying to dismiss that as if it

6    was not a good faith attempt to trim it back.  All we said was

7    number three, number three has to do with communications between

8    them and the advisers, clearly core relevant issues. All we

9    simply said is to the extent among the subject matters that may

10   be embraced by number three are the matters referenced in five.

11        To the extent Miss Parver complained about the millions

12   and millions of documents that those general subject matters

13   might invoke, withdrawing number one dramatically reduces the

14   amount of materials, so, it's misleading to suggest that we

15   haven't made an effort there.

16        I also would like to elaborate, I'm really amazed, Mr.

17   Crames, I believe, listed number eight as being completely

18   irrelevant and, forgive me, it's a difficult context here if I

19   got that wrong, but I thought Mr. Crames recited number eight as

20   being totally irrelevant.

21        What number eight gets to is the fact that two of the

22   advisers, the neutral advisers in this case, participated in a

23   series of meetings and conversations with the other futures

24   representatives and the fact is that Mr. McMonagle and Mr. Crames

25   have participated with Messrs. Gross and Hamlin and different

1    combinations of people over the two years employing the common

2    strategy as they reasonably should as advocates for tort

3    claimants.   Those conversations are incredibly relevant and the

4    fact that they didn't turn around and have to deal with each

5    other, with Mr. McMonagle and Mr. Crames still being advocates

6    and Messrs. Gross and Hamlin being purportedly neutrals in this

7    case gives rise to a significant appearance of impropriety and

8    it's correct that we believe that that appearance of impropriety

9    is complete on the existing record, but the Third Circuit has

10   said we want to know all the facts, go back and fill out the

11   facts.   And this couldn't be more relevant to what the Third

12   Circuit wants to know about and what's relevant for this motion.

13        MR. CRAMES:  Your Honor, this is Michael Crames.

14        THE COURT:  No, Mr. Crames.  You're going to have to wait.

15   Mr. Trachtman, have you finished?

16        MR. TRACHTMAN:  Yes, your Honor.

17        THE COURT:  All right.  Mr. Crames, you may have your

18   reply.

19        MR. CRAMES:  My point which has just been referenced as to

20   the rule that might apply, I simply quote from the e-mail I

21   received which I almost did earlier, but I'll make it complete,

22   that number five is withdrawn, quote, with the understanding that

23   communications regarding the subject matters described in that

24   request are subsumed in request number three, end of quote.   I

25   don't know how to read that other than saying whatever might have

1   been provided in terms of number five we now provide in the

2   context of three.   Otherwise, I'd be happy to be corrected.

3        Now, as far as number eight is concerned, I don't believe

4   I used the term irrelevant.  I used the term, or at least I meant

5   to, that that entails an awful lot of documentation and other

6   communications and aside from the fact that there are privilege

7   issues involved in what may have been imparted to Messrs.

8   McMonagle and Trafelet and the consequences of those meetings, I

9   would just remind the parties, and I'm sure the Court is aware of

10  it, that time records are filed by Mr. McMonagle in Owens

11  Corning, by Dean Trafelet in Armstrong and USG, as well as by my

12  firm, which reflect those meetings, who was there in many

13  instances as set forth in papers filed with the Third Circuit in

14  referencing Mr. McMonagle's time records.

15       And final points, your Honor, they are going to be

16  deposing Messrs. Hamlin and Gross and their participation in

17  those meetings I am sure will be the subject of their

18  examination, so, it seems to me that the subject is indeed going

19  to be covered and indeed has been by virtue of the publicly filed

20  time records.   That's all I have to add, your Honor.

21       MS. PARVER:  Your, this is Jane Parver.  If I could just

22  add two brief things to my partner, Mike Crames.  One, on the

23  issue of what date is the relevant date for starting, I would

24  suggest to your Honor, propose to your Honor that in most

25  instances the relevant date would be, and certainly with respect

1    to anything on the futures rep, the relevant date would be the

2    date of the Court's appointment by Judge Becker.

3    I think the one exception on the issue of notice and what

4    everyone knew about G-1 Holdings and Mr. Hamlin's appointment

5    would be -- that would be the one exception which we propose

6    would start earlier.

7    The only other thing I would say, particularly with

8    respect to the arguments just made by Mr. Trachtman, number eight

9    doesn't just talk about communications with Mr. Hamlin or Mr.

10   Gross and any future rep meetings which are a matter of record.

11   They talk about or any of the other advisers appointed by Judge

12   Wolin.

13   It is a matter of record, your Honor, that Messrs.

14   McGovern and I believe Mr. Gross were appointed from time to time

15   as settlement masters, as mediators in the Owens Corning case and

16   Mr. Trachtman and certainly his partner, Ken Eckstein,

17   participated in a lot of these meetings, and to now talk about

18   any document that refers to any communications, I mean, again,

19   we're going to -- most of these are going to be settlement

20   discussions, as Mr. Trachtman and Mr. Eckstein well know.  These

21   were attempts to mediate term sheets.  These were attempts to

22   mediate the intercreditor project.  They were right there and,

23   yet, we're going to be spending weeks and weeks trying to

24   construct privilege logs and going through files and they can't

25   point to any relevance.

1    Certainly Mr. Trachtman didn't try to defend that last

2    portion of number eight, which talks about or any of the other

3    advisers.

4    THE COURT:  Okay.  Mr. Neal, anything that you'd like to

5    add in reply?

6    MR. NEAL:  Briefly, your Honor.  Mr. Bernick's comments on

7    relevance were a little ambiguous as they related to USG.  He

8    suggested that people are changing their theories.  As I think

9    everybody knows, we have moved under both 455(a) and 455(b), and

10   under 455(b), the issue of ex parte communications are obviously

11   directly relevant.  Nobody disputes that, and I gave everybody --

12   nobody made a secret -- there's no secret that ex parte

13   communications apparently occurred.  I mean, nobody is denying

14   that.

15   The opponents to our motion, though, cannot sit

16   simultaneously and say that the evidence that we have brought

17   forth with respect to ex parte communications isn't sufficient to

18   bring about recusal under 455(b) and then say we're not entitled

19   to get any additional evidence.  It is squarely an issue.  The

20   requests that I addressed this morning, the last five items on

21   the materials that were faxed around, particularly as modified by

22   the comments from Mr. Inselbuch and Mr. Monk, with which I

23   agreed, are designed precisely to get at the issue of ex parte

24   communications and they're designed to get at nothing more,

25   nothing less than that, and they are, therefore, relevant.

1          THE COURT:  All right.  Thank you very kindly.  Mr.

2     Mancino.

3          MR. MANCINO:  Thank you, your Honor.  With respect to Mr.

4     Bernick's comments, I think his efforts to cabin the relevancy of

5     the discovery here really does fly in the face of the Third

6     Circuit's directive.  They did not put the limitations on

7     discovery that he would ask this Court to put on them.

8               Specifically with respect to the fraudulent conveyance

9     case and the settlement in the Sealed Air matter, that does bear

10    relavance to the personal injury asbestos claimants and the

11    future asbestos claimants, and as Mr. Trachtman has pointed out,

12    but I also note that at least as I've read the papers that have

13    been filed in connection with seeking approval of the settlement

14    agreement in that case, the various committees that participated

15    in that settlement and have filed their motion have asked that --

16    have said that the settlement agreement provides for them to use

17    their best efforts to require that any plan provide that, at

18    best, all and at a minimum a maximized amount of the settlement

19    amount contributed by the Sealed Air defendants be funneled

20    directly to the 52(g) Trust to be created for asbestos claims.  I

21    mean, that is a direct tie-in to the interests of asbestos

22    claimants, future asbestos claimants, and to argue that it is

23    not, I think, just is really an attempt to foreclose discovery

24    into a highly relevant area.

25               The other point about time limitations on discovery, I

1    agree that there should be reasonable limitations on how far back

2    you go and how far forward you go and with respect to the

3    requests that we have made relating to our motion or have

4    subscribed to relating to our motion, your Honor, the time

5    limitation should go a little bit beyond the filing of the

6    recusal motion so as to capture any ex parte communications with

7    Mr. Hamlin or Mr. Gross or with your Honor that may have taken

8    place with respect to the appointment of a futures representative

9    in the W.R. Grace case.

10        And then finally, you know, I think Mr. Bernick has had

11   ample opportunity to address the Court about his objections, and

12   while I enjoy listening to him, I think that he's had his

13   opportunity to voice his objections with respect to the document

14   requests that have been propounded and that, your Honor, we all

15   need to move forward and get moving on discovery and just simply

16   engaging in further elaborate discussion because Mr. Bernick

17   failed to get his all his objections in in his other

18   opportunities to speak is I think counterproductive.

19        THE COURT:  Okay.  Thank you.  Let's see.  How about --

20        MR. MONK:  Charles Monk.  I think I'm the only one that

21   hasn't replied.

22        MR. INSELBUCH:  Elihu Inselbuch, too.

23        THE COURT:  No, No.  Mr. Monk is going first and then you

24   are going to wind up, Mr. Inselbuch, because you're probably

25   senior in age.

1          MR. INSELBUCH:  Thank you.

2          MR. MONK:  Your Honor, I just would like to make the point

3     that, and this I think in part goes to what Mr. Bernick said, we

4     heard the other side arguing how they had narrowed the discovery

5     requests.  I would draw your attention to page ten of the fax,

6     the third request that was addressed to us which asks for all

7     documents and, as I understand it, I think there seems to be some

8     sense of the concept of limiting the definition of documents to

9     those things that are essentially non-public communications, if I

10    can describe it that way, being not something that was filed with

11    the court or circulated to counsel, that reflect, refer to or

12    relate to, which are very broad verbs, and then the subject that

13    they, of those verbs, the object of those verbs is this recusal

14    motion, and the petitions for writ, which essentially means

15    anything at all.  It seems to be a completely overbroad request.

16    So, even though they've only addressed three requests to us,

17    they've essentially asked for any document that might have

18    anything to do with everything before the Court that hasn't

19    already been turned over to them in some way, and I don't think

20    that anywhere comes close to narrowing anything as the Court had

21    requested.  That's my only additional comment, your Honor.

22         THE COURT:  Okay.  Mr. Inselbuch.

23         MR. INSELBUCH:  Your Honor, I would like to go back to

24    first principles for a moment.  Discovery is made available under

25    the Federal Rules under Rule 26.  It is not without limitation.

1      There are general limitations to discovery.  It's not just

2      anything that anybody can argue is relevant, but a court, ruling

3      on discovery, has to always balance the burden or the expanse of

4      the proposed discovery and whether or not weighs the likely

5      benefit taking into account the needs of the case, etc.  I'm

6      reading from Rule 26(b)(2).

7           With that that mind, the Court, and at least the District

8      Court here, has to take into consideration its own understanding

9      of what the issues are in front of it, its own understanding of

10     the history of the case, and, most importantly, the timetable

11     that has been imposed by the Third Circuit.  The Third Circuit

12     has said get this all done, this discovery, get it all done

13     basically in two weeks.

14          Now, that can't mean that we pretend here that discovery

15     is as if it were beginning in some huge anti-trust case that

16     would have seven or eight years before it would come to trial, if

17     ever.  The court is obligated to tool discovery here, weighing in

18     mind the burdens and the benefits of any potential discovery and,

19     in particular, the ability to get it done sensibly within the

20     time frame that's permitted.

21          Now, some of the advocates have argued about what limits,

22     if any, or unlimits, limits not set by the Third Circuit.  The

23     Third Circuit provided four potential areas where it suggested

24     discovery might shed light.  That's at page 26 of their Opinion,

25     and I would suggest to the Court that most of what has been

1    talked about today doesn't fall into any of these categories

2    unless you would say everything that anybody did in this case

3    falls into the first category, which would be the full extent of

4    the consultants' activities, because the second category, Messrs.

5    Gross and Hamlin's activities in G-1 Holdings, doesn't call for

6    discovery from any of the other parties in these other

7    bankruptcies.

8         The time limits of the petitions for Mandamus, the third

9    category, that has to do with our discovery, not their discovery;

10   and the fourth, the extent to which recusal, if warranted in one,

11   must be held to extend to the others, I don't see how any of this

12   discovery seeks information on the point.

13        Finally, there's nothing in this Opinion that talks about

14   Mr. Neal and his demands to have access to any and all records,

15   however difficult it might be to find them, however difficult it

16   might be to prove the privileged from the unprivileged that have

17   to do with ex parte conversations; that there is no number five

18   that says ex parte conversations with the Court, and I would

19   suggest to the Court in this context that the Court has an

20   obligation to tailor these discovery demands in a way that will

21   make them meaningful and that will get produced for the Court the

22   discovery record that will be relevant to the Court, this Court,

23   in deciding these motions in the first instance, and that's what

24   this Court, I submit with great respect, should be trying to

25   craft here.

1           THE COURT:  All right.  Thank you, Mr. Inselbuch.

2           MR. INSELBUCH:  May I make one comment about the discovery

3    directed to the advisers, simply because no one has been heard to

4    speak about that, and I would implore the Court to pay particular

5    attention there, to read one example of the demand number 22

6    calls for all documents that constitute, reflect or refer to

7    communications between you and any party.

8           Now, I can't imagine how that wouldn't just mean they

9    should deliver their file cabinets and I would ask the Court to

10   -- I don't speak to the advisers -- I would ask the Court to pay

11   careful attention to the demands that have been made on the

12   advisers given the time frame within which they have to produce

13   documents as well.

14         THE COURT:  All right.  Thank you, Mr. Inselbuch.  I think

15   I've afforded everybody an opportunity to be heard, everybody an

16   opportunity to reply.  My court reporter is starting to

17   demonstrate fatigue because we've been at this now for

18   approximately two hours.

19         What I'm going to do is I'm going to conclude this

20   telephone call at this time and we will be in recess until

21   quarter to two.  Excuse me one second.

22         Okay.  I'm sorry to have gone off the record.  We were

23   trying to consider procedural matters.  Everybody still there?

24   All right.  We'd gone off the record to try to consider

25   procedural matters as to not wanting to lose everybody who is on

1    this telephone call.

2          What we suggest is that the Court is going to disengage

3    this telephone call only for the Court until quarter to two,

4    because I have to give my reporter an opportunity to rest and

5    reload.  At quarter to two, the Court will dial back in and we'll

6    then review the discovery and order what discovery shall be

7    granted and what shall be denied.

8          Because of the time that this call has taken and by the

9    time that the Court finishes, I don't think we're going to have

10   time to get our Case Management Order out today that reflects the

11   views of the Court but the views of the Court that are given

12   today are in fact the Order of the Court and the Case Management

13   Order that will be put out on Friday is only reflective of what

14   we ordered here today, so, nobody should be sitting on their

15   hands saying, oh, we didn't get the written order.  This Order

16   that will be given orally is the Order of the Court.

17         Also, I want you to understand that the approval of any

18   requests for discovery today is without prejudice to any

19   objection to a particular request based upon privilege.  Also,

20   the Court will use the date for production of documents November

21   27, 2001 through the argument in the Circuit Court of Appeals on

22   December 12, other than Hamlin's participation in G-1, you may

23   use an earlier date.

24         We're now going to hang up and we'll be back in about --

25         MR. BERNICK:  Your Honor, before you hang up, this is

1    David Bernick and I just had one housekeeping matter to point out

2    for the record before your Honor rules, that is, that the

3    movants' requests for discovery that was filed by Owens Corning,

4    Grace would join in that request except that I noted that

5    although they include D.K. Acquisition in the request, they don't

6    include counsel for D.K. Acquisition and Grace would seek that

7    same discovery or the same scope of discovery with respect to the

8    Willkie, Farr firm which apparently represented D.K. Acquisition.

9         THE COURT:  I'll be prepared to deal with that at quarter

10   to two.  All right.  Court will be in recess until quarter to

11   two.

12        (A recess is taken.)

13        THE COURT:  Is everybody present that was a participant

14   earlier?

15        MR. ORSECK:  Yes, your Honor.

16        MR. BERNICK:  Yes, your Honor.

17        MR. MONK:  Your Honor, this is Charles Monk.  I wanted to

18   inform you that we were able to locate Judge Dreier, who has

19   joined into the call so he could hear the Court's advice

20   regarding the scope of discovery.  We have not been able to

21   locate, although we have left messages for, former judges Keefe

22   and Hamlin.

23        MR. SIEGEL:  Your Honor, this is Arnold Siegel at the

24   Robbins, Russell firm.  I just got a call from a lawyer

25   representing Judge Hamlin and left him the call-in number and the

1    code so he could dial in.

2        THE COURT:  Okay, fine.  The Court has for the past two

3    hours patiently listened to arguments as to the proposed document

4    production and given each participant the opportunity to speak

5    affirmatively as well as to reply.

6        It is the Opinion of the Court that the demands for

7    production of documents far exceed the spirit and the letter of

8    the Opinion issued by the Court of Appeals on December 18.  The

9    focus of that Opinion was the role of the advisers and the

10   structural conflict that was argued before them.  Their decision

11   to amplify the evidentiary record was in regard to that

12   structural conflict, as well as the ex parte communications that

13   occurred with the District Court.

14       The arguments I have heard today are far beyond the scope

15   of what was intended by the Court of Appeals and particularly

16   with regard to the time frame allotted by the Court of Appeals.

17   Indeed, this Court is sure that the Court of Appeals would be

18   amazed at the submissions before the Court today.

19       The distance between the positions of counsel and the

20   opinion of the Court of Appeals requires this Court to strike a

21   necessary balance between those two positions.  The Court will

22   not respond to the particular arguments as to whether they

23   possess merit or demerit, as the case may be.  The primary issue

24   for the Court is the alleged conflict in regard to the engagement

25   of the advisers as it relates to the interest of future

1    claimants.

2        I agree with those parties that the requested demand for

3    production is overly broad and that, as Mr. Inselbuch said, the

4    burdens of discovery far outweigh the benefits to be received if

5    all of the discovery requested were to be granted.  However,

6    notwithstanding the arguments of the opponents with regard to the

7    requested discovery, the Court is strongly inclined to grant as

8    much access to evidence as it can in good conscience while

9    remaining consistent with the tenor of the mandate of the Court

10   of Appeals and adhering to the extremely abbreviated time period

11   dictated by the Order of that Court.

12       That being said, the Ruling of the Court will be as

13   follows:

14       The first document request was addressed to Owens Corning

15   and to Saul Ewing, LLP.  That request is denied in toto.

16       The next document request was addressed to W.R. Grace and

17   Kirkland & Ellis.  Now, turning over to page four of that

18   document request, question number one, it says all documents that

19   reflect, refer to or relate to any communication concerning, and

20   I'm granting it only as to III, any of the five asbestos cases

21   between or among you and any of the following individuals:  Judge

22   Alfred Wolin, David Gross, C. Judson Hamlin, William Dreier, John

23   E. Keefe, Sr., and Francis McGovern.  It is denied as to G-1

24   Holdings and Combustion Engineering.

25       Number two, I am granting that request except for G-1

1    Holdings.  So, the initial "I" is denied.

2         Question number three, I'm going to grant that request as

3    follows, all documents that reflect, refer to or relate to any

4    draft opinions or memoranda of law transmitted by you to any of

5    the following individuals:  Judge Alfred Wolin, David R. Gross,

6    C. Judson Hamlin, William A. Dreier, John E. Keefe, Sr., and

7    Francis McGovern, in regard to the five jointly administered

8    cases only.

9         Number four is denied.

10        Number five I'm going to grant in this regard:  With

11   respect to the five asbestos cases, eliminating G-1 Holdings, any

12   documents that reflect, refer to or relate to any ex parte

13   communication, and then I'm going to add after that "with the

14   District Court concerning the subjects that are set forth in A, B

15   and C".

16        Number six is denied.

17        Moving on is the document request to David Gross, C.

18   Judson Hamlin, William Dreier, John E. Keefe, Sr., and Francis

19   McGovern.  I am now turning over to page five.  Number one is

20   granted except for Combustion Engineering.  I'm denying that

21   request as to Combustion Engineering.

22        Number two is granted.

23        Number three shall read as follows:  "All complete

24   unredacted time and billing records in connection with activities

25   performed by you in any of the five asbestos cases other than

1        that which has already been filed by the Court."

2              Excuse me one second.  I'm putting you on hold.  Hello.

3        Everybody back? I forgot to eliminate Combustion Engineering

4        there.  I'm eliminating Combustion Engineering.

5              Number four, I'm granting that but I'm eliminating

6        Combustion Engineering.

7              Number five I am granting in its entirety.

8              Number six is denied.

9              Number seven is the denied.

10             Number eight is denied.

11             Number nine -- excuse me one second.  I've got to put you

12       on hold.

13             Everybody back?  I changed my ruling on six.  Six shall

14       read that refers to Leticia Chambers and experts.  It will read

15       as follows, I am granting it as to all documents that reflect,

16       refer to or relate to the engagement of Dr. Leticia Chambers in

17       regard to the five jointly administered asbestos cases.

18             Number seven is denied.

19             Number eight is denied.

20             Number nine is granted.

21             Number ten is granted except for Combustion Engineering.

22             Number 11 is granted.

23             Number 12 is granted.

24             Number 13 is denied.

25             Number 14 is granted.

```
 1              Number 15  --

 2              MR. BERNICK:  I'm sorry.  With respect to 14, is that any

 3     bankruptcy case?  It's not just the five?

 4              THE COURT:  No.  You're correct.  It's the five

 5     administered cases.  It's limited to those, the five jointly

 6     administered cases.  Thank you.

 7              Number 15 is granted.

 8              Number 16 is granted except for Combustion Engineering.

 9              Number 17 is denied.

10              Number 18 is denied.

11              Number 19 is denied.

12              Number 20 is denied.

13              Number 21 is denied.

14              Number 22 is denied.

15              Number 23 is granted.

16         I'm now moving on to the document requests addressed to

17     McMonagle, Trafelet and Kaye Scholer.  They are all denied.

18         The requests for production of documents to Cooney &

19     Conaway, Motley Rice, Caplin & Drysdale, Weitz & Luxenberg and

20     Elizabeth Magner are denied in their totality.

21         I'm now moving to the Saul Ewing requests for document

22     production, and I'm moving to page two where it indicates the

23     movant entities that Owens Corning seeks document production

24     from.

25         It is granted as to Kensington International, Limited,
```

1    Springfield Associates, LLC, Elliott Management Corporation,

2    Elliott Associates, LP, Elliott International, LP, and Mark

3    Brodsky.

4         It is denied as to D.K. Acquisition Partners, Fernwood

5    Associates, denied as to Deutsche Bank Trust Company Americas and

6    denied as to USG Corp.

7         It is further denied as to the Official Committee for

8    Unsecured Creditors in the Owens Corning bankruptcy proceeding.

9         It is denied as to the Official Committee for Unsecured

10   Creditors in the W.R. Grace bankruptcy proceeding.

11        It is also denied as to the Official Committee of

12   Unsecured Creditors in the USG Corporate bankruptcy proceeding In

13   Re Armstrong World Industries, Inc.

14        It is granted as to certain creditors in the Owens Corning

15   bankruptcy proceeding.

16        It is granted as to Credit Suisse First Boston as agent

17   for the bank group.

18        It is granted as to J.P. Morgan Chase.

19        It is granted as to Kramer, Levin, Naftalis & Frankel.

20        It is granted as to Davis Polk & Wardwell.

21        And it is granted as to Stroock, Stroock & Lavan.

22        Now, going on to documents requested.  Number one.

23        MR. BERNICK:  Excuse me, your Honor.  I hate to interrupt.

24   I just wanted to point out --

25        THE COURT:  Yes.  Go ahead please.

1          MR. BERNICK:  -- we wanted to supplement this to include

2     Mr. Mancino's firm or his client because, otherwise, we have no

3     way of getting the notice issued with respect to the motion of

4     Grace.

5          MR. MANCINO:  I understood your Honor had just denied

6     discovery.

7          MR. BERNICK:  It may very well have been that he did but

8     because that was not set out in writing here but, rather, it was

9     set out by me orally before we broke.

10          THE COURT:  But I did deny it as to D.K. Acquisition

11     Partners, Fernwood Associates, Deutsche Bank Trust Company

12     Americas.  Aren't those Mr. Mancino's clients?

13          MR. BERNICK:  Yes.

14          MR. MANCINO:  Yes, they are, your Honor.

15          MR. BERNICK:  But that just underscores the importance of

16     our request then for discovery from Mr. Mancino's firm.

17          THE COURT:  Well, you haven't convinced me at this point.

18     I'll give you the opportunity at some time to communicate with

19     the Court on notice to all counsel, but as of now the answer is

20     no.

21          All right.  As to the documents requested, number one is

22     granted.

23          Number two is granted.  Number three is granted. Number

24     four is granted. Number five is granted.  Number six is granted.

25          Number seven is granted.  Number eight is granted. Number

1    nine is granted. Number 10 is granted.

2            Number 11 is granted.  Number 12 is granted.  Number 13 is

3    granted.

4            Number 14 is denied. Number 15 is granted. Number 16 is

5    denied.

6            I believe I've taken care of all of the demands for

7    production of documents.

8            We're going to cease the phone call at this time.  This is

9    the order of the Court.  It will be reduced further to a writing

10   to be issued by the Court on Friday next.

11           MR. BERNICK:  Your Honor, just for point of

12   clarification, I don't believe that your Honor has addressed any

13   of the instruction, that is, that there were representations this

14   morning that no privileged documents were called for and, yet, I

15   believe that there were further representations that there's the

16   expectation that they'll all be logged.

17           The logging requirement and the request for privileged

18   documents is of tremendous consequence given the time frame here.

19   The same would apply to materials reflecting the conflict of

20   settlement discussions which we would argue are privileged.

21           What is your Honor's determination with regard to

22   privileged and settlement documents information?

23           THE COURT:  I would call upon the parties to hold a

24   discussion between themselves out of the presence of the Court

25   wherein perhaps they could in a seriotim list list the number of

1    documents without the production of the document that someone

2    could review to see if it's really relevant to what the discovery

3    necessary is to fulfill the mandate to the Court of Appeals.

4         MR. BERNICK:  Are you suggesting that we should kind of

5    work this out informally?

6         THE COURT:  That's correct.

7         MR. BERNICK:  I think we should try to do that on the

8    Friday call.

9         THE COURT:  Okay.

10        THE COURT:  Steve Neal, your Honor.  Just for

11   clarification, I do persist in saying that if we're not able to

12   work it out, the parties should log any documents that are being

13   withheld on privilege grounds so that --

14        THE COURT:  Well, you know, Mr. Neal, I tried to send a

15   message to everybody and the message was, as Mr. Inselbuch said,

16   you have to balance the burden of discovery against the benefit

17   and all privileges are going to be preserved.

18        JUDGE DREIER:  Before you hang up, this is Judge Dreier.

19   There were references to 23 paragraphs, certain items granted,

20   certain items denied.  I don't know, can't speak for the other

21   members of the committee, but I don't have copies of the amended

22   requests that relate to these so these paragraphs will mean

23   anything and I have today and tomorrow basically to go through --

24        THE COURT:  I'll handle that, Judge Dreier.  Mr. Monk,

25   will you fax that to him forthwith?

 1          MR. GOLDSTEIN:  And to Saiber, Schlesinger.

 2          THE COURT:  Okay, fine.

 3          MR. MONK:  Thank you.  We'll be happy to do so.  Let me

 4     just give my telephone number to the people that I am to fax it

 5     to and if you'll call me after this call is over, I'll be happy

 6     to arrange that.

 7          THE COURT: What was the number?

 8          MR. MONK:  410-332-8668.

 9          JUDGE DREIER:  Who am I speaking to?

10          MR. MONK:  Charles Monk, counsel for Owens Corning .

11          THE COURT:  All right.

12          MR. BERNICK:  Your Honor --

13          THE COURT:  Who is this?

14          MR. BERNICK:  This is David Bernick and I'm sorry to be --

15     I was reading off the -- I'm sorry.  Never mind.

16          THE COURT:  All right.  I want to wish everybody a happy

17     holiday, whatever your persuasion.  I thank you for your

18     participation in this telephone call and we'll look to the

19     resolution of these matters.

20          THE COURT:  Thank you.  The demands for admissions

21     submitted by the parties are hereby made part of the record.

22          (Whereupon the telephone conference call is adjourned.)

23

24

25