**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 01-01139 (JKF) |
| W.R. GRACE & CO., et al., | ) | (Jointly Administered) |
| | ) | **Objection Deadline: January 9, 2004 at 4:00 p.m.** |
| | ) | **(extended)** |
| Debtors. | ) | **Hearing Date: January 26, 2004 at 12:00 p.m.** |

**JOINDER IN W.R. GRACE'S MOTION REQUESTING AN ORDER FINDING
COUNSEL FOR GERARD IN CONTEMPT OF COURT [D.I. 4859]**

Maryland Casualty Company ("Maryland Casualty"), by and through its undersigned counsel, files the following joinder to the Motion ("Contempt Motion") of debtor W.R. Grace & Co. ("Grace") requesting an order finding counsel for Gerard in contempt of Court, and requests that this Court direct the withdrawal of the Re-Initiation Pleadings[1], and in support thereof states as follows:

## I.    INTRODUCTION

Both the automatic stay of 11 U.S.C. §362 and this Court's Preliminary Injunction remain in full force and effect, unaltered by the July 16, 2003, Order of the United States District Court for the District of Delaware ("District Court").  The Preliminary Injunction expressly enjoins all actions against Maryland Casualty "that arise from alleged exposure to asbestos indirectly or directly caused by Debtors ...."  (Preliminary Injunction ¶ at pp. 3-4).

These facts notwithstanding, on November 21, 2003, Carol Gerard[2] filed two pleadings (jointly "Re-Initiation Pleadings") in the Circuit Court for Baltimore City Case No. 24-X-001554

---

[1] Capitalized terms defined below.

[2] A Notice of Substitution of Parties was also filed designating Tami A. Broden as the Personal Representative of the Estate of Carol Gerard.  For purposes of consistency, the case is still being referred to as "Gerard".

("Baltimore Litigation"): (i) an Amended Complaint adding CNA Financial Corporation, Continental Casualty Company and Transportation Insurance Company ("CNA") as a new party; and (ii) a Motion Requesting Entry of Scheduling Order, seeking to establish a scheduling order and proceed against the defendants in that case, including Maryland Casualty, Grace, and now CNA.

Counsel for Gerard and their respective firms, Brian C. Parker of Parker, Dumler & Kiely, LLP and Jon L. Heberling of McGarvey, Heberling, Sullivan & McGarvey, P.C. ("Contemnors") were, and are, well aware that the Automatic Stay and the Preliminary Injunction prohibited the filing of the Re-Initiation Pleadings. Indeed, the blatant nature of Contemnors' actions is as offensive as the actions themselves. Accordingly, the Contemnors should be found in contempt of Court and required to withdraw their Re-Initiation Pleadings.

Maryland Casualty joins with and fully supports Grace's Contempt Motion. However, Maryland Casualty believes that the relief sought therein falls short. In its Contempt Motion, Grace requests that this Court order that the "Baltimore Litigation is stayed in its entirety pending resolution of the Debtors' Third Circuit Appeal." Regardless of the outcome of that appeal, the Preliminary Injunction will remain unaltered until further action, if any, by this Court. Therefore, the Baltimore Litigation is stayed unless the Preliminary Injunction itself is altered or amended. Any order granting the Contempt Motion should so reflect.

## II.    PROCEDURAL HISTORY

On April 2, 2001, Grace filed a petition for Chapter 11 bankruptcy protection in this Court. Grace also filed a complaint which sought to preliminarily enjoin asbestos-related claims against affiliates and insurers of Grace. A temporary restraining order was issued by this Court on April 2, 2001. On May 3, 2001, this Court issued an order granting Grace's Motion for a

Preliminary Injunction Staying All Asbestos-Related and Fraudulent Transfer Claims Against

Affiliated Entities ("Initial Preliminary Injunction").  The Initial Preliminary Injunction stayed

prosecution of all asbestos-related actions against Grace's affiliated entities where the alleged

exposure to asbestos was allegedly caused by Grace directly or indirectly.  The Initial

Preliminary Injunction specifically covered collateral litigation against third parties, like

Maryland Casualty, where the actions were clearly derivative of actions against Grace and which

would have an effect on the Grace estate.

On August 22, 2001, in violation of the Initial Preliminary Injunction, Gerard filed a

Notice of Deposition *Duces Tecum* for the Custodian of Records for Grace requesting that Grace

produce documents relevant to Gerard's claims against Maryland Casualty.  Grace's counsel

responded by stating that all discovery against Grace was stayed, and that the response to

discovery could not be provided unless the stay was lifted.  This Court, on January 22, 2002,

issued an Order Granting a Modified Preliminary Injunction ("Preliminary Injunction") at the

request of Grace.  In that Order, this Court defined "actions" to include "pending actions and

actions that have not been filed or are not pending as of the date of entry of this Order as follows:

a) against Affiliated Entities that arise from alleged exposure to asbestos indirectly or directly

allegedly caused by debtors; or b) for which there may be coverage under the Insurance Policies

...."  Maryland Casualty was listed as an Affiliated Entity for purposes of the Preliminary

Injunction which had the effect of staying all actions against Maryland Casualty.  Maryland

Casualty was included in the stay based upon the impact that cases such as the Gerard matter

would have on the debtor's rights, liabilities, options and the handling and administration of the

debtor's estate.  On February 4, 2002, Gerard filed a "Motion to Clarify the Scope of the

Preliminary Injunction or, in the Alternative, to Modify the Preliminary Injunction." ("Motion to Modify the Preliminary Injunction").

On June 20, 2002, this Court issued an Order Denying Gerard's Motion to Modify the Preliminary Injunction ("June 20, 2002 Order").  Thereafter, Gerard filed a Motion for Reconsideration, which was denied at an August 26, 2002 hearing.  Gerard then filed a Notice of Appeal to the District Court on October 18, 2002 appealing the June 20, 2002 Order and the Order Denying the Motion for Reconsideration.  On July 16, 2003, the Honorable Alfred M. Wolin, United States District Court Judge, issued a Memorandum Opinion and Order vacating this Court's June 20, 2002 Order, and remanding the matter to this Court for further proceedings.  Maryland Casualty and Grace filed timely Notices of Appeal to the United States Court of Appeals for the Third Circuit on August 15, 2003.  The appeal remains pending.

Although the District Court vacated the Court's June 20, 2002 Order, no further proceedings have occurred as the matter is now on appeal.  Nonetheless, the Preliminary Injunction and the Automatic Stay still stand, which clearly prohibit actions against Grace and its affiliated insurance companies, Maryland Casualty and CNA.   The underlying Preliminary Injunction was never appealed.

## II.    ARGUMENT

### Gerard's Actions in the Baltimore Litigation Are in Violation of the Preliminary Injunction and Automatic Stay and Counsel for Gerard Should be Found in Contempt of Court

The District Court's Order vacated and remanded only the June 20, 2002 Order denying Gerard's Motion to Modify the Preliminary Injunction.  It neither ruled upon nor altered the underlying Preliminary Injunction, as that was not properly before the District Court.  Significantly, this Court's ruling on the Motion to Modify the Preliminary Injunction was not

reversed.  Nothing in the District Court's order changes the status of the stay.  As such, the Preliminary Injunction still stands.   The Contemnor's Motion for Entry of a Scheduling Order is in direct violation of the stay entered by this Court.  The Motion is an attempt to circumvent the well-established law regarding bankruptcy stays and misstate to the Baltimore, Maryland Circuit Court that the status of the stay has somehow been changed by this Court – which it has not.  See Celotex Corp. v. Edwards, 514 U.S. 300 (1995) (holding that Respondents must obey the Bankruptcy Court's injunction because of the well-established rule that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order).  This Court has been unable to act upon the remand because the matter is on appeal; therefore no modification has occurred.

Given that the Contemnors chose to intentionally proceed in the Baltimore Litigation with knowledge and notice of the status of the stay and the procedural posture of this Court's orders, such action was a willful violation of valid court orders.  See, e.g., Wessley Jessen Corp. v. Bausch & Lomb, Inc., 256 F.Supp.2d 228 (D.Del. 2003) (indication that to prevail on a motion for civil contempt there must be a valid court order that the contemnor had knowledge or notice of and which he disobeyed).  On August 25, 2003, this Court held a hearing to discuss what, if anything, would need to be done given that the matter was on appeal to the United States Court of Appeals for the Third Circuit.  At that hearing, this Court indicated that it did not "have jurisdiction to do anything while the matter is on appeal."  (See Exhibit 1 Hearing Transcript at 7).  The Court additionally responded to Gerard's counsel's indication of attempting to seek trial in the state court where litigation is pending by stating that it did not "know how the state is going to have any better jurisdiction over it than the bankruptcy court does while the order is on

appeal." (See Exhibit 1 Hearing Transcript at 10). The Court further stated to counsel that should plaintiff proceed in the state court that it was "sure since I'm the one who entered the injunction, I'll be hearing from you on motions for contempt." (See Exhibit 1 Hearing Transcript at 10).

A representative of the Contemnors was present and participated in this discussion. As a result, their subsequent actions were done knowingly and violated the Preliminary Injunction by pursuing claims against Maryland Casualty, CNA and Grace. Further, because the Re-Initiation Pleadings implicate Grace, their filing violated the automatic stay. 11 U.S.C. § 362(h). Section 362(h) of the Bankruptcy Code provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). The Third Circuit has stated that "although Section 362(h) refers to an individual, the section has uniformly been held to be applicable to a corporate debtor." See Cuffee v. Atl. Bus. & Cmty. Dev. Corp. (In re Atl. Bus. & Cmty. Corp.), 901 F.2d 325, 329 (3d Cir. 1990) (citing Budget Service Co. v. Better Homes of Va., 804 F.2d 289, 292 (4th Cir. 1986)). Bankruptcy courts have defined "willful" as used in the Bankruptcy Code as an intentional or deliberate act done with knowledge that the act is in violation of the stay. See Cuffee, 901 F.2d at 329 (the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded) (citing In Re Bloom, 875 F.2d 224, 227 (9th Cir. 1989); In Re Tel-A-Communications Consultants, Inc., 50 Bankr. 250, 254 (Bankr. D.Conn. 1985); In Re

Forty-Eight Insulations, Inc., 54 Bankr. 905, 909 (Bankr. N.D.Ill. 1985)).  Additionally, if the

conduct was in bad faith, punitive damages may be awarded.  Id.

    Grace has indicated throughout this process that if the Baltimore Litigation is allowed to

proceed against Maryland Casualty, they will feel the need to defend themselves.  Preserving the

status quo is essential for the reorganization process.  If the Baltimore Court were to move

forward with a scheduling order which is adverse to the stay and injunction, Grace would

experience an onslaught of discovery requests from Gerard, Maryland Casualty and CNA which

would significantly divert time and resources that are required for the orderly processing of the

debtor's estate.  Given that Gerard's allegations against Maryland Casualty arise from alleged

exposure to asbestos from Grace's mining and milling operations and that Maryland Casualty

was not in control of the Grace site and only had occasional contact with the Libby Mine as its

workers' compensation carrier, Grace would be forced to devote significant energy in the

Baltimore Litigation.  This Court determined in the Preliminary Injunction that lawsuits that

involve asbestos-related claims relating to Grace's actions or inactions would be enjoined against

Grace, its affiliates and affiliated entities such as Graces' insurers, which include Maryland

Casualty and CNA.  As such, Maryland Casualty was included in the stay based upon the impact

that cases such as the Gerard matter will have on the debtor's rights, liabilities, options and the

handling and administration of the debtor's estate.

    Additionally, if the Baltimore Litigation proceeds at this point, the fact remains that the

Contemnors never appealed the Denial of the Motion to Clarify the Preliminary Injunction as to

CNA.  As a result, any action that would occur in the Baltimore Litigation would produce

inconsistent results as to the meaning of this Court's Preliminary Injunction and the District

Court's Order and likely effect the stages and processes involved with efficient discovery

processes.  The Court should not lose sight of the fact that CNA will be intimately involved and

needs to be a participant in any ensuing litigation in the Baltimore, Maryland or Montana cases.

Pending resolution of the Third Circuit Appeal, this discrepancy cannot be addressed as the

Court is unable to hold the "further proceedings" required in the District Court Order.

## IV.    CONCLUSION

For all the reasons stated, Maryland Casualty respectfully requests this Court enter an

order finding the Contemnors in contempt of Court and ordering the Contemnors to immediately

withdraw their Amended Complaint and their Motion Requesting Entry of Scheduling Order.


Dated:  January 13, 2004                    CONNOLLY BOVE LODGE & HUTZ LLP

                                            **/s/ Jeffrey C. Wisler**
                                            Jeffrey C. Wisler, Esquire (#2795)
                                            1220 Market Street
                                            P.O. Box 2207
                                            Wilmington, DE  19899
                                            (302) 658-9141 Telephone
                                            (302) 658-0380 Facsimile

                                            OF COUNSEL:

                                            Edward J. Longosz, II
                                            Laura G. Stover
                                            Eckert Seamans Cherin & Mellott, LLC
                                            1250 24th Street, N.W., Suite 700
                                            Washington, DC  20037
                                            (202) 659-6600 Telephone
                                            (202) 659-6699 Facsimile

                                            Attorneys for Maryland Casualty Company

#309141v.2