# EXHIBIT G

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| | Delaware Bankruptcy |
| OWENS CORNING, et al. | Case Nos. 00-3837 to 3854 (JKF) |
| | Jointly Administered |
| Debtors. | |
| | **AFFIDAVIT OF C. JUDSON HAMLIN** |

C. Judson Hamlin, being of full age, upon his oath deposes and says:

1.       I make this affidavit pursuant to the instruction contained in United States District Judge Alfred M. Wolin's October 28, 2003 Case Management Order and Order to Show Cause Concerning Motion to Recuse Alfred M. Wolin, U.S.D.J.("**Case Management Order**").

**Personal Background**

2.       I am an Attorney at Law of the State of New Jersey in good standing and currently Of Counsel to the law firm of Purcell, Ries, Shannon, Mulcahy & O'Neill.   The curriculum vitae attached as **Exhibit 1** accurately sets forth my professional experience.   The only item missing is my recent appointment by the Supreme Court of New Jersey to serve on the Judicial Performance Commission in which capacity I am required to audit, evaluate and sometimes counsel sitting trial court judges and report to the Court.

3.       As set forth in my curriculum vitae, I served as a judge on the Superior Court of New Jersey from 1978 through 1998.  Due to my experience gained through years of presiding over complex mass tort cases, during my tenure virtually all New Jersey mass tort litigation was transferred to Middlesex County for pre-trial management under my supervision.

4.       Upon my retirement from the bench I joined the Purcell, Ries, Shannon, Mulcahy & O'Neill firm.  Pursuant to the New Jersey Court Rules I am not permitted to actively appear in the New Jersey state courts while receiving retirement benefits.  At the Purcell Ries firm I have

maintained what may be described as an independent ADR practice. With rare exception I do not service the firm's client base, although I do, from time to time, counsel members and associates of the firm on procedural and substantive law issues. My compensation is not dependent upon or related to the firm's income from its clients.

5.      Purcell, Ries has been active in defending asbestos claims on behalf of manufacturers as insurance defense counsel for approximately 20 years. I have never rendered any services in connection with such work. I have never represented a claimant or defendant in asbestos litigation either in my private practice before taking the bench or in private practice since leaving the bench other than my appointment in G-I.

### Appointment in G-I Holding Inc. Bankruptcy Case

6.      On October 10, 2001 United States Bankruptcy Judge, Rosemary Gambardella appointed me the Legal Representative of Present and Future Holders of Asbestos-Related Demands in the G-I Holdings Inc. bankruptcy case pending in the United States Bankruptcy Court for New Jersey.   In that capacity I represent a class of unknown individuals holding future claims against the debtor. The future claimants are currently unidentifiable because they have not yet manifested asbestos related injuries.

7.      In December, 2001 I selected Kevin F. Irwin of the firm of Keating, Muething & Klekamp, P.L.L. of Cincinnati, Ohio to be my principal bankruptcy counsel. Mr. Irwin had been heavily engaged in bankruptcy practice generally, and in asbestos bankruptcy cases specifically, for a significant part of his career. His competence and integrity are matters of common knowledge in the asbestos/bankruptcy litigation community. Because Mr. Irwin's firm is out of state, I decided to engage New Jersey counsel to act as Mr. Irwin's sponsor, assist him with local practice, and when occasion demanded, to act as second chair on bankruptcy matters. I selected

David R. Gross as local counsel because of his standing in the federal bar and his long experience in asbestos matters, including, his lengthy representation of corporate defendant Johns-Manville in asbestos litigation and the establishment and structuring of the original settlement trust in that case.

8.      I caused applications to be filed with the Bankruptcy Court to approve my retention of Messers. Irwin and Gross in January, 2002.  In connection with my application to retain Mr. Gross an affidavit was submitted by him wherein he specifically disclosed his appointment as an advisor to United States District Judge Alfred M. Wolin discussed *infra*.  My application to retain Mr. Gross as local counsel met with no objection and was promptly approved by the Bankruptcy Court.  My application to retain Mr. Irwin met with an objection by the debtor based on alleged conflicts of interest.  The Bankruptcy Court held a hearing on that objection, determined that no conflicts existed, and granted my application to retain Mr. Irwin.

9.      My appointment as the Legal Representative in the G-I Holdings Inc. case and the subsequent appointment of both my counsel were all done pursuant to application, notice, hearing, and order of the Bankruptcy Court.  All these appointments are a matter of public record in that bankruptcy case and was a matter of common knowledge in the asbestos litigation community.

**Appointment as Court Advisor**

10.     In December, 2001 United States District Judge Alfred M. Wolin announced his intention to appoint a committee of expert advisors with broad experience in mass tort litigation to assist him in the management of five asbestos cases then pending in the United States Bankruptcy Court in Delaware.  The G-I Holdings Inc. case  was not among those Delaware cases.  On December 28, 2001 Judge Wolin issued his order appointing the advisors.  Mr. Gross

and I were among the five advisors along with retired Appellate Division Judges Keefe and Dreier and Professor Francis McGovern.

11.    My assignments as a Court Appointed Advisor have consisted of reviewing appeals from the Delaware Bankruptcy Court and submitting a draft opinion in each of the five cases. My role was akin to that of a magistrate in providing recommended findings of fact and conclusions of law to a district judge. My assignments came from Judge Wolin's staff and on no occasion did I discuss the assignments or the draft opinions directly with Judge Wolin. I understand that Judge Wolin has used a form of my drafts in some instances and in other instances, he has not. All my activities as an advisor to the Court are reflected in the fee applications filed with the Court. I have not rendered any service as a court advisor since April 2003. No objections have ever been filed to any of my fee applications.

12.    Pursuant to the Case Management Order, I have (a) reviewed the Motion to Recuse the Honorable Alfred M. Wolin, United States District Judge, from Further Participation in These Jointly Administered Cases (**"Motion to Recuse"**) and the affidavits filed in support of the Motion to Recuse and (b) reviewed my time records recording time spent in execution of the duties set forth in the December 28, 2001 Order appointing the five advisors and all other activities whereby I provided or any other assistance to the Court.

13.    Pursuant to the Case Management Order, and the limited waiver of judicial privilege contained therein, I hereby disclose that I was given one assignment related to the above captioned case. That review was of an appeal from the Bankruptcy Court's order that dealt with an appeal by Plant Insulation and The U.S. Trustee from the bankruptcy court's denial of their application to appoint an examiner pursuant to 11 U.S.C. § 1104(c)(2). Pursuant to that assignment I prepared the draft opinion attached as **Exhibit 2**. I later learned that Judge Wolin

4

did not use this draft opinion. As was our practice, I did not discuss the draft opinion with Judge Wolin either before or after its submission. Moreover, I did not discuss any substantive issues in the above captioned case with Judge Wolin at any time. Outside of this instance, I have not provided any advice or assistance to Judge Wolin on any matter pending, or likely to arise, in the above-captioned case.

14.    I have never discussed any substantive or procedural issues in the G-I Holdings Inc. bankruptcy case with Judge Wolin or any of the other court advisors, except of course my counsel, Mr. Gross.

15.    The Motion to Recuse quotes from pleadings and argument in the G-I Holdings Inc. bankruptcy matter filed by my counsel on my behalf as the Legal Representative. Those pleadings were drafted principally by Mr. Irwin's office and reflect the advocacy of counsel. No one in Mr. Irwin's office participated in or was privy to any of my activities as an advisor to Judge Wolin.

16.    Nothing herein is intended or should be construed as a waiver of the attorney-client privilege that attaches to all communications between me and my counsel in the G-I Holdings Inc. bankruptcy proceedings.

C. JUDSON HAMLIN

Dated: November 14, 2003

JANICE R. PAQUETTE
Notary Public of New Jersey
My Commission Expires Jan. 24, 2005

5

Exhibit 1

# C. Judson Hamlin

## Of Counsel

C. Judson Hamlin received his B.A. degree from Providence College in 1958. After military service Mr. Hamlin entered New York University School of Law in January 1961. He received his J.D. degree in June 1963 and commenced a judicial clerkship with the Honorable David D. Furman of the Superior Court of New Jersey. Mr. Hamlin was admitted to the New Jersey Bar and the Federal District Court Bar in 1963. He was later admitted to practice before the United States Supreme Court in 1968.

Following his clerkship Mr. Hamlin became involved in an active civil trial practice in tort, contract and land use matters. He served as counsel to the East Brunswick Planning Board for four years. After becoming a partner in the New Brunswick law firm of Hicks, Kuhlthau, Nagle and Hamlin, Mr. Hamlin appeared in banking matters before the New Jersey Department of Banking and the United States Controller of Currency.

In 1967 Mr. Hamlin was appointed to lead the first public defender program in Middlesex County. He served as Deputy Public Defender in charge of that office from 1967 to 1971 supervising attorneys, investigators and support staff. During that term Mr. Hamlin personally tried over 40 criminal cases to conclusion including seven first degree homicide indictments.

Following his service with the Public Defender Mr. Hamlin was appointed First Assistant Prosecutor of Middlesex County in 1971. In that capacity he led major investigations and personally tried high profile indictments and defendants. In 1974, Governor Brendan Byrne appointed Mr. Hamlin to be the Middlesex County Prosecutor in which position he served until 1978. During that tenure Mr. Hamlin conducted major public corruption probes and supervised a staff of thirty-five Assistant Prosecutors, fifty Detective/Investigators plus support staff. His responsibilities included budget management, media relations and coordination with State and Federal law enforcement agencies.

**Education:**
Providence College
    (B.A., 1958)
New York University
    School of Law
    (J.D., 1963)

**Admitted to Practice:**
U.S. District Court
    District of New Jersey
U.S. Supreme Court
Supreme Court
    of New Jersey

Governor Byrne appointed Mr. Hamlin to the Superior Court bench in 1978. While on the bench he served in both the Criminal and Civil Divisions. He concluded his judicial service as Presiding Judge of the Civil Division of Middlesex County for two and one half years and as Presiding Judge of the Chancery Division for two years. Judge Hamlin is the author of several published opinions.

During his judicial tenure, Mr. Hamlin was assigned statewide responsibility for complex Mass Tort matters. He managed statewide litigation involving breast implants, Norplant contraceptive devices, the Global Landfill, large scale environmental claims, the Durham Woods Gas pipeline explosion cases, and complex coverage actions. He presided over and successfully completed the Prudential Brokerage Class Actions filed in New Jersey. While on the bench Mr. Hamlin sat on several New Jersey Supreme Court Committees and was appointed by the late Chief Justice Robert Wilentz in 1993 to be the sole New Jersey representative on the Mass Tort Litigation Committee of the National Conference of State Chief Justices. Most recently he was appointed by Chief Justice Deborah Poritz to chair the Mass Tort Advisory Committee of the New Jersey Supreme Court.

Mr. Hamlin has been continuously involved in continuing legal education. As prosecutor, he was a frequent lecturer on criminal investigations and trial practice. On the bench, he was selected by his colleagues to lecture at the New Jersey Judicial College on managing complex litigation and environmental damage claims. He has lectured on numerous occasions for the Institute for Continuing Legal Education on a broad range of civil law topics. He continues to lecture on ADR subjects at the invitation of professional organizations.

Since his return to private practice Mr. Hamlin has been engaged in a broad practice area. In addition to a traditional ADR practice Mr. Hamlin has been selected to act as special master in a complex litigation involving mass torts and large scale coverage actions brought by Fortune 500 companies. He has successfully completed assignments as an allocation master in multi year, multi party coverage matters. Mr. Hamlin also served as Special Labor counsel to the County of Middlesex negotiating contracts with public employee unions and supervising the grievance/disciplinary system.

In 1999 Judge Louis Bechtle, of The United States District Court for the Eastern District of Pennsylvania appointed Mr. Hamlin to be the Interim Claims Administrator of the National Diet Drug Class Action Settlement Trust. Upon judicial approval of the Class Action Settlement Mr. Hamlin was appointed as Executive Director of Claims Administration for the Trust in which capacity he served through 2001. In that capacity he formulated claims procedures, supervised staff and interacted with the Courts, counsel for the parties and a 400,000 claimant base. At the conclusion of his tenure the Trust had paid out over $500 million in compensation as well as providing free Transthoracic Echocardiograms for 125,000 claimants.

After completing his Diet Drug assignment Mr. Hamlin returned to the Purcell firm. He continues to engage in an active ADR practice. Mr. Hamlin has been appointed by the Honorable Rosemary Gambardella, Chief Judge of the New Jersey Bankruptcy Court, to act as the Representative of Future Claimants in the G-I, asbestos Chapter XI matter. In addition, Mr. Hamlin's long involvement in mass torts has led to his appointment by Judge Alfred Wolin of the United States District Court for New Jersey to act as a special consultant/case manager in six asbestos chapter XI bankruptcy filings assigned to Judge Wolin by Chief Judge Becker of The United States Court of Appeals.

Mr. Hamlin was appointed as Compliance Master by the Superior Court of New Jersey in 2002 for the Cooper Tire $2 Billion national class action settlement which resolved consumer claims and reconfigured manufacturing, inspection and warranty practices nationwide. His duties include monitoring compliance, interpreting requirements of the settlement agreement and reporting to the Court.

In 2002 New Jersey Attorney General David Samson selected Mr. Hamlin to oversee the New Jersey Pension Fund's efforts to recoup its multi billion dollar losses. In that capacity he coordinated the selection of securities litigation firms retained by the State and supervised multi jurisdiction litigation in which the State of New Jersey became lead party in the five national class action filings. He currently continues in that assignment.

Mr. Hamlin is a member of the Middlesex County Bar Association, the New Jersey State Bar Association, The Association of the Federal Bar and the American Bar Association. He is a Life Fellow of the American Bar Foundation. He currently serves as a trustee of the Middlesex County Bar Association, the Trial Attorneys of New Jersey Association and is a member of the Vicinage VIII Ethics Committee upon appointment of the Supreme Court.

Exhibit 2

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

In re:                                          Chapter 11

OWENS CORNING, et al.                           Case No. 00-03837 (JKF)

                                    Debtors,

                                                Civil Action No.: 02-281 (AMW)
PLANT INSULATION COMPANY

                        Plaintiffs/Appellants,

FIBREBOARD CORPORATION, et al.

                        Defendant/Appellee

---

## OPINION

WOLIN, District Judge

      This is an appeal by the Plant Insulation Company (Plant) joined by The United States

Trustee (UST) from a denial by the United States Bankruptcy Court for the District of Delaware,

Fitzgerald, J. of an application by Plant to appoint an examiner pursuant to 11 U.S.C. § 1104

(c)(2) in this Chapter 11 matter.  Appeal to the District Court is made as provided by 28 U.S.C. §

158 (a).  For the reasons set forth below, the order of the Bankruptcy Court is reversed and

remanded for action consistent with this opinion.

## BACKGROUND

      The appeal is addressed to this court by virtue of assignment by the United States Third

Circuit Court of Appeals of several Chapter 11 filings arising out of alleged asbestos tort

liability. Previous proceedings resulted in this court retaining jurisdiction over certain issues and returning the remaining issues to the Bankruptcy Court for action.

In the face of ever increasing claims arising from alleged asbestos exposure, Owen Corning (OC) and 17 of its domestic subsidiaries, including the Fibreboard Corporation (Fibreboard), filed a Chapter 11 petition in the District of Delaware. Plant had for several years been a California distributor/retailer of fibreboard's asbestos containing products. Like most asbestos manufacturers and distributors, Plant itself was exposed to significant asbestos liability claims and had been seeking indemnification from Fibreboard in the California State Court system.[1] The validity and success of such efforts received considerable attention in the filings before this court. The substantive merits of those competing claims need not be determined here for reasons discussed below. The filings of the OC petition on October 5, 2000 halted further litigation of those issues in the California Superior Court. Plant is a Fibreboard only creditor in this action. In addition to the debtor is possession, appropriate committees were before the court including the Unsecured Creditors, Asbestos Claimants and the Representative of Future Claimants.

Plant's application to form an Official Fibreboard only Creditors committee was rejected by the UST. It may be inferred that the UST concluded that all existing committees would adequately protect all asserted interests. Judge Fitzgerald initiated an intercreditor disclosure process. Plant, not having an official committee designation, asserted its status as a Party-In-Interest. On September 28, 2001, Plant filed a motion for an order appointing an examiner to

---

[1] Plant Insulation co. v. Fibreboard Corp., 224 Cal. App. 3rd 781 (1990), Plant Insulation Co. v. Fibreboard Corp., No. A06116 (Cal. App., July 1, 1994, Plant Insulation Co. v. Fibreboard Corp., No. 759066 3 (Cal. Superior Ct. July 2, 2000)

investigate the Fibreboard Corporation claims history under 11 U.S.C. § 1104 (c). The pertinent part of the code involved indicates that if no trustee has been appointed "**** after notice and hearing, the court shall order the appointment of an examiner ***if:

    (1)    such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or

    (2)    the debtor's fixed, liquidated, unsecured debts, other than debts for goods services, or taxes, or owing to an insider, exceed $5,000,000."

No party seriously challenges the assertion that non trade indebtedness exceeds $5,000,000. The UST joined Plant's motion on the limited grounds that the $5,000,000 threshold of 11 U.S.C. § 1104 (c)(2) was achieved thus making the appointment of an Examiner mandatory. The UST expressly took no position on Plant's other allegations or arguments. OC, the Asbestos Claimant's Committee, the Representative of Future Claimants and the Unsecured Creditors Committee opposed the application. Following briefing and argument, Judge Newsome denied the application. Appellants here argue that the provisions of U.S.C. § 1104 (c)(2), in the absence of a trustee, is mandatory upon a showing of non-trade liquidated indebtedness in excess of $5,000,000.

The matter was originally argued on October 29, 2001. It was the avowed purpose of Plant's motion to appoint an examiner to inquire into issues of allocation of existing funds to compensate asbestos claimants who had sought recovery from Fibreboard, OC and Plant. In summary, Plant alleges that earmarked settlement funds may have been improperly paid or charged to the OC or Fibreboard's claims to the detriment of Plant's liability. Plant, in its motion below, asserted that none of the parties involved in the intercreditor discovery process was motivated to make such inquiries as would vindicate its narrow interests and questions. Judge

3

Fitzgerald noted at that argument that the captioned matters had not been substantively consolidated and that Plant was able to conduct Rule 2004 discovery on the issues it was concerned with.  Counsel for Plant acknowledged such right but expressed a preference for having an Rule 1104 examiner to carry out that function at the expense of the debtor's estate.  Tr. Motion 10/29/01 @ P 87, 88.  Plant never initiated independent Rule 2004 discovery.  The court expressed practical concerns regarding the application.  It specifically noted that to the extent the matters were not consolidated, the costs of an examiner would be assessed only against the <u>Fibreboard</u> case and that in any event Plant might "*** benefit pursuant to this intercreditor agreement simply by either participating or at least waiting to see what that intercreditor process develops."

Counsel for Plant responded to the court's invitation by indicating "I'm terribly sorry, but this intercreditor stuff doesn't concern us." ***" Tr. Motion 10/29/01, P 102, @ L 19-24.  The court also had serious reservations as to whether the funds supposedly allocated to the pre-petition asbestos settlements were property of the estate.  "If it's not property of the estate, I'm not appointing an examiner to look at non property of the estate assets." <u>Ibid</u>. @ 104, 105.  The court denied the motion without prejudice and the intercreditor discovery process proceeded.  Documents submitted with the motion asserted that the discovery process had produced in excess of 60,000 documents touching on multiple issues including OC and Fibreboard's electronic claim databases and the National Settlement Program (NSP) regarding specifics of claims, settlement values and supporting information.

In that posture, renewed argument on Plant's motion was heard by the Bankruptcy Court on February 25, 2002.  At that time, Judge Fitzgerald asked Plant's counsel if they had taken

advantage of the opportunity to get involved in the intercreditor discovery issues. Plant's counsel indicated they did not because the other parties had not affirmatively reached out to them. There is no indication that Plant took any affirmative action to involve themselves in the intercreditor process that they know was ongoing. Reflective of their earlier expression of interest, Plant's counsel observed regarding the discovery "It doesn't really respond to our concerns that Fibreboard's Settlement Trust, in effect, was purchased by Owen's Corning so they could use that in their nationwide settlement program, or any other settlement program they pursued, to help defer Owen Corning's asbestos liabilities." Tr. Motion 2/25/02 P. 42, L 12-16.

The February argument again focused on the interpretation of § 1104 (c)(2). In brief, it was the opinion of the Bankruptcy Court that the mandatory language of § 1104 became applicable only after a denial of an application for the appointment of a Trustee, citing § 1104(c). Noting that she had "*** never been asked to, nor denied the appointment of a Trustee***", the court concluded it was not compelled to appoint an examiner pursuant to § 1104 (c)(2). Although there was allusion to the validity of Plant's substantive indemnification claims under California law during argument the court below made no express findings or rulings on those issues.

## ANALYSIS

The issue before this court is the interpretation of statutory language and as such is reviewed de novo. Rules of Bankruptcy Procedure 8013. Although the parties, in their submissions devote considerable attention to the validity of Plant's claims as a creditor in the guise of standing it is not properly before this court. The Bankruptcy Court made no factual findings and made no dispositive ruling of law on the issue. Plant's allegations regarding

5

possible improper allocation of funds pursuant to the NSP were not part of the Bankruptcy Court's reasoning. The record submitted on appeal does not provide this court with an adequate basis upon which to make findings on such allegations. The validity of Plant's claims and thus its standing as a creditor, See § 11 U.S.C. 1109(b) and 11 U.S.C. § 101 (10)(A), is not properly before the court on this record. As asserted by the UST, the issue is a narrow one as to whether the Bankruptcy Court has the discretion to deny the appointment of an examiner in these circumstances.

Section 1104 (c) of the Bankruptcy Code provides in pertinent part:

> (c) If the court does not order the appointment of a trustees under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such examination of the debtor as is appropriate, ..., if
>
> > (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
> >
> > (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

Plant and the UST argue that upon satisfaction of $5,000,000 non trade debt requirement of § 1104 (c)(2), the plain and unambiguous language of the statute mandate the appointment of an examiner. Appellants place reliance on In re Revco D.S., Inc., 898 F.2d 498, (6th Cir. 1990). The circuit court there dealt with the issue.

> " Section 1104(b)(1) [2] which governs the appointment of an examiner when the total unsecured debt is less than $5 million, follows the language

---

[2] Now § 1104 (c)(1) by virtue of the Bankruptcy Reform Act of 1994.

6

> of § 1104(a); in both cases appointment is left to the bankruptcy court's
> discretion. The contrast with §1104 (b)(2) [now 1104 (c)(2)] could not be
> more striking. When the total "fixed, liquidated, unsecured" debt it greater
> than $5 million, the statute requires the court to appoint an examiner,
> ...Unless § 1104 (b)(2) requires the appointment of an examiner in such a
> case, it becomes indistinguishable from § 1104 (b)(1). Again construing
> the statute *in pari materia*, as we must, (citation omitted), we find that the
> appointment of an examiner is mandatory under § 1104 (b)(2)."

That analysis was subsequently followed by the Bankruptcy Court.

> "A Provision for discretionary appointment where the court is to
> consider the interests of the parties in making *its own*
> *determination* whether an examiner is necessary, followed by a
> provision that only considers whether a dollar criterion has been
> satisfied, is conclusive that the second provision is compelling on
> the court." (emphasis by the Court). *In re Schepps Food Stores*,
> 148 B.R. 27, 30 (S. Tex. 1992)

See, also, United States Trustee v. Price Waterhouse, 19 F. 3rd 138, 141 (3rd Cir. 1994).

Apart from the recognized rubric that clear statutory language is to be given effect as

written, the UST urges this court to recognize that the trustee/examiner distinction validates its

position as to construction of statutory language as mandatory. The UST points out that the

appointment of a Trustee is a substantive rather than a temporal issue for the appointment of an

Examiner. Our attention is drawn to 11 U.S. C. § 1106 defining the duties of a Trustee and an

examiner. Reading subsection (a) and (b) of § 1106 together, it is clear that a trustee's duties are

broader than those of an examiner thus the appointment of one may preclude the other. The UST

thus argues that the Bankruptcy Court's reliance on a temporal denial of appointment of an

Examiner in the absence of a motion to appoint a Trustee is error.

Appellee argues that the facially mandatory language of the statute was not intended by

congress to be inflexible and that practice and precedent within the bankruptcy courts indicates a

discretionary power in the courts to refuse the appointment of an examiner. OC points out

conflicting practice within the third circuit as support for its position. In In re SA
Telecommunications, Inc., Case No. 97-395 (PJW) (Bankr. D. Del. March 27, 1998), Judge
Walsh noted that "[T]his court has for years consistently viewed § 1104 (c)(2) as not being a
mandatory provision." Op. March 27, 1998, P 23, L 15-18. That view in the district is not
unanimous. As Bankruptcy Judge Walroth of the Delaware District ruled:

> I read 1104 as being mandatory rather than discretionary on the
> point of whether or not I should or shall appoint an examiner. I
> agree with the U.S. Trustee's position that this is mandatory as
> long as (c) (2) is met. I don't think I can consider best interests of
> creditors or any of the other issues that I would otherwise consider
> under (c) (1) where it would make (c) (2) superfluous and statutory
> construction mandates that I not read a statute in any manner as to
> make any of the provisions of the statute superfluous.

In re: Sun Healthcare Group, Inc., et al., Case No. 99-3657 (MFW), Op. Dec 6, 2000, P 74, L 1-
10.

In furtherance of their argument, Appellants cite a number of cases which while they
seem to concede the mandatory nature of the term "shall" as to the appointment of an examiner
nonetheless refused such appointment for policy reasons such as costs to the estate, limited
purpose or duplication of efforts is consistent with the overall goals of Chapter 11
reorganizations. See, Connoco, Inc. v. Skinner, 970 F.2d 1206, 1224 (3d. cir. 1992), Shelter
Resources Corp., 35 B.R. 304, 305 (Bankr N.D. Ohio 1983) and In re Rutenberg, 158 B.R. 230,
232-233 (Bankr. N.D. Fla, 1993). Appellees argue that such considerations in the face of the
objections made by the Asbestos Claimants committee and the Legal representation of Future
Claimants as to costs and duplication of efforts, strongly enforce the underlying policy reasons
for not construing the language of the statute as mandatory.

In response, Plant argues that the Bankruptcy Court's reading of § 1104 would impose a

8

meaningless condition and that statutory construction that would compel a nullity is strong evidence of its error. Appellant points out that if Judge Fitzpatrick's temporal requirement for an application for appointment of a Trustee as a condition precedent to the appointment of an examiner it creates an anomaly in the context of Chapter 11 proceeding. It is generally settled law that there is a strong presumption against appointing an outside Trustee in a Chapter 11 proceedings. It should be the exception rather than the rule. See, In re Sharon Steel Corp., 871 F.2d 1217 (3rd Cir. 1989). Such an application would require proof of the need for a trustee ) (2) by clear and convincing evidence. Id. @ 1226. A fair reading of the colloquy between counsel for Plant and the Bankruptcy Court would indicate that such as application was not likely to be granted. Tr., Motion, Feb. 25, 2002, P. 40, L 11-25, P 41 - L 1-5.

The one principle that all parties agree with is that if the Bankruptcy Court were to appoint an examiner, it would have control over the nature, extent and duration of their duties. In dealing with the question raised, the court is mindful of the Rule that statutes clearly and unambiguously written should be given their full effect. Examination of legislative intent and underlying policy is only appropriate in the face of the contradictory or ambiguous language. Notwithstanding the understandable pragmatic considerations dealt with here, it is impossible to avoid the clear language of § 1104. The analysis found in In re Revco, supra, and in re Schepps, supra is persuasive. Even the authorities that have denied the appointments of an examiner seem to concede the mandatory language of § 1104 but have not implemented its provisions based on policy considerations dealing with costs to the estate, duplicating efforts and hurdles it might raise to a successful Chapter 11 reorganization  While those goals are laudable, they cannot provide a substantial reason to frustrate the clear direction of the statute. In this case, those

considerations clearly weighed heavily on the Bankruptcy Court. On one hand, there was a party in interest who asserted a significant claim and yet did not participate in the intercreditor discovery process but rather wished an examiner to perform that function at the cost of the debtor an presumably to the detriment of other claimants. That was compounded by the Bankruptcy Court's concern that given the issues raised, the funds devoted to the NSP, sought to be investigated, might not even be determined to be a part of the debtor' estate. While those questions raise significant issues, they do not give this court warrant to ignore the clear and mandatory language of § 1104.

The safety valve in the statute is the vesting of discretion in the court as to the scope, nature and duration of the examiner's duties Judge. The statute allows the court to determine the scope, length and conduct of the investigation rather that than appointment itself. While this court reverses the denial of the appointment of an examiner and remands the matter for further action consistent with the opinion, it expressly refrains from in any way limiting the Bankruptcy Court's power in providing direction and control to be timing, nature, extent and duration of the examiner's charge. Those directions well doubtlessly conform to the important policy consideration involved in a Chapter 11 matter and already recognized by the Bankruptcy Court.

ALFRED M. WOLIN
U.S.D.C.

**EXHIBIT H**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | CHAPTER 11 |
| | ) | |
| OWENS CORNING, et al. | ) | |
| | ) | |
| Debtors | ) | Case No. 00-03837(JKF) |
| | ) | |
| | ) | |
| | ) | Jointly Administered |
| | ) | |

| | |
|---|---|
| STATE OF FLORIDA | ) |
| | )  ss: |
| COUNTY OF ORANGE | ) |

### <u>AFFIDAVIT OF DAVID R. GROSS</u>

I, DAVID R. GROSS, of full age, being duly sworn upon my oath, do hereby depose and say:

1.      I respectfully submit this affidavit in accordance with the October 28, 2003 Case Management Order entered by the Honorable Alfred M. Wolin, U.S.D.J., concerning the pending recusal motion brought by Kensington International Ltd. and Springfield Associates, LLC. That order directs the "Court Appointed Advisors" previously named by Judge Wolin to state under oath

> all occasions on which the Court Appointed Advisor provided advice or other assistance in connection with the [*Owens Corning*] case and the [*G-1 Holdings*] case, including the substance of that advice and/or the nature of the assistance, and including without limitation of the foregoing any advice of a legal nature on a matter pending or likely to come before the Court and any activity in the nature of mediation of disputes before the Court or likely to come before the Court.

A copy of the Case Management Order is attached as Exhibit A. I have personal knowledge of the facts set forth herein.

2.      I am an attorney at law admitted to practice and in good standing in New Jersey and New York and a member of Saiber Schlesinger Satz & Goldstein, LLC. I have over 40 years of experience in mass tort, products liability, primary and excess insurance coverage, class actions and multidistrict litigation, including complex asbestos and asbestos-related bankruptcy litigation. I was national defense counsel to Johns-Manville Co., the first company to seek bankruptcy protection based on asbestos liabilities, and have since handled a number of asbestos and other mass tort cases, principally on behalf of corporate defendants. While I have represented both plaintiffs and defendants, I have been considered a "defense lawyer" by reputation for most of my career. I have also frequently served as a mediator, court-appointed and otherwise, in varied complex commercial litigation. My curriculum vitae is attached as Exhibit B.

3.      I was a member of Budd Larner Gross Rosenbaum Greenberg & Sade, P.C. ("Budd Larner") in Short Hills, New Jersey from 1970 through 2002. From September 1, 2002 through November 11, 2002, I was the managing partner of D.R. Gross & Associates, LLC in Morristown, New Jersey. On November 11, 2002, that firm merged with Saiber Schlesinger Satz & Goldstein, LLC ("SSS&G") in Newark, New Jersey.

4.      In early December 2001, I was contacted by retired New Jersey Superior Court Judge C. Judson Hamlin regarding *In re G-I Holdings, Inc.*, a Chapter 11 proceeding filed in the United States Bankruptcy Court for the District of New Jersey. Mr. Hamlin had recently been appointed by the Honorable Rosemary Gambardella, U.S.B.J., as the Legal Representative of Present and Future Holders of Asbestos-Related Demands in that

matter. He was seeking local counsel to represent him in that role, having already chosen Keating, Muething & Klekamp ("KMK"), a Cincinnati, Ohio firm known for its bankruptcy practice, as his bankruptcy counsel. Mr. Hamlin retained Budd Larner on or about December 18, 2001 and we immediately began providing service as local counsel. Budd Larner's employment application was approved by order dated January 16, 2002 *nunc pro tunc* to December 18, 2001. My successive firms have continued to represent Mr. Hamlin following my departure from Budd Larner, again with Bankruptcy Court approval. Copies of the approval orders are attached as Exhibits C, D and E.

5.      In November 2001, Chief Judge Becker of the United States Court of Appeals for the Third Circuit assigned the *Owens Corning* bankruptcy, along with four other major asbestos-related bankruptcies, to Judge Wolin. In light of their extraordinary reach and complexity, Judge Wolin announced to all interested parties his intention to appoint consultants to assist in the task of managing and administering the five cases.

6.      In December 2001, Judge Wolin contacted me and requested that I serve on a panel of advisors of varying experience and expertise that he was planning to appoint to assist him in the administration of the cases. Although he did not identify my specific tasks or responsibilities, Judge Wolin expressed his view that, with my asbestos, insurance and mass tort experience, I could help the Court and the parties avoid or overcome the many procedural and operational complexities that bedevil asbestos-related bankruptcies, and that I might facilitate the ultimate settlement of one or more of the cases. Neither in our initial discussions, nor at any time thereafter, did Judge Wolin state, suggest or imply that he would seek from me any advice of a legal nature, or any legal or factual research, or any reports or evaluations of the parties' legal or factual claims, or

any like services. Nor did I at any time suggest that I could, or would, perform any such services for Judge Wolin.

7.     In conformity with those discussions, and with my acquiescence, Judge Wolin entered his December 28, 2001 order naming me and four others as "Court Appointed Consultants to advise the Court and to undertake such responsibilities . . . as the Court may delegate...." These responsibilities "includ[ed] by way of example and not limitation, mediation of disputes, holding case management conferences, and consultation with counsel...." A copy of the December 28, 2001 Order is attached as Exhibit F.

8.     At all relevant times, Judge Wolin was aware of my representation of Mr. Hamlin in *G-I Holdings*. My concurrent roles as a consultant for Judge Wolin and counsel to Mr. Hamlin are, of course, matters of public record, and all filings with Judge Wolin and Judge Gambardella appear on the electronic court docket. Moreover, the cases before Judge Wolin and the *G-I Holdings* bankruptcy have all been subjects of on-going media interest, particularly in national publications serving the asbestos-litigation community.

9.     Throughout the course of my service, I have performed the tasks -- and only the tasks -- discussed in my initial meetings with Judge Wolin and confirmed in the appointment order. Essentially, my role has been that of a settlement facilitator. The vast majority of my time has been occupied in meetings I arranged with representatives of all parties, including debtors, creditors and insurers. Those meetings -- which I usually conducted together with Professor Francis E. McGovern, another of Judge Wolin's appointees -- were designed to bring the parties and the insurers to the negotiating table, where I could, as mediator, assist in untangling the procedural complexities and advancing settlement discussions. My billing records, which are attached to my

4

applications for compensation and are a matter of public record, confirm that my efforts were of that nature.

10.    At no time have I discussed, participated or assisted in any way in Judge Wolin's decision-making function.  I have not discussed with Judge Wolin, in any manner or form, any legal or factual issues before the Court or likely to come before the Court in any of the five bankruptcies assigned to Judge Wolin, or, indeed, in the *G-I Holdings* case before either Judge Gambardella or Judge Bassler.  (The Honorable William G. Bassler, U.S.D.J., has handled all *G-I Holdings* matters at the District Court level to date.)  Judge Wolin has not solicited, nor have I submitted, any written or oral advice or recommendations, or any analysis or commentary concerning any such matters.

11.    The involvement of my successive firms in my work as consultant has been solely administrative and ministerial, as reflected in my billing records.  Associates and paralegals provided support only with respect to (i) the administration of my role, such as compensation matters and filing, (ii) my initial efforts to familiarize myself with the current asbestos bankruptcy landscape, and (iii) my mediation efforts.  At no time did my associates or colleagues undertake legal research, legal or factual analysis, or drafting of any sort for Judge Wolin's review or consideration.

12.    Additionally, I have had no communication, written or oral, with Judge Gambardella -- other than in open court -- concerning the cases before Judge Wolin, or my role or activities in those cases.

13.    Certain other assertions made in the recusal motion papers warrant a brief response:

(i)  I have had no communication with Judge Wolin, either written or oral, concerning the reputation, expertise or opinions of Dr. Leticia Chambers, or concerning her testimony in any of the cases before Judge Wolin and Judge Gambardella.

(ii)  I redacted from my bills certain names of persons with whom I had met.  Those redactions were made in aid of the settlement discussions then being conducted, either at the request of the parties or at the instruction of the Court.  The United States Trustee's Office requested, and was provided, unredacted versions of the bills.

(iii)  The June 20, 2002 billing that included 5.2 hours in part to "[p]repare for and appear at Bankruptcy Court before Judge Gambardella" (*see* Notice of Motion to Recuse, ¶ 34) was submitted by the Budd Larner firm after my leaving that firm and without my review. The entry and charge appear to be in error. I will look into the matter and report to the Court any mistaken charge or payment.

(iv)  My argument to Judge Gambardella as to what Judge Wolin "would not have held" about the dischargeability of certain claims (*id.* at ¶ 30) was based solely on a reading and analysis of Judge Wolin's published opinions and other authorities.  I never discussed the issue with him, nor did I have any information or insight from any source concerning his thinking on the issue.

14.    To date, four applications for compensation for services rendered pursuant to the December 28, 2001 Order have been filed on my behalf.  The aggregate fees and disbursements applied for and paid to date are $305,546.59, for the period through March 31, 2003. Each application was made on notice to all parties in interest and no objections were raised.  My billing records, submitted with my applications for compensation,

reflect a total of 838.3 hours billed. For the most part, charges for my fees have been divided equally among the five (5) cases. Of these hours, 32.05 hours were billed for work related to *Owens Corning* alone.

15.    No application has yet been filed on my behalf for fees incurred since April 1, 2003. My billing records show fees and disbursements for the period from April 1, 2003 in the aggregate amount of $102,465.85. All of my billing records, previously submitted and to be submitted, reflect the performance of tasks consistent with my role throughout my appointment -- that of a settlement facilitator.

16.    In addition, by agreement of two non-debtor entities, Sealed Air Corporation and Fresenius Medical Care Holdings, Inc., I was asked to mediate issues between the parties in two pending adversary proceedings in the *W.R. Grace & Co.* bankruptcy case, one of the five cases assigned to Judge Wolin. This engagement was independent from my role as a court appointed consultant. After a successful resolution of the matters, the non-debtor parties reached an agreement with the debtor, W.R. Grace, whereby W.R. Grace would bear a portion of the mediation cost. As a debtor, W.R. Grace's payment of any portion of the fees required Court approval, thereby subjecting the portion proposed to be paid by W.R. Grace to the scrutiny of all parties in interest. No objection was raised and $300,000 in fees were allowed -- $150,000 by the non-debtor parties, $150,000 by W.R. Grace. A copy of the June 17, 2003 Letter Opinion and subsequently issued Order dated July 7, 2003 are attached as Exhibits G and H.

17.    I trust the Court will find that this affidavit fully satisfies the directive of the October 28, 2003 Case Management Order. I stand ready, of course, to respond to any further inquiries the Court may have.

_____
DAVID R. GROSS

Dated: *November 14, 2003*

Sworn to and subscribed before me this _14_ day of November, 2003.

_____
Notary Public

LAURIE J. FROELICH
MY COMMISSION # CC 999682
EXPIRES: February 6, 2005
Bonded Thru Pichard Insurance Agency

8

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Delaware Bankruptcy |
| OWENS CORNING, et al. | : | Case Nos. 00-[illegible] to 3854 ([illegible]) |
| | : | Jointly Administered |
| Debtors. | : | |

CASE MANAGEMENT ORDER AND ORDER TO SHOW CAUSE CONCERNING MOTION TO RECUSE ALFRED M. WOLIN, U.S.D.J.

This matter having been opened by the Court upon its own motion in the above captioned chapter 11 case; and this Court having partially withdrawn the reference to the Bankruptcy Court of the above captioned chapter 11 case with respect to the motion [illegible] Motion to Recuse the Honorable Alfred M. Wolin, United States District Judge, from Further Participation in These Jointly Administered Cases" (the "Motion to Recuse"); and the Court having stayed all proceedings in this matter by Order dated October [illegible], 2003, in anticipation of issuing this Case Management Order; and good cause appearing;

It is on this 28TH day of October, 2003;

ORDERED that [illegible] Court Appointed [illegible] this Court's Order dated December 28, 2001 (the "Appointment Order") [illegible] before November [illegible], 2003.

1. [illegible] Motion to Recuse and [illegible] Motion to Recuse.

2. [illegible]

Appointed Advisor provided advice or any such assistance to the Court;

iv.   files with the Court and serves on all interested parties an affidavit stating that given all knowledge as of such time, the Court Appointed Advisor provided advice or such assistance in connection with the above-captioned Chapter 11 Case and the "manner in case noted in each following, including the substance of such advice and/or the nature of the assistance, and including, without limitation of the foregoing any advice on a legal issue on a matter pending or likely to come before the Court and any activity in the nature of mediation of disputes before the Court or likely to come before the Court.

and it is further

ORDERED that the affidavits provided by the Court Appointed Advisors pursuant to this Order shall be full and complete and in the spirit of cooperation with the Court's intent to fully reveal all aspects of the Court Appointed Advisors' counsel of and advice and assistance to the Court, if any, including without limitation any discussion of deliberations of the Court with respect to matters now or hereafter before it or likely to come before it, on which the Court Appointed Advisor may be privy, and it is further

ORDERED that the content of the affidavits of the Court Appointed Advisors filed pursuant to this Order shall be limited to matters with respect to such appointed advice and the activities in the nature of disputes, and mediation of disputes, that

[illegible lines]

2

of confidentiality regarding to its communications with the staff, provided however that this paragraph shall not be construed to waive any privilege or rule of confidentiality with respect to communications or activities of the Court's regular staff regardless of subject matter; and it is further

ORDERED that any interested party may show cause why the Motion to Recuse should be denied without further proceedings or, in the alternative, why further proceedings including discovery should be had on the Motion to Recuse, by filing a brief not to exceed 50 pages with the Court on or before November 25, 2002; and it is further

ORDERED that any interested party may file a reply in response to a brief filed pursuant to the foregoing paragraph not to exceed 15 pages on or before December 5, 2002, and it is further

ORDERED that an oral argument or hearing shall be held at trial or at such other time as may be scheduled by the Court on the same motion; and it is further

ORDERED that except as modified by this Order, the stay of proceedings on the Motion to Recuse provided by this Court's prior Orders shall remain in force.

# Exhibit B

<u>DAVID R. GROSS</u>

<u>EMPLOYMENT</u>:

Senior Partner, SAIBER SCHLESINGER SATZ & GOLDSTEIN, LLC, One Gateway Center, 13th Floor, Newark, New Jersey 07102
November 2002 to present

Name Partner, D.R. Gross & Associates, LLC, 55 Madison Avenue, Morristown, New Jersey 07960
September 2002 to November 2002

Senior Partner, BUDD LARNER GROSS ROSENBAUM GREENBERG & SADE, P.C., 150 John F. Kennedy Parkway, Short Hills, New Jersey 07078
1970 to August 2002

<u>EXPERIENCE</u>:

Litigation of all types, including products liability, primary and excess insurance coverage disputes, medical malpractice, commercial class actions, commercial fraud and contract litigation, class action and multidistrict litigation in numerous areas

National and Lead Counsel to Manville in Asbestos Litigation

National and Lead Counsel to Thompson Chemical Company in Agent Orange Litigation

Special counsel to A.H. Robins in Dalkon-Shield Litigation

Lead Trial Counsel in Federal District Court in at least 15 States

Argument in United States Circuit Courts of Appeal in 4 to 5 Circuits

<u>PROFESSIONAL ASSOCIATIONS</u>:

Fellow:      American College of Trial Lawyers
             American Bar Foundation
             International Academy of Trial Lawyers
             (500 Members in the United States)

Diplomate:   American Board of Trial Advocates

Master, Justice William J. Brennan, Jr. Essex Inn of Court

Chairman, American College of Trial Lawyers Committee on Complex Litigation for 7 years

Member:          The American law Institute Advisory Committee
                 on Complex Litigation
                 Editorial Board of NEW JERSEY LAWYER
Board of Editors:

          Environmental Hazards (The Superfund, ECRA and
          Toxic Tort Law Advisor. Prentice Hall Law & Business)

     Editorial Advisory Board:

          Inside Litigation (Prentice Hall Law & Business)
          International Litigation Forum (Hawksmere Limited, London)
          The Litigation Analyst (The Litigation Analysis Group, Inc.)

     Past President of the Association of the Federal Bar of the State of New Jersey

     Member of the Lawyers Advisory Committee of the New Jersey District Court,
     appointed by Chief Judge

     Member of Nominating and Reappointment Committee of the United States
     District Court of New Jersey for Magistrate Judges

## PUBLICATIONS:

     Numerous publications for PLI, DRI, Law & Business, ALI-ABA, and ICLE
     in the fields of products liability, insurance law, and general toxic tort
     litigation. Chairman of various seminars in the U.S. and abroad dealing with
     the above topics for 20 years

## OTHER:

     Listed in THE BEST LAWYERS IN AMERICA since 1983.

# Exhibit C



IT IS THE DIRECTION OF THIS COURT THAT THE
SUCCESSFUL PARTY SERVE A FILED COPY OF THE
ORDER UPON ALL PARTIES TO THIS ACTION.

David R. Gross (DG6431)
Senya M. Longo (SL7921)
**BUDD LARNER GROSS**
**ROSENBAUM GREENBERG & SADE, P.C.**
150 John F. Kennedy Parkway, CN 1000
Short Hills, NJ  07078-0999
(973) 379-4800

Kevin E. Irwin (KI3828)
Michael L. Scheier (MS9173)
Daniel A. Austin (DA0335)
**KEATING, MUETHING & KLEKAMP, P.L.L.**
1400 Provident Tower
One East Fourth Street
Cincinnati, OH  45202
(513) 579-6400
*Counsel for the Legal Representative of*
*Present and Future Holders of Asbestos-Related*
*Demands*

FILED
JAMES J. WALDRON, CLERK

JAN 1 6 2002

U.S. BANKRUPTCY COURT
NEWARK, N.J.
_____ DEPUTY

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

</div>

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | Hon. Rosemary Gambardella, Chief Judge |
| G-I HOLDINGS INC. | ) | CASE NO. 01-30135 (RG) |
| | ) | |
| Debtor. | ) | |
| | ) | |

<div align="center">

**ORDER APPROVING EMPLOYMENT OF BUDD LARNER**
**GROSS ROSENBAUM GREENBERG& SADE, P.C. AS COUNSEL**
**FOR ASBESTOS DEMANDS REPRESENTATIVE**
***NUNC PRO TUNC* TO DECEMBER 18, 2001**

</div>

THIS MATTER having been opened to the Court upon the application (the

"Application") of the Legal Representative of Present and Future Holders of Asbestos-Related

Demands in G-I's Chapter 11 case ("Asbestos Demands Representative") for an Order approving

the employment of Budd Larner Gross Rosenbaum Greenberg & Sade, P.C. ("Budd Larner") as

local counsel to the Asbestos Demands Representative *nunc pro tunc* to December 18, 2001;

797

2

- 2 -

upon the Affidavit and Verified Statement of David R. Gross, sworn to the 7th day of January, 2002, proper notice of the Application having been given; and the Court being satisfied that these attorneys represent no entity having an adverse interest in connection with regard to the matters upon which they are to be engaged; and being satisfied that the employment of Budd Larner is necessary and in the best interest of the Asbestos Demands Representative; and the Court having jurisdiction to consider the Application under 28 U.S.C. § 1334; and for good and sufficient cause appearing therefore;

IT IS on this _16_ day of January 2002

ORDERED that the Application is GRANTED in all respects; and it is further

ORDERED that Budd Larner is hereby approved to serve as local counsel to the Asbestos Demands Representative in this Chapter 11 bankruptcy case *nunc pro tunc* to December 18, 2001; and it is further

ORDERED that Budd Larner shall be compensated in accordance with the same procedures applicable under Bankruptcy Code §§ 330 and 331; and it is further

ORDERED that a copy of this Order shall be served upon all interested parties within _7_ days from the date hereof.

Honorable Rosemary Gambardella,
Chief United States Bankruptcy Judge

369138

# Exhibit D

David R. Gross (DG6431)
D. R. GROSS & ASSOCIATES, LLC
55 Madison Avenue, Suite 400
Morristown, NJ 07960
*Counsel for the Legal Representative of*
*Present and Future Holders of Asbestos-Related*
*Demands*

**FILED**
JAMES J. WALDRON, CLERK

OCT - 3 2002

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY_____ DEPUTY

**FILED**
JAMES J. WALDRON, CLERK

SEP 2 4 2002

NEWARK, N.J.
_____ DEPUTY

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

| | |
|---|---|
| In re: | ) CHAPTER 11 |
| | ) Hon. Rosemary Gambardella, Chief Judge |
| G-I HOLDINGS INC., | ) CASE NO. 01-30135 (RG) |
| | ) Hearing Date: |
| Debtor | ) Oral argument waived |
| | ) |

**ORDER APPROVING SUBSTITUTION OF D. R. GROSS & ASSOCIATES, LLC AND WITHDRAWAL OF BUDD LARNER GROSS ROSENBAUM GREENBERG & SADE, P.C. AS LOCAL COUNSEL FOR THE LEGAL REPRESENTATIVE OF PRESENT AND FUTURE HOLDERS OF ASBESTOS-RELATED DEMANDS *NUNC PRO TUNC* TO SEPTEMBER 1, 2002**

THIS MATTER having been opened to the Court upon the application (the "Application") of the Legal Representative of Present and Future Holders of Asbestos-Related Demands in G-I'2 Chapter 11 case ("Legal Representative") for an Order approving the substitution of D. R. Gross & Associates, LLC as local counsel to the Legal Representative *nunc pro tunc* to September 1, 2002; upon the Affidavit and Verified Statement of David R. Gross, sworn to the ___ day of September, 2002; proper notice of the Application having been given; and the Court being satisfied that these attorneys represent no entity having an adverse interest in connection with regard to the matters upon which they are to be engaged; and being satisfied that the substitution of D. R. Gross & Associates, LLC and withdrawal of Budd Larner Rosenbaum Greenberg & Sade, P.C. ("Budd Larner") is necessary and in the best interest of the Legal Representative; and the Court having jurisdiction to consider the Application under 28 U.S.C. § 1334; and for good and sufficient cause appearing therefore;

406903W

IT IS on this 3rd day of September 2002

ORDERED that the Application is GRANTED in all respects; and it is further

ORDERED that D. R. Gross & Associates, LLC is hereby approved to serve as local counsel to the Legal Representative in this Chapter 11 bankruptcy case *nunc pro tunc* to September 1, 2002; and it is further

ORDERED that D. R. Gross & Associates, LLC shall be compensated in accordance with the same procedures applicable under Bankruptcy Code §§ 330 and 331; and it is further

ORDERED that Budd Larner is hereby withdrawn as local counsel to the Legal Representative as of this day; and it is further

ORDERED that a copy of this Order shall be served upon all interested parties within 7 days from the date hereof.

_____
Honorable Rosemary Gambardella,
Chief United States Bankruptcy Judge

406903W                                    2

# Exhibit E

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-2(c)

David R. Gross (DG6431)
Whitney R. Chelnik (WC5643)
SAIBER SCHLESINGER SATZ & GOLDSTEIN
LLC
One Gateway Center, 13th Floor
Newark, New Jersey 07102-5311

Kevin E. Irwin (KI3828)
Michael L. Scheier (MS9173)
KEATING, MUETHING & KLEKAMP P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, OH 45202

*Counsel to the Legal Representative of Present and
Future Holders of Asbestos-Related Demands*



FILED
JAMES J. WALDRON, CLERK
JAN 2 4 2003
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY _____ DEPUTY

| In Re: | Chapter 11 |
| G-I HOLDINGS INC., f/k/a GAF CORPORATION, | Case No.: 01-30135 (RG) |
| | Hearing Date: Oral Argument waived |
| Debtor. | Honorable Rosemary Gambardella, Chief Judge |

**ORDER APPROVING THE EMPLOYMENT AND SUBSTITUTION OF SAIBER,
SCHLESINGER, SATZ & GOLDSTEIN, LLC AS LOCAL COUNSEL FOR THE LEGAL
REPRESENTATIVE OF PRESENT AND FUTURE HOLDERS OF ASBESTOS
RELATED DEMANDS *NUNC PRO TUNC* TO NOVEMBER 11, 2002**

The relief set forth on the following page, numbered two (2), is hereby ORDERED.

_____                    1/24/03
HONORABLE ROSEMARY GAMBARDELLA
CHIEF BANKRUPTCY JUDGE

Debtor: G-I Holdings. Inc
Case No.: 01-30135 (RG)
Caption of Order:        Order Approving the Employment and Substitution of Saiber, Schlesinger,
Satz & Goldstein, LLC as Local Counsel for the Legal Representative of Present and Future
Holders of Asbestos-Related Demands *Nunc Pro Tunc* to November 11, 2002

This matter having been opened to the Court upon the application of the Legal Representative of Present and Future Holders of Asbestos-Related Demands ("Legal Representative") in G-I's Chapter 11 case for an Order approving the employment and substitution of Saiber, Schlesinger, Satz & Goldstein, LLC ("SSSG") as local counsel to the Legal Representative *nunc pro tunc* to November 11, 2002; upon the Affidavit and Disclosure Statement of David R. Gross, Esq., sworn to the 18th day of December; proper notice of the Application having been given; and the Court being satisfied that these attorneys represent no entity having an adverse interest with regard to the matters upon which they are to be engaged; and being satisfied that the employment and substitution of SSSG is necessary and in the best interest of the Legal Representative; and the Court having jurisdiction to consider the Application under 28 U.S.C. § 1334; and for good and sufficient cause appearing therefore; it is

ORDERED the Application is GRANTED in all respects; and it is further

ORDERED that SSSG is hereby approved to serve as local counsel to the Legal Representative in this Chapter 11 bankruptcy case *nunc pro tunc* to November 11, 2002; and it is further

ORDERED that SSSG shall be compensated in accordance with the same procedures applicable under Bankruptcy Code §§ 330 and 331; and it is further

ORDERED that a copy of this Order shall be served upon all interested parties within __7 days from the date hereof.

2

# Exhibit F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: ARMSTRONG WORLD INDUSTRIES, INC., et al., | : : : | Chapter 11 Case Nos. 00-4471, 00-4469, 00-4470 |
| Debtors. | : | |
| IN RE: W.R. GRACE & CO., et al., | : : : | Chapter 11 Case Nos. 01-1139 through 0-1200 |
| Debtors. | : | |
| IN RE: FEDERAL-MOGUL GLOBAL, INC., T&N LIMITED, et al., | : : : : | Chapter 11 Case Nos. 01-10578, et al.[1] |
| Debtors. | : | |
| IN RE: USG CORPORATION, a Delaware Corporation, et al., | : : : | Chapter 11 Case Nos. 01-2094 through 01-2104 |
| Debtors. | : | |
| IN RE: OWENS CORNING, et al., | : : | Chapter 11 Case Nos. 00-3837 through 00-3854 |
| Debtors. | : | |

## ORDER DESIGNATING COURT APPOINTED CONSULTANTS AND SPECIAL MASTERS

This matter having been opened by the Court upon its own motion in each of the above-captioned Chapter 11 cases; and the interested parties having been put on notice by the Court at the joint case management conference held on December 20, 2001, that the Court anticipated appointing special masters and/or case

---

[1]See attached list.

C - 2

management consultants to whom the Court may from time to time delegate certain authority to hear matters and to advise the Court on issues that may arise in these five large Chapter 11 cases; and for good cause shown

It is this 28th day of December, 2001

ORDERED that the following Order applies to the lead cases identified in the caption of this Order and to all cases filed as related cases thereto, and it is further

ORDERED that William A. Drier, Esq., David R. Gross, Esq., C. Judson Hamlin, Esq., John E. Keefe, Esq., and Professor Francis E. McGovern are hereby designated as Court Appointed Consultants to advise the Court and to undertake such responsibilities, including by way of example and not limitation, mediation of disputes, holding case management conferences, and consultation with counsel, as the Court may delegate to them individually, and it is further

ORDERED that the parties are on notice that the Court may, without further notice, appoint any of the Court-Appointed Consultants to act as a Special Master to hear any disputed matter and to make a report and recommendation to the Court on the disposition of such matter, and it is further

ORDERED that William A. Drier, Esq., is hereby appointed Special Master in the matter of In re W.R. Grace & Co., Bankruptcy No. 01-1139 through 01-1200, to hear all disputed matters in that Chapter 11 case for which the Court's Order of

C - 1

Reference may be withdrawn from the Honorable Judith K.
Fitzgerald, United States Bankruptcy Judge, and it is further

ORDERED that the fees of the Court Appointed Consultants and
Special Master(s) shall be borne by the debtors in such manner
and apportionment as this Court or the Bankruptcy Courts may
hereinafter direct.

_____
ALFRED M. WOLIN, U.S.D.J.

C  -

IN RE: FEDERAL-MOGUL GLOBAL, INC.
Case Numbers

| | | | |
|---|---|---|---|
| 01-10578 | 01-10643 | 01-10700 | 01-10750 |
| 01-10580 | 01-10644 | 01-10701 | 01-10751 |
| 01-10582 | 01-10646 | 01-10702 | 01-10752 |
| 01-10585 | 01-10647 | 01-10703 | 01-10753 |
| 01-10586 | 01-10649 | 01-10704 | 01-10754 |
| 01-10587 | 01-10650 | 01-10705 | 01-10755 |
| 01-10589 | 01-10651 | 01-10706 | 01-10756 |
| 01-10591 | 01-10652 | 01-10707 | 01-10757 |
| 01-10593 | 01-10653 | 01-10708 | 01-10758 |
| 01-10594 | 01-10654 | 01-10710 | 01-10759 |
| 01-10596 | 01-10655 | 01-10711 | 01-10760 |
| 01-10598 | 01-10656 | 01-10712 | 01-10761 |
| 01-10599 | 01-10657 | 01-10713 | 01-10762 |
| 01-10600 | 01-10658 | 01-10714 | 01-10763 |
| 01-10601 | 01-10659 | 01-10715 | 01-10764 |
| 01-10603 | 01-10660 | 01-10716 | 01-10765 |
| 01-10604 | 01-10661 | 01-10717 | 01-10766 |
| 01-10605 | 01-10662 | 01-10718 | 01-10767 |
| 01-10606 | 01-10664 | 01-10719 | 01-10768 |
| 01-10608 | 01-10665 | 01-10721 | 01-10769 |
| 01-10610 | 01-10666 | 01-10722 | 01-10770 |
| 01-10611 | 01-10668 | 01-10723 | 01-10771 |
| 01-10613 | 01-10669 | 01-01724 | 01-10772 |
| 01-10614 | 01-10672 | 01-10726 | 01-10773 |
| 01-10615 | 01-10673 | 01-10727 | 01-10774 |
| 01-10617 | 01-10675 | 01-10728 | |
| 01-10618 | 01-10682 | 01-10729 | |
| 01-10619 | 01-10683 | 01-10730 | |
| 01-10620 | 01-10684 | 01-10731 | |
| 01-10621 | 01-10685 | 01-10732 | |
| 01-10622 | 01-10686 | 01-10733 | |
| 01-10623 | 01-10687 | 01-10734 | |
| 01-10625 | 01-10688 | 01-10736 | |
| 01-10626 | 01-10689 | 01-10737 | |
| 01-10627 | 01-10690 | 01-10739 | |
| 01-10629 | 01-10691 | 01-10741 | |
| 01-10630 | 01-10692 | 01-10742 | |
| 01-10632 | 01-10693 | 01-10743 | |
| 01-10633 | 01-10694 | 01-10744 | |
| 01-10634 | 01-10695 | 01-10745 | |

```
01-10637        01-10696        01-10746
01-10638        01-10697        01-10747
01-10640        01-10698        01-10748
01-10641        01-10699        01-10749
```

# Exhibit G

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

CHAMBERS OF
ALFRED M. WOLIN
JUDGE

MARTIN LUTHER KING JR. FEDERAL BUILDING
50 WALNUT ST., ROOM 4069
P.O. BOX 999
NEWARK, NJ 07101-0999
(973)645-2580

June 17, 2003

LETTER OPINION - NOT FOR PUBLICATION
ORIGINAL FILED WITH THE CLERK OF THE COURT

All Counsel in the Captioned Case

RE: W.R. Grace & Co., et al., Debtors
Chapter 11, Case Nos. 01-1139 thru 01-1200
Official Committee of Asbestos Personal Injury
Claimants, et al., v. Sealed Air Corporation, et al.
Adv. No. 02-2210
Official Committee of Asbestos Personal Injury
Claimants, et al., v. Fresenius Medical Care
Holdings, Inc., et al.
Adv. No. 02-2211

Dear Counsel:

This matter is opened before the Court upon its own motion.

The Court has received a proposed Order approving the payment of

professional fees to Professor Francis E. McGovern and Mr. David

R. Gross for services rendered in connection with the mediation

and ultimate settlement of the above captioned adversary

proceedings. This submission is obviously not the typical motion

for approval of fees received and adjudicated by this Court and

the Bankruptcy Courts in this and other chapter 11 cases. For

the reasons set forth in this letter opinion, the Court will make

the necessary provisions for notice and opportunity for parties

at-interest to be heard in connection with the proposed order.
Notwithstanding the departure from normal procedures, the Court
is satisfied that the Order filed herewith will satisfy the
requirements of fairness and legality that are the end purpose of
the standing Orders of the Court and the Bankruptcy Rules.

As the Court has chronicled in the course of many Opinions
and Orders, these consolidated adversary proceedings were
important factors in the reorganization of the debtors.  They
were hotly contested by the parties over the course of several
months of accelerated discovery and motion practice.  The
settlement, whose consummation is expected shortly, will
represent a very substantial recovery for the estate.

As the parties are aware, McGovern and Gross were appointed
as advisors to the Court by an Order dated December 28, 2001.
They have been functioning in that role since and submitting
applications for compensation in the usual course.  With respect
to these proceedings, by agreement of the non-debtor parties,
Sealed Air Corporation, and Fresenius Medical Care Holdings,
Inc., they acted as mediators and their fees were to be borne by
the non-debtors.  Obviously, where the parties agree and there is
no suggestion of conflict of interest or otherwise, the Court has
no role in approving the payment of fees by non-debtors in such a
situation.

However, since the settlement of the adversary proceedings

2

in late November 2002, the parties have negotiated with the debtor and the debtor has agreed that it would be fair for it to bear some of the cost of McGovern's and Gross's fees. Plainly, this makes the Court's involvement inevitable. The Court must review all such expenditures on professional services to ensure that they are necessary, fair and proportionate to the benefit provided. 11 U.S.C. § 330. Likewise, this requires that the parties be given notice and opportunity to be heard. Id.

The situation is complicated by the fact that the bills originally submitted to Sealed Air and Fresenius were not in the detailed form required by the Local Bankruptcy Rules of the District of Delaware. On the contrary, they are in the form of traditional "services rendered" bills, listing generally the activities undertaken and the subjects to which those activities were directed. It is difficult to find fault with the professionals themselves for the form of their bills in light of the evolution of this matter from a private one between themselves and the non-debtors to one requiring the supervision of the Court.

To obviate any difficulties in the situation, the Court will enter an order attaching the proposed order and giving all parties an opportunity to object. At the close of the stated period for objections, the Court will rule on the propriety of the proposed order and either enter it as drafted or modify it.

The Court will base its ruling on any objections received and upon its own knowledge, gained first hand in the course of engineering the settlement of the adversary proceedings, of the performance of McGovern and Gross. The parties should be aware that any Order granting compensation shall be subject to final approval at the conclusion of the chapter 11 case, including the possibility of disgorgement should it appear that compensation was improvidently granted. 11 U.S.C. § 328. The parties should also be aware that the only portion of the Order to which they may object is that portion governing compensation by the debtor.

Very truly yours,

ALFRED M. WOLIN
U.S.D.J.

4

# Exhibit H

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE | Chapter 11<br>Case Nos. 01-1139 through 01-1200 |
| W. R. GRACE & CO., et al., | |
| Debtors | |
| OFFICIAL COMMITTEE OF<br>ASBESTOS PERSONAL INJURY<br>CLAIMANTS and OFFICIAL<br>COMMITTEE OF ASBESTOS<br>PROPERTY DAMAGE<br>CLAIMANTS OF W.R. GRACE &<br>CO., suing in behalf of the Chapter<br>11 Bankruptcy Estate of W. R.<br>GRACE & CO., et al., | Adv. No. 02-2210<br>[LEAD DOCKET] |
| Plaintiffs, | |
| v. | |
| SEALED AIR CORPORATION<br>and CRYOVAC, INC., | |
| Defendants. | |
| OFFICIAL COMMITTEE OF<br>ASBESTOS PERSONAL INJURY<br>CLAIMANTS and OFFICIAL<br>COMMITTEE OF ASBESTOS<br>PROPERTY DAMAGE<br>CLAIMANTS OF W.R. GRACE &<br>CO., suing in behalf of the Chapter<br>11 Bankruptcy Estate of W. R.<br>GRACE & CO., et al., | Adv. No. 02-2211 |
| Plaintiffs, | |
| v. | |
| FRESENIUS MEDICAL CARE<br>HOLDINGS, INC. and<br>NATIONAL MEDICAL CARE<br>INC., | ORDER AWARDING COMPENSATION<br>TO COURT APPOINTED CONSULTANTS<br>DAVID R. GROSS AND FRANCIS R.<br>MCGOVERN |
| Defendants. | |

This matter having been opened by the Court upon its own motion in the above captioned Chapter 11 case and adversary proceedings, and the Court having by previous Order appointed Professor Francis E. McGovern and David R. Gross, Esq. as Court Appointed Consultants to advise the Court and undertake certain responsibilities including, but not limited to, mediation of disputes and consultations with counsel, and having directed that their fees shall be borne by the debtors in such manner and apportionment as this Court may instruct; and the Court having found that the fees and expenses requested by Professor Francis E. McGovern and David R. Gross, Esq. are reasonable and necessary to the administration of the debtor W. R. Grace & Company's estate, and for other good cause shown,

IT IS on this 7TH day of June, JULY 2003,

ORDERED that fees and expenses are hereby granted to Professor Frances E. McGovern in the amount of $500,000 for services rendered during the months of August, 2002, through and including December, 2002; and it is further

ORDERED that fees and expenses are hereby granted to D.R. Gross & Associates, L.L.C. on behalf of David R. Gross, Esq. in the amount of $200,000 for services rendered during the months of September, 2002 through and including October, 2002 and to Saiber, Schlesinger, Satz & Goldstein, L.L.C. on behalf of David R. Gross, Esq. in the amount of $100,000 for services rendered during the month of November, 2002, and it is further

ORDERED that the fees and expenses allowed by this Order are to be allocated as follows: 50% of the fees borne by W. R. Grace & Company, 25% of the fees borne by Sealed Air Corporation, and 25% of the fees borne by Fresenius Medical Care Holdings, Inc., and it is further

ORDERED that W. R. Grace & Company is authorized and directed to pay

$250,000 in fees and expenses to Professor Francis E. McGovern,

$100,000 in fees and expenses to D. R. Gross & Associates, L.L.C., and

$50,000 in fees and expenses to Saiber, Schlesinger, Satz & Goldstein, L.L.C., and it is further

ORDERED that Sealed Air Corporation is authorized and directed to pay

$125,000 in fees and expenses to Professor Francis E. McGovern,

$50,000 in fees and expenses to D. R. Gross & Associates, L.L.C., and

$25,000 in fees and expenses to Saiber, Schlesinger, Satz & Goldstein, L.L.C.,
and it is further

ORDERED that Fresenius Medical Care Holdings, Inc. is authorized and directed
to pay:

$125,000 in fees and expenses to Professor Francis E. McGovern;

$50,000 in fees and expenses to D. R. Gross & Associates, L.L.C., and

$25,000 in fees and expenses to Saiber, Schlesinger, Satz & Goldstein, L.L.C., and
it is further

ORDERED that the amounts received by Professor Francis E. McGovern and
David R. Gross, Esq. pursuant to this Order may be subject to disgorgement by them as
may be provided in the final Order of allowance of fees and expenses at the conclusion of
the above-captioned Chapter 11 case.

ALFRED M. WOLIN, U.S.D.J.