# EXHIBIT I

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Delaware Bankruptcy |
| OWENS CORNING, et al. | : | Case Nos. 00-3837 to 3854 (JKF) |
| | : | Jointly Administered |
| Debtors. | : | |

**AFFIDAVIT OF WILLIAM A. DREIER,
MEMBER OF ADVISORY COMMITTEE
AND SPECIAL MASTER IN THE W.R. GRACE
AND OWENS CORNING BANKRUPTCIES**

STATE OF NEW JERSEY    ·
                   : SS
COUNTY OF SOMERSET  :

WILLIAM A. DREIER, of full age, being duly sworn upon his oath according to law, deposes and says:

1. I am an attorney at law of the State of New Jersey. I am a retired Presiding Judge of the Superior Court of New Jersey, Appellate Division. I served for over twenty-five years as a Judge in the Superior Court of New Jersey and its predecessor courts, the last fifteen years on the Appellate Division.

2. On September 1, 1998, I retired from the Court and joined the firm of Norris, McLaughlin & Marcus, P.A., Bridgewater, New Jersey, in which I now am an equity partner (shareholder).

3. I am versed in the area of products liability law, having sat upon many such cases and written many published opinions in the field of Product Liability, including several in asbestos litigation. I am the author of the principal New Jersey text in the field

of products liability law, NEW JERSEY PRODUCTS LIABILITY & TOXIC TORTS LAW, which has been published in many editions since the mid-1970s, and since 1996 has been published annually by Gann Law Books. I have written over twenty-five articles published in various law reviews and law journals, most of them on the subject of product liability law, and I have lectured on the subject extensively both in New Jersey and throughout the country. I have chaired the ALI-ABA Annual Products Liability Course of Study since its inception in the mid-1980s, and was an active participant in the Members Consultative Group for the RESTATEMENT (3d) OF TORTS: PRODUCTS LIABILITY (1997).

4. I was chosen by Judge Wolin in 2001 to be a member of the Advisory Committee to aid him in the processing of the five substantial asbestos matters referred to him by the United States Court of Appeals for the Third Circuit. I believe I was chosen for this Committee based upon my intimate knowledge of products liability law and processing of mass tort asbestos cases.

5. In addition to my serving on the Asbestos Advisory Committee, I was specifically appointed by Judge Wolin as Special Master in the W.R. Grace bankruptcy and then later as Special Master in the Owens Corning bankruptcy, principally to hear and resolve discovery issues, but also to aid the Court in reviewing novel issues of law presented by the parties either directly or through appeals from decisions rendered by the Bankruptcy Judge assigned to the case.

6. My duties fell into three principal categories:

    a) Meeting with members of the Asbestos Advisory Committee and Judge Wolin to discuss generally the conduct of the asbestos litigation.

(i)     In this regard, the Committee met initially with representatives of the plaintiffs and defendants in the litigation, and then together to discuss general approaches to the asbestos cases. My filing records show four meetings on January 7, 2002, January 18, 2002, February 27, 2002 and May 17, 2002 to discuss the salient issues;

(ii)    First, we were all concerned, as was Judge Wolin, that the severely injured plaintiffs (*i.e.*, those suffering from mesothelioma, other asbestos-related cancers, severe asbestosis or the like) could have their cases heard in a timely manner so that the victims themselves, and not just their families, might retrieve some benefit from the eventual verdicts or anticipated settlements;

(iii)   Second, we were concerned that the presently unimpaired plaintiffs be somehow divided into classes:  (a) those who had asbestos exposure but no symptoms other than vague characterizations after cursory examinations, but to be given entrée into case processing if and when actual symptoms or indications of serious injury might develop; and (b) those with asbestos exposure who were symptom-free, and whose potential injuries could be monitored but not compensated up front for injuries which might never develop, and that monitoring be performed at a minimal cost to defendants so

that assets could be marshaled to make payments to those who are now or are later found to be seriously injured;

(iv)    Property damage claimants to be divided into those suffering significant clean up costs or diminution in value of their property, on one hand, and those with claims based more on fear that particular products might become or be viewed by others as dangerous, even though little or no harm had been shown from these products.

(v)    All of these discussions were of a general nature concerning how to devise a system that would best allocate scarce resources, yet be approved by classes of claimants who might hold settlement veto power under existing bankruptcy law. At some of our sessions we again met with representatives of both claimants and defendants so that they could have input into out discussions.

(vi)    At none of these meetings were there discussion concerning the individual merits of either the Owens Corning or the G-I Holding cases.

b)  As Special Master in the W.R. Grace bankruptcy:

(i)    I was called upon on many occasions to hear and determine discovery motions, particularly involving the Sealed Air Corporation fraudulent transfer claim. I held regular hearings

concerning document production, interrogatory answers, deposition disputes and the like.

(ii)     As disclosed by my billing records, I met with the court (in addition to numerous telephone calls) on January 7, 2002, January 11, 2002, July 2, 2002, August 9, 2002, September 3, 2002 and September 18, 2002, with an additional session with the court and other advisors on November 19, 2002; principally to discuss the W.R. Grace matter, but also to see how our approach might generally aid other pending cases.

(iii)    I was also called upon to review appeals to the Court from the Bankruptcy Judge and to prepare advisory opinions concerning disposition of these appeals for review, revision and eventual disposition by the Court.

(iv)     I was also called upon individually (outside of my function as a member of the Asbestos Advisory Group), to sit in on discussions between the Court and counsel involving issues raised in the Sealed Air Corporation fraudulent transfer dispute, at times meeting with the attorneys, with and without their clients, as an adjunct to what eventually was a successful mediation of this dispute.

(v)      From time to time I was asked to and rendered status reports to the Court and, on one occasion, rendered such a report in open court during an argument concerning representation of

the parties.  None of these duties impacted upon the Owens

Corning or G-I Holding, Inc. bankruptcy cases, which, to the

best of my recollection were never individually discussed.

c) In the Owens Corning bankruptcy, I was called upon once on April 2,

2003, to resolve a discovery dispute, after a telephone call with the Court

on December 20, 2002 concerning delegation of discovery functions to

me.  I reviewed the documentation relating to the Owens Corning claims

in order to be prepared to render decisions in discovery disputes.  I had no

other contact with the Owens Corning case.  No advice was rendered

directly to the Court with respect to this case, nor did I act as a mediator.

7.  To the best of my recollection, I had no contact at all in the matter known as

In re:  G-I Holding, Inc.

8.  Throughout the proceedings and in my several meetings with Judge Wolin

concerning the asbestos cases, I have found him and the other advisors, specifically,

including Mr. Gross, Judge Hamlin, and Professor McGovern (mentioned by name in the

motion) to be completely objective in their assessment of the claims and motivated solely

by an expressed desire to resolve these cases in a way that would provide for the

preservation of the bankrupts' estates so that valid claims could be heard on a timely

basis, and that, if possible, the settlements be entered to protect the rights both of the

claimants and the debtors.  The opinions Judge Wolin expressed during our discussions

are largely those encompassed within his reported decisions.  His efforts to be innovative

in the facilitation of settlements were not, to my observation, partisan or any indication of

a prejudgment of any unresolved issues which might later be submitted to undetermined by him.

_____
WILLIAM A. DREIER

Sworn and subscribed to be fore me this _14th_ day of November, 2003.

_____
Beth C. Harper

NOTARY PUBLIC, STATE OF NEW JERSEY

BETH C. HARPER
A Notary Public of New Jersey
My Commission Expires 02 23 05

**EXHIBIT J**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELEWARE

| | |
|---|---|
| In re ⟩ | CHAPTER 11 |
| ⟩ | |
| OWENS CORNING, et al., ⟩ | |
| ⟩ | |
| Debtors. ⟩ | Case No. 00-03837(JKF) |
| ⟩ | |
| ⟩ | |
| ⟩ | Jointly Administered |
| ⟩ | |

STATE OF NEW YORK   )
                                    )  ss.:
COUNTY OF NEW YORK)

I, FRANCIS E. McGOVERN, of full age being duly sworn, deposes and says:

My name is Francis E. McGovern.  I reside at 6228 Buffalo River Road,

Earlysville, VA 22936.  I am a graduate of Yale University and the University of Virginia

School of Law.  From 1973 – 1977 I was an associate at the law firm of Vinson and

Elkins.  I am currently a tenured professor of law at Duke University and a visiting

professor of law at the University of California at Berkeley, Boalt Hall.

Since 1977 I have not represented any party in any litigation.  I have served only

as a neutral – special master, court appointed expert or mediator – except for my previous

service as a trustee in the Fibreboard Trust, a trustee in the Celotex Trust, and a

consultant to the United Nations Compensation Commission.  I have served as a neutral

in over forty cases and been appointed by over thirty federal and state judges since 1977.

I have had no involvement with In re G – I Holdings, Inc.   I have no non-public information concerning that case; I have had no specific conversations concerning that case with any court.

I met Judge Wolin in December 2001. I was appointed by Judge Wolin on December 28, 2001 as a Court Appointed Consultant. A copy of that order is attached hereto as Appendix A. On July 22, 2002 I was appointed a mediator in In re Owens Corning *nunc pro tunc* to May 1, 2002, by Judge Judith K. Fitzgerald. A copy of that order is attached hereto as Appendix B. I was also appointed as mediator in Owens Corning by Judge Wolin on December 23, 2002. A copy of that order is attached hereto as Appendix C.

In accordance with these orders I have reported regularly and frequently to the District Court and/or the Bankruptcy Court on the status of the parties' negotiations. Those parties have included the debtor, the financial creditors, the personal injury creditors, the futures representative, and the property damages creditors. I have attended status conferences before Judge Wolin. I have never attended any hearing before Judges Wolin or Fitzgerald. I have also conscientiously complied with the provisions of Delaware Bankruptcy Local Rule 9019-3(d) in connection with all three appointments. A copy of that Rule is attached hereto as Appendix D. Judge Fitzgerald's order specifically provides that this rule applies to me both as a mediator and as a Court Appointed Consultant in any communications with the District Court. I have not divulged outside of the mediation any oral or written information disclosed by the parties or by witnesses in the course of the mediation. I have not been privy to deliberations of either Court with respect to matters pending before them or likely to come before them, nor have I

provided any advice in regard to such matters. I have complied with the provisions of
Federal Rule of Civil Procedure 53 and the provisions of Judge Fitzgerald's order that I
not serve as a Special Master to hear disputed matters on which I previously served as a
Mediator, or on any matter materially related thereto, nor have I served as a Special
Master to hear disputed matters and report to the Bankruptcy Court or District Court.

   The terms of my appointments do not require me to keep records of my time
devoted specifically to Owens Corning. I do not, therefore, have any additional specific
information to provide the court in accordance with its order of October 23, 2003.


_____
FRANCIS E. McGOVERN

Sworn to before me this
14th day of November, 2003

_____
Notary Public

LAUREN KARASTERGIOU
Notary Public, State of New York
No. 01KA4705838
Qualified in New York County
Commission Expires June 12, 20_06_

-3-

11-14-03    03:41pm    From-                                    T-270   P 05/24   F-295

# Appendix A

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| OWENS CORNING, et al., | : | Case No. 00-3837 to 3854 (JFK) (Jointly Administered) |
| Debtors. | : | |
| OWENS CORNING, et al., | : | Adv. Proc. No. A-02-5829 (JFK) |
| Plaintiffs, | : | |
| v. | : | |
| CREDIT SUISSE FIRST BOSTON, et al., | : | O R D E R |
| Defendants. | : | |

**This Order affects the chapter 11 cases-in-chief and the adversary proceeding.**

**CASE MANAGEMENT ORDER RE: 1) PARTIAL WITHDRAWAL OF THE REFERENCE; 2) FILING OF A PLAN OF REORGANIZATION; AND 3) DISPOSITION OF THE "BANK GUARANTEE" AND "SUBSTANTIVE CONSOLIDATION" LITIGATION**

The Court having held a case management and status conference on December 20, 2002, with the assistance and participation of the Honorable Judith K. Fitzgerald, U.S.B.J., and the parties having made certain representations regarding their intentions with respect to further proceedings in the above-captioned administratively consolidated chapter 11 cases,

1

including that the debtor intends shortly to file a plan of reorganization which will include a motion to substantively consolidate the related cases (hereinafter the Substantive Consolidation Motion), and that the parties anticipate motion practice in the adversary proceeding captioned <u>Owens Corning et alia v. Credit Suisse First Boston et alia</u>, Adversary Proceeding No. 02-5829 (hereinafter the Bank Guarantee Adversary); and good cause appearing

IT IS this 23d day of December 2002

ORDERED that pursuant to 28 U.S.C. § 157 and the Order of this Court dated December 10, 2001, the reference of this case to the United States Bankruptcy Court, the Honorable Judith K. Fitzgerald presiding, is hereby withdrawn with respect to the Bank Guarantee Adversary and with respect to the Substantive Consolidation Motion, and it is further

ORDERED that the period within which the debtors have the exclusive right to file a plan of reorganization is hereby extended to January 17, 2003, and the debtors shall file their plan of reorganization on or before that date, and it is further

ORDERED that the Court will hold a joint trial on the Bank Guarantee Adversary and a hearing on the Substantive Consolidation Motion, to commence on April 1, 2003, at 10:00 a.m. at the Martin Luther King Courthouse in Newark, New Jersey, and it is further

## Motion Practice

ORDERED that Designated Members of the Official Committee of
Unsecured Creditors (the "Designated Members")[1] shall file an
amended motion for an Order permitting them to intervene and to
file a complaint in intervention in the Bank Guarantee Adversary,
on or before December 31, 2002, and it is further

ORDERED that any motion to dismiss the Bank Guarantee
Adversary shall be filed on or before January 10, 2003, and any
response to a motion to dismiss shall be filed on or before
January 16, 2003, and it is further

ORDERED that the parties shall confer and arrange a briefing
schedule for the Substantive Consolidation Motion as may be
mutually agreeable, provided however that the briefing shall be
complete and all papers in support of or opposition to the motion
shall be received by the Court no later than 4:00 p.m. February
28, 2003, and it is further

## Mediation

ORDERED that the Honorable Judith K. Fitzgerald, U.S.B.J.,
is hereby appointed Settlement Judge and Professor Francis
McGovern is appointed Mediator for the matters for which the
reference to the Bankruptcy Court has been withdrawn by this
Order, provided however, that no party shall communicate to Judge

---

[1]    The Court adopts the definition of "Designated Members"
set forth in footnote one of the Designated Members' original
motion to intervene, Docket No. 8.

Fitzgerald pursuant to this appointment on any issue for which

the Court has not withdrawn the reference from her, and it is

further

ORDERED that, to assist with the efforts of Judge Fitzgerald

and Professor McGovern, the Court makes the following provisions

1.  The debtors will circulate a draft of their proposed plan of
    reorganization, together with a draft of the Substantive
    Consolidation Motion, on or before January 3, 2003.  In the
    event that the foregoing papers do not adequately set forth
    the debtors' position on the Substantive Consolidation
    Motion, the debtors shall also simultaneously circulate a
    letter setting forth their position with the draft plan and
    motion.

2.  Any party that does not agree with the debtors' position on
    substantive consolidation shall circulate a letter setting
    forth their position in opposition to or variance from the
    debtors' position on or before January 10, 2003.

3.  The debtor may circulate a letter replying to the arguments
    raised in any other party's letter on or before January 16,
    2003.

4.  The position letters circulated pursuant to this paragraph
    shall be no more than five pages in length and shall be
    circulated to Judge Fitzgerald and Professor McGovern by
    overnight courier except as they may direct otherwise and to
    all interested parties by the same method.

and it is further

ORDERED that the parties shall appear at 9:00 a.m. on

January 20 and 24, 2003, Courtroom A, 54th Floor, U.S. Steel

Building, 600 Grant Street, Pittsburgh, Pennsylvania, for

mediation before Judge Fitzgerald and Professor McGovern and it

is further

**Discovery**

4

ORDERED that discovery in preparation for the trial
scheduled to begin April 1, 2003, shall be conducted under the
Federal Rules of Civil Procedure subject to the following
provisos

    1.    The parties may conduct multiple depositions
        simultaneously.

    2.    No party need obtain leave of the Court to conduct more
        than ten depositions notwithstanding the limitation of
        Fed. R. Civ. P. 30(a)(2)(A).  This provision shall be
        without prejudice to the right of any party to object
        on the ground that the number of depositions sought
        constitutes a hardship.

    3.    The seven hour limitation of Fed. R. Civ. P. 30(d)(2)
        will be strictly enforced;

and it is further

ORDERED that William A. Drier, Esq., of Norris, McLaughlin &
Marcus, Bridgewater, New Jersey, is hereby appointed Special
Master in the Fraudulent Conveyance Proceedings, and it is
further

ORDERED that the Special Master shall hear disputes arising
out of discovery matters only, subject to further Order of the
Court, and it is further

ORDERED that practice before the Special Master shall be
governed by such rules as he may direct, provided however that

    1.    Counsel shall confer among themselves in good faith to
        resolve any dispute before presenting it to the Special
        Master.

    2.    The Special Master may hear testimony and the arguments
        of counsel by any means he may deem appropriate,
        including without limitation by telephone conference,

5

and announce his ruling orally, which announcement
shall start the time within which any objection must be
filed as further set forth in this Order.

3.    The ruling of the Special Master shall be final and
binding on the parties unless a party whose rights are
affected by that ruling files a written objection with
the Court within five calendar days of its
announcement, provided however that any party intending
to object must first contact the chambers of the Court
by telephone for further instructions on how to
proceed.

4.    The Special Master shall, as soon as practicable
following the announcement of a ruling, prepare a
written report to the Court setting forth those
findings of fact and conclusions of law upon which that
ruling is based, provided however that the parties may
waive the necessity of a written report should no
objection be forthcoming.

5.    Upon the objection of any party filed in conformance
with this Order, this Court shall review the ruling and
report of the Special Master de novo;

and it is further

ORDERED that, to the extent this Order may be inconsistent

with Bankruptcy Rule 9031, that rule will be deemed suspended

with the consent of all parties if no party objects in writing to

this paragraph within five business days of the date of this

Order.

Dated: DECEMBER 23,    ALFRED M. WOLIN, U.S.D.J.
       2003

6

# Appendix B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: ARMSTRONG WORLD | : | Chapter 11 |
| INDUSTRIES, INC., et al.,: | | Case Nos. 00-4471, 00-4469, |
| | | 00-4470 |
| Debtors. | : | |
| IN RE: W.R. GRACE & CO., | : | Chapter 11 |
| et al., | | Case Nos. 01-1139 through |
| | : | 0-1200 |
| Debtors. | : | |
| IN RE: FEDERAL-MOGUL | : | Chapter 11 |
| GLOBAL, INC., T&N | : | Case Nos. 01-10578, et al.[1] |
| LIMITED, et al., | : | |
| | : | |
| Debtors. | : | |
| IN RE: USG CORPORATION, | : | Chapter 11 |
| a Delaware Corporation, | : | Case Nos. 01-2094 through |
| et al., | : | 01 2104 |
| | : | |
| Debtors. | : | |
| IN RE: OWENS CORNING, | : | Chapter 11 |
| et al., | : | Case Nos. 00-3837 through |
| | : | 00-3854 |
| Debtors. | : | |

ORDER DESIGNATING COURT APPOINTED CONSULTANTS
AND SPECIAL MASTERS

This matter having been opened by the Court upon its own
motion in each of the above-captioned Chapter 11 cases; and the
interested parties having been put on notice by the Court at the
joint case management conference held on December 20, 2001, that
the Court anticipated appointing special masters and/or case

[1]See attached list.

management consultants to whom the Court may from time to time
delegate certain authority to hear matters and to advise the
Court on issues that may arise in these five large Chapter 11
cases, and for good cause shown

It is this 28th day of December, 2001

ORDERED that the following Order applies to the lead cases
identified in the caption of this Order and to all cases filed as
related cases thereto, and it is further

ORDERED that William A. Dreier, Esq., David R. Gross, Esq.,
C. Judson Hamlin, Esq., John E. Keefe, Esq., and Professor
Francis E. McGovern are hereby designated as Court Appointed
Consultants to advise the Court and to undertake such
responsibilities, including by way of example and not limitation,
mediation of disputes, holding case management conferences, and
consultation with counsel, as the Court may delegate to them
individually, and it is further

ORDERED that the parties are on notice that the Court may,
without further notice, appoint any of the Court-Appointed
Consultants to act as a Special Master to hear any disputed
matter and to make a report and recommendation to the Court on
the disposition of such matter, and it is further

ORDERED that William A. Dreier, Esq., is hereby appointed
Special Master in the matter of In re W.R. Grace & Co.,
Bankruptcy No. 01-1139 through 01-1200, to hear all disputed
matters in that Chapter 11 case for which the Court's Order of

Reference may be withdrawn from the Honorable Judith K.

Fitzgerald, United States Bankruptcy Judge, and it is further

ORDERED that the fees of the Court Appointed Consultants and

Special Master(s) shall be borne by the debtors in such manner

and apportionment as this Court or the Bankruptcy Courts may

hereinafter direct.

_____
ALFRED M. WOLIN, U.S.D.J.

IN RE: FEDERAL-MOGUL GLOBAL, INC.
Case Numbers

| | | | |
|---|---|---|---|
| 01-10570 | 01-10643 | 01-10700 | 01-10750 |
| 01-10589 | 01-10644 | 01-10701 | 01-10751 |
| 01-10582 | 01-10646 | 01-10702 | 01-10752 |
| 01-10585 | 01-10647 | 01-10703 | 01-10753 |
| 01-10586 | 01-10649 | 01-10704 | 01-10754 |
| 01-10587 | 01-10650 | 01-10705 | 01-10755 |
| 01-10589 | 01-10651 | 01-10706 | 01-10756 |
| 01-10591 | 01-10652 | 01-10707 | 01-10757 |
| 01-10593 | 01-10653 | 01-10708 | 01-10758 |
| 01-10594 | 01-10654 | 01-10710 | 01-10759 |
| 01-10596 | 01-10655 | 01-10711 | 01-10760 |
| 01-10598 | 01-10656 | 01-10712 | 01-10761 |
| 01-10599 | 01-10657 | 01-10713 | 01-10762 |
| 01-10600 | 01-10658 | 01-10714 | 01-10763 |
| 01-10601 | 01-10659 | 01-10715 | 01-10764 |
| 01-10603 | 01-10660 | 01-10716 | 01-10765 |
| 01-10604 | 01-10661 | 01-10717 | 01-10766 |
| 01-10605 | 01-10662 | 01-10718 | 01-10767 |
| 01-10606 | 01-10664 | 01-10719 | 01-10768 |
| 01-10608 | 01-10665 | 01-10721 | 01-10769 |
| 01-10610 | 01-10666 | 01-10722 | 01-10770 |
| 01-10611 | 01-10668 | 01-10723 | 01-10771 |
| 01-10613 | 01-10669 | 01-01724 | 01-10772 |
| 01-10614 | 01-10672 | 01-10726 | 01-10773 |
| 01-10615 | 01-10673 | 01-10727 | 01-10774 |
| 01-10617 | 01-10675 | 01-10728 | |
| 01-10618 | 01-10682 | 01-10729 | |
| 01-10619 | 01-10683 | 01-10730 | |
| 01-10620 | 01-10684 | 01-10731 | |
| 01-10621 | 01-10685 | 01-10732 | |
| 01-10622 | 01-10686 | 01-10733 | |
| 01-10623 | 01-10687 | 01-10734 | |
| 01-10625 | 01-10688 | 01-10735 | |
| 01-10626 | 01-10689 | 01-10737 | |
| 01-10627 | 01-10690 | 01-10739 | |
| 01-10629 | 01-10691 | 01-10741 | |
| 01-10630 | 01-10692 | 01-10742 | |
| 01-10632 | 01-10693 | 01-10743 | |
| 01-10633 | 01-10694 | 01-10744 | |
| 01-10634 | 01-10695 | 01-10745 | |
| 01-10637 | 01-10696 | 01-10746 | |
| 01-10638 | 01-10697 | 01-10747 | |
| 01-10640 | 01-10698 | 01-10748 | |
| 01-10641 | 01-10699 | 01-10749 | |

# Appendix C

## IN THE UNITED STATES BANKRUPTCY COURT
## IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| OWENS CORNING, *et al.* | : | Case Nos. 00-3837 (JKF) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | | **Related to Docket No. _____** |

## ORDER APPOINTING MEDIATOR *NUNC PRO TUNC* TO MAY 1, 2002
## AND DIRECTING MEDIATION

Upon the Motion[1], of Owens Corning, *et al.*, for an Order appointing a mediator *nunc pro tunc* to May 1, 2002, and directing the mediator to report to the Court on the status of the mediation (but not, in any event, to disclose the substance of settlement discussions); and the Court having

FOUND AND DETERMINED THAT:

A.    Notice of the Motion was good and sufficient under the particular circumstances and no other or further notice is or shall be required; and

B.    The appointment of a Mediator is in the best interest of the Debtors, their estates and creditors; and

IT IS HEREBY

1.    ORDERED that, pursuant to 11 U.S.C. §§ 105 and 327(a), 28 U.S.C. § 651 *et seq.*, Fed. R. Civ. Pro. 53, Del.Bankr.LR 9019-1 and 9019-3, the Motion is GRANTED; and it is further

---

[1]    Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Motion.

4557453 6/17/03

2.    ORDERED, that mediation proceed forthwith in these cases pursuant to the terms and conditions set forth in this Order; and it is further

3.    ORDERED, that Professor Francis E. McGovern is hereby appointed as the mediator (the "*Mediator*") in these chapter 11 cases, effective May 1, 2002; and it is further

4.    ORDERED, that the mediation shall not affect or delay any litigation or proceedings that take place in the Bankruptcy Court or the District Court, and the pendency of the mediation shall not be used by any party as an excuse to postpone any matter the parties may choose to litigate before the Bankruptcy Court or the District Court; and it is further

5.    ORDERED, that the Mediator shall report periodically to the District Court and/or the Bankruptcy Court (as may be determined by the circumstances or by future orders of either Court) on the status of the parties negotiations, provided, however, that the Mediator's services shall not be limited to those pending in either the District Court or the Bankruptcy Court, but shall encompass matters in these cases pending in both Courts, and provided further that the Mediator shall comply with Del.Bankr.LR 9019.3(4) (governing confidentiality of mediation proceedings and information disclosed therein) in both Bankruptcy Court and District Court proceedings in these cases (including any communications the Mediator may have with the District Court in his role as a Court Appointed Advisor, as that term is used in the Consultants Order) and shall further comply with Fed. R. Civ. Pro. 53.

6.    ORDERED, that the Mediator shall not serve as a Special Master (as that term is used in the Consultants Order) to hear disputed matters and report to the Bankruptcy Court or the District Court on any matters on which he previously served as Mediator, or on any matter materially related thereto, and shall not serve as Mediator on any disputed matter on

which he previously heard and reported to the Bankruptcy Court or the District Court as a

Special Master, or on any matter materially related thereto; and it is further

7.    ORDERED, that Professor Francis E. McGovern does not hold or represent an

interest adverse to the estate, and is a "disinterested person" within the meaning of sections

101(14) and 327(a) of the Bankruptcy Code; and it is further

8.    ORDERED, that the Mediator's fee shall be $100,000 per month, which

includes all of the Mediator's expenses. The Mediator's fee shall be paid monthly, in advance,

on the first day of each month, and shall require no Court approval prior to payment; however,

that the Mediator's fees shall be subject to review under section 328(a) of the Bankruptcy

Code.

9.    ORDERED, that the Mediator's fee of $100,000 per month, is based on the

Mediator's significant attention to the mediation process in these cases. In the event that the

level of the Mediator's attention to these cases is reduced, the fee shall be reduced to an

amount satisfactory to the Mediator and the Debtors, subject to Court approval.

10.    ORDERED, that the Debtors shall have the right to terminate the mediation

process and the appointment of the Mediator at any time, subject to Court approval.

11.    ORDERED, that this Court shall retain jurisdiction to enforce the terms of this

Order and adjudicate any disputes that arise under or in connection with the Order.

Dated: July 72, 2002
        Wilmington, DE


                                        _____
                                        The Honorable Judith K. Fitzgerald
                                        United States Bankruptcy Judge

91741 16/13AG

11-14-03   03:43pm   From-                                  T-270   P.21/24   F-295

# Appendix D

(ii)    Arbitration awards shall be entered as the judgment of the Court after the time has expired for requesting a determination *de novo*, with no such request having been filed. The judgment so entered shall be subject to the same provisions of law and shall have the same force and effect as a judgment of the Court, except that the judgment shall not be subject to review in any other court by appeal or otherwise.

(f)    Determination *De Novo* of Arbitration Awards.

(i)    Time for Filing Demand. Within 30 days after the filing of an arbitration award pursuant to Rule 9019-2(e) with the Clerk of Court, any party may file a written demand for a determination *de novo* with the Court.

(ii)    Action Restored to Court Docket. Upon a demand for determination *de novo*, the action shall be restored to the docket of the Court and treated for all purposes as if had not been referred to arbitration.

(iii)    Exclusion of Evidence of Arbitration. The Court shall not admit at the determination *de novo* any evidence that there has been an arbitration proceeding, the nature or amount of any award, or any other matter concerning the conduct of the arbitration proceeding, unless –

(A)    The evidence would otherwise be admissible in the Court under the Federal Rules of Evidence; or

(B)    The parties have otherwise stipulated.

(g)    This Rule shall not apply to arbitration pursuant to 9 U.S.C. § 3, to the extent it is applicable.

Rule 9019-3    Mediation.

           (iv)   <u>Mediation Conference Procedures</u>.    The mediator may establish procedures for the mediation conference.

        (d)   <u>Confidentiality of Mediation Proceedings</u>.

           (i)   <u>Protection of Information Disclosed at Mediation</u>. The mediator and the participants in mediation are prohibited from divulging, outside of the mediation, any oral or written information disclosed by the parties or by witnesses in the course of the mediation.  No person may rely on or introduce as evidence in any arbitral, judicial, or other proceedings, evidence pertaining to any aspect of the mediation effort, including but not limited to:  (a) views expressed or suggestions made by a party with respect to a possible settlement of the dispute; (b) the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator; (c) proposals made or views expressed by the mediator; (d) statements or admissions made by a party in the course of the mediation; and (e) documents prepared for the purpose of, in the course of, or pursuant to the mediation.  In addition, without limiting the foregoing, Rule 408 of the Federal Rules of Evidence, any applicable federal or state statute, rule, common law or judicial precedent relating to the privileged nature of settlement discussions, mediation or other alternative dispute resolution procedure shall apply.  Information otherwise discoverable or admissible in evidence, however, does not become exempt from discovery, or inadmissible in evidence, merely by being used by a party in the mediation.

           (ii)   <u>Discovery from Mediator</u>. The mediator shall not be compelled to disclose to the Court or to any person outside the mediation conference any of the records, reports, summaries, notes, communications or other documents received or made by the mediator while serving in such capacity. The mediator shall not testify or be compelled to testify in regard to the mediation in connection

with any arbitral, judicial, or other proceeding. The mediator shall not be a necessary party in any proceedings relating to the mediation. Nothing contained in this subsection shall prevent the mediator from reporting the status, but not the substance, of the mediation effort to the Court in writing, from filing a final report as required herein, or from otherwise complying with the obligations set forth in this Rule.

        (iii)    <u>Protection of Proprietary Information</u>. The parties, the mediator, and all mediation participants shall protect proprietary information.

        (iv)    <u>Preservation of Privileges</u>. The disclosure by a party of privileged information to the mediator does not waive or otherwise adversely affect the privileged nature of the information.

        (e)    <u>Recommendations by Mediator</u>. The mediator is not required to prepare written comments or recommendations to the parties. Mediators may present a written settlement recommendation memorandum to attorneys or *pro se* litigants, but not to the Court.

        (f)    <u>Post Mediation Procedures</u>.

        (i)    <u>Preparation of Orders</u>. If a settlement is reached at a mediation, a party designated by the mediator shall submit a fully executed stipulation and proposed order to the Court within twenty (20) calendar days after the end of the mediation. If the party fails to prepare the stipulation and order, the Court may impose appropriate sanctions.

        (ii)    <u>Mediator's Certificate of Completion</u>. Promptly after the mediation conference, the mediator shall file with the Court, and serve on the parties and the Mediation Program Administrator, a certificate in the form provided by the Court showing compliance or noncompliance with the mediation conference requirements of this General Order and whether or not a settlement has been