# EXHIBIT K

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Delaware Bankruptcy |
| OWENS CORNING, et al. | : | Case Nos. 00-3837 to 3854 (JKF) |
| | : | Jointly Administered |
| Debtors. | : | |
| | | **AFFIDAVIT** |

John E. Keefe, Sr., an attorney at law of the State of New Jersey, upon oath deposes and says:

1. I am one of the Court Appointed Advisors pursuant to Judge Wolin's order of December 28, 2001 (the "Appointment Order"). This affidavit is submitted in response to the Court's Case Management Order and Order to Show Cause with respect to the Motion to Recuse Judge Wolin dated October 28, 2003.

2. Pursuant to that order, I have reviewed the motion to recuse, my time records spent in execution of the duties set forth in the Appointment Order, as well as all other activities wherein I have provided service to the Court pursuant to that Order.

3. According to my time records, I was present at four meetings that were attended by other members of the Advisory Committee, as well as Judge Wolin: January 7 and 18, 2002; February 27, 2002; and May 17, 2002. I did not take notes during those meetings. However, as I recall, the discussions involved issues of concern to the Court with respect to the management of complex issues presented by the bankruptcy matters, and how the Advisors could be of assistance to the Court in that regard. I do not recall giving advice to Judge Wolin at any of those meetings with respect to any substantive issues involving any specific case, including In re Owens Corning, nor do I recall any other advisor offering advice with respect to that case, or any specific case during those meetings.

4. My participation in the consolidated cases, in addition to the general meetings identified in the preceding paragraph, consisted of services as a Special Master in connection with litigation including the Center For Claims Resolution, various bonding companies and certain debtors, as well as litigation concerning liability insurance coverage involving debtor Federal Mogul. Any advice that I gave to the Court in connection with those services was in the form of reports and recommendations that were made in writing. The only private conversations that I had with Judge Wolin were in connection with my services as Special Master in those two matters, and those conversations were limited to scheduling or procedural matters.

5. In addition to my services as Special Master in the cases referred to in the previous paragraph, I issued a Report and Recommendation, dated January 9, 2003, in the In re Armstrong matter on the issue of whether a Daubert ruling by the Bankruptcy Court was interlocutory or final.

6. My time record for February 22, 2002, reflects that I reviewed an opinion issued by Judge Sweet on December 11, 2001, in a case pending in the United States District Court for the Southern District of New York captioned: G-I Holdings, Inc. v. Baron & Budd, et al. However, I do not recall any discussion concerning it or its relevance to the G-I Holdings bankruptcy matter pending before Judge Gambardella at the Advisory Committee meeting held on February 27, 2002, or thereafter. I am not personally familiar with the Chapter 11 proceedings involving G-I Holdings, and did not offer any advice or opinions concerning it. Nor was I present when any discussion took place concerning G-I Holdings.

John E. Keefe, Sr.

STATE OF NEW JERSEY          )
                             )  ss.:
COUNTY OF MONMOUTH           )


Sworn to before me this _____

day of November, 2003

Notary Public

SYLVIA HERNANDEZ
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES MARCH 15, 2004

# EXHIBIT L

Case No. 03-4212
IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

In re: KENSINGTON                :
INTERNATIONAL LIMITED            :
and SPRINGFIELD                  :
ASSOCIATES, LLC,                 :    (Bankruptcy Case No. 00-03837)
                                 :    (Owens Corning, et al.)
          Petitioners,           :
_____:

On a Petition for a Writ of Mandamus to the Honorable Alfred M.
Wolin, United States District Judge

**SUPPLEMENTAL RESPONSE BY THE DISTRICT COURT JUDGE TO THE PETITION
FOR A WRIT OF MANDAMUS, PURSUANT TO THE INVITATION OF
THE COURT OF APPEALS**

TO THE HONORABLE JUDGES OF THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT GREETINGS:

Due to the accelerated manner in which the Third Circuit Court

of Appeals accepted the Petition for a Writ of Mandamus, it is

uncertain whether this matter will be remanded to the District

Court to establish a record in response to the original notice of

motion to recuse the District Court's participation in jointly

administered cases. Nevertheless, it is incumbent on the District

Court to supplement its prior response in regard to subsequent

filings that highlight the issue of ex parte conferences. See

Motion of D.K. Acquisition Partners, L.P., et al. to Disqualify the

Honorable Alfred M. Wolin, United States District Judge, From

Further Participation in These Jointly Administered Cases, Case No.

01-01139 (JKF).

When the Honorable Edward R. Becker assigned these bankruptcy cases to the District Court for joint administration, he was aware of the need that they be consolidated to develop and implement a coordinated plan for their management.   Towards that end, the District Court convened an initial case management conference that included representatives of all the consolidated cases.   These representatives, while mostly lawyers, understood that, in the furtherance of good case management, both written and oral communications with the Court on an <u>ex parte</u> basis would be appropriate.   See <u>Memorandum of Asbestos Case Management Conference</u>, dated December 20, 2001 and attached hereto and a made a part hereof.

As the Circuit Court well understands, in each Chapter 11 case the U.S. Trustee appoints committees who represent the diverse interests that participate in the bankruptcy proceeding.   These diverse interests are engaged in a "zero sum game," competing for payment of their respective claims from a limited fund. Indisputably, there are insufficient funds to satisfy all of these claims and more than likely shareholders of a Chapter 11 corporation will lose their equity.

Because of the diverse interests and the "zero sum game" that pervades Chapter 11 asbestos litigation, it was necessary for the District Court, on innumerable occasions, to meet with interested parties on an <u>ex parte</u> basis.   A record of these meetings is

2

contained in the proceeding minutes of the Court's deputy clerk.
The purpose of the ex parte meetings was to ensure that each
committee or corporate constituency was afforded the opportunity to
provide to the Court insights as to why, in the competition for
limited dollars, its claim was just.  CEOs, General Counsel, CFOs,
and varied litigation counsel were uniformly granted access to the
Court.  No constituency was favored at the expense of another or
denied access.

Given that these meetings occurred on a regular basis without
complaint and given that the December 20, 2001 case management
conference alerted all concerned that ex parte meetings were part
of the District Court's case management plan, it strikes a
discordant note that the conduct of ex parte conferences would be
the ground for a recusal motion.

Because the District Court desires to travel the high road, it
will not list names of those persons who freely solicited and
engaged in those conferences.  Curious as it may be, the proponents
of my recusal are some of the very people who availed themselves of
free access to the Court.

Verily, this Court understands the general prohibition and
disfavor of the medium of ex parte conferences.  Extraordinary
cases however, require extraordinary methods and means to attain
closure.  Unlike individual cases with finite issues and limited
parties these jointly administered cases are vast in their reach

3

and defy ordinary case management techniques.

The initial acquiescence in <u>ex parte</u> conferences and the lack of objection to their occurrence for 22 months speaks volumes as to the legitimacy of the Motion for Recusal of the District Court.

Respectfully submitted,

ALFRED M. WOLIN
U.S.D.J.

November 21, 2003

4

ASBESTOS CASES MANAGEMENT CONFERENCE
December 20, 2001

In 1988 I joined the United States District
Court.  The first three cases I handled were
asbestos cases.  One of your number gathered
here today reminded me that in a written opinion
I stated as follows:

"Asbestos exposure litigation has created a
court logjam of unprecedented dimension" and
that the magnitude of this problem "invites the
employment of extraordinary case management
techniques."  Little did I know that I would
once again be thrust headlong into the current
waive of asbestos litigation.  Nevertheless,
what I said in 1988 is just as valid today, and
perhaps even more so.

There are many matters which, from a case
management point-of-view, I wish to discuss with

you.

First and foremost is my strong belief that
case management is a participatory undertaking
that involves the lawyers, as well as the Court.
No one seated here today possesses all of the
answers, including the Court.  Accordingly, I
look forward to constructive suggestions with
the understanding that the final decision rests
with me.  Gathered here today are many diverse
interests that present extraordinary complex
legal issues.  I realize that it is an
impossible task to satisfy everyone at the same
time.  During this litigation there may be
actions taken by the Court that aggrieve you.
Conversely, there may be actions taken that
please you.  Rest assured that whatever my
decision is in any circumstance, such decision

is institutional and not personal and is based
on the law or policy best suited towards issue
resolution.  Moreover, I possess no bias in
favor of or against victims of asbestos
exposure.  My sole interest is a fair result
through good case management - the type of case
management that will permit you to fulfill your
professional responsibility to your client, yet
be responsive to the needs of the Court.  If
that occurs, then we all win.  If we get bogged
down in internecine warfare, then we all lose.
I look forward to your cooperation.

    1.  Since my assignment to this case on
November 27th, I have entered several orders.
Each of these orders has been posted on the
Delaware Bankruptcy Court Website.  Likewise,
all future orders of this Court will be posted

3

on that website.

2.   The December 10, 2001 order of the Court
anticipates the withdrawal of references with
respect to asbestos-related claims.  Counsel for
the debtors and counsel for other interested
parties shall, within ten days of the entry of
this order, on an _ex parte_ basis, identify those
issues with specificity to enable the Court to
implement a representative case management plan.
No privileges shall be waived as a result of any
communication of information between counsel and
the Court.  I recognize that there exist five
separate Chapter 11 proceedings and that a case
management plan for one may not fit all.

3.   All motions, if any, as to asbestos
related issues, except for the transfer motions,
are hereby deemed withdrawn.  Future motions

specifically reserved for this Court shall not

be filed without prior consent of the Court.

Through periodic case management conferences, I

am satisfied that this advance notice provision

will not serve as a cause of delay.

4.   On December 19, 2001, I entered a

housekeeping order that is incorporated herein

by reference.   It deals with fax transmissions,

as well as fixed dates before this Court.   READ

IT.

5.   In order to effectively case manage

complex litigation, it is necessary for the

judge to speak and/or meet with attorneys on an

ex parte basis, without permission of adversary

attorneys.   Any objection to such ex parte

communication is deemed waived.   It is a power

that calls for an act of faith on your part and

5

a power that I intend to use sparingly.

6.   With the number of firms involved, I am
unsure whether I have a personal relationship
with any of your associates or partners.   I
leave it to you to so advise the Court so that I
can make the appropriate disclosure.

7.   To assist the Court in identifying any
problems of recusal or disqualification, counsel
will submit to the Clerk of the Bankruptcy Court
within seven days of today's date, a statement
of all companies affiliated with your client and
all counsel associated in the litigation.   It
shall thereafter be posted on the Bankruptcy
Court's Website.

8.   Each party shall preserve all documents
and other records containing information
potentially relevant to the subject matter of

6

this litigation.  Subject to further order of
the Court, parties may continue routine erasures
of computerized data pursuant to existing
programs, and preserve any printouts of such
data.  Within seven days of today's date, each
party shall establish a written policy for its
employees to implement that party's documents
preservation obligations pursuant to the
directives of this Court, and each party shall
deliver a hard copy of that policy to each of
their employees.  The written policy shall be
preserved and made available for inspection or
filing with the Court as may be required in the
future.

9.   The Court has evolved an overall case
management plan that is calculated towards a
division of responsibility between this Court

7

and the Bankruptcy Courts assigned to the
Chapter 11 proceedings.  The plan is a starting
point with no pride of authorship or design
involved.  It was conceived with the Court's
desire to develop procedures to promote the
efficient and rational resolution of asbestos-
related claims.  Thus, modalities that permits a
structure capable of application to multiple
Chapter 11 proceedings and eliminates
duplication will, in the final analysis, result
in making more money available for the
resolution of deserving claims.

(DISCUSS STRUCTURE)

10.  With regard to non-jury issues, I shall
hold court in Newark under the auspices of my
temporary assignment to the District of
Delaware.  Any issue that requires a disposition

8

by jury trial shall be held in Wilmington, Delaware.

11.    Lastly, any application to withdraw the reference as to any issue (in the first instance) should be made to the appropriate Bankruptcy Judge.

**EXHIBIT M**

Case No. 03-4212
IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

DEC     2003

```
In re: KENSINGTON            :
INTERNATIONAL LIMITED        :
and SPRINGFIELD              :
ASSOCIATES, LLC,             :    (Bankruptcy Case No. 00-03837)
                             :    (Owens Corning, et al.)
            Petitioners,     :
_____:
```

## SUR-REPLY BY THE DISTRICT COURT JUDGE TO THE PETITION FOR A WRIT OF MANDAMUS, PURSUANT TO THE INVITATION OF THE COURT OF APPEALS

TO THE HONORABLE JUDGES OF THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT GREETINGS:

The District Court accepts the invitation of the Court of
Appeals to file a Sur-Reply.  Undoubtedly, the District Court and
its method of case management has very recently become a
lightning rod of contention in a well orchestrated effort to oust
the District Court from any further role in these jointly
administered estates.  Notwithstanding the attempt of some to
disassemble the progress that has been made to date, and much has
been accomplished, the case management methods and means employed
by the District Court are worthy of defense despite the
institutional pain associated with the pending petitions.

There exists a fundamental difference between the tort
system and the Bankruptcy system as to claim disposition.  The

tort system tends to destroy corporate viability through devastatingly high verdicts while the Bankruptcy system seeks to preserve the corporate estate. Accordingly, the case management approach between the two systems is manifestly different because the ultimate goals are different.

Each of the jointly administered chapter 11 estates voluntarily chose the Bankruptcy arena because of their lack of success in the tort system. The fundamental premise of their petitions is that to continue in the tort system would have spelled doom for the future existence of their respective corporations. Moreover, the tort system is governed by State Law and each claimant is entitled to a jury trial. With approximately 1,000,000 claims under supervision, the prospect of claim disposition by jury trials is a daunting proposition.

It is apparent to the District Court that personal injury claim disposition requires a collective rather than individual approach. The representatives of the asbestos claimants assert that those corporations that opt to test theories of causation in the Bankruptcy context are engaged in an attempt to rewrite and revise history and ignore 40 years of litigation experience as well as their own history of claim resolution.

Given this background, it was necessary for the District Court to gain knowledge of each of the jointly administered corporations. Through the disclosure of proprietary information

2

it was strikingly apparent to the District Court that a one shoe approach would not fit all concerned.

While the issue of conflicted advisors has been previously addressed in other filings, the issue of ex parte conferences with a lack of transparency is a significant issue likewise worthy of reply.  Beyond what was stated in the District Court's Supplemental Response dated November 21, 2003, it was the expressed intent of the District Court to provide access to any and all interested parties free of the constraint of damning admissions in a public arena.  Much of the information provided to the Court was proprietary in nature.  With the current turbulence and volatility that exists in financial markets, information associated with asbestos claims has the tendency to severely punish a corporate offender.  The Court was sensitive to the need for privacy of disclosure even at the expense of transparency.

The District Court's concern for the receipt and protection of proprietary and sensitive information was not a mere academic exercise.  The diminution in the value of shareholders equity, the lack of access to financial markets or a downgrade in financial status are real world concerns.  When a Maryland Jury returned an adverse verdict against Haliburton its stock plummeted 6 points.  More demonstrative than the Haliburton experience was the precipitous loss of shareholder value

3

encountered by Sealed Air Corporation when it was accused of
fraudulently acquiring W.R. Grace's Cryovac division. With the
loss of an interlocutory motion, Sealed Air sustained a
shareholder equity loss of several billion dollars. A stock that
traded at $37.00 within approximately 4 days traded at $14.00.
Sealed Air then and now trades on the New York Stock Exchange and
has approximately 84 million shares out standing. With the
District Court's intervention and use of traditional and non-
traditional case management methods this case resolved itself on
the eve of trial. The W.R. Grace estate is approximately $1
billion richer and a share of Sealed Air currently sells in the
neighborhood of $53.00 per share.

In the preparation of this sur-reply, the District Court has
exercised restraint to protect proprietary and sensitive
information provided to it through its joint administration of
the assigned Chapter 11 estates. The District Court will not
address specific allegations contained in affidavits of what it
may have said or done on any specific occasion. Case management
is an evolutionary process and a change in direction is not an
uncommon occurrence.

The District Court will not belabor the Circuit Court of
Appeals with a lengthy sur-reply. Nor will the District Court
unduly repeat matters contained in its prior filings. The means
and the methods employed by the District Court were not

4

inadvertent nor surreptitiously engaged in.  At the inception of

its first contact with the jointly administered estates the

District Court forthrightly announced its intention to

participate in ex parte conferences as a method of case

management.

The District Court does not apologize for its case

management means and methods.  As Court conference records

indicate, ex parte interviews with the Court were eagerly sought

and granted.  Moreover, the requests for ex parte meetings by

others far outdistanced  similar requests initiated by the

District Court.  In addition, no adverse consequence has occurred

to any jointly administered estate through the exercise of

ex parte conferences.

Overhanging this Court's administration of the Chapter 11

estates has been the specter of national  legislation.  Through

the Fairness in Asbestos Injury Resolution Act of 2003,

corporations anticipate that a national trust and revised illness

criteria with caps on recovery will preserve greater shareholder

equity.  The prospect of this legislation has impeded the efforts

of the District Court to gain closure of the USG and W.R. Grace

estates.  Thus, any lack of progress in those estates is the

product of expectation that they will fair more favorably in the

legislative arena than in the judicial arena.

The District Court through this Sur-Reply has attempted to

5

be non-adversarial.  At stake is a philosophy of case management.
The Circuit Court of Appeals with its experienced members will
have to determine whether transparency supercedes non-disclosure
of proprietary information.  The reach of this decision extends
beyond these jointly administered estates and will have a
profound impact on how members of the District Court, in the
future, case manage sensitive and complex litigation.

     The Court will respond directly only to one point raised by
petitioners in their response.  Petitioners would put the burden
on the Court of providing affirmative notice to thousands of
parties-at-interest of the alleged conflict of interest of its
advisors.  This argument takes as its premise the very contention
that underpins the application to this Court and the Motion to
Recuse - that the advisors are in fact conflicted.

     If they are not conflicted, an issue the Court has not ruled
upon despite the assumptions inherent in the petitioners'
argument, how is the Court to know whether such a notice is
necessary.  By way of example, Mr. David Gross is counsel to the
defendants in the nationally reported product liability
litigation against gun manufacturers.  Should the Court have made
a public disclosure of this separate product liability
representation so that the asbestos plaintiffs could have
evaluated the possibility of bias arising therefrom?  What
limiting principle would petitioners have the courts adopt in

this situation to determine when notice would be necessary?

In any event, petitioners raise the issue, understandably, to direct attention away from their eleventh-hour nature of their attack on this Court's jurisdiction over these chapter 11 cases. The identity of the Court Appointed Advisors was made public in the appointment order. There was no attempt to conceal their appointment nor the scope of their retention. This Court has never denied access to any party to raise an issue of concern, as the petitioners well know. The Advisors are very prominent and their activities relevant to this proceeding are in the public record. If a party had a concern over their bona fides, and accepting for the moment petitioners' claim of ignorance of the facts, it would have been possible with a modicum of effort to lay bare the entire careers of Messrs. Gross and Hamlin. Without pre-judging the ultimate merits of the application, neither this Court nor the Court of Appeals should ignore the implications of the timing of the Petition and the Motion to Recuse.

The District Court declines the opportunity to participate in oral argument on December 12, 2003. It is a concern for the solemnity and dignity of each Court that drives this decision.

While in the normal course of events the District Court should be the initial decision maker as to its recusal, here, the extraordinary procedural path that these petitions have followed and the volumes of materials that have accompanied the petitions

7

suggest that a potential remand is unnecessary.  This Court joins
with others and respectfully recommends that the Court of Appeals
decide the merits of this Court's continued involvement without
further delay.  Notwithstanding this recommendation, the District
Court is prepared to accept a remand and to dispose of it without
delay should the Court of Appeals find that the record is
insufficient.


Respectfully submitted,

ALFRED M. WOLIN
U.S.D.J.

December 5, 2003