IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**Hearing date: January 16, 2004 at 10:00 a.m.**

**W.R. GRACE'S OBJECTION TO AND MOTION TO STRIKE CERTAIN EXHIBITS CONTAINED IN THE JOINT APPENDIX FILED JANUARY 20, 2004**

W.R. Grace objects and moves to strike certain exhibits contained in the Joint Appendix filed January 20, 2004 as follows:

| Exhibit/Description | Objection |
|---|---|
| **Ex. 67, JA001989-2003 (Under seal)**, Handwritten notes of Judge Dreier | Rule 408; privilege. Contains confidential settlement-related information. Court ruled on this document January 5, 2003 during Mr. Gross' deposition (Gross Dep. Ex. 7). Exhibit should be stricken and replaced with redacted version, attached hereto as Ex. 67A. |
| **Ex. 68, JA002004-2007 (Under seal)**, Memo from Chelnick to Gross | Contains information provided with the expectation of confidentiality. Court ruled on this document on January 5, 2003, during Mr. Gross' deposition (Gross Dep. Ex. 8). Exhibit should be stricken and replaced with redacted version, attached hereto as Ex. 68A. |

| | |
|---|---|
| **Ex. 84**, JA002092, handwritten notes from Wilkie Farr, purportedly describing telephone conference with Grace's General Counsel | Hearsay; hearsay within hearsay. Exhibit should be stricken from the record. |
| **Ex. 88**, JA002170-2171, selected pages of WR Grace December 3, 2003 Response to Emergency Petition for Writ of Mandamus | Incomplete. Exhibit should be stricken and replaced by complete version of W.R. Grace's December 3, 2003 Response to Emergency Petition for Writ of Mandamus, attached hereto as Ex. 88A. |
| **Ex. 117**, JA002897-2900, Affidavit of Tony Yoseloff purporting to authenticate handwritten notes describing telephonic conference with Grace's General Counsel; and attached handwritten notes | Hearsay; hearsay within hearsay. Exhibit should be stricken from the record. |
| **Ex. 145**, JA003020-3033, Handwritten notes of David R. Gross | Contains information provided with the expectation of confidentiality. Court made a comparable ruling on a typewritten version of this document on January 5, 2003, during Mr. Gross' deposition (Gross Dep. Ex. 8). Exhibit should be stricken and replaced with redacted version attached hereto as Ex. 145A. |

Dated: January 20, 2004

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Michelle H. Browdy
Janet Baer
Samuel Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

KIRKLAND & ELLIS LLP
Christopher Landau
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

Exhibit 67 A

REDACTED

Billing rate $450/hr.
Bill through Al
11/27 - assigned to Del B'cy case
further Brahu case - Federal Mogel
— waiting prior order
→ Nissere li managed to chpt 11 in Del
∴ end these cases 2 Bankrupt Judges
Newsom - san DJ
* Fitzgerald Pittsberg
w/ Grabs
for Traditional bankruptcy matters. Wrinkley
→ Bankrupt judge to appoint future mgr.
these want to fight everything!
— exposure; living exposure;
* TT   Eleber Inselbuck   TT: ammulty
R  D  :  Smith ( KE Sloutton & Co.
→ — use "surgeschmeiser - not people for dates
— rather : use 706 panel — Experts
What is Asbestosisy; what methodology; who pays?
→ Panel 2 months from today — in 6 mos:
working 8 months
free : Residential installation
— Daubert  ( + MDL in Boston )

②

Francis M. Coven

David Bernick

Walter Sreulbuch

Peter Lockwood

WAD

Eric

REDACTED

P.D. Claims

Tom Sobel — ~~monocytelite~~ ~~David Bunch~~

Daniel Scott }
Dan Spikes } damicylite zeolite

REDACTED

1/18/02 — Conference — Dave Gross, Francis McGovern; Jack Keefe
Ted Hawkins — WAD; Whitney Dickish

— Science vs. law — Diagnostic Tests

Harris — 706 panel — issues → Scientific Test re diagnosis

eg ① 1/0 - not replicable : not accepted
     : use panel to test replicable

② PFT → gen. accept. of adding PFT
          + what is acceptable PFT

③ Dose related issues
   — What exposure needed
      for non-meso cases.
   — .1 over lifetime — 5 fibers/yr
   → Asbestos exposure vs # yr. exposure

(os to product!)

Dose to product ?
cumulative ?

④ (Dose) Relative risk issue
          screen of workplaces etc
          — X-Ray + PFT etc
          PFT + er

Benedictin issue? need 2 increase.

— can

                    { restrictive lung disease
                    { obstructive lung disease

**WAD 0004**

// D. issues — see David

// Am Thoracic Society — n OSHA

+ Charles Weiner          MDL Judge

S VS DJ

P.M →

Judge Wolin

— met w/ unsecured creditors
— fale trade fraudelent conveyance claims
— committees cannot abandon
offered vs. uninjured ti mesulation.
⌐ Discounted cash payment   DCP — paid now

IRC — paid + later amt.         + green card pending
— w/ green card.              or ind. review

Vermiculite hearing —

WAD 0005

2/27/02 — Al Wolin, Dave Gross, Frances McGovern, Jack Keefe, Jud Hamlin (Peter & Conrad, Leroy, Kansas, etc.)

12:00 Al Farrell, Trevour Hawkins & Farrell, N.Y. TT's atty

Tried of Pleurler other non-impared makes little sense.

Devised a pleural registry (later Mass. Ct. to suspended Sd. 1) — no restriction to ~~~ some back into registee experience. few developed into cancer & came on Tend be
— no $ when went on registry
TT's had right to come back in & settle (lawsuit) or won
for less than 10% cout back — most did ff — no suit
some early pleural plaque case — either ess or even more cases
Judge ~~Tobel~~ Zobel — used ~~sensory~~ jury trials (non-binding)
1.5 m for pleural —
N.Y. used "extrim" calendar — no trials
asbestosis TT — Deal of consolodated cases from certain source eg. etc.

→ Wore forwar projections of Ns. of cases
N.Y. Judges Helen Freedman. Judge via Garerum
→ medical issues °
Mezo cases — causation —
① fiber defense ( crisotile doesn't
② Diagnosis — 30° can't be asbestos
— Pleural plaque
— Mess — from cell evol. /
— Crisotile defense — some disc
— peritoneal mesothelioma —
→ ⑧ No defense verdict bad
→ low probability Ds — (vaches ct)

WAD 0006

Dr. Victor Roslie — (1st [illegible] sides)

Dr. Albert Miller — fr Pulmonology (π)
1–0 w/ PFT abnormalities ≥ 80?
( see whether injured )

∫ normal — few collect — ( shortness/breath )
∫ [illegible] medical issues now ⟶ crabon (b) [illegible]
present = clarketin

① Do you need asbestos as a link to cancer.
( interstitial fibrosis ) ≠ scar cancer, but show [illegible]
oo differentiate from smoking, etc.

mark

Premises leaf — invoices + Employees
[illegible]

— diag. now not usually in issue re meso
— erisotile defense still you
— [illegible] of exposure.

Dr expert Hammar etc.
⟶ Different case — small but only exposure.
new cases — 82 mil average — ( ~ 2 mo / yr in US
∫ (2 – 5 ) mil / case if tried [illegible]    fr 20 yrs   40 Billion
⟶ Honeywell = 57 mil in 5/yr — all want brake now

Am College of Radiol. — test claimment — 3 B readers ( all
Test: 3–0 ∧ 1–0 ??    [illegible]

— Leave Am College & set std.
[illegible]
⟶ Pulmonologist — ( asbestosis ) related or
Breath

markings w/in lungs.

**WAD 0007**

— defense · 1–1 ∧ 1–0
— verbal symptomology ? — sometimes.
[illegible Hamlin]    ie changed X-Ray ≠ Hx of exposure

— Δ claim cigarette - tetracycline; disappear
— π has to show "subst. producing cause." = jury voir
                                                 ? of for Dr
→ 3 out of 3000 correctly read them
   read radiologist reviewed x-ray.
→ need outside med. to say expert th n not.
→ "2 - "4 / x-ray to read & govn't
→ 706 panel: to define "compatible with "mes
            set de standard for those cases.

ask screening →

WAD 0008

Asbestos Mgt Committee

5-17-02   Meeting Judge Wolin's chambers

Frumin McGovern, Jack Keefe, Jud Hamlin, Davis Boos, with
Judge Wolin, Evan Wolfson

→ meeting w/ CEO's of insurers re asbestos litigation

→ Armstrong: negotiation – tort claims comm – cred comm.
   Cred: 1.1 Bil – offer 1 Bil → claiming all.
   offer 50-65 mil from equity – stripping down asset
   – Estimation hearing needed – July
   – Insurance – prod. liab capped so scratch
       non-prod. (uncapped) – CGL

   – keep out product
     (own restrictions)

   – Anglorachie – green card only – Bill in congress
                                    pub. won't pass

Owen Corning:
   → getting pr estimation hearing (delay
   → Sept date , guar.  → not long claim
   → fight – Kasik v. Borde / French mediator
   → plan by Oct. 02??  – no
   → decision needed re bonds priority – and
     needs pushing
   – 50 2K c/ hearing not being pushed for ND.
     (estimation)
       – rather negotiate.
   (threaten dates ~ for Estim. hearing )
   → either a plan better co + tort claims ①
       tort + unsec. plan → things open guar.
   – will settle

WAD 0009

Federal Mogul

- (N) met w/ CEO etc. — Irwin working — mediating
  coalition
- 262 subsidiaries — 0 equity — parts
- in poor shape — purchase Turner + Knewell
  (systems)
- I see oil poly but for higher liab — too to settle
- coming in on wage & try to resolve
- potential claim vs. sec. creditors (mature
  portfolio
  companies)
  ( post petition (probably) )

CCR litigation (3 companies)
- CCR working difficult for sureties
- to determine security for debt
(N) vs S Cepha → short time for rogs
finurting → deps coming up — CCR wants data
Fed. Mogul → wind up before 6/11 status conf.
- problem over asset in CCR & whether
  time limited — 7a Sp Ct. held
  | direct liability — even thoy
    only agent of disclosed princ
- Issue: What vs & actual debt?
  - often issues w settlement
  ( not paid /
  - liab. as surety to u
  other members
→ Jack to try as DJ action (if consol
  legal issue on S.J. motion — then B later

**WAD 0010**

W. R. Grace

**REDACTED**

**REDACTED**

U.S. Gypsum
→ good atty → Steve Weil (Palo Alto)
CEO is CO man → no total equity payment
wants 48% of Co - or litigate.
→ Cooley got indict sent letter:
→ get an estimation hearing:
→ asyndoraties in real issue; Co will say "0
→ claimants given veto if
Plan doesn't give 2/3 of value +
75% vote in favor Plan.
– pulmonal plaque or asymptomatic will bla
→ hearing to be 1 1/2 year

Insurance Co's position paper

WAD 0012

11/11/03 Carl. Judge Wolin, Davis Gross Francis deGeroni
Owens Corning

at 1 PM — not in Bankruptcy
Co-Counsel — guarantee
Torts + Bondholders can void same of
("gut check") files — point to:
claim — no judgment between reason
(Copycat from Torts) the file ∴ cannot do
issue but of Torts — cannot be settled now
→ Noo. — 9 % Bill ≈ ≈ ≈
Torts — 20 Bill.
— (drains : false same)
actually : what will banks get for their guarantee
— after 50's  Banks want 90's (not bargain
→ guarantees on a by 4. basis — if all put together,
guarantee evaporate ∴ Bond does not
want substantive consol claims.
2 way : decide by itself ; in context of confirmation
→ if already 524 (g) already decided
— could get asserted in confirmation.
→ Argue O : will get out of B's equity question
→ if decide separately : — make parties
show how will work
→ discovery must be concluded
If say "no" — no substantive consol claim this
— then in confirmation (+ estimation)
hearing)
Exclusivity : — need to be reset — Dec, 15 date of
intervention
out of 13th n 29th of Dec. — come up w/ plan ✓
case next order will
be issued.

WAD 0013

— *illegible handwritten notes*

**REDACTED**

REDACTED

WAD 0015

Exhibit 68 A

## PRIVILEGED & CONFIDENTIAL MATERIAL

### MEMORANDUM

**TO:**    David Gross

**FROM:**    Whitney Chelnik

**DATE:**    January 23, 2002

**RE:**    General Asbestos/Special Masters
Meeting notes 1/18/02

---

On Friday, January 18, 2002, a meeting was held at the Budd Larner offices regarding the possibility of a 706 Panel and legal strategies applicable to the cases at hand.  The participants included: David R. Gross, Hon. William A. Dreier, Hon. John E. Keefe, Sr., Hon. C. Judson Hamlin, Francis McGovern, Hon. Alfred M. Wolin.

Future meetings should include outside attorneys who are familiar with, and can consult on, asbestos litigation issues.  Al Parnell, from Atlanta, Georgia, and Madeline Chaber, from Oakland, California, were suggested.  Billy Cashion was also suggested as a bankruptcy lawyer.

**I.**    **POSSIBLE LIMITATIONS ON JUDGE WOLIN'S POWER?**

Frances McGovern initiated the conversation regarding whether Judge Wolin was limited from doing anything as a matter of law by Erie?  If the substantive tort law must be governed by Erie, then Judge Wolin's actions are limited to questions of science.

**II.**    **706 PANEL**

Can a 706 Panel be used in the confines of Bankruptcy? If so, how and who may sit on it?.
What would the Panel be asked to do?

Main Issues to be addressed by the 706 Panel:

1. ILO ratings-

    ie. Is 1/0 replicable? can court accept it under Daubert?

2. Pulmonary Function Testing (PFT)-

    Do we need Pulmonary Function Testing? what diagnostic tools are necessary according to medical professionals?

3. Dose/ Exposure requirements-

    If the burden were on the plaintiff to show certain levels of exposure, the panel would need to determine what level of exposure was required? the problem with this is that the plaintiff can never prove it.

4. Background Risk-

DRG003696

**PRIVILEGED & CONFIDENTIAL MATERIAL**

For example, in the Bendectin case, the Judge required a 2:1 showing of risk that the injury was related to Bendectin as opposed to background risk?

Is it accepted in the medical field that one must establish background risk first?

Who has the burden?

**REDACTED**

III.   **FUTURES' REPRESENTATIVES**

The future's representatives that have been suggested are: Eric Green (Federal-Mogul), Dean Treffelette (Armstrong), Davis Austern (USG), and Jim McMonigal(OC). McMonigal is the only one who has been appointed. Also, no one has yet been named as the future's representative for W.R.Grace. The idea was also mentioned of appointing one futures' representative for all five cases.

What if the future's representatives filed a declaratory action (with no clients) asking for a 706 Panel? The defendants would be the class of all potentially liable defendants. Basically, a class action under a different name with the purpose of getting around the <u>Amchem</u> decision.

LUNCH BREAK (Judge Wolin joined the meeting following the break)

IV.   **PLAINTIFFS' ATTORNEYS/ PLAINTIFFS' CLAIMS**

If we were to follow the American Thoracic Society(ATS) guidelines, would the cost alone drive out the low-end screeners? This will depend on the individual transaction costs for plaintiffs' lawyers. Driving up the costs, and thereby cutting out the bottom group, would require PFT plus 2 B readers.

How much ( of plaintiff's attorneys') income is from trusts as opposed to cases?

V.   **BABCOCK & WILCOX CASE (1998)**

In the Babcock & Wilcox case, in New Orleans, Louisiana (1998), Judge Vance issued an opinion regarding the jury demand. The issues were argued by David Bernick and Elihu _____. Bernick argued that if it was a core issue, then it should be tried in Bankruptcy and there is no right to a jury. On the other side, Elihu _____ argued that it was not a core issue and that therefore there was a right to a jury as with any other issue. The court determined that a core issue existed and, therefore, the case was tried in Bankruptcy, in front of Judge

-2-

DRG003697

## PRIVILEGED & CONFIDENTIAL MATERIAL

Brown. Judge Brown allowed one expert for the futures and 1 for the tort claimants. The experts were Mark Peterson and Tom Florence. (Tom Florence also did the analysis in Grace in 1996-1997.) The trial was bifurcated into two issues: (1) what was the liability in 1998?; and (2) What was reasonably known at that time?

**VI.**      **FRAUDULENT TRANSFER**
As to W.R.Grace, how was the transfer completed?
Also, there are about 1 million claims costing between $8,000 - $10,000 per residence. All the claims are for property damage and the costs of removal. There are no personal injury claims.
The consensus at the meeting was that Judge Wolin must take care of the fraudulent transfer issue first, before proceeding on with the general asbestos/bankruptcy matters. Therefore, it must be determined whether Judge Wolin can take the case or if it will be handled by a bankruptcy judge. Also, is a jury required? In Judge Wolin's opinion, he could have the fraudulent transfer claims tried by this summer. (possibly schedule trial for July or August.)
W.R.Grace case will be divided into four parts:
1. fraudulent transfer
2. vermiculite
    - Dr. Edward Eldrid is the expert on vermiculite.
3. property damage
4. personal injury

**VII.**      **SUMMARY OF "PRESSURE POINTS" OVER PLAINTIFFS**
1. Threat of a 706 Panel
2. Threat of proceeding along David Bernick's route
3. Fraudulent transfer case
4. Staying in Bankruptcy for a long time
5. "related to" action

**VIII.**      **PROPERTY DAMAGE "PRESSURE POINTS"**
1. product identification
2. statute of limitations
3. estimation

**IX.**      **PREPACKAGED BANKRUPTCIES (PREPAKS)**
Francis McGovern proposed the following PrePak plan: liquidate the presents, but don't pay them out; appoint a futures master; file for bankruptcy and get a 5-24G where the insurance companies also get a 5-24G.

**X.**      **SIGNIFICANT DATES**
•      Monday January21, 2002, Judge Wolin meets with Bankruptcy judges in

-3-

## PRIVILEGED & CONFIDENTIAL MATERIAL

Delaware.
- Tuesday, January 22, 2002, Judge Wolin meets with Elihu and Peter Lockwood.
- Thursday, January 24, 2002, Judge Wolin will be meeting with the CEO of Armstrong.
- Friday, February 1, 2002, Judge Weiner will hold a steering committee meeting in Philadelphia. The meeting will take place at 10:00 AM in Courtroom 613.

-4-

DRG003699

Exhibit 88 A



No. 03-4526

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

### In re ACQUISITION PARTNERS, L.P., FERNWOOD ASSOCIATES, L.P. AND DEUTSCHE BANK TRUST COMPANY AMERICAS, Petitioners.

(Related to U.S. Bankruptcy Court for the District of Delaware No. 01-01139)

On Petition for a Writ of Mandamus to Judge Alfred M. Wolin, United States District Judge of New Jersey, sitting by designation in the United States District Court for the District of Delaware

## RESPONSE OF W.R. GRACE TO
## EMERGENCY PETITION FOR A WRIT OF MANDAMUS

**KIRKLAND & ELLIS LLP**
David M. Bernick, P.C.
Janet S. Baer
James M. Kapp, III
200 East Randolph Drive
Chicago, Illinois  60601
(312) 861-2000

**PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.**
Laura Davis Jones (#2436)
David W. Carickhoff, Jr. (#3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705
(Courier 19801)
(302) 652-4100

**December 3, 2003**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

FACTUAL BACKGROUND................................................................................3

    1.    The purpose of the *Grace* case.............................................3

    2.    Proceedings prior to the assignment to Judge Wolin............................3

    3.    The new organization adopted by Judge Wolin....................................4

    4.    Proceedings in the *Grace* case since the reassignment.........................4

    5.    Grace's motion for appointment of a Futures Representative..............6

ARGUMENT.....................................................................................................10

    I.    The Factual Record In This Case Has Not Been
        Developed. ................................................................................10

    II.    Mandamus In The *Grace* Case Appears Unwarranted
        And Unwise. ............................................................................13

CONCLUSION ................................................................................................18

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Federal-Mogul Global, Inc.*,
  300 F.3d 368 (3d Cir. 2002) ..................................................................14, 17

*In re Flat Glass Antitrust Litig.*,
  288 F.3d 83 (3d Cir. 2002) ..........................................................................14

*In re School Asbestos Litig.*,
  977 F.2d 764 (3d Cir. 1992) ........................................................................10

*In re United States*,
  273 F.3d 380 (3d Cir. 2001) ........................................................................14

*Kelly v. Ford Motor Co.*,
  110 F.3d 954 (3d Cir. 1997) ........................................................................14

*Kerr v. U.S. Dist. Ct.*,
  426 U.S. 394 (1976) ....................................................................................14

*Mallard v. United States*,
  490 U.S. 296 (1989) ....................................................................................15

*Sporck v. Peil*,
  759 F.2d 312 (3d Cir. 1985) ........................................................................14

*Will v. United States*,
  389 U.S. 90 (1967) ......................................................................................14

i

Pursuant to this Court's order of November 26, 2003, debtor/respondent W.R. Grace and its affiliated debtors (collectively "Grace") respectfully submit this response to the Emergency Petition for a Writ of Mandamus filed in Case No. 03-4526.

## INTRODUCTION

The five asbestos bankruptcies assigned to Judge Wolin by Judge Becker's order of November 27, 2001, present an enormous challenge, and Judge Wolin responded to that challenge by adopting novel and unorthodox procedures. These cases, accordingly, do not fit neatly into established doctrinal pigeon-holes, but instead present novel and far-reaching issues. Under these circumstances, careful analysis is particularly appropriate, including due consideration of both the potentially significant differences, as well as the similarities, among the five cases.

The mandamus petition filed in this case, however, is simply a "me too" effort to piggy-back on the mandamus petition previously filed in the *Owens Corning* case, No. 03-4212. Rather than discussing the facts particular to the Grace bankruptcy, the petition simply parrots the arguments and facts set forth in the *Owens Corning* petition and requests the same relief. Petitioners thus fail to address what, in Grace's view, is the fundamental and threshold question presented here: whether expedited mandamus relief is necessary and appropriate in *this* case above and beyond any such relief granted in the *Owens Corning* case.

Given that mandamus is a drastic and extraordinary remedy that is to be rarely invoked, it does not appear that petitioners have carried their heavy burden in this regard. All proceedings in this case have been stayed in the district court pending the resolution of the *Owens Corning* petition, so that no separate emergency relief is warranted here: the parties in this case can simply await the ruling in *Owens Corning* and then apply it here in a deliberate manner. If Judge Wolin's use of Messrs. Hamlin and Gross is inherently inconsistent with any permissible role for court advisors, then even substantial differences in the quantity and quality of the work performed by those advisors in the various bankruptcies may be legally irrelevant. But if the particulars of what they did matter, case-specific factual development will be required.

Grace consistently has sought to avoid becoming a vehicle for the strategic agendas of others, and continues to pursue that approach here. Regardless of whether it has faired well or poorly in its case before Judge Wolin, Grace has not sought recusal and has not supported the recusal motions of others. Accordingly, this response will acquaint the Court with the background and status of the *Grace* case in particular, and also point out that petitioners do not appear to have satisfied the rigorous standard for mandamus relief.

2

## FACTUAL BACKGROUND

### 1.    The purpose of the *Grace* case

Grace filed for bankruptcy on April 2, 2001, a casualty of the dramatic upswing in asbestos claims over the previous year. In submissions made on the first day of the case, Grace recited the financial strength of the company and set out comprehensively the core problem that had to be solved in the Chapter 11 cases: to ascertain Grace's true asbestos liability, separating the small number of meritorious claims from thousands of claims of dubious legal merit. Grace also analyzed the procedures uniquely available in Chapter 11 for addressing this problem. In essence, Grace proposed the deployment of both the bankruptcy claims process and the traditional rules of litigation to address key issues underpinning Grace's legal liability.

### 2.    Proceedings prior to the assignment to Judge Wolin

The *Grace* case originally was assigned to Judge Farnan of the District of Delaware. Early on, Judge Farnan called upon Grace to flesh out its proposal for defining liability by crafting a proposed case management order. Such an order was submitted and the matter was fully briefed. A hearing on this crucial aspect of the case was set for November 27, 2001. But the hearing was cancelled that very morning because Judge Farnan had just learned that the case was to be re-assigned.

3

### 3. The new organization adopted by Judge Wolin

As the Court already has been informed by others, Judge Wolin convened an informal meeting of all interested parties shortly after the cases were reassigned. At that meeting, Judge Wolin described the broad outlines of an organization that would be used to accomplish the very substantial task he had undertaken. The basic elements included the division of the work in each case between the district and bankruptcy courts, the use of court advisors, and the invitation of ex parte communications to facilitate the prosecution of the cases.

While Grace did not and has not determined the degree to which each of these elements is novel, its impression was that the scheme as a whole was indeed without precedent. At the same time, there was no question but that the challenge faced by the district court was, as Judge Wolin since has described it, "extraordinary." Regarding potential conflicts, Grace raised a concern regarding Judge Dreier, due to prior litigation in which his firm represented Grace. Grace was not aware at the time of the role being played by Messrs. Hamlin and Gross in the *G-I Holdings* case.

### 4. Proceedings in the *Grace* case since the reassignment

The *Grace* case essentially revolves around four liability issues: (1) liability for asbestos personal injury; (2) liability for asbestos property damage; (3) liability for property damages arising out of a particular attic insulation product (ZAI) that

4

contains trace amounts of asbestos; and (4) fraudulent conveyance claims arising out of 1996 and 1998 transactions that effectively spun off two significant portions of Grace's operations to Fresenius Medical Care Holdings, Inc., and Sealed Air Corporation, respectively.

Once the case was reassigned, these various litigation matters were divided up among District Judge Wolin and Bankruptcy Judge Fitzgerald. Significant progress has been made on the two litigation tracks assigned to Judge Fitzgerald, *i.e.*, property damage and ZAI. The fraudulent conveyance claims were intensively litigated before Judge Wolin and were settled on the eve of trial. Judge Wolin also assumed responsibility for the personal injury litigation, but that litigation has not progressed significantly to date.

This recitation is relevant to ascertaining the impact of Messrs. Gross and Hamlin on the *Grace* case specifically. Previous to the recusal effort, it had been Grace's impression that Mr. Hamlin had done nothing of any consequence specific to the *Grace* case. It was Grace's further understanding that Mr. Gross's sole substantial contribution to the *Grace* case consisted of his apparently successful exertions as a mediator between the tort claimants, on the one hand, and Sealed Air and Fresenius, on the other hand, in the fraudulent conveyance cases. The proposed settlements of those cases, if both approved, could yield over $1 billion in benefit to the Grace estates.

5

More detailed scrutiny of the fee applications now confirms that Messrs. Gross and Hamlin have had no apparent impact on the *Grace* case specifically, excepting only the settlement of the fraudulent conveyance litigation. Mr. Hamlin has spent only six hours on activities specific to the *Grace* case. *See* Hamlin Fee Application Excerpts (attached at Tab A). This time encompassed the discrete task of drafting a memo regarding an appeal pertaining to property damage claims. *See id.* The only other time that Mr. Hamlin has billed to the *Grace* case is a one-fifth allocation of the approximately 38 total hours that he has billed evenly to all five cases. *See id.* The fee applications do not describe work on any issue relating to the interests of future claimants.

Mr. Gross, for his part, was only involved in the *Grace* case to act as a mediator in connection with the Fresenius and Sealed Air litigation. Beyond this activity, Mr. Gross' fee applications reflect only 1.60 hours billed specifically to the *Grace* case for a single phone call with Mr. McGovern. *See* Gross Fee Application Excerpts (attached at Tab B). The only other time billed to the *Grace* case is a one-fifth allocation of the approximately 560 total hours billed by Mr. Gross and his associates evenly to all the five cases. *See id.*

**5.    Grace's motion for appointment of a Futures Representative**

Given the posture of the case until this year, there was little need to put a Futures Representative in place. Activity in the *Grace* case consisted largely of

6

litigation collateral to the main issue of liability for asbestos personal injury claims, and settlement discussions with representatives of current claimants showed no tangible prospect for a consensual plan of reorganization.

Following resolution of the fraudulent conveyance litigation, settlement discussions commenced again. And while, once again, these discussions proved unsuccessful, the process pointed up the need to obtain a Futures Representative. Finding candidates for this position who would be acceptable to all parties was not easy: there are very few people who both have the necessary background and also have not taken positions historically which no party finds problematic. Grace considered a variety of possible candidates, including Messrs. Gross and Hamlin. All candidates had both positives and negatives. Grace and the Personal Injury Committee ultimately agreed upon Mr. Hamlin. Counsel for the Property Damage Claimants, Unsecured Creditors, and Equity holders were still pondering the matter when Grace's application was filed. At that time, no counsel had stated that any Committee would object.

By this time, Grace was aware of Mr. Hamlin's service as Futures Representative in the *G-I Holdings* case. This fact supported, rather than detracted from, his qualifications to act in a similar capacity in the *Grace* case. Grace obviously was aware of Mr. Hamlin's role as an advisor to Judge Wolin as well. This too was regarded as a positive factor. Grace was and is unaware of any

7

assignment made to Mr. Hamlin as an advisor that would create a conflict with his service as a Futures Representative, and his relationship with Judge Wolin as an advisor held out the promise that his actions as a representative would reflect not only advocacy for the interests of future claimants but also consideration of the interests of the bankruptcy case as a whole.

Grace therefore was set to file the application for Mr. Hamlin's appointment on Monday, October 13, which was the last day such an application could be filed in order to be heard by Judge Fitzgerald at the next omnibus hearing. After the close of business the prior Friday, counsel for Grace learned that a recusal motion had been filed in the *Owens Corning* case. This motion was obtained by Grace's counsel on Monday, October 13. Grace felt that Mr. Hamlin's prior involvement as an advisor in the *Grace* case was minimal, and Grace proceeded to file the application.

The evolving efforts to use Grace's application in aid of those seeking recusal in the *Owens Corning* case began shortly thereafter. Grace first was served with a subpoena by the movants in *Owens Corning*, seeking broad discovery regarding the conduct of the *Grace* case. Grace responded by expressing a willingness to negotiate more limited discovery. All discovery related to recusal was stayed by Judge Wolin shortly thereafter, on October 23, 2003. Discovery then was sought by the petitioners here, who inquired into the circumstances

8

surrounding Grace's application for the appointment of Mr. Hamlin. Because this too appeared to be related to the *Owens Corning* case, and because the Court since had issued orders in connection with that case, Grace moved to hold its application in abeyance until the *Owens Corning* matter had been resolved. After Grace afforded petitioners certain discovery, they agreed to suspend any further request for discovery until the application was revived. Finally, during a subsequent omnibus hearing, Judge Fitzgerald stated that she did not believe Mr. Hamlin could serve as a Futures Representative, and Grace withdrew its application.

The petition for mandamus in the *Owens Corning* case was filed on October 27, 2003. At that time, no motion to recuse or disqualify Judge Wolin had been filed with respect to the *Grace* case. On November 5, 2003, in response to a stay entered by this Court in the *Owens Corning* proceeding two days earlier, Judge Wolin stayed all proceedings before the district court in this case and other related asbestos bankruptcies. Despite that stay, on November 14 petitioners moved to recuse Judge Wolin from the *Grace* case. Then, a mere seven days later, petitioners filed their petition for mandamus in this Court requesting either (a) recusal of Judge Wolin, or (b) an order that Judge Wolin "expedite consideration" of petitioner's week-old recusal motion.

## ARGUMENT

As stated at the outset, Grace expresses no view regarding the legal underpinnings for the recusal motions filed in the *Owens Corning* case or this case. The legal issues are novel, and the factual record is minimal. Perhaps most important, petitioners have not even attempted to satisfy their burden of proving that mandamus relief is necessary and appropriate in the *Grace* case above and beyond any such relief in the *Owens Corning* case—presumably because they are more interested in creating the appearance of a "growing consensus" favoring recusal, Credit Suisse First Boston Br. of Nov. 21, 2003 at p.4, than in providing solid legal analysis of the relevant issues.

## I.     The Factual Record In This Case Has Not Been Developed.

The roles undertaken by Messrs. Hamlin and Gross in the *G-I Holdings* case are well-defined: to act as (and on behalf of) a statutory representative of future claimants. The allegedly conflicting role of advising Judge Wolin, however, is less clear on its face and requires scrutiny of the facts. Those facts may, and apparently do, vary by case. The facts that may be critical are likely those bearing upon the scope and substance of the advisory role. The overarching consideration is "whether a reasonable person, knowing all the acknowledged circumstances, might question the district judge's continued impartiality." *In re School Asbestos Litig.*, 977 F.2d 764, 781 (3d Cir. 1992).

10

In the *Grace* case, there could well be advisory roles that might create a real or apparent conflict. The clearest case would be one in which the advisors spoke to the merit or value of future claims against Grace. But the record now before the Court does not reflect that Messrs. Hamlin or Gross were asked for or furnished any such advice in the *Grace* case.

Indeed, none of the active litigation has implicated future claimants, and none of the settlement discussions have gotten past an impasse with current personal injury claimants. It is precisely these facts which have accounted for the absence of a Futures Representative—there has been no need for such a representative because matters relating to future claims simply have not been on the table.

It is possible, of course, that Messrs. Hamlin and Gross were asked to advise Judge Wolin on issues relating to future claims in general, without reference to the *Grace* case in particular. Again, however, there is no record of this before the Court. The absence of any evidence that Messrs. Gross and Hamlin were asked to advise Judge Wolin with regard to future claims also has a corollary: there is no evidence that the activities of those individuals in the *G-I Holdings* case have played any part in the *Grace* case.

In the *Owens Corning* case, this Court at least has the benefit of the affidavits of the advisors ordered by the district court on October 28, 2003. Here,

11

there is no such record, yet petitioners forge ahead as if absence of a factual record is immaterial, or as if the factual record from *Owens Corning* fits all the cases.

In a similar vein, petitioners focus on *ex parte* contacts with reference to the *Owens Corning* case or all five related asbestos bankruptcies generally. Pet. at 18-21. But the nature and scope of the involvement of Messrs. Hamlin and Gross has varied substantially from case to case. In fact, Judge Wolin has adjudicated very few issues of *any* kind in the *Grace* case and none have related to asbestos personal injury claims, much less the future personal injury claims that are the focus of Messrs. Hamlin and Gross in the *G-I Holdings* case. Specifically, in the *Grace* case, Judge Wolin has decided only:

- to affirm Judge Fitzgerald's Order denying the motion of the ZAI Claimants to strike the Proofs of Claim filed by Grace on behalf of such Claimants. *See* 8/30/02 Order, Docket No. 2646.

- to decline to accept the appeal of Judge Fitzgerald's Order establishing a Bar Date for Asbestos Property Damage Claims, approving a Proof of Claim Form, and approving a Bar Date Notice Program. *See* 8/16/02 Order, Docket No. 2555.

- to vacate Judge Fitzgerald's Order denying certain asbestos claimant's request to modify the scope of the preliminary injunction entered by the Bankruptcy Court enjoining certain actions from proceeding

12

against Maryland Casualty Company and remanding for further proceedings. *See* 7/16/02 Order, Case No. 02-1549, Docket No. 20.

- to approve the settlement agreement with Fresenius with respect to certain fraudulent conveyance claims that could yield an approximately $100 million benefit to the Grace estates. *See* 6/25/03 Order, Case No. 02-2211, Docket No. 522.

- various issues regarding discovery and the standard of proof for fraudulent conveyance claims. In this connection, Judge Wolin was explicit that he was not reaching the issue of estimating personal injury liability for any purpose other than to decide solvency as of 1998. *See* 7/29/02 Opinion, Case No. 02-211, Docket No. 121.

None of these matters specifically involved current, much less future, personal injury claims. If the factual record is relevant to determining whether the roles played by Messrs. Hamlin and Gross violated the rules of propriety, then this mandamus petition fails to engage the factual record, and further case-specific factual development is warranted.

## II.    Mandamus In The *Grace* Case Appears Unwarranted And Unwise.

As the Supreme Court and this Court have emphasized time and again, a writ of mandamus is an "extraordinary remedy" appropriate "only [in] exceptional circumstances amounting to a judicial usurpation of power." *Will v. United States,*

13

389 U.S. 90, 95 (1967) (internal quotation omitted); *see also In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 378-79 & n.6 (3d Cir. 2002); *In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 91 (3d Cir. 2002); *Sporck v. Peil*, 759 F.2d 312, 314 (3d Cir. 1985). Accordingly, mandamus is "rarely invoked," *In re United States*, 273 F.3d 380, 385 (3d Cir. 2001), and appropriate only where "the party seeking ... the writ ha[s] no other adequate means to attain the relief he desires," *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 403 (1976). Needless to say, "comity between the district and appellate courts is best served by resort to mandamus only in limited circumstances." *Kelly v. Ford Motor Co.*, 110 F.3d 954, 964 (3d Cir. 1997).

Either the issues presented by petitioners are identical to the issues presented by the *Owens Corning* petition, or they are not. If the issues are indeed identical, then this Court's ruling in *Owens Corning* can be swiftly applied by any district court receiving this case. If the issues are not identical, then it makes sense for the parties to have an opportunity to review this Court's decision in *Owens Corning* and analyze whether any of the differences are dispositive. Accordingly, whether any relief is appropriate in this case can and should be decided in light of *Owens Corning*, and in the interim there is no prejudice to petitioners here because all proceedings in the district court have been stayed. Petitioners have not demonstrated any need for this Court to "pile on" Judge Wolin by entertaining and resolving more mandamus petitions than necessary. The extent to which there are

14

factual and legal differences between this case and *Owens Corning*, and the extent to which such differences bear on the recusal issue, can be addressed in a deliberate, non-emergency fashion based upon this Court's resolution of the *Owens Corning* petition.

In short, in light of *Owens Corning*, petitioners in this case have "adequate alternative means to obtain the relief" they are seeking, *Mallard v. United States*, 490 U.S. 296, 309 (1989): by filing an *amicus* brief in that case, and then subsequently arguing in the district court that the result in that case should (or should not) govern here. Certainly petitioners' gratuitous and belated mandamus petition should not force the district court, Grace, or this Court to opine prematurely on how the recusal issues presented in *Owens Corning* compare with the undeveloped facts in this case. Petitioners simply do not appear to have met the demanding mandamus standard, wholly apart from the merits of their substantive claims.

That petitioners have no need of emergency relief is demonstrated by their delayed reaction to the October 23 recusal motion in *Owens Corning*. It was the movants in *Owens Corning* who first sought to reach out to the *Grace* case, causing the issuance of a subpoena for discovery into Grace's just-filed application for appointment of a Futures Representative. Grace initiated discussions with

15

counsel for the *Owens Corning* movants concerning the scope of the proposed discovery, but the discovery was stayed shortly thereafter by Judge Wolin.

It was only after discovery was stayed with respect to the recusal motion in *Owens Corning* that petitioners here commenced their own discovery effort, propounding formal discovery into the Grace's application for the appointment of Mr. Hamlin as a futures representative. The timing of this discovery in relation to the stayed discovery strongly suggested that the motive had nothing to do with the *Grace* case itself and everything to do with serving the interests of the recusal motion in *Owens Corning*. Moreover, petitioners made no effort to reach out to Grace informally to obtain information, contrary to a well-established practice of doing so in the past. Both because the discovery appeared linked to the recusal motion and because this Court had just issued its order of October 30 indicating its intent to take up the recusal issue, Grace felt that the most appropriate posture was simply to remain neutral. Accordingly, it filed a request that its application for appointment of a futures representative be held in abeyance. After Grace agreed to furnish documents reflecting communications related to its application, petitioners agreed to suspend any further discovery.

Nevertheless, petitioners belatedly moved for recusal of Judge Wolin. Their motion was filed one month after the recusal motion in *Owens Corning*. It also came after the petition for mandamus in *Owens Corning*, after this Court's

16

issuance of a stay and briefing schedule in *Owens Corning*, and after Judge

Wolin's stay of proceedings involving the *Grace* bankruptcy. Then, only one

week after moving for recusal, petitioners sought a petition for mandamus from

this Court. Why petitioners could not wait more than a week for a district court

decision, when they had waited over one month after the recusal motion in *Owens*

*Corning* to file their own copycat motion, is not explained in the petition. Also

unexplained is why petitioners require the extraordinary relief of mandamus when

they are the beneficiaries of a stay of proceedings before the district court. It thus

appears that petitioners have not carried their heavy "burden to demonstrate that

[their] right to the writ is clear and indisputable." *Federal-Mogul*, 300 F.3d at 379

(quotation omitted).

## CONCLUSION

For the foregoing reasons, Grace does not believe that recusal in this case should or must be addressed by way of expedited mandamus proceedings. Rather, recusal should be considered first in the district court with this Court's guidance from *In re Owens Corning*.

Dated:  December 3, 2003

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
James W. Kapp, III
200 East Randolph Drive
Chicago, Illinois  60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG JONES &
WEINTRAUB P.C.

*David W Carickhoff*

Laura Davis Jones (DE Bar No. 2436)
David W. Carickhoff, Jr. (DE Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

## CERTIFICATE OF SERVICE

I, David W. Carickhoff, Jr., hereby certify that on the 3rd day of December, 2003,

I caused a copy of the foregoing **Response of W.R. Grace to Emergency Petition for a Writ of**

**Mandamus** to be served on the attached Service List in the manner there indicated.

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB P.C.

David W. Carickhoff, Jr. (Bar No. 3715)
919 N. Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  302-652-4100
Facsimile:  302-652-4400

Exhibit 145 A

DRG                    Bankrupt~              meeting
J. Drier
Mcbovern              ~~~~~ Section~l
Reese                                                1118
Hamlin

Al Parnell (defense)
Madeline Chaber (Oakland, Berkeley)

~~Will 706 Panel address~~

Can Wolin do anything as a matter
of law ~~outer~~ of Erie?
        If not, then he can only do,
        across the board, a question
        of science.

Substantive tort law must be governed
by Erie.

Can 706 panel be used in confines
of bankruptcy?
        - Billy Cashion? (bank. lawyer)

Can we do it?
How?
who on it?

Products are not friction products
(sprays, etc)

DRG000652

JA003020

What would a TDo Panel due is it were
asked to do something?

- model —

assume have Panel, what issues do you
put to it?          ILO?

1) ie ILO 1/O  --- is not replicable
      ie ct doesn't accept it under Daubert

2) (general acceptance under Daubert) do you
   pulmonary (CPFT) testing?

> What are diagnostic tools necessary?
   according to medical professionals?

3. exposure/dose
   test in NJ vs test in NY

   if burden on II to show certain level
   of exposure
            question to panel is: what
            level of exposure is reqd to
            prove?

Working backwards

DRG000653

4. ie bendictin, Rosinsky model 2:1 risk
      that _____ is related to bendictin or exposed
      to background risk?
   Is it accepted in medical field, that you must
   establish background risk first?

JA003021

4,cont. Where do you put burden?

**REDACTED**

[Fred - Baron & Budd, Foster, Silver Pearlman]
5-24 0

★ Future's Reps

Eric Green          Fed Mogul
Dean ~~Trafelet~~          Armstrong
David Austern          USG
                    Grace
Jim McMonigal          OC          (only one appointed)
Sara Beckerman

★ Feb 1 - Scheduling          10:00 Courtroom 6
        Judge Weiner    in   Philadelphia
        - Steering committee meeting

DRG000654

JA003022

(7)

?6 what if ~~Asbes~~ reps filed dec action
(w/no clients) asking for 7́0́6 panel ?
opt in class

A = all potential liable ∆s (in ~~a~~ class)
concurrent presents class (buy them off)
[basically class action under different name.
Can we get around Amchem ?


~~Phoenix~~ Pa Corp — 83-84
3rd Cir bankruptcy

Standing —
class action  v. bankruptcy

DRG000655

JA003023

<u>After lunch :</u>          <u>Tox Panel</u>

<u>issues</u>

1. Is 1-0 ~~applicable~~ ?"
2. PFT
3. dose          (problem : Π can never prove it)
4. relative risk

Follow ATS guidelines — drive out
low end screeners b/c of cost

Internal transaction costs for lawyer.

drive up costs of Drs to cut out bottom
PFT + 2 B readers

How much income is from trust
v. cases ?

Scott —
   — insurance coverage of manufacturers
   — ready to get rid of all assets or
      pre-pak

DRG000656

JA003024

Grace - all claims are for property damage
(costs of removal)

TW's new
- fraud trans. tried by Summer
- Daubert hearings -- decide reliable
  science

+) Judge Vance's opinion on Jury Demand
   (argued by Elihu & David Bernick)
   → core issue so bank judg. shall
     try it. Bank Judg tried it.
   DB: if core issue, then bankruptcy and
       no rt to jury
   EI: not core issue, so rt to jury
       as w/any othr issue
   Bankruptcy Judge Brown
   experts by TIS:                    ↗ allowed
                                      1 expert
   Mark Peterson                      for Rlives, 1
   Tom Florence                       for claimants
   - no question of validity of claims
   bifurcated trial:
     1. what was liability in 1998?
     2. what did reasonable
        know then?

DRG000657

In Grace - Tom Florence did analysis
                in 96-97

524 ?

How did Grace transfer ?
→ must get rid of fraudulent transfer
issue first !

1 million claims - $8,000 - $10,000 per
residence

Dr. Edward Elovid → expert on vermiculite

Next Thusdy - Tof Wollin meets
w/ CEO of Armstrong

property claims in Boston before
district Tdge

pressure points
~~points of power~~ over TIs →
1. threat of 706 panel
2.   "   Daubert rate
3. Fraudulent transfer
4. staying in bankruptcy for a long time
5. related to
6. Piss off J. Wolin ?

DRG000658

JA003026

property damage pressure points:
  1. product identification
  2. stat of lim    (Anderson Hospital)
  3. estimation  (filed ~~xxxx~~)

4 parts:
  1. fraudulent transfer
  2. Vermiculite
  3. prop damage
  4. personel injury

if PB's 'related to' is denied (back to stat of)

∴ plan —
  - ~~xxxxx~~ after ~~xxxx~~ 4
  - settle on fed-mg, etc.
  if all ∅ settle

~~Class~~
Classify Creditors
     malignant (impaired)
         v.   unimpaired

Prepaks —
    liquidate presents (at ~~xxx~~ pg.)
    appoint "futures master
    file 6 bank ∴ get 5-24 6
    Insurance Cos also

DRG000659

JA003027

1. fraud conveyance
   - Wolin or bankcy judge
     (do we need a jury?)

2. ~~Futureman~~ Rep
   - Newsome wants 1 for all
   OC - Jim McManagle
   Redng - Eric Green (not appointed yet)
   armst - Dean Trafelette (not apptd ye
   grau -
   USG - David Austern

3. fee examiner - common?
   - why not just US trustee

4. committee formation

~~Wolin~~

Monday - Jdge Wolin to DE
Thesf - Elihu ; Peter Lockwood meet
         w/ Wolin
then get Bernick ; CEO

DRG000660

JA003028

## BANKRUPTCY BACKGROUND MEETING

DRG
J. DRIVER
MCGOVERN
KEEFE
HAMLIN

Al Parnell (defense)
Madeline Chaben (Oakland, Berkeley)

McG  - Can Wolin do anything as a matter of law _____ of Erie?
      If not, then he can only do, across the board, a question of science.

  - Substantive tort law must be governed by Erie.

  - Can 706 panel be used in confines of bankruptcy?
      Billy Cashion?  (bank, lawyer)

Can we do it?
How?
Who on it?

Products are not friction products (sprays, etc.)

What would a 706 panel due if it were asked to do something?

McG  - Model -
1.    Assume we have panel, what issues do you put to it?  ILO?  i.e., 110 is not replicable ... court does not accept it under Daubert.

2.    (General acceptance under Daubert) do you _____ pulmonary (PFT) testing?

→  What are diagnostic tools necessary? ... according to medical professionals?

3.    Exposure/dose.  Test in NJ v. test in NY.

If burden on plaintiff to show certain level of exposure:
    Question to panel is what level of exposure is required to prove?

Working backwards.

4.    i.e., Bendictin, Judy Rosinsky needed 2:1 risk that _____ was related to Bendictin as opposed to background risk?

DRG000661

JA003029

Is it accepted in medical field, that you must establish background risk
first?
Where do you put burden?

<u>David Bernick</u> (K&E letter)


**REDACTED**



[Fred - Baron & Budd, Foster, Silver Pearlman]
5-240

★ <u>Future's Reps</u>
   Eric Green           Fed Mogul
   Dean Treffelet     Armstrong
   David Austin       USG
                   Grace
Jim McMonigal     OC (only one appointed)

★ Feb. 1 - Scheduling - 10:00 - Courtroom 6B
       Judge Weiner in Philadelphia
       Steering committee meeting

McG   What if _____ reps filed _____ action (with no clients) asking for 706 panel?
      Opt in class
      Defendant = all potential liable defendants (in _____ class) concurrent presents class
      (buy them off)
      (Basically class action under different name]
      Can we get around AmChem?

<u>Pa Corp</u> - 83-84
      3rd Circuit Bankruptcy

Standing -
      Class action v. bankruptcy

<u>After lunch:</u>       <u>706 Panel</u>

<u>Issues</u>

-2-

DRG000662

JA003030

1. "Is 1-0 _____?"
2. PFT
3. Dose (Problem: plaintiff can never prove it)
4. Relative risk

Follow ATS guidelines – drive out low end screeners because of cost.

Internal transaction costs for lawyer?

Drive up costs of doctors to cut out bottom: PTF plus 2B readers

How much income is from trust v. cases?

<u>Scott</u>
      - Insurance coverage at manufacturers
      - Ready to get rid of all assets on prepak

<u>Grace</u>
      - All claims are for property damage (cost of removal)

<u>J.W.</u>
      - Fraud trans. Tried by summer
      - Dalbert hearings – decide reliable science

<u>Judge Vance</u>'s opinion on Jury Demand (argued by Elihu & David Bernick)
Louisiana?   → care issue by bank judge should try it.  Bank Judge tried it
B&W?       DB: if core issue, then bankruptcy and no right to jury
1988       EL: not core issue, so right to jury as with any other issue
        Bankruptcy Judge Brown
        Expert for plaintiffs:
           Mark Peterson
           Tom Florence
        No question of validity of claims bifurcated trial:
          1.    What was liability in 1998?
          2.    What did reasonable _____ know then?

<u>In Grace</u>
      Tom Florence did analysis in 96-97
5-24?
      How did Grace transfer?
  → Must get rid of fraudulent transfer issue first!

      One million claims - $8,000-$10,000 per residence

      Dr. Edward Eloria → expert on vermiculite

-3-

DRG000663

JA003031

Next Thursday - Judge Wolin meets with CEO of Armstrong

Property claims in Boston before District Judge _____

Pressure Points our Plaintiffs
      1.    Threat of 706 panel
      2.    Threat of David's route
      3.    Fraudulent transfer
      4.    Staying in bankruptcy for a long time
      5.    Related to
      6.  · Piss of Judge Wolin?

**REDACTED**

Property damage pressure points:
      1.    Product identification
      2.    Statute of limitations (Anderson Hospital filed _____)
      3.    Estimation

Four Parts
      1.    Fraudulent transfer
      2.    Vermiculite
      3.    Property damage
      4.    Personal injury

If DB's "related to" is denied (back to state court)

McG Plan
    - After ·_____ 4
    - Settle on fed-mg, etc. if all 5 settle

Classify Creditors
    - Malignant (impaired) v. unimpaired

PrePaks
    - liquidate presents (but _____ pg)
    - appoint _____ master
    - file for bankruptcy and get 5-24G
    - insurance companies also
        1.    Fraud conveyance
                Wolin or bankruptcy judge (do we need a jury?)

        2.    _____ Rep.
                Newsome wants one for all
                OC - Jim McMonagle
                Fed Mogel - Eric Green (not appointed yet)

-4-

DRG000664

JA003032

Armstrong - Dean Traffelette (not appointed yet)
Grace -
USG - David Austern

3.    Fee examiner - common? - why not just US trustee

4.    Committee formation

Monday - Judge Wolin to DE

Tuesday - Elihu & Peter Lockwood meet w/ Judge Wolin
          Then get Bernick & CEO

Confidential memo to DRG - have Claudette fax - no copies
Details of meeting and general overview

Add dates

400722

-5-

DRG000665

JA003033

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

## CERTIFICATE OF SERVICE

I, Janet Baer, hereby certify that on the 20th day of January 2004, I caused a copy of the following document to be served on the individuals on the attached service lists(s) via electronic mail and via federal express delivery:

**W.R. GRACE'S OBJECTION AND MOTION TO STRIKE CERTAIN EXHIBITS CONTAINED IN THE JOINT APPENDIX FILED JANUARY 20, 2004**

Janet Baer

## SERVICE LIST

*Via Federal Express*
The Honorable Alfred M. Wolin
Martine Luther King Federal Courthouse
50 Walnut Street
Newark, NJ 07101

*Electronic Mail*
Gary A. Orseck
Larry Robbins
Roy Englert
**Robbins, Russell, Englert, Orseck &
Untereiner, LLP**
1801 K Street, N.W., Suite 411
Washington, DC 20006
(202) 775-4500
(202) 775-4510 FAX
gorseck@robbinsrussell.com
lrobbins@robbinsrussell.com
renglert@rubbinsrussel.com
Represents Kensington & Springfield

*Electronic Mail*
Stephen C. Neal
Scott Devereaux
**Cooley Godward, LLP**
3000 El Camino Real
Palo Alto, VA 94306-2155
(650) 843-5000
(650) 857-0663 FAX
nealsc@cooley.com
devereauxsd@cooley.com
Represents USG

*Electronic Mail*
Paul R. DeFilippo
**Wollmuth, Mayer, & Deutsch**
One Gateway Center
Newark, New Jersey 07102
pdefilippo@wmd-law.com
Represents USG

*Electronic Mail*
Jennifer L. Scoliard
Joanne Wills
**Klehr, Harrison, Harvey, Branzburg &
Ellers, LLP**
919 Market Street, Suite 1000
Wilmington, DE 19801
(302) 426-1189
789508.2 1/20/04

(302) 426-9193 FAX
jscoliard@klehr.com
jwills@klehr.com
Represents D.K. Acquisition Partners,
Fernwood Associates &
Deutsche Bank Trust Company America

***Electronic Mail***
Richard Mancino
Christopher J. St. Jeanos
**Willkie, Farr & Gallagher**
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
(212) 728-8111 FAX
rmancino@wilkie.com
cstjeanos@willkie.com
Represents:  D.K. Acquisition Partners,
Fernwood Associates &
Deutsche Bank Trust Company America

***Electronic Mail***
Conor Bastable
**DK Acquisition Partners**
885 Third Avenue
New York, New York 10022
cbastable@dkpartners.com

***Electronic Mail***
Jeffrey Trachtman
Ellen Nadler
Ken Eckstein
**Kramer, Levin, Naftalis & Frankel LLP**
919 Third Avenue
New York, NY 10022
(212) 715-9174
(212) 715-8000 FAX
jtrachtman@kramerlevin.com
enadler@kramerlevin.com
keckstein@kamerlevin.com
Represents:  Credit Suisse First Boston

***Electronic Mail***
Aaron Stiefel
Jane W. Parker
Michael J. Crames
Edmund Emrich
**Kaye Scholer, LLP**

425 Park Avenue
New York, NY 10022-3598
(212) 836-8000
(212) 836-8689 FAX
astiefel@kayescholer.com
jparver@kayescholer.com
mcrames@kayescholer.com
eemrich@kayescholer.com
Represents James McMonagle,
Owens Corning Futures Representative and Dean Trafelet,
USG and Armstrong Futures Representative

***Electronic Mail***
Elihu Inselbuch
Caplin & Drysdale
399 Park Avenue, 27th Floor
New York, NY 10022-4614
(212) 319-7125
(212) 644-6755 FAX
ei@capdale.com
Represents Asbestos Claimants
Committee in Owens Corning,
USG, W.R. Grace and Armstrong


***Electronic Mail***
Peter Lockwood
Ted Swett
Julie Davis
Nate Finch
**Caplin & Drysdale**
One Thomas Circle, N.W.
Washington, DC 20005
(202) 862-5000
pvnl@capdale.com
tws@capdale.com
jwd@capdale.com
ndf@capdale.com
Represents Asbestos Claimants
Committee in Owens Corning,
USG, W.R. Grace and Armstrong

***Electronic Mail***
Kenneth Pasquale
David Sifre
**Stroock & Stroock & Lavan, LLP**
180 Maiden Lane
New York, NY 10038
(212) 806-5400
(212) 806-6006 FAX
kpasquale@stroock.com

dsifre@stroock.com
Represents Official Committee of
Unsecured Creditors of USG and Grace

*Electronic Mail*
William S. Katchen
**Duane Morris**
744 Broad Street, Suite 1200
Newark, NJ 07102-3889
(973) 424-2031
(973) 424-2001 FAX
wskatchen@duanemorris.com
Represents Official Committee of
Unsecured Creditors of USG

*Electronic Mail*
Jeffrey R. Waxman
**Cozen O'Connor**
Chase Manhattan Centre
1201 North Market Street, Suite 1400
Wilmington, DE 19801
(302) 295-2077
(302) 295-2013 FAX
jwaxman@cozen.com
arosenberg@paulweiss.com
lfriedman@paulweiss.com
Represents Armstrong Creditors

*Electronic Mail*
Debra A. Dandeneau
**Weil, Gotshal & Manges, LLP**
767 Fifth Avenue
New York, NY 10153-0119
(212) 310-8000
(212) 310-8007 FAX
debra.dandeneau@weil.com
Represents Armstrong

*Electronic Mail*
John R. Berringer
**Anderson, Kill & Olick**
1251 Avenue of the Americas
New York, NY 10020
(212) 278-1000
(212) 278-1733 FAX
jberringer@andersonill.com
Represents Designated Members of the
Unsecured Creditors Committee in OC

*Electronic Mail*
Allyn Danzeisen
789508.2 1/20/04

-4-

**Bilzin Sumberg Baena Price &**
**Axelrod LLP**
200 S Biscayne Boulevard, Suite 2500
Miami, FL 33131
(305) 350-2388
(305) 351-2214 FAX
adanzeisen@bilzin.com
Asbestos Property Damage Committees in
USG & W.R. Grace

*Electronic Mail*
Steven H. Case
Gordon Harris
Sharon Katz
**Davis Polk & Wardell**
450 Lexington Avenue
(212) 450-4000
(212) 450-3800 FAX
case@dpw.com
harriss@depw.com
skatz@dpw.com
Represents Official Committee of
Unsecured Creditors in OC

*Electronic Mail*
Judge William Dreier
**Norris McLaughlin & Marcus, PA**
721 Bridgewater, NJ 08807
(908) 722-0700
(908) 722-0755 FAX
wadreier@nmmlaw.com
Advisor

*Electronic Mail*
Mike Scheier
**Keating Muething & Klekamp**
1400 Provident Tower
One East 4th Street
Cincinnati, OH 45202
(513) 570-6400
(513) 579-6457 FAX
mscheier@kmklaw.com
Represents Advisor Judd Hamlin

*Electronic Mail*
John J. Gibbons
**Gibbons, Del Deo, Dolan, Griffinger**
**& Vecchione**
One Riverfront Plaza
Newark, NJ 07102
(973) 596-4733

789508.2 1/20/04

-5-

(973) 639-6271 FAX
jgibbons@gibbonslaw.com
Represents Kensington (local counsel)

***Electronic Mail***
Nancy A. Washington
**Saiber, Schlesinger, Staz & Goldstein, LLC**
One Gateway Center, 13th Floor
(973) 622-3333
(973) 622-3349 FAX
naw@saiber.com
Represents David Gross, Advisor

***Electronic Mail***
John Shaffer
**Stutman, Treister & Glatt**
1901 Avenue of the Stars, 12th Floor
(310) 228-5600
(310) 228-5788 FAX
kjshaffer@stutman.com
Represents Kensington/Springfield

***Electronic Mail***
David Parker
**Kleinberg, Kaplan, Wolff & Cohen, P.C.**
551 Fifth Avenue
New York, New York 10176
dparker@kkwc.com
Represents Kensington & Springfield

***Electronic Mail***
Mary Martin
**USG**
125 South Franklin Street
Chicago, IL 60606
(312) 606-5368
(312) 606-4208
mamartin@usg.com

*Electronic Mail*
Mark D. Brodsky
**Elliott Associates, LP**
712 Fifth Avenue
New York, NY 10019
(212) 506-2999
(212) 974-2092 FAX
mbrodsky@elliottmgmt.com

*Electronic Mail*
James E. Coleman, Jr.
3809 Chippenham Road
Durham, NC 27707
(919) 613-7057
(919) 613-7231
jcoleman@law.duke.edu
Counsel for Francis McGovern

*Electronic Mail*
**Judge James E. Keefe, Sr.**
Lynch Martin
1368 How Lane
North Brunswick, NJ 08902
(732) 545-0745
(732) 545-4780
judgekeefe@lmknet.com

*Electronic Mail*
Norman L. Pernick
**Saul Ewing LLP**
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE 19899
302-421-6800 (x6824)
302-421-6813 (Fax)
npernick@saul.com

*Electronic Mail*
Charles O. Monk
Henry R. Abrams
Matthew G. Dobson
**Saul Ewing LLP**
100 South Charles Street
Baltimore, MD 21201
cmonk@saul.com
habrams@saul.com
mdobson@saul.com