**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: Owens Corning, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Case Nos. 00-3837 |
| | ) |      to 00-3854 (JKF) |
| | ) | |
| | | |
| In re: W.R. Grace & Co., et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Case Nos. 01-1139 |
| | ) |      to 01-1200 (JKF) |
| | ) | |
| | | |
| In re: USG Corp., et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Case Nos. 01-2094 |
| | ) |      to 01-2104 (JKF) |
| | ) | |

**[AMENDED] SUBMISSION OF THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS OF ARMSTRONG WORLD**
**INDUSTRIES, INC., ET AL., ON MOTIONS FOR RECUSAL[1]**

TO:    THE HONORABLE ALFRED M. WOLIN,
         UNITED STATES DISTRICT JUDGE:

        The Official Committee of Unsecured Creditors of Armstrong World Industries,

Inc., et al. (the "Armstrong Committee"), by its undersigned counsel, submits this brief with

respect to the motions for recusal currently pending before the Court in the captioned matters.

**I.**

**Preliminary Statement**

        1.      The Armstrong Committee currently takes no position as to the merits of

the pending recusal motions.  Given that the motions raise serious issues with respect to the

---

[1]    This Amended Submission of the Official Committee of Unsecured Creditors of Armstrong
World Industries, Inc., et al., differs from that previously filed solely to the extent that the exhibit
references have been amended, where applicable, to cite to the Consolidated Joint Appendix, in
the form "JA Exh. _____."

District Court's administration as well as its use of consultants in each of the five asbestos-related chapter 11 cases pending in the District of Delaware (together, the "Five Asbestos Cases"),[2] including *In re Armstrong World Industries, Inc, et al.*, Case Nos. 00-4471, 00-4469, 00-4470 (the "Armstrong Cases"), the Armstrong Committee has a direct and significant interest in the resolution of the issues raised by the motion.  Should this Court grant the motion, it should extend such ruling to the Armstrong Cases.

## II.

## Factual Background

### A.    Assignment to Judge Wolin

2.    On December 6, 2000, Armstrong and two of its wholly-owned subsidiaries (the "Armstrong Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Four other companies (W.R. Grace & Co., Federal-Mogul Global, Inc., United States Gypsum Corporation ("USG"), and Owens Corning) filed chapter 11 petitions in a similar time frame.  These Five Asbestos Cases are part of a nationwide series of asbestos-related bankruptcy filings, in which otherwise profitable manufacturing companies have had to resort to the court-supervised reorganization process in order to resolve their liabilities for asbestos-related personal injury and wrongful death claims.

3.    By order dated November 27, 2001, then-Chief Judge Edward R. Becker of the United States Court of Appeals for the Third Circuit ordered the transfer of all Five Asbestos Cases from the Bankruptcy Court to the Honorable Alfred M. Wolin of the United

---

[2]    The Five Asbestos Cases include *In re W.R. Grace & Co., et al.*, Case Nos. 01-1139 through 01-1200; *In re Federal-Mogul Global, Inc., T&N Limited, et al.*, Case Nos. 01-10578, *et al.*; *In re USG Corporation, et al.*, Case Nos. 01-2094 through 01-2104; *In re Owens Corning, et al.*, Case Nos. 00-3837 through 00-3854; and *In re Armstrong World Industries, Inc. et al.*, Case Nos. 00-447, 00-4469, 00-4470.

States District Court for the District of New Jersey.  Chief Judge Becker stated his "considered judgment that these bankruptcy cases, which carry with them tens of thousands [of] asbestos claims, need to be consolidated before a single judge so that a coordinated plan for management can be developed and implemented."  Chief Judge Becker deemed this assignment and consolidation "critically important to the administration of justice."  (JA Exh. 91).

4.     On December 10, 2001, in keeping with Chief Judge Becker's order, District Judge Wolin referred portions of the Five Asbestos Cases back to the Bankruptcy Court, but expressly ordered that "the withdrawal of the reference is specifically contemplated with respect to asbestos-related claims and issues."

**B.     The Role of Consultants**

5.     On December 28, 2001, District Judge Wolin entered an order, applicable to each of the Five Asbestos Cases, appointing William A. Dreier, Esq., David R. Gross, Esq., C. Judson Hamlin, Esq., and Professor Francis E. McGovern (the "Consultants") as consultants for each of the Five Asbestos Cases.  (JA Exh. 105).

6.     The Consultants assisted the Judge in addressing a "myriad" of problems that were common to these five asbestos bankruptcies – and to such cases generally.  (*See* Hamlin Tr. 15).[3]  The "myriad" common issues discussed and considered by the Consultants and the Court included, without limitation:   (a) whether the use of a panel of medical experts pursuant to Federal Rule of Evidence 706 was appropriate for dealing with these cases (Gross Tr. 77-80); (b) the content of proof of claim forms in the Five Asbestos Cases (*Id.* at 321-22); (c) creation of trust distribution procedures (*Id.* at 390); (d) how to deal with asymptomatic or

---

[3]    As noted below, the Armstrong Committee was excluded from participating in the referenced depositions, but was provided by other counsel with copies of the transcripts.

unimpaired claimants (Hamlin Tr. 17, 53-54; *see also* JA Exh. 98, ¶ 6); (e) the role of insurance

coverage, exhaustion of coverage, and the degree to which insurance companies could control

the defense (Hamlin Tr. 17); (f) how to manage the unliquidated tort claims competing with

secured and unsecured creditors (*Id.*); (g) how to manage property damage claims (*Id.*); (h) how

to achieve the supermajority approval required for a consensual resolution (*Id.*); (i) how recent

developments in mass tort law, such as the *Daubert* and *Cumo Tire* rulings, impact on the Five

Asbestos Cases (Dreier Tr. 155); and (j) federal asbestos reform legislation.  (Dreier Tr. 117 &

Depo. Exh. 7).

       7.     The five consultants had meetings on at least four occasions, lasting from

three to six hours, to discuss salient issues.  (JA Exh. 98, ¶ 3).  Judge Wolin attended large

segments of these meetings.  (Hamlin Tr. 47 and JA Exh. 110 (consultants met on 1/7/02 for four

hours in Judge Wolin's chambers to organize responsibilities); *id.* at 48 (consultants met on

1/18/02; meeting lasted six hours; Wolin, J. in attendance); *id.* at 49 (consultants met on 2/27/02;

meeting lasted five hours; Wolin, J. in attendance); *id.* at 50 and JA Exh. 110 (consultants met on

5/17/02; meeting lasted three hours; Wolin, J. in attendance)).

       8.     Portions of those meetings were devoted to discussing these common

issues, and portions were devoted to reporting on and discussing the status and current

developments in each of the Five Asbestos Cases, including Armstrong.  (Hamlin Tr. 57

(regarding the recurring issues, "we probably talked about them at all of the joint meetings");

Dreier Tr. 95, 109 & JA Exh. 98, ¶¶ 6, 8 (discussions took place among the Consultants and

Judge Wolin regarding the status of each of the Five Asbestos Cases, including Armstrong)).

Accordingly, the Consultants' bills were divided *pro rata* across each of the Five Asbestos

Cases.

9.    In addition to the meetings, the Consultants and Judge Wolin circulated among themselves memoranda and correspondence on common issues, developments and ideas that cut across all of the cases.  (*E.g.,* Dreier Tr. 117, 128 & JA Exh. 157; Dreier Tr. 194 & JA Exh. 155).  In between meetings, the Consultants communicated with Judge Wolin as frequently as two times a week.  (McGovern Tr. 33).

10.    Indeed, there were so many common issues that Judge Wolin directed Consultant Gross to establish "four or five working committees" for the purpose of exploring resolution of issues common to each of the Five Asbestos Cases.  (Gross Tr. 323-26 (committees of tort claimants, insurers, debtors and creditors)).

11.    Another common function of the Consultants in the Five Asbestos Cases was drafting opinions for the District Court's signature in individual matters.  (*See*, *e.g.*, Hamlin Tr. 61-79 & JA Exhs. 1 & 96, ¶ 11 ("My assignments as a Court Appointed Advisor have consisted of reviewing appeals from the Delaware Bankruptcy Court and submitting a draft opinion in each of the five cases."); *see also* JA Exhs. 2, 70 (consisting of draft opinions prepared by Judge Hamlin at the request of Judge Wolin in the Grace, Owens Corning, USG, Federal Mogul, and Armstrong cases)).   In particular, with respect to the Armstrong case, at Judge Wolin's direction, Judge Hamlin drafted an opinion regarding an application for interlocutory relief; Judge Wolin followed Judge Hamlin's draft disposition, ultimately holding that leave to appeal would be denied.  (Hamlin Tr. 78-79 & JA Exh. 2).

12.    Indeed, Judge Hamlin, one of two Consultants representing future claimants in another asbestos bankruptcy, diaried a total of 8.0 hours specifically to Armstrong, out of a total of 33.8 hours overall in these cases.  (JA Exh. 110).  The Consultant with a role in representing futures claimants, Mr. Gross, also diaried 16.6 hours specifically to Armstrong, out

of a total of 226.5 hours.  (JA Exh. 108).

## C.    The Recusal Motion

13.    On October 10, 2003, the creditors in the Owens Corning Cases filed a motion seeking to recuse District Judge Wolin from further participation in the Owens Corning Cases, on the grounds that he and the Consultants advising him in the Five Asbestos Cases did not qualify as "disinterested."  The movants in that motion maintain, among other things, that there were numerous *ex parte* communications between and among the Court, the Consultants, and interested parties, and that the service of two of the Consultants, Mr. Gross and Judge Hamlin, as representatives of future asbestos claimants in another major asbestos chapter 11 case pending in this Circuit – *G-I Holdings, Inc. et al.*, creates a conflict of interest.  (JA Exh. 148). Subsequently, these creditors filed an emergency petition for a writ of mandamus before the United States Court of Appeals for the Third Circuit.

14.    Creditors' groups in the *In re USG Corp., et al.* cases and the *In re W.R. Grace & Co., et al.* cases also filed motions to disqualify Judge Wolin from further participation in their cases, respectively, on similar grounds as the movants had asserted in Owens Corning.

15.    On November 21, 2003, the Committee moved for leave to file a statement in the mandamus action, requesting that, should the Third Circuit grant the Petition, it should simultaneously hold that that ruling extend to the Armstrong Cases.[4]  The Third Circuit deemed

---

[4]    This document was attached as Exhibit H to the previous filing of the Armstrong Committee. (*See In re USG Corp., et al.*, Case No. 01-2094, Docket No. 5255).  A copy of this exhibit is available upon request.

the Committee's statement filed as of November 25, 2003.[5]

**D.      The Third Circuit Decision**

16.      On December 18, 2003, after hearing oral argument, the Third Circuit remanded the proceedings to Judge Wolin for expedited discovery and for a ruling by the District Court on the pending recusal motions on or before January 31, 2004.  That ruling acknowledges the Armstrong Committee's role in the matter as an "Intervenor."  (12/18/03 Opinion at 4.)

17.      In its December 18th ruling, the Third Circuit's ruling defines the term "Five Asbestos Cases" at the outset, (*id.* at 6), and treats them as a group throughout.  Indeed, the Third Circuit frames the ultimate issue as whether the "district court judge who has presided over *five asbestos-related bankruptcies* . . . has, through his association with certain advisors, created an appearance of partiality such that he must be disqualified from any further participation *in those proceedings*."  (*Id.* at 5) (emphases added).

18.      The Third Circuit's recitation of the arguments in support of and against disqualification cites numerous arguments that apply equally to Armstrong and to the other cases.  *See, e.g., id.* at 21-22 (summarizing arguments in favor of disqualification, including that it was "highly likely that a significant number of the future asbestos claimants in *G-I Holdings* will also be future claimants in *the Five Asbestos Cases*" (emphasis added); that "Messrs. Gross and Hamlin never disclosed to the parties in *the Five Asbestos Cases* that they were representing the asbestos claimants in *G-I Holdings*" (emphasis added); and that "Messrs. Gross and Hamlin repeatedly used their positions as advisors to Judge Wolin to advocate their clients' partisan interests in *G-I Holdings*").  *See also id.* at 24 (summarizing arguments against disqualification,

---

[5]      This document was attached as Exhibit I to the previous filing of the Armstrong Committee. (*See In re USG Corp., et al.*, Case No. 01-2094, Docket No. 5255).  A copy of this exhibit is available upon request.

including that the "complexity of the *Five Asbestos Cases* required a novel case management approach.") (emphasis added).

19.    The Third Circuit remanded the matter to this Court to determine, following expedited discovery, "whether he should recuse himself from one or more of the Five Asbestos Cases." (*Id.* at 25).  The Third Circuit ordered discovery on several issues, including, *inter alia*, "the full extent of the Consultants' activities in the Five Asbestos Cases" and "the extent to which recusal, if warranted in one of the bankruptcies, must be held to extend to the other bankruptcies." (*Id.* at 26).

**E.    Armstrong's Request to Participate in Discovery**

20.    This Court held proceedings on December 23, 2003 for the purposes of organizing the expedited discovery that the Third Circuit ordered.

21.    The Armstrong Committee – consistent with its Statement that a ruling in one of the Five Asbestos Cases should apply to Armstrong as well, and consistent with the Third Circuit's directive that discovery take place on this topic – sought to participate in the expedited discovery process.  (JA Exh. 144 at 40-41 ("we would like to participate in the discovery process.")).  The Court denied that request.  (*Id.* at 46).

**III.**

**Argument**
**If the Court Recuses Itself in Any of the Five Asbestos Cases,**
**It Should Recuse Itself in Armstrong, Too**

22.    The Court's and Consultants' work has been similar across each of the Five Asbestos Cases.  The Consultants became involved in all five cases simultaneously, as evidenced by the fact that their time entries all begin on a common date – December 27, 2001.  Their time entries reflect a core commonality in their activities in respect of the Five Asbestos Cases.  The Court and the Consultants devoted a great deal of time to the "myriad" complex

issues that are at the heart of the Five Asbestos Cases – including Armstrong.  (*See* Gross Tr. 77-80, 321-22, 390; Hamlin Tr. 17, 47-50, 53-54 & JA Exhs. 67, 110; Dreier Tr. 155 & JA Exh. 98).

23.    Indeed, Armstrong has paid one-fifth of the Consultants' fees, presumably for the very reason that the considerable time the Consultants have devoted to these issues equally impact each of the Five Asbestos Cases.  (If Armstrong were somehow inexplicably less affected by these issues than the other cases, then the billing of one-fifth of the Consultants' fees to Armstrong would have been a misallocation.)

24.    In addition to discussing the common issues of fact, common questions of law, and administrative challenges common to all Five Asbestos Cases, the Consultants and Judge Wolin considered and discussed the status of each of the Five Asbestos Cases, including the Armstrong cases.  At least one of the allegedly conflicted Consultants even drafted opinions for the Court's signature in each of the Five Asbestos Cases, *including Armstrong*.  (Hamlin Tr. 61-79 & JA Exhs. 1 & 96, ¶ 11; *see also* JA Exhs. 2, 70).  In addition to the work the Consultants did on common issues, both of the Consultants with a role in representing future claimants in the *G-I Holdings* case did work specifically on the Armstrong case as well.

25.    The Third Circuit has expressed its view that Judge Wolin's potential recusal in one asbestos bankruptcy case affects other such cases.   In *In re Combustion Engineering, Inc.*, No. 03-3392, the Court was asked to conduct oral argument on a pending appeal of Judge Wolin's confirmation of a prepackaged plan of reorganization in that asbestos bankruptcy matter.   The Third Circuit, in an order dated January 7, 2004, postponed oral argument on the appeal in light of the December 18, 2003 decision in *Kensington*, pending

resolution of the present recusal motions.[6]

26.     This Court should follow the decision of the Third Circuit in *Combustion Engineering*.  As *Combustion Engineering* – which is not even one of the Five Asbestos Cases – ordered postponement on account of the pending recusal motions, by virtue of being an asbestos bankruptcy matter presided over by Judge Wolin, it follows *a fortiori* that a recusal in one of the Five Asbestos Cases naturally requires recusal in the other four.

27.     The Third Circuit's decision in *Combustion Engineering* is in line with decisions from other federal courts, holding that recusal or disqualification in one case should carry through to other similar cases.

28.     The leading case on this topic is *In re Aetna Cas. and Surety Co.*, 919 F.2d 1136 (6th Cir. 1990).  In *Aetna,* the Sixth Circuit granted a mandamus petition and disqualified a district judge who had recused himself from the trial of four of seven consolidated claims, but did not recuse himself from the other three.  The cases involved similar claims against the issuer of a banker's blanket bond, arising out of the failure of several different banks operated and controlled by one family.  In finding that the district judge was disqualified pursuant to the federal disqualification statute, 28 U.S.C. § 455, the Circuit Court reasoned that the three remaining claims were too intimately connected to the four claims to go forward before a judge who was conflicted as to the four:  "A decision on the merits of any important issue in any of the seven cases, moreover, could or might constitute the law of the case in all of them, or involve collateral estoppel, or might be highly persuasive as a precedent."   *Id.* at 1143.  *See generally* Alan Hirsch and Kay Loveland, "Recusal: Analysis of Case Law under 28 U.S.C. Sections 144

---

[6]    This document was attached as Exhibit L to the previous filing of the Armstrong Committee. (*See In re USG Corp., et al.*, Case No. 01-2094, Docket No. 5255).  A copy of this exhibit is available upon request.

and 455," available on Federal Judicial Center website, http://www.fjc.gov (discussing *Aetna* and other considerations in connection with disqualification and recusal pursuant to 28 U.S.C. §§ 144 and 455).

29.     Courts in other jurisdictions dealing with this issue have followed *Aetna*. For example, in *Gordon* v. *Reliant Energy, Inc.*, 141 F. Supp. 2d 1041 (S.D.Cal. 2001), the case at issue was one of two putative class actions brought against various energy companies on behalf of individual purchasers of electricity in Southern California.   Because the judge to whom the case was assigned was a putative class member in both actions, the court invited briefing on the recusal issue.  Plaintiffs in both cases then amended their complaints to exclude as members of the putative class any judge who hears the case, his spouse and other persons within the third degree of relationship to the judge or his spouse.  Despite these exclusions, the district judge, following *Aetna*, ultimately concluded that he must recuse himself:  "as customers of [one of the defendant energy companies], the undersigned judge, his family members and staff have claims identical to those raised by plaintiffs, regardless of the exclusionary provisions in plaintiffs' suits.  The exclusionary provisions do not prevent any judge, member of the judge's family, or member of the judge's staff from initiating or participating in a suit against the same defendants for the same causes of action."  141 F. Supp. 2d at 1043-44.

30.     A few months later, while the first two actions were still pending, a third action was brought by municipal water districts against some of the same energy companies, under the same provisions of law as the claims in the other two cases.  The third action differed from the other two, in that it was not styled as a class action, and because the court was not an interested party thereto.  Nevertheless, the court concluded that it had to recuse itself from the third action as well:  "issues decided in any related action, including [the third case], could have

a preclusive effect in [the first two cases].  Thus any decision on the merits made by the Court could result in collateral estoppel in the related cases in which the undersigned judge, a member of his family, or a member of his staff has a personal interest."  141 F. Supp. 2d at 1045-46.

        31.    The existence of common issues is *the* determinative element in deciding whether a recusal in one case warrants recusal in another.  As the Third Circuit has already made manifest in its framing of the issues in its December 18, 2003 opinion and in its *Combustion Engineering* order, and as is evident from the Third Circuit's treatment of the Five Asbestos Cases from the outset, the common elements among these Five Asbestos Cases abound: common parties, common factual issues, common legal questions, and common administrative challenges.  These common elements require a consistent result.  Indeed, that is why Chief Judge Becker consolidated these cases before a single judge in the first place – "so that a coordinated plan for management can be developed and implemented."  (JA Exh. 91).

**IV.**

**Conclusion**

32.    For the reasons stated above, the Creditors' Committee urges that any ruling made by this Court in the above-captioned cases with respect to the recusal motions should apply to the Armstrong Cases as well.

Dated: January 20, 2004                      Respectfully submitted,
   Wilmington, Delaware

             COZEN AND O'CONNER

             */s/ Jeffrey R. Waxman*
             Mark E. Felger (No. 3919)
             Jeffrey R. Waxman (No. 4159)
             1201 N. Market Street, Suite 1400
             Wilmington, Delaware 19801
             Telephone: (302) 295-2000

               -and-

             PAUL, WEISS, RIFKIND, WHARTON
             & GARRISON LLP
             Stephen J. Shimshak
             Andrew N. Rosenberg
             1285 Avenue of the Americas
             New York, New York 10019-6064
             Telephone: (212) 373-3000

             Co-Counsel to the Official Committee of Unsecured
             Creditors of Armstrong World Industries, Inc., et al.