UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              :          Chapter 11
                                    :
W.R. Grace & Co., et al.,           :
                                    :
        Debtor(s).                  :          Bankruptcy #01-01139 (JKF)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Wilmington, DE
September 22, 2003
12:00 p.m.

TRANSCRIPT OF OMNIBUS HEARING
BEFORE THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For The Debtor:                     James W. Kapp, III, Esq.
                                    Kirkland & Ellis
                                    200 E. Randolph Drive
                                    Chicago, IL 60601

                                    Paula A. Gailbraith, Esq.
                                    Pachulski, Stang, Ziehl,
                                    Young, Jones & Weintraub
                                    919 North Market Street
                                    Wilmington, DE 19801

                                    Will Sparks, Esq.
                                    W.R. Grace
                                    In-House Counsel

For Equity Security Holders:        Gary M. Becker, Esq.
Committee                           Kramer Levin Naftalis
                                    & Frankel, LLP
                                    919 Third Ave.
                                    New York, NY 10022

For Asbestos PI Committee:          Marla Eskin, Esq.
                                    Campbell & Levine, LLC
                                    800 North King Street-Ste. 300
                                    Wilmington, DE 19801



Writer's Cramp, Inc.

Certified Court Transcribers

732-329-0191



| | | |
|---|---|---|
| 1 | For Official Committee of: | Theodore J. Tacconelli, Esq. |
| | Asbestos Property Damage | Ferry, Joseph & Pearce, PA |
| 2 | Claimants | 824 Market Street |
| | | Wilmington, DE 19899 |
| 3 | | |
| | | Jay Sakalo, Esq. |
| 4 | (Via telephone) | Bilzin, Sumberg, Dunn, |
| | | Baena, Price & Axelrod, LLP |
| 5 | | First Union Financial Center |
| | | Ste. 2500 |
| 6 | | 200 South Biscayne Blvd. |
| | | Miami, FL 33131 |
| 7 | | |
| | For Official Committee of: | Michael Lastowski, Esq. |
| 8 | Unsecured Creditors | Duane Morris, LLP |
| | | 1100 N. Market St.-Ste. 1200 |
| 9 | | Wilmington, DE 19801 |
| 10 | For ZAI Claimants: | William D. Sullivan, Esq. |
| | | Elzufon Austin Reardon |
| 11 | | Tarlov & Mondell, PA |
| | | 300 Delaware Ave-Ste. 1700 |
| 12 | | Wilmington, DE 19899 |
| 13 | For Equity Security Holders: | Rhonda P. Thomas, Esq. |
| | Committee | Klett, Rooney, Lieber |
| 14 | | & Schorling |
| | | Two Logan Square-12th Fl. |
| 15 | | Philadelphia, PA 19103 |
| 16 | For ACE: | Linda M. Carmichael, Esq. |
| | | White & Williams |
| 17 | | 824 N. Market Street-Ste. 902 |
| | | Wilmington, DE 19801 |
| 18 | | |
| | For Maryland Casualty: | Jeffrey C. Wisler, Esq. |
| 19 | Company | Connolly, Bove, Lodge |
| | | & Hutz, LLP |
| 20 | | 1220 Market Street-10th Fl. |
| | | Wilmington, DE 19899 |
| 21 | | |
| | For Royal Insurance: | James P. Donovan, Esq. |
| 22 | | Wilson Elser Moskowitz |
| | | Edelman & Dicker, LLP |
| 23 | | 3 Gannett Drive |
| | | White Plains, NY 10604 |
| 24 | | |
| 25 | | |

3

| | |
|---|---|
| 1 | David A. Denham, Esq. |
| | Bifferato Bifferato & Gentilotti |
| 2 | Bruckner Building |
| | 1308 Delaware Ave. |
| 3 | Wilmington, DE 19899 |
| 4 | For Gerard, et al.:    Kerri K, Mumford, Esq. |
| | Landis Rath & Cobb, LLP |
| 5 | 919 Market st.-Ste. 600 |
| | Wilmington, DE 19801 |
| 6 | |
| | Daniel C. Cohn, Esq. |
| 7 | Cohn Khoury Madoff |
| | & Whitesell, LLP |
| 8 | 101 Arch St. |
| | Boston, MA 02110 |
| 9 | |
| | Audio Operator:    Sherry Scaruzzi |
| 10 | |
| | Transcribing Firm:    Writer's Cramp, Inc. |
| 11 | 6 Norton Rd. |
| | Monmouth Jct., NJ 08852 |
| 12 | 732-329-0191 |

13  Proceedings recorded by electronic sound recording, transcript
    produced by transcription service.

14

15

16

17

18

19

20

21

22

23

24

25

1        THE COURT:  Good morning.    Please be seated.

2        (Pause in proceedings)

3        MR. KAPP:  Good afternoon, Your Honor, James Kapp on

4    behalf of the Debtors.

5        THE COURT:  I understand that the phone call with

6    Mr. Smith and Mr. Sakalo hasn't come in yet, but since they're

7    involved in a limited number of matters do you think we can

8    proceed without them, or do we need to wait for them?

9        MR. KAPP:  Your Honor, we only have one contested

10    matter today, and they have not filed briefs in response to

11    that matter, so I think we can probably proceed.

12        THE COURT:  Okay.  Let me get on the record, please.

13    This is the matter of W.R. Grace, Bankruptcy #01-1139, and I

14    apologize, will you enter your appearance again, please?

15        MR. KAPP:  James Kapp on behalf of the Debtors.

16        THE COURT:  Okay.  Other counsel.

17        MR. BECKER:  Gary Becker from Kramer, Levin, Naftalis

18    & Frankel representing the Equity Committee.

19        MS. THOMAS:  Your Honor, Rhonda Thomas from Klett,

20    Rooney, Lieber & Schorling representing the Equity Committee.

21        MS. ESKIN:  Marla Eskin, Campbell, Levine, Asbestos

22    Claim -- Personal Injury Claimants Committee.

23        MR. TACCONELLI:  Theodore Tacconelli, the Official

24    Committee of Asbestos Property Damage Claimants.

25        MR. LASTOWSKI:  Michael Lastowski, Duane Morris, here

1   today for the Official Committee of Unsecured Creditors.

2           THE COURT:  Good afternoon.

3           MR. COHN:  Hi.  I'm Dan Cohn for the Libby Claimants,

4   just appearing on that matter.

5           THE COURT:  All right.  Thank you.

6           MR. WISLER:  Good morning, Your Honor, Jeff Wisler on

7   behalf of Maryland Casualty Company.

8           MR. DONOVAN:  And James Donovan for Royal if

9   questions come up with regards to Royal.

10           MS. GAILBRAITH:  Paula Gailbraith from Pachulski,

11   Stang, Ziehl, Young, Jones & Weintraub on behalf of the

12   Debtors.

13           THE COURT:  Okay.  Mr. Kapp?

14           MR. KAPP:  Your Honor, we filed an amended agenda

15   last Wednesday, and I will be working from that agenda.

16           THE COURT:  Is that the one -- it's docket 4433?

17   That's the one I have.  It says amended.

18           MR. KAPP:  That would be it, Your Honor.

19           THE COURT:  Okay.

20           MR. KAPP:  And as I mentioned, we only have one

21   contested item on today's agenda, and that is item #2, the

22   Debtors' Motion to Extend the Preliminary Injunction to Include

23   Actions Against Montana Vermiculite Company.  If Your Honor

24   would prefer, everything else is housekeeping if you'd like to

25   go through that and take care of it, or we can dive right into

1  item #2.  I don't have a preference.

2       THE COURT:  Why don't I just put on the record, I

3  have entered -- actually, I don't think I did any orders in

4  this case.  One, four, and six were to be continued.  Three and

5  five I actually have some questions about, and that is why I

6  have some but not all fee applications.

7       MR. KAPP:  If we would like to address that now I

8  would pass the buck to my co-counsel, Paula Gailbraith.

9       THE COURT:  Well, is that what I need Mr. Smith for?

10      MR. KAPP:  Yes.

11      THE COURT:  Okay.  Then if that's the case, what

12  happened to item #7?

13      MR. KAPP:  Item #7, Your Honor, we have a new Order.

14  What that is basically, that Order is doing, it's doing three

15  things.  There's two -- Exhibit-A and -B we are continuing the

16  vast majority of all the objections that we have filed.  We're

17  gonna continue those to the next omnibus hearing as the Debtors

18  are still seeking to negotiate and to reach a consensual

19  resolution with the Claimants.  Exhibit-C sets forth claims --

20  objections which the Debtors are withdrawing, and Exhibit-D

21  sets forth with regard to the Todman Companies, the Debtors

22  have conferred with the Todman Companies and all parties agree

23  that those claims should be disallowed and expunged in full,

24  and that is what that Order seeks to do.

25      THE COURT:  Okay.

7

1        MR. KAPP:  And if I may, Your Honor, I would

2    approach.

3        THE COURT:  All right.  Thank you.

4    (Pause in proceedings)

5        THE COURT:  This is an Order approving fee apps on 3

6    and 5.

7        MR. KAPP:  I pulled a switch on Your Honor.

8        THE COURT:  Okay, thank you.

9        MR. KAPP:  Thank you.

10   (Pause in proceedings)

11       THE COURT:  Okay.

12   (Pause in proceedings)

13       THE COURT:  Here's your copy on item 7.  That Order

14   is entered.

15       MR. KAPP:  Thank you, Your Honor.  Your Honor, if I

16   might, I might also briefly address item #8, which is the

17   Debtors would like just to inform the Court that pursuant to

18   this Court's instruction last month, the Debtors have met

19   telephonically and separately with all four of the Creditors

20   Committees, and during those presentations the Debtors

21   presented a proposal for a Plan of Reorganization and

22   underlying financial analysis upon which the proposal was

23   based, and the Debtors did request and invite the Committees to

24   give any responses thereto or to provide an alternative

25   proposal, and that's where we are right now, Your Honor,

1  waiting any responses, if any, from the Committees.  Right now

2  we have not received any though we have started that process

3  and is now under within way.

4  　　　　THE COURT:  All right.  Thank you.  Ms. Eskin.

5  　　　　MS. ESKIN:  Marla Eskin, Asbestos Claimants

6  Committee.  I unfortunately, Your Honor, I was not on the

7  calls.  I understand that our Committee has informed the Debtor

8  that they do not take their proposal seriously, and has stated

9  their position to them already.

10  　　　　THE COURT:  Okay.  While we're on the subject of

11  housekeeping matters why don't I address the one matter that I

12  know I need to address today, and that is I can give you dates

13  for the months of January through April, and then next month I

14  can give you omnibus dates for the rest of the year.  The dates

15  I propose are January 26th, February 23rd, these are all

16  Mondays, I believe.  March 22nd, and April 26th.  Is noon a

17  good time, is this working?

18  　　　　MR. KAPP:  Yes, it's fine with us, Your Honor.

19  　　　　THE COURT:  All right.  Then they will all start at

20  noon.  My question, I guess, and I asked Mr. Tacconelli

21  earlier, I don't know if he had a chance to ask you all, I've

22  been reserving two hours for these hearings, but they're seldom

23  taking anything close to that, or is it necessary for me to

24  continue to reserve two hours?  For the things like the

25  Disclosure Statement and Plan hearing, they're not going to be

1   on a motions day anyway, they're going to be specially set.

2   So --

3          MR. KAPP:  Your Honor, we seem to have been averaging

4   about an hour to a little bit over, so I would think an hour to

5   an hour-and-a-half -- I don't think -- we've never -- not used

6   the two hours been allotted for quite some time.

7          THE COURT:  Okay.  Then what I'm going to do is

8   reserve until 1:30.  If you know in advance that any hearing

9   date is going to take longer, then let me know, please, because

10  I will start scheduling other cases at 1:30 so that I'm not

11  wasting time here that I can use for other matters.

12         MR. KAPP:  Seems fair enough, Your Honor.

13         THE COURT:  Okay.  Anybody else have any housekeeping

14  matters before we get back to the agenda?  Okay, then,

15  Mr. Smith, are you on the phone now?  Mr. Smith?  Is anyone on

16  the phone?

17         MR. SAKALO:  Jay Sakalo from Bilzin, Sumberg on

18  behalf of the Property Damage Committee, Your Honor.

19         THE COURT:  Okay, thank you, Mr. Sakalo.  I guess

20  we're still waiting for Mr. Smith.

21         MR. SAKALO:  Thank you.

22         THE COURT:  Okay, Mr. Kapp.

23         MR. KAPP:  Well, then, Your Honor, I would propose we

24  turn to item #2, which is the Debtors' Motion to Extend the

25  Preliminary Injunction to Include Actions Against Montana

1    Vermiculite Company.  Your Honor, we do have a discovery

2    dispute which I think kind of comes ahead everything -- all the

3    substantive merits here, but if I might, I might just give a

4    thumbnail sketch of the facts underlying this and why our

5    discovery dispute is important.  In particular, the lawsuit in

6    question here was filed in 1999 in Montana State Court.  Causes

7    of Action were asserted against both the Debtors and Montana

8    Vermiculite Company.  Basically, the Plaintiffs were alleging

9    that a personal injury arising from asbestos exposure relating

10   to the Libby mine.  We have discussed in front of this Court,

11   some in the past, Your Honor, the Libby mine, obliviously, but

12   prior to 1963 the Libby mine was owned by the Zonolite Company.

13   In 1963 the Debtors purchased substantially all of the assets

14   of Zonolite, including the mine, and really all that was left

15   of the Zonolite Company was a shell company, of which they

16   changed their names, the Montana Vermiculite Company, and then

17   we believe in 1964 bought information that the Montana

18   Vermiculite Company dissolved and they are no longer in

19   business.  Prior to 1963, Zonolite, now MVC, maintained

20   insurance with Royal Indemnity, and those -- as part of the

21   purchase of the Zonolite mine and the Libby mine Grace

22   purchased the rights to those policies.  A settlement with

23   regard to those policies was reached between the Debtors and

24   Royal Indemnity in 1995, and basically, Royal agreed to pay a

25   sum of money in settlement of all their obligations under the

1   policies, and in turn, the Debtors agreed to indemnify Royal to

2   the extent that any claims asserted under the policies.  The

3   terms of that agreement is confidential, Your Honor.  And that

4   basically sets up the facts as we know it.  The Plaintiffs

5   asserted causes of action against both Montana Vermiculite

6   Company and the Debtors.  They can't go forward against the

7   Debtors as those actions are stayed because of these Chapter 11

8   cases.  With regards to MVC, it doesn't exist.  They're not

9   doing business, a default judgment has been entered, but

10  damages have not yet been determined with regards to MVC.  The

11  Plaintiffs make it very clear in their pleadings what they want

12  to do here.  They want to go after the insurance money.  That

13  is set forth in their brief.  And when they do that, the

14  problem is, Your Honor, to go after Royal is to ultimately go

15  after Grace, because of the indemnity clause.  This is not, not

16  a Gerard situation, which was before Your Honor, where there

17  you had a separate independent cause of action that was

18  asserted by the Plaintiffs against Maryland Casualty.  In

19  particular, they asserted a claim of negligence against

20  Maryland Casualty.  You don't have that here, Your Honor.  If

21  the cause of action triggers under the policy then by the terms

22  of the indemnity it is Grace's obligation to indemnify Royal.

23  Now, the problem with that, Your Honor, and that sets up our

24  discovery dispute, is that the Plaintiffs contest that the

25  Debtors have an indemnification obligation.  That obligation

1  arises from a document that has confidentiality provisions to
2  it, and you really have the problem that the Debtors are stuck
3  in a dispute where they're in the middle.  We would love to
4  disclose the terms of this document, Your Honor, and be done
5  with it, because we believe the terms are very clear and set
6  forth our obligations very clearly.  However, we have the
7  confidentiality obligation.  So, what have the Debtors tried to
8  do here?  They have confirmed with Royal and Royal agreed the
9  Debtors could provide excerpts from the Settlement Agreement
10  pertaining to the indemnity obligations, and that could be
11  given to the Plaintiffs.  We did that.  The Plaintiffs said,
12  thank you, and we'd like the full Settlement Agreement and the
13  underlying policies.  The Debtors went back to Royal, and Royal
14  once again agreed that that information could be disclosed on
15  one or two conditions.  Either the Plaintiffs agree to an
16  attorney's eyes only confidentiality agreement, and that -- so
17  the information will only be shared among the parties, or it be
18  presented under seal with this Court only to be reviewed by the
19  parties.  The Plaintiffs said, thank you, we'll get back to
20  you, and the next we heard we received their brief which argues
21  that the Debtors should not be allowed to rely on any
22  information in the Settlement Agreement, including the
23  indemnity clauses because they haven't seen them.  Which really
24  sets up what's going on here.  The Plaintiffs don't have any
25  real hurry to resolve this dispute because if they do we think

13

1   the terms of the Agreement are pretty straight forward.  And so

2   that really puts us in front of Your Honor while we seek

3   assistance.  The terms of the Confidentiality Agreement do

4   provide the carve-out otherwise provided by this Court.  So,

5   the Court does have discretion and the authority to take a

6   couple of different actions, and the Debtors really don't have

7   a preference, but one thing the Court could do is order the

8   Plaintiffs and Royal to confer directly among themselves, and

9   if an agreement can't be reached we can take it up for this

10  Court's consideration the next omnibus, we could skip all that

11  and order the Plaintiffs directly to sign a Confidentiality

12  Agreement so we can address the underlying merits, or the

13  Debtors could be ordered just to hand over the Settlement

14  Agreement.  But we don't have that power ourselves.  We would

15  have to be ordered to do so.  So, we believe that the

16  underlying discovery issue must be resolved before we can ever

17  get to the merits, which are based upon the Settlement

18  Agreement and our indemnity obligations thereunder.  I would

19  note, Your Honor, the Plaintiffs did file a second response,

20  and I should ask that you have it.  It was filed last Thursday.

21          THE COURT:  Probably not.  Let me double check my

22  notes.  Yes, I received the supplement on September 16th.  Is

23  that the one you're referring to?

24          MR. KAPP:  Yeah, I believe so, Your Honor.

25          THE COURT: Yes, I did receive that.

1          MR. KAPP:  And it's fairly short and sweet, and I

2   will do my best to summarize, and I'm sure Mr. Cohn could

3   correct me if I fail, but basically it's a last-minute effort

4   to get around this Court having to focus upon the terms of the

5   Settlement Agreement and the Indemnity Clauses, and basically

6   the argue is this:  Is that Royal failed to file Proof of Claim

7   by the bar date, and therefore they should be barred from

8   pursuing indemnity claims against the Debtors, and then the

9   Debtors should be rest assured that if the Montana Vermiculite

10  litigation goes on Royal can't come after the Debtor

11  subsequently to that.  Although we've just become aware of that

12  argument, and we're still investigating some of the underlying

13  facts, Your Honor, the Debtors have two initial problems with

14  that and don't believe that gets us there.  Number one, the

15  Debtors do not want Royal to be out defending and incurring

16  costs until the Debtors are assured that Royal could not come

17  back after the Debtors.  This matter hasn't been briefed, it's

18  not before Your Honor, they haven't had a chance to respond, we

19  would need to do all that.  It's not gonna happen today.  And

20  even if it does happen, ultimately if this Court determines

21  that Royal could not come after the Debtors, we still have the

22  problem of evidence taint, and the fact that you can't unring a

23  rung bell.  In particular, the Plaintiffs, they do have a

24  default judgment, as I mentioned, but they need to prove

25  damages.  To do that they will have to put on testimony, and to

1  the extent that the Debtors are not there to cross and defend

2  against that testimony, the Debtors will be -- that evidence

3  will be out there, and the Debtors will be stuck with it, and

4  to the extent the witnesses are no longer available in the

5  future, there will be nothing the Debtors can do.  Particularly

6  here when the testimony -- we're dealing with the same

7  employees of both -- MVC's employees were Grace's employees,

8  the same time period, breathing the same fibers.  Unless the

9  Plaintiffs could tell us that the only people that would give

10  testimony were folks that were not employees of Grace or did

11  not -- Libby after 1963, we have no assurance that we would not

12  be harmed, and we would need to be there to defend.  That would

13  take time, money, resources, and it would divert our attention

14  to the administration of these cases.  So, therefore, Your

15  Honor, we do believe that the issue that needs to be resolved

16  is the discovery dispute.  We need to figure out how we can get

17  the Settlement Agreement to everyone under appropriate terms

18  which Royal can live with and the Plaintiffs can live with so

19  that we can then address the underlying merits.  If there are

20  no questions I will turn over the podium.

21          THE COURT:  All right.  Mr. Cohn?

22          MR. COHN:  Good afternoon, again, Your Honor.

23          THE COURT:  Good afternoon.

24          MR. COHN:  The fact that my brother, Mr. Kapp, has

25  skipped over is one that's really quite significant, Your

1   Honor, and that is the fact that there is no Proof of Claim

2   filed by Royal.  This means that there is no Indemnification

3   Claim, no matter what the terms of the Indemnification

4   Agreement, and that the fact that there is some hypothetical

5   fear that such a claim could somehow be asserted by getting

6   around the bar date?  The terms of the Bar Order were clear,

7   the terms of the Notice were clear --

8           THE COURT:  Well, I just this morning in four other

9   cases permitted people to file late claims beyond the bar date,

10  so, I mean, not on these facts conceivably, but as an

11  illustration of the fact that there are times where you can get

12  around the bar date.  I don't -- I'm not prejudging whether

13  this is one of them, but there are times where it can happen.

14          MR. COHN:  Well, Your Honor, we are here on a

15  Plaintiffs' motion, the Plaintiff being the Debtor.  That

16  totally confused the terms.  Let's try it again.  We're here on

17  the Debtors' Motion for a Preliminary Injunction, Your Honor.

18  They have the burden of establishing the elements that would

19  entitle them to this injunction.  One of those elements would

20  necessarily be that there is an Indemnity Claim here.  That has

21  been made clear by Judge Wolin in his consideration of the

22  Gerard matter.  It's clear in the other cases in this Circuit

23  concerning Indemnity Claims.  The burden is on the party

24  seeking the injunction to first prove that there is an

25  indemnity obligation.  You can't prove that there's an

1  indemnity obligation when the bar date has passed and there's

2  no claim on file, no pending motion to file a claim late, Royal

3  is here sitting in the Courtroom --

4          THE COURT:  I don't -- no, I don't think that's

5  correct.  There's clearly an Indemnity Claim, whether it's

6  going to be allowed to be paid in this Estate or not is a

7  different issue from whether there is a claim.  Apparently, the

8  Agreement itself establishes an Indemnity Claim.  It may or may

9  not be allowed here, but, you know, I don't know whether it's

10 secured, I don't know anything about the Indemnity Claim except

11 for the fact, apparently, there is one in the documents.  So,

12 they've established that there is a claim.  Whether it's

13 allowed here is a different issue.

14         MR. COHN:  Well, first of all, we'll get to whether

15 it's been established --

16         THE COURT:  All right.

17         MR. COHN:  -- even in the document, Your Honor, but

18 the point is that the Plaintiff -- the Debtors are unable to

19 meet their burden of proof in connection with obtaining this

20 injunction, when what they have is a bar date that has passed,

21 and no claim on file for indemnification, and obliviously

22 allowing late claims, allowing claims outside of the bar date

23 is the exception, and it's a rare exception, rather than the

24 rule.

25         THE COURT:  May I ask one other question, too?

1          MR. COHN:   Sure.

2          THE COURT:   Was the Indemnity Claim listed by the

3     Debtors, was it scheduled?   Because if it's scheduled then they

4     didn't need to file -- as not disputed contingent or

5     unliquidated.

6          MR. COHN:   But, Your Honor, it is unliquidated --

7          THE COURT:   Yes, it has to be unliquidated, I would

8     assume --

9          MR. COHN:   Right.

10          THE COURT:   -- but is it scheduled that way?

11          MR. COHN:   That's a good question for Mr. Kapp.

12          THE COURT:   Mr. Kapp?

13          MR. KAPP:   Your Honor, at this time I do not know

14     that.

15          THE COURT:   Okay.   Well, someone needs to tell me

16     that, so, okay.

17          MR. COHN:   Well, but once again, Your Honor, you

18     know, these are elements of the Debtors' case for a preliminary

19     injunction.   They have a high standard to meet here, and they

20     aren't even trying to meet it, it would appear.   They seem to

21     feel that they just have some God-given entitlement to get this

22     injunction, irrespective of what the state of the record is in

23     the case.   But I would note, Your Honor, on the specific issue

24     of what the schedules could possibly say about this claim, it

25     is by definition unliquidated, Your Honor, and therefore could

1   not possibly have been scheduled as a claim that is not

2   contingent, unliquidated, or disputed.

3        THE COURT:  Well, it would seem highly improbable

4   that it's going to be listed that way, but people make

5   mistakes, so just in case I want to know whether it's listed,

6   and if so, how.

7        MR. COHN:  Would that be a supplemental written

8   submission by the Debtor, Your Honor?

9        THE COURT:  I think so, yes.  But, okay.  Let's just

10  put that aside for now because in all probability if it's

11  listed it's listed as unliquidated, so let's just bypass that

12  for now.

13       MR. COHN:  Okay.  Then let's turn next, Your Honor,

14  to the state of play concerning the Indemnification Agreement.

15  We made a discovery request.  The usual response to a discovery

16  request is to produce the documents.  If there is some kind of

17  a Confidentiality Agreement or some other reason why you don't

18  want to produce the document, or can't, the burden is on the

19  party receiving the discovery to go before the Court and seek a

20  Protective Order.  In this case, not only did they not seek a

21  Protective Order, but in addition, there has been no ground

22  alleged by anybody as to why this is confidential information

23  of a type that this Court would protect under the applicable

24  rule, which is 9018.  There is no intellectual property

25  involved, there's no confidential commercial information, it's

1  an ancient agreement, couldn't possibly have any bearing on

2  something that's going on in today's commercial world.  The

3  Agreement should just be produced, and there's really no excuse

4  that's been given for not having produced it.

5          THE COURT:  What is the discovery taken in?  As to

6  this motion?

7          MR. COHN:  Yes, Your Honor, because the motion

8  initiated a contested matter, so --

9          THE COURT:  Okay.  So, you have taken discovery to

10  see what the document is on which --

11          MR. COHN:  We've served a document request, and --

12          THE COURT:  Okay.

13          MR. COHN:  -- the response --

14          THE COURT:  And the time to produce has expired?

15          MR. COHN:  The time to produce has expired.  We did

16  receive a response.  The response said essentially there's a

17  Confidentiality Agreement, and so we're not producing.

18          THE COURT:  Okay.

19          MR. COHN:  However, I do want to observe that we did

20  receive certain excerpts from the Agreement as Mr. Kapp said.

21  I do believe that the Debtors are trying to be reasonably

22  cooperative in this regard.  It's just that they're mixing up

23  the burdens here.  The burden is on a party who wants to not

24  produce something in discovery to provide a reason why it

25  should not be produced, and the mere fact that there's a

1  Confidentiality Clause in this Agreement, as in so many others,

2  does not in and of itself provide a ground for that Agreement

3  not to be produced.  So, as of right now Grace is in default on

4  its discovery obligations.  That having been said, Your Honor,

5  we are not proposing that this Court should rule on the basis

6  of the Indemnification Agreement without seeing the

7  Indemnification Agreement, and what we said in that footnote

8  that Mr. Kapp was referring to is that Grace should not be

9  permitted to argue based on the Indemnification Agreement

10  unless and until the full Agreement was produced to us.  We are

11  not trying to impose a penalty on Grace other than please

12  produce the full Agreement, and if so, and if it's relevant in

13  light of the failure to file a Proof of Claim, then we can

14  address it.  Based on the excerpts that we have been supplied,

15  we believe that the Indemnification Agreement does not cover

16  the claims that are asserted by the Libby victims against

17  Montana Vermiculite.  That's all I can really say on it because

18  I did receive those under a code of provisional Confidentiality

19  Agreement, and I don't feel it would be proper for me to stand

20  up here and start quoting provisions to you other than to say

21  there is a genuine dispute, we have a basis for that dispute,

22  and if you were to determine that the terms of the

23  Indemnification Agreement are pertinent in light of the failure

24  to file a Proof of Claim, then the next step I would

25  respectfully suggest would be to order the Agreement to be

1    turned over, as well as the insurance policies.

2            THE COURT:  Well, Royal's counsel's here.  I think I

3    should ask Royal whether there is some disagreement about

4    whether or not the policies should be turned over.  I think,

5    however, they should be turned over subject to a

6    Confidentiality Agreement.  I have no opposition, of course, to

7    your discussing the matter with your clients, assuming that

8    your clients understand that it's for purposes of this

9    litigation, and right now I'm defining that as this motion

10   only.

11           MR. COHN:  Well, Your Honor, there's no generalized

12   right for someone to impose a condition of confidentiality upon

13   their producing documents.

14           THE COURT:  I don't know --

15           MR. COHN:  These are relevant --

16           THE COURT:  I don't know what it is that they're

17   producing right now, and so I don't know whether there is a

18   basis for confidentiality, so I'm willing to have you be able

19   to look at them and me be able to look at them so that we can

20   discuss this at a later date, but until there's a determination

21   that, in fact, there is no basis to keep them confidential

22   since apparently they have a Confidentiality Agreement built

23   in, I would not be -- I would not order the Debtor to produce

24   them until I have a chance to look at them myself.  It seems to

25   me it would be better for you to look at them at the same time.

1        MR. COHN:  That's -- surely, Your Honor, and -- but I

2   think the appropriate course would be for Royal to file a

3   motion which seeks a Protective Order which -- and explains why

4   it is that these Agreements ought to be kept in confidence to

5   begin with.

6        THE COURT:  You want to do it that way, fine.  I'll

7   just order them to do it, I'll deny this motion -- or I won't

8   to anything.  I'll continue the motion until all of those

9   things can come forward.  That's just going to delay matters.

10   If you want it that way, that's fine.

11        MR. COHN:  Well, it's fine with me, Your Honor,

12   'cause we're proceeding in the meanwhile.  The -- well, in any

13   event, that is all I can say about indemnification at this

14   point, Your Honor.

15        THE COURT:  Okay.  Well --

16        MR. COHN:  We will cooperate, by the way, in terms of

17   bringing the discovery dispute in a way that you can rule on it

18   as quickly as possible, and I did not want to imply anything

19   otherwise.  I'm just suggesting that the -- there's a party

20   here who has a burden, and that burden is on Royal, which is

21   the only party saying that they don't want this thing turned

22   over.  Let them explain to us why.

23        THE COURT:  Royal or the Debtor?

24        MR. COHN:  My understanding is that the Debtors would

25   be perfectly content to be ordered to turn it over.  I did not

1   hear Mr. Kapp to be opposing an order being entered against the

2   Debtors.  He just doesn't want to turn it over without an

3   order, because he's afraid --

4           THE COURT:  Well, Royal isn't a party to the motion,

5   are they?

6           MR. COHN:  No.

7           THE COURT:  Okay.  So, then I don't have any

8   authority to order Royal to produce anything.  They're not a

9   party to this motion, are they?

10          MR. COHN:  If -- you do have the -- you certainly

11  have the authority, Your Honor, to direct that if Royal

12  believes that there are reasons why this confidentiality of

13  this document is appropriately maintained under Rule 9018 of

14  the Federal Rules of Bankruptcy Procedure, that they have

15  until, you know, 10 days from now, or whatever, to file a

16  motion so stating, otherwise the Debtors are directed to

17  produce the documents.  That's what I would suggest would be

18  the best way to move it along.

19          THE COURT:  Well, what does the Agreement say with

20  respect to whose burden it is to protect the confidentiality in

21  the event that somebody asks for discovery of it?

22          MR. COHN:  Beats me.  That wasn't among the excerpts

23  they supplied.

24          THE COURT:  Okay.  Well, let me ask Mr. Kapp.

25          MR. KAPP:  And I will -- James Kapp.  I will defer to

1   Royal's counsel, but I believe -- I don't believe there are

2   burdens set forth.  I believe it just says unless otherwise

3   ordered by the Court, ordered by the Court.  So, it's our

4   stance that if we were ordered to do something by this Court

5   that we would have the authority to do so under that agreement.

6            THE COURT:  All right.  Okay, let me hear from

7   Royal's counsel then, please.

8            MR. DONOVAN:  Thank you, Your Honor.  James Donovan.

9            THE COURT:  Is Royal opposed to the Debtor producing

10  these documents?

11           MR. DONOVAN:  On a mutual confidentiality basis.

12  I've heard for the first time today that the Debtor, Grace,

13  does not oppose the production pursuant to Court order, but

14  Royal does wish to put in a position that they would like to

15  have the Settlement remain confidential.  The discussion of

16  said reasons, I think, and the process associated with the

17  examination of same I think just as the Court suggested should

18  be a staged process.  In other words, if the Debtor, Grace,

19  does not have any objection and submits -- 'cause they have the

20  document, obliviously, just like we do -- submits it under a

21  confidentiality seal to the Court, and then it's at that

22  particular point that a date is given and Royal, since it

23  appears at the moment that it's only Royal that's looking to

24  maintain the confidentiality of it, with the Court's permission

25  and since we're not party to this litigation, we would then put

1   in affidavits with regards to it and seek, you know, a

2   production, which would be consistent with productions of that

3   document in other circumstances.  For example, in another

4   matter in front of this Court special Mr. Dryer worked out an

5   arrangement associated with the same document.  So, it's not

6   something that hasn't been done before as far as examination is

7   concerned.  So, if that's the stage process that's in front of

8   us then that's what we'll do, I guess.

9           THE COURT:  Okay.  Well, if you want to do -- you

10  know, if you want to do it formally then I guess what I need to

11  do is direct the Debtor to produce the document unless by a

12  certain date Royal files some objection.  What are the dates,

13  Ms. Gailbraith, do you know, by which matters have to be filed

14  with the Court to get them on to the next agenda?  I don't know

15  if there's enough time to do that.

16          MS. GAILBRAITH:  It's today, Your Honor.

17          THE COURT:  Oh, it's today.  Okay.  So, it would have

18  to be done in time to get it on the November agenda, which I

19  think is the 17th.  It's an early date in November.  Are your

20  dates the 17th of November?

21          MS. GAILBRAITH:  That's the hearing date.  The filing

22  deadline would be the 13th of October.

23          THE COURT:  Okay.

24          MS. GAILBRAITH:  For that November 17th hearing.

25          THE COURT:  All right.  So, let's do this then.  The

1   Debtor is directed to respond to the document request of the

2   Plaintiffs if -- let me say, on -- well, I don't know what you

3   have ready. Are you ready to produce the documents that are in

4   response to the request if you're ordered to do it, or do you

5   need some time to put everything together?

6         MR. KAPP: Your Honor, I believe we're ready, but if

7   we had a week I think we'd be okay.

8         THE COURT: Oh, you're going to have more than a week

9   to put it together from now, because I need to give Royal a

10   chance to file a motion to object to that process in advance,

11   so -- all right. You're to do it by October the 20th, unless

12   by October the 13th Royal files a Motion for Protective Order,

13   I guess is the appropriate way to do it, as to the documents.

14   If Royal files such a motion then responses are due --

15   Ms. Gailbraith, do you know the dates?

16         MS. GAILBRAITH: The objection deadline for that

17   hearing is the 31st. Preliminary agenda would be due the 3rd

18   of November.

19         THE COURT: Okay. Then responses are due by October

20   the 31st, and replies, I guess by November 7th. Replies are

21   limited to five pages.

22         MR. DONOVAN: Can I make an inquiry, Your Honor?

23         THE COURT: Yes.

24         MR. DONOVAN: I have the dates right. The inquiry is

25   this. Since we'll be making the motion, in essence, asking

1  under seal, of course, 'cause the papers we think are -- should

2  be kept confidential, would Mr. Cohn be the appropriate party

3  on the other side to be participant in the process.  I mean,

4  it's not like something we're going to file with everybody.

5           THE COURT:  Yes.  He and the Debtor and I guess --

6  the Committees have already signed Confidentiality Agreements

7  --

8           MR. DONOVAN:  Oh, okay.

9           THE COURT:  -- correct?  So, I believe it should be

10 the parties on the service list who have signed Confidentiality

11 Agreements.  Perhaps --

12          MR. DONOVAN:  I'll get that from --

13          THE COURT:  -- you can work with the Debtor.

14          MR. DONOVAN:  I'll work that out, Your Honor.

15          THE COURT:  Yes.  But, Mr. Cohn, this is subject to a

16 Confidentiality Agreement.  It's going to be filed under seal,

17 and I'm giving you copies simply so that you can make whatever

18 arguments in response you choose to make, but it's for no other

19 purpose, and not to be disclosed to anybody else prior to some

20 further order.

21          MR. COHN:  Thank you, Your Honor.  I guess I just

22 want to make sure that those who are entitled to see it

23 include, in addition to obviously my colleagues in my office,

24 also my co-counsel in Montana.

25          THE COURT:  As long as they sign a Confidentiality

1 | Agreement.  Sign, one.

2 | MR. COHN:  Right.  That's fine, Your Honor.

3 | THE COURT:  All right.

4 | MR. DONOVAN:  Thank you, Your Honor.

5 | THE COURT:  Okay.  The Debtor will be submitting that

6 | order but whether or not it's entered of record on the docket

7 | you've got the dates, it's in effect.  So, those will be the

8 | dates.  Then it will be continued to November 17th at noon for

9 | argument.

10 | MR. COHN:  Your Honor, is that the Discovery Motion

11 | now --

12 | THE COURT:  Yes.

13 | MR. COHN:  -- or the Motion for the Injunction?

14 | THE COURT:  The Discovery Motion.

15 | MR. COHN:  Okay.

16 | THE COURT:  Yes.  I don't think I can get to the

17 | merits of this motion until I get past the discovery and see

18 | whether you still press an objection.

19 | MR. COHN:  And you know something, part of my problem

20 | is not with confidentiality per se so much as with the

21 | logistics of how are we gonna brief this, how are you gonna

22 | write a decision?  You know, Judge Wolin's decision in the

23 | Gerard matter turned on the precise terms of the

24 | indemnification obligation.  How are you going to write a

25 | decision one way or the other?

1    THE COURT:  I'm going to see it.  They're going to

2  file it.

3    MR. COHN:  Well, clearly you have to see it, but then

4  what happens to your decision?  Does the decision remain under

5  seal and does the --

6    THE COURT:  Oh, it depends.  I don't know.  I'll see

7  what facts I have to get into or not get into.  It's very

8  possible I may just announce a decision and not write anything.

9    MR. COHN:  All right.  And then I guess -- then the

10  only other question is that whatever the terms of the

11  Indemnification Agreement are, I just want to make it clear for

12  the record that the Libby Claimants do not consider that even

13  if there is an indemnity obligation that the other requirements

14  that would be necessary for an injunction to be entered and for

15  related-to jurisdiction to exist have been met here.  It sounds

16  as though you don't necessarily want to hear that argument

17  today, but we'd be happy to present it, Your Honor, because

18  this really -- this whole fluff over indemnity doesn't matter.

19    THE COURT:  Well, I appreciate that that's your point

20  of view, but I'm really not prepared to address that until I

21  see whether or not -- I mean, from what you're telling me,

22  you're going to press the argument whether you see the

23  Agreement or not.

24    MR. COHN:  Correct.

25    THE COURT:  So, if that's the case, why do you need

1    the Agreement?

2         MR. COHN:  Well, because we certainly need to -- if

3    Grace is going to argue that the Agreement provides a basis for

4    entry of the injunction and we disagree --

5         THE COURT:  But you're disagreeing whether it exists

6    or not.  You're saying that whether or not the documents say

7    that there is some indemnity that will survive the various

8    procedural problems you've pointed out, the fact that Royal

9    hasn't filed a timely Proof of Claim, the fact that the

10    schedules probably, I'll just assume without deciding right

11    now, list this claim as unliquidated therefore there was an

12    obligation to file a timely Proof of Claim, the fact that at

13    this point in time the obligation can't be known, and even if

14    it were known that Royal can't recover against the Debtor

15    because it didn't file it's Proof of Claim.  If besides all of

16    those procedural problems you're going to contend that this

17    Court can't adjudicate the issue anyway, then you don't need to

18    see the Agreement.

19         MR. COHN:  Well, we do in order to make the

20    alternative arguments, Your Honor.

21         THE COURT:  Of what?

22         MR. COHN:  We'll argue in the alternative that even

23    if the standard were met in every other respect, even if it

24    didn't matter that there was no Proof of Claim, even if the

25    other grounds offered for the injunction were sufficient, that

1  what they have not met is the requirement of showing that there

2  is an indemnity obligation, because there is no indemnity

3  obligation in accordance with the terms of the Agreement from

4  the excerpts that we've been able to see.

5          THE COURT:  Oh, I see.  That the contract itself

6  doesn't cover the type of claim that you're arguing your

7  clients have.

8          MR. COHN:  Correct, Your Honor.

9          THE COURT:  Okay.

10         MR. COHN:  At the very least, Your Honor, the

11 contract is so ambiguous on the subject that it really falls

12 squarely within Judge Wolin's holding in the _Federal Mogel_ case

13 where unless you've got a crystal clear indemnity obligation

14 you can't even take the next step of showing whether the other

15 factors are present to entitle you to related-to jurisdiction

16 in the injunction.

17         THE COURT:  Okay.  All right.

18         MR. COHN:  Thank you, Your Honor.

19         THE COURT:  Thank you.

20         MR. KAPP:  Your Honor, if I may just put a final nail

21 in the coffin, we obviously would have hoped that this would

22 have been resolved a lot faster and the Plaintiffs would just

23 agree to sign the Confidentiality Agreement.  We agree to all

24 this, however, we would note that the Plaintiffs have been

25 cooperative in working with us with regards to the Montana

1  litigation.  The parties have informally agreed that things

2  would be stayed pending ruling on our motion.  Now that things

3  have been drawn out we hope that that agreement will continue,

4  and we would merely just say that if for some reason that

5  doesn't we could see that we would have to be back here and

6  seek emergency action and file the right pleadings.

7          THE COURT:  Mr. Cohn?

8          MR. KAPP:  We'd hoped there'd be an agreement.

9          MR. COHN:  Your Honor, first of all, there was an

10  agreement to stay action.  It was in exchange for a defined

11  continuance in order for us to file papers.  That agreement has

12  expired.  There's no -- there can be no assertion that there is

13  any longer any agreement by which we will stay our hand.  The

14  only action that I know of right now that our Montana counsel

15  needs to take in these matters is that we have someone who's

16  dying and who's testimony needs to be preserved, and we do

17  intend to notice that single deposition.

18          THE COURT:  Okay.

19          MR. COHN:  I would hope that just as a matter of

20  humanity, never mind anything else, that Mr. Kapp would not try

21  to stop us.

22          THE COURT:  I believe the Debtor is already under an

23  order in this adversary action to preserve testimony for

24  anybody that is alleged to be dying anyway, so I don't think

25  it's something that needs a separate order.  Mr. Kapp, do you

1   need another order?

2   MR. KAPP:  Your Honor, we've already spoken to

3   Mr. Cohn about this, and we've asked him that if that is the

4   case to let us know the circumstances, and we certainly will be

5   as reasonable as we possibly can.  We haven't -- we don't know

6   who it is and the facts around it, but based on just the

7   hypothetical, we certainly would like to work with the

8   Plaintiffs --

9   THE COURT:  Well, do it soon.  If there's somebody

10  dying get the deposition scheduled and do it, and you have

11  relief from the injunction to the extent that it's in effect in

12  any event to do that, so that at least the testimony is

13  preserved.

14  MR. COHN:  Thank you, Your Honor.

15  THE COURT:  Okay.  The rest of the action, however,

16  in as much as it at this point may affect the Debtor, I don't

17  know, is stayed until I get through the rulings on this

18  process.  To the extent that the action affects the Debtor, or

19  claims against the Debtor.  The automatic stay is in effect,

20  and it remains in effect pending this ruling.  The automatic

21  stay is in effect.

22  MR. COHN:  Your Honor, there has been no assertion by

23  Grace or anybody else that the automatic stay enjoins this

24  litigation.  This is entirely a matter of seeking a Section 105

25  injunction.

1          THE COURT:   Okay.   All right.

2          MR. KAPP:   Your Honor, that brings us back to items 3

3     and 5.   I don't know if Warren Smith has -- Mr. Smith's joined

4     us.

5          MR. SMITH:   Yes, I have joined, Your Honor, I'm

6     present now.

7          THE COURT:   All right.   Mr. Smith, I saw that the fee

8     petitions are filed for only some counsel on items 3 and 5, and

9     frankly, I'm confused as to why, because I thought my Order

10    specified that all counsel were to be filing the applications

11    for the same time periods at the same time so that both you and

12    I can review them in tandem.

13         MR. SMITH:   Yes, Your Honor.   Are you speaking

14    specifically of Nelson, Mullins?

15         THE COURT:   Any of the applications that are not set

16    for hearing in items 3 and 5 today.   I'm not sure who all they

17    are, Mr. Smith, I just know that they're not all here.

18         MR. SMITH:   Okay.   Okay.   I guess, speaking in the

19    negative, I'm not sure I know which applications we're

20    discussing here, Your Honor.

21         THE COURT:   Okay.   There is -- well, maybe it would

22    be easier if Ms. Gailbraith knows to tell me who isn't here,

23    because the attachment to this Order lists more than I thought

24    the agenda listed, actually.   Are they all here now,

25    Ms. Gailbraith?   Items 3 and 5?

1           MS. GAILBRAITH:  Your Honor, I'm not for certain.  We

2    would have to do an audit against the list of all the

3    professionals of the Committee and of the Debtors to determine

4    whether everyone had submitted their applications on time and

5    whether they're included on the attachment to the Order.

6           THE COURT:  Well --

7           MR. SMITH:  Your Honor, the one professional I was

8    aware of was the Nelson, Mullins application.

9           THE COURT:  Okay.  I'm looking to see whether it's

10   here.  There is a Nelson, Mullins, Reilly fee request for an

11   application filed September 9th at docket #4402, which frankly,

12   I don't think I've seen.

13          MR. SMITH:  Yes, that was filed late, Your Honor.

14          THE COURT:  Very late.

15          MS. GAILBRAITH:  Your Honor, it was, and a little bit

16   of the history behind that, I think -- my understanding is that

17   that firm fell a little bit behind on submitting their

18   monthlies and a couple of their quarterlies, and they were able

19   to catch up.  By the time we received that quarterly to file it

20   was a little bit late, and as noted in the Certificate of

21   Counsel and as noted in the Order.  The objection deadline for

22   the quarterly application is next week.  However, when that

23   became -- that issue came before the parties the Fee Auditor

24   had advised the parties that they had completed their review of

25   the quarterly application through the submission of the

1  monthlies, and they had, upon showing the Fee Auditor that

2  that, you know, as soon as it was filed that the auditor was

3  provided with a copy of the quarterly they were able to agree

4  the numbers to the monthlies that had been submitted, and they

5  had no other issues and had agreed with Nelson, Mullins to

6  proceed with that application at this hearing.

7                THE COURT:  Okay.  All right, Mr. Smith?

8                MR. SMITH:  Yes, Your Honor.

9                THE COURT:  Okay.  That appears to be the only one

10  now that I have looked at the schedule that's attached.  I also

11  -- I'm not sure whether the Step, Pell & Johnson one that was

12  filed in August is late for this application period or not.  It

13  may have also been late, but I didn't receive any objections to

14  it, and I think the objection deadline as to it should have

15  passed.

16                MR. SMITH:  Yes, Your Honor.

17                MS. GAILBRAITH:  Your Honor, I believe that the

18  Nelson, Mullins is the only quarterly application that I'm

19  aware of off-hand that the objection deadline has not passed,

20  and we have set a specific paragraph addressing that in the

21  Order.

22                THE COURT:  Okay.  Do you have any objections to any

23  of the fees, Mr. Smith?

24                MR. SMITH:  Well, yes.  We had recommended some

25  reductions, Your Honor, but those have all been accepted by

1  those applicants.

2       THE COURT:  Okay.  I've been presented with an order

3  that will allow the fees as requested in agenda item #3 and 5,

4  including the Nelson, Mullins application, but the language of

5  this Order does indicate that Nelson, Mullins is not to be paid

6  until the omnibus objection date passes, and if there is an

7  objection then that hearing will take place on the December

8  calendar, and if you're agreeable to that, Mr. Smith, that

9  seems to be an acceptable way to resolve this.

10      MR. SMITH:  Yes, I agree, Your Honor.

11      THE COURT:  Okay.  Then I'm signing the Order that

12  has been handed up to me, and I'm assuming, Mr. Smith, that

13  this Order has -- the fees as requested -- I'm sorry, not as

14  requested but as you have proposed them.

15      MR. SMITH:  Yes, Your Honor.  That Order reflects the

16  reductions that we have recommended, and again, that have been

17  agreed to by the particular applicants for which we have

18  recommended reductions, and we have reviewed the Order and the

19  numbers in the Order.

20      THE COURT:  All right.  That's fine.  Then I'm

21  handing Ms. Gailbraith back the duplicate copy for service.

22      MS. GAILBRAITH:  Thank you, Your Honor.

23      THE COURT:  Okay.  Mr. Smith, is your review process

24  working?  Do you have any housekeeping matters you need to

25  address?

1          MR. SMITH:  No, Your Honor, I believe that in this

2  case it's working well.

3          THE COURT:  Okay, thank you.

4          MR. SMITH:  Okay.  May I be excused, Your Honor?

5          THE COURT:  Yes, sir, thank you.

6          MR. SMITH:  Thank you.

7          THE COURT:  Mr. Kapp?

8          MR. KAPP:  Your Honor, unless you have any further

9  housekeeping, I believe our agenda's complete.

10          THE COURT:  Any other housekeeping matters by

11  anybody?

12          ALL:  (No verbal response).

13          THE COURT:  Okay, we're adjourned, thank you.

14          MR. KAPP:  Thank you for your time.

15      (Court adjourned)

16

17                        CERTIFICATION
   I certify that the foregoing is a correct transcript from the
18  electronic sound recording of the proceedings in the above-
   entitled matter.
19

20  _____          1-14-04
   Signature of Transcriber             Date
21

22

23

24

25

*Writer's Cramp, Inc.*

Certified Court Transcribers

732-329-0191