IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**Objection Deadline: March 5, 2004 at 4:00 p.m. prevailing Eastern time**
**Hearing Date: March 22, 2004 at 12:00 pm Noon prevailing Eastern time**

## DEBTORS' SIXTH MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING DEBTORS' EXCLUSIVE PERIODS IN WHICH TO FILE A CHAPTER 11 PLAN AND TO SOLICIT VOTES THEREON

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby move the Court for entry of an order, pursuant to section 1121(d) of title 11 of United States Code (as amended, the "Bankruptcy Code"), (a) extending the period under section 1121(b) of the Bankruptcy Code during which the Debtors have the exclusive right to file a chapter 11 plan of reorganization (the "Exclusive Filing Period") and (b) extending the period

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

under section 1121(c)(3) of the Bankruptcy Code during which the Debtors have the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period"; together with the Exclusive Filing Period, the "Exclusive Periods"). In support of this Motion, the Debtors respectfully state as follows:

## Background

1. On July 21, 2003 the Debtors sought authority to extend the Exclusive Filing Period through and including February 1, 2004 and the Exclusive Solicitation Period through and including April 1, 2004 (the "Fifth Exclusive Period Motion"). On August 25, 2003, the Court entered an order granting the Fifth Exclusive Period Motion (the "Fifth Exclusive Period Order"). The Fifth Exclusive Period Order also specifically reserved the Debtors' rights to seek further extensions of the Exclusive Periods.

## Relief Requested

2. By this Motion, the Debtors seek to extend the Exclusive Filing Period six months through and including August 1, 2004. The Debtors also seek to extend the Exclusive Solicitation Period six months, through and including October 1, 2004. The Debtors further request that such an order be without prejudice to the Debtors' rights to seek additional extensions of the Exclusive Filing Period and the Exclusive Solicitation Period. For the reasons set forth herein, the Debtors submit that extending the Exclusive Filing Period and the Exclusive Solicitation Period is appropriate and warranted in these chapter 11 cases.

## Basis for Relief

3. Section 1121(d) of the Bankruptcy Code grants this Court authority to extend the Exclusive Periods "for cause" after notice and a hearing. Although the term "cause" is not defined by the Bankruptcy Code, the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement." H.R. Rep. No. 95, 95th Cong., 1st Sess.

2

232 (1997); see also, *In re McLean Indus., Inc.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987) (quoting H.R. Rep. No. 595, 95th Cong., 2d Sess. 231 (1978), reprinted in 1978, U.S.C.C.A.N. 5963, 6190); and *In re Public Serv. Co. of New Hampshire*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("legislative intent . . . [is] to promote maximum flexibility").

4.   To facilitate this legislative intent, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and nonfinancial information concerning the ramifications of any proposed plan for disclosure to creditors.  See, e.g., *McLean Indus.*, 87 B.R. at 833-34; *In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).  The decision to extend a debtor's Exclusive Periods is committed to the sound discretion of the bankruptcy court based upon the facts and circumstances of each particular case.  See, e.g., *First American Bank of New York v. Southwest Gloves and Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986).

5.   Courts have relied on a variety of factors to determine whether cause exists to extend the Exclusive Periods, each of which may provide sufficient grounds for such an extension.  These factors include (1) the size and complexity of the case, (2) the necessity of sufficient time to negotiate and prepare adequate information, (3) the existence of good faith progress toward reorganization, (4) whether the debtor is paying its debts as they come due, (5) whether the debtor has demonstrated reasonable prospects for filing a viable plan, (6) whether the debtor has made progress in negotiating with creditors, (7) the length of time the case has been pending, (8) whether the debtor is seeking the extension to pressure creditors and (9) whether unresolved contingencies exist.  *In re Express One International, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (finding cause to extend the Exclusive Periods where the debtor has been diligent in its attempts to reorganize and the extension was not sought for an indefinite

period); see also, *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409-10 (E.D.N.Y. 1989) (listing some of the above-referenced factors); *In re Grand Traverse Development Co. Ltd. Partnership*, 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992) (same); *In re General Bearing Corp.*, 136 B.R. 361, 367 (Bankr. S.D.N.Y. 1992) (same); and *In re Southwest Oil Co. of Jourdanton*, 84 B.R. 448, 451-54 (Bankr. W.D. Tex. 1987) (same).

6. The Debtors submit that each of the above-described factors support extending the Exclusive Filing Period and the Exclusive Solicitation Period. In particular, these chapter 11 cases were filed as a result of mounting asbestos-related litigation liabilities. Defining these liabilities and then providing for the payment of valid claims on a basis that preserves the Debtors' core business operations is a complex process that is central to resolving these chapter 11 cases. Given its nature, this process involves significant litigation that is, as the Court has recognized, taking time to resolve. Nonetheless, until the central issue of the magnitude of the Debtors' asbestos-related liabilities is resolved, little progress can be made towards developing a viable plan of reorganization.

7. To that end, the Debtors have worked diligently in conjunction with a number of constituencies to advance these chapter 11 cases, and, as a result, substantial progress has been made in establishing a framework within which to resolve the mounting asbestos-related litigation liabilities and various other claims against the Debtors. In particular, the resolution of Personal Injury Claims could greatly influence the availability of assets to satisfy the claims of the Debtors' various constituencies. The Debtors and other constituents have briefed Judge Wolin extensively on how best to resolve the Personal Injury Claims and the procedures for doing so. In particular, the Personal Injury Claims litigation proposals pending before Judge Wolin are intended to streamline the claims adjudication process and provide a means of

resolving the common legal issues through a fair and orderly process in a single forum while preserving legitimate personal injury claimants' rights to trial. Unfortunately, for several reasons, as outlined more fully below, Judge Wolin has not addressed these proposals. The Debtors submit that progress toward resolution of the Personal Injury Claims—including, at a minimum, the setting of a bar date for Personal Injury Claims and a structure for determining the Debtors' liability for Personal Injury Claims—is necessary before the Debtors can meaningfully develop a viable plan of reorganization.

8.  Since the Fifth Exclusive Period Motion was filed on July 21, 2003, there have been a number of developments which have impeded the Debtors progress toward establishing the framework to deal with asbestos-related Personal Injury Claims against the Debtors. Most significantly, on November 5, 2003, as a result of a motion to recuse filed in the Owens Corning chapter 11 cases, Judge Wolin entered an order staying all proceedings before him in the five asbestos-related cases, including these chapter 11 cases, until the recusal motion has been resolved. On November 14, 2003, three creditors filed a motion to disqualify Judge Wolin from further participation in these chapter 11 cases (the "Wolin Motion"). A decision on the Wolin Motion is currently set to be issued by Judge Wolin by January 31, 2004. The Debtors anticipate that any decision on the Wolin Motion will be appealed to the Court of Appeals for the Third Circuit and therefore expect that the status of Judge Wolin's participation in these chapter 11 cases will remain unresolved for some time. The timing of a final decision on the Wolin Motion has a substantial impact on the Debtors ability to develop a plan of reorganization because Judge Wolin retains jurisdiction over all issues related to the Personal Injury Claims in these chapter 11 cases.

DOCS_DE:87915.1

9. Because of the uncertainty of Judge Wolin's continued participation in these chapter 11 cases, the Debtors cannot predict when they will be able to move forward with the resolution of the Personal Injury Claims. If a new judge is assigned to fill Judge Wolin's role in these chapter 11 cases, there likely will be additional delays as the new judge will need significant time to become familiar with the issues in these chapter 11 cases and the Personal Injury Claims.

10. Other progress has been made in these chapter 11 cases since the Fifth Exclusive Period Motion was filed. In particular, the parties in the fraudulent transfer action filed by the official asbestos committees against Sealed Air Corporation in these chapter 11 cases (Adversary Proceeding No. 02-2210) have been negotiating an agreement memorializing the settlement with Sealed Air Corporation reached on November 29, 2002. The parties, excluding Grace, executed a settlement agreement with Sealed Air Corporation and filed a motion seeking approval of the settlement agreement on November 26, 2003. The Debtors are continuing to negotiate with the other parties; however, Judge Wolin also has jurisdiction over the fraudulent transfer action. Therefore, the entry of an order with respect to the settlement will be delayed until the Wolin Motion is resolved.

11. These circumstances alone warrant extending the Exclusive Periods until after the Wolin Motion is resolved and a Personal Injury Claims bar date has passed.

12. Additionally, the Debtors met with representatives of the three creditors committees and the equity committee in September 2003 to discuss a framework for a plan. The Debtors continue to have dialogue with their creditor constituencies. While these discussions and dialogue are constructive, the significant unresolved issues related to the Personal Injury Claims multiply the difficulty for the Debtors' negotiations with their creditors.

13. Further, the "Science Trial," regarding factual questions about the scientific risks of Zonolite Attic Insulation ("ZAI"), remains to be completed. The "Science Trial" was scheduled to commence on February 9, 2004, but was cancelled. The parties continue settlement negotiations in an effort to resolve the issues; however, at present, the ZAI issues remain unresolved. The Debtors will not be able to develop a consensual plan of reorganization until the ZAI issues are resolved.

14. Indeed, at all times during the course of these chapter 11 cases, the Debtors have acted in good faith and have continued to pay their post-petition obligations. In light of these circumstances, the Debtors clearly are not seeking a further extension in order to unduly pressure creditors, nor will such an extension harm the Debtors' creditors or other parties in interest.

15. To the contrary, for the reasons discussed above, terminating the Exclusive Periods would defeat the very purpose of section 1121 of the Bankruptcy Code, which is to afford the Debtors a meaningful and reasonable opportunity to negotiate with their creditors and to then propose and confirm a consensual plan of reorganization. Such a termination instead would signal the Court's loss of confidence in the Debtors and their reorganization efforts, and would likely cause the Debtors' core businesses to deteriorate, thereby diminishing the value of Debtors' assets to the detriment of the Debtors, their estates and their creditors.

16. In light of the size and complexity of these chapter 11 cases and in light of the current time frame for resolving the case management and litigation protocol issues, the Debtors' request for an extension of six months is reasonable. Given the extremely unusual length of time to set a bar date and the unexpected delays related to the Wolin Motion, the Debtors' request is not beyond the range of extensions granted by this and other courts in large reorganization cases, which did not involve such complexities in their administration. *See, e.g., In re Loewen Group*

*Int'l, Inc.*, Case No. 99-1244 (PJW) (Bankr. D. Del. June 1, 1999) (Exclusive Periods extended for 25 months because ongoing litigation complicated the resolution of the chapter 11 case). Indeed, even when no complex litigation was key to resolving chapter 11 cases, courts have routinely granted extensive Exclusive Period extensions. *See, e.g.*, *In re Phar-Mor, Inc.*, Case No. 92-41599 (Bankr. N.D. Ohio) (Exclusive Periods extended approximately three years).

17. Accordingly, extending the Exclusive Periods a further six months as requested by the Debtors is reasonable and appropriate under the circumstances.

## Notice

18. Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor-in-possession lenders, (iii) counsel to the committees appointed by the United States Trustee and (iv) those parties that requested papers under Fed. R. Bankr. P. 2002.

WHEREFORE, the Debtors respectfully request that the Court enter an order: (i) extending the Debtors' Exclusive Filing Period through and including August 1, 2004, (ii) granting an extension of the Debtors' Exclusive Solicitation Period through and including October 1, 2004, (iii) without prejudice to the Debtors' rights to seek additional extensions of their Exclusive Filing Period and the Exclusive Solicitation Period and (iv) granting such other relief as may be fair and equitable.

| | |
|---|---|
| Wilmington, Delaware<br>Dated:  January 28, 2004 | Respectfully submitted,<br><br>KIRKLAND & ELLIS LLP<br>David M. Bernick, P.C.<br>James W. Kapp III<br>Janet S. Baer<br>Christian J. Lane<br>200 East Randolph Drive<br>Chicago, Illinois 60601<br>Telephone:  (312) 861-2000<br>Facsimile:   (312) 861-2200<br><br>and<br><br>PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.<br><br>_/s/ Laura Davis Jones_<br>Laura Davis Jones (Bar No. 2436)<br>Scotta E. McFarland (Bar No. 4184)<br>David W. Carickhoff (Bar No. 3715)<br>919 North Market Street, 16th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone:  (302) 652-4100<br>Facsimile:   (302) 652-4400<br><br>Co-Counsel for the Debtors and Debtors in Possession |

DOCS_DE:87915.1