**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF REED SMITH LLP**
**FOR THE TENTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Fee Application of Reed Smith LLP for the Tenth Interim Period.

**BACKGROUND**

1.    Reed Smith LLP ("Reed Smith") was retained as special asbestos products liability defense counsel to the Debtors.  In the Application, Reed Smith seeks approval of fees totaling $390,186.00 and costs totaling $24,495.00 for its services from July 1, 2003, through September 30, 2003.

2.    In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30,

1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served on Reed Smith an initial report based on our review, and received a response from Reed Smith, portions of which response are quoted herein.

## DISCUSSION

3.    In our initial report, we noted that on July 8, 2003, four firm members prepared for and attended a meeting.  The total time spent including preparation time was 28.80 hours for  fees of $10,350.50.  The entries are provided below.

| | | | |
|---|---|---|---|
| 07/07/03 | JWB | 8.50 | .............; preparation for case briefing and outline of tasks to be done going forward (3.1);.......... |
| 07/07/03 | DEC | 3.90 | ...........; meet with J. Restivo, J. Bentz and L. Flatley re: preparation for portion of extensive case review meeting with W.R. Grace representatives on 7/8/03 (.90). |
| 07/07/03 | LEF | 5.80 | Preparation for case review meeting (2.70);...........; with J. Restivo, D. Cameron and J. Bentz re: case review meeting (1.00);............. |
| 07/08/03 | JWB | 9.00 | Preparation for and attend portions of case briefing meeting with several of Debtors' in-house counsel (5.0);........ |
| 07/08/03 | DEC | 7.30 | Prepare for and attend portions of extensive case review meeting in Pittsburgh with R. Finke, W. Sparks and Grace general counsel and chief restructuring officer (4.40);......... |
| 07/08/03 | LEF | 6.20 | ...........; preparation for case review meeting (1.20); attend portion of case review meeting with Messrs. Siegel, Beber, Finke, Sparks, Senftleben, Restivo, Cameron and Bentz (4.50);.............. |
| 07/08/03 | JJR | 6.00 | Prepare for and attend comprehensive ZAI Science Trial case review meeting with Reed Smith attorneys, Debtors' in-house |

counsel and Debtors' chief restructuring officer.

Paragraph II.D.5. of the Guidelines states  ". . .[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." We asked Reed Smith to explain why it was necessary for four firm members to prepare for and attend this meeting.  Reed Smith's response is provided as Response Exhibit 1.  We accept this explanation and offer no objection to these fees.

    4.    We further noted that on July 21, 2003, MHS has a time entry listed as 3.20 hours for a total fee of $736.00.  The parenthetical entries total only 2.80 hours for fees of $644.00.  The difference  is $92.00.  The entry is provided below.

| 07/21/03 | MHS | 3.20 | Continued research and analysis re: asbestos trusts, estimation, and speculative damages (0.4); draft research memorandum re: speculative damages, estimation, and asbestos trusts (2.4). |

We asked Reed Smith to explain the apparent discrepancy in the time entries.  Reed Smith responded as follows:

> Reed Smith has reviewed the original time entry made by attorney Sampson and has determined that the narrative fee detail is erroneous; the detail should have read as follows:

>> Continued research and analysis re: asbestos trusts, estimation, and speculative damages (0.4); draft research memorandum re: speculative damages, estimation, and asbestos trusts (2.8).

> As such, the total fee charged by Reed Smith is correct, and no reduction should be assessed.

We accept this explanation and have no objection to these fees.

**CONCLUSION**

5.    Thus, we recommend approval of fees totaling $390,186.00 and costs totaling $24,495.00 for Reed Smith's services from July 1, 2003, through September 30, 2003.


Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
          Warren H. Smith
          Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 4080
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**


**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 5th day of February, 2004.


_____
          Warren H. Smith

# SERVICE LIST
Notice Parties

**The Applicant**

Richard Keuler, Esq.
Reed Smith LLP
1201 Market Street, Ste. 1500
Wilmington, DE 19801

Douglas Cameron
Reed Smith LLP
P. O. Box 2009
Pittsburgh, PA 15230-2009

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Response Exhibit 1

        In his initial report, the Fee Auditor noted that on July 7 and 8, 2003, four Reed Smith
professionals (James J. Restivo, Jr., Lawrence E. Flatley, Douglas E. Cameron and James W. Bentz)
prepared for and/or participated in the same meeting, for a total of 28.80 hours and $10,350.50.  The
meeting at issue, described in attorney Cameron's July 7 and 8 narratives as a "extensive case review
meeting," also involved several of the Debtors' in-house counsel, including W. R. Grace's Senior
Vice-President, General Counsel and Chief Restructuring Officer, David Siegel, and several in-house
counsel who have been intimately involved with the ZAI Science Trial (Richard Finke, Richard
Senftleben and William Sparks).  The focus of the meeting, which was convened at the request of
in-house counsel, was to resolve issues and prepare strategy for moving ahead with the extensive
briefing in the ZAI Science Trial Case at the dispositive motion stage.

        The importance of the July 8 meeting can best be evidenced through a description of
the time period at which the meeting was convened:  the meeting followed closely the filing of
several motions in limine and for summary judgment and partial summary judgment in the ZAI
Science Trial by both the Debtors and by the ZAI Claimants.  The filing of the ZAI Claimants'
motions set forth the ZAI Claimants' theory of their case against the Debtors, and also described
what the ZAI Claimants thought were the controlling legal and factual issues in their case.  The July
8 meeting between Reed Smith professionals and the Debtors' in-house counsel was held primarily
to analyze the ZAI Claimants' arguments and case theories, to strategize as to how to respond to
these arguments and theories, and also to revisit and reinforce the arguments and case theories that
the Debtors set forth in their own motions in limine and for summary judgment.

        Reed Smith believes that the Fee Auditor is well-acquainted with the significant size
and scope of the ZAI Science Trial litigation.  The litigation focuses on a product that was sold for
over 50 years, and for which the Debtors have had responsibility since approximately 1963.
Development of the Debtors' defense in the ZAI Science Trial has required the review and analysis
of millions of pages of historical documents, the interview and deposition of tens of witnesses across
the United States, exhaustive legal research, and extensive and scientifically complex expert
discovery.  All of this culminated in the Debtors' preparation of extensive summary judgment
motions and supporting legal memoranda.  The analysis of and preparation to respond to the ZAI
Claimants' motions required a coordinated effort by all of the key individuals involved in the ZAI
Science Trial litigation on behalf of the Debtor, both in-house and at Reed Smith, in order to marshal
the factual information and legal concepts needed to refute and defeat the  claims of the ZAI
Claimants.

        Throughout Reed Smith's representation of the Debtors in their bankruptcy (and, as has been
described to the Fee Auditor previously, throughout Reed Smith's representation of the Debtors in
their pre-bankruptcy asbestos-related litigation), primary responsibility for specific subject areas and
segments of the case have been divided among Reed Smith professionals.  Responsibilities for
specific subject areas and case segments have been divided among attorneys Restivo, Flatley,
Cameron and Bentz for dealing with, among other things, responsibility over medical issues and
experts, industrial hygiene issues and experts, microscopy issues and experts, regulatory issues and
experts, Grace's historical documents and witnesses, document production and discovery issues,
case-specific claims and facts, and damages.  Each of these four individuals had significant

responsibilities for certain aspects of the summary judgment/motion in limine briefing and case strategy preparation presently at issue.

        This division of primary responsibility, which originated prior to the Debtors' bankruptcy, was designed to avoid (and has avoided) duplication of effort, and was also intended to allocate direct responsibility for results. The division of specific primary responsibilities was carried over to Reed Smith's retention as the Debtors' Special Asbestos Product Liability Defense Counsel. The attendance of multiple Reed Smith professionals at certain meetings, hearings or conference calls during the Debtors' bankruptcy has often been necessary when the event in question covers topics within the areas of primary responsibility of more than one Reed Smith professional. So it was with the July 7-8 meeting: the meeting encompassed issues from the areas of responsibility of all four professionals named above, and each was needed to attend the meeting so that a full treatment could be given to all issues raised in the ZAI Claimants' summary judgment papers.

        Reed Smith is fully aware of the need to avoid duplication, and it has made -- and will continue to make -- concentrated efforts to avoid any such duplication, including writing off time prior to the submission of Fee Applications if there is any unnecessary duplication. As the various Fee Applications reflect, particularly after the early stages of Reed Smith's representation of the Debtors, the overwhelming majority of meetings, hearings and calls have involved only one Reed Smith professional. Reed Smith has had multiple professionals participate only where doing so was necessary and/or more economical than any alternative staffing plan, and it will continue to follow this policy in the future.