**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:                                              :
                                                    :
  W.R. GRACE & CO., ET AL.,                         :    Case No. 01-1139 (JKF)
                                                    :    Chapter 11
                       Debtors.                     :
                                                    :    (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

SUMMARY OF TENTH INTERIM APPLICATION OF CONWAY, DEL GENIO, GRIES & CO., LLC ("CDG") FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED AS FINANCIAL ADVISOR FOR THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS FOR THE PERIOD FROM JULY 1, 2003 THROUGH SEPTEMBER 30, 2003.

| | |
|---|---|
| Name of Applicant: | Conway, Del Genio, Gries & Co., LLC |
| Authorized to Provide Professional Services to: | The Official Committee of Asbestos Property Damage Claimants |
| Date of Retention: | Retention order entered on October 22, 2001, <u>Nunc Pro Tunc</u>, to April 27, 2001 |
| Period for which compensation and reimbursement are sought: | July 1, 2003 through September 30, 2003 |
| Amount of compensation requested: | $ 300,000.00 |
| Amount of expense reimbursement requested: | $ 1,689.24 |

This is a tenth interim application.

Prior Interim Fee Applications:

| Date Filed | Period Covered | Requested Compensation | Requested Expenses | Approved Compensation | Approved Expenses |
|---|---|---|---|---|---|
| January 26, 2004[1] | July 1, 2003 through September 30, 2003 | $300,000.00 | $1,689.24 | NA | NA |
| September 24, 2003[1] | April 1, 2003 through June 30, 2003 | $240,847.00 | $3,237.13 | NA | NA |
| June 11, 2003[1] | January 1, 2003 through March 31, 2003 | $173,154.00 | $838.02 | $173,154.00 | $838.02 |
| April 17, 2003 | October 1, 2002 through December 31, 2002 | $13,987.12 | $0.00 | $13,987.12 | $0.00 |
| March 31, 2003 | July 1, 2002 through September 30, 2002 | $21,808.75 | $855.33 | $21,808.75 | $855.33 |
| March 21, 2003 | April 1, 2002 through June 30, 2002 | $28,420.00 | $2,919.16 | $28,420.00 | $2,919.16 |
| May 1, 2002 | January 1, 2002 through March 31, 2002 | $450,000.00 | $4,809.71 | $450,000.00 | $4,809.71 |
| February 25, 2002 | November 1, 2001 through December 31, 2001 | $300,000.00 | $2,406.91 | $300,000.00 | $2,406.91 |
| November 29, 2001 | October 1, 2001 through October 31, 2001 | $150,000.00 | $1,657.00 | $150,000.00 | $1,657.00 |
| October 26, 2001 | April 27, 2001 through September 30, 2001 | $620,000.00 | $14,376.21 | $620,000.00 | $14,376.21 |

\*   **Subject to section 105(A) and 331 of the Bankruptcy Code establishing procedures for interim compensation and reimbursement of professionals whereby 80% of fees are paid on a monthly basis**
[1]   **As of the filing of this application, no objection to the compensation and expenses has been filed.**

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re: :
:
W.R. GRACE & CO., ET AL.,        : Case No. 01-1139 (JKF)
: Chapter 11
Debtors. :
: (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
-

SUMMARY OF TENTH INTERIM APPLICATION OF CONWAY, DEL GENIO, GRIES & CO., LLC ("CDG") FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED AS FINANCIAL ADVISOR FOR THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS FOR THE PERIOD FROM JULY 1, 2003 THROUGH SEPTEMBER 30, 2003.

TO THE HONORABLE JUDITH K. FITZGERALD,
UNITED STATES BANKRUPTCY JUDGE:

Conway, Del Genio, Gries & Co., LLC ("CDG") files this tenth interim application (the "Application") for allowance of compensation for financial advisory services provided to the Official Committee of Asbestos Property Damage Claimants of W.R Grace & Co., et al. (the "PD Committee") commencing July 1, 2003 (the "Commencement Date") through and including September 30, 2003 (the "Compensation Period") and reimbursement of its actual and necessary expenses incurred during the Compensation Period, and respectfully represents:

Introduction

1. Pursuant to the Order of the Court dated October 22, 2001, (the "Retention Order"), CDG was retained as financial advisor to the PD Committee to perform services set forth in our affidavit dated June 15, 2001.

2. By this Application, CDG requests an interim allowance for professional services rendered during the Compensation Period and reimbursement for actual and necessary expenses incurred during the Compensation Period. CDG is a financial advisory firm specializing in reorganization and restructuring of troubled companies. CDG's senior professionals have extensive experience with the reorganization and restructuring of troubled companies.

Background

3. On April 2, 2001 (the "Filing Date"), the above-captioned debtors (the "Debtors") filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors operated its business and managed its properties as debtors in possession.

4. On April 2, 2001, the Court entered its Order directing the joint administration of the Debtors' chapter 11 cases (the "Consolidated Cases").

5. On April 12, 2001, the Office of the United States Trustee appointed the PD Committee in this case consisting of Mr. Marco Barbanti, Princeton University, Pacific Freeholds and Prudential Insurance Company. The PD Committee held its organizational meeting on that day and selected Mr. Marco Barbanti to serve as its Chairman. Thereafter, the PD Committee was expanded to include Paul Price, Anderson Memorial Hospital and the Catholic Archdiocese of New Orleans. The PD Committee subsequently elected Mr. Dan Speights, representative of Anderson Memorial Hospital, as Co-Chairman of the PD Committee.

6. The PD Committee represents the interests of the asbestos property damage claimants in the Consolidated Cases.

7. On April 27, 2001, the PD Committee chose to retain CDG as its financial advisor. By application, dated July 6, 2001, the Applicant sought Court approval for its retention as financial advisor to the PD Committee nunc pro tunc to April 27, 2001.

8. Pursuant to the Retention Order, the Court authorized the PD Committee to retain CDG as financial advisor at a rate of $150,000.00 per month for twelve months and $100,000.00 per month thereafter, plus reimbursement of actual and necessary expenses nunc pro tunc to April 27, 2001, pursuant to Sections 1103(a) and 328(a) of title 11 of the United States Code. The Retention Order conditioned the Applicant's compensation on approval by this Court.

9. On October 26, 2001, CDG requested a first interim allowance of $620,000.00 as compensation for professional services rendered from April 27, 2001 through September 30, 2001 (the "First Interim Compensation Period"). CDG also requested an allowance of $14,376.21 as reimbursement for actual and necessary expenses CDG incurred during the First Interim Compensation Period. No objections to the fee and expense request for the First Interim Compensation Period were filed. CDG has received full payment of previously requested fees and expenses.

10. CDG requested a second interim allowance of $150,000.00 as compensation for professional services rendered from October 1, 2001 through October 31, 2001 (the "Second Interim Compensation Period"). CDG also requested an allowance of $1,657.00 as reimbursement for actual and necessary expenses CDG incurred during the Second Interim Compensation Period. No objections to the fee and expense request for the Second Interim Compensation Period were filed. CDG has received full payment of previously requested fees and expenses.

11. CDG requested a third interim allowance of $300,000.00 as compensation for professional services rendered from November 1, 2001 through December 31, 2001 (the "Third Interim Compensation Period"). CDG also requested an allowance of $2,406.91 as reimbursement for actual and necessary expenses CDG incurred during the Third Interim Compensation Period. No objections to the fee and expense request for the Third Interim

Compensation Period were filed. CDG has received full payment of previously requested fees and expenses.

12. CDG requested a fourth interim allowance of $450,000.00 as compensation for professional services rendered from January 1, 2002 through March 31, 2002 (the "Fourth Interim Compensation Period"). CDG also requested an allowance of $4,809.71 as reimbursement for actual and necessary expenses CDG incurred during the Fourth Interim Compensation Period. No objections to the fee and expense request for the Fourth Interim Compensation Period were filed. CDG has received full payment of previously requested fees and expenses.

13. CDG requested a fifth interim allowance of $28,420 as compensation for professional services rendered from April 1, 2002 through June 30, 2002 (the "Fifth Interim Compensation Period"). CDG also requested an allowance of $2,919.16 as reimbursement for actual and necessary expenses CDG incurred during the Fifth Interim Compensation Period. As of the date of this filing, the fee and expense request for the Fifth Interim Compensation Period is pending and no objections have been filed.

14. CDG requested a sixth interim allowance of $21,808.75 as compensation for professional services rendered from July 1, 2002 through September 30, 2002 (the "Sixth Interim Compensation Period"). CDG also requested an allowance of $855.33 as reimbursement for actual and necessary expenses CDG incurred during the Sixth Interim Compensation Period. As of the date of this filing, the fee and expense request for the Sixth Interim Compensation Period is pending and no objections have been filed.

15. CDG requested a seventh interim allowance of $13,987.12 as compensation for professional services rendered from October 1, 2002 through December 31, 2002 (the "Seventh Interim Compensation Period"). CDG, having incurred no actual expenses in providing services in connection with the general bankruptcy case during the Seventh Interim Compensation Period, requested no reimbursement therefor. As of the date of this filing, the fee request for the Seventh Interim Compensation Period is pending and no objections have been filed. CDG requested a sixth interim allowance of $21,808.75 as compensation for professional

services rendered from July 1, 2002 through September 30, 2002 (the "Sixth Interim Compensation Period"). CDG also requested an allowance of $855.33 as reimbursement for actual and necessary expenses CDG incurred during the Sixth Interim Compensation Period. As of the date of this filing, the fee and expense request for the Sixth Interim Compensation Period is pending and no objections have been filed.

16.     CDG requested an eighth interim allowance of $173,154.00 as compensation for professional services rendered from January 1, 2003 through March 31, 2003 (the "Eighth Interim Compensation Period"). CDG also requested an allowance of $838.02 as reimbursement for actual and necessary expenses CDG incurred during the Eighth Interim Compensation Period. As of the date of this filing, the fee and expense request for the Eighth Interim Compensation Period is pending and no objections have been filed.

17.     CDG requested a ninth interim allowance of $240,847.00 as compensation for professional services rendered from April 1, 2003 through June 30, 2003 (the "Ninth Interim Compensation Period"). CDG also requested an allowance of $3,237.13 as reimbursement for actual and necessary expenses CDG incurred during the Ninth Interim Compensation Period. As of the date of this filing, the fee and expense request for the Ninth Interim Compensation Period is pending and no objections have been filed.

18.     CDG requests a tenth interim allowance of $300,000.00[1] as compensation for professional services rendered during the Compensation Period. CDG also requests an allowance of $1,689.24 as reimbursement for actual and necessary expenses CDG incurred during the Compensation Period. CDG, in its normal course of business, bills its clients a flat monthly fee and does not charge by the hour. Thus, CDG does not normally keep time records. However, for the benefit of the Court, CDG is recording its hourly time and has provided summaries of the time spent by professionals during the Compensation Period, attached hereto as

---

[1] CDG is currently engaged by the PD Committee at a flat fee of $100,000 per month plus expenses. For the Compensation Period, total fees for services provided are $300,000. Since July 10, 2002, CDG has allocated our fees between the bankruptcy case and the fraudulent conveyance adversary proceeding, based on hours dedicated to performing services related to each. A settlement agreement in the adversary proceeding has been filed with the District Court and is awaiting final judicial approval. Therefore, we do not anticipate performing any additional services related thereto, nor do we expect to file any additional fee applications for fees or expenses related thereto.

Exhibit A.  CDG has provided supporting detail of the expenses incurred, attached hereto as Exhibit B.

19. There is no agreement or understanding between CDG and any other person, other than members, associates and employees of CDG, for the sharing of compensation received or to be received for services rendered in connection with these proceedings.

20. CDG has not entered into any agreement, express or implied, with any party in interest, including the PD Committee, the Debtors, other creditors, or any representative of any of them, or with any attorney for such party in interest, for the purpose of fixing the fees or other compensation to be paid to CDG for services rendered in connection herewith, from the assets of the Debtors.

## Services Provided

21. During the First Interim Compensation Period, CDG provided the PD Committee with experience and expertise in dealing with matters relating to the Debtors' businesses and historical operating trends, the Debtors' business plan, industry trends, proposed acquisitions by the Debtors, the Debtors' employee retention and incentive plans, trends for asbestos litigation and corresponding insurance coverage as well as a number of other items. CDG also assisted the PD Committee in beginning its ongoing investigation of asset divestitures, which occurred prior to the Chapter 11 filing.  CDG actively participated in meetings and conference calls with the PD Committee and provided the PD Committee members with observations, advice and guidance on various matters and issues.  CDG also responded to numerous questions and information requests from the PD Committee by investigating and reporting CDG's findings back to the PD Committee.

22. During the Second Interim Compensation Period, CDG provided the PD Committee with experience and expertise in analyzing the Debtors' business plan, analyzing operating results, proposed acquisitions by the Debtors, as well as assisting the PD Committee in beginning its ongoing investigation of asset divestitures, which occurred prior to the Chapter 11

filing. CDG actively participated in conference calls with the PD Committee and provided the PD Committee members with observations, advice and guidance on various matters and issues.

23. During the Third Interim Compensation Period, CDG provided the PD Committee with experience and expertise in analyzing operating results and assisting the PD Committee in its ongoing investigation of asset divestitures, which occurred prior to the Chapter 11 filing. CDG completed and provided to the committee a comprehensive report reviewing and analyzing a historical divestiture, with particular emphasis on the merits of fraudulent transfer litigation. CDG also began preparing another report analyzing a second divestiture. CDG also actively participated in conference calls with the PD Committee, provided the PD Committee members with observations, advice and guidance on various matters and issues and attended court hearings.

24. During the Fourth Interim Compensation Period, CDG prepared two substantial reports for the PD Committee. One report was on the Sealed Air transaction (consummated in 1998) and the other report was on the Fresenius Medical Care transaction (consummated in 1996). For each transaction, CDG reviewed all documents filed with the Securities and Exchange Commission that we deemed to be related to the transactions (meaning those documents filed within a period of time either before or after each transaction). Such documents included, but were not limited to, purchase agreements, bank agreements, S-4 filings, 10K and 10Q filings, and press releases. In addition, we performed ancillary research for other pertinent transaction information including security analyst reports and various other items. All analyses were based upon publicly available information.

In addition, CDG reviewed, analyzed and reported to the PD Committee on the Debtors' current operating results, potential acquisitions, the employee retention and benefit plans, and has actively participated on weekly committee conference calls with the PD Committee. CDG actively keeps the PD Committee apprised of all business issues and activities of the Debtors.

25. During the Fifth Interim Compensation Period, CDG advised the PD Committee with respect to current operating results, proposed acquisitions by the Debtors, and other matters and issues as they arose.

26. During the Sixth Interim Compensation Period, CDG advised the PD Committee with respect to current operating results, key employee compensation programs proposed by the Debtors, and other matters and issues as they arose.

27. During the Seventh Interim Compensation Period, CDG advised the PD Committee with respect to current operating results, key employee compensation programs proposed by the Debtors, and other matters and issues as they arose.

28. During the Eighth Interim Compensation Period, CDG advised the PD Committee with respect to current operating results, key employee compensation programs proposed by the Debtors, and other matters and issues as they arose.

29. During the Ninth Interim Compensation Period, CDG advised the PD Committee with respect to current operating results, proposed acquisitions by the Debtors, and other matters and issues as they arose.

30. During the Compensation Period, CDG advised the PD Committee with respect to current operating results, preliminary structure for Debtor's plan of reorganization, proposed acquisitions by the Debtors, and other matters and issues as they arose. The services rendered by CDG during the Compensation Period more specifically included:

**Category 7 – Committee (All) – 7.4 Hours**
Services performed in this project area during the Compensation Period relate to CDG's interactions with the PD Committee and its Counsel with respect to the Debtors' monthly and quarterly operating results, preliminary discussions related to Debtors' plan of reorganization, CDG's analysis of the Debtors' proposed acquisitions, participation in weekly PD Committee conference calls, and general financial advice.

**Category 20 – Travel – Non-working – 6.0 Hours**

Time allocated to this project area during the Compensation Period related to travel from New York, New York to Miami, Florida to meet with certain members of the PD Committee, its Counsel, and certain other advisors to discuss certain strategic issues relating to plan of reorganization.

**Category 26 – Business Analysis – 17.8 Hours**

Services performed in this project area during the Compensation Period relate primarily to CDG's detailed review of the Debtors' monthly operating results for July and August 2003 and the second quarter of fiscal year 2003. CDG received, reviewed and analyzed the Debtors' operating results, evaluating Debtors' performance relative to historical trends and projections. CDG participated in the Debtors' quarterly review calls, and reviewed the related materials distributed by the Debtors in anticipation thereof.

**Category 27 – Corporate Finance – 98.6 Hours**

Services performed in this project area during the Compensation Period relate to CDG's review of the Debtors' proposed acquisitions of two small international chemical companies. CDG reviewed the financial information provided on these two businesses together with Debtors' projections for post-acquisition financial performance, and performed additional analyses to determine value.

CDG also performed analyses related to the new debtor-in-possession credit facility and the use of that facility to meet stated pension liability reserve requirements.

**Category 11 – Fee Applications, Applicant – 35.1 Hours**

This category includes time spent compiling the time detail of CDG professionals, tracking expenses incurred in connection with our service to the PD Committee, and preparing fee applications. During the Compensation Period, CDG engaged in conversations with Counsel and the Fee Examiner to ensure CDG's compliance with the Amended Court Order. CDG's time detail is attached as Exhibit A

hereto, and a schedule of the expenses incurred is attached as Exhibit B hereto, in accordance with the requirements of this Court.

We addressed additional questions raised by the Fee Examiner with respect to certain of CDG's time detail and expenses reported in CDG's Eighth Interim Application for Compensation. The Fee Examiner in its Initial Report Regarding the Eighth Interim Fee Application of CDG identified certain areas of concern, which CDG addressed to the Fee Auditor's satisfaction. All fees requested in CDG's Eighth Interim Application for Compensation have been approved and paid. All fees requested in CDG's Ninth Interim Application for Compensation have been approved.

**Category 14 – Hearings – 6.1 Hours**

This category includes time spent reviewing transcripts of Omnibus Hearings held during the Compensation Period and discussions of issues relevant to the PD Committee with PD Committee members and Committee Counsel.

31. CDG submits that the foregoing services were necessary to the successful and prompt administration of the Consolidated Cases, necessary and beneficial to the PD Committee at the time at which such services were rendered, and were performed without unnecessary duplication of effort or expense.

32. Annexed hereto as Exhibit A is a schedule setting forth the summarized time by both project category and by professional of services provided to the PD Committee during the Compensation Period and since the commencement of the Bankruptcy Case. Annexed hereto as Exhibit B is a schedule setting forth the actual and necessary expenses that CDG incurred in the provision of services related to the bankruptcy case during the Compensation Period. To the best of knowledge, information and belief, all entries in Exhibits A & B comply with the requirements set forth in Order No. 32, as amended. To the best of knowledge, information and belief, this Application complies with section 330 of title 11 of the United States Code, the Federal Rules of Bankruptcy Procedure, the Guidelines adopted by the

Office for the United States Trustee for Reviewing Applications for Compensation and Reimbursement of Expenses, Order No. 32 (as amended) and the Administrative Order.

WHEREFORE CDG respectfully requests (i) interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $300,000.00 ("CDG Professional Services Fees") and reimbursement for actual and necessary expenses CDG incurred during the Compensation Period in the amount of $1,689.24 ("CDG Expenses"); (ii) that the allowance of such compensation for professional services rendered be without prejudice to CDG's right to seek such further compensation for the full value of services performed; (iii) that the Debtors' be directed to pay to CDG, forthwith the CDG Professional Services Fees previously withheld, and (iv) that the Court grant CDG such other and further relief as is just.

Dated: New York, New York
January 23, 2004

Conway, Del Genio, Gries & Co., LLC

By: _____
Gregory S. Boyer
Managing Director