## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                           Chapter 11

**W.R. Grace & Co., et al.**                     Case No. 01-01139 (JKF)

                Debtors.            Jointly Administered

---

**ELEVENTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK
& LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
FROM OCTOBER 1, 2003 THROUGH DECEMBER 31, 2003**

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **October 1, 2003 – December 31, 2003** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$215,718.50** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$5,950.82** |
| Fees and Expenses of the Asbestos Issues Expert | **$100,349.50** |

This is an: ☒ interim ☐ final application

This is the eleventh quarterly application filed.

**Attachment A**

## Monthly Interim Fee Applications

| Date Filed | Period Covered | Payment Requested | | Payment Received | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01- 4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001 D.I.889 | 7/1/01- 7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02- 04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

| | | | Payment Requested | | Payment Received | |
|---|---|---|---|---|---|---|
| July 2, 2002<br>D.I.2324 | 05/01/02 –<br>05/31/02 | $74,910.75 | $2,9154.43 (Stroock)<br>$43,190.69 (Chambers) | | $59,928.60 | $46,105.12 |
| August 5, 2002<br>D.I.2495 | 06/01/02 –<br>06/30/02 | $73,096.75 | $2,054.05 (Stroock)<br>$114,666.72 (Chambers) | | $58,477.4011 | $116,720.77 |
| September 20, 2002<br>D.I.2720 | 07/01/02 –<br>07/31/02 | $90,903.27 | $1,250.79 (Stroock)<br>$11,996.25 (Chambers) | | $72,722.61 | $13,274.04 |
| October 29, 2002<br>D.I.2898 | 08/01/02 –<br>08/31/02 | $93,151.25 | $11,539.51 (Stroock)<br>$5,046.70 (Chambers) | | $74,521.00 | $16,586.21 |
| November 14, 2002<br>D.I.2981 | 09/01/02 -<br>09/30/02 | $96,613.25 | $15,567.77 (Stroock)<br>$771.50 (Chambers) | | $77,290.60 | $16,339.27 |
| December 10, 2002<br>D.I.3129 | 10/1/02 –<br>10/31/02 | $68,404.00 | $2,956.54 (Stroock)<br>$1,780.75 (Chambers) | | $54,723.20 | $4,737.29 |
| January 28, 2003<br>D.I.3286 | 11/1/02 –<br>11/30/02 | $75,345.50 | $8,712.16 (Stroock) | | $60,276.40 | $8,712.16 |
| February 7, 2003<br>D.I.3349 | 12/1/02 –<br>12/31/02 | $27,683.50 | $13,332.14 (Stroock) | | $22,146.80 | $13,332.14 |
| March 26, 2003<br>D.I.3552 | 1/1/03 –<br>1/31/03 | $88,139.00 | $1,210.11 (Stroock) | | $70,511.20 | $1,210.11 |
| April 7, 2003<br>D.I.3626 | 2/1/03 –<br>2/28/03 | $76,313.00 | $2,022.78 (Stroock)<br>$1,077.80 (Chambers) | | $61,050.40 | $3,100.58 |
| April 29, 2003<br>D.I.3718 | 3/1/03 –<br>3/31/03 | $60,163.50 | $6,191.15 (Stroock) | | $48,130.80 | $6,191.15 |
| June 2, 2003<br>D.I. 3850 | 4/1/03 –<br>4/30/03 | $60,269.00 | $814.02 (Stroock)<br>$2,043.00 (Chambers) | | $48,215.20 | $2,857.02 |
| July 1, 2003<br>D.I. 3983 | 5/1/03 –<br>5/31/03 | $111,990.50 | $691.84 (Stroock)<br>$3,830.50 (Chambers) | | $89,592.40 | $10,522.34 |
| August 5, 2003<br>D.I. 4152 | 6/1/03 –<br>6/30/03 | $43,824.00 | $1,220.42 (Stroock)<br>$61,755.00 (Chambers) | | $35,059.20 | $62,975.42 |
| September 4, 2003<br>D.I. 4381 | 7/1/03 –<br>7/31/03 | $79,090.50 | $2,301.33 (Stroock)<br>$14,274.25 (Chambers) | | $63,272.40 | $16,575.58 |

| | | Payment Requested | | Payment Received | |
|---|---|---|---|---|---|
| September 30, 2003 D.I. 4512 | 8/1/03 – 8/31/03 | $69,927.00 | $1,164.19 (Stroock) $12,488.94 (Chambers) | $55,941.60 | $13,653.13 |
| October 29, 2003 D.I. 4625 | 9/1/03 – 9/30/03 | $69,409.50 | $1,076.94 (Stroock) $10,102.00 (Chambers) | $55,527.60 | $11,178.94 |
| December 19, 2002 D.I. 4843 | 10/1/03 – 10/31/03 | $96,980.50 | $3,800.45 (Stroock) $42,881.50 (Chambers) | $77,584.40 | $46,681.95 |
| January 23, 2003 D.I. 4976 | 11/1/03 – 11/30/03 | $66,428.50 | $1,225.38 (Stroock) $30,463.00 (Navigant f/k/a Chambers) | | |
| February 4, 2004 D.I. 5056 | 12/1/03 – 12/31/03 | $52,321.50 | $924.99 (Stroock) $27,005.00 (Navigant f/k/a Chambers) | | |

4

**Quarterly Fee Applications**

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| July 30, 2001 D.I.770 | 4/12/01-6/30/01 | $369,873.75 | $19,318.00 | $369,873.75 | $19,318.75 |
| November 1, 2002 D.I.1068 | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | $204,923.50 | $15,015.57 |
| February 8, 2002 D.I.1658 | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90 $9,918.43[*] | $329,842.00 | $21,880.90 (Stroock) $9,918.43 (Chambers) |
| May 16, 2002 D.I.2064 | 01/01/02 – 03/31/02 | $267,170.20 | $6,149.76 $36,352.60* | $266,865.70 | $6,144.85 (Stroock) $22,002.76 (Chambers) |
| August 16, 2002 D.I.2557 | 04/01/02 – 06/30/02 | $245,259.00 | $6,784.97 $167,629.78* | $245,259.00 | $6,784.97 (Stroock) $167,629.78 (Chambers |
| November 18, 2002 D.I.3045 | 07/01/02 – 09/30/02 | $280,471.77 | $28,358.07 $17,814.45* | $224,534.21[1] | $28,358.07 (Stroock)[1] $17,814,45 (Chambers)[1] |
| March 25, 2003 D.I.3549 | 10/01/02 – 12/31/03 | $171,108.00 | $25,000.84 $1,780.75* | $136,886.40[2] | $25,000.84 (Stroock)[2] $1,780.75 (Chambers)[2] |
| May 20, 2003 D.I. 3815 | 1/1/03 – 3/31/03 | $224,358.50 | $9,424.04 $1,077.80* | $224,615.50[3] | $9,424.04 (Stroock)[3] $1,077.80 (Chambers)[3] |
| August 29, 2003 D.I. 4357 | 4/1/03 – 6/30/03 | $215,903.50 | $2,726.23 $67,628.50* | $215,903.50[4] | $2,726.28 (Stroock)[4] $67,628.50 (Chambers)[4] |
| December 5, 2003 D.I. 4778 | 7/1/03 – 9/30/03 | $218,222.00 | $4,339.46 $36,865.19* | | |

[*] These amounts relate to the Committee's Asbestos Issues Expert.

[1] Court Order dated March 14, 2003 approved fees in the amount of $276,535.77 and expenses in the amount of $45,477.52.

[2] Court Order dated July 28, 2003 approved fees in the amount of $171,108.00 and expenses in the amount of $26,412.62.

[3] Court order dated September 22, 2003 approved fees in the amount of $224,033.50 and expenses in the amount of $10,410.22.

[4] Amended court order dated December 23, 2003 approved fees in the amount of $215,903.50 and expenses in the amount of $70,354.78.

5

**WR GRACE & CO**
**ATTACHMENT B**
**OCTOBER 1, 2003 - DECEMBER 31, 2003**

| | Hours | Rate | Amount | No. of Years In Position |
|---|---|---|---|---|
| **Partners** | | | | |
| Greenberg, Mayer | 12.1 | $550 | $   6,655.00 | 6 |
| Kruger, Lewis | 31.1 | 725 | 22,547.50 | 42 |
| Kulman, Bradley | 0.3 | 625 | 187.50 | 12 |
| Pasquale, Kenneth | 37.9 | 550 | 20,845.00 | 14 |
| Wintner, Mark | 4.9 | 625 | 3,062.50 | 32 |
| | | | | |
| **Associates** | | | | |
| Eichler, Mark | 1.5 | 440 | 660.00 | 5 |
| Gross, Jonathan E. | 6.0 | 255 | 1,530.00 | 2 |
| Healy, Francis C. | 42.1 | 205 | 8,630.50 | 1 |
| Krieger, Arlene | 231.8 | 495 | 114,741.00 | 20 |
| Sasson, Moshe | 47.5 | 445 | 21,137.50 | 10 |
| Taruschio Anna | 2.5 | 320 | 800.00 | 4 |
| Wildes, Denise | 0.2 | 495 | 99.00 | 14 |
| | | | | |
| **Paraprofessionals** | | | | |
| Calvo, Fernando | 2.9 | 180 | 522.00 | 3 |
| Caskadon, Alexandra | 57.5 | 180 | 10,350.00 | 2 |
| Defreitas, Vaughn | 37.8 | 115 | 4,347.00 | 16 |
| Mohamed, David | 4.9 | 115 | 563.50 | 15 |
| Peters, Angelina | 1.8 | 85 | 153.00 | 4 |
| | | | | |
| **Subtotal** | **522.8** | | **$ 216,831.00** | |
| **Less 50% Travel** | **(2.5)** | | **(1,112.50)** | |
| **Total** | **520.3** | | **$ 215,718.50** | |

**WR GRACE & CO**
**COMPENSATION BY PROJECT CATEGORY**
**OCTOBER 1, 2003 - DECEMBER 31, 2003**

| MATTER CODE | PROJECT CATEGORY | HOURS | TOTAL FEES |
|---|---|---|---|
| 0003 | Claim Analysis Objection, Resolution & Estimation (Asbestos) | 103.3 | $ 41,440.00 |
| 0013 | Business Operations | 15.7 | 8,016.50 |
| 0014 | Case Administration | 148.2 | 55,702.50 |
| 0015 | Claims Analysis/Objections/Administration (Non-Asbestos) | 3.4 | 1,494.00 |
| 0017 | Committee, Creditors', Noteholders', or Equity Holders' | 72.7 | 37,485.50 |
| 0018 | Fee Application, Applicant | 69.9 | 21,969.00 |
| 0020 | Fee Application, Others | 8.6 | 1,705.50 |
| 0021 | Employee Benefits, Pension | 3.9 | 2,437.50 |
| 0034 | Litigation and Litigation Consulting | 13.9 | 7,265.50 |
| 0035 | Travel - Non Working | 5.0 | 2,225.00 |
| 0037 | Hearings | 30.3 | 14,011.50 |
| 0040 | Employment Applications - Others | 25.5 | 10,901.50 |
| 0041 | Relief from Stay Proceedings | 0.4 | 198.00 |
| 0047 | Tax Issues | 22.0 | 11,979.00 |
| | | | |
| | **Subtotal** | **522.8** | **$ 216,831.00** |
| | **Less 50% Travel** | **(2.5)** | **(1,112.50)** |
| | **Total** | **520.3** | **$ 215,718.50** |

**WR GRACE & CO**
**DISBURSEMENT SUMMARY**
**OCTOBER 1, 2003 - DECEMBER 31, 2003**

| | |
|---|---:|
| Outside Messenger Service | $   151.71 |
| Meals | 122.82 |
| Local Transportation | 273.01 |
| Long Distance Telephone | 1,640.98 |
| Duplicating Costs-in House | 514.30 |
| Process Service & Calendar Watch | 382.27 |
| Postage | 8.86 |
| Lexis/Nexis | 467.45 |
| Facsimile Charges | 54.00 |
| Travel Expenses - Transportation | 12.00 |
| Westlaw | 2,167.42 |
| Word Processing - Logit | 156.00 |
| | |
| **TOTAL** | **$5,950.82** |

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W. R. GRACE & CO., et al.**[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

## ELEVENTH QUARTERLY FEE APPLICATION BY STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., et al, FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED <u>DURING THE PERIOD FROM OCTOBER 1, 2003 THROUGH DECEMBER 31, 2003</u>

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

accordance with the Administrative Fee Order (defined below) for interim allowance of

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc , MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents as follows:

## INTRODUCTION

1.    By this application, Stroock seeks (i) an interim allowance of compensation for the professional services rendered by Stroock as counsel for the Committee for the period from October 1, 2003 through December 31, 2003 (the "Compensation Period") in the aggregate amount of $215,718.50[2] representing 415.4[2] hours of professional services and 104.9[2] hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Stroock during the Compensation Period in connection with the rendition of such professional services and paraprofessional services in the aggregate amount of $5,950.82, as well as the fees and expenses of the asbestos issues expert employed by the Committee pursuant to the Court's June 22, 2001 Order Authorizing the Retention of Experts (the "Asbestos Issues Expert") in respect of services rendered in the months of October, November and December 2003 in the aggregate amount of $100,349.50.

2.    Venue of this proceeding and this application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

---

[2]    Amount reflects Stroock's voluntary reduction of $12.00 from the total compensation billed during the Compensation Period relating to 0.1 hours of paraprofessional services rendered by 1 paraprofessional, and a reduction of $1,112.50 from the total compensation billed relating to 5.0 hours of non-working travel time billed at 50% of the normal attorney fee rate.

2

Case 01-01139-AMC    Doc 5212    Filed 03/02/04    Page 11 of 35

## BACKGROUND

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code and have continued in the management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  Pursuant to an order of the Court, the Debtors' chapter 11 cases have been procedurally consolidated and are being jointly administered.

4.      The Debtors operate a world-wide specialty chemicals and materials business and employ approximately 3860 full and part-time employees.  On a consolidated basis, for the fiscal year 2000, Grace reported a net loss of $89.7 million[3] from $1.59 billion in net revenues.  The Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor subsidiaries and affiliates.

5.      On April 12, 2001, the United States Trustee formed the Committee.  During the first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter 11 cases.  The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP (n/k/a Duane Morris LLP) ("DM&H") as its local Delaware counsel.  During the Compensation Period, on December 3, 2003, a second amended notice of appointment of the Committee was filed by the United States Trustee.

---

[3]      The Debtors' pleadings further reported that this net loss resulted in part from a $294.0 million asbestos-related charge to earnings recorded in the fourth quarter of 2000.

3

SSL-DOCS1 1427519v2

6.      The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims and asbestos-related property damage claims against the Debtors (collectively, the "Asbestos Claim Committees"). On June 18, 2001, the United States Trustee appointed an official committee to represent the interests of equity security holders of the Debtors (the "Equity Committee").

7.      By application dated May 1, 2001, Stroock sought Court approval for its retention as counsel to the Committee nunc pro tunc to April 12, 2001. The Court signed an order approving Stroock's retention as counsel to the Committee on May 30, 2001.

8.      This is the eleventh quarterly interim application Stroock has filed with the Court for an allowance of compensation and reimbursement of expenses for services rendered to the Committee. This application is submitted pursuant to the terms of the Administrative Order Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, approved by the Court on May 3, 2001 as amended by order dated April 19, 2002 (collectively, the "Administrative Fee Order").

9.      In accordance with the procedures established by the Administrative Fee Order, Stroock had, at the time of filing of this application, received payment from the Debtors for 80% of the fees and 100% of Stroock's expenses requested, and not objected to, in the October 2003 fee statement encompassed within this Compensation Period. The Objection Periods for the November and December fee applications have expired with no objections having been filed. In addition, Stroock has received payment from the Debtors in the amount of $42,881.50,

4

representing the fees and expenses of Navigant Consulting, formerly known as Chambers

Associates, the Asbestos Issues Expert for the Committee, for the month of October 2003, but

has not received payment in respect of the fees and expenses of the Asbestos Issue Expert for the

months of November and December 2003.  Applicant has received no other payments and no

promises for payment from any source for services rendered in connection with these cases for

the months encompassing this Compensation Period other than as immediately set forth above.

There is no agreement or understanding between the Applicant and any other person (other than

members of Stroock) for the sharing of compensation to be received for the services rendered in

these cases.

10.     As stated in the Affidavit of Kenneth Pasquale, Esq. annexed hereto as Exhibit

"A," all of the services for which interim compensation is sought herein were rendered for and

on behalf of the Committee solely in connection with these cases.

## SUMMARY OF SERVICES RENDERED

11.     Since being retained by the Committee, Stroock has rendered professional

services to the Committee as requested and as necessary and appropriate in furtherance of the

interests of the unsecured creditors of the Debtors' estates.  The variety and complexity of these

cases and the need to act or respond on an expedited basis in furtherance of the Committee's

needs have required the expenditure of substantial time by personnel from several legal

disciplines, on an as-needed basis, including in certain instances, working into the evening and

on weekends.

12.     Stroock maintains written records of the time expended by attorneys and

paraprofessionals in the rendition of their professional services to the Committee.  Such time

records were made contemporaneously with the rendition of services by the person rendering

such services and in the ordinary course of Stroock's practice, and are presented in compliance

with Delaware Local Rule 2016-2(d) amended effective as of September 1, 2002. A compilation

showing the name of the attorney or paraprofessional, the date on which the services were

performed, a description of the services rendered, and the amount of time spent in performing the

services during the Compensation Period is annexed hereto as Exhibit "B". In addition, Exhibit

"C" hereto contains a summary of the hours expended by each of the attorneys and

paraprofessionals during the Compensation Period, their normal hourly rates, and the value of

their services.

13.     Stroock also maintains records of all actual and necessary out-of-pocket expenses

incurred in connection with the rendition of its professional services, all of which are also

available for inspection. A schedule of the categories of expenses and amounts for which

payment is requested is annexed hereto as Exhibit "D".

14.     Stroock respectfully submits that the professional services that it rendered on

behalf of the Committee were necessary and have directly benefited the creditor constituents

represented by the Committee and have contributed to the effective administration of these cases.

15.     The following summary of the services rendered during the Compensation Period

is not intended to be a detailed description of the work performed, as those day-to-day services

and the time expended in performing such services are fully set forth in Exhibit "B". Rather, it is

merely an attempt to highlight certain of these areas in which services were rendered to the

6

Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

## Claim Analysis, Objection & Resolution (Asbestos) -- Category 0003

16.     As previously reported, a primary topic of several extended hearings before Judge Fitzgerald during prior compensation periods, was the issue of how the Zonolite Attic Insulation (the "ZAI") claims could and should be determined by the Court. In the course of these hearings, Judge Fitzgerald concluded that there should be a limited trial to determine whether there is scientific evidence that ZAI poses an unreasonable risk of harm before other issues are considered, including issues in respect of class certification, and bar date processes and notices. In connection with the conduct of the science trial, the parties discussed, among other issues, how to get the ZAI claims before the Court, the choice of counsel to represent the ZAI claimants, the budget for the science trial litigation, and the scope of the litigation. The Court has issued orders in connection with these issues (i) providing for the asbestos property damage committee's (the "PD Committee") retention of special counsel to represent the ZAI claimants, (ii) establishing a litigation schedule, and (iii) establishing procedures for the ZAI science trial.

17.     The litigation schedule provided for Rule 42 consolidation motions together with any related Daubert/summary judgment motions to be filed no later than July 7, 2003 and responsive pleadings and replies to be filed no later than August 8, 2003 and August 18, 2003, respectively, and argument to be had on these and other pre-trial matters before the Court in September 2003.

18.     On or prior to the filing deadlines established by the Court, lengthy summary judgment motions and legal memoranda in support thereof were filed by the Debtors and by the

7

ZAI claimants, in addition to other pre-trial motions including the Debtors' motion in limine to exclude evidence of any alleged damages from ZAI, and the ZAI Claimants' motion to exclude one of the Debtors' expert's opinion on cleavage fragments, as well as were lengthy responsive pleadings and reply briefs by the parties.

19.     During the Compensation Period, Stroock completed its preparation of two extensive memoranda for the Committee detailing the legal arguments asserted therein.

20.     In addition to moving forward with pre-trial matters in respect of the science trial, during the prior compensation period, the ZAI-related issues also began to go through a mediation process.  From time to time throughout the Compensation Period, Stroock engaged Debtors' special litigation counsel with respect to the status of the litigation and the on-going mediation efforts and continued to keep the Committee apprised of the status thereof.

21.     In addition, in prior quarterly compensation applications, Stroock reported that articles had began to appear with respect to the efforts and proposals being made by certain members of Congress to enact new legislation to globally address asbestos-related claims and lawsuits asserted against businesses both within, and outside of, bankruptcy.  During the prior compensation period, numerous articles were published and Navigant Consulting (formerly Chambers Associates) prepared numerous memoranda discussing the legislation, various proposals amending the draft bill, and addressing those aspects of the legislation which are still the subject of disparate viewpoints. During the Compensation Period, Congressional activity with respect to the formulation of asbestos reform legislation continued with members of the

8

Senate making efforts to reach acceptable compromises on key aspects of the pending legislation on which substantial disagreement existed among interested groups.

22.     During this Compensation Period, Navigant Consulting prepared numerous memoranda discussing the on-going meetings and negotiations and their results, and the reported prospects for passage of the legislation before the December 2003 Congressional recess, and forwarded other materials. Stroock reviewed each of these reports and memoranda, as well as related articles which it found, given that these are areas of direct relevance to these chapter 11 cases, and forwarded memoranda to the Committee on the asbestos-reform legislation.

23.     As previously reported in the prior quarterly application, Debtors' counsel began to discuss with Stroock the Debtors' selection of a proposed legal representative for future asbestos claimants. During the beginning of the Compensation Period, the Debtors filed their motion seeking to retain C. Judson Hamlin ("Hamlin") as the legal representative for future asbestos claimants in these chapter 11 cases. The Hamlin appointment motion was filed days after two creditors ("OC Creditors") in the Owens Corning chapter 11 cases filed a motion seeking to have Judge Wolin recused from further participating in those cases (the "OC Recusal Motion"). In support of their Recusal Motion, the OC Creditors pointed to material conflicts they saw in the conduct of Hamlin and David Gross in acting as consultants and advisors to the Court in the Owens Corning cases, while being partisan advocates on many of the very same issues on behalf of the interests of future asbestos claimholders in another pending chapter 11 case, G-1 Holdings, Inc.

9

24.    Stroock obtained pleadings in the G-1 Holdings cases and in other cases in which Hamlin had been appointed as a future claims representative, and in which Gross had been retained as Hamlin's counsel. Stroock reviewed all relevant pleadings, communicated information to the Committee on the issues raised by the Debtors' proposed appointment of Hamlin in these chapter 11 cases, and the issues raised in the OC Recusal Motion and, as reflected in the services Stroock rendered in matter Category – 0017 Creditors' Committee, discussed such matters with the Committee.

25.    After the Committee determined to oppose the Debtors' proposed appointment of Hamlin, Stroock prepared an objection to the Debtors' motion reflecting the Committee's position on this matter. Stroock also reviewed each of the other filings made in these cases in response to the Debtors' motion including, the objections filed by the United States Trustee and an ad hoc group of Grace bank debt holders, and the asbestos property damage committee's response, and discussed the same with the Committee.

26.    After Judge Fitzgerald denied the Debtors' motion seeking to suspend consideration of the Hamlin appointment motion until the matters raised by the OC Recusal Motion and the subsequent mandamus petition to the Third Circuit filed by the OC Creditors (the "Mandamus Petition") were determined, and the Debtors withdrew the Hamlin appointment motion, the Debtors began to suggest another person for consideration as futures representative. While this category contains some of the services rendered by Stroock during the Compensation Period in connection with reviewing the legal and factual issues raised by the OC Recusal Motion and the Mandamus Petition, and their impact on these chapter 11 cases, additional

10

services in respect of these and other related pleadings, orders and hearings are included in other matter categories.

27.    In addition, during the Compensation Period, Stroock met with the Committee's asbestos issues expert to discuss asbestos claims and the asbestos-related claims testimony given during the contested confirmation hearing in the Armstrong World Industries, Inc. chapter 11 cases, in which issues directly related to those in the Grace cases were raised. Stroock has expended 103.3 hours on this category for a fee of $41,440.00.

### Business Operations -- Category 0013

28.    During the Compensation Period, the Debtors filed a motion seeking approval of an agreement to employ an individual as the proposed president and new chief operating officer of Grace. Stroock reviewed the Debtors' motion, discussed the proposed terms of employment with FTI Consulting, and reviewed a memorandum prepared by FTI setting forth the key economic terms of the proposed employment agreement and analysis of the proposed compensation package.

29.    During the very end of the Compensation Period, the Debtors filed a motion seeking authorization to restructure their stock interests in and loans to certain of their foreign subsidiaries, which would result in, among other things, the repatriation of cash from certain foreign subsidiaries, and the creation of new foreign holding companies. Prior to the close of the Compensation Period, Stroock began to review this matter, discussed the same with FTI Consulting and together with FTI began to prepare a request for additional information and documentation from the Company and its financial advisor in order to fully evaluate the motion.

11

30.    In addition during the Compensation Period, Stroock reviewed the Company's third quarter 2003 operating results and FTI Consulting's draft report to the Committee thereon, and discussed with FTI the Debtors' cash position, business performance and projections for the year.   Stroock has expended 15.7 hours on this category for a fee of $8,016.50.

## Case Administration -- Category 0014

31.    As reported in prior monthly compensation applications, towards the end of the November 2001 compensation period, Stroock was informed that these chapter 11 cases were being reassigned to District Court Judge Alfred Wolin.  A number of orders were issued during the month of December 2001 relating to the reassignment of these cases to Judge Wolin and the reference of these cases to Judge Judith Fitzgerald.

32.    During the Compensation Period, Stroock continued to closely monitor the items on the Court's general chapter 11 docket for these cases, as well as those dockets relating to each of the adversary proceedings pending in these chapter 11 cases, to ensure that the Committee was fully informed about all pending motions and adversary proceedings and that Stroock would be ready to timely respond on behalf of the Committee, as might be applicable.  Stroock continued to engage Debtors' counsel and FTI Consulting on an on-going basis with respect to pending matters and information requests, reviewed agenda letters prepared for Judge Fitzgerald during the Compensation Period in respect of the hearings held each month during the period, reviewed transcripts from hearings already held before the Court, if relevant to the matters currently pending, and responded to inquiries from unsecured creditors with respect to the status of these cases generally, claims filed in respect of the March 31, 2003 bar date established for non-

12

asbestos, general unsecured claims in these cases and the process for the Debtors' objections thereto, and the conduct of the ZAI science trial litigation.

33.     In addition, during this Compensation Period, as already reported in this Application, a motion to recuse Judge Wolin from further participation in the Owens Corning cases was filed by two creditors in those cases, based in part on alleged conflicts held by C. Judson Hamlin and David Gross in acting as advisors and consultants to Judge Wolin in the Owens Corning cases while acting as partisan advocates in another pending asbestos-related chapter 11 case. The OC Recusal Motion was quickly followed by the OC Creditors' discovery requests and subpoena's against Grace, among others, orders issued by Judge Wolin, which among other matters, withdraw the reference on these matters and stayed further proceedings before him in the Owens Corning Cases, the Grace cases and the three other chapter 11 cases pending before him, the filing by the OC Creditors of the Mandamus Petition to the Third Circuit Court of Appeals, the issuance of several orders by the Third Circuit, and the filing by an ad hoc group of bank debt creditors in the Grace chapter 11 cases (the "Ad Hoc Grace Creditors") of a motion to have Judge Wolin recused from further proceedings in these Grace chapter 11 cases and subsequently, of a mandamus petition to the Third Circuit. (These and all other related motions, petitions, briefs, replies, orders and hearings are hereinafter referred to in this Application collectively as the "Recusal Proceedings").

34.     Given the obvious impact of these matters on to these chapter 11 cases, Stroock rendered substantial services to the Committee during the Compensation Period in respect of reviewing and communicating with the Committee with respect to the numerous motions, briefs, petitions and responses filed by the parties in the various stages of the Recusal Proceedings, the

13

orders issued by Judge Wolin and the Third Circuit, the hearings held and arguments asserted. In addition, Stroock rendered services towards the very end of the Compensation Period in connection with the Court-directed document production and discovery related to the Recusal Proceedings. Stroock has expended 148.2 hours on this category for a fee of $55,702.50.

### Claims Analyses, Objection and Resolution (Non-Asbestos) -- Category 0015

35.     During the Compensation Period, Stroock reviewed the Debtors' proposed settlement of (i) intellectual property litigation involving Grace affiliates in Italy, (ii) litigation commenced by Tubal-Cain Industries, Inc. against Grace in 2003, and Debtors' motion seeking to settle non-asbestos property damage insurance-coverage related matters with the KWELMB Companies (iii) and communicated with Debtors' counsel the Committee's outstanding questions in connection with these settlements. Stroock has expended 3.4 hours on this category for a fee of $1,494.00.

### Committee, Creditors' Noteholders' or Equity Holders' -- Category 0017

36.     During the Compensation Period, Stroock communicated with the members of the full Committee through numerous memoranda and telephone conversations, including a number of conference call meetings of the Committee. In order to keep the Committee fully informed of all of the pending matters in these cases, and thus enable the Committee to take informed positions on issues, Stroock thoroughly reviewed and summarized the motions filed by the Debtors and other parties in interest in these cases, raised issues the Committee should be aware of, and made recommendations to the Committee concerning appropriate actions to be taken with regard to the motions, communicated with members of the Committee regarding the positions to be taken, engaged counsel for the Debtors, and other parties and movants, as applicable, with the

14

Committee's questions and concerns, and negotiated whenever and to the extent possible consensual resolutions of outstanding issues and acceptable forms of proposed orders and stipulations.

37.     The motions, agreements, and other materials Stroock reviewed during the Compensation Period, prepared memoranda to the Committee on and discussed with the Committee, as applicable, included, among other matters, (i) the motion filed by the Debtors seeking approval for their proposed employment agreement with the prospective president and chief operating officer for the Company; (ii) Debtors' motion for authority to retain a firm to provide Sarbanes-Oxley Act compliance-related consultancy and advisory services for the company, (iii) the motion filed by the Debtors seeking approval for a settlement agreement with the KWELMB Companies, (iv) the motion filed by the Debtors seeking approval for a corporate tax claim-related settlement with the Commonwealth of Massachusetts, (v) the motion filed by the Debtors seeking to have C. Judson Hamlin appointed the legal representative for future asbestos claimants in these cases, and (vi) the numerous pleadings, orders and related materials in respect of the Recusal Proceedings.

38.     In addition, throughout the Compensation Period, Stroock continued to keep the Committee informed with respect to pleadings filed in, and decisions issued by, this and other Courts, in respect of other asbestos-related chapter 11 cases, aside from the Recusal Proceedings, and with respect to articles and reports in respect of the legislative attempts to address the resolution of asbestos claims on a national basis, all of which have particular relevance to these cases.

39.     Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions and express the Committee's views regarding the issues which have arisen in these cases. Stroock has expended 72.7 hours on this category for a fee of $37,485.50.

### Fee Application, Applicant -- Category 0018

40.     During the Compensation Period, Stroock prepared its fee statements for the months of September 2003, October 2003, and November 2003 and related notices and certifications of no objection. Stroock also prepared its Tenth Quarterly Fee Application covering the period from July 1, 2003 through September 30, 2003 (the "Prior Compensation Application"), including a narrative section summarizing the services rendered during that period by Stroock and numerous fee and expense schedules, as required by the Administrative Fee Order entered by the Court. Stroock has expended 69.9 hours on this category for a fee of $21,969.00.

### Fee Application, Others -- Category 0020

41.     During the Compensation Period, Stroock reviewed and discussed with FTI Consulting such professional's tenth quarterly fee application and its September 2003, October 2003 and November 2003 fee statements. Stroock has expended 8.6 hours on this category for a fee of $1,705.50.

### Employee/Benefits Pension -- Category 0021

42.     As reported in prior compensation applications, Stroock rendered services on behalf of the Committee in connection with the Debtors' motion seeking authorization to appoint State Street Bank and Trust Company as investment manager and fiduciary for the shares of

Grace common stock held in the Company's 401(K) plan for employees.  Stroock had reviewed

and then discussed the motion with the Committee, discussed the terms of the engagement and

related matters with the Debtors' representatives, and prepared and filed an objection to the

motion on behalf of the Committee.

43.    Although this matter was scheduled to be heard by the Court during the omnibus

hearings in September 2003, the Debtors revised the motion and adjourned the hearing.  During

the Compensation Period, Stroock reviewed the revised pleading, engaged Debtors' counsel in

discussions to further try to resolve the Committee's objection, and when that failed, prepared for

and argued the Committee's concerns to the Court.  Stroock has expended 3.9 hours on this

category for a fee of $2,437.50.

## Litigation and Litigation Consulting -- Category 0034

44.    As reported in prior quarterly compensation applications, the parties had reported

a tentative settlement of the fraudulent transfer litigation with Sealed Air Corporation and with

Fresenius Medical Care Holdings Inc.  Further, such prior applications reported that while a

definitive settlement agreement had been prepared and approved by the Court with respect to

Fresenius, the parties had not yet prepared and circulated a final form of settlement agreement

with respect to the tentative agreement with Sealed Air.

45.    During the Compensation Period, a motion seeking approval for the proposed

final form of settlement agreement with Sealed Air was filed with the Court jointly by the

asbestos committees and Sealed Air.  Stroock began to review the pleadings and discussed the

agreement with Debtors' counsel.  Stroock has expended 13.9 hours on this category for a fee of

$7,265.50.

17

### Travel-Non-Working – Category 0035

46.      Stroock has expended 5.0 hours on this category for a fee of $2,225,00 and, in accordance with Delaware Local Rule 2016-2(d)(viii) is requesting compensation of 50% of the normal hourly rates, or $1,112.50.

### Hearings -- Category 0037

47.      During the Compensation Period, Judge Fitzgerald held three hearings during which the Court considered, among other matters, the Debtors' revised motion seeking to retain State Street Bank and Trust Company as investment manager and fiduciary for the stock held in the W.R. Grace Employee Savings Plan, which the Committee opposed, the Debtors' motion to hold in abeyance their pending motion to appoint Hamlin as legal representative for future claimants in these cases, and the motion by a creditor for authority to file a late proof of claim. Stroock reviewed all relevant pleadings and documentation in advance of the hearings, and in connection with the State Street motion prepared to argue the Committee's position before the Court.  Stroock expended 30.3 hours on this category for a fee of $14,011.50.

### Employment Applications – Others – Category 0040

48.      As reflected in other portions of this Application, the Debtors' filed a motion seeking to retain an entity to act as consultant and advisor to the Company with respect to its compliance with the Sarbanes-Oxley Act.  Stroock reviewed the terms of the proposed retention, and discussed the terms, the bases and the need for the retention with Debtors' counsel and with FTI.

49.      In addition, certain of the services Stroock rendered during the Compensation Period in connection with the State Street motion discussed in the Employee/Benefits Pension

18

Category of this Application are included within this matter category. These services include researching certain legal issues, discussing with counsel for the Equity Committee, which had also objected to the State Street motion, the October 2003 hearing on this matter, and a compromise proposal to discuss with the Debtors and argue to the Court at the November 2003 continued hearing on such matter. Stroock expended 25.5 hours on this category for a fee of $10,901.50.

### Relief from Stay Proceedings -- Category 0041

50.     During the Compensation Period, Stroock reviewed the lift stay motion filed by Old Castle APG Northeast, Inc. and communicated with Debtors' counsel with respect to the motion. Stroock expended 0.4 hours on this category for a fee of $198.00.

### Tax Issues -- Category 0047

51.     The services rendered in this category during the Compensation Period related to completing its review from a tax perspective of the Debtors' motion seeking to settle an audit with New York State, and the Debtors' motion seeking authorization to make payments to the Florida Department of Revenue, and related materials, and discussing these matters with Debtors' in-house tax personnel. In addition, during the Compensation Period, Stroock and FTI met to discuss a number of open tax issues, and together began to analyze the Debtors' motion to restructure certain foreign subsidiaries. Stroock expended 22.0 hours on this category for a fee of $11,979.00.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

52.     The factors to be considered in awarding attorneys fees have been enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547

19

F.2d 573, <u>cert. denied</u>, 431 U.S. 904; these standards have been adopted by most courts. Stroock respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

The Time and Labor Required. The professional services rendered by Stroock on behalf of the Committee have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the complex issues encountered by the Committee with skill and dispatch. Occasionally, Stroock has been required to perform these services under significant time constraints requiring work late into the evening and on weekends. The services rendered by Stroock were performed efficiently, effectively and economically.

The Novelty and Difficulty of Questions. Novel and complex issues have already arisen in the course of these Chapter 11 cases, and it can be anticipated that other such issues will be encountered. In this case, as in many others in which the firm is involved, Stroock's effective advocacy and creative approach have helped clarify and resolve such issues and will continue to prove beneficial.

The Skill Requisite to Perform the Legal Services Properly. Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in

20

other areas of Stroock's practice, and its creative approach to the

resolution of issues, are and will continue to contribute to the

maximization of the distributions to the Debtors' unsecured creditors.

The Preclusion of Other Employment by Applicant Due to Acceptance of

the Case. Due to the size of Stroock's insolvency department, Stroock's

representation of the Committee has not precluded its acceptance of new

clients. However, the volume of the matters needing attention on a

continuing basis has required several of the attorneys to commit

significant portions of their time to these cases.

The Customary Fee. The fee sought herein is based upon Stroock's

normal hourly rates for services of this kind. Stroock respectfully submits

that the fee sought herein is not unusual given the magnitude and

complexity of these cases and the time expended in attending to the

representation of the Committee, and is commensurate with fees Stroock

has been awarded in other cases, as well as with fees charged by other

attorneys of comparable experience.

Whether the Fee is Fixed or Contingent. Pursuant to §§ 330 and 331 of

the Bankruptcy Code, all fees sought by professionals employed under

§ 1103 of the Code are contingent pending final approval by this Court,

and are subject to adjustment dependent upon the services rendered and

the results obtained.

Time Limitations Imposed by Client or Other Circumstances. As already indicated, Stroock has attended to the various issues arising in these cases. Occasionally, Stroock has had to perform those services under significant time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

The Amount Involved and Results Obtained. Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

The Experience, Reputation and Ability of the Attorneys. Stroock has one of the largest and most sophisticated insolvency practices in the nation and has played a major role in numerous cases of national import including: Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation, Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The Charter Company, Federated Department Stores, G. Heileman Brewing Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc., Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation, Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc., Flushing Hospital and Medical Center, Planet Hollywood International, Anchor Glass Container Corporation, Beloit Corporation in the

22

Harnischfeger Industries Chapter 11 Cases, RSL COM U.S.A. Inc, USG Corporation, Formica Corp. Galey & Lord, Inc. and DESA Holdings. Stroock's experience enables it to perform the services described herein competently and expeditiously. In addition to its expertise in the area of corporate reorganization, Stroock has already frequently called upon the expertise of its partners and associates in the litigation, ERISA, tax and environmental law areas to perform the wide ranging scope of the legal work necessitated by these cases.

The "Undesirability" of the Case. These cases are not undesirable, but as already indicated, have required a significant commitment of time from several of the attorneys assigned hereto.

Nature and Length of Professional Relationship. As described above, Stroock has been actively rendering services on behalf of the Committee as necessary and appropriate from April 12, 2001 through to the present.

## ALLOWANCE OF COMPENSATION

53.     The professional services rendered by Stroock required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole and the Debtors' estates.

23

54.     With respect to the level of compensation, § 330 of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person (including attorneys for a creditors' committee): "Reasonable compensation for actual necessary services rendered by [such] . . . professional person. 11 U.S.C. § 330. Section 330 further states that the court should take into consideration, inter alia, the nature, extent, and value of services performed, as well as the cost of comparable services other than in a case under this title. Id. The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

55.     The total time spent by Stroock attorneys and paraprofessionals during the Compensation Period for which Stroock seeks payment was 520.3 hours. Such services have a fair market value of $215,718.50. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

56.     As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit "C" are summaries of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

57.     In addition, Stroock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $5,950.82 for which Stroock respectfully requests reimbursement in full.

58.     The disbursements and expenses have been incurred in accordance with Stroock's normal practice of charging clients for expenses clearly related to and required by particular matters. Such expenses were often incurred to enable Stroock to devote time beyond normal office hours to matters, which imposed extraordinary time demands. Stroock has endeavored to minimize these expenses to the fullest extent possible.

59.     Stroock's billing rates do not include charges for photocopying, telephone and telecopier toll charges, computerized research, travel expenses, "working meals", secretarial overtime, postage and certain other office services, because the needs of each client for such services differ. Stroock believes that it is fairest to charge each client only for the services actually used in performing services for it. Stroock has endeavored to minimize these expenses to the fullest extent possible.

60.     Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions. Stroock does not charge for incoming facsimiles.

61.     Further, in accordance with the Court's June 22, 2001 Order Authorizing the Retention of Experts, this Application seeks payment for the fees and expenses of Navigant Consulting, the asbestos issues expert engaged by the Committee, for the months of October 2003, November 2003 and December 2003 in the aggregate amount of $100,349.50. No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

62.     Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

63.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period other than as set forth herein.

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order and the Court's June 22, 2001 Order Authorizing the Retention of Experts:

the allowance of compensation for professional services rendered to the Committee during the period from October 1, 2003 through and including December 31, 2003 in the amount of $215,718.50;

the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from October 1, 2003 through and including December 31, 2003 in the amount of $5,950.82;

the payment of the fees and expenses of the asbestos issues expert employed by the Committee for the months of October 2003, November 2003 and December 2003 in the aggregate amount of $100,349.50;

authorizing and directing the Debtors to pay to Stroock each of the amounts set forth in (a) (b) and (c) of this WHEREFORE clause (to the extent not already paid pursuant to the Administrative Fee Order); and

granting such other and further relief as this Court may deem just and proper.

26

Dated: New York, New York
March 2, 2004

STROOCK & STROOCK & LAVAN LLP

Kenneth Pasquale
A Member of the Firm
180 Maiden Lane
New York, New York 10038-4982
(212) 806-5400

Co-Counsel for the Official Committee of
Unsecured Creditors of W. R. Grace & Co., et al.

27