IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Related Docket No. 5027** |
| | ) | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL
INJURY CLAIMANTS TO THE DEBTORS' SIXTH MOTION FOR AN ORDER
PURSUANT TO 11 U.S.C. §1121(d) EXTENDING DEBTORS' EXCLUSIVE
PERIODS IN WHICH TO FILE A CHAPTER 11 PLAN AND TO SOLICIT
VOTES THEREON [Related Docket No. 5027]**

The Official Committee of Asbestos Personal Injury Claimants (the "P. I.

Committee"), by and through its undersigned counsel, respectfully submits its objection

to the motion of W. R. Grace & Co. ("Debtors") for the entry of an order pursuant to 11

U.S.C. §1121(d) extending the exclusive periods during which the Debtors have the

exclusive right to file a Chapter 11 plan and solicit acceptances thereto (the "Motion").

In support of its objection, the P. I. Committee states as follows:

**INTRODUCTION**

1.      On January 16, 2004, nearly three (3) years after the Debtors

commenced these proceedings, the Debtors filed their sixth motion to extend the

periods within which the Debtors have the exclusive right to file a plan of

reorganization and solicit acceptances thereto.

{D0019186:1 }

1

2.      The Debtors' request must be denied as the Debtors have failed to demonstrate that any cause exists for the extension of exclusivity and, furthermore, the Debtors have failed to make any progress towards a successful reorganization.

3.      The Debtors were given the opportunity, when this Court granted their fifth motion to extend exclusivity, to progress towards a plan of reorganization.  As this Court noted at the omnibus hearing on February 23, 2004, the Debtors have failed to make any such progress.  *See*, Transcript of Hearing of February 2, 2004, *In re W.R. Grace & Co. Inc.,* Case No. 01-11139 (JKF), Tr.__, annexed as Exhibit B. [1]

4.      Given these facts, the Debtors' latest attempt to delay the resolution of this case must be denied.

### BACKGROUND

5.      On April 2, 2001 (the "Petition Date"), the Debtors commenced the instant proceedings by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Clerk of this Court.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  On the Petition Date, the Court entered an order authorizing the joint administration of these cases for procedural purposes.

6.      No trustee or examiner has been appointed in these cases.  On April 12, 2001, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the P.I. Committee, the Official Committee of Asbestos Property Damage Claimants (the

---

[1] The transcript from the W.R. Grace & Co. omnibus hearing on February 23, 2004 is not yet available.  This opposition will be supplemented with the relevant transcript pages as soon as it is available.  The transcript of February 23, 2004 will be Exhibit B.

"P.D. Committee") and the Official Committee of Unsecured Creditors (the "General Creditors' Committee").  On June 18, 2001, the U.S. Trustee appointed the Official Committee of Equity Security Holders (the "Equity Committee," and collectively with the P.I. Committee, the P.D. Committee, and the General Creditors Committee, the "Committees").

7.    Prior to the instant request for extension of the exclusivity periods, Debtors requested, and were granted, five (5) extensions of the exclusivity periods.  Thus far the exclusivity periods have been extended for approximately two years.

8.    The Motion requests, as did the previous five (5) motions, an additional six (6) month extension, bringing the total extensions to approximately two and a half years.

## OBJECTION

9.    Section 1121(d) of the Bankruptcy Code provides that the Court may reduce or increase the 120-day or 180-day exclusive periods for a debtor to file and solicit acceptances of its reorganization plan if "cause" exists.  Debtors, in this instance, allege sufficient "cause" exists to extend the exclusivity period for an additional six months, bringing the total extension to approximately two and a half years.  In seeking the extension, Debtors seek to retain total control over the plan process, unencumbered by any input from, and without any regard to, the interest of its creditors.  Such a result is improper under Section 1121(d).

10.    Requests to extend or reduce a period of exclusivity should "be granted neither routinely nor cavalierly."  *In re Lehigh Valley Professional Sports Club, Inc.,* 2000 WL 290187, at *3 (Bankr. E.D. Pa. 2000); *Matter of All Seasons Indus. Inc.,* 121 B.R. 1002, 1003 (Bankr. N.D. Ind. 1990); *In re Curry Corp.,* 148 B.R. 754, 756 (Bankr.

S.D.N.Y. 1992) ("The court will not routinely extend the exclusivity period absent a showing of 'cause' when creditors object to such requests for extensions"); *In re Pine Run Trust Inc.,* 67 B.R. 432, 434 (Bankr. E.D.Pa. 1986) ("Furthermore, both the language and the purpose of this section require that an extension not be granted routinely"); *In re Nicolet, Inc.,* 80 B.R. 733, 740-741 (Bankr. E.D. Pa. 1988).

11.    In enacting Section 1121(d), Congress explicitly sought to achieve two goals: (1) grant the debtor a reasonable time to confirm a plan without the threat of a competing plan; and (2) at the same time, ensure that a debtor would not use Chapter 11 as a mechanism through which to operate indefinitely without attempting to reorganize.  *See In re Clamp-All Corp.,* 23 B.R. 198, 207 (Bankr. D. Mass. 1999) *citing Matter of Mother Hubbard, Inc.,* 152 B.R. 189, 195 (Bankr. W.D. Mich. 1993); *In re River Bend-Oxford Assocs.,* 114 B.R. 111, 114 (Bankr. D. Md. 1990); *In re Geriatrics Nursing Home, Inc.,* 187 B.R. 128, 131-132 (D.N.J. 1995).

12.    Legislative history reveals Section 1121(d) is an attempt to create a balance between the rights of debtors and creditors by allowing debtors sufficient time to negotiate a settlement, while at the same time avoiding undue delay for creditors. H. R. Rep. No. 595, 95th Cong., 1st Sess. 231-32 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6190-92.

13.    Long and numerous extensions of the exclusivity period upset that balance and should not be encouraged. *In re Timbers of Inwood Forest Assoc.,* 808 F.2d 363, 372 (5th Cir. 1987), *aff'd*, 484 U.S. 365 (1988).

14.    This court should not extend Debtors' exclusivity periods and thereby allow Debtors to retain control over the plan process, while throughout the course of their first five extensions, Debtors failed to either propose, or even attempt to negotiate, a plan.

The Debtors asserted that a "meaningful opportunity" was needed to negotiate a consensual plan. *See*, Transcript of Hearing of August 25, 2003, *In re W.R. Grace & Co. , Inc.,* Case No. 01-11139 (JKF), Tr. 15, annexed as Exhibit A. This Court has granted this opportunity five times, yet the Debtors are not any farther along despite this benefit.

15. After this Court granted the Debtors' fifth motion to extend exclusivity, it ordered the parties to confer. *See*, Transcript of Hearing of August 25, 2003, *In re W.R. Grace & Co. , Inc.,* Case No. 01-11139 (JKF), Tr. 24-25, annexed as Exhibit A. On September 5, 2003, the Debtors and the P.I. Committee conferred, as ordered by the Court. The proposal made by the Debtors could not be regarded as a serious attempt to reach a consensual plan.

16. Although the Debtors assert in their Motion that they are working "diligently" with other constituencies, clearly they are not working with the P.I. Committee. See, Debtors' Motion, pg. 4.

### a. Good Cause Does Not Exist to Allow an Extension of the Exclusive Periods

17. The burden is on the party seeking an extension of the exclusive periods to file a plan and solicit acceptances thereof to demonstrate the existence of good cause warranting the extensions. *Matter of Newark Airport/Hotel LP*, 156 B.R. 444, 451 (Bankr. D.N.J.) *aff'd* 155 B.R. 93 (D.N.J. 1993). The Debtors have failed to meet this burden.

18. Cause for extension of a debtor's exclusive periods does not exist where the debtor had made no showing that it can successfully reorganize if the exclusive periods are extended. *Matter of American Fed'n of Television and Radio Artists*, 30 B.R. 772, 774 (Bankr. S.D.N.Y. 1983). *See Curry Corp.,* 148 B.R. at 756 (denying an extension where "[t]he debtor has not even demonstrated that a plan of reorganization might be

forthcoming"); *Southwest Oil Co. of Jourdanton,* 84 B.R. 488, 451 (Bankr. W.D. Tex.

1987); *Pine Run Trust*, 67 B.R. at 435.  Some promise of probable success in formulating a

plan of reorganization is an element of cause for an extension of the exclusive periods. *Id.*;

*Matter of Newark Airport/Hotel LP*, 156 B.R. 444, 451 (Bankr. D.N.J.) *aff'd* 155 B.R. 93

(D.N.J. 1993).

19.    The size and complexity alone do not provide cause for extension of the

exclusivity periods.  *In re Public Service Co. of New Hampshire*, 88 B.R. 521, 537 (Bankr.

D.N.H. 1988); *Curry Corp.,* 148 B.R. at 755; *In re Sharon Steel Corp.*, 78 B.R. 762

(Bankr. W.D. Pa. 1987).  If size and complexity alone were sufficient to find cause then

debtors in complex cases would have an unlimited right to exclusivity; Section 1121(d)

would be rendered meaningless in complex cases.  The Debtors herein assert that this case

is complex, and as such exclusivity must be granted.  In arguing such, the Debtors ignore

that all asbestos bankruptcy cases have a level of complexity.

20.    Section 1121(d)'s "for cause" language requires the presence of factors in

addition to timing, size, and complexity that are specific to the particular debtor and its

reorganization to justify an extension of exclusivity.  *Public Service,* 88 B.R. at 537.

Included among these factors are the following: (1) the likelihood of an imminent

consensual plan if the debtor retains control; (2) no alternate substantial plan being held off

by exclusivity; (3) and the general balancing analysis to avoid allowing the debtor to hold

the creditors and other parties in interest "hostage" so that the debtor can force its view of

an appropriate plan upon the other parties.  *Id.*  The Debtors clearly do no meet these

factors, as there is little likelihood of a consensual plan and there are other parties who are

willing and able to file a plan.

{D0019186:1 }                                    6

### b.  Debtors Have Failed to Demonstrate Progress in Formulating a Plan

21.    In virtually every case where an extension has been granted, the debtor has

shown substantial progress in formulating a plan during the first 120 days.  *Southwest Oil*

*Co.,* 84 B.R. at 451.

22.    Extensions should be denied where no progress has been made towards

formulating a plan.  *See Matter of American Fed'n of Television and Radio Artists*, 30 B.R.

772 (Bankr. S.D.N.Y. 1983); *In re Sharon Steel Corp.*, 78 B.R. 762 (Bankr. W.D. Pa.

1987).

23.    The Debtors have not offered any evidence of progress towards filing a

plan.  At the hearing on Debtors' Fifth Motion to Extend the Exclusive Periods, the

Debtors stated that they are making progress with the various constituents and that the

parties continue to talk.  *See*, Transcript of Hearing of August 25, 2003, *In re W.R. Grace*

*& Co.  Inc.,* Case No. 01-11139 (JKF), Tr. 14, annexed as Exhibit A.  The P.I. Committee

informed the Court that such an assertion was not accurate as to the P.I. Committee, as

there was no progress.  *See*, Transcript of Hearing of August 25, 2003, *In re W.R. Grace &*

*Co.  Inc.,* Case No. 01-11139 (JKF), Tr. 18, annexed as Exhibit A.  Moreover, the Debtors'

contention in their Motion that the parties have continued to talk, again, cannot possibly

refer to the P.I. Committee, as the Debtors have not made any further attempts toward a

settlement since the Court ordered conference in September of 2003.

24.    The Debtors claim in their Motion that pending litigation regarding claims

justifies a further extension of time.  Pending litigation does not automatically justify an

extension of time.  *In re Scott*, 37 B.R. 184, 185 (Bankr. W.D. Ky. 1984).  Denial of an

extension is appropriate even where debtor contends waiting for the outcome of pending

litigation is necessary or that the litigation is distracting. *All Seasons*, 121 B.R. at 1005-06.
*See Parker,* 31 B.R. at 208; *Southwest Oil Co.,* 84 B.R. at 452; *Scott*, 37 B.R. at 186;
*American Fed'n*, 30 B.R. at 774.

25.     Where the need to conclude litigation does not appear to be critical to the
debtor's efforts to propose a plan, the debtor should be able to "propose its plan taking into
consideration the possible results of that action." *All Seasons*, 121 B.R. at 1005; *Parker,* 31
B.R. at 208. While it may be more convenient to know the results of the litigation, it is not
necessary for this Chapter 11 proceeding to be placed in limbo until that time. *Id.*

26.     The Debtors must not be permitted to wait until all matters are fully
litigated to file a plan. If pending litigation was the test for extending exclusivity, then
such relief would be granted routinely in every case for great lengths of time. Nor can the
Debtors in good faith assert that any delay in their progress is attributable to the stay
entered by Judge Wolin on matters before him. Even if the matters before Judge Wolin
had progressed in the last six (6) months, there is certainly no guarantee that the matters
would not have been appealed, and thus pending for months, or perhaps even years.
Moreover, despite the stay, the Debtors could have made a good faith effort to resolve their
issues with the P.I. Committee, and continue to talk and work through issues and come up
with ideas, as the Debtors vowed to do at the August 25, 2003 hearing. Transcript of
Hearing of August 25, 2003, *In re W.R. Grace & Co. Inc.,* Case No. 01-11139 (JKF), Tr.
23, annexed as Exhibit A.

27.     Denial of Debtors' Motion will not end their chances for reorganization.
"Denying such a motion only affords creditors their right to file the plan; there is no
negative effect upon the debtor's co-existing right to file its plan." *All Seasons*., 121 B.R.

at 1005. *citing Parker*, 31. B.R. at 207; *See also In re Groosinger's Assocs.*, 116 B.R. 34,

36 (Bankr. S.D.N.Y. 1990) ("A loss of plan exclusivity does not mean the debtor is

foreclosed from promulgating a meaningful plan of reorganization; only that the right to

propose a Chapter 11 plan will not be exclusive with the debtor"). "The risk is, of course,

that while it is developing its plan, another party in interest will file a plan.  However, that

is as Congress intended." *In re Tony Downs Foods Co.,* 34 B.R. 405, 408 (Bankr. D. Minn.

1983).  *See also Southwest Oil Co.,* 84 B.R. at 455.  In keeping with the purpose of Section

1121(d), the creditors in this case should have the opportunity to present a plan of

reorganization, as the Debtors have failed to do so in a timely manner.

28.     The Debtors have had plenty of time thus far and have failed to make any

progress towards a confirmable plan of reorganization that would justify an extension for

the sixth time.  This Court acknowledged the Debtors lack of progress at the omnibus

hearing on February 23, 2004.  The Court reiterated that it had instructed the Debtors to

talk with the parties and expected that the Debtors were continuing to do so. *See,*

Transcript of Hearing of February 2, 2004, *In re W.R. Grace & Co. Inc.,* Case No. 01-

11139 (JKF), Tr.__, annexed as Exhibit B.  The Debtors have not conferred with the P.I.

Committee in a good faith attempt to reach a consensual plan.  The Debtors have

accomplished nothing during the most recent sixth month extension granted by the Court

to justify a further extension of the exclusive periods.  The Debtors' conduct does not give

reason to believe that any progress would be made in the next six months. In fact, the

Debtors informed the Court on February 23, 2004 that they did not know when a plan

would be filed. *See*, Transcript of Hearing of February 2, 2004, *In re W.R. Grace & Co.

Inc.,* Case No. 01-11139 (JKF), Tr.__, annexed as Exhibit B.

## **Conclusion**

29.    The Debtors have failed to demonstrate that they have achieved any movement since this Court gave it an opportunity to do so six (6) months ago, nor any showing that they are capable of successfully reorganizing.  In light of these facts, where the Debtors failed to make progress toward the confirmation of this case, and where there is not even the prospect of a plan being filed by the Debtors, the Court must allow other creditors the opportunity to present a plan of reorganization so that this case may be resolved in a timely manner.

WHEREFORE, for the foregoing reasons, the P. I. Committee respectfully requests that the Court deny Debtors' Motion for a sixth extension of the exclusive periods.

[Remainder of Page Intentionally Left Blank]

Date: March 5, 2004

CAMPBELL & LEVINE, LLC

/S/ Marla Eskin
Marla Rosoff Eskin (No. 2989)
800 King Street
Suite 300
Wilmington, DE  19801
(302) 426-1900

-and-

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
399 Park Avenue, 27th Floor
New York, NY  10022-4614
(212) 319-7125

-and-

CAPLIN & DRYSDALE, CHARTERED
Peter Van N. Lockwood
Julie W. Davis
One Thomas Circle, N.W.
Washington, D.C.  20005
(202) 862-5000

Counsel to the Official Committee of
   Asbestos Personal Injury Claimants