# EXHIBIT A

{D0015842:1 }

```
            UNITED STATES BANKRUPTCY COURT
                 DISTRICT OF DELAWARE


IN RE:                          .  Case No.  01-01139
                                .
W.R. GRACE,                     .
                                .  5414 USX Tower Building
                                .  Pittsburgh, PA 15222
              Debtor.           .
                                .
                                .
                                .  August 25, 2003
- - - - - - - - - - - - - - - -   12:02 p.m.

             TRANSCRIPT OF TELEPHONE CONFERENCE
         BEFORE HONORABLE JUDITH K. FITZGERALD
            UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:              Kirkland & Ellis
                             By:  JANET BAER, ESQ.
                                  CHRISTIAN LANE, ESQ.
                             200 East Randolph Drive
                             Chicago, Illinois 60601

For Costa & Thornburg:       PETER CHAPMAN, ESQ.
                             24 Perdicaris Place
                             Trenton, NJ 08618

For Unsecured Creditors:     Stroock & Stroock & Lavan LLP
                             By:  LEWIS KRUGER, ESQ.
                             180 Maiden Lane
                             New York, New York 10038



Audio Operator:              Janet Kozloski

Proceedings recorded by electronic sound recording, transcript
               produced by transcription service.
```

---

**J&J COURT TRANSCRIBERS, INC.**
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-Mail: jjcourt@optonline.net

(609) 586-2311   Fax No. (609) 587-3599

1  the claims are worth several billion, if not hundreds of
2  billions of dollars.
3         Third, Your Honor, of course we have significant
4  environmental claims in this case.  We have a bar date.  We are
5  working through those claims.  We have engaged in dialogue with
6  many environmental entities, as well as a significant dialogue
7  with the EPA to move forward and get handles on what the total
8  amount of that liability may be.
9         With respect to the personal injury claims, Your
10 Honor, as you may recall, on day one in this case, we filed a
11 case management order and pursued in a rather aggressive
12 fashion, some sort of a procedure we put in place for a bar
13 date for an appropriate estimation or the like that was
14 substantially brief.  It was taken by Judge Wolin, it was
15 substantially briefed more and it still remains pending for
16 him.  Your Honor, the debtor has by no means delayed in this
17 case.  It has by no means used the exclusivity period to lull
18 itself into a certain situation bankruptcy case.  We have been
19 diligently pursuing the various pieces of this puzzle in terms
20 of moving forward.  At the same time, Your Honor, there have
21 been dialogue.  There have been dialogue with all of the
22 various creditors and constituencies.  Unfortunately, none of
23 the dialogue have led us to a consensual plan, but we are
24 certainly making progress on various fronts that could
25 ultimately put us there.

1          Your Honor, under Section 1121 of the Code, the
2  debtor is to be given a meaningful opportunity to negotiate a
3  consensual plan. This meaningful opportunity is still there
4  and still needs to be there. This is not a case that can be
5  resolved in six months, it's a case with many moving parts,
6  more moving parts, frankly, than most of the other cases
7  pending in this court, and courts around the country.
8          There is certainly a better likelihood of an imminent
9  consensual plan coming from the debtor than with any other
10 entity at this point. The debtor has to take into account all
11 creditor constituency, not just the personal injury
12 constituency. We all understand that the personal injury
13 constituency believe it to be the largest and most significant
14 portion, until ZAI gets resolved, I guess we really won't know
15 that for sure. We are moving forward, it's very difficult to
16 come up with a complete agreement until we know what some of
17 the pieces will fall into place to be.
18         Your Honor, there is no alternative plan being
19 composed at this time. By the debtor keeping exclusivity,
20 we're not holding off a reasonable and viable alternative. On
21 balance, Your Honor, the best hope of getting a consensual plan
22 in this Chapter 11 case, is for the debtor to obtain
23 exclusivity so that the debtor can work with all creditor
24 constituencies, not favoring one over another, to put together
25 an appropriate and hopefully consensual plan.

1   Under these circumstances and with the various moving
2   pieces, Your Honor, the debtor has requested an additional six
3   months until February 1st, 2004, to file a plan, and until
4   April 1st, 2004, for accepting that plan. Thank you, Your
5   Honor.
6   THE COURT: All right, does someone wish to be heard
7   in opposition?
8   MR. LOCKWOOD: Your Honor, Peter Lockwood, for the
9   asbestos claimants committee. I think we should put the
10  debtor's motion in some kind of context here, Your Honor. This
11  case has been proceeding now for almost two and a half years.
12  Essentially, with the exception of a sort of routine type of
13  claims allowance omnibus objection type proceeding, essentially
14  nothing has been accomplished other than to make some progress
15  on the Zonalitae attic insulation. If in fact the debtors
16  prevail on their summary judgment motions in the Zonalitae
17  attic insulation, obviously, that will be a material
18  development and lessening the complexity of this. But let's
19  not kid ourselves here. Even if the debtors prevail it can be,
20  I think, fairly predicted that the Zonalitae attic insulation
21  claimants will take an appeal and they will take an appeal as
22  high as they can take it. In the interim, nothing whatsoever
23  has happened with respect to the personal injury claims. Your
24  Honor will undoubtedly recall with the case management proposal
25  that the debtors originally put in, which is as Ms. Baer

1   observed, sitting in front of Judge Wolin at this juncture,
2   involved essentially trying to litigate their way out of their
3   asbestos personal injury liability to a variety of summary
4   judgment motions, <u>Dalbert Hearings</u>, bar dates, proof of claims
5   filings and the like, all of which, if they were to prevail
6   before Judge Wolin and get him to agree to that laundry list of
7   their wishes, would take years to resolve.  In addition, to my
8   knowledge, there has been no resolution of any significant kind
9   of any of the non-Zonalitae attic insulation property damage
10  claims which are substantial.  With respect to environmental
11  claims, and there is some form of bar date going on, I'm not
12  aware of any substantial near term likelihood of resolution in
13  some fashion of that, but I can't say that it couldn't happen.
14  But essentially, we've got a situation in which everybody is
15  just sitting around kind of cooling their heels while the
16  debtor tried to litigate its way out of a whole variety of
17  problems which if the debtor's course proceeds in the path that
18  it's chosen, is likely to take years.  In the interim, while it
19  is true that no alternative, viable plan has been agreed upon
20  by creditor constituencies, it is also true that there is
21  almost no incentive for the creditor constituencies to try and
22  negotiate such a plan as long as the debtor has control through
23  exclusivity of the entire bankruptcy case because the debtor,
24  while Ms. Baer talks about the sort of fair referee, umpire,
25  what-have-you, among its various creditors, the fact of the

1  matter is that the debtor is still hoping to preserve everybody
2  litigating its way out of all of its problems here and the
3  likelihood that the debtor is going to propose any kind of plan
4  in the near term is, to put it mildly, remote.  I read the
5  debtor's reply paper, I heard Ms. Baer say it, that there has
6  been supposedly some kind of negotiations going on between the
7  debtor and the constituency, I don't know who they've been
8  negotiating with, to the best of my knowledge, it certainly
9  hasn't included the asbestos committee, I don't believe, I
10 invite correction if I'm wrong, it includes the property damage
11 committee and I suppose I haven't had a chance to ask Mr.
12 Kruger yet to find out whether he's been negotiating with the
13 debtor for the unsecured creditor's committee, but if he has,
14 it hasn't been brought to my attention.  The fact of the matter
15 here is, that there is nothing, I repeat, nothing going on here
16 to have any prospect of a consensual plan or cram down or any
17 kind of a plan to be put on the table for the future.  And it
18 is clear to me beyond any venture of doubt (sic) that this six
19 month extension is just, you know, another one in a series,
20 they'll be back here in six months again asking for another six
21 months, there's no likelihood in the next six months that
22 anything definitive is going to happen with respect to either
23 the personal injury claims, the regular property damage claims
24 or the Zonalitae attic insulation claims, there may well be
25 developments, but there's nothing definitive that can happen

1  those, I'm not hopeful that we will find a consensual
2  arrangement. And I don't believe that if the debtor's
3  exclusivity were to be extended for six months, that Mr.
4  Lockwood and I, for example, if we could find a consensual
5  arrangement between ourselves, could present that to the debtor
6  and failing obtaining the debtor's consent, to take whatever
7  other action we thought appropriate. So I'm not sure that
8  there really is a tie-in, if you will, between exclusivity for
9  the debtor and the absence of a consensual reorganization plan.
10 So I think from the perspective of the unsecured creditor's
11 committee, we would continue to support the debtor's
12 exclusivity.
13         THE COURT: All right, thank you. Anyone else?
14 Ms. Baer, does the debtor want to make any final comments?
15         MS. BAER: Yes, Your Honor, just briefly. One of the
16 last things that Mr. Lockwood said, I think is the most telling
17 and significant thing that was said here by him, and that was
18 he indicated that the Personal Injury Committee wanted
19 exclusivity terminated so that the creditor constituencies
20 could see whether there's some kind of an arrangement they
21 could arrive at and present to the debtor. Your Honor, whether
22 the debtor has exclusivity or not, has absolutely nothing to do
23 with whether or not the creditor's constituencies among
24 themselves, as well as with the debtor, can talk about a
25 consensual plan. There is every incentive in the world for the

1  creditor constituencies to talk among themselves and present
2  something to the debtor, there's also every incentive in the
3  world for the debtor to be in that room and add its two cent's
4  worth.  This is an asbestos chapter 11 case.  There hasn't
5  really been any cram down plans in asbestos chapter 11 cases,
6  and we hope there won't be, Your Honor.  This is a situation
7  where all of the parties should continually be talking, coming
8  up with whatever ideas they can as they get through all of the
9  rather significant challenges that face them.  And while I'm
10 sorry that Mr. Lockwood doesn't feel incentivized (sic) to have
11 those discussions, I would encourage him very much to have
12 those discussions, the debtor would welcome the ideas of
13 whatever creditor constituency would want to bring to it.  In
14 the meantime, Your Honor, we would like to proceed with getting
15 some of these hurdles taken care of and get working on what we
16 hope to be a consensual plan.  Under those circumstances, Your
17 Honor, we simply ask that the exclusivity period be extended
18 for the debtor so that we can, in fact, try to put together a
19 consensual plan.
20         THE COURT:  All right.  I have reviewed the pleadings
21 that have been filed, and heard the arguments of counsel.  I am
22 going to grant the debtor's motion.  I agree with Ms. Baer that
23 the fact that the debtor has exclusivity should not be a
24 disincentive to creditors getting together to see if they can
25 come to some mutual understanding of the kind of plan they'd

Case 01-01139-AMC    Doc 5229-1    Filed 03/05/04    Page 10 of 11

                                                                24

1  like to see.  At that point, if in fact they have such a plan,
2  then the debtor isn't willing to move forward with that or some
3  other plan, that may be grounds to terminate exclusivity, but I
4  don't see why the debtors having exclusivity while so my
5  litigation seems necessary in this case is overly burdensome to
6  the creditor's ability to convene among themselves to see
7  whether a consensual plan can come together.  I think the fact
8  that Judge Wolin has had pieces of the litigation and so have
9  I, has, I hope, advanced the ball rather than not advancing the
10 ball.  When I first got this case, it appeared that it was
11 somewhat at a standstill from a court processing point of view,
12 and I think the debtor, at that point, was already beyond the
13 first 120 day period of time and from what I can recall,
14 virtually nothing had happened from a court perspective in that
15 time.  So from what I have seen in this case, it seems to be
16 moving, not at the speed that people would like, hopefully once
17 the ZAI piece is a little further toward conclusion, that will
18 no longer be a stumbling block.
19         I think it's time, however, for the parties to make a
20 concerted effort to get together, and so I am coupling this
21 order that grants the debtor's motion with a directive to the
22 debtor to start meeting independently with the different
23 constituent groups to find out what it is they want and how on
24 earth the debtor may be able to come to some accommodation.  I
25 understand that the division of assets will be somewhat

1  difficult, while the ZAI piece and the other property damage
2  pieces are somewhat unknown, nonetheless, I think the structure
3  of a plan could come together whether or not the actual
4  distribution mechanism and distribution numbers can be known at
5  this point in time. So the debtor is ordered to start meeting
6  with the various constituencies and by next month, I want the
7  debtor to have met at least one time with every constituency
8  simply to get something on the table as to what it is that is
9  going to get this case out of bankruptcy short of legislation
10 which, of course at this time, I don't know what the status of
11 that is. So I've signed the order that grants the debtor's
12 period of exclusivity extension through February 1 for filing
13 the plan through April 1 for solicitation, and I have orally
14 directed the debtor to meet with each of the constituent
15 groups.
16         MS. BAER: Thank you, Your Honor.
17         THE COURT: Okay, just give me one second, please, so
18 I can make a note here.
19                    (Pause)
20         THE COURT: Okay, next.
21         MS. BAER: Your Honor, the next on the agenda, Item
22 Number 5, Motion of the Objector, Rodriguez and Carlos Nueves
23 (phonetic), for relief from the automatic stay.
24         Your Honor, very briefly, before we hear from the
25 movants, this is a small personal injury slip and fall case