IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

Response Deadline: March 5, 2004
Hearing Date: March 22, 2004 at noon

### DEBTORS' OBJECTION TO MOTION OF NEUTOCRETE PRODUCTS INC. FOR RELIEF FROM STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE (DOCKET NO. 4691)

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by their undersigned counsel, respectfully submit this objection to the Motion of Neutocrete Products Inc. ("Neutocrete") for Relief from Stay Under Section 362 of the Bankruptcy Code (the "Motion"). The Debtors respectfully represent as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## INTRODUCTION

1. The Motion seeks relief from the automatic stay to allow Neutocrete to assert counter-claims allegedly necessary for Neutocrete to defend itself in a collection action that was filed against Neutocrete on behalf of the Debtors. The Debtors are not in a position, at this time, to expend the resources that would be required to adequately defend themselves against Neutocrete's claims. Therefore, the Debtors have decided not to pursue their collection action at this time, and the Debtors have filed a withdrawal of their complaint (the "Withdrawal" which is attached as Exhibit A)[2].

2. Pursuant to the Withdrawal, the collection action, which prompted Neutocrete to file the Motion in the first place, has been withdrawn. It is important to note that, besides their alleged need to assert pre-petition counter-claims in their defense of the Debtors' collection action, Neutocrete has not suggested any other reason why the Debtors should be forced to defend against the Neutocrete's claims in ancillary litigation. By filing proofs of claim in the Debtors' chapter 11 cases, Neutocrete has already pursued the appropriate course for the preservation and resolution of its alleged claims against the Debtors. The Debtors are currently examining the proofs of claims that were filed against their bankruptcy estates, and they will be prepared to raise any potential objections to Neutocrete's claims in the near future. As a result, this Court should deny the Motion and allow the Debtors to address Neutocrete's claims in the context of the Debtors' claims resolution process.

---

[2] The Withdrawal serves as an automatic withdrawal of the Debtors' complaint; no further actions are needed to effectuate the Debtors' withdrawal of this complaint.

91100-001\DOCS_DE:90069.1

## FACTS AND BACKGROUND

3.  The Debtors supplied Neutocrete with a lightweight concrete product to Neutocrete's specifications (the "Product"). Neutocrete reported problems that allegedly arose during Neutocrete's application of the Product, and the Debtors attempted to provide technical assistance regarding the proper use of the Product. Neutocrete did not follow the Debtors instructions and continued to report problems with the Product. Neutocrete then stopped payment on checks they had tendered to the Debtors in exchange for Product that had already been supplied. In response to Neutocrete's failure to make timely payments, the Debtors threatened to stop supplying Neutocrete with additional Product until the Debtors had been fully compensated. At that time, Neutocrete assured the Debtors that they would be paid in-full for the delivered Product, and Neutocrete gave the Debtors a check for approximately $60,000. Neutocrete subsequently stopped payment on that check. The Debtors eventually ceased conducting business with Neutocrete. The Debtors then referred Neutocrete's delinquent account to NCO Financial Services, Inc. (the "Collection Agent"), the Debtors' collection agency, to pursue recovery of the delinquent payments.

4.  In October 2002, the Collection Agent pursued recovery from Neutocrete by filing a complaint on behalf of the Debtors in the Superior Court of the State of Connecticut, Judicial District of Litchfield (the "Collection Action"). The Collection Action was an action for collection of unpaid post-petition invoices totaling $112,637. The Collection Agent was simply trying to collect unpaid invoices and had no reason to believe that Neutocrete would assert extensive counter-claims. Further, the Collection Agent is not trained in the nuances of bankruptcy law. Accordingly, it did not realize that the Collection Action might give Neutocrete

cause to assert pre-petition claims against the Debtors in a forum outside of the Debtors' chapter 11 cases.

5. Neutocrete responded to the Collection Action by raising multiple counter-claims, and they currently seek leave from the Debtors' automatic stay to pursue these claims. In particular, Neutocrete alleges that batches of the Product purchased by Neutocrete between September 1999 and May 2002 were deficient in the amount of Product contained in each bag and in the mixture used to manufacture the Product. Neutocrete further alleges that, as a result of these deficiencies, it and its related entities[3] are entitled to damages related to shortage of materials, fraud, violation of the Connecticut Unfair Trade Practices Act, indemnification for repairs and lost sales, and loss of reputation and goodwill (the "Claims"). The Claims assert damages in the aggregate amount of $2,857,803. Thus, an ordinary collection action has transformed into significant products liability litigation.

6. Neutocrete and its related entities timely filed three proofs of claim in the Debtors' chapter 11 cases asserting the Claims. Neutocrete's proofs of claim were filed on March 28, 2003, and the Debtors' claims agent assigned them claim numbers 8378, 8379 and 8380 (collectively, the "Proofs of Claim"). As of the filing of this response, the Debtors have not filed an objection to the Proofs of Claim. However, the Debtors are currently processing all of the claims that were filed against the Debtors' bankruptcy estates, and the Debtors intend to object to Neutocretes' Proofs of Claim in the foreseeable future.

---

[3] Neutocrete Products, Inc., and its affiliates, Neutocrete Systems, Inc. and FTF Crawlspace Specialists are sometimes referred to collectively as Neutocrete.

4

7.  On March 3, 2004, the Debtors filed their Withdrawal in the Collection Action. The Withdrawal serves as an automatic, voluntary-dismissal of the Collection Action.

## ARGUMENT

### I. Neutocrete's Sole Reason for Seeking Relief from the Automatic Stay - the Collection Action - has Been Withdrawn

8.  The Collection Action was initiated during the Debtors' post-petition effort to collect amounts owed to the Debtors by its customers on account of post-petition services. When the Debtors sent their claims to the Collection Agency, they never envisioned the potential for protracted litigation. The Collection Action was a simple breach of contract claim, where the facts and the underlying law were not in dispute. Neither the Collection Agent nor the Debtors anticipated that resolution of the Collection Action would require extensive fact-finding or complicated legal analysis, or a significant expenditure of time and money from the Debtors' estates.

9.  While Neutocrete had expressed some dissatisfaction concerning the Product to the Debtors, the Debtors did not believe there was any merit to Neutocrete's claims and that any problems were solely related to Neutocrete's misapplication of the Product. Moreover, the Collection Agent had no reason to believe that Neutocrete would respond to the Collection Action by asserting pre-petition claims that could only be resolved through extensive litigation. In particular, Neutocrete has alleged fraud and violation of Connecticut's Unfair Trade Practices Act. These claims cannot be resolved without a determination of whether the Debtors acted with an intent to deceive. Proving such intent is typically accomplished through the development of circumstantial evidence, which will necessitate discovery and extensive involvement by the Debtors. Neutocrete has also sought consequential damages stemming from sales that it

allegedly lost as a result of the Debtors' alleged breach. Litigation of these issues, if necessary, will require extensive involvement by the Debtors.

10. The Debtors are not in a position, at this time, to expend the resources that would be required to adequately defend themselves against Neutocrete's claims. Therefore, the Debtors have decided not to pursue their collection action at this time, and have withdrawn the Collection Action. Instead, the Debtors have determined that it would be most efficient to resolve the Claims through the claims resolution process in their chapter 11 cases. The Debtors' withdrawal of the Collection Action removes Neurocrete's sole argument supporting its request for relief from the automatic stay.

## II. In the Absence of the Collection Action, Neutocrete Has Failed To Show Sufficient Cause To Lift The Automatic Stay

11. In light of the Debtors' Withdrawal, the Debtors do not know if Neutocrete still seeks to pursue its Claims through ancillary litigation. In the event that Neutocrete still seeks to pursue its Motion, it has failed to demonstrate the cause necessary to modify the automatic stay.

12. The automatic stay is one of the most fundamental protections provided to a debtor under the Bankruptcy Code. See Midatlantic Nat. Bank v. New Jersey Dept. of Environmental Protection, 474 U.S. 494, 503 (1986). Pursuant to section 362(d) of the Bankruptcy Code, a movant must demonstrate sufficient cause to justify the lifting or modification of the automatic stay. Although the Bankruptcy Code does not define what constitutes cause, "courts generally consider the policies underlying the automatic stay [and] . . . the competing interests of the debtor and the movant." In re Continental Airlines, Inc., 152 B.R. 420, 424 (D. Del. 1993).

13.     In particular, Delaware courts consider the three factors in balancing the competing interests of the parties: (a) the balance of the hardships facing the parties if the stay is lifted; (b) the prejudice that would be suffered by the debtors should the stay be lifted; and (c) the probable success on the merits if the stay is lifted. See Continental, 152 B.R. at 424.

### (A)    The Balance Of Hardships Weighs Significantly In Favor Of The Debtors

14.     The burdens forced upon the Debtors by the prosecution of Neutocrete's claims in ancillary litigation far outweigh any inconvenience encountered by Neutocrete. Unsecured creditors, such as Neutocrete, "bear the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the Debtor in denying relief." In re Micro Design, Inc., 120 B.R. 363, 369 (E.D. Pa. 1990) (automatic stay not lifted where it was appropriate for movant to pursue its claim by filing a proof of claim, and participating in the claim process, in the bankruptcy case). Given that the Debtors have dismissed the Collection Action, the Motion does not offer a single hardship that is particular to Neutocrete and that is not shared by all of the thousands of unsecured creditors in these chapter 11 cases.

15.     There is simply no longer any compelling reason to force the Debtors to litigate the Claims in state court at this time. As discussed in Section I herein, the expenses associated with defending against Neutocrete's claims will deplete the Debtors' bankruptcy estates and will divert the Debtor's attention from the administration of these chapter 11 cases. Further, Neutocrete has not provided, nor can it provide, any reason why it should be granted preferential treatment over the Debtors other general unsecured-creditors. Unwarranted preferential treatment, however, is exactly what Neutocrete seeks. If the Motion were granted, the limited

7

resources of the Debtors would be expended to defend itself against Neutocrete's claims to the detriment of the Debtors' estates and their creditors. Neutocrete should receive the same uniform treatment as all similar unsecured litigation claimants - resolution of their claims through the claims resolution process.

16. Neutocrete will incur no harm if this Court denies the Motion. The claims resolution process was implemented to provide the Debtors' creditors with a fair and organized system for resolving claims asserted by the creditors against the Debtors' estates. Neutocrete timely filed their Proofs of Claim and the Debtors anticipate objecting to Neutocrete's Proofs of Claim in the foreseeable future. Accordingly, denying the Motion will in no way prejudice any of Neutocrete's rights with respect to the Debtors.

17. As a result thereof, the balance of hardships weighs significantly in favor of the Debtors.

**(B)    Substantial Prejudice Would Be Incurred By The Debtor If The Automatic Stay Were Lifted**

18. An additional factor in determining whether to grant relief from the automatic stay to allow litigation to proceed against a debtor in another forum is the effect of such litigation on the administration of the estate. See In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984); In re Penn-Dixie Industries, Inc., 6 B.R. 832, 836 (Bankr. S.D.N.Y. 1980). If Neutocrete is allowed to pursue the Claims in ancillary litigation, then the Debtors' ability to administer their estates and these chapter 11 cases would be severely impacted.

19.     Allowing Neutocrete to pursue ancillary litigation would require the Debtors to bear the financial burdens of discovery and trial.[4] The Debtors dispute Neutocrete's allegations and anticipate the need to mount a vigorous defense and conduct discovery relating thereto. Allowing Neutocrete to file a complaint to proceed against the Debtors will require the Debtors to introduce fact and expert witness testimony and other evidence in order to defend against Neutocrete's Claims. Thus, relief from the automatic stay to allow the filing of the Neutocrete's proposed cause of action will result in the unnecessary depletion of the Debtors' assets and resources.

20.     Moreover, modifying the automatic stay to allow Neutocrete to pursue ancillary litigation would require the time and commitment of the Debtors' employees, including employees with technical knowledge of the Product, as well as the Debtors' in house counsel, Michael Cohan, to supervise and monitor the litigation. Such employees would be required not only to divert their attention away from the Debtors' reorganization to assist counsel in the preparation of the Debtors' defense of the Neutocrete cause of action, but many of them may be witnesses as well. Moreover, substantial written and deposition discovery will need to be conducted. Completing discovery will require substantial time and effort on the Debtors' part to search for and produce responsive documents, prepare and defend its employee witnesses, and research and draft discovery responses. These expenses may be unnecessary if Neutocrete's Proofs of Claim are resolved (like other similarly situated unsecured creditors' claims) in the context of the claims resolution process.

---

[4] The Debtors have products liability insurance that may cover *some* of Neutocrete's Claims. However, the Debtors' products liability insurance coverage for the relevant period includes a deductible, and this insurance only covers damages that are caused by the Debtors' products. Therefore this insurance does not cover all of Neutocrete's claims, including their alleged damages for "unfair practices" and the costs of replacing the Product.

9

**(C)     Neutocrete Has Demonstrated No Likelihood of Success on the Merits.**

21.    Neutocrete's Motion should also be denied because it has not, and cannot, demonstrate any likelihood of success on the merits. It is the movant's burden to demonstrate it has a reasonable likelihood of success on the merits. Neutocrete has simply failed to do so.

## CONCLUSION

22.    For all of the foregoing reasons, the Motion for relief from the automatic stay should be denied.Respectfully submitted,

Dated:  March 5, 2004

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
James W. Kapp III
Janet S. Baer
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile:  (312) 861-2200

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David Carickhoff (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

# Exhibit A

# Debtors' Withdrawal Motion

MAR-03-2004 17:42    BRIAN S. CANTOR                                    12032591180    P.01/01

| WITHDRAWAL<br>JD-CV-41 Rev. 1-97 | STATE OF CONNECTICUT<br>**SUPERIOR COURT**<br>COMPLETE ALL SECTIONS BELOW | DOCKET NO.<br>CV-02-0088979S<br>RETURN DATE |

**NAME OF CASE** *(FIRST-NAMED PLAINTIFF VS. FIRST-NAMED DEFENDANT)*
WR Grace & Company vs. Neutocrete Products

[X] Judicial District   [ ] Housing Session   [ ] G.A. No.

ADDRESS OF COURT *(No., street, town and zip code)*
15 West Street, Litchfield, CT 06759

**SECTION I** *(check only one box)* **THIS WITHDRAWAL IS BEING FILED BECAUSE THE DISPUTE HAS BEEN RESOLVED BY:**

**I. COURT-ANNEXED ADR**
- 411088 [ ] Early Intervention
- 411089 [ ] Early Neutral Evaluation
- 411090 [ ] Attorney Trial Referee
- 411091 [ ] Fact-Finding
- 411093 [ ] Arbitration
- 411094 [ ] Mediation
- 411095 [ ] Special Masters
- 411096 [ ] Summary Jury Trial

**II. COURT INTERVENTION**
- 411098 [ ] Pretrial Conference
- 411099 [ ] Trial Management Conference
- 411100 [ ] Commencement of Trial (court trial - first witness sworn; jury trial - trial jurors sworn)

**III. PRIVATE ADR**
- 411102 [ ] Provider Name: _____

**IV. OTHER**
- 411103 [X] Discussion of Parties on Their Own

**SECTION II** **WITHDRAWAL**

*(Do not check the following two boxes if any intervening complaints, cross complaints, counterclaims, or third party complaints remain pending in this case. See below for partial withdrawal of action.)*

--- DISPOSITIVE ---

(WDACT) [X] The Plaintiff's action is WITHDRAWN AS TO ALL DEFENDANTS without costs to any party.
(WOARD) [ ] A judgment has been rendered against Defendant(s): _____

and the Plaintiff's action is WITHDRAWN AS TO ALL REMAINING DEFENDANTS without costs.

--- PARTIAL ---

The
- (WDCOMP) [ ] Complaint
- (WDCOUNT) [ ] Counts of the complaint:
- (WDCOMP) [ ] Intervening Complaint
- (WDTHPC) [ ] Third Party Complaint
- (WAPPCOM) [ ] Apportionment Complaint
- (WDCC) [ ] Cross Complaint (cross claim)
- (WOC) [ ] Counterclaim
- (WOAAP) [ ] Plaintiff(s): _____
- WOAAD [ ] Complaint against defendant(s): _____ only w/o costs
- [ ] Other: _____

in the above entitled action is withdrawn.

**SIGNATURE REQUIRED**

| | | | |
|---|---|---|---|
| Plaintiff | WR Grace & Company | ; By Brian S. Cantor | Attorney |
| Plaintiff | | ; By | Attorney |
| Defendant | | ; By | Attorney |
| Defendant | | ; By | Attorney |

**NAME & ADDRESS OF SIGNER:** → Brian S. Cantor, Esq. 1220 Post Road, Fairfield, CT 06824

**SECTION III** **CERTIFICATION**

| I hereby certify that a copy was mailed/delivered to all counsel and pro se parties of record on: | DATE 3/3/04 | SIGNED *(Individual attorney or pro se party)* X _____ | PHONE NO. *(area code first)* (203) 254-1550 |

**NAME OF EACH PARTY SERVED** *
Martin Clayman

**ADDRESS AT WHICH SERVICE WAS MADE** *
Three Regency Drive, Bloomfield, CT 06002

* If necessary, attach additional sheet with names of each party served and the address at which service was made.